## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| | |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Joint Administration Pending |

-----------------------------------------------------------X

## MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL ORDERS (I) RESTRAINING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) DEEMING UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE

Nortel Networks Inc. and certain of its affiliates, as debtors and debtors in possession

(collectively the "Debtors"), hereby move this Court for entry of an interim order (the "Interim

Order"), substantially in the form attached hereto as Exhibit B, and for entry of a final order (the

"Final Order"), substantially in the form attached hereto as Exhibit C, both pursuant to sections

105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), determining

adequate assurance of payment for future utility services (the "Motion"). In support of this

Motion, the Debtors rely on the Declaration of John Doolittle in Support of First Day Motions

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

2665155.2

and Applications (the "First Day Declaration").  In further support of this Motion, the Debtors

respectfully represent as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of

the Debtors' chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 366 of

the Bankruptcy Code.

**Background**

**A.      Introduction**

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5.      On the date hereof, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] will file an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as foreign representative for the Canadian Debtors, will file petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. Certain of Nortel's European subsidiaries will make consequential filings for creditor protection.

6.      Simultaneously with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

**B.      Debtors' Corporate Structure and Businesses**

7.      A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the First Day Declaration.[3]

### Relief Requested

8.      Section 366 of the Bankruptcy Code prevents utility companies from discontinuing, altering or refusing service to a debtor during the first 30 days of a chapter 11 case.  However, after such 30-day period, a utility company may terminate its services, pursuant to section 366(c)(2) of the Bankruptcy Code, if a debtor has not furnished it with adequate assurance of payment.

---

[3]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

3

9.      By this Motion, and pursuant to sections 105(a) and 366 of the Bankruptcy Code, the Debtors seek immediate entry of the Interim Order (i) determining that the Utility Companies (as defined below) have been provided with adequate assurance of payment within the meaning of section 366, pending the entry of the Final Order; (ii) approving the Debtors' proposed offer of adequate assurance and procedures whereby Utility Companies may request additional or different adequate assurance; (iii) prohibiting the Utility Companies from altering, refusing or discontinuing services to the Debtors on the basis of the commencement of these cases, on account of any unpaid invoice for service provided prior to the Petition Date or on account of any perceived inadequacy of the Debtors' proposed adequate assurance, pending entry of the Final Order; (iv) establishing procedures for Utility Companies to seek to opt out of the Debtors' proposed adequate assurance procedures; (v) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed in this Motion, pending entry of the Final Order; and (vi) setting a final hearing (the "Final Hearing") on the Debtors' proposed adequate assurance.

10.     If the Utility Companies are permitted under section 366 to terminate services, the Debtors will be forced to cease operations, resulting in a severe disruption, loss of revenue and profits, and potentially the destruction of their businesses. Such disruption and loss would at a minimum cause substantial harm to the Debtors' efforts to expeditiously restructure their business affairs and would be detrimental to the estates and the Debtors' creditors. Accordingly, it is essential that the Utility Companies continue to provide their services without interruption.

11.     The Debtors obtain various products such as gas, water, electricity, sewer, telephone, Internet and other essential services from a multitude of utility companies or utility

company divisions (collectively, the "Utility Companies"), including, but not limited to, those listed on Exhibit A attached hereto.[4]

12.     Over the past twelve months, the Debtors have paid an average of $2,113,278 per month to the Utility Companies.  Prior to their chapter 11 filings, the Debtors made timely payments to the Utility Companies each month without exception.  To the best of the Debtors' knowledge, there are no defaults or arrearages of any significance with respect to the Debtors' undisputed invoices from the Utility Companies, other than payment interruptions that may be caused by the commencement of these cases.

13.     The Debtors directly manage their payments to Utility Companies providing telecommunications services without the assistance of any third parties.  However, to facilitate their payments to Utility Companies providing electric, gas, water and sewage services, the Debtors have employed Johnson Controls Inc. ("JCI"), which in turn has subcontracted with National Information Solutions Cooperative  ("NISC") to arrange for the pass-through payment of the Debtors' utility invoices.  Although the Debtors incur fees for these services, these costs are outweighed by the benefits gained from streamlined payments and simplified tracking and analysis of the Debtors' utility usage and rates.  Pursuant to their contractual obligations, JCI and NISC will continue to manage the pass-through payment of the Debtors' electric, gas, water and sewage utility invoices after the Petition Date and make payments to the respective Utility Companies on behalf of the Debtors.  By this Motion, the Debtors are seeking an order barring

---

[4]     The Debtors reserve all rights to assert that any entity listed on Exhibit A is not a utility company within the meaning of section 366 of the Bankruptcy Code and thus is compelled to continue to furnish services to the Debtors without need for further adequate assurance of payment notwithstanding the filing of these cases.  In addition, as discussed below on page 12, the Debtors reserve all rights to identify additional Utility Companies and to supplement Exhibit A with the identity of additional Utility Companies.

JCI and NISC from holding, using or setting off such payments for their own benefit.  In

addition, the Debtors seek a finding from the Court that failure by the Debtors to pay prepetition

claims to Utility Companies, through JCI or otherwise, shall not give JCI or NISC any

postpetition claims for such unpaid amounts.[5]

### The Proposed Adequate Assurance

14.     The Debtors intend to pay all postpetition obligations to the Utility Companies in

a timely manner and believe that there will be sufficient funds to permit them to do so.

15.     The Debtors propose, within twenty (20) business days of the Petition Date, to

place a deposit (the "Adequate Assurance Deposit") equal to the aggregate approximate cost of

two (2) weeks of utility services, calculated as a historical average over the past twelve (12)

months, into an interest-bearing, newly created segregated account ("Utility Deposit Account"),

except to the extent that (i) a Utility Company agrees to a lesser amount, (ii) a Utility Company

already holds a deposit equal to or greater than two (2) weeks of utility services, or (iii) a Utility

Company is not currently paid in advance for its services.  On the basis of the Debtors' current

estimates, $1,056,639 will be paid into the Utility Deposit Account within twenty (20) days of

the Petition Date.  The Adequate Assurance Deposit shall be maintained with a minimum

balance equal to the aggregate approximate cost of two (2) weeks of utility services, which may

be adjusted by the Debtors to account for the termination of utility services by the Debtors or

---

[5]      JCI is also employed by the Debtors to arrange for the pass-through payment of the Debtors' rents. The
Debtors request similar relief with respect to postpetition rents that the Debtors pay through JCI. While the Debtors
intend to continue to use the services of JCI and NISC to pay certain Utility Companies according to their prior
practices, the Debtors seek authority, in their discretion, to make payments directly to Utility Companies and
landlords should they choose to do so.

other arrangements with respect to adequate assurance of payment reached with a Utility Company (including as enumerated above).

16.    To the extent the Debtors become delinquent with respect to a Utility Company's account, such Utility Company may file a notice of delinquency (the "Delinquency Notice") with the Court and serve such notice on (a) the Debtors, (b) counsel to the Debtors, (c) counsel to the official committee of unsecured creditors, when one is appointed, and (d) the United States Trustee (collectively, the "Notice Parties").  If the Debtors have not cured such delinquency or none of the Notice Parties has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit to such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount allocated to the Adequate Assurance Deposit for such Utility Company's account and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

17.    The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' wherewithal to pay for future utility services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies.

### The Proposed Adequate Assurance Procedures

18.    In light of the significant consequences to the Debtors of any interruption in services by the Utility Companies, but recognizing the right of the Utility Companies to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors propose that the Interim and Final Orders approve and adopt the following procedures (the "Adequate Assurance Procedures"):

7

a. Absent compliance with the Adequate Assurance Procedures, the Utility Companies are forbidden to discontinue, alter or refuse service to the Debtors, including on account of any unpaid prepetition charges, or require additional adequate assurance of payment other than the Proposed Adequate Assurance.

b. Within twenty (20) business days of the Petition Date, the Debtors shall place the Adequate Assurance Deposit into the Utility Deposit Account, except to the extent that (i) a Utility Company agrees to a lesser amount, (ii) a Utility Company does not already hold a deposit equal to or greater than two (2) weeks of utility services, and (iii) a Utility Company is not currently paid in advance for its services.

c. If the Debtors become delinquent with respect to a Utility Company's account, a Utility Company may file a Delinquency Notice, serving such notice in writing upon the Court and the Notice Parties: (i) Nortel Networks Inc., 220 Athens Way, Suite 300, Nashville, TN 37228 (Attn: Lynn C. Egan, Esq.); (ii) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn: James L. Bromley, Esq.); (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899-1347 (Attn: Derek C. Abbott, Esq.); (iv) counsel to the official committee of unsecured creditors, when appointed, and (v) the United States Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801. Such Delinquency Notice should (i) be made in writing; (ii) set forth the amount of the delinquency; (iii) set forth the location for which utility services are provided; and (iv) provide the Debtors' account number with the Utility Company.

d. If the Debtors have not cured an alleged delinquency and no Party in Interest has objected to the Delinquency Notice within ten (10) days of the receipt of the Delinquency Notice, then the Debtors shall remit (in the form of a check or wire transfer) to such Utility Company from the Adequate Assurance Deposit the lesser of (i) the amount allocated to the Adequate Assurance Deposit for such Utility Company's account and (ii) the amount of postpetition charges claimed as delinquent in the Delinquency Notice.

e. If a Party in Interest has objected to the Delinquency Notice, then the Court shall hold a hearing to resolve the dispute and determine whether a payment should be remitted from the Adequate Assurance Deposit and, if such payment is warranted, how much shall be remitted.

f.   Any Utility Company desiring additional assurance of future payment beyond the Proposed Adequate Assurance in the form of deposits, prepayments or otherwise must serve a request (an "Additional Assurance Request") so that it is received by (i) Nortel Networks Inc., 220 Athens Way, Suite 300, Nashville, TN 37228 (Attn: Lynn C. Egan, Esq.); (ii) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006 (Attn:  James L. Bromley, Esq.); and (iii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE  19899-1347 (Attn: Derek C. Abbott, Esq.) on or before 10 business days after the Petition Date. Such Additional Assurance Request must (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the location for which utility services are provided; (iv) provide the Debtors' account number with the Utility Company; (v) include a summary of the Debtors' payment history to such Utility Company, including any security deposits and whether the Debtors are paying for utility service in advance; and (vi) set forth why the Utility Company believes that the Proposed Adequate Assurance is not sufficient adequate assurance of future payment.

g.   Any Utility Company that fails to timely make an Additional Assurance Request shall be deemed to have been provided with adequate assurance of payment by the Proposed Adequate Assurance; and shall be prohibited from discontinuing, altering or refusing to provide utility service to the Debtors, including on account of unpaid charges for prepetition utility services.

h.   Upon the Debtors' receipt of any Additional Assurance Request at the addresses set forth above, the Debtors shall have the longer of (i) ten business days from the actual receipt of such Additional Assurance Request and (ii) twenty-five days from the Petition Date (collectively, the "Resolution Period") to reach a consensual agreement with such Utility Company to resolve such Utility Company's request for additional assurance of future payment.

i.   During the Resolution Period, the Debtors may, in their discretion, resolve any Additional Assurance Request by mutual agreement with the Utility Company and without further order of the Court, and may, in connection with any such agreement, in its discretion, provide a Utility Company with additional adequate assurance of payment, including but not limited to cash deposits, prepayments, and/or other forms of security, without further order of this Court, if the Debtors believe such additional assurance is reasonable.

9

j.  If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach a consensual resolution with the Utility during the Resolution Period, the Debtors, during or immediately after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurance of future payment with respect to a particular Utility Company (the "Determination Hearing"), pursuant to section 366(c)(3) of the Bankruptcy Code.

k.  Pending resolution of the Additional Assurance Request under the procedures described above, and the determination by the Court of the request for relief heard at the Determination Hearing, the Utility Company at issue shall be prohibited from discontinuing, altering or refusing service to the Debtors, including on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

### Process for Opting Out of Adequate Assurance Procedures

19.    The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

("BAPCPA") modified section 366 of the Bankruptcy Code to arguably place the burden on

debtors to (i) propose adequate assurance and hope that utility providers find it satisfactory, and

(ii) seek court review if a utility provider does not accept the proposed adequate assurance.

Under this reading of section 366, a utility could, on the twenty-ninth day following the Petition

Date, announce that the proposed adequate assurance is not acceptable, demand an unreasonably

large deposit in the context of its risk and threaten to terminate utility service the next day unless

the debtor complied with its request.  While the Debtors do not concede that the foregoing is a

correct reading of section 366, in order to avoid any disruption in service and to prevent the

foregoing from occurring, the Debtors believe it is prudent to propose the Adequate Assurance

Procedures and to require Utility Companies to file and serve objections, if any, to the Final

Order, prior to the expiration of the thirty-day period that begins to run on the Petition Date.

10

20.    The Debtors therefore propose the following procedures (the "Opt-Out

Procedures"):

    a.  Any Utility Company that objects to the Adequate Assurance
Procedures must file an objection to such procedures (a "Procedures
Objection") with the Court and serve it so that it is actually received
by the Notice Parties within twenty days of the entry of the Interim
Order.

    b.  Any Procedures Objection must (i) be in writing; (ii) set forth the
amount and form of additional assurance of payment requested;
(iii) set forth the location for which utility services are provided;
(iv) include a summary of the relevant Debtor's payment history to
such Utility Company, including any security deposits and whether the
relevant Debtor is paying for utility service in advance; (v) set forth
why the Utility Company believes the Proposed Adequate Assurance
is not sufficient adequate assurance of payment; and (vi) set forth why
the Utility Company believes it should be exempted from the
Adequate Assurance Procedures.

    c.  The Debtors may, in their discretion, resolve any Procedures Objection
by mutual agreement with the Utility Company and without further
order of the Court, and may, in connection with any such agreement,
in their discretion, provide a Utility Company with additional adequate
assurance of future payment, including but not limited to cash
deposits, prepayments and/or other forms of security, without further
order of this Court, if the Debtors believe such additional assurance is
reasonable.

    d.  If the Debtors determine that the Procedures Objection is not
reasonable and are not able to reach a prompt consensual resolution
with the Utility Company, the Procedures Objection will be heard at
the Final Hearing.

    e.  Any Utility Company that does not timely file a Procedures Objection
is deemed to consent to the Adequate Assurance Procedures and shall
be bound by the Adequate Assurance Procedures.  The sole recourse of
any Utility Company that does not timely file a Procedures Objection
shall be to submit an Additional Assurance Request pursuant to the
Adequate Assurance Procedures, and any such Utility Company shall
be prohibited from discontinuing, altering or refusing service to the
Debtors, including on account of unpaid charges for prepetition

11

services, pending any Determination Hearing that may be conducted pursuant to the Adequate Assurance Procedures.

### Final Hearing Date

21.    In order to resolve any Procedures Objections within thirty days of the Petition Date, the Debtors request that the Court schedule the Final Hearing on or about February 9, 2009.

### Subsequent Modifications to Utility List

22.    Although the Debtors have made an extensive and good faith effort to identify all Utility Companies, certain Utility Companies that currently provide utility services to the Debtors may have been inadvertently omitted from Exhibit A.  To the extent that the Debtors identify additional Utility Companies, the Debtors reserve the right to promptly file an amendment to Exhibit A and shall serve copies of this Motion, the Interim Order and the Final Order (to the extent that such Orders have been entered by the Court) on such newly identified Utility Companies.

23.    The Debtors propose the following procedures for providing adequate assurance to Utility Companies identified by the Debtors and noticed after the Petition Date:

> a.    Within twenty (20) business days of discovering such additional Utility Company, the Debtors shall place an Adequate Assurance Deposit for such Utility Company into the Utility Deposit Account, except to the extent that (i) such Utility Company agrees to a lesser amount, (ii) such Utility Company does not already hold a deposit equal to or greater than two (2) weeks of utility services and (iii) such Utility Company is not currently paid in advance for its services.

> b.    The procedures described above for the filing and resolution of a Delinquency Notice shall also apply to any Utility Company not listed on Exhibit A to the Motion but subsequently identified.

12

c.  Any Utility Company not listed on Exhibit A to the Motion but subsequently identified shall be afforded ten (10) business days from the date of service to make an Additional Assurance Request, if any, from the Debtors.

d.  The Debtors shall have 10 business days from receipt from such subsequently identified Utility Company of an Additional Assurance Request to reach consensual agreement with such Utility Company to resolve such Utility's Additional Assurance Request, as applicable.

e.  If the Debtors determine that the Additional Assurance Request of such subsequently identified Utility Company is not reasonable and the Debtors are not able to reach a consensual resolution with such subsequently identified Utility Company, the Debtors, immediately following the 10 business-day period referred to in the preceding paragraph, shall request a Determination Hearing.

f.  Pending resolution of the Additional Assurance Request under the procedures described above, and the determination by the Court of the request for relief heard at the Determination Hearing, such subsequently identified Utility Company shall be prohibited from discontinuing, altering or refusing service to the Debtors, including on account of unpaid charges for prepetition services

24.    The Debtors' inclusion or exclusion of an entity from Exhibit A or any subsequently filed supplement to such Exhibit A shall be without prejudice to the right of the Debtors to assert that such entity is or is not a utility company or a provider of utility services for purposes of section 366 of the Bankruptcy Code and this Order.

**Basis for Relief Requested**

25.    Section 366 of the Bankruptcy Code protects a debtor against the immediate termination of utility services after the commencement of its case. Under that section, a utility may not, during the first thirty days of a chapter 11 case, alter, refuse, or discontinue services to a debtor solely because of unpaid prepetition amounts. Following such thirty-day period, however, a utility may alter, refuse or discontinue service if the debtor does not provide

13

"adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility,

subject to the court's authority to modify the amount of adequate assurance.[6]   Under section

366(c), courts have the authority to determinate what amount, if any, is necessary to provide

Utility Companies with adequate assurance of payment.   Under section 366(c), there is nothing

to prevent a court from deciding, on the facts of the case before it, that no amount should be

required of a debtor to adequately assure payment or that only a minimal amount should be

required.   This was the case before section 366 was modified by BAPCPA, see Va. Elec. &

Power Co. v. Caldor, Inc., 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other

---

[6]     Section 366 of the Bankruptcy Code provides, in relevant part, as follows:

(a)     Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b)     Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.   On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

*       *       *       *

(c)(2)     Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)   On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B)   In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider (i) the absence of security before the date of the filing of the petition; (ii) the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or (iii) the availability of an administrative expense priority.

11 U.S.C. § 366.

security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'"). Because the revised section 366 also allows the courts to order the modification of the amount of an assurance of payment, courts remain free to require no deposit or security where none is necessary to ensure adequate assurance of payment in any particular case. In any event, the Debtors believe that the Proposed Adequate Assurance is more than sufficient and reasonable and constitutes adequate assurance of payment under section 366 of the Bankruptcy Code.

26.     Additionally, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code, which permits the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (2002). In that regard, the Court should note that payments to the Utility Companies on behalf of the Debtors are essential to the Debtors' reorganization in that any failure to receive services from the Utility Companies will at minimum result in a disruption in the Debtors' operations and a consequent interruption of revenues.

27.     Relief similar to that requested herein has been granted by courts in numerous other cases. In re VeraSun Energy Corp., Case No. 08-12606 (Bankr. D. Del. Dec. 2, 2008) (approving adequate assurance consisting of deposit into interest-bearing escrow account of approximately two weeks cost of utility services); In re SemCrude, L.P., Case No. 08-11525 (Bankr. D. Del. Aug. 18, 2008) (same); In re Linens Holding Co., Case No. 08-10832 (Bankr. D. Del. May 27, 2008) (same); In re Leiner Health Prods. Inc., Case No. 08-10446 (Bankr. D. Del.

Mar. 12, 2008) (same); In re Domain, Inc., Case No. 08-10132 (Bankr. D. Del. Jan. 22, 2008)

(approving adequate assurance consisting of deposit equal to cost of two weeks of utility services

for utilities that are not paid in advance and that do not already have security deposits greater or

equal to cost of two weeks of service).[7] The Debtors believe that granting the relief requested

herein will not prejudice the rights of the Utility Companies under section 366 of the Bankruptcy

Code and is in the best interests of the Debtors' estates and creditors. Uninterrupted service from

the Utility Companies is absolutely necessary to the Debtors' continued business operations.

## Notice

28.      Notice of the Motion has been given via facsimile, electronic transmission, hand

delivery or overnight mail to the (i) Office of the United States Trustee for the District of

Delaware; (ii) the trustee under that certain indenture dated as of July 5, 2006, as supplemented,

with respect to the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013,

and the 10.75% Senior Notes due 2016; (iii) the trustee under that certain indenture dated as of

February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) the trustee under that

certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior

Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40)

largest unsecured claims on a consolidated basis against the Debtors; (vi) the Securities and

Exchange Commission; (vii) the Internal Revenue Service; (viii) the United States Department of

Justice; (ix) the Debtors' Utility Companies; (x) Johnson Controls Inc.; and (xi) National

Information Solutions Cooperative. In light of the exigencies of the circumstances and the

---

[7]      Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion. Copies of these orders are available upon request of Debtors' counsel, including at the hearing to consider this Motion.

potential harm to the Debtors, their estates, and other parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

### No Prior Request

29.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  January 14, 2009
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801-1347
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Proposed Counsel for the Debtors
and Debtors in Possession*

17