## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                        :

*In re*                             :       Chapter 11

Nortel Networks Inc., *et al.*,[1]     :       Case No. 09-10138 (KG)

               Debtors.      :       Joint Administration Pending
                        :
-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 363(b), 507(a)(8), AND 541 OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE DEBTORS TO REMIT AND PAY CERTAIN TAXES AND FEES

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors to remit and pay certain sales, use, income/franchise, real and personal property, business and occupation taxes, and other similar taxes as the Debtors deem necessary, as well as fees for licenses, and other similar charges and assessments; (ii) authorizing and directing banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and (iii) granting them such other and further relief as the Court deems just and proper. In support of this

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

Motion, the Debtors rely on the Declaration of John Doolittle in Support of First Day Motions

and Applications (the "First Day Declaration").  In further support of this Motion, the Debtors

respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363(b),

507(a)(8), and 541 of the Bankruptcy Code and Rule 6003 of the Bankruptcy Rules.

## Background

**A.      Introduction**

3.      On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5.      On the date hereof, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] will file an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Canadian Proceedings"). The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, will file petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. Certain of Nortel's European subsidiaries will make consequential filings for creditor protection.

6.    Simultaneously with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

**B.    Debtors' Corporate Structure and Business**

7.    A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the First Day Declaration.[3]

## Relief Requested

8.    By this Motion, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 363(b), 507(a)(8), and 541 of the Bankruptcy Code and Rule 6003(b) of the Bankruptcy Rules, (i) authorizing, but not directing, the Debtors to remit and pay certain sales, use, income/franchise, real and personal property, business and occupation taxes, and other similar taxes as the Debtors deem necessary, as well as fees for licenses, and other similar charges and assessments; (ii) authorizing and directing banks and other financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing; and (iii) granting them such other and further relief as the Court deems just and proper.

---

[3]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

**Facts Relevant to this Motion**

9.      In the ordinary course of the Debtors' business, the Debtors (a) collect sales taxes from their customers and incur taxes, including, but not limited to sales, use, income/franchise, real and personal property, business and occupation and other similar taxes in conducting their businesses (collectively, the "Taxes") and (b) charge fees for licenses and other similar charges and assessments (collectively, the "Fees") on behalf of various taxing, licensing, and regulatory authorities (collectively, the "Authorities"), and pay Fees to such Authorities for licenses required to conduct the Debtors' businesses.  The Taxes and Fees are paid to the respective Authorities in accordance with all applicable state and federal laws and regulations.

10.      Each of the Taxes and Fees incurred by the Debtors fall under one of the following categories: (a) sales and use taxes; (b) income/franchise taxes; (c) real and personal property taxes; and (d) business and occupation taxes and business license fees, and other fees.

**A.      Sales and Use Taxes**

11.      The Debtors collect and remit sales taxes in connection with the sale of goods and services to their customers.  The payment frequency of such collected sales taxes varies from state to state, and may be remitted to the Authorities monthly, quarterly, or annually.  The Debtors also may be responsible for remitting use taxes on account of the purchase of various supplies and office equipment.  Use taxes typically arise if a supplier does not have business operations in the state in which it is supplying goods and does not charge state taxes.

12.      While the amount the Debtors pay in sales and use taxes fluctuates, the average monthly amount paid between January and October 2008 was approximately $2.8 million.  The Debtors typically pay these obligations as they arise in the ordinary course.  As of the Petition Date, the Debtors estimate that they owe approximately $5.6 million with respect to sales and

use taxes incurred prior to the Petition Date, which, absent the commencement of these chapter 11 cases, would be paid over the course of the year.

**B.      Income/Franchise Taxes**

13.      The Debtors pay income/franchise taxes to the Authorities in many U.S. jurisdictions, based on the income tax base, the capital employed in the Debtors' businesses, the Debtors' assets and/or a variety of other factors.  Payment of the income/franchise taxes allows the Debtors to continue operating their businesses in such states.  The Debtors typically pay these taxes on a quarterly or annual basis.

14.      While the amount the Debtors pay in income/franchise taxes to the Authorities fluctuates yearly, in 2008 the Debtors accrued approximately $3.5 million in income/franchise taxes.  The Debtors' records reflect that they are current with respect to their income/franchise taxes.

**C.      Real and Personal Property Taxes**

15.      The Debtors pay real property taxes to the Authorities in four states on account of real property they own in such jurisdictions.  The Debtors typically pay these real property taxes on an annual basis.

16.      While the amount the Debtors pay in real property taxes to the Authorities fluctuates yearly, in 2008 the Debtors accrued approximately $3.5 million in real property taxes. As of the Petition Date, the Debtors estimate that they owe approximately $2.36 million with respect to 2008 real property taxes incurred prior to the Petition Date, which, absent the commencement of these chapter 11 cases, generally would be paid in the first quarter of 2009.

17.      The Debtors pay personal property taxes to the Authorities in twenty-eight states and the District of Columbia on account of equipment and other personal property they maintain

in those jurisdictions. The Debtors typically pay these property taxes on either a biannual or annual basis.

18.     While the amount the Debtors pay in personal property taxes to the Authorities fluctuates yearly, in 2008 the Debtors accrued approximately $2 million in personal property taxes. As of the Petition Date, the Debtors estimate that they owe approximately $1 million with respect to 2008 personal property taxes incurred prior to the Petition Date, which, absent the commencement of these Chapter 11 cases, generally would be paid in the first quarter of 2009.

**D.     Business and Occupation Taxes, Business License Fees and Other Fees**

19.     In the state of Washington, the Debtors are required to pay municipal authorities certain minimum business and occupation taxes, based on gross income. In order to operate their businesses in certain other taxing jurisdictions, the Debtors are required to obtain business licenses and pay the applicable Authorities corresponding flat fees. The Debtors typically pay such business and occupation taxes and business license fees on a quarterly, biannual, or annual basis, depending on the jurisdiction.

20.     While the amount the Debtors pay in business and occupation taxes and business license fees fluctuates yearly, in 2008 the Debtors accrued approximately $580,000 in such taxes and fees. The Debtors' records reflect that they are current with respect to their business and occupation taxes and business license fees.

21.     The Debtors are also required to obtain construction, telecommunication and engineering contractor licenses and pay the applicable Authorities corresponding flat fees in fifteen states and Guam. Certain of those jurisdictions also require the Debtors to post and maintain bonds in order to keep such contractor licenses, which allow certain of the Debtors' employees to install telecommunications wireline. The Debtors typically pay such contractor

6

license fees on a biannual, annual, or biennial basis, depending on the jurisdiction. The Debtors' records reflect that they are current with respect to their contractor license fees.

22.     In addition, the Debtors are subject to certain audit investigations by the Authorities and may be subject to further audit investigations (the "Audits") over the course of these chapter 11 proceedings that may result in additional amounts owed in prepetition taxes and/or fees (the "Audit Amounts") to certain Authorities. The Debtors also seek authority, in their discretion, to satisfy any such Audit Amounts in the ordinary course of business. However, nothing contained herein or in the order approving this Motion constitutes or should be construed as an admission of liability by the Debtors with respect to any Audit or Audit Amount. The Debtors expressly reserve all rights with respect to any Audit. Furthermore, the Debtors reserve the right to contest the Audit Amounts, if any, claimed to be due as a result of the Audits.

23.     The Debtors seek the relief requested to the extent that any Taxes and Fees that accrued prepetition were not in fact paid or processed prepetition, or were paid in an amount that was less than is actually owed, or in the event that any payments made prepetition were rejected, lost, or otherwise not received in full by any of the Authorities. Further, there may be Taxes and Fees incurred or collected from sales and services provided prepetition that will come due after the commencement of these Chapter 11 cases.

24.     If the Debtors do not pay the Taxes or Fees in a timely manner, the respective Authorities may take actions that could have a wide-ranging and adverse effect on the Debtors' operations as a whole. The Debtors' failure to pay the Taxes and Fees could have a material adverse impact on the Debtors' business operations in several ways:  (i) the Authorities may initiate audits of the Debtors, which would divert unnecessarily their attention away from the reorganization process; (ii) the Authorities may attempt to suspend the Debtors' operations, file

liens, seek to lift the automatic stay, or pursue other remedies that will harm the estates; and (c) certain directors and officers might be subject to personal liability, which would likely distract those key employees from their duties related to the Debtors' restructuring.  In addition, unpaid taxes may result in penalties, accrual of interest, or both.

25.     Moreover, many of these outstanding tax liabilities are for trust fund taxes that the Debtors have collected and hold in trust for the benefit of the Authorities.  Therefore, the Debtors understand that these funds do not constitute property of their estates and could not otherwise be used by them.

26.     In all cases, the Debtors' failure to pay the Taxes and Fees could have a material adverse impact on their ability to operate their business in the ordinary course.  In the ordinary course, the Debtors provide telecommunications and networking equipment, capacity and capability to both service provider and enterprise customers across multiple jurisdictions, and any disputes that could impact their ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole.  Accordingly, the Debtors seek authority to pay, in their sole discretions, the Taxes and Fees to the relevant Authorities in the ordinary course of business.

## Basis For Relief

27.     The Debtors submit that the relief requested is reasonable and necessary under the circumstances and justified by applicable law.

28.     First, Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this

section only to the extent of the debtor's legal title to such property, but not to the extent of any

equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

29.     Many of the Taxes and Fees constitute "trust fund" taxes, which are required to be

collected from their customers by the Debtors and held in trust for payment to the Authorities.

See, e.g., Begier v. Internal Revenue Serv., 496 U.S. 53, 57–60 (1990) (holding that any

prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds

are not the debtor's property); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95 (3d Cir.

1994); DeChiaro v. N.Y. State Tax Comm'n, 760 F.2d 432, 435–36 (2d Cir. 1985) (holding that

sales taxes are trust fund taxes not subject to bankruptcy discharge); see also In re Shank, 792

F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their

customers is a "trust fund" tax and not released by bankruptcy discharge). To the extent these

"trust fund" taxes are collected, they are not property of the Debtors' estates under section

541(d).  See, e.g., In re Am. Int'l Airways, Inc., 70 B.R. 102, 104–105 (Bankr. E.D. Pa. 1987); In

re Dameron, 155 F.3d 718, 721–22 (4th Cir. 1998) (funds from various lenders held by closing

agent in trust for designated third parties not property of debtor's estate).  The Debtors, therefore,

generally do not have an equitable interest in funds held on account of such "trust fund" taxes,

and the Debtors should be permitted to pay those funds to the Authorities as they become due.

30.     Second, to the extent that any of the Taxes and Fees do not constitute "trust fund"

taxes in a particular jurisdiction, the Court may rely on its general equitable powers to grant the

relief requested herein.  Section 363(b) provides that "[t]he [debtor], after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11

U.S.C. § 363(b)(1).  In addition, the Court may authorize payment of prepetition claims in

appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a),

which codifies the inherent equitable powers of the bankruptcy court, empowers the court to

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." Id. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may permit pre-

plan payments of prepetition obligations when essential to the continued operation of the

debtor's business. Specifically, this Court may use its power under section 105(a) to authorize

payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to

as the "doctrine of necessity").

31.    The "doctrine of necessity" or the "necessity of payment" rule originated in

railway cases and was first articulated by the United States Supreme Court in Miltenberger v.

Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882). The doctrine was expanded to non-railroad

debtors in the mid-century. See Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in

hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors

of non-railroad debtors where alternative was cessation of operations).

32.    The Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh

& New England Railway Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a

court could authorize the payment of prepetition claims if such payment was essential to the

continued operation of the debtor. Id. (stating that courts may authorize payment of prepetition

claims when there "is the possibility that the creditor will employ an immediate economic

sanction, failing such payment"); see also In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1

(3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of

creditors where those creditors will not supply services or material essential to the conduct of the

business until their pre-reorganization claims . . . have been paid"); In re Just for Feet, Inc., 242

B.R. 821, 824-26 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition

claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171

B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).[4]

33.    Today, the rationale for the necessity of payment rule -- the rehabilitation of a

debtor in reorganization cases -- is "the paramount policy and goal of Chapter 11." In re

Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also Burchinal v. Cent.

Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that

allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is

appropriate); In re Just for Feet, 242 B.R. at 826 (finding that payment of prepetition claims to

certain trade vendors was "essential to the survival of the debtor during the chapter 11

reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991)

("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of

reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has

developed . . . where bankruptcy courts permit the payment of certain pre-petition claims,

pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such

payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)

(approving payment of prepetition unsecured claims of tool makers as "necessary to avert a

serious threat to the Chapter 11 process"); Mich. Bureau of Workers' Disability Comp. v.

Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing

payment of prepetition worker's compensation claims on grounds that the fundamental purpose

---

[4]    Additionally, the Bankruptcy Code contemplates prepetition payments in some circumstances. Section 549(a), which deals with postpetition transfers, provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case . . . that is not authorized . . . by the court." 11 U.S.C. § 549(a). Thus, by necessary implication, a bankruptcy court may authorize limited postpetition payments to satisfy prepetition obligations. See In re Isis Foods, Inc., 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) (noting that "proposed transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack" under section 549(a); see also 11 U.S.C. § 363(b)(1) (allowing the trustee, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate").

of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 Collier on Bankruptcy § 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

34.    Third, some or all of the Taxes and Fees are or may be entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code and, therefore, must be paid in full under section 1129(a)(9)(C) of the Bankruptcy Code to confirm any chapter 11 plan. Thus, the payment of such Taxes and Fees will give the Authorities no more than that to which they otherwise would entitled under a chapter 11 plan and will save the Debtors the potential interest expense (and penalties) that otherwise might accrue on such Personal Property Taxes and Fees as a result of statutory liens.

35.    Fourth, in some cases, the Authorities may assert that the Debtors' directors and officers are personally liable if the Debtors fail to meet the obligations imposed upon them to remit Taxes and Fees. To the extent such accrued Taxes or Fees were unpaid as of the Petition Date, the Debtors' directors and officers may be subject to lawsuits in certain jurisdictions during the pendency of these chapter 11 cases, even if the failure to pay such Taxes and Fees was not a result of any malfeasance on their part. Such potential litigation would distract the Debtors, the named directors and officers, and the Court, which may be asked to entertain various motions seeking injunctions relating to potential court actions, from the reorganization efforts, causing the Debtors' estates immediate and irreparable harm. See In re Calpine Corp., 365 B.R. 401, 410

12

(S.D.N.Y. 2007) (holding that potential for distractions to employees constitutes "imminent irreparable harm" if they would impact the restructuring process).

36.    Finally, courts in this District have granted similar relief in other chapter 11 cases with respect to prepetition tax and fee obligations.  See, e.g., In re Hilex Poly Co., Case No.  08-10890 (Bankr. D. Del. May 7, 2008) (KJC); In re Linens Holding Co., Case No. 08-10832 (Bankr. D. Del. Mar 2, 2008) (CSS); In re Sharper Image Corp., Case No. 08-10322 (Bankr. D. Del. Feb. 20, 2008) (KG); In re Lillian Vernon Corp., Case No. 08-10323 (Bankr. D. Del. Feb. 21, 2008) (BLS); In re Buffets Holdings, Inc., Case No. 08-10141 (Bankr. D. Del. Jan. 23, 2008) (MFW); In re Am. Home Mortgage Holdings, Inc., Case No. 07-11047 (Bankr. D. Del. Aug. 7, 2007) (CSS); In re Pliant Corp., Case No. 06-10001 (Bankr. D. Del. Jan. 4, 2006) (MFW).

37.    Nothing contained herein is intended or should be construed as: (i) an admission as to the validity or priority of any Taxes or Fees allegedly owing to the various Authorities; (ii) a waiver of the Debtors' rights to dispute any such claim on any grounds or assert any counterclaims or affirmative defenses; (iii) a promise to pay such a claim; or (iv) an implication or admission that any particular claim would constitute a Taxes or Fees claim.

38.    The Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all electronic payments requests made by the Debtors relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

39.     Bankruptcy Rule 6003(b) provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligations regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition . . . ." As set forth above, the Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003(b) has been satisfied.

40.     Based on the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and their creditors, and therefore should be granted in these Chapter 11 cases.

## Notice

41.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) counsel to the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) counsel to the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) the United States Department of Justice. In light of the exigencies of the circumstances and the potential harm to the Debtors, their estates, and other parties in interest

that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

**No Prior Request**

42.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the

relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  January 14, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Phone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Proposed Counsel for the Debtors
and Debtors in Possession*

2665160.1