# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X
:
*In re*                                                      :       Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                           :       Case No. 09- 09-10138 (KG)
:
             Debtors.                        :       Joint Administration Pending
:
-------------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF
## AN ORDER AUTHORIZING THE DEBTORS TO
## (I) CONTINUE INSURANCE COVERAGE ENTERED
## INTO PREPETITION, AND (II) ENTER INTO NEW INSURANCE POLICIES

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1015(b) and 6003(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing the Debtors to continue their insurance policies uninterrupted and pay any prepetition amounts related to such policies to the extent that the Debtors determine, in their discretion, that such payment is necessary or appropriate; (b) authorizing the Debtors to enter into new insurance policies through renewal of their insurance policies or purchase of new policies in the ordinary course of their businesses; and (c) granting such other and further relief as is just and proper. In support of this Motion, the Debtors rely on the Declaration of John Doolittle in Support of First

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

Day Motions and Applications (the "First Day Declaration").  In further support of this Motion,

the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

title 11 of the Bankruptcy Code.

### Background

**A.      Introduction**

3.      On the date hereof (the "Petition Date"), the Debtors filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as a

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5.      On the date hereof, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] will file an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the

"Canadian Proceedings").  The Canadian Debtors will continue to manage their properties and

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as foreign representative for the Canadian Debtors, will file petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. Certain of Nortel's European subsidiaries will make consequential filings for creditor protection.

6.      Simultaneously with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

**B.      Debtors' Corporate Structure and Business**

7.      A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the First Day Declaration.[3]

<u>**Insurance Policies and Related Obligations**</u>

8.      In connection with the operation of the Debtors' businesses and the management of their properties, the Debtors maintain numerous insurance policies from third-party insurance carriers providing coverage for claims relating to, without limitation, workers' compensation and automobile liability (collectively, the "<u>Insurance Policies</u>").  The Insurance Policies include, without limitation, those policies identified in <u>Exhibit B</u> attached hereto.  In many cases, the insurance coverage maintained by Debtors is required by the diverse regulations, laws and contracts that govern their commercial activities.  Further, the Guidelines of the Office of the United States Trustee for the District of Delaware require the Debtors to maintain insurance coverage throughout the chapter 11 proceedings.  See <u>Operating Guidelines and Financial</u>

---

[3]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Reporting Requirements Required in All Cases Under Chapter 11, Office of the United States

Trustee for the District of Delaware (2008).[4]

## A.     The Third-Party Insurance Policies

9.      The Debtors maintain third-party Insurance Policies through a number of

insurance carriers.  The Insurance Policies are essential to the ongoing operation of the Debtors'

businesses.  The Debtors are required to pay premiums under the Insurance Policies based on a

fixed amount established and billed by each insurance provider or billed by the insurance broker

on behalf of the insurance provider.  The Debtors estimate that, for the 2008 renewals, the total

premiums to be paid by the Debtors on the Insurance Policies was approximately $938,863 in the

aggregate, of which approximately $292,000 will be paid postpetition as payments come due in

the ordinary course of business.  Depending on the particular Insurance Policy, premiums are

either:  (a) paid in monthly installments; (b) paid in quarterly installments; (c) paid in semi-

annual installments; or (d) pre-paid at the policy's inception or upon renewal.

10.      The Debtors do not believe that Court approval is necessary to permit them to

maintain their existing Insurance Policies.  Out of an abundance of caution, however, the

Debtors, by this Motion, seek entry of an order authorizing the payment of prepetition amounts,

if any, necessary to maintain insurance coverage currently in effect and the continuation of the

Insurance Policies and authorizing them to, in their discretion, revise, supplement or change

insurance coverage as needed.

11.      The Insurance Policies can be grouped into two categories.  The first category of

Insurance Policies is for workers' compensation in the United States (the "Workers'

Compensation Policies").  The Workers' Compensation Policies provide coverage for claims

---

[4]      Although the Debtors do not maintain all of the categories of insurance coverage listed in the U.S. Trustee
Guidelines, the Debtors' parent does maintain such categories of coverage and funds them on the Debtors' behalf, as
described further herein.

brought by employees for injuries sustained on the job. The Workers' Compensation Policies are funded and paid on a monthly basis by NNI. The majority of the Workers' Compensation Policies expire on May 15, 2009. Individual state policies may expire on different dates, however.[5] For the 2008 renewals, the total cost of premiums for the Workers' Compensation Policies is $882,004, of which $819,754 was structured to be paid over 12 monthly installments, starting in May 2008, and the remainder structured to be paid in accordance with the terms of individual state policies. The Debtors estimate that, as of the Petition Date, there remains to be paid approximately and no more than $274,000 on the Workers' Compensation Policies for the 2008 renewals.

12.    The Debtors' direct parent, NNL, obtains Letters of Credit to cover the Debtors' potential liability in outstanding Workers' Compensation Claims. The Letters of Credit are issued through an unsecured support facility entered into by NNL with Export Development Canada (the "EDC Facility"). The EDC Facility was entered into in 2003 and extended in December 2007. In 2008, the cost to NNL for fees associated with obtaining the Letters of Credit on behalf of the Debtors was $35,350, paid on a quarterly basis. The Debtors reimburse NNL for the costs of maintaining the Letters of Credit through intercompany accounting practices.

13.    In addition, the Debtors make monthly payments to the insurance companies to cover expenses and settlements related to outstanding workers' compensation claims. In 2008, the cost to the Debtors for these claims-related expenses was $784,653.

14.    The second category of Insurance Policies is for automobile insurance in the United States (the "Auto Liability Policy"). The Auto Liability Policy provides coverage for all

---

[5]    As described in Exhibit B attached hereto, one policy expires on May 31, 2009, one policy must be renewed semi-annually, and two other policies must be renewed quarterly.

liability arising from the use of company-owned or leased automobiles. The Auto Liability

Policy is funded and paid on a monthly basis by NNI and expires on May 15, 2009. For the 2008

renewal, the total cost of premiums for the Auto Liability Policy is $56,859, which was

structured to be paid over 12 monthly installments beginning in May 2008. The Debtors

estimate that, as of the Petition Date, there remains to be paid approximately and no more than

$19,000 on the Auto Liability Policy for the 2008 renewal.

15.    In addition, the Debtors make certain payments covering expenses and

settlements related to outstanding auto collision and liability claims. In 2008, the cost to the

Debtors for these claims-related expenses was $435,378. These expenses include payments to

the Debtors' primary automobile vendor, Automotive Rental Inc. ("ARI"), for the repair cost and

any incidental costs for damaged automobiles leased to the Debtors pursuant to an agreement

between the Debtors and ARI. The Debtors are contractually liable for insuring against the cost

of repairs to the leased automobiles damaged in accidents. Rather than purchasing insurance, the

Debtors engaged ARI to manage the repairs of the damaged automobiles. The ongoing payment

of these claims-related expenses postpetition will ensure that the Debtors continue to have access

to vehicles which are very important to the Debtors' business operations throughout the

reorganization period.

16.    As of the Petition Date, the Debtors have made all premium payments on the

Insurance Policies that came due prior to the Petition Date.

17.    The Debtors believe that the continuation of the Insurance Policies is essential to

the ongoing operations of Debtors' businesses. The Debtors intend to continue making premium

and claims-related payments as they come due and to maintain appropriate levels of insurance

with respect to these categories at all times.

**B.     Insurance Broker**

18.     The Debtors employ Willis of Tennessee, Inc. ("<u>Willis</u>") as insurance broker to assist with the procurement and negotiation of the Insurance Policies. Willis provides services and receives compensation (the "<u>Broker Fees</u>") from the Debtors pursuant to certain contracts with the Debtors.  In 2008, the cost to the Debtors for these fees was $60,000.  As of the Petition Date, the Debtors have paid all of the Broker Fees for services rendered prior to the Petition Date.

**C.     Parent-Funded Insurance Policies**

19.     In addition to the Insurance Policies funded directly by the NNI, the Debtors' parent, NNC, maintains a number of third-party insurance policies on behalf of all of its subsidiaries, including the Debtors (the "<u>Nortel Insurance Policies</u>").  The Nortel Insurance Policies are in the name of the Debtors' ultimate corporate parent, NNC, and the premiums for the Nortel Insurance Policies are paid by the Debtors' direct corporate parent, NNL.  The Nortel Insurance Policies cover all of NNC's subsidiaries generally, and none of the subsidiaries receive specific coverage under the Nortel Insurance Policies.

20.     The Nortel Insurance Policies are maintained for the following types of insurance: Errors and Omissions, Fiduciary Liability, Auto Liability; Comprehensive General Liability, Directors' and Officers' Liability, Property, Boiler and Machinery, Transit Floater, Crime, Employment Practices Liability and Special Accident Insurance.  Most of these types of insurance are required to be maintained either by law or by contracts entered into by Nortel or its subsidiaries, including NNI.

21.     The Debtors do not fund the Nortel Insurance Policies and therefore are not seeking relief from this Court with respect to the Nortel Insurance Policies, which the Debtors

understand will continue in the ordinary course during the reorganization period through the

Canadian Proceedings.

## Relief Requested

22.     By this Motion, the Debtors request authority to:  (a) continue the Insurance

Policies uninterrupted and pay any prepetition amounts related to the Insurance Policies to the

extent that the Debtors determine, in their discretion, that such payment is necessary or

appropriate (the "Insurance Obligations"); and (b) enter into new insurance policies through

renewal of the Insurance Policies or purchase of new policies in the ordinary course of their

businesses.  The Debtors estimate and seek to pay, through this Motion, any additional premiums

and fees as may be required to secure additional or replacement coverage during the course of

these proceedings, to the extent that the Debtors determine that obtaining such coverage would

be in the best interests of the Debtors and their estates.

## Basis for Relief

**A.      Sufficient Cause Exists for the Court to Authorize the Debtors to Honor Insurance Obligations**

23.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek

authority to continue uninterrupted, in their discretion, any and all of the Insurance Policies on

the same basis, and in accordance with the same practices and procedures as were in effect

before the Petition Date.  Thus, by this Motion, the Debtors propose to honor the Insurance

Obligations and pay any other amount to the extent that the Debtors determine, in their

discretion, that such payment is necessary to avoid cancellation, default, alteration, assignment,

attachment, lapse or any form of impairment to the coverage, benefits or proceeds provided

under any of the Insurance Policies.

24.     The Debtors will need to renew or replace certain of their Insurance Policies in the upcoming months.  If the Debtors do not honor their obligations under the Insurance Policies, certain of the insurance companies may refuse to continue doing business with the Debtors or their affiliates, causing a potential loss of coverage.  In the current insurance environment, any reduction in the number of available insurance companies may result in an inability to obtain replacement coverage, or at the very least, an increase in the Debtors' future insurance premiums.  In addition, maintaining insurance coverage for workers' compensation and automobile liability is mandatory in most if not all states in the United States.

25.     Although to the best of the Debtors' knowledge all of the Insurance Policies are current, some of the Insurance Obligations, as they come due postpetition, will relate to prepetition coverage.  The Debtors assert that authority to pay any such prepetition amounts related to the Insurance Policies, to the extent that the Debtors determine in their discretion that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse or any form of impairment to the coverage, benefits or proceeds provided under the Insurance Policies, is necessary to the continued operation of the Debtors' and their affiliates' businesses.  Continuation of such coverage -- either under renewal of existing policies or purchase of replacement policies -- is required under the law and is imperative to the protection and preservation of the Debtors' assets.  In the absence of the requested authority, the Debtors might lose their coverage, or incur considerable cash expenditures to obtain other replacement coverage, either of which would be detrimental to the Debtors' reorganization efforts.

26.     The Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may permit pre-plan

payments of prepetition obligations when essential to the continued operation of the debtor's

business.  Specifically, this Court may use its power under section 105(a) to authorize payment

of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the

"doctrine of necessity").

27.     The "doctrine of necessity" or the "necessity of payment" rule originated in

railway cases and was first articulated by the United States Supreme Court in Miltenberger v.

Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882).  The doctrine was expanded to non-railroad

debtors in the mid-century.  See Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in

hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors

of non-railroad debtors where alternative was cessation of operations).

28.     The Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh

& New England Railway Co., 657 F.2d 570, 581 (3d Cir. 1981).  The Third Circuit held that a

court could authorize the payment of prepetition claims if such payment was essential to the

continued operation of the debtor.  Id. (stating courts may authorize payment of prepetition

claims when there "is the possibility that the creditor will employ an immediate economic

sanction, failing such payment"); see also In re Penn Cent. Transp. Co., 467 F.2d 100, 102 n.1

(3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of

creditors where those creditors will not supply services or material essential to the conduct of the

business until their pre-reorganization claims . . . have been paid"); In re Just for Feet, Inc., 242

B.R. 821, 824-26 (D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition

claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171

B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).[6]

29.     Today, the rationale for the necessity of payment rule—the rehabilitation of a

debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." In re

Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also Burchinal v. Cent.

Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that

allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation" is

appropriate); In re Just for Feet, 242 B.R. at 826 (finding that payment of prepetition claims to

certain trade vendors was "essential to the survival of the debtor during the chapter 11

reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991)

("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of

reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has

developed . . . where bankruptcy courts permit the payment of certain pre-petition claims,

pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such

payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991)

(approving payment of prepetition unsecured claims of toolmakers as "necessary to avert a

serious threat to the Chapter 11 process"); Mich. Bureau of Workers' Disability Comp. v.

Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing

payment of prepetition worker's compensation claims on grounds that the fundamental purpose

of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that

---

[6]     Additionally, the Bankruptcy Code contemplates prepetition payments in some circumstances. Section
549(a), which deals with postpetition transfers, provides that "the trustee may avoid a transfer of property of the
estate . . . that occurs after the commencement of the case . . . that is not authorized . . . by the court." 11 U.S.C. §
549(a). Thus, by necessary implication, a bankruptcy court may authorize limited postpetition payments to satisfy
prepetition obligations. See In re Isis Foods, Inc., 37 B.R. 334, 336 n.3 (W.D. Mo. 1984) (noting that "proposed
transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would
thereafter be insulated from attack" under section 549(a).

will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 Collier on Bankruptcy § 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

30.     Courts also have permitted postpetition payment of prepetition claims pursuant to section 105(a) of the Bankruptcy Code in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. See In re UNR Indus., Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (permitting debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); In re Ionosphere Clubs, 98 B.R. at 175-77 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

31.     This flexible approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not satisfy its prepetition obligations. In In re Structurlite Plastics Corp., 86 B.R. 922 (Bankr. S.D. Ohio 1988), the bankruptcy court stated it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" Id. at 931 (citing In re Chateaugay, 80 B.R. at 287). The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932.

32.     Moreover, the Court may authorize the Debtors to pay prepetition amounts to maintain insurance coverage under section 363(b) of the Bankruptcy Code. Section 363(b)(1) of

the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under these sections, a court may authorize a debtor to pay certain prepetition claims. See In re Ionosphere Clubs, 98 B.R. at 175 (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); In re UAL Corp., No. 02-48191 (Bankr. N.D. Ill. Dec. 9, 2002) (authorizing payment of prepetition claims under section 363 of the Bankruptcy Code as an out-of-the-ordinary-course transaction). To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors." In re Ionosphere Clubs, 98 B.R. at 175. As discussed herein, the maintenance of the Debtors' insurance coverage is of the utmost importance to its businesses.

33.    Payment of prepetition insurance amounts and continued payment of insurance premiums will benefit the estates and the Debtors' creditors by allowing the Debtors' and their affiliates' business operations to continue without interruption. The maintenance of the Insurance Policies is critical to the preservation of the value of the Debtors' estates. In addition, payment of any unpaid prepetition amounts is necessary to keep the Insurance Policies in current effect and to ensure that there are not inadvertent lapses in coverage. Moreover, under section 1112(b)(4)(C) of the Bankruptcy Code, failure to maintain insurance may be grounds for conversion or dismissal of a chapter 11 case. Accordingly, the Debtors believe it is in the best interests of their creditors and the parties in interest to authorize the Debtors to maintain the Insurance Policies by paying outstanding prepetition premium amounts.

34.    Relief similar to that requested in this Motion has been granted in comparable chapter 11 cases in this District and elsewhere. See, e.g., In re Tribune Co., Case No. 08-13141 (KJC) (Bankr. D. Del. Dec. 10, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (MFW )

13

(Bankr. D. Del. Jan. 23, 2008 (interim order), Feb. 11, 2008 (final order)); In re Quaker Fabrics

Corp., Case No. 07-11146 (KG) (Bankr. D. Del. Sept. 5, 2007 (interim order), Sept. 19, 2007

(final order)); In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC) (Bankr. D. Del.

Apr. 3, 2007); In re Dura Auto. Sys., Inc., Case No. 06-11202 (KJC) (Bankr. D. Del. Nov. 21,

2006); In re Pliant Corp., No. 06-10001 (Bankr. D. Del. Feb. 1, 2006); see also In re Wellman,

Inc., Case. No.08-10595 (SMB) (Bankr. S.D.N.Y. Feb. 25, 2008); In re Bally Total Fitness of

Greater N.Y., Inc., Case No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 1, 2007); In re Musicland

Holding Corp., Case No. 06-10064 (SMB) (Bankr. S.D.N.Y. Feb. 1, 2006); In re Delta AirLines,

Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Sept. 15, 2005).

35.     In addition, by this Motion, the Debtors request that their banks and financial

institutions be authorized and directed, when requested by the Debtors in the Debtors' sole

discretion, to honor and pay checks or requests for funds transfers arising out of the prepetition

claims and obligations related to the Debtors' Insurance Obligations. The Debtors represent that

these payments can be readily identified as relating directly to the authorized payment of these

obligations, and that, accordingly, payments for prepetition obligations other than those

addressed herein or in another order of this Court will not be honored inadvertently.

36.     In light of the foregoing, the Debtors respectfully submit that obtaining the

authority to pay and honor claims and obligations related to the Debtors' Insurance Obligations

is essential for the Debtors' reorganization and is in the best interests of the Debtors' estates and

creditors.

37.     Nothing in this Motion should be construed as: (a) an admission as to the validity

or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any

claims or assert any counterclaims or affirmative defenses; or (c) an approval or assumption of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code.

38.     Bankruptcy Rule 6003(b) provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligations regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition . . . ." As set forth above, the Debtors submit that because the relief requested n this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003(b) has been satisfied.

## Notice

39.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the floating rate senior notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) the United States Department of Justice. In light of the exigencies of the circumstances and the potential harm to the Debtors, their estates, and other parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

**<u>No Prior Request</u>**

40.     No prior request for the relief sought herein has been made to this or any other

Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the

Court enter an order, substantially in the form attached hereto as Exhibit A, (a) authorizing the

Debtors to continue the Insurance Policies uninterrupted and pay any prepetition premiums

related to the Insurance Policies to the extent that the Debtors determine, in their discretion, that

such payment is necessary or appropriate; (b) authorizing the Debtors to enter into new insurance

policies through renewal of the Insurance Policies or purchase of new policies in the ordinary

course of their businesses; and (c) granting such other and further relief as is just and proper.

Dated:  January 14, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

                               James L. Bromley (No. 5125)
                               Lisa M. Schweitzer (No.1033)
                               One Liberty Plaza
                               New York, New York 10006
                               Telephone:  (212) 225-2000
                               Facsimile:  (212) 225-3999

                                  - and -

                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                               _____

                               Derek C. Abbott (No. 3376)
                               Eric D. Schwartz (No. 3134)
                               Thomas F. Driscoll III (No. 4703)
                               Ann C. Cordo (No. 4817)
                               1201 North Market Street
                               P.O. Box 1347
                               Wilmington, Delaware 19899-1347
                               Phone:  (302) 658-9200
                               Facsimile:  (302) 658-3989

                               *Proposed Counsel for the Debtors*
                               *and Debtors in Possession*

2665177.1