IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
      :
In re      :   Chapter 11
      :
Nortel Networks Inc., *et al.*,[1]   :   Case No. 09-10138 (KG)
      :
      Debtors.   :   Joint Administration Pending
      :
---------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 105(a) APPROVING CROSS-BORDER COURT-TO-COURT PROTOCOL

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving that certain cross-border court-to-court protocol attached hereto as Exhibit B (the "Protocol"); and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors rely on Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration"). In further support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

## Jurisdiction

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is Section 105(a) of the Bankruptcy Code.

## Background

**A.  Introduction**

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5. On the date hereof, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] will file an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, will file petitions for recognition of the

---

[2]  The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. Certain of Nortel's European subsidiaries will make consequential filings for creditor protection.

6. Simultaneously with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

**B. Debtors' Corporate Structure and Business**

7. A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the First Day Declaration.[3]

## Relief Requested

8. By the Motion, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of the Bankruptcy Code, approving the cross-border court-to-court Protocol attached hereto as Exhibit B.

## The Need for Cross-Border Relief

9. As set forth in further detail in the First Day Declaration, the Nortel Companies operate their businesses and manage their assets on a global integrated basis. To that end, the Debtors and the Canadian Debtors -- and particularly NNI and NNL -- are connected through their operation of the Carrier, Enterprise and MEN businesses, in which they have partnered with many of the same material suppliers and customers, including pursuant to contracts to which NNL and NNI are both parties or "master" agreements to which NNL is the primary party and pursuant to which certain of the Nortel Companies conduct business. For example, Flextronics Telecom Systems Ltd. (together with its affiliates and subsidiaries, "Flextronics"), Nortel's single largest supplier, entered into four "master" agreements with NNL pursuant to which

---

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

3

Flextronics supplies products and services, including manufacturing and repair services, to certain of the Nortel Companies. The relationship is synergistic in that the Canadian Debtors, particularly NNC, NNL and Nortel Networks Technology Corporation, provide various general corporate resources to NNI and its affiliates, including their research and development and general corporate overhead operations, and intellectual property licensing services. In return, NNI and its affiliates provide the Canadian Debtors with assistance in the purchase and distribution of product to customers of the Canadian Debtors, and payments for such resources that serve as a source of revenue to sustain their operations.

10. The operations of the Debtors and the Canadian Debtors also are interconnected in that NNI has guaranteed most of the public debt issued by NNL and NNC, and NNL has guaranteed the public debt issued by NNCC:

- $150 million principal amount of 7.875% fixed rate senior notes, due in 2026, issued by NNCC, guaranteed by NNL

- $1.125 billion principal amount of 10.75% fixed rate senior notes, due in 2016, issued by NNL, guaranteed by NNI and NNC.

- $575 million principal amount of convertible 2.125% senior notes, due in 2014, issued by NNC, guaranteed by NNI and NNL.

- $550 million principal amount of 10.125% fixed rate senior notes, due in 2013, issued by NNL, guaranteed by NNI and NNC.

- $575 million principal amount of convertible 1.75% fixed rate senior notes, due in 2012, issued by NNC, guaranteed by NNI and NNL.

- $1 billion principal amount of floating rate senior notes (at LIBOR + 4.25%), due in 2011, issued by NNL, guaranteed by NNI and NNC.

11. The Debtors and Canadian Debtors also rely on each other in their ordinary course operations, including through the use of group insurance and other operational agreements such as a master R&D agreement, as it has been amended from time to time, pursuant to which the Debtors and Canadian Debtors (as well as other Nortel companies) support

their own and each other's cash management needs. These arrangements provide substantial benefits to both the Debtors and the Canadian Debtors, and the companies desire to manage their Insolvency Proceedings in a coordinated fashion so as to maximize the value of each of their estates. The Debtors therefore seek (and the Canadian Debtors are seeking in the Canadian Proceedings) approval of a protocol that will provide the Bankruptcy Court and the Canadian Court with a framework for the coordination of the administration of the U.S. Proceedings and the Canadian Proceedings on matters of concern to both Courts. The Protocol proposes to establish general administrative procedures to govern and facilitate the administration of cross-border matters among the Debtors and the Canadian Debtors and the Insolvency Proceedings, and to permit the effectuation of cooperative principles such as comity as appropriate, while also ensuring that the Bankruptcy Court and the Canadian Court maintain their independent jurisdiction over other aspects of their respective Insolvency Proceedings.

## The Court-to-Court Protocol

12. The following is an overview of the provisions of the proposed Protocol:[4]

13. <u>Purpose and Goals</u>: The Protocol seeks to promote the following mutually desirable goals and objectives in both Proceedings:

  a. harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

  b. promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

  c. honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

---

[4] This overview is merely intended to provide a short summary of some of the provisions of the Protocol. If any conflict arises between this overview and the Protocol, the terms of the Protocol shall control.

5

d.   promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (as such terms are defined in the Protocol) and other creditors and interested parties in the Insolvency Proceedings;

   e.   facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, where located; and

   f.   implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Insolvency Proceedings.

14. <u>Comity and Independence of the Courts</u>: This Court shall have sole and exclusive jurisdiction and power over the conduct of the chapter 11 proceedings and the hearing and determination of matters arising therein. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising therein. By approving and implementing the Protocol, neither this Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States or Canada.

15. <u>Cooperation</u>: To harmonize and coordinate the administration of the Proceedings, this Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other court. In furtherance of the foregoing:

   a.   This Court and the Canadian Court may communicate with one another with respect to any procedural matter relating to the Insolvency Proceedings.

   b.   Where the issue of the proper jurisdiction or Court to determine an issue is raised by any party in interest in either of the Insolvency Proceedings with respect to a motion or an application filed in either Court, the Court before which such motion or application was initially filed will contact the other Court and determine an appropriate process by which the issue of jurisdiction will be determined, and which process shall be subject to submissions by the Debtors, the Canadian Debtors, the U.S. Trustee, the

      Creditors Committee, Monitor and any party in interest prior to any
      determination on the issue of jurisdiction being made by either Court.

  c.  The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

  d.  This Court and the Canadian Court may conduct joint hearings with respect to any cross-border matter or the interpretation or implementation of this Protocol where both the U.S. Court and the Canadian Court consider such a joint hearing to be necessary or advisable.

16. <u>Other Provisions</u>: The Protocol also contains other provisions that, among other things, concern (a) retention and compensation of estate representatives and professionals, (b) procedures for resolving disputes and (c) the preservation of rights.

## Basis For Relief

17. In order to facilitate the efficient and effective administration of cross-border issues that may arise from time to time in these Insolvency Proceedings, the Debtors believe that is necessary and appropriate to set out and have this Court and the Canadian Court adopt and approve a set of administrative and procedural guidelines for dealing with such cross-border issues. The proposed administrative and procedural guidelines are set forth in the Protocol attached hereto.

18. As set forth therein, the Protocol is designed to promote the orderly and efficient administration of the Insolvency Proceedings, honor the independence and integrity of this Court and the Canadian Court, promote international cooperation and respect for comity among this Court and the Canadian Court, facilitate the fair and open administration of the Insolvency Proceedings and implement a framework to address issues that will arise in these cases.

19. The relief requested in this Motion is authorized pursuant to section 105(a) of the Bankruptcy Code, which grants broad authority to a court to issue orders that are necessary or

appropriate to carry out the provisions of this title. Section 105(a) provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20. A number of courts, in this District and in other districts, have authorized similar protocols for managing cross-border insolvency proceedings. See, e.g., In re Progressive Molded Prods., Case No. 08-11253 (KJC) (Bankr. D. Del. July 14, 2008); In re Pope & Talbot, Inc., Case No. 07-11738 (CSS) (Bankr. D. Del. Dec. 14, 2007); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. Apr. 12, 2007); In re Systech Retail Sys. (U.S.A.) Inc., Case No. 03-00142-5-ATS (Bankr. E.D.N.C. 2003); In re Fed. Mogul Global, Inc., Case No. 01-10578 (Bankr. D. Del. Feb. 7, 2002); In re Fin. Asset Mgmt. Found., Case No. 01-03640-304 (Bankr. S.D. Cal. July 25, 2001); In re PSINet Inc., Case No. 01-13213 (Bankr. S.D.N.Y. July 10, 2001); In re Laidlaw USA, Inc., Case No. 01-14099 (Bankr. W.D.N.Y. Aug. 20, 2001); In re Livent (U.S.) Inc., Case No. 98-48312 (Bankr. S.D.N.Y. 1998).

21. Furthermore, the Protocol is consistent with the Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases adopted and promulgated by The American Law Institute and largely incorporates those Guidelines. Accordingly, there is ample authority for this Court to grant the relief requested.

22. For the foregoing reasons, the Debtors assert that the Protocol is necessary to promote the efficient and effective administration of these chapter 11 proceedings with the Canadian Proceedings and is in the best interests of the Debtors' estates, their creditors, and all parties-in-interest.

### Notice

23. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of

Delaware; (ii) the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the floating rate senior notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) the United States Department of Justice. In light of the exigencies of the circumstances and the potential harm to the Debtors, their estates, and other parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

## No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court authorize and approve the Protocol, substantially in the form attached hereto and grant such other and further relief as is just and proper.

Dated: January 14, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ Derek C. Abbott_
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Phone: (302) 658-9200
Facsimile: (302) 658-3989

*Proposed Counsel for the Debtors
and Debtors in Possession*

2665218.1