**EXHIBIT B**

# CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol.  Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

## A.    Background

1.    Nortel Networks Inc. ("NNI") is the wholly owned U.S. subsidiary of Nortel Networks Limited ("NNL"), the principal Canadian operating subsidiary of Nortel Networks Corporation ("NNC").  NNC is a telecommunications company headquartered in Toronto, Ontario, Canada.  NNI is incorporated under Delaware law and is headquartered in Richardson, Texas.

2.    NNI and certain of its affiliates (collectively, the "U.S. Debtors"),[1] have commenced reorganization proceedings (the "U.S. Proceedings") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-_____.  The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy

---

[1]    The Debtors in these chapter 11 cases are:  Nortel Networks Inc., Nortel Networks Capital Corporation, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

1

Code.  The Office of United States Trustee (the "U.S. Trustee") has appointed or may appoint an official committee of unsecured creditors (the "Creditors Committee") in the U.S. Proceeding.

3.    On January 14, 2009, the U.S. Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors have obtained an initial order of the Canadian Court (as amended and restated, the "Canadian Order"), under which, inter alia:  (a) the Canadian Debtors have been determined to be entitled to relief under the CCAA; (b) Ernst & Young Inc. has been appointed as monitor (the "Monitor") of the Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the CCAA and the Canadian Order; and (c) a stay of proceedings in respect of the Canadian Debtors has been granted.

4.    The Monitor filed petitions in the U.S. Court seeking recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings"). NNI also filed an application to the Canadian Court pursuant to section 18.6 of the CCAA recognizing the U.S. Proceedings as "foreign proceedings" in Canada and giving effect to the automatic stay thereunder in Canada.  None of the U.S. Debtors or Canadian Debtors are applicants in both the U.S. Proceedings and Canadian Proceedings.

5.    For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Proceedings and the Canadian

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings shall be referred to herein collectively as the "Insolvency Proceedings," and (c) the

U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts", and

each individually as a "Court."

**B.** **Purpose and Goals**

6.   Though full and separate plenary proceedings are pending in the United States

for the U.S. Debtors and in Canada for the Canadian Debtors, the implementation of

administrative procedures and cross-border guidelines is both necessary and desirable to

coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto,

ensure the maintenance of the Courts' respective independent jurisdiction and give effect to the

doctrines of comity.  Accordingly, this Protocol has been developed to promote the following

mutually desirable goals and objectives in the Insolvency Proceedings:

a.   harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

b.   promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

c.   honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

d.   promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (which include the Chapter 11 Representatives and the Canadian Representatives as such terms are defined below) and other creditors and interested parties in the Insolvency Proceedings;

e.   facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

f.   implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Insolvency Proceedings.

3

As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Insolvency Proceedings should be dealt with under and in accordance with the principles of this Protocol.  Where an issue is to be addressed only to one Court, in rendering a determination in any cross-border matter, such Court may:  (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole discretion and bearing in mind the principles of comity, either (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part to the other Court; or (iii) seek a joint hearing of both Courts.

**C.      Comity and Independence of the Courts**

7.    The approval and implementation of this Protocol shall not divest nor diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively.  By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States of America or Canada.

8.    The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the U.S. Proceedings.  The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising in the Canadian Proceedings.

9.    In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

a.        increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such

4

court or tribunal to provide appropriate relief under applicable law on an ex parte or "limited notice" basis;

b.     require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

c.     require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

d.     require the Debtors, the Creditors Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

e.     authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

f.     preclude the Debtors, the Creditors Committee, the U.S. Trustee, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

10.  The Debtors, the Creditors Committee, the Estate Representative and their respective employees, members, agents and professionals shall respect and comply with the independent, non-delegable duties imposed upon them, if any, by the Bankruptcy Code, the CCAA, the CCAA Order and other applicable laws.

**D.**    <u>**Cooperation**</u>

11.  To assist in the efficient administration of the Insolvency Proceedings and in recognizing that the U.S. Debtors and Canadian Debtors may be creditors of the others' estates, the Debtors and their respective Estate Representatives shall, where appropriate:  (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court and (b) take any other appropriate steps to coordinate the administration of the Insolvency Proceedings for the benefit of the Debtors' respective estates.

12.  To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court.  In furtherance of the foregoing:

    a.    The U.S. Court and the Canadian Court may communicate with one another with respect to any procedural matter relating to the Insolvency Proceedings.

    b.    Where the issue of the proper jurisdiction or Court to determine an issue is raised by an interested party in either of the Insolvency Proceedings with respect to a motion or application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined; which process shall be subject to submissions by the Debtors, the U.S. Trustee, the Creditors Committee, the Monitor and any interested party prior to a determination on the issue of jurisdiction being made by either Court.

    c.    The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

    d.    The U.S. Court and the Canadian Court may conduct joint hearings with respect to any cross-border matter or the interpretation or implementation of this Protocol where both the U.S. Court and the Canadian Court consider such a joint hearing to be necessary or advisable.  With respect to any joint hearings, unless otherwise ordered, the following procedures will be followed:

        (i)    A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

        (ii)    Submissions or applications by any party that are or become the subject of a joint hearing of the Courts (collectively, "Pleadings") shall be made or filed initially only to the Court in which such party is appearing and seeking relief.  Promptly after the scheduling of any joint hearing, the party submitting such Pleadings to one Court shall file courtesy copies with the other Court.  In any event, Pleadings seeking relief from both Courts shall be filed with both Courts.

(iii)    Any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing or application (collectively, "Evidentiary Materials") shall file or otherwise submit such materials to both Courts in advance of the joint hearing.  To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the joint hearing without, by the mere act of such filings, being deemed to have attorned to the jurisdiction of the Court in which such material is filed, so long as it does not request in its materials or submissions any affirmative relief from such Court.

(v)    The Judge of the U.S. Court and the Justice of the Canadian Court who will preside over the joint hearing shall be entitled to communicate with each other in advance of any joint hearing, with or without counsel being present, to establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and for the rendering of decisions by the Courts, and to address any related procedural, administrative or preliminary matters.

(vi)    The Judge of the U.S. Court and the Justice of the Canadian Court, shall be entitled to communicate with each other during or after any joint hearing, with or without counsel present, for the purposes of determining whether consistent rulings can be made by both Courts, coordinating the terms upon of the Courts' respective rulings, and addressing any other procedural or administrative matters.

13.   Notwithstanding the terms of the paragraph 12 above, this Protocol recognizes that the U.S. Court and the Canadian Court are independent courts.  Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to:  (a) matters presented to such Court; and (b) the conduct of the parties appearing in such matters.

7

14.  Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 26 herein.

**E.    Retention and Compensation of Estate Representative and Professionals**

15.  The Monitor, its officers, directors, employees, counsel and agents, wherever located, (collectively the "Monitor Parties") and any other estate representatives in the Canadian Proceedings (collectively, the "Canadian Representatives") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law.  The Canadian Representatives shall not be required to seek approval of their retention in the U.S. Court for services rendered to the Debtors.  Additionally, the Canadian Representatives:  (a) shall be compensated for their services to the Debtors solely in accordance with the CCAA, the CCAA Order and other applicable Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S Court.

16.  The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the CCAA

Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the

CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from

actions of the Monitor Parties constituting gross negligence or willful misconduct.

17.    Any estate representative appointed in the U.S. Proceedings, including

without limitation any examiners or trustees appointed in accordance with section 1104 of the

Bankruptcy Code (collectively, the "Chapter 11 Representatives") shall be subject to the sole and

exclusive jurisdiction of the U.S. Court with respect to all matters, including:  (a) the Chapter 11

Representatives' tenure in office; (b) the retention and compensation of the Chapter 11

Representatives; (c) the Chapter 11 Representatives' liability, if any, to any person or entity,

including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings;

and (d) the hearing and determination of any other matters relating to the Chapter 11

Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable

laws of the United States.  The Chapter 11 Representatives and their counsel and other

professionals retained therefor shall not be required to seek approval of their retention in the

Canadian Court.  Additionally, the Chapter 11 Representatives and their counsel and such other

professionals:  (a) shall be compensated for their services to the Debtors solely in accordance

with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S.

Court; and (b) shall not be required to seek approval of their compensation for services

performed for the Debtors in the Canadian Court.

18.    Any professionals retained by or with the approval of the Canadian Debtors

(collectively, the "Canadian Professionals"), shall be subject to the sole and exclusive

jurisdiction of the Canadian Court, provided they are not paid by the U.S. Debtors.  Accordingly,

the Canadian Professionals:  (a) shall be subject to the procedures and standards for retention and

compensation applicable in Canada with respect to services performed on behalf of the Canadian

Debtors; and (b) shall not be required to seek approval of their retention or compensation in the

U.S. Court with respect to services performed on behalf of the Canadian Debtors.

19.  Any professionals retained by the U.S. Debtors and any professionals

retained by the Creditors Committee (collectively, the "<u>Chapter 11 Professionals</u>") shall be

subject to the sole and exclusive jurisdiction of the U.S. Court.  Accordingly, the Chapter 11

Professionals:  (a) shall be subject to the procedures and standard for retention and compensation

applicable in the U.S. Court under the Bankruptcy Code with respect to services performed on

behalf of the U.S. Debtors and any other applicable laws of the United States or orders of the

U.S. Court; and (b) shall not be required to seek approval of their retention or compensation in

the Canadian Court with respect to services performed on behalf of the U.S. Debtors.

**F.**     **Appearances**

20.  Upon any appearance or filing, as may be permitted or provided for by the

rules of the applicable Court, the Debtors, their creditors and other interested parties in the

Insolvency Proceedings, including the Creditors Committee, the Estate Representatives and the

U.S. Trustee, shall be subject to the personal jurisdiction of the Canadian Court or the U.S.

Court, as applicable, with respect to the particular matters as to which they appear before that

Court.

**G.**     **Notice**

21.  Notice of any motion, application or other pleading or paper filed in one or

both of the Insolvency Proceedings involving or relating to matters addressed by this Protocol

and notice of any related hearings or other proceedings shall be given by appropriate means

(including, where circumstances warrant, by courier, telecopier or other electronic forms of

communication) to the following:  (a) all creditors and interested parties, in accordance with the

practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to

the extent not otherwise entitled to receive notice under clause (a) of this sentence, counsel to the

Debtors; the U.S. Trustee; the Monitor; the Creditors Committee and any other statutory

committees appointed in these cases and such other parties as may be designated by either of the

Courts from time to time.  Notice in accordance with this paragraph shall be given by the party

otherwise responsible for effecting notice in the jurisdiction where the underlying papers are

filed or the proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors

or the Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be,

with copies of any orders, decisions, opinions or similar papers issued by the other Court in the

Insolvency Proceedings.

22.  When any cross-border issues or matters addressed by this Protocol are to be

addressed before a Court, notices shall be provided in the manner and to the parties referred to in

paragraph 21 above.

**H.**     **Effectiveness; Modification**

23.  This Protocol shall become effective only upon its approval by both the U.S.

Court and the Canadian Court.

24.  This Protocol may not be supplemented, modified, terminated, or replaced in

any manner except upon the approval of both the U.S. Court and the Canadian Court after notice

and a hearing.  Notice of any legal proceeding to supplement, modify, terminate or replace this

Protocol shall be given accordance with the notice provisions set forth in paragraph 21 above.

**I.**     **Procedure for Resolving Disputes Under this Protocol**

25.  Disputes relating to the terms, intent or application of this Protocol may be

addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice

in accordance with the notice provisions outlined in paragraph 21 above.  In rendering a

11

determination in any such dispute, the Court to which the issue is addressed:  (a) shall consult

with the other Court; and (b) may, in its sole and exclusive discretion, either:  (i) render a binding

decision after such consultation; (ii) defer to the determination of the other Court by transferring

the matter, in whole or in part, to such other Court; or (iii) seek a joint hearing of both Courts in

accordance with paragraph 12 above.  Notwithstanding the foregoing, in making a determination

under this paragraph, each Court shall give due consideration to the independence, comity and

inherent jurisdiction of the other Court established under existing law.

26.  In implementing the terms of this Protocol, the U.S. Court and the Canadian

Court may, in their sole, respective discretion, provide advice or guidance to each other with

respect to legal issues in accordance with the following procedures:

a. the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

b. the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

c. copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 21 hereof; and

d. the Courts may jointly decide to invite the Debtors, the Creditors Committee, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

## J.    Preservation of Rights

27.  Except as specifically provided herein, neither the terms of this Protocol nor

any actions taken under the terms of this Protocol shall:  (a) prejudice or affect the powers,

rights, claims and defenses of the Debtors and their estates, the Creditors Committee, the Estate

Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law,

including the Bankruptcy Code and the CCAA, and the orders of the Courts; or (b) preclude or

prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

**Schedule A**
**(Guidelines)**

# Guidelines
## Applicable to Court-to-Court Communications in Cross-Border Cases

*Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

### Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a) Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b) Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c) Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d) The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a) Each Court should be able to simultaneously hear the proceedings in the other Court.

(b) Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c)   Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)   Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)   Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

### Guideline 10

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

### Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

### Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

### Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11