## **Exhibit 1**

Court File No. 09-CL-7950



**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 14TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JANUARY, 2009 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**INITIAL ORDER**

THIS APPLICATION, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of John Doolittle sworn January 14, 2009 (the "Doolittle Affidavit") and the Exhibits thereto, the report dated January 14, 2009 of Ernst & Young Inc. ("E&Y"), the proposed monitor, and on hearing the submissions of counsel for the Applicants, counsel for the boards of directors of Nortel Networks Corporation and Nortel Networks Limited, counsel for E&Y counsel for Export Development Canada ("EDC"), Flextronics Telecom Systems Ltd., no one else appearing on this Application and on reading the consent of E&Y to act as the Monitor,

**SERVICE**

1.     THIS COURT ORDERS that the time for service of the Notice of Application and the Application Record is hereby abridged so that this Application is properly returnable today and hereby dispenses with further service thereof.

**APPLICATION**

2.     THIS COURT ORDERS AND DECLARES that each of the Applicants is a "debtor company" to which the CCAA applies.

**PLAN OF ARRANGEMENT**

3.     THIS COURT ORDERS that each of the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "Plan") between, *inter alia*, such Applicant and one or more classes of its secured and/or unsecured creditors as it deems appropriate.

**POSSESSION OF PROPERTY AND OPERATIONS**

4.     THIS COURT ORDERS that each of the Applicants shall remain in possession and control of its current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "Property").  Subject to further Order of this Court, each of the Applicants shall continue to carry on business in a manner consistent with the preservation of its business (the "Business") and Property.  Each of the Applicants shall be authorized and empowered to continue to retain and employ the employees, consultants, agents, experts, brokers, accountants, legal counsel, financial advisors and such other persons (collectively "Assistants") currently retained or employed by such Applicant, with liberty to retain such further Assistants as such Applicant deems reasonably necessary or desirable for the Business or to carry out the terms of this Order or for the purposes of the Plan.

5.     THIS COURT ORDERS that the Applicants shall be entitled to continue to utilize the central cash management system currently in place as described in the Doolittle Affidavit or replace it with another substantially similar central cash management system (the "Cash

Management System") and that any present or future bank or banks providing the Cash Management System shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Applicants of funds transferred, paid, collected or otherwise dealt with in the Cash Management System; shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Applicants, pursuant to the terms of the documentation applicable to the Cash Management System; and shall be, in its capacity as provider of the Cash Management System, an unaffected creditor under the Plan with regard to any claims or expenses it may suffer or incur in connection with the provision of the Cash Management System.

6.    THIS COURT ORDERS that each of the Applicants, either on its own behalf or on behalf of another Applicant, shall be entitled but not required to pay the following expenses whether incurred prior to, on or after the date of this Order:

(a)    all outstanding and future wages, salaries and employee benefits (including, but not limited to, employee medical and similar benefit plans, relocation and tax equalization programs, the Incentive Plan (as defined in the Doolittle Affidavit) and employee assistance programs), current service, special and similar pension benefit payments, vacation pay, commissions and employee and director expenses, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)    compensation to employees in respect of any payments made to employees prior to the date of this Order by way of the issuance of cheques or electronic transfers, which are subsequently dishonoured due to the commencement of proceedings under the CCAA;

(c)    all outstanding and future amounts owing to or in respect of individuals working as independent contractors in connection with the Business;

- 4 -

(d)     the fees and disbursements of any Assistants retained or employed in accordance with paragraph 4 hereof;

(e)     subject to the consent of the Monitor, amounts owing by one of more of the Applicants in respect of its Customer Programs (as defined in the Doolittle Affidavit);

(f)     subject to consent of the Monitor, amounts owing by one or more of the Applicants to any other Nortel Company (as defined in the Doolittle Affidavit) in order to settle their inter-company accounts and make inter-company loans in the ordinary course of business, including as a result of the Nortel Companies' Transfer Pricing Model (as defined in the Doolittle Affidavit); and

(g)     subject to the consent of the Monitor, amounts owing to the Applicants' carriers and warehousemen.

7.     THIS COURT ORDERS that, except as otherwise provided to the contrary herein, each of the Applicants shall be entitled but not required to pay all reasonable expenses incurred by it in carrying on the Business in the ordinary course on and after the date of this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers insurance) and maintenance and security services; and

(b)     payment for goods or services actually supplied to the Applicants on or after the date of this Order.

8.     THIS COURT ORDERS that the each of the Applicants shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of

(i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b) all goods and services or other applicable sales taxes (collectively, "Sales Taxes") required to be remitted by such Applicant in connection with the sale of goods and services by such Applicant, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c) any amount payable to the Crown in right of Canada or of any Province or Territory thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by such Applicant.

9.      THIS COURT ORDERS that until such time as an Applicant delivers a notice in writing to repudiate a real property lease in accordance with paragraph 11(c) of this Order (a "Notice of Repudiation"), each Applicant shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated by such Applicant and the landlord from time to time ("Rent"), for the period commencing from and including the date of this Order, monthly on the first day of each month, in advance (but not in arrears). On the date of the first of such payment, any arrears relating to the period commencing from and including the date of this Order shall also be paid. Upon delivery of a Notice of Repudiation, such Applicant shall pay all Rent due for the notice period stipulated in paragraph 11(c) of this Order, to the extent that Rent for such period has not already been paid.

10.     THIS COURT ORDERS that, except as specifically permitted herein, each of the Applicants is hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by such Applicant to any of

its creditors as of this date unless such payments have been approved by the Monitor; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary course of business unless such obligation has been approved by the Monitor.

**RESTRUCTURING**

11.     THIS COURT ORDERS that each of the Applicants shall, have the right to:

  (a)     permanently or temporarily cease, downsize or shut down any of its business or operations and to dispose of redundant or non-material assets not exceeding CDN$10,000,000 in any one transaction or CDN$50,000,000 in the aggregate, subject to paragraph (c), if applicable;

  (b)     terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate and to deal with the consequences thereof in the Plan or on further order of the Court;

  (c)     in accordance with paragraphs 12 and 13, vacate, abandon or quit the whole but not part of any leased premises and/or repudiate any real property lease and any ancillary agreements relating to any leased premises, on not less than seven (7) days notice in writing to the relevant landlord on such terms as may be agreed upon between the Applicant and such landlord, or failing such agreement, to deal with the consequences thereof in the Plan;

  (d)     repudiate such of its arrangements or agreements of any nature whatsoever, including, without limitation, any of its deferred compensation, or bonus plans, change of control plans, stock options or restructured stock unit plans and  shareholder rights plans whether oral or written, as such Applicant may deem appropriate on such terms as may be agreed upon between such Applicant or any one of them and such counter-parties, or failing such agreement, to deal with the consequences thereof in the Plan; and

(e)     pursue all avenues of refinancing and offers for material parts of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing or any sale (except as permitted by subparagraph (a), above);

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "Restructuring").

12.     THIS COURT ORDERS that each of the Applicants shall provide each of the relevant landlords with notice of such Applicant's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes such Applicant's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and such Applicant, or by further Order of this Court upon application by such Applicant on at least two (2) days notice to such landlord and any such secured creditors. If such Applicant repudiates the lease governing such leased premises in accordance with paragraph 11(c) of this Order, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in paragraph 11(c) of this Order), and the repudiation of the lease shall be without prejudice to such Applicant's claim to the fixtures in dispute.

13.     THIS COURT ORDERS that if a Notice of Repudiation is delivered, then (a) during the notice period prior to the effective time of the repudiation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the repudiation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises and such landlord shall be entitled to notify the Applicants of the basis on which it is taking possession and to gain possession of and re-lease such leased premises to any third party or parties on such terms as such landlord considers advisable,

provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

14.    THIS COURT ORDERS that until and including February 13, 2009 or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced, or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the affected Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the affected Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

15.    THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the affected Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) exempt the Applicants from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH RIGHTS

16.    THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

## CONTINUATION OF SERVICES

17.     THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicants or with third parties on behalf of the Applicants, or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, employment agency services, insurance, transportation services, utility, leasing or other services to the Business or to any of the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the applicable Applicant and that such Applicant shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by such Applicant, in accordance with normal payment practices of such Applicant, as applicable, or such other practices as may be agreed upon by the supplier or service provider and the affected Applicant and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

18.     THIS COURT ORDERS that, notwithstanding anything else contained herein, no creditor of the Applicants shall be under any obligation after the making of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

19.     THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.5(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such

obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS AND OFFICERS

20.     THIS COURT ORDERS that each of the Applicants shall indemnify its directors and officers from all claims, costs, charges and expenses relating to the failure of such Applicant, after the date hereof, to make payments of the nature referred to in subparagraphs 6(a), 6(b), 8(a), 8(b) and 8(c) of this Order or for the Applicants' failure to make payments in respect of employer health tax or workers' compensation which they sustain or incur by reason of or in relation to their respective capacities as directors and/or officers except to the extent that, with respect to any officer or director, such officer or director has actively participated in the breach of any related fiduciary duties or has been grossly negligent or guilty of wilful misconduct.

21.     THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property, which charge shall not exceed an aggregate amount of CDN$90 million, as security for the indemnities provided in paragraph 20 of this Order as well as the fees and disbursements of their legal counsel.  The Directors' Charge shall have the priority set out in paragraphs 42 and 44 herein.

22.     THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) each of the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 20 of this Order.

23.     THIS COURT ORDERS that each of NNC's and NNL's directors shall be entitled to receive remuneration in cash on a current basis at current compensation levels (less an overall U.S.$25,000 reduction) notwithstanding the terms of, or elections made under, the Directors' Compensation Plan.

DOCSTOR: 1573169\8

**APPOINTMENT OF MONITOR**

24.     THIS COURT ORDERS that E&Y is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Property and the Applicants' conduct of the Business with the powers and obligations set out in the CCAA or set forth herein and that each of the Applicants and its officers, directors, and Assistants shall advise the Monitor of all material steps taken by such Applicant pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations.

25.     THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

    (a)     monitor the Applicants' receipts and disbursements;

    (b)     provide the consents contemplated herein;

    (c)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

    (d)     advise the Applicants in their preparation of the Applicants' cash flow statements and any other reporting to the Court or otherwise;

    (e)     advise the Applicants in their development of the Plan or Plans and any amendments to such Plan or Plans;

    (f)     assist the Applicants, to the extent required by the Applicants, with the Restructuring;

    (g)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan or Plans;

    (h)     have full and complete access to the books, records and management, employees and advisors of the Applicants and to the Business and the Property to the extent required to perform its duties arising under this Order;

(i)   be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)   consider, and if deemed advisable by the Monitor, prepare a report and assessment on the Plan or Plans;

(k)   assist the Applicants with respect to any insolvency proceedings commenced by or with respect to any other Nortel Company (as defined in the Doolittle Affidavit) in any foreign jurisdiction (collectively, "Foreign Proceedings") and report to this Court, as it deems appropriate, on the Foreign Proceedings with respect to matters relating to the Applicants;

(l)   apply as the foreign representative of the Applicants, for recognition of these proceedings as "Foreign Main Proceedings", pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §101 (the "U.S. Bankruptcy Code") or similar legislation in any other jurisdiction; and

(m)   perform such other duties as are required by this Order or by this Court from time to time.

26.   THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

27.   THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the

*Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "Environmental Legislation"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

28.     THIS COURT ORDERS that that the Monitor shall provide any creditor of the Applicants with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

29.     THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment and the fulfilment of its duties or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

30.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to directors shall be paid their reasonable fees and disbursements incurred both before and after the making of the Order, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. Each of the Applicants is hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor, counsel for the Applicants and counsel to directors on a weekly basis and, in addition, each of the Applicants is hereby authorized to pay to: (a) the Monitor and its Canadian and U.S. counsel a retainer in the aggregate amount of CDN$750,000; and (b) counsel to the Applicants a retainer

in the amount of CDN$750,000 (collectively, the "Retainers") to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

31.    THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

32.    THIS COURT ORDERS that the Monitor, counsel to the Monitor, if any, and the Applicants' counsel shall be entitled to the benefit of and are hereby granted a charge (the "Administration Charge") on the Property, which charge shall not exceed an aggregate amount of $5,000,000, as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priorities set out in paragraphs 42 and 44 hereof.

**EDC**

33.    THIS COURT ORDERS that EDC shall be entitled to the benefit of and is hereby granted a charge (the "EDC Charge") on the Property, as security for new Support (as such term is defined in the EDC Support Facility, as defined in the Doolittle Affidavit) including any renewals or extensions of existing Support and agreed to fees and expenses. The EDC Charge shall have the priority set out in paragraphs 42 and 44 hereof.

**INTERCOMPANY LOANS**

34.    THIS COURT ORDERS to the extent that an Applicant receives a post-filing inter-company loan or other transfer (including goods and services) from a Chapter 11 Entity (as defined in the Doolittle Affidavit) (including as a result of the Applicants' cash management system or otherwise) (each such Applicant, a "Beneficiary Applicant"), and such post-filing inter-company loan or other transfer is made (each an "Advance") by a Chapter 11 Entity (a "Protected Entity"), then, subject to the limitations set forth in this paragraph:

(a)    the Protected Entity shall have a proven and valid claim against such Beneficiary Applicant for the amount of such Advance (each, an "Inter-company Reimbursement

- 15 -

Claim"), which Inter-company Reimbursement Claim shall bear interest at a rate agreed between the applicable Beneficiary Applicant and Protected Entity from time to time for the period in accordance with past practice; and

(b)    all of the Property of the Beneficiary Applicant, is hereby charged by a mortgage, lien and security interest (such mortgage, lien and security interest, "Inter-company Charge") in favour of each of the Protected Entities as security for payment of the Inter-company Reimbursement Claim (including principal, interest and expenses) by the applicable Beneficiary Applicant to the corresponding Protected Entity.

35.    THIS COURT ORDERS that the Inter-company Charge shall also secure any amounts owed by any of the Applicants to any Chapter 11 Entity at the date of filing under the Existing NNI Revolver (as defined in the Doolittle Affidavit) and all rights that such Chapter 11 Entity has with respect thereto are preserved.

36.    THIS COURT ORDERS the Inter-company Charge shall be junior, subject and subordinate only to the other Charges (defined below), and any other future charges against such Beneficiary Applicant that, by the Court order creating them, are expressly stated to be senior to the Inter-company Charges entered after notice and a hearing.

37.    THIS COURT ORDERS that pending further order of this Court, an Inter-company Charge shall be a "silent" charge and the Protected Applicant shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Inter-company Reimbursement Claim held by such party, including, without limitation, as to seeking relief from the stay granted hereunder, or seeking any sale, foreclosure, realization upon repossession or liquidation of any Property of a Beneficiary Applicant, or taking any position with respect to any disposition of the Property, the business operations, or the reorganization of a Beneficiary Applicant. An Inter-company Charge automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that Property subject to such Inter-company Charge is sold or otherwise disposed of in accordance with the terms of this Order or further order of this Court after notice and a hearing, with respect to the effect of an Inter-company Charge on any sale of Property by any Beneficiary Applicant.

38.    THIS COURT ORDERS that the Beneficiary Applicants may sell Property, in accordance with the terms of this Order or further order of this Court after notice and a hearing, in each case free and clear of any Inter-company Charge, with such Inter-company Charge attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the Property sold.

## INTERIM GROUP SUPPLIER PROTOCOL AGREEMENT

39.    THIS COURT ORDERS that the Applicants be and are hereby authorized to enter into a group supplier protocol agreement (the "Interim GSPA") substantially in the form attached as Exhibit "C" to the Doolittle Affidavit which agreement shall be effective upon the appointment of the Administrators in the United Kingdom, and the Applicants are hereby authorized to perform each of their obligations, if any, under the Interim GSPA. The obligations of the Applicants under the Interim GSPA shall be secured by the Inter-Company Charge.

## CARLING FACILITY CHARGES

40.    THIS COURT ORDERS that the loan agreement (the "NNI Loan Agreement") entered into between NNL, Nortel Networks Technology Corporation ("NNTC") and Nortel Networks Inc. ("NNI"), substantially in the form attached as Exhibit "I" to the Doolittle Affidavit providing for a revolving loan facility of up to U.S.$200 million and each of NNL and NNTC is hereby directed to comply with its obligations under the NNI Loan Agreement.

41.    THIS COURT ORDERS that as security for NNLS's and NNTC's obligations under the NNI Loan Agreement, upon the approval of the NNI Loan Agreement by the United States Bankruptcy Court, NNI is hereby granted charges (the "Carling Facility Charges") by each of NNL and NNTC, NNL's wholly owned subsidiary, on all of the fee simple interest of NNTC and leasehold interest of NNL respectively in the Carling Facility (as defined in the Doolittle Affidavit) and that no equal or higher charge shall be granted by the Court order unless consented to by NNI as authorized by the United States Bankruptcy Court for the District of Delaware. To the extent the proceeds realized from the Carling Facility are insufficient to satisfy NNL's and NNTC's obligations under the NNI Loan Agreement, any deficiency shall be deemed an Inter-Company Reimbursement Claim entitled to the security of an Inter-Company Charge.

## VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER

42.    THIS COURT ORDERS that the priorities of the Administration Charge, the Carling Facility Charges, the Directors' Charge and the Inter-company Charge on all Property:

> First – the Administration Charge;
>
> Second – the Carling Facility Charges;
>
> Third – the EDC Charge;
>
> Fourth - the Directors' Charge; and
>
> Fifth– the Inter-Company Charge.

43.    THIS COURT ORDERS that the filing, registration or perfection of the Administration Charge, and the Carling Facility Charges, the EDC Charge, the Directors' Charge, the Inter-company Charge (collectively, the "Charges") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.  Notwithstanding anything herein, the Charges shall not attach to the Retainers.

44.    THIS COURT ORDERS that each of the Charges (all as constituted and defined herein) shall, subject to paragraph 46 herein, constitute a charge on the Property secured thereunder and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, statutory or otherwise (collectively, "Encumbrances") in favour of any Person.

45.    THIS COURT ORDERS that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges, unless the Applicants also obtain the prior written consent of the Monitor and the beneficiaries of the Directors' Charge, the EDC Charge, the Administration Charge, the Inter-Company Charge and the Carling Facility Charges, or by further Order of this Court.

46.     THIS COURT ORDERS that the Charges shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "Chargees") thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "Agreement") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)     the creation of the Charges shall not create or be deemed to constitute a breach by any of the Applicants of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from, the creation of the Charges; and

(c)     the payments made by the Applicants pursuant to this Order and the granting of the Charges, do not and will not constitute fraudulent preferences, fraudulent conveyances, oppressive conduct, settlements or other challengeable, voidable or reviewable transactions under any applicable law.

47.     THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

**FLEXTRONICS AMENDING AGREEMENT**

48.     THIS COURT ORDERS that the Flextronics Amending Agreement in the form attached as Exhibit "B" to the Doolittle Affidavit be and is hereby approved and NNL is hereby authorized and directed to comply with its obligations thereunder.

**CROSS-BORDER PROTOCOL**

49.     THIS COURT ORDERS that the cross-border protocol in the form attached as Schedule "A" hereto be and is hereby approved and shall become effective upon its approval by the United States Bankruptcy Court for the District of Delaware and the parties to these proceedings and any other Person shall be governed by it and shall comply with the same.

**FOREIGN PROCEEDINGS**

50.     THIS COURT ORDERS that the Monitor is hereby authorized and directed to apply for recognition of these proceedings as "Foreign Main Proceedings" in the United States pursuant to Chapter 15 of the U.S. Bankruptcy Code.

51.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

52.     THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

**SERVICE AND NOTICE**

53.     THIS COURT ORDERS that the Monitor shall, within ten (10) business days of the date of entry of this Order, send notice of this Order and the commencement of the within proceedings to the Applicants' known creditors, other than employees and creditors to which the Applicants owe less than $5,000, at their addresses as they appear on the Applicants' records,

and shall promptly send a copy of this Order (a) to all parties filing a Notice of Appearance in respect of this Application, and (b) to any other interested Person requesting a copy of this Order, and the Monitor is relieved of its obligation under Section 11(5) of the CCAA to provide similar notice, other than to supervise this process. The Monitor, on behalf of the Applicants, shall, in its discretion, be entitled to engage a third party mailing service in order to assist or complete the mailing. Any such service provider shall be considered an "Assistant" hereunder.

54.    THIS COURT ORDERS that the Applicants and the Monitor be at liberty to serve this Order, any other materials and orders in these proceedings, and any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

55.    THIS COURT ORDERS that the Applicants, the Monitor, and any party who has filed a Notice of Appearance may serve any court materials in these proceedings by e-mailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, in accordance with the E-filing protocol of the Commercial List to the extent practicable, and the Monitor may post a copy of any or all such materials on its website at http://www.ey.com/ca/nortel.

**GENERAL**

56.    THIS COURT ORDERS that any of the Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

57.    THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

58.    THIS COURT ORDERS that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days

notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

59.    THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard Time on the date of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JAN 1 4 2009

PER / PAR: TV

## SCHEDULE "A" – CROSS-BORDER PROTOCOL

**Attached.**

## CROSS-BORDER INSOLVENCY PROTOCOL
## FOR NORTEL NETWORKS INC. AND ITS AFFILIATES

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.     **Background**

1.    Nortel Networks Inc. ("NNI") is the wholly owned U.S. subsidiary of Nortel Networks Limited ("NNL"), the principal Canadian operating subsidiary of Nortel Networks Corporation ("NNC"). NNC is a telecommunications company headquartered in Toronto, Ontario, Canada. NNI is incorporated under Delaware law and is headquartered in Richardson, Texas.

2.    NNI and certain of its affiliates (collectively, the "U.S. Debtors"),[1] have commenced reorganization proceedings (the "U.S. Proceedings") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138. The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

1

businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy

Code. The Office of United States Trustee (the "U.S. Trustee") has appointed or may appoint an

official committee of unsecured creditors (the "Creditors Committee") in the U.S. Proceeding.

    3.   On January 14, 2009, the U.S. Debtors' ultimate corporate parent NNC, NNI's

direct corporate parent NNL (together with NNC and their affiliates, including the U.S. Debtors,

"Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an

application with the Ontario Superior Court of Justice (the "Canadian Court") under the

Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their

creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors have obtained an

initial order of the Canadian Court (as amended and restated, the "Canadian Order"), under

which, inter alia:  (a) the Canadian Debtors have been determined to be entitled to relief under

the CCAA; (b) Ernst & Young Inc. has been appointed as monitor (the "Monitor") of the

Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the

CCAA and the Canadian Order; and (c) a stay of proceedings in respect of the Canadian Debtors

has been granted.

    4.   The Monitor filed petitions in the U.S. Court seeking recognition of the

Canadian Proceedings under chapter 15 of the Bankruptcy Code (the "Chapter 15 Proceedings").

NNI also filed an application to the Canadian Court pursuant to section 18.6 of the CCAA

recognizing the U.S. Proceedings as "foreign proceedings" in Canada and giving effect to the

automatic stay thereunder in Canada. None of the U.S. Debtors or Canadian Debtors are

applicants in both the U.S. Proceedings and Canadian Proceedings.

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

5.    For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Proceedings and the Canadian Proceedings shall be referred to herein collectively as the "Insolvency Proceedings," and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts", and each individually as a "Court."

**B.    Purpose and Goals**

6.    Though full and separate plenary proceedings are pending in the United States for the U.S. Debtors and in Canada for the Canadian Debtors, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto, ensure the maintenance of the Courts' respective independent jurisdiction and give effect to the doctrines of comity.  Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

a.    harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

b.    promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

c.    honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

d.    promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (which include the Chapter 11 Representatives and the Canadian Representatives as such terms are defined below) and other creditors and interested parties in the Insolvency Proceedings;

e.    facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

3

      f.       implement a framework of general principles to address basic administrative issues arising out of the cross-border nature of the Insolvency Proceedings.

As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-border matters that may arise in the Insolvency Proceedings should be dealt with under and in accordance with the principles of this Protocol. Where an issue is to be addressed only to one Court, in rendering a determination in any cross-border matter, such Court may: (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole discretion and bearing in mind the principles of comity, either (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part to the other Court; or (iii) seek a joint hearing of both Courts.

**C.**      **Comity and Independence of the Courts**

      7. The approval and implementation of this Protocol shall not divest nor diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively. By approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in any infringement on the sovereignty of the United States of America or Canada.

      8. The U.S. Court shall have sole and exclusive jurisdiction and power over the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the U.S. Proceedings. The Canadian Court shall have sole and exclusive jurisdiction and power over the conduct of the Canadian Proceedings and the hearing and determination of matters arising in the Canadian Proceedings.

      9. In accordance with the principles of comity and independence recognized herein, nothing contained herein shall be construed to:

a.    increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief under applicable law on an ex parte or "limited notice" basis;

b.    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

c.    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

d.    require the Debtors, the Creditors Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

e.    authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

f.    preclude the Debtors, the Creditors Committee, the U.S. Trustee, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

10.  The Debtors, the Creditors Committee, the Estate Representative and their respective employees, members, agents and professionals shall respect and comply with the independent, non-delegable duties imposed upon them, if any, by the Bankruptcy Code, the CCAA, the CCAA Order and other applicable laws.

**D.    Cooperation**

11.  To assist in the efficient administration of the Insolvency Proceedings and in recognizing that the U.S. Debtors and Canadian Debtors may be creditors of the others' estates, the Debtors and their respective Estate Representatives shall, where appropriate:  (a) cooperate with each other in connection with actions taken in both the U.S. Court and the Canadian Court

and (b) take any other appropriate steps to coordinate the administration of the Insolvency Proceedings for the benefit of the Debtors' respective estates.

12. To harmonize and coordinate the administration of the Insolvency Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider whether it is appropriate to defer to the judgment of the other Court. In furtherance of the foregoing:

a.    The U.S. Court and the Canadian Court may communicate with one another with respect to any procedural matter relating to the Insolvency Proceedings.

b.    Where the issue of the proper jurisdiction or Court to determine an issue is raised by an interested party in either of the Insolvency Proceedings with respect to a motion or application filed in either Court, the Court before which such motion or application was initially filed may contact the other Court to determine an appropriate process by which the issue of jurisdiction will be determined; which process shall be subject to submissions by the Debtors, the U.S. Trustee, the Creditors Committee, the Monitor and any interested party prior to a determination on the issue of jurisdiction being made by either Court.

c.    The Courts may, but are not obligated to, coordinate activities in the Insolvency Proceedings such that the subject matter of any particular action, suit, request, application, contested matter or other proceeding is determined in a single Court.

d.    The U.S. Court and the Canadian Court may conduct joint hearings with respect to any cross-border matter or the interpretation or implementation of this Protocol where both the U.S. Court and the Canadian Court consider such a joint hearing to be necessary or advisable. With respect to any joint hearings, unless otherwise ordered, the following procedures will be followed:

(i)    A telephone or video link shall be established so that both the U.S. Court and the Canadian Court shall be able to simultaneously hear the proceedings in the other Court.

(ii)    Submissions or applications by any party that are or become the subject of a joint hearing of the Courts (collectively, "Pleadings") shall be made or filed initially only to the Court in which such party is appearing and seeking relief. Promptly after the scheduling of any joint hearing, the party submitting such

Pleadings to one Court shall file courtesy copies with the other Court. In any event, Pleadings seeking relief from both Courts shall be filed with both Courts.

(iii)    Any party intending to rely on any written evidentiary materials in support of a submission to the U.S. Court or the Canadian Court in connection with any joint hearing or application (collectively, "<u>Evidentiary Materials</u>") shall file or otherwise submit such materials to both Courts in advance of the joint hearing. To the fullest extent possible, the Evidentiary Materials filed in each Court shall be identical and shall be consistent with the procedural and evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not wish to attorn to the jurisdiction of a Court, it shall be entitled to file Pleadings or Evidentiary Materials in connection with the joint hearing without, by the mere act of such filings, being deemed to have attorned to the jurisdiction of the Court in which such material is filed, so long as it does not request in its materials or submissions any affirmative relief from such Court.

(v)    The Judge of the U.S. Court and the Justice of the Canadian Court who will preside over the joint hearing shall be entitled to communicate with each other in advance of any joint hearing, with or without counsel being present, to establish guidelines for the orderly submission of Pleadings, Evidentiary Materials and other papers and for the rendering of decisions by the Courts, and to address any related procedural, administrative or preliminary matters.

(vi)    The Judge of the U.S. Court and the Justice of the Canadian Court, shall be entitled to communicate with each other during or after any joint hearing, with or without counsel present, for the purposes of determining whether consistent rulings can be made by both Courts, coordinating the terms upon of the Courts' respective rulings, and addressing any other procedural or administrative matters.

13.    Notwithstanding the terms of the paragraph 12 above, this Protocol

recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly,

although the Courts will seek to cooperate and coordinate with each other in good faith, each of

the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with

respect to:  (a) matters presented to such Court; and (b) the conduct of the parties appearing in such matters.

14.  Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court in order to determine an issue before it, the Court with jurisdiction over such matter may, among other things, hear expert evidence or seek the advice and direction of the other Court in respect of the foreign law to be applied, subject to paragraph 26 herein.

E.    **Retention and Compensation of Estate Representative and Professionals**

15.  The Monitor, its officers, directors, employees, counsel and agents, wherever located, (collectively the "Monitor Parties") and any other estate representatives in the Canadian Proceedings (collectively, the "Canadian Representatives") shall be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including:  (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law.  The Canadian Representatives shall not be required to seek approval of their retention in the U.S. Court for services rendered to the Debtors.  Additionally, the Canadian Representatives:  (a) shall be compensated for their services to the Debtors solely in accordance with the CCAA, the CCAA Order and other applicable Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S Court.

16.  The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the CCAA Order.  In

particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the CCAA Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the CCAA Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

17. Any estate representative appointed in the U.S. Proceedings, including without limitation any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "Chapter 11 Representatives") shall be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including: (a) the Chapter 11 Representatives' tenure in office; (b) the retention and compensation of the Chapter 11 Representatives; (c) the Chapter 11 Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Chapter 11 Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States. The Chapter 11 Representatives and their counsel and other professionals retained therefor shall not be required to seek approval of their retention in the Canadian Court. Additionally, the Chapter 11 Representatives and their counsel and such other professionals: (a) shall be compensated for their services to the Debtors solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek approval of their compensation for services performed for the Debtors in the Canadian Court.

18. Any professionals retained by or with the approval of the Canadian Debtors (collectively, the "Canadian Professionals"), shall be subject to the sole and exclusive

jurisdiction of the Canadian Court, provided they are not paid by the U.S. Debtors. Accordingly, the Canadian Professionals: (a) shall be subject to the procedures and standards for retention and compensation applicable in Canada with respect to services performed on behalf of the Canadian Debtors; and (b) shall not be required to seek approval of their retention or compensation in the U.S. Court with respect to services performed on behalf of the Canadian Debtors.

19. Any professionals retained by the U.S. Debtors and any professionals retained by the Creditors Committee (collectively, the "Chapter 11 Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court. Accordingly, the Chapter 11 Professionals: (a) shall be subject to the procedures and standard for retention and compensation applicable in the U.S. Court under the Bankruptcy Code with respect to services performed on behalf of the U.S. Debtors and any other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek approval of their retention or compensation in the Canadian Court with respect to services performed on behalf of the U.S. Debtors.

**F.**      **Appearances**

20. Upon any appearance or filing, as may be permitted or provided for by the rules of the applicable Court, the Debtors, their creditors and other interested parties in the Insolvency Proceedings, including the Creditors Committee, the Estate Representatives and the U.S. Trustee, shall be subject to the personal jurisdiction of the Canadian Court or the U.S. Court, as applicable, with respect to the particular matters as to which they appear before that Court.

**G.**      **Notice**

21. Notice of any motion, application or other pleading or paper filed in one or both of the Insolvency Proceedings involving or relating to matters addressed by this Protocol and notice of any related hearings or other proceedings shall be given by appropriate means

10

(including, where circumstances warrant, by courier, telecopier or other electronic forms of communication) to the following:  (a) all creditors and interested parties, in accordance with the practice of the jurisdiction where the papers are filed or the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under clause (a) of this sentence, counsel to the Debtors; the U.S. Trustee; the Monitor; the Creditors Committee and any other statutory committees appointed in these cases and such other parties as may be designated by either of the Courts from time to time.  Notice in accordance with this paragraph shall be given by the party otherwise responsible for effecting notice in the jurisdiction where the underlying papers are filed or the proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors or the Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with copies of any orders, decisions, opinions or similar papers issued by the other Court in the Insolvency Proceedings.

22.  When any cross-border issues or matters addressed by this Protocol are to be addressed before a Court, notices shall be provided in the manner and to the parties referred to in paragraph 21 above.

**H.**    **Effectiveness; Modification**

23.  This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

24.  This Protocol may not be supplemented, modified, terminated, or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing.  Notice of any legal proceeding to supplement, modify, terminate or replace this Protocol shall be given accordance with the notice provisions set forth in paragraph 21 above.

**I.**    **Procedure for Resolving Disputes Under this Protocol**

11

25.  Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with the notice provisions outlined in paragraph 21 above.  In rendering a determination in any such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either:  (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a joint hearing of both Courts in accordance with paragraph 12 above.  Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

26.  In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

a.      the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

b.      the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

c.      copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 21 hereof; and

d.      the Courts may jointly decide to invite the Debtors, the Creditors Committee, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court.

**J.**      **Preservation of Rights**

27.  Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall:  (a) prejudice or affect the powers,

12

rights, claims and defenses of the Debtors and their estates, the Creditors Committee, the Estate

Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law,

including the Bankruptcy Code and the CCAA, and the orders of the Courts; or (b) preclude or

prejudice the rights of any person to assert or pursue such person's substantive rights against any

other person under the applicable laws of Canada or the United States.

**Schedule A**
**(Guidelines)**

# Guidelines
# Applicable to Court-to-Court Communications
# in Cross-Border Cases

## *Introduction:*

One of the most essential elements of cooperation in cross-border cases is communication among the administrating authorities of the countries involved. Because of the importance of the courts in insolvency and reorganization proceedings, it is even more essential that the supervising courts be able to coordinate their activities to assure the maximum available benefit for the stakeholders of financially troubled enterprises.

These Guidelines are intended to enhance coordination and harmonization of insolvency proceedings that involve more than one country through communications among the jurisdictions involved. Communications by judges directly with judges or administrators in a foreign country, however, raise issues of credibility and proper procedures. The context alone is likely to create concern in litigants unless the process is transparent and clearly fair. Thus, communication among courts in cross-border cases is both more important and more sensitive than in domestic cases. These Guidelines encourage such communications while channeling them through transparent procedures. The Guidelines are meant to permit rapid cooperation in a developing insolvency case while ensuring due process to all concerned.

A Court intending to employ the Guidelines — in whole or part, with or without modifications — should adopt them formally before applying them. A Court may wish to make its adoption of the Guidelines contingent upon, or temporary until, their adoption by other courts concerned in the matter. The adopting

1

Court may want to make adoption or continuance conditional upon adoption of the Guidelines by the other Court in a substantially similar form, to ensure that judges, counsel, and parties are not subject to different standards of conduct.

The Guidelines should be adopted following such notice to the parties and counsel as would be given under local procedures with regard to any important procedural decision under similar circumstances. If communication with other courts is urgently needed, the local procedures, including notice requirements, that are used in urgent or emergency situations should be employed, including, if appropriate, an initial period of effectiveness, followed by further consideration of the Guidelines at a later time. Questions about the parties entitled to such notice (for example, all parties or representative parties or representative counsel) and the nature of the court's consideration of any objections (for example, with or without a hearing) are governed by the Rules of Procedure in each jurisdiction and are not addressed in the Guidelines.

The Guidelines are not meant to be static, but are meant to be adapted and modified to fit the circumstances of individual cases and to change and evolve as the international insolvency community gains experience from working with them. They are to apply only in a manner that is consistent with local procedures and local ethical requirements. They do not address the details of notice and procedure that depend upon the law and practice in each jurisdiction. However, the Guidelines represent approaches that are likely to be highly useful in achieving efficient and just resolutions of cross-border insolvency issues. Their use, with such modifications and under such circumstances as may be appropriate in a particular case, is therefore recommended.

2

### Guideline 1

Except in circumstances of urgency, prior to a communication with another Court, the Court should be satisfied that such a communication is consistent with all applicable Rules of Procedure in its country. Where a Court intends to apply these Guidelines (in whole or in part and with or without modifications), the Guidelines to be employed should, wherever possible, be formally adopted before they are applied. Coordination of Guidelines between courts is desirable and officials of both courts may communicate in accordance with Guideline 8(d) with regard to the application and implementation of the Guidelines.

### Guideline 2

A Court may communicate with another Court in connection with matters relating to proceedings before it for the purposes of coordinating and harmonizing proceedings before it with those in the other jurisdiction.

### Guideline 3

A Court may communicate with an Insolvency Administrator in another jurisdiction or an authorized Representative of the Court in that jurisdiction in connection with the coordination and harmonization of the proceedings before it with the proceedings in the other jurisdiction.

### Guideline 4

A Court may permit a duly authorized Insolvency Administrator to communicate with a foreign Court directly, subject to the approval of the foreign Court, or through an Insolvency Administrator in the other jurisdiction or through an autho-

3

rized Representative of the foreign Court on such terms as the Court considers appropriate.

### Guideline 5

A Court may receive communications from a foreign Court or from an authorized Representative of the foreign Court or from a foreign Insolvency Administrator and should respond directly if the communication is from a foreign Court (subject to Guideline 7 in the case of two-way communications) and may respond directly or through an authorized Representative of the Court or through a duly authorized Insolvency Administrator if the communication is from a foreign Insolvency Administrator, subject to local rules concerning ex parte communications.

### Guideline 6

Communications from a Court to another Court may take place by or through the Court:

(a)  Sending or transmitting copies of formal orders, judgments, opinions, reasons for decision, endorsements, transcripts of proceedings, or other documents directly to the other Court and providing advance notice to counsel for affected parties in such manner as the Court considers appropriate;

(b)  Directing counsel or a foreign or domestic Insolvency Administrator to transmit or deliver copies of documents, pleadings, affidavits, factums, briefs, or other documents that are filed or to be filed with the Court to the other Court in such fashion as may be appropriate and providing advance notice to counsel for affect-

4

ed parties in such manner as the Court considers appropriate;

(c)  Participating in two-way communications with the other Court by telephone or video conference call or other electronic means, in which case Guideline 7 should apply.

### Guideline 7

In the event of communications between the Courts in accordance with Guidelines 2 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by either of the two Courts:

(a)  Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b)  The communication between the Courts should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of both Courts, should be treated as an official transcript of the communication;

(c)  Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of either Court, and of any official transcript prepared from a recording should be filed as part of the record in the proceedings and made available to counsel for all parties in both

5

Courts subject to such Directions as to confidentiality as the Courts may consider appropriate; and

(d) The time and place for communications between the Courts should be to the satisfaction of both Courts. Personnel other than Judges in each Court may communicate fully with each other to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by either of the Courts.

### Guideline 8

In the event of communications between the Court and an authorized Representative of the foreign Court or a foreign Insolvency Administrator in accordance with Guidelines 3 and 5 by means of telephone or video conference call or other electronic means, unless otherwise directed by the Court:

(a) Counsel for all affected parties should be entitled to participate in person during the communication and advance notice of the communication should be given to all parties in accordance with the Rules of Procedure applicable in each Court;

(b) The communication should be recorded and may be transcribed. A written transcript may be prepared from a recording of the communication which, with the approval of the Court, can be treated as an official transcript of the communication;

(c) Copies of any recording of the communication, of any transcript of the communication prepared pursuant to any Direction of the Court, and of any official tran-

6

script prepared from a recording should be filed as part of the record in the proceedings and made available to the other Court and to counsel for all parties in both Courts subject to such Directions as to confidentiality as the Court may consider appropriate; and

(d)    The time and place for the communication should be to the satisfaction of the Court. Personnel of the Court other than Judges may communicate fully with the authorized Representative of the foreign Court or the foreign Insolvency Administrator to establish appropriate arrangements for the communication without the necessity for participation by counsel unless otherwise ordered by the Court.

### Guideline 9

A Court may conduct a joint hearing with another Court. In connection with any such joint hearing, the following should apply, unless otherwise ordered or unless otherwise provided in any previously approved Protocol applicable to such joint hearing:

(a)    Each Court should be able to simultaneously hear the proceedings in the other Court.

(b)    Evidentiary or written materials filed or to be filed in one Court should, in accordance with the Directions of that Court, be transmitted to the other Court or made available electronically in a publicly accessible system in advance of the hearing. Transmittal of such material to the other Court or its public availability in an electronic system should not subject the party filing the material in one Court to the jurisdiction of the other Court.

7

(c)  Submissions or applications by the representative of any party should be made only to the Court in which the representative making the submissions is appearing unless the representative is specifically given permission by the other Court to make submissions to it.

(d)  Subject to Guideline 7(b), the Court should be entitled to communicate with the other Court in advance of a joint hearing, with or without counsel being present, to establish Guidelines for the orderly making of submissions and rendering of decisions by the Courts, and to coordinate and resolve any procedural, administrative, or preliminary matters relating to the joint hearing.

(e)  Subject to Guideline 7(b), the Court, subsequent to the joint hearing, should be entitled to communicate with the other Court, with or without counsel present, for the purpose of determining whether coordinated orders could be made by both Courts and to coordinate and resolve any procedural or nonsubstantive matters relating to the joint hearing.

**Guideline 10**

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, recognize and accept as authentic the provisions of statutes, statutory or administrative regulations, and rules of court of general application applicable to the proceedings in the other jurisdiction without the need for further proof or exemplification thereof.

8

### Guideline 11

The Court should, except upon proper objection on valid grounds and then only to the extent of such objection, accept that Orders made in the proceedings in the other jurisdiction were duly and properly made or entered on or about their respective dates and accept that such Orders require no further proof or exemplification for purposes of the proceedings before it, subject to all such proper reservations as in the opinion of the Court are appropriate regarding proceedings by way of appeal or review that are actually pending in respect of any such Orders.

### Guideline 12

The Court may coordinate proceedings before it with proceedings in another jurisdiction by establishing a Service List that may include parties that are entitled to receive notice of proceedings before the Court in the other jurisdiction ("Non-Resident Parties"). All notices, applications, motions, and other materials served for purposes of the proceedings before the Court may be ordered to also be provided to or served on the Non-Resident Parties by making such materials available electronically in a publicly accessible system or by facsimile transmission, certified or registered mail or delivery by courier, or in such other manner as may be directed by the Court in accordance with the procedures applicable in the Court.

### Guideline 13

The Court may issue an Order or issue Directions permitting the foreign Insolvency Administrator or a representative of creditors in the proceedings in the other jurisdiction or an authorized

9

Representative of the Court in the other jurisdiction to appear and be heard by the Court without thereby becoming subject to the jurisdiction of the Court.

### Guideline 14

The Court may direct that any stay of proceedings affecting the parties before it shall, subject to further order of the Court, not apply to applications or motions brought by such parties before the other Court or that relief be granted to permit such parties to bring such applications or motions before the other Court on such terms and conditions as it considers appropriate. Court-to-Court communications in accordance with Guidelines 6 and 7 hereof may take place if an application or motion brought before the Court affects or might affect issues or proceedings in the Court in the other jurisdiction.

### Guideline 15

A Court may communicate with a Court in another jurisdiction or with an authorized Representative of such Court in the manner prescribed by these Guidelines for purposes of coordinating and harmonizing proceedings before it with proceedings in the other jurisdiction regardless of the form of the proceedings before it or before the other Court wherever there is commonality among the issues and/or the parties in the proceedings. The Court should, absent compelling reasons to the contrary, so communicate with the Court in the other jurisdiction where the interests of justice so require.

### Guideline 16

Directions issued by the Court under these Guidelines are subject to such amendments, modifications, and extensions as

10

may be considered appropriate by the Court for the purposes described above and to reflect the changes and developments from time to time in the proceedings before it and before the other Court. Any Directions may be supplemented, modified, and restated from time to time and such modifications, amendments, and restatements should become effective upon being accepted by both Courts. If either Court intends to supplement, change, or abrogate Directions issued under these Guidelines in the absence of joint approval by both Courts, the Court should give the other Courts involved reasonable notice of its intention to do so.

### Guideline 17

Arrangements contemplated under these Guidelines do not constitute a compromise or waiver by the Court of any powers, responsibilities, or authority and do not constitute a substantive determination of any matter in controversy before the Court or before the other Court nor a waiver by any of the parties of any of their substantive rights and claims or a diminution of the effect of any of the Orders made by the Court or the other Court.

11

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No:
09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

INITIAL ORDER

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants