# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
                                                       :
*In re*                                                :     Chapter 11
                                                       :     Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                     :     Jointly Administered
                                                       :
                                    Debtors.           :     **Hearing Date: Feb. 5, 2009 at 10:00 a.m. (ET)**
                                                       :     **Objections due: Jan. 30, 2009 at 4:00 p.m. (ET)**
                                                       :
------------------------------------------------------X

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 327(a) AND 1107(b), FED. R. BANKR. P. 2014 AND 2016, AND DEL. BANKR. L.R. 2014-1 AND 2016-1 AUTHORIZING RETENTION AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS DELAWARE AND GENERAL BANKRUPTCY COUNSEL FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE

The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby present this application (the "Application") to the Court for the entry of an

order authorizing the retention and employment of Morris, Nichols, Arsht and Tunnell LLP

("Morris Nichols") pursuant to sections 327(a) and 1107(b) of title 11 of the United States Code

(as amended, the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:   Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                   :

*In re*                      :       Chapter 11

                            :       Case No. 09-10138 (KG)

Nortel Networks Inc., *et al.*,[1]   :       Jointly Administered

                            :

             Debtors.     :       **Hearing Date: Feb. 5, 2009 at 10:00 a.m. (ET)**

                            :       **Objections due: Jan. 29, 2009 at 4:00 p.m. (ET)**

                            :

---------------------------------------------------------X

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO
11 U.S.C. §§ 327(a) AND 1107(b), FED. R. BANKR. P. 2014 AND 2016,
AND DEL. BANKR. L.R. 2014-1 AND 2016-1 AUTHORIZING RETENTION
AND EMPLOYMENT OF MORRIS, NICHOLS, ARSHT & TUNNELL LLP AS
DELAWARE AND GENERAL BANKRUPTCY COUNSEL
FOR THE DEBTORS, *NUNC PRO TUNC* TO THE PETITION DATE**

        The above-captioned debtors and debtors in possession (collectively, the

"Debtors") hereby present this application (the "Application") to the Court for the entry of an

order authorizing the retention and employment of Morris, Nichols, Arsht and Tunnell LLP

("Morris Nichols") pursuant to sections 327(a) and 1107(b) of title 11 of the United States Code

(as amended, the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rules 2014-1 and 2016-1 of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Delaware (the "Local Rules") as Delaware and general bankruptcy counsel to the Debtors *nunc pro tunc* to the Petition Date (as defined below).  In support of this Application, the Debtors rely upon and incorporate by reference (a) the Declaration of John Doolittle in Support of First Day Relief (the "Doolittle Declaration") filed on the Petition Date (as defined below) and (b) the Declaration of Derek C. Abbott, Esquire (the "Abbott Declaration"), attached hereto as **Exhibit A**, and represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue of these proceedings and the Application in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 327(a) and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1.

## INTRODUCTION

3.      On January 14, 2008 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and

certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>")[2] filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada) (the "<u>CCAA</u>"), seeking relief from their creditors (collectively, the "<u>Canadian Proceedings</u>").  The Canadian Debtors will continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as foreign representative for the Canadian Debtors, will file petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  Certain of Nortel's European subsidiaries will make consequential filings for creditor protection.

6.    A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the Doolittle Declaration.[3]

<h3 style="text-align:center;"><u>RELIEF REQUESTED</u></h3>

7.    The Debtors desire to retain and employ Morris Nichols as their bankruptcy attorneys in these Chapter 11 cases.  By this Application, the Debtors respectfully request that the Court enter an order authorizing the Debtors to retain and employ Morris Nichols as the Debtors' Delaware and general bankruptcy attorneys, *nunc pro tunc* to the Petition Date, to represent the Debtors in all phases of these Chapter 11 cases.

8.    By separate application, the Debtors have also requested that the Court approve the retention and employment of Cleary Gottlieb Steen & Hamilton LLP ("<u>Cleary</u>

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Doolittle Declaration.

Gottlieb") as bankruptcy counsel.   However, the retention of Morris Nichols as Delaware and general bankruptcy counsel is necessary and will allow the Debtors to operate more effectively given Morris Nichols' specialized knowledge of bankruptcy laws and procedures in Delaware. Morris Nichols has discussed with Cleary Gottlieb a division of responsibilities so as to minimize duplication of services on behalf of the Debtors.

9.      Accordingly, the Debtors respectfully request the entry of an order, pursuant to section 327(a) of the Bankruptcy Code, authorizing the employment and retention of Morris Nichols to perform the legal services that will be necessary in these chapter 11 cases.

## BASIS FOR RELIEF

10.      Under section 327(a) of the Bankruptcy Code, a debtor in possession may employ one or more attorneys to represent it in carrying out its duties under the Bankruptcy Code, provided that such attorneys are disinterested persons and do not hold or represent an interest adverse to the estate.   Section 101(14) of the Bankruptcy Code defines "disinterested person" as one who

> is not a creditor, an equity security holder, or an insider; [or] is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and . . . does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 USC § 101(14).

11.      The Debtors request approval of the employment of Morris Nichols *nunc pro tunc* to the Petition Date.   Such relief is warranted by the extraordinary circumstances presented by these cases.   The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.   *See Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *see also In re Indian River Homes, Inc.*, 108 B.R. 46, 52 (D.

4

Del. 1989), *app. dismissed*, 909 F.2d 1406 (3d Cir. 1990). The complexity, intense activity and speed that have characterized these cases have necessitated that the Debtors, Morris Nichols and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

12.    Prior to the commencement of these Chapter 11 cases, the Debtors sought the services of Morris Nichols with respect to, among other things, advice regarding, and the preparation for, the commencement and prosecution of their cases under Chapter 11 of the Bankruptcy Code. The Debtors have employed and retained Morris Nichols as their bankruptcy attorneys in connection with the filing and, subject to the entry of an order approving the retention of Morris Nichols, the prosecution of these Chapter 11 cases.

13.    The Debtors seek to retain Morris Nichols because of the firm's extensive experience and knowledge in the fields of, *inter alia*, debtors' and creditors' rights, business reorganizations under chapter 11 of the Bankruptcy Code, and general corporate law, and because of its expertise, experience, and knowledge in practicing before this Court, its proximity to the Court and its ability to respond quickly to emergency hearings and other emergency matters in this Court. In addition, in connection with their engagement by the Debtors, Morris Nichols has become familiar with the Debtors' business and affairs. Accordingly, Morris Nichols is well qualified to deal effectively with the potential legal issues and problems that may arise in the context of these chapter 11 cases.

## SERVICES TO BE PROVIDED BY MORRIS NICHOLS

14.    The Debtors believe that the services of Morris Nichols are necessary to enable them to execute faithfully their duties as debtors in possession.  Subject to further order of this Court, Morris Nichols will render the following professional services to the Debtors:

(a)    perform all necessary services as the Debtors' counsel, including, without limitation, providing the Debtors with advice, representing the Debtors, and preparing necessary documents on behalf of the Debtors in the areas of debtor in possession financing, corporate law, real estate, employee benefits, business and commercial litigation, tax, debt restructuring, bankruptcy and asset dispositions;

(b)    take all necessary actions to protect and preserve the Debtors' estate during these chapter 11 cases, including the prosecution of actions by the Debtors, the defense of any actions commenced against the Debtors, negotiations concerning litigation in which the Debtors are involved and objecting to claims filed against the estates;

(c)    prepare or coordinate preparation on behalf of the Debtors, as debtors in possession, necessary motions, applications, answers, orders, reports and papers in connection with the administration of these chapter 11 cases;

(d)    counsel the Debtors with regard to their rights and obligations as debtors in possession; and

(e)    perform all other necessary legal services.

15.    The Debtors believe that Morris Nichols' employment is in the best interests of the Debtors, their estates, and their creditors.

16.    Subject to this Court's approval of the Application, Morris Nichols is willing to serve as the Debtors' counsel and to perform the services described above.

## DISINTERESTEDNESS OF PROFESSIONAL

17.    To the best of the Debtors' knowledge, information and belief, and except to the extent otherwise indicated in the Abbott Declaration, none of Morris Nichols' partners,

counsel or associates hold or represent any interest adverse to the Debtors' estates or their creditors, and Morris Nichols is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code.

18.    Morris Nichols does not, and has not, represented any entities, other than the Debtors, in matters related to these chapter 11 cases. Morris Nichols may represent or may have represented certain parties with interests in the Debtors' cases, on matters unrelated to their Chapter 11 cases. As set forth in the Abbott Declaration, Morris Nichols has conducted, and continues to conduct, research into its relations with the Debtors, their substantial creditors and equity security holders and other parties interested in these cases. As part of this inquiry, Morris Nichols obtained the names of individuals or entities that may be parties in interest in these Chapter 11 cases (the "Potential Parties in Interest" and attached to the Abbott Declaration as **Schedule 1**). Morris Nichols then entered the names of Potential Parties in Interest into a computer database containing the names of all clients and conflict information concerning the clients of Morris Nichols. This inquiry revealed that certain of the Potential Parties in Interest were current or former Morris Nichols clients (the list of such clients is referred to herein as the "Client Match List"). The list of current clients are listed on **Schedule 2** attached to the Abbott Declaration and the list of former clients are listed on **Schedule 3** attached to the Abbott Declaration. Through the information generated from the above-mentioned computer inquiry, and through follow-up inquiries with Morris Nichols attorneys responsible for certain clients listed on the Client Match List, Morris Nichols determined that the representation of the clients on the Client Match List concerned matters unrelated to these Chapter 11 cases, except to the extent otherwise indicated in the Abbott Declaration. Although Morris Nichols values all of its

7

clients, none of the entities listed on **Schedule 1**, **Schedule 2** or **Schedule 3** represents significant financial revenues for Morris Nichols.

19.    While Morris Nichols has undertaken, and continues to undertake, efforts to identify connections with the Debtors and other parties in interest, it is possible that connections with some parties in interest have not yet been identified. Should Morris Nichols, through its continuing efforts or as these cases progress, learn of any new connections of the nature described above, Morris Nichols will so advise the Court.

20.    Morris Nichols and certain of its partners, counsel and associates may have in the past represented, may currently represent, and likely in the future will represent parties in interest of the Debtors in connection with matters unrelated to the Debtors and these cases.

## COMPENSATION

21.    Morris Nichols was retained by the Debtors under an advance payment retainer pursuant to an engagement letter executed by the Debtors on January 5, 2009 (the "Engagement Agreement"). On January 7, 2009, Morris Nichols received two (2) payments in the amount of $50,000 and $250,000, respectively, as an advance fee for services to be rendered and expenses to be incurred in connection with Morris Nichols' representation of the Debtors (the "Initial Advance"), against which Morris Nichols applied $53,052.20 after a preliminary reconciliation of prepetition fees and expenses.[4]  Accordingly, Morris Nichols currently holds a balance of $246,947.80 as an advance payment for services to be rendered and expenses to be incurred in connection with its representation of the Debtors (the "Current Advance").

---

[4]    Morris Nichols' statement pursuant to Bankruptcy Rule 2016 is attached hereto as **Exhibit B.**

22.    Morris Nichols has not been paid any other compensation by the Debtors.

23.    As promptly as practicable after all fees and charges accrued prior to the Petition Date have been finally posted (the "Final Billed Amount"), Morris Nichols will issue a final billing statement (the "Final Billing Statement") for the actual fees, charges, and disbursements for the period prior to the Petition Date.   The Final Billed Amount (net of payments received) shall be paid from the Current Advance and the balance will be held as a postpetition advance payment to be applied against any unpaid fees and expenses approved by the Court with respect to Morris Nichols' final fee application in these cases.

24.    In these cases, the Current Advance held by Morris Nichols is appropriate. *See In re Insilco Tech., Inc.,* 291 B.R. 628, 634 (Bankr. D. Del. 2003) ("Factors to be considered, include . . . whether terms of an agreement reflect normal business terms in the marketplace; . . . the relationship between the Debtor and the professionals, *i.e.*, whether the parties involved are sophisticated business entities with equal bargaining power who engaged in arms-length negotiation[] [and] . . . whether the retention, as proposed is in the best interests of the estate[] . . . ."). First, agreements regarding retainers are commonplace and "reflect normal business terms in the marketplace." *See id.* at 634 (stating that it is not disputed that "the taking of [] retainers is a practice now common in the marketplace.")  Secondly, the Debtors and Morris Nichols are sophisticated entities which have negotiated the Current Advance at arms-length.  Thirdly, the Current Advance is in the best interests of the Debtors and their estates because the retention agreement and the Current Advance allow the Debtors and Morris Nichols to maintain their prepetition relationship and guarantee continuity of legal advice and representation through the prosecution of these bankruptcy cases.  Thus, under the standards described by the *Insilco* court, the facts and circumstances of these cases support the Court's approval of the Current Advance.

25.    Morris Nichols' requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned professional at each professional's hourly billing rate.  Subject to Court approval in accordance with 11 U.S.C. §§ 330 and 331, the Bankruptcy Rules, the Local Rules and the orders of this Court, the Debtors propose to compensate Morris Nichols for professional services rendered at its normal and customary hourly rates in effect from time to time as set forth in the Abbott Declaration, plus reimbursement of actual, necessary expenses incurred by Morris Nichols on the Debtors' behalf.

26.    At the present time, the following are Morris Nichols' current hourly rates for work of this nature:

| | |
|---|---|
| Partners | $525 to $725 |
| Associates | $265 to $415 |
| Paraprofessionals | $190 to $205 |
| Case Clerks | $125 |

These hourly rates are subject to periodic adjustments to reflect economic and other conditions.

27.    Morris Nichols will also seek reimbursement for necessary expenses incurred, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

28.    Morris Nichols intends to apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

29.    Because it is probable that the Debtors will require Morris Nichols to render extensive legal services, the cost of which cannot be estimated with certainty, it is necessary and essential that the Debtors, as debtors in possession, employ their attorneys under a

system of advance payment to render the foregoing services. As described above, the Debtors provided Morris Nichols with an advance payment prior to the Petition Date totaling $300,000.00 to pay for services rendered and costs incurred in connection with the preparation and filing of these cases as well as to pay for postpetition services and costs.

30.     Morris Nichols will comply with all of the requirements of this Court, the Bankruptcy Code and the Bankruptcy Rules with respect to fee and expense applications of professionals employed by bankruptcy estates.

## NOTICE

31.     Notice of the Application has been given to the (i) Office of the United States Trustee for the District of Delaware; (ii) the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; and (vi) each person or entity that has filed a notice of appearance in these cases pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested, the Debtors submit that no other notice need be given.

## NO PRIOR REQUEST

32.     No previous request for the relief sought in this Application has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as **Exhibit C**, (i) granting this Application; (ii) authorizing the Debtors to retain and employ Morris Nichols as its Delaware and general bankruptcy counsel, *nunc pro tunc* to the Petition Date; and (iii) granting such other and further relief as may be just and proper.

Dated: January 15, 2009
      Wilmington, Delaware

NORTEL NETWORKS, INC.
NORTEL NETWORKS CAPITAL COPORATION
ALTEON WEBSYSTEMS, INC.
ALTEON WEBSYSTEMS INTERNATIONAL, INC.
XROS, INC.
SONOMA SYSTEMS
QTERA CORPORATION
CORETEK, INC.
NORTEL NETWORKS APPLICATIONS
      MANAGEMENT SOULTIONS
NORTEL NETWORKS OPTICAL COMPONENTS INC.
NORTEL NEWTORKS HPOCS INC.
ARCHITEL SYSTEMS (U.S.) CORPORATION
NORTEL NETWORKS INTERNATIONAL INC.
NORTHERN TELECOM INTERNATIONAL INC.
NORTEL NETWORKS CABLE SOLUTIONS INC.

By: ......................................

John Doolittle
Vice-President

12