IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                               :
*In re*                                                        :   Chapter 11
                                                               :
Nortel Networks Inc., *et al.*,[1]                             :   Case No. 09-10138 (KG)
                                                               :
                Debtors.      :   Jointly Administered
                                                               :
                                                               :   Hearing date: Jan. 23, 2009 at 3:30 p.m. (ET) (requested)
                                                               :   Objections due: Jan. 22, 2009 at 4:00 p.m. (ET) (requested)
---------------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 363(c), 503(b), AND 105(a) OF THE BANKRUPTCY CODE GRANTING ADMINISTRATIVE EXPENSE STATUS TO DEBTORS' OBLIGATIONS ARISING FROM THE POST-PETITION DELIVERY OF GOODS AND SERVICES ORDERED PRE-PETITION AND AUTHORIZING DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, (i) granting administrative expense priority status under section 503(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") to those undisputed obligations of the Debtors arising from goods, supplies, materials and/or services ordered pursuant to pre-petition purchase or service orders with various Vendors (as defined below) to the extent such goods, supplies, materials and/or services are received and actually accepted by the Debtors subsequent to the Petition Date, including, without limitation, where partial payment for or performance of such obligations

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

occurred during the pre-petition period; (ii) authorizing, but not directing, the Debtors to satisfy such obligations to Vendors in the ordinary course of business pursuant to section 363(c) of the Bankruptcy Code; and (iii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors rely on the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration") as well as the Declaration of Joseph Flanagan, dated as of January 19, 2009 submitted in support hereof. In further support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 363(c), 503(b) and 105(a) of the Bankruptcy Code.

## Background

**A.    Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or official committee of unsecured creditors has been appointed in the Debtors' cases.

5. On the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, has filed petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6. In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young (collectively, the "U.K. Debtors").[3]

7. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only.

**B.    Debtors' Corporate Structure and Business**

8. A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the First Day Declaration.[4]

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The U.K. Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

9.  By this Motion, the Debtors seek an order (i) granting administrative expense priority status under section 503(b) of the Bankruptcy Code to those undisputed obligations of the Debtors arising from goods, supplies, materials and/or services ordered pursuant to pre-petition purchase or service orders with various Vendors to the extent such goods, supplies, materials and/or services are received and actually accepted by the Debtors subsequent to the Petition Date, including, without limitation, where partial payments for or partial performance of such obligations occurred during the pre-petition period; (ii) authorizing, but not directing, the Debtors to satisfy such obligations to Vendors in the ordinary course of business pursuant to section 363(c) of the Bankruptcy Code; and (iii) granting them such other and further relief as the Court deems just and proper.

10.  Absent such relief, Vendors may require the Debtors to reissue pre-petition service or purchase orders in order to obtain administrative expense priority for their claims relating to goods, supplies, materials or services to be received or completed post-petition. As a result, the time spent issuing such replacement orders, and the disruption on the flow of goods or services that will result from any failure to perform in the ordinary course post-petition, will jeopardize the Debtors' business operations at this critical time in which the Debtors must maintain the confidence of both their suppliers and their customers. Further, the requested relief does not alter the substantive rights of any party since the vendors are providing a direct post-petition benefit to the Debtors' estates, which is the *sine qua non* for any administrative expense.

**Facts Relevant to this Motion**

11.  In the ordinary operation of the Debtors' businesses, numerous vendors and suppliers provide the Debtors with goods, supplies, materials and/or services necessary for their

continued operations. As of the Petition Date, and in the ordinary course of their businesses, the Debtors had pre-petition purchase or service orders outstanding (collectively, the "Outstanding Orders") with various vendors and suppliers (collectively, the "Vendors"), including certain Outstanding Orders as to which partial performance has been made, both by a Debtor and a Vendor. Due to the volume of outstanding orders placed by Nortel entities around the world in the ordinary course of business each day, many of which are placed with Vendors having operations in multiple international jurisdictions, the Debtors cannot readily determine the exact amount they will owe under the Outstanding Orders; however, based on estimates of historic amounts, the Debtors believe that Outstanding Orders may aggregate to approximately $16 million on average per day for goods, supplies and materials used and services obtained in connection with the operation of their businesses. Importantly, any and all amounts owing for post-petition delivery of goods or post-petition performance of services constitute administrative expenses as a benefit to the Debtors' estates.

12. As noted above, as a consequence of the commencement of these chapter 11 cases, Vendors are concerned that services rendered or goods, supplies and materials shipped to, or on behalf of, the Debtors subsequent to the Petition Date pursuant to the Outstanding Orders could be argued to render such Vendors pre-petition general unsecured creditors of the Debtors' estates with respect to post-petition delivery or performance. There is also the very real possibility that Vendors will refuse to provide such services or deliver such goods to the Debtors until Debtors obtain an order of the Court deeming all undisputed obligations arising from the Debtors' post-petition acceptance of supplies, materials and/or services subject to pre-petition Outstanding Orders to be administrative expense claims pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

13. In addition, the Debtors' supply relationships are global in nature, complicating their ability to determine which Outstanding Orders should not be performed as potential pre-petition obligations. Any delay or doubt in making this determination could hold up the entire global supply chain and seriously compromise the Debtors' continuing operations.

14. Furthermore, the Canadian Debtors and U.K. Debtors are permitted under the CCAA and the Insolvency Act 1986 respectively to pay for all post-petition deliveries in the ordinary course. To the extent possible, the Debtors would like to treat Vendors similarly across jurisdictions, particularly because non-payment in the United States may negatively impact shipments and deliveries globally.

## Basis for Relief

15. In order to obtain services and/or the delivery of goods, supplies and materials ordered pre-petition pursuant to Outstanding Orders, and out of an abundance of caution, the Debtors seek entry of an order (i) confirming administrative expense priority status under section 503(b) of the Bankruptcy Code to those obligations of the Debtors arising from deliveries of goods, supplies, materials or services ordered pursuant to Outstanding Orders that are received and actually accepted by the Debtors subsequent to the Petition Date, including without limitation, where partial payment for or performance of such obligations occurred during the pre-petition period; (ii) authorizing, but not directing, the Debtors to satisfy such obligations to Vendors in the ordinary course of business pursuant to section 363(c) of the Bankruptcy Code; and (iii) granting them such other and further relief as the Court deems just and proper.

16. Section 363(c)(1) of the Bankruptcy Code authorizes the trustee or debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 503(b)(1)(A) of the Bankruptcy Code provides an

administrative expense status to claim for "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). These administrative expenses, in turn, are entitled to a second priority status pursuant to 507(a)(2) of the Bankruptcy Code. 11 U.S.C. § 507(a)(2). Under section 105 of the Bankruptcy Code, the Court has broad discretion to issue orders necessary to "carry out the provisions of this title." 11 U.S.C. § 105(a).

17. The relief requested herein ensures the continuous performance of services and supply of goods and materials that are indispensable to the Debtors' continuing operations and integral to a successful reorganization. Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, obligations that arise in connection with the post-petition delivery to, and acceptance by, the Debtors of goods, supplies, materials and services, including goods, supplies, materials and services ordered pre-petition, constitute administrative expense priority claims. Thus, the granting of the relief sought herein will not provide the Vendors with any greater priority than they would otherwise have if the relief herein was not granted. However, absent such explicitly granted relief, Vendors may require that the Debtors expend substantial time and resources to reissue the numerous Outstanding Orders in order to provide the Vendors with a "post-petition" order and, thus, the benefit of such administrative expense priority. The attendant disruption to the continuous and timely flow of goods and services to the Debtors could result in insufficient goods, supplies, materials and services with which to provide the level of service expected by the Debtors' customers. Such a disruption could lead to dissatisfied customers, potentially harming customer confidence in the Debtors' ability to conduct their businesses at this critical juncture, and thereby jeopardize the prospects for a successful reorganization.

18. Furthermore, although section 363(c)(1) expressly permits the payment of these ordinary course amounts on a post-petition basis, the Debtors believe an order confirming the

7

Debtors' authority to make ongoing payments to the Vendors is essential to assure the Vendors that they will not suffer additional losses by providing the Debtors with post-petition goods and services, regardless of when the order was placed.

19. Numerous courts have granted the relief requested herein in other large chapter 11 cases. See, e.g. In re Northwest Airlines Corporation, et al., Case No. 05-17933 (Bankr. S.D.N.Y. Sep. 15, 2005) (Gropper, A.) (authorizing administrative expense priority status for post-petition deliveries by suppliers and vendors and the payment of undisputed obligations arising therefrom in the ordinary course of business); In re ONCO Investment Co., Case No. 04-10558 (Bankr. D. Del. Feb. 24, 2004) (Rosenthal, J.) (authorizing administrative expense priority status for post-petition deliveries by suppliers and vendors); In re Garden Ridge Corp., et al., No. 04-10324 (Bankr. D. Del. Feb. 3, 2004) (Kornreich, J.) (authorizing administrative expense priority status for post-petition deliveries by suppliers and vendors and the payment of undisputed obligations arising therefrom in the ordinary course of business); In re Samuels Jewelers, Inc., No. 03-12399 (Bankr. D. Del. Aug. 6, 2003) (Walrath, J.) (same); In re Zenith Industrial Corporation, Case No. 02-10754 (Bankr. D. Del. March 13, 2002) (Walsh, P.) (same); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 4, 2001) (Gonzalez, A.) (same).

20. Nothing contained in this Motion shall constitute a rejection or assumption by the Debtors, as debtors in possession, of any executory contract or unexpired lease relating to their various Outstanding Orders or otherwise discussed in this Motion. As such, the Debtors reserve all of their rights to assume or reject such agreements in accordance with the applicable provisions of the Bankruptcy Code. Furthermore, the Debtors reserve the right to contest, on nonbankruptcy grounds or otherwise, any amount claimed to be due by any of the counterparties to the Outstanding Orders.

## Notice

21. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (vi) the Securities and Exchange Commission; (vii) the Internal Revenue Service; and (viii) the United States Department of Justice. In light of the exigencies of the circumstances and the potential harm to the Debtors, their estates, and other parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

## No Prior Request

22. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: January 20, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Phone: (302) 658-9200
Facsimile: (302) 658-3989

*Proposed Counsel for the Debtors
and Debtors in Possession*