## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                              :

*In re*                               :    Chapter 11

                               :
Nortel Networks Inc., *et al*.          :    Case No. 09- 10138 (KG)

                               :
            Debtors.            :    Jointly Administered

                               :
-------------------------------------------------------X    RE: D.I. __81__

## DECLARATION OF JOSEPH FLANAGAN, SENIOR VICE PRESIDENT GLOBAL OPERATIONS OF NORTEL NETWORKS INC., IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 363(c), 503(b), AND 105(a) OF THE BANKRUPTCY CODE GRANTING ADMINISTRATIVE EXPENSE STATUS TO DEBTORS' OBLIGATIONS ARISING FROM THE POST-PETITION DELIVERY OF GOODS AND SERVICES ORDERED PRE-PETITION AND AUTHORIZING DEBTORS TO PAY SUCH OBLIGATIONS IN THE ORDINARY COURSE OF BUSINESS

        I, Joseph Flanagan, do hereby declare as follows:

        1.      I am Senior Vice President Global Operations of Nortel Networks Inc.

("NNI" and, together with the other above-captioned debtors, the "Debtors" or the "U.S.

Debtors").[1]

        2.      I submit this declaration in support of the Debtors' Motion for an Order

Pursuant to Sections 363(c), 503(b), and 105(a) of the Bankruptcy Code Granting Administrative

Expense Status to Debtors' Obligations Arising from the Post-Petition Delivery of Goods

Ordered Pre-Petition and Authorizing the Debtors to Pay Such Obligations in the Ordinary

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Course of Business (the "Motion").  Except as otherwise indicated, all facts set forth in this

declaration are based upon my personal knowledge, information supplied to me by other

members of the Debtors' management and professionals or learned from my review of relevant

documents or upon my opinion based upon my experience and knowledge of the Debtors'

operations and financial condition.  If I were called upon to testify, I could and would testify

competently to the facts set forth herein.  I am authorized to submit this declaration.

      3.     I am generally familiar with the day-to-day operations of the Debtors and

am responsible for relationships between the Debtors and their major Vendors (as defined

below).  Since the commencement of these chapter 11 proceedings on January 14, 2009, I have

been involved personally in numerous conversations with Vendors concerning the terms and

conditions of their current and going forward relationships with the Debtors.  Various vendors

and suppliers (collectively, the "Vendors") provide the Debtors with goods, supplies, materials

and/or services necessary for their continued operations.  In the ordinary course of their

businesses, the Debtors had pre-petition purchase or service orders outstanding as of the petition

date with various Vendors.

      4.     The Debtors' supply relationships are global in nature and, in many cases,

the same Vendors commonly supply goods and/or services to various Nortel entities around the

world.  As a result, different laws and jurisdictions are frequently implicated in a single Vendor

relationship.  Furthermore, failure to pay an obligation owed to a Vendor by one Nortel entity is

likely to result in that Vendor stopping shipment to all Nortel entities around the world.

      5.     Due to the volume of orders placed by Nortel entities around the world in

the ordinary course of business each day, it is impractical for the Debtors to review each

purchase order currently outstanding to determine whether the payment obligation arose pre or

post-petition according to the governing law, contract terms and delivery date. During the time required to perform such a reconciliation, I believe that it is likely that Vendors would stop shipment on goods, supplies, materials and/or services essential to the continued operation of the Debtors' businesses and leave the Debtors unable to satisfy their obligations to their customers.

6.      Furthermore, due to the volume of outstanding orders placed by Nortel entities around the world in the ordinary course of business each day, many of which are placed with Vendors having operations in multiple international jurisdictions, I cannot readily determine the exact amount they owed under outstanding orders. However, based on estimates of historic amounts, I believe that outstanding orders may aggregate to approximately $16 million on average per day for goods, supplies and materials used and services obtained in connection with the operation of the businesses.

7.      Accordingly, given the complex and established interrelations between the Vendors, Nortel and Nortel's customers, the relief requested in the Motion is important to the Debtors' continuing operations and ability to successfully reorganize.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2009

Joseph Flanagan
Senior Vice President Global Operations