IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                       Debtors. : Jointly Administered
:
: Hearing date: Feb. 5, 2009 at 10:00 a.m. (ET) (requested)
: Objections due: Feb 2, 2009 at 4: 00 p.m. (ET) (requested)
---------------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE DEBTORS TO RETAIN PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS *NUNC PRO TUNC* TO THE PETITION DATE

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order (the "Order") substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 327 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors' retention, payment of compensation and reimbursement and payment of expenses for certain professionals used in the ordinary course of the Debtors' businesses *nunc pro tunc* to the Petition Date (as defined below) and (ii) granting them such other and further relief as the Court deems just and proper. In support of this Motion the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 327 of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules.

## Background

**A. Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' cases. The United States Trustee appointed an Official Committee of Unsecured Creditors in these chapter 11 cases on January 22, 2009 (the "Committee").

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, has filed petitions for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6. In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young (collectively, the "U.K. Debtors").[3]

**B.    Debtors' Corporate Structure and Business**

7. A description of the Debtors' corporate structure and businesses and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

**Relief Requested**

8. By this motion, the Debtors seek authorization to retain, pay compensation to and reimburse the expenses of certain professionals who render services to the Debtors in the ordinary course of their businesses.

9. The Debtors retain various attorneys, accountants, consultants and other professionals in the ordinary course of their businesses (each, an "Ordinary Course Professional" or "OCP" and, collectively, the "OCPs") to render services relating to numerous issues that arise in the Debtors' businesses.[5] A list of the Debtors' current OCPs is attached to the proposed

---

[3] The U.K. Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[5] Certain of the Debtors' law firms retain additional advisors and consultants, such as patent agents, and present the bills for such advisors and consultants to the Debtors as an additional cost.

Order as Exhibit 1, containing the name, address, and a brief description of the type of services rendered by each OCP.[6]

10. These OCPs include attorneys, accountants, and consultants used by the Debtors to address issues related to, among other things: accounting services, auditing and tax services, tax and finance strategy, intellectual property, and other areas. The Debtors have many such outstanding issues to address in the ordinary course of their businesses and fully expect many more to arise during these chapter 11 cases. Sufficient attention to these issues common to the Debtors' businesses, however, cannot continue without the relief requested herein because few OCPs would be willing to continue their vital work for the Debtors without the assurance that the relief requested herein will provide.

11. For the purposes of administrative efficiency, the Debtors seek to retain, pay compensation to and reimburse and pay the expenses of, *nunc pro tunc* to the Petition Date, under various standard terms, including on retainer, the OCPs without having to file formal retention or fee applications for each of the OCPs pursuant to sections 327, 328, 329 and 330 of the Bankruptcy Code. In light of the substantial number of OCPs, it would be unduly burdensome to both the Debtors and the Court to require the Debtors to apply separately to this Court for approval of the retention of each individual OCP. Similarly, it would be unduly burdensome on the Court for each OCP to separately apply for compensation and reimbursement of expenses. Moreover, many of the OCPs are unfamiliar with the fee application process employed in a bankruptcy case and might be less inclined to work with the Debtors if they were forced to adhere to such requirements in order to be compensated for services rendered.

---

[6] Out of an abundance of caution, the Debtors have prepared a comprehensive list of OCPs. As a result, certain of the OCPs included on the list attached hereto as Exhibit 1 may have rendered services to the Canadian Debtors in addition to, or instead of, the Debtors in these chapter 11 cases.

4

12. Additionally, and again in light of the substantial number of OCPs retained by the Debtors and the significant costs associated with the preparation of retention applications for each OCP who will receive relatively modest fees, it would be impractical, inefficient, and extremely costly to require the Debtors and their legal advisors to prepare and submit individual applications and proposed retention orders for each OCP. The relief requested herein will obviate the need for such applications and separate orders.

13. The Debtors propose to pay each OCP, without formal application to the Court by any OCP individually, 100% of fees for services rendered to the Debtors on or after the Petition Date, and associated costs and disbursements, after such OCP (a) files with the Court and serves upon the Notice Parties (as defined below) a verified statement made pursuant to Bankruptcy Rule 2014 (the "Rule 2014 Statement") substantially in the form attached to the proposed Order as Exhibit 2 and (b) submits to the Debtors an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date and calculated in accordance with such OCP's standard billing practices, including project billing; provided that each OCP's fees, excluding costs and disbursements, do not exceed $50,000 per month (the "Monthly Cap"), $50,000 per project (the "Project Cap"), in the case of OCPs who customarily bill by project, or $500,000 per calendar year (the "Annual Cap") while these chapter 11 cases are pending.

14. The Debtors propose that in the event that the payments of fees to any OCP exceed the Monthly Cap, the Project Cap or the Annual Cap during the course of these chapter 11 cases, payment of such fees, as well as any costs and disbursements, would become subject to approval upon application to the Court for allowance of compensation and reimbursement of expenses pursuant to sections 330 and 331 of the Bankruptcy Code, and in accordance with the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware, the Fee Guidelines promulgated by the Executive Office of the United States Trustee and any order entered by the Court governing the payment of compensation and reimbursement of expense in these chapter 11 cases. Notwithstanding the foregoing, the Debtors seek permission to pay such professionals in the ordinary course for fees incurred prior to the time such thresholds are reached.

15.    Each OCP that the Debtors are authorized to retain will file with the Court a Rule 2014 Statement in substantially the form attached to the proposed Order as Exhibit 2, setting forth the OCP's connections with the Debtors, the Debtors' creditors, and any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee. The Rule 2014 Statement also shall be served on counsel to the Office of the United States Trustee for the District of Delaware, counsel to the Committee, and counsel to any other statutorily appointed committee in these cases (collectively, the "Notice Parties").

16.    The Debtors also seek permission to retain additional professionals as may be needed from time to time to assist the Debtors in the ordinary course of their businesses (each an "Additional Ordinary Course Professional" or "Additional OCP" and, collectively, the "Additional OCPs"), without the need to file individual retention applications for each, by filing a supplement to Exhibit 1 to the proposed Order with the Court without the need for any further hearing or notice to any other party. All OCPs and Additional OCPs will be required to file a Rule 2014 Statement with the Court and serve it upon the Notice Parties before they can be paid by the Debtors.

17.    The Debtors propose that the Notice Parties shall have ten (10) days after the filing by an OCP or Additional OCP of a Rule 2014 Statement (the "Objection Deadline") to

object to the retention of such OCP or Additional OCP. The objecting Notice Party shall serve any such objections upon the Debtors, the OCP or Additional OCP and the other Notice Parties on or before the Objection Deadline. If any such objection cannot be resolved within fifteen (15) days, the matter shall be scheduled for a hearing before the Court at the next regularly scheduled omnibus hearing date or other date otherwise agreeable to the OCP or Additional OCP, the Debtors and the Notice Parties. If no objection is received from the Notice Parties by the Objection Deadline, the Debtors shall be deemed authorized to retain and compensate such OCP or Additional OCP without further notice or hearing.

## Basis for Relief

18. The Debtors are authorized to retain the OCPs under section 327(a) of the Bankruptcy Code as to accountants and all other professionals, and section 327(e) of the Bankruptcy Code as to attorneys that have previously represented the Debtors. This Court is authorized to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code.

19. Because the OCPs will not be involved in the administration of these chapter 11 cases, the Debtors do not believe that the OCPs are "professionals" within the meaning of section 327 of the Bankruptcy Code, whose retention must be approved by the Court. See In re First Merchants Acceptance Corp., 1997 Bankr. LEXIS 2245, 8-9 (Bankr. D. Del. 1997). The First Merchants criteria are consistent with those utilized by other courts when examining the types of duties to be undertaken by a "professional." See, e.g., Elastead v. Nolden (In re That's Entm't Mktg. Group), 168 B.R. 226, 230-231 (N.D. Cal. 1994) (only retention of professionals whose duties are central to administration of estate requires prior court approval under section 327); In re Madison Mgmt. Group, Inc., 137 B.R. 275, 283-84 (Bankr. N.D. Ill. 1992) (same); In re Riker Indus., Inc., 122 B.R. 964, 973 (Bankr. N.D. Ohio 1990) (no need for section 327 approval of

fees of management and consulting firm that performed only "routine administrative functions" and whose "services were not central to [the] bankruptcy case"); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989) (section 327 approval not necessary for "one who provides services to debtor that are necessary regardless of whether petition was filed"); In re Fretheim, 102 B.R. 298, 299 (Bankr. D. Conn. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327); In re Pacific Forest Indus., Inc., 95 B.R. 740, 743 (Bankr. C.D. Cal. 1989) (same); In re Babcock Dairly Co., 70 B.R. 691, 692-93 (Bankr. N.D. Ohio 1987) (holding that an expert witness was not a "professional person" under section 327 because his testimony did not measurably affect the administration of the estate); In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals involved in the actual reorganization effort, rather than debtor's ongoing business, require approval under section 327).

20.    Nevertheless, out of abundance of caution and due to the essential nature of the OCPs to the Debtors' businesses, the Debtors seek the relief requested in this Motion to avoid any subsequent controversy as to the Debtors' employment and payment of the OCPs during the pendency of these chapter 11 cases. The Debtors have already sought specific Court authority under section 327 to employ other professionals involved in the actual administration of these chapter 11 cases, and will continue to do so as needed in these chapter 11 cases.

21.    The relief sought herein is not unusual considering the size and complexity of these cases. In fact, this court has granted similar relief in other large cases. See, e.g., In re DBSI, Inc., Case No. 08-12687 (PJW) (Bankr. D. Del. Dec. 2, 2008); In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. Aug. 19, 2008); In re Global Motorsport Group Inc., Case No. 08-10192 (KJC) (Bankr. D. Del. Feb. 29, 2008); In re Wickes Holdings, LLC, Case No. 08-

10212 (KJC) (Bankr. D. Del. Feb. 27, 2008); In re Delta Financial Corp., Case No. 07-11880 (CSS) (Bankr. D. Del. Feb. 14, 2008); In re Nutritional Sourcing Corp., Case No. 07-11038 (PJW) (Sept. 25, 2007); In re Northwest Suburban Community Hospital, Inc., Case No. 07-11018 (KG) (Bankr. D. Del. Aug. 23, 2007); In re Hancock Fabrics, Inc., Case No. 07-10353 (BLS) (Bankr. D. Del. Apr. 13, 2007)

22. Although certain of the OCPs may hold prepetition claims against the Debtors, the Debtors do not foresee that such claims will hinder the OCPs from rendering services during the pendency of these chapter 11 cases. The Debtors also do not believe that such claims create a position materially adverse to the Debtors with respect to the matters for which the OCPs are being retained.

23. The Debtors respectfully submit that the continued retention and compensation of the OCPs and the payment of compensation on the basis set forth herein is in the best interests of their estates, creditors, and other parties in interest. The OCPs are performing necessary services for the Debtors that do not relate to conducting these chapter 11 cases, and in order for the Debtors to continue to operate their businesses, they need the OCPs to continue to perform such services. In light of the nature of the services rendered, and the relatively small amount of each OCP's invoices, it would be inefficient, and create an unnecessary burden on the OCPs, the Debtors, the Court, and all interest parties for the OCPs to be subjected to the fee application process.

24. Indeed, if the Debtors cannot pay their invoices in the ordinary course on a regular basis, some of the OCPs would no doubt cease working for the Debtors. This would force the Debtors to incur additional and unnecessary expenses in educating replacement professionals about the matters for which they could be rendering services, and require Debtors'

personnel who would otherwise be devoting their time to the reorganization of the Debtors' businesses to spend time bringing new professionals up to speed, causing immediate and irreparable harm to the Debtors' estates. The Debtors' estates and their creditors are best served by avoiding any disruption in the professional services that are required for the day-to-day operation of the Debtors' businesses.

25. Further, to successfully implement the foregoing, the Debtors request that, pursuant to Bankruptcy Rule 6004(h), the Court direct that the order granting the requested relief be effective immediately upon entry.

26. Based on the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interests of the Debtors' estates and their creditors, and therefore should be granted in these chapter 11 cases.

## Notice

27. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the trustee under that certain indenture dated as of July 5, 2006, as supplemented, with respect to the floating rate senior notes due 2011, the 10.125% Senior Notes due 2013, and the 10.75% Senior Notes due 2016; (iii) counsel to the trustee under that certain indenture dated as of February 15, 1996, with respect to the 7.875% Senior Notes due 2026; (iv) counsel to the trustee under that certain indenture dated as of March 28, 2007, with respect to the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014; (v) counsel to the Committee; and (vi) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors. In light of the exigencies of the circumstances and the potential harm to the Debtors, their estates, and other parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

## No Prior Request

28. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: January 23, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Phone: (302) 658-9200
Facsimile: (302) 658-3989

*Proposed Counsel for the Debtors
and Debtors in Possession*