UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Nortel Networks, Inc., et al., | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**OBJECTION OF PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INCORPORATED TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL ORDERS (I) RESTRAINING UTILITY COMPANIES FROM DISCONTINUING, ALTERING OR REFUSING SERVICE, (II) DEEMING UTILITY COMPANIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE AND (III) ESTABLISHING PROCEDURES FOR DETERMINING REQUESTS FOR ADDITIONAL ASSURANCE**

COMES NOW, Public Service Company of North Carolina, Inc. ("PSNC"), and objects to the Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code for Interim and Final Orders (I) Restraining Utility Companies from Discontinuing, Altering or Refusing Service, (II) Deeming Utility Companies Adequately Assured of Future Performance and (III) Establishing Procedures for Determining Requests for Additional Assurance (the "Motion") filed by Nortel Networks, Inc., et al. ("Debtors"). PSNC disputes the amount and form of adequate assurance of payment for future utility services offered by Debtors as well as the procedures proposed by Debtors for utility providers to obtain additional adequate assurance of payment. These procedures contravene 11 U.S.C. §366, and PSNC sets forth its position more fully below.[1]

## STATEMENT OF FACTS

1. PSNC is a public utility provider, and it is regulated by the North Carolina Utilities Commission.

2. PSNC provides natural gas services to Debtors under two (2) accounts for two (2) locations as follows:

---

[1] Further references to the Bankruptcy Code shall be by section number only.

| Account Number | Service Location |
|---|---|
| 7-1981-0393-5978 | 35 Davis Drive, Morrisville, NC |
| 1-2100-5896-9502 | 4001 E. Highway 54, Durham, NC |

Account 5978 is in the name of "Northern Telecom", while account 9502 bears the name, "Nortel". There is no indication payment on these accounts has been delinquent in the preceding twelve months.

3. PSNC provides utility service for a period of approximately thirty (30) days before issuing invoices to customers requesting payment for these services. It typically takes a few days for the invoices to be generated and sent out. Invoice terms typically list a payment deadline date of approximately fifteen (15) business days from the date of invoice issuance. Meanwhile, PSNC continues to provide utility services for a new period while waiting for payment.

4. Debtors filed their Voluntary Petitions seeking chapter 11 bankruptcy relief on January 14, 2009.

5. As part of their first day motions, Debtors filed the Motion. Therein, they request an order: (1) prohibiting utilities from altering, refusing, or discontinuing utility services; (2) determining that their offer of establishing a segregated utility account in an amount equal to two weeks average utility usage is adequate assurance of payment; and (3) establishing procedures for utilities to request additional adequate assurance of payment.

6. The Court entered the Interim Order (I) Restraining Utility Companies from Discontinuing, Altering or Refusing Service, (II) Deeming Utility Companies Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment ("Interim Order") on January 15, 2009. The Interim Order grants the Motion and provides, in part, that

(a) Utility providers are forbidden to alter, refuse or discontinue service to the Debtors because of the bankruptcy filings or because of any unpaid invoice for utility services furnished prior to the petition date;

(b) Utility providers are forbidden to require the payment of deposits or other security in connection with the continued provision of utility services;

(c) Debtors shall establish a segregated Utility Deposit Account equal to the approximate cost of two weeks of Debtors' average utility use;

(d) To the extent the Debtors become delinquent with respect to a utility provider's postpetition account, the utility provider can file a notice of delinquency and serve the notice on five entities (Debtors' in-house counsel, Debtors' counsel, Debtors' local counsel, counsel for the Unsecured Creditors' Committee, and the United States Trustee). The notice must be in writing and set forth (i) the amount of the delinquency, (ii) the location where utility services are provided, and (iii) the Debtors' account number with the utility provider;

(e) Debtors and the parties in interest then have ten (10) days from receipt of the notice to cure the payment delinquency or object to same. If the Debtors do not cure the delinquency and if no party in interest objects, the utility company may access the Utility Deposit Account to obtain the *lesser* of (i) the two week deposit allocated to that utility provider or (ii) the amount of postpetition charges claimed as delinquent in the notice. If a party in interest objects to the notice, the Court will hold a hearing to resolve the dispute and determine whether the utility provider is entitled to access the Utility Deposit Account; and

(f) Should a utility provider request adequate assurance in addition to its rights to the Utility Deposit Account, it must make this request within ten (10) days of the petition date, and its request must be made in writing and (i) set forth the amount and form of

additional assurance of payment requested, (ii) set forth the location where utility services are provided, (iii) include a summary of Debtors' payment history, and (iv) explain why the adequate assurance proposed by Debtors is insufficient for the utility provider.[2]

## LEGAL ARGUMENT

### The Adequate Assurance Proposed by Debtors is Inadequate.

7. As adequate assurance of payment, Debtors propose paying undisputed post-petition utility invoices and creating a "Utility Deposit Account" in the amount of two weeks' worth of the Debtors' average utility consumption. This proposal does not provide adequate assurance of payment to PSNC on a number of levels. First, the Motion and the Interim Order do not define a utility provider's rights to this segregated utility account. Indeed, it is unclear whether the Utility Deposit Account will be funded by the DIP lender and subject to its lien. Second, the amount of the account is left to the unfettered discretion of Debtors. Third, Debtors impede utility providers' access to the Utility Deposit Account by establishing a labyrinth of procedures to navigate in order to retrieve funds from the account. Finally, the proposed amount of the Utility Deposit Account will be inadequately funded to address the total shortfall incurred by PSNC in the event of a payment default.

8. Indeed, the amount to be accorded to PSNC in the Utility Deposit Account ignores the realities of PSNC's billing cycles and termination procedures. As a public utility, PSNC is subject to the rules and regulations of the North Carolina Utilities Commission that regulates PSNC's ability to terminate service to customers in the event customers do not pay their

---

[2] Both the Motion and the Interim Order provide for the Utility Deposit Account to be comprised of the annual average two-week equivalent for those utility accounts except those that have agreed to lesser amounts, have previously obtained a deposit covering a period of two weeks or more and have *not* been subjected to pre-payment terms. Unless this definition represents a mis-statement, the only utility accounts that would be included in the Utility Deposit Account are those accounts with pre-payment terms already in place.

invoices.[3] The effect of these regulation is that PSNC will have provided just over a month of utility services before it issues an invoice requesting payment, and continues to provide utility services while the customer has approximately another twenty (20) days time in which to make a payment. If the payment is not made by the due date, PSNC will have provided almost two (2) months of utility services for which it has not been paid. Only at this point can PSNC provide the customer with the appropriate amount of notice that it will disconnect services. With PSNC facing a shortfall of approximately sixty days worth of utility services, it is not adequately protected by Debtors' promise to pay its bills or by rights to an account for payment of fourteen days of utility use.

9.   What serves as adequate assurance to PSNC is a cash deposit in the amount of $27,565.00 that is consistent with §366(c)(1)(A) and applicable public utility regulations.[4] The rights PSNC has with respect to the Utility Deposit Account are unclear and overly cumbersome, and PSNC fears it will face a significant shortfall in the event Debtors fail to make timely and full payments for utility usage. Given PSNC's restraints on terminating service, it seeks a cash deposit consistent with North Carolina Utility Commission regulations.

**The Procedures Set Forth in the Motion and the Interim Order Contravene §366.**

10.   PSNC also objects to the Motion on the grounds that it is inconsistent with the clear dictates of §366(c). Under §366(c)(2), adequate assurance is measured by what is satisfactory to the utility, not the debtor-in-possession. Once the utility receives this adequate assurance, the debtor or any interested party can seek to modify the adequate assurance by

---

[3]   See N.C. Admin. Code tit. 12, Rule 12-8 (April 2006) (providing that utility providers must provide five days notice before terminating services for nonpayment).

[4]   PSNC can require a deposit in an amount not to exceed two-twelfths of the estimated charge for the service for the ensuing twelve months. See N.C. Admin. Code Tit. 12, Rule R12-4 (April 2006).

making a modification request, and, after proper notice, the court will consider the request. See §366(c)(3).

11.   In contrast with the statutory parameters, Debtors (not the utilities) have proposed a form of adequate assurance of payment that is not set forth in §366(c)(1)(A). In addition, Debtors have left both the parameters of this account and utility providers' rights thereto unclear and burdensome. Debtors also sought and obtained the Court's involvement with respect to adequate assurance prematurely before learning what adequate assurance is satisfactory to utilities and furnishing same to these providers, and Debtors have also restrained utilities from exercising its rights under §366(c)(2), which provides that, if a utility does not receive satisfactory adequate assurance within thirty (30) days of the petition date, it can alter, refuse, or discontinue utility services to Debtors. Finally, Debtors have imposed procedures on utility providers that seek to obtain additional adequate assurance. In short, Debtors turn §366 upside down and ignore its new starting point: adequate assurance of payment must be satisfactory to the utilities, not to Debtors. While Debtors may attempt to explain this approach is a means to avoid receiving onerous and last-minute deposit demands from utility providers, such an argument is specious at best as PSNC is constrained by the North Carolina Utilities Commission with respect to the amount of the deposit or credit support that may be required. PSNC simply cannot demand an excessive deposit.

## CONCLUSION

PSNC respectfully requests that the Court deny the Motion. The proposed adequate assurance of payment by Debtors is inadequate. Adequate assurance of payment is a cash deposit consistent with §366(c)(1)(A) and applicable public utility commission regulations. In addition to the offer of adequate assurance potentially leaving PSNC facing a significant

shortfall, PSNC asserts that the Motion should be denied because the relief sought therein contorts §366 into a series of elaborate procedures rather than the straight-forward dictates of the statute.

/s/ David B. Wheeler
David B. Wheeler
Moore & Van Allen PLLC
40 Calhoun Street, Suite 300 (29401)
P.O. Box 22828
Charleston, SC 29413-2828
Telephone: (843) 579-7000
Facsimile: (843) 579-7099
Email: davidwheeler@mvalaw.com

ATTORNEYS FOR PUBLIC SERVICE COMPANY OF NORTH CAROLINA, INCORPORATED

Charleston, South Carolina
January 30, 2009

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| Nortel Networks, Inc., et al., | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**CERTIFICATE OF MAILING**

The undersigned, Legal Assistant to Attorney David B. Wheeler, of Moore & Van Allen PLLC, Attorneys for Creditor, Public Service of North Carolina, Incorporated, hereby certifies that on the 30th day of January, 2009, she caused a copy of the Objection of Public Service of North Carolina, Incorporated to Debtors' Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code for Interim and Final Orders (I) Restraining Utility Companies from Discontinuing, Altering or Refusing Service, (II) Deeming Utility Companies Adequately Assured of Future Performance and (III) Establishing Procedures for Determining Requests for Additional Assurance, and Certificate of Mailing to be placed in an envelope with first-class postage, prepaid, and mailed to:

Nortel Networks, Inc.
Attn: Lynn C. Egan, Esquire
220 Athens Way
Suite 300
Nashville, TN 37228

Cleary Gottlieb Steen & Hamilton, LLP
Attn: James L. Bromley, Esquire
One Liberty Plaza
New York, NY 10006

Morris, Nichols, Arsht and Tunnell, LLP
Attn: Derek C. Abbott, Esquire
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

/s/Ellen C. Perry
Ellen C. Perry, Legal Assistant
Moore & Van Allen PLLC
40 Calhoun Street, Suite 300
Post Office Box 22828
Charleston, SC 29413-2828
(843) 579-7000

Attorney of Record:
David B. Wheeler (DW0180)

CHARLESTON\358655v1