**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------------- X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*[1] | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |

Hearing date: Feb. 19, 2009 at 10:00 a.m. (ET)<br>Objections due: Feb 12, 2009 at 4:00 p.m. (ET)

----------------------------------------------------------------- X

**DEBTORS' MOTION FOR AUTHORIZATION AND**
**APPROVAL OF PROCEDURES FOR THE SALE OR**
**ABANDONMENT OF DE MINIMIS ASSETS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, authorizing and establishing procedures for the sale or abandonment of assets with a de minimis value to the Debtors' estate; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]    The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 363 and 554(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**Background**

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as foreign representative for the Canadian Debtors, has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11

proceedings as a foreign proceeding under section 18.6 of the CCAA.  In addition, at 8 p.m. on

January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European

affiliates into administration under the control of individuals from Ernst & Young LLC

(collectively, the "EMEA Debtors").[3]

6.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

provided for the joint administration of these cases and for consolidation for procedural purposes

only.

7.      On January 21, 2009, the Office of the United States Trustee (the "U.S. Trustee")

appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section

1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142).  No trustee or examiner has been appointed

in the Debtors' cases.

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A.,
Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel
Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks
B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks
Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**B.**     **Debtors' Corporate Structure and Business**

8.     A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

### Relief Requested

9.     By this Motion, the Debtors seek an order, pursuant to Sections 363(b) and 554(a) of the Bankruptcy Code, to implement procedures: (a) to effectuate one or more asset sales of relatively de minimis assets, including, but not limited to real and personal property assets, with a selling price of no more than $10,000,000 in any individual transaction and an aggregate amount of no more than $50,000,000, to a single buyer or group of related buyers (the "De Minimis Assets"), whether or not free and clear of all liens, claims, interests and encumbrances (collectively, the "Liens") with any such Liens attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the sale; (b) to abandon De Minimis Assets to the extent a sale thereof cannot be consummated at a value greater than the liquidation expense and therefore making such abandonment in the best interests of the estate; and (c) such other and further relief as the Court deems just and proper.

10.     The Debtors, by this Motion, seek the Court's authority to sell the De Minimis Assets for the highest and best offer received taking into consideration the exigencies and circumstances. If the relief is granted, the Debtors will abide by the following procedures with respect to such pending sales:

> a.          Except as modified by subparagraph (b) below, the Debtors propose to notify (i) any known affected creditor asserting a Lien on any De Minimis Assets subject to sale, and (ii) the Committee (collectively, the "Sale

---

[4]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

4

Notice Parties"). Such notice will contain (i) a general description of the De Minimis Assets to be sold, (ii) any commissions to be paid to third parties used to sell or auction the assets; (iii) the proposed purchase price, and (iv) terms of payment.

b.          No notice need be provided for asset sales with a purchase price that does not exceed $2,000,000; provided however, that the Debtors will furnish a quarterly schedule of all such assets sold to the Committee.

c.          For all asset sales with a purchase price greater than $2,000,000 but less than $10,000,000, notice will be given in accordance with paragraph (a) above. If none of the Sale Notice Parties receiving the notice objects in writing within five (5) business days of receipt of such notice, then the Debtors may immediately consummate the transaction, including making any disclosed payments to third-party brokers or auctioneers.[5] If an objection is received within such period that cannot be resolved, such De Minimis Assets will not be sold except upon further order of the Court after notice and a hearing.

d.          Without further order of the Court, sales and abandonment of De Minimis Assets pursuant to these procedures shall not exceed $50,000,000 in the aggregate.

e.          Nothing in the foregoing procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed transaction upon notice and a hearing.

11.    The Debtors expect to take all reasonable steps to sell De Minimis Assets. In some instances, the costs of the sale and satisfaction of encumbrances may exceed the likely proceeds of such sales. Accordingly, in some circumstances, the abandonment of such De Minimis Assets is in the best interests of the Debtors' estates and creditors. As a result, the Debtors propose to abandon certain De Minimis Assets in accordance with the following procedures:

a.          Except as modified by subparagraph (b) below, the Debtors propose to notify (i) any known affected creditor asserting a Lien on any De Minimis Assets subject to abandonment, and (ii) the Committee (collectively, the "Abandonment Notice Parties" and together with the Sale Notice Parties, the

---

[5] Parties shall be deemed to have received notice the day after such notice has been sent by a properly addressed facsimile, email or overnight delivery to a Sale Notice Party or its counsel or designated representative. If such notice is made solely by U.S. mail , the deemed receipt date shall be three (3) days after mailing.

"Notice Parties").  Such notice will contain a general description of the De Minimis Assets to be abandoned.

b.        No notice need be provided for the abandonment of De Minimis Assets if the estimated gross proceeds from the sale of such De Minimis Assets does not exceed $2,000,000; provided however, that the Debtors will furnish a quarterly schedule of all such assets abandoned to the Committee.

c.        If the estimated gross proceeds from the sale of De Minimis Assets are greater than $2,000,000 but less than $10,000,000, notice will be given in accordance with paragraph (a) above.  If none of the Abandonment Notice Parties receiving the notice objects in writing within five (5) business days of receipt of such notice, then the Debtors may immediately abandon the assets.[6]  If an objection is received within such period that cannot be resolved, such De Minimis Assets will not be abandoned except upon further order of the Court after notice and a hearing.

d.        Without further order of the Court, the sale and abandonment of De Minimis Assets pursuant to these procedures shall not exceed $50,000,000 in the aggregate.

e.        Nothing in the foregoing procedures will prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed transaction upon notice and a hearing.

### Facts Relevant to this Motion

12.     On January 1, 2009, the Canadian Court issued the Initial Order in the Canadian Proceedings.  In relevant part, paragraph 11(a) of the Initial Order permits the Canadian Debtors to "dispose of redundant or non-material assets not exceeding CDN$ 10,000,000 in any one transaction or CDN$ 50,000,000 in the aggregate…"

13.     In the ordinary course of their restructuring, the Debtors also expect that it will be beneficial to the estates to sell or otherwise dispose of non-material De Minimis Assets.  Given the interconnected nature of the relationship between the Debtors and their non-U.S. affiliates,

---

[6] Parties shall be deemed to have received notice the day after such notice has been sent by a properly addressed facsimile, email or overnight delivery to a Sale Notice Party or its counsel or designated representative.  If such notice is made solely by U.S. mail , the deemed receipt date shall be three (3) days after mailing.

including the Canadian Debtors, it is important that similar rules be in place to govern the sale or

abandonment of any De Minimis Assets.

**Basis for Relief**

A.      **Sale of De Minimis Assets**

14.      Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell or lease, other than in the ordinary course of business, property of

the estate." 11 U.S.C. § 363(b)(1).  When determining whether to authorize the sale of property

outside the ordinary course of business, courts require a debtor "to show that a sound business

purpose justifies such actions." Dai-Ichi Kangyo Bank, Ltd. V. Montgomery Ward Holding

Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999). See also In

re Del. & Hudson Ry. Co., 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting

debtor to sell assets where sound business reasons supported the sale).  When a sound business

purpose exists, and the sale is made in good faith, a sale pursuant to section 363(b)(1) of the

Bankruptcy Code should be approved.  See In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 150-

51 (3d Cir. 1986) (noting that when a court authorizes a sale of assets pursuant to section

363(b)(1), it is required to consider the "good faith" of the purchaser).

15.      The Debtors seek authority to sell the De Minimis Assets in their sound business

judgment, in an expeditious manner to minimize depreciation of these assets under current

economic conditions.  If the relief requested herein is granted, the Debtors will be able to avoid

many of the unnecessary costs associated with maintaining, retaining, storing and liquidating De

Minimis Assets that have relatively little commercial value.

16.      Moreover, the procedures proposed pursuant to this Motion will also reduce the

burden on the Court's docket while protecting the interests of all creditors with an interest in the

assets through the opportunity to object and obtain a hearing if necessary. Obtaining Court approval for each sale transaction would result in unnecessary administrative costs attendant to drafting, serving, and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings, which could significantly reduce the ultimate net value of these assets.

17.    The Debtors and their advisors have significant experience with sales such as these and are very well versed in obtaining the best sale price possible. The expedited procedures set forth herein will permit the Debtors to be responsive to the needs of interested purchasers, thereby guarding against lost sales due to delay, while still providing for a review of the proposed transaction by the Notice Parties.

18.    The requested relief will also ensure uniformity across jurisdictions, as the Canadian Debtors have been authorized to sell or abandon De Minimis Assets worth less than CDN $10,000,000, up to an aggregate of CDN $50,000,000, by the Canadian court.

19.    The Debtors' proposed sales of De Minimis Assets are in good faith, as the Debtors represent that no insider will gain an unfair advantage from the sales proposed herein since full disclosure will be made with respect to any insider sales. See In re Abbotts Dairies of Pa., Inc., 788 F.2d at 147 ("[t]ypically the misconduct that would destroy a purchaser's good faith status…involves fraud, collusion,…or an attempt to take grossly unfair advantage of other bidders.")(internal quotations and citations omitted). Moreover, as set forth above, the Debtors will provide the Notice Parties with the opportunity to review and object to any proposed transaction.

20.    Moreover, pursuant to Section 363(f) of the Bankruptcy Code, the Court may authorize the sale of assets free and clear of existing liens, claims and encumbrances if: (a) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;

(b) the entity holding the lien, claim or encumbrance consents to the proposed sale; (c) such

interest is a lien and the price at which such property is to be sold is greater than the aggregate

value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity

could be compelled in legal or equitable proceeding to accept a money satisfaction of such

interest. 11 U.S.C. § 363(f). Because Section 363(f) of the Bankruptcy Code is drafted in the

disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the

De Minimis Assets pursuant to the procedures described above. See Citigroup Homeowners

Servs. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D. Pa. 1988) (court may approve sale "free and

clear" provided at least one of the subsections is met).

21.      In order to facilitate the proposed sale transaction, the Debtors request that the

Court authorize the sales of property pursuant to this Motion be made free and clear of any and

all Liens, with any such Liens to be, at the Debtors' discretion, transferred and attached to the net

sale proceeds. The Debtors believe that the procedure set forth above satisfy the requirements of

Section 363(f). If a holder of Liens does not object within the prescribed time period, such

holder will be deemed to have consented to the proposed sale and the property may then be sold

free and clear of such holder's Liens.

22.      Additionally, Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease of property
> does not affect the validity of a sale or lease under such
> authorization to an entity that purchased or leased such property in
> good faith, whether or not such entity knew of the pendency of the
> appeal, unless such authorization and such sale or lease were
> stayed pending appeal.

11 U.S.C. § 363(m). In approving the sales free and clear of Liens, the Debtors request that the

Court find and hold that all purchasers of the property, in accordance with the procedures set

forth herein, are entitled to the protections afforded by section 363(m) of the Bankruptcy Code. Such relief is appropriate in light of the opportunity for review and objection by the Notice Parties. See Esposito v. Title Ins. Co. of Pa. (In re Fernwood Market), 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (good faith purchasers are protected under section 363(m) where notice is provided to lienholders). See also, In re Edwards, 962 F.2d 641, 645 (7th Cir. 1992) ("a bona fide purchaser at a bankruptcy sale gets good title," even where lienholders have not received notice). The Debtors submit that any agreement reached as a result of a sale of the De Minimis Assets will be an arm's length transaction entitled to the protections of section 363(m).

23.    Accordingly, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### B.    Abandonment of De Minimis Assets

24.    To the extent a sale cannot be consummated at a price greater than liquidation and Lien satisfaction costs, the Debtors seek authority to abandon such De Minimis Assets pursuant to Section 554(a) of the Bankruptcy Code, which provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).

25.    The right to abandon property is unfettered (except in certain circumstances inapplicable to the present case). See In re Midatlantic Nat'l Bank, 474 U.S. 494, 502 (1986). However, there are certain notice requirements attendant to the abandonment process. See, e.g., Fed. R. Bankr. P. 6007(c). Given the size and complexity of this proceeding, the Debtors propose that the abandonment notice requirements be modified as set forth above.

26.    This type of relief has been routinely granted in significant chapter 11 cases in this District. See, e.g., In re Sharper Image Corporation, Case No. 08-10322 (KG) (Bankr. D. Del. Apr. 2, 2008) (Order Pursuant to Sections 105 and 363 of the Bankruptcy Code Approving Procedures for the Sale of Certain De Minimis Assets Free and Clear of Liens, Claims and Encumbrances Without Further Court Approval); In re Federal-Mogul Global Inc., et al., Case No. 01-10578 (RJN) (Bankr. D. Del. Feb. 11, 2002) (Order Establishing Procedures for the Sale of De Minimis Assets); In re W.R. Grace & Co., et al., case No. 01-1139 (JJF) (Bankr. D. Del. Aug. 2, 2001) (Order Establishing Procedures for the Sale or Abandonment of De Minimis Assets); In re Pillowtex, Inc., case No. 00-4211 (SLR) (Bankr. D. Del. Feb. 6, 2001) (Order Establishing Procedures for Miscellaneous Assets Sales).

27.    The Debtors have determined, in their sound business judgment, that implementing a process to sell or abandon the De Minimis Assets will save substantial administrative expense and help maximize value and provide the Debtors with the necessary flexibility to address sales matters efficiently and expeditiously.   Accordingly, the Debtors submit that the relief requested herein is in the best interests of the Debtors' estates and their creditors.

## Notice

28.    Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; and (iii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the

relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated: February 2, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

                                   James L. Bromley
                                   Lisa M. Schweitzer
                                   Cleary Gottlieb Steen & Hamilton LLP
                                   One Liberty Plaza
                                   New York, New York 10006
                                   Telephone:  (212) 225-2000
                                   Facsimile:  (212) 225-3999

                                          - and -

                                   MORRIS NICHOLS, ARSHT & TUNNELL LLP

                                   Derek C. Abbott (No. 3376)
                                   Eric D. Schwartz (No. 3134)
                                   Thomas F. Driscoll III (No. 4703)
                                   Ann C. Cordo (No. 4817)
                                   1201 North Market Street
                                   P.O. Box 1347
                                   Wilmington, Delaware 19801
                                   Telephone:  (302) 658-9200
                                   Facsimile: (302) 658-3989

                                   *Proposed Counsel for the Debtors*
                                   *and Debtors in Possession*