IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                           :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                :     Case No. 09-10138 (KG)
:
            Debtors.             :     Joint Administration Pending
:
:     **RE: D.I. 19, 55**
:
------------------------------------------------------------X

## FINAL ORDER ESTABLISHING NOTIFICATION PROCEDURES AND APPROVING RESTRICTIONS ON CERTAIN TRANSFERS OF THE DEBTORS' PARENTS' EQUITY SECURITIES

Upon the motion dated January 14, 2009 (the "Motion"),[2] of Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), for entry of an order, as more fully described in the Motion, establishing notification procedures and approving restrictions on certain transfers of the Debtors' parents' equity securities, and upon consideration of the Declaration of John Doolittle in Support of First Day Motions and Applications, filed concurrently with the Motion; and adequate notice of the Motion having been given as set forth in the Motion; and it appearing that no other or further notice is necessary; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined that

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number are: NNI (6332), Nortel Networks Capital Corporation ("NNCC") (9620), Alteon Websystems, Inc. (9769), Alteon Websystems International, Inc. (5596), XROS, Inc. (4181), Sonoma Systems (2073), QTERA Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation. (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2718375.2

consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Motion and the Declaration establish just cause for the relief requested in the Motion, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest; and upon the record in these proceedings; and after due deliberation, it is hereby

FOUND THAT:

A. Unrestricted trading in equity interests in Nortel Networks Corporation, a Canadian corporation ("NNC"), and Nortel Networks Limited, a Canadian Corporation ("NNL"),[3] prior to the Debtors' emergence from Chapter 11 could potentially limit the Debtors' ability, in connection with their eventual emergence from bankruptcy, to utilize net operating loss ("NOL") carryovers and certain other tax attributes of Debtors and their subsidiaries for U.S. federal income tax purposes, pursuant to the rules under section 382 of the Internal Revenue Code.

B. The trading restrictions and procedures set forth herein are reasonable and proper in order to preserve such NOL carryovers and other tax attributes and are therefore in the best interests of the Debtors, their estates, and their creditors.

C. The relief requested in the Motion is authorized under sections 105(a), 362, and 541 of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

The Motion is granted on a final basis, from the date hereof; and

The following procedures and restrictions are imposed and approved:

1. <u>Notice of Substantial Equityholder Status</u>. Within thirty (30) days of the later of the Effective Time and the date on which an Entity becomes a Substantial Equityholder, each Substantial Equityholder shall serve on the Debtors and their attorneys (as per the instructions in the notice) a notice in the form attached hereto as Exhibit A-1 (a "Substantial Equityholder Notice"), setting forth summary information regarding the aggregate amount of each class of Stock of which it has Tax Ownership.

2. <u>Immediate Restrictions and Procedures for Trading in Stock</u>. Any Entity that, after the Effective Time,

---

[3] The common shares of NNC are publicly traded on the New York Stock Exchange and the Toronto Stock Exchange ("TSX"). NNL's Cumulative Redeemable Class A Preferred Shares Series 5 and Non-cumulative Redeemable Class A Preferred Shares Series 7 are publicly traded on the TSX. NNL is a direct operating subsidiary of NNC.

(i) is not a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of Stock that would cause the Entity to become a Substantial Equityholder;

(ii) is a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Stock; or

(iii) is a Substantial Equityholder and wishes to sell or otherwise dispose of Tax Ownership of any Stock,

must, prior to the consummation of any such transaction, serve on the Debtors and their attorneys (as per the instructions in the notice) a notice in the form attached hereto as Exhibit A-2, in the case of a proposed acquisition of Stock, or Exhibit A-3, in the case of a proposed disposition of Stock (either such notice, a "Proposed Stock Transaction Notice"). If no written objection to the proposed transaction is filed with the Court by the Debtors within ten (10) calendar days following the receipt of a Proposed Stock Transaction Notice, then the transaction may proceed. If a written objection to the proposed transaction is filed by the Debtors with the Court within such period, then the transaction may not be consummated unless approved by a final and nonappealable order of the Court; *provided, however*, that under no circumstances may the Debtors object to any purchase, sale, or other transfer of Tax Ownership of Stock by or to any Entity pursuant to a binding contract entered into by that Entity before the Effective Time. Further transactions within the scope of this Section 2 must be the subject of additional notices as set forth herein with additional waiting periods.

3. **Potential Future Restrictions and Procedures for Trading in Covered Claims**. The Debtors wish to inform present and future holders of Covered Claims that they may seek the imposition of restrictions on trading in Covered Claims.

(a) Any Entity that, on or after the Effective Time, has Tax Ownership of Covered Claims may have an obligation to comply with additional notice and information requirements, and appropriate sanctions for noncompliance related thereto, and may, to the extent such Covered Claims could be converted under a 382(l)(5) Plan into a 5% or greater block of the stock of the reorganized Debtors (applying the beneficial ownership rules of section 382 of the Internal Revenue Code and the Treasury regulations promulgated thereunder), have an obligation to comply with a Sell Down Order, in both cases pursuant to a subsequent Debtors' motion and an order by this Court. All such future procedures, obligations, requirements and sanctions will be substantially similar to those established in Sections 3, 4 and 6 of the Model Final NOL Trading Order.

(b) Any Entity that purchases or otherwise acquires Tax Ownership of Covered Claims after the Effective Time and that participates in formulating any Chapter 11 plan of reorganization of or on behalf of the Debtors (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisers with regard to such a plan) shall not so participate in a manner that makes evident to the Debtors that any Covered Claims of which such Entity has Tax Ownership are Newly Traded Covered Claims (the "Participation Restriction"). For this purpose, the Debtors acknowledge and agree that the following activities shall not without more constitute a violation of the Participation Restriction: (i) filing an objection to a proposed disclosure statement or to confirmation of a proposed plan of


reorganization; (ii) voting to accept or reject a proposed plan of reorganization; (iii) reviewing or commenting on a proposed business plan; (iv) being a member of a Creditors Committee or an ad hoc committee; (v) providing information to the Debtors' counsel on a confidential basis; or (vi) taking any action required by this Order.

4. <u>Confidentiality</u>.

The Debtors shall keep all information provided in notices delivered pursuant to this Order strictly confidential and shall not disclose the contents thereof to any person (including any member of any Creditors Committee), except (i) to the extent necessary to respond to a petition or objection filed with the Court; (ii) to the extent otherwise required by law; or (iii) to the extent that the information contained therein is already public; *provided, however,* that the Debtors may disclose the contents thereof to their professional financial advisers, who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person, subject to further Court order. To the extent confidential information is necessary to respond to a petition or objection filed with the Court, such confidential information shall be filed under seal or in redacted form.

5. <u>Sanctions for Noncompliance Relating to Stock</u>.

Acquisitions and dispositions of Tax Ownership of Stock in violation of the restrictions and procedures set forth in Section 2 shall be void ab initio, and the sanction for violating Section 2 shall be reversal of the noncompliant transaction or such other (or additional) measures as the Court may consider appropriate.

6. <u>Exceptions and Special Rules</u>.

(a) *Agents.* Acquisitions and dispositions of Tax Ownership of Stock by an Entity acting as an Agent on behalf of another Entity shall not be subject to this Order with respect to that Agent; *provided, however,* that the account, customer, fund, principal, trust, or beneficiary shall not be excluded from this Order by reason of this subsection, although there shall be no affirmative duty to inquire whether the account, customer, investment fund, principal, trust, or beneficiary is subject to any restrictions or requirements under this Order.

(b) *Offsetting Acquisitions and Dispositions.* Acquisitions and dispositions of Tax Ownership of Stock by an Entity that net to zero at the end of a trading day and that settle on the same settlement date (including, without limitation, "day trading" transactions, and transactions in which an Entity acts as a "riskless principal" between customers by buying and selling the same aggregate amounts of securities) shall not be subject to this Order with respect to such Entity; *provided, however,* that such transactions shall not be excluded from this Order with respect to such Entity's counterparties solely by reason of this subsection, although there shall be no affirmative duty to inquire whether such counterparties are subject to any restrictions or requirements under this Order.

(c) *Short Sales and Onlending.* The borrowing of Stock by an Entity for the purpose of effecting short sales or for onlending, whether for the Entity's own account or for a customer account, shall not be subject to this Order with respect to such Entity or its customer, nor shall such short sales or onlending, so long as such borrowing does not occur prior to the day when

4

such Stock is used to complete and settle the short sale or onlending; *provided, however,* that the purchaser of such Stock in a short sale shall not be excluded from this Order solely by reason of this subsection, although there shall be no affirmative duty to inquire whether such purchaser is subject to any restrictions or requirements under this Order. The unwinding of such a short sale by the short-seller shall also not be subject to this Order, so long as the Stock used to close the borrowing is acquired on the date such Stock is returned to the lender.

(d)     *Netting Agreements.* Where an Entity is a party to an enforceable netting agreement with respect to transactions in Stock, the Entity shall be treated for purposes of this Order as having an obligation to acquire or dispose of Tax Ownership on a given day of only the net amount of Stock that is to be acquired or disposed of on such day pursuant to such agreement.

(e)     *Collateral for Money Loans.* The use of Stock as collateral for a money loan shall not be treated as giving rise to an acquisition or disposition of Tax Ownership of Stock that is subject to this Order; *provided, however,* that any transfer of collateral pursuant to the collection of such money loan shall not be excluded from this Order solely by reason of this subsection.

7.     Discretionary Waiver by Debtors. The Debtors may waive any sanctions, remedies, or notification procedures imposed by this Order on parties other than the Debtors.

8.     Continued Compliance with Other Applicable Laws and Rules. The requirements set forth in this Order are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

9.     Definitions. For purposes of this Order, the following definitions shall apply:

"382(*l*)(5) Plan" means a plan of reorganization for the Debtors under Chapter 11 pursuant to which there is a reasonable possibility that section 382(*l*)(5) of the Internal Revenue Code will be utilized and which provides that transfers of Tax Ownership of the reorganized Debtors', NNC's and NNL's equity will be restricted for not less than two years after the reorganization, in a manner reasonably sufficient to prevent the application of section 382(*l*)(5)(D) of the Internal Revenue Code.

"Agent" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse, or trustee (including an Indenture Trustee but not including a trustee qualified under section 401(a) of the Internal Revenue Code).

"Bankruptcy Code" means title 11 of the United States Code.

"Chapter 11" means chapter 11 of the Bankruptcy Code.

"Covered Claims" means any general unsecured claims and the unsecured portion of any partially secured claims against the Debtors that are treated as indebtedness for U.S. federal income tax purposes, including claims incurred in the ordinary course of Debtors' respective businesses, debt securities issued by the Debtors and preferred securities issued by the Debtors that are treated as indebtedness for U.S. federal income tax purposes, but not including any loans or other financial accommodations made to or for the benefit of the Debtors pursuant to debtor-in-possession financing agreements.

5

"Creditors Committee" means the official committee of unsecured creditors that has been appointed in these cases.

"Debtors" has the meaning given in the first paragraph hereof.

"Effective Time" means the earlier of:

(i) two hours after notice of the Interim Order entered on January 15, 2009 with respect to the Motion first appears on the Bloomberg newswire service; and

(ii) 10:00 A.M. Eastern Time on the morning when notice of the Interim Order entered on January 15, 2009 with respect to the Motion is first published in The Wall Street Journal.

"Entity" means a person or entity for purposes of the rules under section 382 of the Internal Revenue Code.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

"Model Final NOL Trading Order" means the Model Final NOL Trading Order published in June 2006 by the Bond Market Association and Loan Syndications and Trading Association.

"Motion" has the meaning given in the first paragraph hereof.

"Newly Traded Covered Claims" means Covered Claims (i) of which an Entity acquired Tax Ownership after the date that was 18 months before the Petition Date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Tax Ownership.

"NNC Common Stock" means common shares of NNC.

"NNL Preferred Stock" means NNL's Cumulative Redeemable Class A Preferred Shares Series 5 and NNL's Non-cumulative Redeemable Class A Preferred Shares Series 7, and any other series of NNL preferred shares into which they may be converted.

"NOL" has the meaning given in first paragraph of the findings hereof.

"Participation Restriction" has the meaning given in Section 3(b).

"Petition Date" means January 14, 2009.

"Proposed Stock Transaction Notice" has the meaning given in Section 2.

"Register Agents" has the meaning given in Section 8.

"Sell Down Order" means an order established under procedures and with restrictions substantially similar to those established in sections 3 and 4 of the Model

Final NOL Trading Order, authorizing the Debtors to restrict an Entity's transactions in, or require an Entity's sale of, Covered Claims.

"Stock" means NNC Common Stock and NNL Preferred Stock.

"Substantial Equityholder" means an Entity that has Tax Ownership of (i) at least 23,600,000 shares of NNC Common Stock (representing approximately 4.75% of the issued and outstanding shares of NNC Common Stock), or (ii) at least 4.75% of the total number of outstanding shares of either of the following series of NNL Preferred Stock, or any other series of NNL preferred shares into which they may be converted: Cumulative Redeemable Class A Preferred Shares Series 5, and Non-cumulative Redeemable Class A Preferred Shares Series 7.

"Substantial Equityholder Notice" has the meaning given in Section 1.

"Tax Ownership" means beneficial ownership for U.S. federal income tax purposes as determined in accordance with applicable rules under section 382 of the Internal Revenue Code. To the extent provided in those rules, Tax Ownership shall include, but not be limited to, direct and indirect ownership (e.g., a holding company would generally be considered to have Tax Ownership of all Stock or Covered Claims owned by its subsidiaries), ownership by members of a person's family and persons acting in concert and, in certain cases, ownership of an option, warrant, convertible security, or similar interest.

10. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

11. The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the contents of the Motion, ~~or otherwise deemed waived.~~

12. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: February 5, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

7