IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                               :
*In re*                                                        :   Chapter 11
                                                               :   Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]                               :   Jointly Administered
                                                               :
                                    Debtors                    :   Objection Deadline: February 26, 2009 at 4:00 p.m.
                                                               :   Hearing Date: March 5, 2009 at 10:00 a.m.
                                                               :
---------------------------------------------------------------X

## APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CAPSTONE ADVISORY GROUP, LLC AS FINANCIAL ADVISOR, NUNC PRO TUNC TO JANUARY 26, 2009

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby submits this application (the "Application") to the Court pursuant to sections 328(a) and 1103(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended and supplemented, the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), for the entry of an order authorizing the Committee to retain and employ Capstone Advisory Group, LLC ("Capstone"), *nunc pro tunc* to January 26, 2009, pursuant to the terms of that certain engagement letter, dated as of January 26, 2009, a copy of which is attached hereto as Exhibit A (the "Engagement Letter"), as financial advisor to the Committee in the above-captioned Chapter

---

[1] The Debtors in these chapter 11 cases include: Nortel Networks Inc.; Nortel Networks Capital Corporation; Alteon Websystems, Inc.; Alteon Websystems International, Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; Coretek, Inc.; Nortel Networks Applications Management Solutions, Inc.; Nortel Networks Optical Components, Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; and Nortel Networks Cable Solutions Inc.

11 cases (the "Chapter 11 Cases"). In support of its Application, the Committee relies upon the Affidavit of Jay I. Borow. (the "Borow Affidavit"), attached hereto as Exhibit B and incorporated herein by reference, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are sections 328 and 1103(a) of the Bankruptcy Code, as complemented by Bankruptcy Rules 2014(a) and 2016 and Local Bankruptcy Rule 2014-1.

## BACKGROUND

2. On January 14, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4. On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, Nortel Networks Inc.'s direct corporate parent, Nortel Networks Limited, and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies'

Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5. On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware appointed the Committee. The Committee currently consists of four members.[2]

6. At a meeting of the Committee on January 26, 2009, the Committee duly voted to retain Capstone as its financial advisor in connection with the Chapter 11 Cases.

## RELIEF REQUESTED

7. By this Application, the Committee seeks to employ Capstone as its financial advisor, *nunc pro tunc* to January 26, 2009, and for Capstone to be compensated at the hourly rates referenced in the Engagement Letter, plus properly reimbursable expenses and out-of-pocket costs as an expense of administration and/or in accordance with any order of this Court, subject to approval by this Court. Specifically, the Committee respectfully requests entry of an order pursuant to sections 328 and 1103(a) of the Bankruptcy Code authorizing Capstone to perform those financial advisory services that will be necessary during these Chapter 11 Cases on behalf of, and for the benefit of, the Committee as more fully described below.

## RETENTION OF CAPSTONE

A. **Introduction**

8. The Committee submits the Application because of its need to retain a financial advisor to help guide it through the Debtors' reorganization efforts and to assist it in the tasks associated with negotiating and implementing the Debtors' plan of reorganization. The Committee determined that Capstone's broad experience and role as financial advisor to the

---

[2] The Committee currently consists of: Airvana, Inc., Flextronics Corporation (Chairperson), Pension Benefit Guaranty Corporation and The Bank of New York Mellon, as indenture trustee.

3

Committee would best serve the interests of the Committee, its counsel and, by extension, the Debtors' unsecured creditors.

9. The Committee believes that Capstone is well qualified and uniquely able to provide financial advisory services to it in these cases in an efficient manner. Capstone professionals have assisted and advised debtors, creditors, creditors' committees, bondholders, investors, and other stakeholders in numerous bankruptcy cases such as Tropicana Entertainment, LLC, Spiegel Inc., W.R. Grace, Kmart Corp., Mirant Energy, Adelphia, Owens-Corning, Polaroid, Sunbeam, U.S. Office Products, Collins & Aikman, Federal-Mogul, U.S. Industries and Calpine.

10. In order to perform these services in a cost-effective manner, Capstone has represented to the Committee that it will endeavor to coordinate all of its services to the Committee with the other professionals retained by the Committee in these cases, including Jefferies, the Committee's proposed investment bankers, so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services and lessen any potential burden on the Debtors' estates and their professional advisors. Representatives of Capstone have already met with the representatives of Jefferies and worked out an appropriate and efficient division of responsibilities. As such, the Committee submits that the services of Capstone will complement, and not duplicate, the services of other of the Committee's other professionals, agents or advisors.

11. Pursuant to the Engagement Letter, it is expected that Capstone will provide the following services to the Committee:

(i) advise and assist the Committee in its analysis and monitoring of the Debtors' historical, current and projected financial affairs, including without limitation, schedules of assets and liabilities, statement of financial affairs, periodic operating reports, analyses of cash receipts and disbursements, analyses of cash

4

flow forecasts, analyses of intercompany transactions, analyses of trust accounting, analyses of various asset and liability accounts, analyses of cost-reduction programs, analyses of any unusual or significant transactions between the Debtors and any other entities, and analyses of proposed restructuring transactions;

(ii) analyze the Debtors' Operative Business Plan, including forecasted operating statements, balance sheets, cash flows and the related underlying assumptions and support thereto;

(iii) develop a monthly monitoring report to enable the Committee to effectively evaluate the Debtors' performance on an ongoing basis;

(iv) monitor and analyze the Debtors' cash position, liquidity, intercompany charges, and financial results versus forecast and budget;

(v) assist and advise the Committee and counsel in reviewing and evaluating any court motions, applications or other forms of relief filed or to be filed by the Debtors, Canadian Debtors or any other parties-in-interest;

(vi) analyze any intercompany charge financing arrangements;

(vii) monitor Debtors' claims management process, analyze claims, analyze guarantees, and summarize claims by entity;

(viii) analyze the impact of the bankruptcy filing on strategic alliances and long-term supply agreements;

(ix) analyze any proposed critical vendor arrangements, current status of trade support and monitor any subsequent changes in amounts and terms of credit extension;

(x) advise and assist the Committee in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action that the Debtors' estates may hold against third parties;

(xi) analyze the Debtors' assets and analyze possible recovery to the various creditor constituencies under various scenarios;

(xii) analyze alternative reorganization scenarios;

(xiii) assist and advise the Committee in evaluating and analyzing restructuring proposals of the Debtors and assist counsel and the Committee in developing negotiation strategies to support the Committee's position;

(xiv) advise and assist the Committee in its assessment of proposed bonus, incentive and retention plans;

(xv) advise and assist the Committee in reviewing any proposed sales or acquisitions of assets or business units as to the impact on remaining business units;

(xvi) advise and assist the Committee in its review of intercompany transactions between the Debtors' and non-debtor subsidiaries and affiliates;

(xvii) render expert testimony as requested from time to time by the Committee and counsel, regarding the feasibility of a plan of reorganization and other matters;

(xviii) attend Committee meetings and court hearings as may be required in the role of advisors to the Committee; and

(xix) provide other services that are consistent with the Committee's role and duties as may be requested from time to time.

12. The Committee hereby requests that the Court approve Capstone's retention *nunc pro tunc* to January 26, 2009. This is appropriate because, since that date, Capstone has provided necessary services to the Committee, which services include reviewing the Debtors' financial and operating information, analyzing various issues confronting the Debtors and creditors in connection with the Debtors' restructuring, including the Debtors' proposed intercompany financing arrangements and use of cash collateral and communicating with the Committee regarding such matters.

**B.   The Terms of Capstone's Engagement**

13. As described more fully in the Engagement Letter, Capstone will be entitled to receive, as compensation for its services, fees based on the following hourly rates:

| | |
|---|---|
| Executive Directors | $550 - $795 |
| Staff | $250 - $625 |
| Support Staff | $110 - $170 |

14. In addition, Capstone will be entitled to seek reimbursement for reasonable and actual out of pocket expenses, including, but not limited to, costs of reproduction, typing, computer usage, legal counsel and other direct expenses incurred in connection with Capstone providing professional services to the Committee.

15. By this Application, and pursuant to terms of the Engagement Letter, in connection with Capstone's engagement to provide financial advisory services to the Committee, the Committee requests that the Debtors and their estates agree to indemnify and hold harmless Capstone against any and all loses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, defending any action, suit, proceedings or investigation (whether or not in connection with a proceeding or litigation in which Capstone is a party), directly or indirectly, caused by, related to, based upon, arising out of or in connection with the engagement of Capstone or any services rendered pursuant to such Engagement Letter, unless there is a final non-appealable order of a court of competent jurisdiction, finding Capstone directly liable for gross negligence or willful misconduct (the "Indemnity"). The Indemnity extends to the members and employees of Capstone.

16. The Indemnification is a customary and reasonable term of consideration for financial advisors such as Capstone for proceedings both out-of-court and in chapter 11. The indemnification, contribution and exculpation procedures reflected in the attached order are in substantially the same form as the indemnification, contribution and exculpation procedures that have been approved, in this district and in other jurisdictions. As such, the Committee respectfully submits that the Indemnification, viewed in conjunction with the other terms of Capstone's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors, and specifically, the Committee.

17. As described more fully in the Borow Affidavit in support of the Application, the terms of the Engagement Letter are similar to the terms, both financial and otherwise, agreed to by Capstone and other financial advisory firms, both inside and outside of bankruptcy.

18. The terms of the Engagement Letter were negotiated between the Committee and Capstone, and reflect the extensive work to be performed by Capstone and the firm's financial advisory expertise.

### C. The Application Should be Approved Pursuant to Section 328(a) of the Bankruptcy Code

19. The Committee seeks to retain Capstone pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides, in part, that a committee, "with the court's approval, may employ or authorize the employment of a professional person under section…1103…on any reasonable terms and conditions of employment, including a retainer…." 11 U.S.C. § 328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the Court of Appeals for the Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)</u>, 123 F.3d 861 (5th Cir. 1997) (citations omitted):

> Prior to 1978, the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants reasonable compensation based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

<u>Id</u>. at 862.

20. Subject to Court approval in accordance with sections 328, 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and the orders of this Court,

Capstone intends to apply to the Court for the payment of compensation for services rendered and reimbursement of actual and necessary expenses incurred in connection with professional services rendered on behalf of the Committee at its normal and customary hourly rates then in effect.

### D. Capstone is a Disinterested Party

21. To the best of the Committee's knowledge, information and belief and based upon the Borow Affidavit, Capstone is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code. Capstone's compliance with the requirements of section 504 of the Bankruptcy Code and Bankruptcy Rules 2014, 2016 and 5002 is set forth in greater detail in the Borow Affidavit.

22. To the best of the Committee's knowledge, information and belief and as described in the Borow Affidavit, Capstone does not represent any of the Debtors' creditors or other parties to these Chapter 11 Cases, or their respective attorneys or accountants, in any matter that is adverse to the interests of the estates with respect to the matters on which Capstone will be employed that would impair Capstone's ability to perform professional services for the Committee in an objective manner.

23. More specifically, as set forth in the Borow Affidavit, Capstone, its members and employees:

(i) are not creditors, equity security holders or insiders of the Debtors;

(ii) are not and were not, within 2 years before the Petition Date, directors, officers, or employees of the Debtors; and

(iii) do not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors for any other reason.

24. To make this determination, Capstone submitted the names of individuals or entities that may be parties-in-interest in the Chapter 11 Cases, including the names of each of

the Debtors' affiliates, the Debtor's 5% shareholders, the Debtors' significant equity investors, current and former for the two years prior to the petition date directors and officers of NNI, NNCC, Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Architel Systems (U.S.) Corporation, Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Nortel Networks International Inc., Northern Telecom International Inc., Nortel Networks Cable Solutions, Inc., the Debtors' significant vendors, the Debtors' litigants, the Debtor's lenders, the Debtors' banks and money market funds, the Debtors' significant customers, the Debtors' landlords, the Debtors' insurers, counterparties to the Debtors' significant contracts, the Debtors' bondholders and Trustees, the Debtors' professionals, the debtors' major competitors, the top 40 unsecured creditors, Debtors' utilities, other parties, Committee members and their proposed professionals, and parties filing a notice of appearance (as of January 26, 2009), to its internal conflicts procedures. A list of these entities, as provided by the Committee, is attached as Exhibit B-1 to the Borow Affidavit.

25. Capstone has determined that none of its members or employees has any connection with the Debtors, their professional advisors, their creditors, members of the Committee or Office of the United States Trustee or any employee thereof, except as described on the list attached as Exhibit B-2 to the Borow Affidavit. However, none of these engagements are related to the Debtors or the Chapter 11 Cases. Many of Capstone's engagements are for syndicated lending groups and a number of the financial institutions listed on Exhibit B-2 are either agents or participating lenders in such groups. It is typical in such engagements for Capstone's bills to be rendered to the related borrower, not to Capstone's clients. As such, Capstone maintains it's billing records on an "engagement" basis. Accordingly, the precise

amount of fees that may be indirectly ascribed or applicable to each of these institutions is not readily or accurately discernable. This is due to, among other reasons, regular commonly active trading of debt. Capstone has been directly involved in or served in matters with parties listed in Exhibit B-2.

26. None of the engagements described above are or were in connection with matters relating to the Debtors or their estates, and none of the representations would adversely affect Capstone's engagement by the Committee. To the extent Capstone discovers any additional facts bearing upon matters described herein or its engagement by the Committee during the period of its employment, Capstone will supplement the information contained in the Application and the Borow Affidavit.

## NOTICE

27. This Application has been served on (i) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2313, Lockbox 35, Wilmington, Delaware 19801 Attn.: Thomas Tinker, Esq.; (ii) the Debtors, Nortel Networks Inc., 195 The West Mall, Toronto, ON, M9C 5K1, Attn: Gordon A. Davis; (iii) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn.: James L. Bromley, Esq.; (iv) counsel to the Debtors, Morris, Nichols, Arsht &Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE, 19899-1347, Attn.: Derek C. Abbott, Esq.; and (v) all parties requesting notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Committee respectfully requests that no further notice is necessary.

28. No prior application for the relief requested herein has been presented to this or any other court.

WHEREFORE, the Committee requests that this Court enter the Order in the form annexed hereto as Exhibit C (i) authorizing the Committee to employ and retain Capstone as financial advisor in connection with these Chapter 11 Cases, *nunc pro tunc* to January 26, 2009, (ii) authorizing the payment and reimbursement of Capstone's fees and disbursements, subject to interim and final allowance thereof in accordance with sections 330 and 331 of the Bankruptcy Code or as otherwise ordered by the Court, and (iii) providing the Committee such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       February 13, 2009

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC, ET AL.

**FLEXTRONICS CORPORATION,**
solely in its capacity as Chair of the Committee, and not in its individual capacity,[3]

Name: Terry Zale
Title: Vice President, Corporate Finance

---

[3] Except as otherwise provided in this Application, I have made the statements herein on information and belief and in reliance on statements made to me by the Committee and its professionals.