# Exhibit A

## Capstone Engagement Letter



Capstone Advisory Group, LLC
1065 Avenue of the Americas – Suite 1801
New York, NY 10018

212-782-1400 telephone
212-782-1478 facsimile
www.capstoneag.com

Effective January 26, 2009

Mr. Terry Zale
Vice President, Corporate Finance
Flextronics Corporation
305 Interlocken Parkway
Broomfield, Colorado 80021

Re: Nortel Networks Inc., et al.

**Dear** Mr. Zale:

This letter agreement (the "Agreement") confirms the engagement of Capstone Advisory Group, LLC ("Capstone") by the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al. (the "Debtors") to provide consulting services with respect to the Chapter 11 reorganization cases (collectively, the "Chapter 11 Cases") of the Debtors before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") during the term of this Agreement. We understand that this engagement is subject to Bankruptcy Court approval; accordingly, this agreement is null and void in the event that Court approval is not obtained.

In connection therewith, you have requested us to provide the following professional services:

1. advise and assist the Committee in its analysis and monitoring of the Debtors' historical, current and projected financial affairs, including without limitation, schedules of assets and liabilities, statement of financial affairs, periodic operating reports, analyses of cash receipts and disbursements, analyses of cash flow forecasts, analyses of intercompany transactions, analyses of trust accounting, analyses of various asset and liability accounts, analyses of cost-reduction programs, analyses of any unusual or significant transactions between the Debtors and any other entities, and analyses of proposed restructuring transactions;

2. analyze the Debtors' Operative Business Plan, including forecasted operating statements, balance sheets, cash flows and the related underlying assumptions and support thereto;

**CAPSTONE**
ADVISORY GROUP, LLC

3. develop a monthly monitoring report to enable the Committee to effectively evaluate the Debtors' performance on an ongoing basis;

4. monitor and analyze the Debtors' cash position, liquidity, intercompany charges, and financial results versus forecast and budget;

5. assist and advise the Committee and counsel in reviewing and evaluating any court motions, applications or other forms of relief filed or to be filed by the Debtors, Canadian Debtors or any other parties-in-interest;

6. analyze any intercompany charge financing arrangements;

7. monitor Debtors' claims management process, analyze claims, analyze guarantees, and summarize claims by entity;

8. analyze the impact of the bankruptcy filing on strategic alliances and long-term supply agreements;

9. analyze any proposed critical vendor arrangements, current status of trade support and monitor any subsequent changes in amounts and terms of credit extension;

10. advise and assist the Committee in identifying and/or reviewing preference payments, fraudulent conveyances and other causes of action that the Debtors' estates may hold against third parties;

11. analyze the Debtors' assets and analyze possible recovery to the various creditor constituencies under various scenarios;

12. analyze alternative reorganization scenarios;

13. assist and advise the Committee in evaluating and analyzing restructuring proposals of the Debtors and assist counsel and the Committee in developing negotiation strategies to support the Committee's position;

14. advise and assist the Committee in its assessment of proposed bonus, incentive and retention plans;

15. advise and assist the Committee in reviewing any proposed sales or acquisitions of assets or business units as to the impact on remaining business units;

16. advise and assist the Committee in its review of intercompany transactions between the Debtors' and non-debtor subsidiaries and affiliates;

**CAPSTONE**
ADVISORY GROUP, LLC

17. render expert testimony as requested from time to time by the Committee and counsel, regarding the feasibility of a plan of reorganization and other matters;

18. attend Committee meetings and court hearings as may be required in the role of advisors to the Committee; and

19. provide other services that are consistent with the Committee's role and duties as may be requested from time to time.

In addition to these specific services, we understand that we may be requested to participate, at your request and to the extent appropriate, in meetings and discussions with the Committee, the Debtors, and the other parties-in-interest and with their respective professionals.

We will submit our evaluations and analyses pursuant to this engagement in periodic oral or written reports. Before submitting our reports to you, it may be necessary and appropriate for us to review certain information with management or the advisors of the Debtors for accuracy and validity. Written reports will not be given to the Debtors without your prior approval.

In order for us to perform our services, it will be necessary for our personnel to have access to certain books, records and reports of the Debtors, and have discussions with their personnel. Accordingly, we assume that the Debtors have agreed to cooperate with our personnel, and to make available their personnel and any books, records and other sources from which data can be obtained.

We will perform our services in a manner which, we believe, will permit the business operations of the Debtors to proceed in an orderly manner, subject to the requirements of this engagement; our personnel may need to be on site to review data located at the offices of the Debtors and to discuss matters with their personnel.

Our reports will encompass only matters that come to our attention in the course of our work that we perceive to be significant in relation to the objectives of our engagement. Because of the time and scope limitations implicit in our engagement and the related limitations on the depth of our analyses and the extent of our verification of information, we may not discover all such matters or perceive their significance. Accordingly, we will be unable to and will not provide assurances in our reports concerning the integrity of the information used in our analyses and on which our findings and advice to you may be based. We understand that we are not being requested to perform an audit nor apply generally accepted auditing standards or procedures. We understand that we are entitled, in general, to rely on the accuracy and validity of the data disclosed to us or supplied to us by employees and representatives of the Debtors. We will not, nor are we under any obligation to; update data submitted to us or review any other areas unless you specifically request us to do so.

3

**CAPSTONE**
ADVISORY GROUP, LLC

Our work will be performed on a "level-of-effort" basis; that is, the circumstances of our engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period.

We understand that the Committee has agreed to treat any information received from Capstone, whether orally or in writing, with the utmost confidentially and, except as provided in this letter, will not publish, distribute or disclose in any matter any information developed by or received from us without our prior or written approval. Such approval shall not be unreasonably withheld. Our approval is not needed if (a) the information sought is required to be disclosed by an order binding on the Committee, Akin, Gump, Strauss, Hauer & Feld LLP, as counsel to the Committee, or Capstone, issued by a court having competent jurisdiction over Capstone (unless such order specifies that the information to be disclosed is to be placed under seal) (b) such information is otherwise publicly available, or (c) such information is shared with you by the Debtors.

We agree that all information, not publicly available, which is received by us from you or the Debtors in connection with this engagement, will be treated confidentially by Capstone, except as required by process of law or as authorized by you.

Our fees will be based on the actual hours charged at our standard hourly rates, which are in effect when the services are rendered; our rates are revised annually on or around January 1. We will also seek reimbursement for our reasonable out-of-pocket expenses including, but not limited to, costs of reproduction, typing, research, communications, computer usage, our legal counsel, and other direct expenses incurred in connection with Capstone providing professional services to the Committee. Our current hourly rates are as follows:

| | |
|---|---|
| Executive Director | $550 - $795 |
| Staff | $250 - $625 |
| Support Staff | $110 - $170 |

We will submit to the Bankruptcy Court monthly fee applications for all services rendered and expenses incurred during the prior month, as well as interim and final fee applications. It is our understanding that all invoices will be paid by the Debtors, subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the local rules of the Court with jurisdiction, and pursuant to any additional procedures that may be established by the Bankruptcy Court specific for this matter. We acknowledge that neither the Committee nor any of its individual members shall have any obligation to pay our fees.

We confirm that no member of Capstone has any financial interest or business connection with the Debtors and, as more fully described in Mr. Borow's affidavit in support of Capstone's

4

**CAPSTONE**
ADVISORY GROUP, LLC

retention by the Committee, we are aware of no matter that would constitute a conflict in connection with this engagement.

In connection with our engagement to provide consulting services to the Committee, the Debtors agree to indemnify and hold harmless Capstone against any and all loses, claims, damages, liabilities, penalties, judgments, awards, costs, fees, expenses and disbursements including, without limitation, the defending any action, suit, proceedings or investigation (whether or not in connection with a proceeding or litigation in which Capstone is a party), directly or indirectly, caused by, related to, based upon, arising out of or in connection with the engagement of Capstone or any services rendered pursuant to such engagement, unless there is a final non-appealable order of a court of competent jurisdiction, finding Capstone directly liable for gross negligence or willful misconduct. The foregoing indemnification obligations of the Debtors shall survive any termination of this Agreement. These indemnification provisions extend to the members and employees of Capstone. All requests for payment of indemnity provided herein shall be made by means of an application and review of the Bankruptcy Court in accordance with an order of the Bankruptcy Court approving the Committee's engagement of Capstone. We acknowledge that neither the Committee nor any of its individual members shall have any liability hereunder for the indemnification in favor of Capstone by the Debtors.

Notwithstanding anything to the contrary contained herein, Capstone shall have the right to disclose its retention and/or the successful completion of its services hereunder in advertisement describing its services placed, at its own expense, in financial and other newspapers or otherwise.

It is understood that if any of the employees of Capstone are required to testify at any administrative or judicial proceedings relating to this matter, we will seek to be compensated at our regular hourly rates, in effect at the time, and reimbursed for reasonable out-of-pocket expenses (including counsel fees). We acknowledge that neither the Committee nor any of its individual members shall have any obligation to pay such compensation or make such reimbursement

This Agreement (a) constitutes the entire agreement of the parties with respect to the subject matter hereof and supersedes any other communications, understandings or agreements (both written and oral) among the parties with respect to the subject matter hereof, and (b) may be modified, amended or supplemented only by written agreement among all the parties hereto.

It is our intention to work closely with you and to discuss our engagement regularly. This should facilitate our progress and serve to confirm or modify the scope of our engagement on an ongoing basis.


# CAPSTONE
ADVISORY GROUP, LLC

We look forward to working with you on this matter. Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions herein. If you have any questions, please call Jay Borow or Chris Kearns at 212-782-1411 or 212-782-1409, respectively.

Respectfully submitted,

*Capstone Advisory Group, LLC*
Capstone Advisory Group, LLC

*Jay Borow*
*A Member of the Firm*

Agreed by:
The Official Committee of Unsecured Creditors
of Nortel Networks Inc., et al.
by its Chair, Flextronics Corporation


By:  _____
     Terry Zale

6

# CAPSTONE
ADVISORY GROUP, LLC

We look forward to working with you on this matter. Please sign and return a copy of this engagement letter signifying your agreement with the terms and provisions herein. If you have any questions, please call Jay Borow or Chris Kearns at 212-782-1411 or 212-782-1409, respectively.

Respectfully submitted,

Capstone Advisory Group, LLC

Agreed by:
The Official Committee of Unsecured Creditors
of Nortel Networks Inc., et al.
by its Chair, Flextronics Corporation, solely in its
capacity as Chair and not in its individual capacity

By: _____
Terry Zale
Vice President, Corporate Finance