## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------X

In re:                     :     Chapter 11

NORTEL NETWORKS INC., et al.,[1]  :     Case No. 09-10138 (KG)

:     Jointly Administered

Debtors.         :

:     **Local Rule Waiver Requested**

:     **Objection Deadline: February 26, 2009 at 4:00 p.m.**

---------------------------------------------------X   **Hearing Date: March 5, 2009 at 10:00 a.m.**

**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER APPROVING THE RETENTION OF JEFFERIES & COMPANY, INC. AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 328(a) AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 2014(a) AND REQUEST FOR WAIVER OF CERTAIN REQUIREMENTS UNDER DEL. BANKR. LR 2016-2(d) AND 2016-2(h)**

The duly-appointed official committee of unsecured creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby applies (the "Application") for an order under 11 U.S.C. §§ 328(a) and 1103, and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the employment and retention of Jefferies & Company, Inc. ("Jefferies"), as investment banker to the Committee to perform specified services in connection with the above-captioned chapter 11 cases effective as of February 1, 2009, and requesting a waiver of certain requirements pursuant

---

[1] The Debtors in these Chapter 11 cases are: Nortel Networks Inc., Nortel Networks Capital Corporation , Alteon WebSystems, Inc., Alteon WebSystems International, Inc., Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc..

to Local Rule 2016-2(d). In support of the Application, the Committee relies upon and incorporates by reference the Affidavit of Michael Henkin (the "Henkin Affidavit"), a copy of which is attached hereto, as Exhibit A. In further support of the Application, the Committee respectfully represents as follows:

## BACKGROUND

1.    On January 14, 2009, the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to manage their property and operate their business as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409. No trustee or examiner has been appointed in this case.

2.    The statutory predicates for the relief sought herein are sections 328(a) and 1103 of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Rule 2016-2.

3.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") filed its Amended Appointment of Official Committee of Unsecured Creditors (Docket No. 142) appointing the following members of the Committee: The Bank of New York Mellon, as indenture trustee, Pension Benefit Guaranty Corp., Airvana, Inc., and Flextronics Corporation (Chairperson). Thereafter, at a meeting of the Committee held on January 26, 2009, the Committee voted, subject to this Court's approval, to retain Jefferies as its investment banker in this matter.

## RELIEF REQUESTED

4.    By this Application, the Committee requests that the Court enter an order pursuant to sections 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, authorizing it to retain and employ Jefferies as its investment banker, pursuant to the terms of the

Jefferies engagement as set forth in the letter agreement dated as of February 1, 2009, attached hereto as Exhibit B (the "Jefferies Engagement Letter").

## BASIS TO RETAIN JEFFERIES AS INVESTMENT BANKERS

### Jefferies' Qualifications

5.    The Committee respectfully submits that the services of an investment banker are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties.  The Committee selected Jefferies because of its global expertise in providing investment banking services to debtors and creditors in restructurings and distressed situations.

6.    Jefferies is an investment banking firm with its principal office located at 520 Madison Avenue, New York, New York 10022.  Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission, and is a member of the Boston Stock Exchange, the International Stock Exchange, the Financial Industry Regulatory Authority, the Pacific Stock Exchange, the Philadelphia Stock Exchange, and the Securities Investor Protection Corporation.  Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group, Inc. ("Jefferies Group"), which is a public company.  Together with its subsidiaries, Jefferies Group has gross assets of nearly $20 billion and approximately 2,200 employees in more than 20 offices around the world.

7.    Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to:   (i) general financial advice, (ii) mergers, acquisitions, and divestitures, (iii) special committee assignments, (iv) capital raising, and (v) corporate restructurings.

8.    Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11

3

proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies, and purchasers in many reorganizations. Since 2001, Jefferies has been involved in over 160 restructurings representing over $175 billion in restructured liabilities.

9.      Jefferies has extensive experience in reorganization cases and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States. Representative cases include:  In re Circuit City Stores Inc; In re Quebecor World (USA) Inc.; In re AmeriServe Food Distribution, Inc.; In re Ames Department Stores, Inc.; In re Bally Total Fitness of Greater New York, Inc.; In re Diamond Brands Operating Corp.; In re Federal Mogul Corporation; In re Heartland Wireless Communications; In re Delphi Corporation, et al.; In re Foamex International Inc.; In re International Wireless Communications. Inc., et. al.; In re Kaiser Group International. Inc.; In re Amerco, Inc.; In re Budget Group, Inc.; In re Exide Technologies Inc.; In re Formica Corp.; In re Atkins Nutritionals, Inc.; In re WXH Corp.; In re XO Communications Inc.; and In re VF Brands International.

**The Engagement**

10.      On January 26, 2009, the Committee selected Jefferies as its investment banker for the purpose of assisting and advising the Committee with respect to any potential strategy for restructuring the Debtors' outstanding indebtedness, labor costs or capital structure, whether pursuant to a plan or reorganization, M&A Transaction or a sale of assets pursuant to section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring").

11.    In its capacity as the Committee's investment banker, Jefferies is prepared to provide certain post-petition services including, without limitation, the following:

(a)      become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Debtors;

4

    (b)    provide a valuation analyses of the Company if requested, the form of which will be agreed upon by Jefferies and the Company, and provide expert testimony relating to any such valuation;

    (c)    advise the Committee on the current state of the restructuring and capital markets;

    (c)    assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring, amending, redeeming or otherwise adjusting the Debtors' outstanding indebtedness or overall capital structure, whether pursuant to a plan of reorganization, any sale under section 363 of chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), a liquidation, or otherwise (the "Restructuring"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring;

    (d)    assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization;

    (e)    assist and advise the Committee in evaluating potential financing transactions by the Debtors;

    (f)    assist and advise the Committee on tactics and strategies for negotiating with other stakeholders;

    (g)    attend meetings of the Committee with respect to matters on which we have been engaged to advise the Committee;

    (h)    provide testimony, as necessary and as agreed upon between Jefferies and the Committee, with respect to matters on which we have been engaged to advise the Committee in any proceeding before the Bankruptcy Court; and

    (i)    render such other advisory services as may from time to time be agreed upon by the Committee and Jefferies, including, but not limited to, providing expert testimony, and other expert support related to any threatened, expected, or initiated litigation.

    12.    In order to perform these services in a cost-effective manner, Jefferies has represented to the Committee that it will endeavor to coordinate all its services to the Committee with the Committee's other professionals, including Capstone Advisory Group, LLC ("Capstone"), the Committee's accounting and financial advisors, retained in these cases so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services and lessen any

potential burden on the Debtors and their professional advisors. Representatives of Jefferies have met with the representatives of Capstone and worked out an appropriate and efficient division of responsibilities between the firms.

## Disclosures Concerning Conflicts of Interest[2]

13.    To check and clear potential conflicts of interest in these cases, Jefferies has researched its client database to determine whether Jefferies had any connection with, among others, the following entities:

a)    The Debtors and their affiliates;

b)    The Debtors' shareholder;

c)    The Debtors' former and current officers and directors;

d)    The Debtors' professionals;

e)    The Debtors' financing providers;

f)    The Debtors' vendors;

g)    The Debtors' litigants;

h)    The Debtors' banks and money market funds;

i)    The Debtors' significant customers;

j)    The Debtors' landlords;

k)    The Debtors' insurers;

l)    Counterparties' to Debtors' Significant Contracts;

m)    The Debtors' Bondholders and Trustees;

n)    The Debtors' Proposed Professionals;

o)    The Debtors' major competitors;

p)    The Debtors' utilities;

---

[2] The Committee's knowledge, information and belief regarding the matters set forth herein are based on and rely upon the Henkin Affidavit.

q)    Members of the Committee and Proposed Professionals;

r)    The indenture trustee;

s)    Other general unsecured creditors on the top 40 consolidated creditor list;

t)    The United States Bankruptcy Judges for the District of Delaware;

u)    The U.S. Trustee;

v)    Parties filing a notice of appearance; and

w)    Ernst and Young, Inc.

14.    To the best of the Committee's knowledge, the principals and professionals of Jefferies do not have any connection with the Debtors, their creditors, or any other party in interest, except as set forth in the Henkin Affidavit. From time to time, Jefferies has provided investment banking, financial advisory and/or consulting services to certain creditors and other parties in interest in matters wholly unrelated to these cases. Jefferies has informed the Committee that, during its retention by the Committee in these cases, it will not provide services to any entity having an adverse interest, including, without limitation, those listed in the Henkin Affidavit, in connection with any matters relating to these cases. However, given its diverse practice and client base, Jefferies may provide services to clients in matters unrelated to these chapter 11 cases, who are or become creditors of the Debtors or who may have interests adverse to the Debtors' creditors in unrelated matters.

15.    Jefferies Group is a global investment banking firm with broad activities covering trading in equities, convertible securities and corporate bonds in addition to its investment banking and financial advisory practice. With more than 80,000 customer accounts around the world, it is possible that one of its clients or a counter-party to a security transaction may hold a claim or otherwise is a party-in-interest in these chapter 11 cases. Furthermore, as a

major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, Jefferies regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counter-parties may be creditors of the Debtors. Jefferies believes none of these business relationships constitute interests materially adverse to the Committee herein with respect to matters upon which Jefferies is to be employed, and none are in connection with these cases. As further explained in the Henkin Affidavit, Jefferies has informed the Committee that, during its engagement in these cases, it will not trade in any securities of the Debtors for or on its own account, and any such trading on account of Jefferies' customers will be conducted only at clients' direction, with Jefferies acting solely as such clients' agent.

### Fee Application and Compensation

16.     As set forth in the Jefferies Engagement Letter, subject to Court approval, Jefferies is entitled to receive from the Debtors' estates, as compensation for its services in these cases the following compensation (the "Fee Structure"):

> a. a monthly fee (the "Monthly Fee") equal to USD$250,000 per month for the first four months of this Agreement and $200,000 per month thereafter until the expiration or termination of this Agreement. The first Monthly Fee shall accrue from the date of Jefferies' appointment and shall be payable upon the execution of this Agreement, and each subsequent Monthly Fee shall be payable in advance on the first day of each month thereafter. Fifty percent (50%) of any Monthly Fees actually paid to Jefferies in excess of $2.60 million shall be credited against the Transaction Fee (as defined below) payable to Jefferies.

> b. in addition, in consideration of the services rendered by Jefferies hereunder as investment banker to the Committee, the Debtors and their estates shall pay or cause to be paid to Jefferies a fee (the "Transaction Fee") equal to the sum of $2.90 million, which shall be earned in full upon (i) substantial consummation of a chapter 11 plan of reorganization, liquidation or otherwise (the "Plan") in these Cases, or (ii) sale of substantially all of the assets of the Debtors pursuant to section 363 of the Bankruptcy Code (the

"363 Sale"), in each case that is supported by the Committee. The Transaction Fee shall be deemed earned and shall be paid on the effective date of any Plan (provided that, at the time of confirmation, the plan is not subject to a material objection to confirmability by the Committee, which is neither settled nor withdrawn, that is ultimately overruled by the Court) or upon the closing of a 363 Sale.

c.  If the Debtors consummate a sale or other disposition, through a transaction or series of transactions, of all or substantially all of the assets of Metro Ethernet, Enterprise or Carrier Network (each a "Business Unit"), Jefferies shall be deemed to earn 33.33% of the Transaction Fee upon the closing of any such transaction with respect to each Business Unit (each such fee, a "Partial Transaction Fee"). Any Partial Transaction Fee shall be paid upon the earlier of (i) the effective date of any plan of reorganization, (ii) the closing of any sale or other disposition of substantially all of the assets of the Debtors or (iii) the dismissal of the Cases or conversion to Cases under chapter 7 of the Bankruptcy Code. Any Partial Transaction Fee shall be credited against the Transaction Fee, if ultimately payable pursuant to this Agreement.

d.  Jefferies acknowledges and agrees that all obligations herein to pay a Monthly Fee, Transaction Fee, Partial Transaction Fee and expenses are exclusively obligations of the Debtors.    Such obligations shall survive confirmation of a plan or dismissal or conversion of the Cases and shall be binding on (i) any plan trustee or plan administrator (ii) a chapter 7 or chapter 11 trustee or (iii) any other successor in interest to the Debtors.

17.    In addition to any fees that may be paid to Jefferies, whether or not any Restructuring occurs, the Debtors shall reimburse Jefferies, promptly upon receipt of an invoice therefore, for all court approved out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

18.    The Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a

contingency amount which are tied to the consummation of the services to be performed as contemplated in the Jefferies Engagement Letter.

19.     The Committee acknowledges and agrees that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Jefferies and its professionals hereunder, and in light of the fact that such commitment may foreclose other opportunities for Jefferies and that the actual time and commitment required of Jefferies and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

20.     Except as otherwise provided herein, Jefferies intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the United States Trustee for and the Local Rules and orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

21.     Jefferies has indicated to the Committee that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these chapter 11 cases will, keep time records in one-hour increments describing their daily activities and the identity of persons who performed such tasks. Also, Jefferies will supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep the records in the same manner. In addition, apart from the time

recording practices described above, Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. The Committee has been advised that to have Jefferies recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record its time as prescribed by the Local Rules would be, in each case, unduly burdensome and time-consuming. As such, the Committee submits that the detailed time descriptions that Jefferies' restructuring personnel will provide should be sufficient for any review of the time entries in connection with a subsequent application for compensation.

### The Indemnity

22.    As set forth more fully in the Jefferies Engagement Letter, the Debtors and their estates are to indemnify and hold harmless Jefferies, its agents, principals and employees for all claims, damages, liabilities and expenses to which such parties may have been subject to as a result of their involvement with providing investment banking services, except to the extent that such claims, damages, liabilities and expenses resulted, in whole or in part, from gross negligence or willful misconduct.

23.    As set forth the Jefferies Engagement Letter, the Committee believes that the Debtors and their estates should provide Jefferies and the other Indemnified Persons (as that term is defined therein) with an indemnity. The Committee has requested that the indemnification provisions of the Jefferies Engagement Letter be modified to reflect, in substantially the same form, indemnification provisions negotiated with, or otherwise agreeable to, the United States Trustee and approved by the Courts including in the following cases heard in this Circuit: United Artists Theatre Co. v. Walton, 315 F.3d 217 (3d Cir. 2003); In re AmeriServe Food Distribution, Inc., Case No. 00-0358 (PJW) (Bank. D. Del. May 9, 2000) and In re Planet Hollywood International Inc., Case No. 99-3612 (JJF) (Bankr. Del. Dec. 17, 1999).

11

Jefferies having so agreed, the Committee and Jefferies seek approval of the indemnification provisions in the Jefferies Engagement Letter, subject to the following:

a.  all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Jefferies Engagement Letter shall be made by means of an interim or final fee application and shall be subject to review by the Court to ensure that such payment conforms to the terms of the Jefferies Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Court, and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, subject to the condition that in no event shall an Indemnified Person be indemnified or receive contribution in the case of bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;

b.  in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Jefferies Engagement Letter if the Debtors, their estates, or the Committee assert a claim for, and the Court determines by final order that such claim arose out of, gross negligence, or willful misconduct on the part of that or any other Indemnified Person; and

c.  in the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Jefferies Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Jefferies' own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code.

The indemnity set forth in full in the Jefferies Engagement Letter is hereinafter referred to as the "Indemnity."

24.    The Indemnity is a reasonable term and condition of the Jefferies engagement. See In re Busy Beaver Building Ctrs., Inc., 19 F.3d 833, 848-849 (3rd Cir. 1994). While there are no standards of reasonableness in terms of retentions in bankruptcy, courts focus

on who provides the services and the cost of comparable services in a non-bankruptcy context. See id. Unlike the market for other professionals that a creditors' committee may retain, indemnification is a standard term of the market for investment bankers and financial advisors. In fact, the Indemnity is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

25. The retention of Jefferies as investment banker to the Committee is necessary and in the best interest of the Debtors' estates. The Committee respectfully submits that the terms of the proposed retention are reasonable and based on the customary compensation charged by Jefferies and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and have been approved and implemented in not just this jurisdiction but also in chapter 11 cases elsewhere. Indeed, the entire engagement as set forth in the Jefferies Engagement Letter (as modified herein) is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of Jefferies' experience in reorganizations and the scope of work to be performed pursuant to its retention. In particular, the Committee believes that the proposed fee structure creates a proper balance between fixed Monthly Fees and the Transaction Fee based on the success of the Restructuring. Accordingly, the Committee respectfully submits that the terms of the proposed engagement of Jefferies including, without limitation, the Fee Structure and the Indemnity should be approved.

## NOTICE

26.    Notice of this Application has been provided has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Debtors; and (iii) those parties requesting notice pursuant to Bankruptcy Rule 2002, in accordance with Local Rule 2002-1(b). Notice of

13

this Application and any order entered hereon will be served in accordance with Local Rule 9013. In light of the nature of the relief requested herein, the Committee submit that no other or further notice is necessary.

## NO PREVIOUS RELIEF REQUESTED

27.    No application for the relief requested herein has been made by the Committee to this or any other court.

WHEREFORE, the Committee respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit C (i) approving, under sections 328(a) and 1103 of the Bankruptcy Code and Local Rules 2016-2(d) and 2016-2(h) the employment of Jefferies pursuant to the terms of the Jefferies Engagement Letter to perform the services described herein, (ii) setting a final hearing date and (iii) granting the Committee such other and further relief as is just.

Dated: New York, New York
      February 13, 2009

                **THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF NORTEL NETWORKS INC., ET AL.**

                By:  Flextronics Corporation, solely in its
                     capacity as Chair of the Committee and not in its
                     individual capacity, [3]

                     By: _____
                     Name: Terry Zale
                     Title: Vice President, Corporate Finance

---

[3] Except as otherwise provided in this Application, I have made the statements herein on information and belief and in reliance on statements made to me by the Committee and its professionals.