IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                            :

*In re*                                :              Chapter 11
                                :              Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]       :              Jointly Administered
                                :

                  Debtors     :     **Objection Deadline: February 26, 2009 at 4:00 p.m.**
                                :     **Hearing Date: March 5, 2009 at 10:00 a.m.**
-------------------------------------------------------X

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 105(a), 1102(b)(3)(A) AND 1103(c) FOR ENTRY OF AN ORDER CLARIFYING ITS REQUIREMENT TO PROVIDE ACCESS TO INFORMATION UNDER 11 U.S.C. § 1102(b)(3)(A)

The Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks

Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors"), by and

through its undersigned proposed co-counsel, Akin Gump Strauss Hauer & Feld LLP and

Richards, Layton & Finger, P.A., hereby files this motion (the "Motion"), pursuant to sections

105(a), 1102(b)(3)(A) and 1103(c) of title 11 of the United States Code (the "Bankruptcy Code")

for entry of an order (the "Order"), clarifying the Committee's requirement to provide access to

information for the Debtors' unsecured creditors under Bankruptcy Code section 1102(b)(3)(A).

In support of this Motion, the Committee respectfully represents as follows:

---

[1]  The Debtors in these chapter 11 cases include: Nortel Networks Inc.; Nortel Networks Capital Corporation; Alteon Websystems, Inc.; Alteon Websystems International, Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; Coretek, Inc.; Nortel Networks Applications Management Solutions, Inc.; Nortel Networks Optical Components, Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; and Nortel Networks Cable Solutions Inc.

## BACKGROUND

1.     On January 14, 2009, each of the Debtors filed a voluntary petition for relief in the United States Bankruptcy Court for the District of Delaware (the "Court") under chapter 11 of the Bankruptcy Code.  On January 15, 2009, the Court entered an order jointly administering these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

2.     On January 22, 2009, the United States Trustee for the District of Delaware appointed the Committee.  The Committee currently consists of four members.[2]

## JURISDICTION

3.     This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a), 1102 and 1103 of the Bankruptcy Code.

## RELIEF REQUESTED

4.     Pursuant to Bankruptcy Code section 1103(c), the Committee is authorized to, among other things, consult with the Debtors, investigate the Debtors, participate in the formulation of a plan, and perform such other services as are in the interests of those represented. See 11 U.S.C. § 1103(c).  In addition, as part of the Committee's duties, pursuant to Bankruptcy Code section 1102(b)(3)(A), the Committee is required to provide access to information for the creditors represented by the Committee. See 11 U.S.C. § 1102(b)(3)(A).

5.     By this Motion, the Committee seeks entry of the Order, *nunc pro tunc* to January 22, 2009 (the "Committee Formation Date"), clarifying and implementing an information protocol (the "Information Protocol") regarding the dissemination of information to the Debtors'

---

[2]  The Committee consists of the following entities: The Bank of New York Mellon, as Indenture Trustee; Flextronics Corporation (Chairperson); Airvana, Inc.; and Pension Benefit Guaranty Corporation.

unsecured creditors, which Information Protocol does not require the Committee to disseminate

confidential, proprietary, or non-public information concerning the Debtors or the Committee, or

any other information if the effect of such disclosure would constitute a waiver of any privilege

or confidentiality agreement between the Committee and the Debtors.  The relief requested

herein will help ensure that confidential, privileged, proprietary, and/or material non-public

information regarding the Debtors or the Committee will not be disseminated to the detriment of

the Debtors' estates or their unsecured creditors and will aid the Committee in performing its

statutory functions and duties.

## THE INFORMATION PROTOCOL

6.    The Committee proposes the Information Protocol in order to satisfy the

Committee's obligation to provide the Debtors' unsecured creditors with access to information

pursuant to Bankruptcy Code section 1102(b)(3)(A).  Pursuant to the Information Protocol, the

Committee has, among other things, agreed to:

      (a)      Establish and maintain an Internet-accessible website (the "Committee Website"), to be maintained by and through the Committee's proposed information agent, Kurtzman Carson Consultants LLC (the "Information Agent") or such other information agent as is approved by the Court, that provides, without limitation:

      (i)      a link or other form of access to the website maintained by the Debtors' claims, noticing and balloting agent at http://chapter11.eqipsystems.com/nortel, which shall include, among other things, the case docket and claims register;

      (ii)      highlights of significant events in the Debtors' chapter 11 cases (the "Chapter 11 Cases");

      (iii)      a calendar with upcoming significant events in the Chapter 11 Cases;

      (iv)      a general overview of the chapter 11 process;

      (v)      press releases (if any) issued by the Committee or the Debtors;

(vi)    a registration form for creditors to request "real-time" updates regarding the Chapter 11 Cases via electronic mail;

(vii)    a form to submit creditor questions, comments and requests for access to information;

(viii)    responses to creditor questions, comments, and requests for access to information; provided, that the Committee may privately provide such responses in the exercise of its reasonable discretion, including in light of the nature of the information request and the creditor's agreement to appropriate confidentiality and trading constraints;

(ix)    answers to frequently asked questions;

(x)    links to other relevant websites;

(xi)    the names and contact information for the Debtors' counsel and restructuring advisors; and

(xii)    the names and contact information for the Committee's counsel and financial advisors;

(b)    Distribute updates by and through the Information Agent regarding the Chapter 11 Cases via electronic mail for creditors that have registered for such service on the Committee Website; and

(c)    Establish and maintain a telephone number and electronic mail address by and through the Information Agent for creditors to submit questions and comments.

## BASIS FOR RELIEF REQUESTED

*BAPCPA and Bankruptcy Code Section 1102(b)(3)(A)*

7.    On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Act") was enacted into law. The majority of the provisions in the Act became effective on October 17, 2005.

8.    Bankruptcy Code section 1102 governs the appointment of statutory creditors' and equity security holders' committees. See 11 U.S.C. § 1102(a). Among the many amendments and additions made to the Bankruptcy Code through the Act, a new section (section

4

1102(b)(3)), was added to the Bankruptcy Code.  Bankruptcy Code section 1102(b)(3) provides, in pertinent part, as follows:

A committee appointed under subsection (a) shall –

(A)    provide access to information for creditors who –

(i)    hold claims of the kind represented by that committee; and

(ii)    are not appointed to the committee;

(B)    solicit and receive comments from the creditors described in subparagraph (A); and

(C)    be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

9.    When a statute is clear and unambiguous, "the sole function of the courts is to enforce it according to its terms."  U.S. v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).  However, in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters . . . the intention of the drafters, rather than the strict language, controls."  Id. at 242-43 (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564 (1982) (internal quotations omitted)).

10.    The Committee respectfully submits that Bankruptcy Code section 1102(b)(3)(A) is unclear and ambiguous.  The statute simply requires a committee "to provide access to information," yet sets forth no guidelines as to the type, kind and extent of the information to be provided.  In its extreme, Bankruptcy Code section 1102(b)(3)(A) could be read as requiring a statutory committee to provide access to *all* information provided to it by a debtor, or developed through exercise of its investigative function, regardless of whether the information is confidential, privileged, proprietary, or material non-public information and regardless of

whether disseminating such information implicates disclosure requirements of the securities laws. See 17 C.F.R. §§ 243.100 to 243.103 (2005).

11.    The legislative history does not provide any further guidance on this point and merely reiterates the language of Bankruptcy Code section 1102(b)(3). See H.R. Rep. No. 109-31, 109th Cong., 1st Sess. 87 (2005) ("Section 405(b) requires the committee to give creditors having claims of the kind represented by the committee access to information. In addition, the committee must solicit and receive comments for these creditors and, pursuant to court order, make additional reports and disclosures available to them.").

12.    Given the ability to share information through the Internet or otherwise, the drafters of section 1102(b)(3) likely intended this provision to mean that a statutory committee's constituency should have easier access to relevant public information about a debtor without the burden of retaining counsel to monitor the numerous proceedings within a bankruptcy case. Congress could not have intended for a statutory committee to be required to provide unfettered access to every type and kind of information that a statutory committee receives from a debtor. If this had been the intention, Bankruptcy Code section 1102(b)(3) would then frustrate numerous provisions of the Bankruptcy Code, including the plenary authority to obtain information and act in a fiduciary capacity pursuant to Bankruptcy Code section 1103(c).

13.    Absent relief of the kind sought herein, debtors will undoubtedly be concerned that information shared with the statutory committee for unsecured creditors may be shared with the public, including competitors and interested acquirors. Similarly, statutory committees will be concerned that the fruits of their own investigation may be disseminated to inappropriate parties. In turn, these concerns will impede a statutory committee's own efforts to obtain information, which will undermine such committee's ability to maximize its constituency's recoveries. Certainly, the drafters could not have intended Bankruptcy Code section 1102(b)(3)

to hinder a statutory committee's obligations under Bankruptcy Code section 1103(c). These statutes must be harmonized with the overall purposes of chapter 11.

*Creditors' Committee's Rights and Powers*

14.    Bankruptcy Code section 1103 sets forth the rights and powers of a statutory committee. See 11 U.S.C. § 1103. Those rights and powers include "consult[ing] with the … debtor in possession concerning the administration of the cases," 11 U.S.C. § 1103(c)(1), and "investigat[ing] the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1103(c)(2).

15.    In order to assist a statutory committee with faithfully performing its functions – which include evaluating a debtor's business plan and reorganization strategy – debtors will provide such committees with confidential, material non-public information, and will frequently provide such information in draft form. In that regard, debtors often condition the dissemination of such information on each committee member (and, in certain instances, committee professionals) agreeing to maintain such information in confidence.[3]

16.    Bankruptcy Code section 1102(b)(3)(A), however, provides no guidance on the extent to which a committee is obligated to provide confidential, proprietary, or material non-public information to its constituency. Indeed, sharing such information without limitations and in the absence of this Court's entry of the Order may be detrimental to the Debtors' businesses and their ability to maximize value. Providing unfettered access to such information undoubtedly will allow competitors of the Debtors to use such information – including any business plan of the Debtors, trade secrets or other proprietary information – to that competitor's

---

[3]  Typically, statutory committees have bylaws governing the conduct of their members, including the non-disclosure of confidential information concerning the debtors.

advantage and, more importantly, to the disadvantage of the Debtors and, thus, their unsecured creditors.

17.     One example of the issues implicated by a literal reading of section 1102(b)(3) of the Bankruptcy Code relates to sharing the Debtors' material contracts with the Committee. As is typical with companies in competitive industries, many of the Debtors' contracts contain confidentiality provisions. Thus, the Debtors may be contractually precluded from sharing such information with the Committee if the Committee is required to give unfettered access to such information to creditors at large, some of whom may be competitors of the counterparty to the contract and may be seeking such information for their own interests. Congress' broad brushstroke has produced a challenging landscape for debtors such as these, which are trying to stabilize their businesses and enhance the related value available to creditors.

18.     In addition, the delivery of unfettered access to information by the Committee to its constituents could impact the attorney-client and work product privileges between the Committee and its counsel or other agents. Cf. In re Baldwin-United Corp., D.H., 38 B.R. 802, 805 (Bankr. S.D. Ohio 1984) (creditors' committee entitled to protection of attorney-client privilege). This is particularly relevant given the Committee's crucial investigative powers and the possibility that the Committee will be gathering information relevant to potential causes of action.

### *Harmonizing Regulation FD*

19.     Importantly, with respect to public companies, the Securities and Exchange Commission ("SEC") has adopted Regulation Fair Disclosure ("Regulation FD"), which is a disclosure rule that addresses selective disclosure of material non-public information. See 17 C.F.R. §§ 243.100 to 243.103 (2005). The regulation provides that when an issuer, or person acting on behalf of such issuer, has disclosed material non-public information to certain persons,

such issuer must make public disclosure of that information.  Id. § 243.100(a).  Regulation FD

enumerates certain categories of persons to whom selective disclosure may not be made (i.e.,

certain securities market professionals and holders of the issuer's securities).  Id. at 243.100(b).

      20.     Regulation FD contains, however, an important exception that -- prior to the

enactment of section 1102(b)(3) -- likely exempted communications by debtor-issuers with

statutory committees without significant complication.  Specifically, Regulation FD provides:

> Paragraph (a) [public disclosure requirements] of this section shall not
> apply to a disclosure made:
>
> To a person who expressly agrees to maintain the disclosed information in
> confidence.

17 C.F.R. § 243.100(b)(2).

      21.     Thus, even if Regulation FD would not require the Debtors to make public

disclosures of information shared with the Committee (provided the Committee agreed to

maintain such information in confidence), Regulation FD may be triggered if such information

was required to be shared with unsecured creditors of the Debtors.  Unless clarified by this

Court, Bankruptcy Code section 1102(b)(3) has the potential to trigger Regulation FD when

material non-public information is disseminated to a limited group of persons -- the particular

creditor constituency (which would undoubtedly include one or more of the persons which

Regulation FD was intended to cover) -- without disseminating such information to the public

generally.

      22.     Any argument that this Court could impose a general materiality standard for

deciding what information can and cannot be shared is simply too vague a standard and would be

too hard to enforce.  Unlike with Regulation FD where the SEC has delineated the types and

kinds of information that it considers material, the Bankruptcy Code provides no guidance and,

certainly, the Debtors would hesitate to share, and the Committee would be concerned to receive,

information that they deem material if there is any room for creditors to take the position that it is not material. Under Regulation FD it would be the Debtors who would potentially incur liability under the securities laws (which would come at a price to be paid by the Committee's unsecured creditor constituency). For these reasons too, the Debtors are likely to be reluctant to share confidential, proprietary, or material non-public information with the Committee without assurances that such information would be kept confidential.

23.    Accordingly, the Committee respectfully requests that this Court clarify the requirements of Bankruptcy Code section 1102(b)(3) consistent with the terms of this Motion and the Order.

### Committee's Information Agent

24.    In order to assist the Committee in complying with the Information Protocol, the Committee also is filing an application to retain Kurtzman Carson Consultants LLC ("KCC") as the Committee's Information Agent.

25.    KCC is a company that specializes in, among other things, assisting creditors' committees in fulfilling their statutory obligations to a debtor's unsecured creditor body pursuant to section 1102 of the Bankruptcy Code. Subject to its retention being approved by this Court, KCC will create a Web-based system that is designed to provide a formatted, organized, and comprehensive system to provide access to information about these Chapter 11 Cases, consistent with the Information Protocol, to the Debtors' unsecured creditor body and, in fact, the entire world.

### The Court's Inherent Power

26.    Bankruptcy Code section 105(a) provides, in pertinent part, that the Court may "issue any order ... that is necessary or appropriate to carry out the provisions of this title." The

Committee believes that the relief requested herein is necessary for the Committee to fulfill its statutory functions and obligations as contemplated by Bankruptcy Code section 1103(c).

27.    The Committee submits that the relief requested herein is appropriate and well within the authority of this Court. As Bankruptcy Code section 1102(b)(3)(A) might otherwise have a substantial chilling effect on information that the Debtors may be willing to share with the Committee, or on the Committee's development of independent analyses, it cannot be seriously questioned that the relief requested herein is "necessary and appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a).

28.    Relief substantially similar to the relief requested herein has been approved previously in this District.  See, e.g., In re Tropicana Entertainment, LLC, 08-10856 (KJC) (Bankr. D. Del. July 10, 2008); In re Linens Holding Co., 08-10832 (CSS) (Bankr. D. Del. June 30, 2008); In re Fedders North America, Inc., 07-1176 (BLS) (Bankr. D. Del. Sept. 18, 2007); In re Dura Automotive Systems, Inc., 06-11202 (KJC) (Bankr. D. Del. Dec. 12, 2006); In re Three A's Holdings, 06-10886 (BLS) (Bankr. D. Del. Oct. 13, 2006); In re Radnor Holdings Corp., 06-10894 (PJW) (Bankr. D. Del. Sept. 19, 2006); In re Werner Holding Co. (DE), Inc., 06-10578 (KJC) (Bankr. D. Del. Aug. 8, 2006); In re J. L. French Automotive Castings, Inc., 06-10119 (MFW) (Bankr. D. Del. Apr. 24, 2006); In re Nellson Nutraceutical, Inc., 06-10072 (CSS) (Bankr. D. Del. Feb. 24, 2006); In re Nobex Corp., 05-20050 (MFW) (Bankr. D. Del. Feb. 10, 2006); In re FLYi, Inc., 05-20011 (MFW) (Bankr. D. Del. Nov. 15, 2005).

### NOTICE

29.    No trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Motion has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors; and (iii) all parties requesting notice pursuant to

Bankruptcy Rule 2002.  Based on the foregoing, the Committee respectfully submits that no further notice is needed.

## NO PRIOR REQUEST

30.    No previous request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Committee respectfully requests that the Court enter the

Order, annexed hereto as Exhibit A, and grant the Committee such other and further relief as the

Court deems just, proper and equitable.

Dated: February 13, 2009
Wilmington, Delaware

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Fred S, Hodara, Esq.
Ryan C. Jacobs, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Telephone:  (212) 872-1000
Facsimile:  (212) 872-1002

Proposed Counsel to the Official Committee
of Unsecured Creditors of Nortel Networks
Inc., et al.