**EXHIBIT C**

# LAZARD

LAZARD FRÈRES & CO. LLC
30 ROCKEFELLER PLAZA
NEW YORK, NY 10020
PHONE 212-632-6000
www.lazard.com

January 13, 2009

Nortel Networks Corporation
195 The West Mall
Toronto, Ontario, Canada
M9C 5K1

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms the understanding and agreement between Lazard Frères & Co. LLC ("Lazard") and Nortel Networks Corporation, a Canadian corporation, and its controlled subsidiaries, including without limitation Nortel Networks Inc., a Delaware corporation (individually and collectively, with any entity formed or used for the purposes set forth herein, the "Company").

## *Assignment Scope:*

1.   The Company hereby confirms its retention of Lazard as its strategic advisor and investment banker, on the terms and conditions set forth herein, in connection with any potential Restructuring, Sale Transaction, Financing or Other Transaction.[1]  Lazard acknowledges that the Company has also retained Credit Suisse Securities (USA) LLC ("Credit Suisse") as a financial advisor to provide services in relation to Sale Transactions in connection with the Company's insolvency proceedings under the *Companies' Creditors Arrangement Act* (Canada).   In providing services under this engagement, Lazard agrees to work cooperatively with Credit Suisse at the Company's reasonable request.

## *Description of Services:*

2.   Lazard agrees, in consideration of the compensation provided in Section 3 below, that it has performed and will perform such of the following investment banking services as the Company may reasonably request:

---

[1]         The term "Restructuring" shall mean, collectively, any restructuring, reorganization (whether or not pursuant to Canadian insolvency proceedings, United States bankruptcy proceedings or otherwise) and/or recapitalization of all or a material portion of the Company's outstanding indebtedness (including bank debt, bond debt, or other on or off balance sheet indebtedness), trade claims, leases (on or off balance sheet), litigation-related claims or obligations, unfunded pension liabilities, or other liabilities (collectively, the "Existing Obligations") that is achieved, without limitation, through a solicitation of waivers or consents from or vote of the holders of Existing Obligations (collectively, the "Stakeholders"); rescheduling of the maturities of Existing Obligations; a change in covenants or interest rates; repurchase, settlement or forgiveness of Existing Obligations; conversion of Existing Obligations into equity; an exchange offer involving the issuance of new securities in exchange for Existing Obligations; the issuance of new securities or debt; sale or disposition of debt; merger, joint venture or other business combination or sale or disposition of assets, equity securities or other interests (any such merger, joint venture, or other business combination or sale or disposition may also be referred to herein as a "Sale Transaction"); or other similar transaction or series of transactions.

The term "Financing" shall mean any transaction or series of transactions involving the public or private issuance, sale, or placement of equity, equity-linked, or debt securities, instruments, or obligations of the Company, including any debtor-in-possession financing or exit financing in connection with insolvency or bankruptcy proceedings.

The term "Other Transaction" shall mean any other transaction involving the Company, including without limitation any acquisition, directly or indirectly, of all or part of another company.

Notwithstanding anything to the contrary herein, it is expressly understood and agreed that Lazard's advice and assistance with respect to any potential counterparty in an Other Transaction shall be subject to Lazard's agreement to advise you with respect to such potential counterparty, and that Lazard may have relationships with and may advise potential counterparties or third parties in transactions involving potential counterparties.

PARIS     LONDON     NEW YORK     AMSTERDAM     ATLANTA     BEIJING     BORDEAUX     BOSTON     BRISBANE     CHICAGO     FRANKFURT
HAMBURG     HONG KONG     HOUSTON     LOS ANGELES     LYON     MADRID     MELBOURNE     MILAN     MINNEAPOLIS     MONTREAL     MUMBAI
ROME     SAN FRANCISCO     SÃO PAULO     SEOUL     SHANGHAI     SINGAPORE     STOCKHOLM     SYDNEY     TOKYO     TORONTO     ZURICH

LAZARD

(a)     Reviewing and analyzing, from a financial advisory perspective, the Company's business, capital structure and financial information, as well as the business and financial information of any Sale Transaction or Other Transaction counterparty;

(b)     Evaluating the Company's potential debt capacity in light of its projected cash flows;

(c)     Assisting in the determination of a capital structure for the Company;

(d)     Assisting in the valuation analysis of the Company and of any Sale Transaction or Other Transaction counterparty;

(e)     Advising the Company on tactics and strategies for negotiating with the Stakeholders;

(f)     Rendering financial advice to the Company and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with a Restructuring;

(g)     Advising the Company on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to a Restructuring;

(h)     Advising and assisting the Company in evaluating potential Financings by the Company, and, subject to Lazard's agreement to so act and, if requested by Lazard, to execution of appropriate agreements by the Company, contacting potential sources of capital as the Company may designate and assisting the Company in implementing such a Financing;

(i)     Assisting the Company in identifying and evaluating candidates for a potential Sale Transaction or Other Transaction;

(j)     Attending meetings of the Company's Board of Directors and its committees with respect to matters on which we have been engaged to advise you; and

(k)     Providing the Company with other general financial and restructuring advice.

*Fees:*

3.  In consideration of Lazard's services, the Company agrees to the following:

(a)     The Company shall pay Lazard a fee of US$250,000 for services provided pursuant to this engagement prior to the date hereof, payable upon the execution of this Agreement.

(b)     The Company shall pay Lazard a monthly fee (a "Monthly Fee") of US$250,000, payable upon the execution of this Agreement and in advance on the first day of each month thereafter (beginning February 1, 2009) until the earlier of the completion of the Restructuring or the termination of Lazard's engagement pursuant to Section 12. One-half of each Monthly Fee that becomes payable on or after July 1, 2009 and is paid thereafter shall be credited against any Restructuring/Breakup Fee payable hereunder.

(c)     The Company shall pay Lazard a fee (a "Restructuring/Breakup Fee") of US$15,000,000, payable upon the consummation or material completion of a Restructuring or a breakup of the Company pursuant to insolvency or bankruptcy proceedings (a "Breakup"). For the avoidance of doubt, it is understood that if the Company enters insolvency or bankruptcy proceedings, the Restructuring/Breakup Fee shall always become payable to Lazard at some point during those proceedings (except if, prior to the consummation or material completion of a Restructuring or Breakup, (i) Lazard terminates this Agreement or (ii) a receiver is appointed over and liquidates all or substantially all of the assets (as of the date hereof) of Nortel Networks Limited ("NNL") or NNL is declared a "bankrupt" under the Bankruptcy and Insolvency Act (Canada) (other than to facilitate a Restructuring or Breakup) and all or substantially all of the assets (as of the date hereof) of NNI (as defined below) are liquidated pursuant to Chapter 7 of the United States Bankruptcy Code).

(d)     The Company shall pay Lazard a fee (a "Financing Fee") equal to (A) 1% of the aggregate gross proceeds of any senior secured debt Financing and (B) 3% of the aggregate gross proceeds of any other Financing, payable upon the consummation of a Financing implemented during or in connection with any insolvency or bankruptcy proceedings.

(e)     The Company shall pay Lazard a fee (an "Other Transaction Fee") to be mutually agreed in good faith which will appropriately compensate us in light of the magnitude and complexity of the Other Transaction and the fees customarily paid to investment bankers of similar standing for similar transactions, payable upon the consummation of an Other Transaction (whether in connection with the consummation of a Restructuring or otherwise).

(f)     For the avoidance of doubt, in the event there are multiple Financings or Other Transactions, multiple Financing Fees and Other Transaction Fees shall become payable hereunder. Notwithstanding anything herein to the contrary, in the event of any insolvency or bankruptcy proceedings, the crediting of Monthly Fees described herein shall only apply if all fees hereunder are approved in their entirety by all applicable courts and/or other authorities (if any) and paid in their entirety.

LAZARD

Nortel Networks Corporation
January 13, 2009
Page 4

(g)     (A) In addition to any fees that may be payable to Lazard and, regardless of whether any transaction occurs, the Company shall promptly reimburse Lazard for all: (x) reasonable expenses (including travel and lodging, data processing and communications charges, courier services and other appropriate expenditures) and (y) other reasonable fees and expenses, including expenses of counsel, if any; and

(B) The Company shall provide Lazard with an expense retainer of US$75,000, payable upon the execution of this Agreement, to be applied by Lazard against the expenses that it has incurred to date and will incur going forward.

(h)     As part of the compensation payable to Lazard hereunder, the Company agrees that the indemnification letter dated as of March 29, 2005 (the "Indemnification Letter") between Nortel Networks Corporation ("NNC") and Lazard remains in full force and effect and shall also apply to our engagement hereunder (including services performed prior to, on or after the date of this Agreement); it being understood, for the avoidance of doubt, that (i) NNC and its controlled subsidiaries, including without limitation Nortel Networks Inc. ("NNI"), shall be jointly and severally liable for all the obligations pursuant to the Indemnification Letter as they relate to this engagement and (ii) the reference in the Indemnification Letter to advising and assisting NNC's counsel shall have no applicability with respect to this engagement. The Indemnification Letter shall survive any termination or expiration of this Agreement.

(i)     All amounts referenced hereunder reflect United States currency and shall be paid promptly in cash after such amounts accrue hereunder.

_Retention in Bankruptcy Proceedings:_

4.  In the event of the commencement of insolvency or bankruptcy proceedings (whether in Canada, the United States or both), the Company agrees that it will use its best efforts to obtain prompt authorization from all applicable courts and/or other authorities to retain Lazard on terms and conditions that are set forth in this Agreement and that are otherwise reasonable and customary for Lazard (including, if applicable, being retained under the provisions of Section 328(a) of the United States Bankruptcy Code in connection with any chapter 11 proceedings in the United States and having an appropriate security interest in the event of any Canadian proceedings). Subject to being so retained, Lazard agrees that, during the pendency of any such proceedings, it shall continue to perform its obligations under this Agreement. The Company shall supply Lazard with a draft of the application and other proposed retention documents sufficiently in advance of the filing of such application and proposed documents to enable Lazard and its counsel to review and comment thereon. Lazard shall be under no obligation to provide any services under this Agreement in the event that the Company enters into insolvency or bankruptcy proceedings (whether in Canada, the United States or both) unless Lazard's retention under the terms of this Agreement is approved by all applicable courts and/or other authorities in a manner that is acceptable to Lazard (including, if applicable, being retained

under the provisions of Section 328(a) of the United States Bankruptcy Code in connection with any chapter 11 proceedings in the United States and having an appropriate security interest in the event of any Canadian proceedings).

*Other:*

5.  The Company and Lazard agree that our engagement pursuant to the engagement letter between the Company and Lazard dated May 1, 2008 (the "May 2008 Engagement Letter) shall be deemed to have automatically terminated upon execution of this Agreement; provided, that any fees and expense reimbursement that is still payable pursuant to such engagement letter shall be paid upon execution of this Agreement (in addition to all other fees that become payable upon execution of this Agreement).

6.  For the avoidance of doubt, the parties hereto agree that no fees paid or payable to Lazard pursuant to the May 2008 Engagement Letter or any other engagement letters involving the parties shall be creditable against the fees payable pursuant to this Agreement, and no fees payable pursuant to this Agreement shall be creditable against any fees paid or payable pursuant to the May 2008 Engagement Letter or any other engagement letters.  Moreover, no fee payable to any other person, by you or any other company in connection with the subject matter of this engagement, shall reduce or otherwise affect any fee payable hereunder.

7.  The Company will furnish or cause to be furnished to Lazard such current and historical financial information and other information regarding the business of the Company as Lazard may request in connection with this engagement.  The Company represents and warrants to Lazard that all of the foregoing information will be accurate and complete at the time it is furnished in all material respects, and agrees to keep Lazard advised of all material developments affecting the Company or its financial position.  The Company also agrees to use all reasonable efforts to cause any relevant third parties (including potential counterparties) to provide us with such information concerning such third parties as we deem necessary for our financial review and analysis.  In performing its services pursuant to this Agreement, including in connection with any valuation analysis of the Company or any Sale Transaction or Other Transaction counterparty, Lazard shall be entitled to rely upon information furnished to it by the Company or third parties or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information.  Lazard will not, as part of its engagement, undertake any independent valuation or appraisal of any of the assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

8.  In performing its services pursuant to this Agreement, Lazard is not assuming any responsibility for the decision of the Company or any third party to pursue (or not to pursue) any business strategy or to effect (or not to effect) any Restructuring, Sale Transaction, Financing or Other Transaction.  Lazard shall not have any obligation or responsibility to provide "crisis management" for or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements; nor shall Lazard be responsible for providing any tax, legal or other specialist advice.

9. It is understood and agreed that nothing contained in this Agreement shall constitute an express or implied commitment by Lazard or Lazard Capital Markets LLC or any of their respective affiliates to underwrite, place or purchase any securities in a financing or otherwise, which commitment shall only be set forth in a separate underwriting, placement agency or purchase agreement, as applicable, relating to the financing, and this Agreement does not constitute any representation, warranty or agreement that any transaction will be available.

10. Lazard Frères & Co. LLC agrees that, during the term of this engagement, it will not advise, assist or provide financing to any party other than the Company in connection with any Restructuring, Sale Transaction or Financing without the prior written consent of the Company.

11. In order to coordinate our efforts on behalf of the Company during the period of our engagement hereunder, the Company will promptly inform Lazard of any discussions, negotiations, or inquiries regarding a potential transaction, including any such discussions or inquiries that have occurred during the six month period prior to the date of this Agreement. In the event that Lazard receives an inquiry concerning any transaction, we will promptly inform the Company of such inquiry.

12. Our engagement hereunder may be terminated by you or us at any time without liability or continuing obligation to you or us, except that (a) following any such termination or any expiration of this Agreement we shall remain entitled to any fees accrued pursuant to Section 3 but not yet paid prior to such termination or expiration, as the case may be, and to reimbursement of reasonable expenses incurred prior to such termination or expiration, as the case may be, and (b) in the case of termination by the Company or any expiration of this Agreement, we shall remain entitled to full payment of all fees contemplated by Section 3 hereof in respect of any Restructuring, Breakup, Financing or Other Transaction announced or resulting from negotiations occurring during the period up until one year following such termination or expiration, as the case may be (for the avoidance of doubt, it is understood that if the Company enters insolvency or bankruptcy proceedings while Lazard is engaged, this clause (b) shall always be deemed to apply in respect of the Restructuring or Breakup resulting from such insolvency or bankruptcy proceedings).

13. The Company agrees and acknowledges that NNC and its controlled subsidiaries, including without limitation NNI and all other entities incorporated, formed and/or operating in Canada and the United States, have engaged Lazard individually and collectively pursuant to this Agreement. The Company further agrees and acknowledges that Lazard has been engaged only by the Company and that the Company's engagement of Lazard is not deemed to be on behalf of and is not intended to confer rights upon any shareholder, partner or other owner of the Company, any creditor, lender or any other person not a party hereto as against Lazard or any of our affiliates or any of our respective directors, officers, members, agents, employees or controlling persons. Unless otherwise expressly agreed, no one, other than senior management or the Board of Directors of NNC is authorized to rely upon the Company's engagement of Lazard or any statements, advice, opinions or conduct by Lazard. Without limiting the foregoing and except as otherwise expressly agreed, any advice, written or oral, rendered to NNC's Board of Directors or management in the course of the Company's engagement of Lazard are solely for the purpose of assisting senior management or the Board of Directors of NNC, as the case may be, in evaluating any Restructuring, Sale Transaction, Financing or Other Transaction and does

not constitute a recommendation to any stakeholder of the Company that such stakeholder might or should take in connection with any Restructuring, Sale Transaction, Financing or Other Transaction. Any advice, written or oral, rendered by Lazard may not be disclosed publicly or made available to third parties without the prior written consent of Lazard. Notwithstanding the foregoing, nothing herein shall (i) prohibit you from disclosing to any and all persons the tax treatment and tax structure of any transaction and the portions of any materials that relate to such tax treatment or tax structure or (ii) prohibit you from disclosing information pursuant to any order or requirement of any court, administrative agency or regulatory authority or as required in any pending legal or administrative process as long as you give Lazard prior written notice regarding such disclosure and consult with Lazard (including incorporating Lazard's reasonable comments) with respect to such disclosure. Lazard's role herein is that of an independent contractor; nothing herein is intended to create or shall be construed as creating a fiduciary relationship between Lazard and the Company or any Board of Directors.

14. All sums payable by the Company under this Agreement or the Indemnification Letter shall be paid free and clear of all deductions or withholdings unless the deduction or withholding is required by law, in which event the Company shall pay such additional amount as shall be required to ensure that the net amount received by the payee will equal the full amount which would have been received by it had no such deduction or withholding been required to be made. All sums quoted hereunder are exclusive of any goods and services, value added or other tax, and the Company will pay to the relevant payee any additional goods and services, value added or other tax, if applicable, chargeable in respect of payments made pursuant to this Agreement or the Indemnification Letter or otherwise chargeable in respect of this engagement.

15. In connection with the services to be provided hereunder, Lazard may employ the services of its affiliates and Lazard Capital Markets LLC and may share with any such entity any information concerning the Company, provided that Lazard and such entities shall hold any non-public information confidential in accordance with their respective customary policies relating to nonpublic information. Any such entity so employed shall be entitled to all of the benefits afforded to Lazard hereunder and under the Indemnification Letter and shall be entitled to be reimbursed for its costs and expenses on the same basis as Lazard.

16. The provisions hereof shall inure to the benefits of and be binding upon the successors and assigns of the Company, Lazard and any other person entitled to indemnity under the Indemnification Letter. You agree that the Company's obligations pursuant to this Agreement shall be joint and several. This Agreement and the related Indemnification Letter embody the entire agreement and understanding among the parties hereto, and supersede any and all prior agreements, arrangements, and understandings, related to the matters provided for herein.

17. This Agreement and any claim related directly or indirectly to this Agreement (including any claim concerning advice provided pursuant to this Agreement) shall be governed by and construed in accordance with the laws of the State of New York without regard to the principle of conflicts of law. No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or the United States District Court for the Southern District of New York, and each of the parties hereby submits to the jurisdiction of such courts. The Company hereby waives on behalf

LAZARD

Nortel Networks Corporation
January 13, 2009
Page 8

of itself and its successors and assigns any and all right to argue that the choice of forum provision is or has become unreasonable in any legal proceeding. The Company waives all right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Lazard pursuant to, or the performance by Lazard of the services contemplated by, this Agreement.

*[Signature Page Follows]*

LAZARD

   If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

                                        Very truly yours,

                                        LAZARD FRERES & CO. LLC

                                        By: _____
                                            Frank A. Savage
                                            Managing Director

Accepted and Agreed to as of the date first written above.

NORTEL NETWORKS CORPORATION, on behalf of itself
and its controlled subsidiaries

By. _____
    Name:  P S BINNING
    Title:  CRO

By. _____
    Name:   Gordon A. Davies
    Title:  Chief Legal Officer
            and Corporate Secretary

NORTEL NETWORKS INC., on behalf of itself and its subsidiaries
and affiliates that are incorporated, formed and/or operating in United States

By. _____
    Name:  GORDON A DAVIES
    Title: ASST SECRETARY