# PURCHASE ORDER
## 4320059231

# N⊘RTEL

## Purchase Order

| Purchase Order No: 4320059231 | Order Date: 10/28/2008 |
|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 10/28/2008 | Page 1 of 5 |

| Supplier Contact: | Supplier No: 458533 |
|---|---|
| Martin Muturi | Contact No: 06-170 (9904) |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
William Parker
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Buyer: | Telephone No: 525520268854 |
|---|---|
| Luis Castillo Aldu | Fax: |

| Payment Terms: |
|---|
| Net 45 Days |

| Carrier Number/Carrier Name: | Incoterms: DDP |
|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | PO Delivery Date - 10/24/2008 | | | | | | |
| | | | **Header text** | | | | | | |
| | | | PO NOT TO EXCEED $1,030.13 USD | | | | | | |
| | | | REFERENCE: QUOTE # 4813 FROM FERRARI ENTERPRISES | | | | | | |
| | | | DATED OCTOBER 21, 2008. | | | | | | |
| | | | FOR PRICING ONLY | | | | | | |
| | | | | | | | | | |
| | | | **Terms of delivery** | | | | | | |
| | | | 1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE | | | | | | |
| | | | 2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | | |
| | | | 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | | |
| | | | 4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapelnm@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry | | | | | | |
| | | | 5. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | | |
| 00010 | 1 | LOT | | Low Voltage Work/101 Constitution Av | 10/24/2008 | 1,005.00 | T5 | 0.00 | 1,005.00 |

| | | | Page Total | | | 1,005.00 |
|---|---|---|---|---|---|---|

| | USD |
|---|---|

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Luis Castillo Aldu
BUYER

Nortel Networks IP/2007-077/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No: 4320059231<br>This number must appear on all invoices, packages, packing slips and customs forms. | Order Date: 10/28/2008<br>Last Change Date: 10/28/2008  Page 2 of 5 |

Supplier Contact:
Martin Muturi

Supplier No: 458533
Contract No: 06-170 (0904)

**Supplier:** Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship To:**
William Parker
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Incoterms:** DDP

**Payment Terms:** Net 45 Days

**Buyer:** Luis Castillo Aldu

Telephone No: 525520268854
Fax:

| Carrier: Number/Carrier Name: | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total | |
| 00020 | 1 | LOT | | JCI 2.5% PM Fee | | 10/24/2008 | 25.13 | T5 | 0.00 | 25.13 | |

Goods Recipient: PARKER JR WILLIAM
This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel.

| | | | |
|---|---|---|---|
| Page Total | | USD | 25.13 |
| Tax Amount | | USD | 0.00 |
| Total Amount | | USD | 1,030.13 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-077/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change to any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.

This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following: United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity / Affirmative Action/Employment regulations: 41 C.F. R. §§60-1.4(6), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.
and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated diphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matter use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1. Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2. Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2.Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320044839

NORTEL



Terms and Conditions

## Terms and Conditions

# PURCHASE ORDER

# 4320018873

# NORTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No: 4320018873<br>This number must appear on all invoices, packages,<br>packing slips and customs forms. | Order Date: 12/28/2007<br>Last Change Date: 12/28/2007 |
| | Page 1 of 4 |

| Supplier Contact:<br>Martin Muturi | Supplier No: 458533<br>Contract No: 06-170 |
|---|---|

**Supplier:**
Johnson Controls Inc
2215 York Road
Oakbrook Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:** Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms:<br>Net 45 Days | Buyer:<br>Gustavo Torres | Telephone No: 525528268709<br>Fax: |
|---|---|---|

| Carrier Number/Carrier Name: | Incoterms: | |
|---|---|---|

| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax<br>Code | Tax<br>Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | Start Date - 12/31/2007 | | | | | | |
| | | | **Header text** | | | | | | |
| | | | PO TOTAL NOT TO EXCEED $58,109.87 USD | | | | | | |
| | | | RE: Fee Proposal # Relocation of Wilbur to VP | | | | | | |
| | | | Project Manager: Lee Rose | | | | | | |
| | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED | | | | | | |
| | | | HEREIN. | | | | | | |
| | | | 2. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT. | | | | | | |
| | | | 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE | | | | | | |
| | | | ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM THAT IS BEING INVOICED FOR. | | | | | | |
| 00010 | 1.000 | LOT | State | Wilbur Consolidation | 12/31/2007 | 56692.56 | T5 | 4,889.73 | 56,692.56 |
| | 4 | 000% | Country | | | | | | |
| | 4 | 250% | District | | | | | | |
| | 0 | 375% | NN | | | | | | |
| | | | Nortel | | | | | | |
| | | | 160 Wilbur | | | | | | |
| | | | Bohemia NY  11716-2429 | | | | | | |
| 00020 | 1.000 | LOT | State | Wilbur Consolidation - PM Fees | 12/31/2007 | 1417.31 | T5 | 123.24 | 1,417.31 |
| | 4 | 000% | | | | | | | |
| | | | | | Page Total | | USD | | 58,109.87 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19802-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer    C

# NORTEL

## Purchase Order

| | |
|---|---|
| Order Date: 12/26/2007 | |
| Last Change Date: 12/26/2007 | Page 2 of 4 |
| Supplier No: 458533 | |
| Contract No: 06-170 | |

**Purchase Order No:** 4320018873
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Martin Maturi

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:** Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Payment Terms:** Net 45 Days

**Buyer:** Gustavo Torres
**Telephone No:** 5255282686709
**Fax:**

| Item No. | Qty | UOM | Part No | Country District | | | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 4 | 250% | Country District | | | | | | | | | |
| | 0 | 375% | | | | | | | | | | |

Nortel
160 Wilbur Place
Bohemia NY 11716-2429

Goods Recipient:
This Purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by
Nortel.

| | | | |
|---|---|---|---|
| **Page Total** | USD | | 0.00 |
| **Tax Amount** | USD | | 5,011.97 |
| **Total Amount** | USD | | 63,121.84 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# Nortel – confidential. Purchase Order terms & conditions

## Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER'S") TAX CODE GENERAL GUIDELINES**
**Conversion of AP/P-United States Sales/Use Tax**

The following is a list of the requirements for the United States sales/use tax reporting for the Nortel Networks tax group.

The tax codes that will be used on the P.O.'s are described below:

- F First Digit—United States
- U US No Federal Tax
- S Second digit—Represents whether State/Local tax is appropriate or not
- T State/Local Tax Applicable
- E State/Local Tax Exempt

- T Third digit—Represents special purchases being considered by North Carolina (NC) directly by permit holder (codes 0-3)
- 0 North Carolina (NC) ship to: No tax due on purchases.
- 1 North Carolina (NC) ship to: Single Article greater than 90,000. Tax rate of 1%, 500 Max Tax
- 2 North Carolina (NC) ship to: Tax rate at 1% of invoice
- 3 North Carolina (NC) ship to: Taxable at Full Rate
- 4 TN (NASH) ship to: Single Article Limit greater than $1600 greater than limit, per unit price greater than $1600)
- 5 Taxable (Ship to Destination Any State)
- 6 Exempt (Ship to Destination Any State)

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of the Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed thereunder. Purchaser shall not be bound by its terms, conditions or provisions or acknowledgment in connection with this Order that may be made adopting that the goods shall be acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at any prices higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser, and the Price(s) is (are) not in excess of the price(s) for said goods or services currently quoted by the Order which is instituted 55 days delivery of the goods or commencement of services shall be applicable to this Order. Purchaser will pay Supplier within 55 days In calendar year 2006, 27 days In calendar year 2007 and 70 days In calendar year 2008 and thereafter, in each case measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditions upon the advance approval of Purchaser's finance group, on a case-by-case basis, purchase order Purchaser may agree with Supplier to a specified term of payment that will apply to this purchase order only. Such different payment term will supersede the payment period applicable under the preceding sentence, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued.

### 3. Taxes and Charges

Unless otherwise specified on the face of this Order, the Price(s) is deemed to include (a) all applicable, federal, state and local taxes, all of the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser would pay Supplier the balance of the Price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured for Purchaser;
(b) method of shipment or packing; (c) place of delivery; (d) the provided drawings, designs and/or specifications; and/or
(e) the time or place of shipment or performance;
(f) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or in the time required for performance of this Order, Purchaser may make an equitable adjustment and such Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for an equitable adjustment unless it is asserted in writing accompanied by an estimate of the cost of the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due from Supplier under its order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services governed by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or written notice contained in writing. If the Order is terminated without breach by Supplier, the sole liability of Purchaser shall be to pay the reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement and Purchaser shall be entitled to purchase elsewhere goods or services of a character similar to the goods or services covered hereby and Purchaser may hold Supplier liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment and Subcontracting

Supplier shall not assign this Order, any interest herein or any right hereunder or any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify and hold harmless its customers against any loss, damage, liability or claim Supplier shall indemnify and hold harmless Purchaser and/or its customers (but that he made adopting that the goods shall be deliverable items to work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by Purchaser and/or its customers as a result of (i) any failure of Supplier to perform in accordance with the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile, including non-owner automobile liability for both personal injury and property damage - $5 million.

The provision of insurance and maintenance of insurance required by these policies shall not be minimally arranged or concealed without at least 30 days prior written notice being given to Director. Risk Management. Nortel Networks Inc., 4009 E. Chapel Hill Nelson Highway, Research Triangle Park, NC 27709. All Purchaser's written request, Supplier shall furnish detail coverage amounts or other types of insurance.

### 9. Laws and Regulations

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivering of performance. Supplier shall comply with all applicable United States laws and regulations. Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, Hazardous Materials Transportation Act, Vietnam Era Veterans Readjustment Assistance Act of 1974, Rehabilitation Act of 1973, Americans with Disabilities Act, Executive Order 11246 (September 24, 1965) and the clauses set forth in the Federal Acquisition Regulation (subject to "Contractor", "Subcontractor" and "Contract" used in such clauses meaning Purchaser, Supplier and Order, respectively) 52.219-8, 52.219-9, 52.219-13, 52.203-3, 52.222-26, 52.222-35, 52.222-36, 52.222-37, 52.244-6 (subparagraphs b(1), b(2), 52.225-3, 52.222-36, 52.222-36 and 252.247-7024, which clauses are incorporated by reference with the same force and effect as if they were given in full text, and Supplier shall comply with all such clauses. By reference to all the extent they are applicable to this Order. By reference the applicable Restriction of Hazardous Substances (RoHS). With respect to the RoHS Directive, Supplier must be able to demonstrate to Nortel Network's satisfaction that its lead, hexavalent chromium, cadmium, mercury or polybrominated biphenyls (PBBs)/polybrominated diphenyl ethers (PBDEs) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any third party resulting from any non-compliance by Supplier with the terms of this Order. In the event Supplier fails to comply with any customer, government body or any such requirements of this Order, Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser's employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

### 10. Disclosure of Information

Unless otherwise agreed to, in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of the Order shall be maintained in confidence by Supplier, shall remain

# Terms and Conditions

## Nortel – confidential, Purchase Order terms & conditions

Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

**11. Notice**
Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

**12. Use of Purchaser's Name**
Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity means use the name of Purchaser. Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from any declaration of said names may be implied without Purchaser's prior written approval.

**13. Force Majeure**
Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, fire, public enemy or the government, fires, floods, freight embargoes or unusually severe weather. In the event any such cause affects Supplier's performance for a period of [ ] days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

**14. Governing Law**
This Order shall be interpreted and construed in accordance with the laws of the state/province and county in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

**15. Paragraph Headings**
Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**16. Waiver**
The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

**17. Purchasers Pursuant to Master Agreement**
In the event that the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser (or the parent of Purchaser or any affiliate or subsidiary of Purchaser) and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

**18. Entire Agreement**
This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, commitments and understandings, whether oral or written. No modifications shall be binding unless agreed to in writing, signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**19. Business Ethics**
By its acceptance of this Order, Supplier represents that as a company it conforms to Purchaser's published Supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com

**20. Time of the Essence**
Time is of the essence of all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

**G1.Quantity**
Unless otherwise specified on the face of this Order, exact Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

**G2.Warranty**
Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods, that the goods and specifications are provided on the face of this Order (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which are electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such item and recommencement, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not remove or replace the defective or nonconforming goods, Supplier shall reimburse the Purchaser for the cost to remove the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successor and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Product**

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods that is furnished by Supplier and at its cost to Purchaser Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result become the owner and entitled to possession of same upon Purchaser's request thereof

**S1.Warranty**
Goods furnished prior to the required delivery date shall, at Purchaser's option not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**S2.Trade Certificates of Origin**
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty. Including but not limited to the North American Free Trade Agreement (NAFTA). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order.
All goods shall be suitably packed for shipment to prevent damage.

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (a) contain in the description of the services ordered and (b) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective. Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods. Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any person to require Supplier to remove any employee of Supplier. Its agents or subcontractors, performing all of Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3.Security Rules/Procedures**
Supplier and company with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ('DAP') in the case of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment to the Purpose use of drugs, in accordance with Purchaser's DAP. Supplier shall and assign any person to perform services who refuse to be tested or whose test result are positive. A copy of Purchaser's DAP may be obtained upon request.

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

All Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6.Independent Contractor**
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7.**
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items (a) to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation (b) copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to enforce and/or secure Purchaser's exclusive ownership therein, in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain properly owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results of items produced as part of the services.

These terms and conditions apply to the following Purchase Order issued on the date referenced:

# PURCHASE ORDER

## USC510211



NORTEL
NETWORKS

07/16/2007   Page no.   1
Change no.

**Supplier**

NORTEL NETWORKS (CALA) INC.
1500 CONCORD TERRACE
SUNRISE, FL 33323

JOHNSON CONTROLS INC
2215 YORK ROAD
DRAKE PLAZA SUITE 110
OAK BROOK, IL
60523, UNITED STATES

Attn: DAVE POLAK

(This no. must appear on all invoices,
packages, packing slips and customs forms)
Purchase order no.      USC510211

Order date
Change date

**Bill to**

NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

**Ship to**

NORTEL NETWORKS (CALA) INC.
(954)851-8000
1500 CONCORD TERRACE
SUNRISE, FL USA
33323-2815

Supplier code   Our order no.
72698304        06-170

Pmt terms
NET 45

Currency
USD

Req delivery

Requisition no.
2477679

Dept   Nav ship
0358   2330

Shlp no.
501

Assist no.

| To | Ext reqn. | Quantity | Unit | Description | Date | Tax Box | Unit cost | Prod no | Extended cost |
|----|-----------|----------|------|-------------|------|---------|-----------|---------|---------------|
| C  | 1         | F. ARAIZA |      | Supplier please address all queries to MIGUEL MUNIZ | .5255 | | 26268711. | | |
|    |           |          |      |             |      |         |           |         |               |
|    |           |          |      | Reference Supply Agreement # 06-170 |      |         |           |         |               |
|    |           |          |      |             |      |         |           |         |               |
|    |           |          |      | RE: "BID PROPOSAL FOR SECURITY UPGRADE AND 5TH |      |         |           |         |               |
|    |           |          |      | FLOOR TENNANT IMPROVMENTS" DATED JUN/01/07 AND |      |         |           |         |               |
|    |           |          |      | REVISED JUL/01/07. |      |         |           |         |               |
|    |           |          |      | DO NOT EXCEED $303,912.50 USD. |      |         |           |         |               |
|    |           |          |      | PERIOD COVERED: JUL/01/07 - OCT/19/2007. |      |         |           |         |               |
|    |           |          |      |             |      |         |           |         |               |
|    |           |          |      | IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR |      |         |           |         |               |
|    |           |          |      | PAYMENT REFERENCE THE ABOVE MENTIONED PURCHASE |      |         |           |         |               |
|    |           |          |      | ORDER NUMBER AND SHIP TO INFORMATION. |      |         |           |         |               |
|    |           |          |      | INVOICES SUBMITTED WITHOUT A PURCHASE ORDER |      |         |           |         |               |
|    |           |          |      | NUMBER WILL BE TREATED AS A DISPUTED INVOICE |      |         |           |         |               |
|    |           |          |      | SUBJECT TO BEING RETURNED UNPAID FOR YOUR |      |         |           |         |               |
|    |           |          |      | CORRECTION AND RESUBMISSION. |      |         |           |         |               |
|    |           |          |      |             |      |         |           |         |               |
|    |           |          |      | Total for this Page |      |         |           |         | .00 |

Total Amount   ***********

Consider this fax copy to be the original Purchase Order, no other copies will follow
Nortel Networks is an Equal Opportunity / Affirmative Action Employer

Subject to terms and conditions supplied with this PO



NØRTEL
NETWORKS

Page no. 2

Order date 07/16/2007

Change no.

DLR no. 501

Shipper

NORTEL NETWORKS (CALA) INC.
1500 CONCORD TERRACE
SUNRISE, FL 33323

(This no. must appear on all invoices, packages, packing slips and customs forms.)

Purchase order no. USC510211

Ship to
NORTEL NETWORKS (CALA) INC.
(954)851-8000
1500 CONCORD TERRACE
SUNRISE, FL USA
33323-2815

Bill to
NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

JOHNSON CONTROLS INC
2215 YORK ROAD
DRAKE PLAZA SUITE 110
OAK BROOK, IL
60523, UNITED STATES

Attn: DAVE POLAK

Supplier no. 72698304    06-170

To  1 F. ARAIZA    Dept. 0358    Stor dept. 2330    Req/release no. 2477679    Currency USD    Terms NET 45

| Value/Quantity | Unit | Description | Date | | | Unit cost | Extended cost | Tax | Asset no. |
|---|---|---|---|---|---|---|---|---|---|
| | | INVOICES MAY BE SENT VIA EMAIL DIRECTLY TO THE ACCOUNTS PAYABLE DEPT AT: naapexpl@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO THE ACCOUNTS PAYABLE DEPT. AT 1-800-684-2228 OR www.nortel.com/naapinquiry | | | | | | | |
| 1 | LOT | Part Number: N/A DEMISE WORK FOR CONVERTING SUNRISE INTO A MULTI-TENANT BUILDING (FLOORS 1-4) | | | | 296500.000 | 296500.00 | E 6 | |
| 2 | LOT | Part Number: N/A 2.5% MANAGEMENT FEE | | | | 7412.5000 | 7412.50 | E 6 | |
| | | THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER ARE COVERED BY THE CONTRACT REFERENCED HEREIN AND ON FILE WITH NORTEL NETWORKS SUPPLY MANAGEMENT. | | | | | | | |

Total Amount   ****303912.50

MANAGER
ANDRES-LIBARDO RAMIREZ

BUYER:
MIGUEL MUÑIZ

Subject to terms and conditions supplied with this PO

# Nortel – confidential. Purchase Order terms & conditions

Nortel-confidential Purchase Order terms & conditions

USC510211

07/16/2007

PAGE 004 OF 004

07/16/2007 05:51PM

These terms and conditions apply to the following Purchase Order issued on the date referenced.

# PURCHASE ORDER

## 4320032412

# NORTEL

## Purchase Order

| Purchase Order No: 4320032412 | | | |
|---|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | | | |

| Order Date: | 03/27/2008 | Page 1 of 5 |
|---|---|---|
| Last Change Date: | 03/27/2008 | |
| Supplier No: | 458533 | |
| Contract No: | 06-170 | |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**
Martin Muturi

**Ship to:**
NN
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

**Bill to:**
Nortel Networks Incorporated  (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | |
|---|---|
| Buyer: Gustavo Torres | Telephone No: 525528268709 |
| | Fax: |

| Carrier Number/Carrier Name: | | Incoterms: DDP | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
| | | | | PO Delivery Date - 03/28/2008 | | | | | |
| | | | | Header text | | | | | |
| | | | | RE: PROJECT (PR# 87780 ) RTP Hub Consolidation | | | | | |
| | | | | CHANGE ORDER NUMBER: CO #12 rev 2 | | | | | |
| | | | | CHANGE ORDER TITLE: Exterior Signage | | | | | |
| | | | | DATE: 03/19/08 | | | | | |
| | | | | FOR PRICING OBNLY | | | | | |
| | | | | | | | | | |
| | | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | 1 | LOT | | Change Order #12 RTP Hub Consolidati | 03/28/2008 | 9,400.00 | T1 | 0.00 | 9,400.00 |
| 00020 | 1 | LOT | | Change Order #12 RTP Hub Consolidati | 03/28/2008 | 235.00 | T1 | 0.00 | 235.00 |
| | | | | | Page Total | | USD | | 9,635.00 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel NETWORKS 19/2007-077/EN       Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| | |
|---|---|
| **Supplier:** | Johnson Controls Inc<br>2215 York Road<br>Drake Plaza Suite 110<br>OAK BROOK IL 60523<br>USA<br>Telephone No: 630-990-3668<br>Fax No: 630-990-2300 | **Purchase Order No:** 4320032412<br>This number must appear on all invoices, packages,<br>packing slips and customs forms. | **Order Date:** 03/27/2008<br>**Last Change Date:** 03/27/2008 | **Page 2 of 5** |

**Order Date:** 03/27/2008
**Last Change Date:** 03/27/2008
**Page 2 of 5**

**Supplier No:** 45R533
**Contract No:** 06-170

**Supplier Contact:**
Martin Muturi

**Ship to:**
NN
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Buyer:**
Gustavo Torres

**Telephone No:** 525526268709
**Fax:**

| Item No. | Qty | UOM | Part No | Incoterms:<br>DDP | Description | Payment Terms:<br>Net 45 Days | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Carrier Number/Carrier Name:**

Goods Recipient: PARKER JR WILLIAM
This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by
Nortel.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Page Total** | | | | | USD | | | 0.00 |
| **Tax Amount** | | | | | USD | | | 0.00 |
| **Total Amount** | | | | | USD | | | 9,635.00 |

_[signature]_
Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer    C

# Terms and Conditions

## NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:

(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or

(b) method of shipment or packaging; and/or

(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory worker's compensation and occupational disease;

(b) Employer's liability - $1,000,000.00;

(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and

(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.

This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, public enemy or the government, fires, floods, freight embargos or unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services entered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

**GOODS** – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order; (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**
All goods shall be suitably packed for shipment to prevent damage.

SERVICES – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.
Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5. Waiver of Lien**
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7. Title**
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320007755

## Purchase Order not attached.  Will be supplemented to the Court at a later date.

# PURCHASE ORDER
# USC502550





# PURCHASE ORDER

# 4320056452

# NORTEL

## Purchase Order

| Purchase Order No: 4320056452 | | |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and nations forms. | | |
| Order Date: 09/30/2008 | Supplier No: 458633 | Page 1 of 6 |
| Last Change Date: 09/30/2008 | Contract No: 06-170 (9904) | |

Supplier:
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Supplier Contact:
Martin Muturi

Ship to:
Jean Pelland
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | Incoterms: DDP | Payment Terms: Net 45 Days | Telephone No: 52552626854 | Fax: | Buyer: Luis Castillo Aldu |
|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No. | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Start Date - 09/26/2008 | | | | | |
| | | | | End Date - 10/31/2008 | | | | | |
| | | | | Header text | | | | | |
| | | | | PO NOT TO EXCEED $25,100.00 USD | | | | | |
| | | | | REFERENCE PROJECT: Nortel # MATAWAN | | | | | |
| | | | | Submission Date:09/25/2008 | | | | | |
| | | | | FOR PRICING ONLY | | | | | |
| | | | | | | | | | |
| | | | | Header note | | | | | |
| | | | | Project name: Matawan | | | | | |
| | | | | Project manager: Ned Frisbee | | | | | |
| | | | | Expenditure Type: Expense | | | | | |

| Page Total | USD | 0.00 |
|---|---|---|

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 1P/2007-07/EN       Nortel is an Equal Opportunity / Affirmative Action Employer

# N✦RTEL

## Purchase Order

Page 2  of 6

| | |
|---|---|
| Order Date: | 09/30/2009 |
| Last Change Date: | 09/30/2008 |
| Supplier No: | 459533 |
| Contract No: | 06-170 (9904) |

**Purchase Order No:** 4320056452
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**
Martin Maturi

**Ship to:**
Jean Pelland
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Telephone No:** 525526288854
**Fax:**

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | | Payment Terms: Net 45 Days | | Buyer: Luis Castillo Aldu | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

**Terms of delivery**
1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE
2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN.
3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER
4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapexpings.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry
5. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT AIL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT.

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00010 | 1.000 | LOT | | JCI PM Admin Fees | 09/26/2008 | 612.20 | T5 | 0.00 | 612.20 |
| 00020 | 1.000 | LOT | | Matawan Relocation | 09/26/2008 | 24,487.80 | T5 | 0.00 | 24,487.80 |
| | | | | | Page Total | | | USD | 25,100.00 |

*[signature]*

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
4209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4320056452 | Order Date: 09/30/2008 | Page 3 of 6 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 09/30/2008 | |
| | Supplier No: 488533 | |
| | Contract No: 06-170 (9904) | |

Supplier:

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:

Supplier Contact:
Martin Maturi

Jean Pellana
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

Bill to:

Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

Buyer:
Luis Castillo Aldu

Telephone No: 5255262658854
Fax:

| Incoterms: DDP | | Payment Terms: Net 45 Days | | | | | | |

| Carrier Number/Carrier Name: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
| | | | | Goods Recipient:<br>This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by<br>Nortel. | | | | | |
| | | | | | Page Total | USD | | | 0.00 |
| | | | | | Tax Amount | USD | | | 0.00 |
| | | | | | Total Amount | USD | | | 25,100.00 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Luis Castillo Aldu
BUYER

Nortel Networks TP/2007-07/EN          Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify and hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due in Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability – $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage – $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage – $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows, "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470, and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS – If this Order is for goods, the following paragraphs are also included in this Order.

### G1.Quantity

Unless otherwise specified on the face of this Order, such Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

### G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### G3.Special Products
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

### G4.Title/Risk of Loss
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

### G5.Delivery
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

### G6.Free Trade Certificates of Origin
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

### G7.Packing
All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

### S1.Warranty
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services entered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.
Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### S2.Services to be Rendered at Purchaser's Premises
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

### S3.Security Rules/Procedures
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

### S4.Disruption of Business
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

### S5.Waiver of Lien
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

### S6.Independent Contractor
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

### S7.Title
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER

# 4320026462

# NORTEL

## Purchase Order

| Purchase Order No: 4320028482 | Order Date: 02/18/2008 | Last Change Date: 08/12/2008 | Page 1 of 4 |
|---|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | | | |

| Supplier No: 458533 | Contract No: 06-170 |
|---|---|

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 919-905-2057

**Supplier Contact:**
Marcuis Wade

**Ship to:**
NN
Nortel
4655 GREAT AMERICA PARKWAY
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | Incoterms: DDP | | Payment Terms: Not 45 Days | Buyer: Victor Figueroa T | | Telephone No: 525520268479 Fax: 525528288686 | | |
|---|---|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Start Date - 03/01/2008 | | | | | |
| | | | | Header text: RE: Fee Proposal INSTALLATION OF THERMOTRON UNIT Project Manager: Marcuis Wade Submission Date: January 31, 2008 FOR PRICING ONLY | | | | | |
| | | | | Header note 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAN IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. 3. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE 4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | 1.000 | EA | | Thermal Chamber Installation | 03/01/2008 | 60,929.00 | T3 | 0.00 | 60,929.00 |
| | | | | Goods Recipient: This purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel. | | | | | |

| | | | Page Total | USD | 60,929.00 |
|---|---|---|---|---|---|

| | | | Tax Amount | USD | 0.00 |
|---|---|---|---|---|---|
| | | | Total Amount | USD | 60,929.00 |

Victor Figueroa T
BUYER

Nortel Networks Inc
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder, Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either amounts or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from, injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709, At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470,

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion material, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS -- If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier

## G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall, as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterms indicated by Purchaser on the face of this Order.

## G5.Delivery
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing
All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5. Waiver of Lien
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# PURCHASE ORDER

# 4320030265

# NORTEL

## Purchase Order

| Purchase Order No: 4320030265<br>This number must appear on all invoices, packages, packing slips and customs forms. | | Order Date: 03/13/2008<br>Last Change Date: 03/13/2008 | Page 1 of 4 |
| --- | --- | --- | --- |
| | | Supplier No: 458533<br>Contract No: 06-1170 | |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
4010 EAST CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-0000

Supplier Contact:
Martin Muturi

**Bill to:**
Nortel Networks Incorporated  (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | | Incoterms:<br>DDP | Payment Terms:<br>Net 45 Days | Buyer:<br>Gustavo Torres | Telephone No: 52552626B709<br>Fax: |
| --- | --- | --- | --- | --- | --- | --- |

| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax<br>Code | Tax<br>Value | Extended Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | PO Delivery Date - 03/17/2008 | | | | | |
| | | | | Header Text | | | | | |
| | | | | THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED | | | | | |
| | | | | HEREIN. | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE | | | | | |
| | | | | ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING | | | | | |
| | | | | INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | 1 | LOT | | Change Order #1-NCO Fire Panel Phase | 03/17/2008 | 4,772.50 | T1 | 0.00 | 4,772.50 |
| 00020 | 1 | LOT | | JCI Project Management Fee 2.5% | 03/17/2008 | 119.31 | T1 | 0.00 | 119.31 |
| | | | | Goods Recipient: PARKER JR WILLIAM | | | | | |
| | | | | This Purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by | | | | | |
| | | | | Nortel. | | | | | |
| | | | | | | Page Total | | USD | 4,891.81 |
| | | | | | | Tax Amount | | USD | 0.00 |
| | | | | | | Total Amount | | USD | 4,891.81 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted prior to delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days ("Payment Period") measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued.

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of its reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services, including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se, Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding, made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of my master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

SERVICES – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right (for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premise to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# PURCHASE ORDER
# 4320057979

# NORTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 10/15/2008 |
| Last Change Date: | 10/15/2008 |
| Page 1 of 6 | |
| Supplier No: | 455533 |
| Contract No: | 06-170 (9904) |

**Purchase Order No: 4320057979**
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone Nos: 630-990-3668
Fax Nos: 630-990-2300

**Ship to:**
Supplier Contact:
Martin Muturi

Jean Pelland
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | | Inco/terms: DDP | | | | | Telephone No: 525526268854 Fax: |
|---|---|---|---|---|---|---|---|

| Item No. | Description | Part No | | | | Buyer: Luis Castillo Aldu | |

| Carrier Number/Carrier Name: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |

PO Delivery Date - 09/20/2008
**Header text**
PO NOT TO EXCEED $3,651.05 USD
REFERENCE: QUOTE #78148
DATED: SEPTEMBER 09, 2008
FOR PRICING ONLY

**Header note**
Project name: Hellyer
Project manager: Bob Spriggs
Expenditure type: Capital

| | |
|---|---|
| Page Total | USD    0.00 |

Luis Castillo Aldu
BUYER

Nortel is an Equal Opportunity / Affirmative Action Employer

Nortel Networks Inc
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-077/EN

# NORTEL

## Purchase Order

Page 2 of 6

| Order Date: | 10/15/2008 |
|---|---|
| Last Change Date: | 10/15/2008 |

| Supplier No: | 458533 |
|---|---|
| Contract No: | 06+170 (9904) |

**Purchase Order No:** 4320057979
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**
Martin Muturi

**Ship to:**
Jean Pelland
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | Incoterms: DDP | | Payment Terms: Net 45 Days | Buyer: Luis Castillo Aldu | | Telephone No: 525526268854 Fax: |
|---|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Terms of delivery |  |  |  |  |  |
| | | | | 1.  THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE | | | | | |
| | | | | 2.  THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | 3.  IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 4.  PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapeplen@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry | | | | | |
| | | | | 5.  NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| 00010 | 1 | LOT | | Hellyer Labs Relo - Fiber | 09/20/2008 | 3,562.00 | T1 | 0.00 | 3,562.00 |
| 00020 | 1 | LOT | | Project Management Fees - 2.5% | 09/20/2008 | 89.05 | T1 | 0.00 | 89.05 |
| | | | | | Page Total | | | USD | 3,651.05 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IB72007-07/EN          Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| | |
|---|---|
| Order Date: 10/15/2008 | |
| Last Change Date: 10/15/2008 | Page 3 of 6 |
| Supplier No: 458533 | |
| Contract No: 06-170 (8804) | |

Purchase Order No. 4320057979
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Martin Muturi

Jean Pelland
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | | | | Buyer: Luis Castillo Aldu | | Telephone No: 5255262688854 Fax: | | |
|---|---|---|---|---|---|---|---|---|

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | | | | |
|---|---|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Goods Recipient: PELLAND JEAN | | | | | |
| | | | | This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel. | | | | | |

| | | | |
|---|---|---|---|
| | Page Total | USD | 0.00 |
| | Tax Amount | USD | 0.00 |
| | Total Amount | USD | 3,651.05 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 11/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

Page 4 of 6

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is included before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational license;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470;

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (DBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding, made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's patent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics - by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such items and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.
Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademark's, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# PURCHASE ORDER

## 4320058248

# N❍RTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 10/17/2008 |
| Last Change Date: | 10/17/2008 |

Page 1 of 6

**Purchase Order No:** 4320058248
This number must appear on all invoices, packages, packing slips and customs forms.

| | |
|---|---|
| Supplier No: | 458533 |
| Contract No: | 06-170 (9904) |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**
Martin Muturi

**Ship to:**
Jean Pellard
Nortel
4655 Great America Parkway
SANTA CLARA CA  95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN  37228

| Payment Terms: | Incoterms: | Buyer: | Telephone No: 5255626268854 |
|---|---|---|---|
| Net 45 Days | DDP | Luis Castillo Aldu | Fax: |

| Carrier Number/Carrier Name: | | | | | | | |
|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | UnitPrice | Tax Cdd | Extended Total |
| | | | Start Date - 10/12/2008 | | | | |
| | | | End Date - 11/17/2008 | | | | |
| | | | **Header text** | | | | |
| | | | PO NOT TO EXCEED $18,162.68 USD | | | | |
| | | | REFERENCE: Estimate revised on October 1, 2008 From Moving Solutions. | | | | |
| | | | FOR PRICING ONLY | | | | |
| | | | | | | | |
| | | | **Header note** | | | | |
| | | | Project name: Hellyer | | | | |
| | | | Project manager: Bob Spriggs | | | | |
| | | | Expenditure Type: Expense | | | | |

| | | Ship Date | | | Tax Value | |
|---|---|---|---|---|---|---|

| | Page Total | USD | 0.00 |
|---|---|---|---|

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Luis Castillo Aldu
BUYER

Nortel Networks IP/2007-07/EN         Nortel is an Equal Opportunity / Affirmative Action Employer

# NØRTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 10/17/2008 |
| Last Change Date: | 10/17/2008 |
| Supplier No: | 458533 |
| Contract No: | 08-170 (990-4) |

Page 2 of 6

**Purchase Order No:** 4320058248
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Martin Muturi

**Ship to:**
Jean Pelland
Nortel
4555 Great America Parkway
SANTA CLARA CA  95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3658
Fax No: 630-990-2300

**Payment Terms:**
Net 45 Days

**Buyer:**
Luis Castillo Aldu

**Telephone No:** 5255202668B4
**Fax**

| Carrier Number/Carrier Name: | | | | Incoterms: DDP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |

Terms of delivery
1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE
HEREIN.
2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED
3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE
ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING
INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER.
4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO
nasinquiry@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE
DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry.
5. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING
SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT.

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00010 | 1.000 | LOT | | Hellyer Labs Move | 10/12/2008 | 17,719.68 | T5 | 0.00 | 17,719.68 |
| 00020 | 1.000 | LOT | | PM Admin Fees | 10/12/2008 | 443.00 | T5 | 0.00 | 443.00 |

| | | |
|---|---|---|
| Page Total | USD | 18,162.68 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-077EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No. 4320058248 | Order Date: 10/17/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 10/17/2008 |
| | Supplier No. 458533 |
| | Contract No. 06-170 (9904) |

Page 3 of 6

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Martin Muturi

Jean Pelland
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No: 525528288854 |
|---|---|---|
| Net 45 Days | Luis Castillo Aldu | Fax: |

| Carrier Number/Carrier Name: | | | | Incoterms: DDP | | | | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |

Goods Recipient:
This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel.

| | | | | |
|---|---|---|---|---|
| Page Total | | | USD | 0.00 |
| Tax Amount | | | USD | 0.00 |
| Total Amount | | | USD | 18,162.68 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN ———— Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify, hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(o), 60-250.5(o), 60-741.5(o) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, fire, public enemy or the government, fires, floods, freight embargoes or unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to obtain a breach of any term of this Order shall not constitute o waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics - by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

### G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

### G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.TITLE/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2.Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3.Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4.Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320021327

# N☒RTEL

## Purchase Order

| | |
|---|---|
| Order Date: 01/16/2008 | |
| Last Change Date: 01/16/2008 | Page 1 of 4 |
| Supplier No: 458533 | |
| Contract No: 06-170 | |

**Purchase Order No:** 4320021327
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Martin Muturi

**Ship to:**
NN
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

| Carrier Number/Carrier Name: | | Incoterms: DDP | | Payment Terms: Net 45 Days | Buyer: Gustavo Torres | | | Telephone No: 5255826268709 Fax: | | |
|---|---|---|---|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | PO Delivery Date - 03/31/2008 | | | | | | |
| | | | Header text | | | | | | |
| | | | RE: Project: Nortel # Santa Clara | | | | | | |
| | | | Project Manager: Lee Rose | | | | | | |
| | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED | | | | | | |
| | | | HEREIN. | | | | | | |
| | | | 2. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT. | | | | | | |
| | | | 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE | | | | | | |
| | | | ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM THAT IS BEING INVOICED FOR. | | | | | | |
| 00010 | 1 | LOT | | SC100 Demising - Construction | 03/31/2008 | 410439.00 | T5 | 0.00 | 410,439.00 |
| 00020 | 1 | LOT | | SC100 Demising - Security | 03/31/2008 | 83,100.00 | T5 | 0.00 | 83,100.00 |
| 00030 | 1 | LOT | | SC100 Demising - FM Fees | 03/31/2008 | 12,338.48 | T5 | 0.00 | 12,338.48 |
| | | | | Page Total | | USD | | | 505,877.48 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

# NORTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 01/16/2008 |
| Last Change Date: 01/16/2008 | |
| Supplier No: 458533 | |
| Contract No: 06-170 | |

Page 2 of 4

Purchase Order No: 4320021327
This number must appear on all invoices, packages, packing slips and customs forms.

Supplier:

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:

Supplier Contact:
Martin Mutuzi

NN
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

Bill to:

Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | Incoterms: DDP | | | | Buyer: Gustavo Torres | Telephone No: 525526268709 Fax: | | |
|---|---|---|---|---|---|---|---|---|

| Carrier Number/Carrier Name: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |

Goods Recipient: PELLAND JEAN
This purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by
Nortel.

| | | |
|---|---|---|
| Page Total | USD | 0.00 |
| Tax Amount | USD | 0.00 |
| Total Amount | USD | 505,877.48 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Gustavo Torres
BUYER

Nortel Networks IP72007-0772N    Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

## Nortel – confidential. Purchase Order terms & conditions.

**NORTEL NETWORKS INC. (PURCHASER'S) TAX CODE GENERAL GUIDELINES**

Conversion of or non-United States Sales/Use Tax

The following is a list of the requirements for the United States sales/use tax reporting for the Nortel Networks tax groups.

The three digits that will be used on the P.O.'s and described below:

**First Digit – United States**

U US No Federal taxes

S Exempt digit – Represents whether State/Local tax is appropriate or not

T State/Local Tax Applicable

E State/Local Tax Exempt

**Third digit –** Represents special purchases having conditions having conditions by North Carolina (NC) direct pay permit holder (codes 0–3)

**Second Digit – North Carolina (NC) ship to; No tax due on purchases.**

1 North Carolina (NC) ship to: Single Article greater than $9,000. Tax rate of 1%, $80 Max Tax

2 North Carolina (NC) ship to: Tax rate of 1% of invoice

3 North Carolina (NC) ship to: Taxable at Full Rate

4 TH (CASH) ship to: Single Article Limit greater than $1800 (per line limit, per unit price greater than $1600)

5 Taxable (Ship to Destination State except for codes 0–3)

6 Exempt (Ship to Destination Any State)

---

## PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of products or services, or the performance of services. Purchaser and/or Supplier may, by any means, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall make the amount of a price(s) higher than that stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) in hereto the amount a price(s) higher than that stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is any tax or other similar terms of a purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Purchaser will pay Supplier within 65 days to calendar year 2006, 67 days in calendar year 2007 and 70 days in calendar year 2008 and thereafter, in each case measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, if payment of any other amounts due the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to the purchase order only. Such different payment term will supersede the payment period applicable under the preceding sentence, but will not supersede any payment term in a master agreement, if any. Interest the parties under which this purchase order is being issued.

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the quantities of the goods or services or make a change in any one or more of the following:

(a) specifications, drawings and designs where the goods to be furnished are to be specifically manufactured by Supplier for Purchaser; (b) methods of shipment or packaging; and/or (c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost or performance or the time required for performance of this Order, an equitable adjustment shall be made in the Price and/or the delivery/performance schedule. Supplier shall be entitled to any waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Set-Off**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) allowing Supplier's performance, including, but not limited to Supplier's failure to deliver goods or perform services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order, on a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity, in no event shall Purchaser be liable for lost profits, loss of income, profit, use, or goodwill, for any consequential special or punitive damages of any nature whatsoever, including loss of income.

**7. Assignment and Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be

Page 1 of 2 rev 08-2006

performed thereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify, defend and save Purchaser and/or its customers harmless against any loss, damage, liability or claim (including without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of the services, however caused, including without limitation for loss or harm suffered by the public or by the customer as a result of any agreed, Purchaser and/or its customers including, without limitation, loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of this order or the negligence or intentional or tortious act of Supplier or its agents, employees or representatives. In addition, Supplier represents that it is solely liable or negligence per se, Supplier shall be liable for the following types of insurance and properties of performance. Supplier shall provide Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and maintained coverage amounts:

(a) Statutory workers' compensation and employer's disease;

(b) Employer's liability - $1,000,000.00;

(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $1 million

(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million

This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Purchaser." Supplier shall maintain all Workers' Compensation, Occupational Safety and Health Acts, Executive Order 11246 (September 24, 1965) and the clauses set forth in Federal Acquisition Regulation including but not limited to "Contractor," "Subcontractor" and "Contract" used in such clauses meaning Purchaser, Supplier and Order, respectively) 52.219-8, 52.219-9, 52.219-13, 52-209-5, 52.222-4, 52.222-21, 52.222-26, 52.222-37, 52.222-35, 52.222-36 and 52.222-38 (subparagraphs (1)(1), (2), (3) and (4) of FAR 52.222-36) which clauses are hereby incorporated by reference with the same force and effect as if they were given in full text; and

**9. Laws and Regulations**

Supplier shall comply with all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with all that assist Purchaser in complying with all applicable laws and governmental orders and regulations. Supplier shall ensure that the goods produced/manufactured/supplied in compliance with all applicable law, rules and regulations of the United States and any other nations having jurisdiction, including without limitation, U.S. Federal laws of the following. United States laws include the following United States laws: Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act of 1970, Water Pollution Control Act, Federal Hazardous Materials Transportation Act, Nuclear Waste Policy Act of 1982 Americans with Disabilities Act, Executive Order 11246, Americans with Disabilities Act, etc. Any and all Federal, State and Local Laws/regulations are hereby incorporated by reference with the same force and effect as if they were given in full text.

**10. Environmental Compliance**

(a) In the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium, cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are contained in any product covered by the RoHS Directive used or provided by Seller. In providing the Products in the EU, except where exemption allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all taxes, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or prosecution of a third party resulting from any failure by Supplier with the RoHS directives. Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

**11. Disclosure of Information**

Unless otherwise agreed in writing, all information disclosed by Purchaser to Supplier or to which Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain

# Terms and Conditions

Nortel – confidential Purchase Order terms & conditions

Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order shall be used only for purposes of providing goods and/or services under this Order.

**11. Notice**

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

**12. Use of Purchaser's Name**

Supplier shall not in any advertising, sales promotion materials, press releases, public statements, or any other publicly matters use the name of Purchaser, Purchaser's patent, any affiliate or subsidiary of Purchaser in any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

**13. Force Majeure**

Neither Purchaser shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or unusually severe weather, in the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

**14. Governing Law**

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this Order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

**15. Paragraph Headings**

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**16. Waiver**

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

**17. Purchasers Pursuant to Master Agreement**

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

**18. Entire Agreement**

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived only and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

**19. Business Ethics**

By its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com

**20. Time of this Essence**

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

**GOODS** – If this Order is for goods, the following paragraphs are also included in this Order:

Unless otherwise specified on the face of this Order, each Order shall be shipped complete, Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

**G2 Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of the best material and good workmanship and free from defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such item from Purchaser's premises and shall, at no cost to Purchaser, in Purchaser's sole discretion, either repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and then upon shall be entitled to repair the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers. In the event of resale or incorporation into Purchaser's products.

**G3 Special Products**

Unless otherwise provided on the face of this Order, any drawings, special dies, drawings, special dies, tools, patterns or equipment required for the manufacture of the goods that be furnished by Supplier shall be used by Supplier solely for Purchaser's. Purchaser, at its option may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and at the possession at same upon Purchaser's request thereof.

**G4 Title and Risk of Loss**

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indexed by Purchaser on the face of this Order.

**G5 Delivery**

Goods delivered prior to the repaired delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6 Free Trade Certificates of Origin**

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation. In the event the goods qualify, Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7 Packing**

All goods shall be suitably packed to eliminate to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1 Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable item or work product in connection with services shall (i) conform to the description set forth in this Order and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and then upon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successor and assigns, and to Purchaser's customers. In the event of resale or incorporation into Purchaser's products.

**S2 Services to be Rendered at Purchaser's Premises**

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. If Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier. In agents or subcontractors, performing all Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3 Security Rules/Procedures**

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will be, or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment to the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4 Disruption of Business**

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and restoration of the premises to its original condition.

**S5 Payment of Lien**

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6 Independent Contractor**

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7. Title**

Supplier hereby sells, transfers, assigns and conveys to Purchaser all its right, title and interest in all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all materials, copyright, trade secrets, ideas, methodology, inventions, trade secrets, mask works and any other intellectual property rights, pertaining thereto, and agrees to execute and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership thereof, in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

These terms and conditions apply to the following Purchase Order issued on the date referenced.

Page 2 of 2 rev 06-2006

# PURCHASE ORDER
# 4320030289

# NORTEL Purchase Order

Page 1 of 5

| Order Date | 09/13/2006 |
|---|---|
| Last Change Date: 07/23/2008 | |

| Supplier No: 458533 |
| Contact No: 05-170 |

**Supplier**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**

Purchase Order No: 4320030289
This number must appear on all invoices, packages, packing slips and customs forms.

Supplier Contact
Dave Polak.

PLEASE SEE DELIVERY ADDRESS at Line Item.

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

Payment Terms
Net 45 Days

**Buyer:**
Luis Castillo Aldu

Telephone No 5255262E5854
Fax:

| Carrier Number/Center Name | | | Incoterms: DDP | | | | |
|---|---|---|---|---|---|---|---|

| Item No | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PO Delivery Date - 07/18/2008 | | | | | |
| | | | | Header text | | | | | |
| | | | | ***+++CHANGE ORDER #1+++07/23/2008*** | | | | | |
| | | | | CHANGE ORDER ISSUED TO INCREASE PO AMOUNT IN $8,784.43 USD. | | | | | |
| | | | | NEW PO TOTAL $74,224.19 USD. | | | | | |
| | | | | ************************************* | | | | | |
| | | | | TYPE OF EXPENSE: CAPITAL | | | | | |
| | | | | RE: Bellevue Tele Data Cabling FOR PRICING ONLY | | | | | |
| | | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| | | | | *** Text changed*** | | | | | |
| 00030 | 1 | LOT | | PO4320030289 Increase | 07/18/2008 | 8,570.18 | I1 | 762.75 | 8,570.18 |
| | 6 | 500% | State | | | | | | |
| | 2 | 000% | City | | | | | | |
| | 0 | 400% | District | | | | | | |

Page Total         USD         8,570.18

Luis Castillo Aldu
BUYER

Nortel is an Equal Opportunity / Affirmative Action Employer

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

# NORTEL   Purchase Order

Page 2 of 5

| Order Date: | 02/22/2008 |
|---|---|
| Last Change Date: | 07/23/2008 |

| Supplier No: | 456633 |
|---|---|
| Contract No: | 06-170 |

**Purchase Order No:** 4320030789
This number must appear on all invoices, packages, packing slips, and customer items.

**Supplier Contact:**
Dave Polak.

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3658
Fax No: 630-990-2300

**Ship to:**  Phase See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms |
|---|
| Net 45 Days |

| Buyer: | Luis Castillo Aldu |
|---|---|
| Telephone No: | 6258526854 |
| Fax: | |

| Item No | Carrier Number/Carrier Name | Qty | UOM | Part No | Incoterms/ DDP | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 000040 | NN | 1 | LOT | | | PO4320030289 Increase JCI Fee | 07/18/2008 | 214.25 | I1 | 19.67 | 214.25 |
| | Nortel | 6.150% | | | | | | | | | |
| | 333 108th Avenue NE Suite 2000 | 2.000% | | | | | | | | | |
| | Bellevue WA 98004 | 0.400% | | State | | | | | | | |
| | *** New item*** | | | City | | | | | | | |
| | | | | District | | | | | | | |
| | NN | | | | | | | | | | |
| | Nortel | | | | | | | | | | |
| | 333 108th Avenue NE Suite 2000 | | | | | | | | | | |
| | Bellevue WA 98004 | | | | | | | | | | |
| | *** New item*** | | | | | | | | | | |

Goods Recipient: HAYES KENNETH
This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel.

| | | |
|---|---|---|
| Page Total | USD | 214.25 |
| Tax Amount | USD | 781.82 |
| Total Amount | USD | 9,566.25 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

**PURCHASE ORDER TERMS AND CONDITIONS**

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services, to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation acknowledgment or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of the class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 75 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued.

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or assume otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach or any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify, hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, furnish to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(n), 60-741.5(n) and 29 C.F. R. part 470,

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP) Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium, cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the goods under this LU, except where exceptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability, and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser, or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations Intentional Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified, only in a writing signed by a duly authorized representative of the party to be charged with an obligation; under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order, Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchase shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from theft, defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods, at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall, as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**
All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof becomes defective, Supplier at no cost to Purchaser shall correct such defect.
Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2.Services to be Rendered at Purchaser's Premises**
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3.Security Rules/Procedures**
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4.Disruption of Business**
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all clean-up costs and costs of restoring Purchaser's premises to its original condition.

**S5.Waiver of Lien**
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6.Independent Contractor**
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7.Title**
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of this services.