# NORTEL

## Purchase Order

| Purchase Order No: 4320030289 | Order Date: 09/13/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 07/23/2008 |

Page 1 of 6

Supplier No: 458533
Contract No: 05-170

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3368
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Dave Polak.

Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No: 525626268854 |
| Net 45 Days | Luis Castillo Aldu | Fax: |

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
| | | | PO Delivery Date - 07/18/2008 | | | | | | |
| | | | Header text | | | | | | |
| | | | ***CHANGE ORDER #1***07/23/2008*** | | | | | | |
| | | | CHANGE ORDER ISSUED TO INCREASE PO AMOUNT IN $8,784.43 USD. | | | | | | |
| | | | NEW PO TOTAL 574,224.39 USD. | | | | | | |
| | | | ************************************* | | | | | | |
| | | | TYPE OF EXPENSE: CAPITAL | | | | | | |
| | | | RE: Bellevue Tele Data Cabling FOR PRICING ONLY | | | | | | |
| | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED | | | | | | |
| | | | HEREIN. IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE | | | | | | |
| | | | ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING | | | | | | |
| | | | INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | | |
| | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | | |
| 00010 | 1 | EA | NN | Bellevue Tele Data Cabling | 07/18/2008 | 63,843.86 | T1 | 0.00 | 63,843.86 |
| | | | Nortel | | | | | | |
| | | | 333 108 Ave NE | | | | | | |
| | | | Bellevue Washington WA 98004 | | | | | | |

| Page Total | | 63,843.86 |
| USD | | |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007 07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No. 4320030289 | Order Date: 03/13/2008 |
| This name must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 07/23/2008 | Page 2 of 6 |

Supplier Contact:
Dave Polak.

Supplier:
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:    Please See Delivery Address at Line Item

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

Supplier No: 458533
Contract No: 05-170

Telephone No. 52552626B854
Fax:

Buyer:
Luis Castillo Addu

| Carrier Number/Carrier Name: | | Incoterms: DDP | | Payment Terms: Net 45 Days | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
| | | | *** Item completely delivered*** | | | | | | |
| 00020 | 1 | EA | | JCI management fee @ 2.5% | 07/18/2008 | 1,596.10 | T1 | 0.00 | 1,596.10 |
| | | | NN Nortel 333 108 Ave NE Bellevue Washington WA 98004 *** Item completely delivered*** | | | | | | |
| | | | 6 500% State | | | | | | |
| | | | 2 000% City | | | | | | |
| | | | 0 400% District | | | | | | |
| 00030 | 1 | LOT | PO4320030289 Increase | | 07/18/2008 | 8,570.18 | I1 | 762.75 | 8,570.18 |
| | | | NN Nortel 333 108th Avenue NE Suite 2000 Bellevue WA 98004 | | | | | | |
| | | | 6 500% State | | | | | | |
| | | | 2 000% City | | | | | | |
| | | | 0 400% District | | | | | | |
| 00040 | 1 | LOT | PO4320030289 Increase JCI Fee | | 07/18/2008 | 214.25 | I1 | 19.07 | 214.25 |
| | | | 6 500% State | | | | | | |
| | | | 2 000% City | | | | | | |
| | | | 0 400% District | | | | | | |
| | | | | Page Total | | | | USD | 10,380.53 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Luis Castillo Alda
BUYER

Nortel Networks IP72007-07/2N        Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| **Purchase Order No:** 4530010289 | **Order Date:** 03/13/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | **Last Change Date:** 07/23/2008  **Page** 3 **of** 6 |

**Supplier Contact:**
Dave Polak.

**Supplier No:** 458533
**Contract No:** 06-170

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| **Payment Terms:** | **Incoterms:** | **Buyer:** | **Telephone No:** 525526268854 |
|---|---|---|---|
| Net 45 Days | DDP | Luis Castillo Aldu | **Fax:** |

| Item No. | Qty | UOM | Part No | Description | Ship Date | Tax Code | Tax Value | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | NN Nortel 333 108th Avenue NE Suite 2000 Bellevue WA 98004 | | | | | | |
| | | | | Goods Recipient: HAYES KENNETH | | | | | |
| | | | | This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by Nortel. | | | | | |

| | | | |
|---|---|---|---|
| Page Total | | USD | 0.00 |
| Tax Amount | | USD | 781.82 |
| Total Amount | | USD | 75,006.21 |

**Carrier Number/Carrier Name:**

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19601-1120
USA

Nortel Networks IP7200T-077EN — Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

**PURCHASE ORDER TERMS AND CONDITIONS**

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order, Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 471;

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics

19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

### G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

### G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

### G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

### G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** -- If this Order is for services, the following paragraphs are also included in this Order:

### S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

### S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

### S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

### S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

### S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

### S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# NORTEL

## Purchase Order

| Purchase Order No: 4320040028 | | Order Date: 03/13/2008 | Page 1 of 4 |
| This number must appear on all invoices, packages, packing slips and customs forms. | | Last Change Date: 03/13/2008 | |
| | | Supplier No: 458533 | |
| | | Contract No: 06:170 | |

Supplier:

Johnson Controls Inc
2215 York Road
Drake Plaza, Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:
NN
Nortel
313 108 Ave NE
BELLEVUE WASHINGTON WA 98004
USA

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No. 5255262870θ |
| Net 45 Days | Gustavo Torres | Fax: |

| Item No. | Carrier Number/Carrier Name. | Cty | UOM | Part No | Incoterms: DDP | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | PO Delivery Date - 04/10/2008 | | | | | |
| | | | | | | Header text | | | | | |
| | | | | | | RE: Bellevue Tele Data Cabling FOR PRICING ONLY | | | | | |
| | | | | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | | 1 | EA | | | Bellevue Tele Data Cabling | 04/10/2008 | 63,843.86 | T1 | 0.00 | 63,843.86 |
| 00020 | | 1 | EA | | | JCI management fee @ 2.5% | 04/10/2008 | 1,596.10 | T1 | 0.00 | 1,596.10 |
| | | | | | | Goods Recipient: HAYES KENNETH | | | | | |
| | | | | | | This purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by | | | | | |
| | | | | | | Nortel. | | | | | |

| | Page Total | USD | | 65,439.96 |
| | Tax Amount | USD | | 0.00 |
| | Total Amount | USD | | 65,439.96 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP7200/-U77EN        Nortel is an Equal Opportunity / Affirmative Action Employer

Page 2 of 4

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 20 days ("Payment Period") measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational diseases;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Pait, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

Revised 1/17/08

Page 3 of 4

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with: all applicable laws and governmental orders and regulations in effect at the time of delivery(ics) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity/ Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body, or other third party resulting from any non compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause causes Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to obtain a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications, understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally, and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for conveniences only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order, Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order.

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order; (b) shall be free of any liens or encumbrances; (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

SERVICES -- If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services in be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor, and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest in all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right in cause derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees' and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER

# 4320034693

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 04/11/2008 |
| Last Change Date: | 08/11/2008 | Page 1 of 7 |

| | |
|---|---|
| Supplier No: | 458533 |
| Contract No: | 06-170 |

**Purchase Order No:** 4320034683
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Dave Polak

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:** Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Payment Terms:**
Net 45 Days

**Buyer:**
Luis Castillo Aldu

**Telephone No:** 52552626885 4
Fax:

| Carrier Number/Carrier Name: | | | Incoterms:<br>DDP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax<br>Code | Tax<br>Value | Extended Total |

PO Delivery Date - 07/18/2008

Header text
****CHANGE ORDER #1**07/25/2008***
CHANGE ORDER ISSUED TO INCREASE PO AMOUNT IN $11,104.87 USD.
NEW PO TOTAL $74,500.76 USD
**************************************************

THIS PO IS IN RESPONSE TO:
Project Management Services Proposal
Nortel Bellevue
Project Manager:Lee Rose
Date:11/19/07
Type of expense:Cost Center
FOR PRICING ONLY

| | | | |
|---|---|---|---|
| Page Total | USD | | 0.00 |

*[signature]*
Luis Castillo Alan
BUYER

**Nortel Networks Inc.**
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4321I0234659 | Order Date: 04/11/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 08/11/2008 | Page 2 of 7 |

| Supplier Contact: | Supplier No: 458533 |
| Dave Polak | Contract No: 06-170 |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship To:** Please See Delivery Address at Line Item

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No: 525526268854 |
| Net 45 Days | Luis Castillo Aldu | Fax: |

| Carrier Number/Carrier Name: | | IncoTerms: DDP | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
| | | | | **Terms of delivery** | | | | | |
| | | | | 1. THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER ARE COVERED BY THE CONTRACT REFERENCED HEREIN AND FILE WITH NORTEL NETWORKS SUPPLY MANAGEMENT | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT AT (naap-expl@nortel.com) | | | | | |
| | | | | 4. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| 00010 | 1 | EA | NN | Installation of Bellevue relocated £ | 07/18/2008 | 61,849.65 | T5 | 0.00 | 61,849.65 |
| | | | Nortel 333 108th Avenue NE, Suite 2000 Bellevue WA 98004 | | | | | | |
| 00020 | 1 | EA | | JCI Mgmt fee. | 03/31/2008 | 1,546.24 | T5 | 0.00 | 1,546.24 |
| | | | | | Page Total | | USD | | 63,395.89 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4320034693 | Order Date: 04/11/2008 | Page 3 of 7 |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 08/11/2008 | |

Supplier Contact:
Dave Polak

Supplier No: 459533
Contract No: 06-170

**Please See Delivery Address at Line Item**

Supplier:
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

Buyer:
Luis Castillo Aldu

Telephone No: 5265262628854
Fax:

| Item No. | Carrier Number/Carrier Name: | Qty | UOM | Part No | | Incoterms: DDP | Description | Payment Terms: Net 45 Days | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00030 | | 1.000 | LOT | NN Nortel 333 108th Avenue NE, Suite 2000 Bellevue WA  98004 | | | JCI 2.5% Admin Fees | | 03/31/2008 | 270.85 | I1 | 24.38 | 270.85 |
| | | 6 | 500% | State | | | | | | | | | |
| | | 2 | 100% | City | | | | | | | | | |
| | | 0 | 400% | District | | | | | | | | | |
| 00040 | | 1.000 | LOT | NN Nortel 333 108th Avenue NE, Suite 2000 Bellevue WA  98004 | | | PO4320034693 Increase - CO#13 | | 07/18/2008 | 10,834.02 | I1 | 975.06 | 10,834.02 |
| | | 6 | 500% | State | | | | | | | | | |
| | | 2 | 100% | City | | | | | | | | | |
| | | 0 | 400% | District | | | | | | | | | |
| | | | | NN Nortel 333 108th Avenue NE, Suite 2000 Bellevue WA  98004 | | | | | Page Total | | USD | | 11,104.87 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Luis Castillo Aldu
BUYER

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# N✪RTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No. 4320034693 | Order Date: 04/11/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 08/11/2008 |
| | Page 4 of 7 |
| Supplier Contact: | Supplier No: 458533 |
| Dave Polak | Contract No: 06-170 |

**Supplier:**

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 610-990-2300

**Ship to:** Please See Delivery Address at Line Item

**Bill to:**

Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| | |
|---|---|
| Payment Terms: | Buyer: |
| Net 45 Days | Luis Castillo Aldu |
| Incoterms: | Telephone No: 5255262BB854 |
| DDP | Fax: |

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Goods Recipient: HAYES KENNETH | | | | | |
| | | | | This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel. | | | | | |

Carrier Number/Carrier Name:

| | | |
|---|---|---|
| | Page Total | USD 0.00 |
| | Tax Amount | USD 999.44 |
| | Total Amount | USD 75,500.20 |

Luis Castillo Alu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN —————— Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

## NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgment or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:

(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or

(b) method of shipment or packaging; and/or

(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory worker's compensation and occupational disease;

(b) Employer's liability - $1,000,000.00;

(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and

(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.

This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including, without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470;

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium, cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

### 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

### 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

### 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion material, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

### 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

### 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

### 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

### 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

### 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

### 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

### 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

### 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

### G1. Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

### G2. Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such items and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited in the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

SERVICES – If this Order is for services, the following paragraphs are also included in this Order.

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# PURCHASE ORDER

# 4320026046

# NORTEL

## Purchase Order

| | | |
|---|---|---|
| Order Date: | 03/14/2008 | Page 1 of 4 |
| Last Change Date: | 02/14/2008 | |
| Supplier No: | 458533 | |
| Contract No: | 06-170 | |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Purchase Order No: 4320026046**
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Martin Muturi

**Ship to:**
NN
Nortel
333 108th Avenue NE Suite 2000
BELLEVUE WA  98004
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Incoterms: |
|---|---|
| Net 45 Days | DDP |

**Buyer:** Gustavo Torres
**Telephone No:** 525526268709
**Fax:**

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Start Date - 03/31/2008 | | | | | |
| | | | | Header text | | | | | |
| | | | | RE: Nortel # Bellevue | | | | | |
| | | | | Office Relocation from: | | | | | |
| | | | | 1120 112th NE Ave | | | | | |
| | | | | Bellevue, WA 98004 | | | | | |
| | | | | 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH NO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | 1.000 | LOT | | Bellevue Furniture Relocation | 03/31/2008 | 45,000.00 | T5 | 0.00 | 45,000.00 |
| 00020 | 1.000 | LOT | | JCI PM Fees | 03/31/2008 | 1,125.00 | T5 | 0.00 | 1,125.00 |
| | | | | | | | | | |
| | | | | Page Total | | | USD | | 46,125.00 |

Signature: _Gustavo Torres_
Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IF/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4320028046 | Order Date: 02/14/2008 |
|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 02/14/2008 |

Page 2 of 4

| Supplier No.: 458533 |
|---|
| Contract No.: 06-170 |

**Supplier:**

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**

Supplier Contact:
Martin Muturi

NN
Nortel
333 108th Avenue NE Suite 2000
BELLEVUE WA  98004
USA

**Bill to:**

Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Incoterms: DDP | Payment Terms: Net 45 Days |
|---|---|

| Buyer: Gustavo Torres | Telephone No: 525520268709 |
|---|---|
| | Fax: |

| Carrier Number/Carrier Name: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
| | | | | Goods Recipient: This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by Nortel. | | | | | |
| | | | | | | | | | |

| | | | Page Total | | USD | | 0.00 |
|---|---|---|---|---|---|---|---|

| Tax Amount | | USD | 0.00 |
|---|---|---|---|
| Total Amount | | USD | 46,125.00 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

## Nortel — confidential. Purchase Order terms & conditions

**NORTEL NETWORKS INC. ("PURCHASER") TAX CODE GENERAL GUIDELINES**

Conversion of AP-Applied Status Selection Tax

The following is a list of the requirements for the United States sales/use tax reporting for the Nortel Networks tax

The three digits that will be used on the P.O.'s are described below:

First Digit—United States
U US No Federal taxes
Second digit—Represents whatever State/Local tax is appropriate or not
T Taxable Local Tax Applicable
E State/Local Tax Exempt

Third digit – Represents special purchasers billing contingent by Nortin Carolina (NC) direct pay permit holder (codes 0-3)
0 North Carolina (NC) ship to: No tax due on purchases.
1 North Carolina (NC) ship to: Single Article greater than 80,000. Tax rate of 1%, 500 Max Tax
2 North Carolina (NC) ship to: Tax rate at 1% of invoice
3 North Carolina (NC) ship to: Taxable at Full Rate
4 TN (DASH) ship to; Single Article Limit greater than $1600 per line item, per unit price greater  then $1600)
5 Taxable (Ship to Destination State except for codes 0-3)
6 Exempt (Ship To Destination Any State)

## PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

Supplier's acceptance of the Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser or by the commencement of performance of services. Supplier shall not be entitled to any additional terms set forth by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provisions is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Notwithstanding anything contained in this order(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Purchaser will pay Supplier within 65 days to calendar year 2005, 67 days in calendar year 2007 and 70 days in calendar year 2008 and thereafter, in each case measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the payment period applicable under the preceding sentence, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) like charges for insurance, import duties, packaging, transportation and any other fees or expenses relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services, or make a change in any one or more of the following:

(a) specifications, drawings, designs or other descriptions;
(b) methods of shipment or packaging; and/or
(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the time required for performance of this Order, Supplier shall notify Purchaser in writing and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 70 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier (irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of the Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, Supplier shall not be entitled to any such reimbursement. Purchaser may pursue concurrently in addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue concurrently against Supplier any available remedies at law or equity, in no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be

performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

(a) Supplier shall defend, indemnify and hold Purchaser and its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverables form or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of work provided in this Order. Purchaser reserves the right, in its discretion and at its own expense, to be represented by its own counsel in any action, claim or suit brought by a third party against Purchaser or Supplier, and to participate in the defense thereof. In any action by a third party against Purchaser, Purchaser and/or its customers, Purchaser enlist its customers, Purchaser shall participate in the terms of this Order or Supplier's negligence or other tort. Supplier's negligence or negligence as per or Supplier shall indemnify and hold of performance, loss and to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory workers' compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $1 million;
(d) Automobile liability, including non-owned automobile liability for both personal injury and property damage - $1 million.

This certificate of insurance shall name Purchaser as an additional insured and contain a clause needing that the insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4006 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27703. All Purchaser's within respect, Supplier shall maintain adequate coverage amounts of other types of insurance.

**9. Laws and Regulations**

Supplier shall comply with all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall not Assist Purchaser in complying with all applicable laws and governmental orders, and in performing its obligations shall, if applicable and to the extent applicable to its work, including without limitation, the following:

(a) Fair Labor Standards Act of 1938; Contract Work Hours & Safety Act of 1962, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, Hazardous Materials Transportation Act, Veterans Reacting Assistance Act of 1974, Rehabilitation Act of 1973, and those with Disabilities Act, Executive Order 11246 (September 24, 1965) and the clauses set forth in Federal Acquisition Regulation (subject to "Contractor", "Subcontractor" and "Contract" used in such clause meaning Purchaser, Supplier and Order, respectively) 52.219-8, 52.219-9, 52.219-13, 52-225.5, 52.222-26, 52.222-35, 52.222-36, 52.225-21, 52.219-9 (subparagraphs (b)(1)(1), 52.222-35, 52.222-36 and 52.223-21, each of which clauses are incorporated herein by reference and shall be in full text; and
(b) the following European Union Environmental Directives; Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB) or polybrominated diphenyl ethers (PBDE) are present in any product, product, or the products covered under the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions affecting the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with these regulations. Supplier hereby indemnifies, defends, and holds Company harmless from all taxes, liabilities, fees, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer or governmental body or other third party (including any non-compliance by Supplier with these regulations) for the WEEE and RoHS directives. Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

**10. Confidentiality**

Unless otherwise agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall not be used

Page 1 of 2 rev 08-2006

# Nortel

# Terms and Conditions

## Nortel—confidential Purchase Order terms & conditions

Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third parsons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

**12. Use of Purchaser's Name.**
Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser in any version thereof or language then which the connection of said names may be implied without Purchaser's prior written approval.

**13. Force Majeure**
Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party so failing to perform, including but not limited to acts of God, acts of the public enemy, acts of government, fires, floods, helpful employees or unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraphs 5.

**14. Governing Law**
This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

**15. Paragraph Headings**
Paragraph headings are provided for convenience only and shall not be used to interpret this Order.

**16. Waiver**
The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

**17. Business Pursuant to Master Agreement**
In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall prevail.

**18. Entire Agreement**
This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived only and may be modified only in a writing signed by a duly authorized representative of the party to be changed with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret the Order.

**19. Business Ethics**
By its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

**20. Time of the Essence**
Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.
**GOODS** — If this Order is for goods, the following paragraphs are also included in this Order:

**G1. Warranty**
Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

**G2. Special Products**
Supplier covenants that for the period of one year to such other period specified on the face of the Order following acceptance of the goods that they so shall that conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which are electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly thereafter, at its option, correct, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not replace or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and Purchaser shall be entitled to make the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

Unless otherwise provided in the face of this Order, any freight or any dealer's special discount, special duce, tools, patterns or equipment employed for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall, as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4. Risk of Loss**
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5. Delivery**
Goods delivered prior to the required delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and may be returned to Supplier at Supplier's risk and expense.

**G6. Free Trade Certification of Origin**
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement (NAFTA). If goods qualify, Supplier shall prepare and provide a certificate of origin as otherwise specified by Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7. Packing**
All goods shall be suitably packed for shipment to prevent damage.
**SERVICES** — If this Order is for services, the following paragraphs are also included in this Order:

**S1. Warranty**
Supplier warrants that for the period of one year or such other period specified on the face of the Order following the completion of the services that the services and/or any deliverable items or work product in connection with the services shall conform to the description of the services ordered and (b) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year of such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods. Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier its agents or subcontractors, performing all of Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will at any time be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment to the Hagel use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and removal of debris resulting from Supplier's performance of its premises to its original condition.

**S5. Waiver of Lien**
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**
Supplier in every form, transfers, assigns and conveys to Purchaser all the right, title and interest to all the assets and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all works, designs, sketches, models, mock works and any other intellectual property. Supplier shall execute, and agrees to have its employees and subcontractors execute, all additional charge to Purchaser, any documents required in evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain properly owned by Supplier. Supplier hereby grants Purchaser a non-exclusive, royalty free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

**S7. Title**
These terms and conditions apply to the following Purchase Order issued on the date referenced.

# PURCHASE ORDER

# 4320041612

# NORTEL

## Purchase Order

| Purchase Order No: 4320041612 | | |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | | |
| Order Date: 06/02/2008 | | |
| Last Change Date: 06/02/2008 | | Page 1 of 5 |

**Supplier Contact:**
Martin Muturi

Supplier:
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

| Supplier No: 45N533 | |
|---|---|
| Contract No: 05-470 (9904) | |

**Ship to:**
NN
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Buyer: Luis Castillo Aldz | |
|---|---|
| Telephone No: 5255256268854 | |
| Fax: | |

| Carrier Number/Carrier Name: | | | Incoterms: DDP | Payment Terms: Net 45 Days | | |
|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No. | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PO Delivery Date - 05/28/2008 | | | | | |
| | | | | **Header text** | | | | | |
| | | | | THIS PO IS IN RESPONSE TO: | | | | | |
| | | | | PROJECT (ER# 87780 ) RTP Hub Consolidation | | | | | |
| | | | | CHANGE ORDER NUMBER: #19 | | | | | |
| | | | | CHANGE ORDER TITLE: Executive Board Room Addtl Upgrades | | | | | |
| | | | | DATE: March 28, 2008 | | | | | |
| | | | | FOR PRICING ONLY | | | | | |
| | | | | **Terms of delivery** | | | | | |
| | | | | 1. THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER ARE COVERED BY THE CONTRACT REFERENCED HEREIN AND FILE WITH NORTEL NETWORKS SUPPLY MANAGEMENT | | | | | |
| | | | | 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT AT (naap4expl@nortel.com) | | | | | |
| | | | | 4. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| 000010 | 1 | LOT | | Change Order #19-RTP Hub Consolidati | 05/28/2008 | 15,900.00 | T1 | 0.00 | 15,900.00 |
| | | | | | | **Page Total** | | USD | 15,900.00 |

Luis Castillo Aldz
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

NORTEL NETWORKS IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4320041612<br>This number must appear on all invoices, packages,<br>packing slips and customs forms. | Order Date: 06/02/2008<br>Last Change Date: 06/02/2008 | Page 2 of 5 |
| --- | --- | --- |

Supplier:

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Supplier Contact:
Martin Muturi

Supplier No: 458533
Contract No: 06-170 (9904)

Ship to:
NN
Nortel
4001 E. CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-3010

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| | | |
| --- | --- | --- |
| Payment Terms:<br>Net 45 Days | Buyer:<br>Luis Castillo Aldu | Telephone No: 525526268854<br>Fax: |

| Carrier Number/Carrier Name: | | | | Incoterms:<br>DDP | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |

| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax<br>Code | Tax<br>Value | Extended Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 00020 | 1 | LOT | | JCI Project Management Fee 2.5% | 05/28/2008 | 397.50 | T1 | 0.00 | 397.50 |
| | | | | Goods Recipient: PARKER JR WILLIAM<br>This purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by<br>Nortel. | | | | | |

| | | | | | | Page Total | USD | | 397.50 |
| | | | | | | Tax Amount<br>Total Amount | USD<br>USD | | 0.00<br>16,297.50 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP72007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

**PURCHASE ORDER TERMS AND CONDITIONS**

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may, at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest therein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following, obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such items and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**
All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (f) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.
Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2.Services to be Rendered at Purchaser's Premises**
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3.Security Rules/Procedures**
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4.Disruption of Business**
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5.Waiver of Lien**
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6.Independent Contractor**
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7.Title**
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# USC510211



# NØRTEL NETWORKS

**NORTEL NETWORKS (CALA) INC.**
1500 CONCORD TERRACE
SUNRISE, FL 33323

(This no. must appear on all invoices, packages, packing slips and customs forms)

Purchase order no    **USC510211**

Order date    07/16/2007    Page no    1
Change no

Bill to
NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

Supplier
JOHNSON CONTROLS INC
2215 YORK ROAD
DRAKE PLAZA SUITE 110
OAK BROOK, IL
60523, UNITED STATES

Attn: DAVE POLAK

Ship to
NORTEL NETWORKS (CALA) INC.
(954)851-8000
1500 CONCORD TERRACE
SUNRISE, FL USA
33323-2815

| Supplier code | Contract no/Ref | Terms | | Tax point | Project no | Project no | Tax | EUR no. Association |
|---|---|---|---|---|---|---|---|---|
| 72698304 | 06-170 | | | | | | 12 | 501 |

| No. | Line no. | Quantity | Unit | Description | Due | Date | Unit cost | Extended cost |
|---|---|---|---|---|---|---|---|---|
| C | 1 | F. ARRIZA | | Supplier please address all queries to MIGUEL MUNIZ | | .15255 26268711. | | |

Ref  0358  Ship date  2330  Project no  2477679

Supplier please address all queries to MIGUEL MUNIZ

Reference Supply Agreement # 06-170

RE: "BID PROPOSAL FOR SECURITY UPGRADE AND 5TH
FLOOR TENNANT IMPROVMENTS" DATED JUN/01/07 AND
REVISED JUL/01/07.
DO NOT EXCEED $303,912.50 USD.
PERIOD COVERED: JUL/01/07 - OCT/19/2007.

IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR
PAYMENT REFERENCE THE ABOVE MENTIONED PURCHASE
ORDER NUMBER AND SHIP TO INFORMATION.
INVOICES SUBMITTED WITHOUT A PURCHASE ORDER
NUMBER WILL BE TREATED AS A DISPUTED INVOICE
SUBJECT TO BEING RETURNED UNPAID FOR YOUR
CORRECTION AND RESUBMISSION.

Total for this Page

Currency
USD

Terms
NET 45

Total Amount    ***********.00

Subject to terms and conditions supplied with this PO

Covering this PO copy to the original Purchase Order no other copies will follow.
Nortel Networks is an Equal Opportunity / Affirmative Action Employer

PAGE 001 OF 004

07/16/2007 05:48PM
FAXCOM



## NORTEL NETWORKS

NORTEL NETWORKS (CALA) INC.
1500 CONCORD TERRACE
SUNRISE, FL 33323

Order date: 07/16/2007  Page no. 2
Change date:  Change no.

(This no. must appear on all invoices, packages, packing slips and customs forms.)
Purchase order no. USC510211

**Supplier**
JOHNSON CONTROLS INC
2215 YORK ROAD
DRAKE PLAZA SUITE 110
OAK BROOK, IL
60523, UNITED STATES

Attn: DAVE POLAK

**Ship to**
NORTEL NETWORKS (CALA) INC.
(954) 851-8000
1500 CONCORD TERRACE
SUNRISE, FL USA
33323-2815

**Bill to**
NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

Enquiries: 7269830u  Buyer:  Registered no. 2u77679

Importer: T.F. ARAIZA

Part no. 0358  Mail flag 2330  Currency USD  Payment terms NET u5

| To | Item/Quantity | Unit | Description | Date | | | Unit cost | Extended cost | Asset no. |
|----|---------------|------|-------------|------|---|---|-----------|---------------|-----------|
| 1 * 1 | 1 | LOT | Part Number: N/A<br>DEMISE WORK FOR CONVERTING SUNRISE INTO A<br>MULTI-TENANT BUILDING (FLOORS 1-4) | | | | 296500.000 | 296500.00 | 501 |
| 1 * 2 | 1 | LOT | Part Number: N/A<br>2.5% MANAGEMENT FEE | | | | 7412.5000 | 7412.50 | |
| | | | THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER<br>ARE COVERED BY THE CONTRACT REFERENCED HEREIN<br>AND ON FILE WITH NORTEL NETWORKS SUPPLY<br>MANAGEMENT. | | | | | | |

INVOICES MAY BE SENT VIA EMAIL DIRECTLY TO THE
ACCOUNTS PAYABLE DEPT AT: naapexp1@nortel.com
ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS
SHOULD BE DIRECTED TO THE ACCOUNTS PAYABLE DEPT.
AT 1-800-684-2228 OR www.nortel.com/naapinquiry

Total Amount  ***303912.50

BUYER:
MIGUEL MUNIZ

MANAGER
ANDRES-LIBARDO RAMIREZ

Subject to terms and conditions supplied with this PO
Nortel Networks is an Equal Opportunity / Affirmative Action Employer

PAGE 002 OF 004
07/16/2007 05:48PM

# Nort — confidential. Purchase Order terms & conditions

## SEE ORDERING AND CONDITIONS

07/16/2007

Nortel - confidential   Purchase Order terms & conditions

USC510211

07/16/2007

# PURCHASE ORDER
# 4320059424

# NORTEL    Purchase Order

| | | |
|---|---|---|
| Purchase Order No.: 4320059424<br>This number must appear on all invoices, packages, packing slips and customs forms. | Order Date: 10/29/2008<br>Last Change Date: 10/29/2008 | Page 1 of 5 |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Martin Muturi

Jean Pelland
Nortel
150 Concord Terrace
SUNRISE FL 33323-2815
USA

Supplier No: 458533
Contract No: 06-170 (5904)

**Bill to:**
Nortel Networks Incorporated (0313 / 2002)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms:<br>Net 45 Days | Buyer:<br>Luis Castillo Aldu | Telephone No: 525526268854<br>Fax: |
|---|---|---|

**Incoterms:**
DDP

| Carrier Number/Carrier Name: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax<br>Code | Tax<br>Value | Extended Total |
| | | | | PO Delivery Date - 10/29/2008 | | | | | |
| | | | | **Header text**<br>PO NOT TO EXCEED $6,643.85 USD<br>REFERENCE : NORTEL SUNRISE DEMISING - Niscayah Proposal<br>DATED: September 25, 2008<br>FOR PRICING ONLY | | | | | |
| | | | | **Header note**<br>Project name: Sunrise Demisig<br>Project manager: Rich Shoum<br>Expenditure type : Capital<br>**Terms of delivery**<br>1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE<br>2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED<br>HEREIN.<br>3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE<br>ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING<br>INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER.<br>4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO<br>naap@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE<br>DEPARTMENT AT 1-800-262-1228) or www.nortel.com/naapinquiry<br>5. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING<br>SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| | | | | | Page Total | | USD | | 0.00 |


Luis Castillo Aldu
BUYER

Nortel Networks (CALA) Inc
CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324-4413
USA

Nortel Networks II/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| | | |
|---|---|---|
| | | Page 2 of 5 |

| Order Date: | 10/29/2008 |
|---|---|
| Last Change Date: | 10/29/2008 |

| Supplier No: | 458633 |
|---|---|
| Contract No: | 06-170 (9904) |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Purchase Order No:** 4320059424
This number must appear on all invoices, packings,
packing slips and customs forms.

**Ship to:**
Supplier Contact:
Martin Muturi

Jean Pelland
Nortel
150 Concord Terrace
SUNRISE FL  33323-2815
USA

**Bill to:**
Nortel Networks Incorporated (0313 / 2002)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | | Buyer: | | Telephone No: 52552626854 |
|---|---|---|---|---|
| Net 45 Days | | Luis Castillo Aldu | | Fax: |

| Carrier Number/Carrier Name: | | | | Incoterms: | | |
|---|---|---|---|---|---|---|
| | | | | DDP | | |

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00010 | 1 | LOT | State | Sunrise Demising - Maglocks | 10/31/2008 | 6,676.93 | T1 | 400.62 | 6,676.93 |
| | 6 | 000% | | | | | | | |
| 00020 | 1 | LOT | State | PW Admin fees | 10/29/2008 | 166.92 | T1 | 10.02 | 166.92 |
| | 6 | 000% | | | | | | | |

Goods Recipient: PELLAND JEAN
This purchase order is subject to the Nortel Networks standard PO Terms & Conditions unless specified by
Nortel.

| | | | |
|---|---|---|---|
| Page Total | USD | | 6,843.85 |
| Tax Amount | USD | | 410.64 |
| Total Amount | USD | | 7,254.49 |

Luis Castillo Aldu
BUYER

Nortel Networks (CALA) Inc
CT Corporation System
1200 South Pine Island Road
Plantation, FL 33324-4413
USA

Nortel Networks 10/2007-07/EN          Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

**PURCHASE ORDER TERMS AND CONDITIONS**

**1. Acceptance**
Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**
Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Changes**
Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**
Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**
Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**
Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**
Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with, and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F. R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F. R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any chain or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics - by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and Underwriter's Laboratory (UL) requirements. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### G3. Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment procured for the manufacture of the goods shall be furnished by Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

### G4. Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

### G5. Delivery

Goods delivered prior to the reputed delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

### G6. Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

### G7. Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

### S1. Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

### S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

### S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

### S5. Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

### S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

### S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.