# PURCHASE ORDER
# 4320056436

# N🌐RTEL

## Purchase Order

Supplier:

Johnson Controls Inc
2215 York Road
Drake Plaza, Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

| Purchase Order No. 4320056438 | Order Date: 09/30/2008 | |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 09/30/2008 | Page 1 of 6 |
| | Supplier No: 458533 | |
| | Contract No: 06-170 (9904) | |

Supplier Contact:
Martin Muturi

Ship to:
Jean Pelland
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | | Telephone No: 52552258854 |
|---|---|---|
| Net 45 Days | Buyer: Luis Castillo Aldu | Fax: |

| Item No. | Carrier Number/Carrier Name: | | | Incoterms: DDP | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |

PO Delivery Date - 09/26/2008

**Header text**
PO NOT TO EXCEED $209,469.84 USD
REFERENCE: PROJECT: Nortel # MATAWAN
Submission Date:09/25/2006
FOR PRICING ONLY

**Header note**
Project name: Matawan
Project manager: Neb Frisbee
Expenditure Type : Capital

| | | | |
|---|---|---|---|
| Page Total | USD | | 0.00 |

Luis Castillo Ald.
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 1P/2007-077/EN          Nortel is an Equal Opportunity / Affirmative Action Employer          C

# NORTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No.: 4320056435 | Order Date: 09/30/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 09/30/2008 |
| | Page 2 of 6 |
| | Supplier No.: 458533 |
| | Contact No.: 05-170 (99004) |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza, Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Martin Mucuri

Jean Pellard
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 20011)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | Buyer: Luis Castillo Aldu | Telephone No: 525526365854 Fax: |
|---|---|---|

| Carrier Number/Carrier Name: | | | Incoterms: DDP | |
|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **Terms of delivery** 1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE 2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. 4. PLEASE SEND OR ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapinquiry. ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry 5 NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT. ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| 00010 | 1 | LOT | | Matawan Construction Work | 09/26/2008 | 204360.82 | T1 | 0.00 | 204,360.82 |
| 00020 | 1 | LOT | | JCI PM Admin fees | 09/26/2008 | 5,109.02 | T1 | 0.00 | 5,109.02 |
| | | | | | Page Total | | USD | | 209,469.84 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 19/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL

## Purchase Order

| Purchase Order No. 4370056438 | Order Date: 09/30/2008 | Page 3 of 6 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 09/30/2009 | |

| | Supplier No. 458533 |
| | Contract No. 06-170 (9904) |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza, Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**
Martin Maturi

**Ship to:**
Jean Pelland
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | | |
| Net 45 Days | | |

| Incoterms: | Telephone No: 525526268854 |
| DDP | Fax: |

**Buyer:**
Luis Castillo Aldu

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Goods Recipient: PELLAND JEAN | | | | | |
| | | | | This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by Nortel. | | | | | |

| | | | | | Page Total | USD | | | 0.00 |
| | | | | | Tax Amount | USD | | | 0.00 |
| | | | | | Total Amount | USD | | | 209,469.84 |

**Carrier Number/Carrier Name:**

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 19/2007-077/EN ------- Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60.1-4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all, losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property right pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that outside and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320052307

# NORTEL

## Purchase Order

| | |
|---|---|
| Order Date: 08/27/2008 | |
| Last Change Date: 08/26/2008 | Page 1 of 5 |

**Purchase Order No:** 4320062307
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier No:** 458533
**Contract No:** U6-170 (9904)

**Supplier:**
Johnson Controls Inc.
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Supplier Contact:**

**Ship to:**
NN
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

**Payment Terms:**
Net 45 Days

**Incoterms:**
DDP

**Buyer:**
Samuel Mellado Dia

**Telephone No:** 5255020288723
**Fax:**

| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Start Date - 08/19/2008 | | | | | |
| | | | | End Date - 10/31/2008 | | | | | |
| | | | | **Header text** | | | | | |
| | | | | PO NOT TO EXCEED: $12,281.55 USD | | | | | |
| | | | | REFERENCE: Nortel # Matawan DATED 8/26/2008 | | | | | |
| | | | | Terms of delivery | | | | | |
| | | | | THIS IS A CONFIRMING PURCHASE ORDER -- DO NOT DUPLICATE | | | | | |
| | | | | THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. | | | | | |
| | | | | NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT. ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| | | | | PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapexp1@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry | | | | | |
| | | | | IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| 000010 | 1.000 | LOT | | Matawan Security System Relocation | 08/19/2008 | 11,982.00 | T5 | 0.00 | 11,982.00 |
| | | | | | Page Total | | USD | | 11,982.00 |

Samuel Mellado Dia
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| Order Date: 08/27/2008 | |
| Last Change Date: 08/26/2008 | Page 2 of 5 |
| Supplier No.: 458533 | |
| Contract No: 06-170 (9904) | |

**Purchase Order No.:** 4320052707
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship To:**
NN
Nortel
100 Matawan Road
MATAWAN NJ 07747-3915
USA

**Bill To:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| | |
|---|---|
| **Payment Terms:** Net 45 Days | **Buyer:** Samuel Mellado Dia |
| **Incoterms:** DDP | Telephone No: 525526268723 |
| | Fax: |

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00020 | 1.000 | LOT | | FM Admin Fees | 08/19/2008 | 299.55 | T5 | 0.00 | 299.55 |

Carrier Number/Carrier Name:

Goods Recipient:
This Purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by
Nortel.

| | | | |
|---|---|---|---|
| Page Total | | USD | 299.55 |
| Tax Amount | | USD | 0.00 |
| Total Amount | | USD | 12,281.55 |

Samuel Mellado Dia
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 1P/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any question, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify and hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F. R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5.Waiver of Lien**

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7. Title**

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries.  To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320066180

# N✷RTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 01/06/2009 |
| Last Change Date: | 01/06/2009 |
| | Page 1 of 6 |
| Supplier No. | 458533 |
| Contract No: | 06170 (4083) |

**Purchase Order No:** 4320086180
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
May Leung

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza, Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-1668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
300 CONVENT STREET
SAN ANTONIO TX 78205-3707
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Incoterms: | Buyer: | | | Telephone No: |
|---|---|---|---|---|---|
| Net 65 days | DDP | Ana Karanny M | | | Fax: |

**Carrier Number/Carrier Name:**

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PO Delivery Date - 01/01/2009 | | | | | |
| | | | | Header text | | | | | |
| | | | | THIS IS A BLANKET PO TO 2009-BPO-rent-Canada | | | | | |
| | | | | TOTAL NOT TO EXCEED: 23,637,427.90 USD | | | | | |
| | | | | AUTHORIZED RELEASORS IS (ARE) LUCINDA ALEJO | | | | | |
| | | | | START DATE: 01/01/2009 END DATE: 12/31/2009 | | | | | |
| | | | | REFERENCE JCI BUDGET 2009 DATED: 12/08/2008 | | | | | |
| | | | | FOR PRICING ONLY | | | | | |

| | | | |
|---|---|---|---|
| | Page Total | USD | 0.00 |

*Ana Karanny M*
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks 1P/2007-07/EN      Nortel is an Equal Opportunity / Affirmative Action Employer      CB

# NORTEL

## Purchase Order

| Purchase Order No. 4320068180 | Order Date: 01/06/2009 | Page 2 of 6 |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 01/06/2009 | |
| | Supplier No: 458533 | |
| | Contract No: 06170 (4083) | |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
May Leung

NN
Nortel
300 CONVENT STREET
SAN ANTONIO TX 78205-3707
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | Payment Terms: Net 65 days | Buyer: Ana Karanny M | | Telephone No:  Fax: | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | | Ship Date | UniPrice | Tax Code | Tax Value | Extended Total |

Terms of delivery
THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE

THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN.

NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT. ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT.

PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapeplsnortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry

IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER.

THIS BLANKET PURCHASE ORDER IS NOT A COMMITMENT TO PURCHASE ANY SPECIFIC QUANTITY OR SERVICE AND MAY BE CANCELLED AT ANY TIME BY NORTEL WITHOUT OBLIGATION. THIS ORDER IS ONLY VALID FOR THE PERIOD STATED AND THE TOTAL COST OF GOODS / SERVICES PROVIDED MUST NOT EXCEED THE ORDER VALUE SHOWN. ONLY THE NORTEL EMPLOYEES NAMED CAN PLACE ORDERS AGAINST THIS BLANKET PURCHASE ORDER NUMBER.

| Item No. | Qty | UOM | Part No | Description | Ship Date | UniPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00010 | 1 | EA | | US Facility Management Services | 01/01/2009 | *37427.90 | T5 | 0.00 | *637427.90 |
| | | | | | Page Total | | USD | | 23,637,427.90 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

*(signature)*

Ana Karanny M
BUYER

C B

Nortel Networks IP/2007-077/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# NORTEL

## Purchase Order

| Purchase Order No: 4320OK6180 | Order Date: 01/05/2009 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 01/05/2009 |

| | Page 3  of 6 |

Supplier No: 458533
Contract No: 06170 (4083)

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
May Leung

NN
Nortel
300 CONVENT STREET
SAN ANTONIO TX 78205-3707
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 65 days | Incoterms: DDP | Buyer: Ana Karanny M | Telephone No: Fax: |

| Item No. | Carrier Number/Carrier Name: | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Goods Recipient: ALEJO LUCINDA | | | | | |
| | | | | | This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel. | | | | | |

| | Page Total | USD | 0.00 |

| | Tax Amount | USD | 0.00 |
| | Total Amount | USD | 23,637,427.90 |

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

*[signature]*

Ana Karanny M
BUYER

Nortel Networks IP/2007-077/EN          Nortel is an Equal Opportunity / Affirmative Action Employer

C  B

Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with which Supplier acts infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (s) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity / Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(c), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, fire, public enemy or the government, fires, floods, freight embargos or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order, Time shall remain of the essence in all cases of force majeure.

**GOODS** – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2.Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3.Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services in the field prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4.Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6.Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7.Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08

# PURCHASE ORDER
# 4320059169

# N0RTEL

## Purchase Order

| Purchase Order No: 4320059169 | Order Date: 10/27/2008 | Page 1 of 5 |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 10/27/2008 | |
| | Supplier No: 458533 | |
| | Contract No: 06-170 (9904) | |

**Supplier:** Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Supplier Contact:**
Martin Muturi

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | Payment Terms: Net 45 Days | | Buyer: Victor Figueroa T | | Telephone No: 5255262868479 Fax: 5255262068686 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total | |

PO Delivery Date - 10/12/2008
Header text
NORTEL CONTACT FOR SERVICE IS JEAN PELLAND.
PHONE #514-818-7775. EMAIL: jpelland@nortel.com
P.O. TOTAL NOT TO EXCEED $14,100.00 USD.
REFERENCE: Fee Proposal # 4655 Great American Parkway
Santa Clara, CA 95054
START DATE: 10/27/2008 END DATE: 11/27/2008
Header note
Project name: Hellyer
Project manager: Bob Spriggs
Expenditure Type: Capital

| | | | | Page Total | USD | | | | 0.00 |
|---|---|---|---|---|---|---|---|---|---|

Victor Figueroa T
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL   Purchase Order

| | |
|---|---|
| Purchase Order No.: 4320059169 | Order Date: 10/27/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 10/27/2008 |
| | Page 2 of 5 |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
4655 Great America Parkway
SANTA CLARA CA 95054-1233
USA

**Supplier Contact:**
Martin Muturi

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| | |
|---|---|
| Supplier No: 458533 | |
| Contract No: 06-170 (9904) | |

| | |
|---|---|
| Telephone No: 52552626479 | |
| Fax: 52552626686 | |

| Carrier Number/Carrier Name: | | Incoterms:<br>DDP | | Payment Terms:<br>Net 45 Days | | Buyer:<br>Victor Figueroa T | | | | |
|---|---|---|---|---|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | **Terms of delivery** | | | | | |
| | | | | 1. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | ALL PRICING | |
| | | | | 2. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT | | | | | |
| | | | | SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT | | | | | |
| | | | | 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE | | | | | |
| | | | | ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING | | | | | |
| | | | | INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. | | | | | |
| | | | | 4. NORTEL RESERVES THE RIGHT TO CANCEL THIS ORDER AT ANY TIME, IN THE EVENT THAT NORTEL, IN ITS | | | | | |
| | | | | SOLE DISCRETION, IS NOT SATISFIED WITH THE QUALITY OF SERVICES OR PRODUCTS TO BE PROVIDED AND COVERED BY | | | | | |
| | | | | THIS PURCHASE ORDER. | | | | | |
| | | | | 5. THIS PURCHASE ORDER CANCELS AND SUPERCEDES OUR PREVIOUS PURCHASE ORDER, AS REFERENCED IN THE DESCRIPTION | | | | | |
| | | | | AREA. THE SUPPLIER IS RESPONSIBLE FOR APPLYING THE CURRENT PURCHASE ORDER NUMBER TO ALL APPLICABLE INVOICES. | | | | | |
| | | | | FAILURE TO UPDATE YOUR FILES WILL RESULT IN PAYMENT DELAYS AND / OR RETURN OF YOUR INVOICES. | | | | | |
| | | | | 6. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED | | | | | |
| | | | | HEREIN. | | | | | |
| 00010 | 1 | LOT | | Hellyer Labs Reloc - Project Manageme | 10/12/2008 | 14,100.00 | T1 | 0.00 | 14,100.00 |
| | | | | | | | | | |
| | | | | Goods Recipient: PELLAND JEAN | | | | | |
| | | | | This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by | | | | | |
| | | | | Nortel. | | | | | |

| | | |
|---|---|---|
| Page Total | USD | 14,100.00 |
| Tax Amount | USD | 0.00 |
| Total Amount | USD | 14,100.00 |

_signature_

Victor Figueroa T
BUYER

C

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer

Page 3 of 5

## Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(c), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470;

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated diphenyl ethers (PBDE)/polybrominated biphenyls (PBB) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, fire, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

**GOODS – If this Order is for goods, the following paragraphs are also included in this Order:**

## G1. Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2. Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of some upon Purchaser's request thereof.

**G4.Title/Risk of Loss**

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5. Waiver of Lien**

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

**S7. Title**

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320063345

# N✪RTEL    Purchase Order

| | | | | Order Date: | 12/05/2008 | Page 1 of 5 |
|---|---|---|---|---|---|---|
| | | | | Last Change Date: | 12/05/2008 | |

Purchase Order No: 4320083345
This number must appear on all invoices, packages, packing slips and customs forms.

Supplier No: 458533
Contract No: 06-170 (9904)

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
Supplier Contact:
Matt Briske

Susan Thompson
Nortel
Jeff Quillen
1361 N. GLENVILLE DRIVE
RICHARDSON TX  75081-2414
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Incoterms: DDP | | | Payment Terms: Net 45 Days | Buyer: Luis Castillo Aldu | Telephone No: 525526268854 Fax: |
|---|---|---|---|---|---|

| Item No. | Qty | UOM | Part No | Description | Ship Date | Tax Code | Tax Value | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Start Date - 12/05/2008 End Date - 12/31/2008 | | | | | |
| | | | | **Header text:** PO NOT TO EXCEED $638.68 USD REFERENCE: QUOTE DATED DEC/05/2008 FOR PRICING ONLY | | | | | |
| | | | | **Terms of delivery** 1. THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE 2. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. 3. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. 4. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO nsar.team@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT 1-866-684-6228 OR www.nortel.com/naapinquiry 5 NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT/ ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT | | | | | |
| 00010 | 1.000 | EA | | Johnson Control:1460 LABK Floor Clea | 12/05/2008 | T3 | 0.00 | 638.68 | 638.68 |
| | | | | Page Total | | | USD | | 638.68 |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    ———    Nortel is an Equal Opportunity / Affirmative Action Employer

# N⊘RTEL

## Purchase Order

| | |
|---|---|
| Order Date: | 12/05/2008 |
| Last Change Date: | 12/05/2008 |
| Supplier No: | 458533 |
| Contract No: | 06-170 (9904) |

Page 2 of 5

**Supplier:**

Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL  60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Purchase Order No:** 4320083345
This number must appear on all invoices, packages, packing slips and customs forms.

**Supplier Contact:**
Matt Briske

**Ship to:**
Susan Thompson
Nortel
Jeff Quillen
1361 N. GLENVILLE DRIVE
RICHARDSON TX 75081-2414
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: Net 45 Days | Incoterms: DDP | | | Buyer: Luis Castillo Aldu | Telephone No: 525526268854 | |
|---|---|---|---|---|---|---|
| | | | | | Fax: | |

| Carrier Number/Carrier Name: | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |

Goods Recipient:
This Purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by
Nortel.

| | | |
|---|---|---|
| Page Total | USD | 0.00 |
| Tax Amount | USD | 0.00 |
| Total Amount | USD | 638.68 |

*Luis Castillo Ald.*
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

Page 3 of 5:

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

PURCHASE ORDER TERMS AND CONDITIONS

## 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

## 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

## 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

## 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

## 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

## 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of Force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

## 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

## 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

## 9. Laws and Regulations

Revised 1/17/08

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser. Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach nor the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics -- by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS -- If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**G3.Special Products**

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

**G4.Title/Risk of Loss**

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

**G5.Delivery**

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

**G6.Free Trade Certificates of Origin**

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

**G7.Packing**

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

**S1.Warranty**

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

**S2. Services to be Rendered at Purchaser's Premises**

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

**S3. Security Rules/Procedures**

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of the employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

**S4. Disruption of Business**

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

**S5.Waiver of Lien**

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

**S6. Independent Contractor**

Supplier shall provide the services as an independent contractor and not as an agent, servent or employee of Purchaser.

**S7. Title**

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320020090

# NORTEL

## Purchase Order

Seller: Johnson Controls Inc
2715 York Road
Sales Plaza Suite 110
OAK BROOK IL, 63523
USA
Telephone No: 972-684-7487
Fax No: 972-684-2433

Ship to:
Nortel
555 UNIVERSE STREET
SAN ANTONIO TX, 78206-2303
USA

Bill to:
Nortel Networks Incorporated (5301 / 2361)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

Payment Terms: Net45 Days
Incoterms: DDP

Telephone No: 5255425793
Fax:

| Item No | Qty | UOM | Part No | Description | Ship Date | Unit Price | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| 00010 | 1 | EA | | US Facility Management Services | 12/07/2007 | 422438.00 | 1% | 0.00 | 24,522,438.00 |

PO Delivery Date = 12/07/2007

Goods Recipient: ALEJO LUCINDA
This Purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by Nortel

| | | | | | Page Total | | USD | | 24,522,438.00 |
| | | | | | Tax Amount | | USD | | 0.00 |
| | | | | | Total Amount | | USD | | 24,522,438.00 |

Caroline Torino
BUYER

Nortel Networks, Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19901-1120
USA

# Terms and Conditions

MOBILE NETWORKS, INC. (PURCHASER)

PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

**2. Price and Payment**

**3. Taxes and Charges**

**4. Changes**

**5. Setoff**

**6. Termination: Breach and Time for Performance**

**7. Assignment/Subcontracting**

**8. Indemnification and Insurance**

**9. Laws and Regulations**

Revised 1/1/08

# Terms and Conditions

Supplier shall comply with, and obtain all applicable government licenses and permits relevant to its products, services, and Supplier's delivery with and shall abide all applicable local state or federal laws, including and not limited to compliance with all applicable laws relating to workers' compensation, occupational safety, and related laws of advertisement, employment. [...]

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be disclosed to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser furnished property or Purchaser information provided to Supplier under this Order may be used only for the purpose of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not, in advertising, sales promotion materials, press releases, published statements or any other written statement or in the nature of Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said company may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party where performance is affected including, but not limited to, acts of God, the public enemy or the government, fires, flood, freight embargoes or [...]

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the State in which the goods are delivered or services are performed, notwithstanding its choice of laws. The parties agree that this order shall not be subject to the United Nations Convention on Contracts for the International Sale of Goods [...]

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret the Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser, or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the products or the services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings, of any nature whatsoever, written or oral. This Order may not be modified or waived orally, and may be modified only in a writing signed by a duly authorized representative of the party to be charged with such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics

by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published Supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and conduct Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

## GOODS:  If this Order is for goods, the following paragraphs are also included in the Order

## G1. Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment or goods in excess of the quantity specified in this Order. Purchaser quantify will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions, from Supplier. Risk of loss and return shipping charges for any excess shipping quantity shall be borne by Supplier.

## G2. Warranty

# Terms and Conditions

Supplier warrants that it is the portal or on-going source of title and/or title to the goods that these [...] off [...] accepts, [...] of the goods [...] its description and [...] of the manufacture [...] to be [...] and [...] to the best of Supplier's knowledge, merchantable and free from defects and shall be fit for the purposes intended. All goods which are, in accordance, shall conform with the [...] laboratory [...] requirement. In the event Supplier breaches any warranty, Supplier shall promptly return or [...] each item and replace [...] to [...] damaged goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall reimburse to the limited direct or consequential good. The foregoing constitutes [...] due to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's product.

## G3. Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall [...] a result, become the sole and entire property [...] in possession of same upon Purchaser's request thereof.

## G4. The Risk of Loss

Title and risk of loss of damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm shown on the face of this Order.

## G5. Delivery

Goods delivered prior to the required delivery date shall, at Purchaser's option and be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6. Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7. Packing

All goods shall be suitably packed for shipment to prevent damage.

SERVICES -- If this Order is for services, the following paragraphs are also included in this Order:

## S1. Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services under any deliverable items or work product in connection with service shall (i) conform to the description of the service, product and (ii) be performed in a professional manner and conform to generally accepted standards for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof are economically defective, Supplier's services has been or will not meet such defect. Should Supplier not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's product.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to protect property damage or injury while during the performance of the services. Purchaser reserves the right, for any reason, to require Supplier to remove any employee of Supplier, for reason, at once, and to have Supplier replace such employee, not causing a Purchaser's premises and have Supplier replace such individual with an equally acceptable to Purchaser.

## S3. Security/Badge/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may at any time direct to require Supplier to replace any individual whose performance or conduct is not satisfactory. If Purchaser elects to do so, Supplier's DAP shall be approved and Supplier with its employees who will, at any be assigned to perform services in the performance of the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not accept any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal work day and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and cause, including Purchaser's premises in original condition.

## S5. Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with conditional release in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for the performance by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required in evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the event that results and/or items produced exclusively for Purchaser as part of become certain products formed by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the resultant item/product as part of the service.

Revised 1/1/08

# PURCHASE ORDER
# 4320045622

# N⊘RTEL

## Purchase Order

| Order Date: | 06/30/2008 |
|---|---|
| Last Change Date: | 06/30/2009 |

Page 1 of 5

| Purchase Order No: 4320045822 |
|---|
| This number must appear on all invoices, packings, packing slips and customs forms. |

| Supplier No: | 468533 |
|---|---|
| Contract No: | 06-170 (9904) |

**Supplier Contact:**
Martin Muturi

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
RJ BORNHOFEN
4010 EAST CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC 27709-0000

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Incoterms: | Telephone No: 52526286854 |
|---|---|---|
| Net 45 Days | DDP | Fax: |

**Buyer:**
Luis Castillo Aldu

| Item No. | Qty | UOM | Part No. | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|
| | | | Start Date - 07/01/2008<br>End Date - 07/31/2008<br>**Header text**<br>THIS PO IS IN RESPONSE TO:<br>Fee Proposal #Tandberg Experia # Document Camera Mount<br>Project Manager: Matt Briske<br>Submission Date: June 25, 2008<br>Revision Number: 2<br>FOR PRICING ONLY<br><br>**Terms of delivery**<br>1. THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER ARE COVERED BY THE CONTRACT REFERENCED HEREIN AND FILE<br>WITH NORTEL NETWORKS SUPPLY MANAGEMENT.<br>2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE<br>ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING<br>INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER.<br>3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT AT<br>(naapexp1@nortel.com).<br>4. NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT ALL PRICING<br>SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT. | | | | | |
| 00010 | 1.000 | LOT | | Camera installation Fee | 07/01/2008 | 3,759.00 | T5 | 0.00 | 3,759.00 |
| | | | | | Page Total | | | | 3,759.00 |
| | | | | | USD | | | | |

Luis Castillo Aldu
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN        Nortel is an Equal Opportunity / Affirmative Action Employer

# N❍RTEL

## Purchase Order

| Purchase Order No: 4320045622 | | | Order Date:    06/30/2008 | | | Page 2  of  5 |
| This number must appear on all invoices, packages, packing slips and customs forms. | | | Last Change Date: 06/30/2008 | | | |

| Supplier Contact: | | | Supplier No: 458533 | | | |
| Martin Muturi | | | Contract No: 06-170 (990M) | | | |

Supplier:
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

Ship to:
TN
Nortel
RJ BORNHOFEN
4010 EAST CHAPEL HILL-NELSON HWY
RESEARCH TRIANGLE PARK
USA NC  27709-0000

Bill to:
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | | Incoterms:<br>DDP | | Payment Terms:<br>Net 45 Days | | Buyer:<br>Luis Castillo Aldu | | Telephone No: 525526258854<br>Fax: |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |

| Item<br>No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax<br>Code | Tax<br>Value | Extended Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Service Text: | | | | | | |
| | | | | see the attached quote | | | | | |
| | | | Goods Recipient: | | | | | | |
| | | | This purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by Nortel | | | | | | |
| | | | | | | | **Page Total** | USD | 0.00 |
| | | | | | | | **Tax Amount** | USD | 0.00 |
| | | | | | | | **Total Amount** | USD | 3,759.00 |

Luis Castillo Alda
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP7200-077EN            Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

## NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket commercial liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics - by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS — If this Order is for goods, the following paragraphs are also included in this Order:

### G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

### G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from fault, defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

## SERVICES – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the service services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# PURCHASE ORDER
# 4320027847

# N⊘RTEL  Purchase Order

| | |
|---|---|
| Purchase Order No: 4320027847 | Order Date: 02/28/2008 |
| This number must appear on all invoices, packages, packing slips and customs forms | Last Change Date: 02/28/2008  Page 1 of 5 |

**Supplier:**
Johnson Controls Inc
2215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**

**Supplier Contact:**
Robert Hagen

Supplier No: 458533
Contract No: 06-170

**Ship to:**
NN
Nortel
John Carmichael
2370 2221 Lakeside
RICHARDSON TX 75082-4333
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 20011)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No: 52552626709 |
|---|---|---|
| Net 45 Days | Gustavo Torres | Fax: |

| Item No. | Qty | UOM | Part No | Carrier Number/Carrier Name: | Incoterms: DDP | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | Start Date - 02/25/2008 Header text RE: Fee Proposal #2201 Lakeside Blvd. Richardson Texas 75082 Project Manager: Kari Pratt Submission Date: 2/25/08 1. THIS PURCHASE ORDER IS GOVERNED BY THE TERMS AND CONDITIONS OF THE MASTER SERVICE AGREEMENT REFERENCED HEREIN. 2. IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER. 3. PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT | | | | | |
| 00010 | 1.000 | EA | | | | P-00082 Overland Park Expense | 02/25/2008 | 10,000.00 | T5 | 0.00 | 10,000.00 |
| | | | | | | Service Text: Johnson Controls Inc 2215 York Road Drake Plaza Suite 100 Oak Brook, IL 630-990-3668 Fax 972-684-2433 David Whittmyer | | | | | |

| | | | | Page Total | | USD | | | | | 10,000.00 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

NORTEL NETWORKS 'P/2007-07/EN   'Nortel is an Equal Opportunity / Affirmative Action Employer'

# N⊘RTEL

## Purchase Order

| Purchase Order No: 4320027847 | Order Date: 02/28/2008 |
|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 02/29/2008 |

Page 2 of 5

| Supplier Contact: | Supplier No: 458533 |
|---|---|
| Robert Hagen | Contract No: 06-170 |

**Supplier:**
Johnson Controls Inc
215 York Road
Drake Plaza Suite 110
OAK BROOK IL 60523
USA
Telephone No: 630-990-3668
Fax No: 630-990-2300

**Ship to:**
NN
Nortel
John Carmichael
2370 2221 Lakeside
RICHARDSON TX 75082-4333
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Payment Terms: | Buyer: | Telephone No: 5285526208709 |
|---|---|---|
| Net 45 Days | Gustavo Torres | Fax: |

| Item No. | Carrier Number/Carrier Name: | Qty | UOM | Incoterms: DDP | Part No | Description | Ship Date | Tax Code | Tax Value | UnitPrice | Extended Total |
|---|---|---|---|---|---|---|---|---|---|---|---|

Goods Recipient:
This Purchase order is subject to the Nortel Networks Standard PO Terms& Conditions unless specified by
Nortel

| | | | |
|---|---|---|---|
| Page Total | | USD | 0.00 |
| Tax Amount: | | USD | 0.00 |
| Total Amount | | USD | 10,000.00 |

Gustavo Torres
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN     Nortel is an Equal Opportunity / Affirmative Action Employer

# Terms and Conditions

NORTEL NETWORKS INC. ("PURCHASER")

## PURCHASE ORDER TERMS AND CONDITIONS

### 1. Acceptance

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

### 2. Price and Payment

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of like goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

### 3. Taxes and Charges

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

### 4. Changes

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly; Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

### 5. Setoff

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

### 6. Termination, Breach and Time for Performance

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

### 7. Assignment/Subcontracting

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

### 8. Indemnification and Insurance

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach or the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

### 9. Laws and Regulations

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with, all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F. R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F. R. part 470.

and.

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive issued or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

## 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

## 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

## 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

## 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond its control and without the fault or negligence of the party whose performance is affected, including but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or

unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

## 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

## 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

## 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

## 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be changed with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

## 19. Business Ethics – by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com,

## 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS – If this Order is for goods, the following paragraphs are also included in this Order:

## G1.Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier

## G2.Warranty

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## G3.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

## G4.Title/Risk of Loss

Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

## G5.Delivery

Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

## G6.Free Trade Certificates of Origin

Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

## G7.Packing

All goods shall be suitably packed for shipment to prevent damage.

**SERVICES** – If this Order is for services, the following paragraphs are also included in this Order:

## S1.Warranty

Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect. Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

## S2. Services to be Rendered at Purchaser's Premises

Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

## S3. Security Rules/Procedures

Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier, at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

## S4. Disruption of Business

Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

## S5.Waiver of Lien

At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

## S6. Independent Contractor

Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

## S7. Title

Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

Revised 1/17/08