## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*                                         :    Chapter 11

                                                :
Nortel Networks Inc., *et al.,*[1]              :    Case No. 09-10138 (KG)

                              Debtors.          :    Jointly Administered

                                                :
                                                :    **Hearing date: February 19, 2009 at 10:00 a.m. (ET)**
                                                     **Objections due: February 12, 2009 at 4:00 p.m. (ET)**

-------------------------------------------------------X

### DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR AN ORDER ESTABLISHING PROCEDURES FOR ADDRESSING RECLAMATION DEMANDS PURSUANT TO SECTIONS 105(a), 362 AND 546(c) OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), hereby respectfully submit this reply in further support of their motion for an order establishing procedures for addressing reclamation demands pursuant to sections 105(a), 362 and 546(c) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure [D.I. 193] (the "Reclamation Procedures Motion"). In further support of the Reclamation Procedures Motion, the Debtors submit a revised proposed form of order attached hereto as Exhibit A. A blackline of the revised proposed order is attached as Exhibit B hereto.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1.      Nortel filed the Reclamation Procedures Motion with the goal of establishing uniform procedures for the resolution of reclamation demands on an informal basis where possible and through an orderly process where Court intervention may be required. The proposed procedures are intended to benefit both the Debtors and reclamation claimants by decreasing administrative burdens associated with the resolution of reclamation demands through simplified procedures for noticing the settlement of claims and the establishment of streamlined procedures for reconciling claims absent agreement. The procedures further benefit reclamation claimants by eliminating the need to promptly commence an adversary proceeding to prosecute their reclamation claims. Reclamation claimants must agree the procedures provide these benefits, as of the 29 parties who have asserted reclamation claims, a mere 2 have formally objected to the procedures and only one objection – that of JDS Uniphase Corporation ("JDSU") – remains unresolved at this time.[2]

2.      The Debtors have attempted to resolve JDSU's objection to the procedures consensually, in the same way they have worked over the last month to resolve the merits of JDSU's reclamation demand on an expeditious basis. Contrary to JDSU's assertion in its motion that the "basic facts are not in dispute" with regard to its claim, the Debtors disagree with several of JDSU's characterizations regarding the negotiations that have occurred to date and the merits of JDSU's claims. That said, even JDSU acknowledges the Debtors' cooperation in that "JDSU has expended considerable time working with employees of the Debtors in an effort to identify the status and recent history of each of the items of JDSU Reclaimed Products," (JDSU Obj. ¶ 5) including through a JDSU visit to the Debtors' warehouses to confirm the identification and segregation of goods in the Debtors' possession that may be subject to JDSU's reclamation

---

[2]      A third reclamation claimant informally provided comments to the procedures which the Debtors have incorporated into their revised proposed order. The Debtors reserve all rights and defenses with respect to the timeliness, sufficiency and merits of all of the reclamation demands they have received.

demand.  Moreover, JDSU acknowledges that the Debtors already told it that approximately $2.1 million of the purported $5 million in goods subject to its reclamation demand were ordered by and shipped to the Debtors' affiliates, who are subject to their own insolvency proceedings (a fact that JDSU should have known prior to the assertion of its demand from its own records but still does not admit in its objection).  JDSU's suggestion that there is any question as to the Debtors' willingness to cooperate and provide information to resolve reclamation claims is flatly contradicted by the Debtors' actual handling of JDSU's claims to date.  All that said, the Reclamation Procedures Motion is not an appropriate vehicle for resolving any disputes regarding the merits of JDSU's reclamation claim, as it hopes, but rather a motion to establish a process for the reconciliation and resolution of such claims.

3.      To address JDSU's concerns regarding the process by which disputed claims will be resolved, the Debtors have supplemented the procedures to provide a period for consensual resolution of objections through a meet and confer process, followed by an opportunity for the Debtors and the relevant reclamation claimant to move for relief from the Court to resolve the claim.  More generally, the Debtors have supplemented the procedures to provide that any party whose reclamation claim is allowed based on the filing of a Reclamation Notice is entitled to either the return of their goods or an administrative priority claim for the allowed amount of the reclaimed goods, at the Debtors' election.  The Debtors also have offered to expedite the resolution of JDSU's reclamation claims through the filing of a Reclamation Notice stating the amount of the reclamation claim the Debtors determine to be valid by no later than March 15th, and remain willing to agree to such expedited resolution in connection with the adoption of the proposed procedures provided that JDSU is stayed from seeking further relief outside of the proposed procedures. (The Debtors reserve their rights in the event the procedures are not made

3

binding on JDSU). Each of these points is reflected in the revised form of order attached hereto

as Exhibit A. The procedures also provide a vehicle for payment to JDSU for any properly

reclaimed goods promptly upon the completion of reconciliation of their claims. The Debtors

can further confirm that they have segregated any goods they have actually identified as being in

their possession based on information provided over time by JDSU, and the Debtors intend to

seek approval to pay JDSU for any properly reclaimed goods based on the reconciliation of such

claims.

4.      JDSU's suggestion that the Debtors have been somehow dilatory in resolving

their claim is simply baseless. While JDSU attempts to downplay the administrative burden to

the Debtors in reconciling reclamation claims, the Debtors have received demands from 29

purported reclamation claimants, and in several cases amended or supplemented demands from a

particular claimant. These demands are based on literally thousands of invoices (JDSU alone

asserted claims based on 393 invoices), covering goods from completed chip sets to individual

personal computers, cables and batteries. Several reclamation claimants have taken a kitchen

sink approach, asserting demands for goods delivered outside of the reclamation period, goods

delivered to non-debtor Nortel entities or directly to customers and services not susceptible to a

reclamation demand (including JDSU, for example). Many demands provide insufficient

evidence for the Debtors to identify their goods at all, yet the Debtors have made efforts do so

where possible. A few reclamation claimants also already have filed separate motions for the

allowance of claims pursuant to section 503(b)(9) of the Bankruptcy Code for goods delivered to

the Debtors in the 20 days prior to their bankruptcy. See Motion of Avanex Corp. for Allowance

of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b)(9) [D.I. 242]; Excelight

Communications, Inc.'s Motion for Allowance and Payment of Administrative Claim Under §

503(b)(9) [D.I. 250]; and Motion of Andrew, LLC for Allowance and Payment of Administrative

Expense Claim Pursuant to 11 U.S.C. § 503(b)(9) [D.I. 283]. It is likely that other creditors will

file such motions in the upcoming weeks and months. The Debtors are working steadily to

resolve these claims as expeditiously as possible, and have exchanged information with several

counterparties (including JDSU) in order to resolve their claims. JDSU's request for additional

formal disclosure requirements in the procedures will merely slow down the process, rather than

expedite resolution. Omnibus procedures are required in order to allow the Debtors to resolve all

of these myriad claims in an efficient and uniform manner while the Debtors also continue to

attend to the daily operations of their business, and ongoing supplier relationships. The Debtors

assert that the proposed procedures strike an appropriate balance between the claimants' interests

in having their claims resolved and the Debtors' need for an orderly process for doing so.

5.      JDSU's further suggestion that it is entitled to adequate protection based merely

on its submission of a reclamation demand is simply wrong. Contrary to JDSU's suggestion, it

has not established a *prima facie* case for the return of $5 million of goods merely based on the

delivery of a reclamation demand letter. It is unsurprising that JDSU does not cite to any

caselaw supporting such a proposition because that simply is not the standard. In order to prove

a reclamation claim, a claimant must show, among other things, that goods were actually

delivered to a debtor, that the reclamation claimant asserted a valid demand, and that the debtor

was actually in possession of the goods and the goods remained identifiable and not commingled

or otherwise used at the time the demand was received. See 11 U.S.C. § 546(c). JDSU

acknowledges in its objection that the Debtors dispute that all of these requirements have been

met for a substantial portion of its claim.

6.     In the Debtors' view, the proposed procedures are not merely adequate but in fact beneficial to both the Debtors and reclamation claimants, and will provide the most expeditious and efficient process for resolving reclamation claims.  The Debtors therefore seek approval of the Reclamation Procedures Motion over the objection of JDSU and entry of the proposed order attached hereto.  Alternatively, to the extent the Court does not overrule JDSU's objections with respect to the resolution of its claims, the Debtors respectfully request that the Reclamation Procedures Motion be granted as to all other reclamation claimants, and paragraph 9 of the order be struck and JDSU be expressly carved out of procedures, so that the Debtors are able to efficiently resolve the other reclamation claims through these omnibus procedures.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that this Court (i) overrule the objection

of JDSU and grant the Reclamation Procedures Motion, (ii) enter the proposed order attached

hereto; and (iii) grant such other and further relief as it deems just and proper.


Dated:  February 17, 2009                CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
Phone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

7