## Exhibit E

## Form of Notice of Auction and Sale Hearing

[New York #2010792 v6]

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :    Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                       :    Case No. 09-10138 (KG)
:
                Debtors.                    :    Jointly Administered
:
:
---------------------------------------------------------X

NOTICE OF (I) SOLICITATION OF INITIAL BIDS; (II) BIDDING
PROCEDURES; (III) AUCTION; (IV) SALE HEARING
AND (V) RELATED RELIEF AND DATES

**TO ALL CREDITORS AND OTHER PARTIES IN INTEREST PLEASE TAKE NOTICE:**

      1.     Chapter 11 Petitions. On January 14, 2009, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

      2.     The Sale Motion. On February 20, 2009, Debtors filed the Motion for Orders (i) Authorizing and Approving (a) Purchase Agreement, (b) Bidding Procedures, (c) Break-Up Fee and Expense Reimbursement, (d) Notice Procedures, (e) Assumption and Assignment Procedures, (f) setting the time, date and place for the Sale Hearing, and (g) Filing of Certain Schedules Under Seal, and (ii) Authorizing and Approving (a) Sale of Certain Non-Core Assets Free and Clear of All Liens, Claims and Encumbrances and (b) Assumption and Assignment of Certain Contracts (the "Sale Motion").

      3.     The Bidding Procedures Order. Following an initial hearing on certain relief requested by the Sale Motion on February 27, 2009, the Bankruptcy Court (D.I. [●]) entered an Order (the "Sale Procedures Order"), approving (a) the Bidding Procedures, (b) the Break-Up Fee and Expense Reimbursement, (c) the Notice Procedures, (d) the Assumption and Assignment

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[New York #2012571 v4]

Procedures, (e) the filing of certain schedules under seal, and (f) setting a time, date and place for the Sale Hearing. A copy of the Sale Procedures Order is attached hereto as **Exhibit A.**

4. Bidding Procedures. The Bankruptcy Court has approved the following requirements for a Bidder to submit a Qualified Bid:

- Bid Deadline. A Qualified Bidder (as defined below) that desires to make a bid will deliver written copies of its bid to: counsel to the Sellers, counsel to the Official Committee, the Monitor and Purchaser; so as to be received not later than noon (Eastern Time) on March 19, 2009 (the "Bid Deadline"). The Sellers may extend the Bid Deadline once or successively, but they are not obligated to do so; provided, however, that for any such extension beyond five (5) days the Sellers shall have obtained the written consent of the Purchaser, which consent will not be unreasonably withheld. If the Sellers extend the Bid Deadline, they will notify promptly all Qualified Bidders of such extension.

- Provisions Governing Qualifications of Bidders. Unless otherwise ordered by the Bankruptcy Court and accepted by the Monitor, for cause shown, or as otherwise determined by the Sellers, in order to participate in the Bidding Process, each person (a "Potential Bidder"), other than the Purchaser, must deliver (unless previously delivered) to counsel to the Sellers, the Official Committee and the Monitor at the address provided below:

    (a) an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers;

    (b) current audited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their financial advisors, in consultation with the Official Committee and the Monitor, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate a purchase of the Assets; and

    (c) a preliminary (non-binding) written proposal regarding: (i) the purchase price range (including assumed liabilities and the other obligations to be performed or assumed by the Potential Bidder, as described below in paragraph (h) under the heading Provisions Governing Qualified Bids); (ii) any Assets expected to be excluded or any additional assets desired to be included; (iii) the structure and financing of the transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated corporate, stockholder, internal or regulatory approvals required to close the transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; and (v) any conditions to closing that the Potential Bidder may

2

wish to impose in addition to those set forth in the Purchase Agreement; provided that, in order to be a Qualified Bid (as defined below) the terms and conditions of such proposal shall not be in the aggregate materially less favorable to Sellers than those set forth in the Purchase Agreement.

A Potential Bidder that delivers the documents described above and whose financial information and credit-quality support or enhancement demonstrate the financial capability of the Potential Bidder to consummate the sale and perform after the completion of the sale, if selected as a Successful Bidder, and that the Sellers determine in their sole discretion, after consultation with their counsel and financial advisors, the Official Committee and the Monitor, is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale will be deemed a "Qualified Bidder."

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Official Committee and the Monitor, and will notify both the Potential Bidder and Purchaser, if such Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin to conduct due diligence with respect to the Assets as provided in the Bidding Procedures.

- Provisions Governing Qualified Bids. A bid submitted pursuant to the Bidding Procedures will be considered a Qualified Bid only if the bid complies with all of the following (a "Qualified Bid"):

    (a) it states that the applicable Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Purchase Agreement, including, without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure or alternative terms and conditions that the Sellers determine, after consultation with the Official Committee and the Monitor, is no less favorable than the terms and conditions of the Agreement;

    (b) it includes a letter stating that the bidder's offer is irrevocable until (i) the date of the selection of the Successful Bidder (as defined below) and, (ii) if such bidder is selected as the Alternate Bidder (as defined below), the Alternate Bid Expiration Date (as defined below);

    (c) it includes a duly authorized and executed asset purchase agreement, including the purchase price for the Assets (the "Purchase Price"), together with all exhibits and schedules thereto, the Transition Services Agreement, the IP License Agreement, the Interim Product Purchase Agreement, the Master Purchase Agreement, the Patent Assignment Agreement, the Trademark License Agreement, the Contract Manufacturing Inventory Agreement and the other ancillary agreements described in the Agreement with all exhibits and schedules thereto, as well

3

as copies of such materials marked to show those amendments and modifications to the Agreement proposed by a prospective bidder (a "Marked Agreement") and such ancillary agreements (the "Marked Ancillary Agreements") and the proposed Sale Order of the Bankruptcy Court and the Ontario Court;

(d) it is not conditioned on the outcome of unperformed due diligence by the bidder;

(e) it is not conditioned on obtaining financing and includes written evidence of a commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Official Committee and the Monitor, to make a reasonable determination as to the Qualifying Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreement;

(f) it identifies with particularity each and every executory contract and unexpired lease, if any, the assumption and assignment of which is a condition to closing;

(g) it fully discloses the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(h) it has a value to the Sellers, in the Sellers' reasonable business judgment, after consultation with its financial advisors, the Creditors' Committee and the Monitor, that either individually or, when evaluated in conjunction with any other Qualified Bid that constitutes part of the same offer for the Assets, is greater than or equal to the sum of (i) the Base Purchase Price (as defined in the Purchase Agreement) (making appropriate adjustments for any proposed changes to the Target Inventory Value, Warranty Target Amount and Target Business Tangible Property Value (each as defined in the Purchase Agreement) plus (ii) the Assumed Liabilities (as defined in the Purchase Agreement) plus (iii) the value of the performance of the warranty and service-related obligations of the Sellers for which Purchaser has agreed to assume responsibility (as set forth in the Master Purchase Agreement) less (iv) the amount of transfer taxes to be paid by the Sellers under the Agreement plus (v) the value of the assumed obligation to purchase returned products and excess inventory (as set forth in the Agreement) plus (vi) the savings to Sellers resulting from of the Purchaser's obligations with respect to employment of certain of Sellers' employees pursuant to the Agreement plus (vii) the value of those component parts purchased by the Sellers pursuant to Exhibit C to the Interim Product Purchase Agreement plus (viii) the amounts of the Break-Up Fee (as defined below) plus (ix) the Expense Reimbursement (as defined below) plus (x) $500,000 (or such other increment as the Sellers,

4

in consultation with their financial advisors, the Official Committee and the Monitor determine to be appropriate);

(i) it includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Agreement or the Marked Agreement or the Marked Ancillary Agreements; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j) it includes evidence, in form and substance reasonably satisfactory to Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreement;

(k) it is accompanied with a good faith deposit in the form of a wire transfer, certified check or such other form acceptable to the Sellers payable to the order of the Sellers (or such other party as the Sellers may determine) in an amount equal to $2,500,000; and

(l) it is received by the Bid Deadline.

The Sellers will determine, in their reasonable business judgment, after consultation with the Creditors' Committee, to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids; <u>provided that</u> Sellers, in evaluating such bids, may not waive compliance with the requirements in items (d), (e) and (k) above.

Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder, and the Purchase Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the sale.

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder, as described above in paragraph (h) under this heading) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such transactions, the terms and conditions of the ancillary agreements, the effect of the sale on the value of the ongoing businesses of Sellers (including ongoing relationships with customers and suppliers), other factors affecting the speed, certainty and value of the sale, the amount of Assets included or

5

excluded from the bid, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with their financial and legal advisors, the Official Committee and the Monitor. In determining the net value of a potential Qualified Bid, Sellers will utilize (to the extent quantifiable) the data relating to the items listed in paragraph (h) above that was available to Sellers as of the date such assessment was made with respect to Purchaser.

If the Sellers do not receive any Qualified Bids other than the Purchase Agreement received from the Purchaser, the Sellers shall report the same to the Bankruptcy Court and the Monitor and subject to requiring and obtaining approvals of the Ontario Court shall proceed with the sale pursuant to the terms of the Agreement. If approval of the Ontario Court is required, the applicable Seller will as soon as practicable file a motion with such court(s) seeking approval of the Purchase Agreement. If the Sellers receive a bid that does not conform to one or more of the requirements specified above, but determine, in their reasonable business judgment, after consultation with the Official Committee and the Monitor, that such bid is to be treated as a Qualified Bid, subject to the conditions with respect to the restriction on Sellers' ability to waive certain requirements of a Qualified Bid, with a higher value as defined above, then any Qualified Bidder (including the Purchaser) shall have the opportunity to submit a bid at the Auction on the same basis, so long as such bid has a value of at least $500,000 (or such other increment as the Sellers, in consultation with their financial advisors, the Official Committee and the Monitor determine to be appropriate) more than the non-conforming bid. The Sellers shall notify the Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids no later than one (1) day following the expiration of the Bid Deadline.5.     The Auction. If the Sellers receive one or more Qualified Bids in addition to the Agreement, the Sellers will conduct an auction (the "Auction") of the Assets, upon notice to all Qualified Bidders who have submitted Qualified Bids, at **9:30 a.m. on March 23, 2009**, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and Lisa M. Schweitzer, which Auction shall not be canceled or adjourned without the prior consent of the Purchaser (except as provided herein), such consent not to be unreasonably withheld. Copies of all Qualified Bids shall be delivered to the Official Committee, the Monitor and counsel to the Purchaser promptly after such time that such bid is deemed a Qualified Bid.

The Auction shall run in accordance with the following procedures:

    (a) Only the Sellers, the Purchaser and any representative of the Official Committee and the Monitor (and the legal and financial advisors to each of the foregoing), any creditor of the Debtors, and any other Qualified Bidder which has timely submitted a Qualified Bid, shall attend the Auction in person, and only the Purchaser and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

    (b) Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

    (c) Each Qualified Bidder who has timely submitted a Qualified Bid may participate in the Auction, provided that, in the event a Qualified Bidder

6

elects not to participate in the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder at the conclusion of the Auction. Prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe, in their reasonable business judgment, after consultation with the Official Committee, is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Sellers of their intent to participate in the Auction.

(d) All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as explained below) at the Auction with the understanding that the true identity of each bidder will be fully disclosed to all other bidders and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to participate in the Auction must participate in person.

(e) The Sellers, after consultation with their counsel and financial advisors, the Official Committee and the Monitor may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court or of any other applicable court entered in connection herewith and (ii) disclosed to each Qualified Bidder at the Auction.

(f) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers determine, in consultation with their financial advisor and the Creditors' Committee, that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below). Each incremental bid at the Auction shall have a purchase price of at least $500,000 over the Starting Bid or the Leading Bid, as the case may be; provided, that the Sellers, in consultation with the Creditors' Committee, shall retain the right to modify the increment requirements at the Auction. After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid (and the value of such bid) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation

7

of the Leading Bid. For the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Sellers will, at each round of bidding, give effect to the Break-Up Fee and the Expense Reimbursement that may be payable to the Purchaser under the Agreement as well as any additional liabilities to be assumed by a Qualified Bidder.

(g) If the Sellers do not receive any Qualified Bid other than the Purchaser's Qualified Bid at the Auction, the Sellers shall seek approval of the Agreement at the Sale Hearing.

Selection Of Successful Bid. At the conclusion of the Auction, or as soon thereafter as practicable, the Sellers, in consultation with their counsel and financial advisors, the Official Committee and the Monitor, will (a) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the terms and conditions of the ancillary agreements, the effect of the Sale on the value of the ongoing businesses of Sellers (including ongoing relationships with customers and suppliers), the counterparties to such transactions, and other factors affecting the speed, certainty and value of the Sale, (b) identify the highest or otherwise best offer for the Assets received at the Auction (the "Successful Bid(s)" and the bidder making such bid, the "Successful Bidder") and (c) communicate to the Buyer, the Creditors' Committee and the Monitor the identity of the Successful Bidders and the details of the Successful Bid. The determination of the Successful Bid by Sellers, after consultation with the Official Committee, at the conclusion of the Auction, shall be final.

Closing with Alternative Backup Bidders. If the Sellers receive additional Qualified Bids at the Auction, then, at the Sale Hearing, the Sellers will seek approval of the Successful Bid, and, at the Sellers' election, the next highest or best Qualified Bid (the "Alternate Bid," and such bidder, the "Alternate Bidder"). The Sellers' presentation to the Bankruptcy Court, and any other applicable court(s) whose approval is required, of the Successful Bid and, if applicable, the Alternate Bid will not constitute the Sellers' acceptance of either of any such bids, which acceptance will only occur upon the latest approval of such bid(s) to be delivered by the Bankruptcy Court at the Sale Hearing and any other applicable court(s) whose approval is required. Following approval of the sale to the Successful Bidder, if the Successful Bidder fails to consummate the sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized, but not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court or any other court. The Alternate Bid shall remain open until the earlier of (a) sixty (60) days following the entry of the Sale Order or (b) the consummation of the Sale to the Successful Bidder (the "Alternate Bid Expiration Date").

8

6.  **The Sale Hearing.** The hearing on the approval of the Sale (the "Sale Hearing") to the Successful Bidder shall be conducted before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Courtroom 3, Wilmington, Delaware on **March 25, 2009 at 10:30 a.m. (Eastern Time)** or at such other time as the Bankruptcy Court permits to approve the Sale or Sales to the Successful Bidder(s) at the Auction.

7.  **Key Deadlines.** By the Sale Procedures Order, the Bankruptcy Court has currently set: (a) **March 19, 2009 at noon (Eastern Time)** as the Bid Deadline; (b) **March 23, 2009 at 4:00 p.m. (Eastern Time)** as the deadline for objections to the Sale Motion; and (c) **March 18, 2009 at 9:30 a.m. (Eastern Time)** as the deadline for objections to the assumption and assignment of any Assumed Contract or the Cure Amount under any Assumed Contract.

8.  **Deadline for Objections to the Sale Procedures Order.** All objections to the relief requested in the Sale Motion (including without limitation any objection to the assumption and assignment of any contract or the Cure Amount under any contract) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 on or before **the relevant deadline**; and (d) served so as to be received on or before the Objection Deadline by the following (collectively, the "Objection Notice Parties"): (i) counsel to the Debtors, Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Fax: (212) 225-3999 (Attention: James L. Bromley and Lisa M. Schweitzer), and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, DE 19801, Fax: (302) 658-3989 (Attention: Derek C. Abbott); (ii) counsel to the Purchaser, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Fax: (212) 715-8000 (Attention: Ernest S. Wechsler), (iii) the U.S. Trustee (iv) counsel to the Monitor, Allen & Overy LLP, 1221 Avenue of the Americas, New York, NY 10020, Fax: (212) 610-6399 (Attention: Ken Coleman, Esq.), (v) counsel to the Official Creditors' Committee (the "Official Committee"), Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036, Fax: (212) 872-1002 (Attention: Fred S. Hodara); and (vi) counsel to the Bondholders Group, Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, NY 10005, Fax: (212) 822-5735 (Attention: Roland Hlawaty).

9.  **Documents.** Copies of the Sale Motion and the Sale Procedures Order may be examined by interested parties between the hours of 8:00 a.m. and 3:00 p.m. (ET) at the office of the Clerk of the Court, 824 Market Street, Wilmington, Delaware 19801, or by appointment during regular business hours at the offices of the Debtor's attorneys: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attention: James L. Bromley and Lisa M. Schweitzer. Additionally, copies of the foregoing may be downloaded from the Court's docket at www.deb.uscourts.gov.

Dated: February ___, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

[New York #2012571 v4]