```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF DELAWARE


IN RE:                        )  Case No. 09-10138(KG)
                              )  (JOINTLY ADMINISTERED)
                              )  Chapter 11
NORTEL NETWORKS, INC.,        )
et al.,                       )  Courtroom 3
                              )  824 Market Street
                 Debtors.     )  Wilmington, Delaware 19801
                              )
                              )  February 19, 2009
                              )  9:55 A.M.



                  TRANSCRIPT OF OMNIBUS HEARING
                BEFORE HONORABLE KEVIN GROSS
              UNITED STATES BANKRUPTCY JUDGE



APPEARANCES:

For the Debtors:          Morris Nichols Arsht & Tunnell, LLP
                          By:  DEREK ABBOTT, ESQ.
                               TOM DRISCOLL, ESQ.
                          1201 North Market Street
                          P.O. Box 1347
                          Wilmington, Delaware 19899-1347

                          Cleary Gottlieb Steen & Hamilton LLP
                          By:  LISA M. SCHWEITZER, ESQ.
                               JANE KIM, ESQ.
                          One Liberty Plaza
                          New York, NY 10006

ECRO:                     Brandon McCarthy

TRANSCRIPTION SERVICE:    TRANSCRIPTS PLUS
                          435 Riverview Circle
                          New Hope, Pennsylvania 18938
                          Telephone:  215-862-1115
                          Facsimile: 215-862-6639
                          e-mail CourtTranscripts@aol.com


  Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.
```

Appearances:
(Continued)

For JDS Uniphase Corp:          Ashby & Geddes
                                By:  AMANDA WINFREE, ESQ.
                                222 Delaware Avenue, 17th Floor
                                Wilmington, Delaware 19801

                                The Meyers Law Group
                                By: MERLE MEYERS, ESQ.
                                44 Montgomery Street, Suite 1010
                                San Francisco, California

For Emerson Network:            Werb & Sullivan
                                By:  DUANE WERB, ESQ.
                                300 Sullivan Avenue, P.O. Box 25046
                                Wilmington, Delaware 19899

                                von Briesen & Roper, s.c.
                                By:  RANDALL CROCKER, ESQ.
                                411 East Wisconsin Avenue, Suite 700
                                Milwaukee, Wisconsin 53202

For Verizon:                    Smith Katzenstein & Furlow, LLP
                                By:  KATHY MILLER, ESQ.
                                800 Delaware Avenue
                                P.O. Box 410
                                Wilmington, Delaware 19899

For Credit Solutions:           Bayard, P.A.
                                By:  DAN O'BRIEN, ESQ.
                                222 Delaware Avenue, Suite 900
                                P.O. Box 25130
                                Wilmington, Delaware 19899-5130

For Sanmina-SCI                 Connolly Bove Lodge & Hutz, LLP
Corporation:                    By:  MARC PHILLIPS, ESQ.
                                The Nemours Building
                                1007 North Orange Street
                                P.O. Box 2207
                                Wilmington, Delaware 19899

For the Committee:              Richards Layton & Finger, PA
                                By:  CHRIS SAMIS, ESQ.
                                One Rodney Square, P.O. Box 551
                                Wilmington, Delaware 19899

                                Akin, Gump, Strauss, Hauer & Feld, LLP
                                By:  FRED HODARA, ESQ.
                                     JOSH STURM, ESQ.
                                590 Madison Avenue
                                New York, NY 10022-2524

Appearances:
(Continued)

For Wireless (Tx) LP:       Pepper Hamilton
                            By:  JAMES C. CARIGNAN, ESQ.
                            Hercules Plaza, 1313 Market Street
                            Suite 5100, P.O. Box 1709
                            Wilmington, Delaware 19899-1709


The U.S. Trustee:           United States Department of Justice
                            Office of the U.S. Trustee
                            By:  PATRICK TINKER, ESQ.
                            844 King Street
                            Wilmington, Delaware 19899


For Andrew, LLC:            Morris James, LLP
                            By:  BRETT FALLON, ESQ.
                            500 Delaware Avenue, Suite 1500
                            P.O. Box 2306
                            Wilmington, Delaware 19899-2306

TELEPHONIC APPEARANCES:

For Verizon                 Arnall Golden & Gregory, LLP
Communications:             By:  DARRYL LADDIN, ESQ.
                            171 17th Street NW, Suite 2100
                            Atlanta, Georgia 30363-1031


For FlexTronics:            Curtis, Mallet-Prevost, Colt & Mosle
                            By:  JAMES DREW, ESQ.
                            101 Park Avenue
                            New York, New York 10178-0061


For Silver Lakes            Ropes & Gray, LLP
Capital:                    By:  ANNELIESE H. PAK, ESQ.
                            1211 Avenue of the Americas
                            New York City, New York 10036-8704


For That Consulting         Kelley Dry & Warren, LLP
                            By:  HOWARD S. STEEL, ESQ.
                            101 Park Avenue
                            New York, NY 10178-0002

1            THE COURT:  Good morning, everyone.  Please be

2   seated.  Thank you.  Good morning, Mr. Abbott.

3            MR. ABBOTT:  Good morning, Your Honor.  How are you

4   this morning?

5            THE COURT:  Very well.  How are you?

6            MR. ABBOTT:  I have no complaints, Your Honor.

7            THE COURT:  Good.

8            MR. ABBOTT:  And hopefully you won't have any either.

9   I think today ought to be relatively easy.

10            THE COURT:  Okay.

11            MR. ABBOTT:  And Your Honor will recall Ms.

12   Schweitzer from Cleary Gottlieb --

13            THE COURT:  Yes, Ms. Schweitzer.

14            MR. ABBOTT:  -- who will start the agenda.

15            THE COURT:  Okay.

16            MR. ABBOTT:  Thank you, Your Honor.

17            THE COURT:  Thank you, Mr. Abbott.  Ms. Schweitzer,

18   welcome back.

19            MS. SCHWEITZER:  Good morning, Your Honor.

20            THE COURT:  Good morning.

21            MS. SCHWEITZER:  For the record, Lisa Schweitzer for

22   Clear Gottlieb for the Nortel debtors.

23            THE COURT:  Yes.

24            MS. SCHWEITZER:  And Nortel is now about a month into

25   its reorganization cases.  And we have to say that we're

1   pleased with the progress so far.  That we've had suppliers and

2   customers who have been very supportive of the company since

3   the filings.

4           THE COURT:  Good.

5           MS. SCHWEITZER:  And the company has worked very hard

6   to make sure the transition to bankruptcy has been smooth for

7   everyone, as much as possible under the circumstances.

8           THE COURT:  It's certainly been smooth from my end.

9           MS. SCHWEITZER:  Well, that's good to hear.  We

10  appreciate that.  And we try very hard.  So -- and to that end,

11  as Mr. Abbott stole my thunder on that point is that we are

12  pleased to say that we've filed revised orders for certain of

13  the motions, and we have a, as far as we know, uncontested

14  agenda today, which is -- hopefully we'll make another smooth

15  day for you.

16          THE COURT:  Absolutely.

17          MS. SCHWEITZER:  As Your Honor, I'm sure, is aware,

18  we also have our initial 341(a) meeting today.

19          THE COURT:  Yes.

20          MS. SCHWEITZER:  The schedules haven't been filed, so

21  there will be a follow on meeting.  But Greg Boone from Nortel

22  is present in the courtroom today, is also going to be

23  attending on behalf of Nortel at the meeting.

24          THE COURT:  Okay.

25          MS. SCHWEITZER:  So, we have the pleasure of his

 1   company.

 2            And with respect to that, I'll turn it over to my

 3   colleague, Jane Kim, who will start marching you through the

 4   agenda.

 5            THE COURT:  Thank you, Ms. Schweitzer.

 6            MS. SCHWEITZER:  Thank you.

 7            THE COURT:  Ms. Kim, welcome back to you, as well.

 8            MS. KIM:  Thank you.  Good morning, Your Honor.  For

 9   the record, Jane Kim from Cleary Gottlieb Steen & Hamilton on

10   behalf of the debtors.

11            The first item on the agenda is the Shearman and

12   Sterling retention application.  We had filed a certificate of

13   no objection and Your Honor had ordered -- entered an order

14   approving that --

15            THE COURT:  Yes.

16            MS. KIM:  -- retention application yesterday.

17            THE COURT:  Yes.

18            MS. KIM:  So, thank you for that.

19            THE COURT:  Certainly.

20            MS. KIM:  The second item on the agenda is the

21   utilities motion.  And, in particular, the adjourned --

22   adjournment with respect to issues of Verizon.  We have reached

23   a settlement in principle with Verizon and the Committee -- the

24   Creditors' Committee has approved the terms of that, as far as

25   I understand.  We are in the process of finalizing that

1 documentation and we expect to submit a stipulation to this

2 Court within the next couple days.  But -- so, therefore, we

3 would respectfully request an adjournment to permit the parties

4 to finalize resolution of that stipulation and settlement.  And

5 hopefully we do not expect to have to appear before this Court

6 with respect to that matter.

7          And I believe that counsel to Verizon is either

8 present here or on the phone.  And if they have any comments --

9          THE COURT:  I know Ms. Miller is here.  Good morning,

10 Ms. Miller.  And I don't know if your co-counsel -- let me see.

11          MS. MILLER:  Yes, Mr. Laddin.

12          THE COURT:  Yes, Mr. Laddin.

13          MR. LADDIN:  Yes, good morning, Your Honor.

14          THE COURT:  Good morning, Mr. Laddin.  And that is

15 fine with Verizon?

16          MR. LADDIN:  Yes, Your Honor.  Ms. Kim is correct.

17 We have an agreement in principle.  We think we've concluded

18 the documentation, and the debtor is simply waiting on final

19 approval.  I am hopeful that we will get this stipulation

20 submitted to Your Honor in the next couple of days.

21          THE COURT:  That's wonderful.  Thank you, Mr. Laddin.

22 Thank you, Ms. Miller.

23          MS. MILLER:  Your Honor, may I be excused?

24          THE COURT:  You may.

25          MS. MILLER:  Thank you.

1          THE COURT:  Thank you.  All right.  Ms. Kim, that's

2  fine.  Then certainly I grant that adjournment.

3          MS. KIM:  Thank you, Your Honor.

4          The third item on the agenda is the cash management

5  motion.  As Your Honor may recall, certain aspects of the first

6  day order with respect to the cash management motion were

7  interim, which included the waiver of the requirements of

8  Section 345(b) and issues with the bank accounts.

9          THE COURT:  Yes.

10          MS. KIM:  As well as the final approval of the $200

11  million loan from N and I to its Canadian parent, and now the

12  $75 million of which was initially approved by this Court.

13          The debtors are still in discussions with the U.S.

14  Trustee with respect to the bank accounts and the Section

15  345(b) issues.  And are also in discussions with the Committee

16  as to the N and I NNL loan.  And as a result, we would request

17  an adjournment to a subsequent hearing on those issues.  But

18  are proceeding along when discussions are going smoothly.

19          THE COURT:  Does anyone else wish to be heard on

20  this?  I'm certainly pleased to grant the adjournment because I

21  remember from the first day hearing just how complicated the

22  cash management system was and the issue relating to the loan.

23          MS. KIM:  Thank you, Your Honor.

24          THE COURT:  So, that's fine.

25          MS. KIM:  Thank you, Your Honor.

1          The sole issue for today with respect to the cash

2  management motion is that we've filed a notice supplement --

3  asking the Court to enter an order supplementing the cash

4  management motion to add seven new bank accounts that were

5  inadvertently left off the debtors' schedule that relate to

6  foreign branch offices that are owned by the debtors.  And so

7  we had submitted a revised schedule with those additional bank

8  accounts added in.

9          THE COURT:  Yes.  And does anyone else wish to be

10  heard on this?

11                    (No audible response heard)

12          THE COURT:  All right.  Certainly I will enter the

13  order.

14          MS. KIM:  Thank you, Your Honor.

15          The next item on the agenda is the motion to approve

16  procedures for the sale of de minimis assets.  We had -- the

17  debtors had filed a certificate of no objection with respect to

18  that motion.  And Your Honor, again, entered an order approving

19  that motion yesterday.

20          THE COURT:  Yes, I did.

21          MS. KIM:  So, thank you for that.

22          The fifth motion on the -- item on the agenda is the

23  motion to approve the rejection of non-residential real

24  property leases and subleases.  The debtors, by this motion,

25  seek to reject five leases relating to seven properties, as

1  well as the subleases relating to those same seven properties.

2       The debtors are currently undergoing an analysis of

3  all of the real property leases and have identified these seven

4  properties as properties that were not occupied currently by

5  the debtors.  They are either vacant or they've been subleased.

6  And the rent under each of the leases is higher than the market

7  rent for those same properties.

8       And for the subleased -- the properties that are

9  subleased, the sublease rent is lower than the prime lease

10 rent.  So, the debtors determined that the cost of continuing

11 to pay rent for the duration of those leases was higher than

12 any rejection damages, particularly because of the damages' cap

13 of Section 502(b)(6).

14       THE COURT:  Yes.

15       MS. KIM:  The debtors also, because the rent under

16 those leases is higher than the market rent, would not be able

17 to assume or assign those leases without having to pay the new

18 tenants.

19       The Creditors' Committee received detailed

20 information from the debtors with respect to those leases and

21 subleases.  And as I understand them, do not object to the

22 rejection of those leases and subleases.

23       If Your Honor thinks that it would be necessary or

24 useful, Charles Meachum, who manages the asset and portfolio

25 management function for Nortel's real estate group is in the

1 courtroom and available to testify further as to why the

2 rejection of these leases are an exercise of the debtors'

3 business judgment.  And I also have available a proffer, if

4 Your Honor would think that it would be necessary or useful to

5 hear it.

6          THE COURT:  Well, I don't know if the Committee

7 wishes to be heard on this or not.

8          MR. HODARA:  No, Your Honor.

9          THE COURT:  No?  But I'm satisfied with the present

10 record.

11          MS. KIM:  Thank you, Your Honor.

12          THE COURT:  That the debtor has exercised its

13 business judgment appropriately and I defer to that business

14 judgment and will grant the motion.

15          MS. KIM:  Thank you, Your Honor.

16          I wanted to make a couple of extra notes on this

17 motion.

18          THE COURT:  Yes.

19          MS. KIM:  We are also seeking by this motion to

20 abandon certain property, which includes personal property,

21 furniture, fixtures or equipment and the like.  The debtors

22 believe that they have removed all non -- excuse me -- non-de

23 minimis property from the premises, or will have removed it by

24 February 28th, which is the date that -- by which we would

25 request that the rejections of these leases and subleases

1  become effective.

2          But we would seek authorization to abandon any

3  remaining property where the debtors have determined that the

4  cost of retrieving and selling that property would outweigh the

5  benefit of any recovery to the debtors.

6          And the only other items that I would like to mention

7  is that we have -- there was a limited objection that was filed

8  by --

9          THE COURT:  Yes.

10         MS. KIM:  -- Credit Solutions of America.  That

11  objection has been resolved and withdrawn through the

12  submission that -- on the basis of the debtor submitting a

13  revised proposed order which reflects that Credit Solutions of

14  America owes rent to Nortel under the sublease for the month of

15  February.  And that under Texas laws, CSA has certain priority

16  rights to the security deposit held by the debtors under that

17  sublease which are subject to the debtors' claims and defenses.

18         I can read the new paragraphs in the order, but it

19  basically summarizes that -- it says with respect to rejection

20  of the sublease between the debtors and CSA, recognizing that

21  CSA has not yet paid rental amounts due in respect of the month

22  of February, the debtors shall, subject to payment of such rent

23  within one business day of issuance of this order and reserving

24  any defenses and claims it may have against CSA under the

25  sublease, administer the security deposit in a timely and

13

1 reasonable manner in accordance with the terms of the sublease

2 and applicable law, including, but not limited to Section

3 93.005 of the Texas Property Code.

4        The debtors' agreement to administer the security

5 deposit and timely return any excess portion to CSA shall be

6 without prejudice to the claims and defenses of each party

7 regarding proposed setoffs, if any, against the security

8 deposit.

9        Upon rejection of the sublease agreement between

10 Nortel Networks, Inc. and Credit Solutions America, the debtors

11 and CSA agree to use commercially reasonable efforts to

12 expeditiously administer the security deposit with a goal,

13 subject to timely cooperation of landlord under the prime

14 lease, of completing the administration and returning the

15 excess deposit to CSA within 30 days of the effective date of

16 the rejection.

17        The personal property that is covered by the sublease

18 is abandoned to CSA.  CSA shall permit Nortel access to the

19 premises, including portions of the leased premises that are

20 subject to the sublease, at all times, through and including

21 February 28th, 2009, including without limitation for the

22 purpose of retrieving personal property that belongs to Nortel

23 and which CSA is not entitled to retain under the sublease.

24        And with that additional language, the limited

25 objection of CSA has been resolved.

14

1          THE COURT:  All right.  Thank you, Ms. Kim.

2          MS. KIM:  Your Honor, I believe counsel to CSA is

3 here.

4          THE COURT:  Yes.  Good morning.

5          MR. CARIGNAN:  Good morning, Your Honor.  James

6 Carignan of Pepper Hamilton.  I'm actually counsel for Wireless

7 (TX) LP, which is the first position landlord under the

8 Richardson Texas lease, which is the lease and the sublease

9 that counsel just discussed.

10          We have no objection to the rejection of this lease,

11 nor to the form of order that was proposed with the motion

12 being entered.

13          We do take issue, however, with any determination

14 being made today respecting any return or dealing in any

15 respect with the security deposit that was purportedly paid by

16 the subtenant.

17          We think that determination is inappropriate at this

18 juncture given that there's been no factual record respecting

19 the security deposit.

20          But more importantly, my client has been -- hasn't

21 had an opportunity to make an adequate presentation or legal

22 argument respecting any superior interest that it might have in

23 that security deposit.

24          The debtors filed a motion requesting authority to

25 reject the lease.  No one contests that relief requested and

1 the order proposed with the motion accomplishes that result.  I

2 think it's best for today that that order be entered and we

3 leave any disputes respecting the security deposit for another

4 day when the parties have had an adequate opportunity to

5 investigate the situation.

6            THE COURT:  Ms. Kim?

7            MS. KIM:  And, Your Honor, we would -- the language

8 in the proposed order, we believe, covers and is without

9 prejudice to the claims and defenses of any party.  So -- and

10 it's just to make clear that in accordance with applicable law,

11 the debtors are agreeing to administer the security deposit.

12 So, I don't believe that this is with prejudice to the

13 landlord's rights with respect to the security deposit, or any

14 other parties' rights.

15            THE COURT:  Mr. Carignan, have you had an opportunity

16 to review the language at this point?

17            MR. CARIGNAN:  No, I was -- I haven't.  And I

18 apologize, I should have confirmed with debtors' counsel before

19 the hearing, but I didn't know that any progress had been made

20 on this issue.

21            I was listening to her presentation, though, Your

22 Honor.  It sounds like it's going to be applied to outstanding

23 rent owed by the subtenant, which would be fine.  But we would

24 have a problem with any portion of it being returned.

25            The first position landlord, my client, might have a

1  superior interest in it.

2        THE COURT:  Well, I'm certainly not in a position,

3  and I don't think the parties are either to resolve that issue

4  today.  But with the understanding that your rights are

5  reserved with respect to any balance of that security deposit,

6  and what your interest may or may not be, it sounds like there

7  is not a problem with the language being presented.

8        MS. KIM:  And, Your Honor, if it would be helpful to

9  counsel to the landlord, what we can -- what I would propose to

10 do is to -- rather than submitting the proposed order,

11 immediately after this hearing give counsel the opportunity to

12 review the language.  And if there is any -- it was certainly

13 not our intent to prejudice anybody's rights with respect to

14 the security deposit.

15        THE COURT:  Yes.

16        MS. KIM:  So, we can take a little time to have

17 counsel review that.

18        THE COURT:  Okay.  Mr. Carignan, why don't we do

19 that?

20        MR. CARIGNAN:  That is --

21        THE COURT:  Give you an opportunity to look at the

22 language.

23        MR. CARIGNAN:  That'd be great, as long as it

24 preserves everybody's rights, whatever they are, to that

25 security deposit, that would be acceptable to us.

1            THE COURT:  All right.

2            MR. CARIGNAN:  Thank you, Your Honor.

3            THE COURT:  Well, I don't know if you even have a

4  copy of that order, an extra copy perhaps to share with Mr.

5  Carignan.

6            MS. KIM:  I'll do it right now.

7            THE COURT:  All right.  So, we will hold off a little

8  bit on the entry of the order.

9            MS. KIM:  Thank you, Your Honor.

10            THE COURT:  But certainly with the exception of that

11  one issue, the relief is granted.

12            MS. KIM:  Thank you, Your Honor.  I should note just

13  -- I'm sorry, one additional -- we had received a comment from

14  another subtenant, Raytheon Company, that requested some

15  clarifying language in the order.  So, we are clarifying in the

16  proposed order that rejections -- the actual rejections will be

17  effective as of February 28th of this year, and that debtors

18  will vacate the premises that are occupied by the Raytheon --

19  under this Raytheon sublease by February 28th.

20            THE COURT:  All right.  Thank you, Ms. Kim.

21            MS. KIM:  Thank you, Your Honor.

22            And with that, I would cede the podium back to Ms.

23  Schweitzer for the final item on the agenda.

24            THE COURT:  Thank you.  Ms. Schweitzer?

25            MS. SCHWEITZER:  You're going to have to call me Lisa

1 also.

2                    (Laughter)

3           MS. SCHWEITZER:  So, I'm here to present the final

4 motion on the agenda, which is the approval of the reclamation

5 procedures.  This was filed as a procedural motion.  We had --

6 the debtor had received less than -- a few reclamation claims

7 at the time it was filed, I think we're up to about 29

8 reclamation claims now.  And theoretically, as far as I know,

9 we're done having the -- the period having expired.

10          THE COURT:  Yes.

11          MS. SCHWEITZER:  So, we are at the point of

12 reconciling 29 claims that relate to literally thousands of

13 invoices and just down to nuts and bolts and cable wires and

14 larger things, as well.  But we're faced with the debtor trying

15 to reconcile these claims in an orderly, fair, and efficient

16 manner.  And the procedures are meant to just provide this

17 opportunity for the debtors to take 120 days from the petition

18 date, which is really only about 90 days going forward, to

19 reconcile the claims.  And it can, on a rolling basis, file

20 reclamation notices with the Court, which will announce the

21 debtors' view of the allowed portion of the claim and give the

22 counterparty, the Committee, the U.S. Trustee the chance to

23 object to that reconciled number.  And if there is an

24 objection, there would be a meet and confer process, and then

25 you would go to the Court, if necessary.

1          It's the debtors' goal to do this obviously on a

2  rolling basis, as they can, in all efforts to reconcile with

3  people where they can.  And the procedures enabled them also to

4  present settlements, rather than just a unilateral

5  announcement.  And so in the same way we would put up

6  settlement notices, subject to an ability to object and come to

7  the Court to resolve objections if and as necessary.

8          The procedures seem to have been largely well

9  received.  We have two limited objections filed, one by Andrew,

10  LLC, and one by JDSU.  And both of those have now been resolved

11  through the addition and clarification of certain provisions in

12  the order.

13          The provisions supplement the procedures for coming

14  back to the Court to make clear that there's a meet and confer

15  process and that either the reclamation claimant or the debtors

16  can come back.  And if there's an objection to the reclamation

17  notice, and I believe it's 20 days' notice, we'll come to the

18  Court.  The first hearing would not be evidentiary, but it's

19  all set forth in the procedures as they were filed last night,

20  and there's a prior version also, that set forth these changes.

21          The second thing is to make clear that if we file a

22  reclamation notice, that the treatment that the debtors would

23  propose would either be to grant an administrative claim or to

24  return the goods.  So, that's made clear because certain people

25  asked about that.

1         And the third thing is something that we thought was

2  clear, but we're happy to clarify once again.  Which is that

3  claimants, by participating in these procedures, haven't

4  prejudiced their rights in not coming to the Court and seeking

5  stay relief, or further segregation relief.  So -- which is

6  hopefully the goal of any procedure, but we're happy to make

7  that explicit rather than implicit or partially explicit in the

8  procedures.  So, all those changes are reflected in the black

9  line.

10         I think one other point that folks asked us to

11  clarify was that -- and it's not in the order, but we're happy

12  to represent it -- is that -- obviously I can't speak to the

13  sufficiency of the 29 notices we've received.  They vary in the

14  level of detail and they vary in whether the information is

15  sufficient for us to be able to identify the goods in our

16  possession, and that will be a conversation for another day.

17         But to the extent that we're given sufficient

18  information, and we have been able to identify the goods, we

19  have the normal inventory tracking systems in place such that

20  if the goods were moved or used after the time that we've been

21  able to identify them, that we could track what has happened to

22  the goods over time.  So, that -- someone asked us to

23  represent, and we're happy to do so.

24         The final note is that for JDSU, we're pleased to say

25  that we are actually making progress and we have managed to

1  reconcile $2 million of their claim down to serial numbers and

2  the like.  So, we filed -- we add just the orders of provision

3  saying that we were happy to pay for those goods, they've now

4  been reconciled.  The Committee was made aware of that partial

5  settlement of the claim and has no objection to it is my

6  understanding.

7         And so, therefore, we've added that to the order.

8  That the debtors -- upon entry of the orders, the debtors would

9  have 10 days to pay for those goods, and then they're now free

10 for the debtors to use.  So, that apparently resolves all of

11 the different objections.

12        We had had Wendy Ferguson from Nortel available by

13 phone, and --

14        THE COURT:  Yes.

15        MS. SCHWEITZER:  -- apparently there was a glitch in

16 the TV link and I won't comment on whether it's the Court's

17 side or the client's side, I'll just take the 5th and blame it

18 on the weather that it didn't happen.  But she's available to

19 -- if any -- if the Court had any questions, or anyone else had

20 questions, or wanted more information on the procedures.  But

21 given it's uncontested, we would offer it forward for your

22 approval.

23        THE COURT:  All right.  I see Mr. Phillips coming

24 forward.  Good morning, Mr. Phillips.

25        MR. PHILLIPS:  Good morning, Your Honor.  Marc

1   Phillips for Sanmina-SCI.

2          We just have one slight issue.  With revised

3   Paragraph 2(f) of the procedures order, it provides for either

4   a return of the goods, an admin claim, or a combination of the

5   foregoing.  And my client has a problem with this cherry-

6   picking effect of the combination of return and admin, and

7   doesn't believe that 546(c) really provides for a combination

8   of the two.  And we would ask for either a return of all of our

9   goods, or an admin claim for all of our goods and not a

10  combination of the two.

11         THE COURT:  Ms. Schweitzer, any position on that?

12         MS. SCHWEITZER:  Sure.  First, it's, of course, the

13  battle of dealing with all the consensus and making them happy.

14  That was actually added by someone else with the concern that

15  if the goods were gone, that you would necessarily need the

16  flexibility.

17         But I believe the procedures motion also provides

18  that people, once you file that notice, have the opportunity to

19  object to the treatment that you're proposing, as well.  So, I

20  would say we would intend to work in good faith with Sanmina to

21  reconcile.  It wasn't intended to be a cherry-picking

22  provision, it was intended to say that, look, you know, we're -

23  - each case is going to be different and we want the

24  flexibility.  But if we propose something that the counterparty

25  were objecting to, they can object at the time it's proposed.

1          And so we'd rather have the flexibility now and deal

2    with it in a one off basis as prior procedures have allowed one

3    or both of those remedies.

4          THE COURT:  Mr. Phillips, is that acceptable that

5    there is this understanding that your objection can also be

6    directed to the nature of response by the debtor?

7          MR. PHILLIPS:  Yes, that should satisfy my client.

8          THE COURT:  Okay.

9          MR. PHILLIPS:  Thank you, Your Honor.

10         THE COURT:  Thank you.  Anyone else?  Mr. Fallon,

11   good morning.

12         MR. FALLON:  Good morning, Your Honor.  Brett Fallon

13   for Andrew, LLC.

14         Debtors' counsel is correct.  We have resolved our

15   issues.  I just wanted to clarify one point of her

16   representation.  I think what I heard her say -- I don't want

17   to be too picayune.  But what I heard her say is they have the

18   ability to track where the goods have gone and that sort of

19   thing.  And I think the important thing for the reclamation

20   claim is that they're able to go back in time.  So, that when

21   they made -- or rather when we made the reclamation claim, that

22   they would be able to say that they had them in their inventory

23   at that time, and where they were, and that sort of thing.  And

24   I think that's probably the most important thing for the

25   inventory tracking system.

1        So, I would just like clarification that they're able

2  to do that.

3        MS. SCHWEITZER:  Again, Your Honor, the debtors

4  generally have robust information.  Inventory tracking systems,

5  it's a little bit difficult for me to make a blanket statement

6  that they'll be able to find every single good.  Because some

7  of them are not identified by serial number, some of them are

8  literally examples of cable wire or batteries.  So, we might

9  have to use estimation procedures.  We could say goods came in,

10 this is where they came in, we'll use a principle for how to

11 determine them.  But it, again, depends on the ability of the

12 counterparty to identify the goods.

13       But, of course, in all cases, we would work in good

14 faith.  And we have general inventory tracking systems that we

15 can -- it's not chaos over there.  We have a methodology for

16 resolving those types of disputes, if any were to arise.

17       THE COURT:  Okay.  Mr. Fallon, is that sufficient?

18       MR. FALLON:  Yes, Your Honor.  We'll work with that.

19 And hopefully we'll be able to work through all those issues.

20       THE COURT:  Okay.  Thank you, Mr. Fallon.

21       Now, Mr. Hodara, good morning.

22       MR. HODARA:  Good morning, Your Honor.  Fred Hodara,

23 Akin Gump for the Official Committee of Unsecured Creditors.

24       Your Honor, the Committee did provide comments

25 informally to the debtors and worked those through with the

1 debtors, and are satisfied with the procedures as they have

2 been prepared at this time.

3          THE COURT:  All right.  Thank you, Mr. Hodara.

4          MR. HODARA:   Thank you.

5          THE COURT:  Thank you, sir.  No one else?

6          MS. SCHWEITZER:  I believe that's everyone.  So, on

7 that, we would submit it for your approval unless you have

8 further questions about the procedures.

9          THE COURT:  I don't.  I'm pleased to grant the motion

10 and approve the procedures.  I recognize that this is really --

11 it satisfies a lot of the purposes, of course, of bankruptcy,

12 one of which is to give the debtor a little bit of a breathing

13 spell to get organized in its business affairs and to be able

14 to respond to creditors and other claimants.  And, as well, to

15 provide as equal treatment to claimants as possible.  And I

16 think that these procedures certainly do accomplish those

17 purposes, and I'm pleased to approve them.

18          MS. SCHWEITZER:  Thank you, Your Honor.  And with

19 that, I believe our agenda is done for the day.

20          THE COURT:  Well, that was a very straightforward and

21 well handled hearing.  Because obviously I know there are a lot

22 of difficult issues that the debtors are addressing, and I'll

23 be hearing from them, I'm sure, in the near future.  But -- or

24 I should say about them in the near future.  But for today at

25 least we've accomplished, I think, a good bit.

1          MS. SCHWEITZER:  Yes.  We thank you for your time,

2   Your Honor.

3          THE COURT:  Absolutely.  And I will just -- will you

4   be submitting orders to me?  Or do you want me to use --

5          MR. ABBOTT:  Your Honor, I think we have -- with the

6   exception of that one, right?

7          MS. KIM:  Right.

8          MR. ABBOTT:  We've got them -- the rest of them now.

9          THE COURT:  I don't know if Mr. Carignan had a chance

10  to review the order and -- Mr. Carignan, are you satisfied that

11  -- you may approach, Mr. Abbott, if you'd like.  Thank you.

12                              (Pause)

13          MS. KIM:  Your Honor, I think we may need a few more

14  minutes after the hearing --

15          THE COURT:  Okay.

16          MS. KIM:  -- to be able to resolve issues.

17          THE COURT:  That's fine.  You can just -- you can

18  either submit it later today --

19          MR. ABBOTT:  Perhaps we can just submit it with the

20  certificates this afternoon, Your Honor?

21          THE COURT:  That's perfectly fine.

22          MS. KIM:  Yes, that's great.

23          THE COURT:  All right?

24          MS. KIM:  Thank you very much, Your Honor.

25          THE COURT:  Thank you, Counsel.  Nothing further?

27

1  Then we will stand in recess until the next hearing.  Good day,

2  everyone.

3       (Whereupon, at 10:35 A.M. the hearing was adjourned.)

4

5                              CERTIFICATE

6

7       I certify that the foregoing is a correct transcript from

8  the electronic sound recording of the proceedings in the

9  above-entitled matter.

10

11

12   /s/  Karen Hartmann                 Date:  February 23, 2009

13  TRANSCRIPTS PLUS

14

15

16

17

18

19

20

21

22

23

24

25

**$**

$2- 21:1
$200- 8:10
$75- 8:12

**&**

&- 6:9

**/**

/S/- 27:12

**1**

10- 21:9
10:35- 27:3
120- 18:17

**2**

20- 19:17
2009- 13:21 27:12
23- 27:12
28TH- 11:24 13:21
17:17,19
29- 18:7,12 20:13
2F- 22:3

**3**

30- 13:15
341A- 5:18
345B- 8:8,15

**5**

502B6- 10:13
546C- 22:7
5TH- 21:17

**9**

90- 18:18
93.005- 13:3

**A**

ABANDON- 11:20
12:2
ABANDONED- 13:18
4:2,3,6,8,11,14,1
6,17
ABBOTT- 5:11
26:5,8,11,19
ABILITY- 19:6
23:18 24:11
ABLE- 10:16
20:15,18,21
23:20,22
24:1,6,19 25:13
26:16
ABSOLUTELY- 5:16
26:3
ACCEPTABLE- 16:25
23:4
ACCESS- 13:18
ACCOMPLISH- 25:16
ACCOMPLISHED-
25:25
ACCOMPLISHES-
15:1
ACCORDANCE- 13:1
15:10
ACCOUNTS- 8:8,14
9:4,8

ACTUAL- 17:16
ADD- 9:4 21:2
ADDED- 9:8 21:7
22:14
ADDITION- 19:11
ADDITIONAL- 9:7
13:24 17:13
ADDRESSING- 25:22
ADEQUATE- 14:21
15:4
ADJOURNED- 6:21
27:3
ADJOURNMENT- 6:22
7:3 8:2,17,20
ADMIN- 22:4,6,9
ADMINISTER- 12:25
13:4,12 15:11
ADMINISTRATION-
13:14
ADMINISTRATIVE-
19:23
AFFAIRS- 25:13
AFTERNOON- 26:20
AGAINST- 12:24
13:7
AGENDA- 4:14 5:14
6:4,11,20 8:4
9:15,22 17:23
18:4 25:19
AGREE- 13:11
AGREEING- 15:11
AGREEMENT- 7:17
13:4,9
AKIN- 24:23
ALLOWED- 18:21
23:2
AMERICA- 12:10,14
13:10
AMOUNTS- 12:21
ANALYSIS- 10:2
ANDREW- 19:9
23:13
ANNOUNCE- 18:20
ANNOUNCEMENT-
19:5
ANYBODY'S- 16:13
APOLOGIZE- 15:18
APPARENTLY-
21:10,15
APPEAR- 7:5
APPLICABLE- 13:2
15:10
APPLICATION-
6:12,16
APPLIED- 15:22
APPRECIATE- 5:10
APPROACH- 26:11
APPROPRIATELY-
11:13
APPROVAL- 7:19
8:10 18:4 21:22
25:7
APPROVE- 9:15,23
25:10,17
APPROVED- 6:24
8:12
APPROVING- 6:14
9:18
ARGUMENT- 14:22

ARISE- 24:16
ASPECTS- 8:5
ASSET- 10:24
ASSETS- 9:16
ASSIGN- 10:17
ASSUME- 10:17
ATTENDING- 5:23
AUTHORITY- 14:24
AUTHORIZATION-
12:2
AVAILABLE- 11:1,3
21:12,18
AWARE- 5:17 21:4

**B**

BACK- 4:18 6:7
17:22 19:14,16
23:20
BALANCE- 16:5
BANK- 8:8,14
9:4,7
BANKRUPTCY- 5:6
25:11
BASIS- 12:12
18:19 19:2 23:2
BATTERIES- 24:8
BATTLE- 22:13
BECOME- 12:1
BELONGS- 13:22
BENEFIT- 12:5
BETWEEN- 12:20
13:9
BIT- 17:8 24:5
25:12,25
BLACK- 20:8
BLAME- 21:17
BLANKET- 24:5
BOLTS- 18:13
BOONE- 5:21
BOTH- 19:10 23:3
BRANCH- 9:6
BREATHING- 25:12
BRETT- 23:12
BUSINESS- 11:3,13
12:23 25:13

**C**

CABLE- 18:13 24:8
CALL- 17:25
CAN- 12:18
16:9,16 18:19
19:2,3,16 22:25
23:5 24:15
26:17,19
CAN'T- 20:12
CANADIAN- 8:11
CAP- 10:12
CARIGNAN- 14:5,6
15:15,17
16:18,20,23
17:2,5 26:9,10
CASE- 22:23
CASES- 4:25 24:13
CASH- 8:4,6,22
9:1,3
CEDE- 17:22
CERTAIN- 5:12 8:5
11:20 12:15
19:11,24

CERTAINLY- 5:8
6:19 8:2,20 9:12
16:2,12 17:10
25:16
CERTIFICATE- 6:12
9:17 27:5
CERTIFICATES-
26:20
CERTIFY- 27:7
CHANCE- 18:22
26:9
CHANGES- 19:20
20:8
CHAOS- 24:15
CHARLES- 10:24
CHERRY- 22:5
CHERRY-PICKING-
22:21
CIRCUMSTANCES-
5:7
CLAIM- 18:21
19:23 21:1,5
22:4,9 23:20,21
CLAIMANT- 19:15
CLAIMANTS- 20:3
25:14,15
CLAIMS- 12:17,24
13:6 15:9
18:6,8,12,15,19
CLARIFICATION-
19:11 24:1
CLARIFY- 20:2,11
23:15
CLARIFYING- 17:15
CLEAR- 4:22 15:10
19:14,21,24 20:2
CLEARY- 4:12 6:9
CLIENT'S- 21:17
CO-COUNSEL- 7:10
CODE- 13:3
COLLEAGUE- 6:3
COMBINATION-
22:4,6,7,10
COME- 19:6,16,17
COMING- 19:13
20:4 21:23
COMMENT- 17:13
21:16
COMMENTS- 7:8
24:24
COMMERCIALLY-
13:11
COMMITTEE-
6:23,24 8:15
10:19 11:6 18:22
21:4 24:23,24
COMPANY- 5:2,5
6:1 17:14
COMPLAINTS- 4:6
COMPLETING- 13:14
COMPLICATED- 8:23
CONCERN- 22:14
CONCLUDED- 7:7
CONFER- 18:24
19:14
CONFIRMED- 15:18
CONSENSUS- 22:13
CONTESTS- 14:25
CONTINUING- 10:10

CONVERSATION-
20:16
COOPERATION-
13:13
COPY- 17:4
CORRECT- 7:16
23:14 27:7
COST- 10:10 12:4
COUNSEL- 7:7
14:2,6,9 15:18
16:9,11,17 23:14
26:25
COUNTERPARTY-
18:22 22:24 24:12
COUPLE- 7:2,20
11:16
COURSE- 22:12
24:13 25:11
COURT'S- 21:16
COURTROOM- 5:22
11:1
COVERED- 13:17
COVERS- 15:8
CREDIT- 12:10,13
13:10
CREDITORS- 24:23
25:14
CREDITORS'- 6:24
10:19
CSA-
13:5,11,15,18,23,
25
12:15,20,21,24
14:2
CURRENTLY- 10:2,4
CUSTOMERS- 5:2

**D**

DAMAGES- 10:12
DAMAGES'- 10:12
DATE- 11:24 13:15
18:18 27:12
DAY- 5:15 8:6,21
12:23 15:4 20:16
25:19 27:1
DAYS- 7:2,20
13:15 18:17,18
21:9
DAYS'- 19:17
DE- 9:16
DEAL- 23:1
DEALING- 14:14
22:13
DEBTOR- 7:18
11:12 12:12
18:6,14 23:6
25:12
DEBTORS- 4:22
6:10 8:13
9:6,17,24
10:2,5,10,15,20
11:21
12:3,5,16,20,22
13:10 14:24 15:11
17:17 18:17
19:15,22 21:8,10
24:3,25 25:1,22
DEBTORS'- 9:5
11:2 12:17 13:4

15:18 18:21 19:1 23:14
**DEFENSES-** 12:17,24 13:6 15:9
**DEFER-** 11:13
**DEPENDS-** 24:11
**DEPOSIT-** 12:16,25 13:5,8,12,15 14:15,19,23 15:3,11,13 16:5,14,25
**DETAIL-** 20:14
**DETAILED-** 10:19
**DETERMINATION-** 14:13,17
**DETERMINE-** 24:11
**DETERMINED-** 10:10 12:3
**DIDN'T-** 15:19 21:18
**DIFFERENT-** 21:11 22:23
**DIFFICULT-** 24:5 25:22
**DIRECTED-** 23:6
**DISCUSSED-** 14:9
**DISCUSSIONS-** 8:13,15,18
**DISPUTES-** 15:3 24:16
**DOCUMENTATION-** 7:1,18
**DOESN'T-** 22:7
**DUE-** 12:21
**DURATION-** 10:11

**E**
**EACH-** 10:6 13:6 22:23
**EASY-** 4:9
**EFFECT-** 22:6
**EFFECTIVE-** 12:1 13:15 17:17
**EFFICIENT-** 18:15
**EFFORTS-** 13:11 19:2
**ELECTRONIC-** 27:8
**ENABLED-** 19:3
**ENTER-** 9:3,12
**ENTERED-** 6:13 9:18 14:12 15:2
**ENTITLED-** 13:23
**ENTRY-** 17:8 21:8
**EQUAL-** 25:15
**EQUIPMENT-** 11:21
**ESTATE-** 10:25
**ESTIMATION-** 24:9
**EVERYBODY'S-** 16:24
**EVERYONE-** 4:1 5:7 25:6 27:2
**EVIDENTIARY-** 19:18
**EXAMPLES-** 24:8
**EXCEPTION-** 17:10 26:6
**EXCESS-** 13:5,15
**EXCUSE-** 11:22

**EXCUSED-** 7:23
**EXERCISE-** 11:2
**EXERCISED-** 11:12
**EXPECT-** 7:1,5
**EXPEDITIOUSLY-** 13:12
**EXPIRED-** 18:9
**EXPLICIT-** 20:7
**EXTENT-** 20:17
**EXTRA-** 11:16 17:4

**F**
**FACED-** 18:14
**FACTUAL-** 14:18
**FAIR-** 18:15
**FAITH-** 22:20 24:14
**FALLON-** 23:10,12 24:17,18,20
**FAR-** 5:1,13 6:24 18:8
**FEBRUARY-** 11:24 12:15,22 13:21 17:17,19 27:12
**FERGUSON-** 21:12
**FIFTH-** 9:22
**FILE-** 18:19 19:21 22:18
**FILED-** 5:12,20 6:12 9:2,17 12:7 14:24 18:5,7 19:9,19 21:2
**FILINGS-** 5:3
**FINAL-** 7:18 8:10 17:23 18:3 20:24
**FINALIZE-** 7:4
**FINALIZING-** 6:25
**FIND-** 24:6
**FINE-** 7:15 8:2,24 15:23 26:17,21
**FIRST-** 6:11 8:5,21 14:7 15:25 19:18 22:12
**FIVE-** 9:25
**FIXTURES-** 11:21
**FLEXIBILITY-** 22:16,24 23:1
**FOLKS-** 20:10
**FOLLOW-** 5:21
**FOREGOING-** 22:5 27:7
**FOREIGN-** 9:6
**FORM-** 14:11
**FORTH-** 19:19,20
**FORWARD-** 18:18 21:21,24
**FRED-** 24:22
**FREE-** 21:9
**FUNCTION-** 10:25
**FURNITURE-** 11:21
**FURTHER-** 11:1 20:5 25:8 26:25
**FUTURE-** 25:23,24

**G**
**GENERAL-** 24:14
**GENERALLY-** 24:4
**GET-** 7:19 25:13
**GIVE-** 16:11,21

18:21 25:12
**GIVEN-** 14:18 20:17 21:21
**GLITCH-** 21:15
**GO-** 18:25 23:20
**GOAL-** 13:12 19:1 20:6
**GOING-** 5:22 8:18 15:22 17:25 18:18 22:23
**GONE-** 22:15 23:18
**GOOD-** 4:1,2,3,7,19,20 5:4,9 6:8 7:9,13,14 14:4,5 21:24,25 22:20 23:11,12 24:6,13,21,22 25:25 27:1
**GOODS-** 19:24 20:15,18,20,22 21:3,9 22:4,9,15 23:18 24:9,12
**GOT-** 26:8
**GOTTLIEB-** 4:12,22 6:9
**GRANT-** 8:2,20 11:14 19:23 25:9
**GRANTED-** 17:11
**GREG-** 5:21
**GROUP-** 10:25
**GUMP-** 24:23

**H**
**HAMILTON-** 6:9 14:6
**HANDLED-** 25:21
**HAPPEN-** 21:18
**HAPPENED-** 20:21
**HAPPY-** 20:2,6,11,23 21:3 22:13
**HARD-** 5:5,10
**HASN'T-** 14:20
**HAVEN'T-** 5:20 15:17 20:3
**HEAR-** 5:9 11:5
**HEARD-** 8:19 9:10,11 11:7 23:16,17
**HEARING-** 8:17,21 15:19 16:11 19:18 25:21,23 26:14 27:1,3
**HELD-** 12:16
**HELPFUL-** 16:8
**HIGHER-** 10:6,11,16
**HODARA-** 11:8 24:21,22 25:3,4
**HOLD-** 17:7
**HOPEFUL-** 7:19
**HOPEFULLY-** 4:8 5:14 7:5 20:6 24:19

**I**
**IDENTIFIED-** 10:3 24:7

**IDENTIFY-** 20:15,18,21 24:12
**IMMEDIATELY-** 16:11
**IMPLICIT-** 20:7
**IMPORTANT-** 23:19,24
**IMPORTANTLY-** 14:20
**INADVERTENTLY-** 9:5
**INAPPROPRIATE-** 14:17
**INC-** 13:10
**INFORMALLY-** 24:25
**INFORMATION-** 10:20 20:14,18 21:20 24:4
**INITIAL-** 5:18
**INITIALLY-** 8:12
**INTEND-** 22:20
**INTENDED-** 22:21,22
**INTENT-** 16:13
**INTEREST-** 14:22 16:1,6
**INTERIM-** 8:7
**INVENTORY-** 20:19 23:22,25 24:4,14
**INVESTIGATE-** 15:5
**INVOICES-** 18:13
**ISSUANCE-** 12:23
**ISSUE-** 8:22 9:1 14:13 15:20 16:3 17:11 22:2
**ISSUES-** 6:22 8:8,15,17 23:15 24:19 25:22 26:16
**IT'S-** 5:8 15:2,10,22 19:1,17,18 20:11 21:16,21 22:12,25 24:5,15
**ITEM-** 6:11,20 8:4 9:15,22 17:23
**ITEMS-** 12:6

**J**
**JAMES-** 14:5
**JANE-** 6:3,9
**JDSU-** 19:10 20:24
**JUDGMENT-** 11:3,13,14
**JUNCTURE-** 14:18 6:3,7,8,9,16,18,20

**K**
**KIM-** 7:16 8:1,3,10,23,25 9:14,21 10:15 11:11,15,19 12:10 14:1,2 15:6,7 16:8,16 17:6,9,12,20,21 26:7,13,16,22,24 7:11,12,13,14,16,21

**L**
**LANDLORD-** 13:13 14:7 15:25 16:9
**LANDLORD'S-** 15:13
**LANGUAGE-** 13:24 15:7,16 16:7,12,22 17:15
**LARGELY-** 19:8
**LARGER-** 18:14
**LATER-** 26:18
**LAUGHTER-** 18:2
**LEASE-** 10:9 13:14 14:8,10,25
**LEASED-** 13:19 10:3,6,11,16,17,20,22
**LEASES-** 9:24,25 11:2,25
**LEAVE-** 15:3
**LEFT-** 9:5
**LEGAL-** 14:21
**LEVEL-** 20:14
**LIMITATION-** 13:21
**LIMITED-** 12:7 13:2,24 19:9
**LINE-** 20:9
**LINK-** 21:16
**LISA-** 4:21 17:25
**LISTENING-** 15:21
**LITERALLY-** 18:12 24:8
**LLC-** 19:10 23:13
**LOAN-** 8:11,16,22
**LONG-** 16:23
**LOOK-** 16:21 22:22
**LOT-** 25:11,21
**LOWER-** 10:9
**LP-** 14:7

**M**
**MAKING-** 20:25 22:13
**MANAGED-** 20:25
**MANAGEMENT-** 8:4,6,22 9:2,4 10:25
**MANAGES-** 10:24
**MANNER-** 13:1 18:16
**MARC-** 21:25
**MARCHING-** 6:3
**MARKET-** 10:6,16
**MATTER-** 7:6 27:9
**MEACHUM-** 10:24
**MEANT-** 18:16
**MEET-** 18:24 19:14
**MEETING-** 5:18,21,23
**METHODOLOGY-** 24:15 7:9,10,11,22,23,25
**MILLION-** 8:11,12 21:1
**MINIMIS-** 9:16 11:23
**MONTH-** 4:24 12:14,21

MORNING-
4:1,2,3,4,19,20
6:8 7:9,13,14
14:4,5 21:24,25
23:11,12 24:21,22
MOTION- 6:21
9:2,4,15,18,19,22
,23,24
8:5,6 11:14,17,19
14:11,24 15:1
18:4,5 22:17 25:9
MOTIONS- 5:13
MOVED- 20:20
MUCH- 5:7 26:24

N
NEAR- 25:23,24
NECESSARILY-
22:15
NECESSARY- 10:23
11:4 18:25 19:7
NETWORKS- 13:10
NEW- 9:4 10:17
12:18
NIGHT- 19:19
NNL- 8:16
NON- 11:22
NONDE- 11:22
NONRESIDENTIAL-
9:23
NOR- 14:11
NORMAL- 20:19
NORTEL- 4:22,24
5:21,23 12:14
13:10,18,22 21:12
NORTEL'S- 10:25
NOTE- 17:12 20:24
NOTES- 11:16
NOTICE- 9:2
19:17,22 22:18
NOTICES- 18:20
19:6 20:13
NUMBERS- 21:1
NUTS- 18:13

O
OBJECT- 10:21
18:23 19:6
22:19,25
OBJECTING- 22:25
OBJECTION- 6:13
9:17 12:7,11
13:25 14:10 18:24
19:16 21:5 23:5
OBJECTIONS-
19:7,9 21:11
OBVIOUSLY- 19:1
20:12 25:21
OCCUPIED- 10:4
17:18
OFFER- 21:21
OFFICES- 9:6
OFFICIAL- 24:23
ONE- 12:23 14:25
17:11,13 19:9,10
20:10 22:2
23:2,15 25:5,12
26:6
OPPORTUNITY-

14:21 15:4,15
16:11,21 18:17
22:18
ORDER- 6:13 8:6
9:3,13,18
12:13,18,23 14:11
15:1,2,8 16:10
17:4,8,15,16
19:12 20:11 21:7
22:3 26:10
ORDERED- 6:13
ORDERLY- 18:15
ORDERS- 5:12
21:2,8 26:4
ORGANIZED- 25:13
OUTSTANDING-
15:22
OUTWEIGH- 12:4
OWED- 15:23
OWES- 12:14
OWNED- 9:6

P
PAID- 12:21 14:15
PARENT- 8:11
PARTIAL- 21:4
PARTIALLY- 20:7
PARTICIPATING-
20:3
PARTICULAR- 6:21
PARTICULARLY-
10:12
PARTIES- 7:3 15:4
16:3
PARTIES'- 15:14
PARTY- 13:6 15:9
PAUSE- 26:12
PAY- 10:11,17
21:3,9
PAYMENT- 12:22
PEOPLE- 19:3,24
22:18
PEPPER- 14:6
PERFECTLY- 26:21
PERHAPS- 17:4
26:19
PERIOD- 18:9
PERMIT- 7:3 13:18
PERSONAL- 11:20
13:17,22
PETITION- 18:17
PHILLIPS-
21:23,24,25 22:1
23:4,7,9
PHONE- 7:8 21:13
PICAYUNE- 23:17
PICKING- 22:6
PLACE- 20:19
PLEASED- 5:1,12
8:20 20:24
25:9,17
PLEASURE- 5:25
PODIUM- 17:22
PORTFOLIO- 10:24
PORTION- 13:5
15:24 18:21
PORTIONS- 13:9
POSITION- 14:7
15:25 16:2 22:11

POSSESSION- 20:16
PREJUDICE- 13:6
15:9,12 16:13
PREJUDICED- 20:4
PREMISES- 11:23
13:19 17:18
PREPARED- 25:2
PRESENT- 5:22 7:8
11:9 18:3 19:4
PRESENTATION-
14:21 15:21
PRESENTED- 16:7
PRESERVES- 16:24
PRIME- 10:9 13:13
PRINCIPLE- 6:23
7:17 24:10
PRIOR- 19:20 23:2
PRIORITY- 12:15
PROBABLY- 23:24
PROBLEM- 15:24
16:7 22:5
PROCEDURAL- 18:5
PROCEDURE- 20:6
PROCEDURES- 9:16
18:5,16
19:3,8,13,19
20:3,8 21:20
22:3,17 23:2 24:9
25:1,8,10,16
PROCEEDINGS- 27:8
PROCESS- 6:25
18:24 19:15
PROFFER- 11:3
PROGRESS- 5:1
15:19 20:25
PROPERTIES- 9:25
10:1,4,7,8
PROPERTY- 9:24
10:3 11:20,23
12:3,4 13:3,17,22
PROPOSE- 16:9
19:23 22:24
PROPOSED- 12:13
13:7 14:11 15:1,8
16:10 17:16 22:25
PROPOSING- 22:19
PROVIDE- 18:16
24:24 25:15
PROVIDES-
22:3,7,17
PROVISION- 21:2
22:22
PROVISIONS-
19:11,13
PURPORTEDLY-
14:15
PURPOSE- 13:22
PURPOSES-
25:11,17

Q
QUESTIONS-
21:19,20 25:8

R
RATHER- 16:10
19:4 20:7 23:1,21
RAYTHEON-
17:14,18,19

REACHED- 6:22
REASONABLE-
13:1,11
RECEIVED- 10:19
17:13 18:6 19:9
20:13
RECLAMATION-
18:4,6,8,20
19:15,16,22
23:19,21
RECOGNIZE- 25:10
RECOGNIZING-
12:20
RECONCILE-
18:15,19 19:2
21:1 22:21
RECONCILED- 18:23
21:4
RECONCILING-
18:12
RECORDING- 27:8
RECOVERY- 12:5
REFLECTED- 20:8
REFLECTS- 12:13
REJECT- 9:25
17:16
REJECTION- 9:23
10:12,22 11:2
12:19 13:9,16
14:10
REJECTIONS- 11:25
17:16
RELATE- 9:5 18:12
RELATIVELY- 4:9
RELIEF- 14:25
17:11 20:5
REMAINING- 12:3
REMEDIES- 23:3
REMOVED- 11:22,23
10:6,7,9,10,11,15
,16
RENT- 12:14,22
15:23
RENTAL- 12:21
REORGANIZATION-
4:25
REPRESENTATION-
23:16
REQUEST- 7:3 8:16
11:25
REQUESTED- 14:25
17:14
REQUESTING- 14:24
REQUIREMENTS- 8:7
RESERVING- 12:23
RESOLUTION- 7:4
RESOLVE- 16:3
19:7 26:16
RESOLVED- 12:11
13:25 19:10 23:14
RESOLVES- 21:10
RESOLVING- 24:16
RESPECT- 6:2,22
7:6 8:6,14 9:1,17
10:20 12:19,21
14:15 15:13
16:5,13
RESPECTFULLY- 7:3
RESPECTING-

14:14,18,22 15:3
RESPOND- 25:14
RESPONSE- 9:11
23:6
RESULT- 8:16 15:1
RETAIN- 13:23
RETENTION-
6:12,16
RETRIEVING- 12:4
13:22
RETURN- 13:5
14:14 19:24
22:4,6,8
RETURNED- 15:24
RETURNING- 13:14
REVISED- 5:12 9:7
12:13 22:2
RICHARDSON- 14:8
RIGHTS- 12:16
15:13,14
16:4,13,24 20:4
ROBUST- 24:4
ROLLING- 18:19
19:2

S
SALE- 9:16
SANMINA- 22:20
SANMINA-SCI- 22:1
SATISFIED- 11:9
25:1 26:10
SATISFIES- 25:11
SATISFY- 23:7
SCHEDULE- 9:5,7
SCHEDULES- 5:20
4:12,13,17,19,21,
24
SCHWEITZER-
5:5,9,17,20,25
6:5,6 17:23,24,25
18:3,11 21:15
22:11,12 24:3
25:6,18 26:1
SEATED- 4:2
SECOND- 6:20
19:21
SECURITY-
12:16,25
13:4,7,12
14:15,19,23
15:3,11,13
16:5,14,25
SEE- 7:10 21:23
SEEK- 9:25 12:2
SEEKING- 11:19
20:4
SEGREGATION- 20:5
SELLING- 12:4
SERIAL- 21:1 24:7
SET- 19:19,20
SETOFFS- 13:7
SETTLEMENT- 6:23
7:4 19:6 21:5
SETTLEMENTS- 19:4
SEVEN- 9:4,25
10:1,3
SHALL- 12:22
13:5,18
SHARE- 17:4

SHE'S- 21:18
SHEARMAN- 6:11
SIDE- 21:17
SIMPLY- 7:18
SINGLE- 24:6
SITUATION- 15:5
SLIGHT- 22:2
SMOOTH- 5:6,8,14
SMOOTHLY- 8:18
SOLE- 9:1
SOLUTIONS-
12:10,13 13:10
SOUND- 27:8
SOUNDS- 15:22
16:6
SPELL- 25:13
STAND- 27:1
START- 4:14 6:3
STATEMENT- 24:5
STAY- 20:5
STEEN- 6:9
STERLING- 6:12
STIPULATION-
7:1,4,19
STOLE- 5:11
STRAIGHTFORWARD-
25:20
SUBLEASE- 10:9
12:14,17,20,25
13:1,9,17,20,23
14:8 17:19
SUBLEASED-
10:5,8,9
SUBLEASES- 9:24
10:1,21,22 11:25
SUBMISSION- 12:12
SUBMITTED- 7:20
9:7
SUBMITTING- 12:12
16:10 26:4
SUBSEQUENT- 8:17
SUBTENANT- 14:16
15:23 17:14
SUFFICIENCY-
20:13
SUFFICIENT-
20:15,17 24:17
SUMMARIZES- 12:19
SUPERIOR- 14:22
16:1
SUPPLEMENT- 9:2
19:13
SUPPLEMENTING-
9:3
SUPPLIERS- 5:1
SUPPORTIVE- 5:2
SYSTEM- 8:22
23:25
SYSTEMS- 20:19
24:4,14

        T
TENANTS- 10:18
TERMS- 6:24 13:1
TEXAS- 12:15 13:3
14:8
THAT'D- 16:23
THEORETICALLY-
18:8

THEREFORE- 7:2
21:7
THEY'LL- 24:6
THIRD- 8:4 20:1
THOUSANDS- 18:12
THUNDER- 5:11
TIME- 16:16 18:7
20:20,22 22:25
23:20,23 25:2
26:1
TIMELY- 12:25
13:5,13
TIMES- 13:20
TODAY- 4:9
5:14,18,22 9:1
14:14 15:2 16:4
25:24 26:18
TRACK- 20:21
23:18
TRACKING- 20:19
23:25 24:4,14
TRANSCRIPT- 27:7
TRANSCRIPTS-
27:13
TRANSITION- 5:6
TREATMENT- 19:22
22:19 25:15
TRUSTEE- 8:14
18:22
TURN- 6:2
TV- 21:16
TWO- 19:9 22:8,10
TX- 14:7
TYPES- 24:16

        U
UNCONTESTED- 5:13
21:21
UNDERGOING- 10:2
UNDERSTANDING-
16:4 21:6 23:5
UNILATERAL- 19:4
UNLESS- 25:7
UNSECURED- 24:23
USED- 20:20
USEFUL- 10:24
11:4
UTILITIES- 6:21

        V
VACANT- 10:5
VACATE- 17:18
VARY- 20:13,14
VERIZON- 6:22,23
7:7,15
VERSION- 19:20
VIEW- 18:21

        W
WAITING- 7:18
WAIVER- 8:7
WASN'T- 22:21
WE'RE- 4:25
20:2,6,11,17,23,24
18:7,9,14 22:22
WEATHER- 21:18
WELCOME- 4:18 6:7
WENDY- 21:12

WHEREUPON- 27:3
WILL- 4:11,14
5:21 6:3 7:19
9:12 11:14,23
17:7,16,18 18:20
20:16 26:3 27:1
WIRE- 24:8
WIRELESS- 14:6
WIRES- 18:13
WISH- 8:19 9:9
WISHES- 11:7
WITHDRAWN- 12:11
WON'T- 4:8 21:16
WONDERFUL- 7:21
WORK- 22:20
24:13,18,19
WORKED- 5:5 24:25

        Y
YEAR- 17:17
YESTERDAY- 6:16
9:19
YOU'D- 26:11