## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                         :

*In re*                           :      Chapter 11

Nortel Networks Inc., *et al.*,[1]      :      Case No. 09-10138 (KG)

               Debtors.       :      Jointly Administered

                          :

                          :      **Hearing date: March 20, 2009 at 11:00 a.m. ET**
                          **Objections due: March 13, 2009 at 4:00 p.m. ET**

-------------------------------------------------------X

## APPLICATION OF DEBTORS FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF MERCER (US) INC. *NUNC PRO TUNC* TO THE PETITION DATE

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit B, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the employment and retention of Mercer (US) Inc. ("Mercer") as compensation specialist to the Debtors, *nunc pro tunc* to the Petition Date, (ii) approving the terms and conditions under which Mercer will be retained and compensated at the expense of the Debtors' estates, including certain limited indemnification

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

rights, and (iii) granting related relief.  In support of the Application, the Debtors rely on the

Declaration of John Dempsey (the "Dempsey Declaration"), attached hereto as Exhibit A.  In

further support of this Application, the Debtors respectfully represent as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 327(a) and 328(a)

of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local

Bankruptcy Rule 2014-1.

**Background**

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC (collectively, the "EMEA Debtors").[3]

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7.      On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142). No trustee or examiner has been appointed in the Debtors' cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

## Relief Requested

9.      By this Application, the Debtors seek entry of an order pursuant to sections 327(a)

and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014-1

(i) authorizing the employment and retention of Mercer as compensation specialist to the Debtors

*nunc pro tunc* to the Petition Date, (ii) approving the terms and conditions under which Mercer

will be retained and compensated at the expense of the Debtors' estates as contained in that

certain statement of work by and between NNI and NNL on the one hand and Mercer on the

other, dated as of February 17, 2009 (the "KEIP SOW"), attached hereto as Exhibit C, and (iii)

granting related relief.

## Basis for Relief

10.     Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ

one or more professionals that do not hold or represent an interest adverse to the estate and that

are disinterested persons to assist the debtor-in-possession in carrying out its duties under the

Bankruptcy Code.  11 U.S.C. § 327(a).

11.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section

327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and

conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee

basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12.     Bankruptcy Rule 2014 requires that an application for retention of a professional

person include:

> [S]pecific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the

4

United States trustee, or any person employed in the office of the
United States trustee.

Fed. R. Bankr. P. 2014(a). Local Bankruptcy Rule 2014-1 further requires that "[a]ny entity

seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall

file with the Court a motion, a supporting affidavit or verified statement of the professional

person and a proposed order for approval." Del. Bankr. L.R. 2014-1(a).

13.     By this Application, the Debtors request that the Court approve the employment

and compensation arrangements with Mercer as set forth in paragraph 31 herein pursuant to

section 328(a) of the Bankruptcy Code. These employment arrangements are beneficial to the

Debtors' estates and the compensation arrangements provide certainty and proper inducement for

Mercer to act expeditiously and prudently with respect to the matters for which it will be

employed.

14.     The Debtors also request approval of the employment of Mercer *nunc pro tunc* to

the Petition Date. Such relief is warranted by the extraordinary circumstances presented by these

chapter 11 cases. The Third Circuit has identified "time pressure to begin service" and absence

of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645,

650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989),

appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). The complexity, intense activity and speed that

have characterized these cases have necessitated that the Debtors, Mercer and the Debtors' other

professionals focus their immediate attention on time-sensitive matters and promptly devote

substantial resources to the affairs of the Debtors pending submission and approval of this

Application.

**Necessity**

15.     The Debtors have engaged Mercer as their compensation specialist to assist the Debtors with developing a Key Employee Incentive Plan ("KEIP") in connection with these chapter 11 cases.

16.     The Debtors chose Mercer to act as the Debtors' compensation specialist postpetition, and particularly to assist the Debtors in their development of a KEIP because Mercer has a long-standing benefit/compensation advisory relationship with the Debtors and Nortel generally.  In particular, Mercer has gained substantial knowledge of the Debtors' current operational condition, which knowledge may help the Debtors and Mercer expedite the development and execution of the KEIP.  Mercer will continue providing advice related to employee incentive and retention programs to other Nortel affiliates in their reorganizations as well.  Mercer and its affiliates currently provide plan administration services and general human resources and employee benefits consulting to the Debtors and other Nortel affiliates, including the Canadian Debtors, in the ordinary course, and Mercer is being retained by the Debtors as an ordinary course professional for such consulting services.  In addition to the services described above, Mercer has extensive experience and an excellent reputation in providing human resources consulting and related services, including advising regarding key employee incentive plans in complex chapter 11 cases.  As a result, the Debtors believe that Mercer is well qualified to perform these services and represent the Debtors' interests in their chapter 11 cases.  Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of uniquely qualified advisors.  Furthermore, it would unjustly disadvantage the Debtors and all parties in interest, as the Debtors would be forced to engage new compensation consultants who lack Mercer's extensive knowledge of the Debtors.

6

### Mercer's Qualifications

17.    Mercer is a consulting firm focused on providing human resource consulting and related outsourcing and investment services.  Mercer's broad range of corporate services includes design, management and administration of, and strategic advice regarding, human resource programs, health and benefit programs, benefits outsourcing, brokerage services, asset management and related consulting services.

18.    The Debtors have selected Mercer as their compensation specialist based upon, among other things, (i) the Debtors' need to retain a compensation specialist to provide advice with respect to the Debtors' development and execution of the KEIP, (ii) Mercer's long-standing benefit/compensation advisory relationship with the Debtors and the Canadian Debtors, which has afforded Mercer substantial knowledge of the Debtors' current operational conditions, and (iii) Mercer's extensive experience and excellent reputation in providing compensation services in complex chapter 11 cases such as these chapter 11 cases.

19.    Prior to the Petition Date, the Debtors and other Nortel affiliates including the Canadian Debtors engaged Mercer and its affiliates individually and collectively to provide general actuarial employee benefit plan administration services and consulting services in connection with the development and administration of prepetition employee benefit programs.

20.    In providing prepetition services to the Debtors in connection with these matters, Mercer's professionals have worked closely with Nortel's management and other professionals and have become well acquainted with the Debtors' operations, business, compensation structure, and related matters.    Accordingly, Mercer has developed significant relevant experience and expertise regarding the Debtors that will assist it in providing effective and

efficient services with regard to developing and implementing the KEIP in the course of these chapter 11 cases.

21.    In addition to Mercer's understanding of the Debtors' financial history, business operations and compensation structure, Mercer and its senior professionals have extensive experience in the analysis of executive pay issues; unwinding debtors' long-term incentive plans; reviewing compensation and benefit plans; and the design, management and administration of KEIPs.  Mercer's professionals have advised debtors, creditors and equity constituencies in the development of many KEIPs.    These professionals have been involved in numerous restructurings representing billions of dollars of restructured debt and assets.

22.    The professionals of Mercer have extensive experience working with financially troubled companies in complex restructurings in chapter 11 proceedings, including the chapter 11 cases of In re Tribune Company, et al., Case No. 08-13141 (Bankr. D. Del. Dec. 8, 2008); In re Dana Corporation, et al., Case No. 06-10354 (Bankr. S.D.N.Y. Mar. 3, 2006); In re Allied Holdings, Inc., Case No. 05-12515 (Bankr. N.D. Ga. July 31, 2005); In re Mesaba Aviation, Inc., Case No. 05-3925 (Bankr. D. Minn. Oct. 13, 2005); In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. Feb. 12, 2002); In re Solutia Inc., Case No. 03-17949 (Bankr. S.D.N.Y. Dec. 17, 2003); and In re Owens Corning, et al., Case No. 00-03837 (Bankr. D. Del. Oct. 5, 2000).

23.    An experienced compensation specialist such as Mercer fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.  The Debtors believe they require the services of a capable and experienced firm specializing in compensation and retirement such as Mercer because, among other reasons, Mercer's resources and capabilities, together with its prepetition experience advising the Debtors, are crucial to the

development and execution of the KEIP and, thus, are essential to the Debtors' success in these chapter 11 cases.

## Scope of Services

24.     On or about the Petition Date, Nortel and Mercer reached an agreement on the services sought from Mercer.  Subsequently, NNI and NNL on the one hand and Mercer on the other entered into the KEIP SOW.

25.     Pursuant to the KEIP SOW,[4] Mercer will render advisory services with respect to development and administration of the KEIP to the Debtors in connection with these chapter 11 cases and will perform such of the following compensation/benefit related consulting services as reasonably requested:

>    a.    analysis and review of the Debtors' executive pay issues;
>
>    b.    analysis, review, and assistance with unwinding the Debtors' long-term incentive plans;
>
>    c.    analysis and review of the Debtors' compensation and benefit plans;
>
>    d.    advice with regard to the Debtors' workforce salary and benefit issues, and design, management and administration of KEIP;
>
>    e.    upon the Debtors' request, truthful and independent expert witness testimony regarding its analyses, assessments or recommendation;
>
>    f.    upon the Debtors' request, a summary report with respect to any or all of above work, setting forth its findings, conclusions and recommendations; and
>
>    g.    such other services as customary in engagement of this type contemplated hereby and as may be reasonably agreed upon by the Debtors and Mercer.

26.     It is necessary that the Debtors employ Mercer to render the foregoing professional services.  The Debtors believe that the services will not duplicate the services that

---

[4]     The summary of the KEIP SOW in this Application is solely for the benefit of the Court and parties in interest.  To the extent that the summary and the terms of the KEIP SOW are inconsistent, the terms of the KEIP SOW shall control.  Capitalized terms not defined in this Application shall have the meanings given them in the KEIP SOW.

other professionals will be providing the Debtors in these chapter 11 cases. Specifically, Mercer will carry out unique functions and will use reasonable efforts to coordinate the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services.

### Professional Compensation

27.    Mercer's decision to continue with this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

28.    Shortly before the Debtors' bankruptcy filings, Mercer had been engaged by Nortel pursuant to a Master Services Agreement dated as of January 1, 2009 between NNL and Mercer (Canada) Ltd. (the "MSA"), (the indemnification provision of which is attached hereto as Exhibit D).[5]

29.    On or about the Petition Date, Nortel and Mercer reached an agreement on the services sought from Mercer. Subsequently, NNI and NNL on the one hand and Mercer on the other entered into the KEIP SOW, attached hereto as Exhibit C (together with the MSA, the "Agreement").

30.    Mercer intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the KEIP SOW (the "Fee Structure").

---

[5]    An complete, unredacted copy of the MSA, which contains confidential information is being provided to the U.S. Trustee and the Committee.

31.     In summary, the Fee Structure provides that the Debtors will pay the following compensation to Mercer:

| | | |
|---|---|---|
| a. | Analysts: | $225 / hour; |
| b. | Junior Associate: | $250 to $300 / hour; |
| c. | Senior Associate: | $350 to $450 / hour; |
| d. | Principal: | $667 / hour; and |
| e. | Specialist Principal: | $725 to $870 / hour. |

32.     As set forth in the Dempsey Declaration, the Fee Structure is reasonable and comparable to those generally charged by compensation specialist firms of similar stature to Mercer and for comparable engagements, both in- and out-of-court. The Debtors believe, as does Mercer, that the Fee Structure is in fact reasonable, market-based and designed to compensate fairly Mercer for its work and to cover fixed and routine overhead expenses.

33.     Mercer will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.

34.     Given the numerous issues which Mercer may be required to address in the performance of its services hereunder, Mercer's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Mercer's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

## Indemnification and Reimbursement Provisions

35.     The Debtors have also agreed, among other things, to indemnify and reimburse Mercer in certain discrete circumstances in accordance with the indemnification provisions set forth in the Agreement.

36.     The indemnification and reimbursement provisions reflected in the Agreement are customary and reasonable terms of engagement for compensation specialists such as Mercer for proceedings both out of court and in chapter 11.   The terms of the Agreement, including indemnification provisions, generally were fully negotiated between the Debtors and Mercer at arm's-length and the Debtors respectfully submit that the Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

37.     Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification granted under the Agreement, as modified in the proposed order attached hereto as Exhibit B.

## Mercer's Disinterestedness

38.     To the best of the Debtors' knowledge, information and belief, and based and in reliance upon Mercer's review of its electronic database and the Dempsey Declaration: (i) Mercer is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code and (ii) Mercer holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Mercer is to be retained.  As disclosed in the Dempsey Declaration, Mercer has represented and may continue to represent various creditors

12

and other parties in interest in these cases, but only in matters unrelated to the Debtors or these chapter 11 cases.

39.     Mercer has received compensation from the Debtors for its prepetition services, including compensation paid during the 90 days before the Petition Date.  The Debtors submit that such payments are not recoverable preferences and that the receipt of such payments does not constitute an interest adverse to the Debtors.[6]

## No Duplication of Services

40.     The Debtors intend that the services of Mercer will complement, and not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases. Mercer understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

## Notice

41.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; and (iii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

42.     No prior request for the relief sought herein has been made to this or any other court.

---

[6]     The Debtors' Canadian direct parent, NNL, a non-debtor, that is subject to a CCAA proceeding, paid Mercer $68,590.00 on February 19, 2009 in connection with amounts invoiced to Nortel with respect to services provided by Mercer to Nortel prior to the commencement of Nortel's chapter 11 proceedings.  Mercer has no outstanding and unpaid claims against the Debtors relating to the period prior to the commencement of their chapter 11 cases.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  February 23, 2009
            Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

_____

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*