**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing date: March 20, 2009 at 11:00 a.m. ET** **Objections due: March 13, 2009 at 4:00 p.m. ET** |

**APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF HURON CONSULTING GROUP *NUNC PRO TUNC* TO FEBRUARY 2, 2009 AS ACCOUNTING AND RESTRUCTURING CONSULTANT TO THE DEBTORS AND DEBTORS IN POSSESSION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry of an order substantially in the form attached hereto as Exhibit B, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the employment and retention of Huron Consulting Services LLC (that practices as Huron Consulting Group) ("Huron") as accounting and restructuring consultant to the Debtors *nunc pro tunc* to February 2, 2009, (ii) approving the terms and conditions under which Huron will be retained and compensated at the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

expense of the Debtors' estates, including certain limited indemnification rights, and (iii) granting related relief. In support of the Application, the Debtors rely on the Declaration of James M. Lukenda (the "Lukenda Declaration"), attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1.

## Background

### A. Introduction

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel" or the "Company"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies'

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as foreign representative for the Canadian Debtors, has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC (collectively, the "EMEA Debtors").[3]

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7. On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142). No trustee or examiner has been appointed in the Debtors' cases.

## B. Debtors' Corporate Structure and Business

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

8. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").

**Relief Requested**

9. By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Bankruptcy Rules (i) authorizing the employment and retention of Huron as accounting and restructuring consultant to the Debtors *nunc pro tunc* to February 2, 2009, (ii) approving the terms and conditions under which Huron will be retained and compensated at the expense of the Debtors' estates, including certain limited indemnification rights, as contained in that certain letter agreement, dated as of January 29, 2009 (as revised February 11, 2009) (the "Engagement Agreement") and (iii) granting related relief. A copy of the Engagement Agreement is attached hereto as Exhibit C.[4]

**Basis for Relief**

10. Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

11. Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and

[4] The summary of the Engagement Agreement in this Application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Agreement are inconsistent, the terms of the Engagement Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Engagement Agreement.

conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12. Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L.R. 2014-1(a).

13. By this Application, the Debtors request that the Court approve the employment and compensation arrangements as set forth herein pursuant to section 328(a) of the Bankruptcy Code. The employment arrangements are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for Huron to act expeditiously and prudently with respect to the matters for which it will be employed.

14. The Debtors also request approval of the employment of Huron *nunc pro tunc* to February 2, 2009. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). The complexity, intense activity and speed that have

characterized these cases have necessitated that the Debtors, Huron and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

**Selection of Huron**

15. The Debtors believe that an experienced consulting firm specializing in the provision of turnaround and restructuring services for public and private companies, lenders, equity holders, and impartial constituents such as Huron fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in these cases. The Debtors believe they require the services of a capable and experienced turnaround and restructuring consultant because, among other reasons, Huron's resources and capabilities are crucial to the Debtors' success in these chapter 11 cases.

16. The Debtors chose Huron to act as their accounting and restructuring consultant postpetition because Huron has extensive experience and excellent reputation in providing turnaround and restructuring services in complex chapter 11 cases.

17. Huron specializes in the provision of turnaround and restructuring services for public and private companies, lenders, equity holders, and impartial constituents (such as examiners or trustees). Working closely with client management, Huron develops and implements comprehensive turnaround programs that increase value through improving operations and asset performance, refocusing business models, and restructuring debt.

18. Huron's typical assignments involve: providing valuation, corporate finance, restructuring, and turnaround services to companies and lenders; performing financial investigations, litigation analysis, expert testimony, and forensic accounting for attorneys; and

providing strategic planning, operational consulting, strategic sourcing, and organizational and technology assessments in a variety of industries, including transportation, manufacturing, healthcare, higher education, legal, consumer products and energy.

19. Huron's reorganization services include, but are not limited to: advising management on a strategy to maximize value; designing and implementing turnarounds and reorganizations; leading refinancing and debt restructuring negotiations, and, when a consensual plan cannot be achieved, implementing a chapter 11 strategy to achieve a viable outcome; negotiating with all classes of constituents; communication of a turnaround or recovery plan; development of consensus to implement the optimal strategy; and evaluation of proposed asset sales, debtor-in-possession financing, and bonuses programs.

20. For over 25 years, professionals in Huron's employ have served as advisors to management, creditors, and trustees or examiners. Huron has assisted in bringing numerous companies successfully through the complexities of chapter 11 bankruptcies. Huron's expertise in management, finance, and accounting, combined with its understanding of the complex interests of stakeholders in a bankruptcy proceeding, allow it to provide the insight stakeholders need to weigh the risks and benefits of bankruptcy filing. Huron offers knowledgeable, practical solutions for every phase of the restructuring process and its valuation services are critical in resolving the competing claims of management, banks, creditors and equity stakeholders in the event of a bankruptcy.

21. As a result, the Debtors believe that Huron is well qualified to perform these services and represent the Debtors' interests in their chapter 11 cases. Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of uniquely qualified advisors.

## Scope of Services

22. On or about February 2, 2009, NNI and Huron reached an agreement on the services NNI sought from Huron and subsequently entered into the Engagement Agreement.

23. Pursuant to the Engagement Agreement,[5] Huron will provide accounting and restructuring advice to the Debtors in connection with these chapter 11 cases and will perform such of the following turnaround and restructuring related consulting services as reasonably requested:

a. Assist the Debtors in the implementation of "Critical Task Plans" that would facilitate the process of the Restructuring by addressing court and other reporting requirements including:

i Managing the process for compiling and completing the required Statements of Financial Affairs and Schedules of Assets and Liabilities;

ii Coordinating with the official claims agent to establish the procedures for integrating and reconciling Nortel records with filed claims;

iii Evaluating and establishing procedures for completing and filing Monthly Operating Reports required by the Office of the United States Trustee;

iv Addressing Bankruptcy Rule 2015.3 - Periodic Reporting Concerning Related Entities;

b. Assist management, as requested, in addressing information requests from various parties related to the Restructuring, including but not limited to the official committee of unsecured creditors;

c. Assist management, as requested, with financial reporting matters in preparation for and resulting from a Restructuring, including assistance with the evaluation of applicable generally accepted accounting principles such as AICPA Statement of Position 90-7 to reporting while under and upon emergence from chapter 11 as relates to reporting to the Office of the

---

[5] The summary of the Engagement Agreement in this Application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Engagement Agreement.

United States Trustee, the Securities and Exchange Commission, or other legal or regulatory authorities;

d. Review financial and other information as necessary to assist with the matters related to the Restructuring, including but not limited to assistance with sale processes, calculations of "cure amounts" and other analyses in connection with the assumption or rejection of executory contracts, and the evaluation of potential avoidance actions;

e. Provide such assistance as may be necessary in connection with the Debtors' effort to review, update, or modify its business plan and its development of the Plan of Reorganization; and

f. Providing additional services as may be requested in writing from time to time by the Debtors and agreed to by Huron.

24. It is necessary that the Debtors employ Huron to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these chapter 11 cases. Specifically, Huron will carry out unique functions and will use reasonable efforts to coordinate the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services.

**Professional Compensation and Employment Terms**

25. Huron's retention is subject to the Court's approval of Huron's Engagement Agreement attached hereto as Exhibit C. Huron will seek payment for compensation on an hourly basis, plus reimbursement of actual, necessary expenses incurred by Huron, as more fully described in Exhibit C.

26. The Debtors understand that Huron intends to apply for allowance of compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the

proposed compensation set forth in the Engagement Agreement.[6] The hourly rates currently charged by Huron are:

| | |
|---|---|
| Managing Directors | \$650 - \$730 |
| Directors | \$525 - \$620 |
| Managers | \$400 - \$475 |
| Associates | \$325 - \$345 |
| Analysis | \$230 - \$245 |
| On-Demand Consultants | \$140 - \$300 |

As set forth in the Lukenda Declaration, the compensation Huron seeks for its professionals in these circumstances is equivalent to what is generally charged by Huron for similar services. Huron adjusts its hourly rates periodically and will charge the rate then in effect.

27. As an accommodation to the Debtors, Huron has agreed to permanently reduce each month the total of monthly fees invoiced by 10%. The Debtors believe, as does Huron, that the hourly rates charged by Huron are in fact reasonable, market-based and designed to compensate Huron fairly for its work and to cover fixed and routine overhead expenses.

28. Huron will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.

29. Given the numerous issues which Huron may be required to address in the performance of its services hereunder, Huron's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Huron's

6 The summary of the Agreement in this Application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Agreement are inconsistent, the terms of the Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Engagement Agreement.

services for engagements of this nature, the Debtors believe that the fee structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

30. The Debtors have also agreed, among other things, to indemnify Huron in accordance with the General Business Terms attached to the Engagement Agreement.

31. The General Business Terms attached to the Engagement Agreement are customary and reasonable terms of compensation for accounting and restructuring consultants such as Huron for proceedings both out of court and in chapter 11.

32. As set forth in the Lukenda Declaration, based on its prior discussions and agreements with the Office of the United States Trustee in other cases in this District, and its expectations regarding certain modifications the United States Trustee will request to the Engagement Agreement, Huron has agreed that the order approving Huron's employment contain the following modifications to the terms in Huron's Engagement Agreement:

a. Paragraph 2 of the General Business Terms of the Engagement Agreement is modified as follows: the heading "Independent Contractor" is hereby replaced with the heading "No Agency" and the phrase "an independent contractor and" is hereby deleted from the first sentence of that paragraph.

b. Subject to the provisions of subparagraph (d) beneath, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, Huron in accordance with the General Business Terms of the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Huron's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Court.

c. Notwithstanding any indemnification provisions of the General Business Terms of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Huron or provide reimbursement to Huron (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Huron's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the

breach of Huron's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (d), beneath, to be a claim or expense for which Huron should not receive indemnity or reimbursement under the terms of the Agreement, as modified by this Order.

d. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Huron believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, Huron must file an application therefore in this Court, and the Debtors may not pay any such amounts to Huron before the entry of an order by this Court approving the payment. This subparagraph (d) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Huron for indemnification or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Huron.

e. In the event that Huron seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Agreement, the invoices and supporting time records from such attorneys shall be included in Huron's own monthly fee statement and shall be subject to the same payment procedures applicable to professionals in these cases.

f. Paragraph 8 of the Engagement Agreement's General Business Terms shall apply solely to claims of Huron and the Debtors against each other, and shall not apply if the Debtors or a representative of the estates asserts a claim for, and a court determines by final order that such claim arose out of, Huron's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct. Additionally, the phrase "for the portion of the engagement giving rise to liability" is deleted from this paragraph.

g. Paragraph 11(e) of the Engagement Agreement's General Business Terms, relating to arbitration in the event a dispute arises between the Debtors and Huron, is hereby revised to provide that the arbitration provision shall apply only to the extent that the United States Bankruptcy Court, or the United States District Court if the reference is withdrawn, does not retain jurisdiction over a controversy or claim.

h. To the extent the order is inconsistent with the Engagement Agreement, this order shall govern.

33. The terms of the Engagement Agreement, including the indemnification provisions set forth in the General Business Terms, generally were fully negotiated between the Debtors and Huron at arm's-length and the Debtors respectfully submit that the Engagement Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

34. Accordingly, as part of this Application, the Debtors request that the Court approve the Engagement Agreement and enter an order substantially in the same form attached hereto as Exhibit B containing the foregoing modifications as agreed to by Huron after consultation with the United States Trustee.

**Huron's Disinterestedness**

35. To the best of the Debtors' knowledge, information and belief, and based and in reliance upon Huron's review of its internal computer database and the Lukenda Declaration: (i) Huron is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code and (ii) Huron holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Huron is to be employed. As disclosed in the Lukenda Declaration, Huron has represented and may continue to represent various creditors and other parties in interest in these cases, but only in matters unrelated to the Debtors or these chapter 11 cases.

**No Duplication of Services**

36. The Debtors intend that the services of Huron will complement, and not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases. Huron

understands that the Debtors have retained and may retain additional professionals during the terms of the engagement and will work cooperatively with such professionals to integrate any respecitive work conducted by the professionals on behalf of the Debtors.

**Notice**

37. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; and (iii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

38. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: February 27, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

– and –

MORRIS NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*