**EXHIBIT C**



January 29, 2009 (revised February 11, 2009)

Gordon A. Davies, Esq.
Chief Legal Officer
and Corporate Secretary
Nortel Networks Inc.
195 The West Mall
Toronto, Ontario M9C 5K1

Dear Mr. Davies:

We are pleased to submit Huron Consulting Group's ("HCG") proposal to provide services to Nortel Networks Inc. and its direct and indirect affiliates and subsidiaries ("Nortel", or the "Company") in connection with the restructuring of certain liabilities of the Company pursuant to chapter 11 of the United States Bankruptcy Code and other international proceedings (the "Restructuring").

<u>HCG Services and Responsibilities</u>

We understand, from our experience, that a successful Restructuring will greatly increase the demands on the Nortel personnel and require significant effort on the part of management. We also understand that the simultaneous conduct of insolvency proceedings across international borders further increases those demands. As such, we propose to undertake the following services, and others to the extent requested:

- Assist the Company in the implementation of "Critical Task Plans" that would facilitate the process of the Restructuring by addressing court and other reporting requirements including
    - Managing the process for compiling and completing the required Statements of Financial Affairs and Schedules of Assets and Liabilities;
    - Coordinating with the official claims agent to establish the procedures for integrating and reconciling Company records with filed claims;
    - Evaluating and establishing procedures for completing and filing Monthly Operating Reports required by the Office of the United States Trustee;
    - Addressing Bankruptcy Rule 2015.3-Periodic Report Concerning Related Entities;
- Assist management, as requested, in addressing information requests from various parties related to the Restructuring, including but not limited to the official committee of unsecured creditors;
- Assist management, as requested, with financial reporting matters in preparation for and resulting from a Restructuring, including assistance with the evaluation of applicable generally accepted accounting principles such as AICPA Statement of Position 90-7 to reporting while under and upon emergence from chapter 11 as relates to reporting to the Office of the United States Trustee, the Securities and Exchange Commission, or other legal or regulatory authorities;
- Review financial and other information as necessary to assist with the matters related to the Restructuring, including but not limited to assistance with sale processes, calculations of "cure amounts" and other analyses in connection with the assumption or rejection of executory contracts, and the evaluation of potential avoidance actions;



- Provide such assistance as may be necessary in connection with the Company's effort to review, update, or modify its business plan and its development of the Plan of Reorganization; and
- Provide additional services as may be requested in writing from time to time by the Company and agreed to by Huron.

HCG's engagement team leaders will consist of financial consultants experienced with the bankruptcy process and managing large projects within the restructuring environment. As may be appropriate, HCG may provide its services through HCG's Canadian affiliate.

HCG's "On-Demand" consultants, to the extent needed for portions of the engagement for work-stream execution and to supplement in-house resources, are identified from a managed pool of experienced contract consultants and matched to the task specific skills required by that portion of the engagement at a lower cost than would otherwise be achievable through the use of full time personnel.

We anticipate this engagement to be highly interactive with Company personnel. We would anticipate supporting the Company's legal and other advisors.

At the present time, we are not aware of any relationships what would disqualify HCG from assisting Nortel in this matter. However, our review of relationships is not complete and requires that the Company provide HCG with the most complete party-in-interest listing that is available.

We are able to commence services immediately and work with your management team, legal counsel, and other advisors. HCG will work with you and Nortel's management team in determining our project scope on an ongoing basis.

Deliverables

Materials or reports prepared in connection with our engagement hereunder ("Deliverables") may contain factual data, the interpretation of which may change over the case term as more information becomes available. It is understood and acknowledged that HCG shall not have an obligation to update the Deliverables as part of its Services hereunder in the event of such a change. We will communicate our findings and observations, together with any recommendations, solely to Nortel unless otherwise directed by Nortel. Any decisions to implement such recommendations will be solely that of Nortel. Our role will be advisory only.

Nortel management will continue to direct the Company and will be solely responsible for any strategic decisions made by the Company. Any materials prepared by HCG are solely for the use of Nortel and, under your direction, its officers, directors, and employees, and should not be relied upon by any other party for any purpose.

HCG shall retain any and all information, in whatever form and of whatever nature, concerning Nortel, acquired by HCG directly or indirectly from Nortel or its agents pursuant to this engagement, in strict confidence, and shall not disclose or use such information for any purpose other than for the purposes set forth herein, unless required by law. Notwithstanding the foregoing, the restrictions set forth herein shall not apply to publicly available information.



Limitations on Services

HCG's Services are limited to those specifically noted in this Agreement and do not include accounting, tax-related assistance, or advisory services except as specifically described herein. HCG is a management consulting firm, not a public accounting firm. HCG will not be expressing any professional opinions on financial statements or performing attest procedures with respect to other information in conjunction with this engagement. HCG's Services are not designed, nor should they be relied upon, to disclose weaknesses in internal controls, financial statement errors, irregularities, or illegal acts. The Company shall be responsible for providing the information necessary for our review and analysis. The accuracy and completeness of such information, upon which we rely and which will form the basis of any recommendation we help prepare, is the responsibility of the Company.

Your Responsibilities

In connection with our provision of services, you will perform the tasks, furnish the personnel, provide the resources, and undertake the responsibilities specified below.

You will designate an employee or employees who will make or obtain all management decisions with respect to this engagement. You also agree to cause all levels of your employees and contractors to cooperate with us. You agree that the preparation of certain materials may require that we rely upon certain factual assumptions you provide, and as such we have no responsibility for the verification of such assumptions. We will be entitled to rely on all of your decisions and approvals and we will not be obligated to evaluate, advise on, confirm, or reject such decisions and approvals.

To help maximize the value of our work to you and to keep the project moving on schedule, you agree to comply with all of our reasonable requests and to provide us timely access to all information and locations reasonably necessary to our performance of the services.

The successful delivery of our services, and the fees charged, are dependent on (i) your timely and effective completion of your responsibilities, (ii) the accuracy and completeness of any assumptions, and (iii) timely decisions and approvals by your management. You will be responsible for any delays, additional costs, or other liabilities caused by any deficiencies in the assumptions or in carrying out your responsibilities.

The Company agrees to file an appropriate motion prepared in consultation with us as to matters relating to our retention by the Company and provision of Services as contemplated hereunder, as promptly as possible, which seeks the approval of the immediate assumption of this Agreement by the Company, (i) this Agreement shall be subject to the entry of a final order of the Court approving the assumption of this Agreement, and (ii) we shall not be required to perform any additional services under this Agreement until the entry of the Court's order approving the assumption of the Agreement or, if this Agreement is deemed not to be an executory contract, an order authorizing our employment, under the terms of this Agreement. In any event, the order approving the Company's assumption of this Agreement or, if this Agreement is deemed not to be an executory contract, the order authorizing our engagement must be acceptable to us in our sole discretion.

3



Fees and Expenses

**Compensation for Services:** As compensation for providing Services hereunder, the Company shall pay HCG non-refundable professional fees based on an hourly rate schedule and the level of staff required to complete our Services plus reasonable out-of-pocket expenses. The scope of our Services, as well as the complexity and length of this project will be based on those tasks required and approved by the Company.

HCG understands that billings for our services are subject to review and approval by the Bankruptcy Court and agrees to comply with any administrative order governing billing and payment that has been entered in the Nortel chapter 11 cases.

Our current hourly rate schedule is as follows:

| | |
|---|---|
| Managing Directors | $650 - $730 |
| Directors | $525 - $620 |
| Managers | $400 - $475 |
| Associates | $325 - $345 |
| Analysts | $230 - $245 |
| On-Demand Consultants | $140 - $300 |

From time to time in the normal course of business HCG may adjust its hourly rates. HCG services will be charged at the rates that are in effect at the time the services are rendered.

As an accommodation to the Company, HCG agrees to permanently reduce each month the total of monthly fees invoiced by 10%. In the event that the Bankruptcy Court requires the continuation of interim fee holdbacks beyond each fee application period, the Company agrees to support HCG in any initial request for the Court to allow HCG a lesser amount of holdback in recognition of its permanent fee accommodation.

**Out-of-Pocket Expenses:** The Company agrees to reimburse HCG for reasonable out-of-pocket expenses (including reasonable matter related legal fees that may be incurred by HCG, transportation, lodging, meals, communications, supplies, copying, etc.) billed in conjunction with its professional fee statements. Out-of-pocket expenses will be billed at actual cost incurred.

**Statements:** HCG shall provide to Nortel monthly statements describing in detail the tasks performed during the preceding period, the HCG staff providing services, and the time spent by each HCG employee.



Payments: Payment of HCG's invoices should be made by wire transfer to:

Bank of America, N.A.
Chicago, Illinois
Routing No. 0260-0959-3
Account Title: Huron Consulting Services LLC
Account Number: 5800297276
Comments: (include invoice number)

Business Terms

The attached General Business Terms apply to this engagement.

We look forward to assisting you and providing advisory services. If there are any questions, please contact me at (646) 277-2207.

Very truly yours,

HURON CONSULTING SERVICES LLC

By: _____
James M. Lukenda, CIRA
Managing Director

I HAVE READ AND ACCEPT AND AGREE
TO THE TERMS STATED HEREIN:

Nortel Networks Inc.

Signature: _____
Title: Chief Legal Officer
Date: Feb 13, 2009



Attachment to Proposal Letter dated January 29, 2009 with
Nortel Networks Inc., et al., (revised February 11, 2009)

## GENERAL BUSINESS TERMS

**1. Our Services** We will provide the services and furnish the deliverables as described in our engagement letter and any attachments thereto, as may be modified from time to time by mutual consent.

**2. Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security and other applicable employee withholdings.

**3. Fees, Expenses** Our fees and payment terms are set out in our engagement letter. Those fees do not include taxes. You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services and deliverables, excluding taxes on our income generally. We reserve the right to suspend services if invoices are not timely paid, in which event we will not be liable for any resulting loss, damage or expense connected with such suspension.

**4. Confidentiality** With respect to any information supplied in connection with this engagement and designated by either of us as confidential, or which the other should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other agrees to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) lawfully disclosed by a third party, (iv) independently developed or (v) disclosed pursuant to legal requirement or order. We may also mention your name and provide a general description of the engagement in our client lists or marketing materials.

**5. Our Deliverables and Your License** Upon full payment of all amounts due us in connection with this engagement, all right, title and interest in the deliverables set out in our engagement letter will become your sole and exclusive property, except as set forth below. We will retain sole and exclusive ownership of all right, title and interest in our work papers, proprietary information, processes, methodologies, know how and software ("Huron Property"), including such information as existed prior to the delivery of our services and, to the extent such information is of general application, anything which we may discover, create or develop during our provision of services for you. To the extent our deliverables to you contain Huron Property, we grant you a non-exclusive, non-assignable, royalty-free license to use it in connection with the deliverables and the subject of the engagement and for no other or further use without our express, prior written consent. If our deliverables are subject to any third party rights in software or intellectual property, we will notify you of such rights.

**6. Our Warranty** We warrant that our services will be performed with reasonable care in a diligent and competent manner. Our sole obligation will be to correct any non-conformance with this warranty, provided that you give us written notice within 10 days after the services are performed or, if applicable, deliverables are delivered. The notice will specify and detail the non-conformance and we will have a reasonable amount of time, based on its severity and complexity, to correct the non-conformance.

We do not warrant and are not responsible for any third party products or services. Your sole and exclusive rights and remedies with respect to any third party products or services are against the third party vendor and not against us.

THIS WARRANTY IS OUR ONLY WARRANTY CONCERNING THE SERVICES AND ANY DELIVERABLE, AND IS MADE EXPRESSLY IN LIEU OF ALL OTHER WARRANTIES AND REPRESENTATIONS, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, ALL OF WHICH ARE HEREBY DISCLAIMED.

**7. Liability and Indemnification** (a) We will, to the extent allowable by law, indemnify you, your



owners, employees, contractors and agents against all costs, fees, expenses, damages and liabilities (including reasonable attorneys' fees and costs) relating to intellectual property infringement, bodily injury or death of any person, or damage to real or tangible personal property incurred while we are performing the services and to the extent caused by the negligent or willful acts or omissions of our employees, contractors or agents in performing the services as finally adjudicated by a court of law.

(b) You will, to the extent allowable by law, indemnify us, our owners, employees, contractors and agents against all costs, fees, expenses, damages and liabilities (including reasonable attorneys' fees and costs) associated with any third party claim relating to or arising as a result of the services or your use of the deliverables except to the extent (i) we are obligated to indemnify you pursuant to Section 7(a) or (ii) the liability was caused by the grossly negligent or willful acts or omissions of our employees, contractors or agents in performing the services as finally adjudicated by a court of law.

(c) Neither of us will be liable for any delays or failures in performance due to circumstances beyond our reasonable control.

**8. Limitation of Liability; No Consequential Damages.** Except with respect to any obligations pursuant to Section 7 or your compensation obligations set forth in the engagement letter, neither of us will have liability relating to this engagement in an amount that exceeds the fees we receive from you for the portion of the engagement giving rise to liability or for any special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity).

**9. Non-Solicitation** During the term of this engagement, and for a period of one year following its expiration or termination, you will not actively solicit, employ or otherwise engage any of our employees (including former employees) who were involved in the engagement.

**10. Termination** (a) You may terminate our engagement for convenience at any time on 15 days' written notice.

(b) We may terminate this engagement if, within 15 days' notice, you fail to cure a material breach of our engagement terms or without notice in the event of non-payment of amounts due us.

(c) You will pay us for all services rendered, expenses incurred or commitments made by us to the effective date of termination, any contingent fees as described in the engagement letter and all reasonable costs associated with any termination.

**11. General** (a) These General Business Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by both parties. If there is a conflict between these General Business Terms and the terms of the engagement letter, these General Business Terms will govern.

(b) No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that neither party has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, neither party will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(e) We each agree that any dispute or claim arising out of or relating to this agreement or the services shall be determined by arbitration before a sole arbitrator, administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures, and judgment on the award may be entered in any court having jurisdiction. If we initiate the arbitration, it will be held in the JAMS office nearest to your principal place of business. If you initiate the arbitration, it will be held in Chicago, Illinois.

\* \* \*

v51903

7