**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
---------------------------------------------------------X
                                            :
```
*In re*
```
                                            :      Chapter 11
```
Nortel Networks Inc., *et al.*,[1]
```
                                            :      Case No. 09-10138 (KG)
```
               Debtors.
```
                                            :      Jointly Administered
                                            :
```
 

**Hearing date: March 20, 2009 at 11:00 a.m. (EST)**
**Objections due: March 13, 2009 at 4:00 p.m. (EST)**

```
---------------------------------------------------------X
```

**DEBTORS' MOTION FOR THE ENTRY OF AN ORDER UNDER SECTION 365(a)
OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO REJECT
AS OF MARCH 5, 2009, A CERTAIN CONTRACT
WITH CAESARS PALACE DATED AS OF DECEMBER 12, 2008**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit B, authorizing the Debtors to reject as of March 5, 2009 (the "Effective Date"), a certain contract with Caesars Palace dated as of December 12, 2008 attached as Exhibit A hereto (the "Contract"). In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue

is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 365(a) and 554(a)

of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

## Background

### A.      Introduction

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the

Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors

Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively,

the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and

operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as

foreign representative for the Canadian Debtors, has filed petitions in this Court for

recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC (collectively, the "EMEA Debtors").[3]

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7.      On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142).  No trustee or examiner has been appointed in the Debtors' cases.

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

**C.      The Contract**

9.      On December 12, 2008, NNI, through its agent Maritz Canada which was acting as a sub-contractor to Pico Atlanta, Inc., which was engaged by NNI to provide event support services to Nortel, entered into the Contract with Caesars Palace to reserve rooms in connection with attendance at an industry conference.  The size of the room block reserved for the Debtors under the Contract varies for each day of the conference, but totals 722 room nights over the course of eight days between March 27, 2009 and April 3, 2009.  The rooms vary in price from $149 per night to $2300 per night for different types of rooms, with the majority of rooms priced at $219 per night.

10.      As a result of the bankruptcy filing, the Debtors no longer require nearly as many rooms for the conference.  Furthermore, the Debtor believes that the prices in the Contract are above current market rates for hotel rooms in Las Vegas on the dates of the conference.

**Relief Requested**

11.      By this Motion, the Debtors respectively request the entry of an order authorizing the rejection of the Contract, pursuant to section 365(a) of the Bankruptcy Code, as of the Effective Date.

---

[4]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

12.    The Debtors reserve the right to argue that the Contract is not an executory

contract.  The Debtors also reserve all rights to contest claims that arise out of the rejection of

the Contract.

**Basis for Relief**

13.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the

court's approval, may assume or reject an executory contract or an unexpired lease." 11

U.S.C. § 365(a); see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065,

1075 (3d Cir. 1992).  The Court may approve a debtor's rejection of an executory contract or

unexpired lease if such rejection is made in the exercise of such debtor's sound business

judgment, and if such rejection benefits its estate.  See, e.g., Sharon Steel Corp. v. Nat'l Fuel

Gas Distrib. Corp., 872 F.2d 36, 39-40 (3d Cir. 1989); see also NLRB v. Bildisco & Bildisco

(In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982), aff'd, 465 U.S. 513 (1984); In re Patterson,

119 B.R. 59, 60-61 (E.D. Pa. 1990); In re Federated Dep't. Stores, Inc., 131 B.R. 808, 811

(S.D. Ohio 1991) ("Courts traditionally have applied the business judgment standard in

determining whether to authorize the rejection of executory contracts and unexpired leases");

Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees, Inc.), 194 B.R. 555,

558 n.1 (Bankr. S.D.N.Y. 1996) ("[u]nder the business judgment test, . . . [a court should

approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will

benefit the estate").

14.    It is enough if a debtor determines in its business judgment that a benefit will be

realized.  Sharon Steel Corp., 872 F.2d at 39 (citing Wheeling-Pittsburgh Steel Corp. v. West

Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.), 72 B.R. 845, 846 (Bankr. W.D. Pa.

1987)).  The business judgment standard requires that the Court approve the debtor's

5

business decision unless that judgment is the product of bad faith, whim or caprice. See In re

Trans World Airlines, Inc., 261 B.R. 103, 121 (Bankr. D. Del. 2001); see also Lubrizol

Enter., Inc. v. Richmond Metal Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985) cert. denied

475 U.S. 1057 (1986).

15.     The Debtors have determined that the Contract is unnecessary to the continued

operation of the Debtor's business, has little value to the estates, and should be rejected.

Under the Contract, the Debtors booked reservations for a large block of rooms to be used in

connection with an industry conference.  Since the bankruptcy filings, the Debtors have

determined that the rooms are priced at rates that are higher than current market rates and the

Contract is for significantly more hotel rooms than the maximum number the Debtors would

need to attend the industry conference.  Therefore, the Debtors have concluded that it makes

sound business sense to reject the Contract and to instead book only the number of rooms

that the Debtors anticipate actually needing at a significantly less expensive nightly rate.

16.     Based upon the foregoing facts and circumstances, the Debtors submit that the

rejection of Contract in the manner set forth above is supported by sound business judgment,

and is necessary, prudent and in the best interests of the Debtors, their estates, creditors and

parties in interest. The Debtors seek to reject the Contract effective as of March 5, 2009.

### Notice

17.     Notice of the Motion has been given via facsimile, electronic transmission, hand

delivery or overnight mail to the (i) Office of the United States Trustee for the District of

Delaware; (ii) the Committee; (iii) the general service list established in these chapter 11

cases; (iv) Caesars Palace, c/o Harrah's Entertainment, Inc., One Caesars Palace Drive, Las

Vegas, NV 89109, Attn: Corporate Legal; (v) PICO Atlanta, Inc., 5361 Royal Woods

Parkway, Tucker, Georgia, 30084; and (vi) Maritz Canada Inc., 6900 Maritz Drive,

Mississauga, Ontario L5W 1L8, Canada.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

18.    No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: March 4, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*