IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
In re:                                   :      **Chapter 11**
                                         :
**NORTEL NETWORKS INC., *et al.*,**[1]           :      **Case No.  09-10138 (KG)**
                                         :      **Jointly Administered**
        **Debtors.**                     :
                                         :      Hearing Date:  March 20, 2009 at 11:00 a.m. ET
                                         :      Objection Deadline:  March 13, 2009 at 4:00 p.m. ET
                                         :      Related to Docket No. 417
----------------------------------------------------x

**OBJECTION OF UBS REALTY INVESTORS LLC TO
DEBTORS' MOTION FOR APPROVAL OF PROCEDURES FOR
THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
AND THE ABANDONMENT OF CERTAIN ASSETS RELATED THERETO**

TO THE HONORABLE KEVIN GROSS,
UNITED STATES BANKRUPTCY COURT JUDGE:

        UBS Realty Investors LLC ("UBS" or "Landlord"), by its undersigned attorneys,

hereby makes this objection (the "Objection") to Debtors' Motion for Approval of Procedures

for the Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain

Assets Related Thereto (the "Motion") [D.I. 417], and in support thereof avers as follows:

        1.      UBS is the owner or agent for the owner of an office building, known as

One Deerfield Centre, 13560 Morris Road, Alpharetta, Georgia (the "Premises"), in which

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax
        identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital
        Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International,
        Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251),
        CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846),
        Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546),
        Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358),
        Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc.
        (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are
        available at http://chapter11.epiqsystems.com/nortel.

Debtors lease office space pursuant to a written unexpired lease of nonresidential real property (the "Lease").

2.     By the Motion, Debtors seek approval of procedures whereby they may reject one or more leases, including the Lease, without further order of court, as well as procedures for the abandonment of certain property located at Debtor's leaseholds.

## Effective Date of Lease Rejection

3.     UBS does not challenge the Debtors' business judgment in determining that it should reject various leases. However, UBS does challenge Debtors' attempt to set the date for the rejection of leases as a date other than the <u>later</u> of the date when Debtors have (i) unequivocally relinquished possession of the premises, (ii) returned same to the landlords free of any interests or property of any other parties and (iii) either (a) the date an order approving the rejection has been entered or (b) the date the time to object to the rejection of a lease has expired with no objection having been filed.

4.     Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession may, subject to court approval, assume or reject its leases. Bankruptcy Rule 6006 provides that a proceeding to assume or reject an unexpired lease is governed by Bankruptcy Rule 9014 (Contested Matters), and requires notice and a hearing.

5.     The majority position on the effective date of a lease rejection, which is grounded on the plain meaning of the statute, holds that the rejection is not effective until approved by the court and that the obligation to pay the full amount of rent specified in the lease, and otherwise perform all obligations continues through to that effective date. Section 365(a):

> requires two distinct actions, one by the trustee [or debtor-in-possession] and one by the court. The trustee is to assume or reject, and the court is to approve or disapprove. Therefore, under Section 365(a), rejection of an unexpired lease *can be*

2

> *accomplished only by an order of the bankruptcy court.* [Emphasis added]

*In Re Arizona Appetito's Stores, Inc.,* 893 F. 2d 216 (9th Cir. 1990). *See also In Re Thinking Machines,* 67 F.3d 1021 (1st Cir. 1995); *In Re: Revco D.S., Inc.,* 109 B.R. 264 (Bankr. N.D. Ohio 1989); *In Re Worths Stores Corp.,* 130 B.R. 531 (Bankr. E.D. Mo. 1991); *In Re Federated Department Stores, Inc., et al.,* 131 B.R. 808 (S.D. Ohio, 1991); *In Re Paul Harris Stores, Inc., et al.,* 148 B.R. 307 (S.D.Ind. 1992); *In Re 1 Potato 2, Inc.,* 182 B.R. 540 (Bankr. D.Minn. 1995); *In Re Appliance Store, Inc.,* 148 B.R. 234 (Bankr. W.D.Pa. 1992); *In Re Valley Steel Products Co., Inc.,* 147 B.R. 168 (Bankr. E.D.Mo. 1992); *In Re D'Lites of America, Inc.,* 86 B.R. 299 (Bankr. N.D. Ga. 1988); *In Re Garfinckel's, Inc.,* 118 B.R. 154 (Bankr. D.C. 1990); and, *In Re Virginia Packaging Supply Co., Inc.,* 122 B.R. 491 (Bankr. E.D.Va. 1990).

      6.      *In Revco,* Judge White analyzed both the legal and policy reasons for holding that a lease rejection is effective only as of the date of the court's order. *Revco,* 109 B.R. at 267-270. The court cited a long line of cases standing for the proposition that a lease may not be unilaterally assumed or rejected by the trustee or debtor-in-possession but only upon approval of the court. The court then considered the interrelationship between Section 365(a) and Bankruptcy Rule 6006, stating

> [t]he differences between former Bankruptcy Rule 607 and current Bankruptcy Rules 6006(a) and 9014 evidence Congressional intent to strengthen the role of the court in the assumption/rejection decision making process. *Id.*

The court specifically concluded that a rejection of an unexpired lease is effective only upon court ordered express approval of the rejection. *Accord, Worths,* 130 B.R. 531. As the Court stated in *In re Treat Fitness Center, Inc.,* 60 B.R. 878 (9th Cir. BAP 1986):

> To not follow these rather explicit rules [6006(a) and 9014] would be to lead us back into the morass of attempting to judge the

3

meaning and import of the conduct and conversations of the
parties. *Id.* at 879.

7.      After quoting with approval the foregoing passage from *Treat Fitness*, the

court in *In re National Oil Co.*, 80 B.R. 525 (Bankr. D. Colo. 1987) went on to note:

> The debtor contends that compliance with these formalities
> requiring court approval to reject leases is an unreasonable burden.
> *This Court rejects the contention that compliance with the explicit
> language of the law is unnecessary. Section 365 and the
> accompanying Bankruptcy Rules are designed to provide a degree
> of factual certainty in determining the actual date of rejection.*
> Moreover the requirements for notice and opportunity for a hearing
> under Bankruptcy Rule 9014 provide the creditors and the court
> with an opportunity to examine the efficacy of a debtor's decision
> to reject a lease under the business judgment test. It may be, on
> certain occasions, that a debtor's decision to reject an unexpired
> lease would not be in the best interests of the estate or the
> creditors, and the requirements of court approval operates as a
> safeguard to protect against a unilateral decision by the debtor that
> could be prejudicial to the creditors. [Citations omitted.] [Emphasis
> added.]

8.      The general rule in this district was enunciated by then Chief Judge Walsh

in *Namco Cybertainment, Inc.*, Case No. 98-00173 (PJW), April 15, 1998 Transcript of

Proceedings, at p.35 (*See* Exhibit "A" hereto.) As set forth in *Namco*, the premises must be

unequivocally surrendered to the landlord if there is to be a retroactive rejection of a lease.

9.      In this matter, Debtors propose that rejection of their leases become

effective upon the date the Rejection Notice[2] is filed and served (or the date specified in the

Rejection Notice). The Debtors also state that they will have unequivocally surrendered

possession of the premises to the landlord on or before the date on which the Rejection Notice is

filed. However, despite their stated "unequivocal surrender," the Debtors have reserved the

---

[2]     Terms not otherwise defined herein, shall have the meanings ascribed to them in the
Motion.

4

opportunity to re-enter the premises after the Rejection Notice is served to remove such Personal Property located at any of the Lease premises prior to the expiration of the Rejection Notice Period. Finally, in the event of an objection to the rejection, the Debtors seek to relate the effective date of rejection of such Leases back to the Rejection Notice date, if such objection is overruled or withdrawn.

10.    First, the effective date should not be retroactive to the date of filing and service of the Rejection Notice. This creates a discrepancy between the time of rejection and the date that the Landlord has possession and control over the Premises. One of the lynchpins to rejection procedure orders which allow rejection upon notice from the debtors, without further order of the court, is the fact that the rejection notice is unequivocal such that the landlord will know that once the date for rejection is announced, the landlord is free to commence reletting activities. Here, there is no such certainty. Further, retroactive rejection presents a risk of loss to the Landlord. Once the Lease is rejected, the Debtors no longer have an insurable interest in the Leases or Premises, making the Landlord subject to uninsurable claims from third parties that enter onto the Premises after the effective date of rejection. This shifts all the risk of loss for this period to the Landlord. This is not supportable by the Bankruptcy Code and is contrary to the policy of Section 365.

11.    Certainty in the stated date for lease rejection is not the only fact necessary for the establishment of the rejection date. As numerous rejection procedure orders in this Court, and elsewhere, provide, the rejection date is normally the later of the date noticed by the debtor or the date that the debtor actually turns over possession to the landlord by delivery of the premises, and the keys therefor, in "broom clean" condition with all property removed and/or

5

abandoned pursuant to an order of court. The issue of abandonment of property is addressed *infra*.

12.      Moreover, in the event a party other than the Landlord objects to the rejection of any Lease, the effective date of rejection must be the later of the surrender date (as set forth below), and the date that the Court enters an order authorizing rejection of such Lease. This is consistent with Section 365 and protects the rights of the Landlord in the event a delay occurs through no fault of their own. As set forth above, rejection of a lease is generally not effective until it is so ordered by the Bankruptcy Court. Pending the resolution of such objection, the Landlord cannot market or otherwise control its Premises. The landlords must not be prejudiced with regard to objections filed by other parties in interest. In the event that an objection is filed by a party other than the landlord of the premises, the rejection must not be effective prior to the entry of the Order overruling the objection, or the withdrawal of the objection.

13.      For the reasons set forth above, Debtors' proposed rejection procedures should not be approved to the extent that they provide for rejection prior to the later of (a) the expiration of the objection period, (b) removal or abandonment of all of Debtors' property, as well as the property of any third parties, remaining in the premises, and (c) the entry of an Order overruling any objection filed by a party other than the landlord of the premises or the withdrawal of the objection by such party.

## Abandonment of Property

14.      Debtors seek the right to abandon any property the Debtor does not desire to remove from any of the Lease premises. All too often debtors simply close and leave the premises with property (supplies and furniture, fixtures and equipment) remaining therein. The

6

landlord is then left with the task of cleaning out the premises and attempting to determine if any of the remaining property may be subject to the rights of the debtors or third parties.

15.     UBS does not have a direct relationship with any third parties who may have interests in the property, which Debtors propose to abandon. In many circumstances, UBS has been required to perform, *inter alia*, UCC-1 searches to determine whether or not any third party has any interest in property remaining in the premises, and then find out that property which it believed had been the property of the debtor was subject to a third party's security interest.

16.     UBS must not be put in the position of fulfilling Debtors' obligations. Debtors are the parties seeking to have their leases rejected. In order for that rejection to be effective, however, the premises must be returned to the landlord in such a condition as will enable the landlord to take immediate control of same without fear of being subjected to third party claims. Accordingly, any rejection order should provide that any of Debtors' property remaining in the premises as of the rejection date is deemed abandoned and further, that if any property remaining in the premises belongs to a third party, or is property in which a third party claims an interest, whether a security interest or otherwise, Debtors shall give ten (10) days notice to each and every third party who may have a claim in such property to remove the property, or in default thereof, the third party's interest shall be deemed terminated and the property abandoned without any liability to the landlord for the disposal thereof.

17.     Approval of the Debtors' motion as submitted, and the failure to require the Debtors to comply with the requirements set forth above, would deprive UBS of the use of its property without just compensation and delay UBS's ability to mitigate damages.

## Objections and Claims

18.     Paragraph C of the proposed Rejection and Abandonment Procedures Order requires the Notice Parties to serve on Debtors' counsel <u>and the other Notice Parties,</u> their objections, if any, to the Rejection Notice.  This requirement is burdensome to the objecting party, and is inconsistent with other provisions in the proposed order (*see* ¶ D, E), which merely requires service on Debtors' counsel alone.  Moreover, often times the objecting party is not aware of who the other Notice Parties to the Rejection Notice are, especially in the case of parties "having, to the best of the Debtors' knowledge, an interest in real or Personal Property at the premises where the underlying Lease is being rejected pursuant to the Rejection Notice." Accordingly, the requirement to serve anyone other than Debtors' counsel with an objection should be stricken.

19.     Further, Paragraph I of the proposed Rejection and Abandonment Procedures Order requires any non-debtor party to a rejected Lease to file <u>and serve</u> a proof of claim for rejection damages.  Standard practice is to file proofs of claims with either the Debtors' claims agent, if one has been retained, or the Clerk of the Bankruptcy Court.  There is no requirement that proofs of claims must be served upon anyone else.  Accordingly, the requirement for service of any proof of claim should be stricken from the proposed Rejection and Abandonment Procedures Order.

## Joinder in Other Objections

20.     UBS hereby joins in the objections filed by Debtors' other landlords, to the extent not inconsistent herewith.

**WHEREFORE,** UBS respectfully requests that the Bankruptcy Court modify

any order to incorporate the changes set forth above, and order that any Lease be rejected as of

the <u>later</u> of the dates as set forth in paragraphs 3, 12, *supra*; or, in the absence of said conditions,

that the Motion be denied; and such other and further relief as may be just and required under all

of the circumstances.

Dated: March 13, 2009
Wilmington, Delaware

Respectfully submitted,

/s/ Leslie C. Heilman
Tobey M. Daluz, Esquire (No. 3939)
Leslie Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
Email:  daluzt@ballardspahr.com
        heilmanl@ballardspahr.com

and

David L. Pollack, Esquire
Jeffrey Meyers, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
51ST  Fl - Mellon Bank Center
1735 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 864-8325
Facsimile: (215) 864-9473
Email: pollack@ballardspahr.com
        meyers@ballardspahr.com

*Counsel for UBS Realty Investors LLC*

DMEAST #10222003 v1