IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re:                                        :    **Chapter 11**
                                              :
**NORTEL NETWORKS INC., *et al.*,**[1]        :    Case No. 09-10138 (KG)
                                              :    Jointly Administered
        **Debtors.**               :
                                              :    Hearing Date: March 20, 2009 at 11:00 a.m. ET
                                              :    Objection Deadline: March 13, 2009 at 4:00 p.m. ET
                                              :    Related to Docket No. 417
---------------------------------------------------------x

### LIMITED OBJECTION OF THE PRUDENTIAL INSURANCE COMPANY OF AMERICA TO THE DEBTORS' MOTION FOR APPROVAL OF PROCEDURES FOR THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND THE ABANDONMENT OF CERTAIN ASSETS RELATED THERETO

TO THE HONORABLE KEVIN GROSS,
UNITED STATES BANKRUPTCY JUDGE:

    The Prudential Insurance Company of America (the "Landlord") hereby files this objection (the "Objection") to the Debtors' Motion For Approval Of Procedures For The Rejection Of Executory Contracts And Unexpired Leases And The Abandonment Of Certain Assets Related Thereto (the "Rejection Procedures Motion"),[2] and respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Terms not otherwise defined herein shall have the meanings ascribed to them in the Rejection Procedures Motion.

## I. BACKGROUND FACTS

1. Nortel Networks, Inc., and its affiliated co-debtors (collectively, the "Debtors") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code on January 14, 2009. The Debtors have continued to operate their business and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[3]

2. The Debtors lease space (the "Premises") from the Landlord where they operate their business pursuant to an unexpired lease of nonresidential real property (the "Lease") at the following locations:

| The Prudential Insurance Company of America | |
|---|---|
| Sawgrass Corporate Park | Sunrise, FL |

3. On March 4, 2009, the Debtors filed the Rejection Procedures Motion. Theoretically, Landlord does not object to expedited and uniform procedures for the rejection of leases. The Rejection Procedures Motion and proposed order, however, do not adequately address critical Landlord concerns and require modification as set forth below.

## II. ARGUMENT

### A. Rejection cannot become effective until the Premises is vacated and turned over to the Landlord free and clear of any personal property interests or third party objections.

4. In the Rejection Procedures Motion, the Debtors propose that the rejection of the Lease be effective on the date that: (a) the Rejection Notice is served or the date set forth in the Rejection Notice (if no objection is filed); or (b) if an objection is filed, upon the date otherwise determined by the Court. *See* Rejection Procedures Motion at ¶¶ 10(D) & (E). The Rejection Procedures Motion also provides ten (10) days for parties to object to the rejection. *See* Rejection Procedures Motion at ¶ 10(C).

---

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

5. At least with respect to real property leases, the rejection should be effective on the later of the expiration of the 10-day notice period set forth in the Rejection Notice, and the date the Debtors vacate the Premises by turning over keys or "key codes" to the Landlord. The Debtors provide that they will return the keys to the affected landlord with written confirmation of surrender as part of the rejection process. *See* Rejection Procedures Motion at ¶ 10(F). To the extent this surrender occurs more than the later of 10 days after the service of the Rejection Notice or the date set forth in the Rejection Notice, the date of surrender (as discussed below) should be the effective date of the rejection.

6. Additionally, the effective date should not be retroactive to the date of service of the Rejection Date. This creates a discrepancy between the time of rejection and the date that the Landlord has possession and control over the Premises. Retroactive rejection presents a risk of loss to the Landlord. Once the Lease is rejected, the Debtors no longer have an insurable interest in the Lease or Premises, making the Landlord subject to uninsurable claims from third parties that enter onto the Premises after the effective date of rejection. This shifts all the risk of loss for this period to the Landlord. This is not supportable by the Bankruptcy Code and is contrary to the policy of Section 365.

7. Moreover, in the event a party other than the Landlord objects to the rejection of the Lease, the effective date of rejection must be the later of the surrender date (as set forth below), and the date that the Court enters an order authorizing rejection of such Lease. This is consistent with Section 365 and protects the rights of the Landlord in the event a delay occurs through no fault of its own. Rejection of a lease is generally not effective until it is so ordered by the Bankruptcy Court. Until the entry of the rejection order, a debtor is obligated to pay the full amount of rent specified in the lease, and otherwise perform all obligations. *See* In re Thinking Machines Corp., 67 F.3d 1021, 1025-1028 (1st Cir. 1995) (reversing judgment of District Court setting rejection date as of the motion filing date); In re Federated Department Stores, Inc., 131 B.R. 808, 815 (S.D. Ohio 1991) (reversing bankruptcy court's approval of retroactive rejection as requested by debtor); In re Arizona Appetito's Stores, Inc., 893 F.2d 216 (9th Cir. 1990); In re

3

Worth's Stores, Corp., 130 B.R. 531 (Bankr. E.D. Mo. 1991); In re Paul Harris Stores, Inc., et al., 148 B.R. 307 (S.D. Ind. 1992); Towers v. Chickering & Gregory (In re Pacific-Atlantic Trading Co.), 27 F.3d 401 (9th Cir. 1994). Pending the resolution of such objection, the Landlord cannot market or otherwise control its Premises. In the situation of an objection by a third party, there is no reason to permit any retroactive rejection of the Lease.

8. Finally, the Lease requires that the Premises be returned to the Landlord in "broom clean" condition with all signs, shelves, personal property, movable trade fixtures and the like removed. Therefore, any final rejection procedures should clearly provide that the surrender date is the later of: (a) ten (10) days from the service of the Rejection Notice; and (b) the date that the Debtors turn over the Premises in broom clean condition with all keys, all alarm codes, and any key codes to the affected Landlord (or to the mall managers or to the mall management office where the Premises are located). In addition, all inventory, furnishings, fixtures and equipment ("FF&E") and signs should be removed. Lastly, the Debtors should provide written confirmation that the Debtors have unequivocally vacated the Premises, which written confirmation includes information necessary to effect the transfer utilities to the affected Landlord and other information to facilitate transition of the Premises.

**B. The rejection procedures should provide that property abandoned at the Premises may be disposed of by the Landlord free and clear of claims, encumbrances and interests, and without any liability to third parties whatsoever.**

9. The abandonment of property can result in significant costs to a Landlord as a debtor often leaves its vacated space cluttered with inventory, supplies and FF&E. This leaves the Landlord with the task of cleaning up the property and potentially dealing with any unknown third party security interests that may exist with respect to the abandoned property. Resolving this issue at the outset will benefit the Debtor and assist in minimizing administrative rent exposure. In re Pacific-Atlantic Trading Co., 27 F.3d 401 (9th Cir. 1994). For this reason, the Debtors should also provide ten (10) day's notice of its intent to abandon personal property to any party third lessor or any party with a secured interest in any personal property of the Debtors.

10. The Landlord does not object to the abandonment of property pursuant to Section 554, so long as the order provides that upon the effective date of rejection of the Lease, the Landlord may dispose of any remaining property free and clear of all liens, claims, encumbrances, and rights of third parties and without any liability to the Debtors or any such third party.

11. Currently, the procedures set up the possibility that the rejection date takes effect on the day it is served. This does not make practical sense for any removal of property, and again raises the specter of a third party coming onto the Premises to remove property after the effective date of rejection. The Debtors should provide the Rejection Notice to any third party ten (10) days prior to the effective date of rejection, so there is no dispute that all property left at the Premises after the effective date of rejection will be abandoned to the Landlord free and clear of claims, interests and encumbrances, and without liability to the Debtors or third parties.

12. It does not serve the purposes of the Bankruptcy Code to shift these obligations to the Landlord. If the Debtors seek to reject their Lease through an expedited process that does not protect Landlord rights, they should provide for: (a) removal of all property as required by the Lease; or (b) an agreement that the costs arising from removal and dealing with third party security interests or equipment leases shall be an administrative expense of the bankruptcy estate. The Debtors must be held responsible for the Landlord's legitimate claims arising from the removal and disposal of such property, as well as costs associated with the restoration of the Premises to the condition required under the Lease.

13. Any order approving rejection procedures should clearly provide that no rejection shall take effect until all property is removed from the Premises, or that any property left at the Premises shall be deemed abandoned to the Landlord free and clear of all liens, claims, encumbrances, and rights of any third party upon the effective date of the rejection of the Lease, and that the Landlord may dispose of such abandoned property in its sole discretion, and without liability to the Debtors or any such third party.

**C.  Landlord joins in the objections of other landlords.**

14. To the extent not inconsistent with the relief sought herein, Landlord joins in any opposition to Rejection Procedures Motion.

## III.  CONCLUSION

In order to protect the interests of the Landlord, Landlord prays the Court modify any order to incorporate the changes set forth above, and grant such other and further relief as may be just and proper.

Dated: March 13, 2009         Respectfully submitted,
       Wilmington, Delaware

/s/ Leslie C. Heilman
Tobey M. Daluz, Esquire (No. 3939)
Leslie C. Heilman, Esquire (No. 4716)
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
919 Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail: daluzt@ballardspahr.com
       heilmanl@ballardspahr.com

and

KATTEN MUCHIN ROSENMAN LLP
Thomas J. Leanse (SBN: 084638)
Dustin P. Branch (SBN: 174909)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone: (310) 788-4400
Facsimile: (310) 788-4471
E-mail: thomas.leanse@kattenlaw.com
       dustin.branch@kattenlaw.com

Attorneys for Landlord Creditors The Prudential Insurance Company of America