**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS, INC., *et al.* | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing Date: April 9, 2009 at 9:00 a.m.**<br>**Objection Deadline: April 2, 2009 at 4:00 p.m.** |

**MOTION OF AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY,
INC. PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY CODE FOR
RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF**

American Express Travel Related Services Company, Inc. and certain affiliates

(collectively, "American Express"), by and through its counsel, Flaster/Greenberg P.C., hereby

moves this Court pursuant to sections 362(d) and 553 of Title 11 of the United States Code (the

"Bankruptcy Code") for relief from the automatic stay in order to effectuate a setoff of

prepetition amounts owing and due between American Express and a certain above-captioned

Debtor, Nortel Networks Limited and certain affiliates (collectively, "NNL"), pursuant to certain

prepetition agreements between the parties (the "Motion"), all as set forth below.

**PRELIMINARY STATEMENT**

Prior to the Debtors filing for Chapter 11 Bankruptcy, American Express and NNL

entered into a certain global agreement and arrangement whereby each was obligated to the other

for certain services. Specifically, American Express owes NNL amounts equal to $75,557.50 for

prepetition services rendered, and NNL owes American Express amounts equal to $110,615.09

for prepetition services rendered. Upon information and belief, neither the claim amounts nor

the provision of services and these amounts are in dispute. American Express seeks an order

from the Court granting relief from the automatic stay so that American Express may properly

assert its rights to setoff the prepetition amounts due and owing from American Express to NNL against the prepetition amounts owed from NNL to American Express. After application if its setoff rights, American Express will be left with a remainder prepetition claim in the amount of $35,057.59 against NNL.

## JURISDICTION

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409. The statutory relief sought in this matter is predicated upon Sections 362 and 553 of the Bankruptcy Code.

## BACKGROUND

2.     On January 14, 2009 (the "Petition Date"), the Debtors, including NNL, filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Pursuant to an Order of this Court, the Chapter 11 Cases are being jointly administered.

3.     On January 26, 2009, the United States Trustee established the Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases [Docket Nos. 141 & 142].

4.     On October 1, 2006, American Express and NNL entered into a certain Multinational Business Travel Service Agreement No. 06-232 together with certain Local Agreements (collectively, and as amended from time to time, the "MBTSA").

5.     Pursuant to the MBTSA, *inter alia*, American Express provide certain travel agent and management services on a worldwide basis to NNL employees at various rates and fees (minus any commissions paid to American Express directly attributable to travel undertaken by NNL employees), and NNL provide American Express with exclusive access to NNL employees for the purpose of providing the employees with American Express' travel related services.

2

Pursuant to the MBTSA, American Express is obligated to return any override revenue and commissions paid to American Express that are directly attributable to travel undertaken by NNL employees to NNL. The MBTSA provides the general terms and conditions governing the global relationship between (i) American Express and its affiliates operating in different countries and (ii) NNL and its affiliates operating in different countries.

6.      Pursuant to the MBTSA, NNL is obligated to pay American Express fees for services rendered under the MBTSA. NNL is the party responsible to make payments to American Express for services provided pursuant to the MBTSA.

7.      Pursuant to the MBTSA, American Express also must pay NNL all override revenue and base commission revenue earned on NNL's account.

8.      In accordance with the MBTSA, American Express has provided travel related services to NNL at NNL's request, for which American Express issued prepetition invoices for services rendered in the United Kingdom, Germany, France, Italy, Spain, Canada and the United States, which prepetition invoices remained outstanding as of the Petition Date, and on which approximately $110,615.09 is owed to American Express (the "American Express Invoices to NNL"). As evidence of the American Express Invoices to NNL, the invoices for the United Kingdom, Germany, France, Italy, Spain, Canada and the United States together with the settlement reports for the United States, Canada and the United Kingdom are attached hereto as Exhibit "A". To the best of American Express' knowledge, the validity of the American Express Invoices to NNL and the amounts owed to American Express are not in dispute.

9.      In connection with the prepetition services rendered by American Express, American Express received override revenue and base commission revenue in the approximate amount of $75,557.50 for certain travel undertaken by NNL employees in the following markets:

United Kingdom, Germany, France, Italy, Spain, Canada and the United States, which amounts remained outstanding as of the Petition Date and are owed to NNL (the "Amounts Owed to NNL"). As evidence of the Amounts Owed to NNL, the invoices for the United Kingdom, Germany, France, Italy, Spain, Canada and the United States together with the settlement reports for the United States, Canada and the United Kingdom are attached hereto as Exhibit "A". To the best of American Express' knowledge, the validity of the Amounts Owed to NNL is not in dispute.

10.     Pursuant to Section 12 of the MBTSA, the MBTSA is to be interpreted under the laws of the State of New York.

11.     On February 5, 2009, this Court entered its Order Clarifying Relief Granted Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Honor Prepetition Obligations to the Customers (the "Customer Obligation Order") [Docket No. 166]. Paragraph 5 of the Customer Obligation Order provides, *inter alia*, that "all rights of Debtors' customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors."

## RELIEF REQUESTED

12.     American Express seeks relief from the automatic stay of Bankruptcy Code § 362(a) to effectuate setoffs of mutual prepetition obligations owing (a) from NNL to American Express and (b) from American Express to NNL. Relief from the automatic stay would allow NNL and American Express to reconcile their mutual, undisputed prepetition obligations in a manner contemplated by the Bankruptcy Code and under applicable state law.

## BASIS FOR RELIEF

### American Express Is Entitled to Setoff.

13.    The Bankruptcy Code leaves intact parties' non-bankruptcy rights of setoff. Specifically, Bankruptcy Code § 553 provides in pertinent part that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case …." 11 U.S.C. § 553; *See also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995 (holding that Bankruptcy Code Section 553(a) "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy"). This right of setoff is intended to avoid "the absurdity of making A pay B when B owes A." *Id.* (quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). "The right of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance." *Darr v. Muratore*, 8 F.3d 854, 860 (1st Cir. 1993) (citing to *Cohen v. The Savings and Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.)*, 896 F.2d 54 (3d Cir. 1990)).

14.    In addition, the right to setoff claims "is an established part of our bankruptcy laws … [and] *should be enforced unless compelling circumstances … require otherwise.*" *United States v. Offord Fin., Inc. (In re Medina)*, 205 B.R. 216, 223 (B.A.P. 9th Cir. 1996) (emphasis added; internal citations and quotations omitted); *see also Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160,1165 (2d Cir. 1979).

15.    A creditor may exercise its non-bankruptcy setoff rights pursuant to Bankruptcy Code § 553 where the creditor shows (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; (3) the debts are mutual; and (4) the debts owed to both the creditor and debtor are enforceable and valid. 11 U.S.C. § 553(a); *see, e.g., Ames v. Dehart (In re Ames)*, 195 F.3d 177, 182 (3d Cir. 1999); *In re Koch*, 224 B.R. 572, 576 (Bankr.

E.D. Va. 1998); *Eastern Airlines, Inc. v. Chemical Bank, Inc.*, 1997 U.S. Dist. LEXIS 7380, at

*5 (Bankr. S.D.N.Y. 1997); *In re Czyzk*, 297 B.R. 406, 409 (3d Cir. 2003).

16.    It is well established that Section 553 of the Bankruptcy Code, while providing

guideposts and threshold requirements for the exercise of setoff rights of creditors against a

bankrupt debtor, does not create such setoff rights.  11 U.S.C. § 553(a).  Section 553 "does not

affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that

arose before commencement of the case under [the Bankruptcy Code] against a claim against the

debtor that arose before commencement of the case."  *See id.*  Accordingly, appropriate state law

setoff rights apply to creditors' assertions of setoff.  11 U.S.C. § 553(a); *see also In re Garden

Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) (holding that setoff rights are determined

according to applicable state law); *Scherling v. Hellman Elec. Corp. (In re Westchester

Structures, Inc.)*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995); *U.S. ex rel I.R.S. v. Norton*, 717

F.2d 767 (3d Cir. 1983).

17.    By the terms of the MBTSA, New York law governs the setoff rights of the

parties in the instant case.  New York law allows parties to setoff mutual debts.  NEW YORK

DEBTOR & CREDITOR LAW § 151; *See also, In re Westchester Structures, Inc.*, 181 B.R. at 740

(applying New York law on setoffs to recognize not only statutory rights under Section 151 but

also a creditor's equitable rights to setoff).  Under Section 151 of the New York Debtor and

Creditor Law, upon the filing of a petition in bankruptcy, a party to whom such bankruptcy-filing

party owes money shall have the right to

> Set off and apply against any indebtedness, whether matured or unmatured, of
> such creditor to such debtor, any amount owing from such debtor to such creditor,
> at or at any time after, the happening of [the filing of a petition in bankruptcy],
> and the aforesaid right of set off may be exercised by such debtor against such
> creditor or against any trustee in bankruptcy, debtor in possession, assignee for
> the benefit of creditors, receiver or execution, judgment or attachment creditor of

such creditor, or against anyone else claiming through or against such creditor or against any trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, receiver or execution, judgment or attachment creditor, notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to [the filing of a petition in bankruptcy].

NEW YORK DEBTOR & CREDITOR LAW § 151.

18.    American Express has valid and enforceable state-law bases under the MBTSA pursuant, *inter alia*, to the applicable New York law to effectuate a setoff.  Moreover, nothing in the MBTSA limits or restricts any rights of setoff of any party whatsoever.

19.    Turning to the threshold requirements under Section 553 of the Bankruptcy Code, it is clear that American Express has the affirmative right to setoff the Amounts Due to NNL against the American Express' Invoices to NNL.

20.    First, both the Amounts Due to NNL and the American Express Invoices to NNL are comprised entirely of amounts arising prepetition and due for prepetition claims and debts.

21.    Second, no dispute exists with respect to any of the amounts included in the Amounts Due to NNL or the American Express Invoices to NNL.  Accordingly, these amounts are fully valid and enforceable.

22.    Last, the parties' debts are "mutual," and therefore appropriate to be setoff. Mutuality is not defined by the Bankruptcy Code.  *See In re NTG Indus., Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).  Pursuant to current New York law, "debts are mutual when they are due to and from the same persons in the same capacity."  *In re Westchester Structures, Inc.*, 181 B.R. at 740 (applying New York law to determine whether mutuality exists); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996) (citing 4 Collier ON BANKRUPTCY 553.04[2] (15th ed. 1995)).  The mutuality requirement is clearly satisfied for the debts and claims in the United States and Canada.  In each case, American Express has (i) a debt

to NNL with respect to the services rendered pursuant to the MBTSA and (ii) a claim against NNL for the services rendered pursuant to the MBTSA.

23.     In the United Kingdom and Europe, American Express provided services to NNL's affiliates pursuant to the terms of the MBTSA.  Accordingly, the American Express Invoices to NNL in the United Kingdom, Germany, France, Italy and Spain were issued by American Express to NNL's affiliate is those countries.  With respect to NNL's affiliates in the United Kingdom, Germany, France, Italy and Spain, then, American Express is seeking to setoff a debt to American Express against a claim against NNL's affiliates in the United Kingdom and Europe.  While such "triangular" setoffs are generally not permitted because the mutuality is lacking, such setoffs are enforceable as an exception to the mutuality requirement when multi-party mutuality is created by a valid prepetition contract.  *See In re Garden Ridge Corp.*, 338 B.R. 627, 634 (Bankr. D. Del. 2006) (stating that while triangular setoff arrangements are generally not permitted in bankruptcy, an agreement allowing triangular setoffs between related entities can create the mutuality required for setoff); *See also Wooten v. Vicksburg Refining, Inc. (In re Hill Petroleum Co.)*, 95 B.R. 404, 411-12 (Bankr. W.D. La. 1988) (noting "the narrow exception to the rule against three party, 'triangular' setoffs, occurs where there is a formal agreement by the debtor that two entities may aggregate debts owed to and from the debtor"); *Bloor v. Shapiro*, 32 B.R. 993, 1001-02 (S.D.N.Y. 1983) (permitting the assertion of triangular setoff rights by a guarantor against a bankrupt debtor to the guaranteed parties); *In re Custom Coals Laurel*, 258 B.R. 597, 607 (Bankr. W.D. Pa. 2001) citing, *In re Land Machinery Corp.*, 1988 WL 110429 (Bankr. W.D.Pa. 1988) ("For a valid "triangular" setoff to exist, debtor must have formally agreed to permit aggregation of debts owed by two creditors").  The core of the mutuality requirement is that, at the time of setoff, each party owes its claim independently "with

the right to collect in its own name against the debtor in its own right and severally" and, if this characteristic is satisfied, a triangular setoff is not per se precluded under Section 553 of the Bankruptcy Code. *In re U.S. Aeroteam, Inc.*, 327 B.R. 852 (Bankr. S.D. Ohio 2005).

24.     In this case, there is an express agreement between American Express and NNL to permit (i) American Express to perform services for NNL's affiliates and suppliers on a world wide basis, (ii) charge fees at the point of sale, and (iii) to further permit American Express to charge the difference, where applicable, between the fees due to American Express and the commissions and/or revenues due to NNL at the point of sale. Furthermore, the MBTSA expressly provides that NNL will pay for all fees associated with services rendered by American Express to NNL's employees or the employees of NNL's affiliates. Therefore, while invoices were issued to NNL's affiliates in the countries where American Express' services were rendered, it is the intention of the MBTSA that NNL is responsible for all fees. Accordingly, based on the terms MBTSA, American Express is permitted to aggregate the outstanding claims and debts across all countries where it provides its services. This express agreement creates mutuality between the claims for fees rendered in the United States, Canada, France, Spain, Italy, Germany and the United Kingdom and the debt to NNL and/or NNL's affiliates arising from the services rendered the United States, Canada, France, Spain, Italy, Germany and the United Kingdom so as to give American Express the right of setoff.

25.     In sum, applicable non-bankruptcy law permits American Express to exercise its statutory and equitable setoff rights against NNL. NNL and American Express owe each other mutual, countervailing debts that arose before the Debtors filed their petitions in bankruptcy. Therefore, this Court should lift the automatic stay to permit American Express to exercise its setoff rights.

**Relief from the Automatic Stay is Appropriate to Allow American Express to Effectuate a**

**Setoff.**

26.     A party seeking to assert its setoff rights must obtain relief from the automatic

stay imposed by Section 362(a)(7) of the Bankruptcy Code prior to actually applying the asserted

setoff. *See In re Academy Services, Inc.*, 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988).  By this

Motion, American Express seeks to comply with this procedural requirement.

27.     The automatic stay provides important protections for debtors in bankruptcy

cases, however, upon compliance with the procedural requirements that notice be given and

hearing be held, cause exists under Section 362(d)(1) of the Bankruptcy Code to grant American

Express relief from the automatic stay so that American Express, as a creditor, may move

forward and apply its rights of setoff. *See In re NTG Indus., Inc.*, 103 B.R. at 197 (relief from

stay granted to allow creditor to effectuate setoff); *In re Whitaker, 173 B.R. 359* (Bankr. S.D.

Ohio 1994 (relief from stay granted to allow creditor to effectuate setoff); *In re Bevill, Bresler &*

*Schulman Asset Mgmt. Corp.*, 896 F.2d at 61.

28.     Setoff in the instant case is appropriate and necessary for American Express and

NNL to move forward with their independent operations.  Section 362(a)(7) of the Bankruptcy

Code does not alter a creditor's setoff rights. *See In re Bevill, Bresler & Schulman Asset Mgmt.*

*Corp.*, 896 F.2d at 61; H.R. Rep. No. 595, 95th Cong. 1st Sess., at 342 (1977); S. Rep. No. 989,

95th Cong. 2d Sess., at 51 (1978).  More specifically, section 362(a)(7) stays enforcement

pending an examination of the respective parties' rights. *Id.*  Following a grant of stay relief, a

creditor may then exercise its rights of setoff that remain unimpaired by section 362(a) (7). *See*

*In re NTG Indus., Inc.*, 103 B.R. at 197.  The automatic stay does not alter a creditor's

substantive rights of setoff; it only delays the exercise or application of those setoff rights. *See*

*In re Luz Int'l, Ltd., 219 B.R. 837, 841* (9th Cir. B.A.P. 1998).

29.     In the instant case, American Express' rights to setoff the Amounts Owed to NNL

against the American Express Invoices are undeniable, as the obligations being setoff are

prepetition, undisputed and mutual.  Such obligations are ripe to be setoff pursuant to each of 11

U.S.C. § 553, New York Creditor and Debtor Law § 151 and American Express' equitable

rights. The setoff requires no payment from any of the Debtors, and the result is a netting effect,

reducing debt owed by both NNL and American Express.

30.     Granting relief from the automatic stay to allow American Express to enforce its

setoff rights does not, and will not, impair Debtors' restructuring and reorganization efforts.  In

addition, such stay relief does not prejudice the rights of other creditors and/or customers to

apply similar setoff rights.  The Customer Obligation Order preserved these rights for customers,

including American Express.  Application of these rights is appropriate at this time, and cause

exists under 11 U.S.C. § 362(d)(1) to grant relief from the automatic stay to American Express,

for the limited purpose of effectuating its valid prepetition setoff rights.

## RESERVATION OF RIGHTS

31.     American Express reserves all rights (1) to defend against challenges from other

parties to the American Express Invoices to NNL and (2) to seek recovery on other alternative

grounds.  American Express further reserves all rights it (or its affiliates) may have against

Debtors (or their affiliates) in the related Canadian insolvency proceeding.  Nothing herein

contained shall be construed to constitute an admission, assumption or acknowledgment of

liability for the debts of any other entity.

WHEREFORE, American Express respectfully requests that the Court enter an Order (a) granting American Express relief from the automatic stay to effect a setoff of mutual obligations between NNL and American Express, and (b) granting American Express such other and further just and proper relief.

**FLASTER/GREENBERG P.C.**

Dated:  March 20, 2009

William J. Burnett, Esquire (DE No. 4078)
901 N. Market Street, 4th Floor
Wilmington, DE 19801
Telephone: 302-351-1910
Facsimile: 302-351-1919

and

Eugene J. Chikowski, Esquire
Kristan L. Howard, Esquire
Eight Penn Center, 15th Floor
1628 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: 215-279-9393
Facsimile: 215-279-9394

*Counsel for American Express*