# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : | Jointly Administered |
| | : | |
| Debtors | : | **Objection Deadline**: April 9, 2009 at 4:00 p.m. (ET) |
| | : | **Hearing Date**: Scheduled only if necessary |

-------------------------------------------------------X

## FIRST MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 22, 2009 THROUGH FEBRUARY 28, 2009

This is a(n): __X__ monthly _____ interim _____ final application.

Name of Applicant:    Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide
Professional Services to:  Official Committee of Unsecured Creditors

Date of Retention: March 5, 2009 (nunc pro tunc to January 22, 2009)

Period for which Compensation
and Reimbursement is sought: January 22, 2009 through February 28, 2009

Amount of Compensation sought as
actual, reasonable, and necessary: $1,002,466.75

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: $14,994.50

The total time expended during this Compensation Period for the preparation of Akin Gump's First Monthly Fee Application was 3.30 hours and the corresponding compensation is $1,525.00.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc. (9769); Alteon Websystems International, Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

8138803 v1

**SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
RENDERING SERVICES DURING THE PERIOD
JANUARY 22, 2009 THROUGH FEBRUARY 28, 2009**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 10 years; Admitted in 1989; Financial Restructuring Department | $925 | 8.40 | $7,770.00 |
| David H. Botter | Partner for 8 years; Admitted in 1990; Financial Restructuring Department | $825 | 80.35 | $66,288.75 |
| Fred S. Hodara | Partner for 20 years; Admitted in 1982; Financial Restructuring Department | $950 | 187.70 | $178,315.00 |
| Karol A. Kepchar | Partner for 10 years; Admitted in 1992; Intellectual Property Department | $620 | 55.30 | $34,286.00 |
| Stephen B. Kuhn | Partner for 9 years; Admitted in 1991; Corporate Department | $745 | 90.10 | $67,124.50 |
| Stuart E. Leblang | Partner for 9 years; Admitted in 1991; Tax Department | $900 | 5.20 | $4,680.00 |
| Phillip R. Marchesiello | Partner for 3 years; Admitted in 1997; Telecommunications Department | $550 | 21.60 | $11,880.00 |
| Abid Qureshi | Partner for 2 years; Admitted in 1995; Financial Restructuring Department | $675 | 25.30 | $17,077.50 |
| Aaron A. Scow | Partner for 1 year; Admitted in 1998; Corporate Department | $525 | 31.10 | $16,327.50 |
| Bruce E. Simonetti | Partner for 5 years; Admitted in 1995; ERISA Department | $755 | 20.00 | $15,100.00 |
| Mark J. Volow | Partner for 20 years; Admitted in 1980; Litigation Department | $730 | 44.30 | $32,339.00 |
| W. Thomas Weir | Partner for 27 years; Admitted in 1973; Tax Department | $730 | 10.60 | $7,738.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Rolf Zaiss | Partner for 2 years; Admitted in 1993; Tax Department | $755 | 32.50 | $24,537.50 |
| Kenneth A. Davis | Senior Counsel for 2 years; Admitted in 1995; Financial Restructuring Department | $620 | 136.85 | $84,847.00 |
| Ira L. Rosenblatt | Senior Counsel for 1 year; Admitted in 1997; Corporate Department | $610 | 36.70 | $22,387.00 |
| Kevin M. Rowe | Senior Counsel for 9 years; Admitted in 1985; Tax Department | $650 | 53.30 | $34,645.00 |
| Alexander F. Anderson | Counsel for 3 years; Admitted in 2001; Tax Department | $580 | 32.10 | $18,618.00 |
| Ryan C. Jacobs | Counsel for 1 year; Admitted in 2004; Financial Restructuring Department | $530 | 274.05 | $145,246.50 |
| Austin S. Lilling | Counsel for 2 years; Admitted in 2001; Tax Department | $560 | 23.25 | $13,020.00 |
| David C. Vondle | Counsel for 1 year; Admitted in 2003; Intellectual Property Department | $490 | 50.40 | $24,696.00 |
| Kamail G. Ahmed | Associate for 2 years; Admitted in 2009; Corporate Department | $325 | 7.00 | $2,275.00 |
| Laura Geyer | Associate for 10 years; Admitted in 1998; Intellectual Property Department | $410 | 5.30 | $2,173.00 |
| Brad M. Kahn | Associate for 2 years; Admitted in 2008; Financial Restructuring Department | $375 | 219.90 | $82,462.50 |
| Amy J. Lanctot | Associate for 4 years; Admitted in 2004; Corporate Department | $440 | 22.40 | $9,856.00 |
| Joshua Y. Sturm | Associate for 3 years; Admitted in 2007; Financial Restructuring Department | $420 | 137.25 | $57,645.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Daniel Z. Vira | Associate for 9 years; Admitted in 1993; ERISA Department | $580 | 7.90 | $4,582.00 |
| Rebecca L. M. Barloon | Legal Assistant for 2 years; Financial Restructuring Department | $190 | 13.90 | $2,641.00 |
| Dagama Krasa-Berstell | Legal Assistant for 19 years; Financial Restructuring Department | $210 | 12.10 | $2,541.00 |
| Peter J. Sprofera | Legal Assistant for 33 years; Financial Restructuring Department | $245 | 46.40 | $11,368.00 |

Total Amount of Fees:     $1,002,466.75
Total Number of Hours:       1,691.25
Blended Hourly Rate:           $592.74

8138803 v1

## COMPENSATION BY PROJECT CATEGORY
## JANUARY 22, 2009 THROUGH FEBRUARY 28, 2009

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 290.00 | $169,476.50 |
| Akin Gump Fee Applications/Monthly Billing Reports | 3.30 | $1,525.00 |
| Analysis of Other Professionals Fee Applications/Reports | 2.10 | $787.50 |
| Review/Preparation of Schedules, Statements | 2.00 | $812.00 |
| Retention of Professionals | 268.30 | $125,928.50 |
| Creditors Committee Meetings | 169.40 | $115,907.00 |
| Court Hearings | 21.80 | $12,560.00 |
| Financial Reports and Analysis | 31.20 | $16,285.00 |
| DIP, Cash Collateral Usage and Exit Financing | 79.50 | $52,063.50 |
| Executory Contracts/License Agreements | 22.80 | $10,012.50 |
| General Claims Analysis/Claims Objections | 11.10 | $6,543.50 |
| Analysis of Pre-Petition Transactions | 45.80 | $27,617.00 |
| Canadian Proceedings | 100.70 | $55,572.50 |
| Analysis of Secured Claims/Adequate Protection Issues | 4.00 | $2,585.00 |
| Lift Stay Litigation | 5.30 | $2,941.50 |
| General Adversary Proceedings | 0.20 | $190.00 |
| Tax Issues | 105.80 | $69,350.50 |
| Labor Issues/Employee Benefits | 138.85 | $102,178.00 |
| Real Estate Issues | 14.50 | $8,767.50 |
| Telecommunications/Regulatory | 3.50 | $2,045.00 |
| Asset/Stock Transactions/Business Liquidations | 253.90 | $152,436.50 |
| Travel (billed at 50% of actual time) | 32.10 | $20,930.75 |
| Non-Debtor Affiliates | 1.40 | $985.00 |

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Intercompany Analysis | 7.70 | $3,471.50 |
| Committee Website | 6.80 | $2,856.00 |
| European Proceedings/Matters | 0.80 | $550.00 |
| Intellectual Property | 68.40 | $38,089.00 |
| **TOTAL** | **1,691.25** | **$1,002,466.75** |

8138803 v1

**DISBURSEMENT SUMMARY**
**JANUARY 22, 2009 THROUGH FEBRUARY 28, 2009**

| | |
|---|---:|
| Computerized Research, Corporate Service Fees & PACER Charges | $117.81 |
| Conference Call Expenses | $4,633.03 |
| Courier Service/Postage | $26.98 |
| Duplicating (@ $0.10 per page) | $268.60 |
| Meals/Committee Meeting Expenses | $5,628.67 |
| Travel Expenses – Airfare | $832.88 |
| Travel Expenses – Ground Transportation | $2,018.75 |
| Travel Expenses – Incidentals | $7.00 |
| Travel Expenses – Lodging | $1,140.78 |
| Travel Expenses – Train Fare | $320.00 |
| **TOTAL** | **$14,994.50** |

8138803 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

In re                                          :    Chapter 11
                                               :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]              :    Jointly Administered
                                               :
                            Debtors            :    <u>Objection Deadline</u>: April 9, 2009 at 4:00 p.m. (ET)
                                               :    <u>Hearing Date</u>: Scheduled only if necessary

-------------------------------------------------------X

### FIRST MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER
### & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF
### COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES
### FOR SERVICES RENDERED DURING THE PERIOD FROM
### <u>JANUARY 22, 2009 THROUGH FEBRUARY 28, 2009</u>

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or the "Applicant"), co-counsel to

the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its first monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of $1,002,466.75 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc. (9769); Alteon Websystems International, Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith

in the amount of $14,994.50 for the period from January 22, 2009 through February 28, 2009

(the "Compensation Period"). In support of this Application, Akin Gump respectfully states as

follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein

are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

January 15, 2009, the Court entered an order for the joint administration of these cases pursuant

to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks

Corporation, together with Nortel Networks Limited and certain of their Canadian affiliates

(collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors")

commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of

Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian

Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to operate

their businesses and manage their properties under the supervision of the Canadian Court.

5.    On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC.

6.    On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.    On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, *nunc pro tunc* to January 22, 2009. On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

### III.    RELIEF REQUESTED

8.    By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $1,002,466.75 representing 1618.85 hours in professional services and 72.4 hours in paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with

the rendition of such professional services and paraprofessional services in the amount of
$14,994.50.

9.      Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80%
of its fees ($801,973.40) and 100% of its expenses ($14,994.50) relating to services rendered
during the Compensation Period.

10.      Akin Gump has received no payment and no promises for payment from any
source for services rendered in connection with these chapter 11 cases. There is no agreement or
understanding between the Applicant and any other person (other than members of Akin Gump)
for the sharing of compensation to be received for the services rendered in these cases.

11.      As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"),
annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein
were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.      SUMMARY OF SERVICES RENDERED

12.      Akin Gump has rendered professional services to the Committee as requested and
as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors
during the Compensation Period. The variety and complexity of the issues in these Insolvency
Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the
Committee's needs have required the expenditure of substantial time by Akin Gump personnel
from several legal disciplines.

13.      In the ordinary course of its practice, Akin Gump maintains written records of the
time expended by attorneys and paraprofessionals in the rendition of their professional services.
In accordance with the provisions of the Administrative Fee Order, a compilation showing the
name of the attorney or paraprofessional, the date on which the services were performed, a

description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

14.     In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

15.     Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

16.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

**Case Administration**

(Fees: $169,476.50; Hours: 290.00)

17.     This subject matter relates to services rendered to the Committee during the Compensation Period relating to the Committee's organizational and administrative needs. Following the Committee's formation, Akin Gump spent considerable time working with the Committee to develop appropriate bylaws to govern the Committee's conduct throughout these cases, including negotiating the terms of confidentiality arrangements acceptable to the

5

Committee members, the Committee's professionals and the Debtors to facilitate information sharing in these cases, and assisting the Committee with understanding its financial advisory and local counsel needs.

18.     During the Compensation Period, Akin Gump also reviewed and analyzed all "first-day" and "second-day" motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto. In connection with such analyses, Akin Gump, conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases. These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

19.     During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates. In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls. Akin Gump also regularly consulted with Jefferies, Capstone, FMC and Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

20.    Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

6

**Akin Gump Fee Application/Monthly Billing Reports**

(Fees: $1,525.00; Hours: 3.30)

21.     This subject matter relates to time spent reviewing invoices and drafting monthly

fee statements as required under the Administrative Fee Order.

**Retention of Professionals**

(Fees: $125,928.50; Hours: 268.30)

22.     This subject matter relates to services performed by Akin Gump attorneys and

paraprofessionals in connection with the preparation of the Committee's application to retain

Akin Gump as its counsel, as well as in connection with the interviews and retention of the

Committee's other professionals, including assistance in the preparation of their retention

applications and negotiations in connection with the terms of such retentions. The subject matter

also relates to services performed by Akin Gump attorneys in connection with reviewing

applications by the Debtors to retain various legal and financial advisors (the "Debtor Retention

Applications"). During the Compensation Period, Akin Gump, on behalf of the Committee (i)

reviewed and analyzed each of the Debtor Retention Applications, and (ii) participated in

numerous discussions with the Committee related to the Debtor Retention Applications, and,

where appropriate, engaged in negotiations with the proposed professionals, the Debtors and

their advisors with respect to the terms of compensation in light of the nature of the services to

be performed by the professional.

**Committee Meetings**

(Fees: $115,907.00; Hours: 169.40)

23.     This subject matter relates to Committee matters, meetings and conference calls

with the Committee as a whole, with individual Committee members and with the Committee's

other legal and financial advisors. Akin Gump, together with the other Committee professionals,

held no less than two in-person and five telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, Akin Gump had numerous telephonic conferences with individual Committee members and the chair of the Committee and their respective professionals.

24.    Prior to its meetings with the Committee, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the Committee's other professionals, the Committee, as well as individual Committee members. During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee during the Compensation Period discussing the status of pertinent matters in these proceedings.

25.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

### Court Hearings

(Fees: $12,560.00; Hours: 21.80)

26.    This subject matter relates to preparation for and attendance at hearings and other proceedings before this Court. Akin Gump attorneys appeared at three hearings held before this Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. Akin Gump attorneys prepared for Court hearings by reviewing all applicable motions and applications filed

8

with the Court, including any responses thereto and consulted with the Committee's other professionals and the Debtors' advisors to formulate appropriate strategies. Akin Gump's participation at such hearings was necessary to protect the interests of unsecured creditors.

27.    Given Akin Gump's role as lead counsel to the Committee and its intimate knowledge of all aspects of these cases, Akin Gump attended a hearing before the Canadian Court during the Compensation Period to assist FMC in representing the interests of U.S. unsecured creditors on matters that materially impacted these chapter 11 cases.

**Intercompany Loan**

(Fees: $52,063.50; Hours: 79.50)

28.    A significant portion of Akin Gump's time during the Compensation Period was spent reviewing, analyzing, and negotiating on behalf of the Committee, the terms of a proposed intercompany loan between Debtor Nortel Networks Inc. ("NNI") as lender and Canadian Debtor Nortel Networks Limited ("NNL") as borrower and the related interim and final orders approving such loan.

29.    On January 14, 2009, the Debtors filed a motion (the "Intercompany Loan Motion") seeking, among other things, authority to enter into a $200 million revolving loan agreement with NNI as lender, Canadian Debtor NNL as borrower, and Canadian Debtor Nortel Networks Technology Corporation ("NNTC") as guarantor (the "Intercompany Loan"). The Intercompany Loan is purported to be secured only by a charge on the fee simple interest of NNTC and leasehold interest of NNL in a research and development facility located at 3100 Carling Avenue, Ottawa, Canada (the "Carling Facility"), which charge ranks third in priority pursuant to the Initial Order entered in the Canadian Proceedings on January 14, 2009 (the "Initial Order"). To the extent the proceeds from the Carling Facility are insufficient to satisfy NNL's obligations under the Intercompany Loan, the deficiency will be deemed an

9

intercompany claim entitled to the security of an intercompany charge, which charge ranks fifth in priority pursuant to the Initial Order entered in the Canadian Proceedings. On January 15, 2009, the Court entered an interim order approving the Intercompany Loan Motion (the "Interim Intercompany Loan Order"), and authorizing NNI to lend $75 million to NNL under the Intercompany Loan. The Canadian Court granted complimentary relief to the Canadian Debtors in the Initial Order.

30. During the Compensation Period, Akin Gump spent considerable time reviewing and analyzing the Intercompany Loan and the Initial Order, in particular, the adequacy of the collateral package and the relative priority of the charges under the Interim Intercompany Loan Order purporting to secure the Intercompany Loan. In connection therewith, Akin Gump, in concert with the Committee's Canadian counsel, FMC, and the Committee's financial professionals, carefully analyzed the terms of the Interim Intercompany Loan Order and the Initial Order in the Canadian Proceeding, to ensure that the rights and interests of unsecured creditors were not adversely impacted. As part of its analysis of the Intercompany Loan, Akin Gump worked with FMC to prepare detailed memoranda for the Committee summarizing the material terms of the Intercompany Loan, the Interim Intercompany Loan Order and the Initial Order, and held numerous conference calls with the full Committee to discuss the propriety of the terms upon which the Intercompany Loan was proposed and appropriate strategic options.

31. Given that certain material terms of the Intercompany Loan and the Initial Order are prejudicial to the rights of unsecured creditors, Akin Gump, along with FMC and the Committee's other professionals engaged in extensive negotiations during the Compensation Period with the Debtors, the Canadian Debtors and the Monitor in an effort to modify the Intercompany Loan and Initial Order in a manner acceptable to all constituents. These

10

negotiations continue to date.  As the Court is aware, the final hearing regarding authority to lend the remaining $125 million of the Intercompany Loan has been scheduled for April 9, 2009.

### Canadian Proceedings

(Fees: $55,572.50; Hours: 100.70)

*a. Cross-Border Protocol*

32.      To coordinate the administration of the Debtors' Insolvency Proceedings, the Debtors sought this Court's approval of a cross-border protocol (the "Cross-Border Protocol") as part of the "first-day" relief.  The Cross-Border Protocol was aimed at addressing certain jurisdictional, notice and administrative issues that may arise during the course of the Insolvency Proceedings.  This Court approved the Cross-Border Protocol at the "first-day" hearings, and the Canadian Court approved the Cross-Border Border Protocol as part of its Initial Order.  Since the Committee Formation Date, Akin Gump has spent time reviewing and analyzing the Cross-Border Protocol and has worked with the Committee's Canadian counsel, FMC, to determine if the protocol provides, among other things, necessary due process protections to the Debtors' creditors. Discussions among the parties with respect to modifications to the Cross Border Protocol are in their early stages and, as such, the Debtors and the Committee have entered into a stipulation (the "Protocol Stipulation") to extend the time in which the Committee could file a motion to reconsider the order approving the Cross-Border Protocol.  The first Protocol Stipulation was approved by this Court on February 17, 2009 and the latest such stipulation was approved on March 13, 2009, extending the time to file such a motion until March 31, 2009.

*b. Canadian Pleadings/Monitor's Reports*

33.      During the Compensation Period, Akin Gump attorneys worked closely with the Committee's Canadian counsel, FMC, to review all pleadings filed in the Canadian Proceedings (the "Canadian Pleadings") and to analyze the impact the relief requested may have on the

11

Debtors' estates and their creditors. In connection therewith, Akin Gump, along with FMC, participated in numerous conference calls with the Debtors' Canadian and U.S. professionals to discuss the relief requested in the Canadian Pleadings, and negotiated appropriate forms of orders related thereto. Akin Gump, with the assistance of FMC, kept the Committee apprised of all material developments in the Canadian Proceedings through regular detailed memoranda and, as appropriate, conference calls with the Committee.

34.    During the Compensation Period, the Monitor filed four reports with the Canadian Court, which provided the Canadian Court with an update on the progress of the Canadian Debtors' reorganization efforts and/or the Monitor's recommendations with respect to the propriety of relief requested by the Canadian Debtors. Akin Gump reviewed each such report, discussed the reports with FMC, the Committee's financial professionals, as well as professionals for the Debtors, and prepared memoranda for the Committee summarizing the Monitor's findings and recommendations.

### Asset Sales

(Fees: $152,436.50; Hours: 253.90)

35.    On February 20, 2009, the Debtors filed a motion (the "Velocity Sale Motion") with this Court to approve an asset purchase agreement (the "APA"), break-up fees, and sale and bidding procedures with respect to certain assets of the Debtors' Velocity business (the "Velocity Sale Procedures"). Akin Gump thoroughly reviewed and negotiated modifications to the Velocity Sale Procedures and the APA and worked with the Committee's other professionals to prepare memoranda which summarized the principal terms of the proposed procedures and stalking horse bid for the Committee.

36.    Additionally, during the Compensation Period, the Debtors filed a motion to implement procedures for the sale or abandonment of de minimis assets (the "De Minimis Asset

12

Motion"). Akin Gump spent time reviewing and analyzing the De Minimis Asset Motion, and negotiated modifications to the procedures set forth therein to ensure that the Committee had sufficient involvement in any sales of de minimis assets consummated by the Debtors during the pendency of the U.S. Proceeding.

### Financial Reports and Analysis
(Fees: $16,285.00; Hours: 31.20)

37.    Akin Gump reviewed and analyzed the Debtors' financial reports and forecasts during the Compensation Period, and assisted the Committee's financial professionals in summarizing such reports for the Committee. Additionally, Akin Gump attorneys participated in numerous conference calls with the Debtors and their professionals, the Committee's other professionals, and individual members of the Committee, to discuss the Debtors' operational performance and liquidity.

### Executory Contracts
(Fees: $10,012.50; Hours: 22.80)

38.    This subject matter relates to time spent by Akin Gump attorneys on matters relating to the assumption or rejection of the Debtors' executory contracts. Akin Gump undertook a detailed analysis during the Compensation Period of certain of the Debtors' major supplier and manufacturer contracts and worked with the Committee's other professionals to address potential issues and strategic options associated therewith.

### Unexpired Leases and Real Estate Issues
(Fees: $8,767.50; Hours: 14.50)

39.    This subject matter relates to time spent by Akin Gump attorneys on matters relating to the assumption or rejection of the Debtors' unexpired leases of nonresidential real property (the "Unexpired Leases"). During the Compensation Period, the Debtors filed their first

13

omnibus motion to reject certain Unexpired Leases and related subleases (the "First Lease Rejection Motion"). In connection therewith, Akin Gump attorneys, in consultation with Capstone, analyzed the underlying agreements, summarized applicable portions of the underlying agreements and the motion for the Committee, and discussed and made recommendations with respect thereto. The First Lease Rejection Motion was approved by the Court on February 23, 2009.

### General Claims Analysis
(Fees: $6,543.50; Hours: 11.10)

40.     This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors. During the Compensation Period, Akin Gump: (a) reviewed and negotiated procedures proposed by the Debtors for the resolution of reclamation claims, and (b) analyzed issues related to administrative claims pursuant to Bankruptcy Code section 503(b)(9).

### Analysis of Prepetition Transactions
(Fees: $27,617.00; Hours: 45.80)

41.     This subject matter relates to the analysis of prepetition transactions and the events that led to the Nortel Debtors' bankruptcy filings. During the Compensation Period, Akin Gump commenced an in-depth review of legal and factual issues relating to the Debtors' prepetition capital structure, financing agreements and significant transactions. In connection therewith, Akin Gump attorneys began extensive corporate due diligence, and participated in various conferences and in-person meetings with the Committee, the Committee's financial advisors and the Debtors' senior management team and advisors regarding such subjects.

**Lift Stay Litigation**

(Fees: $2,941.50; Hours: 5.30)

42.    This subject matter relates to time spent by Akin Gump attorneys analyzing automatic stay issues in these chapter 11 cases, including the lift stay motion filed by Johnson Controls, Inc.

**Tax Issues**

(Fees: $69,350.50; Hours: 105.80)

43.    This subject matter relates to legal services rendered by Akin Gump relating to tax matters affecting the Debtors.  During the Compensation Period, Akin Gump commenced an in-depth analysis of various tax issues affecting the Debtors, including the Debtors' transfer pricing system, and discussed numerous issues related thereto with the Committee's other professionals and the Debtors' advisors, as well as attended an in-person meeting with Nortel's senior management team to discuss same.

**Labor and Employee Benefits Issues**

(Fees: $102,178.00; Hours: 138.85)

44.    This subject matter relates to services rendered by Akin Gump in connection with the analysis of the Debtors' benefits plans and general labor matters.  During the Compensation Period, Akin Gump, together with the Committee's other professionals, spent considerable time reviewing and analyzing the Debtors' proposed Key Employee Incentive Plan (the "KEIP"), the Canadian Debtors' proposed Key Employee Retention Plan (the "KERP") and the Nortel Debtors' proposed 2009 Annual Incentive Plan (the "AIP" and together with the KEIP and the KERP, the "Plans").  Following negotiations among the Committee and the Debtors, certain modifications were made to the Plans and, as this Court is aware, an order approving a portion of

the KEIP and KERP Plans was entered on March 5, 2009, and a further hearing on the final component of the Plans addressing executives is scheduled for March 20, 2009.

45.    As a multinational corporation, the Debtors have significant pension obligations in numerous jurisdictions. As such, during the Compensation Period, Akin Gump attorneys, together with the Committee's Canadian and European counsel, spent significant time analyzing the pension obligations of the Debtors and their affiliates, as well as the relative priorities and treatment of those liabilities in the Nortel Debtors' insolvency proceedings.

### European Proceeding
(Fees: $550.00; Hours: 0.80)

46.    During the Compensation Period, Akin Gump worked closely with the Committee's European counsel, Ashurst, to examine and analyze all issues related to the European Proceeding, and through memoranda or conference calls, as appropriate, advised the Committee of the impact such issues may have on the Debtors' estates and their creditors.

### Non-Working Travel
(Fees: $20,930.00; Hours: 32.10)

47.    During the Compensation Period, Akin Gump attorneys spent 64.20 non-working hours traveling. Pursuant to Local Rule 2016-2(d)(viii), Akin Gump has discounted this time by 50% and, accordingly, has billed 32.10 working hours traveling for the Compensation Period.

**Committee Website and Information Sharing Protocol**

(Fees: $2,856.00; Hours: 6.80)

48.    During the Compensation Period, Akin Gump assisted the Committee in developing an information sharing protocol, in compliance with the Committee's obligations under section 1102(b)(3) of the Bankruptcy Code.  The information sharing protocol was approved by the Court on March 5, 2009.

## V.    ALLOWANCE OF COMPENSATION

49.    The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

50.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

51.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for

17

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

52.    The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 1691.25 hours.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

53.    As shown by this application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of time.  Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.  In addition,

Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $14,994.50 for which Akin Gump respectfully requests reimbursement in full.

54.     The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

55.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for Westlaw computer assisted legal research.

56.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

57.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

19

WHEREFORE, Akin Gump respectfully requests that this Court:

(a)     approve the allowance of $1,002,466.75 for compensation for professional services rendered to the Committee during the period from January 22, 2009 through and including February 28, 2009;

(b)     approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period January 22, 2009 through and including February 28, 2009 in the amount of $14,994.50; and

(c)     authorize and direct the Debtors to immediately pay to Akin Gump the amount of $816,967.90, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:   New York, New York
         March 20, 2009

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____
    Fred S. Hodara (*pro hac vice*)
    A Member of the Firm
    One Bryant Park
    New York, New York 10036
    (212) 872-1000
    Co-Counsel to the Official Committee of Unsecured Creditors