## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) | Case No  09-10138 (KG) |
| Nortel Networks Inc , et al.,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors | ) | **Objection Deadline:** April 9, 2009 4:00 pm |
|  | ) | **Hearing Date:** |
|  | ) |  |

## FIRST MONTHLY APPLICATION OF ASHURST LLP, EUROPEAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 30, 2009 FEBRUARY 28, 2009

This is a(n):__X__ monthly _____ interim _____ final application

Name of Applicant:   Ashurst LLP

Authorized to Provide
Professional Services to:   The Official Committee of Unsecured Creditors

Date of Retention:   March 5, 2009 (nunc pro tunc to January 30, 2009)

Period for which Compensation
and Reimbursement is sought:   January 30, 2009 through February 28, 2009

Amount of Compensation sought as
actual, reasonable and necessary   £97,645.50

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: £332.52

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc (9769); Alteon Websystems International, Inc. (5596); Xros, Inc (1181); Sonoma Systems (2073); Otera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc (2846); Nortel Networks Optical Components, Inc (3545); Nortel Networks HPOCS Inc (3546); Architel Systems (U S ) Corporation (3826); Nortel Networks International Inc (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc (0567)

SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
RENDERING SERVICES DURING THE PERIOD
JANUARY 30, 2009 THROUGH FEBRUARY 28, 2009

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested (£) |
|---|---|---|---|---|
| Giles Boothman | Partner for 8 years; Admitted in 1993; Restructuring and Special Situations Group | £610 | 49.40 | 30,134.00 |
| Caroline Carter | Partner for 11 years, Admitted in 1990; Employment, Incentives and Pensions Group | £610 | 0.60 | 366 |
| Steven Hull | Partner for 12 years; Admitted in 1989; Employment, Incentives and Pensions Group | £610 | 23.40 | 14,274.00 |
| Andrew McMillan | Partner for 3 years; Admitted in 1997; Corporate Department | £580 | 1.50 | 870.00 |
| Paul Randall | Partner for 14 years; Admitted in 1984; Employment, Incentives and Pensions Group | £610 | 0.20 | 122.00 |
| David von Saucken | Partner for 7 years; Admitted in 1996; Restructuring and Special Situations Group | £580 | 5.30 | 3,074.00 |
| Simon Baskerville | Associate for 8 years; Admitted in 2001; Restructuring and Special Situations Group | £500 | 15.70 | 7,850.00 |
| Marcus Fink | Associate for 8 years; Admitted in 2001; Employment, Incentives and Pensions Group | £500 | 5.60 | 2,800.00 |
| Cornelia Pinkert | Associate for 8 years Admitted in 2001 ; Restructuring and Special Situations Group. | £395 | 1.30 | 513.50 |
| Luke Rollason | Associate for 4 years; Admitted in 2005; Restructuring and Special Situations Group | £395 | 0.80 | 316.00 |
| Simon Owens | Professional Development Lawyer; Admitted in 1999; Employment, Incentives and Pensions Group | £395 | 1.30 | 513.50 |
| Esther Budding | Associate for 3 years; Admitted in 2005; Restructuring and Special Situations Group | £315 | 4.90 | 1,543.50 |
| Paul Bagon | Associate for 1 year; Admitted in 2008; Restructuring and Special Situations Group | £290 | 95.80 | 27,782.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested (£) |
|---|---|---|---|---|
| Louise Batty | Associate for 1 year; Admitted in 2008; Employment, Incentives and Pensions Group | £290 | 1 30 | 377 00 |
| Anna Patashnik | Associate for 1 year; Admitted in 2008; Employment, Incentives and Pensions Group | £290 | 1 40 | 406.00 |
| Andy Wright | Trainee Solicitor for 2 years; Employment, Incentives and Pensions Group | £185 | 8 10 | 1,498 50 |
| Helen Clark | Trainee Solicitor for 1 year; Restructuring and Special Situations Group | £185 | 1 50 | 277.50 |
| Benjamin Contrael | Referendar; Restructuring and Special Situations Group | £160 | 14 40 | 2,304.00 |
| Amir-Said Ghassabeh | Referendar; Restructuring and Special Situations Group | £160 | 9 50 | 1,520 00 |
| Matthias Kaulich | Referendar; Restructuring and Special Situations Group | £160 | 6 90 | 1,104 00 |
| TOTAL | | | 248.90 | 97,645.50 |

### COMPENSATION BY PROJECT CATEGORY
### JANUARY 30, 2009 THROUGH FEBRUARY 28, 2009.

| Project Category | Total Hours | Total Fees (£) |
|---|---|---|
| General Case Administration | 13.50 | 8,235.00 |
| Ashurst Fee Application / Monthly Billing Reports | 1.50 | 435.00 |
| Retention of Professionals | 44.00 | 16,568.00 |
| Creditors Committee Meetings | 23.10 | 10,127.00 |
| General Claims Analysis/Claims Objections | 46.40 | 14,444.00 |
| Labor Issues/Employee Benefits | 32.40 | 14,562.00 |
| Telecommunications/Regulatory | 1.50 | 870.00 |
| Asset/Stock Transactions/Business Liquidations | 2.00 | 1,220.00 |
| Intercompany Analysis | 0.80 | 488.00 |
| European Proceedings/Matters | 83.70 | 30,696.50 |
| TOTAL | 248.90 | 97,645.50 |

### DISBURSEMENT SUMMARY
### JANUARY 30, 2009 THROUGH FEBRUARY 28, 2009

| | |
|---|---|
| Travel Expenses – Ground Transportation | £291.92 |
| Meals | £15.60 |
| Company Search Fees | £25.00 |
| TOTAL | **£332.52** |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No  09-10138 (KG) |
| Nortel Networks Inc , et al.,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Objection Deadline:** |
| | ) | **Hearing Date:** |
| | ) | |

## FIRST MONTHLY APPLICATION OF ASHURST LLP, EUROPEAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 30, 2009 FEBRUARY 28, 2009

Ashurst LLP ("Ashurst" or the "Applicant"), European counsel to the Official Committee

of Unsecured Creditors (the "Committee") of Nortel Networks Inc , et al  (the "Debtors"), hereby

submits its first monthly application (the "Application") pursuant to (i) sections 330 and 331 of

title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of

Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and (iv) the

Administrative Order Pursuant to 11 U S C  §§ 105(a) and 331, Fed  R  Bankr  P  2016 and Del

Bankr  L R  2016-2 Establishing Procedures for Interim Compensation and Reimbursement of

Fees and Expenses for Professionals and Official Committee Members entered on February 4,

2009 (the "Administrative Fee Order"), for interim allowance of compensation for services

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc  (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems Inc  (9769); Alteon Websystems International, Inc  (5596); Xros, Inc  (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek  Inc  (5722); Nortel Networks Applications Management Solutions  Inc  (2846); Nortel Networks Optical Components, Inc  (3545); Nortel Networks HPOCS Inc  (3546); Architel Systems (U S ) Corporation (3826); Nortel Networks International Inc  (0358); Northern Telecom International Inc  (6286); and Nortel Networks Cable Solutions Inc  (0567)

rendered in the aggregate amount of £97,645.50 and for reimbursement of actual and necessary expenses incurred by Ashurst in connection therewith in the amount of £332.52 for the period from January 30, 2009 and February 28, 2009. In support if this Application, Ashurst respectfully states as follows:

## I.    JURISDICTION AND VENUE

1      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "U.S. Proceeding") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors have continued to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order jointly administering these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only

3      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC

4      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US

Trustee") appointed the Committee. The Committee currently consists of five members.[2] No trustee or examiner has been appointed in these chapter 11 cases

     5.     On January 30 2009, pursuant to section 328 and 1103(a) of the Bankruptcy Code, the Committee selected Ashurst to serve as European counsel to the Committee. On March 5, 2009, this Court entered an order authorizing the retention of Ashurst as European counsel to the Committee, *nunc pro tunc* to January 30, 2009.

### III.    RELIED REQUESTED

     6.     By this Application, Ashurst seeks (i) interim allowance and award of compensation for the professional services rendered by Ashurst as attorneys for the Committee for the period from January 31, 2009 through February 28, 2009 (the "Compensation Period") in the amount of £97,645.50 representing 248.90 hours in professional services; and (ii) reimbursement of actual and necessary expenses incurred by Ashurst during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the amount of £97,645.50

     7.     Pursuant to the Administrative Fee Order, Ashurst is seeking payment of £78,116.40 of fees (representing 80% of its fees) and £332.52 for reimbursement of expenses relating to services rendered during the Compensation Period.

     8.     Ashurst has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases. There is no agreement or understanding between the Applicant and any other person (other than members of Ashurst) for the sharing of compensation to be received for the services rendered in these cases.

---

[2] The Committee is comprised of the following entities: Airvana, Inc.; Flextronics Corporation (Chairperson); Law Debenture Trust Company of New York as indenture trustee; Pension Benefit Guaranty Corporation; and The Bank of New York Mellon as indenture trustee

9.      As stated in the Affirmation of Giles Boothman, Esq. (the "Boothman Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

10.     Ashurst has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by Ashurst personnel from several legal disciplines.

11.     In the ordinary course of its practice, Ashurst maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

12.     In the ordinary course of its practice, Ashurst also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

9

13.     Ashurst respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

14.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Ashurst was required to address.

### General Case Administration

(Fees: £8,235.00 ; Hours 13.50)

15.     This subject matter relates to services rendered to the Committee during the Compensation Period relating to the Committee's organizational and administrative needs. Following the Committee's formation, Ashurst spent time reviewing the bylaws governing the Committee's conduct throughout these cases, negotiating the terms of a confidentiality agreement, and assisting the Committee with understanding its European counsel needs.

16.     This subject matter also relates to services which do not fall into other categories, including, but not limited to, administering, managing and coordinating the provision of legal services to the Committee through maintaining internal task lists, and regular telephonic and in-person meetings among Ashurst attorneys and paraprofessionals and other Committee professionals to ensure coordination of efforts among all Committee advisors.

### Ashurst Fee Application/Monthly Billing Reports

(Fees: £435.00; Hours 1.50)

17.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order.

### Retention of Professionals

(Fees: £16,568.00; Hours 44.00)

18.     This subject matter relates to services performed by Ashurst attorneys and paraprofessionals in connection with the preparation of the Committee's application to retain Ashurst as its European counsel. Ashurst spent time during the Compensation Period working with the Committee's lead counsel, Akin Gump, to prepare its retention application and to ensure that it complied with conflict and other compliance and disclosure matters relating to Ashurst's retention by the Committee.

### Creditor Committee Meetings

(Fees: £10,127.00; Hours 23.10)

19.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, with individual Committee members and with the Committee's other legal and financial advisors. Specifically, during the Compensation Period, Ashurst, together with the other Committee professionals held multiple conference calls with the full Committee.

20.     Prior to such meetings, Ashurst reviewed each pending matter requiring the Committee's attention with respect to the European Proceeding and all underlying documentation in connection therewith. Thereafter, Ashurst discussed each of these matters with the Committee and assisted the Committee in formulating a position with respect to each pending matter. Through the meetings, conference calls and correspondence described above, Ashurst

11

assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these Insolvency Proceedings, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters at issue in these Insolvency Proceedings.

### General Claims Analysis/Claims Objections

(Fees: £14,444.00; Hours 46.40)

21      This subject matter relates to analysis of claims asserted or contemplated to be asserted against the Debtors. During the Compensation Period, Ashurst commenced a review of the pre-petition capital structure, transaction and operations of the Debtors and the EMEA Debtors. This analysis, which remains ongoing, required detailed diligence and analysis by Ashurst to enable the Committee to comprehend adequately the Debtors' and the EMEA Debtors' corporate, operational and financial structure to be in a position to appropriately acquit its fiduciary duty to the Debtors' unsecured creditors. In particular, Ashurst analyzed the Debtors' and the EMEA Debtors' pensions arrangement in the United Kingdom and the effects of the appointment of a UK administrator over the EMEA Debtors.

### Labor and Employee Benefits Issues

(Fees: £14,562.00; Hours 32.40)

22      This subject matter relates to services rendered by Ashurst in connection with the analysis of the Debtors' benefits plans and general labor matters. During the Compensation Period, Ashurst spent considerable time reviewing the Debtors' European pension plan arrangements, including, without limitation, analyzing the potential consequences for the Debtors should the UK Pension Protection Fund seek to intervene in the administration of the Debtors' UK pension plans.

### Telecommunications/Regulatory

(Fees: £870.00; Hours 1.50)

23.    This subject matter relates to the time spent by Ashurst analyzing telecommunication and regulatory issues in relation to the Debtors' operations in Europe.

### Asset/Stock Transactions/Business Liquidations

(Fees: £1,220.00; Hours 2.00)

24.    This subject matter relates to the time spent by Ashurst analyzing documentation relating to the potential sale of certain European assets owned by the Debtors.

### Intercompany Analysis

(Fees: £488.00; Hours 0.80)

25.    This subject matter relates to the time spent by Ashurst analyzing the Debtors' intercompany structure and debt arrangements.

### European Proceedings/Matters

(Fees: £30,696.50; Hours 83.70)

26.    This subject matter relates to the legal services rendered by Ashurst relating to the European Proceeding. During the Compensation Period, Ashurst commenced an in-depth analysis of the EMEA Debtors' insolvency proceedings in various jurisdictions in Europe and discussed the same with the UK administrator and its advisors and the Committee and the Committees' other advisors. Ashurst also reviewed and commented on documents relating to the proposed sale of certain of the Debtors' European assets.

### V.    ALLOWANCE OF COMPENSATION

27.    The professional services rendered by Ashurst required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

28.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application in the Administrative Fee Order.

29.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

30      The total time spent by Ashurst attorneys and paraprofessionals during the Compensation Period was 248.90. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

31      As shown by this application and supporting documents, Ashurst spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, Ashurst incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of £332.52 for which Ashurst respectfully requests reimbursement in full.

32      The disbursements and expenses have been incurred in accordance with Ashurst's normal practice of charging clients for expenses clearly related to and required by particular matters. Ashurst has endeavored to minimize these expenses to the fullest extent possible.

33      Ashurst's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Ashurst believes that it is fairest to charge each client only for the services

actually used in performing services for it. In these proceedings, Ashurst charges £0.10 per page for internal duplicating and does not charge for facsimile transmissions.

34.     No agreement or understanding exists between Ashurst and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

35.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

WHEREFORE, Ashurst respectfully requests that this Court:

(a)     approve the allowance of £97,645 50 for compensation for professional services rendered to the Committee during the period from January 31, 2009 through and including February 28, 2009;

(b)     approve the reimbursement of Ashurst's out-of-pocket expenses incurred in connection with the rendering of such services during the period from January 30, 2009 through and including February 28, 2009 in the amount of £332.52; and

(c)     authorize and direct the Debtors to immediately pay to Ashurst the amount of £78,116 40, which is equal to the sum of 80% of Ashurst's fees and 100% of Ashurst's expenses incurred during the Compensation Period

Dated:    London, United Kingdom
          March 20, 2009

ASHURST LLP

By:

Giles Boothman
A Member of the Firm

Broadwalk House
5 Appold Street, London, EC2A 2HA
United Kingdom
+44 (0)20 638 1111
European counsel to the Official Committee of
Unsecured Creditors

17

13