## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | <u>Objection Deadline</u>: April 9, 2009 at 4:00 pm (ET) |
|  | ) | <u>Hearing Date</u>: Scheduled only if necessary |
|  | ) |  |

**FIRST MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>January 26, 2009 THROUGH February 28, 2009</u>
(All Amounts in Canadian Dollars)**

This is a(n): <u>x</u> monthly _____ interim _____ final application.

Name of Applicant: <u>Fraser Milner Casgrain LLP</u>

Authorized to Provide
Professional Services to: <u>Official Committee of Unsecured Creditors</u>

Date of Retention: <u>March 4, 2009 (nunc pro tunc to January 26, 2009)</u>

Period for which Compensation
And Reimbursement is sought: <u>January 26, 2009 to February 28, 2009</u>

Amount of Compensation sought as
actual, reasonable and necessary: CDN <u>$470,768.03 (Fees $448,350.50 Plus Taxes $22,417.53)</u>

Amount of Expense Reimbursement
sought as actual, reasonable and
necessary CDN <u>$7,847.68 (Expenses $7,486.73 Plus Taxes $360.95)</u>

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's First Monthly Fee Application was 9.1 hours and the corresponding compensation is CDN. $2,337.50 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases include: Nortel Networks Inc.; Nortel Networks Capital Corporation; Altcon Websystems. Inc.; Alteon Websystems International, Inc.; Xros, Inc.; Sonoma Systems; Qtera Corporation; Coretek, Inc.; Nortel Networks Applications Management Solutions, Inc.; Nortel Networks Optical Components, Inc.; Nortel Networks HPOCS Inc.; Architel Systems (U S) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; and Nortel Networks Cable Solutions Inc.

**SUMMARY OF LAWYERS AND PARALEGALS
RENDERING SERVICES DURING THE PERIOD
JANUARY 26, 2009 THROUGH FEBRUARY 28, 2009
(All Amounts in Canadian Dollars)**

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|---|---|---|---|---|---|---|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 128.7 | $775.00 | $99,742.50 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 25.4 | $775.00 | $19,685.00 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 4.7 | $750.00 | $3,525.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 115.2 | $750.00 | $86,400.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 38.9 | $725.00 | $28,202.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 224.1 | $725.00 | $162,472.50 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 7.9 | $700.00 | $5,530.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 10.3 | $675.00 | $6,952.50 |
| Matthews, C.J. | Partner | Litigation | Ontario - 1986 | 7.9 | $650.00 | $5,135.00 |
| Turney, C. | Partner | Corporate/M&A/Finance | Ontario - 1993 | 5.5 | $625.00 | $3,437.50 |
| Dietrich, J.O. | Associate | Financial Restructuring | Ontario - 2004 | 3.1 | $480.00 | $1,488.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 15.4 | $350.00 | $5,390.00 |
| Horrox, N.S. | Associate | Employment/Labour | Ontario - 2006 | 5.2 | $350.00 | $1,820.00 |
| North, A.R. | Student | Students | | 30.8 | $200.00 | $6,160.00 |
| O'Rahilly, Tracey | Paralegal | Business Law | | 89.5 | $175.00 | $15,662.50 |
| | | | | | | CDN $451,603.00 |
| | Less Non-Working Travel Time Discount (50% of $6,525.00) | | | | | ($3,252.50) |
| TOTAL | | | | 712.6 | | CDN $448,350.50 |

2

**COMPENSATION BY PROJECT CATEGORY**
**JANUARY 26, 2009 – FEBRUARY 28, 2009**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 40.40 | $17,172.50 |
| FMC Fee Application/Monthly Billing Reports | 9.10 | $2,337.50 |
| Analysis of Other Professionals Fee Applications/Rep. | 1.00 | $750.00 |
| Retention of Professionals | 23.90 | $17,397.50 |
| Creditors Committee Meetings | 68.40 | $47,042.00 |
| Court Hearings | 27.50 | $20,310.00 |
| Financial Reports and Analysis | 2.90 | $1,552.50 |
| DIP, Cash Collateral Usage and Exit Financing | 16.70 | $10,833.50 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 178.20 | $128,280.00 |
| Lift Stay Litigation | 8.50 | $5,570.00 |
| Tax-Issues | 8.30 | $5,850.00 |
| Labor Issues/Employee Benefits | 61.30 | $37,780.00 |
| Real Estate Issues/Leases | 50.10 | $36,507.50 |
| Asset/Stock Transaction/Business Liquidations | 45.40 | $31,785.00 |
| Travel | 9.00 | $6,525.00 |
| Intercompany Analysis | 13.80 | $9,850.00 |
| Canadian Proceedings/Matters | 127.80 | $66,467.50 |
| U.S. Proceedings/Matters | 20.30 | $5,592.50 |
| **Total** | **712.60** | **Cdn $451,603.00** |

3

6627281_2.DOC

## DISBURSEMENT SUMMARY
### JANUARY 26, 2009 – FEBRUARY 28, 2009
### (All Amounts in Canadian Dollars)

Non-Taxable Disbursements

| | | |
|---|---|---|
| Filing Fee* | $204.00 | |
| Search(es)* | 63.73 | |
| Total Non-Taxable Disbursements | | $267.73 |

Taxable Disbursements

| | | |
|---|---|---|
| Accommodations | $864.36 | |
| Airfare/Travel | 903.94 | |
| Courier & Delivery | 19.92 | |
| Incorporation Searches | 5.00 | |
| Library Computer Research | 726.47 | |
| Long Distance Telephone Calls | 219.40 | |
| Meals & Beverages | 384.43 | |
| Parking | 77.43 | |
| Photocopy Charges | 3,718.30 | |
| Process Server Fees | 80.00 | |
| Searches | 31.01 | |
| Taxi Charges | 188.74 | |
| Total Taxable Disbursements | $7,219.00 | |
| Total GST | 360.95 | |
| Total Taxable Disbursements including Taxes | | CDN $7,579.95 |

4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                                        :
In re                                                   :   Chapter 11
                                                        :   Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                       :   Jointly Administered
                                                        :
                                    Debtors             :   Objection Deadline: April 9, 2009 at 4:00 pm (ET)
                                                        :   Hearing Date: Scheduled only if necessary
------------------------------------------------------------X

**FIRST MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP,
CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF
COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES
FOR SERVICES RENDERED DURING THE PERIOD FROM
JANUARY 26, 2009 THROUGH FEBRUARY 28, 2009**

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its first monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $470,768.03 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc. (9769); Alteon Websystems International, Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$448,350.50 for fees and CDN. $22,417.53 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $7,847.68 (CDN. $7,486.73 for expenses and CDN. $360.95 for applicable Canadian taxes) or the period from January 26, 2009 through February 28, 2009 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court.

     5.    On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC.

     6.    On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

     7.    On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

### III.    RELIEF REQUESTED

     8.    By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $470,768.03 (CDN. $448,350.50 for fees and CDN. $22,417.53 for applicable Canadian

taxes) representing 592.3 hours in professional services and 120.3 hours in paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the amount of CDN. $7,847.68 (including applicable Canadian taxes).

9.      Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $376,614.42 including applicable Canadian taxes) and 100% of its expenses (CDN. $7,847.68 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

10.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

11.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

12.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

4

13.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

14.     In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

15.     FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

16.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

5

## Case Administration

(Fees: CDN. $17,172.50 plus CDN. $858.63 taxes; Hours 40.4)

17.    This subject matter relates to services rendered to the Committee during the Compensation Period relating to the Committee's organizational and administrative needs. Following the Committee's formation, FMC was involved in reviewing and commenting on appropriate bylaws to govern the Committee's conduct throughout these cases, including negotiating the terms of confidentiality arrangements.

18.    During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding and the Recognition Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee.

19.    FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $66,467.50 plus CDN. $3,323.38 taxes; Hours 127.8)

20.    During the Compensation Period, FMC reviewed and analyzed the initial application record, including the initial order dated January 14, 2009 (the "Initial Order") granted by the Canadian Court in the Canadian Proceedings. FMC also reviewed and analyzed successive motions filed by the Canadian Debtors in the Canadian Proceeding. In connection with such analyses, FMC conducted diligence on the subject matter of each application and motion in order to determine the effect that the relief requested by the Canadian Debtors in

6

Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtor's professionals to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, insured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular detailed memoranda and, as appropriate, conference calls with the Committee.

21.    During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed three reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to proprietary relief requested by the Canadian Debtors. FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

22.    During the Compensation Period, FMC also reviewed and analyzed the recognition proceeding and recognition order (collectively, the "Recognition Proceeding") sought by the Debtors from the Canadian Court and with the assistance of Akin Gump, apprised the Committee of all material developments in the Recognition Proceeding in Canada.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $2,337.50 plus CDN. $116.88 taxes; Hours 9.10)

23.    This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order.

7

### Retention of Professionals

(Fees: CDN. $17,397.50 plus CDN. $869.88 taxes; Hours 23.9)

24.    This subject matter relates to services performed by FMC lawyers and paraprofessionals in connection with FMC's preparation of its application to be retained as the Committee's Canadian counsel.

### Committee Meetings

(Fees: CDN. $47,042.00 plus CDN. $2,352.10 taxes; Hours 68.40)

25.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held no less than two in-person and five telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump, other Committee professionals and with certain Committee members.

26.    Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding. Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to each pending matter.

27.    Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

8

## Court Hearings

(Fees: CDN $20,310.00 plus CDN. $1,015.50 taxes; Hours 27.5)

28.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at two hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Intercompany Loan and Initial Order

(Fees: CDN. $128,280.00 plus CDN. $6,414.00 taxes; Hours 178.20)

29.     A significant portion of FMC's time during the Compensation Period was spent reviewing, analyzing, and negotiating, on behalf of the Committee, certain amendments to the terms of a proposed intercompany loan between Debtor Nortel Networks Inc. ("NNI") as lender and the Canadian Debtor NNL as borrower and the related interim and final orders approving such loan, including amendments to the Initial Order.

30.     On January 14, 2009, the Debtors filed a motion (the "Intercompany Loan Motion") seeking, among other things, authority to enter into a $200 million revolving loan agreement with NNI as lender, Canadian Debtor NNL, as borrower, and Canadian Debtor Nortel Networks Technology Corporation ("NNTC") as guarantor (the "Intercompany Loan"). The Intercompany Loan is purported to be secured only by a charge on the fee simple interest of

9

NNTC and leasehold interest of NNL in a research and development facility located at 3100
Carling Avenue, Ottawa, Canada (the "Carling Facility"), which charge ranks second in priority
pursuant to the Initial Order entered in the Canadian Proceeding. To the extent the proceeds
from the Carling Facility are insufficient to satisfy NNL's obligations under the Intercompany
Loan, the deficiency will be deemed an intercompany claim entitled to the security of an
intercompany charge, which charge ranks fifth in priority pursuant to the Initial Order entered in
the Canadian Proceeding. On January 15, 2009, the Court entered an interim order approving the
Intercompany Loan Motion (the "Interim Intercompany Loan Order"), and authorizing NNI to
lend $75 million to NNL under the Intercompany Loan. The Canadian Court granted
complimentary relief to the Canadian Debtors in the Initial Order.

      31.    During the Compensation Period, FMC spent considerable time reviewing and
analyzing the Intercompany Loan and the Initial Order, in particular, the adequacy of the
collateral package and the relative priority of the charges under the Initial Order purporting to
secure the Intercompany Loan. In connection therewith, FMC, in concert with Akin Gump and
the Committee's financial professionals, carefully analyzed the terms of the Initial Order in the
Canadian Proceeding, to ensure that the rights and interests of unsecured creditors were not
adversely impacted. As part of its analysis of the Intercompany Loan, FMC worked with Akin
Gump to prepare detailed memoranda for the Committee summarizing the material terms of the
Intercompany Loan, and the Initial Order, and held numerous conference calls with the full
Committee to discuss the propriety of the terms upon which the Intercompany Loan was
proposed and appropriate strategic options.

      32.    Given that certain material terms of the Intercompany Loan and the Initial Order
are prejudicial to the rights of unsecured creditors, FMC, along with Akin Gump and the

10

Committee's other professionals engaged in extensive negotiations during the Compensation
Period with the Canadian Debtors and the Monitor in an effort to modify the Intercompany Loan
and the Initial Order in a manner acceptable to all constituents including preparation of
amendments to the Initial Order and the loan agreement evidencing the Intercompany Loan.
These negotiations continue to date. As the Court is aware, the final hearing regarding authority
to lend the remaining $125 million of the Intercompany Loan has been scheduled for April 9,
2009.

## Asset Sales

(Fees: CDN $31,785.00 plus CDN. $1,589.25; Hours 45.4)

33.     On February 20, 2009, the Debtors filed a motion (the "Velocity Sale Motion")
with this Court to approve an asset purchase agreement (the "APA"), break-up fees, and sale and
bidding procedures with respect to certain assets of the Debtors' Velocity business (the "Velocity
Sale Procedures"). On February 27, 2009 the Canadian Debtors, brought a motion before the
Canadian Court to approve the Velocity Sale Procedures. FMC thoroughly reviewed the
Velocity Sale Procedures and the APA and provided comments on the documentation from a
Canadian perspective.

## Tax Issues

(Fees: CDN. $5,850.00 plus CDN. $292.50 taxes; Hours 8.3)

34.     This subject matter relates to legal services rendered by FMC relating to tax
matters affecting the Debtors and the Canadian Debtors. During the Compensation Period, FMC
assisted Akin Gump in commencing an analysis of various tax issues affecting the Debtors and
the Canadian Debtors, including the Canadian Debtors' transfer pricing system, and discussed
numerous issues related thereto with the Committee's other professionals and the Canadian

11

Debtors' advisors, as well as attended an in-person meeting with Nortel's senior management team to discuss same.

### Labor and Employee Benefits Issues

(Fees: CDN. $37,780.00 plus CDN. $1,889.00; Hours 61.3)

35.     This subject matter relates to services rendered by FMC in connection with the analysis of the Canadian Debtors' benefits plans and general labor matters.  During the Compensation Period, FMC, together with Akin Gump and the Committee's other professionals, spent considerable time reviewing and analyzing the Canadian Debtors' proposed Key Employee Incentive Plan (the "KEIP") and the proposed Key Employee Retention Plan (the "KERP") and the Nortel Debtors' proposed 2009 Annual Incentive Plan (the "AIP" and together with the KEIP and the KERP, the "Plans").  A further hearing on the final component of the Plans addressing executives is scheduled for March 20, 2009.

36.     As a multinational corporation, the Debtors have significant pension obligations in numerous jurisdictions.  As such, during the Compensation Period, FMC lawyers, together with Akin Gump attorneys and the Committee's European counsel, spent significant time analyzing the pension obligations of the Canadian Debtors and their affiliates, as well as the relative priorities and treatment of those liabilities in the Insolvency Proceedings.

### V.     ALLOWANCE OF COMPENSATION

37.     The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results

12

obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

38.     The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

39.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

13

> (F) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. §330(a)(3).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

40.    The total time spent by FMC lawyers and paraprofessionals during the Compensation Period was 712.6 hours.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

41.    As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time.  Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.  In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $7,579.95 (CDN. $7,486.73 for expenses and CDN. $360.95 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

42.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters.  FMC has endeavored to minimize these expenses to the fullest extent possible.

43.    FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ.  FMC believes that it is fairest to charge each client only for the services actually used in performing services for it.  In these proceedings, FMC charges $.10 per page for internal duplicating.

14

44.    No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

45.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

15

**WHEREFORE,** FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $470,768.03 (CDN. $448,350.50 for fees and CDN. $22,417.53 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from January 26, 2009 through and including February 28, 2009;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period January 26, 2009 through and including February 28, 2009 in the amount of CDN. $7,847.68 (CDN. $7,486.73 for expenses and CDN. $360.95 for applicable Canadian taxes); and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $384,462.10, which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          March 20, 2009

FRASER MILNER CASGRAIN LLP

By: _____
    Michael J. Wunder *(pro hac vice)*
    A Member of the Firm

Suite 3900
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2
(416) 863-4511
Canadian Counsel to the Official Committee of
Unsecured Creditors

16