## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
:
*In re*                                            :    Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                  :    Case No. 09-10138 (KG)
:
             Debtors.    :    Jointly Administered
:
:    **Hearing date: April 9, 2009 at 9:00 a.m. (E.T.)**
:    **Objections due: April 2, 2009 at 4:00 p.m. (E.T.)**
-------------------------------------------------------X

## DEBTORS' MOTION AUTHORIZING INSURERS TO PAY CERTAIN COSTS AND FEES AND AMENDING THE AUTOMATIC STAY AS NECESSARY TO ALLOW SUCH PAYMENTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing Chubb Insurance Company of Canada ("Chubb") to pay certain litigation defense costs and fees covered under Chubb's Executive Protection Policy (No. 8091-66-46I) ("the Chubb Policy"), (ii) amending the automatic stay as necessary to allow

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

such payments, and (iii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 362 of the Bankruptcy Code, Rule 4001(a)(3) of the Bankruptcy Rules, and Local Rule 4001-1.

## Background

### A.      Introduction

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  On January 14, 2009, the Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  In addition, at 8 p.m. on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC (collectively, the "EMEA Debtors").[3]

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7.      On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142).  No trustee or examiner has been appointed in the Debtors' cases.

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**B.**    **Debtors' Corporate Structure and Business**

8.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

**Relief Requested**

9.    By this Motion, the Debtors seek entry of an order pursuant to sections 105(a) and 362 of the Bankruptcy Code (i) authorizing the payment of certain litigation defense costs and fees covered under the Chubb Policy, including but not limited to attorneys' fees, document and data storage fees, and settlement plan administrative fees, incurred both pre- and post-petition, (ii) amending the automatic stay as necessary to allow such payments, and (iii) granting them such other and further relief as the Court deems just and proper.  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

10.    To be clear, the Debtors are not requesting a determination of Chubb's obligation to pay any particular expense or claim under the Chubb Policy.  Rather, the Debtors seek only the entry of an order authorizing Chubb to pay certain litigation defense costs and fees to the extent they are covered under the Chubb Policy and modifying the automatic stay, to the extent necessary, to allow Chubb to fulfill its obligations, whatever they may be, to pay such litigation defense costs and fees under the terms of the Chubb Policy, including amounts incurred both pre- and post-petition.

---

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

**Facts Relevant to this Motion**

11.    In 1999, the Debtors purchased the Chubb Policy. The Chubb Policy is limited to claims arising from any Nortel employee benefits program, covering both Nortel (so-called "entity coverage") and its directors and officers in accordance with the terms of the policy.[5] (Such covered entities and individuals are referred to herein as the "Insureds.")  Subject to various terms, conditions, limitations and exclusions, the Chubb Policy provides coverage for, among other things, litigation defense costs and fees arising from ERISA litigation in the United States. The Chubb Policy provides a primary layer of coverage in the amount of $30 million. The policy period of the Chubb Policy commenced on March 3, 1999 and extended through March 2, 2003. Because the Chubb Policy is a claims-made policy, it only covers claims made or deemed to be made during the relevant policy period.

12.    NNI is a defendant in a class action matter entitled *In Re Nortel Networks Corporation ERISA Litigation*, No. 3:03-MDL-1537, pending in the Middle District of Tennessee (the "ERISA Class Action"). NNI is represented by Jackson Lewis LLP in that matter. In addition, Jackson Lewis LLP also represents NNL, NNC and certain former and current Nortel directors and officers also named as defendants in the ERISA Class Action.[6] Certain other former and/or current Nortel directors and officers are named as defendants in the ERISA Class Action and are represented by other counsel or appear *pro se*.

---

[5]    The description of the Chubb Policy contained herein is provided for background purposes and is qualified in all instances by the terms of the Chubb Policy.

[6]    The Debtors filed an application with this Court requesting approval of the Debtors' retention of Jackson Lewis as defense counsel in the ERISA Class Action [D.I. 296], which this Court granted with an order dated March 4, 2009 [D.I. 427]. In connection with the relief sought therein, the Debtors requested that they be authorized to compensate Jackson Lewis for professional services rendered at its normal and customary hourly rates in effect from time to time as more fully set forth in the Application of the Debtors Pursuant to 11 U.S.C. § 327(e) to Retain and Employ Jackson Lewis LLP as Counsel for the Debtors *Nunc Pro Tunc* to January 14, 2009, plus reimbursement of actual, necessary expenses incurred by Jackson Lewis on the Debtors' behalf.

13.     The plaintiffs in the ERISA Class Action allege that the defendants in the action (including NNI officers and directors) breached their duties under ERISA including, but not limited to, (1) offering company stock as an investment option in the employee benefit plan at issue when it was imprudent to do so; (2) failing to disclose the risks associated with investment in company stock; (3) failing to disclose or misrepresenting material information about the company; and (4) failing to monitor the conduct of other fiduciaries.  The litigation is currently stayed under section 362 of the Bankruptcy Code and under the Amended and Restated Initial Order entered by the Canadian Court on January 14, 2009, as extended by the Canadian Court on February 10, 2009, and recognized by this court in the Canadian Debtors' chapter 15 proceedings.[7]  To the best of the Debtors' knowledge, no other claims besides the ERISA Class Action are currently pending that are covered by the Chubb Policy.  In addition, the Debtors, in consultation with their advisors, have concluded that it is unlikely that any claims besides those arising out of the ERISA Class Action would be claimed against the Chubb Policy in the future because the time period for doing so has long-since expired.

14.     The parties to the ERISA Class Action, including Nortel and the defendant officers and directors, agreed in December 2008 to stay the ERISA Class Action in order to participate in a second round of settlement mediation proceedings.  The mediation was to take place in February 2009, but was canceled due to these chapter 11 proceedings and the Canadian Proceedings.  Before the ERISA Class Action was stayed for mediation in December 2008, parties to the litigation were engaged in active discovery.

15.     Prior to the Petition Date, Nortel and Chubb agreed to split Nortel's litigation defense costs and fees relating to the ERISA Class Action on an equal basis.    Chubb has

---

[7]     The ERISA Class Action plaintiffs have asserted that the litigation is not stayed as against individual director and officer defendants.  The Debtors through this Motion are not seeking either a ruling on the scope of the stay or the lifting of the automatic stay with respect to the ERISA Class Action.

informed Nortel that it also paid certain defense costs and fees incurred by other defendants in the ERISA Class Action.[8]   On January 29, 2009, Chubb notified Nortel, and the Debtors understand also informed the other defendants, that in light of these chapter 11 proceedings and the Canadian Proceedings, Chubb would not continue to pay any of Nortel or other Insureds' defense costs and fees unless and until an order was obtained from the appropriate court confirming the payment of such defense costs and fees would not be a violation of the automatic stay.

16.    In connection with the ERISA Class Action, certain defense costs and fees have been or will be incurred on an ongoing basis, including but not limited to attorneys' fees, document and data storage, and settlement plan administration fees, which are similar to the types of costs and fees paid out of the Chubb Policy prepetition as detailed above and which constitute defense costs and fees that may be covered by the Chubb Policy.

17.    Notwithstanding the stay of the ERISA Class Action, certain such defense costs and fees, such as document and data storage fees, are ongoing.  Additionally, the parties to the ERISA Class Action may engage in discussions regarding the potential settlement of the action, which may result in certain additional costs and fees, such as attorneys' fees and settlement plan administration fees, being incurred.  Chubb has expressed its willingness to continue to reimburse such defense costs and fees to the extent they are covered under the Chubb Policy, including amounts incurred both pre- and post-petition, but has requested that an order of this Court be obtained confirming Chubb's authority to make payments under the Chubb Policy.  By making this Motion, neither the Debtors nor Chubb are waiving any of their respective rights under the Chubb Policy.

---

[8]    The Debtors reserve all rights with respect to the scope of individuals who constitute Insureds and any payments that have been or may be made under the Chubb Policy.

**Basis for Relief**

18.     Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable

powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This

is consistent with the broad equitable authority of the bankruptcy courts.  See, e.g., United States

v. Energy Res. Co., 495 U.S. 545, 549 (1990).

19.     The automatic stay provision of section 362(a) constitutes fundamental debtor

protections to allow the Debtors to make a smooth and orderly transition into chapter 11.  See,

e.g., Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("The

automatic stay . . . gives a bankrupt a breathing spell from creditors by stopping all collection

efforts, all harassment, and all foreclosure actions . . . [It] permits a bankrupt to attempt a

repayment or reorganization plan." (citations omitted).  Section 362(d) of the Bankruptcy Code

provides that the court shall grant relief from the automatic stay "for cause" or if "such property

is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1)-(2).

20.     Generally, courts have held that a debtor's liability insurance policies are the

property of the bankruptcy estate.  In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399

(5th Cir. 1987).  Courts are split as to whether insurance proceeds are property of the estate, but

this jurisdiction has held that when a

> debtor's liability insurance policy provides direct coverage to the debtor the
> proceeds are property of the estate, because the proceeds are payable to the
> debtor.  Further when the liability insurance policy only provides direct coverage
> to the directors and officers the proceeds are not property of the estate.  However,
> when there is coverage for the directors and officers and the debtor, the proceeds
> will be property of the estate if depletion of the proceeds would have an adverse
> effect on the estate to the extent the policy actually protects the estate's other
> assets from diminution.

In re Allied Digital Technologies Corp., Case Nos. 00-4020-00-4024 (CGC) (Bankr. D. Del.

March 16, 2004); see also In re World Health Alternatives, Inc., Case No. 06-10166 (PJW)

(Bankr. D. Del. June 8, 2007). Even when the proceeds are considered property of the estate,

courts have lifted the automatic stay of section 362 to allow payments from insurance policies.

See In re CyberMedica, Inc., No. 01-40659 (JBR) (Bankr. D. Mass. July 2, 2002).[9]

      21.    Chubb has requested that an order be obtained confirming that the automatic stay

is lifted, to the extent necessary, to allow Chubb to make payments to Insureds under the Chubb

Policy. Accordingly, to the extent that the insurance proceeds constitute estate property, the

Debtors seek approval of the lifting of the stay, to the extent necessary to make the payments to

Insureds described herein, as it is not expected such payments will adversely affect their estates

or that the funds to be spent on such costs and fees are necessary for the Debtors' reorganization.

First, the Debtors have determined with reasonable certainty that it is unlikely any additional

claims would be filed against the Chubb Policy. Second, similar costs were covered by Chubb

prepetition. Third, the litigation defense costs and fees paid under the Chubb Policy are

necessary and beneficial to the Debtors because they enable NNI's ongoing defense against the

ERISA Class Action. NNI would be irreparably harmed if unable to fund its continued defense

and the continued defense of certain of its officers and directors, including one current officer.

Fourth, the costs are expected to be relatively moderate and the Debtors believe such payments

will leave sufficient proceeds to cover any future costs, fees, judgments or settlements against the

Chubb Policy arising out of the ERISA Class Action. Fifth, continued defense, with the goal of

an economical resolution to the benefit of NNI specifically and Nortel generally, will benefit the

Debtors' estates and their creditors by reducing the pool of unsecured claims against the Debtors'

---

[9]     The Debtors do not request that this Court make a definitive determination as to whether the proceeds of the Chubb Policy are property of the Debtors' estates or not. The rights of all parties in interest to assert that the proceeds of the Chubb Policy are, or are not, property of the Debtors' estates are reserved.

estates and increasing recovery for other unsecured creditors, particularly as Plaintiffs have alleged damages in the billions of dollars.  As such, the Debtors request that the stay is lifted, to the extent necessary, to authorize Chubb to make such payments.

22.    The Debtors consulted the Committee with regard to this Motion prior to its filing.

### Notice

23.    Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to (i) Chubb Insurance Company of Canada, (ii) the Office of the United States Trustee for the District of Delaware; (iii) the Committee; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

24.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: March 24, 2009
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*