## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                     :

*In re*                                 :      Chapter 11

Nortel Networks Inc., *et al.*,[1]        :      Case No. 09-10138 (KG)

                 Debtors.       :      Jointly Administered

                                        :      **Hearing date: April 9, 2009 at 9:00 a.m. (ET)**
                                        :      **Objections due:  April 2, 2009 at 4:00 p.m. (ET)**

------------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER
### ESTABLISHING AND IMPLEMENTING UNIFORM
### PROCEDURES REGARDING SECTION 503(b)(9) CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, establishing and implementing uniform procedures regarding claims asserted pursuant to section 503(b)(9) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"); and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 503 and

507(a) of chapter 11 of the Bankruptcy Code and Rule 3003 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings").  The Canadian Debtors continue to manage their properties and operate their

businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as foreign

representative for the Canadian Debtors, has filed petitions in this Court for recognition of the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11

proceedings as a foreign proceeding under section 18.6 of the CCAA. In addition, at 8 p.m. on

January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European

affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of

individuals from Ernst & Young LLC (collectively, the "Administrator").

6.       On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

provided for the joint administration of these cases and for consolidation for procedural purposes

only.

7.       On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee")

appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section

1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding

claims against certain of the Debtors and certain of the Canadian Debtors has also been

organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors'

cases.

8.       A general claims bar date has not been established in the Debtors' cases. In

accordance with the Order Pursuant to 11 U.S.C. § 521 Extending the Debtors' Deadline to File

Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I. 440], the Debtors

currently have through April 20, 2009 to file with the Court the Statements of Financial Affairs

---

[3]       The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

for all of the Debtors and Schedules of Assets and Liabilities (the "Schedules") for Xros, Inc.,

Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Application Management

Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc.,

Architel Systems (U.S.) Corporation, Northern Telecom International Inc., Nortel Networks

Cable Solutions Inc. and Alteon WebSystems International, Inc.; and through May 29, 2009, to

file with the Court Schedules for Nortel Networks, Inc., Nortel Networks Capital Corporation,

Alteon WebSystems, Inc. and Nortel Networks International Inc.

**B.      Debtors' Corporate Structure and Business**

9.      A description of the Debtors' corporate structure and business and the events

leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of

First Day Motions and Applications (the "First Day Declaration").[4]

**Relief Requested**

10.     By this Motion, the Debtors seek entry of an order establishing certain procedures

for the filing and resolution of claims asserted pursuant to section 503(b)(9) of the Bankruptcy

Code.

**Basis for Relief**

11.     On April 20, 2005, the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005 (the "BAPCPA") was enacted into law.  As part of the BAPCPA, Congress enacted

section 503(b)(9) of the Bankruptcy Code, which provides that sellers of goods may request

allowance of an administrative expense claim for the value of goods received by a debtor in the

---

[4]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day
Declaration.

ordinary course of business within 20 days of the commencement of a case. <u>See</u> 11 U.S.C. §

503(b)(9).

13. The Debtors received various goods in the ordinary course of business prior to the

Petition Date. Thus, vendors and suppliers that delivered goods to the Debtors during the 20

days prior to the Petition Date (the "<u>Section 503(b)(9) Claimants</u>") have sought and the Debtors

expect they will continue to seek allowance of claims under section 503(b)(9) (the "<u>Section</u>

<u>503(b)(9) Claims</u>").

13. As there is presently uncertainty as to the procedures section 503(b)(9) claimants

need to follow to assert such claims, and to avoid piecemeal litigation, the Debtors seek to

establish exclusive procedures for the assertion and allowance of Section 503(b)(9) Claims (the

"<u>Section 503(b)(9) Claims Procedures</u>").

14. To maintain uniformity and consistency and avoid a race to be paid amongst

Section 503(b)(9) Claimants, the Debtors seek entry of an order establishing procedures for the

filing of Section 503(b)(9) Claims as follows:

> a. All Section 503(b)(9) Claims shall be filed by the bar date, which
> will be set for prepetition claims in these cases by a separate order of the
> Court in accordance with Rule 2002 and Rule 3003 of the Bankruptcy
> Rules, and Rule 2002-1(e) of the Local Rules of Bankruptcy Practice and
> Procedure of the United States Bankruptcy Court for the District of
> Delaware (the "<u>Local Rules</u>") (the "<u>Bar Date</u>");[5]

> b. Section 503(b)(9) Claimants may utilize the section 503(b)(9)
> administrative expense proof of claim form, attached hereto as <u>Exhibit B</u>
> (the "<u>503(b)(9) Claim Form</u>"),[6] to indicate that a section 503(b)(9) priority
> is being asserted.[7] As set forth in the 503(b)(9) Claim Form, each

---

[5]     The Debtors reserve the right to return to the Court to request that the Court set an earlier bar date for the assertion of Section 503(b)(9) Claims.

[6]     A copy of the 503(b)(9) Claim Form will be made available on the website of the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC at http://chapter11.epiqsystems.com/nortel.

[7]     As part of their motion to establish a bar date, the Debtors intend to provide that the notice to be sent to creditors will include not only the general proof of claim form but also the 503(b)(9) Claim Form.

claimant asserting a Section 503(b)(9) Claim against the Debtors must include, with specificity: (i) the amount of the Section 503(b)(9) Claim; (ii) the particular Debtor against which the Section 503(b)(9) Claim is asserted; (iii) the date of delivery of the goods the Section 503(b)(9) Claimant contends the Debtor received within twenty (20) days before the Petition Date; (iv) the value of the goods the Section 503(b)(9) Claimant contends the Debtor received within twenty (20) days before the Petition Date; (v) documentation, including invoices, receipts, bills of lading and the like, identifying the particular goods for which the claim is being asserted; (vi) an identification of which goods (if any) were subject to a demand for reclamation asserted under section 546 of the Bankruptcy Code; and (vii) a certification that the goods with respect to which the Section 503(b)(9) Claim is being filed were sold in the ordinary course of the Debtor's business;

c.    All of this required information should be sent to Epiq Bankruptcy Solutions, LLC, as follows:

If by first-class mail:

Nortel Networks Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

If by hand delivery or overnight mail:

Nortel Networks Inc. Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

With a copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Attn: James Bromley and Lisa Schweitzer

d.    Section 503(b)(9) Claimants shall not file a motion to compel allowance or payment of administrative expenses for their Section 503(b)(9) Claims. All timely filed claims asserting a priority under section 503(b)(9) shall be deemed allowed unless objected to by the Debtors or any other party-in-interest in accordance with further procedures for claim allowance to be established by the Court. Should such an objection be filed, such claim shall be adjudicated and allowed in accordance with the further procedures for claim allowance established by

6

Case 09-10138-MFW    Doc 527    Filed 03/24/09    Page 7 of 13

the Court. To the extent any Section 503(b)(9) Claims are allowed pursuant to these Section 503(b)(9) Procedures and are entitled to administrative priority pursuant to the Bankruptcy Code, the claim shall be paid pursuant to and set forth in such plan of reorganization as shall be confirmed by the Court;

> e.      Nothing in these Section 503(b)(9) Claims Procedures shall preclude any Section 503(b)(9) Claimant from filing a motion seeking, after notice and a hearing, the earlier payment of claims under section 503(b)(9) than as provided for herein if, and only if, such motion is predicated on events that have taken place in these cases subsequent to the entry of this Order, and the claimant filing such motion asserts that in light of such subsequent events the earlier payment of section 503(b)(9) claims is necessary to ensure fair and equitable treatment of such claimants or is otherwise appropriate under the circumstances; and

> f.      Nothing in these Section 503(b)(9) Claims Procedures shall affect the rights and remedies and/or defenses of the Debtors, the Creditors' Committee, claimants or any other party-in-interest with regard to avoidance of any claim or obligation.

15.      With respect to service and filing of the Section 503(b)(9) Claims, the Debtors propose that holders of Section 503(b)(9) Claims be permitted to submit their Section 503(b)(9) Claims in person or by courier service, hand delivery, or mail. As is customary in this jurisdiction, facsimile, email or electronic submissions will not be accepted, and a Section 503(b)(9) Claim will be deemed filed only when actually delivered to and received by Epiq Bankruptcy Solutions, LLC, with a copy to Cleary Gottlieb Steen & Hamilton LLP at the addresses listed in paragraph 14.c. above, in accordance with the procedures set forth in the Motion.

### Applicable Authority

16.      The proposed Section 503(b)(9) Claims Procedures will provide clear guidance to all parties as to how Section 503(b)(9) Claims shall be filed in these cases and will streamline the process for allowance of such claims for both Debtors and claimants alike. Requiring Section 503(b)(9) Claimants to participate in the larger claims adjudication process will provide the

7

Debtors the opportunity to address the allowance of claims in an orderly and efficient way, will not impair the substantive rights of any party and will ensure that similarly situated creditors receive equal treatment.

**A.     Justification for Including 503(b)(9) Claims in the Bar Date Process**

17.     Rule 3003 sets out the general rules for filing proofs of claim in chapter 11 cases: "Any creditor or equity security holder whose claim or interest is not scheduled or scheduled as disputed, contingent, or unliquidated shall file a proof of claim or interest within the time prescribed by subdivision (c)(3) of this rule; any creditor who fails to do so shall not be treated as a creditor with respect to such claim for the purposes of voting and distribution." See Fed. R. Bankr. P. 3003.  Thus, the proper order of events for section 503(b)(9) claims is for the Debtors to file their schedules, the Court to establish a bar date for the filing of proofs of claims, and for the claimants to file their claims, if necessary.  However, the Debtors are proposing these procedures now in the event creditors wish to file Section 503(b)(9) Claims before a bar date is established.

18.     A proof of claim under Rule 3001 must "conform substantially to the appropriate Official Form."  Official Form 10 provides:  "This form should not be used to make a claim for an administrative expense arising after the commencement of the case."  However, the form can be used to file a claim for an administrative expense arising before the commencement of a case, and that is precisely the nature of section 503(b)(9) claims.  The 503(b)(9) Claim Form is modeled on Official Form 10, modified as appropriate to address information specific to section 503(b)(9) claims, and is being made available at this time in order to allow section 503(b)(9) claimants to commence filing proofs of claims without having to wait for a bar date to be set.

19.     If claimants do file proofs of section 503(b)(9) claims, such claims shall be deemed allowed under section 502 unless objected to by the Debtors or other parties in interest, and if objections are filed, the matter will then be set for hearing in accordance with procedures to be set by the Court.  The Debtors are not seeking to establish such claims adjudication procedures now, however, as those procedures are best established when all claims have been filed.

20.     The usual process of deferring claims litigation to later in a chapter 11 case avoids burdening debtors with claims litigation during the early stages of a case, when there are a host of pressing financial, operational and restructuring issues to address.  Moreover, by employing the usual process in these cases the Debtors will be able to structure the claims review process to maximize efficiency.  For example, the Debtors will be able to analyze all claims of various categories in one coordinated process, and will be able to structure contested litigation so that multiple claims can be addressed at the same hearing, such that witnesses will not need to come to Court time and time again.

21.     Section 503(b)(9) was added to the Bankruptcy Code as part of the BAPCPA, and, thus, the process of establishing procedures for such claims is relatively new.  Nevertheless, the process of establishing uniform procedures regarding section 503(b)(9) claims and tying such claims to the proof of claims and bar date process is consistent with the process established in other recent large cases.  See, e.g., In re Quebecor World (USA) Inc., 08-10152 (JMP) (Bankr. S.D.N.Y. Apr. 21, 2008); see also In re Aegis Mortgage Corp., No. 07-11119 (BLS) (Bankr. D. Del. Nov. 26, 2007); see also In re Dana Corp., No. 06-10354 (BRL) (Bankr. S.D.N.Y. July 19, 2006).

**B.     Section 503(b)(9) Claims Are Typically Paid as Part of a Reorganization Plan**

22.     Section 503(b)(9) of the Bankruptcy Code makes no mention of the timing by which any claim allowed thereunder must be paid.  There is nothing in the text of section 503(b)(9) that suggests that a claimant has a right to immediate payment.  See In re Bookbinders' Restaurant, Inc., No. 06-12302, 2006 WL 3858020, at *4 (Bankr. E.D. Pa. Dec. 28, 2006) (finding that "[t]he text of § 503(b)(9) neither states nor even implies that allowance of the expense encompasses an unqualified right to immediate payment . . . [n]or does the text of the provision suggest that an administrative expense allowed under § 503(b)(9) is to be treated in a more favorable manner than any other allowed § 503(b) administrative expense").

23.     A number of courts have therefore held that section 503(b)(9) claims need not be paid until the effective date of a confirmed plan of reorganization.  For example, in In re Bookbinders' Restaurant, Inc., the court rejected the argument that a § 503(b)(9) administrative expense is entitled to immediate payment as a matter of law.  It held that "[s]ection 503(b)(9) does nothing more than define a type of liability, previously treated as a prepetition claim, which is now accorded administrative expense status."  See 2006 WL 3858020, at *4.

24.     Similarly, in In re Global Home Products, LLC, this Court denied a motion for immediate payment of a section 503(b)(9) claim.  In so doing, this Court noted, "Section 503 does not specify a time for payment of [administrative] expenses but administrative expenses must be paid in full on the effective date of the plan . . . ."  See In re Global Home Products, LLC, No. 06-10340, 2006 WL 3791955, at *3 (Bankr. D. Del. Dec. 21, 2006) (Gross, J.).  This Court went on to provide that, "[t]o qualify for exceptional immediate payment, a creditor must show that 'there is a necessity to pay and not merely that the Debtor has the ability to pay.'"  Id. (internal citations omitted); see also Sweet Traditions, LLC, Case No. 07-45787 (KAS) (Bankr. E.D. Mo. Dec. 10, 2007) (denying an application for immediate payment of a section 503(b)(9)

claim and holding that such claim would be payable upon the confirmation of a plan in the case or subsequent order of the court).

25.    Exercising their discretion with regard to the timing of payment of an administrative claim, courts have looked to three factors:  (1) prejudice to the debtor, (2) hardship to the claimant, and (3) potential detriment to other creditors.  See In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005); see also In re Global Home Products, LLC, 2006 WL 3791955, at *5 (holding that the proper exercise of its discretion required it to deny a motion for immediate payment under 503(b)(9) because "[t]he prejudice to Debtors of requiring immediate payment far outweigh[ed] the prejudice, if any, to [the creditor] and Debtors' other creditors are benefited by the ruling to the extent that by denying immediate payment, the Court preserves a later equitable distribution to other administrative claimants").  Here, these factors weigh heavily in favor of providing for payment as part of a plan of reorganization, as payment of these claims as they are filed would needlessly consume the Debtors cash resources from operations at the early stages of the Debtors' cases, rather than providing for the orderly and uniform treatment of these claims, and the total amount of claims that may be asserted is unknown.

26.    In determining whether immediate payment of administrative claims is appropriate, courts have also considered an overarching goal of the bankruptcy process, to provide for an orderly and equal distribution of recovery among creditors.  In order to ensure an orderly and equal distribution among creditors and to provide debtors with a degree of breathing room from their creditors, courts frequently deny any request for payment of administrative claims until confirmation of a plan.  See In re Cont'l Airlines, Inc., 146 B.R. 520, 531 (Bankr. D. Del. 2002) ("Most courts postpone actual payment until confirmation of a plan."); see also In re

11

Austin, No. 85-40639, 1994 WL 245224, at *1 (Bankr. S.D. Ga. 1994) ("In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets.").

27.     There is no compelling justification as to why these section 503(b)(9) prepetition claims must be satisfied at this early stage in these cases, rather than incident to a confirmed plan of reorganization under section 1129, when allowed claims of other similarly situated creditors are properly payable. Accordingly, consistent with the Bankruptcy Code and other recent cases, section 503(b)(9) claims, to the extent allowable, should be paid pursuant to a confirmed plan of reorganization.

28.     For all of the foregoing reasons, the relief requested herein should be granted.

### The Debtors Reservation of Rights

29.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.

### Notice

30.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

31.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: March 24, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Thomas F. Driscoll III (No. 4703)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

13