```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE


IN RE:                          .    Chapter 11
                                .
NORTEL NETWORKS INC.,           .    Case No. 09-10138(KG)
et al.,                         .    Jointly Administered
                                .
        Debtors.                .    Feb. 27, 2009 (11:02 a.m.)
                                .    (Wilmington)



                      TRANSCRIPT OF PROCEEDINGS
                  BEFORE THE HONORABLE KEVIN GROSS
                UNITED STATES BANKRUPTCY COURT JUDGE
```

Appearances:

| | |
|---|---|
| For the Debtors: | Derek C. Abbott, Esq. |
| | Morris, Nichols, Arsht & Tunnell |
| | James L. Bromley, Esq. |
| | Cleary Gottlieb Steen & Hamilton |
| | |
| Audio Operator: | Brandon McCarthy |
| Transcriber: | Elaine M. Ryan |
| | (302) 683-0221 |

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1          THE CLERK: Please rise.

2          THE COURT: Good morning.  Please be seated.  Mr.
3    Abbott, good morning.

4          MR. ABBOTT: Good morning, Your Honor.  Derek Abbott
5    here on behalf of Nortel.  I understand the Court may be in a
6    little bit of time crunch, and we're happy to move right into
7    things, if I may just cede the podium to Mr. Bromley who will
8    present the sole motion on today.

9          THE COURT: That's fine.  The other matter I have
10   this afternoon also involves Nortel, so it's not a terrific
11   time crunch.

12         MR. ABBOTT: Okay, very good, Your Honor and thank
13   you.

14         THE COURT: Yes, thank you.  Mr. Bromley, welcome
15   back.

16         MR. BROMLEY: Thank you very much, Your Honor, nice
17   to be back.  First, Your Honor, I want to thank you very much
18   for accommodating us on shortened notice with respect to this
19   sale process.  The sole matter before you today, Your Honor,
20   is an application for the approval of bidding procedures,
21   expense reimbursement, breakup fee, and all the typical
22   accouterments that go along with a 363 sale process.

23         THE COURT: Yes.

24         MR. BROMLEY: This relates specifically to a non-
25   core part of the Nortel business, and as we've mentioned,

1    Your Honor, on many occasions, part of the business that is -

2    the way the business is organized, what we're seeking to sell

3    here with respect to the U.S. we're also seeking similar

4    relief in Canada and have engaged with the administrator with

5    respect to any assets that will be sold in the UK

6    administration process.

7            THE COURT: Yes.

8            MR. BROMLEY: And I should note that there was a

9    hearing held this morning for the Canadian Court to seek

10   approval of essentially similar procedures, and that order

11   was granted, I just received an email -

12           THE COURT: Okay.

13           MR. BROMLEY:  - that Justice Marowitz entered that

14   order this morning.  There's been one document filed, Your

15   Honor, a reservation of rights by Oracle Corporation, and I

16   thought I could address that right up front.  Oracle had

17   inquired whether or not any of their contracts were subject

18   to this transaction, and we have been trying to reach them

19   and I believe may have reached them this morning to confirm

20   that there are no Oracle contracts -

21           THE COURT: Okay.

22           MR. BROMLEY:  - associated with this relief, and

23   just to be clear, to the extent that there is an inference in

24   the Oracle papers that we're seeking to create some sort of

25   form to deal with the assumption and assignment of contracts

1  for the duration of this case, we're not doing that, Your

2  Honor, we're simply looking to deal with that with respect to

3  this particular transaction.

4           THE COURT: Okay, well, that certainly takes care of

5  Oracle's concern.

6           MR. BROMLEY: I think so, Your Honor.  Your Honor,

7  the assets that we're seeking to sell and the business that

8  we're seeking to sell is a very specialized business, and

9  it's the current generation Nortel Application Switch, the

10 Nortel Application Accelerator, the Virtual Service Switches

11 and related business and contracts.  As you might imagine,

12 Your Honor, it's a relatively small and specialized market of

13 folks who would know, first, what these things are and to

14 whether or not they would like to purchase them.  It is in

15 light of those circumstances, Your Honor, that we have

16 proposed the bidding procedures that we have put in place.

17 We have a stalking horse transaction that we have signed up

18 with a company called Radware -

19          THE COURT: Yes.

20          MR. BROMLEY:  - for a total consideration of

21 $17,650,000.  There is a breakup fee that we're seeking

22 approval of, of $650,000 and an expense reimbursement of up

23 to $400,000.  Your Honor, we've received no objections other

24 than the Oracle reservation of rights, which I think we've

25 addressed.  I have brought a witness, Your Honor.  Mr. Hyzen

1  D. Almeda (phonetical) who would be able to go through in

2  detail the process that has been put in place and has been

3  followed in terms of deciding whether to sell these assets

4  and the business related to it, how that process has gone

5  forward to date, and the reasons for a relatively expedited

6  sale process, but we also -

7           THE COURT: Which his declaration largely addressed.

8           MR. BROMLEY: Yes, so, Your Honor, we're happy to go

9  into more detail, but we also are happy to rest on the papers

10 as submitted and address any comments or questions that the

11 Court may have.

12          THE COURT: Well, Mr. Almeda is in the courtroom and

13 I don't know - Does anyone wish to cross-examine him?  I'm

14 content to proceed on the papers.  As I said, his declaration

15 certainly addressed all of the concerns that I would have had

16 as far as the marketing process to date, the need for

17 expedition, the arm's length nature of the transaction, and

18 so I don't think that it's necessary for Mr. Almeda to

19 testify.

20          MR. BROMLEY: Thank you, Your Honor.  We also have

21 representatives of Radware in the courtroom from the Kramer

22 Levin firm if you have any questions for them as well, Your

23 Honor.

24          THE COURT: No, I don't.  You know, I recognize that

25 - Well, I do have one question, and that is, I know that the

1  incremental bids are going to be at $500,000, I believe

2  that's - if my memory is correct.

3           MR. BROMLEY: That's correct, Your Honor.

4           THE COURT: And if you take into account the breakup

5  fee of $650,000 and the expense reimbursement of $400,000, it

6  looks like the next bid would have to be in excess of about

7  $1,550,000.

8           MR. BROMLEY: I think that's right, Your Honor.

9           THE COURT: Okay, and it certainly is not my wish to

10 substitute my judgment for that of the debtors, particularly

11 where no one is concerned enough to oppose this motion or the

12 breakup fee.  It's a little bit at the high end, I recognize,

13 maybe even slightly above the high end of the normal breakup

14 fees that we see in this Court, but as you've indicated, Mr.

15 Bromley, it is a very specialized sort of business, and the

16 assets are very specialized, and I am certainly prepared to

17 bend a little bit on what we normally see and to defer to the

18 debtors' judgment.  The debtor and certainly the Committee is

19 here and represented and is not opposing.  I certainly defer

20 to your judgment that this breakup fee and expense

21 reimbursement will not chill the bidding in any way, but in

22 fact, will promote an active auction or may - is designed to

23 promote an active auction, and so having just expressed that

24 minor concern and satisfied that in this particular case it's

25 appropriate, I am prepared to approve it.

1           MR. BROMLEY: Thank you, Your Honor.  I would note,

2  just to give you a little more comfort, we have been engaged

3  with the Creditors Committee on a constant basis, and indeed

4  we have filed amended forms of order and notices just last

5  night which I think accommodated, I think, all of the

6  comments and concerns that the Committee had raised with us.

7           THE COURT: Good.  I have just one other question.

8  Paragraph (24) of the revised order, if I may, hopefully I'll

9  find it myself.  I just wanted to make sure -

10          MR. BROMLEY: Is this on the objection procedures,

11 Your Honor?

12          THE COURT: It relates to adequate assurance.

13          MR. BROMLEY: Yes.

14          THE COURT: Just help me with that a little bit.  In

15 other words, if the debtors do not have any further

16 obligations and don't owe any sums to a counterparty, they'll

17 be deemed to have received adequate assurance?

18          MR. BROMLEY: Yes, Your Honor.  It might be

19 worthwhile to explain a little bit about what these contracts

20 are and how the business operates to give a little context.

21 And just for those who are looking for the paragraph, I can

22 hear a lot of paper, it's not very long -

23          THE COURT: No, it's not.

24          MR. BROMLEY: "Any counterparty will be deemed to

25 have received adequate assurance of future performance as

1   required by § 365 of the Bankruptcy Code, if the debtors,

2   after payment of any cure costs, would no longer have any

3   payment or delivery obligations under the assumed and

4   assigned contract."

5            THE COURT: Yes.

6            MR. BROMLEY: First, Your Honor, I would point out

7   that this obviously is something that if counter-parties have

8   any issues with, they can object to at the sale hearing.

9            THE COURT: Absolutely.

10           MR. BROMLEY: But in terms of the context in which

11  we're operating, this business is a business that relates to

12  very large switches that take the internet signals that come

13  into buildings and distribute them in an efficient manner

14  throughout a building.

15           THE COURT: Okay.

16           MR. BROMLEY: Or a series of buildings or the like,

17  and I'm simplifying incredibly and if the engineers heard me

18  they would shoot me, but what happens with respect to these

19  assumed and assigned contracts, Your Honor, is once you sell

20  the switch, you sell them the service to make sure the switch

21  continues to operate.

22           THE COURT: Okay.

23           MR. BROMLEY: So these contracts are largely

24  contracts for the maintenance and service related to these

25  switches.  For that reason we actually believe that there are

1   going to be no or very few cure costs because the payments

2   are largely made up front, there are certain things that are

3   continuing obligations, for instance, if you take the switch

4   and move it or change it and the like, you may have other

5   expenses that you have to pay, but assuming that you've done

6   the right thing, you put the right motor oil in your car, so

7   to speak, then Nortel has obligations to come to the place

8   and fix it if it's not working.  And so, that's the nature of

9   the assumed and assigned contracts.

10              THE COURT: Okay.

11              MR. BROMLEY: It's not the typical type of contract.

12  It's certainly executory.  There are obligations still going

13  back and forth.  There's IP that's licensed under these

14  things and the like, but assuming that the switch has been

15  installed, it's sitting there, and it stops working, the

16  obligation of Nortel is to go in and fix it, and so, when

17  Radware - if Radware or the winning bidder takes over this

18  business, they will take over the obligations to continue to

19  perform.

20              THE COURT: That's very helpful, thank you, Mr.

21  Bromley.

22              MR. BROMLEY: Okay.

23              THE COURT:  Well, I am prepared to grant the

24  motion.

25              MR. BROMLEY: Great.  Well, thank you very much,

1   Your Honor.

2            THE COURT: And get things going and we'll have the

3   sale on March 25th, as I recall, and hopefully there will be

4   an active auction, although it does sound like it's a pretty

5   small universe of potential.

6            MR. BROMLEY: Well, we did have an initial section

7   on due diligence with potential interested parties yesterday,

8   and well over a dozen showed up.

9            THE COURT: Oh, okay.

10           MR. BROMLEY: So we're certainly hopeful that

11  they're interested.

12           THE COURT: I hope so too.

13           MR. BROMLEY: And we have an active auction.  Your

14  Honor, if I could just mention one thing.  We obviously would

15  like to get the order entered as quickly as possible today

16  because we do have a very short timeline that we're dealing

17  with.

18           THE COURT: Yes.

19           MR. BROMLEY: And the second thing is I thought if I

20  could just preview for you an issue that we may bring before

21  you on a relatively short basis, and I understand that we've

22  imposed on Your Honor's good humor too many times already.

23           THE COURT: There's always room.

24           MR. BROMLEY: But, just to give you a little bit of

25  an update, you may have seen in the news reports that this

1   week Nortel did announce additional reductions in the

2   workforce around the world.

3          THE COURT: Yes, yes.

4          MR. BROMLEY: A total of 3,200 additional workforce

5   reductions, and that would bring the number to approximately

6   5,000 for calendar year 2009.  And that will bring the number

7   of employees down below 20,000 total worldwide and that

8   obviously has had a substantial impact and will continue to

9   have a substantial impact on employee morale.  One of the

10  things that we've been working very hard with the Committee

11  and the monitor with over the past two weeks has been the

12  creation of a key employee incentive and retention plan, and

13  we have reached just last night a final agreement with the

14  Committee on the framework for proceeding, and it would be

15  our hope to move forward on an expedited basis with a portion

16  of that with the full support of the Committee and have the

17  rest of it dealt with a little bit later, and if I can just -

18  if you can imagine the calendar, Your Honor, we have two

19  omnibus hearing dates in March.

20         THE COURT: Yes.

21         MR. BROMLEY: The first is a week from today, March

22  5th and the second is three weeks, March 20th.  I think it's

23  Thursday, March 5th and Friday, March 20th.

24         THE COURT: Okay.

25         MR. BROMLEY: And we have - the program as

1    constructed has two levels.  It has a rank-and-file level and
2    an executive level, which is not uncommon, and what we have
3    talked with the Committee about and agreed to is, and the
4    Committee has indicated its support for taking the rank-and-
5    file portion and some of the lower level executives on a
6    faster time frame to move that and obviously this is only the
7    Committee and the company and the monitor agreed on this, and
8    clearly we would have the ability for others to object, but
9    we think, obviously, the Committee is a key constituency and
10   we've given them lots of access to information and to people
11   to get them comfortable with the program, but what we would
12   be looking for is a hearing on the 5th on sort of the more
13   basic issues, and then for the top 10 people, as you
14   typically see, we would have that hearing scheduled for the
15   20th, and one of the distinguishing factors of the program
16   that we've put in place is, and I think as we continually
17   have to look at it from our perspective as professionals,
18   there are things we can do in Canada and things we can do in
19   the U.S.  What the program is, is a - and in Canada, there's
20   no concept of incentive programs.  There's no 503(c).
21            THE COURT: Okay.
22            MR. BROMLEY: What we have done is with respect to
23   the two upper levels, the executive levels, created a program
24   that is incentive-based in Canada as well as the U.S. and a
25   retention program that is more traditional for the non-

1    insiders in the U.S. and for everyone else in Canada in an

2    attempt to coordinate the jurisdictions as much as possible.

3    And then with respect to the so-called SLTs the senior

4    leadership team, the 10 people running the business at the

5    very highest end, they would be dealt with on the 20th.

6              THE COURT: Okay.

7              MR. BROMLEY: So, I just wanted to let you know,

8    Your Honor, that's what we will be looking for, for shortened

9    notice.  We understand if others object and that's fine, but

10   the Committee is supportive of that and Mr. Davis can confirm

11   that, and the monitor's counsel is present as well and they

12   can confirm the monitor's support, and at the same time we

13   will be seeking that relief in Canada on the 6th of March,

14   which is a week from today.  So, the - again, trying to keep

15   everything moving, and the main reason for the expedition,

16   Your Honor, is indeed because we did let go 3,200 - or rather

17   than let them go this week, but it was announced this week

18   and that reduction is beginning as we speak.

19             THE COURT: And you would like to give assurance to

20   the remaining employees.

21             MR. BROMLEY: Exactly, Your Honor.

22             THE COURT: Yes, I appreciate that and I'm certainly

23   sensitive to it.

24             MR. BROMLEY: Okay.

25             THE COURT: And the 5th will work, particularly when,

1   as I've heard the Committee does not oppose the shortened

2   time, which would be my only concern, so, I imagine I'll be

3   receiving a motion to shorten time shortly?

4           MR. BROMLEY: This afternoon, Your Honor.

5           THE COURT: Okay, fine, and I will - Thank you for

6   the report on the Committee, that way I don't have to delay

7   entry of that order.

8           MR. BROMLEY: Great.  Well, thank you very much,

9   Your Honor, I think that's all we had today.

10          THE COURT: Alright, counsel.  I know you sent over

11  the order earlier today.  Do you have another one, only

12  because there were so many papers - Thank you, Ms. Cordo,

13  good morning.  Thank you.  Alright, I'm going to enter this.

14  We will get it on the docket - I'm going to sign it, I should

15  say, we'll enter it on the docket promptly, and if any issues

16  arise, I make this comment - if any issues arise at the

17  auction and you think it might be helpful to have the matter

18  resolved before the hearing, right at the auction, please

19  don't hesitate to call chambers, and we will get you on a

20  conference call.

21          MR. BROMLEY: Terrific.  Thank you very much, Your

22  Honor, we very much appreciate it.

23          THE COURT: Alright, and I will see Ms. Caloway and

24  her cohorts this afternoon.  Anything further?

25          MR. BROMLEY: That's it, Your Honor.

1           THE COURT: Counsel, thank you.

2           MR. BROMLEY: Thank you very much, Your Honor.

3           THE COURT: We stand in recess, good weekend to all.

4           MR. BROMLEY: To you too.

5           (Whereupon at 11:19 a.m., the hearing in this

6   matter was concluded for this date.)

7

8

9

10

11

12

13

14

15

16

17

18           I, Elaine M. Ryan, approved transcriber for the

19   United States Courts, certify that the foregoing is a correct

20   transcript from the electronic sound recording of the

21   proceedings in the above-entitled matter.

22

23   /s/ Elaine M. Ryan                         March 25, 2009
     Elaine M. Ryan
     2801 Faulkland Road
     Wilmington, DE 19808
     (302) 683-0221