IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al.,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |
| | Hearing Date: No hearing scheduled<br>Objection Deadline: April 6, 2009 at 4:00 p.m. |

## OBJECTION OF JDS UNIPHASE CORPORATION
## TO DEBTORS' RECLAMATION NOTICE FOR JDS UNIPHASE CORP.

JDS Uniphase Corporation ("JDSU"), a reclamation creditor herein, by and through its undersigned attorneys, hereby submits this objection (this "Objection") to the *Debtors' Reclamation Notice for JDS Uniphase Corp.* (the "Debtors' Notice"), filed by Nortel Networks Inc. and related debtors herein (collectively, the "Debtors") on March 16, 2009, as follows:

### I. BACKGROUND

Though not addressed in the Debtor's Notice, JDSU believes that the basic underlying facts are not in dispute. They are as follows:

1. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. On January 16, 2009 (the "JDSU Demand Date"), JDSU sent to the Debtors' counsel, Ann C. Cordo and Derek Abbott of Morris Nichols Arsht & Tunnell LLP, and James Bromley and Lisa Schweitzer of Cleary Gottlieb Steen & Hamilton LLP, by telecopy, electronic mail and United States first class mail, a written demand (the "JDSU Demand") for reclamation and return of products shipped by JDSU and received by the Debtors within 45 days preceding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each of Debtor's tax identification numbers are: Nortel Network, Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Otera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions, Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6826) and Nortel Networks Cable Solutions Inc. (0567).

23153/20032

such demand, in the aggregate amount of $5,183,690. A true and correct copy of the JDSU Demand is attached hereto as **Exhibit "A."**

3. Attached to the JDSU Demand was a detailed list of all invoices under which the goods sought to be reclaimed were shipped to the Debtors, including invoice dates, invoice numbers and the dollar amount of each invoice. The referenced invoices, in turn, all of which had previously been provided to the Debtors, provided even more information, including the Debtors' parts numbers, serial numbers, shipping agents, shipping destinations and component descriptions. Attached hereto as **Exhibit "B[2]"** is a true and correct sample copy of an invoice referenced in the JDSU Demand.

4. On January 20, 2009, at the Debtor's request, JDSU provided additional information to the Debtors with respect to the JDSU Demand and the goods identified therein.

5. On or about February 2, 2009, the Debtors filed a motion seeking to establish procedures for addressing reclamation demands (the "Procedures Motion"), and on February 12, 2009, JDSU filed objections to certain aspects of the Procedures Motion.

6. At the same time, numerous discussions occurred between employees and counsel of JDSU and employees and counsel of the Debtors, in part to share information as to the nature, use and whereabouts of the particular goods identified in the JDSU Demand. Through those discussions, JDSU was eventually informed by the Debtors that the goods identified in the JDSU Demand fit into the following categories of disposition or nature:

(a) Subject goods having an aggregate invoice value of $2,034,623 were conceded by the Debtors to have been held by them unconsumed as of the JDSU Demand Date (the "Conceded Goods");

(b) Subject goods having an aggregate invoice value of $2,003,237 were ordered by, and delivered to, the Debtors' affiliate in the United Kingdom ("Nortel UK"), rather than by the Debtors (the "UK Goods");

---

[2] Exhibit B has been redacted to protect confidential trade information per agreement with the Debtors. The Debtors concede that the instant Objection is timely filed.

23153/20032

2

(c) Subject goods having an aggregate invoice value of $273,906 were ordered by, and delivered to, the Debtors' affiliate in Canada ("Nortel Canada"), rather than by the Debtors (the "Canada Goods");

(d) The amount of $102,470 within the JDSU Demand represented services (rework of sold units), not goods, delivered by JDSU to the Debtors (the "Subject Services");

(e) Subject goods having an aggregate invoice value of $417,164 were held by the Debtors as of the JDSU Demand Date, but unlike the Conceded Goods, the Debtors did not concede that these goods were subject to reclamation (the "Disputed Demand Date Goods"); and

(f) Subject goods having an aggregate invoice value of $377,460 had been consumed by the Debtors as of the JDSU Demand Date (the "Consumed Goods").

7. Of the Disputed Demand Date Goods, the Debtors contended that goods having an aggregate invoice value of $181,880 had been shipped after the JDSU Demand Date and by January 30, 2009, and that the balance of the Disputed Goods, having an aggregate invoice value of $235,284, had been "transformed" by January 30, 2009, some two weeks after the JDSU Demand Date. The Debtors informed JDSU that it was unable to identify the dates on which those products were "transformed."

8. The Debtors further advised JDSU that they considered goods "transformed" when they had been inserted into assemblies with other components, prior to shipment to customers.

9. Finally, the Debtors also informed JDSU that they dispute any reclamation of the Disputed Demand Date Goods because they contend that they were not able to fully identify those goods until January 30, 2009, two weeks after the JDSU Demand Date, following a review of the Debtors' own records.

10. Prior to the hearing of the Procedures Motion, the Debtors and JDSU reached agreement as to JDSU's objections, and accordingly, on February 19, 2009, the Court entered its

order approving the motion upon modified terms approved by JDSU. Among those modified terms were the Debtors' agreement to pay JDSU in full for the Conceded Goods, while reserving all rights and disputes as to all other goods that are subject to the JDSU Demand.

11.    JDSU thereafter received payment in the amount of $2,034,623 from the Debtors for the Conceded Goods.

12.    On March 16, 2009, the Debtors filed and served their Debtors' Notice, regarding the balance of the JDSU Demand. In short, the Debtors asserted the position that none of the goods identified in the JDSU Demand other than the Conceded Goods, for which payment had already been made, were properly the subject of the JDSU Demand. Accordingly, the Debtors' Notice did not offer any further treatment or payment with respect to the JDSU Demand.

13.    In particular, the Debtors' Notice cites the following bases for denying any further payment or reclamation with respect to goods identified in the JDSU Demand:

(a)    "Reclamation demand provided insufficient information to identify goods;"

(b)    "Goods were shipped to customers or otherwise transformed;"

(c)    "Demand includes goods not either ordered by or delivered to Debtors ($2,277,143);" and

(d)    Demand includes invoices for services ($102,470)."

14.    As a result, a dispute remains between JDSU and the Debtors with respect to the JDSU Demand. Whereas, assuming that the information that the Debtors have provided to JDSU is accurate, JDSU will no longer claim entitlement to reclamation of the Subject Services, the UK Goods, the Canada Goods or the Consumed Goods, JDSU continues to believe that it is entitled to reclamation of Disputed Demand Date Goods pursuant to Section 2-702 of the Uniform Commercial Code and Section 546(c) of the Bankruptcy Code, and therefore asserts the right to reclamation, through cash payment, in the amount of $417,164.[3]

---

[3] JDSU reserves the right to re-assert its right to reclamation as to other goods identified in the JDSU Demand if the information provided by the Debtors to JDSU proves to be inaccurate, and to that extent, JDSU objects to all aspects

## II. **DISCUSSION**

With respect to the Disputed Demand Date Goods, the Debtors' stated bases for denying the JDSU Demand, set forth in paragraphs 13(a) and (b) above, are not legally sustainable. Applicable law and pertinent facts support JDSU's position that the amount of $417,164 remains subject to reclamation by JDSU, in addition to the payment already made with respect to the Conceded Goods, based upon the following:

A.   **The JDSU Demand Provided Sufficient Information.**

In order to be effective, a reclamation demand must identify the goods as to which reclamation is sought. *In re Braniff*, 113 B.R. 745, 754 (Bankr. M.D. Fla. 1990). However, the fact that the demand does not allow the debtor to identify those goods instantaneously does not render the demand insufficient. For example, in *Braniff*, the Bankruptcy Court concluded that a fuel supplier's demand was sufficient even though the debtor airline was not able to identify the reclaimed goods immediately -- the fact that the debtor was able to compile the necessary information by making inquiries of its agent over "several days" was enough. *In re Braniff*, 113 B.R., *supra* at 753. Notably, all that the supplier had provided in its reclamation demand were bills of lading numbers, listed by shipment date, product type, quantity and price, *Id.* at 749, much like the invoices numbers, dates, prices and other information provided in the JDSU Demand.

In fact, the JDSU Demand contained far more information than this Court, in *In re Hechinger*, 274 B.R. 402 (Bankr. D. Del. 2001), has found to be necessary. In the *Hechinger* case, the supplier had delivered a reclamation demand that simply demanded return of all goods delivered to the debtor within the applicable reclamation period, without identifying particular goods or invoices. *Id.* at 404. Upon the debtor's summary challenge as to the sufficiency of the demand, this Court ruled that a triable issue of fact existed, insofar as the supplier's demand might well provide to the debtor adequate information, under several different possible scenarios,

---

of the Debtors' Notice.

of which the Court described three – that the supplier was a sole source of the goods in question, making their identification obvious; that the debtor's business was relatively small and geographically limited; or that a computer-based inventory control system made identification of the goods possible. *Id. at* 407. Here, the first and third of those alternative scenarios likely apply. JDSU's goods are unique and not fungible with other suppliers' goods, and the Debtors maintain a comprehensive inventory control system that is computer-based and that permits the Debtors to identify the goods in question based solely on the information contained in the JDSU Demand, coupled with the referenced invoices that had previously been provided to the Debtors.

The fact that the Debtors may not have *actually* identified the goods for one or two weeks after demand was made is immaterial. The speed and focus with which the Debtors complied with the JDSU Demand was not in JDSU's control, and the fact that the Debtors could have identified the goods more quickly if necessary is sufficient. Identification of the goods is not the sole obligation of the vendor, *In re Hechinger*, 274 B.R., *supra* at 407, and neither U.C.C. Section 2-702 nor Bankruptcy Code § 546(c) requires that the vendor's demand letter set forth all of the information needed to determine the identity of the reclaimed goods: If the combination of the information provided by the demand letter and the information in the debtor's possession are sufficient to identify the goods, then the demand is adequate. *In re Hechinger*, 274 B.R., *supra* at 407.

Under applicable case law, therefore, it is clear that the JDSU Demand contained sufficient information to be effective on the date delivered.

**B.     The Debtors' Mere Allegation of Consumption Does Not Carry its Burden.**

The Debtors argue, apparently, that even if the JDSU Demand was sufficient, the goods identified therein were shipped to customers or consumed by January 30, 2009, two weeks after the JDSU Demand Date. But the Debtors have provided no specifics or evidence of such consumption or shipment, and January 30, 2009 is not an appropriate date of measurement. Presuming that the goods were in the Debtors' possession prior to the JDSU Demand Date and not in their possession on January 30, 2009, two weeks after the JDSU Demand Date, it is

incumbent upon the Debtors to determine when within that time period the goods were shipped or consumed.

Alternatively, presumptions as to the flow of goods and shipments might be necessary in order to determine how much, if any, of the goods had been shipped by the JDSU Demand Date, as was the case in *In re Braniff, supra*. In that case, the Court was required to determine whose comingled jet fuel was consumed at which times, and the Court employed "first in, first out" and proportionate-consumption assumptions in order to do so. *Id. at* 755. The same may be necessary here as well, but simply ruling out any reclaimable goods based upon the goods' status two weeks after the JDSU Demand Date, as the Debtors argue, is not legally sustainable.

### III. CONCLUSION

Based on the foregoing, JDSU respectfully submits that the Court should reject the Debtors' Notice, and should instead direct payment to JDSU in the amount of the Disputed Demand Date Goods, or $417,164. Further, to the extent that JDSU later determines and demonstrates that any of the alleged facts and circumstances upon which the Debtors base their arguments are inaccurate, JDSU reserves the right to assert reclamation, and a right to payment, as to such additional goods as are warranted by the corrected facts and circumstances.

Dated: April 7, 2009

Respectfully submitted,

MEYERS LAW GROUP, P.C.

By: /s/ *Merle C. Meyers*
Merle C. Meyers, Esq., CA Bar #66894
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

-and-

ASHBY & GEDDES, P.A.

By: /s/ *AMWinfree*
William P. Bowden (#2553)
Amanda M. Winfree (#4615)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

*Attorneys for JDS Uniphase Corporation*