IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
:
Debtors. : Jointly Administered
:
:
------------------------------------------------------------X

**STATEMENT OF STEPHEN J. TURANCHIK PURSUANT TO FED. R. BANKR. P. 2014
AND ORDER AUTHORIZING DEBTORS TO EMPLOY, RETAIN AND
COMPENSATE PROFESSIONALS IN THE ORDINARY COURSE**

Stephen J. Turanchik, being duly sworn, upon his oath, deposes and says:

1. I am an attorney in the law firm of Paul, Hastings, Janofsky & Walker LLP, with several offices, including one located at 515 S. Flower Street, 25th Floor, Los Angeles, CA 90071-2228 (the "Firm").

2. The Firm has been retained by Nortel Networks Inc. ("Nortel"), one of the above-captioned Debtors (the "Debtors"), pursuant to the Order Authorizing the Retention and Payment of Professionals Utilized in the Ordinary Course *nunc pro tunc* to the Petition Date, dated February 5, 2009 [Dkt. No. 236], to provide services to the Debtors.

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

3. Except as otherwise noted, the facts set forth below are based upon my personal knowledge, discussions with other Firm attorneys, and the Firm's client/matter records reviewed by me.

4. Nortel has asked the Firm to continue providing legal services to it in the area of tax litigation. Since 2005, the Firm has represented Nortel in an action against the State Board of Equalization of the State of California (the "BOE") for the refund of sales taxes, plus interest thereon, and other appropriate relief. This action, titled *Nortel Networks Inc. v. State Board of Equalization of the State of California*, Case No. BC341568 ("*Nortel I*"), was filed in the Superior Court of California, County of Los Angeles, on October 17, 2005. *Nortel I* is currently pending in the Court of Appeal of the State of California, Second Appellate District, and is designated as Case No. B213415.

5. On August 9, 2007, Nortel filed a second action against the BOE in the Superior Court of California, County of Los Angeles, titled *Nortel Networks Inc. v. State Board of Equalization of the State of California*, Case No. BC375660 ("*Nortel II*" and, together with Nortel I, the "Tax Litigation"). In this action, Nortel seeks a refund of sales taxes, plus interest thereon, and other appropriate relief. *Nortel II* is currently pending in the Superior Court of California, County of Los Angeles.

6. In each action, the BOE filed a cross-complaint against Nortel for unpaid interest for 1994-1997. Nortel has paid such interest and there is nothing due with respect to the BOE's cross-complaints against Nortel.

7. In the Tax Litigation, the Firm has represented Nortel for the sole benefit of an independent third party, Pacific Bell Telephone Company and/or certain of its affiliates (the "Third Party"), which are not related to Nortel or its affiliated Debtors. The Third Party is

responsible for paying the Firm's fees and reimbursing the Firm's expenses incurred in the Tax Litigation. Accordingly, the Firm has no prepetition claim against the Debtors or their estates as a result of its representation of Nortel in the Tax Litigation. In addition, the Firm will not seek payment from the Debtors' estates for any fees and expenses incurred in connection with the Tax Litigation.

### Disclosure Procedures

8. The Firm may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in these chapter 11 cases. The Firm has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations.

9. The Firm received from the Debtors' counsel a list of parties-in-interest in these chapter 11 cases (collectively, the "Interested Parties"). The list may have changed without the Firm's knowledge and may change during the pendency of the chapter 11 cases.

10. The Firm searched on its electronic database for its connection to the Interested Parties. Based on the conflicts search conducted to date and described herein, to the best of my knowledge, neither I, the Firm, nor any attorney thereof, insofar as I have been able to ascertain, has any "connection" with the Debtors, their creditors, or any other Interested Parties, their respective attorneys and accountants, the U.S. Trustee, or any person employed in the office of the U.S. Trustee, except as disclosed or otherwise described herein and in the exhibit hereto.

11. Neither the term "connection," as used in Fed. R. Bankr. P. 2014, nor the proper scope of a professional's search for "connection" has been defined, and I am therefore uncertain what this Court may consider a "connection" requiring disclosure. Out of an abundance of caution, I am disclosing many representations, which are not, to my understanding,

disqualifying or problematic under either Section 327(e) of the Bankruptcy Code or applicable standards of professional ethics.

### Specific Disclosures

12. Based on its conflicts research, the Firm makes the following specific disclosures:

   a. The Firm has represented Nortel since 2005 in the Tax Litigation.

   b. The Debtors do not owe the Firm for services rendered prepetition.

   c. Annexed hereto as Exhibit 1 is a list of Interested Parties (or their affiliates) whom the Firm represents, or has represented in the past, in matters unrelated to the matters on which the Firm is engaged. The Firm will not represent any such entity or individual in the Debtors' chapter 11 cases without the Debtors' written consent, the U.S. Trustee's approval, and the Court's authorization.

   d. In the Tax Litigation, the Firm is adverse to the Attorney General of the State of California and the BOE. The BOE is included on the Debtors' list of Interested Parties. While the Firm has not represented the BOE, the Firm has represented, in unrelated matters, other entities affiliated with the State of California.

   e. In these chapter 11 cases, the Firm has been asked to represent IBM and certain affiliates (collectively, "IBM") in connection with certain contractual and business relationships between IBM and the Debtors and related chapter 11 matters (collectively, the "IBM Matters"). The IBM Matters are unrelated to the matters on which the Debtors have engaged the Firm.

   f. The Debtors and IBM have signed written consents and conflict waivers with respect to the Firm's concurrent representation of the Debtors and IBM, provided that the Firm maintains complete separation (an ethical wall) between the attorneys, files, and information relating to the Firm's representation of the Debtors and those relating to the Firm's representation of IBM in relation to the Debtors.[2] These screening procedures are intended to assure that there will be no inadvertent disclosure of the Debtors' confidential information that could, arguably, adversely affect the Debtors. These procedures are also designed to avoid even the appearance of impropriety. Specifically, the Firm and its employees will adhere to the following "ethical walls":

---

[2] Upon request, the Firm will provide the Court and the United States Trustee with a copy of the waivers.

- No attorney who is working on the Tax Litigation will work on the IBM Matters, and vice versa;

- Attorneys who have worked or will be working on the Tax Litigation will not discuss any aspect of the representation with any of the Firm's attorneys who have worked or are working on the IBM Matters, and vice versa;

- All attorneys, files, and information relating to the representation of the Nortel in the Tax Litigation will remain entirely separate from the attorneys, files, and information relating to the Firm's representation of IBM in the chapter 11 cases. In this regard, the IBM Matters will be handled by Richard A. Chesley and his team in the Firm's Chicago office, while the Tax Litigation will be handled by Jeffrey G. Varga and his colleagues in the Firm's Los Angeles office; and

- These screening procedures will be in effect for the duration of the Firm's representation of Nortel in the Tax Litigation and for the duration of the Firm's representation of IBM in matters affecting the Debtors. I believe that such procedures are fully adequate to preclude any inadvertent disclosure of the Debtors' confidential information.

g. From time to time, the Firm may have referred work to other professionals retained or to be retained in these chapter 11 cases. Likewise, certain such professionals may have referred work to the Firm. In addition, in matters unrelated to the matters on which the Firm is employed, the Firm has worked with certain of the Debtors' other professionals.

h. Certain insurance companies pay the legal bills of the Firm clients. Some of these insurance companies may be involved in these chapter 11 cases. None of these insurance companies, however, are the Firm clients as a result of this situation.

i. Given the number of attorneys in its offices, several attorneys at the Firm have professional, working, or social relationships with firms or professionals at firms that may be adverse to the Debtors. In addition, several attorneys at the Firm have spouses, parents, children, siblings, fiancés or fiancées who are attorneys at other law firms or companies. Also, certain attorneys at the Firm may have spouses, parents, children, siblings, fiancés or fiancées who are employees of one or more of the Debtors. The Firm has strict policies against disclosing confidential information to anyone outside of the Firm, including spouses, parents, children, siblings, fiancés and fiancées.

j. The Firm has over two thousand attorneys and other employees. It is possible that certain the Firm attorneys or employees hold interests in

5

mutual funds or other investment vehicles that may own the Debtors' securities.

13. Based on the foregoing and except as provided herein and in the exhibit hereto, to the best of my knowledge, information, and belief formed after reasonable inquiry, the Firm does not: (a) represent or hold any interest adverse to the Debtors or their estates with respect to the matters on which the Debtors have engaged the Firm; or (b) have any connection with the Debtors, any creditors or other Interested Parties, their respective attorneys and accountants, or the United States Trustee for the District of Delaware or any person employed by the Office of such United States Trustee.

14. Despite the efforts described above to identify and disclose the Firm's connections with the Interested Parties in these cases, because the Firm is an international firm with hundreds of attorneys in several offices, and because the Debtors have hundreds of creditors and other relationships, the Firm is unable to state with certainty that every client representation or other connection has been disclosed. If any new relevant facts or relationships are revealed or arise, the Firm will file a supplemental declaration, in accordance with Bankruptcy Rule 2014(a).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 3, 2009

By: /s/ Stephen J. Turanchik
Stephen J. Turanchik, Attorney
Paul, Hastings, Janofsky & Walker LLP