# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | <u>Objection Deadline:</u> **May 11, 2009 at 4:00 pm (ET)** |
|  | ) | <u>Hearing Date:</u> **Scheduled only if necessary** |
|  | ) |  |

## SECOND MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>MARCH 1, 2009 THROUGH MARCH 31, 2009</u>
### (All Amounts in Canadian Dollars)

This is a(n): <u>x</u> monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | <u>Fraser Milner Casgrain LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>March 5, 2009 (nunc pro tunc to January 26, 2009)</u> |
| Period for which Compensation And Reimbursement is sought: | <u>March 1, 2009 to March 31, 2009</u> |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN <u>$338,580.38 (Fees $322,457.50 Plus Taxes $16,122.88)</u> |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | CDN <u>$5,654.11 (Expenses $5,384.87 Plus Taxes $269.24)</u> |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Monthly Fee Application was 28.2 hours and the corresponding compensation is CDN. $<u>13,558.13</u> (including applicable Canadian taxes).

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc. (9769); Alteon Websystems International, Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

**SUMMARY OF LAWYERS AND PARALEGALS**
**RENDERING SERVICES DURING THE PERIOD**
**MARCH 1, 2009 THROUGH MARCH 31, 2009**
**(All Amounts in Canadian Dollars)**

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|-----------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 67.6 | $775.00 | $52,390.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 34.3 | $775.00 | $26,582.50 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 1.4 | $750.00 | $1,050.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 79.8 | $750.00 | $59,850.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 3.9 | $725.00 | $2,827.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 168.4 | $725.00 | $122,090.00 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 13.6 | $700.00 | $9,520.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 15.2 | $675.00 | $10,260.00 |
| Matthews, C.J. | Partner | Litigation | Ontario - 1986 | 2.3 | $650.00 | $1,495.00 |
| Dietrich, J.O. | Associate | Financial Restructuring | Ontario - 2004 | 4.3 | $480.00 | $2,064.00 |
| Barsky, J. | Associate | Taxation | Ontario - 2004 | 17.2 | $430.00 | $7,396.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 58.5 | $350.00 | $20,475.00 |
| Horrox, N.S. | Associate | Employment/Labour | Ontario - 2006 | 2.2 | $350.00 | $770.00 |
| North, A.R. | Student | Students | | 2.2 | $200.00 | $440.00 |
| John, H. | Student | Students | | 8.8 | $200.00 | $1,760.00 |
| O'Rahilly, Tracey | Paralegal | Business Law | | 42.3 | $175.00 | $7,402.50 |
| | | | | | CDN. | $326,372.50 |
| | Less Non-Working Travel Time Discount (50% of $7,830.00) | | | | | ($3,915.00) |
| **TOTAL** | | | | 522 | CDN. | $322,457.50 |

2

## COMPENSATION BY PROJECT CATEGORY
### MARCH 1, 2009 – MARCH 31, 2009
### (All Amounts in Canadian Dollars)

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 10.4 | $4,624.00 |
| FMC Fee Application/Monthly Billing Reports | 28.2 | $12,912.50 |
| Retention of Professionals | 7.3 | $4,752.50 |
| Creditors Committee Meetings | 40.8 | $27,575.00 |
| Court Hearings | 20.3 | $15,067.50 |
| Financial Reports and Analysis | 4.5 | $3,367.50 |
| DIP, Cash Collateral Usage and Exit Financing | 10.1 | $2,715.00 |
| Executory Contracts/License Agreements | 1.5 | $720.00 |
| Analysis of Pre-Petition Transactions | 16 | $11,194.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 92.2 | $68,175.00 |
| Lift Stay Action | 2.5 | $1,640.00 |
| Tax Issues | 15.6 | $8,353.50 |
| Labour Issues/Employee Benefits | 130.5 | $72,910.00 |
| Real Estate Issues/Leases | 6.8 | $4,905.00 |
| Asset/Stock Transaction/Business Liquidations | 23.5 | $16,420.00 |
| Travel | 10.8 | $7,830.00 |
| Intercompany Analysis | 28 | $17,968.50 |
| Canadian Proceedings/Matters | 60.9 | $40,177.50 |
| U.S. Proceedings/Matters | 12.1 | $5,065.00 |
| **Total** | **522.00** | **CDN. $326,372.50** |

**DISBURSEMENT SUMMARY**
**MARCH 1, 2009 – MARCH 31, 2009**
**(All Amounts in Canadian Dollars)**

| Taxable Disbursements | |
|---|---|
| Accommodations | $1,264.61 |
| Airfare/Travel | 245.44 |
| Library Computer Research | 667.73 |
| Long Distance Telephone Calls | 462.26 |
| Meals & Beverages | 268.06 |
| Parking | 47.80 |
| Photocopy Charges | 1,699.90 |
| Taxi Charges (Courier) | 729.07 |
| **Total Taxable Disbursements** | **$5,384.87** |
| Total GST | 269.24 |
| **Total Taxable Disbursements including Taxes** | **CDN. $5,654.11** |

4

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., <u>et al.</u>, [1] | : | Jointly Administered |
|  | : |  |
| Debtors | : | <u>Objection Deadline</u>: **May 11, 2009 at 4:00 pm** (ET) |
|  | : | <u>Hearing Date</u>: **Scheduled only if necessary** |

------------------------------------------------------------X

**SECOND MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP,**
**CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES**
**FOR SERVICES RENDERED DURING THE PERIOD FROM**
**MARCH 1, 2009 THROUGH MARCH 31, 2009**

Fraser Milner Casgrain LLP ("<u>FMC</u>" or the "<u>Applicant</u>"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc., <u>et al.</u>

(the "<u>Debtors</u>"), hereby submits its second monthly application (the "<u>Application</u>") pursuant to

(i) sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "<u>Local Rules</u>"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "<u>Administrative Fee Order</u>"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $338,580.38 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Alteon Websystems, Inc. (9769); Alteon Websystems International, Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$322,457.50 for fees and CDN. $16,122.88 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $5,654.11 (CDN. $5,384.87 for expenses and CDN. $269.24 for applicable Canadian taxes) or the period from March 1, 2009 through March 31, 2009 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.     JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.     BACKGROUND

2.     On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.     On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian
Court.

5.     On January 14, 2009, the High Court of Justice in England placed nineteen of the
Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the
"European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the
"Insolvency Proceedings") under the control of individuals from Ernst & Young LLC.

6.     On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102
of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US
Trustee") appointed the Committee. The Committee currently consists of five members, as
follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust
Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v)
The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed
in these chapter 11 cases.

7.     On March 5, 2009, this Court entered an order authorizing the retention of FMC
as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the
Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP
("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the
Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the
Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel,
and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.     On March 20, 2009, FMC filed its First Monthly Application for Interim
Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the
Period January 26, 2009 through February 28, 2009 (the "First Monthly Application"). In its

3

First Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $470,768.03 and the reimbursement of expenses in the amount of CDN. $7,847.68. On April 13, 2009, FMC filed a Certificate of No Objection with this Court regarding the First Monthly Application. Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and 100% of the expenses requested in the First Monthly Application.

### III.    RELIED REQUESTED

9.      By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $338,580.38 (CDN. $322,457.50 for fees and CDN. $16,122.88 for applicable Canadian taxes) representing 479.7 hours in professional services and 42.3 hours in paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services and paraprofessional services in the amount of CDN. $5,564.11 (including applicable Canadian taxes).

10.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $270,864.30 including applicable Canadian taxes) and 100% of its expenses (CDN. $5,654.11 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

11.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

12.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is

4

sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

13.    FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

14.    In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

15.    In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

16.    FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

5

17.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Case Administration

(Fees: CDN. $4,624.00 plus CDN. $231.20 taxes; Hours 10.4)

18.     This subject matter relates to services rendered to the Committee during the Compensation Period relating to the Committee's organizational and administrative needs. During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding and the Recognition Proceeding.  FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee.

19.  FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

### Canadian Proceedings

(Fees: CDN. $40,177.50 plus CDN. $2,008.88 taxes; Hours 60.9)

20.     During the Compensation Period, FMC reviewed and analyzed the amended and restated initial order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding.  FMC also reviewed and analyzed successive motions filed by the Canadian Debtors

6

in the Canadian Proceeding. In connection with such analyses, FMC conducted diligence on the subject matter of each application and motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtors' professionals to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, insured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular detailed memoranda and, as appropriate, conference calls with the Committee.

21.    During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to various relief requested by the Canadian Debtors. FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $12,912.50 plus CDN. $645.63 taxes; Hours 28.2)

22.    This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order.

### Retention of Professionals

(Fees: CDN. $4,752.50 plus CDN. $237.63 taxes; Hours 7.3)

23.     This subject matter relates to services performed by FMC lawyers and

paraprofessionals in connection with FMC's preparation of additional material filed in the Court

regarding additional parties involved in the U.S. Proceeding. In addition, FMC lawyers attended

on calls and reviewed documentation with respect to the proposed retainer of certain advisors by

the Canadian Debtors and in conjunction with that assessment, discussed issues regarding such

retention with Akin Gump and the Committee's professionals.

### Committee Meetings

(Fees: CDN. $27,575.00 plus CDN. $1,378.75 taxes; Hours 40.8)

24.     This subject matter relates to Committee matters, meetings and conference calls

with the Committee as a whole, and with the Committee's other legal and financial advisors.

FMC, together with the other Committee professionals, held a number of in-person and

telephonic meetings with the full Committee during the Compensation Period. In addition,

during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump,

other Committee professionals and with certain Committee members.

25.     Prior to its meetings with the Committee, FMC reviewed each pending matter

requiring the Committee's attention and all underlying documentation in connection therewith

which related to the Canadian Proceeding and Recognition Proceeding. Thereafter, FMC

discussed each of these matters with Akin Gump and the Committee's other professionals, the

Committee, as well as with individual Committee members. During these discussions, FMC

assisted the Committee in formulating a position with respect to various pending matters.

26.     Through meetings, telephone conferences, and correspondence, FMC has assisted

the Committee in fulfilling its statutory duties to make informed decisions regarding the various

8

issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same

relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as

well as regarding the prospects of reorganization.

### Court Hearings

(Fees: CDN $15,067.50 plus CDN. $753.38 taxes; Hours 20.3)

27.     This subject matter relates to preparation for and attendance at hearings and other

proceedings before the Canadian Court in respect of the Canadian Proceeding and the

Recognition Proceeding. FMC lawyers appeared at three hearings held before the Canadian

Court during the Compensation Period where they actively represented the Committee and

asserted the Committee's positions with respect to the matters being considered. FMC lawyers

prepared for the Court hearings by reviewing all applicable motions and applications filed with

the Canadian Court, including any responses thereto and consulted with Akin Gump, the

Committee's other professionals and the Canadian Debtors' advisors in order to formulate

appropriate strategies. FMC's participation at such hearings was necessary to protect the

interests of the Debtors' unsecured creditors.

### Analysis of Pre-Petition Transactions

(Fees: CDN. $11,194.00 plus CDN. $559.70 taxes; Hours 16.0)

28.     This subject matter relates to review and assessment of transactions entered into

by the Canadian Debtors prior to the Canadian Proceeding including certain inter-company

transactions between the Canadian Debtors. FMC attended on calls with the Canadian Debtors,

the Debtors and their advisors and reviewed reports and documentation and reported to Akin

Gump and the Committee.

29.  FMC lawyers reviewed certain contractual arrangements entered into by the

Canadian Debtors immediately prior to the commencement of the Canadian Proceeding with

9

certain of their suppliers, and researched questions of law and prepared memoranda for the

Committee and the Committee's professional advisors regarding certain transactions completed

prior to the commencement of the Canadian Proceeding.

## CCAA Order/Court-Ordered Charges/Canadian Analysis

(Fees: CDN. $68,175.00 plus CDN. $3,408.75 taxes; Hours 92.2)

30.    A significant portion of FMC's time during the Compensation Period was spent

reviewing, analyzing, and negotiating, on behalf of the Committee, certain amendments to the

terms of a proposed intercompany loan between Debtor, Nortel Networks Inc. ("NNI") as lender,

and the Canadian Debtor, NNL, as borrower and the related interim and final orders approving

such loan, including amendments to the Initial Order.

31.    On January 14, 2009, the Debtors filed a motion (the "Intercompany Loan

Motion") seeking, among other things, authority to enter into a $200 million revolving loan

agreement with NNI as lender, Canadian Debtor NNL, as borrower, and Canadian Debtor Nortel

Networks Technology Corporation ("NNTC") as guarantor (the "Intercompany Loan"). The

Intercompany Loan was purported to be secured only by a charge on the fee simple interest of

NNTC and leasehold interest of NNL in a research and development facility located at 3100

Carling Avenue, Ottawa, Canada (the "Carling Facility"), which charge ranks second in priority

pursuant to the Initial Order entered in the Canadian Proceeding. To the extent the proceeds

from the Carling Facility are insufficient to satisfy NNL's obligations under the Intercompany

Loan, the deficiency will be deemed an intercompany claim entitled to the security of an

intercompany charge, which charge ranks fifth in priority pursuant to the Initial Order entered in

the Canadian Proceeding. On January 15, 2009, the Court entered an interim order approving the

Intercompany Loan Motion (the "Interim Intercompany Loan Order"), and authorizing NNI to

10

lend $75 million to NNL under the Intercompany Loan. The Canadian Court granted complimentary relief to the Canadian Debtors in the Initial Order.

32.     During the Compensation Period, FMC spent considerable time reviewing and analyzing the Intercompany Loan and the Initial Order, in particular, the adequacy of the collateral package and the relative priority of the charges under the Initial Order purporting to secure the Intercompany Loan. In connection therewith, FMC, in concert with Akin Gump and the Committee's financial professionals, carefully analyzed the terms of the Initial Order in the Canadian Proceeding, to ensure that the rights and interests of unsecured creditors were not adversely impacted. As part of its analysis of the Intercompany Loan, FMC worked with Akin Gump to prepare detailed memoranda for the Committee summarizing the material terms of the Intercompany Loan, and the Initial Order, and held numerous conference calls with the full Committee to discuss the propriety of the terms upon which the Intercompany Loan was proposed and appropriate strategic options.

33.     Given that certain material terms of the Intercompany Loan and the Initial Order are prejudicial to the rights of unsecured creditors, FMC, along with Akin Gump and the Committee's other professionals engaged in extensive negotiations during the Compensation Period with the Canadian Debtors, the Debtors and the Monitor in an effort to modify the Intercompany Loan and the Initial Order in a manner acceptable to all constituents including preparation of amendments to the Initial Order and the loan agreement evidencing the Intercompany Loan. These negotiations resulted in Canadian Debtors agreeing to bring a motion before the Canadian Court to amend the Intercompany Loan  and to amend and restate the Initial Order to create new charge in favour of NNI against all present and future property and assets of each of the Canadian Debtors, in priority to be "Inter-company Charge" as defined and

11

contemplated by the Initial Order (such motion having been heard by the Canadian Court on April 7, 2009).

### Asset Sales

(Fees: CDN $16,420.00 plus CDN. $821.00; Hours 23.5)

34.    On February 27, 2009, the Debtors brought a motion before the Canadian Court to approve the sale of certain assets of the Debtors and the Canadian Debtors relating to the "Velocity business" (the "Velocity Transaction"). FMC reviewed various documentation in connection with the proposed completion of the Velocity Transaction including certain escrow terms relating to the purchase and sale proceeds, and provided advice to the Committee and the Committee's professional advisors relating to various Canadian legal matters.

### Tax Issues

(Fees: CDN. $8,353.50 plus CDN. $417.68 taxes; Hours 15.6)

35.    This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors. During the Compensation Period, FMC assisted Akin Gump in commencing an analysis of various tax issues affecting the Debtors and the Canadian Debtors, including the Canadian Debtors' transfer pricing system, and discussed numerous issues related thereto with the Committee's other professionals and the Canadian Debtors' advisors.

### Labor and Employee Benefits Issues

(Fees: CDN. $72,910.00 plus CDN. $3,645.50 taxes; Hours 130.5)

36.    This subject matter relates to services rendered by FMC in connection with the analysis of the Canadian Debtors' benefits plans and general labor matters. During the Compensation Period, FMC, together with Akin Gump and the Committee's other professionals, spent considerable time reviewing and analyzing the Canadian Debtors' proposed Key Employee

Incentive Plan (the "KEIP") and the proposed Key Employee Retention Plan (the "KERP") and the Nortel Debtors' proposed 2009 Annual Incentive Plan (the "AIP" and together with the KEIP and the KERP, the "Plans") in contemplation for motions brought before the Canadian Court on both March 6, 2009 and March 20, 2009. FMC lawyers attended on calls with the Committee and the Committee's other professionals and provided advice to the Committee in connection with a proposed employee incentive plans proposed by the Canadian Debtors, in the context of Canadian employment law.

37.    As a multinational corporation, the Debtors have significant pension obligations in numerous jurisdictions. As such, during the Compensation Period, FMC lawyers, together with Akin Gump attorneys and the Committee's European counsel, spent significant time analyzing the pension obligations of the Canadian Debtors and their affiliates, as well as the relative priorities and treatment of those liabilities in the Insolvency Proceedings. At the request of the Committee, FMC lawyers spent time during the Compensation Period reviewing certain guarantees delivered by certain of the Canadian Debtors in connection with pension obligations in other jurisdictions, and prepared a memorandum outlining matters relating to Canadian pension law including the priority of Canadian pension liens.

### Real Estate Issues/Leases

(Fees: CDN. $4,905.00 plus CDN. $245.25 taxes; Hours 6.8)

38.    FMC lawyers spent time during the Compensation Period liaising with counsel for the Canadian Debtors in connection with matters relating to the Carling Facility and issues affecting the value and potential saleability of such real property. FMC lawyers prepared a memorandum to the Committee in connection with various matters relating to the Carling Facility and attended on a conference call with the Canadian Debtors and a third party appraiser,

13

relating to the Carling Facility and the strategy of the Canadian Debtors regarding the disposition of certain of its real property in Canada.

### Intercompany Analysis

(Fees: CDN. $17,968.50 plus CDN. $898.43 taxes; Hours 28.0)

39.     This subject matter relates to legal services rendered by FMC relating to inter-company transactions between the Canadian Debtors, the Debtors and other "Nortel" entities in other countries, including without limitation relating to the transfer pricing program between such Nortel entities.  During the Compensation Period, FMC lawyers attended on various conference calls with the Committee, the Committee's professional advisors, the Canadian Debtors, the financial advisors to the Canadian Debtors, the legal counsel of the Canadian Debtors and the Debtors and other applicable parties regarding the transfer pricing program, inter-company payments both before and after the commencement of the Proceeding and the Canadian Proceeding, and on going payments between the Canadian Debtors and the Debtors. FMC lawyers also researched Canadian case law in connection with such inter-company analysis and reviewed documentation received from the Canadian Debtors and their financial advisors regarding the transfer pricing program.  FMC lawyers also attended on calls with Akin Gump and the lawyers for the Canadian Debtors and the Debtors regarding potential allocation issues relating to contemplated asset transactions.

### V.      ALLOWANCE OF COMPENSATION

40.     The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered

14

to the Committee were performed efficiently, effectively and economically, and the results

obtained to date have benefited not only the members of the Committee, but also the unsecured

creditor body as a whole and the Debtors' estates.

41.     The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

42.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and

15

(F) whether the compensation is reasonable based on the customary
compensation charged by comparably skilled practitioners in cases other
than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

43.     The total time spent by FMC lawyers and paraprofessionals during the

Compensation Period was 522 hours. The work involved, and thus the time expended, was

carefully assigned in light of the experience and expertise required for a particular task.

44.     As shown by this application and supporting documents, FMC spent its time

economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a

schedule of the hours expended by the lawyers and paraprofessionals during the Compensation

Period, their normal hourly rates, and the value of their services. In addition, FMC incurred

actual out-of-pocket expenses in connection with the rendition of the professional services to the

Committee in the sum of CDN. $5,654.11 (CDN. $5,384.87 for expenses and CDN. $269.24 for

applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

45.     The disbursements and expenses have been incurred in accordance with FMC's

normal practice of charging clients for expenses clearly related to and required by particular

matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

46.     FMC's billing rates do not include charges for photocopying, telephone and

facsimile charges, computerized research, travel expenses, "working meals," secretarial

overtime, postage and certain other office services, since the needs of each client for such

services differ. FMC believes that it is fairest to charge each client only for the services actually

16

used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

47.    No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

48.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

    **WHEREFORE**, FMC respectfully requests that this Court:

    (a)    approve the allowance of CDN $338,580.38 (CDN. $322,457.50 for fees and CDN. $16,122.88 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from March 1, 2009 through and including March 31, 2009;

17

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period March 1, 2009 through and including March 31, 2009 in the amount of CDN. $5,654.11 (CDN. $5,384.87 for expenses and CDN. $269.24 for applicable Canadian taxes); and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $276,518.41, which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          April 20, 2009

FRASER MILNER CASGRAIN LLP

By: _____
    Michael J. Wunder (*pro hac vice*)
    A Member of the Firm

Suite 3900
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2
(416) 863-4511
Canadian Counsel to the Official Committee of
Unsecured Creditors

18