IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                Debtors. : Jointly Administered
:
: **Hearing date: May 20, 2009, 10:00 AM (ET)**
: **Objections due: May 13, 2009, 4:00 PM (ET)**
------------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING CERTAIN DEBTORS TO FILE UNDER SEAL CERTAIN PORTIONS OF THEIR SCHEDULES AND RELATED CERTIFICATES OF SERVICE

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, authorizing NNI, Nortel Networks Capital Corporation, Alteon WebSystems, Inc. (n/k/a Nortel Altsystems Inc.) and Nortel Networks International Inc. (the "Active Debtors") to file certain portions of their schedules and any related certificates of service under seal; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Jurisdiction**

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested herein are section 107(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9018-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

**A.     Introduction**

3.     On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.     The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

---

[2]     The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7. On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142). An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

**B.     Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

**Relief Requested**

9.      By this Motion, the Debtors seek an order pursuant to section 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Active Debtors to file under seal the portions of their schedules and related certificates of service describing their customer contracts and the identity of their customers (the "Customer Information").[5]

10.     Pursuant to section 107(a) of the Bankruptcy Code, Bankruptcy Rule 1007 and Local Rule 1007-1, the Debtors are required to file and make available certain schedules disclosing their creditors and executory contracts. On March 5, 2009, this Court entered an order establishing deadlines on or before which the Debtors were required to file these schedules [D.I. 440]. Subsequently, in accordance with this order, on April 20, 2009, certain debtors in these proceedings without active operations filed their schedules. These debtors included Alteon WebSystems International, Inc. (n/k/a Nortel Altsystems International Inc.), Xros, Inc., Sonoma Systems, Qtera Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc. (the "Inactive Debtors"). On or before May 29, 2009, the Active Debtors will file their schedules in compliance with this Court's March 5, 2009 order. The Debtors

---

[4]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[5]     Such certificates of service would include certificates relating to the service of documents to the customers listed on the Debtors' schedules, including without limitation any notice of the general bar date for filing claims established in these cases (the "Customer Certificates of Service").

4

anticipate that these schedules will include information concerning the Active Debtors' customers and their executory contracts with these customers.

11.     The identity of the Active Debtors' customers is one of the primary assets of their estates. If the Customer Information were to become publicly available, the Active Debtors would risk unfair competition with respect to business that the Debtors have fought extremely hard to procure and service over the years. Competitors of the Active Debtors could easily use the Customer Information to solicit each of the customers of the Active Debtors, undermining the Active Debtors' relationship with their customers during this crucial period. Accordingly, disclosure of the Active Debtors' Customer Information could undermine the Debtors' reorganization effort.

12.     Therefore, the Debtors seek leave to file redacted versions of their schedules and any related certificates of service without the Customer Information on the publicly available court docket for these proceedings. The Debtors propose to file an unredacted copy of their schedules and the Customer Certificates of Service under seal with the Clerk's Office pursuant to section 107(b) of the Bankruptcy Code and Local Rule 9018-1. Furthermore, the Debtors ask the Court to direct that the redacted Customer Information and the Customer Certificates of Service shall remain under seal and confidential and not be made available to anyone without the Debtors' prior consent. However the Debtors shall provide access to the unredacted copy of their schedules and the Customer Certificates of Service to the U.S. Trustee and counsel to the Committee.

## Basis for Relief

13. The relief requested by the Debtors is squarely authorized under the Bankruptcy Code. Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

14. Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

15. This Court has defined "commercial information" in the context of section 107(b) as follows:

> Commercial information is information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'

In re Alterra Healthcare Corp., 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)). This Court has also explained that section 107(b)'s exception to the usual public disclosure mandated by section 107(a) is "intended to avoid 'affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" In re MUMA Services Inc., 279 B.R. 478, 484 (Bankr. D. Del. 2002) (citing In re Itel Corp., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

16. Since the Customer Information of the Active Debtors is "commercial information" within the ambit of section 107(b), the Court should enter an order permitting the Active Debtors to file under seal the Customer Information that must be included in their schedules.

17. As explained above, the Active Debtors will be irrevocably harmed if the Customer Information is made public and their competitors are thereby afforded the unfair advantage of using this information to solicit the Active Debtors' many customers. Since the release of the Customer Information would jeopardize the ongoing operations of the Active Debtors by threatening customer relationships built up over many years, it would undermine the Debtors' restructuring process and impair the value of the Active Debtors' estates.

18. Recognizing the importance of protecting crucial customer information, this Court and other courts have frequently granted similar relief in other cases. See, e.g., In re Muzak Holdings LLC, No. 09-10422 (KJC) (Bankr. D. Del. Mar. 17, 2009) (order authorizing debtors to redact customer information from schedules and file unredacted schedules under seal); In re Maxide Acquisition, Inc., No. 05-10429 (MFW) (Bankr. D. Del. June 21, 2005) (same); In re Cable & Wireless USA, Inc., No. 03-13711 (CGC) (Bankr. D. Del. Dec. 22, 2003) (same); In re Peregrine Systems, Inc., No. 02-12740 (JKF) (Bankr. D. Del. Sept. 24, 2002) (same); In re Frontier Group, 256 B.R. 771, 774-75 (Bankr E.D. Tenn. 2000) (approving filing of sealed customer list because "[t]he mandatory language of § 107(b) requires a court to protect confidential commercial information").

## Notice

19. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of

Delaware; (ii) the Committee; and (iii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

20. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 4, 2009  
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley  
Lisa M. Schweitzer  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Ann Cordo
_____
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*