**EXHIBIT B**

COURT FILE NO.: 09-CL-7950
DATE: 20090501

**SUPERIOR COURT OF JUSTICE – ONTARIO**
**(COMMERCIAL LIST)**

RE:     IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

                                                        Applicants

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

BEFORE:   MORAWETZ J.

COUNSEL:  Derrick Tay and Jennifer Stam for Nortel Networks Corporation, et al

          Sara Ann Wilson for Flextronics Telecom Systems Ltd.

          Lyndon Barnes for Directors of Nortel Networks Corporation & Nortel Networks Limited

          Jay Carfagnini and C. Armstrong for the Monitor, Ernst & Young Inc.

          Aubrey Kauffman for Export Development Canada ("EDC")

          S. R. Orzy for the Noteholder Committee

          Alex MacFarlane for the Official Committee of Unsecured Creditors

Page: 2

Eliezer Karp for Nortel Networks Terminated Canadian Employees

K. Rosenberg for the Superintendent of Financial Services

Susan Philpott for Nortel Networks Former Employees

David Ullman for Verizon Communications Inc.

**HEARD &**
**RELEASED: April 28, 2009**

## ENDORSEMENT

[1]  On April 28, 2009, the Record was endorsed: "The requested orders in respect of Chubb Insurance and the Stay Extension are granted in the form presented. The orders have been signed. Brief reasons will follows."

[2]  These are those reasons.

[3]  The Applicants brought this motion for the following relief:

  (i)  approval of the second, third and fourth extensions to the Interim Group Supplier Protocol Agreements ("GSPA");

  (ii)  authorization and approval of the extension of the EDC Support Facility;

  (iii)  amendments to the Initial Order relating to the EDC Charge;

  (iv)  extension of the Stay Period to July 30, 2009;

  (v)  an order authorizing and permitting Chubb Insurance Company of Canada ("Chubb") to pay for the Defence Costs and other Loss incurred by the Insureds to the extent that such Defence Costs and other Loss are covered under the EPP/Executive Liability and Indemnification Policy (the "Policy") and to do so without any further order of the court.

[4]  The Applicants filed the affidavit of John Doolittle sworn April 24, 2009 in support of the motion.

[5]    The Monitor filed its Eighth Report (the "Report") also dated April 24, 2009 and recommended that the requested relief be granted. The Report contains the Cash Flow Forecast for the period from April 12, 2009 to July 31, 2009.

[6]    The motion was not opposed.

**Group Supplier Protocol Agreement**

[7]    The Applicants and the Administrators (as defined in Mr. Doolittle's affidavit) entered into the Interim GSPA, for a period of 30 days, which, among other things, allowed the Applicants to continue to trade in the ordinary course with the EMEA Entities (through the Administrators). The first extension of the Interim GSPA was approved on February 10, 2009. Since that time, the parties have entered into the second, third and fourth extensions to the Interim GSPA which extended the Interim GSPA to May 5, 2009.

[8]    I am satisfied that the extension of the GSPAs has contributed to the stabilization of the interconnected business of Nortel and it is appropriate to retroactively approve the second, third and fourth extensions to the Interim GSPA.

**EDC**

[9]    On February 10, 2009, EDC and Nortel Networks Limited ("NNL") signed the Amended and Restated Short Term Support Agreement which extended the availability of the EDC Facility until May 1, 2009. The Monitor reports that this post-filing EDC Facility of up to $30 million is secured by a priority charge on the Applicants' assets as provided for in the Second Amended and Restated Initial Order (the "EDC Charge"). EDC has since agreed to extend the Amended and Restated Short Term Support Agreement to July 30, 2009 and to amend its terms. The Monitor further reports that the amended agreement clarifies that the EDC Charge does not apply to bonds issued post filing as the result of the renewal of a bond issued pre-filing except for the renewal of a bond issued pre-filing that was completed during the period from January 14, 2009 to April 14, 2009. The Monitor further reports that the EDC Charge applies to all other new bonds issued post-filing.

[10]   I am satisfied that the negotiated arrangements are reasonable in the circumstances and they are approved. Paragraph 33 of the Initial Order is to be deleted and replaced with the language set forth in the draft order.

**Chubb**

[11]   Mr. Doolittle states in his affidavit that on January 29, 2009, Chubb advised certain former Nortel officers that it would be unable to continue to pay Defence Costs or other Loss (as defined in the Policy) incurred by them until such time as an order was obtained confirming that any such payments would not violate any stay arising from the Initial Order. Although the Applicants do not necessarily agree that specific relief is required, the Applicants do not object to this requested order. The order is granted. I decline to comment as to whether the specific relief is, in fact, required.

[12]   The order relating to the Chubb issue has been signed.

**Extension of the Stay**

[13]   The affidavit of Mr. Doolittle summarizes events that have transpired since filing and the Report provides details on the progress of restructuring initiatives.

[14]   I am satisfied that the Applicants continue to diligently pursue the restructuring of their global operations and that they have made progress with several initiatives. I am satisfied that the Applicants have undertaken a comprehensive operational and strategic review of their business units and legal entities around the world and are engaged with their major stakeholder groups in respect of various restructuring alternatives.

[15]   An updated Cash Flow Forecast is attached to the Report. One aspect of the Forecast requires, in my view, specific comment. The Monitor has noted that Nortel conducts its business through global business units resulting in a high degree of inter-dependence among the various legal entities in different countries around the world. At paragraph 47, the Monitor notes that a significant feature of this inter-dependence is the Transfer Pricing Agreement (the "TPA") which provides for the provision of goods and services among various Nortel entities and allocates profit or loss based on each relevant Nortel entity's relative share of corporate overhead costs and research and development. The Monitor reports that at this time, the Applicants continue to fund significant corporate overhead and research and development costs that historically have been funded by the receipt of TPA payments. The Monitor notes that the receipt of TPA payments by the Applicants is required to fund these ongoing costs during the Stay Extension and beyond.

[16]   At paragraph 50, the Monitor notes that the Applicants, NNI, one of the U.S. Debtors, and certain of the EMEA Entities, through their U.K. Administrators, have recently come to a framework agreement which will, in principle, result in net TPA payments to the Applicants from NNI and a forbearance by NNUK of the enforcement of its purported right to receive certain payments under the TPA, which will result in net TPA payments to the Applicants from NNI for the 9-month period ending September 30, 2009 in the approximate amount of $157 million. The Monitor reports that this agreement is being documented and, once approved by the U.K. Administrators and the relevant boards of directors, the Applicants and NNI intend to apply to this court and to the U.S. Bankruptcy Court for a joint hearing to approve the agreement. It is expected that this joint hearing will take place on June 1 and 2, 2009. The Monitor also states that the receipt of the assumed TPA payments is necessary in order for the Applicants to have adequate cash resources to fund operations for the proposed Stay Extension period.

[17]   I am prepared to consider the Stay Extension request based on the Cash Flow Forecast, which is based, in part, on the assumption that the TPA payments will be received on the basis outlined in the framework agreement.

[18]   Having reviewed the record and having heard submissions, including the reservation of rights of the Official Committee of Unsecured Creditors for Nortel Networks Inc. and others, I am satisfied that the Applicants have acted, and are acting, in good faith and with due diligence and that circumstances exist that make the Stay Extension request to July 30, 2009 appropriate.

Page: 5

[19]  An order shall issue to give effect to the foregoing and that order has been signed.

                                                                             MORAWETZ J.

**DATE:**        **Typed Version Released May 1, 2009**