IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | Hearing Date: June 11, 2009 at 2:00 p.m.<br>Objection Deadline: May 27, 2009 at 4:00 p.m. |

**MOTION OF PHOENIX TELECOM SOLUTIONS, INC. PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF OF PREPETITION AMOUNTS OWED BY AND BETWEEN PHOENIX TELECOM SOLUTIONS, INC. AND DEBTOR NORTEL NETWORKS, INC.**

Phoenix Telecom Solutions, Inc. ("Phoenix"), by and through its counsel Eckert Seamans Cherin & Mellott, LLC and Finlayson, Augustini & Williams LLP, hereby moves this Court pursuant to sections 362(d) and 553 of title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay in order to effectuate a setoff of prepetition amounts owing and due between Phoenix and Nortel Networks, Inc. ("NNI"):

**PRELIMINARY STATEMENT**

1. As of January 14, 2009 (the "Petition Date"), (a) NNI owed Phoenix the sum of $150,400 and (b) Phoenix owed NNI the sum of $92,948.61. The amounts and validity of these mutual prepetition debts are undisputed. NNI has signed a letter agreement confirming these amounts and, subject to this Court's approval, consenting to Phoenix setting off the mutual debts.

2. Phoenix seeks an Order from this Court granting relief from the automatic stay to

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are Nortel Networks", Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc.(9769), Alteon Web Systems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Ind. (5722), Nortel Networks Applications Management Solutions, Inc. (2846), Nortel Networks Optical Components", Inc. (3545), Nortel Networks HPOCS, Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International, Inc. (0358), Northern Telecom International Inc. (6286), and Nortel Networks Cable Solutions Inc. (0567).

allow Phoenix to setoff the prepetition amounts due and owing from Phoenix against the prepetition amounts owed from NNI. After application of its setoff rights, Phoenix will be left with a prepetition remainder claim in the amount of $57,451.39 against NNI.

## JURISDICTION AND STATUTORY PREDICATES

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory relief sought in this matter is predicated upon sections 362 and 553 of the Bankruptcy Code.

## BACKGROUND

### Chapter 11 Filing for NNI

4. On the Petition Date, the Debtors, including NNI, commenced these cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Pursuant to Order of this Court, the Chapter 11 Cases are being jointly administered (D.I. 36).

5. On January 26, 2009, the United States Trustee established the Committee of Unsecured Creditors in the Chapter 11 Cases (D.I. 141-142).

6. On February 5, 2009, the Court entered its Order Clarifying Relief Granted Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Honor Prepetition Obligations to the Customers (the "Customer Obligation Order") (D.I. 166). The Court has ordered that "all rights of Debtors' customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors." Customer Obligation Order at ¶ 5.

### The Mutual Prepetition Debts

7. Phoenix is a provider of telecommunications equipment and services to telephone companies and manufacturers.

8. On or about August 6, 2008, Phoenix and NNI entered into a Master Services

Agreement (the "Master Services Agreement").[2] Under the Master Services Agreement, Phoenix was hired to perform contracted technical refurbishment services for one of Nortel's key accounts, AT&T. The work performed included deployment of a technical team and technical tools to St. Louis, Missouri, to test and build 550 Nortel GSM base stations. The team sent consisted of eight (8) people.

9. As of the Petition Date, Nortel owed Phoenix approximately $150,400 for services performed under the Master Services Agreement. A schedule of the applicable unpaid Invoices from Phoenix to NNI along with copies of the Invoices is attached to this Motion as Exhibit A.

10. Phoenix also has a number of agreements (the "Consignment Agreements") in place with NNI to remarket excess and obsolete Nortel products and multi-vendor products that they receive back on trade from its customers. As of the Petition Date, Phoenix had an outstanding balance with NNI in the amount of $92,948.61 under the Consignment Agreement. This balance is comprised of forty-six (46) separate Purchase Orders that Phoenix placed with NNI for Nortel's share of the proceeds collected from the sales of remarketed Nortel and other OEM equipment. A schedule of the applicable Purchase Orders under the Consignment Agreements is attached to this Motion as Exhibit B.

11. Under the Consignment Agreements, Phoenix and Nortel split the gross proceeds 50/50, minus expenses associated with the sale of the products. Phoenix's role in this program is the sale and marketing of equipment, inventory management services, testing services, warranty management and billing and collections. Approved expenses deducted from the agreement are freight costs, repair, miscellaneous parts and engineering services.

12. All Invoices issued under the Master Services Agreement and Purchase Orders under the Consignment Agreements were issued from and to NNI.

---

[2] The general terms and conditions governing the relationship between Phoenix and NNI are set forth in the Master Services Agreement. However, the Master Services Agreement contains a confidentiality clause. For this reason, Phoenix is not attaching the Master Services Agreement to this Motion. The specific terms of the Master Services Agreement are not relevant to establish Phoenix's setoff rights.

**NNI's Consent to the Setoff**

13. On April 6, 2009, NNI and Phoenix entered into a letter agreement (the "Consent Letter") in which NNI confirmed the mutual prepetition debts between the parties and agreed that, subject to this Court's approval, Phoenix was entitled to setoff of the prepetition amount it owes to NNI ($92,948.61) against its prepetition unsecured claim against NNI ($150,400.00). NNI agreed that Phoenix could attach the Consent Letter to any Motion for Relief from the Automatic Stay filed in the Chapter 11 Cases and could rely on the Consent Letter to establish NNI's consent to the proposed setoff and remainder claim. A true and accurate copy of the Consent Letter is attached to this Motion as Exhibit C.

**Administrative Freeze**

14. As stated in the Consent Letter, Phoenix placed an "administrative freeze" on payment of the prepetition amount due to NNI.

## RELIEF REQUESTED

15. Phoenix seeks relief from the automatic stay under section 362 of the Bankruptcy Code to affect setoffs of mutual prepetition obligations between NNI and Phoenix. Relief from the automatic stay would allow NNI and Phoenix to reconcile their mutual, undisputed prepetition obligations in a manner contemplated by the Bankruptcy Code and under applicable state law.

## BASIS FOR RELIEF

**Phoenix Holds a Valid Setoff Right against NNI**

16. Section 553 of the Bankruptcy Code provides in pertinent part that the Bankruptcy Code: "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ...." 11 U.S.C. § 553; *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (holding that Bankruptcy Code Section 553(a) "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy").

17. Preserving the right of setoff in bankruptcy is intended to avoid "the absurdity of making A pay B when B owes A." *Id.* (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). The right of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance." *Darr v. Muratore*, 8 F.3d 854, 860 (1st Cir. 1993) (citing to *Cohen v, The Savings and Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.)*, 896 F. 2d 54 (3d Cir. 1990)).

18. The right to setoff claims "is an established part of our bankruptcy laws ... [and] should be enforced unless compelling circumstances ... require otherwise." *United States v. Offord Fin., Inc. (In re Medina)*, 205 B.R. 216, 223 (B.A.P. 9th Cir. 1996) (internal citations and quotations omitted); *see also Bohack Corp. v. Borden, Inc.*, 599 F. 2d 1160, 1165 (2d Cir. 1979).

19. A creditor may exercise its nonbankruptcy setoff rights pursuant to section 553 of the Bankruptcy Code where the creditor shows (a) the debtor owes the creditor a prepetition debt; (b) the creditor owes the debtor a prepetition debt; (c) the debts are mutual; and (4) the debts owed to both the creditor and debtor are enforceable and valid. 11 U.S.C. § 553(a); *see, e.g., Ames v. Dehart (In re Ames)*, 195 F. 3d 177, 182 (3d Cir. 1999); *In re Czyzk*, 297 B.R. 406, 409 (3d Cir. 2003).

20. Section 553 "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case under [the Bankruptcy Code] against a claim against the debtor that arose before commencement of the case." *See id.* Accordingly, appropriate state law setoff rights apply to creditors' assertions of setoff. 11 U.S.C. § 553(a); *see also In re Garden Ridge Corp.*, 338 B.R. 627, 632 (Bankr. D. Del. 2006) (holding that set-off rights are determined according to applicable state law); *Scherling v. Hellman Elec. Corp (In re Westchester Structures, Inc.)*, 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995); *U.S. ex rel I.R.S. v. Norton*, 717 F 2d 767 (3d Cir. 1983).

21. Under the terms of the agreement, New York law governs the setoff rights of the parties. *See* NEW YORK DEBTOR & CREDITOR LAW § 151; *see also In re Westchester Structures,*

*Inc.*, 181 B.R. at 740 (applying New York law on setoffs to recognize not only statutory rights under section 151 but also a creditor's equitable rights to setoff). Under Section 151 of the New York Debtor and Creditor Law, upon the filing of a petition in bankruptcy, a party to whom such bankruptcy-filing party owes money shall have the right to:

> Set off and apply against any indebtedness, whether matured or unmatured, of such creditor to such debtor, any amount owing from such debtor to such creditor, at or at any time after, the happening of [the filing of a petition in bankruptcy], and the aforesaid right of set off may be exercised by such debtor against such creditor or against any trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, receiver or execution, judgment or attachment creditor of such creditor, or against anyone else claiming through or against such creditor or against any trustee in bankruptcy, debtor in possession, assignee for the benefit of creditors, receiver or execution, judgment or attachment creditor, notwithstanding the fact that such right of set off shall not have been exercised by such debtor prior to [the filing of a petition in bankruptcy].

NEW YORK DEBTOR & CREDITOR LAW § 151

22. Phoenix has valid and enforceable state-law bases under the Master Services Agreement and Consignment Agreements pursuant, *inter alia*, to the applicable New York law to effectuate a setoff. Moreover, nothing in the Master Services Agreement or Consignment Agreements limits or restricts any rights of setoff of any party whatsoever.

23. Phoenix also meets the requirements under section 553 of the Bankruptcy Code.

24. First, both the amounts due to NNI and NNI's obligations to Phoenix are comprised entirely of amounts arising prepetition and due for prepetition claims and debts.

25. Second, no dispute exists with respect to any of the mutual debts. Accordingly, these amounts are fully valid and enforceable.

26. Last, the parties' debts here are "mutual," and therefore appropriate to be setoff. Mutuality is not defined by the Bankruptcy Code. *In re NTG Indus., Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989). Pursuant to current New York law, "debts are mutual when they are due to and from the same persons in the same capacity." *In re Westchester Structures, Inc.*, 181 B.R. at 740 (applying New York law to determine whether mutuality exists); *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996) (citing 4 COLLIER ON BANKRUPTCY ¶ 553.04[2] (15th ed. 1995)).

27. In sum, applicable nonbankruptcy law permits Phoenix to exercise its statutory and equitable setoff rights against NNI. NNI and Phoenix owe each other mutual, countervailing debts that arose before the Petition Date. Thus, this Court should lift the automatic stay to permit Phoenix to exercise its setoff rights.

**Relief from the Automatic Stay is Appropriate to Allow Phoenix to Effectuate a Setoff**

28. A party seeking to assert its setoff rights must obtain relief from the automatic stay imposed by Section 362(a)(7) of the Bankruptcy Code prior to actually applying the asserted setoff. *See In re Academy Services, Inc.*, 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988). By this Motion, Phoenix seeks to comply with this procedural requirement.

29. Setoff in the instant case is appropriate and needed for Phoenix and NNI to move forward with their independent operations. As noted, section 362(a)(7) does not alter a creditor's setoff rights. *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F. 2d at 61; H.R. Rep. No. 595, 95th Cong. 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong. 2d Sess., at 51 (1978). Instead, it stays enforcement pending an examination of the respective parties' rights. *Id.* Following a grant of stay relief, a creditor may then exercise its rights of setoff, that remain unimpaired by section 362(a)(7). *In re NTG Indus., Inc.*, 103 B.R. at 197. The automatic stay under section 362(a)(7) does not alter a creditor's substantive rights of setoff, it only delays the exercise or application of those setoff rights. *See In re Luz Intl Ltd.*, 219 B.R. 837, 841 (B.A.P. 9th Cir. 1998).

30. Here, Phoenix's right to setoff the prepetition amount it owes to NNI against its prepetition unsecured claim against NNI is undeniable – the obligations being setoff are prepetition, undisputed, and mutual. Such obligations are proper to be setoff pursuant to each of section 553 of the Bankruptcy Code, section 151 of the New York Creditor and Debtor Law, and Phoenix's equitable rights. The setoff requires no payment from any of the Debtors. The result is a netting effect, reducing debt owed by NNI to Phoenix.

31. Granting relief from stay to allow Phoenix to enforce its setoff rights does not, and will not, impair the Debtors' restructuring and reorganization efforts. Such stay relief also

does not prejudice the rights of other creditors/customers to apply similar setoff rights. The Customer Obligation Order preserved these rights for customers, including Phoenix. Application of these rights is appropriate at this time. Cause exists under section 362(d)(1) to grant relief from the automatic stay to Phoenix, for the limited purpose of effectuating its valid prepetition setoff rights.

WHEREFORE, Phoenix respectfully requests that the Court enter an Order (a) granting Phoenix relief from the automatic stay to effect a setoff of mutual obligations between NNI and Phoenix, and (b) granting Phoenix such other and further just and proper relief

Dated: May 7, 2009

Respectfully submitted,
ECKERT SEAMANS CHERIN
& MELLOTT, LLC


/s/ Ronald S. Gellert
Ronald S. Gellert (DE Bar 4259)
300 Delaware Avenue, Suite 1210
Wilmington, DE 19801
Telephone: (302) 425-0430
Facsimile (302) 425-0432
rgellert@eckertseamans.com

-and-

Jesse S. Finlayson (CA SBN 179443)
Finlayson, Augustini & Williams LLP
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Telephone: (949) 759-3810
Facsimile: (949) 759-3812
jfinlayson@faw-law.com

*Counsel for Phoenix Telecom Solutions*