Court File No. 09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")**

**NINTH REPORT OF THE MONITOR
DATED MAY 13, 2009**

**INTRODUCTION**

1.  On January 14, 2009, Nortel Networks Corporation ("NNC" and collectively with all its
    subsidiaries, "Nortel" or "Company"), Nortel Networks Limited ("NNL"), Nortel
    Networks Technology Corporation ("NNTC"), Nortel Networks International
    Corporation ("NNIC") and Nortel Networks Global Corporation ("NNGC") filed for and
    obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA").
    Pursuant to the Initial Order of this Honourable Court dated January 14, 2009, as
    amended and restated (the "Initial Order"), Ernst & Young Inc. ("EYI") was appointed as
    the Monitor of the Applicants (the "Monitor") in the CCAA proceeding.

2.  Nortel concurrently filed voluntary petitions under Chapter 11 of the U.S. Bankruptcy
    Code (the "Code") in the U.S. Court on January 14, 2009, for Nortel Networks Inc.
    ("NNI") and certain of its U.S. subsidiaries (the "U.S. Debtors").

3.  Nortel Networks UK Limited ("NNUK") and certain of its subsidiaries located in EMEA
    (together the "EMEA Filed Entities") were granted Administration orders (the "U.K.

- 2 -

Administration Orders") by the English High Court (the "U.K. Court") on January 14, 2009.  The U.K. Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Filed Entities, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed.

4.  On January 20, 2009, Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (together "NN Israel") were granted Administration orders by the court in Israel (the "Israeli Administration Orders").  The Israeli Administration Orders appointed representatives of Ernst & Young LLP in the U.K. and Israel as Administrators of NN Israel and provided a stay of NN Israel's creditors which, subject to further orders of the Israeli Court, remains in effect during the Administration.

**PURPOSE**

5.  The purpose of this Ninth Report of the Monitor ("Ninth Report") is to provide information regarding the Applicants' motion seeking approval of a sale of the Westwinds Business Complex in Calgary, Alberta ("Westwinds") and the vesting of the Westwinds' lands in the purchaser free and clear of all encumbrances, and to provide the Monitor's support for the Westwinds sale.

**TERMS OF REFERENCE**

6.  In preparing this Report, EYI has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company, discussions with management of Nortel, and various property and marketing reports produced by DTZ Barnicke ("DTZ") and Altus Group Limited.  EYI has not audited, reviewed, or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, EYI expresses no opinion or other form of assurance on the information contained in this Ninth Report.

7.  Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

8.     Capitalized terms not defined in this Ninth Report are as defined in the Affidavit of John Doolittle (the "Doolittle Affidavit") sworn on January 14, 2009, or previous reports of the Monitor.

## GENERAL BACKGROUND

9.     Nortel is fundamentally a technology company that designs, develops and deploys communication products, systems, and solutions to its carrier and enterprise customers around the globe. Its principal assets include its people, the intellectual property derived and maintained from its R&D activities, its customers and other significant contracts and agreements.

10.    Nortel conducts its global business through four reportable business unit segments: Carrier Networks ("CN"), Enterprise Solutions ("ES"), Metro Ethernet Networks ("MEN"), and the LG-Nortel joint venture.   The revenues and assets of each of the business units are distributed among the various Nortel legal entities and joint ventures around the world.

## THE WESTWINDS BUSINESS COMPLEX

### Background

11.    Westwinds is wholly owned by NNL.

12.    Located in the northeast section of the City of Calgary, Westwinds comprises a Class A office building, a technology manufacturing and R&D facility, and 8.9 acres of developable reserve land, contained on three separate and adjoining properties described as follows:

- Westwinds Systems House (the "Systems House Facility"), 4401 Westwinds Dr., N.E., comprising a manufacturing building built in 1995, with a gross building area of 375,535 square feet and total rentable area of 336,541 square feet (as certified by Stantec Architectural Ltd.) situated on 38.7 acres of land;

- 4 -

- Westwinds Innovation Centre (the "Innovations Centre"), 5050-40th St. N.E., comprised of an office building built in 2001, with a gross building area of 213,940 square feet and total rentable area of 208,549 square feet (based on floor plans) situated on 11.3 acres of land; and

- Westwinds Innovations Centre II, 5200-40th St. N.E., comprised of land for future development totalling 8.9 acres.

13.  The Westwinds buildings were originally constructed to be Nortel's regional headquarters. As the Westwinds buildings were constructed, Nortel consolidated operations from other leased facilities in the Calgary area into Westwinds.

14.  With the downturn in the telecommunications industry, the utilization of Westwinds has been in decline since the early 2000's.

15.  In February 2006, as part of an outsourcing agreement with Flextronics for Nortel's manufacturing, Flextronics leased the entire Systems House Facility and all remaining Nortel employees were moved out of the Systems House Facility and consolidated into the Innovations Centre.

16.  The Flextronics lease agreement was to expire on June 30, 2015, but the parties have agreed to terminate the lease as of May 30, 2009, in order to facilitate the sale of the property.

*Sale Process*

17.  In early 2008, Nortel management determined that, given the reduced utilization of Westwinds, the Company would investigate a potential sale of the property.

18.  In April 2008, DTZ prepared an Opinion of Value on Westwinds. In June 2008, DTZ presented Nortel with a Professional Services Proposal outlining its recommended marketing plan. Management decided to proceed with a sale of the Westwinds and DTZ was engaged on June 30, 2008, to list the property and commence the sales process.

- 5 -

19.    DTZ's commissions are to be calculated as follows:

- 2% on gross proceeds up to $20 million; plus
- 1.5% on gross proceeds between $20 and $40 million; plus
- 1.25% on gross proceeds between $40 and $60 million; plus
- 1% on gross proceeds greater than $60 million.

20.    An appraisal of Westwinds was completed by Altus Group dated August 1, 2008.

21.    DTZ produced a Confidential Information Memorandum and began marketing the property in August 2008.

22.    Since the start of the marketing process, the real estate market in Calgary has been in decline as a result of the general decline in the global economy and global real estate markets. The decline in Calgary has been compounded by the rapid decline in energy prices from their recent peak.

23.    The Monitor has been advised that DTZ marketed Westwinds as follows:

a.    DTZ identified a targeted list of the top 40 potential investor purchasers and the top 40 potential user purchasers and circulated preliminary information to these parties in August and September. DTZ subsequently contacted these parties to canvas their level of interest;

b.    In addition to the top 40 lists, DTZ sent marketing materials to a large number of other potential buyers, including North American and international real estate investors, and large regional employers and manufacturers; and

c.    The property was advertised in the Globe and Mail on October 21 and October 23, 2008, on DTZ's web page, and across DTZ's broker network.

24.    To date, 16 potential purchasers have toured the property (9 real estate investors and 7 users), and three offers to purchase have been received. The City of Calgary offer, which is described in further detail below, was the highest of the three offers.

- 6 -

25.    The Altus Group appraisal and the other offers received by NNL in respect of Westwinds are included in confidential Exhibit "A" to this Ninth Report. Given the sensitive nature of such information and the impact such information could have on any future sales process for Westwinds in the event the transaction described below is not consummated, the Monitor requests that confidential Exhibit "A" to this Ninth Report be sealed by this Honourable Court.

## THE CITY OF CALGARY AGREEMENT

26.    On March 13, 2009, NNL entered into a Letter of Intent with The The City of Calgary (the "LOI") outlining the fundamental terms and conditions to be included in a Agreement of Purchase and Sale, as well as a proposed timeline, in connection with a contemplated sale of Westwinds.

27.    On April 27, 2009, NNL and the City of Calgary entered into an Agreement of Purchase and Sale (the "Agreement"). The key terms of the Agreement are outlined in the paragraphs that follow.

28.    The gross purchase price under the Agreement is $97,000,000 in cash. This purchase price falls within the likely market value range presented in the Altus Group appraisal. Commissions payable to DTZ are expected to be approximately $1.32 million. Taking legal fees, costs related to NNL's portion of the Decommissioning Programs (as defined below), and other closing costs into account, the net proceeds of the sale are expected to amount to approximately $95,000,000.

29.    The anticipated closing date is June 15, 2009 (the "Closing Date").

30.    The Agreement contains the following material terms:

   a.   The obligation of The City of Calgary to purchase Westwinds is subject to several conditions precedent, including conditions related to property inspection and condition, approval of the transaction by City Council for The City of Calgary, and approval by the Province of Alberta that The City of Calgary's financing costs are allowable expenses under the Municipal Sustainability Initiative program. The Monitor has been advised that, as of April 27, 2009, all such conditions precedent had

Case 09-10138-MFW    Doc 757-1    Filed 05/15/09    Page 7 of 11

- 7 -

been satisfied or waived, save for a condition relating to compliance with Schedule "D" of the Agreement which primarily deals with The City of Calgary's rights of access to Westwinds pre-closing and the Decommissioning Programs (as defined below);

b. The obligation of NNL to close the transaction is subject to this Honourable Court granting an Approval and Vesting Order on or before May 22, 2009. As noted at paragraph 20 of the affidavit of Allan Lane sworn May 8, 2009, there are a number of easements, rights of way, caveats and restrictive covenants pertaining to the Westwinds' lands. The Monitor understands that, except for a caveat pertaining to Flextronics' lease of the Systems House Facility (which lease, as noted above, is being terminated by mutual agreement between NNL and Flextronics effective May 30, 2009), all such easements, rights of way, caveats and restrictive covenants are "Permitted Encumbrances" within the meaning of the Agreement and the Approval and Vesting Order sought in connection with the Agreement;

c. NNL shall be responsible for Adjustment Charges (as defined in the Agreement) incurred prior to and on the Closing Date, and The City of Calgary shall be responsible for Adjustment Charges thereafter. These Adjustment Charges would be considered typical for a transaction of this nature;

d. The Agreement contains representations and warranties made by NNL in favour of The City of Calgary, including representations and warranties pertaining to title and the physical condition of the Westwinds property at closing following the completion of decommissioning programs presently being undertaken by NNL, in respect of the Innovations Centre, and by Flextronics, under the supervision of NNL, in respect of the Systems House Facility (the "Decommissioning Programs"). All representations and warranties in the Agreement merge upon closing of the sale; and

e. As of closing, The City of Calgary shall be satisfied with the final Decommissioning Programs and the State of Repair of the Buildings (as defined in the Agreement). In the event The City of Calgary identifies deficiencies with the State of Repair of the Buildings, NNL shall engage a third party contractor to remedy such deficiencies. If

- 8 -

any deficiencies cannot be remedied prior to closing, NNL shall undertake to remedy the deficiencies and the reasonable cost of remedying such deficiencies plus a contingency amount of 10% of such cost shall be held by NNL's solicitors in trust (the "Deficiency List Holdback Amount"). The Deficiency List Holdback Amount shall be released to NNL upon the deficiencies being remedied. In the event that the deficiencies are not remedied by July 31, 2009, that portion of the Deficiency List Holdback Amount relating to remedied deficiencies will be released to NNL, and the balance of the Deficiency List Holdback Amount shall be released to The City of Calgary.

31.     As discussed above, the Agreement was approved by the City Council for the City of Calgary on April 27, 2009. NNL has advised the Monitor, and the Monitor concurs, that the City of Calgary offer represents the best offer available for Westwinds given the cash consideration payable.

- 9 -

**MONITOR'S ANALYSIS AND RECOMMENDATIONS**

32.     The Monitor has reviewed Nortel's efforts to divest Westwinds and is of the view that the Company has acted in good faith to maximize value.  The Monitor recommends approval of the Agreement by this Honourable Court.

33.     As the building is solely owned by NNL, the proceeds of sale will be available to NNL and the anticipated use of these proceeds have been incorporated into the cash flow forecast attached to the Eight Report of the Monitor.

34.     For the reasons described in Paragraph 25, the Monitor recommends that confidential Exhibit "A" to this Ninth Report be sealed by this Honourable Court.


**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants

Per:

Murray A. McDonald
President

# CONFIDENTIAL EXHIBIT "A" TO THE NINTH REPORT OF THE MONITOR

## [REDACTED]

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

---

**NINTH REPORT OF THE MONITOR**
**DATED MAY 13, 2009**

---

**GOODMANS LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada  M5B 2M6

Jay A. Carfagnini (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\5721277