IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                                                         :
*In re*                                                  :   Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :   Case No. 09-10138 (KG)
                                                         :
              Debtors.                 :   Jointly Administered
                                                         :
                                                         :   Hearing date: June 11, 2009 at 2:00 PM (ET)
                                                         :   Objections due: June 4, 2009 at 4:00 PM (ET)
---------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER APPROVING
A COMPROMISE OF CONTROVERSY BY AND AMONG (I) THE DEBTORS
AND (II) CROSSROADS WIRELESS, INC. AND CROSSROADS HOLDING, LLC**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise a controversy between: (i) NNI and (ii) Crossroads Wireless, Inc. and Crossroads Holding, LLC (together, "Crossroads") (Crossroads, together with NNI, the "Parties") as more fully described below and as set forth in the agreed terms of the Stipulation of Compromise of Controversy (the "Stipulation"), attached hereto as Exhibit B; and granting them such other and further relief as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. f/k/a Alteon WebSystems, Inc. (9769), Nortel Altsystems International, Inc. f/k/a Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## Background

### A. Introduction

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrator").

6.  On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7.  On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142). No trustee or examiner has been appointed in the Debtors' cases.

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

### B. Debtors' Corporate Structure and Business

8. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[4]

### Relief Requested

9. By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019: (a) authorizing the compromise of controversy between NNI and Crossroads, and (b) granting related relief.

### Facts Relevant to this Motion

### C. Background of Current Dispute Between the Parties

10. Crossroads Inc. is a Delaware corporation, which was formed on October 27, 2006. Crossroads LLC is a Delaware limited liability company, which was also formed on October 27, 2006. Crossroads LLC was formed to be the operating entity and, except for certain FCC Licenses, hereinafter defined, asserts interests in all or substantially all of the assets asserted to be property of the Crossroads' estates, including leases of real estate, cellular towers, and equipment.

11. On February 13, 2009, Crossroads LLC became the subject of an involuntary petition under chapter 7 of the Bankruptcy Code. On February 25, 2009, the Bankruptcy Court of the Western District of Oklahoma (the "Bankruptcy Court") entered an order for relief with respect to Crossroads LLC; by further order on that date, the Bankruptcy Court entered an order converting the Crossroads LLC case from chapter 7 to chapter 11 of the Bankruptcy Code. On February 20, 2009, Crossroads Inc. filed its voluntary petition for relief under chapter 11 of the

---

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

4

Bankruptcy Code. On February 25, 2009, the Bankruptcy Court ordered the Crossroads Inc. and the Crossroads LLC bankruptcy cases to be jointly administered. Crossroads Inc. and Crossroads LLC are both operating as a debtors-in-possession.

12. Crossroads Inc. asserts that it holds Crossroads' interests in various licenses issued by the Federal Communication Commission ("FCC") authorizing the construction and operation of Personal Communications Service ("PCS") (the "FCC Licenses"). The principal business of Crossroads LLC was to have been, and to a limited extent continues to be, the construction and operation of wireless rural telecommunications networks so that Crossroads Inc. may provide PCS, as that term is defined in Section 24.5 of the FCC's rules, 47 C.F.R. §24.5, in compliance with the FCC's rules. The principal assets asserted to be property of Crossroads LLC's estate are interests in the real estate leases, cellular towers, and equipment that comprise the wireless networks over which Crossroads Inc. provides, or has intended to provide, PCS under FCC Licenses.

13. Prior to the commencement of both NNI and Crossroads' bankruptcy cases, NNI (i) entered into a number of agreements with Crossroads, including without limitation (a) a Purchase and License Agreement between Nortel and Crossroads LLC, dated as of June 30, 2008 (a copy of which is attached as Exhibit C), and (b) a Security Agreement between Nortel and Crossroads Inc. and Crossroads LLC, dated as of August 13, 2008 (a copy of which is attached as Exhibit D), and (ii) received numerous purchase orders from Crossroads under the Purchase and License Agreement (collectively, the "Contract Documents").

14. NNI filed at least one UCC Financing Statement (the "Financing Statement") with respect to its security agreements and rights under the Contract Documents. A copy of the Financing Statement is attached as Exhibit E.

15. Pursuant to the Contract Documents, the Financing Statement, and/or its possession of certain equipment, NNI claims a senior, perfected security interest in certain equipment (the "Equipment"), which Crossroads ordered from NNI or to which Crossroads claims ownership or other rights. Lists of the Equipment are attached hereto collectively as Exhibit F.

16. The amount owed to NNI that is secured by Equipment is greater than the value of the Equipment. To further secure the obligations of Crossroads to NNI, pursuant to the Contract Documents, Crossroads granted to NNI a security interest in and to certain spectrum licenses owned by Crossroads. As a result of the security interests and other rights granted to NNI under the Contract Documents, NNI holds secured claims against Crossroads; these claims are secured by property in which Crossroads asserts an interest. As disclosed in Schedule D – Creditors Holding Secured Claims, the schedules filed in Crossroads, Inc.'s bankruptcy case, Crossroads disputes NNI's security interests in spectrum licenses.[5]

**D.  The Proposed Settlement and Stipulation**

17. The Parties entered into negotiations to discuss the resolution and settlement of these issues, particularly in light of each Party's chapter 11 status. As a result of these negotiations, the Parties have proposed to resolve their dispute pursuant to the agreed terms set forth in the attached Stipulation, which includes the following salient components:[6]

　　a. In full satisfaction of all of NNI's claims against the Debtors, Crossroads has agreed, subject to approval by the United States Bankruptcy Court for the Western District of Oklahoma, where Crossroads' chapter 11 case is pending (Case No. 09-10596-

---

[5] A copy of the pertinent portion of Schedule D is attached hereto as Exhibit G and is available on the docket of the Crossroads, Inc. bankruptcy case [D.I. 46].

[6] This overview is merely intended to provide a general summary of the Stipulation. To the extent that it conflicts with the Stipulation, the Stipulation shall control.

WV), and subject to approval by this Court, to transfer to NNI, free and clear of any interest of any entity other than Nortel, all rights, title and interest in the Equipment, to request the Court to order immediate delivery to NNI of the Equipment by any party which may have possession or custody of the Equipment and to release any and all claims they have, or may have, against NNI, including without limitation any claims or avoidance actions that may be asserted pursuant to chapter 5 of title 11 of the United States Code.

      b.     In exchange, NNI has agreed to release any and all claims it has, or may have, against Crossroads, including any claim to a security interest in any spectrum licenses (which security interest shall be deemed to be avoided and preserved for the benefit of Crossroads pursuant to Chapter 5, Subchapter III of Title 11 of the United States Code, 11 U.S.C. §§ 541-562) and to accept and acknowledge such transfer as full satisfaction of NNI's claims against Crossroads and their estates.[7]

## Basis for Relief

18.    The Debtors seek an order granting the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

19.    Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R.

---

[7] Crossroads has sought approval of the Stipulation in their bankruptcy proceeding and the relief sought herein is contingent upon obtaining such approval.

Bankr. P. 9019(a). Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004).

20.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

21.     The Third Circuit has set out four criteria that a bankruptcy court should consider in determining whether a settlement proposal is within the range of reasonableness (the "Martin Factors"). The Martin Factors are: "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393; see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

22. Applying the above factors to the instant matter, the Debtors submit that the settlement set forth in the Stipulation is in the best interests of the Debtors' estates and their creditors. Under the Stipulation, Crossroads is returning Nortel's Equipment. Absent such a settlement, Nortel would have to pursue a claim in the Bankruptcy Court for the Western District of Oklahoma for payment for the Equipment and/or its return.

23. While the Debtors are prepared to litigate the dispute, such litigation would add expense and there is no assurance it would achieve a better result for NNI than the one achieved under the Stipulation, particularly in light of Crossroads' chapter 11 debtor status. The anticipated costs to NNI in pursuing a claim are high in light of the limited additional upside (if any) that could be gained from pursuing the claim compared to the Stipulation. Moreover, litigation to pursue the issues otherwise resolved by the Stipulation would result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

24. Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Stipulation. The Debtors believe that the interests of its creditors are supported by the prompt and efficient resolution of this claim, particularly due to Crossroads' chapter 11 debtor status, and the minimization of administrative claims and expenses.

25. In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Stipulation is preferable to further opposition to Crossroads. The proposed

Stipulation and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim. For these reasons, the Debtors assert that the Stipulation should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

26. Notice of the Motion has been given to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholders; (iv) Crossroads counsel; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

27. No prior request for the relief sought herein has been made to this or any other court, except for the United States Bankruptcy Court for the Western District of Oklahoma in accordance with the terms of the Stipulation and proposed order.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 18, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/_

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*