EXHIBIT "C"

July 6, 2007

Michele Haney
Senior Manager, U.S. State & Local Tax
Nortel
4001 East Chapel Hill
Nelson Highway
Research Triangle Park, NC 27709

Re:   Statement of Work

Dear Michele:

Paradigm Tax Group ("Paradigm") is pleased to deliver this Statement of Work to Nortel Networks, Inc., ("Nortel") for your consideration and approval. Paradigm is a national tax consulting practice with 20 offices and over 70 professionals. We are the former national property tax practice of KPMG and were spun off in November of 2004 (www.paradigmtax.com). Our Dallas office is managed by David Kline, a former KPMG Senior Manager-Property Tax and Suzanne Hawkins, a former KPMG Manager-Property Tax who began her career at the Dallas Central Appraisal District as a Senior Appraiser. This letter confirms the scope and related terms of Paradigm's Statement of Work.

**Paradigm Contact Information**

David Kline, Managing Consultant
Suzie Hawkins, Managing Consultant
Paradigm Tax Group
14800 Landmark Boulevard, Suite 240
Dallas, Texas 75254
Phone: 972/759-9600
Fax: 972/759-9605

Please note that our Federal Employer Identification Number is 113730938 and a copy of our W-9 is attached.

**Statement of Work**

For the properties listed herein, **Paradigm** will:

Phase I:   Review the proposed assessments (or enrolled assessments) issued by the Dallas Central Appraisal District. During this process, we will also review subject property, and market data to identify and develop opportunities for reduced property tax assessments.

Phase II:   Make a recommendation to **Nortel** and/or **Nortel's** incumbent compliance provider ("Compliance Provider") regarding which assessments should be challenged, protested or appealed based on the information compiled in Phase I.

Phase III:   With the approval of **Nortel** and/or the Compliance Provider, prepare or aid in the preparation and filing of timely file protests, notices of appeal, or other documents necessary to challenge, either informally or formally, the property tax assessments. With approval, we will also prepare refund claims for prior tax periods when tax recoveries are warranted.

Phase IV:   Represent or aid in the representation of **Nortel** in valuation negotiations and administrative appeals, from the informal level with the Dallas Central Appraisal District through Appraisal Review Board proceedings.

Phase V:   For any representation involving litigation or other actions requiring engagement of an attorney, such professional engagement and compensation will be the responsibility of **Nortel**, with advice and consulting provided by **Paradigm**.

Phase VI:   Upon completion of any appeals related to **Paradigm's** review of personal property tax reduction opportunities, **Paradigm** agrees to review with **Nortel** and/or the Compliance Provider, the results and content of such review. **Paradigm** shall supply **Nortel** and/or the Compliance Provider with a written analysis of tasks performed and methods by which **Paradigm** achieved property tax reductions.

It is noted by **Paradigm** that **Nortel's** Compliance Provider provides compliance functions on behalf of **Nortel** for their facilities. It is further understood by **Paradigm** that the Compliance Provider has filed appeals on certain personal property accounts. Accordingly, for purposes of delineation of tasks to be performed and fee calculation, we submit the following:

- o  In instances where an appeal has been filed by the Compliance Provider, **Paradigm's** "starting value" for purposes of fee calculation shall be the lowest value obtained by the Compliance Provider after their negotiations with assessing officials have been completed and the Compliance Provider has secured a settlement offer, or, the initial value has been sustained by assessing officials. The "ending value" for purposes of **Paradigm's** fee calculation shall be the final value established after **Paradigm's** negotiation with assessing officials is completed either through appeal or lawsuit.

- o  In instances where an appeal has not been filed by the Compliance Provider, **Paradigm's** fee shall be determined as described in the "Professional Fee" paragraph, below.

**Professional Fees**

Our professional fees for property tax services will be determined after reductions in property tax assessments are achieved and will be 30 percent of the property tax savings. The word "tax savings" means the difference in the taxes calculated on the property's original enrolled or proposed tax assessment for the benefit year and the taxes calculated on the property's final tax assessment resulting from the appeal or protest for that same benefit year. "Savings" may take

the form of refunds, abatements, cancellations, or corrected tax billings. "Savings" will be calculated utilizing the property tax rate in effect in the benefit year.

The professional fees shall not be payable until **Nortel's** receipt of property tax refunds or **Paradigm's** provision of proof of assessment reduction in the event of reduction in current year value before tax bills are issued.

**Responsibilities of Nortel**

**Nortel** agrees to furnish **Paradigm** with information relative to the relative to the fair market value of the assets, including, but not limited to, fixed asset lists, copies of filed business personal property returns, lists of inventory, recent appraisals, purchase prices and other information related to the assets identified in this letter.

**Nortel** agrees to forward a copy of property tax correspondence from assessing officials to **Paradigm** in a timely manner. **Nortel** acknowledges that **Paradigm** shall not be held responsible for any consequences arising from **Paradigm's** untimely receipt of assessor or taxing jurisdiction related correspondence.

**Term**

This engagement shall come into full force and effect upon receipt of the signed original engagement letter by **Paradigm** and shall stay in effect until all reviews; valuations or appeals of the locations listed below are completed or withdrawn for the 2007 tax year. It is agreed that any appeals, reviews or valuations unresolved at the time of termination shall be completed by **Paradigm**, and fees for any savings achieved are due and payable in full under the terms outlined above.

**Locations Subject to Statement of Work**

- 1225 N. 28th Avenue, Suite 500, Irving, Texas
- 2271 French Settlement Road, Dallas
- 4051 State Highway 121, Grapevine, Texas
- 2350 Campbell Creek Boulevard, Richardson, Texas
- 1460 N. Glenville Drive, Richardson, Texas
- 2201 Lakeside Boulevard, Richardson, Texas
- 2221 Lakeside Boulevard, Richardson, Texas
- 2370 Performance Drive, Richardson, Texas
- 1380 Presidential Drive, Richardson
- Texas Stadium, Suite 341, Irving, Texas

\* \* \* \* \*

If you have any questions, please call me at (972) 759-9600, extension 100.

Regards,

**PARADIGM TAX GROUP**

David Kline
*Managing Consultant*



**Purchase order** — NORTEL NETWORKS

07/26/2007 01:48PM                           PAGE 001 OF 005

MAIL ALL CORRESPONDENCE EXCEPT INVOICE TO:
(This no. must appear on all invoices, packages, packing slips and customs forms.)

Purchase order no.: USC513024
Order date: 07/26/2007    Page no. 1
Change date

**Supplier:**
PARADIGM DKD GROUP LLC
3030 NORTH CENTRAL AVENUE
SUITE 1001
PHOENIX, AZ
85012-2716, UNITED STATES
Attn: DAVID KLINE

**Ship to:**
NORTEL NETWORKS INC.
DOCK DOOR 10
4001 E. CHAPEL HILL NELSON HWY
RTP, NC USA
27709-3010

**Bill to:**
NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

Supplier no.: 109199300
Contract release no.:
Carrier:
Dept.: 8413    Mail stop: 2432
Requisition no.: 2469633
INCOTERM:
Financial:    Charge to:    Region:

Originator: 1 M. HANEY

| To: Ld no. | Quantity | Unit | Description | Date req. ship | Unit cost | Extended cost | Tax | Asset no. |
|---|---|---|---|---|---|---|---|---|
| | | | Order Confirmed on 07/26/2007 with DAVID KLINE. Supplier please address all queries to PATRICIA RAMIREZ 393-7889. | | | | | |
| | | | PO TOTAL NOT TO EXCEED $60,000.00 USD REFERENCE: STATEMENT OF WORK DATED JULY 06,2007. FOR PRICING ONLY. | | | | | |
| | | | IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT REFERENCE THE ABOVE MENTIONED PURCHASE ORDER NUMBER AND SHIP TO INFORMATION. INVOICES SUBMITTED WITHOUT A PURCHASE ORDER NUMBER WILL BE TREATED AS A DISPUTED INVOICE SUBJECT TO BEING RETURNED UNPAID FOR YOUR CORRECTION AND RESUBMISSION. INVOICES MAY BE SENT VIA EMAIL DIRECTLY TO THE ACCOUNTS PAYABLE DEPT AT: naapexpl@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS | | | | | |

Total for this Page

| Special instructions | Currency | Agreed shipping date | Total Amount |
|---|---|---|---|
| E    NET 70 | USD | | ************ .00 |

▲▲ TAXES See explanation of taxes supplied with this PO

We accept this order and confirm it is subject to the terms and conditions supplied.

Signed _____    (for the supplier)

Nortel Networks 38532PBS-03Sep03    Consider this tax copy to be the original Purchase Order, no other copies will follow.    Subject to terms and conditions supplied with this PO
Nortel Networks is an Equal Opportunity / Affirmative Action Employer



07/26/2007 01:50PM

PAGE 003 OF 005

# NORTEL NETWORKS

## Purchase order

MAIL ALL CORRESPONDENCE EXCEPT INVOICE TO:

**Supplier**
PARADIGM DKD GROUP LLC
3030 NORTH CENTRAL AVENUE
SUITE 1001
PHOENIX, AZ
85012-2716, UNITED STATES
Attn: DAVID KLINE

NORTEL NETWORKS INC.
ATTN: PURCHASING DEPT
3500 CARLING AVE
OTTAWA ON CA
K2H 8E9

**Ship to** (this no. must appear on all invoices, packages, packing slips and customs forms.)
NORTEL NETWORKS INC.
DOCK DOOR 10
4001 E. CHAPEL HILL NELSON Hwy
RTP, NC USA
27709-3010

**Purchase order no.** USC513024
**Order date** 07/26/2007
**Change date**
**Page no.** 3
**Change no.**

**Bill to**
NORTEL NETWORKS INC.
ATTN: ACCOUNTS PAYABLE
P.O. BOX 280510
NASHVILLE, TN USA 37228-0510
AP CUST SVC: 1-800-684-2228

| Sourcecode | Contract release no. | Carrier | Dept. | Mail stop | Requisition no. | Financial | Change to | Region | Tax | Asset no. |
|---|---|---|---|---|---|---|---|---|---|---|
| 10919930D | | | 8413 | 2432 | 2469633 | | | | 12 | |

**Originator** 1 M. HANEY

| To | Ln no. | Quantity | Unit | Description | Start / Sch. Ship | Date | Unit cost | Extended cost | CLIP no. |
|---|---|---|---|---|---|---|---|---|---|
| | 1 * | 1EA | | DELAY OF PAYMENT. REVIEW PROPERTY TAX ASSESSMENTS FOR POTENTIAL SAVINGS. START DATE: 07/26/2007  END DATE: 03/31/2008 NORTEL NETWORKS CORPORATE POLICY REQUIRES THAT NO BILL SHALL EXCEED THE TOTAL AMOUNT SHOWN ON THE PURCHASE ORDER. NO PAYMENTS WILL BE MADE BY ACCOUNTS PAYABLE OVER THE AMOUNT SHOWN ON THE PURCHASE ORDER WITHOUT PRIOR WRITTEN APPROVAL FROM PURCHASING. ANY INVOICES CONTAINING AMOUNTS IN EXCESS OF THAT SHOWN ON THE PURCHASE ORDER WILL BE CONSIDERED "DISPUTED," AND NORTEL NETWORKS WILL HAVE NO OBLIGATION TO PAY THE DISPUTED PORTION OF ON INVOICE. | | | 60000.0000 | 60000.000 E | 6 |

**Special Instructions**
E

| Terms | Currency | Agreed shipping date | Total Amount |
|---|---|---|---|
| NET 70 | USD | | $*****60000.00 |

▲▲▲ TAXES
See explanation of taxes supplied with star PO.

We accept this order and confirm it is subject to the terms and conditions supplied.

Signed _____ (for the supplier)

BUYER: PATRICIA RAMIREZ

MANAGER ISRAEL SOSA

Nortel Networks 355F300S-09/toe:US

Consider this fax copy to be the original Purchase Order, no other copies will follow.
Nortel Networks is an Equal Opportunity / Affirmative Action Employer

Subject to terms and conditions supplied with this PO



# Nortel – confidential. Purchase Order terms & conditions

**NORTEL NETWORKS INC. ("PURCHASER") TAX CODE GENERAL GUIDELINES**

conversion of AP–United States Sales/Use Tax
The following is a list of the requirements for the Nortel Networks tax group.
The three digits that will be used on the P.O.'s are described below:
First Digit – United States
U US No Federal taxes
Second digit – Represents whether State/Local tax is appropriate or not
T State/Local Tax Applicable
E State/Local Tax Exempt

Third digit – Represents special purchases taxing conditions by North Carolina (NC) direct pay permit holder (codes 0–3)
0 North Carolina (NC) ship to; No tax due on purchases.
1 North Carolina (NC) ship to; Single Article greater than $3,000, Tax rate of 1%, $80 Max Tax
2 North Carolina (NC) ship to; Tax rate of 1% of invoice
3 North Carolina (NC) ship to; Taxable at Full Rate
4 TN (NASH) ship to; Single Article Limit greater than $1600 (per line item, per unit price greater than $1600)
5 Taxable (Ship to Destination State except for codes 0–3)
6 Exempt (Ship to Destination Any State)

## PURCHASE ORDER TERMS AND CONDITIONS

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance with the terms of this Order, that may appear in any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction in the price of the Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Purchaser will pay Supplier within 65 days from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the applicable payment period under the preceding sentence, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:

(a) applicable drawings, designs and/or specifications which the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or

(b) method of shipment or packaging; and/or

(c) place or time of delivery or performance.

If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost of the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Purchaser under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of reasonable cost incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, Supplier shall not be entitled to any reimbursement. In the event of Supplier's breach of this Order or performance of services, Supplier shall be liable for any incidental, but not limited addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential, special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be

Page 1 of 2 rev 05-2006

performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify for and save Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary rights, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:

(a) Statutory worker's compensation and occupational diseases;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.

The certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, Hazardous Materials Transportation Act, Vietnam Era Veterans Readjustment Assistance Act of 1974, Rehabilitation Act of 1973, Americans with Disabilities Act, Executive Order 12246 (September 24, 1965) and the clauses set forth in Federal Acquisition Regulation (subject to "Contractor", "Subcontractor" and "Contract" used in such clauses meaning Purchaser, Supplier and Order, respectively) 52.219-8, 52.219-9, 52.219-13, 52.220-3, 52.220-4, 52.222-1, 52.222-4, 52.222-20, 52.222-21, 52.222-26 (subparagraphs b(1)-(11)), 52.222-35, 52.222-36 and 52.222-37, which clauses are incorporated by reference with the same force and effect as if they were given in full text; and (b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the RoHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third Party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g. the WEEE and RoHS directives). Supplier understands that failure by Supplier to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

**10. Disclosure of Information**

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain

Nortel – confidential. Purchase Order terms & conditions

Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

11. Notice
Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

12. Use of Purchaser's Name
Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

13. Force Majeure
Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or unusually severe weather. In the event any such cause affects Supplier's performance for a period of ten or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

14. Governing Law
This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

15. Paragraph Headings
Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

16. Waiver
The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to subsequent breach of such term.

17. Purchases Pursuant to Master Agreement
In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

18. Entire Agreement
This Order constitutes the entire agreement between the parties on the subject matter hereof and supersedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

19. Business Ethics
By its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

20. Time of the Essence
Time is of the essence in all matters relating to this order.

US – Fills Order: for goods, the following paragraphs are also included in this Order:

…Quantity
Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

02.Warranty
Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (i) shall conform to the description and specifications as provided on the face of this Order, (ii) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects (UL) requirements. In this event Supplier breaches any warranty. Supplier shall promptly remove any such liens and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall make full refund (the Price(s)) to Purchaser. Purchaser shall be entitled to obtain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

03.Special Products

Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns, and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

04.Title/Risk of Loss
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

05.Delivery
Goods delivered prior to the rejected delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

06.Free Trade Certificates of Origin
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

07.Packing
All goods shall be suitably packed for shipment to prevent damage.

SERVICES – If this Order is for services, the following paragraphs are also included in this Order:

S1.Warranty
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services ordered and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier at no cost to Purchaser shall correct such defect.

Purchaser reserves the right to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

S2. Services to be Rendered at Purchaser's Premises
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

S3. Security Rules/Procedures
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

S4. Disruption of Business
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

S5.Waiver of Lien
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

S6. Independent Contractor
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

S7. Title
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.

# NORTEL

## Purchase Order

| | |
|---|---|
| Purchase Order No: 4320060606<br>This number must appear on all invoices, packages, packing slips and customs forms. | Order Date: 11/10/2008<br>Last Change Date: 11/10/2008   Page 1 of 6 |
| Supplier Contact:<br>Suzanne Hawkins | Supplier No: 462672<br>Contract No: |

**Supplier:**
Paradigm DKD Group LLC
3030 North Central Avenue
Suite 1001
PHOENIX AZ 85012-2716
USA
Telephone No: 602-393-9689
Fax No: 602-393-9694

**Ship to:**
AN
Nortel
2221 LAKESIDE BLVD
RICHARDSON TX 75082-4305
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| | |
|---|---|
| Payment Terms:<br>Within 70 days Due net | Buyer:<br>Ana Karanny M |

| Carrier Number/Carrier Name: | | | Incoterms:<br>DDP | | | | Telephone No:<br>Fax | |
|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |

Start Date - 07/01/2007
End Date - 02/28/2009
Header text
PO TOTAL NOT TO EXCEED $160,000.00 USD
REFERENCE: Statement of Work DATED: October 31, 2008
FOR PRICING ONLY

| | | |
|---|---|---|
| Page Total | USD | 0.00 |

*[signature]*
Ana Karanny M
BUYER

Nortel Networks IP/2007-07/EN   Nortel is an Equal Opportunity / Affirmative Action Employer

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

# NORTEL

## Purchase Order

| Purchase Order No: 4320060606 | Order Date: 11/10/2008 | |
|---|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 11/10/2008 | Page 2 of 6 |
| Supplier Contact: Suzanne Hawkins | Supplier No: 462672 | |
| | Contract No: | |

**Supplier:**
Paradigm DKD Group LLC
3030 North Central Avenue
Suite 1001
PHOENIX AZ 85012-2716
USA
Telephone No: 602-393-9689
Fax No: 602-393-9694

**Ship to:**
NN
Nortel
2221 LAKESIDE BLVD
RICHARDSON TX 75082-4305
USA

**Bill to:**
Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | Incoterms: DDP | | Payment Terms: Within 70 days Due net | | Buyer: Ana Karanny M | | Telephone No: Fax: | |
|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |

**Terms of delivery**
THIS IS A CONFIRMING PURCHASE ORDER - DO NOT DUPLICATE

THIS PURCHASE ORDER IS SUBJECT TO NORTEL STANDARD TERMS AND CONDITIONS. THESE STANDARD TERMS AND CONDITIONS HAVE BEEN INCLUDED WITH THIS TRANSMISSION. ANY CHANGES (ADDITIONS, DELETIONS, RATES, DOLLARS, TERMS, ETC.) WILL NOT BE HONORED UNLESS CONFIRMED BY THE BUYER AS IDENTIFIED HEREIN.

ALL INFORMATION DEVELOPED BY SUPPLIER OR SUPPLIER PERSONNEL PURSUANT TO THIS PURCHASE ORDER, IS AND SHALL BE THE SOLE AND EXCLUSIVE PROPERTY OF NORTEL. SUPPLIER SHALL ENSURE THAT SUPPLIER PERSONNEL DEVELOPING SUCH INFORMATION SHALL ASSIGN TO NORTEL ANY AND ALL RIGHTS TO PATENT AND / OR COPYRIGHT INFORMATION AND SHALL EXECUTE SUCH OTHER INSTRUMENTS AS NORTEL MAY REQUIRE TO PROTECT, PERFECT NORTELS INTEREST IN, OR EXPLOIT SUCH INFORMATION.

NORTEL IS NOT OBLIGATED TO PAY FOR GOODS OR SERVICES EXCEEDING THE NOT TO EXCEED AMOUNT. ALL PRICING SHALL BE HELD FIRM FOR THE EFFECTIVE PERIOD OF THIS AGREEMENT.

PLEASE SEND ONE ORIGINAL INVOICE WITH PO COPY TO NORTEL CONTROL DEPARTMENT FOR PAYMENT TO naapexpi@nortel.com ALL QUERIES REGARDING INVOICE PAYMENT OR STATUS SHOULD BE DIRECTED TO ACCOUNTS PAYABLE DEPARTMENT AT 1-800-684-2228 OR www.nortel.com/naapinquiry

IT IS IMPERATIVE THAT ALL INVOICES SUBMITTED FOR PAYMENT AGAINST THIS PURCHASE REFERENCE THIS PURCHASE ORDER NUMBER AND THE ASSOCIATED PURCHASE ORDER LINE ITEM, QUANTITY, DESCRIPTION AND PRICE THAT IS BEING INVOICED FOR AS DISPLAYED ON THE FACE OF THIS PURCHASE ORDER.

| Page Total | USD | 0.00 |
|---|---|---|

*[signature]*
Ana Karanny M
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer    K

# NORTEL

## Purchase Order

| Purchase Order No: 4320060606 | Order Date: 11/10/2008 |
|---|---|
| This number must appear on all invoices, packages, packing slips and customs forms. | Last Change Date: 11/10/2008    Page 3 of 6 |
| Supplier Contact: Suzanne Hawkins | Supplier No: 462672 |
| | Contract No: |

**Supplier:** Paradigm DKD Group LLC
3030 North Central Avenue
Suite 1001
PHOENIX AZ 85012-2716
USA
Telephone No: 602-393-9689
Fax No: 602-393-9694

**Ship to:** NN
Nortel
22221 LAKESIDE BLVD
RICHARDSON TX 75082-4305
USA

**Bill to:** Nortel Networks Incorporated (0501 / 2001)
Attention: Accounts Payable
P.O. Box 280510
Nashville, TN 37228

| Carrier Number/Carrier Name: | | | Incoterms: DDP | | Payment Terms: Within 70 days Due net | | Buyer: Ana Karanny M | | Telephone No: Fax: | |
|---|---|---|---|---|---|---|---|---|---|---|
| Item No. | Qty | UOM | Part No | Description | | Ship Date | UnitPrice | Tax Code | Tax Value | Extended Total |
| 00010 | 1.000 | EA | | Property Tax Assessment Review | | 07/01/2007 | 160,000.0 USD | T5 | 0.00 | 160,000.00 USD |
| | | | | THIS PURCHASE ORDER IS TAX EXEMPT. THE PRODUCT AND/OR SERVICE WILL BE USED IN A MANUFACTURING PROCESS AS DEFINED IN TEXAS STATUTE 151.318(a)(2) AND (d) AND (p). | | | | | | |
| | | | | NORTEL NETWORKS RESERVES THE RIGHT TO CANCEL THIS ORDER AT ANY TIME IN THE EVENT THAT NORTEL, IN ITS SOLE DISCRETION, IS NOT SATISFIED WITH THE QUALITY OF SERVICES OR PRODUCTS TO BE PROVIDED AND COVERED BY THIS PURCHASE ORDER. | | | | | | |
| | | | | Goods Recipient: This purchase order is subject to the Nortel Networks Standard PO Terms & Conditions unless specified by Nortel. | | | | | | |
| | | | | | | Page Total | | USD | | 160,000.00 |
| | | | | | | Tax Amount Total Amount | | USD USD | | 0.00 160,000.00 |

*[signature]*
Ana Karanny M
BUYER

Nortel Networks Inc.
The Corporation Trust Company
1209 N Orange Street
Wilmington, DE 19801-1120
USA

Nortel Networks IP/2007-07/EN    Nortel is an Equal Opportunity / Affirmative Action Employer    K

Case 09-10138-MFW   Doc 768-4   Filed 05/19/09   Page 14 of 16

Page 4 of 6

# Terms and Conditions

**NORTEL NETWORKS INC. ("PURCHASER")**

**PURCHASE ORDER TERMS AND CONDITIONS**

**1. Acceptance**

Supplier's acceptance of this Purchase Order ("Order") shall be evidenced by the returning of a signed copy of this Order to Purchaser, the shipment of goods or the commencement of services to be performed hereunder. Purchaser shall not be bound by any provision, printed or otherwise, at variance or in addition to the terms of this Order, that may appear on any quotation, acknowledgement or other form used by Supplier unless any such provision is expressly accepted in writing by Purchaser.

**2. Price and Payment**

Purchaser shall not be invoiced at a price(s) higher than stated on the face of this Order ("Price(s)"). Supplier represents that the Price(s) is (are) the lowest price(s) charged by Supplier to buyers of a class similar to Purchaser under similar terms of purchase. Any reduction made by Supplier in the price of the goods or services covered by this Order which is instituted before delivery of the goods or commencement of services shall be applicable to this Order. Payment terms are 70 days (Payment Period) measured from the later of Purchaser's acceptance of the goods and/or services or Purchaser's receipt of an undisputed invoice therefore. Notwithstanding the preceding, conditioned upon the advance approval of Purchaser's finance group, on the face of this purchase order, Purchaser may agree with Supplier to a special term of payment that will apply to this purchase order only. Such different payment term will supersede the Payment Period, but will not supersede any payment term in a master agreement, if any, between the parties under which this purchase order is being issued

**3. Taxes and Charges**

Unless otherwise stated on the face of this Order, the Price(s) is deemed to include (a) all applicable federal, state and local taxes and (b) the charges for insurance, import duties, packaging, transportation and any other fee or expense relating to the provision of the goods or services ordered. If required by law, Purchaser will withhold taxes and pay them over to the applicable taxing authority, in which case Purchaser will pay to Supplier the balance of the price, after deducting the withholding.

**4. Changes**

Purchaser may, at any time by written amendment to this Order, increase or decrease the ordered quantities of the goods or services or make a change in any one or more of the following:
(a) applicable drawings, designs and/or specifications when the goods to be furnished are to be specifically manufactured by Supplier in accordance with the Purchaser provided drawings, designs and/or specifications; and/or
(b) method of shipment or packaging; and/or
(c) place or time of delivery or performance.
If such a change causes an increase or decrease in the cost of performance or the time required for performance of this Order, an equitable adjustment shall be made and this Order shall be modified in writing accordingly. Supplier shall be deemed to have waived any claim for adjustment unless asserted in writing accompanied by an estimate of the cost or the additional time required for performance of the change within 20 days from the receipt by Supplier of notification of the change.

**5. Setoff**

Upon notice to Supplier, Purchaser may deduct from the amount due Supplier under this order either damages for any breach of this Order or amounts otherwise due Purchaser from Supplier, irrespective of whether the deduction is related to the goods or services covered by this Order.

**6. Termination, Breach and Time for Performance**

Purchaser may at any time, whether or not Supplier is in breach hereof, terminate this Order in whole or in part by written notice or verbal notice confirmed in writing. If this Order is terminated without breach by Supplier, Supplier shall be entitled solely to reimbursement of the reasonable cost Supplier has incurred in the performance of this Order prior to the effective date of termination, but in no event shall such reimbursement exceed the Price(s). If this Order is terminated by Purchaser for Supplier's breach or as a result of force majeure (as specified in paragraph 13) affecting Supplier's performance, including, but not limited to Supplier's delay in delivery of the goods or performance of services, Supplier shall not be entitled to any reimbursement. In addition to any other remedy provided in this Order for a breach of any term of this Order, Purchaser may pursue cumulatively against Supplier any or all available remedies at law or equity. In no event shall Purchaser be liable for any incidental, indirect or consequential special or punitive damages of any nature whatsoever, including loss of income, profit, use, or goodwill, for any reason whatsoever.

**7. Assignment/Subcontracting**

Supplier shall not (a) assign this Order, any interest herein or any rights hereunder or (b) subcontract any obligation to be performed hereunder, without the prior written consent of Purchaser.

**8. Indemnification and Insurance**

Supplier shall indemnify hold Purchaser and/or its customers harmless against any loss, damage, liability or claim (including, without limitation, costs and attorney's fees in connection therewith) that may be made alleging that the goods and/or deliverable items or work product in connection with services infringe any patent, trademark, trade secret, copyright or any other proprietary right, and against any loss, damage, liability or claim attributable to the possession, use or transfer of the goods or the performance of services (including, without limitation, costs and attorney's fees in connection therewith) that may be suffered by and/or be the subject of a claim by a third party against, Purchaser and/or its customers, including, without limitation, any loss, damage, liability or claim arising from injury or death to persons or damage to property due to Supplier's breach of the terms of this Order or Supplier's negligence or due to strict liability or negligence per se. Supplier shall, prior to commencement of performance, transmit to Purchaser a certificate of insurance affirming that Supplier has the following types of insurance and minimum coverage amounts:
(a) Statutory worker's compensation and occupational disease;
(b) Employer's liability - $1,000,000.00;
(c) General liability, including contractor's protective liability and blanket contractual liability for both personal injury and property damage - $5 million; and
(d) Automobile liability, including non-owner automobile liability for both personal injury and property damage - $1 million.
This certificate of insurance shall name Purchaser as an additional insured and contain a clause reading as follows: "The insurance provided by these policies shall not be materially changed or cancelled without at least 30 days prior written notice being given to Director, Risk Management, Nortel Networks Inc., 4008 E. Chapel Hill-Nelson Highway, Research Triangle Park, NC 27709. At Purchaser's written request, Supplier shall maintain greater coverage amounts or other types of insurance."

**9. Laws and Regulations**

# Terms and Conditions

Supplier shall comply with and obtain all applicable governmental licenses and permits relating to the goods or services, and Supplier shall comply with and shall assist Purchaser in complying with all applicable laws and governmental orders and regulations in effect at the time of delivery(ies) or performance of services, including without limitation, (a) the following United States laws and regulations: Comprehensive Environmental Response, Compensation and Liability Act of 1980, Consumer Product Safety Act, Toxic Substances Control Act, Occupational Safety and Health Act of 1970, Radiation Control for Health & Safety Act of 1968, Resource Conservation and Recovery Act of 1976, Clean Air Act, Clean Water Act, including the following obligations under the following U.S. Equal Employment Opportunity /Affirmative Action/Employment regulations: 41 C.F.R. §§60-1.4(a), 60-250.5(a), 60-741.5(a) and 29 C.F.R. part 470.

and,

(b) the following European Union Environmental Directives: Eco-design of Energy Using Product (EuP), Waste from Electrical and Electronic Equipment (WEEE) directive and Restriction on Use of Certain Hazardous Substances (RoHS). With respect to the RoHS Directive, Seller must be able to demonstrate to Nortel Network's satisfaction that no lead, hexavalent chromium, cadmium, mercury or polybrominated biphenyls (PBB)/polybrominated diphenyl ethers (PBDE) are present in any product covered by the ROHS Directive used or provided by Seller in providing the Products in the EU, except where exemptions allowing the use of such substances apply under applicable law. Company reserves the right to inspect the Seller's facilities to ensure compliance with laws. Supplier hereby indemnifies, defends, and holds Company harmless from all losses, liabilities, fines, penalties, costs and expenses (including reasonable legal fees) in connection with any claim or proceeding made by any customer, governmental body or other third party resulting from any non-compliance by Supplier with laws, orders and/or regulations (e.g., the WEEE and RoHS directives). Supplier understands that failure to follow requirements mandated by law, order or regulation may expose Purchaser and Purchaser employees to criminal liability and as a consequence any failure may therefore be considered as a material breach of the terms governing this Order.

### 10. Disclosure of Information

Unless otherwise expressly agreed to in writing, all information disclosed by Purchaser to Supplier or to which Supplier otherwise obtains access in the course of performance of this Order shall be maintained in confidence by Supplier, shall remain Purchaser's property and shall be returned to Purchaser upon request. Supplier shall not disclose any such information to third persons without the prior written consent of Purchaser. Such information shall be used by Supplier solely for purposes of performance of this Order. Any Purchaser intellectual property or proprietary information provided to Supplier under this Order may be used only for purposes of providing goods and/or services under this Order.

### 11. Notice

Any notice to be given hereunder shall be given in writing, postage prepaid and shall be effective when deposited in the U.S. mail.

### 12. Use of Purchaser's Name

Supplier shall not in any advertising, sales promotion materials, press releases, public statements or any other publicity matters use the name of Purchaser, Purchaser's parent, any affiliate or subsidiary of Purchaser or any variation thereof or language from which the connection of said names may be implied without Purchaser's prior written approval.

### 13. Force Majeure

Neither Purchaser nor Supplier shall be liable for delays due to causes beyond the control and without the fault or negligence of the party whose performance is affected, including, but not limited to, acts of God, the public enemy or the government, fires, floods, freight embargoes or unusually severe weather. In the event any such cause affects Supplier's performance for a period of 10 or more days, Purchaser shall have the right to terminate this Order for its convenience pursuant to paragraph 6.

### 14. Governing Law

This Order shall be interpreted and construed in accordance with the laws of the state/province and country in which the goods are delivered or services are performed, notwithstanding its rules on conflict of laws. The parties agree that this order shall not be subject to the United Nations International Sale of Goods Contracts Convention.

### 15. Paragraph Headings

Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

### 16. Waiver

The failure of a party to claim a breach of any term of this Order shall not constitute a waiver of such breach or the right of such party to enforce any subsequent breach of such term.

### 17. Purchases Pursuant to Master Agreement

In the event the terms of this Order conflict with the terms of any master purchase and sale agreement or master services agreement between Purchaser, the parent of Purchaser or any affiliate or subsidiary of Purchaser and Supplier for the purchase of the goods or services ordered hereunder, the terms of the master purchase and sale agreement or master services agreement shall take precedence.

### 18. Entire Agreement

This Order constitutes the entire agreement between the parties on the subject matter hereof and supercedes all prior agreements, communications and understandings of any nature whatsoever, oral or written. This Order may not be modified or waived orally and may be modified only in a writing signed by a duly authorized representative of the party to be charged with an obligation under such modification. Paragraph headings are inserted for convenience only and shall not be used to interpret this Order.

### 19. Business Ethics -- by its acceptance of this Order Supplier represents that as a company it conforms to Purchaser's published supplier business conduct guidelines and standards, as they may be revised from time to time, and which guidelines and standards Supplier may access at Purchaser's web page at Nortel.com.

### 20. Time of the Essence

Time is of the essence in all matters relating to this order. Time shall remain of the essence in all cases of force majeure.

GOODS -- If this Order is for goods, the following paragraphs are also included in this Order.

### G1. Quantity

Unless otherwise specified on the face of this Order, each Order shall be shipped complete. Purchaser shall not be obligated to accept any shipment of goods in excess of the quantity specified in this Order. Any excess quantity will be held at Supplier's risk and expense for a reasonable time awaiting return shipping instructions from Supplier. Risk of loss and return shipping charges for any excess quantity shall be borne by Supplier.

### G2. Warranty

Page 5 of 6

Revised 1/17/08

# Terms and Conditions

Supplier warrants that for the period of one year or such other period specified on the face of this Order following acceptance of the goods that they (a) shall conform to the description and specifications as provided on the face of this Order, (b) shall be free of any liens or encumbrances, (c) shall be of new material and good workmanship, merchantable and free from both defects and (d) shall be fit for the purposes intended. All goods which use electrical power shall comply with Underwriter's Laboratory (UL) requirements. In the event Supplier breaches any warranty, Supplier shall promptly remove any such items and encumbrances, repair or replace the defective or nonconforming goods at no cost to Purchaser. In the event Supplier does not repair or replace the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### G3.Special Products
Unless otherwise provided on the face of this Order, any drawings, special dies, tools, patterns or equipment required for the manufacture of the goods shall be furnished by Supplier and at no cost to Purchaser. Purchaser, at its option, may at any time reimburse Supplier for Supplier's reasonable cost for such drawings, dies, tools or patterns; and shall as a result, become the owner and entitled to possession of same upon Purchaser's request thereof.

### G4.Title/Risk of Loss
Title and risk of loss or damage to the goods shall pass to Purchaser when the goods are delivered based on the Incoterm indicated by Purchaser on the face of this Order.

### G5.Delivery
Goods delivered prior to the reported delivery date shall, at Purchaser's option, not be required to be accepted by Purchaser and shall be returnable to Supplier at Supplier's sole risk and expense.

### G6.Free Trade Certificates of Origin
Supplier shall determine eligibility of all goods for preferential treatment under any applicable trade treaty, including but not limited to the North American Free Trade Agreement ("NAFTA"). If goods qualify, Supplier shall prepare and provide a certificate of origin or other appropriate documentation to Purchaser. Purchaser may withhold payment of Supplier's invoices pending receipt of such documentation for eligible goods.

### G7.Packing
All goods shall be suitably packed for shipment to prevent damage.

### SERVICES – If this Order is for services, the following paragraphs are also included in this Order:

### S1.Warranty
Supplier warrants that for the period of one year or such other period specified on the face of this Order following the completion of the services that the services and/or any deliverable items or work product in connection with services shall (i) conform to the description of the services ordered and (ii) be performed in a professional manner conforming to generally accepted practices for the performance of such services. In the event within one year or such other period specified on the face of this Order after the completion of the services the deliverable items or work product thereof is or becomes defective, Supplier shall correct such defect. Supplier does not repair or replaces the defective or nonconforming goods, Supplier shall refund the Price(s) to Purchaser and thereupon shall be entitled to retain the defective or nonconforming goods. The foregoing warranties shall run to Purchaser, its successors and assigns, and to Purchaser's customers in the event of resale or incorporation into Purchaser's products.

### S2. Services to be Rendered at Purchaser's Premises
Supplier shall take such steps as may be necessary to prevent personal injury or property damage during the performance of the services. Purchaser reserves the right for any reason to require Supplier to remove any employee of Supplier, its agents or subcontractors, performing at Purchaser's premises and have Supplier replace such individual with an employee acceptable to Purchaser.

### S3. Security Rules/Procedures
Supplier shall comply with all rules and procedures in effect at the site where the services will be performed. Purchaser may, at its discretion, require Supplier to implement and maintain a drug and alcohol procedure ("DAP") for those of its employees who will or may be assigned to perform services hereunder. If Purchaser elects to do so, Supplier's DAP shall be equivalent to Purchaser's DAP and shall be subject to Purchaser's approval, and Supplier at its expense, shall cause each of its employees who will or may be assigned to perform services to be tested prior to assignment for the illegal use of drugs, in accordance with Purchaser's DAP. Supplier shall not assign any person to perform services who refuse to be tested or whose test results are positive. A copy of Purchaser's DAP may be obtained upon request.

### S4. Disruption of Business
Unless otherwise specified on the face of this Order, services shall be provided during Purchaser's normal workday and be provided with minimum disruption to Purchaser's business operations. Supplier shall be responsible for all cleanup costs and costs of restoring Purchaser's premises to its original condition.

### S5.Waiver of Lien
At Purchaser's request, Supplier shall, prior to being entitled to receive payment, supply Purchaser with evidence of payment in full of Supplier's employees, suppliers and/or subcontractors.

### S6. Independent Contractor
Supplier shall provide the services as an independent contractor and not as an agent, servant or employee of Purchaser.

### S7. Title
Supplier hereby sells, transfers, assigns and conveys to Purchaser all the right, title and interest to all the results and/or items produced or to be produced exclusively for Purchaser by Supplier by performance of the services, including, without limitation, all copyrights, right to create derivative works, patents, trademarks, trade secrets, mask works and any other intellectual property rights pertaining thereto, and agrees to execute, and to have its employees and subcontractors execute, without additional charge to Purchaser, any documents required to evidence and/or secure Purchaser's exclusive ownership therein in any and all countries. To the extent that results and/or items produced exclusively for Purchaser as part of services contain property owned by Supplier, Supplier hereby grants Purchaser a non-exclusive, royalty-free license to utilize such Supplier owned property, but only as embodied in the results or items produced as part of the services.