**EXHIBIT B**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is entered into and made effective as of May 22, 2009 (the "Settlement Date") by and between on the one hand Nortel Networks Limited ("Nortel"), and on the other hand Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation (f/k/a Solectron Corporation, "FC") (FTS and FC, collectively, "Flextronics"), on the terms and conditions set forth below.

WHEREAS, on January 13, 2009 (the "AA Effective Date"), Nortel and Flextronics entered into an agreement (the "Amending Agreement") which, among other things, amended (i) that certain Amended and Restated Master Contract Manufacturing Services Agreement between FTS and Nortel, dated as of June 29, 2004 and as subsequently amended by the parties (the "Flex MCMSA") and (ii) that certain Master Contract Manufacturing Services Agreement between FC and Nortel, dated as of September 30, 2003 and as subsequently amended by the parties (the "SLR MCMSA" and together with the Flex MCMSA, the "MCMSAs");

WHEREAS, the Amending Agreement addressed Flextronics's inventory build-up and related exposure in several ways, including: (i) Nortel agreed to purchase from Flextronics US$120 million of Inventory, as identified in Schedule A of the Amending Agreement, via four payments over an approximately six month period; (ii) Nortel agreed to issue, on a quarterly basis, purchase orders to Flextronics for certain Inventory as defined therein as "Quarterly E&O"; (iii) the parties agreed that existing plans of record ("PORs") for transfers of operations would remain subject to those PORs; and (iv) the parties agreed to modified credit terms to provide for payments on a weekly basis for goods or services delivered or provided by Flextronics the immediately preceding week;

WHEREAS, on or about January 14, 2009, Nortel and certain of its Canadian affiliates filed an application with and were granted certain initial creditor protection pursuant to the *Companies' Creditors Arrangement Act* ("CCAA") in Canada to facilitate a comprehensive business and financial restructuring (the "CCAA Proceedings") pursuant to the terms of an initial order of the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), as the same has been and may be amended and restated from time to time (the "Initial Order"), Nortel Networks Inc. and certain of its U.S. subsidiaries filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code (the "US Bankruptcy Cases") in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court" and together with the Canadian Court, the "Courts"), and certain other affiliates of Nortel instituted creditor protection proceedings in the United Kingdom under the Insolvency Act 1986 and in certain other jurisdictions (the "EMEA Proceedings", and together with the CCAA Proceedings and the US Bankruptcy Cases, the "Proceedings");

WHEREAS, the Amending Agreement was approved by the Initial Order granted initially on January 14, 2009;

WHEREAS, subsequent to the commencement of the Proceedings, the parties discovered certain disputes between them regarding the interpretation of the Amending Agreement and certain other matters;

WHEREAS, following the commencement of the Proceedings, the parties indentified disputes relating to their interpretation of the Amending Agreement. Specifically, the parties disputed whether: (i) Nortel's obligations to purchase inventory in accordance with existing PORs is in addition to, or included within, its obligation to purchase from Flextronics US$120 million of inventory as set forth in Section 1 of the Amending Agreement; (ii) Flextronics's notice of termination of the SLR MCMSA is effective and whether the SLR MCMSA will terminate on July 12, 2009; (iii) Nortel's Quarterly E&O purchase orders to Flextronics must include inventory acquired by Flextronics on or before the AA Effective Date; and (iv) for purposes of determining the due date for Nortel's payments in accordance with the modified weekly credit terms set forth in the Amending Agreement, the date of "delivery" shall mean the date that Flextronics delivers the goods in to the Incoterms location agreed by the parties, or the date that Nortel actually takes possession of the goods from the carrier ((i) through (iv) collectively, the "Disputes"); and

WHEREAS, the parties wish to resolve the Disputes and all other disputes relating to the interpretation of the Amending Agreement known by both of the parties as of the date hereof; and

**Nortel-Flextronics**                                                                                    **Settlement Agreement, May 2009**

WHEREAS, other disputes have arisen between the parties that are being addressed under a settlement side letter, dated as of the date hereof to be signed simultaneously with this Settlement Agreement (the "Side Letter");

NOW, THEREFORE, in consideration of the foregoing, the consideration recited below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties agree to resolve the Disputes, the issues addressed in the Side Letter and all other disputes relating to the interpretation of the Amending Agreement known by both of the parties as of the date hereof, in accordance with and on the terms set forth herein and in the Side Letter, as follows:

1.     **Plan of Record Transfers and Purchases.**

   a.     Nortel agrees to purchase inventory in accordance with the Planned Transfers, as defined below.  Such agreement is in addition to Nortel's existing obligation to purchase from Flextronics and Flextronics's existing obligation to sell to Nortel, US$120 million of Pre-Filing Inventory, as defined below, as set forth in Section 1 of the Amending Agreement.  For any Transfers of operations other than the Planned Transfers ("Future Transfers"), the parties shall agree upon the terms and conditions to govern such Future Transfers, and Nortel will purchase Inventory (as defined in the MCMSAs) as may be agreed, it being understood that Nortel has no obligation pursuant to any of the Amending Agreement, Settlement Agreement or the Side Letter to purchase Pre-Filing Inventory as part of any Future Transfers (it being further understood that Nortel may request and make such a purchase, but not as any obligation established by any of the Amending Agreement, Settlement Agreement or the Side letter).  With respect specifically to Future Transfers involving ███████████████████████████████, the parties agree to act reasonably in establishing the terms for those Future Transfers.



2.     **Pre-Filing Inventory.**

   a.     For the purposes of this Agreement, "Pre-Filing Inventory" means all Inventory on-hand as of 11:59 p.m. on the AA Effective Date.  For the avoidance of doubt, unless otherwise provided in this Settlement Agreement or the

**Nortel-Flextronics**                                                    **Settlement Agreement, May 2009**

Amending Agreement as clarified by this Settlement Agreement, Flextronics shall have no right to seek immediate payment in any jurisdiction in respect of Pre-Filing Inventory and any claims of Flextronics in respect of obligations of Nortel to purchase Pre-Filing Inventory under the MCMSAs, whensoever such obligation may arise, shall be subject to, and dealt with, in accordance with the rules governing the standard claims reconciliation processes established for, in the case of the CCAA Proceedings, unsecured claims, in the case of the US Bankruptcy Cases, prepetition unsecured claims, and in the case of the Proceedings in any other jurisdiction, in a manner consistent with the treatment of unsecured claims in the CCAA Proceedings (individually and collectively, the "Applicable Pre-Petition Rules").



4.       **Termination of SLR MCMSA.** The parties hereby agree that the termination of the SLR MCMSA, pursuant to the termination notice delivered by Flextronics dated January 12, 2009, shall be effective on December 12, 2009, subject

to the terms hereof (and such terms and conditions as apply to such termination pursuant to the SLR MCMSA). Notwithstanding the termination of the SLR MCMSA, the parties agree that Flextronics shall continue to perform all operations under the present VSHA applicable to the CDMA business (the "CDMA VSHA"), in accordance with the terms and conditions of the SLR MCMSA as if not terminated on December 12, 2009; it being understood that the CDMA VSHA may be terminated in accordance with the terms of the SLR MCMSA; provided, however, any notice to that effect may not be given by Flextronics before December 13, 2009.  For the avoidance of doubt, (a) except with respect to the CDMA VHSA, all other business and operations conducted pursuant to the SLR MCMSA shall terminate in accordance with the terms of the SLR MCMSA as of December 12, 2009, and (b) until such termination of the SLR MCMSA, the Wireline business in Creedmoor, N.C., shall continue to be conducted under the letter of intent between the parties (including the pricing model set forth therein), dated September 19, 2008 (the "Creedmoor LOI").

5.      **Excess Inventory Obligations**. Notwithstanding anything in the Amending Agreement to the contrary, Pre-Filing Inventory held by Flextronics or manufactured by Flextronics on or before January 13, 2009 may be used in the calculation of Quarterly E&O.  However, Nortel shall not be required to purchase any Pre-Filing Inventory as part of Nortel's purchase of the Quarterly E&O. The following shall be excluded for purposes of the calculation of Quarterly E&O: (i) any Inventory that is defective or that does not comply with the applicable Specifications in accordance with the MCMSAs; (ii) any Inventory previously paid for by Nortel under the Amending Agreement or this Settlement Agreement; and (iii) Inventory Nortel can demonstrate was not acquired using prudent purchasing practices in accordance with the MCMSAs. Any Inventory that Nortel is obliged to purchase pursuant to section 1 hereof shall be included in consumption.  For the avoidance of doubt, (a) in accordance with the supply chain management practices required pursuant to the MCMSAs, Flextronics shall continue to consume Inventory on a FIFO basis (i.e., oldest inventory is consumed first) and shall present Quarterly E&O analyses on this basis, and (b) subject to (a), only Inventory acquired after the AA Effective Date is eligible for purchase by Nortel pursuant to the Quarterly E&O Process; Pre-Filing Inventory is not eligible for purchase pursuant to this obligation.

The first period to which the processes described in this section 5 apply is that commencing April 1, 2009 looking at the six month period covering Q2 and Q3 2009.  Promptly following the date on which this Settlement Agreement becomes binding on the parties, the parties will complete the Quarterly E&O process for the initial period based on the Inventory balances on hand as of April 1, 2009 and the forward 6 month forecast as of April 1, 2009.

Without limiting the foregoing, the parties acknowledge that Flextronics has or will submit a claim to Nortel for excess and obsolete inventories as of January 1, 2009, (pursuant to the provisions applicable to E&O issues in effect between the parties as of January 1, 2009) which claim shall be addressed in accordance with the Applicable Pre-Petition Rules.

Notwithstanding Section 4 of the Amending Agreement, provided that Nortel issues separate purchase orders pursuant to this section, finished Products shall not be included in the Quarterly E&O calculation or Purchase Obligation.  Instead, Nortel shall issue separate purchase orders at the end of each quarter for finished Products that were manufactured during such quarter in accordance with Nortel forecasts (but excluding finished Products manufactured prior to January 14, 2009), and Nortel shall purchase all such finished Products in Flextronics's inventory on a quarterly basis, pursuant to the terms set forth in the Amending Agreement, as clarified below in this Settlement Agreement.

For the further avoidance of doubt, examples of the excess Inventory buyback calculations are provided in Exhibit A.

6.      **Meaning of "Delivery" and Payment.**

        a.      The parties agree that the word "delivered" in the phrase "all amounts due for Products, Materials, services or other items delivered or provided by Flextronics during the immediately previous week (Monday through Sunday)" in Section 2 of the Amending Agreement shall mean "physically received at a Nortel facility or other Nortel-determined final delivery location".

        b.      From and after the Settlement Date, notwithstanding Section 2 of the Amending Agreement, Nortel shall make payments to Flextronics of all amounts due in accordance with the payment terms described below.  Subject to the rest of the terms in this section, (a) provided the Products or Materials have been properly receipted and matched by Nortel, Nortel shall pay on a ▓▓▓▓▓ basis all invoices for Products or Materials delivered, or services provided, within

░░░ days of the invoice date, and (b) for Products or Materials not receipted and matched within ░░ days of the invoice date, Nortel shall pay invoices within ░░░ days following receipt and matching by Nortel.

░░░ It is understood that in any case payments made from EMEA entities may require an additional ░░░ days until the funds are in Flextronics's bank.

7.      **Final Settlement of Settled Issues; Acceptance by Court.**  Subject to the terms and conditions of this Settlement Agreement and the Side Letter, (a) the parties acknowledge that this Settlement Agreement represents the full and final settlement of the Disputes and all other disputes relating to the interpretation of the Amending Agreement known by both of the parties as of the date hereof , (b) each party hereby represents and warrants that, as of the date hereof, it does not know of any disputes relating to the interpretation of the Amending Agreement other than the Disputes and the issues addressed in the Side Letter, (c) each party hereby covenants that it shall not and shall not cause or allow its affiliates, subsidiaries, assigns or successors in interest to assert any claim or take any other action against the other party or its subsidiaries or affiliates either directly or indirectly in respect of any such Disputes and all other disputes relating to the interpretation of the Amending Agreement known by both of the parties as of the date hereof, and (d) each party agrees that this Settlement Agreement may be plead as a defense to any such claim or action in any court of competent jurisdiction.  In connection with the foregoing, the parties agree that monetary damages would not be sufficient to remedy any breach by a party of this section and that the non-breaching party would be entitled to equitable relief, including, without limitation, temporary injunctive relief preventing the unilateral termination of performance and specific performance in respect of any breach by Flextronics of this section of the Settlement Agreement.  The parties agree to use their best efforts to obtain approval of this Settlement Agreement by one or both of the Courts (the "Approval"), and no part of this Settlement Agreement shall be binding on the parties until such Approval is obtained.

8.      **General.**  Terms not defined herein shall have the meanings provided in the Amending Agreement and if not provided therein in the applicable MCMSA.  To the extent of any conflict, inconsistency or ambiguity between and among this Settlement Agreement, the Amending Agreement and the MCMSAs, this Settlement Agreement shall control followed by the Amending Agreement, followed by the applicable MCMSA.  Except as set forth herein, this Settlement Agreement is not a waiver or release of any rights or remedies available to either party at law or in equity.  To the extent that the last date for any act or action permitted or required to be taken under this Settlement Agreement falls on a day that is not a Business Day, that act or action may be taken on the next Business Day following.  Except as provided by this Settlement Agreement and the Amending Agreement, the MCMSAs shall continue to govern the relationship of the parties and shall continue in effect in accordance with their respective terms.  If any of the provisions or terms of this Settlement Agreement are deemed unenforceable for any reason, then the parties agree that the rest of the Settlement Agreement should be given full force and effect to the greatest extent permissible under applicable law, and that the court interpreting such provision is entitled to amend or substitute a provision that gives effect to the original intent and meaning of the unenforceable provision to the greatest extent possible.  This Settlement Agreement may be executed in counterparts, and each party hereto may affirm its assent by any electronic or facsimile means.  This Settlement Agreement shall be governed by the laws of the Province of Ontario and the federal laws of Canada applicable therein.

9.      **No Assumption, etc.**  The parties agree that this Settlement Agreement is not intended to and shall not constitute or give rise to the assumption, rejection, novation or repudiation of the Amending Agreement or the MCMSAs or any VSHAs or purchase orders thereunder or the Creedmoor LOI or, except as expressly provided herein, otherwise affect the parties' rights with respect to the Amending Agreement or the MCMSAs or any VSHAs or purchase orders thereunder, whether in connection with the Proceedings or otherwise.

[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

Nortel-Flextronics                                                          Settlement Agreement, May 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Settlement Agreement.


**Nortel Networks Limited**                           **Flextronics Telecom Systems Ltd.**

_____                                _____
Signed                                                 Signed

Gordon A. Davies
_____                                _____
Print Name  Chief Legal Officer                        Print Name
            and Corporate Secretary

_____                                _____
Title                                                  Title


_____                                **Flextronics Corporation**
Signed

ANNA VENTRESCA                                         _____
_____                                Signed
Print Name

ASSISTANT SECRETARY                                    _____
_____                                Print Name
Title

                                                       _____
                                                       Title

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Settlement Agreement.

**Nortel Networks Limited**

Signed

Print Name

Title

**Flextronics Telecom Systems Ltd.**

Signed

Manny Marimuthu

Print Name

Director

Title

**Flextronics Corporation**

Signed

Print Name

Title

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Settlement Agreement.

**Nortel Networks Limited**                    **Flextronics Telecom Systems Ltd.**

_____                    _____
Signed                                        Signed

_____                    _____
Print Name                                    Print Name

_____                    _____
Title                                         Title

                                              **Flextronics Corporation**

                                              _____
                                              Signed

                                              _Michael Clarke_
                                              Print Name

                                              _President Flex/Infrastructure_
                                              Title

**Nortel-Flextronics**                                                    **Settlement Agreement, May 2009**

## EXHIBIT A

### Quarterly E&O Purchases - Example

|                   | A<br>Excess | B<br>No<br>Receipts | C<br>No excess |
|-------------------|-------|-------|-------|
| Pre-Filing Inv    | 100   | 100   | 100   |
| Post file receipt | 20    | 0     | 20    |
| Total             | 120   | 100   | 120   |
| Consumption       | -50   | -50   | -110  |
| Net Inv           | 70    | 50    | 10    |
| Six mo demand     | -40   | 0     | -60   |
| Excess            | 30    | 50    | -50   |
| Buyback           | 20    | 0     | 0     |

Nortel-Flextronics                                                                                          Side Letter May, 2009

**Side Letter**

This Side Letter (the "**Side Letter**") is entered into and made effective as of May 22, 2009 by and between on the one hand Nortel Networks Limited ("**NNL**"), and on the other hand Flextronics Telecom Systems Ltd. ("**FTS**") and Flextronics Corporation (f/k/a Solectron Corporation, "**FC**" and together with FTS, "**Flextronics**"), on the terms and conditions set forth below, with reference to the Settlement Agreement by and between the parties dated as of the date hereof.

1. **Side Letter.** The Amending Agreement dated January 13, 2009 (the "**Amending Agreement**"), between NNL and Flextronics, the Settlement Agreement between such parties, and the Side Letter, together settle or provide for a process to resolve or otherwise address all outstanding issues between NNL (together with its affiliates "**Nortel**") and Flextronics (together with Nortel, the "**Parties**") identified in that certain letter from Flextronics addressed to Pavi Binning of Nortel dated March 30, 2009 (the "**Flextronics Letter**"). Capitalized terms have the meaning given to such terms in the Amending Agreement and the Settlement Agreement.

2. **Extension of Credit.** Flextronics affirms that compliance (on behalf of both Flextronics and Nortel) with the terms of the MCMSAs including any VSHAs thereunder, in each case as amended by the Amending Agreement and further amended or modified, as applicable, in accordance with the terms of the Settlement Agreement and this Side Letter, including without limitation complying with the forecasting, ordering and delivering obligations and obligations to manage the supply chain set out therein, provided that Nortel is not in material breach of its obligations under any of the foregoing agreements, shall not constitute or be deemed to constitute an extension of credit for the purposes of Section 11.3 of the CCAA or paragraph 18 of the Initial Order, and that Flextronics shall not make any claim in the CCAA Proceedings, or any similar claim in the US Bankruptcy Cases, in respect thereof to seek to avoid performing such obligations.

3. _____ To the extent that Flextronics has any claims against Nortel in respect of _____, Flextronics hereby agrees that it shall file such claims in accordance with the rules governing the standard claims reconciliation processes applicable in the Proceedings (individually and collectively, the "**Applicable Rules**"). For greater certainty, Nortel confirms that Flextronics has not relinquished any claim, including any trust claim, that it may have in respect of the foregoing nor has it relinquished any rights and remedies that it may have against any other entity, including but not limited to, _____.

4. _____ Flextronics agrees that with respect to _____:

   (i) _____; and

   (ii) Pursuant to the terms of that certain letter agreement dated June 2004 between Nortel Networks Limited and Flextronics International Limited any contractual liability for any claims for _____ has terminated.

5. **Montreal Closing.** The parties hereby agree to seek advice and directions from the Canadian Court by way of motion with respect to the characterization of the obligation of Nortel to pay for U.S.$_____ in Inventory transfers relating to the Montreal closing and associated transfers as a post-filing or pre-filing obligation and that Nortel shall pay such amount to the extent it is determined to be an obligation arising in

respect of the period after the AA Effective Date and that such amount will be dealt with in accordance with the Applicable Rules (which may include, if applicable, the Applicable Prepetition Rules).

6.



7.

8. **Resolution Process of Accounts Receivable and Accounts Payable Offsets.** The Parties agree to use reasonable best efforts to agree on commercial claims in respect of accounts payable and receivable between Flextronics and the Nortel entities subject to the Proceedings or under administration or other similar proceedings, with respect to completing an offset reconciliation and payment process for such claims on the basis of set-off for such claims on an entity by entity basis, including (i) whether such claims are in respect of the period on or prior to the AA Effective Date or after the AA Effective Date, and (ii) the amounts and entities to which such claims relate, including by having representatives of Flextronics and Nortel meet either in person or by conference call on a Business Day at least once every week, or as otherwise mutually agreed by the Parties, prior to the completion of such reconciliation and payment process to update one another on progress, issues, timing and problems being encountered during such process. The reconciliation and payment of all such claims shall be addressed pursuant to the Applicable Rules.

9.



10. **Miscellaneous.** Except as set forth herein, this Side Letter is not a waiver or release of any rights or remedies available to either party at law or in equity. To the extent that the last date for any act or action permitted or required to be taken under this Side Letter falls on a day that is not a Business Day, that act or action may be taken on the next Business Day following. If any of the provisions or terms of this Side Letter are deemed unenforceable for any reason, then the Parties agree that the rest of the Side Letter should be given full force and effect to the greatest extent permissible under applicable law, and that the court interpreting such provision is entitled to amend or substitute a provision that gives effect to the original intent and meaning of the unenforceable provision to the greatest extent possible. This Side Letter may be executed in counterparts, and each party hereto may affirm its assent by any electronic or facsimile means.

This Side Letter shall be governed by the laws of the Province of Ontario and the federal laws of Canada applicable therein.


[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Side Letter.


**Nortel Networks Limited**                          **Flextronics Telecom Systems Ltd.**

_____                          _____
Signed                                               Signed
        Gordon A. Davies
        Chief Legal Officer
_____                          _____
Print Name  and Corporate Secretary                  Print Name


_____                          _____
Title                                                Title


_____                          **Flextronics Corporation**
Signed

                                                     _____
_____                          Signed
Print Name  ANNA VENTRESCA

_____                          _____
Title  ASSISTANT SECRETARY                           Print Name


                                                     _____
                                                     Title

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Side Letter.

**Nortel Networks Limited**

_____
Signed

_____
Print Name

_____
Title

**Flextronics Telecom Systems Ltd.**

_____
Signed

Manny Marimuthu
Print Name

Director
Title

**Flextronics Corporation**

_____
Signed

_____
Print Name

_____
Title

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Side Letter.

**Nortel Networks Limited**                          **Flextronics Telecom Systems Ltd.**

_____                          _____
Signed                                               Signed

_____                          _____
Print Name                                           Print Name

_____                          _____
Title                                                Title

                                                     **Flextronics Corporation**

                                                     _____
                                                     Signed

                                                     _Michael Clarke_
                                                     Print Name

                                                     _President Flex/Infrastructure_
                                                     Title