EXHIBIT A

Court File No.  09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION (the "Applicants")**

**ELEVENTH REPORT OF THE MONITOR**
**DATED MAY 28, 2009**

**INTRODUCTION**

1.    On January 14, 2009, Nortel Networks Corporation ("NNC" and collectively with all its
      subsidiaries, "Nortel" or "Company"), Nortel Networks Limited ("NNL"), Nortel
      Networks Technology Corporation ("NNTC"), Nortel Networks International
      Corporation ("NNIC") and Nortel Networks Global Corporation ("NNGC") filed for and
      obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA").
      Pursuant to the Initial Order of this Honourable Court dated January 14, 2009, as
      amended and restated (the "Initial Order"), Ernst & Young Inc. ("EYI") was appointed as
      the Monitor of the Applicants (the "Monitor") in the CCAA proceeding. The stay of
      proceedings was extended to July 30, 2009, by this Honourable Court in its Order dated
      April 28, 2009.

**PURPOSE**

2.    The purpose of this Eleventh Report of the Monitor ("Eleventh Report") is to provide
      information regarding the Applicants' motion seeking approval of a non-exclusive license
      of the Long-Term Evolution ("LTE"), Mobility Management Entity ("MME") and
      Network Element Manager ("NEM") technologies to Hitachi Communication

- 2 -

Technologies, Ltd. ("Hitachi"), and to provide the Monitor's support for the License Agreement.

**TERMS OF REFERENCE**

3.   In preparing this Report, EYI has relied upon discussions with management of Nortel and financial information prepared by the Company. EYI has not audited, reviewed, or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, EYI expresses no opinion or other form of assurance on the information contained in this Eleventh Report.

4.   Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

5.   Capitalized terms not defined in this Eleventh Report are as defined in the Affidavit of John Doolittle (the "Doolittle Affidavit") sworn on January 14, 2009, or previous reports of the Monitor.

**GENERAL BACKGROUND**

6.   Nortel is fundamentally a technology company that designs, develops and deploys communication products, systems, and solutions to its carrier and enterprise customers around the globe. Its principal assets include its people, the intellectual property derived and maintained from its R&D activities, its customers and other significant contracts and agreements.

7.   Nortel conducts its global business through four reportable business unit segments: Carrier Networks ("CN"), Enterprise Solutions ("ES"), Metro Ethernet Networks ("MEN"), and the LG-Nortel joint venture. The revenues and assets of each of the business units are distributed among the various Nortel legal entities and joint ventures around the world.

**BACKGROUND**

8.   On December 3, 2008, Nortel issued a press release announcing that KDDI Corporation ("KDDI"), Japan's second largest cellular operator, would deploy a next-generation LTE

- 3 -

wireless network using a core networking solution provided by Hitachi in collaboration with Nortel.

9. LTE is a next generation wireless technology designed to increase network bandwidth for multimedia content and applications.

10. LTE technology is divided into two primary components: a packet core component and a radio access component.

11. Nortel has made considerable research and development investments in its LTE technology.

12. Under the collaboration with Hitachi on the KDDI deployment, Nortel was to provide the MME and NEM components of the LTE core technology.

13. To formalize their collaboration on this project, NNL and Hitachi entered into a Joint Development Agreement on January 17, 2009 (the "JDA"), to further develop and integrate their respective technologies for implementation within the KDDI network.

14. Since Nortel filed for creditor protection, concerns have been expressed regarding NNL's ability to perform its obligations under the JDA. As a result, Hitachi and NNL entered into discussions in respect of a mutually agreeable solution. NNL, having regard to both the KDDI project and its expenses relating to the MME and NEM technology, determined that the grant of a non-exclusive license to Hitachi of the MME and NEM technology, as detailed below, was an appropriate course of action in the circumstances.

**THE HITACHI LICENSE AGREEMENT**

15. NNL has agreed to provide Hitachi with a non-exclusive license for its MME and NEM technologies pursuant to a license agreement dated May 26, 2009 (the "License Agreement"), a copy of which is attached as confidential Exhibit "A" to this Eleventh Report. Given the sensitive nature of certain of the information contained in the License Agreement and the impact such information could have on any future negotiations with respect to the LTE technology, the Monitor requests that the confidential Exhibit "A" to this Eleventh Report be sealed by this Honourable Court. A redacted version of the

\5725476

- 4 -

License Agreement is attached to the Affidavit of George Riedel sworn May 27, 2009, filed in connection with the Applicants' motion seeking approval of the License Agreement.

16.    Under the License Agreement, NNL will provide the licensed technology on an "as is, where is" basis, without any further development commitments. Hitachi will be responsible for any further development required to get the licensed technology to the stage required for deployment in the KDDI network. The JDA will be terminated and will have no further force or effect save for provisions which survive pursuant to their terms.

17.    Hitachi's use of the Nortel technologies licensed under the License Agreement will be limited to use in connection with KDDI's network in Japan. No exclusivity has been provided to Hitachi. Further, the license may not be assigned, transferred or sub-licensed by Hitachi save in limited circumstances.

18.    In consideration for the granting of the license, Hitachi will pay NNL an up-front license fee for an initial license period ranging from approximately 5 years to 7 and one-half years, depending on the occurrence of certain events as set forth in the License Agreement. For the ten year period following the initial license period, Hitachi will pay an annual royalty to NNL based on Hitachi's revenues from licensing the MME/NEM software during such period. After this period, Hitachi will only be permitted to use the licensed technology so long as KDDI is using any products containing the licensed technology and Hitachi's use will be restricted to maintaining, repairing and supporting such KDDI products.

19.    Nortel has also agreed to provide, for a specified fee, design training for certain Hitachi engineers at Nortel's facility in Richardson, Texas for a maximum of 14 weeks.

20.    Hitachi has requested that NNL seek this Honourable Court's approval of the License Agreement.

\5725476

- 5 -

## MONITOR'S ANALYSIS AND RECOMMENDATIONS

21.     The Monitor has reviewed the License Agreement, together with other documentation and analysis prepared by Nortel for their internal decision making purposes.

22.     The Monitor is of the view that the fees to be received by NNL from Hitachi under the License Agreement are reasonable having regard to, on the one hand, the estimated cash flow that could have been earned under the originally contemplated collaboration with Hitachi and, on the other hand, the additional costs that would have been incurred by Nortel to meet its obligations under the JDA.

23.     The Monitor is also of the view that, given the relatively narrow scope of the license in terms of the technology covered and the usage being limited to KDDI's network in Japan, the License Agreement will not prevent Nortel from earning future revenues from its LTE technology as opportunities arise.

24.     The Monitor therefore supports NNL entering into the License Agreement with Hitachi and the Applicants' motion for approval thereof by this Honourable Court.

25.     For the reasons described in Paragraph 15, the Monitor recommends that confidential Exhibit "A" to this Eleventh Report be sealed by this Honourable Court.

All of which is respectfully submitted this 28th day of May 2009.

**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants

Per:

Murray A. McDonald

President

\5725476

CONFIDENTIAL EXHIBIT "A"

[Redacted]

\5725476

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

---

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

## ELEVENTH REPORT OF THE MONITOR DATED MAY 28, 2009

---

**GOODMANS LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada  M5B 2M6

Jay A. Carfagnini (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\5726149