LG ELECTRONICS INC.

Per: _____
Name:
Title:

Per: *[signature]*
Name: DAVID S. KIM
Title: VICE PRESIDENT, STRATEGY + BUSINESS DEVELOPMENT

3491162.1

Acknowledged and agreed to this 27th day of May, 2009

**ERNST & YOUNG INC.**, in its role as the Monitor in Nortel's CCAA proceedings and not in its personal capacity

Per: _/s/ Sharon Hamilton_
Name: Sharon Hamilton
Title: Senior Vice-President

Per: _____
Name:
Title:

3490540.1

**APPENDIX B**

This is Exhibit......"B"........referred to in the
affidavit of ....George Riedel............
sworn before me, this ....27th............
day of ....May............, 20.09.

..................................................
A COMMISSIONER FOR TAKING AFFIDAVITS
DOUGLAS PARKER

**PERSONAL AND CONFIDENTIAL**

May 27, 2009

Mr. Khush Dadyburjor
Vice President, Mergers & Acquisitions
Nortel Networks Limited
195 The West Mall
Toronto, Ontario M9C 5K1
Canada

Dear Khush:

We are pleased to confirm the arrangements under which Goldman, Sachs & Co. ("Goldman Sachs") is exclusively engaged by Nortel Networks Limited (the "Company" or "Nortel") as financial advisor in connection with the possible sale of all or a portion of the shares or assets of LG-Nortel Co. Ltd. ("LG-Nortel"), a joint venture between Nortel and LG Electronics Inc. ("LGE"). Each of Nortel and LGE shall be referred to herein as a "Shareholder" and together as the "Shareholders".

During the term of our engagement, we will provide you with financial advice and assistance in connection with this potential transaction through the entire sale process to consummation of any transaction, which may include performing financial analyses, assisting in the due diligence process, searching for a purchaser acceptable to you, coordinating visits of potential purchasers, assisting in the selection of bidders and the winning bid, assisting you in negotiating the terms of the transaction and assisting you in consummating the transaction.

In the event LGE decides to undertake a sale of its interests in LG-Nortel, Goldman Sachs and/or Goldman Sachs (Asia) L.L.C., Seoul Branch may enter into a separate engagement letter with LGE in connection with the matters described in this letter, provided that the fees for such separate engagement shall be as set out in this engagement letter and the aggregate consideration used for calculating the fees in both engagement letters shall be the aggregate consideration received by Nortel and LGE, as specified herein. In the event Goldman Sachs and/or Goldman Sachs (Asia) L.L.C., Seoul Branch is also engaged by LGE in connection with the matters described in this letter, Nortel understands and acknowledges that we would be rendering services simultaneously to both Shareholders in connection with

46

Nortel Networks Limited
May 27, 2009
Page Two

assisting them in effecting the sale of all or a portion of LG-Nortel and that Goldman Sachs and/or Goldman Sachs (Asia) L.L.C., Seoul Branch would not be acting as a financial advisor to any Shareholder in connection with such Shareholder's individual interest, or its respective rights and obligations relative to the other Shareholder. Nortel understands and acknowledges that potential conflicts of interest, or a perception thereof, may arise as a result of our rendering services to both of the Shareholders. Nortel hereby waives any claim of conflict of interest with respect to such engagement.

Nortel and Goldman Sachs understand and acknowledge that pursuant to the LG-Nortel Joint Venture Sale Process Protocol Agreement, dated May 27, 2009, a copy of which has been provided to Goldman Sachs, Nortel is authorized on behalf of LGE to instruct Goldman Sachs in connection with the matters pertaining to this engagement, and Goldman Sachs is authorized to act on such instruction as if such instruction had been received from both Shareholders.

The fees for our engagement will depend on the outcome of this assignment. If a sale of all or a portion of the outstanding common stock (or joint venture, membership, partnership or other applicable equity interests) (collectively, "equity interests") or assets of LG-Nortel (and the receipt by the Shareholders, directly or indirectly, of the proceeds from such asset sale) is accomplished in one or a series of transactions, we will charge a transaction fee based on the aggregate consideration paid in such transaction or transactions pursuant to the following schedule:

Aggregate Consideration          Transaction Fee

**REDACTED**

Except as provided herein, a transaction fee will be paid to us in cash upon consummation of each transaction. If there is more than one transaction arising from this engagement then

47

Nortel Networks Limited
May 27, 2009
Page Three

the consideration paid in such transactions will be aggregated for purposes of determining the fee payable. For greater certainty, once the minimum transaction fee of U.S. ▇▇▇ is paid no further transaction fees will be payable until the aggregate consideration received exceeds U.S. ▇▇▇

The aggregate consideration for purposes of calculating a transaction fee shall be:

(i) In the case of a sale or disposition of assets of LG-Nortel, the total consideration paid for such assets, plus the principal amount of all indebtedness for borrowed money (including, without limitation, any lending lease obligations) assumed by the purchaser. In addition, if less than U.S. ▇▇▇ of cash is sold or disposed in such transaction, aggregate consideration shall also include the amount of the deficit between the amount of cash that is actually sold or disposed in such transaction and U.S. ▇▇▇

(ii) In the case of the sale, exchange or purchase of all of outstanding common stock (or other equity interests) of LG-Nortel, the total consideration paid for such stock (or such equity interests) or, if less than all but more than 50% of such stock (or such equity interests) is purchased, the total consideration that would have been paid if all such stock (or such equity interests) had been purchased on a fully diluted basis on the same terms, plus the principal amount of all indebtedness for borrowed money (including, without limitation, any lending lease obligations) as set forth on the most recent consolidated balance sheet of LG-Nortel prior to the consummation of such sale, exchange or purchase and the total consideration paid for any other equity securities of LG-Nortel. In addition, if upon consummation of such transaction the amount of cash at LG-Nortel is less than U.S. ▇▇▇ aggregate consideration shall also include the amount of the deficit between the amount of cash at LG-Nortel upon consummation of such transaction and U.S. ▇▇▇

Amounts paid into escrow; and contingent payments actually paid directly or indirectly to the Shareholders, in connection with any transaction will be included as part of the aggregate consideration. Fees on amounts paid into escrow will be payable upon the establishment of such escrow; provided, however, such fees will be payable upon the release of such amounts from escrow to or on behalf of the Shareholders if the related escrow agreement provides that the escrow agent shall not pay any such amounts from escrow to or on behalf of the Shareholders prior to the payment of such fees to Goldman Sachs. If the consideration in connection with any transaction may be increased by payments related to future events, the portion of our fee relating to such contingent payments will be calculated and paid if and when such contingent payments are made.

If any portion of the aggregate consideration is paid in the form of securities, the value of such securities, for purposes of calculating the transaction fee, will be determined by the average of the last sales prices for such securities on the five trading days ending five trading

48

Nortel Networks Limited
May 27, 2009
Page Four

days prior to the date of the consummation of the transaction. If such securities do not have an existing public trading market, the value of the securities shall be the mutually agreed upon fair market value on the day prior to the consummation of the transaction.

You also agree to reimburse us quarterly, upon request, and upon consummation of the transaction or transactions contemplated hereby or upon termination of our services pursuant to this letter, for our reasonable expenses, including the fees and disbursements of our attorneys, plus any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to in this letter. The Company instructs Goldman Sachs to send any invoice related to expenses to Khush Dadyburjor at the address above or at kdadybur@nortel.com.

Nortel is subject to proceedings under the *Companies' Creditors' Arrangement Act* (the "CCAA"). Nortel shall promptly apply for an order of the court supervising the CCAA proceedings in terms satisfactory to Nortel and Goldman Sachs substantially in the form of the draft order attached hereto as Exhibit "A" (the "Claims Bar Order") (1) approving this engagement and its terms, (2) securing all fees, expenses and disbursements that at any time may be owing to Goldman Sachs hereunder (except expenses described in Annex A hereto) by a charge on proceeds of the interest of Nortel in LG-Nortel (including (x) any distributions from LG Nortel as a result of a sale and (y) any other distributions from LG Nortel to secure unreimbursed expenses that may be owing to Goldman Sachs at the time of such distribution (except expenses described in Annex A hereto)) ranking pari passu with the Administration Charge granted by the CCAA court in the Initial Order and (3) directing Nortel to pay the fees and/or invoices payable hereunder (except expenses described in Annex A hereto) to Goldman Sachs forthwith on receipt and in priority to any distribution of any such proceeds to creditors whose claims rank junior to the Administration Charge. Such order shall also declare that Goldman Sachs, its affiliates, partners, directors, employees, agents and controlling persons have no liability with respect to any and all losses, claims, damages or liabilities, of any nature or kind, to any person in connection with or as a result of either this engagement or any matter referred to in this letter except to the extent such losses, claims, damages or liabilities result from the gross negligence or willful misconduct of Goldman Sachs in performing the engagement. Nortel or the Monitor (as defined below) (as may be required) will seek specific recognition of the Claims Bar Order in the United States of America pursuant to Chapter 15 of the U.S. Bankruptcy Code and in the Republic of Korea pursuant to its insolvency laws and will make reasonable best efforts to obtain such recognition of the Claims Bar Order. Nortel acknowledges that Goldman Sachs shall be under no obligation to provide any services under this letter unless and until this letter (including Annex A hereto) is approved in its entirety by the Claims Bar Order. Goldman Sachs agrees that it will begin its duties under this Engagement Letter once the Claims Bar Order has been granted and agrees to cooperate with and assist Nortel with respect to (1) its application for the Claims Bar Order and for the recognition of that order in the United States

Nortel Networks Limited
May 27, 2009
Page Five

of America and the Republic of Korea and (2) in the CCAA proceedings to the extent they relate to this engagement, the sale process and the transaction and Goldman Sachs agrees to provide such information and reports to Nortel or Ernst & Young Inc., the Monitor in such proceedings (the "Monitor"), as may be reasonably requested from time to time.

In order to coordinate most effectively our efforts together to effect a transaction satisfactory to the Company, the Company will promptly inform us of any discussions it may have or of any inquiry it may receive concerning the availability of all or a portion of the stock (or equity interests) or assets of LG-Nortel for purchase.

The Company agrees to cause any bidders to a transaction to agree that Goldman Sachs shall not have any liability to such bidder or such bidder's representatives in connection with or as a result of this engagement or any information disseminated to such bidder in connection with a transaction by obtaining the following written acknowledgement as a condition of participation in the process contemplated by this Engagement:

> "The Interested Party also agrees that, save for any liability or obligation to the extent arising out of the gross negligence or willful misconduct of Goldman, Sachs & Co. in performing services under the engagement letter between Goldman, Sachs & Co. and Nortel (the "Engagement Letter"), none of Goldman, Sachs & Co., its affiliates, partners, directors, agents, employees or controlling persons shall have any liability or obligation to the Interested Party or the Interested Party's Representatives in connection with or as a result of such engagement, the potential Transaction or any information provided to such Interested Party or its Representatives in connection with the Transaction. The Interested Party on its own behalf and on behalf of its Representatives acknowledges that they are bound by the order of the Ontario Superior Court administering the proceedings of Nortel under the *Companies' Creditors Arrangement Act* (Canada) that, among other things, approved the Engagement Letter."

Please note that any written or oral advice provided by Goldman Sachs in connection with our engagement is exclusively for the information of the Board of Directors and senior management of the Company in connection with their consideration of the transaction, and such advice may not be disclosed to any third party (other than the Monitor and LGE who have agreed to treat such information confidentially and in the case of LGE, not rely on it) or circulated or referred to publicly or used or relied on by any other party or for any other purpose without our prior written consent, except as such disclosure may be required pursuant to a subpoena or order issued by a court of competent jurisdiction or by a judicial or administrative or legislative body or committee, provided that the Company shall have (a) promptly notified Goldman Sachs of the receipt of any such subpoena or order, (b) consulted with Goldman Sachs as to the advisability of taking steps to resist or narrow the scope of the

Nortel Networks Limited
May 27, 2009
Page Six

disclosure contemplated thereby and (c) cooperated with Goldman Sachs in any efforts it may make to obtain an order or other reliable assurance that confidential treatment will be accorded to such advice.

In connection with engagements such as this, it is our firm policy to receive indemnification. The Company agrees to the provisions with respect to our indemnity and other matters set forth in Annex A which is incorporated by reference into this letter.

As you know, Goldman Sachs is a full service securities firm engaged, either directly or through its affiliates in various activities, including securities trading, investment banking, commercial banking and financial advisory services, investment management, principal investment, financial planning, benefits counseling, risk management, hedging, financing, brokerage activities and other financial and non-financial activities and services for various persons and entities. In the ordinary course of these activities and services, Goldman Sachs and its affiliates may at any time make or hold long or short positions and investments, as well as actively trade or effect transactions, in equity, debt and other securities (or related derivative securities) and financial instruments (including bank loans and other obligations) for their own account and for the accounts of their customers. Such investment and securities activities may involve securities and instruments of the Shareholders or LG-Nortel, as well as of other entities and persons and their affiliates which may (i) be involved in transactions arising from or relating to the engagement contemplated by this letter, (ii) be customers or competitors of the Shareholders or LG-Nortel, or (iii) have other relationships with the Shareholders or LG-Nortel. In addition, Goldman Sachs and its affiliates may provide investment banking, commercial banking, underwriting and financial advisory services to such other entities and persons. Goldman Sachs and its affiliates may also co-invest with, make direct investments in, and invest or co-invest client monies in or with funds or other investment vehicles managed by other parties, and such funds or other investment vehicles may trade or make investments in securities of the Shareholders or LG-Nortel or such other entities. The engagement contemplated by this letter may have a direct or indirect impact on the investments, securities or instruments referred to in this paragraph. Although Goldman Sachs in the course of such other activities and relationships may acquire information about the transaction contemplated by this letter or other entities and persons which may be the subject of the engagement contemplated by this letter, Goldman Sachs shall have no obligation to disclose such information, or the fact that Goldman Sachs is in possession of such information, to the Company or to use such information on the Company's behalf.

Notwithstanding the foregoing, Goldman Sachs agrees that, during the term of our engagement, Goldman Sachs will not be engaged as financial advisor to any party with respect to such party's acquisition of all or a portion of the shares or assets of LG-Nortel without obtaining the prior written consent of the Company.

Nortel Networks Limited
May 27, 2009
Page Seven

Goldman Sachs acknowledges that it has entered into a confidentiality agreement with the Company, dated May 27, 2009, and that such confidentiality agreement shall govern the use and disclosure of any information provided to Goldman Sachs under this letter agreement.

Our services may be terminated by you or us at any time with or without cause effective upon receipt of written notice to that effect. We will be entitled to the applicable transaction fee set forth above in the event that at any time prior to the expiration of one year after such termination an agreement is entered into with respect to a sale of all or a portion of the stock (or equity interests) or assets of LG-Nortel which is eventually consummated; provided, however, in the event Goldman Sachs terminates its services hereunder, or the Company terminates our services hereunder due to gross negligence or willful misconduct in Goldman Sachs' performance of such services, the foregoing provisions of this sentence shall not apply.

The Company recognizes that, in providing our services pursuant to this letter, we will rely upon and assume the accuracy and completeness of all of the financial, legal, regulatory, accounting, tax and other information provided to, discussed with or reviewed by us for such purposes, and we do not assume any liability therefor or responsibility for the accuracy, completeness or independent verification thereof. Goldman Sachs will have no obligation to conduct any independent evaluation or appraisal of the assets or liabilities (including any contingent, derivative or off-balance sheet assets and liabilities) of LG-Nortel or any other party or any of their respective affiliates or to advise or opine on any related solvency or viability issues. It is understood and agreed that Goldman Sachs will act under this letter as an independent contractor with duties solely to the Company and nothing in this letter or the nature of our services in connection with this engagement or otherwise shall be deemed to create a fiduciary duty or fiduciary or agency relationship between us and the Company or its stockholders, employees or creditors, and the Company agrees that it shall not make, and hereby waives, any claim based on an assertion of such a fiduciary duty or relationship. Except as set forth in Annex A hereto, nothing in this letter is intended to confer upon any other person (including stockholders, employees or creditors of the Company, LGE or LG-Nortel) any rights or remedies hereunder or by reason hereof.

All payments under this letter shall be made in U.S. dollars and without withholding or deduction of any tax, assessment or other governmental charge (collectively, "Tax") unless required by law; and if the Company shall be required to deduct or withhold any Tax, or if any Tax is required to be paid by Goldman Sachs solely on account of the services performed hereunder, the Company shall pay to Goldman Sachs such additional amounts as shall be required so that the net amount received by Goldman Sachs from the Company after such deduction, withholding or payment shall equal the amounts otherwise due to Goldman Sachs under this letter. The provisions of the preceding sentence shall not apply (a) to any Tax imposed on Goldman Sachs by the United States federal government or any state or local