52

Nortel Networks Limited
May 27, 2009
Page Eight

taxing jurisdiction or authority in the United States (or any Tax imposed on an affiliate of Goldman Sachs in any jurisdiction having authority to tax an affiliate of Goldman Sachs to which Goldman Sachs has delegated the performance of its duties under this agreement), (b) to any Tax imposed by a foreign government or foreign taxing authority on the net income of Goldman Sachs (or any Tax imposed on an affiliate of Goldman Sachs in any jurisdiction having authority to tax an affiliate of Goldman Sachs to which Goldman Sachs has delegated the performance of services under this agreement) as a result of the existence of a permanent establishment of Goldman Sachs (or such delegate) in that jurisdiction, or (c) in the case of Canadian withholding tax required to be withheld from payments to Goldman Sachs hereunder that are in respect of services performed in Canada. Such allocation shall be made by Goldman Sachs based on a good faith determination of the percentage of time spent performing services within and outside Canada, and the fee allocated to services performed in Canada in accordance with this determination will be separately identified by Goldman Sachs. In case any such withholding tax applies, the Company will provide Goldman Sachs with satisfactory evidence of such withholdings at the time of payment.

If any goods and services tax ("GST"), value added tax, consumption tax, sales tax or other similar tax is payable by Goldman Sachs in respect of fees paid or payable to Goldman Sachs for services rendered in connection with this letter (or any portion thereof), Goldman Sachs will add the tax to its invoices and the Company shall pay to Goldman Sachs such tax as set forth in such invoices. Goldman Sachs states that its GST registration number is 127357465 and it will advise the Company of any changes to that number.

In respect of any judgment or order given or made for any amount due hereunder that is expressed and paid in a currency (the "judgment currency") other than United States dollars, the Company will indemnify Goldman Sachs against any loss incurred by Goldman Sachs as a result of any variation as between (i) the rate of exchange at which the United States dollar amount is converted into the judgment currency for the purpose of such judgment or order and (ii) the rate of exchange at which Goldman Sachs is able to purchase United States dollars with the amount of the judgment currency actually received by Goldman Sachs. The foregoing indemnity shall survive any termination of this engagement, shall constitute a separate and independent obligation of the Company and shall continue in full force and effect notwithstanding any such judgment or order as aforesaid. The term "rate of exchange" shall include any premiums and costs of exchange payable in connection with the purchase of or conversion into United States dollars.

Goldman Sachs may, in the performance of its services hereunder, delegate the performance of certain of such services as it may select to Goldman Sachs (Asia) L.L.C., Seoul Branch, Goldman Sachs Canada Inc. or any of its other affiliated entities; provided, however, that no such delegation by Goldman Sachs shall in any respect affect the terms hereof, and

63

Nortel Networks Limited
May 27, 2009
Page Nine

Goldman Sachs shall be responsible for any acts or omissions by any of its affiliated entities in the performance of any services delegated hereunder to such entity.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001)), Goldman Sachs is required to obtain, verify and record information that identifies its clients, including the Company, which information may include the name and address of its clients, as well as other information that will allow Goldman Sachs to properly identify its clients.

Goldman Sachs does not provide accounting, tax, legal or regulatory advice. Notwithstanding anything herein to the contrary, you are authorized to disclose to any person the U.S. federal and state income tax treatment and tax structure of the potential transaction and all materials of any kind (including tax opinions and other tax analyses) provided to you relating to that treatment and structure, without Goldman Sachs imposing any limitation of any kind. However, any information relating to the tax treatment and tax structure shall remain confidential (and the foregoing sentence shall not apply) to the extent necessary to enable any person to comply with securities laws. For this purpose, "tax structure" is limited to any facts that may be relevant to that treatment.

Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed copy of this letter, which shall become a binding agreement upon our receipt. We are delighted to accept this engagement and look forward to working with you on this assignment.

Very truly yours,

*Goldman Sachs & Co.*

(GOLDMAN, SACHS & CO.)

Confirmed:

NORTEL NETWORKS LIMITED

By: _____
   Name:
   Title:

Date: _____

By: _____
   Name:
   Title:

Date: _____

Nortel Networks Limited
May 27, 2009
Page Ten

Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed copy of this letter, which shall become a binding agreement upon our receipt. We are delighted to accept this engagement and look forward to working with you on this assignment.

Very truly yours,                            Confirmed:

_____                  NORTEL NETWORKS LIMITED
(GOLDMAN, SACHS & CO.)
                                             By: _____
                                                 Name: Pavi Binning
                                                 Title: CFO

                                             Date: MAY 27, 2009

                                             By: _____
                                                 Name: GORDON DAVIES
                                                 Title: CHIEF LEGAL OFFICER + CORPORATE SECRETARY

                                             Date: MAY 27, 2009

Case 09-10138-MFW    Doc 816-4    Filed 06/01/09    Page 5 of 10

Nortel Networks Limited
May 27, 2009
Page Eleven

**Note 1: Fee Calculation**

**REDACTED**

Nortel Networks Limited
May 27, 2009
Page Twelve

### Annex A

In the event that Goldman Sachs becomes involved in any capacity in any action, proceeding or investigation brought by or against any person, including stockholders of the Company, in connection with or as a result of either our engagement or any matter referred to in this letter, the Company periodically will reimburse Goldman Sachs for its legal and other expenses (including the cost of any investigation and preparation) incurred in connection therewith. The Company also will indemnify and hold Goldman Sachs harmless against any and all losses, claims, damages or liabilities to any such person in connection with or as a result of either our engagement or any matter referred to in this letter and without regard to the exclusive or contributory negligence of Goldman Sachs, except to the extent that it has been determined by a final, non-appealable judgment of a court that any such loss, claim, damage or liability results from the gross negligence or willful misconduct of Goldman Sachs in performing the services that are the subject of this letter. If for any reason the foregoing indemnification is unavailable to Goldman Sachs or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by Goldman Sachs as a result of such loss, claim, damage or liability in such proportion as is appropriate to reflect the relative economic interests of the Company and its stockholders on the one hand and Goldman Sachs on the other hand in the matters contemplated by this letter as well as the relative fault of the Company and Goldman Sachs with respect to such loss, claim, damage or liability and any other relevant equitable considerations. The reimbursement, indemnity and contribution obligations of the Company under this paragraph shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of Goldman Sachs and the partners, directors, agents, employees and controlling persons (if any), as the case may be, of Goldman Sachs and any such affiliate, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Goldman Sachs, any such affiliate and any such person. The Company also agrees that neither Goldman Sachs nor any of such affiliates, partners, directors, agents, employees or controlling persons shall have any liability based on its or their exclusive or contributory negligence or otherwise to the Company or any person asserting claims on behalf of or in right of the Company in connection with or as a result of either our engagement or any matter referred to in this letter except to the extent that any losses, claims, damages, liabilities or expenses incurred by the Company result from the gross negligence or willful misconduct of Goldman Sachs in performing the services that are the subject of this letter. Prior to entering into any agreement or arrangement with respect to, or effecting, any proposed sale, exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the Company's obligations set forth in this Annex A, the Company will notify Goldman Sachs in writing thereof (if not previously so notified) and, if requested by Goldman Sachs, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth in this paragraph, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions satisfactory to Goldman Sachs. Any right to trial by jury with respect to any action or proceeding arising in connection with or as a result of either our engagement or any matter referred to in this letter is hereby waived by the parties hereto. The Company agrees that any suit or proceeding arising in respect to this letter or our engagement will be tried exclusively in the Courts of the Province of Ontario. The provisions of this Annex A shall survive any termination

58

Nortel Networks Limited
May 27, 2009
Page Thirteen

or completion of the engagement provided by this letter agreement, and this letter agreement shall be governed by and construed in accordance with the laws of the Province of Ontario without regard to principles of conflicts of laws.

69

Exhibit "A"

Court File No.: 09-CL-7950

**ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | MONDAY, THE 1st |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JUNE, 2009 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**ORDER**
(Nortel-LGE Joint Venture Sale Process Order)

THIS MOTION, made by Nortel Networks Corporation, Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion dated ●, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

DOCSTOR: 1694404\6

- 2 -

ON READING the affidavit of George Riedel sworn ●, 2009 (the "Riedel Affidavit") and the ● report of Ernst & Young Inc. dated ●, 2009 (the "● Report") in its capacity as monitor (the "Monitor") and on hearing submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of ● sworn ●, 2009, filed.

1. THIS COURT ORDERS that the time for the service of the Notice of Motion, the ● Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2. THIS COURT ORDERS NNL be and is hereby authorized to sell its interest (the "NNL JV Interest") in its joint venture (the "Joint Venture") with LG Electronics Inc. ("LGE") in accordance with the Sale Process (defined below).

3. THIS COURT ORDERS that the sale protocol agreement ("Protocol") described in the Riedel Affidavit, the ● Report and attached as Schedule "A" hereto and the sale process described therein for the potential sale of some or all of: (i) the NNL JV Interest; (ii) LGE's joint venture interest; and/or (iii) the assets of the Joint Venture (collectively, the "Interests"), is hereby approved and the parties thereto are hereby authorized and directed to perform each of their obligations thereunder.

4. THIS COURT ORDERS AND DECLARES that in connection with any information related to the Sale Process provided to advisors and other stakeholders, including the Stakeholders (as defined in the Sale Protocol) and each of their respective financial and legal advisors, such advisors and stakeholders owe the same duty of confidentiality to LGE, *mutatis mutandis*, as they do to the Applicants and any of their affiliates.

5.  **THIS COURT ORDERS** that NNL is authorized to engage Goldman, Sachs & Co. ("Goldman") in accordance with the engagement letter dated as of May 27, 2009 (the "Engagement Letter") attached as Exhibit "B" to the Riedel Affidavit on its behalf, for the conduct of the Sale Process and the Engagement Letter be and is hereby approved.

6.  **THIS COURT ORDERS** that Goldman shall be entitled to the benefit of and are hereby granted a charge (the "Goldman Charge") on the proceeds of the NNL JV Interest (including (a) any dividend to any of the Applicants from the Joint Venture as a result of a sale and (b) any other distributions from the Joint Venture to any of the Applicants to secure unreimbursed expenses that may be owing to Goldman at the time of such distribution (except expenses described in Annex A hereto) (the "Proceeds"), as security for the full amount of its fees and expenses payable under the Engagement Letter (the "Fees and Expenses") but, for greater certainty, excluding any amounts or obligations under Annex A. The Goldman Charge shall constitute a first priority charge on the Proceeds, ranking *pari passu* with the Administration Charge and shall, without limitation, have priority over all of the other Charges including those set out in the Initial Order (as amended and restated) of this Court made on January 14, 2009 and the Applicants are directed to cause NNL to pay the Fees and Expenses payable under the Engagement Letter forthwith when due. Notwithstanding any other provision herein, none of the provisions of this paragraph 6 shall apply to LGE or LGE's Interest in the Joint Venture.

7.  **THIS COURT ORDERS** that, in the conduct of its obligations under the Engagement Letter, save for any liability or obligation to the extent arising out of the gross negligence or willful misconduct of Goldman in performing its services under the Engagement Letter, Goldman, its affiliates, partners, officers, directors, employees, agents, advisors and controlling persons shall have no liability to any person including (a) to potential purchasers who participate

DOCSTOR: 1694404\6