IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: ) | |
| NORTEL NETWORKS, INC., ET AL., ) | |
| ) | Case No. 09-10138 (KG) |
| ) | (Chapter 11) |
| Debtor. ) | |

**OBJECTION TO JOINT MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSY**

COMES NOW, Brookings Municipal Utilities, ("BMU" or "Creditor"), a party in interest with respect to the subject matter of the Motion, and hereby Objects to the Debtors' Motion for Approval of Compromise of Controversy as filed on or about May 18, 2009. In support of its Objection, Brookings would show the Court as follows:

1.   On or about June 20, 2008, Crossroads Wireless, Inc. ("Crossroads" ) and Brookings Municipal Utilities, entered into an Asset Purchase Agreement (the "Agreement").

2.   Under the terms of that agreement, Crossroads was to pay the sum of approximately $31,000,000.00 at closing.

3.   Crossroads did not close the transaction and the underlying contract has been rejected in the bankruptcy case of Crossroads pending in the United States Bankruptcy Court for the Western District of Oklahoma.  The actual case styling, also referenced in the Motion filed by this Debtor,  is In re: **CROSSROADS WIRELESS HOLDING, LLC, A Delaware Limited Liability Company, Case No. 09-10596-WV and CROSSROADS WIRELESS, INC.,Case No. 09-10698-WV ,** which have been administratively consolidated.

4.    BMU had expended a significant amount of money, time and effort to consummate this transaction. BMU had altered its' approach to this portion of its' business as well, in contemplation of the transfer of this business line to Crossroads.  BMU is now in the process of redirecting its' efforts with respect to that portion of its' business..

5.	As part of the preparation by the consolidated Crossroads to take over the cellular business of BMU under the Agreement, Crossroads purchased a considerable amount of equipment from Nortel. Crossroads also negotiated to have such equipment installed by Nortel into the infrastructure of BMU, and in various locations in multiple states. BMU was not a party to such agreement, but BMU specifically advised and/or obtained the contemporaneous agreement that BMU was not a party to the transaction between Crossroads and Nortel nor had any liability for such transaction.

6.	A substantial majority, but upon information, not all of the equipment generally identified in the instant Motion is the equipment purchased by Crossroads and which is presently installed into the electronic infrastructure of BMU in approximately 45 sites and in several different states.

7.	Since such equipment was purchased by Crossroads, As reflected upon Debtors Ex. "C" (purchase agreement) to the instant Motion, Crossroads (LLC)is the owner of all equipment at issue. The Exhibit specifically states that it is a "purchase and license agreement". The equipment is property of the estate of Crossroads. The proposed compromise here appears to logically be a mirror of a similar Motion filed and pending in the Crossroads case pending in the WDOK, on or about May 15, 2009.

## RESPONSE TO THE PROPOSED COMPROMISE

8.	The proposed compromise provides that consolidated Crossroads will transfer or reconvey to Nortel the consolidated Crossroads interest in the equipment and which will then be deemed free and clear of any interest of any entity other than Nortel. The proposed compromise also states that the consolidated Crossroads will also release any claims which the Crossroads estate may have, such as statutory avoiding powers, against such property of the Estate or apparently Nortel. In

return, Nortel states that they will waive an unperfected security interest in any license owned by the Debtor, which according to the documents attached in support of the Joint Motion is three (3) licenses.

9. The proposed compromise fails to adequately discuss or fully disclose to this Court and creditors of this Estate the apparent lack of enforceability of the security interest and claims of Nortel in both the majority of the equipment and the three (3) licenses pledged.

10. The proposed compromise proposes to grant relief which is precluded by law. Specifically, the Court does not have the authority to eliminate the claims and interest of any other parties which may have a claim to the equipment, via a motion.

11. Specifically, the proposed compromise would ask this Court to order and decree that any possible competing ownership interests or claims in the equipment are disposed of, and the equipment (property of this estate) is deemed to be the property of Nortel. The proposed compromise would further ask this Court to issue an order directing those unidentified third parties, who may or may not receive notice of this Motion, to expend their own time, money and effort to remove such equipment and deliver it to Nortel. No location for delivery is identified. Such location could be hundreds if not thousands of miles from where the equipment is actually located.

12. The proposed compromise would effectively determine competing interests and/or claims in this equipment with out providing appropriate due process protections to those parties who may be in possession of the equipment and their creditors who may assert an interest in it, including BMU. Pursuant to Bankruptcy Rule 7001, et seq, an adversary action must be filed in order to determine the interest of various parties to this equipment (property of the Crossroads estate), including the interest of BMU and its' creditors.

13. Based upon the documents attached to support the proposed compromise, Nortel does not possess a perfected security interest in most of the equipment nor in the Crossroads licenses. Since any interest of Nortel in either the licenses or majority of the equipment is either unperfected or

avoidable, there is insufficient consideration to support the compromise in favor of the Crossroads consolidated Estates. Crossroads Estate would appear to be entitled to both the equipment, subject to the competing claims of creditors such as BMU and the licenses.

## BRIEF IN SUPPORT

I. The claimed security interests which form the basis of the compromise do not exist.

From a review of the documents as attached, Nortel does not hold a perfected security interest in most of the equipment it sold to the Debtor nor the three (3) licenses identified on the attachments. It is important to look closely at the various parties to each of the documents which the Joint Movants have attached in support of their claims and representations to this Court.

In order to have an enforceable security interest, certain elements must exist, all of which are generally codified in Article 9 of the Uniform Commercial Code ("UCC"). Though there can be some minor differences in certain provisions of the UCC from state to state, those difference are not material to the issues before this Court.

Section 9-203 of the UCC (codified in various places in Oklahoma and Delaware) generally provides that the following elements must exist in order for a creditor to possess a security interest: (1) a signed security agreement which contains a description of the collateral; (2) value has been give; and (3) the debtor has rights in the collateral. If these elements exist, then a security interest attaches.

Once the security interest attaches, the creditor must then perfect that security interest in order to be free of competing claims as to that collateral (here, equipment or license) and in order to defeat the trustee/debtor in possession avoiding powers set for in Section 544, et seq of the Code. Failure to properly or timely perfect a security interest is probably the most common trustee avoidance action filed pursuant to 11 U.S.C. Section 544.

Movants Exhibit "C" is the Purchase and License Agreement. It is between Nortel and Crossroads Wireless Holding, LLC ("LLC"). Being identified as a purchase agreement, it is clear that

4

a transfer of ownership, from Nortel, to LLC occurred with respect to the equipment identified. It is noted that the Agreement copy does not reflect execution. However, it clearly is an agreement which reflects that the equipment was sold to ("purchase") the Debtor LLC, and is property of this Estate.

Movants Exhibit "D" is a Security Agreement. However, the description of the collateral does not include any of the equipment. In fact, the grant of security interest is not from the LLC, but from Crossroads Wireless, Inc. ("Inc."). And Inc. grants a security interest in three (3) licenses. The Security Agreement states that the purpose of the grant is to secure the purchased equipment.

It is admitted that Movants Exhibit "C", in numbered paragraph 9, contains a grant of security interest in equipment. What equipment is not identified.

The Joint Movants then attach (Ex. "E") a copy of a UCC-1 Financing Statement, filed August 5, 2008. The debtor identified on the UCC Financing Statement is Crossroads LLC. The collateral identified is what would be generally described as the equipment purchased by Crossroads LLC and identified generally in Exhibit "A". However, an exact list of what equipment in fact is included is not provided. Assuming Ex. "A" includes an enforceable grant of security interest, the next step would be the perfection of that interest.

From a review of the UCC-1, the security interest perfected is in equipment which is located at business locations leased or owned by Crossroads LLC. The problem is, the majority of the equipment at issue in the Motion is located at a business locations *not* leased or owned by the LLC. It appears that by the language of the UCC-1, there is no perfected security interest in equipment located at any location, other than at the debtors business locations.

There are additional perfection problems with respect to the majority of the equipment. The majority of the equipment is in the possession of BMU, at its' property sites, and was installed approximately 9-10 months ago. Though it is not currently being used, the equipment is installed in several different states and 45 locations, through the network operated by BMU. But the equipment

5

is integrated into the various systems of BMU.  Based on the method of installation, BMU believes that the equipment is so intertwined that is all but impossible, but to the trained eye, to determine what equipment constitutes the purchased equipment.  BMU also believes that by its installation, that the equipment has become so intertwined with the existing facilities of BMU, that its' potential removal might cause significant damage and/or downtime to the operations of BMU.  Finally, due to the way it has been installed, such equipment may  now constitute a fixture of the property to which is was installed. As a fixture, perfection of any claimed security interest would require filing in the state where the property is located.  No fixture filing has occurred.  Only the UCC-1 attached to the Joint Motion which reflects a personal property filing, and only in locations owned by the Debtor LLC.

With respect to the three (3) licenses.  As reflected above, in order to grant a security interest, a debtor must have rights in the collateral. The licenses are the property of Inc., not LLC.  And it is Inc. which purports to grant a security interest in those three (3) licenses.  However, next is the issue of perfection with respect to the licenses.

BMU questions that any enforceable security interest can be given in the licenses.  However, that query is not necessary to explore with respect to the Motion before this Court.  The UCC-1/Financing Statement attached to the Joint Motion does not list Inc. as the debtor and the licenses are not identified.  Therefore, any security interest in the three (3) licenses is not perfected.  Not being perfected, it is clearly and easily avoidable by this consolidated Debtor using the avoiding powers granted under Chapter 5 of the Code.

In summary, neither the majority of the equipment nor the three (3) licenses are subject to a perfected security interest in favor of Nortel.  As such, there is little to possibly no consideration given by Nortel, to the Crossroads Estate, to support the purported compromise.  Whatever value the equipment might have, is property for this estate's creditors.  Whatever value the licenses have is value for this estate's creditors.

II. <u>The Motion attempts to unilaterally determine the property rights of parties to the equipment contrary to the Code and without due process and notice.</u>

Paragraph 17 of the proposed compromise states that the consolidated Debtors will transfer the Estates interest in the Equipment "free and clear of any interest in the Equipment of any entity other than Nortel..." Such a request clearly asks this court to determine the competing rights and claims of any and all parties who may have an interest in the equipment. That relief is not possible by this Motion or any motion.

Bankruptcy Rule 7001(2) states that an adversary proceedings is required to determine the validity, priority or extent of a lien. As reflected by the purchase agreement (Ex. "C"), this equipment was purchased by and hence is property of the Crossroads estate. BMU is only one entity with an interest in the Equipment. There are others because BMU does not currently possess all of the Equipment identified. Therefore, competing interests in this equipment must be determined in the Bankruptcy Court in Oklahoma City.

There are also other creditors or parties in interest, who are not creditors of the Crossroads estate, who have or may have an interest in the equipment. Those creditors have not been noticed. As described and discussed above, it appears to BMU that such equipment as installed into the 45 different BMU sites is now a fixture of the property to which is was installed.

As a fixture, the equipment is subject to the claims and liens of the creditors of BMU. Upon information, those creditors are not creditors of either of these debtors. However, if an effort was properly made to determine the various interests in such equipment, as required by Bankruptcy Rule 7001, all such possible claimants and creditors would have to be identified and joined in such an adversary action, which should include the creditors of BMU who may assert a lien claim to the equipment by virtue of its' installation. Of course, since BMU has shown that Nortel has no perfected security interest in either the majority of equipment or the licenses, the first action which the estate

7

of Crossroads are required to do is avoid whatever claim Nortel has via their unperfected security interest.

III.  The Proposed Compromise is overreaching, seeking to order unspecified third party actions and the incurring of costs without due process or basis in law or fact.

The proposed compromise, in paragraph 17, asks this Court to *immediately* order the delivery of the equipment to Nortel, by any party which may have possession of such equipment. This relief is not provided by the Code nor authorized by any applicable law.

As previously noted, the consolidated Debtors of Crossroads and Nortel have not identified all parties who may have or claim an interest in this equipment which would also include their respective individual creditors. Therefore, those parties are not granted the opportunity to contest the relief sought. Further, there is no authority which would require a creditor to incur costs for the benefit of the bankruptcy estate of Nortel.

These costs would include, but would not be limited to costs associated with the engineers and technicians required to remove electronic telephone, switching and other equipment from various locations (45 alone with respect to BMU), the costs required to adequately prepare the equipment for shipping, which would include, but not be limited to appropriate packing for sensitive electronic equipment, the employment of third parties to build the appropriate packing containers, possible downtime of existing equipment and network connections when and if electricity would be shut off to any location to allow the removal of equipment, the loss of income and/or customers which might occur to the BMU net work would be shut down to remove such equipment, the hiring of drivers or other common carriers to transport the equipment, and the overtime wages and costs required to deliver the equipment "immediately" which would necessarily include nights, weekends and holidays in order to minimize disruptions to customers. Of course, the Motion does not state where the

equipment is to be delivered so it could be hundreds or thousands of miles away from where the equipment may be.

    IV.  <u>The proposed compromise seeks to waive remedies without authority for same.</u>

The proposed compromise, paragraph 17, states that any trustee/debtor in possession avoiding actions under Chapter 5 of the Code will be waived. BMU asserts that there is no or insufficient consideration given for the waiving of such claims. Such a provision would also hamper future efforts and possible claims of a chapter 11 or chapter 7 trustee, if appointed. Further, it is unknown whether there are other bankruptcy estates which may have claims to such equipment, either as a party holding such equipment or as a lender to such party. Since no notice is given to these unidentified parties, that relief is inappropriate. Further, avoidance actions are specifically contemplated as adversary actions pursuant to Bankruptcy Rule 7001(1). The Joint Motion is an insufficient method to waive or dispose of such claims. An adversary action would be required.

## CONCLUSION

BMU has shown that based upon the documents provided in support of the Motion that the equipment is subject to a very limited security interest in favor of Nortel. The equipment is property of the estate of Crossroads, LLC. BMU has further shown that based upon the documents provided in support of the Joint Motion that there was no perfected security interest in any license in favor of Nortel. BMU has further suggested that the majority of the equipment which is the subject of the Motion is not subject to a perfected security interest in favor of Nortel.

The Motion seeks to impermissibly determine the competing interests of other parties in this equipment, many who are not aware of this Motion, contrary to Bankruptcy Rule 7001 et seq. The Motion further seeks to Order those parties, including BMU, to perform various and extensive services, at their own cost and expense, for the benefit of Nortel.

It is noted that perhaps this Motion may be in the interest of Nortel. They obtain rights in equipment, presently owned by the Crossroads Estate, which is subject to their probable unperfected lien, and in return, waive a debt against an entity in Bankruptcy. However, the Motion simply goes to far. If the Court is to consider the approval of a controversy, that approval should not determine competing parties interest in such collateral, nor require the delivery of such equipment. The Motion as filed is simply to overreaching. We ask that such Motion be denied.

Respectfully submitted,

/s/ Lyle R. Nelson
Lyle R. Nelson, OBA#10914
Jennifer H. Kirkpatrick, OBA#19504
Elias, Books, Brown and Nelson, P.C.
Two Leadership Square, St. 1300
211 N. Robinson
Oklahoma City, OK 73102
Phone: (405) 232-3722 Facsimile: (405) 232-3746
lyle@lylenelsonlaw.com
jhkirkpatrick@eliasbooks.com
ATTORNEYS FOR BROOKINGS MUNICIPAL
UTILITIES AND SWIFTEL COMMUNICATIONS

Counsel has attempted to locate local counsel prior to the filing of this Objection, but due to time constraint has not located counsel. It is anticipated that local counsel will be retained shortly.

**CERTIFICATE OF SERVICE**

I, Lyle R. Nelson, certify that I am not less than 18 years of age, and that service of the foregoing **Objection to Joint Motion for Approval of Compromise of Controversy** was caused to be made on June 4, 2009, in the manner indicated upon the entities identified below:

Via Facsimile (212) 225-3999 and Regular Mail:
CLEARY GOTTLIEB STEEN & HAMILTON LLP
James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006

   -and-

Via Facsimile (302) 658-3989 and Regular Mail:
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott
Eric D. Schwartz
Ann C. Cordo
Andrew R. Remming
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801

                      /s/ Lyle R. Nelson
                      Lyle R. Nelson