IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                                      :   Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                           :   Case No. 09-10138 (KG)
:
              Debtors.   :   Jointly Administered
:
:   Hearing date: June 11, 2009 at 2:00pm (ET) (proposed)
:   Objections due: June 10, 2009 at 12:00pm (ET) (proposed)
------------------------------------------------------------X

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE LETTER
OF CREDIT AND BONDING FACILITIES AND (II) GRANTING RELATED RELIEF
PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to sections 105, 363 and 364 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for (i) the entry of an order substantially in the form attached hereto as Exhibit A (the "Interim Order") authorizing the Debtors on an interim basis to enter into, perform their reimbursement, indemnity and other obligations under and provide the required cash collateral under one or more

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

agreements for the issuance of surety and performance bonds and/or letters of credit in an aggregate amount of up to $30,000,000 (the "<u>L/C and Bonding Facilites</u>") to be provided by such sureties and financial institution lenders with which the Debtors come to terms (the "<u>Sureties / Financial Institutions</u>"); granting the Sureties / Financial Institutions automatically perfected security interests in and first priority liens upon segregated deposit accounts and cash collateral pledged by the Debtors in support of the L/C and Bonding Facilities and the Debtors' reimbursement and indemnity obligations in respect of the letters of credit and surety and performance bonds issued thereunder; and setting the time, date, and place of a final hearing the ("<u>Final Hearing</u>") to consider the relief requested in this Motion; (ii) the entry of an order substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Final Order</u>") granting final authorization to the Debtors to enter into, perform their reimbursement, indemnity and other obligations under and provide the required cash collateral under the L/C and Bonding Facilities and granting the Sureties / Financial Institutions automatically perfected security interests in and first priority liens upon segregated deposit accounts and cash collateral pledged by the Debtors in support of the L/C and Bonding Facilities and the Debtors' reimbursement and indemnity obligations in respect of the letters of credit and surety and performance bonds issued thereunder; and (iii) granting such other relief as the Court deems just and proper. In support of this Motion, the Debtors rely on the Declaration of John Doolittle in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter Into One or More Letter of Credit and Bonding Facilities and (II) Granting Related Relief Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, attached hereto as <u>Exhibit C</u>. In further support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

## Background

**A.    Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the

---

[2]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3

"Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

7.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.    Debtors' Corporate Structure and Business**

8.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

## Relief Requested

9.    By this Motion, the Debtors request that the court:

    a.    authorize NNI to enter into, perform its reimbursement, indemnity and other obligations under and provide cash collateral under the L/C and Bonding Facilities provided by the Sureties / Financial Institutions for the purpose of issuing surety and performance bonds and/or letters of credit primarily to satisfy the Debtors' customer obligations, in an aggregate amount of $30,000,000, of which $7,500,000 would be authorized pursuant to the Interim Order;

    b.    grant the Sureties / Financial Institutions automatically perfected security interests in and first priority liens upon segregated deposit accounts and cash collateral that may be provided by the Debtors and deposited in such accounts from time to time in support of the L/C and Bonding Facilities;[5] and

    c.    schedule the Final Hearing to consider entry of the Final Order for June 26, 2009 at 3:00 p.m. before the Honorable Kevin Gross, United States

---

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[5]    For avoidance of doubt, the Debtors seek to lift the automatic stay solely imposed under Bankruptcy Code section 362 to the extent necessary for the parties to perform under agreements documenting the L/C and Bonding Facilities, including with respect to any cash collateral that may be posted in connection with such facilities.

5

Bankruptcy Judge, in Courtroom 3 at the United States Bankruptcy Court for the District of Delaware.

10. Prior to filing this Motion, the Debtors communicated with and provided a draft of the motion to counsel for the Committee regarding the relief requested.

**Facts Relevant to this Motion**

A.   **Prepetition Bonding Facilities**

11. As reflected on the monthly operating reports filed by the Debtors in these cases, the Debtors' cash and cash equivalents as of the Petition Date was approximately $599,000,000 and it was $781,000,000 as of May 2, 2009. The Debtors have not sought approval of any post-petition financing to date in these chapter 11 cases.

12. As described in the First Day Declaration, prior to the Petition Date, Export Development Canada ("EDC," Canada's federal export credit agency, which provides financing support to Canadian exporters) provided a support facility that backstopped certain letters of credit and performance bonds on behalf of the various Nortel entities, including the Debtors (the "EDC Facility"). First Day Declaration at ¶ 17. These letters of credit and performance bonds give Nortel's customers comfort in continuing to do business with Nortel. Prior to the Petition Date, NNI issued a guaranty in support of the EDC Facility. As further described in the First Day Declaration, just prior to the Petition Date, EDC and Nortel entered into an agreement that provided Nortel access to a maximum of up to $30 million of support under the facility to allow EDC and Nortel to work together to see if a longer term arrangement could be reached. Id. The Debtors' Canadian affiliates have engaged in further negotiations with EDC that resulted in the extension of the EDC Facility until July 30, 2009. Since the Petition Date, at the request of NNL, EDC has issued approximately $6,000,000 in performance bonds, including approximately $3,300,000 in bonds to support certain customer obligations of NNI. Nortel continues to have

ongoing discussions with EDC and potential fronting institutions that issue surety and performance bonds to put in place a more permanent performance bonding facility.

13. Also, prior to the Petition Date, NNL entered into a cash collateral facility with the Royal Bank of Canada (as amended from time to time) that has been used by NNL for the issuance of letters of credit for various purposes, including performance and surety bonds, lease bonds, customs bonds, bonds in support of insurance and contractor obligations and other similar purposes, including certain bonds issued in support of obligations of certain of the Debtors (the "RBC Facility").

14. The Debtors expect that from time to time they will need to provide certain surety and performance bonds or letters of credit, primarily in support of certain obligations to their customers under customer contracts and certain other limited purposes including customs, insurance and contractor obligations, both as the existing bonds and letters of credit expire and in support of new agreements. The Debtors have determined that it is necessary and in their business interests to obtain independent sources of financing for the issuance of surety and performance bonds on their behalf for the benefit of their U.S. customers and the other limited purposes enumerated above, consistent with their prior practices.

**B.  Description of the L/C and Bonding Facilities**

15. The Debtors have approached a number of financial institutions and sureties regarding their willingness to provide a facility for the issuance of new letters of credit and performance and surety bonds, and have identified certain issuers and at least one surety who may be willing to consider issuing bonds on behalf of the Debtors on the condition that they are fully cash collateralized. Although final terms have not been agreed to with any potential counterparties at this time, in light of the Debtors' expected need for such facilities, the Debtors seek authority to enter into the L/C and Bonding Facilities pursuant to the terms set forth in this

7

Motion, post such cash collateral as is necessary to secure the bonds and have such bonds issued to certain of the Debtors' U.S. customers and other similar counterparties as described above on the Debtors' behalf at such time as the parties reach an agreement.

16. The material terms of the L/C and Bonding Facilities will include the following[6]:

   a. Subject to (e) below, the Debtors are authorized to enter into L/C and Bonding Facilities and seek the issuance of new surety and performance bonds and letters of credit on ordinary commercial terms in an aggregate amount not to exceed $30,000,000.

   b. The purpose of the L/C and Bonding Facilities will be to issue surety and performance bonds and letters of credit to support certain obligations to their customers under customer contracts and certain other limited purposes including customs, insurance and contractor obligations.

   c. The Debtors are authorized to deposit cash into one or more segregated deposit accounts and to grant the Sureties / Financial Institutions an automatically perfected security interest in and first priority lien on such accounts, in accordance with the terms of the L/C and Bonding Facilities.

   d. Subject to (e) below, the Debtors are authorized to pay to the Sureties / Financial Institutions reasonable and customary fees in connection with the L/C and Bonding Facilities (the "L/C and Bonding Fees").

   e. Prior to entering into any particular L/C and Bonding Facility or paying L/C and Bonding Fees in excess of $50,000 for a specific proposed facility, the Debtors shall provide the U.S. Trustee and counsel to the Committee at least five (5) days prior written notice of the proposed L/C and Bonding Facility or L/C and Bonding Fees, including the proposed issuer, the material terms of the proposed facility and copies of the agreements. If the U.S. Trustee or Committee provides the Debtors' counsel with a written objection (including by electronic mail) to the proposed L/C and Bonding Facility or L/C and Bonding Fees within that period, then to the extent such objection cannot be resolved, the Debtors will seek Court approval of the proposed L/C and Bonding Facility or L/C and Bonding Fees, as applicable.

---

[6] The summaries and descriptions of the terms and conditions of the L/C and Bonding Facilities and the proposed Interim Order set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the terms of the L/C and Bonding Facilities and the Interim Order. In the event there is a conflict between the Motion and the terms of the L/C and Bonding Facilities or the Interim Order, the terms of the L/C and Bonding Facilities or the Interim Order, as applicable, shall control in all respects.

  f.  Prior to requesting the issuance of any particular letter of credit or bond in an amount of at least $500,000, the Debtors shall provide counsel to the Committee at least five (5) days prior written notice of the proposed instrument, including the material terms of the proposed transaction and copies of the agreements (to the extent finalized). Prior to requesting the issuance of any particular letter of credit or bond in an amount of at least $200,000, the Debtors shall provide counsel to the Committee at least two (2) business days prior written notice of the proposed instrument, including the material terms of the proposed transaction and copies of the agreements (to the extent finalized). If the Committee provides the Debtors' counsel with a written objection (including by electronic mail) to the proposed instrument or transaction within that period, than to the extent such objection cannot be resolved, the Debtors will seek Court approval of the proposed instrument or transaction, as applicable.

### Request for Approval of the L/C and Bonding Facilities

17. Although the postpetition financing to be obtained pursuant to the L/C and Bonding Facilities is limited, particularly relative to the size of the Debtors' businesses, it is critical to the success of these cases that the Debtors obtain access to such financing, without which the Debtors' ability to continue to do business with their customers and certain other discrete counterparties and thereby maximize their business operations will be compromised. The L/C and Bonding Facilities are therefore beneficial to the Debtors' estates.

18. Section 364 of the Bankruptcy Code distinguishes among (a) obtaining unsecured credit in the ordinary course of business, (b) obtaining unsecured credit out of the ordinary course of business and (c) obtaining credit with specialized priority or with security. If a debtor-in-possession cannot obtain post-petition credit on an unsecured basis, pursuant to Section 364(c) of the Bankruptcy Code,[7] a court may authorize a debtor-in-possession to obtain credit or incur

---

[7] Section 364(c) of the Bankruptcy Code provides as follows:

> If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503 (b) or 507 (b) of this title;

debt, repayment of which is entitled to superpriority administrative expense status or is secured by a senior lien on unencumbered property or a junior lien on encumbered property, or a combination of the above.

19. The Debtors' discussions with potential lenders have made clear that as a condition to entering into the L/C and Bonding Facilities and obtaining the needed surety and performance bonds or letters of credit, the Debtors must post cash collateral.

20. The Debtors do not seek relief under section 364(c)(3) of the Bankruptcy Code because the cash to be posted as collateral is not subject to any other lien.

A.  **Approval Under Section 364(c) of the Bankruptcy Code**

21. The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtors-in-possession are "unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense." See In re Garland Corp., 6 B.R. 456, 461 (B.A.P. 1st Cir. 1980) (secured credit under section 364(c)(2) is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained); In re Ames Dep't Stores, Inc., 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (noting that "although a debtor is not required to seek credit from every possible source, a debtor must show that it has made a reasonable effort to seek other sources of credit available under section 364(a) & (b)"); In re Crouse Group, Inc., 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (debtor seeking secured credit under section 364(c) of the

---

       (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

       (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

10

Bankruptcy Code must prove that it was unable to obtain unsecured credit pursuant to section 364(b) of the Bankruptcy Code).

**B.      The Debtors Were Unable to Obtain Necessary Post-Petition Financing on an Unsecured Basis Under 11 U.S.C. § 364(a) or (b)**

22.     As described above, the Debtors cannot obtain a bonding or letter of credit facility of the type required in these cases on an unsecured basis.

23.     To show that the credit required is not obtainable on an unsecured basis, a debtor need only demonstrate "by good faith effort that credit was not available without" the protections of section 364(c) of the Bankruptcy Code. Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.), 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." Id. at 1088; see also Ames, 115 B.R. at 40 (holding that debtor made a reasonable effort to secure financing where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders). Moreover, where few lenders are likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." In re Sky Valley, Inc., 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), aff'd sub nom, Anchor Savings Bank FSB v. Sky Valley, Inc., 99 B.R. 117, 120 n.4 (N.D. Ga. 1989).

24.     The Debtors submit that, other than the L/C and Bonding Facilities, there are no reasonable financing alternatives available under the circumstances. Given the fact that the Debtors are in chapter 11 proceedings, the complexity of the Debtors' businesses and the nature of the Debtors' financing needs, the institutions willing to consider financing are necessarily limited. None of the entities approached by the Debtors indicated a willingness to provide a post-petition facility on an unsecured basis under section 364(a) or (b).

11

25. The Debtors therefore have concluded that they cannot obtain a post-petition bonding or letter of credit facility to meet their needs on an unsecured or partially unsecured basis. The Debtors submit that their efforts to seek necessary post-petition financing satisfy the statutory requirements of section 364(c) of the Bankruptcy Code. See, e.g., Ames, 115 B.R. at 40 (approving section 364(c) financing facility and holding that the debtor made reasonable efforts to obtain less onerous terms where it approached four lending institutions, was rejected by two, and selected the least onerous financing option from the remaining two lenders); In re 495 Cent. Park Ave. Corp., 136 B.R. 626, 630-31 (Bankr. S.D.N.Y. 1992) (debtor seeking section 364(c) financing made acceptable attempt to obtain less onerous financing by speaking to several lenders that denied the loan request).

C. **The Parameters of the L/C and Bonding Facilities are Fair, Reasonable and Appropriate**

26. In the Debtors' considered business judgment, the L/C and Bonding Facilities are the best financing option available in the circumstances of these cases. The L/C and Bonding Facilities are limited facilites of a small amount relative to the magnitude of the Debtors' operations. The L/C and Bonding Facilities also would enable the Debtors to maintain the value of their estates by continuing to post letters of credit and surety and performance bonds from time to time as the need may arise in the ordinary course of their operations. The Debtors will give the Committee and U.S. Trustee advance notice as described above prior to entering into any particular L/C and Bonding Facility or any particular letter of credit or bond under such a facility in an amount of at least $200,000.

D. **Application of the Business Judgment Standard and Need for Interim Relief**

27. After appropriate and extensive investigations and analysis, the Debtors' management has concluded that pursuit of the L/C and Bonding Facilities is the best alternative

available under the circumstances of these cases. Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money, unless such decision is arbitrary and capricious. See In re Trans World Airlines, Inc., 163 B.R. 964, 974 (Bankr. D. Del. 1994) (noting that the interim loan, receivables facility and asset based facility were approved because they "reflect[ed] sound and prudent business judgment on behalf of TWA . . . [were] reasonable under the circumstances and in the best interest of TWA and its creditors"); In re TM Carlton House Partners, LTD, 91 B.R. 349, 357 (Bankr. E.D. Pa. 1988) (holding that due to the debtor's distinct awareness of its own financial needs, the court would not second-guess its business judgment to put aside cash to effectuate a refinancing of its debts); cf. Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry., 318 U.S. 523, 550 (1943) (holding that decisions regarding the rejection or assumption of a lease is left to the business judgment of the debtor); In re Simasko Prod. Co., 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); In re Lifeguard Indus. Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same); In re Curlew Valley Assocs., 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (holding that courts generally will not second-guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code"). In fact, "[m]ore exacting scrutiny would slow the administration of the Debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

28.     The Debtors have exercised sound business judgment in determining that a post-petition bonding facility is appropriate and have satisfied the legal prerequisites to incur debt

under the L/C and Bonding Facilities. The parameters of the L/C and Bonding Facilities, as set forth above, are fair and reasonable and are in the best interests of the Debtors' estates. It is necessary to the Debtors' operations to continue to be able to provide bonds to their customers and thereby maintain the confidence of the Debtors' customers as well as certain other counterparties. Accordingly, the Debtors should be granted authority to enter into the L/C and Bonding Facilities and post cash collateral in order to obtain bonds from the Sureties / Financial Institutions on the secured basis described above, pursuant to section 364(c) of the Bankruptcy Code pursuant to agreements memorializing the L/C and Bonding Facilities that would be subject to the review of the Committee and the United States Trustee.

29. Immediate and ongoing access to the types of letters of credit and surety and performance bonds described in the L/C Motion is critical to the Debtors' ability to continue to do business with their customers in the United States. Without the ability to negotiate and enter into such facilities, the Debtors may suffer immediate and irreparable harm to their estates. The Debtors' ability to preserve the value of their estates for the benefit of their creditors depends upon the relief requested in this Motion.

E. **Highlighted Provisions Under Rule 4001-2**

30. Local Rule 4001-2(a) states in pertinent part that:

> (i) All Financing Motions must (a) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation and/or loan agreement and (c) justify the inclusion of such provision:
>
> > (A) Provisions that grant cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (i.e., clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable

14

law);

(B) Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters;

(C) Provisions that seek to waive, without notice, whatever rights the estate may have under 11 U.S.C. § 506(c);

(D) Provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548 and 549;

(E) Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b);

(F) Provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the debtor with respect to a professional fee carve-out; and

(G) Provisions that prime any secured lien without the consent of that lienor.

Del. Bankr. Local Rule 4001-2(a)(i).

31. The Debtors submit that the terms of the L/C and Bonding Facilities as set forth in the Motion will not implicate any of the provisions described in Local Rule 4001-2(a)(i).

### Good Faith

32. The Debtors submit that the general parameters of the L/C and Bonding Facilities as set forth above and their commitment to enter into commercially reasonable agreements with counterparties for the L/C and Bonding Facilities make such facilities fair, reasonable, and the

best available to the Debtors under the circumstances. As stated above, NNI and certain Sureties / Financial Institutions have begun to negotiate and continue to negotiate the terms and conditions of the L/C and Bonding Facilities in good faith and at arm's length. Moreover, the Debtors decision to enter into the L/C and Bonding Facilities is an exercise of the Debtors' prudent business judgment. Therefore, the Sureties / Financial Institutions should be accorded the benefits of section 364(e) of the Bankruptcy Code to the extent any or all of the provisions of the L/C Facilities or any order of this Court pertaining thereto, are hereafter modified, vacated, stayed or terminated by subsequent order of this or any other court.

### Request for Final Hearing

33. Pursuant to Rule 4001(c)(2) of the Bankruptcy Rules, the Debtors request that the Court set June 26, 2009, as the date for the Final Hearing on this Motion.

34. The Debtors request that they be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first class mail upon the notice parties listed in the Interim Order. The Debtors further request that the Court consider such notice of the final hearing to be sufficient notice under Rule 4001 of the Bankruptcy Rules.

### Notice

35. Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

36. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 4, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ Ann Cordo_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*