**EXHIBIT C**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
Debtors. : Jointly Administered
:
:
---------------------------------------------------------------X

**DECLARATION OF JOHN DOOLITTLE IN SUPPORT OF
DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO ENTER INTO
ONE OR MORE LETTER OF CREDIT AND BONDING FACILITIES
AND (II) GRANTING RELATED RELIEF PURSUANT TO
SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE**

I, John Doolittle, declare under penalty of perjury as follows:

1. I am Vice President of Nortel Networks Inc. ("NNI"), a corporation under the laws of Delaware. I also serve as Vice President of the other above-captioned Debtors (collectively with NNI, the "Debtors" or the "U.S. Debtors") in these cases filed under chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code").

2. I submit this declaration in support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter Into One or More Letter of Credit and Bonding Facilities and (II) Granting Related Relief Pursuant to Sections 105, 361, 362, 363 and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

364 of the Bankruptcy Code (the "Motion")[2]. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the Debtors' management and professionals or learned from my review of relevant documents or upon my opinion based on my experience and knowledge of the Debtors' operations and financial condition. I am authorized to submit this declaration.

3. I am generally familiar with the day-to-day operations of the Debtors and their affairs, books and records. I am aware that the Debtors have not sought approval of any post-petition financing to date in these chapter 11 cases. I also understand (and previously declared) that, prior to the Petition Date, Export Development Canada ("EDC," Canada's federal export credit agency, which provides financing support to Canadian exporters) provided a support facility that backstopped certain letters of credit and performance bonds on behalf of the various Nortel entities, including the Debtors (the "EDC Facility"). These letters of credit and performance bonds give Nortel's customers comfort in continuing to do business with Nortel. Prior to the Petition Date, NNI issued a guaranty in support of the EDC Facility.

4. I understand (and have previously declared) that just prior to the Petition Date, EDC and Nortel entered into an agreement that provided Nortel access to a maximum of up to $30,000,000 of support under the facility for 30 days to allow EDC and Nortel to work together to see if a longer term arrangement could be reached. Moreover, I understand that, since the Petition Date, at the request of NNL, EDC has issued approximately $6,000,000 in performance bonds, including approximately $3,300,000 in bonds to support certain customer obligations of NNI. I understand that Nortel continues to have ongoing discussions with EDC and potential

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2

fronting institutions that issue performance bonds to put in place a more permanent performance bonding facility.

5. I also understand that prior to the Petition Date NNL entered into a cash collateral facility with the Royal Bank of Canada (as amended from time to time) that has been used by NNL for the issuance of letters of credit for various purposes, including performance and surety bonds, lease bonds, customs bonds, bonds in support of insurance and contractor obligations, and other similar purposes, including certain bonds issued in support of obligations of certain of the Debtors (the "RBC Facility").

6. I further understand that from time to time in the past, the Debtors had utilized the EDC Facility and the RBC Facility to issue letters of credit and surety and performance bonds to support certain obligations to their customers under customer contracts, and similar obligations related to leases, customs obligations, and insurance and contractor obligations. I understand that the Debtors' will need to provide further surety and performance bonds or letters of credit, primarily in support of certain obligations to their customers under customer contracts and certain other limited purposes, including customs, insurance and contractor obligations, both as the existing bonds and letters of credit expire and in support of new agreements.

7. I am aware that the Debtors have approached a number of financial institutions and sureties regarding their willingness to provide a facility for the issuance of new letters of credit and performance and surety bonds, and have identified certain issuers and at least one surety who may be willing to consider issuing bonds on behalf of the Debtors on the condition that they are fully cash collateralized. Although final terms have not been agreed to with any potential counterparties at this time, in light of the Debtors' expected need for such facilities, the Debtors seek authority to enter into the L/C and Bonding Facilities pursuant to the terms set forth

in this Motion, post such cash collateral as is necessary to secure the bonds and have such bonds issued to certain of the Debtors' U.S. customers and other similar counterparties as described above on the Debtors' behalf at such time as the parties reach an agreement.

8. Specifically, I understand that the Debtors are seeking authorization to enter into one or more L/C and Bonding Facility to provide surety and performance bonds in an aggregate amount of up to $30,000,000, the purpose of which will be to issue surety and performance bonds and letters of credit to support certain obligations to their customers under customer contracts and certain other limited purposes including customs, insurance and contractor obligations.

9. Further, I understand that the Debtors propose to deposit the cash collateral into one or more segregated deposit accounts and to grant the sureties and financial institutions automatically perfected security interests in and first priority liens upon such accounts, in accordance with the terms of the L/C and Bonding Facilities.

10. It is my understanding that the Debtors propose to provide the Office of the United States Trustee for the District of Delaware and counsel to the Committee with prior written notice of any particular proposed L/C and Bonding Facility, as described in the Motion.

11. Moreover, I understand from discussions with potential counterparties that as a condition to entering into the L/C and Bonding Facilities contemplated by the parties and obtaining the needed bonds, the potential counterparties require the Debtors to obtain authorization from the Bankruptcy Court to grant the potential counterparties automatically perfected security interests in and first priority liens upon the cash collateral to be pledged by the Debtors in support of the facilities.

4

12. If the Debtors are unable to obtain the access to the letters of credit and surety and performance bonds envisioned by the L/C and Bonding Facilities, the Debtors will be unable to provide the bonds to their customers necessary to the continuation of their businesses in the United States, or to satisfy certain other obligations including customs, insurance and contractor obligations. Immediate and ongoing access to the types of letters of credit and surety and performance bonds described in the L/C Motion is critical to the Debtors' ability to continue to do business with their customers in the United States.

13. Therefore, after appropriate and extensive investigations and analysis and in the Debtors' considered business judgment, the Debtors and I believe that the pursuit and use of the L/C and Bonding Facilities are the best alternative available under the circumstances of these cases.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Toronto, Canada
      June 4, 2009

_____
John Doolittle
Vice President, NNI