IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                                     :   Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                          :   Case No. 09-10138 (KG)
:
            Debtors.   :   Jointly Administered
:
:   Hearing date: June 26, 2009 at 3:00 p.m. ET
:   Objections due: June 19, 2009 at 4:00 p.m. ET
------------------------------------------------------------X

**APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF PUNTER SOUTHALL LLC *NUNC PRO TUNC* TO MAY 8, 2009 AS PENSION CO-ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the employment and retention of Punter Southall LLC ("Punter Southall") as pension co-advisor to the Debtors *nunc pro tunc* to May 8, 2009, (ii) approving the terms and conditions under which Punter Southall will be retained and compensated and (iii) granting related relief. In support of the Application,

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

the Debtors rely on the Declaration of Ryan D. McGlothlin (the "McGlothlin Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1.

## Background

**A.   Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]   The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA.

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

**Relief Requested**

9.      By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Bankruptcy Rules (i) authorizing NNI's employment and retention of Punter Southall as pension co-advisor to the Debtors *nunc pro tunc* to May 8, 2009, (ii) approving the terms and conditions under which Punter Southall will be retained and compensated at the expense of NNI's estate, including certain limited indemnification rights, as contained in that certain letter agreement, dated as of May 8, 2009 (the "Engagement Agreement") and (iii) granting related relief. As copy of the Engagement Agreement is attached hereto at Exhibit C. By separate application filed concurrently herewith, the Debtors seek entry of an order authorizing NNI's

---

[4]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

4

employment and retention of Palisades Capital Advisors, LLC ("Palisades") as pension co-advisors.

## Basis for Relief

10. Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

11. Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12. Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a). Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L.R. 2014-1(a).

13. By this Application, the Debtors request that the Court approve the employment and compensation arrangements as set forth herein pursuant to section 328(a) of the Bankruptcy

Code. The employment arrangements are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for Punter Southall to act expeditiously and prudently with respect to the matters for which it will be employed.

14. The Debtors also request approval of the employment of Punter Southall *nunc pro tunc* to May 8, 2009. Such relief is warranted by the extraordinary circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). The complexity, intense activity and speed that have characterized these cases have necessitated that the Debtors, Punter Southall and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

## Selection of Punter Southall

15. The Debtors believe that the retention of an experienced firm such as Punter Southall specializing in the provision of actuarial, pension risk management and restructuring advisory services to sponsors and trustees of defined benefit pension plans in the United States and United Kingdom fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in these cases. The Debtors believe they require the services of a capable and experienced pension advisory firm such as Punter Southall because, among other reasons, Punter Southall's resources and capabilities are crucial to the Debtors' success in these chapter 11 cases. The Debtors continue to work on the development of a global plan to maximize value, including assessing all facets of the business, which necessarily includes

consideration of various potentially material claims that could be asserted against the Debtors in these chapter 11 cases, including, without limitation, pension-related claims.

16. The Debtors chose Punter Southall to act as their pension co-advisor because Punter Southall's professionals have significant experience in dealing with pension regulatory authorities, especially in the United Kingdom, with regard to corporate restructurings, both in and out of court.

17. Punter Southall is an advisory firm that specializes in the provision of actuarial, pension risk management and restructuring advisory services to sponsors and trustees of defined benefit pension plans in the United States and the United Kingdom. Punter Southall has significant experience in dealing with pension regulatory authorities, especially in the United Kingdom, and in obtaining the most favorable outcome for clients in restructuring situations.

18. Punter Southall is the US subsidiary of the Punter Southall Group Limited ("PSG"), a group of companies whose primary business was initially founded in 1988 to provide actuarial and investment advice to UK pension plans. PSG currently employs 700 staff and offers a full range of actuarial, employee benefit consultancy and pension administration services to over 100 clients in the UK and US. PSG's constituent businesses include consulting actuaries and pensions administrators; actuarial services in corporate transactions; independent financial advisers; investment consultants and asset solutions; wealth managers; institutional and retail asset managers and independent pension scheme trustee services. PSG has approximately £5bn assets under management and £20bn of assets under advice. PSG is headquartered in London, England, and certain members of the team assigned to this matter are based in the United Kingdom.

19.   Punter Southall is regularly engaged by clients to advise them on pension related issues in corporate restructurings. These issues frequently necessitate engagement with pension regulatory authorities and intense negotiations around the valuation of pension liabilities.

20.   Punter Southall's professionals have been engaged in dozens of corporate transaction and restructuring assignments over the past three years in the United Kingdom, the United States and Canada. Uniquely, Punter Southall was an advisor and expert witness to the Committee of Unsecured Creditors of Sea Containers Services Limited ("Sea Containers") in the chapter 11 cases of Sea Containers and certain of its affiliates. Punter Southall's expert testimony was accepted by the court.

21.   As a result, the Debtors believe that Punter Southall is well qualified to perform these services and represent the Debtors' interests in their chapter 11 cases. Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of uniquely qualified advisors.

## Scope of Services

22.   Pursuant to the Engagement Agreement,[5] Punter Southall, together with co-advisors Palisades (the "Co-Advisors"), will provide pension advisory services to the Debtors in connection with these chapter 11 cases and will provide financial and related advisory services to the Debtors and their counsel, advisors, and consultants relating to the pension-related liabilities and obligations of the Debtors including the following, as reasonably requested:

    a.   Undertaking a financial, regulatory and actuarial review of the Company's pension and other post-retirement plans;

---

[5]   The summary of the Engagement Agreement in this Application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Engagement Agreement.

  b. Analyzing strategic alternatives available to the Company regarding resolution of pension-related claims and issues in the United States, Canada, and the United Kingdom;

  c. Advising the Company on tactics and strategies for negotiating with various stakeholders and pension regulators on pension-related issues;

  d. Representing or assisting the Company in negotiations with third parties with respect to any of the foregoing;

  e. Providing testimony in court on behalf of the Company with respect to any of the foregoing, if necessary;

  f. Attending meetings of the Company's Board of Directors and committees thereof, meetings of the Debtors' investment bankers, financial advisors, and counsel, creditor committee and court hearings; and

  g. Providing other pension advisory services as may be agreed upon by the Co-Advisors and the Company.

23. Punter Southall's analysis of strategic alternatives available to the Company regarding resolution of pension-related claims and issues in the United States, Canada and the United Kingdom includes, without limit, issues relating to purported extraterritorial rights with respect to such claims

24. It is necessary that NNI employ Punter Southall to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these cases. Specifically, Punter Southall will carry out unique functions and will work cooperatively with the Debtors, Punter Southhall and other professionals retained in these cases to avoid the unnecessary duplication of services.

### Professional Compensation and Employment Terms

25. The Co-Advisors intend to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures

and orders of the Court and consistent with the proposed compensation set forth in the Engagement Agreement (the "Fee Structure").[6]

26. In summary, the Fee Structure provides that NNI is obligated to pay the following compensation to the Co-Advisors:

a. A monthly cash fee ("Monthly Advisory Fee") of $200,000 for the first ten months of the Engagement (the "Minimum Advisory Fee Period") and then $125,000 thereafter, which first payment accrues upon the date of execution of the Agreement, until the expiration or termination of the Agreement. Sixty-five percent of the Monthly Advisory Fee will be payable to Palisades and thirty-five percent to Punter Southall.

b. In addition to all of the other fees and expenses described in the Agreement, NNI shall reimburse the Co-Advisors for all (i) reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder (including travel and lodging, data processing and communications, carrier services) and (ii) other reasonable fees and expenses, including counsel, if any.

c. To the extent a plan of reorganization or liquidation is confirmed by the Bankruptcy Court or the Agreement is otherwise terminated by the Company, the Co-Advisors shall be entitled to the Monthly Advisory Fees accrued and expenses incurred to such date, but in no event less than the aggregate Monthly Advisory Fees payable through the Minimum Advisory Fee Period.

27. Punter Southall's extensive experience in assisting with, supervising, or leading the structuring, negotiation, and resolution of complex pension related matters in numerous out of court corporate transactions and restructurings and chapter 11 proceedings was an important factor in determining the Fee Structure. The Debtors believe that the ultimate benefit of Punter Southall's services hereunder cannot be measured by reference to the number of hours to be expended by Punter Southall's professionals in the performance of such services. Indeed, NNI

---

[6] The summary of the Engagement Agreement in this application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Engagement Agreement.

10

and the Co-Advisors agreed upon the Fee Structure in anticipation that a substantial professional commitment of time and effort will be required of the Co-Advisors and their professionals in connection with these chapter 11 cases and in light of the fact that (i) such commitment may foreclose other opportunities for the Co-Advisors and (ii) the actual time and commitment required of the Co-Advisors and their professionals to perform the services under the Engagement Agreement may vary substantially, creating "peak load" issues for the Co-Advisors.

28. The Debtors understand that the Co-Advisors intend to apply for allowance of compensation for professionals services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases pursuant to the procedures set forth in sections 330 and 331 of the Bankruptcy Code; provided, however, that the Co-Advisors shall be compensated pursuant to section 328(a) of the Bankruptcy Code and that their compensation shall not be evaluated under the standard set forth in section 330 of the Bankruptcy Code. As the Co-Advisors' compensation will be calculated and paid based on a flat Monthly Advisory Fee, the Co-Advisors and their professionals request that they be excused from maintaining time records as set forth in Local Rule 2016 in connection with the services to be rendered pursuant to the Engagement Agreement; provided, however, that the Co-Advisors shall instead present to the Court daily descriptions of those services provided on behalf of the Debtors, set forth for each individual who provided such services, kept in hourly increments with a reasonable detailed description of the services provided. Punter Southall will maintain records of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases.

29. Given the numerous issues which Punter Southall may be required to address in the performance of its services hereunder, Punter Southall commitment to the variable level of

time and effort necessary to address all such issues and they arise, the expertise and capabilities of Punter Southall that will be required in this engagement, and the market rate for Punter Southall's services of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

30. NNI has also agreed, among other things, to indemnify and reimburse the Co-Advisors and certain related persons and entities in accordance with the indemnification provisions set forth in the Engagement Agreement.

31. The indemnification and reimbursement provisions reflected in the Engagement Agreement are customary and reasonable terms of compensation for pension advisors such as Punter Southall for proceedings both out-of-court and in chapter 11. The terms of the Engagement Agreement, including the indemnification provisions, were fully negotiated between NNI and the Co-Advisors at arm's-length and the Debtors respectfully submit that the Engagement Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

32. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification granted under the Agreement, as modified in the proposed order attached hereto as Exhibit A and as set forth below:

    a. Subject to the provisions of subparagraph (c) beneath, NNI is authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, Punter Southall in accordance with the terms of the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Punter Southall's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Court.

    b. Notwithstanding any indemnification provisions of the Engagement Agreement to the contrary, NNI shall have no obligation to indemnify

12

Punter Southall or provide reimbursement to Punter Southall (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Punter Southall's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which NNI alleges the breach of Punter Southall's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), beneath, to be a claim or expense for which Punter Southall should not receive indemnity or reimbursement under the terms of the Agreement, as modified by this Order.

c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Punter Southall believes that it is entitled to the payment of any amounts by NNI on account of NNI's indemnification and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, Punter Southall must file an application therefore in this Court, and NNI may not pay any such amounts to Punter Southall before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Punter Southall for indemnification or reimbursement and is not a provision limiting the duration of NNI's obligation to indemnify Punter Southall.

### Punter Southall's Disinterestedness

33. To the best of the Debtors' knowledge, information and belief, and based and in reliance upon Punter Southall's review of electronic client files and records and the McGlothlin Declaration: (i) Punter Southall is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code and (ii) Punter Southall holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Punter Southall is to be employed. As disclosed in the McGlothlin Declaration, Punter Southall

and its affiliates have represented, represent and may continue to represent various creditors and other parties in interest in these cases, but only in matters unrelated to the Debtors or these chapter 11 cases.

### Notice

34. Notice of the Motion has been given via first class mail or hand delivery to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

35. No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: June 5, 2009  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)  
Lisa M. Schweitzer (No. 1033)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*