**EXHIBIT C**

[New York #2058336 v3]

 Palisades

May 8, 2009

Nortel Networks Inc.
195 The West Mall
Toronto, Ontario, Canada
M9C 5K1

Dear Ladies and Gentlemen:

This letter agreement (the "Agreement") sets forth the terms and conditions pursuant to which Palisades Capital Advisors LLC ("Palisades") and Punter Southall LLC ("Punter Southall") (together the "Co-Advisors") will provide pension advisory services to Nortel Networks Inc., a Delaware corporation ("Nortel" or the "Company"), in connection with the Company's United States bankruptcy proceedings (the "Engagement").

1. **Services.** During the term of the Engagement, the Co-Advisors shall provide financial and related advisory services to the Company and its counsel, advisors, and consultants relating to the pension-related liabilities and obligations of the Company. Such services may include, but not be limited to:

   a. Undertaking a financial, regulatory and actuarial review of the Company's pension and other post-retirement plans;

   b. Analyzing strategic alternatives available to the Company regarding resolution of pension-related claims and issues in the United States, Canada, and the United Kingdom;

   c. Advising the Company on tactics and strategies for negotiating with various stakeholders and pension regulators on pension-related issues;

   d. Representing or assisting the Company in negotiations with third parties with respect to any of the foregoing;

   e. Providing testimony in court on behalf of the Company with respect to any of the foregoing, if necessary;

   f. Attending meetings of the Company's Board of Directors and committees thereof, meetings of the Company's investment bankers, financial advisors, and counsel, creditor committee and court hearings; and

   g. Providing such other pension advisory services as may be agreed upon by the Co-Advisors and the Company.

Palisades Capital Advisors, LLC        1050 K Street NW Suite 300 Washington DC 20001
                                        650 Madison Avenue 26th Floor New York NY 10022

May 8, 2009                                2

The Co-Advisors acknowledge that the Company has retained Lazard Freres & Co. LLC as its strategic advisor and investment banker as well as other financial advisors and counsel in the Company's Chapter 11 cases and international proceedings and agree to work cooperatively with such other advisors and counsel so as to avoid any unnecessary duplication of work. Co-Advisors further acknowledge that they will dedicate sufficient resources to perform the Engagement in a timely and professional manner.

2. **Fees.** In consideration of the Co-Advisors' acceptance of this Engagement and performance of Services pursuant to this Agreement, the Company shall pay to the Co-Advisors a monthly cash fee ("Monthly Advisory Fee") of US$200,000 for the first ten months of the Engagement (the "Minimum Advisory Fee Period") and then US$125,000 thereafter until the expiration or termination of this Agreement. Sixty five percent of the Monthly Advisory Fee will be payable to Palisades Capital Advisors and thirty five percent to Punter Southall. The first payment shall accrue upon the date of execution of this Agreement ("Effective Date"). Co-Advisors will file joint fee applications for interim and final allowance of compensation, including reimbursement of expenses, pursuant to the procedures set forth in Sections 330 and 331 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code").

3. **Term and Termination.** In the event that (a) the Company's application for employment of Palisades under Sections 327(a) and 328(a) of Bankruptcy Code is not granted by the Bankruptcy Court this Agreement shall terminate immediately. Otherwise, this Agreement may be terminated at any time by either the Co-Advisors or the Company upon thirty days prior written notice to the other party. To the extent that a plan of reorganization or liquidation is confirmed by the Bankruptcy Court or the Agreement is otherwise terminated by the Company, the Co-Advisors shall be entitled to the Monthly Advisory Fees accrued and expenses incurred to such date, but in no event less than the aggregate Monthly Advisory Fees payable through the Minimum Advisory Fee Period. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 2 and (ii) the Co-Advisors' right to receive, and the Company's obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

4. **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of the Co-Advisors and their professionals hereunder, and that such commitment may foreclose other opportunities for the firm. Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for the Co-Advisors. Given the numerous issues which may arise in engagements such as this, the Co-Advisors commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of the Co-Advisors that will be required in this engagement, and the market rate for the Co-Advisors services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates the Co-Advisors, and provides the requisite certainty to the Company.

5. **Expenses.** In addition to all of the other fees and expenses described in this Agreement, the Company shall reimburse the Co-Advisors for all reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder (including travel and lodging, data

May 8, 2009                                3

processing and communications, carrier services) and (ii) other reasonable fees and expenses, including counsel, if any. As set forth above, the Co-Advisors will file joint fee applications for allowance of compensation, including reimbursement of expenses, pursuant to the procedures set forth in section 330 and 331 of the Bankruptcy Code.

6.  **Invoicing and Payment.** All amounts payable to the Co-Advisors shall be made in lawful money of the United States in accordance with the payment instructions set forth on invoices provided, or to such accounts as the Co-Advisors shall direct. All amounts invoiced by the Co-Advisors shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by the Co-Advisors will be invoiced together with Taxes where appropriate.

7.  **Information.** The Company will furnish or cause to be furnished to the Co-Advisors such current and historical financial information and other information regarding the business of the Company as the Co-Advisors may request in connection with this engagement. The Company represents and warrants to the Co-Advisors that all the foregoing information will be accurate and complete at the time it is furnished in all material respects, and agrees to keep the Co-Advisors advised of all material developments affecting the Company or its financial position. The Company also agrees to use all reasonable efforts to cause any relevant third parties (including potential counterparties) to provide the Co-Advisors with such information concerning such third parties as the Co-Advisors deem necessary for their financial review and analysis. In performing the services pursuant to this Agreement, the Co-Advisors shall be entitled to rely upon information furnished to it by the Company or third parties or that is publicly available, may assume the accuracy and completeness of such information and shall not assume any responsibility for independent verification of any such information. The Co-Advisors will not, as part of this engagement, undertake any independent valuation or appraisal of any of the pension assets or liabilities of the Company or of any third party, or opine or give advice to the Board of Directors, the Company or management or shareholders with respect thereto.

8.  **Limitations on Services as Advisor.** The Co-Advisors' services are limited to those specifically provided in this Agreement, or subsequently agreed-upon, in writing, by the Co-Advisors and the Company. The Co-Advisors are providing the Company with the Co-Advisors' services hereunder as independent contractors, and the parties agree that this Agreement does not create an agency, fiduciary, or third party beneficiary relationship between the Co-Advisors, on the one hand, and the Company or any other person, on the other hand. Any advice (whether written or oral) rendered by the Co-Advisors pursuant to this Agreement is intended solely for the use of the Company in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. In performing the services pursuant to this Agreement, the Co-Advisors are not assuming any responsibility for the Company's decision to pursue, or not to pursue, any business strategy, or to effect, or not to effect, any transaction(s).

9.  **Bankruptcy Court Approval.** The Company shall, as soon as practicable following the execution of this Agreement by the Company, seek an order authorizing the employment of the Co-Advisors pursuant to the terms of this Agreement, as professional persons pursuant to

May 8, 2009                                        4

Sections 327(a) and 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders.   In so agreeing to seek the Co-Advisors retention under Sections 327(a) and 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that the Co-Advisors' pension advisory experience and expertise will inure to the benefit of the Company, that the value to the Company of the Co-Advisors' services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Fees is reasonable regardless of the number of hours to be expended by the Co-Advisors' professionals in the performance of the services to be provided hereunder. The employment application and the proposed order authorizing employment of the Co-Advisors shall be provided to the Co-Advisors as much in advance of their filing as is practicable. If the order authorizing the employment of the Co-Advisors is obtained, the Company shall pay all fees and expenses due pursuant to the Agreement, as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders.

10. **Choice of Law; Jury Trial Waiver; Jurisdiction.** **THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK. EACH OF PALISADES AND THE COMPANY IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF PALISADES PURSUANT TO, OR THE PERFORMANCE BY PALISADES OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.**

11. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of the Co-Advisors to furnish services to the Company under this Agreement, the Company shall (i) indemnify and hold harmless the Co-Advisors and their affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, the Co-Advisors' engagement under this Agreement, any transaction or any actions taken or omitted to be taken by an Indemnified Party, or the Company in connection with this Agreement and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suite, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising

out of or relating to the formulation of any plan of reorganization or liquidation for the Company, this Agreement, or such engagement, transaction or actions.

Notwithstanding the above, the Company shall have no obligation to indemnify the Indemnified Parties or provide contribution or reimbursement to the Indemnified Parties (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from the Indemnified Parties' bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct, (ii) for a contractual dispute in which the Company alleges the breach of the Indemnified Parties' contractual obligations unless the court determines that indemnification, contribution, or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d. Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the court, after notice and hearing.

Neither the Co-Advisors nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Company or any person or entity asserting claims related to or arising out of this Agreement, the Co-Advisors' engagement under this Agreement, any transaction, or any actions taken or omitted to be taken by an Indemnified Party, the Company in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Company which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to any other person or entity. The indemnity, reimbursement, and other obligations and agreements of the Company set forth herein (i) shall apply to any services provided by the Co-Advisors in connection with this engagement prior to the date hereof and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

12. **Miscellaneous.**  This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases.  If appropriate, in connection with performing the services for the Company hereunder the Co-Advisors may utilize the services of one or more of its affiliates, in which case the references herein to the Co-Advisors shall include such affiliates.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Company, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by the Co-Advisors hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or

May 8, 2009                                              6

understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except (i) in a writing duly executed by Palisades and approved by the Bankruptcy Court or by order of the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that indentifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Company will provide the Co-Advisors upon request certain identifying information necessary to verify the identity of the Company, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Company and has been duly executed and delivered by the Company and constitutes a legal, valid and binding agreement of the Company, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against the Co-Advisors because this Agreement was drafted by the Co-Advisors, and the parties waive any statute or rule of law to such effect.

[The remainder of this page is intentionally blank.]

If the foregoing Agreement is in accordance with your understanding of the terms of our engagement, please sign and return to us the enclosed duplicate hereof.

Very truly yours,

PALISADES CAPITAL ADVISORS, LLC

By: _____
    Bradley D. Belt
    Chairman and CEO


PUNTER SOUTHALL LLC

By: _____
    Ryan D. McGlothlin
    Managing Director


Accepted and Agreed to as of the date first written above.

NORTEL NETWORKS INC., on behalf of itself and its subsidiaries and affiliates that are incorporated, formed and/or operating in United States

By: _____
    Name:  GORDON A. DAVIES
    Title:  CHIEF LEGAL OFFICER