IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
           Debtors. : Jointly Administered
:
: Hearing date: June 26, 2009 at 3:00 p.m. (ET)
: Objections due: June 19, 2009 at 4:00 p.m. (ET)
:
------------------------------------------------------------X

**DEBTORS' MOTION FOR ENTRY OF AN ORDER UNDER
11 U.S.C. §§ 363(b)(1) AND 365(d)(4), GRANTING EXTENSION
OF THE DEADLINE BY WHICH THE DEBTORS MUST ASSUME
OR REJECT UNEXPIRED LEASES OF NON-RESIDENTIAL REAL
PROPERTY UPON RECEIPT OF WRITTEN CONSENT FROM LESSORS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 363(b)(1) and 365(d)(4)(B)(ii) of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") extending the deadline by which the Debtors must assume or reject an unexpired lease of non-residential real property upon the Debtors' receipt of a landlord's written consent to such

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

extension; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 363(b)(1) and 365(d)(4) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9019.

### Background

**A.  Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA.

6.    On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

---

[3]    The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

7.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.  Debtors' Corporate Structure and Business**

8.  A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

## Relief Requested

9.  By this Motion, the Debtors seek an order (the "Written Consent Order") pursuant to sections 363(b)(1) and 365(d)(4)(B)(ii) of the Bankruptcy Code and Bankruptcy Rule 9019 granting an extension of the deadline by which they must assume or reject a Lease (as defined below) upon the Debtors' receipt of an executed Written Consent Solicitation Letter (as defined below) from the landlord for such Lease.

10. Out of an abundance of caution, the Debtors are also seeking the Court's approval of the Debtors' ability to agree to modifications of the Written Consent Solicitation Letter under Bankruptcy Rule 9019 so long as such modifications do not affect the Debtors' estates in a materially adverse way or increase the amount of notice time the Debtors must give a landlord prior to rejecting the related Lease(s) beyond what is set forth in this Motion. Any material

---

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

modifications of the Written Consent Solicitation Letter will be made after consultation with the Committee.

**Facts Relevant to this Motion**

11. On May 7, 2009, the Court entered the Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Nonresidential Real Property, extending the Debtors' time to assume or reject unexpired non-residential real property leases through and including August 12, 2009 [D.I. 717] (the "First Extension Order").

12. As of the Petition Date, the Debtors were lessees under approximately seventy-five (75) leases of non-residential real property. Since the Petition Date, the Debtors have rejected eight leases, and three leases have expired in the ordinary course of business. Thus, the Debtors are currently lessees under approximately sixty-four (64) unexpired leases of non-residential real property (the "Leases").[5]

13. Absent an extension of the First Extension Order, the Debtors' time under section 365(d)(4) of the Bankruptcy Code to assume or reject the Leases expires on August 12, 2009.

14. The Debtors, in consultation with their professionals, have worked diligently to exercise their business judgment regarding the assumption or rejection of their Leases. Due to the complexity of these cases and the large number of Leases, the Debtors have not reached a final determination regarding the assumption or rejection of all of their Leases.

---

[5] The Leases include all unexpired leases of nonresidential real property to which the Debtors are lessees and have not been previously assumed or rejected. To the extent additional leases of nonresidential real property to which the Debtors are parties exist, the Debtors are seeking an extension of time to assume or reject those leases upon the Debtors' receipt of an executed Written Consent Solicitation Letter from the landlord for such Lease as well. Inclusion or omission of any instrument as a Lease does not constitute an admission by the Debtors that such instrument is or is not a true lease or otherwise.

15. To avoid having to decide hastily on the assumption or rejection of their remaining Leases, on or about June 4, 2009, the Debtors sent letters to certain of their landlords requesting that the landlords consent in writing to an extension of the Debtors' period under section 365(d)(4)(B)(ii), to assume or reject the Debtors' Lease(s) with such landlords (the "Written Consent Solicitation Letter"). A copy of the form of Written Consent Solicitation Letter is attached hereto as Exhibit B. The Written Consent Solicitation Letter requests that the relevant landlord give its written consent to an extension of the Debtors' time through March 31, 2010, to assume or reject the Debtors' Lease(s) with such landlord.

16. As consideration for a landlord's consent to an extension of the section 365(d)(4)(B)(ii) period, the Debtors offered to provide a landlord with advance notice of any final determination by the Debtors to reject the respective Lease(s) with such landlord. In consultation with the Committee, the Debtors plan to provide notice to the landlords who consent to an extension under section 365(d)(4)(B)(ii) of the Bankruptcy Code of the Debtors' intent to reject a Lease at least thirty (30) days, but not more than sixty (60) days,[6] before the date set for rejection of the Lease in (x) a motion filed for the entry of an order authorizing the Debtors to reject a Lease or (y) a rejection notice filed and served pursuant to the Order Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto [D.I. 510] entered by the Court on March 20, 2009.

---

[6] The length of the notice period the Debtors intend to provide will in most instances be 30 days, and a longer notice period will be offered only where the Debtors deem that providing a longer notice period is necessary in order to maximize value for their estates for the benefit of their stakeholders due to specific circumstances, for example, because of the size of the premises involved and the accompanying complexities of vacating such premises.

## Basis for Relief

17. The Written Consent Order is fully compliant with the Bankruptcy Code and enables the Debtors to efficiently obtain an extension of time under section 365(d)(4)(B)(ii) of the Bankruptcy Code.[7]

18. Section 365(d)(4)(B) of the Bankruptcy Code provides that the court may extend the period to reject or assume Leases prior to the expiration of the 120-day period, for 90 days on the motion of the trustee or lessor for cause, and that if the court grants such an extension, a subsequent extension may only be granted upon prior written consent of the lessor in each instance. 11 U.S.C. § 365(d)(4)(B)(i)-(ii).

19. By the First Extension Order, the Court extended the Debtors' period under section 365(d)(4)(B)(i) to assume or reject the Leases for ninety (90) days, through August 12, 2009. The First Extension Order provides that the relief granted therein is without prejudice to the Debtors' rights to further extensions of the assumption or rejection period with the prior written consent of lessors. Accordingly, to obtain a further extension of this deadline, the Debtors are seeking the "prior written consent of the lessor in each instance" pursuant to subsection (ii) of section 365(d)(4)(B). 11 U.S.C. § 365(d)(4)(B)(ii).

20. The procedure for obtaining an extension of time to assume or reject the Leases in the Written Consent Order complies with section 365(d)(4)(B)(ii) of the Bankruptcy Code by providing that any extension of the Debtors' time to assume or reject a Lease becomes effective <u>only</u> upon the Debtors' receipt of a Written Consent Solicitation Letter that has been executed by the applicable landlord. Further, the Written Consent Order provides that this extension is only for the period of time that has been agreed to by the respective landlord.

---

[7] The Debtors reserve all rights to obtain the written consent of their landlords by other means.

7

21.     Additionally, entry of the Written Consent Order will provide the Debtors with the opportunity to maximize distributions to all of their creditors. The Written Consent Order streamlines the process for the Debtors to obtain further section 365(d)(4) extensions by relieving them of the obligation of having to return to this Court to effectuate an extension each time the written consent of a landlord is obtained. Requiring separate court approval for each extension would not only be time consuming, but also a waste of estate assets.[8] Similar relief has been granted in other cases in this District. See, e.g. In re VI Acquisition Corp., No. 08-10623 (KG) (Bank. D. Del. Sept. 25, 2008); In re Hancock Fabrics, Inc., No. 07-10353 (BLS) (Bankr. D. Del. Aug. 24, 2007).

22.     Further, entry of the Written Consent Order will provide the Debtors with adequate time to continue to conduct a considered and thorough analysis of the Leases to determine, in consultation with the Committee, whether retaining each Lease is beneficial to these estates. Although the Debtors have made strides in evaluating and disposing of certain burdensome leases, the Debtors need additional time to complete a deliberative process of evaluating their remaining Leases in conjunction with their general restructuring efforts. The Debtors intend to assume or reject the majority of their Leases prior to August 12, 2009.

23.     Finally, none of the Debtors' landlords will suffer unfair prejudice or harm from entry of the Written Consent Order because an extension of the period to assume or reject a Lease will only become effective upon each landlord's prior written consent. Every landlord has the freedom to decide if they want to continue to be a landlord.[9]

---

[8]     Moreover, there is nothing in section 365(d)(4)(B)(ii) that requires separate court approval to effectuate each extension of a debtor's time to assume or reject one of its leases. See 11 U.S.C. § 365(d)(4)(B)(ii).

[9]     Out of an abundance of caution, the Debtors also are seeking the Court's approval of their ability to agree to modifications of the Written Consent Solicitation Letter pursuant to Bankruptcy Rule 9019 without need for a further court order, so long as such modifications do not affect the Debtors' estates in a materially

24.     For these reasons, the Debtors respectfully submit that the Court should enter the Written Consent Order.

## Notice

25.     Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) the counterparties to the leases; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

26.     No prior request for the relief sought herein has been made to this or any other court.

---

adverse way or increase the amount of notice time the Debtors must provide a landlord prior to any rejection of the related Lease(s) beyond the proposed time periods set forth in the Motion. Any material modifications of the Written Consent Solicitation Letter will be made after consultation with the Committee.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  June 5, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*