**EXHIBIT A**

Court File No. 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION (the "Applicants")

### THIRTEENTH REPORT OF THE MONITOR
### DATED JUNE 11, 2009

## INTRODUCTION

1. On January 14, 2009, Nortel Networks Corporation ("NNC" and collectively with all its subsidiaries, "Nortel" or "Company"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks International Corporation ("NNIC") and Nortel Networks Global Corporation ("NNGC") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("CCAA"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. ("EYI") was appointed as the Monitor of the Applicants (the "Monitor") in the CCAA proceeding. The stay of proceedings was extended to July 30, 2009, by this Honourable Court in its Order dated April 28, 2009.

## PURPOSE

2. The purpose of this Thirteenth Report of the Monitor (the "Thirteenth Report") is to:

a) provide information regarding the Company's motion with respect to the settlement of certain issues between Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation ("FC") (which together with their affiliates are referred to herein as "Flextronics") on the one hand and Nortel on the other as reflected in a settlement agreement (the "Settlement Agreement") and side letter (the "Side Letter") entered into between theses parties as of May 22, 2009 (collectively referred to as the "Settlement Documents").

B) provide information regarding the Company's motion and the motion of certain plaintiffs with respect to the applicability of the stay of proceedings as against the D&O Defendants (as defined below) in respect of the ERISA Litigation (as defined below).

**TERMS OF REFERENCE**

3. In preparing this Thirteenth Report, EYI has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. EYI has not audited, reviewed, or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, EYI expresses no opinion or other form of assurance on the information contained in this Thirteenth Report.

4. Unless otherwise stated, all monetary amounts contained herein are expressed in United States dollars.

5. Capitalized terms not defined in this Thirteenth Report are as defined in the Affidavit of John Doolittle sworn on January 14, 2009 (the "Doolittle Affidavit") or previous Reports of the Monitor.

**GENERAL BACKGROUND**

6. Nortel is a technology company that designs, develops and deploys communication products, systems, and solutions to its carrier and enterprise customers around the

globe. Its principal assets include its people, the intellectual property derived and maintained from its R&D activities, its customers and other significant contracts and agreements.

7. Nortel conducts its global business through four reportable business unit segments: Carrier Networks, Enterprise Solutions, Metro Ethernet Networks and the LG-Nortel joint venture. The revenues and assets of each of the business units are distributed among the various Nortel legal entities and joint ventures around the world.

**FLEXTRONICS**

8. As detailed in the Pre-Filing Report, Flextronics and various other contract manufacturers purchased substantially all of Nortel's inventory and manufacturing facilities in 2004. The manufacturing relationship between Flextronics and Nortel is governed by a number of agreements, including the following Master Contract Manufacturing Services Agreements ("MCMSAs"):

   a) The MCMSA entered into between Nortel Networks Limited ("NNL") and Solectron Corporation (as FC was then known) on September 30, 2003 ("2003 MCMSA"); and

   b) The Amended and Restated MCMSA entered into between NNL and FTS on June 29, 2004.

9. Flextronics currently provides approximately 70% of Nortel's hardware products on a global basis and a significant portion of logistics and repair services required in connection with those products.

10. In recognition of the strategic importance of Flextronics' cooperation during the proceedings, NNL entered into an agreement with Flextronics dated January 13, 2009 ("Amending Agreement") which among other things amended the MCMSAs to provide minimal disruptions to Nortel's supply chain and a corresponding degree of stability for Nortel's customer base during the post-filing period. The terms of the Amending Agreement provided, among other things, for the payment to Flextronics

3

of $120 million towards the purchase of certain inventories and addressed the ongoing credit terms Flextronics would provide for delivery to Nortel of post-filing goods and services.

11. The Amending Agreement was approved by this Honourable Court on January 14, 2009. A copy of the executed Amending Agreement is attached as an exhibit to the affidavit of Joseph Flanagan sworn June 5, 2009.

12. To date, Nortel has paid $100 million of the $120 million agreed to under the Amending Agreement.

13. Since execution of the Amending Agreement, disputes have developed between Nortel and Flextronics with respect to interpretations of certain terms contained therein and certain other matters. These issues revolve around, among other things:

    a) inventories to which the $120 million payment to Flextronics applied;

    b) excess and obsolete ("E&O") inventories that are subject to post-filing buy back provisions;

    c) allocation of obligations between pre and post-filing periods;

    d) compliance with the post-filing payment terms agreed to in the Amending Agreement; and

    e) whether termination of the 2003 MCMSA will occur on July 12, 2009.

14. In recognition of the continuing importance of the Flextronics relationship and the material negative effect any disruption to the supply of product and services would have on Nortel's operations, extensive negotiations were held between senior management of Nortel and Flextronics in an attempt to resolve the differences.

15. Nortel kept the Monitor apprised of the progress being made during the negotiations with Flextronics as well as the substantive nature of the settlement proposals being tabled.

4

16. These negotiations proved successful and the Settlement Documents have been entered into by Nortel and Flextronics subject to approval of this Honourable Court and the US Bankruptcy Court. A copy of the Settlement Documents is attached as a confidential Exhibit "A" to this Thirteenth Report. A redacted version of the Settlement Documents is attached to the Affidavit of Joseph Flanagan, sworn June 5, 2009.

17. Pursuant to the terms of the Settlement Documents, Nortel and Flextronics have entered into a full and final settlement of all disputes known by both parties as of May 22, 2009 relating to the interpretation of the Amending Agreement and certain other matters, including, among other things:

   a) Confirmation that the purchase of inventory in accordance with the existing plans of record (which include specific arrangements to deal with certain inventories) is in addition to the obligation of Nortel to purchase $120 million of inventory from Flextronics pursuant to the Amending Agreement;

   b) Confirmation that inventory acquired by Flextronics on or before the effective date of the Amending Agreement may be used in the calculation of Nortel's quarterly E&O purchase orders, but that Nortel shall not be required to purchase such inventory as part of its purchase of the quarterly E&O;

   c) The extension of the 2003 MCMSA to December 12, 2009 with the exception of the CDMA VSHA in respect of which Flextronics will continue to perform its obligations and is restricted from providing any six month advance notice of termination permitted under the CDMA VSHA until December 12, 2009;

   d) Confirmation that for purposes of calculating the due date on Flextronics invoices, "delivered" means goods physically received at a Nortel facility or other Nortel determined final delivery location; and

   e) The resolution of other operational issues addressed in the Side Letter including :

i. Agreement that performance under the MCMSAs, VSHAs, Amending Agreement and Settlement Documents do not constitute extensions of credit for purposes of Section 11.3 of the CCAA or paragraph 18 of the Initial Order;

ii. The seeking of direction from this Honourable Court at a future date as to the characterization of Nortel's obligation to pay for inventory transfers relating to the pre-filing closing of a facility located in Montreal (whether it is a pre-filing or post-filing obligation).

18. The Settlement Documents contain confidential and sensitive information of a commercial nature with respect to Nortel's supply chain and the business relationship with its most significant supplier. The Monitor is of the view that if such information was to be made public, it could prejudice Nortel's position vis-à-vis its competitors and in negotiations with other suppliers thereby potentially disrupting ongoing operations.

19. The Monitor has been advised by Nortel that representatives of the Official Committee of Unsecured Creditors, the ad hoc committee of bondholders, the Ontario Superintendent of Financial Services as Administrator of the Pension Benefits Guarantee Fund and the Joint Administrators have been kept apprised of negotiations and the settlement with Flextronics and none of these parties have raised any objection to the terms of the Settlement Documents.

20. Given the foregoing, the Company is requesting this Honourable Court approve the Settlement Documents and the sealing of the redacted portion of the Settlement Documents.

21. The Monitor has been advised by Nortel Networks Inc. ("NNI") that the United States Bankruptcy Court for the District of Delaware has approved the Settlement Documents and the sealing of the redacted portion of the Settlement Documents at a hearing on June 11, 2009.

**ERISA LITIGATION**

22. In 2001, an action was commenced in the United States alleging imprudent investment of the assets of NNI's defined contribution retirement plan and breach by the Debtor Defendants' and the D&O Defendants' (both as defined below) of their statutory duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). The current statement of claim, known as the Second Amendment Complaint, was filed June 17, 2005, in the United States District Court for the Middle District of Tennessee, Nashville Division (the "ERISA Litigation").

23. The plaintiffs in the ERISA Litigation ("ERISA Plaintiffs") assert breach of fiduciary duty claims against NNI, NNC, and NNL (collectively the "Debtor Defendants"), and against 27 individual defendants, including 3 current officers or directors and 24 former officers and directors of NNC and NNL (collectively the "D&O Defendants").

24. The 3 current officers and directors of the Applicants named in the ERISA Litigation are John M. Doolittle, who holds the title of Treasurer of NNC and NNL, and John P. Manley and Harry J. Pearce, who are both directors of NNC and NNL.

25. The Monitor understands that the ERISA Plaintiffs and Nortel agree the ERISA Litigation is stayed against NNC, NNL and NNI. The ERISA Plaintiffs and Nortel, however, disagree whether the ERISA Litigation is or should be stayed against the D&O Defendants.

26. The Company has filed a motion for a determination that the stay of proceedings extends to the D&O Defendants. The ERISA plaintiffs have filed a cross-motion for a determination to permit the continuation of proceedings against the D&O Defendants.

**MONITOR'S ANALYSIS AND RECOMMENDATION**

27. As a result of the unique and critical role Flextronics plays in Nortel's supply chain, it is essential that a satisfactory, workable relationship exists between the parties to ensure stability in Nortel's operations during these proceedings by maintaining market confidence in its ability to manage its supply chain and meet its customer

delivery obligations. Furthermore, such market confidence is required to ensure a maximization of recoveries to the various stakeholder groups affected by these proceedings.

28. The Monitor therefore recommends that the Settlement Documents entered into between Nortel and Flextronics be approved by this Honourable Court.

29. For the reasons described in Paragraph 17 contained herein, the Monitor recommends that the confidential Exhibit "A" to this Thirteenth Report be sealed by this Honourable Court.

30. The Monitor is of the view that granting the request to lift the stay against the D&O Defendants will create a significant distraction and result in the Debtor Defendants incurring significant costs and expending significant resources, to the detriment of the restructuring process.

31. In the circumstances, the Monitor supports the Company's view that the relief sought by the ERISA Plaintiffs should not be granted.

All of which is respectfully submitted this 11th day of June, 2009.

**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants

Per:

*[signature]*

Murray A. McDonald
President

CONFIDENTIAL EXHIBIT "A"

[REDACTED]

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**THIRTEENTH REPORT OF THE MONITOR**
**DATED JUNE 11, 2009**

**GOODMANS LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada  M5B 2M6

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\5726149