## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS INC., et al., | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

## VERIFIED STATEMENT OF THE BANK OF NEW YORK MELLON IN ITS CAPACITY AS INDENTURE TRUSTEE PURSUANT TO BANKRUPTCY RULE 2019

1.     The Bank of New York Mellon ("BNY"), having an address at 101 Barclay Street, Floor 8W, New York, New York 10286, hereby makes the following verified statement (this "Statement") pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure.  The undersigned, Martin N. Feig, is a Vice President in the Corporate Trust Risk Group of BNY and is duly authorized to execute the Statement on behalf of BNY.

2.     BNY serves as the indenture trustee to the indentures described herein (the "Indentures") pursuant to which the following notes (collectively, the "Notes") were issued. Copies of the Indentures are annexed hereto as exhibits.[1]

a.     BNY is the successor indenture trustee with respect to a certain Indenture, dated as of November 30, 1988, between Northern Telecom Limited, now known as Nortel Networks Limited ("NNL"), and The Toronto-Dominion Bank Trust Company as Trustee.  NNL issued the 6.875% Notes due 2023 in the original principal amount of $200,000,000 pursuant to that Indenture.  A copy of that Indenture is annexed hereto as Exhibit A.

---

[1]  Because of their length, copies of the Indentures will not be served on any party other than the Court, counsel to the Debtors, counsel to the Official Committee of Unsecured Creditors and the Office of the United States Trustee. Any party wishing to obtain copies of the Indentures may request them from BNY at the address provided herein.

b.      BNY is the indenture trustee with respect to a certain Indenture, dated as of July 5, 2006, between NNL as issuer, Nortel Networks Corporation ("NNC") and Nortel Networks Inc. ("NNI") as guarantors, and BNY as Trustee.  NNL issued the following Notes pursuant to that Indenture: (i) the London Interbank Offered Rate (LIBOR) + 4.250% Floating Rate Notes due 2011 in the original principal amount of $1,000,000,000; (ii) the 10.125% Fixed Rate Notes due 2013 in the original principal amount of $550,000,000 and (iii) the 10.75% Fixed Rate Notes due 2016 in the original principal amount of $1,125,000,000.  A copy of that Indenture is annexed hereto as Exhibit B.

c.      BNY is the indenture trustee with respect to a certain Indenture, dated as of March 28, 2007, between NNC as issuer, NNL and NNI as guarantors, and BNY as Trustee.  NNC issued the following Notes pursuant to that Indenture: (i) the 1.75% Convertible Senior Notes due 2012 in the original principal amount of $575,000,000 and (ii) the 2.125% Convertible Senior Notes due 2014 in the original principal amount of $575,000,000.  A copy of that Indenture is annexed hereto as Exhibit C.[2]

3.      BNY possesses the rights and obligations that are provided to it by the Indentures pursuant to which the Notes were issued, as well as all related documents, agreements and instruments executed and delivered in connection therewith (collectively, the "Related Documents").

4.      In accordance with Bankruptcy Rule 2019(a), BNY submits the following verified statement.

---

[2]  As of January 14, 2009, the date in which the debtors in the above-captioned chapter 11 voluntary petitions, BNY was also the indenture trustee with respect to a certain Indenture, dated as of February 15, 1996 between Nortel Networks Capital Corporation ("NNCC") and NNL as issuers, NNL as guarantor, and BNY as Trustee.  BNY is resigning as the indenture trustee with respect to that Indenture.  NNCC and NNL issued the 7.875% Notes due 2026 in the original principal amount of $150,000,000 pursuant to that Indenture.

NY\1493123.1

a.    The claims held by the beneficial holders of the Notes are in the nature of money loaned, all as evidenced by the Indentures and the Related Documents.  In its capacity as indenture trustee, BNY does not beneficially own any of the Notes, though it may be the custodian with respect to some of the Notes.

b.    As of January 14, 2009, the date in which the debtors in the above-captioned chapter 11 cases filed their voluntary petitions, NNC, NNL and NNI are still indebted either as a primary issuer or as a guarantor pursuant to the Notes in the aggregate principal amount of approximately $4,025,000,000.00, plus interest and any other amounts due and unpaid under the Notes.

5.    In addition to its rights as indenture trustee as provided by the Indentures and the Related Documents, BNY holds claims for reimbursement of reasonable fees and expenses (including reasonable fees and expenses of its counsel) for pre-petition and post-petition services and the performance of its duties under the Indentures and the Related Documents.

6.    Notwithstanding the description of claims contained herein, nothing in this Statement shall be deemed to supersede any proofs of claim that will be filed by BNY.

NY\1493123.1

7.     BNY reserves the right to amend or supplement this Statement at any time in the future.

**THE BANK OF NEW YORK MELLON,**
**AS INDENTURE TRUSTEE**

By:_____

Martin N. Feig
Vice President
The Bank of New York Mellon
Corporate Trust Risk
101 Barclay Street, Floor 8W
New York, NY 10286

State of New York     )
                      ) ss.:
County of New York    )

Sworn to before me and subscribed in my presence by Martin N. Feig this 9th day of February, 2009.

_____
Notary Public

My commission expires:  08/20/2011

CAROLINA KOLIK
Notary Public, State of New York
No. 01KO6173055
Qualified in Kings County
Commission Expires 08/20/2011

**EXHIBIT A**

# NORTHERN TELECOM LIMITED

## AND

## THE TORONTO-DOMINION BANK TRUST COMPANY

*Trustee*

---

### *INDENTURE*

*Dated as of November 30, 1988*

---

### NORTHERN TELECOM LIMITED
#### Reconciliation and tie between Trust Indenture Act of 1939 and
#### Indenture, dated as of November 30, 1988

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| 310(a)(1) | 609 |
| (a)(2) | 609 |
| (a)(3) | Not Applicable |
| (a)(4) | Not Applicable |
| (b) | 609 |
| (c) | Not Applicable |
| 311(a) | 610 |
| (b) | 610 |
| 312(a) | 701 |
| (b) | 701(b) |
| (c) | 701(c) |
| 313(a) | 702(a) |
| (b) | 702(a) |
| (c) | 702(a) |
| (d) | 702(b) |
| 314(a) | 703(b) |
| (b) | Not Applicable |
| (c)(1) | 102 |
| (c)(2) | 102 |
| (c)(3) | Not Applicable |
| (d) | Not Applicable |
| (e) | 102 |
| 315(a) | 601(b) |
| (b) | 605 |
| (c) | 601(a) |
| (d) | 601(c) |
| (d)(1) | 601(b) |
| (d)(2) | 601(c)(2) |
| (d)(3) | 601(c)(3) |
| (e) | 511 |
| 316(a)(1)(A) | 506(a)(1) |
| (a)(1)(B) | 506(a)(2) |
| | 503(a) |
| (a)(2) | Not Applicable |
| (b) | 508 |
| 317(a)(1) | 509 |
| (a)(2) | 510 |
| (b) | 1003 |
| 318(a) | 107(b) |

Note: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| PARTIES | 1 |
| RECITALS | 1 |

## ARTICLE ONE
### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.  Definitions:

| (1) | Act | 1 |
|---|---|---|
| (2) | Affiliate | 1 |
| (3) | Attributable Debt | 1 |
| (4) | Authorized Newspaper | 1 |
| (5) | Bearer Security | 1 |
| (6) | Board of Directors | 2 |
| (7) | Board Resolution | 2 |
| (8) | Business Day | 2 |
| (9) | Commission | 2 |
| (10) | Components | 2 |
| (11) | Consolidated Net Tangible Assets | 2 |
| (12) | Conversion Date | 2 |
| (13) | Corporate Trust Office | 2 |
| (14) | corporation | 2 |
| (15) | Corporation | 2 |
| (16) | Corporation Request; Corporation Order | 2 |
| (17) | coupon | 3 |
| (18) | Debt Securities | 3 |
| (19) | Defaulted Interest | 3 |
| (20) | Depositary | 3 |
| (21) | Dollar | 3 |
| (22) | ECU | 3 |
| (23) | European Communities | 3 |
| (24) | Event of Default | 3 |
| (25) | Exchange Act | 3 |
| (26) | Exchange Rate | 3 |
| (27) | Exchange Rate Officer's Certificate | 4 |
| (28) | Financing Leases | 4 |
| (29) | Foreign Currency | 4 |
| (30) | Funded Debt | 4 |
| (31) | Global Security | 4 |
| (32) | Holder | 4 |
| (33) | Indenture | 4 |
| (34) | interest | 4 |
| (35) | Interest Payment Date | 4 |
| (36) | Maturity | 4 |
| (37) | Mortgage | 4 |
| (38) | Officers' Certificate | 5 |
| (39) | Opinion of Counsel | 5 |
| (40) | Original Issue Discount Security | 5 |
| (41) | Outstanding | 5 |
| (42) | Paying Agent | 5 |
| (43) | Person | 5 |
| (44) | Place of Payment | 5 |
| (45) | Predecessor Security | 5 |
| (46) | Purchase Money Mortgage | 6 |

Note: This table of contents shall not, for any purpose, be deemed to be part of the Indenture.

From:Bank of NY Mellon          12128155802                    01/20/2009 10:09        #423 P.004/057
Case 09-10138-MFW    Doc 911    Filed 06/16/09    Page 9 of 30

ii

|     |     |     |
| --- | --- | --- |
| (47) | Redemption Date | 6 |
| (48) | Redemption Price | 6 |
| (49) | Registered Security | 6 |
| (50) | Regular Record Date | 6 |
| (51) | Responsible Officer | 6 |
| (52) | Restricted Subsidiary | 6 |
| (53) | Security Register; Security Registrar | 6 |
| (54) | Special Record Date | 6 |
| (55) | Stated Maturity Date | 6 |
| (56) | Subsidiary | 6 |
| (57) | Trust Indenture Act | 7 |
| (58) | Trustee | 7 |

| | | |
| --- | --- | --- |
| SECTION 102. | Compliance Certificates and Opinions | 7 |
| SECTION 103. | Form of Documents Delivered to Trustee | 7 |
| SECTION 104. | Acts of Holders | 7 |
| SECTION 105. | Notices, etc., to Trustee and Corporation | 9 |
| SECTION 106. | Notice to Holders; Waiver | 9 |
| SECTION 107. | Incorporation by Reference of Trust Indenture Act and Conflict with Such Act | 10 |
| SECTION 108. | Effect of Headings and Table of Contents | 10 |
| SECTION 109. | Successors and Assigns | 10 |
| SECTION 110. | Separability Clause | 10 |
| SECTION 111. | Benefits of Indenture | 10 |
| SECTION 112. | Governing Law | 10 |
| SECTION 113. | Legal Holidays | 10 |

## ARTICLE TWO
### DEBT SECURITY FORMS

| | | |
| --- | --- | --- |
| SECTION 201. | Forms Generally | 11 |
| SECTION 202. | Forms of Debt Securities | 11 |
| SECTION 203. | Form of Trustee's Certificate of Authentication | 12 |

## ARTICLE THREE
### THE DEBT SECURITIES

| | | |
| --- | --- | --- |
| SECTION 301. | Amount Unlimited; Issuable in Series | 12 |
| SECTION 302. | Denominations | 14 |
| SECTION 303. | Execution, Authentication, Delivery and Dating | 14 |
| SECTION 304. | Temporary Debt Securities | 16 |
| SECTION 305. | Registration, Registration of Transfer and Exchange | 16 |
| SECTION 306. | Mutilated, Destroyed, Lost or Stolen Debt Securities | 19 |
| SECTION 307. | Payment of Interest; Interest Rights Preserved | 19 |
| SECTION 308. | Persons Deemed Owners | 20 |
| SECTION 309. | Cancellation | 21 |
| SECTION 310. | Computation of Interest | 21 |
| SECTION 311. | Payment in Currencies | 21 |
| SECTION 312. | Judgments | 23 |

From:Bank of NY Mellon          12128155802          01/20/2009 10:10     #423 P.005/057
Case 09-10138-MFW     Doc 911     Filed 06/16/09     Page 10 of 30

iii

## ARTICLE FOUR
### SATISFACTION AND DISCHARGE

SECTION 401.     Satisfaction and Discharge of Indenture ............................................................ 24
SECTION 402.     Application of Trust Money ...................................................................................... 25

## ARTICLE FIVE
### DEFAULTS AND REMEDIES

SECTION 501.     Events of Default and Enforcement ....................................................................... 25
SECTION 502.     Waiver of Declaration .............................................................................................. 26
SECTION 503.     Waiver ....................................................................................................................... 26
SECTION 504.     Other Remedies ........................................................................................................ 27
SECTION 505.     Application of Money Collected ............................................................................. 27
SECTION 506.     Control by Holders ................................................................................................... 27
SECTION 507.     Limitation on Suits ................................................................................................... 28
SECTION 508.     Rights of Holders to Receive Payment ................................................................. 28
SECTION 509.     Collection Suit by Trustee ....................................................................................... 28
SECTION 510.     Trustee May File Proof of Claim ............................................................................ 28
SECTION 511.     Undertaking for Costs ............................................................................................. 28
SECTION 512.     Delay or Omission Not Waiver ............................................................................... 28
SECTION 513.     Waiver of Stay or Extension Laws ......................................................................... 29

## ARTICLE SIX
### THE TRUSTEE

SECTION 601.     Duties of Trustee ..................................................................................................... 29
SECTION 602.     Rights of Trustee ...................................................................................................... 30
SECTION 603.     Individual Rights of Trustee .................................................................................... 30
SECTION 604.     Trustee's Disclaimer ................................................................................................. 30
SECTION 605.     Notice of Default ....................................................................................................... 30
SECTION 606.     Compensation and Indemnity ................................................................................ 30
SECTION 607.     Replacement of Trustee ........................................................................................... 30
SECTION 608.     Successor Trustee by Merger, etc. .......................................................................... 32
SECTION 609.     Eligibility; Disqualification ....................................................................................... 32
SECTION 610.     Preferential Collection of Claims Against the Corporation ................................ 32

## ARTICLE SEVEN
### HOLDERS' LISTS AND REPORTS BY TRUSTEE AND CORPORATION

SECTION 701.     Preservation of Information; Communications to Holders ................................. 32
SECTION 702.     Reports by Trustee ................................................................................................... 33
SECTION 703.     Reports by the Corporation ..................................................................................... 33

## ARTICLE EIGHT
### AMALGAMATION, CONSOLIDATION, CONVEYANCE, TRANSFER OR LEASE

SECTION 801.     Amalgamation, Consolidations of Corporation and Conveyances Permitted
                 Subject to Certain Conditions. ................................................................................ 34
SECTION 802.     Rights and Duties of Successor Corporation ........................................................ 34
SECTION 803.     Officers' Certificate and Opinion of Counsel ....................................................... 35

iv

## ARTICLE NINE
### SUPPLEMENTAL INDENTURES

| | | |
|---|---|---|
| SECTION 901. | Supplemental Indentures without Consent of Holders | 35 |
| SECTION 902. | Supplemental Indentures with Consent of Holders | 36 |
| SECTION 903. | Execution of Supplemental Indentures | 36 |
| SECTION 904. | Effect of Supplemental Indentures | 37 |
| SECTION 905. | Conformity with Trust Indenture Act | 37 |
| SECTION 906. | Reference in Debt Securities to Supplemental Indentures | 37 |

## ARTICLE TEN
### COVENANTS

| | | |
|---|---|---|
| SECTION 1001. | Payment of Principal, Premium and Interest | 37 |
| SECTION 1002. | Maintenance of Office or Agency | 37 |
| SECTION 1003. | Money for Debt Securities Payments to Be Held in Trust | 38 |
| SECTION 1004. | Negative Pledge | 38 |
| SECTION 1005. | Compliance Certificate | 40 |
| SECTION 1006. | Waiver of Certain Covenants | 40 |

## ARTICLE ELEVEN
### REDEMPTION OF DEBT SECURITIES

| | | |
|---|---|---|
| SECTION 1101. | Applicability of Article | 41 |
| SECTION 1102. | Election to Redeem; Notice to Trustee | 41 |
| SECTION 1103. | Selection by Trustee of Debt Securities to be Redeemed | 41 |
| SECTION 1104. | Notice of Redemption | 41 |
| SECTION 1105. | Deposit of Redemption Price | 42 |
| SECTION 1106. | Debt Securities Payable on Redemption Date | 42 |
| SECTION 1107. | Debt Securities Redeemed in Part | 42 |

## ARTICLE TWELVE
### SINKING FUNDS

| | | |
|---|---|---|
| SECTION 1201. | Applicability of Article | 43 |
| SECTION 1202. | Satisfaction of Sinking Fund Payments with Debt Securities | 43 |
| SECTION 1203. | Redemption of Debt Securities for Sinking Fund | 43 |

## ARTICLE THIRTEEN
### DEFEASANCE

| | | |
|---|---|---|
| SECTION 1301. | Discharge by Deposit of Money or Debt Securities | 44 |
| SECTION 1302. | Defeasance of Certain Obligations | 45 |
| SECTION 1303. | Application of Trust Money | 45 |
| SECTION 1304. | Repayment to the Corporation | 45 |

## ARTICLE FOURTEEN
### MEETINGS OF HOLDERS OF DEBT SECURITIES

| | | |
|---|---|---|
| SECTION 1401. | Purposes for Which Meetings may be Called | 45 |
| SECTION 1402. | Call, Notice and Place of Meetings | 46 |
| SECTION 1403. | Persons Entitled to Vote at Meetings | 46 |
| SECTION 1404. | Quorum; Action | 46 |

v

SECTION 1405.    Determination of Voting Rights; Conduct and Adjournment
                 of Meetings........................................................................................    47

SECTION 1406.    Counting Votes and Recording Action of Meetings.................................    47

SIGNATURES ........................................................................................................    48

EXHIBIT A...........................................................................................................    A-1

**INDENTURE** dated as of November 30, 1988, between Northern Telecom Limited (the "Corporation), a Canadian corporation having its principal place of business at 3 Robert Speck Parkway, Mississauga, Ontario, Canada, L4Z 3C8, and The Toronto-Dominion Bank Trust Company, a New York banking corporation (the "Trustee"), having its Corporate Trust Office at 42 Wall Street, New York, New York U.S.A. 10005.

For and in consideration of the premises and the purchase of the Debt Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Debt Securities or of series thereof, as follows.

# ARTICLE ONE

## DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

SECTION 101.   *Definitions.*

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

      (A)    the terms defined in this Article have the meanings assigned to them in this Article, and include the plural as well as the singular;

      (B)    all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

      (C)    all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with Canadian generally accepted accounting principles, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such Canadian accounting principles as are generally accepted at the date of such computation; and

      (D)    the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

(1)     "Act" when used with respect to any Holder has the meaning specified in Section 104.

(2)     "Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

(3)     "Attributable Debt" in respect of a Financing Lease means the present value of the obligations of the lessee thereunder for rental payments during the remaining term of such lease.

(4)     "Authorized Newspaper" means a newspaper in an official language of the country of publication or in the English language customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays, and of general circulation in the place in connection with which the term is used or in the financial community of such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different newspapers in the same city meeting the foregoing requirements and in each case on any Business Day.

(5)     "Bearer Security" means any Debt Security in the form of bearer securities established pursuant to Section 202 that is payable to bearer.

(6)    "Board of Directors" means either the board of directors of the Corporation, the executive or any other committee of that board or any group of directors of the Corporation duly authorized to make a decision on the matter in question.

(7)    "Board Resolution" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Corporation to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification.

(8)    "Business Day", when used with respect to any Place of Payment, means any Monday, Tuesday, Wednesday, Thursday or Friday that is not a day on which banking institutions in that Place of Payment are authorized or obligated by law to close.

(9)    "Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Exchange Act, or if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties on such date.

(10)    "Components", with respect to a composite currency (including but not limited to ECU), means the currency amounts that are components of such composite currency on the Conversion Date.  If after such Conversion Date the official unit of any component currency is altered by way of combination or subdivision, the number of units of such currency shall be divided or multiplied in the same proportion to calculate the Component.  If after such Conversion Date two or more component currencies are consolidated into a single currency, the amounts of those currencies as Components shall be replaced by an amount in such single currency equal to the sum of the amounts of such consolidated component currencies expressed in such single currency, and such amount shall thereafter be a Component.  If after such Conversion Date any component currency shall be divided into two or more currencies, the amount of such currency as a Component shall be replaced by amounts of such two or more currencies, each of which shall be equal to the amount of such former component currency divided by the number of currencies into which such component currency was divided, and such amounts shall thereafter be Components.

(11)    "Consolidated Net Tangible Assets" means the total amount of assets after deducting therefrom (i) all current liabilities, and (ii) all goodwill, tradenames, trademarks, patents, unamortized debt discount and expense and other like intangible assets, all as shown in the audited consolidated balance sheet of the Corporation contained in the Corporation's then most recent quarterly report to shareholders; assets shall include an amount equal to the Attributable Debt in respect of those Financing Leases not capitalized on such balance sheet.

(12)    "Conversion Date", with respect to a composite currency (including but not limited to ECU), has the meaning specified in Section 311(f).

(13)    "Corporate Trust Office" means the principal corporate trust office of the Trustee at which at any particular time its corporate trust business shall be administered.

(14)    "corporation" includes corporations, associations, companies and business trusts.

(15)    "Corporation" means the Person named as the "Corporation" in the first paragraph of this Indenture until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation.

(16)    "Corporation Request" and "Corporation Order" mean, respectively, a written request or order signed in the name of the Corporation by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Corporation, and delivered to the Trustee.

(17)    "coupon" means any interest coupon appertaining to any Bearer Security.

- 2 -

(18) "Debt Securities" means any debentures, notes, bonds or other similar evidences of indebtedness of the Corporation issued under this Indenture and more particularly means any Debt Securities authenticated and delivered under this Indenture, but does not include coupons.

(19) "Defaulted Interest" has the meaning specified in Section 307.

(20) "Depositary" means, with respect to the Debt Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depositary by the Corporation pursuant to Section 301 until a successor Depositary shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depositary" shall mean or include each Person who is then a Depositary hereunder, and if at any time there is more than one such Person, "Depositary" as used with respect to the Debt Securities of any such series shall mean the Depositary with respect to the Debt Securities of that series.

(21) "Dollar" or "$" means the currency of the United States of America as at the time of payment is legal tender for the payment of public and private debts.

(22) "ECU" means the European Currency Unit as defined and revised from time to time by the Council of the European Communities.

(23) "European Communities" means the European Economic Community, the European Coal and Steel Community and the European Atomic Energy Community.

(24) "Event of Default" has the meaning specified in Section 501.

(25) "Exchange Act" means the Securities Exchange Act of 1934, as amended.

(26) "Exchange Rate" means: (i) with respect to a currency (other than a composite currency) in which payment is to be made on Debt Securities denominated in a composite currency, the exchange rate between such composite currency and such currency reported by the agency or organization, if any, designated pursuant to Section 301(b)(13) or by the Council of the European Communities (in the case of ECU, whose reports are currently based on the rates in effect at 2:30 P.M., Brussels time, on the relevant exchange markets), as appropriate, or if such exchange rate is not or ceases to be so reported, then such exchange rate as shall be determined by the Trustee using quotations from one or more major banks in The City of New York or such other quotations as the Trustee shall deem appropriate, such banks being satisfactory to the Corporation, on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an instalment of principal or interest, as the case may be; (ii) with respect to payments in Dollars to be made on Debt Securities denominated in a Foreign Currency, the noon buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an instalment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; (iii) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in Dollars or converted into Dollars pursuant to Section 311(f), the noon Dollar buying rate for that currency for wire transfers quoted in The City of New York on the Regular or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an instalment of principal, as the case may be, as certified for customs purposes by the Federal Reserve Bank of New York; and (iv) with respect to payments in a Foreign Currency to be made on Debt Securities denominated in a different Foreign Currency, the exchange rate between such Foreign Currencies determined in the manner specified pursuant to Section 301(b)(16). Except in the situation contemplated in (i) above, if for any reason such rates are not available with respect to one or more currencies for which an Exchange Rate is required, the Trustee shall use such quotation of the Federal Reserve Bank of New York as of the most recent available date, or quotations from one or more major banks in The City of New York or in the country of issue of the currency in question, or such other quotations as the Trustee shall deem appropriate,

such banks being satisfactory to the Corporation. Unless otherwise specified by the Trustee, if there is more than one market for dealing in any currency by reason of foreign exchange regulations or otherwise, the market to be used in respect of such currency shall be that upon which a non-resident issuer of securities designated in such currency would purchase such currency in order to make payments in respect of such securities.

(27)    "Exchange Rate Officer's Certificate", with respect to any date for the payment of principal of (and premium, if any) and interest on any series of Debt Securities, means a certificate setting forth the applicable Exchange Rate or Rates as of the Regular or Special Record Date with respect to such Interest Payment Date, date for payment of Defaulted Interest or the fifteenth day immediately preceding the maturity of an instalment of principal, as the case may be, and the amounts payable in Dollars and Foreign Currencies in respect of the principal of (and premium, if any) and interest on Debt Securities denominated in ECU, any other composite currency or any Foreign Currency, and signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Corporation, and delivered to the Trustee.

(28)    "Financing Leases" means sale and leaseback transactions, except for: (i) temporary leases for a term, including any renewal thereof, of not more than three years; (ii) leases between the Corporation and any Restricted Subsidiary, between any Restricted Subsidiary and the Corporation or between Restricted Subsidiaries; and (iii) leases for properties executed within one year of the latest of acquisition, completion of construction and commencement of commercial operation thereof.

(29)    "Foreign Currency" means a currency issued by the government of any country other than the United States of America.

(30)    "Funded Debt" means any indebtedness for borrowed money, whether of the Corporation or of a third person.

(31)    "Global Security" means a Registered or Bearer Security evidencing all or part of a series of Debt Securities, issued to the Depositary for such series in accordance with Section 303 and bearing the legend prescribed in Section 303(c).

(32)    "Holder", with respect to a Registered Security, means the Person in whose name such Registered Security is registered in the Security Register and, with respect to a Bearer Security or a coupon, means the bearer thereof.

(33)    "Indenture" means this instrument as originally executed or as it may from time to time be supplemented, amended or restated by or pursuant to one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof and, unless the context otherwise requires, shall include the terms of a particular series of Debt Securities established as contemplated by Section 301.

(34)    "interest", when used with respect to an Original Issue Discount Security that by its terms bears stated interest only after Maturity, refers to interest payable after Maturity.

(35)    "Interest Payment Date", with respect to any Debt Security, means the Stated Maturity Date of an instalment of interest on such Debt Security.

(36)    "Maturity", when used with respect to any Debt Security, means the date on which the principal of such Debt Security becomes due and payable as therein or herein provided, whether at the Stated Maturity Date or by declaration of acceleration, call for redemption, repayment at the option of the Holder or otherwise.

(37)    "Mortgage" means and includes any mortgage, hypothec, pledge, lien, security interest, privilege, floating charge, conditional sale or other title retention agreement or other similar encumbrance securing indebtedness for borrowed money.

-4-

(38)    "Officers' Certificate" means a certificate signed by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, the Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Corporation, and delivered to the Trustee.

(39)    "Opinion of Counsel" means a written opinion of counsel, who may be counsel to the Corporation.

(40)    "Original Issue Discount Security" means any Debt Security that is issued with "original issue discount" within the meaning of Section 1273(a) of the United States Internal Revenue Code of 1986 and the regulations thereunder and any other Debt Security designated by the Corporation as issued with original issue discount for United States federal income tax purposes.

(41)    "Outstanding" when used with respect to Debt Securities means, as of the date of determination, all Debt Securities theretofore authenticated and delivered under this Indenture, *except*:

    (i)    Debt Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

    (ii)    Debt Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Trustee or any Paying Agent (other than the Corporation) in trust or set aside and segregated in trust by the Corporation (if the Corporation shall act as its own Paying Agent) for the Holders of such Debt Securities and any coupons appertaining thereto; *provided, however,* that if such Debt Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Indenture or provision therefor satisfactory to the Trustee has been made; and

    (iii)    Debt Securities that have been paid pursuant to Section 306 or in exchange for or in lieu of which other Debt Securities have been authenticated and delivered pursuant to this Indenture, other than any such Debt Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it that such Debt Securities are held by a bona fide purchaser in whose hands such Debt Securities are valid obligations of the Corporation; *provided, however,* that in determining whether the Holders of the requisite principal amount of Outstanding Debt Securities have taken any Act hereunder, Debt Securities owned by the Corporation or any other obligor upon the Debt Securities or any Affiliate of the Corporation or of such other obligor shall be disregarded and deemed not to be Outstanding; *provided further* that, in determining whether the Trustee shall be protected in relying upon such Act, only Debt Securities that the Trustee knows to be so owned shall be so disregarded; and *provided further* that Debt Securities so owned that have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right to act with respect to such Debt Securities and that the pledgee is not the Corporation or any other obligor upon the Debt Securities or any Affiliate of the Corporation or of such other obligor.

(42)    "Paying Agent" means any Person authorized by the Corporation to pay the principal of (and premium, if any) or interest on any Debt Securities or coupons on behalf of the Corporation.

(43)    "Person" means any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government or any agency or political subdivision thereof.

(44)    "Place of Payment" means:  (i) when used with respect to the Registered Securities of any series payable in Dollars, the Corporate Trust Office of the Trustee in the Borough of Manhattan, The City and State of New York; and, (ii) when used with respect to the Debt Securities of any series, the other place or places, if any, where the principal of (and premium, if any) and interest on the Debt Securities of that series are payable as specified as contemplated by Section 301.

(45)    "Predecessor Security" of any particular Debt Security means every previous Debt Security evidencing all or a portion of the same debt as that evidenced by such particular Debt Security; and, for the purposes of this definition, any Debt Security authenticated and delivered under Section 306 in lieu of a lost, destroyed or stolen Debt Security shall be deemed to evidence the same debt as the lost, destroyed or stolen Debt Security.

(46)    "Purchase Money Mortgage" means a mortgage on property existing at the time of acquisition thereof by the Corporation or a Restricted Subsidiary; any mortgage on any property acquired, constructed or improved by the Corporation or a Restricted Subsidiary incurred after the date of the issue of the Debt Securities which is created or assumed contemporaneously with, or within 180 days after, such acquisition, or completion of such construction or improvement, to secure or provide for the payment of the purchase price thereof or the cost of construction or improvement thereon incurred after the date of issuance of the Debt Securities (including the cost of any underlying real property); *provided, however*, that in the case of any such acquisition, construction or improvement, the Mortgage shall not apply to any property previously owned by the Corporation or a Restricted Subsidiary, other than, in the case of any such construction or improvement, any real property, theretofore substantially unimproved for the purposes of the Corporation or a Restricted Subsidiary, on which the property so constructed, or the improvement, is located and other than any machinery or equipment installed at any time so as to constitute immovable property or a fixture on the real property on which the property so constructed, or the improvement, is located.

(47)    "Redemption Date", when used with respect to any Debt Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

(48)    "Redemption Price", when used with respect to any Debt Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

(49)    "Registered Security" means any Debt Security in the form of registered securities established pursuant to Section 202 that is registered in the Security Register.

(50)    "Regular Record Date" for the interest payable on any Interest Payment Date on the Registered Securities of any series means the date specified for that purpose as contemplated by Section 301.

(51)    "Responsible Officer" when used with respect to the Trustee means the chairman or vice-chairman of the board of directors, the chairman or any vice-chairman of the executive committee of the board of directors, the trust committee, the president, any vice-president (whether or not designated by a number or word or words added before or after the title "vice-president"), the secretary, any assistant secretary, the treasurer, any assistant treasurer, the cashier, any assistant cashier, any trust officer or assistant trust officer, the controller or any assistant controller or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers and also means, with respect to a particular corporate trust matter, any other officer to whom such matter is referred because of his knowledge of and familiarity with the particular subject.

(52)    "Restricted Subsidiary" means Northern Telecom Inc., a Subsidiary.

(53)    "Security Register" and "Security Registrar" have the respective meanings specified in Section 305.

(54)    "Special Record Date" for the payment of any Defaulted Interest means a date fixed by the Trustee pursuant to Section 307.

(55)    "Stated Maturity Date", when used with respect to any Debt Security or any instalment of interest thereon, means the date specified in such Debt Security or a coupon representing such instalment of interest as the fixed date on which the principal of such Debt Security or such instalment of interest is due and payable.

(56)    "Subsidiary" means a corporation, a majority of the outstanding voting shares of which are owned, directly or indirectly, by the Corporation or by one or more other Subsidiaries, or by the Corporation and one or more other Subsidiaries. For the purposes of this definition, "voting shares" means shares having voting power for the election of directors, whether at all times or only so long as no other shares have such voting power by reason of any contingency.

(57)   "Trust Indenture Act" means the Trust Indenture Act of 1939 as in force at the date as of which this indenture was executed, except as provided in Sections 609, 703 and 905.

(58)   "Trustee" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such pursuant to the applicable provisions hereof, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Debt Securities of any series shall mean the Trustee with respect to Debt Securities of that series.

SECTION 102.   *Compliance Certificates and Opinions.*

(a)   Upon any application or request by the Corporation to the Trustee to take any action under any provision of this Indenture, the Corporation shall furnish to the Trustee an Officers' Certificate and Opinion of Counsel stating that all conditions precedent, if any, provided for in this Indenture related to the proposed action have been complied with except that in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture related to such particular application or request, no additional certificate or opinion need be furnished.

(b)   Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:  (1) a statement that each individual signing such certificate or opinion has read such covenant or condition and the definitions herein related thereto; (2) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based; (3) a statement that, in the opinion of each such individual, he has made such examination or investigation as is reasonably necessary to enable him to express an informed opinion whether or not such covenant or condition has been complied with; and (4)  a statement whether, in the opinion of each such individual, such condition or covenant has been complied with.

SECTION 103.  *Form of Documents Delivered to Trustee.*

(a)   In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

(b)   Any certificate or opinion of an officer of the Corporation may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such certificate or opinion is based is erroneous. Any such certificate or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Corporation stating that the information with respect to such factual matters is in the possession of the Corporation, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters is erroneous.

(c)   Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

SECTION 104.   *Acts of Holders.*

(a)   Any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing. If Debt Securities of a series are issuable in whole or in part as Bearer Securities, any request, demand, authorization,

direction, notice, consent, waiver or other action provided by this Indenture to be given or taken by Holders may, alternatively, be embodied in and evidenced by the record of Holders of Debt Securities voting in favor thereof, either in person or by proxies duly appointed in writing, at any meeting of Holders of Debt Securities duly called and held in accordance with the provisions of Article Fourteen, or a combination of such instruments and any such record. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments are delivered to the Trustee and, where it is hereby expressly required, to the Corporation. Such instrument or instruments (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments. Proof of execution of any such instrument or of a writing appointing any such agent shall be sufficient for any purpose of this Indenture and, subject to Section 601, conclusive in favor of the Trustee and the Corporation, if made in the manner provided in this Section. The record of any meeting of Holders of Debt Securities shall be proved in the manner provided in Section 1406.

(b)       The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgements of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof. Where such execution is by a signer acting in a capacity, other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority. The fact and date of the execution of any such instrument or writing, or the authority of the Person executing the same, may also be proved in any manner that the Trustee deems sufficient.

(c)       The ownership of Registered Securities shall be proved by the Security Register.

(d)       The principal amount and serial numbers of Bearer Securities held by any Person, and the date of holding the same, may be proved by the production of such Bearer Securities or by a certificate executed, as depositary, by any trust company, bank, banker or other depositary, wherever situated, if such certificate shall be deemed by the Trustee to be satisfactory, showing that at the date therein mentioned such Person had on deposit with such depositary, or exhibited to it, the Bearer Securities in the amount and with the serial numbers therein described; or such facts may be proved by the certificate of affidavit of the Person holding such Bearer Securities, if such certificate or affidavit is deemed by the Trustee to be satisfactory. The Trustee and the Corporation may assume that such ownership of any Bearer Security continues until: (1) another certificate or affidavit bearing a later date issued in respect of the same Bearer Security is produced; (2) such Bearer Security is produced to the Trustee by some other Person; (3) such Bearer Security is surrendered in exchange for a Registered Security; or (4) such Bearer Security is no longer Outstanding.

(e)       The fact and date of execution of any such instrument or writing, the authority of the Person executing the same and the principal amount and serial numbers of Bearer Securities held by the Person so executing such instrument or writing and the date of holding the same may also be proved in any other manner that the Trustee deems sufficient; and the Trustee may in any instance require further proof with respect to any of the matters referred to in this Section.

(f)       If the Corporation shall solicit from the Holders of Debt Securities of any series any Act, the Corporation may, at its option, by Board Resolution, fix in advance a record date for the determination of Holders of Registered Securities entitled to take such Act, but the Corporation shall have no obligation to do so. Any such record date shall be fixed at the Corporation's discretion. If such a record date is fixed, such Act may be sought or taken before or after the record date, but only the Holders of Registered Securities of record at the close of business on such record date shall be deemed to be Holders of Registered Securities for the purpose of determining whether Holders of the requisite proportion of Debt Securities of such series Outstanding have authorized or agreed or consented to such Act, and for that purpose the Registered Securities of such series Outstanding shall be computed as of such record date.

(g)       Any Act of the Holder of any Debt Security shall bind every future holder of the same Debt Security and the Holder of every Debt Security issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, suffered or omitted by the Trustee or the Corporation in reliance thereon, whether or not notation of such action is made upon such Debt Security.

- 8 -

(h)    For purposes of determining the principal amount of Outstanding Debt Securities of any series the Holders of which are required, requested or permitted to take any Act under this Indenture: (1) each Original Issue Discount Security shall be deemed to have an amount outstanding determined by the Trustee that could be declared to be due and payable pursuant to the terms of such Original Issue Discount Security as of the date such Act is delivered to the Trustee and, where it is hereby expressly required, to the Corporation; and (2) each Debt Security denominated in a Foreign Currency or composite currency shall be deemed to have an amount outstanding determined by the Trustee by converting the principal amount of such Debt Security in the currency in which such Debt Security is denominated into Dollars at the Exchange Rate as of the date such Act is delivered to the Trustee and, where it is hereby expressly required, to the Corporation (or, if there is no such rate on such date for the reasons specified in Section 311(d), such rate on the date specified in such Section).

SECTION 105.   *Notices, etc., to Trustee and Corporation.*

Any Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with:

(1)    the Trustee by any Holder or by the Corporation shall be sufficient for every purpose hereunder if made, given, furnished or filed in writing to or with the Trustee at its Corporate Trust Office, Attention: Corporate Trust Department; or

(2)    the Corporation by the Trustee or by any Holder shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and mailed, first-class postage prepaid, to the Corporation addressed to it at the address of its executive office specified in the first paragraph of this Indenture or at any other address previously furnished in writing to the Trustee by the Corporation.

SECTION 106.   *Notice to Holders; Waiver.*

(a)    Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of any event: (1) such notice shall be sufficiently given to Holders of Registered Securities if in writing and mailed, first-class postage prepaid, to each Holder of a Registered Security affected by such event, at his address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for the giving of such notice; and (2) such notice shall be sufficiently given to Holders of Bearer Securities if published in an Authorized Newspaper in The City of New York and, if the Debt Securities of such series are then listed on any stock exchange outside the United States and such stock exchange shall so require, in any other required city outside the United States or, if not practicable, in Europe on a Business Day at least twice, the first such publication to be not earlier than the earliest date and not later than the latest date prescribed for the giving of such notice.

(b)    If the regular mail service is suspended or for any other reason it shall be impracticable to give notice to Holders of Registered Securities by mail, then such notification to holders of Registered Securities as shall be made with the approval of the Trustee shall constitute sufficient notification for every purpose hereunder. In any case where notice to Holders of Registered Securities is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder of a Registered Security shall affect the sufficiency of such notice with respect to other Holders of Registered Securities or the sufficiency of any notice by publication to Holders of Bearer Securities given as provided above.

(c)    If publication of any Authorized Newspaper or Authorized Newspapers is suspended or it shall be impracticable to publish any notice to Holders of Bearer Securities as provided above, then such notification to Holders of Bearer Securities, as shall be given with the approval of the Trustee, shall constitute sufficient notice to such Holders for every purpose hereunder. Neither failure to give notice by publication to Holders of Bearer Securities as provided above, nor any defect in any notice so published, shall affect the sufficiency of any notice mailed to Holders of Registered Securities as provided above.

- 9 -

(d)     Where this Indenture provides for notice in any manner, such notice may be waived in writing by the Person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

(e)     Any Act required or permitted under this Indenture shall be in the English language, except that any published notice may also be in an official language of the country of publication.

SECTION 107.   *Incorporation by Reference of Trust Indenture Act and Conflict with Such Act.*

(a)     This Indenture shall be governed by the Trust Indenture Act, and whenever this Indenture refers to a provision of the Trust Indenture Act, the provision is incorporated by reference in and made a part of this Indenture. All other capitalized terms used in this Indenture that are defined by the Trust Indenture Act, defined by the Trust Indenture Act by reference to another statute or defined by Commission rule under the Trust Indenture Act have the meanings assigned to them therein.

(b)     If any provision hereof limits, qualifies or conflicts with another provision hereof which is required to be included in this Indenture by any of the provisions of the Trust Indenture Act, such required provision shall control.

SECTION 108.   *Effect of Headings and Table of Contents.*

The Article and Section headings herein and the Table of Contents are for convenience only and shall not affect the construction hereof.

SECTION 109.   *Successors and Assigns.*

All covenants and agreements in this Indenture by the Corporation shall bind its successors and assigns, whether expressed or not.

SECTION 110.   *Separability Clause.*

If any provision in this Indenture or in the Debt Securities or coupons shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

SECTION 111.   *Benefits of Indenture.*

Nothing in this Indenture or in the Debt Securities or coupons, express or implied, shall give to any Person, other than the parties hereto and their successors hereunder, any Paying Agent and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

SECTION 112.   *Governing Law.*

This Indenture and the Debt Securities and coupons shall be governed by and construed in accordance with the laws of the State of New York.

SECTION 113.   *Legal Holidays.*

If any Interest Payment Date, Redemption Date or Stated Maturity Date of any Debt Security shall not be a Business Day at any Place of Payment, then (notwithstanding any other provision of this Indenture or of the Debt Securities or coupons) payment of interest or principal (and premium, if any) need not be made at such Place of Payment on such date, but may be made on the next succeeding Business Day at such Place of Payment with the same force and effect as if made on the Interest Payment Date, Redemption Date, or Stated Maturity

Date, and no interest shall accrue on such payment for the period from and after such Interest Payment Date, Redemption Date or Stated Maturity Date, as the case may be.

## ARTICLE TWO

### DEBT SECURITY FORMS

SECTION 201.  *Forms Generally.*

(a)    All Debt Securities and coupons, if any, and the Trustee's certificate of authentication shall have such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture or by a Board Resolution and as set forth in an Officers' Certificate or any indenture supplemental hereto and may have such letters, numbers or other marks of identification or designation and such legends or endorsements placed thereon as the Corporation may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange on which any of the Debt Securities may be listed, or to conform to usage.

(b)    The definitive Debt Securities and coupons, if any, shall be printed, lithographed or engraved or produced by any combination of these methods on steel engraved borders or may be produced in any other manner; *provided* that such manner is permitted by the rules of any securities exchange on which the Debt Securities may be listed or of any automated quotation system on which such series may be quoted, all as determined by the officers executing such Debt Securities and coupons, as conclusively evidenced by their execution of such Debt Securities and coupons.

SECTION 202.  *Forms of Debt Securities.*

(a)    Each Debt Security shall be in one of the forms approved by the officers executing such Debt Securities and coupons, as conclusively evidenced by their execution of such Debt Securities and coupons having those terms approved by or pursuant to a Board of Resolution and set forth in an Officers' Certificate or one or more indentures supplemental hereto which shall set forth the information required by Section 301.  Unless otherwise provided as contemplated by Section 301 with respect to any series of Debt Securities, the Debt Securities of each series shall be sold only for Dollars and issuable in registered form without coupons.  If so provided as contemplated by Section 301, the Debt Securities of a series shall be issuable: (1) in bearer form, with interest coupons attached; (2) in registered form; or (3) in the form of one or more Global Securities in whole or in part.

(b)    Each Bearer Security and coupon shall bear a legend substantially to the following effect:  "Any United States Person who holds this obligation will be subject to limitations under the United States income tax laws, including the limitations provided in Sections 165(j) and 1287(a) of the Internal Revenue Code."

- 11 -

SECTION 203.  *Form of Trustee's Certificate of Authentication.*

The form of the Trustee's certificate of authentication to be borne by the Debt Securities shall be substantially as follows:

TRUSTEE'S CERTIFICATE OF AUTHENTICATION

This is one of the Debt Securities issued under the within-mentioned Indenture.

[Name of Trustee]

*as Trustee*

By..........................................................................................................

*Authorized Officer*

ARTICLE THREE

THE DEBT SECURITIES

SECTION 301.  *Amount Unlimited; Issuable in Series.*

(a)    The aggregate principal amount of Debt Securities that may be authenticated and delivered under this Indenture is unlimited.

(b)    The Debt Securities may be issued in one or more series. There shall be established in or pursuant to a Board Resolution and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Debt Securities of any series:

(1)    the title of the Debt Securities of the series (which shall distinguish the Debt Securities of the series from all other Debt Securities);

(2)    the limit, if any, upon the aggregate principal amount of the Debt Securities of the series that may be authenticated and delivered under this Indenture (except for Debt Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Debt Securities of the series pursuant to Section 304, 305, 306, 906 or 1107);

(3)    the date or dates on which the principal of the Debt Securities of the series is payable;

(4)    the rate or rates or the method of determination thereof at which the Debt Securities of the series shall bear interest, if any, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable, and, in the case of Registered Securities, the Regular Record Dates for the interest payable on such Interest Payment Dates;

(5)    the place or places where the principal of (and premium, if any) and interest on Debt Securities of the series shall be payable;

(6)    the period or periods within which or the date or dates on which, if any, the price or prices at which and the terms and conditions upon which Debt Securities of the series may be repurchased or redeemed, in whole or in part, at the option of the Corporation;

(7)    the obligation, if any, of the Corporation to redeem, repay or purchase Debt Securities of the series either pursuant to any sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which

- 12 -

Debt Securities of the series shall be redeemed, repaid or purchased, in whole or in part, pursuant to such obligation;

(8)   whether Bearer Securities of the series are to be issuable and, if so, whether Registered Securities of the series are also to be issuable (see Section 202);

(9)   if any Debt Securities of the series are to be issued as Bearer Securities or as one or more Global Securities representing individual Bearer Securities of the series: (i) whether the provisions for payment of additional interest on tax redemptions shall apply and, if other provisions shall apply, such other provisions; (ii) circumstances in which interest in respect of any portion of a temporary Bearer Security of the series (delivered pursuant to Section 304) payable in respect of any Interest Payment Date prior to the exchange of such temporary Security for definitive Bearer Securities of the series shall be paid to any clearing organization with respect to the portion of such temporary Bearer Security held for its account and, in such event, the terms and conditions (including any certification requirements) upon which any such interest payment received by a clearing organization may be collected by the Persons entitled to interest payable on such Interest Payment Date; and (iii) the terms upon which a temporary Bearer Security may be exchanged for one or more definitive Debt Securities of the series;

(10)   whether the Debt Securities of the series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depositary for such Global Security or Securities and the terms and conditions, if any, upon which interests in such Global Security or Securities may be exchanged in whole or in part for the individual Debt Securities represented thereby;

(11)   the denominations in which Registered Securities and/or Bearer Securities of the series shall be issuable;

(12)   if other than the principal amount thereof, the portion of the principal amount of Debt Securities of the series that shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 501;

(13)   the currency or currencies of denominations of the Debt Securities of any series, which may be in Dollars, any Foreign Currency or any composite currency, including but not limited to ECU, and, if any such currency of denomination is a composite currency other than ECU, the agency or organization, if any, responsible for overseeing such composite currency;

(14)   the currency or currencies in which payment of the principal of (and premium, if any) and interest on the Debt Securities of the series will be made, and the currency or currencies, if any, in which payment of the principal of (and premium, if any) or the interest on Registered Securities of the series, at the election of each of the Holders thereof, may also be payable;

(15)   if the amount of payments of principal of (and premium, if any) or interest on the Debt Securities of the series may be determined with reference to an index based on a currency or currencies other than that in which the Debt Securities of the series are denominated or designated to be payable, the manner in which such amounts shall be determined;

(16)   if the payments of principal of (and premium, if any) or the interest on the Debt Securities of the series are to be made in a Foreign Currency, other than the Foreign Currency in which such Debt Securities are denominated, the manner in which the Exchange Rate with respect to such payments shall be determined;

(17)   the terms, if any, upon which the Debt Securities of the series will be defeasable; and

(18)   any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

- 13 -

(c)    All Debt Securities of any one series and the coupons appertaining to Bearer Securities of such series, if any, shall be substantially identical except as to denomination and except as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in such indenture or indentures supplemental hereto.

(d)    If any of the terms of a series of Debt Securities are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or an Assistant Secretary of the Corporation and delivered to the Trustee at or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

(e)    Debt Securities of any series which are repayable at the option of the Holders shall be repaid in accordance with the terms of the Debt Securities of such series.

SECTION 302.    *Denominations.*

Unless otherwise provided as contemplated by Section 301 with respect to any series of Debt Securities and except as provided in Section 303, Registered Securities will be issued in denominations, unless otherwise specified by the Corporation, of integral multiples of $1,000; and Bearer Securities will be issued in denominations specified by the Corporation.

SECTION 303.    *Execution, Authentication, Delivery and Dating.*

(a)    The Debt Securities or coupons shall be executed on behalf of the Corporation by any two of the Chairman of the Board, the President or any Vice-President or any one of the aforesaid officers together with any one of the Secretary, Controller, the Treasurer, any Assistant Secretary or any Assistant Treasurer of the Corporation. The Debt Securities may but need not be under the corporate seal of the Corporation or a reproduction thereof (which reproduction shall for such purposes be deemed to be the corporate seal of the Corporation). The signature of any of these officers on the Debt Securities or coupons may be manual or facsimile. Debt Securities and coupons bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Corporation shall bind the Corporation, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Debt Securities or coupons.

(b)    At any time and from time to time after the execution and delivery of this Indenture, the Corporation may deliver Debt Securities of any series, with appropriate coupons, if any, executed by the Corporation to the Trustee for authentication, together with a Corporation Order for the authentication and delivery of such Debt Securities; whereupon the Trustee, in accordance with the Corporation Order shall authenticate and deliver such Debt Securities and coupons; *provided, however,* that in connection with its original issuance, a Bearer Security may be delivered only outside the United States. The Trustee shall be entitled to receive, prior to the authentication and delivery of such Debt Securities, the supplemental indenture or the Board Resolution by or pursuant to which the terms of such Debt Securities have been approved, an Officers' Certificate as to the absence of any event that is, or after notice or lapse of time or both would become, an Event of Default, and an Opinion of Counsel to the effect that:

(1)    all instruments furnished by the Corporation to the Trustee in connection with the authentication and delivery of such Debt Securities and coupons, if any, conform to the requirements of this Indenture and constitute sufficient authority hereunder for the Trustee to authenticate and deliver such Debt Securities and coupons;

(2)    the forms of such Debt Securities and coupons, if any, have been established in conformity with the provisions of this Indenture;

(3)    the terms of such Debt Securities and coupons, if any, have been established in conformity with the provisions of this Indenture;

(4)    in the event that the forms or terms of such Debt Securities and coupons, if any, have been established in a supplemental indenture, the execution and delivery of such supplemental indenture have been duly authorized by all necessary corporate action of the Corporation, such supplemental indenture has been duly executed and delivered by the Corporation and, assuming due authorization, execution and delivery by the Trustee, is a valid and binding obligation enforceable against the Corporation in accordance with its terms, subject to enforceability being limited by bankruptcy, insolvency, or other laws affecting the enforcement of creditors' rights generally, and equitable remedies, including the remedies of specific performance and injunction, being granted only in the discretion of a court of competent jurisdiction;

(5)    the execution and delivery of such Debt Securities and coupons, if any, have been duly authorized by all necessary corporate action of the Corporation and such Debt Securities and coupons, if any, have been duly executed by the Corporation and, assuming due authentication by the Trustee and delivery by the Corporation, are valid and binding obligations of the Corporation enforceable against the Corporation in accordance with their terms, entitled to the benefit of the Indenture, subject to enforceability being limited by bankruptcy, insolvency, or other laws affecting the enforcement of creditors' rights generally, and equitable remedies, including the remedies of specific performance and injunction, being granted only in the discretion of a court of competent jurisdiction;

(6)    the amount of Outstanding Debt Securities of such series, together with the amount of such Debt Securities, does not exceed any limit established under the terms of this Indenture on the amount of Debt Securities of such series that may be authenticated and delivered; and

(7)    such other matters as the Trustee may reasonably request.

(c)    If the Corporation shall establish pursuant to Section 301 that the Debt Securities of a series are to be issued in whole or in part in the form of one or more Global Securities, then the Corporation shall execute and the Trustee shall authenticate and deliver one or more Global Securities that shall: (1) represent an aggregate amount equal to the aggregate principal amount of the Outstanding Debt Securities of such series to be represented by one or more Global Securities; (2) be registered, if in registered form, in the name of the Depositary for such Global Security or Securities or the nominee of such Depositary; (3) be delivered by the Trustee to such Depositary or pursuant to such Depositary's instruction; and (4) bear a legend substantially to the following effect: "Unless and until it is exchanged in whole or in part for the individual Debt Securities represented hereby, this Global Security may not be transferred except as a whole by the Depositary to a nominee of the Depositary or by a nominee of the Depositary to the Depositary or another nominee of the Depositary or by the Depositary or any such nominee to a successor Depositary or a nominee of such Successor Depositary."

(d)    Each Depositary designated pursuant to Section 301 for a Global Security in registered form must, at the time of its designation and at all times while it serves as such Depositary, be a clearing agency registered under the Exchange Act and any other applicable statute or regulation.

(e)    The Trustee shall not be required to authenticate any Debt Securities if the issuance of such Debt Securities pursuant to this Indenture will adversely affect the Trustee's own rights, duties or immunities under this Indenture.

(f)    Each Debt Security shall be dated the date of its authentication, except as otherwise provided pursuant to Section 301 with respect to Debt Securities of such series.

(g)    No Debt Security or coupon appertaining thereto shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Debt Security a certificate of authentication substantially in one of the forms provided for herein duly executed by the Trustee by manual signature of one of its authorized officers, and such certificate upon any Debt Security shall be conclusive evidence, and the only evidence, that such Debt Security (and any coupons appertaining thereto) has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Except as permitted by

- 15 -

Section 306 or 307, the Trustee shall not authenticate and deliver any Bearer Security unless all appurtenant coupons then matured have been detached and cancelled.

SECTION 304.   *Temporary Debt Securities.*

(a)   Pending the preparation of definitive Debt Securities of any series, the Corporation may execute, and upon receipt of a Corporation Order the Trustee shall authenticate and deliver, temporary Debt Securities that are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Debt Securities in lieu of which they are issued, in registered form or, if authorized, in bearer form with one or more coupons or without coupons, and with such appropriate insertions, omissions, substitutions and other variations as the officers executing such Debt Securities and coupons may determine, as conclusively evidenced by their execution of such Debt Securities and coupons. Any such temporary Debt Securities may be in global form, representing all or a portion of the Outstanding Debt Securities of such series. Every such temporary Debt Security shall be executed by the Corporation and shall be authenticated and delivered by the Trustee upon the same terms and conditions and in substantially the same manner, and with the same effect, as the definitive Debt Securities in lieu of which it is issued.

(b)   If temporary Debt Securities of any series are issued, the Corporation will cause definitive Debt Securities of such series to be prepared without unreasonable delay. Except as otherwise specified by Section 301(b)(9)(iii) with respect to a series of Debt Securities issuable as Bearer Securities, and except as provided in Section 305 in connection with a transfer and except that a Person receiving individual Bearer Securities shall bear the cost of insurance, postage, transportation and the like, unless otherwise specified pursuant to Section 301, after the preparation of definitive Debt Securities of such series, the temporary Debt Securities of such series shall be exchangeable for definitive Debt Securities of such series upon surrender of the temporary Debt Securities of such series at the office or agency of the Corporation in a Place of Payment for such series without charge to the Holder. Upon surrender for cancellation of any one or more temporary Debt Securities of any series (accompanied by any unmatured coupons appertaining thereto), the Corporation shall execute and the Trustee shall authenticate and deliver in exchange therefor a like principal amount of definitive Debt Securities of the same series of authorized denominations and of like tenor; *provided, however,* that no definitive Bearer Security shall be delivered in exchange for a temporary Registered Security; and *provided further* that delivery of a Bearer Security shall occur only outside the United States. Until so exchanged, temporary Debt Securities of any series shall in all respects be entitled to the same benefits under this Indenture as individual Debt Securities of such series, except as otherwise specified as contemplated by Section 301 with respect to the payment of interest on Global Securities in temporary form.

(c)   Unless otherwise specified pursuant to Section 301, the Corporation will execute and deliver each definitive Bearer Security to the Trustee at its principal office in London, England, or such other place outside the United States specified pursuant to Section 301.

(d)   Upon any exchange of a portion of a temporary Global Security for a definitive Global Security or for the individual Debt Securities represented thereby pursuant to this Section 304 or Section 305, the temporary Global Security shall be endorsed by the Trustee to reflect the reduction of the principal amount evidenced thereby, whereupon the principal amount of such temporary Global Security shall be reduced for all purposes by the amount so exchanged and endorsed.

SECTION 305.   *Registration, Registration of Transfer and Exchange.*

(a)   The Corporation will maintain an office or agency at which shall be kept a register (the "Security Register") which, subject to such reasonable regulations as it may prescribe, shall provide for the registration of Registered Securities and of transfers of Registered Securities. Unless and until otherwise determined by the Corporation, the Trustee shall act as the Corporation's agent as Security Registrar and the Security Register shall be kept at the office or agency of the Trustee in the Borough of Manhattan, The City of New York. Such

Security Register shall be in written form or in any other form capable of being converted into written form within a reasonable period of time. At all reasonable times, the Security Register shall be open for inspection by the Trustee.

(b)      Upon surrender for registration of transfer of any Registered Security of any series at the office or agency of the Corporation maintained for such purpose, the Corporation shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Registered Securities of the same series of any authorized denomination or denominations, of like tenor and aggregate principal amount. Every Registered Security presented or surrendered for registration of transfer or for exchange shall, (if so required by the Corporation, the Security Registrar or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Corporation, the Security Registrar and the Trustee duly executed, by the Holder thereof or his attorney duly authorized in writing. Bearer Securities will be transferable by delivery.

(c)      Notwithstanding any other provision of this Section, unless and until it is exchanged in whole or in part for Debt Securities in definitive form, a Global Security representing all or a portion of the Debt Securities of a series may not be transferred except as a whole by the Depositary for such series to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any such nominee to a successor Depositary for such series or a nominee of such successor Depositary.

(d)      At the option of the Holder, Registered Securities of any series (other than a Global Security, except as set forth below) may be exchanged for other Registered Securities of the same series of any authorized denomination or denominations of a like aggregate principal amount, upon surrender of the Registered Securities to be exchanged at such office or agency. Bearer Securities may not be delivered by the Trustee in exchange for Registered Securities.

(e)      At the option of the Holder, except as otherwise specified as contemplated by Section 301(9)(iii) or 301(10) with respect to a Global Security, Bearer Securities of any series may be exchanged for Registered Securities (if the Debt Securities of such series are issuable as Registered Securities) or Bearer Securities of the same series, of any authorized denomination or denominations, and of like tenor and aggregate principal amount, upon surrender of the Bearer Securities to be exchanged at any such office or agency, with all unmatured coupons and all matured coupons in default thereto appertaining; *provided, however,* that delivery of a Bearer Security shall occur only outside the United States. If the Holder of a Bearer Security is unable to produce any such unmatured coupon or coupons or matured coupon or coupons in default, such exchange may be effected if the Bearer Securities are accompanied by payment in funds acceptable to the Corporation and the Trustee in an amount equal to the face amount of such missing coupon or coupons, or the surrender of such missing coupon or coupons may be waived by the Corporation and the Trustee if there be furnished to them such security or indemnity as they may require to save each of them and any Paying Agent harmless. If thereafter the Holder of such Bearer Security shall surrender to any Paying Agent any such missing coupon in respect of which such a payment shall have been made, such Holder shall be entitled to receive the amount of such payment; *provided, however,* that except as otherwise provided in Section 1002, interest represented by coupons shall be payable only upon presentation and surrender of those coupons at an office or agency located outside the United States. Notwithstanding the foregoing, in case a Bearer Security of any series is surrendered at any such office or agency in exchange for a Registered Security of the same series after the close of business at such office or agency on: (1) any Regular Record Date and before the opening of business at such office or agency on the relevant Interest Payment Date; or (2) any Special Record Date and before the opening of business at such office or agency on the related date for payment of Defaulted Interest, such Bearer Security shall be surrendered without the coupon related to such Interest Payment Date or proposed date of payment, as the case may be. Whenever any Debt Securities are so surrendered for exchange, the Corporation shall execute, and the Trustee shall authenticate and deliver, the Debt Securities that the Holder making the exchange is entitled to receive. Notwithstanding the foregoing, the exchange of Bearer Securities for Registered Securities will be subject to the provisions of United States income tax laws and regulations applicable to Debt Securities in effect at the time of such exchange.

- 17 -

(f)    If at any time the Depositary for the Debt Securities of a series notifies the Corporation that it is unwilling or unable to continue as Depositary for the Debt Securities of such series or if at any time the Depositary for the Debt Securities of such series shall no longer be eligible under Section 303(d), the Corporation shall appoint a successor Depositary with respect to the Debt Securities of such series. If a successor Depositary for the Debt Securities of such series is not appointed by the Corporation within 90 days after the Corporation receives such notice or becomes aware of such ineligibility, the Corporation's election pursuant to Section 301(b)(10) shall no longer be effective with respect to the Debt Securities of such series and the Corporation will execute, and the Trustee, upon receipt of a Corporation Order for the authentication and delivery of individual Debt Securities of such series, will authenticate and deliver, individual Debt Securities of such series in an aggregate principal amount equal to the principal amount of the Global Security or Securities representing Debt Securities of such series in exchange for such Global Security or Securities.

(g)    The Corporation may at any time and in its sole discretion determine that individual Debt Securities of any series issued in the form of one or more Global Securities shall no longer be represented by such Global Security or Securities. In such event the Corporation will execute, and the Trustee, upon receipt of a Corporation Order for the authentication and delivery of individual Debt Securities of such series, will authenticate and deliver, individual Debt Securities of such series in an aggregate principal amount equal to the principal amount of the Global Security or Securities representing Debt Securities of such series in exchange for such Global Security or Securities.

(h)    If specified by the Corporation pursuant to Section 301 with respect to a series of Debt Securities, the Depositary for such series of Debt Securities may surrender a Global Security for such series of Debt Securities in exchange in whole or in part for individual Debt Securities of such series on such terms as are acceptable to the Corporation and such Depositary. Thereupon, the Corporation shall execute, and the Trustee shall authenticate and deliver, without service charge: (1) to each Person specified by such Depositary a new individual Debt Security or Securities of the same series, of any authorized denomination as requested by such Person in aggregate principal amount equal to and in exchange for such Person's beneficial interest in the Global Security; and (2) to such Depositary a new Global Security in a denomination equal to the difference, if any, between the principal amount of the surrendered Global Security and the aggregate principal amount of Debt Securities delivered to Holders thereof.

(i)    In any exchange provided for in Sections 305(f),(g) or (h), the Corporation will execute and the Trustee will authenticate and deliver Debt Securities: (1) in registered form in authorized denominations, if the Debt Securities of such series are issuable as Registered Securities; (2) in bearer form in authorized denominations, with coupons attached, if the Debt Securities of such series are issuable as Bearer Securities; or (3) as either Registered or Bearer Securities, if the Debt Securities of such series are issuable in either form *provided, however,* that individual Bearer Securities shall be delivered in exchange for a Global Security only in accordance with the procedure specified pursuant to Section 301.

(j)    Upon the exchange of a Global Security for individual Debt Securities in definitive form, such Global Security shall be cancelled by the Trustee. Individual Registered Securities exchanged for portions of a Global Security pursuant to this Section shall be registered in such names and in such authorized denominations as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee. The Trustee shall deliver such Registered Securities to the persons in whose names such Debt Securities are so registered. The Trustee shall deliver individual Bearer Securities exchanged for a Global Security pursuant to this Section to the persons, and in such authorized denominations, as the Depositary for such Global Security, pursuant to instructions from its direct or indirect participants or otherwise, shall instruct the Trustee, *provided, however,* that individual Bearer Securities shall be delivered in exchange for a Global Security only in accordance with the procedure specified pursuant to Section 301. Notwithstanding the foregoing, the exchange of Bearer Securities for Registered Securities will be subject to the provisions of the United States income tax laws and regulations applicable to Debt Securities in effect at the time of such exchange.

(k)    All Debt Securities executed for delivery upon any transfer or exchange of Debt Securities shall be valid obligations of the Corporation, evidencing the same debt, and entitled to the same benefits under this

- 18 -