does not deal at arm's length (within the meaning of the Income Tax Act (Canada)) at the time of making such payment, (ii) which is subject to such Taxes by reason of its being connected presently or formerly with any jurisdiction, including Canada or any province or territory thereof, otherwise than by reason of the Holder's purchase of the Debt Securities, the holding of Debt Securities or the receipt of payments in respect of the Debt Securities, (iii) which presents such Debt Security for payment (where presentation is required) more than 30 days after the relevant date (except to the extent that the Holder thereof would have been entitled to such Additional Amounts on presenting a Debt Security for payment on the last day of such 30 day period); for this purpose, the "relevant date" in relation to any payments on any Debt Security means: (A) the due date for payment thereof, or (B) if the full amount of the monies payable on such date has not been received by the Trustee on or prior to such due date, the date on which the full amount of such monies has been so received and notice to that effect has been duly given to Holders of Debt Securities in accordance with this Indenture or (iv) who could lawfully avoid or reduce (but has not so avoided or reduced) such withholding or deduction by complying, or procuring that any third party comply with, any statutory requirements or by making, or procuring that any third party make, a declaration of non-residence, eligibility for treaty benefits or other similar claim for exemption or reduction to any relevant tax authority, the Issuer and such Guarantor, as appropriate; *provided* that in the case of a reduction, the Holder shall be entitled to receive Additional Amounts up to the reduced amount that would have applied had it made the appropriate claim.  The Issuer and the applicable Guarantor will also make such withholding or deduction and remit the full amount deducted or withheld to the relevant authority in accordance with applicable law.  The Issuer will furnish to the Trustee, within 30 days after the date the payment of any Taxes is due pursuant to applicable law, certified copies of tax receipts evidencing that such payment has been made by the Issuer or the applicable Guarantor or other evidence of such payment satisfactory to the Trustee.  If any Holder pays any Taxes or other amounts in respect of payments that the Issuer or Guarantors pay to such Holder, the Issuer and each Guarantor shall indemnify and hold harmless each Holder of Debt Securities (other than an Excluded Holder) and upon written request reimburse each such Holder for the amount of (x) any Taxes so levied or imposed and paid by such Holder as a result of payments made under or with respect to the Debt Securities or the Guarantees, and (y) any Taxes levied or imposed and paid by such Holder with respect to any reimbursement under (x) above, but excluding any such Taxes on such Holder's net income or capital.  A certificate of the Holder (or the Trustee on behalf of the Holder) accompanying the written request and containing reasonable detail as to the amount of Taxes to be reimbursed shall be determinative, absent manifest error, of the amount due from the Issuer and Guarantors to the Holder under this Indemnification.

(b)     At least 30 days prior to each date on which any payment under or with respect to the Debt Securities or the Guarantees is due and payable, if the Issuer or any Guarantor is obligated to pay Additional Amounts with respect to such payment, the Issuer will deliver to the Trustee an Officers' Certificate stating the fact that such Additional Amounts will be payable, the amounts so payable and that the Issuer or such Guarantor, as the case may be, will remit such deduction or withholding to the appropriate tax authority, and will set forth such other information necessary to enable the Trustee to pay such Additional Amounts to Holders of the Debt Securities on the relevant date. All references in this Indenture to the payment of principal of, premium or any other amount, if any, and interest on, any Debt Security or Guarantee shall be deemed to include

[New York #1531721 v17]

48

the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable.

SECTION 314.    *ADDITIONAL INTEREST UNDER REGISTRATION RIGHTS AGREEMENTS.*

Under certain circumstances, the Issuer may be obligated to pay Additional Interest to Holders, all as and to the extent set forth in the Issue Date Registration Rights Agreement or any other Registration Rights Agreement. The terms thereof are hereby incorporated herein by reference and such Additional Interest is deemed to be interest for all purposes of this Indenture.

SECTION 315.    *PERSONS DEEMED OWNERS.*

(a)    Prior to due presentment of a Debt Security for registration of transfer, the Issuer, the Guarantors, the Trustee and any agent of any of the foregoing may treat the Person in whose name such Debt Security is registered as the owner of such Debt Security for the purpose of receiving payment of principal of (and premium, if any) and, subject to Section 312, interest on such Debt Security and for all other purposes whatsoever, whether or not such Debt Security be overdue, and none of the Issuer, the Guarantors, the Trustee or any agent of any of the foregoing shall be affected by notice to the contrary.

(b)    None of the Issuer, the Guarantors, the Trustee, any Paying Agent or the Security Registrar will have any responsibility or liability for any aspect of the records related to or payments made on account of beneficial ownership interests of a Global Security or for maintaining, supervising or reviewing any records related to such beneficial ownership interests.

SECTION 316.    *CANCELLATION.*

Unless otherwise provided, all Debt Securities surrendered for payment, redemption, registration of transfer or exchange shall, if surrendered to any Person other than the Trustee, be delivered to the Trustee and shall be promptly cancelled by it. The Issuer or any Guarantor may deliver to the Trustee for cancellation any Debt Securities previously authenticated and delivered hereunder that the Issuer or such Guarantor may have acquired in any manner whatsoever, and all Debt Securities so delivered shall be promptly cancelled by the Trustee. No Debt Securities shall be authenticated in lieu of or in exchange for any Debt Securities cancelled as provided in this Section, except as expressly permitted by this Indenture. All cancelled Debt Securities held by the Trustee shall be disposed of in accordance with the Trustee's policy of disposal or shall be returned to the Issuer upon Issuer Request; *provided* that the Trustee shall not be required to destroy cancelled Debt Securities.

SECTION 317.    *COMPUTATION OF INTEREST.*

Interest on any series of Debt Securities shall be computed in the manner set forth in the supplemental indenture applicable to such series of Debt Securities.

SECTION 318.    *PAYMENT IN CURRENCIES.*

(a)    Payment of principal of (and premium, if any) and interest on the Debt Securities of any series shall be made in the currency or currencies specified pursuant to Section 301; *provided* that the Holder of a Debt Security of such series may elect to receive such payment in any one of

Dollars or any other currency designated for such purpose pursuant to Section 301. A Holder may make such election by delivering to the Trustee a written notice thereof, substantially in the form attached hereto as Exhibit A or in such other form as may be acceptable to the Trustee, not later than the close of business on the Regular Record Date or Special Record Date immediately preceding the applicable Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be. Such election shall remain in effect with respect to such Holder until such Holder delivers to the Trustee a written notice substantially in the form attached hereto as Exhibit A or in such other form as may be acceptable to the Trustee specifying a change in the currency in which such payment is to be made; *provided* that any such notice must be delivered to the Trustee not later than the close of business on the Regular Record Date or Special Record Date immediately preceding the next Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, in order to be effective for the payment to be made thereon; and *provided further* that no such change in currency may be made with respect to payments to be made on any Debt Security with respect to which notice of redemption has been given by the Issuer pursuant to Article Eleven.

(b)    Except as otherwise specified pursuant to Section 301, the Trustee shall deliver to the Issuer, not later than the eighth Business Day after the Regular Record Date or Special Record Date with respect to an Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, with respect to a series of Debt Securities, a written notice specifying, in the currency or currencies in which the Debt Securities of such series are denominated, the aggregate amount of the principal of (and premium, if any) and interest on such Debt Securities to be paid on such payment date. If payments on any Debt Securities are designated to be made in a currency other than the currency in which such Debt Securities are denominated or if at least one Holder has made the election referred to in paragraph (a) above, then such written notice shall also specify, in each currency in which payment is to be made pursuant to paragraph (a), the amount of principal of (and premium, if any) and interest on such series of Debt Securities to be paid in such currency on such payment date.

(c)    The Issuer shall deliver, not later than the fourth Business Day following each Regular Record Date or Special Record Date or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, to the Trustee an Exchange Rate Officers' Certificate in respect of the Dollar or Foreign Currency payments to be made on such payment date. Except as otherwise specified pursuant to Section 301, the amount receivable by Holders who have elected payment in a currency other than the currency in which such Debt Securities are denominated as provided in paragraph (a) above shall be determined by the Issuer on the basis of the applicable Exchange Rate set forth in the applicable Exchange Rate Officers' Certificate.

(d)    Except as otherwise specified pursuant to Section 301, if the Foreign Currency in which Debt Securities of a series is denominated ceases to be used both by the government of the country that issued such currency and for the settlement of transactions by banks, then with respect to each date for the payment of principal of (and premium, if any) and interest on such Debt Securities occurring after the final date on which the Foreign Currency was so used, all payments with respect to such Debt Securities shall be made in Dollars; *provided* that payment to a Holder of a Debt Security of such series shall be made in a different Foreign Currency if that

[New York#1531721 v17]

50

From:Bank of NY Mellon          12128156802          01/16/2009 14:06          #415 P. 060/102

01/16/2009 14:06    #415 P. 061/102    12128155802    From:Bank of NY Mellon

Holder has elected or elects payment in such Foreign Currency as provided for by paragraph (a) above. If payment is to be made in Dollars to the Holders of any such Debt Securities pursuant to the provisions of the preceding sentence, then the amount to be paid in Dollars on a payment date by the Issuer to the Trustee and by the Trustee or any Paying Agent to Holders shall be determined by the Trustee as of the Regular Record Date or Special Record Date with respect to such Interest Payment Date or date for payment of Defaulted Interest or the fifteenth day immediately preceding the Maturity of an installment of principal, as the case may be, and shall be equal to the sum obtained by converting the specified Foreign Currency into Dollars at the Exchange Rate on the last Record Date on which such Foreign Currency was so used in such capacity.

(e)    All decisions and determinations of the Trustee regarding conversion of Foreign Currency into Dollars pursuant to Sections 318(d) or 301 or the Exchange Rate shall, in the absence of manifest error, be conclusive for all purposes and irrevocably binding upon the Issuer and all Holders of the Debt Securities of the applicable series. If a Foreign Currency in which payment of Debt Securities of a series may be made ceases to be used both by the government of the country which issued such currency and for the settlement of transactions by banks, the Issuer, after learning thereof, will give written notice pursuant to Section 105 thereof to the Trustee immediately (and the Trustee promptly thereafter will give notice to the Holders in the manner provided in Section 106) specifying the last date on which the Foreign Currency was used for the payment of principal of (and premium, if any) or interest on such Debt Securities. The Trustee shall be fully justified, protected and otherwise held harmless in relying and acting upon the information so received by the Issuer and shall not otherwise have any duty or obligation to determine or verify such information independently.

SECTION 319.    *JUDGMENTS.*

Any payment in respect of principal of (and premium, if any) and interest otherwise due on Debt Securities made in Canadian currency by NNC or the Issuer to any Holder of Debt Securities (the "Payee") pursuant to a judgment or order of a court or tribunal in Canada shall constitute a discharge of NNC or the Issuer only to the extent of the amount of Dollars or Foreign Currency payable on such Debt Securities (the "Purchased Amount") that the Payee, on the date of such payment in Canadian currency, would be able to purchase with the amount so paid based on the noon buying rate for Dollars or the Foreign Currency for wire transfers quoted on the date of payment or, if such date if not a Business Day in Toronto, Canada, on the next Business Day in Toronto, Canada. If the amount otherwise due to the Payee (the "Amount Due") is greater or less than the Purchased Amount, NNC or the Issuer, as the case may be, shall indemnify and hold harmless the Payee to the extent that the Amount Due exceeds the Purchased Amount and NNC or the Issuer, as the case may be, may retain the amount, if any, by which the Amount Due is less than the Purchased Amount. This indemnity shall constitute an obligation that is separate and independent from the other obligations contained in this Indenture and shall give rise to a separate and independent cause of action and shall continue in full force and effect notwithstanding any judgment or order for a liquidated sum in respect of amounts due under the Debt Securities or any judgment or order.

01/16/2009  14:06    #415  P.062/102    12128156802    From:Bank of NY Mellon

SECTION 320:    *CUSIP NUMBERS.*

The Issuer in issuing the Debt Securities may use "CUSIP" numbers (if then generally accepted in use), and if so, the Trustee shall use "CUSIP" numbers in notices and redemption as a convenience to Holders; *provided* that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Debt Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Debt Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Issuer will promptly notify the Trustee of any change in the "CUSIP" numbers.

## ARTICLE FOUR

### SATISFACTION AND DISCHARGE

SECTION 401.    *SATISFACTION AND DISCHARGE OF INDENTURE.*

(a)    This Indenture shall upon Issuer Request cease to be of further effect (except as to any surviving rights of registration of transfer or exchange of Debt Securities provided for herein and rights to receive payments of principal of (and premium, if any) and interest thereon) with respect to a series of Debt Securities specified by the Issuer, and the Trustee, at the expense of the Issuer, shall execute proper instruments provided to it acknowledging satisfaction and discharge of this Indenture with respect to the Debt Securities of such series, when:

   (i)    either

      (A)    all Debt Securities of such series theretofore issued by the Issuer and authenticated and delivered hereunder (other than: (1) Debt Securities that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 311; and (2) Debt Securities for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 1003) have been delivered to the Trustee for cancellation; or

      (B)    all Debt Securities of such series issued by the Issuer and authenticated and delivered hereunder and not theretofore delivered to the Trustee for cancellation:

   (1)    have become due and payable;

   (2)    will become due and payable at their Stated Maturity Date within one year; or

   (3)    are to be called for redemption within one year under arrangements satisfactory to the Trustee for the giving of notice by the Trustee in the name, and at the expense, of the Issuer,

and the Issuer, in the case of (B)(1), (B)(2) or (B)(3) above, has irrevocably deposited or caused to be deposited with the Trustee as trust funds in trust an amount sufficient to pay and discharge the entire indebtedness on such Debt Securities for principal (and

[New York #1531721, v17]

From: Bank of NY Mellon    12128155802    01/16/2009 14:07    #415 P.063/102

premium, if any) and interest to the date of such deposit (in the case of Debt Securities that have become due and payable) or to the Stated Maturity Date or Redemption Date, as the case may be;

(ii)    the Issuer or the Guarantors has paid or caused to be paid all other sums payable hereunder by the Issuer or the Guarantors; and

(iii)    the Issuer has delivered to the Trustee an Officers' Certificate and Opinion of Counsel each stating that all conditions precedent herein provided related to the satisfaction and discharge of this Indenture have been complied with.

(b)    Notwithstanding the satisfaction and discharge of this Indenture, the obligations of the Issuer to the Trustee under Section 606 and, if money shall have been deposited with the Trustee pursuant to paragraph (a)(i)(B) of this Section, the obligations of the Trustee under Section 402 and Section 1003(e) shall survive such satisfaction and discharge.

SECTION 402.    *APPLICATION OF TRUST MONEY.*

Subject to the provisions of Section 1003(e) of this Indenture, all money deposited with the Trustee pursuant to Section 401 of this Indenture shall be held in trust and applied by it, in accordance with the provisions of the Debt Securities, the Guarantees and this Indenture, to the payment, either directly or through any Paying Agent (including the Issuer or a Guarantor, acting as its own Paying Agent) as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

## ARTICLE FIVE

### DEFAULTS AND REMEDIES

SECTION 501.    *EVENTS OF DEFAULT AND ENFORCEMENT.*

If and when any one or more of the following events (herein called an "Event of Default") shall happen and be continuing with respect to the Debt Securities of any series, namely:

(1)    the failure to pay principal of any Debt Security of such series when such principal becomes due and payable, whether at Maturity, upon redemption or otherwise;

(2)    the failure to pay interest on any Debt Security of such series when the same becomes due and the continuance of such Default for a continuous period of 30 days;

(3)    a Default in the deposit of any sinking fund payment on any Debt Security of such series when due;

(4)    a Default by the Issuer, NNC, or during any period in which NNI is a Guarantor, NNI, in the performance or observance of any of their respective covenants, agreements or other obligations set forth herein for a continuous period of 90 days

[New York #1531721 v17]

after the Issuer or such Guarantor receives written notice specifying the Default (and demanding that such Default be remedied) from the Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series;

(5)    a decree, judgment or order by a court having jurisdiction in the premises shall have been entered adjudging the Issuer or any Guarantor a bankrupt or insolvent or approving as properly filed a petition seeking reorganization, readjustment, arrangement, composition or similar relief for the Issuer or any Guarantor under any bankruptcy, insolvency or other similar applicable law and such decree, judgment or order of a court having jurisdiction in the premises for the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency of the Issuer or such Guarantor, as the case may be, of a substantial part of its property, or for the winding up or liquidation of its affairs, shall have remained in force for a period of 60 consecutive days; or any substantial part of the property of the Issuer or such Guarantor shall be sequestered or attached and shall not be returned to the possession of the Issuer or such Guarantor or released from such attachment whether by filing of a bond, or stay or otherwise within 60 consecutive days thereafter;

(6)    the Issuer or any Guarantor shall institute proceedings to be adjudicated a voluntary bankrupt, or shall consent to the filing of a bankruptcy proceeding against it, or shall file a petition or answer or consent seeking reorganization, readjustment, arrangement, composition or similar relief under any bankruptcy, insolvency or other similar applicable law or the Issuer or such Guarantor shall consent to the filing of any such petition, or shall consent to the appointment of a receiver or liquidator or trustee or assignee in bankruptcy or insolvency for it or of a substantial part of its property, or shall make an assignment for the benefit of creditors, or shall be unable, or admit in writing its inability, to pay its debts generally as they become due, or corporate action shall be taken by the Issuer or such Guarantor in furtherance of any of the aforesaid actions;

(7)    a Default by NNC, the Issuer or during any period in which NNI is a Guarantor, NNI, under a single obligation in respect of Funded Debt that exceeds on its face $100,000,000 in principal amount, which results in such Funded Debt becoming or being declared due and payable prior to the date on which it would otherwise become due and payable and such acceleration shall not be rescinded or annulled within 10 days after written notice (i) specifying such Default and (ii) stating that such notice is a "Notice of Default" hereunder, shall have been given to such defaulting entity by Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series;

(8)    any Guarantee shall cease to be in full force and effect (other than in accordance with the terms of this Indenture) or any Guarantor denies or disaffirms its obligations under its Guarantee;

(9)    one or more judgments in an aggregate amount in excess of $100,000,000 shall have been rendered against NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, and such judgments remain undischarged, unpaid in

[New York #1531721 v17]                    54

From:Bank of NY Mellon    12128155802    01/16/2009 14:07    #415 P.065/102

accordance with its or their respective terms or unstayed for a period of 90 days after such judgment or judgments become final and non-appealable;

(10) a failure by the Issuer to make a Change of Control Offer; and

(11) any other Event of Default provided with respect to the Debt Securities of that series and specified in any supplemental indenture applicable to such series of Debt Security;

then, and in each and every such case, the Trustee or the Holders of not less than 25% in principal amount of the Outstanding Debt Securities of such series at such time may declare the principal of (and premium, if any) together with accrued interest on, all Debt Securities of such series to be due and payable immediately, by a notice in writing to the Issuer and the Guarantors, and to the Trustee if given by the Holders, and upon any such declaration such principal amount, together with accrued interest thereon shall become immediately due and payable.

SECTION 502.    *WAIVER OF DECLARATION.*

At any time after such a declaration of acceleration with respect to the Debt Securities of a series has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided, the Holders of a majority in principal amount of the Outstanding Debt Securities of such series, by written notice to the Issuer, the Guarantors and the Trustee, may rescind and annul such declaration and its consequences if:

(a) the Issuer or a Guarantor has paid or deposited with the Trustee a sum sufficient to pay:

(i) all overdue interest on all the Debt Securities of such series;

(ii) the principal of any of the Debt Securities of such series that have become due otherwise than by such declaration of acceleration, and interest thereon at the rate or rates prescribed therefor in such Debt Securities; and

(iii) to the extent that payment of such interest is lawful and applicable, interest upon overdue installments of interest at the rate or rates prescribed therefor in such Debt Securities; and

(b) all Events of Default with respect to the Debt Securities of such series, other than the non-payment of the principal of, premium if any and interest on, such Debt Securities which have become due solely by such declaration of acceleration, have been cured or waived in accordance with the provisions of the Indenture.

SECTION 503.    *WAIVER.*

(a) The Holders of not less than a majority in principal amount of the Outstanding Debt Securities of any series may on behalf of the Holders of all Debt Securities of such series waive any past Default hereunder with respect to such series and its consequences, except a Default:

(i)     in the payment of the principal of (or premium, if any) or interest on any Debt Security of such series; or

(ii)    in respect of a covenant or provision hereof that under Article Nine cannot be modified or amended without the consent of the Holder of each Outstanding Debt Security of such series affected.

(b)     Upon any such waiver, such Default shall cease to exist, and any Event of Default arising therefrom shall be deemed to have been cured, for every purpose of this Indenture. No such waiver shall extend to any subsequent or other Default or impair any right consequent thereon.

SECTION 504.    *OTHER REMEDIES.*

(a)     If an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal of (and premium, if any) or interest on Debt Securities or to enforce the performance of any provision of Debt Securities or this Indenture.

(b)     The Trustee may maintain a proceeding even if it does not possess any Debt Securities or does not produce any of them in the proceeding. A delay or omission by the Trustee or any Holder in exercising any right or remedy accruing upon an Event of Default shall not impair the right or remedy or constitute a waiver of or acquiescence in the Event of Default. All remedies, except as provided in Section 311, are cumulative to the extent permitted by law.

SECTION 505.    *APPLICATION OF MONEY COLLECTED.*

Any money collected by the Trustee pursuant to this Article shall be applied in the following order, at the dates fixed by the Trustee and, in case of the distribution of such money on account of principal of (and premium, if any) or interest, upon presentation of Debt Securities and the notation thereon of the payment if only partially paid and upon surrender thereof if fully paid:

FIRST:  To the payment of all amounts due the Trustee under Section 606;

SECOND: To the payment of the amounts then due and unpaid for principal of (and premium, if any) and interest on the Debt Securities in respect of which or for the benefit of which such money has been collected ratably, without preference or priority of any kind, according to the amounts due and payable on such Debt Securities for principal (and premium, if any) and interest, respectively. The Holders of any Debt Securities denominated in a Foreign Currency shall be entitled to receive a ratable portion of the amount determined by the Trustee converting the principal amount Outstanding of such Debt Securities and accrued but unpaid interest on such Debt Securities in the currency in which such Debt Securities are denominated into Dollars at the Exchange Rate as of the date of declaration of acceleration of the Maturity of the Debt Securities (or, if there is no such rate on such date for the reasons specified in Section 318(d), such rate on the date specified in such Section); and

THIRD:  To the Issuer or, to the extent the Trustee collects any amount pursuant to Section 203 hereof from a Guarantor, to such Guarantor.

[New York #1531721 v17]                          56

From:Bank of NY Mellon    12128155802    01/16/2009 14:08    #415 P.067/102

SECTION 506.    *CONTROL BY HOLDERS.*

(a)    The Holders of at least a majority in principal amount of the Outstanding Debt Securities of any series, may:

(i)    direct the time, method and place of conducting any proceeding for any remedy available to the Trustee or exercising any trust or power conferred on it with respect to the Debt Securities of such series; and

(ii)    take any other action authorized to be taken by or on behalf of the Holders of any specified aggregate principal amount of Debt Securities under any provisions of this Indenture or under applicable law.

(b)    The Trustee may refuse, however, to follow any direction that conflicts with law or this Indenture or is unduly prejudicial to the rights of any Holders.

SECTION 507.    *LIMITATION ON SUITS.*

(a)    Any Holder of Debt Securities may individually pursue a remedy with respect to this Indenture directly only if: (i) such Holder gives to the Trustee written notice of a continuing Event of Default; (ii) the Holders of at least 25% in principal amount of all of the then-Outstanding Debt Securities issued under the Indenture (treated as a single class) make a request in writing to the Trustee to pursue the remedy; (iii) such Holder or Holders indemnify the Trustee in form satisfactory to it against any loss, liability, claim, damage or expense; (iv) the Trustee does not comply with the request within 60 days after receipt of such request and indemnity; and (v) during such 60-day period the Holders of a majority in principal amount of all of the Outstanding Debt Securities (treated as a single class) do not give the Trustee a direction inconsistent with the request.

(b)    Holders may not use this Indenture to prejudice the rights of another Holder or to obtain a preference or priority over another Holder.

SECTION 508.    *RIGHTS OF HOLDERS TO RECEIVE PAYMENT.*

Notwithstanding any other provision of this Indenture, the right of any Holder to receive payment of principal of (and, premium, if any) and interest on Debt Securities held by such Holder, on or after the respective due dates expressed in the Debt Securities (or, in the case of redemption, on the Redemption Date), or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of the Holder.

SECTION 509.    *COLLECTION SUIT BY TRUSTEE.*

If an Event of Default specified in Section 501(1), (2) or (3) occurs and is continuing, the Trustee may recover judgment in its own name and as trustee of an express trust against the Issuer or a Guarantor for the whole amount of principal (and premium, if any) and interest remaining unpaid.

[New York #1531721 v17]    57

01/16/2009 14:08    #415 P. 068/102

12128156802

From:Bank of NY Mellon

SECTION 510.    *TRUSTEE MAY FILE PROOFS OF CLAIM.*

The Trustee may file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Trustee and the Holders allowed in any judicial proceedings relative to the Issuer or a Guarantor, its creditors or its property.

SECTION 511.    *UNDERTAKING FOR COSTS.*

In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant in the suit of an undertaking to pay the costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees and expenses, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant.  This Section does not apply to a suit by the Trustee, a suit by a Holder pursuant to Section 507, or a suit by any Holder or group of Holders of more than 10% in principal amount of the Outstanding Debt Securities.

SECTION 512.    *DELAY OR OMISSION NOT WAIVER.*

No delay or omission of the Trustee or of any Holder of any Debt Security to exercise any right or remedy accruing upon any Event of Default shall impair any such right or remedy or constitute a waiver of any such Event of Default or an acquiescence therein. Every right and remedy given by this Article or by law to the Trustee or to the Holders may be exercised from time to time, and as often as may be deemed expedient, by the Trustee or by the Holders, as the case may be.

SECTION 513.    *WAIVER OF STAY OR EXTENSION LAWS.*

The Issuer and each Guarantor, severally and not jointly, covenants (to the extent that it may lawfully do so) that it will not at any time insist upon, or plead, or in any manner whatsoever claim or take the benefit or advantage of, any stay or extension law wherever enacted, now or at any time hereafter in force, that may affect the covenants or the performance of this Indenture; and the Issuer and the Guarantors each, severally and not jointly (to the extent that it may lawfully do so), hereby expressly waives all benefit or advantage of any such law, and covenants that it will not hinder, delay or impede the execution of any power herein granted to the Trustee, but will suffer and permit the execution of every such power as though no such law had been enacted.

## ARTICLE SIX

### THE TRUSTEE

SECTION 601.    *DUTIES OF TRUSTEE.*

(a)    If an Event of Default has occurred and is continuing, the Trustee shall exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his own affairs.

[New York #1531721 v17]

From:Bank of NY Mellon          12128155802          01/16/2009 14:08          #415 P. 068/102

(b)    Except during the continuance of an Event of Default:

   (i)    the Trustee need perform only those duties that are specifically set forth in this Indenture and no others shall be inferred or implied; and

   (ii)    in the absence of bad faith on its part, the Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture; however, the Trustee shall examine the certificates and opinions required to be delivered to it pursuant to the terms of this Indenture to determine whether or not they so conform.

(c)    The Trustee may not be relieved from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, except that:

   (i)    this paragraph does not limit the effect of paragraph (b) of this Section;

   (ii)    the Trustee shall not be liable for any error of judgment made in good faith by a Responsible Officer, unless it is proved that the Trustee was negligent in ascertaining the pertinent facts;

   (iii)    the Trustee shall not be liable with respect to any action it takes or omits to take in good faith in accordance with a direction received by it pursuant to Section 506; and

   (iv)    no provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of any of its rights or powers, if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(d)    Every provision of this Indenture that in any way relates to the Trustee is subject to the above paragraphs of this Section. The Trustee may refuse to perform any duty or exercise any right or power under this Indenture (including with respect to Section 506) unless it receives indemnity reasonably satisfactory to it for actions taken under this Indenture. The Trustee shall not be liable for interest on any money received by it except as the Trustee may agree in writing with the Issuer or the applicable Guarantor. Money held in trust by the Trustee need not be segregated from other funds except to the extent required by law.

SECTION 602.    *RIGHTS OF TRUSTEE.*

The Trustee may rely on any document (whether in its original or facsimile form) believed by it to be genuine and to have been signed or presented by the proper person. The Trustee need not investigate any fact or matter stated in the document, but the Trustee, in its discretion, may make such further inquiry or investigation into such facts or matters as it may see fit, and, if the Trustee shall determine to make such further inquiry or investigation, it shall be entitled to examine the books, records and premises of the Issuer, personally or by agent or attorney at the sole cost of the Issuer and shall incur no liability or additional liability of any kind by reason of

[New York #1531721 v17]                                    59

01/16/2009 14:08    #415 P.070/102

12128155802

From:Bank of NY Mellon

such inquiry or investigation. Before the Trustee acts or refrains from acting, it may require an Officers' Certificate or an Opinion of Counsel. The Trustee shall not be liable for any action it takes or omits to take in good faith in reliance thereon. The Trustee may act through agents or attorneys and shall not be responsible for the misconduct or negligence of any agent or attorney appointed with due care. The Trustee shall not be liable for any action it takes or omits to take in good faith, except as otherwise provided in this Indenture, which it reasonably believes to be authorized or within its rights or powers. The Trustee may consult with counsel of its selection and the advice of such counsel or any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by it hereunder in good faith and in reliance thereon.

The rights, privileges, protections, immunities and benefits given to the Trustee, including, without limitation, its right to be indemnified, are extended to, and shall be enforceable by, the Trustee in each of its capacities hereunder as Security Registrar and Security Custodian and each agent, custodian and other Person employed by the Trustee to act hereunder.

SECTION 603.    *INDIVIDUAL RIGHTS OF TRUSTEE.*

The Trustee in its individual or any other capacity may become the owner or pledgee of Debt Securities and may otherwise deal with the Issuer or the Guarantors with the same rights it would have if it were not Trustee. Any agent of the Trustee may do the same with like rights. However, the Trustee is at all times subject to Sections 609 and 610.

SECTION 604.    *TRUSTEE'S DISCLAIMER.*

The recitals contained herein and in the Debt Securities, except the Trustee's certificate of authentication, shall be taken as the statements of the Issuer and the Trustee assumes no responsibility for the correctness of same. The Trustee makes no representations as to the validity or sufficiency of any offering materials, this Indenture or of the Debt Securities. The Trustee shall not be accountable for the use or application by the Issuer of any of the Debt Securities or proceeds of the Debt Securities.

SECTION 605.    *NOTICE OF DEFAULTS.*

(a)    If an Event of Default with respect to a series of Debt Securities occurs and is continuing, the Trustee shall mail to Holders of Debt Securities of such series a notice of the Event of Default within 90 days after it occurs. Except in the case of an Event of Default resulting from nonpayment on any Debt Securities, the Trustee may withhold the notice if and so long as a committee of its Responsible Officers in good faith determines that withholding the notice is in the interests of the Holders of Debt Securities.

(b)    The Trustee shall not be deemed to have notice of any Default or Event of Default unless a Responsible Officer of the Trustee has knowledge thereof or unless written notice of any event which is in fact such a Default is received by the Trustee at the Corporate Trust Office of the Trustee, and such notice references the Debt Securities and this Indenture.

SECTION 606.    *COMPENSATION AND INDEMNITY.*

(a)    The Issuer shall pay to the Trustee from time to time compensation for its services as agreed separately by the Issuer and the Trustee. The Trustee's compensation shall not be limited by any law on compensation of a trustee of an express trust.

(b)    The Issuer shall fully indemnify the Trustee and any predecessor Trustee and their agents for, and to hold them harmless against, any and all loss, damage, claims, liability or expense (including reasonable attorneys' fees and expenses) arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any claim or liability in connection with the exercise or performance of any of its rights, powers, trusts or duties hereunder, except to the extent that such loss, damage, claim, liability or expense is caused by its own negligent action or failure to act, willful misconduct or bad faith or, with respect to indemnification of an agent hereunder, the negligent action or failure to act, willful misconduct or bad faith of such agent. The Trustee shall notify the Issuer promptly of any claim for which it may seek indemnity. The Issuer need not pay for any settlement made without its consent.

(c)    Except as otherwise expressly provided herein, the Issuer agrees to reimburse the Trustee upon its request for all reasonable and documented expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable and documented compensation, expenses and disbursements of its agents and counsel), except any such expense, disbursement or advance as may be attributable to its negligent action or failure to act, willful misconduct or bad faith or, with respect to documented compensation, expenses and disbursements of an agent or attorney, the negligent action or failure to act, willful misconduct or bad faith of such agent or attorney.

(d)    To secure the Issuer's respective payment obligations in this Section, the Trustee shall have a lien prior to Debt Securities on all money or property held or collected by the Trustee, except that held in trust to pay principal of, premium, if any, on and interest on Debt Securities.

When the Trustee incurs expenses or renders services in connection with an Event of Default specified in Section 501(5) or Section 501(6), the reasonable and documented expenses (including the reasonable and documented charges and expenses of its counsel) and compensation for the services are intended to constitute expenses of administration under any applicable Federal or state bankruptcy, insolvency or other similar law.

The provisions of this Section shall survive the satisfaction and discharge of the Debt Securities, termination of this Indenture and the resignation or removal of the Trustee.

SECTION 607.    *REPLACEMENT OF TRUSTEE.*

(a)    A resignation or removal of the Trustee and appointment of a successor Trustee for the Debt Securities of any series shall become effective only upon the successor Trustee's acceptance of appointment as provided in this Section.

(b)    The Trustee may resign at any time with respect to Debt Securities of one or more series by giving written notice thereof to the Issuer and the Guarantors. If an instrument of acceptance

by a successor Trustee shall not have been delivered to the Trustee within 30 days after the giving of such notice of resignation, the resigning Trustee may at the expense of the Issuer petition any court of competent jurisdiction for the appointment of a successor Trustee to the Trustee. The Holders of at least a majority in principal amount of the then Outstanding Debt Securities of such series may remove the Trustee by so notifying the Trustee, the Issuer and the Guarantors if: (i) the Trustee fails to comply with Section 609; (ii) the Trustee is adjudged a bankrupt or an insolvent; (iii) a receiver or public officer takes charge of the Trustee or its property; or (iv) the Trustee becomes incapable of acting; in addition, in any such case, (1) the Issuer by a Board Resolution may remove the Trustee with respect to all Debt Securities, or (2) any Holder who has been a bona fide Holder of a Debt Security of any series for at least six months may, on behalf of himself and all others similarly situated, petition any court of competent jurisdiction for the removal of the Trustee for the Debt Securities of such series and the appointment of a successor Trustee.

(c)     If the Trustee resigns or is removed or if a vacancy exists in the office of Trustee for any reason with respect to the Debt Securities of one or more series, the Issuer shall promptly appoint a successor Trustee or Trustees with respect to the Debt Securities of that or those series (it being understood that any such successor Trustee may be appointed with respect to the Debt Securities of one or more or all of such series and that, except as provided by Section 611, at any time there shall be only one Trustee with respect to the Debt Securities of any particular series) and shall comply with the applicable requirements of this Section 607. Within one year after the successor Trustee takes office, the Holders of a majority in principal amount of the Outstanding Debt Securities of any series may appoint a successor Trustee to replace the successor Trustee appointed by the Issuer with respect to the Debt Securities of such series. If such a successor Trustee does not take office within 60 days after the retiring Trustee resigns or is removed, the retiring Trustee, the Issuer or the Holders of at least 10% in principal amount of the Debt Securities of any series may petition any court of competent jurisdiction for the appointment of a successor Trustee with respect to the Debt Securities of such series.

(d)     If the Trustee fails to comply with Section 609, any Holder of Debt Securities may petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee.

(e)     The Issuer shall give notice of each resignation and each removal of the Trustee with respect to Debt Securities of any series and each appointment of a successor Trustee with respect to Debt Securities of any series in the manner provided in Section 106. Each notice shall include the name of the successor Trustee with respect to the Debt Securities of such series and the address of its Corporate Trust Office.

(f)     In the case of an appointment hereunder of a successor Trustee with respect to all Debt Securities, every such successor Trustee so appointed shall execute, acknowledge and deliver to the Issuer and to the Guarantors and to the retiring Trustee an instrument accepting such appointment, and thereupon the resignation or removal of the retiring Trustee shall become effective and such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee; but, on request of the Issuer, any Guarantor or the successor Trustee, such retiring Trustee shall, upon payment of its charges, execute and deliver an instrument transferring to such successor Trustee all the rights,

[New York #1531721 v17]                                    62

#415  P.073/102

01/16/2009  14:09

12128155802

From:Bank of NY Mellon

powers, trusts and duties of the retiring Trustee, and shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder.

(g)    In case of the appointment hereunder of a successor Trustee with respect to the Debt Securities of one or more (but not all) series, the Issuer, the Guarantors, the retiring Trustee upon payment of its charges and each successor Trustee with respect to the Debt Securities of one or more series shall execute and deliver an indenture supplemental hereto wherein each successor Trustee shall accept such appointment and which: (i) shall contain such provisions as shall be necessary or desirable to transfer and confirm to, and to vest in, each successor Trustee all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates; (ii) if the retiring Trustee is not retiring with respect to all Debt Securities, shall contain such provisions as shall be deemed necessary or desirable to confirm that all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series as to which the retiring Trustee is not retiring shall continue to be vested in the retiring Trustee; and (iii) shall add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, it being understood that nothing herein or in such supplemental indenture shall constitute such Trustees co-trustees of the same trust and that each such Trustee shall be trustee of a trust or trusts hereunder separate and apart from any trust or trusts hereunder administered by any other such Trustee; and upon the execution and delivery of such supplemental indenture the resignation or removal of the retiring Trustee shall become effective to the extent provided therein and each such successor Trustee, without any further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the retiring Trustee with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates; but, on request of the Issuer, any Guarantor or any successor Trustee, such retiring Trustee shall duly assign, transfer and deliver to such successor Trustee all property and money held by such retiring Trustee hereunder with respect to the Debt Securities of that or those series to which the appointment of such successor Trustee relates.

(h)    Upon request of any such successor Trustee, the Issuer and the Guarantors shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Trustee all such rights, powers, trusts and duties referred to in paragraph (f) or (g) of this Section, as the case may be.

(i)    No successor Trustee shall accept its appointment unless at the time of such acceptance such successor Trustee shall be qualified and eligible under this Article.

SECTION 608.    *SUCCESSOR TRUSTEE BY MERGER, ETC.*

If the Trustee consolidates, merges or converts into, or transfers all or substantially all of its corporate trust business, including this transaction, to, another corporation, the successor corporation without any further act shall be the successor Trustee; *provided* that prior written notice thereof is given to the Issuer and the Guarantors and such successor corporation is acceptable to the Issuer and the Guarantors.

[New York #1531721 v17]                            63

SECTION 609.    *ELIGIBILITY; DISQUALIFICATION.*

This Indenture shall always have a Trustee who satisfies the requirements of Section 310(a)(1) of the Trust Indenture Act as then in effect. The Trustee shall always have a combined capital and surplus of at least $5 million, calculated as permitted by Section 310(a)(2) of the Trust Indenture Act as then in effect. The Trustee is subject to Section 310(b) of the Trust Indenture Act, including the optional provision permitted by the second sentence of Section 310(b)(9) of the Trust Indenture Act.

SECTION 610.    *PREFERENTIAL COLLECTION OF CLAIMS AGAINST THE ISSUER.*

The Trustee is subject to Section 311(a) of the Trust Indenture Act, except with respect to any creditor relationship listed in Section 311(b) of the Trust Indenture Act. A Trustee who has resigned or been removed is subject to Section 311(a) of the Trust Indenture Act to the extent indicated.

SECTION 611.    *APPOINTMENT OF CO-TRUSTEE.*

The Issuer, the Guarantors and the Trustee may, at any time, appoint a co-trustee for any purpose or purposes of this Indenture if considered necessary or desirable in the circumstances including, without limitation, to fulfill any legal requirement under the applicable laws of any jurisdiction, including any applicable provision of the Canada Business Corporations Act, subject to the following provisions and conditions:

    (1)    the instrument appointing the co-trustee shall refer to this Indenture and the conditions of this Section 611;

    (2)    the instrument appointing the co-trustee shall set forth the rights, powers, duties, trusts and obligations under or in connection with this Indenture to be made available to, imposed upon, exercised and performed by each co-trustee and may, for greater certainty, identify those rights, powers, duties, trusts and obligations that will not be made available to, imposed upon, exercised or performed by each such co-trustee; and

    (3)    no trustee hereunder shall be responsible for or personally liable by reason of any act or omission of any other trustee hereunder.

## ARTICLE SEVEN

HOLDERS' LISTS AND REPORTS BY TRUSTEE, ISSUER AND GUARANTORS

SECTION 701.    *PRESERVATION OF INFORMATION; COMMUNICATIONS TO HOLDERS.*

(a)    The Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the Holders of Debt Securities received by the Security Registrar.

(b)    If three or more Holders of a series of Debt Securities (hereinafter referred to as "applicants") apply in writing to the Trustee, and furnish to the Trustee reasonable proof that each such applicant has owned a Debt Security for a period of at least six months immediately

01/16/2009 14:10    #415 P.074/102    12128155802    From:Bank of NY Mellon

preceding the date of such application, and such application states that the applicants desire to communicate with other Holders of Debt Securities of a particular series (in which case the applicants must hold Debt Securities of such series) or with all Holders of Debt Securities with respect to their rights under this Indenture or under the Debt Securities and is accompanied by a copy of the form of proxy or other communication which such applicants propose to transmit, then the Trustee shall, within five Business Days after the receipt of such application, at its election, either:

      (i)      afford such applicants access to the information preserved at the time by the Trustee in accordance with Section 701(a); or

      (ii)     inform such applicants as to the approximate number of the Holders of Debt Securities of such series or of all Debt Securities, as the case may be, whose names and addresses appear in the information preserved at the time by the Trustee in accordance with Section 701(a), and as to the approximate cost to the applicant of mailing to such Holders the form of proxy or other communication, if any, specified in such application.

If the Trustee shall elect not to afford such applicants access to such information, the Trustee shall, upon the written request of such applicants, mail to each Holder whose name and address appears in the information preserved at the time by the Trustee in accordance with Section 701(a), a copy of the form of proxy or other communication that is specified in such request, with reasonable promptness after a tender to the Trustee of the material to be mailed and of payment, or provision for the payment, by the applicant, of the reasonable expenses of mailing, unless within five days after such tender, the Trustee shall mail to such applicants and file with the Commission, together with a copy of the material to be mailed, a written statement to the effect that, in the opinion of the Trustee, such mailing would be contr~~~ ~~ ~~~ ~~~~ ~~~~~~~~~ of the Holders or would be in violation of applicable law. Such written basis of such opinion. If the Commission, after opportunity for a hea specified in the written statement so filed, shall enter an order refusin objections or if, after the entry of an order sustaining one or more of Commission shall find, after notice and opportunity for hearing, that sustained have been met and shall enter an order so declaring, the Tr such material to all such Holders with reasonable promptness after th the renewal of such tender, otherwise the Trustee shall be relieved of such applicants respecting their application.

(c)     Every Holder of Debt Securities, by receiving and holding the same, agrees with the Issuer, the Guarantors and the Trustee that none of the Issuer, Guarantors and the Trustee shall be held accountable by reason of the disclosure of any such information as to the names and addresses of the Holders in accordance with Section 701(b), regardless of the source from which such information was derived, and that the Trustee shall not be held accountable by reason of mailing any material pursuant to a request made under Section 701(b).

SECTION 702.    *REPORTS BY TRUSTEE.*

(a)     Within 60 days after May 15 of each year following the date of this Indenture, the Trustee shall mail to Holders a brief report dated as of such reporting date that complies with

From:Bank of NY Mellon    12128155802    01/16/2009 14:10    #415 P.076/102

Section 313(a) of the Trust Indenture Act. The Trustee shall also comply with Sections 313(b)(2) and 313(c) of the Trust Indenture Act.

(b)    A copy of each report at the time of its mailing to Holders shall be filed with the Commission and each stock exchange on which Debt Securities of any series are listed.

SECTION 703.    *REPORTS BY ISSUER AND GUARANTORS.*

(a)    NNC or the Issuer will:

    (i)    file with the Trustee, within 15 days after NNC is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) which NNC may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act; or, if NNC is not required to file information, documents or reports pursuant to either of these Sections, NNC will file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports that may be required pursuant to Section 13 of the Exchange Act in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

    (ii)    file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional information, documents and reports with respect to compliance thereby with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

    (iii)    notify the Trustee when Debt Securities of any series are listed on any stock exchange.

(b)    Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

(c)    The Issuer and the Guarantors shall also comply with the provisions of Section 314(a) of the Trust Indenture Act.

#415  P. 076/102    01/16/2009  14:10    12128155802    From:Bank of NY Mellon

01/16/2009 14:10    12128155802    #415 P. 077/102    From:Bank of NY Mellon

# ARTICLE EIGHT

AMALGAMATION, MERGER, CONVEYANCE, TRANSFER OR LEASE

SECTION 801.    *AMALGAMATIONS AND MERGERS OF ISSUER OR A GUARANTOR AND CONVEYANCES PERMITTED SUBJECT TO CERTAIN CONDITIONS.*

So long as any Debt Security of a particular series remains Outstanding, none of NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, will amalgamate or merge with any other corporation or enter into any reorganization or arrangement or effect any conveyance, transfer or lease of all or substantially all of its and its Subsidiaries' assets, taken as a whole, unless in any such case:

    (i)    either (A) it shall be the surviving Person or one of the continuing Persons, or (B) the successor corporation (or the Person that leases or that acquires by conveyance or transfer all or substantially all of its and its Subsidiaries' assets, taken as a whole) expressly assumes the due and punctual payment of the principal of (and premium, if any) and interest on all Outstanding Debt Securities issued hereunder, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by it by supplemental indenture pursuant to Article Nine satisfactory to the Trustee, executed and delivered to the Trustee by such Person; and

    (ii)    NNC, the Issuer or, during any period in which NNI is a Guarantor, NNI, or any successor Person, as the case may be, are not immediately thereafter in Default under this Indenture or the Debt Securities.

SECTION 802.    *RIGHTS AND DUTIES OF SUCCESSOR.*

(a)    In case of any such amalgamation, merger, reorganization, arrangement, conveyance, transfer or lease and upon any such assumption by the successor Person, such successor Person shall agree to be bound by the terms of this Indenture as principal obligor or guarantor in place of NNC, the Issuer or NNI with the same effect as if it had been named herein as such. Such successor Person thereupon may cause to be signed, and may issue either in its own name or in the name of NNC, the Issuer or NNI, as the case may be, any or all of Debt Securities of any series issuable and the Guarantees endorsed thereon, hereunder which theretofore shall not have been signed by NNC, the Issuer or NNI, as the case may be, and delivered to the Trustee. All Debt Securities so issued and Guarantees endorsed thereon shall in all respects have the same legal rank and benefit under this Indenture as the Debt Securities and Guarantees theretofore or thereafter issued or endorsed in accordance with the terms of this Indenture as though all of such Debt Securities and Guarantees had been issued or endorsed at the date on which the Debt Securities of such series were originally signed by NNC, the Issuer or NNI, as the case may be, and delivered to the Trustee.

(b)    In the case of any such amalgamation, merger, reorganization, arrangement, conveyance, transfer or lease, such changes in phraseology and form (but not in substance) may be made in Debt Securities and, the Guarantees endorsed thereon, thereafter to be issued as may be appropriate.

[New York #1531721 v17]    67

SECTION 803.    *OPINION OF COUNSEL.*

The Trustee shall receive an Opinion of Counsel as conclusive evidence that any such amalgamation, merger, reorganization, arrangement, consolidation, lease, transfer or conveyance, and any such assumption, comply with the provisions of this Article Eight.

### ARTICLE NINE

### SUPPLEMENTAL INDENTURES

SECTION 901.    *SUPPLEMENTAL INDENTURES WITHOUT CONSENT OF HOLDERS.*

Without the consent of any Holders, the Issuer and the Guarantors, when authorized by a Board Resolution of the Issuer and Officers' Certificates of the Guarantors, and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(1)    to evidence the succession of another corporation to the Issuer or a Guarantor, and the assumption by such successor of the covenants of the Issuer or such Guarantor herein and in the Debt Securities;

(2)    to add to the covenants of the Issuer or a Guarantor, as the case may be, for the benefit of the Holders of all or any series of Debt Securities (and, if such covenants are to be for the benefit of less than all series of Debt Securities, stating that such covenants are expressly being included solely for the benefit of such series), or to surrender any right or power herein conferred upon the Issuer or such Guarantor;

(3)    to add additional items to the definition of Permitted Liens or Permitted Funded Debt which shall apply only to one or more series of Debt Securities; *provided* that such supplemental indenture is entered into on or prior to the initial Issue Date of any Debt Securities of such series;

(4)    to add any additional Events of Default (and, if such Events of Default are to be applicable to less than all series of Debt Securities, stating that such Events of Default are expressly being included solely to be applicable to such series); *provided* that in respect of any such additional Events of Default such supplemental indenture may provide for a particular grace period after Default (which period may be shorter or longer than that allowed in the case of other Defaults) or may provide for an immediate enforcement upon such Default or may limit the remedies available to the Trustee upon such Default or may limit the right of the Holders of a majority in aggregate principal amount of the series of Debt Securities to which such additional Events of Default apply to waive such Default;

(5)    to change or eliminate any restrictions on the payment of principal (or premium, if any) of Debt Securities; *provided* that any such action shall not adversely affect the interests of the Holders of Debt Securities of any series in any material respect;

(6)    to change or eliminate any of the provisions of this Indenture; *provided* that any such change or elimination shall become effective only when there is no Outstanding Debt Security of

01/16/2009 14:10    #415 P.078/102

12128155802

From:Bank of NY Mellon

#415 P.079/102    01/16/2009 14:11    12128155802    From:Bank of NY Mellon

any series created prior to the execution of such supplemental indenture that is entitled to the benefit of such provision;

(7)      to establish the form or terms of Debt Securities of any series as permitted by Sections 201 and 301;

(8)      to evidence and provide for the acceptance of appointment hereunder by a successor Trustee with respect to the Debt Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee;

(9)      to secure the Debt Securities;

(10)     to add an additional Guarantor in respect of the Debt Securities;

(11)     to supplement any of the provisions of this Indenture to such extent as shall be necessary to permit or facilitate the defeasance and discharge of any series of Debt Securities pursuant to Section 401, Section 1301 or Section 1302; *provided* that any such action shall not adversely affect the interests of the Holders of Debt Securities of such series or any other series of Debt Securities in any material respect; or

(12)     to cure any ambiguity, to correct or supplement any provision herein that may be defective or inconsistent with any other provision herein, or to make any other provisions with respect to matters or questions arising under this Indenture that shall not be inconsistent with any provisions of this Indenture; *provided* that such other provisions shall not adversely affect the interests of the Holders of Debt Securities of any series in any material respect.

SECTION 902.      *SUPPLEMENTAL INDENTURES WITH CONSENT OF HOLDERS.*

(a)      With the consent of the Holders of not less than a majority in principal amount of the Outstanding Debt Securities of any series affected by such supplemental indenture, by Act of said Holders delivered to the Issuer, the Guarantors and the Trustee, the Issuer and the Guarantors, when authorized by a Board Resolution of the Issuer and Officers' Certificates of the Guarantors, and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of modifying in any manner the rights of the Holders of such series of Debt Securities under this Indenture or under such series of Debt Securities; provided that no such supplemental indenture shall, without the consent of the Holder of each Outstanding Debt Security affected thereby:

(i)      change the Stated Maturity Date of the principal of, or any installment of interest on, any Debt Security, or reduce the principal amount thereof or the interest thereon or any premium payable upon redemption thereof, or reduce the amount of the principal of an Original Issue Discount Security that would be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 501, or change any Place of Payment, or change the currency in which any Debt Security or interest thereon is payable, or impair the right to institute

suit for the enforcement of any such payment on or after the Stated Maturity Date thereof (or, in the case of redemption, on or after the Redemption Date);

(ii)    reduce the percentage in principal amount of the Outstanding Debt Securities of any series, the consent of whose Holders is required for any such supplemental indenture, or the consent of whose Holders is required for any waiver (of compliance with certain provisions of this Indenture or certain Defaults hereunder and their consequences) provided for in this Indenture, or reduce the requirements of Section 1404 for quorum or voting;

(iii)    modify any of the provisions of this Section, Section 503 or Section 1009, except to increase any such percentage or to provide that certain other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Debt Security affected thereby; *provided* that this clause shall not be deemed to require the consent of any Holder with respect to changes in the references to "the Trustee" and concomitant changes in this Section and Section 1009, or the deletion of this proviso, in accordance with the requirements of Section 901(8); or

(iv)    change in any manner adverse to the interests of the Holders of any Outstanding Debt Securities the terms and conditions of the obligations of the Guarantors in respect of the due and punctual payment of the principal (or, if the context so requires, lesser amount in the case of Original Issue Discount Securities) thereof (and premium, if any, thereon) and interest thereon or any Additional Amounts or any sinking fund or analogous payments provided in respect thereof.

(b)    It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof.

(c)    A supplemental indenture that changes or eliminates any covenant or other provisions of this Indenture that has expressly been included solely for the benefit of one or more particular series of Debt Securities, or that modifies the rights of the Holders of Debt Securities of such series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Debt Securities of any other series.

SECTION 903.    *EXECUTION OF SUPPLEMENTAL INDENTURES.*

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and, subject to Section 601, shall be fully protected in relying upon, an Opinion of Counsel or Officers' Certificate stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture that affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

From:Bank of NY Mellon     12128155802     01/16/2009 14:11     #415 P.080/102

SECTION 904.    *EFFECT OF SUPPLEMENTAL INDENTURES.*

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Debt Securities theretofore or thereafter authenticated and delivered under this Indenture shall be bound by the supplemental indenture.

SECTION 905.    *CONFORMITY WITH TRUST INDENTURE ACT.*

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

SECTION 906.    *REFERENCE IN DEBT SECURITIES TO SUPPLEMENTAL INDENTURES.*

Debt Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture. If the Issuer or the Guarantors shall so determine, new Debt Securities of any series and any Guarantees endorsed thereon so modified as to conform, in the opinion of the Trustee and the Board of Directors of the Issuer, to any such supplemental indenture may be prepared and executed by the Issuer and the Guarantors and authenticated and delivered by the Trustee in exchange for Outstanding Debt Securities of such series.

## ARTICLE TEN

### COVENANTS

SECTION 1001.    *PAYMENT OF PRINCIPAL, PREMIUM AND INTEREST.*

The Issuer covenants and agrees for the benefit of each particular series of Debt Securities that it will duly and punctually pay the principal of (and premium, if any) and interest on the Debt Securities of such series in accordance with their terms and this Indenture. Principal (and premium, if any) or interest payable with respect to any Debt Securities shall be considered paid on the date due if the Paying Agent, or the Issuer if it acts as its own Paying Agent, holds on that date money sufficient to pay all principal (and premium, if any) and interest then due.

SECTION 1002.    *MAINTENANCE OF OFFICE OR AGENCY.*

(a)    The Issuer will maintain in each Place of Payment for any series of Debt Securities issued hereunder an office or agency where Debt Securities of such series may be presented or surrendered for payment, where Debt Securities of such series may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Issuer in respect of the Debt Securities of such series and this Indenture may be served; and the Guarantors will maintain in The City of New York an office or agency where notices and demands to or upon the Guarantors in respect of Debt Securities of any series and this Indenture may be served. The Issuer and the Guarantors will give prompt written notice to the Trustee of the location, and any change in the location of, any such office or agency. If at any time the Issuer or any Guarantor shall fail to maintain any such required office or agency or shall fail to

71

[New York #1531721 v17]

furnish the Trustee with the address thereof, such presentations, surrenders, notices and demands may be made or served at the Corporate Trust Office of the Trustee and the Issuer and the Guarantors each hereby appoints the Trustee its agent to receive all such presentations, surrenders, notices and demands.

(b)     The Issuer may also from time to time designate one or more other offices or agencies (in or outside of such Place of Payment) where the Debt Securities of one or more series may be presented or surrendered for any or all of such purposes, and may from time to time rescind such designations; *provided* that no such designation or rescission shall in any manner relieve the Issuer of its obligation to maintain an office or agency in each Place of Payment for any series of Debt Securities, for such purposes. The Issuer will give prompt written notice to the Trustee of any such designation and any change in the location of any such other office or agency.

SECTION 1003.     *MONEY FOR DEBT SECURITIES PAYMENTS TO BE HELD IN TRUST.*

(a)     If the Issuer or a Guarantor shall at any time act as its own Paying Agent with respect to any series of Debt Securities, it will, on or before each due date of the principal of (and premium, if any) or interest on any of the Debt Securities of such series, segregate and hold in trust for the benefit of the Persons entitled thereto a sum sufficient to pay the principal (and premium, if any) or interest so becoming due until such sums shall be paid to such Persons or otherwise disposed of as herein provided, and will promptly notify the Trustee of its action or failure so to act.

(b)     Whenever the Issuer shall have one or more Paying Agents with respect to any series of Debt Securities, it will, prior to each due date of the principal of (and premium, if any) or interest on any Debt Securities of such series, deposit with a Paying Agent a sum sufficient to pay the principal (and premium, if any) or interest so becoming due, such sum to be held in trust for the benefit of the Persons entitled to such principal, premium or interest, and (unless such Paying Agent is the Trustee) the Issuer will promptly notify the Trustee of its action or failure so to act.

(c)     The Issuer will cause each Paying Agent with respect to any series of Debt Securities, other than the Trustee, to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent will:

　　　(i)     hold all sums held by it for the payment of the principal of (and premium, if any) or interest on Debt Securities of such series in trust for the benefit of the Persons entitled thereto until such sums shall be paid to such Persons or otherwise disposed of as herein provided;

　　　(ii)     give the Trustee notice of any Default by the Issuer or a Guarantor (or any other obligor upon the Debt Securities of such series or Guarantees endorsed thereon) in the making of any payment of principal of (and premium, if any) or interest on the Debt Securities of such series or Guarantees endorsed thereon; and

　　　(iii)     at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

[New York #1531721 v17]

From:Bank of NY Mellon     12128155802     01/16/2009 14:12     #415 P. 083/102

(d)     The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

(e)     Any money deposited with the Trustee or any Paying Agent, or then held by the Issuer or any Guarantor, in trust for the payment of the principal of (and premium, if any) or interest on any Debt Security of any series and remaining unclaimed for two years after Maturity shall be paid to the Issuer or such Guarantor on Issuer Request or Guarantor Request of such Guarantor, as the case may be, or (if then held by the Issuer or such Guarantor) shall be discharged from such trust; and the Holder of such Debt Security shall thereafter, as an unsecured general creditor, look only to the Issuer or such Guarantor, as the case may be, for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Issuer or such Guarantor, as the case may be, as trustee thereof, shall thereupon cease; provided that the Trustee or such Paying Agent, before being required to make any such repayment, may at the expense of the Issuer or such Guarantor, as the case may be, cause to be published once, in an Authorized Newspaper of general circulation in the Borough of Manhattan, The City of New York, and each Place of Payment or mailed to each such Holder, or both, notice that such money remains unclaimed and that, after a date specified therein, which shall not be less than 30 days from the date of such publication or mailing, any unclaimed balance of such money then remaining will be repaid to the Issuer or such Guarantor, as the case may be.

SECTION 1004.     *OFFER TO REPURCHASE UPON CHANGE OF CONTROL.*

(a)     If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase each Holder's Debt Securities at a purchase price, in cash, equal to 101% of the aggregate principal amount thereof, plus accrued and unpaid interest thereon, if any, up to the date of purchase (the "Change of Control Payment").

(b)     Within 30 days following the date upon which the Change of Control occurs, the Issuer shall mail, or shall cause the Trustee to mail, by first-class mail, a notice to each Holder, with a copy to the Trustee, which notice shall govern the terms of the Change of Control Offer and stating:

    (i)     the CUSIP number, if any, of each series of Debt Securities to which the Change in Control Offer applies;

    (ii)     that the Change of Control Offer is being made pursuant to this Section 1004 and that all Debt Securities tendered will be accepted for payment;

    (iii)     the Change of Control Payment and the purchase date (the "Change of Control Payment Date"), which shall be no earlier than 30 days and no later than 60 days after the date such notice is mailed, other than as may be required to comply with any applicable laws;

    (iv)     that any Debt Security not tendered will continue to accrue interest;

(v) that unless the Issuer defaults in the payment of the Change of Control Payment, all Debt Securities accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest after the Change of Control Payment Date;

(vi) that Holders electing to have any Debt Securities purchased pursuant to a Change of Control Offer will be required to surrender the Debt Securities, with the form entitled "Option of Holder to Elect Purchase" (including specifying the portion (in integral multiples of $1,000) of such Holder's Debt Securities that it agrees to sell to the Issuer pursuant to the Change of Control Offer, on the reverse of the Debt Securities completed), to the Paying Agent at the address specified in the notice prior to the close of business on the third Business Day preceding the Change of Control Payment Date;

(vii) that Holders will be entitled to withdraw their election if the Paying Agent receives, not later than the close of business on the second Business Day preceding the Change of Control Payment Date, a telegram, telex, facsimile transmission or letter setting forth the name of the Holder, the principal amount of Debt Securities delivered for purchase, and a statement that such Holder is withdrawing his election to have the Debt Securities purchased;

(viii) that Holders whose Debt Securities are being purchased only in part will be issued new Debt Securities equal in principal amount to the unpurchased portion of the Debt Securities surrendered, which unpurchased portion must be an authorized denomination of such Debt Securities; and

(ix) that Holders electing to have a Debt Security purchased pursuant to a Change of Control Offer may elect to have Debt Securities purchased in authorized denominations of such Debt Securities only.

(c) On the Change of Control Payment Date, the Issuer shall, to the extent lawful,

(i) accept for payment all Debt Securities or portions of Debt Securities properly tendered pursuant to the Change of Control Offer;

(ii) deposit with the Paying Agent an amount equal to the Change of Control Payment in respect of all Debt Securities or portions of Debt Securities properly tendered; and

(iii) deliver or cause to be delivered to the Trustee the Debt Securities so accepted together with an Officers' Certificate stating the aggregate principal amount of Debt Securities or portions thereof being purchased by the Issuer.

(d) The Paying Agent shall promptly mail to each Holder of Debt Securities properly tendered the Change of Control Payment for such Debt Securities, and the Trustee shall promptly authenticate and mail (or cause to be transferred by book entry) to each Holder a new Debt Security equal in principal amount to any unpurchased portion of the Debt Securities surrendered, if any; *provided* that each new Debt Security shall be in an authorized denomination of such Debt Securities.

(e)    The provisions of this Section 1004 will be applicable whether or not any other covenants or similar provisions of this Indenture are applicable. The Issuer shall comply with the requirements of Rule 14e-1 under the Exchange Act and any other securities laws or regulations to the extent those laws and regulations are applicable to any Change of Control Offer. If the provisions of any of the applicable securities laws or securities regulations conflict with the provisions of this Section 1004, the Issuer shall comply with the applicable securities laws and regulations and shall not be deemed to have breached its obligations under this Section 1004 by virtue of the compliance.

(f)    The Issuer shall not be required to make a Change of Control Offer upon a Change of Control if a third party makes the Change of Control Offer in the manner, at the times and otherwise in compliance with the requirements set forth in this Section 1004 and purchases all Debt Securities properly tendered and not withdrawn under such Change of Control Offer.

SECTION 1005.    *RESTRICTIONS ON LIENS.*

(a)    Subject to the following exceptions, as long as any Debt Securities remain Outstanding, NNC and the Issuer will not, and will not permit any Restricted Subsidiary, to issue, assume or guarantee any Funded Debt secured by, and will not secure any Funded Debt by, a Lien upon any property of NNC, the Issuer or any Restricted Subsidiary (whether now owned or hereafter acquired) without in any such case effectively providing concurrently therewith that the Debt Securities then Outstanding shall be secured equally and ratably with such Funded Debt; *provided* that the foregoing restrictions shall not apply to Funded Debt secured by the following Liens ("Permitted Liens"):

(i)    any Lien existing on property at the time of the acquisition of that property by NNC, the Issuer or the relevant Restricted Subsidiary;

(ii)    any Lien on property that is incurred after the date of issuance of the Debt Securities to secure or provide for the payment of the purchase price of the property or the cost of construction or improvement thereon;

(iii)    any Lien on property of a Person existing at the time that Person is liquidated, dissolved or merged into, or amalgamated or consolidated with NNC, the Issuer or any Restricted Subsidiary, or at the time the properties of or equity interests in the Person are sold, leased or otherwise transferred to NNC, the Issuer or any Restricted Subsidiary;

(iv)    any Lien securing intercompany Funded Debt among or between NNC, the Issuer and/or the Restricted Subsidiaries;

(v)    deposits of cash, cash equivalents or investment securities against which the lender of any Credit Enhanced Foreign Subsidiary Debt has a Lien or right of set off;

(vi)    any Lien on property of a Foreign Subsidiary securing any Funded Debt incurred pursuant to clause (i) of the definition of Permitted Funded Debt;

01/16/2009 14:12    12128155802    #415 P.085/102    From:Bank of NY Mellon

(vii)  Liens in favor of the United States of America or any State thereof, Canada or any Province or territory thereof, or any department, agency or instrumentality or political subdivision thereof, or in favor of any other country or political subdivision, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any Funded Debt incurred or guaranteed for the purpose of financing or refinancing all or any part of the purchase price of the property, shares of capital stock or indebtedness subject to such Liens, or the cost of constructing or improving the property subject to such Liens (including, without limitation, Liens incurred in connection with pollution control, industrial revenue or similar financings or relating to the development, restoration, demolition or remediation of property);

(viii)  any Lien created by or resulting from litigation or other proceedings against, or upon property of, NNC, the Issuer or any Restricted Subsidiary, or any Lien securing appeal bonds (or letters of credit or other similar instruments issued in support of or in lieu of appeal bonds) in respect of judgments, in each case, or any Lien for workmen's compensation awards or similar awards, so long as the finality of such judgment or award is being contested and execution thereon is stayed or such Lien relates to a final unappealable judgment which is satisfied within 30 days of such judgment or any Lien incurred by NNC, the Issuer or any Restricted Subsidiary for the purpose of obtaining a stay or discharge in the course of any litigation or other proceeding;

(ix)  any other Liens securing Funded Debt of any Foreign Subsidiary; *provided* that the aggregate outstanding principal amount of Funded Debt secured pursuant to this clause (ix) by any individual Foreign Subsidiary would not, after giving effect to the relevant transaction, exceed $5,000,000;

(x)  Liens existing on the date of this Indenture and any extension, renewal or replacement in whole or in part of any Lien existing on the date of this Indenture or referred to in the above exceptions, so long as the total amount of secured Funded Debt does not increase, and the property securing the Funded Debt is not expanded, as a result of the extension, renewal or replacement; and

(xi)  Managed Service Contract Liens.

(b)  Notwithstanding the foregoing, NNC, the Issuer and any Restricted Subsidiary may issue, assume or guarantee Funded Debt secured by a Lien upon any of their property that would otherwise be subject to the foregoing restrictions, and may carry out any other transactions which would otherwise be subject to the foregoing restrictions, *provided* that the aggregate amount at any time outstanding of all such secured Funded Debt incurred pursuant to this paragraph (b) would not, after giving effect thereto, exceed 10% of Consolidated Net Tangible Assets if incurred on or prior to the earlier of (x) the date of any refinancing or repayment (including by redemption) in full of the Existing NNC Convertible Notes and (y) September 2, 2008, and 15% of Consolidated Net Tangible Assets if incurred after such date.

SECTION 1006.    *INCURRENCE OF ADDITIONAL FUNDED DEBT.*

(a)    The Issuer and the Guarantors will not, and will not permit any of their Subsidiaries to, directly or indirectly, create, incur, assume, guarantee, incur, become liable, contingently or otherwise, with respect to, or otherwise become responsible for the payment of (collectively, "incur") any Funded Debt (other than Permitted Funded Debt); *provided* that the Issuer, any Guarantor and any other Subsidiary of NNC may incur Funded Debt (including, without limitation, Acquired Funded Debt), if on the date of the incurrence of such Funded Debt, after giving effect to the incurrence thereof, the Consolidated Fixed Charge Coverage Ratio is greater than 2.0 to 1.0.

(b)    The Issuer and the Guarantors will not, directly or indirectly, incur any Funded Debt which by its terms (or by the terms of any agreement governing such Funded Debt) is subordinated in right of payment to any other Funded Debt of the Issuer or such Guarantors, unless such Funded Debt is also by its terms (or by the terms of any agreement governing such Funded Debt) made expressly subordinate to the Debt Securities and the Guarantees, as applicable, to the same extent and in the same manner as such Funded Debt is subordinated to other Funded Debt of the Issuer and the Guarantors, as applicable.

SECTION 1007.    *RESTRICTED PAYMENTS.*

The Issuer and the Guarantors will not, and will not cause or permit any of their Subsidiaries to, directly or indirectly:

(a)    declare or pay any dividend or make any distribution (other than dividends or distributions payable in Qualified Capital Stock of NNC) on or in respect of shares of NNC's Capital Stock or the Issuer's Preferred Stock to holders of such Capital Stock or Preferred Stock, as the case may be, in their capacity as such; or

(b)    purchase, redeem or otherwise acquire or retire for value any Capital Stock of NNC or any Preferred Stock of the Issuer or any warrants, rights or options to purchase or acquire shares of any class of such Capital Stock or Preferred Stock or make any payments with respect to Synthetic Purchase Agreements, (each of the foregoing actions set forth in clauses (a) and (b) being referred to as a "Restricted Payment"), if at the time of such Restricted Payment or immediately after giving effect thereto,

    (i)    a Default or an Event of Default shall have occurred and be continuing;

    (ii)    the Issuer would not be able to incur at least $1.00 of additional Funded Debt (other than Permitted Funded Debt) in compliance with Section 1006; or

    (iii)    the aggregate amount of Restricted Payments (including such proposed Restricted Payment) made subsequent to the Measurement Date shall exceed the sum, without duplication (the "Restricted Payments Basket"), of:

        (w)    50% of the cumulative Consolidated Net Income of NNC (or if cumulative Consolidated Net Income shall be a loss, minus 100% of such loss) earned subsequent to the Measurement Date and on or prior to the last day of the

01/16/2009  14:13    12128155802    From:Bank of NY Mellon    #415  P.087/102

most recent fiscal quarter for which consolidated financial information for NNC is available (the "Reference Date") (treating such period as a single accounting period); plus

    (x)   100% of the aggregate net cash proceeds received by NNC from any Person (other than NNC or a Subsidiary of NNC) or the Issuer from any Person (other than any other Subsidiary of NNC) from the issuance and sale subsequent to the Measurement Date and on or prior to the Reference Date of Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer or warrants, options or other rights to acquire Qualified Capital Stock of NNC (but excluding any debt security that is convertible into, or exchangeable for, Qualified Capital Stock); plus

    (y)   100% of the aggregate net cash proceeds of any equity contribution received by NNC or the Issuer from a holder of NNC's or the Issuer's Capital Stock (other than an equity contribution received by the Issuer from NNC) following the Measurement Date; plus

    (z)   the amount by which Funded Debt of NNC, the Issuer or another Subsidiary of NNC is reduced on NNC's consolidated balance sheet subsequent to the Measurement Date upon the conversion or exchange (other than by a Subsidiary of the Issuer) of such Funded Debt for Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer (less the amount of any cash, or the fair value of any other property, distributed by NNC, the Issuer or another Subsidiary of NNC upon such conversion or exchange).

Notwithstanding the foregoing, the provisions set forth in the preceding paragraphs shall not prohibit:

    (1)   the payment of any dividend within 60 days after the date of declaration of such dividend if the dividend would have complied with the provisions of this Section 1007 on the date of declaration;

    (2)   the purchase, defeasance, repurchase, prepayment, redemption or other acquisition or retirement for value of Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer or any warrants, rights or options to purchase or acquire shares of any class of such Capital Stock or Preferred Stock in exchange for, or out of the proceeds of the substantially concurrent sale of, Qualified Capital Stock of NNC or Preferred Stock (other than Disqualified Capital Stock) of the Issuer (other than Capital Stock issued or sold to NNC or a Subsidiary of NNC); *provided* that the net cash proceeds from such exchange or sale shall be excluded from the calculations pursuant to clause (iii)(x) of the preceding paragraph;

    (3)   the repurchase or other acquisition of Capital Stock of NNC or any warrants, rights or options to purchase or acquire shares of any such Capital Stock or securities convertible into Capital Stock of NNC, from or on behalf of current or former employees, directors, consultants or contractors of NNC or any of its

From:Bank of NY Mellon          12128155802          01/16/2009 14:14          #415 P.088/102

Subsidiaries (or permitted transferees of such current or former employees, directors, consultants or contractors), pursuant to the terms of the agreements (including employment, consulting or severance agreements) or plans (or amendments thereto) under which such individuals purchase or sell, or are granted the option to purchase or sell, shares of such Capital Stock;

(4)    the redemption by NNC of any rights to purchase shares of Common Stock of NNC outstanding from time to time under the amended and restated shareholder rights plan agreement between NNC and Computershare Trust Company of Canada, as rights agent, dated as of February 14, 2003, as the same may be further amended, restated or replaced from time to time, in accordance with the terms thereof; *provided* that such rights are redeemed for nominal consideration;

(5)    payments to holders or former holders of Capital Stock of NNC, the Issuer or any other Subsidiary of NNC pursuant to a statutory dissent right or appraisal remedy;

(6)    payments to holders of Capital Stock (or to the holders of Funded Debt or Disqualified Capital Stock that is convertible into or exchangeable for Capital Stock upon such conversion or exchange) in lieu of the issuance of fractional shares;

(7)    payments to holders of Capital Stock of NNC under any stock purchase plan or similar employee or director benefit plan in settlement of fractional shares issued under such plan;

(8)    the declaration and payment by NNC or the Issuer of regularly scheduled cash dividends with respect to, and the redemption by NNC or the Issuer on a scheduled mandatory redemption date of, any Disqualified Capital Stock (including Existing Preferred Stock) or Designated Qualified Preferred Stock;

(9)    the declaration and payment by NNC or the Issuer of regularly scheduled cash dividends with respect to, and the redemption by NNC or the Issuer on a scheduled mandatory redemption date of, any Qualified Capital Stock (other than Designated Qualified Preferred Stock) issued after the date of this Indenture in an amount not in excess of the aggregate net cash proceeds received by NNC or the Issuer from any Person (other than NNC or a Subsidiary of NNC) from such issuance; *provided* that the amount of Restricted Payments made pursuant to this clause (9) shall be excluded from the calculation pursuant to clause (iii)(x) of the preceding paragraph;

(10)    any payment or distribution to holders or former holders of Capital Stock of NNC in connection with the settlement of, or satisfaction of a judgment resulting from, any shareholder litigation or regulatory or enforcement proceeding; and

(11)    any other Restricted Payments in an aggregate amount which, when taken together with all other Restricted Payments pursuant to this clause (11), does not exceed $25,000,000.

[New York #]531721 v17]

Notwithstanding the foregoing, none of NNC, the Issuer or any other Subsidiary of NNC may make any Restricted Payment in reliance on clause (11) if, after giving effect to such Restricted Payment, a Default or Event of Default shall have occurred and be continuing. In calculating the aggregate amount of Restricted Payments made subsequent to the date of this Indenture for purposes of clause (iii) of the second preceding paragraph, amounts expended pursuant to clause (1) of the immediately preceding paragraph shall be included in such calculation and amounts expended pursuant to clauses (2) through (11) of the immediately preceding paragraph shall be excluded in such calculation.

SECTION 1008.    *COMPLIANCE CERTIFICATE.*

The Issuer and each Guarantor shall deliver an Officers' Certificate to the Trustee within 120 days after the end of each fiscal year thereof stating whether the signers know of any Event of Default that occurred during the fiscal year. If an Event of Default shall have occurred, the applicable certificate shall describe the nature of the Event of Default and its current status. The certificate shall be in a form in compliance with the Trust Indenture Act.

SECTION 1009.    *WAIVER OF CERTAIN COVENANTS.*

The Issuer and each Guarantor may omit in any particular instance to comply with any covenant or condition set forth in this Indenture or any applicable supplemental indenture, with respect to the Debt Securities of any series if, before the time for such compliance, the Holders of a majority in principal amount of the Outstanding Debt Securities of such series shall, by Act of such Holders, either waive such compliance in such instance or generally waive compliance with such covenant or condition, but no such waiver shall extend to or affect such covenant or condition except to the extent so expressly waived, and, until such waiver shall become effective, the obligations of the Issuer and such Guarantor and the duties of the Trustee in respect of any such covenant or condition shall remain in full force and effect.

SECTION 1010.    *COVENANT SUSPENSION.*

(a)    During any Suspension Period with respect to any series of Debt Securities, NNC and its Subsidiaries will not be subject to the following Sections of this Indenture for purposes of such series of Debt Securities: Section 1006 and Section 1007 (collectively, the "Suspended Covenants"). On any Reversion Date with respect to any series of Debt Securities, NNC and its subsidiaries will thereafter again be subject to the Suspended Covenants for purposes of such series of Debt Securities for all periods until the next Suspension Period. Furthermore, on each Reversion Date with respect to any series of Debt Securities, (i) all Funded Debt of NNC or any Subsidiary of NNC incurred during the Suspension Period prior to such Reversion Date will be deemed for purposes of such series of Debt Securities to have been outstanding on the date of this Indenture and classified as permitted under clause (c) of the definition of Permitted Funded Debt and (ii) all Liens granted or created by any Subsidiary of NNC (other than the Issuer or any Subsidiary that was a Restricted Subsidiary during such Suspension Period) during the Suspension Period prior to such Reversion Date (other than any Lien granted or created in connection with a transaction that directly results in a downgrade in the rating of the Debt Securities of any series from S&P or Moody's to below the applicable rating specified in the definition of Investment Grade Status) will be deemed for purposes of such series of Debt

01/16/2009  14:14        #415  P.090/102        12128166802        From:Bank of NY Mellon

Securities to have been outstanding on the date of this Indenture and classified as permitted under Section 1005(a)(x).

(b)    For purposes of calculating the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b), calculations under such clause will be made with reference to the Measurement Date as set forth in that clause. Accordingly, Restricted Payments made during the Suspension Period with respect to any series of Debt Securities not otherwise permitted pursuant to any of clauses (1) through (11) under the second paragraph of Section 1007(b) will reduce the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b) for purposes of such series of Debt Securities; *provided* that the amount available to be made as Restricted Payments on the Reversion Date shall not be reduced to below zero solely as a result of such Restricted Payments, but may be reduced to below zero as a result of cumulative Consolidated Net Income for the purpose of sub-clause (w) of clause (iii) of Section 1007(b) being a loss, and the items specified in sub-clauses (w) through (z) of clause (iii) of Section 1007(b) that occur during the Suspension Period will increase the amount available to be made as Restricted Payments under clause (iii) of Section 1007(b). Any Restricted Payments made during the Suspension Period that would have been made pursuant to clause (11) of the second paragraph under the Section 1007(b) if the provisions of such Section were then applicable, shall for purposes of such series of Debt Securities reduce the amounts permitted to be incurred under such clause (11) on the Reversion Date.

### ARTICLE ELEVEN

#### REDEMPTION OF DEBT SECURITIES

SECTION 1101.    *APPLICABILITY OF ARTICLE.*

Debt Securities of any series that are redeemable before their Stated Maturity Date shall be redeemable in accordance with their terms and (except as otherwise specified pursuant to Section 301 for Debt Securities of any series) in accordance with this Article.

SECTION 1102.    *ELECTION TO REDEEM; NOTICE TO TRUSTEE.*

The election of the Issuer to redeem any or all of the Debt Securities of a series pursuant to Section 1101 of this Indenture shall be evidenced by a Board Resolution of the Issuer. In case of any redemption at the election of the Issuer, the Issuer shall, not later than the earlier of the date that is 35 days prior to the Redemption Date fixed by the Issuer and the date on which notice is given to the Holders (except as provided in Section 1103 or unless a shorter notice shall be satisfactory to the Trustee), notify the Trustee of such Redemption Date and of the principal amount of the Debt Securities to be redeemed, deliver to the Trustee such documentation and records as shall enable the Trustee to select the Debt Securities to be redeemed pursuant to Section 1103 and direct the Trustee to redeem the Debt Securities in accordance with the Board Resolution. Any such notice may be canceled at any time prior to notice of such redemption being mailed to any Holder and shall thereby be void and of no effect.

From:Bank of NY Mellon        12128155802        01/16/2009  14:14        #415  P. 091/102

01/16/2009 14:15    #415 P.092/102    12128155802    From:Bank of NY Mellon

SECTION 1103.    *SELECTION BY TRUSTEE OF DEBT SECURITIES TO BE REDEEMED.*

(a)    If less than all the Debt Securities of any series are to be redeemed at any time pursuant to an optional redemption, the particular Debt Securities of such series to be redeemed shall be selected not more than 60 days prior to the Redemption Date by the Trustee, from the Outstanding Debt Securities of such series not previously called for redemption, in compliance with the requirements of the principal national securities exchange, if any, on which the Debt Securities of such series are listed, or, if such series of Debt Securities are not so listed, on a *pro rata* basis, by lot or by such other method as the Trustee shall deem fair and appropriate (and in such manner as complies with applicable legal requirements) and which may provide for the selection for redemption of portions of the principal of the Debt Securities of such series; *provided* that Debt Securities selected for partial redemption shall be in authorized denominations of such Debt Securities. If a partial redemption is made with Qualified Equity Proceeds, the Trustee will select the Debt Securities of such series only on a *pro rata* basis or on as nearly a *pro rata* basis as is practicable (subject to procedures of the Depositary).

The Trustee shall promptly notify the Issuer in writing of the Debt Securities of such series selected for redemption and, in the case of any Debt Securities of a series selected for partial redemption, the method it has chosen for the selection of Debt Securities of such series and the principal amount thereof to be redeemed and upon the Issuer's written approval of such selection, the Trustee shall redeem the selected Debt Securities of such series.

For all purposes of this Indenture, unless the context otherwise requires, all provisions relating to redemption of Debt Securities of a series shall relate, in the case of any Debt Security of a series redeemed or to be redeemed only in part, to the portion of the principal amount of such Debt Security which has been or is to be redeemed.

SECTION 1104.    *NOTICE OF REDEMPTION.*

(a)    Notice of redemption shall be given by first-class mail not less than 30 nor more than 60 days prior to the Redemption Date, to each Holder of the Debt Securities of the series to be redeemed at its address as listed in the Securities Register. The Trustee shall give notice of redemption in the Issuer's name and at the Issuer's expense; *provided* that the Issuer shall deliver to the Trustee, at least 35 days prior to the Redemption Date (unless a shorter notice period shall be satisfactory to the Trustee) an Issuer Order requesting that the Trustee give such notice at the Issuer's expense and setting forth the information to be stated in such notice, which shall include:

(i)    the Redemption Date;

(ii)    the Redemption Price and the amount of accrued interest to but excluding the Redemption Date payable as provided in Section 1105, if any;

(iii)    if less than all Outstanding Debt Securities of such series are to be redeemed, the aggregate principal amount of Debt Securities of such series to be redeemed and the aggregate principal amount of Debt Securities of such series to be Outstanding after such partial redemption,

(iv)  in case any Debt Security of such series is to be redeemed in part only, the notice that relates to such Debt Security, a statement that, on and after the Redemption Date, upon surrender of such Debt Security, the Holder will receive, without charge, a new Debt Security or Debt Securities of such series of authorized denominations for the principal amount thereof remaining unredeemed;

(v)  a statement that, on the Redemption Date, the Redemption Price of the Debt Securities to be redeemed (and accrued interest, if any, to but excluding the Redemption Date payable as provided in Section 1105 of this Indenture) will become due and payable upon each such Debt Security, or the portion thereof, to be redeemed, and, unless the Issuer defaults in making the redemption payment, that interest on the Debt Securities called for redemption (or the portion thereof) will cease to accrue on and after said date, as long as the Issuer has deposited with the Paying Agent funds in satisfaction of the applicable redemption price;

(vi)  the Place of Payment where such Debt Securities are to be surrendered for payment of the Redemption Price and accrued interest,

(vii)  the CUSIP number, if any, of the series of Debt Securities to be redeemed, *provided* that no representation need be made as to the accuracy or correctness of the CUSIP number, if any, listed in such notice or printed on the Debt Securities, and any redemption shall not be affected by any defect in such CUSIP numbers;

(viii)  the paragraph of the Debt Securities pursuant to which the Debt Securities are to be redeemed,

(b)  If the Issuer exercises its right to redeem the Debt Securities, in whole or in part, the Issuer shall disseminate a press release containing information regarding the redemption, through a public medium that is customary for such press releases or publish the information on its website or through such other public medium as the Issuer may use at that time.

SECTION 1105.  *DEPOSIT OF REDEMPTION PRICE.*

On or before 10:00 a.m. in the Place of Payment on any Redemption Date, the Issuer shall deposit with the Trustee or with a Paying Agent (or, if the Issuer is acting as its own Paying Agent, segregate and hold in trust as provided in Section 1003(a)) an amount of money sufficient to pay the Redemption Price of the Debt Securities which are to be redeemed on that date, other than Debt Securities or portions of Debt Securities called for redemption that are beneficially owned by the Issuer and have been delivered by the Issuer to the Trustee for cancellation.

SECTION 1106.  *DEBT SECURITIES PAYABLE ON REDEMPTION DATE.*

(a)  Notice of redemption having been given as aforesaid, the Debt Securities so to be redeemed shall, on the Redemption Date, become due and payable at the Redemption Price specified in such notice. From and after such date (unless the Issuer and the Guarantors shall default in the payment of the Redemption Price and accrued interest) such Debt Securities shall cease to bear interest. Upon surrender of any such Debt Security for redemption in accordance with the notice, such Debt Security shall be paid by the Issuer at the Redemption Price, together

83

[New York #1531721 v17]

From:Bank of NY Mellon        12128155802        01/16/2009 14:15        #415 P. 094/102

with accrued interest to the Redemption Date; provided that installments of interest on Debt Securities whose Stated Maturity Date is on or prior to the Redemption Date shall be payable to the Holders of such Debt Securities, or one or more Predecessor Securities, registered as such on the relevant Record Dates according to their terms and the provisions of Section 312.

(b)      If any Debt Security called for redemption shall not be so paid upon surrender thereof for redemption, the principal (and premium, if any) shall, until paid, bear interest from the Redemption Date at the rate prescribed therefor in such Debt Security.

SECTION 1107.      *DEBT SECURITY REDEEMED IN PART.*

Any Debt Security that is to be redeemed only in part shall be surrendered at a Place of Payment therefor (with, if the Issuer, any Guarantor, the Security Registrar or the Trustee so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Issuer, such Guarantor, the Security Registrar and the Trustee duly executed by, the Holder thereof or his attorney duly authorized in writing), and the Issuer shall execute, and the Trustee shall authenticate and deliver to the Holder of such Debt Security without service charge, a new Debt Security or Debt Securities of the same series, each having endorsed thereon the Guarantee(s) executed by the Guarantors, of any authorized denomination as requested by such Holder in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Debt Security so surrendered; except that if a Global Security is so surrendered, the Issuer shall execute, and the Trustee shall authenticate and deliver to the Depositary for such Global Security, without service charge, a new Global Security, each having endorsed thereon the Guarantees executed by the Guarantor(s), in a denomination equal to and in exchange for the unredeemed portion of the principal of the Global Security so surrendered.

### ARTICLE TWELVE

#### SINKING FUNDS

SECTION 1201.      *APPLICABILITY OF ARTICLE.*

The provisions of this Article shall be applicable to any sinking fund for the retirement of Debt Securities of a series except as otherwise specified pursuant to Section 301 for the Debt Securities of such series. The minimum amount of any sinking fund payment provided for by the terms of Debt Securities of any series is herein referred to as a "mandatory sinking fund payment," and any payment in excess of such minimum amount provided for by the terms of Debt Securities of any series is herein referred to as an "optional sinking fund payment." If provided for by the terms of Debt Securities of any series, the amount of any sinking fund payment may be subject to reduction as provided in Section 1202. Each sinking fund payment shall be applied to the redemption of Debt Securities of any series as provided for by the terms of such Debt Securities.

SECTION 1202.      *SATISFACTION OF SINKING FUND PAYMENTS WITH DEBT SECURITIES.*

The Issuer or the Guarantors may deliver Outstanding Debt Securities of a series (other than any previously called for redemption) and may apply as a credit Debt Securities of a series that have been redeemed either at the election of the Issuer pursuant to the terms of such Debt Securities or

through the application of permitted optional sinking fund payments pursuant to the terms of such Debt Securities, in each case, in satisfaction of all or any part of any sinking fund payment with respect to the Debt Securities of such series required to be made pursuant to, and as provided for by, their terms; *provided* that such Debt Securities have not been previously so credited. Such Debt Securities shall be received and credited for such purpose by the Trustee at the Redemption Price specified in such Debt Securities for redemption through operation of the sinking fund and the amount of such sinking fund payment shall be reduced accordingly.

SECTION 1203.    *REDEMPTION OF DEBT SECURITIES FOR SINKING FUND.*

Not less than 60 days prior to each sinking fund payment date for any series of Debt Securities (unless a shorter period shall be satisfactory to the Trustee), the Issuer will deliver to the Trustee an Officers' Certificate of the Issuer specifying the amount of the next sinking fund payment for that series pursuant to the terms of that series, the portion thereof, if any, that is to be satisfied by payment of cash, the portion thereof, if any, that is to be satisfied by delivering and crediting Debt Securities of that series pursuant to Section 1202 and the basis for any such credit and, prior to or concurrently with the delivery of such Officers' Certificate, will also deliver to the Trustee any Debt Securities to be so credited and not theretofore delivered to the Trustee. Not less than 45 days (unless a shorter period shall be satisfactory to the Trustee) before each such sinking fund payment date the Trustee shall select the Debt Securities to be redeemed upon such sinking fund payment date in the manner specified in Section 1103 and cause notice of the redemption thereof to be given in the name of and at the expense of the Issuer in the manner provided in Section 1104. Such notice having been duly given, the redemption of such Debt Securities shall be made upon the terms and in the manner stated in Sections 1105, 1106 and 1107.

## ARTICLE THIRTEEN

### DEFEASANCE

SECTION 1301.    *DISCHARGE BY DEPOSIT OF MONEY OR DEBT SECURITIES.*

(a)    This Section 1301 shall be applicable to Debt Securities of a series if so provided pursuant to Section 301. All obligations, covenants and agreements of the Issuer and the Guarantors under this Indenture with respect to Debt Securities of a particular series or for the benefit of the Holders thereof (except as to any surviving rights of registration of transfer or exchange of Debt Securities or herein expressly provided for) shall cease, terminate and be discharged if:

(i)    the Issuer or a Guarantor has, at least 91 days prior thereto, irrevocably deposited with the Trustee, as specific security pledged for, and dedicated solely to, the due payment and ultimate satisfaction of its obligations under the Indenture with respect to the Debt Securities of the series affected,

(A)    funds in the currency or currencies in which the Debt Securities are payable, and/or

(B)    an amount of direct obligations of, or obligations the payment of principal of and interest, if any, on are fully guaranteed by, the government(s) that

[New York #1531721 v17]

85

issued the currency or currencies in which Debt Securities of such series are payable, and that are not subject to prepayment, redemption or call,

as will together with the predetermined and certain income to accrue thereon without consideration of any reinvestment thereof, be sufficient (in the case of such obligations, through the payment of interest and principal thereunder) to pay (1) the principal of (and premium, if any) and interest on the Outstanding Debt Securities of the particular series on the Stated Maturity Date of such principal or interest or of any installment thereof, and (2) any mandatory prepayments or analogous payments applicable to such Debt Securities on the day on which such payments are due and payable in accordance with the terms of this Indenture and such Debt Securities;

(ii)    the Issuer or such Guarantor shall have received an Opinion of Counsel to the effect that Holders of such Debt Securities will not recognize income (whether taxable to them by deduction or withholding by the Issuer or such Guarantor or otherwise), gain or loss for United States federal income tax purposes as a result of such deposit and defeasance in respect of the Issuer's and the Guarantors' obligations and will be subject to United States federal income tax as if such deposit and defeasance had not occurred;

(iii)    the Issuer or such Guarantor shall have received an Opinion of Counsel to the effect that the Holders of the Debt Securities affected will not recognize income (whether taxable to them by deduction or withholding by the Issuer or such Guarantor or otherwise), gain or loss for Canadian federal income tax purposes as a result of such deposit and defeasance in respect of the Issuer's and the Guarantors' obligations and will be subject to Canadian federal income tax as if such deposit and defeasance had not occurred;

(iv)    such deposit will not result in a breach or violation of, or constitute a Default under, this Indenture or any other material agreement or instrument to which the Issuer or any Guarantor is a party or by which it is bound;

(v)    no Default with respect to the Debt Securities of such series shall have occurred and be continuing on the date of such deposit;

(vi)    the Issuer or such Guarantor, as the case may be, shall have delivered to the Trustee an Officers' Certificate or an Opinion of Counsel, stating compliance with all conditions precedent to the defeasance contemplated by Section 1301 or Section 1302; and

(vii)    such deposit shall not cause the Trustee with respect to such series of Debt Securities to have a conflicting interest, within the meaning of this Indenture, and for purposes of the Trust Indenture Act with respect to such Debt Securities.

(b)    Notwithstanding any defeasance under this Indenture with respect to such series of Debt Securities, the obligation of the Issuer to indemnify and compensate the Trustee under this Indenture and the obligations of the Trustee under Sections 1003 and 1303 shall survive with respect to such series of Debt Securities.

[New York #1551721 v17]

86

01/16/2009  14:16    12128155802    From:Bank of NY Mellon    #415  P. 097/102

SECTION 1302.     *APPLICATION OF TRUST MONEY.*

All money deposited with the Trustee pursuant to Sections 1301 and 1302 shall be held in trust and applied by it, in accordance with the provisions of the Debt Securities and this Indenture and any applicable direction of the Issuer or a Guarantor to the payment, either directly or through any Paying Agent (including the Issuer or such Guarantor acting as its own Paying Agent), as the Trustee may determine, to the Persons entitled thereto, of the principal (and premium, if any) and interest for whose payment such money has been deposited with the Trustee.

SECTION 1303.     *REPAYMENT TO THE ISSUER OR GUARANTORS.*

(a)      The Trustee and any Paying Agent shall promptly pay to the Issuer or the applicable Guarantor upon Issuer Request or Guarantor Request of such Guarantor, as the case may be, any money or governmental obligations not required for the payment of the principal of (and premium, if any) and interest on Debt Securities of any series for which currency or government obligations have been deposited pursuant to Section 1301 or Section 1302 held by them at any time.

(b)      The Trustee and any Paying Agent shall pay to the Issuer or the applicable Guarantor upon Issuer Request or Guarantor Request of such Guarantor, as the case may be, any money held by them for the payment of principal (and premium, if any) and interest that remains unclaimed for two years after the Maturity of the Debt Securities for which a deposit has been made pursuant to Section 1301 or Section 1302. After such payment to the Issuer or such Guarantor, as the case may be, the Holders of Debt Securities of such series shall thereafter, as unsecured general creditors, look only to the Issuer and the Guarantors for payment thereof, and all liability of the Issuer or Guarantor as trustee thereof shall cease.

ARTICLE FOURTEEN

MEETINGS OF HOLDERS OF DEBT SECURITIES

SECTION 1401.     *PURPOSES FOR WHICH MEETINGS MAY BE CALLED.*

A meeting of Holders of Debt Securities of a series may be called at any time and from time to time pursuant to this Article to make, give or take any Act provided by this Indenture to be made, given or taken by Holders of Debt Securities of such series.

SECTION 1402.     *CALL, NOTICE AND PLACE OF MEETINGS.*

(a)      The Trustee may at any time call a meeting of Holders of Debt Securities of any series for any purpose specified in Section 1401, to be held at such time and at such place in the Borough of Manhattan, The City of New York as specified in a notice to such Holders. Notice of every meeting of Holders of Debt Securities of any series, setting forth the time and place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given, in the manner provided in Section 106, not less than 21 or more than 50 days prior to the date fixed for the meeting.

[New York #1531721 v17]                          87

(b)    If at any time the Issuer or a Guarantor, pursuant to a Board Resolution of the Issuer or an Officers' Certificate of such Guarantor, or the Holders of at least 10% in principal amount of the Outstanding Debt Securities of any series shall have requested the Trustee to call a meeting of the Holders of Debt Securities of such series for any purpose specified in Section 1401, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have made the first publication of the notice of such meeting within 21 days after receipt of such request or shall not thereafter proceed to cause the meeting to be held as provided herein, then the Issuer, such Guarantor or the Holders of Debt Securities of such series in the amount above specified, as the case may be, may determine the time and the place in the Borough of Manhattan, The City of New York for such meeting and may call such meeting for such purposes by giving notice thereof as provided in paragraph (a) of this Section.

SECTION 1403.    *PERSONS ENTITLED TO VOTE AT MEETINGS.*

To be entitled to vote at any meeting of Holders of Debt Securities of any series, a Person shall be: (1) a Holder of one or more Outstanding Debt Securities of such series; or (2) a Person appointed by an instrument in writing as proxy for a Holder or Holders of one or more Outstanding Debt Securities of such series by such Holder or Holders. The only Persons who shall be entitled to be present or to speak at any meeting of Holders of Debt Securities of any series shall be the Persons entitled to vote at such meeting and their counsel, any representatives of the Trustee and its counsel and any representatives of the Issuer and its counsel or a Guarantor and its counsel.

SECTION 1404.    *QUORUM; ACTION.*

(a)    The Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of a series shall constitute a quorum for a meeting of Holders of Debt Securities of such series. In the absence of a quorum within 45 minutes of the time appointed for any such meeting, the meeting shall, if convened at the request of Holders of Debt Securities of such series, be dissolved. In the absence of a quorum in any other case the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting. In the absence of a quorum upon the re-convening of any such adjourned meeting, such re-convened meeting may be further adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment thereof. Notice of the reconvening of any adjourned meeting shall be given as provided in Section 1402(a), except that such notice need be given only once not less than five days prior to the date on which the meeting is scheduled to be reconvened.

(b)    Except as limited by the proviso to Section 902, any resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative vote of the Holders of a majority in principal amount of Outstanding Debt Securities of that series; *provided that*, except as limited by the proviso to Section 902, any resolution with respect to any Act that this Indenture expressly provides may be made, given or taken by the Holders of a specified percentage, which is less than a majority, in principal amount of Outstanding Debt Securities of a series may be adopted at a meeting or an adjourned meeting duly reconvened and at which a quorum is present as aforesaid by the affirmative vote of the Holders of such specified percentage in principal amount of Outstanding Debt Securities of that series.

From:Bank of NY Mellon                    12128155802                    01/16/2009 14:16                    #415 P.099/102

(c)     Any resolution passed or decision taken at any meeting of Holders of Debt Securities of any series duly held in accordance with this Section will be binding on all Holders of Debt Securities of such series, whether or not present or represented at the meeting.

SECTION 1405.    *DETERMINATION OF VOTING RIGHTS; CONDUCT AND ADJOURNMENT OF MEETINGS.*

(a)     Notwithstanding any other provisions of this Indenture, the Trustee may make such reasonable regulations as it may deem advisable for any meeting of Holders of Debt Securities of such series in regard to proof of the holding of Debt Securities of such series and of the appointment of proxies and in regard to the appointment and duties of inspectors of votes, the submission and examination of proxies, certificates and other evidence of the right to vote, and such other matters concerning the conduct of the meeting as it shall deem appropriate.  Except as otherwise permitted or required by any such regulations, the holding of Debt Securities shall be proved in the manner specified in Section 104 and the appointment of any proxy shall be proved in the manner specified in Section 104.  Such regulations may provide that written instruments appointing proxies, regular on their face, may be presumed valid and genuine without the proof specified in Section 104 or other proof.

(b)     The Trustee shall, by an instrument in writing, appoint a temporary chairman of the meeting, unless the meeting shall have been called by the Issuer, a Guarantor or by Holders of Debt Securities as provided in Section 1402(b), in which case the Issuer, such Guarantor or the Holders of Debt Securities of the series calling the meeting, as the case may be, shall in like manner appoint a temporary chairman.  A permanent chairman and a permanent secretary of the meeting shall be elected by vote of the Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of such series represented at the meeting.

(c)     At any meeting each Holder of a Debt Security of such series or proxy shall be entitled to one vote for each $1,000 principal amount (or the equivalent per the Exchange Rate in any Foreign Currency at the date of issue) of Debt Securities of such series held or represented by him; *provided* that no vote shall be cast or counted at any meeting in respect of any Debt Security challenged as not Outstanding and ruled by the chairman of the meeting to be not Outstanding.  The chairman of the meeting shall have no right to vote, except as a Holder of a Debt Security of such series or proxy.

(d)     Any meeting of Holders of Debt Securities of any series duly called pursuant to Section 1402 at which a quorum is present may be adjourned from time to time by Persons entitled to vote a majority in principal amount of Outstanding Debt Securities of such series represented at the meeting; and the meeting may be re-convened without further notice.

SECTION 1406.    *COUNTING VOTES AND RECORDING ACTION OF MEETINGS.*

(a)     The vote upon any resolution submitted to any meeting of Holders of Debt Securities of any series shall be by written ballots on which shall be inscribed the signatures of the Holders of Debt Securities of such series or of their representatives by proxy and the principal amounts and serial numbers of Outstanding Debt Securities of such series held or represented by them.  The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the

[New York #1531721 v17]                              89

secretary of the meeting their verified written reports of all votes cast at the meeting. A record of the proceedings of each meeting of Holders of Debt Securities of any series shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was given as provided in Section 1402 and, if applicable, Section 1404. Four copies of each shall be signed and verified by the affidavits of the permanent chairman and secretary of the meeting and one such copy shall be delivered to the Issuer and Guarantors and another to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

*          *          *

This instrument may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute but one and the same instrument.

01/16/2009 14:17    #415 P. 101/102    12128155802    From:Bank of NY Mellon

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the day and year first above written.

THE BANK OF NEW YORK,
as Trustee

By:_____
   Name:
   Title:

NORTEL NETWORKS LIMITED,
as Issuer

By:_____
   Name: Katharine B. Stevenson
   Title:  Treasurer

By:_____
   Name: Gordon A. Davies
   Title:  General Counsel — Corporate
       and Corporate Secretary

NORTEL NETWORKS CORPORATION,
as Guarantor

By:_____
   Name: Katharine B. Stevenson
   Title:  Treasurer

By:_____
   Name: Gordon A. Davies
   Title:  General Counsel — Corporate
       and Corporate Secretary

NORTEL NETWORKS INC.,
as Guarantor

By:_____
   Name: Allen K. Stout
   Title:  Vice President, Finance

Base Indenture

From:Bank of NY Mellon        12128155802        01/16/2009 14:17        #415 P. 102/102

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed as of the day and year first above written.

THE BANK OF NEW YORK,
as Trustee

By:_____
   Name:
   Title:

NORTEL NETWORKS LIMITED,
as Issuer

By:_____
   Name: Katharine B. Stevenson
   Title:  Treasurer

By:_____
   Name: Gordon A. Davies
   Title:  General Counsel — Corporate
         and Corporate Secretary

NORTEL NETWORKS CORPORATION,
as Guarantor

By:_____
   Name: Katharine B. Stevenson
   Title:  Treasurer

By:_____
   Name: Gordon A. Davies
   Title:  General Counsel — Corporate
         and Corporate Secretary

NORTEL NETWORKS INC.,
as Guarantor

By:  _Allen K Stout_____
   Name: Allen K. Stout
   Title:  Vice President, Finance

Base Indenture

**EXHIBIT C**

**NORTEL NETWORKS CORPORATION,**
*as Issuer,*

**NORTEL NETWORKS LIMITED**

**AND**

**NORTEL NETWORKS INC.**
*as Guarantors,*

**and**

**THE BANK OF NEW YORK,**
*as Trustee, Registrar, Paying Agent and Conversion Agent*

$575,000,000 1.75% Convertible Senior Notes due 2012 and

$575,000,000 2.125% Convertible Senior Notes due 2014

**INDENTURE**

Dated as of March 28, 2007

[New York #1699265 v7]

ARTICLE 1        DEFINITIONS...................................................................................... 1
    SECTION 1.01.    Definitions................................................................................ 1
    SECTION 1.02.    Other Definitions ................................................................. 10
    SECTION 1.03.    Incorporation by Reference of Trust Indenture Act................. 11
    SECTION 1.04.    Rules of Construction ........................................................... 12
ARTICLE 2        THE NOTES AND THE GUARANTEES...................................... 12
    SECTION 2.01.    Form and Dating .................................................................. 12
    SECTION 2.02.    Registrar, Paying Agent and Conversion Agent..................... 17
    SECTION 2.03.    Money for Notes Payments to be Held in Trust ..................... 17
    SECTION 2.04.    Holder Lists.......................................................................... 19
    SECTION 2.05.    Transfer and Exchange ......................................................... 19
    SECTION 2.06.    Replacement Notes ............................................................... 21
    SECTION 2.07.    Outstanding Notes................................................................. 21
    SECTION 2.08.    When Treasury Notes Disregarded......................................... 22
    SECTION 2.09.    Temporary Notes .................................................................. 22
    SECTION 2.10.    Cancellation .......................................................................... 23
    SECTION 2.11.    Defaulted Interest.................................................................. 23
    SECTION 2.12.    CUSIP Number ..................................................................... 23
    SECTION 2.13.    Judgment............................................................................... 23
    SECTION 2.14.    Legends; Restricted Securities Legends ................................. 24
ARTICLE 3        REDEMPTION.................................................................................. 28
    SECTION 3.01.    Optional Redemption............................................................. 28
    SECTION 3.02.    Notices to Trustee ................................................................. 28
    SECTION 3.03.    Redemption for Changes in Canadian Withholding Taxes....... 28
    SECTION 3.04.    Selection of Notes To Be Redeemed ...................................... 29
    SECTION 3.05.    Notice of Redemption ........................................................... 29
    SECTION 3.06.    Effect of Notice of Redemption............................................. 30
    SECTION 3.07.    Deposit of Redemption Price.................................................. 30
    SECTION 3.08.    Notes Redeemed in Part......................................................... 31
    SECTION 3.09.    Conversion Arrangement on Call for Redemption ................... 31
ARTICLE 4        COVENANTS ................................................................................... 3^
    SECTION 4.01.    Payment of Notes...................................................................

[New York #1699265 v7]

ii

SECTION 4.02. Reports ............................................................................. 32

SECTION 4.03. Compliance Certificate. ................................................. 33

SECTION 4.04. Maintenance of Office or Agency................................... 33

SECTION 4.05. Reserved............................................................................ 33

SECTION 4.06. Offer to Repurchase Upon a Change of Control............. 33

SECTION 4.07. Payment of Additional Amounts .................................... 37

SECTION 4.08. Registration Rights.......................................................... 38

ARTICLE 5    SUCCESSORS ...................................................... 38

SECTION 5.01. Amalgamation, Merger, Conveyance, Transfer or Lease ........ 38

SECTION 5.02. Successor Corporation Substituted ................................ 39

SECTION 5.03. Offer to Repurchase on Change of Control ................... 39

SECTION 5.04. Amalgamation of the Issuer and NNL........................... 39

ARTICLE 6    DEFAULTS AND REMEDIES ............................... 40

SECTION 6.01. Events of Default ............................................................ 40

SECTION 6.02. Acceleration ..................................................................... 41

SECTION 6.03. Other Remedies................................................................ 42

SECTION 6.04. Waiver of Past Defaults .................................................. 42

SECTION 6.05. Control by Majority ........................................................ 42

SECTION 6.06. Limitation on Suits.......................................................... 42

SECTION 6.07. Rights of Holders to Receive Payment .......................... 43

SECTION 6.08. Collection Suit by Trustee .............................................. 43

SECTION 6.09. Trustee May File Proofs of Claim .................................. 43

SECTION 6.10. Priorities........................................................................... 43

SECTION 6.11. Undertaking for Costs ..................................................... 44

ARTICLE 7    THE TRUSTEE ................................................. 44

SECTION 7.01. Duties of the Trustee....................................................... 44

SECTION 7.02. Rights of the Trustee....................................................... 45

SECTION 7.03. Individual Rights of the Trustee .................................... 47

SECTION 7.04. Trustee's Disclaimer ....................................................... 47

SECTION 7.05. Notice of Defaults ........................................................... 47

SECTION 7.06. Reports by the Trustee to Holders ................................. 47

SECTION 7.07. Compensation and Indemnity ......................................... 47

[New York #1699265 v7]

iii

SECTION 7.08.     Replacement of the Trustee ................................................. 48

SECTION 7.09.     Successor Trustee by Merger, Etc. ...................................... 50

SECTION 7.10.     Eligibility, Disqualification................................................ 50

SECTION 7.11.     Preferential Collection of Claims Against Issuer.................... 50

SECTION 7.12.     Appointment of Co-Trustee .............................................. 50

ARTICLE 8     SATISFACTION AND DISCHARGE OF INDENTURE........................... 51

SECTION 8.01.     Discharge of Indenture..................................................... 51

SECTION 8.02.     Deposited Monies to be Held In Trust by Trustee............................ 51

ARTICLE 9     AMENDMENTS ................................................................. 51

SECTION 9.01.     Without the Consent of Holders ......................................... 51

SECTION 9.02.     With the Consent of Holders.............................................. 53

SECTION 9.03.     Compliance With the Trust Indenture Act.............................. 54

SECTION 9.04.     Notation on or Exchange of Notes....................................... 54

SECTION 9.05.     Trustee Protected .......................................................... 54

SECTION 9.06.     No Discharge, Revision, Extinguishment, Novation, Rescission
                  or Substitution............................................................ 54

ARTICLE 10     GENERAL PROVISIONS ..................................................... 55

SECTION 10.01.     Trust Indenture Act Controls ........................................... 55

SECTION 10.02.     Notices ................................................................... 55

SECTION 10.03.     Communication by Holders With Other Holders .................... 56

SECTION 10.04.     Certificate and Opinion as to Conditions Precedent............................ 56

SECTION 10.05.     Statements Required in Certificate or Opinion.................................. 56

SECTION 10.06.     Legal Holidays............................................................ 57

SECTION 10.07.     No Recourse Against Others............................................. 57

SECTION 10.08.     Counterparts.............................................................. 57

SECTION 10.09.     Other Provisions.......................................................... 57

SECTION 10.10.     Governing Law, Etc. .................................................... 58

SECTION 10.11.     WAIVER OF JURY TRIAL............................................... 59

SECTION 10.12.     No Adverse Interpretation of Other Agreements.............................. 59

SECTION 10.13.     Successors ................................................................ 59

SECTION 10.14.     Severability .............................................................. 59

SECTION 10.15.     Table of Contents, Headings, Etc. .................................... 60

SECTION 10.16. Interest Act (Canada) ........................................................ 60

SECTION 10.17. Acts of Holders ................................................................. 60

ARTICLE 11    COVENANT DEFEASANCE ............................................. 61

SECTION 11.01. Discharge by Deposit of Money or Notes .......................... 61

SECTION 11.02. Application of Trust Money .............................................. 62

SECTION 11.03. Repayment to the Issuer or the Guarantor ......................... 62

ARTICLE 12    CONVERSION OF NOTES .............................................. 63

SECTION 12.01. Right to Convert ............................................................... 63

SECTION 12.02. Exercise of Conversion Privilege; Issuance of Common Shares
on Conversion; No Adjustment for Interest or Dividends ................ 63

SECTION 12.03. Cash Payments in Lieu of Fractional Common Shares ....................... 65

SECTION 12.04. Conversion Price .............................................................. 65

SECTION 12.05. Adjustment of Conversion Rate ......................................... 65

SECTION 12.06. Effect of Reclassification, Amalgamation, Consolidation,
Merger or Sale .................................................................................. 69

SECTION 12.07. Conversion Upon a Make Whole Change of Control ......................... 71

SECTION 12.08. Taxes on Shares Issued ..................................................... 72

SECTION 12.09. Reservation of Shares; Shares to be Fully Paid; Listing of
Common Shares ................................................................................ 72

SECTION 12.10. Responsibility of Trustee .................................................. 73

SECTION 12.11. Notice to Holders Prior to Certain Actions ......................... 73

SECTION 12.12. Restriction on Common Shares Issuable Upon Conversion .............. 74

SECTION 12.13. Calculations and Determinations ....................................... 75

ARTICLE 13    MEETINGS OF HOLDERS OF NOTES .......................... 75

SECTION 13.01. Purposes for Which Meetings May Be Called ...................... 75

SECTION 13.02. Call, Notice and Place of Meetings .................................... 75

SECTION 13.03. Persons Entitled to Vote at Meetings ................................. 76

SECTION 13.04. Quorum; Action ............................................................... 76

SECTION 13.05. Determination of Voting Rights; Conduct and Adjournment of
Meetings ........................................................................................... 77

SECTION 13.06. Counting Votes and Recording Action of Meetings ............... 77

## CROSS-REFERENCE TABLE*

| Trust Indenture Act Section | Indenture Section |
|---|---|
| 310(a)(1) | 7.10 |
| (a)(2) | 7.11 |
| (a)(3) | n/a |
| (a)(4) | n/a |
| (b) | 7.08, 7.10, 10.02 |
| (c) | n/a |
| (g) | 7.10 |
| 311(a) | 7.11 |
| (b) | 7.11 |
| (c) | n/a |
| 312(a) | 2.04 |
| (b) | 10.03 |
| (c) | 10.03 |
| 313(a) | 7.06 |
| (b)(1) | n/a |
| (b)(2) | 5.07, 7.05 |
| (c) | 7.06, 10.02 |
| (d) | 7.06 |
| 314(a) | 4.02, 6.02(b), 10.02, 10.05 |
| (b) | n/a |
| (c)(1) | 10.04 |
| (c)(2) | 10.04 |
| (c)(3) | n/a |
| (d) | n/a |
| (e) | 10.05 |
| (f) | n/a |
| 315(a) | 7.01(b) |
| (b) | 7.05, 10.02 |
| (c) | 7.01(a) |
| (d) | 7.01(c) |
| (e) | 6.11 |
| 316(a)(last sentence) | n/a |
| (a)(1)(A) | 6.05 |
| (a)(1)(B) | 6.04 |
| (a)(2) | n/a |
| (b) | 6.04, 6.07 |
| (c) | 9.04 |
| 317(a)(1) | 6.08 |
| (a)(2) | 6.09 |
| (b) | 2.03(c) |
| 318(a) | 10.01 |
| (b) | n/a |
| (c) | 10.01 |

"n/a" means not applicable.

*This Cross-Reference Table shall not, for any purpose, be deemed to be a part of the Indenture.

[New York #1699265 v7]

THIS INDENTURE, dated as of March 28, 2007, is among Nortel Networks Corporation, a Canadian corporation (together with any successors, the "Issuer"), Nortel Networks Limited, a Canadian corporation (together with any successors, "NNL"), Nortel Networks Inc., a Delaware corporation (together with any successors, "NNI" and, together with NNL, the "Guarantors"), and The Bank of New York, a New York banking corporation, as trustee (together with any successors, the "Trustee"), Registrar, Paying Agent and Conversion Agent. The Issuer has duly authorized the creation of its 1.75% Convertible Senior Notes due 2012 (the "2012 Notes") and its 2.125% Convertible Senior Notes due 2014 (the "2014 Notes" and, together with the 2012 Notes, the "Notes"). Each Guarantor has duly authorized its Guarantee of the Notes to the extent described herein, and each of the Issuer, each Guarantor and the Trustee have duly authorized the execution and delivery of this Indenture. Each party agrees as follows for the benefit of the other party and for the equal and ratable benefit of the holders from time to time of the Notes:

## ARTICLE 1
## DEFINITIONS

SECTION 1.01. <u>Definitions</u>.

"2012 Notes" has the meaning specified in the preamble hereto.

"2014 Notes" has the meaning specified in the preamble hereto.

"Additional Amounts" means any additional payments required to be made by the Issuer or the Guarantors as a result of a requirement to withhold or deduct for or on account of Canadian Tax pursuant to Section 4.07 hereof.

"Additional Interest" means (i) any "Liquidated Damages," as such term is defined in the Registration Rights Agreement and (ii) any liquidated damages pursuant to Section 6.02(b) hereof.

"Affiliate" means, when used with reference to any person, any other person directly or indirectly controlling, controlled by, or under direct or indirect common control of, the referent person. For the purposes of this definition, "control" when used with respect to any specified person means the power to direct or cause the direction of management and policies of the referent person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise. The terms "controlling" and "controlled" have meanings correlative of the foregoing.

"Agent" means any Registrar, Paying Agent, Conversion Agent, authenticating agent or co-registrar.

"Agent Member" means any member of, or participant in, the Depositary.

"Applicable Exchange Rate" means, on any date, the noon Dollar buying rate for Canadian Dollars for wire transfers quoted in The City of New York, as certified for customs purposes by the Federal Reserve Bank of New York.

1

"Applicable Securities Exchange," with respect to any security, means (i) if that security is listed on the NYSE, the NYSE; (ii) if that security is listed on one or more U.S. national securities exchange (other than the NYSE) and not listed on the TSX, the U.S. national securities exchange with the highest volume of sales for that security on that date; (iii) if that security is listed on (a) one or more U.S. national securities exchanges (other than the NYSE) and (b) the TSX, whichever of such exchanges had the highest volume of sales for that security on that date; and (iv) if that security is (a) listed on the TSX and (b) not listed on any U.S. national securities exchange, the TSX.

"Applicable Procedures" means, with respect to any transfer or transaction involving a Global Security or beneficial interest therein, the rules and procedures of the Depositary for such Global Security to the extent applicable to such transaction and as in effect from time to time.

"Authorized Newspaper" means a newspaper in an official language of the country of publication or in the English language customarily published on each Business Day, whether or not published on Saturdays, Sundays or holidays, and of general circulation in the place in connection with which the term is used or in the financial community of such place. Where successive publications are required to be made in Authorized Newspapers, the successive publications may be made in the same or in different newspapers in the same city meeting the foregoing requirements and in each case on any Business Day.

"Authorized Officers" means, with respect to, (i) each of the Issuer and NNL, any two of its President and Chief Executive Officer, General Counsel, Chief Legal Officer, Chief Operating Officer and Chief Financial Officer or any one of the aforesaid officers together with any one of its Corporate Secretary, its Treasurer, any Assistant Secretary or any Assistant Treasurer; and (ii) NNI, any one of its President, its Vice-President, Finance and Treasurer, any other of its Vice-Presidents, its Secretary, or any of its Assistant Secretaries; *provided* that the Issuer, NNL and NNI may, from time to time, designate additional officers who would qualify as "Authorized Officers" pursuant to an Officers' Certificate delivered to the Trustee.

"Board of Directors" means, in respect of the Issuer or any Guarantor, the board of directors, the executive committee or any other committee of that board or any group of directors of that board, duly authorized to make a decision on the matter in question.

"Board Resolution" means a copy of a resolution certified by the Corporate Secretary or an Assistant Secretary of the Issuer or a Guarantor, as the case may be, to have been duly adopted by the Board of Directors of the Issuer or such Guarantor, respectively, and to be in full force and effect on the date of such certification.

"Business Day" means any Monday, Tuesday, Wednesday, Thursday or Friday that is not a day on which banking institutions in New York City (or the city in which the Corporate Trust Office of the Trustee is located, if not New York City) are not required to be open or are authorized or obligated by law to close.

"Canadian Dollar" means the lawful currency of the Government of Canada.

"Canadian Taxes" means any present or future taxes, duties, assessments or governmental charges imposed or levied by or on behalf of the Government of Canada or of any

2

province or territory therein or thereof, or by any authority or agency therein or thereof having power to tax.

"Capital Stock" means:

(a)    with respect to any person that is a corporation, any and all shares, interests, participations or other equivalents (however designated and whether or not voting) of corporate stock, including each class of common shares and preferred stock of such person; and

(b)    with respect to any person that is not a corporation, any and all partnership, membership or other equity interests of such person.

"Certificated Note" means any Note issued under this Indenture in fully-registered, certificated form (other than a Global Security).

"Change of Control" means the occurrence of any of the following events:

(a)    any "person," including its affiliates and associates, or any "group," in each case, other than the Issuer, any one or more of the Issuer's Subsidiaries or the Issuer's or the Issuer's Subsidiaries' employee benefit plans, files a Schedule 13D or Schedule TO (or any successor schedule, form or report under the Exchange Act) disclosing that such person or group (x) has become the "beneficial owner" of 50% or more of the combined voting power of the Issuer's Capital Stock having ordinary power to elect members of the Issuer's Board of Directors, or (y) has the power to, directly or indirectly, elect a majority of the members of the Issuer's Board of Directors; *provided* that the foregoing shall not apply if as a result of, and immediately following, the transaction giving a person such beneficial ownership (including an exchange offer or a transaction referred to in clause (c) below), the holders of the Common Shares or holders of the common shares of NNL immediately prior to such transaction are, directly or indirectly, the beneficial owners of at least a majority of the total voting power in the aggregate of all classes of Capital Stock of such person;

(b)    a change of control occurs with respect to NNL which shall mean that the Issuer ceases to be the "beneficial owner" of 100% of the voting power of the common shares of NNL;

(c)    consummation of any transaction or event (whether by means of a liquidation, share exchange, tender offer, consolidation, recapitalization, reclassification, merger or amalgamation of the Issuer or any sale, lease or other transfer of 90% or more of the Issuer's consolidated assets) or a series of related transactions or events pursuant to which Common Shares are exchanged for, converted into or constitute the right to receive cash, securities or other property, in each case other than pursuant to such a transaction, event or series of related transactions or events in which the holders of Common Shares immediately prior to such transaction, event or series of related transactions have, directly or indirectly, at least a majority of the total voting power in the aggregate of all classes of Capital

3

Stock of the continuing or surviving corporation (or of the parent of such continuing or surviving corporation) immediately after such transaction, event or series of related transactions; or

(d)      the Issuer or NNL is dissolved or liquidated,

*provided, however,* that a Change of Control shall not be deemed to have occurred if:

(1)      the Change of Control Sale Price per Common Share for any five Trading Days within the period of ten consecutive Trading Days ending immediately after the later of the potential Change of Control or the public announcement of the potential Change of Control (in the case of a potential Change of Control under clause (a) above) or the period of ten consecutive Trading Days ending immediately before the Change of Control (in the case of a potential Change of Control under clause (c) above) shall equal or exceed 105% of the Conversion Price of the Notes in effect on the date of the potential Change of Control or the public announcement of the potential Change of Control, as applicable; or

(2)      at least 90% of the consideration (excluding cash payments for fractional Common Shares) in the transaction or transactions constituting the potential Change of Control consists of common shares that are, or upon issuance will be, traded on a U.S. national securities exchange or the TSX.

Notwithstanding the foregoing, any (i) amalgamation, consolidation or merger of the Issuer with or into NNL (whether directly or indirectly by amalgamation, consolidation or merger with or into an entity with only nominal assets created in anticipation or contemplation of such amalgamation, consolidation or merger), (ii) transfer of assets solely between or among the Issuer, NNL and any successor entity to the Issuer or NNL or (iii) liquidation or dissolution of the Issuer or NNL resulting in the transfer of all of the assets of the Issuer or NNL to the Issuer, NNL or any successor entity to the Issuer or NNL shall, in each case, not constitute a Change of Control; *provided* that such transaction does not contravene the terms of Section 5.01.

For purposes of this "Change of Control" definition:

(i)      "person" or "group" has the meaning given to it for purposes of Sections 13(d) and 14(d) of the Exchange Act or any successor provisions, and the term "group" includes any group acting for the purpose of acquiring, holding or disposing of securities within the meaning of Rule 13d-5(b)(1) under the Exchange Act or any successor provision; and

(ii)      a "beneficial owner" will be determined in accordance with Rule 13d-3 under the Exchange Act, as in effect on the date of this Indenture.

"Change of Control Sale Price," on any date, means the closing sale price per Common Share (or if no closing sale price is reported, the average of the bid and ask prices or, if more than one in either case, the average of the average bid and the average ask prices) on such date as reported in composite transactions for the Applicable Securities Exchange. In the absence of such quotations, the Issuer shall be entitled to determine the Change of Control Sale Price on the

4

basis of such quotations as it considers appropriate. The Trustee shall be entitled to rely exclusively upon the Issuer's certification of the Change of Control Sale Price as set forth in an Officers' Certificate.

"Commission" means the United States Securities and Exchange Commission.

"Common Shares" means any share of any class of the Issuer which has no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Issuer and which is not subject to redemption by the Issuer. Subject to the provisions of Section 12.06, however, shares issuable on conversion of Notes shall include only shares of the class designated as Common Shares of the Issuer at the date of this Indenture or shares of any class or classes resulting from any reclassification or reclassifications thereof and which have no preference in respect of dividends or of amounts payable in the event of any voluntary or involuntary liquidation, dissolution or winding up of the Issuer and which are not subject to redemption by the Issuer; *provided* that if at any time there shall be more than one such resulting class, the shares of each such class then so issuable shall be substantially in the proportion which the total number of shares of such class resulting from all such reclassifications bears to the total number of shares of all such classes resulting from all such reclassifications.

"Conversion Price" as of any day will equal $1,000 divided by the Conversion Rate applicable to a particular series of Notes as of such date.

"Conversion Rate" means (a) with respect to any 2012 Note, the initial conversion rate specified in paragraph 16 of the form of Note attached as Exhibit A hereto, as adjusted in accordance with the provisions of Article 12 hereof and (b) with respect to any 2014 Note, the initial conversion rate specified in paragraph 16 of the form of Note attached as Exhibit B hereto, as adjusted in accordance with the provisions of Article 12 hereof.

"Corporate Trust Office" means the principal office of the Trustee at which at any particular time its corporate trust business shall be administered.

"Current Market Price" of the Common Shares on any day means the average of the Last Reported Sale Price of the Common Shares for each of the 10 consecutive Trading Days ending on the earlier of the day in question and the day before the Ex-Dividend Date with respect to the issuance or distribution requiring such computation.

"Default" means any event that is, or after notice or passage of time, or both, would be, an Event of Default.

"Depositary" means, with respect to any Global Securities, a clearing agency that is registered as such under the Exchange Act and is designated by the Issuer to act as Depositary for such Global Securities (or any successor securities clearing agency so registered), which shall initially be DTC.

"Dollar" or "$,", unless otherwise indicated, means the lawful currency of the United States of America.

5

"DTC" means The Depository Trust Company, a New York corporation.

"Exchange Act" means the United States Securities Exchange Act of 1934, as amended, and the rules and regulations promulgated thereunder.

"Ex-Dividend Date" means the first date on which the Common Shares trade on the Applicable Securities Exchange or in the applicable market, regular way, without the right to receive a specified issuance or distribution or without giving effect to a specified stock split or stock combination, as the case may be.

"GAAP" means generally accepted accounting principles set forth in the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants and statements and pronouncements of the Financial Accounting Standards Board or in such other statements by such other entity as may be approved by a significant segment of the accounting profession of the United States, which are in effect from time to time.

"Global Class Action Settlement" means the Issuer's agreement to settle certain significant class action lawsuits pending in the U.S. District Court for the Southern District of New York and related Canadian actions as disclosed in the Issuer's Current Report on Form 8-K dated February 8, 2006.

"Global Securities Legend" means the legend substantially in the form set forth in Section 2.14(b) hereof.

"Guarantee" means the guarantee of each of the Guarantors as endorsed on each Global Security and Certificated Note authenticated and delivered pursuant to this Indenture and shall include the Guarantee set forth in Section 2.01(f) of this Indenture and all other obligations and covenants of the Guarantors contained in this Indenture and any Global Security and Certificated Note.

"Guarantor" means each of (a) Nortel Networks Limited, (b) at any time other than during a Suspension Period, Nortel Networks Inc. and (c) any successor corporation to a Guarantor that has become a Guarantor pursuant to the applicable provisions of this Indenture.

"Guarantor Request" and "Guarantor Order" mean, respectively, a written request or order signed in the name of a Guarantor by, in the case of NNL, any two Authorized Officers and, in the case of NNI, any Authorized Officer, and delivered to the Trustee.

"Indenture" means this Indenture as amended or supplemented from time to time.

"Initial Purchasers" has the meaning set forth in the Purchase Agreement.

"Interest Payment Date" means April 15 and October 15 of each year.

"Investment Grade Status," with respect to the Notes of any series, shall occur when the Notes of such series have both (i) a rating of "BBB—" or higher from S&P and (ii) a rating of "Baa3" or higher from Moody's, and each such rating shall have been published by the applicable agency, in each case with no negative outlook.

[New York #1699265 v7]

"Issue Date" means the first date on which Notes are issued and authenticated under this Indenture.

"Issuer" has the meaning specified in the preamble hereto. References to the Issuer shall not include any Subsidiary of the Issuer.

"Issuer Articles" means the original or restated articles of incorporation, articles of amendment, articles of amalgamation, articles of continuance, articles of reorganization or articles of arrangement of the Issuer from time to time in effect and includes all amendments thereto.

"Issuer Request" and "Issuer Order" mean, respectively, a written request or order signed in the name of the Issuer by any two Authorized Officers and delivered to the Trustee.

"Last Reported Sale Price" means, on any date, with respect to (a) any security listed on an Applicable Securities Exchange other than the TSX, the closing sale price per share (or if no closing sale price is reported, the average of the bid and asked prices or, if more than one in either case, the average of the average bid and the average asked prices) on that date as reported by such Applicable Securities Exchange, (b) any security listed on the TSX, (x) the closing sale price per share (or if no closing sale price is reported, the average of the bid and asked prices or, if more than one in either case, the average of the average bid and the average asked prices) on that date as reported by such Applicable Securities Exchange multiplied by (y) the Applicable Exchange Rate for such date, and (c) any security that is not listed on an Applicable Securities Exchange, the average of the mid-point of the last bid and asked prices of such security on the relevant date from each of at least three nationally recognized independent U.S. investment banking firms selected by the Issuer for this purpose, or if such prices are not so available, the market value of such security in Dollars on the relevant date as determined by a nationally recognized U.S. independent investment banking firm selected by the Issuer for this purpose.

"Make Whole Change of Control" means the occurrence, after the Issue Date, of any Change of Control or an event that would have been a Change of Control but for the 105% trading price exception or for the 90% of consideration exception contained in clauses (1) and (2), respectively, of the proviso to such definition; *provided* that the occurrence of a Change of Control resulting from a transaction described in clause (d) of the definition of Change of Control shall not constitute a Make Whole Change of Control.

"Make Whole Change of Control Effective Date" means, with respect to a Make Whole Change of Control, the date on which such Make Whole Change of Control becomes effective.

"Maturity Date" means, (i) with respect to the 2012 Notes, April 15, 2012 and (ii) with respect to the 2014 Notes, April 15, 2014.

"Moody's" means Moody's Investors Service, Inc. and its successors.

"NNI" has the meaning specified in the preamble hereto. References to NNI shall not include any Subsidiary of NNI.

7

"NNL" has the meaning specified in the preamble hereto. References to NNL shall not include any Subsidiary of NNL.

"Notes" has the meaning specified in the preamble hereto.

"NYSE" means the New York Stock Exchange.

"Offering Memorandum" means the final Confidential Offering Memorandum relating to the Notes and the related Guarantees, dated March 22, 2007.

"Officers' Certificate" means a certificate signed by, in the case of the Issuer or NNL, any two Authorized Officers and, in the case of NNI, any Authorized Officer and delivered to the Trustee.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel to the Issuer or one or more Guarantor or both, or the Trustee, as the case may be, which opinion shall be subject to customary assumptions and qualifications.

A "person" means any individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, limited liability company or government or any agency or political subdivision thereof.

"Prospectus" shall mean the prospectus included in the Shelf Registration Statement, including any preliminary prospectus, and any such prospectus as amended or supplemented by any prospectus supplement, including a prospectus supplement with respect to the terms of the offering of any portion of the Registrable Securities covered by the Shelf Registration Statement, and by all other amendments and supplements to such prospectus, and in each case including any document incorporated by reference therein.

"Redemption Date" when used with respect to any Note to be redeemed, means the date fixed by the Issuer for such redemption pursuant to Article 3 of this Indenture and the applicable Note.

"Redemption Price" when used with respect to any Note to be redeemed, means the price fixed for such redemption pursuant to Article 3 of this Indenture and the applicable Note.

"Registrable Securities" shall mean each Note and related Guarantees and the Common Shares into which such Note is convertible until the earlier of (i) the date on which such Note and related Guarantees or the Common Shares into which such Note is convertible have been sold or otherwise transferred pursuant to an effective Shelf Registration Statement; (ii) the date that is two years after the later of the date of original issue of such Note and related Guarantees and the last date that the Issuer or any of its Affiliates was the owner of such Note and related Guarantees (or any predecessor thereto); (iii) the date on which such Note and related Guarantees or the Common Shares into which such Note is convertible may be resold without restriction pursuant to Rule 144(k) under the Securities Act or any successor provision thereto; or (iv) the date such Note and related Guarantees or the Common Shares into which such Note is convertible have been publicly sold pursuant to Rule 144 under the Securities Act or any successor provision thereto.

8