"Registration Rights Agreement" means the Registration Rights Agreement relating to the Notes, the Guarantees and Common Shares issuable upon conversion of such Notes, dated March 28, 2007, among the Issuer, the Guarantors and the Initial Purchasers, as such agreement may be amended, modified or supplemented from time to time.

"Regular Record Date" means the April 1 or October 1 immediately preceding each Interest Payment Date.

"S&P" means Standard & Poor's Rating Service, a division of The McGraw-Hill Companies, Inc., and its successors.

"Securities Act" means the United States Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"Share Price" means, with respect to a Make Whole Change of Control, (i) if holders of Common Shares receive only cash in such Make Whole Change of Control transaction, the cash amount paid per share in such Make Whole Change of Control; and (ii) otherwise, the average of the Last Reported Sale Price of the Common Shares over the five-Trading Day period ending on the Trading Day immediately preceding the applicable Make Whole Change of Control Effective Date.

"Shelf Registration Statement" shall mean a "shelf" registration statement of the Issuer and the Guarantors that covers all of the Registrable Securities on an appropriate form under Rule 415 under the Securities Act, or any similar rule that may be adopted by the Commission, and all amendments and supplements to such registration statement, including post-effective amendments, in each case including the Prospectus contained therein or deemed a part thereof, all exhibits thereto and any document incorporated by reference therein; *provided, however*, that a registration statement shall not be deemed the Shelf Registration Statement until such time as it includes a Prospectus relating to the Registrable Securities.

"Subsidiary" means, with respect to the Issuer or any Guarantor, a corporation, a majority of the outstanding voting shares of which are owned, directly or indirectly, by the Issuer or such Guarantor or by one or more other Subsidiaries of the Issuer or such Guarantor, or by the Issuer or such Guarantor and one or more other Subsidiaries of the Issuer or such Guarantor. For the purposes of this definition, "voting shares" means shares having voting power for the election of directors, whether at all times or only so long as no other shares have such voting power by reason of any contingency.

"Suspension Period" means, for any series of Notes, any period (a) beginning on the date that:

(1) the Notes of such series have Investment Grade Status;

(2) no Default or Event of Default has occurred and is continuing; and

(3) the Issuer has delivered an Officers' Certificate to the Trustee certifying that the conditions set forth in clauses (1) and (2) above are satisfied; and

9

(b) ending on the date (the "Reversion Date") that the Notes of such series cease to have the applicable rating from either Moody's or S&P, specified in the definition of Investment Grade Status; provided that solely for the purpose of determining whether and when the Reversion Date shall have occurred, a series of Notes shall be deemed to have Investment Grade Status if clauses (i) and (ii) of the definition of Investment Grade Status are otherwise satisfied, notwithstanding that either Moody's and/or S&P shall have announced a negative outlook with respect to such Notes.

"TIA" means the United States Trust Indenture Act of 1939, as amended, as in effect on the date of execution of this Indenture, except as provided in Sections 9.03 and 12.06.

"Trading Day" means (x) if the applicable security is listed or admitted for trading on an Applicable Securities Exchange, a day on which such Applicable Securities Exchange is open for trading or quotation or (y) if the applicable security is not so listed or admitted for trading, any day that is a Business Day.

"Trustee" means the party named as such above until a successor replaces it in accordance with the applicable provisions of this Indenture and thereafter means the successor.

"Trust Officer" means, when used with respect to the Trustee, any officer within the Corporate Trust Office, including any Vice President, Assistant Vice President or any other officer of the Trustee customarily performing functions similar to those performed by any of the above designated officers, and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge and familiarity with the particular subject.

"TSX" means The Toronto Stock Exchange.

"U.S. Government Obligations" means direct obligations of the United States of America for the payment of which the full faith and credit of the United States of America is pledged and which are not callable at the issuer's option.

"Voting Shares" means any class or classes of Capital Stock the holders of which under ordinary circumstances have the power to vote in the election of the board of directors, managers or trustees of any person or other persons performing similar functions irrespective of whether or not, at the time Capital Stock of any other class or classes shall have, or might have, voting power by reason of the happening of any contingency.

SECTION 1.02. Other Definitions.

|  | Defined in Section |
|---|---|
| "Act" | 10.16 |
| "Additional Shares" | 12.07(b) |
| "Canadian Restricted Securities Legend" | 2.14(a) |
| "cash" | 4.06(a) |
| "Change of Control Date" | 4.06 |

10

[New York #1699265 v7]

"Change of Control Offer".................................................................... 4.06
"Change of Control Offer Termination Date" ................................... 4.06
"Change of Control Payment" ............................................................ 4.06
"Change of Control Payment Date"................................................... 4.06
"Change in Tax Redemption".............................................................. 3.02
"Conversion Agent"............................................................................ 2.03
"Defaulted Interest" ........................................................................... 2.11
"Event of Default" .............................................................................. 6.01
"Expiration Time"............................................................................... 12.05
"fair market value"............................................................................. 12.05
"Global Security"................................................................................ 2.01
"Ineligible Consideration" ................................................................. 12.05(i)
"Issuer Notice"..................................................................................... 4.06
"Legal Holiday" ................................................................................... 10.06
"Make Whole Change of Control Notice........................................... 12.07(a)
"Make Whole Conversion Cut-off Date ............................................. 12.07(d)
"Make Whole Conversion Date" ........................................................ 12.07(d)
"Make Whole Conversion Period" ..................................................... 12.07(a)
"Optional Redemption" ..................................................................... 3.02
"Paying Agent".................................................................................... 2.02
"Permitted Securities"........................................................................ 12.05(i)
"Purchase Agreement"........................................................................ 2.01
"Purchase Notice"............................................................................... 4.06
"purchased shares" ............................................................................. 12.05(e)
"QIBs".................................................................................................. 2.01
"Registrar" .......................................................................................... 2.02
"Register".............................................................................................. 2.02
"Restricted Common Share Legend"................................................. 2.14(a)
"Restricted Securities"........................................................................ 2.14(a)
"Restricted Securities Legend" .......................................................... 2.14(a)
"Rule 144A"......................................................................................... 2.01

SECTION 1.03.  Incorporation by Reference of Trust Indenture Act.

Whenever this Indenture refers to a provision of the TIA, the provision is incorporated by reference in and made a part of this Indenture.

The following TIA terms used in this Indenture have the following meanings:

"Commission" means the Commission;

"indenture securities" means the Notes and the Guarantees;

"indenture security holder" means a holder of a Note;

"indenture to be qualified" means this Indenture;

"indenture trustee" or "institutional trustee" means the Trustee; and

11

"obligor" on the Notes means the Issuer or any other obligor on the Notes and on the Guarantees means the respective Guarantor or any other obligor on the Guarantees.

All other terms in this Indenture that are defined by the TIA, defined by TIA reference to another statute or defined by Commission rule under the TIA have the meanings so assigned to them.

SECTION 1.04. <u>Rules of Construction</u>.

Unless the context otherwise requires:

(1)    a term has the meaning assigned to it;

(2)    an accounting term not otherwise defined has the meaning assigned to it in accordance with GAAP;

(3)    "or" is not exclusive;

(4)    words in the singular include the plural, and in the plural include the singular;

(5)    the male, female and neuter genders include one another; and

(6)    references in this Indenture to Articles, Sections, subsections, paragraphs, clauses, other subdivisions, Exhibits, appendices or schedules are to Articles, Sections, subsections, paragraphs, clauses, other subdivisions, Exhibits, appendices or schedules of or to this Indenture.

## ARTICLE 2
## THE NOTES AND THE GUARANTEES

SECTION 2.01. <u>Form and Dating</u>.

(a)    *Global Securities*. The Notes and the Guarantees are being offered and sold by the Issuer pursuant to a Purchase Agreement relating to the Notes, dated March 22, 2007, among the Issuer, the Guarantors and the Initial Purchasers (the "Purchase Agreement").

The Notes and the Guarantees are being offered and sold to "qualified institutional buyers" as defined in Rule 144A ("QIBs") in reliance on Rule 144A under the Securities Act ("Rule 144A") and, in the case of sales in Canada, pursuant to an exemption available under applicable Canadian securities laws, as provided in the Purchase Agreement and shall be issued in the form of one or more permanent global securities in definitive, fully registered form without interest coupons with the Global Security Legend, the Restricted Securities Legend and the Canadian Restricted Securities Legend set forth in Section 2.14 (each, a "Global Security"). Any Global Security shall be deposited on behalf of the purchasers of the Notes and the Guarantees represented thereby with the Trustee, at its New York office, as custodian for the Depositary, and registered in the name of the Depositary or a nominee of the Depositary for the accounts of participants in the Depositary, duly executed by the Issuer and the Guarantors and

[New York #1699265 v7]

authenticated by the Trustee as hereinafter provided. The aggregate principal amount of a Global Security may from time to time be increased or decreased by adjustments made on the records of the Trustee and the Depositary or its nominee as hereinafter provided.

(b)     *Book-Entry Provisions*. This Section 2.01(b) shall apply only to a Global Security deposited with or on behalf of the Depositary. The Global Securities initially shall:

(i)     be registered in the name of DTC (or a nominee thereof), as the initial Depositary;

(ii)     be delivered to the Trustee as custodian for DTC; and

(iii)     bear the Restricted Securities Legend set forth in Section 2.14(a)(i);

(iv)     bear the Canadian Restricted Securities Legend set forth in Section 2.14(a)(iii); and

(v)     bear the Global Securities Legend set forth in Section 2.14(b).

Agent Members shall have no rights under this Indenture with respect to any Global Security held on their behalf by the Depositary, or the Trustee as its custodian, or under such Global Security, and the Depositary may be treated by the Issuer, any Guarantor, the Trustee and any agent of the Issuer, any Guarantor or the Trustee as the absolute owner of such Global Security for all purposes whatsoever. Notwithstanding the foregoing, nothing contained herein shall prevent the Issuer, any Guarantor, the Trustee or any agent of the Issuer, any Guarantor or Trustee from giving effect to any written certification, proxy or other authorization furnished by the Depositary or impair, as between the Depositary and the Agent Members, the operation of customary practices governing the exercise of the rights of a holder of any Note.

(c)     The registered holder of a Global Security may grant proxies and otherwise authorize any person, including Agent Members and persons that may hold interests through Agent Members, to take any action that a holder is entitled to take under this Indenture or the Notes.

(d)     A Global Security may not be transferred, in whole or in part, to any person other than the Depositary (or a nominee thereof), and no such transfer to any such other person may be registered. Beneficial interests in a Global Security may be transferred in accordance with the rules and procedures of the Depositary and the provisions of Section 2.05 hereof.

(e)     Notwithstanding any other provisions of this Indenture or the Notes, a Global Security shall not be exchanged in whole or in part for a Note registered in the name of any person other than the Depositary or one or more nominees thereof; provided that a Global Security may be exchanged for Notes registered in the names of any person designated by the Depositary in the event that (i) the Depositary has notified the Issuer that it is unwilling or unable to continue as Depositary for such Global Security or such Depositary has ceased to be a "clearing agency" registered under the Exchange Act, and, in each case, a successor Depositary is not appointed by the Issuer within 90 days; (ii) to the extent permitted by the Depositary, the Issuer determines at any time that the Notes shall no longer be represented by Global Securities

13

and shall inform such Depositary of such determination and participants in such Depository elect to withdraw their beneficial interests in the Global Securities from such Depository, following notification by the Depository of their right to do so; or (iii) an Event of Default has occurred and is continuing and the Depositary so requests. Any Global Security exchanged pursuant to clause (i) above shall be so exchanged in whole and not in part, and any Global Security exchanged pursuant to clause (ii) or (iii) above may be exchanged in whole or from time to time in part as directed by the Depositary. Any Note issued in exchange for a Global Security or any portion thereof shall be a Global Security; *provided* that any such Note so issued that is registered in the name of a person other than the Depositary or a nominee thereof shall be a Certificated Note.

Upon the occurrence of (i), (ii) or (iii) above, the Depositary shall surrender such Global Security or Global Securities to the Trustee for cancellation and the Issuer and the Guarantors shall execute, and the Trustee, upon receipt of an Officers' Certificate and Issuer Order for the authentication and delivery of Notes, shall authenticate and deliver in exchange for such Global Security or Global Securities, Certificated Notes of like tenor as that of the Global Securities in an aggregate principal amount equal to the aggregate principal amount of such Global Security or Global Securities. Such Certificated Notes shall be registered in such names as the Depositary shall identify in writing as the beneficial owners of the Notes represented by such Global Security or Global Securities (or any nominees thereof).

Notwithstanding the foregoing, in connection with any such surrender and subsequent exchange pursuant to Section 2.05 hereof, the Registrar shall reflect on its books and records the date and a decrease in the principal amount of such Global Security in an amount equal to the principal amount of the beneficial interest in such Global Security to be transferred.

(f)    *Guarantee by the Guarantors; Form of Guarantee.* (i) Each Guarantor by its execution of this Indenture hereby agrees with each Holder of a Note of each series authenticated and delivered by the Trustee and with the Trustee on behalf of each such Holder, to be unconditionally bound by the terms and provisions of the Guarantees set forth below and authorizes the Trustee to confirm such Guarantees to the Holder of each such Note by its execution and delivery of each such Note, with such Guarantees endorsed thereon, authenticated and delivered by the Trustee. Guarantees to be endorsed on the Notes shall, subject to this Section 2.01 be in substantially the form set forth below:

GUARANTEE

OF

[GUARANTOR]

For value received, [Guarantor] (the "Guarantor") hereby fully and unconditionally guarantees, jointly and severally, to the Holder of the Note upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note when and as the same shall become due and payable, whether on April 15, 201[2][4] (the "Maturity Date"); by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the indenture dated as of March 28, 2007 among Nortel

14

Networks Corporation, as Issuer (together with any successor person under the Indenture, the "Issuer"), Nortel Networks Limited and Nortel Networks Inc., as guarantors, and The Bank of New York, as trustee (the "Indenture"). In case of the failure of the Issuer to punctually make any such payment of principal, premium, if any, interest, Additional Interest, if any, or Defaulted Interest, if any, the Guarantor, for so long as this Guarantee shall be in effect, hereby agrees to cause any such payment to be made to or to the order of the Trustee punctually when and as the same shall become due and payable, whether on the Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

The Guarantor hereby agrees that its obligations hereunder shall be as if it were the principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Note or the Indenture, any failure to enforce the provisions of such Note or the Indenture, or any waiver, modification or indulgence granted to the Issuer with respect thereto, by the Holder of such Note or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest or notice with respect to such Note or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Note and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note or as otherwise described in Section 2.01(g) of the Indenture.

This Guarantee shall be automatically and unconditionally released on the terms set forth in Section 2.01(g) of the Indenture.

The Guarantor shall be subrogated to all rights of the Holder of such Note and the Trustee against the Issuer in respect of any amounts paid to such Holder by the Guarantor pursuant to the provisions of this Guarantee; *provided, however,* that the Guarantor shall not be entitled to enforce, or to receive any payments arising out of or based upon such right of subrogation until the principal of, premium, if any, interest and Additional Interest, if any, on all Notes shall have been paid in full.

The Guarantor hereby agrees that its obligations hereunder shall be direct, unconditioned and unsubordinated. The Holder of a guaranteed Note will be entitled to payment under this Guarantee without taking any action whatsoever against the Issuer.

No reference herein to the Indenture and no provision of this Guarantee or of the Indenture shall alter or impair the Guarantee of the Guarantor, which is absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, or Defaulted Interest, if any, on the Note upon which this Guarantee is endorsed.

This Guarantee shall not be valid or obligatory for any purpose with respect to any Note until the certificate of authentication of such Note shall have been manually executed by or on behalf of the Trustee under the Indenture.

15

[New York #1699265 v7]

All capitalized terms used but not defined in this Guarantee shall have the meanings assigned to them in the Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

Executed and dated the date on the face hereof.

[GUARANTOR]

By     _____

       Name:

       Title:

(g)     Release of Guarantee.

(i)     The Guarantee of each Guarantor shall be released automatically with respect to any series of Notes upon discharge or defeasance of such series of Notes as provided below under Article Eight or Article Eleven of this Indenture.

(ii)     The Guarantee of NNI will be automatically and unconditionally released and NNI shall be relieved of any obligations under its Guarantee with respect to any series of Notes upon the occurrence, and during the continuance, of a Suspension Period with respect to such series of Notes. At such time as NNI's Guarantee is released with respect to any series of Notes, NNI will no longer be considered a "Guarantor" of such series of Notes. Within 15 Business Days of the occurrence of a Reversion Date with respect to such series of Notes, NNI will enter into a supplemental indenture in order to provide a Guarantee of such series of Notes on the terms set forth herein.

(iii)     The Trustee shall promptly execute any documents reasonably requested by the Issuer or a Guarantor in order to evidence the release of a Guarantor from its obligations under its Guarantee in accordance with this clause (g); *provided* that the Trustee shall not be obligated to execute or deliver any document evidencing the release of a Guarantee pursuant this Section 2.01(g) unless the Issuer has delivered an Officers' Certificate or an Opinion of Counsel to the effect that such release is in accordance with the provisions of this Indenture.

(h)     *Execution and Authentication.* Any two Authorized Officers of the Issuer shall sign the Notes for the Issuer by manual or facsimile signature. Any two Authorized Officers of NNL and any Authorized Officer of NNI shall sign the Guarantee for each Guarantor by manual or facsimile signature.

If an Authorized Officer whose signature is on a Note or the Guarantee endorsed thereon no longer holds that office at the time the Note is authenticated, the Note and the Guarantee shall nevertheless be valid.

16

[New York #1699265 v7]

A Note shall not be valid until authenticated by the manual signature of the Trustee. The signature shall be conclusive evidence that the Note has been authenticated under this Indenture.

Upon an Issuer Order, the Trustee shall authenticate 2012 Notes for original issue up to an aggregate principal amount of $575,000,000 and 2014 Notes for original issue up to an aggregate principal amount of $575,000,000 to the Initial Purchasers.

The Notes shall be issuable only in registered form without coupons and only in denominations of $1,000 or any integral multiple thereof.

The Trustee may appoint an authenticating agent acceptable to the Issuer and the Guarantors, to authenticate Notes. An authenticating agent may authenticate Notes whenever the Trustee may do so. Each reference in this Indenture to authentication by the Trustee includes authentication by such agent.

SECTION 2.02. <u>Registrar, Paying Agent and Conversion Agent</u>.

The Issuer shall maintain or cause to be maintained in the borough of Manhattan, the City and State of New York, which may be a Corporate Trust Office, an office or agency where: (i) securities may be presented for registration of transfer or for exchange ("Registrar"); (ii) Notes may be presented for payment ("Paying Agent"); (iii) Notes may be presented for conversion (the "Conversion Agent"); and (iv) notices and demands to or upon the Issuer or the Guarantors, as the case may be, in respect of Notes, the Guarantees and this Indenture may be served by the holders of the Notes. The Registrar shall keep at the office or agency of the Registrar in the borough of Manhattan a Register (each, a "Register") of each series of the Notes and of their transfer and exchange. The Issuer may appoint one or more co-registrars, one or more additional paying agents and one or more additional conversion agents. The term "Paying Agent" includes any additional paying agent and the term "Conversion Agent" includes any additional Conversion Agent. The Issuer may change any Paying Agent, Registrar, Conversion Agent or co-registrar without prior notice. The Issuer shall notify the Trustee in writing of the name and address of any Agent not a party to this Indenture and shall enter into an appropriate agency agreement with any Registrar, Paying Agent, Conversion Agent or co-registrar not a party to this Indenture. The agreement shall implement the provisions of this Indenture that relate to such Agent. The Issuer or any of its Subsidiaries may act as Paying Agent, Registrar, Conversion Agent or co-registrar. If the Issuer fails to appoint or maintain another entity as Registrar, or Paying Agent or Conversion Agent, the Trustee shall act as such, and the Trustee shall initially act as such.

SECTION 2.03. <u>Money for Notes Payments to be Held in Trust</u>.

(a)       If the Issuer, NNL or NNI shall at any time act as its own Paying Agent with respect to any payment on the Notes, it will, on or before each due date of the principal of (and premium, if any) or interest (including Additional Interest, if any) on the Notes, segregate and hold in trust for the benefit of the persons entitled thereto a sum sufficient to pay the principal (and premium, if any) or interest (including Additional Interest, if any) so becoming due until such sums shall be paid to such persons or otherwise disposed of as herein provided, and will promptly notify the Trustee of its action or failure so to act.

17

(b)    Whenever the Issuer shall have one or more Paying Agents with respect to the Notes, it will, prior to each due date of the principal of (and premium, if any) or interest (including Additional Interest, if any) on the Notes (but no later than 10:00 a.m., New York City time on such due date), deposit with a Paying Agent a sum sufficient to pay the principal (and premium, if any) or interest (including Additional Interest, if any) so becoming due, such sum to be held in trust for the benefit of the persons entitled to such principal, premium or interest, and (unless such Paying Agent is the Trustee) the Issuer will promptly notify the Trustee of its action or failure so to act.

(c)    The Issuer will cause each Paying Agent, other than the Trustee, to execute and deliver to the Trustee an instrument in which such Paying Agent shall agree with the Trustee, subject to the provisions of this Section, that such Paying Agent will:

(i)    hold all sums held by it for the payment of the principal of (and premium, if any) or interest (including Additional Interest, if any) on the Notes in trust for the benefit of the persons entitled thereto until such sums shall be paid to such persons or otherwise disposed of as herein provided;

(ii)    give the Trustee notice of any Default by the Issuer or a Guarantor in the making of any payment of principal of (and premium, if any) or interest (including Additional Interest, if any) on the Notes or Guarantees endorsed thereon; and

(iii)    at any time during the continuance of any such Default, upon the written request of the Trustee, forthwith pay to the Trustee all sums so held in trust by such Paying Agent.

(d)    The Issuer may at any time, for the purpose of obtaining the satisfaction and discharge of this Indenture or for any other purpose, pay, or by Issuer Order direct any Paying Agent to pay, to the Trustee all sums held in trust by the Issuer or such Paying Agent, such sums to be held by the Trustee upon the same trusts as those upon which such sums were held by the Issuer or such Paying Agent; and, upon such payment by any Paying Agent to the Trustee, such Paying Agent shall be released from all further liability with respect to such money.

(e)    Any money deposited with the Trustee or any Paying Agent, or then held by the Issuer or the Guarantors, in trust for the payment of the principal of (and premium, if any) or interest (including Additional Interest, if any) on the Notes and remaining unclaimed for two years after such principal (and premium, if any) or interest (including Additional Interest, if any) has become due and payable shall be paid to the Issuer or Guarantors on Issuer Request or Guarantors Request, as the case may be, or (if then held by the Issuer or Guarantors) shall be discharged from such trust; and the holder of Notes shall thereafter, as an unsecured general creditor, look only to the Issuer or Guarantors, as the case may be, for payment thereof, and all liability of the Trustee or such Paying Agent with respect to such trust money, and all liability of the Issuer or Guarantors, as the case may be, as trustee thereof, shall thereupon cease; *provided, however,* that the Trustee or such Paying Agent, before being required to make any such repayment, may at the expense of the Issuer or Guarantors, as the case may be, cause to be published once, in an Authorized Newspaper of general circulation in the borough of Manhattan, notice that such money remains unclaimed and that, after a date specified therein, which shall not

18

[New York #1699265 v7]

be less than 30 days from the date of such publication or mailing, any unclaimed balance of such money then remaining will be repaid to the Issuer or Guarantors, as the case may be.

SECTION 2.04.    Holder Lists.

The Registrar shall preserve in as current a form as is reasonably practicable the most recent list available to it of the names and addresses of holders of each series of Notes and shall otherwise comply with TIA § 312(a). If the Trustee is not the Registrar, the Issuer shall furnish to the Trustee at least seven Business Days before each Interest Payment Date, and as the Trustee may request in writing within fifteen (15) days after receipt by the Issuer of any such request (or such lesser time as the Trustee may reasonably request in order to enable it to timely provide any notice to be provided by it hereunder), a list in such form and as of such date as the Trustee may reasonably require of the names and addresses of holders of Notes.

SECTION 2.05.    Transfer and Exchange.

(a)       Upon surrender for registration of transfer or exchange of any Notes of any series to the Registrar or a co-registrar, the Issuer shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Notes of the same series of any authorized denomination or denominations, of like tenor and aggregate principal amount and having endorsed thereon the Guarantees executed by the applicable Guarantor(s). Every Note presented or surrendered for registration of transfer or for exchange shall (i) be accompanied by a completed "Assignment Form" substantially as set forth on such Note and (ii) (if so required by the Issuer, any Guarantor, the Registrar or the Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Issuer, any Guarantor, the Registrar and the Trustee, and duly executed, by the holder thereof or his attorney duly authorized in writing. No service charge shall be made to a holder for any registration of transfer or exchange (except as otherwise expressly permitted herein), but the Issuer may require payment of a sum sufficient to cover any transfer tax or other governmental charge payable upon transfers or exchanges pursuant to Sections 2.09, 3.08, 9.04 or 12.02.

The Issuer or the Registrar shall not be required (i) to issue, register the transfer or exchange of Notes of a series during a period beginning at the opening of business fifteen (15) days before the day of the mailing of the notice of redemption with respect to such series under Section 3.02 and ending at the close of business on the day of such mailing, (ii) to register the transfer or exchange of any Note so selected for redemption in whole or in part, except the unredeemed portion of any Note being redeemed in part, or (iii) to register the transfer of any Notes surrendered for repurchase pursuant to Section 4.06.

All Notes issued upon any transfer or exchange of Notes in accordance with this Indenture shall be the valid obligations of the Issuer, evidencing the same debt, and entitled to the same benefits under this Indenture as the Notes surrendered upon such registration of transfer or exchange.

(b)       Notwithstanding any other provision of this Section 2.05, unless and until it is exchanged in whole or in part for a Certificated Note, a Global Security representing all or a portion of the Notes of a series may not be transferred except as a whole by the Depositary for

19

such series to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any such nominee to a successor Depositary for such series or a nominee of such successor Depositary.

In the event that a Global Security is exchanged for Certificated Notes pursuant to Section 2.01(e) or Section 2.09 prior to the effectiveness of a Shelf Registration Statement with respect to such Notes, such exchange may occur, and such Notes may be further exchanged or transferred, only upon receipt by the Registrar of (1) such Global Security or such Certificated Notes, duly endorsed as provided herein, as applicable, (2) instructions from the holder directing the Trustee to authenticate and deliver one or more Certificated Notes in definitive form of the same aggregate principal amount as the Global Security or the Notes in definitive form (or portion thereof), as applicable, to be transferred, such instructions to contain the name or names of the designated transferee or transferees, the authorized denomination or denominations of the Certificated Notes to be so issued and appropriate delivery instructions, and (3) such certifications or other information and, in the case of transfers pursuant to Rule 144 under the Securities Act, legal opinions as the Issuer may reasonably require to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act (including the certification requirements intended to ensure that such transfers comply with Rule 144A, as the case may be).

(c)      Except in connection with a Shelf Registration Statement contemplated by and in accordance with the terms of the Registration Rights Agreement, if Notes are issued upon the registration of transfer, exchange or replacement of Notes bearing a Restricted Securities Legend, or if a request is made to remove such a Restrictive Securities Legend from Notes, the Notes so issued shall bear the Restricted Securities Legend, or a Restricted Securities Legend shall not be removed, as the case may be, other than as set forth in Section 2.14.

(d)      Neither the Trustee nor any Agent shall have any responsibility for any actions taken or not taken by the Depositary.

(e)      The Trustee shall have no obligation or duty to monitor, determine or inquire as to compliance with any restrictions on transfer imposed under this Indenture or under applicable law with respect to any transfer of any interest in any Notes (including any transfers between or among the Depositary's participants or beneficial owners of interests in any Global Security) other than to require delivery of such certificates and other documentation as is expressly required by, and to do so if and when expressly required by, the terms of this Indenture and to examine the same to determine substantial compliance as to form with the express requirements hereof.

(f)      Each holder of a Note will be deemed to have represented and agreed for the benefit of the Issuer that it will not transfer such Note, or the Common Shares issuable upon conversion of such Note, into or in Canada, including through the facilities of a Canadian stock exchange, for a period of four months and one day following the Issue Date except pursuant to an available exemption from the prospectus requirements of applicable Canadian securities laws. Any transfer of Notes or Common Shares issuable upon conversion of such Notes into or in Canada shall be made in compliance with applicable Canadian securities laws.

[New York #1699265 v7]

SECTION 2.06.  Replacement Notes.

If the holder of a Note claims that the Note has been lost, destroyed or wrongfully taken, in the absence of notice to the Issuer, the Guarantors or the Trustee that such Notes have been acquired by a protected purchaser the Issuer shall issue, the Guarantors shall endorse and the Trustee shall authenticate a replacement Note if the Issuer's and the Guarantors' requirements are met.  If required by the Trustee, the Issuer or Guarantors as a condition of receiving a replacement Note, the holder of a Note must provide a certificate of loss and an indemnity and/or an indemnity bond sufficient, in the judgment of the Issuer, the Guarantors and the Trustee, to fully protect the Issuer, the Guarantors, the Trustee, any Agent and any authenticating agent from any loss, liability, cost or expense which any of them may suffer or incur if the Note is replaced. The Issuer, the Guarantors and the Trustee may charge the relevant holder for their expenses in replacing any Note.

The Trustee or any authenticating agent may authenticate any such substituted Note, and deliver the same upon the receipt of such security or indemnity as the Trustee, the Issuer, the Guarantors and, if applicable, such authenticating agent may require.  Upon the issuance of any substituted Note, the Issuer and the Guarantors may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith.  In case any Note which has matured or is about to mature, has been called for redemption pursuant to Article 3, has been submitted for repurchase pursuant to Section 4.06 or is about to be converted into Common Shares pursuant to Article 12, shall become mutilated or be destroyed, lost or stolen, the Issuer and the Guarantors may, instead of issuing a substitute Note, pay or authorize the payment of or convert or authorize the conversion of the same (without surrender thereof except in the case of a mutilated Note), as the case may be, if the applicant for such payment or conversion shall furnish to the Issuer and the Guarantors, to the Trustee and, if applicable, to the authenticating agent such security or indemnity as may be required by them to save each of them harmless for any loss, liability, cost or expense caused by or connected with such substitution, and, in case of destruction, loss or theft, evidence satisfactory to the Issuer, the Guarantors, the Trustee and, if applicable, any paying agent or conversion agent of the destruction, loss or theft of such Note and of the ownership thereof.

Every replacement Note (including the related Guarantee) is an additional obligation of the Issuer and the Guarantors and shall be entitled to all the benefits provided under this Indenture equally and proportionately with all other Notes duly issued, authenticated and delivered hereunder.

SECTION 2.07.  Outstanding Notes.

The Notes outstanding at any time are all the Notes properly authenticated by the Trustee except for those canceled by the Trustee, those delivered to it for cancellation, and those described in this Section as not outstanding.

If a Note is replaced pursuant to Section 2.06, it ceases to be outstanding unless the Trustee receives proof satisfactory to it that the replaced Note is held by a protected purchaser.

21

If Notes are considered paid under Section 4.01 or converted under Article 12, they cease to be outstanding and interest (and Additional Interest, if any) on them ceases to accrue.

Subject to Section 2.08 hereof, a Note does not cease to be outstanding because the Issuer, any Guarantor or an Affiliate of the Issuer or any Guarantor holds the Note.

SECTION 2.08. <u>When Treasury Notes Disregarded</u>.

In determining whether the holders of the required principal amount of Notes have concurred in any direction, waiver or consent, Notes owned by the Issuer, a Guarantor or an Affiliate of the Issuer or a Guarantor shall be considered as though they are not outstanding except that for the purposes of determining whether the Trustee shall be protected in relying on any such direction, waiver or consent, only Notes which the Trustee knows are so owned shall be so disregarded; Notes so owned that have been pledged in good faith may be regarded as outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right to act with respect to such Notes, and that the pledgee is not the Issuer or a Guarantor or any Affiliate of the Issuer or a Guarantor.

SECTION 2.09. <u>Temporary Notes</u>.

(a)     Until definitive Notes are ready for delivery, the Issuer may prepare, and the Guarantors shall endorse and the Trustee shall authenticate temporary Notes. Temporary Notes shall be substantially in the form of definitive Notes but may have variations that the Issuer and the Guarantors consider appropriate for temporary Notes and shall be reasonably acceptable to the Trustee. Without unreasonable delay, the Issuer shall prepare, the Guarantors shall endorse and the Trustee shall authenticate definitive Notes in exchange for temporary Notes.

(b)     A Global Security deposited with the Depositary or with the Trustee as custodian for the Depositary pursuant to Section 2.01 shall be transferred to the beneficial owners thereof in the form of Certificated Notes in definitive form only if such transfer complies with Section 2.05 and this Section 2.09.

(c)     Any Global Security or interest thereon that is transferable to the beneficial owners thereof in the form of Certificated Notes in definitive form shall, if held by the Depository, be surrendered by the Depository to the Trustee, without charge, and the Trustee shall authenticate and deliver, upon such transfer of each portion of such Global Security, an equal aggregate principal amount of Notes of authorized denominations in the form of Certificated Notes in definitive form. Any portion of a Global Security transferred pursuant to this Section shall be executed, authenticated and delivered only in denominations of $1,000 and any integral multiple thereof and registered in such names as the Depositary shall direct. Any Notes in the form of Certificated Notes in definitive form delivered in exchange for an interest in the Global Security shall, except as otherwise provided by Section 2.14, bear the Restricted Securities Legend and the Canadian Restricted Securities Legend.

(d)     Prior to any transfer pursuant to Section 2.09(b), the registered holder of a Global Security may grant proxies and otherwise authorize any person, including Agent Members and persons that may hold interests through Agent Members, to take any action which a holder is entitled to take under this Indenture or the Notes.

22

SECTION 2.10.  Cancellation.

The Issuer or the Guarantors at any time may deliver Notes to the Trustee for cancellation.  The Registrar and Paying Agent shall forward to the Trustee any Notes surrendered to them for registration of transfer, exchange or payment.  The Trustee and no one else may cancel Notes surrendered for registration of transfer, exchange, payment, replacement, conversion, redemption, repurchase or cancellation.  Upon written instructions of the Issuer, the Trustee shall destroy and dispose of canceled Notes in accordance with its customary practices in effect from time to time.  The Issuer may not issue new Notes to replace Notes that it has paid or redeemed or that have been delivered to the Trustee for cancellation or that any holder has (i) converted pursuant to Article 12 hereof, (ii) submitted for redemption pursuant to Article 3 hereof or (iii) submitted for repurchase pursuant to Section 4.06 hereof (unless revoked).

SECTION 2.11.  Defaulted Interest.

If the Issuer (and the Guarantors) fail to make a payment of interest on the Notes, it (and the Guarantors) shall pay such defaulted interest plus, to the extent lawful, any interest payable on the defaulted interest (collectively, the "Defaulted Interest").  It may pay such defaulted interest, plus any such interest payable on it, to the persons who are holders of Notes on a subsequent special record date.  The Issuer shall fix any such record date and payment date, and the Issuer shall provide written notice of such record date and payment date to the Trustee.  At least 10 days before any such record date, the Trustee shall mail to holders of the Notes a notice that states the record date, payment date and amount of such interest to be paid.

SECTION 2.12.  CUSIP Number.

The Issuer in issuing the Notes may use a "CUSIP" number, and if so, such CUSIP number shall be included in notices of redemption, repurchase or exchange as a convenience to holders of Notes; *provided, however,* that any such notice may state that no representation is made as to the correctness or accuracy of the CUSIP number printed in the notice or on the Notes and that reliance may be placed only on the other identification numbers printed on the Notes.  The Issuer will promptly notify the Trustee of any change in the CUSIP number.

SECTION 2.13.  Judgment.

Any payment in respect of principal of (and premium, if any) and interest (and Additional Interest, if any) otherwise due on Notes made in Canadian currency by the Issuer or the Guarantors to any holder of Notes (the "Payee") pursuant to a judgment or order of a court or tribunal in Canada shall constitute a discharge of the Issuer only to the extent of the amount of U.S. Dollars on such Notes (the "Purchased Amount") that the Payee, on the date of such payment in Canadian currency, would be able to purchase with the amount so paid based on the noon buying rate for U.S. Dollars for wire transfers quoted on the date of payment or, if such date if not a business day in Toronto, Canada, on the next business day in Toronto, Canada.  If the amount otherwise due to the Payee (the "Amount Due") is greater or less than the Purchased Amount, the Issuer shall indemnify and hold harmless the Payee to the extent that the Amount Due exceeds the Purchased Amount and the Issuer may retain the amount, if any, by which the Amount Due is less than the Purchased Amount.  This indemnity shall constitute a separate and

23

independent obligation from the other obligations contained in this Indenture and shall give rise
to a separate and independent cause of action and shall continue in full force and effect
notwithstanding any judgment or order for a liquidated sum in respect of amounts due under the
Notes or any judgment or order.

SECTION 2.14.   Legends; Restricted Securities Legends.

(a)      Each Note issued hereunder shall, upon issuance, bear the legend set forth in
Section 2.14(a)(i) (the "Restricted Securities Legend") and such legend shall not be removed
except as provided in Section 2.14(a)(iv). Each Note issued hereunder shall, upon issuance, bear
the legend set forth in Section 2.14(a)(iii) (the "Canadian Restricted Securities Legend") and
such legend shall not be removed except as provided in Section 2.14(a)(iii). Each Note that
bears or is required to bear the Restricted Securities Legend and/or the Canadian Restricted
Securities Legend (together with any Common Shares issued upon conversion of the Notes and
required to bear the Restricted Securities Legend set forth in Section 2.14(a)(ii) (the "Restricted
Common Share Legend") and/or the Canadian Restricted Securities Legend set forth in Section
2.14(a)(iii), collectively, the "Restricted Securities") shall be subject to the restrictions on
transfer set forth in this Section 2.14(a), and the holder of each such Restricted Security, by such
holder's acceptance thereof, shall be deemed to have agreed to be bound by all such restrictions
on transfer.

As used in this Section 2.14(a), the term "Transfer" encompasses any sale, pledge,
transfer or other disposition whatsoever of any Restricted Security.

(i)      Restricted Securities Legend for Notes.  Except as provided in
Section 2.14(a)(iv), until the expiration of the holding period applicable to sales of the Notes
under Rule 144(k) under the Securities Act (or any successor provision) as evidenced by a
certificate to such effect from the Issuer to the Trustee, any Note (and all securities issued in
exchange therefor or substitution thereof, other than Common Shares, if any, issued upon
conversion thereof, which shall bear the legend set forth in Section 2.14(a)(ii), if applicable)
shall bear a Restricted Securities Legend in substantially the following form:

THIS SECURITY AND THE COMMON SHARES ISSUABLE UPON CONVERSION
OF THIS SECURITY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE
SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION.  NONE OF THIS
SECURITY (AND RELATED GUARANTEES), THE COMMON SHARES ISSUABLE
UPON CONVERSION OF THIS SECURITY AND ANY INTEREST OR PARTICIPATION
HEREIN OR THEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED,
PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH
REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT
SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY (AND
RELATED GUARANTEES), BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN
BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS
PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH
SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION
DATE") THAT IS TWO YEARS AFTER THE LATER OF THE ORIGINAL ISSUE DATE

[New York #1699265 v7]

HEREOF AND THE LAST DATE ON WHICH THE ISSUER, ANY GUARANTOR OR ANY
AFFILIATE OF THE ISSUER OR ANY GUARANTOR WAS THE OWNER OF THIS
SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY), ONLY (A) TO THE ISSUER
OR ANY GUARANTOR, (B) PURSUANT TO A REGISTRATION STATEMENT THAT
HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG
AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER
THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED
INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT
THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A
QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE
TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (D) PURSUANT TO
ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS
OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S, ANY GUARANTOR'S AND
THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER
PURSUANT TO CLAUSE (D) TO REQUIRE THE DELIVERY OF AN OPINION OF
COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO
EACH OF THEM. THIS LEGEND WILL BE REMOVED UPON THE REQUEST OF THE
HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

        (ii)     Restricted Securities Legend for Common Shares issued upon conversion
of any Note. Except as provided in Section 2.03(a)(iv), until the expiration of the holding period
applicable to sales thereof under Rule 144(k) under the Securities Act (or any successor
provision) as evidenced by a certificate to such effect from the Issuer to the Trustee, any share
certificate representing Common Shares issued upon conversion of such Note shall bear a
Restricted Common Share Legend in substantially the following form:

     THIS SECURITY HAS NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE
SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NEITHER THIS
SECURITY NOR ANY INTEREST OR PARTICIPATION HEREIN MAY BE REOFFERED,
SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE
DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH
TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION. THE
HOLDER OF THIS SECURITY, BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN
BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS
PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH
SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION
DATE") THAT IS TWO YEARS AFTER THE LATER OF THE ORIGINAL ISSUE DATE
HEREOF AND THE LAST DATE ON WHICH THE ISSUER OR ANY AFFILIATE OF THE
ISSUER WAS THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH
SECURITY), ONLY (A) TO THE ISSUER, (B) PURSUANT TO A REGISTRATION
STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES
ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT
TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY
BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A
UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR
THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS

[New York #1699265 v7]

GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (D) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S AND THE TRANSFER AGENT'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (D) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND WILL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

(iii)    Canadian Restricted Securities Legend for Notes Common Shares Issued upon Conversion of any Note. Except as provided in this Section 2.14(a)(iii), until July 29, 2007, each Note (and all securities issued in exchange therefor or substitution thereof, other than Common Shares, if any, issued upon conversion thereof) and any share certificate representing Common Shares issued upon conversion of such Note shall bear a Canadian Restricted Securities Legend in substantially the following form:

UNLESS PERMITTED UNDER CANADIAN SECURITIES LEGISLATION, THE HOLDER OF THIS SECURITY MUST NOT TRADE THIS SECURITY IN CANADA BEFORE JULY 29, 2007.

Notwithstanding the foregoing, the Canadian Restricted Securities Legend may be removed if there is delivered to the Issuer such satisfactory evidence, as may be reasonably required by the Issuer, that neither the Canadian Restricted Securities Legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with applicable Canadian securities laws. Upon provision to the Issuer and the Guarantors of such satisfactory evidence, the Trustee, upon receipt of an Issuer Order, shall authenticate and deliver Notes (including the related Guarantee) that do not bear the Canadian Restricted Securities Legend.

(iv)    Each Note shall bear the Restricted Securities Legend set forth in Section 2.14(a)(i) and each Common Share issued upon conversion of such Note shall bear the Restricted Common Share Legend set forth in Section 2.03(a)(ii), in each case, until the earlier of:

(A)    the expiration of the holding period applicable to sales thereof under Rule 144(k) under the Securities Act (or any successor provision) as evidenced by a certificate to such effect from the Issuer to the Trustee;

(B)    such Note or Common Share has been sold pursuant to a registration statement that has been declared effective under the Securities Act (and that was effective at the time of such sale); or

(C)    in the case of any such Common Share, such Common Share has been issued upon conversion of any Note that has been sold pursuant to a registration statement that has been declared effective under the Securities Act (and that was effective at the time of such sale).

The holder must give notice of the occurrence of any event described in clause (A), (B) or (C) above to the Trustee and any transfer agent for the Common Shares, as applicable.

[New York #1699265 v7]

From:Bank of NY Mellon       12128155802       01/16/2009 11:53       #411 P.033/121

Case 09-10138-MFW    Doc 911-4    Filed 06/16/09    Page 19 of 30

Notwithstanding the foregoing, the Restricted Securities Legend or Restricted Common Share Legend, as the case may be, may be removed if there is delivered to the Issuer such satisfactory evidence, which, in the case of a transfer made pursuant to Rule 144 under the Securities Act, may include an opinion of counsel, as may be reasonably required by the Issuer, that neither the legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A or Rule 144 under the Securities Act or that such Notes are not "restricted" within the meaning of Rule 144 under the Securities Act. Upon provision to the Issuer and the Guarantors of such satisfactory evidence, the Trustee, upon receipt of an Issuer Order, shall authenticate and deliver Notes (including the related Guarantee) that do not bear the legend. The Issuer shall not otherwise be entitled to require the delivery of a legal opinion in connection with any transfer or exchange of Securities

If the Restricted Securities Legend has been removed from a Note or Common Share, as the case may be, as provided above, no other Note or Common Share issued in exchange for all or any part of such Note or Common Share shall bear such legend, unless the Issuer has reasonable cause to believe that such other Note or Common Share is a "restricted security" within the meaning of Rule 144 and instructs the Trustee in writing to cause a Restricted Securities Legend or Restricted Common Share Legend to appear thereon.

Any Note (or security issued in exchange or substitution thereof) as to which such restrictions on transfer shall have expired in accordance with their terms or as to which the conditions for removal of the Restricted Securities Legend set forth in Section 2.14(a)(i) as set forth therein have been satisfied may, upon surrender of such Note for exchange to the Registrar in accordance with the provisions of Section 2.05 hereof, be exchanged for a new Note or Notes, of like tenor and aggregate principal amount, which shall not bear the Restricted Securities Legend required by Section 2.14(a)(i).

(v)     Any Common Share issued upon conversion of a Note as to which such restrictions on transfer shall have expired in accordance with their terms or as to which the conditions for removal of the Restricted Common Share Legend set forth in Section 2.14(a)(ii) or the Canadian Restricted Securities Legend set forth in Section 2.14(a)(iii), as the case may be, have been satisfied may, upon surrender of the certificates representing such Common Shares for exchange in accordance with the procedures of the transfer agent for the Common Shares, be exchanged for a new certificate or certificates for a like aggregate number of Common Shares, which shall not bear the Restricted Securities Legend required by Section 2.14(a)(ii) or the Canadian Restricted Securities Legend required by Section 2.14(a)(iii), as applicable.

(b)     Each Global Security shall also bear the following legend on the face thereof:

THIS NOTE IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF THE DEPOSITARY OR A NOMINEE OF THE DEPOSITARY, WHICH MAY BE TREATED BY THE ISSUER, ANY GUARANTOR, THE TRUSTEE AND ANY AGENT THEREOF AS OWNER AND HOLDER OF THIS NOTE FOR ALL PURPOSES.

[New York #1699265 v7]

ARTICLE 3
REDEMPTION

SECTION 3.01.  Optional Redemption.

(a)     On or after April 15, 2011, the Issuer may, at its option, redeem the 2012 Notes, in whole or from time to time in part, in cash at a repurchase price equal to 100.35% of the principal amount of the 2012 Notes so redeemed, plus accrued and unpaid interest and Additional Interest, if any, up to but excluding the applicable Redemption Date.

(b)     On or after April 15, 2013, the Issuer may, at its option, redeem the 2014 Notes, in whole or from time to time in part, in cash at a repurchase price equal to 100.30% of the principal amount of the 2014 Notes so redeemed, plus accrued and unpaid interest and Additional Interest, if any, up to but excluding the applicable Redemption Date.

SECTION 3.02.  Notices to Trustee.

If the Issuer elects to redeem Notes of any series pursuant to Section 3.01 (the "Optional Redemption"), it shall notify the Trustee in writing at least 45 days before a Redemption Date (unless a shorter period shall be agreed upon in writing by the Trustee) of (i) the Section of this Indenture pursuant to which the redemption shall occur, (ii) the Redemption Date, (iii) the series and principal amount of Notes (if less than all) to be redeemed, (iv) the Redemption Price, (v) the place where such Notes are to be surrendered and (vi) the CUSIP number of the Notes being redeemed.  In case the Issuer elects to redeem Notes pursuant to the optional redemption provisions of Section 3.03 relating to changes in Canadian withholding taxes (the "Change in Tax Redemption"), the Issuer shall similarly notify the Trustee in writing at least 20 days but not more than 60 days before a Redemption Date and in addition furnish to the Trustee an Opinion of Counsel and an Officers' Certificate attesting to such change or amendment of Canadian withholding taxes.

SECTION 3.03.  Redemption for Changes in Canadian Withholding Taxes.

The Issuer may redeem the Notes in whole, but not in part, at its option at any time in cash at a repurchase price equal to 100% of the aggregate principal amount, together with accrued and unpaid interest and Additional Interest, if any, to the Redemption Date and all Additional Amounts then due or becoming due with respect to the Notes on the Redemption Date, in the event the Issuer or NNL (or either of their successors) is, has become or would become obligated to pay, on the next date on which any amount would be payable with respect to the Notes, any Additional Amount as a result of a change or amendment in the laws or treaties (including any regulations promulgated thereunder) of Canada (or any political subdivision or taxing authority thereof or therein) or any change in or new or different position regarding the application, interpretation or administration of such laws, treaties or regulations of the Canada Revenue Agency or another applicable taxing authority of Canada (or any political subdivision thereof or therein) (including a holding, judgment or order by a court of competent jurisdiction) or any proposed change in law that if enacted would be retroactive to a date prior to the Redemption Date, which change is announced or becomes effective on or after March 22, 2007; *provided* that the Issuer or NNL (or either of their successors) (a) delivers to the Trustee an

28

Opinion of Counsel and an Officers' Certificate attesting to such change or amendment and (b) determines, in its business judgment, that such obligation cannot be avoided by the use of reasonable measures available to it.

SECTION 3.04.  Selection of Notes To Be Redeemed.

If less than all the Notes of a series are to be redeemed, the Trustee shall select the Notes of such series to be redeemed by a method that complies with the requirements of the Applicable Securities Exchange (which requirements shall be provided or caused to be provided by the Issuer to the Trustee), if any, on which the Notes are listed or quoted or, if the Notes are not so listed, on a pro rata basis by lot or by any other method that the Trustee considers fair and appropriate.  The Trustee shall make the selection not more than 45 days before the Redemption Date from Notes of such series outstanding and not previously called for redemption.  The Trustee may select for redemption a portion of the principal of any Notes of such series that have a denomination larger than $1,000.  Notes and portions thereof will be redeemed in the amount of $1,000 or integral multiples of $1,000.

Provisions of this Indenture that apply to Notes called for redemption also apply to portions of Notes called for redemption.  The Trustee shall notify the Issuer promptly of the Notes or portions of Notes to be called for redemption.

If any Note selected for partial redemption is converted in part after such selection, the converted portion of such Note shall be deemed (so far as may be deemed) to be the portion to be selected for redemption.  The Notes (or portion thereof) so selected shall be deemed duly selected for redemption for all purposes hereof, notwithstanding that any such Note is converted in whole or in part before the mailing of the notice of redemption.  Upon any redemption of less than all the Notes, the Issuer and the Trustee may treat as outstanding any Notes surrendered for conversion during the period of 15 days next preceding the mailing of a notice of redemption and need not treat as outstanding any Note authenticated and delivered during such period in exchange for the unconverted portion of any Note converted in part during such period.

SECTION 3.05.  Notice of Redemption.

At least 20 days but not more than 60 days before a Redemption Date of an Optional Redemption or a Change in Tax Redemption, the Issuer shall mail by first class mail a notice of redemption to each holder whose Notes are to be redeemed, at such holder's address shown on the Register maintained by the Registrar.

The notice shall identify the Notes to be redeemed and shall state:

      (1)     the Redemption Date;

      (2)     the Redemption Price;

      (3)     the series of Notes being called for redemption;

      (4)     if any Note is being redeemed in part, the portion of the principal amount of such Note to be redeemed and that, after the Redemption Date, upon surrender of such Note, a

29

new Note or Notes of the same series in principal amount equal to the unredeemed portion will be issued in the name of the holder thereof;

     (5)    that Notes called for redemption must be surrendered to the Paying Agent to collect the Redemption Price;

     (6)    that interest and Additional Interest, if applicable, on Notes called for redemption and for which funds have been set apart for payment, ceases to accrue on and after the Redemption Date (unless the Issuer and the Guarantors default in the payment of the Redemption Price);

     (7)    the Section of this Article III pursuant to which the Notes called for redemption are being redeemed;

     (8)    the aggregate principal amount of Notes of the relevant series (if less than all) that are being redeemed;

     (9)    the CUSIP number of the Notes (*provided* that the disclaimer permitted by Section 2.12 may be made);

     (10)    the name and address of the Paying Agent;

     (11)    that Notes called for redemption may be converted at any time prior to the close of business on the last Trading Day immediately preceding the Redemption Date and if not converted prior to the close of business on such date, the right of conversion will be lost; and

     (12)    that in the case of Notes or portions thereof called for redemption on a date that is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Regular Record Date.

     The notice if mailed in the manner herein provided shall be conclusively presumed to have been given, whether or not the holder receives such notice. In any case, failure to give such notice by mail or any defect in the notice to the holder of any Note designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any Note.

     At the Issuer's request, the Trustee shall give notice of redemption in the Issuer's name and at its expense.

SECTION 3.06.  Effect of Notice of Redemption.

     Once notice of redemption is mailed, Notes of any series called for redemption become due and payable on the Redemption Date at the Redemption Price set forth in Section 3.01.

SECTION 3.07.  Deposit of Redemption Price.

     On or before the Redemption Date, the Issuer shall deposit with the Trustee or with the Paying Agent (or, if the Issuer is acting as its own Paying Agent, segregate and hold in trust as

[New York #1699265 v7]

provided in Section 2.03) money sufficient to pay the Redemption Price of and accrued interest (including Additional Interest, if any) on all Notes to be redeemed on that date, provided, however, that any funds deposited on the Redemption Date shall be deposited by the Issuer no later than 10:00 a.m., New York City time on such Redemption Date. The Trustee or the Paying Agent shall promptly return to the Issuer any money not required for that purpose.

On and after the Redemption Date, unless the Issuer and the Guarantors shall default in the payment of the Redemption Price, interest and Additional Interest, if applicable, will cease to accrue on the principal amount of the Notes or portions thereof called for redemption and for which funds have been set apart for payment and such Notes, or portions thereof, shall cease after the close of business on the Trading Day immediately preceding the Redemption Date to be convertible into Common Shares and, except as provided in this Section 3.07, to be entitled to any benefit or security under this Indenture, and the holders thereof shall have no right in respect of such Notes, or portions thereof, except the right to receive the Redemption Price thereof and unpaid interest and Additional Interest, if any, to (but excluding) the Redemption Date. In the case of Notes or portions thereof redeemed on a Redemption Date which is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Regular Record Date.

SECTION 3.08.  Notes Redeemed in Part.

Upon surrender of a Note that is redeemed in part only, the Issuer shall issue, the Guarantors shall endorse and the Trustee shall authenticate and deliver to the holder of a Note a new Note of the same series equal in principal amount to the unredeemed portion of the Note surrendered, at the expense of the Issuer, except as specified in Section 2.05.

SECTION 3.09.  Conversion Arrangement on Call for Redemption.

In connection with any redemption of Notes, the Issuer at its option may arrange for the purchase and conversion of any Notes by an arrangement with one or more investment bankers or other purchasers to purchase such Notes by paying to the Trustee in trust for the holders, on or before the date fixed for redemption, an amount not less than the applicable Redemption Price, together with interest and Additional Interest, if any, accrued to the date fixed for redemption, of such Notes. Notwithstanding anything to the contrary contained in this Article 3, the obligation of the Issuer to pay the Redemption Price of such Notes, together with interest and Additional Interest, if any, accrued to the date fixed for redemption, shall be deemed to be satisfied and discharged to the extent such amount is so paid by the purchasers. If such an agreement is entered into, a copy of which will be filed with the Trustee prior to the date fixed for redemption, any Notes not duly surrendered for conversion by the holders thereof may, at the option of the Issuer, be deemed, to the fullest extent permitted by law, acquired by such purchasers from such holders and (notwithstanding anything to the contrary contained in Article 12) surrendered by such purchasers for conversion, all as of immediately prior to the close of business on the date fixed for redemption (and the right to convert any such Notes shall be deemed to have been extended through such time), subject to payment of the above amount as aforesaid. At the written direction of the Issuer, the Trustee shall hold and dispose of any such amount paid to it in the same manner as it would monies deposited with it by the Issuer for the redemption of Notes.

31

[New York #1699265 v7]

Without the Trustee's prior written consent, no arrangement between the Issuer and such purchasers for the purchase and conversion of any Notes shall increase or otherwise affect any of the powers, duties, responsibilities or obligations of the Trustee as set forth in this Indenture, and the Issuer agrees to indemnify the Trustee from, and hold it harmless against, any loss, liability or expense arising out of or in connection with any such arrangement for the purchase and conversion of any Notes between the Issuer and such purchasers to which the Trustee has not consented in writing, including the costs and expenses incurred by the Trustee in the defense of any claim or liability arising out of or in connection with the exercise or performance of any of its powers, duties, responsibilities or obligations under this Indenture.

ARTICLE 4
COVENANTS

SECTION 4.01.  Payment of Notes.

The Issuer shall pay the principal of and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes.  Principal, interest (including Additional Interest, if any), the Redemption Price and Change of Control Payments shall be considered paid on the date due if the Trustee or Paying Agent (other than the Issuer or a Subsidiary of the Issuer) holds on that date immediately available funds designated for and sufficient to pay all principal, interest (including Additional Interest, if any), the Redemption Price then due or the Change of Control Payment then due.

To the extent lawful, the Issuer shall pay interest (including post-petition interest in any proceeding under any bankruptcy, insolvency or other similar applicable law) on (i) overdue principal, at the rate borne by Notes; and (ii) overdue installments of interest (without regard to any applicable grace period) at the same rate.

SECTION 4.02.  Reports.

(a)     The Issuer will:

    (i)     file with the Trustee, within 15 days after the Issuer is required to file the same with the Commission, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the Commission may from time to time by rules and regulations prescribe) which the Issuer may be required to file with the Commission pursuant to Section 13 or Section 15(d) of the Exchange Act; or, if the Issuer is not required to file information, documents or reports pursuant to either of these Sections, the Issuer will file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such of the supplementary and periodic information, documents and reports that may be required pursuant to Section 13 of the Exchange Act in respect of a security listed and registered on a national securities exchange as may be prescribed from time to time in such rules and regulations;

    (ii)    file with the Trustee and the Commission, in accordance with rules and regulations prescribed from time to time by the Commission, such additional

32

information, documents and reports with respect to compliance thereby with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(iii)    notify the Trustee when Notes of any series are listed on any stock exchange.

(b)    Delivery of such reports, information and documents to the Trustee is for informational purposes only and the Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Trustee is entitled to rely exclusively on Officers' Certificates).

SECTION 4.03.    Compliance Certificate.

The Issuer shall deliver to the Trustee within 120 days after the end of each fiscal year of the Issuer, an Officers' Certificate stating whether the signers know of any Event of Default that occurred during the fiscal year. If any Event of Default shall have occurred, the applicable certificate shall describe the nature of the Event of Default and its current status. The certificate shall be in a form in compliance with the TIA.

SECTION 4.04.    Maintenance of Office or Agency.

The Issuer shall maintain or cause to be maintained the office or agency required under Section 2.02. The Issuer shall give prompt written notice to the Trustee of the location, and any change in the location, of such office or agency not maintained by the Trustee. If at any time the Issuer shall fail to maintain any such required office or agency or shall fail to furnish the Trustee with the address thereof, presentations, surrenders, notices and demands with respect to the Notes may be made or served at the Corporate Trust Office of the Trustee.

The Issuer may also from time to time designate one or more other offices or agencies where the Notes may be presented or surrendered for any or all such purposes and may from time to time rescind such designation; *provided however,* that no such designation shall in any manner relieve the Issuer of its obligation to maintain an office or agency in the borough of Manhattan. The Issuer will give prompt written notice to the Trustee of any such designation and any change in the location of any such other office or agency.

SECTION 4.05.    Reserved.

SECTION 4.06.    Offer to Repurchase Upon a Change of Control.

Following a Change of Control (the date of each such occurrence being the "Change of Control Date"), the Issuer shall notify the holders of Notes in writing of such occurrence and shall make an offer (the "Change of Control Offer") to repurchase all Notes then outstanding at a repurchase price equal to 100% of the aggregate principal amount thereof (the "Change of Control Payment"), plus accrued and unpaid interest and Additional Interest, if any, to, but not including, the Change of Control Payment Date (as defined below).

33

Notice of a Change of Control (the "Issuer Notice") shall be mailed by or at the direction and expense of the Issuer through the Trustee to the holders of Notes as shown on the Register of such holders maintained by the Registrar not more than 30 days after the applicable Change of Control Date at the addresses as shown on the Register of holders maintained by the Registrar, with a copy to the Trustee and the Paying Agent. The Change of Control Offer shall remain open until a specified date (the "Change of Control Offer Termination Date") which is at least 20 Business Days from the date such Issuer Notice is mailed. During the period specified in such notice, holders of Notes of any series may elect to tender their Notes in whole or in part in integral multiples of $1,000. Payment shall be made by the Issuer in the manner elected by the Issuer pursuant to Section 4.06(b) in respect of Notes properly tendered pursuant to this Section on a specified Business Day (the "Change of Control Payment Date") which shall be no earlier than 20 Business Days and no later than 35 Business Days after the date of the Issuer Notice.

The notice, which shall govern the terms of the Change of Control Offer, shall include such disclosures as are required by law and shall state:

(1)    that a Change of Control Offer is being made pursuant to this Section 4.06 and that all Notes will be accepted for payment;

(2)    the event, transaction or transactions that constitute the Change of Control;

(3)    the Change of Control Payment for each Note, the Change of Control Offer Termination Date and the Change of Control Payment Date;

(4)    the Conversion Rate applicable to the Notes of each series and any adjustments to such Conversion Rate;

(5)    that a Note subject to the Change of Control Offer may be converted only if the holder of such Note declines the Change of Control Offer or has withdrawn its acceptance of the Change of Control Offer in accordance with the terms of such Change of Control Offer and the provisions of this Indenture;

(6)    that any Note not accepted for payment will continue to accrue interest and Additional Interest, if applicable, in accordance with the terms thereof;

(7)    that, unless the Issuer and the Guarantors default on making the Change of Control Payment, any Note accepted for payment pursuant to the Change of Control Offer shall cease to accrue interest and Additional Interest, if applicable, on the Change of Control Payment Date and no further interest or Additional Interest shall accrue on or after such date;

(8)    the name and address of the Paying Agent and Conversion Agent;

(9)    that holders electing to have Notes repurchased pursuant to a Change of Control Offer will be required to surrender their Notes, if in certificated form, together with any necessary endorsements, to the Paying Agent at the address specified in the notice prior to 5:00 p.m., New York City time on the Change of Control Offer Termination Date and must complete any form letter of transmittal proposed by the Issuer and acceptable to the Trustee and the Paying Agent (a "Purchase Notice");

34

(10)    that holders of Notes will be entitled to withdraw their election if the Paying Agent receives, not later than 5:00 p.m., New York City time, on the Change of Control Offer Termination Date, a facsimile transmission or letter setting forth the name of the holder, the series and principal amount of Notes the holder delivered for repurchase, the Note certificate number (if any) and a statement that such holder is withdrawing his election to have such Notes purchased;

(11)    that holders whose Notes of any series are repurchased only in part will be issued Notes of such series equal in principal amount to the unpurchased portion of the Notes surrendered;

(12)    the instructions that holders must follow in order to tender their Notes; and

(13)    that in the case of a Change of Control Offer Termination Date that is also an Interest Payment Date, the interest payment and Additional Interest, if any, due on such date shall be paid to the person in whose name the Note is registered at the close of business on the relevant Change of Control Offer Termination Date.

To accept a Change of Control Offer, a holder of Notes subject to such Change of Control Offer must deliver a written notice so as to be received by the Paying Agent no later than 5:00 pm, New York City Time on the Change of Control Offer Termination Date. The required notice must state:

(1)    the series of the Notes to be delivered by the holder for repurchase;

(2)    the certificate numbers of the Notes to be delivered by the holder for repurchase, if applicable;

(3)    the portion of the principal amount of Notes to be repurchased, which portion must be an integral multiple of $1,000; and

(4)    that the holder accepts the Change of Control Offer pursuant to the terms of such Change of Control Offer and the provisions of this Indenture.

A holder may withdraw any acceptance of the Change of Control Offer by delivering to the Paying Agent a written notice of withdrawal prior to the close of business on the Business Day immediately preceding the Change of Control Payment Date. Such notice of withdrawal must state:

(1)    the series of Notes being withdrawn;

(2)    the principal amount of Notes being withdrawn, which must be an integral multiple of $1,000;

(3)    the certificate numbers of the Notes being withdrawn, if applicable; and

(4)    the principal amount, if any, of the Notes that remain subject to acceptance of the Change of Control Offer.

35

[New York #1699265 v7]

On the Business Day following the Change of Control Offer Termination Date the Issuer shall, to the extent lawful, (i) accept for payment all Notes or portions thereof that have been properly tendered (and not properly withdrawn) pursuant to the Change of Control Offer, (ii) by 10:00 a.m., New York City time, deposit with the Paying Agent, an amount in U.S. legal tender ("cash") sufficient to pay the Change of Control Payment with respect to all Notes or portions thereof so tendered and accepted, and an amount in cash equal to accrued and unpaid interest and Additional Interest, if any, and (iii) deliver or cause to be delivered to the Trustee the Notes so accepted together with an Officers' Certificate setting forth the aggregate principal amount of Notes or portions thereof tendered to and accepted for payment by the Issuer.  On the Change of Control Payment Date, the Paying Agent shall mail or deliver (or cause to be transferred by book entry) to the holders of Notes so accepted, the Change of Control Payment, and the Trustee shall promptly authenticate and mail or cause to be transferred by book entry to such holders a new Note of the same series equal in principal amount to any unpurchased portion of the Note surrendered, if any; *provided* that such new Notes will be in a principal amount of $1,000 or an integral multiple thereof.  Any Notes not so accepted shall be promptly mailed or delivered by the Issuer to the holder thereof.

Immediately after the Change of Control Payment Date, (i) each properly tendered Note accepted for purchase in such Change of Control Offer will cease to be outstanding, (ii) interest will cease to accrue on each properly tendered Note, and (iii) all other rights of the holder of a properly tendered Note will terminate, other than the right to receive the Change of Control Payment upon delivery of such Note, in each case, regardless of whether or not book-entry transfer of the Note has been made or the Note has been delivered to the Paying Agent.

In the case of any reclassification, change, amalgamation, consolidation, merger, combination or sale or conveyance to which Section 12.06 applies, in which the Common Shares of the Issuer are changed or exchanged as a result into the right to receive stock, securities or other property or assets (including cash) which includes Common Shares or common shares of another person, then the person formed by such amalgamation, or consolidation or resulting from such merger or which acquires such assets, as the case may be, shall execute and deliver to the Trustee a supplemental indenture (which shall comply with the TIA as in force at the date of execution of such supplemental indenture) modifying the provisions of this Indenture relating to the right of holders of Notes to cause the Issuer to repurchase Notes following a Change of Control, including the applicable provisions of this Section 4.06 and the definition of Change of Control, as determined in good faith by the Issuer (which determination shall be conclusive and binding), to make such provision apply to such common shares and the issuer thereof if different from the Issuer and Common Shares (in lieu of the Issuer and the Common Shares of the Issuer).

Each Change of Control Offer shall be made by the Issuer in compliance with Rule 14e-4 and Rule 13e-4 and all other applicable provisions of the Exchange Act and, with respect to Canadian holders, Canadian securities laws, and all applicable tender offer rules promulgated thereunder and any other applicable securities laws and regulations, to the extent such laws and regulations are then applicable and shall include all instructions and materials that the Issuer shall reasonably deem necessary to enable such holders of Notes to tender their Notes.

Notwithstanding the foregoing, the Issuer may not repurchase any Note in connection with a Change of Control Offer if there has occurred and is continuing an Event of Default with

36

[New York #1699265 v7]

respect to such Note, other than a Default in the payment of the Change of Control Payment with respect to such Note.

Subject to the foregoing, a Change of Control will be an "event of failure" within the meaning of paragraph 212(1)(b)(vii) of the Income Tax Act (Canada) that requires the Issuer to make a Change of Control Offer. For the avoidance of doubt, the occurrence of such an event of failure is not an Event of Default under Section 6.01 hereof.

SECTION 4.07.   Payment of Additional Amounts.

(a)   All payments of principal and premium, if any, and interest and Additional Interest, if any, by the Issuer under this Indenture or by a Guarantor under a Guarantee shall be made without withholding or deduction for, or on account of, Canadian Taxes. In the event withholding or deduction for Canadian Taxes is required by law or by the interpretation or administration thereof by the relevant governmental authority, the Issuer or Guarantors, as the case may be, will pay such Additional Amounts as may be necessary in order that the net amounts received by a holder after such withholding or deduction will not be less than the amount which would have been receivable in respect of the Notes in the absence of such withholding or deduction, except that no such Additional Amounts shall be payable to a holder in respect of a beneficial owner:

(i)   with whom the Issuer or the applicable Guarantor does not deal at arm's length (within the meaning of the Income Tax Act (Canada)) at the time of the making of such payment;

(ii)   who is subject to such Canadian Taxes by reason of its being connected with Canada or any province or territory thereof otherwise than solely by reason of the holder's activity in connection with purchasing the Notes, the mere holding of Notes or the receipt of payments thereunder; or

(iii)   who could lawfully avoid (but has not so avoided) such withholding or deduction by complying, or procuring that any third party complies with, any statutory requirements or by making, or procuring that any third party make, a declaration of non-residence or other similar claim for exemption to any relevant tax authority.

(b)   The Issuer or the applicable Guarantor shall make such withholding or deduction and remit the full amount deducted or withheld to the relevant authority in accordance with applicable law. The Issuer shall furnish to the Trustee, within 30 days after the date the payment of any Canadian Taxes is due pursuant to applicable law, certified copies of tax receipts evidencing that such payment has been made or other evidence of such payment satisfactory to the Trustee. The Issuer or the applicable Guarantor shall indemnify and hold harmless each holder of Notes (other than a holder described under clauses (i), (ii) or (iii) of Section 4.07(a)) and upon written request reimburse each such holder for the amount of (x) any Canadian Taxes so levied or imposed and paid by such holder as a result of payments made under or with respect to the Notes or the Guarantee, and (y) any Canadian Taxes levied or imposed and paid by such holder with respect to any reimbursement under (x) above, but excluding any such Canadian Taxes on such holder's net income or capital.

37

[New York #1699265 v7]

(c)     At least 30 days prior to each date on which any payment under or with respect to the Notes is due and payable, if the Issuer or any Guarantor is obligated to pay Additional Amounts with respect to such payment, the Issuer or the applicable Guarantor shall deliver to the Trustee and the Paying Agent an Officers' Certificate stating the fact that such Additional Amounts will be payable, and the amounts so payable, and certifying that the Issuer or one or both of the Guarantors, as applicable, will pay such deduction or withholding amount to the relevant taxing authority and will set forth such other information necessary to enable the Trustee or the Paying Agent to pay such Additional Amounts to holders of the Notes on such payment date. References in this Indenture to the payment of principal of, premium, interest or Additional Interest on any Note shall be deemed to include the payment of Additional Amounts to the extent that, in such context, Additional Amounts are, were or would be payable.

(d)     Each of the Issuer and the Guarantors agrees to indemnify the Trustee and the Paying Agents for, and to hold each harmless against, any loss, liability or expense reasonably incurred without willful misconduct or bad faith on its part arising out of or in connection with actions taken or omitted by it in reliance on any Officers' Certificate furnished pursuant to this Section 4.07 or any failure to furnish such a certificate.

(e)     The obligations of the Issuer and the Guarantors pursuant to this Section 4.07 shall survive termination or discharge of this Indenture, payment of the Notes and/or resignation or removal of the Trustee or the Paying Agent.

SECTION 4.08.  Registration Rights.

The Issuer agrees that all holders are entitled to the benefits of the Registration Rights Agreement. If a Note and related Guarantees constitute Registrable Securities, and the holder thereof elects to sell such Registrable Securities pursuant to the Shelf Registration Statement (which is defined herein as defined in the Registration Rights Agreement) then, by its acceptance thereof, the holder of such Registrable Securities will have agreed to be bound by the terms of the Registration Rights Agreement relating to the Registrable Securities that are subject of such election.

If liquidated damages in the form of Additional Interest are payable by the Issuer pursuant to the Registration Rights Agreement, the Issuer shall deliver to the Trustee an Officers' Certificate to that effect stating (i) the amount of such Additional Interest that is payable, (ii) the reason why such Additional Interest is payable and (iii) the date on which such Additional Interest is payable. Unless and until a Trust Officer of the Trustee receives such an Officers' Certificate, the Trustee may assume without inquiry that no Additional Interest is payable. If the Issuer has paid Additional Interest directly to the persons entitled to such amounts, the Issuer shall deliver to the Trustee a certificate setting forth the particulars of such payment.

ARTICLE 5
SUCCESSORS

SECTION 5.01.  Amalgamation, Merger, Conveyance, Transfer or Lease.

(a)     So long as the Notes of any series remains outstanding, the Issuer will not amalgamate or merge with any other corporation or enter into any reorganization or arrangement

38