(h)     To the extent that the Issuer has a shareholder rights plan in effect upon conversion of the Notes into Common Shares, holders will receive, in addition to the Common Shares, the rights under the rights plan, unless prior to any conversion, the rights have separated from the Common Shares, in which case the Conversion Rate will be adjusted at the time of separation as if the Issuer distributed, to all holders of Common Shares, any Capital Stock, evidences of indebtedness or assets or property as described above, subject to readjustment in the event of the expiration, termination or redemption of such rights.

(i)     The Issuer may from time to time, to the extent permitted by law and subject to applicable rules of any Applicable Securities Exchange, increase the Conversion Rate of the Notes of any series by any amount for any period of at least 20 days; provided that the Issuer gives at least 15 days' prior notice of such increase to the Trustee and holders of the Notes of such series. The Issuer may make such increases in the Conversion Rate, in addition to those set forth above, as the Issuer's Board of Directors deems advisable to avoid or diminish any income tax to holders of Common Shares resulting from any dividend or distribution of Common Shares (or rights to acquire Common Shares) or from any event treated as such for income tax purposes.

(j)     The Issuer will not be required to adjust the Conversion Rate for any of the transactions described in clauses (a) through (e) of this Section 12.05 if the Issuer instead makes proper provision so that each holder of Notes who converts a Note shall be entitled to receive upon conversion, in addition to Common Shares, the amount and kind of distributions that the holder would have been entitled to receive if the holder had converted the Note immediately prior to the date fixed for determining the shareholders entitled to receive the distribution; *provided, however,* that if, prior to the date that is five years from the Issue Date, holders of Notes would otherwise be entitled to receive, upon conversion of the Notes, any property (including cash) or securities that would not constitute "prescribed securities" for the purpose of clause 212(1) (b) (vii) (E) of the Income Tax Act (Canada), or Tax Act (the "Ineligible Consideration"), pursuant to the operation of the foregoing provisions, such holders shall not be entitled to receive such Ineligible Consideration but the Issuer or the Issuer's successor, as the case may be, shall have the right (at the sole option of the Issuer or its successor, as the case may be) only on the date any Ineligible Consideration would otherwise be due, to deliver either such Ineligible Consideration or "prescribed securities" with a market value comparable to such Ineligible Consideration.

(k)     Notwithstanding the foregoing, no adjustment in the Conversion Price on any Note will be required under clauses (a) through (e) of this Section 12.05 unless such adjustment would require a change of at least 1% of the Conversion Price then in effect with respect to such Note; provided that the Issuer will (i) carry forward any adjustments that are less than 1% of the Conversion Rate with respect to such Note and take them into account when determining subsequent adjustments, (ii) make any carry forward adjustments not otherwise effected with respect to any series of Notes upon conversion of any Notes of such series upon (x) a conversion after a call for redemption of any Notes of such Series, (y) any Change of Control Payment Date applicable to such series of Notes and (z) five Business Days prior to the Maturity Date applicable to such series of Notes.

69

SECTION 12.06.  Effect of Reclassification, Amalgamation, Consolidation, Merger or Sale.

(a)     In the case of (x) any reclassification or change (other than changes resulting from a change in par value or a subdivision or combination) of Common Shares, (y) an amalgamation, merger, consolidation, share exchange or combination involving the Issuer or (z) a sale or conveyance to another person of the Issuer's property and assets as an entirety or substantially as an entirety, in each case as a result of which holders of Common Shares will be entitled to receive shares of stock, other securities, other property or assets (including cash) with respect to or in exchange for Common Shares, except as described in the proviso at the end of this paragraph, the holders of the Notes then outstanding will be entitled thereafter to convert such Notes into the kind and amount of shares of stock, other securities or other property or assets (including cash), which they would have owned or been entitled to receive upon such reclassification, change, amalgamation, merger, consolidation, share exchange, combination, sale or conveyance had such Notes been converted into Common Shares immediately prior to such reclassification, change, amalgamation, merger, consolidation, share exchange, combination, sale or conveyance (assuming, in a case in which the Issuer's shareholders may exercise rights of election, that a holder of Notes would have exercised any rights of election as to the shares of stock, other securities or other property or assets receivable in connection therewith and received per share the kind and amount of consideration received per share by a plurality of electing shareholders); *provided, however,* that if, prior to the date that is five years from the Issue Date, holders of Notes would otherwise be entitled to receive, upon conversion of the Notes, Ineligible Consideration pursuant to the operation of the foregoing provision, such holders shall not be entitled to receive such Ineligible Consideration but the Issuer or its successor, as the case may be, shall have the right (at the sole option of the Issuer or its successor, as the case may be) only on the date any Ineligible Consideration would otherwise be due to deliver either such Ineligible Consideration or "prescribed securities" with a market value comparable to such Ineligible Consideration.

(b)     Upon the occurrence of an event described in clause (a) above, the Issuer or the successor or purchasing corporation, as the case may be, shall execute with the Trustee a supplemental indenture (which shall comply with the TIA as in force at the date of execution of such supplemental indenture if such supplemental indenture is then required to so comply) providing that the Notes shall be convertible into such kind and amount of shares of stock and other securities or property or assets (including cash) receivable upon such reclassification, amalgamation, change, consolidation, merger, share exchange, combination, sale or conveyance by a holder of a number of Common Shares issuable upon conversion of the Notes.  Such supplemental indenture shall provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Article 12.  If, in the case of any such reclassification, change, amalgamation, consolidation, merger, share exchange, combination, sale or conveyance, the stock or other securities and assets receivable thereupon by a holder of Common Shares includes shares of stock or other securities and assets of a corporation other than the successor or purchasing corporation, as the case may be, in such reclassification, change, amalgamation, consolidation, merger, share exchange, combination, sale or conveyance, then such supplemental indenture shall also be executed by such other corporation and shall contain such additional provisions to protect the interests of the holders of the Notes as the Issuer's Board of Directors of the Issuer shall reasonably consider necessary by reason of the foregoing.

70

The Issuer shall cause notice of the execution of such supplemental indenture to be mailed to each holder of Notes at his or her address appearing on the Register of holders for that purpose within 20 days after execution thereof. Failure to deliver such notice shall not affect the legality or validity of such supplemental indenture.

The above provisions of this Section 12.06 shall similarly apply to successive reclassifications, changes, amalgamation, consolidations, mergers, share exchanges, combinations, sales and conveyances.

If this Section 12.06 applies to any event or occurrence, Section 12.05 shall not apply.

SECTION 12.07.  <u>Conversion Upon a Make Whole Change of Control.</u>

(a)    If a Make Whole Change of Control occurs at any time prior to the close of business on the Business Day prior to the Maturity Date applicable to the Notes of any series, a holder surrendering Notes of such series for conversion, at any time during the period from and after the 15th day prior to the anticipated Make Whole Change of Control Effective Date and ending 15 days following the Make Whole Change of Control Effective Date (the "Make Whole Conversion Period") shall be entitled to the increase in the Conversion Rate, if any, specified in Section 12.07(b). The Issuer shall give written notice (the "Make Whole Change of Control Notice") to all holders and the Trustee of any such Make Whole Change of Control and issue a press release providing the same information no later than 15 days prior to the anticipated Make Whole Change of Control Effective Date.

(b)    During the Make Whole Conversion Period, the Conversion Rate applicable to each $1,000 principal amount of a Note shall be increased by an additional number of Common Shares (the "<u>Additional Shares</u>") determined by reference to (i) in the case of a 2012 Note, the table attached as Exhibit C-1 hereto and (ii) in the case of a 2014 Note, the table attached as Exhibit C-2 hereto, in each case, based on the applicable Make Whole Change of Control Effective Date and the Share Price applicable to such Make Whole Change of Control; <u>provided, however,</u> that if the actual Share Price is between two Share Prices in the table or the relevant Conversion Date is between two Make Whole Change of Control Effective Dates in the table, the number of Additional Shares shall be determined by a straight-line interpolation between the number of Additional Shares set forth for the next higher and next lower Share Prices and the two Conversion Dates, as applicable, based on a 365-day year; and provided, further, however, that if (1) the Share Price is greater than $70.00 per Common Share (subject to adjustment in the same manner as set forth in Sections 12.05 and 12.06), no Additional Shares will be added to the Conversion Rate, and (2) the Share Price is less than $24.58 per Common Share (subject to adjustment in the same manner as set forth in Sections 12.05 and 12.06), no Additional Shares will be added to the Conversion Rate.

(c)    The Share Prices set forth in the first row of the tables in Schedule C-1 and Schedule C-2 hereto shall be adjusted as of any date on which the Conversion Rate is adjusted. The adjusted Share Prices shall equal the Share Prices applicable immediately prior to such adjustment, multiplied by a fraction, the numerator of which is the Conversion Rate in effect immediately prior to the adjustment giving rise to the Share Price adjustment and the denominator of which is the Conversion Rate as so adjusted. The number of Additional Shares

71

within the tables in Schedule C-1 and Schedule C-2 shall be adjusted in the same manner as the Conversion Rate as set forth in Sections 12.05 and 12.06.

      (d)    If the Issuer is required to increase the Conversion Rate pursuant to this Section 12.07, Notes surrendered for conversion during the Make Whole Conversion Period will be settled as follows:

      (i)    if the date on which such Notes are surrendered for conversion (the "Make Whole Conversion Date") is prior to the third Trading Day preceding the Make Whole Change of Control Effective Date (the "Make Whole Conversion Cut-Off Date"), the Issuer shall settle such conversion by delivering the number of Common Shares (based on the Conversion Rate without regard to the number of Additional Shares to be added to the Conversion Rate pursuant to Section 2.07(b)) on the third Trading Day immediately following the Make Whole Conversion Cut-Off Date. In addition, as soon as practicable following the Make Whole Change of Control Effective Date (but in any event within five Trading Days of such Make Whole Change of Control Effective Date), the Issuer will deliver the number of Additional Shares to be added to the Conversion Rate pursuant to Section 2.07(b); and

      (ii)    if the Make Whole Conversion Date is on or following the Make Whole Conversion Cut-Off Date, the Issuer shall settle such conversion (based on the Conversion Rate as increased by the Additional Shares pursuant to Section 2.07(b)) on the third Trading Day on the Applicable Securities Exchange immediately following the Make Whole Conversion Date by delivering the number of Common Shares (based on the Conversion Rate without regard to the number of Additional Shares to be added to the Conversion Rate pursuant to Section 2.07(b)) plus the number of Additional Shares to be added to the Conversion Rate pursuant to Section 2.07(b).

SECTION 12.08. <u>Taxes on Shares Issued.</u>

      The issue of Common Shares upon conversions of Notes shall be made without charge to the converting holder for any documentary, stamp or similar issue or transfer tax due on such issue of Common Shares. The Issuer shall not, however, be required to pay any tax which may be payable in respect of any transfer involved in the issue and delivery of stock in any name other than that of the holder of any Note converted, and the Issuer shall not be required to issue or deliver any such stock certificate unless and until the person or persons requesting the issue thereof shall have paid to the Issuer the amount of such tax or shall have established to the satisfaction of the Issuer that such tax has been paid. Nothing herein shall preclude any income tax withholding required by law or regulations.

SECTION 12.09. <u>Reservation of Shares; Shares to be Fully Paid; Listing of Common Shares.</u>

      The Issuer shall provide, free from preemptive rights, out of its authorized but unissued Common Shares or Common Shares held in treasury, sufficient Common Shares to provide for the conversion of the Notes from time to time as such Notes are presented for conversion.

      Before taking any action which would cause an adjustment reducing the Conversion Price below the then par value, if any, of the Common Shares issuable upon conversion of the Notes, the Issuer shall take all corporate action which may, in the opinion of its counsel, be necessary in

72

order that the Issuer may validly and legally issue such Common Shares at such adjusted Conversion Price.

The Issuer covenants that all Common Shares issued upon conversion of Notes will be fully paid and non-assessable by the Issuer and free from all taxes, liens and charges with respect to the issue thereof.

The Issuer further covenants that as long as the Common Shares are listed on the NYSE or the TSX, or its respective successor, the Issuer shall cause all Common Shares issuable upon conversion of the Notes to be eligible for such listing in accordance with, and at the times required under, the requirements of such market.

SECTION 12.10.  Responsibility of Trustee.

The Trustee shall not at any time be under any duty of responsibility to any holders of Notes to determine whether any facts exist which may require any adjustment of the Conversion Price, or with respect to the nature or extent or calculation of any such adjustment when made, or with respect to the method employed, or herein or in any supplemental indenture provided to be employed, in making the same. The Trustee shall not be accountable with respect to the validity or value (or the kind or amount) of any Common Shares, or of any securities or property, which may at any time be issued or delivered upon the conversion of any Note; and the Trustee makes no representations with respect thereto. Subject to the provisions of Section 7.01, the Trustee shall not be responsible for any failure of the Issuer to issue, transfer or deliver any Common Shares or share certificates or other securities or property or cash upon the surrender of any Note for the purpose of conversion or to comply with any of the duties, responsibilities or covenants of the Issuer contained in this Article 12. Without limiting the generality of the foregoing, the Trustee shall not have any responsibility to determine the correctness of any provisions contained in any supplemental indenture entered into pursuant to Section 12.06 relating either to the kind or amount of shares of stock or securities or property (including cash) receivable by holders of Notes upon the conversion of their Notes after any event referred to in such Section 12.06 or to any adjustment to be made with respect thereto, but, subject to the provisions of Section 7.01, may accept as conclusive evidence of the correctness of any such provisions, and shall be fully protected in relying upon, the Officers' Certificate and Opinion of Counsel (which the Issuer shall be obligated to file with the Trustee prior to the execution of any such supplemental indenture) with respect thereto.

SECTION 12.11.  Notice to Holders Prior to Certain Actions.

If

(a)     the Issuer declares a dividend (or any other distribution) on its Common Shares; or

(b)     the Issuer authorizes the granting to the holders of its Common Shares of rights or warrants to subscribe for or purchase any share of any class of Common Shares or any other rights or warrants; or

73

(c)     there is any reclassification of the Common Shares (other than a subdivision or combination of outstanding Common Shares, or a change in par value, or from par value to no par value, or from no par value to par value), or any amalgamation, consolidation, merger or share exchange to which the Issuer is a party and for which approval of any shareholders of the Issuer is required, or of the sale or transfer of all or substantially all of the assets of the Issuer; or

(d)     there is any voluntary or involuntary dissolution, liquidation or winding-up of the Issuer;

then the Issuer shall cause to be filed with the Trustee and to be mailed to each holder of Notes at his or her address appearing on the Register maintained by the Registrar for that purpose as promptly as possible but in any event at least 15 days prior to the applicable date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution or rights or warrants, or, if a record is not to be taken, the date as of which the holders of Common Shares of record to be entitled to such dividend, distribution or rights are to be determined, or (y) the date on which such reclassification, amalgamation, consolidation, merger, share exchange, sale, transfer, dissolution, liquidation or winding-up is expected to become effective or occur, and the date as of which it is expected that holders of Common Shares of record shall be entitled to exchange their Common Shares for securities or other property deliverable upon such reclassification, amalgamation, consolidation, merger, share exchange, sale, transfer, dissolution, liquidation or winding-up.  Failure to give such notice, or any defect therein, shall not affect the legality or validity of such dividend, distribution, reclassification, amalgamation, consolidation, merger, share exchange, sale, transfer, dissolution, liquidation or winding-up.

SECTION 12.12.  Restriction on Common Shares Issuable Upon Conversion.

(a)     Common Shares to be issued upon conversion of Notes prior to the effectiveness of a Shelf Registration Statement shall be physically delivered in certificated form to the holders converting such Notes and the certificate representing such Common Shares shall bear the Restricted Common Share Legend unless removed in accordance with Section 2.14.  Further, Common Shares to be issued upon conversion of Notes prior to July 29, 2007 shall bear the Canadian Restricted Securities Legend unless removed in accordance with Section 2.14.

(b)     If (i) Common Shares to be issued upon conversion of a Note prior to the effectiveness of a Shelf Registration Statement are to be registered in a name other than that of the holder of such Note or (ii) Common Shares represented by a certificate bearing the Restricted Common Shares Legend are transferred subsequently by such holder, then, unless the Shelf Registration Statement has become effective and such shares are being transferred pursuant to the Shelf Registration Statement, the holder must deliver a certificate in substantially the form of the "Assignment Form" set forth on such Note to the transfer agent for the Common Shares identified therein certifying compliance with the restrictions on transfer applicable to such Common Shares and neither the transfer agent nor the registrar for the Common Shares shall be required to register any transfer of such Common Shares not so accompanied by a properly completed certificate.

[New York #1699265 v7]

(c)      Except in connection with a Shelf Registration Statement, if certificates representing Common Shares are issued upon the registration of transfer, exchange or replacement of any other certificate representing Common Shares bearing the Restricted Common Share Legend, or if a request is made to remove such Restricted Common Shares Legend from certificates representing Common Shares, the certificates so issued shall bear the Restricted Common Share Legend, or the Restricted Common Shares Legend shall not be removed, as the case may be, unless there is delivered to the Issuer such satisfactory evidence, which, in the case of a transfer made pursuant to Rule 144 under the Securities Act, may include an opinion of counsel pursuant to the laws in the State of New York and U.S. Federal securities laws and/or applicable Canadian securities laws, as may be reasonably required by the Issuer, that neither the legend nor the restrictions on transfer set forth therein are required to ensure that transfers thereof comply with the provisions of Rule 144A or Rule 144 under the Securities Act or that such Common Shares are securities that are not "restricted" within the meaning of Rule 144 under the Securities Act and that such transfers comply with applicable Canadian securities laws. Upon provision to the Issuer of such reasonably satisfactory evidence, the Issuer shall cause the transfer agent for the Common Shares to countersign and deliver certificates representing Common Shares that do not bear the legend.

SECTION 12.13.  Calculations and Determinations.

Except as otherwise provided in this Article 12, no adjustment need be made for the issuance of Common Shares or any securities convertible into or exchangeable for Common Shares or that carry the right to purchase any of the foregoing. All calculations under this Article 12 shall be made by the Issuer and shall be made to the nearest cent or to the nearest one-hundredth of a share, as the case may be. No adjustment need be made for a change in the par value or no par value of the Common Shares.

The Issuer will be responsible for making all calculations and determinations called for under the Indenture. The Issuer or its agent will make these calculations and determinations in good faith, and, absent manifest error, such calculations and determinations will be final and binding on the holders of the Notes, and the Trustee and the Conversion Agent shall have no responsibility with respect thereto. The Issuer will provide a schedule of these calculations and determinations to the Trustee and the Conversion Agent, and the Trustee and the Conversion Agent shall be entitled to rely upon the accuracy of these calculations without independent verification thereof.

ARTICLE 13
MEETINGS OF HOLDERS OF NOTES

SECTION 13.01.  Purposes for Which Meetings May Be Called.

A meeting of holders of Notes of a series may be called at any time and from time to time pursuant to this Article to make, give or take any Act provided by this Indenture to be made, given or taken by holders of Notes of such series.

75

[New York #1699265 v7]

SECTION 13.02.  Call, Notice and Place of Meetings.

(a)     The Trustee may at any time call a meeting of holders of the Notes of a series for any purpose specified in Section 13.01, to be held at such time and at such place in the borough of Manhattan, the City of New York.  Notice of every meeting of holders of Notes of a series, setting forth the time and place of such meeting and in general terms the Act proposed to be taken at such meeting, shall be given, in the manner provided in Section 10.02, not less than 21 or more than 50 days prior to the date fixed for the meeting.

(b)     If at any time the Issuer or any Guarantor, pursuant to a Board Resolution, or the holders of at least 10% in aggregate principal amount of the outstanding Notes of a series shall have requested the Trustee to call a meeting of the holders of Notes of such series for any purpose specified in Section 13.01, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, and the Trustee shall not have made the first publication of the notice of such meeting within 21 days after receipt of such request or shall not thereafter proceed to cause the meeting to be held as provided herein, then the Issuer or any Guarantor or the holders of Notes of such series in the amount above specified, as the case may be, may determine the time and the place in the borough of Manhattan, the City of New York for such meeting and may call such meeting for such purposes by giving notice thereof as provided in paragraph (a) of this Section.

SECTION 13.03.  Persons Entitled to Vote at Meetings.

(a)     To be entitled to vote at any meeting of holders of Notes of a series, a person shall be: (1) a holder of Notes of such series; or (2) a person appointed by an instrument in writing as proxy for a holder or holders of Notes of such series by such holder or holders.  The only persons who shall be entitled to be present or to speak at any meeting of holders shall be the persons entitled to vote at such meeting and their counsel, any representatives of the Trustee and its counsel and any representatives of the Issuer and the Guarantors and its or their counsel.

SECTION 13.04.  Quorum; Action.

(a)     The persons entitled to vote a majority in aggregate principal amount of Notes of a series shall constitute a quorum for a meeting of holders of Notes of such series.  In the absence of a quorum within 30 minutes of the time appointed for any such meeting, the meeting shall, if convened at the request of holders, be dissolved.  In the absence of a quorum in any other case the meeting may be adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such meeting.  In the absence of a quorum at any such adjourned meeting, such adjourned meeting may be further adjourned for a period of not less than 10 days as determined by the chairman of the meeting prior to the adjournment of such adjourned meeting.  Notice of the reconvening of any adjourned meeting shall be given as provided in paragraph 13.02(a), except that such notice need be given only once not less than five days prior to the date on which the meeting is scheduled to be reconvened.

(b)     Except as limited by the provisions in the third paragraph of Section 9.02, any resolution presented to a meeting or adjourned meeting duly reconvened at which a quorum is present as aforesaid may be adopted only by the affirmative vote of the holders of a majority in

[New York #1699265 v7]

aggregate principal amount of outstanding Notes of a series; provided, however, that, except as
limited by the provisions in the third paragraph of Section 9.02, any resolution with respect to
any action that this Indenture expressly provides may be made, given or taken by the holders of a
specified percentage, which is less than a majority, in aggregate principal amount of outstanding
Notes of such series may be adopted at a meeting or an adjourned meeting duly reconvened and
at which a quorum is present as aforesaid by the affirmative vote of the holders of such specified
percentage in aggregate principal amount of outstanding Notes of such series.

(c)     Any resolution passed or decision taken at any meeting of holders of Notes of a
series duly held in accordance with this Section will be binding on all holders of Notes of such
series, whether or not present or represented at the meeting.

SECTION 13.05.  Determination of Voting Rights; Conduct and Adjournment of Meetings.

(a)     Notwithstanding any other provisions of this Indenture, the Trustee may make
such reasonable regulations as it may deem advisable for any meeting of holders of Notes of a
series in regard to proof of the holding of Notes of such series and of the appointment of proxies
and in regard to the appointment and duties of inspectors of votes, the submission and
examination of proxies, certificates and other evidence of the right to vote, and such other
matters concerning the conduct of the meeting as it shall deem appropriate.  Except as otherwise
permitted or required by any such regulations, the holding of Notes of a series shall be proved in
the manner specified in Section 10.17 and the appointment of any proxy shall be proved in the
manner specified in Section 10.17.  Such regulations may provide that written instruments
appointing proxies, regular on their face, may be presumed valid and genuine without the proof
specified in Section 10.17 or other proof.

(b)     The Trustee shall, by an instrument in writing, appoint a temporary chairman of
the meeting, unless the meeting shall have been called by the Issuer, any Guarantor or by holders
of Notes as provided in Section 13.02(b), in which case the Issuer, such Guarantor or the holders
of Notes calling the meeting, as the case may be, shall in like manner appoint a temporary
chairman.  A permanent chairman and a permanent secretary of the meeting shall be elected by
vote of the persons entitled to vote a majority in aggregate principal amount of outstanding Notes
of such series represented at the meeting.

(c)     At any meeting each holder of a Note of a series or proxy shall be entitled to one
vote for each $1,000 principal amount of Notes of such series held or represented by him;
provided, however, that no vote shall be cast or counted at any meeting in respect of any Notes
challenged as not outstanding and ruled by the chairman of the meeting to be not outstanding.
The chairman of the meeting shall have no right to vote, except as a holder of Notes or proxy.

(d)     Any meeting of holders of Notes of a series duly called pursuant to Section 13.02
at which a quorum is present may be adjourned from time to time by persons entitled to vote a
majority in aggregate principal amount of outstanding Notes of such series, represented at the
meeting, and the meeting may be held as so adjourned without further notice.

[New York #1699265 v7]

SECTION 13.06.  Counting Votes and Recording Action of Meetings.

      The vote upon any resolution submitted to any meeting of holders of Notes of a series shall be by written ballots on which shall be inscribed the signatures of the holders of the Notes of such series or of their representatives by proxy and the principal amounts and serial numbers of outstanding Notes of such series held or represented by them.  The permanent chairman of the meeting shall appoint two inspectors of votes who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in triplicate of all votes cast at the meeting.  A record, at least in triplicate, of the proceedings of each meeting of holders of Notes of a series shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the inspectors of votes on any vote by ballot taken thereat and affidavits by one or more persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was given as provided in Section 13.02 and, if applicable, Section 13.04.  Each copy shall be signed and verified by the affidavits of the permanent chairman and secretary of the meeting and one such copy shall be delivered to the Issuer and the Guarantors and another to the Trustee to be preserved by the Trustee, the latter to have attached thereto the ballots voted at the meeting.  Any record so signed and verified shall be conclusive evidence of the matters therein stated.

[New York #1699265 v7]

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed and attested, all as of the date first above written, signifying their agreements contained in this Indenture.

NORTEL NETWORKS CORPORATION,
    as Issuer

By: _____
    Name:   Katharine B. Stevenson
    Title:   Treasurer

By: _____
    Name:   Gordon A. Davies
    Title:   General Counsel—Corporate and
            Corporate Secretary


NORTEL NETWORKS LIMITED,
    as Guarantor

By: _____
    Name:   Katharine B. Stevenson
    Title:   Treasurer

By: _____
    Name:   Gordon A. Davies
    Title:   General Counsel—Corporate and
            Corporate Secretary


NORTEL NETWORKS INC.,
    as Guarantor

By: _____
    Name:   Karen E. Sledge
    Title:   President


THE BANK OF NEW YORK
    as Trustee

By: _____
    Name:
    Title:

Indenture

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed and attested, all as of the date first above written, signifying their agreements contained in this Indenture.

NORTEL NETWORKS CORPORATION,
as Issuer

By: _____
    Name:  Katharine B. Stevenson
    Title:   Treasurer
By: _____
    Name:  Gordon A. Davies
    Title:   General Counsel—Corporate and
            Corporate Secretary

NORTEL NETWORKS LIMITED,
as Guarantor

By: _____
    Name:  Katharine B. Stevenson
    Title:   Treasurer
By: _____
    Name:  Gordon A. Davies
    Title:   General Counsel—Corporate and
            Corporate Secretary

NORTEL NETWORKS INC.,
as Guarantor

By: _____
    Name:  Karen E. Sledge
    Title:   President

THE BANK OF NEW YORK
as Trustee

By: _____
    Name:
    Title:

Indenture

IN WITNESS WHEREOF, the parties have caused this Indenture to be duly executed and attested, all as of the date first above written, signifying their agreements contained in this Indenture.

NORTEL NETWORKS CORPORATION,
    as Issuer

By: _____
    Name:    Katharine B. Stevenson
    Title:    Treasurer

By: _____
    Name:    Gordon A. Davies
    Title:    General Counsel—Corporate and
             Corporate Secretary


NORTEL NETWORKS LIMITED,
    as Guarantor

By: _____
    Name:    Katharine B. Stevenson
    Title:    Treasurer

By: _____
    Name:    Gordon A. Davies
    Title:    General Counsel—Corporate and
             Corporate Secretary


NORTEL NETWORKS INC.,
    as Guarantor

By: _____
    Name:    Karen E. Sledge
    Title:    President


THE BANK OF NEW YORK
    as Trustee

By: _____
    Name:
    Title:    **NELSON KERCADO**
             **ASSISTANT VICE PRESIDENT**

Indenture

EXHIBIT A

FORM OF 2012 NOTE

(Face of Security)

[Global Securities Legend]

[The following legend shall appear on the face of each Global Security:

THIS NOTE IS A GLOBAL SECURITY WITHIN THE MEANING OF THE INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF THE DEPOSITARY OR A NOMINEE OF THE DEPOSITARY, WHICH MAY BE TREATED BY THE ISSUER, ANY GUARANTOR, THE TRUSTEE AND ANY AGENT THEREOF AS OWNER AND HOLDER OF THIS NOTE FOR ALL PURPOSES.]

[The following legend shall appear on the face of each Global Security for which The Depository Trust Company is to be the Depositary:

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS REQUESTED BY THE AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR REGISTERED NOTES IN DEFINITIVE REGISTERED FORM IN THE LIMITED CIRCUMSTANCES REFERRED TO IN THE INDENTURE, THIS GLOBAL SECURITY MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A NOMINEE OR SUCH SUCCESSOR DEPOSITARY.]

[Restricted Securities Legend]

THIS SECURITY AND THE COMMON SHARES ISSUABLE UPON CONVERSION OF THIS SECURITY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NONE OF THIS SECURITY (AND RELATED GUARANTEES), THE COMMON SHARES ISSUABLE UPON CONVERSION OF THIS SECURITY AND ANY INTEREST OR PARTICIPATION

A-1

HEREIN OR THEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION.  THE HOLDER OF THIS SECURITY (AND RELATED GUARANTEES), BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS TWO YEARS AFTER THE LATER OF THE ORIGINAL ISSUE DATE HEREOF AND THE LAST DATE ON WHICH THE ISSUER, ANY GUARANTOR OR ANY AFFILIATE OF THE ISSUER OR ANY GUARANTOR WAS THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY), ONLY (A) TO THE ISSUER OR ANY GUARANTOR, (B) PURSUANT TO A REGISTRATION STATEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (D) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S, ANY GUARANTOR'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (D) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM.  THIS LEGEND WILL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

[Canadian Restricted Securities Legend]

UNLESS PERMITTED UNDER CANADIAN SECURITIES LEGISLATION, THE HOLDER OF THIS SECURITY MUST NOT TRADE THIS SECURITY IN CANADA BEFORE JULY 29, 2007.

A-2

No. _____

US$ [                    ]
CUSIP 656568 AC 6

## NORTEL NETWORKS CORPORATION

### 1.75% CONVERTIBLE SENIOR NOTE DUE 2012

#### Fully and Unconditionally Guaranteed By

### NORTEL NETWORKS LIMITED

### AND

### NORTEL NETWORKS INC.

promises to pay to CEDE & CO. or registered assigns,

the principal sum of [                    ] U.S. Dollars on April 15, 2012

Interest Payment Dates:       April 15 and October 15, commencing October 15, 2007

Regular Record Dates:       April 1 and October 1

NORTEL NETWORKS CORPORATION

By _____
Name:
Title:


By _____
Name:
Title:
Dated:


#### Certificate of Authentication

This is one of the Notes described in the within-mentioned Indenture.

The Bank of New York,
as Trustee

By _____
Authorized Signatory


A-3

Dated:

A-4

[New York #1699265 v7]

# GUARANTEE

## OF

### NORTEL NETWORKS LIMITED
### AND
### NORTEL NETWORKS INC.

For value received, each of Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI" and, together with NNL, the "Guarantor") hereby fully and unconditionally guarantees, jointly and severally, to the Holder of the Note upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note when and as the same shall become due and payable, whether on April 15, 2012 (the "Maturity Date"), by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the indenture dated as of March 28, 2007 among Nortel Networks Corporation, as issuer (together with any successor person under the Indenture, the "Issuer"), Nortel Networks Limited and Nortel Networks Inc., as guarantors, and The Bank of New York, as trustee (the "Indenture"). In case of the failure of the Issuer to punctually make any such payment of principal, premium, if any, interest, Additional Interest, if any, or Defaulted Interest, if any, each Guarantor, for so long as this Guarantee shall be in effect with respect to such Guarantor, hereby agrees to cause any such payment to be made to or to the order of the Trustee punctually when and as the same shall become due and payable, whether on the Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

Each Guarantor hereby agrees that its obligations hereunder shall be as if it were the principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Note or the Indenture, any failure to enforce the provisions of such Note or the Indenture, or any waiver, modification or indulgence granted to the Issuer with respect thereto, by the Holder of such Note or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest or notice with respect to such Note or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Note and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note or as otherwise described in Section 2.01(g) of the Indenture.

This Guarantee shall be automatically and unconditionally released on the terms set forth in Section 2.01(g) of the Indenture.

Each Guarantor shall be subrogated to all rights of the Holder of such Note and the Trustee against the Issuer in respect of any amounts paid to such Holder by such Guarantor pursuant to the provisions of this Guarantee; *provided, however,* that no Guarantor shall be entitled to enforce, or to receive any payments arising out of or based upon such right of

[New York #1699265 v7]

A-5

subrogation until the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on all Notes shall have been paid in full.

Each Guarantor hereby agrees that its obligations hereunder shall be direct, unconditioned and unsubordinated. The Holder of a guaranteed Note will be entitled to payment under this Guarantee without taking any action whatsoever against the Issuer.

No reference herein to the Indenture and no provision of this Guarantee or of the Indenture shall alter or impair the Guarantee of each Guarantor, which is absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on the Note upon which this Guarantee is endorsed.

This Guarantee shall not be valid or obligatory for any purpose until the certificate of authentication of such Note shall have been manually executed by or on behalf of the Trustee under the Indenture.

All capitalized terms used but not defined in this Guarantee shall have the meanings assigned to them in the Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

Executed and dated the date on the face hereof.

NORTEL NETWORKS LIMITED

By_____
Name:
Title:

By_____
Name:
Title:

Dated:

NORTEL NETWORKS INC.

By_____
Name:
Title:

Dated:

A-6

(Back of Security)

# NORTEL NETWORKS CORPORATION

## 1.75% CONVERTIBLE SENIOR NOTE DUE 2012

**Fully and Unconditionally Guaranteed By**

**NORTEL NETWORKS LIMITED**

**AND**

**NORTEL NETWORKS INC.**

1. INTEREST. Nortel Networks Corporation, a Canadian corporation (the "Issuer"), promises to pay interest on the principal amount of this Note at the rate per annum shown above. The Issuer will pay interest semi-annually in arrears on April 15 and October 15 of each year, beginning October 15, 2007. Interest on the Notes will accrue from the most recent Interest Payment Date to which interest has been paid or, if no interest has been paid, from March 28, 2007. Interest (including any Additional Interest) will be computed on the basis of a 360-day year composed of twelve 30-day months. The yearly rate of interest that is equivalent to the rate payable under the Notes is the rate payable multiplied by the actual number of days in the year and divided by 360 and is disclosed herein solely for purposes of providing the disclosure required by the Interest Act (Canada).

2. METHOD OF PAYMENT. The Issuer will pay interest (and Additional Interest, if any) on the Notes (except defaulted interest) to the person in whose name this Note is registered at the close of business on the April 1 or October 1 immediately preceding the relevant Interest Payment Date (each a "Regular Record Date") (other than with respect to a Note or portion thereof called for redemption on a Redemption Date, or repurchased in connection with a Change of Control on a repurchase date during the period from the close of business on a Regular Record Date to (but excluding) the next succeeding Interest Payment Date, in which case accrued interest (and Additional Interest, if any) shall be payable (unless such Note or portion thereof is converted) to the holder of this Note or portion thereof redeemed or repurchased in accordance with the applicable redemption or repurchase provisions of the Indenture). Holders must surrender Notes to a Paying Agent to collect principal payments. The Issuer will pay the principal of, premium, if any, and interest (including Additional Interest, if any) on the Notes at the office or agency of the Issuer maintained for such purpose, in money of the United States that at the time of payment is legal tender for payment of public and private debts. Until otherwise designated by the Issuer, the Issuer's office or agency maintained for such purpose will be the principal Corporate Trust Office of the Trustee (as defined below). However, the Issuer may pay principal, premium, if any, and interest (including Additional Interest, if any) by check payable in such money, and may mail such check to the holders of the Notes at their respective addresses as set forth in the Register of holders of Notes maintained by the Registrar.

[New York #1699265 v7]

3. **PAYING AGENT AND REGISTRAR.** The Bank of New York (together with any successor Trustee under the Indenture referred to below, the "Trustee"), will act as Conversion Agent, Paying Agent and Registrar. The Issuer may change the Paying Agent, Registrar or co-registrar without prior notice. Subject to certain limitations in the Indenture, the Issuer or any of its Subsidiaries may act in any such capacity.

4. **INDENTURE.** The Issuer issued this Note under an Indenture dated as of March 28, 2007 (the "Indenture") among the Issuer, the Guarantors and the Trustee. The terms of this Note include those stated in the Indenture and those made part of the Indenture by reference to the United States Trust Indenture Act of 1939, as amended (as in effect on the date of this Note, the "TIA"). This Note is subject to, and qualified by, all such terms, certain of which are summarized herein, and holders are referred to the Indenture and the TIA for a statement of such terms. The Notes are unsecured general obligations of the Issuer. Capitalized terms not defined below have the same meaning as is given to them in the Indenture.

5. **REDEMPTIONS.** The Issuer shall have the option to redeem this Note, in whole or from time to time in part, as set forth in Article 3 of the Indenture.

6. **GUARANTEES.** This Note is fully and unconditionally guaranteed by the Guarantors. If, for any reason, the Issuer does not make any payments of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on this Note when due, whether on the Maturity Date, by acceleration, call for redemption, tender pursuant to an offer to repurchase or otherwise, the Guarantors will cause the payment to be made to or to the order of the Trustee. The Guarantees are direct, unconditional, unsecured and unsubordinated obligations of the Guarantors and rank equally and ratably without preference among themselves and at least equally with other senior unsecured obligations of the Guarantors, except to the extent prescribed by law. The holder of a Note will be entitled to payment under the Guarantees without taking any action whatsoever against the Issuer.

7. **CHANGE OF CONTROL.** Upon a Change of Control, the Issuer shall make a Change of Control Offer to repurchase all outstanding Notes at a price payable in cash equal to 100% of the aggregate principal amount of the Notes plus accrued and unpaid interest (and Additional Interest, if any), payable in cash, to, but excluding, the date of repurchase, such offer to be made as provided in the Indenture. To accept the Change of Control Offer, the holder hereof must comply with the terms thereof, including surrendering this Note, together with any completed notice of acceptance required under Section 4.06 of the Indenture as provided in the Indenture, prior to the termination of the Change of Control Offer.

8. **DENOMINATIONS, TRANSFER, EXCHANGE.** The Notes are in registered form without coupons in denominations of $1,000 and integral multiples of $1,000. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. As a condition of transfer, the Registrar and the Trustee may require a holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer and the Guarantors may require a holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer or the Registrar need not exchange or register the transfer of any Note or portion of a Note selected for redemption. Also, the Issuer or the Registrar need not exchange or register the transfer of any Note for a period of 15 days before a selection of Notes to be redeemed.

A-8

[New York #1699265 v7]

9.  PERSONS DEEMED OWNERS.  The registered holder of a Note may be treated as its owner for all purposes.

10. AMENDMENTS AND WAIVERS.  Subject to certain exceptions, the Indenture or the Notes may be amended or supplemented with the consent of the holders of at least a majority in aggregate principal amount of the then outstanding Notes and any existing default may be waived with the consent of the holders of a majority in aggregate principal amount of the then outstanding Notes.

11. DEFAULTS AND REMEDIES.  The Events of Default are set forth in Section 6.01 of the Indenture.

12. TRUSTEE DEALINGS WITH THE ISSUER.  The Trustee or any of its Affiliates, in their individual or any other capacities, may make or continue loans to or guaranteed by, accept deposits from and perform services for the Issuer or its Affiliates and may otherwise deal with the Issuer or its Affiliates as if it were not Trustee.

13. NO RECOURSE AGAINST OTHERS.  No director, officer, employee, shareholder or Affiliate, as such, of the Issuer or any Guarantor shall have any liability for any obligations of the Issuer or any Guarantor under the Notes or the Indenture or any Guarantee or for any claim based on, in respect of or by reason of such obligations or their creation.  Each holder by accepting a Note waives and releases all such liability.  The waiver and release are part of the consideration for the Notes.

14. AUTHENTICATION.  This Note shall not be valid until authenticated by the manual signature of the Trustee or an authenticating agent.

15. ABBREVIATIONS.  Customary abbreviations may be used in the name of a holder or an assignee, such as: TEN CO = tenants in common, TEN ENT = tenants by the entireties, JT TEN = joint tenants with right of survivorship and not as tenants in common, CUST = Custodian and U/G/M/A = Uniform Gifts to Minors Act.

16. CONVERSION.  Subject to and upon compliance with the provisions of the Indenture, the registered holder of this Note has the right at any time on or before the close of business on the last Trading Day prior to the Maturity Date (or in case this Note or any portion hereof is (a) called for redemption prior to such date, before the close of business on the last Trading Day preceding the date fixed for redemption (unless the Issuer defaults in payment of the Redemption Price in which case the conversion right will terminate at the close of business on the date such default is cured) or (b) subject to a duly completed election for repurchase, on or before the close of business on the Change of Control Offer Termination Date (unless the Issuer defaults in payment due upon repurchase or such holder elects to withdraw the submission of such election to repurchase) to convert the principal amount hereof, or any portion of such principal amount which is $1,000 or an integral multiple thereof, into fully paid and non-assessable Common Shares at the conversion rate of 31.25 Common Shares for each $1,000 principal amount of Notes (as adjusted in accordance with the provisions of Article 12 of the Indenture, the "Conversion Rate"), which is equivalent to an initial Conversion Price for each $1,000 principal amount of Notes of $32.00 per Common Share.

A-9

[New York #1699265 v7]

The Issuer shall not issue fractional Common Shares or scrip representing fractions of Common Shares upon any such conversion, but shall make an adjustment therefor in cash based upon the Current Market Price of the Common Shares on the last Trading Day prior to the date of conversion.

17. REGISTRATION RIGHTS AGREEMENT. The holder of this Note is entitled to the benefits of a Registration Rights Agreement, dated March 28, 2007, among the Issuer, the Guarantors and the Initial Purchasers.

18. The Issuer will furnish to any holder upon written request and without charge a copy of the Indenture and the Registration Rights Agreement. Requests may be made to: Nortel Networks Corporation, 195 The West Mall, Toronto, Canada ON M9C 5K1, Attention: Corporate Secretary.

B-10

[New York #1699265 v7]

## FORM OF CONVERSION NOTICE

To:  NORTEL NETWORKS CORPORATION

.  The undersigned registered owner of the Note hereby irrevocably exercises the option to convert this Note, or portion hereof (which has a principal amount of $1,000 or an integral multiple thereof) below designated, into Common Shares of Nortel Networks Corporation in accordance with the terms of the Indenture referred to in this Note, and directs that the Common Shares issuable and deliverable upon the conversion, together with any check in payment for fractional Common Shares and Notes representing any unconverted principal amount hereof, be issued and delivered to the registered holder hereof unless a different name has been indicated below.  If Common Shares or any portion of this Note not converted are to be issued in the name of a person other than the undersigned, the undersigned will pay all transfer taxes payable with respect thereto.  Any amount required to be paid by the undersigned on account of interest, Additional Interest and taxes accompanies this Note.

Dated:                                                              _____

Fill in for registration of Common Shares if to be          _____
delivered, and Notes if to be issued, other than to
and in the name of the registered holder                    _____
(Please Print):

                                                            Signature(s)
                                                            Principal amount to be converted (if less than
                                                            all):

_____
(Name)                                                       $____,000,000

_____
(Street Address)                                             Social Security or other Taxpayer Identification
                                                             Number

_____
(City, State and Zip Code)

Signature Guarantee:

_____

[Signatures must be guaranteed by an eligible Guarantor Institution (banks, brokers, dealers, savings and loan associations and credit unions) with membership in an approved signature guarantee medallion program pursuant to Securities and Exchange Commission Rule 17Ad-15 if Common Shares are to be issued, or Notes are to be delivered, other than to and in the name of the registered holder(s).]

   Completed Notices of Conversion should be delivered to Computershare Investor Services, transfer agent for the Common Shares at [250 Royall Street, Canton Massachusetts 02021].

B-11

[New York #1699265 v7]

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to

_____

(Insert assignee's social security or tax I.D. no.)

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____ agent to transfer this Note
on the books of the Registrar.  The agent may substitute another to act for him.

Your Signature: _____

(Sign exactly as your name appears on the
other side of this Note)

Date: _____

Medallion Signature Guarantee: _____

[FOR INCLUSION ONLY IF THIS NOTE BEARS A RESTRICTED SECURITIES LEGEND]
In connection with any transfer of any of the Notes evidenced by this certificate which are
"restricted securities" (as defined in Rule 144 (or any successor thereto) under the United States
Securities Act of 1933, as amended (the "Securities Act"), the undersigned confirms that such
Notes are being transferred:

CHECK ONE BOX BELOW

(1)        ☐    to the Issuer or any Guarantor;

(2)        ☐    pursuant to and in compliance with Rule 144A under the Securities
Act; or

(3)        ☐    pursuant to an exemption from registration under the Securities
Act provided by Rule 144 thereunder.

Unless one of the boxes is checked, the Registrar will refuse to register any of the Notes
evidenced by this certificate in the name of any person other than the registered
holder thereof; provided, however, that if box (1), (2) or (3) is checked, the
Trustee may require, prior to registering any such transfer of the Notes, such
certifications and other information, and such legal opinions, as the Issuer has

B-12

reasonably requested in writing, by delivery to the Trustee of a standing letter of instruction, to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act; provided that this paragraph shall not be applicable to any Notes which are not "restricted securities" (as defined in Rule 144 (or any successor thereto) under the Securities Act).

Your Signature:      _____

                       (Sign exactly as your name appears on the
                               other side of this Note)

Date: _____

Medallion Signature Guarantee: _____

B-13

[New York #1699265 v7]

# EXHIBIT C-1

*2012 Notes Make-Whole Table*

The following table sets forth the share price and number of make-whole shares of Common Shares to be added to the Conversion Rate per $1,000 principal amount of 2012 Notes:

### Make Whole Change of Control Effective Date

| Share Price on Change of Control Effective Date | March 22, 2007 | April 15, 2008 | April 15, 2009 | April 15, 2010 | April 15, 2011 | April 15, 2012 |
|---|---|---|---|---|---|---|
| $24.58 | 9.4335 | 9.1915 | 8.8207 | 8.2105 | 7.6979 | 9.4335 |
| $27.50 | 7.5097 | 7.1241 | 6.5731 | 5.6631 | 4.0302 | 5.1136 |
| $30.00 | 6.2682 | 5.8110 | 5.1741 | 4.1322 | 1.5884 | 2.0833 |
| $32.50 | 5.2962 | 4.7983 | 4.1187 | 3.0274 | 0.0000 | 0.0000 |
| $35.00 | 4.5247 | 4.0075 | 3.3150 | 2.2306 | 0.0000 | 0.0000 |
| $37.50 | 3.9049 | 3.3832 | 2.6977 | 1.6559 | 0.0000 | 0.0000 |
| $40.00 | 3.4016 | 2.8853 | 2.2195 | 1.2412 | 0.0000 | 0.0000 |
| $45.00 | 2.6470 | 2.1588 | 1.5526 | 0.7240 | 0.0000 | 0.0000 |
| $50.00 | 2.1220 | 1.6724 | 1.1341 | 0.4503 | 0.0000 | 0.0000 |
| $55.00 | 1.7455 | 1.3365 | 0.8638 | 0.3026 | 0.0000 | 0.0000 |
| $60.00 | 1.4682 | 1.0982 | 0.6840 | 0.2205 | 0.0000 | 0.0000 |
| $70.00 | 1.0980 | 0.7954 | 0.4742 | 0.1441 | 0.0000 | 0.0000 |

C-1

[New York #1699265 v7]

### Exhibit C-2

*2014 Notes Make-Whole Table*

The following table sets forth the share price and number of make-whole shares of Common Shares to be added to the Conversion Rate per $1,000 principal amount of 2014 Notes:

**Make Whole Change of Control Effective Date**

| Share Price on Change of Control Effective Date | March 22, 2007 | April 15, 2008 | April 15, 2009 | April 15, 2010 | April 15, 2011 | April 15, 2012 | April 15, 2013 | April 15, 2014 |
|---|---|---|---|---|---|---|---|---|
| $24.58 | 9.4335 | 9.2884 | 9.1086 | 8.8492 | 8.4835 | 7.9404 | 7.6681 | 9.4335 |
| $27.50 | 7.7323 | 7.4910 | 7.2021 | 6.8049 | 6.2470 | 5.3760 | 3.9929 | 5.1136 |
| $30.00 | 6.6219 | 6.3311 | 5.9859 | 5.5202 | 4.8714 | 3.8545 | 1.5653 | 2.0833 |
| $32.50 | 5.7421 | 5.4209 | 5.0424 | 4.5394 | 3.8465 | 2.7736 | 0.0000 | 0.0000 |
| $35.00 | 5.0344 | 4.6963 | 4.3005 | 3.7816 | 3.0764 | 2.0087 | 0.0000 | 0.0000 |
| $37.50 | 4.4577 | 4.1118 | 3.7099 | 3.1894 | 2.4931 | 1.4690 | 0.0000 | 0.0000 |
| $40.00 | 3.9822 | 3.6349 | 3.2343 | 2.7220 | 2.0476 | 1.0885 | 0.0000 | 0.0000 |
| $45.00 | 3.2524 | 2.9142 | 2.5297 | 2.0494 | 1.4387 | 0.6307 | 0.0000 | 0.0000 |
| $50.00 | 2.7269 | 2.4060 | 2.0461 | 1.6066 | 1.0663 | 0.4004 | 0.0000 | 0.0000 |
| $55.00 | 2.3365 | 2.0358 | 1.7030 | 1.3049 | 0.8307 | 0.2813 | 0.0000 | 0.0000 |
| $60.00 | 2.0383 | 1.7584 | 1.4521 | 1.0926 | 0.6762 | 0.2171 | 0.0000 | 0.0000 |
| $70.00 | 1.6193 | 1.3776 | 1.1186 | 0.8238 | 0.4967 | 0.1571 | 0.0000 | 0.0000 |

[New York #1699265 v7]

**EXHIBIT D**

**FORM OF SELLING SECURITYHOLDER NOTICE AND QUESTIONNAIRE**
**NORTEL NETWORKS CORPORATION**
**NORTEL NETWORKS LIMITED**
**NORTEL NETWORKS INC.**

**Notice of Registration Statement**
**and**
**Selling Securityholder Questionnaire**

**[Date]**

    Nortel Networks Corporation (the "Company"), Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI," and together with NNL, the "Guarantors") have filed with the United States Securities and Exchange Commission (the "Commission") a registration statement on Form S-3 (the "Shelf Registration Statement") for the registration and resale under Rule 415 of the United States Securities Act of 1933, as amended (the "Securities Act"), of the Company's 1.75% Convertible Senior Notes due 2012 (the "2012 Notes") and 2.125% Convertible Senior Notes due 2014 (the "2014 Notes," and together with the 2012 notes, the "Notes"), the related guarantees by NNL and initially NNI (the "Guarantees") and the Company's common shares issuable upon conversion of the notes (the "Common Shares"), in accordance with the Registration Rights Agreement, dated as of March 28, 2007 (the "Registration Rights Agreement"), among the Company, the Guarantors and the Initial Purchasers named therein. All capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Registration Rights Agreement.

    In order to have Registrable Securities (as defined herein) included in the Shelf Registration Statement (or a supplement or amendment thereto), this Notice of Registration Statement and Selling Securityholder Questionnaire ("Notice and Questionnaire") must be completed, executed and delivered to the Company at the address set forth herein for receipt ON OR BEFORE **[DEADLINE FOR RESPONSE]**.

    No holder of Registrable Securities will be entitled:

- to be named as a selling securityholder in the Shelf Registration Statement as of the date the Shelf Registration Statement is declared effective or otherwise designated by the Company for use by the Selling Securityholders; or

- to use the prospectus forming a part of the Shelf Registration Statement for offers and resales of Registrable Securities at any time, unless such holder has returned a completed and signed Notice and Questionnaire to the Company before the deadline specified above. Holders of Registrable Securities who have not returned a Notice and Questionnaire by the deadline specified above will be included in the Shelf Registration Statement through a prospectus supplement or a post-effective amendment to the Shelf Registration Statement, subject to restrictions on timing provided in the Registration Rights Agreement.

    Certain legal consequences arise from being named as a selling securityholder in the Shelf Registration Statement and related prospectus. Accordingly, holders and beneficial owners of Registrable Securities are advised to consult their own securities law counsel regarding the consequences of being named or not being named as a selling securityholder in the Shelf Registration Statement and related prospectus.

    "Registrable Securities" shall mean each Note and related Guarantees and the Common Shares until the earlier of (i) the date on which such Note and related Guarantees or the Common Shares have been sold or otherwise transferred pursuant to an effective Shelf Registration Statement; (ii) the date that is two years after the later of the date of original issue of such Note and related Guarantees and the last date that the Company or any of its affiliates was the owner of such Note and related Guarantees (or any predecessor thereto); (iii) the date on which such Note and related Guarantees or the Common Shares may be resold without restriction pursuant to Rule 144(k) under the Securities Act or any successor provision thereto; or (iv) the date such Note and related Guarantees or the Common Shares have been publicly sold pursuant to Rule 144 under the Securities Act or any successor provision thereto.

[New York #1699265 v7]

## ELECTION

The undersigned holder (the "Selling Securityholder") of Registrable Securities hereby elects to include in the Shelf Registration Statement the Registrable Securities beneficially owned by it and listed below in Item (3). The undersigned, by signing and returning this Notice and Questionnaire, agrees to be bound with respect to such Registrable Securities by the terms and conditions of this Notice and Questionnaire and the Registration Rights Agreement as if the undersigned Selling Securityholder were an original party thereto.

Upon any sale of Registrable Securities pursuant to the Shelf Registration Statement, the Selling Securityholder will be required to deliver to the Company (for itself and on behalf of the Guarantors) and the Trustee the Notice of Transfer (completed and signed) set forth in Exhibit 1 to this Notice and Questionnaire.

The Selling Securityholder hereby provides the following information to the Company and represents and warrants that such information is accurate and complete:

(1)  (a)  Full Legal Name of Selling Securityholder:

_____

     (b)  Full Legal Name of Registered Holder (if not the same as in (a) above) of Registrable Securities Listed in Item (3) Below:

_____

     (c)  Full Legal Name of DTC Participant (if applicable and if not the same as (b) above) Through Which Registrable Securities Listed in Item (3) Below Are Held:

_____

(2)  Address for Notices to Selling Securityholder:

_____

_____

_____

Telephone:  _____

Fax:  _____

Contact person:  _____

(3)  Beneficial Ownership of the Securities:

*Except as set forth below in this Item (3), the undersigned Selling Securityholder does not beneficially own any Registrable Securities or Common Shares issued upon conversion, repurchase or redemption of any Registrable Securities.*

     (a)  Principal amount of Registrable Securities (as defined in the Registration Rights Agreement) beneficially owned:

_____

          CUSIP No(s). of such Registrable Securities:

_____

D-2

[New York #1699265 v7]

Number of Common Shares (if any) issued upon conversion, repurchase or redemption of Registrable Securities:

(b)    Principal amount of Securities other than Registrable Securities beneficially owned:

_____

_____

CUSIP No(s). of such other Securities:

_____

Number of Common Shares (if any) issued upon conversion of such other Securities:

_____

(c)    Principal amount of Registrable Securities which the undersigned wishes to be included in the Shelf Registration Statement:

_____

CUSIP No(s). of such Registrable Securities to be included in the Shelf Registration Statement:

_____

Number of Common Shares (if any) issued upon conversion of Registrable Securities which are to be included in the Shelf Registration Statement:

_____

(4)   Beneficial Ownership of Other Securities of the Company or of the Guarantors:

*Except as set forth below in this Item (4), the undersigned Selling Securityholder is not the beneficial or registered owner of any Common Shares or any other securities of the Company or of the Guarantors, other than the Securities and Common Shares listed above in Item (3).*

_____

_____

_____

(5)   Relationships with the Company or the Guarantors:

*Except as set forth below in this Item (5), neither the Selling Securityholder nor any of its affiliates, officers, directors or principal equity holders (5% or more) has held any position or office or has had any other material relationship with the Company or the Guarantors (or their respective predecessors or affiliates) during the past three years.*

State any exceptions here:

_____

_____

_____

D-3

(6)  Nature of the Selling Securityholder:

    (a)  Is the Selling Securityholder a reporting company under the Exchange Act, a majority-owned subsidiary of a reporting company under the Exchange Act or a registered investment company under the Investment Company Act? If so, please state which one.

_____

          If the Selling Securityholder is a majority owned subsidiary of a reporting company, identify the majority stockholder that is a reporting company.

_____

          If the Selling Securityholder is not any of the above, identify the natural person or persons having voting and investment control over the Company's or any Guarantor's securities that the Selling Securityholder owns.

_____

    (b)  Is the Selling Securityholder a registered broker-dealer? Yes ☐   No ☐

          State whether the Selling Securityholder received the Registrable Securities as compensation for underwriting activities and, if so, provide a brief description of the transaction(s) involved. State whether the Selling Securityholder is an affiliate of a broker-dealer and, if so, list the name(s) of the broker-dealer affiliate(s). Yes ☐ No ☐

          If the answer is "Yes," you must answer the following:

          If the Selling Securityholder is an affiliate of a registered broker-dealer, the Selling Securityholder purchased the Registrable Securities (i) in the ordinary course of business and (ii) at the time of the purchase of the Registrable Securities, had no agreements or understandings, directly or indirectly, with any person to distribute the Registrable Securities. Yes ☐   No ☐

          If the answer is "No," state any exceptions here:

_____

_____

_____

          If the answer is "No," this may affect your ability to be included in the registration statement.

(xiv) Plan of Distribution:

*Except as set forth below, the undersigned Selling Securityholder intends to distribute the Registrable Securities listed above in Item (3) only as follows (if at all): Such Registrable Securities may be sold from time to time directly by the undersigned Selling Securityholder or, alternatively, through underwriters, broker-dealers or agents. Such Registrable Securities may be sold in one or more transactions at fixed prices, at prevailing market prices at the time of sale, at varying prices determined at the time of sale or at negotiated prices. Such sales may be effected in transactions (which may involve crosses or block transactions) (i) on any national securities exchange or quotation service on which the Registrable Securities may be listed or quoted at the time of sale, (ii) in the over-the-counter market, (iii) in transactions otherwise than on such exchanges or services or in the over-the-counter market or (iv) through the writing of options. In connection with sales of the Registrable Securities or otherwise, the Selling Securityholder may enter into transactions with broker-dealers, which may in turn engage in short sales of the Registrable Securities in the course of hedging the positions they assume. The Selling Securityholder may also sell Registrable Securities short and deliver Registrable Securities to close out such short positions, or loan or pledge Registrable Securities to broker-dealers that in turn may sell such securities.*

D-4

[New York #1699265 v7]

State any exceptions here:

_____

By signing below, the Selling Securityholder acknowledges that it understands its obligation to comply, and agrees that it will comply, with the prospectus delivery and other provisions of the Securities Act and the Exchange Act and the rules and regulations thereunder, particularly Regulation M. In the event that the Selling Securityholder transfers all or any portion of the Registrable Securities listed in Item (3) above after the date on which this Notice and Questionnaire is provided to the Company (for itself and on behalf of the Guarantors), the Selling Securityholder agrees to notify the transferee(s) at the time of the transfer of its rights and obligations under this Notice and Questionnaire and the Registration Rights Agreement.

By signing below, the Selling Securityholder consents to the disclosure of the information contained herein in its answers to Items (1) through (6) above and the inclusion of such information in the Shelf Registration Statement and related prospectus. The Selling Securityholder understands that such information will be relied upon by the Company and the Guarantors in connection with the preparation of the Shelf Registration Statement and related prospectus.

In accordance with the Selling Securityholder's obligation under Section 3(a) of the Registration Rights Agreement to provide such information as may be required by law for inclusion in the Shelf Registration Statement, the Selling Securityholder agrees to promptly notify the Company (for itself and on behalf of the Guarantors) of any inaccuracies or changes in the information provided herein which may occur subsequent to the date hereof at any time while the Shelf Registration Statement remains in effect. All notices hereunder and pursuant to the Registration Rights Agreement shall be made in writing, by hand-delivery, first-class mail or air courier guaranteeing overnight delivery as follows:

To the Company (for itself and on behalf of the Guarantors):

Nortel Networks Corporation
195 The West Mall
Toronto, Ontario
Canada M9C 5K1
Attn: General Counsel — Corporate and Corporate Secretary
Fax no.: (905) 863-7386

Once this Notice and Questionnaire is executed by the Selling Securityholder and received by the Company (for itself and on behalf of the Guarantors), the terms of this Notice and Questionnaire, and the representations and warranties contained herein, shall be binding on, shall inure to the benefit of and shall be enforceable by the Company, the Guarantors and the Selling Securityholder (with respect to the Registrable Securities beneficially owned by such Selling Securityholder and listed in Item (3) above) and their respective successors, heirs, personal representatives, and assigns. This Agreement shall be governed in all respects by the laws of the State of New York.

IN WITNESS WHEREOF, the undersigned, by authority duly given, has caused this Notice and Questionnaire to be executed and delivered either in person or by its duly authorized agent.

Date: _____

_____

Selling Securityholder
(Print/type full legal name of beneficial owner of Registrable Securities)

By:
Name:
Title:

D-5

[New York #1699265 v7]

PLEASE RETURN THIS COMPLETED AND EXECUTED NOTICE AND QUESTIONNAIRE FOR RECEIPT ON OR
BEFORE [DEADLINE FOR RESPONSE] TO THE COMPANY (FOR ITSELF AND ON BEHALF OF THE
GUARANTORS) AT:

Nortel Networks Corporation
195 The West Mall
Toronto, Ontario
Canada M9C 5K1
Attn: General Counsel—Corporate and Corporate Secretary
Fax no.: (905) 863-7386

[New York #1699265 v7]

The Issuer shall not issue fractional Common Shares or scrip representing fractions of Common Shares upon any such conversion, but shall make an adjustment therefor in cash based upon the Current Market Price of the Common Shares on the last Trading Day prior to the date of conversion.

17. REGISTRATION RIGHTS AGREEMENT.  The holder of this Note is entitled to the benefits of a Registration Rights Agreement, dated March 28, 2007, among the Issuer, the Guarantors and the Initial Purchasers.

18. The Issuer will furnish to any holder upon written request and without charge a copy of the Indenture and the Registration Rights Agreement.  Requests may be made to:  Nortel Networks Corporation, 195 The West Mall, Toronto, Canada ON M9C 5K1, Attention: Corporate Secretary.

A-10

[New York #1699265 v7]

# FORM OF CONVERSION NOTICE

To: NORTEL NETWORKS CORPORATION

The undersigned registered owner of the Note hereby irrevocably exercises the option to convert this Note, or portion hereof (which has a principal amount of $1,000 or an integral multiple thereof) below designated, into Common Shares of Nortel Networks Corporation in accordance with the terms of the Indenture referred to in this Note, and directs that the Common Shares issuable and deliverable upon the conversion, together with any check in payment for fractional Common Shares and Notes representing any unconverted principal amount hereof, be issued and delivered to the registered holder hereof unless a different name has been indicated below. If Common Shares or any portion of this Note not converted are to be issued in the name of a person other than the undersigned, the undersigned will pay all transfer taxes payable with respect thereto. Any amount required to be paid by the undersigned on account of interest, Additional Interest and taxes accompanies this Note.

Dated: _____    _____

Fill in for registration of Common Shares if to be    _____
delivered, and Notes if to be issued, other than to
and in the name of the registered holder    _____
(Please Print):    Signature(s)

Principal amount to be converted (if less than all):

_____    $____,000,000
(Name)

_____    _____
(Street Address)    Social Security or other Taxpayer Identification
Number

_____
(City, State and Zip Code)

Signature Guarantee:

_____

[Signatures must be guaranteed by an eligible Guarantor Institution (banks, brokers, dealers, savings and loan associations and credit unions) with membership in an approved signature guarantee medallion program pursuant to Securities and Exchange Commission Rule 17Ad-15 if Common Shares are to be issued, or Notes are to be delivered, other than to and in the name of the registered holder(s).]

Completed Notices of Conversion should be delivered to Computershare Investor Services, transfer agent for the Common Shares at [250 Royall Street, Canton Massachusetts 02021].

A-11

[New York #1699265 v7]

# ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to

_____

(Insert assignee's social security or tax I.D. no.)

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____ agent to transfer this Note
on the books of the Registrar. The agent may substitute another to act for him.


Your Signature: _____

(Sign exactly as your name appears on the
other side of this Note)

Date: _____

Medallion Signature Guarantee: _____

[FOR INCLUSION ONLY IF THIS NOTE BEARS A RESTRICTED SECURITIES LEGEND]
In connection with any transfer of any of the Notes evidenced by this certificate which are
"restricted securities" (as defined in Rule 144 (or any successor thereto) under the United States
Securities Act of 1933, as amended (the "Securities Act")), the undersigned confirms that such
Notes are being transferred:

CHECK ONE BOX BELOW

(1)          ☐     to the Issuer or any Guarantor;

(2)          ☐     pursuant to and in compliance with Rule 144A under the Securities
                   Act; or

(3)          ☐     pursuant to an exemption from registration under the Securities
                   Act provided by Rule 144 thereunder.

Unless one of the boxes is checked, the Registrar will refuse to register any of the Notes
        evidenced by this certificate in the name of any person other than the registered
        holder thereof; provided, however, that if box (1), (2) or (3) is checked, the
        Trustee may require, prior to registering any such transfer of the Notes, such
        certifications and other information, and such legal opinions, as the Issuer has

A-12

reasonably requested in writing, by delivery to the Trustee of a standing letter of instruction, to confirm that such transfer is being made pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act; provided that this paragraph shall not be applicable to any Notes which are not "restricted securities" (as defined in Rule 144 (or any successor thereto) under the Securities Act).

Your Signature: _____

(Sign exactly as your name appears on the other side of this Note)

Date: _____

Medallion Signature Guarantee: _____

A-13

[New York #1699265 v7]

EXHIBIT B

FORM OF 2014 NOTE

(Face of Security)

[Global Securities Legend]

[The following legend shall appear on the face of each Global Security:

THIS NOTE IS A GLOBAL SECURITY WITHIN THE MEANING OF THE
INDENTURE HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF
THE DEPOSITARY OR A NOMINEE OF THE DEPOSITARY, WHICH MAY BE TREATED
BY THE ISSUER, ANY GUARANTOR, THE TRUSTEE AND ANY AGENT THEREOF AS
OWNER AND HOLDER OF THIS NOTE FOR ALL PURPOSES.]

[The following legend shall appear on the face of each Global Security for which The
Depository Trust Company is to be the Depositary:

UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED
REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY, A NEW YORK
CORPORATION ("DTC"), TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF
TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS
REGISTERED IN THE NAME OF CEDE & CO. OR IN SUCH OTHER NAME AS IS
REQUESTED BY THE AUTHORIZED REPRESENTATIVE OF DTC (AND ANY
PAYMENT IS MADE TO CEDE & CO. OR TO SUCH OTHER ENTITY AS IS REQUESTED
BY AN AUTHORIZED REPRESENTATIVE OR DTC), ANY TRANSFER, PLEDGE OR
OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS
WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS
AN INTEREST HEREIN.

UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR
REGISTERED NOTES IN DEFINITIVE REGISTERED FORM IN THE LIMITED
CIRCUMSTANCES REFERRED TO IN THE INDENTURE, THIS GLOBAL SECURITY
MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A
NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE
DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE
DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A
NOMINEE OR SUCH SUCCESSOR DEPOSITARY.]

[Restricted Securities Legend]

THIS SECURITY AND THE COMMON SHARES ISSUABLE UPON CONVERSION
OF THIS SECURITY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE
SECURITIES LAWS OF ANY STATE OR OTHER JURISDICTION. NONE OF THIS
SECURITY (AND RELATED GUARANTEES), THE COMMON SHARES ISSUABLE
UPON CONVERSION OF THIS SECURITY AND ANY INTEREST OR PARTICIPATION

B-1

[New York #1699265 v7]

HEREIN OR THEREIN MAY BE REOFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, ENCUMBERED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF SUCH REGISTRATION OR UNLESS SUCH TRANSACTION IS EXEMPT FROM, OR NOT SUBJECT TO, SUCH REGISTRATION. THE HOLDER OF THIS SECURITY (AND RELATED GUARANTEES), BY ITS ACCEPTANCE HEREOF, AGREES ON ITS OWN BEHALF AND ON BEHALF OF ANY INVESTOR ACCOUNT FOR WHICH IT HAS PURCHASED SECURITIES, TO OFFER, SELL OR OTHERWISE TRANSFER SUCH SECURITY, PRIOR TO THE DATE (THE "RESALE RESTRICTION TERMINATION DATE") THAT IS TWO YEARS AFTER THE LATER OF THE ORIGINAL ISSUE DATE HEREOF AND THE LAST DATE ON WHICH THE ISSUER, ANY GUARANTOR OR ANY AFFILIATE OF THE ISSUER OR ANY GUARANTOR WAS THE OWNER OF THIS SECURITY (OR ANY PREDECESSOR OF SUCH SECURITY), ONLY (A) TO THE ISSUER OR ANY GUARANTOR, (B) PURSUANT TO A REGISTRATION STAEMENT THAT HAS BEEN DECLARED EFFECTIVE UNDER THE SECURITIES ACT, (C) FOR SO LONG AS THE SECURITIES ARE ELIGIBLE FOR RESALE PURSUANT TO RULE 144A UNDER THE SECURITIES ACT, TO A PERSON IT REASONABLY BELIEVES IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE SECURITIES ACT THAT PURCHASES FOR ITS OWN ACCOUNT OR FOR THE ACCOUNT OF A QUALIFIED INSTITUTIONAL BUYER TO WHOM NOTICE IS GIVEN THAT THE TRANSFER IS BEING MADE IN RELIANCE ON RULE 144A, OR (D) PURSUANT TO ANOTHER AVAILABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF THE SECURITIES ACT, SUBJECT TO THE ISSUER'S, ANY GUARANTOR'S AND THE TRUSTEE'S RIGHT PRIOR TO ANY SUCH OFFER, SALE OR TRANSFER PURSUANT TO CLAUSE (D) TO REQUIRE THE DELIVERY OF AN OPINION OF COUNSEL, CERTIFICATION AND/OR OTHER INFORMATION SATISFACTORY TO EACH OF THEM. THIS LEGEND WILL BE REMOVED UPON THE REQUEST OF THE HOLDER AFTER THE RESALE RESTRICTION TERMINATION DATE.

[Canadian Restricted Securities Legend]

UNLESS PERMITTED UNDER CANADIAN SECURITIES LEGISLATION, THE HOLDER OF THIS SECURITY MUST NOT TRADE THIS SECURITY IN CANADA BEFORE JULY 29, 2007.

B-2

[New York #1699265 v7]

No. _____

US$ [          ]
CUSIP 656568 AD 4

## NORTEL NETWORKS CORPORATION

### 2.125% CONVERTIBLE SENIOR NOTE DUE 2014

#### Fully and Unconditionally Guaranteed By

### NORTEL NETWORKS LIMITED

#### AND

### NORTEL NETWORKS INC.

promises to pay to CEDE & CO. or registered assigns,

the principal sum of [                    ] U.S. Dollars on April 15, 2014

Interest Payment Dates:      April 15 and October 15, commencing October 15, 2007

Regular Record Dates:        April 1 and October 1

NORTEL NETWORKS CORPORATION

By _____
Name:
Title:


By _____
Name:
Title:
Dated:


#### Certificate of Authentication

This is one of the Notes described in the within-mentioned Indenture.

The Bank of New York,
as Trustee

By _____
Authorized Signatory


B-3

[New York #1699265 v7]

Dated:

B-4

# GUARANTEE

## OF

### NORTEL NETWORKS LIMITED
### AND
### NORTEL NETWORKS INC.

For value received, each of Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI" and, together with NNL, the "Guarantor") hereby fully and unconditionally guarantees, jointly and severally, to the Holder of the Note upon which this Guarantee is endorsed and to the Trustee on behalf of each such Holder the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note when and as the same shall become due and payable, whether on April 15, 2014 (the "Maturity Date"), by declaration of acceleration, call for redemption or otherwise, according to the terms thereof and of the indenture dated as of March 28, 2007 among Nortel Networks Corporation, as issuer (together with any successor person under the Indenture, the "Issuer"), Nortel Networks Limited and Nortel Networks Inc., as guarantors, and The Bank of New York, as trustee (the "Indenture"). In case of the failure of the Issuer to punctually make any such payment of principal, premium, if any, interest, Additional Interest, if any, or Defaulted Interest, if any, each Guarantor, for so long as this Guarantee shall be in effect with respect to such Guarantor, hereby agrees to cause any such payment to be made to or to the order of the Trustee punctually when and as the same shall become due and payable, whether on the Maturity Date or by declaration of acceleration, call for redemption or otherwise, and as if such payment were made by the Issuer.

Each Guarantor hereby agrees that its obligations hereunder shall be as if it were the principal debtor and not merely surety, and shall be absolute and unconditional, irrespective of, and shall be unaffected by, any invalidity, irregularity or unenforceability of such Note or the Indenture, any failure to enforce the provisions of such Note or the Indenture, or any waiver, modification or indulgence granted to the Issuer with respect thereto, by the Holder of such Note or the Trustee or any other circumstance which may otherwise constitute a legal or equitable discharge of a surety or guarantor. The Guarantor hereby waives diligence, presentment, demand of payment, filing of claims with a court in the event of merger or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest or notice with respect to such Note or the indebtedness evidenced thereby or with respect to any sinking fund or analogous payment required under such Note and all demands whatsoever, and covenants that this Guarantee will not be discharged except by payment in full of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on such Note or as otherwise described in Section 2.01(g) of the Indenture.

This Guarantee shall be automatically and unconditionally released on the terms set forth in Section 2.01(g) of the Indenture.

Each Guarantor shall be subrogated to all rights of the Holder of such Note and the Trustee against the Issuer in respect of any amounts paid to such Holder by such Guarantor pursuant to the provisions of this Guarantee; *provided, however,* that no Guarantor shall be entitled to enforce, or to receive any payments arising out of or based upon such right of

B-5

[New York #1699265 v7]

subrogation until the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on all Notes shall have been paid in full.

Each Guarantor hereby agrees that its obligations hereunder shall be direct, unconditioned and unsubordinated. The Holder of a guaranteed Note will be entitled to payment under this Guarantee without taking any action whatsoever against the Issuer.

No reference herein to the Indenture and no provision of this Guarantee or of the Indenture shall alter or impair the Guarantee of each Guarantor, which is absolute and unconditional, of the due and punctual payment of the principal of, premium, if any, interest, Additional Interest, if any, or Defaulted Interest, if any, on the Note upon which this Guarantee is endorsed.

This Guarantee shall not be valid or obligatory for any purpose until the certificate of authentication of such Note shall have been manually executed by or on behalf of the Trustee under the Indenture.

All capitalized terms used but not defined in this Guarantee shall have the meanings assigned to them in the Indenture.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, but without giving effect to applicable principles of conflicts of law to the extent that the application of the law of another jurisdiction would be required thereby.

Executed and dated the date on the face hereof.

NORTEL NETWORKS LIMITED

By_____
Name:
Title:

By_____
Name:
Title:

Dated:

NORTEL NETWORKS INC.

By_____
Name:
Title:

Dated:

B-6

[New York #1699265 v7]

(Back of Security)

## NORTEL NETWORKS CORPORATION

## 2.125% CONVERTIBLE SENIOR NOTE DUE 2014

### Fully and Unconditionally Guaranteed By

## NORTEL NETWORKS LIMITED

### AND

## NORTEL NETWORKS INC.

1.  INTEREST.  Nortel Networks Corporation, a Canadian corporation (the "Issuer"), promises to pay interest on the principal amount of this Note at the rate per annum shown above.  The Issuer will pay interest semi-annually in arrears on April 15 and October 15 of each year, beginning October 15, 2007.  Interest on the Notes will accrue from the most recent Interest Payment Date to which interest has been paid or, if no interest has been paid, from March 28, 2007.  Interest (including any Additional Interest) will be computed on the basis of a 360-day year composed of twelve 30-day months.  The yearly rate of interest that is equivalent to the rate payable under the Notes is the rate payable multiplied by the actual number of days in the year and divided by 360 and is disclosed herein solely for purposes of providing the disclosure required by the Interest Act (Canada).

2.  METHOD OF PAYMENT.  The Issuer will pay interest (and Additional Interest, if any) on the Notes (except defaulted interest) to the person in whose name this Note is registered at the close of business on the April 1 or October 1 immediately preceding the relevant Interest Payment Date (each a "Regular Record Date") (other than with respect to a Note or portion thereof called for redemption on a Redemption Date, or repurchased in connection with a Change of Control on a repurchase date during the period from the close of business on a Regular Record Date to (but excluding) the next succeeding Interest Payment Date, in which case accrued interest (and Additional Interest, if any) shall be payable (unless such Note or portion thereof is converted) to the holder of this Note or portion thereof redeemed or repurchased in accordance with the applicable redemption or repurchase provisions of the Indenture).  Holders must surrender Notes to a Paying Agent to collect principal payments.  The Issuer will pay the principal of, premium, if any, and interest (including Additional Interest, if any) on the Notes at the office or agency of the Issuer maintained for such purpose, in money of the United States that at the time of payment is legal tender for payment of public and private debts.  Until otherwise designated by the Issuer, the Issuer's office or agency maintained for such purpose will be the principal Corporate Trust Office of the Trustee (as defined below).  However, the Issuer may pay principal, premium, if any, and interest (including Additional Interest, if any) by check payable in such money, and may mail such check to the holders of the Notes at their respective addresses as set forth in the Register of holders of Notes maintained by the Registrar.

B-7

[New York #1699265 v7]



3. **PAYING AGENT AND REGISTRAR.** The Bank of New York (together with any successor Trustee under the Indenture referred to below, the "Trustee"), will act as Conversion Agent, Paying Agent and Registrar. The Issuer may change the Paying Agent, Registrar or co-registrar without prior notice. Subject to certain limitations in the Indenture, the Issuer or any of its Subsidiaries may act in any such capacity.

4. **INDENTURE.** The Issuer issued this Note under an Indenture dated as of March 28, 2007 (the "Indenture") among the Issuer, the Guarantors and the Trustee. The terms of this Note include those stated in the Indenture and those made part of the Indenture by reference to the United States Trust Indenture Act of 1939, as amended (as in effect on the date of this Note, the "TIA"). This Note is subject to, and qualified by, all such terms, certain of which are summarized herein, and holders are referred to the Indenture and the TIA for a statement of such terms. The Notes are unsecured general obligations of the Issuer. Capitalized terms not defined below have the same meaning as is given to them in the Indenture.

5. **REDEMPTIONS.** The Issuer shall have the option to redeem this Note, in whole or from time to time in part, as set forth in Article 3 of the Indenture.

6. **GUARANTEES.** This Note is fully and unconditionally guaranteed by the Guarantors. If, for any reason, the Issuer does not make any payments of the principal of, premium, if any, interest, Additional Interest, if any, and Defaulted Interest, if any, on this Note when due, whether on the Maturity Date, by acceleration, call for redemption, tender pursuant to an offer to repurchase or otherwise, the Guarantors will cause the payment to be made to or to the order of the Trustee. The Guarantees are direct, unconditional, unsecured and unsubordinated obligations of the Guarantors and rank equally and ratably without preference among themselves and at least equally with other senior unsecured obligations of the Guarantors, except to the extent prescribed by law. The holder of a Note will be entitled to payment under the Guarantees without taking any action whatsoever against the Issuer.

7. **CHANGE OF CONTROL.** Upon a Change of Control, the Issuer shall make a Change of Control Offer to repurchase all outstanding Notes at a price payable in cash equal to 100% of the aggregate principal amount of the Notes, plus accrued and unpaid interest (and Additional Interest, if any), payable in cash, to, but excluding, the date of repurchase, such offer to be made as provided in the Indenture. To accept the Change of Control Offer, the holder hereof must comply with the terms thereof, including surrendering this Note, together with any completed notice of acceptance required under Section 3.06 of the Indenture as provided in the Indenture, prior to the termination of the Change of Control Offer.

8. **DENOMINATIONS, TRANSFER, EXCHANGE.** The Notes are in registered form without coupons in denominations of $1,000 and integral multiples of $1,000. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. As a condition of transfer, the Registrar and the Trustee may require a holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer and the Guarantors may require a holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer or the Registrar need not exchange or register the transfer of any Note or portion of a Note selected for redemption. Also, the Issuer or the Registrar need not exchange or register the transfer of any Note for a period of 15 days before a selection of Notes to be redeemed.

B-8

9. **PERSONS DEEMED OWNERS.** The registered holder of a Note may be treated as its owner for all purposes.

10. **AMENDMENTS AND WAIVERS.** Subject to certain exceptions, the Indenture or the Notes may be amended or supplemented with the consent of the holders of at least a majority in aggregate principal amount of the then outstanding Notes and any existing default may be waived with the consent of the holders of a majority in aggregate principal amount of the then outstanding Notes.

11. **DEFAULTS AND REMEDIES.** The Events of Default are set forth in Section 6.01 of the Indenture.

12. **TRUSTEE DEALINGS WITH THE ISSUER.** The Trustee or any of its Affiliates, in their individual or any other capacities, may make or continue loans to or guaranteed by, accept deposits from and perform services for the Issuer or its Affiliates and may otherwise deal with the Issuer or its Affiliates as if it were not Trustee.

13. **NO RECOURSE AGAINST OTHERS.** No director, officer, employee, shareholder or Affiliate, as such, of the Issuer or any Guarantor shall have any liability for any obligations of the Issuer or any Guarantor under the Notes or the Indenture or any Guarantee or for any claim based on, in respect of or by reason of such obligations or their creation. Each holder by accepting a Note waives and releases all such liability. The waiver and release are part of the consideration for the Notes.

14. **AUTHENTICATION.** This Note shall not be valid until authenticated by the manual signature of the Trustee or an authenticating agent.

15. **ABBREVIATIONS.** Customary abbreviations may be used in the name of a holder or an assignee, such as: TEN CO = tenants in common, TEN ENT = tenants by the entireties, JT TEN = joint tenants with right of survivorship and not as tenants in common, CUST = Custodian and U/G/M/A = Uniform Gifts to Minors Act.

16. **CONVERSION.** Subject to and upon compliance with the provisions of the Indenture, the registered holder of this Note has the right at any time on or before the close of business on the last Trading Day prior to the Maturity Date (or in case this Note or any portion hereof is (a) called for redemption prior to such date, before the close of business on the last Trading Day preceding the date fixed for redemption (unless the Issuer defaults in payment of the Redemption Price in which case the conversion right will terminate at the close of business on the date such default is cured) or (b) subject to a duly completed election for repurchase, on or before the close of business on the Change of Control Offer Termination Date (unless the Issuer defaults in payment due upon repurchase or such holder elects to withdraw the submission of such election to repurchase) to convert the principal amount hereof, or any portion of such principal amount which is $1,000 or an integral multiple thereof, into fully paid and non-assessable Common Shares at the conversion rate of 31.25 Common Shares for each $1,000 principal amount of Notes (as adjusted in accordance with the provisions of Article 12 of the Indenture, the "Conversion Rate"), which is equivalent to an initial Conversion Price for each $1,000 principal amount of Notes of $32.00 per Common Share.

B-9

[New York #1699265 v7]