UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                            : Chapter 11
                                                  :
Nortel Networks Inc., *et al.*,                   : Case No. 09-10138 (KG)
                                                  :
               Debtors.   : Jointly Administered
                                                  : Objection Deadline: June 22, 2009
                                                  : Hearing Date: July 17, 2009 at 11:00 a.m.
                                                  :
                                                  : **RE: D.I. 510 and 901**
                                                  :
---------------------------------------------------------------x

## LIMITED OBJECTION AND RESERVATION OF RIGHTS OF DEKA IMMOBILIEN INVESTMENT GMBH TO EIGHTH NOTICE OF REJECTION OF EXECUTORY CONTRACT(S) AND/OR NONRESIDENTIAL REAL PROPERTY LEASE(S) BY DEBTORS AND DEBTORS IN POSSESSION

Deka Immobilien Investment GmbH ("Deka") hereby files this limited objection and reservation of rights (the "Objection") with respect to the Eighth Notice of Rejection of Executory Contract(s) and/or Nonresidential Real Property Lease(s) By Debtors and Debtors in Possession (D.I. 901) (the "Rejection Notice").[1]

### Introduction

1.    Deka objects to the Rejection Notice because the the above-captioned Debtors (the "Debtors") have subleased a portion of the leased premises, and the subtenant currently occupies a substantial portion of the leased premises. While the Debtors have recently sought to reject the sublease and have indicated on an informal basis that they believe the rejection of the Deka lease terminates the sublease, the rejection of either the Deka lease or the sublease will not necessarily cause the Debtors' subtenant to vacate the leased premises. In such a case, Deka will be forced to incur substantial expense (including lost use of the leased premises and legal fees) after the Debtors purport to reject their lease with Deka. Accordingly, Deka reserves its rights to

---
[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Rejection Notice.

2252252/2

assert as administrative priority claims any damages incurred as a result of the Debtors' failure to vacate the leased premises (through their subtenant). Further, Deka objects to the proposed rejection of the Debtors' lease with Deka to the extent that such a rejection does not provide the Debtors with immediate possession of the leased premises.

2. Deka also objects to the Rejection Notice on the grounds that the Debtors have not, as of the date of the filing of this Objection, removed (i) certain signage affixed to the exterior façade of the leased premises, (ii) a satellite dish that the Debtors installed on the roof of the leased premises, or (iii) furniture the Debtors intend to abandon. Such removal is required by the lease. It is also unclear whether the Debtors intend to turn over the security cards that grant the Debtors and their employees access to the leased premises. As of the filing of this Objection, neither Debtors nor their employees have turned over their security cards to Deka.

**Background**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

4. Upon information and belief, the Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On March 20, 2009, the Court entered the *Order Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto* (D.I. 510) (the "Order").

6. On June 12, 2009, pursuant to the Order, the Debtors filed the Rejection Notice.

2252252/2

7.  Deka is the owner of a nonresidential real property in which debtor Nortel Networks Inc. ("Nortel") leases nonresidential office space (the "Leased Premises") from Deka pursuant to that certain Office Lease Agreement, dated October 4, 2000, by and between GRC Dulles 2, LLC and Nortel Networks Inc, as amended from time to time and as assigned from GRC 2 Dulles, LLC to Deka Immobilien Investment GmbH (the "Deka Lease").

8.  Nortel has subleased a portion of the Leased Premises (the "Subleased Premises") to LanceSoft Inc. ("LanceSoft") pursuant to that certain Sublease Agreement, dated October 1, 2007, by and between Nortel Networks Inc. and LanceSoft Inc. (the "Sublease").

9.  Deka consented to the Sublease pursuant to that certain Consent to Subletting, dated October 1, 2007 by and among Deka Immobilien Investment GmbH, Nortel Networks Inc., and LanceSoft Inc.

10. By the Rejection Notice, the Debtors, among other things, seek to reject the Deka Lease effective June 30, 2009.

11. Pursuant to the Ninth Notice of Rejection of Executory Contracts(s) and/or Nonresidential Real Property Lease(s) by Debtors and Debtors in Possession (D.I. 917) (the "Sublease Rejection Notice"), the Debtors seek to reject the Sublease effective June 30, 2009.

12. As of the date of filing this Objection, LanceSoft continues to occupy the Subleased Premises.

### Limited Objection and Reservation of Rights

13. Deka does not challenge the Debtors' exercise of business judgment for rejecting the Deka Lease. However, for the following reasons, Deka objects to certain aspects of the Rejection Notice.

2252252/2

14. Pursuant to the Rejection Notice, the Debtors, among other things, seek to reject the Deka Lease. Pursuant to the Sublease Rejection Notice, the Debtors seek to reject the Sublease. A rejection of a primary lease results in the termination of any subleases under that primary lease, as the sublessee has no greater rights in the property than the tenant/sublessor. See Chatlos Systems, Inc. v. Kaplan (In re Chatlos Systems, Inc.), 147 B.R. 96 (D. Del. 1992) ("[W]hen a lease is deemed rejected pursuant to § 365(d)(4), any subleases under that primary lease must also be deemed rejected since the sublessee's rights in the property extinguish with those of the sublessor."). Thus, to the extent that the Debtors purport to reject the Deka Lease and the Sublease, this Court should condition such rejection upon the termination of the Sublease. Moreover, to the extent LanceSoft holds over and continues to occupy the premises, any order approving the rejection of the Deka Lease should require that any and all payments made by LanceSoft for its continued occupation of the Subleased Premises after the Proposed Rejection Date should be made directly to Deka and not the Debtors, and unless such funds are received by Deka, Deka holds a valid administrative claim against the Debtors for the use of the Subleased Premises.

15. Pursuant to the Rejection Notice, the Debtors, among other things, seek to reject the Deka Lease effective June 30, 2009. To the extent that the Debtors do not return the keys to the Leased Premises to Deka and have not unequivocally surrendered possession of the premises to Deka on or before June 30, 2009, Deka reserves its rights to assert an administrative claim against the Debtors for rent for July 2009 and any month thereafter until the Debtors return the keys to the Leased Premises to Deka and unequivocally surrender the Leased Premises to Deka.

16. In addition to keys to the Leased Premises, the Debtors received security cards to access the Leased Premises, and the Debtors may have installed combination locks, safes, and/or

vaults on the Leased Premises. The Deka Lease requires that "[a]t the expiration or earlier termination of the Lease Term, the Tenant shall deliver to Landlord all keys and security cards to the Building and the Premises, whether such keys were furnished by Landlord or otherwise procured by Tenant, and shall inform Landlord of the combination of each lock, safe, and vault, if any, in the Premises." Lease at ¶ 25.24. Accordingly, to the extent that the Order only requires the Debtors to return the "keys" to Deka, Deka requests that any order approving the rejection of the Deka Lease be conditioned upon the Debtors' prompt and orderly return of any and all security cards currently held by the Debtors or their employees and upon the Debtors informing Deka of the combination of each lock, safe, and vault, if any, in the Leased Premises.

17. The Debtors purport to abandon certain personal property located at the Leased Premises, including office furniture, minor kitchen appliances, and minor telecommunications equipment. The Deka Lease requires the Debtors "to return the Premises to Landlord as required by [Section 9.3]" at the expiration of the Deka Lease, including removal of all Alterations designated by Deka in writing. Lease at ¶ 9.3. Further, the Deka Lease requires that Deka "shall have the right at Tenant's expense to remove from the Premises" any furniture, furnishings, and trade fixtures, "the removal of which might cause damage to the Premises or the Building or which would normally be removed from the Premises with the assistance of any tool or machinery other than a dolly" or "any Alteration which Landlord designates in writing for removal." Lease at ¶ 9.3. Accordingly, Deka requests that any order approving the rejection of the Deka Lease be conditioned upon the Debtors' prompt and orderly removal of any alterations that Deka has designated in writing. If this Court does not so condition the entry of such an order, Deka reserves its rights to assert an administrative claim under Sections 365(d)(3) and 503(b) of the Bankruptcy Code for the Debtors' failure to leave the Leased Premises in the

2252252/2

condition mandated by the Deka Lease, including, but not limited to, for damages incurred as a result of storing, removing and disposing of property abandoned by the Debtors and for other damages caused to the Leased Premises by the Debtors.

18. Further, Nortel also installed a sign on the exterior façade of the Leased Premises. The Deka Lease requires Nortel "at its sole cost, to remove such sign and repair any damage to the Building caused by said removal to the condition that existed prior to the installation of such sign." Lease at ¶ 10.1(d). Accordingly, Deka requests that any order approving the rejection of the Deka Lease be conditioned upon the Debtors' prompt and orderly removal of the signage installed by Nortel pursuant to the Deka Lease.[2] If this Court does not so condition the entry of such an order, Deka reserves its rights to assert an administrative claim under sections 365(d)(3) and 503(b) of the Bankruptcy Code for Deka's failure to remove the signage from the Leased Premises as mandated by the Deka Lease, including, but not limited to, the costs incurred by Deka to remove such signage and the damages resulting from the removal of such signage.

19. Nortel also installed a satellite dish on the roof of the building at the Leased Premises. The Deka Lease requires that at the end of the lease term Nortel shall remove "the Satellite Dish . . . from the roof of the Building at Tenant's sole cost and expense and that portion of the roof of the Building that has been affected by the Satellite Dish shall be returned to the condition it was in prior to the installation of the Satellite Dish." Lease at ¶ 27.1(a). Accordingly, Deka requests that any order approving the rejection of the Deka Lease be conditioned upon the Debtors' prompt and orderly removal of the satellite dish installed by Nortel on the roof of the Leased Premises pursuant to the Deka Lease. If this Court does not so condition the entry of such an order, Deka reserves its rights to assert an administrative claim

---

[2] Deka reserves its right to file all appropriate claims in this case on account of, among other things, the Deka Lease, any rejection of the Deka Lease, the Debtors' use of the Leased Premises, and any costs incurred by Deka in removing the Debtors' property, signage, and satellite dish from the Leased Premises.

6

2252252/2

under sections 365(d)(3) and 503(b) of the Bankruptcy Code for Deka's failure to remove the satellite from the Leased Premises as mandated by the Deka Lease, including, but not limited to, the costs incurred by Deka to remove such satellite dish and the damages resulting from the removal of such satellite dish.

20. Pursuant to the Order, "abandoned property may be retained or disposed of by the landlord without liability owed to the Debtors or third parties . . . ." Order, at ¶ 2.G. However, it is unclear whether the Order was served on all third-parties that may claim an interest in the abandoned property. Accordingly, any order approving the rejection of the Deka Lease should provide, to the extent such order also provides for the abandonment of the Abandoned Personal Property, that Deka has an administrative claim to the extent Deka incurs any expense or incurs any liability as a result of the Debtors or third parties claiming an interest in the Abandoned Personal Property.

21. Deka reserves all of its rights to assert administrative and other rejection damage claims in this case, including, without limitation, administrative claims arising from damages incurred other than as described above.

**WHEREFORE**, Deka respectfully requests that the Court enter an order: (a) sustaining this Objection; (b) conditioning any order rejecting the Deka Lease on the termination of the Sublease; (c) conditioning any order rejecting the Deka Lease on the Debtors removing any signage and any satellite dish installed by the Debtors from the Leased Premises; (d) conditioning any order rejecting the Deka Lease on the Debtors returning all security cards to Deka and providing Deka with the combination to any lock, safe, or vault located at the Premises; (e) providing Deka with an administrative claim to the extent that Deka incurs any expense or incurs any liability as a result of the Debtors or third parties claiming an interest in

7

the Abandoned Personal Property; (f) requiring the Debtors to perform all other obligations under the Deka Lease with respect to vacating the Leased Premises; and (g) granting Deka such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: June 19, 2009

MORRIS JAMES

/s/ 

Stephen M. Miller (DE Bar No. 2610)
Carl N. Kunz, III (DE Bar No. 3201)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899
Telephone: (302) 888-6800
Facsimile: (302) 571-1750
E-mail: smiller@morrisjames.com
E-mail: ckunz@morrisjames.com

and

John F. Isbell
Thaddeus D. Wilson
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
E-mail: jisbell@kslaw.com
E-mail: thadwilson@kslaw.com

*Attorneys for Deka Immobilien Investment GmbH*