**Exhibit B**

**Declaration of George Riedel**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                 Debtors. : Jointly Administered
:
: **RE: D.I. ____**
:
------------------------------------------------------------X

**DECLARATION OF GEORGE RIEDEL IN SUPPORT OF DEBTORS' MOTION
FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO
THE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING
THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING
A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING
THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION
AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF
CERTAIN DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR THE
SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE
OF CERTAIN ASSETS OF DEBTORS' CDMA AND LTE BUSINESS FREE AND
CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS
AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

I, George Riedel, declare under penalty of perjury as follows:

1. I am Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL"), direct corporate parent of Nortel Networks, Inc. ("NNI" and, together with the other above-captioned debtors, the "Debtors" or the "U.S. Debtors"). I have held these positions since February 2006.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2.  I submit this declaration in support of the Debtors' motion (the "Sale Motion")[2] for orders (i) authorizing and approving (a) the Debtors' entry into that certain Asset Sale Agreement dated as of June 19, 2009 among NNI, NNL, NNC and certain of their affiliates, including Nortel Networks International Inc. ("NNII"), as sellers (the "Sellers"), and Nokia Siemens Networks B.V. as purchaser (together with its designees, "Nokia Siemens Networks" or the "Purchaser") for the sale of certain CDMA and LTE assets as described therein (the "Assets") as a "stalking-horse" purchase agreement (the "Agreement"); (b) authorizing and approving the Bidding Procedures for the sale of the Assets pursuant to the Agreement; (c) authorizing and approving the terms and conditions of the Break-Up Fee and Expense Reimbursement, including granting administrative expense status to the Break-Up Fee and Expense Reimbursement to be paid by the Sellers to the Purchaser; (d) approving the form and manner of the Notice Procedures; (e) approving the Assumption and Assignment Procedures; (f) authorizing the Debtors to file certain documents under seal, and (g) setting the time, date and place of a hearing to consider the Sale Motion and (ii) authorizing and approving (a) the sale of the Debtors' right, title and interest in the Assets free and clear of all Liens, Claims and Interests, pursuant to section 363 of the Bankruptcy Code, except as set forth in the Agreement and (b) the assumption and assignment and sublease of certain executory contracts and the assumption and sublease of certain real estate leases pursuant to section 365 of the Bankruptcy Code; and (iii) granting them such other and further relief as the Court deems just and proper. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the Debtors' management and professionals or learned from my review of relevant documents or upon my opinion based on my experience and

---

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

knowledge of the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

3. I have participated in or was informed of Nortel's exploration of opportunities to sell the Assets that have since resulted in the negotiations and execution of the Agreement among NNI, NNL, NNC and certain of their affiliates, including NNII, as Sellers and Nokia Siemens Networks as Purchaser, dated as of June 19, 2009.

4. Nortel's Carrier Network business ("Carrier") offers wireline and wireless networks that help service providers and cable operators supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices. The Carrier portfolio includes 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA"), and its research and development efforts have included innovative technologies focused in the areas of 4G broadband wireless, including Long Term Evolution ("LTE"), an evolving networking standard for which Nortel has completed early trials with customers.

5. The business environment in which the Debtors operate their Carrier business is highly competitive. While Nortel ranked second globally in CDMA revenues in 2008 according to the Dell'Oro Group and has benefited from customer network upgrades to 3G technology like CDMA2000 1x and CDMA EV-DO Rev A, and it is clear that significant value exists in the CDMA and LTE aspects of the Carrier business, the full value of these assets cannot be realized by attempting to operate it through the process of restructuring. The Carrier technology is evolving over time and the Carrier business requires investments of R&D and capital to realize

the most value from the business and its customer relationships. Nortel has concluded that such value is best maximized through the sale of the CDMA and LTE assets to a buyer who can leverage off of its own existing customer relationships and the acquired customer relationships, as well as investments in technology in order to develop the next generation of products and services.

6. Nortel has from time to time over the last several years explored the possibility of divesting its CDMA and LTE assets. While none of the contemplated transactions ever came to fruition, the myriad negotiations gave Nortel's management a clear concept of the potential market for the Carrier assets, as well as the assets' value to the major market participants. In addition to the Purchaser, Nortel's primary market competitors in the CDMA and LTE business include Ericsson, Alcatel-Lucent, Motorola, Huawei and ZTE.

7. Prior to the Petition Date, Nortel engaged in discussions with various of its market competitors regarding the potential sale of the Carrier business. Since the Petition Date, Nortel resumed discussions with the Purchaser. The Debtors and their investment banker, Lazard Frères & Co., also began seeking prospective purchasers both within the Debtors' industry and among potential strategic investment entities. Prior to signing the Agreement, the Debtors contacted their significant strategic competitors in the Carrier business and engaged in extensive negotiations with one other strategic competitor regarding the terms of a potential transaction.

8. I believe, based on the Debtors' long-term consideration of potential transactions involving the Carrier business and after re-canvassing the marketplace since the commencement of these chapter 11 cases, that that the proposed transaction with the Purchaser represents the highest and best proposal available for the CDMA and LTE assets, subject to the receipt of a better bid through the auction process contemplated in the Sale Motion.

9. The potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold. While it is clear that the Assets have significant value, the full value of the Assets may not be realized if a sale is not consummated quickly.

10. The Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Agreement if certain milestones in the sale process are not timely met. For example, if the Court does not approve the Bidding Procedures within twelve days of the date of the Agreement, the Purchaser may terminate the Agreement. For these reasons, the expeditious sale of the Assets is critical to the maximization of the value of the Debtors' assets and, in turn, to a recovery for the Debtors' estates.

11. As part of the Sale Motion, the Debtors seek authority to file certain notices identifying their Customer Contracts under seal. A significant aspect of the value of the Business and the Assets is the established relationships the Debtors maintain with hundreds of customers with whom they have entered into the contracts at issue in the Sale Motion, in addition to other contracts related to the Assets but not at issue in the Sale Motion. These Customer Contracts are of critical value not only to any prospective purchaser of the Customer Contracts but also to the Debtors' other businesses.

12. If a list of counterparties to the Debtors' Customer Contracts were to be made publicly available, I believe that the value of the Assets would decline further, and as a result, the Purchaser may become less likely to consummate the transaction.

13. In addition, publicizing such a list would disclose confidential proprietary information enabling competitors of the Debtors to solicit such customers for the sale of

competing products and services, which would be detrimental to the preservation of the value of the Debtors' estates.

14. Accordingly, I believe the best interests of the Debtors and their creditors require that the sale of the Assets and contracts be completed as expeditiously as possible, and that the Court approve procedures by which the sale can be carried out without publicly divulging the names of the counterparties to the Customer Contracts.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: June 19, 2009
      New York, NY

_____
George Riedel