## Exhibit C

**Proposed Form of Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------X
                                            :
                                            :     Chapter 11
                                            :
In re                                       :
                                            :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹              :
                                            :     Jointly Administered
                        Debtors.            :
                                            :     RE: D.I. _____
                                            :
--------------------------------------------------------X
```

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363
AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET
SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE
BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A
BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING
THE NOTICE PROCEDURES, (E) AUTHORIZING THE FILING OF CERTAIN
DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR THE SALE HEARING**

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated

debtors, as debtors and debtors-in-possession in the above-captioned cases (the "Debtors") for

entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules

2002, 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 Orders (I)(A) Authorizing

Debtors' Entry into the Asset Sale Agreement (the "Agreement"), (B) Authorizing and

Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable
Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at
http://chapter11.epiqsystems.com/nortel.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the
Motion or, if not defined in the Motion, shall have the meanings ascribed to such terms in the Motion or, if not
defined in the Motion, as defined in the Agreement.

Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption

and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and

Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the

Assumption and Sublease of Certain Leases; and the Court having reviewed the Motion; and the

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is necessary; and

upon the record herein; and after due deliberation thereon; and good and sufficient cause

appearing therefore, it is hereby

FOUND AND DETERMINED THAT:[3]

A.      The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334,

and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

B.      Venue of these cases and the Motion in this district is proper under 28 U.S.C. §

1408 and 1409.

C.      The statutory and legal predicates for the relief requested in the Motion are

Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1.

D.      Good and sufficient notice of the relief granted by this Order has been given and

no further notice is required.  A reasonable opportunity to object or be heard regarding the relief

granted by this Order (including, without limitation, with respect to the proposed Bidding

2

Procedures and Bid Protections) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

  E.  The Debtors' proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice"), as set forth in the Motion, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing, and no other or further notice is required.

  F.  The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

  G.  The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Assets, entry into the Asset Sale Agreement (the "Agreement") as a "stalking horse" sale agreement and the payment of the Bid Protections (as defined herein) under the circumstances, timing, and procedures set forth herein, in the Motion and in the Agreement.

  H.  Entry into the Agreement with Nokia Siemens Networks B.V. (the "Purchaser"), a copy of which is attached to the Motion as Exhibit A, as a "stalking-horse" sale agreement is in the best interest of the Debtors and the Debtors' estates and creditors. The Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

  I.  The Break-up Fee and Expense Reimbursement (each as defined herein) are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

---

[3]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See. Fed. R. Bankr. P. 7052.

J.      The Debtors' payment of the Bid Protections under the conditions set forth in the Agreement, the Motion and this Order is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Purchaser will continue to pursue the proposed Agreement to undertake the sale of the Assets.  Notwithstanding anything to the contrary in this or any other order of this Court, the Bid Protections shall constitute administrative expenses with priority pursuant to Bankruptcy Code sections 503(b).

K.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT**:

1.      Those portions of the Motion seeking approval of the Bidding Procedures, the Bidding Protections, the Notice Procedures, the Assumption and Assignment Procedures, setting the time, date and place of the Sale Hearing, and authorizing Debtors to file certain documents under seal are GRANTED.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

## The Bidding Procedures

3.      The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4

4.      The Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding

Procedures for all purposes.

5.      The Bidding Procedures shall apply to the Qualified Bidders and the conduct of

the sale of the Assets and the Auction.

## The Assumption and Assignment Procedures

6.      The Assumption and Assignment Procedures as set forth in the Motion, are

hereby authorized, approved and made part of this Order as if fully set forth herein.

7.      The Court recognizes that the list of Customer Contracts (as defined in the

Motion) and affidavits of service that identify the Debtors' customers constitute confidential

commercial information, and therefore authorizes that any such lists and affidavits to be filed in

connection with this Motion and the procedures approved herein may be filed under seal.

8.      The Debtors shall provide the unredacted list of Customer Contracts and

affidavits of service that identify the Debtors' customers to the Clerk's Office of the United

States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a

cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the

docket number of this Order, (iv) the title of the list of Customer Contracts and affidavits of

service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT

UNDER SEAL" in bold print.

9.      Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors

to file an omnibus motion incorporating all the executory contracts and unexpired leases to be

assumed and assigned pursuant to section 365 of the Bankruptcy Code.

## The Stalking Horse Agreement

10.     Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtors' entry into the Agreement attached to the Motion as Exhibit A is hereby approved. The Agreement will serve as the "stalking horse" sale agreement.

## The Break-Up Fee and Expense Reimbursement

11.     To the extent due under section 9.2 of the Agreement, the Debtors are authorized to pay to the Purchasers:  (i) a fee of nineteen million five-hundred thousand dollars and 00/100 ($19,500,000), which is equal to three percent (3%) of the aggregate Purchase Price (prior to any adjustments) set forth in section 2.2.1 of the Agreement (the "Break-Up Fee") and (ii) an amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Purchaser in connection with the preparation, performance and execution of the Agreement and the transactions contemplated thereby,[4] including all filing and notification fees, and all fees and expenses of the Purchaser's Representatives (as defined in the Agreement) in an amount not to exceed three million dollars and 00/100 ($3,000,000) (the "Expense Reimbursement" and, together with the Break-up Fee, the "Bid Protections"), which shall be payable as provided for pursuant to the terms of the Agreement, regardless of whether the Agreement and the Transaction are ultimately approved by this Court or any other court.

12.     The Sellers' Obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to section 9.2 of the Agreement shall survive termination of the Agreement, shall constitute an administrative expense claim under section 503(b) of the Bankruptcy Code, and shall be payable within two (2) business days under the terms and conditions of the Agreement and this Order, notwithstanding section 507(a) of the Bankruptcy Code.

---

[4]     For the avoidance of doubt, the standard fee and expense structures of Skadden, Arps, Slate, Meagher & Flom LLP shall be deemed reasonable.

13.     The Break-Up Fee and/or the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Purchaser, in the event that closing under the Purchase Agreement has not occurred or does not occur for any reason whatsoever; provided that if the Closing occurs, the Break-Up Fee and/or the Expense Reimbursement will not be payable and will not be the sole and exclusive remedy of the Purchaser.

14.     In no event shall the Sellers be responsible or liable for any losses or liabilities under the Agreement that are consequential, in the nature of lost profits, diminution in the value of property, special or punitive, or otherwise not actual damages.

### Notice Procedures

15.     The notices, in substantially the same form as annexed to the Sale Motion as Exhibits E, F and G, are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale and the Assignment and Assumption Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

16.     Immediately after entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail, postage prepaid, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets are located, all federal and state taxing authorities, including (without limitation) the SEC, the EPA, state environmental protection agencies, the IRS, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned Contracts and the Assumed and

7

Subleased Real Estate Leases, and (vi) all known or potential creditors of the Debtors. The Debtors also shall publish notice substantially in the form attached as Exhibit G to the Motion in The Wall Street Journal (National Edition) and The Globe and Mail (National Edition) within five (5) business days of entry of this Bidding Procedures Order or as soon as practicable thereafter.

17.    The Assumption Notice, in substantially the same form as annexed to the Motion as Exhibit F, is sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all Counterparties (as defined in the Motion) of the Debtors' intent to assume and assign some or all of the Assumed Agreements, and is hereby approved. Each Assumption Notice shall set forth the following information: (i) the name and address of the Counterparty, (ii) notice of the proposed effective date of the assignment, (iii) identification of the Assumed Agreement, (iv) the Cure Amount, and (v) a description of the Purchaser and a statement as to the Purchaser's ability to perform the Debtors' obligations under the Assumed Agreements.

18.    Promptly after entry of this Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Debtors (or their agent) shall serve the Assumption Notice, in substantially the form attached as Exhibit F to the Motion by first-class mail, postage prepaid, upon each Counterparty individually. Additionally, for Assumed Agreements other than Customer Contracts, the Debtors shall file with the Court a master notice of assignment of contracts that sets forth: (i) the name and address of each Counterparty, (ii) notice of the proposed effective date of the assignments, (iii) a description of each Assumed Agreement, and (iv) the Cure Amount, if any. For Customer Contracts, the Debtors shall file under seal with the Court and deliver to (i) counsel to the Purchaser, (ii) the U.S. Trustee, (iii) the Monitor, (iv)

8

counsel to the Bondholder Group, and (v) counsel to the Official Committee, a master notice of

assignment of contracts that sets forth: (i) the name and address of the Counterparty, (ii) notice

of the proposed effective date of the assignment, (iii) description of the leased real property, and

(iv) the Cure Amount, if any, as well as an affidavit confirming that Assumption Notices have

been sent to each.

### Objection Procedures

19.    Any party that seeks to object to the relief requested in the Motion pertaining to

approval of the sale of the Assets, including (without limitation) the sale, assumption and

assignment of the Assumed and Assigned Contracts or assumption and sublease of the Assumed

and Subleased Real Estate Leases, shall file a formal objection that complies with the objection

procedures as set forth in the Motion. Each objection shall state the legal and factual basis of

such objection and may be orally supplemented at the Sale Hearing. To the extent that any party

to an Assumed Agreement does not timely file an objection to the Motion pursuant to the

procedures set forth therein, such party shall be bound to the corresponding Cure Amount.

20.    Any and all written objections as contemplated by this Order (including, without

limitation, any objection to the assumption and assignment of any contract or the Cure Amount

under any contract or unexpired lease) must be: (a) in writing; (b) signed by counsel or attested

to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d)

filed with the Bankruptcy Court; and (e) be served in accordance with the Local Rules so as to be

received on or before the appropriate deadline as set forth in the Motion.

21.    Failure to object to the relief requested in the Motion shall be deemed to be

"consent" for purposes of Bankruptcy Code section 363(f).

22.     All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### Other Relief Granted

23.     The Auction is scheduled for 9:30 a.m. (ET) on July 24, 2009 at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006.

24.     A hearing (the "Sale Hearing"), at which the Debtors shall seek approval of the Successful Bid (as defined in the Agreement) shall be held in this Court on July 28, 2009, at 2:00 p.m. (ET).  The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing.

25.     In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

26.     Nothing in this Order, the Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

27.     This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Order.

28.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.  The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.  For the avoidance of doubt, the Bid Protections approved by this Order shall be

immediately appealable and failure to appeal in accordance with the Bankruptcy Rules or other

applicable law shall constitute a waiver of such rights.


Dated: _____, 2009
          Wilmington, Delaware

                                              _____
                                              THE HONORABLE KEVIN GROSS
                                              UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT 1**

(Bidding Procedures)

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities as set forth in the Agreement (as defined below) with respect to the Purchaser, or, as set forth in the relevant sale agreement with respect to a Successful Bidder (as defined below). Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Agreement (as defined below).

On [●], 2009, Nortel Networks Inc. and certain of its U.S. subsidiaries that are debtors and debtors-in-possession (collectively, the "U.S. Debtors") as well as Nortel Networks Limited and certain other affiliates of the U.S. Debtors that have commenced proceedings under the Canadian Companies' Creditors Arrangement Act (the "Canadian Debtors"), and certain non-debtor affiliates of the U.S. Debtors and the Canadian Debtors (together with the U.S. Debtors and the Canadian Debtors, the "Sellers") executed that certain Asset Sale Agreement (the "Agreement") with Nokia Siemens Networks B.V. (together with any of its designees, the "Purchaser").

The Sellers have determined that: (A) the transactions contemplated by the Agreement and the ancillary agreements discussed therein with respect to the Purchaser, or, as set forth in the relevant sale agreement and ancillary agreements with respect to a Successful Bidder (collectively, the "Transaction") should be subject to competitive bidding as set forth herein; (B) the transfer of the U.S. Debtors' rights, title and interests in and to the Assets (as defined below) should be subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to sections 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"); (C) the transfer of the rights, title and interests of the Canadian Debtors (as such term is defined in the Agreement) in and to the Assets should be subject to approval by the Ontario Superior Court of Justice (the "Canadian Court"); and (D) the Transaction shall be subject to approval by such other applicable court(s) as the Sellers, in consultation with the Committee (as defined below), the Bondholder Group (as defined below) and the Monitor (as defined below), may determine are necessary or appropriate and certain other closing conditions as set forth in the Agreement.

On June 19, 2009, the U.S. Debtors filed a Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' CDMA and LTE Business Free and Clear of All Liens, Claims and Encumbrances, (B) The Assumption and Assignment of Certain Contracts and (C) the Assumption and Sublease of Certain Leases (the "Sale Motion").

On [●], 2009, the Bankruptcy Court entered an Order approving, among other things, the Bidding Procedures set forth herein and the payment, in certain circumstances, of the Break-Up Fee and Expense Reimbursement (the "Bidding Procedures Order").

On [●], 2009, the Canadian Debtors filed a motion with the Canadian Court seeking an order for approval of (I) execution and delivery of the Agreement by the Canadian Debtors, (II) payment of the Break-Up Fee and Expense Reimbursement in the circumstances provided for in the Agreement, and (III) a process for the Sale of the Canadian Debtors' rights, title and interests in and to the Assets (as defined below).

On [●], 2009, the Canadian Court entered an Order approving, among other things, the Bidding Procedures set forth herein and the payment, in certain circumstances, of the Break-Up Fee and Expense Reimbursement (the "Canadian Sales Process Order").

Bidding Process

The Bidding Procedures set forth herein describe, among other things, the assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's and the Canadian Court's and, if required, such other applicable courts' approval thereof (collectively, the "Bidding Process"). The Sellers intend to consult with, among others, the Official Committee of Unsecured Creditors in connection with the chapter 11 cases of Nortel Networks Inc., *et al*. (Case No. 09-10138) involving the U.S. Debtors (the "Committee"), the ad hoc group of bondholders holding claims against certain of the U.S. Debtors and certain of the Canadian Debtors (the "Bondholder Group"), Ernst & Young Inc., in its capacity as the Canadian Court-appointed monitor in connection with the proceedings under the Companies' Creditors Arrangement Act (the "Monitor"), and their respective advisors throughout the Bidding Process. In the event that the Sellers and any party disagree as to the interpretation or application of these Bidding Procedures, except with respect to the application of the terms of any order of the Canadian Court or any requirement for approval by the Canadian Court or the Monitor, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.[1]

Assets To Be Sold

The Sellers are offering for sale, in one or more transactions, certain of the Sellers' assets pertaining to the business segments described in the Agreement (to the extent that such assets are not subsequently excluded from the Sale in accordance with the terms of the Agreement) with respect to the Purchaser, or, as set forth in the relevant sale agreement with respect to a Successful Bidder, and related schedules and in an information memorandum made available by the Sellers to the Purchaser and other potential bidders, which will also be made available to other prospective purchasers that have executed a confidentiality agreement with the Sellers (the "Assets").

"As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or

---

[1]    For the avoidance of doubt, this Bidding Process shall not govern any disagreements among the Sellers.

2

estates, except, with respect to the Purchaser, to the extent set forth in the Agreement or, with respect to a Successful Bidder (as defined below), to the extent set forth in the relevant sale agreement of such Successful Bidder.

Free Of Any And All Claims And Interests

All of the rights, title and interests of the U.S. Debtors and the Canadian Debtors in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") to the extent permitted by sections 363 and 365 of the Bankruptcy Code and other applicable law, such Claims and Interests to attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof), except, with respect to the Purchaser, to the extent otherwise set forth in the Agreement or, with respect to a Successful Bidder, to the extent otherwise set forth in the relevant sale agreement of such Successful Bidder with the U.S. Debtors and the Canadian Debtors.

Publication Notice

Within five (5) Business Days, or as soon thereafter as is reasonably practicable, after entry of orders by the Bankruptcy Court and the Canadian Court approving these Bidding Procedures, the Sellers shall publish notice of these Bidding Procedures, the time and place of the Auction (as defined below), if required, the time and place of the Sale Hearing (as defined below), and the objection deadline for the Sale Hearing in The Wall Street Journal (National Edition) and The Globe & Mail (National Edition).

Participation Requirements

Unless otherwise ordered by both the Bankruptcy Court and the Canadian Court, for cause shown, or as otherwise determined by the Sellers (in consultation with the Committee, the Bondholder Group and the Monitor), in order to participate in the Bidding Process, each person, other than the Purchaser, who wishes to participate in the Bidding Process (a "Potential Bidder") must deliver to the Notice Parties (as defined below) at the addresses provided below:

     (a)     an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, that shall not be on terms that, in the Sellers' reasonable judgment, are more favorable to the Potential Bidder than the confidentiality agreement executed by the Purchaser and which shall inure to the benefit of any purchaser of the Assets (in the event that the Potential Bidder has already entered into a confidentiality agreement with the Sellers, it must provide a statement agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets and waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder, or any Transaction it may enter into, to the Notice Parties (as defined below));

3

(b)     current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets (or any portion thereof), current audited financial statements and latest unaudited financial statements of the equity holders of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their respective financial advisors, in consultation with the Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transaction; and

(c)     a preliminary (non-binding) written proposal regarding: (i) the purchase price range (including liabilities to be assumed by the Potential Bidder); (ii) any Assets expected to be excluded or any additional assets desired to be included; (iii) the structure and financing of the Transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated corporate, stockholder, internal or regulatory approvals required to close the Transaction, the anticipated time frame and any anticipated impediments for obtaining such approvals; (v) the proposed number of employees of the Sellers who will become employees of the Potential Bidder, and any proposed measures associated with their continued employment; and (vi) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Agreement.

A Potential Bidder that delivers the documents described above, whose financial information and credit quality support or enhancement demonstrate to the Sellers' satisfaction the financial capability of the Potential Bidder to consummate the Transaction, and who has submitted a reasonably competitive and realistic non-binding proposal, as described above, and who has executed a confidentiality agreement, as described above, and that the Sellers determine in their reasonable business judgment, after consultation with their counsel and financial advisors, the Committee, the Bondholder Group and the Monitor, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transaction will be deemed a "Qualified Bidder".

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Committee, the Bondholder Group and the Monitor, and will notify the Potential Bidder, if such Potential Bidder is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin or continue to conduct due diligence as provided in the following paragraph with respect to the Assets.

<u>Due Diligence</u>

The Sellers may in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers such due diligence access to materials and information relating to the Assets as the Sellers deem appropriate after consultation with the Committee, the Bondholder Group and the Monitor. Due diligence access may include management presentations as may be scheduled by the Sellers,

4

access to electronic data rooms, on site inspections, and other matters which a Qualified Bidder may reasonably request and as to which the Sellers, in their reasonable business judgment, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from Qualified Bidders. No additional due diligence for any party other than a Qualified Bidder who has submitted a Qualified Bid will continue after the Bid Deadline (as defined below). The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections. In any event, the Purchaser shall be provided prompt access to all material due diligence materials, management presentations, on-site inspections and other information provided to Qualified Bidders that were not previously made available to the Purchaser. Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders. The Sellers make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the Agreement or any other definitive sale agreement with any Successful Bidder executed and delivered by Sellers.

<u>Bid Deadline</u>

A Qualified Bidder that desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "<u>Notice Parties</u>"): (i) Nortel Networks Limited and Nortel Networks Inc., c/o Nortel Networks Limited, Attn: Gordon A. Davies, Esq., Chief Legal Officer, 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, Facsimile: (905) 863-8386; (ii) U.S. Debtors' counsel: Cleary Gottlieb Steen & Hamilton LLP, Attn: James L. Bromley and Lisa M. Schweitzer, One Liberty Plaza, New York, New York 10006, Facsimile: (212) 225-3999; (iii) Canadian Debtors' counsel: Ogilvy Renault LLP, Attn: Derrick C. Tay and Jennifer Stam, Royal Bank Plaza, South Tower, Suite 3800, 200 Bay Street, Toronto, Ontario, Canada, Facsimile: (416) 216-3930; (iv) Sellers' financial advisors: Lazard Frères & Co., Attn: Frank A. (Terry) Savage, 30 Rockefeller Plaza, New York, NY 10020, Facsimile: (212) 332-1748; (v) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, Attn: Fred S. Hodara, Stephen B. Kuhn, David H. Botter and Kenneth A. Davis, One Bryant Park, New York, New York 10036, Facsimile: (212) 872-1002; (vi) financial advisor to the Committee: Jefferies & Company, Inc., Attn: General Counsel, Investment Banking, 520 Madison Avenue, New York, New York, Facsimile: (212) 284-2280; (vii) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, Attn: Roland Hlawaty, One Chase Manhattan Plaza, New York, New York, 10006, Facsimile: (212) 822-5735; and (viii) the Monitor: Murray A. McDonald, Ernst & Young Inc., Ernst & Young Tower, 222 Bay Street, P. O. Box 251, Toronto, ON M5K 1J7 Canada, Facsimile: (416) 943-3300; so as to be received not later than **July 21, 2009 at 4:00 p.m. (ET)** by the Sellers (the "<u>Bid Deadline</u>"). The Sellers, after consultation with the Committee, the Bondholder Group and the Monitor, may extend the Bid Deadline once or successively, but they are not obligated to do so; <u>provided</u>, however, that for any such extension beyond ten (10) Business Days, the Sellers shall have obtained the prior written consent of the Purchaser, the Committee, the Bondholder Group and the Monitor, which consent will not be unreasonably withheld. If the Sellers extend the Bid Deadline, they will promptly notify all Qualified Bidders (including the Purchaser) and the parties listed above of such extension.

<u>Qualified Bid</u>

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "<u>Qualified Bid</u>"):

       (a)     it states that the applicable Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Agreement, including, without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure or upon alternative terms and conditions that the Sellers determine, after consultation with the Committee, the Bondholders Committee and the Monitor, are no less favorable than the terms and conditions of the Agreement;

       (b)     it includes a letter stating that the bidder's offer is irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, August 31, 2009, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

       (c)     it includes a duly authorized and executed Agreement, including the purchase price for the Assets expressed in U.S. Dollars (the "<u>Purchase Price</u>"), together with all exhibits and schedules thereto, including, to the extent required by the terms and conditions of such bid, the Intellectual Property License Agreement, the Transition Services Agreement, the CDMA Supply Agreement, the Loaned Employee Agreement, the Manufacturing and Supply Regarding Dual Use Platforms Agreement and the Trademark License Agreement (each as defined in the Agreement), the other ancillary agreements as described in the Agreement and such additional ancillary agreements as may be required by the bidder with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and modifications to the Agreement ("<u>Marked Agreements</u>") and such ancillary agreements (the "<u>Marked Ancillary Agreements</u>") and the proposed orders to approve the Sale by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval may be required, proposed by the bidder;

       (d)     it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements;

       (e)     it is not conditioned on (i) the outcome of unperformed due diligence by the bidder and/or (ii) obtaining financing;

(f)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation;

(g)    it has a value to the Sellers, in the Sellers' reasonable business judgment, after consultation with their financial advisors, the Committee, the Bondholder Group and the Monitor, that either individually or, when evaluated in conjunction with any other Qualified Bid for the Assets, is greater than or equal to the sum of the value offered under the Agreement, plus (i) the amount of the Break-Up Fee and Expense Reimbursement (as defined below), plus (ii) U.S.$5,000,000.

(h)    it includes an acknowledgment and representation that the bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the Agreement (or identifies with particularity which of such contracts and leases the bidder wishes not to assume, or alternatively which additional executory contracts or unexpired leases the bidder wishes to assume), contains full details of the bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(i)    it includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements or the Marked Ancillary Agreements; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(j)    it includes evidence, in form and substance reasonably satisfactory to Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

(k)    it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, payable to the order of the Sellers (or such other party as the Sellers may determine) in an amount equal to 5% of the Purchase Price to be dealt with as provided for under "Good Faith Deposit" herein;

(l)    it contains full details of the proposed number of employees of the Sellers (apportioned by jurisdiction) who will become employees of the Qualified Bidder and any proposed measures associated with their continued employment;

(m)     it includes evidence of the Potential Bidder's ability to comply with section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Potential Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Potential Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

(n)     it contains other information reasonably requested by the Sellers; and

(o)     it is received by the Bid Deadline.

The Sellers will determine, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids, and shall deliver copies of any bids deemed to be Qualified Bids to Purchaser in accordance with section 10.7 of the Agreement as soon as reasonably practicable after such a determination has been made.[2]  Notwithstanding the foregoing, the Purchaser will be deemed a Qualified Bidder, and the Agreement will be deemed a Qualified Bid, for all purposes in connection with the Bidding Process, the Auction, and the Sale.

The Sellers shall notify the Purchaser and all Qualified Bidders in writing as to whether or not any bids constitute Qualified Bids promptly following the expiration of the Bid Deadline.

<u>Aggregate Bids</u>

The Sellers may aggregate separate bids from unaffiliated persons to create one "Qualified Bid" from a "Qualified Bidder"; <u>provided</u>, that all bidders shall remain subject to the provisions of 11 U.S.C. § 363(n) regarding collusive bidding.

<u>Evaluation of Competing Bids</u>

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transaction, the proposed revisions to the relevant Transaction documents, the effect of the Transaction on the value of the ongoing businesses of the Sellers (including ongoing relationships with customers and suppliers), other factors affecting the speed, certainty and value of the Transaction (including any regulatory approvals required to close the Transaction), the assets included or excluded from the bid, the estimated number of in-scope employees of the Sellers (apportioned by jurisdiction) to be offered post-closing employment by the Qualified Bidder and any proposed measures associated with their continued employment, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor.

---

[2]     The Debtors may entertain bids through the Bidding Procedures for other assets besides the Assets, whether related or unrelated to the CDMA and LTE Businesses.

<u>No Qualified Bids</u>

If the Sellers do not receive any Qualified Bids other than the Agreement received from the Purchaser, the Auction shall be cancelled and the U.S. Debtors shall report the same to the Bankruptcy Court, the Canadian Debtors shall report the same to the Canadian Court and the Monitor and subject to requiring and obtaining approvals of the Bankruptcy Court, the Canadian Court or any other applicable court and satisfaction of the conditions set forth in the Agreement, the Sellers shall promptly proceed to complete the transactions contemplated by the terms of the Agreement. In addition, if no Qualified Bid is received, the U.S. Debtors reserve the right to request that the Bankruptcy Court advance the date of the Sale Hearing (as defined below) and provide notice of such new date to those parties in interest entitled to notice thereof and the Canadian Debtors reserve the right to file a motion with the Canadian Court seeking the approval of the sale of the Canadian Debtors' rights, title and interests in and to the Assets to the Purchaser. In addition, if approval of any other applicable court is required, the Sellers will as soon as practicable file an appropriate pleading with such court(s) seeking approval of the Transaction.

<u>Break-Up Fee and Expense Reimbursement</u>

Recognizing the value and benefits that Purchaser has provided to the U.S. Debtors and the other Sellers by entering into the Agreement, as well as the Purchaser's expenditure of time, energy and resources, the Sellers have agreed that if the Purchaser is not the Successful Bidder, the Sellers will, in the circumstances as set forth in the Agreement and Bidding Procedures Order, pay to the Purchaser (i) a break-up fee of $19,500,000 (the "<u>Break-Up Fee</u>"), and (ii) reimburse the Purchaser for certain expenses as set forth in the Agreement and Bidding Procedures Order up to $3,000,000 (the "<u>Expense Reimbursement</u>"), which amounts shall constitute administrative expense claims against the U.S. Debtors under section 503(b) of the U.S. Bankruptcy Code, payable in accordance with the terms of the Agreement and the Bidding Procedures Order.

<u>Auction</u>

If the Sellers receive one or more Qualified Bids in addition to the Agreement, the Sellers will conduct an auction (the "<u>Auction</u>") of the Assets, which shall be transcribed or recorded on video to the extent required under Delaware local practice, at **9:30 a.m. (ET) on July 24, 2009**, at the offices of Cleary Gottlieb Steen & Hamilton LLP located at One Liberty Plaza, New York, New York 10006 or such other location as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned without the prior written consent of the Purchaser, subject to the terms of the Agreement. Copies of all Qualified Bids shall be delivered to the Committee, the Bondholder Group, the Monitor and the Purchaser at such time that such bid is deemed a Qualified Bid but no later than two (2) Business Days prior to the Auction. The Auction shall run in accordance with the following procedures:

      (a)      Only the Sellers, the Purchaser, the Committee, the Bondholder Group and the Monitor (and the advisors to each of the foregoing), any creditor of the Sellers and any other Qualified Bidder that has timely submitted a Qualified Bid, shall attend the

Auction in person, and only the Purchaser and such other Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(c)     At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction; provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date.  At least one (1) Business Day prior to the Auction, the Sellers will provide copies of the Qualified Bid or combination of Qualified Bids which the Sellers believe, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, is the highest or otherwise best offer (the "Starting Bid") to the Purchaser and all other Qualified Bidders which have informed the Sellers of their intent to participate in the Auction.

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)     The Sellers, after consultation with their counsel and financial advisors, the Committee, the Bondholder Group and the Monitor, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, the Canadian Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers determine, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below).  Each incremental bid at the Auction shall provide net value to the estate of at least U.S.$5,000,000 over the Starting Bid or the Leading Bid,

as the case may be, <u>provided</u> that the Sellers, in consultation with the Committee, the Bondholder Group and the Monitor, shall retain the right to modify the increment requirements at the Auction. After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid or combination of bids (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "<u>Leading Bid</u>"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids (including any Subsequent Bid by the Purchaser), the Sellers will, at each round of bidding, give effect to the Break-Up Fee and Expense Reimbursement that may be payable to the Purchaser under the Agreement as well as any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers. Notwithstanding the foregoing, the Purchaser shall be entitled to submit a Subsequent Bid without being required to satisfy the aforementioned minimum bid increment requirement.

Selection Of Successful Bid

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor will (a) review each Qualified Bid and evaluate each Qualified Bid as set forth in the section titled "Evaluation of Competing Bids" herein, (b) identify the highest or otherwise best offer or offers for the Assets received at the Auction (one or more such bids, collectively the "<u>Successful Bid</u>" and the bidder(s) making such bid, collectively, the "<u>Successful Bidder</u>"), it being understood that the Purchaser is not required to satisfy any minimum bid increment requirement and that if the Sellers determine that a Qualified Bid or Subsequent Bid by the Purchaser and any other Qualified Bid are therefore not materially different, then as between those two offers the Purchaser's offer shall be deemed to be the highest and best offer for purposes of this provision and (c) communicate to the Purchaser and the other Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder (as defined below), if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid by the Sellers, after consultation with the Committee, the Bondholder Group and the Monitor, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing, the approval by the Canadian Court and any required approvals of any other applicable court(s) with such Successful Bidder (or, under certain circumstances described herein, the Alternate Bid transaction documents with the Alternate Bidder).

Sale Hearing

The sale hearing to authorize certain of the Sellers to enter into agreements with respect to the Successful Bid (the "<u>Sale Hearing</u>") will be held, in respect of those Sellers that are U.S. Debtors, before the Honorable Judge Kevin Gross (or any substitute therefor) in the United States Bankruptcy Court for the District of Delaware, located in Wilmington, Delaware, on a

11

date to be scheduled by the court and currently proposed as **July 28, 2009 at 2:00 p.m. (ET)**, and, in respect of those Sellers that are Canadian Debtors, before the Honourable Mr. Justice Geoffrey B. Morawetz (or any substitute therefor) in the Ontario Superior Court of Justice, in Toronto, Ontario, and in any other applicable court(s) whose approval is required, as soon as practicable following the date of the Sale Hearing (or, with respect to the Canadian Court, in a joint hearing with the Bankruptcy Court at the Sale Hearing). The Sale Hearing and any hearings of any other applicable court(s) to approve the entering into agreements with respect to the Successful Bid, may be adjourned or rescheduled by the Sellers without further notice by an announcement of the adjourned date at the Sale Hearing or, in the case of an adjournment of a relevant hearing of any other applicable court, at such hearing. If the Sellers do not receive any Qualified Bids (other than the Qualified Bid of the Purchaser), the Sellers shall proceed as set forth in the "No Qualified Bids" section above. If the Sellers receive one or more additional Qualified Bid(s), then, at the Sale Hearing and at any other hearings of any other applicable court(s) to approve the entering into agreements with respect to the Successful Bid, the Sellers will seek approval of the Successful Bid, and, at the Sellers' election, the next highest or best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder"). The Sellers' presentation to the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval is necessary or appropriate, of the Successful Bid, and, if applicable, the Alternate Bid will not constitute the Sellers' acceptance of either of such bids, which acceptance will only occur upon the latest approval of such bids to be delivered by the Bankruptcy Court at the Sale Hearing, the Canadian Court and any other applicable court(s) whose approval is required. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized, but not directed, to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court, the Canadian Court or any other court. If a Qualified Bid other than the Agreement is selected as the Alternate Bid, the Alternate Bid shall remain open until the earlier of (a) August 15, 2009 or (b) the consummation of the Sale to the Successful Bidder (the "Alternate Bid Expiration Date"). All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval is required, as indicated above.

12

<u>Good Faith Deposits</u>

The Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within five (5) Business Days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid. The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Alternate Bidder. The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid, and will become nonrefundable upon the approval by the Bankruptcy Court and the Canadian Court of the Sale to the Successful Bidder.

<u>Reservation Of Rights</u>

The Sellers, after consultation with their advisors, the Committee, the Bondholder Group and the Monitor, and their respective advisors, (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (b) may reject, at any time, any bid (other than the Purchaser's initial bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, any orders of the Canadian Court or any other orders applicable to one or more Sellers, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in consultation with the Committee, the Bondholder Group and the Monitor; and (c) except as otherwise specifically set forth herein, with respect to instances in which the consent of the Committee, the Bondholder Group and the Monitor is required, may modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets. Notwithstanding any of the foregoing, or anything else contained herein, however, the Sellers may not, without prior written consent of the Committee, the Bondholder Group and the Monitor, which consent may not be unreasonably withheld, (i) extend the deadlines set forth in the Auction procedures for more than ten (10) Business Days, (ii) adjourn the Auction for more than ten (10) Business Days, or (iii) adjourn the Sale Hearing for more than five (5) Business Days if the Auction has concluded.

Each of the foregoing actions shall be made by the Sellers in consultation with the Committee, the Bondholder Group and the Monitor, and their respective advisors. Notwithstanding the foregoing, the Sellers may not, without the prior written consent of the Purchaser, impair or modify (a) the Purchaser's rights and obligations under the Agreement; (b) the Purchaser's right to submit a Subsequent Bid without complying with any minimum bid increment; or (c) the Sellers' obligation to give effect to the Break-Up Fee and the Expense Reimbursement payable to the Purchaser under the Agreement by crediting those amounts to the Purchaser's Qualified Bid and any Subsequent Bid by the Purchaser.