**Exhibit D**

**Proposed Form of Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------X
                                        :
                                        :     Chapter 11
                                        :
In re                                   :
                                        :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]       :
                                        :     Jointly Administered
                    Debtors.            :
                                        :     RE: D.I. _____
                                        :
-----------------------------------------------------------X
```

**ORDER AUTHORIZING AND APPROVING (A) THE SALE OF
CERTAIN ASSETS OF THE DEBTORS' CDMA AND LTE BUSINESS
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES,
(B) THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS
AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated

debtors, as debtors and debtors in possession in the above-captioned (collectively, the

"Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365,

Bankruptcy Rules 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 Orders (I)(A)

Authorizing Debtors' Entry into the Asset Sale Agreement (the "Agreement"), (B) Authorizing

and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and

Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Agreement (as defined herein).

and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and

Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the

Assumption and Sublease of Certain Leases; and the Court having entered an order approving,

among other things, the Bidding Procedures [D.I.____] (the "Bidding Procedures Order") based

upon the evidence presented at the bidding procedures hearing held on _____, 2009 (the

"Bidding Procedures Hearing"); and the Court having conducted a hearing on the Motion on

_____, 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having had

the opportunity to be heard, regarding the asset sale agreement attached as Exhibit A to the

Motion (the "Agreement"), by and among certain of the Debtors, certain foreign debtor affiliates

and certain non-debtor affiliates (collectively, the "Sellers") and Nokia Siemens Networks B.V.

(the "Purchaser") and the transactions contemplated thereby (the "Transactions"); and the Court

having reviewed and considered the Motion, and the arguments of counsel made, and the

evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record

of the Bidding Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after

due deliberation thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion and to grant

the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

       C.      The statutory predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1.

       D.      Notice of the Motion and the Sale Hearing has been provided to (A) (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets are located, all federal and state taxing authorities, including (without limitation) the SEC, the EPA, state environmental protection agencies, the IRS, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases, and (vi) all known or potential creditors of the Debtors and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

       E.      As evidenced by affidavit of publication filed with the Court, notice of the Sale Hearing was published in The Wall Street Journal and The Globe and Mail on _____ __, 2009.

       F.      Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding

3

Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

G.    The Assets (as defined in the Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

H.    The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

I.    On _____ __, 2009, the Debtors entered into an Asset Sale Agreement with respect to the Purchased Assets (as well as other Assets) by and among the Sellers and Nokia Siemens Networks B.V., as the Purchaser, subject to higher and better offers.

J.    The Bidding Procedures were substantively and procedurally fair to all parties.  The Debtors conducted the Sale process (including the Auction (as defined below)) in accordance with the Bidding Procedures.

K.    After an auction held on _____ __, 2009 (the "Auction"), the Debtors determined that the highest and best Qualified Bid was that of the Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of _____ (the "Alternate Bidder").[4]

L.    Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute the Agreement and all other documents contemplated thereby,

---

[4]    In the event the Debtors do not consummate the Transactions with the Purchaser contemplated by the Agreement, all references (other than references in this footnote) to the Purchaser shall be a reference to the Alternate Bidder and all references to the Agreement shall be a reference to the Alternate Bid.  No further court order shall be required for the Debtors to close the transactions contemplated by the Alternate Bid with the

(ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement, (iii) has taken all company action necessary to authorize and approve the Agreement, the sale of the Purchased Assets and the consummation by the Debtors of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions.

M.    The Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.

N.    The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets.

O.    The Purchaser would not have entered into the Agreement and would not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not free and clear of all interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such interest.  A sale of the Purchased Assets other than one free and clear of all Interests (as defined herein) would yield substantially less value for

Alternative Bidder.

the Debtors' estates, with less certainty, than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

P.      The Debtors may sell the Purchased Assets free and clear of all Interests, because, with respect to each creditor asserting an Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied. Those holders of Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2). Those holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f).

Q.      Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.      The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors. Pursuant to the Purchase Agreement, the Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets, and Purchaser is not holding itself out to the public as a continuation of the Debtors. The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. Upon the

Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities.  Except

for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and

clear of any "successor liability" claims of any nature whatsoever, whether known or unknown

and whether asserted or unasserted as of the Closing.  The Purchaser's operation of the

Purchased Assets acquired from the Debtors shall not be deemed a continuation of the Debtors'

business.  The Court finds that the Purchaser would not have acquired the Purchased Assets but

for the foregoing protections against potential claims based upon "successor liability" theories.

    S.  The Debtors have demonstrated that it is an exercise of their sound

business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser

and to assume the  Assumed and Subleased Real Estate Leases and sublease the same to the

Purchaser in connection with the consummation of the Sale, and (i) the assumption, assignment,

and sale of Assumed and Assigned Contracts and (ii) the assumption of the Assumed and

Subleased Real Estate leases and the Sublease of the same to the Purchaser is in the best interests

of the Debtors, their estates, their creditors, and all parties in interest.  The Assumed and

Assigned Contracts being assigned to the Purchaser and the Assumed and Subleased Real Estate

Leases being assumed by the Debtors and subleased to the Purchaser are an integral part of the

Purchased Assets being purchased by the Purchaser, and accordingly, such assumption,

assignment, and sale of the Assumed and Assigned Contracts and such assumption and sublease

of the Assumed and Subleased Real Estate Leases are reasonable and enhance the value of the

Debtors' estates.  The cure amounts required to be paid pursuant to section 365(b) that are

mutually agreed to be paid by the Debtors and the counterparty to the applicable Assumed and

Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Lease or ordered to

be paid by this Court pursuant to a Final Order (the "Cure Amounts") are deemed the entire cure

obligation due and owing under the Assumed and Assigned Contracts and/or the Assumed and Subleased Real Estate Leases under Bankruptcy Code section 365.

T.    Each and every provision of the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Leases have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

U.    Upon the payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases.

V.    The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

W.    Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

X.    Entry into the Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser. Additionally, (i) the Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and

8

devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the

Purchased Assets if the Sale is not consummated promptly; and (iv) the Agreement and the

closing thereon will provide a greater recovery for the Debtors' creditors than would be provided

by any other presently available alternative.

      Y.    The transfer of the Purchased Assets to the Purchaser will be a legal, valid

and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtors'

right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Interests of any

kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Encumbrances),

and (ii) all Excluded Liabilities, claims as defined in 11 U.S.C. § 101(5), rights or causes of

action (whether in law or in equity), obligations, demands, restrictions, interests and matters of

any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of

these cases, and whether imposed by agreement, understanding, law, equity or otherwise

(collectively, the "Claims"), other than Assumed Liabilities and the Permitted Encumbrances.

      Z.    The Sale does not constitute a *sub rosa* chapter 11 plan.

      AA.    Time is of the essence in consummating the Sale.  In order to maximize

the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within

the time constraints set forth in the Agreement.  Accordingly, there is cause to lift the stay

contemplated by Bankruptcy Rules 6004(h) and 6006(d).

      BB.    The Sale contemplated by the Agreement is in the best interests of the

Debtors and their estates, creditors, interest holders and all other parties in interest; and it is

therefore:

      ORDERED, ADJUDGED AND DECREED THAT:

      1.    The relief requested in the Motion is GRANTED.

2.     All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, or settled, are hereby overruled on the merits.

3.     Pursuant to Bankruptcy Code sections 105 and 363, the Agreement, the Sale of the Purchased Assets, and consummation of the Transactions are hereby approved and authorized in all respects.

4.     Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, under section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Agreements and to assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing.

5.     The Debtors' assumption of the Assumed Agreements is subject to Court approval, consummation of the sale of the Assets to the Purchaser, and, solely as it relates to the Assumed and Subleased Real Estate Leases, the Debtors' and Purchaser's entry into a Sublease pursuant to section 5.26 of the Agreement.  To the extent that an objection by a Counterparty to any Assumed Agreement is not resolved prior to the Closing Date or Debtors and Purchasers have failed to enter into a Sublease regarding any Assumed and Subleased Real Estate Lease pursuant to section 5.26 of the Agreement, the Debtors, in consultation with the Purchaser, may elect to (i) not assume such Assumed Agreement, (ii) postpone the assumption of such Assumed Agreement until the resolution of such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assignment, Debtors may pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a

segregated interest-bearing account such that, upon any resolution by the Court of the Cure

Amount dispute, or agreement between the Debtors and the Counterparty, the Counterparty will

be entitled to payment from the segregated account of any disputed portion and interest earned

thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled.  Any Cure

Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a

condition subsequent to such assumption and assignment by the relevant party responsible for

payment of the Cure Amount.

       6.     Upon the Closing, (a) the Debtors are hereby authorized and directed to

consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and

assignment of the Purchased Assets to the Purchaser free and clear of any and all interests

pursuant to section 363 of the Bankruptcy Code, including (without limitation) all liens,

including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of

first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-

way, restrictive covenant on real property, real property license, lease or conditional sale

arrangement (collectively, the "Liens") and debts, liabilities and obligations, whether accrued or

fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured

or determined or undeterminable, known or unknown, including those arising under any Law or

Action and those arising under any Contract or otherwise, including any Tax liability (other than

Assumed Liabilities and Permitted Encumbrances) (collectively, the "Liabilities" and together

with the Liens, the "Interests"), with such Interests to attach to the sale proceeds in the same

validity, extent and priority as immediately prior to the sale transactions, subject to any rights,

claims and defenses of the Debtors and other parties in interest, and (b) except as otherwise

expressly provided in the Agreement, all such Interests (other than Assumed Liabilities and

Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

7.    The transfer of the Purchased Assets to the Purchaser pursuant to the Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Purchased Assets, free and clear of (i) all Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities) and (ii) all Claims other than Assumed Liabilities, with any Interests attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction, subject to any rights, claims and defenses of the Debtors and other parties in interest.

8.    Upon the Closing, and except as otherwise expressly provided in the Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates.  Without limiting the generality of the foregoing, and except as otherwise provided in the Agreement, (a) the Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser, shall have no liability or obligation in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee

benefit, agreement, plan or program are enjoined from asserting against the Purchaser any

Claims arising from or relating to such employee benefit, agreement, plan or program.

       9.     As of the Closing, subject to the provisions of this Order, the Purchaser

shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned

Contracts first arising and attributable to the time period occurring on or after the Closing and

shall have all rights thereunder.

       10.    Upon the entry of this Order, (i) all defaults (monetary and non-monetary)

under the Assumed and Assigned Contracts and the Subleased Real Estate Leases through the

Closing shall be deemed cured through the payment of the Cure Amounts, (ii) no other amounts

will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or

accruing during, or attributable or related to, the period prior to Closing, (iii) any and all persons

or entities shall be forever barred and estopped from asserting a claim against the Debtors, their

estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed

and Assigned Contracts and the Subleased Real Estate Leases that arose or accrued, or relate to

or are attributable to the period prior to the Closing.

       11.    Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any

provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-

bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and

Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the

Purchaser.

       12.    Upon assumption of the Assumed and Assigned Contracts by the Debtors

and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and

binding, in full force and effect in accordance with their terms, subject to the provisions of this

13

Order.

13.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Subleased Real Estate Leases, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assumption and Sublease of the Assumed and Subleased Real Estate Leases, the Debtors may assume the Assumed and Subleased Real Estate Leases and Sublease the Assumed and Subleased Real Estate Leases to the Purchaser.

14.     Upon assumption of the Assumed and Subleased Real Estate Leases by the Debtors and Sublease to the Purchaser, the Assumed and Subleased Real Estate Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

15.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

16.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to: (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed and Assigned Contracts; (iii) assume and Sublease the Subleased Real Estate Leases; and (iv) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement.

17.     The Purchaser is hereby authorized in connection with the consummation

of the Sale to allocate the Purchased Assets among its affiliates, designees, assignees, and/or successors in a manner as it in its sole discretion deems appropriate and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded under this Order and the Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing; provided, however the Debtors shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

18.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  No brokers were involved in consummation of the Sale or the Transactions, and no brokers' commissions are due to any Person in connection with the Sale or the Transactions.

19.    The consideration provided by the Purchaser for the Purchased Assets under the Agreement shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

20.    On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement.

21.    Except as otherwise provided in the Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear

of all Liens, Claims and Interests and shall be delivered at the time of Closing to the Purchaser.

22.    Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from (a) asserting any Claims or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and Permitted Encumbrances), or (b) asserting any Claims or enforcing remedies under any theory of successor liability, *de facto* merger, or substantial continuity.

23.    The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors' estates.  Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities.  Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing.  The Purchaser's operation of the Purchased Assets acquired from the Debtors shall not be deemed a continuation of the Debtors' business, and all Persons are hereby enjoined from asserting against the Purchaser, or its successors or assigns, any claim or cause of action based upon the theory of "successor liability" merely because the Purchaser has acquired the Purchased Assets.

24.    This Order (a) is and shall be effective as a determination that other than

16

Permitted Encumbrances and Assumed Liabilities, all Liens, Claims and Interests of any kind or

nature whatsoever existing as to the Purchased Assets prior to the Closing have been

unconditionally released, discharged and terminated, and that the conveyances described herein

have been effected, and (b) is and shall be binding upon and govern the acts of all entities,

including, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies or units, governmental

departments or units, secretaries of state, federal, state and local officials and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to the Purchased Assets conveyed to the

Purchaser. All such entities described above in this paragraph are authorized and specifically

directed to strike all recorded Interests against the Purchased Assets from their records, official

and otherwise.

    25.  All counterparties to the Assumed and Assigned Contracts and, as

applicable, the Assumed and Subleased Real Estate Leases shall cooperate and expeditiously

execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the

Purchaser for, any instruments, applications, consents, or other documents which may be

required or requested by any public or quasi-public authority or other party or entity to effectuate

the applicable transfers in connection with the Transactions.

    26.  Each and every federal, state and governmental agency or department, and

any other person or entity, is hereby directed to accept any and all documents and instruments in

connection with or necessary to consummate the Transactions contemplated by the Agreement.

    27.  No governmental unit may revoke or suspend any right, license, trademark

or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

28.    To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

29.    Nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

30.    Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Agreement without further order of this Court.

31.    This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

32.    This Order and the Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases, the Committee, all

successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances.

33.     The failure specifically to include or make reference to any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement is authorized and approved in its entirety.

34.     The Court retains jurisdiction, even after the closing of these chapter 11 cases, with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Purchased Assets, from and against any of the Interests; (3) compel delivery of all Purchased Assets to the Purchaser; and (4) resolve any disputes arising under or related to the Agreement, the Sale or the Transactions.

35.     The Agreement and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; provided, however, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby (it being understood, for the sake of clarity, that no such modification, amendment or supplement shall be deemed to be material or shall be deemed to materially change the economic substance of the

transactions to the extent that the impact does not exceed two percent of the Purchase Price as defined in the Agreement); and provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or the prior consent of, the Official Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention:  Fred S. Hodara, Stephen Kuhn, and Kenneth Davis).

36.     The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Purchase Agreement prior to closing without further order of the Court.

37.     This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

38.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

39.     The provisions of this order are nonseverable and mutually dependent.


Dated: _____, 2009
       Wilmington, Delaware

                                    _____
                                    THE HONORABLE KEVIN GROSS
                                    UNITED STATES BANKRUPTCY JUDGE