IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | Hearing date: June 29, 2009<br>Objections due: June 22, 2009 |
| | Ref. Docket No. 874 |

------------------------------------------------------------X

### STATEMENT OF NORTEL NETWORKS UK LTD. IN SUPPORT OF NNI'S MOTION PURSUANT TO 11 U.S.C. § 105(A), § 363, § 503 AND FED. R. BANKR. P. 9019 FOR AN ORDER (A) APPROVING THE INTERIM FUNDING AND SETTLEMENT AGREEMENT, AND (B) GRANTING RELATED RELIEF

Nortel Networks UK Limited ("NNUK"), the proposed chapter 15 debtor in a related case pending before this Court,[1] hereby files this statement (the "Statement") in support of the motion by Nortel Networks, Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "US Debtors"), for the entry of an order approving the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Agreement"),[2] by and among the US Debtors, the Canadian Debtors (as defined below), including Nortel Networks Limited ("NNL"), the EMEA Debtors (as defined below) (all together, the "Parties" or the "Nortel Entities"), excluding Nortel Networks S.A., and for purposes of Section 17 of the Agreement

---

[1] On June 8, 2009, NNUK filed a petition with this Court under chapter 15 of the Bankruptcy Code. The hearing for recognition of the chapter 15 petition has been set for June 26, 2009. *In re Nortel Networks UK Limited*, Case No. 09-11972 (Bankr. D. Del. filed June 8, 2009).

[2] The description of the Agreement set forth herein is for informational purposes only. In the event of any discrepancy between the description and the terms of the Agreement, the terms of the Agreement shall govern.

only, the Joint Administrators (as defined below); and granting such other and further relief as the Court deems just and proper [Docket No. 874] (the "Motion"). In support of the Motion, NNUK respectfully states as follows:

## BACKGROUND

A.  Introduction

1. On January 14, 2009, (the "Petition Date"), the US Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"), and have thereafter continued to operate their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. On the Petition Date, NNI's ultimate corporate parent, Nortel Networks Corporation ("NNC"), NNI's direct corporate parent NNL, and certain of their Canadian affiliates (the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (Commercial List) under the *Companies' Creditors Arrangement Act* ("CCAA"), seeking relief from creditors (the "Canadian Proceedings"). The Canadian Proceedings have been recognized by this Court as foreign main proceedings pursuant to chapter 15 of the Bankruptcy Code.[3]

2. Also on the Petition Date, nineteen of the US Debtors' European affiliates, including NNUK (the "EMEA Debtors") commenced administration proceedings (the "UK Proceedings") under the *Insolvency Act 1986* before the High Court of Justice, Chancery Division, Companies Court (the "UK Court") represented by individuals from Ernst & Young LLP (the "UK Administrators")[4] and, in the case of Nortel Networks (Ireland) Limited ("NNIR")

---

[3] *See In re Nortel Networks Corporation, et al.*, Case No. 09-10164 (Bankr. D. Del. filed Jan. 14, 2009).

[4] Alan Robert Bloom, Christopher John Wilkinson Hill, Alan Michael Hudson and Stephen John Harris are the UK Administrators.

only, Ernst & Young Chartered Accountants (the "NNIR Administrators,"[5] and, together with the UK Administrators, the "Joint Administrators"). For additional background information on the corporate structure and business of the Nortel Entities and the EMEA Debtors, NNUK respectfully refers the Court to the Verified Petition for Recognition of Foreign Proceedings Pursuant to Chapter 15 of the United States Bankruptcy Code and the Declarations of Sharon L. Rolston and Stephen John Harris. *See In re Nortel Networks UK Limited*, Case No. 09-11972, D.I. Nos. 1, 3, 4 (Bankr. D. Del. filed June 8, 2009).

B.  The Interim Funding Settlement Agreement

3.  The Nortel Entities operated on an integrated basis across multiple jurisdictions. In order to allow Nortel to operate on a global basis and to allocate profits and losses and certain costs across the corporate entities, several Nortel companies entered into separate bilateral distribution agreements with NNL (the "Distribution Agreements"). Additionally, and for the same purposes, NNL, NNI, NNUK, NNIR, Nortel Networks S.A. and other affiliates (who are no longer parties to the agreement) entered into the Master Research and Development Agreement, dated as of December 22, 2004, (as amended from time to time, the "Master R&D Agreement"). Together, the Distribution Agreements and Master R&D Agreement formed the "Transfer Pricing Agreements."[6]

4.  In broad terms, the purpose of the Transfer Pricing Agreements was to compensate the Nortel Entities for expenses related to their research and development activity

---

[5] Alan Robert Bloom and David Martin Hughes are the NNIR Administrators.

[6] In addition, two group supplier protocol agreements, one between NNL and the Joint Administrators on behalf of the EMEA Debtors, and the other between NNI and the Joint Administrators on behalf of the EMEA Debtors, have been entered in respect of the inter-company trading of goods and services after the Petition Date (as amended from time to time, the "GSPAs").

and their production of intellectual property ("R&D Activity"). The Nortel Entities that have contributed, proportionate to the size of their business, the most to R&D Activity, namely NNUK and NNL, have continued to trade on the basis of the Transfer Pricing Agreements during the post-petition period as approved by this Court.[7] As such, NNUK and NNL have continued to incur trading losses, which includes expenditure on research and development.

5. NNI seeks this Court's approval of the Interim Funding Settlement Agreement, stating that the Agreement is reasonable and in the best interests of the US Debtors, their estates and creditors. NNI further states that the Agreement will allow the US Debtors the continued uninterrupted use of NNL's intellectual property, and maximize the likelihood of a successful resolution of the cases and that NNL will provide the post-petition services and pay the expenses on the US Debtors behalf in the future. Additionally, NNI states that the Agreement will relieve the US Debtors from the costs associated with time-consuming litigation that may result from disputes among the Nortel Entities concerning the Transfer Pricing Agreements.

6. Pursuant to the Agreement, NNI and NNL agreed, that for purposes of, and subject to the terms of the Agreement, an appropriate estimate of the value of the services incurred by NNL on behalf of NNI is $187 million (which includes a $30 million dollar transfer pricing payment made in January) for the period of January 14, 2009 to September 30, 2009 (the "Canada/US Period"). NNI and NNL further agreed that such amount is equal to the amount forecasted by NNL to be owed by NNI under the Master R&D Agreement for the Canada/US Period.

7. With respect to compensating the EMEA Debtors for their costs associated with researching and developing intellectual property for the Nortel group, following negotiations the

---

[7] See In re Nortel Networks, Inc., et al., Case No. 09-10138, D.I. No. 58 (Bankr. D. Del. filed Jan. 14, 2009).

Parties have agreed that the amount payable to NNUK should be $96.08 million for the period from January 14, 2009 to December 31, 2009 (the "Period") as full and final settlement pursuant to the Transfer Pricing Agreements – albeit that this amount is less than the forecasted total owed to NNUK under the Transfer Pricing Agreements for the Period. It was agreed that this amount could be settled first by self-settlement amongst the EMEA Debtors which in total amounts to $76.08 million and second by a total shortfall payment by NNL to NNUK of $20 million. NNL shall make these agreed upon payments to NNUK pursuant to and in accordance with the provisions of Part B of the Agreement. Moreover, entry of an order approving the Interim Funding and Settlement Agreement has no effect on the allocation of sale proceeds as contemplated in the Agreement. All rights are reserved in this regard including, but not limited to, the ownership, including beneficial ownership, of intellectual property.

## STATEMENT

8.  NNUK, joined by the EMEA Debtors and Joint Administrators, concur in NNI's view that the relief requested in the Motion is in the best interests of the US Debtors' estates and creditors and should, therefore, be granted. Since the Petition Date, the EMEA Debtors have been involved in the process that led to the filing of the Motion. During this period, the EMEA Debtors have worked alongside the US and Canadian Debtors to evaluate all available options to determine what lies in the best interest of the estates in order to achieve consensus on the final terms of the Agreement.

9.  If the Court does not approve the Agreement, and a settlement is not otherwise reached, it is possible that time-consuming litigation over the terms of the Transfer Pricing Agreements will commence and exert extreme liquidity pressures over the entire Nortel group.

Such an outcome could result in an additional cost to the US, Canadian and EMEA Debtors' estates as compared to the amounts payable pursuant to the Agreement.

10. Based upon the foregoing considerations, among others, NNUK, along with the EMEA Debtors and Joint Administrators, believe that the Agreement, in its present form and under current circumstances, is in the best interests of the US Debtors, their estates and creditors, and that the relief requested in the Motion should consequently be granted.

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, NNUK respectfully requests that the Court grant (i) the relief requested in the Motion and (ii) such other relief as is just and proper.

Dated: New York, New York
       June 22, 2009

                                        Respectfully submitted,

                                        BRACEWELL & GIULIANI LLP
                                        Daniel Connolly
                                        David Albalah
                                        1177 Avenue of the Americas
                                        New York, New York 10036-2714
                                        Telephone: (212) 508-6100
                                        Facsimile: (212) 508-6101
                                        daniel.connolly@bgllp.com
                                        david.albalah@bgllp.com

                                        -and-

                                        Evan Flaschen
                                        Katherine Lindsay
                                        225 Asylum Street, Suite 2600
                                        Hartford, Connecticut 06103-1534
                                        Telephone: (860) 947-9000
                                        Facsimile: (860) 246-3201

evan.flaschen@bgllp.com
katherine.lindsay@bgllp.com

-and-

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
James L. Patton, Jr.
Edwin J. Harron
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE 09801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
jpatton@ycst.com
eharron@ycst.com

*Attorneys for Alan Robert Bloom,
Christopher John Wilkinson Hill, Alan
Michael Hudson, and Stephen John Harris
In their Capacity as Joint Administrators
and Foreign Representatives for NNUK*