# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------X
:
In re                                            :        Chapter 11
                                                 :        Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                :        Jointly Administered
                                                 :
                            Debtors              :        Objection Deadline: July 14, 2009 at 4:00 p.m. (ET)
                                                 :        Hearing Date: Scheduled only if necessary
-------------------------------------------------X

## FOURTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM MAY 1, 2009 THROUGH MAY 31, 2009

This is a(n): __X__ monthly _____ interim _____ final application.

Name of Applicant:    Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide
Professional Services to:  Official Committee of Unsecured Creditors

Date of Retention: March 5, 2009 (nunc pro tunc to January 22, 2009)

Period for which Compensation
and Reimbursement is sought: May 1, 2009 through May 31, 2009

Amount of Compensation sought as
actual, reasonable, and necessary: $766,765.75

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: $54,512.10

The total time expended during this Compensation Period for the preparation of Akin Gump's Third Monthly Fee Application was 31.50 hours and the corresponding compensation is $14,231.00.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

8172752 v1

**Prior Fee Application:**

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/22/09 – 02/28/09 (First Monthly Fee Application) | $1,002,466.75 | $14,994.50 | On April 13, 2009, Akin Gump filed a Certificate of No Objection (Docket No. 596) with respect to the First Monthly Fee Application. Pursuant to the Administrative Fee Order, Akin Gump has received 80% of the fees and 100% of the expenses requested in the First Monthly Fee Application. |
| 03/01/09 – 03/31/09 (Second Monthly Fee Application) | $866,587.25 | $12,621.33 | On May 13, 2009, Akin Gump field a Certificate of No Objection (Docket No. 736) with respect to the Second Monthly Fee Application. Akin Gump has received 80% of the fees and 100% of the expenses requested in to the Second Monthly Fee Application. |
| 04/01/09 – 04/30/09 (Third Monthly Fee Application) | $919,594.75 | $22,201.07 | On June 15, 2009, Akin Gump filed a Certificate of No Objection (Docket No. 906) with respect to the Third Monthly Fee Application. Akin Gump has not received payment of the fees and expenses requested in the Third Monthly Fee Application. |

**SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
RENDERING SERVICES DURING THE PERIOD
MAY 1, 2009 THROUGH MAY 31, 2009**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 10 years; Admitted in 1989; Financial Restructuring Department | $925 | 11.10 | $10,267.50 |
| John W. Berry | Partner for 2 years; Admitted in 1999; Litigation Department | $675 | 38.00 | $25,650.00 |
| David H. Botter | Partner for 8 years; Admitted in 1990; Financial Restructuring Department | $825 | 78.10 | $64,432.50 |
| David J. D'Urso | Partner for 3 years; Admitted in 1997; Corporate Department | $700 | 25.20 | $17,640.00 |
| Paul B. Hewitt | Partner for 26 years; Admitted in 1974; Litigation Department | $755 | 1.30 | $981.50 |
| Fred S. Hodara | Partner for 20 years; Admitted in 1982; Financial Restructuring Department | $950 | 124.85 | $118,607.50 |
| Karol A. Kepchar | Partner for 10 years; Admitted in 1992; Intellectual Property Department | $620 | 26.30 | $16,306.00 |
| Jordan J. Metzger | Partner for 8 years; Admitted in 1984; Real Estate Department | $595 | 2.50 | $1,487.50 |
| David H. Quigley | Partner for 2 years; Admitted in 2000; Environmental Department | $565 | 2.70 | $1,525.50 |
| Abid Qureshi | Partner for 2 years; Admitted in 1995; Financial Restructuring Department | $675 | 25.05 | $16,908.75 |
| Bruce E. Simonetti | Partner for 5 years; Admitted in 1995; ERISA Department | $755 | 24.50 | $18,497.50 |
| Janet J. Tang | Partner for 6 years; Admitted in 2001; Beijing Practice | $660 | 1.50 | $990.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| W. Thomas Weir | Partner for 27 years; Admitted in 1973; Tax Department | $730 | 7.90 | $5,767.00 |
| Rolf Zaiss | Partner for 1 year; Admitted in 1993; Tax Department | $750 | 3.30 | $2,491.50 |
| James P. Chou | Senior Counsel for 1 year; Admitted in 1997; Litigation Department | $605 | 46.90 | $28,374.50 |
| Kenneth A. Davis | Senior Counsel for 2 years; Admitted in 1995; Financial Restructuring Department | $620 | 45.40 | $28,148.00 |
| Ira L. Rosenblatt | Senior Counsel for 1 year; Admitted in 1997; Corporate Department | $610 | 13.60 | $8,296.00 |
| Kevin M. Rowe | Senior Counsel for 9 years; Admitted in 1985; Tax Department | $650 | 62.20 | $40,430.00 |
| Alexander F. Anderson | Counsel for 3 years; Admitted in 2001; Tax Department | $580 | 28.60 | $16,588.00 |
| David T. Blonder | Counsel for 1 year; Admitted in 2001; Litigation Department | $500 | 3.40 | $1,700.00 |
| Michelle A. Burg | Counsel for 3 years; Admitted in 2001; Labor Department | $625 | 11.90 | $7,437.50 |
| Tony D. Feurstein | Counsel for 1 year; Admitted in 2003; Corporate Department | $580 | 124.10 | $71,978.00 |
| Charles E. Franklin | Counsel for 1 year; Admitted in 2003; Environmental Department | $470 | 2.50 | $1,175.00 |
| Ryan C. Jacobs | Counsel for 1 year; Admitted in 2004; Financial Restructuring Department | $530 | 247.55 | $131,201.50 |
| Austin S. Lilling | Counsel for 2 years; Admitted in 2001; Tax Department | $560 | 20.80 | $11,648.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Ning Lu | Counsel for 2 years; Admitted in 2002; Beijing Practice | $460 | 4.20 | $1,932.00 |
| David C. Vondle | Counsel for 1 year; Admitted in 2003; Intellectual Property Department | $490 | 18.70 | $9,163.00 |
| Laura T. Geyer | Senior Attorney for 1 year; Admitted in 1998; Intellectual Property Department | $410 | 4.90 | $2,009.00 |
| Brad M. Kahn | Associate for 2 years; Admitted in 2008; Financial Restructuring Department | $375 | 119.40 | $44,775.00 |
| Amy J. Lanctot | Associate for 4 years; Admitted in 2004; Corporate Department | $440 | 6.50 | $2,860.00 |
| Nyron Persaud | Associate for 2 years; Admitted in 2008; Tax Department | $375 | 4.00 | $1,500.00 |
| Joshua Y. Sturm | Associate for 3 years; Admitted in 2007; Financial Restructuring Department | $420 | 30.60 | $12,852.00 |
| Daniel Z. Vira | Associate for 9 years; Admitted in 1993; ERISA Department | $580 | 31.00 | $17,980.00 |
| Elizabeth J. Young | Associate for 3 years; Admitted in 2007; Litigation Department | $420 | 56.60 | $23,772.00 |
| Rebecca L.M. Barloon | Legal Assistant for 2 years; Financial Restructuring Department | $190 | 3.30 | $627.00 |
| Dagmara Krasa-Berstell | Legal Assistant for 19 years; Financial Restructuring Department | $210 | 1.20 | $252.00 |
| Peter J. Sprofera | Legal Assistant for 33 years; Financial Restructuring Department | $245 | 2.10 | $514.50 |

Total Amount of Fees:      $766,765.75
Total Number of Hours:    1,261.75
Blended Hourly Rate:        $607.70

8172752 v1

## COMPENSATION BY PROJECT CATEGORY
## MAY 1, 2009 THROUGH MAY 31, 2009

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 13.80 | $7,931.00 |
| Akin Gump Fee Applications/Monthly Billing Reports | 31.50 | $14,215.50 |
| Analysis of Other Professionals Fee Applications/Reports | 15.70 | $6,886.00 |
| Review/Preparation of Schedules, Statements | 2.50 | $1,345.50 |
| Retention of Professionals | 13.10 | $6,258.50 |
| Creditors Committee Meetings | 109.30 | $70,204.00 |
| Court Hearings | 9.40 | $6,781.50 |
| Financial Reports and Analysis | 5.70 | $3,462.00 |
| Executory Contracts/License Agreements | 2.30 | $1,231.00 |
| General Claims Analysis/Claims Objections | 22.00 | $9,615.00 |
| Analysis of Pre-Petition Transactions | 24.20 | $13,625.50 |
| Canadian Proceedings | 64.40 | $36,766.50 |
| Lift Stay Litigation | 2.00 | $873.00 |
| General Adversary Proceedings | 187.70 | $105,056.00 |
| Tax Issues | 100.50 | $64,977.50 |
| Labor Issues/Employee Benefits | 85.10 | $55,859.50 |
| Real Estate Issues | 10.50 | $5,138.50 |
| Exclusivity | 15.10 | $7,765.00 |
| Plan, Disclosure Statement and Plan Related Documentation | 1.10 | $462.00 |
| Asset/Stock Transactions/Business Liquidations | 360.30 | $220,849.50 |
| Travel (billed at 50% of actual time) | 20.35 | $14,154.75 |
| Environmental Matters | 8.90 | $5,002.00 |

8172752 v1

| Project Category | Total Hours | Total Fees |
|---|---|---|
| Intercompany Analysis | 122.40 | $88,914.50 |
| Committee Website | 0.30 | $57.00 |
| European Proceedings/Matters | 5.40 | $3,152.50 |
| Intellectual Property | 28.20 | $16,182.00 |
| **TOTAL** | **1,261.75** | **$766,765.75** |

8172752 v1

## DISBURSEMENT SUMMARY
### MAY 1, 2009 THROUGH MAY 31, 2009

| | |
|---|---:|
| Computerized Research, Corporate Service Fees & PACER Charges | $1,093.50 |
| Conference Call Charges | $40,209.83 |
| Courier Service/Postage | $20.88 |
| Duplicating (@ $0.10 per page) | $697.30 |
| Duplicating (Third Party Charges billed at cost) | $26.00 |
| Meals/Committee Meeting Expenses | $2,916.67 |
| Tax Charges for Services Rendered in China | $146.10 |
| Travel Expenses – Airfare | $3,829.12 |
| Travel Expenses – Ground Transportation | $3,638.65 |
| Travel Expenses – Lodging | $815.05 |
| Travel Expenses – Parking | $70.00 |
| Travel Expenses – Train Fare | $1,049.00 |
| | |
| **TOTAL** | **$54,512.10** |

8172752 v1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : | Jointly Administered |
|  | : |  |
| Debtors | : | <u>Objection Deadline</u>: July 14, 2009 at 4:00 p.m. (ET) |
|  | : | <u>Hearing Date</u>: Scheduled only if necessary |

------------------------------------------------------------X

**FOURTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT
OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD
FROM MAY 1, 2009 THROUGH MAY 31, 2009**

Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>" or the "<u>Applicant</u>"), co-counsel to

the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc., et al.

(the "<u>Debtors</u>"), hereby submits its fourth monthly application (the "<u>Application</u>") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "<u>Local Rules</u>"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "<u>Administrative Fee Order</u>"), for interim allowance of

compensation for services rendered in the aggregate amount of $766,765.75 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith in the amount of $54,512.10 for the period from May 1, 2009 through May 31, 2009 (the "Compensation Period"). In support of this Application, Akin Gump respectfully states as follows:

## I.   JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.   BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor (the "Monitor").

5.    On January 14, 2009, the High Court of Justice in England (the "UK Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceedings" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.    On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.    On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, nunc pro tunc to January 22, 2009. On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.    On March 20, 2009, Akin Gump filed its First Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period January 22, 2009 through February 28, 2009 (the "First Monthly Application"). In its

First Monthly Application, Akin Gump sought the award and allowance of fees in the amount of

$1,002,466.75 and the reimbursement of expenses in the amount of $14,994.50. On April 13,

2009, Akin Gump filed a Certificate of No Objection with this Court regarding the First Monthly

Application. Pursuant to the Administrative Fee Order, Akin Gump has received payment of

80% of the fees and 100% of the expenses requested in the First Monthly Application.

9.    On April 20, 2009, Akin Gump filed its Second Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period March 1, 2009 through March 31, 2009 (the "Second Monthly Application"). In its

Second Monthly Application, Akin Gump sought the award and allowance of fees in the amount

of $866,587.25 and the reimbursement of expenses in the amount of $14,080.55. On May 13,

2009, Akin Gump filed a Certificate of No Objection with this Court regarding the Second

Monthly Application.[2] Pursuant to the Administrative Fee Order, Akin Gump has received

payment of 80% of the fees and 100% of the expenses requested in the Second Monthly

Application.

10.    On May 22, 2009, Akin Gump filed its Third Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period April 1, 2009 through April 30, 2009 (the "Third Monthly Application"). In its Third

Monthly Application, Akin Gump sought the award and allowance of fees in the amount of

$919,594.75 and the reimbursement of expenses in the amount of $22,201.07. On June 15, 2009,

Akin Gump filed a Certificate of No Objection with this Court regarding the Third Monthly

---

[2] Following discussions with the U.S. Trustee, Akin Gump agreed to a voluntary reduction of $1,459.22 for expenses incurred during the period covered by the Second Monthly Fee Application, which reduction is reflected in the Certificate of No Objection filed on May 13, 2009.

Application. To date, Akin Gump has not received payment on account of the Third Monthly Application.

### III.    RELIEF REQUESTED

11.    By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $766,765.75, representing 1,255.15 hours of professional services and 6.60 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of $54,512.10.

12.    Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80% of its fees ($613,412.60) and 100% of its expenses ($54,512.10) relating to services rendered during the Compensation Period.

13.    Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases. There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these cases.

14.    As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

15.    Akin Gump has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the

Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines.

16.    In the ordinary course of its practice, Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

17.    In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

18.    Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

19.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

6

## Case Administration

(Fees: $7,931.00; Hours: 13.80)

20.    This subject matter relates to services rendered to the Committee to satisfy the Committee's continuing organizational and administrative needs and enable the Committee to continue to function as a coordinated group and to acquit its fiduciary duties.

21.    During the Compensation Period, Akin Gump reviewed and analyzed all motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto. In connection with such analyses, Akin Gump conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases. These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

22.    During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates. In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls. Akin Gump also regularly consulted with Jefferies, Capstone, FMC and Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

23.  Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

## Akin Gump Fee Application/Monthly Billing Reports

(Fees: $14,215.50; Hours: 31.50)

24.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including attorney time to insure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

## Retention of Professionals

(Fees: $6,258.50; Hours: 13.10)

25.     This subject matter relates to work performed by Akin Gump attorneys to satisfy Akin Gump's continuing disclosure obligations and to prepare supplemental declarations related thereto.  Akin Gump attorneys and paraprofessionals spent time during the Compensation Period preparing the Second Supplemental Declaration of Fred S. Hodara in Connection with the Application of the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Co-Counsel, *Nunc Pro Tunc* to January 22, 2009 (Docket No. 706), which was filed with this Court on May 6, 2009. Additionally, during the Compensation Period, Akin Gump, on behalf of the Committee, spent time analyzing and discussing with the Committee the terms of engagement of professionals retained by the Debtors to provide consulting services with respect to their pension obligations.

8

## Committee Meetings

(Fees: $70,204.00; Hours: 109.30)

26.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, with individual Committee members and with the Committee's other legal and financial advisors. Akin Gump, together with the other Committee professionals, held no less than five telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, Akin Gump had numerous telephonic conferences with individual Committee members and the chair of the Committee and their respective professionals.

27.    Prior to its meetings with the Committee, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the Committee's other professionals, the Committee, as well as individual Committee members. During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee discussing the status of pertinent matters in these proceedings.

28.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

9

## Court Hearings

(Fees: $6,781.50; Hours: 9.40)

29.    This subject matter relates to preparation for and attendance at hearings and other proceedings before this Court. Akin Gump attorneys appeared at two hearings held before this Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. Akin Gump attorneys prepared for Court hearings by reviewing all applicable motions and applications filed with the Court, including any responses thereto, and consulted with the Committee's other professionals and the Debtors' advisors to formulate appropriate strategies. Akin Gump's participation at such hearings was necessary to protect the interests of unsecured creditors.

## Intercompany Funding Issues

(Fees: $88,914.50; Hours: 122.40)

30.    Akin Gump attorneys, in consultation with the Committee's other advisors, spent considerable time during the Compensation Period negotiating with the Debtors, the Monitor, the Administrator and the ad hoc group of Nortel bondholders (the "Ad Hoc Bondholder Group") the terms of an agreement to address the funding needs of the Canadian and EMEA estates.

31.    Prior to the commencement of the Insolvency Proceedings, Nortel employed a transfer pricing methodology that historically determined the allocation of profit and loss among the various members of the Nortel family of companies (the "Transfer Pricing Payments"). There has been no determination that the historical Transfer Pricing Payments or methodology have been accurate or correct and the Committee reserves its rights with respect thereto. With the exception of a single $30 million postpetition Transfer Pricing Payment from Nortel Networks Inc. ("NNI") to NNL, the Transfer Pricing Payments have been suspended since the Petition Date and, as such, the Canadian Debtors have liquidity constraints. To address these

10

liquidity constraints, Akin Gump attorneys participated in numerous telephonic and in-person meetings, that in some instances lasted days at a time, where the parties engaged in extensive negotiations with respect to the appropriate quantum and mechanism to address the liquidity issues. On a parallel path with the negotiations, Akin Gump attorneys regularly consulted with the Committee to discuss strategic alternatives in the event the parties could not reach agreement. In connection therewith, Akin Gump prepared and served extensive discovery requests related to the Transfer Pricing Payments and inter-estate funding needs. The parties ultimately reached a compromise, which resulted in the Canadian, U.S. and EMEA estates entering into the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Interim Funding Agreement"), which is supported by the Committee and the Ad Hoc Bondholder Group. A hearing will be held on June 23, 2009 before the UK Court, and a joint hearing of the U.S. and Canadian Courts has been scheduled for June 29, 2009 to consider the Interim Funding Agreement.

### Canadian Proceedings

(Fees: $36,766.50; Hours: 64.40)

*a. Cross-Border Protocol*

32.    To coordinate the administration of the Debtors' Insolvency Proceedings, the Debtors sought this Court's approval of a cross-border protocol (the "Cross-Border Protocol") as part of the "first-day" relief. The Cross-Border Protocol was aimed at addressing certain jurisdictional, notice and administrative issues that may arise during the course of the Insolvency Proceedings. This Court approved the Cross-Border Protocol at the "first-day" hearings, and the Canadian Court approved the Cross-Border Border Protocol as part of its Initial Order. Since the Committee Formation Date, Akin Gump has spent time reviewing and analyzing the Cross-Border Protocol and has worked with the Committee's Canadian counsel, FMC, to determine if the protocol provides, among other things, necessary due process protections to the Debtors'

11

creditors. In order to allow discussions among the parties with respect to necessary modifications to the Cross-Border Protocol to continue, the Debtors and the Committee have entered into a series of stipulations (the "Protocol Stipulations") to extend the time in which the Committee could file a motion to reconsider the order approving the Cross-Border Protocol. The latest such stipulation was approved by the Court on June 12, 2009, extending the Committee's time to file such a motion until July 13, 2009. As part of the negotiations with respect to the Interim Funding Agreement, the Debtors agreed that they would seek approval from the U.S. and Canadian Courts of an amended Cross-Border Protocol, acceptable to the Committee. Approval of an amended Cross-Border Protocol is a condition to the effectiveness of the Interim Funding Agreement. As such, the Committee has worked closely with the Debtors during the Compensation Period to amend the Cross-Border Protocol to provide appropriate protections of the interests of the U.S. Debtors' unsecured creditors, and the Committee expects that an amended version will be submitted to the Courts for approval in the near term.

*b. Canadian Pleadings/Monitor's Reports*

33.       During the Compensation Period, Akin Gump attorneys worked closely with the Committee's Canadian counsel, FMC, to review all pleadings filed in the Canadian Proceeding, including the Canadian Debtors' most recent request to extend the stay of proceedings (collectively, the "Canadian Pleadings") and to analyze the impact the relief requested may have on the Debtors' estates and their creditors. In connection therewith, Akin Gump, along with FMC, participated in numerous conference calls and in-person meetings with the Debtors' Canadian and U.S. professionals to discuss the relief requested in the Canadian Pleadings, and negotiated appropriate forms of orders related thereto. Akin Gump, with the assistance of FMC,

kept the Committee apprised of all material developments in the Canadian Proceeding through regular detailed memoranda and, as appropriate, conference calls with the Committee.

34.    During the Compensation Period, the Monitor filed four reports with the Canadian Court, which provided the Canadian Court with an update on the progress of the Canadian Debtors' reorganization efforts and the Monitor's recommendation with respect to various matters raised in the Canadian Proceeding. Akin Gump reviewed each such report, discussed the reports with FMC, the Committee's financial professionals, as well as professionals for the Debtors, and, where appropriate, prepared memoranda for the Committee summarizing the Monitor's findings and recommendations and discussed strategic alternatives with respect to material items covered by the reports.

### Asset Sales

(Fees: $220,849.50; Hours: 360.30)[3]

35.    Akin Gump spent considerable time during the Compensation Period working closely with the Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts.[4]

### Financial Reports and Analysis

(Fees: $3,462.00; Hours: 5.70)

36.    Akin Gump reviewed and analyzed the Debtors' financial reports and forecasts during the Compensation Period, and assisted the Committee's financial professionals in summarizing such reports for the Committee. Additionally, Akin Gump attorneys participated in numerous conference calls with the Debtors and their professionals, the Committee's other

---

[3] The fees included in this category take into account certain fees billed by attorneys in Akin Gump's China office.

[4] For reasons of confidentiality, Akin Gump cannot disclose the specific matters worked on by Akin Gump attorneys related to this task code during the Compensation Period, but will provide such details to the Court and the U.S. Trustee upon request.

13

professionals, and individual members of the Committee, to discuss the Debtors' operational

performance and liquidity.

### Schedules and Statements

(Fees: $1,345.00; Hours: 2.50)

37.    As the Court is aware, on April 20, 2009, the Debtors filed Statements of

Financial Affairs for each of the 15 Debtor entities, as well as Schedules of Assets and Liabilities

for 11 of the Debtor entities (collectively, the "Schedules and SOFAs"). On May 29, 2009, the

Debtors filed the Schedules and SOFAs for the remaining Debtor entities. During the

Compensation Period, Akin Gump reviewed and analyzed the Schedules and SOFAs to properly

understand the magnitude of claims against the estates. Akin Gump also prepared a detailed

memorandum for the Committee which summarizes the Schedules and SOFAs to provide the

Committee with a thorough understanding of the Debtors' potential claims liability.

### Executory Contracts

(Fees: $1,231.00; Hours: 2.30)

38.    This subject matter relates to time spent by Akin Gump attorneys analyzing, and

advising the Committee with respect to, motions for the assumption or rejection of the Debtors'

executory contracts. During the Compensation Period, the Debtors filed the following notices of

rejection of executory contracts: (i) Third Notice of Rejection of Contracts and/or Personal

Property Leases (Docket No. 701); (ii) Fifth Notice of Rejection of Executory Contract(s) and/or

Personal Property Leases (Docket No. 794); and (iii) Sixth Notice of Rejection of Executory

Contract(s) and/or Personal Property Leases (Docket No. 812) (the "Rejection Notices"). In

connection with each Rejection Notice, Akin Gump analyzed the underlying agreements,

rejection damages claims and made recommendations to the Committee with respect to each

proposed rejection. Akin Gump's analyses of the Rejection Notices, with the assistance of the

14

Committee's other professionals, enabled the Committee to make informed decisions in

supporting or opposing the relief requested based on, among other things, the effect the rejection

of an applicable contract would have on the Debtors' continuing business operations and

financial wherewithal.

### Unexpired Leases and Real Estate Issues

(Fees: $5,138.50; Hours: 10.50)

39.    This subject matter relates to time spent by Akin Gump attorneys on matters

relating to the Debtors' real estate assets.  During the Compensation Period, Akin Gump

attorneys, in consultation with Capstone, continued an analysis of the Debtors' real estate

portfolio and proposed restructuring alternatives regarding such real property.  As part of that

analysis, Akin Gump spent time during the Compensation Period analyzing (i) the Debtors'

motion to extend the statutory period to assume or reject unexpired leases of nonresidential real

property (the "Unexpired Leases") and (ii) two notices filed by the Debtors to reject certain

Unexpired Leases.  In connection with each such motion or notice, Akin Gump analyzed the

underlying documents, summarized applicable portions of the motions for the Committee, and

discussed and made recommendations to the Committee with respect to the same.

### General Claims Analysis

(Fees: $9,615.00; Hours: 22.00)

40.    This subject matter relates to the analysis of claims asserted or contemplated to be

asserted against the Debtors' estates.  During the Compensation Period, Akin Gump: (a)

reviewed and analyzed proposed reclamation claim settlements; and (b) discussed with the

Debtors' professionals the setting of a bar date and development of a cross-border claims

protocol in these Insolvency Proceedings.

## Analysis of Prepetition Transactions

(Fees: $13,625.50; Hours: 24.20)

41.     This subject matter relates to the analysis of prepetition transactions and the events that led to the Nortel Debtors' bankruptcy filings.  During the Compensation Period, Akin Gump continued its in-depth review of legal and factual issues relating to the Debtors' prepetition capital structure, financing agreements and significant prepetition transactions.  In connection therewith, Akin Gump attorneys conducted extensive corporate due diligence, and participated in various conferences with the Committee, the Committee's financial advisors and the Debtors' senior management team and advisors regarding such subjects.  Additionally, Akin Gump, on behalf of the Committee, participated in numerous conference calls and meetings with the Debtors and professionals for Flextronics Corporation (the "Flextronics") during the Compensation Period to discuss the terms of a settlement of a commercial dispute (the "Dispute") between the Debtors and Flextronics with respect to the interpretation of the amending agreement entered into by the parties on January 13, 2009.  Akin Gump, with the assistance of the Committee's other advisors, analyzed the issues related to the Dispute, the relative strengths and weaknesses of the parties' cases in connection therewith, and negotiated modifications to the proposed settlement agreement (the "Settlement Agreement").  The Settlement Agreement was filed with this Court on May 22, 2009 and an order was entered approving the Settlement Agreement on June 11, 2009.  A complimentary motion was filed with the Canadian Court on June 8, 2009 and the Settlement Agreement was approved in the Canadian Proceeding on June 16, 2009.

16

## Tax Issues

(Fees: $64,977.50; Hours: 100.50)

42.    This subject matter relates to legal services rendered by Akin Gump relating to tax matters affecting the Debtors. During the Compensation Period, Akin Gump continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel Debtors' legacy transfer pricing system. In connection therewith, Akin Gump attorneys participated in numerous conferences with the Committee's other professionals and the Debtors' senior management team and advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

## Labor and Employee Benefits Issues

(Fees: $55,859.50; Hours: 85.10)

43.    This subject matter relates to services rendered by Akin Gump in connection with the analysis of the Debtors' benefits plans and general labor matters. During the Compensation Period, Akin Gump attorneys, together with the Committee's Canadian and European counsel, spent significant time analyzing the pension obligations of the Debtors and their affiliates, as well as the relative priorities and treatment of those liabilities in the Nortel Debtors' Insolvency Proceedings. In connection therewith, Akin Gump attorneys reviewed and analyzed the Debtors' pension plans and participated in several conferences with the Debtors' advisors to address the Committee's concerns surrounding such plans. Akin Gump attorneys also worked with the Committee's other professionals to prepare detailed memoranda for the Committee describing the plans and related issues in these Insolvency Proceedings.

### Environmental Issues

(Fees: $5,002.00; Hours: 8.90)

44.    During the Compensation Period, Akin Gump, on behalf of the Committee, reviewed and analyzed environmental due diligence materials in connection with the Debtors' potential restructuring alternatives, and participated in various internal conferences and meetings with the Debtors and their professionals concerning outstanding environmental due diligence requests and pending environmental issues.

### European Proceedings

(Fees: $3,152.50; Hours: 5.40)

45.    During the Compensation Period, Akin Gump worked closely with the Committee's European counsel, Ashurst, to examine and analyze all issues related to the European Proceedings, and through memoranda or conference calls, as appropriate, advised the Committee of the impact such issues may have on the Debtors' estates and their creditors.

### Non-Working Travel

(Fees: $14,154.75; Hours: 20.35)

46.    During the Compensation Period, Akin Gump attorneys spent 40.70 non-working hours traveling to Court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), Akin Gump has discounted this time by 50% and, accordingly, has billed 20.35 working hours traveling for the Compensation Period.

### Committee Website and Information Sharing Protocol

(Fees: $57.00; Hours: 0.30)

47.    This subject matter relates to services rendered by Akin Gump to assist the Committee in complying with the Committee's obligations under section 1102(b)(3) of the Bankruptcy Code. During the Compensation Period, Akin Gump worked with the Committee's

18

information agent, KCC, to update the website created for the Committee to communicate with

the Debtors' unsecured creditors to include public information related to these Insolvency

Proceedings.

## V.    ALLOWANCE OF COMPENSATION

48.    The professional services rendered by Akin Gump required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited not only the members of the Committee, but also

the unsecured creditor body as a whole and the Debtors' estates.

49.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

50.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ."  11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –

19

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

51.    The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 1261.75 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

52.    As shown by this application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $54,512.10 for which Akin Gump respectfully requests reimbursement in full.

53.    The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

54.    Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for Westlaw computer assisted legal research.

55.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

56.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

21

**WHEREFORE**, Akin Gump respectfully requests that this Court:

(a)    approve the allowance of $766,765.75 for compensation for professional services rendered to the Committee during the period from May 1, 2009 through and including May 31, 2009;

(b)    approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period from May 1, 2009 through and including May 31, 2009 in the amount of $54,512.10; and

(c)    authorize and direct the Debtors to immediately pay to Akin Gump the amount of $667,924.70, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:   New York, New York
         June 24, 2009

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____
Fred S. Hodara (*pro hac vice*)
A Member of the Firm
One Bryant Park
New York, New York 10036
(212) 872-1000
Co-Counsel to the Official Committee of
Unsecured Creditors

22