IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: June 29, 2009 @ 9:00 a.m. |
| _____ | ) | Responses Due: June 26, 2009 @ 12:00 p.m. |

**RESPONSE OF PENSION BENEFIT GUARANTY CORPORATION
TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY
INTO THE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE
BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE
AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES,
(E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F)
AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND
SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND
APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS' CDMA
AND LTE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND
ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
CONTRACTS AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

The Pension Benefit Guaranty Corporation ("PBGC") hereby responds to the Debtors' Motion for Entry of Orders (I)(A) Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal and Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' CDMA and LTE Business Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Certain Contracts and (C) the Assumption and Sublease of Certain Leases (the "Motion").

**BACKGROUND**

1.  PBGC is a wholly-owned United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2006). PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. When an underfunded plan terminates, PBGC generally becomes trustee of the plan and, subject to certain statutory limitations, pays the plan's unfunded benefits with its insurance funds. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361. ERISA provides that a pension plan's contributing sponsor and those affiliates that are members of the sponsor's controlled group, bear statutory responsibility for contributions and premiums owed with respect to the plan. *See* 26 U.S.C. §§ 412, 430; 29 U.S.C. §§ 1082, 1083, 1307(e)(2). In addition, in the event of a termination, the plan sponsor and members of the controlled group may be liable, pursuant to 29 U.S.C. § 1362, for the underfunding of the plan and, pursuant to 29 U.S.C. § 1306(a)(7), for the termination premium assessed with regard to the plan.

2.  Nortel Networks, Inc. ("NNI") is the contributing sponsor of the Nortel Retirement Income Plan (the "Pension Plan") within the meaning of 29 U.S.C. § 1301(a)(13). The Pension Plan is a single-employer defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321.

3.  PBGC estimates that the Pension Plan is underfunded by about $514 million.

4.	Nortel Networks Corporation ("Nortel") is the ultimate parent of over 100 businesses providing telecommunication equipment and services worldwide. On January 14, 2009, NNI and fourteen United States based affiliates (collectively, the "Debtors") filed for Chapter 11 bankruptcy protection in this Court. The Debtors' proceedings have been administratively consolidated, but not substantively consolidated. Concurrently, Nortel, together with several of its Canadian subsidiaries, filed for relief from their creditors with the Ontario Superior Court of Justice. Also, the English High Court of Justice placed 19 of Nortel's European subsidiaries into administration on the same date. Recently, Nortel's French subsidiary was placed into liquidation proceedings by the Commercial Court of Versailles, France.

5.	Upon information and belief, the Debtors own, directly or indirectly, an interest in business entities that have not filed for bankruptcy protection (collectively, the "Non-Debtors"). *See* e.g., Exhibit A of the Motion, Asset Sale Agreement dated as of June 19, 2009 (the "ASA"), at Section 2.1.1 (reference to "transfer or assignment of " Non-Debtor assets in the proposed sale).[1] There are numerous other business entities that are part of NNI's ERISA controlled group that are not participating in the Canadian, United Kingdom or French insolvency proceedings.

6.	The Motion seeks this Court's approval of auction, bidding and sale procedures with respect to the sale of certain assets involved in Nortel's wireless CDMA and LTE lines of business to Nokia Siemens. The assets to be sold include assets of the Debtors, Nortel and foreign and domestic Non-Debtors. Although a large number of Nortel employees will be hired by Nokia Siemens, Nokia Siemens will not assume responsibility for the Pension Plan.

---

[1] The proposed ASA lists the business entities that have not filed for bankruptcy at p. vi., as Exhibit "B" titled "Canadian Debtors; U.S. Debtors; EMEA Debtors; Non-Debtor Sellers."

7.	Neither proposed auction, bidding and sale procedures, nor the proposed Sale Order specify how the amount to be paid by Nokia Siemens for the CDMA and LTE assets will be allocated among the various entities that actually own the assets or describe a method for determining how to allocate those proceeds.[2]  Moreover, the procedures explicitly apply to assets of the Non-Debtors, which are not subject to the jurisdiction of this Court.

## DISCUSSION

### A.	THE PROPOSED PROCEDURES AND SECTION 363 SALE IMPROPERLY INCLUDE NON-DEBTOR ASSETS.

Bankruptcy Code section 363 applies only to the sale of property of the Debtors' estates.  See e.g. In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("in order for assets to come within the auspices of § 363, they must be property of the estate"); Novacare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.), 267 B.R. 46, 59 (Bankr. D. Del. 2001) (citing In re Signal Hill-Liberia Ave. Ltd. P'ship., 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[S]ales of property under § 363(f) are limited to sales of property of the estate.")).  And, any diversion of the proceeds from the sale of Non-Debtor assets before the claims of the Non-Debtors creditors are satisfied may violate Bankruptcy Code section 548[3] and applicable state law relating to fraudulent transfer and the Non-Debtors' obligations to their creditors.

---

[2] Sale Order Authorizing and Approving(A) the Sale of Certain Assets and of the Debtors' CDMA and LTE Business Free and Clear of all Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Contracts and (C) The Assumption and Sublease of Certain Leases.

[3] In the event of a subsequent bankruptcy of one of the Non-Debtors, diverting the proceeds of the sale of that entity's assets could be voidable if that entity was insolvent on the date of transfer or was left with unreasonably small capital.  See 11 U.S.C. § 548(a)(1).

In light of the foregoing, it is not appropriate to include the sale of Non-Debtor assets in the Auction or Sale Order approved by the Court for the Debtors' assets. Rather, the sale of the Non-Debtors' assets to Nokia Siemens should be addressed in separate sales agreements.[4] Alternatively, if Non-Debtor assets are included in the auction, bidding and sale procedures, those procedures should be modified to require the assets of each of the Non-Debtors included in the sale to be identified, and the proceeds attributable to those assets segregated and preserved for the creditors of the Non-Debtors, like the PBGC and the Pension Plan. This also will permit any competing bids on the assets of the Debtors and Non-Debtors to be compared and evaluated on an even basis.

### B. THE CLAIMS OF CREDITORS AGAINST NON-DEBTORS AND THEIR ASSETS CANNOT BE RELEASED BY THIS COURT.

The proposed Sale Order provides for a sale of the Debtors' and Non-Debtors' assets to Nokia Siemens "free and clear of all liens, claims and interests." Sale Order, at ¶ 21, pp. 15-16. However, as discussed above, the claims of the PBGC and the Pension Plan against Non-Debtors and their assets, are not subject to the Court's jurisdiction. Consequently, the Court should not enter an order with regard to the sale that releases or otherwise impairs the rights of creditors of the Non-Debtors, or undermines the rights of creditors in the assets of the Non-Debtors.

---

[4] The Asset Sale Agreement already provides for separate sale agreements for two Chinese subsidiaries. The proposed ASA lists the Chinese subsidiaries that are selling assets at p. vi., as Exhibit "A" titled "Other Sellers" and Exhibit "J" "China Asset Sale Agreement."

### C. THE PROPOSED BIDDING PROCEDURES SHOULD ADDRESS PENSION PLAN ISSUES.

As discussed above, NNI and each member of its controlled group, whether Debtor or Non-Debtor, are jointly and severally liable for statutory liabilities arising under ERISA with respect to the Pension Plan. 26 U.S.C. §§ 412, 430; 29 U.S.C. §§ 1082, 1083, 1306(a)(7), 1307(e)(2), 1342, 1362(a), 1368. In light of the foregoing, PBGC requests the proposed auction, bidding and sale procedures be modified to better reflect the effect of the potential ERISA pension liabilities on creditors' recoveries.

Specifically, a bidder should state whether it intends to hire any employees covered under the Pension Plan, and, if so, whether the bidder intends to assume pension liabilities and assets relating to those employees. Then the value of any assumed pension liabilities and the corresponding reduction in claims against the Debtors should be credited in determining the highest and best bid. This should not be a burden because the assumption of certain pension liabilities already are included in the Nokia Siemens offer. Asset Sale Agreement, ¶ 7.2 (c), p. 85.

*Remaining Portion of this page intentionally left blank.*

**CONCLUSION**

In light of the foregoing, PBGC asks that the auction, bidding and sale procedures set forth in the Motion and the proposed order be modified consistent with the above requests to exclude the assets of the Non-Debtors and to preserve the claims of the PBGC and Pension Plan against the Non-Debtors and their assets.

Dated: June 26, 2009

                                      Respectfully submitted,

                                         /s/ Vicente Matias Murrell
                                      ISRAEL GOLDOWITZ
                                      Chief Counsel
                                      CHARLES FINKE
                                      Deputy Chief Counsel
                                      STEPHEN D. SCHREIBER
                                      Assistant Chief Counsel
                                      VICENTE MATIAS MURRELL
                                      Attorney
                                      (MD Bar No. 9806240098)

                                      PENSION BENEFIT GUARANTY
                                      CORPORATION
                                      Office of the Chief Counsel
                                      1200 K Street, N.W., Suite 340
                                      Washington, D.C.  20005-4026
                                      Telephone:  (202) 326-4020, ext. 3580
                                      Facsimile:  (202) 326-4112

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: June 29, 2009 @ 9:00 a.m. |
| _____ | ) | Responses Due: June 26, 2009 @ 12:00 p.m. |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the accompanying Response of Pension Benefit Guaranty Corporation To Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal and Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' CDMA And LTD Business Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Certain Contracts and (C) the Assumption and Sublease of Certain Leases was served electronically on all parties, this June 26, 2009, through the Court's Electronic Filing System or to those parties listed below by the means specified.

James L. Bromley
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006
Fax: (212) 225-3999

Derek C. Abbott
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
Wilmington, DE 19801
Fax: (302) 658-3989

N. Lynn Hiestand
Skadden, Arps, Slate, Meagher & Flom, LLP & Affiliates
Four Times Square
New York, NY 10036
Fax: (212) 735-2000

Fred S. Hodara
Stephen Kuhn
Kenneth Davis
Akin Gump Strauss Hauer & Feld, LLP
One Bryant Park
New York, NY 10036
Fax: (212) 872-1002

Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Fax:  (302) 778-7845

Roland Hlawaty
Milbank, Tweed, Hadley & McCloy
One Chase Manhattan Plaza
New York, NY 10006
Fax: (212) 822-5735

                                              /s/ Vicente Matias Murrell
                                              Vicente Matias Murrell