**EXHIBIT A**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**MOTION RECORD**
**Interim Funding Agreement**
**(returnable June 29, 2009)**

June 22, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| TAB | DOCUMENT | PAGE |
|---|---|---|
| 1. | Notice of Motion returnable June 29, 2009 | 1 |
| 2. | Affidavit of John Doolittle, sworn June 22, 2009 | 26 |
| 3. | Draft Order re Interim Funding Agreement | 207 |

**TAB 1**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(returnable June 29, 2009)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on Monday, June 29, 2009 at a time to be determined or as soon after that time as the motion can be heard, at **393 University Avenue, Toronto, Ontario**.

PLEASE BE ADVISED that certain of the relief sought herein will be subject to a joint hearing between this Honourable Court and the United States Bankruptcy Court for the District of Delaware.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR AN ORDER:

(a)    Abridging the time for service of the Notice of Motion, the fifteenth report (the "Fifteenth Report") of the Ernst & Young Inc., as monitor (the "Monitor") and Motion Record in respect of this motion and dispensing with further service thereof;

(b)    Approving the interim funding and settlement agreement dated as of June 9, 2009 (the "Interim Funding Agreement") among the Applicants (as defined below), the Chapter 11 Debtors (as defined below), the EMEA Debtors (as defined below)[1] and the Joint Administrators (as defined below);

(c)    Approving certain amendments to the Initial Order (as defined below) arising from the Interim Funding Agreement providing for, inter alia, the creation of the Excess Funding Charge and the Shortfall Charge (each as defined below);

(d)    Approving the fifth, sixth and seventh extensions of the Canadian GSPA (as defined below);

(e)    Approving certain amendments to the Initial Order arising from amendments to the EDC Short Term Support Agreement (as defined below);

(f)    Approving certain amendments to the Cross-Border Protocol (as defined below); and

(g)    Such further and other relief as counsel may request and this Honourable Court deem just.

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)    References herein to "Nortel" are references to the global enterprise as a whole;

---

[1] All EMEA Debtors other than Nortel Networks S.A., a French entity, are parties to the Interim Funding Agreement.

DOCSTOR: 1715721\2

(b)     On January 14, 2009, this Court granted an initial order (subsequently amended and restated) (the "Initial Order");

(c)     Pursuant to the Initial Order, Ernst & Young Inc. was appointed as Monitor;

(d)     Also on January 14, 2009, certain of NNC's U.S. subsidiaries (the "Chapter 11 Debtors") made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

(e)     Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries ( the "EMEA Debtors") of the Nortel group incorporated in the Europe, Middle East and Africa region each obtained an administration order for appointment of administrators (the "Joint Administrators") from the English High Court of Justice under the Insolvency Act 1986;

(f)     On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code;

(g)     On May 28, 2009, the Commercial Court of Versailles, France (the "French Court;") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA").    In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA;

(h)     Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code;

**THE INTERIM FUNDING AGREEMENT**

(i)     Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the affidavit of John Doolittle sworn June 22, 2009 (the "Doolittle Affidavit");

4

- 4 -

(j)     Nortel is a highly integrated business with significant distribution and research and development operations around the world;

(k)     On filing, Nortel entered into two group supplier protocol agreements, one between the Applicants and the Joint Administrators on behalf of the EMEA Debtors, and the other between the Chapter 11 Debtors and the Joint Administrators on behalf of the EMEA Debtors (the "Canadian GSPA" and the "US GSPA", respectively, and together, as each has been and may be amended from time to time, the "GSPAs");

(l)     The GSPAs were entered into in respect of the inter-company trading of goods and services after the Filing Date;

(m)     Since filing, the parties have continued to extend and rely on the GSPAs in respect of basic trade payables. However, following the commencement of these proceedings, discussions began with various interested parties (the "Creditor Groups") concerning continued payments under the Nortel Transfer Pricing Regime within the context of Nortel's worldwide insolvency proceedings;

(n)     As a result, only one payment has been made in respect of amounts that could arguably be owed in respect of the Master R&D Agreement – a January 2009 payment of US$30 million by NNI to NNL;

(o)     In addition, the EMEA Debtors have neither made, nor received, any payments under the Nortel Transfer Pricing Regime since the Filing Date;

(p)     Without the receipt of these payments, NNL is currently facing significant liquidity pressure – pressure that puts NNL, and thus all of Nortel, at risk;

(q)     The various interested parties have been discussing possible solutions to NNL's liquidity issues for over two months. After extensive negotiation, NNL, NNI, the Monitor and the Joint Administrators, working with the Creditor Groups have reached a consensus;

(r)     The terms of the Interim Funding Agreement are set out in the Doolittle Affidavit and, among other things, result in settlement terms which will result in payments being made to NNL to satisfy its projected liquidity needs through to the end of September 2009;

## GROUP SUPPLIER PROTOCOL AGREEMENTS

(s)     Pursuant to previous orders of this Honourable Court, extensions of the Canadian GSPA have been previously approved up through the fourth extension of the GSPA;

(t)     The relevant parties subsequently entered into the fifth, sixth and seventh extensions (collectively, the "Extensions") of the GSPAs and they are currently set to expire on July 9, 2009;

(u)     The terms of the Interim Funding Agreement expressly provide for the parties' intentions that they continue to make monthly payments in respect of the inter-company trading of goods and services among the various Nortel entities;

## EDC

(v)     On filing, NNL and EDC entered into a Short Term Support Agreement dated as of January 14, 2009 (as the same has been subsequently amended and restated, the "Short Term Support Agreement") pursuant to which EDC agreed to provide further "Support" (as defined in the Short Term Support Agreement) to Nortel post-filing, which Support provided was to be secured by the EDC Charge;

(w)     NNL and EDC have now concluded arrangements which will result in the EDC Charge as currently constituted under the Initial Order being replaced in favour of a mechanism whereby EDC will be provided with cash collateral;

(x)     In connection with such arrangements, NNL and EDC have entered into an amendment to the Short Term Support Agreement as well as a cash collateral agreement (the "Cash Collateral Agreement") both dated as of June 18, 2009;

(y)     The previously committed support facility will become discretionary on EDC's part while at the same time, the Applicants will have the flexibility to post cash collateral in respect of any new Support provided to the Applicants up to a maximum of cash collateral permitted by applicable approvals;

- 6 -

(z)    In addition, any existing Support formerly secured by the EDC Charge (as defined in the Initial Order) will be collateralized by the posting of cash collateral pursuant to the Cash Collateral Agreement;

(aa)    In addition to securing outstanding financial assurances, cash collateral will also secure certain fees and expenses of EDC arising from the provision of Support and from the CCAA proceedings themselves. Such fees also formed part of the previously approved EDC arrangements, but will be modestly expanded to include the additional expense of the cash collateral mechanism;

(bb)    EDC will permit the EDC Charge to be vacated upon the approval of the new arrangements and the posting of cash collateral in the amount of approximately US$6.5 million including a deposit for fees and expenses in the amount of US$540,000;

(cc)    EDC has requested amendments to the Initial Order which reflect the fact that EDC will be relying upon the terms of the Cash Collateral Agreement, which amendments mirror those previously ordered in respect of those parties who currently have cash collateral facilities with the Applicant;

## CHANGES TO THE INITIAL ORDER

**Excess Funding Charge and the Shortfall Charge**

(dd)    The Interim Funding Agreement contemplates the creation of an Excess Funding Charge and Shortfall Charge (collectively, the "Proposed Charges");

(ee)    The Proposed Charges are to secure the payment obligations of NNL under the Interim Funding Agreement and, from the standpoint of the beneficiaries of those charges, are fundamental terms of the Agreement;

7

**EDC Charge**

(ff)    As set out above, the EDC Charge will be extinguished and discharged and certain amendments with respect to the cash collateral to be posted with EDC are to be incorporated into the Initial Order;

**Cross Border Protocol**

(gg)    One of the conditions to the effectiveness of the Interim Funding Agreement are agreed upon changes to the Cross Border Protocol;

(hh)    As of the date of this notice of motion, negotiations with respect to such changes are on going;

(ii)    To the extent that a consensus is reached, supplemental evidence will be provided in respect of such amendments,

**MISCELLANEOUS**

(jj)    The provisions of the CCAA;

(kk)    Such further and other grounds as counsel may advise and this Honourable Court permit.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)    The Doolittle Affidavit;

(b)    The Fifteenth Report; and

(c)    Such further and other relief as counsel may request and this Honourable Court deem just.

- 8 -

June 22, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4  CANADA

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930
Lawyers for the Applicants

TO:        Attached Service List

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO:     **OGILVY RENAULT LLP**
        Royal Bank Plaza, South Tower
        200 Bay Street, Suite 3800
        Toronto, Ontario M5J 2Z4

        Derrick Tay
        Mario Forte
        Jennifer Stam

        Email:   dtay@ogilvyrenault.com
                 mforte@ogilvyrenault.com
                 jstam@ogilvyrenault.com

        Tel:     416.216.4000
        Fax:     416.216.3930

        Lawyers for the Applicants

- 2 -

*10*

TO: **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:    416.943.3300

AND **GOODMANS LLP**
TO:  250 Yonge Street
Suite 2400
Toronto, ON  M5B 2M6

Jay Carfagnini
Joseph Pasquariello
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:    416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND **OSLER HOSKIN AND HARCOURT**
TO: **LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:  lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:    416.362.2111
Fax:    416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND **FASKEN MARTINEAU DUMOULIN LLP**
TO:  66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:    416.364.7813

Lawyers for Export Development Canada

- 3 -

11

| | |
|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, ON  K1A 1K3<br><br>Jennifer Sullivan<br><br>Email:    jsullivan@edc.ca<br><br>Tel:    613.597.8651<br>Fax:    613.598.3113 | AND TO: | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, ON  M5K 1K7<br><br>Robert I. Thornton<br>Michael Barrack<br>Rachelle Moncur<br>Leanne M. Williams<br><br>Email:    rthornton@tgf.ca<br>            mbarrack@tgf.ca<br>            rmoncur@tgf.ca<br>            lwilliams@tgf.ca<br><br>Tel:    416.304.1616<br>Fax:    416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |

**EXPORT DEVELOPMENT CANADA**

AND TO:

151 O'Connor Street
Ottawa, ON  K1A 1K3

Jennifer Sullivan

Email:    jsullivan@edc.ca

Tel:    613.597.8651
Fax:    613.598.3113

AND TO:

**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON  M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:    rthornton@tgf.ca
            mbarrack@tgf.ca
            rmoncur@tgf.ca
            lwilliams@tgf.ca

Tel:    416.304.1616
Fax:    416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:

**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:    john.stringer@mcinnescooper.com
            stephen.kingston@mcinnescooper.com

Tel:    902.425.6500
Fax:    902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:    jcarhart@millerthomson.com
            msims@millerthomson.com

Tel:    416.595.8615/8577
Fax:    416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:    barry.wadsworth@caw.ca
            lewis.gottheil@caw.ca

Tel.:    416.495.3776
Fax:    416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:

**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:    hharrison@boughton.ca

Tel:    604.687.6789
Fax:    604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

)2

AND TO:  **BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:  416. 367.6646
Fax:  416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:  416.367.6266
Fax:  416.361.7067

Email:  srappos@blgcanada.com
Tel:  416.367.6033
Fax:  416.361.7306

Lawyers for Bell Canada


AND TO:  **SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
monique.radlein@siskinds.com

Tel:  519.672.2121
Fax:  519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare


AND TO:  **LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:  416.307.4087
Fax:  416.304.3855

Email  jcontini@langmichener.ca
Tel:  416.307.4148
Fax:  416.304.3767

Email  arousseau@langmichener.ca
Tel:  416.307.4081
Fax:  416.365.1719

Lawyers for ABN AMRO Bank N.V.


AND TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Robert W. Staley
Gavin Finlayson

Email:  zychk@bennettjones.com
Tel:  416.777.5738
Fax:  416.863.1716

Email:  orzyr@bennettjones.com
Tel:  416.777.5737
Fax:  416.863.1716

Email:  staleyr@bennettjones.com
Tel:  416.777.4857
Fax:  416.863.1716

Email:  finlaysong@bennettjones.com
Tel:  416.777.5762
Fax:  416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group


DOCSTOR: 1600901\1

| | | | |
|---|---|---|---|
| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, ON  M5H 3R3 | AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON  M5H 3S1 |

AND TO:    **KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:  mzigler@kmlaw.ca
Tel:  416.595.2090
Fax:  416.204.2877

Email:  sphilpott@kmlaw.ca
Tel:  416.595.2104
Fax:  416.204.2882

Email:  dyiokaris@kmlaw.ca
Tel:  416.595.2130
Fax:  416.204.2810

Email:  amckinnon@kmlaw.ca
Tel:  416.595.2150
Fax:  416.204.2874

Lawyers for the Former Employees of Nortel

AND TO:    **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
Tel:  416.595.8615
Fax:  416.595.8695

Email  msims@millerthomson.com
Tel:  416.595.8577
Fax:  416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND TO:    **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:  jcarhart@millerthomson.com
Tel:  416.595.8615
Fax:  416.595.8695

Email:  msims@millerthomson.com
Tel:  416.595.8577
Fax:  416.595.8695

Email:  jmklotz@millerthomson.com
Tel:  416.595.4373
Fax:  416.595.8695

Lawyers for LG Electronics Inc.

AND TO:    **LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:  joseph.kim@lge.com

Tel:  +82.2.3777.3171
Fax:  +82.2.3777.5345

DOCSTOR: 1600901\1

14

AND TO:
**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:    harvey@chaitons.com

Tel:    416.218.1129
Fax:    416.218.1849

Lawyers for IBM Canada Limited

AND TO:
**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:    Shayne.kukulowicz@fmc-law.com
          Alex.macfarlane@fmc-law.com
          Michael.wunder@fmc-law.com

Tel:    416.863.4511
Fax:    416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND TO:
**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:    ken.rosenberg@paliareroland.com
Tel:    416.646.4304
Fax:    416.646.4301

Email:    max.starnino@paliareroland.com
Tel:    416.646.7431
Fax:    416.646.4301

Email:    lily.harmer@paliareroland.com
Tel:    416.646.4326
Fax:    416.646.4301

Email:    tina.lie@paliareroland.com
Tel:    416.646.4332
Fax:    416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:    patrick.shea@gowlings.com

Tel:    416.369.7399
Fax:    416.862.7661

Lawyers for Westcon Group

*15*

| | |
|---|---|
| AND TO: | **MINDEN GROSS LLP**<br>145 King Street West, Suite 2200<br>Toronto, ON  M5H 4G2<br><br>Raymond M. Slattery<br>David T. Ullmann<br><br>Email:  rslattery@mindengross.com<br>         dullmann@mindengross.com<br>Tel:    416.369.4149<br>Fax:    416.864.9223<br><br>Lawyers for Verizon Communications Inc. | **AIRD & BERLIS**<br>Brookfield Place<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9<br><br>Harry Fogul<br>Peter K. Czegledy<br><br>Email:  hfogul@airdberlis.com<br>Tel:    416.865.7773<br>Fax:    416.863.1515<br><br>Email:  pczegledy@airdberlis.com<br>Tel:    416.865.7749<br>Fax:    416.863.1515<br><br>Lawyers for Microsoft Corporation |

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
         dullmann@mindengross.com
Tel:    416.369.4149
Fax:    416.864.9223

Lawyers for Verizon Communications Inc.

AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:    416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:    416.863.1515

Lawyers for Microsoft Corporation

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Andrew, LLC

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
         smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:    604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

16

| | |
|---|---|
| AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street, West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON  M5H 3S1<br><br>Maurice Fleming<br><br>Email:  mfleming@millerthomson.com<br>Tel:    416.595.8686<br>Fax:    416.595.8695<br><br>Lawyers for Verint Americas Inc. and Verint Systems, Inc. | AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON  M5X 1E2<br><br>Bruce Darlington<br>Jonathan Davis-Sydor<br><br>Email:  bdarlington@davis.ca<br>Tel:    416.365.3529<br>Fax:    416.369.5210<br><br>Email:  jdavissydor@davis.ca<br>Tel:    416.941.5397<br>Fax:    416.365.7886<br><br>Lawyers for Brookfield LePage Johnson Controls Facility Management Services |
| AND TO: | **McMILLAN LLP**<br>Brookfield Place, Suite 4400<br>181 Bay Street<br>Toronto, Ontario  M5J 2T3<br><br>Andrew F. Kent<br>Tushara Weerasooriya<br>Hilary E. Clarke<br><br>Email:  andrew.kent@mcmillan.ca<br>Tel:    416.865.7160<br>Fax:    416.865.7048<br><br>Email:  hilary.clarke@mcmillan.ca<br>Tel:    416.865.7286<br>Fax:    416.865.7048<br><br>Email:  tushara.weerasooriya@mcmillan.ca<br>Tel:    416.865.7262<br>Fax:    416.865.7048<br><br>Lawyers for Royal Bank of Canada | AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9<br><br>Steven L. Graff<br>Ian E. Aversa<br><br>Email:  sgraff@airdberlis.com<br>Tel:    416.865.7726<br>Fax:    416.863.1515<br><br>Email:  iaversa@airdberlis.com<br>Tel:    416.865.3082<br>Fax:    416.863.1515<br><br>Lawyers for Perot Systems Corporation |

- 9 -

17

| | |
|---|---|
| AND TO: | **McMILLAN LLP**<br>Brookfield Place, Suite 4400<br>181 Bay Street<br>Toronto, Ontario M5J 2T3<br><br>Lawrence J. Crozier<br>Adam C. Maerov<br><br>Email:  lawrence.crozier@mcmillan.ca<br>Tel:    416.865.7178<br>Fax:   416.865.7048<br><br>Email:  adam.maerov@mcmillan.ca<br>Tel:    416.865.7285<br>Fax:   416.865.7048<br><br>Lawyers for Citibank | AND TO: | **BLANEY McMURTRY LLP**<br>2 Queen Street East,<br>Suite 1500<br>Toronto, ON M5C 3G5<br><br>Deborah S. Grieve<br><br>Email:  dgrieve@blaney.com<br>Tel:    416.593.2951<br>Fax:   416.593.5437<br><br>Lawyers for Alvarion Ltd. |

**AND TO:**  **McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:      416.865.7178
Fax:     416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:      416.865.7285
Fax:     416.865.7048

Lawyers for Citibank

**AND TO:**  **BLANEY McMURTRY LLP**
2 Queen Street East,
Suite 1500
Toronto, ON M5C 3G5

Deborah S. Grieve

Email:   dgrieve@blaney.com
Tel:      416.593.2951
Fax:     416.593.5437

Lawyers for Alvarion Ltd.

**AND TO:**  **BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario M5C 3G5

Domenico Magisano

Email:   dmagisano@blaney.com
Tel:      416.593.2996
Fax:     416.593.5437

Lawyers for Expertech Network Installation Inc.

**AND TO:**  **GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:     416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:      416.865.6641
Fax:     416.865.6636

Lawyers for Amphenol Corporation

**AND TO:**  **LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:      416.307.4087
Fax:     416.365.1719

Email:   arousseau@langmichener.ca
Tel:      416.307.4081
Fax:     416.365.1719

Lawyers for Right Management Inc.

**AND TO:**  **AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:   smitra@airdberlis.com
           svitorovich@airdberlis.com

Tel:      416.863.1500
Fax:     416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

- 10 -

18

<table>
<tr>
<td>AND<br>TO:</td>
<td>

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
           ainslie.benedict@nelligan.ca
           steven.levitt@nelligan.ca
           christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

</td>
<td>AND<br>TO:</td>
<td>

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman

Email:   bleonard@casselsbrock.com
           hgarman@casselsbrock.com

Tel:    416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:    416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

</td>
<td>AND<br>TO:</td>
<td>

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:    613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

</td>
</tr>
<tr>
<td>AND<br>TO:</td>
<td>

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street, West
Toronto, Ontario  M5H 3C2

Lydia Salvi

Email:   lsalvi@casselsbrock.com

Tel:    416.869.5409
Fax:   416.640.3195

Lawyers for Jabil Circuit Inc.

</td>
<td>AND<br>TO:</td>
<td>

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant

Email:   chris.besant@bakernet.com

Tel:    416.865.2318
Fax:   416.863.6275

Co-counsel for Jabil Circuit Inc.

</td>
</tr>
</table>

- 11 -

| | |
|---|---|
| AND TO: | **NELLIGAN O'BRIEN PAYNE LLP**<br>Barristers and Solicitors<br>50 O'Connor Street<br>Suite 1500<br>Ottawa, Ontario  K1P 6L2 |

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca

Tel:  613.231.8245
Fax:  613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND TO:  **COLBY, MONET DEMERS, DELAGE & CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:  ddropsy@colby-monet.com
Tel:  514.284.3663
Fax:  514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND TO:  **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:  theintzm@mccarthy.ca
Tel:  416.601.7627
Fax:  416.868.0673

Email:  jsirivar@mccarthy.ca
Tel:  416.601.7750
Fax:  416.868.0673

Lawyers for Frank Andrew Dunn

AND TO:  **SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel:  514.631.8787
Fax:  514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:  ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel:  416.863.1200
Fax:  416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:  **EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:  nanci@eurodata.ca
Tel:  613.745.0921
Fax:  613.745.1172

DOCSTOR: 1600901\1

- 12 -

AND TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:  tdunn@mindengross.com
Tel:    416.369.4335
Fax:    416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthurjacques@shibleyrighton.com
Tel:    416.214.5213
Fax:    416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND TO:
**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:  lbrady@baldwinlaw.ca
Tel:    613.771.9991
Fax:    613.771.9998

Lawyers for Sydney Street Properties Corp.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthurjacques@shibleyrighton.com
Tel:    416.214.5213
Fax:    416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:  cynthia.maher@ntscorp.com
Tel:    714.998.4351
Fax:    714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:   **LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :  jysimard@lavery.ca
Tel :    514.871.1522
Fax :    514.871.8977

Lawyers for Texas Landlords to Nortel Networks Inc.

AND TO:   **NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:  cynthia.maher@ntscorp.com
Tel:    714.998.4351

AND TO:   **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company of Canada

AND TO:   **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:  david.cohen@gowlings.com

Tel:    416.369.6667
Fax:    416.862.7661

Lawyers for General Electric Canada Equipment Finance G.P. and GE Capital Canada Leasing Services Inc.

AND TO:   **DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:  rschwill@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Email:  mgottlieb@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In Administration

AND TO:   **LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

- 14 -

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:      416.865.6944
Fax:     416.863.6275

Lawyers for Wipro Limited

23

## COURTESY COPIES:

AND TO:     **LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA  85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:     602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND TO:     **AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
         rjacobs@akingump.com

Tel:     212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND TO:     **CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:     212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND TO:     **MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:     212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:     212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:     212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

24

AND TO:   **VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email:   mschein@vedderprice.com

Tel:   212.407.6920
Fax:   212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND TO:   **MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :   andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :   403.267.8222
Fax :   403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND TO:   **BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:   312.602.5033
Fax:   312.602.5050

U.S. Lawyers for Tellabs, Inc.

25

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

NOTICE OF MOTION
(returnable June 29, 2009)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1715721\2

**TAB 2**

260

Court File No: 09-CL-7950

**ONTARIO**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE COMPANIES' CREDITORS ARRANGEMENT ACT,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn June 22, 2009)**

I, John Doolittle, of the city of Oakville in the Province of Ontario, MAKE OATH AND
SAY:

1.    I am the Treasurer of Nortel Networks Corporation ("NNC") and Nortel Networks

Limited ("NNL") and have held those positions since June 23, 2008. From October 14,

2002 to June 12, 2006 I was the Vice-President, Tax for NNC and NNL. As such, I have

personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where

I do not possess personal knowledge, I have stated the source of my information and, in

all such cases, believe it to be true.

2.    I swear this affidavit in support of the motion to approve:

(a)    an interim funding and settlement agreement dated as of June 9, 2009 (the

"Interim Funding Agreement") among the Applicants (as defined below), the

27

- 2 -

Chapter 11 Debtors (as defined below), the EMEA Debtors (as defined below)[1] and the Joint Administrators (as defined below). A copy of the Interim Funding Agreement is attached as Exhibit "A" hereto;

(b)    certain amendments to the Initial Order (as defined below) arising from the Interim Funding Agreement providing for, *inter alia*, the creation of the Excess Funding Charge and the Shortfall Charge (each as defined below);

(c)    certain amendments to the Initial Order arising from amendments to the EDC Short Term Support Agreement (as defined and discussed in more detail below); and

(d)    the fifth, sixth and seventh extensions of the Canadian GSPA (as defined below).

3.    References to "Nortel" herein are references to the global enterprise as a whole.

## BACKGROUND

4.    On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court, and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

---

[1] All EMEA Debtors other than Nortel Networks S.A., a French entity, are parties to the Interim Funding Agreement.

DOCSTOR: 1709155\10

28

- 3 -

5.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary, Nortel Networks Inc. ("NNI" and together with the other U.S. filing entities, the "Chapter 11 Debtors"), made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code") with the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

6.      Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries (the "EMEA Debtors") of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators (the "Joint Administrators") from the English High Court of Justice (the "UK Court") under the Insolvency Act 1986 (the "UK Insolvency Act").

7.      On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

8.      On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

29

- 4 -

9.     Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a

       petition with the U.S. Court for the recognition of the Administration Proceedings as they

       relate to NNUK under Chapter 15 of the Code.

10.    Further details regarding the background to these proceedings are set out in my affidavit

       sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these

       proceedings and are therefore not repeated herein.

## THE INTERIM FUNDING AGREEMENT

*Background*

11.    As was set out in the Initial Order Affidavit, Nortel is a highly integrated business with

       significant distribution and research and development operations around the world.  The

       Initial Order Affidavit set out several of the ways in which business was integrated across

       international lines, including cost allocation and profit sharing.

12.    NNL, NNI, NNUK, Nortel Networks (Ireland) Limited ("NNIR") and NNSA

       (collectively, the "Main Companies"), among others, are or have been the primary source

       of the research and development that has created Nortel's global technology footprint, the

       benefits of which are shared across multiple corporate entities within the Nortel group.

       These five Nortel entities also provide service and support on an ongoing basis to Nortel

       customers in their respective jurisdictions, as well as certain overhead and institutional

       support to Nortel entities and customers outside of their jurisdictions.  Certain other

       Nortel companies function primarily as sales operations, acting as intermediaries between

       the Main Nortel Companies and customers in jurisdictions not served by the Main Nortel

3D

- 5 -

Companies, and, in certain circumstances, providing ongoing service and support in their local jurisdictions.

13.     In light of the foregoing, certain Nortel entities, including the Main Nortel Companies, have entered into a number of agreements and have been engaged in certain practices designed both to allow Nortel to operate on a global basis and to allocate profits and losses, and certain costs, across the corporate entities within the Nortel Group.  These agreements include:

(a)     the Master R&D Agreement, dated as of December 22, 2004 among NNL, NNI, NNUK, NNIR, NNSA and other affiliates (as amended from time to time, the "Master R&D Agreement"); and

(b)     certain distribution agreements between one or more Nortel entities (the "Distribution Agreements" and together with the Master R&D Agreement, the "Transfer Pricing Agreements").

14.     For a number of years, Nortel has used "transfer pricing" to allocate profits and losses, and certain costs, among the various Nortel companies.  A more detailed description of Nortel's transfer pricing model was set out in the Initial Order Affidavit.  Transfer pricing is an accepted method for such allocation, used widely by multinational enterprises similar in structure and geographic scope to Nortel.

15.     In the case of Nortel, the Master R&D Agreement is the governing document pursuant to which the Nortel Group implemented its transfer pricing regime using the residual profit split methodology (the "Nortel Transfer Pricing Regime").  Among other things, the Nortel Transfer Pricing Regime was designed to determine the arm's length allocation

3\

- 6 -

due to each of the parties for their share of the profits and losses arising from "R&D Activity," as that term is defined in the Master R&D Agreement.

16.    In general terms, the Nortel Transfer Pricing Regime historically sought to allocate residual profits and losses among the Main Nortel Companies based on the proportionate share of R&D Activity conducted by or on behalf of, such affiliates.  Among other things, the Nortel Transfer Pricing Regime typically requires that profits and losses, and certain costs, be allocated among such affiliates during a calendar year under the Transfer Pricing Agreements (the "Transfer Pricing Payments") and that a true-up allocation is determined after the actual results for the year are known.

17.    Within Nortel, NNL is the owner of the vast majority of Nortel's intellectual property assets and, in accordance with the Master R&D Agreement, NNL licenses its intellectual property to the Main Nortel Companies on a royalty-free basis.  The Nortel Transfer Pricing Regime, in normal times, is the means by which NNL is compensated for the development and use of its intellectual property by affiliates.  NNL has historically been a net recipient of payments under the Nortel Transfer Pricing Regime given that NNL generates lower levels of revenue when compared to the high level of corporate overhead and R&D Activity incurred in Canada.

*Events Since Filing*

18.    As was set out in the Initial Order Affidavit, on filing, Nortel entered into two group supplier protocol agreements, one between the Applicants and the Joint Administrators on behalf of the EMEA Debtors, and the other between the Chapter 11 Debtors and the Joint Administrators on behalf of the EMEA Debtors (the "Canadian GSPA" and the "US

GSPA", respectively, and together, as each has been and may be amended from time to time, the "GSPAs"). The GSPAs were entered into in respect of the inter-company trading of goods and services after the Filing Date.

19. Since filing, the parties have continued to extend and rely on the GSPAs in respect of basic trade payables. However, following the commencement of these proceedings, discussions began with various interested parties, including Nortel, the Monitor, the Joint Administrators, the Official Committee of Unsecured Creditors of NNI (the "Creditors' Committee") and the ad hoc Bondholder Committee (the "Bondholders' Committee", together with the Creditors' Committee, the "Creditor Groups") concerning continued payments under the Nortel Transfer Pricing Regime within the context of Nortel's worldwide insolvency proceedings. In particular, issues were raised in light of substantial changes that have occurred and may continue to occur in respect of Nortel's business model given the uncertainties facing Nortel's business.

20. As a result, only one payment has been made in respect of amounts that could arguably be owed in respect of the Master R&D Agreement – a January 2009 payment of US$30 million by NNI to NNL (the "January Payment"). In addition, the EMEA Debtors have neither made, nor received, any payments under the Nortel Transfer Pricing Regime since the Filing Date. Without the receipt of these payments, NNL is currently facing significant liquidity pressure – pressure that puts NNL, and thus all of Nortel, at risk.

21. The various interested parties have been discussing possible solutions to NNL's liquidity issues for over two months. Among other possible solutions, NNL requested that payments be made by both NNI and certain of the EMEA Debtors to NNL in respect of research and development and other overhead services post-filing ("Post-filing

33

- 8 -

Services"). After extensive negotiation, NNL, NNI, the Monitor and the Joint Administrators, working with the Creditor Groups, reached the consensus outlined in the Interim Funding Agreement, which, if the conditions to its effectiveness are satisfied, should provide NNL with sufficient liquidity at least through September 30, 2009 based on the current weekly cash flow forecast attached to the Monitor's report.

*The Interim Funding Agreement*

22.    Following lengthy, difficult, and good faith negotiations, on or about June 9, 2009, the parties entered into the Interim Funding Agreement. The terms of the Interim Funding Agreement were premised on an agreement that the parties have reached that the value of the Post-filing Services and expenses incurred by NNL post-filing for the benefit of NNI for the period from the Filing Date through September 30, 2009 (respectively, the "NNI Interim Obligations" and the "Canada/US Interim Period"), would be estimated to be US$187 million (which includes the $30 million paid by NNI through the January Payment). Such amount is equal to the amount forecasted (in the March 2009 Financial Outlook) by NNL to be owed by NNI for such period under the Master R&D Agreement.

23.    These estimations were agreed upon by the parties in recognition of the fact that a precise allocation of the expenses that NNL incurs and the value of the Post-filing Services it provides on behalf of the other Nortel entities would be a time-consuming and difficult endeavour in light of the integrated nature of the Nortel entities. Additionally, any definitive and binding determination regarding the interpretation and applicability of the Nortel Transfer Pricing Regime similarly would be extremely time consuming and potentially contentious.

DOCSTOR: 1709155\10

- 9 -

24.     Capitalized terms used in this section and not otherwise defined shall have the meaning given to them in the Interim Funding Agreement.

25.     The main terms of the Interim Funding Agreement are as follows:

US/Canada Settlement Terms

(a)     NNI shall pay to NNL a sum total of US$157 million (the "Total Payment"), payable in five equal instalments of US$31.4 million in accordance with the schedule attached as Annex C to the Interim Funding Agreement;

(b)     The Total Payment shall be comprised of two (2) components:

  (i)     Permanent Payment: The first US$131 million of the Total Payment shall be paid on an indefeasible and permanent basis (the "Permanent Payment").

  (ii)    Contingent Payment: If it is determined, pursuant to a process to be agreed upon by NNL, NNI and the Creditor Groups, that the value of the NNI Interim Obligations is less than US$187 million (being the sum of the Total Payment and the January Payment), then any such portion thereof (being the difference between US$187 million and the value of the NNI Interim Obligations so determined) in excess of US$161 million (any such portion, the "Contingent Payment") shall be repaid by NNL to NNI on October 30, 2009 with interest thereon as provided for in the Interim Funding Agreement.

(c)     True-up Obligations:  NNL agrees to use commercially reasonable efforts to recover from Nortel entities, other than the Debtors (collectively, "Other Nortel Group Companies"), Transfer Pricing Payments that are determined to be owed to the Applicants by Other Nortel Group Companies with respect to the Canada/US Interim Period (the "ONGC Costs").  Solely to the extent that the Applicants actually receive funds in respect of the ONGC Costs from the Other Nortel Group Companies in excess of the amounts provided in the Applicants' forecast, based



- 10 -

on that certain March 2009 Financial Outlook dated April 14, 2009 previously furnished to the parties to the Interim Funding Agreement, from the Other Nortel Group Companies that are payors, with respect to such ONGC Costs (the "Excess Recoveries"), and it is also determined, pursuant to the process referred to in subparagraph (b)(ii) above, that the value of the NNI Interim Obligations is less than US$161 million (such difference, the "Overage Amount"), the Applicants shall, in addition to any payments made or required to be made in repayment of the Contingent Payment, pay U.S. Pro Rata Excess Recoveries (as defined below) to NNI, on behalf of the Chapter 11 Debtors, in an aggregate amount no greater than the lesser of (i) the Overage Amount, and (ii) US$30 million (the "Maximum Overage Repayment") within 30 days of the date of determination thereof; provided, however, that some or all of such payment shall not be made to the extent that such payment would, in the reasonable and sole judgment of the Monitor, after consultation with the Creditor Groups, materially and adversely impact the liquidity position of NNL, based on a pro forma 13 Week CF Forecast (as defined below) (giving pro forma effect to such payment) prepared by NNL, with assistance from the Monitor, and provided in advance of such decision by the Monitor to the Creditor Groups (the "NNL Liquidity Review Procedures"). The unpaid balance, if any, of the Maximum Overage Repayment shall be carried forward and shall be payable out of future U.S. Pro Rata Excess Recoveries actually received by the Applicants from Other Nortel Group Companies that are payors, subject to the NNL Liquidity Review Procedures outlined above, until paid in full. For the above-mentioned purposes, "U.S. Pro Rata Excess Recoveries," as of any date of determination shall equal the product of (i) the

36

- 11 -

Excess Recoveries as of such date of such determination (excluding any Excess Recoveries in respect of which NNI has already been paid U.S. Pro Rata Excess Recoveries) and (ii) a fraction (x) the numerator of which shall equal US$161 million minus the Overage Amount and (y) the denominator of which shall equal the aggregate amount of Transfer Pricing Payments payable or paid to the Applicants by Nortel Group entities (excluding the Applicants) that are payors for the Canada/US Interim Period (rounded to four decimal points). The general effect of this provision is that up to an additional US$30 million of the Total Payment may be repayable by NNL to NNI, out of specific funds recovered by the Applicants from certain other Nortel entities, but only to the extent that the value of the NNI Interim Obligations is determined to be less than US$161 million.

(d)    *Excess Funding Charge*:    NNL's obligation to repay to NNI the Contingent Payment and interest, if any, thereon, shall be secured by a charge against all of the assets of the Applicants (the "Excess Funding Charge"), which charge shall be granted by order of this Court and shall rank *pari passu* with the existing court-ordered charge in favor of Export Development Canada (the "EDC Charge"); provided, however, that if the EDC Charge is extinguished, then in such case the Excess Funding Charge shall be a second-ranking charge in the Canadian Proceedings, subordinate only to the Administration Charge (and in the case of the Carling Facility, the Carling Facility Charges) (as both such terms are defined

37

- 12 -

in the Initial Order), and such Excess Funding Charge shall not rank *pari passu* with any other charge that exists or may be granted in these proceedings.[2]

(e)     *Use of Funds:*   Under the terms of the Interim Funding Agreement, NNL is entitled to use the Total Payment for working capital and those other purposes as reflected in the 13 Week CF Forecast (the "Permitted Uses"). To the extent NNL seeks to use funds from the Total Payment for purposes other than the Permitted Uses, NNL must obtain the consent for such uses from NNI and the Creditor Groups.

(f)     *Settlement:*   The sum of the Total Payment and the January Payment (being US$187 million) is intended to be a full and final settlement of any and all NNI Interim Obligations.  Under the terms of the Interim Funding Agreement, the Applicants have agreed to indemnify, defend and hold harmless each Chapter 11 Debtor from and against any and all actions, claims, proceedings, costs, damages, losses, liabilities, judgments, amounts, fines, penalties, levies, compensations paid in settlement (provided NNL has agreed in writing to any such settlement or such settlement has been approved pursuant to a final court order) and expenses (including without limitation reasonable attorneys' fees and disbursements) resulting from a claim, demand, lawsuit, action or proceeding relating to, arising from or in connection with Transfer Pricing Payments for the calculation period in the applicable Transfer Pricing Agreements in respect of the Canada/US Interim Period.

---

[2] Since the entering into of the Interim Funding Agreement, the Applicants have confirmed with the Committees that the Goldman Charge (as defined in the Order of this Court made on June 1, 2009) shall continue to be a first priority charge, ranking *pari passu* with the Administration Charge, with respect to the assets secured by that charge.



- 13 -

Settlement Terms with EMEA Debtors

(g)    *EMEA Self-Funding; Shortfall Payments:* Under the terms of the Interim Funding Agreement, NNUK is irrevocably authorized to seek payment from other EMEA Debtors of Transfer Pricing Payments owed, or as such payments become due, under the relevant Transfer Pricing Agreements during, or with respect to, the period from the Filing Date to December 31, 2009 (the "EMEA Interim Period"), which amounts have been fixed by the Interim Funding Agreement.

(h)    *First Shortfall Payment*: Subject to the terms of the Interim Funding Agreement, NNL shall pay to NNUK the sum of US$10 million (the "First Shortfall Payment"):

    (i)    The First Shortfall Payment is to be paid out of the sale proceeds allocated to, and actually received by, NNL from the sale of assets where the aggregate amount of one or more allocations of sale proceeds to NNL from such sale (after taking into account certain adjustments) exceeds a threshold amount communicated to the Joint Administrators by NNL in a letter dated June 9, 2009 (with copies to the Monitor and the Creditor Groups) and counter-signed by the Joint Administrators (any such sale, a "Material Asset Sale");

    (ii)    Some or all of such payment shall be subject to the performance of NNL Liquidity Review Procedures (as set forth in the Interim Funding Agreement).

(i)    *Second Shortfall Payment*: Subject to the terms of the Interim Funding Agreement, NNL shall pay to NNUK the sum of US$10 million (the "Second Shortfall Payment" and together with the First Shortfall Payment, the "Shortfall Payments"), such amount to be paid out of the sale proceeds of a Material Asset Sale allocated to, and actually received by, NNL; *provided, however,* that some or

- 14 -

all of such payment shall again be subject to the performance of NNL Liquidity Review Procedures.

NNL, as the "clearing house" for transfer pricing, would normally be the recipient of payments from the payor Nortel entities and the distributor of such funds received to the recipient Nortel entities, under the transfer pricing regime. The provisions relating to the Shortfall Payments provide the Applicants with certainty of settling transfer pricing related claims by EMEA Debtors during the EMEA Interim Period.

(j)    *Shortfall Charge*:   NNL's obligation to make the Shortfall Payments shall be secured by a charge against all of the assets of the Applicants (the "Shortfall Charge"), which charge shall at all times rank *pari passu* with the Inter-company Charge (as defined in the Initial Order).   Without prejudice to the foregoing sentence, NNUK acknowledges that any current or future charges that have been, or may be granted to the Chapter 11 Debtors in connection with any funding provided by the Chapter 11 Debtors to the Applicants may, or could be senior to the Shortfall Charge, and consents to such charges being senior to the Shortfall Charge.

(k)    *Effectiveness of the Shortfall Payments and the Shortfall Charge*: The obligation of NNL to make the Shortfall Payments and the triggering of the Shortfall Charge

- 15 -

only occur upon the execution of transaction documents in respect of a "Subject Transaction".[3]

(l)    *Settlement:* Except with respect to the obligation of NNL to make the Shortfall Payments,

      (i)    the Interim Funding Agreement shall constitute a full and final settlement of any and all Transfer Pricing Payments owing and that may, or could be, owing between (i) the EMEA Debtors *inter se*, and (ii) an EMEA Debtor, on the one hand, and a Canadian Debtor or a US Debtor, on the other hand, as Transfer Pricing Payments under the Transfer Pricing Agreements for all calculation periods or parts thereof within the EMEA Interim Period including, without limitation, any subsequent determination by any revenue authority with respect to the EMEA Interim Period giving rise to any subsequent liability to taxation of any party to the Interim Funding Agreement;

      (ii)    Upon payment of the Shortfall Payments in full, the Shortfall Charge shall be automatically extinguished; and

      (iii)    It is expressly understood that Part B of the Interim Funding Agreement is intended to constitute a full and final settlement of all of the matters between the Applicants and the Chapter 11 Debtors, on the one hand, and the EMEA Debtors, on the other hand, set forth in Part B of the Interim Funding Agreement whether arising during, or related to, the EMEA Interim Period.

<u>General Settlement Terms</u>

(m)    *Intellectual Property Licenses:* Each of the Chapter 11 Debtors and the EMEA Debtors has agreed that it will enter into an Appropriate License Termination (as defined in Section 11.b. of the Interim Funding Agreement) with respect to the licenses and rights granted by NNL to such parties under or pursuant to the provisions of the Master R&D Agreement (such licenses and rights, the "IP

---

[3] "Subject Transaction" means the first sale of any material assets of any one or more of the Debtors of each of (i) the Applicants; (ii) the Chapter 11 Debtors; and (iii) the EMEA Debtors (excluding, however, any sale where the involvement of the EMEA Debtors is solely limited to Appropriate License Terminations).

4|

- 16 -

Licenses") for the purpose of facilitating, and in consideration of a right to an allocation to the parties of portions of the sale proceeds from, the sale of any material assets of any of the Applicants and/or the Chapter 11 Debtors to a third party (an "Asset Sale"); *provided, however,* that (x) in the case of the Chapter 11 Debtors, no Appropriate License Termination shall be effective without the prior written consent of the Creditor Groups (which consent in each case shall not be unreasonably withheld), and (y) in the case of the EMEA Debtors, Appropriate License Terminations shall be limited to only those Asset Sales where the project name of the referenced proposed transaction or/and the description of the scope of assets, businesses and technologies covered by such Asset Sales have been previously communicated to the Joint Administrators by NNL in a letter dated June 9, 2009 (with copies to the Monitor and the Creditor Groups) and counter-signed by the Joint Administrators.

(n)     *Sale Transactions:*  Each of the Applicants, the Chapter 11 Debtors and the EMEA Debtors (collectively, the "Debtors" or individually, a "Debtor") has agreed that its execution of definitive documentation with a purchaser (or, in the case of any auction, the successful bidder in any such auction) of, or consummation of any sale of, material assets of any of the Debtors to which such Debtor (a "Selling Debtor") is proposed to be a party (each, a "Sale Transaction") shall not be conditioned upon such Selling Debtor reaching agreement with the other Selling Debtors regarding (A) allocation of the sale proceeds ("Sale Proceeds") from the relevant Sale Transaction or (B) the binding procedure for the allocation of Sale Proceeds from the relevant Sale Transaction.  Pending the distribution of the Sale Proceeds, the entire amount of the Sale Proceeds (less

42

certain taxes and transaction costs) shall be deposited in an escrow account pursuant to an escrow agreement, the terms of which shall be negotiated and agreed by all Selling Debtors, in each case acting reasonably (the "Escrow Account"). In no case shall there be any distribution from the Escrow Account in advance of either (i) agreement of all of the Selling Debtors or (ii) in the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Sale Protocol (as defined below) applicable to the Sale Proceeds, and subject in each case to payment of the agreed or determined amount of allocation of Sale Proceeds to all Selling Debtors.

(o)    The parties have agreed to continue to negotiate in good faith and attempt to reach agreement on a timely basis on a protocol for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (the "Sale Protocol"), which Sale Protocol shall provide binding procedures for the allocation of Sales Proceeds where the Selling Debtors in such Sale Transaction have been unable to reach agreement regarding such allocation.

(p)    The Selling Debtors shall, immediately following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Sale Protocol, failing which the Sale Protocol shall apply to determine the allocation of the relevant Sale Proceeds.

(q)    No Debtor shall be required to enter into a Sale Transaction so long as such Debtor reasonably determines, acting in good faith and after consultation with the