**TAB G**

THIS AMENDMENT TO THE SECOND AMENDED AND RESTATED SHORT-TERM
SUPPORT AGREEMENT (the "Amendment") dated as of June 18, 2009 is made

BETWEEN

NORTEL NETWORKS LIMITED

(hereinafter called the "Principal")

AND

EXPORT DEVELOPMENT CANADA

(hereinafter called "EDC")

This is Exhibit..........G..............referred to in the
affidavit of.....Sara DooLiTTle.................
sworn before me, this.......22 nd.........
day of.......JuLy........................20 09.

.....J.J. Grissly M Fih.........
A COMMISSIONER FOR TAKING AFFIDAVITS

WHEREAS, pursuant to a Second Amended and Restated Master Facility Agreement dated as of
December 14, 2007 between the Principal and EDC (the "Facility Agreement"), EDC agreed to
provide Support for the benefit of the Principal and its affiliates, subject to the terms and
conditions of the Facility Agreement;

WHEREAS the Principal commenced a voluntary proceeding seeking relief including an initial
order (as amended, the "Initial Order") under the *Companies' Creditors Arrangement Act*
(Canada) (the "CCAA Proceeding") and the Principal's subsidiaries have commenced
administration proceedings in the United Kingdom and restructuring proceedings under Chapter
11 of the United States Bankruptcy Code;

WHEREAS the Principal and EDC entered into an Agreement dated as of January 14, 2009, as
amended by the Amended and Restated Short-Term Support Agreement dated as of February 10,
2009, by and between the Principal and EDC, as further amended by the Second Amended and
Restated Short-Term Support Agreement dated as of April 24, 2009 by and between the
Principal and EDC (collectively, the "Original Agreement"), pursuant to which EDC agreed,
among other things, that, until July 30, 2009, new Support would continue to be made available
to the Principal under the Facilities, to an aggregate maximum amount of USD 30 million; and

WHEREAS the Principal and EDC wish to further amend the terms and conditions of the
Original Agreement in accordance with the terms and conditions herein.

THEREFORE, for good and valuable consideration, the sufficiency of which is acknowledged,
the parties agree as follows:

1.    Unless otherwise defined herein, words and phrases herein shall have the meanings
      ascribed to them in the Facility Agreement, the Original Agreement or the Initial Order.

189

2

2.      Section 4 of the Original Agreement be and is hereby amended by deleting Section 4(a) in its entirety and replacing it with the following:

"The Principal shall (i) execute and deliver a cash collateral pledge agreement substantially in the form of Schedule C hereto and (ii) deliver cash collateral to EDC as continuing collateral security for (A) all new Support provided on or after January 14, 2009, whether before or after the date of this Agreement, and any renewals or extensions of such new Support, (B) all renewals or extensions of Support that was outstanding on January 14, 2009 provided on or before April 14, 2009 and (C) all agreed upon fees and expenses, all such cash collateral to be provided in an amount equal to the underlying Support where the underlying Support is in United States Dollars or, in each case where the currency of the underlying Support is not United States dollars, in the currency of the underlying Support in an amount equal to the underlying Support, and the Principal shall otherwise satisfy all applicable conditions set forth herein and in the Facility Agreement."

3.      The Conditions contained in Schedule A to the Original Agreement is hereby amended by deleting paragraph (g) in its entirety and replacing it with the following:

"(g)  Any Support requested under the Small Bonds Facility during the Interim Period shall be at the sole and unfettered discretion of EDC and the Principal acknowledges that EDC shall be under no obligation at any time to permit any use to be made of the Small Bonds Facility during the Interim Period notwithstanding that any conditions precedent to the provision of any such Support have been satisfied or that such Support is within the parameters contemplated by any EDC Agreements."

4.      The Conditions contained in Schedule A to the Original Agreement are hereby amended by the addition of the following:

"(j)  The Initial Order shall be amended, on terms satisfactory to EDC, to give effect to Section 4(a) hereof, as amended, on substantially the same terms as provided to the LC Banks in respect of the LC Cash Collateral in paragraphs 7(c), 10A, 44 and 46 of the Initial Order.

(k)  Upon the execution and delivery of the Cash Collateral Agreement and the provision of cash collateral as set forth in Section 4(a) hereof, the EDC Charge shall be of no further force and effect, and the Principal shall be at liberty to take such steps as it deems necessary to cancel such charge and to amend the Initial Order accordingly, and EDC agrees to do all things necessary or incidental to give effect to the cancellation of the EDC Charge, including without limitation the deletion of conditions (a) and (b) herein."

5.      Schedule B to the Original Agreement is hereby deleted in its entirety and replaced by Schedule B hereto.

6.      MISCELLANEOUS

(a)     Save only as expressly provided in this Amendment, the provisions of the Facility Agreement and the Original Agreement continue in full force and effect, and the

3

Facility Agreement, the Original Agreement and this Amendment shall be read and construed as one instrument.

(b) This Amendment shall be governed and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein.

(c) This Amendment may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

(d) This Amendment shall be binding upon and enure to the benefit of the parties and their respective successors and assigns.

(e) Any provision of this Amendment may be amended or waived if such amendment or waiver is in writing and is signed by the Principal and EDC.

[Remainder of page intentionally left blank]

191

IN WITNESS WHEREOF the parties have signed and delivered this Agreement as of the date first written above.

NORTEL NETWORKS LIMITED, as Principal

Per:
Name:                          J. Doolittle
Title:                          Treasurer

Per:
Name:
Name:        Gordon A. Davies
Title:       Chief Legal Officer
Address:     195 The West Mall Corporate Secretary
             Toronto, Ontario  M9C 5KI
             Facsimile: 905-863-8563

EXPORT DEVELOPMENT CANADA

Per:
Name:
Title:

Per:
Name:
Title:
Address:     151 O'Connor Street
             Ottawa, Ontario  K1A 1K3
             Facsimile: 613-597-8504

192

IN WITNESS WHEREOF the parties have signed and delivered this Agreement as of the date first written above.

**NORTEL NETWORKS LIMITED, as Principal**

Per: _____
Name:
Title:

Per: _____
Name:
Title:
Address:    195 The West Mall
            Toronto, Ontario  M9C 5KI
            Facsimile: 905-863-8563

**EXPORT DEVELOPMENT CANADA**

Per: _____
Name: Derek Austin
Title: Manager

Per: _____
Name: Anna Tzukakis
Title: Underwriter
Address:    151 O'Connor Street
            Ottawa, Ontario  K1A 1K3
            Facsimile: 613-597-8504

## SCHEDULE B

### FEES AND EXPENSES

(a)     For Support made available by EDC during the Interim Period, the Principal shall pay to EDC prior to the issuance of any Secured Support by EDC, a fee of 1.525% per annum calculated on the aggregate amount of such Support for the stated term thereof.

(b)     The Principal shall pay all reasonable fees and expenses of external legal counsel and external financial advisors incurred by EDC in connection with (i) the negotiation, preparation and implementation of this Agreement and all arrangements contemplated hereby including, without limitation, in connection with the CCAA Proceedings, the negotiation and preparation of the EDC Agreements and the provision of Secured Support or the renewal of any existing Secured Support and (ii) the negotiation and provision of advice in respect of any one or more sales of assets by the Principal or its affiliates in respect in respect of which EDC has issued Support.

(c)     EDC shall release, net of fees and expenses owed, the Principal's previous deposits of USD450,000 and CAD350,000 (for certainty, the Principal shall not be compelled to provide any further cash deposits pursuant to the terms of the Fees and Expenses Letter, as such term is defined in the Cash Collateral Agreement) upon receipt by EDC from the Principal of a new deposit of USD540,000 (the "Deposit"). The Deposit shall be applied by EDC to (i) the fees and expenses referenced in paragraphs (a) and (b) of this Schedule B and (ii) the fees and expenses of EDC's external legal counsel incurred in connection with the CCAA Proceedings. When the Obligations (as defined in the Cash Collateral Agreement) have been satisfied, the balance of the Deposit, if any, shall be returned by EDC to the Principal.   The Principal acknowledges and agrees that (i) any fees and expenses which are due and payable by the Principal to EDC and which are not recovered from Collateral (as defined in the Cash Collateral Agreement) and (ii) any amounts paid by EDC on behalf of, and at the request of, the Principal or its affiliates to a financial institution or a surety company in connection with the issuance, renewal or amendment of any letter of credit, letter of guarantee or surety bond shall constitute an unsecured claim against the Principal in the CCAA Proceeding and all such amounts shall be treated as if outstanding immediately prior to the commencement of the CCAA Proceeding.

194

## SCHEDULE C

## CASH COLLATERAL AGREEMENT

# TAB H

This is Exhibit.........H.............referred to in the
affidavit of......JOHN DOOLITTLE.........
sworn before me, this......22nd.........
day of.......Jun.........20.09.....

.....S.J. Castaldi, Notary.........
A COMMISSIONER FOR TAKING AFFIDAVITS

## CASH COLLATERAL AGREEMENT

THIS AGREEMENT is made as of the 18th day of June, 2009 among NORTEL NETWORKS LIMITED (the "Principal") and EXPORT DEVELOPMENT CANADA ("EDC").

RECITALS:.

WHEREAS, pursuant to a Second Amended and Restated Master Facility Agreement dated as of December 14, 2007 between the Principal and EDC (the "Facility Agreement"), EDC agreed to provide Support for the benefit of the Principal and its affiliates, subject to the terms and conditions of the Facility Agreement;

WHEREAS the Principal commenced a voluntary proceeding seeking relief including an initial order (as amended, the "Initial Order") under the *Companies' Creditors Arrangement Act* (Canada) (the "CCAA Proceeding") and the Principal's subsidiaries have commenced administration proceedings in the United Kingdom and restructuring proceedings under Chapter 11 of the United States Bankruptcy Code;

WHEREAS the Principal and EDC entered into an Agreement dated as of January 14, 2009, as amended by the Amended and Restated Short-Term Support Agreement dated as of February 10, 2009, by and between the Principal and EDC, as further amended by the Second Amended and Restated Short-Term Support Agreement dated as of April 24, 2009 by and between the Principal and EDC (collectively, the "Original Agreement"), pursuant to which EDC agreed, among other things, that, until July 30, 2009, new Support would continue to be made available to the Principal under the Facilities, to an aggregate maximum amount of USD 30 million; and

WHEREAS the Principal and EDC have further amended the terms and conditions of the Original Agreement as of the date hereof;

NOW THEREFORE for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenants, acknowledges, represents and warrants to and in favour of each other as follows: ·

1.      **Recitals Correct**

The Principal confirms the validity and truth of the facts set forth in the Recitals to this Cash Collateral Agreement, which have the same force and effect as if repeated herein at length.

2.      **Definitions**

Capitalized terms used in this Agreement and not otherwise defined herein have the meanings given to them in the Initial Order, the Facility Agreement and the Original

-2-

Agreement. Unless the context otherwise requires, in this Agreement the following terms are used with their corresponding defined meanings:

"**Agreement**" means this agreement. The terms "**this Agreement**", "**hereof**", "**hereunder**" and similar expressions refer to this Agreement and not to any particular Article, Section, Subsection, paragraph, clause or other portion of this Agreement. Each reference to a "Schedule" in this Agreement is a reference to a Schedule attached to this Agreement which shall form an integral part hereof.

"**Business Day**" means a day which is not a Saturday or a Sunday on which banks and trust companies are generally open for business in Toronto, Canada.

"**Collateral**" means (i) the Support Collateral, (ii) the Deposit, and (iii) all proceeds of personal property described in this definition and subject to the security hereby constituted.

"**Collateral Delivery Account**" means a U.S. dollar account of EDC at Royal Bank of Canada's branch located at 90 Sparks Street, Ottawa, ON identified as 00006-4015906 (SWIFT ROYCCAT2).

"**Deposit**" has the meaning ascribed thereto in Schedule B of the Original Agreement.

"**Fees and Expenses Letter**" means the fees and expenses letter dated January 27, 2009 by EDC as agreed to and accepted by the Principal January 28, 2009.

"**Lien**" means (i) any right of set-off intended to secure the payment or performance of an obligation, (ii) any interest in property created by way of mortgage, pledge, charge, lien, assignment by way of security, hypothecation, security interest, hire purchase agreement, conditional sale agreement, sale/lease back transaction, deposit arrangement, title retention, capital lease or discount, factoring or securitization arrangement on recourse terms, (iii) any statutory deemed trust or lien, (iv) any preference, priority, adverse claim, levy, execution, seizure, attachment, garnishment or other encumbrance which binds property, and (v) any agreement to grant any of the rights or interests described in clauses (i) to (iv) inclusive of this definition.

"**Obligations**" means all of the Principal's present and future payment, reimbursement and indemnity obligations owing to EDC under the Original Agreement and the Fees and Expenses Letter. For greater clarity, Obligations shall not include Unsecured Renewal Support (as defined in the Original Agreement).

"**Security**" means any and all Liens granted by the Principal to EDC in this Agreement.

"**Support Collateral**" means the funds transferred by the Principal to EDC pursuant to Sections 5 and 6 hereof.

- 3 -

## Extended Meanings

To the extent the context so admits, in this Agreement the following words and expressions shall be given the extended meanings set out opposite them:

an **"agreement"** - any agreement, oral or written, simple contract or specialty, bond, bill of exchange, indenture, instrument or undertaking.

an **"asset"** - any undertaking, business, property (real, personal or mixed, tangible or intangible) goodwill or other asset.

an **"authorization"** – any authorization, approval, consent, exemption, licence, permit, franchise, quota, privilege or no-action letter from any governmental authority or from any person in connection with any easements or contractual rights.

**"change"** - change, modify, alter, amend, supplement, extend, renew, compromise, novate, replace, terminate, release, discharge, cancel, suspend or waive.

**"claim"** - claim, claim over, cross-claim, counter-claim, defence, demand, liability, suit, action or proceeding, judgment, order or award of any court, other governmental authority, arbitrator or other alternative dispute resolution authority.

a **"document"** - a written agreement, consent, waiver, certificate, notice or other written document or instrument.

a **"final judgment"** - a judgment, order, declaration or award of a court, other governmental authority, arbitrator or other alternative dispute resolution authority of competent jurisdiction from which no appeal may be made or from which all rights of appeal have expired or been exhausted.

a **"government"** - (i) the Crown in right of Canada or in the right of any Province of Canada, (ii) the government of a Territory in Canada, (iii) a municipality in Canada or (iv) the government of a foreign country or any political subdivision of it.

a **"governmental authority"** – any court, administrative tribunal, regulatory authority, government, union of nations or any agency or other authority of a government or union of nations.

**"include"** – to be interpreted as if followed by the term "without limitation", and such term shall not be construed to limit any word or statement which it follows to the specific items or matters immediately following it or similar terms or matters.

**"losses and expenses"** - losses, costs, expenses, damages, penalties and judgments and awards of any court or other governmental authority, arbitrator, mediator or other alternative dispute resolution authority, including any applicable awarded costs, and legal fees and disbursements on a full indemnity basis.

- 4 -

**"obligations"** - indebtedness, obligations, promises, covenants, responsibilities, duties and liabilities (actual or contingent, direct or indirect, matured or unmatured, now existing or arising hereafter), whether arising by agreement or statute, at law, in equity or otherwise.

**"paid in full"** in relation to any payment obligation owing to any person (the "obligee") - permanent, indefeasible and irrevocable payment in cash (or other freely available funds transfer as may be expressly provided for in the applicable document creating or evidencing such payment obligation) to the applicable obligee in full of such payment obligation in accordance with the express provisions of the applicable document creating or evidencing such payment obligation, without regard to any compromise, reduction or disallowance of all or any item or part thereof by virtue of the application of any bankruptcy, insolvency, fraudulent conveyance, assignment, preference or other similar such laws, any law affecting creditors' rights generally or general principles of equity, and, if applicable, the cancellation or expiry of any commitment of the obligee to lend or otherwise extend credit.

a **"person"** - an individual, including an individual in his or her capacity as trustee, executor, administrator or other representative, a sole proprietorship, a partnership, an unincorporated association, an unincorporated syndicate, an unincorporated organization, a trust, including a business trust, a body corporate organized under the laws of any jurisdiction, a government or agency of a government or any other legal or commercial entity.

a **"proceeding"** - any proceeding, legal action, lawsuit, arbitration, mediation, alternative dispute resolution proceeding or other proceeding.

a **"receiver"** - a privately appointed or court appointed receiver or receiver and manager, or, except in the definition of "Receiver", an interim receiver, liquidator, trustee in bankruptcy, administrator, administrative receiver and any other like or similar official.

a **"representative"** - any person empowered to act for another, including an agent, director, officer or employee of a body corporate or an association and a trustee, executor or administrator of an estate.

**"rights"** - rights, titles, benefits, interests, powers, authorities, discretions, privileges, immunities and remedies (actual or contingent, direct or indirect, matured or unmatured, now existing or arising hereafter), whether arising by agreement or statute, at law, in equity or otherwise.

**"set-off"** - any right or obligation of set-off, compensation, offset, combination of accounts, netting, retention, withholding, reduction, abatement, deduction, counter-claim, cross-claim or any similar right or obligation, or (as the context requires) any exercise of any such right or performance of such obligation.

a **"successor"** of a person (the "relevant party") - (i) any amalgamated or other body corporate of which the relevant party or any of its successors is one of the amalgamating or merging body corporates, (ii) any person resulting from any court approved

- 5 -

arrangement of which the relevant party or any of its successors is party, (iii) any person to whom all or substantially all the assets of the relevant party is transferred, (iv) any body corporate resulting from the continuance of the relevant party or any successor of it under the laws of another jurisdiction of incorporation and (v) any successor (determined as aforesaid or in any similar or comparable procedure under the laws of any other jurisdiction) of any person referred to in clause (i), (ii), (iii) or (iv) of this definition. Each reference in this Agreement to any party hereto or any other person shall (where the context so admits) include its successors.

"**written**" and "**in writing**" - an original writing, a pdf or facsimile copy of a writing or an e-mail.

3.       **Reference to Agreements**

Each reference in this Cash Collateral Agreement to any agreement or document (including this Cash Collateral Agreement and any other term defined or incorporated by reference herein that is an agreement or document) at any time shall be construed so as to include such agreement or document (including any attached schedules, appendices and exhibits) and any amendment, modification or restatement thereof.

4.       **Grammatical Variations**

In this Cash Collateral Agreement, unless the context otherwise requires, (i) words and expressions (including words and expressions (capitalized or not) defined or given extended meanings) in the singular include the plural and *vice versa* (the necessary changes being made to fit the context), (ii) words in one gender include all genders and (iii) grammatical variations of words and expressions (capitalized or not) which are defined or incorporated by reference in this Cash Collateral Agreement shall be construed in like manner.

5.       **Collateral**

The Principal shall deposit USD $6,462,672.20 to the credit of the Collateral Delivery Account, being USD $5,992,672.10 for outstanding Secured Support and USD $540,000 as the Deposit. The Principal shall have no proprietary rights to the Collateral. Subject to Section 16, the Principal's sole rights in relation to the Collateral shall be to receive repayment from EDC of an amount equal to any unapplied balance of the Collateral remaining after the Obligations have been paid in full.

6.       **Additional Collateral**

In the event that the Principal requests EDC to provide new Support that would result in the contingent amount of the Obligations exceeding the outstanding balance from time to time of the Collateral , the Principal shall deposit the amount of such deficit to the credit of the Collateral Delivery Account prior to the provision of such new Support.

- 6 -

**7.      Dealings with Collateral**

EDC is irrevocably authorized and directed by the Principal to apply Collateral to satisfy the Obligations as they become due and payable in accordance with their terms.

**8.      Grant of Security Interest**

To secure the payment and performance of the Obligations, the Principal hereby grants a security interest and right of set-off to EDC in the Collateral, its rights under this Cash Collateral Agreement and any and all rights of the Principal therein and thereto.

**9.      Attachment**

The Principal agrees that value has been given, that the parties hereto have not agreed to postpone the time for attachment of the Liens contemplated hereby and that such Liens are intended to attach, as to all of the Collateral and the rights of the Principal under this Cash Collateral Agreement in which the Principal now has rights, when the Principal executes this Cash Collateral Agreement and, as to all Collateral and the rights of the Principal under this Cash Collateral Agreement in which the Principal only has rights after the execution of this agreement, when the Principal first has such rights.

**10.      Indemnity Obligations**

The Collateral shall be continuing collateral security for the due payment and performance of the Obligations.

**11.      Enforcement**

The Security shall become enforceable against the Collateral each and every time an Obligation becomes due and payable.

**12.      Application of Payments**

EDC may apply Collateral to the Obligations in such order and in such manner as EDC may in its sole discretion decide. EDC shall be entitled to reverse any such application and reapply any Collateral from time to time. EDC may grant extensions of time and other indulgences, take and give up guarantees and Liens, including the Security, modify or abstain from perfecting or taking advantage of Liens including the Security, accept compositions, grant releases and discharges and otherwise deal with the Principal, debtors of the Principal, any other person, sureties and others and with any guarantees and Liens, including the Security, all as EDC may see fit without prejudice to the Obligations or to the right of EDC to hold, deal with and realize the Security.

**13.      Condition Precedent to Effectiveness**

This Agreement shall not become effective unless and until the arrangements provided for herein are approved by the Ontario Superior Court of Justice pursuant to the CCAA Proceeding.

DM_TOR/231274-00017/3115083.7

- 7 -

**14.    No Merger**

This Cash Collateral Agreement shall not operate by way of merger of any Obligations or under any agreement by which the same may now or at any time hereafter be represented or evidenced and no judgment recovered by any of EDC shall merge or in any way affect the Security created by this Cash Collateral Agreement.

**15.    Security in Addition**

This Cash Collateral Agreement and the Security afforded hereby shall not be prejudiced by any collateral or other guarantees now or hereafter held by any of EDC in respect of the Obligations or any other obligations of the Principal to any of EDC or by any exchange, release or variation of any such collateral. The rights of EDC under this Cash Collateral Agreement are in addition to and not in substitution for any other Liens, collateral or guarantees now or hereafter held by EDC in respect of the Obligations.

**16.    Return of Support Collateral**

Upon receipt by EDC of a written release, in form and substance satisfactory to EDC, from a financial institution or surety company to whom EDC has issued a letter of credit, letter of guarantee or secured bond as Secured Support, the Support Collateral shall be reduced by an amount equal to such letter of credit, letter of guarantee or secured bond so released and the Principal shall be entitled to the repayment of an amount equal to such portion of the Support Collateral and EDC shall so repay, and shall release its security interest in, such amount.

**17.    Notices**

All notices, demands, requests or other communication of any kind (a "notice") that any party may be required or may desire to serve upon another party hereunder, shall be made in accordance with the Facility Agreement.

**18.    Changes**

No agreement purporting to change (other than waive) any provision of this Cash Collateral Agreement shall be binding upon the parties hereto unless that agreement is in writing and signed by the parties hereto. No waiver of strict performance or compliance with any provision hereof shall be binding upon any party hereto unless such waiver is in writing signed by the party sought to be bound thereby.

**19.    Time of the Essence**

Time is and shall remain of the essence of this Cash Collateral Agreement and each of its provisions.

**20.    Governing Law**

This Cash Collateral Agreement shall be governed by, and construed and interpreted in accordance with, the laws in force in the Province of Ontario, including the federal

202

- 8 -

laws of Canada applicable therein, but excluding choice of law rules. Such choice of law shall, however, be without prejudice to or limitation of any other rights available to EDC under the laws of any other jurisdiction where Collateral may be located. The Principal irrevocably attorns to and submits to the non-exclusive jurisdiction of the courts of the Province of Ontario located at Toronto with respect to any matter arising hereunder or related hereto.

21.    **Binding Effect**

This Cash Collateral Agreement shall enure to the benefit of EDC and their respective successors and permitted assigns and shall be binding on the Principal, its legal representatives (including receivers) and its successors.

22.    **No Third Party Rights**

No person who is not a party hereto shall be entitled to any benefit under this Agreement including so as to claim any rights against the Collateral.

23.    **Limitation Period**

The parties hereto agree to extend the limitation period under the *Limitations Act, 2002* (Ontario), other than one established by Section 15 of that Act, applicable to this Cash Collateral Agreement, and each provision hereof and any claim thereunder, to ten (10) years.

24.    **Headings**

The division of this Cash Collateral Agreement into Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Cash Collateral Agreement. The insertion in this Cash Collateral Agreement of headings are for the convenience of reference only and shall not affect the construction or interpretation of this Cash Collateral Agreement.

25.    **Receipt of Copy**

The Principal acknowledges receipt of an executed copy of this Cash Collateral Agreement.

26.    **Counterparts**

This Cash Collateral Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall be deemed to constitute one and the same instrument, and it shall not be necessary in making proof of this Cash Collateral Agreement to produce or account for more than one such counterpart. Transmission of a copy of an executed signature page of this Cash Collateral Agreement (including any change to this Cash Collateral Agreement ) by any party hereto to the other parties to this Cash Collateral Agreement by facsimile transmission or e-mail in pdf format, shall be as effective as delivery to the other parties hereto of a manually executed counterpart hereof.

DM_TOR/231274-00017/3115083.7



- 9 -

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

204

IN WITNESS WHEREOF this Cash Collateral Agreement has been executed and delivered by the parties hereto.

EXPORT DEVELOPMENT CANADA

Per: _____
Name: DEREK AUSTIN
Title: MANAGER

Per: _____
Name: Anna Tzulakis
Title: UNDERWRITER

NORTEL NETWORKS LIMITED

Per: _____
Name:
Title:

Per: _____
Name:
Title:

DM_TOR/231274-00017/3115083.7

IN WITNESS WHEREOF this Cash Collateral Agreement has been executed and delivered by the parties hereto.

EXPORT DEVELOPMENT CANADA

Per: _____
Name:
Title:

Per: _____
Name:
Title:

NORTEL NETWORKS LIMITED

Per: _____
Name:
Title:

Per: _____
Name:       Gordon A. Davies
Title:       Chief Legal Officer
             and Corporate Secretary

DM_TOR/231274-00017/3115083.7

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

AFFIDAVIT OF JOHN DOOLITTLE
(sworn June 22, 2009)

Ogilvy Renault LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:      (416) 216-4832
Email:    dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel:      416-216-4870
Email:    mforte@ogilvyrenault.com

Jennifer Stam LSUC #36735J
Tel:      (416) 216-2327
Email:    jstam@ogilvyrenault.com

Lawyers for Applicants

DOCSTOR: 1709155110

**TAB 3**

Court File No.: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | MONDAY, THE 29th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JUNE, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Interim Funding Agreement)**

**THIS MOTION,** made by Nortel Networks Corporation, Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for, *inter alia*, the approval of an interim funding and settlement agreement dated as of June 9, 2009 (the "Interim Funding Agreement") among the Applicants, the Chapter 11 Debtors (as defined in the Doolittle Affidavit, as defined below), the EMEA Debtors (as defined in the Doolittle Affidavit) and the

- 2 -

Joint Administrators (as defined in the Doolittle Affidavit) (other than the Joint Administrator appointed in respect of Nortel Networks S.A.) and the other relief set out in the Applicants' notice of motion dated June 22, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of John Doolittle sworn June 22, 2009 (the "Doolittle Affidavit") and the fifteenth report of Ernst & Young Inc. dated June ●, 2009 (the "Fifteenth Report") in its capacity as monitor (the "Monitor") and on hearing submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Katie Legree sworn June ●, 2009, filed.

1.    **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Fifteenth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.    **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Doolittle Affidavit.

3.    **THIS COURT ORDERS** that the Interim Funding Agreement, including without limitation, all of the settlements and reservations of rights provided for therein, be and is hereby approved and that the Applicants are hereby authorized and directed to comply with their obligations thereunder.

4.    **THIS COURT ORDERS** that, without limiting anything contained in paragraph 3 hereof, with respect to any matters referred to in Section 11.c. and 12.a. through 12.f. (inclusive) of the Interim Funding Agreement, as to which agreement or determination of any of the

- 3 -

Applicants is required, the Applicants shall include the Bondholders' Committee in any negotiations on such issues with the other Debtors or any related proceedings and any agreement or determination by the Applicants shall require prior consent of the Bondholders' Committee acting in good faith and the Monitor.

5.   **THIS COURT ORDERS** that, subject to the terms of the Interim Funding Agreement, the Extensions to the Canadian GSPA and the Accession be and are hereby approved.

6.   **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

7.   **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

210

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**ORDER**
(Interim Funding Agreement)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1712696\3

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**MOTION RECORD**
**Interim Funding Agreement**
**(returnable June 29, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants