IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | Hearing date: July 17, 2009 at 11:00 AM (ET)<br>Objections due: July 10, 2009 at 4:00 PM (ET) |

------------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER APPROVING A COMPROMISE OF A CONTROVERSY BETWEEN NORTEL NETWORKS INC. AND MOLINE DISPATCH PUBLISHING CO., LLC

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise a controversy between: (i) NNI and (ii) Moline Dispatch Publishing Co, LLC ("Moline") (Moline, together with NNI, the "Parties") as more fully described below and as set forth in the agreed terms of Settlement Agreement and Mutual Release (the "Settlement Agreement"), attached

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

hereto as <u>Exhibit B</u>; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

**A. Introduction**

3. On January 14, 2009 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("<u>NNC</u>"), NNI's direct corporate parent Nortel Networks Limited ("<u>NNL</u>," and together with NNC and their affiliates, including the Debtors, "<u>Nortel</u>"), and certain of their Canadian affiliates (collectively, the "<u>Canadian Debtors</u>")[2] filed an application with the Ontario Superior Court of Justice (the "<u>Canadian Court</u>") under the Companies' Creditors Arrangement Act (Canada) (the "<u>CCAA</u>"), seeking relief from their creditors (collectively, the "<u>Canadian Proceedings</u>"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only.

---

[3]    The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

### Relief Requested

9.      By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019: (a) authorizing the compromise of controversy between NNI and Moline, and (b) granting them such other and further relief as the Court deems just and proper.

### Facts Relevant to this Motion

**C.      Background of Current Dispute between the Parties**

10.     Moline is a Delaware corporation, with its principal place of business located in Illinois. Moline is a newspaper publishing company that offers high-speed network services to its subscribers. Moline planned to offer voice capabilities and higher data capabilities to its subscribers and ultimately selected Nortel to provide the network for such capabilities.

11.     Prior to the commencement of these Chapter 11 cases, Moline purchased a Wimax Network (the "Network") from Nortel under the Purchase and License Agreement and the Supplement No. 1 for the Wimax Project (the "Purchase Agreement"). Because of various

4

technical problems, the Network was never functional and the project never completed. Nortel has recently decided to exit the Wimax business.

**D.      The Proposed Settlement and Agreement**

12. Recognizing that obligations remained outstanding under the Purchase Agreement, following the decision to terminate the project, NNI and Moline entered into discussions to resolve and settle any potential claims that could arise between the parties relating to the Purchase Agreement. As a result of these negotiations, the Parties have proposed to resolve all potential claims and obligations that could exist under the Purchase Agreement through the agreed terms set forth in the attached Settlement Agreement, which includes the following substantive components:[4]

    a.  The parties agree that the Purchase Agreement and all obligations thereunder are terminated.

    b.  In full satisfaction of Moline's potential claims against NNI,[5] NNI has agreed, subject to approval by this Court, to release Moline from any remaining payment liability (approximately $647,000) for products delivered or services rendered under the Purchase Agreement and to allow Moline to keep the products delivered to Moline, listed in Exhibit A to the Settlement Agreement.[6]

    c.  In exchange, Moline has agreed to release Nortel from any potential claim or liability arising under the Purchase Agreement and to be subject to any License Use,

---

[4] This overview is merely intended to provide a general summary of the Settlement Agreement. To the extent that it conflicts with the Settlement Agreement, the Settlement Agreement shall control. Capitalized terms not defined herein have the meanings ascribed to them in the Settlement Agreement.

[5] All statements contained herein are for settlement purposes only and nothing in this motion shall be deemed an admission by any Party.

[6] No payment obligation was ever actually triggered because payment was due upon acceptance of the Network. Acceptance of the Network never occurred because the Network was never operational.

License Restrictions and limitations against Patents and Copyrights, which shall survive the termination of the Purchase Agreement.

**Basis for Relief**

14. The Debtors seek an order granting the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

15. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Coram Healthcare Corp., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004).

16. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

17. The Third Circuit has set out four criteria that a bankruptcy court should consider in determining whether a settlement proposal is within the range of reasonableness (the "Martin Factors"). The Martin Factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393; see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18. Applying the above factors to the instant matter, the Debtors submit that the settlement set forth in the Settlement Agreement is in the best interests of the Debtors' estates and their creditors. Under the Settlement Agreement, Moline is relinquishing all potential claims for damages, which the Debtors believes could be substantial.

19. While the Debtors are prepared to litigate the dispute, such litigation would add expense and the Debtors do not believe it would achieve a better result for NNI than the one achieved under the Settlement Agreement. Even if the Debtors were ultimately successful in a litigation, any litigation to pursue the issues otherwise resolved by the Settlement Agreement

would likely result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

20. Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Settlement Agreement. The Debtors believe that the interests of their creditors are supported by the prompt and efficient resolution of this dispute, and the minimization of administrative claims and expenses.

21. In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement is preferable to further opposition to Moline. The proposed Settlement Agreement and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim. For these reasons, the Debtors assert that the Settlement Agreement should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

22. Notice of the Motion has been given to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholders; (iv) Moline; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

23. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: June 26, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*