### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X
                                        :
*In re*                                 :    Chapter 11
                                        :
Nortel Networks Inc., *et al.*,[1]      :    Case No. 09-10138 (KG)
                                        :
                          Debtors.      :    Jointly Administered
                                        :
                                        :    **Hearing date: July 28, 2009 at 2:00 PM (ET)**
                                        :    **Objections due:  July 21, 2009 at 4:00 PM (ET)**
                                        :
--------------------------------------------------------X

### DEBTORS' MOTION AUTHORIZING INSURERS TO PAY
### CERTAIN COSTS AND FEES AND AMENDING
### THE AUTOMATIC STAY AS NECESSARY TO ALLOW SUCH PAYMENTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(a)(3)

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and 4001-1 of the Local

Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware (the

"Local Bankruptcy Rules"), (i) authorizing Chubb Insurance Company of Canada ("Chubb") to

pay certain defense costs and fees incurred both pre- and post-petition to the extent they are

covered under Chubb's Executive Protection Policy (No. 8156-36-67) (the "Chubb Policy"), (ii)

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

amending the automatic stay as necessary to allow such payments, and (iii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 362 of chapter 11 of title 11 of the United States Code, and Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Delaware.

## Background

### A.      Introduction

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On

---

[3]      The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main

proceedings under chapter 15 of the Bankruptcy Code.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

provided for the joint administration of these cases and for consolidation for procedural purposes

only [D.I. 36].

7.      On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee")

appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section

1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding

claims against certain of the Debtors and certain of the Canadian Debtors has also been

organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors'

cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events

leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of

First Day Motions and Applications (the "First Day Declaration").[4]

**Relief Requested**

9.      By this Motion, the Debtors seek an order pursuant to sections 105(a) and 362 of

the Bankruptcy Code (i) authorizing the payment of defense costs and fees incurred both pre-

and post-petition to the extent they are covered under the Chubb Policy, (ii) amending the

automatic stay as necessary to allow such payments, and (iii) granting them such other and

---

[4]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day
Declaration.

4

further relief as the Court deems just and proper. The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

10.    The Debtors do not request a determination of Chubb's obligation to pay any particular expense or claim under the Chubb Policy. Rather, the Debtors seek only the entry of an order authorizing Chubb to pay certain defense costs and fees to the extent they are covered under the remaining Chubb Policy and modifying the automatic stay, to the extent necessary, to allow Chubb to fulfill its obligations, whatever they may be, to pay defense costs and fees under the terms of the Chubb Policy, including amounts incurred both pre- and post-petition.

### Facts Relevant to this Motion

11.    The Chubb Policy was issued August 31, 1998 to Northern Telecom Ltd. Coverage was extended to all companies in which Northern Telecom Ltd. owned 50% or more of the voting shares and to all of Northern Telecom Ltd.'s subsidiaries. In 1999, Northern Telecom Ltd. became Nortel Networks Corporation ("NNC"), pursuant to the Chubb Policy, which was amended to provide coverage for all of the subsidiaries of NNC, including NNI.

12.    The Chubb Policy provides coverage for certain claims against Nortel (so-called "entity coverage") and its directors and officers in accordance with the terms of the policy.[5] (Such covered entities and individuals are referred to herein as the "Insureds"). Subject to various terms, conditions, limitations and exclusions, the Chubb Policy provides coverage for, among other things, liability costs for directors and officers arising from any error, misstatement, act, omission, neglect, or breach of duty allegedly based upon, arising from, or in consequence

---

[5]    The description of the Chubb Policy contained herein is provided for background purposes and is qualified in all instances by the terms of the Chubb Policy.

out of any securities transaction, including litigation defense costs and fees arising from related

civil and criminal investigations.  The policy period of the Chubb Policy commenced on August

31, 1998 and extended through November 1, 2001.  Because the Chubb Policy is a claims-made

policy, it only covers claims made or deemed to be made during the relevant policy period.

      13.     In 2004, Nortel and certain former Nortel directors and officers were sued in

numerous class actions in the United States for allegedly 1) making false statements which

artificially increased the price of Nortel's shares between October 24, 2000 and February 15,

2001 (the "Nortel I Litigation") and 2) misrepresenting Nortel's financial situation by creating

improper cash reserves and issuing false reports and financial statements that artificially inflated

Nortel's earnings and the price of Nortel securities between April 24, 2003 and April 27, 2004

(the "Nortel II Litigation").  In March 2006, Chubb, Nortel, and certain other insurers entered

into the Settlement Agreement and Release ("Settlement Agreement"). The parties to the

Agreement and their counsel agreed that the terms and negotiations leading to the agreement

would be confidential.  As a result of the confidential Settlement Agreement, Nortel no longer

claims any interest in the Chubb policy; however the Chubb Policy was not exhausted pursuant

to the Settlement Agreement and approximately ten percent of the limits of liability remain

available.  Thus, the Chubb Policy continues to provide coverage to other Insureds, including but

not limited to Frank A. Dunn.

      14.     Certain former Nortel directors and officers, including but not limited to Frank A.

Dunn, are currently subject to investigations by the U. S. Securities and Exchange Commission

("SEC") and Ontario Securities Commission ("OSC"), as well as certain other related

proceedings pending in Canada and the United States.  Given the nature of the charges, these

proceedings are not subject to the stays of proceedings imposed as a result of the January 14,

2009 filings.   Chubb has agreed to provide coverage for the defense of certain aspects of those

proceedings, subject to a complete reservation of its rights under the Chubb Policy.

15.    On January 29, 2009, Chubb notified Insureds, including but not limited to Frank

A. Dunn, that in light of these chapter 11 proceedings and the Canadian Proceedings, Chubb

would not be able to continue to pay any portion of the Insureds' defense costs and fees unless

and until an order was obtained from the appropriate court confirming the payment of such

defense costs and fees would not be a violation of the automatic stay.   The Canadian Court

issued such relief in an order dated April 28, 2009.

16.    In connection with the SEC and OSC investigations, and other proceedings,

certain defense costs and fees have been or will be incurred by Insureds on an ongoing basis,

both pre- and post-petition, which are similar to the types of costs and fees paid out of the Chubb

Policy pre-petition as detailed above and which constitute defense costs and fees that may be

covered by the Chubb Policy.   Chubb has expressed its willingness to continue to reimburse

such defense costs and fees to the extent they are covered under the Chubb Policy, including

amounts incurred both pre- and post-petition, but has requested that an order of this Court be

obtained confirming Chubb's authority to make payments under the Chubb Policy.   By

requesting that a motion for such an order to be filed, Chubb does not waive any of its rights

under the Chubb Policy.   The Debtors maintain that they have no interest in the Chubb Policy

and thus that the automatic stay is not implicated, but have, at the request of Frank A. Dunn's

counsel, requested this order in an abundance of caution.

## Basis for Relief

17.    Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable

powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

7

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This is consistent with the broad equitable authority of the bankruptcy courts. See, e.g., United States v. Energy Res. Co., 495 U.S. 545, 549 (1990).

18.     Generally, courts have held that a debtor's liability insurance policies are the property of the bankruptcy estate. In re Louisiana World Exposition, Inc., 832 F.2d 1391, 1399 (5th Cir. 1987). However, this jurisdiction has held that when the liability insurance policy only provides direct coverage to the directors and officers, the proceeds are not property of the estate. In re Allied Digital Technologies Corp., Case Nos. 00-4020-00-4024 (CGC) (Bankr. D. Del. March 16, 2004); see also In re World Health Alternatives, Inc., Case No. 06-10166 (PJW) (Bankr. D. Del. June 8, 2007) (holding that the proceeds of the Policy were not the property of the estate where the debtor had no right to any of the proceeds). Even when the proceeds are considered property of the estate, courts have lifted the automatic stay of section 362 to allow payments from insurance policies. See In re CyberMedica, Inc., No. 01-40659 (JBR) (Bankr. D. Mass. July 2, 2002).[6]

19.     Chubb has requested that an order be obtained confirming that the automatic stay be lifted, to the extent necessary, to allow Chubb to make payments to its Insureds, including but not limited to Frank A. Dunn, under the Chubb Policy. To be clear, the Debtors disclaim any interest in the remaining limits of liability of the Chubb policy. However, in an abundance of caution the Debtors seek approval of the lifting of the stay, to the extent necessary, to allow Chubb to make payments to its Insureds, including but not limited to Frank A. Dunn, as it is not

---

[6]     The Debtors do not request that this Court make a definitive determination as to whether the proceeds of the Chubb Policy are property of the Debtors' estates or not. The rights of all parties in interest to assert that the proceeds of the Chubb Policy are, or are not, property of the Debtors' estates are reserved.

expected such payments will adversely affect their estates as the Debtors disclaim any interest in these funds.

20.     The defense costs and fees paid under the Chubb Policy are necessary and beneficial to these former directors and officers in the ongoing investigations and other proceedings.  These costs are expected to be relatively moderate given the small number of individuals involved and the Debtors believe such payments will leave sufficient proceeds to cover any future costs, fees, judgments or settlements against the Chubb Policy.  As such, the Debtors request that the stay is lifted, to the extent necessary, to authorize Chubb to make such payments.

### Notice

21.     Notice of the Motion has been given via first class mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; and (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

22.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  July 2, 2009
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*