IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re*                                          : Chapter 11
:
Nortel Networks Inc., *et al.*,[1]               : Case No. 09-10138 (KG)
:
        Debtors.                    : Jointly Administered
:
: Hearing date: July 28, 2009 at 2:00 p.m. (ET)
: Objections due: July 21, 2009 at 4:00 p.m. (ET)
------------------------------------------------------------X

### DEBTORS' MOTION FOR AN ORDER APPROVING A COMPROMISE OF A CONTROVERSY BY AND AMONG (I) NORTEL NETWORKS INC. AND (II) TESTING HOUSE DE MEXICO S DE RL DE CV

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise certain prepetition claims that Testing House de Mexico S de RL de CV ("Testing House," and together with NNI, the "Parties") asserts against NNI and certain disputes in connection therewith as more fully described below and as set forth in the Stipulation Approving Satisfaction of the Allowed Administrative Expense Claim and General Unsecured Claim of Testing House de Mexico S De RL de CV (the "Stipulation"), attached hereto as Exhibit B; and granting them such

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

**A.    Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.  On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.  Debtors' Corporate Structure and Business**

8.  A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

### Relief Requested

9.  By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019: (a) authorizing the compromise of a controversy between NNI and Testing House, and (b) granting them such other and further relief as the Court deems just and proper.

---

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

## Facts Relevant to this Motion

**C.     Background of Current Dispute between the Parties**

10.     Testing House is a Mexican company that provides test fixtures to NNI or its contract manufacturers that are unique to Nortel. These test fixtures are integral in testing Nortel products and maintaining quality control across the supply chain.

11.     After the Petition Date, NNI paid Testing House for assemblies related to job numbers J8M-1171, J8M-1175, J8M-1176, J8M-1177, and J8M-1178 in full and that certain assembly related to job number J8M-1172 in part.[5] These assemblies were necessary in order to meet customer demand.

12.     Notwithstanding the fact that it received payment for the assemblies referenced above (with the exception of part of one invoice that was stayed under section 362 of the Bankruptcy Code), Testing House refused to release the assemblies to NNI. Testing House argued that the automatic stay does not apply to it because it is a Mexican company doing business in Mexico.

13.     The Debtors vehemently opposed, and continue to oppose, Testing House's position that the automatic stay of section 362 of the Bankruptcy Code does not apply to foreign entities doing business outside of the United States. However, given the practical realities and attendant costs associated with litigating these issues in a foreign jurisdiction, and the pressing necessity to receive the fixtures referenced above in a timely manner in order to meet customer demand, the Debtors determined that resolving the dispute and certain other claims in the manner set forth in the Stipulation, which resolution would not require any payment by the Debtors

---

[5]     These payments were authorized under the Order granting Debtors' Motion for an Order Pursuant to Sections 363(c), 503(b), and 105(a) of the Bankruptcy Code Granting Administrative Expense Status to Debtors' Obligations Arising From the Post-Petition Delivery of Goods and Services Ordered Pre-Petition and Authorizing Debtors to Pay Such Obligations in the Ordinary Course of Business [D.I. 81].

beyond any distribution to which Testing House would be entitled under the Bankruptcy Code, would be more beneficial to the Debtors, their estates and their creditors, than litigating the dispute.

**D.     The Proposed Settlement and Agreement**

14.     The Parties entered into negotiations to discuss the resolution and settlement of the dispute. As a result of these negotiations, the Parties have proposed to resolve their dispute pursuant to the agreed terms set forth in the attached Stipulation, which includes the following salient components:[6]

> a.     NNI has agreed, subject to approval by this Court, to stipulate that Testing House has an administrative expense claim in the amount of $66,390 under section 503(b)(9) Bankruptcy Code for certain other goods purchased and received by NNI in the ordinary course of business in the twenty (20) days preceding the Petition Date (the "Administrative Expense Claim").
>
> b.     NNI has also agreed to stipulate that Testing House has a general, unsecured claim in the amount of $171,080 for certain goods and services purchased and received by NNI prior to the Petition Date (the "Prepetition Claim"). The invoices relating to the Administrative Expense Claim and Prepetition Claim are set forth in the Stipulation.
>
> c.     In exchange for NNI's agreement as to the amount of Testing House's Administrative Expense Claim and Prepetition Claim, Testing House has released those fixtures related to job numbers J8M-1171, J8M-1176, J8M-1177 and J8M-1178, and has agreed, pursuant to a forthcoming purchase order from NNI, to perform engineering adjustments to those fixtures related to job numbers J8M-1172 and J8M-1175, and to subsequently release them to NNI in accordance with the terms of such purchase order.

## Basis for Relief

14.     The Debtors seek an order granting the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a)

---

[6]     This overview is merely intended to provide a general summary of the Stipulation. To the extent that it conflicts with the Stipulation, the Stipulation shall control.

of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

15. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Coram Healthcare Corp., 315 B.R. 321, 329-30 (Bankr. D. Del. 2004).

16. Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa.

7

Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

17. The Third Circuit has set out four criteria that a bankruptcy court should consider in determining whether a settlement proposal is within the range of reasonableness (the "Martin Factors"). The Martin Factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393; see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

18. Applying the above factors to the instant matter, the Debtors submit that the settlement set forth in the Stipulation is in the best interests of the Debtors' estates and their creditors. Entering into the Stipulation will allow NNI to receive products that it has paid for without requiring litigation to enforce the automatic stay in this Court or in foreign courts. Additionally, since the Debtors are in agreement with Testing House over the amounts of the Administrative Expense Claim and the Prepetition Claim, this Stipulation is of no actual cash cost to NNI's estate and does not give Testing House any more rights than the distributions to which it likely would have been entitled in any event if it filed a proof of claim.

19. While the Debtors are prepared to litigate the dispute, such litigation would add expense and the Debtors do not believe that it would achieve a better result for NNI than the one achieved under the Stipulation. Litigation to pursue the issues otherwise resolved by the Stipulation would likely result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

20. Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Stipulation. The products related to this dispute are necessary for the normal business operations of the Debtors and essential to their ability to increase the revenue in the estate through normal business operations. The Debtors believe that the interests of its creditors are supported by the prompt and efficient resolution of this dispute.

21. In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Stipulation is preferable to further opposition to Testing House. The proposed Stipulation and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the dispute. For these reasons, the Debtors assert that the Stipulation should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

22. Notice of the Motion has been given to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) Testing House's counsel; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

23. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 7, 2009  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)  
Lisa M. Schweitzer (No. 1033)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*