## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

                    Debtors.

----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: July 28, 2009 at 2:00 PM (ET)**
**Objections due: July 21, 2009 at 4:00 PM (ET)**

## DEBTORS' MOTION FOR AN ORDER APPROVING
## A COMPROMISE OF A CONTROVERSY BETWEEN
## NORTEL NETWORKS INC. AND FIRST COMMUNICATIONS, INC.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title

11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise a

controversy between NNI and First Communications, Inc. ("First Comm," and together with

NNI, the "Parties") as more fully described below and as set forth in the agreed terms of

Settlement Agreement and Release of Claims (the "Settlement Agreement"), attached hereto as

Exhibit B; and granting them such other and further relief as the Court deems just and proper.  In

support of this Motion, the Debtors respectfully represent as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Jurisdiction**

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

**A.     Introduction**

3.        On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code.

4.        The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings").  The Canadian Debtors continue to manage their properties and operate their

businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as court-appointed

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the

"Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as

---

[2]        The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the

Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign

proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order

recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the

Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of

Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA

Debtors")[3] into administration under the control of individuals from Ernst & Young LLC

(collectively, the "Joint Administrators"). On May 28, 2009, at the request of the

Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered

the commencement of secondary proceedings in respect of Nortel Networks S.S. ("NNSA"),

which consist of liquidation proceedings during which NNSA will continue to operate as a going

concern for an initial period of three months. In accordance with the European Union's Council

Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the

"English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009,

Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the

English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On

June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main

proceedings under chapter 15 of the Bankruptcy Code.

      6.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

---

[3]      The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.       On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

**B.     Debtors' Corporate Structure and Business**

8.       A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

9.       By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019: (a) authorizing the compromise of controversy between NNI and First Comm, and (b) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

**C.     Background of Current Dispute between the Parties**

10.      First Comm is a Delaware corporation, which was formed on April 4, 2007.  First Comm is a facilities-based telecommunications provider, which specializes in advanced data and voice services for commercial customers and also provides residential voice service.

4

11.    Prior to the commencement of these chapter 11 cases, NNI was a corporate stockholder of GCI Globalcom Holdings, Inc. ("GCI"). On July 18, 2008, GCI Globalcom Holdings, Inc. was sold to First Comm, which merged GCI Globalcom Holdings, Inc. into its subsidiary First Global Telecom, Inc., forming a new First Comm subsidiary, which retained the name of GCI Globalcom Holdings, Inc. ("New GCI").

12.    As part of the merger on July 18, 2008, the stockholders of First Comm and GCI entered into an Agreement and Plan of Merger (the "Merger Agreement"), an Indemnity Agreement (the "Indemnity Agreement"), and an Escrow Agreement (the "Escrow Agreement") (collectively, the "Agreements").

13.    The sellers of GCI agreed to form an escrow in the amount of $4.5 million (the "Escrow") to indemnify First Comm against certain potential liabilities, including liabilities that might arise from alleged misrepresentation of warranties and covenants. NNI contributed $233,100 to the Escrow, which was based on NNI's ownership interest in GCI.

14.    First Comm has made two claims for indemnification against the selling parties of GCI.

a.    On March 29, 2009, First Comm made a claim for indemnification under the terms of the Agreements related to breaches of certain representations, warranties and covenants contained within the Merger Agreement regarding the billing system conversion, which took place before the merger (the "March 29th Claim for Indemnification"). First Comm alleges damages of $15 million directly related to installation and implementation errors in GCI's billing system. The claim is based primarily upon allegations that implementation of the billing

5

system and migration of the billing system misrepresented the true financial condition of GCI.

      b.      On June 22, 2009, First Comm made a claim for indemnification under the terms of the Agreements related to an employment dispute with Mr. Erick Heinz for termination without proper notice or severance pay (the "June 22nd Claim for Indemnification").

NNI's potential liability under the Indemnity Agreement is up to $10 million.[4]

## D.      The Proposed Settlement and Agreement

      15.      The Parties entered into negotiations to discuss the resolution and settlement of the March 29th and June 22nd Claims for Indemnification.  As a result of these negotiations, the Parties have proposed to resolve their dispute pursuant to the agreed terms set forth in the attached Settlement Agreement, which includes the following substantive components:[5]

      a.      NNI has agreed, subject to approval by this Court, to pay First Comm a settlement payment of $155,400 and release and forever discharge First Comm from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in law or equity.

      b.      In exchange, First Comm has agreed to release and forever discharge NNI from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in

---

[4]     Nothing herein shall constitute an admission to any liability by any of the Parties and the Parties reserve their rights in the case of a breach of the Settlement Agreement.

[5]     This overview is merely intended to provide a general summary of the Settlement Agreement.  To the extent that it conflicts with the Settlement Agreement, the Settlement Agreement shall control.

law or equity.  The release shall be effective upon payment.  Additionally, NNI

will receive $77,700 from the Escrow, equaling the difference between the

settlement and the money NNI was required the put into Escrow for

indemnification.

### Basis for Relief

16.     The Debtors seek an order granting the relief sought in this Motion pursuant to

section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Section 105(a)

of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that

is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. §

105(a).

17.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that "[c]ompromises

are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of

Delaware has recognized that the approval of a proposed compromise and settlement is

committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp.,

315 B.R. 321, 329-30 (Bankr. D. Del. 2004).

18.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222

B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997));

see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008).  Basic to the

7

process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

19.    The Third Circuit has set out four criteria that a bankruptcy court should consider in determining whether a settlement proposal is within the range of reasonableness (the "Martin Factors"). The Martin Factors are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393; see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

20.    Applying the above factors to the instant matter, the Debtors submit that the settlement set forth in the Settlement Agreement is in the best interests of the Debtors' estates and their creditors. Under the Settlement Agreement, First Comm is relinquishing all current and future claims, which could be up to $10 million against NNI, in exchange for a cash payment by NNI of $155,400. Resolution under the terms of the Settlement Agreement also will result in a distribution of the remaining value of the Escrow for NNI in the amount of $77,700.

8

21.     While the Debtors are prepared to litigate the dispute, such litigation would add expense and there is no assurance it would achieve a better result for NNI than the one achieved under the Settlement Agreement.  Litigation to pursue the issues otherwise resolved by the Settlement Agreement would likely result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

22.     Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Settlement Agreement.  The Debtors believe that the interests of its creditors are supported by the prompt and efficient resolution of this Claim, and the minimization of administrative claims and expenses.

23.     In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement is preferable to further opposition to First Comm. The proposed Settlement Agreement and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim.   For these reasons, the Debtors assert that the Settlement Agreement should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

24.     Notice of the Motion has been given to the (i) Office of the United States Trustee for the District of Delaware; (ii) counsel to the Committee; (iii) counsel to the Bondholders; (iv) counsel to First Comm; (v) counsel to the former stockholders of GCI who are Parties to the Settlement Agreement; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

[New York #2077685 v3]

**No Prior Request**

25.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  July 8, 2009              CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

10