**EXHIBIT B**

[New York #2077685 v3]

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (" Settlement Agreement") is entered into as of the $\underline{30}$ day of June 2009, by and between FIRST COMMUNICATIONS, INC., a Delaware corporation ("First Comm") and M. GAVIN MCCARTY, as Stockholders' Representative on behalf of JOHN T. SHAVE, ERIC WINCE, CHRIS FORTE, WILLIAM CANNON, J. GLENN CUSTAR, SHAVE 2000 TRUST U/A/D 8/2/2003, and ERICK HEINZ, the individual stockholders of GCI GLOBALCOM HOLDINGS, INC., a Delaware corporation (the "Individual Stockholders") and NORTEL NETWORKS INC. (the "Corporate Stockholder"), a Delaware corporation, a former corporate stockholder of GCI GLOBALCOM HOLDINGS, INC., a Delaware corporation (collectively referred to as the "Stockholders"). Each of First Comm, the Individual Stockholders, the Corporate Stockholder, and the Stockholders' Representative are referred to herein as "Party" and collectively as "Parties."

### WITNESSETH

WHEREAS, the Parties entered into an Agreement and Plan of Merger ("Merger Agreement"), Indemnity Agreement ("Indemnity Agreement") and Escrow Agreement ("Escrow") on July 18, 2008 (collectively referred to as the "Agreements"), related to the merger of First Communications, Inc., First Global Telecom, Inc. (collectively referred to as "First Comm") and GCI Globalcom Holdings, Inc.; and,

WHEREAS, First Comm on March 29, 2009, made a claim for indemnification under the terms of the Agreements related to alleged breaches of certain representation, warranties and covenants contained within the Merger Agreement ("March 29th Claim for Indemnification"); and,

WHEREAS, First Comm on June 22, 2009, made a claim for indemnification under the terms of the Agreements related to an employment dispute with Mr. Erick Heinz ("June 22nd Claim for Indemnification"); and,

WHEREAS, the Stockholders have denied each and every alleged claim for breach of representations, warranties and covenants made by First Comm under the Agreements; that the Stockholders breached no agreements, covenants, representations, warranties or obligations with First Comm and that First Comm is not entitled to any indemnification; and,

WHEREAS, the Stockholders appointed M. Gavin McCarty, as Stockholders' Representative to serve as the exclusive agent of the Stockholders; the Stockholders' Representative alone has the authorization to take all actions on behalf of the Individual Stockholders in connection with any claims made under the Merger Agreement, including the authority to settle such claims; and the Corporate Stockholder reserved the right to consent to the disposition of claims asserted against it relative to the Agreements; and,

1

[New York #2077362 v1]

WHEREAS, the Parties now intend to fully and finally settle all claims, known and unknown, between them, including without limitation, all claims that the Parties have or could have asserted on March 29, 2009, and June 22, 2009, or at any time arising out of, based upon, or in any way relating to the Agreements and merger transaction, excluding expressly from the scope of this Settlement Agreement and specifically those certain Noncompetition Agreements entered into by and between Eric Wince and John Shave, on the one hand, and First Communications, Inc. on the other hand, on September 30, 2008; and,

WHEREAS, the Corporate Shareholder is presently seeking relief under the United States Bankruptcy Code in the petition captioned as In re Nortel Networks Inc., et. al., 09-10138 (Bankr. D. Del. January 14, 2009) (the "Nortel Bankruptcy Proceedings");

NOW THEREFORE, in consideration of the preceding recitals and the mutual promises, covenants, and agreements set forth below, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Parties hereto, intending to be legally bound, do hereby covenant and agree as follows:

1.    **Recitals.**  The recitals made above are an integral part of this Settlement Agreement and are hereby incorporated herein and made a part hereof as though fully set forth herein.

2.    **Settlement Payment.**  The Individual Stockholders shall pay to First Comm a total payment of Two Million Eight Hundred Forty-Four Thousand Six Hundred Dollars ($2,844,600.00), from which the amount of Sixty-Five Thousand Dollars ($65,000.00) shall be deducted by the Stockholders' Representative as First Comm's Fifty Percent (50%) contribution to the settlement of the claim made by Mr. Erick Heinz and referenced in the June 22nd Claim For Indemnification. The payment of Two Million Seven Hundred Seventy-Nine Thousand Six Hundred Dollars ($2,779,600.00) shall be made via wire transfer to First Comm no later than June 30, 2009. Subject to approval, as the Corporate Stockholder determines necessary, by the Bankruptcy Court in the United States District of Delaware in the Nortel Bankruptcy Proceedings or pursuant to the procedures laid out in the Nortel Bankruptcy Proceeding's Order Approving Omnibus Settlement Procedures to Resolve, Mediate, Compromise or Otherwise Settle Certain Claims and Controversies [D.I. 586], and as soon as practicable after such approval is obtained, the Corporate Stockholder shall pay First Comm a total payment of One Hundred Fifty Five Thousand Four Hundred Dollars ($155,400.00). All Settlement Payments shall be (i) paid from the Escrow Account Fund #0674-0410003592 and (ii) in accordance with the terms and conditions of the Escrow.

3.    **Wire Instructions.**  The payments referred to in Paragraph 2 shall be made to the order of First Comm via wire transfer in accordance with the terms and conditions of the Escrow.

2
2

[New York #2077362 v1]

4.    **Release of Individual Stockholders, Corporate Stockholder, Stockholders' Representative and First Comm.**

(a)    <u>Release of Individual Stockholders.</u>  In consideration of the foregoing promises, and except for the duties and obligations arising out of this Settlement Agreement, First Comm, acting on its behalf and on behalf of its executors, administrators, beneficiaries, personal representatives, heirs, successors, assigns, employees, agents, attorneys, and agents thereof, hereby agrees to release and forever discharge the Individual Stockholders and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof, of and from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in law or equity, including but not limited to the claims which are alleged or which could have been alleged in the March 29th Claim for Indemnification and/or the June 22nd Claim for Indemnification, which it has had, now has, or claims to have, whether known or unknown ("Unknown Claims"), against the Stockholders and the Stockholders' Representative and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof.  The Release of the Individual Stockholders shall be effective upon payment of Two Million Seven Hundred Seventy-Nine Thousand Six Hundred Dollars ($2,779,600.00) as set forth in Paragraph 2.  The Release of the Individual Stockholders shall remain in full force and effect even if the Corporate Stockholder is unable to obtain the consent of the Bankruptcy Court as set forth in Paragraph 3(c).

(b)    <u>Release of Stockholders' Representative.</u>  In consideration of the foregoing promises, and except for the duties and obligations arising out of this Settlement Agreement, First Comm, acting on its behalf and on behalf of its executors, administrators, beneficiaries, personal representatives, heirs, successors, assigns, employees, agents, attorneys, and agents thereof, hereby agrees to release and forever discharge the Stockholders' Representative and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof, of and from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in law or equity, including but not limited to the Unknown Claims, against the Stockholders and Stockholders' Representative and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof.  The Release of the Stockholders' Representative shall be effective upon payment of Two Million Seven Hundred Seventy-Nine Thousand Six Hundred Dollars ($2,779,600.00) as set forth in Paragraph 2.  The Release of the Stockholders' Representative

3
3

[New York #2077362 v1]

shall remain in full force and effect even if the Corporate Stockholder is unable to obtain the consent of the Bankruptcy Court as set forth in Paragraph 3(c).

(c)    Release of Corporate Stockholder.    In consideration of the foregoing promises, and except for the duties and obligations arising out of this Settlement Agreement, First Comm, acting on its behalf and on behalf of its executors, administrators, beneficiaries, personal representatives, heirs, successors, assigns, employees, agents, attorneys, and agents thereof, hereby agrees to release and forever discharge the Corporate Stockholder and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof, of and from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in law or equity, including but not limited to the Unknown Claims, against the Stockholders and/or the Stockholders' Representative and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof. The Release of the Corporate Stockholder shall be effective upon payment of One Hundred Fifty Five Thousand Four Hundred Dollars ($155,400.00) as authorized by the Bankruptcy Court.

(d)    Release of First Comm.    In consideration of the foregoing promises, and except for the duties and obligations arising out of this Settlement Agreement, the Individual Stockholders, the Shareholders Representative and the Corporate Stockholder, acting on their own behalves and on behalf of their respective executors, administrators, beneficiaries, personal representatives, heirs, successors, assigns, employees, agents, attorneys, and agents thereof, hereby agree to release and forever discharge First Comm and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof, of and from all causes of action, claims for sums of money, contracts, controversies, agreements, costs, damages, judgments, disputes, and demands whatsoever, in law or equity, which they or any of them has had, now has, claims to have, whether known or unknown, including Unknown Claims, against First Comm and all former and current affiliates, parents, subsidiaries, divisions, shareholders, predecessors, successors, members, partners, directors, officers, managers, employees, agents, attorneys, assigns, insurers, subrogees, and agents thereof.

5.    **Unknown Claims.**    The Parties hereby agree that the Unknown Claims referred to in the release above shall be defined as any claim that any person or entity does not know or suspect to exist in its favor at the time of full execution of this Settlement Agreement that, if known by it, it might have affected its settlement with and release of the Parties. Each Party stipulates and agrees that, upon full execution, it shall be deemed to have expressly waived and

4
4

relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides:

> A general release does not extend to a claim which a creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Each Party, upon full execution, also shall be deemed to have waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principles, or the law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code. A Party may hereafter discover facts in addition to or different from those which it now knows or believes to be true with respect to the subject matter of the March 29th Claim for Indemnification and/or the June 22nd Claim for Indemnification and/or the Agreements and/or merger transaction, but each Party, upon full execution, shall be deemed to have fully, finally, and forever settled and released any and all claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore may have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or with malice, or breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

6.    **Assignment.**    The Parties represent and warrant that there has been no assignment, negotiation, hypothecation, or other transfer or alienation of any cause of action, or of any other rights, obligations, liabilities, demands, or claims existing between the Parties or which could have been asserted by the Parties.

7.    **Erick Heinz Claim.**    It shall be a condition precedent to the releases granted herein by First Comm, that Stockholder Representative shall obtain and provide to First Comm an executed Release, in form reasonably satisfactory to First Comm, of any and all claims made by Mr. Erick Heinz against Globalcom, Inc. d/b/a First Communications of Ohio, LLC, now captioned as matter 2009-L-006323 in the Circuit Court of Cook County, Illinois.

8.    **No Admission.**    It is agreed and understood that except as otherwise provided herein:

(a)    This Settlement Agreement (and the releases contained herein) is not to be considered an admission of any improper acts, conduct, or any liability on the part of any Party, and in particular does not constitute an admission by the Individual Stockholders, Corporate Stockholder, and/or the Stockholders' Representative relating in any way to the March 29th Claim for Indemnification and/or the June 22nd Claim for Indemnification and/or the Agreements and/or merger transaction.

5
5

[New York #2077362 v1]

(b)     This Settlement Agreement is made to terminate any and all disputes, obligations, and liabilities between First Comm, on the one hand, and the Stockholders and Stockholders' Representative, on the other hand, including all such disputes, obligations, and liabilities arising out of, or relating in any way to, the Agreements and merger transaction. This Settlement Agreement, however, excludes expressly from the scope of the Releases herein those certain Noncompetition Agreements entered into by and between Eric Wince and John Shave, on the one hand, and First Comm, on the other hand, on September 30, 2008.

9.     **Entire Agreement.** This Settlement Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter contained herein and merges all prior discussions, agreements, contracts, or other instruments between them and no Party shall be bound by any subsequent instrument, agreement, or representation pertaining to the subject matter contained herein unless expressed in writing and signed by the Party to be bound thereby.

10.     **Authority.** Each individual signing this Settlement Agreement represents and warrants that he or she has had the full opportunity to consult its legal advisor(s) and has the full power and authority to execute and deliver this Settlement Agreement on behalf of the party for whom he or she is signing the Settlement Agreement, subject in the case of the Corporate Stockholder to obtaining the requisite approvals in the Nortel Bankruptcy Proceeding.

11.     **Binding Effect.** This Settlement Agreement shall only be binding upon and inure to the benefit of the Parties, and no rights created under this Settlement Agreement can be transferred or assigned.

12.     **Counterparts and Facsimile Signatures.** This Settlement Agreement may be executed in two or more counterparts and each shall have the same force and effect as the other, as one and the same instrument. A signature sent via facsimile is an acceptable method of execution of this Settlement Agreement.

13.     **Governing Law and Arbitration.** This Settlement Agreement shall be governed by the laws of the State of Delaware without regard to conflict of law principles. .

14.     **Binding Agreement.** The Parties warrant that they have read this Settlement Agreement, that they have had an opportunity to rely on the advice of an attorney, who is the attorney of their choice, that they intend to be legally bound by the same, that they have entered into this Settlement Agreement freely and voluntarily, and that they have the full right, power, authority, and capacity to enter into and execute this Settlement Agreement. The Parties further warrant that this Settlement Agreement is entered into with no Party relying upon any statement or representation made by any other Party not embodied in this Settlement Agreement.

15.     **Cooperation.** The Parties agree to execute and/or deliver any and all documents which either are, or may reasonably be required to carry out the terms and conditions of this Settlement Agreement.

6
6

[New York #2077362 v1]

16.    **Notice.** Any notice, directions, instructions, consents, or other communication required or permitted to be given under this Settlement Agreement shall be made as follows:

**To First Communications, Inc.:**      First Communications, Inc.
3340 West Market Street
Akron, Ohio 44333
Attn: Joe Morris

**To the Individual Stockholders, the**
**Corporate Stockholder or the**      M. Gavin McCarty
**Stockholders' Representative:**      Shefsky & Froelich Ltd.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

17.    **Severability.** The invalidity of one or more phrases, sentences, clauses, or sections contained in this Settlement Agreement shall not affect the validity of the remaining portions of the Settlement Agreement so long as the material purposes of this Settlement Agreement can be determined and effectuated.

**IN WITNESS** of their Settlement Agreement the Parties have caused this document to be signed by them on this ___ day of June 2009.

**First Communications, Inc.**

**Stockholders' Representative On**
**behalf of the Individual Stockholders,**
**the Stockholders Representative and**
**the Corporate Stockholders**

By: _____      By: _____
M. Gavin McCarty

:                                         Its: _____

The undersigned Nortel Networks Inc. hereby agrees to and consents to the foregoing terms and conditions of this Settlement Agreement and agrees to be bound in all respects thereby.

Nortel Networks Inc.

By:_____

Its:_____

7
7

[New York #2077362 v1]

16.   **Notice.**  Any notice, directions, instructions, consents, or other communication required or permitted to be given under this Settlement Agreement shall be made as follows:

**To First Communications, Inc.:**  First Communications, Inc.
3340 West Market Street
Akron, Ohio 44333
Attn: Joe Morris

**To the Individual Stockholders, the Corporate Stockholder or the Stockholders' Representative:**  M. Gavin McCarty
Shefsky & Froelich Ltd.
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

17.   **Severability.**  The invalidity of one or more phrases, sentences, clauses, or sections contained in this Settlement Agreement shall not affect the validity of the remaining portions of the Settlement Agreement so long as the material purposes of this Settlement Agreement can be determined and effectuated.

**IN WITNESS** of their Settlement Agreement the Parties have caused this document to be signed by them on this 30 day of June 2009.

**First Communications, Inc.**

Stockholders' Representative On behalf of the Individual Stockholders, the Stockholders Representative and the Corporate Stockholders

By: _____    By: _____
M. Gavin McCarty

:    Its: _____

The undersigned Nortel Networks Inc. hereby agrees to and consents to the foregoing terms and conditions of this Settlement Agreement and agrees to be bound in all respects thereby.

Nortel Networks Inc,
By _Paul Knudsen_
Its: _General Counsel, MEN and GLOBAL SUPPLY CHAIN_

7

[New York #2077362 v1]