IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
:
Debtors. : Jointly Administered
:
:
:
------------------------------------------------------------X

**SECOND SUPPLEMENTAL AFFIDAVIT PURSUANT TO FED. R. BANKR. P. 2014
AND ORDER AUTHORIZING DEBTORS TO EMPLOY, RETAIN AND
COMPENSATE PROFESSIONALS IN THE ORDINARY COURSE**

James Scott, being duly sworn, deposes and says:

1. I am a partner of Ernst & Young LLP ("E&Y LLP"), with an office at 4130 ParkLake Avenue, Suite 500, Raleigh, NC 27612-2299. I provide this second supplemental affidavit (the "Supplemental Affidavit") on behalf of E&Y LLP in further support of the retention of E&Y LLP by the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") pursuant to the Order Authorizing the Retention and Payment of Professionals Utilized in the Ordinary Course *nunc pro tunc* to the Petition Date, dated February 5, 2009 (D.I. 236) (the "Order"). This Supplemental Affidavit supplements my original affidavit filed on March 12, 2009 (the "Original Affidavit") and my first supplemental affidavit filed on June 1, 2009 (the "First Supplemental Affidavit").

---

[1] The Debtors in these jointly administered chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2. Except as otherwise indicated, all facts set forth in this Supplemental Affidavit are based upon my personal knowledge, information and belief, information supplied to me by other partners and/or employees of E&Y LLP, information learned from client matter records kept in the ordinary course of business that were reviewed by me or other employees of E&Y LLP under my supervision and direction, my experience and knowledge of the Debtors' operations and financial condition, and/or my experience from working on matters similar to this engagement. If called as a witness, I would testify competently to the matters set forth herein.

3. As described in the Original Affidavit, the nature and scope of the services for which the Debtors retained E&Y LLP pursuant to the Order are indirect tax services, including sales and use tax compliance, sales and use tax audit assistance, sales and use tax consulting and refund and credit services ("Indirect Tax Matters and Services").

4. In the First Supplemental Affidavit, after discussions with the Debtors and the Office of the United States Trustee, E&Y LLP disclosed that the Transaction Advisory Services group of E&Y LLP ("EY-TAS") was retained to perform due diligence services for a potential purchaser ("Purchaser A") of assets of one of the Debtors' business units. As set forth in the First Supplemental Affidavit, those due diligence services do not involve any review or any other services with respect to Indirect Tax Matters and Services, which were expressly carved out from the due diligence engagement. Moreover, those due diligence services are provided by different personnel than the services provided to the Debtors pursuant to the Order, with confidentiality walls as described in the First Supplemental Affidavit.

5. E&Y LLP has filed this Supplemental Affidavit to disclose additional connections to parties in interest of which E&Y LLP has become aware.

6. EY-TAS is being retained to perform due diligence services (the "Purchaser B Due Diligence Services") for another potential purchaser ("Purchaser B") of assets from the Debtors. The Purchaser B Due Diligence Services consist of financial and accounting due diligence in (i) obtaining and analyzing historical and projected financial information with respect to the business, including capital expenditures, working capital and overhead (including stand alone costs); and (ii) analyzing financial statement line items, and business trends in the business. The Purchaser B Due Diligence Services also may include (a) tax due diligence in assisting to identify potential tax exposures, (b) tax structuring services to identify potential alternative tax structures for the acquisition; (c) human resources due diligence in obtaining and understanding the mechanics and financial and tax implications of the business' employee benefits and (d) information technology due diligence in assisting in the assessment of the remaining useful life, technical capability and functionality of information systems of the business. E&Y-TAS is not being engaged to provide testimony, and will not testify in connection with the Purchaser B Due Diligence Services (unless required to do so by Court Order).

7. Furthermore, as set forth in paragraphs 6 and 7 of the Original Affidavit, E&Y LLP is a member of Ernst & Young Global Limited ("EYGL"), a company incorporated under the laws of England and Wales and limited by guarantee, with no shareholders and no capital. The member firms of EYGL have agreed to operate certain of their professional practices in accordance with agreed standards, but remain separate legal entities.

8. Another EYGL firm (the "Foreign EYGL Firm") has been retained to perform due diligence services for another potential purchaser ("Purchaser C") of assets from the Debtors. E&Y LLP is being subcontracted by the Foreign EYGL Firm to perform certain due diligence

services (the "Subcontracted Purchaser C Due Diligence Services" and together with the Purchaser B Due Diligence Services, the "Due Diligence Services") in connection with the Foreign EYGL Firm's due diligence engagement. The Subcontracted Purchaser C Due Diligence Services consist of fact-gathering and reporting services that do not involve, and will not involve, advocacy or negotiation on behalf of Purchaser C. For example, EY-TAS will engage in financial and accounting due diligence including (i) obtaining and analyzing historical and projected financial information with respect to the business, including capital expenditures, working capital and overhead; (ii) analyzing financial statement line items, and business trends in the business; and (iii) valuation services including preliminary purchase price allocation considerations. The Purchaser C Due Diligence Services also may include (a) tax due diligence in assisting to identify potential tax exposures, (b) human resources due diligence in obtaining and understanding the mechanics and financial and tax implications of the business' employee benefits, (c) information technology due diligence in assisting in the assessment of the remaining useful life, technical capability and functionality of information systems of the business, and (d) operations and integration due diligence. E&Y-TAS is not being engaged to provide testimony, and will not testify in connection with the Purchaser C Due Diligence Services (unless required to do so by Court Order).

9.   The Due Diligence Services will not include any review or any other services by E&Y LLP with respect to Indirect Tax Matters and Services, which are the matters that the Debtors have retained E&Y LLP to address for them. These matters are expressly carved out from the Due Diligence Services both under E&Y LLP's engagement by Purchaser B and E&Y LLP's subcontracting by the Foreign EYGL Firm. Therefore, the Due Diligence Services do not

encompass any adversity on the part of E&Y LLP with respect to the matters for which E&Y LLP has been engaged by the Debtors.

10. Moreover, the Due Diligence Services will be provided by different personnel (the "Due Diligence Personnel") than those who have performed, and are performing, Indirect Tax Matters and Services (the "Indirect Tax Personnel") for the Debtors during the pendency of these chapter 11 cases. Moreover, the Due Diligence Personnel do not now, and will not, during the course of the provision of the Due Diligence Services, have access to any of the files, information or documents (including computer servers) of the Indirect Tax Personnel. The materials and information of the Indirect Tax Personnel on the one hand, and the Due Diligence Personnel on the other hand, have been and will continue to be during these chapter 11 cases kept separated by a confidentiality wall and will not be verbally, electronically or physically shared between the Indirect Tax Personnel and the Due Diligence Personnel, except to the extent that the Debtors authorize a sharing of information, subject to any Court-approved sale and bid procedures as may be adopted under section 363 of the Bankruptcy Code.

11. The Debtors have consented to E&Y-TAS' retention by Purchaser B and subcontracting by the Foreign EYGL Firm in respect of the work for Purchaser C as disclosed herein.

12. In addition, this Supplemental Affidavit also discloses that another member of EYGL, E&Y Japan ("E&Y Japan") (i) is subcontracted by the EYGL firm E&Y Hong Kong ("E&Y Hong Kong") to perform certain customs consulting work under E&Y Hong Kong's engagement by the Debtors' ultimate corporate parent, Nortel Networks Corporation (the "Canadian Parent"), which is not a Debtor and (ii) is subcontracted by the EYGL firm Ernst &

Young LLP, an Ontario limited liability partnership ("E&Y Canada"), to perform expatriate tax work under E&Y Canada's engagement by the Canadian Parent.

13.  E&Y LLP has also been retained by Nortel Networks (CALA) Inc. ("Nortel CALA") which on information and belief sells telecommunications equipment and related services to companies in Central and South America, to provide routine tax advice, assistance with transactional issues and assistance in connection with CALA's dealings with local tax authorities. CALA is a wholly owned subsidiary of Nortel Networks Inc. and is not a Debtor in these proceedings. To the best of my knowledge, information and belief, formed after due inquiry, E&Y LLP's retention by CALA is unrelated to the Indirect Tax Matters and Services such that E&Y LLP does not represent any interest adverse to the Debtors or their estates with respect to the Indirect Tax Matters and Services in respect of the work for CALA.

14.  Nothing herein is intended to exempt any purchaser of assets from the Debtors from any requirements in any bidding procedures established by the Court for the sale.

15.  I believe that the Due Diligence Services and other matters disclosed herein do not render E&Y LLP's provision of services adverse to the Debtors with respect to the matters for which the Debtors have engaged E&Y LLP under the Order or cause E&Y LLP to hold or represent an interest adverse to the estate with respect to the matters for which the Debtors have engaged E&Y LLP under the Order.

_____
James Scott

Dated: 7/7/09

Sworn to and subscribed before me this 7 day of July, 2009.

_____

DETR_1227180.3                                6

Notary Public

My Commission Expires: _12-27-09_