## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

*In re*                                              :        Chapter 11

Nortel Networks Inc., *et al.*,[1]                    :        Case No. 09-10138 (KG)

                   Debtors.   :        Jointly Administered

                                                     :

-----------------------------------------------------------X

                                                     :

*In re*                                              :        Chapter 11

Nortel Networks (CALA) Inc.                          :        Case No. 09-12515 (KG)

                   Debtor.    :        Joint Administration Pending

                                                     :        **Hearing date: July 17, 2009 at 11:00 a.m. (ET)**
                                                     :        **Objections due: At the hearing**

-----------------------------------------------------------X

## DEBTORS' MOTION TO HAVE PREVIOUSLY-ENTERED
## ORDERS AS SUPPLEMENTED GOVERN
## NORTEL NETWORKS (CALA) INC. PROSPECTIVELY

Nortel Networks (CALA) Inc. ("NN CALA"), Nortel Networks Inc. ("NNI") and certain

of their affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby

move this Court (the "Motion"), for the entry of an order substantially in the form attached

hereto as Exhibit A (the "Supplemental Order"), to (i) have certain orders previously entered in

the main proceeding with respect to the Debtors, as supplemented, govern NN CALA

---

[1]      The Original Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567).  Addresses for the Original Debtors can be found in the Original Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

prospectively; and (ii) granting such other and further relief as the Court deems just and proper. In support of the Motion, the Debtors rely on the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration") [D.I. 3][2] as well as the Supplemental Declaration of John Doolittle in Support of this Motion (the "Supplemental Declaration").  In further support of the Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 1015(b), 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the relevant statutes relied upon herein and in the motions and orders incorporated by reference herein.

## Background

### A.      Introduction

3.      On January 14, 2009 (the "Original Petition Date"), Nortel Networks Inc. and certain of its affiliates (collectively, the "Original Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Original Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited

---

[2]      All references to "D.I." refer to the docket for the chapter 11 cases of Nortel Networks, Inc., and its affiliates, jointly administered under case number 09-10138 (KG).

("NNL," and together with NNC and their affiliates, including the Debtors and NN CALA, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will

---

[3]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of the cases of the Original Debtors and for consolidation for procedural purposes only [D.I. 36].

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142, 340].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

8.      On July 14, 2009 (the "CALA Petition Date"), NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.      Simultaneously with the filing of this Motion, NN CALA has filed a motion seeking an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that would provide for the joint administration of the cases of the Original Debtors and NN CALA and for consolidation for procedural purposes only.

4

**B.       Debtors' Corporate Structure and Business**

10.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the First Day Declaration.

11.      On June 19, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their CDMA and LTE businesses to Nokia Siemens Networks B.V., subject to the receipt of higher and better offers [D.I. 931]. A hearing to approve the sale is scheduled for July 28, 2009. In addition to announcing this sale agreement, the Debtors have announced that they are advancing in discussions with external parties to sell other businesses.

12.      NN CALA is one of the Nortel entities that operates in the Caribbean and Latin America ("CALA") region. NN CALA's businesses consist of the same Carrier (including CDMA, GSM and CVAS), Enterprise and MEN businesses conducted by the other Nortel entities, as described in the First Day Declaration. A substantial majority of NN CALA's customers are foreign companies and governmental entities in the CALA region.

13.      NN CALA is a direct subsidiary of NNI, with headquarters in Sunrise, Florida. All of Nortel's business activities in the CALA region were originally conducted by NN CALA. Beginning in the 1980s, Nortel formed direct subsidiaries of NNL to operate locally in the various countries in which they are incorporated. NNL currently has thirteen direct subsidiaries operating in various countries, including Argentina, Brazil, Bolivia, Chile, Colombia, Ecuador, México, Paraguay, Peru, Venezuela, and Uruguay. NN CALA has two direct subsidiaries, Nortel Networks de Guatemala, Ltda., and Nortel Trinidad and Tobago Limited, as well as a minority ownership interest in Nortel Networks de Colombia, S.A.

14.      In the past six months, since the commencement of the Debtors' chapter 11 cases, Nortel has undergone restructuring efforts, including (as discussed above) advancing in

discussions with third parties to divest its businesses.  During this time, the Debtors and their

affiliates (including NN CALA) have reviewed their business needs to determine the appropriate

means of preserving value for their stakeholders.  Accordingly, NN CALA has decided to seek

chapter 11 protection to preserve assets and administer its assets and business in a manner

consistent with the Debtors' larger restructuring efforts.

### Facts Relevant to this Motion

A.    **Employee Wage Obligations**

15.    On January 14, 2009, the Original Debtors filed the Debtors' Motion for Entry of

an Order Authorizing, But Not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries

and Other Compensation, (II) Reimbursable Expenses, and (III) Medical, Retirement and Similar

Benefits [D.I. 10] (the "Employee Wage Motion").[5]  On January 15, 2009, the Court entered the

Order Authorizing, but not Directing, Debtors to Pay Certain Prepetition (I) Wages, Salaries and

Other Compensation, (II) Reimbursable Expenses, and (III) Medical, Retirement and Similar

Benefits [D.I. 59] (the "Employee Wage Order").  On January 23, 2009, the Court entered a

Supplemental Order Authorizing, but Not Directing, Debtors to Pay Certain Prepetition (I)

Wages, Salaries and Other Compensation, (II) Reimbursable Expenses, and (III) Medical,

Retirement and Similar Benefits [D.I. 98] (the "Supplemental Employee Wage Order").  On

February 5, 2009, the Court entered an Order Supplementing Certain of the First Day Orders

[D.I. 239] (the "Supplemental Order"), which in part granted additional relief with respect to the

Original Debtors' obligations to employees.  The Debtors incorporate the Employee Wage

Motion, the Supplemental Employee Wage Order and the Supplemental Order by reference as if

set forth in their entirety.

---

[5]      Capitalized terms used but not defined in this Section A have the meanings ascribed to them in the
Employee Wage Motion.

16.     By the Employee Wage Motion, as supplemented, the Original Debtors sought

authority, but not direction, to pay and honor prepetition obligations to employees with respect to

wages and salaries, premium pay, sales commissions and certain other incentive programs,

reimbursable business expenses, expatriate costs and tax equalization costs.  In addition, the

Original Debtors sought authority to continue to deduct and withhold certain amounts from the

employees' paychecks for tax purposes and to honor and continue various benefit programs

including health, dental, life and disability insurance programs.  The Original Debtors also

sought authority to continue to honor vacation and other leave obligations in accordance with

prior practice.  Finally, the Original Debtors sought authority to continue to honor their 401(k)

retirement plan, including to make outstanding prepetition employer contributions, and to

continue to administer their flexible spending accounts.

17.     NN CALA employs approximately 205 employees (the "CALA Employees"),

approximately 187 of whom are located in the United States at its headquarters in Sunrise,

Florida.  Additionally, there are approximately 15 CALA Employees located in Puerto Rico, and

three CALA Employees located in Trinidad and Tobago.  Of the 205 CALA Employees,

approximately 204 are full-time salaried employees.  Approximately 108 of the CALA

Employees are sales representatives dedicated to marketing and selling Nortel products and

services to customers in the CALA region.  The remaining CALA Employees are dedicated to

other functions including services and operations, human resources and finance, among others.

1.     NN CALA's compensation of its employees is funded through NNI's payroll

account, and the CALA Employees receive substantially the same benefits as the Employees

described in the Employee Wage Motion.  In the ordinary course of business, the CALA

Employees are paid on a bi-weekly basis every other Friday.  On July 13, 2009, in accordance

with its ordinary course practices, NN CALA funded certain employee-related payment

obligations, including for the payroll period ending July 19, 2009, by wire transfer to NNI for

disbursement in accordance with the cash management procedures approved in the Cash

Management Order (as defined below).  The payment, totaling approximately $1.7 million,

includes payments for wages and salaries, commissions, severance payments and payments

relating to the Key Employee Retention Plan and the Key Executive Incentive Plan, related tax

obligations and other benefit plan obligations.  Accordingly, NN CALA does not seek relief at

this time with respect to payment of prepetition employee obligations, but reserves its right to do

so in the future.

18.     By this Motion, NN CALA seeks authority to continue, during the course of these

cases, to pay salary, wages, Premium Pay, payments under the Sales Incentive Plan and other

compensation to the CALA Employees in accordance with the Debtors' stated policies and in the

ordinary course of business.  As further described in the First Day Declaration and the

Supplemental Declaration, NN CALA also seeks authority, but not direction, to (a) continue to

honor and process its prepetition obligations with respect to Employee Deductions and Payroll

Taxes on a postpetition basis, (b) pay any outstanding prepetition Reimbursable Expenses, (c)

continue to pay Reimbursable Expenses, and (d) continue its Employee Benefits programs and

pay any prepetition amounts related thereto, each in the ordinary course of business in

accordance with prepetition practices, as further described in the First Day Declaration.

**B.      Cash Management System & Bank Accounts**

19.     On January 14, 2009, the Original Debtors filed the Debtors' Motion for an Order

Pursuant to Sections 345, 363(c)(1), 364(a) and 503(b)(1):  (a) Approving the Continued Use of

the Cash Management System, Bank Accounts and Business Forms; (b) Permitting Continued

Intercompany Transactions, Granting Administrative Priority Status to Postpetition

Intercompany Claims and Preserving and Permitting the Exercise of Intercompany Setoff Rights; (c) Authorizing Banks to Honor Certain Transfers and Charge Certain Fees and Other Amounts; and (d) Waiving the Requirements of 11 U.S.C. Section 345(b) on an Interim Basis [D.I. 9] (the "Cash Management Motion").  On January 15, 2009, the Court entered the Order Pursuant to Sections 345, 363(c)(1), 364(a) and 503(b)(1):  (a) Approving the Continued Use of the Cash Management System, Bank Accounts and Business Forms; (b) Permitting Continued Intercompany Transactions, Granting Administrative Priority Status to Postpetition Intercompany Claims and Preserving and Permitting the Exercise of Intercompany Setoff Rights; (c) Authorizing Banks to Honor Certain Transfers and Charge Certain Fees and Other Amounts; and (d) Waiving the Requirements of 11 U.S.C. Section 345(b) on an Interim Basis [D.I. 58] (the "Cash Management Order").  On February 5, 2009, the Court entered the Supplemental Order [D.I. 239], which in part amended the Cash Management Motion to include to include certain of the Original Debtors' bank accounts not initially reflected in the Cash Management Motion.  On April 9, 2009, the Court entered the Third Order Further Supplementing Cash Management Motion [D.I. 589] (the "Third Cash Management Order").  The Debtors incorporate the Cash Management Motion, as supplemented, by reference as if set forth in its entirety.

20.    By the Cash Management Order, the Original Debtors received authority in their sole discretion on an interim basis to continue to use existing bank accounts and continue investment practices in accordance with prior practice.  In addition, the Original Debtors received authority to continue to use the existing cash management system and to continue ordinary course intercompany transactions. Finally, the Third Cash Management Order provided authority to extend an intercompany revolving loan up to $75 million to be used by the Canadian Debtors.

21.     NN CALA is one of Nortel's purchasing hub entities that processes orders from distribution entities in the respective geographic area. Accordingly, NN CALA manages key supplier relationships and acts as a funneling point for orders from distribution entities in the CALA region. As described in further detail in the Cash Management Motion, as a purchasing hub entity, NN CALA purchases products to fulfill orders generated by it and its distribution affiliates of CALA region, thereby generating both profits and receivables owed by the affiliates to NN CALA in the ordinary course of its operations, which are calculated and reconciled on a monthly basis.

22.     NN CALA maintains two bank accounts in the United Sates and four bank accounts abroad for collecting customer payments and settling accounts payable. A schedule of the NN CALA's prepetition bank accounts is attached hereto as Exhibit B.

## C.     Foreign Vendor Obligations

23.     On January 15, 2009, the Original Debtors filed the Debtors' Motion for Entry of an Order Authorizing Payment of Prepetition Obligations to Certain Foreign Vendors [D.I. 60] (the "Foreign Vendors Motion"). Shortly thereafter, on January 16, 2009, the Court entered the Order Under 11 U.S.C. §§ 105(a) and 363(b) of the Bankruptcy Code Authorizing Payment Of Prepetition Obligations To Foreign Vendors [D.I. 71] (the "Foreign Vendors Order"). On February 5, 2009, the Court entered the Supplemental Order [D.I. 239], which in part granted additional relief with respect to the Original Debtors' foreign vendors serving certain foreign offices. The Debtors incorporate the Foreign Vendors Motion as supplemented herein by reference as if set forth in its entirety.

24.     By the Foreign Vendors Motion, the Original Debtors sought authority, but not direction, to pay claims by the Original Debtors' foreign vendors, including claims for goods and services provided to the Original Debtors, as well as import or tax obligations. The

Original Debtors also sought to authorize and direct banks and other financial institutions to receive, process, honor, and pay checks or electronic transfers used by the Original Debtors to pay prepetition obligations to foreign vendors.

25.     In the ordinary course of its business, NN CALA maintains branch offices outside of the United States dedicated to sales and distribution in Uruguay and Trinidad and Tobago, and generally operates in the CALA region.  In conducting their operations, NN CALA incurs obligations to various third-party vendors (the "Foreign Vendors"), some of which have prepetition claims outstanding against NN CALA (the "Foreign Vendor Claims").  The Foreign Vendor Claims are for various obligations including, but not limited to, payments for the supply of goods and services essential to the Debtors' businesses.

26.     The Foreign Vendors Order currently authorizes payment of up to $5.5 million of Foreign Vendor Claims.  NN CALA estimates that there remains outstanding, as of the CALA Petition Date, approximately $1.3 million in Foreign Vendor Claims against NN CALA.

### Relief Requested

27.     By this Motion, the Debtors seek to have the following orders previously entered by this Court (collectively, the "Original Debtors' Orders") govern the case of NN CALA, as supplemented by the facts herein:

> a.     the Employee Wage Order [D.I. 59];
>
> b.     the Cash Management Order [D.I. 58];
>
> c.     the Foreign Vendors Order [D.I. 71], and that the cap on payment of Foreign Vendor Claims be increased to $9 million; and
>
> d.     the orders listed in Exhibit C.

28.     Specifically, the Debtors seek to have these previously entered orders applied to NN CALA effective *nunc pro tunc* to the NN CALA Petition Date.  In addition, to the extent that

NN CALA identifies any additional prior orders that should be made applicable to its case, NN CALA will file a notice with an amended Exhibit C attached thereto. NN CALA requests that, absent an objection within ten (10) calendar days of any such notice, any newly identified orders be deemed applicable to NN CALA effective *nunc pro tunc* to the NN CALA Petition Date.

29.    The Debtors also request that NN CALA be granted the relief provided in the Order Pursuant to 11 U.S.C. § 521 Extending the Debtors' Deadline to File Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I. 6] and the Order Granting Debtors Additional Time to File Reports of Financial Information Pursuant to Federal Rule of Bankruptcy Procedure 2015.3(a) and Certain Modifications of Such Reporting Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2015.3(d) [D.I. 657], each modified so as to allow NN CALA to file its Schedules and Statements and Rule 2015.3 Reports with the Court no later than sixty days from the NN CALA Petition Date (subject to the right to seek further extensions for cause).

30.    The Debtors also request that with respect to the Order Enforcing Section 362 Of The Bankruptcy Code (the "362 Order") [D.I. 52], that the Court enter an order substantially in the form attached hereto as Exhibit D, which conforms the 362 Order to NN CALA's chapter 11 petition.

31.    The Debtors further request that the Original Debtors' Orders, to the extent the relief granted in the Original Debtors' Orders is relevant to NN CALA, be made applicable to NN CALA's chapter 11 case subject to the following modifications: (a) the terms "Petition Date," "prepetition" and "postpetition" shall refer to July 14, 2009 and (b) the terms "Debtor" and "Debtors" shall mean NN CALA.

**Basis for Relief Requested**

32.    Section 105(a) of the Bankruptcy Code provides this Court with the power to
grant the relief requested herein by the Debtors.  Section 105(a) of the Bankruptcy Code states
that a bankruptcy court "may issue any order, process, or judgment that is necessary or
appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Under
Section 105(a) of the Bankruptcy Code, the Court has broad equitable powers.  *See* In re
Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of
the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide
equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re
VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a)
bestows broad equitable powers on the Court.") (*citing* In re Combustion Engineering, Inc., 391
F.3d 190, 236 (3d Cir. 2004)).

33.    NN CALA requires the protections and authorizations that this Court granted the
Original Debtors through the Original Debtors' Orders in order to enter chapter 11 in an orderly
manner and to maintain its ability to reorganize successfully.  If the Motion is not granted, NN
CALA will separately seek essentially the same substantive relief granted in the Original
Debtors' Orders.  Therefore, entry of an order directing that the Original Debtors' Orders be
made applicable will eliminate the need for duplicative notices, motions, applications and orders
to be filed in NN CALA's chapter 11 case.  Furthermore, had NN CALA filed its chapter 11
petition at the same time as the Original Debtors, NN CALA would have been a movant with
respect to the Original Debtors' Orders.

34.    For the reasons in the original motions and the orders granting the motions, the
Debtors believe that the relief requested herein is appropriate to carry out the provisions of the

Bankruptcy Code.  Furthermore, courts have authorized similar procedures in other complex chapter 11 cases like this one in this and other districts.  *See e.g.,* In re DBSI, Inc., Case No. 08-12687 (PJW) (Bankr. D. Del. Jan. 7, 2009);  In re SemCrude, L.P., Case No. 08-11525 (BLS) (Bankr. D. Del. Nov. 6, 2008); In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.  Sept. 17, 2008);  In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Nov. 26, 2002).  Accordingly, the Debtors submit that the relief requested is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

35.     Bankruptcy Rule 6003(b) provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligations regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition . . . ."  As set forth above, the Debtors submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003(b) has been satisfied. To successfully implement the foregoing, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the ten-day stay under Bankruptcy Rule 6004(h).

### Notice

36.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) holders of the twenty (20) largest unsecured claims against the Debtors; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Services; (vii) the United States Department of Justice; and (viii) the general service list established in the Debtors' chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

37.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:   July 15, 2009
         Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*

15