**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>Nortel Networks Inc., *et al.*,<br><br>    Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>Jointly Administered<br><br>Relates to Docket No. 1035 |

**LIMITED OBJECTION OF AIRVANA, INC. TO**
**NOTICE OF DEBTORS' REQUEST TO ASSUME AND ASSIGN**
**CERTAIN CONTRACTS AND TO ASSUME**
**AND SUBLEASE CERTAIN UNEXPIRED LEASES**

Airvana, Inc. ("Airvana") files this limited objection with respect to two

individualized *Notices of Debtors' Request to Assume and Assign Certain Contracts and to*

*Assume and Sublease Certain Unexpired Leases* (the "Notices")[1] and respectfully states as

follows:

**<u>INTRODUCTION</u>**

1.      On January 14, 2009 (the "Petition Date"), Nortel Networks Inc. ("NNI") and

certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under

chapter 11 of Title 11 of the United States Code (as amended, the "Bankruptcy Code").

2.      On June 19, 2009, the Debtors filed a motion (the "Procedures Motion") by which

the Debtors sought, among other things, authorization and approval of: (a) the Debtors' entry

into an asset sale agreement with Nokia Siemens Networks B.V. (the "Stalking Horse Bidder")

for the sale of certain CDMA and LTE assets as a "stalking-horse" purchase agreement; (b)

procedures for the assumption and assignment of certain executory contracts; and (c) the

---

[1]  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to
them in the Notices.

assumption and assignment of certain executory contracts pursuant to section 365 of the

Bankruptcy Code.

3.      On June 30, 2009, the Court entered an order (the "Procedures Order")

approving the Procedures Motion.  The Procedures Order sets forth procedures regarding the

Debtors' assumption and assignment of executory contracts which, in summary, provides

that the Debtors shall serve an individual notice on each counterparty under each Assumed

Agreement.

4.      The Notices are dated July 7, 2009.  Pursuant to the Notices, any Request for

Adequate Assurance, objection to any proposed Cure Amount and objection to the

assumption and assignment of any executory contract to be assumed and assigned must be

filed on or before July 17, 2009.

5.      The Notices state that the Debtors intend to assume and assign the following:

(a) "Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO)

Products, as amended and supplemented" (the "Development Agreement"); (b) "Airvana Inc.

Diagnostic SW License Agreement and Schedules A-S" (the "Diagnostic License

Agreement"); and (c) "Purchase and License Agreement" (the "P&L Agreement").

Collectively, the Development Agreement, Diagnostic License Agreement and P&L

Agreement are referred to herein as the Contracts.

6.      The Notices propose the following cure amounts with respect to the Contracts:

(a) $36,393,769.67 in connection with the Development Agreement (the "Development

Agreement Cure Amount"); (b) $0 in connection with the Diagnostic License Agreement (the

"Diagnostic License Agreement Cure Amount"); and (c) $0 in connection with the P&L

Agreement (the "P&L Agreement Cure Amount").  Collectively, the Development

Agreement Cure Amount, Diagnostic License Agreement Cure Amount and P&L Agreement

Cure Amount are referred to herein as the "Proposed Cure Amounts."

7.      Airvana is a large organization that conducts business with NNI through

multiple contracts and extensive business relationships which are collectively referred to

herein as the "Airvana Agreements."  Due to the complexity and extensiveness of these

contractual relationships, Airvana is not able to determine the identity of certain of the

Airvana Agreements referenced in the Notices.

8.      Airvana does not necessarily object to either the assumption of some or all of

the Airvana Agreements by the Debtors or the assignment of some or all of the Airvana

Agreements to the Stalking Horse Bidder.[2]  However, based on the information available to

Airvana at this time, Airvana cannot conclusively determine which Airvana Agreements the

Debtors are seeking to assume and assign, and based on its best evaluation of which Airvana

Agreements the Notices describe, disagrees with the dollar amount of the Proposed Cure

Amounts.

9.      Airvana intends to work with the Debtors to reach a resolution of the issues

raised in this Limited Objection and has contacted counsel to the Debtor.  The Notices

require that objections be filed on or before July 17, 2009.  Thus, Airvana files this Limited

Objection for the purpose of preserving its objection rights in accordance with the procedures

set forth in the Notices.

---

[2]    Airvana reserves all rights granted it under section 365 of the Bankruptcy Code in the event
that the Stalking Horse Bidder is not the Purchaser and the Debtors seek to assume and assign
some or all of the Airvana Agreements to such other Purchaser.

## OBJECTIONS

### A.    Cure Amounts

10.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject an executory contract or an unexpired lease."  11 U.S.C. § 365(a); *see also University Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992) ("Bankruptcy Code section 365 empowers a trustee or debtor in possession, "subject to the court's approval," to "assume or reject any executory contract or unexpired lease of the debtor." (citation omitted)).  If there has been a default under the contract, then, pursuant to section 365(b)(1) of the Bankruptcy Code, the debtor cannot assume such contract unless, "at the time of assumption," the debtor:

> (A)    cures, or provides adequate assurance that the [debtor] will promptly cure, such default…and pecuniary losses resulting from such default shall be compensated…;
>
> (B)    compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract…, for any actual pecuniary loss to such party resulting from such default; and
>
> (C)    provides adequate assurance of future performance under such contract…

11 U.S.C. § 365(b)(1).

11.    Pursuant to section 365(b)(1) of the Bankruptcy Code, defaults arising under the Contracts must be cured as of the time of assumption.  *See* 11 U.S.C. § 365(b)(1).  The defaults that must be cured include pre-petition and post-petition defaults.  *In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 674 (Bankr. E.D. Pa. 1987); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 754 (Bankr. S.D.N.Y. 1986).

12.    In addition, the counterparty to an assumed contract is entitled to be compensated for "pecuniary losses resulting from the default."  11 U.S.C. § 365(b)(1)(A).

Such losses include interest on overdue payments where the contract provides for such interest or such interest is required by law. *See In re Crown Books Corp.*, 269 B.R. 12, 15 (Bankr. D. Del. 2001) ("The obligation to cure defaults includes the payment of any late or similar charges that are due under the contract or lease."); *In re Joshua Slocum, Ltd.*, 103 B.R. 601, 609 (Bankr. E.D. Pa. 1989) ("[I]nterest must be paid in order to 'timely perform all the obligations of the debtor' pursuant to § 365(d)(3) and to 'cur[e] such default' pursuant to § 365(b)(1)(A) if the lease contains a provision for interest, or if state law requires interest."); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986) (Where a contract is silent regarding interest owed upon default but state law provides for the payment of such interest, it is appropriate for the court to award interest "at the legal rate on unpaid additional rent from the date payment was due until the date payment was tendered.").

13.    Airvana has, in the limited time available since its receipt of the Notices, attempted to reconcile the information provided by the Debtors in the Notices with its own books and records.  In light of the scope and number of Airvana Agreements, the uncertainty as to which Airvana Agreements constitute the Contracts designated in the Notices and the short period of time provided for Airvana to review and analyze the Contracts and Proposed Cure Amounts, Airvana has not been able to finally confirm whether the Proposed Cure Amounts satisfy the requirements set forth in section 365 of the Bankruptcy Code.

14.    The attached <u>Schedule A</u> sets forth Airvana's best effort to determine the applicable cure amounts for each Contract based upon its books and records and its assumptions with respect to which Airvana Agreements have been designated in the Notices. <u>Schedule A </u>includes interest payments due to Airvana pursuant to the provisions of the

Development Agreement at the rate of one percent (1.0%) per month on all past due amounts.

15.     To the extent that additional amounts become due and payable under the Contracts, such amounts must also be included in the cure amounts.  These amounts will accrue until full payment of the cure amount is made.  Accordingly, Airvana reserves its rights to supplement Schedule A to reflect such additional amounts.

16.     Airvana objects to any attempted assumption and assignment of the Contracts to the extent that the Proposed Cure Amounts are less than those set forth on Schedule A, plus per diem interest of $12,131.26 through the date of payment of the Cure Amount to Airvana.

**B.     Indentification of Contracts**

17.     Airvana objects to the assumption and assignment of any Airvana Agreement that is not identified by the Debtors with sufficient specificity (such as reference to parties, agreement date and any amendments) to allow Airvana to conclusively identify each contract proposed to be assigned.  Airvana expects that its discussions with the Debtors will clarify the identity and scope of each of the Airvana Agreements which the Debtors seek to assume and assign pursuant to the Notices.  Accordingly, Airvana anticipates filing a revised Schedule A to conclusively reflect such agreements and related cure amounts.

**C.     Adequate Assurance of Future Performance**

18.     As a prerequisite to the assumption of an executory contract, a debtor must provide adequate assurance of future performance under such contract.  11 U.S.C. § 365(b)(1)

19.     Further, under section 365(f)(2) of the Bankruptcy Code, a debtor may only assign an executory contract if it assumes the contract in accordance with the provisions set forth in section 365 and provides adequate assurance of future performance by the assignee of the contract, whether or not there has been a default under the contract.  11 U.S.C. § 365(f)(2).

20.     Accordingly, no Airvana Agreement may be assumed or assigned without a showing of adequate assurance of future performance.

21.     Adequate assurance of future performance is determined by the facts of each assumption.  *See In re Fleming Cos., Inc.*, 499 F.3d 300, 307 (3rd Cir. 2007) ("What constitutes 'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." (citation omitted)).

22.     Although the pleadings and orders in this case may have established adequate assurance of future performance by the Stalking Horse Bidder, the proposed assignee of the Contracts may not yet even be known if an entity other than the Stalking Horse Bidder is the Purchaser.  Accordingly, Airvana requests adequate assurance of future performance with respect to any proposed assumption and/or assignment of any of the Airvana Agreements.

23.     With respect to Airvana's request for adequate assurance, responses should be sent to counsel to Airvana, Christopher J. Panos, Esq., by email to panos@craigmacauley.com or by facsimile to (617) 742-1788, with a copy to Kathleen A. Rahbany, Esq. by email to krahbany@craigmacauley.com.

## RESERVATION OF RIGHTS

24.     Airvana reserves the right: (a) to amend, supplement or otherwise modify this Limited Objection and all attachments and exhibits hereto as necessary or proper; and (b) to

raise such other and further objections to any proposed assumption and assignment and/or the

cure amount proposed with respect to any proposed assumption and assignment of any

Airvana Agreement.

WHEREFORE, Airvana respectfully requests that this Court enter an order:

(i)     Clarifying which Airvana Agreements are proposed to be assumed and
        assigned;

(ii)    Fixing the cure amounts due under the Contracts in the amounts set forth in
        Schedule A of this Limited Objection (as such schedule may be amended
        and supplemented), plus the per diem interest amount through the date of
        payment of the cure amounts to Airvana;

(iii)   Requiring adequate assurance of future performance and prompt payment
        of the cure amounts as finally agreed or determined;

(iv)    Requiring that any sale order approving the Sale Motion provide that the
        Purchaser shall be liable for all accrued liabilities arising under the
        executory contracts and existing as of the time that the executory contracts
        are assumed by the Debtors and assigned to the Purchaser including all
        defaults arising thereunder and all obligations that have accrued thereunder
        but are not then in default; and

[Remainder of page intentionally left blank]

(v)    Granting such other and further relief as is just and appropriate.

Respectfully submitted,

Dated:  July 15, 2009
        Wilmington, Delaware

Michael R. Lastowski (DE 3892)
**DUANE MORRIS LLP**
1100 North Market Street, Suite 1200
Wilmington, DE  19801
Telephone:  (302) 657-4900
Facsimile:  (302) 657-4901
E-Mail:  mlastowski@duanemorris.com

-and-

Christopher J. Panos, Esq.
**CRAIG AND MACAULEY**
   **PROFESSIONAL CORPORATION**
Federal Reserve Building
600 Atlantic Avenue
Boston, MA 02210
Telephone: (617) 367-9500
Facsimile: (617) 742-1788
E-mail:  panos@craigmacauley.com

*Counsel for Airvana, Inc.*