IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------X
:
In re                                               :  Chapter 11
:
Nortel Networks Inc., et al.,[1]                    :  Case No. 09-10138 (KG)
:
           Debtors.                         :  Jointly Administered
:
:
----------------------------------------------------X
:
:
In re                                               :  Chapter 11
:
Nortel Networks (CALA) Inc.                         :  Case No. 09-_____
:
           Debtor.                          :  Joint Administration Pending
:
:
----------------------------------------------------X

**DECLARATION OF JOHN DOOLITTLE IN SUPPORT OF THE DEBTORS'
MOTION TO HAVE PREVIOUSLY-ENTERED ORDERS AS SUPPLEMENTED
GOVERN NORTEL NETWORKS (CALA) INC. PROSPECTIVELY**

I, John Doolittle, do hereby declare as follows:

1. I am Treasurer of Nortel Networks (CALA) Inc. ("NN CALA"), a corporation organized under the laws of Florida. I am also Vice President of Nortel Networks Inc. ("NNI"), a corporation organized under the laws of Delaware. I also serve as a Vice President of the other

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

above-captioned debtors (the "Debtors" or the "U.S. Debtors") in these cases filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").[2] I am generally familiar with the day-to-day operations of NN CALA and its affiliated Debtors and their affairs, books and records. This Declaration incorporates by reference the description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are previously set forth in the First Day Declaration.[3]

2. On January 14, 2009 (the "Original Petition Date"), Nortel Networks Inc. and certain of its affiliates (collectively, the "Original Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Original Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

3. On July 14, 2009, (the "NN CALA Petition Date"), NN CALA filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. NN CALA continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

4. NN CALA and the Debtors are all direct or indirect subsidiaries of Nortel Networks Corporation ("NNC"), a corporation organized under the laws of Canada. I also serve as the Treasurer of NNC. Also on the Original Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors and NN

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Debtors' Motion to Have Previously-Entered Orders as Supplemented Govern Nortel Networks (CALA) Inc. Prospectively (the "Motion").

2

CALA, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with

---

[4] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[5] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

     5. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of the cases of the Original Debtors and for consolidation for procedural purposes only [D.I. 36].[6] On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142, 340]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Original Debtors' cases.

     6. Together, NN CALA, the Debtors, the Canadian Debtors, the EMEA Debtors, and certain of their non-debtor affiliates operate an integrated, multinational business, providing networking and communications technology and services to customers in the United States, Canada and around the world.

     7. On June 19, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their CDMA and LTE businesses to Nokia Siemens Networks B.V., subject to the receipt of higher and better offers [D.I. 931]. A hearing to approve the sale is

---

[6] All references to "D.I." refer to the docket for the chapter 11 cases of Nortel Networks, Inc., and its affiliates, jointly administered under case number 09-10138 (KG).

4

scheduled for July 28, 2009. In addition to announcing this sale agreement, the Debtors have announced that they are advancing in discussions with external parties to sell other businesses.

8. NN CALA is one of the Nortel entities that operates in the Caribbean and Latin America ("CALA") region. NN CALA's businesses consist of the same Enterprise, MEN and Carrier (including CDMA, GSM and CVAS) businesses conducted by the other Nortel entities, as described further in the First Day Declaration. A substantial majority of NN CALA's customers are foreign companies and governmental entities in the CALA region.

9. NN CALA is a direct subsidiary of NNI, with headquarters in Sunrise, Florida. All of Nortel's business activities in the CALA region were originally conducted by NN CALA. Eventually, beginning in the 1980s, Nortel formed direct subsidiaries of NNL to operate locally in the various countries in which they are incorporated. NNL currently has thirteen direct subsidiaries operating in various countries, including Argentina, Brazil, Bolivia, Chile, Colombia, Ecuador, México, Paraguay, Peru, Venezuela, and Uruguay. NN CALA has two direct subsidiaries, Nortel Networks de Guatemala, Ltda., and Nortel Trinidad and Tobago Limited, as well as a minority ownership interest in Nortel Networks de Colombia, S.A.

10. Given the integrated basis on which the Nortel businesses operate, NN CALA has filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this District. In addition to the filing of the Motion, NN CALA is seeking an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that would provide for the joint administration of the cases of the Debtors and NN CALA and for consolidation for procedural purposes only. Though originally NN CALA did not file for relief under chapter 11 of the Bankruptcy Code with the Original Debtors, in the past six months the Debtors have undergone restructuring efforts, including, as announced on June 19, advancing in discussions with third parties to divest

its businesses. During this time, the Original Debtors and NN CALA have reviewed their business needs to determine the appropriate means of preserving value. Accordingly, NN CALA has determined that it should seek Chapter 11 protection to preserve assets and administer its estate in accordance with the Debtors' larger restructuring efforts.

**A.      Employee Wage Obligations**

11. NN CALA employs approximately 205 employees (the "CALA Employees"), approximately 187 of whom are located in the United States at its headquarters in Sunrise, Florida. Additionally, there are approximately 15 CALA Employees located in Puerto Rico, and three CALA Employees located in Trinidad and Tobago. Of the 205 CALA Employees, approximately 204 are full-time salaried employees. Approximately 108 of the CALA Employees are sales representatives dedicated to marketing and selling Nortel products and services to customers in the CALA region. The remaining CALA Employees are dedicated to other functions including services and operations, human resources and finance, among others.

12. NN CALA's compensation of its employees is funded through NNI's payroll account, and the CALA Employees receive substantially the same benefits as the Employees described in the Employee Wage Motion. In the ordinary course of business, the CALA Employees are paid on a bi-weekly basis every other Friday. On July 13, 2009, in accordance with its ordinary course practices, NN CALA funded certain employee-related payment obligations, including for the payroll period ending July 19, 2009, by wire transfer to NNI for disbursement in accordance with the cash management procedures approved in the Cash Management Order (as defined below). The payment, totaling approximately $1.7 million, includes payments for wages and salaries, commissions, severance payments and payments relating to the Key Employee Retention Plan and the Key Executive Incentive Plan, related tax

6

obligations and other benefit plan obligations. Accordingly, NN CALA does not seek relief at this time with respect to payment of prepetition employee obligations, but reserves its right to do so in the future.

**B.     Cash Management System & Bank Accounts**

13. NN CALA is one of Nortel's purchasing hub entities that process orders from distribution entities in the respective geographic area. Accordingly, NN CALA manages key supplier relationships and acts as a funneling point for orders from distribution entities in the CALA region. As described in further detail in the Cash Management Motion, as a purchasing hub entity, NN CALA purchases products to fulfill orders generated by it and its distribution affiliates of CALA region, thereby generating both profits and receivables owed by the affiliates to NN CALA in the ordinary course of its operations, which are calculated and reconciled on a monthly basis.

14. NN CALA maintains two bank accounts in the United Sates and four bank accounts abroad for collecting customer payments and settling accounts payable. A schedule of the NN CALA's prepetition bank accounts is attached to the Motion.

**C.     Foreign Vendor Obligations**

15. In the ordinary course of its business, NN CALA maintains branch offices outside of the United States dedicated to sales and distribution in Uruguay and Trinidad and Tobago, and generally operates in the CALA region. In conducting their operations, NN CALA incurs obligations to various third-party vendors (the "Foreign Vendors"), some of which have prepetition claims outstanding against NN CALA (the "Foreign Vendor Claims"). The Foreign Vendor Claims are for various obligations including, but not limited to, payments for the supply of goods and services essential to the Debtors' businesses.

16. The Foreign Vendors Order currently authorizes payment of up to $5.5 million of Foreign Vendor Claims. NN CALA estimates that there remains outstanding, as of CALA Petition Date, approximately $1.3 million in Foreign Vendor Claims against NN CALA.

17. For the reasons set forth above and in order to promote the efficient administration of NN CALA's chapter 11 proceeding, I believe it is appropriate and in the best interest of NN CALA and its affiliated Debtors to grant NN CALA in the relief sought in the Motion and the motion seeking the joint administration of NN CALA and its affiliated Debtors' cases.

18. I submit this declaration in support of the Motion and pursuant to 28 U.S.C. § 1746. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, information supplied to me by other members of the NN CALA or Debtors' management and professionals or learned from my review of relevant documents or upon my opinion based upon my experience and knowledge of CALA and the Debtors' operations and financial condition. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am authorized to submit this declaration.

[Remainder of page left intentionally blank.]

I declare under penalty of perjury that the foregoing is true and correct.
Executed on July 15, 2009

_____
John Doolittle