IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  : Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                       : Case No. 09-10138 (KG)
:
               Debtors.          : Jointly Administered
:
: Hearing date: August 4, 2009 at 10:00 AM (ET)
: Objections due: July 28, 2009 at 4:00 PM (ET)
---------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE
ASSUMPTION OF AN UNEXPIRED LEASE OF
NONRESIDENTIAL REAL PROPERTY UNDER SECTION
365 OF THE BANKRUPTCY CODE AND GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, including Nortel Networks (CALA) Inc. ("NN CALA"), as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to assume that certain unexpired lease of nonresidential real property dated as of November 22, 1996, between C and L Properties, predecessor-in-interest to The Plaza CP LLC, as landlord, and Bay Networks USA, Inc., as predecessor-in-interest to Nortel Networks Inc., as tenant, for premises located at 2141

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Rosecrans Avenue, El Segundo, California (together with all amendments, supplements and modifications, the "Lease"). In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

### Background

**A.     Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

8. On July 14, 2009, NN CALA, an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 15, NN CALA and the Debtors filed motions seeking (i) joint administration and consolidation of NN CALA's chapter 11 case with the Debtors' chapter 11 cases for procedural proposes, and (ii) the application to NN CALA of certain previously entered orders in the Debtors' chapter 11 cases.

**B.  Debtors' Corporate Structure and Business**

9. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

**Relief Requested**

10. By this Motion, the Debtors seek an order authorizing the Debtors to assume the Lease. For the reasons discussed below, the Debtors believe that assumption of the Lease is in the best interests of the Debtors, their estates and their creditors.

4

**Facts Relevant to this Motion**

11. As of the Petition Date, the Debtors were lessees under approximately seventy-five (75) leases of non-residential real property. Since the Petition Date, the Debtors have rejected forty-six (46) leases and three (3) leases have expired by their terms in the ordinary course of business. Thus, the Debtors are currently lessees under approximately twenty-six (26) unexpired leases of non-residential real property, including the Lease.[4]

12. On May 7, 2009, this Court entered an Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Nonresidential Real Property, extending the Debtors' time to assume or reject unexpired leases of nonresidential real property through and including August 12, 2009 [D.I. 717] (the "First Extension Order").

13. On June 26, 2009, this Court entered an Order Under 11 U.S.C. 363(b)(1) And 365(d)(4) Granting Extension Of The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Non-Residential Real Property Upon Receipt Of Written Consent From Lessors, extending the deadline by which the Debtors must assume or reject an unexpired lease of nonresidential real property upon the Debtors' receipt of a landlord's written consent to such extension [D.I. 965] (the "Second Extension Order").

14. Currently, the Debtors have received written consents for a 365(d)(4)(B)(ii) extension from a substantial number of landlords, and are in discussions with other landlords to obtain their consent to a 365(d)(4)(B)(ii) extension or reach alternative arrangements. The

---

[4] The leases described in this sentence, including the Lease, include all unexpired leases of nonresidential real property to which the Debtors are lessees and have not previously assumed or rejected. Inclusion or omission of any instrument in this paragraph does not constitute an admission by the Debtors that such instrument is or is not a true lease or otherwise.

Debtors also continue to assess which leases may no longer be necessary for their continued business operations.

15.    The landlord under the Lease has indicated to the Debtors that it will not consent to a 365(d)(4)(B)(ii) extension of the deadline by which the Debtors must assume or reject the Lease pursuant to the Second Extension Order. Absent such consent, pursuant to the First Extension Order, the Debtors' time under section 365(d)(4) of the Bankruptcy Code to assume or reject the Lease expires on August 12, 2009, upon which date, the Lease would be deemed rejected if not assumed or rejected prior to such date.

16.    The monthly rental obligation for the Lease is relatively inexpensive (i.e. less than $25,000 in monthly rent) and the business operations at the leased premises generate significant revenue for the Debtors.

17.    The Lease will expire by its terms on March 31, 2010, the date through which the Debtors had requested landlord consent to an extension of the deadline by which the Debtors must assume or reject the Lease. Since the term remaining under the Lease is equivalent to the amount of time that the Debtors would likely have remained in the leased premises had the landlord granted its consent to an extension of the deadline by which the Debtors must assume or reject the Lease pursuant to the Second Extension Order, the Debtors have concluded, in their sound business judgment, that the assumption of the Lease will result in relatively minimal additional obligations or burdens on the Debtors' estates (if any) and therefore assumption of the Lease is close to the economic equivalent of the Debtors having received an executed extension letter from the landlord under the Lease.

18.    The Debtors' payment history with respect to their leased property portfolio is excellent. Since the commencement of the term of the Lease, the Debtors have timely paid their

monthly obligation under the Lease. During the pendency of these chapter 11 cases, the Debtors have continued to pay rent. As of the date of this Motion, to the Debtors' knowledge, the Debtors have fulfilled all material obligations of the Lease and have not received a notice of default from the landlord of the Lease.

## Basis for Relief

**A.    Assumption of the Lease is in the Best Interests of the Debtors' Estates.**

19.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

20.    When determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease, courts apply the "business judgment" rule. See NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3rd Cir. 1982). In order to assume a lease, a debtor-in-possession must make the determination to assume as an exercise of the debtor-in-possession's sound business judgment. In re ANC Rental Corp., Inc., 278 B.R. 714, 723 (Bankr. D. Del. 2002) (citing In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999)).

21.    A court's review of a decision to assume is a deferential one. See In re Bullet Jet Charter, Inc., 177 B.R. 593, 601 (Bankr. N.D. Ill. 1995) ("The bankruptcy judge should have a deferential view of the debtor's business judgment in this regard, but need not accept that judgment blindly."). The decision to assume need not be perfect or precise; instead it must only stem from sources other than the product of bad faith, gross abuse of discretion, whim or caprice. Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.), 756 F.2d 1043, 1046-47 (4th Cir. 1985); In re Riodizio, Inc., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's

management, . . . ."); In re Chipwich, Inc., 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (finding a court should not interfere with a debtor's decision to assume or reject "absent a showing of bad faith or abuse of business discretion").

22.     The Lease is important to the Debtors' ongoing operations and efforts to maximize value for the benefit of all stakeholders. The Lease is set to expire on March 31, 2010, the date for which the Debtors had requested of the landlord of the Lease as the deadline by which the Debtors must assume or reject the Lease, and the leased premises generates significant business revenue. As such, the Debtors have determined, in their sound business judgment, that it is in the best interests of the Debtors, their estates and their stakeholders to remain in the leased premises for the remainder of the leased term. Additionally, the Debtors reserve their right to assign the Lease pursuant to section 365(f) of the Bankruptcy Code.

23.     Therefore, the Debtors have determined, in the exercise of their sound business judgment, that assumption of the Lease is in the best interests of the Debtors' estates.

**B.     Cure and Adequate Assurance of Future Performance**

24.     Section 365(b)(1) of the Bankruptcy Code requires a debtor to cure, or provide adequate assurance that the debtor will promptly cure, any outstanding defaults under the executory contract to be assumed. 11 U.S.C. § 365(b)(1). See also In re ANC Rental, 278 B.R. 714, at 724.

25.     As of the date of this Motion, the Debtors are not aware of any defaults under the Lease. Therefore, the Debtors are under no obligation to pay any cure amounts or to provide adequate assurance that the Debtors will promptly pay such cure amounts.

## Notice

26.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the landlord of

the Lease; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

27.     No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 15, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*