IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
*In re*                                                        :    Chapter 11
                                                               :
Nortel Networks Inc., *et al.*,[1]                             :    Case No. 09-10138 (KG)
                                                               :
              Debtors.                    :    Jointly Administered
                                                               :
                                                               :    Hearing date: August 4, 2009 at 10:00 a.m. (ET)
                                                               :    Objections due: July 28, 2009 at 4:00 p.m. (ET)
---------------------------------------------------------------X

### DEBTORS' SUPPLEMENTAL MOTION FOR ENTRY OF AN ORDER CLARIFYING RELIEF GRANTED IN THE FINAL ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO ONE OR MORE LETTER OF CREDIT AND BONDING FACILITIES AND (II) GRANTING RELATED RELIEF PURSUANT TO SECTIONS 105, 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE [D.I. 1010]

Nortel Networks Inc. ("NNI") and certain of its affiliates, including Nortel Networks (CALA) Inc. ("NN CALA"), as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of a supplemental order substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Codes (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") clarifying the Final Order (I) Authorizing the Debtors to Enter into One or More Letter of Credit and Bonding Facilities and (II) Granting Related Relief

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code [D.I. 1010] (the "Final Order") with respect to the aggregate commitments that may be entered into under the Final Order. In support of this Motion, the Debtors rely on the Declaration of John Doolittle (the "Doolittle Declaration") in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Enter Into One or More Letter of Credit and Bonding Facilities and (II) Granting Related Relief Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code [D.I. 852] (the "L/C and Bonding Motion"), attached to the L/C and Bonding Motion as Exhibit C. In further support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 105, 361, 362, 363 and 364 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002, 4001 and 9014 and Local Rule 4001-2.

## Background

**A.    Introduction**

3.  On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6.    On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

8.    On July 14, 2009, NN CALA, an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 15, NN CALA and the Debtors filed motions seeking (i) joint administration and consolidation of NN CALA's chapter 11 case with the Debtors' chapter 11 cases for procedural proposes, and (ii) the application to NN CALA of certain previously entered orders in the Debtors' chapter 11 cases.

4

**B.     Debtors' Corporate Structure and Business**

9.     A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.     The L/C and Bonding Motion**

10.    On June 4, 2009, the Debtors filed the L/C and Bonding Motion, which sought authorization for the Debtors to seek the issuance of surety and performance bonds and/or letters of credit in an aggregate amount of up to $30,000,000, subject to compliance with certain notice procedures. The Debtors incorporate the L/C and Bonding Motion in this Motion by reference as if set forth herein in its entirety. On June 11, 2009, after an interim hearing on the L/C and Bonding Motion, the Court entered the Interim Order (I) Authorizing the Debtors to Enter into One or More Letter of Credit and Bonding Facilities, (II) Scheduling a Final Hearing and (III) Granting Related Relief Pursuant to Sections 105, 361, 362, 363 and 364 of the Bankruptcy Code [D.I. 894]. On June 30, 2009, after a final hearing on the L/C and Bonding Motion, the Court entered the Final Order.

11.    Among other things, the Final Order authorizes and empowers the Debtors "to negotiate and enter the L/C and Bonding Facilities." Final Order at ¶ 3. The L/C and Bonding Motion defines the L/C and Bonding Facilities as "agreements for the issuance of surety and performance bonds and/or letters of credit in an aggregate amount of up to $30,000,000 to be provided by such sureties and financial institution lenders with which the Debtors come to terms." L/C and Bonding Motion at p.1. The L/C and Bonding Motion also provides that "the Debtors seek authority to . . . post such cash collateral as is necessary to secure the bonds." L/C and Bonding Motion at ¶ 15.

**Relief Requested**

12. Since the entry of the Final Order, the Debtors have continued negotiations with counterparties and constituencies in these cases regarding the provision of L/C and Bonding Facilities. While the Debtors believe the Final Order is clear as to the Debtors' authority to enter into such facilities, in an abundance of caution, by this Motion, the Debtors seek an order clarifying that the Final Order authorizes, but does not direct, the Debtors to (i) enter into L/C and Bonding Facilities that collectively permit the issuance of a face amount of performance bonds and/or letters of credit greater than $30,000,000 so long as the Debtors do not request the issuance of performance bonds and/or letters of credit from the Sureties / Financial Institutions in an aggregate amount greater than $30,000,000[4] and (ii) post any cash collateral necessary to secure such performance bonds and/or letters of credit, even if the amount of such collateral exceeds $30,000,000.

13. After negotiating with potential counterparties, the Debtors have identified two counterparties willing to provide L/C and Bonding Facilities for differing amounts. The total available amount under the facilities proposed by these counterparties, in the aggregate, would potentially provide the Debtors with in excess of $30,000,000 in face amount of letters of credit and/or performance bonds (and such amount could be as high as $36,200,000). While the Debtors acknowledge that the Final Order caps the aggregate face amount of letters of credit and/or performance bonds that may be issued under the L/C and Bonding Facilities at $30,000,000, the Debtors believe it is in their interest to enter into both facilities (subject to compliance with the notice procedures set forth in the Final Order) in order to provide them (i) flexibility with regard to the issuance of any particular letter of credit or performance bond from

---

[4] The Debtors reserve their right to return to the Court to request that the Court increase this amount, if necessary.

time to time, because certain contractual obligations can only be supported by a performance bond and not a letter of credit or vice versa, and (ii) flexibility in the event that one of the providers elects not to continue providing the support available under these uncommitted facilities.

14. The Debtors believe that their current internal controls and approval processes with respect to the issuance of letters of credit and performance bonds, coupled with the notice procedures set forth in the Final Order, provide sufficient safeguards to ensure that the $30,000,000 cap will not be exceeded.

15. While the Debtors believe the Final Order is clear, they seek confirmation that the Final Order permits the issuance of letters of credit and performance bonds with a face amount of up to $30,000,000, and to post required collateral in support of such letters of credit and performance bonds, even if such collateral may exceed $30,000,000 in the aggregate. Again, the terms of such letters of credit or performance bonds, including the collateral posting requirements, would be subject to the notice procedures set forth in the Final Order.

16. In support of this relief, the Debtors rely on the facts and legal arguments set forth in the L/C and Bonding Motion and the Doolittle Declaration.

17. The Debtors assert that the relief sought herein, while confirmatory in nature, is in the best interests of the Debtors, their estates and their creditors by adding further clarity to the terms of the Final Order.

## Notice

18. Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

19. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 15, 2009  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)  
Lisa M. Schweitzer (No. 1033)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ Ann C. Cordo_  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*