**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

_____
                                                                           :
In re:                                                                   :      Chapter 11
                                                                           :      Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.,*                          :
                                                                           :      Jointly Administered
                                Debtors.   :
                                                                           :      Re: Docket No. 931
_____  :

**PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS OF SNMP
RESEARCH INTERNATIONAL, INC. TO DEBTORS' MOTION TO APPROVE THE
SALE OF CERTAIN ASSETS OF THE DEBTORS' CDMA AND LTE BUSINESS FREE
AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS**

      SNMP Research International, Inc. ("SNMPRI"), through undersigned counsel, hereby files this preliminary objection and reservation of rights (the "Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") to approve the sale of certain of the Debtors' CDMA and LTE assets free and clear of all liens, claims and encumbrances and the assumption and assignment of certain contracts [Docket No. 931] (the "Sale Motion"), and in support hereof, respectfully represents as follows:

**The License Agreement**

      1.     SNMPRI and Nortel Networks Corporation ("NNC"), a Canadian corporation, are parties to a certain license agreement (the "License Agreement") executed prior to the Petition Date (defined herein) governing NNC's use of certain intellectual property described as source code and binary license code licensed by SNMPRI to NNC. The License Agreement contains over 70 schedules that each list one or more specific products, development software, and run-time software licensed to NNC. Section 7.1 of the License Agreement permits NNC to assign the License Agreement as follows:

> [u]pon prior written notice of such to SNMPRI, NNC may assign
> this Agreement, in its entirety only, and only in conjunction with a

> change of ownership, merger, acquisition, sale or transfer of all of substantially all of its business or assets. Such assignment shall only be valid as to NNC's business units as of the date of such assignment, and the rights and licenses of this Agreement shall not be enlarged to encompass the entirety of the new entity, if larger, or the entirety of the new entity's product line, if larger. The terms and conditions of this Agreement shall bind and inure to each party's successors and assigns.

License Agreement at 7.1.

2. Should NNC desire to assign only a portion of the License Agreement, section 7.2 of the License Agreement provides:

> [u]pon prior written notice of such to SNMPRI, execution of a fresh copy of this Agreement, and payment of an Adoption Fee, a Specified Entity previously licensed under one or more Schedules A that is to be made an independent entity by NNC may adopt this Agreement as an agreement separate from NNC ("New Agreement"). The Adoption Fee shall be equal to the amount that SNMP would have charged the Specified Entity under the relevant Schedule A if the Specified Entity had not been a Nortel Networks Company (Standard Value), minus the amount previously paid under the relevant Schedule A. SNMP's liability under the New Agreement shall be limited to a straight line three year depreciation of the Standard Value, starting from the execution date of the new agreement. The scope of the new license shall be to the named Specified Entity only, and shall not include the possibility of addition of any other "Specified Entities" at a later point in time.

License Agreement at 7.2.

3. SNMPRI and NNC were parties to the License Agreement on the Petition Date (defined herein).

**Background**

4. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

5. On June 19, 2009, the Debtors filed the Sale Motion. The Sale Motion, among other things, seeks the approval of: (i) the sale, free and clear of all liens, claims and

encumbrances, certain of the Debtors' CDMA and LTE assets (the "Sale") pursuant to the terms of the Asset Sale Agreement by and among NNC, Nortel Networks Limited, Nortel Networks Inc. and the other Entities Defined Herein as Sellers (collectively, the "Sellers") and Nokia Siemens Networks B.V. (collectively, the "Purchasers") dated as of June 19, 2009 (the "Asset Purchase Agreement"), (ii) the assumption and assignment certain executory contracts pursuant to procedures set forth in the Sale Motion (the "Assumption and Assignment Procedures"), and (iii) the assignment of certain Non-365 Contracts (as defined in the Asset Purchase Agreement). The sale to the Purchasers is subject to higher and better offers.

6. Pursuant to the Assumption and Assignment Procedures, the Debtors allegedly served notice to counterparties to the executory contracts that are proposed to be assumed and assigned should the Sale to the Purchasers be approved. SNMPRI did not receive such a notice. The Debtors, through counsel, have informed SNMPRI that the License Agreement is not an executory contract to be assumed and assigned in the Sale.

7. Pursuant section 2.1.6 to the Asset Purchase Agreement, the Sellers will disclose a list (the "Non-365 Contract List") of certain contracts that the Purchasers have elected to have the relevant Seller assign to the Purchasers, or any other purchaser if the Purchaser is outbid, at Closing (as defined in the Asset Purchase Agreement). SNMPRI has not received notice that they are included in the Non-365 Contract List. The Debtors, through counsel, have been informed by the Debtors that they are not included in the Non-365 Contract List.

8. Although SNMPRI has not received notice that the License Agreement will be assumed and assigned in the Sale or that the License Agreement is included in the Non-365 Contract List, certain employees of NNC have advised SNMPRI that portions of the intellectual

property licensed under the License Agreement will be "transferred" to Nokia Siemens Networks, one of the Purchasers.

**Preliminary Objection and Reservation of Rights**

9.     Based on conflicting representations regarding the Sale, SNMPRI files this preliminary objection and reservation of rights. Although none of the Debtors are a party to the License Agreement, NNC, the counterparty to the License Agreement, is party to Canadian bankruptcy proceedings related to the above-captioned cases. SNMPRI files this objection because NNC is a party to the Asset Purchase Agreement proposed to be approved in the Sale.

10.    SNMPRI has made multiple attempts to determine if its intellectual property or the License Agreement are involved in the Sale; however, the information received to date has been conflicting and ambiguous. SNMPRI files this objection to request that the Debtors clarify, by inclusion any order to be entered by the Court approving the Sale, the Debtors' and Purchasers' intentions with respect to the License Agreement. If the parties to the Sale will agree, and the Court will make it a part of the record, that no intellectual property and no intellectual property rights belonging to SNMPRI and its suppliers are included in the Sale, then SNMPRI will withdraw its objection to the Sale.

11.    If, however, SNMPRI's intellectual property or the License Agreement are involved in the Sale: (i) any assumption or assignment of the License Agreement must be made pursuant to the terms of the License Agreement, (ii) any outstanding obligations owed to SNMPRI must be cured, and (iii) SNMPRI must receive adequate assurance of future performance.

12.    The terms of the License Agreement govern the procedure for the assignment of the agreement and require it to be assigned in its entirety. If the License Agreement is not

assigned in its entirety, all parties must comply with the procedure and obligations set forth in section 7.2 of the License Agreement, including the execution of a new agreement and the payment of an adoption fee.

13. Section 365(b) of the Bankruptcy Code requires a debtor to cure any defaults and provide adequate assurance of future performance before an executory contract can be assumed. 11 U.S.C. § 365(b). To the extent the any parties to the Sale seek to assume and assign the License Agreement, any defaults under the agreement must be cured and adequate assurance must be provided. SNMPRI uses royalty reports provided by NNC to determine amounts owed to SNMPRI for royalties. NNC has not yet provided royalty reports to SNMPRI for the second quarter of 2009. SNMPRI estimates that approximately $22,092 (US dollars) plus any/all amounts associated with royalties that have not been reported by NNC to date are owed to SNMPRI. Such outstanding amounts must be paid.

14. Finally, SNMPRI demands adequate assurance of future performance should the stalking horse bidder be outbid.

15. At this juncture, it is possible that the Debtors will receive higher and better offers, and that the Purchasers may not ultimately purchase the Debtors' assets. The purchaser of the Debtors' assets has not been finally identified, and the schedule of contracts and leases that the Debtors propose to include in the Sale is not finally determined. SNMPRI reserves all rights to object to the Sale and the assumption, assignment or rejection of any agreements affecting SNMPRI and the intellectual property of SNMPRI and SNMPRI's suppliers.

16. SNMPRI reserves all rights to supplement or amend the objections raised herein and to seek discovery regarding sale issues, including, but not limited to, cure amounts, and the Debtors' rights and abilities to assume and assign the License Agreement.

WHEREFORE, SNMPRI requests that the Court deny the Sale Motion as set forth herein and reserves all rights.

| | |
|---|---|
| Dated: July 20, 2009<br>Wilmington, Delaware | CIARDI CIARDI & ASTIN<br><br>*/s/ Mary E. Augustine*<br>Daniel K. Astin (No. 4068)<br>Anthony M. Saccullo (No. 4141)<br>Mary E. Augustine (No. 4477)<br>919 N. Market Street, Suite 700<br>Wilmington, Delaware 19801<br>(302) 658-1100 telephone<br>(302) 658-1300 facsimile<br>dastin@ciardilaw.com<br>asaccullo@ciardilaw.com<br>maugustine@ciardilaw.com<br><br>*Attorneys for SNMP Research International, Inc.* |