IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11** |
|  | : |  |
| **NORTEL NETWORKS INC.**, *et al.*, | : | **Case No. 09-10138 (KG)** |
|  | : |  |
|  | : | **(Jointly Administered)** |
| **Debtors.** | : |  |
|  | : |  |

-------------------------------------------------------x

**DECLARATION OF SIMON ROBINS IN SUPPORT OF OBJECTION OF
FLEXTRONICS CORPORATION AND FLEXTRONICS TELECOM SYSTEMS
LTD TO DEBTORS' MOTION FOR ORDERS (I) (A) AUTHORIZING DEBTORS'
ENTRY INTO THE ASSET SALE AGREEMENT, (B) AUTHORIZING AND
APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING
A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE
NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT
PROCEDURES,  (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS
UNDER SEAL AND (G) SETTING A DATE FOR THE SALE HEARING, AND (II)
AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF
DEBTORS' CDMA AND LTE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
CONTRACTS AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

I, Simon Robins, hereby declare under the penalty of perjury that the following is

true and correct to the best of my knowledge, information and belief:

1.        I am a Vice President and General Manager with Flextronics Corporation.

Flextronics Corporation, Flextronics Telecom Systems Ltd and their respective affiliates are

referred to collectively herein as "Flextronics".  My responsibilities include managing

Flextronics' business relationship with Nortel.

2.        I submit this declaration in support of Flextronics' objection (the

"Objection") [1] with respect to the Debtors' Motion For Orders (i) (A) Authorizing Debtors' Entry

Into The Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures, (C)

---

[1] Capitalized terms used but not defined herein shall have the meaning assigned to them in the Objection.

Authorizing And Approving A Break-Up Fee And Expense Reimbursement, (D) Approving The

Notice Procedures, (E) Approving The Assumption And Assignment Procedures, (F)

Authorizing The Filing Of Certain Documents Under Seal And (G) Setting A Date For The Sale

Hearing, And (ii) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors'

CDMA and LTE Business Free And Clear Of All Liens, Claims And Encumbrances, (B) The

Assumption And Assignment Of Certain Contracts And (C) The Assumption And Sublease Of

Certain Leases, dated June 19, 2009 [Docket No. 931] (the "Sale Motion").

        3.      Except as otherwise noted, I have personal knowledge of the matters set

forth herein and, if called as a witness, would testify competently thereto as follows.

        4.      Flextronics and Nortel are parties to several agreements relating to the

CDMA business and other businesses.  Nortel Networks Limited is Flextronics' counterparty

with respect to the relevant written agreements relating to the CDMA business.  Flextronics also

does business with certain of the Debtors in these bankruptcy cases relating to the CDMA

business without a formal written document governing the relationship, but where a contractual

relationship does exist.

        5.      I understand that the Sale Motion contemplates, among other things, that

Flextronics is to remain obligated to perform under its existing agreements related to the CDMA

business post-closing, without those agreements being assigned to Nokia Siemens in accordance

with applicable law.  Rather, I understand that the structure of the sale to Nokia Siemens will

have Nortel enter into an Asset Sale Agreement and a series of ancillary agreements, including a

transition services agreement and a "back-to-back" arrangement with Nokia Siemens.  I

understand that the proposed arrangement will provide that Nortel will remain the contract party

vis-à-vis Flextronics, but pass through its rights and remedies under the Flextronics agreements to Nokia Siemens.

6.     I understand that, essentially, Nortel will stand as a conduit between Flextronics and Nokia Siemens, despite having sold the assets relating to the CDMA business and despite the fact that Nokia Siemens will be directing the operation of that business.

7.     Without having reviewed the actual provisions of the proposed back to back agreement (which I understand based on discussions between counsel has not yet been drafted), Flextronics cannot properly evaluate how the Nokia Siemens sale will prejudice its rights.  It is likely, however, based on my understanding of the Sale Motion and my prior experience, that the proposed back-to-back arrangement will be prejudicial to Flextronics in a number of ways.

8.     First, payments to Flextronics are likely to be delayed in the event that Nortel has disputes related to payments due from Nokia Siemens.  When such inevitable disputes arise, Nortel is likely to reduce payments to Flextronics accordingly, leaving Flextronics no recourse to Nokia Siemens, and thus no remedy other than withholding performance from Nortel, which is an extreme remedy not suitable for resolving ordinary course disputes.

9.     As one example of the types of possible disputes, under the MCMSAs, as amended by the Amending Agreement and Settlement Agreement and Side Letter, Flextronics presents claims for excess inventory to Nortel on a quarterly basis.  These claims are subject to a review process.  Determining what is excess inventory will necessarily implicate Nokia Siemens' forecasts of expected demand.  Further, Nokia Siemens may be liable to Nortel for certain items under the terms of the Asset Sale Agreement and ancillary agreements (including the "back to back" agreement).  Flextronics believes it is likely that Nortel will hold back payment of claims

-3-

to Flextronics as a result of (i) claims Nortel may have against Nokia Siemens, or (ii) difficulties

in calculating or determining amounts due to Flextronics because of differing interpretations of

the Amending Agreement and Settlement Agreement and Side Letter.

10.     Second, following the sale to Nokia Siemens, Flextronics will likely

receive certain purchase orders from Nortel some portion of which is related to Nokia Siemens

and some portion of which is not.  In the event that issues arise with respect to those orders, there

may be confusion or uncertainty as to which of Nortel and Nokia Siemens is the proper party to

address those issues, and which party is properly liable for claims by Flextronics related thereto.

In addition, I understand that certain equipment in Flextronics' possession may be sold to Nokia

Siemens if the Sale Motion is granted.  Some of this equipment may be used in connection with

other aspects of Nortel's business (e.g., to satisfy warranty or return obligations).  This would

leave Flextronics subject to competing claims of Nortel and Nokia Siemens with respect to

capacity of the equipment, or even possibly left unable to satisfy other contractual obligations to

Nortel in the event that Nokia Siemens seeks to take possession of the equipment.

11.     Flextronics is in possession of various pieces of testing and other

equipment related to the CDMA business.  This equipment is used in various aspects of the

Flextronics-Nortel relationship, including both Flextronics' so-called "Class A" obligations (i.e.,

the production and sale of new equipment) and so-called "Class B" obligations (i.e., warranty,

return and repair obligations), each in connection with both CDMA and other lines of business

with Nortel.  My understanding is that Nokia Siemens is proposing to purchase only the Class A

line of business, while leaving behind the Class B business with Nortel.  Such a split of the Class

A and B business lines will likely present difficulties for Flextronics in prioritizing and allocating

resources among the Class A and B businesses and other non-CDMA businesses, and there will

-4-

likely be conflicting demands from Nortel and Nokia Siemens and uncertainty about which

entity is truly in control.  Further, in the event that Nokia Siemens seeks to take possession of

such equipment or otherwise limit Flextronics' use of the equipment, Flextronics' ability to

satisfy its obligations may be prejudiced.

        12.     Further complications arise because Flextronics has in many cases paid

Nortel for such equipment, and regularly charges back to Nortel in the ordinary course of

business for depreciation and other amounts.  While my understanding is that Nortel is current on

these obligations (although Flextronics reserves all rights in that regard), the transfer of the

equipment to Nokia Siemens should in no way impact Nortel's obligations to continue making

such ordinary course payments.

*[Remainder of page intentionally left blank.]*

-5-

6246899

13.    Finally, the forecast process under the MCMSAs will be made more difficult by adding Nokia Siemens.  The forecasting process is currently an iterative process where Nortel provides a highly detailed estimate of expected orders, Flextronics reviews these expected purchases and discusses them with Nortel to address various issues and attempt to improve accuracy.  These discussions sometimes result in negotiated changes to the forecasts. Communication issues are very likely to arise where Nokia Siemens is added to the process, causing delays and added costs to Flextronics.  Moreover, to the extent that Nokia Siemens does not have to answer to Flextronics for incorrect forecasts, Nokia Soemens will have little incentive to ensure the accuracy of its forecasts.

Dated: July 22, 2009
       Montreal, Quebec


_____
Simon Robins
Vice President and General Manager
Flextronics Corporation