## EXHIBIT A

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn July 25, 2009)**

I, George Riedel, of the city of Boston in the State of Massachusetts, MAKE OATH AND SAY:

1.      I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held those positions since February, 2006.  As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit.  Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.      I swear this Affidavit in support of the motion to approve, among other things, the transactions contemplated by the asset sale agreement dated as of July 24, 2009 (the "Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and Telefonaktiebolaget L M Ericsson (publ), as purchaser (the "Purchaser"), in respect of the sale of certain of its assets relating to Nortel's CDMA and LTE business (as such terms are defined and described in further detail below) (the "Business"). A copy of the Sale Agreement (without exhibits or schedules) will be attached as an appendix to the seventeenth report (the "Seventeenth Report") of the Monitor (as defined below) to be filed

- 2 -

in connection with this motion. References to "Nortel" herein are references to the global enterprise as a whole.

**BACKGROUND**

3.      On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

4.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "Chapter 11 Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

5.      Additionally, on January 15, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

6.      On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

7.      On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

- 3 -

8.      Lastly, on June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code.  On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

9.      On July 15, 2009, Nortel Networks (CALA) Inc. made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

10.     Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these proceedings as well as my affidavit sworn June 23, 2009 (the "June 23 Affidavit") and are therefore not repeated herein.

11.     Capitalized terms used herein and not otherwise defined shall have the meaning given to them in my June 23 Affidavit or the Sale Agreement as applicable.

**THE TRANSACTION**

*The Business*

12.     My June 23 Affidavit and the Initial Order Affidavit both included a detailed description of Nortel's Carrier Networks business ("Carrier") which includes 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA"), and its research and development ("R&D") efforts have included innovative technologies focused in the areas of 4G broadband wireless services including Long Term Evolution ("LTE"), an evolving networking standard for which Nortel has completed early trials with customers.

*The Stalking Horse Agreement*

13.     Pursuant to an Order of this Court made on June 30, 2009 (the "Bidding Procedures Order"), approving a stalking horse agreement dated as of June 19, 2009 (the "Stalking Horse Agreement") among Nokia Siemens Networks B.V. ("Nokia Siemens Networks"), as buyer and the Sellers as well as certain bidding procedures ("Bidding Procedures") for a sales process for the Business.  A copy of the Bidding Procedures Order will be attached as an appendix to the Seventeenth Report.  A similar order was made by the U.S. Court on the same day.

- 4 -

14.    The Stalking Horse Agreement was described in detail in the June 23 Affidavit and the Fourteenth Report. Briefly, the Stalking Horse Agreement provided for the following:

a)    A purchase price of US$650,000,000, subject to certain adjustments based on net working capital, including net inventory, construction-in-process receivables, contractual liabilities, royalty liabilities, warranty provisions, and accrued vacation amounts as of the Closing;

b)    The payment of a break up fee of US$19,500,000 and an expense reimbursement of up to US$3,000,000; and

c)    A commitment to take at least 2,500 Nortel employees worldwide.

*The Sale and Bid Process*

15.    In accordance with the Bid Procedures, upon the entry of the Bidding Procedures Order, Nortel went into a twenty two (22) day "go shop" period pursuant to which prospective bidders were entitled to follow certain procedures in order to qualify as "Qualified Bidders" and submit "Qualified Bids" no later than 4:00 p.m. (ET) on July 21, 2009 (the "Bid Deadline").

16.    By the Bid Deadline, Nortel had received three (3) bids, including the Stalking Horse Agreement, all of which were subsequently allowed as "Qualified Bids"). In addition to Nokia Siemens Networks, both MPAM Wireless, Inc. ("MatlinPatterson") and the Purchaser submitted Qualified Bids.

17.    As contemplated by the Bidding Procedures, an auction was held at the offices of Cleary Gottlieb Steen & Hamilton LLP on July 24, 2009. The auction concluded on July 24, 2009 and the Purchaser was selected as the successful bidder.

18.    I am aware that the Seventeenth Report will contain a more detailed summary of the auction and the variations from the Stalking Horse Agreement as a result of the bid and auction process. The final purchase price for the Assets is US$1.130 billion subject to similar adjustments as were contained in the Stalking Horse Agreement. Pursuant to the Sale Agreement, the Purchaser has committed to make employment offers to at least 2,500 Nortel employees worldwide.

- 5 -

19.    As part of the transaction, NNL will enter into an intellectual property license agreement and trademark license agreement with the Purchaser (or such other entity designated by it) (the "IP Licenses") pursuant to which NNL will license certain intellectual property to the Purchaser. The Purchaser has requested approval of the IP Licenses as part of the approval and vesting order.

20.    I believe that the process undertaken the by the Applicants, the Chapter 11 Debtors and their advisors, including with input from the official committee of unsecured creditors of NNI and the ad hoc bondholders committee, was in compliance with the Bidding Procedures and that maximum value for the Assets has been achieved.

21.    I also note that the assets to be sold as part of this transaction do not include any of the intellectual property licensed to Hitachi Communication Technologies Ltd., which license agreement was approved by Order of this Court on June 1, 2009.

22.    The Sale Agreement is conditional upon the approval of both the U.S. Court and this Court and I am aware that a joint hearing between the two (2) courts has been scheduled for July 28, 2009.

*Alternate Bidder*

23.    The Bidding Procedures contemplated the approval of one or more "Alternate Bids" in the event that the transaction with the Purchaser does not close. At the auction, Nokia Siemens Networks was chosen as the alternative bidder with a bid on substantially similar terms contained in the Sale Agreement, with a purchase price of US$1,032,500,000 (the "Alternate Bid"). Further details regarding the Alternate Bid will be set out in the Seventeenth Report.

*Sealing*

24.    I am aware that the Monitor has or will be filing one or more confidential appendices to the Seventeenth Report which, among other thing, will contain the disclosure schedules and exhibits to the Sale Agreement.    These disclosure schedules and exhibits contain sensitive competitive and, in some instances, personal information. I believe sealing this confidential appendix is appropriate in the circumstances.

- 6 -

**CONCLUSION**

25.     The sale process was conducted by Nortel with consultation from its financial advisor, the Monitor and several of its significant stakeholders and in accordance with the Bidding Procedures. The auction resulted in a significantly increased purchase price on terms that are the same or better than those contained in the Stalking Horse Agreement. I believe that the proposed transaction as set out in the Sale Agreement is the best offer available for the Assets and that the Alternate Bid represents the second best offer available for the Assets.

SWORN BEFORE ME at the City of
New York, in the State of New York on
this 25th day of July, 2009

_____
Commissioner for Taking Affidavits or
Notary Public

George Riedel

Jennifer T. Scott
Notary Public, State of New York
No. 01SC6193449
Qualified in New York County
Commission Expires September 15, 2010

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

| | |
|---|---|
| | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)<br><br>Proceeding commenced at Toronto |
| | **AFFIDAVIT OF GEORGE RIEDEL**<br>**(sworn July 25, 2009)** |
| | **OGILVY RENAULT LLP**<br>Suite 3800<br>Royal Bank Plaza, South Tower<br>200 Bay Street<br>P.O. Box 84<br>Toronto, Ontario M5J 2Z4, Canada<br><br>**Derrick Tay LSUC#: 21152A**<br>Tel: (416) 216-4832<br>Email: dtay@ogilvyrenault.com<br><br>**Mario Forte  LSUC#: 27293F**<br>Tel: (416) 216-4870<br>Email: mforte@ogilvyrenault.com<br><br>**Jennifer Stam LSUC #46735J**<br>Tel: (416) 216-2327<br>Email: jstam@ogilvyrenault.com<br>Fax: (416) 216-3930<br>Lawyers for the Applicants |

DOCSTOR: 1736538\2