- 16 -

the selection of the Successful Bidder and the Alternate Bidder. The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid, and will become nonrefundable upon the approval by the Bankruptcy Court and the Canadian Court of the Sale to the Successful Bidder.

### Reservation Of Rights

The Sellers, after consultation with their advisors, the Committee, the Bondholder Group and the Monitor, and their respective advisors, (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (b) may reject, at any time, any bid (other than the Purchaser's initial bid) that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, any orders of the Canadian Court or any other orders applicable to one or more Sellers, or the terms and conditions of the Sale, or (iii) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in consultation with the Committee, the Bondholder Group and the Monitor; and (c) except as otherwise specifically set forth herein, with respect to instances in which the consent of the Committee, the Bondholder Group and the Monitor is required, may modify the Bidding Procedures or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Assets. Notwithstanding any of the foregoing, or anything else contained herein, however, the Sellers may not, without prior written consent of the Committee, the Bondholder Group and the Monitor, which consent may not be unreasonably withheld, (i) extend the deadlines set forth in the Auction procedures for more than ten (10) Business Days, (ii) adjourn the Auction for more than ten (10) Business Days, or (iii) adjourn the Sale Hearing for more than five (5) Business Days if the Auction has concluded.

Each of the foregoing actions shall be made by the Sellers in consultation with the Committee, the Bondholder Group and the Monitor, and their respective advisors. Notwithstanding the foregoing, the Sellers may not, without the prior written consent of the Purchaser, impair or modify (a) the Purchaser's rights and obligations under the Agreement; or (b) the Sellers' obligation to give effect to the Break-Up Fee and the Expense Reimbursement payable to the Purchaser under the Agreement by crediting those amounts to the Purchaser's Qualified Bid and any Subsequent Bid by the Purchaser.

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ORDER**
**(Nokia Siemens Networks B.V. Bidding
Procedures Order)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1717836892

TAB # 6

Court File No.:  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | TUESDAY, THE 28th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JULY, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**APPROVAL AND VESTING ORDER**
(CDMA & LTE Business Sale Transaction)

**THIS MOTION**, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") for an order approving the sale transaction (the "Transaction") contemplated by an asset sale agreement dated as of July 24, 2009 (the "Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and Telefonaktiebolaget L M Ericsson (publ), as purchaser (the "Purchaser"), in respect of the sale of certain assets relating to Nortel's CDMA business and LTE business and as appended to the Seventeenth Report of Ernst & Young Inc, in it capacity as court-appointed monitor (the "Monitor") dated July 27, 2009 (the "Seventeenth Report"), and vesting in the Purchaser the Applicants' right, title and interest in and to the Assets (as defined in the Sale Agreement), was heard this day at 393 University Avenue, Toronto, Ontario.

- 2 -

ON READING the Affidavit of George Riedel, sworn July 25, 2009 (the "Riedel Affidavit"), the Seventeenth Report and on hearing the submissions of counsel for the Applicants and for the Monitor and those other parties present, and from no one appearing for any other person on the service list, although properly served as appears from the affidavit of service of Jennifer Stam sworn ■, 2009 and filed:

1.      **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Seventeenth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Sale Agreement.

3.      **THIS COURT ORDERS AND DECLARES** that the Transaction is hereby approved and that the execution of the Sale Agreement by NNC and NNL is hereby authorized and approved, and the Applicants and the Monitor are hereby authorized and directed to take such additional steps and execute such additional documents, including without limitation the Ancillary Agreements, as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Applicants' right, title and interest in and to the Assets to the Purchaser.

4.      **THIS COURT ORDERS** that in the event that the Transaction contemplated by the Sale Agreement cannot be consummated, the Alternate Bid (as defined in the Riedel Affidavit) be and is here by approved and the execution of the asset sale agreement pursuant to the Alternate Bid by the Applicants is approved and the Applicants and the Monitor shall be authorized and directed to take such additional steps and execute such additional documents, including without limitation the Ancillary Agreements, as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Applicants' right, title and interest in and to the Assets to the Alternative Bidder.

5.      **THIS COURT ORDERS AND DECLARES** that the Applicants are authorized and directed to perform their obligations under the Sale Agreement and each of the Ancillary Agreements.

- 3 -

6.      **THIS COURT ORDERS AND DECLARES** that the Intellectual Property License Agreement substantially in the form attached as Confidential Appendix D to the Seventeenth Report and the Trademark License Agreement substantially in the form attached as Appendix D to the Seventeenth Report (the "IP Licenses") are hereby authorized and approved and NNL is directed to comply with its obligations thereunder.

7.      **THIS COURT ORDERS AND DECLARES** that the Ancillary Agreements, including the IP Licenses, shall be binding on the Applicants that are party thereto, and shall not be repudiated, disclaimed or otherwise compromised in these proceedings, and that intellectual property subject to the IP Licenses shall not be sold, transferred, conveyed or assigned by any of the Applicants unless the buyer or assignee of such intellectual property assumes all of the obligations of NNL under the IP Licenses and executes an assumption agreement in favour of the Purchaser in a form satisfactory to the Purchaser.

8.      **THIS COURT ORDERS AND DECLARES** that upon the delivery of a Monitor's certificate to the Purchaser substantially in the form attached as Schedule "A" hereto (the "Monitor's Certificate"), all of the Applicants' right, title and interest in and to the Assets shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "Claims"), including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Order of the Honourable Mr. Justice Morawetz dated January 14, 2009 (as amended and restated); and (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system, excluding only Permitted Encumbrances and those Claims expressly assumed in writing by the Purchaser under the Sale Agreement.  For greater certainty, this Court orders that all of the Claims affecting or relating to the Assets are hereby expunged and discharged as against the Assets.

9.      **THIS COURT ORDERS** that for the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Applicants' right, title and interest in and to the

- 4 -

Assets shall stand in the place and stead of the Assets, and that from and after the delivery of the Monitor's Certificate all Claims shall attach to the net proceeds from the sale of the Applicants' right, tile and interest in and to the Assets with the same priority as they had with respect to the Assets immediately prior to the sale, as if the Applicants' right, title and interest in and to the Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

10.    **THIS COURT ORDERS AND DIRECTS** the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

11.    **THIS COURT ORDERS** that, provided that the Purchaser is not in default (beyond any period given under the Occupancy Agreements (as defined below) to cure such default) in the payment and performance of its material obligations under each of the license agreement and the sub-lease (collectively, the "Occupancy Agreements") to be entered into between NNL and the Purchaser in respect of the Carling Property, the Charges (other than the Carling Facility Charges, which shall be subject to the non-disturbance agreement between the Purchaser and NNI) will, in no event, adversely affect the rights of possession, use and occupation to be granted to the Purchaser pursuant to the Occupancy Agreements and that no steps shall be taken under, pursuant to or in connection with the Charges (other than the Carling Facility Charges) that adversely affect, diminish, interfere with or disturb such rights of possession, use and occupation. For the purposes of this paragraph 11, the terms Carling Property, Charges and Carling Facility Charges have the meanings given to them in the Initial Order granted on January 14, 2009, as subsequently amended and restated.

12.    **THIS COURT ORDERS** that, to the extent permitted by law, neither the Purchaser nor any relevant Designated Purchaser shall be a successor to any of the Applicants and neither the Purchaser nor any Designated Purchaser shall assume any liability of the Applicants, other than as expressly provided for in the Sale Agreement.

13.    **THIS COURT ORDERS** that in connection with the Stalking Horse Agreement and the Bidding Procedures (as both terms are defined in the Riedel Affidavit):

- 5 -

(a)     Without limiting the relief granted in the Nokia Siemens Networks BV bidding procedures order of this Court granted on June 29, 2009, NNL is hereby authorized to pay 50% of the Bid Protections (as defined in the Bidding Procedures), it being acknowledged that Nortel Networks Inc. ("NNI") has agreed to pay the other 50% of the Bid Protections, if, as and when such Bid Protections become due and payable to Nokia Siemens Networks B.V. ("NSN") pursuant to and in accordance with the terms of the NSN Agreement and the Bidding Procedures Order;

(b)     in the event the Closing occurs, amounts paid to the Sellers in accordance with Section 2.3.2(b)(i) of the Sale Agreement shall be applied first to reimburse NNI and NNL for any amounts paid to NSN pursuant to (i) above and the remainder of such payment to Sellers shall be subject to the allocation protocol to be adopted by the Nortel estates, or further order of this Court and the U.S. Court, in the event such protocol has not been entered by Closing; and

(c)     in the event the Closing does not occur and the Sale Agreement is terminated as a result of the breach of the Sale Agreement of one or more of the Sellers, the payment of the Bid Protections as set out herein shall be without prejudice to any and all rights that may be asserted by such parties with respect to the allocation of the liability for payment of the Bid Protections.

14.     **THIS COURT ORDERS** that, notwithstanding:

(a)     the pendency of these proceedings;

(b)     any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) (the "BIA") in respect of the Applicants and any bankruptcy order issued pursuant to any such applications; and

(c)     any assignment in bankruptcy made in respect of the Applicants;

each of (i) the vesting of the Applicants' right, title and interest in and to the Assets in the Purchaser pursuant to this Order, and (ii) IP Licenses shall be binding on any trustee-in-

- 6 -

bankruptcy that may be appointed in respect of any of the Applicants and shall not be void or voidable by creditors of the Applicants, nor shall they constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance or other reviewable transaction under the BIA or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

15.    **THIS COURT ORDERS AND DECLARES** that the Transaction is exempt from the application of the *Bulk Sales Act* (Ontario).

16.    **THIS COURT ORDERS** that the confidential appendices to the Seventeenth Report be and are hereby sealed pending further Order of this Court.

17.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representatives status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

18.    **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

**Schedule "A"**
**Form of Monitor's Certificate**

Court File No.:  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**MONITOR'S CERTIFICATE**
(CDMA & LTE Business Sale Transaction)

**RECITALS**

**A.**     Pursuant to an Order of the Honourable Mr. Justice Morawetz of the Ontario Superior
Court of Justice (the "Court") dated January 14, 2009 (as amended and restated), Nortel
Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and certain of their
Canadian affiliates (collectively, the "Applicants") commenced proceedings pursuant to the
*Companies' Creditors Arrangement Act* (Canada) and Ernst & Young Inc., was appointed as
monitor (the "Monitor") in those proceedings.

**B.**     Pursuant to an Order of the Court dated July 28, 2009, the Court approved an asset sale
agreement dated as of July 28, 2009 (the "Sale Agreement") among NNC, NNL and Nortel
Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and
Telefonaktiebolaget L M Ericsson (publ), as purchaser (the "Purchaser"), in respect of the sale of
certain assets relating to Nortel's CDMA business and LTE business and provided for the vesting

- 8 -

in the Purchaser of the Applicants' right, title and interest in and to the Assets, which vesting is to be effective with respect to the Assets upon the delivery by the Monitor to the Purchaser of a certificate confirming (i) the payment by the Purchaser of the Purchase Price for the Assets; (ii) that the conditions to closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Applicants and the Purchaser; and (iii) the Applicants have advised the Monitor that the Transaction has been completed to the satisfaction of the Applicants.

C.      Unless otherwise indicated herein, terms with initial capital have the meanings set out in the Sale Agreement.

**THE MONITOR CERTIFIES** the following:

1.      NNC and NNL have advised the Monitor that the Purchaser has paid and the Applicants **[NTD: unless paid to an escrow agent]** have received the Purchase Price for the Assets payable on the Closing Date pursuant to the Sale Agreement;

2.      NNC and NNL have advised the Monitor that the conditions to Closing as set out in Article ■ of the Sale Agreement have been satisfied or waived by the Applicants and the Purchaser; and

3.      NNC and NNL have advised the Monitor that the Transaction has been completed to the satisfaction of the Applicants.

**THIS CERTIFICATE** was delivered by the Monitor at _____ [time] on _____ _____ [date].

**DATED** this _____ day of _____, 2009.

                                        **ERNST & YOUNG Inc., in its capacity as
                                        Monitor in the Applicants' CCAA proceedings
                                        and not in its personal capacity**

                                        Per:

                                              _____
                                              Name:
                                              Title:

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

APPROVAL AND VESTING ORDER
(CDMA & LTR Business Sale Transaction)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

TAB # 7

Court File No. ~~————~~[1]; **09-CL-7950**[2]

*ONTARIO*[3]
[4]**SUPERIOR COURT OF JUSTICE**
[5]**COMMERCIAL LIST**

| THE HONOURABLE ———— | ) | ~~————DAY~~[11] **TUESDAY**[12], THE——[13] |
|---|---|---|
| [6]**MR. _____** ) | ) | **28**th[14] |
| _____ )[7] | )[10] | DAY |
| JUSTICE | ) | |
| _____[8]**MORAWETZ** | | [15]OF ——————[16]**JULY**[17], ~~2007~~ |
| _____ )[9] | | [18]**2009**[19] |

~~B E T W E E N:~~ [20]

[21]~~PLAINTIFF~~

~~Plaintiff~~[22]

~~– and –~~[23]

[24]~~DEFENDANT~~

~~Defendant~~[25]

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**[26]

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**[27]

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**[28]

[29]**APPROVAL AND VESTING ORDER
(CDMA & LTE Business Sale Transaction)**[30]

- 2 -

THIS MOTION[31], made by ~~[RECEIVER'S NAME] in its capacity as the Court-appointed interim receiver and receiver (the "Receiver") of the undertaking, property and assets of [DEBTOR] (the "Debtor"[32]~~**Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants")**[33]) for an order approving the sale transaction (the ~~"[34]"[35]~~**Transaction**~~"[36]"[37]~~) contemplated by an **asset sale**[38]agreement ~~of purchase and sale (the "Sale Agreement") between the Receiver and [NAME OF PURCHASER] (the "Purchaser") made as of [DATE] and appended to the Report of the Receiver dated [DATE] (the "Report"[39]~~**dated as of July 24, 2009 (the "Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and Telefonaktiebolaget L M Ericsson (publ), as purchaser (the "Purchaser"), in respect of the sale of certain assets relating to Nortel's CDMA business and LTE business and as appended to the Seventeenth Report of Ernst & Young Inc. in it capacity as court-appointed monitor (the "Monitor") dated July 27, 2009 (the "Seventeenth Report")**[40]), and vesting in the Purchaser the ~~Debtor's~~[41]**Applicants'**[42] right, title and interest in and to the ~~assets described~~[43]**Assets (as defined**[44] in the Sale Agreement ~~(the "Purchased Assets"~~[45]), was heard this day at ~~330~~[46]**393**[47] University Avenue, Toronto, Ontario.

ON READING [48]the **Affidavit of George Riedel, sworn July 25, 2009 (the "Riedel Affidavit"), the Seventeenth** [49]Report and on hearing the submissions of counsel for the ~~Receiver, [NAMES OF OTHER PARTIES APPEARING],~~[50]**Applicants and for the Monitor and those other parties present, and from**[51] no one appearing for any other person on the service list, although properly served as appears from the affidavit of ~~[NAME]~~[52]**service of Jennifer Stam**[53] sworn ~~[DATE]~~[54]■[55]**, 2009 and**[56] filed[†][57]:

1.    **THIS COURT ORDERS**[59] ~~AND DECLARES that the Transaction is hereby approved~~[60]~~, and that the Sale Agreement is commercially reasonable and in the best interests of~~

---

[†] ~~This model order assumes that the time for service does not need to be abridged. The motion seeking a vesting order should be served on all persons having an economic interest in the Purchased Assets, unless circumstances warrant a different approach.~~[58]

- 3 -

the Debtor and its stakeholders. The[61] execution of the Sale Agreement by [62]the Receiver[363] is hereby authorized and approved, and the [65]Receiver is[66] hereby authorized and directed to take such additional steps and execute such additional documents[67] as may be necessary or desirable for the completion of the Transaction and for the conveyance of the [68]Purchased Assets to the Purchaser.[69]**that the time for the service of the Notice of Motion, the Seventeenth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.**[70]

2.      [71]**THIS COURT ORDERS that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Sale Agreement.**[72]

3.      [73]**THIS COURT ORDERS** [74]AND DECLARES that the Transaction is hereby approved[75] **and that the**[76] execution of the Sale Agreement by [77]**NNC and NNL**[78] is hereby authorized and approved, and the [79]**Applicants and the Monitor are**[80] hereby authorized and directed to take such additional steps and execute such additional documents[81]**, including without limitation the Ancillary Agreements,**[82] as may be necessary or desirable for the completion of the Transaction and for the conveyance of the [83]**Applicants' right, title and interest in and to the Assets to the Purchaser.**[84]

4.      [85]**THIS COURT ORDERS that in the event that the Transaction contemplated by the Sale Agreement cannot be consummated, the Alternate Bid (as defined in the Riedel Affidavit) be and is here by approved and the execution of the asset sale agreement pursuant to the Alternate Bid by the Applicants is approved and the Applicants and the Monitor shall be authorized and directed to take such additional steps and execute such additional documents, including without limitation the Ancillary Agreements, as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Applicants' right, title and interest in and to the Assets to the Alternative Bidder.**[86]

---

[3] In some cases, the Debtor will be the vendor under the Sale Agreement, or otherwise actively involved in the Transaction. In those cases, care should be taken to ensure that this Order authorizes either or both of the Debtor and the Receiver to execute and deliver documents, and take other steps.[64]

- 4 -

**5.**      [87]**THIS COURT ORDERS AND DECLARES that the Applicants are authorized and directed to perform their obligations under the Sale Agreement and each of the Ancillary Agreements.**[88]

**6.**      [89]**THIS COURT ORDERS AND DECLARES that the Intellectual Property License Agreement substantially in the form attached as Confidential Appendix D to the Seventeenth Report and the Trademark License Agreement substantially in the form attached as Appendix D to the Seventeenth Report (the "IP Licenses") are hereby authorized and approved and NNL is directed to comply with its obligations thereunder.**[90]

**7.**      [91]**THIS COURT ORDERS AND DECLARES that the Ancillary Agreements, including the IP Licenses, shall be binding on the Applicants that are party thereto, and shall not be repudiated, disclaimed or otherwise compromised in these proceedings, and that intellectual property subject to the IP Licenses shall not be sold, transferred, conveyed or assigned by any of the Applicants unless the buyer or assignee of such intellectual property assumes all of the obligations of NNL under the IP Licenses and executes an assumption agreement in favour of the Purchaser in a form satisfactory to the Purchaser.**[92]

**8.**      ~~2.~~[93]THIS COURT ORDERS AND DECLARES [94]that upon the delivery of a ~~Receiver~~[95]**Monitor**[96]'s certificate to the Purchaser substantially in the form attached as Schedule =~~"~~[97]A~~"~~=[98]   hereto   (the   =~~"Receiver~~[99]**"Monitor'**[100]s   Certificate~~"~~[101]~~"~~=[102]),   all   of   the ~~Debtor's~~[103]**Applicants'**[104] right, title and interest in and to the ~~Purchased Assets described in the Sale Agreement [and listed on Schedule B hereto]~~[105]**Assets**[107] shall vest absolutely in the Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the =~~"~~[108]"[109]Claims~~"~~[4110~~"~~[112])=[113] including, without limiting

---

[3]  ~~To allow this Order to be free-standing (and not require reference to the Court record and/or the Sale Agreement), it may be preferable that the Purchased Assets be specifically described in a Schedule.~~[106]

[4]  ~~The "Claims" being vested out may, in some cases, include ownership claims, where ownership is disputed and the dispute is brought to the attention of the Court. Such ownership claims would, in that case, still continue as against~~

- 5 -

the generality of the foregoing:  (i) any encumbrances or charges created by the Order of the Honourable **Mr.** [114]Justice [NAME][115]**Morawetz**[116] dated [DATE];[117]**January 14, 2009 (as amended and restated); and**[118] (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system; and (iii) those Claims listed on Schedule C hereto (all of which are collectively referred to as the "Encumbrances", which term shall not include the permitted encumbrances, easements and restrictive covenants listed on Schedule D) and, for[119]**, excluding only Permitted Encumbrances and those Claims expressly assumed in writing by the Purchaser under the Sale Agreement. For**[120] greater certainty, this Court orders that all of the Encumbrances[121]**Claims**[122] affecting or relating to the Purchased [123]Assets are hereby expunged and discharged as against the Purchased [124]Assets.

3.    THIS COURT ORDERS that upon the registration in the Land Registry Office for the [Registry Division of {LOCATION} of a Transfer/Deed of Land in the form prescribed by the *Land Registration Reform Act* duly executed by the Receiver][Land Titles Division of {LOCATION} of an Application for Vesting Order in the form prescribed by the *Land Titles Act* and/or the *Land Registration Reform Act*][5][125], the Land Registrar is hereby directed to enter the Purchaser as the owner of the subject real property identified in Schedule B hereto (the "Real Property") in fee simple, and is hereby directed to delete and expunge from title to the Real Property all of the Claims listed in Schedule C hereto.[127]

**9.**    4. [128]**THIS COURT ORDERS** [129]that for the purposes of determining the nature and priority of Claims, the net proceeds[6][130] from the sale of the Purchased [132]**Applicants' right, title and interest in and to the**[133] Assets shall stand in the place and stead of the Purchased [134]Assets, and that from and after the delivery of the Receiver'[135]**Monitor'**[136]s Certificate all Claims and

---

the net proceeds from the sale of the claimed asset.  Similarly, other rights, titles or interests could also be vested out, if the Court is advised what rights are being affected, and the appropriate persons are served.  It is the Subcommittee's view that a non-specific vesting out of "rights, titles and interests" is vague and therefore undesirable.[111]

[5] Elect the language appropriate to the land registry system (Registry vs. Land Titles).[126]

[6] The Report should identify the disposition costs and any other costs which should be paid from the gross sale proceeds, to arrive at "net proceeds".[131]

- 6 -

~~Encumbrances~~ [137]shall attach to the net proceeds from the sale of the ~~Purchased~~[138]**Applicants'** **right, tile and interest in and to the**[139] Assets with the same priority as they had with respect to the ~~Purchased~~[140]Assets immediately prior to the sale[7141], as if the ~~Purchased~~[143]**Applicants'** **right, title and interest in and to the**[144] Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

**10.** ~~5.~~[145]**THIS COURT ORDERS**[146] **AND DIRECTS**[147] the ~~Receiver~~[148]**Monitor**[149] to file with the Court a copy of the ~~Receiver~~[150]**Monitor'**[151]s Certificate, forthwith after delivery thereof.

~~6.      THIS COURT ORDERS that, pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Receiver is authorized and permitted to disclose and transfer to the Purchaser all human resources and payroll information in the Company's records pertaining to the Debtor's past and current employees, including personal information of those employees listed on Schedule "•" to the Sale Agreement. The Purchaser shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Debtor.~~[152]

**11.** [153]**THIS COURT ORDERS that, provided that the Purchaser is not in default (beyond any period given under the Occupancy Agreements (as defined below) to cure such default) in the payment and performance of its material obligations under each of the license agreement and the sub-lease (collectively, the "Occupancy Agreements") to be entered into between NNL and the Purchaser in respect of the Carling Property, the Charges (other than the Carling Facility Charges, which shall be subject to the non-disturbance agreement between the Purchaser and NNI) will, in no event, adversely affect the rights of possession, use and occupation to be granted to the Purchaser pursuant to the**

---

[7] ~~This provision crystallizes the date as of which the Claims will be determined. If a sale occurs early in the insolvency process, or potentially secured claimants may not have had the time or the ability to register or perfect proper claims prior to the sale, this provision may not be appropriate, and should be amended to remove this crystallization concept.~~[142]

- 7 -

Occupancy Agreements and that no steps shall be taken under, pursuant to or in connection with the Charges (other than the Carling Facility Charges) that adversely affect, diminish, interfere with or disturb such rights of possession, use and occupation. For the purposes of this paragraph 11, the terms Carling Property, Charges and Carling Facility Charges have the meanings given to them in the Initial Order granted on January 14, 2009, as subsequently amended and restated.[154]

12.    [155]THIS COURT ORDERS that, to the extent permitted by law, neither the Purchaser nor any relevant Designated Purchaser shall be a successor to any of the Applicants and neither the Purchaser nor any Designated Purchaser shall assume any liability of the Applicants, other than as expressly provided for in the Sale Agreement.[156]

13.    [157]THIS COURT ORDERS that in connection with the Stalking Horse Agreement and the Bidding Procedures (as both terms are defined in the Riedel Affidavit): [158]

(a)    [159]Without limiting the relief granted in the Nokia Siemens Networks BV bidding procedures order of this Court granted on June 29, 2009, NNL is hereby authorized to pay 50% of the Bid Protections (as defined in the Bidding Procedures), it being acknowledged that Nortel Networks Inc. ("NNI") has agreed to pay the other 50% of the Bid Protections, if, as and when such Bid Protections become due and payable to Nokia Siemens Networks B.V. ("NSN") pursuant to and in accordance with the terms of the NSN Agreement and the Bidding Procedures Order; [160]

(b)    [161]in the event the Closing occurs, amounts paid to the Sellers in accordance with Section 2.3.2(b)(i) of the Sale Agreement shall be applied first to reimburse NNI and NNL for any amounts paid to NSN pursuant to (i) above and the remainder of such payment to Sellers shall be subject to the allocation protocol to be adopted by the Nortel estates, or further order of this Court and the U.S. Court, in the event such protocol has not been entered by Closing; and [162]

- 8 -

__(c)__    [163]__in the event the Closing does not occur and the Sale Agreement is
terminated as a result of the breach of the Sale Agreement of one or more of
the Sellers, the payment of the Bid Protections as set out herein shall be
without prejudice to any and all rights that may be asserted by such parties
with respect to the allocation of the liability for payment of the Bid
Protections.__ [164]

__14.__    ~~7.~~[165]THIS COURT ORDERS[166] that, notwithstanding:

(a)    the pendency of these proceedings;

(b)    any applications for a bankruptcy order now or hereafter issued pursuant to the
*Bankruptcy and Insolvency Act* (Canada) __(the "BIA")__ [167]in respect of the
~~Debtor~~[168]__Applicants__[169] and any bankruptcy order issued pursuant to any such
applications; and

(c)    any assignment in bankruptcy made in respect of the ~~Debtor~~[170]__Applicants__[171];

__each of (i)__ [172]the vesting of the ~~Purchased~~[173]__Applicants' right, title and interest in and to
the__[174] Assets in the Purchaser pursuant to this Order__, and (ii) IP Licenses__[175] shall be binding on
any trustee _[176]in _[177]bankruptcy that may be appointed in respect of __any of__ [178]the
~~Debtor~~[179]__Applicants__[180] and shall not be void or voidable by creditors of the
~~Debtor~~[181]__Applicants__[182], nor shall ~~it~~[183]__they__[184] constitute nor be deemed to be a settlement,
fraudulent preference, assignment, fraudulent conveyance or other reviewable transaction under
the *~~Bankruptcy and Insolvency Act~~ (~~Canada~~)*[185]__BIA__[186] or any other applicable federal or
provincial legislation, nor shall ~~it~~[187]__they__[188] constitute oppressive or unfairly prejudicial conduct
pursuant to any applicable federal or provincial legislation.[8][189]

__15.__    ~~8.~~[191]THIS COURT ORDERS AND DECLARES[192] that the Transaction is exempt
from the application of the *Bulk Sales Act* (Ontario).

---

[8] ~~Please note that an appeal is pending before the Ontario Court of Appeal (Impact Tool & Mould Inc. (Re), Court
of Appeal file no. C47464), in which the appellant has challenged whether the Court can make the type of
declaratory relief set out in this paragraph.~~[190]

- 9 -

**16.**   9.[193]THIS COURT [194]**ORDERS that the confidential appendices to the Seventeenth Report be and are hereby sealed pending further Order of this Court.**[195]

**17.**   [196]**THIS COURT** [197]HEREBY REQUESTS[198] the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in[199],[200] the United States, **the United Kingdom or elsewhere,**[201] to give effect to this Order and to assist the Receiver and its[202]**Applicants, the Monitor and their respective**[203] agents in carrying out the terms of this Order.   All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Receiver[204]**Applicants and to the Monitor**[205], as an officer of this Court, as may be necessary or desirable to give effect to this Order**, to grant representatives status to the Monitor in any foreign proceeding,**[206] or to assist the Receiver and its[207]**Applicants and the Monitor and their respective**[208] agents in carrying out the terms of this Order.

**18.**   [209]**THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.**[210]

---

[211]

---

Schedule "[212]A—[213]"
[214]Form of ~~Receiver~~[215]Monitor[216]'s Certificate

Court File No.————————[217]: 09-CL-7950[218]

*ONTARIO*[219]
[220]SUPERIOR COURT OF JUSTICE
[221]COMMERCIAL LIST

~~B E T W E E N:~~ [222]

~~PLAINTIFF~~[223]

~~Plaintiff~~[224]

~~—and—~~[225]

~~DEFENDANT~~[226]

~~Defendant~~[227]

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
*R.S.C. 1985, c. C-36, AS AMENDED*[228]

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION[229]

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
*R.S.C. 1985, c. C-36, AS AMENDED*[230]

~~RECEIVER~~[231]
MONITOR[232]'S CERTIFICATE
(CDMA & LTE Business Sale Transaction)[233]

## RECITALS

**A.**    ~~A.————~~[234]Pursuant to an Order of the Honourable ~~[NAME OF JUDGE]~~[235]**Mr. Justice**
**Morawetz**[236] of the Ontario Superior Court of Justice (the "~~Court~~" ) dated ~~[DATE OF ORDER],~~
~~[NAME OF RECEIVER] was appointed as the interim receiver and receiver (the "Receiver") of~~
~~the undertaking, property and assets of [DEBTOR] (the "Debtor").~~[237]**"Court") dated January**

- 11 -

**14, 2009 (as amended and restated), Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Applicants") commenced proceedings pursuant to the _Companies' Creditors Arrangement Act_ (Canada) and Ernst & Young Inc., was appointed as monitor (the "Monitor") in those proceedings.**[238]

**B.**     B.———[239]Pursuant to an Order of the Court dated [DATE];[240]**July 28, 2009,**[241] the Court approved the agreement of purchase and sale made as of [DATE OF AGREEMENT] (the "Sale Agreement") between the Receiver [Debtor] and [NAME OF PURCHASER] (the "Purchaser")[242]**an asset sale agreement dated as of July 28, 2009 (the "Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and Telefonaktiebolaget L M Ericsson (publ), as purchaser (the "Purchaser"), in respect of the sale of certain assets relating to Nortel's CDMA business and LTE business**[243] and provided for the vesting in the Purchaser of the Debtor's[244]**Applicants'**[245] right, title and interest in and to the Purchased [246]Assets, which vesting is to be effective with respect to the Purchased [247]Assets upon the delivery by the Receiver[248]**Monitor**[249] to the Purchaser of a certificate confirming (i) the payment by the Purchaser of the Purchase Price for the Purchased [250]Assets; (ii) that the conditions to Closing[251]**closing**[252] as set out in section •[253]**Article** [254]■[255] of the Sale Agreement have been satisfied or waived by the Receiver[256]**Applicants**[257] and the Purchaser; and (iii) the **Applicants have advised the Monitor that the** [258]Transaction has been completed to the satisfaction of the Receiver[259]**Applicants**[260].

**C.**     C.———[261]Unless otherwise indicated herein, terms with initial capitals[262]**capital**[263] have the meanings set out in the Sale Agreement.

THE [264]RECEIVER[265]**MONITOR**[266] CERTIFIES[267] the following:

**1.**     1.———The[268]**NNC and NNL have advised the Monitor that the**[269] Purchaser has paid and the Receiver has[270]**Applicants [NTD: unless paid to an escrow agent] have**[271] received the Purchase Price for the Purchased [272]Assets payable on the Closing Date pursuant to the Sale Agreement;

- 12 -

**2.**    2.    The[273]**NNC and NNL have advised the Monitor that the**[274] conditions to Closing as set out in ~~section  ●~~[275]**Article**  [276]■[277] of the Sale Agreement have been satisfied or waived by the ~~Receiver~~[278]**Applicants**[279] and the Purchaser; and

**3.**    3.    The[280]**NNC and NNL have advised the Monitor that the**[281] Transaction has been completed to the satisfaction of the ~~Receiver~~[282]**Applicants**[283].

~~4.    This Certificate~~[284]**THIS CERTIFICATE**[285] was delivered by the ~~Receiver~~[286]**Monitor**[287] at _____[288] _____ [~~TIME~~[289]**time**[290]] on _____ [~~DATE~~[291] ___**[date**[292]].[293]

~~[NAME OF RECEIVER], in its capacity as Receiver of the undertaking, property and assets of [DEBTOR], and not in its personal capacity~~[294]

~~Per:~~[295]

~~Name:~~[296]
~~Title:~~[297]

~~Schedule B   Purchased Assets~~[298]

~~Schedule C   Claims to be deleted and expunged from title to Real Property~~[299]

- 13 -

~~Schedule D — Permitted Encumbrances, Easements and Restrictive Covenants
related to the Real Property~~ [300]

~~(unaffected by the Vesting Order)~~ [301]

DATED this _____ day of _____, 2009. [302]

ERNST & YOUNG Inc., in its capacity as
Monitor in the Applicants' CCAA proceedings
and not in its personal capacity [303]

Per: [304]

_____

_____ Name: [305]
_____ Title: [306]

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

MOTION RECORD
(returnable July 28, 2009)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants