# EXHIBIT B

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION
APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**SUPPLEMENTARY MOTION RECORD**
**(returnable July 28, 2009)**

July 27, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| TAB | DOCUMENT | PAGES |
|---|---|---|
| 1. | Affidavit of Michael Kotrly, sworn July 27, 2009 | 1 - 2 |
| A. | Exhibit "A" – Back-to-Back Term Sheet dated July 24, 2009 | 3 – 4 |
| B. | Exhibit "B" – Amending Agreement dated January 13, 2009 | 5 – 12 |
| C. | Exhibit "C" – Excerpts from the Amended and Restated Master Contract Manufacturing Services Agreement between Nortel Networks Limited and Flextronics Telecom Systems Ltd. Dated June 29, 2004 | 13 - 19 |

/

Court File No. 09-CL-7950

***ONTARIO***
***SUPERIOR COURT OF* JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AFFIDAVIT OF MICHAEL KOTRLY
(sworn July 27, 2009)

I, Michael Kotrly, of the City of Toronto, Province of Ontario, MAKE OATH AND
SAY:

1.     I am an associate with the law firm of Ogilvy Renault LLP, solicitors for Nortel
Networks Corporation, and as such, have knowledge of the matters herein disposed to.

2.     I attach as Exhibit "A" a copy of the Back-to-Back Term Sheet which is Exhibit F to the
Asset Sale Agreement between, among others, Nortel   Networks Corporation    and
Telefonaktiebolaget L M Ericsson (Publ) dated July 24, 2009.

3.     I attach as Exhibit "B" a copy of the Agreement to amend the Amended and Restated
Master Contract Manufacturing Services Agreement between Nortel and Flextronics Telecom
Systems Ltd., dated June 29, 2004 and the Master Contract Manufacturing Services Agreement
between Nortel and Flextronics Corporation, dated September 30, 2003 (also known as the
Amending Agreement) dated January 13, 2009.

- 2 -

4.    I attach as Exhibit "C" excerpts from the Amended and Restated Master Contract Manufacturing Services Agreement between Nortel Networks Limited and Flextronics Telecom Systems Ltd. dated June 29, 2004.

SWORN BEFORE ME at the City of
Toronto, Province of Ontario, on July
27, 2009.

_____                    _____
L. O'Brien                                                        Michael Kotrly

FINAL VERSION

**FLEXTRONICS BACK-TO-BACK AGREEMENT TERM SHEET**
(the "Term Sheet")

| | |
|---|---|
| Parties to the Flextronics Back-to-Back Agreement | • Nokia Siemens Networks B.V. (**"Purchaser"**) and Nortel Networks Limited (**"Nortel"**). |
| Background | • Flextronics Telecom Solutions Inc. (**"Flextronics"**) manufactures products for the Business and for other businesses of Nortel under an agreement dated June 29, 2004 and under certain ancillary agreements, including the Master Repair Services Agreement between Nortel Networks Limited and Flextronics Telecom Systems Ltd., dated June 29, 2004 (collectively, those agreements are the **"2004 Master Agreement"** and shall exclude for purposes of this Term Sheet the 2006 MOU referred to below).<br><br>• Nortel and Flextronics are also party to a memorandum of understanding dated October 13, 2006 (the **"2006 MOU"**) which includes provisions with respect to Component Sourcing Control, Source Code Access and Ownership and Open Book in Sections 6, 7 and 8 (the **"Applicable Portions of the 2006 MOU"**).<br><br>• The 2004 Master Agreement and the Applicable Portions of the 2006 MOU are, together, the **"Master Agreements"**. |
| Purpose of Flextronics Back-to-Back Agreement | • On Closing, Purchaser and Nortel will enter into a definitive agreement (the **"Flextronics Back-to-Back Agreement"**) under which Nortel will agree to pass through at no additional cost to Purchaser its rights, remedies and other benefits under the 2004 Master Agreement and the Applicable Portions of the 2006 MOU with respect to the manufacture and supply of products and provision of services for the Business after Closing for an interim period until a new master contract manufacturing services agreement can be negotiated between Purchaser and Flextronics. |
| Definitions | • Terms not otherwise defined herein will have the meanings given to them in the Asset Sale Agreement. |
| Terms and Conditions | • Nortel shall flow through to Purchaser at no additional cost all of Nortel's rights, remedies and other benefits under the 2004 Master Agreement and the Applicable Portions of the 2006 MOU with respect to the manufacture and purchase of products for the Business that are ordered or purchased pursuant to purchase orders delivered to Flextronics by Purchaser through Nortel after Closing and with respect to services provided by Flextronics to the Business at Purchaser's request through Nortel after Closing, including all of Nortel's rights and remedies under all representations, warranties and guarantees |

This is Exhibit........... referred to in the affidavit of... *Rajindat Kelly* sworn before me, this....2 *7th* day of... *July* ....20..09

*[signature]*
A COMMISSIONER FOR TAKING AFFIDAVITS

1

4

| | |
|---|---|
| | made by Flextronics. |
| Nortel's Rights | • Nortel shall not exercise any consent or waiver right with respect to the Business under the Master Agreements without the consent of Purchaser, and such rights shall only be exercised at the direction of Purchaser.<br>• Nortel shall not assign any of its rights under the Master Agreements or enter into any subcontracting arrangement with respect to those rights except with Purchaser's prior consent and on a basis that the assignee or subcontracting party agrees with Purchaser to comply with the Flextronics Back-to-Back Agreement. |
| Obligations and Liability under Master Agreements | • Purchaser assumes no obligations or liabilities under the Master Agreements other than those that may arise with respect to Purchaser's order or purchase of products and services under the Master Agreements after Closing through Nortel.<br>• For greater certainty, Purchaser will have no obligation to purchase products and no minimum purchase obligation (including any forecasting minimums) with respect to the purchase of any products, except obligations to purchase inventory arising pursuant to the Amending Agreement dated January 13, 2009 as a result of forecasts delivered by Purchaser through Nortel after Closing. |
| Termination: | • Unless otherwise consented by Purchaser, for a minimum of 12 months after Closing: (i) Nortel shall comply with all of its obligations under the Master Agreement, whether relating to the Business or otherwise, and (ii) Nortel shall not terminate or reject, or take any action that would result in the termination or rejection of, the Master Agreements.<br>• Purchaser is entitled to terminate the Flextronics Back-to-Back Agreement at any time. |
| Governing Law | • Per Asset Purchase Agreement |
| No Assumption of the Master Agreements | • Nortel and Purchaser agree that the Flextronics Back-to-Back Agreement is being entered into without limitation, waiver or prejudice to Nortel's rights under the applicable Master Agreement, and that this Agreement does not constitute a formal modification, amendment or assumption of such Master Agreement by the parties. For the avoidance of doubt, nothing herein shall constitute or give rise to the assumption or rejection of the applicable Master Agreement for purposes of section 365 of the United States Bankruptcy Code or otherwise limit or affect Nortel's rights under its Chapter 11 case, Case No. 09-10138, pending in the United States Bankruptcy Court for the District of Delaware. |

2

5

Nortel-Flextronics                                          Agreement dated January 13, 2009

## AMENDING AGREEMENT

This Amending Agreement ("Agreement") is entered into and made effective as of January 13, 2009 (the "Effective Date") by and between on the one hand Nortel Networks Limited ("Nortel"), and on the other hand Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation (f/k/a Solectron Corporation, "FC") (FTS and FC, collectively, "Flextronics"), on the terms and conditions set forth below.

WHEREAS, pursuant to the Amended and Restated Master Contract Manufacturing Services Agreement by and between Nortel and FTS, dated June 29, 2004 (as previously amended by the parties before the Effective Date, the "Flex MCMSA"), the agreement dated October 13, 2006 between Nortel and FTS (the "October Agreement") and the Master Contract Manufacturing Services Agreement by and between Nortel and FC, dated September 30, 2003 previously amended by Nortel and FC before the Effective Date) (the "SLR MCMSA") (the Flex MCMSA and SLR MCMSA and the October Agreement are each an "MCMSA" and are collectively referred to as the "MCMSAs"), the parties hereto are engaged in a complex contract manufacturing relationship whereby Flextronics purchases materials and components, assembles the materials into higher-level components and finished goods, stores and delivers such finished components and goods to Nortel based on Nortel's forecasts and demands;

AND WHEREAS, parties hereto are parties to (i) the Master Repair Services Agreement dated June 29, 2004, between Nortel and FTS, as amended by the parties thereto before the Effective Date, (ii) the Master Contract Logistics Services Agreement dated June 29, 2004, between FTS and Nortel, as amended by the parties thereto before the Effective Date, and (iii) the Master Contract Repair Services Agreement dated June 3, 2000, between Nortel and FT, as amended by the parties thereto before the Effective Date, (collectively the foregoing agreements are referred to as the "Related Services Agreements");

AND WHEREAS, the parties desire by this Agreement to amend the MCMSAs, to address certain outstanding obligations between them and to modify the terms on which the parties engage in their relationship;

NOW, THEREFORE, in consideration of the foregoing, the consideration recited below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties agree as follows:

**1. Purchase of Inventories.** The parties have been engaged in ongoing discussions regarding the identification of various inventories that Flextronics currently holds on behalf of Nortel (individually and collectively, the "Inventory" or "Inventories"). Nortel will purchase the Inventories identified in the attached <u>Schedule A</u>, in the amount of $120 million (U.S. dollars) (the "Inventory Purchase Amount"); Flextronics will deliver and transfer title for such Inventory to Nortel within 30 days of each payment made by Nortel as set forth below (e.g., following the first payment of $25 million, Flextronics will deliver and transfer title to Nortel Inventory priced at $25 million under the applicable pricing between the parties). Nortel will pay the Inventory Purchase Amount in advance of delivery by Flextronics in accordance with the following schedule:

> $25 million shall be paid by wire transfer initiated on January 14, 2009
> $50 million due and payable in full on January 20, 2009
> $25 million due and payable in full on April 1, 2009
> $20 million due and payable in full on July 1, 2009

The obligation of Flextronics to deliver and transfer title to up to $120 million dollars in Inventory set forth in this Agreement shall not be subject to any claims of set off or counterclaim by Flextronics howsoever arising, in respect of any claim Flextronics may have as of, or prior to, the Effective Date.

Except as set out herein, all amounts owing to Flextronics by Nortel as of the date of Bankruptcy (as hereinafter defined) shall be subject to, and dealt with, in accordance with such a Bankruptcy and the court orders issued in connection therewith.

This is Exhibit............B.............referred to in the
affidavit of......Michael  Kehly...................
sworn before me, this....27th.........................
day of..............July..................20.09......

..............................................................
A COMMISSIONER FOR TAKING AFFIDAVITS

**Agreement dated January 13, 2009**

The Inventory Purchase Amount will include a 3% cost of acquisition of Material and no additional charges or adders will be payable. Flextronics agrees that Inventory to be delivered will be in compliance with the applicable Specification. Flextronics agrees to cooperate with Nortel, including by segregating Inventory and allowing access for Nortel, to provide a reasonable amount of time to validate the Inventory being transferred, such validation to be completed no later than 30 days after the date of payment.

2. **Accounts Receivable.** For the term of any Bankruptcy (as defined below), with respect to any amounts that come due for Products, Materials and services delivered or provided after the Effective Date, notwithstanding the payment terms set forth in the MCMSAs and the Related Services Agreements, Nortel will pay on a weekly basis, to be received by Flextronics the Wednesday of each week (unless the Wednesday is not a Business Day, in which case the payment will be the next Business Day) by wire transfer, all amounts due for Products, Materials, services or other items delivered or provided by Flextronics during the immediately previous week (Monday through Sunday).

3. **Pricing and Claims Processes.** After the Effective Date, the parties agree that the mechanisms for adjustments to pricing (including ROIC) and claims processes, other than the uplift percentage for underconsumption of liability pursuant to the SLR MCMSA, will remain in effect pursuant to the processes in place immediately prior to the Effective Date. Flextronics agrees that current transformation prices under the MCMSAs and Related Services Agreements, as applicable, will remain fixed during the term of any Bankruptcy (as defined below) through the end of calendar year 2009; if any Bankruptcy continues past such time, then the parties will negotiate pricing in accordance with the MCMSAs.

4. **Excess Inventory Obligations.**

    (a)    On the first day of each calendar quarter (i.e., January 1, April 1, July 1 and October 1), beginning April 1, 2009, and with respect to the current calendar quarter as soon as the parties can identify the applicable amounts (but with effect from January 1, 2009), Flextronics will provide to Nortel a report of the following inventories: (i) all Materials and Products in Flextronics's inventory that are in excess of Nortel's then-current forecast (i.e., the forecast loaded into Flextronics's MRP system by Nortel as of the first day of the quarter) for the next 6 months' of demand by Nortel (regardless of aging); (ii) all Materials and Products for which there is zero demand in the then-current forecast; (iii) all finished Products then in Flextronics's inventory and built in accordance with the MCMSAs (individually and collectively, such items identified in (i)-(iii), other than Materials and Products acquired before the Effective Date ("Quarterly E&O").

    (b)    Nortel will provide Flextronics with a purchase order covering such Quarterly E&O (the "QEO Order") no later than the first day of the second month of each calendar quarter,; payment for the Quarterly E&O will be due in full in accordance with the terms for payment set forth above. Flextronics will deliver such Quarterly E&O to Nortel or a designated storage facility or third party.

    (c)    Nortel shall not be liable to purchase Quarterly E & O that either (or both) (i) does not comply with applicable Specifications in accordance with the MCMSAs, or (ii) Nortel can demonstrate was not acquired using prudent purchasing practices in accordance with the MCMSAs, provided in either case (i.e., (i) or (ii)) that Nortel provides evidence of the basis for objection within 30 days of identification of such Quarterly E&O to Nortel.

5. **Changes to Supplier Terms.** Nortel will compensate Flextronics (and adjust terms with Flextronics as necessary) to address any changes to the terms for purchases of any NC Supplier or NCD Supplier.

6. **Transfers of Operations.** With respect to planned and previously-discussed transfers of operations (which include transfers from Flextronics to different Flextronics facilities, transfers from Flextronics to Nortel and transfers from Flextronics to third parties) (individually and collectively, "Transfers"):

    (a)    All Transfers currently subject to agreed-upon plans of record (e.g., PP15K, Calgary, M1 PCBA, Option 11) will remain subject to such plans of record, unless otherwise mutually agreed.

Nortel-Flextronics                                        Agreement dated January 13, 2009

(b)    The parties agree to consider specifically the discussed transfer of fastflow from Calgary to Flextronics operations in Columbia, South Carolina and M1 to Monkstown, and to evaluate the desirability of such potential Transfers.

**7. Available Remedies.** For the term of any Bankruptcy, if Nortel breaches any obligations set forth in this Agreement (and such breach continues for more than 2 Business Days following notice from Flextronics), including, without limitation, late payment on any amounts due to Flextronics, then Flextronics may, in addition to any other remedies available, at its option, stop shipment on any pending orders, suspend the Production Effort, cancel outstanding orders for Materials and demand pre-payments before accepting any additional Purchase Orders, after notice to Nortel of such breach.

**8. Filing to Court, Approval of Agreement.** Due to the central and strategic nature of Flextronics's services for Nortel, without which Nortel would be substantially impaired in its operations, in the event that Nortel files for any bankruptcy, reorganization or similar protections under the laws of Canada (any such proceeding individually and in combination, a "Bankruptcy"), Nortel will within 7 days following any filing petition the court, cooperate with Flextronics and otherwise use Nortel's best efforts to have this Agreement approved (or recognized, accepted or any similar designation as may be applicable) by the court with respect to such filing by Nortel. The objective of such efforts is to establish the enforceability of this Agreement in the context of the Bankruptcy and authorize Nortel to make the payments provided for herein. Nortel agrees that it will not, during the pendency of the Bankruptcy, treat any supplier or vendor of goods or services any better than the treatment afforded to Flextronics hereunder, in respect of pre-filing claims; provided, however, that this provision shall not apply to payments to be made by Nortel to other suppliers and vendors of goods or services in an amount of up to $30 million in the aggregate during the pendency of the Bankruptcy. As part of such filing, Nortel will describe in such petition(s) and approval(s) the terms and conditions in this Agreement or Nortel will attach a copy of this Agreement to such filings. Nortel agrees that Flextronics may, in its sole discretion, submit this Agreement to any court, monitor or similar authority in support of and as evidence Nortel's agreement and obligations hereunder.

**9. General.** Terms not defined herein will have the meanings provided in the applicable MCMSAs. To the extent of any conflict, inconsistency or ambiguity between and among this Agreement and the MCMSAs and October Agreement, this Agreement will control. Except as set forth herein, this Agreement is not a waiver or release of any rights or remedies available to either at law or in equity. Except as amended herein, the MCMSAs will continue to govern the relationship of the parties and will continue in effect in accordance with their respective terms; however, this Agreement will not in any way effect or negate the notice of termination of the SLR MCMSA that Flextronics provided to Nortel on January 12, 2009. If any of the provisions or terms of this Agreement are deemed unenforceable for any reason, then the parties agree that the rest of the Agreement should be given full force and effect to the greatest extent permissible under applicable law, and that the court interpreting such provision is entitled to amend or substitute a provision that gives effect to the original intent and meaning of the unenforceable provision to the greatest extent possible. This Agreement may be executed in counterparts, and each party hereto may affirm its assent by any electronic or facsimile means. This Agreement will be governed by the laws of the Province of Ontario and the federal laws of Canada applicable therein.

[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

DOCSTOR: 16043772

Nortel-Flextronics                              Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.


Nortel Networks Limited                    Flextronics Telecom Systems Ltd.

Signed _____            Signed _____

___Joseph Flanagan____                     _____
Print Name                                 Print Name

___Sr. VP. Global OPS___                   _____
Title                                      Title


                                           Flextronics Corporation

                                           _____
                                           Signed

                                           _____
                                           Print Name

                                           _____
                                           Title

DOCSTOR: 16043772

Nortel-Flextronics                                          Agreement dated January 13, 2009

## Schedule A

### Identification of Inventory

The parties acknowledge and agree that the specific Inventory amounts, Materials and Products have been the subject of ongoing discussions, updates and negotiations and that the following breakdowns represent the agreements among the parties as to the nature of the Inventory that Nortel is purchasing. Flextronics will select the specific items to be delivered from the following identified categories, the details of which will be provided to Nortel.

Flextronics will select the specific items to be delivered based on the schedules of such items that have been delivered to and discussed with Nortel.

The parties agree that the Inventory purchase by Nortel will include (without limitation) the following:

- MEN (MD and other)
- PP15K (RoHS and non-RoHS)
- PP15K bonepile (Flextronics will continue debug efforts until June, 2009)

Flextronics will identify the applicable Inventory based on a snapshot of all Inventory currently held by Flextronics as of the Effective Date

10

Nortel-Flextronics                                    Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below,
acknowledges and agrees to the terms and conditions of this Amending Agreement,

Nortel Networks Limited                    Flextronics Telecom Systems Ltd.

Signed                                     Signed

GORDON A. DAVIES

Print Name                                 Print Name

CHIEF LEGAL OFFICER
Title                                      Title
AND CORPORATE SECRETARY

NORTEL NETWORKS LIMITED                    Flextronics Corporation


                                           Signed
ANNA VENTRESCA
ASSISTANT SECRETARY
                                           Print Name

                                           Title


DOCSTOR: 1600772

〔|

Nortel-Flextronics

Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.

Nortel Networks Limited

Signed

Joseph Flanagan
Print Name

Sr. VP. Global Operations
Title

Flextronics Telecom Systems Ltd.

_____
Signed

_____
Print Name

_____
Title

Flextronics Corporation

Signed                     _____

Michael Clarke_____
Print Name

President, FlexInfrastructure____
Title

5413597v1

12

Nortel-Flextronics                                          Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.

Nortel Networks Limited                         Flextronics Telecom Systems Ltd.

Signed                                          Signed
                                                Manny Marimuthu

Joseph Flanagan
Print Name                                      Print Name
                                                    Director

Sr. VP. Global Ops
Title                                           Title

                                                Flextronics Corporation


                                                Signed


                                                Print Name


                                                Title

5413597v1

b3

This is Exhibit..............C............referred to in the
affidavit of........Michael Kohly...........
sworn before me, this........27th.........................
day of................July......................20.07....

.........................................
A COMMISSIONER FOR TAKING AFFIDAVITS

# AMENDED AND RESTATED MASTER CONTRACT MANUFACTURING SERVICES AGREEMENT

## between

## NORTEL NETWORKS LIMITED

### and

## FLEXTRONICS TELECOM SYSTEMS LTD.

---

**Dated as of June 29, 2004**

---

14

directly or via a direct inward service access (DISA) feature or of any other property, equipment or service of Nortel Networks.

### 17.2    Flextronics Compatibility with Nortel Networks Computer Systems

Flextronics shall use and maintain business systems capable of interfacing with Nortel Networks' business systems in such a way that meets the Nortel Networks definition of managed access for electronic information exchange as set out in Exhibit 26. Information to be exchanged as of the Effective Date or Amendment Effective Date, as applicable, may include: on time shipment, on line work-in-process status, Product Quality status, shipment notification, and Product design information.

Nortel Networks will assist Flextronics with the integration of Flextronics's information technology systems with the Nortel Networks systems, as further set out in Exhibit 26.

Flextronics and Nortel Networks shall each take necessary precautions to put in place contingency plans adequate to safeguard data and enable ongoing operations in the event of a systems outage.

### 17.3    Information Technology Services

Flextronics shall be responsible for providing the information technology services as set out in Exhibit 26.

## SECTION 18
## LOANED ASSETS

### 18.1    Loaned Assets Procedure

From time to time Nortel Networks may make available to any Flextronics Company Loaned Assets in connection with this Agreement and, in such event, the provisions of Exhibit 15 shall apply.

## SECTION 19
## RESERVED ASSETS

### 19.1    Reserved Assets Procedure

From time to time Nortel Networks may convey or otherwise transfer Reserved Assets in connection with this Agreement and, in such event; the provisions of Exhibit 16 shall apply.

**EXHIBIT 15**

**LOANED ASSETS**

**1.0    Ownership**

Nortel Networks shall retain ownership of the Loaned Assets.  Each individual item of the Loaned Assets shall be plainly marked and otherwise adequately identified by Flextronics as "Property of Nortel Networks" and shall, at Flextronics 's expense, be properly installed, safely stored, properly maintained (including preventive and remedial maintenance), and kept free of all liens, claims, encumbrances and interests of third parties.  Prior to locating Loaned Assets on leased premises, Flextronics shall cause the landlord to acknowledge in writing to the supplying Nortel Company that it shall assert no interest in the Loaned Assets and shall not impede such Nortel Company from removing the Loaned Assets from the leased premises.  Flextronics shall maintain a list of all Loaned Assets and their location and shall not relocate such Loaned Assets without prior written consent of Nortel Networks.

**2.0    Risk of Loss and Insurance**

All Loaned Assets in Flextronics's custody or control shall be held at Flextronics's risk and be kept insured by Flextronics at Flextronics's expense in accordance with Section 24.2 in an amount no less than the replacement cost, with loss payable to Nortel Networks.  Flextronics shall use such Loaned Assets solely in the performance of its obligations hereunder.  Notwithstanding an event of Force Majeure, upon the expiration or termination of this Agreement, or at any time upon the written request of Nortel Networks, Flextronics shall deliver such Loaned Assets to Nortel Networks in the same condition as originally received by Flextronics, reasonable wear and tear excepted.  Nortel Networks shall have the right, at all reasonable times, upon prior notice, to enter Flextronics's premises to inspect any and all of its Loaned Assets and any Loaned Assets or goods manufactured, developed or created with the aid of its Loaned Assets. Flextronics shall pay transportation charges for delivery of the Loaned Assets from Nortel Networks to Flextronics and Nortel Networks shall pay transportation charges for delivery of the Loaned Assets from Flextronics to Nortel Networks.

**3.0    Sub-License to Flextronics of Rights Relating to the Loaned Assets**

To the extent of its legal right to do so, Nortel Networks shall sub-license to Flextronics any rights necessary for the use of the Loaned Assets in the performance of Flextronics's obligations under this Agreement, without any cost or fee.

**4.0    Duty of Care**

Flextronics shall use the Loaned Assets in a careful and proper manner and in compliance with all applicable laws, governmental regulations and operating instructions and shall not use the Loaned Assets for a purpose for which they were not designed.

**5.0    Modification, Upgrade or Improvement**

Flextronics shall not modify, upgrade, improve or otherwise alter any of the Loaned Assets without the written approval of Nortel Networks.  Nortel Networks shall pay the cost of any modification, upgrade, improvement or alteration made by Flextronics to Loaned Assets for which it has given such approval.

*/k*

**6.0    Return of Loaned Assets to Nortel Networks**

At any time upon the written request of Nortel Networks, Flextronics shall return the Loaned Assets to Nortel Networks. If upon the expiration or termination of this Agreement, or at any time upon the written request of Nortel Networks, the Loaned Assets are returned to Nortel Networks, Flextronics agrees to transfer, for no fee to Nortel Networks, all right, title and interest it may have in any and all improvements in the Loaned Assets. If this Agreement is extended beyond the Term, or replaced by another agreement between Nortel Networks and Flextronics, Nortel Networks agrees to continue to allow Flextronics to use the original Loaned Assets under the same terms and conditions, for the period of any extension or new agreement, on the same terms and conditions as originally provided.

**7.0    Duty to Supply Material Produced from Loaned Assets**

Upon Nortel Networks' request, Flextronics shall provide Material produced from Loaned Assets to Nortel Networks' suppliers.

/7

**EXHIBIT 16**

**RESERVED ASSETS**

**1.0   Ownership**

Subject to the provisions of Section 6 herein and 25.1(d) of the Master Agreement, Flextronics shall retain ownership of the Reserved Assets. Each individual item of the Reserved Assets shall be plainly marked and otherwise adequately identified by Flextronics as "Title Reserved, Nortel Networks" and shall, at Flextronics's expense, be properly installed, safely stored, properly maintained (including preventive and remedial maintenance), and kept free of all liens, claims, encumbrances and interests of third parties. Prior to locating Reserved Assets on leased premises, Flextronics shall cause the landlord to acknowledge in writing to the supplying Nortel Networks that it shall assert no interest in the Reserved Assets and shall not impede Nortel Networks from removing the Reserved Assets from the premises.

**2.0   Risk of Loss and Insurance**

All Reserved Assets in Flextronics's custody or control shall be held at Flextronics's risk and be kept insured by Flextronics at Flextronics's expense in accordance with the provisions of Section 24.2, with loss payable to Flextronics and Nortel Networks as their interests appear. Flextronics shall use such Reserved Assets solely in the performance of its obligations hereunder. Notwithstanding an event of Force Majeure, upon the termination of this Agreement pursuant to Section 25.1(d) Flextronics shall deliver to Nortel Networks in the same condition as originally received by Flextronics, reasonable wear and tear excepted, all Reserved Assets with respect to which Nortel Networks exercises its right to purchase pursuant to Section 6 herein. Nortel Networks shall have the right, at all reasonable times, upon prior notice, to enter Flextronics's premises to inspect any and all of the Reserved Assets and any Reserved Assets or goods manufactured, developed or created with the aid of the Reserved Assets.

**3.0   Sub-License to Flextronics of Rights Relating to the Reserved Assets**

To the extent of its legal right to do so, Nortel Networks shall sub-license to Flextronics any rights necessary for the use of the Reserved Assets in the performance of Flextronics's obligations under this Agreement, without any cost or fee.

**4.0   Duty of Care**

Flextronics shall use the Reserved Assets property in a careful and proper manner and in compliance with all applicable laws, governmental regulations and operating instructions and shall not use the Reserved Assets for a purpose for which they were not designed.

**5.0   Modification, Upgrade, Addition or Improvement**

Reserved Assets may be revised, upgraded, added to and otherwise improved as agreed by both Parties. Flextronics shall be responsible to pay the cost of improvements made by Flextronics to Reserved Assets; provided that if such Reserved Assets revert to Nortel Networks pursuant to Section 6 herein and 25.1(d) of the Master Agreement, Nortel Networks shall be responsible to pay the Depreciated Cost of any improvements made by Flextronics to Reserved Assets for which Nortel Networks' pre-approval had been given.

*18*

## 6.0    Right to Repurchase Reserved Assets

Upon expiration or termination of this Agreement, Nortel Networks shall have the right to repurchase from Flextronics the Reserved Assets upon notice given by Nortel Networks to Flextronics prior to such expiration or termination or within sixty (60) days thereof. The price payable for the repurchased Reserved Assets shall be the Depreciated Cost of such Reserved Assets. In the event of disagreement as to the Depreciated Cost, the Depreciated Cost, for the purposes of such repurchase, shall be the average of the amounts determined by three (3) independent firms of chartered accountants, one (1) of which shall be selected by each of Nortel Networks and Flextronics and the third of which shall be selected by the two (2) firms selected by the Parties. Either of Nortel Networks or Flextronics shall give notice to the other naming its selection and the other shall name its selection, by giving notice thereof, within seven (7) days of receipt of the original notice. The two (2) firms so selected shall name the third firm within seven (7) days of receipt of the latter notice. The three (3) firms so selected shall advise Nortel Networks and Flextronics of their respective determinations within ninety (90) days of the naming of the third firm. The costs of the determination of the price shall be borne equally by Nortel Networks and Flextronics.

## 7.0    Delivery of Reserved Assets and Payment

The Reserved Assets repurchased by Nortel Networks pursuant to Section 6 herein shall be delivered to Nortel Networks by Flextronics immediately upon the exercising by Nortel Networks of its right to repurchase, notwithstanding any disagreement between the Parties as to the Depreciated Cost. The price payable for the Reserved Assets so repurchased shall be paid by Nortel Networks immediately upon its determination. Nortel Networks shall identify the location to which the repurchased Reserved Assets shall be delivered and shall pay the applicable transportation charges.

## 8.0    Security Agreement

Flextronics shall enter into a security agreement with Nortel Networks in respect of the Reserved Assets, a form of which is attached hereto as Appendix A.

## 9.0    Obsolete Assets

Flextronics may be required to dispose of obsolete Reserved Assets at the request of Nortel Networks. Nortel Networks shall be deemed to have released such assets from the Reserved Assets list at the time.

## 10.0    Duty to Supply Material Produced from Reserved Assets

Upon Nortel Networks' request, Flextronics shall provide Material produced from Reserved Assets to Nortel Networks' suppliers.

19

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

AFFIDAVIT OF MICHAEL KOTRLY
(sworn July 27, 2009)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

SUPPLEMENTARY MOTION RECORD
(returnable July 28, 2009)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants