## EXHIBIT C

Court File No.: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

### FACTUM OF THE APPLICANTS
### Approval of Sale to Telefonaktiebolaget LM Ericsson (Publ)
(Motion returnable July 28, 2009)

July 27, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

Court File No.: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION and NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED ("CCAA")

**FACTUM OF THE APPLICANTS**
(Motion returnable July 28, 2009)

**PART I  -  OVERVIEW**

1.    The Applicants seek an order:

(a)    approving the asset sale among Telefonaktiebolaget LM Ericsson (Publ)
("Ericsson" or the "Purchaser"), as buyer, and Nortel Networks Corporation,
Nortel Networks Limited and Nortel Networks Inc. and certain of their affiliates,
as vendors,[1] (the "Ericsson Transaction") relating to Nortel's CDMA and LTE
Access assets; and

(b)    dismissing the objection of Flextronics Corporation and Flextronics Telecom
Systems Ltd. (collectively "Flextronics").

2.    The position of Nortel is three-fold:

---

[1]    The entire Nortel enterprise is collectively referred to herein as "Nortel".

- 2 -

(a)     the Back-to-Back Term Sheet between Nortel and Flextronics is not an assignment under Canadian law.  The legal relationship between Flextronics and Nortel remains unchanged, and there is no basis for Flextronics' objection;

(b)     in the alternative, even if the Back-to-Back Term Sheets were an assignment, the CCAA court has the authority to effect that assignment over any objection of Flextronics, even in the presence of continuing defaults; and

(c)     in any event, Flextronics' objection should be dismissed as its claims of prejudice are speculative and unfounded in fact.

3.     Flextronics ought not to be able to disrupt the sale process for claims relating to $16 million in pre-filing indebtedness, especially given that it has already received $140 million on account of its pre-filing indebtedness to guarantee Flextronics' continued performance of its obligations to Nortel.

## PART II  -  FACTS

4.     Nortel relies on the facts as set out in its Reply to the Objection of Flextronics filed in the U.S. Bankruptcy Court and the evidence elicited on the examination of Mr. Joseph Flanagan, Senior Vice President for Global Operations for Nortel and Mr. Simon Robins, Vice President and General Manager of Flextronics.

## PART III  -  THE ISSUES

5.     The legal issues raised by the Flextronics objection are three-fold:

(a)     Does the Back-to-Back Term Sheet constitute an assignment of Nortel's contractual rights to Ericsson under Canadian law?

(b)     If so, does Nortel have an obligation under Canadian bankruptcy law to "cure" any default prior to an assignment?

(c)     Should the Ericsson Transaction be approved over the objection of Flextronics?

6.     The submission of Nortel is that (a) the Back-to-Back Term Sheet is not an assignment under Canadian law; (b) even if it were an assignment, Nortel has no obligation to "cure" under

- 3 -

Canadian law; and (c) the Ericsson Transaction ought to approved despite the objection of Flextronics.

## PART IV  -  LAW

### No Assignment

7.      Flextronics' objection centres on the Back-to-Back Term Sheet between Nortel and Ericsson.

8.      The Back-to-Back Term Sheet resulted from Nortel's position in the sale negotiations that:

      (a)      Nortel was not in a position to assign its contractual rights with Flextronics since Nortel required those contractual rights for its remaining business;

      (b)      the purchaser would have to establish its own relationship with Flextronics;

      (c)      any costs associated with establishing that arrangement with Flextronics would have to be borne by the purchaser; and

      (d)      a conclusive agreement between the purchaser and Flextronics could not be a condition to the closing of any sale transaction.

      Flanagan Transcript pp. 99-101.

9.      Thus, the Purchaser is required to establish its own relationship with Flextronics on terms agreed to by those parties.

10.      The stated purpose of the Back-to-Back Term Sheet is to provide "an interim period" post-closing for business to continue while Ericsson and Flextronics negotiate the terms of a new agreement between them.  As further evidence of the temporary nature of the arrangements, the Back-to-Back Term Sheet contemplates Nortel's obligation ending 12 months after closing. Ericsson can terminate the arrangement at any time.

11.      It is also clear that Nortel's arrangements with Flextronics are to be unaffected by the Back-to-Back Term Sheet.  As Mr. Flanagan stated in his examination:

- 4 -

Q. …Nokia puts an order to Nortel which then puts an order to Flex, that much we are in agreement on.

A. Yes.

Q. Flex builds the product and ships to the designated port.

A. Yes.

Q. Let's assume that Flex does not get paid for that shipment. To whom does it look for payment? […]

A. They would look to Nortel, my understanding.

Flanagan Transcript. p. 178.

12.    In sum, the evidence before the Court is that:

(a)    Nortel has no intention to assign its contractual rights or obligations *vis-à-vis* Flextronics;

(b)    the Back-to-Back Term Sheet only contemplates an interim arrangement (if in fact necessary) to facilitate the conclusion of an agreement between the Purchaser and Flextronics; and

(c)    Flextronics would continue to look to Nortel for performance, and Nortel intends to honour all of its obligations to Flextronics.

13.    It is clear that there has been no assignment of Nortel's contractual rights to Ericsson for two reasons.

14.    First, to date the parties have merely concluded a term sheet. No draft of the definitive agreement has been exchanged between the parties. At best, there is an agreement to enter into a back-to-back agreement.

15.    Second, even assuming an agreement is reached whereby Nortel and Ericsson agree to "pass through" Nortel's rights under its contractual arrangement with Flextronics, it would not constitute assignment under Canadian law.

- 5 -

16.    An "assignment" involves the transfer to a third party of rights or benefits under a contract, <u>so as to enable that third party to sue for such rights or benefits.</u>

        Fridman, The Law of Contract in Canada, 5th ed. p.678.

17.    The contractual relationship between Nortel and Flextronics continues unaffected.  Any Nortel-Ericsson arrangement will simply "mirror" or operate "back-to-back" with the Nortel-Flextronics arrangement.  There will be no direct legal relationship between Flextronics and Ericsson:

    (a)    Ericsson does not assert a right to be able to sue Flextronics for rights or benefits.  In the Back-to-Back Term Sheet, Ericsson expressly agrees that the Back-to-Back Term Sheet does not "constitute [an] … assumption of such Master Agreement".  Ericsson will look to Nortel.

    (b)    Similarly, Flextronics will have to look to Nortel for payment.  No direct relationship with Ericsson is created.

18.    In essence, the legal arrangement contemplated by the parties in the Back-to-Back Term Sheet is similar to a reseller or subcontract arrangement.  Nortel is contracting with Ericsson (for an interim period) to fulfil Nortel's obligations to Flextronics.  Nortel will remain legally liable for those obligations.

> The contracting party, of course, is the only party who remains liable.  He cannot assign his liability to a sub-contractor, but his liability in those cases is to see that work is done, and if it is not properly done he is liable.  <u>It is quite a mistake to regard that as an assignment of the contract; it is not.</u>
>
>     *Davies v. Collins* [1945] 1 All ER 247 at 249 (Eng. C.A.) [emphasis added].
>
>     See also:  *Galcor Hotel Managers Ltd.* v. *1689 Holdings Ltd.* [1987] B.C.J. No. 1930 (S.C.) at p. 2 (QL).

19.    Ultimately, the legal relationship between Flextronics and Nortel does not change by virtue of the Back-to-Back Term Sheet and (if one were to speculate) any definitive back-to-back agreement.  Flextronics will still look to Nortel for performance.  Flextronics will not be liable to Ericsson.  There is no assignment.

- 6 -

**Assumption without "cure"**

20.    Unlike the U.S. Bankruptcy Code, there is no requirement under the CCAA that obliges Nortel to formally "assume" a contract or "cure" any defaults under that contract.

21.    Even if the Back-to-Back Term Sheet constituted an assignment at law, this Court has the authority to assign the Flextronics contractual arrangement without curing any existing defaults.

*Re Playdium Enterprises Corp.* [2001] O.J. No. 4252 (Sup. Ct.).

22.    In *Re Playdium Enterprises Corp.*, Justice Spence ordered the contract to be assigned in the face of a "no assignment" clause and over Famous Players' objection - despite the fact that the contract was in default and Famous Players' concerns that such defaults would not be cured.

23.    Justice Spence noted that his decision to effect an assignment of the contract was "in keeping with the purposes and spirit of the regime created by CCAA."

*Re Playdium* at para. 23.

24.    This Court has recognized that the CCAA should be given a broad and liberal interpretation to facilitate its underlying purpose, including in particular the preservation of the going concern for the benefit of all stakeholders.

**Approval of the Ericsson Transaction**

25.    Flextronics relied on the declaration of Mr. Robins in support of its objection.    Mr. Robins' affidavit states that a back-to-back arrangement "prejudices" Flextronics.

26.    On a close reading, it is clear that Mr. Robins' complaints of prejudice are entirely speculative.    He speaks of what is "possible" or "likely" to arise.    There is in fact no real prejudice cited.

27.    Moreover, all of the allegations of prejudice fall away when examined closely.

28.    In his declaration, Mr. Robins suggests that a back-to-back relationship will delay payments from Nortel to Flextronics and complains that Flextronics' only remedy would be to withhold performance, which he states is "an extreme remedy not suitable for resolving ordinary course disputes."

- 7 -

29.    Mr. Robins' concerns are, respectfully, misplaced and incorrect. Pursuant to the terms of the Amending Agreement which was approved by this Court and the U.S. Court in January 2009, Nortel and Flextronics have agreed that:

(a)    Nortel is obliged to make weekly payments each Wednesday. Any slippage in payment terms will be immediately evident to Flextronics; and

(b)    Flextronics has various remedies available to it, including: "in addition to any other remedies available to it, at its option, stop shipment on any pending orders, suspend the Production Effort, cancel outstanding orders for Materials and demand pre-payments before accepting any additional Purchaser Orders..."

Amending Agreement dated January 13, 2009, para. 7

30.    Thus, contrary to Mr. Robins' assertion, there can be no prejudice. If Nortel were to delay its payments on any given Wednesday, Flextronics is able, after two days notice, to demand pre-payment. The right to pre-payment resolves any concern about future delayed payment.

31.    Mr. Robins also suggests that "there may be confusion or uncertainty as to which of Nortel and Nokia Siemens is the proper party to address ... issues".

32.    It is unclear how this potential "uncertainty" translates into any material prejudice. In any event, there is no uncertainty: Flextronics will continue to deal with Nortel.

33.    Finally, Mr. Robins suggests that certain equipment may have been sold to the Purchaser which Flextronics requires for its continued relationship with Nortel. In that event and assuming Ericsson demands such unidentified equipment, Mr. Robins suggests that Flextronics will be "possibly left unable to satisfy other contractual obligations to Nortel".

34.    Under Nortel's contractual relationship with Flextronics, Nortel is entitled to demand the return of any equipment belonging to Nortel from Flextronics "at any time". To the extent that Flextronics could "possibly" be affected by the absence of such equipment, that is a risk to which Flextronics expressly agreed. As such, Flextronics cannot be said to be prejudiced.

Amended and Restated Master Contract Manufacturing Services Agreement dated June 29, 2004 at Section 18, Exhibit 15.

- 8 -

35.    In balancing interests under the CCAA, this Court has rejected speculative claims of prejudice.   As Justice Lane noted in somewhat similar circumstances:

> In my view, on the evidence before me, the serious risk to United Keno and those involved in its survival, and to the public interest considerations derived from the CCAA, outweigh the largely speculative and unproven allegations of prejudice to the TSE in the execution of its public interest mandate.
>
> *Toronto Stock Exchange Inc.* v. *United Keno Hill Mines* (2000), 48 O.R. (3d) 746 (Sup. Ct.) at para. 24.

## PART V  -  CONCLUSION

36.    The Applicants seek approval of the Ericsson Transaction as it provides significant benefits to Nortel's stakeholders.  Flextronics' objection ought to be dismissed.  It should not be permitted to disrupt the Ericsson Transaction or obtain an undeserved preference over other creditors.

**ALL OF WHICH IS RESPECTFULLY SUBMITTED**

July 27, 2009

Ogilvy Renault LLP
Counsel for the Applicants

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

FACTUM OF THE APPLICANTS
(Approval of Sale to Telefonaktiebolaget LM Ericsson
(Publ)
(returnable July 28, 2009)

**OGILVY RENAULT LLP**
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com
**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com
**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Fax: (416) 216-3930
Email: jstam@ogilvyrenault.com

Lawyers for the Applicants

DOCSTOR: 17366763