## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
|  | ) |  |
| Debtors. | ) | **Objection Deadline:** **August 17, 2009 at 4:00 pm (ET)** |
|  | ) | **Hearing Date: Scheduled only if necessary** |

### FIFTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JUNE 1, 2009 THROUGH JUNE 30, 2009
### (All Amounts in Canadian Dollars)

This is a(n): x monthly _____ interim _____ final application.

Name of Applicant: <u>Fraser Milner Casgrain LLP</u>

Authorized to Provide
Professional Services to: <u>Official Committee of Unsecured Creditors</u>

Date of Retention: <u>March 5, 2009 (nunc pro tunc to January 26, 2009)</u>

Period for which Compensation
And Reimbursement is sought: <u>June 1 to June 30, 2009</u>

Amount of Compensation sought as
actual, reasonable and necessary: <u>CDN $548,943.15 (Fees $522,803.00 Plus Taxes $26,140.15)</u>

Amount of Expense Reimbursement
sought as actual, reasonable and
necessary <u>CDN $11,021.24 (Expenses $10,496.42 Plus Taxes $524.82)</u>

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Fourth Monthly Fee Application was 27.30 hours and the corresponding compensation is CDN. $8,365.88 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

## SUMMARY OF LAWYERS AND PARALEGALS
## RENDERING SERVICES DURING THE PERIOD
## JUNE 1, 2009 THROUGH JUNE 30, 2009
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|------------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 61.1 | $775.00 | $47,352.50 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 55.7 | $775.00 | $43,167.50 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 26.2 | $750.00 | $19,650.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 133 | $750.00 | $99,750.00 |
| Sabine, J. | Partner | Corporate/M&A/Finance | Ontario - 1972 | 3 | $750.00 | $2,250.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 24.7 | $725.00 | $17,907.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 180.9 | $725.00 | $131,152.50 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 30.8 | $700.00 | $21,560.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 93.8 | $675.00 | $63,315.00 |
| Paul, S.E. | Partner | Competition/Anti-Trust | Ontario - 1983 | 21.2 | $675.00 | $14,310.00 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 16.5 | $600.00 | $9,900.00 |
| Taylor, K.R. | Partner | Employment/Labour | Ontario - 1995 | 1.4 | $600.00 | $840.00 |
| Luck, D. | Partner | Information Technology/ Intellectual Property | Ontario - 1992 | 5.3 | $575.00 | $3,047.50 |
| Dietrich, J. | Associate | Financial Restructuring | Ontario - 2004 | 1.3 | $480.00 | $624.00 |
| Cooke, S. | Associate | Corporate/M&A/Finance | Ontario - 2001 | 12.5 | $450.00 | $5,625.00 |
| Barsky, J. | Associate | Taxation | Ontario - 2004 | 1.3 | $430.00 | $559.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 43.5 | $400.00 | $17,400.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 23.8 | $350.00 | $8,330.00 |
| Fitzsimmons, T | Associate | Taxation | Ontario - 2006 | 1.2 | $350.00 | $420.00 |
| Horrox, N. | Associate | Employment/Labour | Ontario - 2006 | 2.3 | $350.00 | $805.00 |
| Hetu, J | Student | Students | | 56.3 | $200.00 | $11,260.00 |
| O'Rahilly, Tracey | Paralegal | Business Law | | 45.3 | $175.00 | $7,927.50 |
| | | | | | CDN. | $527,153.00 |
| | Less Non-Working Travel Time Discount (50% of $8,700.00) | | | | | ($4,350.00) |
| TOTAL | | | | 841.10 | CDN. | $522,803.00 |

## COMPENSATION BY PROJECT CATEGORY
### JUNE 1, TO JUNE 30, 2009
### (All Amounts in Canadian Dollars)

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 5.5 | $3,202.50 |
| FMC Fee Application/Monthly Billing Reports | 27.3 | $7,967.50 |
| Analysis of Other Professionals Fee Applications/Rep | 0.4 | $190.00 |
| Creditors Committee Meetings | 36.7 | $25,407.50 |
| Court Hearings | 55.6 | $37,927.50 |
| Financial Reports and Analysis | 3.9 | $2,907.50 |
| DIP, Cash Collateral Usage and Exit Financing | 5.5 | $4,025.00 |
| Analysis of Pre-Petition Transactions | 6.6 | $4,890.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 37.3 | $27,336.50 |
| Tax Issues | 36.6 | $24,311.50 |
| Labour Issues/Employee Benefits | 193.4 | $111,482.50 |
| Real Estate Issues/Leases | 21 | $15,240.00 |
| Telecommunications/Regulatory | 65.2 | $30,117.50 |
| Asset/Stock Transaction/Business Liquidations | 199.4 | $133,820.00 |
| Travel | 12 | $8,700.00 |
| Intercompany Analysis | 75.6 | $55,580.00 |
| Canadian Proceedings/Matters | 56.8 | $32,887.50 |
| U.S. Proceedings/Matters | 2.3 | $1,160.00 |
| Total | 841.1 | CDN. $527,153.00 |

### DISBURSEMENT SUMMARY
### JUNE 1 TO JUNE 30, 2009
### (All Amounts in Canadian Dollars)

| Taxable Disbursements | |
|---|---:|
| Accommodations | $ 920.78 |
| Airfare/Travel | 1,479.98 |
| Cellular Phone | 371.61 |
| Library Computer Research | 1,496.39 |
| Long Distance Telephone Calls | 644.73 |
| Meals & Beverages | 461.31 |
| Parking | 43.97 |
| Photocopy Charges | 4,256.30 |
| Taxi Charges (Courier) | 821.35 |
| | |
| Total Taxable Disbursements | $10,496.42 |
| Total GST | 524.82 |
| Total Taxable Disbursements including Taxes | **$11,021.24CDN** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X

|  |  |
|---|---|
| In re | : Chapter 11 |
|  | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
|  | : |
| Debtors | : Objection Deadline: August 17, 2009 at 4:00 pm (ET) |
|  | : Hearing Date: Scheduled only if necessary |

---------------------------------------------------------------X

**FIFTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP,**
**CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES**
**FOR SERVICES RENDERED DURING THE PERIOD FROM**
**JUNE 1, 2009 THROUGH JUNE 30, 2009**

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its fifth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $548,943.15 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$522,803.00 for fees and CDN. $26,140.15 for applicable Canadian taxes) and for

reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the

amount of CDN. $11,021.24 (CDN. $10,496.42 for expenses and CDN. $524.82 for applicable

Canadian taxes) or the period from June 1 through June 30, 2009 (the "Compensation Period").

In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and

1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein

are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary

petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United

States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On

January 15, 2009, the Court entered an order for the joint administration of these cases pursuant

to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks

Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian

affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel

Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior

Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the

Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian

Court.

     5.     On January 14, 2009, the High Court of Justice in England placed nineteen of the

Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the

"European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the

"Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the

"Administrator").

     6.     On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102

of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US

Trustee") appointed the Committee.  The Committee currently consists of five members, as

follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust

Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v)

The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed

in these chapter 11 cases.

     7.     On March 5, 2009, this Court entered an order authorizing the retention of FMC

as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the

Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP

("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the

Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the

Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel,

and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

     8.     On March 20, 2009, FMC filed its First Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period January 26, 2009 through February 28, 2009 (the "First Monthly Application"). In its First Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $470,768.03 and the reimbursement of expenses in the amount of CDN. $7,847.68. On April 13, 2009, FMC filed a Certificate of No Objection with this Court regarding the First Monthly Application. Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and 100% of the expenses requested in the First Monthly Application.

9.      On April 20, 2009, FMC filed its Second Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period March 1, 2009 through March 31, 2009 (the "Second Monthly Application"). In its Second Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $338,580.38 and the reimbursement of expenses in the amount of CDN. $5,654.11. On May 13, 2009, FMC filed a Certificate of No Objection with this Court regarding the Second Monthly Application. Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and 100% of the expenses requested in the Second Monthly Application.

10.     On May 22, 2009, FMC filed its Third Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period April 1, 2009 through April 30, 2009 (the "Third Monthly Application"). In its Third Monthly Application, FMC sought the award and allowance of fees in the amount of CDN. $511,662.38 and the reimbursement of expenses in the amount of CDN. $5,102.35. On June 15, 2009, FMC filed a Certificate of No Objection with this Court regarding the Third Monthly Application. Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and 100% of the expenses requested in the Third Monthly Application.

11.    On June 10, 2009, FMC filed its First Interim Fee Application Request for the

period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application.

12.    On June 24, 2009, FMC filed its Fourth Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period May 1, 2009 through May 31, 2009 (the "Fourth Monthly Application"). In its Fourth

Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.

$348,838.88 and the reimbursement of expenses in the amount of CDN. $5,605.17 . On July 17,

2009, FMC filed a Certificate of No Objection with this Court regarding the Fourth Monthly

Application. As of the date hereof, FMC has not received payment in respect of the Fourth

Monthly Application.

### III.    RELIEF REQUESTED

13.    By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $548,943.15 (CDN. $522,803.00 for fees and CDN. $26,140.15 for applicable Canadian

taxes) representing 795.8 hours in professional services and 45.3 hours in paraprofessional

services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the

Compensation Period in connection with the rendition of such professional services and

paraprofessional services in the amount of CDN. $11,021.24 (including applicable Canadian

taxes).

14. Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $439,154.52 including applicable Canadian taxes) and 100% of its expenses (CDN. $11,021.24 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

15. FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

16. As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

17. FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

18. In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

19.    In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

20.    FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

21.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Case Administration

(Fees: CDN. $3,202.50 plus CDN. $160.12 taxes; Hours 5.5)

22.    During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other

professionals acting on behalf of the Committee, including Jefferies and Capstone.

23.    FMC believes it was able to efficiently address all issues relating to the case

administration that have arisen during the pendency of the Canadian Proceeding and the

Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $32,887.50 plus CDN. $1,644.08 taxes; Hours 56.8)

24.    During the Compensation Period, FMC reviewed and analyzed the amended and

restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in

connection with various issues and transactions arising in the Canadian Proceeding.  FMC also

reviewed and analyzed successive motions filed by the Canadian Debtors in the Canadian

Proceeding, including motions relating to a license agreement with Hitachi Communication

Technologies, Ltd. and a motion seeking approval of a sale process for the Canadian Debtor's

interest in a joint venture with LG Electronics Inc.  In connection with such analyses, FMC

conducted diligence on the subject matter of each application and motion in order to determine

the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have

on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the

Debtors' cases.  In connection therewith FMC, along with Akin Gump, participated in numerous

conference calls with the Debtors' professionals to discuss the relief requested in the Canadian

Proceeding.  FMC, with the assistance of Akin Gump, ensured that the Committee had a

complete understanding of the Canadian Proceeding and was apprised of all material

developments in the Canadian Proceeding through regular conference calls with the Committee

and, as appropriate, detailed memoranda.

25.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "<u>Monitor</u>") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors.  FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

26.     During the Compensation Period, FMC spent time reviewing and analyzing the cross-border protocol approved as part of the "first day" relief (the "<u>Cross-Border Protocol</u>"). Since the date of retention of FMC as Canadian counsel for the Committee, FMC has spent considerable time reviewing and analyzing the Cross-Border Protocol and FMC has worked with the Committee's U.S. counsel, Akin Gump, to determine if the protocol provided, among other things, necessary due process protections to the Debtors' creditors.  As part of the negotiations with respect to the Interim Funding Agreement, the Debtors agreed that they would seek approval from the U.S. and Canadian Courts of an amended Cross-Border Protocol, acceptable to the Committee, which approval was a condition to the effectiveness of the Interim Funding Agreement.  As such, during the Compensation Period, FMC, together with Akin Gump, on behalf of the Committee, worked closely with the Debtors and the Monitor to amend the Cross-Border Protocol to provide appropriate protections of the interests of the Debtors' unsecured creditors.  On June 29, 2009, the U.S. Court and the Canadian Court entered orders approving the amended Cross-Border Protocol.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $7,967.50 plus CDN. $398.38 taxes; Hours 27.3)

27.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including paraprofessional and

attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

## **Committee Meetings**

(Fees: CDN. $25,407.50 plus CDN. $1,270.38 taxes; Hours 36.7)

28.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held no less than five telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump, other Committee professionals and with certain Committee members.

29.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members.  During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

30.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

## Court Hearings

(Fees: CDN $37,927.50 plus CDN. $1,896.38 taxes; Hours 55.6)

31.     This subject matter relates to preparation for and attendance at hearings and other

proceedings before the Canadian Court in respect of the Canadian Proceeding and the

Recognition Proceeding.  FMC lawyers appeared at hearings held before the Canadian Court

during the Compensation Period where they actively represented the Committee and asserted the

Committee's positions with respect to the matters being considered.  FMC lawyers prepared for

the Court hearings by reviewing all applicable motions and applications filed with the Canadian

Court, including any responses thereto and consulted with Akin Gump, the Committee's other

professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies.

FMC's participation at such hearings was necessary to protect the interests of the Debtors'

unsecured creditors.

## Asset Sales

(Fees: CDN $133,820.00 plus CDN. $6,691.00; Hours 199.4)

32.     FMC spent considerable time during the Compensation Period working closely

with the Debtors, Akin Gump and the Committee's other advisors to evaluate strategic options

with respect to the direction of the Debtors' businesses and reorganization efforts, including the

divestiture of certain of the Debtors' assets.  Specifically, FMC attorneys spent time during the

Compensation Period working with the Nortel Debtors and their professionals as well as

professionals for the other major creditor constituents to evaluate and analyze divestiture options

for the Carrier and Enterprise Solutions businesses.  In that regard, FMC worked closely with the

Committee's other advisors to evaluate third party bids for those assets, assess and analyze

transaction issues and potential stalking horse candidates, and advise the Committee on those

issues through detailed memoranda and numerous telephonic conferences. With respect to the sale of the Nortel Debtors' CDMA/LTE business, FMC attorneys reviewed, commented on, and negotiated underlying documentation, including the form of proposed bidding procedures and related sale motion (the "CDMA Bidding Procedures Motion") and held numerous conference calls with the Committee and its advisors to ascertain and develop the Committee's position on the proposed procedures and transaction. An auction with respect to the CDMA/LTE assets took place on July 24, 2009 and Ericsson was selected as the successful bidder. A joint hearing of the U.S. Court and the Canadian Court to consider a motion to approve the sale of those assets is scheduled for July 28, 2009.[2]

33.    FMC attorneys also spent time during the Compensation Period working with the Committee's other advisors and the advisors for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' Enterprise Solutions business and selecting an acceptable stalking horse bidder in connection therewith. After lengthy negotiations with the Nortel Debtors with respect to the stalking horse selection, on July 20, 2009, the Nortel Debtors publicly announced that Avaya Inc. would be the stalking horse bidder for that transaction. In connection with such work, FMC attorneys spent time during the Compensation Period assessing issues regarding Canadian regulatory compliance in respect of certain of the strategic options as well as matters relating to the intellectual property rights of the Canadian Debtors.

### Tax Issues

(Fees: CDN. $24,311.50 plus CDN. $1,215.58 taxes; Hours 36.6)

34.    This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors. During the Compensation Period, FMC

---

[2] For reasons of confidentiality, FMC cannot disclose these specific matters worked on by FMC attorneys related to this task code during the Compensation Period, but will provide such details to the Court and the U.S. Trustee upon request.

continued to assist Akin Gump in continuing an analysis of various tax issues affecting the

Debtors and the Canadian Debtors, including the Canadian Debtors' transfer pricing system. In

connection therewith, FMC lawyers participated in numerous conferences with the Committee's

other professionals and the Canadian Debtors' senior management team and advisors to discuss

cross-border tax issues in the context of the Insolvency Proceedings and consider strategic

options related thereto. Further, FMC attorneys spent time during the Compensation Period

analyzing the tax implications of the proposed divestitures of the CDMA/LTE and Enterprise

Solutions businesses.

## Labor and Employee Benefits Issues

(Fees: CDN. $111,482.50 plus CDN. $5,574.13 taxes; Hours 193.4)

35.     This subject matter relates to services rendered by FMC in connection with the

analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC, together with Akin Gump and the Committee's other professionals,

spent considerable time reviewing and analyzing the pension obligations of the Canadian

Debtors', as well as the relative priorities and treatment of those liabilities in the Canadian

Proceeding. In connection therewith, FMC lawyers reviewed and analyzed the Canadian

Debtors' pension plans and participated in several conferences with the Debtors' advisors to

address the Committee's concerns relating to such plans. FMC attorneys also spent considerable

time during the Compensation Period reviewing documents and analyzing employee benefit

issues in connection with divestitures contemplated by the Debtors in the Insolvency

Proceedings, as described above.

36.     During the Compensation Period, FMC attorneys also spent considerable time

assessing issues in connection with applications and appeals filed by various constituents in the

Canadian Proceeding relating to employees of the Canadian Debtors and certain severance and

post-termination benefit payments sought by such employees. In connection therewith, FMC attorneys reviewed material filed with the Canadian Court by the advisors for such employee groups and response material filed by the attorneys for the Canadian Debtors and participated on various conference calls with the attorneys for such groups to assess the merits of their respective positions and to provide advice in connection therewith to the Committee.

### Real Estate Issues/Leases

(Fees: CDN. $15,240.00 plus CDN. $762.00 taxes; Hours 21.0)

37.    This subject matter relates to time spent by FMC lawyers on matters relating to the real estate assets of the Canadian Debtors. During the Compensation Period, FMC lawyers, in consultation with Capstone and Jefferies, continued an analysis of the Canadian Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property.

### Intercompany Analysis/Transfer Funding

(Fees: CDN. $55,580.00 plus CDN. $2,779.00 taxes; Hours 75.6)

38.    FMC attorneys, in consultation with the Committee's other advisors, spent considerable time during the Compensation Period negotiating and documenting with the Debtors, the Monitor, the Administrator and the ad hoc group of Nortel bondholders (the "Ad Hoc Bondholder Group") the terms of an agreement to address the funding needs of the Canadian and EMEA estates. FMC, at the direction of the Committee and Akin Gump, also assisted Akin Gump in preparing strategic alternatives in the event that the parties were unable to reach a consensual arrangement. The negotiations ultimately proved successful, however, and the Canadian, U.S. and EMEA estates entered into the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Interim Funding Agreement"), which was supported by the Committee and the Ad Hoc Bondholder Group. The Interim Funding Agreement was approved at a joint hearing of the U.S. and Canadian Courts held on June 29, 2009.

## CCAA Order/Canadian Analysis

(Fees: CDN. $27,336.50 plus CDN. $1,366.83 taxes; Hours 37.3)

39.    In connection with the amendments to the Cross-Border Protocol discussed above, the Canadian Debtors brought a motion before the Canadian Court to further amend and restate the Initial Order to address various matters in the Canadian Proceeding, including without limitation, amendments to arrangements between the Canadian Debtors and Export Development Corporation and the creation of a new charge in favour of Nortel Networks Inc. as contemplated by the Interim Funding Agreement. FMC attorneys reviewed and negotiated the amendments to the Initial Order with the attorneys for the Canadian Debtors, and FMC attorneys reported to the Committee and Akin Gump in connection with such amendments.

## V.    ALLOWANCE OF COMPENSATION

40.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

41.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

42.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

43.     The total time spent by FMC lawyers and paraprofessionals during the Compensation Period was 841.1 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

44.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $11,021.24 (CDN. $10,496.42 for expenses and CDN. $524.82 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

45.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

46.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

47.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

48.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**WHEREFORE**, FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $548,943.15 (CDN. $522,803.00 for fees and CDN. $26,140.15 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from June 1, 2009 through and including June 30, 2009;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period June 1, 2009 through and including June 30, 2009 in the amount of CDN. $11,021.24 (CDN. $10,496.42 for expenses and CDN. $524.82 for applicable Canadian taxes) ; and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $450,175.76, which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          July 27, 2009

                              **FRASER MILNER CASGRAIN LLP**

                              By: _____
                                  Michael J. Wunder (*pro hac vice*)
                                  A Member of the Firm

                              Suite 3900
                              1 First Canadian Place
                              100 King Street West
                              Toronto, Ontario  M5X 1B2
                              (416) 863-4511
                              Canadian Counsel to the Official Committee of
                              Unsecured Creditors