IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: August 4, 2009 @ 9:00 a.m. |
| | ) | Responses Due: July 28, 2009 @ 4:00 p.m. |

**LIMITED OBJECTION OF THE PENSION BENEFIT GUARANTY CORPORATION TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL , AND (G) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN, DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

The Pension Benefit Guaranty Corporation ("PBGC") hereby objects to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal , and (G) Setting a Date for the Sale Hearing, and (Ii) Authorizing and Approving (A) the Sale of Certain Assets Of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts And Leases and (C) the Assumption and Sublease of Certain Leases [D.I. 1131] (the "Motion").

**BACKGROUND**

1. PBGC is a wholly-owned United States government corporation, and an agency of the United States, that administers the defined benefit pension plan termination insurance program under Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1301-1461 (2006). PBGC guarantees the payment of certain pension benefits upon the termination of a single-employer pension plan covered by Title IV of ERISA. When an underfunded plan terminates, PBGC generally becomes trustee of the plan and, subject to certain statutory limitations, pays the plan's unfunded benefits with its insurance funds. *See* 29 U.S.C. §§ 1321-1322, 1342, 1361. ERISA provides that a pension plan's contributing sponsor and all members of the sponsor's controlled group, bear statutory responsibility for contributions and premiums owed with respect to the plan. *See* 26 U.S.C. §§ 412, 430; 29 U.S.C. §§ 1082, 1083, 1307(e)(2). In addition, in the event of a termination, the plan sponsor and all members of the controlled group may be liable, pursuant to 29 U.S.C. § 1362, for the underfunding of the plan and, pursuant to 29 U.S.C. § 1306(a)(7), for the termination premium assessed with regard to the plan.

2. Nortel Networks, Inc. ("NNI") is the contributing sponsor of the Nortel Retirement Income Plan (the "Pension Plan") within the meaning of 29 U.S.C. § 1301(a)(13). The Pension Plan is a single-employer defined benefit pension plan covered by Title IV of ERISA. *See* 29 U.S.C. § 1321.

3. PBGC estimates that the Pension Plan is underfunded by over $500 million.

4. Nortel Networks Corporation ("Nortel") is the ultimate parent of over 100 businesses, including NNI, providing telecommunication equipment and services worldwide.

5. NNI and fifteen United States based affiliates (collectively, the "Debtors") filed

for Chapter 11 bankruptcy protection in this Court.[1] The Debtors' proceedings have been administratively consolidated, but not substantively consolidated.

6. Nortel, together with several of its Canadian subsidiaries, filed for relief from their creditors with the Ontario Superior Court of Justice. Additional insolvency proceedings are pending in the English High Court of Justice, the Commercial Court of Versailles, France and in Israel.

7. Upon information and belief, Nortel and the Debtors own, directly or indirectly, an interest in numerous business entities that have not filed for bankruptcy protection in the United States or initiated insolvency proceedings in other countries (collectively, the "Non-Debtors").

8. On July 17, 2009, PBGC notified participants in the Pension Plan that it had determined that the Pension Plan should be terminated effective as of that date. On the same date, PBGC filed a complaint seeking termination of the Pension Plan in the Western District of Tennessee.

9. The Motion seeks this Court's approval of Auction, Bidding and Sale Procedures with respect to the sale of assets involved in Nortel's Enterprise business to Avaya, Inc. ("Avaya"). The assets to be sold include assets of the Debtors, Nortel and the stock of at least two domestic Non-Debtors: Nortel Government Solutions Incorporated and Diamondware, Ltd.

10. The Auction, Bidding and Sale Procedures and proposed Sale Order do not specify an amount to be paid by Avaya for the stock of the Non-Debtors or identify any assets of the Non-Debtors included in the proposed sale or the amount to be paid, if any, for such assets.

---

[1] NNI and fourteen affiliates filed on January 14, 2009. Nortel Networks (CALA), Inc. filed on July 14, 2009.

## DISCUSSION

### A. THE PROPOSED PROCEDURES AND SECTION 363 SALE MAY IMPROPERLY INCLUDE NON-DEBTOR ASSETS.

Equity interests owned directly by the Debtors may be sold in the course of the proposed sale. However, any sale of assets of the Non-Debtors exceeds the scope of Bankruptcy Code section 363, which provides only for the sale of property of the Debtors' estates. *See In re Winstar Communications, Inc.*, 284 B.R. 40 (D. Del. 2002) (order approving sale of assets of debtor corporation did not affect sale of assets of their wholly owned nondebtor subsidiary); *See e.g. In re Stein & Day, Inc.*, 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("in order for assets to come within the auspices of § 363, they must be property of the estate"); *Novacare Holdings, Inc. v. Mariner Post-Acute Network, Inc. (In re Mariner Post-Acute Network, Inc.)*, 267 B.R. 46, 59 (Bankr. D. Del. 2001) (citing *In re Signal Hill-Liberia Ave. Ltd. P'ship.*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) ("[S]ales of property under § 363(f) are limited to sales of property of the estate.")).

Moreover, any diversion of the proceeds from the sale of assets of the Non-Debtors before the claims of the Non-Debtors' creditors are satisfied may violate Bankruptcy Code section 548[2] and applicable state law relating to fraudulent transfer and the Non-Debtors' obligations to their creditors.

In light of the foregoing, it is not appropriate to include assets of the Non-Debtors in the Auction, Bidding and Sale Procedures approved by the Court for the Debtors' assets or in the ultimate Sale Order. Rather, the sale of any of the Non-Debtors' assets should be addressed in

---

[2] In the event of a subsequent bankruptcy of one of the Non-Debtors, diverting the proceeds of the sale of that entity's assets could be voidable if that entity was insolvent on the date of transfer or was left with unreasonably small capital. *See* 11 U.S.C. § 548(a)(1).

separate sales agreements. Alternatively, if assets of the Non-Debtors are included in the Auction, Bidding and Sale Procedures, those procedures should be modified to require the assets of each of the Non-Debtors included in the sale to be identified, and the proceeds attributable to those assets segregated and preserved for the creditors of the Non-Debtors, like the PBGC and the Pension Plan. This also will permit any competing bids on the assets of the Debtors and Non-Debtors to be compared and evaluated on an even basis.

**B. THE CLAIMS OF CREDITORS AGAINST NON-DEBTORS AND THEIR ASSETS CANNOT BE RELEASED BY THIS COURT.**

The proposed Sale Order finds that it is necessary for the sale of assets, including the stock of Nortel Government Solutions Incorporated and Diamondware, Ltd., to be "free and clear"of all liens and other encumbrances. Sale Order § M, p. 9. There are also numerous extremely broad exculpations and releases given to Avaya in connection with its acquisition of the assets of the Enterprise business.[3] In view of the breadth of these provisions, the PBGC is concerned that its claims and the claims of the Pension Plan under ERISA against the Non-Debtors and their assets may be improperly effected by the sale. Since those claims are not subject to the Court's jurisdiction, the Court should not enter an order with regard to the sale that releases or otherwise impairs the rights of creditors against the Non-Debtors, or otherwise limits in any way the rights of creditors in the assets of the Non-Debtors.

[3] *See* § 17, p. 21.

**CONCLUSION**

In light of the foregoing, PBGC asks that the Auction, Bidding and Sale Procedures requested by the Debtors in the Motion and relief sought in the proposed Sale Order be modified consistent with the above requests to specifically exclude the assets of the Non-Debtors and to specifically preserve the claims of the PBGC and Pension Plan against the Non-Debtors and their assets.

Dated: July 28, 2009

Respectfully submitted,

/s/ Vicente Matias Murrell

ISRAEL GOLDOWITZ
Chief Counsel
CHARLES FINKE
Deputy Chief Counsel
STEPHEN D. SCHREIBER
Assistant Chief Counsel
VICENTE MATIAS MURRELL
Attorney
(MD Bar No. 9806240098)

PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, N.W., Suite 340
Washington, D.C. 20005-4026
Telephone: (202) 326-4020, ext. 3580
Facsimile: (202) 326-4112

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTEL NETWORKS, INC., *et al.* | ) | Case No. 09-10138 (KG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Hearing Date: August 4, 2009 @ 9:00 a.m. |
| | ) | Responses Due: July 28, 2009 @ 4:00 p.m. |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that a true and correct copy of the accompanying Limited Objection of the Pension Benefit Guaranty Corporation to the Debtor's Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal , and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets Of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts And Leases and (C) the Assumption and Sublease of Certain Leases [D.I. 1131] was served electronically on all parties, this July 28, 2009, through the Court's Electronic Filing System or to those parties listed below by the means specified.

James L. Bromley
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006
Fax: (212) 225-3999

Derek C. Abbott
Morris, Nichols, Arsht & Tunnell, LLP
1201 North Market Street
Wilmington, DE 19801
Fax: (302) 658-3989

/s/ Vicente Matias Murrell
Vicente Matias Murrell