IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- X
*In re*                                              :     Chapter 11
                                                     :
Nortel Networks Inc., *et al.*,[1]                   :     Case No. 09-10138 (KG)
                                                     :
         Debtors.                                    :     Jointly Administered
                                                     :
                                                     :     **Hearing Date: August 4, 2009 at 9:00
                                                     :     AM (ET)**
------------------------------------------------------- X

**LIMITED OBJECTION OF ENTERPRISE NETWORKS HOLDINGS BV
TO DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND
APPROVING THE BIDDING PROCEDURES**

1.    Enterprise Networks Holdings BV ("ENH"), which operates the Siemens Enterprise Networks business through its subsidiaries, hereby files this Limited Objection (the **"Limited Objection"**) to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry Into The Asset And Share Sale Agreement, (B) Authorizing And Approving The Bidding Procedures(**"Proposed Bidding Procedures"**), (C) Authorizing and Approving A Break-Up Fee And Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving The Assumption And Assignment Procedures, (F) Authorizing The Filing Of Certain Documents Under Seal, And (G) Setting A Date For The Sale Hearing, And (II) Authorizing and Approving (A) the Sale Of Certain Assets Of, And Equity Interests In, Debtors' Enterprise

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Solutions Business, (B) The Assumption And Assignment of Certain Contracts And Leases And (C) The Assumption And Sublease Of Certain Leases (the "**Sale Motion**") and respectfully represents as follows:

## I.
## ENH, AS A KEENLY INTERESTED AND SERIOUS POTENTIAL BIDDER, SEEKS A FAIR AND OPEN SALE PROCESS

2. ENH is a potential bidder for the Assets being sold by Debtors pursuant to the Agreement, and has expended and is expending considerable resources, time, and substantial expense, in the expectation of making a competing bid.[2] The sale transaction described by the Agreement and related materials filed by the Debtors is a highly complex, multi-jurisdictional deal that, as described in the Sale Motion, has taken many months to negotiate and document. In order for any potential competing bidder to make a meaningful bid, it must fully understand the terms and conditions of Avaya's bid and have sufficient time to formulate and submit a better bid.

3. ENH files this Limited Objection with respect to a small number of provisions in the Proposed Bidding Procedures because ENH believes that the revisions it suggests will provide ENH and other Qualified Bidders a realistic opportunity to submit improved bids and therefore ensure a robust auction process. By this Limited Objection, ENH seeks only to ensure a fair sale process that provides it, and any other Qualified Bidder, an equal opportunity to bid on the Assets.

4. The proposed Bidding Procedures have several provisions that not only give Avaya an unfair advantage, but also reduce the likelihood of Debtors receiving the maximum

---

[2] All terms not defined herein are ascribed the same meaning given to them in the Motion and the Agreement.

value for the Assets. Accordingly, ENH requests that this Court modify the Proposed Bidding Procedures to require that:

1. Debtors promptly provide each Qualified Bidder upon being deemed a Qualified Bidder with any and all information concerning the Business or the Assets previously provided to Avaya and contemporaneously provide to each Qualified Bidder all information subsequently provided to Avaya;

2. Debtors contemporaneously with Avaya provide to each Qualified Bidder, a copy of any proposal received by Debtors with respect to any Competing Transaction as soon as is practicable, but no later than 48 hours of receipt of such proposals or the Bid Deadline, whichever is earlier;

3. Debtors immediately provide to each Qualified Bidder copies of all documents executed between the Debtors and Avaya, including but not limited to, the EMEA Asset Sale Agreement, the Transition Services Agreement, each ancillary agreement and each side letter relating to the sale of the Business or the Assets along with any schedules and exhibits, to the Agreement, the EMEA Asset Sale Agreement, and all other agreements and side letters;

4. the Alternate Bid Expiration Date be set the specific date of September 30, 2009, and

5. Debtors allow the legal and financial advisors of each Qualified Bidder to attend the Auction.

3

## II.
## THE SALE PROCESS MUST BE INTRINSICALLY FAIR AND OPEN EQUALLY TO ALL BONA FIDE BIDDERS.

5. It is well settled law that the intrinsic fairness of a sale process is within the interest of the bankruptcy court and a sale must not be approved where the sale process is intrinsically unfair. *See Kabro Associates v. Colony Hill Associates (In re Colony Hill Associates)*, 111 F.3d 269, 273 (2nd Cir. 1997).

> Courts... properly entertain suits challenging the equity of a bankruptcy sale transaction, on the assumption that sales tinged by fraud, mistake or unfairness would generally result in an accepted bid below that which might have been expected in a fair, free market situation. Thus, when an unsuccessful bidder attacks a bankruptcy sale on equitable grounds related to the intrinsic structure of the sale, he brings himself within the zone of interests which the Bankruptcy Act seeks to protect and to regulate."

*Id.* at 274 *citing In re Harwald Co.*, 497 F. 2d 443, 444-45 (7th Cir. 1974). *See also Ross v. Kirschenbaum (In re Beck Industries, Inc.)*, 605 F. 2d 624, 634 n. 13 (2nd Cir. 1979); *In re Hat*, 310 B.R. 752 (Bankr. E.D. Cal. 2004).

6. It is imperative that Debtors conduct a full and fair sale process. An open process that places all bidders on equal footing will encourage the submission of competitive bids and spirited bidding and, in turn, maximize the value received by Debtors' estates for the Assets. As such, ENH requests the Court to make the following clarifications and modifications to the proposed bidding procedures to ensure a fair and open sale process:

**A.    Each Qualified Bidder Must Have Contemporaneous and Equal Access To Diligence Information.**

7. A critical component of a full, fair and open process is the requirement that all potential bidders have access to all relevant diligence information and the same diligence information at the same time. The Proposed Bidding Procedures in its current form (a) allow

too much flexibility to Debtors to determine what information a Qualified Bidder can receive and (b) fail to ensure fairness by requiring contemporaneous delivery of information.

> The "Due Diligence" section of the Proposed Bidding Procedures provides that
>
> "The Sellers, may in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers such due diligence access to materials and information relating to the Assets as the Sellers deem appropriate after consultation with the Committee, the Bondholder Group and the Monitor."

Proposed Bidding Procedures p. 5

8. Thus, the Proposed Bidding Procedures allow Debtors to choose whether a given Potential Bidder will be allowed to continue to compete. This is unfair; once a Potential Bidder has become a Qualified Bidder, Debtors should be required to provide information to allow the Qualified Bidder to propose a Qualified Bid.

9. Moreover, the Proposed Bidding Procedures impose no requirement that information be provided at any particular time. A critical component of a full, fair and open process is the requirement that all potential bidders have simultaneous access to all relevant diligence information and the same diligence information. That Debtors and Avaya believe this is an important point is illustrated by Section 5.1(c) of the Agreement, which sets forth requirements for the contemporaneous delivery of information – requirements that should be imposed with respect to any Qualified Bidder.

10. However, there is no requirement that Qualified Bidders receive all of the information that Avaya has received and continues to receive. Instead, the Proposed Bidding Procedures provide that Avaya shall receive everything that other Qualified Bidders have received, but Qualified Bidders do not have a similar right to receive materials and information

5

that Avaya has received and later receives. Moreover, Qualified Bidders are also not entitled to receive information at the same time as Avaya. As a result, Avaya receives an information advantage, and at the very least a timing advantage. In a fair and open process no Qualified Bidder should have an advantage over any other. The Proposed Bidding Procedures provide that:

> In any event, the Purchaser shall be provided prompt access to all material due diligence materials, management presentations, on site inspections and other information provided to Qualified Bidders that were not previously made available to the Purchaser.

Proposed Bidding Procedures p.5

11. ENH simply requests that it and all other Qualified Bidders have a similar right to equal access to all information previously provided to Avaya and contemporaneous access to all information subsequently provided to Avaya and other Qualified Bidders. The lack of such a requirement gives Avaya an unfair advantage over other Qualified Bidders and decreases the likelihood of higher bids and a robust and successful auction by providing information to Avaya not provided to other Qualified Bidders and allowing Avaya access to information prior to allowing access to other Qualified Bidders. ENH therefore requests that the Bidding Procedures be revised to provide that upon becoming a Qualified Bidder, each Qualified Bidder receives immediate access to all information previously provided to Avaya, and going forward, information shall be provided contemporaneously to all Qualified Bidders (including Avaya).

**B.    To Ensure A Robust Auction, Prompt and Contemporaneous Delivery by the Debtors of Each Qualified Bid Must Be Made To Other Qualified Bidders, As Well As To Avaya.**

12.    The proposed Bidding Procedures provide that

> Copies of all Qualified Bids shall be delivered to the Committee, the Bondholder Group, the Monitor, the Administrators and the Purchaser at such time that such

bid is deemed a Qualified Bid but no later than two (2) Business Days prior to the Auction.

Proposed Bidding Procedures p.10

13.    In stark contrast, Qualified Bidders other than Avaya are not entitled to receive copies of other Qualified Bids, other than the Starting Bid, until one (1) Business Day before the Auction. ENH cannot understand why Avaya should receive copies of Qualified Bids and not other Qualified Bidders. [Proposed Bidding Procedures p.10.] Moreover, Qualified Bidders cannot realistically be expected, in the course of one single Business Day, to evaluate Qualified Bids and determine a means of offering a higher bid at the Auction. In order to ensure a fair process and a consequent robust auction, ENH requests that this Court require the Debtors to grant ENH and all other Qualified Bidders the same right provided to Avaya. In order to maximize the value likely to be achieved at the Auction, all Qualified Bidders, including Avaya, must contemporaneously receive copies of each Qualified Bids. ENH therefore requests that the Bidding Procedures be revised to provide that each Qualified Bidder shall receive copies of all Qualified Bids contemporaneously with Avaya.

**C.    The Debtors Must Immediately Provide Access To Each Document Relating to the Agreement.**

14.    It is critical to an open and fair process that each Qualified Bidder receives copies of all of the documents relating to the transaction with Avaya, including the EMEA Asset Sale Agreement and each ancillary agreement or side letter along with the schedule and exhibit to the Agreement and the EMEA Asset Sale Agreement, as well as any other side letter or other agreement relating to the transactions contemplated by the foregoing. Given the complexity of the transactions and the difficulty that will be evident in formulating and comparing bids, it is imperative for Qualified Bidders to have the earliest opportunity to review all of the documents relating to the Agreement.

15.    It is clear from the Agreement that the EMEA Asset Sale Agreement and the schedules and exhibits to both of those agreements contain key information that would be essential to Qualified Bidders formulating a better bid. For example, the terms of the trademark licenses, the nature of the Cure Costs to be paid by Nortel, the employees who will be hired by Avaya post-closing, the terms and costs of the Transition Services Agreement, and the amount of restructuring costs to be reimbursed by Nortel are all contained in documents that have not been filed with the court. Without this information, it is impossible for Qualified Bidders to determine the true value of the Avaya transaction to Nortel or the economic terms against which Qualified Bids will be compared. It is also worth noting that these are merely illustrative examples of missing information that we can easily identify. It would be impossible to create a complete list of information that is currently missing without having access to all of the transaction documents.

**D.    The Alternate Bid Expiration Date Should be Set on a Specific Date to Discourage Delay by Debtors.**

16.    The Proposed Bidding Procedures provide that a Alternate Bidder remains bound until 11 days after entry of the Sale Order. This flexible date provides little to no certainty as to when an Alternate Bidder will be released from the obligations of its offer and receive the return of its money. It also encourages delay by Debtors to keep the Alternate Bidder bound.

17.    As such, ENH proposes that the Alternate Bid Expiration Date be set at September 30, 2009, 19 days after the Auction Date, leaving Debtors ample time to conduct and conclude the Auction, obtain entry of the Sale Order and to allow the 10 day appeal period to pass.

### E. The Legal And Financial Advisors Of Each Qualified Bidder Must Be Permitted To Attend The Auction.

18. The Proposed Bidding Procedures permit Avaya"s advisors to attend the Auction but prohibit attendance at the Auction by advisors to any Qualified Bidders. In the context of such a complicated transaction, any Qualified Bidder will need access to its advisors at the Auction in order to be able to consider submitting an improved bid. Moreover, ENH again does not understand why Avaya should be given an unfair advantage at the most important point in the sale process. ENH therefore requests that the Proposed Bidding Procedures be revised to permit the advisors of all Qualified Bidders, including Avaya, to attend the Auction.

### III.
### CONCLUSION

19. WHEREFORE, based upon the foregoing, ENH respectfully requests that this Court require the Debtors to: (i) conduct a full and fair sale process, including providing Qualified Bidders with all relevant due diligence as well as the same information provided to Avaya immediately upon becoming a Qualified Bidder and contemporaneously with all information subsequently provided to Avaya and each Qualified Bidder, (ii) deliver each Qualified Bid to each Qualified Bidder contemporaneously with Avaya and in any event, no later than the earlier of 48 hours after receipt by Debtors or the Bid Deadline, (iii) immediately provide copies of all agreements between the Debtors and Avaya and documents relating to the sale of the Assets, including but not limited to, the EMEA Assets Sale Agreement and each ancillary agreement, side letter as well as schedules and exhibits to either of the foregoing, as well as any other side letter or other agreement relating to the transactions contemplated by the foregoing; (iv) allow the legal and financial advisors of each Qualified Bidder to attend the Auction, (v) the Alternate Bid Expiration Date be set at September 30, 2009 and (vi) grant ENH such other and further relief as is just and proper.

Dated:  July 28, 2009
       Wilmington, Delaware

BIFFERATO LLC

/s/ Ian Connor Bifferato

Ian Connor Bifferato (#3273)
Kevin G. Collins (#5149)
800 North King Street, Plaza Level
Wilmington, DE  19713
Telephone: (302) 255-7600
Facsimile:  (302) 254-5383

-and-

Kathryn A. Coleman
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York
Telephone: (212) 351-3800
Facsimile: (212) 351-4035

*Counsel for Enterprise Network Holdings*

100701227_1.DOC