## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                    :

*In re*                    :

Nortel Networks Inc., *et al.*, [1]    :

           Debtors.    :

                    :

------------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 931, 1012, 1106, 1129**

## ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF THE DEBTORS' CDMA AND LTE BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, (B) THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated

debtors, as debtors and debtors in possession in the above-captioned (collectively, the

"Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365,

Bankruptcy Rules 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 Orders (I)(A)

Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the

Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Agreement (as defined herein).

Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and

Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal, and

(G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and

Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the

Assumption and Sublease of Certain Leases [D.I. 931]; and the Court having entered an order

approving, among other things, the Bidding Procedures (the "Bidding Procedures Order") based

upon the evidence presented at the bidding procedures hearing held on June 29, 2009 (the

"Bidding Procedures Hearing") [D.I. 1012]; and a supplemental order having been entered

joining Nortel Networks (CALA) Inc. ("NN CALA") as a debtor party to the Motion, extending

the relief in the Bidding Procedures Order to NN CALA and establishing further procedures in

furtherance of the proposed sale [D.I. 1129]; and the Auction (as defined below) having been

held in accordance with the Bid Procedures Order; and at the conclusion of said Auction

Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser") was chosen as the Successful Bidder

in accordance with the Bid Procedures; and the Court having conducted a hearing on the Motion

on [July 28], 2009 (the "Sale Hearing"); and all parties in interest having been heard, or having

had the opportunity to be heard, regarding the asset sale agreement attached hereto as Exhibit A

(the "Sale Agreement"), by and among certain of the Debtors, certain foreign debtor affiliates

and certain non-debtor affiliates (collectively, the "Sellers") and the Purchaser and the

transactions contemplated thereby (the "Transactions"); and the Court having reviewed and

considered the Motion, and the arguments of counsel made, and the evidence adduced, at the

Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding

Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation

thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion and to grant

the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b).

B.    Venue of these cases and the Motion in this district is proper under 28

U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §

157(b)(2).

C.    The statutory predicates for the relief requested in the Motion are

Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1.

D.    Notice of the Motion and the Sale Hearing has been provided to (A) (i) all

entities reasonably known to have expressed an interest in a transaction with respect to the

Assets (as defined in the NSN Agreements referred to below) during the past nine (9) months,

(ii) all entities reasonably known to have asserted any interest in the Assets, (iii) the attorneys

general for all states in which Purchased Assets (as defined below) are located, all federal and

state taxing authorities, the SEC, the EPA, state environmental protection agencies, the IRS, and

the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled

to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned

Contracts and the Assumed and Subleased Real Estate Leases (together, the "Assumed

Agreements"), (vi) all known or potential creditors of the Debtors and (viii) the Official

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

Committee of Unsecured Creditors (the "Committee"); and (B) other parties through publication of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order.

       E.      As evidenced by affidavit of publication filed with the Court, notice of the Sale Hearing was published in The Wall Street Journal and The Globe and Mail on July 6, 2009.

       F.      Based upon the affidavits of service and publication filed with the Court: (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding Procedures Order; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities.

       G.      The Assets (as defined in the Sale Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Sale Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates.

       H.      The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Purchased Assets.

       I.      On June 19, 2009, the Debtors entered into an Asset Sale Agreement (the "NSN Agreement") with respect to the "Assets" provided for therein by and among the Sellers and Nokia Siemens Networks B.V., as the purchaser, subject to higher and better offers.

J.      The Bidding Procedures were substantively and procedurally fair to all parties. The Debtors conducted the sale process (including the Auction) in accordance with the Bidding Procedures.

K.      After the conclusion of the auction held on July 24, 2009 (the "Auction"), the Debtors determined that the highest and best Qualified Bid (as defined in the Bid Procedures Order) was that of the Purchaser and the next highest and best Qualified Bid (the "Alternate Bid") was that of Nokia Siemens Networks B.V. (the "Alternate Bidder").

L.      Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute the Sale Agreement, the Ancillary Agreements (as defined in the Sale Agreement) and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Sale Agreement and (iii) has taken all company action necessary to authorize and approve the Sale Agreement, the Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the consummation by the Debtors of the Transactions.  No consents or approvals, other than those expressly provided for in the Sale Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions.

M.      The Sale Agreement and the Transactions were negotiated and have been and are undertaken by the Debtors and the Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code.

N.      The total consideration provided by the Purchaser for the Purchased Assets is the highest and best offer received by the Debtors, and the Purchase Price (as defined in

the Sale Agreement) constitutes (a) reasonably equivalent value under the Bankruptcy Code and

Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent

Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any

other applicable laws of the United States, any state, territory or possession, or the District of

Columbia, for the Purchased Assets.

O.      The Purchaser would not have entered into the Sale Agreement and would

not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not

free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if

the Purchaser would, or in the future could, be liable for any of such liens, claims and interest.  A

sale of the Purchased Assets other than one free and clear of all Claims and Interests (each as

defined herein) would yield substantially less value for the Debtors' estates, with less certainty,

than the Sale.  Therefore, the Sale contemplated by the Sale Agreement is in the best interests of

the Debtors, their estates and creditors, and all other parties in interest.

P.      The Debtors may sell the Purchased Assets free and clear of all Interests,

because, with respect to each creditor asserting a Claim or Interest, one or more of the standards

set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Claims and

Interests who did not object or who withdrew their objections to the Sale or the Motion are

deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2).

Those holders of Claims or Interests who did object fall within one or more of the other

subsections of Bankruptcy Code section 363(f).

Q.      Neither the Debtors nor the Purchaser engaged in any conduct that would

cause or permit the Sale Agreement or the consummation of the Transactions to be avoided, or

costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

R.        The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors.  Pursuant to the Sale Agreement, the Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets (as defined in the Sale Agreement), and Purchaser is not holding itself out to the public as a continuation of the Debtors.  The conveyance of the Assets pursuant to the Transactions does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates.  Upon the Closing (as defined in the Sale Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities (as defined in the Sale Agreement).  Except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.  The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories.

S.        The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser and to assume the Assumed and Subleased Real Estate Leases and Sublease the same to the

Purchaser, in each case, in connection with the consummation of the Sale, and (i) the assumption, assignment, and sale of Assumed and Assigned Contracts to the Purchaser and (ii) the assumption of the Assumed and Subleased Real Estate Leases and the Sublease of the same to the Purchaser, in each case, is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to the Purchaser and the Assumed and Subleased Real Estate Leases being assumed by the Debtors and subleased to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts and such assumption and sublease of the Assumed and Subleased Real Estate Leases are reasonable and enhance the value of the Debtors' estates. The cure amounts required to be paid by the Debtors pursuant to section 365(b) that are mutually agreed to be paid by the Debtors and the counterparty to the applicable Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Lease or as ordered to be paid by this Court pursuant to a final order (the "Cure Amounts") are deemed the entire cure obligation due and owing under the Assumed Agreements under Bankruptcy Code section 365.

T.    Each and every provision of the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases or applicable non-bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract or, as applicable, the Assumed and Subleased Real Estate Leases have been satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

U.      Upon the payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts or, as applicable, the Assumed and Subleased Real Estate Leases.

V.      The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365.

W.      Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

X.      Entry into the Sale Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser. Additionally, (i) the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Sale Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

Y.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Claims and Interests of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted

Encumbrances (as defined in the Sale Agreement)), and (ii) all Excluded Liabilities (as defined

in the Sale Agreement), claims as defined in 11 U.S.C. § 101(5), rights or causes of action

(whether in law or in equity), obligations, demands, restrictions, interests and matters of any kind

or nature whatsoever, whether arising prior to or subsequent to the commencement of these

cases, and whether imposed by agreement, understanding, law, equity or otherwise , including

any "Claims" as defined in the Sale Agreement (collectively, the "Claims"), other than Assumed

Liabilities and the Permitted Encumbrances.

   Z.  The Sale does not constitute a *sub rosa* chapter 11 plan.

   AA.  Time is of the essence in consummating the Sale.  In order to maximize

the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within

the time constraints set forth in the Sale Agreement.  Accordingly, there is a cause to lift the stay

contemplated by the Bankruptcy Rules 6004(h) and 6006(d).

   BB.  The Sale contemplated by the Sale Agreement is in the best interests of the

Debtors and their estates, creditors, interest holders and all other parties in interest; and it is

therefore:

ORDERED, ADJUDGED AND DECREED THAT:

   1.  The relief requested in the Motion is GRANTED.

   2.  All objections with regard to the relief sought in the Motion that have not

been withdrawn, waived, settled or otherwise dealt with as expressly provided herein, are hereby

overruled on the merits.

   3.  Pursuant to Bankruptcy Code sections 105 and 363, the Sale Agreement,

the Ancillary Agreements, the Sale of the Purchased Assets, and consummation of the

Transactions are hereby approved and authorized, and the Alternate Bid submitted by the

Alternate Bidder is hereby approved and authorized as an Alternate Bid and shall remain binding as an Alternate Bid pursuant to the terms of the Bidding Procedures Order and the bid terms submitted at the Auction. In the event that the Transactions contemplated by the Sale Agreement cannot be consummated, the Alternate Bid shall be and is hereby approved, and the execution of the asset sale agreement pursuant to the Alternate Bid by the Debtors is approved and the Debtors are authorized to take such additional steps and execute such additional documents, including without limitation the ancillary agreements contemplated by the Alternate Bid, as may be necessary or desirable for the completion of the Transactions and for the conveyance of the Debtors' right, title and interest in and to the Assets to the Alternative Bidder.

4.      Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed Agreement or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, under section 365 of the Bankruptcy Code, the Debtors are authorized to assume the Assumed Agreements and to assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing.

5.      The Debtors' assumption of the Assumed Agreements is subject to Court approval and consummation of the sale of the Assets to the Purchaser, and, solely as it relates to the Assumed and Subleased Real Estate Leases, the Debtors' and Purchaser's entry into Subleases pursuant to section 5.27 of the Sale Agreement. To the extent that an objection by a Counterparty to any Assumed Agreement is not resolved prior to the Closing Date (as defined in the Sale Agreement) or Debtors and Purchasers have failed to enter into a Sublease regarding any Assumed and Subleased Real Estate Lease pursuant to section 5.27 of the Sale Agreement, the Debtors, in consultation with the Purchaser, may elect to (i) not assume such Assumed

Agreement, (ii) postpone the assumption of such Assumed Agreement until the resolution of

such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time

of the assumption, Debtors may pay to the Counterparty any undisputed portion of the proposed

Cure Amount and place any disputed portion into a segregated interest-bearing account such that,

upon any resolution by the Court of the Cure Amount dispute, or other agreement between the

Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated

account of any disputed portion and interest earned thereon to which the Court finds, or the

Debtors and Counterparty agree, it is entitled.  Any Cure Amounts outstanding on the Closing

Date shall be paid to the appropriate Counterparty as a condition subsequent to such assumption

and/or assumption and assignment of the relevant Assumed Agreement.

        6.      Upon the Closing, (a) the Debtors are hereby authorized and directed to

consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and

assignment of the Purchased Assets to the Purchaser free and clear of any and all interests

pursuant to section 363 of the Bankruptcy Code, including (without limitation) all liens,

including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of

first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-

way, restrictive covenant on real property, real property license, lease or conditional sale

arrangement (collectively, including "Liens" as defined in the Sale Agreement, the "Liens") and

debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or

unliquidated, absolute or contingent, matured or unmatured or determined or undeterminable,

known or unknown, including those arising under any Law or Action and those arising under any

Contract or otherwise, including any Tax liability (other than Assumed Liabilities and the

Permitted Encumbrances) (collectively, the "Liabilities" and together with the Liens, the

"Interests"), with such Interests to attach to the sale proceeds in the same validity, extent and priority as immediately prior to the sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest, and (b) except as otherwise expressly provided in the Sale Agreement, all such Interests (other than Assumed Liabilities and the Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

7.      The transfer of the Purchased Assets to the Purchaser pursuant to the Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Purchased Assets, free and clear of all Claims and Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any Interests (including, but not limited to, the Interests, if any, of Fairfax County, Virginia asserted in its objection to the Motion) attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction, subject to any rights, claims and defenses of the Debtors and other parties in interest.

8.      Upon the Closing, and except as otherwise expressly provided in the Sale Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates.  Without limiting the generality of the foregoing, and except as otherwise provided in the Sale Agreement, (a) the Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser, shall have no liability or obligation in respect of any employee pension plan,

employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

9.      As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

10.     Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed Agreements through the Closing shall be deemed cured through the payment of the Cure Amounts; with respect to the Assumed and Assigned Contracts to which Airvana, Inc. is the Counterparty, which Assumed and Assigned Contracts are identified on Schedule 1 attached hereto, the Cure Amounts for each such Assumed and Assigned Contracts shall be as set forth on Schedule 1,  (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed Agreements, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed Agreements that arose or accrued, or relate to or are attributable to the period before the Closing.

11.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser.

12.     Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

13.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Subleased Real Estate Leases, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assumption and Sublease of the Assumed and Subleased Real Estate Leases, the Debtors may assume the Assumed and Subleased Real Estate Leases and Sublease the Assumed and Subleased Real Estate Leases to the Purchaser.

14.     Upon the assumption of the Assumed and Subleased Real Estate Leases by the Debtors and the sublease of same to the Purchaser, the Assumed and Subleased Real Estate Leases shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

15.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m). The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

16.     Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors and

the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:

(i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in

accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed

and Assigned Contracts; (iii) assume and sublease the Assumed and Subleased Real Estate

Leases; and (iv) perform, consummate, implement and close fully the Sale Agreement together

with all additional instruments and documents that may be reasonably necessary or desirable to

implement the Sale Agreement.

17.     The Purchaser is hereby authorized in connection with the consummation

of the Sale to allocate the Purchased Assets, including the Assumed Agreements, among its

affiliates, designees, assignees, and/or successors, including any Designated Purchaser (as

defined in the Sale Agreement), in a manner as it in its sole discretion deems appropriate and to

assign, lease, sublease, license, sublicense, transfer or otherwise dispose of any of the Purchased

Assets, including the Assumed Agreements, to its affiliates, designees, assignees, and/or

successors with all of the rights and protections accorded to the Purchaser under this Order and

the Sale Agreement, and the Debtors shall cooperate with and take all actions reasonably

requested by the Purchaser to effectuate any of the foregoing; provided, however the Debtors

shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

18.     No bulk sales law or any similar law of any state or other jurisdiction shall

apply in any way to the Sale and the Transactions.  Except as provided in the Sale Agreement, no

brokers were involved in consummation of the Sale or the Transactions, and no brokers'

commissions are due to any Person in connection with the Sale or the Transactions.

19.     The consideration provided by the Purchaser for the Purchased Assets

under the Agreement shall be deemed for all purposes to constitute value and fair consideration

under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

20.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement, free and clear of all Liens, Claims and Interests (other than Assumed Liabilities).

21.     Except as otherwise provided in the Sale Agreement, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (other than Assumed Liabilities) and shall be delivered at the time of Closing to the Purchaser.

22.     Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Liens, Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and Permitted Encumbrances).

23.     The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the

Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors'

estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed

Liabilities. Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's

acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of

any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the

time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors'

business as a result of the acquisition of the Assets purchased.

24.    This Order (a) is and shall be effective as a determination that other than

Permitted Encumbrances and Assumed Liabilities, all Liens, Claims and Interests of any kind or

nature whatsoever existing as to the Purchased Assets prior to the Closing have been

unconditionally released, discharged and terminated, and that the conveyances described herein

have been effected, and (b) is and shall be binding upon and shall authorize all entities,

including, all filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies or units, governmental

departments or units, secretaries of state, federal, state and local officials and all other persons

and entities who may be required by operation of law, the duties of their office, or contract, to

accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to the Purchased Assets conveyed to the

Purchaser. All such entities described above in this paragraph are authorized and specifically

directed to strike all recorded Interests against the Purchased Assets from their records, official

and otherwise.

25.    If any person or entity which has filed statements or other documents or

agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to

the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

26.     All counterparties to the Assumed and Assigned Contracts and, as applicable, the Assumed and Subleased Real Estate Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

27.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Agreement.

28.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

29.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Sale

Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

30.     This Order applies only to assets owned by the Debtors.  Consequently, notwithstanding any other provision of this Order or the Sale Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities.

31.     In full and final resolution and settlement of the informal comments received from the Pension Benefit Guaranty Corporation (the "PBGC"), the Debtors are authorized to enter into the Stipulation attached as Exhibit B hereto with the PBGC and perform all obligations thereunder.

32.     Nothing in this Order shall be deemed to waive, release or extinguish any valid claim with respect to setoff that Verizon (as defined in the Sale Agreement) or the wholly owned subsidiaries of Verizon Communications Inc. may have against the Debtors.

33.     Conditioned upon and subject to the consent by iStar CTL North Glenville – Richardson LLC ("iStar") to the sublease of the Assumed and Subleased Real Estate Lease under which iStar is the landlord, Purchaser shall pay iStar $5000 in full satisfaction of iStar's claim (pursuant to section 365 of the Bankruptcy Code or otherwise) for payment of attorneys' fees and expenses.

34.     Nothing in this Order provides for the assumption and assignment of any contract or license with OSS Noklava, Inc., successor to Open Systems Solutions, Inc. ("OSS") pursuant to section 365 of the Bankruptcy Code.  To the extent that the Purchaser elects to have

the Debtors assign to the Purchaser any contract with OSS relating to the Assets, in whole or in

part, the Debtors and Purchaser will do so in accordance with the terms of such contract or

license, which terms include, *inter alia*, the written consent of OSS.

        35.    Nothing in this Order authorizes or provides for the assumption and

assignment of any contract or license to which Motorola, Inc. ("Motorola") is a party, whether

pursuant to section 365 of the Bankruptcy Code or otherwise.  Motorola shall provide a list of its

affiliates (the "Motorola Affiliates") that it believes have contracts with the Debtors on or before

August 3, 2009.  Within three business days of receiving such list, the Debtors shall notify

Motorola, with a copy to Motorola's counsel of record in this proceeding, whether there are any

contracts with any of the Motorola Affiliates that are proposed to be Assumed and Assigned

Contracts.  Motorola and/or the Motorola Affiliates shall have five business days after Motorola

and its counsel have received such notification to file and serve a supplemental objection to the

assumption and assignment of any such proposed Assumed and Assigned Contracts, which

supplemental objection shall be heard at the next scheduled omnibus hearing.  Notwithstanding

the entry of this Order, any and all objections of Motorola and the Motorola Affiliates to the

proposed assignment of the Motorola Affiliates' agreements are expressly preserved.  If no such

supplemental objection is filed and served in a timely manner, all Assumed and Assigned

Contracts to which any Motorola Affiliate is a counterparty shall be deemed to be assumed and

assigned pursuant to the terms of this Order (the "Deemed Assigned Affiliate Contracts").  To

the extent that the Purchaser elects, subsequent to the date of this Order, to have the Sellers

assign to the Purchaser any agreement or license with Motorola, Inc. or any of the Motorola

Affiliates relating to the Assets, in whole or in part, other than the Deemed Assigned Affiliate

Contracts, such assignment will be subject to Motorola's consent, to the extent required by the

terms of such contract and applicable law.

36.     To the extent that Sprint Nextel Corporation ("Sprint") and its affiliates, respective partners, directors, officers, agents and employees (the "Sprint Indemnitees") have a valid indemnification claim against the Sellers under the Fourth Amended and Restated PCS CDMA Product Supply Contract (the "Fourth Amended Supply Contract") between Sprint and NNI, Purchaser shall be responsible for indemnifying and holding harmless the Sprint Indemnitees from and against all Liabilities due after the Closing Date and Sellers shall be responsible for (a) attorneys fees and expenses arising before the Closing Date; and (b) those finally determined Liabilities (settlements and final judgments) due between the date of entry of this Order and the Closing Date, in each case pursuant to the terms of and solely to the extent such Liabilities are entitled to indemnification under the Fourth Amended Supply Contract. Any such claim by Sprint against NNI arising under this section shall be allowed and paid as an administrative claim pursuant to section 503(b) of the Bankruptcy Code.

37.     Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for the assumption and/or assignment, whether under section 365 of the Bankruptcy Code or otherwise, by the Debtors, of any contract with SNMP Research International, Inc. ("SNMP"), and no intellectual property rights or intellectual property licensed via contracts with SNMP and Nortel are being conveyed or otherwise transferred by the Debtors pursuant to the Order, Sale Agreement or Ancillary Agreements. To the extent that the Purchaser elects to have the Debtors assign to the Purchaser any contract with or intellectual property right of SNMP relating to the Assets, the Debtors and Purchaser will do so in accordance with the terms of such contract or applicable license, which terms, may include, inter alia, the written consent of SNMP.

38.     The Main Sellers have agreed that (i) NNI, on the one hand, and NNL, on

the other hand, each shall pay 50% of the Bid Protections, if, as and when such Bid Protections

become due and payable to Nokia Siemens Networks B.V. pursuant to and in accordance with

the terms of the NSN Agreement and the Bidding Procedures Order; (ii) in the event the Closing

occurs, amounts paid to the Sellers in accordance with Section 2.3.2(b)(i) of the Sale Agreement

shall be applied first to reimburse NNI and NNL for any amounts paid to NSN pursuant to (i)

above and the remainder of such Sales Proceeds (as defined in the Interim Funding and

Settlement Agreement, dated as of June 9, 2009 (the "IFSA"), entry into and performance under

which was approved by this Court's Order dated June 29, 2009 [D.I. 874]) arising out of the Sale

shall be, in accordance with Section 12.g. of the IFSA, (a) deposited into an Escrow Account (as

defined in the IFSA); (b) not be distributed in advance of either (1) agreement of all of the Main

Sellers as to the distribution of such Sale Proceeds (subject to the prior consent of the Committee

and the Bondholder Group acting in good faith), or (2) in the case where the Main Sellers fail to

reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms

of the Interim Sales Protocol (as defined in the IFSA and in such form as approved by this

Court); and (iii) in the event the Closing does not occur and the Sale Agreement is terminated as

a result of the breach thereof by one or more of the Sellers, the Main Sellers reserve their rights

with respect to the allocation of the liability for payment of the Bid Protections. The Main

Sellers have agreed that this agreement in respect of the Bid Protections is being made only with

respect to the initial allocation of the Bid Protections among the Main Sellers, and that nothing

herein (a) shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on,

the allocation or distribution of Sale Proceeds (other than reimbursement of the Bid Protections

contemplated in (ii) above), or (b) shall be precedental for any other sale transaction that has

occurred or may occur in the future. Other than with respect to the payment and reimbursement

of amounts in respect of the Bid Protections, nothing this Order is meant to modify or vary any of the Selling Debtors' (as such term is defined in the IFSA) rights and obligations under the IFSA.

39.    In connection with the Sale Agreement, the Debtors are authorized to enter into and execute the nondisturbance agreement attached hereto as Exhibit C.

40.    Except as expressly provided in the Sale Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

41.    Any amounts that become payable by the Debtors to the Purchaser pursuant to the Sale Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Sale Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Sale Agreement without further order of this Court.

42.    This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

43.    This Order and the Sale Agreement shall be binding in all respects upon all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed Agreements, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in

the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the

Bankruptcy Code, and the Sale Agreement shall not be subject to rejection or avoidance under

any circumstances.

        44.     The failure specifically to include or make reference to any particular

provisions of the Sale Agreement or any Ancillary Agreement in this Order shall not diminish or

impair the effectiveness of such provision, it being the intent of the Court that the Sale

Agreement and the Ancillary Agreements are authorized and approved in their entirety.

        45.     The Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order, including, without limitation, the authority to:  (1)

interpret, implement and enforce the terms and provisions of this Order (including the injunctive

relief provided in this Order) and the terms of the Sale Agreement, the Ancillary Agreements, all

amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the

Purchased Assets, from and against any of the Claims or Interests; (3) compel delivery of all

Purchased Assets to the Purchaser; and (4) resolve any disputes arising under or related to the

Sale Agreement, the Ancillary Agreements, the Sale or the Transactions.

        46.     The Sale Agreement, the Ancillary Agreements and any related

agreements, documents or other instruments may be modified, amended, or supplemented

through a written document signed by the parties in accordance with the terms thereof without

further order of the Court; provided, however, that any such modification, amendment or

supplement is neither material nor materially changes the economic substance of the transactions

contemplated hereby (it being understood, for the sake of clarity, that no such modification,

amendment or supplement shall be deemed to be material or shall be deemed to materially

change the economic substance of the transactions to the extent that the impact does not exceed

two percent of the Purchase Price (as defined in the Sale Agreement); and provided further that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Committee, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis).

47.    The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the Sale Agreement, the Assumed and Subleased Real Estate Leases and the Ancillary Agreements prior to or after closing without further order of the Court.

48.    This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted.

49.    Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

50.    The provisions of this order are nonseverable and mutually dependent.

Dated: July 28, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE