**<u>Exhibit B</u>**

**PBGC Stipulation**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                :

*In re*                   :      Chapter 11

Nortel Networks Inc., *et al.*,[1]    :      Case No. 09-10138 (KG)

             Debtors.    :      Jointly Administered

                :

                :
-------------------------------------------------------X

## STIPULATION BY AND AMONG THE DEBTORS,
## CERTAIN AFFILIATES AND PENSION BENEFIT GUARANTY CORPORATION

WHEREAS, Nortel Networks Inc. ("NNI") and its affiliated debtors and debtors in possession in the above-captioned cases (the "Debtors") commenced chapter 11 proceedings by filing voluntary petitions on January 14, 2009 and July 14, 2009 (in the case of Nortel Networks (CALA) Inc.); and

WHEREAS, NNI sponsors the Nortel Networks Retirement Income Plan (the "Pension Plan"), a defined benefit pension plan which is intended to be qualified under Section 401(a) of the Internal Revenue Code of 1986 (as amended, the "Code"); and

WHEREAS, Pension Benefit Guaranty Corporation ("PBGC" and together with the Main Sellers, as hereinafter defined, the "Parties") has provided NNI a notice of

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

determination that the PBGC had determined under Section 4042(a)(2) and (4) of the Employee

Retirement Income Security Act of 1974, as amended ("ERISA") that the Pension Plan will be

unable to pay benefits when due, that the possible long-run loss of the PBGC with respect to the

Pension Plan may reasonably be expected to increase unreasonably if the Pension Plan is not

terminated, and under Section 4042(c) of ERISA, the Pension Plan must be terminated in order

to protect the interests of participants and to avoid any unreasonable increase in the liability of

the PBGC insurance fund and that July 17, 2009 was to be established as the date of termination

of the Pension Plan; and

WHEREAS, on July 17, 2009, the PBGC filed a complaint in the Middle District

of Tennessee against NNI and the Retirement Plan Committee of the Nortel Networks

Retirement Income Plan seeking termination of the Pension Plan (the "Complaint");[2] and

WHEREAS, the Debtors, along with Nortel Networks Corporation and Nortel

Networks Limited (collectively, the "Main Sellers") have executed an asset sale agreement with

Nokia Siemens Networks B.V., ("NSN") dated June 19, 2009 (as it may be amended from time

to time, and including all Ancillary Agreements (as defined therein) the "NSN Asset Sale

Agreement"), with respect to the sale of certain assets related to the CDMA and LTE Business as

more fully described in the NSN Asset Sale Agreement; and

WHEREAS, the Debtors filed a Motion for Entry of (i) an Order (A) Authorizing

Debtors' Entry into the NSN Asset Sale Agreement, (B) Authorizing and Approving the Bidding

Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D)

Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures,

(F) Authorizing the Filing of Certain Documents under Seal, and (G) Setting a Date for the Sale

---

[2] The Debtors reserve all of their rights and defenses with respect to the termination of the Pension Plan and the relief sought in the Complaint.

[New York #2087349 v9]

Hearing, and (ii) Authorizing and Approving (A) the Sale of Certain of Debtors' CDMA and LTE Assets Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Certain Contracts, and (C) the Assumption and Sublease of Certain Leases, and a Motion to Apply the Previously Entered Bidding Procedures Order and Sale Motion, as Supplemented, to Nortel Networks (CALA) Inc. Prospectively (together, the "Sale Motion");

WHEREAS, certain of the assets to be conveyed pursuant to the NSN Asset Sale Agreement are owned or otherwise held by Nortel Networks de Mexico, S.A. de C.V., Nortel Networks de Mexico, S. de R.L. de C.V., Nortel Networks (Asia) Limited, Nortel Networks (China) Limited, and Nortel Networks Telecommunications Equipment (Shanghai) Co Ltd., (collectively, the "Non-Debtors") which are non-debtor subsidiaries and affiliates of the Debtors (collectively, the "Non-Debtor Assets");

WHEREAS, pursuant to the Sale Motion, if any qualified bids are received by the deadline specified in the auction procedures approved by the Bankruptcy Court, an auction will be held.  Pursuant to the Sale Motion and subject to Bankruptcy Court approval with respect to assets of the Debtors, the CDMA and LTE assets, including the Non-Debtor Assets, will be sold to the bidder who submits the highest and best bid at such auction (including all designated purchasers in such bid, the "Purchaser"), pursuant to a written agreement (the "Asset Sale Agreement");

WHEREAS, Section 4062 of ERISA provides for the imposition of certain claims and liens on the sponsor of a terminated pension plan and all members of the sponsor's controlled group for, inter alia, the underfunding of the pension plan and Section 4068 of ERISA provides that a lien may arise against any person liable to the PBGC under Section 4062 (the "PBGC Lien");

3

WHEREAS, the Main Sellers do not concede the validity or applicability of the PBGC Lien on the Non-Debtor Assets but have concluded it is in the best interests of the Main Sellers and their affiliates to enter into this Stipulation in furtherance of the proposed sale transaction.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, and in consideration of the foregoing, the Main Sellers and the PBGC hereby agree and stipulate as follows:

1. On the date of the Closing (as defined in the Asset Sale Agreement) and the Main Sellers' receipt of a payment of the purchase price specified in the Asset Sale Agreement, the Main Sellers shall pay the PBGC $250,000 in cash, out of such proceeds (the "Settlement Payment").

2. In consideration for and effective immediately upon its receipt of the Settlement Payment, the PBGC (a) consents to the sale of the Non-Debtor Assets; (b) agrees not to pursue or perfect, against the Sellers (as defined in the NSN Asset Sale Agreement), the Non-Debtors, the Purchaser or their respective parents, subsidiaries and affiliates, whether now or hereafter existing, any lien or claim with respect to the Pension Plan, whether arising before or after the date of this Stipulation, relating to the Non-Debtor Assets or any of the proceeds from the sale thereof; (c) forever waives its rights, covenants not to sue, releases, and discharges the Purchaser, its successors, assigns, subsidiaries (direct or indirect), joint ventures, and Affiliates (as defined in the Asset Sale Agreement), and the respective current or future employees, agents, representatives, officers, directors, partners, members, governors, managers, and equityholders of any of the foregoing (collectively, the "Purchaser Third Party Beneficiaries") from any and all actions, causes of action, accounts, agreements, covenants, contracts, controversies, claims,

4

damages, whether known or unknown, in law, admiralty or equity (collectively, the "Claims"),

which the PBGC may now have, ever has had or ever will have with respect to the Pension Plan

relating to the sale of the Non-Debtor Assets (including the Non-Debtor Assets and the proceeds

relating to the Non-Debtor Assets) or the Purchaser's purchase of the Non-Debtor Assets,

including, without limitation, any liabilities imposed or that could be imposed under ERISA and

the Code, which the PBGC may now have, ever has had or ever will have, from the beginning of

the world, and (d) forever waives its rights, covenants not to sue, releases, and discharges the

Sellers, its successors, assigns, subsidiaries (direct or indirect), joint ventures, and Affiliates (as

defined in the Asset Sale Agreement), and the respective current or future employees, agents,

representatives, officers, directors, partners, members, governors, managers, and equityholders of

any of the foregoing (collectively, and together with the Purchaser Third Party Beneficiaries

defined above, the "Third Party Beneficiaries") from any and all actions, causes of action,

accounts, agreements, covenants, contracts, controversies, claims, damages, whether known or

unknown, in law, admiralty or equity (collectively, the "Claims"), which the PBGC may now

have, ever has had or ever will have with respect to the Pension Plan relating to the sale of the

Non-Debtor Assets(including the Non-Debtor Assets and the proceeds relating to the Non-Debtor

Assets).

       3. Notwithstanding any other provision contained herein to the contrary, the

PBGC's rights to assert claims relating to the Pension Plan against the Debtors (but not against

the Purchaser, any Purchaser Third Party Beneficiary or any of their assets, including the assets

of the Debtor being sold to the Purchaser pursuant to the Asset Sale Agreement) and any claims

relating to breaches of fiduciary duty by any fiduciaries of the Pension Plan shall be expressly

preserved and the Debtors' (or fiduciaries') or any other party in interest's rights to object to any

such claims and/or assert any defenses or claims against the PBGC relating to the Pension Plan are expressly preserved, provided however, that the PBGC's recoveries on all of its claims with respect to the Pension Plan shall not exceed the total amount of the liabilities imposed on all liable parties by ERISA.

4. This Stipulation may be executed by facsimile, which shall have the same effect as an original, and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one in the same instrument.

5. This Stipulation shall be binding upon and inure to the benefit of the Parties and each and all of their respective successors, assigns, heirs and personal representatives. The Parties hereto agree that the Non-Debtors and the Third Party Beneficiaries shall be third party beneficiaries to this Stipulation and shall have all rights to enforce this Stipulation against the Parties as if a party to this Stipulation.

6. Each of the undersigned represents that he or she is authorized to execute this Stipulation on behalf of his or her respective clients.

7. It is acknowledged that each party has participated in, jointly consented to and drafted this Stipulation and that any claimed ambiguity shall not be construed for or against either party on account of such drafting.

8. This Stipulation shall be interpreted, construed and enforced in accordance with the substantive laws of the State of New York, without regard to New York's principles of conflicts of laws, to the extent not preempted by ERISA or other federal law. The Parties consent to the exclusive jurisdiction of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for all matters concerning this Stipulation during the pendency of the

[New York #2087349 v9]

Debtors' chapter 11 cases and, thereafter, any action or proceeding to interpret or enforce this Stipulation may be brought in a United States District Court having jurisdiction over such matter.

9. This Stipulation is subject to approval of the Bankruptcy Court; provided, however, that the Parties shall support such Bankruptcy Court approval and comply with this Stipulation pending the Bankruptcy Court's entry of such an order approving or disapproving this Stipulation.

10. Nothing in this Stipulation or any negotiations or proceedings in connection herewith shall constitute or be deemed to be evidence of an admission by any party of any liability or wrongdoing whatsoever, or the truth or untruth, merit or lack thereof, of any claim or defense of any party. Neither this Stipulation nor any negotiations or proceedings in connection herewith may be used in any proceeding against any party for any purpose whatsoever except with respect to the effectuation and enforcement of this Stipulation. This matter has been settled for convenience purposes only, is non-precedential and is without prejudice to the Parties' rights and defenses with regard to any other asset sale transaction that has occurred or may occur in the future.

11. This Stipulation contains the entire agreement of the Parties with respect to its subject matter and supersedes any prior or contemporaneous oral or written agreements. The Parties acknowledge that no promise, inducement or agreement not stated herein has been made to them in connection with this Stipulation. The Parties understand and agree that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by the Parties hereto. The Parties agree and acknowledge that they will make no claim at any time or place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

7

[New York #2087349 v9]

12.  Notwithstanding anything else in this Stipulation to the contrary, the allocation of the cost of the Settlement Payment among the Main Sellers shall be governed by the terms and conditions of the Interim Funding and Settlement Agreement, dated as of June 9, 2009, and any allocation protocol created in accordance therewith.

**Nortel Networks Inc.**

By: _____
Name:
Title:
Date:

**Nortel Networks Corporation**

By: _____
Name:
Title:
Date:

**Nortel Networks Limited**

By: _____
Name:
Title:
Date:

**Pension Benefit Guaranty Corporation**

By: *Vicente Matias Murrell*
Name: *Vicente Matias Murrell*
Title: *Attorney*
Date: *July 27, 2009*

8