## Exhibit C

**Nondisturbance Agreement**

## SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT

THIS SUBORDINATION, NON-DISTURBANCE AND ATTORNMENT AGREEMENT ("**Non-Disturbance Agreement**") made as of the _____ day of _____, 2009 by and among Nortel Networks Inc. ("**Lender**"), and [*] ("**Tenant**"), and [* * ("**Indemnifier**")] and Nortel Networks Limited ("**Sublandlord**"),

**WITNESSESS:**

**WHEREAS** by an amended and restated ground lease dated as of January 2, 1998 (amending and restating the ground lease in respect of the same Lands (defined below) dated as of January 1, 1990), notice of which is registered in the Land Registry Office for the Land Titles Division of Ottawa (#4) ("**Registry Office**") as Instrument No. LT1269085 (the "**Restated Ground Lease**"), the National Capital Commission ("**NCC**") leased to Sublandlord the lands described as Part of Lots 8, 9 and 10, Con.1 (OF), more particularly described as Parts 1 and 2 on R-Plan 5R-13309 and Part 1 on R-Plan 4R-17898, in each case deposited in the Registry Office, identified as Leasehold Parcel PINs 04710-0032 (LT) and 04710-0034 (LT) (collectively, the "**Lands**") for a term of years, and on the terms and conditions, set out in the Restated Ground Lease;

**AND WHEREAS** the Restated Ground Lease was amended by a Lease Amending Agreement between the NCC and Sublandlord, notice of which was registered in the Registry Office on June 11, 2003 as Instrument OC207432 (the "**Amending Agreement**", and together with the Restated Ground Lease, hereinafter referred to as the "**Ground Lease**");

**AND WHEREAS** by a Debenture dated February 9, 2009 (the "**Debenture**") and registered on the title to the Lands by a way of a Notice of Charge of Lease registered February 9, 2009 as Instrument No. OC951921 (the "**Charge of Lease**"), Sublandlord charged its interest in the Ground Lease and the Lands in favour of Lender to secure the obligations of Sublandlord to Lender under the **Credit Agreement** (as defined in the Debenture);

**AND WHEREAS** by a Landlord's Estoppel and Consent Agreement dated as of January 23, 2009 between the NCC and Lender (the "**Landlord's Consent Agreement**"), the NCC consented to the Charge of Lease in favour of Lender and provided various assurances to Lender on the terms and conditions set out in the Landlord's Consent Agreement;

**AND WHEREAS** pursuant to that certain Asset Sale Agreement between [*, **] Sublandlord and others dated _____, 2009 (the "**ASA**") and the acquisition of the "Business" as defined therein, Sublandlord will grant to Tenant an occupancy agreement in respect of those parts of the buildings situate on the Lands as described and identified on Appendix "1" hereto (the "**Demised Premises**") consisting of a direct sublease (the "**Direct Lease**") following a segregation and consolidation of the Business into demised areas, and pending such segregation, consolidation and demising work, an interim license of occupation of the Demised Premises (the

"**License**", and together with the Direct Lease, collectively the "**Occupancy Agreements**", and individually, each an "**Occupancy Agreement**");

   **AND WHEREAS** Sublandlord has requested that Lender confirm, pursuant to the Charge of Lease, that it consents to the Occupancy Agreement;

   **AND WHEREAS** Lender has requested that Tenant confirm that the Occupancy Agreements are subject and subordinate to the Charge of Lease;

   **AND WHEREAS** Tenant is willing to confirm that the Occupancy Agreements are subordinate to the Charge of Lease provided it obtains assurance from Lender that Tenant's use, occupation and possession of the Demised Premises and its right to use any common areas associated therewith will not be disturbed by reason of, or enforcement under, the Charge of Lease provided that Tenant is in compliance with its obligations under the applicable Occupancy Agreement, and Lender is willing to give such assurances on the terms hereinafter set out;

   **AND WHEREAS** Lender has requested confirmation from the NCC that the NCC has consented to the Occupancy Agreements and that the execution and delivery of this Non-Disturbance Agreement is acknowledged by the NCC under the terms of the Landlord's Consent Agreement;

   **AND WHEREAS** the parties hereto desire to make the Occupancy Agreement subject and subordinate to the Charge of Lease;

   **NOW THEREFORE**, the parties hereto, in consideration of the covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agree as follows:

1.  Lender hereby confirms to Sublandlord that pursuant to the terms of the Credit Agreement and the Charge of Lease Lender consents to the Occupancy Agreements.

2.  Each Occupancy Agreement and all terms and conditions contained therein and all options, liens and charges created, and all rights of Tenant thereunder and in respect of the Demised Premises shall be subject and subordinate to: (a) the Charge of Lease and the lien thereof, (b) all the terms, conditions and provisions of the Charge of Lease, (c) each and every advance made or hereafter made under the Credit Agreement and secured by the Charge of Lease, (d) all renewals, extensions, amendments, modifications and/or supplements of same, so that at all times the Charge of Lease shall be and remain a lien on the Demised Premises prior and superior to each Occupancy Agreement for all purposes; provided, however, Lender agrees that so long as no default by Tenant has occurred which is continuing for such period of time after notice, if any, required by the applicable Occupancy Agreement, then, and in such event,

   2.1.  Lender shall not join Tenant as a party defendant in any foreclosure action or proceeding which may be instituted or taken by Lender under the Charge of Lease by reason of any default thereunder by Sublandlord, unless such joinder is

necessary to foreclose the equities of redemption pursuant to the Charge of Lease and then only for such purpose and not for the purpose of terminating the applicable Occupancy Agreement,

2.2. Tenant's right, title, interest or leasehold estate (as the case may be) under the applicable Occupancy Agreement shall not be terminated or disturbed by Lender, and

2.3. except as expressly set out herein, none of Tenant's rights under the applicable Occupancy Agreement shall be affected in any way.

Notwithstanding the foregoing and subject to provisions of paragraph 6 below, Lender shall not in any event have any liability under the applicable Occupancy Agreement for anything occurring prior to the date on which Lender shall enforce its security and demand payment of rents under the applicable Occupancy Agreement as provided hereunder or otherwise succeed to the rights of Sublandlord under the applicable Occupancy Agreement.

3. If Sublandlord fails to perform or observe any of the terms, conditions or agreements in the applicable Occupancy Agreement in contravention of the applicable Occupancy Agreement, Tenant shall give written notice thereof to Lender contemporaneously with notice that is required to be given to Sublandlord thereunder and Lender shall have the right (but not the obligation) to cure such default. Tenant shall not take any action with respect to such default under the Occupancy Agreement (including without limitation any action in order to terminate, rescind or avoid the Occupancy Agreement or to withhold any rent or other monetary obligations thereunder) for a period of thirty (30) days following receipt of such written notice by Lender, or such lesser period as may be provided in the applicable Occupancy Agreement; provided, however, that in the case of any default which cannot with diligence be cured within such thirty (30) day period or such lesser period as may be provided in the applicable Occupancy Agreement, if Lender has commenced to cure such default and thereafter prosecutes the curing of such default with diligence and continuity, then the time within which such default may be cured shall be extended for such period as may be necessary to complete the curing of such default with diligence and continuity.

4. Without limiting any provisions of the Occupancy Agreements, if, by reason of any default under the Charge of Lease on the part of Sublandlord, Lender shall succeed to the interest of Sublandlord under the applicable Occupancy Agreement, then, subject to the provisions of this Non-Disturbance Agreement, including, without limitation, paragraph 2 above, the applicable Occupancy Agreement shall nevertheless continue in full force and effect and Tenant shall and does hereby agree to attorn to and accept Lender as its landlord under the applicable Occupancy Agreement for the then remaining balance of the term thereof without the necessity of any further agreement. Notwithstanding the foregoing, upon request of Lender, Tenant shall execute and deliver to Lender an agreement of attornment reasonably satisfactory to Lender.

5. Tenant shall, after receipt of a written demand for payment from Lender, pay to Lender all rental and other payments payable to Sublandlord under the applicable Occupancy Agreement from and after receipt of the aforesaid written notice in the amounts and at the times set forth therein. For clarity, Tenant shall be under no obligation to make payments payable under the applicable Occupancy Agreement to Lender by virtue of this Non-Disturbance Agreement until Tenant receives the aforementioned written notice from Lender hereunder. Sublandlord and Lender hereby expressly release and discharge Tenant of and from any liability to Sublandlord on account of any payment of rent or other payments paid under the applicable Occupancy Agreement pursuant to the provisions of this paragraph 5.

6. If Lender shall enforce its security under the Charge of Lease and demand payment of fees or rents under the applicable Occupancy Agreement or otherwise succeed to the interest of Sublandlord, Lender shall become liable for the performance of Sublandlord's obligations under the applicable Occupancy Agreement save and except for any of Sublandlord's obligations that exist at the time or thereafter arise and relate to the period prior to the date upon which Lender exercises its security rights or the date after Lender ceases to exercise same. Furthermore, Lender will require that any person that acquires the Demised Premises, as a result of Lender's exercise of its security rights under the Charge of Lease, assume Lender's obligations under this Non-Disturbance Agreement and, if applicable at such time, under the applicable Occupancy Agreement, upon which assumption, Lender shall be released from its obligations hereunder and under the applicable Occupancy Agreement in respect of the period after such acquisition.

7. Tenant agrees that Lender shall not be bound by any prepayment or payment of more than one month's Rent and other payments contemplated in the Occupancy Agreement nor by any modification of a material term of the Occupancy Agreements (except the automatic termination of the License), unless such amendment has been expressly approved in writing by Lender. Any such amendment to which Lender has not consented (except the automatic termination of the License) shall be inoperative in the event Lender succeeds to the position of Sublandlord prior to the completion or performance thereof. For greater certainty, nothing contained herein shall prohibit Sublandlord and Tenant from amending the applicable Occupancy Agreement from time to time and/or limit Sublandlord's rights to effect its rights and remedies with respect to the applicable Occupancy Agreement and the Demised Premises.

8. Sublandlord represents and warrants that the Occupancy Agreements have been duly executed by Sublandlord and all consents, resolutions or other approvals required for Sublandlord to execute the Occupancy Agreement were obtained. Tenant represents and warrants that the Occupancy Agreements have been duly executed by Tenant and all consents, resolutions or other approvals required for Tenant to execute the Occupancy Agreements were obtained.

9. Tenant agrees that, if Sublandlord's consent is required under either Occupancy Agreement and subject to the provisions of such Occupancy Agreement in this regard, no assignment of the Occupancy Agreement or subletting of all or any portion of the Demised Premises by Tenant shall be effective unless Lender's prior written consent

shall have been obtained; provided that the same factors that govern the giving of consent by Sublandlord under the applicable Occupancy Agreement shall apply to Lender.

10. Tenant, shall, from time to time, at reasonable intervals, within ten (10) business days after request by Lender, execute, acknowledge and deliver to Lender a statement containing substantially those matters as set out in the form of Tenant's acknowledgement and certificate attached hereto as Appendix "2" with such modifications as may be necessary to reflect the factual basis of the subject matter of the statement.

11. [Indemnifier covenants and agrees that it shall comply with the terms of this Non-Disturbance Agreement and be fully responsible and liable for all obligations of Tenant hereunder.] **[NTD: to be confirmed]**

12. This Non-Disturbance Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute and be construed as one and the same instrument.

13. Any notice, demand, statement, request or consent made hereunder shall be effective and valid only if in writing, referring to this Non-Disturbance Agreement, signed by the party giving such notice, and delivered either personally to such other party, or sent by nationally recognized overnight courier delivery service or by confirmed electronic transmission, postage, addressed to the other party as follows (or to such other address or person as either party or person entitled to notice may by notice to the other party specify):

    To Lender:

    To Tenant:

    To Indemnifier:

    To Sublandlord:

Unless otherwise specified, notices shall be deemed given as follows: (i) if delivered personally, when delivered, (ii) if delivered by nationally recognized overnight courier delivery service, on the day following the day such material is sent, or (iii) if sent by

electronic transmission, on the day of confirmed transmission if confirmed transmission is before 6:00 pm on a business day, and otherwise on the next business day.

14. This Non-Disturbance Agreement shall be interpreted and construed in accordance with and governed by the laws of the Province of Ontario, Canada and the parties hereto attorn to the jurisdiction of the Courts of Ontario. Nothing contained in this Non-Disturbance Agreement shall in any way impair or affect the lien created by the Charge of Lease or the obligations of Sublandlord thereunder, except as specifically set forth herein.

15. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided, however, that in the event of the assignment or transfer of the interest of Lender to a party that assumes Lender's obligations and liabilities hereunder, all obligations and liabilities of Lender under this Agreement arising from and after the date of such assignment shall terminate, and thereupon all such obligations and liabilities shall be the responsibility of the party to whom Lender's interest is assigned or transferred. If Lender assigns the Charge of Lease, Lender shall obtain from the assignee and deliver to Tenant an agreement in favour of Tenant pursuant to which such assignee shall be bound by this Non-Disturbance Agreement.

IN WITNESS WHEREOF, the parties hereto have duly executed this Non-Disturbance Agreement as of the day and year first above written.

**Tenant:**

Per: _____           Per: _____
Name:                                        Name:
Title:                                       Title:
I/we have authority to bind the Corporation.

**Indemnifier:**

Per: _____           Per: _____
Name:                                        Name:
Title:                                       Title:
I/we have authority to bind the Corporation.

**Nortel Networks Limited:**

Per: _____           Per: _____
Name:                                        Name:
Title:                                       Title:
I/we have authority to bind the Corporation.

**Nortel Networks Inc.:**

Per: _____          Per: _____
Name:                                          Name:
Title:                                         Title:
I/we have authority to bind the Corporation.

By its execution below, the NCC hereby confirms to Lender that the NCC has consented to the Occupancy Agreements and that the execution and delivery of this Non-Disturbance Agreement is acknowledged by the NCC under the terms of the Landlord's Consent Agreement.

**National Capital Commission:**

Per: _____          Per: _____
Name:                                          Name:
Title:                                         Title:
I/we have authority to bind the Commission

## Appendix "1"

**Identification of the Premises**

## Appendix "2"

## TENANT'S ACKNOWLEDGMENT CERTIFICATE

TO: Nortel Networks Inc. and its successors and assigns ("Lender") and its Solicitors

RE: That certain license/direct lease of approximately * square feet in the building municipally known as * ,*, Ontario (the "Demised Premises") and certain Charge of Leases from Nortel Networks Limited ("Sublandlord") in favour of Lender

The undersigned hereby certifies, confirms and acknowledges that as of the date of this certificate:

1. The license/direct lease in respect of the Demised Premises between Sublandlord and * (the "Occupancy Agreement") has been validly executed and delivered by the undersigned, as tenant, and is unmodified and in full force and effect and not in default by either the undersigned or, to the knowledge of the undersigned, by Sublandlord.

2. The undersigned is the licensee/tenant of Sublandlord pursuant to the Occupancy Agreement and possession of a portion of the entire Demised Premises was accepted by the undersigned on or about * and the undersigned has continuously occupied the entire Demised Premises and carried on its business therefrom to the date hereof.

3. As of the date hereof, all of Sublandlord's work to the Demised Premises, which is the responsibility of Sublandlord (if any), has been completed to the satisfaction of the undersigned and in accordance with Sublandlord's obligations under the Occupancy Agreement, and the Demised Premises are satisfactory and as permitted and required by the Occupancy Agreement.

4. The term of the Occupancy Agreement commenced on * and expires on *, unless renewed or extended in accordance with the provisions of the Occupancy Agreement, if any.

5. The undersigned is now paying in full an annual basic rent, completely net of all operating costs and taxes, in the amount of * and basic rent payable under the Occupancy Agreement has been paid to *.

6. Operating costs and realty taxes payable under the Occupancy Agreement have been paid throughout the term of the Occupancy Agreement to * and there is no prepayment of any rent or security deposit standing to our credit, save and except for payments on account of the current month's basic rent and prepayments on account of realty taxes.

7. To the best of the knowledge of the undersigned, the undersigned has no claim for any deduction, abatement or setoff of any rent due or payable under the Occupancy Agreement nor any counterclaim or defence against the enforcement of its obligations to be performed by it under the Occupancy Agreement.

8. To the best of the knowledge of the undersigned, there is no litigation or government or municipal proceedings commenced or pending or threatened against or by the undersigned with respect to the Demised Premises or the Occupancy Agreement.

9. There are no allowances, incentives, inducements, benefits packages or any other monies owing or which may become due and owing to the undersigned at any time (however characterized) under the Occupancy Agreement.

10. There is no agreement to lease or other lease or any other agreements, rights or obligations between the undersigned and Sublandlord or any previous landlord, other than that contained in the Occupancy Agreement, pertaining to the Demised Premises or the Occupancy Agreement.

11. The undersigned is at arm's length to Sublandlord.

Dated the        day of *, 2009

                                      Tenant

                                      Per: _____
                                      Name:
                                      Title:

                                      Per: _____
                                      Name:
                                      Title:

I/we have authority to bind the Corporation.

## Schedule 1

**Airvana Contract Schedule**

## Schedule 1

| Agreement | Cure Amount |
|---|---|
| Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products made as of October 1, 2001 by and between Nortel Networks, Inc. ("NNI") and Airvana Inc. ("Airvana") with Appendix A (products, software and services; prices and fees), Appendix B (specifications), Appendix C (warranty repair/replacement procedures and obligations regarding changes), Appendix D (development terms), Appendix E (statement of work no. 1 for 1xEV-DO solution product); Appendix G (edi and tdi), Appendix H (quality standards), Appendix I (Nortel Networks supplier certification criteria), Appendix L (field upgrades and retrofits) and Appendix M (debarment certificate)<br><br>A. Amendment No. 1 for CDMA High Data Rate (1xEV-DO) Products effective as of October 1, 2001 by and between NNI and Airvana with Appendix A(1) (products, software, and services; prices and fees)<br><br>B. Amendment No. 2 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of May 28, 2004 by and between NNI and Airvana with Appendix A(2) (products (hardware and software), and services; prices and fees)<br><br>C. Amendment No. 3 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of December 31, 2004 by and between NNI and Airvana<br><br>D. Amendment No. 4 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of January 1, 2005 by and between NNI and Airvana with Appendix A(3) (products (hardware and software), and services; prices and fees and Exhibit A (design and technology license), Schedule 1 (design transfer documentation) and Appendix M (escrow depositor acceptance form and amendment) | $ 38,248,461.01 as of July 28, 2009 (see attached invoice and interest summary) Plus additional per diem interest of $12,131.26 through the date of receipt of the cure amount by Airvana |

| Agreement | Cure Amount |
|---|---|
| E. Amendment No. 5 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of September 30, 2005 by and between NNI and Airvana with Exhibit N (hardware design transfer terms, Appendix A (factory transfer package), Appendix B (Diagnostic Software License Agreement) and Schedule A (Airvana, Inc. software license agreement) ("Amendment No. 5") | |
| F. Amendment No. 6 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of October 24, 2005 by and between NNI and Airvana with Exhibit O (special pricing form) | |
| G. O-1 (Bakrie) Special Pricing Form | |
| H. O-2 (Extelcomm) Special Pricing Form | |
| I. O-3 Rev O Special Pricing Form | |
| J. O-4 (Leap) Special Pricing Form | |
| K. O-5 (Australia) Special Pricing Form | |
| L. O-6 (Sprint Affiliate) Special Pricing Form | |
| M. O-7 (Tata and Reliance) Special Pricing Form | |
| N. O-8 (TSU) Special Pricing Form | |
| O. O-9 (Eurotel) Special Pricing Form | |
| P. O-10 (APBW) Special Pricing Form | |
| Q. O-11(CUTC) Special Pricing Form | |
| R. O-12 Special Pricing Form | |
| S. O-13 (CTC) Special Pricing Form | |
| T. O-14 (iUSA) Special Pricing Form | |

| Agreement | Cure Amount |
|---|---|
| U. O-15 Special Pricing Form 1xEVDO Development Work Transfer<br><br>V. O-16 Special Pricing Form<br><br>W. O-17 Special Pricing Form iUSA-Unefon-Northern Mexico<br><br>X. Amendment No. 7 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of October 18, 2005 by and between NNI and Airvana with Exhibit A (market ready milestone)<br><br>Y. Amendment No. 8 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of November 11, 2005 by and between NNI and Airvana with Schedule A (list employees and documents to be disclosed)<br><br>Z. Amendment No. 9 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of August 20, 2006 by and between NNI and Airvana with Appendix A(4) (products (hardware and software), and services; prices and fees)<br><br>AA. Amendment No. 10 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of September 28, 2007 by and between NNI and Airvana with Appendix A(5) (products (hardware and software), and services; prices and fees) and Attachment 2 (equipment loan agreement)<br><br>BB. Amendment No. 11 to Development and Purchase and Sale Agreement for CDMA High Data Rate (1xEV-DO) Products effective as of November 7, 2008 by and between NNI and Airvana with Appendix A(6) (products (hardware and software), and services; prices and fees) | |
| Diagnostic Software License Agreement between Airvana and NNI effective as of October 3, 2005 (also referenced above as Appendix B to Amendment No. 5) | $0 |

| Agreement | Cure Amount |
|---|---|
| Purchase and License Agreement between NNI and Airvana effective as of November 19, 2008 | $0 |

4