IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
                Debtors. :
: **RE: D.I. 1070**
:
---------------------------------------------------------------X

**DEBTORS' OBJECTION TO THE MOTION OF ROBERT J. CABRAL
FOR DEFERRED COMPENSATION,
SEVERANCE COMPENSATION, AND DEFAULT JUDGMENT**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby object to the Motion of Robert J. Cabral ("Mr. Cabral") for Deferred Compensation, Severance Compensation, and Default Judgment (the "Motion"). In support of this Objection, the Debtors respectfully represent as follows:

**Background**

A.  **Introduction**

1.  On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"), filed voluntary petitions for relief under chapter 11 of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Bankruptcy Code. NN CALA filed a voluntary petition for relief under chapter 11 on July 14, 2009.

2.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks

2

(collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

4. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of the Debtors' cases and for consolidation for procedural purposes only [D.I. 36].[4]

5. This Court entered an order extending such relief to NN CALA on July 17, 2009 [D.I. 1098].

6. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142, 340]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[4] All references to "D.I." refer to the docket for the chapter 11 cases of Nortel Networks, Inc., and its affiliates, jointly administered under case number 09-10138 (KG).

3

Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

**B.     Debtors' Corporate Structure and Business**

7.     A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

8.     On June 19, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their CDMA and LTE businesses to Nokia Siemens Networks B.V., subject to the receipt of higher and better offers at auction [D.I. 931]. On July 28, 2009, this Court entered an order approving the sale of the CDMA and LTE assets to Telefonaktiebolaget LM Ericsson (Publ) ("Ericsson") as the successful bidder at auction [D.I. 1205].

9.     On July 20, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their Enterprise Solutions Business to Avaya Inc. subject to the receipt of higher and better offers [D.I. 1131]. A hearing to approve the bidding procedures related to this sale is scheduled for August 4, 2009.

### Debtors' Objections

10.    Mr. Cabral previously filed two claims with the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC ("Epiq") – both attached to the Motion – including a claim for severance pay and a deferred compensation-related claim. Mr. Cabral now seeks resolution of such claims through his Motion. As demonstrated below, Mr. Cabral provides no basis for alleging entitlement to preferential treatment over the multitude of similarly situated claimants in these chapter 11 cases (including the Debtors' other employees).

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

4

11. The Bankruptcy Code provides for an orderly process for the assertion and adjudication of claims against a debtor such as Nortel. Creditors are permitted – indeed often required – under the Bankruptcy Code to file proofs of claims against a debtor, see 11 U.S.C. § 501, and the debtor is provided with breathing space during the course of its bankruptcy case through the automatic stay imposed by section 362 of the Bankruptcy Code to adjudicate such claims in an orderly manner. See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1204 (3d Cir. 1991) ("The automatic stay . . . gives a bankrupt a breathing spell from creditors by stopping all collecting efforts, all harassment, and all foreclosure actions. . . . [It] permits a bankrupt to attempt a repayment or reorganization plan." (citations omitted)).[6] To that end, the Debtors recently filed a motion to establish a bar date of September 30, 2009 in these cases, which motion is scheduled to be heard by the Court on August 4, 2009 [D.I. 1084]. The establishment of the bar date is an important milestone in the claims resolution process, so that the Debtors may review and resolve various claims asserted against them by suppliers, customers, lenders, employees and others in an efficient and organized manner.

12. Mr. Cabral already has filed two claims with the Debtors' claims agent in these cases. Contrary to Mr. Cabral's position in his Motion, there are no requirements in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure that require resolution of Mr. Cabral's claims within 30 days of his filing of such claims. Although the Debtors are

---

[6] The automatic stay is one of the most fundamental protections provided to a debtor under the bankruptcy Code. See Midatlantic Nat'l Bank v. New Jersey Dep. of Envtl. Prot., 474 U.S. 494, 503 (1986). In particular, the Third Circuit has held that the purpose of the automatic stay is to:

> prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtors' assets due to legal costs in defending against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.

Borman v. Raymark Indus., Inc., 946 F.2d 1031, 1036 (3rd Cir. 1991); see also In re Rexene Products Co., 141 B.R. 574, 576 (Bankr. D. Del. 1992).

sympathetic to the circumstances in which former employees find themselves, the Debtors are obligated to follow the priority scheme dictated by the Bankruptcy Code.

13. Forcing the Debtors to resolve the claims of a single potential creditor at the expense of other creditors (including other employees) would violate a central precept of the chapter 11 process, equality of treatment and distribution. See In re Ron Perlstein Enterprises, Inc., 70 B.R. 1005, 1009 (Bankr. E.D. Pa. 1987) (recognizing the need of "a debtor to devote its likely-limited financial resources and energies to the formulation of a plan to treat all of its similarly-classified creditors equitably in bankruptcy court, as opposed to being required to expend its resources and energies in defending cases brought by certain of its creditors against it in other forums"). The Debtors should not be forced to accelerate consideration of Mr. Cabral's claim at the potential detriment to the recovery of other creditors. This is exactly the sort of result that the automatic stay of Section 362 was intended to prevent. See Borman, 946 F.2d at 1036.

14. In the Motion, Mr. Cabral has misinterpreted the lack of immediate response to his filing with Epiq as a signal that he will not receive an audience for his claims. The Debtors have and will continue to pursue investigations into claims filed in their cases, and in so doing, Mr. Cabral will receive due process, as will other creditors. By contrast, if the Motion were to be granted, other creditors would likely eschew the claims process for a direct audience before this Court, potentially creating larger administrative costs to the Debtors' estates and reducing the recoveries available to other creditors. For this reason, unsecured creditors such as Mr. Cabral, "bear the heavy and possibly insurmountable burden of proving that the balance of hardships tips significantly in favor of granting relief as against the hardships to the Debtor in denying relief." In re Micro Design, Inc., 120 B.R. 363, 369 (E.D. Pa. 1990) (automatic stay not lifted where it

was appropriate for movant to pursue its claim by filing a proof of claim, and participating in the claim process, in the bankruptcy case).

15.  Although it is premature to consider the merits of Mr. Cabral's claims, the Debtors do not concede the validity of Mr. Cabral's claims for severance and deferred compensation, and dispute certain facts alleged by Mr. Cabal in connection with such claims. Mr. Cabral has not provided evidentiary support for his claims in his Motion, and the Debtors reserve the right to seek discovery and to assert further substantive defenses to Mr. Cabral's claims at the appropriate time.  The Debtors also reserve their rights with respect to the priority afforded to Mr. Cabral's claims and his entitlement to payment for such claims outside of a reorganization plan context, as he has not set forth circumstances in the Motion that would warrant expedited resolution of the claims.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## **Conclusion**

WHEREFORE, the Debtors respectfully request that this Court (i) deny the Motion; and (ii) grant such other and further relief as it deems just and proper.

Dated:  July 29, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*