**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
|  | : |  |
| Debtors. | : | Jointly Administered |
|  | : |  |
|  | : | **Hearing date: August 4, 2009 at 9:00 AM (ET) (proposed)** |
|  | : | **Objections due: August 3, 2009 at 12:00 PM (ET)** |
|  | : | **(proposed)** |

---------------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(a) AND § 363 FOR AN ORDER
(A) APPROVING THE SIDE AGREEMENT AMONG THE DEBTORS
AND OTHER SELLERS OF NORTEL'S ENTERPRISE
SOLUTIONS BUSINESS AND (B) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, approving that certain side

agreement attached hereto as Exhibit B (the "Side Agreement"), entered into by and among

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), NNI, and certain of

their affiliates; and granting them such other and further relief as the Court deems just and

proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363 of

title 11 of the United States Code (the "Bankruptcy Code").

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions

for relief under chapter 11 of the Bankruptcy Code, except for Nortel Networks (CALA) Inc.

("NN CALA"), which filed its voluntary petition for relief under chapter 11 of the Bankruptcy

Code on July 14, 2009.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's

direct corporate parent NNL (together with NNC and their affiliates, including the Debtors,

"Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an

application with the Ontario Superior Court of Justice (the "Canadian Court") under the

Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their

creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage

their properties and operate their businesses under the supervision of the Canadian Court.  Ernst

& Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[3]        The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].  On July 17, 2009, this Court entered a further order of joint administration that provided for the joint administration of NN CALA's case with the pre-existing cases of its Debtor-affiliates [D.I. 1098].

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

9.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the Side Agreement, and (b) granting related relief.

**Facts Relevant to this Motion**

**A.      The Interim Funding and Settlement Agreement**

10.      On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA")

4

governing certain intercompany matters, including the obligation of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.      Sale of Nortel's Enterprise Solutions Business**

11.      Nortel's Enterprise Solutions business unit provides solutions for addressing the communication needs of large and small businesses globally across a wide variety of industries and governmental agencies by building new networks and transforming existing networks into more cost-effective, packet-based networks supporting data, voice and multimedia communications (the "Enterprise Solutions Business"). In particular, the Enterprise Solutions Business specializes in providing solutions that allow its customers to integrate and remove barriers between voice, email, conferencing, video and instant messaging technologies.

12.      On July 20, 2009, Nortel announced the sale of its Enterprise Solutions Business to Avaya Inc. (the "Purchaser"), subject to approval by this Court and the Canadian Court and the satisfaction of certain conditions as set forth in the Purchase Agreements (as defined below)

(the "Stalking Horse Transaction," and together with any alternative transaction, the "Transaction").

13.     The Selling Parties and the Purchaser have entered into two separate purchase agreements: (a) a purchase agreement for the sale of certain assets (including the stock of certain subsidiaries) of the Debtors' Enterprise Solutions Business, which is attached to the Sale Motion (as defined below) as Exhibit A (the "Agreement") and (b) that certain Asset Sale Agreement Relating to the Sale and Purchase of the EMEA Assets among the EMEA Sellers (the "EMEA Agreement," and together with the Agreement, the "Purchase Agreements").

14.     On July 20, 2009, the Debtors filed the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases (the "Sale Motion") [D.I. 1131], and a motion seeking to shorten the notice period with respect to the bidding procedures associated with that motion (the "Bidding Procedures") [D.I. 1132]. On July 21, 2009, this Court entered an order granting such motion to shorten the notice period with respect to the Bidding Procedures and setting the date for a hearing on such Bidding Procedures for August 4, 2009 at 9:00 a.m. [D. I. 1135].

C.     **The Side Agreement**

15.     In connection with the entry into the Stalking Horse Transaction, and pursuant to the framework set forth in the IFSA, the Debtors and certain other Nortel entities (collectively,

the "Parties") entered into the Side Agreement[4] on July 20, 2009, to address certain issues among

the Sellers raised by their entry into the Purchase Agreements.

16.    Certain terms of the Side Agreement are as follows:

- <u>Efforts to Complete the Stalking Horse Transaction</u>.  Each of the Parties shall use their reasonable best efforts to cooperate with the Purchaser and with each other to complete the Stalking Horse Transaction, including:

  - to inform other Parties of matters relating to the Stalking Horse Transaction and each of the Purchase Agreements, and to facilitate the process required to obtain certain regulatory approvals;

  - to defend all governmental actions challenging the Stalking Horse Transaction; and

  - to promptly inform the other Parties of any material issue that may result in a breach by the Sellers or the EMEA Sellers under the Purchase Agreements.

- <u>Notice and Consultation</u>.  Each of NNL, NNI, NNUK and, to the extent applicable, the Joint Administrators and the Israeli Joint Administrators, will consult in good faith amongst themselves prior to (a) agreeing to materially amend or waive any provisions under the Purchase Agreements, or (b) consenting to commencement of any Secondary Proceedings in relation to any EMEA Seller, or any bankruptcy proceedings relating to any Non-Debtor Sellers or any Company.

- <u>Collection and Allocation of Total Proceeds</u>.  Any payments by the Purchaser to the Parties under the Purchase Agreements shall be held in an escrow account.  These sale proceeds will be distributed to the Parties in accordance with the Interim Sales Protocol.

- <u>Allocation of Total Payments</u>.

  - The Sellers and the EMEA Sellers have agreed that if the Purchaser is not the successful bidder, the Sellers and the EMEA Sellers will, to the extent due under, and subject to the terms of, the

---

[4]        Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the Side Agreement.   To the extent that there are inconsistencies between the description of the provisions of the Side Agreement contained in this Motion and the terms and conditions of the Side Agreement, the terms and conditions of the Side Agreement shall control.

Purchase Agreements, pay to the Purchaser the Break-Up Fee and the Expense Reimbursement (each as defined in the Purchase Agreements, and together, the "Bid Protections").

- The Parties have agreed that initially two-thirds of the Bid Protections will be paid by the Sellers (including the Debtors) and the remaining one-third will be paid by the EMEA Sellers. Under the Side Agreement, the Parties have agreed that each Party will ultimately bear its pro-rata share of the Bid Protections based on each Party's Agreed Respective Percentage.

- In addition, the Parties have agreed that if the payment of the Bid Protections is attributable to the actions or omissions of one or more parties, then such breaching parties will reimburse other non-breaching parties for Bid Protection payments.

- Alternative Transaction. If the Parties enter into an Alternative Transaction in accordance with the Bid Procedures, the relevant provisions of the Side Agreement shall apply to such Alternative Transaction, *mutatis mutandis*.

- Fiduciary Duties. The Side Agreement (other than Sections 2.4 and 2.5), including the obligations of each Party in the Side Agreement, is subject to the rights of each Party to exercise its fiduciary duties, the statutory duties or the legal obligations of the Joint Administrators or the Joint Israeli Administrators in relation to the exercise of their duties or functions as administrators of certain Parties.

## Basis for Relief

17.    The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

18.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

8

19.     The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Industries, Inc., 2002 WL 32332749, at *2.

20.     The Debtors respectfully submit that the Side Agreement meets each of the requirements under section 363 of the Bankruptcy Code. The Side Agreement is supported by a sound business purpose because cooperation amongst the Sellers and the EMEA Sellers is essential to maximizing value in connection with the sale of Nortel's Enterprise Solutions Business, particularly given the ongoing creditor protection proceedings in various jurisdictions. The Canadian Main Sellers, the Debtors and the EMEA Sellers have entered into the Side Agreement in order to facilitate cooperation amongst the parties in working towards completion of the Transaction and govern the allocation of the benefits and burdens of the Transaction.

9

## Notice

21.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) the Department of Justice; and (vii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

22.     No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the

relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  July 29, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
        Wilmington, Delaware

                               James L. Bromley (No. 5125)
                               Lisa M. Schweitzer (No. 1033)
                               One Liberty Plaza
                               New York, New York 10006
                               Telephone:  (212) 225-2000
                               Facsimile:  (212) 225-3999

                               - and -

                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                               _____
                               Derek C. Abbott (No. 3376)
                               Eric D. Schwartz (No. 3134)
                               Ann C. Cordo (No. 4817)
                               Andrew R. Remming (No. 5120)
                               1201 North Market Street
                               P.O. Box 1347
                               Wilmington, Delaware 19801
                               Telephone:  (302) 658-9200
                               Facsimile: (302) 658-3989

                               *Counsel for the Debtors*
                               *and Debtors in Possession*