UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

```
IN RE:                          . Case No. 09-10138 (KG)
                                .
NORTEL NETWORKS, INC., et al.,  .
                                .
                  Debtors.  .
--------------------------------
IN RE:                          . Case No. 09-12515 (KG)
                                .
                                .
NORTEL NETWORKS (CALA) INC.,    .
                                . 824 Market Street
                                . Wilmington, Delaware  19801
                  Debtor.   .
                                . July 17, 2009
. . . . . . . . . . . . . . . . . 11:05 a.m.
```

TRANSCRIPT OF MOTIONS HEARING
BEFORE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor/Debtors:          Morris, Nichols, Arsht &
                                 Tunnell
                                 By:  DEREK C. ABBOTT, ESQ.
                                      ANNE C. CORDO, ESQ.
                                 1201 North Market Street
                                 P.O. Box 1347
                                 Wilmington, DE  19899


                                 Cleary, Gottlieb, Steen &
                                 Hamilton
                                 By: LISA M. SCHWEITZER, ESQ.
                                 One Liberty Plaza
                                 New York, NY 10006


                                 Bracewell & Giuliani
                                 By:  DAVID ALBALAH, ESQ.
                                 1177 Avenue of the Americas
                                 New York, NY  10036

 Audio Operator:                 Jennifer Pasierb

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311  Fax No.  (609) 587-3599**

**APPEARANCES (Cont'd):**

For the Official Committee of
Unsecured Creditors:                    Richards, Layton & Finger,
                                        P.A.
                                        By:  CHRISTOPHER SAMIS, ESQ.
                                        One Rodney Square
                                        P.O. Box 551
                                        Wilmington, DE  19899

                                        Akin, Gump, Strauss, Hauer &
                                        Feld, L.L.P.
                                        By:  FRED HODARA, ESQ.
                                             BRAD KAHN, ESQ.
                                        590 Madison Avenue
                                        New York, NY  10022

For the U.S. Trustee:                   Office of the U.S. Trustee
                                        By: PATRICK TINKER, ESQ.
                                        824 Market Street Mall
                                        Suite 1000
                                        Wilmington, DE 19899

For Paradigm Tax Group:                 Connolly Bove Lodge & Hutz
                                        LLP
                                        By:  MARC PHILLIPS, ESQ.
                                        The Nemours Building
                                        1007 North Orange Street
                                        Wilmington, DE  19801

For Jefferies & Company, Inc.:          Cross & Simon, LLC
                                        By: CHRISTOPHER SIMON, ESQ.
                                        913 North Market Street
                                        Suite 1001
                                        Wilmington, DE  19801

For Xeta Technologies:                  The Bayard Firm
                                        By:  DANIEL O'BRIEN, ESQ.
                                        222 Delaware Avenue
                                        Suite 900
                                        P.O. Box 25130
                                        Wilmington, DE  19899

For Crowell & Moring:                   Crowell & Moring LLP
                                        By:  MATTHEW CHENEY, ESQ.
                                        1001 Pennsylvania Avenue N.W.
                                        Washington, DC  20004

**APPEARANCES (Cont'd):**

For Ernst & Young:

    Allen & Overy LLP
    By: LISA KRAIDIN, ESQ.
    1221 Avenue of the Americas
    New York, NY

    Foley & Lardner LLP
    By:  JOHN A. SIMON, ESQ.
    One Detroit Center
    500 Woodward Avenue
    Detroit, MI  48226

For Verizon Communications:

    Arnall Golden Gregory LLP
    By:  DARRYL S. LADDIN, ESQ.
    2800 One Atlantic Center
    1201 West Peachtree Street
    Atlanta, GA  30309

For Silver Lake Capital:

    Ropes & Gray
    By:  ANNELIESE PAK, ESQ
    1211 Avenue of the Americas
    New York, NY

For Flextronics Telecom
Systems, Ltd.:

    Curtis, Mallet-Prevost, Colt
    & Mosle, LLP
    By:  STEVEN REISMAN, ESQ.
    101 Park Avenue
    New York, NY

For Fraser Milner &
Casgrain:

    Fraser, Milner & Casgrain LLP
    By:  MICHAEL WUNDER, ESQ.
    1 First Canadian Place
    100 King Street W
    Toronto, Canada

For Capstone Advisory Group
LLC:

    JAY BOROW, ESQ.

- - -

4

1                COURT CLERK:  Please rise.

2                THE COURT:  Good morning, everyone, thank you, please

3  be seated.  Mr. Abbott, how are you, sir?

4                MR. ABBOTT: I'm fine, Your Honor.  Good morning.

5                THE COURT:  Good morning.

6                MR. ABBOTT:  Derek Abbott here on behalf of the

7  Nortel debtors.  Your Honor, we've got a double feature this

8  morning.  And what I propose to do first, Your Honor, is deal

9  with the existing Nortel cases, cede the podium to Ms.

10 Schweitzer, let her run through the agenda, there's not much on

11 there, and then at the conclusion of that, Your Honor, we'll

12 let the court staff know that we're shifting gears into the

13 CALA proceedings, so they can keep audio files in the right

14 places, I guess.

15               THE COURT:  That's right.

16               MR. ABBOTT:  And we'll proceed in that fashion if

17 that's acceptable to the Court, Your Honor.

18               THE COURT:  Wonderful. Thank you, Mr. Abbott, yes.

19 Ms. Schweitzer, how are you?

20               MS. SCHWEITZER:  Good, Your Honor, how are you doing?

21 I hope you're better than we last saw you.

22               THE COURT:  Better.

23               MS. SCHWEITZER:  Good.

24               THE COURT:  Thank you, thank you, that was tough.

25               MS. SCHWEITZER:  Glad to hear it.  Well, we truly

26 appreciate -- we didn't realize quite how tough, but we

5

 1  appreciate you standing tough for us as it was an important

 2  date for everyone.

 3          THE COURT:  Absolutely.

 4          MS. SCHWEITZER:  And, so -- and good to see you're

 5  healthy and pink and glowing again.

 6          THE COURT:  Yes, thank you.  Thank you.

 7          MS. SCHWEITZER:  So, here we are, we're going to

 8  start off with the NNI case.  There are a couple of uncontested

 9  motions first up.  I think actually we're all uncontested today

10  and then the fee apps are at the end.

11          THE COURT:  And I do have one, let me just say with

12  the CNO, that's the compromise with Moline Dispatch Publishing.

13          MS. SCHWEITZER: Yes.

14          THE COURT:  I just wanted to make sure that no one

15  wished to be heard on it, but it certainly meets the

16  requirements of Rule 9019 and I'm satisfied that it should be

17  granted, unless anyone has any opposition.

18                  (No audible response)

19          THE COURT:  All right. I'm going to sign that right

20  now.

21          MS. SCHWEITZER:  Okay.  Thank you, Your Honor.

22          THE COURT:  Certainly.

23          MS. SCHWEITZER:  The second order that was -- the

24  second motion up was a motion for -- brought by Xeta

25  Technologies seeking a setoff of their claim.

1          THE COURT:  Yes.

2          MS. SCHWEITZER:  And this is a supplier claim,

3 basically uncontested in amount, and we indicated in the agenda

4 letter that we'd be handing up an amended order and I can walk

5 you through it and then tell you what it is.  Is that the

6 amended order just simply states the amount of the setoff

7 that's actually occurring.  So that one has the dollar amounts

8 clearly indicated.  It confirms that there's no -- that they're

9 not allowed by this order to setoff amounts against any

10 affiliates of NNI versus either the mutual parties and then the

11 third thing is that we reserve our rights with respect to any

12 avoidance actions that the company might have against Xeta, so

13 this is just a straightforward setoff of uncontested APAR

14 amounts.

15          THE COURT:  You bet.

16          MS. SCHWEITZER:  If I may approach I can --

17          THE COURT:  Please, Ms. Schweitzer, yes, you

18 certainly may.  Thank you.

19          MS. SCHWEITZER:  I'm not aware of anyone else that

20 has a concern with it, but I'll ask once again.

21          THE COURT:  Anyone wish to be heard?

22                    (No audible response)

23          THE COURT:  I'm just reading it and I am satisfied

24 that it is appropriate and I'll grant the motion.

25          MS. SCHWEITZER:  Great.  Thank you, Your Honor.  And

7

1  then I believe that takes us to the fee applications, which

2  I'll turn over to Mrs. Cordo.

3           THE COURT:  Thank you.

4           MS. SCHWEITZER:  Thank you.

5           THE COURT:  Good morning.

6           MS. CORDO:  Good morning, Anne Cordo, Morris,

7  Nichols, Arsht and Tunnell on behalf of the debtors.

8           We have a slightly revised form of omnibus order that

9  has some changes I actually just inter-lineated into it, if I

10 could just run through some of the reductions that certain of

11 the parties agreed to, then I can hand up the omnibus order.

12          Akin Gump has agreed to a voluntary reduction of

13 $1,184.16 at the request of The United States Trustee.

14          THE COURT:  Okay.

15          MS. CORDO:  Crowell & Moring LLP has agreed to a

16 voluntary reduction of $46,298.98 at the request of the

17 debtors.  From the onset, believe should have been billed to

18 the Canadian debtors entities and not the U.S. entities.

19          THE COURT:  Okay.

20          MS. CORDO:  With regard to the fees requested by

21 Lazard, the debtors were all right with the amounts that were

22 requested, however, they were holding prepetition retainers for

23 expenses and fees which we believe at the authorized amounts,

24 those should be reduced by the amounts that they were holding,

25 so actually the amounts they will be paid are reflected in a

1 footnote that count for the offset between the prepetition

2 retainer and what was approved.

3          THE COURT:  Okay.

4          MS. CORDO:  And, then with regards to Mercer, the

5 U.S. Trustee has requested one of their expenses, that we hold

6 that amount pending resolution of the dispute, so the totals

7 have been reduced by $27,000 while we negotiate -- while they

8 negotiate with the United States Trustee as to whether or not

9 that expense or what portion of it should be included.

10          Further, with regards to Mercer, the debtors would

11 just like to reserve their rights to seek contribution or

12 allocation of their fees and expenses from non-debtor

13 affiliates.  They're still doing an audit of their fees to

14 determine if some of the fees that were charged were beneficial

15 to the Canadian estate and not the U.S. estate, so, the debtors

16 just want to reserve their rights to seek contribution or

17 allocation.

18          And, with that, I think that is all of the changes in

19 the order.

20          THE COURT:  All right.  Does anyone else wish to be

21 heard?

22                    (No audible response)

23          THE COURT:  As I had indicated previously, I found

24 the fee applications to be acceptable, subject, obviously, to

25 these revisions, and I'm pleased to sign the order.

1          MS. CORDO:  All right, may I approach, Your Honor?

2          THE COURT:  You may, Ms. Cordo, thank you.

3          MS. CORDO:  I had to handwrite in some of the changes

4    with the United States Trustee.  If maybe you could initial

5    next to those, since those were inter-lineated.

6          THE COURT:  I'm going to do that, yes.

7          MS. CORDO:  Thank you, Your Honor.

8          THE COURT:  You bet.  Thank you, Ms. Cordo. It's a

9    lot of work to keep everybody in line.

10          MS. CORDO:  And I think now we are switching over the

11   CALA case.

12          THE COURT:  Oh, okay, thank you.

13          MS. CORDO:  That is all we had for the debtors this

14   morning.

15          THE COURT:  All right.  Are we ready to switch?

16          MS. SCHWEITZER:  We are.  I'm just grabbing the black

17   line, there are a couple clean ups in the order.

18          THE COURT:  Okay.  You bet.

19          MR. CHENEY:  Your Honor --

20          THE COURT:  Yes.

21          MR. CHENEY:  Matthew Cheney of the Crowell & Moring

22   firm.

23          THE COURT:  Yes, good morning.

24          MR. CHENEY:  Good morning.  I had appeared today just

25   for purposes of the fee application part of the hearing.  May I

1 be excused?

2         THE COURT:  You certainly may, thank you for asking.

3 You certainly may be excused as well as anyone else who was

4 appearing strictly for the first case or for just a limited

5 purpose.

6         MR. CHENEY:  Thank you very much.

7         THE COURT:  Thank you.

8         MR. BOROW:  Thank you, Your Honor, this is Jay Borow

9 for Capstone, I'll sign off as well.

10         THE COURT:  All right.  Have a good weekend.

11         MR. BOROW:  Thank you.

12         MS. SCHWEITZER:  Good morning, again, Your Honor.

13         THE COURT:  Good morning, again, for the record,

14 right?

15         MS. SCHWEITZER:  Absolutely.  Lisa Schweitzer for the

16 debtor in this case of Nortel Networks CALA Inc., and for the

17 Court's edification CALA stands for Carribean and Latin

18 America, it's a U.S. debtor based in Florida.  But the debtors

19 have operations in the CALA region, many operating subsidiaries

20 that are hung under the Canadian parent, NNI. They also have a

21 U.S. company, Nortel Networks CALA, Inc. and this is the entity

22 that has commenced Chapter 11 proceedings earlier this week.

23 So, we're here today on the first day hearings of CALA.

24         Just to give the Court background and for the record,

25 is that the other debtors had filed their petitions for relief

1  under Chapter 11 on January 14th, of 2009 and there were

2  concomitant filings and the CCWA filings in Canada and other

3  administration filings for other European entities also on

4  January 14.

5         At that time, there was a decision not to file Nortel

6  Networks CALA Inc., or what we would call NN CALA, Inc., and at

7  the time, in January, the company was evaluating all their

8  strategic options for the restructuring or reorganization of

9  Nortel as a global enterprise in each company on its own.

10         Since then, as the Court is aware, through overseeing

11  the NNI, the existing debtor cases, that the company has

12  announced the sale of the CDMA and LT assets and that's subject

13  to a pending auction procedure and the company has also

14  publicly announced that it is actively exploring other

15  divestitures of other parts of its business, and when I say the

16  company, the entire Nortel Group.  NN CALA has a de minimis

17  role in the CDMA, LT auction in that it's supposed to

18  -- it's proposed that it would convey limited assets through

19  that auction, including, there would be a transfer of

20  employees, potentially, and they would be selling their laptops

21  and IT equipment related to those employees.  So, it's not a

22  significant dollar amount but it would be a conveyance of

23  assets and there would also be a limited number of NN CALA

24  contracts that NN CALA would work to either assign over to a

25  buyer or to work to have a bundled contract some other way

1 conveyed through entry into new contracts.  And there might be

2 ancillary obligations as well.

3          But from NN CALA's point of view, it's not as

4 material, maybe as the conveyance from NNI and other folks.

5          So, in light of all the announcements and the

6 considerations, there was a decision made by the company that

7 it was time to make a filing for NN CALA to align themselves

8 with a larger restructuring process at this point.

9          The other development in the case, which occurred

10 today, is that the debtors have been in discussions with the

11 PBGC, or the Pension Benefit Guarantee Corporation, regarding

12 the debtors' pension plan.  The pension plan is sponsored by

13 NNI, the parent debtor --

14          THE COURT:  Yes.

15          MS. SCHWEITZER:  -- and the plan had not been

16 terminated until this point and, in fact, the debtors have been

17 making premium payments, the last one made this Wednesday, for

18 a couple million dollars.  And the debtors have been in

19 discussions with the PBGC regarding the treatment of that plan

20 in light of the debtors' filing and the recent announcements

21 and today an action was filed in -- I'm going to get the local

22 venue wrong, but it's in the District of Tennessee, in one of

23 the middle districts, southern district, Tennessee, out there,

24 terminating -- where the PBGC is seeking termination of the

25 plan and that was -- the debtors are aware of that and they're

1  working consensually with the PBGC on that.  To our knowledge,

2  there's no expedited relief being sought, but just so the Court

3  is aware that there might be further work with the PBGC, either

4  in that jurisdiction or that you might see spill over in this

5  jurisdiction, but we're working potentially with them, and

6  that's just been filed today.

7         So, in light of all these facts, the decision was to

8  file Nortel Networks CALA Inc., to bring them in line with the

9  restructuring and enable them to march hand-in-hand with other

10 debtors and to effectuate their own restructuring.

11        So, the first day filing today is consistent with

12 that and consistent with the integration of the debtors'

13 operations, the purpose of the first day filing really is to

14 bring them into the larger debtor case.  And in connection with

15 that, we have two motions pending, which were first the joint

16 administration motion which seeks just to have the cases

17 jointly administered under the larger NNI case, as the lead

18 case.  And then the second motion was to incorporate down the

19 various motions that have been entered into -- in the NNI case,

20 and we tried to -- we've seen it in other cases where people

21 just say, we want to be in part of all the orders, and we tried

22 to be a little more judicious than that, and finding the ones

23 that were actually relevant and bringing them down.

24        THE COURT:  Yes.

25        MS. SCHWEITZER:  And they're attached as exhibit --

1 the lions share of them are attached as Exhibit C to the motion

2 seeking the joinder of the relief.

3          And then there are a couple of them spotlighted,

4 namely the employee motion, and the good news here is that if

5 we could magically pick a date, we picked exactly the perfect

6 date, which is that the debtors had made their filing after

7 they had funded the payroll and the payroll period ends this

8 Friday, so good things happen occasionally in bankruptcy cases

9 and this was one that made it easier.

10          And in that, it was actually more than just payroll

11 but it was the end of the first KERP interim periods, the KERP

12 payment had been satisfied for the first funding period, their

13 milestone period, so the first milestone period had been

14 reached, the payment had been funded and after that, the

15 company had filed for bankruptcy and I believe those payments

16 are being sent out by the payment agent today but they've gone

17 out of the state as of, I believe, Monday night or Tuesday

18 morning --

19          THE COURT:  Okay.

20          MS. SCHWEITZER:  -- before the bankruptcy filing, but

21 the upshot of all that, which is the good news, is that today,

22 we don't need any interim -- any emergency or interim relief

23 with respect to employee payments and if something comes up in

24 the future, we'll let you know, but for now we're okay on that.

25          The second thing is that we have six bank accounts

1  that we need to bring into the cash management motion, or the

2  cash management order and they're attached as, I believe,

3  Exhibit B to the -- it's B or C to the motion.  That there's a

4  schedule, four foreign bank accounts and two U.S. bank accounts

5  and the reason for that is that they have branch offices in

6  these different -- it's Uruguay and Puerto Rico and they have

7  branch offices in these different local territories and

8  countries, so that they need their own local bank accounts to

9  collect payments.  So, we're seeking to have those bank

10 accounts included.

11         The third thing is that there's a foreign vendor,

12 foreign vendor order in place that allowed -- we recognize that

13 we have international operations, even though we're U.S.

14 debtors and there had been a five and a half million dollar cap

15 granted by this Court in the early days of the NNI bankruptcy

16 --

17         THE COURT:  Yes.

18         MS. SCHWEITZER:  -- for the collective use of the

19 original debtors.  The debtors are close to that cap, I think

20 they're in excess of $4 million now and we have a new debtor

21 being added on, which right now the AP is about $1.3 million

22 for NN CALA.  And so -- but we know that's not the end of it,

23 that's just what's in the payable system right now.  NN CALA

24 has a substantial presence overseas, the majority of its

25 suppliers and customers are, in fact, overseas.  So we thought

1 that it was necessary that even though it's a relatively modest

2 amount compared to the cash that they have and compared to

3 their raw claims, that it would be important to have the

4 ability, not the direction, but at least the ability to pay

5 foreign vendors to the extent that we found it critical to do

6 so.

7           So, what we've proposed in here, and the committee is

8 support of and the U.S. Trustee, I understand, doesn't have an

9 objection to, is to increase the cap which would now be a

10 collective cap to $9 million, to give everyone a little bit of

11 cushion but, obviously, we would try to use that conservatively

12 and where necessary.

13          Other than that, I want to hand up, if I can get it

14 through the pile, is that there is a proposal for extending the

15 dates for filing schedules and statements of affairs and Form

16 26 filings, and the like, the monthly operating reports and all

17 that.  So, we had set forth dates which basically push

18 everything out 60 days.  After discussion with the U.S.

19 Trustee, there was one date that we wanted to push out to the

20 end of September, September 30th, rather than the middle of

21 September and that's the deadline to file the statement

22 pursuant to 2015.3 or the Form 26 statements.

23          THE COURT:  Yes, yes.

24          MS. SCHWEITZER:  So, we propose that we would do that

25 to September 30th.

1           THE COURT:  Okay.

2           MS. SCHWEITZER:  And then everything else is extended

3  60 days, with the right to seek further relief, if necessary,

4  although we, obviously, have worked to do that, it's a smaller

5  number of creditors in the case and we're hoping to bring them

6  up to speed as quickly as possible.  So, if I could approach,

7  you could look through the black line.

8           THE COURT:  Please.  Thank you.  Thank you, Ms.

9  Schweitzer.

10          MS. SCHWEITZER:  And you can flip through, but I

11 think there is one or two other typographical changes of

12 references to exhibits being attached to motions, versus

13 orders.  And other than that, I think we're -- those are the

14 main highlights of the case, at that point.

15          I can hand up, also for you, that we just have the --

16 did I just give you the black line, not the clean version

17 because I have a clean version --

18          THE COURT:  You gave me both.

19          MS. SCHWEITZER:  Okay.  Then I have a clean verison

20 of the joint administration motion as well.

21          THE COURT:  Okay.

22          MS. SCHWEITZER:  And we have attached also to the

23 first day motion the order enforcing Section 362, the stay.

24 So, this is one that's just conformed over for CALA.

25          THE COURT:  Yes.

1       MS. SCHWEITZER:  So, it's just an exhibit, we took it

2  out just to hand up to you.  And then may I approach to hand up

3  those two other orders?

4       THE COURT:  You may, Ms. Schweitzer, of course.

5  Thank you.  Thanks, again.  Yes.

6       MS. SCHWEITZER:  And in support of the motions, we

7  have present in the courtroom Mr. John Doolittle, who is the --

8       THE COURT:  You're not on television this time.

9       MS. SCHWEITZER:  Tell him how much you appreciate it

10  because you flew in from Toronto and --

11       THE COURT:  Thank you, yes.  You bet, you bet.

12       MS. SCHWEITZER:  So, we thought it was important to

13  have a live witness here on our first day.  But, that said, Mr.

14  Doolittle, who is the treasurer of NN CALA Inc., has submitted

15  an affidavit in support of the first day relief and what I

16  would do, in lieu of the fact that there are no objections of

17  which we're aware and the factual predicate set forth in there,

18  that I would like to tender his declaration instead of

19  proffering other evidence and, obviously, he's here available

20  for cross examination or answering any questions that people

21  may have, but in light of the relief that we think is just

22  bringing them in line with the larger case and the lack of

23  objections, I'd like to proffer the testimony through the

24  declaration.

25       THE COURT:  Does anyone have any objection to that?

1                    (No audible response)

2          THE COURT:  I certainly will admit that declaration

3    and I think that it amply supports the applications.

4          MS. SCHWEITZER:  Great, Your Honor.  So, that

5    summarizes the relief and unless you have other questions we

6    would move to have those orders entered.

7          THE COURT:  All right.  Does anyone wish to be heard?

8    Mr. Samis, good morning.

9          MR. SAMIS:  Good morning, Your Honor, Chris Samis

10   here from Richards, Layton and Finger on behalf of the Official

11   Committee of Unsecured Creditors.

12         Your Honor, I rise for the limited purpose of

13   introducing Mr. Brad Kahn of the Akin Gump firm to the Court

14   today and also moving to orally admit him, so that he may

15   address the Court.  We will, of course, follow up with the

16   appropriate paperwork.

17         THE COURT:  That's perfectly fine.  Welcome, you are

18   admitted.

19         MR. KAHN:  Thank you.

20         THE COURT:  It's good to see you here, as well as Mr.

21   Hodara, of course.  Good morning.

22         MR. HODARA:  Thank you, Your Honor.  Good morning.

23         THE COURT:  Good morning.

24         MR. KAHN:  Good morning, Your Honor, Brad Kahn, Akin,

25   Gump, Strauss, Hauer & Feld on behalf of the Official Committee

1 of Unsecured Creditors.

2          The committee has no objection to the relief

3 requested with respect to the CALA entity.  As the motion

4 related to the application of previous orders, including the

5 cash management order, the committee wishes to reserve its

6 rights with respect to any issues relating to the transfer

7 pricing, which I know this Court is somewhat aware of.

8          THE COURT:  Yes, yes.

9          MR. KAHN:  And that's all.

10          THE COURT:  All right, okay.  Anyone else?  No?

11 Well, clearly, you know, this is -- it's obviously -- these

12 applications have some substantive impact, but I think they're

13 largely procedural in this context because these cases have

14 been pending for some time and clearly this debtor has filed

15 for relief under the bankruptcy code and there is, obviously,

16 no sense putting the debtor through all of the requirements of

17 litigating all of the orders that have been entered heretofore

18 and I am pleased to grant all of the applications.

19          MS. SCHWEITZER:  Thank you, Your Honor.  Just so you

20 know what's coming down the pike --

21          THE COURT:  Yes, I understand there's a hearing on

22 Monday.

23          MS. SCHWEITZER:  There is a hearing on Monday, so --

24 and thank you, Your Honor, for making the time for us on a

25 short basis.

1          THE COURT:  Sure.

2          MS. SCHWEITZER:  The hearing on Monday was -- and

3  we're intending to file a motion as soon as we get back to the

4  office today, to join NN CALA as a debtor into the CDMA LTE

5  sale auction process.

6          THE COURT:  Okay.

7          MS. SCHWEITZER:  As I said, it's relatively small

8  assets, I don't want to say de minimis, but it's small assets

9  and a couple contracts, that they already contemplated that

10  they would be a party to the larger asset sale agreement and

11  the assets and contracts could be conveyed through that.

12          Obviously, now that we're in bankruptcy, we have to

13  deal with the Section 365 notice and objection periods. But

14  what we were hoping to do is to file the motion today, have it

15  heard in shortened notice, on Monday, solely for the purpose of

16  approving their joinder into the bidding procedures so that if

17  people are bidding on the group assets that they'll be -- you

18  know, those bids will count towards NN CALA for any assets that

19  are conveyed.  And, also that they would approve notice

20  procedures for the contract counter parties that we've gotten

21  fax and e-mail numbers and we're going to try and go as quick

22  as we can to notify contract parties to bring them in line,

23  because overall, without speaking to any particular counter

24  party, we've generally heard creditors have received this sale

25  well and they might be anxious to have their contracts

**J&J COURT TRANSCRIBERS, INC.**

1  transferred over quickly as much as, you know, having the time

2  to consider it.

3         So, we'll file the motion today but the contemplation

4  would be to bring them in line with the bidding procedures.

5         To refresh your recollection as to what the bidding

6  procedures are, is that the auction is now set to be nest

7  Friday, the 24th.

8         THE COURT:  Right.

9         MS. SCHWEITZER:  -- the bids would be due the 21st.

10 Obviously, if there were an issue around CALA, we're going to

11 be accommodating, but we're not aware that this is material --

12 again, without characterizing anyone's position, this isn't in

13 the larger scheme material to the bids that we know of.

14        So, the bids would come in on the 21st, we would

15 notify everyone on the 23rd of what the lead bid will be, the

16 24th is the auction, until it ends and, hopefully, it'll be a

17 hearty auction.

18        THE COURT:  I hope so.

19        MS. SCHWEITZER:  And then the supplemental sale

20 objections to the winning bidder, if it's different than MSN,

21 the stalking horse bid, are due the 24th, next Monday.  The

22 hearing in the U.S. -- I'm sorry, the 27th which is Monday,

23 then the 28th which is Tuesday, a week from Tuesday, then is

24 the sale hearing in the U.S.  And so that's -- we would try to

25 bring CALA into that sale hearing and then on the 30th, that's

1 the hearing in Canada, to approve the sale and the sale could

2 close as early as the end of the month or whenever all the

3 conditions have been satisfied.  So, that's just a framework of

4 what's coming down the pike in the next two weeks.

5          THE COURT:  Okay.

6          MS. SCHWEITZER:  The other thing, just -- not to be

7 hear today, but just to tell Your Honor, is that this week we

8 filed a motion to establish a bar date in this case --

9          THE COURT:  I noticed.

10          MS. SCHWEITZER:  -- for the end of September.

11          THE COURT:  Yes.

12          MS. SCHWEITZER:  So, that will be our next progress

13 towards moving the case forward and we expect that the Canadian

14 debtors will file a motion in the next week aligning themself

15 to the September 30th date, because we at all times try to move

16 together, to minimize confusion to the extent we can.

17          So, that's not today's issue, but those are other

18 things that are coming down the pike soon.

19          THE COURT:  It's good to know that.

20          MS. SCHWEITZER:  Yes.

21          THE COURT:  Let me just ask, will anyone have any

22 objection to this being heard on a shortened notice?  Mr.

23 Hodara?

24          MR. HODARA:  Good morning, Your Honor.

25          THE COURT:  Yes, good morning.

1          MR. HODARA:  The Creditors' Committee will have no

2   objection to that and with Your Honor's permission, it'll be

3   our intention on Monday for Mr. Samis of the Richards Layton

4   firm to handle that on behalf of the Creditors' Committee --

5          THE COURT:  Absolutely,

6          MR. HODARA:  -- and Akin Gump will not appear here.

7          THE COURT:  All right.  We'll miss you, but you're in

8   good hands with Mr. Samis and his colleagues, that's for sure.

9          MR. HODARA:  Agreed.

10         THE COURT:  And I understand that this is really more

11  of a -- what's the word I'm trying to look for, just to make

12  sure that this proceeds in an organized and unitary fashion.

13  So, I wouldn't expect a lot of controversy and I certainly --

14  the reason I asked about the shortened notice is, I want to

15  make certain that I can enter that order promptly, without any

16  delay.

17         MR. HODARA: Thank you, Your Honor.

18         THE COURT:  Okay.  Thank you, Mr. Hodara.

19         MS. SCHWEITZER:  And, the U.S. Trustee's Office is

20  welcome to speak, but my understanding is they don't have an

21  objection to the timing as well.

22         THE COURT:  And, Mr. Tinker is not shy, so I didn't

23  even think he objected because he didn't move.

24         MS. SCHWEITZER:  Exactly.  We love the record,

25  though, as debtors, right?

1          THE COURT:  Yes, you bet and I'm glad you said

2    something.

3          MS. SCHWEITZER:  No, that's fine.  So, obviously, it's

4    not for decision today, but we wanted to preview it for you,

5    while you have everyone in the courtroom, so that we can -- we

6    agree with you it's our intent to just align and streamline and

7    to make the process smoother for the bidders and for the

8    creditors and we feel this is the best way to maximize value in

9    the case.

10         THE COURT:  You bet.

11         MS. SCHWEITZER:  So, we will be back on Monday, it'll

12   likely be me, but you'll see one of the good debtor team down

13   here --

14         THE COURT:  Super.

15         MS. SCHWEITZER:  -- to present that and then the next

16   time we'll be before you is on the 28th for the actual sale

17   hearing and we also understand your court had shuffled around a

18   little bit to make more time for us as we do appreciate that as

19   well.

20         THE COURT:  And I assume that an hour on Monday will

21   be more than sufficient?

22         MS. SCHWEITZER:  Absolutely.

23         THE COURT:  Okay.  I think it's helpful to do it in

24   the afternoon, given how tight things are to begin with.

25         MS. SCHWEITZER:  We're willing to work completely

1  around your schedule.  We understand you had set aside two

2  o'clock, but we appreciate any time that you can have for us on

3  Monday, on such shortened notice.

4       THE COURT:  That is fine, and I'll also say, as I

5  usually do, that if there are any problems that arise at the

6  auction, please don't hesitate to contact us, and if we can be

7  helpful, you know, right there and then, often times that makes

8  the sale hearing a lot simpler.

9       MS. SCHWEITZER:  Absolutely.  We appreciate your

10 offer and we hope to not have to take you up on it as well, so,

11 but as you said, the offer itself might solve problems and we

12 hope there are on problems.

13      THE COURT:  It often does.

14      MS. SCHWEITZER:  Great.  Well, thank you, Your Honor.

15 So, I think those are -- that's where we're at in the case and

16 good news for the -- we're going to finish out the month on a

17 positive note here.  And so, we'll see you on Monday, unless

18 there's anything else that the Court would like to address

19 today.

20      THE COURT:  That should do it.

21      MS. SCHWEITZER:  Okay.  Thank you --

22      THE COURT:  I'll look for you on Monday.  I'm just

23 going to finish signing these orders real quickly, and they're

24 all done.

25      MS. SCHWEITZER:  Perfect.

**J&J COURT TRANSCRIBERS, INC.**

1           THE COURT:  And thank you and it was well done as

2  always.

3           MS. SCHWEITZER:  Thank you, Your Honor.

4           THE COURT:  And I will look forward to seeing you on

5  Monday and I'll miss our friends from Akin Gump, but look

6  forward to seeing Mr. Samis and Mr. Tinker, of course, and I

7  wish everyone a good weekend.

8           MS. SCHWEITZER:  Your Honor, one question --

9           THE COURT:  Yes.

10          MS. SCHWEITZER:  On Monday, just -- if there are no

11 objections, would you like a live witness or a telephonic

12 witness to appear or are you comfortable with the attorneys

13 presenting the motion?

14          THE COURT:  Very comfortable with the attorneys.

15          MS. SCHWEITZER:  And, obviously, I don't mean to put

16 you on the spot, not having seen the motion, but if it changes,

17 let us know.

18          THE COURT:  I will do so, but I think this type of

19 motion is straightforward enough that I think, certainly, if

20 you have someone on the telephone or just standing by in the

21 event there is an issue, or anyone wishes to ask any questions,

22 that would be sufficient.

23          MS. SCHWEITZER:  Absolutely.  Thank you, Your Honor.

24          THE COURT:  All right.

25          MS. SCHWEITZER:  Okay.


                    **J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  With that, we'll stand in recess, a good

2   weekend to everyone.

3          MR. ABBOTT:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MS. SCHWEITZER:  Thank you.

6          THE COURT:  Thank you.

7

8                          *  *  *  *  *

9                  **C E R T I F I C A T I O N**

10

11      I, ELAINE HOWELL, court approved transcriber, certify that

12   the foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the

14   above-entitled matter and to the best of my ability.

15

16

17   /s/ Elaine Howell          Date: July 29, 2009

18   ELAINE HOWELL

19   J&J COURT TRANSCRIBERS, INC.

20

21

22

23

24