IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

            Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 1131**

------------------------------------------------------------X

### ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363 AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL, AND (G) SETTING A DATE FOR THE SALE HEARING

Upon the motion, dated July 20, 2009, of Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") for orders pursuant to sections 105, 107(b)(1), 363 and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), as more fully described in the Motion, (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Approving the Bidding Procedures,[2] (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases [D.I. 1131] (the "Motion"); and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held on August 4, 2009 (the "Hearing"); and upon the evidence adduced at, the arguments of counsel at, and the entire record of the Hearing; and after due deliberation thereon; and the objections filed having been considered; and good and sufficient cause appearing therefore, it is hereby

**FOUND AND DETERMINED THAT:**

A.     The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

B.     The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1. Pursuant to Bankruptcy Rule 7052, findings

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

C. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections, as defined below) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

D. The Debtors' proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice"), and the Debtors' proposed publication notice, substantially in the form attached to the Motion as Exhibit F (the "Publication Notice"), are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction and the Sale Hearing, and no other or further notice is required.

E. The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate, and are designed to maximize recovery with respect to the sale of the Assets.

F. The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Debtors' Assets, entry into the Asset and Share Sale Agreement (the "Agreement") as a "stalking horse" sale agreement and the payment of the Bid Protections (as defined below) under the circumstances, timing, and procedures set forth herein, in the Motion and in the Agreement.

G. Entry into the Agreement with Avaya Inc. (the "Purchaser"), a copy of which is attached to the Motion as Exhibit A, as a "stalking-horse" sale agreement is in the best interest of

the Debtors and the Debtors' estates and creditors. The Agreement, along with the EMEA Agreement, will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

H.  The Break-up Fee and Expense Reimbursement (each as defined below) are fair and reasonable, and provide a benefit to the Debtors' estates and creditors.

I.  The Debtors' payment of the Bid Protections is, to the extent due and owed by the Debtors under Section 9.2 of the Agreement, under the conditions set forth in, and in accordance with the terms of, the Agreement, the Motion and this Order, (a) an actual and necessary cost of preserving the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Purchaser will continue to pursue the proposed Agreement to undertake the sale of the Debtors' Assets.

J.  The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1. Those portions of the Motion seeking approval of the Debtors' entry into the Agreement, the Bidding Procedures, the Bid Protections, the Notice Procedures, the Assignment Procedures, authorizing the Debtors to file certain documents under seal, and setting the time, date and place of the Sale Hearing are GRANTED.

2. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

**The Bidding Procedures**

3.      The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4.      The Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

5.      The Bidding Procedures shall apply to Qualified Bidders, the conduct of the sale of the Assets and the Auction.

**The Assignment Procedures**

6.      The Assignment Procedures attached hereto as Exhibit 2 are hereby authorized, approved and made part of this Order as if fully set forth herein.

7.      The Court recognizes that the identities of the Customer Contract Counterparties (as defined in the Motion) and any affidavits of service that identify such parties constitute confidential commercial information, and therefore authorizes that any lists disclosing the identities of the Customer Contract Counterparties and affidavits to be filed in connection with the Motion and the procedures approved herein may be filed under seal.

8.      The Debtors shall provide unredacted lists of Designated Customer Contracts and affidavits of service that identify the Debtors' customers to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) the title of the list of Designated Customer Contracts and

affidavits of service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

9. Recognizing that providing individual notice to each Customer Contract Counterparty and each Lease Counterparty will ensure that such parties will receive adequate notice, the Court hereby waives the requirements of Bankruptcy Rule 6006(f)(6).

10. To facilitate the assumption and assignment of the Designated Agreements, the anti-assignment provisions of the Designated Agreements, if any, are hereby deemed unenforceable pursuant to section 365(f) of the Bankruptcy Code.

11. Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file one or more omnibus notices, pursuant to the Assignment Procedures, incorporating all the Executory Contracts and unexpired leases to be either assumed and assigned or assumed and subleased.

12. The Debtors recognize that the United States, and certain of its departments, agencies and instrumentalities, other than the Pension Benefit Guaranty Corporation (collectively, the "United States Government"), may be a counterparty to certain Enterprise Agreements. To the extent that any Enterprise Agreement with the United States Government is designated for assumption and assignment pursuant to the Assignment Procedures, the Debtors will seek the consent of the applicable governmental counterparty in compliance with 41 U.S.C. § 15 and 31 U.S.C. § 3727 and comply with the applicable laws, regulations and novation procedures.

13. The Debtors shall use commercially reasonable efforts to provide Flextronics Corporation and Flextronics Telecom Systems Ltd (together, "Flextronics") with notice prior to the Sale Hearing of the proposed treatment by the Purchaser under the Agreement (as defined in

the Motion) of executory contracts between one or more of the Debtors and Flextronics, provided, however, that the disclosure of the treatment of such executory contracts by the Purchaser or any other Qualified Bidder is not a prerequisite to a determination of Qualified Bidder status, participation in the Auction, the selection of a Successful Bidder or the collaboration of the Debtors with the Successful Bidder to close the Transaction.

### Break-Up Fee and Expense Reimbursement

14. To the extent due and owed by the Debtors under Section 9.2 of the Agreement, the Debtors are authorized to pay to the Purchaser: (i) two-thirds (2/3) of an amount in cash equaling $14.25 million minus one-half of any Expense Reimbursement (as defined below) paid by the Sellers (the "Break-Up Fee") and (ii) two-thirds (2/3) of an amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Purchaser in connection with the preparation, execution and performance of the Agreement and the transactions contemplated thereby, including all filing and notification fees, and all fees and expenses of the Purchaser's representatives (the "Expense Reimbursement, and together with the Break-Up Fee, the "Bid Protections"), provided that the Expense Reimbursement will be capped at $9.5 million.

15. The Debtors' obligation to pay the Break-Up Fee and Expense Reimbursement, under the conditions set forth in, and in accordance with the terms of, Section 9.2 of the Agreement, shall survive termination of the Agreement and shall constitute an administrative expense of the Debtors under section 503(b) of the Bankruptcy Code.

16. Except as provided in Section 5.36 of the Agreement, the Break-Up Fee and/or the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Purchaser as a result of the failure of the transactions contemplated by the Purchase Agreements to be

consummated, or in respect of any Liabilities arising under, or relating to, the Purchase Agreements or the transactions contemplated thereby prior to the Closing, including as a result of an intentional breach of the Purchase Agreements prior to the Closing.

17. Under no circumstances shall any party to the Agreement be liable for punitive damages (including multiple damages assessed as a punitive measure) or special damages arising out of, or in connection with, the Agreement or the transactions contemplated thereby or any breach or alleged breach of any of the terms thereof or of the EMEA Agreement or any other Transaction Document (as defined in the Agreement), including damages alleged as a result of tortious conduct, or for specific performance of the obligations it is to perform thereunder at or prior to the Closing nor shall any Nortel Party (as defined in the Agreement) be liable for tortious interference with the Purchaser's rights under the Agreement nor shall any Avaya Party (as defined in the Agreement) be liable for tortious interference with the Sellers' rights under the Agreement.

## The Notice Procedures

18. The notices, in substantially the same forms as annexed to the Motion as Exhibits E (Form of Sale Notice), F (Form of Publication Notice), G (Form of Initial Customer Notice), H (Form of Final Customer Notice), I (Form of Lease Notice), J (Form of Initial Omnibus Notice) and K (Form of Final Omnibus Notice) are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale Hearing and the Assignment Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

19. Immediately after entry of this Order (or as soon thereafter as reasonably practicable) the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail upon (i) the U.S. Trustee, (ii) counsel to the Purchaser, (iii) counsel to the Committee, (iv) counsel to the Bondholder Group, (v) all

entities known to have a claim, lien, interest or encumbrance against the Debtors' interest in the Assets, the Shares, the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases, (vi) all counterparties to the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases, (vii) the Monitor, (viii) the Administrators, (ix) the Internal Revenue Service and applicable federal and state taxing authorities, (x) the Securities and Exchange Commission, (xi) the Pension Benefit Guaranty Corporation and all regulatory authorities of the Sellers' pension plans in Canada and the United Kingdom, (xii) the attorneys general for all states in which the Assets are located, (xiii) the EPA and relevant state environmental protection agencies, (xiv) the Department of Labor and similar state labor or employment agencies, (xv) the United States Department of Justice, (xvi) each of the entities that had received an invitation from the Sellers to acquire or had expressed an interest in acquiring the Assets (which shall be filed under seal), and (xvii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

20. The Court recognizes that the identities of the entities that received an invitation from the Sellers to acquire, or that previously expressed an interest in acquiring, the Assets and affidavits of service that identify such parties, constitute confidential commercial information, and therefore authorizes that any such affidavits to be filed in connection with the Motion may be filed under seal in accordance with the procedures set forth above for lists and affidavits of service that identify the Debtors' customers.

21. As soon as reasonably practicable after entry of this Order and the Canadian Sales Process Order, but in any event no more than three (3) Business Days after the entry of such orders, the Sellers (including the Debtors) shall publish notice of the Bidding Procedures, the time and place of the Auction, the time and place of the Sale Hearing, and the objection deadline

for the Sale Hearing, substantially in the form attached to the Motion as Exhibit F, in <u>The Wall Street Journal</u> (National Edition), <u>The Globe & Mail</u> (National Edition) and <u>The Financial Times</u> (International Edition).

22. As the Purchaser designates the Designated Customer Contracts to be assumed by the relevant Debtor and assigned to the Purchaser as of the Closing Date, the Debtors will, from time to time, serve an Initial Customer Notice on each Customer Contract Counterparty by first class mail. The Debtors will also send a Final Customer Notice to each Customer Contract Counterparty by first class mail. The Debtors will file under seal with the Court and deliver a full, alphabetized list of Customer Contract Counterparties, along with an affidavit or declaration confirming that each of the Initial Customer Notice and the Final Customer Notice have been sent to each Customer Contract Counterparty, to (i) counsel to the Purchaser, (ii) the U.S. Trustee, (iii) the Monitor, (iv) counsel to the Committee and (v) counsel to the Bondholder Group.

23. As the Purchaser designates Other Designated Contracts, the Debtors will, from time to time file with the Court one or more Initial Omnibus Notices, and serve each omnibus notice on each Other Contract Counterparty whose Other Designated Contract appears on such omnibus notice. The Debtors will also send one or more Final Omnibus Notices to each Other Contract Counterparty by first class mail.

24. As the Purchaser designates the Designated Leases, the Debtors will, from time to time but no later than fifty (50) days following the Signing Date, serve a Lease Notice on each Lease Counterparty by first class mail.

25. The Initial Notices, the Final Notices and the Lease Notice, in substantially the same forms as annexed to the Motion as Exhibits G, H, I, J and K, are sufficient to provide

effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all Counterparties of the Debtors' intent to assume and assign the Designated Agreements, and are hereby approved.

### Objection Procedures

**A.     Objections to Sale**

26.     All objections to the relief requested in the Motion pertaining to approval of the sale of the Assets, shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the Sale Hearing. All objections must also be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the Bankruptcy Rules and the Local Rules, (iv) filed with the Clerk of the Bankruptcy Court, 824 Market Street, Wilmington, Delaware 19801 by **4:00 p.m. (ET) on September 4, 2009** (the "General Objection Deadline"); and (v) served in accordance with the Local Rules so as to be received on or before the General Objection Deadline by the following: (a) counsel to the Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax: (212) 225-3999 (Attention: James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax: (302) 658-3989 (Attention: Derek C. Abbott); (b) counsel to the Purchaser: Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Fax: (646) 728-1662 (Attention: Mark I. Bane, and Anne H. Pak); (c) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Fax: (212) 872-1002 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attention: Christopher M. Samis); (d) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy LLP, One Chase

Manhattan Plaza, New York, New York 10005, Fax: (212) 822-5735 (Attention: Roland Hlawaty); and (e) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801.

27. Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

28. Supplemental objections to issues arising from and in connection with the Auction and/or the Debtors' selection of a Successful Bidder other than the Purchaser must be filed by **12:00 p.m. (ET) on September 14, 2009**.

29. The foregoing requirements are collectively referred to herein as the "General Objection Procedures." Only those objections made in compliance with the General Objection Procedures will be considered by the Court at the Sale Hearing. The failure of any objecting person or entity to file its objections by the General Objection Deadline and in accordance with the General Objection Procedures will be a bar to the assertion, at the Sale Hearing or thereafter, of any objection pertaining to the Auction or the Sale Transaction (excluding, however, objections relating to the assumption and assignment of any Designated Agreement, which must be filed in accordance with the Assignment Procedures).

**B. Objections to Assumption and Assignment or Assumption and Sublease**

*Initial Objections*

30. Any Customer Contract Counterparty or Other Contract Counterparty that wishes to object to any matter set forth in the Initial Notices with regards to the proposed assumption and assignment of a Designated Agreement, including without limitation the adequate assurance of future performance by the Purchaser under the applicable Designated Agreement or the Interim Cure Amount, if any, must file a written objection with the Court no later than ten (10) days following service of the Initial Notice, and serve notice of such objection on (a) counsel to

the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

31.     To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed to have (i) consented to the assumption and assignment of the applicable Designated Agreement; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Interim Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment, subject only to the resolution of the Tail Cure Amount, if any.

*Final Objections*

32.     Any Customer Contract Counterparty or Other Contract Counterparty that wishes to object to the Tail Cure Amount in the Final Notice must file a Final Cure Objection with the Court no later than ten (10) days following service of the Final Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

33.     To the extent that any Customer Contract Counterparty or Other Contract Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to such Tail Cure Amount, if any, and to the assumption and assignment of the Designated Agreement; (ii) agreed that all defaults under the Designated Agreement arising or continuing prior to the effective date of the assignment have been cured such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the effective date of the assignment, and from and after the effective date of the assignment, the Designated Agreement shall remain in full force and

effect for the benefit of the Purchaser and the Counterparty in accordance with its terms; and (iii) waived any right to terminate the Designated Agreement or designate an early termination date under the applicable Designated Agreement as a result of any default that occurred or was continuing prior to the effective date of the assignment.

*Lease Objections*

34. Any Lease Counterparty that wishes to object to any matter pertaining to the proposed assumption and assignment or assumption and sublease of a Designated Lease, including without limitation the adequate assurance of future performance by the Purchaser under the applicable Designated Lease or the Cure Amount, if any, then such Lease Counterparty must file a written objection with the Court no later than ten (10) days following service of the Lease Notice, and serve notice of such objection on (a) counsel to the Debtors, (b) counsel to the Purchaser, (c) counsel to the Committee and (d) counsel to the Bondholder Group, each at the addresses set forth in the Assignment Procedures.

35. To the extent that any Lease Counterparty does not timely serve an objection as set forth directly above, such Counterparty will be deemed to have (i) consented to the assumption and assignment or assumption and sublease of the applicable Designated Lease; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to the Cure Amount, if any; and (iv) agreed that the terms of this Order and the Sale Order shall apply to the assignment or sublease.

***Certain Exceptions to Objection Deadlines***

36. Notwithstanding anything to the contrary in the Assignment Procedures, the United States Government must file a written objection with the Court no later than forty-five (45) days following the service of any Initial or Final Notice.

37. Notwithstanding anything to the contrary in the Assignment Procedures, Flextronics must file a written objection with the Court no later than thirty (30) days following the service of any Initial or Final Notice.

***Resolution of Objections to Assumption and Assignment or Assumption and Sublease***

38. Upon filing of an objection by a Counterparty, the Debtors will initiate a meeting or teleconference with the objecting Counterparty and the Purchaser to consensually resolve any timely served objection. If the Debtors, the Purchaser and the Counterparty are unable to consensually resolve any timely served objection within fifteen (15) days ("Consensual Resolution Deadline"), the Debtors shall be required to respond to such objection within thirty (30) days after the Consensual Resolution Deadline.

39. To the extent that an objection by a Counterparty is not resolved prior to the Closing Date, the Debtors, in consultation with the Purchaser, may elect to (i) not assume and assign or assume and sublease such Designated Agreement, (ii) postpone the assumption and assignment or assumption and sublease of such Designated Agreement until the resolution or adjudication of such objection or (iii) in the case of a Cure Objection, the relevant party responsible for payment of the Cure Amount under Section 2.1.7 of the Agreement shall segregate any disputed Cure Amount pending the resolution or adjudication of any such objection, in which case the Debtors shall be permitted to assume and assign or assume and sublease such Designated Agreement as of the Closing Date. Any Cure Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a condition subsequent to such

assumption and assignment or assumption and sublease by the relevant party responsible for payment of the Cure Amount under Section 2.1.7 of the Agreement.

### The Sale Hearing

40. The Sale Hearing shall be held on <u>September 15, 2009 at 9:00 a.m. (ET)</u> before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, to consider the issuance and entry of an order, <u>inter alia</u>, approving the sale of the Debtors' rights, title and interests in and to the Assets as set forth in the Agreement. In accordance with the terms of the Agreement, the Debtors may adjourn the Sale Hearing one or more times without further notice by making an announcement in open court or by the filing of a hearing agenda announcing the adjournment.

### Other Relief Granted

41. In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

42. Nothing in this Order, the Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

43. The Debtors are authorized and empowered to take such steps, expend such sums of money, and do such other things as may be necessary to implement and effect the terms and requirements established by this Order.

44. The Debtors are hereby authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

45. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its

entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

46. All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as they pertain to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

47. The provisions of Bankruptcy Rules 6004(h) and 6006(d) staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall be effective immediately upon entry of this Order.

48. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: August 4, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE