option of Landlord, terminate all or any existing sublease or may, at the option of Landlord, operate as an assignment to Landlord of Tenant's interest in any or all such subleases.

18.2 For purposes of this Article 18, "Transfer" shall also include a sale or transfer of all or substantially all of Tenant's assets or of fifty percent (50%) or more of the stock of Tenant if Tenant's stock is not publicly traded; or the sale or transfer of fifty percent (50%) or more of the beneficial ownership interest in Tenant if Tenant is a partnership or other business association.

18.3 If Tenant desires the consent of Landlord to a Transfer, Tenant shall submit to Landlord, at least twenty (20) business days prior to the proposed effective date of the Transfer, a written notice (the "Transfer Notice") which includes (a) the name of the proposed sublessee or assignee, (b) the nature of the proposed sublessee's or assignee's business, (c) the terms and provisions of the proposed sublease or assignment, and (d) current financial statements and information on the proposed sublessee or assignee. Upon receipt of the Transfer Notice, Landlord may request additional information concerning the Transfer or the proposed sublessee or assignee (the "Additional Information"). Subject to Landlord's rights under Section 18.6, Landlord shall indicate its response with respect to any proposed assignment or sublease (excluding an encumbrance or transfer by operation of law), which consent or lack thereof shall be provided within twenty (20) business days of receipt of Tenant's Transfer Notice; provided, however, Tenant hereby agrees that it shall be a reasonable basis for Landlord to withhold its consent if Landlord has not received the Additional Information requested by Landlord. Landlord shall not be deemed to have unreasonably withheld its consent if, in the judgment of Landlord: (i) the transferee is of a character or engaged in a business which is not in keeping with the standards or criteria used by Landlord in leasing the Project, or the general character or quality of the Project; (ii) the financial condition of the transferee is such that it may not be able to perform its obligations in connection with this Lease; (iii) the transferee is a tenant of or negotiating for space in the Project; provided that there is or will be sufficient space in the Project for such tenant, (iv) the transferee is a governmental unit; (v) an Event of Default by Tenant has occurred; (vi) in the judgment of Landlord, such a Transfer would violate any term, condition, covenant, or agreement of Landlord involving the Project or any other tenant's lease within it; or (vii) any other basis which Landlord reasonably deems appropriate. Tenant hereby waives any right to terminate the Lease and/or recover damages as remedies for Landlord wrongfully withholding its consent to any Transfer and agrees that Tenant's sole and exclusive remedy therefor shall be to seek specific performance of Landlord's obligation to consent to such Transfer. In its sole discretion, Landlord may waive any of the foregoing conditions, including the time periods set out for requests for consent to a Transfer. Notwithstanding the foregoing, if Tenant proposes on or before October 31, 2009 to sublease, more than fifty percent (50%) of the Premises to a purchaser of Tenant's enterprise business that would use a substantial part of the Premises, then Landlord agrees that it will provide its consent (or denial) of such proposed sublease to such purchaser within five (5) business days of the submission of the Transfer Notice (or, if applicable, any Additional Information that is requested). In addition, Landlord agrees that absent any material adverse change in the business or financial condition of ***[Avaya, Inc.]*** ("Avaya") between the date hereof and the date of any proposed Transfer, Landlord approves Avaya as a subtenant of the Premises, or if the proposed subtenant is a subsidiary or affiliate of Avaya, approves such subsidiary or affiliate so long as Avaya guarantees the obligations of such

proposed subtenant. The foregoing approval of Avaya is not in derogation of Landlord's right to reasonably consent to the terms of the sublease as provided elsewhere in this Article 18, such as the terms and conditions of the sublease documentation.

18.4    Landlord and Tenant agree that, in the event of any approved (or deemed approved) assignment or subletting, the rights of any such assignee or sublessee of Tenant herein shall be subject to all of the terms, conditions, and provisions of this Lease, including, without limitation, restriction on use, assignment, and subletting and the covenant to pay Rent. So long as an Event of Default has occurred and is continuing, Landlord may collect Rent directly from such assignee or sublessee and apply the amount so collected to the Rent herein reserved. No such consent to or recognition of any such assignment or subletting shall constitute a release of Tenant or any guarantor of Tenant's performance hereunder from further performance by Tenant or such guarantor of covenants undertaken to be performed by Tenant herein. Tenant and any such guarantor shall remain liable and responsible for all Rent and other obligations herein imposed upon Tenant, and Landlord may condition its consent to any Transfer upon the receipt of a written reaffirmation from each such guarantor in a form acceptable to Landlord (which shall not be construed to imply that the occurrence of a Transfer without such a reaffirmation would operate to release any guarantor). In any case where Tenant desires to assign, sublease or enter into any related or similar transaction, whether or not Landlord consents to such assignment, sublease, or other transaction, Tenant shall pay any reasonable attorneys' fees incurred by Landlord in connection with such assignment, sublease or other transaction, including, without limitation, fees incurred in reviewing documents relating to, or evidencing, such assignment, sublease, or other transaction. All documents utilized by Tenant to evidence any subletting or assignment for which Landlord's consent has been requested and is required hereunder, shall be subject to prior approval (not to be unreasonably withheld, conditioned or delayed) by Landlord or its attorney.

18.5    Tenant shall be bound and obligated to pay Landlord a portion of any sums or economic consideration payable to Tenant by any sublessee, assignee, licensee, or other transferee, within ten (10) days following receipt thereof by Tenant from such sublessee, assignee, licensee, or other transferee, as the case might be, as follows:

(a)    In the case of an assignment, fifty percent (50%) of any sums or other economic consideration received by Tenant as a result of such assignment shall be paid to Landlord after first deducting the unamortized cost of reasonable leasehold improvements paid for by Tenant in connection with such assignment and reasonable cost of any real estate commissions and reasonably attorneys' fees incurred by Tenant in connection with such assignment.

(b)    In the case of a subletting, fifty percent (50%) of any sums or economic consideration received by Tenant as a result of such subletting shall be paid to Landlord after first deducting (i) the Rent due hereunder prorated to reflect only Rent allocable to the sublet portion of the Premises, (ii) the reasonable cost of tenant improvements made to the sublet portion of the Premises by Tenant for the specific benefit of the sublessee, which shall be amortized over the term of the sublease, and (iii) the reasonable cost of any real estate commissions and reasonable attorneys' fees

incurred by Tenant in connection with such subletting, with the portion consisting of commissions being amortized over the term of the sublease.

18.6    If this Lease is assigned to any person or entity pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. Section 101 et seq. or any successor or substitute therefor (the "Bankruptcy Code"), any and all monies or other consideration payable or otherwise to be delivered in connection with such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord, and shall not constitute property of Tenant or of the estate of Tenant within the meaning of the Bankruptcy Code. Any such monies or other consideration not paid or delivered to Landlord shall be held in trust for the benefit of Landlord and shall be promptly paid or delivered to Landlord. Any person or entity to whom this Lease is so assigned shall be deemed, without further act or deed, to have assumed all of the remaining obligations arising under this Lease as of the date of such assignment. Any such assignee shall, upon demand therefor, execute and deliver to Landlord an instrument confirming such assumption.

18.7    Landlord shall have the following option with respect to any assignment or subletting proposed by Tenant:

(a)    Notwithstanding any other provision of this Article, Landlord has the option, by written notice to Tenant (the "Recapture Notice") within thirty (30) days after receiving any Transfer Notice to recapture the Space covered by the proposed sublease or the entire Premises in the case of an assignment (the "Subject Space") by terminating this Lease for the Subject Space or taking an assignment or a sublease of the Subject Space from Tenant. A timely Recapture Notice terminates this Lease or creates an assignment or a sublease for the Subject Space for the same term as the proposed Transfer, effective as of the date specified in the Transfer Notice. After such termination, Landlord may (but shall not be obligated to) enter into a lease with the party to the sublease or assignment proposed by Tenant.

(b)    To determine the new Base Rent under this Lease in the event Landlord recaptures the Subject Space without terminating this Lease, the original Base Rent under the Lease shall be multiplied by a fraction, the numerator of which is the rentable square feet of the Premises retained by Tenant after Landlord's recapture and the denominator of which is the total rentable square feet in the Premises before Landlord's recapture. The Additional Rent, to the extent that it is calculated on the basis of the rentable square feet within the Premises, shall be reduced to reflect Tenant's proportionate share based on the rentable square feet of the Premises retained by Tenant after Landlord's recapture. This Lease as so amended shall continue thereafter in full force and affect. Either party may require a written confirmation of the amendments to this Lease necessitated by Landlord's recapture of the Subject Space. If Landlord recaptures the Subject Space, Landlord shall, at Landlord's sole expense, construct any partitions required to segregate the Subject Space from the remaining Premises retained by Tenant. Tenant shall, however, pay for painting, covering or otherwise decorating the surfaces of the partitions facing the remaining Premises retained by Tenant.

18.8    Notwithstanding anything to the contrary contained in this Article 18, Tenant may sublet the Premises or any portion thereof without the need for Landlord's prior consent if such sublease is to any parent, subsidiary or affiliate business entity which the initially named Tenant controls, is controlled by or is under common control with (each, an "Affiliate") provided that:  (i) at least thirty (30) days prior to such sublease, Tenant delivers to Landlord the financial statements or other financial and background information of the sublessee as required for other transfers; (ii) the financial audited net worth and the tangible net worth of the sublessee as of the time of the proposed transfer is equal to or greater than the financial audited net worth and tangible net worth of the Tenant upon the Commencement Date and is sufficient for such sublessee to fulfill its obligations pursuant to such sublease; (iii) Tenant remains fully liable under this Lease; and (iv) unless Landlord consents to the same, the use of the Premises set forth herein remains unchanged.  As used in this section, "control" (including, with its correlative meanings, "controlled by" and "under common control with") shall mean possession, directly or indirectly, of power to direct or cause the direction of management or policies through ownership of at least fifty-one percent (51%) of the securities or partnership or other ownership interests of the entity subject to control.  For purposes of clarification, this Section 18.8 does not include the right to assign the Lease or any portion thereof to a parent, subsidiary or affiliate, all of which such assignments would be governed by Section 18.1 *et seq.*

18.9    Landlord and Tenant acknowledge that the Namco Bandai Games ("Namco") currently occupies a portion of the second floor of the North Building pursuant to a sublease (the "Namco Sublease") under the Prior Nortel Lease.  The Namco Sublease will remain a sublease for Namco's premises in the North Building under this Lease, provided, that at any time Landlord may elect in its sole discretion to relocate Namco to the South Building, such relocation to be at Landlord's cost, and if Namco agrees to such relocation then upon such relocation (i) the Namco Sublease premises will remain a part of the Premises for purposes of this Lease, (ii) the Namco Sublease shall immediately terminate, except for provisions which by their terms survive such termination, if any, such as indemnifications, and (iii) Namco shall be released by Tenant from all obligations to Tenant, except for any Namco Sublease obligations which have accrued but are unpaid.

ARTICLE 19
DAMAGE OR DESTRUCTION

19.1    Casualty.  If the Premises or Project should be damaged or destroyed by fire or other casualty, Tenant shall give immediate written notice to Landlord. Within thirty (30) days after receipt from Tenant of such written notice, Landlord shall notify Tenant whether the necessary repairs can reasonably be made:  (a) within one hundred thirty-five (135) days; (b) in more than one hundred thirty-five (135) days but in less than two hundred twenty-five (225) days; or (c) in more than two hundred twenty-five (225) days, in each case after the date of the casualty.

19.1.1    Less Than 135 Days.  If the Premises or Project should be damaged only to such extent that rebuilding or repairs can reasonably be completed within one hundred thirty-five (135) days after the casualty, this Lease shall not terminate and, provided that insurance proceeds are available to pay for the full repair of all damage, Landlord shall repair the

Premises or Project, except that Landlord shall not be required to rebuild, repair or replace Tenant's furniture, fixtures, furnishings, or equipment (collectively, "Tenant's Property") which may have been placed in, on or about the Premises by or for the benefit of Tenant. If Tenant is required to vacate all or a portion of the Premises during Landlord's repair thereof, the Rent payable hereunder shall be abated proportionately on the basis of the size of the area of the Premises that is damaged (i.e., the number of square feet of floor area of the Premises that is damaged compared to the total square footage of the floor area of the Premises) from the date Tenant vacates all or a portion of the Premises that was damaged only during the period the Premises are unfit for occupancy, provided, however, that such abatement shall be reduced if and to the extent that rental abatement insurance proceeds are made unavailable to Landlord due to an act or omission of Tenant.

19.1.2 Greater Than 135 Days. If the Premises or Project should be damaged only to such extent that rebuilding or repairs can reasonably be completed in more than ninety (90) days but in less than two hundred twenty-five (225) days after the casualty, then Landlord shall have the option of: (a) terminating the Lease effective upon the occurrence of such damage, in which event the Base Rent shall be abated from the date Tenant vacates the Premises; or (b) electing to repair the Premises, provided insurance proceeds are available to pay for the full repair of all damage (except that Landlord shall not be required to rebuild, repair or replace Tenant's Property). If Tenant is required to vacate all or a portion of the Premises during Landlord's repair thereof, the Rent payable hereunder shall be abated proportionately on the basis of the size of the area at the Premises that is damaged (i.e., the number of square feet of floor area of the Premises that is damaged compared to the total square footage of the floor area of the Premises) from the date Tenant vacates all or a portion of the Premises that was damaged only during the period the Premises are unfit for occupancy, provided, however, that such abatement shall be reduced if and to the extent that rental abatement insurance proceeds are made unavailable to Landlord due to an act or omission of Tenant. In the event that Landlord should fail to substantially complete such repairs within two hundred twenty-five (225) days after the casualty (such period to be extended for delays caused by Tenant or because of any Force Majeure Events, as hereinafter defined), and Tenant has not reoccupied the Premises, Tenant shall have the right, as Tenant's exclusive remedy, within ten (10) days after the expiration of such two hundred twenty-five (225) day period, and provided that such repairs have not been substantially completed within such ten (10) day period, to terminate this Lease by delivering written notice to Landlord as Tenant's exclusive remedy, whereupon all rights of Tenant hereunder shall cease and terminate thirty (30) days after Landlord's receipt of such notice.

19.1.3 Greater Than 225 Days. If the Premises or Project should be so damaged that rebuilding or repairs cannot be completed within two hundred twenty-five (225) days after the casualty, either Landlord or Tenant may terminate this Lease by giving written notice within ten (10) days after notice from Landlord specifying such time period of repair, and this Lease shall terminate and the Rent shall be abated from the date Tenant vacates the Premises. In the event that neither party elects to terminate this Lease, Landlord shall commence and prosecute to completion the repairs to the Premises or Project, provided insurance proceeds are available to pay for the repair of all damage (except that Landlord shall not be required to rebuild, repair or replace Tenant's Property). If Tenant is required to vacate all or a portion of

the Premises during Landlord's repair thereof, the Rent payable hereunder shall be abated proportionately on the basis of the size of the area of the Premises that is damaged (i.e., the number of square feet of floor area of the Premises that is damaged compared to the total square footage of the floor area of the Premises), from the date Tenant vacates all or a portion of the Premises that was damaged only during the period the Premises are unfit for occupancy, provided, however, that such abatement shall be reduced if and to the extent that rental abatement insurance proceeds are made unavailable to Landlord due to an act or omission of Tenant.

19.1.4    Casualty During the Last Year of the Lease Term.
Notwithstanding any other provisions hereof, if the Premises or Project shall be damaged within the last year of the Lease Term, and if the cost to repair or reconstruct the portion of the Premises or Project which was damaged or destroyed shall exceed $50,000, then, irrespective of the time necessary to complete such repair or reconstruction, Landlord shall have the right, in its sole and absolute discretion, to terminate the Lease effective upon the occurrence of such damage, in which event the Rent shall be abated from the date Tenant vacates the Premises.  The foregoing right shall be in addition to any other right and option of Landlord under this Article 19.

19.2    Uninsured Casualty.  Tenant shall be responsible for and shall pay to Landlord Tenant's Share of any deductible or retention amount payable under the property insurance for the Project as part of Operating Expenses.  In the event that the Premises or any portion of the Project is damaged to the extent Tenant is unable to use the Premises and such damage is not covered by insurance proceeds received by Landlord or in the event that the holder of any indebtedness secured by the Premises requires that the insurance proceeds be applied to such indebtedness, then Landlord shall have the right at Landlord's option, in Landlord's sole and absolute discretion, either (i) to repair such damage as soon as reasonably possible at Landlord's expense, or (ii) to give written notice to Tenant within thirty (30) days after the date of the occurrence of such damage of Landlord's intention to terminate this Lease as of the date of the occurrence of such damage. In the event Landlord elects to terminate this Lease, Tenant shall have the right within ten (10) days after receipt of such notice to give written notice to Landlord of Tenant's commitment to pay the cost of repair of such damage, in which event this Lease shall continue in full force and effect, and Landlord shall make such repairs as soon as reasonably possible (but in no event later than two hundred twenty-five (225) days from the casualty event), subject to Force Majeure and subject to the following conditions:  Tenant shall deposit with Landlord Landlord's estimated cost of such repairs not later than five (5) business days prior to Landlord's commencement of the repair work. If the cost of such repairs exceeds the amount deposited, Tenant shall reimburse Landlord for such excess cost within ten (10) business days after receipt of an invoice from Landlord.  Any amount deposited by Tenant in excess of the cost of such repairs shall be refunded within thirty (30) days of Landlord's final payment to Landlord's contractor.  If Tenant does not give such notice within the ten (10) day period, or fails to make such deposit as required, Landlord shall have the right, in Landlord's sole and absolute discretion, to immediately terminate this Lease to be effective as of the date of the occurrence of the damage.

19.3    Waiver.  With respect to any damage or destruction which Landlord is obligated to repair or may elect to repair, Tenant waives all rights to terminate this Lease

pursuant to rights otherwise presently or hereafter accorded by law, including without limitation any rights granted under Section 1932, subdivision 2, and Section 1933, of the California Civil Code.

ARTICLE 20
CONDEMNATION

20.1 Total Condemnation. If all of the Premises is condemned by eminent domain, inversely condemned or sold under threat of condemnation for any public or quasi-public use or purpose ("Condemned"), this Lease shall terminate as of the earlier of the date the condemning authority takes title to or possession of the Premises, and Rent shall be adjusted to the date of termination.

20.2 Partial Condemnation. If any portion of the Premises or Project is condemned and such partial condemnation materially impairs Tenant's ability to use the Premises for Tenant's business, Landlord shall have the option in Landlord's sole and absolute discretion of either (i) relocating Tenant to comparable space within the Project at Landlord's expense or (ii) terminating this Lease as of the earlier of the date title vests in the condemning authority or as of the date an order of immediate possession is issued and Rent shall be adjusted to the date of termination. If such partial condemnation does not materially impair Tenant's ability to use the Premises for the business of Tenant, Landlord shall promptly restore the Premises to the extent of any condemnation proceeds recovered by Landlord, excluding the portion thereof lost in such condemnation, and this Lease shall continue in full force and effect except that after the date of such title vesting or order of immediate possession Rent shall be adjusted as reasonably determined by Landlord.

20.3 Award. If the Premises are wholly or partially condemned, Landlord shall be entitled to the entire award paid for such condemnation, and Tenant waives any claim to any part of the award from Landlord or the condemning authority; provided, however, Tenant shall have the right to recover from the condemning authority such compensation as may be separately awarded to Tenant in connection with costs in removing Tenant's merchandise, furniture, fixtures, leasehold improvements and equipment to a new location. No condemnation of any kind shall be construed to constitute an actual or constructive eviction of Tenant or a breach of any express or implied covenant of quiet enjoyment. Tenant hereby waives the effect of Sections 1265.120 and 1265.130 of the California Code of Civil Procedure.

20.4 Temporary Condemnation. In the event of a temporary condemnation not extending beyond the Term, this Lease shall remain in effect, Tenant shall continue to pay Rent and Tenant shall receive any award made for such condemnation except damages to any of Landlord's property. If a temporary condemnation is for a period which extends beyond the Term, this Lease shall terminate as of the date of initial occupancy by the condemning authority and any such award shall be distributed in accordance with the preceding section. If a temporary condemnation remains in effect at the expiration or earlier termination of this Lease, Tenant shall pay Landlord the reasonable cost of performing any obligations required of Tenant with respect to the surrender of the Premises.

ARTICLE 21
HOLD HARMLESS

21.1    Tenant agrees to defend, with counsel approved by Landlord, all actions against Landlord, any partner, trustee, stockholder, officer, director, employee, or beneficiary of Landlord (collectively, "Landlord Parties"), holders of mortgages secured by the Premises or the Project and any other party having an interest therein (collectively with Landlord Parties, the "Indemnified Parties") with respect to, and to pay, protect, indemnify, and save harmless, to the extent permitted by law, all Indemnified Parties from and against, any and all liabilities, losses, damages, costs, expenses (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands, or judgments of any nature to which any Indemnified Party is subject because of its estate or interest in the Premises or the Project arising from or incurred in connection with (a) Tenant's occupancy of the Premises prior to, during, or after the Term, except to the extent, if any, caused by the gross negligence or willful misconduct of Landlord or its employees, contractors or agents, (b) any violation of this Lease by or attributable to Tenant, or (c) subject to Section 13.4, any act, fault, omission, or other misconduct of Tenant or its agents, contractors, licensees, sublessees, or invitees.  Tenant agrees to use and occupy the Premises and other facilities of the Project at its own risk, and hereby releases the Indemnified Parties from any and all claims for any damage or injury to the fullest extent permitted by law, except to the extent, if any, caused by the gross negligence or willful misconduct of Landlord or its employees, contractors or agents.

21.2    Tenant agrees that Landlord shall not be responsible or liable to Tenant, its agents, employees, or invitees for fatal or non-fatal bodily injury or property damage occasioned by the acts or omissions of any other tenant, or such other tenant's agents, employees, licensees, or invitees, of the Project.  Landlord shall not be liable to Tenant for losses due to theft, burglary, or damages done by persons on the Project, except to the extent, if any, caused by the gross negligence or willful misconduct of Landlord or its employees, contractors or agents.

21.3    Tenant's agreement to indemnify Landlord and Landlord's agreement to indemnify Tenant pursuant to this Article 21 and Articles 33, 42 and 49 are not intended to and shall not relieve any insurance carrier of its obligations under policies required to be carried pursuant to the provisions of this Lease, to the extent such policies cover, or if carried would have covered, the matters subject to the parties' respective indemnification obligations.

ARTICLE 22
DEFAULT BY TENANT

22.1    The term "Event of Default" refers to the occurrence of any one (1) or more of the following:

(a)    Failure of Tenant to pay when due any sum required to be paid hereunder which is not received by Landlord within five (5) days after the date due (each a "Monetary Default");

(b)     Failure of Tenant, after thirty (30) days written notice thereof, to perform any of Tenant's obligations, covenants, or agreements except a Monetary Default;

(c)     Tenant, or any guarantor of Tenant's obligations under this Lease (the "Guarantor"), admits in writing that it cannot meet its obligations as they become due; or is declared insolvent according to any law; or assignment of Tenant's or Guarantor's property is made for the benefit of creditors; or a receiver or trustee is appointed for Tenant or Guarantor or its property; or the interest of Tenant or Guarantor under this Lease is levied on under execution or other legal process; or any petition is filed by or against Tenant or Guarantor to declare Tenant bankrupt or to delay, reduce, or modify Tenant's debts or obligations; or any petition filed or other action taken to reorganize or modify Tenant's or Guarantor's capital structure if Tenant is a corporation or other entity. Any such levy, execution, legal process, or petition filed against Tenant or Guarantor shall not constitute a breach of this Lease provided Tenant or Guarantor shall vigorously contest the same by appropriate proceedings and shall remove or vacate the same within ninety (90) days from the date of its creation, service, or filing;

(d)     The abandonment of the Premises by Tenant, which shall mean that Tenant has vacated the Premises for ten (10) consecutive days and has ceased payment of Rent and performance of its obligations hereunder, or such abandonment has impaired Landlord's insurance coverage for the Premises or the Project;

(e)     The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants, successors-in-interest, or Guarantors was materially false;

(f)     If Tenant or any Guarantor shall die, cease to exist as a corporation or partnership, or be otherwise dissolved or liquidated or become insolvent, or shall make a transfer in fraud of creditors; or

(g)     The lien claimant under any mechanics lien arising from acts of Tenant commences litigation that may affect Landlord's title to the Project or Building and/or names Landlord as a party to any litigation.

22.2    In the event of any Event of Default by Tenant, Landlord, at its option, may pursue one or more of the following remedies without notice or demand in addition to all other rights and remedies provided for at law or in equity:

(a)     Landlord may continue this Lease in full force and effect, and this Lease shall continue in full force and effect as long as Landlord does not terminate Tenant's right to possession, and Landlord shall have the right to collect Rent when due. Landlord may enter the Premises and relet it, or any part of it, to third parties for Tenant's account, provided that any Rent in excess of the Rent due hereunder shall be payable to Landlord. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in reletting the Premises, including, without limitation, brokers' commissions, expenses of cleaning and redecorating the Premises required by the reletting and like costs. Reletting

may be for a period shorter or longer than the remaining Term of this Lease. Tenant shall pay to Landlord the Rent and other sums due under this Lease on the dates the Rent is due, less the Rent and other sums Landlord receives from any reletting. No act by Landlord allowed by this Section 22.2(a) shall terminate this Lease unless Landlord notifies Tenant in writing that Landlord elects to terminate this Lease.

**"The lessor has the remedy described in Civil Code Section 1951.4 (lessor may continue the lease in effect after lessee's breach and abandonment and recover rent as it becomes due, if lessee has the right to sublet or assign subject only to reasonable limitations)."**

(b) Landlord may terminate Tenant's right to possession of the Premises at any time by giving written notice to that effect. No act by Landlord other than giving written notice to Tenant shall terminate this Lease. Acts of maintenance, efforts to relet the Premises or the appointment of a receiver on Landlord's initiative to protect Landlord's interest under this Lease shall not constitute a termination of Tenant's right to possession. On termination, Landlord shall have the right to remove all personal property of Tenant and store it at Tenant's cost and to recover from Tenant as damages: (i) the worth at the time of award of unpaid Rent and other sums due and payable which had been earned at the time of termination; plus (ii) the worth at the time of award of the amount by which the unpaid Rent and other sums due and payable which would have been payable after termination until the time of award exceeds the amount of the Rent loss that Tenant proves could have been reasonably avoided; plus (iii) the worth at the time of award of the amount by which the unpaid Rent and other sums due and payable for the balance of the Term after the time of award exceeds the amount of the Rent loss that Tenant proves could be reasonably avoided; plus (iv) any other amount necessary to compensate Landlord for all the detriment proximately caused by Tenant's failure to perform Tenant's obligations under this Lease, or which, in the ordinary course of things, would be likely to result therefrom, including, without limitation, any costs or expenses incurred by Landlord: (A) in retaking possession of the Premises, including reasonable attorneys' fees and costs therefor; (B) maintaining or preserving the Premises for reletting to a new tenant, including repairs or alterations to the Premises for the reletting; (C) leasing commissions; (D) any other costs necessary or appropriate to relet the Premises; and (E) at Landlord's election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by the laws of the State of California.

The "worth at the time of award" of the amounts referred to in Sections 22.2(b)(i) and 22.2(b)(ii) shall be calculated by allowing interest at the lesser of twelve percent (12%) per annum or the maximum rate permitted by law, on the unpaid Rent and other sums due and payable from the termination date through the date of award. The "worth at the time of award" of the amount referred to in Section 22.2(b)(iii) shall be calculated by discounting the amount at the discount rate of the Federal Reserve Bank of San Francisco at the time of award, plus one percent (1%). Tenant waives redemption or relief from forfeiture under California Code of Civil Procedure Sections 1174 and 1179, or under any other present or future law, if Tenant is evicted or Landlord takes possession of the Premises by reason of any Event of Default by Tenant.

22.3    If Landlord shall exercise any one or more remedies hereunder granted or otherwise available, it shall not be deemed to be an acceptance or surrender of the Premises by Tenant whether by agreement or by operation of law; it is understood that such surrender can be effected only by the written agreement of Landlord and Tenant.  No alteration of security devices and no removal or other exercise of dominion by Landlord over the property of Tenant or others in the Premises shall be deemed unauthorized or constitute a conversion, Tenant hereby consenting to the aforesaid exercise of dominion over Tenant's property within the Premises after any Event of Default.

22.4    Each right and remedy provided for in this Lease shall be cumulative and shall be in addition to every other right or remedy provided for in this Lease or now or hereafter existing at law or in equity or by statute or otherwise, including, but not limited to, suits for injunctive relief and specific performance.  The exercise or beginning of the exercise by Landlord of any one or more of the rights or remedies provided for in this Lease or now or hereafter existing at law or in equity, or by statute or otherwise shall not preclude the simultaneous or later exercise by Landlord for any or all other rights or remedies provided for in this Lease or now or hereafter existing at or in equity or by statute or otherwise.  All such rights and remedies shall be considered cumulative and non-exclusive.  All costs incurred by Landlord in connection with collecting any Rent or other amounts and damages owing by Tenant pursuant to the provisions of this Lease, or to enforce any provision of this Lease, including reasonable attorneys' fees from the date such matter is turned over to an attorney, whether or not one or more actions are commenced by Landlord, shall also be recoverable by Landlord from Tenant.  If any notice and grace period required under subparagraphs 22.1(a) or (b) was not previously given, a notice to pay rent or quit, or to perform or quit, as the case may be, given to Tenant under any statute authorizing the forfeiture of leases for unlawful detainer shall also constitute the applicable notice for grace period purposes required by subparagraphs 22.1(a) or (b).  In such case, the applicable grace period under subparagraphs 22.1(a) or (b) and under the unlawful detainer statute shall run concurrently after the one such statutory notice, and the failure of Tenant to cure the default within the greater of the two (2) such grace periods shall constitute both an unlawful detainer and an Event of Default entitling Landlord to the remedies provided for in this Lease and/or by such statute.

22.5    If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted and such failure constitutes an Event of Default (except in the case where if Landlord in good faith believes that action prior to the expiration of any cure period under Section 22.1 is necessary to prevent damage to persons or property, in which case Landlord may act without waiting for such cure period to expire), Landlord, without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such default for the account of Tenant (and enter the Premises for such purpose), and thereupon, Tenant shall be obligated and hereby agrees to pay Landlord, within thirty (30) days of demand, all reasonable costs, expenses, and disbursements, plus ten percent (10%) overhead cost incurred by Landlord in connection therewith.

22.6    In addition to Landlord's rights set forth above, if Tenant fails to pay its Rent or any other amounts owing hereunder on the due date thereof more than two (2) times during any calendar year during the Term, then upon the occurrence of the third or any

subsequent default in the payment of monies during such calendar year, Landlord, at its sole option, shall have the right to require that Tenant, as a condition precedent to curing such default, pay to Landlord, in check or money order, in advance, the Rent and Landlord's estimate of all other amounts which will become due and owing hereunder by Tenant for a period of two (2) months following such cure. All such amounts shall be paid by Tenant within thirty (30) days after notice from Landlord demanding the same. All monies so paid shall be retained by Landlord, without interest, for the balance of the Term and any extension thereof, and shall be applied by Landlord to the last due amounts owing hereunder by Tenant. If, however, Landlord's estimate of the Rent and other amounts for which Tenant is responsible hereunder are inaccurate, when such error is discovered, Landlord shall pay to Tenant, or Tenant shall pay to Landlord, within thirty (30) days after written notice thereof, the excess or deficiency, as the case may be, which is required to reconcile the amount on deposit with Landlord with the actual amounts for which Tenant is responsible.

22.7 Nothing contained in this Section shall limit or prejudice the right of Landlord to prove and obtain as damages in any bankruptcy, insolvency, receivership, reorganization, or dissolution proceeding, an amount equal to the maximum allowed by any statute or rule of law governing such a proceeding and in effect at the time when such damages are to be proved, whether or not such amount be greater, equal, or less than the amounts recoverable, either as damages or Rent, referred to in any of the preceding provisions of this Article. Notwithstanding anything contained in this Article to the contrary, any such proceeding or action involving bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, or appointment of a receiver or trustee, as set forth above, shall be considered to be an Event of Default only when such proceeding, action, or remedy shall be taken or brought by or against the then holder of the leasehold estate under this Lease.

22.8 Landlord is entitled to accept, receive, in check or money order, and deposit any payment made by Tenant for any reason or purpose or in any amount whatsoever, and apply them at Landlord's option to any obligation of Tenant, and such amounts shall not constitute payment of any amount owed, except that to which Landlord has applied them. No endorsement or statement on any check or letter of Tenant shall be deemed an accord and satisfaction or recognized for any purpose whatsoever. The acceptance of any such check or payment shall be without prejudice to Landlord's rights to recover any and all amounts owed by Tenant hereunder and shall not be deemed to cure any other default nor prejudice Landlord's rights to pursue any other available remedy. Landlord's acceptance of partial payment of Rent does not constitute a waiver of any rights, including without limitation any right Landlord may have to recover possession of the Premises.

22.9 Tenant waives the right to terminate this Lease on Landlord's default under this Lease. Tenant's sole remedy on Landlord's default is an action for damages or injunctive or declaratory relief. Landlord's failure to perform any of its obligations under this Lease shall constitute a default by Landlord under this Lease if the failure continues for thirty (30) days after written notice of the failure from Tenant to Landlord. If the required performance cannot be completed within thirty (30) days, Landlord's failure to perform shall constitute a default under the Lease unless Landlord undertakes to cure the failure within thirty (30) days and diligently and continuously attempts to complete this cure as soon as

reasonably possible. All obligations of each party hereunder shall be construed as covenants, not conditions.

ARTICLE 23
*INTENTIONALLY OMITTED*

23.1 *Intentionally Omitted.*

ARTICLE 24
*INTENTIONALLY OMITTED*

24.1 *Intentionally Omitted.*

ARTICLE 25
ATTORNEYS' FEES

25.1 All reasonable costs and expenses, including reasonable attorneys' fees (whether or not legal proceedings are instituted), involved in collecting rents, enforcing the obligations of Tenant, or protecting the rights or interests of Landlord under this Lease, whether or not an action is filed, including without limitation the cost and expense of instituting and prosecuting legal proceedings or recovering possession of the Premises after default by Tenant or upon expiration or sooner termination of this Lease, shall be due and payable by Tenant within thirty (30) days of demand, as additional rent. In addition, and notwithstanding the foregoing, if either party hereto shall file any action or bring any proceeding against the other party arising out of this Lease or for the declaration of any rights hereunder, the prevailing party in such action shall be entitled to recover from the other party all costs and expenses, including reasonable attorneys' fees incurred by the prevailing party, as determined by the trier of fact in such legal proceeding. For purposes of this provision, the terms "attorneys' fees" or "attorneys' fees and costs," or "costs and expenses" shall mean the fees and expenses of legal counsel (including external counsel and in-house counsel) of the parties hereto, which include printing, photocopying, duplicating, mail, overnight mail, messenger, court filing fees, costs of discovery, and fees billed for law clerks, paralegals, investigators, experts and other persons not admitted to the bar for performing services under the supervision and direction of an attorney. In addition, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs incurred in enforcing any judgment arising from a suit or proceeding under this Lease, including without limitation post-judgment motions, contempt proceedings, garnishment, levy and debtor and third party examinations, discovery and bankruptcy litigation, without regard to schedule or rule of court purporting to restrict such award. This post-judgment award of attorneys' fees and costs provision shall be severable from any other provision of this Lease and shall survive any judgment/award on such suit or arbitration and is not to be deemed merged into the judgment/award or terminated with the Lease.

ARTICLE 26
NON-WAIVER

26.1 Neither acceptance of any payment by Landlord from Tenant nor, failure by any party to complain of any action, non-action, or default of the other party shall constitute a

waiver of any of the first party's rights hereunder. Time is of the essence with respect to the performance of every obligation of each party under this Lease in which time of performance is a factor. Waiver by either party of any right or remedy arising in connection with any default of the other party shall not constitute a waiver of such right or remedy or any other right or remedy arising in connection with either a subsequent default of the same obligation or any other default. No right or remedy of either party hereunder or covenant, duty, or obligation of any party hereunder shall be deemed waived by the other party unless such waiver is in writing, signed by the other party or the other party's duly authorized agent.

ARTICLE 27
RULES AND REGULATIONS

27.1 Such reasonable rules and regulations applying to all lessees in the Project for the safety, care, and cleanliness of the Project and the preservation of good order thereon are hereby made a part hereof as Exhibit D, and Tenant agrees to comply with all such rules and regulations. Landlord shall have the right at all times to change such rules and regulations or to amend them in any reasonable and non-discriminatory manner as may be deemed advisable by Landlord, all of which changes and amendments shall be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant. Landlord shall not have any liability to Tenant for any failure of any other lessees of the Project to comply with such rules and regulations.

ARTICLE 28
ASSIGNMENT BY LANDLORD

28.1 Landlord shall have the right to transfer or assign, in whole or in part, all its rights and obligations hereunder and in the Premises and the Project. In such event, no liability or obligation shall accrue or be charged to Landlord with respect to the period from and after such transfer or assignment and assumption of Landlord's obligations by the transferee or assignee.

ARTICLE 29
LIABILITY OF LANDLORD

29.1 It is expressly understood and agreed that the obligations of Landlord under this Lease shall be binding upon Landlord and its successors and assigns and any future owner of the Project only with respect to events occurring during its and their respective ownership of the Project. In addition, Tenant agrees to look solely to Landlord's interest in the North Building for recovery of any judgment against Landlord arising in connection with this Lease, it being agreed that neither Landlord nor any successor or assign of Landlord nor any future owner of the Project, nor any partner, shareholder, member or officer of any of the foregoing shall ever be personally liable for any such judgment. The limitations of liability contained in this Section 29.1 shall inure to the benefit of Landlord's and the Landlord Parties' present and future partners, beneficiaries, officers, directors, trustees, shareholders, agents and employees, and their respective partners, heirs, successors and assigns. Under no circumstances shall any present or future partner of Landlord (if Landlord is a partnership), or trustee or beneficiary (if Landlord or any partner of Landlord is a trust), have any liability for the

performance of Landlord's obligations under this Lease. Notwithstanding any contrary provision herein, neither Landlord nor the Landlord Parties nor Tenant shall be liable under any circumstances for any special, indirect, punitive, incidental or consequential damages or any injury or damage to, or interference with, the business of the other, including but not limited to, loss of profits, loss of rents or other revenues, loss of business opportunity, loss of goodwill or loss of use, in each case, however occurring.

ARTICLE 30
SUBORDINATION AND ATTORNMENT

30.1 This Lease shall be subordinate to lien of any first mortgage or trust deed, now or hereafter in force against the Building or Project, if any, and to all renewals, extensions, modifications, consolidations and replacements thereof, and to all advances made or hereafter to be made upon the security of such mortgages or trust deeds, unless the holders of such mortgages or trust deeds require in writing that this Lease be superior thereto. Notwithstanding the foregoing, Landlord agrees that (i) it shall use commercially reasonable efforts (without the payment of any money by Landlord) to obtain for Tenant (at no cost to Tenant) a non-disturbance agreement in favor of Tenant from any present mortgagor or lien holder with respect to the Premises as of the date of this Lease, and (ii) Landlord shall obtain (without the payment of money by Landlord) for Tenant (at no cost to Tenant) a non-disturbance agreement in favor of Tenant from any future mortgagor or lien holder with respect to the Premises after the date of this Lease, which non-disturbance agreements shall be in such mortgagor's or lien holder's standard form, or in a commercially reasonable alternative form approved by the parties; provided, however, that Landlord's failure to obtain such a non-disturbance agreement from any present mortgagor or lien holder after exercising commercially reasonable efforts to do so, shall not relieve Tenant from its obligations otherwise provided in this Section 30.1. Tenant covenants and agrees in the event any proceedings are brought for the foreclosure of any such mortgage or deed in lieu thereof, to attorn, without any deductions or set-offs whatsoever, to the purchaser or any successors thereto upon any such foreclosure sale or deed in lieu thereof if so requested to do so by such purchaser, and to recognize such purchaser as the lessor under this Lease. Tenant shall, within fifteen (15) days of request by Landlord, execute such further instruments or assurances as Landlord may reasonably deem necessary to evidence or confirm the subordination or superiority of this Lease to any such mortgages, trust deeds, ground leases or underlying leases. The time period in the foregoing sentence is not subject to an additional cure period under Section 22.1. Tenant waives the provisions of any current or future statute, rule or law which may give or purport to give Tenant any right or election to terminate or otherwise adversely affect this Lease and the obligations hereunder in the event of any foreclosure proceeding or sale.

30.2 Each party shall, at such time or times as the other party may request, upon not less than ten (10) days' prior written request by the requesting party, sign and deliver to the requesting party a certificate stating whether this Lease is in full force and effect; whether any amendments or modifications exist; whether any Monthly Rent has been prepaid and, if so, how much; whether to the knowledge of the certifying party there are any defaults hereunder; and in the circumstance where Landlord is the requesting party, such other information and agreements as may be reasonably requested, it being intended that any such statement delivered

pursuant to this Article may be relied upon by the requesting party and by any prospective purchaser of all or any portion of the requesting party's interest herein, or a holder or prospective holder of any mortgage encumbering the Project. Tenant's failure to deliver such statement within five (5) business days after Landlord's second written request therefor shall constitute an Event of Default (as that term is defined elsewhere in this Lease) and shall conclusively be deemed to be an admission by Tenant of the matters set forth in the request for an estoppel certificate.

30.3 Tenant shall deliver to Landlord prior to the execution of this Lease and thereafter at any time upon Landlord's request, Tenant's current audited financial statements, including a balance sheet and profit and loss statement for the most recent prior year (collectively, the "Statements"), which Statements shall accurately and completely reflect the financial condition of Tenant. Landlord shall have the right to deliver the same to any proposed purchaser of the Project, and to any encumbrancer of all or any portion of the Project. If (but only if) Tenant is fully consolidated into its parent and does not have separate audited financial statements, then Tenant may satisfy the obligations under this Section 30.3 by providing current audited financial statements of its parent.

30.4 Tenant acknowledges that Landlord is relying on the Statements in its determination to enter into this Lease, and Tenant represents to Landlord, which representation shall be deemed made on the date of this Lease and again on the Commencement Date, that no material change in the financial condition of Tenant, as reflected in the Statements, has occurred since the date Tenant delivered the Statements to Landlord. The Statements are represented and warranted by Tenant to be correct and to accurately and fully reflect Tenant's true financial condition as of the date of submission of any Statements to Landlord.

## ARTICLE 31
## HOLDING OVER

31.1 In the event Tenant, or any party claiming under Tenant, retains possession of the Premises after the Expiration Date or Termination Date, such possession shall be that of a holdover tenant and an unlawful detainer. No tenancy or interest shall result from such possession, and such parties shall be subject to immediate eviction and removal. Tenant or any such party shall pay Landlord, as Base Rent for the period of such holdover, an amount equal to two hundred percent (200%) of the Base Rent otherwise provided for herein, during the time of holdover together with all other Additional Rent and other amounts payable pursuant to the terms of this Lease. Tenant shall also be liable for any and all damages sustained by Landlord as a result of such holdover. Tenant shall vacate the Premises and deliver same to Landlord immediately upon Tenant's receipt of notice from Landlord to so vacate. The Rent during such holdover period shall be payable to Landlord on demand. No holding over by Tenant, whether with or without consent of Landlord, shall operate to extend the term of this Lease.

ARTICLE 32
SIGNS

32.1 No sign, symbol, or identifying marks shall be put upon the Project, North Building, in the elevators, staircases, entrances, parking areas, or upon the doors or walls, without the prior written approval of Landlord not to be unreasonably withheld, provided that (i) any such signs shall conform to applicable laws, and (ii) any signs, window coverings, or blinds, or other items visible from the exterior of the Premises or Building, shall be subject to the prior approval of Landlord in its sole discretion. Should such approval be granted, all signs or lettering shall conform in all respects to the sign and/or lettering criteria established by Landlord if they are located in any public area or common area.

32.2 Notwithstanding Section 32.1, the initial Tenant shall have the right, at its sole cost and expense, and in each case subject to Applicable Laws:

(a) to retain its interior signage in the North Building in any areas occupied by it directly and/or through subleases or assignments, provided however that any changes to such interior signage that may be requested by subtenants or assignees shall be subject to Section 32.1;

(b) to retain and maintain its parapet or rooftop sign on the exterior of the North Building that was installed pursuant to the Prior Nortel Lease, so long as it leases directly (including areas subject to subleases, but not assignments) at least fifty percent (50%) of the North Building, and so long as it meets such criteria the initial Tenant may negotiate with one subtenant to give such subtenant the right to its own parapet or rooftop sign, subject to Section 32.3; but if the initial Tenant leases directly (including areas subject to subleases, but not assignments) less than fifty percent (50%) of the North Building then its signage rights will be reduced pro-rata and Landlord shall have the sole right to award the second parapet or rooftop sign to a tenant, subject to Section 32.3;

(c) to use a pro-rata share of the existing monument and directional signage located within the Project.

32.3 Under no circumstance shall there be more than two (2) parapet or rooftop signs on the North Building, and the parapet or rooftop signs shall be assigned to the two (2) largest tenants (or subtenants or assignees) of the North Building on a square footage basis. Landlord shall have the right, upon reasonable request made to Tenant, to review Tenant's plans and specifications for Tenant's signage, provided that Landlord's approval of such plans and specifications shall not be required if such signage is substantially similar to signage installed by Tenant upon other buildings occupied by Tenant within the vicinity of the Project. Tenant's installations and removals of signs shall be made in such manner as to avoid material injury, defacement and structural overloading of the components of the Project. Tenant shall maintain its signs in good condition and repair at its sole cost and expense. Upon the termination or expiration of this Lease, Tenant shall remove its signage, and Tenant shall repair any damage caused to the Project by such removal, including the cosmetic restoration of the area on the face of the North Building where any such sign was removed to eliminate any remaining name

imprint. Tenant shall not have the obligation, however, to replace any pre-cast panel on the face of the North Building, and any such cosmetic restoration shall consist only of a power wash, acid wash and/or sandblasting of the North Building.

ARTICLE 33
HAZARDOUS SUBSTANCES

33.1 Except for Hazardous Material (as defined below) contained in products used by Tenant for ordinary cleaning and office purposes in quantities not violative of applicable Environmental Requirements, Tenant shall not permit or cause any party to bring any Hazardous Material upon the Premises and/or the Project or transport, store, use, generate, manufacture, dispose, or release any Hazardous Material on or from the Premises and/or the Project without Landlord's prior written consent. Tenant, at its sole cost and expense, shall operate its business in the Premises in strict compliance with all Environmental Requirements (as defined below) and all requirements of this Lease. Tenant shall complete and certify to disclosure statements as requested by Landlord from time to time relating to Tenant's transportation, storage, use, generation, manufacture, or release of Hazardous Materials on the Premises, and Tenant shall promptly deliver to Landlord a copy of any notice of violation relating to the Premises or the Project of any Environmental Requirement.

33.2 The term "Environmental Requirements" means all applicable present and future statutes, regulations, ordinances, rules, codes, judgments, permits, authorizations, orders, policies or other similar requirements of any governmental authority, agency or court regulating or relating to health, safety, or environmental conditions on, under, or about the Premises or the environment, including without limitation, the following: the Comprehensive Environmental Response, Compensation and Liability Act; the Resource Conservation and Recovery Act; the Clean Air Act; the Clean Water Act; the Toxic Substances Control Act and all state and local counterparts thereto; all applicable California requirements, including, but not limited to, Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316 and 25501 of the California Health and Safety Code and Title 22 of the California Code of Regulations, Division 4.5, Chapter 11, and any policies or rules promulgated thereunder as well as any County or City ordinances that may operate independent of, or in conjunction with, the State programs, and any common or civil law obligations including, without limitation, nuisance or trespass, and any other requirements of Article 3 of this Lease. The term "Hazardous Materials" means and includes any substance, material, waste, pollutant, or contaminant that is or could be regulated under any Environmental Requirement or that may adversely affect human health or the environment, including, without limitation, any solid or hazardous waste, hazardous substance, asbestos, petroleum (including crude oil or any fraction thereof, natural gas, synthetic gas, polychlorinated biphenyls (PCBs), and radioactive material). For purposes of Environmental Requirements, to the extent authorized by law, Tenant is and shall be deemed to be the responsible party, including without limitation, the "owner" and "operator" of Tenant's "facility" and the "owner" of all Hazardous Materials brought on the Premises by Tenant, its agents, employees, contractors or invitees, and the wastes, by-products, or residues generated, resulting, or produced therefrom.

33.3    Tenant, at its sole cost and expense, shall remove all Hazardous Materials stored, disposed of or otherwise released by Tenant, its assignees, subtenants, agents, employees, contractors or invitees onto or from the Premises, in a manner and to a level satisfactory to Landlord in its sole discretion, but in no event to a level and in a manner less than that which complies with all Environmental Requirements and does not limit any future uses of the Premises or require the recording of any deed restriction or notice regarding the Premises. Tenant shall perform such work at any time during the Term of the Lease upon written request by Landlord or, in the absence of a specific request by Landlord, before Tenant's right to possession of the Premises terminates or expires. If Tenant fails to perform such work within the time period specified by Landlord or before Tenant's right to possession terminates or expires (whichever is earlier), Landlord may at its discretion, and without waiving any other remedy available under this Lease or at law or equity (including without limitation an action to compel Tenant to perform such work), perform such work at Tenant's cost. Tenant shall pay all costs incurred by Landlord in performing such work within thirty (30) days after Landlord's request therefor. Such work performed by Landlord is on behalf of Tenant and Tenant remains the owner, generator, operator, transporter, and/or arranger of the Hazardous Materials for purposes of Environmental Requirements. Tenant agrees not to enter into any agreement with any person, including without limitation any governmental authority, regarding the removal of Hazardous Materials that have been disposed of or otherwise released onto or from the Premises without the written approval of Landlord.

33.4    Tenant shall indemnify, defend, and hold Landlord harmless from and against any and all losses (including, without limitation, diminution in value of the Premises or the Project and loss of rental income from the Project), claims, demands, actions, suits, damages (including, without limitation, punitive damages), expenses (including, without limitation, remediation, removal, repair, corrective action, or cleanup expenses), and costs (including, without limitation, actual attorneys' fees, consultant fees or expert fees and including, without limitation, removal or management of any asbestos brought into the Premises or disturbed in breach of the requirements of this Article 33, regardless of whether such removal or management is required by law) which are brought or recoverable against, or suffered or incurred by Landlord as a result of (i) any release of Hazardous Materials or (ii) any breach of the requirements under this Article 33, in either case by Tenant, its agents, employees, contractors, subtenants, assignees or invitees, regardless of whether Tenant had knowledge of such noncompliance. Landlord agrees to defend all actions against Tenant with respect to, and to pay, protect, indemnify, and save harmless, to the extent permitted by law, Tenant from and against any and all liabilities, losses, damages, costs, expenses, (including reasonable attorneys' fees and expenses), causes of action, suits, claims, demands, or judgments of any nature to which Tenant is subject and arising from the presence in the Premises and/or the Project of Hazardous Materials to the extent such Hazardous Materials were introduced, placed or released or caused to be placed or released in or on the Premises and/or the Project by the Landlord Parties. The obligations of Landlord and Tenant under this Article 33 shall survive any termination of this Lease.

33.5    Landlord shall have access to, and a right to perform inspections and tests of, the Premises to determine Tenant's compliance with Environmental Requirements, its obligations under this Article 33, or the environmental condition of the Premises. Access shall be granted to Landlord upon Landlord's prior notice to Tenant and at such times so as to

minimize, so far as may be reasonable under the circumstances, any disturbance to Tenant's operations. Such inspections and tests shall be conducted at Landlord's expense, unless such inspections or tests reveal that Tenant has not complied with any Environmental Requirement, in which case Tenant shall reimburse Landlord for the reasonable cost of such inspection and tests. Landlord's receipt of or satisfaction with any environmental assessment in no way waives any rights that Landlord holds against Tenant. Tenant shall promptly notify Landlord of any communication or report that Tenant makes to any governmental authority regarding any possible violation of Environmental Requirements or release or threat of release of any Hazardous Materials onto or from the Premises. Tenant shall, within five (5) days of receipt thereof, provide Landlord with a copy of any documents or correspondence received from any governmental agency or other party relating to a possible violation of Environmental Requirements or claim or liability associated with the release or threat of release of any Hazardous Materials onto or from the Premises.

33.6 In addition to all other rights and remedies available to Landlord under this Lease or otherwise, Landlord may, in the event of a breach of the requirements of this Article 33 that is not cured within thirty (30) days following notice of such breach by Landlord, require Tenant to provide financial assurance (such as insurance, escrow of funds or third party guarantee) in an amount and form reasonably satisfactory to Landlord. The requirements of this Article 33 are in addition to and not in lieu of any other provision in the Lease.

## ARTICLE 34
## COMPLIANCE WITH LAWS AND OTHER REGULATIONS

34.1 Tenant, as its sole cost and expense, shall promptly comply in all material respects with all laws, statutes, ordinances, and governmental rules, regulations, or requirements now in force or which may hereafter become in force, of federal, state, county, and municipal authorities, including, but not limited to, the Americans with Disabilities Act, with the requirements of any board of fire underwriters or other similar body now or hereafter constituted, and with any occupancy certificate issued pursuant to any law by any public officer or officers, which impose, any duty upon Landlord or Tenant, insofar as any thereof relate to or affect the condition, use, alteration, or occupancy of the Premises. Landlord's approval of Tenant's plans for any improvements shall create no responsibility or liability on the part of Landlord for their completeness, design sufficiency, or compliance with all laws, rules, and regulations of governmental agencies or authorities, including, but not limited to, the Americans with Disabilities Act.

34.2 As an inducement to Landlord to enter into this Lease, Tenant hereby represents and warrants that: (i) Tenant is not a person, group, entity or nation named on any list issued by the Office of Foreign Assets Control of the United States Department of the Treasury ("OFAC") pursuant to the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (commonly known as the "USA Patriot Act"), Executive Order 13224 or any similar list or any law, order, rule or regulation or any Executive Order of the President of the United States as a terrorist, "Specially Designated National and Blocked Person" or other banned or blocked person (collectively, a "Prohibited Person"), nor is Tenant controlled by any Prohibited Person; and (ii) to the best of its knowledge Tenant is not

engaged in any transaction or dealing with, or otherwise associated with, any Prohibited Person in connection with the Lease, the use and occupancy of the Premises or the Project. Tenant covenants and agrees that during the term of this Lease it will (a) not become a Prohibited Person; (b) not engage in any transactions or dealings with, or otherwise associate with, any Prohibited Person in connection with the Lease, the use and occupancy of the Premises or the Project, and (c) at the request of Landlord, provide such information as may be reasonably requested by Landlord to determine Tenant's compliance with the terms hereof. Any breach by Tenant of the foregoing representations and warranties shall be deemed an Event of Default by Tenant under this Lease and shall be covered by the indemnity provisions of Section 21.1 above. The representations and warranties contained in this subsection shall be continuing in nature and shall survive the expiration or earlier termination of this Lease.

## ARTICLE 35
## SEVERABILITY

35.1    This Lease shall be construed in accordance with the laws of the State of California. If any clause or provision of this Lease is illegal, invalid, or unenforceable under present or future laws effective during the Term, then it is the intention of the parties hereto that the remainder of this Lease shall not be affected thereby. It is also the intention of both parties that in lieu of each clause or provision that is illegal, or unenforceable, there is added as a part of this Lease a clause or provision as similar in terms to such illegal, invalid, or unenforceable clause or provision as may be possible and still be legal, valid, and enforceable.

## ARTICLE 36
## NOTICES

36.1    Whenever in this Lease it shall be required or permitted that notice or demand be given or served by either party to this Lease to or on the other, such notice or demand shall be given or served in writing and delivered personally, or forwarded by certified or registered mail, postage prepaid, or recognized overnight courier, addressed to Landlord's address and Tenant's address, as applicable, as specified in the Basic Lease Information. Either party may change its address for notice from time to time by serving written notice of the new address as provided in this Article 36.

36.2    Notice hereunder shall become effective upon (a) delivery in case of personal delivery and (b) receipt or refusal in case of certified or registered mail or delivery by overnight courier.

## ARTICLE 37
## OBLIGATIONS OF, SUCCESSORS, PLURALITY, GENDER

37.1    Landlord and Tenant agree that all obligations hereunder are to be construed as covenants not conditions, unless explicitly identified as conditions, and that, except as restricted by the provisions hereof, the same shall bind and inure to the benefit of the parties hereto, their respective heirs, legal representatives, successors, and assigns. If the rights of Tenant hereunder are owned by two or more parties, or two or more parties are designated herein as Tenant, then all such parties shall be jointly and severally liable for the obligations of Tenant

hereunder. Whenever the singular or plural number, masculine or feminine or neuter gender is used herein, it shall equally include the other.

ARTICLE 38
ENTIRE AGREEMENT

38.1 This Lease and any attached addenda or exhibits constitute the entire agreement between Landlord and Tenant. No prior or contemporaneous written or oral leases or representations shall be binding. This Lease shall not be amended, changed, or extended except by written instrument signed by Landlord and Tenant.

38.2 THE SUBMISSION OF THIS LEASE BY LANDLORD, ITS AGENT OR REPRESENTATIVE FOR EXAMINATION OR EXECUTION BY TENANT DOES NOT CONSTITUTE AN OPTION OR OFFER TO LEASE THE PREMISES UPON THE TERMS AND CONDITIONS CONTAINED HEREIN OR A RESERVATION OF THE PREMISES IN FAVOR OF TENANT, IT BEING INTENDED HEREBY THAT THIS LEASE SHALL ONLY BECOME EFFECTIVE UPON THE EXECUTION HEREOF BY LANDLORD AND DELIVERY OF A FULLY EXECUTED LEASE TO TENANT.

ARTICLE 39
CAPTIONS

39.1 Paragraph captions are for Landlord's and Tenant's convenience only, and neither limit nor amplify the provisions of this Lease.

ARTICLE 40
CHANGES

40.1 Should any mortgagee require a modification of this Lease, which modification will not bring about any increased cost or expense to Tenant or in any other way materially or adversely affect the rights or obligations of Tenant hereunder, then and in such event Tenant agrees that this Lease may be so modified.

ARTICLE 41
AUTHORITY

41.1 All rights and remedies of Landlord under this Lease, or those which may be provided by law, may be exercised by Landlord in its own name individually, or in its name by its agent, and all legal proceedings for the enforcement of any such rights or remedies, including distress for Rent, unlawful detainer, and any other legal or equitable proceedings may be commenced and prosecuted to final judgment and be executed by Landlord in its own name individually or in its name by its agent. Landlord and Tenant each represent to the other that each has full power and authority to execute this Lease and to make and perform the agreements herein contained, and Tenant expressly stipulates that any rights or remedies available to Landlord, either by the provisions of this Lease or otherwise, may be enforced by Landlord in its own name individually or in its name by its agent or principal.

ARTICLE 42
BROKERAGE

42.1 Tenant represents and warrants to Landlord that it has dealt only with Tenant's Broker, in negotiation of this Lease. Landlord shall make payment of the brokerage fee of 1.5% of the Base Rental income due the Tenant's Broker pursuant to and in accordance with a separate agreement. Except for amounts owing to Tenant's Broker, each party hereby agrees to indemnify and hold the other party harmless of and from any and all damages, losses, costs, or expenses (including, without limitation, all attorneys' fees and disbursements) by reason of any claim of or liability to any other broker or other person claiming through the indemnifying party and arising out of or in connection with the negotiation, execution, and delivery of this Lease. Additionally, except as may be otherwise expressly agreed upon by Landlord in writing, Tenant acknowledges and agrees that Landlord and/or Landlord's agent shall have no obligation for payment of any brokerage fee or similar compensation to any person with whom Tenant has dealt or may in the future deal with respect to leasing of any additional or expansion space in the Project or renewals or extensions of this Lease.

ARTICLE 43
EXHIBITS

43.1 Exhibits A through E are attached hereto and incorporated herein for all purposes and are hereby acknowledged by both parties to this Lease.

ARTICLE 44
APPURTENANCES

44.1 The Premises include the right of ingress and egress thereto and therefrom; however, Landlord reserves the right to make changes and alterations to the North Building and the Project, fixtures and equipment thereof, in the street entrances, doors, halls, corridors, lobbies, passages, elevators, escalators, stairways, toilets and other parts thereof which Landlord may deem necessary or desirable; provided that Tenant at all times has a means of access to the Premises (subject to a temporary interruption due to Force Majeure Events or necessary maintenance that cannot reasonably be performed without such interruption of access). Neither this Lease nor any use by Tenant of the Project or any passage, door, tunnel, concourse, plaza or any other area connecting the garages or other buildings with the Project, shall give Tenant any right or easement of such use and the use thereof may, without notice to Tenant, be regulated or discontinued at any time and from time to time by Landlord without liability of any kind to Tenant and without affecting the obligations of Tenant under this Lease.

ARTICLE 45
PREJUDGMENT REMEDY, REDEMPTION, COUNTERCLAIM, AND JURY

45.1 Tenant, for itself and for all persons claiming through or under it, hereby expressly waives any and all rights which are, or in the future may be, conferred upon Tenant by any present or future law to redeem the Premises, or to any new trial in any action for ejection under any provisions of law, after reentry thereupon, or upon any part thereof, by Landlord, or after any warrant to dispossess or judgment in ejection. If Landlord shall acquire possession of

the Premises by summary proceedings, or in any other lawful manner without judicial proceedings, it shall be deemed a reentry within the meaning of that word as used in this Lease. In the event that Landlord commences any summary proceedings or action for nonpayment of rent or other charges provided for in this Lease, Tenant shall not interpose any counterclaim of any nature or description in any such proceeding or action, unless the same is a mandatory counterclaim or defense.  Tenant and Landlord both waive a trial by jury of any or all issues arising in any action or proceeding between the parties hereto or their successors, under or connected with this Lease, or any of its provisions.

ARTICLE 46
RECORDING

46.1    Tenant shall not record this Lease or any memorandum or notice thereof, but will, at the request of Landlord, execute a memorandum or notice thereof in recordable form satisfactory to both Landlord and Tenant specifying the date of commencement and expiration of the Term of this Lease and other information required by statute.  Landlord may then record such memorandum or notice of lease at Landlord's cost.

ARTICLE 47
MORTGAGEE PROTECTION

47.1    Tenant agrees to give any mortgagees and/or trust deed holders, by registered mail, a copy of any notice of default served upon Landlord, provided that prior to such notice Tenant has been notified, in writing of the address of such mortgagees and/or trust deed holders.  Tenant further agrees that if Landlord shall have failed to cure such default within the time provided for in this Lease, then the mortgagees and/or trust deed holders shall have an additional thirty (30) days within which to cure such default or if such default cannot be cured within that time, then such additional time as may be necessary to cure such default (including but not limited to commencement of foreclosure proceedings, if necessary to effect such cure) in which event this Lease shall not be terminated while such remedies are being so diligently pursued.

ARTICLE 48
OTHER LANDLORD CONSTRUCTION

48.1    Tenant acknowledges that portions of the Project may be under construction following Tenant's occupancy of the Premises, and that such construction may result in levels of noise, dust, odor, obstruction of access, etc. which are in excess of that present in a fully constructed project.  Tenant hereby waives any and all rent offsets or claims of constructive eviction which may arise in connection with such construction.  If any excavation or construction is made adjacent to, upon or within the Project, or any part thereof, Tenant shall afford to any and all persons causing or authorized to cause such excavation or construction license to enter upon the Premises for the purpose of doing such work as such persons shall deem necessary to preserve the Project or any portion thereof from injury or damage and to support the same by proper foundations, braces and supports, without any claim for damages or indemnity or abatement of Rent (subject to the express provisions of this Lease), or of a constructive or actual eviction of Tenant.

48.2 It is specifically understood and agreed that Landlord has no obligation and has made no promises to alter, remodel, improve, renovate, repair or decorate the Premises, the Project, or any part thereof and that no representations respecting the condition of the Premises or the Project have been made by Landlord to Tenant except as specifically set forth herein. However, Tenant hereby acknowledges that during the Lease Term Landlord may in its sole discretion elect to renovate, improve, alter, or modify (collectively, the "Renovations") the Project, the Cafetorium, the North Building and/or the Premises, and that Renovations of the Cafetorium may necessitate a temporary closure of the Cafetorium for such period(s) as may be determined by Landlord. Tenant hereby agrees that such Renovations shall in no way constitute a constructive eviction of Tenant nor entitle Tenant to any abatement of Rent. Landlord shall have no responsibility and shall not be liable to Tenant for any injury to or interference with Tenant's business arising from the Renovations, nor shall Tenant be entitled to any compensation or damages from Landlord for loss of the use of the whole or any part of the Premises or of Tenant's personal property or improvements resulting from the Renovations, or for any inconvenience or annoyance occasioned by such Renovations.

ARTICLE 49
PARKING

49.1 During the initial Term of this Lease, Landlord shall make available to Tenant the Parking Allocation of Unreserved Parking Passes (as defined below) provided by Landlord as described below. Tenant's parking rights and privileges described herein are personal to Tenant and may not be assigned or transferred, or otherwise conveyed, without Landlord's prior written consent, which consent Landlord may withhold in its sole and absolute discretion; provided, however, that if Landlord consents to any Transfer, Landlord shall also consent to the pro-rata assignment of parking rights in connection therewith. As noted in the "Basic Lease Information", the number of Unreserved Parking Passes will be reduced to take into account the area taken up by the Trailers, so long as such Trailers present. In any event, under no circumstances may Tenant's parking rights and privileges be transferred, assigned or otherwise conveyed separate and apart from Tenant's interest in this Lease. In no event will Landlord be liable for any loss, damage or theft of, to or from any vehicle at the Project or given parking rights in accordance with this section, and Tenant releases and will indemnify, defend (with counsel reasonably acceptable to Landlord) and hold the Landlord Parties harmless against any claim therefor or in connection therewith. All parking rights granted hereunder are subject to the other terms of this Lease. Landlord reserves the right to change any existing or future parking area, roads, or driveways, or increase or decrease the size thereof and make any repairs or alterations it deems necessary to the parking area, roads and driveways and Landlord agrees to use commercially reasonable efforts to minimize any interference with Tenant's parking in the course of such repairs or alterations. "Unreserved Parking Pass" means a parking pass, card, sticker or other means of providing access to vehicular parking spaces located in the parking facilities provided for the Project which are not designated for the exclusive use of a specific tenant or for use by visitors to the Project, as the same may be relocated or redesignated from time to time. An Unreserved Parking Pass does not entitle the holder thereof to park in any particular parking space in the parking facilities.

49.2 Notwithstanding Section 49.1, Landlord has the right to lease the parking areas at the Project to the owners or operators of any amusement park and/or sports stadium/area located within three (3) miles of the Project, and/or to allow individual third parties to park at the Project on a discretionary basis for sports or entertainment events (collectively, the "Event Parking"), provided that such Event Parking occurs only between 5:30 p.m. and 4:30 a.m. on business days, or at any time on days which are not business days. Landlord shall be entitled to retain all revenue from Event Parking and no such revenue nor profits therefrom shall be used to offset Operating Expenses or Taxes, it being acknowledged that such revenue is consideration for additional maintenance and other costs which Landlord may incur as a result of the Event Parking. Landlord shall insure that the parking facilities are cleaned prior to 7:00 a.m. the next business day after any such event.

ARTICLE 50
ELECTRICAL CAPACITY

50.1 Tenant covenants and agrees that at all times, its use of electric energy shall never exceed the capacity of the existing feeders to the Project or the risers of wiring installation. Any riser or risers to supply Tenant's electrical requirements upon written request of Tenant shall be installed by Landlord at the sole cost and expense of Tenant, if, in Landlord's sole judgment, the same are necessary and will not cause or create a dangerous or hazardous condition or entail excess or unreasonable alterations, repairs or expense or interfere with or disrupt other tenants or occupants. In addition to the installation of such riser or risers, Landlord will also, at the sole cost and expense of Tenant, install all other equipment proper and necessary in connection therewith subject to the aforesaid terms and conditions.

ARTICLE 51
*INTENTIONALLY OMITTED*

51.1 *Intentionally Omitted.*

ARTICLE 52
TELECOMMUNICATIONS LINES AND EQUIPMENT

52.1 Location of Tenant's Equipment and Landlord Consent:

52.1.1 Tenant may install, maintain, replace, remove and use communications or computer wires, cables and related devices (collectively, the "Lines") at the Project in or serving the Premises only with Landlord's prior written consent, which consent may not be unreasonably withheld, conditioned, or delayed. Tenant shall locate all electronic telecommunications equipment within the Premises and shall coordinate the location of all Lines with Landlord. Any request for consent shall contain such information as Landlord may request. Landlord hereby consents to any such equipment located in the Premises as of the date hereof.

52.1.2 Landlord's approval of, or requirements concerning, the Lines or any equipment related thereto, the plans, specifications or designs related thereto, the contractor or subcontractor, or the work performed hereunder, shall not be deemed a warranty as to the

adequacy or appropriateness thereof, and Landlord hereby disclaims any responsibility or liability for the same.

52.1.3  If Landlord consents to Tenant's proposal, Tenant shall pay all of Tenant's and Landlord's third party costs in connection therewith (including without limitation all costs related to new Lines) and shall use, maintain and operate the Lines and related equipment in accordance with and subject to all laws governing the Lines and equipment and at Tenant's sole risk and expense.  Tenant shall comply with all of the requirements of this Lease concerning alterations in connection with installing the Lines.  As soon as the work is completed, Tenant shall submit as-built drawings to Landlord.

52.1.4  Landlord reserves the right to require that Tenant remove any Lines located in or serving the Premises which are installed in violation of these provisions, or which are at any time in violation of any laws or present a dangerous or potentially dangerous condition (whether such Lines were installed by Tenant or any other party), within three (3) days after written notice.

52.2    Reallocation of Line Space.  Landlord may (but shall not have the obligation to) (a) install and relocate Lines at the Project; and (b) monitor and control the installation, maintenance, replacement and removal of, the allocation and periodic re-allocation of available space (if any) for, and the allocation of excess capacity (if any) on, any Lines now or hereafter installed at the Project by Landlord, Tenant or any other party.

52.3    Line Problems:  Except to the extent arising from the gross negligence or willful misconduct of Landlord or Landlord's contractors, agents or employees, Landlord shall have no liability for damages arising from, and Landlord does not warrant that the Tenant's use of any Lines will be free from the following (collectively called "Line Problems"):  (a) any shortages, failures, variations, interruptions, disconnections, loss or damage caused by the installation, maintenance, or replacement, use or removal of Lines by or for other tenants or occupants in the Project, by any failure of the environmental conditions or the power supply for the Project to conform to any requirement of the Lines or any associated equipment, or any other problems associated with any Lines by any other cause; (b) any failure of any Lines to satisfy Tenant's requirements; or (c) any eavesdropping or wiretapping by unauthorized parties. Landlord in no event shall be liable for damages by reason of loss of profits, business interruption or other consequential damage arising from any Line Problems.

52.4    Electromagnetic Fields:  If Tenant at any time uses any equipment that may create an electromagnetic field and/or radio frequency exceeding the normal insulation ratings of ordinary twisted pair riser cable or cause radiation higher than normal background radiation, Landlord reserves the right to require Tenant to appropriately insulate that equipment and the Lines therefor (including without limitation riser cables), and take such other remedial action at Tenant's sole cost and expense as Lender may require in its sole discretion to prevent such excessive electromagnetic fields, radio frequency or radiation.

52.5    Removal of Telecommunications Wires.

52.5.1  Within thirty (30) days after the expiration or sooner termination of the Lease, Landlord may elect by written notice to Tenant to:

(a)    Retain any or all Lines installed by Tenant in the risers of the Project;

(b)    Remove any or all such Lines and restore the Premises and risers to their condition existing prior to the installation of the Lines ("Wire Restoration Work").  Landlord shall perform such Wire Restoration Work at Tenant's sole cost and expense; or

(c)    Require Tenant to perform the Wire Restoration Work at Tenant's sole cost and expense.

52.5.2  In the event Landlord elects to retain the Lines, Tenant covenants that Tenant shall have good right to surrender such Lines, free of all liens and encumbrances, and that all Lines shall be left in their then existing condition, reasonable wear and tear excepted, properly labeled at each end and in each telecommunications/electrical closet and junction box, and in safe condition.

52.5.3  In the event Tenant fails or refuses to pay all costs of the Wire Restoration Work within fifteen (15) days of Tenant's receipt of Landlord's notice requesting Tenant's reimbursement for or payment of such costs, Landlord may apply all or any portion of Tenant's Security Amount toward the payment of such unpaid costs relative to the Wire Restoration Work.  The retention or application of such Security Amount by Landlord pursuant to this clause does not constitute a limitation on or waiver of Landlord's right to seek further remedy under law or equity.  The provisions of this clause shall survive the expiration or sooner termination of the Lease.

ARTICLE 53
ERISA

53.1    It is understood that from time to time during the Lease Term, Landlord may be subject to the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and as a result may be prohibited by law from engaging in certain transactions.  Tenant represents and warrants to Landlord that to the best of its knowledge after due inquiry that as of the date of this Lease and at any time thereafter when its terms are amended or modified, (i) neither Tenant nor its affiliates (within the meaning of Part V(c) of Prohibited Transaction Exemption 84-14 granted by the U.S. Department of Labor, as amended ("PTE 84-14")) has the authority to appoint or terminate Prudential as investment manager of any assets of the employee benefit plans, nor to negotiate the terms of any management agreement between Prudential and any such plan; (ii) the undersigned is not a related party of Prudential (as defined in V(h) of PTE 84-14), and (iii) the terms of the Lease have been negotiated and determined at arm's length, as such terms would be negotiated and determined by unrelated parties.

*[signature pages follow]*

IN WITNESS WHEREOF, Landlord and Tenant, acting herein through duly authorized individuals, have caused these presents to be executed as of the date first above written.

TENANT:

NORTEL NETWORKS INC.,
a Delaware corporation

By:______________________________________

______________________________________
[Printed Name and Title]

If Tenant is a corporation, the bylaws or a certified copy of the resolution, as the case may be, must be provided to Landlord showing authorization of the signatory.

LANDLORD:

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,
a New Jersey corporation

By:______________________________

Name:___________________________

Title:____________________________

# EXHIBIT A

## LEGAL DESCRIPTION

# EXHIBIT B

## PREMISES

(See Attached)

# EXHIBIT C

## GENERATOR AND TRAILER LOCATIONS

## AS OF THE COMMENCEMENT DATE

Exhibit C
1

EXHIBIT D

RULES AND REGULATIONS

Tenant shall faithfully observe and comply with the following Rules and Regulations. Landlord shall not be responsible to Tenant for the nonperformance of any of such Rules and Regulations by or otherwise with respect to the acts or omissions of any other tenants or occupants of the North Building or the Project.

1. Tenant shall not alter any lock or install any new or additional locks or bolts on any doors or windows of the Premises without obtaining Landlord's prior written consent. Tenant shall bear the cost of any lock changes or repairs required by Tenant. Two keys will be furnished by Landlord for the Premises, and any additional keys required by Tenant must be obtained from Landlord at a reasonable cost to be established by Landlord. For purposes of clarification, the initial Tenant's existing locks and card key system are hereby deemed consented to by Landlord.

2. All doors opening to public corridors shall be kept closed at all times except for normal ingress and egress to the Premises, unless electrical hold backs have been installed.

3. Landlord reserves the right to close and keep locked all entrance and exit doors of the North Building during such hours as are customary for comparable buildings in the vicinity of the North Building. Tenant, its employees and agents must be sure that the doors to the North Building are securely closed and locked when leaving the Premises if it is after the normal hours of business for the North Building. Any tenant, its employees, agents or any other persons entering or leaving the North Building at any time when it is so locked, or any time when it is considered to be after normal business hours for the North Building, may be required to sign the North Building register when so doing. After-hours access by Tenant's authorized employees may be provided by card-key access or other procedures adopted by Landlord from time to time; Tenant shall pay for the costs of all access cards provided to Tenant's employees and all replacements thereof for lost, stolen or damaged cards. Access to the North Building and/or Project may be refused unless the person seeking access has proper identification or has a previously arranged pass for such access. Landlord and its agents shall in no case be liable for damages for any error with regard to the admission to or exclusion from the North Building and/or Project of any person. In case of invasion, mob, riot, public excitement, or other commotion, Landlord reserves the right to prevent access to the North Building and/or the Project during the continuance of same by any means it deems appropriate for the safety and protection of life and property.

4. Landlord shall have the right to prescribe the weight, size and position of all safes and other heavy property brought into the North Building. Safes and other heavy objects shall, if considered necessary by Landlord, stand on supports of such thickness as is necessary to properly distribute the weight. Landlord will not be responsible for loss of or damage to any such safe or property in any case. All damage done to any part of the North Building, its contents, occupants or visitors by moving or maintaining any such safe or other property shall be the sole responsibility of Tenant and any expense of said damage or injury shall be borne by Tenant.

5. Except for intra-office distribution of mail and supplies in the ordinary course, no furniture, freight, packages, supplies, equipment or merchandise will be brought into or removed from the North Building or carried up or down in the elevators, except upon prior notice to Landlord, and in such manner, in such specific elevator, and between such hours as shall be designated by Landlord. Tenant shall provide Landlord with not less than twenty-four (24) hours' prior notice of the need to utilize an elevator for any such purpose, so as to provide Landlord with a reasonable period to schedule such use and to install such padding or take such other actions or prescribe such procedures as are appropriate to protect against damage to the elevators or other parts of the North Building. For purposes of clarification, this Rule 5 shall not be binding on the initial Tenant so long as it leases (directly and/or through subleases) the entire North Building.

6. Landlord shall have the right to control and operate the public portions of the North Building and the Project, the public facilities, the heating and air conditioning, and any other facilities furnished for the common use of tenants, in such manner as is customary for comparable buildings in the vicinity of the North Building. For purposes of clarification, this Rule 6 shall not be applicable to the Lease so long as the initial Tenant leases (directly and/or through subleases) the entire North Building.

7. The requirements of Tenant will be attended to only upon application at the management office of the Project or at such other location as may be designated by Landlord. Employees of Landlord shall not perform any work or do anything outside their regular duties unless under special instructions from Landlord.

8. Tenant shall not disturb, solicit, or canvass any occupant of the North Building or the Project and shall cooperate with Landlord or Landlord's agents to prevent same.

9. The toilet rooms, urinals, wash bowls and other apparatus shall not be used for any purpose other than that for which they were constructed, and no foreign substance of any kind whatsoever shall be thrown therein. The expense of any breakage, stoppage or damage resulting from the violation of this rule shall be borne by the tenant who, or whose employees or agents, shall have caused it.

10. Tenant shall not overload the floor of the Premises. Tenant shall not mark, drive nails or screws, or drill into the partitions, woodwork or plaster or in any way deface the Premises or any part thereof without Landlord's consent first had and obtained; provided, however, Landlord's prior consent shall not be required with respect to Tenant's placement of pictures and other normal office wall hangings on the interior walls of the Premises (but at the end of the Lease Term, Tenant shall repair any holes and other damage to the Premises resulting therefrom).

11. Except for vending machines intended for the sole use of Tenant's employees and invitees, no vending machine or machines of any description other than fractional horsepower office machines shall be installed, maintained or operated upon the Premises without the written consent of Landlord. For purposes of clarification, the initial Tenant's existing vending machines, laboratory equipment and other personal property in the Premises as of the Effective Date are hereby deemed consented to by Landlord.

12.     Tenant shall not use any method of heating or air conditioning other than that which may be supplied by Landlord, without the prior written consent of Landlord.

13.     Tenant shall not use or keep in or on the Premises, the North Building or the Project any kerosene, gasoline or other inflammable or combustible fluid or material.  Tenant shall not use, keep or permit to be used or kept, any foul or noxious gas or substance in or on the Premises, or permit or allow the Premises to be occupied or used in a manner offensive or objectionable to Landlord or other occupants of the North Building or the Project by reason of noise, odors, or vibrations, or interfere in any way with other tenants or those having business therewith.  For purposes of clarification, the initial Tenant's backup generator is hereby deemed consented to by Landlord.

14.     Tenant shall not bring into or keep within the Project, the North Building or the Premises any animals (except service animals), birds, bicycles or other vehicles.

15.     No cooking shall be done or permitted by Tenant on the Premises, nor shall the Premises be used for the bulk storage of merchandise (e.g., warehousing), for lodging or for any improper, objectionable or immoral purposes.  Notwithstanding the foregoing, Underwriters' laboratory-approved equipment and microwave ovens may be used in the Premises for heating food and brewing coffee, tea, hot chocolate and similar beverages, provided that such use is in accordance with all applicable federal, state and city laws, codes, ordinances, rules and regulations, and does not cause odors which are objectionable to Landlord and other tenants.

16.     Landlord will approve where and how telephone and data cabling and wires are to be introduced to the Premises.  No boring or cutting for wires shall be allowed without the consent of Landlord.  The location of telephone, call boxes and other office equipment affixed to the Premises shall be subject to the approval of Landlord.  For purposes of clarification, the initial Tenant's existing telephone and data cabling and wires, call boxes and other equipment are hereby deemed consented to by Landlord.

17.     Landlord reserves the right to exclude or expel from the North Building and/or the Project any person who, in the judgment of Landlord, is intoxicated or under the influence of liquor or drugs, or who shall in any manner do any act in violation of any of these Rules and Regulations.

18.     Tenant, its employees and agents shall not loiter in the entrances or corridors, nor in any way obstruct the sidewalks, lobby, halls, stairways or elevators, and shall use the same only as a means of ingress and egress for the Premises.

19.     Tenant shall not waste electricity, water or air conditioning and agrees to cooperate fully with Landlord to ensure the most effective operation of the North Building's heating and air conditioning system, and shall refrain from attempting to adjust any controls.  For purposes of clarification, this Rule 19 shall not be binding on the initial Tenant so long as it leases (directly and/or through subleases) the entire North Building.

20.     Tenant shall store all its trash and garbage within the interior of the Premises.  No material shall be placed in the trash boxes or receptacles if such material is of such nature that it

may not be disposed of in the ordinary and customary manner of removing and disposing of trash and garbage in the City of San Jose without violation of any law or ordinance governing such disposal. All trash, garbage and refuse disposal shall be made only through entry-ways and elevators provided for such purposes at such times as Landlord shall designate.

21. Tenant shall comply with all safety, fire protection and evacuation procedures and regulations established by Landlord or any governmental agency.

22. Tenant shall assume any and all responsibility for protecting the Premises from theft, robbery and pilferage, which includes keeping doors locked and other means of entry to the Premises closed, when the Premises are not occupied.

23. No awnings or other projection shall be attached to the outside walls of the North Building without the prior written consent of Landlord. No curtains, blinds, shades or screens shall be attached to or hung in, or used in connection with, any window or door of the Premises without the prior written consent of Landlord. The sashes, sash doors, skylights, windows, and doors that reflect or admit light and air into the halls, passageways or other public places in the North Building shall not be covered or obstructed by Tenant, nor shall any bottles, parcels or other articles be placed on the windowsills. All electrical ceiling fixtures hung in offices or spaces along the perimeter of the North Building must be fluorescent and/or of a quality, type, design and bulb color approved by Landlord.

24. The washing and/or detailing of or, the installation of windshields, radios, telephones in or general work on, automobiles shall not be allowed on the Project.

25. Food vendors shall be allowed in the North Building upon receipt of a written request from the Tenant. The food vendor shall service only the tenants that have a written request on file in the management office of the Project. Under no circumstance shall the food vendor display their products in a public or common area including corridors and elevator lobbies. Any failure to comply with this rule shall result in immediate permanent withdrawal of the vendor from the North Building.

26. Tenant must comply with reasonable requests by Landlord concerning the informing of their employees of items of importance to the Landlord, e.g., compliance with Applicable Law, distribution of life safety information, and the like.

27. Tenant shall comply with any non-smoking ordinance adopted by any applicable governmental authority. Without limiting the generality of the foregoing, Tenant, its employees and invitees are prohibited from smoking in the North Building or within twenty (20) feet of any entrances to the North Building. Landlord reserves the right to designate approved smoking areas within the Project.

28. Landlord may waive any one or more of these Rules and Regulations for the benefit of any particular tenant or tenants, but no such waiver by Landlord shall be construed as a waiver of such Rules and Regulations in favor of any other tenant or tenants, nor prevent Landlord from thereafter enforcing any such Rules or Regulations against any or all tenants of the North Building and/or the Project. Landlord reserves the right at any time to change or rescind any one

or more of these Rules and Regulations, or to make such other and further reasonable, non-discriminatory Rules and Regulations as in Landlord's judgment may from time to time be necessary for the management, safety, care and cleanliness of the Premises, the North Building and the Project, and for the preservation of good order therein, as well as for the convenience of other occupants and tenants therein.  Landlord shall not be responsible to Tenant or to any other person for the nonobservance of the Rules and Regulations by another tenant or other person. Tenant shall be deemed to have read these Rules and Regulations and to have agreed to abide by them as a condition of its occupancy of the Premises.

# EXHIBIT E

## AREAS OF RETAINED PERSONAL PROPERTY

TABLE OF CONTENTS

Page

ARTICLE 1 PREMISES....3

ARTICLE 2 TERM AND CONDITION OF PREMISES....5

ARTICLE 3 USE, NUISANCE, OR HAZARD....6

ARTICLE 4 RENT....7

ARTICLE 5 RENT ADJUSTMENT....9

ARTICLE 6 SERVICES TO BE PROVIDED BY LANDLORD....17

ARTICLE 7 REPAIRS AND MAINTENANCE BY LANDLORD....19

ARTICLE 8 REPAIRS AND CARE OF PROJECT BY TENANT....19

ARTICLE 9 TENANT'S EQUIPMENT AND INSTALLATIONS IN THE PREMISES....20

ARTICLE 10 FORCE MAJEURE....21

ARTICLE 11 CONSTRUCTION, MECHANICS' AND MATERIALMAN'S LIENS....21

ARTICLE 12 *INTENTIONALLY OMITTED*....22

ARTICLE 13 INSURANCE....22

ARTICLE 14 QUIET ENJOYMENT....24

ARTICLE 15 ALTERATIONS....24

ARTICLE 16 FURNITURE, FIXTURES, AND PERSONAL PROPERTY....26

ARTICLE 17 PERSONAL PROPERTY AND OTHER TAXES....28

ARTICLE 18 ASSIGNMENT AND SUBLETTING....28

ARTICLE 19 DAMAGE OR DESTRUCTION....32

ARTICLE 20 CONDEMNATION....35

ARTICLE 21 HOLD HARMLESS....36

ARTICLE 22 DEFAULT BY TENANT....36

ARTICLE 23 *INTENTIONALLY OMITTED*....41

ARTICLE 24 *INTENTIONALLY OMITTED* .....41

ARTICLE 25 ATTORNEYS' FEES .....41

ARTICLE 26 NON-WAIVER .....41

ARTICLE 27 RULES AND REGULATIONS .....42

ARTICLE 28 ASSIGNMENT BY LANDLORD .....42

ARTICLE 29 LIABILITY OF LANDLORD .....42

ARTICLE 30 SUBORDINATION AND ATTORNMENT .....43

ARTICLE 31 HOLDING OVER .....44

ARTICLE 32 SIGNS .....45

ARTICLE 33 HAZARDOUS SUBSTANCES .....46

ARTICLE 34 COMPLIANCE WITH LAWS AND OTHER REGULATIONS .....48

ARTICLE 35 SEVERABILITY .....49

ARTICLE 36 NOTICES .....49

ARTICLE 37 OBLIGATIONS OF, SUCCESSORS, PLURALITY, GENDER .....49

ARTICLE 38 ENTIRE AGREEMENT .....50

ARTICLE 39 CAPTIONS .....50

ARTICLE 40 CHANGES .....50

ARTICLE 41 AUTHORITY .....50

ARTICLE 42 BROKERAGE .....51

ARTICLE 43 EXHIBITS .....51

ARTICLE 44 APPURTENANCES .....51

ARTICLE 45 PREJUDGMENT REMEDY, REDEMPTION, COUNTERCLAIM, AND JURY .....51

ARTICLE 46 RECORDING .....52

ARTICLE 47 MORTGAGEE PROTECTION .....52

ARTICLE 48 OTHER LANDLORD CONSTRUCTION .......... 52

ARTICLE 49 PARKING .......... 53

ARTICLE 50 ELECTRICAL CAPACITY .......... 54

ARTICLE 51 *INTENTIONALLY OMITTED* .......... 54

ARTICLE 52 TELECOMMUNICATIONS LINES AND EQUIPMENT .......... 54

ARTICLE 53 ERISA .......... 56