## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*                                              :        Chapter 11

Nortel Networks Inc., *et al.*,[1]                   :        Case No. 09-10138 (KG)

                            Debtors.                 :        Jointly Administered

                                                     :

                                                     :        **Hearing date: September 2, 2009 at 10:00 AM (ET)**
                                                     :        **Objections due: August 26, 2009 at 4:00 PM (ET)**

-------------------------------------------------------X

## DEBTORS' MOTION FOR AUTHORIZATION TO TAKE
## ACTIONS IN FURTHERANCE OF AN AGREEMENT
## WITH THE PENSION BENEFIT GUARANTY CORPORATION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and

363 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing the

Debtors, to the extent necessary, to take any actions that the Debtors may deem to be necessary

or beneficial to their estates in furtherance of the Agreement for Appointment of Trustee and

Termination of Plan (the "Trusteeship Agreement"), attached hereto in substantially final form as

Exhibit B; and granting them such other and further relief as the Court deems just and proper.  In

support of this Motion, the Debtors respectfully represent as follows:

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[New York #2091907 v3]

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

Alternatively, this matter would constitute a related to proceeding within the meaning of 28

U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105 and 363 of the

Bankruptcy Code.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings").  The Canadian Debtors continue to manage their properties and operate their

businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as court-appointed

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

"Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

8.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI (and one of the Debtors), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, the Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.**     **Debtors' Corporate Structure and Business**

9.     A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

### Relief Requested

10.     The Pension Benefit Guaranty Corporation ("PBGC") and the Retirement Plan Committee of the Nortel Networks Retirement Income Plan (the "Plan Administrator") have negotiated an agreement in principle that would provide for the termination of the Nortel Networks Retirement Income Plan (the "Pension Plan").  In an abundance of caution, NNI, as the Pension Plan's sponsor, seeks an order authorizing NNI to take any steps it may deem necessary or beneficial in furtherance of the Trusteeship Agreement, to the extent such Trusteeship Agreement is executed by the PBGC and Plan Administrator, and granting such other and further relief as the Court deems just and proper.

### Facts Relevant to this Motion

11.     NNI sponsors the Pension Plan, a tax-qualified, single-employer, defined benefit pension plan which is covered by Title IV of ERISA.  See 29 U.S.C. §§ 1301(a)(13), 1321(a). As of January 1, 2009, there were approximately 22,220 present and former employees of Nortel (and their beneficiaries) entitled to receive pension benefits under the terms of the Pension Plan.

12.     On July 17, 2009, the PBGC filed a complaint in the Middle District of Tennessee (Case No. 09-cv-00657) (the "Termination Action") seeking the involuntary termination of the Pension Plan.  The complaint also seeks to appoint the PBGC as statutory trustee of the Pension Plan, to establish July 17, 2009 as the termination date for the Pension Plan, and to direct the

---

[4]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Plan Administrator, NNI (as the Pension Plan's sponsor) and any other parties who have control of any records, assets or other property of the Pension Plan to transfer, convey and deliver all such records, assets and property to the PBGC.  The PBGC alleged that the Pension Plan will be unable to pay benefits when due and that the possible long-run loss of the PBGC with respect to the Pension Plan may reasonably be expected to increase unreasonably if the Pension Plan is not terminated in accordance with the conditions required for plan termination under 29 U.S.C. §§ 1342(a)(2) and (4).

13.    Under 29 U.S.C. § 1342, the PBGC has the right to terminate the plan if certain conditions are met.  As discussed above, the PBGC has alleged that the Pension Plan meets those termination requirements.   Pursuant to section 1342(c)(3), the PBGC and the "plan administrator" may agree to the appointment of a trustee once the PBGC has initiated termination proceedings.  29 U.S.C. § 1342(c)(3).  Accordingly, the Plan Administrator and the PBGC have negotiated, in good faith and at arms' length, to terminate the Pension Plan and appoint the PBGC as trustee of the Pension Plan, as discussed more fully in the Trusteeship Agreement.

14.    Here, the Plan Administrator is a separate and distinct governing body from NNI, with specific fiduciary duties to the Pension Plan participants under the governance structure of the Pension Plan and ERISA.  See 29 U.S.C. 1001 et seq.  The Debtors are not signatories to the Trusteeship Agreement and have no clear obligations under the Trusteeship Agreement; however, given that NNI is the Pension Plan's sponsor and was a named defendant in the Termination Proceeding, in an abundance of caution, NNI requests authorization to take all necessary or appropriate actions to effectuate the Trusteeship Agreement and plan termination.

15.     The Debtors do not concede the validity of the claims the PBGC asserts in the

Termination Action or the applicability of any liens the PBGC may assert against the Debtors or

their estates.    Nevertheless, the Debtors understand that the Plan Administrator has determined

that it is appropriate to agree to plan termination pursuant to the terms described more fully in

the Trusteeship Agreement.

**Basis for Relief**

16.     Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable

powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  This

is consistent with the broad equitable authority of the bankruptcy courts.  See, e.g., United States

v. Energy Res. Co., 495 U.S. 545, 549 (1990).

17.     Section 363(b) of the Bankruptcy Code permits a debtor to use property of the

estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.

Section 363 applies when an agreement involves the disposition of the estate's assets in such a

way that it ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91

F.3d 389, 395 (3d Cir. 1996).

18.     The use or transfer of estate property under this provision must be supported by a

sound business purpose.  The Committee of Equity Security Holders v. Lionel Corporation (In re

Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No.

00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The Dai-Ichi Kangyo Bank, Ltd. v.

Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153

(D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers

Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL

821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071). Courts have distinguished the application of this section to settlements as opposed to property sales, finding that the settlement of claims requires less scrutiny than asset sales because settlements must be approved quickly and are often an important first step in formulating a plan. Official Unsecured Creditors' Committee of Pennsylvania Truck Lines v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines), 150 B.R. 595, 599 (E.D. Pa., 1992) (quoting In re Grant Broadcasting of Phila., Inc., 71 B.R. 390, 398 (Bankr.E.D. Pa. 1987) and In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 805 (E.D. Pa. 1986)).

19.    The Debtors submit that they are not signatories to the Trusteeship Agreement and have no pending obligations under the Trusteeship Agreement; however, given NNI's role as plan sponsor and as a named defendant in the Termination Proceeding, in an abundance of caution, the Debtors request authorization (but not direction) to perform any obligations required of them to effectuate the Trusteeship Agreement to the extent it is executed, including without limitation the provision of information and documents to the PBGC and/or the Plan Administrator, the execution of agreements and any other steps the Debtors may determine to be necessary or desirable to their estates.

## Notice

20.    Notice of the Motion has been given via overnight mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) the PBGC and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

21.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated: August 13, 2009               CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware
                                     James L. Bromley (No. 5125)
                                     Lisa M. Schweitzer (No. 1033)
                                     One Liberty Plaza
                                     New York, New York 10006
                                     Telephone:  (212) 225-2000
                                     Facsimile:  (212) 225-3999

                                                 - and -

                                     MORRIS, NICHOLS, ARSHT & TUNNELL LLP


                                     Derek C. Abbott (No. 3376)
                                     Eric D. Schwartz (No. 3134)
                                     Ann C. Cordo (No. 4817)
                                     Andrew R. Remming (No. 5120)
                                     Chad A. Fights (No. 5006)
                                     1201 North Market Street
                                     P.O. Box 1347
                                     Wilmington, Delaware 19801
                                     Telephone:  (302) 658-9200
                                     Facsimile: (302) 658-3989

                                     *Counsel for the Debtors*
                                     *and Debtors in Possession*