# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------X
                                    :
In re                               :      Chapter 11
                                    :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,  1    :      Jointly Administered
                                    :
                 Debtors            :      Objection Deadline: September 14, 2009 at 4:00 p.m. (ET)
                                    :      Hearing Date: Scheduled only if necessary
---------------------------------------------------------X
```

## SIXTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2009 THROUGH JULY 31, 2009

This is a(n): __X__ monthly _____ interim _____ final application.

Name of Applicant:  Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide
Professional Services to: Official Committee of Unsecured Creditors

Date of Retention: March 5, 2009 (nunc pro tunc to January 22, 2009)

Period for which Compensation
and Reimbursement is sought: July 1, 2009 through July 31, 2009

Amount of Compensation sought as
actual, reasonable, and necessary: $1,042,206.00

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: $24,587.92

The total time expended during this Compensation Period for the preparation of Akin Gump's Fifth Monthly Fee Application was 30.70 hours and the corresponding compensation is $12,941.00.

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

8195471 v3

**Prior Fee Applications:**

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/22/09 – 02/28/09<br><br>(First Monthly Fee Application) | $1,002,466.75 | $14,994.50 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the First Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the First Monthly Fee Application. |
| 03/01/09 – 03/31/09<br><br>(Second Monthly Fee Application) | $866,587.25 | $14,080.55 | On July 17, 2009, this court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Second Monthly Fee Application.  Akin Gump voluntarily agreed to reduce the expenses requested by $1,459.22.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Second Monthly Fee Application. |
| 04/01/09 – 04/30/09<br><br>(Third Monthly Fee Application) | $919,594.75 | $22,201.07 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Third Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Third Monthly Fee Application. |

| | | | |
|---|---|---|---|
| 05/01/09 – 05/31/09<br><br>(Fourth Monthly Fee Application) | $766,765.75 | $54,512.10 | On July 17, 2009, Akin Gump filed a certificate of no objection (Docket No. 1112) with respect to the Fourth Monthly Fee Application.  Akin Gump has received payment of 80% of the fees and 100% of the expenses requested in the Fourth Monthly Fee Application. |
| 06/01/09 – 06/30/09<br><br>(Fifth Monthly Fee Application) | $962,202.75 | $25,000.85 | On August 21, 2009, Akin Gump filed a certificate of no objection (Docket No. 1357) with respect to the Fifth Monthly Fee Application, Akin Gump has not received payment of the fees and expenses requested in the Fifth Monthly Fee Application. |

**SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
RENDERING SERVICES DURING THE PERIOD
JULY 1, 2009 THROUGH JULY 31, 2009**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 10 years; Admitted in 1989; Financial Restructuring Department | $925 | 15.70 | $14,522.50 |
| David H. Botter | Partner for 8 years; Admitted in 1990; Financial Restructuring Department | $825 | 58.90 | $48,592.50 |
| David J. D'Urso | Partner for 3 years; Admitted in 1997; Corporate Department | $700 | 108.85 | $76,195.00 |
| Paul B. Hewitt | Partner for 26 years; Admitted in 1974; Litigation Department | $755 | 1.80 | $1,359.00 |
| Fred S. Hodara | Partner for 20 years; Admitted in 1982; Financial Restructuring Department | $950 | 149.05 | $141,597.50 |
| Karol A. Kepchar | Partner for 10 years; Admitted in 1992; Intellectual Property Department | $620 | 3.40 | $2,108.00 |
| Stephen B. Kuhn | Partner for 9 years; Admitted in 1991; Corporate Department | $745 | 194.90 | $145,200.50 |
| Alan L. Laves | Partner for 15 years; Admitted in 1985; Corporate Department | $750 | 11.70 | $8,775.00 |
| Jordan J. Metzger | Partner for 8 years; Admitted in 1984; Real Estate Department | $595 | 4.40 | $2,618.00 |
| Robert H. Pees | Partner for 13 years; Admitted in 1988; Litigation Department | $765 | 4.20 | $3,213.00 |
| Abid Qureshi | Partner for 2 years;  Admitted in 1995; Financial Restructuring Department | $675 | 1.40 | $945.00 |
| Kim E. Ramsey | Partner for 19 years; Admitted in 1981; Corporate Department | $620 | 1.60 | $992.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Aaron A. Scow | Partner for 1 year; Admitted in 1998; Corporate Department | $525 | 4.30 | $2,257.50 |
| Bruce E. Simonetti | Partner for 5 years; Admitted in 1995; ERISA Department | $755 | 32.90 | $24,839.50 |
| Mark J. Volow | Partner for 20 years; Admitted in 1981; Corporate Department | $730 | 5.90 | $4,307.00 |
| W. Thomas Weir | Partner for 27 years; Admitted in 1973; Tax Department | $730 | 13.10 | $9,563.00 |
| Kenneth A. Davis | Senior Counsel for 2 years; Admitted in 1995; Financial Restructuring Department | $620 | 80.50 | $49,910.00 |
| Ira L. Rosenblatt | Senior Counsel for 1 year; Admitted in 1997; Corporate Department | $610 | 3.40 | $2,074.00 |
| Kevin M. Rowe | Senior Counsel for 9 years; Admitted in 1985; Tax Department | $650 | 60.40 | $39,260.00 |
| Alexander F. Anderson | Counsel for 3 years; Admitted in 2001; Tax Department | $580 | 63.60 | $36,888.00 |
| David T. Blonder | Counsel for 1 year; Admitted in 2001; Litigation Department | $500 | 7.50 | $3,750.00 |
| Michelle A. Burg | Counsel for 3 years; Admitted in 2001; Labor Department | $625 | 3.60 | $2,250.00 |
| Tony D. Feurstein | Counsel for 1 year; Admitted in 2003; Corporate Department | $580 | 198.45 | $115,101.00 |
| Ryan C. Jacobs | Counsel for 1 year; Admitted in 2004; Financial Restructuring Department | $530 | 210.40 | $111,512.00 |
| Austin S. Lilling | Counsel for 2 years; Admitted in 2001; Tax Department | $560 | 18.20 | $10,192.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
| --- | --- | --- | --- | --- |
| Roman V. Troitsky | Counsel for 4 years; Admitted in 2001; Corporate Department | $610 | 11.90 | $7,259.00 |
| David C. Vondle | Counsel for 1 year; Admitted in 2003; Intellectual Property Department | $490 | 30.20 | $14,798.00 |
| Brad M. Kahn | Associate for 2 years; Admitted in 2008; Financial Restructuring Department | $375 | 150.70 | $56,512.50 |
| Lauren H. Leyden | Associate for 4 years; Admitted in 2006; Labor Department | $495 | 6.00 | $2,970.00 |
| Andrew M. Meehan | Associate for 2 years; Admitted in 2007; Litigation Department | $375 | 13.60 | $5,100.00 |
| Nyron J. Persaud | Associate for 2 years; Admitted in 2008; Tax Department | $375 | 6.00 | $2,250.00 |
| Joshua Y. Sturm | Associate for 3 years; Admitted in 2007; Financial Restructuring Department | $420 | 88.60 | $37,212.00 |
| Daniel Z. Vira | Associate for 9 years; Admitted in 1993; ERISA Department | $580 | 31.60 | $18,328.00 |
| Riana A. Cohen | Law Clerk; Second Year Law Student | $300 | 28.50 | $8,550.00 |
| Mathew H. Farmer | Law Clerk; Second Year Law School Student | $300 | 27.50 | $8,250.00 |
| Patrick M. Mott | Law Clerk; Second Year Law School Student | $300 | 23.00 | $6,900.00 |
| Stephanie L. Patton | Law Clerk; Second Year Law School Student | $300 | 44.80 | $13,440.00 |
| Rebecca  L.M. Barloon | Legal Assistant for 2 years; Financial Restructuring Department | $190 | 2.80 | $532.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Peter J. Sprofera | Legal Assistant for 33 years; Financial Restructuring Department | $245 | 8.50 | $2,082.50 |

Total Amount of Fees:      $1,042,206.00
Total Number of Hours:    1,731.85
Blended Hourly Rate:       $601.79

## COMPENSATION BY PROJECT CATEGORY
## JULY 1, 2009 THROUGH JULY 31, 2009

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 9.40 | $4,854.00 |
| Akin Gump Fee Applications/Monthly Billing Reports | 30.70 | $12,941.00 |
| Analysis of Other Professionals Fee Applications/Reports | 7.20 | $3,196.00 |
| Review/Preparation of Schedules, Statements | 0.70 | $371.00 |
| Retention of Professionals | 9.10 | $3,358.50 |
| Creditors Committee Meetings | 189.60 | $114,877.50 |
| Court Hearings | 31.80 | $20,868.50 |
| Financial Reports and Analysis | 0.60 | $360.00 |
| DIP, Cash Collateral Usage and Exit Financing | 36.80 | $20,555.00 |
| Executory Contracts/License Agreements | 10.90 | $5,469.00 |
| General Claims Analysis/Claims Objections | 87.00 | $37,734.00 |
| Analysis of Pre-Petition Transactions | 6.10 | $3,399.50 |
| Canadian Proceedings/Matters | 15.30 | $8,413.00 |
| General Adversary Proceedings | 21.60 | $8,700.00 |
| Tax Issues | 133.90 | $76,117.00 |
| Labor Issues/Employee Benefits | 168.70 | $117,931.00 |
| Real Estate Issues | 9.30 | $4,734.50 |
| Asset/Stock Transactions/Business Liquidations | 822.60 | $528,206.00 |
| Travel (billed at 50% of actual time) | 22.35 | $14,868.50 |
| Avoidance Actions | 0.20 | $84.00 |
| Non-Debtor Affiliates | 11.60 | $8,371.00 |
| Intercompany Analysis | 21.10 | $13,252.50 |
| Committee Website | 0.60 | $160.00 |

| Project Category | Total Hours | Total Fees |
|---|---|---|
| European Proceedings/Matters | 53.70 | $17,415.50 |
| Intellectual Property | 31.00 | $15,969.00 |
| **TOTAL** | **1,731.85** | **$1,042,206.00** |

**DISBURSEMENT SUMMARY**
**JULY 1, 2009 THROUGH JULY 31, 2009**

| | |
|---|---:|
| Computerized Research, Corporate Service Fees & PACER Charges | $2,477.60 |
| Conference Call /Telephone Charges | $14,823.04 |
| Duplicating (@ $0.10 per page) | $703.80 |
| Meals/Committee Meeting Expenses | $2,585.17 |
| Travel Expenses – Ground Transportation | $1,894.31 |
| Travel Expenses – Parking | $35.00 |
| Travel Expenses – Train Fare | $2,069.00 |
| | |
| **TOTAL** | **$24,587.92** |

8195471 v3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                  :

In re                         :     Chapter 11

                          :     Case No. 09-10138 (KG)

Nortel Networks Inc., et al.,[1]   :     Jointly Administered

                          :

            Debtors    :  **Objection Deadline: Sept. 14, 2009 at 4:00 p.m. (ET)**

                          :  **Hearing Date: Scheduled only if necessary**

---------------------------------------------------------X

### SIXTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2009 THROUGH JULY 31, 2009

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or the "Applicant"), co-counsel to

the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its sixth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of $1,042,206.00 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith in the amount of $24,587.92 for the period from July 1, 2009 through July 31, 2009 (the "Compensation Period").  In support of this Application, Akin Gump respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under Canada's Companies' Creditors Arrangement Act ("CCAA").  The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor (the "Monitor").

5.      On January 14, 2009, the High Court of Justice in England (the "UK Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceedings" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, *nunc pro tunc* to January 22, 2009.  On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, Akin Gump filed its First Interim Fee Application Request for the Period January 22, 2009 through April 30, 2009 (the "First Interim Application").  In its First

Interim Application, Akin Gump sought the award and allowance of fees in the amount of
$2,788,648.75 and the reimbursement of expenses in the amount of $48,632.74.[2]  On July 17,
2009, this Court entered an order approving 100% of the fees and expenses sought in the First
Interim Application.

9.        On June 24, 2009, Akin Gump filed its Fourth Monthly Application for Interim
Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the
Period May 1, 2009 through May 31, 2009 (the "Fourth Monthly Application").  In its Fourth
Monthly Application, Akin Gump sought the award and allowance of fees in the amount of
$766,765.75 and the reimbursement of expenses in the amount of $54,512.10.  On July 17, 2009,
Akin Gump filed a Certificate of No Objection with this Court regarding the Fourth Monthly
Application.  Pursuant to the Administrative Fee Order, Akin Gump has received payment of
80% of the fees and 100% of the expenses requested in the Fourth Monthly Application.

10.       On July 27, 2009, Akin Gump filed its Fifth Monthly Application for Interim
Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the
Period June 1, 2009 through June 30, 2009 (the "Fifth Monthly Application").  In its Fifth
Monthly Application, Akin Gump sought the award and allowance of fees in the amount of
$962,202.75 and the reimbursement of expenses in the amount of $25,000.85.  On August 21,
2009, Akin Gump filed a Certificate of No Objection with this Court regarding the Fifth Monthly
Application.  As of the date of this Application, Akin Gump has not yet received payment on
account of the Fifth Monthly Application.

---

[2] The First Interim Application sought the award of fees and expenses for the period from January 22, 2009 through
April 30, 2009, as follows: (a) January 22, 2009 through February 28, 2009: $1,002,466.75 of fees and $14,994.50
of expenses; (b) March 1 through March 31, 2009: $866,587.25 of fees and $14,080.55 of expenses; and (c) April 1
through April 30, 2009: $919,594.75 of fees and $22,201.07 of expenses.  Following discussions with the U.S.
Trustee, Akin Gump agreed to a voluntary reduction of $1,184.16 for expenses incurred during the period covered
by the First Interim Application.

4

## III.   RELIEF REQUESTED

11.     By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $1,042,206.00, representing 1,596.75 hours of professional services and 135.10 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of $24,587.92.

12.     Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80% of its fees ($833,764.80) and 100% of its expenses ($24,587.92) relating to services rendered during the Compensation Period.

13.     Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases.  There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these cases.

14.     As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.   SUMMARY OF SERVICES RENDERED

15.     Akin Gump has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period.  The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the

5

Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines.

16.     In the ordinary course of its practice, Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

17.     In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

18.     Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

19.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

6

## **Case Administration**

(Fees: $4,854.00; Hours: 9.40)

20.    This subject matter relates to services rendered to the Committee to satisfy the Committee's continuing organizational and administrative needs and enable the Committee to continue to function as a coordinated group and to acquit its fiduciary duties.

21.    During the Compensation Period, Akin Gump reviewed and analyzed all motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto. In connection with such analyses, Akin Gump conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases. These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

22.    During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates. In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls. Akin Gump also regularly consulted with Jefferies, Capstone, FMC and Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

23. Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

### Akin Gump Fee Application/Monthly Billing Reports

(Fees: $12,941.00; Hours: 30.70)

24. This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

### Retention of Professionals

(Fees: $3,358.50; Hours: 9.10)

25. This subject matter relates to work performed by Akin Gump attorneys to satisfy Akin Gump's continuing disclosure obligations and to prepare supplemental declarations related thereto. Akin Gump attorneys and paraprofessionals spent time during the Compensation Period preparing the Third Supplemental Declaration of Fred S. Hodara in Connection with the Application of the Official Committee of Unsecured Creditors of Nortel Networks Inc., *et al*., to Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Co-Counsel, *Nunc Pro Tunc* to January 22, 2009 (Docket No. 1063), which was filed with this Court on July 10, 2009.

### Committee Meetings

(Fees: $114,877.50; Hours: 189.60)

26. This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, with individual Committee members and with the Committee's other legal and financial advisors. Akin Gump, together with the other Committee professionals, held no less than five telephonic meetings with the full Committee during the Compensation

8

Period. In addition, during the Compensation Period, Akin Gump had numerous telephonic conferences with individual Committee members and the chair of the Committee and their respective professionals.

27.    Prior to its meetings with the Committee, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the Committee's other professionals, the Committee, as well as individual Committee members. During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee discussing the status of pertinent matters in these proceedings.

28.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters.

## Court Hearings

(Fees: $20,868.50; Hours: 31.80)

29.    This subject matter relates to preparation for and attendance at hearings and other proceedings before this Court. Akin Gump attorneys appeared at two hearings held before this Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. Akin Gump attorneys prepared for Court hearings by reviewing all applicable motions and applications filed with the Court, including any responses thereto, and consulted with the Committee's other

9

professionals and the Debtors' advisors to formulate appropriate strategies. Akin Gump's participation at such hearings was necessary to protect the interests of unsecured creditors.

## Canadian Proceedings

(Fees: $8,413.00; Hours: 15.30)

30.     During the Compensation Period, Akin Gump attorneys worked closely with the Committee's Canadian counsel, FMC, to analyze certain unique Canadian issues in connection with the various sales transactions contemplated by the estates, including regulatory and otherwise, and to assess the risks those issues present to the consummation of the transactions and advise the Committee accordingly. Akin Gump also worked with FMC during the Compensation Period to review all pleadings filed in the Canadian Proceeding, including pleadings relating to the payment of severance to terminated Canadian employees, and a motion filed by certain former Canadian employees for leave to appeal an order of the Canadian Court with respect to such severance payments (collectively, the "Canadian Pleadings"). In connection therewith, Akin Gump, along with FMC, participated in numerous conference calls and in-person meetings with the Nortel Debtors' Canadian and U.S. professionals, as well as other major stakeholders, to discuss the relief requested in the Canadian Pleadings, and the legal and financial issues associated therewith. Akin Gump, with the assistance of FMC, kept the Committee apprised of all material developments in the Canadian Proceeding through regular detailed memoranda and, as appropriate, conference calls with the Committee.

31.     During the Compensation Period, the Monitor filed one report with the Canadian Court, which provided the Canadian Court with an update on the progress of the Canadian Debtors' reorganization efforts and the Monitor's recommendation with respect to a proposal for the payment of hardship claims in the Canadian Proceeding (the "Hardship Proposal"). Akin Gump reviewed the Hardship Proposal, discussed the proposal with FMC and the Committee's

10

financial professionals, and negotiated certain amendments to the proposal with the professionals for the Nortel Debtors and the Monitor. During the Compensation Period, Akin Gump worked closely with FMC to keep the Committee apprised of the Monitor's findings and the Hardship Proposal through detailed memoranda.

## Asset Sales

(Fees: $528,206.00; Hours: 822.60)

32.     Akin Gump spent considerable time during the Compensation Period working closely with the Debtors to evaluate strategic options with respect to the divestiture of certain of the Debtors' assets.[3]  Specifically, Akin Gump attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, and professionals for the other major creditor constituents to evaluate and analyze divestiture options for the carrier and enterprise solutions businesses. In that regard, Akin Gump, together with the Committee's other professionals, evaluated third party bids for those assets, analyzed and assessed numerous financial and legal issues, negotiated transaction agreements with potential stalking horse candidates, and advised the Committee on those issues through detailed memoranda and telephonic conferences, as necessary.

33.     With respect to the sale of the Nortel Debtors' CDMA/LTE business, Akin Gump attorneys reviewed, commented on, and negotiated all underlying documentation, including the form of bidding procedures (the "CDMA Bidding Procedures"), the related sale motion, the asset purchase agreement, and related documents, and held numerous conference calls with Jefferies, FMC and the Committee to ascertain and develop the Committee's position on the proposed transaction. After a hearing before this Court on June 29, 2009, an order was entered approving

---

[3] For reasons of confidentiality, Akin Gump cannot disclose all of the specific matters worked on by Akin Gump attorneys related to this task code during the Compensation Period, but will provide such details to the Court and the U.S. Trustee upon request.

the CDMA Bidding Procedures on June 30, 2009. An auction with respect to the CDMA/LTE assets took place on July 24, 2009, at which Akin Gump attorneys worked closely with the Nortel Debtors to evaluate bids and select the successful bidder. As this Court is aware, Telefonaktiebolaget L M Ericsson ("Ericsson") was selected as the successful bidder with a purchase price of approximately $1.13 billion, a substantial increase from the stalking-horse bid of $650 million by Nokia Siemens Networks B.V. Following a joint hearing of the U.S. and Canadian Courts, an order approving the sale of the CDMA/LTE assets to Ericsson was entered on July 28, 2009.

34.    Akin Gump attorneys also spent considerable time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' enterprise solutions business (the "Enterprise Sale") and selecting an acceptable stalking horse bidder in connection therewith. On July 20, 2009, the Nortel Debtors publicly announced that Avaya Inc. ("Avaya") was selected as the stalking horse bidder for the Enterprise Sale. In connection therewith, Akin Gump attorneys reviewed, commented on, and negotiated all underlying documentation, including the form of proposed bidding procedures and related sale motion (the "Enterprise Bidding Procedures Motion") and held numerous conference calls with Jefferies and the Committee to ascertain and develop the Committee's position on the proposed procedures and transaction. This Court subsequently entered an order approving the Enterprise Bidding Procedures Motion on August 4, 2009. An auction with respect to the Enterprise Sale is scheduled to take place on September 11, 2009.

12

### Executory Contracts

(Fees: $5,469.00; Hours: 10.90)

35.     This subject matter relates to time spent by Akin Gump attorneys analyzing, and advising the Committee with respect to, motions for the assumption or rejection of the Debtors' executory contracts. During the Compensation Period, the Debtors filed two notices of rejection of executory contracts and/or nonresidential real property leases (Docket Nos. 1148 and 1258) (the "Rejection Notices"). Additionally, on June 29, 2009 (as subsequently amended on July 10, 2009), the Debtors filed a motion to assume executory contracts with Chrysler LLC (the "Chrysler Assumption Motion" and together with the Rejection Notices, the "Contract Motions"). In connection with each Contract Motion, Akin Gump analyzed the underlying agreements, potential rejection damages claims or cure costs (as applicable) and made recommendations to the Committee with respect to each motion. Akin Gump's analyses of the Contract Motions, with the assistance of the Committee's other professionals, enabled the Committee to make informed decisions in supporting or opposing the relief requested based on, among other things, the effect the rejection or assumption of an applicable contract would have on the Debtors' continuing business operations and financial wherewithal.

### Unexpired Leases and Real Estate Issues

(Fees: $4,734.50; Hours: 9.30)

36.     This subject matter relates to time spent by Akin Gump attorneys on matters relating to the Debtors' real estate assets. During the Compensation Period, Akin Gump attorneys, in consultation with Capstone, continued an analysis of the Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property. As part of that analysis, Akin Gump spent time during the Compensation Period analyzing (i) the Debtors' motion to assume an unexpired lease of nonresidential real property located in El Segundo,

13

California, and (ii) certain notices filed by the Debtors to reject certain unexpired leases of nonresidential real property. In connection with each such motion or notice, Akin Gump analyzed the underlying documents, summarized applicable portions of the motions for the Committee, and discussed and made recommendations to the Committee with respect to the same in order to assist the Committee in developing a position on the relief requested by the Debtors.

## **Financing Issues**

(Fees: $20,555.00; Hours: 36.80)

37.    During the Compensation Period, Akin Gump attorneys spent time analyzing certain bonding facilities entered into by the Debtors, including (i) a proposed letter of credit facility with Citibank N.A. ("Citibank") in the initial amount of $2 million, subject to an increase of up to $6.2 million at Citibank's discretion, that the Debtors intend to use to support certain performance obligations for the sale of Enterprise voice products through Verizon to Johnson & Johnson, Inc., and (ii) a $30 million bonding facility with ACE INA Insurance and Westchester Fire Insurance Company, that the Debtors intended to use to (a) support the Debtors' U.S. customers, (b) roll-over existing bonds that were issued by Export Development Canada on behalf of NNI, as those bonds expire, and (c) extend expiring bonds issued on behalf of NNI through NNL's cash collateral facility with Royal Bank of Canada (each, a "Facility").

38.    In connection with each Facility, Akin Gump, with the assistance of Capstone, thoroughly analyzed the Facility's terms, reviewed and negotiated amendments to certain of the Facilities, and advised the Committee with respect to the impact of the Facility on the Debtors' businesses. Akin Gump's analyses of the proposed Facilities enabled the Committee to formulate an informed viewpoint on the financial arrangements and to acquit its fiduciary duties.

14

## General Claims Analysis

(Fees: $37,734.00; Hours: 87.00)

39.     This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates.  During the Compensation Period, Akin Gump worked closely with the Nortel Debtors and their professionals, as well as the Monitor, to develop an appropriate deadline by which certain parties are required to file proofs of claim in these Insolvency Proceedings (the "Bar Date"), and procedures to file and resolve claims against the Debtors and the Canadian Debtors (the "Claims Procedures").  In connection therewith, Akin Gump spent time reviewing and negotiating the Debtors' proposed Bar Date and Claims Procedures, as well as the proposed Canadian claims procedures, and related motions seeking approval of the same (together, the "Bar Date Motion").  On July 15, 2009, the Debtors filed the Bar Date motion seeking authority to establish September 30, 2009 as the Bar Date, and approving the Claims Procedures.  This Court entered an order approving the Bar Date Motion on August 4, 2009.[4]

40.     Akin Gump also spent time during the Compensation Period developing an appropriate cross-border claims protocol (the "Cross-Border Claims Protocol") for use in the Insolvency Proceedings to supplement the Claims Procedures and efficiently address jurisdictional issues related to the filing and determination of claims.  Under the terms of the cross-border protocol approved by the U.S. and Canadian Courts on June 29, 2009, a Cross-Border Claims Protocol is required to be negotiated and settled among the Nortel Debtors, the Monitor and the Committee.  Akin Gump expects to work constructively with the Nortel Debtors

---

[4] An order was entered by the Canadian Court on July 30, 2009 to establish the same Bar Date in the Canadian Proceeding.

and the Monitor to finalize the Cross-Border Claims Protocol and to shortly seek approval from the U.S. and Canadian Courts of such protocol.

## Tax Issues

(Fees: $76,117.00; Hours: 133.90)

41.     This subject matter relates to legal services rendered by Akin Gump relating to tax matters affecting the Debtors.  During the Compensation Period, Akin Gump continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel Debtors' legacy transfer pricing system.  In connection therewith, Akin Gump attorneys participated in numerous conferences with the Committee's other professionals and the Debtors' senior management team and advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.  Further, Akin Gump attorneys spent time during the Compensation Period analyzing the tax implications of the sale of the CDMA/LTE assets to Ericsson, as well as the proposed Enterprise Sale.

## Labor and Employee Benefits Issues

(Fees: $117,931.00; Hours: 168.70)

42.     This subject matter relates to services rendered by Akin Gump in connection with the Committee's analysis of the Debtors' benefits plans and general labor matters.  As this Court is aware, on July 16, 2009, the Pension Benefit Guaranty Corporation took the first legal steps to effect a termination of NNI's underfunded pension plan (the "Pension Plan") by delivering a notice of termination to the existing plan trustee and commencing an action in the United States District Court for the Middle District of Tennessee seeking to terminate the Pension Plan and to serve as trustee of the plan.  During the Compensation Period, Akin Gump attorneys, together with the Committee's other professionals, spent significant time analyzing the legal issues associated with the termination of the Pension Plan, as well as its impact on the Debtors' ongoing

restructuring and sale efforts, and on creditor recoveries in these Insolvency Proceedings. In connection therewith, Akin Gump attorneys reviewed and analyzed the Debtors' pension plans and participated in several conferences with the Debtors' advisors to address the Committee's concerns surrounding the termination of the Pension Plan. Akin Gump attorneys also spent time during the Compensation Period reviewing documents and analyzing employee benefit issues in connection with the asset sales contemplated by the Debtors in these Insolvency Proceedings, as described above.

## Intercompany Issues

(Fees: $13,252.50; Hours: 21.10)

43.     As required under the terms of the Interim Funding and Settlement Agreement approved by the U.S. and Canadian Courts on June 29, 2009, Akin Gump, on behalf of the Committee, spent time during the Compensation Period negotiating with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding a protocol for resolving disputes concerning the allocation of sale proceeds (the "Allocation Protocol") generated by the various asset sales consummated by the estates. As of the date of this Application, the parties are in the very early stages of such negotiations.

## Intellectual Property

(Fees: $15,969.00; Hours: 31.00)

44.     Akin Gump attorneys spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets. Additionally, during the Compensation Period, Akin Gump attorneys analyzed documents in connection with the various asset sale processes described above, and examined the intellectual property issues associated with such divestitures.

17

### European Proceedings

(Fees: $17,415.50; Hours: 53.70)

45.    During the Compensation Period, Akin Gump worked closely with the Committee's European counsel, Ashurst, to examine and analyze all issues related to the European Proceedings, and through memoranda or conference calls, as appropriate, advised the Committee of the impact such issues may have on the Debtors' estates and their creditors.

### Non-Working Travel

(Fees: $14,868.50; Hours: 22.35)

46.    During the Compensation Period, Akin Gump attorneys spent 44.70 non-working hours traveling to Court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), Akin Gump has discounted this time by 50% and, accordingly, has billed 22.35 working hours traveling for the Compensation Period.

## V.    ALLOWANCE OF COMPENSATION

47.    The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

48.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the

court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

49.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

50.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 1731.85 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

51.     As shown by this application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $24,587.92 for which Akin Gump respectfully requests reimbursement in full.

52.     The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

53.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for Westlaw computer assisted legal research.

54.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

55.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

*[The rest of this page intentionally left blank]*

WHEREFORE, Akin Gump respectfully requests that this Court:

(a)    approve the allowance of $1,042,206.00 for compensation for professional services rendered to the Committee during the period from July 1, 2009 through and including July 31, 2009;

(b)    approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period from July 1, 2009 through and including July 31, 2009 in the amount of $24,587.92; and

(c)    authorize and direct the Debtors to immediately pay to Akin Gump the amount of $858,352.72, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:    New York, New York
          August 25, 2009

AKIN GUMP STRAUSS HAUER & FELD LLP

By:_____
       Fred S. Hodara (*pro hac vice*)
       A Member of the Firm
       One Bryant Park
       New York, New York 10036
       (212) 872-1000
       Co-Counsel to the Official Committee of
       Unsecured Creditors