## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*                                                     :        Chapter 11

                                                            :

Nortel Networks Inc., *et al.*,[1]                          :        Case No. 09-10138 (KG)

                                                            :

                                    Debtors.                :        Jointly Administered

                                                            :

                                                            :        **Hearing date: September 15, 2009 at 10:00 AM (ET)**
                                                            :        **Objections due: September 8, 2009 at 4:00 PM (ET)**

-------------------------------------------------------X

### MOTION OF DEBTORS PURSUANT TO SECTION 1121(d)(1) OF THE
### BANKRUPTCY CODE TO EXTEND THE EXCLUSIVE PERIODS TO
### (I) FILE A CHAPTER 11 PLAN AND (II) SOLICIT ACCEPTANCES THEREOF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") (i) extending the period during which the Debtors have the exclusive right to file a plan or plans (the "Exclusive Filing Period") through and including February 1, 2010, and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") through and including April 2, 2010.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is section 1121(d) of title 11 of the United States Code.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. NN CALA filed a voluntary petition for relief under chapter 11 on July 14, 2009.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court appointed

---

[2]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").   On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[3]  The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of the Debtors' cases and for consolidation for procedural purposes only [D.I. 36].[4]

7.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142, 340]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

8.      On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI (and one of the Debtors), filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, the Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.      Debtors' Corporate Structure and Business**

9.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").[5] Since the commencement of the Debtors' chapter 11 cases, Nortel has undergone significant restructuring efforts, including commencing the divestiture of substantial portions of its business to third parties.

---

[4]  All references to "D.I." refer to the docket for the chapter 11 cases of Nortel Networks, Inc., and its affiliates, jointly administered under case number 09-10138 (KG).

[5]  Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

10.    The Debtors and their affiliates previously sold certain non-core assets related to their enterprise "Layer 4-7" business to Radware Ltd.  The sale, which was approved by the Court on March 26, 2009 [D.I. 539] and by the Canadian Court on March 30, 2009, closed on March 31, 2009.

11.    On June 19, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their CDMA and LTE businesses to Nokia Siemens Networks B.V., subject to the receipt of higher and better offers at auction [D.I. 931].  On July 28, 2009, the Court entered an order approving the sale of the CDMA and LTE assets to Telefonaktiebolaget LM Ericsson (Publ) ("Ericsson") as the successful bidder at auction [D.I. 1205].  The Debtors are currently in the process of closing the sale (which is subject to certain closing conditions).

12.    On July 20, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their Enterprise Solutions business to Avaya, Inc., subject to the receipt of higher and better offers [D.I. 1131].  On August 4, 2009, the Court entered an order approving the bidding procedures related to the sale [D.I. 1278].  Pursuant to the order, bids are due on September 4, 2009.  If one or more qualified bids are received, an auction will be held on September 11, 2009.  A subsequent sale hearing is scheduled for September 15, 2009.

13.    In addition to the aforementioned sales, the Debtors continue to re-examine their business and are actively engaged in discussions regarding the sale of other business segments.

### Relief Requested

14.    By this Motion, the Debtors seek an order pursuant to section 1121(d) of the Bankruptcy Code extending (a) the Exclusive Filing Period through and including February 1, 2010, and (b) the Exclusive Solicitation Period through and including April 2, 2010, without prejudice to the Debtors' right to seek further extensions of the Exclusive Periods.

**Facts Relevant to this Motion**

15.    Pursuant to a prior order of the Court extending the Exclusive Periods [D.I. 769], the Debtors' current Exclusive Filing Period under section 1121(b) of the Bankruptcy Code extends through September 11, 2009, and the current Exclusive Solicitation Period extends through November 10, 2009.[6]

16.    Since the Petition Date, the Debtors have worked diligently on a variety of fronts to administer their estates, to maximize value for their stakeholders, and to further their restructuring efforts.    As discussed in greater detail below, the Debtors have undertaken significant steps with respect to the ultimate disposition of their assets through their pursuit of certain divestitures and their design and initial implementation of an internal reorganization to further such sales.    At the same time, the Debtors have made substantial efforts to reduce costs, including the rejection of real property leases and contracts not necessary for their continued business operations.    The Debtors also have taken other steps to preserve value to their estates, including the development of a key employee incentive and retention plan, the resolution of significant inter-company funding and coordination issues, and the prompt resolution of reclamation claims asserted by suppliers against the Debtors.    Finally, the Debtors have established a September 30, 2009 claims bar date, which is a key milestone in the development of a restructuring plan.

17.    Additionally the Debtors have engaged suppliers and customers of Nortel's worldwide operations in an effort to preserve the value of their business operations.    The Debtors also have actively coordinated the US restructuring efforts and court proceedings with the

---

[6]    Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the Untied States Bankruptcy Court for the District of Delaware provides: "[I]f a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."

various other multi-jurisdictional proceedings and their non-debtor affiliates, and have actively solicited input from and coordinated restructuring efforts with the Committee, the Bondholder Group, the Monitor and the Joint Administrators.

18.     In light of the foregoing and as described below, the Debtors have made and continue to make substantial progress toward the stated objective of value maximization.  Given the Debtors' successes since the Petition Date, the best interests of the Debtors, their estates, and their creditors would be well served by extending the Debtors' exclusive periods to file a plan of reorganization and solicit support for such a plan for the reasons set forth herein.

## Basis for Relief

19.     Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan.  Section 1121(c)(3) of the Bankruptcy Code provides that if the debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan.  Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1).  Such extensions are capped, however, by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filed period to eighteen (18) months after the petition date and any extension of the solicitation period to twenty (20) months after the petition date.  11 U.S.C. § 1121(d)(2)(A)-(B).

20.     Although, the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an

agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1977); <u>see also</u> <u>In re Public Serv. Co.</u> <u>of N.H.</u>, 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent...[is] to promote maximum flexibility."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for disclosure to creditors. <u>See, e.g.</u>, <u>McLean</u>, 87 B.R. at 833-34; <u>In re Texaco, Inc.</u>, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

21.     The decision to extend a debtor's exclusive periods is committed to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case. <u>See,</u> <u>e.g.</u>, <u>First Am. Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc.</u>, 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extensions of the exclusive periods, including:  (a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the estate, and (c) whether an extension of time will harm the debtor's creditors. <u>See, e.g.</u>, <u>In re Gibson & Cushman Dredging Corp.</u>, 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing above-referenced factors); <u>see also In re Dow Corning Corp.</u>, 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (citing <u>In re Express One International, Inc.</u>, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)). The existence of good faith progress and the need for additional time to continue such progress is a also factor in establishing cause for extending the exclusive periods under section 1121(d) of the Bankruptcy Code. <u>See Jasik v. Conrad (In re</u> <u>Jasik)</u>, 727 F.2d 1379, 1382-3 (5th Cir. 1984); <u>Express One Int'l, Inc.</u>, 194 B.R. at 101; <u>McLean</u>, 87 B.R. at 834; <u>In re Pine Run Trust, Inc.</u>, 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

22.     As demonstrated in this Motion, "cause" exists to further extend the Exclusive Periods in these chapter 11 cases.

A.      **The Size and Complexity of these Chapter 11 Cases**

23.      Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of a debtor's exclusive period to file a plan and the period to solicit acceptances of such a plan. "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 595, 9th Cong., 1st Sess., 232 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191. In fact, the size and complexity of a chapter 11 case is the basis upon which courts most commonly grant extensions. See, e.g., Express One Int'l, 194 B.R. at 100; In re Texaco, Inc., 76 B.R. at 326 ("The large size of a debtor and the consequent difficulty in formulating a plan or reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

24.      As described in the First Day Declaration, these cases are both large and complex. Moreover, the enormous efforts that have been made post-petition on the mergers and acquisitions front clearly demonstrate that these cases also present unique challenges that have consumed, and will continue to consume, substantial attention and resources. In particular, the Debtors' businesses are highly integrated and have been, and continue to be, operated on a consolidated basis. As such, the de-coupling of businesses for sale and the multiple plenary insolvency proceedings in multiple jurisdictions has required careful planning and coordination among jurisdictions and constituencies. These efforts are certain to continue through the requested extension periods. Accordingly, the size and complexity of the Debtors' chapter 11 cases warrant extending the Exclusive Periods.

Case 09-10138-MFW    Doc 1391    Filed 08/28/09    Page 10 of 16

**B.    The Debtors' Progress in These Cases**

25.    The Debtors have made substantial progress in their chapter 11 cases and continue to work diligently on matters related to their reorganization. In addition to the substantial effort that is required to operate a large enterprise, since the Petition Date, the Debtors have concentrated on a myriad of significant issues relating to these chapter 11 cases. The Debtors continue to actively work to build consensuses and develop a procedure for the resolution of key issues among numerous and diverse constituencies regarding what must necessarily be a global plan during the Exclusive Periods as a result of their focus on the following issues and the numerous other matters relating to their chapter 11 cases.

26.    ***Asset Sales.*** Since the Petition Date, the Debtors have made substantial progress in the pursuit of asset sales in coordination with their counterparts in Canada, Europe, and other global affiliates. As a result of these efforts, on July 28, 2009, the Debtors obtained court approval of an asset sale agreement that provides for the sale of their CDMA and LTE-related assets (which fall under Nortel's carrier business) to Ericsson. On August 4, 2009, the Court approved bidding procedures for the sale of assets related to Nortel's Enterprise Solutions business, and designated Avaya, Inc. as the stalking horse bidder. Previously, in March 2008, the Debtors also completed a sale of their Layer 3-7 assets to Radware. The Debtors and their affiliates continue to actively explore at least five additional material transaction opportunities.

27.    ***Inter-company issues.*** The Debtors have worked throughout these proceedings to coordinate their restructuring with their affiliates, including the Canadian affiliates subject to CCAA proceedings in Canada, their European affiliates subject to administration in U.K. proceedings and other non-debtor affiliates around the globe. Significant headway has been made in various substantive and procedural issues related to the restructuring.

28.     The Debtors have entered into various agreements to further stabilize Nortel's business during the restructuring. NNI is a party to a Global Supply Protocol Agreement with certain entities subject to administration proceedings, as are certain of its Canadian affiliates.

29.     The Debtors also have engaged in ongoing and rigorous discussions with the representatives of their Canadian and European affiliates, the Monitor, the Joint Administrators, the Committee and the Bondholder Group regarding a number of inter-company issues, including transfer pricing. These discussions culminated, in part, with the execution of an interim funding and settlement stipulation agreement between Debtors, the Canadian Debtors and the EMEA Debtors that provides for certain payments to be made to the Canadian estates in lieu of transfer pricing payments. The Court approved the Interim Funding and Settlement Agreement on June 29, 2009 [D.I. 993]. A cross-border protocol, as amended, also was approved by the Court on June 29, 2009, to further facilitate the consideration and resolution of cross-border issues [D.I. 990].

30.     Other discussions regarding inter-company obligations remain ongoing. For example, the Debtors are engaged in continuing discussions with the Canadian Debtors, the EMEA Debtors, the Monitor, the Joint Administrators, the Committee, and the Bondholder Group regarding the development of a protocol to resolve the allocation of proceeds from the various asset sales. The Debtors also are engaged in ongoing discussions with multiple constituents and consideration of issues relating to their non-debtor affiliates, including those in Asia and Latin America.

31.     *Schedules of Assets and Liabilities.* On April 20, 2009 and May 29, 2009, the Debtors filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") [D.I. 616-627, 801-810]. The preparation of the Schedules

and the Statements for the Debtors required the accumulation and review of substantial amounts of information related to the Debtors' assets, liabilities, contracts, and operations. The Debtors are currently preparing Schedules and Statements for NN CALA and expect to file those shortly. The Debtors have filed periodic monthly operating reports, and the reports required under Bankruptcy Rule 2015.3.

32.     ***Claims Resolution.***  To proceed with the development of a plan of reorganization, the Debtors will need complete and accurate information describing the nature, validity, amount and status of all claims that will be asserted against them in addition to those listed on the Debtors' Schedules.   Accordingly, the Debtors requested, and the Court ordered, the establishment of a September 30, 2009 general bar date for the filing of claims (other than those against NN CALA) [D.I. 1280].  On August 10, 2009, the Debtors completed mail service of notice of the claims bar dates to all known creditors.  On August 11, 2009, the Debtors published notice of the bar dates in The Globe and Mail and The Wall Street Journal (national and global editions).

33.     The Debtors also have expeditiously resolved most of the reclamation claims asserted in these cases.  Of the thirty reclamation demands made against the Debtors in these chapter 11 cases, twenty-six have been resolved and only four remain outstanding.  Pursuant to the *Order Establishing Procedures for Addressing Reclamation Demands Pursuant to Sections 105(a), 362 and 546(c) and Rule 9019 of the Federal Rules of Bankruptcy Procedure* [D.I. 336], the Debtors have settled 19 demands on a consensual basis and resolved another seven demands through filing of the Debtors' Second Reclamation Notice [D.I. 756].  The Debtors are actively working to resolve the remaining reclamation demands.

12

34.     Finally, the Debtors are working with the Canadian Debtors, the Monitor, the Committee, and the Bondholder Group on the development of a protocol for the resolution of claims that raise cross-border issues with the Canadian Debtors.  It is possible that additional claims protocols will be developed with other jurisdictions as well.

35.     ***Real Estate***.  The Debtors have made significant progress in managing their real estate portfolio in furtherance of the restructuring.  As of the Petition Date, the Debtors were lessees under approximately 75 leases of non-residential real property.  Since the Petition Date, the Debtors have rejected 49 leases, had one lease deemed rejected, assumed one lease and three leases have expired by their terms in the ordinary course of business.  Thus, the Debtors are currently lessees under approximately 20 unexpired leases of non-residential real property.  Pursuant to the *Order Under 11 U.S.C. 363(b)(1) And 365(d)(4) Granting Extension Of The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Non-Residential Real Property Upon Receipt Of Written Consent From Lessors* [D.I. 965], the Debtors have obtained written consent from the remaining landlords to extend the lease rejection/assumption deadline beyond the August 12, 2009 statutory deadline.  The Debtors continue to assess which leases may no longer be necessary for their continued business operations and which leases may be conveyed to potential purchasers in pending divestiture transactions or used for continuing business purposes.

36.     ***Other Efforts.***  In addition to the above, the Debtors (1) are working with the Pension Benefit Guarantee Corporation to reach agreement regarding issues related to the Debtors' defined pension plans, (2) have filed settlements pursuant to Bankruptcy Rule 9019, and (3) have rejected several executory contracts determined to be non-essential for their continued business operations.

37.     Accordingly, in light of the accomplishments of the Debtors thus far in these chapter 11 cases, as well as the extraordinary complexity and breadth of Nortel's global business, further extension of the Exclusive Periods is warranted.  The various matters described above, as well as various others that will require the Debtors' attention over the next several months, will need to be resolved before the Debtors will have adequate information necessary to prepare a plan of reorganization and disclosure statement.

**C.     The Requested Extension Of The Exclusive Periods Is Consistent With The Purpose Of Section 1121 Of The Bankruptcy Code And Will Not Harm Creditors**

38.     The extension of the Exclusive Periods as requested will afford the Debtors and all other parties in interest an opportunity to develop fully the grounds upon which serious negotiations toward a plan of reorganization can be based.  The Debtors intend to use the extended Exclusive Periods to: continue to operate their businesses and pursue strategic transactions, further review executory contracts and nonresidential leases for assumption or rejection, review claims that are filed against the Debtors, as well as engage in further coordinated efforts with the Committee, the Bondholder Group, the Monitor, the Joint Administrators and the other Nortel entities in furtherance of the Debtors' restructuring and, ultimately, the development of a plan of reorganization.

39.     The Debtors' requested extension of the Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan.  Rather, the Debtors' requested extension is substantially less than these limitations.  As a result, the Court is not precluded from granting the relief requested by section 1121(d)(2) of the Bankruptcy Code

40.     Affording the Debtors a full opportunity to develop a plan of reorganization by extending the Exclusive Periods will not prejudice creditors.  Terminating the Exclusive Periods

before this process is complete and the process of negotiation has been developed fully, would defeat the very purpose of section 1121 (*i.e.*, to afford the Debtors a meaningful and reasonable opportunity to negotiate with creditors and propose and confirm a consensual plan of reorganization). Furthermore, the requested extension will not preclude parties in interest from seeking a reduction or termination of the Exclusive Periods for cause.[7]

41. Based upon the foregoing, the Debtors submit that cause exists to extend the Exclusive Filing Period through and including February 1, 2010, and the Exclusive Solicitation Period through and including April 2, 2010.

### Notice

42. Notice of the Motion has been given via first class mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; and (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

43. No prior request for the relief sought herein has been made to this or any other court.

---

[7] Nothing herein shall prejudice the Debtors' right to oppose such relief if sought.

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Motion and the relief requested herein, (ii) enter the proposed order attached hereto, extending (a) the Exclusive Filing Period through and including February 1, 2010 and (b) the Exclusive Solicitation Period through and including April 2, 2010 and (iii) grant such further relief as is just and proper.

Dated:  August 28, 2009
   Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*