IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § § | |
| NORTEL NETWORKS, INC. ET AL., | § § | CASE NO. 09-10138 (KG)<br>CHAPTER 11 |
| DEBTORS | § | *Jointly Administered* |

**LIMITED, INITIAL OBJECTION OF INTOTO, LLC TO
DEBTORS' MOTION FOR ORDERS AUTHORIZING AND APPROVING
(A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN,
DEBTORS ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Intoto, LLC and files this its Objection (the "Objection") to Debtors' Motion for Orders Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (the " Sale Motion"). In support thereof Intoto, LLC will respectfully show the Court:

### I. INTRODUCTION

1. On October 7, 2008, the California corporation Intoto, Inc. ("CA Intoto") merged with Freescale Semiconductor, Inc.'s wholly-owned subsidiary Totem Pole Acquisition, Inc. to become Delaware corporation Totem Pole Acquisition, Inc. ("Totem Pole"). On that same day, Totem Pole changed its named to Intoto, Inc. ("Intoto"). On December 31, 2008, Intoto, Inc. changed its name to Intoto, LLC ("Intoto").

2. Intoto develops highly specialized software and other electronic equipment. In order to properly protect proprietary information, Intoto employs a rigorous qualification process for all entities it provides software license agreements because, pursuant to such agreements, it is necessary for Intoto

to share highly confidential and sensitive information with the licensee. Due to the nature of the software license agreements, except under certain limited conditions and circumstances, they are not assignable or delegable without Intoto's consent.

3. Prior to the merger, CA Intoto granted certain of the Debtors with non-exclusive, non-assignable (except under certain limited conditions and circumstances), non-sublicensable, perpetual, world-wide software licenses for various software. After the merger, Intoto became the licensor of these agreements. There are multiple amendments and schedules to the Master Services Agreement that now govern the licensee/licensor relationship between Intoto and the Debtors (collectively, the "Intoto Agreements").

4. Pursuant to the Debtors' Sale Motion, the Debtors seek approval of the Asset and Share Sale Agreement (the "Agreement") by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks, Inc. and certain other entities defined therein as EMEA Sellers and Avaya, Inc. ("Avaya") for the sale of certain assets related to the Debtors' Enterprise Solutions Business, including the assumption and assignment of various executory contracts and unexpired leases related thereto.

5. The Sale Motion does not identify the executory contracts to be assumed and assigned or rejected because, according to the Sales Motion, "[t]he Debtors estimate that the universe of Enterprise Agreements [pre-petition executory contracts and unexpired leases of the Debtors exclusively related to the Enterprise Solutions business] is quite large and may well run into the thousands." *See* Sale Motion ¶ 31. Until Intoto is able to confirm that the Intoto Agreements are or are not included in the proposed assumption and assignments, Intoto files this objection on a protective basis. In addition, Intoto is unable to determine what amount the Debtors assert would be required to cure any pre-petition or post-petition defaults. While Intoto does not rule out the possibility that it may

be willing to accept the assignment of the Intoto Agreements to the ultimate purchaser(s), Intoto cannot confirm such acceptance until the prospective assignee(s) have been properly qualified as a Intoto licensee, Intoto has reviewed and approved the cure amount, and satisfactory documentation confirming the go-forward relationship(s) has been finalized. **Intoto very well may support assumption and assignment, but cannot determine its position on the current record.**

## II. RELEVANT FACTS

6. On July 20, 2009, the Debtors filed their Sale Motion, wherein the Debtors indicated there were potentially thousands of executory contracts between the Debtors and various non-debtor third-parties directly related to the Enterprise Solutions Business. The identity of the various non-debtor third-parties to the executory contracts is alleged to be a valuable component of the assets being sold. Thus, the identity of the counter-parties is not revealed in the pleading.

7. On August 4, 2009, the Court entered an Order Pursuant to Bankruptcy Code Sections 105, 363, and 365 (A) Authorizing Debtors' Entry Into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing (the "Bidding Procedures Order").

8. On August 4, 2009, the Debtors filed their Notice of (I) Solicitation of Initial Bids; (II) Public Auction and Sale Hearing and (III) Related Relief and Dates (the "Notice"). Pursuant to the Notice, general objections to the Sale Motion must be filed on or before September 4, 2009, at 4:00 pm.

9. Intoto has made diligent inquiries, however, based on the information available, has been unable to determine whether the Intoto Agreements are among the agreements to be assumed and assigned.

4321589.1
50961.75

10. As a protective measure, Intoto files its Objection to reserve all rights, claims and objections of Intoto, including but not limited to, Intoto's objection to the cure amount, Intoto's objection to the assumption and assignment of the Intoto Agreements, Intoto's right to make a demand for adequate assurance of go-forward performance, and Intoto's right to a claim of default arising under the Intoto Agreements, while preserving any and all rights Intoto is entitled to pursuant to the Intoto Agreements and under applicable law.

### III. OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE INTOTO AGREEMENTS

11. Intoto objects to the assumption and assignment of the Intoto Agreements and withholds consent to any such assignment to any purchaser until Intoto had had an opportunity to qualify the ultimate purchaser(s) as approved Intoto licensees, ensure that Intoto's confidential and proprietary information is protected, and to document the go-forward arrangements accordingly.

12. The Intoto Agreements are executory contracts within the meaning of 11 U.S.C. § 365. This section permits a debtor-in-possession to assume or reject executor contracts, subject to certain limitations contained in the statute. *See* 11 U.S.C. § 365(c).

13. Among those limitations, 11 U.S.C. § 365(c)(1) precludes a debtor from assuming or assigning an executory contract where:

> (A) applicable law excuses a party . . . to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

14. 11 U.S.C. 365(c)(1), as interpreted by many federal courts, prevents the assumption of executory contracts by the debtor-in-possession where "applicable nonbankruptcy law makes an

4

executory contract nonassignable because the identity of the nondebtor party is material." *In re Catapult Entertainment, Inc.*, 165 F.3d 747, 754-755 (9th Cir. 1999); *see also In re West Electronics, Inc.* 852 F.2d 79, 83 (3rd Cir. 1988); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999). Moreover, the court in *Catapult* noted that 11 U.S.C. § 365(c)(1) protects a non-debtor party to a contract from being forced to accept performance from or render performance to a party other than the one with which the party originally contracted, where applicable law excuses the non-debtor party.

15. The Intoto Agreements are governed by either New York law or California law. Under both New York and California law, "[Executory] contracts for personal services or those involving a relationship of personal confidence are not assignable by one party unless the other consents thereto." *Jennings v. Foremost Dairies, Inc.*, 37 Misc. 2d 328, 334 (N.Y. Sup. Ct. 1962) (citation omitted). *See also Knipe v. Barkdull*, 222 Cal. App. 2d 547, 551 (Cal. App. 1st Dist. 1963) (citation omitted) ("Where a contract calls for the skill, credit or other personal quality of the promisor, it is not assignable.").

16. The Intoto Agreements involve a "relationship of personal confidence" and call "for the skill, credit or other personal quality of the promisor." Intoto expends tremendous time and effort qualifying its licensees. It would be highly problematic for Intoto to be forced to accept licensees without being allowed to conduct its due diligence. Additionally, Intoto's interests would be harmed substantially if it were forced to share confidential and proprietary information with a competitor or share such information without sufficient safeguards against improper use or disclosure of that information.

17. As a result, there is sufficient "applicable law" to prevent the Debtors from assuming or assigning the Intoto Agreements absent Intoto's consent. *See, e.g., West Electronics*, 852 F.2d at 83; *Access Beyond*, 237 B.R. at 48; *Catapult*, 165 F.3d at 754-744. Therefore, Intoto objects to the

4321589.1
50961.75

assumption or assignment of the Intoto Agreements in light of *West Electronics*, *Access Beyond*, and *Catapult*, *supra*., absent an opportunity for Intoto to qualify the proposed purchaser(s) and assignee(s) as a licensee, and to conclude, appropriate, go-forward contractual arrangements.

### IV. OBJECTION TO CURE AMOUNT

18. Without waiving the foregoing objection to the assumption and assignment of the Intoto Agreements and reserving any and all rights, claims and actions pursuant to its objection, any defaults arising under the Intoto Agreements must be cured on or before assumption. *See* 11 U.S.C. § 365(b)(1).

19. As noted above, Intoto has not yet been able to ascertain which, if any, of the Intoto Agreements are proposed to be assumed and assigned. It necessarily follows that Intoto has not had a sufficient opportunity to investigate any cure proposed by the Debtors.

20. Therefore, Intoto objects to any cure proposed with respect to any of the Intoto Agreements, until such time as Intoto has had an opportunity to investigate the cure amount proposed.

### V. DEMAND FOR ADEQUATE ASSURANCE

21. Debtors must provide adequate assurance of go-forward performance as a prerequisite to the assumption of an executory contract. *See* 11 U.S.C. § 365(b). Pursuant to 11 U.S.C. § 365(b)(1), Intoto, without waiving and expressly reserving all other rights, claims and objections, specifically Intoto's objection to the assumption and assignment of the Intoto Agreements, demands adequate assurance of go-forward performance of any and all of the Intoto Agreements proposed to be assigned.

22. Pursuant to 11 U.S.C. § 365(f), a debtor may only assign an executory contract if it assumes the contract and provides adequate assurance of go-forward performance by the assignee of such contract, whether or not there has been a default in such contract or lease.

4321589.1
50961.75

23. Intoto demands adequate assurance that Intoto's confidential and proprietary information that is shared pursuant to the Intoto Agreements will be safeguarded by the appropriate protective procedures, particularly if the proposed assumption of the Intoto Agreements would entail any sharing or disclosure of such confidential and proprietary information to a party that is or potentially could be a competitor of Intoto.

24. No Intoto Agreement may be assigned without a showing of adequate assurance of go-forward performance, and Intoto hereby makes a demand for such a showing.

25. Responses to Intoto's demand for adequate assurance should be sent to Intoto's counsel, Kell C. Mercer, by electronic mail at kmercer@mailbmc.com, with a copy to Afton Sands-Puryear by electronic mail at asands-puryear@mailbmc.com.

## VI. RESERVATION OF RIGHTS

26. Intoto is willing to meet with any and all proposed purchasers and assignees of the Intoto Agreements to consider, in its discretion, whether such parties may properly qualify for non-exclusive, non-assignable (except under certain limited conditions and circumstances), non-sublicensable, perpetual, world-wide software licenses. Until Intoto has had an opportunity to conduct that due diligence, and to consent to the proposed assignment, Intoto respectfully submits that any assignment of the Intoto Agreements should not be approved due to the resulting failure of the Debtors to satisfy the elements of 11 U.S.C. § 365(c).

27. Without waiving its objection to the assignment of the Intoto Agreements, Intoto also reserves the right to object to the cure amount, the right to not be bound to such corresponding cure amount, the right to assert claims for any default arising under the Intoto Agreements, and reserve the right to amend or supplement this statement and/or object to any cure amount.

28. Without waiving its objection to the assignment of the Intoto Agreements, Intoto also demands adequate assurance of future performance, and reserves the right to make future demands for such assurance pursuant to 11 U.S.C. § 365(b), including the development of procedures to protect and safeguard Intoto's confidential and proprietary information that may be disclosed pursuant to the Intoto Agreements.

29. Intoto further reserves all rights, claims, defenses and objections stated herein, under the Intoto Agreements and under applicable law, and the right to raise these rights, claims, defenses, and objections to any proposed assumption and assignment.

30. Intoto reserves the right to amend, supplement, or otherwise modify this Objection, including, without limitation, the right to contest the cure amount asserted by the Debtors in relation to the assumption and assignment of any contracts with Intoto.

WHEREFORE, for the foregoing reasons, Intoto, LLC respectfully requests that this Court:

(a) decline to approve any assignment of the Intoto Agreements until such time as Intoto has expressly consented to such assignment, as required by 11 U.S.C. § 365(c);

(b) declare that Intoto reserves the right to challenge any proposed cure under the Intoto Agreements, or to request further adequate assurance of future performance thereunder (including the development of procedures to protect any of Intoto's confidential and proprietary information that is shared or disclosed pursuant to the Intoto Agreements;

(c)     grant such other and further relief as may be just and fitting under the circumstances.

                                          Respectfully submitted,

BROWN MCCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 472-5456
Kell C. Mercer
State Bar No. 24007668
Afton Sands-Puryear
State Bar No. 24060555

                               -and-

SULLIVAN · HAZELTINE · ALLINSON LLC

_/s/ William A. Hazeltine_
William A. Hazeltine (#3294)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel.: 302-428-8191

ATTORNEYS FOR INTOTO, LLC

## CERTIFICATE OF SERVICE

I, William A. Hazeltine, do hereby certify I am not less than 18 years of age and that on this 3rd day of September 2009, I caused a copy of the within *Limited, Initial Objection of Intoto, LLC to Debtors' Motion for Orders Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases* to be served upon the parties listed below in the manner indicated.

**HAND DELIVERY**
Derek C. Abbot, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

**HAND DELIVERY**
Christopher M. Samis, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

**HAND DELIVERY**
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801

**FIRST CLASS MAIL & FACSIMILE**
Roland Hlawaty, Esq.
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
(212) 822-5735

**FIRST CLASS MAIL & FACSIMILE**
James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-3999

**FIRST CLASS MAIL & FACSIMILE**
Mark I. Bane, ESq.
Anne H. Pak, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
(646) 728-1662

**FIRST CLASS MAIL & FACSIMILE**
Fred S. Hodara, Esq.
Stephen Kuhn, Esq.
Kenneth Davis, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1002

Under penalty of perjury, I declare the foregoing to be true and correct.

September 3, 2009        /s/ William A. Hazeltine
Date                     William A. Hazeltine