**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **NORTEL NETWORKS, INC. ET AL.,** | § | **CASE NO. 09-10138 (KG)** |
| | § | **CHAPTER 11** |
| **DEBTORS** | § | ***Jointly Administered*** |

**LIMITED, INITIAL OBJECTION OF FREESCALE SEMICONDUCTOR, INC. TO DEBTORS' MOTION FOR ORDERS AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN, DEBTORS ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Freescale Semiconductor, Inc. ("Freescale") and files this its Objection (the "Objection") to Debtors' Motion for Orders Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (the "Sale Motion"). In support thereof Freescale will respectfully show the Court:

## I. INTRODUCTION

1. Freescale develops power management solutions, microprocessors, microcontrollers, sensors, and radio frequency semiconductors, for automotive, consumer, industrial, networking and wireless applications. Freescale enters into rebate agreements with its customers, including certain of the Debtors (the "Freescale Agreements"). Freescale's rebate agreements contain provisions regarding the protection of confidential information. In order to properly protect proprietary information, Freescale employs a rigorous qualification process for all entities it enters into such agreements with because, often, it is necessary for Freescale to share highly confidential and sensitive information with

the other party. Due to the nature of these agreements, they are not assignable or delegable without Freescale's consent.

2. Pursuant to the Debtors' Sale Motion, the Debtors seek approval of the Asset and Share Sale Agreement (the "Agreement") by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks, Inc. and certain other entities defined therein as EMEA Sellers and Avaya, Inc. ("Avaya") for the sale of certain assets related to the Debtors' Enterprise Solutions Business, including the assumption and assignment of various executory contracts and unexpired leases related thereto.

3. The Sale Motion does not identify the executory contracts to be assumed and assigned or rejected because, according to the Sales Motion, "[t]he Debtors estimate that the universe of Enterprise Agreements [pre-petition executory contracts and unexpired leases of the Debtors exclusively related to the Enterprise Solutions business] is quite large and may well run into the thousands." *See* Sale Motion ¶ 31. Until Freescale is able to confirm that the Freescale Agreements are or are not included in the proposed assumption and assignments, Freescale files this objection on a protective basis. In addition, at this time, Freescale is unable to determine what amount the Debtors assert would be required to cure any pre-petition or post-petition defaults. While Freescale does not rule out the possibility that it may be willing to accept the assignment of the Freescale Agreements to the ultimate purchaser(s), Freescale cannot confirm such acceptance until Freescale has had the opportunity to conduct due diligence, review and approve the cure amount, and finalize satisfactory documentation confirming the go-forward relationship(s). **Freescale very well may support assumption and assignment, but cannot determine its position on the current record.**

## II. RELEVANT FACTS

4. On July 20, 2009, the Debtors filed their Sale Motion, wherein the Debtors indicated there were potentially thousands of executory contracts between the Debtors and various non-debtor third-parties directly related to the Enterprise Solutions Business. The identity of the various non-debtor third-parties to the executory contracts is alleged to be a valuable component of the assets being sold. However, the identity of the counter-parties is not revealed in the pleading.

5. On August 4, 2009, the Court entered an Order Pursuant to Bankruptcy Code Sections 105, 363, and 365 (A) Authorizing Debtors' Entry Into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing (the "Bidding Procedures Order").

6. On August 4, 2009, the Debtors filed their Notice of (I) Solicitation of Initial Bids; (II) Public Auction and Sale Hearing and (III) Related Relief and Dates (the "Notice"). Pursuant to the Notice, general objections to the Sale Motion must be filed on or before September 4, 2009, at 4:00 pm.

7. Freescale has made diligent inquiries, however, based on the information available, has been unable to determine whether the Freescale Agreements are among the agreements to be assumed and assigned.

8. As a protective measure, Freescale files its Objection to reserve all rights, claims and objections of Freescale, including but not limited to, Freescale's objection to the cure amount, Freescale's objection to the assumption and assignment of the Freescale Agreements, Freescale's right to make a demand for adequate assurance of go-forward performance, Freescale's right to a claim of

default arising under the Freescale Agreements, while preserving any and all rights Freescale is entitled to pursuant to the Freescale Agreements and under applicable law.

## III. OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE FREESCALE AGREEMENTS

9. Freescale objects to the assumption and assignment of the Freescale Agreements and withholds consent to any such assignment to any purchaser until Freescale has had an opportunity to conduct due diligence regarding the potential purchasers, ensure that Freescale's confidential and proprietary information is protected, and to document the go-forward arrangements accordingly.

10. The Freescale Agreements are executory contracts within the meaning of 11 U.S.C. § 365. This section permits a debtor-in-possession to assume or reject executory contracts, subject to certain limitations contained in the statute. *See* 11 U.S.C. § 365(c).

11. Among those limitations, 11 U.S.C. § 365(c)(1) precludes a debtor from assuming or assigning an executory contract where:

> (A) applicable law excuses a party . . . to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor-in-possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment.

11 U.S.C. § 365(c)(1).

12. 11 U.S.C. 365(c)(1), as interpreted by many federal courts, prevents the assumption of executory contracts by the debtor-in-possession where "applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material." *In re Catapult Entertainment, Inc.*, 165 F.3d 747, 754-755 (9th Cir. 1999); *see also In re West Electronics, Inc.* 852 F.2d 79, 83 (3rd Cir. 1988); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999). Moreover, the court in *Catapult* noted that 11 U.S.C. § 365(c)(1) protects a non-debtor

party to a contract from being forced to accept performance from or render performance to a party other than the one with which the party originally contracted, where applicable law excuses the non-debtor party.

13. The Freescale Agreements are governed by New York law. Under New York law, "[Executory] contracts for personal services or those involving a relationship of personal confidence are not assignable by one party unless the other consents thereto." *Jennings v. Foremost Dairies, Inc.*, 37 Misc. 2d 328, 334 (N.Y. Sup. Ct. 1962) (citation omitted).

14. The Freescale Agreements involve a "relationship of personal confidence." Freescale expends tremendous time and effort qualifying those it contracts with. It would be highly problematic for Freescale to be forced to contract or enter into an agreement without being allowed to conduct its due diligence. Additionally, Freescale's interests would be harmed substantially if it were forced to share confidential and proprietary information with a competitor or share such information without sufficient safeguards against improper use or disclosure of that information.

15. As a result, there is sufficient "applicable law" to prevent the Debtors from assuming or assigning the Freescale Agreements absent Freescale's consent. *See*, *e.g.*, *West Electronics*, 852 F.2d at 83; *Access Beyond*, 237 B.R. at 48; *Catapult*, 165 F.3d at 754-744. Therefore, Freescale objects to the assumption or assignment of the Freescale Agreements in light of *West Electronics*, *Access Beyond*, and *Catapult*, *supra.*, absent an opportunity for Freescale to conduct due diligence, and to conclude, appropriate, go-forward contractual arrangements.

**IV. OBJECTION TO CURE AMOUNT**

16. Without waiving the foregoing objection to the assumption and assignment of the Freescale Agreements and reserving any and all rights, claims and actions pursuant to its objection, any

defaults arising under the Freescale Agreements must be cured on or before assumption. *See* 11 U.S.C. § 365(b)(1).

17. As noted above, Freescale has not yet been able to ascertain which, if any, of the Freescale Agreements are proposed to be assumed and assigned. It necessarily follows that Freescale has not had a sufficient opportunity to investigate any cure proposed by the Debtors.

18. Therefore, Freescale objects to any cure proposed with respect to any of the Freescale Agreements, until such time as Freescale has had an opportunity to investigate the cure amount proposed.

## V. DEMAND FOR ADEQUATE ASSURANCE

19. Debtors must provide adequate assurance of go-forward performance as a prerequisite to the assumption of an executory contract. *See* 11 U.S.C. § 365(b). Pursuant to 11 U.S.C. § 365(b)(1), Freescale, without waiving and expressly reserving all other rights, claims and objections, specifically Freescale's objection to the assumption and assignment of the Freescale Agreements, demands adequate assurance of go-forward performance of any and all of the Freescale Agreements proposed to be assigned.

20. Pursuant to 11 U.S.C. § 365(f), a debtor may only assign an executory contract if it assumes the contract and provides adequate assurance of go-forward performance by the assignee of such contract, whether or not there has been a default in such contract or lease.

21. Freescale demands adequate assurance that Freescale's confidential and proprietary information that is shared pursuant to the Freescale Agreements will be safeguarded by the appropriate protective procedures, particularly if the proposed assumption of the Freescale Agreements would entail any sharing or disclosure of such confidential and proprietary information to a party that is or potentially could be a competitor of Freescale.

22. No Freescale Agreement may be assigned without a showing of adequate assurance of go-forward performance, and Freescale hereby makes a demand for such a showing.

23. Responses to Freescale's demand for adequate assurance should be sent to Freescale's counsel, Kell C. Mercer, by electronic mail at kmercer@mailbmc.com, with a copy to Afton Sands-Puryear by electronic mail at asands-puryear@mailbmc.com.

**VI. RESERVATION OF RIGHTS**

24. Freescale is willing to meet with any and all proposed purchasers and assignees of the Freescale Agreements to consider, in its discretion, whether such parties are appropriate assignees. Until Freescale has had an opportunity to conduct that due diligence, and to consent to the proposed assignment, Freescale respectfully submits that any assignment of the Freescale Agreements should not be approved due to the resulting failure of the Debtors to satisfy the elements of 11 U.S.C. § 365(c).

25. Without waiving its objection to the assignment of the Freescale Agreements, Freescale also reserves the right to object to the cure amount, the right to not be bound to such corresponding cure amount, and the right to assert claims for any default arising under the Freescale Agreements, and reserve the right to amend or supplement this statement and/or object to any cure amount.

26. Without waiving its objection to the assignment of the Freescale Agreements, Freescale also demands adequate assurance of future performance, and reserves the right to make future demands for such assurance pursuant to 11 U.S.C. § 365(b), including the development of procedures to protect and safeguard Freescale's confidential and proprietary information that may be disclosed pursuant to the Freescale Agreements.

27. Freescale further reserves all rights, claims, defenses and objections stated herein, under the Freescale Agreements and under applicable law, and the right to raise these rights, claims, defenses, and objections to any proposed assumption and assignment.

28. Freescale reserves the right to amend, supplement, or otherwise modify this Objection, including, without limitation, the right to contest the cure amount asserted by the Debtors in relation to the assumption and assignment of any contracts with Freescale.

WHEREFORE, for the foregoing reasons, Freescale, Inc. respectfully requests that this Court:

(a) decline to approve any assignment of the Freescale Agreements until such time as Freescale has expressly consented to such assignment, as required by 11 U.S.C. § 365(c);

(b) declare that Freescale reserves the right to challenge any proposed cure under the Freescale Agreements, or to request further adequate assurance of future performance thereunder (including the development of procedures to protect any of Freescale's confidential and proprietary information that is shared or disclosed pursuant to the Freescale Agreements;

(c) grant such other and further relief as may be just and fitting under the circumstances.

Respectfully submitted,

BROWN MCCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 472-5456
Kell C. Mercer
State Bar No. 24007668
Afton Sands-Puryear
State Bar No. 24060555

-and

SULLIVAN · HAZELTINE · ALLINSON LLC

William A. Hazeltine (#3294)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel.: 302-428-8191

ATTORNEYS FOR
FREESCALE SEMICONDUCTOR, INC.



4324463.1
50961.75

**CERTIFICATE OF SERVICE**

I, William A. Hazeltine, do hereby certify I am not less than 18 years of age and that on this 3rd day of September 2009, I caused a copy of the within *Limited, Initial Objection of Freescale Semiconductor, Inc. to Debtors' Motion for Orders Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interest in, Debtors Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases* to be served upon the parties listed below in the manner indicated.

**HAND DELIVERY**
Derek C. Abbot, Esq.
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19801

**HAND DELIVERY**
Christopher M. Samis, Esq.
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

**HAND DELIVERY**
Office of the United States Trustee
844 King Street, Suite 2207
Wilmington, DE 19801

**FIRST CLASS MAIL & FACSIMILE**
Roland Hlawaty, Esq.
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
(212) 822-5735

**FIRST CLASS MAIL & FACSIMILE**
James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-3999

**FIRST CLASS MAIL & FACSIMILE**
Mark I. Bane, ESq.
Anne H. Pak, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036
(646) 728-1662

**FIRST CLASS MAIL & FACSIMILE**
Fred S. Hodara, Esq.
Stephen Kuhn, Esq.
Kenneth Davis, Esq.
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1002

Under penalty of perjury, I declare the foregoing to be true and correct.

September 3, 2009
Date

*/s/ William A. Hazeltine*
William A. Hazeltine