**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
| Nortel Networks Inc., et al., | ) ) | Case No. 09-10138 |
| Debtors. | ) ) ) ) | Jointly Administered<br>Hearing Date: September 15, 2009 at 9:00 a.m.<br>Objections Due: September 4, 2009 at 4:00 p.m. |

**LIMITED OBJECTION TO DEBTORS' SALE OF**
**ITS EQUITY INTEREST IN DIAMONDWARE, LTD.**

Keith Weiner ("Weiner"), Rudy Mathieu ("Mathieu"), Wendell Allen Neff ("Neff"), Charles Rowe ("Rowe"), Neal Shact ("Shact"), Fred Scott ("Scott"), Jac Goudsmit ("Goudsmit"), Dwayne Roberts ("Roberts"), William Weidner ("Weidner"), and Price Paschall ("Paschall"), Creditors herein, by their attorneys, Bruce L. Wald and Jeffrey B. Rose, of Tishler & Wald, Ltd., for their limited objection to the proposed sale by Nortel Networks Inc., Debtor herein ("Nortel" or the "Debtor"), of its equity interests in DiamondWare, Ltd. ("DiamondWare"), state as follows:

  1.  On or about August 1, 2008, Nortel and Weiner entered into a certain Stock Purchase Agreement (the "SPA Agreement"), whereby Weiner, as the record and beneficial owner of all of the issued and outstanding shares of capital stock of DiamondWare, sold all of said shares to Nortel upon the terms and subject to the conditions set forth in the SPA Agreement. A copy of the SPA Agreement is attached hereto, marked "Exhibit 1" and made a part hereof. (In order to reduce paper waste, the only exhibit to the SPA Agreement which has been included here is <u>Exhibit F</u>, a document which is discussed below).

2. Pursuant to Section 2.4 of the SPA Agreement, Nortel withheld the sum of $825,000 from the purchase price and was required to deposit said sum in an escrow account (the "Escrow Account") to cover any additional payments due to Nortel and any indemnification liabilities of Seller (Weiner), Optionholders (Mathieu, Neff, Rowe, Shact, Scott, Goudsmit and Roberts), and the Option Right Holder (Weidner). The SPA Agreement further provided that Nortel would credit and deposit interest on the funds remaining in the Escrow Account at a rate of three percent (3%) per year, and that Nortel would distribute all of the funds remaining in the Escrow Account to Seller, Optionholder and the Option Right Owner on the eighteen (18) month anniversary of the Closing Date.

3. Pursuant to Section 2.8 of the SPA Agreement, "[a]s additional consideration for the Shares and the cancellation of all Company Options pursuant to Section 2.7," Nortel was required to "pay an earn-out payment" to Seller, Context Capital Group (Paschall), the Optionholders and the Option Right Holder following each of three (3) earn-out periods in the event that certain revenue goals for DiamondWare are satisfied in each of said earn-out periods. The earn-out periods are defined in the SPA Agreement as the periods ending December 31, 2009, December 31, 2010, and December 31, 2011.

4. Pursuant to Section 7.1(k) of the SPA Agreement, each key employee was required to enter into various agreements with Nortel, including but not limited to "a Non-Competition and Retention Agreement substantially in the form of Exhibit F hereto . . ." (As previously stated, Exhibit F is the only exhibit to the SPA Agreement which has been included with the SPA Agreement attached hereto as "Exhibit 1."

5.  During the weeks immediately following the date of the SPA Agreement, the parties thereto commenced their respective performances of the mutual obligations required under the SPA Agreement, including but not limited to the transfer of Weiner's shares of DiamondWare stock and the execution by Weiner, Mathieu, Neff and Rowe of their respective Non-Competition & Retention Bonus Agreements (the "NC&RB Agreements") with DiamondWare and Nortel, copies of which are attached hereto, marked "Group Exhibit 2" and made a part hereof.  Each of the NC&RB Agreements, dated August 8, 2008, required under Section 7.1(k) of the SPA Agreement as stated above, provides that as a "condition to its entering into the Stock Purchase Agreement, and in order to preserve the value of the business being acquired by Nortel pursuant thereto, Nortel has required that Employee enter into this Agreement and thereby agree to abide by and comply with the non-competition and non-solicitation obligations set forth herein."

6.  Each of the NC&RB Agreements further provides that DiamondWare "shall, and Nortel shall cause" DiamondWare to pay the respective key employee three bonus payments in consideration of his continued full-time employment with DiamondWare and compliance with the other provisions of the NC&RB Agreement.  Each of the bonus payments was scheduled for payment on the first, second and third anniversary of the closing date (on or about August 9, 2008) of the transaction contemplated by the SPA Agreement.  Prior to the first anniversary of said closing date, i.e., August 9, 2009, Weiner, Mathieu, Neff and Rowe entered into letter agreements with DiamondWare and Nortel which provided for the postponement of the first bonus payments until certain additional business goals for DiamondWare are satisfied.

7.    On July 20, 2009, Nortel filed Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases (the "Sale Motion").

8.    Although the Sale Motion provides at Page 13 thereof that "the Purchaser will acquire all equity interests owned by NNI in Nortel Government Solutions Incorporated and DiamondWare, Ltd.," it does not provide for the assignment of the SPA Agreement and the NC&RB Agreement to the ultimate purchaser of those assets. On the other hand, the Sale Motion does not preclude such assignment; it merely postpones the purchaser's decision concerning the possible assignment of any outstanding contracts to a date which may be subsequent to the deadline for objecting to the proposed asset sale.

9.    In view of the foregoing, Messrs. Weiner, Mathieu, Neff, Rowe, Shact, Scott, Goudsmit, Roberts, Weidner, and Paschall hereby object to the sale of Nortel's equity interest in DiamondWare if the SPA Agreement and the NC&RB Agreement are not also assigned to the ultimate purchaser of the DiamondWare equity interests, because these agreements are executory contracts which must be assumed by Nortel before they are assigned to a purchaser and they "may not be assumed in part and rejected in part. The trustee must either assume the entire

contract, *cum onere*, or reject the entire contract, shedding obligations as well as benefits." *Collier on Bankruptcy* (Matthew Bender 15th ed. rev.), ch. 365.03(1).  Any attempt to assign the equity interests in DiamondWare without also assuming and assigning the SPA Agreement and the NC&RB Agreement would constitute such a prohibited assumption in part and rejection in part.

      10.    Section 365 of the United States Bankruptcy Code (the "Code"), 11 U.S.C. §365, "provides for the assumption or rejection of executory contracts and unexpired leases. However, the section does not define the term 'executory contract.' The legislative history refers with approval to the so-called Countryman definition, observing that the term executory contract 'generally includes contracts on which performance remains due to some extent on both sides.' *Collier on Bankruptcy* (Matthew Bender 15th ed. rev.), ch. 365.02(1); See also *Sharon Steel Corporation v. National Fuel Gas Distribution Corporation*, 872 F.2d 36, 39 (3rd Cir. 1989). It is obvious from the provisions of the SPA Agreement and the NC&RB Agreement referenced above, and from various other provisions of the attached SPA Agreement, that significant types of performances remain due from all parties under both agreements.  Therefore, the SPA Agreement and the NC&RB Agreement are clearly executory contracts under §365 of the Code.

      11.    "It is well established that as a general proposition an executory contract must be assumed or rejected in its entirety . . . Where an executory contract contains several agreements, the debtor may not choose to reject some agreements within the contract and not others." *Stewart Title Guaranty Company v. Old Republic National Title Insurance Company*, 83 F.3d 735, 741 (5th Cir. 1996).  "When the debtor assumes the lease or the contract under §365, it must assume both the benefits and the burdens of the contract.  Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party." *City of*

5

*Covington v. Covington Landing Limited Partnership*, 71 F.3d 1221, 1226 (6th Cir. 1995). "An executory contract cannot be rejected in part and assumed in part. That is, the debtor or the trustee is not free to retain the favorable features of a contract and reject the unfavorable ones." *In the Matter of: Village Rathskeller, Inc., d/b/a The Village Gate*, 147 B.R. 665,671 (Bankr. S.D.N.Y. 1992.

12.     As the foregoing rulings make clear, a debtor may not assume and assign only a portion of an executory contract. It must either assume and assign an entire contract or reject it in its entirety. If Nortel is attempting to assign only the equity interests in DiamondWare which it derived from the SPA Agreement, but failing to also assign the additional obligations imposed under the same agreement, this Court should deny the sale of those equity interests. To do otherwise would be extremely unfair to Messrs. Weiner, Mathieu, Neff, Rowe, Shact, Scott, Goudsmit, Roberts, Weidner, and Paschall, because it would be depriving them of many of the benefits of the SPA Agreement and the NC&RB Agreement but not relieving them of them of many of the significant burdens imposed by the same agreements. As indicated above, numerous courts, including but not limited to the Third Circuit Court of Appeals, have already rejected such an outcome.

**WHEREFORE**, Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts, William Weidner, and Price Paschall, Creditors herein, pray this Honorable Court to deny the Debtor's request to assign its equity interests in DiamondWare, Ltd. unless the Debtor also assigns its interest in its Stock Purchase Agreement with Keith Weiner and its Non-Competition & Retention Bonus Agreements with Keith Weiner, Rudy Mathieu, Wendell Allen Neff, and William Weidner.

Dated:  September 3, 2009

Respectfully submitted,

Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts, William Weidner, and Price Paschall, Creditors

By: ____/s/ *Jeffrey B. Rose*_____
        One of Their Attorneys

Bruce L. Wald
Jeffrey B. Rose
TISHLER & WALD, LTD.
200 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 876-3800 (phone)
(312) 876-3816 (fax)
e-mail: bwald@tishlerandwald.com
         jrose@tishlerandwald.com