**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------x
:    **Chapter 11**
**In re**                   :
:    **Case No. 09-10138 (KG)**
**NORTEL NETWORKS INC.,** *et al.,*    :
:    **(Jointly Administered)**
            **Debtors.**    :    Hearing Date: September 15, 2009 @ 9:00 a.m. (ET)
:    Objection Deadline: September 4, 2009 @ 4:00 p.m.
---------------------------------------------------x

**AT&T'S LIMITED OBJECTION TO DEBTORS' MOTION FOR ORDERS
(I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE
SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE
BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A
BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING
THE NOTICE PROCEDURES, (E) APPROVING ASSUMPTION AND
ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF
CERTAIN DOCUMENTS UNDER SEAL, AND (G) SETTING A DATE FOR
THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A)
THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN,
DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES, AND (C)
THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES.**

AT&T Services, Inc. on its own behalf and as agent on behalf of AT&T Corp. and its

subsidiaries and affiliates (collectively, "AT&T"), hereby files this limited objection (the

"Objection") to the Debtors' Motion for Orders (i)(a) Authorizing Debtors' Entry into the Asset

and Share Sale Agreement (the "APA"), (b) Authorizing and Approving the Bidding Procedures,

(c) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (d) Approving the

Notice Procedures, (e) Approving Assumption and Assignment Procedures, (f) Authorizing the

Filing of Certain Documents Under Seal, and (g) Setting a Date for the Sale Hearing, and (ii)

Authorizing and Approving (a) the Sale of Certain Assets of, and Equity Interests in, Debtors'

Enterprise Solutions Business, (b) the Assumption and Assignment of Certain Contracts and

Leases, and (c) the Assumption and Sublease of Certain Leases, dated July 20, 2009 (the "Sale

Motion") and in support thereof states as follows:

**BACKGROUND**

1.      On January 14, 2009, Nortel Networks, Inc. and certain of its affiliates (collectively, the "Debtors") filed petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      AT&T and the Debtors are parties to numerous contracts whereby AT&T purchases Nortel equipment for use in AT&T's telecommunications network and also purchases Nortel equipment for resale to AT&T's customers for use in connection with AT&T's telecommunication services (collectively, the "AT&T Contracts").  Pursuant to the AT&T Contracts, the Debtors indemnify AT&T against, among other things, any damages or losses caused by the products, or as a result of claims for copyright infringement made by third parties against AT&T (collectively, the "Indemnification Provisions").  The Indemnification Provisions are essential to the AT&T Contracts because by using and/or reselling Nortel equipment to AT&T customers, AT&T, among other things, may expose itself to liability should a claim be asserted against AT&T on account of the Nortel equipment.

3.      On July 20, 2009, the Debtors filed the Sale Motion.  Pursuant to the Sale Motion, the Debtors propose to sell certain assets related to the Debtors' Enterprise Solutions Business to Avaya, Inc. (the "Purchaser") for approximately $475 million subject to higher and better offers (the "Sale").  On August 4, 2009, the Court entered an order (the "Order") approving bidding procedures, setting the sale hearing for September 15, 2009 (the "Sale Hearing") and establishing the deadlines for parties to object to the Sale.

4.      In the Sale Motion, the Debtors seek to assume and assign certain executory contracts to the Purchaser pursuant to Section 365 of the Bankruptcy Code (the "Assigned Contracts").  However, the Purchaser is not assuming all liabilities under the Assigned Contracts, but rather, is only assuming the "Assumed Liabilities," which includes, among other things,

"liabilities arising after the Closing Date to the extent related to the Acquired Business or the operations or ownership thereof after the closing..." Sale Motion at p. 13. Thus, the APA provides that the Purchaser shall assume and become responsible for, "all Liabilities arising from or in connection with the performance of the Assigned Contracts (or breach thereof) after the Closing Date...." APA at §2.1.3.

5.      Consistent with the Sale Motion and the APA, the proposed order approving the Sale Motion (the "Proposed Order") provides that on the Closing Date, "the Assumed and Assigned Contracts will be assumed and assigned free and clear of Interests other than the Assumed Liabilities...." Proposed Order at p. 16. Although the Purchaser is not assuming all the liabilities arising from the executory contracts, the Proposed Order provides that, "[p]ursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed and Assigned Contracts following assignment to the Purchaser." Id.

## OBJECTION

6.      AT&T objects to the extent that its rights under the Indemnification Provisions are not assumed by the Purchaser along with all of the other contractual provisions. The APA could be read to preclude AT&T from asserting a claim for indemnity against the Purchaser if such claim relates to events that occurred prior to the Closing Date (even if the claim was not asserted against AT&T until after the Closing Date). As discussed below, this is not permissible under Section 365, and the AT&T Contracts must be assumed and assigned in their entirety without limiting AT&T's rights under the Indemnification Provisions. In addition, AT&T must be provided with adequate assurance of future performance that its bargained for rights to indemnity will be protected.

A.      _The Purchaser Must Be Responsible for All Indemnification Claims_

7.     It is black letter law that a debtor assumes a contract under Section 365 of the

Bankruptcy Code *cum onere* - with all of its benefits and burdens.  NLRB v. Bildisco & Bildisco,

465 U.S. 513, 531 (1984); In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007).  As stated

by the Third Circuit,

> Section 365(f) requires a debtor to assume a contract subject to the benefits and
> burdens thereunder ... 'The [debtor] ... may not blow hot and cold.  If he accepts
> the benefits he must adopt the burdens.  He cannot accept one and reject the
> other'... The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding
> obligations that are an integral part of an assumed agreement.'

Fleming, 499 F.3d at 308 (citations omitted).  Similarly, a debtor seeking to assign a contract

under Section 365 must also assign the contract in whole with all the benefits and burdens.  Id. at

308 ("'an assignment is intended to change only who performs an obligation, not the obligation

to be performed'") (citing Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d

44, 60 (3d Cir. 2001); see also In re Morande Enters., Inc., 335 B.R. 188, 192 (Bankr. M.D. Fla.

2005) ("The Debtor cannot assume and assign the contract in part, under either § 365 or the

Florida Dealer Law, but must do so in whole, including the Location Provision"); In re Cajun

Elec. Power Co-Op., Inc., 230 B.R. 693, 710 (Bankr. M.D. La. 1999) ("The rule that an

executory contract must be assumed or assigned in toto has been recognized on several occasions

by the Fifth Circuit.... an executory contract must be assumed or assigned in its entirety...").

8.     Among the reasons that a contract must be assigned in its entirety under Section

365 is that the debtor will be relieved of its obligations under the contract pursuant to Section

365(k).  Therefore, the assignee must assume all the obligations so that the counterparty's rights

are protected.  The Third Circuit addressed the issue of whether a party can make a partial

assignment under Section 365 in American Flint Glass Workers Union v. Anchor Resolution

Corp., 197 F.3d 76 (3d Cir. 1999).  In American Flint, the debtor objected to proofs of claim

filed under collective bargaining agreements that had been assumed and assigned to the purchaser of the debtor's assets. The bankruptcy court found that the debtor was relieved of liability under Section 365(k), and therefore, the claims could not be asserted against the debtor. The Third Circuit reversed, holding that an assignment under Section 365 did not take place because the contracts at issue were not assigned with all of the benefits and burdens:

> In the bankruptcy context, however, Code § 365(k) changes the common law rule by effecting a novation by operation of law whether or not the obligee consents to the substitution.... But consistent with the basic concept of a contract's assignment, under which every contractual assignee takes the entire bundle of rights and obligations under the contract, such a forced novation is dependent on just such a total undertaking by the assignee. Code § 365(k) (emphasis added) provides: Assignment by the trustee to an entity *of a contract* or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

> Where Congress uses legal terms that have "accumulated settled meaning" under common law, it must be presumed (unless of course the statute dictates otherwise) that Congress meant to employ that established meaning.... Hence we construe the terms in Code § 365(k) to incorporate the general common law of assignments. In particular, we will follow the dominant consensus of common law jurisdictions, rather than the law of any particular jurisdiction....

> That dominant consensus conforms to the clear meaning of the language involved: that an assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract.

Id. at 80-81 (finding the debtor was still liable because the contract was not assigned in its entirety); cf. In re Allegheny Health, 383 F.3d 169 (3d Cir. 2004) (union could not assert post-closing indemnification claim against buyer of assets because such assets were not assumed by the buyer and *union failed to object to the sale*). Thus, a debtor cannot assign a contract under Section 365 unless the assignee assumes all the obligations.

9.     In this case, the Debtors are seeking to assume and assign the contracts under Section 365 and are seeking to be relieved of all liability after such assignment pursuant to

Section 365(k). However, the Purchaser is not taking the Assigned Contracts with all benefits and burdens, but rather, is seeking to limit its liabilities to the "Assumed Liabilities," i.e., liabilities related to post-closing performance. As the Third Circuit has made clear, this is not permissible under Section 365 of the Bankruptcy Code. In an analogous case, In re 1945 Route 23 Assocs., Inc., 2008 WL 2386296 (Bankr. D. N.J. 2008), the assignee of a lease argued that it was not responsible for pre-closing costs because, similar to the APA in this case, the assignee was only responsible for post-closing costs under the asset purchase agreement. The court rejected the argument, reasoning:

> The court is similarly not persuaded by Autobacs's construction of the pertinent provisions of the APA. Autobacs concedes that the Tozzo lease is an Assumed Agreement but then contends that the 2007 Corrected Cost Statement is not an Assumed Liability because much of the amount due under that cost statement accrued prior to the sale closing date (May 2, 2007). It contends that under the APA's definition of Assumed Liabilities, the obligation must both arise and relate to a period after the closing date. Further, it concludes that the following sentence in the definition clearly expresses Autobacs's intent not to assume liabilities like those contained in the 2007 Corrected Cost Statement: "For avoidance of doubt, Assumed Liabilities excludes any Liability attributable to any act, occurrence or omission which occurred prior to Closing except as expressly assumed hereunder." Autobacs concludes from this that because it did not expressly assume the obligation to pay the cost statement, the obligation is expressly excluded. The flaw in Autobacs's argument is that under the APA Autobacs expressly assumed the Tozzo lease, and thereby expressly assumed all of its provisions, including the obligation to satisfy the payment of the 2007 Corrected Cost Statement. When R & S, and subsequently Autobacs, assumed the Tozzo lease, they assumed it in its entirety, accepting the burdens as well as the benefits. See In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007). Unquestionably then, the assumed obligation to pay the Corrected 2007 Cost Statement arises and relates to the period after the closing date because that is when the obligation came due.

Id., 2008 WL 2386296 at *7.

10.    Here, under the AT&T Contracts, AT&T has the right to assert claims for indemnity if claims are asserted against AT&T on account of Nortel products. Pursuant to Section 365 of the Bankruptcy Code, the Purchaser takes the assignment subject to those rights.

As it currently stands, the APA would appear to bar AT&T from asserting its bargained for indemnity rights against the Purchaser if a claim based on pre-closing conduct is asserted against AT&T. This is not permissible and, accordingly, the sale should not be approved unless the Purchaser also agrees to fully assume the Indemnification Provisions contained in the AT&T Contracts.[1]

B.    *There is no Adequate Assurance of Future Performance*

11.    Absent assumption of the Indemnification Provisions in the contracts, the Debtors have also failed to provide adequate assurance of future performance under the AT&T Contracts.[2]

12.    To effectuate an assignment under the Bankruptcy Code, the Debtors must demonstrate adequate assurance of future performance. Adequate assurance of future performance is an element of the assumption and assignment process which must be met in addition to the curing of any defaults under an executory contract. 11 U.S.C. § 365(f)(2). Even in the absence of a default under the contract, adequate assurance of future performance must be afforded before the trustee can assign an executory contract. See In re E-Z Serve Convenience Stores, Inc., 289 B.R. 45, 52 (Bankr. M.D.N.C. 2003) (refusing to excise a right of first refusal

---

[1] There are several other obligations under the AT&T Contracts that must also be assumed and assigned in their entirety. Under the AT&T Contracts, Nortel is required to send technicians to service and upgrade Nortel products in addition to providing services related to the warranties on such products. In addition, Nortel is also bound by confidentiality provisions in the AT&T Contracts. The Purchaser must also be bound by these as well as all other provisions contained in the contracts. Although the APA appears to provide that the Purchaser is assuming some of these provisions in their entirety, such as "obligations under warranty liabilities and Known Product Defects", AT&T objects to the extent that the proposed assignment does not include all the obligations under the AT&T Contracts (or that the assumed "warranty" provision excludes any warranty or similar obligation under the AT&T Contracts).

[2] Pursuant to the Assignment Procedures attached as Exhibit 2 to the Order, the Debtors will serve notices of the assumption and assignment of executory contracts on the counterparties to those contracts prior to the Closing Date. These notices will contain the proposed cure and a "statement as to the Purchaser's ability to perform the Debtors' obligations" under the contracts (and the counterparties to such contracts will have an opportunity to object to the proposed cure and adequate assurance). Unless the statement of adequate assurance provided in the notices addresses the Indemnification Provisions, AT&T's objection to any proposed adequate assurance remains for the reasons stated above.

from a lease agreement reasoning that, among other things, absent such provision the non-debtor party "will not receive the full benefit of its bargain and the Trustee cannot give adequate assurance of future performance"). Although not defined in the Bankruptcy Code, the phrase 'adequate assurance of future performance,' adopted from Section 2-609(1) of the Uniform Commercial Code, is intended to be given a "practical, pragmatic construction based upon the facts and circumstances of each case." Cinicola v. Scharffenberger, 248 F.3d 110, 120 (3d Cir. Pa. 2001) (citations omitted).

13.   As discussed, Section 365(k) of the Bankruptcy Code relieves the trustee and the estate from any liability under a contract occurring after assignment. In re Washington Capital Aviation & Leasing, 156 B.R. 167, 175 & n.3 (Bankr. E.D. Va. 1993) (Section 365(k) alters the common law rule that the original obligor remains ultimately liable after assignment until discharged by performance, consent or otherwise.); see also In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) (in the context of shopping center leases, the court held that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"), cert. denied, 531 U.S. 873 (2000).

14.   Here, AT&T's indemnity claims based on events that occurred prior to the Closing Date could arise months or years after the Closing. Assuming arguendo, that these claims are considered pre-closing claims, the APA would appear to prevent AT&T from asserting the claims against the Debtors for a variety of reasons. This would leave AT&T without its bargained for rights, resulting in the failure to provide adequate assurance of future performance.

15.     In short, the Debtors must provide adequate assurance that AT&T's bargained for rights will be protected, which means that the contracts, including the Indemnification Provisions, must be assumed in their entirety in a seamless fashion.[3]

**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

---

[3] AT&T reserves its rights to further object when it is provided information related to the contracts to be assumed and assigned. This includes, but is not limited to, the right to object to the extent that the Debtors and the Purchaser seek to "un-bundle" the AT&T Contracts as detailed in Section 5.14 of the APA. Under that section, the Debtors and the Purchaser will seek to un-bundle certain contracts and enter into new contracts "on commercially reasonable terms that are consistent with the contract terms that the Purchaser generally offers to similarly situated customers...." APA at §5.14(a). Section 5.14(b) also allows the Debtors to subcontract portions of the Bundled Contracts to the Purchaser under certain conditions and subject to certain requirements. At this point, AT&T does not know whether any proposed "un-bundling" of the AT&T Contracts will negatively impact its rights under the contracts. Accordingly, AT&T reserves its right to object with regard to the un-bundling of its contracts or with regard to other issues that may arise when the Debtors make their determination regarding the treatment of the AT&T Contracts.

Dated: September 4, 2009

**ASHBY & GEDDES, P.A.**

William P. Bowden (No. 2553)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
Telephone: (302) 654-1888
Facsimile: (302) 654-2067

—and—

FULBRIGHT & JAWORSKI L.L.P.

David A. Rosenzweig
Mark C. Haut
666 Fifth Avenue
New York, New York 10103
Tel:  (212) 318-3000
Fax:  (212) 318-3400

*Co-Counsel for AT&T*

{00329638;v1}                    - 10 -