IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS, INC., *et al.*, | Case No. 09-10138 (KG) |
| Debtors. | Joint Administration |

**OBJECTION OF TELSTRA CORPORATION LIMITED TO DEBTORS' MOTION FOR ORDER (I) (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BID PROCEDURES (C) AUTHORIZING AND APPROVING BREAK-UP FEE AND EXPENSE REIMBURSEMENT AND (D) APPROVING THE NOTICE PROCEDURES; (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL, AND (G) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN, DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES, AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES [D.I. 1131]**

Telstra Corporation Limited ("Telstra") hereby objects to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G) Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases [D.I. 1131] (the "Sale Motion"). By the Sale Motion, the Debtors seek authority to, *inter alia* sell certain of the Debtors' intellectual property pursuant to 11 U.S.C. 363 free and clear of all liens, claims, encumbrances and interests of any kind or nature.

By prior agreement with the Debtors, Telstra is a licensee of certain of the intellectual property that the Debtors now seek to sell.  Telstra objects to the relief requested in the Sale Motion to the extent the Debtors seek to sell the intellectual property "free and clear" of Telstra's rights as a licensee and its rights under Section 365(n) of the Bankruptcy Code, 11 U.S.C. § 365(n).

The Sale Motion does not identify the executory contracts to be assumed and assigned, and only estimates that the number of such contracts could "run into the thousands."  [Sale Motion at ¶ 31.]  Unless and until Telstra is able to determine that the Licence Agreement (defined below) is excluded from the proposed assumption and assignment, Telstra has no choice but to interpose an objection to the Sale Motion as a precautionary measure to protect and preserve all of its rights under the Licence Agreement.  At a minimum, a determination about cure under Section 365 of the Bankruptcy Code must be made.  Moreover, the Debtors cannot sell the assets free and clear of Telstra's licensed interest because the Debtors cannot satisfy the requirements of § 363(f), have not complied with § 363(e), and the proposed sale violates an express provision of the controlling license agreement.  To the extent this Court might consider the possibility of allowing a sale of the Debtors' intellectual property "free and clear" of Telstra's rights, then Telstra requests that its interests be adequately protected.

In support of this objection, Telstra states as follows:

**Background**

1.  On January 14, 2009, (the "Petition Date") the Debtors filed voluntary petitions for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

2.  Telstra Corporation Limited ("Telstra") is a telecommunications and media company domiciled in Australia.  Telstra provides customers with an integrated telecommunications

experience across fixed line, mobiles, broadband, information, transaction and search and pay TV.

3.     Prior to the Petition Date, on or about June 26, 2000, Telstra entered into a cross-licensing agreement (the "Licence Agreement") with one of the Debtors, Nortel Networks Limited ("NNL") in relation to two patent families (the "Licenced Intellectual Property").  A copy of the Licence Agreement is attached hereto as Exhibit A.  The Licence Agreement, among other things, resolved patent litigation between NNL and Telstra, and provided as part of that resolution for the mutual exchange of royalty-free licenses between the parties.

4.     The Sale Motion seeks authority to sell assets of the Debtors including those of NNL.

5.     The Asset and Share Sale Agreement (the "APA") between the Debtors and the proposed purchaser, Avaya, Inc. ("Avaya") referred to in the Sale Motion, involves the sale of a wide range of the Debtors' assets including Transferred Intellectual Property (as defined in the APA) that are purported to be set out in that certain Disclosure Schedule to the APA. The Transferred Intellectual Property includes patents held by NNL.  Upon information and belief, these include the Licenced Intellectual Property that are the subject of the Licence Agreement.

6.     The Debtors' Disclosure Schedule is not part of the available published documents. Section 4.6 of the APA deals with the intellectual property that is the subject of the proposed sale and the existing, relevant intellectual property agreements.  Section 2.1.3 of the APA sets forth the Assumed Liabilities and licensing related to the transfer of intellectual property.  It appears that Avaya will only assume liability to the extent that the terms of the relevant licensing agreement requires assignees of the Transferred Intellectual Property to assume the liability.

7.     Without access to the Seller's Disclosure Schedule, it is difficult to determine whether the sale relates to the Licenced Intellectual Property that are part of the Licence

Agreement. Telstra is concerned, in this absence of information to permit an informed determination, that there is the possibility that Avaya (or such other entity that is the successful purchaser) will acquire the Licenced Intellectual Property <u>without</u> being subject to the Licence Agreement, including the absurd result that the purchaser could potentially have use of the Telstra patents governed by the License Agreement without the accompanying mutual obligation (among others) in the License Agreement that Telstra be permitted to use the Nortel patents specified therein.

## **Legal Argument**

8. Section 363(f) of the Bankruptcy Code provides that:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

9. The Debtors have not alleged satisfaction of any of the grounds for authorized sale under § 363(f) with respect to Telstra' rights under the Licence Agreement.

10. First, applicable non-bankruptcy law does not permit the sale of the Licenced Intellectual Property free and clear of Telstra' interest.

11. Second, Telstra has not consented to the proposed sale.

12.     Third, the Debtors do not dispute Telstra' interest in the Licenced Intellectual Property.

13.     Fourth, loss of use of the Licenced Intellectual Property would cause significant negative impact on Telstra' business and result in the potential loss of significant revenue. However, such loss is not readily quantifiable and cannot be reduced to a claim and, therefore, Telstra cannot be compelled to accept money satisfaction of its claim.  <u>See</u>, <u>e.g.</u>, <u>In re Trans World Airlines</u>, 322 F.3d 283, 291 (3rd Cir. 2003).  Upon information and belief, the loss would greatly exceed the proposed purchase price.

14.     Additionally, even if the Court determines that the Debtors have or can satisfy the requirements under § 363(f), the Debtors cannot sell the Licenced Intellectual Property free and clear of Telstra' license interest unless the Trustee provides adequate protection of that interest. under § 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .

11 U.S.C. § 363(e).

15.     If a party with an interest that is subject to sale under § 363 seeks protection of that interest under § 363(e), the Court must ensure such protections.  As set forth more fully above, Telstra has a vital interest in the Licenced Intellectual Property.  Section 365(n) at a minimum establishes that interest and provides specific protections of those interests.   Adequate protection can therefore only be afforded to Telstra by prohibiting the sale of the Licenced Intellectual Property free and clear of the interests held by Telstra.  The resultant harm that will be done to Telstra if a sale free of its interests is permitted, if capable of calculation, will greatly exceed the

amount of the sale price the estate will receive from the sale.  Because the interests of Telstra would be transferred to any proceeds of the sale if a sale free and clear of such interests were to be permitted, there cannot be any benefit to the estate from such a sale.  There simply would be no proceeds made available to unsecured creditors after accounting for Telstra's interests.

16.   The sale proposed by the Debtors free and clear of Telstra' interests has the practical effect of obviating Telstra's § 365(n) rights as well as Telstra's express rights under the Licence Agreement, which was the negotiated resolution of patent litigation.  In this case, because the proposed sale price is wholly inadequate to protect Telstra's interest (even assuming, for these limited purposes, that such interest could be reduced to money value), the only way to truly adequately protect Telstra's interest is to require that the sale *not* be free and clear of Telstra's interests in the Licenced Intellectual Property and permit Telstra the continued right to use the Licenced Intellectual Property under the Licence Agreement.  See In re Haskell, L. P., 2005 Bankr. LEXIS 251 (Bankr. D. Mass. 2005) (holding, in real property lease context, that sales of the property under Section 363(f) are subject to the Section 363(e) requirement of adequate protection and, where the proceeds of the sale were insufficient to protect the lessee's interest, the lessee would suffer substantial and unquantifiable damages if it lost its lease as well as its Section 365(h) ability to remain in possession of the leased premises after rejection of the lease, thus no adequate protection had been offered or could be provided); see also In re Novon Intern., Inc., 2000 WL 432848 (W.D.N.Y. 2000) (assignee/buyer who acquires the debtor's patents in a "free and clear" bankruptcy sale nevertheless takes subject to outstanding license); Keystone Type Foundry v. Fastpress Co., 272 F. 242, 245 ( 2d Cir. 1921); Sanofi, S.A. v. Med-Tech Veterinarian Products, Inc., 565 F. Supp. 931, 939 (D.N.J. 1983) (a purchaser of a patent takes

subject to outstanding licenses).  Without such use, Telstra' business will be dealt a significant blow and its ability to provide services to will be undermined.

**WHEREFORE**, Telstra respectfully requests that this Court:

    (a) deny the Sale Motion; or

    (b) provide Telstra with adequate protection of its interest in the Licenced Intellectual Property by expressly conditioning any sale of the Licenced Intellectual Property on the survival post-sale of any and all rights and interests Telstra holds pursuant to the Licence Agreement or otherwise under § 365(n); and

    (c) grant such other and further relief as the Court deems just and proper.


Dated:  September 4, 2009                    Respectfully submitted,
       Wilmington, Delaware

                                                TELSTRA CORPORATION LIMITED
                                                By their attorneys,


                                                /s/  Lee Harrington
                                                NIXON PEABODY LLP
                                                Robert Christmas
                                                Lee Harrington (DE No. 4046)
                                                437 Madison Avenue
                                                New York, New York  10022
                                                Telephone:  (212) 940-3000
                                                Facsimile:  (212) 940-3111

## **CERTIFICATE OF SERVICE**

Pursuant to the Debtors' Notice of the Sale Motion *inter alia* dated September 4, 2009, I caused the Objection of Telstra Corporation Limited to be served on the following parties by facsimile, electronic mail and/or first class mail:

(i) Counsel to the Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax (212) 225-3999 (Attn: James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax: (302) 658-3989 (Attention: Derek C. Abbott);

(ii) Counsel to the Purchaser: Ropes & Gray LLP, 1211 Avenue of the Americas, New York, New York 10036, Fax: (646) 728-1662 (Attention: Mark I. Bane and Anne H. Park);

(iii) Counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Fax: (212) 872-1002 (Attention: Fred S. Hodara, Stephen Kuhn and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attention: Christopher M. Samis);

(iv) Counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, One Chase Manhattan Plaza, New York, New York 10006, Fax: (212) 822-5735 (Attention: Roland Hlawaty); and

(v) the U.S. Trustee, 844 King Street, Suite 2207, Wilmington, DE 19801

                                          /s/ Lee Harrington