# EXHIBIT A



DAVIES COLLISON CAVE SOLICITORS
INTELLECTUAL PROPERTY LAW

BETWEEN

TELSTRA CORPORATION LIMITED
ACN 051 775 556

AND

NORTEL NETWORKS LIMITED

LICENCE AGREEMENT

DAVIES COLLISON CAVE SOLICITORS
Intellectual Property Law
1 Little Collins Street
Melbourne Victoria 3000
Australia
Tel: +61 3 9254 2888
Fax: +61 3 9254 2880

# TABLE OF CONTENTS

1.   DEFINITIONS ........................................................................................................... 1

2.   INTERPRETATION ................................................................................................... 3

3.   GRANT OF LICENCE ............................................................................................... 3

4.   SUB-LICENCES ....................................................................................................... 4

5.   THE OPPOSITION PROCEEDINGS AND THE APPLICATIONS ................................ 4

6.   INDUSTRIAL AND INTELLECTUAL PROPERTY RIGHTS ....................................... 5

7.   TERM ...................................................................................................................... 5

8.   INDEMNITY ............................................................................................................ 6

9.   WAIVER .................................................................................................................. 6

10.  ASSIGNMENT ......................................................................................................... 6

11.  ENTIRE AGREEMENT .............................................................................................. 7

12.  SEVERABILITY ....................................................................................................... 7

13.  GOVERNING LAW .................................................................................................. 7

14.  COSTS ..................................................................................................................... 7

SCHEDULE 1 ..................................................................................................................... 9

SCHEDULE 2 ..................................................................................................................... 10

LICENCE AGREEMENT

THIS LICENCE is made the  26th  day of  JUNE                    2000.

BETWEEN:

TELSTRA CORPORATION LIMITED ACN 051 775 556 of 242 Exhibition Street, Melbourne, Victoria 3000, Australia (hereinafter called "Telstra") of the one part

AND

NORTEL NETWORKS LIMITED of World Trade Center of Montreal, 380 St. Antoine Street West, Montreal, Quebec H2Y 3Y4, Canada (hereinafter called "Nortel") of the other part.

WHEREAS:

A.      Nortel is the owner of Australian Patent Application No. 694682 ("the Patent Application") which has been advertised as accepted by the Australian Patent Office.

B.      Telstra has opposed the grant of a patent on the Patent Application ("the Opposition Proceedings")

C.      The parties have agreed to resolve the Opposition Proceedings on the terms and conditions set out in this Agreement.

NOW THIS AGREEMENT WITNESSES as follows:

1.      DEFINITIONS

        In this Agreement each of the following terms shall have the following meanings except where the context otherwise requires.

        "Affiliate" means in the case of each party:
        (i)      its parent or holding company ("Parent");

- 2 -

(ii)    a corporation, company or other entity more than fifty percent (50%) of whose issued shares or securities (carrying the right to vote for the election of directors or other managing authority) are, now or hereafter, owned or controlled directly or indirectly by that party or its Parent, but such corporation, company or other entity shall be deemed to be an "Affiliate" only so long as such ownership or control exists; or

(iii)    an entity which does not have issued shares or securities (as may be the case in a partnership, joint venture or unincorporated associations) more than fifty percent (50%) of whose ownership, management or control rights to make the decisions for such entity is, now or hereafter, owned or controlled, directly or indirectly, by such party or its Parent but such entity shall only be deemed to be an "Affiliate" so long as such ownership or control exists.

"Exploit" in relation to an invention means:

(a)    where the invention is a product - make, have made, hire, sell or otherwise dispose of the product, offer to make, sell, hire or otherwise dispose of it, use or import it, or keep it for the purpose of doing any of those things; or

(b)    where the invention is a method or process - use the method or process or do any act mentioned in paragraph (a) in respect of a product resulting from such use.

"Telstra Patents" means any one or more of the patents granted on the applications set out in Schedule 1 or granted on patent applications claiming priority from the applications set out in Schedule 1.

"Nortel Patents" means any one or more of the patents granted on the applications set out in Schedule 2 or granted on patent applications claiming priority from the applications set out in Schedule 2.

- 3 -

"Industrial and Intellectual Property" in relation to Telstra means the Telstra Patents and in relation to Nortel means the Nortel Patents.

2.    INTERPRETATION

2.1    Headings used in this Agreement are included for convenience and reference only and shall not be construed as affecting the meaning or interpretation of this Agreement.

2.2    Words importing the singular shall (where appropriate) include the plural and vice versa.

2.3    Words importing one gender shall (where appropriate) include the neuter and other gender and vice versa.

2.4    Words importing natural persons shall (where appropriate) include corporations and unincorporated associations and vice versa.

2.5    "This Agreement" shall extend to and include every renewal, extension and variation of this Agreement, and every further agreement with respect to the Invention entered into by the parties to this Agreement.

2.6    The Schedules form part of and are incorporated in this Agreement.

2.7    A reference in this Agreement to a statute or a section of a statute includes all amendments to that statute or section passed in substitution for the statute or section referred to or incorporating any of its provisions.

3.    GRANT OF LICENCE

3.1    On the terms and conditions set out in this Agreement, Telstra grants to Nortel an irrevocable, non-exclusive, royalty free, worldwide licence to Exploit the Telstra Patents to the extent that the same may be granted during the term of this Agreement.

- 4 -

3.2     During the term of this Agreement, Telstra agrees not to assert anywhere in the world against Nortel or a person who has acquired products purchased from Nortel, any of Telstra Patents.

3.3     On the terms and conditions set out in this Agreement, Nortel grants to Telstra an irrevocable, non-exclusive, royalty free, worldwide licence to Exploit the Nortel Patents to the extent that the same may be granted during the term of this Agreement.

3.4     During the term of this Agreement, Nortel agrees not to assert anywhere in the world against Telstra or a person who has acquired products purchased from Telstra, any of Nortel Patents.

**4.    SUB-LICENCES**

4.1     Both parties have the right to grant to any Affiliate sub-licences of the rights conferred on it pursuant to this Agreement without the need to obtain the consent of the other party.

**5.    THE OPPOSITION PROCEEDINGS AND THE APPLICATIONS**

5.1     Within 10 business days of the date of this Agreement, Telstra agrees to withdraw the Opposition Proceedings by filing all necessary documents with IP Australia at its cost.

5.2     Telstra agrees that it will not contest and will not procure any Affiliate to contest the validity in any Court, administrative proceeding or other forum, of the Nortel Patents nor take any action whatsoever to prevent, hinder or delay any application set out in Schedule 2 from proceeding to grant. Furthermore, Telstra will not and Telstra will not procure any Affiliate to assist in any way whatsoever, any third party to so contest, prevent, hinder or delay.

5.3     Nortel agrees that it will not contest and will not procure any Affiliate to contest the validity in any Court, administrative proceeding or other forum, of the Telstra Patents nor

- 5 -

take any action whatsoever to prevent, hinder or delay any application set out in Schedule 1 from proceeding to grant. Furthermore, Nortel will not assist and will not procure any Affiliate to assist in any way whatsoever, any third party to so contest, prevent, hinder or delay.

5.4    Each party hereby released and forever discharges the other from all liability which existed in the past, now exists or would exist in the future but for this Agreement and arising out of the exploitation, in the case of Telstra, by Telstra of the Nortel Patents and, in the case of Nortel, by Nortel of the Telstra Patents.

6.    INDUSTRIAL AND INTELLECTUAL PROPERTY RIGHTS

6.1    Each party agrees that nothing in this Agreement shall give to it any right, title or interest (other than the rights hereby expressly granted) in any of the Industrial and Intellectual Property of the other and that as between the parties all such Industrial and Intellectual Property is and shall remain the sole property of the other.

6.2.    For the duration of this Agreement each party shall be responsible for its Industrial and Intellectual Property and its applications therefor and, without limiting the generality of the foregoing, that party shall be responsible for the payment of any continuation, renewal or other fees provided however that a party shall be under no obligation to pay any continuation, renewal or other fees and may at its sole discretion allow any Industrial or Intellectual Property and its applications therefor to lapse at any time if it so desires.

6.3    A party shall have no right to commence any action against a third party claiming infringement of any Industrial and Intellectual Property of the other.

7.    TERM

7.1    This Agreement shall commence on execution and shall continue until the expiry of the last to expire of the Telstra Patents and the Nortel Patents other than clause 8 which will survive termination.

- 6 -

### 8.    INDEMNITY

8.1    Telstra hereby indemnifies Nortel and agrees to keep Nortel fully indemnified against all loss, costs (including but not limited to legal costs on a solicitor own client basis), expenses, demands, claims or liabilities whether direct or indirect ("liabilities"), and whether for property damage, consequential or economic loss or personal injury, relating to any products manufactured or supplied by Telstra pursuant to the rights granted hereunder and whether such liabilities arise in tort (including without limiting the generality thereof, negligence) contract, under statute or otherwise.

8.2    Nortel hereby indemnifies Telstra and agrees to keep Telstra fully indemnified against all loss, costs (including but not limited to legal costs on a solicitor own client basis), expenses, demands, claims or liabilities whether direct or indirect ("liabilities"), and whether for property damage, consequential or economic loss or personal injury, relating to any products manufactured or supplied by Nortel pursuant to the rights granted hereunder and whether such liabilities arise in tort (including without limiting the generality thereof, negligence) contract, under statute or otherwise.

### 9.    WAIVER

No forbearance, delay or indulgence by a party in enforcing the provisions of this Agreement shall prejudice its rights, nor shall any waiver of its rights operate as a waiver of any subsequent breach or in any way affect the validity of the whole or any part of this Agreement nor prejudice that party=s right to take subsequent action. Any waiver or forbearance in regard to the performance of this Agreement shall operate only if in writing.

### 10.    ASSIGNMENT

- 7 -

10.1 Except as provided in clause 10.2 the benefit of this Agreement shall not be dealt with in any way by a party (whether by assignment or otherwise) without the prior written consent of the other which consent may be withheld at the discretion of the other.

10.2 No written consent as provided for in clause 10.1 shall be required where the proposed assignee or transferee is an Affiliate of the party seeking to deal with its rights under this Agreement.

**11. ENTIRE AGREEMENT**

This Agreement constitutes the entire agreement between the parties with respect to the subject matter referred to herein. Any prior arrangements, agreements, representations or undertakings are superseded. All conditions, warranties or rights which would, but for this clause be implied into this Agreement are hereby excluded. No modification or alteration of any clauses of this Agreement shall be valid except in writing signed by both parties.

**12. SEVERABILITY**

If any provision of this Agreement is held invalid, unenforceable or illegal for any reason, this Agreement shall remain in full force apart from the said provisions which shall be deemed deleted.

**13. GOVERNING LAW**

This Agreement will be governed by and construed according to the laws of the State of Victoria, Australia.

**14. COSTS**

Each party shall bear its own costs of and incidental to the preparation and execution of this Agreement.

- 8 -

IN WITNESS WHEREOF the parties hereto have executed this Agreement the day and year first hereinbefore written.

| | |
|---|---|
| SIGNED SEALED and DELIVERED<br>for and on behalf of **TELSTRA**<br>**CORPORATION LIMITED** ACN 051<br>775 556 by its duly authorised officer in<br>the presence of: | )<br>)<br>)<br>)<br>) |

......................................................
Witness
Name (printed): BRONWYN ROSS

JANE PELLIER
DEPUTY IP COUNSEL

| | |
|---|---|
| SIGNED SEALED and DELIVERED<br>for and on behalf of **NORTEL**<br>**NETWORKS LIMITED** by its duly<br>authorised officer in the presence of: | )<br>)<br>)<br>) |

......................................................

......................................................
Arthur W. Fisher
Vice-President and Intellectual Property
Law

......................................................
Blair F. Morrison
Assistant Secretary

- 9 -

## SCHEDULE 1

**Telstra Patents**

| | |
|---|---|
| X | Australian Patent Application No. 19173/97 |
| X | Canadian Patent Application No. 2248660 |
| X | European Patent Application No. 97906939.0 |
| X | Indonesian Patent Application No. P-981238 |
| X | New Zealand Patent Application No. 331826 |
| X | United States Patent Application No. 08/773652 |
| X | Vietnamese Patent Application No. S19980778 |

- 10 -

## SCHEDULE 2

**Nortel Patents**

| | |
|---|---|
| X | Australian Patent Application No. 694682 |
| X | Australian Patent Application No. 89488/98 |
| X | Canadian Patent Application No.2228661 |
| X | European Patent Application No. 96927484.4 |
| X | Japanese Patent Application No. 9-513828 |
| X | United States Patent Application No. 60/004603 |
| X | United States Patent Application No. 08/652659 |