IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------x
In re                                              :   Chapter 11
                                                   :
                                                   :   Case No. 09-10138 (KG)
NORTEL NETWORKS INC., *et al.*,                    :
                                                   :   (Jointly Administered)
                           Debtors.                :   Hearing Date: September 15, 2009 at 9:00 a.m. (ET)
                                                   :   Objection Deadline: September 4, 2009 at 4:00 p.m. (ET)
----------------------------------------------------------x   Related to Docket No. 1131

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF FLEXTRONICS CORPORATION AND FLEXTRONICS TELECOM SYSTEMS LTD TO DEBTORS' MOTION FOR ORDERS (I) (A) AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E) APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN, DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES**

Flextronics Corporation and Flextronics Telecom Systems Ltd, on behalf of themselves and certain of their affiliates (collectively, "Flextronics"), by and through their undersigned counsel, hereby file this limited objection and reservation of rights (the "Objection") with respect to the Debtors' Motion For Orders (I) (A) Authorizing Entry Into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date For the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and

6418935

Leases and (C) the Assumption and Sublease of Certain Leases, dated July 20, 2009 [Docket No. 1131] (the "Sale Motion"),[1] and respectfully represent as follows:

## Preliminary Statement

Flextronics is an Electronics Manufacturing Services (EMS) provider, helping customers design, build, ship, and service electronics products through a network of facilities in 30 countries on four continents. As Nortel has previously stated to this Court, Flextronics is by far Nortel's largest supplier, and is responsible for approximately 70% of Nortel's hardware products. See Debtors' Motion Pursuant to 11 U.S.C. § 105(a) and § 363 for an Order (A) Approving the Settlement Documents By and Among (I) Nortel Networks Limited, (II) Flextronics Telecom Systems Ltd. and (III) Flextronics Corporation and (B) Granting Related Relief, dated May 22, 2009 [Docket No. 783], ¶ 12. Flextronics is co-chair of the official committee of unsecured creditors in these cases, but files this Objection it its individual capacity.

As has been the case throughout these proceedings, Flextronics remains supportive of Nortel's ongoing restructuring efforts. Again, however, as was the case with Nortel's sale of its CDMA and LTE assets, Flextronics has identified certain potential issues with respect to the proposed treatment of its executory contracts.

As this Court may remember, in the previous sale of Nortel's CDMA/LTE assets, Flextronics' agreements were explicitly proposed to be subject to a "back-to-back" arrangement, whereby Nortel would pass through its rights and remedies under Flextronics' agreements with Nortel to the proposed purchaser purportedly without an assignment of Flextronics' agreements. (In other words, Nortel would stand as a middleman between Flextronics and the ultimate purchaser, without assigning, modifying or terminating the Flextronics agreements.) Here, on

---

[1] Capitalized terms used but not defined herein shall have the meaning assigned to them in the Sale Motion.

the other hand, Nortel's Sale Motion fails to disclose the proposed treatment of Flextronics' agreements in connection with the Enterprise sale.

Based on representations recently made by Nortel's counsel, Flextronics now understands that no "back-to-back" arrangement is contemplated by Nortel in connection with the Enterprise sale. Flextronics therefore files this Objection to preserve its rights, and confirm that to the extent that Nortel seeks to implement a "back to back" arrangement similar to the one previously proposed in connection with the CDMA/LTE sale, Flextronics maintains its objection that such an arrangement, inter alia, constitutes a de facto and impermissible assignment.

Finally, Flextronics objects to the extent that its rights may be prejudiced by the transfer of equipment in its possession which is proposed to be sold pursuant to the Sale Motion.

## The Flextronics-Nortel Agreements

1. Flextronics' business relationship with Nortel is complex and multi-leveled. The relationship is primarily governed by two separate master contract manufacturing and service agreements, as follows: (1) the Amended and Restated Master Contract Manufacturing Services Agreement, dated as of June 29, 2004, between Nortel Networks Limited ("NNL") and Flextronics Telecom Systems Ltd. (the "Flextronics MCMSA"); and (2) the Master Contract Manufacturing Services Agreement, dated as of September 30, 2003, between NNL and Flextronics Corporation (f/k/a Solectron Corporation) (the "SLR MCMSA" and together with the Flextronics MCMSA, the "MCMSAs"). Each of the MCMSAs has several subagreements incorporated by reference thereunder, including certain "virtual systems house" agreements (VSHAs), among other agreements.

2. Flextronics' business with Nortel as it relates to the Enterprise business is governed by both the SLR MCMSA and the Flextronics MCMSA, and various VSHAs.

Flextronics also conducts certain business with Nortel related to the Enterprise business without a formal VSHA, but on commercial terms consistent with the MCMSAs.

3. The MCMSAs have been amended from time to time to resolve various issues that have arisen between the parties, including pursuant to (i) a memorandum of understanding dated October 13, 2006 (the "MOU"), (ii) an Amending Agreement, dated as of January 13, 2009 (the "Amending Agreement") and (iii) a Settlement Agreement (the "Settlement Agreement") and related Side Letter (the "Side Letter"), each dated as of May 22, 2009.

4. The Amending Agreement, Settlement Agreement and Side Letter have been approved by the Ontario Superior Court of Justice in Nortel's proceedings under the Companies' Creditors Arrangement Act (the "CCAA Proceedings"), and the Settlement Agreement and Side Letter have been approved by this Court in Nortel's chapter 11 cases.

5. The Settlement Agreement provides, as relevant here, that "the termination of the SLR MCMSA, pursuant to the termination notice delivered by Flextronics dated January 12, 2009, shall be effective on December 12, 2009 . . . . Settlement Agreement, § 4.

6. Thus, the SLR MCMSA as it relates to the Enterprise business is scheduled to terminate on December 12, 2009. The Flextronics MCMSA remains in effect and no termination notices have been given thereunder. Nortel has not sought to assume or reject either of the MCMSAs to date.

7. The MCMSAs, as amended, with subagreements, establish a complex manufacturing relationship by which, in essence, Nortel has "outsourced" its hardware design, manufacturing and supply functions to Flextronics. In very general terms, pursuant to the agreements, Nortel issues 12-month nonbinding "forecasts" of orders for goods and services expected to be placed by Nortel in the coming year. Flextronics uses these as a basis to place

6418935

orders for materials from third parties and to otherwise manage its manufacturing process to meet Nortel's expected demand. Nortel places monthly orders for finished goods to Flextronics, which, following acceptance by Flextronics, obligate Flextronics to ship goods in accordance with the accepted purchase orders.

8. Section 26.10 of each of the MCMSAs provides that neither MCMSA nor any license or rights thereunder, in whole or in part, shall be assignable or otherwise transferable whether by merger, operation of law or otherwise, without the prior written consent of the other Party. The MCMSAs do permit Nortel to assign the agreements under certain circumstances to its subsidiaries or a company of which Nortel becomes a subsidiary; or a successor entity which has assumed in writing or by operation of law its obligations under the agreement.

### Limited Objection and Reservation of Rights

9. Based on representations made in recent conversations with Nortel's counsel, Flextronics now understands the following additional features of the proposed Enterprise sale:

> (1) the Asset and Share Sale Agreement (the "ASSA") and related agreements that are the subject of the Sale Motion will not involve a "back to back" arrangement with Avaya, by which Nortel would continue operating under the MCMSAs and their ancillary agreements but stand as a mere conduit between Flextronics and Avaya under the ASSA with respect to the MCMSAs and their ancillary agreements;
>
> (2) the MCMSAs and their ancillary agreements, as they relate to the Enterprise Solutions Business, will not be assigned to Avaya in connection with the proposed ASSA;
>
> (3) upon the closing of the ASSA with Avaya, Nortel will cease placing forecasts or purchase orders under the MCMSAs and their ancillary agreements for products or services related to the Enterprise Solutions Business; and
>
> (4) Nortel will promptly begin good faith negotiations regarding a three way inventory purchase agreement among Flextronics, Nortel

6418935

-6-

and Avaya as contemplated by the term sheet attached as Exhibit E to the ASSA

10. To the extent that any of these representations are not correct or are materially modified, Flextronics hereby objects, for the reasons set forth in its prior object to the CDMA/LTE sale [Docket No. 1151], among other reasons, and reserves all rights in that regard. Flextronics further objects and reserves all rights with respect to any proposed purchaser of the Enterprise Solutions Business other than Avaya or terms other than those memorialized in the ASSA.

11. Further, to the extent that the Sale Motion seeks an order transferring any equipment in Flextronics' possession free and clear of Flextronics' interest in such equipment, Flextronics hereby objects, and requests adequate protection of its interests pursuant to Section 363(e) of the Bankruptcy Code, which may be provided in the form of an escrow reserve to cover added costs or damages to Flextronics of not less than $10 million.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, Flextronics respectfully request that the Court include in any Order granting the Sale Motion a provisions stating that:

(i) Nothing in this Order shall be contrary to Flextronics' rights reserved in its Limited Objection and Reservation of Rights filed with this Court on September __, 2009 [Docket No. ___], and Flextronics shall not be obligated to perform under any executory contract with Nortel for the benefit of the Purchaser following the Closing of the Sale unless and until Nortel assigns such executory contract to the Purchaser in accordance with applicable law, Nortel and/or the Purchaser cures any defaults under such executory contract existing on the Closing and provides to Flextronics adequate assurance of future performance by the Purchaser under such executory contract.

(ii) Nortel shall establish a reserve of $10 million as adequate protection of Flextronics interests with respect to equipment in its possession pursuant to Section 363(e) of the Bankruptcy Code.

and grant such other and further relief as the Court deems just and proper.

Dated: September 4, 2009

Steven J. Reisman, Esq.
Turner P. Smith, Esq.
James V. Drew, Esq.
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178-0061
Telephone: 212-696-6000
Facsimile: 212-697-1559

*Counsel to Flextronics Corporation and Flextronics Telecom Systems Ltd*

-and-

ASHBY & GEDDES, P.A.

_____
William P. Bowden (I.D. #2553)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, Delaware 19899
Telephone: 302-654-1888
Facsimile: 302-654-2067

*Delaware Counsel to Flextronics Corporation and Flextronics Telecom Systems Ltd*

6418935