## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : | Jointly Administered |
|  | : |  |
| Debtors | : | **Objection Deadline:** September 28, 2009 |
|  | : | **Hearing Date:** Scheduled only if necessary |

---------------------------------------------------------X

### SIXTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JULY 1, 2009 THROUGH JULY 31, 2009

| | |
|---|---|
| Name of Applicant: | Capstone Advisory Group, LLC |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 *nunc pro tunc* to January 26, 2009 |
| Period for which Compensation and reimbursement is sought: | July 1, 2009 through July 31, 2009 |
| Amount of compensation sought as actual, reasonable and necessary: | $447,305.60   (80% of $559,132.00) |
| Amount of expense reimbursement sought as actual, reasonable and necessary: | $30,532.13 |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

This is an:    _x_ monthly    ___ interim    ___ final application

The total time expended for fee application preparation is approximately 7.5 hours and the corresponding compensation requested is $4,221.00.

**Attachment A - Prior Monthly Applications Filed:**

| Application | | | | | CNO | |
|---|---|---|---|---|---|---|
| Date Filed | Docket No. | Period Covered | Total Fees | Expenses | Date | Docket No. |
| 3/20/09 | 514 | 1/26/09 to 2/28/09 | $631,741.50 | $48,547.70 | 4/13/09 | 597 |
| 5/4/09 | 694 | 3/1/09 to 3/31/09 | $544,016.50 | $5,537.11 | 5/28/09 | 796 |
| 6/8/09 | 862 | 4/1/09 to 4/30/09 | $580,910.50 | $21,010.89 | 7/2/09 | 1033 |
| 7/2/09 | 1032 | 5/1/09 to 5/31/09 | $632,663.00 | $32,855.89 | 7/24/09 | 1163 |
| 8/18/09 | 1341 | 6/1/09 to 6/30/09 | $568,135.00 | $20,526.57 | | |

**ATTACHMENT B**
**Nortel Networks Inc., et al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional by Service Line by Month**
**For the period 7/1/09 through 7/31/09**

| Professional | Position | Billing Rate | 7/1/09 - 7/31/09 | |
|---|---|---|---|---|
| | | | Hours | Fees |
| **Advisory** | | | | |
| C. Kearns | Executive Director, Member | $710 | 59.6 | $42,316.00 |
| J. Borow | Executive Director, Member | $710 | 114.0 | $80,940.00 |
| M. Lasinski | Managing Director | $600 | 4.4 | $2,640.00 |
| J. Hyland | Executive Director | $550 | 280.1 | $154,055.00 |
| T. Horton | Director | $525 | 197.0 | $103,425.00 |
| S. Song | Consultant | $325 | 184.9 | $60,092.50 |
| J. Peterson | Consultant | $315 | 208.4 | $65,646.00 |
| T. Morilla | Consultant | $285 | 175.5 | $50,017.50 |
| **Total for the Period 7/1/09 through 7/31/09** | | | **1223.9** | **$559,132.00** |

| Blended Rate | |
|---|---|
| Grand Total: | $559,132.00 |
| Total Hours: | 1,223.9 |
| **Blended Rate** | **$456.84** |

**ATTACHMENT B**
**Nortel Networks Inc., et al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Task Code**
**For the Period 7/1/2009 through 7/31/2009**

| Task Code | Task Description | Hours | Fees |
|---|---|---:|---:|
| 01. Asset Acquisition/Disposition | | 294.60 | $145,672.00 |
| 05. Professional Retention/Fee Application Preparation | | 7.50 | $4,221.00 |
| 07. Interaction/Mtgs w Dbtrs/Counsel | | 41.00 | $26,079.00 |
| 08. Interaction/Mtgs w Creditors | | 66.60 | $40,223.50 |
| 09. Employee Issues/KEIP | | 158.30 | $70,814.50 |
| 11. Claim Analysis/Accounting | | 17.00 | $7,507.00 |
| 13. Intercompany Transactions/Bal | | 85.90 | $37,830.50 |
| 14. Executory Contracts/Leases | | 44.80 | $21,547.50 |
| 17. Analysis of Historical Results | | 25.30 | $7,995.50 |
| 18. Operating and Other Reports | | 61.50 | $27,060.50 |
| 19. Cash Flow/Cash Mgmt Liquidity | | 232.20 | $86,773.50 |
| 20. Projections/Business Plan/Other | | 82.40 | $38,573.50 |
| 24. Liquidation Analysis | | 96.60 | $40,612.50 |
| 26. Tax Issues | | 7.70 | $2,721.50 |
| 28. Valuation Analysis | | 2.50 | $1,500.00 |
| **For the Period 7/1/2009 through 7/31/2009** | | **1223.90** | **$559,132.00** |

**ATTACHMENT B**
**Nortel Networks Inc., et al.**
**Capstone Advisory Group, LLC**
**Expense Summary**
**For the Period 7/1/09 through 7/31/09**

| | |
|---|---|
| Airfare/Train | $16,238.34 |
| Auto Rental/Taxi | $2,598.39 |
| Hotel | $5,982.11 |
| Meals | $1,448.06 |
| Mileage | $112.20 |
| Other | $87.38 |
| Parking/Tolls | $808.00 |
| Postage/FedEx | $64.24 |
| Telecom | $3,193.41 |
| TTOTAL | $30,532.13 |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                           :
In re                                      :    Chapter 11
                                           :    Case No. 09-10138 (KG)
Nortel Networks Inc., <u>et al.</u>, [1]      :    Jointly Administered
                                           :
                        Debtors            :    <u>Objection Deadline</u>: September 28, 2009
                                           :    <u>Hearing Date</u>: Scheduled only if necessary
-------------------------------------------------------X

**SIXTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC,**
**FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES**
**FOR SERVICES RENDERED DURING THE PERIOD FROM**
**JULY 1, 2009 THROUGH JULY 31, 2009**

Capstone Advisory Group, LLC ("Capstone"), financial advisor for the Official

Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), submits this application (the "Application")

pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2

of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court

of the District of Delaware (the "Local Rules"), the *Administrative Order Pursuant to 11 U.S.C.*

*§§ 105(a) and 331, Fed. R. Bnkr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

*for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Members* (the "Administrative Fee Order"), entered February 4, 2009, and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines") seeking (a) the allowance of reasonable compensation for professional services rendered by Capstone to the Committee during the period July 1, 2009 through July 31, 2009 (the "Fee Period") and (b) reimbursement of actual and necessary charges and disbursements incurred by Capstone during the Fee Period in the rendition of required professional services on behalf of the Committee.  In support of this Application, Capstone represents as follows:

**JURISDICTION**

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

**BACKGROUND**

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA").    The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC.

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      At a meeting of the Committee on January 26, 2009, the Committee duly voted to retain Capstone as its financial advisor in connection with the U.S. Proceeding.

8.      On March 5, 2009, this Court entered an order authorizing the retention of Capstone as financial advisor to the Committee, *nunc pro tunc* to January 26, 2009.  On that

same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer &

Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc.

("Jefferies") as the Committee's investment banker, Fraser Milner Casgrain LLP ("FMC") as the

Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel,

and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

## FEE PROCEDURES ORDER

9.      On February 4, 2009, this Court signed the Administrative Fee Order.

Pursuant to the Administrative Fee Order, after the first day of each month (the "Fee Filing

Period") following the month for which compensation is sought (the "Compensation Period"),

each Professional seeking interim compensation may file with the Court a monthly application

(each a "Monthly Fee Statement") pursuant to section 331 of the Bankruptcy Code for interim

approval and allowance of compensation for services rendered and reimbursement of expenses

during the Compensation Period. Each Notice Party shall have twenty (20) days after service of

a Monthly Fee Statement to review the Monthly Fee Statement and object thereto (the

"Objection Deadline"). Upon the expiration of the Objection Deadline: (i) if no objections have

been filed, the Professional shall file a certificate of no objection and the Debtors shall then be

authorized to pay such Professional eighty percent (80%) of the fees and one hundred percent

(100%) of the expenses requested in the Monthly Fee Statement (the "Maximum Interim

Payment") or (ii) if an objection to a Monthly Fee Statement has been filed, the Professional

shall be entitled to eighty percent (80%) of the fees and one hundred percent (100%) of the

expenses (the "Permitted Incremental Payment") not subject to that objection.

## RELIEF REQUESTED

10.      Capstone respectfully requests that it be allowed on an interim basis (i)

fees in the amount of $559,132.00 for reasonable, actual and necessary services rendered by

Capstone on behalf of the Committee during the Fee Period and (ii) reimbursement in the amount of $30,532.13 for actual, reasonable and necessary expenses incurred by Capstone on behalf of the Committee during the Fee Period. This Application is made pursuant to sections 328, 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Fee Procedures Order and the Capstone Retention Order.

11.     Pursuant to the Administrative Fee Order, Capstone is seeking immediate payment of 80% of its fees ($447,305.60) and 100% of its expenses ($30,532.13) relating to services rendered during the Compensation Period.

12.     During the Fee Period, Capstone has provided professional services to the Committee and incurred fees for such services totaling $559,132.00. For the same period, Capstone has incurred actual, reasonable and necessary expenses in connection therewith totaling $30,532.13. With respect to these amounts, as of the date of the Application, Capstone has received no payments.

## SUMMARY OF SERVICES RENDERED

13.     Capstone is a firm of financial advisors specializing in insolvency, restructuring, forensic accounting and related matters. Since being retained by the Committee, Capstone has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates. Capstone respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

14.     Capstone submits that the interim fees applied for herein for professional services rendered in performing accounting, advisory, and forensic accounting services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of

work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtors' financial accounting resources and the results obtained.

15.    Capstone expended an aggregate of 1,223.9 hours, substantially all of which was expended by the professional staff of Capstone. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task. A small staff was utilized to optimize efficiencies and avoid redundant efforts. The staff of the Debtors or their advisors has been utilized where practical and prudent.

16.    Capstone's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost. In addition, Capstone's per diem rates for professionals of comparable experience are 10% to 20% lower than its competitors, the "Big-Four" accounting firms and certain other nationally-recognized specialty firms.

17.    Because Capstone's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum. Additionally, because of the experience of Capstone's professionals, in many instances only three or fewer Capstone representatives attended meetings or conference calls or performed specific functions.

18.    Jay Borow is a Member of the firm and is responsible for directing the activities of the Capstone team, calling upon his more than 25 years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

19.    Capstone believes that there has been no duplication of services between Capstone and any other consultants or accountants to the bankruptcy estate.

20.     Capstone's travel time policy is for professional personnel to travel outside of business hours when possible. Such time is not charged to a client unless productive work is performed during the travel period. In this engagement, non-productive travel time is not being charged to the Debtors.

21.     Capstone's time records for the Fee Period are attached hereto as <u>Exhibit A</u>. These records include daily time logs describing the time spent by each Capstone professional and administrative-level person in these cases. Additionally, a compilation showing the name of the accounting and advisory consultant or administrative-level person who incurred fees, their billing rate and the amount of time spent in performing the services during the Fee Period is attached hereto as <u>Exhibit B</u>. In addition, <u>Exhibit C</u> attached hereto contains a summary of the hours expended by Capstone professionals and administrative-level persons for each task code, as described below.

22.     No agreement or understanding exists between Capstone and any other person for the sharing of compensation received or to be received for services rendered in connection with the Chapter 11 Cases.

23.     Capstone also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services. A schedule of the categories of expenses incurred in connection with the Insolvency Proceedings and the amounts for which reimbursement is requested is annexed hereto as <u>Exhibit D</u>. Also included within <u>Exhibit D</u> is an itemization and description of each expense incurred within each category.

24.     Capstone respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor

constituents represented by the Committee and have contributed to the effective administration of these cases.

25.     The general summary of the services rendered by Capstone during the Fee Period based on tasks and number of hours is set forth below.

### Asset Acquisition/Disposition – Task Code 01

26.     This task code includes Capstone's numerous discussions with the Debtors, the Debtors' financial advisor, the Debtors' counsel, and the Committee's other professionals regarding the disposition of assets and financial matters associated therewith. This task code includes analyses related to financial terms and cash flows resulting from asset acquisitions, potential allocations of proceeds among parties of interest from Business Unit sales, and transition services with the potential wind down of certain operations. During this Fee Period, there were two Business Units, CDMA/LTE and Enterprise Services, with very active sales processes. Capstone's involvement in the sale processes was limited to evaluating the business, financial, and cash flow implications of the transactions. The Committee considered the proceeds allocation methodologies as very critical to the estate of the Debtors, and Capstone prepared and presented significant analyses to the Committee. The Debtors prepared certain transition services plans that would potentially be required by the purchasers of certain Business Units through the Asset Purchase Agreements. Capstone evaluated those initial plans from a financial and business perspective and reported on the status to the Committee.

27.     Capstone has expended 294.60 hours on this category for a fee of $145,672.00.

**Professional Retention/Fee Application – Task Code 05**

28.     This task code for this fee period relates primarily to Capstone's efforts in connection with the preparation of prior period's fee application.

29.     Capstone has expended 7.5 hours on this category for a fee of $4,221.00.

**Interactions/Meetings with Debtors/Counsel – Task Code 07**

30.     This task code relates to teleconferences and meetings with the Debtors, the Debtors' counsel, and restructuring advisors regarding the presentation of the Debtors' financial results, the status of the Insolvency Proceedings, and pending matter discussions. The time expended includes various communications in connection with information requests and Debtors' presentations to the Committee on important case matters. Several telephonic and in-person meetings were conducted with the Debtors and/or their professionals during the Fee Period that were necessary to advise the Committee on critical areas. The topics addressed in this task code for this Fee Period include a specific focus on executive transition, governance, and management. Other topics include weekly status and planning meetings, cash management and liquidity, due diligence requests on various matters, and a variety of other topics.

31.     Capstone has expended 41.00 hours on this category for a fee of $26,079.00.

**Interactions/Meetings with Creditors/Counsel – Task Code 08**

32.     This task code relates to Committee matters, meetings and conference calls with the Committee as a whole and with individual Committee members and in separate meetings with Akin Gump. In addition, during the Fee Period Capstone had numerous telephonic conferences individually with Committee professionals and with Committee members. Capstone participates in regularly scheduled conference calls with the full Committee,

Akin Gump, and other Committee professionals, in order to apprise the Committee members of developments in the chapter 11 cases and to facilitate efficient administration of the chapter 11 cases. In preparation for these meetings, Capstone has reviewed pending matters to be discussed with the Committee, and has reviewed and reported on underlying documentation in connection with pending matters. Additionally, Capstone, working with Akin Gump and the other Committee professionals, has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have already arisen in these cases and to monitor closely the Debtors' management of these proceedings.

33.     Capstone has expended 66.60 hours on this category for a fee of $40,223.50.

### Employee Issues/KEIP – Task Code 09

34.     This task code relates to time spent by Capstone at analyzing executive compensation, Annual Incentive Program ("AIP") and Key Employee Retention Plan awards, employee pensions, including discussions with counsel and the Debtors. Capstone discussed with the Debtors the second quarter AIP potential payments and the potential third quarter AIP matrix. Additionally, Capstone continued to inquire about and analyze the headcount reductions implemented and planned by the Debtors.

35.     Capstone has expended 158.30 hours on this category for a fee of $70,814.50.

### Claim Analysis/Accounting – Task Code 11

36.     This task code relates to time spent by Capstone reviewing various claims made on the estate. The analysis included reviewing the Statement of Financial Affairs filed by

the Debtors and select financial statements as directed by the Debtors. Capstone completed the analysis, prepared a report based upon those analyses, and presented that report.

37.    Capstone has expended 17.00 hours on this category for a fee of $7,507.00.

### Intercompany Transactions/Balances and Transfer Pricing – Task Code 13

38.    This task code relates to time spent by Capstone to analyze intercompany transactions, balances, and funding by and among the various Nortel entities. Included in this category is the analysis of intercompany issues related to transfer pricing, research and development, and intellectual properties. Additionally, we reviewed certain intercompany issues that impact the cash flows of the operations. The Debtors extensively utilize intercompany transactions throughout their entities across the world and intend to utilize this intercompany process while in bankruptcy. During this Fee Period, Capstone was actively involved and spent significant time in the review, analysis, and negotiation of the intercompany debt restructuring and cash repatriation for the Asian region. Additionally, Capstone reviewed the final intercompany funding agreement between the U.S., Canadian, and European regions.

39.    Capstone has expended 85.90 hours on this category for a fee of $37,830.50.

### Executory Contracts – Task Code 14

40.    This task code relates to time expended analyzing executory contracts for assumption or rejection. The Debtors are in the process of identifying and analyzing numerous executory contracts and leases. Capstone analyzed the business issues and rejection damages of each notice filed by the Debtors and assisted Akin in advising the Committee to make informed decisions in support or opposition to the relief requested. Capstone also actively participated in

discussions with the Debtors regarding their real estate plan as it related to the rejection of leases and the sale of office property.

41.    Capstone has expended 44.80 hours on this category for a fee of $21,547.50.

### Analysis of Historical Results – Task Code 17

42.    This task code relates to time expended in connection with the analysis of historical financial results for purposes of obtaining an understanding of the Debtors' past performance as well as indicators for future performance.    Sources of this analysis were the Debtors' historic financial statements and select balance sheet lines including accounts receivable and the related account agings.    Capstone analyzed the various Business Unit allocations prepared by the Debtors and R&D expenditures for specific regional financial statements.    Additionally, Capstone reviewed certain non-debtor financial statements including the Asian operations.

43.    Capstone has expended 25.30 hours on this category for a fee of $7,995.50.

### Operating and Other Reports – Task Code 18

44.    This task code relates to time spent by Capstone analyzing reporting received from the Debtors and preparing reporting for the Committee.    The Debtors' reports include the reports of the Monitor filed in the Canadian Proceeding, as well as the Monthly Operating Report for the Debtors filed with the Bankruptcy Court in the U.S. Proceeding.    In addition, Capstone prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee during the Fee Period discussing the status of pertinent

matters in these proceedings.  These reports included areas such as performance bonds and various other reports for the Committee.

45.    Capstone has expended 61.50 hours on this category for a fee of $27,060.50.

## Cash Flow Cash Management/Liquidity – Task Code 19

46.    This task code relates to Capstone's time spent on weekly cash flow analyses and daily cash flash reports that were provided for various Debtor entities.  This included, but was not limited to, analysis of the Debtors' weekly 13-week cash flow forecast for various entities and participation in related weekly calls with the Debtors.  Through these analyses, Capstone kept the Committee apprised with respect to the Debtors' cash balances and cash flows from operations.  This was especially critical for select legal entities.  Capstone analyzed the expected cash requirements relative to the timing of potential asset sales.  Capstone also analyzed cash requirements of the APAC region and potential restructuring.  Analysis and monitoring of the Debtors' cash was viewed as critical by the Committee.

47.    Capstone has expended 232.20 hours on this category for a fee of $86,773.50.

## Projections/Business Plan/Other – Task Code 20

48.    This task code relates to Capstone's time spent analyzing the Debtors' 2009 financial forecast updated as of May (the "May Outlook") and their underlying Business Units.  Time spent in this task was required to assess the Debtor's anticipated direction and resulting cash flows on a Business Unit level.  Capstone conducted several discussions with the Debtors on the financial forecast, and analyzed the reasonableness of those forecasts for each Business Unit.  Additionally, Capstone analyzed standalone financial forecasts prepared by the

Debtors for specific Business Units. The forecasts and related analyses were included in presentations to the Committee. Capstone analyzed the impact on cash flows of various Business Unit divestiture transactions and the resulting impact on remaining operations.

49.    Capstone has expended 82.40 hours on this category for a fee of $38,573.50.

### Liquidation Analysis – Task Code 24

50.    This task code relates to time spent preparing and reviewing liquidation analyses prepared by the Debtors and financial advisors on various assets including the presentation of those analyses to the Committee. These liquidation analyses were considered critical by the Committee due to the importance of analytically understanding asset disposition alternatives.

51.    Capstone has expended 96.60 hours on this category for a fee of $40,612.50.

### Tax Issues – Task Code 26

52.    This task code relates to time spent analyzing the Debtors' tax issues including deferred taxes, Net Operating Losses, historical taxes and other tax related issues.

53.    Capstone has expended 7.7 hours on this category for a fee of $2,721.50.

### Valuation Analysis – Task Code 28

54.    This task code relates to time spent preparing analyses of the Debtors' intellectual property. The analysis of intellectual property was initiated during the Fee Period by the Debtors.

55.    Capstone has expended 2.5 hours on this category for a fee of $1,500.00.

## ACTUAL AND NECESSARY EXPENSES

56.    Capstone incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee, as summarized above, in the sum of $30,532.13 for which Capstone respectfully requests reimbursement in full.

57.    The disbursements and expenses have been incurred in accordance with Capstone's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Capstone to devote time beyond normal office hours to matters, which imposed extraordinary time demands.  Capstone has endeavored to minimize these expenses to the fullest extent possible.

58.    Capstone's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Capstone believes that it is fairest to charge each client only for the services actually used in performing services for such client.  Capstone has endeavored to minimize these expenses to the fullest extent possible.

59.    Consistent with this Courts' Guidelines, Capstone charges $.10 per page for in-house photocopying services, with respect to computerized research services Capstone charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Capstone does not charge for incoming facsimiles.

60.    In providing a reimbursable service such as copying or telephone, Capstone does not make a profit on that service.  In charging for a particular service, Capstone does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.  In seeking reimbursement for a service which

Capstone justifiably purchased or contracted for from a third party, Capstone requests reimbursement only for the amount billed to Capstone by such third party vendor and paid by Capstone to that vendor.

*[Remainder of this Page Intentionally Left Blank]*

WHEREFORE, Capstone respectfully requests: (a) that it be allowed on an interim basis (i) fees in the amount of $559,132.00 for reasonable, actual and necessary services rendered by it on behalf of the Committee during the Fee Period and (ii) reimbursement of $30,532.13 for reasonable, actual and necessary expenses incurred during the Fee Period; and (b) that the Debtors be authorized and directed to immediately pay to Capstone the amount of $447,837.73 which is equal to the sum of 80% of Capstone's fees and 100% of Capstone's expenses incurred during the Fee Period.

Dated: September 8, 2009
     New York, NY

**CAPSTONE ADVISORY GROUP, LLC**

/s/ Jay Borow
Jay Borow
Member of the Firm
1065 Avenue of the Americas
New York, NY 10018
(212) 782-1411

Financial Advisor to the Official Committee
of Unsecured Creditors

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X

In re                                                        :    Chapter 11
                                                             :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                            :    Jointly Administered
                                                             :
                              Debtors                        :
                                                             :
-------------------------------------------------------------X

## VERIFICATION

STATE OF NEW YORK          )
                           ) SS:
COUNTY OF NEW YORK         )

Jay Borow, being duly sworn according to law, deposes and says:

a)       I am a Senior Member at the applicant firm, Capstone Advisory Group,

LLC, and have been admitted to appear before this Court.

b)       I have personally performed many of the professional services rendered by

Capstone Advisory Group, LLC as financial advisor to the official committee of unsecured

creditors and am familiar with the work performed on behalf of the official committee of

unsecured creditors by the professionals and other persons in the firm.

c)       I have reviewed the foregoing Application and the facts set forth therein

are true and correct to the best of my knowledge, information and belief.

------------------------------

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

       d)     All services for which compensation is requested by Capstone were professional services performed for and on behalf of the Committee and not on behalf of any other person.

       e)     I have reviewed the requirements of Local Rule 2016-2 and certify to the best of my information, knowledge and belief that this application complies with Local Rule 2016-2.

Executed on September 8, 2009

                             /s/ Jay Borow
                             Jay Borow