FILED

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

2009 SEP -9  PM 1: 15

US BANKRUPTCY COUR
DISTRICT OF DELAWARE

-----------------------------------------------------------X
                                             :
                                             :   Chapter 11
*In re*                                      :
                                             :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.,*              :
                                             :   Jointly Administered
                                             :
                Debtors.                     :
                                             :
                                             :
-----------------------------------------------------------X

## EMERGENCY MOTION OF THE AFFILIATES OF VERIZON COMMUNICATIONS INC. TO COMPEL ATTENDANCE AT DEPOSITION

The affiliates of Verizon Communications Inc. (collectively, "Verizon")[1], pursuant to

Fed. R. Civ. P. 37, as incorporated by Fed. R. Bankr. R. 7037, hereby move this Court, on an

emergency basis, for an order compelling the appropriate corporate representative(s) of Avaya,

Inc. to attend the deposition pursuant to Fed. R. Civ. P. 30(b)(6) that Verizon has previously,

properly and timely noticed to take place on Saturday, September 12, 2009. In support of its

Motion, Verizon respectfully states as follows:

### BACKGROUND FACTS

1.      The discovery dispute at issue in this Motion has arisen in connection with the

Debtors' Motion for an Order Authorizing and Approving The Sale Of Certain Assets Of, And

Equity Interests In, Debtors' Enterprise Solutions Business (the "Sale Motion"), which is

currently pending before the Court and scheduled to be heard on September 15, 2009.

---

[1]      The definition of Verizon includes, without limitation, all wholly-owned subsidiaries of Verizon
Communications Inc. (including, without limitation, Verizon Corporate Services Group Inc., Verizon Services
Corp., Verizon Network Integration Corp., Verizon Business Network Services Inc., Verizon Select Services Inc.,
MCI Communications Services, Inc. d/b/a Verizon Business Services and the local operating telephone company
subsidiaries of Verizon Communications Inc.) and Cellco Partnership d/b/a Verizon Wireless.

2.    In the Sale Motion, the Debtors seek the Court's approval of the sale of their entire Enterprise Solutions ("Enterprise") Business, which includes, among other things, certain products and services in the Debtors' Customer Premises Equipment ("CPE") portfolio.

3.    Verizon is a major purchaser and reseller of products and services in the Debtors' CPE portfolio -- namely, certain routers, switches and other networking components, associated software, and maintenance and support services -- under various executory contracts between Verizon and the Debtors (the "Verizon CPE Contracts").[2]

4.    Verizon installs or has installed, across the country and beyond, tens of thousands of the Debtors' CPE devices and associated software in the communications networks of its own end-user, large business and governmental customers.

5.    The Verizon customer base in which products and services in the Debtors' CPE portfolio are currently embedded includes virtually every department and agency of the federal government, both civilian and military (including those agencies with critical national law enforcement, anti-terrorism and national defense responsibilities, as well as military bases and installations in and outside of the continental United States), the United States Congress, the United States court system, departments and agencies of numerous state and local governments (including 911 call centers), as well as banks, manufacturers, hospitals (including veterans hospitals), other private sector customers, universities, schools and libraries.

6.    The Debtors' CPE systems and support services thus enable Verizon to satisfy all of the connectivity needs of these various end-users, and to provide the communications networks that allow these end-users to perform their mission-critical functions.

7.    The CPE products that Verizon obtains from the Debtors are therefore essential to

---

[2]    In 2008, Verizon purchased approximately $140 Million in CPE products and services from the Debtors in the United States alone.

the communications needs of these government agencies, businesses and institutions. Moreover, Verizon relies upon the Debtors to provide ongoing repair, maintenance and support services, as well as spare parts; software upgrades, patches and fixes; warranty repairs and other services in connection with these products.

8.      Without this ongoing maintenance, service and support by the Debtors, the continued communications capabilities of the government and business customers that are served by Verizon through the re-sale of the Debtor's CPE products and services – specifically including the federal departments, agencies and installations with critical national law enforcement, anti-terrorism and national defense responsibilities – are at significant risk of disruption, which in turn poses a significant hazard to the public's welfare, security and safety.

9.      So integral are the Debtors' CPE products and services to these critical communications systems, in fact, that if they fail to operate – due to a lack of maintenance or repair, the inability to obtain spare parts or software fixes, or for some similar reason – entire systems will immediately be disrupted or otherwise compromised, and in due time may cease to function entirely.

10.      For these very reasons, Verizon has made it clear to the Court and all parties concerned, since the Sale Motion was first filed, that it intends to object to the Sale Motion in its entirety if the proposed purchaser of the Debtors' Enterprise assets does not designate the Verizon CPE Contracts for assumption and assignment by the Debtors. On July 31, 2009, Verizon filed an objection to the bid procedures that were proposed in connection with the Sale Motion (Docket No. 1251), raising the foregoing issues and concerns expressly. Although Verizon's procedures-related objection was resolved by agreement in advance of the August, 2009 procedures hearing, counsel for Verizon nonetheless addressed the Court on the record at

that proceeding, reiterating these concerns and again stated that if the results of the sale process dictated that the Verizon CPE Contracts would be slated for rejection rather than assumption and assignment to the eventual purchaser. Verizon intended to object to the Sale Motion in its entirety.

11.     Notwithstanding all of the foregoing, on September 2, 2009, the Debtors provided written notice to Verizon that the "stalking horse" bidder for the Enterprise business, Avaya, Inc. ("Avaya"), had determined not to designate the Verizon CPE Contracts for assumption and assignment by the Debtors in connection with the proposed transaction.

12.     The determination by Avaya that it does not wish to take an assumption and assignment from the Debtors of the Verizon CPE Contracts means that, if Avaya is the proposed purchaser at the end of the auction process. the Debtors will seek to reject the Verizon CPE Contracts upon or shortly after the closing of the sale of their Enterprise business assets. The Debtors themselves have neither the intention nor -- with no remaining Enterprise assets post-sale. and well into an effective liquidation of all of their assets in Chapter 11 -- the resources or ability to continue to satisfy all of their duties and obligations under the Verizon CPE Contracts.

13.     Since receiving the notice from Nortel on September 2, Verizon has commenced discussions with counsel and representatives from Avaya in an effort to identify and resolve by agreement the concerns that prompted Avaya to designate the Verizon CPE Contracts for rejection rather than assumption and assignment. Those discussions are ongoing. but have not yet resulted in a successful resolution. In addition. Verizon understands that a second bidder for the Debtors' Enterprise assets has qualified to participate in the auction of those assets that is scheduled to occur on September 11, 2009. It is therefore possible that Avaya will not be the prevailing bidder at the conclusion of the September 11 auction, and thus no longer the proposed

purchaser at the September 15 hearing on the Sale Motion.

14.    At present, however, and unless either (a) Verizon and Avaya are successful in negotiating a resolution and executing an agreement that permits Avaya to designate the Verizon CPE Contracts for assumption and assignment, rather than rejection, or (b) Avaya is not the prevailing bidder at the September 11 auction, the very circumstance that Verizon has warned of from the beginning has transpired: the Verizon CPE Contracts are slated to be rejected, and communications networks critical to the operation of the federal government and the defense, safety, health and security of the American public are at risk. Under those circumstances, and on that basis, Verizon intends to file an objection to the Sale Motion in its entirety, just as it has always indicated it would do in such an instance.

15.    Pursuant to the agreement with the Debtors and Avaya that resolved Verizon's objection to the bid procedures, any objection by Verizon to the Sale Motion itself is due to be filed by 12:00 PM on Monday, September 14, 2009. The filing of that objection will of course make the Sale Motion a contested matter under Fed. R. Bank. R. 9014(a) with respect to Verizon, if it is not already a contested matter based on Verizon's clear and repeated indications to all involved that it intends to object to the Sale Motion under the circumstances that presently exist. As such, Fed. R. Bank. R. 9014(c) provides that, with certain exceptions that are not relevant to the present Motion, the Federal Rules of Civil Procedure that govern the taking of depositions and other discovery activities apply in full force to the Sale Motion.

16.    Based on all of the foregoing, in an abundance of caution, and precisely so that no one would later contend that it had not provided sufficient notice, Verizon caused Notices of Deposition pursuant to Fed. R. Civ. P. 30(b)(6) (each a "Notice") to be duly served on counsel for both the Debtors and Avaya on September 2, 2009, the very same day on which Verizon

received the notice from the Debtors concerning Avaya's election not to designate the Verizon CPE Contracts for assumption and assignment. The Notices were served both by First Class Mail and by e-mail to each party's counsel. A copy of the Notice directed to Avaya, and the cover e-mail that accompanied it, is attached as Exhibit A hereto.

17.    The Notices schedule depositions of the Debtors and Avaya to occur on Saturday, September 12, 2009, ten days after service of the Notices, the day after the asset auction and three days prior to the hearing on the Sale Motion. The Notices direct each of those parties to designate one or more corporate representatives with knowledge relating to certain specific subjects, all of which are unquestionably material and relevant to the specific grounds on which Verizon's objection to the Sale Motion will be based if it is compelled to file that objection on or before the applicable September 14 deadline. The Notices further indicate that Verizon intends the depositions, if necessary at all, to be brief, lasting less than four hours each.

18.    Both the Notice directed to Avaya and the accompanying cover message also explained, very plainly, that Verizon's service of the Notice was "simply precautionary" and being served in order to provide sufficient notice, and that if either a resolution of issues of concern between Verizon and Avaya was reached in advance or Avaya was not the winning bidder at the September 11 asset auction, the Notice would be rendered moot and Avaya would not be required to appear at the deposition on September 12 at all.

19.    Notwithstanding all of the foregoing, on September 8, 2009, counsel for Avaya sent counsel for Verizon the letter attached as Exhibit B hereto, indicating that Avaya "does not intend to appear at the requested deposition." The only stated justification for Avaya's position that is expressed in the letter is the vague assertion that Avaya has unilaterally determined the deposition scheduled by Verizon to be "improper" and to have "no basis". The letter does not

even purport to explain why Verizon is not entitled under the Federal Rules of Civil Procedure, as incorporated by the Federal Rules of Bankruptcy Procedure, to notice a deposition of Avaya that is narrowly tailored to address specific subjects, which subjects are unquestionably relevant to a contested matter concerning a Sale Motion on which Avaya is the "stalking horse" bidder and, at this point, one of only two possible purchasers to be proposed at the September 15 hearing.

20.     Within minutes of receiving his letter by e-mail on September 8, counsel for Verizon contacted the attorney for Avaya who authored the letter, David S. Elkind, by telephone to confer in good faith as required under Fed. R. Civ. P. 37(a)(1) and attempt to resolve this discovery dispute by agreement and without Court intervention.

21.     During that telephone conversation, however, Mr. Elkind informed Verizon's counsel that the position of Avaya stated in his September 8 letter was final and not subject to reconsideration or change under any circumstances. Mr. Elkind also reiterated, in no uncertain terms, that Avaya had no intention of having its representatives appear for the September 12 deposition noticed by Verizon.

22.     Verizon has therefore been left with no alternative but to prepare, file and pursue the present Motion in order to insure that it will able to obtain the discovery to which it rightfully will be entitled in connection with the pending Sale Motion, barring developments concerning Avaya in the interim, as noted above, that would make the need to take discovery from Avaya moot.

## ARGUMENT AND CITATION OF AUTHORITIES

### Verizon's Notice of Deposition of Avaya Was Timely, Proper and Necessary.

23.     It has long been established that "the deposition-discovery rules should be

accorded broad and liberal treatment." <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947);

<u>Schlagenhauf v. Holder</u>, 379 U.S. 104, 121 ("[t]he Federal Rules of Civil Procedure should be

liberally construed"). "Discovery is normally allowed into any matter that bears upon the issues

or reasonably could lead to relevant information." <u>Ruran v. Beth Temple of West Hartford</u>, 226

F.R.D. 165, 167 (D. Conn. 2005) (quotations omitted). "For good cause, the court may order

discovery of any matter relevant to the subject matter involved in the action.   Relevant

information need not be admissible at the trial if the discovery appears to be reasonably

calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

24.     Whether a matter is relevant for discovery purposes is ultimately a fact-specific

inquiry that is best left to the broad discretion of the trial court. *See, e.g.,* <u>Food Lion v. United</u>

<u>Food & Commer. Workers Int'l Union</u>, 103 F.3d 1007, 1012 (D.C. Cir. 1997) (trial courts have

considerable discretion in handling discovery matters, and their decisions are reviewable only for

abuse of discretion).    Accordingly, it should be the Court, and not Avaya's unilateral

determination, whether or not Verizon's Notice of Deposition to Avaya is proper. *See* <u>Kotes v.</u>

<u>Super Fresh Food Mkts.</u>, 157 F.R.D. 18, 19 (E.D. Pa. 1994) (trial court has discretion over

discovery process).

25.     In the present matter, Verizon seeks only to take two short depositions -- nothing

more than an orderly and targeted process for obtaining very limited discovery on issues of

unquestionable relevance -- in advance of a contested sale hearing. Unfortunately, counsel for

Avaya apparently believes that he and his client are the sole arbiters of what is properly

discoverable.

26.     To the extent that Avaya contends that it is not required to appear at the scheduled

deposition, the proper course of action should have been for Avaya to file a motion for protective

order or to schedule a conference call with the Court. *See, e.g.,* Fed. R. Civ. P. 26(c); <u>Jones v. Sanofi-Aventis U.S., Inc.</u>, 2009 WL 535756 (N.D. Ga. March 2, 2009) ("Plaintiff's refusal to attend his own deposition is unexcused. . . . If Plaintiff felt he was justified in not attending his deposition, the proper course would have been to file a motion for a protective order or arrange a conference with the Court.").

27.     In fact, a party is subject to sanctions if it fails or refuses to appear for its deposition, after being served with a proper notice of deposition. Fed. R. Civ. P. 37(d)(1)(A)(i). Courts have held that "parties may not escape sanctions simply by notifying the attorney who noticed the deposition that they will not appear. Such notification does not excuse a party's failure to appear, and will not serve as a substitute for a motion for a protective order. Moreover, an attorney who receives such a notification need not attend the deposition and wait in vain for an appearance." 7 MOORE'S FEDERAL PRACTICE 37.91[1] (2009).

28.     In the present case, however, and based on the express, advance indication from counsel for Avaya that it intends simply to ignore a properly and timely served deposition notice, Verizon is left with no choice but to file this Motion to Compel in order to confirm its entitlement to obtain the requested discovery in the brief period that remains before the hearing on the Sale Motion.

29.     As set forth above, Verizon's Notice of Deposition to Avaya was served only out of an abundance of caution. The deposition will be necessary *only if*: (1) Avaya is the prevailing bidder at the September 11, 2009 asset auction; and (2) Verizon and Avaya are unsuccessful in negotiating a resolution and executing an agreement that permits Avaya to designate the Verizon CPE Contracts for assumption and assignment, rather than rejection.

30.     In the event that these two circumstances exist at the conclusion of the September

Case 09-10138-MFW    Doc 1443    Filed 09/09/09    Page 10 of 13

11 auction, however, it absolutely critical that Verizon have the opportunity to depose the appropriate Avaya corporate representative or representatives about the topics set forth in the Notice prior to the September 15 hearing on the Sale Motion.

31.    Simply put, if Avaya is the winning bidder and remains the proposed purchaser after the asset auction but will not take an assignment of the Verizon CPE Contracts from the Debtors, such that those contracts are instead slated for rejection, then Verizon will object to the Sale Motion in its entirety on what amount to grounds of public safety, security and necessity. Without the ongoing maintenance and support services that are currently provided by the Debtors, the continued communications capabilities of the government and business customers that are served by Verizon through the re-sale of the Debtor's CPE products and services – specifically including the federal departments, agencies and installations with critical national law enforcement, anti-terrorism and national defense responsibilities, not to mention local law enforcement, 911 call centers, hospitals and other emergency responders nationwide – are at significant risk of disruption, which in turn poses a significant hazard to the public's welfare, security and safety.

32.    It is now thoroughly established that significant threats to public safety or security can trump provisions of the Bankruptcy Code, and permit courts to place conditions upon, or even deny altogether, relief that otherwise would be plainly authorized.

33.    For example, a risk of "imminent and identifiable harm" to public health or safety will prevent a bankruptcy trustee from exercising his or her otherwise unfettered abandonment power under section 554 of the Code. *See, e.g.*, <u>Midlantic National Bank v. New Jersey Dept. of Environmental Protection</u>, 474 U.S. 494, 507 (1986).

34.    Similarly, the Fifth Circuit has held that when the proposed rejection of an

executory contract poses a threat to the national public interest, the Bankruptcy Court should apply a more heightened and "rigorous" standard for approval of the rejection than the "business judgment" inquiry that usually applies in such cases. *See* In re Mirant Corp., 378 F.3d 511, 524-525 (5th Cir. 2004) ("Use of the business judgment standard would be inappropriate in this case because it would not account for the public interest inherent in the transmission and sale of electricity."). In such a case, the Mirant court held, the court should balance the equities, "carefully scrutinize the impact of rejection upon the public interest [and] ensure that rejection does not cause any disruption in the supply" of the public services at issue. Id. at 525.

35.     In addition, at least one Bankruptcy Court has expressly conditioned approval of a debtor's motion to sell assets under section 363(b) of the Code on the taking of measures necessary to protect "the public health and welfare." In re Borne Chemical Co., 54 B.R. 126, 132 (Bankr. D.N.J. 1984) (court is authorized to deny a sale of real property under section 363(b) unless the sale first complies with state and federal environmental protection provisions).

36.     If the current circumstances continue to exist after the September 11 asset auction, therefore, Verizon will have a specific and amply supported basis to oppose approval of the Sale Motion in its entirety.

37.     At the same time, Verizon's Notice of Deposition to Avaya is narrowly-tailored and was timely and properly served under Fed. R. Civ. P. 30(b)(6) and Bankruptcy Rule 7030. Verizon provided the Notice to Avaya by service on its counsel, and by both e-mail and U.S. Mail ten days prior to the scheduled deposition. The Notice also sets forth with reasonable particularity the five matters for examination as required by Fed. R. Civ. P. 30(b)(6).

38.     The Notice of Deposition further provides that "[i]f Avaya is not the winning bidder at the auction of the Debtor's Enterprise Solutions Business and related assets that is

scheduled to occur on September 11, 2009, then Avaya will be excused from appearing at the deposition noticed herein." Moreover, Verizon's cover message to Avaya explained that the Notice would be rendered moot in the event that Verizon and Avaya resolved their issues of concern in advance of that date. Consequently, Verizon has made it clear that the deposition will go forward only if necessary.

39.     Nonetheless, Avaya, through its counsel, has confirmed that it "does not intend to appear at the requested deposition" on grounds that the deposition is "improper" and has "no basis." However, counsel for Avaya has provided no purported explanation as to why the deposition is "improper" or why he believes that there is no basis for Verizon to seek discoverable information from Avaya under the circumstances that presently exist. In the telephone conversation with Avaya's counsel, Mr. Elkind provided Verizon's counsel with nothing more than his unilateral opinion that Verizon had "very little basis on which to challenge a rejection of [the Verizon CPE Contracts]." Consequently, despite Verizon's good faith efforts to resolve this discovery dispute, Verizon must seek this Court's assistance in compelling Avaya to appear for the deposition.

WHEREFORE, Verizon respectfully requests that the Court

(a)      grant this Motion;

(b)      enter an order compelling the appropriate corporate representative(s) of Avaya, Inc. to attend the deposition pursuant to Fed. R. Civ. P. 30(b)(6) that Verizon has previously, properly and timely noticed to take place on Saturday, September 12, 2009; and

(c)      afford Verizon such other and further relief as this Court may deem just and proper.

Dated: September 9, 2009

Respectfully submitted,

SMITH, KATZENSTEIN & FURLOW LLP

*/s/ Kathleen M. Miller*
Kathleen M. Miller, Esq. (No. 2898)
800 Delaware Avenue, 10th Floor
P. O. Box 410
Wilmington, DE  19899
(302) 652-8405
kmiller@skfdelaware.com

-and-

ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin
Frank N. White
171 17th Street, N.W., Suite 2100
Atlanta, Georgia  30363
(404) 873-8500
dladdin@agg.com

ATTORNEYS FOR VERIZON