## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **In Re:** | ) | **Chapter 11** |
| | ) | |
| **NORTEL NETWORKS, INC.,** *et al.*, | ) | **Case No. 09-10138-KG** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |
| | ) | |
| | ) | Hearing Date: September 15, 2009 at 9:00 a.m. |
| | ) | Objection Deadline: September 14, 2009 at 12:00 p.m. |
| | ) | Related to D.I. No. 1131 |

**OBJECTION AND RESERVATION OF RIGHTS OF ANIXTER INC. AND ANIXTER
DE MEXICO SA DE CV TO DEBTORS' MOTION FOR ORDERS (I) (A)
AUTHORIZING DEBTORS' ENTRY INTO THE ASSET AND SHARE SALE
AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING
PROCEDURES, (C) AUTHORIZING AND APPROVING A BREAK-UP FEE AND
EXPENSE REIMBURSEMENT, (D) APPROVING THE NOTICE PROCEDURES, (E)
APPROVING THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (F)
AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (G)
SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND
APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS
IN, DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND (C)THE
<u>ASSUMPTION AND SUBLEASE OF CERTAIN LEASES</u>**

Anixter Inc. on behalf of itself and certain other affiliates, including Anixter de Mexico

SA de CV (collectively, "Anixter"), by and through its undersigned counsel, hereby files this

objection and reservation of rights (the "Objection") relating to the Debtors' Motion For Orders

(I) (A) Authorizing Entry Into the Asset and Share Sale Agreement, (B) Authorizing and

Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and

Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption

and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal and

(G) Setting a Date For the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of

Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the

Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and

Sublease of Certain Leases, dated July 20, 2009 [Docket No. 1131] (the "Sale Motion"),[1] and respectfully represent as follows:

## **Preliminary Statement**

1.      Anixter's relationship with the Debtors is varied and complex.   Anixter constitutes a major customer of Nortel's Enterprise Solutions Business (the "Enterprise Business").   Anixter is a purchaser and reseller of Nortel's Enterprise Business products and services for the Latin American market.   Specifically, Anixter purchases certain routers, switches and other networking components, associated software, and maintenance and support services through one executory contract between Anixter and Nortel Networks (CALA), Inc ("Nortel CALA").   Anixter installs or has installed the Debtors' Enterprise Business products and software in the communications networks of its own end-user customers, and relies upon the Debtors to provide ongoing repair, maintenance and support services, as well as spare parts, software upgrades, patches and fixes, warranty repairs and other services in connection with these Enterprise Business products.

2.      Additionally, Anixter and Nortel (CALA) Inc. are parties to an agreement whereby Anixter provides installation services, training and equipment with respect to certain products of the Debtors to customers in Mexico.

3.      As more fully set out below, the proposed sale of the Enterprise Business impacts Anixter's contracts because the sale appears to accomplish (a) a limited assignment of contractual terms in violation of Section 365's *cum onere* requirement; and (b) the assumption of a contract that in Anixter's view is no longer executory.

---

[1] Capitalized terms used but not defined herein shall have the meaning assigned to them in the Sale Motion (Docket No. 1131).

### Objection

4.      As explained briefly above, Anixter's relationship with the Debtors is multifaceted.  The Sale Motion with respect to the Enterprise Business impacts this relationship in a number of critical ways.  Through this Objection, Anixter seeks the Court's protection of Anixter's freely-negotiated contractual rights under its contracts with the Debtors as follows:

(a)      **Nortel Networks CALA Value-Added Distributor Agreement, dated January 1, 2007 (the "Distributor Agreement").**

5.      Anixter purchases certain routers, switches and other networking components, associated software, and maintenance and support services from Nortel CALA under the Distributor Agreement for distribution in Latin America.

6.      To the extent the Debtors seek to assume and assign the Distributor Agreement under Section 365 of the Bankruptcy Code to Avaya, Inc. ("Avaya"), Anixter objects to the extent any sale limits or diminishes, in any way, the express contractual terms that protect Anixter.   For example, Section 15 of the Distribution Agreement provides certain indemnifications to Anixter.  However, under the proposed Asset and Share Sale Agreement ("ASSA") ASSA with Avaya it appears that Anixter may be barred from asserting any indemnification right if Anixter is subject to a claim that occurred before Avaya closes its transaction with the Debtors.   This limitation on Anixter's rights under the Distribution Agreement violates the protections afforded Anixter under Section 365 of the Bankruptcy Code. If the Distributor Agreement is assumed by the Debtors, any protections in favor of Anixter that exist in the Distribution Agreement must remain in place post-assumption and assignment.

7.      It is well established law that an executory contract, including the Distribution Agreement, must be assumed or rejected in its entirety.  *See In re Univ. Med. Ctr*, 973 F.2d 1065, 1075 (3d Cir. 1992) ("assumption of the executory contract requires the debtor to accept its

burdens as well as permitting the debtor to profit from its benefits"); *In re National Gypsum Co.*, 208 F.3d 498, 506 (5th Cir. 2000) ("[w]here the debtor assumes an executory contract, it must assume the entire contract, *cum onere* – the debtor accepts both the obligations and the benefits of the executory contract" (*citing  Bildisco & Bildisco*, 465 U.S. 513, 531 (1984))); *In re Fleming Companies, Inc.*, 2007 WL 788921 at * 2 ("[a]n executory contract may not be assumed in part and rejected in part.  The trustee must either assume the entire contract, *cum onere*, or reject the entire contract, shedding  obligations as well as benefits" (citing *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 249 (3d Cir. 2003))).

8.      To the extent Nortel seeks to assume the Distribution Agreement, Nortel must take it *cum onere,* that is, subject to all its provisions and conditions.  *In Greif Bros. Cooperage Co. v. Mullinix*, 264 F. 391 (8th Cir. 1920) ("When the trustee in bankruptcy by order of the referee or of the court elects to ratify, confirm and adopt the executory contract of the bankrupt, he thereby assumes the liabilities of the bankrupt thereunder and takes the contract in the same plight in which the bankrupt held it").  Therefore, any assumption and assignment of the Distributor Agreement may not limit Anixter's bargained-for protections under the Distributor Agreement.

9.      The failure of Ayaya to completely perform under the Distributor Agreement deprives Anixter of its right to adequate assurance of future performance under Section 365(f)(2) of the Bankruptcy Code.   Indeed, the Debtors must provide adequate assurance of future performance before the Debtors can assign the Distributor Agreement.   11 U.S.C. § 365(b). Because an indemnity claim, or any other claim arising out of the Distributor Agreement may occur after a closing of the sale of the Enterprise Business, Anixter's bargained-for rights must be protected.

10.     In addition to protecting the contractual integrity of the Distribution Agreement upon an assumption and assignment, the Debtors must cure any and all defaults under the Distribution Agreement before an assumption and assignment can occur.  Although Anixter is currently calculating a cure amount with respect to the Distribution Agreement, Anixter estimates that the full cure amount with respect to the Distribution Agreement is between $1,300,000 to $1,500,000.[2]   More specifically, under Exhibit 1, Paragraph A.2 of the Distribution Agreement, Anixter is entitled to recover certain additional credits on its purchases as these credits are material terms of the Distributor Agreement.  As of this date, the amount of those SBA credit claims is approximately $326,577.50.   Similarly, Paragraph 4.C of the Distributor Agreement also permits Anixter to participate in a Marketing Coop Program through which certain rebates are offered as incentives by Nortel under the *Nortel (CALA) Marketing Coop Program: Program Guidelines (2009)*.  As of this date, the amount of outstanding CO-OP funds earned by Anixter is estimated at $1,065,262.21.

11.     Lastly, to the extent any transaction with respect to the Enterprise Business attempts to transfer any equipment or materials in Anixter's possession free and clear of Anixter's contractual rights under the Distribution Agreement, Anixter objects and requests that this Court require that the Debtors provide Anixter with adequate protection of its interests pursuant to Section 363(e) of the Bankruptcy Code.

12.     In light of the foregoing, Anixter objects to the sale of the Enterprise Business to the extent the sale contemplates (i) permitting the Debtors to assume the Distribution Agreement without Anixter receiving its required cure under Section 365 of the Bankruptcy Code, and (ii) fails to provide Anixter with adequate protection for its interests.

---

[2] See Footnote 2, *supra*.

(b)     **Master 2-Tier Distributor Agreement dated February 28, 2003 ("2-Tier Distributor Agreement").**

13.     Anixter is advised that the Debtors may seek to assume the 2-Tier Distributor Agreement.  Anixter believes that the 2-Tier Distributor Agreement is expired and is no longer an executory contract subject to Section 365 of the Bankruptcy Code.  *In re Texscan Corp.*, 107 B.R. 227, 230 (9th Cir. 1989) ("[i]t is axiomatic that before 11 U.S.C. section 365 can apply a contract must exist.  If a contract has expired by its own terms there is nothing left to assume or reject."); *In re Lambert Oil Co., Inc.*, 298 Fed.Appx. 264, 270 (4th Cir. 2008) (11 U.S.C. section 365 "[can]not apply to expired pre-bankruptcy agreements as a matter of law").  Put another way, a contract or lease no longer in existence is not executory and cannot be assumed.  *See In re Stewart Foods, Inc.*, 64 F.3d 141 (4th Cir. 1995).  Because the Master 2-Tier Distributor Agreement has expired, it is no longer subject to Section 365 of the Bankruptcy Code.

14.     Nevertheless, *assuming arguendo,* that this Court finds the 2-Tier Distributor Agreement to be executory, Anixter incorporates all the arguments raised in Section (b) above so as to apply to the 2-Tier Distributor Agreement as if originally pled herein.  Anixter also reserves the right to assert a cure claim to the extent Anixter receives a Notice with respect to same.

(c)     **Nortel Education Provider Agreement (North America) dated May 31, 2006, as amended (the "Education Provider Agreement").**

15.     Under the Education Provider Agreement, Anixter is authorized to, among other things, offer and conduct certain training sessions with respect to Nortel approved courses.

16.     Much like Anixter's argument with respect to the Distributor Agreement, above, to the extent the Debtors seek to assume and assign the Education Provider Agreement under Section 365 of the Bankruptcy Code, Anixter objects to any sale that limits or diminishes, in any way, the express contractual terms outlined in the Education Provider Agreement.

17.     For example, Section 17.2 of the Education Provider Agreement provides certain indemnifications to Anixter.   As Anixter currently understands the Enterprise Business transaction, notwithstanding an assignment of the Education Provider Agreement to Avaya, Anixter would be barred from asserting any indemnification if Anixter is subject to a claim that occurred before Avaya closed on its transaction with the Debtors.   As discussed in Section (b) above, this limitation on Anixter's rights under the Distribution Agreement violates the protections afforded Anixter under Section 365 of the Bankruptcy Code.   Therefore, all Anixter's bargained-for rights under the Education Provider Agreement must be protected.

18.     Additionally, Anixter incorporates all remaining arguments raised in Section (b) above so as to apply to the Education Provider Agreement as if originally pled herein.   At this current time, Anixter is unaware of any cure amount with respect to the Education Provider Agreement.   Therefore, Anixter reserves the right to assert a cure claim to the extent Anixter receives a Notice and determines a cure claim with respect to the Education Provider Agreement does exist.

## Reservation of Rights

19.     Anixter reserves the right to amend, supplement and otherwise revise this Objection and to raise any additional issues relating to the Sale Motion at the hearing before this Court on September 15, 2009.

**WHEREFORE**, Anixter respectfully requests that the Court

(a) sustain this Objection;

(b) approve the Sale Motion only under the express condition that Anixter's rights as more fully outlined in this Objection are fully protected; and

(c) afford Anixter such other and further relief as this Court may deem just and proper.

Dated: September 14, 2009

**ANIXTER INC.**

By:     /s/ Ayesha Chacko

Marla R. Eskin (#2989)
Ayesha Chacko (#4994)
800 N. King St., Suite 300
Wilmington, DE  19899
(302) 426-1900 (phone)
(302) 426-9947 (fax)
meskin@camlev.com
achacko@camlev.com

*-and-*

Jon C. Vigano (Illinois #6257850)
Patricia J. Fokuo (Illinois #6277431)
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606-6473
(312) 258-5500 (phone)
(312) 258-5700 (fax)
jvigano@schiffhardin.com
pfokuo@schiffhardin.com

***Counsel for Anixter Inc.***

{D0161570.1 }                                -8-