## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*, [1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

### NOTICE PURSUANT TO SECTION 12(d) OF THE CROSS-BORDER PROTOCOL OF FILING OF MOTION RECORD FILED IN THE CANADIAN PROCEEDINGS TO APPROVE SALE OF THE ENTERPRISE SOLUTIONS BUSINESS

**PLEASE TAKE NOTICE** that pursuant to section 12(d) of the Cross-Border Protocol approved in the above-captioned cases (Docket No. 18), on September 15, 2009, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian Nortel Group**"), in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Proceedings**"), by its undersigned counsel, filed in the above-captioned cases the Motion Record of the Applicants filed in the Canadian Proceedings in support of the Approval and Vesting Order for the sale of the Enterprise Solutions Business (the "**Motion Record**"). A joint hearing is scheduled to be held in the Canadian Proceedings and the above-captioned cases on September 16, 2009. A copy of the Motion Record is annexed hereto as Exhibit A.

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion Record are also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

Dated: Wilmington, Delaware
           September 15, 2009

ALLEN & OVERY LLP

Ken Coleman
Lisa Kraidin
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
lisa.kraidin@allenovery.com

-and-

BUCHANAN INGERSOLL & ROONEY

By: /s/ Mary F. Caloway
Mary F. Caloway (No. 3059)
Peter J. Duhig (No. 4124)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone (302) 552-4200
Facsimile (302) 552-4295
mary.caloway@bipc.com

Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Nortel
Group

**<u>EXHIBIT A</u>**

Court File No. 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION
### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### MOTION RECORD
### Approval and Vesting Order
### Enterprise Solutions Business
### (returnable September 16, 2009)

September 15, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

DOCSTOR: 1680120\1

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| TAB | DOCUMENT | PAGE |
|---|---|---|
| 1. | Notice of Motion returnable September 16, 2009 | 001 |
| 2. | Affidavit of George Riedel, sworn September 15, 2009 | 047 |
| 3. | Affidavit of George Riedel, sworn July 30, 2009 | 056 |
| 4. | Draft Approval and Vesting Order | 077 |
| 5. | Blackline of Approval and Vesting or to Model Approval and Vesting Order | 084 |

**TAB 1**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(Returnable September 16, 2009)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on **Wednesday, September 16, 2009 at 1:30 p.m**. or as soon after that time as the motion can be heard, at **393 University Avenue**, Toronto, Ontario.

**PROPOSED METHOD OF HEARING**: The motion is to be heard orally.

**THE MOTION IS FOR AN ORDER :**

(a)     Abridging the time for service of the Notice of Motion and Motion Record in respect of this motion and dispensing with further service thereof;

(b)     Approving and authorizing the execution of the amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Final Sale Agreement") among Avaya Inc. (the "Purchaser"), as buyer, and NNC, NNL, Nortel Networks, Inc.

("NNI"), and certain of their affiliates, as vendors (collectively the "Sellers") in the form attached as an appendix to the Twentieth Report (defined below);

(c)     Vesting the Applicants' right, title and interest in the Assets (as defined in the Final Sale Agreement) upon delivery by the Monitor (defined below) of a Monitor's Certificate to the Purchaser;

(d)     Declaring that all proceeds of the sale, subject to the price adjustments and the Purchaser's rights under the Final Sale Agreement and less applicable or value added taxes incurred by the Sellers, shall be deposited into an escrow account pursuant to an escrow agreement to be negotiated and agreed to by all of the Sellers and in accordance with Section 12.g of the Interim Funding and Settlement Agreement entered into on June 9, 2009;

(e)     Sealing the confidential appendices to Twentieth Report pending further Order of this Court; and

(f)     Such further and other relief as counsel may request and this court deems just.

**THE GROUNDS FOR THE MOTION ARE:**

(a)     Pursuant to an Order of this Court made on January 14, 2009 (as subsequently amended and restated, the "Initial Order"), the Applicants obtained protection pursuant to the *Companies' Creditors Arrangement Act* ("CCAA");

(b)     Under the Initial Order, Ernst & Young Inc., was appointed as monitor (the "Monitor") in the CCAA proceedings;

**THE SALE PROCESS**

(c)     Terms not defined herein shall have the meaning given to them in the Final Sale Agreement;

(d)     On August 4, 2009, this Honourable Court granted an order approving:

- 3 -

3

  (i)  bidding procedures (the "Bidding Procedures") for a sale process of certain of the Sellers assets relating to the Enterprise Solutions Business and shares of Nortel Government Solutions Incorporated and DiamondWare, Ltd., which procedures were attached to the form of Order;

  (ii)  a stalking horse agreement dated as of July 20, 2009 (the "Stalking Horse Agreement") among the Purchaser and the Sellers and accepting the Stalking Horse Agreement for the purposes of conducting the "stalking horse" bidding process in accordance with the Bidding Procedures including, without limitation the Break-Up Fee and the Expense Reimbursement (as both terms are defined in the Stalking Horse Agreement); and

  (iii)  Approving the Side Agreement dated as of July 20, 2009 among the Sellers and court appointed administrators.

(e)  The Bidding Procedures contemplated a bid deadline of 12:00 p.m. (ET) on September 4, 2009 ("Bid Deadline");

(f)  By the Bid Deadline, Nortel had received two (2) bids which were subsequently acknowledged as "Qualified Bids" as contemplated by the Bidding Procedures;

(g)  In accordance with the Bidding Procedures, an auction was held at the offices of Cleary Gottlieb Steen & Hamilton LLP ("Cleary") on September 11, 2009;

(h)  At the end of the auction, the Purchaser was the winning bidder;

(i)  The purchase price payable is US$900 million, plus US$15 million cash to be paid to employees at closing under an employee retention plan (to be implemented with guidance from Nortel management);

(j)  In addition to the terms set out in the bid made by the Purchaser in the sixth round, there were a number of changes from the Stalking Horse Agreement to the Final Sale Agreement. A comprehensive summary of these changes is contained in the Twentieth Report;

(k)    The process conducted was in accordance with the Court-approved Bidding Procedures;

(l)    In light of the process conducted as described above, NNL believes that maximum value has been achieved for the Assets;

(m)    The motion for the approval of the Final Sale Agreement in the U.S. Court is scheduled as part of a joint hearing with this Court on the return date of this motion;

(n)    The confidential appendices to the Twentieth Report contain sensitive proprietary, competitive and commercial information which is appropriate to be sealed in the circumstances;

**MISCELLANEOUS**

(o)    The provisions of the CCAA; and

(p)    Further and other grounds as counsel may advise and this Honourable Court permit.

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

(a)    The affidavit of George Riedel, sworn and dated July 30, 2009 (the "Riedel July 30 Affidavit");

(b)    The affidavit of George Riedel, sworn September 15, 2009 (the "Riedel Affidavit")

(c)    The Twentieth Report of the Monitor (the "Twentieth Report"), to be filed; and

(d)    Such further and other evidence as counsel may request and this Honourable Court deem just.

September 15, 2009

**Ogilvy Renault LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930
Lawyers for the Applicants

TO:       Attached Service List

ʕ

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO:      **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:      416.216.4000
Fax:      416.216.3930

Lawyers for the Applicants

DOCSTOR: 1600901\2A

- 2 -

TO:    **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:    nortel.monitor@ca.ey.com

Tel:    416.943.3016
Fax:    416.943.3300

AND    **GOODMANS LLP**
TO:    250 Yonge Street
Suite 2400
Toronto, ON  M5B 2M6

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:    jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
carmstrong@goodmans.ca

Tel:    416.597.4107
Fax:    416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND    **OSLER HOSKIN AND HARCOURT**
TO:    **LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:    lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:    416.362.2111
Fax:    416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND    **FASKEN MARTINEAU DUMOULIN LLP**
TO:    66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:    dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:    416.868.3538
Fax:    416.364.7813

Lawyers for Export Development Canada

AND
TO:
**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON  K1A 1K3

Jennifer Sullivan

Email:    jsullivan@edc.ca

Tel:      613.597.8651
Fax:      613.598.3113

AND
TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON  M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:    rthornton@tgf.ca
          mbarrack@tgf.ca
          rmoncur@tgf.ca
          lwilliams@tgf.ca

Tel:      416.304.1616
Fax:      416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND
TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS  B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:    john.stringer@mcinnescooper.com
          stephen.kingston@mcinnescooper.com

Tel:      902.425.6500
Fax:      902.425.6350

Lawyers for Convergys EMEA Limited

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:    jcarhart@millerthomson.com
          msims@millerthomson.com

Tel:      416.595.8615/8577
Fax:      416.595.8695

Lawyers for Toronto-Dominion Bank

AND
TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:    barry.wadsworth@caw.ca
          lewis.gottheil@caw.ca

Tel.:     416.495.3776
Fax:      416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada

AND
TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC  V7X 1S8

R. Hoops Harrison

Email:    hharrison@boughton.ca

Tel:      604.687.6789
Fax:      604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

AND TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email: mmacnaughton@blgcanada.com
Tel: 416. 367.6646
Fax: 416. 682.2837

Email: rjaipargas@blgcanada.com
Tel: 416.367.6266
Fax: 416.361.7067

Email: srappos@blgcanada.com
Tel: 416.367.6033
Fax: 416.361.7306

Lawyers for Bell Canada

AND TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email: ray.leach@siskinds.com
dimitri.lascaris@siskinds.com
monique.radlein@siskinds.com

Tel: 519.672.2121
Fax: 519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email: lwittlin@langmichener.ca
Tel: 416.307.4087
Fax: 416.304.3855

Email jcontini@langmichener.ca
Tel: 416.307.4148
Fax: 416.304.3767

Email arousseau@langmichener.ca
Tel: 416.307.4081
Fax: 416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email: zychk@bennettjones.com
Tel: 416.777.5738
Fax: 416.863.1716

Email: orzyr@bennettjones.com
Tel: 416.777.5737
Fax: 416.863.1716

Email: finlaysong@bennettjones.com
Tel: 416.777.5762
Fax: 416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:   mzigler@kmlaw.ca
Tel:      416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:      416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:      416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:      416.595.2150
Fax:     416.204.2874

Lawyers for the Former Employees of Nortel

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email   msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:      416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:      416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongdeungpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:      +82.2.3777.3171
Fax:     +82.2.3777.5345

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:    harvey@chaitons.com

Tel:      416.218.1129
Fax:      416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:    Shayne.kukulowicz@fmc-law.com
          Alex.macfarlane@fmc-law.com
          Michael.wunder@fmc-law.com

Tel:      416.863.4511
Fax:      416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:    ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:      416.646.4301

Email:    max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:      416.646.4301

Email:    lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:      416.646.4301

Email:    tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:      416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:    patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:      416.862.7661

Lawyers for Westcon Group

12

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
        dullmann@mindengross.com
Tel:    416.369.4149
Fax:    416.864.9223

Lawyers for Verizon Communications Inc.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Andrew, LLC

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:    416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:    416.863.1515

Lawyers for Microsoft Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
        smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:    604.484.1957

Lawyers for Algo Communication Products Ltd.

DOCSTOR: 1600901\2A

- 8 -

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:      416.595.8686
Fax:      416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Brookfield LePage Johnson Controls
Facility Management Services

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:      416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:      416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:      416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Perot Systems Corporation

AND TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:      416.865.7178
Fax:      416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:      416.865.7285
Fax:      416.865.7048

Lawyers for Citibank

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:   dgrieve@casselsbrock.com
Tel:      416.860.5219
Fax:      416.350.6923

Lawyers for Alvarion Ltd.

AND TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:   dmagisano@blaney.com
Tel:      416.593.2996
Fax:      416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:      416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:      416.865.6641
Fax:      416.865.6636

Lawyers for Amphenol Corporation

AND TO:

**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:      416.307.4087
Fax:      416.365.1719

Email:   arousseau@langmichener.ca
Tel:      416.307.4081
Fax:      416.365.1719

Lawyers for Right Management Inc.

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:   smitra@airdberlis.com
          svitorovich@airdberlis.com

Tel:      416.863.1500
Fax:      416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
           ainslie.benedict@nelligan.ca
           steven.levitt@nelligan.ca
           christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND TO:
**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:    416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND TO:
**COLBY, MONET DEMERS, DELAGE &**
**CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:   ddropsy@colby-monet.com
Tel:    514.284.3663
Fax:   514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman

Email:   bleonard@casselsbrock.com
           hgarman@casselsbrock.com

Tel:    416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:
**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:    613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND TO:
**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
           mgaggino@schneidergaggino.com

Tel:    514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

16

AND TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:    janice.payne@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:      613.231.8245
Fax:      613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:    ryanbellr@bennettjones.com
          laugesenm@bennettjones.com

Tel:      416.863.1200
Fax:      416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:    tdunn@mindengross.com
Tel:      416.369.4335
Fax:      416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:    chris.besant@bakernet.com

Tel:      416.865.2318
Fax:      416.863.6275

Email:    lydia.salvi@bakernet.com

Tel:      416.865.6944
Fax:      416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:    theintzm@mccarthy.ca
Tel:      416.601.7627
Fax:      416.868.0673

Email:    jsirivar@mccarthy.ca
Tel:      416.601.7750
Fax:      416.868.0673

Lawyers for Frank Andrew Dunn

AND TO:

**EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:    nanci@eurodata.ca
Tel:      613.745.0921
Fax:      613.745.1172

- 12 -

AND TO:
**BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email: lbrady@baldwinlaw.ca
Tel: 613.771.9991
Fax: 613.771.9998

Lawyers for Sydney Street Properties Corp.

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email: sgraff@airdberlis.com
Tel: 416.865.7726
Fax: 416.863.1515

Email: iaversa@airdberlis.com
Tel: 416.865.3082
Fax: 416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel : 416.214.5206
Fax : 416.214.5400

Co-Counsel for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009

AND TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email: cynthia.maher@ntscorp.com
Tel: 714.998.4351
Fax: 714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email: arthur.jacques@shibleyrighton.com
Tel: 416.214.5213
Fax: 416.214.5413

Email : thomas.mcrae@shibleyrighton.com
Tel : 416.214.5206
Fax : 416.214.5400

Lawyers for The Recently Severed Canadian Nortel Employees Committee

AND TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email : jysimard@lavery.ca
Tel : 514.871.1522
Fax : 514.871.8977

Lawyers for Texas Landlords to Nortel Networks Inc.

- 13 -

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:  cynthia.maher@nt scorp.com
Tel:    714.998.4351

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:    david.cohen@gowlings.com

Tel:    416.369.6667
Fax:    416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND
TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:    bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:    jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND
TO:
**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:    rschwill@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Email:    mgottlieb@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:
**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Email:    slaubman@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

AND
TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:    lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:    416.863.6275

Lawyers for Wipro Limited

- 14 -

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:      416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:     416.973.0810

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:     416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:     416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:     416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:     416.863.2572
Fax:     416.863.2653

Email:  marc.flynn@blakes.com
Tel:     416.863.2685
Fax:     416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:     416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:     416.601.7730
Fax:     416.868.0673

Email:  rstabile@mccarthy.ca
Tel:     416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

AND    **SACK GOLDBLATT MITCHELL LLP**
TO:    20 Dundas Street West
       Suite 1100
       Toronto, ON  M5G 2G8

James McDonald
Darrell Brown

Email:    jmcdonald@sgmlaw.com
Tel:      416.979.6425
Fax:      416.591.7333

Email:    dbrown@sgmlaw.com
Tel:      416.979.4050
Fax:      416.591.7333

Lawyers for Edmund Fitzgerald

**COURTESY COPIES:**

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:     602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
         rjacobs@akingump.com

Tel:     212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:     212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:     212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:     212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:     212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email: mschein@vedderprice.com

Tel:    212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email : andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:    eric.prezant@bryancave.com
Tel:       312.602.5033
Fax:       312.602.5050

U.S. Lawyers for Tellabs, Inc.

24

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**


**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**


**SUPPLEMENTARY SERVICE LIST OF
PROVINCIAL TAX AUTHORITIES**


TO:      **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:     dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:       416.216.4000
Fax:      416.216.3930

Lawyers for the Applicants

DOCSTOR: 1731595\3

*25*

## BY EMAIL:

## ALBERTA

AND
TO:

### ALBERTA MINISTRY OF FINANCE
The Tax and Revenue Administration
9811-109 Street
Edmonton, Alberta  T5K 2L5

Sue Jamieson

Email: sue.jamieson@gov.ab.ca
Tel:    780.427.9403
Fax:    780.427.0348

## NOVA SCOTIA

AND
TO:

### HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF NOVA SCOTIA AS REPRESENTED BY THE MINISTER OF FINANCE

P.O. Box 187
1723 Hollis St.
Halifax, Nova Scotia  B3J 2N3

Doug Moodie

Email:   moodiedj@gov.ns.ca

## SASKATCHEWAN

AND
TO:

### HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF SASKATCHEWAN AS REPRESENTED BY THE MINISTER OF FINANCE

2350 Albert Street
Regina, Saskatchewan  S4P 4A6

Margaret Johannson

Email:  Margaret.johannson@gov.sk.ca

26

## ONTARIO

**AND TO:**

**ONTARIO MINISTRY OF FINANCE**
Legal Services Branch
6th Floor
33 King Street West
Oshawa, Ontario
L1H 8H5

Kevin O'Hara


Email:   kevin.ohara@ontario.ca
Tel:     (905) 433-6934
Fax:     (905) 436-4510


## PRINCE EDWARD ISLAND

**AND TO:**

**HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF PRINCE EDWARD ISLAND AS REPRESENTED BY THE PROVINCIAL TREASURY**

Shaw Building, 1st Floor
95 Rochford Street
PO Box 2000
Charlottetown, PE  C1A 7N8

Mary Hennessey

Email:   mihennessey@gov.pe.ca
Tel:     (902) 368-4070
Fax:     (902) 368-6164

**NEWFOUNDLAND**

AND
TO:

**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NEWFOUNDLAND AS
REPRESENTED BY THE MINISTER OF
FINANCE**

Department of Finance
3rd Floor, East Block, Confederation Complex
P.O. Box 8700, St. John's, Newfoundland
A1B 4J6

Keith Rees

Email:  krees@gov.nl.ca
Tel:     709.729.6297
Fax:    709.729.2856


**FEDERAL**

AND
TO:

**CANADA REVENUE AGENCY**
c/o Department of Justice
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters
Nancy Arnold

Email: diane.winters@justice.gc.ca
Tel:     416.973.3172
Fax:    416.973.0810

**NEW BRUNSWICK**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NEW BRUNSWICK AS
REPRESENTED BY THE MINISTER OF
FINANCE**

Centennial Building
Room: 371, Floor: 3
P. O. Box 6000
Fredericton, New Brunswick
E3B 5H1

Lynn Noel

Email:  lynn.noel@gnb.ca
Tel:      506.457.3550
Fax:     506.444.4920

**BY FAX:**

**BRITISH COLUMBIA**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF BRITISH COLUMBIA,
AS REPRESENTED BY THE MINISTER OF
FINANCE, REVENUE DIVISION**

3rd Floor, 1802 Douglas Street
Victoria, British Columbia  V8T 4K6

Michael Ford

Fax:    250.356.0065

**MANITOBA**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF MANITOBA AS
REPRESENTED BY THE MINISTER OF
FINANCE**

101-401 York Ave.
Winnipeg, Manitoba  R3C 0P8

Fax:    204.945.6057

**QUEBEC**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF QUEBEC AS
REPRESENTED BY THE MINISTER OF
REVENUE**

Revenu Québec
3800, rue de Marly
Québec, Québec  G1X 4A5

Tel:    418 652-6835
Fax:    418 643-7379

30

31

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SUPPLEMENTARY SERVICE LIST OF PPSA REGISTRANTS**

TO:     **OGILVY RENAULT LLP**
        Royal Bank Plaza, South Tower
        200 Bay Street, Suite 3800
        Toronto, Ontario M5J 2Z4

        Derrick Tay
        Mario Forte
        Jennifer Stam

        Email:    dtay@ogilvyrenault.com
                  mforte@ogilvyrenault.com
                  jstam@ogilvyrenault.com

        Tel:      416.216.4000
        Fax:      416.216.3930

        Lawyers for the Applicants

DOCSTOR: 1685281\6

## BY EMAIL:

| | |
|---|---|
| AND TO: | **ARI FINANCIAL SERVICES INC.**<br>600-1270 Central Parkway West<br>Mississauga, ON L5C 4P4<br><br>Tel:  905-803-8000<br>Fax:  905-803-8644<br><br>Email:  ldearborn@arifleet.ca<br>jmcmullin@arifleet.ca | AND TO: | **DRAWBRIDGE SPECIAL**<br>**OPPORTUNITIES FUND LP**<br>1251 Ave. of the Americas<br>16th Fl.<br>New York, New York 10020<br><br>Michael Cohn<br>Andrew Polland<br><br>Tel:  212-798-6071<br>Fax:  212-202-3685<br><br>E-mail:  mcohn@fortress.com<br>apolland@fortress.com |

AND TO: **ARI FINANCIAL SERVICES INC.**
600-1270 Central Parkway West
Mississauga, ON L5C 4P4

Tel:    905-803-8000
Fax:    905-803-8644

Email:    ldearborn@arifleet.ca
jmcmullin@arifleet.ca

AND TO: **DRAWBRIDGE SPECIAL OPPORTUNITIES FUND LP**
1251 Ave. of the Americas
16th Fl.
New York, New York 10020

Michael Cohn
Andrew Polland

Tel:    212-798-6071
Fax:    212-202-3685

E-mail:    mcohn@fortress.com
apolland@fortress.com

AND TO: **FORTRESS CREDIT CORP.**
1251 Avenue of the Americas
16th Floor
New York, New York 10020

Michael Cohn
Andrew Polland

Tel:    212-798-6071
Fax:    212-202-3685

E-mail:    mcohn@fortress.com
apolland@fortress.com

AND TO: **GE CAPITAL CANADA LEASING SERVICES INC.**
5420 North Service Road
4th Floor
Burlington, ON L7L 6C7

Alexandre LeBlanc

Tel:    1.866.317.4323
Fax:    514.397.5300

Email :    alexandre.leblanc@ge.ca

AND TO: **GE CAPITAL CANADA LEASING SERVICES INC.**
1 Place Ville Marie
Suite 1401
Montreal, QC H3B 2B2

Alexandre LeBlanc

Tel:    1.866.317.4323
Fax:    514.397.5300

Email:    alexandre.leblanc@ge.com

AND TO: **GENERAL ELECTRIC CANADA EQUIPMENT FINANCE G.P.**
500 North Service Road
8th Floor
Burlington, ON L7L 6W6

Alexandre LeBlanc

Tel:    1.866.317.4323
Fax:    514.397.5300

Email:    alexandre.leblanc@ge.com

AND TO: **NEXCAP FINANCE CORPORATION**
3027 Harvester Road
Suite 212
Burlington, ON L7N 3G7

Scott Lowes

Tel:    905.637.4467 ext. 117
Fax:    905-637-1882

Email:  slowes@nexcap.com

AND TO: **THE BANK OF NOVA SCOTIA**
44 King Street West,
Toronto, ON M5H 1H1

Attn:    CSRS Queue

Tel:     1.888.855.1234

Email:  bsc@scotiabank.com

AND TO: **GENERAL ELECTRIC CAPITAL EQUIPMENT FINANCE INC.**
5420 North Service Road
Burlington, ON L7L 6C7

Kurt Hardmeier

Email:  kurt.hardmeier@ge.com
Tel:    905.319.5107

AND TO: **STEELCASE FINANCIAL SERVICES LTD.**
1 Steelcase Rd. W.
Markham, ON L3R 0T3

Janeen Treur

Tel:    616.246.4389

Email:  jtreur@steelcase.com

AND TO: **INSIGHT INVESTMENTS CORP.**
600 City Parkway West
Suite 500
Orange, California 92868

Jerry Fitzgerald

Email:  jfitzgerald@insightinvestments.com
Tel:    773.444.0233

**BY FAX:**

AND **ABN AMRO BANK N.V.**
TO:   Canada Branch
      79 Wellington Street West
      Suite 1500
      Toronto, ON M5K 1G8

      Tel:    416-367-0850
      Fax:    416-366-5085

AND **ABN AMRO BANK N.V.**
TO:   600 De Maissonneuve Blvd. W.
      Suite 1500
      Montreal, QC H3A 3J2

      Tel:    514.284.1133
      Fax:    514.284.2357

AND **DELL FINANCIAL SERVICES**
TO:   **CANADA LIMITED**
      155 Gordon Baker Road
      Suite 501
      North York, ON M2H 3N5

      Tel:    1.877.814.4142
      Fax:    1.888.438..1117

AND **GENERAL ELECTRIC CAPITAL**
TO:   **CANADA INC.**
      2300 Meadowvale Boulevard
      Suite 200
      Mississauga, ON L5N 5P9

      Bethany St. Pierre

      Tel:    1.866.329.4323
      Fax:    905.858.6451

AND **ST MICROELECTRONICS**
TO:   **(CANADA), INC.**
      1310 Electronics Drive
      Carrollton, Texas 75006

      Tel:    905.273.4300
      Fax:    905.273.7578

AND **HEWLETT-PACKARD FINANCIAL**
TO:   **SERVICES CANADA COMPANY**
      5150 Spectrum Way
      Mississauga, ON L4W 5G1

      Attn:   Legal Department

      Tel:    905.206.4725
      Fax:    905.206.4191

AND **PRODAIR CANADA LTEE**
TO:   291 Rue Quinlan
      Ville Lasalle, QC H8R 3W4

      Alain Cote

      Tel:    1.800.363.3572
      Fax:    418.878.3235

- 5 -

## BY COURIER:

AND **CIT TECHNOLOGIES INC.**
TO:    181 Bay Street
       Suite 3500
       Toronto, ON M5J 2T3

AND **GE CAPITAL INFORMATION**
TO:    **TECHNOLOGY SOLUTIONS**
       5985 Mclaughlin Road
       Mississauga, ON L5R 1B8

37

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**SUPPLEMENTARY SERVICE LIST OF**
**PROVINCIAL TAX AUTHORITIES**

TO:      **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:    416.216.4000
Fax:   416.216.3930

Lawyers for the Applicants

**BY EMAIL:**

**ALBERTA**

AND
TO:
**ALBERTA MINISTRY OF FINANCE**
The Tax and Revenue Administration
9811-109 Street
Edmonton, Alberta  T5K 2L5

Sue Jamieson

Email: sue.jamieson@gov.ab.ca
Tel:    780.427.9403
Fax:    780.427.0348

**NOVA SCOTIA**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NOVA SCOTIA AS
REPRESENTED BY THE MINISTER OF
FINANCE**

P.O. Box 187
1723 Hollis St.
Halifax, Nova Scotia  B3J 2N3

Doug Moodie

Email:   moodiedj@gov.ns.ca

**SASKATCHEWAN**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT
OF THE PROVINCE OF
SASKATCHEWAN AS REPRESENTED
BY THE MINISTER OF FINANCE**

2350 Albert Street
Regina, Saskatchewan  S4P 4A6

Margaret Johannson

Email:  Margaret.johannson@gov.sk.ca

51

## ONTARIO

**AND TO:**

**ONTARIO MINISTRY OF FINANCE**
Legal Services Branch
6th Floor
33 King Street West
Oshawa, Ontario
L1H 8H5

Kevin O'Hara

Email:   kevin.ohara@ontario.ca
Tel:      (905) 433-6934
Fax:     (905) 436-4510

## PRINCE EDWARD ISLAND

**AND TO:**

**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF PRINCE EDWARD
ISLAND AS REPRESENTED BY THE
PROVINCIAL TREASURY**

Shaw Building, 1st Floor
95 Rochford Street
PO Box 2000
Charlottetown, PE  C1A 7N8

Mary Hennessey

Email:   mihennessey@gov.pe.ca
Tel:      (902) 368-4070
Fax:     (902) 368-6164



**NEWFOUNDLAND**

AND
TO:
**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NEWFOUNDLAND AS
REPRESENTED BY THE MINISTER OF
FINANCE**

Department of Finance
3rd Floor, East Block, Confederation Complex
P.O. Box 8700, St. John's, Newfoundland
A1B 4J6

Keith Rees

Email:   krees@gov.nl.ca
Tel:     709.729.6297
Fax:     709.729.2856

**FEDERAL**

AND
TO:
**CANADA REVENUE AGENCY**
c/o Department of Justice
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters
Nancy Arnold

Email: diane.winters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

41

**NEW BRUNSWICK**

AND
TO:

**HER MAJESTY THE QUEEN IN RIGHT OF
THE PROVINCE OF NEW BRUNSWICK AS
REPRESENTED BY THE MINISTER OF
FINANCE**

Centennial Building
Room: 371, Floor: 3
P. O. Box 6000
Fredericton, New Brunswick
E3B 5H1

Lynn Noel

Email:  lynn.noel@gnb.ca
Tel:      506.457.3550
Fax:      506.444.4920

42

**BY FAX:**

**BRITISH COLUMBIA**

AND
TO:    **HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF BRITISH COLUMBIA, AS REPRESENTED BY THE MINISTER OF FINANCE, REVENUE DIVISION**

3rd Floor, 1802 Douglas Street
Victoria, British Columbia  V8T 4K6

Michael Ford

Fax:    250.356.0065

**MANITOBA**

AND
TO:    **HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF MANITOBA AS REPRESENTED BY THE MINISTER OF FINANCE**

101-401 York Ave.
Winnipeg, Manitoba  R3C 0P8

Fax:    204.945.6057

**QUEBEC**

AND
TO:    **HER MAJESTY THE QUEEN IN RIGHT OF THE PROVINCE OF QUEBEC AS REPRESENTED BY THE MINISTER OF FINANCE**

**Ministère des Finances**
12, rue Saint-Louis
Québec (Québec) G1R 5L3

Tel:    418.528.9323
Fax:    418.646.1631

43



Court File No. 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

### SUPPLEMENTARY SERVICE LIST OF ADDITIONAL PARTIES

TO:    **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:    416.216.4000
Fax:    416.216.3930

Lawyers for the Applicants

**BY EMAIL:**

AND **STIKEMAN ELLIOTT**
TO:  5300 Commerce Court West
   199 Bay Street
   Toronto, Ontario  M5L 1B9

   Elizabeth Pillon

   Email:  lpillon@stikeman.com
   Tel:    416.869.5623
   Fax:    416.947.0866

   Lawyers for Enterprise Networks Holdings B.V.

AND **GIBSON DUNN**
TO:  Telephone House
   2-4 Temple Avenue
   London  EC4Y 0HB
   United Kingdom

   Kenneth Lamb

   Email:  klamb@gibsondunn.com
   Tel:    +44 20 7071 4201
   Fax:    +44 20 7070 9201

   Lawyers for Enterprise Networks Holdings B.V.

46

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

NOTICE OF MOTION
(Returnable September 16, 2009)

Ogilvy Renault LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

**TAB 2**

47

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn September 15, 2009)**

I, George Riedel, of the city of Boston in the State of Massachusetts, MAKE OATH AND SAY:

1.    I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held those positions since February, 2006. As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.    I swear this Affidavit in support of the motion to approve, among other things, the transactions contemplated by an amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Final Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "Sellers"), and Avaya Inc. ("Avaya" or the "Purchaser"), in respect of the sale of certain of its assets and shares (collectively, the "Assets") relating to Nortel's Enterprise business (as such terms are defined and described in further detail below) (the "Business"). A copy of the Final Sale Agreement (without exhibits or schedules) will be attached as an appendix to the twentieth report (the "Twentieth Report") of the Monitor (as

48

- 2 -

defined below) to be filed in connection with this motion. References to "Nortel" herein are references to the global enterprise as a whole.

**BACKGROUND**

3.      On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

4.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "Chapter 11 Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

5.      Additionally, on January 15, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

6.      On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

7.      On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

- 3 -

8.      On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK under Chapter 15 of the Code.  On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

9.      On July 15, 2009, Nortel Networks (CALA) Inc. made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

10.     Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these proceedings as well as my affidavit sworn July 30, 2009 (the "July 30 Affidavit") and are therefore not repeated herein.

11.     Capitalized terms used herein and not otherwise defined shall have the meaning given to them in my July 30 Affidavit or the Final Sale Agreement as applicable.

**THE TRANSACTION**

*The Business*

12.     My July 30 Affidavit and the Initial Order Affidavit both included a detailed description of the Business which provides solutions for addressing the communication needs of large and small businesses globally across a wide variety of industries and governmental agencies by building new networks and transforming existing networks into more cost-effective, packet-based networks supporting data, voice and multimedia communications.  In particular, the Business specializes in providing solutions that allow its customers to integrate and remove barriers between voice, email, conferencing, video and instant messaging technologies.

*The Stalking Horse Agreement*

13.     Pursuant to an Order of this Court made on August 4, 2009 (the "Bidding Procedures Order"), approving a stalking horse agreement dated as of July 20, 2009 (the "Stalking Horse Agreement") among Avaya, as buyer and the Sellers as well as certain bidding procedures ("Bidding Procedures") for a sales process for the Business.  A copy of the Bidding Procedures

- 4 -

will be attached as an appendix to the Twentieth Report. A similar order was made by the U.S. Court on the same day.

14.    The Stalking Horse Agreement was described in detail in my July 30 Affidavit and the Eighteenth Report of the Monitor. Briefly, the Stalking Horse Agreement provided for the following:

   a)  The payment by Avaya of a good faith deposit of US$100 million;

   b)  A purchase price of US$475 million less the Escrow Amount (described in my July 30 Affidavit) to the Sellers, adjusted based on estimates of, *inter alia*, inventory and amounts relating to accrued and unused vacations of the employees of the Business, retirement obligations, working capital and net debt of certain Nortel entities included in the Transaction, certain adjustments relating to the EMEA Sellers, and the standard margin (as adjusted) for the Business (and subject to certain other reductions all as set out in my July 30 Affidavit);

   c)  The payment of a Reverse Termination Fee (as defined in my July 30 Affidavit) of US$100 million in certain circumstances;

   d)  The payment of a delay fee of US$97,600 per day from the 150th day after the date of the Stalking Horse Agreement if regulatory approvals are pending and conditions to closing have otherwise been satisfied; and

   e)  The payment of a break up fee of up to approximately US$19 million.

15.    As part of the Stalking Horse Agreement, the Purchaser also agreed to make offers to certain Nortel employees associated with the Business.

*The Sale and Bid Process*

16.    In accordance with the Bid Procedures, upon the entry of the Bidding Procedures Order, Nortel went into a 31 day "go shop" period pursuant to which prospective bidders were entitled to follow certain procedures in order to qualify as "Qualified Bidders" and submit "Qualified Bids" no later than 12:00 p.m. (EST) on September 4, 2009 (the "Bid Deadline").

- 5 -

17. By the Bid Deadline, Nortel had received two (2) bids, including the Stalking Horse Agreement, all of which were subsequently allowed as "Qualified Bids"). In addition to Avaya, Enterprise Networks Holdings BV ("ENH") submitted a bid, which based on the requirements set out in the Bidding Procedures, was deemed a Qualified Bid. The Bidding Procedures also expressly deemed the Stalking Horse Agreement a Qualified Bid. The Stalking Horse Agreement was subsequently chosen as the starting bid for the purposes of the Auction (defined below).

18. As contemplated by the Bidding Procedures, an auction (the "Auction") was held at the offices of Cleary Gottlieb Steen & Hamilton LLP. A brief summary of the Auction is as follows:

    a) the Auction commenced on September 11, 2009;

    b) during the course of the Auction, there were six (6) rounds of bidding;

    c) in the sixth round of bidding, Avaya made a bid (the "Final Bid") as follows:

        i.   a purchase price of US$900 million, plus US$15 million cash to be paid to employees at closing under an employee retention plan (to be implemented with guidance from Nortel management);

        ii.  if the bid was not chosen as the winning bid, Avaya would not be an "Alternate Bidder" (as defined in the Bidding Procedures); and

        iii.  the bid was conditioned on Nortel committing that it would not accept a bid from any other bidder that included consideration other than (A) cash; (B) cash funding for employee retention; and (C) in the case of Avaya, a credit for the Break-up Fee and Expense Reimbursement.

    d) Subsequent to the submission of the Final Bid, ENH withdrew from the Auction; and

    e) The Final Bid was selected as the winning bid and the auction was adjourned pending signing of final documents.

19. In addition to the terms set out in the Final Bid, there were a number of changes from the Stalking Horse Agreement to the Final Sale Agreement, which served to both improve the terms

- 6 -

and reduce the risk to the estate(s). I am aware that the Twentieth Report will contain a more comprehensive summary of those changes. Some of the more significant amendments from the Stalking Horse Agreement that are reflected in the Final Sale Agreement are as follows:

a) In addition to those liabilities that the Purchaser had agreed to assume under the Stalking Horse Agreement, the Purchaser agreed to assume all liabilities related to any payments with respect to accrued and unpaid vacation days (without adjustment ) to the extent provided for in the Sale Agreement – corresponding changes were made for the removal of the Accrued Vacation Adjustment and the EMEA Holiday Adjustment (as both such terms are defined in the Stalking Horse Agreement);

b) The Reverse Termination Fee was increased to (i) US$200 million if (1) the conditions set forth in Section 8.1(a) of the Final Sale Agreement or Clause 15.1.3 of the EMEA Asset Sale Agreement have not been satisfied and/or (2) the Regulatory Approvals require any divestitures, licenses or hold separate or similar arrangements or any material actions, undertakings or arrangements for the conduct of any business and/or terminating any relationships or contractual rights or obligations that Purchaser determines not to accept, and (ii) US$100 million in all other circumstances;

c) Expansion of remedies available to Nortel in the event of a failure to close or a pre-Closing breach under the Final Sale Agreement by the Purchaser to all of those available at law or equity, including specific performance, and removal of the cap on damages except in specified instances as set out in the Final Sale Agreement;

d) An extension of the outside termination date (from the Purchaser) to be as follows:

"if the Closing does not take place on or prior to the date that is (a) 270 days from the date of this Agreement in the case of a termination by the Main Sellers, or (b) the date that is earlier of (1) 365 days from the date of this Agreement or (2) the later of 270 days from the date of this Agreement or the thirtieth (30th) day after the date on which the condition set forth in Section 8.1(a) hereof is satisfied, in the case of a termination by the Purchaser"

e) The inclusion of an "Asset Sale Election" with respect to Nortel Government Solutions Incorporated ("NGS") and Diamondware, Ltd. ("DiamondWare" and together with NGS, the "Companies"), which provides an option for the Sellers to file petitions in respect of the Companies pursuant to Chapter 11 of the Code and sell the

assets of the Companies instead of the shares of such companies (as currently contemplated).  In the event that the Sellers elect the Asset Sale Election, the Final Sale Agreement provides that in the event that not all "Customer Contracts" are transferred, there shall be a purchase price adjustment in accordance with the Final Sale Agreement; and

f) In connection with the inclusion of the Asset Sale Election, if the Asset Sale Election is made, then there shall be a closing condition in favour of the Purchaser that the (i) Customer Contracts of the Companies that accounted for not less than 65 % of LTM revenues of Companies as of the Closing Date, shall have been transferred or to the extent not prohibited by applicable Law or the terms of such Customer Contract, sub-contracted (on terms  under which Purchaser or a Designated Purchaser receives the economic benefits that it would have received if it were a direct party to the relevant Customer Contract) to Purchaser or a Designated Purchaser on the Closing Date in compliance with an effective order of the Bankruptcy Court or (ii) the Sellers shall have delivered a second set of all financial statements and information required to be delivered before Closing under Section 5.34, which set of financial statements and information shall have been prepared excluding the Companies.

20.     I believe that the process undertaken the by the Applicants, the Chapter 11 Debtors and their advisors, including with input from the official committee of unsecured creditors of NNI and the ad hoc bondholders committee, was in compliance with the Bidding Procedures and that maximum value for the Assets has been achieved.   The Auction took place over a period of three (3) full days with very few breaks and the purchase price for the Assets was increased from US$475 million to US$915 million.

21.     The Final Sale Agreement is conditional upon the approval of both the U.S. Court and this Court.

*Sealing*

22.     I am aware that the Monitor has or will be filing one or more confidential appendices to the Twentieth Report which, among other things, will contain the disclosure schedules and exhibits to the Final Sale Agreement.  These disclosure schedules and exhibits contain sensitive competitive and, in some instances, personal information. I believe sealing this confidential

- 8 -

appendix is appropriate in the circumstances.

**CONCLUSION**

23.    The sale process was conducted by Nortel with consultation from its financial advisor, the Monitor and several of its significant stakeholders and in accordance with the Bidding Procedures.    The Auction resulted in a significantly increased purchase price as well as favourable changes reflected in the Final Sale Agreement.  I believe that the proposed transaction as set out in the Final Sale Agreement is the best offer available for the Assets.

SWORN BEFORE ME at the City of
Weston Boston, in the State of Massachusetts
on this 15th day of September, 2009.

_____
Commissioner for Taking Affidavits or
Notary Public

_____
George Riedel



MARK LOZIER
Notary Public
Commonwealth of Massachusetts
My Commission Expires
March 7, 2014

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

AFFIDAVIT OF GEORGE RIEDEL
(sworn September 15, 2009)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1768800\3

**TAB 3**

Court File No: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AFFIDAVIT OF GEORGE RIEDEL
### (sworn July 30, 2009)

I, George Riedel, of the city of Boston in the State of Massachusetts, MAKE OATH AND SAY:

1.    I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel Networks Limited ("NNL") and have held those positions since February, 2006. As such, I have personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess personal knowledge, I have stated the source of my information and, in all such cases, believe it to be true.

2.    I swear this Affidavit in support of the motion to approve, among other things, the bidding procedures and a "stalking horse" asset and share sale agreement dated as of July 20, 2009 (the "Sale Agreement") among NNC, NNL and Nortel Networks Inc. ("NNI") and certain of their affiliates, as vendors (the "North American Sellers"), certain other entities defined therein as the EMEA Sellers (the "EMEA Sellers" and together with the North American Sellers, the "Sellers") and Avaya Inc., as purchaser ("Avaya" or the "Purchaser"), in respect of the sale of certain of the North American Sellers' assets relating to the Enterprise Solutions Business (as such phrase is defined and described in further detail below) and shares of Nortel Government Solutions Incorporated ("NGS") and DiamondWare, Ltd. (collectively, such assets and shares are

- 2 -

referred to herein as the "North American Assets"). A copy of the Sale Agreement (without exhibits or schedules) is attached as an appendix to the eighteenth report (the "Eighteenth Report") of the Monitor (as defined below) to be filed in connection with this motion. References to "Nortel" herein are references to the global enterprise of NNC, NNL, NNI and their respective affiliates as a whole. In connection with entering into the Sale Agreement, the EMEA Sellers, as vendors and the Purchaser, as purchaser, entered into an asset sale agreement relating to the sale and purchase dated as of July 20, 2009 (the "EMEA Agreement" and together with the Sale Agreement, the "Purchase Agreements") in respect of the sale of certain of the assets of the EMEA Sellers relating to the Enterprise Solutions Business (such assets together with the North American Assets, referred to herein as the "Assets").

3.      All dollar references are US$ unless otherwise indicated.

**BACKGROUND**

4.      On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

5.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "Chapter 11 Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

6.      Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa each obtained an administration order for the appointment of administrators from the English High Court of Justice under the Insolvency Act 1986.

- 3 -

7.      On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

8.      On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.   In accordance with the European Union's Counsel Regulation, the English law proceedings remain the main proceedings in respect of NNSA.

9.      On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "English Proceedings") under Chapter 15 of the Code.   On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

10.     On July 15, 2009, Nortel Networks (CALA) Inc. made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

11.     Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these proceedings and are therefore not repeated herein.

12.     The Applicants have previously obtained various relief related to the sale of certain other their assets including:

        (a)     The sale of Nortel's Layer 4-7 Application Delivery Business, which sale closed on April 1, 2009;

        (b)     The sale of NNL's real property known as the "Westwinds Facility" in Alberta, which sale closed on June 16, 2009;

        (c)     A sale process for the divestiture of NNL's interest in its joint venture with LG Electronics Inc., which process is still underway; and

- 4 -

(d)    Bidding procedures and a stalking horse agreement entered into with Nokia Siemens Networks B.V. for the sale of certain of Nortel's CDMA and LTE related assets, followed by the sale itself.

13.    The Sale Agreement is the stalking horse agreement for the sale of the Enterprise Solutions Business, another significant business division of Nortel.

## THE TRANSACTION

14.    Capitalized terms used in this section of my Affidavit not otherwise defined herein shall have the meanings given to them in the Sale Agreement.

*The Enterprise Solutions Business*

15.    Nortel's Enterprise Solutions business unit provides solutions for addressing the communication needs of large and small businesses globally across a wide variety of industries and governmental agencies by building new networks and transforming existing networks into more cost-effective, packet-based networks supporting data, voice and multimedia communications (the "Enterprise Solutions Business"). In particular, the Enterprise Solutions Business specializes in providing solutions that allow its customers to integrate and remove barriers between voice, email, conferencing, video and instant messaging technologies. In addition, NGS performs the role of a systems integrator and channel for Nortel Enterprise products in the US Federal government markets.

16.    The Enterprise Solutions Business has a global presence with operations and customers in the United States, Canada, Central and Latin America, Europe, the Middle East, Africa, and Asia. The Enterprise Solutions Business (including NGS, its subsidiaries and Diamondware Ltd., each of which are U.S. companies that are not part of the proceedings), has approximately 7,900 employees, who are located in various locations worldwide.

17.    The environment in which the Enterprise Solutions Business operates is highly competitive. Competitors to this Business include some of the world's leading technology companies such as Cisco, Siemens Enterprise Communications, Alcatel-Lucent, NEC and many others. The enterprise communications industry is highly dynamic and the competitive landscape is constantly changing. Simply put, the competition for market share is fierce, and

- 5 -

therefore the value of achieving scale and other efficiencies is important in this business. Taking into account these challenges, Nortel concluded that it would be difficult to compete in this market and selling its Enterprise Solutions Business should be seriously investigated.

*Previous Marketing Efforts*

18.    Until 2008, the Enterprise Solutions Business was integrated with Nortel's other businesses, including its carrier business. In the summer of 2008, as part of its overall restructuring efforts, Nortel began the separation of the Enterprise Solutions Business into an independent business, an effort that is continuing.

19.    In late 2008, Nortel began to explore the potential sale of the Enterprise Solutions Business. In connection with those efforts, Nortel approached eight (8) parties, including one (1) financial investor and seven (7) strategic buyers. Nortel received six (6) expressions of interest, and three (3) of the interested parties participated in management presentations and due diligence sessions, resulting in the receipt of two (2) non-binding proposals.

20.    The commencement of the various insolvency proceedings temporarily interrupted Nortel's exploration of the potential sale of the Enterprise Solutions Business. Shortly after the Filing Date, Nortel began evaluating various potential strategic options for its reorganization, with its advisors along with the Monitor and certain of its key stakeholders. Ultimately, Nortel determined that it is in Nortel's best interests to divest the Enterprise Solutions Business in the near term to maximize the value that can be realized from such a sale.

21.    In furtherance of exploring such a sale, in early March 2009, Nortel and its financial advisor contacted potential bidders for the Enterprise Solutions Business, including all of the parties that had previously expressed interest in acquiring the Enterprise Solutions Business and with whom active discussions took place prior to the Filing Date, and a number of new parties (together, the "Prospective Bidders"). The Prospective Bidders were invited by Nortel to commence (or recommence, as the case may be) their due diligence efforts and were provided access to key information regarding the Enterprise Solutions Business. Shortly thereafter, the Prospective Bidders carrying out due diligence were invited to attend in-person information sessions with the management of the Enterprise Solutions Business. Nortel subsequently invited

- 6 -

the Prospective Bidders to submit definitive proposals to acquire the Enterprise Solutions Business.

22.    During the course of this process, the field of Prospective Bidders was narrowed to three (3) prospective stalking horse bidders (the "Bidders") who submitted definitive proposals to acquire the Enterprise Solutions Business. Nortel engaged in further discussions with each of the three (3) Bidders in parallel, and evaluated their bids in light of a number of criteria, such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by each Bidder, the claims likely to be created by such bid in relation to other bids, the counterparties to such transactions, the proposed transaction documentation or terms, the effect of the sale on the value of the ongoing businesses of Nortel (including ongoing relationships with customers and suppliers), other factors affecting the speed, certainty and value of the sale (including any regulatory approvals required to close the transactions), the assets included or excluded from the bid, the estimated number of in-scope employees to be offered post-closing employment by the Bidder and any proposed measures associated with their continued employment, the transition services required from Nortel post closing and any related restructuring costs, and the likelihood and timing of consummating such transaction.  Based upon this evaluation, Nortel ultimately decided, in consultation with its advisors along with the Monitor and certain of its key stakeholders, that the Purchaser's bid offered the most advantageous terms and best value.

*The Sale Agreement*

23.    After extensive arm's-length, good faith negotiations among the Sellers and the Purchaser and their respective advisors, the parties have agreed, among other undertakings, to convey the Assets including by assigning the Designated Agreements to the Purchaser or certain other purchasers designated by the Purchaser all in accordance with the terms and conditions of the Purchase Agreements, subject to the approval of the transaction in a number of the jurisdictions in which the Sellers are subject to creditor protection proceedings.

24.    The Purchase Agreements contemplate the sale of the Assets, subject to higher and/or better bids, on the following material terms:

    (a)    Good Faith Deposit. The Purchaser has delivered to Wells Fargo Bank, National Association, as escrow agent, $100 million as a Good Faith Deposit, to be applied

- 7 -

against the purchase price, the Reverse Termination Fee (described below), or damages payable by the Purchaser. Under the terms of the Escrow Agreement, the Purchaser may substitute such amount with Letters of Credit.

(b)    Purchase Price. At the closing, the Purchaser will pay an amount of $475 million less the Escrow Amount (described below) to the Sellers, adjusted based on estimates of, *inter alia*, inventory and amounts relating to accrued and unused vacations of the employees of the Business, retirement obligations, working capital and net debt of certain Nortel entities included in the Transaction, certain adjustments relating to the EMEA Sellers, and the standard margin (as adjusted) for the Enterprise Solutions Business. These adjustments will not take into account (and therefore the purchase price will not be reduced by) approximately $28 million of liabilities of one of the transferred companies under a certain lease. After the closing, a further adjustment payment, together with interest at the rate of 3% per annum, may be required to be made, 2/3 by the North American Sellers and 1/3 by the EMEA Sellers, based on differences between the estimated and final amounts of the various adjustments. The purchase price may also be reduced if the assets of any EMEA Seller are excluded in certain circumstances under the EMEA Agreement. Lastly, the purchase price has been effectively reduced by a further $10 million by means of a reduction in the aggregate price to be paid by the Purchaser to the Sellers for services under the Transition Services Agreement. The purchase price adjustments are set forth in the Sale Agreement.

(c)    Escrow Amounts. The Purchaser will pay the following portions of the purchase price into escrow at closing:

    (i)    $30 million as security for any payments required upon the final determination of the adjustments to the purchase price;

    (ii)    $25 million as security for certain obligations of NNC, NNL and NNI (the "Main Sellers") in relation to the post-closing delivery of certain financial statements and engagement of KPMG in relation thereto;

- 8 -

(iii)   certain amounts as security for payments by Sellers of accrued and unused vacation days for certain transferred employees, and for certain severance and carrying costs incurred with respect to redundancy of transferring employees in certain EMEA jurisdictions; and

(iv)   an amount as security for certain French tax obligations.

(d)   <u>Certain Fees.</u>

(i)   Fees Payable by the Sellers.

(1)   In certain circumstances the Sellers may be required to pay to the Purchaser a break-up fee and/or an expense reimbursement which is discussed in more detail below.

(ii)   Fees Payable by the Purchaser.

(1)   <u>Reverse Termination Fee:</u>   Upon the termination of the Sale Agreement by the Purchaser before the earlier of (i) the 60th day after the date of the Sale Agreement and (ii) the Bid Deadline (as defined in the Bidding Procedures Order), the Purchaser may terminate the Purchase Agreements provided that the Purchaser pays a cash fee of $100 million (the "Reverse Termination Fee") to the Sellers. The Reverse Termination Fee may also be payable by the Purchaser upon termination of the Sale Agreement by the Main Sellers in certain other circumstances, generally involving a failure to obtain antitrust approvals, and/or certain material intentional uncured breaches by the Purchaser of its representations, warranties, agreements or covenants resulting in a failure to satisfy conditions to the Sellers' obligation to close under the Purchase Agreements (see below for further discussion on closing conditions of the Sellers and the Purchaser), in each case unless:

(A)   the Sellers are in intentional breach of either of the Purchase Agreements in any material respect which breach:

- 9 -

> (I)    would result in a failure of the conditions to the Purchaser's obligations to close under either of the Purchase Agreements, and
>
> (II)    is not cured in the period permitted by the relevant Purchase Agreement, or
>
> (B)    the conditions to the Purchaser's obligations to close under the Sale Agreement cannot be satisfied on or before 365 days after the date of the Sale Agreement.

(2)    <u>Delay Fee:</u>  The Purchaser is required to pay a Delay Fee that accrues at a rate of $97,600 per day[1] from the 150th day after the date of the Sale Agreement, if the regulatory approvals are then still pending and the other conditions to Closing are otherwise satisfied, until all regulatory approvals have been obtained or the Sale Agreement is terminated.

(e)    <u>Assets and Shares to be Transferred.</u>  At the closing, the North American Sellers will transfer, subject to certain exceptions, their rights, title and interests in the North American Assets.  The Excluded Assets not being transferred to the Purchaser by the North American Sellers include cash, cash equivalents and accounts receivable of the North American Sellers, customer contracts not satisfying specified criteria and rejected by the Purchaser, supply contracts not elected by the Purchaser to assume, security deposits provided by the North American Sellers to their contractual counterparties, any assets owned by NN Turkey, the LGN Joint Venture, Uni-Nortel or certain other foreign subsidiaries of NNL or NNI that the Purchaser can elect after signing not to purchase (without adjustments to the purchase price) or, in the case of certain foreign subsidiaries in bankruptcy proceedings that elect not to participate in the transaction (with appropriate adjustments to the purchase price), and any shares owned by the

---

[1]    This is equivalent to 7.5% annual interest on the Base Purchase Price.

- 10 -

North American Sellers in any entity (including joint ventures) other than the
shares of NGS and DiamondWare, Ltd.

(f)   Assumed Liabilities.   The liabilities to be assumed by the Purchaser include,
among others, (i) liabilities arising after the Closing Date to the extent related to
the Enterprise Solutions Business (to the extent acquired) or the operations or
ownership thereof after the closing, (ii) certain liabilities arising from assigned
contracts, (iii) certain liabilities relating to intellectual property, (iv) certain tax
liabilities, (v) certain liabilities related to employees and employee benefit plans
and under employment laws, (vi) certain liabilities relating to certain executory
supply purchase orders, and (vii) certain liabilities relating to bids made by any
Seller or a contractor team or joint venture in which a Seller is participating,
which are capable of acceptance after closing.

(g)   Sale Free and Clear.   The Sale Agreement requires assets to be transferred by the
North American Sellers, including the Applicants', free and clear of all Interests.

(h)   Ancillary Agreements.   Pursuant to the Sale Agreement, on or before the closing,
the Purchaser or its designates and certain Sellers (or their affiliates) will enter
into a number of ancillary agreements dealing with, *inter alia*, provision of
transition services to the Purchaser, licensing of intellectual property, and
secondment of certain employees.  In addition, the Sellers and the Purchaser will
use reasonable best efforts to negotiate in good faith certain contracts among
themselves and/or with third parties, including contract manufacturers, the LGN
Joint Venture and Uni-Nortel.

(i)   Closing Conditions:   The obligation of each of the Sellers on the one hand and the
Purchaser on the other hand, to close the Transactions is subject to a number of
conditions. The obligation of the Purchaser to close the Transactions is subject to,
among other things, the satisfaction of the following conditions:

       (i)    the accuracy of the Sellers' representations and warranties, except as
              would not result in a Material Adverse Effect,

- 11 -

(ii)    the performance in all material respects of all material covenants, obligations and agreements required to be performed by the Sellers on or before the closing (except the covenant to deliver certain financial information must be fully performed by the Sellers and the breach of this covenant is not subject to a materiality qualifier),

(iii)    the receipt of all antitrust approvals in a number of jurisdictions, including the United States, Canada and the European Union, and an approval under the *Investment Canada Act*,

(iv)    the Sale Order and the Canadian Approval and Vesting Order shall have been entered without material modification from the forms contemplated in the exhibits to the Sale Agreement, unless the Purchaser expressly consented to such modification, which consent shall not be unreasonably withheld and shall not have been stayed, amended or, in certain circumstances, appealed as of the Closing Date,

(v)    certain termination and similar events having not occurred with respect to the Nortel Networks Retirement Income Plan, unless the Pension Benefit Guaranty Corporation shall have waived its claims against the Purchaser or any of its Affiliates in relation to any potential liabilities and, if applicable, any lien shall have been released by the Pension Benefit Guaranty Corporation in the U.S., and

(vi)    there being no pending action by the UK Pensions Regulator, the PPF, or the Pension Trustees against the companies (meaning, among other things, the issuance of a warning notice or determination notice in respect of the imposition of a contribution notice or a financial support direction on either of the companies).

In addition, the Purchaser's obligation to close under the Sale Agreement is conditioned upon satisfaction of all conditions to the closing under the EMEA Agreement.

- 12 -

(j)     Termination Rights:  The Sale Agreement may be terminated prior to the Closing in a number of instances, including, among others:

    (i)     by the Purchaser and the Main Sellers if the Bidding Procedures Order, the Canadian Approval and Vesting Order or certain other U.S. approvals have not been entered within a specified period,

    (ii)    by the Purchaser, as noted above, at any time until the earlier of (i) the sixtieth (60th) day after the date of the Sale Agreement and (ii) the Bid Deadline (as defined in the Bidding Procedures Order), provided that the Reverse Termination Fee is paid to the Sellers in accordance with the Sale Agreement, and

    (iii)   by the Purchaser, if the Adjusted Audited Standard Margin of the Business in 2008 is less than ninety percent (90%) of the Unaudited Standard Margin.  (The Unaudited Standard Margin is $1,383.5 million.  The Adjusted Audited Standard Margin will be calculated based on audited financial information.)

(k)     Closing Deadlines:  If the closing has not taken place within 270 days from the date of the Sale Agreement, the Main Sellers may terminate the Sale Agreement. If the closing has not taken place within 365 days from the date of the Sale Agreement, the Purchaser may terminate the Sale Agreement.

(l)     Ongoing Covenants and Restrictions:  In addition to certain other customary post-closing obligations such as sharing of information and redirection of customers and payments, the Sellers have agreed to, among other things:  (i) cooperate with the Purchaser in relation to arrangements regarding non-assignable contracts and bundled contracts during an agreed period after the closing, (ii) sublease certain real estate to the Purchaser, (iii) assume certain non-compete obligations in favor of the Purchaser and (iv) perform certain transition services for the Purchaser.

(m)     Other Significant Provisions:

- 13 -

(i)     Taxes. The Sellers will bear all taxes relating to the Assets or the Business for all tax periods or portions thereof ending on or before the closing, and the Purchaser will bear all taxes for all tax periods or portions thereof beginning after the closing. The taxes for any straddle period will be apportioned between the Sellers and the Purchaser based on the portion of the period ending on and including the closing date and the portion beginning after the closing date, respectively. The Purchaser will bear all transfer taxes in connection with the Sale Agreement, the transactions contemplated by the Sale Agreement, or the other Transaction Documents. In the event of any withholding taxes applicable to the Purchase Price or the Reverse Termination Fee paid by the Purchaser, the Purchaser will deduct such amount from the payment. The Purchaser is not obliged to compensate the Sellers in respect of the withheld amount. The Purchaser also has the right to make (or direct the Sellers to make) certain tax elections, provided that the Purchaser indemnifies the Sellers for any increased tax liability of the Sellers caused by the elections for a specified period.

(ii)    Competing Transaction. Except during the period from entry of the Bidding Procedures Order until conclusion of the Auction, the Sellers and their affiliates are restricted from soliciting, engaging in discussions with any person (other than the Purchaser) in relation to, and taking certain other actions in furtherance of, any transaction that is alternative to the Sale Transaction governed by the Purchase Agreements.

(iii)   Liability Limitation. The liability of the Purchaser to the Sellers and their affiliates or related parties for any failure of the transactions contemplated by the Purchase Agreements to be consummated or in respect of any liabilities or obligations arising under, or relating to, the Purchase Agreements or the transactions contemplated thereby prior to the closing, including an intentional breach prior to the closing, is limited to (i) a maximum of $200 million (including the Reverse Termination Fee, if payable) or (ii) a maximum of $100 million in the event that (A) at the

- 14 -

time of termination the Standard Margin of the Business for a four fiscal quarter measurement period is less than $640 million, (B) the Purchaser is not in a material Intentional Breach of the Purchase Agreements, or (C) the Purchaser terminates the Sale Agreement within the earlier of (x) the 60th day after the date of the Sale Agreement and (y) the Bid Deadline (as defined in the Bidding Procedures Order) and pays the Reverse Termination Fee. The liability of the Sellers and their affiliates to the Purchaser for pre-closing breaches of the Purchase Agreements is limited to the Break-Up Fee and the Expense Reimbursement, when payable.

(iv)     Additional Financial Information.  The Main Sellers will be required to provide before and after closing certain financial statements (included audited financial statements) of the Business that the Purchaser may require for the purpose of, *inter alia*, (i) an exchange offer for outstanding debt securities to be made by the Purchaser or its affiliates, or (ii) any current reports required to be filed by the Purchaser or its affiliates in connection with the acquisition.

(v)      Transition Services.  The parties have agreed to a form of Transition Services Agreement, which sets out the general scope of transition services to be provided by certain Sellers and other entities.  The parties have agreed to negotiate in good faith and use reasonable efforts expeditiously to refine the description of Included Services[2] and to agree certain Extra Services. The parties have agreed to an arbitration procedure to resolve any disputes regarding the services to be provided or the amount to be billed for such services.

---

[2]       Included Services will exclude any portion of any service that has at no time on or after April 1, 2009 been provided by any North American Seller or any EMEA Seller (or any Affiliate of any of them) nor provided or procured by any North American Seller or any EMEA Seller (or any Affiliate of any of them) from a third party (the services within the General Scope of Services that have been provided either by such a North American Seller or any EMEA Seller (or any Affiliate of any of them) entity or by a third party at any time on or after April 1, 2009.

- 15 -

*Employees*

25.     As part of the Sale Agreement, the Purchaser has agreed to make offers to certain Nortel employees associated with the Enterprise Solutions Business. The Sale Agreement provides that the Purchaser shall be entitled to make offers of employment to such employees after the granting of the U.S. Sale Order and the Canadian Approval and Vesting Order as well as receipt of the Regulatory Approvals required under the Sale Agreement.

*Break Up Fee and Expense Reimbursement*

26.     The Purchaser and its advisors have expended, and expect to continue to expend, considerable time, energy, and resources pursuing the purchase of the Assets and the assumption and assignment of the Designated Agreements, and have engaged in extended good faith negotiations. The Purchase Agreements are the culmination of these efforts.

27.     In recognition of this expenditure of time, energy, and resources, the Sellers have agreed that if the Purchaser is not the Successful Bidder, the Sellers will, to the extent due under Section 9.2 of the Sale Agreement, pay to the Purchaser: (i) an aggregate cash fee equal to $14.25 million minus one-half of any Expense Reimbursement (as defined below) paid under the Sale Agreement (the "Break-Up Fee") and (ii) an aggregate amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Purchaser in connection with the preparation, execution and performance of the Sale Agreement and the transactions contemplated thereby, including all filing and notification fees, and all fees and expenses of the Purchaser's representatives (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections"), provided that the Expense Reimbursement will be capped at $9.5 million. The North American Sellers shall pay two-thirds (2/3) and the EMEA Debtors shall pay one-third (1/3) of each of the Break-Up Fee and the Expense Reimbursement. The North American Sellers' and the EMEA Debtors' obligations to pay their respective shares of the Break-Up Fee and the Expense Reimbursement pursuant to Section 9.2 of the Sale Agreement shall be several and not joint (but the obligation of the North American Sellers to pay two-thirds (2/3) of each of the Break-Up Fee and Expense Reimbursement shall be joint and several among the North American Sellers and the obligation of the EMEA Debtors to pay one-third (1/3) of each of the Break-Up Fee and Expense Reimbursement shall be joint and several among the EMEA Debtors).

- 16 -

28.    l believe, based on my discussions with the Monitor, that the Eighteenth Report will be providing more detail as to the circumstances in which the Bid Protections are payable as well as certain arrangements that have been agreed upon regarding allocation as between the Sellers.

29.    The Sellers have further agreed that their obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Purchase Agreements.

*The Sale and Bid Process*

30.    In connection with having entered into the Purchase Agreements and subject to approvals by the U.S. Court and this Honourable Court, Nortel will conduct an auction process for the sale of the Assets to ensure that the Sellers receive the maximum value for the Assets and the Sellers and the Purchaser have agreed that the Sale Agreement is subject to higher or better offers. It is anticipated that in the next month, Nortel will conduct an expedited sale process and follow the Bidding Procedures (as defined below) with a view to the ultimate conduct of an auction.

31.    An agreed upon set of bidding procedures (the "Bidding Procedures") have been developed, which provide for a process through which an interested party may become a "Qualified Bidder". Bids from Qualified Bidders must be submitted no later than **12:00 p.m. (ET) on September 4, 2009**. The auction is scheduled to take place at the offices of Cleary Gottlieb Steen & Hamilton LLP in New York City at **9:30 a.m. (ET) on September 11, 2009**.

32.    l am aware that the Eighteenth Report will attach and outline the proposed sale process and the Bidding Procedures in more detail. l have reviewed the Bidding Procedures and believe them to be fair in the circumstances.

**THE SIDE AGREEMENT**

33.    On June 9, 2009, the Applicants, the Chapter 11 Debtors and court-appointed administrators entered into an Interim Funding and Settlement Agreement (the "IFSA") providing for interim funding to be provided to NNL. The Side Agreement also contained terms governing certain intercompany matters, including the obligation of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide

- 17 -

binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order approving the IFSA.

34.    In connection with the Sale Agreement and the Bidding Procedures, and pursuant to the framework set out in the IFSA, the Sellers and court-appointed administrators entered into a Side Agreement on July 20, 2009 (the "Side Agreement"). I am aware that the Side Agreement will be attached as an appendix to the Eighteenth Report.

35.    The Side Agreement addresses a number of issues among the Sellers raised by their entry into the Sale Agreement, including:

(a)    Efforts to Complete the Stalking Horse Transaction.  Each of the parties to the Side Agreement shall use their reasonable best efforts to cooperate with the Purchaser and with each other to complete the stalking horse transaction, including:

(i)    to inform each other of matters relating to the stalking horse transaction and each of the Purchase Agreements, and to facilitate the process required to obtain certain regulatory approvals;

(ii)    to defend all governmental actions challenging the stalking horse transaction; and

(iii)    to promptly inform each other of any material issue that may result in a breach by the Sellers under the Purchase Agreements.

(b)    Notice and Consultation.  Each of NNL, NNI, NNUK and, to the extent applicable, the Joint Administrators and the Israeli Joint Administrators, will consult in good faith amongst themselves prior to (a) agreeing to materially amend or waive any provisions under the Purchase Agreements, or (b) consenting

- 18 -

to commencement of any Secondary Proceedings in relation to any EMEA Seller,
or any bankruptcy proceedings relating to any Non-Debtor Sellers (as defined in
the Side Agreement) or any company.

(c)   <u>Collection and Allocation of Total Proceeds.</u>  Any payments by the Purchaser to
the Sellers shall be held in an escrow account.  These sale proceeds will be
distributed in accordance with the Interim Sales Protocol.

(d)   <u>Allocation of Total Payments.</u>

(i)    The Sellers have agreed that if the Purchaser is not the successful bidder,
the Sellers will, to the extent due under, and subject to the terms of, the
Purchase Agreements, pay to the Purchaser the Break-Up Fee and the
Expense Reimbursement.

(ii)   The parties have agreed that initially two-thirds of the Bid Protections will
be paid by the North American Sellers and the remaining one-third will be
paid by the EMEA Sellers.  Under the Side Agreement, the parties have
agreed that each party to the Side Agreement will ultimately bear its pro-
rata share of the Bid Protections based on each party's Agreed Respective
Percentage (as defined in the Side Agreement).

(iii)  In addition, if the payment of the Bid Protections is attributable to the
actions or omissions of one or more of the parties to the Side Agreement,
then such breaching parties will reimburse other non-breaching parties for
Bid Protection payments.

(e)   <u>Alternative Transaction.</u>  If the parties to the Side Agreement enter into an
alternative transaction in accordance with the Bid Procedures, the relevant
provisions of the Side Agreement shall apply to such an alternative transaction,
*mutatis mutandis.*

36.    The Side Agreement (other than Sections 2.4 and 2.5) also provides that it is subject to
the rights of each party to exercise its fiduciary duties, the statutory duties or the legal

- 19 -

obligations of the court-appointed administrators in relation to the exercise of their duties or functions as administrators of certain parties.

*Sealing*

37.    I am aware that the Monitor has or will be filing a confidential appendix to the Eighteenth Report which contains the disclosure schedules and exhibits to the Sale Agreement.    These disclosure schedules and exhibits contain sensitive competitive and, in some instances, personal information. I believe sealing this confidential appendix is appropriate in the circumstances.

**CONCLUSION**

38.    I believe that the Sale Agreement is the product of a vigorous, comprehensive and fair process.  The proposed auction sale process for the Enterprise Solutions Business, based on the Sale Agreement as a stalking horse bid, is the best way to preserve the business as a going concern and to maximize value and preserve as many jobs as possible for the Applicants' employees.  I further believe that exploration of the sale of the other businesses as a going concern through this process will provide the greatest chances for further value maximization and job preservation.

39.    Based on the Applicants' previous consideration of potential transactions involving the Enterprise Solutions Business and after re-canvassing the marketplace since the commencement of these proceedings, I believe that the proposed transaction with the Purchaser represents the highest and best proposal available for the Enterprise Solutions Business, subject to the receipt of a better bid through the auction process contemplated in this motion.

40.    The Sale Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Sale Agreement if certain milestones in the sale process are not timely met. For these reasons, the expeditious sale of the Assets is critical to the maximization of the value of the Applicants' assets and, in turn, to a recovery for the Applicants' estates.

- 20 -

SWORN BEFORE ME at the City of
~~Boston~~ *Weston*, in the State of Massachusetts
on this 30th day of July, 2009.

George Riedel

Commissioner for Taking Affidavits or
Notary Public  *M. Elizabeth Nolan*

*My Commission expires: 2/15/2013*
*Notary Public.*

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
(sworn July 30, 2009)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1733458\8

**TAB 4**

77

Court File No.: 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 16th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF SEPTEMBER, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

### APPROVAL AND VESTING ORDER
### (Enterprise Solutions Business)

THIS MOTION, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' Notice of Motion dated September ●, 2009 including, the approval of a transaction (the "Transaction") to sell Assets and Shares (as such terms are defined in the Sale Agreement) (collectively, the "Assets") pursuant to an amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc. (collectively the "Main Sellers") and the affiliates of the Main



Sellers identified in the Sale Agreement as Other Sellers (and together with the Main Sellers, the "Sellers"), as sellers and Avaya Inc., as purchaser (the "Purchaser") was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING the affidavit of George Riedel sworn September 15, 2009 and the twentieth report of Ernst & Young Inc. in its capacity as monitor (the "Monitor") dated September 15, 2009 (the "Twentieth Report") and on hearing the submissions of counsel for the Applicant, the Monitor and those other parties present, no one appearing for any other person on the service list, although properly served as appears from the affidavit of Katie Legree sworn September 15, 2009, filed:

1.      THIS COURT ORDERS that the time for the service of the Notice of Motion, the Twentieth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof

2.      THIS COURT ORDERS AND DECLARES that the Transaction is hereby approved. The execution, delivery and performance of the Sale Agreement by the Applicants is hereby authorized and approved, and the Applicants are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Assets to the Purchaser.

3.      THIS COURT ORDERS AND DECLARES that upon the delivery of a Monitor's certificate to the Purchaser substantially in the form attached as Schedule A hereto (the "Monitor's Certificate"), all of the Applicants' right, title and interest in and to their Assets shall vest absolutely in the Purchaser or the Designated Purchaser (as such term is defined in the Sale Agreement) free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "Claims") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Orders made in these proceedings including the Order of the Honourable Justice Morawetz dated January 14, 2009 (as amended and restated); (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system; and



- 3 -

(iii) to the extent permitted by law, all Excluded Liabilities (all of which are collectively referred to as the "Encumbrances", but excluding Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of this Order) and Assumed Liabilities). For greater certainty, this Court orders that all of the Encumbrances affecting or relating to the Assets are hereby expunged and discharged as against the Assets.

4.     THIS COURT ORDERS that for the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Assets shall stand in the place and stead of the Assets, and that from and after the delivery of the Monitor's Certificate all Claims and Encumbrances shall attach to the net proceeds from the sale of the Assets with the same priority as they had with respect to the Assets immediately prior to the sale, as if the Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

5.     THIS COURT ORDERS that all proceeds of the Transaction, subject to the price adjustments and the Purchaser's rights under the Sale Agreement and less applicable or value added taxes incurred by the Sellers, shall be deposited into an escrow account pursuant to an escrow agreement to be negotiated and agreed to by all of the Sellers and in accordance with Section 12.g. of the Interim Funding and Settlement Agreement entered into on June 9, 2009 (the "IFA"), and such proceeds shall not be distributed in advance of either (i) agreement by all of the Main Sellers as to the distribution of such proceeds (in accordance with Section 12.g. of the IFA) or (ii) in the case where the Main Sellers fail to reach such agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by this Court.

6.     THIS COURT ORDERS AND DIRECTS the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

7.     THIS COURT ORDERS that, notwithstanding:

(a)     the pendency of these proceedings;



(b)     any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of any of the Applicants and any bankruptcy order issued pursuant to any such applications; and

(c)     any assignment in bankruptcy made in respect of any of the Applicants;

the provisions of the Transaction Documents and vesting of the Assets in the Purchaser or the Designated Purchaser, as the case may be pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the Applicants and shall not be void or voidable by creditors of the Applicants, nor shall it constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

8.     THIS COURT ORDERS AND DECLARES that the Transaction is exempt from the application of the *Bulk Sales Act* (Ontario).

9.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

10.     THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative



body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

DOCSTOR: 171842I\7

81

**Schedule A – Form of Monitor's Certificate**

Court File No.: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**MONITOR'S CERTIFICATE**
**(Enterprise Solutions Business)**

**RECITALS**

A.     Pursuant to an Order of the Honourable Justice Morawetz of the Ontario Superior Court of Justice (the "Court") dated January 14, 2009 (as amended and restated), Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors Arrangements Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in these proceedings.

B.     Pursuant to an Order of the Court dated September 16, 2009, the Court approved an amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc. (collectively the "Main Sellers") and the affiliates of the Main Sellers identified in the Sale Agreement as Other Sellers, as sellers (the Other Sellers and the

Main Sellers together the "Sellers") and Avaya Inc., as purchaser (the "Purchaser") and provided for the vesting in the Purchaser of the Applicants' right, title and interest in and to the Assets, which vesting is to be effective with respect to the Assets upon the delivery by the Monitor to the Purchaser of a certificate confirming (i) the payment by the Purchaser of the Purchase Price; (ii) that the conditions to Closing as set out in Article 8 of the Sale Agreement have been satisfied or waived by the Main Sellers and the Purchaser, as applicable; and (iii) the Monitor has been advised that the Transaction has been completed to the satisfaction of the Applicants.

C.      Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE MONITOR CERTIFIES the following:

1.      NNC, NNL and the Purchaser have advised the Monitor that the Purchaser has paid and [●] has received the Purchase Price payable on the Closing Date pursuant to the terms of the Sale Agreement;

2.      NNC, NNL and the Purchaser have advised the Monitor that the conditions to Closing as set out in Article 8 of the Sale Agreement have been satisfied or waived by the Applicants and the Purchaser, as applicable; and

3.      NNC, NNL and the Purchaser have advised the Monitor that the Transaction has been completed to the satisfaction of the Applicants.

This Certificate was delivered by the Monitor at _____ [TIME] on _____ 200●.


**ERNST & Young Inc. in its capacity as monitor in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity**

Per:      _____

            Name:

            Title:

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**APPROVAL AND VESTING ORDER**
**(Enterprise Solutions Business)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

**TAB 5**

DOCSTOR: 1671894243\12

84

Court File No.——————: 09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 16th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF SEPTEMBER, 2009 |

| | | |
|---|---|---|
| ~~THE HONOURABLE~~ ——— | ) | ———~~DAY, THE~~——~~DAY~~ |
| | ) | |
| ~~JUSTICE~~————— | ) | ~~OF~~——————, ~~2007~~ |

~~BETWEEN:~~

**~~PLAINTIFF~~**

~~Plaintiff~~

~~and~~

**~~DEFENDANT~~**

~~Defendant~~

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

85

2

## APPROVAL AND VESTING ORDER
### (Enterprise Solutions Business)

THIS MOTION, made by ~~[RECEIVER'S NAME] in its capacity as the Court-appointed interim receiver and receiver (the "Receiver") of the undertaking, property and assets of [DEBTOR] (the "Debtor") for an order approving the sale transaction (the "Transaction") contemplated by an agreement of purchase and sale (the "Sale Agreement") between the Receiver and [NAME OF PURCHASER] (the "Purchaser") made as of [DATE] and appended to the Report of the Receiver dated [DATE] (the "Report"), and vesting in the Purchaser the Debtor's right, title and interest in and to the assets described in the Sale Agreement (the "Purchased Assets"), was heard this day at 330 University Avenue, Toronto, Ontario.~~ Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' Notice of Motion dated September ●, 2009 including, the approval of a transaction (the "Transaction") to sell Assets and Shares (as such terms are defined in the Sale Agreement) (collectively, the "Assets") pursuant to an amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc. (collectively the "Main Sellers") and the affiliates of the Main Sellers identified in the Sale Agreement as Other Sellers (and together with the Main Sellers, the "Sellers"), as sellers and Avaya Inc., as purchaser (the "Purchaser") was heard this day at 393 University Avenue, Toronto, Ontario.

ON READING the ~~Report~~ affidavit of George Riedel sworn September 15, 2009 and the twentieth report of Ernst & Young Inc. in its capacity as monitor (the "Monitor") dated September 15, 2009 (the "Twentieth Report") and on hearing the submissions of counsel for the ~~Receiver, [NAMES OF OTHER PARTIES APPEARING]~~ Applicant, the Monitor and those other parties present, no one appearing for any other person on the service list, although properly

served as appears from the affidavit of [NAME]Katie Legree sworn [DATE]September 15, 2009, filed[1]:

1.     THIS COURT ORDERS that the time for the service of the Notice of Motion, the Twentieth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof

2.     THIS COURT ORDERS AND DECLARES that the Transaction is hereby approved, and that the Sale Agreement is commercially reasonable and in the best interests of the Debtor and its stakeholders. The execution, delivery and performance of the Sale Agreement by the Receiver[2] Applicants is hereby authorized and approved, and the Receiver isApplicants are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Purchased Assets to the Purchaser.

3.     2.—THIS COURT ORDERS AND DECLARES that upon the delivery of a ReceiverMonitor's certificate to the Purchaser substantially in the form attached as Schedule A hereto (the "ReceiverMonitor's Certificate"), all of the Debtor'sApplicants' right, title and interest in and to the Purchased Assets described in the Sale Agreement [and listed on Schedule B hereto][3]their Assets shall vest absolutely in the Purchaser, or the Designated Purchaser (as such term is defined in the Sale Agreement) free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or filed and whether secured, unsecured or otherwise (collectively, the "Claims"[4]) including, without limiting

---

[1] This model order assumes that the time for service does not need to be abridged. The motion seeking a vesting order should be served on all persons having an economic interest in the Purchased Assets, unless circumstances warrant a different approach.

[2] In some cases, the Debtor will be the vendor under the Sale Agreement, or otherwise actively involved in the Transaction. In those cases, care should be taken to ensure that this Order authorizes either or both of the Debtor and the Receiver to execute and deliver documents, and take other steps.

[3] To allow this Order to be free-standing (and not require reference to the Court record and/or the Sale Agreement), it may be preferable that the Purchased Assets be specifically described in a Schedule.

[4] The "Claims" being vested out may, in some cases, include ownership claims, where ownership is disputed and the dispute is brought to the attention of the Court. Such ownership claims would, in that case, still continue as against the net proceeds from the sale of the claimed asset. Similarly, other rights, titles or interests could also be vested out, if the Court is advised what rights are being affected, and the appropriate persons are served. It is the Subcommittee's view that a non-specific vesting out of "rights, titles and interests" is vague and therefore undesirable.

the generality of the foregoing: (i) any encumbrances or charges created by the ~~Orders made in these proceedings including the~~ Order of the Honourable Justice ~~[NAME]~~Morawetz dated ~~[DATE]~~January 14, 2009 (as amended and restated); (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system; and (iii) ~~those Claims listed on Schedule C hereto~~to the extent permitted by law, all Excluded Liabilities (all of which are collectively referred to as the "Encumbrances", ~~which term shall not include the permitted encumbrances, easements and restrictive covenants listed on Schedule D) and, for~~but excluding Permitted Encumbrances (other than those specifically contemplated to be discharged by virtue of this Order) and Assumed Liabilities. For greater certainty, this Court orders that all of the Encumbrances affecting or relating to the ~~Purchased~~ Assets are hereby expunged and discharged as against the ~~Purchased~~ Assets.

~~3.      THIS COURT ORDERS that upon the registration in the Land Registry Office for the [Registry Division of {LOCATION} of a Transfer/Deed of Land in the form prescribed by the Land Registration Reform Act duly executed by the Receiver][Land Titles Division of {LOCATION} of an Application for Vesting Order in the form prescribed by the Land Titles Act and/or the Land Registration Reform Act][5], the Land Registrar is hereby directed to enter the Purchaser as the owner of the subject real property identified in Schedule B hereto (the "Real Property") in fee simple, and is hereby directed to delete and expunge from title to the Real Property all of the Claims listed in Schedule C hereto.~~

4.      THIS COURT ORDERS that for the purposes of determining the nature and priority of Claims, the net proceeds[6] from the sale of the ~~Purchased~~ Assets shall stand in the place and stead of the ~~Purchased~~ Assets, and that from and after the delivery of the ~~Receiver~~Monitor's Certificate all Claims and Encumbrances shall attach to the net proceeds from the sale of the ~~Purchased~~ Assets with the same priority as they had with respect to the ~~Purchased~~ Assets immediately prior

---

[5] ~~Elect the language appropriate to the land registry system (Registry vs. Land Titles).~~
[6] ~~The Report should identify the disposition costs and any other costs which should be paid from the gross sale proceeds, to arrive at "net proceeds".~~

5

to the sale[7], as if the ~~Purchased~~ Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

5.    THIS COURT ORDERS <u>that all proceeds of the Transaction, subject to the price adjustments and the Purchaser's rights under the Sale Agreement and less applicable or value added taxes incurred by the Sellers, shall be deposited into an escrow account pursuant to an escrow agreement to be negotiated and agreed to by all of the Sellers and in accordance with Section 12.g. of the Interim Funding and Settlement Agreement entered into on June 9, 2009 (the "IFA"), and such proceeds shall not be distributed in advance of either (i) agreement by all of the Main Sellers as to the distribution of such proceeds (in accordance with Section 12.g. of the IFA) or (ii) in the case where the Main Sellers fail to reach such agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by this Court.</u>

6.    <u>THIS COURT ORDERS</u> AND DIRECTS the ~~Receiver~~ <u>Monitor</u> to file with the Court a copy of the ~~Receiver~~ <u>Monitor</u>'s Certificate, forthwith after delivery thereof.

~~6.    THIS COURT ORDERS that, pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Receiver is authorized and permitted to disclose and transfer to the Purchaser all human resources and payroll information in the Company's records pertaining to the Debtor's past and current employees, including personal information of those employees listed on Schedule "●" to the Sale Agreement. The Purchaser shall maintain and protect the privacy of such information and shall be entitled to use the personal information provided to it in a manner which is in all material respects identical to the prior use of such information by the Debtor.~~

7.    THIS COURT ORDERS that, notwithstanding:

    (a)    the pendency of these proceedings;

---

[7] ~~This provision crystallizes the date as of which the Claims will be determined. If a sale occurs early in the insolvency process, or potentially secured claimants may not have had the time or the ability to register or perfect proper claims prior to the sale, this provision may not be appropriate, and should be amended to remove this crystallization concept.~~

(b)     any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of ~~any of~~ the ~~Debtor~~Applicants and any bankruptcy order issued pursuant to any such applications; and

(c)     any assignment in bankruptcy made in respect of ~~any of~~ the ~~Debtor~~Applicants;

the provisions of the Transaction Documents and vesting of the ~~Purchased~~ Assets in the Purchaser or the Designated Purchaser, as the case may be pursuant to this Order shall be binding on any trustee in bankruptcy that may be appointed in respect of the ~~Debtor~~Applicants and shall not be void or voidable by creditors of the ~~Debtor~~Applicants, nor shall it constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall it constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.[8]

8.     THIS COURT ORDERS AND DECLARES that the Transaction is exempt from the application of the *Bulk Sales Act* (Ontario).

9.     THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada ~~or in~~ the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the ~~Receiver and its~~Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the ~~Receiver~~Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the ~~Receiver and its~~Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

---

[8] ~~Please note that an appeal is pending before the Ontario Court of Appeal (Impact Tool & Mould Inc. (Re), Court of Appeal file no. C47464), in which the appellant has challenged whether the Court can make the type of declaratory relief set out in this paragraph.~~

DOCSTOR: 1621894273\17

90

7

10.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

DOCSTOR: 1671891275_1#2

91

**Schedule A – Form of ~~Receiver~~Monitor's Certificate**

Court File No.~~——————~~: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

~~B E T W E E N:~~

**~~PLAINTIFF~~**

~~Plaintiff~~

~~– and –~~

**~~DEFENDANT~~**

~~Defendant~~

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### ~~RECEIVER~~MONITOR'S CERTIFICATE
### (Enterprise Solutions Business)

## RECITALS

A.     Pursuant to an Order of the Honourable ~~[NAME OF JUDGE]~~Justice Morawetz of the Ontario Superior Court of Justice (the "Court") dated ~~[DATE OF ORDER], [NAME OF RECEIVER] was~~

DOCSTOR: 1671893\5 1\F

-2-

~~appointed as the interim receiver and receiver (the "Receiver") of the undertaking, property and assets~~ ~~of [DEBTOR] (the "Debtor")~~January 14, 2009 (as amended and restated). Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors Arrangements Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in these proceedings.

B.      Pursuant to an Order of the Court dated ~~[DATE]~~September 16, 2009, the Court approved ~~the~~ ~~agreement of purchase and sale made as of [DATE OF AGREEMENT] (the "Sale Agreement")~~ ~~between the Receiver [Debtor] and [NAME OF PURCHASER] (the "Purchaser"~~an amended and restated asset and share sale agreement dated as of September 14, 2009 (the "Sale Agreement") among NNC, NNL, Nortel Networks Inc. (collectively the "Main Sellers") and the affiliates of the Main Sellers identified in the Sale Agreement as Other Sellers, as sellers (the Other Sellers and the Main Sellers together the "Sellers") and Avaya Inc., as purchaser (the "Purchaser") and provided for the vesting in the Purchaser of the ~~Debtor's~~Applicants' right, title and interest in and to the ~~Purchased~~ Assets, which vesting is to be effective with respect to the ~~Purchased~~ Assets upon the delivery by the ~~Receiver~~Monitor to the Purchaser of a certificate confirming (i) the payment by the Purchaser of the Purchase Price ~~for the Purchased Assets~~; (ii) that the conditions to Closing as set out in ~~section ●~~Article 8 of the Sale Agreement have been satisfied or waived by the ~~Receiver~~Main Sellers and the Purchaser, as applicable; and (iii) the Monitor has been advised that the Transaction has been completed to the satisfaction of the ~~Receiver~~Applicants.

C.      Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE ~~RECEIVER~~MONITOR CERTIFIES the following:

1.      ~~The~~NNC, NNL and the Purchaser have advised the Monitor that the Purchaser has paid and ~~the~~ ~~Receiver~~[●] has received the Purchase Price ~~for the Purchased Assets~~ payable on the Closing Date pursuant to the terms of the Sale Agreement;

2.      ~~The~~NNC, NNL and the Purchaser have advised the Monitor that the conditions to Closing as set out in ~~section ●~~Article 8 of the Sale Agreement have been satisfied or waived by the ~~Receiver~~Applicants and the Purchaser, as applicable; and

DOCSTOR: 1671892 2751412

93

-2-

3.    ~~The~~NNC, NNL and the Purchaser have advised the Monitor that the Transaction has been completed to the satisfaction of the ~~Receiver~~Applicants.

4.    This Certificate was delivered by the ~~Receiver~~Monitor at _____ [TIME] on _____ ~~[DATE]~~200●.

> **~~[NAME OF RECEIVER],~~ERNST & Young Inc.** in its capacity as ~~Receiver of the undertaking, property and assets of [DEBTOR],~~monitor  in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity

> Per:    _____
>
>        Name:
>        Title:

~~Schedule B - Purchased Assets~~

~~Schedule C - Claims to be deleted and expunged from title to Real Property~~

94

DOCSTOR: 1671892-75\1\2

-2-

### Schedule D—Permitted Encumbrances, Easements and Restrictive Covenants related to the Real Property

### (unaffected by the Vesting Order)

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**MOTION RECORD**
**Approval and Vesting Order**
**Enterprise Solutions Business**
**(returnable September 16, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants