**<u>Exhibit C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

|  |  |  |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
|  | : | **Hearing: September 16, 2009 at 1:30 p.m. (ET)** |
|  | : | **RE: D.I. 1141** |

------------------------------------------------------------X

## DEBTORS' REPLY TO THE LIMITED OBJECTION TO
## THE DEBTORS' SALE OF ITS EQUITY INTEREST IN DIAMONDWARE, LTD.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby file this reply (the "Reply") to the objection of Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts, William Weidner, and Price Paschall (collectively, the "Objectors") to the proposed sale of NNI's equity interests in DiamondWare, Ltd. ("DiamondWare").

### Preliminary Statement

1.      The Objectors summarily assert that the Stock Purchase Agreement (the "SPA") and the Non-Compete & Retention Bonus Agreements (the "Non-Compete Agreements") are executory contracts that must be assumed and assigned as part of any sale of the Debtors' equity interests in DiamondWare.  However, this argument is fundamentally flawed in two key respects.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2.     *First*, the transaction structure proposed by the Debtors contemplates a sale of NNI's equity interests in DiamondWare.  It does not contemplate the assumption and assignment of any executory contracts between NNI and either DiamondWare or any of the Objectors.  As such, the Objectors' argument that "[a]ny attempt to assign the equity interests in DiamondWare without also assuming and assigning the SPA Agreement and the Non-Compete Agreements would constitute such a prohibited assumption in part and rejection in part" (Obj. at ¶ 10) has no application to the relief sought by the Debtors.  There is simply no connection between the agreement pursuant to which NNI acquired its equity interests in DiamondWare and the sale of such equity interests to Avaya.  NNI owns the DiamondWare equity and is free to sell it.  In the event that NNI fails to perform any obligations owed to the Objectors, the Objectors will have a claim against NNI.  As such, the Objection must fail.  There is no logical legal connection between the concepts of assuming in part and rejecting in part and the sale of an existing equity interest.

3.     *Second*, even assuming that a legal connection did exist between these two concepts, the Objectors do not provide proper support for the proposition that the SPA and the Non-Compete Agreements constitute executory contracts.  The Objectors simply state that it is "obvious" from the provisions of the agreements that significant types of performances remain due from all parties under both agreements (Obj. at ¶ 10).  To the contrary, the SPA and the Non-Compete Agreements are not executory contracts because no material performance remains due from the non-debtor parties under either of the agreements.  Accordingly, the Debtors need not assume and assign any agreements with DiamondWare in order to transfer their stock to the purchaser of their Enterprise Solutions Business.

**Argument**

A.    **The Objectors Fail to Demonstrate That "Material" Performance Remains Due Under the Agreements.**

4.    The Objectors rely upon the Countryman definition of an executory contract, but only build their analysis around part of the definition.  (Obj. at ¶ 10).  Although they mention that Countryman's definition of an executory contract "generally includes contracts on which performance remains due to some extent on both side," they neglect to mention the requirement that such performance must constitute a material breach excusing performance by the other side. The full Countryman definition of an executory contract is as follows:  "A contract under which the obligation of both the bankrupt and the other party are so far underperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other."  Countryman, *Executory Contracts in Bankruptcy*, 57 Minn. L. Rev. 439, 446 (1973).

5.    The Third Circuit has adopted this definition in determining whether a contract is executory.  *See In re Midwest Portland Cement Co.*, 174 Fed. Appx. 34, 36 (3d Cir. 2006) ("This court has defined an executory contract for purposes of § 365 as 'a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.'") (quoting *Sharon Steel Corp. v. National Fuel Gas Distribution Corp.*, 872 F.2d 36, 39 (3d Cir.1989)); *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 239 (3d Cir.1995) ("[U]nless both parties have unperformed obligations that would constitute a material breach if not performed, the contract is not executory under § 365."); *In re General DataComm Industries, Inc.*, 407 F.3d 616, 623 (3d Cir. 2005) ("The crucial issue for determining whether the instant Benefit Plan was executory is whether the Appellees had *material* obligations that remain unperformed at the time the bankruptcy petition was filed.") (emphasis in original).

6.     The Objectors fail to allege, much less demonstrate, that failure to perform any of the obligations mentioned in their Objection would constitute a material breach excusing performance by the other party.

**B.     The SPA Is Not An Executory Contract.**

7.     The only obligations that remain under the SPA relate to (1) certain escrowed funds referenced in paragraph 2 of the Objection and (2) the three earn-out payments referenced in paragraph 3 of the Objection.  These obligations do not make the SPA an executory contract because (1) both are obligations of Nortel and there are no continuing obligations owed by the non-debtor parties to the SPA, and (2) failure to perform these obligations would not constitute a material breach excusing performance by the other party.

8.     ***The Escrowed Funds.***  Obligations regarding the escrowed funds referenced in paragraph 2 of the Objection only require performance by Nortel – no performance remains due from the non-debtor parties.  Pursuant to Section 2.4 of the SPA, Nortel withheld $825,000 from the purchase price and placed the sum into an escrow account under Nortel's control to cover any additional payments due to Nortel and any indemnification liabilities of certain of the Objectors. The SPA provides that Nortel will (i) credit and deposit interest on the escrowed funds at a rate of 3% per year and (ii) distribute all of the funds remaining in escrow to the Objectors eighteen months after the closing of the sale.  Accordingly, the obligations in Section 2.4 of the SPA cannot render the SPA executory because (i) there is no performance remaining due from the Objectors, and (ii) Objectors fail to allege (and the SPA does not provide) that disputes involving the escrowed funds are material to such an extent as to relieve either party from performing under the SPA.

9.     ***The Earn-Out Payments.***  The earn-out payment referenced in paragraph 3 of the Objection is an obligation owed by Nortel.  Pursuant to Section 2.8 of the SPA, Nortel was

4

required to pay an earn-out payment to certain of the Objectors following each of three earn-out periods in the event that certain revenue goals for DiamondWare are satisfied. The earn-out payments do not make the SPA executory because there is no performance remaining from any of the Objectors. As with the escrow payments discussed above, the Objectors do not allege (and the SPA does not provide) that disputes involving the earn-out payments are material to such an extent as to relieve either party from performing under the SPA.

**C.    The Non-Compete Agreements Are Not Executory Contracts.**

10.    Under the Non-Compete Agreements, the only "performance" due is for Nortel to pay the Objectors covered by the agreements. No "performance" is actually due by the non-debtor parties to the Non-Compete Agreements. *See In re Eyke*, 246 B.R. 550, 556 (Bank. W.D. Mich. 2000) (non-competition agreement executed in connection with sale of business was not executory because it "does not require any future 'performance' on the part of the Debtor" because "[t]he Debtor could comply with [it] even if he were dead.")[2]; *In re Drake*, 136 B.R. 325 (Bank. D. Mass. 1992) ("The Agency's obligation to pay money does not make the contract executory . . . nor does the Debtor's obligation not to compete.").

11.    "Significant authority holds that an obligation to refrain from competition does *not* render a contract executory for the purposes of § 365." *In re Andrews*, 80 F.3d 906, 912 n.14 (4th Cir. 1996) (compiling cases); *see also In re Hughes,* 166 B.R. 103, 105 (Bankr. S.D. Ohio 1994); *In re Paveglio*, 1995 WL 465339 at *5 (Bankr. M.D. Pa.1993); *In re Drake,* 136 B.R.

---

[2] The *Eyke* court further explained that:

> Despite the fact that [the debtor] need not do anything to comply with the covenant not to compete, [the debtor] contends his compliance must be personal services because it can be performed only by him. This argument sounds convincing until one realizes that [debtor] can comply with the covenant even when dead.... We conclude that compliance with a[sic] anticompetition agreement is not "services performed" because refraining from the performance of services is not the performance of services.

*Id*. at 555-56 (quoting *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 220 (9th Cir. BAP 1995)).

325, 327-28 (Bankr. D. Mass.1992); *In re Oseen,* 133 B.R. 527, 529 (Bankr. D. Idaho 1991); *In re Bluman,* 125 B.R. at 362; *In re Cutters,* 104 B.R. 886, 890 (Bankr. M.D. Tenn.1989); *In re Hawes,* 73 B.R. 584, 586 (Bankr. E.D. Wisc.1987) ("That [Debtor] remains subject to the terms of the restrictive covenant (assuming its enforceability under state law) does not make the contract executory within the meaning or intent of § 365 of the Bankruptcy Code.").

12.     Moreover, the fact that the Non-Compete Agreements provide that DiamondWare "shall, and Nortel shall cause" DiamondWare to pay certain of the Objectors retention bonuses if they continue their employment with DiamondWare (Obj. at ¶ 6) does not make the agreements executory.     Although the Non-Compete Agreements arguably impose an obligation on the Debtors to cause DiamondWare to pay bonuses to the non-debtor parties if they continue their employment with DiamondWare, the agreements places no *obligation* on the non-debtor parties to continue such employment; rather, the Non-Compete Agreements only *condition payment* of a bonus upon the non-debtor parties continuing their employment.     Any of the non-debtor parties that left DiamondWare's employ would not receive the bonus under the Non-Compete Agreements, but discontinuing their employment with DiamondWare would not result in a breach of the agreements (material or otherwise).     Continuing their employment is merely a condition to payment under the Non-Compete Agreements, not an obligation that the non-debtor parties were required to perform.

13.     The Third Circuit addressed the distinction between an "obligation to perform" versus a "condition to payment" in *Columbia Gas,* where it held that a settlement agreement between a debtor and its customers was not an executory contract. *Columbia Gas,* 50 F.3d 233. The court found that, although the agreement at issue in the case imposed obligations upon the debtor, the non-debtor parties (the debtor's customers) had no similar obligations. *See Id.* at 240-

44. Specifically, the court found that the customers only had conditions to payment. *Id*. at 242-44. Under the settlement agreement, the customers were entitled to receive a share of the settlement monies paid by the debtor only after each customer executed a release of its claims and signed a supplemental contract. *Id*. at 236. Any customer who failed to execute these documents would not receive a share of the settlement fund; however, failure of any, or even all, of the customers to execute these documents would not result in a material breach of the settlement agreement. *Id*. at 242-44. The court found that the execution of the release/supplement contract was merely a condition to payment. *Id*. Therefore, because the customers had no duty to perform, only conditions to fulfill before receiving payment, the agreement only imposed duties to perform on the debtor and was not executory within the meaning of Section 365(a).

14.     Accordingly, under well-established law, the Non-Compete Agreements are not executory contracts because no "performance" remains due on the part of the non-debtor parties.

**D.     The Non-Compete Agreements Do Not Make The SPA An Executory Contract.**

15.     Although not clear in the Objection, the Objectors appear to argue that the SPA and the Non-Compete Agreements are an integrated transaction and that, when considered in their entirety, these agreements are an executory contract because although no performance remains due from the non-debtor under the SPA, such parties have remaining obligations to perform under their Non-Compete Agreements. Even if taken as a whole, the SPA and the Non-Compete Agreements are not executory because the fact still remains that the only possible performance remaining due from the non-debtor parties under either of the agreements is the obligation to refrain from competing, which, as discussed above, courts have found is not an obligation to "perform" and is insufficient to render a contract executory.

7

16.    In addition to the cases cited above, the specific arguments raised by the Objectors have been rejected by various courts that have held that non-competition agreements included as part of a sale transaction are insufficient to render the entire transaction executory. *See, e.g., In re Paveglio*, 1995 WL 465339, *5 (Bankr. M.D. Pa. 1993) (holding that with respect to the debtors' agreement to purchase a business "the non-competition clause contained in the Agreement did not render it 'executory' for purposes of Section 365" and explaining that "[t]he rationale for this result is that an agreement not to compete in the context of a contract for sale does not rise to the level of material future performance"); *In re Leonard Bluman*, 125 B.R. 359 (Bankr. E.D.N.Y. 1991) (holding that an agreement for the sale of the debtor's insurance agency was not an "executory contract," which the trustee had to assume or reject, despite the debtor's continued obligation to abide by a covenant not to compete).

17.    Moreover, courts have found that non-competition clauses are not material to the underlying transactions. *See In re Schneeweiss*, 233 B.R. 28, 32 (Bankr. N.D.N.Y. 1998) ("An obligation to comply with a restrictive covenant, such as a covenant not to compete, does not constitute a material obligation, and a contract under which one party must refrain from competing is therefore not executory under the Countryman definition of an executory contract."); *In re Info. Technologies., Inc.*, 190 B.R. at 748-750 (citing *In re Drake*, 136 B.R. 325) ("[U]pon examining the Employment Agreement, the Court finds that [the parties'] remaining obligations of confidentiality and non-interference are vestiges of that Agreement that do not rise to a level of material future performance.").

18.    Here, the non-debtor parties' obligations under the agreements were fully performed upon the sale of stock to Nortel. A similar issue was addressed in *In re Hamilton Roe Int'l, Inc.*, 162 B.R. 590 (Bankr. M.D. Fla.1993). In *Hamilton,* the debtor sold its stock to the

plaintiff pursuant to a stock purchase agreement. *Id.* at 595-96. The bankruptcy court held that the stock purchase agreement was not an executory contract despite the existence of a mutual covenant of confidentiality and the seller's covenant not to compete. *Id.* at 596. The court construed the confidentiality provision as imposing only a unilateral obligation on the seller because in practical terms the purchaser had nothing to gain by divulging confidential information to third parties. *Id.* at 594. The debtor fully performed when it sold its stock, and any remaining duties were immaterial to that purpose. Similarly here, the obligation to not compete was for the unilateral benefit of Nortel, the breach of which would not cause a material breach of the SPA.

## Conclusion

19.    Because no performance remains due from the non-debtor parties to the SPA and the Non-Compete Agreements, the agreements are not executory contracts that can be assumed and assigned. Since the agreements are pre-petition non-executory contracts, any claims arising from them are general unsecured claims. Requiring assumption of an agreement where no obligations remain on the part of the non-debtor parties would impermissibly convert these pre-petition claims into administrative claims without any benefit to the estate. As the Third Circuit has stated:

> In cases where the nonbankrupt party has fully performed, it makes no sense to talk about assumption or rejection. At that point only a liability exists for the debtor-a simple claim held by the nonbankrupt against the estate ... and "[t]he estate has whatever benefit it can obtain from the other party's performance and the trustee's rejection would neither add to nor detract from the creditor's claim or the estate's liability." Rejection is meaningless in this context, and assumption would be of no benefit to the estate, serving only to convert the nonbankrupt's claim into a first priority expense of the estate at the expense of the other creditors.

*Columbia Gas,* 50 F.3d at 239 (citations omitted). Accordingly, the Objection should be overruled in its entirety.

9

WHEREFORE, the Debtors respectfully request that this Court approve the sale of the Debtors' equity interests in DiamondWare as part of the sale of Nortel's Enterprise Solutions Business for the reasons set forth above and in the motion requesting approval of such sale [D.I. 1131], and grant such other and further relief as the Court deems just and proper.

Dated:  September 15, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*