## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

           Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 1131, 1278**

-----------------------------------------------------------X

## ORDER AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF, AND EQUITY INTERESTS IN, DEBTORS' ENTERPRISE SOLUTIONS BUSINESS, (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND LEASES AND (C) THE ASSUMPTION AND SUBLEASE OF CERTAIN LEASES

Upon the motion, dated July 20, 2009 [D.I. 1131] (the "Motion"), of Nortel Networks

Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the

"Debtors") for orders pursuant to sections 105, 107(b)(1), 363 and 365 of chapter 11 of title 11

of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and

9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "Local Rules") (i)(a) approving the Debtors' entry into

that certain Asset and Share Sale Agreement dated as of July 20, 2009 among Nortel Networks

Corporation ("NNC"), Nortel Networks Limited ("NNL"), NNI and certain other entities

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

identified therein as sellers (the "Sellers") and Avaya Inc. as purchaser (together with its

designees, the "Purchaser") for the sale of certain assets of, and equity interests in, the Debtors'

Enterprise Solutions Business, attached hereto as Exhibit A (the "Agreement"),[2] (b) authorizing

and approving the bidding procedures (as appended to the Bidding Procedures Order (as defined

below), the "Bidding Procedures") for the sale of substantially all of the assets ("Assets") of

Nortel's Enterprise Solutions Business, (c) authorizing and approving the terms and conditions

of the Break-Up Fee and Expense Reimbursement (each as defined in the Agreement), (d)

approving the form and manner of sale notices (the "Notice Procedures"), (e) approving the

procedures as set forth below for the assumption and assignment of certain contracts and leases

and the assumption and sublease of certain leases (the "Assignment Procedures") and (f)

authorizing the Debtors to file certain documents under seal, and (g) setting the time, date and

place of a hearing to consider the sale of certain assets and equity interests relating to the

Debtors' Enterprise Solutions Business (the "Transaction") and the assumption and assignment

or assumption and sublease, as the case may be, of certain pre-petition contracts and leases of the

Debtors (the "Sale Hearing"), and (ii) authorizing and approving (a) the sale of certain assets of,

and equity interests in, the Debtors' Enterprise Solutions Business, (b) the assumption and

assignment of certain contracts and leases of the Debtors pursuant to section 365 of the

Bankruptcy Code and (c) the assumption and sublease of certain leases of the leases pursuant to

section 365 of the Bankruptcy Code; and (iii) granting them such other relief as the Court deems

just and proper; and the Court having entered an order on August 4, 2009 [D.I. 1278] (the

"Bidding Procedures Order") (i)(a) authorizing the Debtors' entry into the Agreement, (b)

---

[2]       Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the
Agreement.

authorizing and approving the Bidding Procedures, (c) authorizing and approving the terms and conditions of the Break-Up Fee and Expense Reimbursement, (d) approving the Notice Procedures, (e) approving the Assignment Procedures, (f) authorizing the Debtors to file certain documents under seal and (g) setting the time, date, and place of the Sale Hearing; and the Auction having been held from September 11, 2009 to September 15, 2009 for the consideration of Qualified Bids and the selection of a Successful Bidder (each as defined in the Bidding Procedures Order); and upon the Court's consideration of the Motion and any objections to the Motion presented to the Court and the record of the bidding procedures hearing held on August 4, 2009 and the Sale Hearing held on September 16, 2009 with respect to the Motion, including the testimony and evidence admitted at the Sale Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A.     **Jurisdiction and Venue**. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.     **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018 and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"). Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.

C.     **Notice**. As evidenced by the affidavits of service filed with this Court that notice was provided as required under the Bidding Procedures Order: (i) due, proper, timely, adequate

3

and sufficient notice of the Motion, the Sale Hearing, and the Transaction has been provided to all parties entitled thereto; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases; and (iv) no other or further notice of the Motion, the Auction, the Sale Hearing, or the Transaction is or shall be required.

D.     **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the Transaction, the Motion and the relief requested therein has been given to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Committee"), (iv) counsel for the ad hoc group of bondholders holding claims against certain of the Debtors (the "Bondholder Group"), (v) all entities known to have a claim, lien, interest or encumbrance against the Debtors' interest in the Assets, the Shares, the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases (the Debtors' interest in such property, the "Transferred Property"), (vi) all counterparties to the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases, (vii) the Monitor appointed in the cases of certain of the Sellers that have commenced proceedings under the Canadian Companies' Creditors Arrangement Act, (viii) the Administrators appointed by the English High Court of Justice in the proceedings commenced by certain of the Sellers under the U.K. Insolvency Act of 1986, (ix) the Internal Revenue Service and applicable federal and state taxing authorities, (x) the Securities and Exchange Commission, (xi) the Pension Benefit Guaranty Corporation and all regulatory authorities of the Sellers' pension plans in Canada and the United Kingdom, (xii) all

4

persons, if any, who have filed objections to the Motion, and (xiii) all persons who have filed a notice of appearance in these cases.

E.    **Auction**. The Sellers extensively marketed Nortel's Enterprise Solutions Business and the Assets related to such business. The process created by the Bidding Procedures Order provided potential bidders with a full and fair opportunity to submit bids and participate in the Auction. The Auction was conducted fairly and in good faith, without collusion and in accordance with the Bidding Procedures Order. At the Auction, Purchaser was selected as the Successful Bidder. The Debtors' determination that the Agreement constitutes the highest and best offer for the Transferred Property constitutes a valid and sound exercise of the Debtors' business judgment.

F.    **Arm's-Length Sale**. The Transaction contemplated by the Agreement, the Ancillary Agreements and this Order is being undertaken by the Sellers and the Purchaser in good faith and at arm's-length, without collusion and in good faith within the meaning of section 363(m) of the Bankruptcy Code, and such parties are entitled to the protection of section 363(m) of the Bankruptcy Code. Neither the Purchaser nor any of its Affiliates or their respective representatives is an "insider" of any of the Sellers, as that term is defined in Bankruptcy Code section 101(31). None of the Sellers, the Purchaser or their respective Affiliates or representatives has engaged in any conduct that would cause or permit the Agreement or any Ancillary Agreement to be avoided under Bankruptcy Code section 363(n) or has acted in any improper or collusive manner with any person. The terms and conditions of the Agreement, the Ancillary Agreements and the Transaction, including without limitation the consideration provided in respect thereof, is fair and reasonable and shall not be avoided under Bankruptcy Code section 363(n).

5

G.     **Good Faith Purchaser**.  The Purchaser, its Affiliates and their respective representatives have all proceeded in good faith and without collusion in all respects in connection with the Transaction and this proceeding.  Such persons are therefore entitled to all of the benefits and protections of Bankruptcy Code section 363(m).  Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction shall not affect the validity of the Transaction unless, prior to the Closing, such authorization is duly stayed pending such appeal.

H.     **Corporate Authority**.  The Debtors (i) have full corporate power and authority to execute the Agreement, the Ancillary Agreements and all other documents contemplated thereby, and, with respect to the Debtors, the Transaction has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate their obligations with respect to the Transaction, (iii) have taken all corporate action necessary to authorize and approve their entry into and performance in respect of the Agreement, the Ancillary Agreements and the Transaction, and (iv) require no consents or approvals to consummate the Transaction, other than those expressly provided for in the Agreement and the Ancillary Agreements and the entry of this Order.

I.     **Sale in Best Interests**.  Good and sufficient reasons for approval of the Agreement, the Ancillary Agreements and the Transaction have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

J.     **Business Justification**.  The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Transaction other than in the ordinary course of business under Bankruptcy Code section 363(b)

6

before, and outside of, a plan of reorganization in that, among other things, the immediate

approval by this Court of the Transaction is necessary and appropriate to maximize the value of

the Debtors' estates. Entry of an order approving the Agreement and the Ancillary Agreements,

and all the provisions thereof, is a necessary condition precedent to the Purchaser's

consummation of the Transaction.

K.    **Consideration**. The consideration to be provided by the Purchaser to the Sellers

pursuant to the Agreement will, upon delivery, constitute reasonably equivalent value or fair

consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform

Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession

thereof or the District of Columbia. The Agreement represents a fair and reasonable offer to

effectuate the terms of the Transaction under these circumstances. Other than the Purchaser, no

other person or entity or group of persons or entities has offered to purchase the Transferred

Property for an amount that would provide greater value to the Sellers. The Court's approval of

the Motion, the Agreement, the Ancillary Agreements and the Transaction is in the best interests

of the Debtors, their estates, their creditors and all other parties in interest.

L.    **Free and Clear**. The conveyance of the Transferred Property in accordance with

the Agreement and Ancillary Agreements will be a legal, valid, and effective transfer of such

Transferred Property, and vests or will vest the Purchaser with all right, title, and interest of the

Debtors in and to the Transferred Property pursuant to section 363(f) and 365 of the Bankruptcy

Code free and clear of all Liens, Claims (as defined in section 101(5) of the Bankruptcy Code),

encumbrances, obligations, liabilities, demands, guarantees, options, rights, restrictions,

contractual commitments, rights of first refusal, rights of setoff, or interests of any kind or nature

that have been, are or could be asserted against the Debtors whether known or unknown, legal or

7

equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise, (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect a setoff against or any forfeiture, modification or termination of the Debtors' interests in the Transferred Property, or any similar rights, (ii) all Excluded Liabilities, including without limitation, any liability relating to or arising from any Seller Employee Plans of the Debtors (the "Debtor Employee Plans"), except as provided in the Agreement, or any tax liability of the Debtors arising under or out of, in connection with, or in any way relating to the cancellation of debt, (iii) those arising under all mortgages, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens, judgments, demands, encumbrances, rights of first refusal or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, and (iv) those arising in connection with any agreements, acts, or failures to act, of any of the Debtors or any of the Debtors' predecessors, affiliates, or representatives including, but not limited to, Interests arising under any bulk-transfer laws, doctrines of successor liability or similar theories. For the avoidance of doubt, without limiting the effect of the foregoing, the assumption and assignment of any Assumed and Assigned Contract and the assumption and sublease of any Assumed and Subleased Real Estate Lease, whether in accordance with this Order or any other Order of this Court, are also free and clear of all Interests. Notwithstanding anything else to the contrary set forth in this paragraph L, the term "Interests" shall not include any Permitted Encumbrances, any Assumed Liabilities (as defined in the Agreement) and any Liens created by or through the Purchaser or any of its Affiliates or

8

any license that covers intellectual property included within the Transferred Property.

Furthermore, for the purposes of this Order, "Permitted Encumbrances" shall have the same

meaning as set forth in the Agreement but excluding clauses (i), (ii) and (iv) of such definition.

M.     **Free and Clear Findings Required by Purchaser**. The Purchaser represents

that it would not have entered into the Agreement and would not consummate the Transaction,

thus adversely affecting the Debtors, their estates and their creditors, if the Transferred Property

is not being conveyed to the Purchaser free and clear of all Interests of any kind or nature as set

forth in this Order, or if the Purchaser would, or in the future could, be liable for any of the

Interests.

N.     **Satisfaction of Section 363(f) Standards**. The Debtors may sell their interest in

the Transferred Property free and clear of any Interests of any kind or nature as set forth in this

Order because in each instance, one or more of the standards set forth in section 363(f)(1)-(5) of

the Bankruptcy Code has been satisfied. Each person or entity with any Interest in the

Transferred Property: (i) has, subject to the terms and conditions of this Order, consented to the

Transaction, is deemed to have consented to the Transaction, or has had its objections to the

Transaction considered and overruled by this Court; (ii) could be compelled in a legal or

equitable proceeding to accept money satisfaction of such Interest; or (iii) otherwise is subject to

the provisions of section 363(f) of the Bankruptcy Code. Those holders of Interests who did not

object to the Motion are deemed, subject to the terms of this Order, to have consented to the

relief sought in the Motion pursuant to section 363(f)(2) of the Bankruptcy Code. All holders of

Interests are adequately protected by having their Interests attach to the proceeds ultimately

attributable to the Transferred Property against or in which such Interests are asserted, subject to

the terms of such Interests, with the same validity, force and effect, and in the same order of

priority, which such Interests now have against the Transferred Property or their proceeds, subject to any rights, claims and defenses the Sellers or their estates, as applicable, may possess with respect thereto.

O.      **No Liability Findings Needed by Purchaser.** Purchaser represents that it will not consummate the Transaction unless the Agreement specifically provides, and the Court specifically orders, that none of the Purchaser Releasees (as defined below) or the Transferred Property will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability.

P.      **No Fraudulent Transfer.** The Agreement and Ancillary Agreements were not entered into for the purpose of hindering, delaying or defrauding present or future creditors of the Sellers under the Bankruptcy Code and under the laws of the United States, any state, territory, possession thereof, or the District of Columbia. Neither Sellers nor Purchaser are entering into the Transaction contemplated by the Agreement fraudulently for the purpose of such statutory and common law fraudulent conveyance and fraudulent transfer claims.

Q.      **No Successor Liability.** Except as provided under the Agreement regarding the Assumed Liabilities, the Debtors' conveyance of the Transferred Property to the Purchaser under the Agreement shall not result in the Purchaser Releasees or Transferred Property being subject to any liability or responsibility of any kind (i) for any Interest or other Excluded Liability of any of the Debtors, or (ii) for any Claim against the Debtors or any insider of the Debtors, or (iii) for the satisfaction in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, of any Interest or Excluded Liability of any of the Debtors, or (iv) to third parties or the Debtors, except as is expressly set forth in the Agreement; and, without

10

limiting the effect or scope of the foregoing, the transfer of the Transferred Property from the Debtors to the Purchaser does not and will not subject the Purchaser Releasees or their respective properties (including the Transferred Properties) to any liability or responsibility for Interests against the Debtors or the Debtors' Interests in such Transferred Property by reason of such transfer under the laws of the United States or any state, territory, possession thereof, or the District of Columbia applicable to the Transaction, including, without limitation, any bulk-transfer laws, successor liability or similar theories.

R.     **Cure/Adequate Assurance**. The assumption and assignment of the Assumed and Assigned Contracts and the assumption and the sublease of the Assumed and Subleased Real Estate Leases, all pursuant to the terms of this Order, are integral to the Agreement, do not constitute unfair discrimination, and are in the best interests of the Debtors, their estates, their creditors and all other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors. Purchaser has demonstrated adequate assurance of future performance with respect to the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases and has satisfied the requirements of the Bankruptcy Code, including, without limitation, sections 365(b)(1) and 365(f)(2)(B), to the extent applicable. Among other things, the contractual obligation to pay the Cure Amounts (as defined below) and the Purchaser's contractual obligation to perform the obligations, after the Closing, under the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases shall constitute adequate assurance of future performance.

NOW, THEREFORE, IT IS ORDERED THAT:

1.     **Motion is Granted**. The Motion and the relief requested therein is GRANTED and APPROVED, as set forth herein.

11

2.      **Objections Overruled**. Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled, or not otherwise resolved pursuant to the terms hereof, if any, hereby are denied and overruled on the merits, with prejudice.

3.      **Approval**. The Agreement and the Ancillary Agreements and all of the terms and conditions thereto as applicable to the Debtors are hereby approved. Debtors are hereby authorized to (i) execute and perform the Agreement, the Transition Services Agreement and the other Ancillary Agreements, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Agreement, *provided* that such additional documents do not materially change its terms in a manner adverse to the Debtors; (ii) consummate the Transaction in accordance with the terms and conditions of the Agreement, the Ancillary Agreements, and the other agreements contemplated thereby; (iii) assume and assign the Assumed and Assigned Contracts to Purchaser, either as of the Closing Date or such later date as contemplated by the Agreement; (iv) assume and sublease the Assumed and Subleased Real Estate Leases to Purchaser, either as of the Closing Date or such later date as contemplated by the Agreement; and (v) take all other and further actions as may be reasonably necessary to implement the Transaction.

4.      **Valid Transfer**. Upon consummation of the Closing, (i) the Transaction effects a legal, valid, enforceable and effective sale and transfer of the Debtors' interests in Transferred Property to Purchaser, and shall vest Purchaser with title to such Transferred Property free and clear of all Interests of any kind whatsoever, except as expressly provided in this Order and the Agreement, and (ii) the Agreement, the Ancillary Agreements, the Transaction and any

12

instruments contemplated thereby shall be enforceable against and binding upon, and not subject to rejection or avoidance by, the Debtors or any successor trustee appointed with respect thereto.

5.      **General Assignment**. Effective as of the Closing, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Transferred Property. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the Transaction.

6.      **Exculpation and Release**. None of the Purchaser or their affiliates, successors and assigns (collectively, the "Purchaser Releasees") shall have or incur any liability to, or be subject to any action by any Debtor or any of their predecessors, successors and assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Agreement and Ancillary Agreements and the entry into and consummation of the Transaction, except as expressly provided in the Agreement, the other Transaction Documents, and this Order.

7.      **Injunction**. Except as expressly provided in the Agreement or by this Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, vendors, suppliers, employees, trade creditors, litigation claimants and other persons, holding Interests of any kind or nature whatsoever against or in the Debtors or the Debtors' interests in the Transferred Property (whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise), including, without limitation, the nondebtor party or parties to each Assumed and Assigned Contract and to each Assumed and Subleased Real Estate

13

Lease, arising under or out of, in connection with, or in any way relating to, the Debtors, the Transferred Property, the operation of the Debtors' businesses before the Closing, before or after the Closing regarding the operation of the Debtors' businesses not subject to the Transaction, or the transfer of the Debtors' interests in the Transferred Property to the Purchaser, including, without limitation, any default existing as of the Closing Date and any objection to the assumption and assignment of the Assumed and Assigned Contracts or the assumption and sublease of the Assumed and Subleased Real Estate Leases, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing Interests against the Purchaser Releasees, the Transferred Property, or the interests of the Debtors in such Transferred Property. Following the Closing, no holder of an Interest against the Debtors shall interfere with the Purchaser's title to or use and enjoyment of the Debtors' interests in the Transferred Property based on or related to such Interests, and all such Interests, if any, shall be, and hereby are transferred and attached to the proceeds from the Transaction in the order of their priority, with the same validity, force and effect which they have against such Transferred Property as of the Closing, subject to any rights, claims and defenses that the Debtors' estates and Debtors, as applicable, may possess with respect thereto.

8.  **No Successor Liability**. No Purchaser Releasee shall, as a result of transfer, possession or operation of the Transferred Property: (i) be a successor to any of the Debtors or the Debtors' estates by reason of any theory of law or equity; (ii) have, de facto or otherwise, merged or consolidated with or into any of the Debtors or the Debtors' estates; or (iii) be a continuation or substantial continuation of any of the Debtors or any enterprise of the Debtors. Except as provided in the Agreement regarding the Assumed Liabilities, the conveyance of the Debtors' Interest in the Transferred Property to Purchaser under the Agreement shall not result in

14

(i) any Purchaser Releasee or the Transferred Property having any liability or responsibility for any Interest against any of the Debtors or against any insider of the Debtors, (ii) any Purchaser Releasee or the Transferred Property having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability, including without limitation, any liability relating to or arising from any Debtor Employee Plans, except as is expressly set forth in the Agreement, (iii) Purchaser or the Transferred Property, having any liability or responsibility to any of the Debtors except as is expressly set forth in the Agreement or (iv) successor or vicarious liabilities of any kind or character, including, but not limited to, federal, state or other tax liabilities, U.S. or foreign pension liabilities, or liabilities based on any theory of antitrust, environmental, labor law, alter ego, veil piercing, continuity of enterprise, mere continuation, product line, de facto merger or substantial continuity, whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether imposed by agreement, understanding, law, equity or otherwise with respect to any of the Debtors or any obligations of the Debtors, including, but not limited to, in the case of liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing or any taxes in connection with, or in any way relating to the cancellation of debt of the Debtors or their Affiliates.

9.   **Assumption and Assignment or Assumption and Sublease**.  Pursuant to Bankruptcy Code sections 105(a), 363 and 365, and subject to, conditioned on, and effective either as of the Closing Date or such later date as contemplated by the Agreement, the Debtors'

15

assumption and assignment to the Purchaser of the Assumed and Assigned Contracts, and the assumption and sublease to the Purchaser of the Assumed and Subleased Real Estate Leases, and the Purchaser's acceptance of such assignments and subleases on the terms set forth in the Agreement, are hereby approved. On the Closing Date or such later date as contemplated by the Agreement, the Assumed and Assigned Contracts and Assumed and Subleased Real Estate Leases, whether entered into or amended before or after the Petition Date, shall be assumed and assigned or subleased, as the case may be, to the Purchaser, free and clear of all Interests of any kind or nature whatsoever other than the Assumed Liabilities on the terms set forth in the Agreement, and shall remain in full force and effect for the benefit of the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed and Assigned Contracts (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits or conditions such assignment. Pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Assumed and Assigned Contracts following assignment to the Purchaser. Debtors are hereby authorized, at Closing or such later date as contemplated by the Agreement, to execute and perform under any other agreement executed in connection with the transfer of the Transferred Property to the Purchaser, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign to Purchaser the Assumed and Assigned Contracts or sublease to Purchaser the Assumed and Subleased Real Estate Leases.

10.     **Payment of Cure Amounts.** In accordance with the allocation of responsibility set forth in the Agreement, the Purchaser or Debtors shall be obligated to pay or cause to be paid any and all amounts accrued or otherwise owed (collectively, the "Cure Amounts") under any Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease, as soon as

16

reasonably practicable on or after Closing in the amount as to which (i) the contracting counterparty consents in writing, (ii) the counterparty is deemed to have consented, or (iii) the Court enters an order determining the Cure Amount. The Purchaser and Debtors' respective obligations to pay the Cure Amounts and the Purchaser's promise to perform the future obligations under the Assumed and Assigned Contracts and the Assumed and Subleased Real Estate Leases after the Closing shall constitute adequate assurance of future performance within the meaning of Bankruptcy Code sections 365(b)(1)(C) and 365(f)(2)(B).

11.    **Cure Amounts for Assumed and Assigned Contracts.** As set forth in the Bidding Procedures Order, the Cure Amounts with respect to each Assumed and Assigned Contract and Assumed and Subleased Real Estate Lease shall be determined in accordance with the Assignment Procedures and, upon such determination, shall constitute findings of the Court and shall be final and binding on parties to such Assumed and Assigned Contracts or Assumed and Subleased Real Estate Leases (and their successors and designees), and shall not be subject to further dispute or audit based on performance prior to the time of assumption and assignment or sublease, irrespective of the terms and conditions of such Assumed and Assigned Contracts or Assumed and Subleased Real Estate Leases. Upon assumption and assignment of Assumed and Assigned Contract or assumption and sublease of Assumed and Subleased Real Estate Lease in accordance with the Assignment Procedures, each counterparty to an Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease shall be forever barred, estopped and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the property of either of them, any default existing as of Closing; or, against the Purchaser, any counterclaim, defense, setoff or any other Interest asserted or assertable against the Debtors; and (ii) imposing or charging against the Purchaser Releasees any accelerations, assignment fees, increases or any

17

other fees as a result of the Debtors' assumption and assignments to Purchaser of the Assumed

and Assigned Contracts or assumption and sublease to Purchaser of the Assumed and Subleased

Real Estate Leases. To the extent that any counterparty failed to object to the Cure Amount with

respect to an Assumed and Assigned Contract or an Assumed and Subleased Real Estate Lease

in accordance with the Assignment Procedures, such counterparty shall be deemed to have

consented to the applicable Cure Amount, and the assignments to Purchaser of such Assumed

and Assigned Contract and the sublease to Purchaser of such Assumed and Subleased Real

Estate Lease.

12.     **Security Deposits.** The Debtors are hereby authorized to establish a depositary

account and shall deposit therein all security deposits paid by Purchaser or any Designated

Purchaser to any Debtor that is a sub-landlord under any Assumed and Subleased Real Estate

Lease. Such security deposits shall not constitute property of any Debtor's estate unless and

until applied in accordance with the applicable Assumed and Subleased Real Estate Lease, shall

be segregated from the property of each Debtor's estate, and shall not be subject to disbursement,

transfer or setoff, or other use or application by any Debtor except as set forth in the relevant

Assumed and Subleased Real Estate Lease or otherwise agreed to by the Purchaser or Designated

Purchaser.

13.     **Assignment and Transfer of Intangible Property.** The Debtors are hereby

authorized to assign and transfer to the Purchaser all of the Debtors' right, title, and interest

(including common law rights) to all of their intangible property included in the Transferred

Property, subject to the Debtors' obtaining actual or deemed Consents (defined in the

Agreement) to the extent required by applicable law.

18

14.     **Ipso Facto Clauses Ineffective.** Upon the Debtors' assignment to Purchaser of the Assumed and Assigned Contracts and the sublease to Purchaser of the Assumed and Subleased Real Estate Leases under the provisions of this Order, no default by a Debtor or Purchaser shall exist under any Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease, and no counterparty to any Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease shall be permitted to declare a default by any of the Debtors or Purchaser thereunder or otherwise take action against the Purchaser as a result of any Debtor's financial condition, bankruptcy or failure to perform any of its obligations under the relevant Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease. Any provision in an Assumed and Assigned Contract that prohibits or conditions the assignment of such Assumed and Assigned Contract (including, without limitation, the granting of a lien thereon) or allows the counterparty thereto to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon such assignment or sublease, constitutes an unenforceable anti-assignment provision that is void and of no force and effect as against the Debtors. The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease shall not be a waiver of such terms or conditions, or of the rights of the Debtors or Purchaser to enforce every term and condition of the Assumed and Assigned Contract or Assumed and Subleased Real Estate Lease.

15.     **Binding Effect of Order.** This Order shall be binding upon and shall govern the acts of all entities, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all

19

other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets. The terms and provisions of the Agreement, the Ancillary Agreements and this Order shall be binding in all respects upon the Debtors, the Debtors' estates, all creditors of (whether known or unknown) and holders of equity interests in the Debtors and the Purchaser and their respective affiliates, successors and assigns, and any third parties, notwithstanding any subsequent appointment of any trustee of any of the Debtors under any chapter of the Bankruptcy Code.

16.     **Intellectual Property License Agreement and Trademark Licensing**

**Agreement**. The Intellectual Property License Agreement and Trademark Licensing Agreement shall be binding on the Debtors, any chapter 11 trustee or chapter 7 trustee appointed in any of the bankruptcy cases of the Debtors. Further, all Intellectual Property and Trademarks licensed to Purchaser under the Intellectual Property License Agreement or Trademark Licensing Agreement shall not be sold, transferred, conveyed or assigned unless such sale, transfer, conveyance and assignment is made subject to the licenses granted to Purchaser under the Intellectual Property License Agreement or Trademark Licensing Agreement and subject to all other applicable obligations set forth in the Intellectual Property License Agreement or Trademark Licensing Agreement with respect to such Intellectual Property.

17.     **Release of Interests**. This Order (i) shall be effective as a determination that, on the Closing, all Interests of any kind or nature whatsoever existing as to the Transferred Property of the Debtors prior to the Closing have been unconditionally released and terminated as to the Transferred Property, except as otherwise provided in the Agreement and this Order, and that the conveyances described herein have been effected, and (ii) shall be binding upon and shall govern

20

the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Transferred Property of the Debtors. Upon the occurrence of the Closing, the Debtors and persons holding an Interest in the Transferred Property of the Debtors immediately prior to the Closing are authorized to execute such documents and take all other actions as may be reasonably necessary to release their Interests in the Transferred Property of the Debtors, if any, as such Interests may have been recorded or may otherwise exist.

18.     **Retention of Jurisdiction**.  This Court retains exclusive jurisdiction to interpret, construe, implement, and enforce the terms and provisions of, and to resolve any and all disputes that may arise under or in connection with this Order, all amendments thereto and any waivers and consents thereunder, including, but not limited to, retaining jurisdiction to (i) compel delivery of the Transferred Property of the Debtors to Purchaser; (ii) interpret, implement and enforce the provisions of this Order and any related order; (iii) protect Purchaser Releasees against any Interests against the Debtors or the Transferred Property of any kind or nature whatsoever, attaching to the proceeds of the Transaction, and (iv) resolve any and all disputes that may arise under or in connection with the assumption and assignment of any Assumed and Assigned Contract or the assumption and sublease of any Assumed and Subleased Real Estate Lease or under the Agreement, the Ancillary Agreements, or the Order, in all respects, and further to hear and determine any and all disputes among the Sellers, the Sellers' Affiliates, the

21

Purchaser or its Affiliates, as the case may be, that may arise in connection the Excluded Liabilities of the Debtors.

19.    **Retention of Rights By the Government**. Nothing in this Order or in the Agreement (i) releases, nullifies, or enjoins the enforcement of any liability to a governmental unit of the United States or any state or municipality of the United States under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the date of entry of this Order; or (ii) should be construed to give Purchaser any more protection against any governmental unit of the United States or any state or municipality of the United States than Purchaser is otherwise entitled to under 11 U.S.C. § 363(f). Nothing in this paragraph should be construed to create for any governmental unit any substantive right that does not otherwise exist under law.

20.    **Fees, Expenses and Other Obligations**. All obligations to be paid by the Debtors or their Affiliates to the Purchaser or to be borne by any Debtors or their Affiliates under the Agreement, the other Transaction Documents, including, but not limited to the any price adjustments under the Agreement, the Break-Up Fee and the Expense Reimbursement, shall be paid in the manner provided in the Agreement, the other Transaction Documents and the Bidding Procedures Order, and shall be immediately payable if and when any Debtor's obligation to pay or bear such amount may arise under the relevant agreement or order, without further order of this Court. Until satisfied, all such obligations shall continue to have the protections provided in the Bidding Procedures Order and this Order, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by an express agreement with Purchaser, its successors, or assigns.

22

21.     **Sale Proceeds**. All Interests in the Transferred Property of the Debtors shall
attach to any proceeds of such Transferred Property immediately upon receipt of such proceeds
by the Sellers (or any party acting on any Seller's behalf) in the order of priority, and with the
same validity, force and effect which such Interests now have against such Transferred Property,
subject to any rights, claims and defenses the Sellers, the Debtors' estates or any trustee for any
Debtor, as applicable, may possess with respect thereto, in addition to any limitations on the use
of such proceeds pursuant to any provision of this Order.

22.     **No Material Modifications**. The Agreement, the Ancillary Agreements and any
related agreements, documents or other instruments may be modified, amended or supplemented
by the parties thereto, in a writing signed by such parties, and in accordance with the terms
thereof, without further order of the Court; *provided* that any such modification, amendment or
supplement does not have a material adverse effect on the Debtors' estates and has been agreed
to between the Debtors and the Purchaser; and *provided* further that no such modifications,
amendments, or supplements may be made except following two (2) days written notice to, or
the prior consent of (i) the Committee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park,
New York, New York 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis)
and (ii) the Bondholder Group, Milbank, Tweed, Hadley & McCloy, One Chase Manhattan
Plaza, New York, New York, 10006 (Attention: Roland Hlawaty).

23.     **Subsequent Orders and Plan Provisions**. Nothing contained in any subsequent
order of this Court or any court of competent jurisdiction in these or other chapter 11 cases
(including without limitation, an order authorizing the sale of assets pursuant to sections 363,
365 or any other provision of the Bankruptcy Code or any order entered after any conversion of a
chapter 11 case of the Debtors to a case under chapter 7 of the Bankruptcy Code) or any chapter

11 plan of reorganization confirmed in any of the Debtors' bankruptcy cases or any order confirming any such plan shall nullify, alter, conflict with or derogate from the provisions of this Order, and the provisions of this Order shall survive and remain in full force and effect.

24. **Failure to Specify Provisions**. The failure specifically to include any particular provisions of the Agreement in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

25. **No Stay of Order**. Notwithstanding the provisions of Bankruptcy Rule 6004 and Bankruptcy Rule 6006 or any applicable provisions of the Local Rules, this Order shall not be stayed for ten (10) days after the entry hereof, but shall be effective and enforceable immediately upon entry. Time is of the essence in approving the Transaction, and the Debtors and the Purchaser intend to close the Transaction as soon as practicable. Any party objecting to this Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

26. **Inconsistencies with Prior Orders, Pleadings or Agreement**. To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern. To the extent there is any inconsistency between the terms of this Order and the terms of the Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

27. **Reservation of Rights Regarding Certain Contracts**. Nothing in this Order authorizes or otherwise provides for the assumption, assignment or rejection, in whole or in part, of any Objecting Party Agreement. Other than the rights and obligations between the parties to the Agreement, nothing herein or in the Agreement shall affect the rights of any party regarding

24

an Objecting Party Agreement, all of which such rights of the Objecting Parties are hereby preserved, including without limitation the right to seek, oppose or support (a) any assumption, assignment or rejection of any Objecting Party Agreement on any legal or factual basis, (b) adequate assurance of future performance, (c) the estimation or assertion of any proposed cure amount, (d) the assumption by the Purchaser of all obligations and liabilities under any Objecting Party Agreement by virtue of the assumption and assignment of the Objecting Party Agreement under Section 365 and other applicable law, including contingent, unmatured, or unliquidated claims and whether such claims arise or arose pre- or post-closing, and (e) adequate assurance for payment of such contingent, unmatured, or unliquidated claims. For the purposes of this Order, "Objecting Party Agreement" means any written contract, agreement, license or any other document that creates binding contractual obligations between an Objecting Party and one or more Debtors; "Objecting Party" means Motorola, Inc. ("Motorola"), Macro 4, Inc., Freescale Semiconductor, Inc., Intoto LLC, Oracle USA, Inc., AT&T Corp., Anixter Inc., Telstra Corporation Limited, SNMP Research International Inc., the affiliates of Verizon Communications, Inc. ("Verizon") and DiamondWare Former Shareholders and, in the case of an Objecting Party that is not an individual, such Objecting Party's respective affiliates; and "DiamondWare Former Shareholders" means Keith Weiner, Rudy Mathieu, Wendell Allen Neff, Charles Rowe, Neal Shact, Fred Scott, Jac Goudsmit, Dwayne Roberts, William Weidner and Price Paschall. Nothing in this Order or the Agreement shall prejudice, estop, bar, impair or otherwise limit in any respect any party's rights under Section 365 of the Bankruptcy Code with respect to the Objecting Party Agreements, including, without limitation, the rights set forth above in subparts (a) through (e). The Objection of Motorola to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry Into the Asset and Share Sale Agreement, (B) Authorizing and

25

Approving the Bidding Procedures, (C) Authorizing and Approving a Break-up Fee and Expense

Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and

Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal, and (G)

Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain

Assets of, and Equity Interest in, Debtors' Enterprise Solutions Business, (B) the Assumption and

Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain

Leases [D.I. 1316] (the "Motorola Objection") shall be deemed to constitute a timely and

properly served objection on the basis of the arguments set forth in the Motorola Objection to the

service of any Initial Notice (as defined in the Bidding Procedures Order) on Motorola.

28.     **Resolution of Flextronics' Objection**. The Limited Objection and Reservation

of Rights filed with this Court by Flextronics Corporation and Flextronics Telecom Systems Ltd.

(collectively, "Flextronics") on September 4, 2009 [D.I. 1435] has been resolved pursuant to the

following representations and terms:

> (i)     the Agreement and related agreements do not involve a "back to back"
> arrangement with the Purchaser, by which the Debtors would continue
> operating under the MCMSAs but stand as a mere conduit between
> Flextronics and the Purchaser under the Agreement with respect to the
> MCMSAs, where "MCMSAs" refers to the (a) the Amended and Restated
> Master Contract Manufacturing Services Agreement, dated as of June 29,
> 2004, between NNL and Flextronics Telecom Systems Ltd. and (b) the
> Master Contract Manufacturing Services Agreement, dated as of
> September 30, 2003, between NNL and Flextronics Corporation (f/k/a
> Solectron Corporation) and their ancillary agreements;

> (ii)    the MCMSAs and any of the Debtors' contractual rights thereunder as
> they relate to Enterprise Solutions Business, shall not be assigned to the
> Purchaser in connection with the Agreement (for the avoidance of doubt,
> nothing in this Order shall constitute an assumption by the Debtors of the
> MCMSAs, to the extent they are capable of assumption, and all rights and
> remedies of the Debtors, the Purchaser and Flextronics are expressly
> reserved);

(iii)    upon closing of the Transaction, the Debtors shall cease placing forecasts or purchase orders under the MCMSAs for products or services related solely to the Enterprise Solutions Business, *provided* that the Debtors shall not be prohibited from providing administrative services to Purchaser, including placing forecasts or purchase orders on behalf of the Purchaser pursuant to one or more agreements between the Purchaser and Flextronics;

(iv)    the Debtors, the Purchaser and Flextronics shall promptly begin good faith negotiations regarding a three way inventory purchase agreement as contemplated in the term sheet attached as Exhibit E to the Agreement;

(v)    the Purchaser and Flextronics shall promptly begin good faith negotiations regarding an agreement which shall apply to any purchase orders issued to Flextronics by the Purchaser (or any of its designated affiliates) in connection with and following Purchaser's acquisition of the Enterprise Solutions Business; and

(vi)    the Debtors and Flextronics shall each use commercially reasonable efforts to provide each other and to the Purchaser, no later than October 5, 2009, a list of all equipment owned by the Debtors or the affiliates of the Debtors that is in the possession of Flextronics related to the Enterprise Solutions Business. Based on these two lists, the Debtors and Flextronics shall cooperate in good faith to compile a complete list of all equipment related to the Enterprise Solutions Business that is owned by the Debtors or the affiliates of the Debtors and is in the possession of Flextronics (the "Equipment List") by 5:00 pm (EST) on October 10, 2009, and shall provide a copy of the Equipment List to the Purchaser. Upon finalization of the Equipment List, Flextronics shall provide the Debtors and the Purchaser with a list of their interests (if any) with regard to each item of equipment set forth in the Equipment List no later than October 15, 2009, or within five (5) business days of the finalization of the Equipment List and any demands of adequate protection with regards to such interests (the "Flex Interests and Adequate Protection Submission"). To the extent that the Debtors or the Purchaser have any objections regarding the Flex Interests and Adequate Protection Submission, the Debtors and/or the Purchaser shall file such objections with this Court no later than 5:00 pm (EST) on October 30, 2009 (the "Objection"). Flextronics shall serve their responsive papers to the Objection no later than 5:00 pm (EST) on November 15, 2009, and the Objection shall be heard during the scheduled November 19, 2009 omnibus hearing. Notwithstanding any of the foregoing, a decision resolving the Objection (if any) shall be entered prior to the Closing. The Debtors, Flextronics and the Purchaser reserve their rights regarding the matters set forth in this paragraph 28. The Debtors

27

> and Flextronics may, upon the written consent of Purchaser, agree to
> amend any date in this paragraph.

29.     **Assets of Non-Debtors**. This Order applies only to assets owned by the Debtors,

including, without limitation, all of the Debtors' equity interests in Nortel Government Solutions

Incorporated and DiamondWare, Ltd. Consequently, notwithstanding any other provision of this

Order or the Agreement to the contrary, the portions of this Order that approve the transfer of

assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin,

release or otherwise limit the rights of any creditor of entities transferring assets, apply only to

assets owned by the Debtors and do not apply to any assets owned by non-debtor entities, except

to the extent otherwise agreed by such creditor in writing (out of abundance of caution, the

Debtors agree that the Pension Benefit Guaranty Corporation has not agreed to permit the

transfer of any assets of such non-debtor selling entity free and clear of any liens or

encumbrances, or to modify, enjoin, release or otherwise limit its rights against any such non-

debtor selling entity, including, without limitation, Nortel Government Solutions Incorporated

and DiamondWare, Ltd. or any of their respective assets).

30.     **Reservation of Setoff Rights.** Nothing in this Order shall be deemed to waive,

release or extinguish any valid claim with respect to setoff that Verizon may have against the

Debtors.

31.     **Allocation**. The Purchaser shall deposit proceeds of the Transaction, subject to

the price adjustments and Purchaser's rights under the Agreement and less applicable or value-

added taxes incurred by the ~~Sellers~~ and the EMEA Sellers, and, to the extent agreed by the

~~Sellers~~ and the EMEA Sellers, any transaction costs, into an Escrow Account (as defined in the

Interim Funding and Settlement Agreement, dated June 9, 2009 (the "IFA"). In accordance with

this Court's order approving and authorizing the transactions contemplated by the IFA, the

Main Sellers, the other Sellers which join the agreement

28

proceeds in the Escrow Account shall not be distributed in advance of either (a) agreement of all of the Main Sellers, the other Sellers which join the Agreement and the EMEA Sellers as to the distribution of such proceeds (subject to the prior consent of the Committee and the Bondholder Group acting in good faith in accordance with Section 12.g. of the IFA) or (b) in the case where the Main Sellers, the other Sellers which join the Agreement and the EMEA Sellers fail to reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by the Court.

Dated:   Wilmington, Delaware
         September 16, 2009

HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

29