**Exhibit A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*, [1] :
: Jointly Administered
                Debtors. :
:
: **RE: D.I. _____**
:
---------------------------------------------------------------X

**ORDER AUTHORIZING AND APPROVING (I) SALE PROCEDURES,**
**(II) NOTICE PROCEDURES, AND (III) SETTING A DATE FOR SALE HEARING**

Upon the motion (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors-in-possession in the above-captioned cases (the "Debtors") for entry of orders under Bankruptcy Code sections 105 and 363, Bankruptcy Rules 2002, 6004 and 9014 and Local Rule 6004-1 (i)(a) authorizing and approving sale procedures (the "Sale Procedures") attached to the Motion as Exhibit C in connection with the proposed sale (the "Transaction" or "Sale") by the Debtors of the Assets, (b) authorizing and approving the forms of the Publication Notice, attached to the Motion as Exhibit D and Exhibit E respectively, and approving the manner of solicitation of bids and notice of the sale (collectively, the "Notice Procedures"), (c) setting the time, date and place of a hearing to consider the sale (the "Sale

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Hearing") and (ii) authorizing and approving sale of the Debtors' right, title and interest in the Next Generation Packet Core network components (the "Assets") to the successful bidder, free and clear of all liens, claims, and interests, pursuant to section 363 of the Bankruptcy Code, except as set forth in the form Transaction Agreement (the "Agreement") attached to the Motion as Exhibit F or as otherwise stated in the Transaction Agreement to be executed with the successful bidder, and (iii) granting them such other and further relief as the Court deems just and proper; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

FOUND AND DETERMINED THAT:[3]

    A.    The court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

    B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409.

    C.    Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Sale

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or, if not defined in the Motion, shall have the meanings ascribed to such terms in the Motion or, if not defined in the Motion, as defined in the Agreement.

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See. Fed. R. Bankr. P. 7052.

Procedures) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

      D.      The Debtors' proposed Notice Procedures, as set forth in the Motion, are appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale and Sale Procedures, and no other or further notice is required.

      E.      The Sale Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

      F.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

    **ORDERED, ADJUDGED AND DECREED THAT**:

1.      Those portions of the Motion seeking approval of the Sale Procedures, the Notice Procedures and setting a date for the sale hearing are GRANTED.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

<u>**The Sale Procedures**</u>

3.      The Sale Procedures attached hereto as Exhibit 1 are hereby APPROVED. Subject to the approval of the Sale Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale of the Assets pursuant to the Sale Procedures and the terms of this Order.

4.      The Sale Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets.

**Notice Procedures**

5.  The notices, in substantially the same form as annexed to the Motion as Exhibits E and F, are sufficient to provide effective notice to all interested parties of the proposed sale and Sale Procedures, pursuant to Bankruptcy Rules 2002(a)(2) and 6004, and are hereby approved.

6.  As soon as reasonably practicable after entry of this Order, the Debtors (or their agent) shall serve the Sale Procedures Notice, in substantially the form attached as Exhibit D to the Motion, by first-class mail, postage prepaid, upon (i) all taxing authorities or recording offices which have a reasonably known interest in the relief requested, (ii) the U.S. Trustee, (iii) the Monitor, (iv) counsel to the Official Committee, (v) counsel to the Bondholder Group, (vi) all federal, state, and local regulatory authorities with jurisdiction over the Debtors, (vii) all non-debtor parties to relevant contracts or leases, (viii) each of the entities that had received an invitation from the Sellers to acquire or had previously expressed an interest in acquiring the Assets; and (ix) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors also shall publish notice substantially in the form attached as Exhibit E to the Motion in The Wall Street Journal (National Edition) and The Globe & Mail (National Edition) within five (5) business days of entry of this Sale Procedures Order or as soon as practicable thereafter.

**Objection Procedures**

7.  Any party that seeks to object to the relief requested in the Motion pertaining to approval of the Sale Procedures shall file a formal objection that complies with the General Objection Procedures as set forth in the Motion.  Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the hearing on the Motion.

8. Any and all objections as contemplated by this Order must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Bankruptcy Court; and (e) be served in accordance with the Local Rules so as to be received on or before the appropriate deadline as set forth below.

9. All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### Additional Relief

10. The Court hereby schedules a Sale Hearing to be held at **October 28, 2009 at 2:00 p.m. (ET)** before the Honorable Kevin Gross, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, to consider the issuance and entry of an order, inter alia, approving the sale of the Debtors' rights, title and interests in and to the Assets free and clear of all Liens and Claims. **October 21, 2009 at 4:00 p.m. (ET)** is hereby set as the objection deadline for objections to the Sale Motion (other than the Sale Procedures and Notice Procedures which are hereby approved). To the extent that the Debtors file a motion pursuant to section 365 seeking to assume and assign any contracts in conjunction with the Sale, such motion will be heard at the Sale Hearing.

11. The Debtors shall file a Notice of Successful Bidder and the form of Transaction Agreement, no later than **October 26, 2009 at noon (ET)**. The Notice shall be served on (i) the U.S. Trustee, (ii) the counsel to the Monitor, (iii) the counsel to the Committee, (iv) the counsel to the Bondholder Group, and (v) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

12. In the event there is a conflict between this Order and the Motion or the Agreement, this Order shall control and govern.

13. Nothing in this Order or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

14. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Order.

15. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

Dated: _____, 2009
      Wilmington, Delaware

                                                     THE HONORABLE KEVIN GROSS
                                                     UNITED STATES BANKRUPTCY JUDGE

3128508.1

# **EXHIBIT 1**

(Sale Procedures)

## **SALE PROCEDURES**

Set forth below are the sale procedures to be employed with respect to the proposed sale of assets pertaining to the Next Generation Packet Core network components as set forth in the Motion and defined below.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries (collectively, the U.S. Debtors") are debtors and debtors-in-possession in chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Nortel Networks Limited ("NNL") and certain other affiliates of the U.S. Debtors have commenced proceedings under the Canadian Companies' Creditors Arrangement Act (the "Canadian Debtors").  NNI and NNL (together, the "Sellers") and their affiliated debtors have determined that a sale of the Assets (as defined below) pursuant to the competitive sale process as set forth herein is in the best interests of their estates.

The Sellers have determined that:  (A) the potential sale of the Assets contemplated by the Motion should be subject to a competitive sale process as set forth herein; (B) the eventual transfer of the U.S. Debtors' rights, title and interests in and to the Assets will be subject to approval by the Bankruptcy Court pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended; and (C) the eventual transfer of the rights, title and interests of the Canadian Debtors in and to the Assets will be subject to approval by the Ontario Superior Court of Justice (the "Canadian Court").

Sale Procedures

The Sale Procedures set forth herein describe, among other things, the assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner and timing within which bids must be submitted, and the evaluation of bids received (collectively, the "Sale Procedures").  The Sellers intend to consult with, among others, the Official Committee of Unsecured Creditors in connection with the chapter 11 cases of Nortel Networks Inc., *et al*. (Case No. 09-10138) involving the U.S. Debtors (the "Committee"), the ad hoc group of bondholders holding claims against certain of the U.S. Debtors and certain of the Canadian Debtors (the "Bondholder Group"), Ernst & Young Inc., in its capacity as the Canadian Court-appointed monitor in connection with the proceedings under the Companies' Creditors Arrangement Act (the "Monitor"), and their respective advisors, throughout the Sale Procedures.  In the event that the Sellers and any party disagree as to the interpretation or application of this sale process, except with respect to the application of the terms of any order of the Canadian Court or any requirement for approval by the Canadian Court or the Monitor, the Bankruptcy Court will have jurisdiction to hear and resolve such dispute.[4]

---

[4]  For the avoidance of doubt, this Sale Process shall not govern any disagreements among the Sellers.

### Assets To Be Sold

The Sellers are offering for sale certain of the Sellers' tangible and intangible assets pertaining to the Next Generation Packet Core network components as more fully described in the Motion (the "Assets").

### "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates, except to the extent set forth in the transaction agreement(s) with the successful bidder (collectively, the "Transaction Agreement").

### Communication with Potential Interested Parties

The Sellers will contact parties who have expressed an interest in acquiring the Assets in the last six months to invite them to participate in the sale process. The Sellers also may contact such other or additional potential interested parties to invite them to participate in the sale process. The Sellers will also entertain unsolicited requests from qualified persons to participate in the sale process.

### Participation Requirements

Unless otherwise ordered by both the Bankruptcy Court and the Canadian Court, for cause shown, or as otherwise determined by the Sellers (in consultation with the Committee, the Bondholder Group and the Monitor), in order to participate in the Sale process, each person who wishes to participate in the sale process (a "Potential Bidder") will be required to execute a confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, and which shall inure to the benefit of any purchaser of the Assets (in the event that the Potential Bidder has already entered into an otherwise satisfactory confidentiality agreement with the Sellers, it must provide a supplemental agreement that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets and waiving any of its rights under such confidentiality agreement that are in conflict with the sale process or that would otherwise prohibit disclosures regarding the Potential Bidder, or any Transaction it may enter into, to the Notice Parties) (collectively, the "Confidentiality Agreement").

A Potential Bidder who delivers a Confidentiality Agreement in accordance with the preceding paragraph and who the Sellers determine, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, is likely to submit a bid that will constitute a Qualified Bid (defined below) will be deemed a "Qualified Bidder."

### Due Diligence

As promptly as practicable after a Potential Bidder becomes a Qualified Bidder, the Sellers will provide such Qualified Bidder with a confidential information memorandum containing information in respect of the Assets, access to an electronic data room, and a form of

the Transaction Agreement (and related agreements and schedules) that is acceptable to the Sellers.  Due diligence access may include management presentations and such other matters as may be reasonably requested by a Qualified Bidder and as to which the Sellers, in their reasonable business judgment, may agree.  No additional due diligence will continue after the Bid Deadline (as defined below).  The Sellers may, in their discretion, coordinate diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations.  Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders.  The Sellers make no representation or warranty as to the information to be provided through this due diligence process or otherwise.

Bid Deadline

A Qualified Bidder who desires to make a bid will deliver written copies of its bid to the following parties (collectively, the "Notice Parties"):  (i) Nortel Networks Limited and Nortel Networks Inc., c/o Nortel Networks Limited, Attn:  Anna Ventresca, General Counsel, 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, Facsimile:  (905) 863-2057; (ii) U.S. Debtors' counsel: Cleary Gottlieb Steen & Hamilton LLP, Attn: James L. Bromley and Lisa M. Schweitzer, One Liberty Plaza, New York, New York 10006, Facsimile:  (212) 225-3999; (iii) Canadian Debtors' counsel: Ogilvy Renault LLP, Attn: Derrick C. Tay and Jennifer Stam, Royal Bank Plaza, South Tower, Suite 3800, 200 Bay Street, Toronto, Ontario, Canada, Facsimile:  (416) 216-3930; (iv) Sellers' financial advisors:  Lazard Frères & Co., Attn: Frank A. (Terry) Savage, 30 Rockefeller Plaza, New York, NY 10020, Facsimile:  (212) 332-1748; (v) counsel to the Committee:  Akin Gump Strauss Hauer & Feld LLP, Attn:  Fred S. Hodara, Stephen B. Kuhn, David H. Botter and Kenneth A. Davis, One Bryant Park, New York, New York 10036, Facsimile:  (212) 872-1002; (vi) financial advisor to the Committee: Jefferies & Company, Inc., Attn: General Counsel, Investment Banking, 520 Madison Avenue, New York, New York, Facsimile:  (212) 284-2280; (vii) counsel to the Bondholder Group:  Milbank, Tweed, Hadley & McCloy, Attn:  Roland Hlawaty, One Chase Manhattan Plaza, New York, New York, 10006, Facsimile:  (212) 822-5735; and (viii) the Monitor:  Murray A. McDonald, Ernst & Young Inc., Ernst & Young Tower, 222 Bay Street, P. O. Box 251, Toronto, ON M5K 1J7 Canada, Facsimile:  (416) 943-3300; so as to be received not later than **October 16, 2009 at 4:00 p.m. (ET)** (the "Bid Deadline") by the Sellers. The Sellers, after consultation with the Committee, the Bondholder Group and the Monitor, may extend the Bid Deadline once or successively, but they are not obligated to do so.  If the Sellers extend the Bid Deadline, they will promptly notify all Qualified Bidders and the other Notice Parties of such extension.

Qualified Bid

A bid submitted will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "Qualified Bid"):

(a)    it states that the applicable Qualified Bidder offers to purchase the Assets upon the terms and conditions substantially as set forth in the Agreement, including,

without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure or upon alternative terms and conditions that the Sellers determine, after consultation with the Committee, the Bondholders Committee and the Monitor, provide maximum value to the estates;

(b)     it states that the bidder's offer is irrevocable until the closing of the Sale;

(c)     it includes a duly authorized and executed Agreement, reflecting, if any, the Qualified Bidder's proposed amendments and modifications thereto, as well as the purchase price for the Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules to the Agreement, including a license agreement and a transaction services agreement, and/or any additional ancillary agreements required in connection with the sale of the Assets (the "Sale" or "Transaction"), with all exhibits and schedules thereto, (or term sheets that describe the material terms and provisions of such agreements) and copies of such materials marked to show those amendments and modifications to the Agreement ("Marked Agreement") and to such ancillary agreements (the "Marked Ancillary Agreements");

(d)     it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Committee, the Bondholder Group and the Monitor, to make a determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreement and the Marked Ancillary Agreements;

(e)     it is not conditioned on (i) the outcome of unperformed due diligence by the bidder and/or (ii) obtaining financing;

(f)     it fully discloses the identity of each entity that will be purchasing the Assets;

(g)     it includes an acknowledgement and representation that the bidder: (i) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith, except as expressly stated in the Marked Agreement or the Marked Ancillary Agreements; and (iv) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(h)     it includes evidence, in form and substance satisfactory to Sellers, of authorization and approval from the bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements and Marked Ancillary Agreements;

    (i) it is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, payable to the order of the Sellers (or such other party as the Sellers may determine) in an amount equal to **the greater of 5% of the Purchase Price or $1,000,000** to be dealt with in accordance with the "Good Faith Deposit" paragraph herein;

    (j) it contains full details of the proposed number of employees of the Sellers (apportioned by jurisdiction) who will be offered employment by the Qualified Bidder and any proposed measures associated with their continued employment;

    (k) it contains other information reasonably requested by the Sellers; and

    (l) it is received by the Bid Deadline.

  The Sellers will determine, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.

  The Sellers shall notify any Qualified Bidders in writing as to whether or not their bid constitutes a Qualified Bid promptly following the expiration of the Bid Deadline.

Evaluation of Competing Bids

  A Qualified Bid will be evaluated based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transaction, the proposed revisions to the relevant Transaction documents, the effect of the Transaction on the value of the ongoing businesses of the Sellers (including ongoing relationships with customers and suppliers), other factors affecting the speed and certainty of closure, the value of the Transaction, the assets included or excluded from the bid, the estimated number of in-scope employees of the Sellers (apportioned by jurisdiction) to be offered post-closing employment by the Qualified Bidder and any proposed measures associated with their continued employment, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor.  Following their review of the Qualified Bids and in consultation with their advisors, the Committee, the Bondholder Group and the Monitor, the Sellers reserve the right, in their sole discretion, to (i) negotiate the terms and conditions of one or more Qualified Bids, with or without notice to any other Qualified Bidder(s) with a view to selecting one successful bid (the "Successful Bid"), (ii) without further negotiation or notice to any Qualified Bidder, select one Qualified Bid as the Successful Bid, or (iii) reject all Qualified Bids and/or withdraw from sale, in whole or in part, any Assets.

### No Qualified Bids

If the Sellers do not receive any Qualified Bids, the Sellers reserve the right, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor, to (i) extend the deadlines set forth in the Sale Procedures without further notice, and (ii) withdraw from sale, in whole or in part, any Assets at any time and to make subsequent attempts to market the same.

### Successful Bid

To the extent that the Sellers select a Successful Bid in accordance with the "Evaluation of Competing Bids" paragraph above, the Sellers shall file a notice of the Successful Bid and the purchaser under the Successful Bid (the "Successful Bidder") with the Bankruptcy Court and seek approval from the Bankruptcy Court and the Canadian Court of the Transaction Agreement, which approval will include authorization to sell the Assets free and clear of all liens, claims and encumbrances.  The Bankruptcy Court has currently scheduled a hearing to approve the sale of the Assets for **October 28, 2009 at 2:00 p.m. (ET)**, which hearing may be adjourned, rescheduled or cancelled at the U.S. Debtors' discretion.

### Good Faith Deposits

The Good Faith Deposit of any bidder shall be retained by the Sellers until the close of the Sale and returned to any unsuccessful bidder within five (5) Business Days thereafter.  The Good Faith Deposit of the Successful Bidder will become nonrefundable upon the approval by the Bankruptcy Court and the Canadian Court of the Sale to the Successful Bidder and will be applied toward the purchase price.

### Reservation Of Rights

The Sellers reserve the right in their discretion, after consultation with the Committee, the Bondholder Group and the Monitor, to (i) impose additional terms and conditions and otherwise modify the Sale Procedures at any time; (ii) extend the deadlines set forth in the Sale Procedures without further notice; (iii) withdraw from sale any Assets at any time and make subsequent attempts to market the same; and (iv) reject all bids.