1                IN THE UNITED STATES BANKRUPTCY COURT

2                    FOR THE DISTRICT OF DELAWARE

3    IN RE:                        :
                                   : Chapter 11
4    NORTEL NETWORKS, INC., et al., :
                                   :
5                                   : Case No. 09-10138 (KG)
        Debtors.                   :
6    . . . . . . . . . . . . . . . .

7                         Wilmington, Delaware
                          September 11, 2009
8                             3:34 p.m.

9                       TRANSCRIPT OF HEARING
                   BEFORE THE HONORABLE KEVIN GROSS
10                  UNITED STATES BANKRUPTCY JUDGE

11   APPEARANCES:

12   VIA TELEPHONE:

13   For the Debtors:          Derek C. Abbott, Esquire
                               Ann C. Cordo, Esquire
14                             Morris, Nicholas, Arsht & Tunnell

15                             James Bromley, Esquire
                               Cleary, Gottlieb, Steen & Hamilton
16
     For the Unsecured         David Botter, Esquire
17   Creditors' Committee:     Abid Qureshi, Esquire
                               Akin, Gump, Strauss, Hauer & Feld
18
     For U.K.                  Edwin Haron, Esquire
19   Administrators:           Young, Conaway, Stargatt & Taylor

20                             Chris Samis, Esquire
                               Richards, Layton & Finger, P.A.
21
                               Jared  S. Hendricks, In Pro Per
22                             Jared S. Hendricks

23   For Bloomberg News:       Michael Bathon, Interested Party
                               Bloomberg News
24

25

2

| | | |
|---|---|---|
| 1 | For Ernst & Young: | Amelie Baudot, Esquire |
| | | Allen & Overy, LLP |
| 2 | For Dow Jones News | Peg Brickley, Interested Party |
| | Wires: | Dow Jones News Wires |
| 3 | | |
| | For PSAM: | Phillip E. Brown, Interested Party |
| 4 | | PSAM |
| 5 | For Monarch Alternative | Robert Burns, Esquire |
| | Capital, LP: | Monarch Alternative Capital, LP |
| 6 | | |
| | For Avaya: | David S. Elkind, Esquire |
| 7 | | Anneliese H. Pak, Esquire |
| | | Ropes & Gray, LLP |
| 8 | | |
| | For MatlinPatterson | Jennifer Feldsher, Esquire |
| 9 | Global: | Bracewell & Guiliani |
| 10 | For Tricidia Capital: | Stephen Grisanti |
| | | Tricadia Capital |
| 11 | | |
| | For the Bondholder | Thomas Kreller, Esquire |
| 12 | Group: | Patrick D. Marecki, Esquire |
| | | Milbank, Tweed, Hadley & McCloy |
| 13 | | |
| | For Verizon: | Darryl Laddin, Esquire |
| 14 | | Frank White, Esquire |
| | | Arnall, Golden & Gregory, LLP |
| 15 | | |
| | | Kathleen Miller, Esquire |
| 16 | | Smith, Katzenstein, Furlow |
| 17 | For BPGF of Ontario: | Selinda A. Melnik, Esquire |
| | | Edwards, Angell, Palmer & Dodge |
| 18 | | |
| | For AT&T: | David Rosenzweig, Esquire |
| 19 | | Fulbright & Jaworski |
| 20 | | |
| | For Court Recorder: | Jennifer Pasierb |
| 21 | | |
| | Transcription Service: | Perfect Pages Transcription, Inc. |
| 22 | | 18 Tuckerton Road |
| | | Shamong, NJ 08088 |
| 23 | | www.perfecttranscripts.com |
| | | (609) 654-8880 |
| 24 | | |
| | Proceedings recorded by electronic sound recording; | |
| 25 | transcript produced by transcription service. | |

3

1      (Call to order of the Court.)

2           THE COURT:  Good afternoon, counsel.  Judge Gross

3    here.

4           UNIDENTIFIED SPEAKER:  Good morning, Your Honor.

5    Good afternoon, Your Honor.

6           THE COURT:  Well, you're in that auction.  You don't

7    know what time it is.

8           UNIDENTIFIED SPEAKER:  I'm actually not in the

9    auction, but I should know better that it is afternoon.

10          THE COURT:  All right.

11          MR. LADDIN:  Good afternoon, Your Honor.  It's

12   Darryl Laddin and Frank White here.

13          THE COURT:  Yes.  Good afternoon, gentlemen.

14          MR. ABBOTT:  Your Honor, Derek Abbott and Jim Brown

15   with Nortel.

16          THE COURT:  Okay.

17          MR. BOTTER:  Good afternoon, Your Honor.  David

18   Botter and Abid Qureshi from Akin, Gump, for the Unsecured

19   Creditors' Committee.

20          THE COURT:  Good afternoon to you.

21          MR. ELKIND:  David Elkind, Your Honor, Ropes & Gray,

22   for Avaya.

23          THE COURT:  Yes.

24          MS. MILLER:  Good afternoon, Your Honor.  Kathleen

25   Miller on behalf of Verizon.

4

1          THE COURT:  All right.  Ms. Miller, good afternoon

2    to you.

3          MR. SAMIS:  Good afternoon, Your Honor.  Chris Samis

4    here on behalf the Official Committee of Unsecured Creditors.

5          THE COURT:  Hello, Mr. Samis.

6          MR. KRELLER:  Good afternoon, Your Honor.  Thomas

7    Kreller of Milbank, Tweed, Hadley & McCoy, appearing on behalf

8    of the Ad Hoc Bondholder Group.

9          THE COURT:  Yes.  All right.  And if anybody didn't

10   introduce him or herself and needs to speak up, just be sure

11   and do -- well, obviously, all of you should identify

12   yourselves before you speak.  And let me just start for a

13   moment here and ask how the auction is going?

14         MR. BROMLEY:  Your Honor, this is James Bromley of

15   Clearly, Gottlieb.  It is proceeding.

16         THE COURT:  Okay.

17         MR. BROMLEY:  We are -- we have two very interested

18   bidders here in New York.  It's been a long day and we -- it

19   may be a long night and weekend, but we are hoping for a very

20   successful conclusion.

21         THE COURT:  Okay.  I hope so, for everyone's sake,

22   of course.  Why don't we next turn to the matters at hand.

23   Have the parties been talking or are you still at odds with

24   one another?

25         MR. LADDIN:  Your Honor, this is Darryl Laddin on

1    behalf of the affiliates of Verizon Communications, Inc.

2              THE COURT:  Yes.

3              MR. LADDIN:  I'm afraid that we don't, at this

4    point, have an agreement on what was the subject of the Motion

5    itself.

6              THE COURT:  Okay.  Well, let me do something I don't

7    customarily do, and that is begin with a question before I've

8    heard the parties out, but perhaps we can focus this just a

9    little bit.  And my question, and it is truly a question and

10   not an argument, Mr. Laddin, is what do you hope to obtain

11   from Avaya, as far as information is concerned, that would in

12   some way be helpful to you in establishing that there is a

13   public interest in your contracts?

14             MR. LADDIN:  Your Honor, our request to take a

15   deposition of Avaya is a limited one in the sense that if

16   Avaya is not going to be a witness in support of the Debtors'

17   Motion, then we would not need to depose them.  So we are only

18   seeking to depose them to the extent that the Debtor is going

19   to call them as a witness.  And the subject upon which they

20   would be asked to testify would -- we would want to be in a

21   position to cross-examine them at a hearing if they are

22   willing to testify at all on the nature of the Verizon

23   contracts, and the ability to find or locate or service the

24   Nortel products and services that Nortel currently sells to

25   Verizon.  To the extent that they're not going to put on any

6

1   -- to the extent the Debtor is not going to call Avaya as a

2   witness in its case or on rebuttal --

3          THE COURT:  With respect to that issue, I assume.

4          MR. ELKIND:  Your Honor?

5          THE COURT:  Yes.

6          MR. ELKIND:  Your Honor, David Elkind, Ropes & Gray.

7   I'd like if I can respond?  I think you --

8          THE COURT:  Let's just make sure, for a moment, that

9   Avaya had an opportunity to complete its argument.  Are you --

10  were you finished, Mr. Elkind -- I mean, Mr. Laddin?  Had you

11  completed your statement?

12         MR. LADDIN:  I'm not sure where we left off.  There

13  was an interruption and I jumped in.  But the bottom line here

14  is that -- the question is whether the Debtors would offer

15  Avaya, in any respect, with respect to the products and

16  services that are provided by Nortel, and the compatibility of

17  any equipment or software that could be offered by Avaya or

18  anyone else if there is a rejection to replace the services

19  and equipment that are currently provided by Nortel.  And if

20  they're going to make any argument to Avaya that the timing of

21  that is different from what Verizon believes it is, which is

22  it can take up to a year or more to find substitutes and to be

23  able to go through the process of replacing the equipment and

24  the services that are all in -- that are frequently in very

25  difficult to access locations and types of products that are

7

1   in service that are very difficult to replace.

2          THE COURT:  All right.  That's helpful.  Now, Mr.

3   Elkind, now you may speak, sir.

4          MR. ELKIND:  Thank you very much, Your Honor.  Your

5   Honor, I think you hit the nail on the head.  I think this is

6   really an effort to try to put pressure by Verizon on Avaya

7   with regard to discussions about whether these contracts are

8   going to be assumed or not, and that's what this is all about.

9   And it's very clear from looking at the face of the deposition

10  notice.

11         There are very specific, just by way of background,

12  Verizon -- sorry, Avaya has advised Verizon that it has

13  problems with these contracts, and it does not intend to

14  assume them.  But there are discussions that have been ongoing

15  between the parties about the possibility of making some

16  revisions to the contracts and assuming them possibly on that

17  basis.  And those discussions have been going on between the

18  business people, and they will go on for a while.  And they

19  may result in Avaya and Verizon working out arrangements under

20  which Avaya would, you know, assume the contracts as modified,

21  it may work or it may not.  You know, we don't know -- I don't

22  know at this point.  I have not been personally involved in

23  those discussions.  But what happened was that we got a notice

24  of deposition from Mr. Laddin, and it's just crystal clear

25  that the deposition, from looking at the (indiscernible), that

8

1   what they're trying to do is put pressure on us in regard to

2   the discussions, and here's what's involved.  As Your Honor is

3   aware the sale -- the --

4          MR. LADDIN:  Can I interrupt for just one second?

5   And I apologize for interrupting.  I don't normally do this,

6   but --

7          THE COURT:  And this is you again, Mr. Laddin?

8          MR. LADDIN:  Yes.

9          THE COURT:  Okay.

10         MR. LADDIN:  Your Honor asked a specific question

11  and, therefore, I did not walk the Court through what I had to

12  say on everything else.  If -- the way I hear it now, Mr.

13  Elkind is making his argument in its entirety and he wanted to

14  do that and if the Court is fine with that, that's fine.  But

15  I don't think he's addressing the question that was asked, and

16  the statements that he was making, I do want the Court to

17  know, are simply inaccurate.

18         THE COURT:  Well, I'll -- let's let Mr. Elkind

19  finish his statement, and then I'll hear from you again, Mr.

20  Laddin, of course.

21         MR. LADDIN:  Thank you, Your Honor.

22         MR. ELKIND:  So we got a notice of deposition, and

23  as Your Honor is aware, in addition the Order that Your Honor

24  entered with regard to the bidding procedures, had very

25  specific procedures with regard to the rejection or assumption

1    of contracts.  And what that -- those procedures do is,

2    obviously, the buyer can assume or not assume or buy or not

3    buy whatever contracts the buyer wants to buy or not buy.  And

4    the Debtor then has the discretion to reject whatever

5    contracts it wishes to reject, but the procedure is very

6    clear.  The procedure is that if we decide to assume a

7    contract, we have to give notice to Verizon, and they have an

8    opportunity to object.  And likewise, if there is a rejection

9    of their contracts, they get notice and they have an

10   opportunity to object to that.  So there's ample opportunity

11   in the future when and if the decision is made, in one way or

12   the other, we don't know at this point what the decision will

13   be, for Verizon to object either to assumption or to rejection

14   of the contracts.  And it's very clear from looking at their

15   deposition notice that that's exactly, exactly what they're

16   focusing on here.

17        Among -- they asked for, I think, four or five items of

18   the witnesses who will testify in four or five areas.

19   Specifically, they want us to have witnesses who will testify

20   about reasons for not assuming the Verizon contracts.  I mean,

21   we don't even know if we're going to assume them or not at

22   this point.

23        The second thing is, what we will do with the business in

24   the future if we decide to reject.  In other words, how we're

25   going to deal with Verizon and sell them goods or services in

1    the future if the Verizon contracts, as they exist, are

2    rejected.  The compatibility of service and the compatibility

3    of equipment between our equipment and the contracts that we

4    -- equipment that's related to contracts that we may assume.

5    I mean, all of this is related to one thing, and that's

6    related to their effort to their objection, if any, that they

7    might have in the future, and that's premature now, to either

8    a decision to assume or to a decision to reject their

9    contracts.  It couldn't be clearer from looking at the face of

10   these requests.

11        Then to the extent that they're saying now that they need

12   this in relation to an objection to the sale, that's pretty

13   clearly a prefix because their objection seems to be that

14   there are important customers that they have that are going to

15   be left in the lurch if we do not assume these contracts.

16   Now, I think the Debtors have quite aptly addressed the fact

17   that the buyer can assume what it wants, and that the Debtor

18   has its rights to assume or reject as it wants, but beyond

19   that point, we don't have any knowledge about the Verizon

20   customers.  And if Verizon's objection here is, as they

21   contend it is, that they have important customers and they

22   need to be serviced, and if we don't service them, you know,

23   who will.  If that's their objection, they have all the

24   information relating to that.  We don't have the faintest idea

25   who their customers --  we don't know who their customers are

1  and they don't need our testimony to make whatever case they

2  want to try to make under the applicable legal standards in

3  that regard.

4      Now -- so, you know, I don't -- you know, I don't see,

5  first of all, I think that there's no deposition of Avaya

6  that's appropriate here, even in regard to a decision to

7  assume or reject because, you know, that's up to Avaya's

8  business judgment.

9      Second of all, we're in discussions with Verizon with

10  regard to possibly assuming these contracts.  Everybody, I

11  think, is negotiating in good faith.  That's going to take

12  some time to work out.  I don't know whether it will be days

13  or a week or what, but that may work out one way or it may

14  work out another way, and we don't know at this point.

15      Thirdly, whatever the decision is, whether the result

16  will be a decision to assume the agreements or reject it,

17  objections to the assumption or rejection, there's an

18  opportunity and a time for a hearing on that down the road.

19  They are going to be given ample notice.  The Debtor is even

20  agreed to give them 90 days notice if there is a decision not

21  to assume and to reject the Verizon contract, so this is all

22  completely premature.  There's no need for it in connection

23  with the sale hearing.  And I just would add to that, you

24  know, as far as we're concerned, we're not volunteering to be

25  witnesses for anyone on any issue but, you know, I -- you

1    know, we don't have any intention of testifying at the

2    hearing.  That's about all I can say about that.

3        To the extent it's within our prerogative, we do not

4    intend to testify.  But I think the issues are pretty

5    straightforward that Verizon wants to try to raise, we have no

6    knowledge on that.  And they can raise it, you know, without

7    us, and we have no information about it.

8        So I think for all of those reasons, their discovery

9    requests, if one looks at what they actually want to depose

10   our people on, it's completely premature and inappropriate.

11           THE COURT:  Thank you, Mr. Elkind.  Mr. Laddin.

12        (Phone connection lost.)

13           THE COURT:  Is everyone still there?

14           UNIDENTIFIED SPEAKER:  I am.

15           THE COURT:  Okay.  Mr. Elkind, Mr. Laddin, you're

16   both on and Mr. Bromley?

17           THE OPERATOR:  Your Honor, this is the operator.  We

18   did lose connection with Mr. Laddin's line.

19           THE COURT:  Oh, okay.  We ought to get him back on.

20           THE OPERATOR:  Okay.  Just one moment.  I'll try

21   dialing out to him at the number that I have for him.

22           THE COURT:  Okay.

23           THE OPERATOR:  But he did initially dial

24   (indiscernible) to connect, but if you just give me one

25   moment.

1          THE COURT:  All right.

2          THE OPERATOR:  I'll (indiscernible).

3          THE COURT:  Thank you, operator.

4       (Pause in proceedings.)

5          UNIDENTIFIED SPEAKER:  It wasn't me.

6          THE COURT:  No, I know.  Me either.  I keep my hands

7    behind my back, counsel, so that I'm not responsible for any

8    of this.

9          THE OPERATOR:  And, Your Honor, Mr. Laddin has

10   rejoined.

11         THE COURT:  Oh, thank you.  Mr. Laddin, we

12   apologize.  It -- I don't know what happened.

13         MR. LADDIN:  I don't know what happened there.  It

14   must have been a Nortel phone system.

15         THE COURT:  (Indiscernible.)  It may be.  Let me

16   just say something, and I'm -- I know you're chomping at the

17   bit to respond, but to the extent that I indicate and rule

18   that you either have the right to take the deposition or Avaya

19   will not be heard at the hearing, does that satisfy your

20   concerns as far as taking a deposition?

21         MR. LADDIN:  Yes.  If they are not going to testify

22   at the hearing, Verizon will not depose them at the -- and I

23   told counsel that we'll (indiscernible) it now and I told them

24   that in writing, and I couldn't get that commitment.  And --

25   but we stand by that.  If they're not going to testify at the

1    hearing, we won't depose them.

2          THE COURT:  Mr. Bromley.  You may have a -- I don't

3    know if you would like to be heard on that issue, but my

4    inclination is to make that ruling right now.  No deposition,

5    no testimony at the hearing.

6          MR. BROMLEY:  I think that there is a little bit

7    more to add, if I could, Your Honor?

8          THE COURT:  Yes.

9          MR. BROMLEY:  Because I do think that Mr. Laddin's

10   approach is simplistic and ignores something that he is aiming

11   to do, which is to put his own witnesses on Tuesday, Verizon

12   witnesses.  We were only informed of that yesterday.

13      As a courtesy, we've given Mr. Laddin an extension until

14   Monday to file an objection.  So as between the Debtors, who

15   are the Movants here, and Verizon, I think it's my view, that

16   we don't have a contested hearing.  I don't know what Mr.

17   Laddin's objection is going to say.  He hasn't filed it.  I

18   can infer certain things that he's going to say as a result of

19   his papers that he's submitted to date, but he doesn't have an

20   objection on file.  And I don't think it's the Debtors job to

21   try to read his client's mind or Mr. Laddin's mind.  If the

22   witnesses are going to say things at this hearing that require

23   rebuttal from witnesses, either from Nortel or Avaya, I think

24   the Debtors need to reserve the right to call those witnesses.

25   And so while I would love to say right now, I don't need to

1  call any witnesses on this issue, I don't think I can do that

2  without knowing what Mr. Laddin's objection is or what his

3  witnesses are going to say.  So if Mr. Laddin is going to

4  confirm that his witnesses -- that he's not going to put any

5  witnesses on, then I think that we can avoid the need for any

6  deposition.

7      And I think that's an important issue, and really a

8  threshold issue because I really am struggling with what we're

9  talking about for Tuesday that Mr. Laddin feels he has the

10  right to argue about with respect to his contracts.  We're

11  seeking relief under Section 363 for authorization to sell the

12  assets of the Debtors' Enterprise Solutions Business.  We have

13  set up a process and procedures that have been approved by

14  Your Honor and also approved at the joint hearing by Justice

15  Morawetz with respect to a wide range of contractual

16  assignment matters, both under U.S. law and under the law of

17  other jurisdictions.  And under U.S. law, what we have to do

18  is to provide notice of assumption.  And I would like to

19  correct a few things that counsel has said (indiscernible).

20  The buyers are assuming the contracts --

21          THE COURT:  I -- yes.  I realize that, of course.

22          MR. BROMLEY:  -- if the Debtors assumes it and then

23  assigns it --

24          THE COURT:  And it's the Debtors' business judgment.

25          MR. BROMLEY:  Right.  Exactly, Your Honor.  And

1  since we do have a hearing that will be held with respect to

2  the assumption and assignment of these contracts and everyone

3  will have the opportunity under Section 365 to argue that the

4  contracts are able to be assigned and that adequate assurance

5  of future performance is provided as required.  By the same

6  token, the contracts that we would not transfer, remain the

7  obligation of the Debtors, and we have not yet filed any

8  motion to reject that new contract, and we have not made a

9  Motion to Reject the Verizon contract.  When we do, if we do,

10  make a motion to reject the Verizon contract, it's at that

11  point in time that Mr. Laddin would have the opportunity to

12  oppose.  He would have the opportunity to joint issues and

13  make a contested matter out of that motion for rejection.  And

14  in the context of that motion for rejection, make the argument

15  that public policy is somehow implicated by voice mail phone

16  systems, rather than electrical transmission and toxic waste,

17  which are covered by a statue, which according to the law, and

18  even cited by Mr. Laddin in his objection to the bidding

19  procedures, are the only exceptions to the business judgment

20  rule, and they're not even exceptions.  They just make a

21  higher standard.

22       And what we have here is an offer on the table which,

23  frankly, is no longer on the table, right.  We had offered 90

24  days.  We had the right under the Bankruptcy Code to move

25  pursuant to the Bankruptcy Rule for Rejection and we reserve

17

1   that right at this point.  Ninety days was rejected out of

2   hand by Verizon.  The idea that the Debtors would be in a

3   situation and would have to continue to perform on

4   unprofitable contracts for a year is something that, I think,

5   is an interesting point, but not as a point for Tuesday.  A

6   point for the hearing on the rejection of these contracts, if

7   and when it is made.

8       So I find it premature to be dealing with this at this

9   point in time.  If Mr. Laddin persists in his desire and

10  insistence on putting on a witness or two that goes to the

11  contractual rejection issues on Tuesday, I feel that the

12  Debtors have no choice but to reserve their rights to call a

13  witness in rebuttal.  And it's in that vain, that we feel we

14  need to protect our rights to bring a witness from Avaya or

15  from Nortel on this issue depending on what his witnesses say.

16  But by the same token, we don't think he should have witnesses

17  on this point for Tuesday.  We don't think that they're

18  appropriate for Tuesday.  And nothing that Mr. Laddin has

19  said, in my mind, makes the issue ripe for a decision on

20  Tuesday.

21          THE COURT:  Well, let me ask this question.  If the

22  sale is approved will Nortel, and let's assume, for example,

23  that I determined later that you may reject the contract, but

24  on certain conditions, will Nortel be in a position to service

25  those contracts after the sale?  I don't think so.

18

1        MR. BROMLEY:  Well, there are, I mean, there are a

2   couple of issues, Your Honor.  One is the earliest that a sale

3   to Avaya will close is early December.

4        THE COURT:  Okay.

5        MR. BROMLEY:  We have antitrust clearance issues

6   that need to be addressed, and we are quite confident that

7   early December is the earliest.  We believe that we will be

8   able to make a decision here.  First of all, we do agree that

9   this is simply a negotiating issue between two very capable

10  parties.

11        THE COURT:  Yes.  I don't fool myself here.  I know

12  that both parties are using this for leverage.

13        MR. BROMLEY:  And we're in the middle.  We're the

14  ones who are suffering in the business world.  We don't have

15  the resources to continue in operation, as you well know.  And

16  that's why we're attempting to sell these assets, and to sell

17  them in an auction that will not only put the assets in the

18  businesses into safe hands because I think it's hard for me to

19  imagine safer hands than Avaya for all of Verizon's customers

20  to be placed in.  There are really only a handful of providers

21  in this business and Avaya is certainly one of the leading

22  ones, and our other bidder is another one.  So, you know, I

23  think what we can do as the Debtors is agree that we will

24  (indiscernible) certain file a motion for rejection, and if

25  Mr. Laddin insists that we have discovery in connection with

1    that and wants to brief the issues as it relates to the

2    concerns about national security and public health and safety,

3    I'm happy right now to set up that schedule.  But I really

4    struggle with how it relates to Tuesday.  And one thing we do

5    have, Your Honor, is an auction going on.  And Mr. Laddin has

6    taken us away from it, but one of the things that we are

7    engaged with with our purchasers is, you know, the provision

8    of services on contracts that do not move.  I can't admit, at

9    this point in time, that we would be able to, post-closing, be

10   able to service to Verizon during this, but I can say that's

11   an issue that we can bring up with our bidders.

12       I also think that it's important to note that in terms of

13   the balance of harm and the balance of resources, I find it

14   hard to believe that Verizon is incapable of finding safe

15   hands for its customers in a manner that would alter the very

16   broad business judgment efforts that it's provided to the

17   Debtors in connection with rejection of contracts.

18       So my suggestion would be that this be set for a hearing

19   at a later date, and we'll be happy to make that schedule on a

20   very expedited basis and provide for discovery in a measured

21   time frame.  And at that point, frankly, we'll have better

22   information.  We'll know who the winning bidder is.  Whether

23   the winning bidder is going to take Verizon's contracts.  And

24   whether the winning bidder, if they're not taking Verizon's

25   contracts, will agree with the Debtors to provide service for

1   some reasonable period of time post-service, post-closing, if

2   Verizon's able to demonstrate to this Court's satisfaction

3   that it is unable to transfer the service by closing.

4           THE COURT:  Well, there's one thing all of us know

5   right now, and I think this goes to your point, Mr. Bromley,

6   and it's a point well taken.  And that is, that Nortel is not

7   going to be in a position, even with a gun to its head, to

8   continue to operate and honor all of these contracts for an

9   indefinite time.  So the whole purpose of the sale, not only

10  of course, is to raise as much money as possible for Verizon,

11  but also to place these contracts in the hands of an entity

12  that will be able to fulfill certain contractual obligations.

13  And I don't know what benefit Verizon is going to obtain from,

14  you know, blowing up the sale on Tuesday.

15          MR. LADDIN:  Your Honor, I'd like -- if I could be

16  heard?

17          THE COURT:  Yes, Mr. Laddin.

18          MR. LADDIN:  You know, I've heard this talk.  They

19  say, oh, Verizon's trying to get leverage.  And frankly, you

20  know, with all due respect to my (indiscernible) in the bar,

21  (indiscernible) all Verizon has ever sought is the assumption

22  of Nortel existing contracts with Verizon.  And Avaya

23  specifically has told us that they will reject, and what is in

24  the pleadings that the Debtors filed, frankly, on what the

25  discussions have been, which was pandering to the press.  They

1  are some legitimate arguments where I can -- and what's being

2  ignored here, completely, is the objection we filed to the

3  Procedures Motion and the hearing itself on the Procedures

4  Motion.  As we made the Court very aware in our papers on the

5  Procedures Motion in an open court, we said that Verizon would

6  object to the sale itself in its entirety if the proposed

7  purchaser didn't designate the Verizon contracts for

8  assumption and assignment.  There's nothing new about that

9  position and it was reiterated in our Motion to Compel

10  (indiscernible).  We've been up front and consistent

11  concerning the nature of that objection.  And it is, in fact,

12  an intensive one.  It goes to issues of public safety,

13  security and necessity.  So it's also no surprise that Verizon

14  would call its own witnesses.

15      And Mr. Bromley's comments, as well as Mr. Elkind's

16  comments, with respect to the timing of assumption and

17  rejection, also completely ignore the deal that we've reached

18  on the assignment procedures.  The 90-day offer, so to speak,

19  to notify us, when we filed the objection to the Procedures

20  Motion, that's what Nortel came back with.  Gee, we'll give a

21  90-day notice of rejection and that -- we hope that would drop

22  their objection to procedures.  And what we said at the time

23  was, no.  Unfortunately, it won't because it will take up to a

24  year or more to transition these services or we put critical

25  governmental, major business customers at risk of losing

1    critical services, okay.  And though they are not, by the

2    way, services that Verizon can provide, essentially what Mr.

3    Bromley said on the one hand, is Verizon ought to be able to

4    provide those services, and on the other hand, they've got a

5    virtually monopoly on the service for Avaya.

6         But in any event, at the procedures hearing, we put on

7    the record that if Avaya will let Verizon know by at least 10

8    calendar days prior to Verizon's deadline to object to the

9    Sale Motion, what Verizon contracts it was going name for

10   assumption or rejection.  We also threw on the record that if

11   Avaya was not the successful bidder, we weren't going to abuse

12   commercially reasonable efforts to have the successful bidder

13   inform Verizon before the hearing whether, B, the contracts

14   would be assumed and assigned.  And put on the record that

15   Verizon would, indeed, object to any sale where the successful

16   bidder hadn't notified Verizon of intent to assume and assign.

17   And I briefly then explained that to the Court, and I think

18   the Court may recall the 911 example --

19            THE COURT:  Yes.

20            MR. LADDIN:  -- that I used.

21            THE COURT:  I do.

22            MR. LADDIN:  You know, and then we also agreed, and

23   this is not insignificant, that the Order approving the

24   bidding procedures wouldn't be res judicata or collateral

25   estoppel to any objection or defense that could be raised at

23

the sale hearing.  Now, the way the deal worked originally, we
were to get notice that the original objection deadline here
to the Sale Motion itself was September 4.  That's why there's
a number of objections from various parties that are on file.
To gain more time to comply with the agreed resolution of the
procedures objection and notify Verizon later the treatment
of their contracts, Nortel extended that objection deadline to
do it on Monday, September 14th.  That gave Nortel until early
September to advise us of Avaya's decision and through Mr.
Bromley.  Mr. Bromley complied with that, and he provided a
letter to me that advised that Avaya was providing notice it
was not designating the Verizon contracts for assumption and
assignment.  And that letter correctly stated that our
objection to the sale would be due Monday, September 14.
Nortel later, on behalf of the second bidder, provided a
notice that the second bidder would designate the Verizon
contracts for assumption and assignment.  Again, that was
consistent with the terms of our procedures resolution.

Now, with respect to, you know, the status of those
discussions with Avaya, we've had a number of conference calls
with them.  Based on those conference calls back on September
2nd, we sent them documents to review in an effort to finish
resolving this, and we thought that we'd be done by now,
frankly, long done by now.  It wasn't until two hours ago,
literally two hours ago, I'm not exaggerating, that we were

24

1    still waiting on the comments from them because once we served

2    the deposition notice, which we were very careful, they hoped

3    wouldn't be necessary.  Once we served that, like four days

4    later they decided to abruptly stop negotiating simply because

5    we served a precautionary notice of deposition.  And they shut

6    down any negotiations whatsoever until two hours ago.  Whether

7    the resolution will be reached or not, I don't know, but

8    nobody can rely on that at this point.  And we were standing

9    ready to talk, waiting to talk, and no one would talk on the

10   other side.  You know, we tried to make this process as simple

11   as possible.  We didn't seek to depose anybody before the

12   auction.  We aren't seeking to depose ten parties.

13       Your Honor, you have picked up on it very quickly with

14   respect to, you know, our ability to simply not depose Avaya

15   if they're not going to be called.  We're not trying to harass

16   anybody in -- but, you know, here if there's a possibility

17   that they're going to testify, you know, this matter is very,

18   very fact intensive.  While the Debtor would like everybody to

19   believe this was in their business judgment, unfortunately, A,

20   it's a much more heightened standard and, B, it's going to be

21   a very fact intensive decision that has to be made.

22       And I do, by the way, take issue with Mr. Bromley's

23   comment, if you have to have a statute for (indiscernible)

24   standard.  That's not what the case said.  The case is focused

25   on a public interest.  But the bottom line here is the

1   position, you know, of Verizon, which we said from day one,

2   you know, from the time we filed that procedures objection is

3   this sale puts at risk public safety, security and necessity,

4   and under those circumstances, it should not be approved.  We

5   understand that, ultimately, the Court's going to make its

6   determination one way or the other on that.  But that's got to

7   be after factual findings in a hearing that will be contested,

8   and there's no secret that Verizon's taken this position from

9   the beginning, and we're entitled to take a deposition.

10      So, you know, the bottom line is the hearing -- the

11  deposition should go forward.  We agreed to move the Avaya

12  deposition and to move the depositions of the Nortel people to

13  Monday.  Monday morning, after the -- we've advised and we're

14  happy to do it at Cleary.  At one point I was told, gee, we

15  won't allow our offices to be used for that.  We were just

16  trying to -- we were really trying to make this easy for

17  everybody.  So we're happy to do it and happy to do it at

18  Cleary.

19      I will note the Debtor has essentially made a first

20  objection to a motion, which isn't proper -- not proper before

21  the Court.  They finally sent in a deposition notice, also,

22  less than two hours before the hearing, not in compliance with

23  the rules in any way.  But, you know, I've taken that issue

24  off the table.  I've taken that issue off the table yesterday

25  when they asked to depose the Verizon witnesses, and I agreed

26

1  with them.

2       So, you know, this matter needs to go forward in an

3  orderly fashion, so that the Court has before it the facts

4  that will allow the Court to rule.  Thank you.

5            THE COURT:  Thank you, Mr. Laddin.

6            MR. BROMLEY:  Your Honor, may I respond briefly?

7            THE COURT:  Certainly, Mr. Bromley.

8            MR. BROMLEY:  And I'll try to keep it very brief

9  because I'm getting acknowledged that I'm going to be called

10 back into some of the negotiations relating to the auction.

11           THE COURT:  Yes.

12           MR. BROMLEY:  First, this is without a doubt the

13 clearest example of sandbagging I've seen in years of

14 practice.  If Mr. Laddin, telling me by his statement, that

15 the fact that we gave him additional time to object was being

16 given, you know, in a manner that would lead us to believe

17 that there was a settlement on the table, and then when he

18 tells us yesterday, for the first time, he's bring witnesses

19 that he doesn't feel that we had to take those depositions,

20 it's really --

21           MR. LADDIN:  I didn't say that.  That is not the

22 right sentence.

23           THE COURT:  All right.  Let's -- one at a time.

24           MR. BROMLEY:  I appreciate that you don't like to

25 hear that, but I let you speak and say quite a few things that

27

1   I didn't like to hear that I didn't interrupt you on, so I

2   would ask the same courtesy.

3       So that's number one.  Number two, we had a procedure

4   that was put in -- well, a hearing that was put in place and

5   you mentioned, Mr. Laddin, at that hearing, things about

6   public health and safety, and I very clearly said I disagreed

7   with all of them.  So we're sitting here saying that people

8   were reserving their rights, that's very clear on the record.

9       Verizon has the ability to put all of its customers in

10  safe hands right now.  There's not a motion pending before the

11  Court asking for the rejection of any of those contracts.  And

12  I believe that what is being done here is nothing other than

13  an attempt to hold hostage this sale for one particular

14  client.  A client, of all those that are out there, that has

15  the financial wherewithal to make this issue be addressed.  We

16  are a Debtor with very limited resources.  A Debtor that has

17  decided to sell all of its assets in an orderly and in a very

18  quick process.  And Verizon is asking the Court to hold all of

19  that on Tuesday to have a hearing about the standards or

20  rejections of executory contracts without having given the

21  parties who have interest in that the opportunity to brief it

22  because the objection has not even been filed, and without the

23  opportunity to take the deposition of the witnesses who are

24  going to testify to what Mr. Laddin admits, the factually

25  intensive set of facts.

28

1      I can't think of a more blatant attempt to take a

2   procedural dance and try to prejudice the Debtors in the

3   process.

4      That being said, if Mr. Laddin provides us with his

5   objection on Sunday, we'll read it.  We'll take the

6   depositions on Monday.  We'll respond with our pleadings on

7   Monday.  And we would propose going forward on this at 9:00

8   a.m. on Tuesday.  We don't believe it's appropriate, but if

9   the Court chooses to do so, we would be prepared to go on that

10  basis.

11     And we also would think that this is not something that

12  should be heard in the joint hearing.  We believe that this a

13  sideshow, and that to have the Canadian's sit still and listen

14  on TV and waste the expense that it would be taking by having

15  all of the professionals sitting there watching this from

16  Canada without any input or view, because it's a completely

17  U.S. issue, is a waste of Court resources and Debtors

18  resources because as Debtors, we can't call those

19  professionals to sit around the room.

20     So our view is it shouldn't go forward on Tuesday.  We

21  should set a reasonable schedule if it's necessary, and we'll

22  know it's necessary by Tuesday.  And if it's necessary, set a

23  reasonable schedule to take depositions and briefing things

24  appropriately.  But if the view is that we're going to go

25  forward on Tuesday, we would propose to do it in the manner

1    that the Debtors have proposed.

2              MR. ELKIND:  Your Honor

3              MR. BROMLEY:  (Indiscernible).

4              MR. ELKIND:  May I just also respond very briefly.

5    This is David Elkind.

6              THE COURT:  Yes, Mr. Elkind.

7              MR. ELKIND:  I echo the comments of counsel for the

8    Debtor and I think all he has to do is look at their

9    deposition notice and look at what they want to take

10   deposition about.  I mean, I have one request.  The reasons

11   for justifications underlying Avaya's decision not to have the

12   Debtors assume or assign the Verizon contracts.  Double

13   request, Avaya's expectations regarding the likelihood that

14   its proposed purchase will take place.  Another request, the

15   compatibility of the contractual terms and conditions of the

16   handing over, which Avaya may or will propose to sell

17   compatible equipment, etcetera, etcetera, if and after the

18   Debtors reject Verizon's CP contracts.  Another request, the

19   executory contracts, (indiscernible) into which Verizon's

20   purchased or -- and resold service.  Now, you know, they know

21   that information.  They don't need that from us and I don't

22   even know how much of that we have.  But this is all addressed

23   to a decision to assume or reject or buy or not to buy.  It's

24   all for a later time, and it may be all resolved, and

25   hopefully will be resolved through negotiation of the parties.

1    So, you know, Mr. Laddin's going to argue about it, but

2    the time to argue about that stuff is when and if there is a

3    decision to assume or buy or when and if there is a decision

4    to reject or sell, and it's going to get tons of notice on it.

5    The Debtor offered to give them 90 days if it ends up being

6    rejected, and that's the appropriate way of handling this.

7    But, you know, all of this stuff about it being relevant to an

8    objection to the sale, is a smokescreen.  I mean, what they're

9    saying -- everything they said in their papers about the

10   grounds they want to object upon is information that they have

11   that we don't even have.  I mean, we don't know who their

12   emergency customers are and so forth and so on.  It's just a

13   -- silly.  It's patently designed to try to put, A, to put

14   pressure on us in discussions that we're having with Verizon,

15   which is a completely unnecessary way of going about it.  And

16   secondly, to drag into this sale hearing something that is

17   completely appropriate for a later determination, and well,

18   there are procedures to that.  So that's our view in a

19   nutshell.

20        MR. BOTTER:  Your Honor, David Botter, on behalf of

21   the Creditors' Committee.  I would echo both of what counsel

22   just said, as well as what Mr. Bromley said.  And I would add

23   one other thing, which is we don't know what the results of

24   this auction will be, so we don't know whether or not Avaya

25   will be the winning bidder here.  So it's just another fact

1    that counsel is (indiscernible) with us dealing with this at

2    the appropriate time, which is not now.  Ultimately, the money

3    that is being spent here, and potentially wasted here, is

4    money that is our clients' money.  And I would think that we

5    all should wait until the decisions are actually made prior to

6    going through a very expensive discovery process.

7          THE COURT:  All right.  Well, let me say this

8    because I think the parties are entitled to know what the

9    hearing is going to on Monday, so that they can prepare and

10    come to Court accordingly.  And the decision is there are

11    going to be no depositions and the Court is not going to hear

12    -- and I recognize by the way, that for record purposes,

13    Verizon may wish to make a statement and an objection, but I

14    am not going to hear evidence relating to assumption or

15    rejection of contracts where there has not -- where the

16    decision has not yet been made whether to assume or reject

17    those contracts.  But the parties should be prepared for a

18    very expedited hearing on that issue because I don't think

19    that Verizon should be, you know, in effect, left uncertain.

20    This will be a sale hearing, and the issues will be the, you

21    know, the typical issues relating to Section 363 sales.  And,

22    again, I understand that Verizon may want to make an objection

23    on the record that it shouldn't proceed under the

24    circumstances that it has discussed here today, but the

25    depositions will not be ordered and, in fact, I suppose to the

1   extent necessary, I will grant a Protective Order against a

2   deposition proceeding.  We'll come to court on Tuesday.  We'll

3   have the sale hearing, and at that time, I will consider and

4   take appropriate steps to provide an expedited hearing date on

5   the issues relating to Verizon's objection.

6          MR. ABBOTT:  Your Honor, this is Darryl Abbott, if I

7   may?

8          THE COURT:  You may.

9          MR. ABBOTT:  Your Honor, I would ask you to

10   reconsider that (indiscernible).  And let me make these

11   specific points, if I may speak?

12      Our position is that the sale itself should not be

13   approved unless those contracts are going to be assumed.  So

14   that argument, which we think is founded in the law, is

15   relevant for the Tuesday hearing, but it is also, if Your

16   Honor (indiscernible) from the Supreme Court and circuit court

17   level had indicated, it is very factually driven.  And it is

18   necessary to present that evidence.  If the Court, in order to

19   approve the sale, has got to find that the discretion of the

20   state is being exercised consistent with the public interests

21   in this kind of circumstance, and Your Honor can't make that

22   finding without having an evidentiary hearing in making

23   factual findings to that effect.  And so witnesses would be

24   necessary on both sides on that point.  And so I would ask

25   Your Honor to reconsider that, and depositions would be

1    appropriate.  And, again, you know, we didn't send document

2    requests.  We didn't send 10 notices of deposition.  These

3    were essentially two 30(b)(6)'s.  One of Nortel and one of

4    Avaya.  And only to be -- only to -- these depositions only to

5    occur in a very limited circumstance.  A, not if the second

6    bidder wins, but -- and not if Avaya wins, but decides to

7    assume.  So I do think that the law is clear here that

8    evidence is relevant and it needs to be considered by the

9    Court and; therefore, depositions are appropriate.

10           MR. BROMLEY:  Your Honor, it's Jim Bromley, and I

11   really do need to run back up to the auction, but I think

12   there's a fundamental disconnect.

13       The case law that Mr. Laddin cited in his initial

14   objection to the bidding procedures is all about assumption

15   and rejection.

16           THE COURT:  And that is not going to occur on

17   Tuesday.

18           MR. BROMLEY:  Right.  I think the issue is if there

19   is case law that says that a 363 sale cannot be approved

20   because there is a 365 issue involved in this that needs

21   subsequent decision, then I think that is the sort of case law

22   that should be cited and that would be appropriate to be

23   argued, but that is entirely a legal issue.  And if there is

24   case law that supports that proposition, and then -- and if

25   it's deemed that it's appropriate to delay the sale hearing in

34

1  order to have that issued addressed, I can see that.  But

2  there is no case law of which I am aware that says that 363

3  sale should be held up because of a business judgment issues

4  relating to a 365 assumption or rejection issue.  That is a

5  connection that has not been made.  That is a legal issue, not

6  a factual issue.  And if Mr. Laddin can find cases between now

7  and Monday, when he files his objection, he should put them

8  into his objection, and we will address them in our response.

9       THE COURT:  And if he finds those cases and they're

10  persuasive, then it may be that the sale hearing does have to

11  be postponed.

12      I want to just talk -- so I -- Mr. Laddin, I appreciate

13  your arguments, but I think that my decision and ruling are

14  well founded under the circumstances presented to me.  And I'm

15  going to deny reconsideration, and we'll proceed, as I

16  indicated, on Tuesday.  But I want to ask a question quickly,

17  and I want to get Mr. Bromley back to the auction.  Logistics

18  wise, we are scheduled to start at 9 o'clock.  I understand

19  that Justice Morawetz is not available until 10:30; is that

20  correct?

21      MR. BROMLEY:  That's our understanding, Your Honor.

22      THE COURT:  I do think it would be worthwhile if we

23  started at 9 o'clock on the Verizon issue just to hear

24  whatever objections may be made and the arguments that may be

25  made, and to complete those by 10:30 when we can proceed with

1   the joint hearing.  And I'll be in touch now with Mr. Justice

2   Morawetz just to coordinate the hearing.  So we will begin it

3   as scheduled at 9 o'clock and we will -- I'll hear whatever

4   issues need to be heard in advance of that 10:30 hearing.

5             MR. BROMLEY:  Thank you very much, Your Honor.

6             THE COURT:  All right.

7             MR. BROMLEY:  Could we have counsel for the --

8   actually, we have the Monitor here, as well as his counsel.

9   We can also circle up with them and confirm that's the case

10  here.

11            THE COURT:  All right, Mr. Bromley.  Thank you for

12  that.

13            MR. BROMLEY:  Thank you.

14            THE COURT:  And counsel, we will then stand in

15  recess until Tuesday.

16            UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

17            THE COURT:  Good evening, everyone.

18       (Court adjourned at 4:24 p.m.)

19                        CERTIFICATE

20            I certify that the foregoing is a correct transcript

21  from the electronic sound recording of the proceedings in the

22  above-entitled matter.

23

24    /s/April J. Foga                    September 28, 2009
    April J. Foga, CET, CCR, CRCR

25