## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re:* | ) | Chapter 11 |
| | ) | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | **Objection Deadline:** October 26, 2009 at 4:00 pm (ET) |
| | ) | **Hearing Date:** Scheduled only if necessary |

**SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
AUGUST 1 TO AUGUST 31, 2009
(All Amounts in Canadian Dollars)**

This is a(n): <u>x</u> monthly _____ interim _____ final application.

Name of Applicant: <u>Fraser Milner Casgrain LLP</u>

Authorized to Provide
Professional Services to: <u>Official Committee of Unsecured Creditors</u>

Date of Retention: <u>March 5, 2009 (nunc pro tunc to January 26, 2009)</u>

Period for which Compensation
And Reimbursement is sought: <u>August 1 to August 31, 2009</u>

Amount of Compensation sought as
actual, reasonable and necessary: <u>CDN $267,363.60 (Fees $254,632.00 Plus Taxes $12,731.60)</u>

Amount of Expense Reimbursement
sought as actual, reasonable and
necessary <u>CDN $8,398.43 (Expenses $7,998.50 Plus Taxes $399.93)</u>

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Sixth Monthly Fee Application was 17.10 hours and the corresponding compensation is CDN. $6,953.63 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

### SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### AUGUST 1, 2009 THROUGH AUGUST 31, 2009
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|---|---|---|---|---|---|---|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 39.6 | $775.00 | $30,690.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 16.1 | $775.00 | $12,477.50 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 13.4 | $750.00 | $10,050.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 70.9 | $750.00 | $53,175.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 6.7 | $725.00 | $4,857.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 104.3 | $725.00 | $75,617.50 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 3.6 | $700.00 | $2,520.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 24 | $675.00 | $16,200.00 |
| Paul, S.E. | Partner | Competition/Anti-Trust | Ontario - 1983 | 9.8 | $675.00 | $6,615.00 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 6.3 | $600.00 | $3,780.00 |
| Dietrich, J. | Associate | Financial Restructuring | Ontario - 2004 | 5.7 | $480.00 | $2,736.00 |
| Fox, G.W. | Strategic Policy Advisory | Government Relations |  | 2.4 | $450.00 | $1,080.00 |
| Reporter, C. | Consultant | Government Relations | Ontario - 1992 | 6.3 | $450.00 | $2,835.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 7 | $400.00 | $2,800.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 25.9 | $350.00 | $9,065.00 |
| Hetu, J. | Associate | Financial Restructuring | Ontario - 2009 | 29.6 | $295.00 | $8,732.00 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 23.7 | $295.00 | $6,991.50 |
| O'Rahilly, Tracey | Paralegal | Business Law |  | 28.2 | $175.00 | $4,935.00 |
|  |  |  |  |  | CDN. | $255,157.00 |
|  | Less Non-Working Travel Time Discount (50% of $1,050.00) |  |  |  |  | ($525.00) |
| TOTAL |  |  |  | 423.5 | CDN. | $254,632.00 |

## COMPENSATION BY PROJECT CATEGORY
## AUGUST 1, TO AUGUST 31, 2009
## (All Amounts in Canadian Dollars)

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 4.6 | $2,015.00 |
| FMC Fee Application/Monthly Billing Reports | 17.1 | $6,622.50 |
| Analysis of Other Professions Fee Applications/Rep | 0.2 | $155.00 |
| Retention of Professionals | 0.5 | $387.50 |
| Creditors Committee Meetings | 29.9 | $20,170.00 |
| Court Hearings | 41.2 | $26,301.00 |
| Financial Reports and Analysis | 3.5 | $2,670.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 0.3 | $225.00 |
| Tax Issues | 4 | $2,810.00 |
| Labour Issues/Employee Benefits | 91.1 | $47,041.50 |
| Real Estate Issues/Leases | 5.4 | $3,915.00 |
| Telecommunications/Regulatory | 13.3 | $6,580.00 |
| Asset/Stock Transaction/Business Liquidations | 78.1 | $52,319.50 |
| Travel | 1.4 | $1,050.00 |
| Intercompany Analysis | 36.6 | $27,340.00 |
| Canadian Proceedings/Matters | 93.9 | $54,617.50 |
| U.S. Proceedings/Matters | 2.4 | $937.50 |
| **Total** | **423.5** | **$255,157.00** |

## DISBURSEMENT SUMMARY
## AUGUST 1 TO AUGUST 31, 2009
### (All Amounts in Canadian Dollars)

Taxable Disbursements

| | |
|---|---|
| Accommodations | $   541.43 |
| Airfare/Travel | $1,405.09 |
| Library Computer Research | $2,070.42 |
| Long Distance Telephone Calls | $   771.68 |
| Meals & Beverages | $   397.25 |
| Photocopy Charges | $2,291.50 |
| Taxi Charges (Courier) | $   521.13 |
| | |
| Total Taxable Disbursements | $7,998.50 |
| Total GST | 399.93 |
| Total Taxable Disbursements including Taxes | **$8,398.43CDN** |

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

| | |
|---|---|
| In re | : Chapter 11 |
| | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
| | : |
| Debtors | : <u>Objection Deadline</u>: October 26, 2009 at 4:00 pm (ET) |
| | : <u>Hearing Date</u>: Scheduled only if necessary |

------------------------------------------------------------X

### SEVENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM AUGUST 1, 2009 THROUGH AUGUST 31, 2009

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its sixth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $267,363.60 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$254,632.00 for fees and CDN. $12,731.60 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $8,398.43 (CDN. $7,998.50 for expenses and CDN. $399.93 for applicable Canadian taxes) for the period from August 1 through August 31, 2009 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian Court.

5.       On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.       On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.       On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.       On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes).  On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application.

       9.      On June 24, 2009, FMC filed its Fourth Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period May 1, 2009 through May 31, 2009 (the "Fourth Monthly Application").  In its Fourth

Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.

$348,838.88 and the reimbursement of expenses in the amount of CDN. $5,605.17 .  On July 17,

2009, FMC filed a Certificate of No Objection with this Court regarding the Fourth Monthly

Application.  Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and

100% of the expenses requested in the Fourth Monthly Application.

       10.     On July 27, 2009, FMC filed its Fifth Monthly Application for Interim Allowance

of Compensation and Reimbursement of Expenses for Services Rendered During the Period June

1, 2009 through June 30, 2009 (the "Fifth Monthly Application").  In its Fifth Monthly

Application, FMC sought the award and allowance of fees in the amount of CDN. $548,943.15

and the reimbursement of expenses in the amount of CDN. $11,021.24.  On August 21, 2009,

FMC filed a Certificate of No Objection with this Court regarding the Fifth Monthly Application.

Pursuant to the Administrative Fee Order, FMC has received 80% of the fees and 100% of the

expenses requested in the Fifth Monthly Application.

       11.     On August 25, 2009, FMC filed its Sixth Monthly Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period July 1, 2009 through July 31, 2009 (the "Sixth Monthly Application").  In its Sixth

Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.

$438,179.18 and the reimbursement of expenses in the amount of CDN. $4,857.15. On

September 16, 2009, FMC filed a Certificate of No Objection with this Court regarding the Sixth

Monthly Application. As of the date hereof, FMC has not received payment in respect of the

Sixth Monthly Application.

### III.    RELIEF REQUESTED

12.    By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $267,363.60 (CDN. $254,632.00 for fees and CDN. $12,731.60 for applicable Canadian

taxes) representing 395.3 hours in professional services and 28.2 hours in paraprofessional

services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the

Compensation Period in connection with the rendition of such professional services and

paraprofessional services in the amount of CDN. $8,398.43 (including applicable Canadian

taxes).

13.    Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its

fees (CDN $213,890.88 including applicable Canadian taxes) and 100% of its expenses (CDN.

$8,398.43 including applicable Canadian taxes) relating to services rendered during the

Compensation Period.

14.    FMC has received no payment and no promises for payment from any source for

services rendered in connection with these Insolvency Proceedings. There is no agreement or

understanding between the Applicant and any other person (other than members of FMC) for the

sharing of compensation to be received for the services rendered in these cases.

15.    As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder

Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is

sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    **SUMMARY OF SERVICES RENDERED**

16.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

17.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

18.     In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

19.     FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

20.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Case Administration

(Fees: CDN. $2,015.00 plus CDN. $100.75 taxes; Hours 4.6)

21.    During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies and Capstone.

22.    FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

### Canadian Proceedings

(Fees: CDN. $54,617.50 plus CDN. $2,730.88 taxes; Hours 93.9)

23.    During the Compensation Period, FMC reviewed and analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising in the Canadian Proceeding.  FMC also reviewed and analyzed successive motions filed by the Canadian Debtors and others parties in the Canadian Proceeding, including a motion relating to the expansion of the powers of the

Monitor in the Canadian Proceeding (the "Monitor Expansion Motion"). In connection therewith, FMC, carefully analyzed the relief requested in the proposed order, participated in conference calls and in-person meetings with the Monitor, Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtors' professionals and the Monitor (as that term is defined below) and its professionals, to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

24.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $6,622.50 plus CDN. $331.13 taxes; Hours 17.1)

25.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including paraprofessional and

attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings

(Fees: CDN. $20,170.00 plus CDN. $1,008.50 taxes; Hours 29.9)

26.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held no less than five telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump, other Committee professionals and with certain Committee members.

27.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members.  During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

28.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

## Court Hearings

(Fees: CDN $26,301.00 plus CDN. $1,315.05 taxes; Hours 41.2)

29.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Asset Sales

(Fees: CDN $52,319.50 plus CDN. $2,615.98; Hours 78.1)

30.     FMC spent considerable time during the Compensation Period working closely with the Debtors, Akin Gump and the Committee's other advisors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets.[2] Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals as well as professionals for the other major creditor constituents to evaluate and analyze divestiture options for the carrier, enterprise solutions and metro ethernet businesses. In that regard, FMC worked

---

[2] For reasons of confidentiality, FMC cannot disclose all of the specific matters worked on by FMC attorneys related to this task code during the Compensation Period, but will provide such details to the Court and the U.S. Trustee upon request.

closely with the Committee's other advisors to evaluate third party bids for those assets, assess and analyze transaction issues and potential stalking horse candidates, and advise the Committee on those issues through detailed memoranda and numerous telephonic conferences.

31.     Following approval on July 28, 2009 by the U.S. and Canadian Courts of the sale of the CDMA/LTE assets to Telefonaktiebolaget L M Ericsson ("Ericsson"), FMC attorneys have been actively involved in reviewing, commenting on, and negotiating underlying documentation necessary to timely consummate the transaction.  In connection therewith, FMC attorneys, together with professionals from Jefferies, Capstone and Akin Gump, have participated in numerous meetings and conference calls with professionals for the Nortel Debtors, Ericsson and other major stakeholders, to negotiate and finalize documentation.

32.     FMC lawyers also spent considerable time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' enterprise solutions business (the "Enterprise Sale") and selecting an acceptable stalking horse bidder in connection therewith. On July 20, 2009, the Nortel Debtors publicly announced that Avaya Inc. ("Avaya") was selected as the stalking horse bidder for the Enterprise Sale.  In connection therewith, FMC lawyers reviewed, commented on, and negotiated all underlying documentation, including the form of proposed bidding procedures and related sale motion (the "Enterprise Bidding Procedures Motion") and held numerous conference calls with Akin Gump, Jefferies and the Committee to ascertain and develop the Committee's position on the proposed procedures and transaction. This Court and the Canadian Court subsequently entered orders approving the Enterprise Bidding Procedures Motion on August 4, 2009.  An auction with respect to the Enterprise Sale took place over the three day period from September 11-14, 2009.  As this Court

is aware, Avaya was selected as the successful bidder with a purchase price of approximately

$900 million, a substantial increase from its stalking-horse bid of $475 million. Following a

joint hearing of the U.S. and Canadian Courts, an order approving the Enterprise Sale to Avaya

was entered on September 16, 2009.

### Labor and Employee Benefits Issues

(Fees: CDN. $47,041.50 plus CDN. $2,352.08 taxes; Hours 91.1)

33.    This subject matter relates to services rendered by FMC in connection with the

analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC lawyers reviewed and analyzed the Canadian Debtors' pension plans

and participated in several conferences with the Debtors' advisors to address the Committee's

concerns relating to such plans. FMC attorneys also spent considerable time during the

Compensation Period reviewing documents and analyzing issues in connection with

correspondence sent to the Canadian Debtors by the pension regulator in the United Kingdom

regarding a potential claim by such regulator against the Canadian Debtors. FMC lawyers,

working together with Akin Gump and Ashurst have been assessing issues in connection with the

correspondence from the pension regulator in the United Kingdom and potential effects any such

claims may have in the Canadian Proceeding which may affect the interest of the Debtors and the

creditors of the Debtors, and FMC lawyers have been prepared memoranda for the Committee

and Akin Gump in connection therewith.

34.    During the Compensation Period, FMC attorneys also spent considerable time in

connection with a leave to appeal motion commenced by certain terminated employees of the

Canadian Debtors in connection with an order issued by the Canadian Court regarding

termination pay. FMC attorneys prepared a factum which was submitted to the Court of Appeal

of Ontario in connection with the leave to appeal application. During the Compensation Period,

FMC attorneys provided updates to the Committee and the Committee's other professionals including Akin Gump in connection with the status of the appeal in the Canadian Proceeding.

### Real Estate Issues/Leases

(Fees: CDN. $3,915.00 plus CDN. $195.75 taxes; Hours 5.4)

35.      This subject matter relates to time spent by FMC lawyers on matters relating to the real estate assets of the Canadian Debtors.  During the Compensation Period, FMC lawyers, in consultation with Akin Gump, Capstone and Jefferies, continued an analysis of the Canadian Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property. FMC lawyers also assessed issues and negotiated documents in the Canadian Proceeding relating to the proposed sale transactions as they relate to Canadian real estate issues.

### Intercompany Analysis

(Fees: CDN. $27,340.00 plus CDN. $1,367.00 taxes; Hours 36.6)

36.      As required under the terms of the Interim Funding and Settlement Agreement approved by the U.S. and Canadian Courts on June 29, 2009, FMC, on behalf of the Committee, spent time during the Compensation Period negotiating with Akin Gump with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding a protocol for resolving disputes concerning the allocation of sale proceeds (the "Allocation Protocol") generated by the various asset sales consummated by the estates.

### Telecommunications/Regulatory/Intellectual Property

(Fees: CDN. $6,580.00 plus CDN. $329.00 taxes; Hours 13.3)

37.      FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets.  Additionally, during the Compensation Period, FMC lawyers analyzed documents in connection with the various asset sale processes described

above and assessed regulatory issues in connection therewith, as well as examining the

intellectual property issues associated with such divestitures

## V.    ALLOWANCE OF COMPENSATION

38.    The professional services rendered by FMC required a high degree of professional

competence and expertise so that the numerous issues requiring evaluation and determination by

the Committee could be addressed with skill and dispatch and have, therefore, required the

expenditure of substantial time and effort.  It is respectfully submitted that the services rendered

to the Committee were performed efficiently, effectively and economically, and the results

obtained to date have benefited not only the members of the Committee, but also the unsecured

creditor body as a whole and the Debtors' estates.

39.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

40.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;

> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

41.     The total time spent by FMC lawyers and paraprofessionals during the Compensation Period was 423.5 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

42.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $8,398.43 (CDN. $7,998.50 for expenses and CDN. $399.93 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

43.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

44.    FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

45.    No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

46.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)      approve the allowance of CDN. $267,363.60 (CDN. $254,632.00 for fees and CDN. $12,731.60 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from August 1, 2009 through and including August 31, 2009;

(b)      approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period August 1, 2009 through and including August 31, 2009 in the amount of CDN. $8,398.43 (CDN. $7,998.50 for expenses and CDN. $399.93 for applicable Canadian taxes) ; and

(c)      authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $222,289.31, which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          October 6, 2009

FRASER MILNER CASGRAIN LLP

By:_____
        Michael J. Wunder (*pro hac vice*)
        Member of the Firm

        Suite 3900
        1 First Canadian Place
        100 King Street West
        Toronto, Ontario  M5X 1B2
        (416) 863-4511
        Canadian Counsel to the Official Committee of
        Unsecured Creditors