## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

## NOTICE PURSUANT TO SECTION 12(d) OF THE CROSS-BORDER PROTOCOL OF FILING OF MOTION RECORD FILED IN THE CANADIAN PROCEEDINGS TO APPROVE GSM/GSM-R BUSINESS BIDDING PROCEDURES

**PLEASE TAKE NOTICE** that pursuant to section 12(d) of the Cross-Border Protocol approved in the above-captioned cases (Docket No. 18), on October 7, 2009, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the **"Canadian Nortel Group"**), in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the **"Canadian Proceedings"**), by its undersigned counsel, filed in the above-captioned cases the Motion Record of the Applicants filed in the Canadian Proceedings in support of the Canadian Nortel Group's motion to approve the GSM/GSM-R Business Bidding Procedures Order (the **"Motion Record"**). A joint hearing is scheduled to be held in the Canadian Proceedings and the above-captioned cases on October 15, 2009. A copy of the Motion Record is annexed hereto as Exhibit A.

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion Record are also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

Dated:  Wilmington, Delaware
       October 7, 2009

ALLEN & OVERY LLP

Ken Coleman
Lisa Kraidin
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
lisa.kraidin@allenovery.com

-and-

BUCHANAN INGERSOLL & ROONEY

By: /s/ Mary F. Caloway
Mary F. Caloway (No. 3059)
Peter J. Duhig (No. 4124)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone (302) 552-4200
Facsimile (302) 552-4295
mary.caloway@bipc.com

Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Nortel
Group

**<u>EXHIBIT A</u>**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**MOTION RECORD**
**GSM/GSM-R Business Bidding Procedures**
**(returnable October 15, 2009)**

October 6, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

DOCSTOR: 1680120\1

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Notice of Motion returnable October 15, 2009 | 1 |
| 2. | Affidavit of George Riedel sworn October 6, 2009 | 26 |
| 3. | Draft Order | 31 |

DOCSTOR: 1784226\1

# TAB 1

DOCSTOR: 1680120\1

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(RETURNABLE OCTOBER 15, 2009)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on Thursday, October 15, 2009 at 2:00 p.m. at 393 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR AN ORDER:

(a)     Abridging the time for service of the Notice of Motion, the Twenty-Third Report (as defined below) and the Motion Record in respect of this motion and dispensing with further service thereof;

- 2 -

(b)     Approving the bidding procedures (the "Bidding Procedures") described in the affidavit of George Riedel sworn October 6, 2009 (the "Riedel Affidavit") and the twenty-third report (the "Twenty-Third Report") of Ernst & Young Inc., in its capacity as monitor (the "Monitor") filed with this Honourable Court and, subject to approval of the Bidding Procedures in substantially the same form by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the U.S. Debtors authorizing the Applicants to conduct the Bidding Procedures in respect of Nortel's GSM/GSM-R business (the "GSM/GSM-R Business") and assets (the "GSM Assets");

(c)     Such further and other relief as counsel may request and this Honourable Court deem just;

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)     On January 14, 2009, this Honourable Court made an Initial Order granting the CCAA stay of proceedings against the Applicants and appointing Ernst & Young Inc. as Monitor in the CCAA proceedings;

(b)     Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including Nortel Networks Inc., made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

(c)     Additionally, on January 15, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in the Europe, Middle East and Africa region each obtained an administration order from the English High Court of Justice under the Insolvency Act 1986;

- 3 -

(d)      Further details regarding the background of these CCAA proceedings are set out in the Affidavit of John Doolittle sworn January 14, 2009 previously filed in these proceedings and are therefore not repeated herein;

(e)      References to "Nortel" herein shall be to the global enterprise as a whole;

(f)      Capitalized terms used herein not otherwise defined shall have the meanings ascribed to them in the Twenty-Third Report;

**GSM/GSM-R BUSINESS**

(g)      Global System for Mobile communications ("GSM") is a widely deployed wireless technology standard for mobile phone networks, and GSM for Railways ("GSM-R") is a secure wireless communications system for railway operators based on GSM technology;

(h)      In 2008, Nortel's GSM/GSM-R Business accounted for approximately thirteen percent of Nortel's 2008 revenues;

(i)      Nortel's GSM/GSM-R Business supplies GSM networks to operators globally and works with such operators to implement various GSM products, and as part of its business, Nortel develops, manufactures, tests, sells and supplies GSM access and core infrastructure, services and solutions;

(j)      Nortel has worked with more than one hundred operators in over sixty-five countries to date to implement cost-effective, high-performance GSM/GPRS/EDGE networks;

(k)      Nortel has more than fifteen years experience with GSM-R mobile communications technology and is a leading GSM-R provider globally with an approximate sixty percent share of global railway track kilometres awarded to date;

(l)      However, in the face of the global economic downturn, Nortel's GSM/GSM-R Business has faced significant pressure, as existing customers delay and reduce capital expenditures;

- 4 -

4

(m)     Additionally, since the commencement of the creditor protection proceedings in the U.S. and Canada, Nortel has experienced significant hurdles in pursuing new customers for its GSM/GSM-R Business;

(n)     After a review was undertaken with respect to Nortel's GSM/GSM-R Business, Nortel concluded that a sale of the GSM Assets was the best opportunity to maximize the value of the GSM Assets and reduce the continuing cost related to the support and development of GSM/GSM-R Business;

(o)     In April 2009, Nortel began to explore the potential sale of the GSM/GSM-R Business and to that end, Nortel and its financial advisors prepared a confidential information memorandum ("IM") regarding the GSM/GSM-R Business and established an electronic data room ("EDR") with respect to the GSM/GSM-R Business;

(p)     From April through June 2009, Nortel and its financial advisors contacted over fifty potential buyers; of these, twenty-six received the IM and entered into non-disclosure agreements with Nortel, and eleven potential bidders have submitted an expression of interest for all or a portion of the GSM/GSM-R Business and have been granted access to the EDR;

(q)     While Nortel has engaged in negotiations with various potential bidders, the GSM/GSM-R Business has been experiencing significant pressure from its existing and potential customers to provide a definitive timeline for the transfer of the GSM/GSM-R Business to a third party, and Nortel believes that without such a timeline, sales to customers will diminish more quickly resulting in a lower valuation of the GSM/GSM-R Business;

(r)     Nortel has concluded that the potential purchase price that could be realized through a sale of the GSM Assets is likely to decline over time if the GSM Assets remain unsold and that any significant delay in doing so could result in a material reduction of price;

(s)     Therefore, Nortel believes that it is in its best interest to divest the GSM Assets in a relatively expedient manner and that the process contemplated by the Bidding Procedures will garner the highest or best offer for the GSM Assets;

- 5 -

5

**THE BIDDING PROCESS**

(t)     At this time, Nortel would like to conduct an expedited, Court-approved process, the details of which are reflected in the Twenty-Third Report;

(u)     Pursuant to the Bidding Procedures, NNL proposes to entertain irrevocable bids to convey all or substantially all of the GSM Assets to a single bidder or joint bids for all or substantially all of the GSM Assets from a team of two or more bidders bidding jointly. Nortel does not intend to entertain bids that seek to exclude a material portion of the GSM Assets in any significant jurisdiction. Qualified Bidders who desire to make a bid must deliver written copies of their bids by November 5, 2009, at 12:00 p.m (ET) together with all supporting documentation, including but not limited to a Good Faith Deposit and evidence of the completion of all other prerequisites of a "Qualified Bid";

(v)     The Monitor is of the view that the process described in the Bidding Procedures is designed to provide a commercially reasonable approach for Nortel to attempt to market and maximize value for its GSM/GSM-R Business. The Monitor has been involved in the activities undertaken to date to market the GSM Business and will be involved in the process. The Monitor recommends that the Applicants' motion for approval of the Bidding Procedures be approved by this Honourable Court;

**MISCELLANEOUS**

(w)     The provisions of the CCAA;

(x)     Such further and other grounds as counsel may advise and this Honourable Court permit;

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)     The Riedel Affidavit;

(b)     The Twenty-Third Report; and

- 6 -

ⱳ

(c)     Such further and other relief as counsel may request and this Honourable Court deem just.

October 6, 2009                    **OGILVY RENAULT LLP**
                                   Suite 3800
                                   Royal Bank Plaza, South Tower
                                   200 Bay Street
                                   Toronto, Ontario  M5J 2Z4  CANADA

                                   **Derrick Tay LSUC#: 21152A**
                                   Tel:  (416) 216-4832
                                   Email: dtay@ogilvyrenault.com

                                   **Mario Forte  LSUC#: 27293F**
                                   Tel: (416) 216-4870
                                   Email: mforte@ogilvyrenault.com

                                   **Jennifer Stam LSUC #46735J**
                                   Tel: (416) 216-2327
                                   Email: jstam@ogilvyrenault.com

                                   Fax: (416) 216-3930
                                   Lawyers for the Applicants

TO:     Attached Service List

Court File No.  09-CL-7950

7

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**


**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**


**SERVICE LIST**


TO:      **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:     dtay@ogilvyrenault.com
           mforte@ogilvyrenault.com
           jstam@ogilvyrenault.com

Tel:      416.216.4000
Fax:     416.216.3930

Lawyers for the Applicants

DOCSTOR: 1600901\2A

- 2 -

8

TO:  **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:  416.943.3016
Fax:  416.943.3300

AND
TO:  **GOODMANS LLP**
250 Yonge Street
Suite 2400
Toronto, ON  M5B 2M6

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
carmstrong@goodmans.ca

Tel:  416.597.4107
Fax:  416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.


AND
TO:  **OSLER HOSKIN AND HARCOURT
LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:  lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:  416.362.2111
Fax:  416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:  **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:  416.868.3538
Fax:  416.364.7813

Lawyers for Export Development Canada

| | | | |
|---|---|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, ON K1A 1K3<br><br>Jennifer Sullivan<br><br>Email: jsullivan@edc.ca<br><br>Tel: 613.597.8651<br>Fax: 613.598.3113 | AND TO: | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, ON M5K 1K7<br><br>Robert I. Thornton<br>Michael Barrack<br>Rachelle Moncur<br>Leanne M. Williams<br><br>Email: rthornton@tgf.ca<br>mbarrack@tgf.ca<br>rmoncur@tgf.ca<br>lwilliams@tgf.ca<br><br>Tel: 416.304.1616<br>Fax: 416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |
| AND TO: | **McINNES COOPER**<br>Purdy's Wharf Tower II<br>1300 – 1969 Upper Water Street<br>Halifax, NS B3J 2V1<br><br>John Stringer, Q.C.<br>Stephen Kingston<br><br>Email: john.stringer@mcinnescooper.com<br>stephen.kingston@mcinnescooper.com<br><br>Tel: 902.425.6500<br>Fax: 902.425.6350<br><br>Lawyers for Convergys EMEA Limited | AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON M5H 3S1<br><br>Jeffrey Carhart<br>Margaret Sims<br><br>Email: jcarhart@millerthomson.com<br>msims@millerthomson.com<br><br>Tel: 416.595.8615/8577<br>Fax: 416.595.8695<br><br>Lawyers for Toronto-Dominion Bank |
| AND TO: | **CAW-CANADA**<br>Legal Department<br>205 Placer Court<br>Toronto, ON M2H 3H9<br><br>Barry E. Wadsworth<br>Lewis Gottheil<br><br>Email: barry.wadsworth@caw.ca<br>lewis.gottheil@caw.ca<br><br>Tel.: 416.495.3776<br>Fax: 416.495.3786<br><br>Lawyers for all active and retired Nortel employees represented by the CAW-Canada | AND TO: | **BOUGHTON LAW CORPORATION**<br>Suite 700<br>595 Burrard Street<br>Vancouver, BC V7X 1S8<br><br>R. Hoops Harrison<br><br>Email: hharrison@boughton.ca<br><br>Tel: 604.687.6789<br>Fax: 604.683.5317<br><br>Lawyers for Tonko Realty Advisors (BC) Ltd. |

AND TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:  416. 367.6646
Fax:  416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:  416.367.6266
Fax:  416.361.7067

Email:  srappos@blgcanada.com
Tel:  416.367.6033
Fax:  416.361.7306

Lawyers for Bell Canada

AND TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:  416.307.4087
Fax:  416.304.3855

Email  jcontini@langmichener.ca
Tel:  416.307.4148
Fax:  416.304.3767

Email  arousseau@langmichener.ca
Tel:  416.307.4081
Fax:  416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
     dimitri.lascaris@siskinds.com
     monique.radlein@siskinds.com

Tel:  519.672.2121
Fax:  519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:  zychk@bennettjones.com
Tel:  416.777.5738
Fax:  416.863.1716

Email:  orzyr@bennettjones.com
Tel:  416.777.5737
Fax:  416.863.1716

Email:  finlaysong@bennettjones.com
Tel:  416.777.5762
Fax:  416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

AND
TO:
**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:  mzigler@kmlaw.ca
Tel:  416.595.2090
Fax:  416.204.2877

Email:  sphilpott@kmlaw.ca
Tel:  416.595.2104
Fax:  416.204.2882

Email:  dyiokaris@kmlaw.ca
Tel:  416.595.2130
Fax:  416.204.2810

Email:  amckinnon@kmlaw.ca
Tel:  416.595.2150
Fax:  416.204.2874

Lawyers for the Former Employees of Nortel

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
Tel:  416.595.8615
Fax:  416.595.8695

Email  msims@millerthomson.com
Tel:  416.595.8577
Fax:  416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:  jcarhart@millerthomson.com
Tel:  416.595.8615
Fax:  416.595.8695

Email:  msims@millerthomson.com
Tel:  416.595.8577
Fax:  416.595.8695

Email:  jmklotz@millerthomson.com
Tel:  416.595.4373
Fax:  416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:
**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:  joseph.kim@lge.com

Tel:  +82.2.3777.3171
Fax:  +82.2.3777.5345

12

- 6 -

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited


AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:     416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:     416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:     416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund


AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:   Shayne.kukulowicz@fmc-law.com
             Alex.macfarlane@fmc-law.com
             Michael.wunder@fmc-law.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors


AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

AND
TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
        dullmann@mindengross.com
Tel:  416.369.4149
Fax:  416.864.9223

Lawyers for Verizon Communications Inc.

AND
TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:  416.865.6655
Fax:  416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:  416.865.6641
Fax:  416.865.6636

Lawyers for Andrew, LLC

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:  416.865.7726
Fax:  416.863.1515

Email:  iaversa@airdberlis.com
Tel:  416.865.3082
Fax:  416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:
**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:  416.865.7773
Fax:  416.863.1515

Email:  pczegledy@airdberlis.com
Tel:  416.865.7749
Fax:  416.863.1515

Lawyers for Microsoft Corporation

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
        smitra@airdberlis.com

Tel:  416.863.1500
Fax:  416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND
TO:
**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:  604.484.1757
Fax:  604.484.1957

Lawyers for Algo Communication Products Ltd.

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:      416.595.8686
Fax:      416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Brookfield LePage Johnson Controls
Facility Management Services

AND TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:      416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:      416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:      416.865.7048

Lawyers for Royal Bank of Canada

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Perot Systems Corporation

AND TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:    416.865.7178
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:    416.865.7285
Fax:    416.865.7048

Lawyers for Citibank

AND TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:

**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:    416.307.4087
Fax:    416.365.1719

Email:  arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for Right Management Inc.

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:  smitra@airdberlis.com
        svitorovich@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

16

AND TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
ainslie.benedict@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca

Tel:   613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND TO:

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:  misrag@caleywray.com

Tel:   416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND TO:

**COLBY, MONET DEMERS, DELAGE & CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:  ddropsy@colby-monet.com
Tel:   514.284.3663
Fax:   514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman

Email:  bleonard@casselsbrock.com
hgarman@casselsbrock.com

Tel:   416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:  pklepsoe@mcfarlanelaw.com

Tel:   613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND TO:

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel:   514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
        steven.levitt@nelligan.ca
        christopher.rootham@nelligan.ca

Tel:  613.231.8245
Fax:  613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:  ryanbellr@bennettjones.com
        laugesenm@bennettjones.com

Tel:  416.863.1200
Fax:  416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario M5H 4G2

Timothy R. Dunn

Email:  tdunn@mindengross.com
Tel:  416.369.4335
Fax:  416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario M5J 2T3

Chris Besant
Lydia Salvi

Email:  chris.besant@bakernet.com

Tel:  416.865.2318
Fax:  416.863.6275

Email:  lydia.salvi@bakernet.com

Tel:  416.865.6944
Fax:  416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:  theintzm@mccarthy.ca
Tel:  416.601.7627
Fax:  416.868.0673

Email:  jsirivar@mccarthy.ca
Tel:  416.601.7750
Fax:  416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**EURODATA**
2574 Sheffield Road
Ottawa, Ontario K1B 3V7

Nanci Shore

Email:  nanci@eurodata.ca
Tel:  613.745.0921
Fax:  613.745.1172

AND TO:
**BALDWIN LAW PROFESSIONAL CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:  lbrady@baldwinlaw.ca
Tel:    613.771.9991
Fax:    613.771.9998

Lawyers for Sydney Street Properties Corp.

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:    416.214.5213
Fax:    416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:  cynthia.maher@ntscorp.com
Tel:    714.998.4351
Fax:    714.998.7142

Lawyers for AETL Testing, Inc.

AND TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:    416.214.5213
Fax:    416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :   416.214.5206
Fax :   416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :  jysimard@lavery.ca
Tel :   514.871.1522
Fax :   514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

| | |
|---|---|
| AND TO: | **NATIONAL TECHNICAL SYSTEMS**<br>130 Chaparral Ct., Suite 250<br>Anaheim, California, U.S.A.<br>92808<br><br>Cynthia Maher<br><br>Email:  cynthia.maher@ntscorp.com<br>Tel:    714.998.4351 |

AND TO:  **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

AND TO: **NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:  cynthia.maher@ntscorp.com
Tel:    714.998.4351

AND TO: **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:  david.cohen@gowlings.com

Tel:    416.369.6667
Fax:    416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND TO: **DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND TO: **DAVIES WARD PHILLIPS & VINEBERG LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:  rschwill@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Email:  mgottlieb@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND TO: **LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:     416.598.1744
Fax:     416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

AND TO: **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:  lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:    416.863.6275

Lawyers for Wipro Limited

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND TO:

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:  sbomhof@torys.com
Tel:     416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:  hmeredith@mccarthy.ca
Tel:     416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO:

**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:     416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:     416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:     416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:     416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:     416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

AND
TO:

**SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:   jmcdonald@sgmlaw.com
Tel:      416.979.6425
Fax:      416.591.7333

Email:   dbrown@sgmlaw.com
Tel:      416.979.4050
Fax:      416.591.7333

Lawyers for Edmund Fitzgerald

AND
TO:

**FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:   jspiegelman@foglers.com
Tel:      416.864.9700
Fax:      416.941.8852

Lawyers for Belden (Canada) Inc.

## COURTESY COPIES:

AND TO: **LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:   602.262.5321
Fax:   602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND TO: **AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
           rjacobs@akingump.com

Tel:   212.872.1000
Fax:   212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND TO: **CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:   sreisman@curtis.com
            jdrew@curtis.com

Tel:   212.696.6000
Fax:   212-697-1559

Lawyers for Flextronics International

AND TO: **MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:   212.530.5770
Fax:   212.530.5219

Email:   ALeblanc@milbank.com
Tel:   212.835.7574
Fax:   212.530.5219

Email:   APisa@milbank.com
Tel:   212.530.5319
Fax:   212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York 10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:    212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :  andrew.robertson@macleoddixon.com
         caylee.rieger@macleoddixon.com

Tel :   403.267.8222
Fax :   403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:     312.602.5050

U.S. Lawyers for Tellabs, Inc.

25

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION,
NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

Applicants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST**

Proceeding commenced at Toronto

**NOTICE OF MOTION
(returnable October 15, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1784154\2

# TAB 2

26

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn October 6, 2009)**

I, **George Riedel**, of the City of Boston in the State of Massachusetts, **MAKE OATH
AND SAY**:

1.      I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel
Networks Limited ("NNL" and, together with NNC, Nortel Networks Technology Corporation,
Nortel Networks International Corporation and Nortel Networks Global Corporation, the
"Applicants") and have held those positions since February, 2006. As such, I have personal
knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess
personal knowledge, I have stated the source of my information and, in all such cases, believe it
to be true. References to "Nortel" herein shall be to the global enterprise as a whole.

2.      I swear this affidavit in support of the Applicants' motion for an order, *inter alia*,
authorizing and approving the bidding procedures described in details in the report of Ernst &
Young Inc. filed with this Honourable Court in connection with the present motion (the "Bidding
Procedures") in respect of Nortel's GSM/GMS-R business (the "GSM/GSM-R Business") and
assets (the "Assets").

27

- 2 -

3.      On January 14, 2009 (the "Filing Date"), this Honourable Court made an Initial Order granting a stay in the *Companies' Creditors Arrangement Act* ("CCAA") proceedings of the Applicants and appointing Ernst & Young Inc. as "Monitor" in the CCAA proceedings;

4.      Also on January 14, 2009, NNC and certain of its U.S. subsidiaries, including Nortel Networks Inc., made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code") (the "U.S. Proceedings").

5.      On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the U.S. Proceedings as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

6.      Additionally, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC.

7.      On May 28, 2009, the Commercial Court of Versailles, France, ordered the commencement of secondary proceedings in respect of Nortel Network S.A.

8.      Further details regarding the background to these CCAA proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 previously filed in these proceedings and are therefore not repeated herein.

9.      I have participated in or was informed of Nortel's exploration of opportunities to sell the Assets that have since resulted in the preparation of the Bidding Procedures and ongoing negotiations with various counterparties.

10.      Global System for Mobile communications ("GSM") is a widely deployed wireless technology standard for mobile phone networks. Nortel is a supplier of GSM networks to operators globally and works with such operators to implement various GSM products. In this regard, Nortel develops, manufactures, tests, sells and supplies GSM access and core infrastructure, services and solutions. Also based on GSM technology is a variant of GSM for Railways, which provides a secure communications system for railways operators.

*2B*

- 3 -

11.     Nortel has worked with more than 100 operators in over 65 countries to implement cost-effective, high-performance GSM/GPRS/EDGE networks. Nortel recently introduced Nortel Smart Power Management software, which, combined with other enhancements made to Nortel's GSM technology makes today's Nortel GSM portfolio up to 50% more energy efficient than it was five years ago.   Nortel has more than 15 years experience with GSM-R mobile communications technology and currently provides GSM-R solutions on three continents. With several thousands of kilometres of rail tracks installed using Nortel's GSM-R products, Nortel is the leading GSM-R provider globally.

12.     The business environment in which Nortel operates is highly competitive, the competition for market share is fierce, and the cost of rapid technological development is steep.

13.     Due to the global economic downturn, Nortel is experiencing significant pressure on its businesses and facing competing demands on its cash resources, globally as well as on a regional basis, as customers across all businesses delay and reduce capital expenditures.

14.     As with Nortel's other assets and businesses, a review has been undertaken with respect to Nortel's GSM/GSM-R Business.   Since the commencement of the creditor protection proceedings in the U.S. and Canada, Nortel has experienced significant hurdles in pursuing new customers for its GSM/GSM-R Business.  Nortel has therefore concluded that the proposed sale of the Assets is the best opportunity to maximize the value of the Assets and reduce the continuing cost relating to the support and development of the Assets.

15.     Nortel has extensively marketed the Assets.  In April 2009, it began to explore the potential sale of GSM/GSM-R Business.  In preparation for the sale, Nortel and its financial advisors prepared a confidential information memorandum ("IM") regarding the GSM/GSM-R Business and established an electronic data room ("EDR") for the GSM/GSM-R Business.

16.     As part of this exercise, Nortel entered into confidentiality agreements with twenty-six potential bidders who have received the IM, and eleven potential bidders submitted expressions of interest for all or a portion of the GSM/GSM-R Business and have been granted access to the EDR.  In addition, Nortel conducted one or more management presentations with several potential bidders.

- 4 -

17.    Nortel entered into negotiations with several potential bidders and continue to pursue these efforts.   Notwithstanding diligent efforts of Nortel, its efforts to enter into a binding "stalking horse" agreement have been unsuccessful for a range of legal and economic reasons. While Nortel has engaged in discussions with various potential bidders, the GSM/GSM-R Business is experiencing significant pressure from its existing and potential customers to provide a definitive timeline for the transfer of the GSM/GSM-R Business to a third party.  Without a definitive timeline, sales to customers will diminish more quickly resulting in a lower valuation of the GSM/GSM-R Business.

18.    In the context of the sale of the Assets, Nortel would prefer to receive bids to convey all or substantially all of the Assets to a single buyer.  However, it will entertain joint bids for all or substantially all of the Assets from a team of two or more bidders bidding together.

19.    The bulk of the Assets is located outside of Canada and there are currently seven remaining employees in Canada engaged in the GSM/GSM-R Business.

20.    The potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold.  The full value of the Assets may not be realized if a sale is not consummated quickly.

21.    I believe, based on Nortel's consideration of potential transactions involving the Assets and after canvassing the marketplace, as described above, that the proposed Bidding Procedures will garner the highest or best offer for the Assets.

22.    I am aware that the report of the Monitor filed in connection with this motion will outline the proposed bidding process and the Bidding Procedures in more detail.  I have reviewed the Bidding Procedures and believe them to be fair in the circumstances.

**SWORN BEFORE ME** at the City of Boston, in the State of Massachusetts on this 6th day of October, 2009.

_____
Commissioner for Taking Affidavits or Notary Public

George Riedel

30

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
(sworn October 6, 2009)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1788806\2

**TAB 3**

31

Court File No.:  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 15th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF OCTOBER, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
(GSM/GSM-R Bidding  Procedures Order)

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion dated October 6, 2009 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of George Riedel sworn October 6, 2009 (the "Riedel Affidavit") and the twenty-third report of Ernst & Young Inc. (the "Twenty-Third Report") in its capacity as monitor (the "Monitor") and on hearing submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other person on the service

list, although served as appears from the Affidavit of Service of Katie Legree sworn October 6, 2009, filed.

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Twenty-Third Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that the bidding procedures (the "Bidding Procedures") described in the Riedel Affidavit, the Twenty-Third Report and attached as Schedule "A" hereto are hereby approved and, subject to approval of the Bidding Procedures in substantially the same form by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the U.S. Debtors (each as defined in the Twenty-Third Report), the Applicants shall be authorized to conduct the bidding process contemplated therein.

3.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

4.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

33

**SCHEDULE "A"**

**BIDDING PROCEDURES**

Set forth below are the bidding procedures (the "Bidding Procedures") to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities (the "Sale") pertaining to the global GSM/GSM-R business of Nortel (as defined below).

On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL") and certain of NNC's other Canadian affiliates (collectively, the "Canadian Debtors," and NNC and its debtor and non-debtor affiliates are sometimes referred to herein as "Nortel"), commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (respectively, the "Canadian Proceedings" and "CCAA"), in connection with which Ernst & Young Inc. was appointed monitor (the "Monitor").

On the Filing Date and on July 14, 2009 (with respect to Nortel Networks (CALA) Inc.), Nortel Networks Inc. ("NNI") and certain of NNI's United States affiliates (collectively, the "US Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (respectively, the "US Proceedings" and the "Bankruptcy Code").

On the Filing Date, Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NNIR"), Nortel Networks S.A. ("NNSA") and certain of NNUK's affiliates in the Europe, Middle East and Africa region (respectively, "EMEA Debtors" and "EMEA") commenced administration proceedings (the "UK Proceedings" and, together with the Canadian Proceedings and the US Proceedings, the "Proceedings") before the High Court of Justice in London, England (the "UK Court" and, together with the Canadian Court and the Bankruptcy Court, the "Courts"), and the UK Court appointed individuals from Ernst & Young LLP (the "UK Administrator"), and, in the case of NNIR only, Ernst & Young Chartered Accountants (the "NNIR Administrator"), as administrators in the UK Proceedings (the UK Administrator and the NNIR Administrator collectively, the "Administrators").

NNL, NNI and NNUK and certain of their affiliates (together, the "Sellers") have determined that: (A) the potential sale of the Assets (as defined below) contemplated by the Sale Motion (as defined below) should be subject to a competitive sale process as set forth herein and the supplement to these Bidding Procedures attached hereto as Schedule 1; (B) the eventual transfer of the U.S. Debtors' rights, title and interests in and to the Assets will be subject to approval by the Bankruptcy Court; (C) the eventual transfer of the rights, title and interests of the Canadian Debtors in and to the Assets will be subject to approval by the Canadian Court; and (D) the eventual transfer of the rights, title and interests of NNSA in and to the Assets will be subject to approval by the French Court (as defined in Schedule 1).

On September 30, 2009, the U.S. Debtors filed a Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving the Notice Procedures, (C) Setting a Date

for the Sale Hearing, and (II) Authorizing and Approving the Sale of Certain Assets of Debtors' GSM/GSM-R Business (the "Sale Motion").

On [October 15], 2009 the Bankruptcy Court entered an Order approving, among other things, the Bidding Procedures set forth herein (the "Bidding Procedures Order").

On [October 6], 2009 the Canadian Debtors filed a motion with the Canadian Court seeking an order for approval of the Bidding Procedures set forth herein (the "Canadian Sales Process Order").

Bidding Process

The Bidding Procedures set forth herein describe, among other things, the Assets available for sale, the manner in which prospective bidders may gain access to or continue to have access to due diligence materials concerning the Assets, the manner in which bidders and bids become Qualified Bidders (as defined below) and Qualified Bids (as defined below), respectively, the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and the Bankruptcy Court's, the Canadian Court's and the French Court's and, if required, such other applicable courts' approval thereof (collectively, the "Bidding Process"). The Sellers intend to consult with, among others, the Official Committee of Unsecured Creditors in connection with the chapter 11 cases of Nortel Networks Inc., *et al.* (Case No. 09-10138) involving the U.S. Debtors (the "Committee"), the ad hoc group of bondholders holding claims against certain of the U.S. Debtors and certain of the Canadian Debtors (the "Bondholder Group"), Ernst & Young Inc., in its capacity as the Canadian Court-appointed monitor in connection with the proceedings under the CCAA, the Administrators in connection with the UK Proceedings, and their respective advisors throughout the Bidding Process. In the event that the Sellers and any party disagree as to the interpretation or application of these Bidding Procedures, the Bankruptcy Court and the Canadian Court will have jurisdiction to hear and resolve such dispute.[1]

Assets To Be Sold

The Sellers are offering for sale certain of the Sellers' assets pertaining to the GSM/GSM-R business unit of Nortel (collectively, the "Transaction"), or, as set forth in the relevant sale agreements with respect to a Successful Bidder (as defined below), and related schedules and in an information memorandum made available by the Sellers to potential bidders that have executed a confidentiality agreement with the Sellers (the "Assets"). The Sellers will entertain bids to convey all or substantially all of the Assets to a single bidder or joint bids for all or substantially all of the Assets from a team of two or more bidders bidding jointly (each such bid, a "Joint Bid").

---

[1] For the avoidance of doubt, this Bidding Process shall not govern any disagreements among the Sellers.

### Joint Bids

The Sellers recognize that certain Potential Bidders may desire to acquire only a portion of the Assets. The Sellers do **NOT** intend to entertain bids that seek to exclude a material portion of the Assets in any significant jurisdiction.[2] As mentioned above, the Sellers will entertain a Joint Bid for all or substantially all of the Assets from a team of two or more bidders bidding jointly. PLEASE NOTE, HOWEVER, THAT A POTENTIAL OR QUALIFIED BIDDER MAY CONTACT ANOTHER POTENTIAL OR QUALIFIED BIDDER IN CONNECTION WITH A JOINT BID ONLY UPON THE PRIOR WRITTEN CONSENT OF NNL, NNI AND NNUK, WHICH CONSENT SHALL BE GRANTED AFTER CONSULTATION WITH THE COMMITTEE, THE BONDHOLDER GROUP AND THE MONITOR. Any unauthorized contacts between one or more Potential Bidders or Qualified Bidders are hereby strictly prohibited and may result in disqualification from participation in the Bidding Process and any Auction that may occur.

Upon consummation of the Sale, the participants in a Joint Bid may decide to divide the Assets amongst themselves and operate each portion of the Assets on a stand-alone basis. In order to operate such stand-alone businesses, the ultimate buyers of the Assets may need to resolve certain interdependencies among the various Assets (the "Interdependencies"), including, without limitation, certain issues relating to the use of intellectual property or the provision of transition services by and between joint bidders. Please note that the Sellers do not intend to, and shall not, undertake any obligation to resolve any Interdependencies among the various Assets.

### "As Is, Where Is"

The sale of the Assets will be on an "as is, where is" basis and without surviving representations or warranties of any kind, nature, or description by the Sellers, their agents, or estates. In addition, in the case of the EMEA Sellers (as defined below), the sale of whatever rights, title and interests that such EMEA Seller may have (if any) in and to the Assets will be on an "as-is" basis and will be without any representations or warranties. For the purposes of these Bidding Procedures, "EMEA Seller" means any Seller that is an EMEA Debtor or a wholly-owned subsidiary of an EMEA Debtor.

### Free Of Any And All Claims And Interests

All of the rights, title and interests of the U.S. Debtors and the Canadian Debtors in and to the Assets, or any portion thereof, to be acquired will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon and there against (collectively, the "Claims and Interests") as permitted by sections 105 (a), 363 and 365 of the Bankruptcy Code and the CCAA, such Claims and Interests to attach to the net proceeds of the sale of such Assets (without prejudice to any claims or causes of action regarding the priority, validity or enforceability thereof).

---

[2]      Without prejudice to the generality of this sentence, please note that the Sellers shall NOT entertain bids that exclude all or substantially all of the Assets that are located outside North America or vice versa.

- 4 -

36

### Publication Notice

As soon as reasonably practicable after entry of the Bidding Procedures Order and the Canadian Bidding Procedures Order, but in any event no more than five (5) days after the entry of such orders, the Sellers shall publish notice of these Bidding Procedures, the time and place of the Auction (as defined below), if required, the time and place of the Sale Hearing (as defined below), and the objection deadline for the Sale Hearing in The Wall Street Journal (National Edition), The Globe & Mail (National Edition) and The Financial Times (International Edition) (such publication notice, the "Sale Notice").

### Participation Requirements

Unless otherwise ordered by both the Bankruptcy Court and the Canadian Court and accepted by the Administrators, for cause shown or, as otherwise determined by the Sellers (in consultation with the Committee, the Bondholder Group and the Monitor), prior to the Bid Deadline (as defined below), in order to participate in the Bidding Process, each bidder (each such bidder, a "Potential Bidder") must deliver to the Notice Parties (as defined below) at the addresses provided below:

      (a)    an executed confidentiality agreement (to be delivered prior to the distribution of any confidential information by the Sellers to a Potential Bidder) in form and substance satisfactory to the Sellers, and which shall inure to the benefit of any purchaser of the Assets (in the event that the Potential Bidder has already entered into a confidentiality agreement with the Sellers, it must provide a statement agreeing that its obligations under such agreement shall inure to the benefit of any purchaser of the Assets and waiving any of its rights under such confidentiality agreement that are in conflict with the Bidding Procedures or that would otherwise prohibit disclosures regarding the Potential Bidder, or any Transaction it may enter into, to the Notice Parties (as defined below));

      (b)    current audited financial statements and latest unaudited financial statements of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the Potential Bidder who will guarantee the obligations of the Potential Bidder, or such other form of financial disclosure and credit-quality support or enhancement that will allow the Sellers and their respective financial advisors, in consultation with the Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Potential Bidder's financial and other capabilities to consummate the Transaction; and

      (c)    a preliminary (non-binding) written proposal regarding:  (i) the purchase price range (including liabilities to be assumed by the Potential Bidder); (ii) any portion of the assets expected to be excluded; (iii) the structure (including, without limitation, in the case of each potential Joint Bid, the structure of such Joint Bid) and financing of the Transaction (including, but not limited to, the sources of financing for the purchase price and all requisite financial assurance); (iv) any anticipated corporate, stockholder, internal or regulatory approvals required to close the Transaction, the anticipated time frame and

any anticipated impediments for obtaining such approvals; (v) the proposed number of employees of the Sellers who will become employees of the Potential Bidder (save in jurisdictions where employees transfer by operation of law), and any proposed measures associated with the continued employment of all employees who will become employees of the Potential Bidder; and (vi) any conditions to closing that the Potential Bidder may wish to impose in addition to those set forth in the Purchase Agreements, where for the purposes of these Bidding Procedures, "Purchase Agreements" means the sale agreements and other ancillary agreements provided by the Sellers to each Potential Bidder for the proposed Sale. The Sellers shall provide such Purchase Agreements in consultation with the Committee, the Bondholder Group and the Monitor.

A Potential Bidder, or in the case of a Joint Bid, all of the Potential Bidders participating in such Joint Bid, which shall be collectively considered a single bidder, that delivers the documents described above, whose financial information and credit quality support or enhancement demonstrate to the Sellers' satisfaction the financial capability of the Potential Bidder to consummate the Transaction, and who has submitted a reasonably competitive and realistic non-binding proposal, as described above, and who has executed a confidentiality agreement, as described above, and that the Sellers determine in their reasonable business judgment, after consultation with their counsel and financial advisors, the Committee, the Bondholder Group and the Monitor, is likely (based on availability of financing, experience and other considerations) to be able to consummate the Transaction will be deemed a "Qualified Bidder". For the avoidance of any doubt, in the case of a proposed Joint Bid, the Potential Bidders participating in such Joint Bid shall together constitute a single Qualified Bidder.

As promptly as practicable after a Potential Bidder delivers all of the materials required above, the Sellers will determine, in consultation with the Committee, the Bondholder Group and the Monitor, and will notify the Potential Bidder, if such Potential Bidder either by itself or, in the case of a proposed Joint Bid, in conjunction with other bidders participating in such Joint Bid, is a Qualified Bidder. At the same time that the Sellers notify the Potential Bidder that it is a Qualified Bidder, the Sellers will allow the Qualified Bidder to begin or continue to conduct due diligence as provided in the following paragraph with respect to the Assets.

Due Diligence

The Sellers may in their reasonable business judgment, and subject to competitive and other business considerations, afford each Qualified Bidder and any person seeking to become a Qualified Bidder that has executed a confidentiality agreement (as described above) with the Sellers such due diligence access to materials and information relating to the Assets as the Sellers deem appropriate after consultation with the Committee, the Bondholder Group and the Monitor. Due diligence access may include management presentations as may be scheduled by the Sellers, access to electronic data rooms, on site inspections, and other matters which a Qualified Bidder or other person seeking to become a Qualified Bidder may reasonably request and as to which the Sellers, in their reasonable business judgment, may agree. The Sellers will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such parties. The Sellers may, in their discretion, coordinate diligence efforts such that multiple parties have simultaneous access to due diligence materials and/or simultaneous attendance at management presentations or site inspections.

Neither the Sellers nor any of their affiliates (or any of their respective representatives) will be obligated to furnish any information relating to the Assets to any person other than to Qualified Bidders and any other person seeking to become a Qualified Bidder that has executed a confidentiality agreement with the Sellers. The Sellers make no representation or warranty as to the information to be provided through this due diligence process or otherwise, except to the extent set forth in the definitive sale agreements with any Successful Bidder executed and delivered by Sellers.

<u>Bid Deadline</u>

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "<u>Notice Parties</u>"): (i) Nortel Networks Limited and Nortel Networks Inc., c/o Nortel Networks Limited, Attn: Anna Ventresca, General Counsel, 195 The West Mall, Toronto, Ontario, Canada M9C 5K1, Facsimile: (905) 863-2075; (ii) U.S. Debtors' counsel: Cleary Gottlieb Steen & Hamilton LLP, Attn: James L. Bromley and Lisa M. Schweitzer, One Liberty Plaza, New York, New York 10006, Facsimile: (212) 225-3999; (iii) Canadian Debtors' counsel: Ogilvy Renault LLP, Attn: Derrick C. Tay and Jennifer Stam, Royal Bank Plaza, South Tower, Suite 3800, 200 Bay Street, Toronto, Ontario, Canada, Facsimile: (416) 216-3930; (iv) Sellers' financial advisors: Lazard Frères & Co., Attn: Frank A. (Terry) Savage, 30 Rockefeller Plaza, New York, NY 10020, Facsimile: (212) 332-1748; (v) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, Attn: Fred S. Hodara, Stephen B. Kuhn, David H. Botter and Kenneth A. Davis, One Bryant Park, New York, New York 10036, Facsimile: (212) 872-1002; (vi) financial advisor to the Committee: Jefferies & Company, Inc., Attn: General Counsel, Investment Banking, 520 Madison Avenue, New York, New York, Facsimile: (212) 284-2280; (vii) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, Attn: Roland Hlawaty, One Chase Manhattan Plaza, New York, New York, 10006, Facsimile: (212) 822-5735; (viii) the Monitor: Murray A. McDonald, Ernst & Young Inc., Ernst & Young Tower, 222 Bay Street, P. O. Box 251, Toronto, ON M5K 1J7 Canada, Facsimile: (416) 943-3300; (ix) the Administrators: Ernst & Young LLP, Attn: Stephen Harris, 1 More Place, London SE1 2AF, United Kingdom, Facsimile +44 20 7951 9002; and (x) counsel to the Administrators: Herbert Smith LLP, Attn: Stephen Gale, Exchange House, Primrose Street, London, EC2A 2HS, Facsimile: +44 20 7098 4878; so as to be received not later than November 5, 2009 at 12:00 pm (Eastern) by the Sellers (the "<u>Bid Deadline</u>"). The Sellers, after consultation with the Committee, the Bondholder Group and the Monitor, may extend the Bid Deadline once or successively, but they are not obligated to do so. If the Sellers extend the Bid Deadline, they will promptly notify all Qualified Bidders and the other Notice Parties of such extension.

### Qualified Bid

A bid, including a Joint Bid, will be considered a Qualified Bid only if the bid is submitted by a Qualified Bidder, pursuant to the previous paragraph and complies with all of the following (a "Qualified Bid"):

(a)   it states that the applicable Qualified Bidder offers to purchase all or substantially all of the Assets upon the terms and conditions substantially as set forth in the Purchase Agreements, including, without limitation, with respect to certainty and timing of closing, or pursuant to an alternative structure (including, without limitation, an offer conditioned upon confirmation of a plan of reorganization proposed by the U.S. Debtors either individually or in collaboration with such Qualified Bidder) or upon alternative terms and conditions that the Sellers determine, after consultation with the Committee, the Bondholders Committee and the Monitor, are no less favorable than the terms and conditions of the Purchase Agreements;

(b)   it includes a letter stating that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and, if applicable, the Alternate Bidder (as defined below), provided that if such Qualified Bidder is selected as the Successful Bidder or the Alternate Bidder, its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the Successful Bidder or the Alternate Bidder, and (ii) (x) with respect to the Successful Bidder only, 180 days from the entry of the Sale Order, and (y) with respect to the Alternate Bidder only, the Alternate Bid Expiration Date (as defined below);

(c)   it includes duly authorized and executed purchase agreements, including the purchase price for the Assets expressed in U.S. Dollars (the "Purchase Price"), together with all exhibits and schedules thereto, including the French Offer (as such term is defined in Schedule 1 attached hereto) and, to the extent required by the terms and conditions of such bid, any ancillary agreements as described in the Purchase Agreements with all exhibits and schedules thereto (or term sheets that describe the material terms and provisions of such agreements), as well as copies of such materials marked to show those amendments and ancillary modifications to the Purchase Agreements ("Marked Agreements"), the French Offer (the "Marked French Offer") and such ancillary agreements (the "Marked Ancillary Agreements") and the proposed orders to approve the Sale by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval may be required, proposed by the Qualified Bidder;

(d)   it includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the proposed transaction, that will allow the Sellers, in consultation with the Committee, the Bondholder Group and the Monitor, to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transaction contemplated by the Marked Agreements, the Marked French Offer and the Marked Ancillary Agreements;

(e)   it is not conditioned on (i) the outcome of unperformed due diligence by the Qualified Bidder (and includes an acknowledgement and representation that the

Qualified Bidder has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer); (ii) obtaining financing and (iii) in the case of a Joint Bid, the resolution of any Interdependencies among the various Assets or entry of a cooperation agreement or similar agreement among the various participants in the Joint Bid;

(f)    it fully discloses the identity of each entity that will be bidding for the Assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation;

(g)    it includes an acknowledgment and representation that the Qualified Bidder will assume the Sellers' obligations under the executory contracts and unexpired leases proposed to be assigned pursuant to the Purchase Agreements (or identifies with particularity which of such contracts and leases of the US and Canada Debtors that the Qualified Bidder wishes not to assume, or alternatively which additional executory contracts or unexpired leases of the US and Canada Debtors that the Qualified Bidder wishes to assume), contains full details of the Qualified Bidder's proposal for the treatment of related cure costs; and it identifies with particularity any executory contract or unexpired lease the assumption and assignment of which is a condition to closing;

(h)    it includes an acknowledgement and representation that the Qualified Bidder: (i) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the Assets in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding the Assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Marked Agreements, the Marked French Offer or the Marked Ancillary Agreements; and (iii) is not entitled to any expense reimbursement or break-up fee in connection with its bid;

(i)    it includes evidence, in form and substance reasonably satisfactory to Sellers, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Marked Agreements, the Marked French Offer and Marked Ancillary Agreements;

(j)    it is accompanied by a good faith deposit ("Good Faith Deposit") in the form of a wire transfer (to a bank account specified by the Sellers), certified check or such other form acceptable to the Sellers, payable to the order of the Sellers (or such other party as the Sellers may determine) in an amount equal to US$10 million to be dealt with as provided for under "Good Faith Deposit" herein;

(k)    it (a) contains full details of the proposed number of employees of the Sellers, including, without limitation, NNSA (apportioned by jurisdiction(s)) who will become employees of the Qualified Bidder (save in jurisdictions where employees transfer by operation of law) and any proposed measures associated with the continued employment and associated with the employment of all employees who will become

employees of the Qualified Bidder, and (b) identifies any pension liabilities and assets related to any employees currently covered under any Nortel registered pension or retirement income plan who will become employees of the Qualified Bidder that the Qualified Bidder intends to assume or purchase;

(l)     it includes evidence of the Qualified Bidder's ability to comply with Section 365 of the U.S. Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Sellers and assigned or subleased to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases;

(m)     it contains other information reasonably requested by the Sellers; and

(n)     it is received by the Bid Deadline.

The Sellers will determine, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, whether to entertain bids for the Assets that do not conform to one or more of the requirements specified herein and deem such bids to be Qualified Bids.

The Sellers shall notify any Qualified Bidders in writing as to whether or not their bid constitutes a Qualified Bid promptly following the expiration of the Bid Deadline.

### Evaluation of Competing Bids

A Qualified Bid will be valued based upon several factors including, without limitation, items such as the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, the counterparties to such Transaction, the proposed revisions to the relevant Transaction documents, the effect of the Transaction on the value of the ongoing businesses of the Sellers (including ongoing relationships with customers and suppliers), other factors affecting the speed, certainty and value of the Transaction (including any regulatory approvals required to close the Transaction), any assets excluded from the bid, the estimated number of in-scope employees of the Sellers (apportioned by jurisdiction(s)) to be offered post-closing employment by the Qualified Bidder (save in jurisdictions where employees transfer by operation of law) and any proposed measures associated with the continued employment of all employees who will become the employees of the Qualified Bidder, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor. Following their review of the Qualified Bids and in consultation with their advisors, the Committee, the Bondholder Group and the Monitor, the Sellers reserve the right, in their sole discretion, to reject all Qualified Bids and/or withdraw from sale, in whole or in part, any Assets.

## No Qualified Bids

If the Sellers do not receive any Qualified Bids, the Sellers reserve the right, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor, to (i) extend the deadlines set forth in the Bidding Procedures without further notice, and (ii) withdraw from sale, in whole or in part, any Assets at any time and to make subsequent attempts to market the same.

## Auction

If the Sellers receive two or more Qualified Bids, the Sellers will conduct an auction (the "Auction") of the Assets, which shall be transcribed or recorded on video to the extent required under Delaware local practice, at 9:30 a.m. on November 9, 2009, at the offices of Cleary Gottlieb Steen & Hamilton LLP located at One Liberty Plaza, New York, New York 10006 or such other location as shall be timely communicated to all entities entitled to attend the Auction, which Auction may be cancelled or adjourned without the prior written consent of any Qualified Bidder. Copies of all Qualified Bids shall be delivered to the Committee, the Bondholder Group, the Monitor and the Administrators at such time that such bid is deemed a Qualified Bid but no later than one (1) Business Day prior to the Auction. The Auction shall run in accordance with the following procedures:

(a)     Only the Qualified Bidders that have timely submitted Qualified Bids, the Sellers, the Committee, the Bondholder Group, the Monitor and the Administrators (and the advisors to each of the foregoing), and any creditor of the North American Debtors shall attend the Auction in person (and the advisors to such Qualified Bidder), and only such Qualified Bidders will be entitled to make any subsequent bids at the Auction.

(b)     Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

(c)     At least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform the Sellers whether it intends to attend the Auction, provided that in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall nevertheless remain fully enforceable against such Qualified Bidder until (i) the date of the selection of the Successful Bidder at the conclusion of the Auction and (ii) if such bidder is selected as an Alternate Bidder (as defined below), the Alternate Bid Expiration Date. At least one (1) Business Day prior to the Auction, the Sellers will provide copies of the Qualified Bid which the Sellers believe, in their reasonable business judgment, after consultation with the Committee, the Bondholder Group and the Monitor, is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders that have timely submitted Qualified Bids and have informed the Sellers of their intent to attend the Auction.

(d)     All Qualified Bidders who have timely submitted Qualified Bids will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the true identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each

Subsequent Bid will be fully disclosed to all other bidders throughout the entire Auction, provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person.

(e)     The Sellers, after consultation with their counsel and financial advisors, the Committee, the Bondholder Group and the Monitor, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, the Canadian Court or any other applicable court entered in connection herewith, and (ii) disclosed to each Qualified Bidder at the Auction.

(f)     Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Sellers determine, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor that such Subsequent Bid is (A) for the first round, a higher or otherwise better offer than the Starting Bid, and (B) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below). Each incremental bid at the Auction shall provide net value to the estate of at least US $3 million over the Starting Bid or the Leading Bid, as the case may be, provided that the Sellers, in consultation with the Committee, the Bondholder Group and the Monitor, shall retain the right to modify the increment requirements at the Auction, and provided, further that the Sellers in determining the net value of any incremental bid to the estate shall not be limited to evaluating the incremental dollar value of such bid and may consider other factors as identified in the "Selection of Successful Bid" section of these Bidding Procedures, including, without limitation, factors affecting speed and certainty of obtaining regulatory approvals required to close the Transaction. After the first round of bidding and between each subsequent round of bidding, the Sellers shall announce the bid (and the value of such bid(s)) that it believes to be the highest or otherwise better offer (the "Leading Bid"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid. Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Sellers will, at each round of bidding, give effect to any additional liabilities to be assumed by a Qualified Bidder and any additional costs which may be imposed on the Sellers.

<u>Selection Of Successful Bid</u>

Prior to the conclusion of the Auction, the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor will (a) review each Qualified Bid that is either the Leading Bid or submitted subsequent to and as an improvement to the submission of the Leading Bid on the basis of financial and contractual terms and the factors relevant to the sale process, including, among other things, the proposed revisions to the transaction documents,

the effect of the Sale on the value of the ongoing businesses of Sellers (including ongoing relationships with customers and suppliers), the counterparties to such transactions, the purchase price and the net value (including assumed liabilities and the other obligations to be performed or assumed by the bidder) provided by such bid, the claims likely to be created by such bid in relation to other bids, other factors affecting the speed, certainty and value of the Sale (including any regulatory approvals required to close the Transaction), any assets excluded from the bid, the estimated number of in-scope employees of the Sellers to be offered post-closing employment by the Qualified Bidder (save in jurisdictions where employees transfer by operation of law) and any proposed measures associated with the continued employment of all employees who will become employees of the Qualified Bidder, the transition services required from the Sellers post-closing and any related restructuring costs, and the likelihood and timing of consummating such transaction, each as determined by the Sellers, in consultation with their advisors, the Committee, the Bondholder Group and the Monitor; (b) identify the highest or otherwise best offer for the Assets received in accordance with the Bidding Procedures (such bid, the "Successful Bid" and the Qualified Bidder making such bid, collectively, the "Successful Bidder"); and (c) communicate to the Qualified Bidders the identity of the Successful Bidder, the Alternate Bidder (as defined below), if any, and the details of the Successful Bid and Alternate Bid (as defined below), if any. The determination of the Successful Bid and Alternate Bid by the Sellers, after consultation with the Committee, the Bondholder Group and the Monitor, at the conclusion of the Auction, shall be final subject to approval by the Bankruptcy Court and the Canadian Court.

The Sellers will sell the Assets to the Successful Bidder pursuant to the terms of the Successful Bid (or, under certain circumstances described herein, the Alternate Bidder) upon the approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing, the approval by the Canadian Court and any required approvals of any other applicable court(s) with such Successful Bidder and approval and execution by the Administrators of the relevant Successful Bid transaction documents with such Successful Bidder (or, under certain circumstances described herein, the Alternate Bid transaction documents with the Alternate Bidder).

Sale Hearing

The sale hearing to authorize certain of the Sellers to enter into agreements with respect to the Successful Bid (the "Sale Hearing") will be held, in respect of those Sellers that are U.S. Debtors, before the Honorable Judge Kevin Gross (or any substitute therefor) in the United States Bankruptcy Court for the District of Delaware, located in Wilmington, Delaware, on a date to be scheduled by the court and currently proposed as November 19, 2009 at 1 p.m. (Eastern), and, in respect of those Sellers that are Canadian Debtors, before the Honourable Mr. Justice Geoffrey B. Morawetz (or any substitute therefor) in the Ontario Superior Court of Justice, in Toronto, Ontario, on a date to be scheduled by the court and currently proposed as November 19, 2009 at 1 p.m. (Eastern), and in any other applicable court(s) whose approval is required, as soon as practicable following the date of the Sale Hearing (or, with respect to the Canadian Court, in a joint hearing with the Bankruptcy Court at the Sale Hearing). The Sale Hearing and any hearings of any other applicable court(s) to approve the entering into agreements with respect to the Successful Bid, may be adjourned or rescheduled by the Sellers without further notice by an announcement of the adjourned date at the Sale Hearing or, in the case of an adjournment of a relevant hearing of any other applicable court, at such hearing. If the

- 13 -

Sellers do not receive any Qualified Bids, the Sellers shall proceed as set forth in the "No Qualified Bids" section above. If the Sellers receive one or more Qualified Bid(s), then, at the Sale Hearing and at any other hearings of any other applicable court(s) to approve the entering into agreements with respect to the Successful Bid, the Sellers will seek approval of the Successful Bid, and, at the Sellers' election, the next highest or best Qualified Bid (the "Alternate Bid" and, such bidder, the "Alternate Bidder"). The Sellers' presentation to the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval is legally required, of the Successful Bid, and, if applicable, the Alternate Bid will not constitute the Sellers' acceptance of either of such bids, which acceptance will only occur upon the latest approval of such bids to be delivered by the Bankruptcy Court at the Sale Hearing, the Canadian Court and any other applicable court(s) whose approval is legally required. Following approval of the Sale to the Successful Bidder, if the Successful Bidder fails to consummate the Sale for any reason, then the Alternate Bid will be deemed to be the Successful Bid and the Sellers will be authorized, but not directed, to effectuate a Sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court, the Canadian Court or any other court. The Alternate Bid shall remain open until 45 days from the conclusion of the Auction (the "Alternate Bid Expiration Date"). All Qualified Bids (other than the Successful Bid and the Alternate Bid) shall be deemed rejected by the Sellers on and as of the date of approval of the Successful Bid and the Alternate Bid by the Bankruptcy Court, the Canadian Court and any other applicable court(s) whose approval is required, as indicated above.

### Good Faith Deposits

The Good Faith Deposit of any Alternate Bidder shall be retained by the Sellers until the Alternate Bid Expiration Date and returned to the Alternate Bidder within seven (7) days thereafter or, if the Alternate Bid becomes the Successful Bid, shall be applied to the purchase price to be paid by the Alternate Bidder in accordance with the terms of the Alternate Bid. The Good Faith Deposits of Qualified Bidders not selected as either the Successful Bidder or Alternate Bidder shall be returned to such bidders within five (5) Business Days of the date of the selection of the Successful Bidder and the Alternate Bidder. The Good Faith Deposit of the Successful Bidder will be applied in accordance with the terms of the Successful Bid.

### Reservation Of Rights

The Sellers, after consultation with their advisors, the Committee, the Bondholder Group and the Monitor, and their respective advisors, (a) after each round of bidding at the Auction may determine which Qualified Bid, if any, is the highest or otherwise best offer and the value thereof; (b) may reject, at any time, any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, any orders of the Canadian Court or any other orders applicable to one or more Sellers, or the terms and conditions of the Sale, (iii) contrary to the best interests of the Sellers, their estates, and stakeholders as determined by the Sellers in consultation with the Committee, the Bondholder Group and the Monitor, or (iv) contrary to the statutory duties or legal obligations of the Administrators in relation to the exercise of their duties or functions as administrators of certain EMEA Sellers; (c) may impose additional terms and conditions and otherwise modify the Sale Procedures at any time; (d) withdraw from sale any Assets at any time and make subsequent attempts to market the same; and (e) reject all bids.

- 14 -

46

For the purposes of these Bidding Procedures and all matters relating to them, the Administrators are acting only as agents for and on behalf of the EMEA Sellers that are controlled by the Administrators pursuant to the UK Proceedings and without personal liability.

47

## SCHEDULE 1
## BIDDING PROCEDURES – FRENCH SUPPLEMENT

This document (the "French Supplement") supplements the Bidding Procedures to be employed with respect to the proposed sale of certain assets and assumption of certain liabilities pertaining to the global GSM/GSM-R business of Nortel.

Capitalized terms used but not defined herein have the meanings ascribed to them in the Bidding Procedures.

On May 28, 2009, at the request of the UK Administrator of NNSA and in accordance with Council Regulation (EC) No 1346/2000 of 29 May 2000 on insolvency proceedings (the "EC Regulation"), the Commercial Court of Versailles, France, (the "French Court") ordered the commencement of secondary proceedings (the "Secondary Proceedings") in respect of NNSA. In accordance with the EC Regulation and applicable French laws, the Secondary Proceedings consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial three-month period and, in accordance with a judgment of the French Court of August 20, 2009, will continue to operate as a going concern for another three-month period, provided that this second three-month period has been further extended as a result of the suspension of the liquidation process under the Secondary Proceedings in accordance with a judgment of the French Court of October 1, 2009 rendered at the request of the U.K. Administrator. In accordance with the EC Regulation, the U.K. administration proceedings remain the main proceedings in respect of NNSA. However, a French administrator (the "French Administrator") has been appointed and is in charge of the day-to-day affairs and continuing business of NNSA and a French liquidator (the "French Liquidator") has also been appointed and is in charge of the sale process of the business of NNSA. The French Administrator and the French Liquidator will remain in place during the suspension of the Secondary Proceedings.

### Publication Notice

The publication of the Sale Notice in The Wall Street Journal (National Edition), The Globe and Mail (National Edition) and The Financial Times (International Edition) contemplated by the "Publication Notice" section of the Bidding Procedures will be supplemented by the concurrent publication in each such newspapers of this French Supplement. In addition, the French Administrator and the French Liquidator will publish in Les Echos a French translation of the Sale Notice and of this French Supplement as soon as reasonably practicable after entry of orders by the Bankruptcy Court and the Canadian Court approving the Bidding Procedures, but in any event no more than fifteen (15) days after the entry of such orders.

### Bid Deadline

In addition to the delivery of its bid to the Notice Parties, a Qualified Bidder that desires to make a bid will deliver written copies of its bid to (i) the French administrator: Me. Franck Michel, AJAssociés, 10 allée Pierrede Coubertin 78000 Versailles, France , Facsimile: +33 1 39 50 87 52; (ii) the French Liquidator: Me Cosme Rogeau, 26 avenue Hoche 78000 Versailles, France, Facsimile: +33 1 39 49 44 63; and (iii) counsel to the French Administrator and the French Liquidator: Foucaud, Tchekhoff, Pochet et Associés, Attn: Antoine Tchekhoff and Edouard Fabre, 1bis avenue Foch 75116 Paris, France, Facsimile: +33 1 45 00 08 19.

Notwithstanding the Bid Deadline applicable to the making of bids in accordance with the Bidding Procedures, the Successful Bidder will be expected to file with the French Court in accordance with applicable French laws shortly after the conclusion of the Auction and prior to the U.S. Sale Hearing an offer for the acquisition of NNSA's GSM/GSM-R assets and business (the "French Offer"). The Purchase Agreements among the Sellers and the Successful Bidder shall contain a commitment from the Successful Bidder(s) to that effect.

The French Court will determine in due course the deadline for the filing of the French Offer with the French Court. The French Administrator and the French Liquidator will announce such deadline by way of a publication in Les Echos in French and in The Financial Times (International Edition) in English. Such publications will supplement the announcement published by the French Administrator in French in Les Echos on September 4, 2009, and in English in the Financial Times on September 3, 2009.

### Reservation Of Rights

The "Reservation of Rights" section of the Bidding Procedures is incorporated herein by reference.

For the purposes of this French Supplement and all matters relating to them, the French Administrator and the French Liquidator are acting solely as agents for and on behalf of NNSA and without personal liability.

49

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

| | *ONTARIO*<br>SUPERIOR COURT OF JUSTICE<br>(COMMERCIAL LIST)<br><br>Proceeding commenced at Toronto |
|---|---|
| | **ORDER**<br>**(GSM/GSM-R Bidding Procedures Order)** |
| | **OGILVY RENAULT LLP**<br>Suite 3800<br>Royal Bank Plaza, South Tower<br>200 Bay Street<br>P.O. Box 84<br>Toronto, Ontario M5J 2Z4, Canada<br><br>**Derrick Tay LSUC#: 21152A**<br>Tel: (416) 216-4832<br>Email: dtay@ogilvyrenault.com<br><br>**Mario Forte  LSUC#: 27293F**<br>Tel: (416) 216-4870<br>Email: mforte@ogilvyrenault.com<br><br>**Jennifer Stam LSUC #46735J**<br>Tel: (416) 216-2327<br>Email: jstam@ogilvyrenault.com<br>Fax: (416) 216-3930<br>Lawyers for the Applicants |

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

MOTION RECORD
GSM/GSM-R Business Bidding Procedures
(returnable October 15, 2009)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4
CANADA

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1784226\1