**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X
:
: Chapter 11
:
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
:
---------------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1) SHORTENING NOTICE RELATING TO CERTAIN ELEMENTS OF DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (E) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS' METRO ETHERNET NETWORKS BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this court (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Delaware (the "Local Rules") (i) to permit consideration on shortened notice of certain elements (as further described below) of Debtors' Motion (the "Sale Motion")[2] for Orders, (I)(A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement (the "Stalking Horse Agreement"), (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the Assumption and Assignment Procedures, (D) Authorizing the Filing of Certain Documents Under Seal, and (E) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets (the "Purchased Assets") of Debtors' Metro Ethernet Networks Business (the "MEN Business") Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts (the "Assumed and Assigned Contracts" and, together with the Purchased Assets, the "Assets"); and (ii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors rely on the Declaration of George Riedel in Support of the Sale Motion (the "Riedel Declaration").  In further support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory basis for the relief requested herein is section 102(1) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 9006 and Local Rule 9006-1(e).

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Sale Motion.

**Background**

**A.    Introduction**

1.      On January 14, 2009 (the "Petition Date"), the Debtors other than NN CALA (as defined below) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

4.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main

---

[3]  The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3

proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main

---

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

4

proceedings under chapter 15 of the Bankruptcy Code.

5. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

6. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors also has been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

7. On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, the Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B. Debtors' Corporate Structure and Business**

8. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

9. On June 19, 2009, the Debtors filed a motion seeking approval of the sale of

assets associated with their 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA") and 4G broadband wireless technologies including Long Term Evolution ("LTE") to Nokia Siemens Networks B.V., subject to the receipt of higher and better offers at auction [D.I. 931].  On July 28, 2009, the Court entered an order approving the sale of the CDMA and LTE assets to Telefonaktiebolaget LM Ericsson (Publ) as the successful bidder at auction [D.I. 1205].  The Debtors are currently working to satisfy all closing conditions necessary to close the sale.

10.    On July 20, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their Enterprise Solutions business to Avaya Inc., subject to the receipt of higher and better offers [D.I. 1131].  On September 16, 2009, the Court entered an order approving the sale to Avaya Inc. as the successful bidder at auction [D.I. 1514].  The Debtors are currently working to close the sale later this year (subject to certain closing conditions).

11.    On September 21, 2009, the Debtors filed a motion seeking approval of procedures to govern the sale of their Next Generation Service Packet Core Network Components [D.I. 1525].  On September 30, 2009, the Court entered an order approving certain procedures related to the sale, and scheduling a hearing to consider the sale on October 28, 2009, [D.I. 1584].

12.    On September 30, 2009, the Debtors filed a motion seeking approval of procedures to govern the sale of assets associated with their GSM/GSM-R business [D.I. 1587].  On October 1, 2009, this Court entered an order setting October 15, 2009 as the date for a hearing to consider the sale procedures [D.I. 1595].

13.    In addition, the Debtors previously sold certain non-core assets related to their enterprise "Layer 4-7" business to Radware Ltd.  The sale, which was approved by this Court on

March 26, 2009 [D.I. 539] and by the Canadian Court on March 30, 2009, closed on March 31, 2009.

**Relief Requested**

14.     By this Motion, the Debtors seek an order (i) shortening the notice period required for a hearing on those portions of the Sale Motion seeking (a) authorization of the Debtors entry into the Stalking Horse Agreement, (b) authorization and approval of the Bidding Procedures and Bid Protections, (c) approval of the Notice Procedures and the Assumption and Assignment Procedures, (d) authorization for the Debtors to file certain documents under seal and (e) the scheduling of the time, date, and place of the Sale Hearing, and setting October 15, 2009 as the hearing date for said relief; (ii) setting October 14, 2009 at 4:00 p.m. (Eastern) as the deadline to object to those portions of the Sale Motion requesting the aforementioned relief; and (iii) granting such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

15.     As set forth more fully in the Sale Motion, certain of the Debtors and the Sellers have entered into the Stalking Horse Agreement pursuant to which the Sellers propose to sell to Ciena Corporation ("Ciena" or the "Stalking Horse Purchaser") certain assets and assume and assign certain executory contracts of the Debtors relating to their MEN Business. As set forth in the Riedel Declaration, the potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold. While it is clear that the Assets have significant value, the full value of these Assets may not be realized if a sale is not consummated quickly.

16.     The Debtors entered into the Stalking Horse Agreement after extensive marketing efforts and negotiations with multiple interested parties. As a result, the Debtors believe that the Stalking Horse Agreement and the EMEA Agreement represent the best deal available for the

sale of the Assets. The Stalking Horse Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Stalking Horse Agreement if certain milestones in the sale process are not timely met. For example, if this Court does not approve the Bidding Procedures Order by October 19, 2009, the Stalking Horse Purchaser may terminate the Stalking Horse Agreement. In light of this background, the Debtors believe it is essential to commence and complete this sale process as quickly as possible.

## Basis for Relief Requested

17. Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). As set forth below, shortening notice is justified here.

18. The Debtors respectfully submit that shortened notice is appropriate in this instance because the expeditious sale of the Assets is critical to the maximization of the value of the Debtors' assets and, in turn, to a recovery for the Debtors' estates. Therefore, the Debtors believe that a hearing on the Sale Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

19. The Debtors have consulted with the Committee about the relief sought in this Motion and in the Sale Motion, and understand that the Committee has no objection to the relief being sought in this Motion. The Debtors have also consulted with the Monitor, who is seeking a similar timeline for the sale process in the Canadian Proceedings.

20. For these reasons, the Debtors respectfully submit that allowing the Sale Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

**Notice**

21. Notice of the Motion is being given via facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Stalking Horse Purchaser; (ii) the Office of the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

22. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: October 7, 2009<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (No. 5125)<br>Lisa M. Schweitzer (No. 1033)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors and Debtors in Possession* |