**<u>Exhibit A – Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
--------------------------------------------------------X
                                                        :
In re                                                   :        Chapter 11
                                                        :
Nortel Networks Inc., et al.,[1]                        :        Case No. 09-10138 (KG)
                                                        :
              Debtors.                                  :        Jointly Administered
                                                        :
--------------------------------------------------------X
```

**ORDER APPROVING STIPULATION BETWEEN NORTEL NETWORKS**
**INCORPORATED AND THE INTERNAL REVENUE SERVICE**

Upon the stipulation (the "Stipulation"),[2] attached hereto as **Exhibit A**, between the above-captioned debtor and debtor-in-possession ("NNI" or "Debtor") and the Internal Revenue Service (the "IRS") regarding Debtor NNI's Objection to Proof of Claim Filed by the Internal Revenue Service (the "Objection"); and the Court being satisfied that approval of the Stipulation is in the best interest of the Debtor's estate; and due and adequate notice of the Objection having been given under the circumstances; and all parties in interest having been heard or having had the opportunity to be heard; and it appearing that the relief requested is in the best interests of the Debtors' estates and their creditors and other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]      A copy of the Stipulation is attached hereto as Exhibit A.  Capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation.

1.      The Stipulation is APPROVED.

2.      Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.  The IRS shall deliver to NNI at the closing of the sale of the Enterprise Business to Avaya a Closing Agreement signed by the IRS in the form attached to the Stipulation as Exhibit A.

3.      The October 13, 2009 hearing on Debtor NNI's Objection to Proof of Claim Filed By the Internal Revenue Service shall be adjourned without date.

4.      The Debtor is authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order.

5.      The Court shall retain exclusive jurisdiction with respect to all matters relating to the interpretation, implementation, and enforcement of this Order and the Stipulation.

Dated: _____, 2009
          Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Stipulation**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
                                       :

In re                               :       Chapter 11
                                         :

Nortel Networks Inc., et al.,[1]      :       Case No. 09-10138 (KG)
                                         :

          Debtors.              :       Jointly Administered

---------------------------------------------------------X

**STIPULATION BETWEEN NORTEL NETWORKS INCORPORATED**
**AND THE INTERNAL REVENUE SERVICE**

This stipulation (the "Stipulation") is entered into by and between Nortel Networks Incorporated ("NNI") and the U.S. Department of Justice on behalf of the Internal Revenue Service ("IRS") (sometimes collectively referred to herein as the "Parties" and individually as a "Party"), with respect to the following facts:

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and its affiliated debtors and debtors-in-possession (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

WHEREAS, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

---

1      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

WHEREAS, on January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142], an ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"), and no trustee or examiner has been appointed in the Debtors' cases; and

WHEREAS, on August 4, 2009, the Court entered the Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order") [D.I. 1084]; and

WHEREAS, on August 20, 2009, the IRS filed an amended proof of claim bearing the claim identification number 1935 which asserts an unsecured priority claim against NNI pursuant to section 507(a)(8) of the Bankruptcy Code for the tax years 1998-2008, for income taxes due in the amount of $1,804,637,586.00, and interest to the Petition Date in the amount of $1,162,748,632.82, for an aggregate amount of $2,967,386,218.82, and an unsecured non-priority claim for penalties (including interest thereon) to date in the amount of $49,264,612.00, for a total claim of $3,016,650,830.82, and an unassessed, unliquidated and contingent FICA withholding tax claim; and

WHEREAS, NNI and its subsidiaries, including Nortel Government Solutions Inc. and its subsidiaries (collectively, "NGS") and DiamondWare Ltd. ("DiamondWare"), file federal tax returns on a consolidated basis (collectively the "NNI Filing Group"); and

2

WHEREAS, on September 11, 2009 through September 14, 2009, an auction took place for Nortel's Enterprise Solutions Business (the "Enterprise Business"), which includes 100 percent of the shares of NGS and DiamondWare (the "Non-Debtor Subsidiaries"); and

WHEREAS, the Asset and Share Sale Agreement for the Enterprise Business includes a purchase condition stipulating that the winning bidder, Avaya Inc. ("Avaya"), is permitted to terminate the agreement unless by October 15, 2009 the IRS Claim (as defined below) is resolved to its reasonable satisfaction, or, in the alternative, the Non-Debtor Subsidiaries file Chapter 11 petitions, which would be costly to Nine's estate; and

WHEREAS, on September 15, 2009, Debtor filed with the Bankruptcy Court Debtor NNI's Objection to Proof of Claim Filed by the Internal Revenue Service (the "Claim Objection"), pursuant to 502(d) of title 11 of the Bankruptcy Code, seeking disallowance of the IRS Claim on the grounds that it is partially time-barred and without reasonable basis; and

WHEREAS, on September 16, 2009 the Bankruptcy Court also ordered that the IRS Claim would be considered at an expedited hearing on October 13, 2009; and

WHEREAS, following arms-length negotiations between the Parties, and in order to avoid the cost and risk inherent in litigating the IRS Claim on an expedited schedule, the Parties have agreed to this Stipulation.

NOW, THEREFORE, the Parties wish to resolve a portion of their dispute regarding the IRS Claim for the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged. The Parties agree as follows:

1.      Incorporation of Recitals.  The foregoing recitals are incorporated herein by reference as if fully set forth.

2.      IRS –6 Waiver and Release.  At the closing of the sale of the Enterprise Business to Avaya and contemporanously with the payment by Avaya into escrow of the Enterprise Proceeds (as defined below), the IRS will release, and waive against, NGS and DiamondWare and their respective assets, any claim, lien, interest or obligation for several liability, the right to assert or take any action giving rise to any such claim, lien, interest or obligation, and the right to assess or impose any such liability, arising under Treasury Regulation section 1.1502-6 and relating to any U.S. federal tax liabilities of NNI and its "consolidated group" for U.S. federal tax purposes (respectively, the "-6 Waiver" and the "Nortel Parties") for the taxable year ended December 31, 2005, and for each subsequent taxable year during which NGS and DiamondWare are members of NNI's consolidated group under Internal Revenue Code section 1502 and the regulations thereunder, by delivering to NNI an original of the Closing Agreement by and among the IRS, NNI, NGS and DiamondWare, in the form attached hereto as Exhibit A.

3.      The IRS Agreed Claim. In consideration for the -6 Waiver, NNI acknowledges a claim in favor of the IRS (the "IRS Agreed Claim") in respect of corporate alternative minimum tax for NNI's taxable year ending on December 31, 2005 through NNI's taxable year ending on December 31, 2008 in an amount of not less than $8.0 million for corporate alternative minimum tax and $1.8 million for interest and penalties (collectively, the "Minimum Claim Amount") and grants to the IRS a lien in respect of the IRS Agreed Claim on that portion of the Enterprise Proceeds (as defined below) ultimately allocated to the NGS Shares

and the DiamondWare Shares (respectively, the "<u>IRS Lien</u>" and the "<u>Share Sale Proceeds</u>"), such sale to be effectuated pursuant to the Amended and Restated Asset and Share Sale Agreement by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., and other identified sellers, and Avaya Inc., dated as of September 14, 2009 (as amended and as may be amended from time to time, the "<u>Avaya Agreement</u>"), which was approved by the Bankruptcy Court pursuant to the Order Authorizing and Approving (A) The Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) The Assumption and Assignment of Certain Contracts and Leases and (C) The Assumption and Sublease of Certain Leases entered by the Bankruptcy Court on September 16, 2009 (the "<u>Sale Order</u>"), *provided, however,* that nothing in this Stipulation, including without limitation the agreement to the Minimum Claim Amount, constitutes either an acknowledgment or admission by NNI or any of the Nortel Entities of the correctness of any legal theory or position that has been or could have been advanced by the IRS to support the IRS Claim (as defined below) or the IRS Agreed Claim, or an acknowledgment or admission concerning the amount of any potential tax liability of NNI or the Nortel Entities whatsoever related to the Minimum Claim Amount.

4.    <u>Subordination to the PBGC</u>. The Parties hereby acknowledge and agree that the IRS Lien created hereby is junior to and subordinated in all respects to the rights of the Pension Benefit Guaranty Corporation ("<u>PBGC</u>") to assert a lien against the assets of NGS and DiamondWare pursuant to Section 4068 of the Employee Retirement Income Security Act of 1974 ("<u>ERISA</u>"), whether or not the PBGC asserts a lien or waives such rights pursuant to a settlement agreement with the Debtors, and will be similarly subordinated to any rights of the PBGC against such Share Sale Proceeds that are (i) granted to the PBGC pursuant to such a

settlement agreement, and (ii) in respect of an amount not greater that the PBGC Lien Amount.

The preceding sentence shall apply, however, only to the extent of the amount of any such lien in

favor of the PBGC that is consistent with the limits contained in Section 4068 of ERISA (the

"PBGC Lien Amount").  The Parties acknowledge and NNI hereby agrees that the portion of the

proceeds received pursuant to the Avaya Agreement (collectively, the "Enterprise Proceeds")

constituting the the Share Sale Proceeds will be held in an escrow account until such time as (i)

the amount of the Share Sale Proceeds are determined and attributed to the NGS Shares and the

DiamondWare Shares; (ii) the PBGC Lien Amount is determined; and (iii) entry of an order of

the Bankruptcy Court permitting distribution of the Share Sale Proceeds.

     5.    <u>Scope of IRS Release</u>.  Without limiting the scope of the scope of

paragraph 2 above, the IRS acknowledges that the NGS Shares and the DiamondWare Shares

shall constitute in all regards "Transferred Property" as defined and referenced in the Sale Order

and shall be conveyed to Avaya Inc. free and clear of any and all claims of the IRS against NNI

or any of the other Nortel Entities, including without limitation, the claim described in the IRS

Claims described in the Proofs of Claim filed by the IRS, dated as of February 13, 2009, May 22,

2009 and August 20, 2009, bearing the respective claim identification numbers 250, 1226

and1935, (collectively, the "<u>IRS Claim</u>") and the IRS Agreed Claim.

     6.    <u>Additional Agreements</u>.  NNI and the IRS agree to adjourn the October

13, 2009 hearing now scheduled to consider Debtor NNI's Objection to Proof of Claim Filed By

the Internal Revenue Service, filed with this Court on September 15, 2009, without date.  Within

2 days of approval of this Stipulation by the Bankruptcy Court, the IRS will withdraw its Motion

for Withdrawal of Reference of all Issues Relating to Debtor NNI's Objection to Proof of Claim filed by the Internal Revenue Service.

       7.    <u>No Reliance</u>.  The Parties acknowledge and agree that neither has relied on any statement or representation of any other Party, person or entity in determining to enter into this Stipulation or the Closing Agreement attached hereto as Exhibit A.

       8.    <u>No Admissions</u>.  Each Party acknowledges that nothing in this Stipulation constitutes an admission or concession of any legal issue raised.  Except as otherwise expressly stated herein and to the extent of the Minimum Claim Amount, this Stipulation is not intended to be, nor shall it have the effect of being, an acceptance by the Nortel Entities for U.S. federal tax purposes of, or an agreement between the Nortel Entities and the IRS on, the amounts alleged in the IRS Claim.  The Nortel Entities reserve all of their rights, including without limitation, with respect to non-substantive and substantive objections to the IRS Claim and any related allocation procedures, and this Stipulation shall not be treated as a waiver of any defenses or counterclaims to the IRS Claim, including any amendments thereto.  The rights of the IRS are reserved in similar fashion.

       9.    <u>Minimum Claim Amount</u>.  Upon the final determination of the tax liability of NNI and the other Nortel Entities, if such final tax liability is less than $9.8 million dollars, the amount of the IRS Lien shall be fixed at $9.8 million dollars.

       10.    <u>Construction of Terms</u>.  All capitalized terms used and not defined herein shall have their meanings in the Avaya Agreement.

11.    <u>Binding Effect</u>.  Upon entry by the Bankruptcy Court, this Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the parties hereto, including but not limited to, any trustee or receiver subsequently appointed in this case.

12.    <u>Entire Agreement</u>.  Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Stipulation, and that this Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.  It is expressly understood and agreed that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each Party or the authorized representatives of each of the Parties.  Each Party hereby agrees that such Party will make no claim at any time or place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

13.    <u>Costs and Expenses</u>.  Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

14.    <u>Jurisdiction</u>. NEW YORK LAW SHALL GOVERN THE CONSTRUCTION OF NON-BANKRUPTCY PROVISIONS, IF ANY AND TO THE EXTENT APPLICABLE, RELEVANT TO THIS STIPULATION, WITHOUT REGARD TO THE CONFLICTS OF LAWS OR PRINCIPLES THEREOF.  THE PARTIES ACKNOWLEDGE AND AGREE THAT THE UNITED STATES BANKRUPTCY COURT FOR

THE DISTRICT OF DELAWARE SHALL HAVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE PARTIES WITH RESPECT TO THIS STIPULATION.

15.    <u>Representative Capacity</u>.    Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

16.    <u>Participation In Drafting</u>.    Each Party represents and warrants that it has participated in the drafting and preparation of this Stipulation.    In any construction of this Stipulation, the Stipulation shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

17.    <u>Covenant of Good Faith</u>.    Each Party hereto covenants that it has entered into this Stipulation in good faith, and agrees to do all things necessary or convenient to carry out and effectuate the terms of this Stipulation, including, without limitation, the execution of all further and additional documents, and not to do or fail to do anything, directly or indirectly, that will interfere with the terms or conditions hereof or adversely affect any of the rights provided for herein.

18.    <u>Manner of Execution</u>.    This Stipulation may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto were on the same instrument, and such counterparts shall be construed together as one instrument.    Facsimile or pdf signatures shall be deemed original signatures.

19.    <u>Court Approval</u>.    All provisions of this Stipulation are subject to the approval of the Bankruptcy Court.    NNI shall seek approval by the Bankruptcy Court on or before October 13, 2009 of (a) this Stipulation and (b) the Stipulation being entered into between

NNI and the PBGC (the "PBGC Stipulation", and together with this Stipulation, the "Stipulations"). This Stipulation shall terminate immediately and have no further force or effect if approval by the Bankruptcy Court of the Stipulations is not obtained on or before October 13, 2009, or such later date as to which the Parties mutually agree.

20.    Consent to Entry of Order.  The Parties hereby agree to the entry of an order by the Delaware Bankruptcy Court approving this Stipulation.

21.    The Parties hereto agree that Avaya, Inc. and its subsidiaries, or such other purchaser of the Enterprise Business, are intended beneficiaries of this Stipulation and may enforce the –6 Waiver.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: *October 7, 2009*

NORTEL NETWORKS INCORPORATED

Peter Look
Authorized Signatory

INTERNAL REVENUE SERVICE

William Bradley Russell
Trial Counsel
Department of Justice
Counsel to the Internal Revenue Service

10

**Exhibit A**

Form **906** (Rev. 8-1994)

Department of the Treasury—Internal Revenue Service
# Closing Agreement On Final Determination
# Covering Specific Matters

Under section 7121 of the Internal Revenue Code

(Taxpayer's name, address, and identifying number)

and the Commissioner of Internal Revenue make the following closing agreement:

WHEREAS, Nortel Networks Inc. & Subsidiaries (EIN042486332) filed a consolidated federal income tax return for the tax years ended December 31, 2005, through December 31, 2008.

WHEREAS, on January 14, 2009, Nortel Networks Inc. ("NNI") filed for bankruptcy protection and is a debtor in a Chapter 11 proceeding pending in the United States Bankruptcy Court for the District of Delaware, Case No. 09-10138(KG); and

WHEREAS, on or about August 20, 2009, the Internal Revenue Service filed an amendment to its proof of claim setting forth an unpaid federal tax liability of  $2,967,386,218.82, consisting of $1,804,637,586.00 in tax due and $1,162,748,632.82 in interest due to the date of the bankruptcy petition; and

WHEREAS, NNI has filed an objection to said claim and that objection is currently pending; and

WHEREAS, Treasury Regulation section 1.1502-6 provides that the subsidiaries of NNI are severally liable for the tax liability of NNI; and

WHEREAS, the sale of the stock of two of NNI non-debtor subsidiaries, (1) Nortel Government Solutions, Inc. (EIN541339972) and its subsidiaries AC Technologies, Inc. (EIN 541679296) and Integrated Information Technology Corporation (EIN 371278528) (collectively, "NGS"); and (2) DiamondWare Ltd. (EIN860813505) ("DiamondWare"), was agreed on September 14, 2009, and approved by the Bankruptcy Court by Order of September 16, 2009; and

WHEREAS, NNI and the Internal Revenue Service entered into a stipulation in the bankruptcy proceeding (the "Stipulation") whereby the IRS agrees to waive any claim for any federal income tax liabilities against  (1) NGS and (2) DiamondWare and in consideration for such waiver NNI has sought and the Bankruptcy Court granted, by Order dated [10/13/2009], the IRS a lien on the proceeds of the sale of the stock of NGS and Diamond Ware; and

WHEREAS, simultaneously with the delivery of this executed Closing Agreement the proceeds of the above reference sale are being paid into an escrow account to be held pending an order of the Bankruptcy Court.

NOW IT IS HEREBY DETERMINED AND AGREED for federal tax purposes that:

Form **906** (Rev. 8-1994)

The IRS releases, and waives against NGS and DiamondWare, and their respective assets, any claim, lien, interest or obligation for the several liability, the right to assert or take any action giving rise to any such claim, lien, interest or obligation, and the right to assess or impose any such liability, arising under Treasury Regulation section 1.1502-6 and relating to any United States federal income tax liabilities of NNI and its "consolidated group" for United States federal income tax purposes for the taxable year ended December 31, 2005, and for each subsequent taxable year during which NGS and DiamondWare are members of NNI's consolidated group under IRC Section 1502 and the regulations thereunder.

The IRS, NNI, NGS and DiamondWare hereto agree that Avaya, Inc. and its subsidiaries, or such other purchaser of the Enterprise Business, are intended beneficiaries of this Closing Agreement and may enforce this Closing Agreement.

All capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Stipulation.


## THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

## SIGNATURE PAGE FOLLOWS

Form **906** (Rev. 8-1994)

**This agreement is final and conclusive except:**

(1) the matter it relates to may be reopened in the event of fraud, malfeasance, or misrepresentation of material fact;

(2) it is subject to the Internal Revenue Code sections that expressly provide that effect be given to their provisions (including any stated exception for Code section 7122) notwithstanding any other law or rule of law; and

(3) if it relates to a tax period ending after the date of this agreement, it is subject to any  law, enacted after the agreement date, that applies to that tax period.

Your Signature_____     Date Signed:_____

Spouse's Signature_____     Date Signed:_____

Taxpayer's Representative_____     Date Signed:_____

Taxpayer (other than Individual)_____

      By:_____     Date Signed_____

      Title:_____

Taxpayer (other than Individual)_____

      By:_____     Date Signed_____

      Title:_____

Taxpayer (other than Individual)_____

      By:_____     Date Signed_____

      Title:_____

Commissioner of Internal Revenue

      By:_____     Date Signed:_____

      Title:_____

Form **906** (Rev. 8-1994)

| I have examined the specific matters involved and recommend the acceptance of the proposed agreement. | I have reviewed the specific matters involved and recommend approval of the proposed agreement. |
| --- | --- |
| Receiving Officer                    Date | Receiving Officer                    Date |
| Title | Title |

Form **906** (Rev. 8-1994)