**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
: Chapter 11
:
*In re* :
: Case No. 09-10138 (KG)
:
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
:
Debtors. :
:
:
:
---------------------------------------------------------------X

**DECLARATION OF SALLY EL SHALAKANY IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF PREPETITION TERMINATION BENEFITS TO CERTAIN ADDITIONAL FOREIGN EMPLOYEES**

I, Sally El Shalakany, do hereby declare as follows:

1. I am a senior associate at the Shalakany Law Office, which maintains an office for the practice of law at, among other places, 12 El-Maraashly Street, Zamalek, Cairo, Egypt. I am a member of the Egyptian Bar Association.

2. I have been practicing Egyptian law for 10 years and am knowledgeable in the areas of Egyptian employment law and corporate and commercial law.

3. I submit this declaration in support of the Debtors' Motion for Entry of an Order Authorizing Payment of Prepetition Termination Benefits to Certain Additional Foreign Employees (the "Motion"). Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, upon my opinion based on my experience and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

knowledge, upon information supplied to me by the above-captioned Debtors' management and professionals or upon information learned from my review of relevant documents. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. I understand that the Debtors are planning to terminate the employment of a small number of employees based in their Cairo Office by the end of October 2009. Additionally, I understand that the Debtors anticipate possible additional terminations in the Cairo Office in the coming month. In connection with these terminations, I have been asked to advise the Debtors of their obligations under Egyptian law if they were to proceed with these terminations.

5. Under Egyptian law, before an employer may terminate an employee because of economic redundancy reasons, the employer must submit a request to an Egyptian governmental committee for approval of the termination. Additionally, the employer must make a severance payment equivalent to one month of the employee's wages for each of the first five years of the employee's service. For each year of employment exceeding five years, severance payments must amount to one and a half months of the terminated employee's wages. Employers also must provide payments for unused vacation days and other payments and termination benefits promised in the employee's employment agreement. Since convening the Egyptian governmental committee and obtaining its approval can be time consuming, employers and employees typically reach consensual agreements by which employees resign in exchange for severance payments that usually amount to two months' wages for each year of the employee's service.

6. Under Egyptian law, NNI's obligations to terminated employees based in the Cairo Office are unaffected by the Debtors' ongoing bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. As such, it is unlikely that courts and other

entities in Egypt would find that the jurisdiction of the United States Bankruptcy Court for the District of Delaware is relevant to the obligation to pay the termination expenses described above, or that the automatic stay imposed by section 362 of the United States Bankruptcy Code protects the Debtors from having to pay such termination expenses.  If the Debtors were to attempt to enforce the automatic stay in Egyptian courts, they likely would be unsuccessful and would therefore remain liable for the termination expenses described above, while incurring additional litigation costs and damages.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7, 2009.

Sally El Shalakany
Senior Associate, Shalakany Law Office

4