**EXHIBIT C**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
               Debtors. :
:
:
:
---------------------------------------------------------X

**DECLARATION OF MEHDI BEN SLAMA IN SUPPORT OF DEBTORS' MOTION
FOR ENTRY OF AN ORDER AUTHORIZING PAYMENT OF PREPETITION
TERMINATION BENEFITS TO CERTAIN ADDITIONAL FOREIGN EMPLOYEES**

I, Mehdi Ben Slama, do hereby declare as follows:

1. I am an attorney, legal advisor and manager at Mehdi Ben Slama Law Firm, which maintains an office for the practice of law at 4 Avenue de la Liberté 1000, Tunis, Tunisia. I am a member of the Tunis Bar.

2. I have been practicing Tunisian law for more than nine (9) years and am knowledgeable in the areas of Tunisian employment law, commercial law and corporate law.

3. I submit this declaration in support of the Debtors' Motion for Entry of an Order Authorizing Payment of Prepetition Termination Benefits to Certain Additional Foreign Employees (the "Motion").  Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, upon my opinion based on my experience and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

knowledge, upon information supplied to me by the above-captioned Debtors' management and professionals or upon information learned from my review of relevant documents.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

4. I understand that the Debtors are planning to terminate the employment of a small number of employees based in their Tunis Office by the end of October 2009.  Additionally, I understand that the Debtors anticipate possible additional terminations in the Tunis Office in the coming month.  In connection with these terminations, I have been asked to advise the Debtors of their obligations under Tunisian law if they were to proceed with these terminations.

5. Under Tunisian Law, before an employer terminates an individual's employment because of economic redundancy reasons, the employer typically seeks to negotiate a mutually-agreed severance payment with the terminated employee.  Severance amounts discussed in such negotiation typically occupy a range wherein the employee's end-of-service indemnity (the <u>EOS Indemnity</u>) under the Tunisian Labour Code serves as the minimum floor for negotiation.  The EOS Indemnity is equivalent to one day of the employee's wages for each month of the employee's service, up to a maximum of three (3) months' wages (subject to a higher EOS Indemnity provided under a specific collective agreement).[2]  If such negotiation is unsuccessful, the employer must notify the Tunisian Labour Inspectorate, which inquires as to the economic basis for the termination and attempts to facilitate a mutual agreement between the parties.  If an agreement cannot be reached, the matter is then referred to the Commission for Control of Dismissals (the "<u>Commission</u>") for approval of the termination.  The Commission will either accept the termination and recommend payment of termination benefits or propose alternative

---

[2] The Tunis Office is covered by the Tunisian Collective Agreement applicable to Electricity and Electronic sectors approved by the Ministerial Order of 15 September 1999.  According to this Collective Agreement, the EOS Indemnity is calculated on the basis of one day of the employee's wages for each month of the employee's service, up to a maximum of six (6) months' wages.

2

solutions. If the Commission accepts the termination as justified, it will recommend the payment of termination benefits based on the circumstances of the parties and based on the amounts discussed in the mutual negotiation. The Commission typically recommends payment of an amount that reasonably exceeds the minimum EOS Indemnity. The Commission will also take into account payments for unused vacation days as well as any other payments promised in the employee's agreement upon termination. If either party refuses to abide by the Commission's recommendation, the matter is referred to the Tunisian courts for litigation over the proper amount of termination benefits to be paid.[3]

6. Under Tunisian law, NNI's obligations to terminated employees based in the Tunis Office are unaffected by the Debtors' ongoing bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware. As such, it is unlikely that courts and other entities in Tunisia would find that the jurisdiction of the United States Bankruptcy Court for the District of Delaware is relevant to the obligation to pay the termination expenses described above, or that the automatic stay imposed by section 362 of the United States Bankruptcy Code protects the Debtors from having to pay such termination expenses. If the Debtors were to attempt to enforce the automatic stay in Tunisian courts, they likely would be unsuccessful and would therefore remain liable for the termination expenses described above, while incurring additional litigation costs and damages.

[REST OF PAGE LEFT INTENTIONALLY BLANK]

---

[3] If the Commission determines that the termination is not legitimate, or if the employer fails to avail itself of the process described herein, there is a possibility that a court could impose unfair dismissal costs on the employer. Under the Tunisian Labour Code, unfair dismissal costs vary between one and two months of the employee's wages for each year of the employee's service, up to a maximum of three (3) years' wages.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7th, 2009

Mehdi Ben Slama
Attorney, Mehdi Ben Slama Law Firm

الأستاذ مهدي بن سلامة
Maître Mehdi BEN SLAMA
Avocat au Barreau de Tunis

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 7th, 2009

Mehdi Ben Slama
Attorney, Mehdi Ben Slama Law Firm

الأستاذ مهدي بن سلامة
Maître Mehdi BEN SLAMA
Avocat au Barreau de Tunis