# EXHIBIT B
**(PBGC Stipulation)**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
: 
In re                                                      : Chapter 11
:
Nortel Networks Inc., et al.,[1]                           : Case No. 09-10138 (KG)
:
            Debtors.                                  : Jointly Administered
------------------------------------------------------------X

**STIPULATION BETWEEN NORTEL NETWORKS INCORPORATED**
**AND THE PENSION BENEFIT GUARANTY CORPORATION**

      WHEREAS, on January 14, 2009 (the "Petition Date"), Nortel Networks Incorporated ("NNI") and its affiliated debtors and debtors-in-possession (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"); and

      WHEREAS, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

      WHEREAS, on January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141,

---

1    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

142], and an ad hoc group of bondholders holding claims against certain of the Debtors and certain affiliates that are seeking relief from creditors in Canada has also been organized (the "Bondholder Group"); and

WHEREAS, no trustee or examiner has been appointed in the Debtors' cases; and

WHEREAS, on August 4, 2009 the Court entered the Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order") [D.I. 1084]; and

WHEREAS, NNI sponsored the Nortel Networks Retirement Income Plan (the "Pension Plan"), a defined benefit pension plan which is intended to be qualified under Section 401(a) of the Internal Revenue Code of 1986 (as amended, the "IRC"); and

WHEREAS, the Pension Plan was terminated under section 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the "PBGC," and together with NNI, the "Parties") and the Retirement Plan Committee of the Pension Plan, which agreement also appointed the PBGC trustee of the Pension Plan under section 4042(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

WHEREAS, on September 29, 2009 the PBGC filed four proofs of claim against all of the Debtors bearing the claim identification numbers 4735-4738 (collectively the "PBGC Claims"); and

WHEREAS, in the PBGC Claims, the PBGC asserts, *inter alia*, a claim for the Pension Plan's unfunded benefit liabilities (the "Unfunded Pension Liability Claim"), and further asserts that under section 4068 of ERISA, if any person liable to the PBGC under section 4062 of

ERISA fails to pay the unfunded benefit liability upon demand, a lien arises in favor of the PBGC as of the termination date of the retirement plan in an amount of up to 30% of the collective net worth of all liable parties; and

WHEREAS, Nortel Government Solutions Inc. and its subsidiaries (collectively, "NGS") and DiamondWare Ltd. ("DiamondWare," and together with NGS the "Non-Debtor Subsidiaries") are wholly owned subsidiaries of NNI, and in such capacity are members of NNI's "controlled group," (collectively the "NNI Controlled Group"), as defined in section 4001(a)(14) of ERISA;

WHEREAS, the PBGC contends that the Non-Debtor Subsidiaries, as members of the NNI Controlled Group, are jointly and severally liable with all other members of the NNI Controlled Group for any amounts owed to the PBGC with respect to the Pension Plan by any member of the Group; and

WHEREAS, on September 11, 2009 through September 14, 2009, an auction took place for the sale of Nortel's Enterprise Solutions Business (the "Enterprise Business"), which includes among its assets 100 percent of the shares of the Non-Debtor Subsidiaries; and

WHEREAS, the Avaya Agreement (as hereinafter defined) includes a purchase condition stipulating that the winning bidder, Avaya Inc. ("Avaya"), is permitted to terminate the Avaya Agreement unless either the PBGC waives its claims and potential claims against the Purchaser and the Non-Debtor Subsidiaries, and has released its liens and potential liens against the Non-Debtor Subsidiaries, or the Debtors have filed Chapter 11 petitions for the Non-Debtor Subsidiaries; and

WHEREAS, following arms-length negotiations between the Parties, and in order to avoid the imposition of liens against the Non-Debtor Subsidiaries and facilitate the closing of the sale of the Enterprise Business, the Parties have determined to enter into this Stipulation (the "Stipulation").

NOW, THEREFORE, in consideration of the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. Incorporation of Recitals. The foregoing recitals are incorporated herein by reference as if fully set forth.

2. PBGC Waiver and Release. Effective at the closing of the sale of the Enterprise Business to the Purchaser, which will be contemporanous with the payment by the Purchaser into escrow of the Enterprise Proceeds (as defined below), the PBGC hereby releases, and waives against the Non-Debtor Subsidiaries, and their respective assets, any claim, lien, interest or obligation for joint or several liability, the right to assert or take any action giving rise to any such claim, lien, interest or obligation, and the right to assess or impose any such liability, arising before or after the date of this Stipulation under Title IV of ERISA or under Sections 430 or 412 of the IRC, or Sections 302 or 303 of ERISA (the "PBGC Waiver") solely as to the Pension Plan. This Stipulation shall not effect the liability of any other entity to the Pension Plan or to the PBGC with respect to the Pension Plan.

3. The PBGC Lien. In consideration for the PBGC Waiver, NNI grants to the PBGC a lien (the "PBGC Lien") on the proceeds ultimately allocated to the sale of the NGS Shares and the DiamondWare Shares (the "Share Sale Proceeds"), with such sale being

effectuated pursuant to the Amended and Restated Asset and Share Sale Agreement by and among Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc., and other identified sellers, and Avaya Inc., dated as of September 14, 2009 (as amended and as may be amended from time to time, the "Avaya Agreement"), which was approved by the Bankruptcy Court pursuant to the Order Authorizing and Approving (A) The Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) The Assumption and Assignment of Certain Contracts and Leases and (C) The Assumption and Sublease of Certain Leases entered by the Bankruptcy Court on September 16, 2009 (the "Sale Order"). The Parties agree that any purchase price adjustments required under Section 2.2 of the Avaya Agreement attributable or allocable to NGS and DiamondWare shall be explicitly included in the determination of the Share Sale Proceeds after the determination of the Enterprise Proceeds (as hereinafter defined) and the US Sale Proceeds (as hereinafter defined). The PBGC Lien shall be in an amount equal to the lien imposed by Section 4068 of ERISA with respect to the liabiltiy of NNI and any member of its "controlled group" as defined in Section 4001(a)(14) of ERISA (collectively, the "Nortel Entities") to the PBGC under Section 4062 of ERISA as a result of the termination of the Pension Plan, *provided, however,* that nothing in this Stipulation acknowledges or creates, or has the effect of acknowledging or creating, in favor of the PBGC a claim against any of the Nortel Entities or against any assets of any of the foregoing in an amount, or entitled to a priority, greater than the PBGC would have had in the absence of this Stipulation. The PBGC Lien will not be less than 30% of the Share Sale Proceeds.

    4.  Priority of the PBGC Lien and Share of the Excess Sale Proceeds. The Parties acknowledge that pursuant to the IRS Stipulation (as hereinafter defined), NNI will also

grant a lien to the IRS on the Share Sale Proceeds, which lien shall be junior to and subordinated in all respects to the PBGC Lien.  The Parties agree that if the amount of the Share Sale Proceeds exceeds the combined amount of the PBGC Lien and the IRS Lien, as defined in the IRS Stipulation, such remaining amount (the "Excess Share Sale Proceeds") shall be remitted in equal parts to the PBGC and to NNI.

        5.        Escrow Account.  The Parties acknowledge and NNI hereby agrees that the proceeds from the Avaya Agreement (collectively, the "Enterprise Proceeds"), including the Share Sale Proceeds, will be held in an escrow account until such time as the Enterprise Proceeds are allocated among the Sellers and EMEA Sellers pursuant to an order of the Bankruptcy Court or pursuant to such other allocation procedures as may be approved by the Bankruptcy Court. NNI further agrees that the Enterprise Proceeds allocated to the US Debtors (the "US Proceeds") will continue to be held in escrow until such time as: (i) the Share Sale Proceeds are determined pursuant to an order of the Bankruptcy Court or other allocation procedures as may be approved by the Bankruptcy Court; and (ii) the PBGC Lien is determined.

        6.        Free and Clear Conveyance.  Without limiting the scope of paragraph 1 above, the PBGC acknowledges that the shares in the Non-Debtor Subsidiaries shall constitute in all regards "Transferred Property" as defined and referenced in the Sale Order and shall be conveyed to Avaya Inc. free and clear of any and all claims of the PBGC against the Nortel Entities, including without limitation, the PBGC Claims.

        7.        No Admissions.  Each Party acknowledges that nothing in this Stipulation constitutes an admission or concession of any legal issue raised or that could be raised by any of the Parties.  This Stipulation is not intended to be, nor shall it have the effect of being, an

acceptance by the Nortel Entities of, or an agreement between the Nortel Entities and the PBGC on the amounts alleged in the PBGC Claims. The Nortel Entities reserve all of their rights, including without limitation, with respect to non-substantive and substantive objections to the PBGC Claim and any related allocation procedures, and this Stipulation shall not be treated as a waiver of any defenses or counterclaims to the PBGC Claim, including any amendments thereto. The rights of the PBGC are reserved in similar fashion.

8. <u>Third Party Rights</u>. The Parties hereto agree that Avaya, Inc. and its subsidiaries, or such other purchaser of the Enterprise Business, are intended beneficiaries of this Stipulation and may enforce the PBGC Waiver.

9. <u>Construction of Terms</u>. All capitalized terms used and not defined herein shall have their meanings in the Avaya Agreement.

10. <u>Binding Effect</u>. Upon entry by the Bankruptcy Court, this Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the parties hereto, including but not limited to, any trustee or receiver subsequently appointed in this case.

11. <u>Entire Agreement</u>. Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Stipulation, and that this Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof. It is expressly understood and agreed that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each Party or the authorized representatives of each of the Parties. Each Party hereby agrees that such Party will make no claim at any time or

place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

        12.     Costs and Expenses. Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

        13.     Applicable Law. This Stipulation shall be governed by New York law to the extent not preempted by ERISA or other federal law.

        14.     Representative Capacity. Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

        15.     Participation In Drafting. Each Party represents and warrants that it has participated in the drafting and preparation of this Stipulation. In any construction of this Stipulation, the Stipulation shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

        16.     Covenant of Good Faith. Each Party hereto covenants that it has entered into this Stipulation in good faith, and agrees to do all things necessary or convenient to carry out and effectuate the terms of this Stipulation, including, without limitation, the execution of all further and additional documents, and not to do or fail to do anything, directly or indirectly, that will interfere with the terms or conditions hereof or adversely affect any of the rights provided for herein.

        17.     Manner of Execution. This Stipulation may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto were on the

same instrument, and such counterparts shall be construed together as one instrument.  Facsimile or pdf signatures shall be deemed original signatures.

18. <u>Court Approval</u>.  All provisions of this Stipulation are subject to approval of the Bankruptcy Court.  This Stipulation is being entered into in conjunction with a Stipulation between NNI and the United States Department of Justice, acting on behalf of the Internal Revenue Service (the "<u>IRS</u>, and the "<u>IRS Stipulation</u>"), entered into on the same date as the date hereof as part of a comprehensive settlement and waiver of claims in connection with the sale of the shares in the Non-Debtor Subsidiaries effectuated pursuant to the Avaya Agreement.  NNI shall seek approval by the Bankruptcy Court on or before October 13, 2009 of (a) this Stipulation, and (b) the IRS Stipulation (together, the "<u>Stipulations</u>").  This Stipulation shall terminate immediately and have no further force or effect if approval by the Bankruptcy Court of either of the Stipulations is not obtained on or before October 13, 2009, or such later date as to which the Parties mutually agree.

19. <u>Consent to Entry of Order</u>.  The Parties hereby agree to seek the entry of an order by the Bankruptcy Court approving this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: *October 7, 2009*

NORTEL NETWORKS INCORPORATED    PENSION BENEFIT GUARANTY CORPORATION

*/s/ Peter Look/*
_____    _____
Peter Look    [Name]
Authorized Signatory    [Title]

Dated: _____.

NORTEL NETWORKS INCORPORATED    PENSION BENEFIT GUARANTY CORPORATION

_____    _____ 10/7/2009
Peter Look                         Terrence M. Deneen
Authorized Signatory               Chief Insurance Program Officer