IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
Debtors. : Jointly Administered
:
:
------------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER SHORTENING NOTICE
OF DEBTORS' MOTION FOR AN ORDER APPROVING STIPULATION
WITH THE PENSION BENEFIT GUARANTY CORPORATION**

Nortel Networks Inc. ("NNI"), and its affiliated Debtors and Debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for entry of an Order pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to permit consideration on shortened notice of the Debtors' Motion for an Order Approving Stipulation with the Pension Benefit Guaranty Corporation (the "PBGC Motion").[2] In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the PBGC Motion.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 102(1) and 105 of the Bankruptcy Code, Bankruptcy Rule 9006, and Local Rule 9006-1(e).

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as

---

[3]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an Order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an Order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrator").

6. On January 15, 2009, this Court entered an Order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7. On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142). No trustee or examiner has been appointed in the Debtors' cases.

8. By Order dated August 4, 2009, the Court set the general bar date for filing claims at September 30, 2009.

    **B.**    **The Proposed Sale of the Enterprise Solutions Business**

9. By Order entered September 16, 2009, (the "Sale Order"), the Court approved the sale of Nortel's Enterprise Solutions Business to Avaya, Inc. ("Avaya"), pursuant to the Amended and Restated Asset and Share Sale Agreement between and among various Nortel entities and Avaya, dated September 14, 2009 (the "ASSA"). The sale of the Enterprise Solutions Business (the "Enterprise Sale") includes the sale of 100% of the shares of two wholly owned non-debtor subsidiaries of NNI, Nortel Government Solutions Inc. (together with its own subsidiaries, collectively "NGS"), and DiamondWare Ltd. ("DiamondWare" and together with

NGS, the "Non-Debtor Subsidiaries"). Avaya has agreed to pay a purchase price of in excess of $900 million, subject to adjustments.

### C. Background of Issues Giving Rise to the PBGC Stipulation

10. NNI sponsors the Nortel Networks Retirement Income Plan (the "Pension Plan"), a defined benefit pension plan which is intended to be qualified under Section 401(a) of the Internal Revenue Code of 1986 (as amended, the "IRC"), and covered by Title IV of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1301-1461 ("ERISA"). The Pension Plan was terminated under Section 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the PBGC and the Retirement Plan Committee of the Pension Plan. The agreement also appointed the PBGC trustee of the Pension Plan under Section 4042(c) of ERISA.

11. On September 29, the PBGC filed four proofs of claim against each of the Debtors[4], bearing claim identification numbers 4735-4738 (collectively the "PBGC Claims"). As set forth in these proofs of claim, the PBGC contends that NNI and the other Debtors, as members of NNI's "controlled group," as that term is defined in Section 4001(a)(14) of ERISA ("NNI's Controlled Group"), are jointly and severally liable for (i) the unfunded benefit liabilities of the Pension Plan, (ii) contributions necessary to satisfy the minimum funding standards of the Pension Plan, (iii) insurance premiums, interest and penalties with respect to the Pension Plan, and (iv) the shortfall and waiver amortization charges.

12. The Non-Debtor Subsidiaries are also members of NNI's Controlled Group." In that capacity, they are potentially liable for the full amount of the PBGC Claims allowed by the Court. Additionally, the Non-Debtor Subsidiaries could be subject to a statutory lien in favor of

---

[4] By Order dated September 24, 2009, this Court approved a Stipulation Regarding Filing Claims By Pension Benefit Guaranty Corporation, whereby each proof of claim filed by the PBGC in this case shall be deemed filed not only in this case but also in each of the 16 Debtors' Chapter 11 cases.

the PBGC under Section 4068 of ERISA with respect to the unfunded benefit liability of the Pension Plan.

13. The ASSA requires the Debtors to transfer the assets and shares to Avaya free and clear of any and all liens and claims. Accordingly, in order to satisfy this requirement, the Debtors must resolve any and all claims the PBGC might assert against the Non-Debtor Subsidiaries, and any and all liens the PBGC might assert against the stock in the Non-Debtor Subsidiaries.

14. In addition, the ASSA includes a provision expressly conditioning Avaya's obligation to close on the Enterprise Sale on the PBGC's waiver of its claims and potential claims against Avaya and against the Non-Debtor Subsidiaries, and the release of any lien or potential lien arising under IRC § 430 or Section 4068 of ERISA with respect to the Pension Plan.

    **D.**    **The IRS Closing Condition**

15. The Internal Revenue Service (the "IRS") also filed proofs of claim against NNI. Its current proof of claim is for an amount exceeding $3 billion (the "IRS Claim"). Under Treasury Regulations, as members of a consolidated tax filing group with NNI, the Non-Debtor Subsidiaries are potentially jointly and severally liable for any tax liability incurred by NNI or any other member of the tax filing group. In order to eliminate the risk that it would be taking on potentially massive tax liabilities if it purchased the stock in the Non-Debtor Subsidiaries as part of the Enterprise Sale, Avaya inserted into the ASSA a closing condition requiring that by October 15, either the IRS Claim is fully resolved to its reasonable satisfaction, or, in the alternative, NNI elects to file Chapter 11 petitions for the Non-Debtor Subsidiaries.

**E.     PBGC Stipulation**

16.     In order to satisfy the requirements of the ASSA, NNI and the PBGC have agreed to the terms of the PBGC Stipulation, whereby the PBGC agrees to release and waive against the Non-Debtor Subsidiaries any claim, lien, interest or obligation for joint or several liability, the right to assert any such claim, lien, interest or obligation, and the right to assess or impose any such liability, arising before or after the date of the Stipulation, under Title IV of ERISA or under Sections 430 and 412 of the IRC, with respect to the Pension Plan.  In addition, in the PBGC Stipulation, the PBGC acknowledges that the shares in the Non-Debtor Subsidiaries being sold to Avaya are "Transferred Property" under the terms of the Sale Order, and thus can be conveyed to Avaya free and clear of any claims by the PBGC against any of the Debtors, whether or not asserted in the PBGC Claim.

17.     In exchange for these waivers and releases, NNI has agreed to grant the PBGC a lien (the "PBGC Lien") on the proceeds of the Enterprise Sale that are allocated to the sale of the shares of the Non-Debtor Subsidiaries (the "Share Sale Proceeds"). The PBGC Lien is to be in an amount equal to the amount of the statutory lien imposed by  Section 4068 of ERISA with respect to the liability of NNI and any member of NNI's Controlled Group to the PBGC as a result of the termination of the Pension Plan, and in no event shall be less that 30% of the Share Sale Proceeds.[5]

18.     NNI has also agreed that if the Share Sale Proceeds exceed the combined amount of the PBGC Lien, and a subordinate IRS Lien being granted pursuant to a Stipulation between NNI and the IRS, as described below, the excess shall be divided equally between the PBGC and NNI.  By its express terms, the PBGC Stipulation has no effect on the parties' respective rights

---

[5]     Under ERISA § 4068, the statutory lien is limited to 30% of the collective net worth or all of the liable parties.


with respect to the PBGC Claims, such that notwithstanding the Stipulation, the Debtors remain free to assert any and all objections to such Claims (and the PBGC is free to assert any defenses or counterclaims).

19. The PBGC Stipulation was entered into in conjunction with the Stipulation agreed to by NNI and the Department of Justice on behalf of the IRS (the "IRS Stipulation"), whereby, *inter alia*, the IRS has agreed to waive and release any claim for tax liability against the Non-Debtor Subsidiaries, and in exchange will receive, *inter alia*, an agreed claim in respect of corporate alternative minimum tax for NNI's 2005 taxable year, and a junior lien, subordinate to the PBGC Lien, on the Share Sale Proceeds.  Given that in the absence of the PBGC Stipulation, the PBGC could move to assert and perfect a statutory lien against the Non-Debtor Subsidiaries in the same amount as the PBGC Lien, the subordination provision in the IRS Stipulation merely replicates the superior rights the PBGC already has pursuant to the statute.

20. In light of the closing conditions in the ASSA, the PBGC Stipulation and the IRS Stipulation are each mutually contingent on Court approval of the other.  The PBGC Stipulation provides that it shall terminate immediately and have no further force or effect if this Court fails to approve both the PBGC Stipulation and the IRS Stipulation on or before October 13, 2009. The IRS Stipulation has a similar provision.

**Relief Requested**

21. By this Motion, the Debtors seek entry of an order (a) shortening notice to allow the PBGC Motion to be considered on an expedited basis; (b) setting October 13, 2009 at 9:00 a.m. (ET) as the Objection Deadline to the PBGC Motion; and (c) scheduling the hearing on the PBGC Motion for October 13, 2009 at 10:00 a.m. (ET).

**Basis for Relief**

22. Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). As set forth below, shortened notice is justified here.

23. As a result of the IRS Claim, the Debtors were forced to agree to the closing condition in the ASSA. As described in further detail above, the PBGC Stipulation and the IRS Stipulation are mutually contingent on Court approval of the other. The PBGC Stipulation provides that it shall terminate immediately and have no further force or effect if this Court fails to approve both the PBGC Stipulation and the IRS Stipulation on or before October 13, 2009. The IRS Stipulation has a similar provision.

24. For these reasons, the Debtors respectfully submit that allowing the PBGC Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

**Notice**

25. Notice of the Motion has been given via hand delivery or overnight mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the IRS; (v) the Attorney General of the United States; (vi) the United States Attorney for the District of Delaware; (viii) counsel to the PBGC; and (ix) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

26. No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully requests that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: October 8, 2009<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (No. 5125)<br>Lisa M. Schweitzer (No. 1033)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |

3165138.1