**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------X
:
*In re*                                                      :     Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                           :     Case No. 09-10138 (KG)
:
                Debtors.       :     Jointly Administered
:
:     Hearing date: October 28, 2009 at 2 p.m. (ET)
:     Objections due: October 21, 2009 at 4 p.m. (ET)
---------------------------------------------------------------X

**APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT
AND RETENTION OF SPECIAL COUNSEL, INC. *NUNC PRO TUNC*
TO SEPTEMBER 15, 2009 AS A PROVIDER OF LEGAL
STAFFING SERVICES TO THE DEBTORS AND DEBTORS IN POSSESSION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Application"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the employment and retention of Special Counsel, Inc. ("Special Counsel") as a provider of legal staffing services to the Debtors *nunc pro tunc* to September 15, 2009, (ii) approving the terms and conditions under

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

which Special Counsel will be retained and compensated at the expense of NNI's estate, including certain limited indemnification rights, and (iii) granting them such other and further relief as the Court deems just and proper. In support of the Application, the Debtors rely on the Declaration of Julia Sweeney (the "Sweeney Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1.

## Background

**A.    Introduction**

3.  On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.  On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.  Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

4

hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

11. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

12. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

13. By this Application, the Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Bankruptcy Rules (i) authorizing NNI's employment and retention of Special Counsel as a provider of legal staffing services to the Debtors *nunc pro tunc* to September 15, 2009, (ii) approving the terms and conditions under which Special Counsel will be retained and compensated at the expense of NNI's estate as contained in the Service Agreement ("SA") executed October 2, 2009 and effective as of September 15, 2009, and the Statement of Work dated September 15, 2009 (the "SOW" and together with the SA, the "Agreement"), attached hereto as Exhibit C and (iii) granting them such other and further relief as the Court deems just and proper.

5

**Basis for Relief**

14.   Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

15.   Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

16.   Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1(a).

17.   By this Application, the Debtors request that the Court approve the employment and compensation arrangements as set forth herein pursuant to section 328(a) of the Bankruptcy Code.  The employment arrangements are beneficial to the Debtors' estates and the

compensation arrangements provide certainty and proper inducement for Special Counsel to act expeditiously and prudently with respect to the matters for which it will be employed.

18. The Debtors also request approval of the employment of Special Counsel *nunc pro tunc* to September 15, 2009. Such relief is warranted by the circumstances presented by these cases. The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990). The complexity, intense activity and speed that have characterized these cases have necessitated that the Debtors, Special Counsel and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

### Selection of Special Counsel

19. On June 19, 2009, Nortel issued a press release announcing the commencement of sale processes for its material business units, including the CDMA Business and LTE Access Assets (the "CDMA Sale"). Since that time, Nortel has announced several other material transactions. This Court approved the CDMA Sale on July 28, 2009 [D.I. 1205]. The sale of the Enterprise Solutions Business was approved by this Court on September 16, 2009 [D.I. 1514]. On October 7, 2009, Nortel entered into an agreement to sell the Optical Networking and Carrier Ethernet Businesses.

20. In connection with the above divestitures and the ongoing sale processes in general, the Debtors have determined it is cost effective to retain Special Counsel to assist, where necessary, in providing services related to compliance with certain government filing

requirements and inquiries, including, but not limited to, regulatory reviews, to ensure a timely closing of the sales.

21. To efficiently and expediently produce any necessary documentation to the government, agencies or instrumentalities, NNI has retained Special Counsel to provide contract attorneys to review and identify relevant documents. Native Discovery Solutions ("Native Discovery"), the Debtors' provider of project management, document hosting, eDiscovery services, production services, data storage, and litigation consulting services, is acting as the project manager. Native Discovery's litigation consulting services do not include providing legal advice or strategy and are instead limited to onsite data collection, computer forensic services, application of search terms, and data discovery strategy. As project manager, Native Discovery is responsible for hosting the documents to be reviewed, ensuring reviews are completed in a timely manner, and properly processing, copying and producing the responsive documents. Cleary Gottlieb is supervising the Special Counsel contract attorneys with regard to the substantive legal review of the potentially responsive documents.

22. Special Counsel is the legal staffing unit of MPS Group, Inc., a Fortune 1000 company that is a leading global provider of performance improvement solutions in various areas, including legal staffing. Special Counsel is the largest provider of legal staffing services to corporate legal departments and law firms nationwide, including 99 out of the 100 largest law firms in the United States. Special Counsel specializes in the provision of customized staffing for large document review projects. Special Counsel does not engage in the practice of law. However, all of Special Counsel's contract attorneys who are performing the reviews are licensed to practice in the District of Columbia, and are in good standing. NNI chose Special

Counsel to act as its provider of legal staffing services because Special Counsel's professionals have extensive experience and excellent reputations in responding to government inquiries.

23. Moreover, as set forth in the Sweeney Declaration, Special Counsel has been staffing teams of all sizes to review documents pertaining to government inquiries for many years. Special Counsel is thus well positioned to anticipate and satisfy the unique demands of such inquiries. Special Counsel employs specific review tools and is able to ramp up with minimal notice to meet fast-moving production deadlines.

24. The Debtors believe that the retention of an experienced firm such as Special Counsel specializing in the staffing of contract attorneys to provide legal staffing services fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in these cases. The Debtors believe they require the services of a capable and experienced legal staffing firm such as Special Counsel because, among other reasons, Special Counsel's resources and capabilities are crucial to the Debtors' success in these chapter 11 cases, particularly with regard to furthering an efficient and timely closing of the various business divestitures.

25. As a result, the Debtors believe that Special Counsel is well qualified to perform these services and represent the Debtors' interests in their chapter 11 cases. Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of uniquely qualified professionals.

### Scope of Services

26. NNI has engaged Special Counsel pursuant to the Agreement. Pursuant to the Agreement,[4] Special Counsel will provide licensed contract attorneys to conduct initial reviews

---

[4] The summary of the Agreement in this Application is solely for the benefit of the Court and parties in interest. To the extent that the summary and the terms of the Agreement are inconsistent, the terms of the

of electronic documents for responsiveness, issue and privilege coding. Special Counsel will follow strict guidelines for review provided by Cleary Gottlieb. Special Counsel will provide off-site project space for its contract attorneys and any Cleary Gottlieb and/or NNI representative in their TurnKey Legal Center. The provision of space will include workstations with appropriate bandwidth for the team to properly conduct the review as determined by Cleary Gottlieb and/or NNI.

27. It is necessary that NNI employ Special Counsel to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these cases. Specifically, Special Counsel will carry out unique functions and will work cooperatively with the Debtors and other professionals retained in these cases, including Cleary Gottlieb, to avoid the unnecessary duplication of services.

### Professional Compensation and Employment Terms

28. Special Counsel intends to apply for compensation for professional services rendered in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement (the "Fee Structure").

29. In summary, the Fee Structure provides that the Debtors will compensate Special Counsel as follows:

   a. Special Counsel will bill for contract attorneys at a rate of $49.50 per hour worked up to forty (40) hours per week; and

---

Agreement shall control. Capitalized terms not defined in this Application shall have the meanings given them in the Agreement.

        b.        For all hours worked over forty (40) hours per week, Special Counsel will bill for contract attorneys at a rate of $71.80 per hour.

30.        As set forth in the Sweeney Declaration, the Fee Structure is reasonable and comparable to those generally charged by providers of legal staffing services of similar stature to Special Counsel and for comparable engagements, both in- and out-of-court.  The Debtors believe, as does Special Counsel, that the Fee Structure is in fact reasonable, market-based and designed to fairly compensate Special Counsel for its work and to cover fixed and routine overhead expenses.

31.        Special Counsel will maintain records in support of any actual and necessary costs incurred in connection with the rendering of its services in these chapter 11 cases, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.

32.        Given the numerous issues which Special Counsel may be required to address in the performance of its services hereunder, Special Counsel's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Special Counsel's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

**Indemnification and Reimbursement Provisions**

33.     The Debtors have also agreed, among other things, to indemnify and reimburse Special Counsel in certain discrete circumstances in accordance with the indemnification provisions set forth in the Agreement.

34.     The indemnification and reimbursement provisions reflected in the Agreement are customary and reasonable terms of engagement for compensation specialists such as Special Counsel for proceedings both out of court and in chapter 11.  The terms of the Agreement, including indemnification provisions, were fully negotiated between the Debtors and Special Counsel at arm's-length and the Debtors respectfully submit that the Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

35.     Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification granted under the Agreement, as modified in the proposed order attached hereto as Exhibit A and as set forth below:

> a.      Subject to the provisions of subparagraph (b) and (c) below, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, the Indemnified Party (as defined in the Agreement) in accordance with the Agreement for any claim arising from, related to, or in connection with the services provided for in the Agreement, but not for any claim arising from, related to, or in connection with Special Counsel's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Court;
>
> b.      Notwithstanding any indemnification provisions of the Agreement to the contrary, the Debtors shall have no obligation to indemnify Special Counsel or provide reimbursement to Special Counsel (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Special Counsel's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Special Counsel's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re

<u>United Artists Theatre Co.</u>, 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), beneath, to be a claim or expense for which Special Counsel should not receive indemnity or reimbursement under the terms of the Agreement, as modified by this Order;

c.   If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Special Counsel believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Agreement (as modified by this Order), including without limitation the advancement of defense costs, Special Counsel must file an application therefor in this Court, and the Debtors may not pay any such amounts to Special Counsel before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Special Counsel for indemnification or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Special Counsel.

## **Special Counsel's Disinterestedness**

36.   To the best of the Debtors' knowledge, information and belief, and based and in reliance upon Special Counsel's review of its client files and records and the Sweeney Declaration: (i) Special Counsel is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code and (ii) Special Counsel holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Special Counsel is to be employed. As disclosed in the Sweeney Declaration, Special Counsel may represent and may continue to represent various creditors and other parties in interest in these cases, but only in matters unrelated to the Debtors or these chapter 11 cases.

### No Duplication of Services

37.     The Debtors intend that the services of Special Counsel will complement, and not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases. Special Counsel understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### Notice

38.     Notice of the Motion has been given via first class mail or hand delivery to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholder Group; (iv) Special Counsel and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

39.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 8, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*