**EXHIBIT C**

## SERVICES AGREEMENT

This Services Agreement (herein the "Agreement") is made and entered into this <u>15th</u> day of <u>September</u>, 2009 ("Effective Date") by and between <u>Nortel Networks Inc.</u>, a <u>Delaware</u> corporation with its principal place of business located at <u>2221 Lakeside Blvd., Richardson, TX 75082-4399</u> ("Client"), and Special Counsel, Inc., a Maryland corporation with offices located at 1920 L Street NW, Washington, DC 20036 ("Supplier").

**WHEREAS**, Client wishes to retain the Supplier for the purpose of providing temporary attorney personnel ("Supplier Personnel") to perform document review services under terms designated by Client in one or more Statements of Work ("SOW") issued under this Agreement;

**NOW THEREFORE**, in consideration of the parties' mutual covenants, conditions and promises contained herein, and other good and valuable consideration, the parties agree as follows:

1.  **RENDITION OF SERVICES**

A.  Supplier shall provide Supplier Personnel to assist Client in performing document review services as an independent contractor under the terms of this Agreement and accompanying SOW.

B.  The terms of this Agreement shall prevail over and govern to the extent of any conflicting or inconsistent terms or conditions in any SOW or other writing or arrangement between the parties unless such SOW or other written arrangement specifically refers to the particular provision of this Agreement which it supersedes. Each SOW hereunder shall be in substantially the form attached hereto as Exhibit A.

2.  **SCOPE OF SERVICES**

A.  Supplier shall assign Supplier Personnel to perform document review services at work sites designated by Client. Supplier Personnel shall provide the services of the type and at the rates as set forth in the attached SOW. Client acknowledges that all of the services and work product produced hereunder is performed or produced at the direction of Client attorneys or other designated employees of Client. Client understands and agrees that Supplier Personnel is not providing legal advice.

B.  Supplier shall be solely responsible for all wages, benefits and all other compensation, if any, due Supplier Personnel assigned to perform services under this Agreement.

C.  Client may request the removal or cancellation of the assignment of any Supplier Personnel at any time and for any or no reason that is lawful, with or without prior notice. Supplier shall replace such personnel promptly upon request and at no added charge to Client unless advance arrangements with Client have been made prior to Supplier replacing such personnel.

D.  Supplier warrants that it shall satisfy all payroll reporting and withholding, payment and provision of Workers' Compensation, Unemployment Compensation, FICA, FUTA, OASDIC, and any other benefits and compensation related obligations and expenses due Supplier Personnel placed on assignment under this Agreement.

E.  Supplier shall submit any necessary reports reasonably required by Client.

3. **TERM OF AGREEMENT**

The term of this Agreement shall be in effect commencing on the Effective Date and shall continue unless earlier terminated in accordance with the terms of this Agreement.

4. **COMPENSATION; PAYMENT TERMS**

A.   Client and Supplier agree to compensation terms as set forth in applicable Statements of Work. Supplier shall submit to Client all time records signed by an authorized representative of Client. Supplier shall bill Client at rates agreed to by the parties in the applicable SOW. Supplier shall submit invoices in such form and on such timeframe as set forth in the SOW.

B.   Client shall file fee applications with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for interim and final allowance of compensation, including reimbursement of expenses, pursuant to the procedures set forth in Section 330 and 331 of title 11, United States Code (11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

C.   The Client shall, as soon as practicable following the execution of this Agreement by the Company, seek an order authorizing the employment of Supplier pursuant to the terms of this Agreement, as professional persons pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders. If the order authorizing the employment of the Supplier is obtained, the Client shall pay all fees and expenses due pursuant to the Agreement, as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders.

D.   Client shall remain responsible for the payment of all applicable federal or state sales or use taxes, or related levies, attributable to the services rendered hereunder. This Agreement shall be deemed to have been made in Duval County, Florida.

5. **SUPPLIER'S STATUS AND COMPLIANCE WITH LAWS**

A.   Supplier, Supplier Personnel nor any party contracting with Supplier to perform services under this Agreement shall be deemed to be an agent or employee of Client. Supplier is and shall be an independent contractor, and the legal relationship of any person performing services for Supplier shall be one solely between Supplier, its Supplier Personnel and its agents. Both parties acknowledge and agree that they are not joint employers or co-employers and neither is the alter ego of the other. Notwithstanding any provision in this Agreement, strictly and exclusively for Workers' Compensation purposes in the state where the work is to be performed, or any similar law of another state, it is agreed by the parties that Supplier is and is intended to be the "general" or "lending employer" and Client shall jointly and severally be "special" or "borrowing" employers of Supplier Personnel.

B.   Supplier agrees that Supplier and Supplier Personnel will not be qualified to participate in or to receive any employee benefits, including participation in any pension, profit sharing, stock options, group insurance, short or long-term disability insurance, workers compensation or any other benefit plan or arrangement which Client has or may have for its employees. Supplier agrees that Supplier and Supplier Personnel will not be entitled to vacation pay, holiday pay, severance pay or any other employment benefit provided by Client to its employees.

C.   Supplier warrants that it will comply with all applicable federal, state and local laws, rules and regulations, and shall obtain or ensure the existence and good standing of all applicable licenses and

permits for the conduct of its business and that of the Supplier Personnel and the performance of the services called for in this Agreement.

D. Supplier shall not discriminate against any employee or applicant for employment based upon sex, race, national origin, religion, color, pregnancy, ancestry, age, marital status, veteran status, medical condition or disability, or any other legally protected basis. Supplier shall not discriminate on such bases in all terms and conditions of employment, including, but not limited to hiring, employment, promotion, demotion or transfer, recruitment, advertising, lay-off, termination, rates of pay or other compensation, and selection for training, including apprenticeship.

6. **CONFIDENTIAL INFORMATION**

A. Supplier agrees for and on behalf of itself and Supplier Personnel that the trade secrets, intellectual property and confidential information of Client (including customers, employees and agents of Client) shall be preserved and kept confidential from any third party and shall not be divulged except to those employees of Supplier or Client reasonably necessary for the performance of services. The term confidential and trade secret information includes, but is not limited to: matters of a technical nature, such as formulae, "know how", schematics, technical drawings, secret processes or machines, inventions, computer software, product sources, product research and designs, and matters of a business nature, such as customer lists, customer contact information, associate information, candidate and recruit lists and information, placement information, pricing lists, contracts, sales reports, sales, financial and marketing data, systems, forms, methods, procedures, and analyses, and any other proprietary information, whether communicated orally or in documentary or other tangible form, concerning how Client operates its business. The parties to this Agreement recognize that Client has invested considerable amounts of time and money in attaining, developing or becoming entrusted with all of the information described above, and that any unauthorized disclosure or release by Supplier or Supplier Personnel of such Confidential Information in any form would irreparably harm Client.

B. Any and all property in Supplier's possession or the possession of Supplier Personnel belonging to Client shall be immediately returned to Client prior to departure of Supplier's Personnel from the assignment with Client.

C. Supplier shall require each of Supplier's Personnel to sign the Confidentiality Agreement attached hereto as Exhibit B and shall provide signed agreements to Client prior to Personnel being assigned to provide services to Client. All Supplier Personnel placed under this Agreement shall, complete and sign such other agreements reasonably required by Client.

7. **NON-SOLICITATION**

Client agrees to refrain from soliciting, recruiting or hiring any employee or agent of Supplier during their participation in the services under this Agreement and for twelve (12) months thereafter, except where the parties have otherwise agreed in writing.

8. **TERMINATION**

A. Either party may terminate this Agreement at any time for any or no reason by providing thirty (30) days advance written notice to the other party.

B. Either party may terminate this Agreement in the event the other party breaches its material obligations and fails to cure such breach within ten (10) days of receipt of written notice of termination describing such breach.

C.  Upon expiration, cancellation, completion or termination of this Agreement or any SOW, by either party for any reason, Supplier shall document all work in process and deliver to Client all work completed or in process and shall retain no ownership or rights therein.

9.  **INDEMNIFICATION, LIABILITY**

A.  Each party (the "Indemnifying Party") will indemnify, defend and hold harmless the other party (the "Indemnified Party") from and against all claims, demands, suits and expenses (including reasonable attorneys' fees) brought by any person or party for property damage and personal injury (including death) arising from the negligent or illegal act or omission of the Indemnifying Party or any of its employees in the performance of services hereunder, except to the extent of the negligent or illegal act or omission of the Indemnified Party or its employees.

B.  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT OR OTHERWISE, AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THIS LIABILITY LIMITATION SHALL NOT APPLY TO LIMIT OR RESTRICT ANY INDEMNIFICATION OBLIGATION, A BREACH OF A PARTY'S CONFIDENTIALITY OBLIGATIONS OR A PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, UNDER THIS AGREEMENT.

10.  **MISCELLANEOUS**

A.  Neither party may assign or delegate any of its rights or obligations hereunder without first obtaining, in advance, the written consent of the other, which such consent shall not be unreasonably withheld.

B.  If any provision of this Agreement is declared void or unenforceable, such provisions shall be deemed severed from this Agreement, and the remaining provisions of this Agreement shall otherwise remain in full force and effect.

C.  All the terms, provisions and conditions of this Agreement shall be binding upon and inure to the parties hereto and their respective successors, assigns, and legal representations.

D.  The provisions of this Agreement which by their nature are intended to continue beyond the termination of this Agreement or the completion of any services shall survive the expiration or the termination of this Agreement by any party for reason.

E.  Any notices which may be required under this Agreement shall be in writing, shall be effective when received and shall be given by personal service, or by certified or registered mail, return receipt requested, to the address set forth on the signature page of this Agreement, or to such other addresses which may be specified in writing to the General Counsels of the respective parties.

F.  Supplier shall permit the authorized representative of Client to inspect and audit any and all records or forms relating to or affecting this Agreement. Supplier hereby understands and agrees it shall maintain all records relating to this Agreement for a period of three (3) years following the expiration or termination of this Agreement, whichever occurs first. Client will perform an audit or inspection of records and Supplier hereby agrees to any such audit or inspection at the office(s) designated by Client.

G.  This Agreement, its interpretation and all work performed thereunder shall be governed by the laws of the State of Florida. All actions or proceedings to enforce this Agreement or any rights arising thereunder shall be brought, subject to paragraph 11 below, solely in Duval County, Florida, and Client

hereby waives any objection to such jurisdiction or venue and agrees to accept service or process in furtherance of this provision.

H.  This Agreement and any SOW issued hereunder represent the entire Agreement of the parties with respect to the subject matter hereof, and all such Agreements entered into prior hereto are revoked and superseded by this Agreement, and no representations, warranties, inducements or oral agreements have been made by any of the parties except as expressly set forth herein, or in other contemporaneous written agreements.

I.  This Agreement and any SOW may not be changed, modified or rescinded except in writing, signed by all parties hereto, and any attempt at oral modification of this Agreement or a SOW shall be void and of no effect.

11. **ARBITRATION**

The parties agree that any dispute between them arising out of this Agreement and the services hereunder shall be resolved by binding arbitration conducted under the Commercial Arbitration Rules of the American Arbitration Association in effect as of the date any such action is initiated. A single arbitrator will make a determination and render an award within thirty (30) days of the close of evidence in such arbitration proceeding but will have no authority to award costs or punitive damages unless the parties so agree in writing. The parties waive right to jury trial and agree that the arbitration award will be final and binding and that judgment will be entered thereon in any court of competent jurisdiction. Notwithstanding the foregoing, any party may seek immediate judicial intervention to prevent any unauthorized use or disclosure of the confidential or proprietary information of the party (or those to whom it owes a duty of confidentiality) bringing any such action.

12. **FORCE MAJEURE**

Neither party shall be liable to the other for any failure to perform or delay in performance hereunder where such failure or delay is occasioned by force majeure or an Act of God (including, but not limited to, fire, embargo, labor strike, or interruption of electrical service), or circumstances beyond such party's reasonable control.

[SIGNATURE NEXT PAGE]

13. **COUNTERPARTS; FACSIMILE SIGNATURES**.

This Agreement may be executed in counterparts and via facsimile, each of which shall be deemed an original and all of which together shall constitute one and the same document.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on this the 2nd day of October, 2009.

| Nortel Networks Inc. "Client" | Special Counsel, Inc. "Supplier" |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name/Title: Donald L. Powers, Senior Counsel | Name/Title: Julia Sweeney, Executive Director, Washington, DC Branch |
| Address for Notices: | |
| Nortel Networks<br>2221 Lakeside Blvd.<br>Richardson, TX 75082-4399<br>Attn: Litigation Group | Special Counsel, Inc.<br>1 Independent Drive<br>Jacksonville, FL 32202<br>Attn: General Counsel |

EXHIBIT A

STATEMENT OF WORK # 1
TO THE
SERVICES AGREEMENT DATED September 15, 2009
BETWEEN Nortel Networks Inc. AND Special Counsel, Inc.

**Description of the Services to Be Performed By Provider:**

Special Counsel will provide licensed contract attorneys to conduct first review of electronic documents for responsiveness, issue and privilege coding related to the matter identified as "Nortel document review" strictly following guidelines for review provided by Nortel's law firm Cleary Gottleib. Cleary will be responsible for the supervision and direction of Special Counsel's document review team conducting the review. Native Discovery Solutions, as the Debtors' provider of project management, document hosting, eDiscovery services, production services, data storage, and litigation consulting services, will act as the project manager of the document review project. Special Counsel will provide off-site project space for its contract attorneys and the Cleary and/or Nortel's representatives in our TurnKey Legal Center. The provision of space will include workstations with appropriate bandwidth for the team to conduct the review using electronic review and other tools determined by Nortel and/or Cleary.

**Time Frame for Completion of the Services:**

The estimated time-frame for Special Counsel contract attorney first review of the data set is four to six weeks.

**Deliverables:**

Special Counsel will provide contract attorneys who will conduct first review of the documents for responsiveness, issue and privilege coding. Special Counsel will provide off site project space for our contract attorneys and the Nortel/Cleary supervisory team in our TurnKey Legal Center. The provision of space will include workstations with appropriate bandwidth for the team to conduct the review using electronic review and other tools determined by Nortel/Cleary.

**Fees and Charges:**

Special Counsel will bill for contract attorneys in accordance with section 4B under the Agreement, at a rate of $49.50 per hour worked up to forty (40) hours per week. A rate of $71.80 will be billed for all hours worked over forty (40) in a week.

**Description of Reports To Be Prepared and When Due:**

N/A.

**Invoice Milestones and Fees for Performance of the Services:**

Special Counsel will invoice Nortel on a monthly basis and will submit those invoices to the Bankruptcy Court on a monthly basis.

**Reimbursable Expense Items, If Any:**

N/A.

**Payment Terms:**

Nortel's Services Agreement will govern payment terms as covered in section 4 thereof: "Compensation."

**Personnel Assigned and Term of Assignment:**

The following Special Counsel contract attorneys have been assigned to this matter. Each candidate is employed by Special Counsel on an hourly, as-needed basis and employment is "at will."

Started 9/15/09

| | | |
|---|---|---|
| Adrienne Corley | Camille Gattney | Jamie Hardy |
| Frantz Jacques | James Lee | Curtis Randall |
| Filip Reich | Chris Reidhead | Ivan Torres |
| Aprill Williams | | |

Started 9/21/09

| | | |
|---|---|---|
| Natalie Anderson | Brian Baines | Chris Blaudkamp |
| Tammis Bortnick | Dustin Dean | Christopher Erikson |
| Maria Erikson | Edward "Skip" Gain | Carisa Henze |
| Lisette Lema | Charles Pavlick | Adam Pecsek |
| Amy Roth | Jeremy Schneider | Tara Sidney |
| Curtis Steuber | Jason Stramel | Martin Tracy |
| Renee Wolforth | Joseph Wright | |

Started 9/28/09

| | | |
|---|---|---|
| Alex Anurca | Yollette Atkinson | Patricia Beaubrun-Reese |
| Lillian Crawford-Abbensetts | Lisa El | Mark Entel |
| David Hess | Andrew Johnston | James Mayers |
| Theresa Owusu | Tobi Rubin | Brian Snyder |
| Sheree Tinder | | |

Special Counsel, Inc.

By: _[signature]_

Print Name: Julia Sweeney

Title: Executive Director, SC/ DC Branch

Nortel Networks Inc.

By: _[signature]_

Print Name: Donald Powers

Title: Senior Counsel