IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
                                                               :   Chapter 11
*In re*                                                        :
                                                               :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                             :
                                                               :   Jointly Administered
                          Debtors.                             :
                                                               :   RE: D.I. 1627
                                                               :
---------------------------------------------------------------X

**ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363
AND 365 (A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE
ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE
BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE
PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES,
(D) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND
(E) SETTING A DATE FOR THE SALE HEARING**

Upon the motion [D.I. 1627] (the "Motion")[2] of Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors in possession (collectively, the "Debtors"), for entry of orders under Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018 and Local Rules 6004-1 and 9018-1 (i)(a) authorizing Debtors' entry into that certain asset sale agreement dated as of October 7, 2009 among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), NNI and certain other entities identified therein as Sellers (the "Sellers") and Ciena Corporation ("Ciena" or the "Stalking Horse Purchaser") as purchaser for the sale of certain assets of the Sellers' Metro Ethernet

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Stalking Horse Agreement (as defined herein).

Networks Business as described therein (the "Purchased Assets") as a "stalking-horse" sale agreement (as appended to the Motion as Exhibit A, the "Stalking Horse Agreement"), (b) authorizing and approving the bidding procedures (as appended hereto as Exhibit 1, the "Bidding Procedures") and the Bid Protections (as defined below) including granting administrative expense status to the Bid Protections payable by the Debtors to the Stalking Horse Purchaser, (c) approving the form and manner of sale notice (the "Notice Procedures") and the Assumption and Assignment Procedures as set forth in the Motion for the assumption and assignment of certain executory contracts (the "Assumed and Assigned Contracts," and together with the Purchased Assets, the "Assets"), (d) authorizing the Debtors to file certain documents under seal, and (e) setting the time, date and place for a hearing to consider the sale of the Purchased Assets and the assumption and assignment of the Assumed and Assigned Contracts (the "Sale Hearing"); (ii) authorizing and approving (a) the sale of the Assets free and clear of all liens, claims and encumbrances, pursuant to section 363 of the Bankruptcy Code, except as set forth in the Stalking Horse Agreement, and (B) the assumption and assignment of the Assumed and Assigned Contracts; and (III) granting such other and further relief as the Court deems just and proper; and the Court having reviewed the Motion and the objections thereto of the Official Committee of Unsecured Creditors, Flextronics Corporation and Flextronics Telecom Systems LTD, and Anixter Inc. (together, the "Objections"); and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore, it is hereby

## FOUND AND DETERMINED THAT:[3]

A. The court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334.

B. Venue of these cases and the Motion in this district is proper under 28 U.S.C. § 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C. The statutory and legal predicates for the relief requested in the Motion are Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018, and Local Rules 6004-1 and 9018-1.

D. Good and sufficient notice of the relief granted by this Order has been given and no further notice is required. A reasonable opportunity to object or be heard regarding the relief granted by this Order (including, without limitation, with respect to the proposed Bidding Procedures and Bid Protections (as defined below)) has been afforded to those parties entitled to notice pursuant to Local Rule 2002-1(b).

E. The Debtors' proposed sale notice, substantially in the form attached to the Motion as Exhibit E (the "Sale Notice") and the Debtors' proposed publication notice, substantially in the form attached to the Motion as Exhibit G (the "Publication Notice"), are each appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing, and no other or further notice is required.

F. The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, as amended as described herein, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law. See. Fed. R. Bankr. P. 7052.

3

G. The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Assets, entry into the Stalking Horse Agreement (as amended as described herein) and the payment of the Bid Protections (as defined below) under the circumstances, timing, and procedures set forth herein, in the Motion and in the Stalking Horse Agreement (as amended as described herein).

H. Entry into the Stalking Horse Agreement (as amended as described herein) with the Stalking Horse Purchaser as a "stalking-horse" sale agreement is in the best interest of the Debtors and the Debtors' estates and creditors. The Stalking Horse Agreement (as amended as described herein) will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

I. The Break-Up Fee and Expense Reimbursement (each as defined below, and together the "Bid Protections") are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

J. The Debtors' payment of the Bid Protections under the conditions set forth in section 10.2 of the Stalking Horse Agreement (as amended as described herein), the Motion and this Order is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed Stalking Horse Agreement to undertake the sale of the Assets. Notwithstanding anything to the contrary in this or any other order of this Court, the Bid Protections shall constitute administrative expenses with priority pursuant to Bankruptcy Code sections 503(b).

K. The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

**ORDERED, ADJUDGED AND DECREED THAT:**

1. Those portions of the Motion seeking approval of the Debtors' entry into the Stalking Horse Agreement, the Bidding Procedures, the Bid Protections, the Notice Procedures, the Assumption and Assignment Procedures, setting the time, date and place of the Sale Hearing, and authorizing the Debtors to file certain documents under seal are GRANTED and the Objections thereto are OVERRULED except as set forth on the record or herein.

2. Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

## The Bidding Procedures

3. The Bidding Procedures attached hereto as Exhibit 1 are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4. The Stalking Horse Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

5. The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets and the Auction.

6. The Stalking Horse Purchaser shall not be deemed an Alternate Bidder.

7. Ciena's exercise of any consent rights with respect to modifications to the Bidding Procedures shall be in the exercise of Ciena's reasonable discretion (which, if necessary, shall be determined by the Courts).

8. If Ciena is determined to be the Successful Bidder at the Auction, Ciena shall provide a five percent (5%) deposit within two (2) business days, pursuant to a mutually acceptable escrow agreement.

9. The non-refundable requirement of any Qualified Bidders' deposit shall be deemed eliminated except as otherwise determined at the Auction.

10. Qualified Bids shall be provided to Ciena and any other Qualified Bidders that have submitted a Qualified Bid not later than forty-eight (48) hours prior to commencement of the Auction.

## The Assumption and Assignment Procedures

11. The Assumption and Assignment Procedures as set forth in the Motion, are hereby authorized, approved and made part of this Order as if fully set forth herein.

12. The Court recognizes that the list of Customer Contracts (as defined in the Motion) and affidavits of service that identify the Debtors' customers constitute confidential commercial information, and therefore authorizes that any such lists and affidavits to be filed in connection with this Motion and the procedures approved herein may be filed under seal.

13. The Debtors shall provide the unredacted list of Customer Contracts and affidavits of service that identify the Debtors' customers to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) the title of the list of Customer Contracts and affidavits of service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

14. Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file an omnibus motion incorporating the executory contracts to be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

### The Stalking Horse Agreement

15. Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtors' entry into the Stalking Horse Agreement (as amended as described herein) is hereby approved.

### The Break-Up Fee and Expense Reimbursement

16. To the extent due under section 10.2 of the Stalking Horse Agreement (as amended as described herein), the Debtors are authorized to pay to the Stalking Horse Purchaser: (i) a fee of ten million six hundred ninety-six thousand dollars and 00/100 ($10,696,000), which is equal to approximately two percent (2%) of the aggregate Purchase Price (prior to any closing adjustments) set forth in section 2.2.1 of the Stalking Horse Agreement (the "Break-Up Fee") and (ii) an amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Stalking Horse Purchaser in connection with the preparation, performance and execution of the Stalking Horse Agreement and the transactions contemplated thereby,[4] including all filing and notification fees, and all fees and expenses of the Stalking Horse Purchaser's representatives in an amount not to exceed three million five hundred sixty-five thousand three hundred thirty-three dollars and 00/100 ($3,565,333), which is equal to approximately two thirds of one percent (0.66%) of the aggregate Purchase Price (prior to any closing adjustments) (the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections"), which shall be payable as provided for pursuant to the terms of the Stalking

---

[4] For the avoidance of doubt, the standard fee and expense structures of Latham & Watkins LLP shall be deemed reasonable.

7

Horse Agreement (as amended as described herein), regardless of whether the Stalking Horse Agreement and the Sale are ultimately approved by this Court or any other court.

17. Section 10.2(a) of the Stalking Horse Agreement will be modified to provide that, notwithstanding the language of such provision, in the event that the Stalking Horse Agreement is terminated pursuant to section 10.1(b)(v) (i.e. upon the entry of an order by the Bankruptcy Court authorizing an Alternative Transaction), the Break-Up Fee shall only be payable upon the closing of an Alternative Transaction within twelve (12) months after termination. No other modifications will be made to the Break-Up Fee and Expense Reimbursement provisions except to make consistent revisions to the Break-Up Fee provisions in the EMEA Agreement (as defined in the Motion).

18. The Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to section 10.2 of the Stalking Horse Agreement (as amended as described herein) shall survive termination of the Stalking Horse Agreement (as amended as described herein), shall constitute an administrative expense claim under section 503(b) of the Bankruptcy Code to the extent payable by the Debtors, and shall be payable within two (2) business days of termination under the terms and conditions of the Stalking Horse Agreement (as amended as described herein) and this Order, notwithstanding section 507(a) of the Bankruptcy Code.

19. The Break-Up Fee and/or the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Stalking Horse Purchaser in the event that the Closing (as defined in the Stalking Horse Agreement) has not occurred or does not occur for any reason whatsoever; provided that if the Closing occurs, the Break-Up Fee and/or the Expense Reimbursement will not be payable and will not be the sole and exclusive remedy of the Stalking Horse Purchaser.

20. In no event shall the Sellers be responsible or liable for any losses or liabilities under the Stalking Horse Agreement that are consequential, in the nature of lost profits, diminution in the value of property, special or punitive, or otherwise not actual damages.

### Notice Procedures

21. The notices, in substantially the same form as annexed to the Motion as Exhibits E, F and G, are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale and the Assignment and Assumption Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

22. Immediately after entry of this Bidding Procedures Order and the Canadian Bidding Procedures Order (or as soon as reasonably practicable thereafter), the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail, postage prepaid, upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets during the past nine (9) months, (ii) all entities reasonably known to have asserted any claim, lien, interest or encumbrance against the Debtors' right, title and interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets owned by the Debtors are located, all federal and state taxing authorities, including (without limitation) the Securities and Exchange Commission, the Environmental Protection Agency, state environmental protection agencies, the Internal Revenue Service, and the Department of Labor and similar state labor or employment agencies, (iv) all counterparties to the Assumed and Assigned Contracts (each a "Counterparty"), (v) all known or potential creditors of the Debtors and (vi) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002 and Local Rule 2002-1. The Debtors also shall publish notice substantially in the form attached as Exhibit G to the Motion in The Wall Street Journal (National Edition), The Globe and Mail (National Edition) and The Financial Times

(International Edition) within three (3) business days of entry of this Bidding Procedures Order or as soon as reasonably practicable thereafter.

23. The Assumption and Assignment Notice, in substantially the same form as annexed to the Motion as Exhibit F, is sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all Counterparties (as defined in the Motion) of the Debtors' intent to assume and assign some or all of the Assumed and Assigned Contracts, and is hereby approved. Each Assumption and Assignment Notice shall set forth the following information: (i) the name and address of the Counterparty, (ii) notice of the proposed effective date of the assignment (subject to the Debtors' and the Stalking Horse Purchaser's right to withdraw such request for assumption and assignment pursuant to the Stalking Horse Agreement), (iii) identification of the Assumed and Assigned Contract, (iv) the Cure Amount, and (v) a description of the Stalking Horse Purchaser and a statement as to the Stalking Horse Purchaser's ability to perform the Debtors' obligations under the Assumed and Assigned Contracts.

24. The Debtors (or their agent) shall serve the Assumption and Assignment Notice, in substantially the form attached as Exhibit F to the Motion upon each Counterparty pursuant to the Assumption and Assignment Procedures set forth in the Motion. Additionally, for Assumed and Assigned Contracts other than Customer Contracts, the Debtors shall file with the Court a master notice of assignment of contracts that sets forth: (i) the name and address of each Counterparty, (ii) notice of the proposed effective date of each assignment (subject to the Debtors' and the Stalking Horse Purchaser's right to withdraw such request for assumption and assignment pursuant to the Stalking Horse Agreement), (iii) a description of each Assumed and Assigned Contract, and (iv) the Cure Amount, if any. For Customer Contracts, the Debtors shall file under seal with the Court and deliver to (a) counsel to the Stalking Horse Purchaser, (b) the

U.S. Trustee, (c) counsel to the Monitor, (d) counsel to the Bondholder Group, and (e) counsel to the Official Committee, a master notice of assignment of contracts that sets forth: (i) the name and address of each Counterparty, (ii) notice of the proposed effective date of each assignment, and (iii) a description of each Assumed and Assigned Contract, and (iv) the Cure Amount, if any, as well as an affidavit confirming that Assumption and Assignment Notices have been sent to each.

### Objection Procedures

25.  Any party that seeks to object to the relief requested in the Motion pertaining to approval of the sale of the Assets, including (without limitation) the sale, assumption and assignment of the Assumed and Assigned Contracts shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the Sale Hearing. To the extent that any party to an Assumed and Assigned Contract does not timely file an objection to the Motion pursuant to the procedures set forth therein, such party shall be bound to the corresponding Cure Amount.

26.  Any and all written objections as contemplated by this Order (including, without limitation, any objection to the assumption and assignment of any contract or the Cure Amount under any contract) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Bankruptcy Court; and (e) served in accordance with the Local Rules so as to be received on or before the appropriate deadline as set forth in the Motion on the following: (a) counsel to the Debtors, (b) counsel to the Stalking Horse Purchaser, (c) counsel to the Committee, (d) counsel to the Bondholder Group, and (e) the U.S. Trustee.

27. Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

28. All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### Other Relief Granted

29. Subject to the Sellers' compliance with its obligations to deliver a copy of any Qualified Bids to the Stalking Horse Purchaser in accordance with the terms of Section 5.3(f) of the Stalking Horse Agreement, the Auction is scheduled for 9:30 a.m. (ET) on November 13, 2009 at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006.

30. The Sale Hearing shall be held in this Court on November 19, 2009, at 1:00 p.m. (ET). The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

31. The Debtors are authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

32. The Debtors and Flextronics Corporation and Flextronics Telecom Systems Ltd. (collectively, "Flextronics," and together with the Debtors, the "Parties") shall each use commercially reasonable efforts to provide to each other, by a date to be mutually agreed by the Parties, a list of all equipment owned by the Debtors or their affiliates that is in Flextronics' possession and is contemplated to be sold pursuant to the Sale. Based on these two lists, the Parties shall cooperate in good faith to compile a complete list of all equipment that is owned by the Debtors or their affiliates and is in the possession of Flextronics that is contemplated to be

sold pursuant to the Sale (the "Agreed Equipment List") by a later date to be mutually agreed by the Parties. In any event, notwithstanding the General Objection Deadline, Flextronics' deadline to file any requests for adequate protection or similar demands in connection with the proposed transfer of such equipment to the Stalking Horse Purchaser shall be not less than five (5) business days following completion of the Agreed Equipment List.

33. In the event there is a conflict between this Order and the Motion or the Stalking Horse Agreement (as amended as described herein), this Order shall control and govern.

34. Nothing in this Order, the Stalking Horse Agreement (as amended as described herein) or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract.

35. This Court shall retain jurisdiction with respect to all matters arising or related to the implementation or interpretation of this Order.

36. This Order shall be effective immediately upon entry, and any stay of orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy Code or Bankruptcy Rules is expressly lifted. The Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and may, in their discretion and without further delay, take any action and perform any act authorized under this Order. For the avoidance of doubt, the Bid Protections approved by this Order shall be immediately appealable and failure to appeal in accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

Dated: October 16, 2009
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

13