**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                                                          :
In re:                                                    :    Chapter 11
                                                          :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.,*              :
                                                          :    Jointly Administered
                              Debtors.        :
_____:    Re: Docket No. 1525

**PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS OF SNMP RESEARCH INTERNATIONAL, INC. TO DEBTORS' MOTION TO APPROVE THE SALE OF CERTAIN ASSETS OF THE DEBTORS' NEXT GENERATION SERVICE PACKET CORE NETWORK COMPONENTS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

SNMP Research International, Inc. ("SNMPRI"), through undersigned counsel, hereby files this preliminary objection and reservation of rights (the "Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") to approve the sale of certain of the Debtors' Next Generation Service Packet Core Network Components free and clear of all liens, claims and encumbrances [Docket No. 1525] (the "Sale Motion"), and in support hereof, respectfully represents as follows:

**The License Agreement**

1. SNMPRI and Nortel Networks Corporation ("NNC"), a Canadian corporation, are parties to a certain license agreement (the "License Agreement") executed prior to the Petition Date (defined herein) governing NNC's use of certain intellectual property described as source code and binary license code licensed by SNMPRI to NNC. The License Agreement contains over 70 schedules that each list one or more specific products, development software, and run-time software licensed to NNC. Section 7.1 of the License Agreement permits NNC to assign the License Agreement as follows:

1

> [u]pon prior written notice of such to SNMPRI, NNC may assign this Agreement, in its entirety only, and only in conjunction with a change of ownership, merger, acquisition, sale or transfer of all of substantially all of its business or assets. Such assignment shall only be valid as to NNC's business units as of the date of such assignment, and the rights and licenses of this Agreement shall not be enlarged to encompass the entirety of the new entity, if larger, or the entirety of the new entity's product line, if larger. The terms and conditions of this Agreement shall bind and inure to each party's successors and assigns.

License Agreement at 7.1.

2.      Should NNC desire to assign only a portion of the License Agreement, section 7.2 of the License Agreement provides:

> [u]pon prior written notice of such to SNMPRI, execution of a fresh copy of this Agreement, and payment of an Adoption Fee, a Specified Entity previously licensed under one or more Schedules A that is to be made an independent entity by NNC may adopt this Agreement as an agreement separate from NNC ("New Agreement"). The Adoption Fee shall be equal to the amount that SNMP would have charged the Specified Entity under the relevant Schedule A if the Specified Entity had not been a Nortel Networks Company (Standard Value), minus the amount previously paid under the relevant Schedule A. SNMP's liability under the New Agreement shall be limited to a straight line three year depreciation of the Standard Value, starting from the execution date of the new agreement. The scope of the new license shall be to the named Specified Entity only, and shall not include the possibility of addition of any other "Specified Entities" at a later point in time.

License Agreement at 7.2.

3.      SNMPRI and NNC were parties to the License Agreement on the Petition Date (defined herein).

**Background**

4.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

2

5. On September 21, 2009, the Debtors filed the Sale Motion. The Sale Motion, among other things, seeks the approval of: (i) the sale, free and clear of all liens, claims and encumbrances (the "Sale"), of certain of the Debtors' Next Generation Service Packet Core Network Components (the "Assets"), (ii) the transfer of the Debtors' interests in certain non-patent intellectual property included in the Assets, (iii) the granting of a nonexclusive license to patent intellectual property included in the Assets, (iv) the transfer of equipment and other tangible assets included in the Assets to the purchaser, and (v) the entry into certain ancillary agreements with the purchaser, in particular an Intellectual Property License Agreement and a Transition Services Agreement, which have not been disclosed.

6. The Sale Motion indicates that a stalking horse bidder will not be identified for this Sale. To date, no purchaser has been identified, and no specific intellectual property or licenses have been identified as being transferred in the Sale.

7. Pursuant section 2.1.1 of the Asset Purchase Agreement, the Debtors seek to sell intellectual property of the type licensed by SNMPRI and, specifically, software predominately used in the Debtors' Next Generation Service Packet Core Network Components.

**Preliminary Objection and Reservation of Rights**

8. Since SNMPRI cannot yet determine if its intellectual property or the License Agreement are involved in the Sale, SNMPRI files this objection to request that the Debtors clarify, by inclusion in any order to be entered by the Court approving the Sale, the Sellers' and Purchasers' intentions with respect to the License Agreement. Specifically, if the parties to the Sale determine that the License Agreement or SNMPRI's intellectual property will not be transferred, SNMPRI requests that the Debtors include the following language in any order approving the Sale:

> Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for or approves the transfer, assumption and/or assignment, whether under sections 363 or 365 of the Bankruptcy Code or otherwise, of any intellectual property or license agreement with SNMP Research International, Inc. ("SNMPRI"). To the extent the Purchaser elects to have the Sellers assign to the Purchaser any contract with or intellectual property right of SNMPRI, the Sellers and Purchaser will do so in accordance with the terms of such contract or applicable license, which terms may include, *inter alia*, the written consent of SNMPRI. To the extent the Purchaser discovers they have received SNMPRI's intellectual property or intellectual property rights, the Purchaser will make reasonable efforts to enter into a new license agreement with SNMPRI within a reasonable time after such discovery.

9. If SNMPRI's intellectual property or the License Agreement are involved in the Sale: (i) any transfer, assumption, or assignment of the License Agreement and SNMPRI's intellectual property must be made pursuant to the terms of the License Agreement, (ii) any outstanding obligations owed to SNMPRI must be cured, and (iii) SNMPRI must receive adequate assurance of future performance.

10. The terms of the License Agreement govern the procedure for the assignment of the agreement and require it to be assigned in its entirety. If the License Agreement is not assigned in its entirety, all parties must comply with the procedure and obligations set forth in section 7.2 of the License Agreement, including the execution of a new agreement and the payment of an adoption fee.

11. Section 365(b) of the Bankruptcy Code requires a debtor to cure any defaults and provide adequate assurance of future performance before an executory contract can be assumed. 11 U.S.C. § 365(b). To the extent that any parties to the Sale seek to assume and assign the License Agreement or transfer SNMPRI's intellectual property, any defaults under the agreement must be cured and adequate assurance must be provided. SNMPRI uses royalty reports provided

by NNC to determine amounts owed to SNMPRI for royalties. SNMPRI estimates that approximately $20,781 (US dollars) plus any/all amounts associated with royalties that have not been reported by NNC to date are owed to SNMPRI. Such outstanding amounts must be paid.

12. Finally, SNMPRI demands adequate assurance of future performance once the purchaser is identified.

13. At this juncture, the purchaser of the Debtors' assets has not been identified, and the specific intellectual property that the Debtors propose to include in the Sale has not been disclosed. SNMPRI reserves all rights to object to the Sale and the transfer, assumption, assignment or rejection of any agreements affecting SNMPRI and the intellectual property of SNMPRI and SNMPRI's suppliers.

14. SNMPRI reserves all rights to supplement or amend the objections raised herein and to seek discovery regarding sale issues, including, but not limited to, cure amounts, and the Debtors' rights and abilities to assume and assign the License Agreement.

WHEREFORE, SNMPRI objects to the Sale Motion and reserves all rights.

Dated: October 21, 2009         CIARDI CIARDI & ASTIN
       Wilmington, Delaware

                                */s/ Mary E. Augustine*
                                Daniel K. Astin (No. 4068)
                                Anthony M. Saccullo (No. 4141)
                                Mary E. Augustine (No. 4477)
                                919 N. Market Street, Suite 700
                                Wilmington, Delaware 19801
                                (302) 658-1100 telephone
                                (302) 658-1300 facsimile
                                dastin@ciardilaw.com
                                asaccullo@ciardilaw.com
                                maugustine@ciardilaw.com

                                *Attorneys for SNMP Research*
                                  *International, Inc.*