```
                 IN THE UNITED STATES BANKRUPTCY COURT
                    FOR THE DISTRICT OF DELAWARE

IN RE:                        )    Case No. 09-10138
                              )    (Jointly Administered)
                              )
NORTEL NETWORKS, INC.         )    Chapter 11
     Et al.                   )
                              )    Courtroom 3
                              )    824 Market Street
          Debtors.            )    Wilmington, Delaware
                              )
                              )    October 15, 2009
                              )    2:07 p.m.
```

                      TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE KEVIN GROSS
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:              Morris, Nichols, Arsht & Tunnell
                         LLP
                         BY:  DEREK ABBOTT, ESQ.
                         1201 North Market Street
                         P.O. Box 1347
                         Wilmington, DE  19899-1347
                         (302)658-9200

                         Cleary, Gottlieb, Steen & Hamilton
                         LLP
                         BY:  JANE KIM, ESQ.
                         BY:  JAMES BROMLEY, ESQ.
                         One Liberty Plaza
                         New York, NY  10006
                         (212)225-2000

For Trustee:             U. S. Trustee
                         BY:  PATRICK TINKER, ESQ.
                         844 King Street, Rm. 2207
                         Wilmington, DE  19899-0035
                         (302)573-6491

ECRO:                    JENNIFER PASIERB

Transcription Service:   DIAZ DATA SERVICES
                         331 Schuylkill Street
                         Harrisburg, Pennsylvania 17110
                         (717) 233-6664

Proceedings recorded by electronic sound recording;
transcript produced by transcription service

APPEARANCES:
(Continued)

For Flextronics:                    Curtis, Mallet-Prevost, Colt &
                                    Mosle LLP
                                    BY:   JAMES V. DREW, ESQ.
                                    101 Park Avenue
                                    New York, NY  10178-0061
                                    (212)696-6000

For Ciena:                          Latham & Watkins
                                    BY:   J. DOUGLAS BACON, ESQ.
                                    233 South Wacker Drive
                                    Suite 5800
                                    Chicago, IL  60606
                                    (312)876-7700

For the Creditors'
Committee:                          Akin, Gump, Strauss, Hauer &
                                    Feld LLP
                                    BY:   DAVID H. BOTTER, ESQ.
                                    One Bryant Park
                                    New York, NY  10036
                                    (212)872-1000

TELEPHONIC APPEARANCES:

For Anixter:                        Schiff Hardin LLP
                                    BY:   JON VIGANO, ESQ.
                                    233 South Wacker Drive
                                    Suite 6600
                                    Chicago, IL  60606
                                    (312)258-5792

VIDEOCONFERENCE APPEARANCES:

For Ernst and Young:                Goodmans LLP
                                    BY:   JAY CARFAGNINI, ESQ.
                                    250 Yonge Street
                                    Suite 2400
                                    Toronto, ON  M5B 2M6
                                    (416)979-2211

3

WILMINGTON, DELAWARE, THURSDAY, OCTOBER 15, 2009, 2:07 P.M.

THE CLERK:  Please rise.

THE COURT:  Good afternoon.  Thank you and please be seated.

Mr. Abbott, good afternoon, sir.

MR. ABBOTT:  Good afternoon, Your Honor.  Derek Abbott here on behalf of the Nortel debtors.

THE COURT:  And let me say good afternoon to Canadians -- Canada's finest.  Good afternoon.

JUSTICE MAROWITZ:  Good afternoon, Judge Gross.

THE COURT:  Mr. Abbott.

MR. ABBOTT:  Your Honor, we are here today on two sale procedures motions, as the Court may be aware from the agenda.  One mostly without controversy, the other a little bit less so.

THE COURT:  Okay.

MR. ABBOTT:  Your Honor, if I may just cede the podium to Mr. Bromley, who will present these motions.

THE COURT:  Thank you.

MR. ABBOTT:  Thank you, Your Honor.

THE COURT:  And I think the idea is that we will proceed as we have in prior hearings, in which we will proceed with testimony at this end.  Justice Marowitz will then hear from Canadian counsel, and then we will take a brief recess.

1      MR. BROMLEY:  That's correct, Your Honor.  I had

2  communicated with Mr. Taeate prior to the hearing, as well,

3  and I think we'll proceed as we have in the past.

4      THE COURT:  And good afternoon to you, by the

5  way.

6      MR. BROMLEY:  Good afternoon, Judge Gross.  Good

7  afternoon, Justice Marowitz.  It's a pleasure to be back

8  before you both again, and we think you very much for making

9  yourselves both available on this joint hearing basis.

10      We are before you now with our -- two more sale

11  process motions, and we're getting quite good at it, it

12  seems, these days, Your Honor.  The objections that we've

13  received have gotten shorter, and some of them have been

14  avoided altogether.  So I think we're making some progress.

15  And indeed, the -- we have two deals to discuss today.  One,

16  which I will take second, relates to the Metro Ethernet

17  business, and there is a transaction agreement that has been

18  executed with Ciena that is a stalking horse bid, and that

19  is a total consideration based on current stock price in

20  excess of $530 million U.S.  So we're very happy about that,

21  and that constitutes the third of the three large

22  transactions we have already, as you know, brought before

23  you, the CDMA and LTE businesses and the enterprise

24  solutions business.

25      THE COURT:  Yes.

1          MR. BROMLEY:  So MEN is the third of the large

2    three.

3          But I will start first, if you don't mind, Your

4    Honor, with a smaller business, but an important one

5    nonetheless, a project that we internally have been

6    referring to as Project Isis.  And this is a transaction

7    that is a little different than what we have done in the

8    past, and I will explain in a little bit of detail exactly

9    how it does differ.  But Project Isis relates to Nortel's

10   GSM and GSM-R business.

11         GSM and GSM-R are wireless systems which are

12   similar to CDMA, but are dominant in Europe, in particular,

13   but also have a substantial market share here in North

14   America.  Not near as large as CDMA, but still a substantial

15   presence.  And the difference between the two, GSM and GSM-

16   R, is that GSM-R, the R means railroad or railway.  So for

17   once, there's an intuitive connection between one of the

18   names --

19         THE COURT:  Yes.

20         MR. BROMLEY:  -- and what it actually does.  And

21   that is nice, at least, for some troglodyte like myself.

22   And GSM-R is -- the system operates within railway systems

23   around the world so that you can use your cell phone on the

24   railroad.  And I suggest Viacella [ph] should consider

25   something like that.

1

2          The difference between the two transactions,

3  though, is really that in Project Isis, the GSM transaction,

4  we do not have a stalking horse bidder, and I think it's

5  worthwhile to explain why.  The stalking horse bidder

6  process is certainly the preferred one, and we have employed

7  that to great success in our prior sale processes, and we

8  hope to -- that the MEN sale will yield similar results.

9  But the GSM business presents some specific issues that we

10  think require that the process be amended to proceed without

11  a stalking horse bidder.

12          The business is a worldwide business, as so many

13  of the Nortel businesses are.  It is present in multiple

14  jurisdictions around the world, North America, Canada, the

15  U.S., and Europe, in particular.  And it has been

16  extensively marketed.  This process -- marketing process, to

17  a large extent, had been run out of Europe for quite a while

18  because the GSM business, in terms of the wireless networks,

19  are much more dominant in GSM in Europe.  And indeed, this

20  particular transaction implicates the French affiliate of

21  Nortel, NNSA, more than others because a substantial amount

22  of the work and support of the GSM business is located

23  within France and a major contract relating to this business

24  is -- was the French railway system.

25          But as the process was proceeding and multiple

parties had access to the data room and were participating

1    in management presentations, it also became clear that with

2    the timeframe that we were operating under, it was unlikely

3    that we would be able to put together a transaction for a

4    stalking horse in a timeline that was consistent with

5    everything else that was happening within the case.  And

6    after a substantial amount of discussion and coordination

7    with the various constituents with our official committee

8    here, the bondholder group, the monitor, and the UK

9    administrators, the consensus determination was that it made

10   sense to proceed on the basis of a so-called naked auction.

11            And so for the Isis transaction, what we're

12   proposing to do is to take the extensive marketing that has

13   been taking place up until this point in time and to

14   continue to roll it out and that we would have an auction

15   scheduled for the 9th of November.  And we believe that

16   while that is a relatively short period of time from today,

17   unlike a stalking horse transaction, we do not have any

18   quiet period.  We don't have an exclusivity period where we

19   have to go quiet and not shop the business.  So the business

20   is -- has been actively shopped throughout this period of

21   time and continues to be actively shopped today.

22            In addition, this is a transaction that may

23   involve the combination of bids.  The various geographies in

24   the GSM business may, from a competitive standpoint,

25   generate interest from groups of bidders rather than single

1 bidders.  And so part of the process that has been employed

2 with the cooperation and support of all the constituents has

3 been to try to go out and actually talk to potential bidders

4 who may be interested in a piece of the business and urge

5 them to come together and cooperate on a joint bid, and also

6 to take care of any issues that may arise with respect to

7 the -- let's say the splitting of the business after a

8 transaction takes place.  So many of the transaction

9 elements that you would have if you were splitting the

10 business are almost impossible to negotiate without having

11 both parties at the table, so to speak.

12            And so that is really the explanation for why we

13 are proceeding on a basis without a stalking horse bidder.

14 I think it is fair to say that we do have very active and

15 interested parties in the data room and talking not only

16 with Nortel and it's M&A team, but also with the bankers at

17 Lazard.

18            So the transaction that we're proposing for the

19 GSM business is one that would have an auction on the 9th of

20 November.  We have put out and filed with the Court a draft

21 agreement that we have negotiated with ourselves, so it's

22 very beneficial to us.

23            THE COURT:  Yes.

24            MR. BROMLEY:  And it's a -- and it's nice to say

25 that for once.  And we also have a draft agreement for the

business in Europe.  And so all of our bidders will have

access to those draft agreements since the auction will take

place based on those agreements.  And it is our expectation

that we will be able to come to the Court on the 19th of

November with a transaction to sell the GSM, GSM-R business.

So that's an explanation of the difference in why we're here

on a basis without a bidder.

THE COURT:  And why we don't have any objections --

MR. BROMLEY:  Well, we --

THE COURT:  -- presumably.

MR. BROMLEY:  -- we actually have an objection --

THE COURT:  Oh.

MR. BROMLEY:  -- from Anixter.

THE COURT:  Oh, yes.  I'm sorry.

MR. BROMLEY:  And we do -- we are happy to report

that we have resolved that objection, and there are a couple

of things that we have agreed to put into the record and

into the order that I can go through in a minute.

Also, we did have a conversation with the PBGC.

As you may recall, Your Honor, for the prior sale

transactions, at the sale procedures stage, the PBGC did

file an objection asking essentially for a reservation of

rights relating to the debtor's attempt, if -- well,

clarifying that the debtors were not attempting to sell non-

debtor assets free and clear of liens and claims, and we

have agreed to put language in the sale orders, both for

Enterprise and CDMA, to deal with the PBGC's concerns.  The

PBGC did, on the basis of our conversations, agree not to

put in objections for either of these deals today, but I do

want to clarify and point out on the record we will

incorporate into the sale orders the exact same language

we've had in the prior sale orders to accommodate the PBGC's

concerns.  So I think, you know, those were addressed.

On the Anixter side of things, we did have a

preliminary objection that was filed on October 12th, and

what we have agreed with Anixter and its counsel is that we

shall provide Anixter and its counsel at least 20 days prior

written notice of any motion to assume or reject, pursuant

to Section 365 of the Bankruptcy Code, any contracts of

Anixter's with the debtors that relate to the GSM and GSM-R

business or any motion to approve the assumption or

assignment procedures relating to such contracts.

THE COURT:  Okay.

MR. BROMLEY:  And that we acknowledge that

Anixter reserves all of its rights to object to the proposed

sale of the GSM, GSM-R business at a later date.  We're not

-- neither confirming or denying that any contracts relating

the debtor-Anixter contracts would fit within an assumption

or assignment process at this point in time, but we are

1  simply clarifying that we will, in the case of Anixter,

2  provide them with the notice that I just described.  I

3  believe Anixter's counsel is either in the courtroom or on

4  the telephone, and if they could confirm that that is the

5  acceptable resolution, I think we can move beyond that.

6          MR. VIGANO:  Good afternoon, Your Honor.  This is

7  John Vigano on behalf of Anixter, and thanks for allowing me

8  to appear telephonically today.

9          THE COURT:  Yes, sir.

10          MR. VIGANO:  I do concur with Mr. Bromley's

11  recitation of the resolution with respect to GSM sale, and

12  as a result, we withdraw our objection.

13          THE COURT:  All right.  Thank you.

14          MR. BROMLEY:  And Your Honor, we did add into our

15  draft order clarifying language relating to Section 365, and

16  this is in paragraph ten, that the debtors shall file a

17  separate motion pursuant to Section 365 of the Bankruptcy

18  Code or to approve procedures to assume and assign any

19  contracts pursuant to Section 365, and to the extent that

20  such motion is filed 20 days prior to the sale hearing, that

21  the motion would be heard at the sale hearing.  But if the

22  motion is filed within 20 days prior to the sale hearing,

23  the motion would be heard separately and after the date of

24  the sale hearing.

25          THE COURT:  Very well.

1

2          MR. BROMLEY:  So we've added that to paragraph

3     ten.  With that, Your Honor, we have -- that's the only

4     objection we had received, and that's the only

5     clarifications I need to make.  I would like to very briefly

6     and economically put a proffer on the record as it relates

7     to the Isis transaction, so that we can have the proper

8     evidentiary record unless anyone has an objection to that.

9          THE COURT:  Any objections to a proffer here?

10         (No audible response)

11         THE COURT:  Hearing none, you may proceed then,

12     Mr. Bromley.

13         MR. BROMLEY:  Your Honor, with you in the Court

14     once again today is Mr. George Riedel, who is the chief

15     strategy officer of Nortel.  I will be also putting on a

16     proffer for Mr. Riedel in connection with the MEN

17     transaction, and so I would ask at this point to have the

18     proffer, as it relates to his background and qualifications,

19     to be incorporated into the record for both motions.

20         THE COURT:  Absolutely.

21         MR. BROMLEY:  Your Honor, as you've heard on

22     numerous occasions before, Mr. Riedel is the chief strategy

23     officer of Nortel, and I will deal with his background and

24     qualifications on the MEN side of things.  I will simply, at

25     this point, talk about the assets relating to the GSM

business.

1

2          Mr. Riedel is present and would testify if

3   called, Your Honor, that the assets being sold in the Isis

4   transaction essentially consist of Nortel's GSM and GSM-R

5   business, that GSM is a widely-deployed wireless technology

6   standard for mobile phone networks.  Nortel is a supplier of

7   GSM networks to operators globally and works with such

8   operators to implement various GSM products.

9          In this regard, Nortel develops, manufactures,

10  tests, supplies, and sells GSM access and core

11  infrastructure service and solutions.  And also based on the

12  GSM technology is a variant of GSM for railways, which

13  provides secure communication systems for railway operators.

14         Mr. Riedel would testify that Nortel has worked

15  with over 100 operators in 65 countries to implement cost-

16  effective and high-performance GSM, GPRS, and EDGE networks

17  built on Nortel's GSM access and core network solutions and

18  that the characteristics of the product are high voice

19  quality, security, radio performance, and leading edge

20  wireless and voice data capabilities.

21         Mr. Riedel would testify that the business

22  environment in which the sellers operate is highly

23  competitive, the competition for market share is fierce, and

24  the cost of rapid technology developments is steep, as well,

25  and that he believes that selling the assets now is the best

    way to maximize the value for the debtor's estates and,

1  indeed, for Nortel around the world.

2           Mr. Riedel would testify that Nortel has, since

3  April of 2009, explored the interest of third parties in

4  acquiring these assets and that the debtors have been unable

5  to market these assets with any other major transaction.

6           Mr. Riedel would testify that in preparation for

7  the sale, the sellers and their financial advisors prepared

8  confidential information memoranda regarding the business

9  and established in the electronic data room for the

10 businesses.  And he would testify that as part of this

11 exercise, the sellers entered into confidentiality

12 agreements with 26 potential bidders who received the

13 information memoranda, 11 potential bidders who express

14 interest in the -- all or a portion of the business and 11

15 that had been granted access to the electronic data room.

16 In addition, he would testify that the sellers conducted one

17 or more management presentations with potential bidders.

18           Mr. Riedel would testify that the discussions

19 with potential bidders and expressions of interest have

20 provided Nortel's management and its advisors with a view of

21 the potential market for the assets, as well as the assets'

22 value to major market participants.  And he would testify

23 that the sellers entered into negotiations with several

24 potential bidders and continue to pursue these efforts, but

25 that notwithstanding diligent efforts, the sellers have not

been able to enter into definitive stalking horse agreements

for a range of legal and economic reasons.  And while the

sellers have engaged in these discussions, the business is

experienced pressure -- experiencing pressure from its

existing and potential customers to provide a definitive

timeline for the transfer of the business to a third party.

      Mr. Riedel would state that in his opinion, it is

the right time now to sell the business because the

potential purchase price that could be realized through a

sale is likely to decline over time if the assets remain

unsold and that the full value of the assets may not be

realized unless a sale is consummated quickly.

      Mr. Riedel would testify that he's generally

familiar with the bidding procedures submitted to the Court

for approval and that Nortel intends to contact all parties,

either directly or through its advisors, who have expressed

an interest in acquiring the assets in the last six months

and will also contact other potentially interested parties

to invite them to participate in the process, as well as

entertaining unsolicited requests from qualified persons to

participate.  In addition, he would testify that Nortel will

publish a notice of the sale in the Wall Street Journal, The

Globe and Mail, and the Financial Times.

      Mr. Riedel would testify that Nortel intends, as

it has with its other auctions, to take appropriate measures

to ensure that the sale process is fair, that these measures include -- that the prospective bidders will have to sign a confidentiality agreement, that processes are in place to have these confidentiality agreements signed up as soon as possible, and obtain quick access to the electronic data room, and that in the process of entering into these transactions and conducting the auction, that the debtors will, as they have in the past, consult with and coordinate their efforts with the monitor with the Official Committee of Unsecured Creditors, the bondholders, and the administrators from the United Kingdom.

Mr. Riedel would state that based on the debtor's long-term consideration of the potential transactions involving the assets and the view of the marketplace, the proposed bidding procedures, in his view, will generate the highest or otherwise best offer for the assets.

THE COURT:  All right.  Does anyone wish to cross-examine Mr. Riedel?

(No audible response)

THE COURT:  All right.  I accept that proffer into evidence, then, Mr. Bromley.

MR. BROMLEY:  Thank you, Your Honor.

In terms of dividing things up, this is where, I think, we would stop on the Isis transaction, and I open the floor to any questions here and also whether there are any

1   questions in Canada and whether Mr. Tae [ph] has anything

2   that he would like to add or Mr. Carfagnini.

3          THE COURT:  I don't have any questions for you.

4          Mr. Tae, good afternoon.

5          MR. TAE:  Good afternoon, Judge Gross and Justice

6   Marowitz.  Thank you very much.

7          Justice Marowitz, you should have in front of you

8   the monitor's, in addition to our motion material, the

9   monitor's report -- 23rd report and the supplementary 23rd

10  report, and I believe (indiscernible), well you can hand

11  that most recent copy of the agreement of sale -- asset sale

12  agreement.

13         JUSTICE MAROWITZ:  I do have the 23rd and the

14  supplement.

15         THE COURT:  Mr. Tae, I -- we're having a little

16  bit of difficulty hearing you, and I wonder if it would help

17  if you tried speaking closer to the microphone.

18         MR. TAE:  Is that better?

19         THE COURT:  Not much better.

20         MR. TAE:  Is that yours?  Is that better?  Thank

21  you.

22         JUSTICE MAROWITZ:  I'd say that it's better here,

23  but --

24         MR. TAE:  Yeah, I'm booming out here in Canada,

25  so -- I think the -- from the Canadian perspective, and

again, I thank Mr. Bromley for him doing the heavy lifting
and setting the facts out and Mr. Justice Marowitz from the
Canadian perspective, the threshold legal question or the
threshold legal issue that we had to deal with, I think
you've dealt with on June 29th, and that's a question of
whether or not this Court, under a CCA proceeding, can
approve a sale with the absence of a plan of restructuring,
and your answer was clearly yes.  And so the question
becomes not do you have jurisdiction but should you exercise
the jurisdiction to approve the sale process.

        And as you also said in that decision, that there
are four main factors that you would consider in deciding
whether or not this is the right thing to do and that you
should exercise your discretion in approving the sales
process.  And the four factors are is the sale transaction
warranted at this time, will the sale benefit the whole
economic community, do any of the deficit creditors have
bona fide reasons to object the sale of the business, and is
there a better, viable alternative.  I think the evidence
before you is clear.  Nortel was working diligently for many
months on this sale and on its affairs, and in the exercise
of its business judgment, Nortel has concluded that it needs
to sell this business.

        And I think it's a testament to the flexibility
of both the Canadian and the U.S. process that we are not

1  weathered for just one way of selling a business.  And as

2  you've heard from Mr. Bromley, the peculiarities of this

3  business require that we have a more flexible process than

4  the one that we've been following so far because part of

5  this is to see whether we can actually get a proposal to buy

6  the business as a whole or whether we get several

7  businesses.  And because of the interrelatedness of the two

8  businesses, you have to have that -- those discussions in

9  tandem.

10          And so the process that we've set out, I believe,

11 is one that's very flexible and that will allow us to find

12 the best solution for this -- for the sale of this business.

13 And as you've heard, the assets have been extensively

14 marketed for a number of months.  A huge number of people

15 have been contacted.  And so all the necessary efforts that

16 a court would like to see done, I think have been done here

17 to make sure that we have exposed this asset to as much of

18 the market as possible and that we believe this process is

19 one that will lead to the highest recovery for us.

20          I should note that Canada's involvement in this

21 is relatively minor.  You will see in paragraph 19 of Mr.

22 Riedel's affidavit that the bulk of the assets are located

23 outside of Canada and that there are currently only seven

24 remaining employees in Canada engaged in this business.

25          Subject to any questions you may have, I simply

submit that this is the appropriate way to go and would ask that you approve this process.

JUSTICE MAROWITZ:  Thank you, Mr. Tae.

Mr. Carfagnini, do you have anything to add from the monitor's standpoint?

MR. CARFAGNINI:  Thank you, Your Honor.  Jay Carfagnini for the monitor.  Thank you, Judge Gross.

No.  Nothing to add, other than that the monitor, as is reported in its report, Your Honor, has been involved extensively in the activities.  Notwithstanding that the bulk of the assets may be located out of Canada, the monitor has been very actively involved and will continue to be involved in the sale process.  The monitor echoes the comments made by Mr. Bromley and Mr. Tae, but it is a bit different, but it is, as in the monitor's view, a commercially reasonable approach to maximize value for stakeholders.  And therefore, the monitor is recommending approval.

Unless you have any questions, Your Honor, that's --

JUSTICE MAROWITZ:  I have none.  Thank you.

Is there any other party that wishes to make submissions on the GSM/GSM-R motion?

(No audible response)

JUSTICE MAROWITZ:  Okay.  Judge Gross, you think

1    perhaps we might now deal with the submissions on the second

2    motion, the Ethernet, prior to taking our break?

3                THE COURT:  Yes.  I think that would make sense,

4    Mr. Justice Marowitz to avoid having to take separate

5    recesses.

6                Mr. Bromley, is that acceptable?

7                MR. BROMLEY:  Yes, Your Honor.  That would be --

8                JUSTICE MAROWITZ:  Your Honor, they were just

9    having some difficulty hearing your comments, though, Judge

10   Gross.

11               THE COURT:  Whenever you're ready.

12               MR. BROMLEY:  Thank you, Your Honor, and thank

13   you, Justice Marowitz.

14               We -- the next matter is the Metro Ethernet

15   business.  The Metro Ethernet business, or MEN, also known

16   in our vernacular as Project Snow, is a -- is more in line

17   with what we have done in the past.  What we have here, Your

18   Honor, is a -- again, an extensive process.  We have two

19   witnesses here in the courtroom, Mr. Riedel and

20   Mr. Murray --

21               THE COURT:  Yes.

22               MR. BROMLEY:  -- from Lazard, and I will have

23   available them both for testimony, but based on my

24   conversations with the objectors, I think we would be able

25   to proceed by proffer with both of them, as well.

1

2          But if I can start out with a bit of a summary,

3  Your Honor, the Metro Ethernet business, or MEN business, is

4  probably the part of the Nortel business that has been

5  marketed for the longest period of time.  There was a press

6  release in September of 19 -- I mean -- sorry, 2008 that

7  announced that the MEN business was going to be put up for

8  sale.  And so that process took place -- started taking

9  place over three months prior to the Chapter 11 filings and

10 CCAA filings.

11          These negotiations have -- and efforts have

12 continued after the filings and have yielded what we believe

13 is a very good transaction with Ciena.  It is a transaction

14 which has like -- more like the Enterprise transaction than

15 the CDMA transaction, a reach around the world.  There are

16 two sale documents that we are -- that we have negotiated

17 and entered into.  One relates to North America and One

18 relates to EMEA, and that is very similar to the structure

19 that we had in -- have had in place in the Enterprise

20 transaction.  And again, that is indicative of the

21 coordinated and interdependent nature of this business

22 around the world.

23          The Metro Ethernet business is also referred to

24 as the optical business.  It is a business that allows the

25 -- that uses optical lines rather than electronic lines and

allows substantially higher volume data to flow through

1  lines.  And the Nortel Metro Ethernet business is a very

2  high-quality business.  The process that we have employed to

3  get to here has been very similar to what we've done in

4  other circumstances, which is there have been a number of

5  folks who have been identified as potential purchasers.

6  Lots of potential interested parties have had access to

7  diligence, to the data rooms, to management, and it was

8  Ciena that emerged as the stalking horse.

9           The transaction that we're looking at has two

10  components, a cash component of $390 million in cash, as

11  well as a component of stock.  Ciena is a publicly-traded

12  company listed on NASDAQ, and the transaction currently

13  structured anticipates ten million shares of Ciena stock

14  plus $390 million.  The market opened today, I believe, at

15  $14.25 a share, so today's market price, or at least the

16  open price, that was $142,500,000 worth of value for a total

17  stalking horse value as of this morning of 532,500,000.

18           The exercise that we propose to employ here, Your

19  Honor, is very much like we've done in the past, which is we

20  anticipate having an active auction.  It is proposed to take

21  place on the 13th of November and proceed in a fashion very

22  similar to the ones that we've already brought before both

23  Courts on a successful basis.  And it is certainly our hope

24  that we will be able to do the same today -- or at least on

25  the 16th -- 13th, I'm sorry, of November and that we would

1    bring that transaction, the results of that auction, to both

2    Courts for approval on the 19th of November.

3           So, Your Honor, that is the overall background.

4    I'd like to, at this point, do the proffer of both witnesses

5    unless anyone would like to have them testify live.

6           THE COURT:  Mr. Botter, good afternoon.

7           MR. BOTTER:  Good afternoon, Judge Gross.  Good

8    afternoon, Justice Marowitz.  David Botter, Akin, Gump,

9    Strauss, Hauer, and Feld, on behalf of the Official

10   Committee of Unsecured Creditors.

11          Your Honor, we have no objection to Mr. Bromley

12   proceeding by proffer.  We, of course, reserve our rights to

13   conduct cross-examination.

14          THE COURT:  Absolutely.  Thank you, Mr. -- and as

15   well as others.

16          All right.  You may proceed by proffer then, Mr.

17   Bromley.

18          MR. BROMLEY:  Thank you, Your Honor.  I will

19   start with Mr. Riedel.

20          Your Honor, Mr. Riedel, who's present in the

21   courtroom, is the chief strategy officer of Nortel Networks

22   Corporation and Nortel Networks Limited and also an employee

23   of Nortel Networks, Incorporated.  He is in the courtroom

24   and available to testify with respect to this motion and the

25   debtor's seeking to sell the assets relating to the Metro

Ethernet business.

Mr. Riedel would testify that his job responsibilities include corporate strategy, mergers and acquisitions, business development, strategic partnerships, and the investments of monies into new businesses, and that prior to taking his current position at Nortel, he was employed by Juniper Networks as a vice president of M&A and before that, worked for McKinsey and Company for 15 years. McKinsey -- I'm sorry, McKinsey.  Mr. Riedel previously testified in this court with regard to the sale of CDMA and LTE assets, and his testimony was proffered in connection with the sale of the Enterprise Solution assets and shares, each of which he oversaw in his capacity as chief strategy officer.

And if called to testify, Mr. Riedel would testify that he is overseeing the sale and auction process for MEN and also was responsible for oversight of the negotiation of the terms of the sale with interested parties and the selection of Ciena Corporation as the stalking horse bidder.

He would testify that the assets being sold consist of Nortel's Metro Ethernet business, which includes optical networking, carrier Ethernet switching, and multiservice switching products, delivering carrier-grade Ethernet transport capabilities for higher performance and

lower cost for emerging video-intensive applications.

He would also testify that the MEN business's optical networking, portfolio includes the 40G adaptive optical engine technology, which can quadruple network capacity while being deployable over any fiber, allowing service providers to reduce engineering and equipment expense and upgrade quickly and cost-effectively from 10G to 40G, and that the MEN business is also in the process of developing the industry's first optical technology that can deliver both 40G and 100G network capacity.

He would testify that it is important that specific information regarding customer relationships remain confidential because of a significant aspect of the value of the Metro Ethernet business and the assets being sold and that the customer contracts are of critical value, not only to any prospective purchaser of the MEN business, but to the debtor's other businesses.  This is similar to the testimony that has been provided in connection with customer lists and other transactions.  And so just generally, that is to make sure that the customer lists are treated in a confidential basis.

Mr. Riedel would testify that the environment in which the MEN business operates is highly competitive. Competition for market share is fierce, and the cost of rapid technological development is steep.  He would also

1

2   testify that the scale requirements to compete in the

3   industry are substantial, that Nortel's principal

4   competitors in this market are large communications

5   companies such as Alcatel-Lucent, Huawei Technologies, Nokia

6   Siemens Networks, Fujitsu Limited, Ericsson, and Cisco

7   Systems, as well as others that address specific niches

8   within the market, such as Ciena, ADVA, AG Optical

9   Networking, Tellabs, and Infinero [ph].

10          He would testify that while significant value

11  exists in the MEN business, the full value of these assets

12  cannot be realized in a stand-alone restructuring and that

13  due to the global economic downturn, Nortel is experiencing

14  significant pressure on its businesses, facing competing

15  demands on its cash resources globally and on a regional

16  basis as customers across all businesses suspend, delay, and

17  reduce capital expenditures.

18          Additionally, he would testify that the potential

19  purchase price that could be realized through sale is likely

20  to decline over time if the assets remain unsold, and thus

21  the full value of the assets may not be realized if a sale

22  is not consummated quickly.  And as a result, Mr. Riedel

23  would testify that selling the assets now is, in his view,

24  the best way to maximize value for the debtor's estates.

25          Mr. Riedel would testify that Nortel's pre-filing

    strategic plan was to divest the MEN business and that in

September of 2008, Nortel began to explore the potential

sale of the business.  And in connection with these efforts,

Nortel approached 50 parties, five-zero, including a mix of

financial investors and strategic buyers, that Nortel

executed confidentiality agreements with 21 parties, and

five of the interested parties were given access to

confidential due diligence materials resulting in serious

discussions with three potential bidders, including Ciena.

He would testify that the commencement of

Creditor Protection Proceedings forced Nortel to put its

plans to divest the MEN business on hold in order to

evaluate the future of the company as a whole.  And he would

testify that since the petition date, the debtors have

reinitiated their efforts to divest the MEN business,

recanvas many of the entities originally contacted, plus

five additional parties.  And as a result of these efforts,

13 parties expressed interest in purchasing the assets,

executed confidentiality agreements, and were provided

confidential information memoranda.

All 13 were given access to the electronic data

room, and management presentations were conducted with seven

entities.  Three parties submitted proposals to acquire the

business, and Nortel proceeded to engage in extensive

negotiations with three parties in parallel, and that these

negotiations culminated in the stalking horse transaction

with Ciena.

Mr. Riedel would testify that he's familiar with the asset sale agreement, that the assets involved in the asset sale agreement are substantially all of the North American assets of the Metro Ethernet Networks business, and that there is a companion agreement that deals with substantially all of the EMEA assets of the business.

Mr. Riedel would testify that the agreements involved in the transaction and the obligations -- he would testify regarding the agreements involved in the transaction and the obligations that the debtors incur in respect of those agreements.  He would testify, in particular, that the purchase price of $390 million in cash and ten million shares of Ciena common stock is subject to certain escrows and working capital adjustments and that in exchange for that purchase price, Nortel would transfer its rights, title, and interest to the assets associated with the business, that to facilitate the plan of the sale -- I'm sorry, the debtor's plan to assume certain contracts related exclusively to the business and to assign these agreements to Ciena, and that certain other Nortel affiliates have entered into separate agreements and will similarly transfer their assets and certain contracts, that the two agreements -- in particular, the North American and the EMEA agreement -- are codependent on each other and that the closing on the

two agreements must occur simultaneously and the termination

of either agreement will entitle a party to terminate the

other agreement.

Mr. Riedel would testify that while there are

certain differences between the two agreements, they are

dictated largely by specific local requirements applicable

to the EMEA countries and the rules and practices that

related to local jurisdictions.

Mr. Riedel would testify that based on the long-

term consideration of potential transactions regarding this

business, and after recanvassing the marketplace after the

commencement of these Chapter 11 cases, that it is his view

the proposed transaction represents the highest and best

proposal for the assets, subject to a receipt of a higher or

better offer through the auction process that's contemplated

in the motion.

Mr. Riedel would also testify that the asset sale

agreement is accompanied by a number of other ancillary

agreements that deal with various issues, that a transition

services agreement similar to the transition services

agreement that's been negotiated in other transactions will

be entered into, that there will be an intellectual property

license agreement, an IPLA, that there'll be a trademark

license agreement, a loaned employee agreement, certain

lease agreements relating to properties in Canada -- in

particular, the Carling property -- certain other agreements

relating to real estate, and contract manufacturing

inventory agreements.

He would testify, if called, that these --

certain of these agreements have not been filed with the

Court, but that certain core parties in these Chapter 11

proceedings have been provided with access to the documents,

including throughout the negotiation of the documents,

including the monitor, the unsecured creditors' committee,

the bondholders committee, and the U.S. Trustee, as well as

the U.K. Administrators, and additionally, that any party

that signs a confidentiality agreement and becomes a

potential bidder pursuant to the bidding procedures will

have access to these documents.

Mr. Riedel would also testify that it is his

opinion that the agreement -- the asset sale agreement as

filed contains sufficient information to allow creditors of

the debtors to evaluate the transaction.

He would testify that he's generally familiar

with the bidding procedures submitted to the Court for

approval today and that as in the other transactions and

other auctions we have brought before these Courts, that

Nortel intends to take measures to ensure that the sale and

auction process is fair, that management will make itself

available to answer questions and provide diligence

materials as requested, and that processes are in place to get bidders quick access to the electronic data rooms and other diligence materials.

He would testify that 13 potential bidders have previously signed confidentiality agreements and there's the ability for other bidders to enter the process and that the process has been streamlined, that Nortel has contacted between 90 and 100 percent of those entities that might be interested, and that they have been -- omitted no entity intentionally and have the -- and intend to approach everyone that might be interested.  In his view, that these procedures help max -- will help maximize value to the estate and all stakeholders.

Mr. Riedel would testify that in his opinion, the benefit of using a stalking horse bidder in an asset sale is that it provides a solid offer as a starting place or floor for bidding and that the bidding protections that are contained within the stalking horse transaction provide a reasonable starting point for negotiations and that overall using a stalking horse bidder creates an opportunity to provide more value to all stakeholders.

He would testify that the asset sale agreement and bid procedures were negotiated extensively, that they contemplate bid protections including the payment of a breakup fee in the amount of $16,044,000 and an expense

reimbursement that would cover reasonable costs --
reasonable and documented fees, costs, and expenses --
however, the expense reimbursement would be capped at
$5,348,000 -- and that the asset sale agreement provides for
additional conditions around the bid procedures, and that
two-thirds of the bid protections would be paid by the North
American debtors and the remaining one-third would be paid,
if they become payable, by the EMEA debtors.

        Mr. Riedel would testify that in his experience,
bid protections provide a benefit to the estate because they
induce the stalking horse bidder to commit to be bound by
the agreement, even though it is subject to higher or better
offers, and in addition, that bid protections create
stronger bid dynamics by establishing a value for one bidder
or another to own the stalking horse position.

        He would testify that in his opinion, the bid
protections were arrived at through extensive arms-length
negotiations and are reasonable under the circumstances.

        Your Honor, that is the proffer that we would
propose to make with respect to Mr. Riedel, and I would open
that to anyone else who'd like to ask any questions.

        THE COURT:  Does anyone wish to cross-examine Mr.
Riedel?

        (No audible response)

        THE COURT:  Mr. Botter --

1          MR. BOTTER:  No, Your Honor.

2          THE COURT:  -- for the committee?  All right.

3     Anyone else?

4          (No audible response)

5          THE COURT:  In that case, the -- Mr. Riedel's

6     proffer is admitted into evidence in support of the motion,

7     Mr. Bromley.

8          MR. BROMLEY:  Thank you very much, Your Honor.

9          Your Honor, I'll move now to the proffer of Mr.

10    Michael Murray.  As Mr. Murray's been before you on numerous

11    other occasions, Your Honor, he is a managing director at

12    Lazard, the financial advisor to the debtors.  He's in the

13    courtroom and is available to testify with respect to this

14    motion.

15         He, as you know, is a banker that specializes in

16    the technology industry.  He's been employed by Lazard since

17    the fall of 2007, and prior to that time, he was the co-head

18    of technology investment banking for Deutsche Bank.  He was

19    employed by Deutsche Bank for 13 years and served as the

20    head of the technology group for five years.  He's

21    previously participated in distressed asset sales, has a

22    B.A. from Brown University and an M.B.A. from Harvard

23    University.

24         He's previously testified in this court with

25    regard to the sale of the Nortel CDMA and LTE assets, and

his testimony was proffered in connection with the sale of

the Enterprise Solutions assets and sales.  In each of those

transactions, he participated not only in the negotiation,

but in the auction that resulted in such substantial

improvements in price.

If called to testify, Mr. Murray would testify

that Lazard was retained by Nortel to work on the Metro

Ethernets matter in January of 2009, that Lazard has a team

of approximately 25 professionals dedicated to working on

all aspects of Nortel's restructuring, and that he has

personally served as a restructuring advisor on these

matters, focusing in particular on mergers and acquisitions.

He would testify that he's personally familiar

with Nortel's various businesses, including the MEN

business, as well as its customers, common practices, and

the industry in general.

He would testify that after the bankruptcy

filing, he participated in viability analyses with respect

to Nortel, and in particular, a comparison of standalone

restructuring scenarios versus scenarios in which Nortel

decided to sell its assets, and it was concluded following

that analysis that the standalone scenario resulted in lower

potential value for the estates than the asset sales

scenario.

He would testify that he's aware that Nortel's

pre-filing strategic plan was to divest the MEN business and
that in the fall of 2008, Nortel began to explore the
potential sale of the MEN business.  And in connection with
these efforts, Nortel and its prior financial advisor
approached approximately 50 parties, including a mix of
financial investors and strategic buyers, that Nortel
executed numerous confidentiality agreements and provided
access to confidential due diligence materials and engaged
in serious discussions with at least three potential
bidders.

He would testify that after the filing, he
reviewed the MEN business plan and concluded that Nortel's
best course of action was to still sell the MEN business and
that once this determination was made, he discussed the
various options with Nortel management, with the
constituents of the two creditors' committees, and with the
monitor and the U.K. administrator, and that his teams
recanvassed many of the entities that had previously been
contacted about the MEN business, as well as five new
parties.  And of those contacted in the post-filing period,
13 signed NDAs, and management presentations were conducted
with seven entities.

He would testify that aside from those contacted,
in his view, there are no other obvious entities that could
be potential interested parties in the MEN business.  He

would testify that based on his experience in the industry, all potential counterparties were approached about their interest in the assets.

Mr. Murray would testify that he's familiar with the asset sale agreement between Nortel and Ciena, that he was involved in the process of negotiating the agreement, and that he and/or representatives of Lazard met with representatives of the bidders on numerous occasions during that time, and that his major involvement in the negotiations was in the area of scope and price.

He would testify, if called, that Ciena was represented by qualified counsel and financial advisors during the course of these negotiations, that the discussions were vigorous and contentious at times, and no facts or circumstances arose during the course of the negotiations that led him to believe that a transaction with Ciena would be anything other than an arms-length transaction.

He would also testify that in his view, Nortel did not prefer Ciena over any other potential bidder, and he would testify that in his opinion, the net value offered to the debtor's estates from the transaction with Ciena constitutes fair and reasonable value for the assets being sold.

Mr. Murray would testify that the highest and

1

2    best value can be achieved through an auction process and

3    that several bidders, in addition to Ciena, have expressed

4    serious interest in the assets and have had access to the

5    electronic data room.  And he would testify that in his

6    opinion, at least two of these potential bidders would have

7    the market expertise and financial means to acquire and

8    operate the business.

9            He would testify that in his experience, the bid

10   protections involved in this transaction are reasonable and

11   that his -- in his experience, the presence of a stalking

12   horse bidder contributes value in an auction because the

13   bidding is most robust when there already is a bid on the

14   table and that there is a benefit to having a signed and

15   announced deal, as customers are happy to see that there's a

16   bid on the table and a future for the business.

17           He would testify that the specific bid

18   protections envisioned in the asset sale agreement were

19   vigorously negotiated and, under the circumstances, are

20   reasonable and within a range typical for a transaction of

21   this size.

22           And, Your Honor, that would be the proffer for

23   Mr. Murray.

24           THE COURT:  Thank you, Mr. Bromley.

25           Would anyone wish to like -- would anyone like to

cross-examine Mr. Murray?

1      (No audible response)

2           THE COURT:  All right.  Hearing no one, I will

3  admit that proffer into evidence, the proffer of Mr. Murray.

4  Thank you.

5           MR. BROMLEY:  Thank you, Your Honor.

6           If I could just give an outline of how I'd like -

7  - I think we might proceed at this point.  There are three

8  objections --

9           THE COURT:  Yes.

10          MR. BROMLEY:  -- that have been filed.  One is, I

11 believe, resolved, and I'd like to just make a statement on

12 the record in respect of that, and then we could reduce the

13 number from three to two.  The two remaining are an

14 objection from Flextronics, and I think half of that

15 objection is resolved.  The other half, I think we have to

16 discuss.  And the third is an objection from the committee.

17          THE COURT:  Yes.

18          MR. BROMLEY:  If I could, the way I would propose

19 to proceed would be, first, to read in the resolution on

20 Anixter and ask for Anixter's counsel confirm that

21 resolution.  Then, on the Flex objection, at least read in

22 the portion of the solution, and then, ask counsel for Flex

23 and the committee to make their objections to the Court.

24          THE COURT:  That's perfectly acceptable.  Thank

25 you, Mr. Bromley.

1

2          MR. BROMLEY:  First, on the Anixter objection,

3    Your Honor, there was an objection filed, a reservation of

4    rights by Anixter, and Anixter is an important supplier to

5    the Nortel business around the world.  And the concern that

6    was expressed in the objection was concerning the process

7    and procedures for the assumption and assignment of

8    contracts that would be subject to Section 365 of the

9    Bankruptcy Code.  We had a phone call this morning with

10   counsel to Anixter, and we have confirmed to counsel that

11   there are no contracts that are subject to Section 365

12   between any of the U.S. debtors and Anixter that would be

13   subject to this relief.  So I think with that confirmation

14   on the record, my understanding that Anixter is comfortable

15   withdrawing its objection.

16          THE COURT:  All right.  Thank you.

17          Mr. Vigano?

18          MR. VIGANO:  Yes, Your Honor.  Good afternoon

19   again.  John Vigano on behalf of Anixter.

20          Mr. Bromley's correct that we will withdraw our

21   objection based on that representation.  But of course,

22   Anixter does resolve -- reserve its rights with respect to

23   any objection to the sale to the extent, you know, any

24   additional information comes to light between now and the

25   sale.  But with respect to its objection for today's

     purposes, yes, it's withdrawn based on the representation to

1    the Court.

2              THE COURT:  All right.  Thank you, Mr. Vigano.

3              MR. BROMLEY:  Moving on, Your Honor, to

4    Flextronics, there is a limited objection by Flextronics,

5    and there are two points that are made.  I'll start with the

6    one where I think we have a resolution.

7              You will recall, Your Honor, in the context of

8    the Enterprise transaction, Flextronics --

9              THE COURT:  Yes.

10             MR. BROMLEY:  -- had filed an objection relating

11   to certain equipment that is owned by Nortel, but sits on

12   the floor of Flextronics's facilities.  And Flextronics has

13   expressed a concern about the potential that such equipment

14   might be transferred and that they may have claims relating

15   to adequate assurance relating to that equipment.

16             THE COURT:  Right.

17             MR. BROMLEY:  We had a bit of a conundrum in the

18   Enterprise transaction because neither Nortel nor

19   Flextronics were able to identify, with any particularity,

20   the equipment at issue.  I think both agreed that such

21   equipment did exist, but in terms of being able to identify

22   the exact equipment and where it was located and, therefore,

23   being able to determine if any adequate protection was

24   required, was lacking.  And so we agreed to a process, and

25   that process was that Nortel would put together a list and

1

2   Flex would put together a list, and we would exchange those

3   lists and compare them.

4           In the Enterprise transaction, we set a date by

5   which we would do that, and I am happy to announce that

6   neither party were able to meet the deadline.  And so we

7   have extended that deadline, but we do believe that that

8   process is close to being concluded for the Enterprise

9   transaction.  It has given us some lessons, however, as we

10  approach this transaction.

11          So what we propose to do is to insert language

12  into the order that would create the same process.  We have

13  not yet filled in the date as to which we would exchange our

14  lists, and I was speaking with Mr. Drew, counsel to

15  Flextronics, just before the hearing.  I think what we would

16  be comfortable doing is saying that we will exchange that

17  list at a mutually agreeable date prior to the closing, and

18  we will certainly endeavor to make sure that that exchange

19  takes place as soon as possible.  I think that the volume of

20  equipment that relates to this business is probably smaller

21  than the volume of equipment that relates to the Enterprise

22  business, and also the exercise that we've gone through on

23  Enterprise, I think, has instructed both parties as to how

24  to figure out which equipment might be implicated.

25          But in terms of the process, we think that is the

    appropriate way to proceed.  And then, once the equipment is

1    identified and the parties can compare their notes, then we

2    can determine if there is any adequate protection issues.

3    In the meantime, certainly, Flextronics's rights to assert

4    adequate protection arguments with respect the equipment and

5    Nortel's right to object to any such requests are reserved

6    because we obviously can't make those arguments until we

7    know exactly the form and substance of the potential claim.

8            So that's a process point, and we think that that

9    is a solution that is acceptable to Flex, and we have also

10   confirmed that -- with Ciena that that process would be

11   acceptable to them.

12           THE COURT:  Okay.

13           MR. BROMLEY:  So I don't know.  Is that --

14           THE COURT:  Mr. Drew.  Good afternoon.

15           MR. DREW:  Good afternoon, Your Honor.  James

16   Drew from Curtis, Mallet-Provost, Colt, and Mosle.  That's

17   an accurate statement by Mr. Bromley, and I think that's

18   acceptable to Flextronics.

19           THE COURT:  All right.  Thank you.

20           MR. BROMLEY:  The other issue with Flextronics,

21   Your Honor, is there was a request in the objection for

22   access to certain information, and this echoes a little bit

23   something that had been raised in prior circumstances, but -

24   -

25           THE COURT:  Yes.

1        MR. BROMLEY:  -- not entirely.

2        THE COURT:  It looks familiar.

3        MR. BROMLEY:  And so the -- and I think the issue

4    that we face here is that there are certain materials that

5    have been filed and certain materials that have not been

6    filed.  And that was done intentionally, and some of those

7    materials that would otherwise have been filed in Canada, I

8    believe Mr. Tae is seeking an order asking for confidential

9    treatment with respect to those materials.

10        I think what Flextronics is asking for is that if

11    they make a reasonable request for documents, that we will

12    comply with that request.  I think the issue is more of a

13    threshold issue.  Until we know what they're asking for,

14    it's hard for us to say that we can provide it.  There may

15    be materials that they ask for that we believe are not

16    appropriate to provide to Flextronics because they may

17    implicate other relationships with Flextronics that are

18    subject to negotiation or other issues.  And so I think the

19    best we could do is to say that if they have a specific

20    request for specific things, we're happy to consider it and

21    if -- and to come -- and to provide them with an answer

22    quickly.  But if there's a confidentiality concern, we

23    simply cannot agree ahead of time to do anything other than

24    to preserve our rights on that basis.

25        And I think it's important to note that we

believe that there has to be consistent treatment of these materials between the United States and Canada, so that the concerns that we have, you know, are competitively sensitive.  Not to say that Flex is not an important party; that's true.  But, you know, if we were to have to litigate an objection with them, we would, you know, have to deal with that on an adversarial basis and protect all of our rights on that basis.

So I think until we know exactly what they'd want, we can't really say that we'll provide it to them. And on that basis, Your Honor, we believe that that portion of their objection is really not timely and it's not even really well placed for an objection.  If they want something, they can certainly ask us for it, and then we'll have our rights to argue before Your Honor on that point. But I do think it's important to note that the view is that there is certain information that is confidential and competitively sensitive and not appropriate to be shared. And that, I think, is our open issue as it relates to Flex.

THE COURT:  All right.

MR. BROMLEY:  So I'm happy to have Mr. Drew address that point.

THE COURT:  Absolutely.  Mr. Drew.

MR. DREW:  Your Honor, James Drew.  Just, you know, two points on that.

1

2          Number one, the burden is on Nortel to satisfy

3   the applicable legal standards in having the sale approved.

4   So it's -- we don't really believe it's appropriate to hold

5   back and not tell all parties what it is the transaction

6   actually consists of.  Number two, we are subject to a

7   confidentiality agreement, so anything shared with us would

8   remain confidential.  But those points aside and, you know,

9   that said, I think based on my conversation with Mr.

10  Bromley, we're satisfied that Nortel will act reasonably in

11  responding to our request.  And it's fair that we haven't

12  actually asked for specific documents yet, so -- but we

13  expect to promptly do that, and we expect prompt responses.

14  And if there's an issue, everyone has their remedies,

15  including discovery, which we don't expect this will be

16  necessary, but everyone reserves their rights.

17          THE COURT:  All right.  So I understand that

18  while you're not withdrawing your objection, perhaps you are

19  satisfied with the processes as it is in place or that

20  you're satisfied that based upon prior history with Nortel

21  that they will be cooperative.

22          MR. DREW:  We're satisfied that if there's an

23  issue, we'll have the ability to come back to Your Honor.

24          THE COURT:  That's for sure.  Yes.  Okay, Mr.

25  Drew.  Thank you.

            MR. DREW:  Thank you.

1       MR. BROMLEY:  Thank you, Your Honor.  I will

2   confirm that if there's an issue as to which there's a

3   disagreement, we'll -- we will not hide that fact from Mr.

4   Drew.

5       THE COURT:  Excellent.

6       MR. BROMLEY:  And, Your Honor, then I would cede

7   the podium to Mr. Botter and the Committee as to their

8   objection.

9       THE COURT:  Thank you.

10      MR. BROMLEY:  Thank you.

11      THE COURT:  Mr. Botter.

12      MR. BOTTER:  Good afternoon again, Judge Gross,

13  Justice Marowitz.  David Botter, Akin, Gump, Strauss, Hauer,

14  and Feld, on behalf of the Official Committee.

15      Your Honor, I think it's fair to say that the

16  Official Committee has been fully supportive of the

17  transactions and the efforts of the debtors thus far in this

18  case.  The work of the debtors themselves, Mr. Bromley's

19  team at Cleary, Mr. Murray's team at Lazard, in connection

20  with CDMA and Enterprise and those auctions and getting us

21  to where we are today on MEN have been nothing short of

22  excellent.  Your Honor, the successful CMDA and Enterprise

23  auction experiences were based really upon the hard work of

24  the company and its professionals, the hard work of the

25  constituents' professionals, the cooperative effort between

all of those parties, and maintaining flexibility in order

to react to any issue.  And I can assure you, and I'm sure

that Mr. Bromley would agree with me, that there were many

issues that arose during both of those auction processes.

Your Honor, we are quite hopeful to continue to

the track record with all the remaining sales, including

MEN.  Nothing short of successful is what one would

characterize the sales efforts thus far.

The Committee believes that maintaining

flexibility to react to all the issues that might arise is

truly critical to these sales efforts.  Similarly, the

Committee believes that maintaining a level playing field

between bidders is critical to the success of auctions.  As

a result of this, Your Honor, and despite the Committee's

support for the debtor's sales efforts thus far and here in

connection with MEN, the Committee does believe it is

necessary to object to the bidding procedures that are

before both Courts to maintain a level playing field and to

maintain the flexibility for the estates.

And Your Honor, we obviously filed the objection.

I'm quite certain that Your Honor has read that --

THE COURT:  Yes.

MR. BOTTER:  -- and I'm quite certain that

Justice Marowitz has seen it and hopefully has read it, as

well.  And I will not stand here and rehash every single

word, but I think it's fair to break down our objection into three categories.

THE COURT:  Okay.

MR. BOTTER:  We have uneven playing field categories, we have flexibility concerns, and then we have buyer protection issues.

With respect to the uneven playing field, there are four subcategories that we are very concerned about in terms of the preference, for lack of a better term, that the stalking horse bidder is getting as a result of the particular bidding procedures that are in front of Your Honors.  Specifically, the stalking horse here is not required, as are all other potential bidders, to be a backup bidder or an alternate bidder.  Your Honor, that, we believe, provides a great deal of comfort and preferential treatment to the backup bidder and is harmful to the estates, and as we've described throughout our objection, we think this needs to be changed.

Similarly, Your Honor, the backup -- the stalking horse bidder is going to get another goodie, which is that they will get advanced copies of all of the bids.  This is damaging to their competitors because they'll be the only one in the catbird seat holding all of the bids, and frankly, Your Honor, more damaging to the efforts of the estate professionals because we don't, then, have the

opportunity to go and better bids and change bids prior to
them being seen by the stalking horse bidder.  Again,
creation of an uneven playing field and also creation of a
situation where the estate professionals can't do their
jobs.

Your Honor, additionally, while all other bidders
are required to submit a five-percent deposit, the stalking
horse is not so required.  That, too, creates an uneven
playing field.

And lastly, Your Honor, there is a question as to
whether or not, in all circumstances, a bidder -- a [sic]
alternate bidder would get a refund of its deposit.  We're
talking about substantial sums of money here, and as I just
said, our stalking horse is not required to make a deposit.
And if someone believes that even in an appropriate
circumstance where they should get their deposit back, that
they may not get their deposit back, that will chill
participation of alternate bidders.  So those, Your Honor,
are the four uneven playing field objections.

Turning to the flexibility objection, and I think
that history, at least in this case, has shown us that this
may be the most important objection of all, which is to
maintain flexibility on behalf of the debtors, the Official
Committee, and the other major constituents, including the
monitor in Canada and including the bondholder group, who

1  have worked very well together throughout these proceedings.

2  But maintaining flexibility to react to issues in the

3  auction process without giving a stalking horse bidder

4  effectively a veto right over that flexibility will

5  significantly hamstring the debtors and the major

6  constituents from getting a result and getting the type of

7  result that we've had so far, and then I would suggest to

8  both Your Honors that that result, the amazing auction

9  results that we've had in both CDMA and Enterprise, really

10  was as -- was majorly affected by the ability for the Lazard

11  team and the Cleary team to come to the committees and to

12  say, guys, here's the direction we want to go, we want to

13  change it up this way.  And we've had many instances, and

14  that led -- those changes, that flexibility led to the

15  substantially greater results in the auction process.

16          So the flexibility point with respect to making

17  changes to the bid procedures, making changes to the auction

18  dates, making changes to the sale hearing dates, that's

19  something that really is critically important to these

20  estates.

21          And, Your Honor, the third category of issues

22  and/or objections that we have is with respect to the buyer

23  protection.  And Judge Gross, I know that you are intimately

24  familiar with the law here in this Third Circuit.  Justice

25  Marowitz, the Third Circuit law requires that in order to

1   approve buyer protections of the type that the debtors are

2   seeking here with respect to the stalking horse, is that a

3   benefit to the estate is conferred.  And again, we've

4   addressed this point in full in our objection, but in the

5   situation where there is no closing of an alternate bid,

6   where something happens where there are no proceeds, where

7   the debtors are left with these assets, it is very difficult

8   to believe that a benefit has been conferred on the estate.

9   And so without a closing of an alternative transaction, the

10  Committee believes that there should be no breakup fee.

11          Your Honor, as I said, and Justice Marowitz, as I

12  said, we've fully explained these positions in our pleading.

13  We think that this process is a very good process.  We think

14  the debtors have done an excellent job getting us to this

15  point on MEN.  However, we do believe that there are some

16  problems and that these problems can be addressed by the two

17  Courts and we can move forward on the MEN transaction with a

18  more even and level playing field and the appropriate

19  flexibility accorded to the estates.  Thank you, Your Honor.

20          THE COURT:  Thank you, Mr. Botter.

21          MR. BOTTER:  Thank you, Justice Marowitz.

22          THE COURT:  Thank you.

23          Does anyone else wish to be heard?

24          MR. BACON:  Your Honor, I'm Doug Bacon from

25  Latham and Watkins.  I represent --

1      THE COURT:  Welcome to you, Mr. Bacon.

2      MR. BACON:  I represent Ciena Corporation.  Good

3  afternoon, Justice Marowitz.

4      Your Honor, I understand our role today and that

5  we're in some ways on the periphery of this and in other

6  ways, we're at the very center of it.

7      THE COURT:  Yes.

8      MR. BACON:  And I just want to briefly give you

9  our perspective today.  The things I would emphasize from

10  the evidence that was presented by Mr. Bromley are that this

11  is not your everyday 363 sale.  This -- we're before you

12  today with the culmination of six months of active

13  negotiations.  This has been a huge transaction.  The asset

14  purchase agreement just for North America is 143 single-

15  spaced pages.

16      THE COURT:  Yes.

17      MR. BACON:  It is complex.  It is comprehensive.

18  Before you even layer in the EMEA assets across several

19  countries in Europe, it's roughly $532 million.  It's a big,

20  comprehensive deal.  Getting to this position of being the

21  stalking horse obviously presents certain advantages to my

22  client and certain very significant disadvantages to my

23  client because my client has, in effect, subject to terms

24  and conditions in a 143-page document, agreed to pay $532

25  million, and we'll never really know what the bargain

basement price was for that.  And that's the pros and cons of being a stalking horse.

We had a special element, though, that, in some ways, facilitated our negotiations and I hope will facilitate the decisions presented to both these Courts, and that is that we did have the benefit of the precedent approved in this court in the CDMA and Enterprise transactions.  And I can't tell you that the procedures before you are identical to either.  They're not.  In some ways, we took some of the best of both.

They do pretty closely adhere to the CDMA procedures in the most pertinent parts, and if necessary, we could compare and contrast them.  But I say that, Your Honor, not to suggest that you're bound by procedures that have been approved in this case.  I know that's not technically law of the case, but it is informative, and it was helpful to us in our negotiations because it kept us -- it made it easy for both sides to agree that we were within the parameters of stalking -- a stalking horse package that we could reasonably present to this Court and that Lazard could testify as they, in effect, have are fair and reasonable.

So we're not -- we haven't come in here with things that are way out of bounds.  And the -- what the Committee's trying to do -- and I don't blame them, but what

1  they're trying to do is reset the playing field, and that's

2  their language, not mine.  That's right out of their

3  objection.  They're asking this Court to reset the playing

4  field, which in some -- of course, the Court's got the

5  prerogative to do whatever it wants, but here, you would be

6  resetting not only an extensively negotiated playing field,

7  but a playing field that looks a whole lot like the playing

8  field in two massive transactions that were approved in this

9  case.

10           And what the Committee would also like to do, I'm

11  sure, and again, no hard feelings, is they would like to

12  back me into the position of having to negotiate with this

13  Court, which I've -- if I've learned anything in 26 years of

14  doing this, it's that I'm never going to win that

15  negotiation, and to have Mr. Justice Marowitz negotiating at

16  the same time, you know, I quiver at the prospect of that,

17  and I'm not -- I know the Court's not going to get backed

18  into doing that, and I'm not either.  I will represent to

19  the Court, and I think the witnesses would absolutely

20  verify, that the stalking horse protections, the package

21  that the Committee would like to reopen negotiations on

22  today were incidental to the negotiations.  I will represent

23  to this Court that I have been involved in this transaction

24  since literally the first day, which was something more than

25  six months ago.

1    THE COURT:  Yes.

2    MR. BACON:  And the -- our client has -- it was

3    explained to our client at the very outset that if you're

4    buying out of a bankruptcy, basically you can't avoid an

5    auction.  So the client looks at it and not -- has -- I

6    don't think has done this before in a bankruptcy, and said,

7    so I'm going to spend millions of dollars, and they have

8    spent millions of dollars getting to this point in the

9    process, and then there's going to be an auction after I'm

10   the only one who went out and spent million of dollars and

11   heaven knows how many literally thousands of internal

12   management hours, and then I'm going to get to the end and I

13   have to go to an auction, and the answer is yes.  Yes, but

14   you get certain benefits.  The Court will bless a fairly

15   conventional breakup fee, three percent plus one percent

16   expenses, and the expenses will exceed that one percent,

17   Your Honor.

18          You know, that's the pro and con, and that has

19   been an element of this transaction from the very beginning,

20   and I think it's quite fair to say that this client, the

21   Ciena Corporation, has periodically revisited -- Mr. Bromley

22   said the negotiations were contentious.  I didn't get to

23   participate in any contentious negotiations, but they were

24   certainly extensive.  And this Ciena Corporation, over a

25   six-month period, has had junctures where they've thought,

1    should we proceed, shouldn't we proceed, and in the context

2    of that, the stalking horse pros and cons were revisited.

3              So it's not something that we just jammed in at

4    the end.  It's not -- there's nothing in these procedures

5    that is unconventional or even unconventional in the context

6    of this case.  And Your Honor, it's a package deal, and I

7    think that's easy for the Court to take judicial notice of.

8    So if the Committee wants to use the two Courts that are

9    here today's good offices to reopen negotiations, obviously

10   that's a very slippery slope.  And the question becomes,

11   okay, if we reopen negotiations on this, can we drop the

12   purchase price by $15 million.

13             Now, I can have that negotiation with Mr. Botter

14   out in the hallway, but again, I don't think it's fair to

15   ask me to do it with the Court.  I don't think it's

16   appropriate.  I don't think it's necessary.  The expert

17   testimony before this Court supports really what's the -- I

18   think the central representation the debtor made to this

19   Court in its motion, and I'm just going to read one sentence

20   from paragraph 24 of the motion.

21             "The debtors have determined that the stalking

22             horse agreement and the EMEA Agreement represent

23             the best opportunity for the debtors to maximize

24             the value of their assets relating to the MEN

25             business and serve as a basis for conducting an

1    auction to seek higher and better offers."

2        We understand that we're a stalking horse.  We

3   understand that we're subject to the inevitable auction.

4   The rules of the auction, which I will represent and I

5   believe are fundamentally conventionally, were indeed

6   tightly negotiated, and they're part of the benefit of the

7   bargain.  And we'd ask Your Honor to approve them today and

8   not let the Committee reset the playing field six months

9   into the negotiations.

10        THE COURT:  All right.  Thank you, Mr. --

11        MR. BACON:  Thank you, Your Honor.

12        THE COURT:  Thank you, Mr. Bacon.

13        Mr. Bromley, anything further from you or from

14  Mr. Botter?

15        MR. BROMLEY:  If I could just add a couple of

16  points, Your Honor.

17        THE COURT:  Let me just tell you my -- a concern

18  that I have is that if there is no transaction, which I know

19  is highly unlikely, that there -- the breakup fee and

20  expense reimbursement would be payable; is that correct?

21  That is one of the Committee's concerns.

22        MR. BROMLEY:  There are -- I think the answer to

23  that, Your Honor, is there are certain dates that have been

24  built into the process, and the passage of those dates

25  create certain rights in parties.  And those rights would

1   include that if we don't have a sale -- an auction take

2   place by a date certain or a sale take place by a date

3   certain or a sale hearing approval by a date certain, that

4   it gives parties certain rights.  I think, generally

5   speaking, if the debtors exercise those rights, that the

6   breakup fee would be payable and that --

7           THE COURT:  Okay.

8           MR. BROMLEY:  -- if the purchaser exercises those

9   rights, the breakup fee would not be payable, but the

10  expense reimbursement would.

11          THE COURT:  Right.

12          MR. BROMLEY:  And I think that -- without going

13  into a great deal of detail and not -- and certainly not

14  amending the document that was heavily negotiated, I think

15  that's the way it works.  And I -- Mr. Bacon could -- can

16  confirm that if I've gotten that, just from a general sense,

17  correct.

18          THE COURT:  Mr. Bacon?

19          MR. BACON:  I think that's essentially correct,

20  Your Honor.

21          THE COURT:  Okay.  Thank you.

22          MR. BROMLEY:  I think, you know, the point I -- a

23  couple points I was going to make, talking about the prior

24  bid procedures.  It's a bit like scar tissue that's a little

25  issue, you know.

1

2          These are -- each one of these transactions lives

3   and dies on its own, Your Honor, and -- but now that we're

4   in the third major transaction, it is impossible to ignore

5   the fact that we have two that occurred in the past.

6   Certainly, the debtors did their best to negotiate as good a

7   transaction as possible, and that is what they tried to do.

8   You know, we understand Mr. Botter's concerns, and they're

9   not illegitimate concerns.  It's simply in the context of

10  what we were able to negotiate.  We did as good as we could

11  do.  And I don't know if Mr. Botter has anything else.

              MR. BOTTER:  Your Honor --

12            THE COURT:  Yes.

13            MR. BOTTER:  -- very briefly.

14            THE COURT:  Yes.

15            MR. BOTTER:  And Your Honor can -- I know that

16  the agreement is an exhibit to the motion itself, but --

17            THE COURT:  Yes.

18            MR. BOTTER:  -- if Your Honor wanted to look at

19  Sections 10.1 and 10.2, that deals with the circumstances

20  where a termination payment and/or breakup fee would be

21  payable in a situation that does not necessarily involve or

22  does not involve an alternative closing.  For example,

23  breaches of reps and warranties or failure to obtain

24  necessary government approvals or, as Mr. Bromley suggested,

25  the failure to meet certain dates could end up in a breakup

fee being paid without an alternative transaction closing.

With respect to the precedent point, we do have precedent in this case, and the precedent -- you need to look at it the other way, which is that in situations where we've not had as restrict -- as big a restriction on the flexibility of the debtor's professionals and the Committee's professionals to act, we've had very successful auction processes.  We've not been hamstrung by our stalking horse bidders from doing what is required to maximize value for the estates.

Finally, Your Honor, with respect to those issues that chill bidding -- for example, the failure to act as an alternate or backup bidder and things of that nature -- Your Honor, chilling bidding is what is prescribed by the law in this circuit.  So I think that those types of provisions, while they may be precedential or not, from prior transactions are prohibited by the law in this circuit.  Thank you, Your Honor.

THE COURT:  Thank you, Mr. Botter.

All right.  I certainly understand the issues, and I think this would be an appropriate time -- Mr. -- oh, I'm sorry.  That's right.  We have to hear from our friends in Canada.

JUSTICE MAROWITZ:  Mr. Tae.

MR. TAE:  Thank you, Your Honors.  My brief

1   covered extensively the bidding procedures and the stalking

2   horse agreement.  What I'd like to touch on is the

3   particularly median aspect of this deal, and that is the

4   letter of intent with the landlord of the premises in

5   Montreal that we have to enter into in conjunction with this

6   deal.

7           And basically, what's happening is that we

8   currently lease some space in Montreal where we have the

9   third and the fourth floors of a particular building, and

10  it's been used for the MEN business.  And although we have

11  two floors, we really only need one floor because of the

12  reduction in workforce and all the rest of that.

13  Furthermore, the purchaser has advised that it is only

14  interested in leasing the third floor of the Montreal

15  premises if they are successful in this process.

16          So in order to facilitate  the sale, we have

17  entered into discussions with the landlord of the Montreal

18  lease, and -- to, in essence, change the lease so that the

19  term for the third-floor premises, which is the desired

20  space, will be extended from the current expire date of June

21  30, 2012 to June 30, 2014, so that we have the premises for

22  the longer life to handle with the purchase, and to reduce

23  the term of the fourth floor, which we don't need to nine

24  months from the date of the LOI.

25          The concepts, then, that we made then assigned

the Montreal lease as part of the sale to the purchaser and
to other purchasers, should Ciena not be the ultimate
successful purchaser.  And the landlord has required a quid
pro quo as part of this that if the sale of MEN business
does not close by May 31, 2010, that the consent to
reassignment as set out in the LOI is rescinded and NNL will
have to pay a penalty of half-a-million dollars plus
applicable taxes.  They've also required an agreement that
we will not repudiate this, as otherwise have the right to
do under the CCAA proceedings.

            JUSTICE MAROWITZ:  Before you leave that, Mr.
Tae, what happens if Ciena is not the purchaser and the
purchaser wants the fourth floor?

            MR. TAE:  Well, I'm coming to that.

            JUSTICE MAROWITZ:  Good.

            MR. TAE:  Okay.  So basically, what the LOI
provides is that we can either assign the floor to the
purchaser who is not Ciena, the successful purchaser, but if
the purchaser refuses to take that space or doesn't need to
take that space, then we can simply surrender those premises
and pay a penalty of approximately three million
(indiscernible).  However, I should point out that the sale
agreement provides that the purchaser has to pay that
amount, so it doesn't come out of the estate.

            What we look for, therefore, in conjunction with

this particular motion in Canada are four things.  We're

seeking approval of the bidding procedures, we're seeking

approval of the stalking horse agreement, approval of the

LOI with the landlord, and the sealing of -- and I should

have mentioned that you should have the 24th report of the

monitor, and you should also have the confidential

appendices B and E, and we are seeking the sealing of the

confidential appendices B and E.

        And I should highlight this point of the point

that Mr. Bromley raised in dealing with Flex, the quasi-

objection or whatever that was.  That if there is a fight

about information that Flex wants that we believe is not

appropriate, it is not solely a U.S. fight.  It is U.S. and

Canadian fight because what we're asking for today is that

that information in those appendices be sealed.  And so if

we don't come to an agreement with them or if we believe

that they are being unreasonable in the request for such

information, we expect that that will have to be brought

back before both Courts on proper notice and proper

materials so that we can have it out.

        And in terms of the sealing, the test, as you

have mentioned in a number of your decisions before, is the

test that the Supreme Court of Canada set out in Sierra

Club.  And basically, that we have to satisfy the test, the

orders needed to prevent serious risk to an important

1
2    interest because reasonable alternative measures will not

3    prevent the risk, and I think the evidence before you

4    clearly states that out and that salutary effects of the

5    order needs to outweigh it's deleterious effects, including

6    the effects of the right to free expression, which includes

7    a public interest in open and accessible court proceedings.

8    And we don't believe that there is any argument here that

9    justify the non-granting of the sealing order because it

10   does contain very sensitive information as set out in the

11   evidence before you.

12           So subject then to any questions you may have,

13   those are my representations on this motion.

14           JUSTICE MAROWITZ:  Thank you, Mr. Tae.

15           Mr. Carfagnini.

16           MR. CARFAGNINI:  Yes, Your Honor.  Jay Carfagnini

17   from Goodmans on behalf of the monitor.

18           Your Honor, the monitor has, as all the

19   transactions, been involved extensively in this transaction,

20   and as is reported in the monitor's 24th report, paragraph

21   27, the monitor has also, as it has in all other cases,

22   performed its own review of the materials submitted by the

23   prospective purchasers and has provided input to the

24   company.

25           The second point I'd like to point out, Your

     Honor, is unlike in the GSM transaction, this is a

significant transaction for Canada and there is a

significant involvement, and over half of the employees

involved that are situated in Canada.  The monitor is fully

aware of that.  Having said that, when we go through the

monitor's very extensive report on this, in paragraph 93 of

that report in particular, the monitor forms some very

pointed conclusions and recommendations.  The monitor's --

the review that the applicants are acting in good faith to

maximize value, they recommend approval of the Ciena

agreement as a stalking horse bid, and in so doing, the

monitor points out that in its judgment, it considers the

potential payment of the break fee and expense reimbursement

as reasonable in circumstances.  They understand the

submissions made.  Those are the points made by the monitor.

And also, consistent with Your Honor's other

request at paragraph 28, in terms of the sealing order for

Canada, you've asked in the past for the monitor's position

on that.  In paragraph 28, the monitor specifically requests

that that confidential information be sealed relating to

both competitor information and personal information with

respect to those employees.

Secondly, on the Montreal transaction, Your Honor,

paragraph 94, the monitor, again, has been involved and

reviewed the terms of the Montreal letter of intent.  It's

of the view that they are necessary and reasonable in the

circumstances and also recommends approval of those.

So subject to any further questions you might have or Judge Gross may have either of me or of representative of the monitor, who of course is here in Court, we have no further submissions.

JUSTICE MAROWITZ:  Thank you.

Any other party that wishes to make submissions in support of the motion?

(No audible response)

Parties who wish to contest or object to parts of the motion?

Mr. McFarland [ph].

MR. MCFARLAND:  Your Honor, I'll just be very short -- brief.

Judge Gross, Your Honor, Justice Marowitz, my colleague, Mr. Botter, on behalf of the Committee has made extensive submissions which are set out in the objection which has been filed with both Courts.  Your Honor, that objection should be -- have been filed with you this morning.  The three areas that Mr. Botter spoke about is set out in detail in various sections, which is, one, an uneven playing field, flexibility, and buyer protection.  I'm just going to touch on a couple of those points from a Canadian perspective.

First of all, the concept of uneven playing field

1   as it relates to the necessity of making a deposit or

2   putting forth a deposit with a sale agreement is a fairly

3   standard process with respect to Canadian sealed

4   transactions.  In this particular case, there is an uneven

5   playing field, as Mr. Botter highlighted, that the

6   purchaser, the stalking horse purchaser has not been

7   required to make a deposit, whereas all other bidders will

8   be required to put forward a substantial deposit along with

9   their bid, and also it's unclear as to whether those bids

10  will be refundable based upon the documentation before the

11  Court.

12          The second prospective major concern for both

13  Courts is -- and Judge Gross has touched on this -- is with

14  respect to the protection for the buyer.  And again, those -

15  - that issue is covered in the objection in paragraph 21,

16  bullet point II, to the extent that -- I'm sorry.  The wrong

17  one, sorry.  Paragraph 18, 320.  Although the concept of the

18  break fee and reimbursement fee is not necessarily a

19  Canadian issue, the applicability of the U.S. law as set

20  forth in detail in paragraphs 8.3 through 20, and I would

21  just ask that Your Honor refer to those sections in

22  considering the unfairness or the possible prejudiced

23  statement if there is not a consummated alternative

24  transaction, that the company is exposed to a significant

25  break fee and reimbursement fee.

1

2          Those are all my points.  I think Mr. Botter has

3   covered everything with reasonable clarity.

           JUSTICE MAROWITZ:  Not quite yet.

4          MR. MCFARLAND:  Silly me.

5          JUSTICE MAROWITZ:  In previous motions of this

6   type, the objections have either been withdrawn, overruled,

7   or dismissed or denied by Judge Gross, the U.S. disposition,

8   and I have not seen fit to comment further.  I take it from

9   your submissions that that is not the situation that you

10  wish to have unfold in this motion.

11         MR. MCFARLAND:  Well, because the process has --

12  it has evolved through the various hearings, Your Honor,

13  that the -- there would be a consultation period after the

14  receipt of objection.  We would expect that both Courts

15  would consult on these objections and you both determine

16  from the Candian/U.S. perspective if the objection should be

17  allowed in whole or in part or overruled.  That still would

18  be squarely within your discretion if you want to consider

19  the objections or not.  The objection was clearly -- it's

20  not a Canadian document.  It's a U.S. document.  It was

21  filed in accordance with the protocol, and it is a courtesy

22  to this Court to provide this Court with the same

23  information and -- that is before Judge Gross.  The purpose

24  of my submission simply is just to highlight those

25  particular U.S. issues from a Canadian perspective.

1

2          JUSTICE MAROWITZ:  Then, I address the follow-up

3    question and invite either you to respond or Mr. Botter to

4    respond.  It's a difficult one, and it's one that Mr. Bacon

5    squarely put forth in his submissions in that there is an

6    agreement that -- put before the Court for approval.  And

7    generally speaking, this Court will either approve or not

8    approve.

9          MR. MCFARLAND:  That's correct.

10          JUSTICE MAROWITZ:  Those circumstances -- what's

11    the option for me?

12          MR. MCFARLAND:  The option, two-fold, is to

13    withhold approval subject to the parties going and

14    discussing further amendments to the agreement that may be

15    acceptable to all parties, to -- and it's certainly -- once

16    again from a Canadian perspective, which is different from a

17    U.S. perspective, the purchaser does not really have a voice

18    in the proceedings and does not have an economic stake in

19    the hearing, so that's a little bit different than the U.S.

20    proceedings, but the Court should withhold his consent to

21    this agreement until the agreement was -- I was -- my

22    submission would be tinkered so that it would be acceptable

23    to all stakeholders.  And the Court could obviously overrule

24    the objections and simply approve the agreement on the basis

25    that as we've heard before, the bird in the hand is worth

     two in the bush.

1          JUSTICE MAROWITZ:  Thank you.

2          MR. MCFARLAND:  Thank you.

3          MR. BOTTER:  And if it pleases the Court, just --

4          MR. MCFARLAND:  I don't know if Mr. Botter wants

5   to respond, as well, to Justice Marowitz's follow-up

6   questions.

7          MR. BOTTER:  And if Your Honors would permit me

8   very briefly to respond to what I believe I thought was the

9   question, and this is solely from a U.S. perspective.

10          I think that Justice Marowitz asked the question

11  of if the Court has only the option to say yea or nay, what

12  is it that we do.  And from a U.S. perspective, if with

13  respect to the breakup fee, if the Court determines that it

14  does not comply with applicable law here in the Third

15  Circuit, then the answer would have to be nay.

16          Obviously, my colleague in Canada has answered

17  the question most appropriately, which is -- and as I

18  started off my argument saying we are supportive of moving

19  forward.  If there are problems with this agreement, as

20  we've pointed out, we are more than happy to work through

21  those issues.  We've identified them, and we are prepared to

22  work through those issues.  But with respect to the legal

23  question on the breakup fee and the law in this circuit is

24  fairly clear, the Court would, in our view, have no choice

25  but to say that it could not be approved in the form that it

exists if, in fact, it does not comply with prevailing Third Circuit precedent.

Both Your Honors, one other point that there was discussions on last night and this morning between myself and Mr. Bromley, and that is the last point that the Creditors' Committee had made in its objection, which appears on Page 12, where it's the second -- the penultimate point, which reads that the asset -- the ASA provides that failure to comply with the bidding procedures order constitutes a breach of the agreement, giving the purchaser a right to assert a damages claim.  After we had filed our objection, the Cleary team had pointed out that the ASA actually provides for that to be material breaches.

THE COURT:  Okay.

MR. BOTTER:  And so that actually is an important point to clarify for the record.

Thank you, Judge Gross.  Thank you, Justice Marowitz.

THE COURT:  Thank you, Mr. Botter.

JUSTICE MAROWITZ:  Thank you, Mr. Botter.

Any further comments or reply, Mr. Tae?

    (No audible response)

JUSTICE MAROWITZ:  Ms. Williams is rising behind you.

MS. WILLIAMS:  Just very briefly on behalf of

Flextronics here in Canada, although we don't object to

sealing order per se, we do reserve our rights to come back

if the parties cannot agree as to what would be disclosed

and bring the matter before the Court.

JUSTICE MAROWITZ:  Well, I would regard that as a

new motion to reconsider the sealing at the time as opposed

to a reservation of rights.

MS. WILLIAMS:  That's fine, Your Honor.

JUSTICE MAROWITZ:  You're welcome.  Thank you.

Anybody else wishing to make submissions prior to

my calling on Mr. Tae for any reply?

(No audible response)

JUSTICE MAROWITZ:  Mr. Tae.

MR. TAE:  Thank you for the opportunity, but I

don't think there's anything else I need to say.

JUSTICE MAROWITZ:  And the -- because it was

extended to Mr. Botter to tell us, we'll extend to Mr.

Bromley if he wishes to have anything to say at this point.

MR. BROMLEY:  No, thank you, Your Honor.  We're

happy for you to take a break and let us know what you

decide.  Thank you.

THE COURT:  All right, Mr. Bromley.

JUSTICE MAROWITZ:  Well, whatever you said, Mr.

Bromley, we did not hear it, but I assume it was brief.

THE COURT:  Mr. Bromley said it's up to us, Mr.

1  Justice Marowitz.

2         JUSTICE MAROWITZ:  Good.  With that, I think,

3  Judge Gross, it is appropriate to take our recess at this

4  point.

5         THE COURT:  Yes.  We will take a recess.  We'll

6  stand in recess.

7         THE CLERK:  All rise.

8         THE COURT:  And we'll be back as soon as

9  possible.  Thank you.

10     (Recess taken at 3:47 p.m. to 4:06 p.m.)

11         THE COURT:  Thank you, everyone.  Please be

12  seated.  And I will await the arrival of my colleague.

13     (Pause)

14         THE CLERK:  Order.  All rise.

15         JUSTICE MAROWITZ:  Counsel, as provided for in

16  the cross-border protocol, Judge Gross and I have obviously

17  taken a recess and have communicated, and Judge Gross, I'll

18  leave it to you to provide your commentary at this point.

19         THE COURT:  Thank you, Mr. Justice Marowitz.

20         As Justice Marowitz has indicated, he and I have

21  consulted over the recess concerning the proposed bidding

22  procedures.  And I will first note that the debtors have

23  been extremely successful in prior auctions and sales, and -

24  - however, each transaction obviously stands on its own

25  merits, and the Committee has raised a number of important

objections, which Justice Marowitz and I are concerned about.  And in particular -- of course, Justice Marowitz is deferring to me as to whether or not the proposed breakup fee arrangement is acceptable under Third Circuit law, and I agree with the Committee's objection here that this breakup fee, as it is proposed, is not consistent with Third Circuit law, in particular the decision in the O'Brien case. Without a successful closing, there would be no benefit to this estate, which would be commensurate with the breakup fee, and accordingly, without negotiating, obviously, with the purchaser, the proposed purchaser, that provision is not acceptable to the Court.  That's number one.

Secondly, we are in agreement, Justice Marowitz and I, that one of the important factors in a successful sale is that there be an even playing field, that there not be any chilling of bids of participants at the auction, and that a deposit -- that the purchaser should provide a deposit here, and that the purchaser should not have, in effect, a veto over successful bidders receiving the return of their deposit under appropriate circumstances.  That clearly would chill the bidding process.

The Committee has also raised an objection concerning the purchaser's refusal to serve as a backup bidder in the event of another successful bidder at the auction not proceeding to closing.  As to that, I will note

that in the <u>Avaya</u> transaction, the second-highest bidder did

not agree to serve as a backup bidder, and under those

circumstances, I think that that is not something that we

would require of the purchaser here.

As far as the purchaser having a veto over some

of the key requirements for the bidding, thereto this --

that is not in the Court's judgment on the issue which must

be modified.  We would accept that provision.  But under the

circumstances, we are not prepared to approve these stalking

horse terms and wonder if the parties would like to have

some additional time to discuss these open issues, if you

will.

Mr. Bacon?

MR. BACON:  Thank you, Judge.  Doug Bacon for

Ciena.  I don't know what the Court's calendar looks like or

this afternoon looks like.  I would like a chance to confer

with my client.  We're --

THE COURT:  Of course.

MR. BACON:  We understand the Court's ruling.  We

didn't game-play that because frankly, we didn't anticipate

it, and I'm not going to argue with the Court's ruling.  I

know better.

I'll tell you, the reason it's not -- it may not

be a simple fix.  Some of these things are simple fixes, and

some aren't.  And you know what?  I'll sound like I'm

1   arguing, so I'll just -- I would like a chance to confer

2   with my client and with opposing counsel.  Could we get a

3   little more time with the Court today just to figure out if

4   --

5            THE COURT:  Yes.

6            MR. BACON:  -- if it makes sense to come back or

7   not because I --

8            THE COURT:  Absolutely.

9            MR. BACON:  So my client understands, the Court

10  has declined the motion as proffered, but is willing to hear

11  more from us after we talk.

12           THE COURT:  Yes.

13           MR. BACON:  If we can try to accommodate these.

14           THE COURT:  Absolutely.

15           MR. BACON:  Thank you, Judge.

16           THE COURT:  I think that, certainly, we do have

17  time this afternoon.  And --

18           MR. BACON:  I know it's --

19           THE COURT:  -- I will give you an ample -- I

20  think we're both prepared to give you an ample opportunity

21  to consult with your client.

22           MR. BACON:  Okay.  I think --

23           THE COURT:  And with the debtor, of course, and

24  also with the Committee.

25           MR. BACON:  I know it's an hour -- I think it's

an hour later in that part of Canada, and I think if we

could take, I don't know, 30 minutes, that'd give me ten

with my client and a few with Committee counsel.  I think

everybody here wants to see an order today, if we can.

            THE COURT:  Understood.

            MR. BACON:  And we'll find out if we can.

            THE COURT:  Yes.  Justice Marowitz, is that

acceptable to you, sir?

            JUSTICE MAROWITZ:  Mr. Bacon, as they say, it's

same time, same station.  We're on Eastern Daylight time at

the moment, so the day is young.  We are around, and

certainly, I'll look for counsel to keep the registrar

informed here.  The good news that we did not inform you of

as of yet is that the other transaction, the GMS

transaction, that one will be approved.

            THE COURT:  That will be approved, and I should

also add that we don't have other issues.  We've laid out

all of our issues with the proposed transaction, the Ciena -

- as far as that transaction is concerned.

            MR. BACON:  Thank you, Judge.

            THE COURT:  Mr. Bromley?

            JUSTICE MAROWITZ:  Now, I think, Judge Gross,

with that, take a recess.  I would expect that -- I see Mr.

Bromley rising, so -- but certainly, we're looking at sort

of 45 minutes to an hour as a starting point if required.

1          THE COURT:  Yes, Mr. Bromley.

2          MR. BROMLEY:  If I could, Your Honor --

3          THE COURT:  Yes.

4          MR. BROMLEY:  -- and Mr. Justice Marowitz, could

5     we also ask for your ruling on the other auction procedures?

6          THE COURT:  Mr. Justice Marowitz had just

7     indicated that we are prepared to --

8          MR. BROMLEY:  Oh, I'm sorry.

9          THE COURT:  That's all right.  It was difficult

10    to hear.

11         MR. BROMLEY:  I couldn't hear that.

12         THE COURT:  That we are prepared to approve that

13    transaction.

14         MR. BROMLEY:  Oh, excellent.  If I may approach

15    with our order here in the United States.

16         THE COURT:  I believe -- Mr. Justice Marowitz, do

17    you need additional time to prepare your ruling on that?

18         JUSTICE MAROWITZ:  What I might do, Judge Gross,

19    is I'll hear what you have to say about it, I'll go through

20    the draft order that I'm sure Mr. Tae has provided, and

21    during the break, I'll pull together some reasons, so I can

22    deliver it in a coherent manner in about half an hour or 40

23    minutes.

24         THE COURT:  All right, Mr. Justice Marowitz.

25         I am prepared to approve the bidding procedures

1   for the GSM/GSM-R transaction.

2           MR. BROMLEY:  Yes, that's right, Your Honor.

3           THE COURT:  It's certainly, first of all, the --

4   what has been referred to as the naked auction, I think, is

5   a fair and appropriate process, and I think it's designed to

6   achieve an active auction.  And here, we will certainly

7   defer to the debtor's business judgment, and I will approve

8   the motion.

9           MR. BROMLEY:  Thank you very much, Your Honor.  I

10   have a clean and a blackline, if I may approach.

11           THE COURT:  You may.

12           MR. BACON:  Judge, may we be excused and I'll

13   start using --

14           THE COURT:  Yes, Mr. Bacon.

15           MR. BACON:  Are we coming back at the top of the

16   hour?  Is that --

17           THE COURT:  Yes, five o' clock.

18           MR. BACON:  Thank you, Your Honor.

19           THE COURT:  You bet.

20           I see that it contains the resolution of the

21   Flextronics objection.

22           MR. BROMLEY:  I'm sorry, Your Honor.  It's the

23   Anixter objection.

24           THE COURT:  Anixter.  Forgive me.  Thank you, Mr.

25   Bromley.  And other than that, it looks to be, except for

1   dates, virtually the same as the form of the order that I

2   had previously reviewed, and I am pleased to sign that, and

3   we will get this right on the docket.

4           JUSTICE MAROWITZ:  And from this standpoint,

5   (indiscernible), do you have a draft order for my

6   consideration?

7           The record has been endorsed.  Oral reasons to be

8   delivered later today.  Motion granted.

9           MS. WILLIAMS:  Thank you, Your Honor.  The only

10  thing I would point out is the -- we did add in a paragraph

11  three to that order, just a change from the version that was

12  filed with the motion record to provide for revision of

13  personal information during the sales process.

14          JUSTICE MAROWITZ:  Any party wish to make

15  submissions with respect to the form of order?

16      (No audible response)

17          JUSTICE MAROWITZ:  With that, I would just like

18  to see counsel briefly in chambers so that we can get some

19  consistency on how the communications are going to go over

20  the next 45 minutes.

21          With that, Judge Gross, I'm ready to take a

22  recess if you are.

23          THE COURT:  Yes, sir.  Let us take a recess.

24  Thank you, counsel.

25          THE CLERK:  All rise.

1      (Recess taken at 4:22 p.m. to 5:17 p.m.)

2           THE CLERK:  Please rise.

3           THE COURT:  Please be seated, counsel.  Thank

4    you.

5           MR. BOTTER:  Your -- let me just -- Judge --

6           THE COURT:  Mr. Botter.

7           MR. BOTTER:  Yes.  Judge Gross, Justice Marowitz,

8    we -- I think it's fair to say that we've used the time

9    wisely, and we have an agreement in principle with respect

10   to the changes.

11          Mr. Bacon is trying to put that -- put pen to

12   paper on that right now.  I could go through quickly --

13          MR. BACON:  May I?

14          MR. BOTTER:  Yep, sure.

15          THE COURT:  Mr. Bacon.  Yes, sir.

16          MR. BACON:  Your Honor, Doug Bacon.  The good

17   news is I think we do have an agreement.  The devil is a

18   little bit in the details of the drafting.  I think the

19   drafting is a paragraph.

20          THE COURT:  Okay.

21          MR. BACON:  But it's a carefully written

22   paragraph to address specific permutations that really

23   trouble the Committee.  And I really don't want to shorthand

24   them.

25          THE COURT:  Okay.

1          MR. BACON:  And if we could have a little more

2    time to write, it's always a tricky thing to write a

3    paragraph in front of ten people, but we're doing it right

4    now.  It's worthwhile to finish this today, if we can.

5          THE COURT:  Oh, yes.

6          MR. BACON:  Wire services have picked this up and

7    --

8          THE COURT:  Yes.

9          MR. BACON:  -- misinterpreted what's going on, I

10   think, and we'd like to solve to it, but we want to do it

11   right, so we just do it once.

12         THE COURT:  Always, it's worthwhile getting it

13   accomplished while we're together, and -- yes.

14         JUSTICE MAROWITZ:  I agree.  How much time does

15   Mr. Bacon anticipate so that we've got some idea.

16         MR. BACON:  Well, I'm going to do it as fast as I

17   can do it, but I'm not going to do it because of your

18   training schedule.

19         THE COURT:  I think that Mr. --

20         MR. BACON:  I'm sorry.

21         THE COURT:  That's all right, Mr. Bacon.  I think

22   Justice Marowitz has asked roughly how much time you're

23   going to need.

24         MR. BOTTER:  Thirty minutes?

25         MR. BACON:  I honestly think 30 minutes, Judge.

THE COURT:  Are you available that late Mr. Justice Marowitz?

JUSTICE MAROWITZ:  Yes, I am, and counsel have indicated that they are also available.

THE COURT:  All right.  I'm available.

MR. BACON:  Okay.  We really appreciate it for both Courts, and we'll go get it done.

THE COURT:  And I appreciate the efforts of counsel to meet the Courts' -- the two Courts' concerns.

MR. BACON:  Thank you, Judge.

THE COURT:  All right.  Then we will stand in recess for 30 minutes.

JUSTICE MAROWITZ:  Judge Gross, if you're going to take a recess --

THE COURT:  All right.  Thank you, counsel.

JUSTICE MAROWITZ:  -- and you don't have to bother listening to what I have to say on the first motion, so --

THE COURT:  Oh, shall we use this time?  I'm sorry, Justice Marowitz.

JUSTICE MAROWITZ:  Oh, I'm going to deliver my -- I'm going to deliver my reasons, which are a mirror image of what you've already done, so I do not believe it's necessary for anybody in your court to stay to hear this.  They can get copies on written transcript.  Obviously, if they want

1

2    to stay tuned, they're more than welcome to do so.

3              THE COURT:  Absolutely.

4              JUSTICE MAROWITZ:  I take it you are in recess

     then.

5

6              THE COURT:  Well, we're back in session.  We're

     back in session, Justice Marowitz.

7

8              JUSTICE MAROWITZ:  It's -- Mr. Reporter, you're

     ready?

9

10             THE COURT REPORTER:  Yes, Your Honor.

11             JUSTICE MAROWITZ:  Okay.  This is in connection

     with the first motion today, being the motion relating to

12

13   the initial (indiscernible) for the GSM/GSM-R motion.

14             This hearing was conducted by way of

     videoconference, the parallel motion being heard in United

15

16   States Bankruptcy Court with His Honor Judge Gross presiding

     over the hearing in the U.S. Court.  This joint hearing was

17

18   conducted in accordance with the provisions of the cross-

     border protocol, which has previously been approved by both

19

20   the U.S. Court and by this Court.

21             Nortel brings this motion for the approval of the

     bidding procedures related to the GSM/GSM-R business as

22

23   described in the affidavit of Mr. Riedel, sworn October 6th,

     2009, and the 23rd report and the supplement to the 23rd

24

25   report of Ernst and Young, Inc. in its capacity of monitor.

               The motion is subject to the approval of the

bidding procedures in substantially the same form by the

U.S. Bankruptcy Court for the District of Delaware in the

Chapter 11 proceedings of the U.S. debtor, authorizing the

applicants to conduct bidding procedures in respect to

Nortel's GSM/GSM-R business and assets.

There was one objection filed in the U.S.

proceedings.  This issue has been resolved, and the

objection was withdrawn.  I am satisfied that no further

comment is required for this endorsement with respect to the

objection filed in the U.S. proceedings.

The transaction is described in the record.

Briefly, the global system for mobile communications, GSM,

is a widely deployed wireless technology standard for mobile

phone networks, and GSM for railways is a secure wireless

communications system for railway operators based on GSM

technology.

After a review was undertaken with respect to

Nortel's GSM/GSM-R business, Nortel concluded that a sale of

the GSM assets was the best opportunity to maximize the

value of the GSM assets and reduce the continuing costs

related to the support and development of this business.

Nortel believes it is in the best interest to divest the GSM

assets in a relatively expeditious manner and that the

process consummated by the bidding procedures will garner

the highest or best offer for the GSM assets.

Pursuant to the bidding procedures, NNL proposes to entertain irrevocable bids to convey all or substantially all of the GSM assets to a single bidder or joint bids for all or substantially all of the GSM assets for a team of two or more bidders bidding jointly.  Nortel does not intend to entertain bids that seek to exclude immaterial portions of the GSM assets in any significant jurisdiction.  Qualified bidders who desire to make a bid must deliver copies of their bids by November 5, 2009 pursuant to the bidding procedures.

Thereafter, if the Nortel received two or more qualified bids, there will be an auction conducted on November 9th, 2009.  The procedures are set forth in the monitor's 23rd report.

The monitor has provided extensive commentary on the bidding procedures and as  -- all as a form of purchase agreement in the 23rd report and the 23rd supplement.  The monitor has concluded that the sale process described in the report is designed to provide a commercially reasonable approach for Nortel to attempt to market and maximize value for its GSM business.  The monitor has been involved in the activities undertaken to date to market this business and will be involved in the sale process.  The monitor, accordingly, recommends that the motion for approval of the sale procedures be approved by this Court.

1

2          The bidding procedures are somewhat different

3     than the bidding procedures which had been previously

4     approved by this Court in Nortel in connection with the sale

5     of its CDMA business, as well as the -- help me here, Mr.

6     Tae, the second one was the --

7          MR. TAE:  Enterprise.

8          JUSTICE MAROWITZ:  -- the Enterprise business.

9     Likewise as the previous transactions, I'm satisfied that

10    this Court has the jurisdiction to authorize the approval of

11    the bidding procedures, and in connection with this, you can

12    see my reasons from Nortel on July 23, 2009.

13         Turning now to a consideration of whether it is

14    appropriate in this case to approve the sales process.  The

15    factors on a sales process under the CCAA in the absence of

16    a plan have previously been considered, and again, I refer

17    to the Nortel reasons of July 23, 2009 at paragraph 49.

18    Those factors are as follows:  One, is a sales transaction

19    warranted at this time.  Two, will the sale benefit the

20    whole economic community.  Three, do any of the debtor's

21    creditors have a bona fide reason to object to the sale of

22    the business.  Four, is there a better, viable alternative.

23         In this case, I am satisfied that the factors

24    have all been answered by Nortel in the positive.  The sales

25    transaction is warranted.  It will be a benefit.  There have

      been no objections raised in connection with the sale

1    transaction.  And I'm not aware of any better, viable

2    alternative at this time.

3            I also note that the bidding procedures will

4    ultimately require -- if it does result in a sale, it will

5    require further Court approval, and again, the Court will

6    expect that the applicants will make reference to the

7    (indiscernible) principals at that time.

8            And I'm satisfied, having considered all of the

9    factors referenced above, that the motion should be granted.

10   And accordingly, I approve the bidding procedures as set out

11   in Mr. Riedel's affidavit and the 23rd report and the

12   supplement thereto, which procedures have also been approved

13   by Judge Gross in the U.S. court.  This concludes my

14   endorsement in respect to the bidding procedures.  Thank

15   you.

16           Now, Judge Gross, will give counsel another half-

17   hour, shall we say, to see if they can resolve their

18   matters?  And we can stand down until 6:00 p.m.

19           THE COURT:  It may be less.

20           JUSTICE MAROWITZ:  It may be less?  If it's less,

21   I'm sure that arrangements can be made.

22           THE COURT:  If it's less, you'll notify us, and

23   we will try and coordinate coming back.

24           MR. BOTTER:  The hope would be in another 15

25   minutes rather than six o' clock.

1          THE COURT:  All right.  We will wait to hear from

2     you then.

3          MR. BOTTER:  Thank you.

4          THE COURT:  Thank you, counsel.

5          JUSTICE MAROWITZ:  Thank you.

6          THE COURT:  We'll stand in recess.

7          THE CLERK:  All rise.

8        (Recess taken from 5:28 p.m. to 5:53 p.m.)

9          THE CLERK:  All rise.

10         THE COURT:  Thank you.  Please be seated.

11    Justice Marowitz should be out momentarily.

12       (Pause)

13         THE CLERK:  All rise.

14         THE COURT:  Mr. Bromley.

15         MR. BROMLEY:  Judge Gross --

16         THE COURT:  Yes.

17         MR. BROMLEY:  -- Mr. Justice Marowitz, we're

18    pleased to be able to come back very quickly and report that

19    an agreement has been reached amongst the parties that would

20    allow the entry of the order today, assuming that both you

21    and Justice Marowitz are satisfied with the proposal.  I am

22    going to ask Mr. Bacon to read into the record what we have

23    agreed to, but if I can just spend a moment beforehand to

24    explain one element of it because I think it is relevant in

25    light of your earlier ruling.

1    THE COURT:  Yes, sir.

2    MR. BROMLEY:  As Your Honor mentioned, you found

3 fault with the breakup fee as it relates to the O'Brien

4 standard in the Third Circuit.  In particular, with respect

5 to the concern that the breakup fee and expense

6 reimbursement would not be paid -- would be paid in certain

7 circumstances in the event that a -- an alternative

8 transaction was not consummated.

9    THE COURT:  Right.

10    MR. BROMLEY:  And I think I'd like to echo a

11 point Mr. Bacon made earlier, which is that it's a very long

12 and complicated agreement.  It is -- and as a result of

13 that, there are portions of the agreement that relate to

14 termination payments that are not, I think, within the

15 O'Brien standard.  And so what we were trying to focus on

16 was dividing the world into what was an O'Brien issue and

17 what was not an O'Brien issue.  And so we don't think that

18 there are O'Brien issues with respect to damages that would

19 have to be paid in the event of a failure to perform by the

20 debtors once this agreement is approved by the Court, for

21 instance.  In that case, we believe we have a post-petition

22 administrative expense obligation and we have to perform,

23 and if we don't, it's reasonable to have damages that would

24 be payable in those circumstances.

25    So what we tried to do is to narrow the focus in

an attempt to resolve the issue, and I think we've

successfully done that.  So the majority of the provisions -

- indeed, everything but one that relates to, quote,

termination payments, in this structure -- would remain

exactly the same.

THE COURT:  Okay.

MR. BROMLEY:  But what we have been able to do is

to reach an agreement with Ciena that would make it clear

that in the event that there is an alterative transaction

that is chosen at the auction and approved by both Courts,

and -- then in that circumstance, the breakup fee would be

paid at the time of consummation.  So we think that we

solved the O'Brien issue.  The rest of the provisions that

relate to payments of -- even though the measurement is the

same, it's really more of a termination-type issue rather

than a breakup fee issue.

THE COURT:  I understand.  Yes.

MR. BROMLEY:  And so --

THE COURT:  -- there is a difference.

MR. BROMLEY:  So I do think there's a difference,

and I think pointing out that difference was helpful in

trying to accommodate the legitimate concerns of both the

Committee and Ciena.  So with that as a precede to explain

how we think it fits within the concern you had under

O'Brien, I'd turn over the podium to Mr. Bacon.

1           THE COURT:  Thank you.  Thank you, Mr. Bromley.

2           Mr. Bacon.

3           MR. BACON:  Thank you, Judge.  Doug Bacon for

4  Ciena.

5           We drafted by Committee back there, and I'm going

6  to try to decipher not only my partner's handwriting, but my

7  own handwriting.  And I'm not sure which is more difficult,

8  but we -- this exact language will be -- we would propose to

9  graft into the order in a couple of different places, and

10  we're working on that and we'll get that done this evening.

11  And it's as -- there are five provisions as follows, Your

12  Honor.

13           Number one, Section 10.2(a) of the agreement will

14  be modified to provide that notwithstanding the language of

15  such revision, in the event that the agreement is terminated

16  pursuant to Section 10.1(b)(V), i.e. upon entry of an order

17  of an order by the bankruptcy court authorizing an

18  alternative transaction, the breakup fee shall be payable

19  upon the closing of an alternative transaction -- I'm sorry,

20  shall only be payable upon the closing of an alternative

21  transaction within 12 months after termination.  No other

22  modifications will be made to the breakup fee and expense

23  reimbursement provisions except to make consistent revisions

24  to the breakup fee provisions in the EMEA asset sale

25  agreement.

1      That's number one, and that's the big one, Your

2  Honor, I think --

3           THE COURT:  Yes.

4           MR. BACON:  -- that Mr. Bromley was talking

5  about.

6           Number two, if Ciena is determined to be the

7  successful bidder at the auction, then Ciena shall provide a

8  five-percent -- a deposit based on five percent of its bid

9  within two business days after the auction pursuant to a

10 mutually-acceptable escrow agreement.

11          Number three, Ciena's exercise of any consent

12 rights with respect to modifications to the bid procedures

13 shall be in the exercise of Ciena's reasonable discretion

14 (which, if necessary, shall be determined by the Courts).

15          THE COURT:  All right.

16          MR. BACON:  Number four, qualified bids shall be

17 provided to Ciena and to other qualified bidders not later

18 than 48 hours prior to commencement of the auction.

19          Number five, the nonrefundable requirement of any

20 bidder's deposit shall be deemed eliminated except as may

21 otherwise be determined at the auction.

22          And I believe that's it.

23          THE COURT:  Mr. Botter, is that acceptable to the

24 Committee?

25          MR. BOTTER:  Your Honor, with those changes, it

1
2   is acceptable to the Committee and we would pray for Your

    Honor to enter the order as modified on the record.
3
4            THE COURT:  All right.  I am prepared to do so.

    I appreciate counsel's efforts and the accommodations and
5
    the compromise among the parties.  I think that clearly,
6
    this meets the requirements of the debtor's best interest
7
    and that the procedures are designed to achieve an active
8
    auction and the highest and best bid, and I am pleased to
9
    grant the motion with those modifications.
10
             MR. BACON:  Thank you, Your Honor.  Can we spend
11
    a second on logistics?
12
             THE COURT:  Yes.
13
             MR. BACON:  Because I think it will really
14
    behoove us if we can at least submit an order tonight, even
15
    if it's --
16
             JUSTICE MAROWITZ:  Mr. Bacon, just before you get
17
    to the logistics, Mr. Tae has indicated --
18
             MR. BACON:  Oh, I --
19
             JUSTICE MAROWITZ:  -- he wishes to bring
20
    something to my attention.
21
             THE COURT:  Yes.
22
             MR. TAE:  Thank you, Your Honor.  I think we just
23
    wanted to say this proposal, I will compromise, was
24
    discussed both with us, with the monitor, and the monitor's
25
    counsel, and we are all on board with it.  I just wanted to

1   confirm it to the Canadian parties.

2            JUSTICE MAROWITZ:  Thank you, Mr. Tae.  Back to

3   Mr. Bacon, I think.

4            MR. BACON:  I'm sorry, Your Honor.  I didn't mean

5   to speak over you.  I just want to make sure we're clear on

6   the logistics before we lose the Court because it would

7   behoove us to try to get this submitted tonight, and I'm not

8   sure who can stick around and who can't.  Well --

9            THE COURT:  Mr. Bromley?

10           MR. BROMLEY:  Yeah, I think there might be two

11   ways to deal with this, and maybe we should consider doing

12   both.  One would be --

13           THE COURT:  To order the record.

14           MR. BROMLEY:  So order the record, right.  I

15   think that the language you've read in is acceptable to

16   everybody as stated.  And so we would treat the order as

17   entered from a contractual perspective immediately, I think

18   would be the way we would view it, upon the -- this Court's

19   so entry -- so ordering of the record.  And at the same

20   time, we will then take that same language and type it up

21   and add it to the written order.  Is that acceptable, Mr.

22   Bacon?

23           MR. BACON:  Yeah, that'd be fine.

24           MR. BOTTER:  It's fine with us, Your Honor.

25           THE COURT:  Now, to the extent it is critical

1  that I actually sign the order this evening, I am prepared
2  to come back and do that if that would be helpful.  It
3  wouldn't be docketed until the morning.
4          MR. BACON:  Tomorrow's fine, Your Honor.
5          THE COURT:  With the so ordered of the record --
6          MR. BROMLEY:  And I think we --
7          MR. BACON:  And thank you for offering to do
8  that.
9          THE COURT:  Sure.  I understand the sensitivity
10 and the importance of making our record clear and -- but I
11 do so order those changes and approve the order as revised.
12         MR. BROMLEY:  Okay.  I think, Your Honor, that is
13 important.  There --
14         JUSTICE MAROWITZ:  Okay.  Based on that, there's
15 -- sorry, there has to be some sort of disposition here,
16 which I'm prepared to deal with now.
17         THE COURT:  Yes.  Yes.
18         JUSTICE MAROWITZ:  Okay.  And we'll probably take
19 the standard five minutes, and we'll try to get through it
20 as -- in as less -- little pain as possible.  I'd better
21 take a glass of water first.
22         Well, by now, I think counsel can anticipate the
23 first two paragraphs.
24         Now, this hearing was conducted by way of
25 videoconference with a parallel motion being heard in the

United States Bankruptcy Court with His Honor Judge Gross presiding over the hearing in the U.S. Court.  This joint hearing was conducted in accordance with the provisions of the cross-border protocol, which has previously been approved by both the U.S. Court and by this Court.

Nortel brings this motion for approval of the bidding procedures described in the affidavit of Mr. Riedel, sworn October 9th, 2009, and the 24th report of the monitor. It is subject to the approval of the bidding procedures by the U.S. Bankruptcy Court for the District of Delaware in the Chapter 11 proceedings commenced by the applicant.

Nortel also seeks approval of the asset sale agreement dated as of October 7th, 2009 (indiscernible) sale agreement between Nortel and its -- certain of its affiliates as vendors and Ciena Corporation as purchaser. This agreement is in the form attached to the appendix to the 24th report of the monitor.

And as well, Nortel seeks approval and acceptance of the sale agreement for the purposes of conducting the stalking horse bidding process in accordance with the bidding procedures, including without limitation of the breakup fee and the expense reimbursement, as both are defined in the sale agreement.

Nortel also seeks approval of the letter of intent dated October 1, 2009, defined as the Montreal LOI as

the -- set out in the motion record.

It also seeks a sealing order with respect to the confidential appendices to the 24th report, which contains schedules and exhibits to the sale agreement, as well as an unredacted copy of the Montreal LOI. The sealing order would be pending further order of the Court.

The bidding procedures and sale agreement are described in the affidavit of Mr. Riedel and in the 24th report of the monitor. Three objections were filed in the U.S. proceedings, and one of the objections from the Unsecured Creditors' Committee was also filed in the Canadian proceedings. These objections have been resolved either through withdrawal or, in certain cases, through modifications to the bidding procedures. The modifications to the bidding procedures, the Court has been advised, are acceptable to both Nortel and to Ciena.

The transaction described in the sale agreement is very complex. Nortel's Metro Ethernet Networks business, described as the MEN business, includes optical networking, carrier Ethernet switching, and multi-service switching products delivering carrier-grade Ethernet transport capabilities for higher performance and lower cost for emerging video-intensive applications.

Prior to the CCAA proceedings, it was clear that Nortel indicated that it would consider strategic

divestiture as a way to preserve liquidity and consolidate its position with respect to its remaining businesses. Nortel began the process of marketing the assets for sale prior to the CCAA proceedings.  After commencement of the proceedings under the CCAA, the applicants reinitiated their efforts to divest the MEN business.

After extensive negotiations, the parties have now agreed on the terms of a sale agreement, as well as the terms of an EMEA sale agreement for the transfer of assets by certain of the EMEA entities, which agreements are subject to higher, better offers.

The terms and conditions of the sale agreement with agreements to be entered into in connection with the closing of the transactions contemplated in the sale agreement, are described in further detail in the Riedel affidavit and in the 24th report.

It is anticipated that Nortel, with the assistance of the monitor, will conduct an expedited sale process and follow the bidding procedures with a view to the ultimate conduct of an auction among qualified bidders.  An agreed-upon set of bidding procedures has been developed, which provide for a process through which the interested party need become a qualified bidder.  Bids from qualified bidders must be submitted no later than 4:00 p.m. on November 9th, 2009.  There's an auction scheduled to take

place in New York on November 13, 2009.

The proposed auction sale for the -- the proposed auction sale process to amend business, according to Nortel, is the best way to preserve the business as a going concern and to maximize the value and preserve jobs for the applicant's employees.  In addition, the applicants currently lease space in Montreal.

Pursuant to the terms of these leases, the two floors in the building are currently occupied.  It is anticipated that not all the space will be required, and in order to facilitate the transaction, Nortel and the landlord have entered into and have agreed upon the terms for modifications to the lease on a going-forward basis, and these arrangements are encompassed in the Montreal LOI.

The business operates globally in approximately 44 countries.  Fiscal revenues in 2008 were 1.3 billion, which represented approximately 13 percent of Nortel's 2008 revenue.  With respect to the Canadian aspect, the fiscal 2008 revenues in Canada were approximately $213 million, which represents approximately 31 percent of Nortel's Canadian -- 2008 Canadian revenue.

The basic price set out in the stock price agreement is U.S. $390 million plus common shares of Ciena, which have a private --

THE COURT:  Just when it was getting good.

1   That's just me.  I hate to do that.  Can you call?

2           Well, Mr. Bromley, apropos to baseball playoffs,

3   you may tell whoever was concerned that it ain't over until

4   it's over, as Yogi Berra would have said.  So the deal was

5   successfully -- at least the bidding procedures have been

6   successfully achieved.

7           THE CLERK:  Judge, can I go off the record?

8           THE COURT:  Yes.

9       (Recess taken at 6:12 p.m. to 6:19 p.m.)

10          THE COURT:  -- Justice Marowitz, and I would

11  suggest that we have concluded the hearing successfully.

12          MR. BROMLEY:  I do have a note from our Canadian

13  co-counsel.

14          THE COURT:  Oh.

15          MR. BROMLEY:  I sent an email saying, we've lost

16  our bridge, all approve there, and the answer back is, yup.

17          THE COURT:  Yup.  I like that.  All right.

18          MR. BROMLEY:  That -- and that is, you know, an

19  eloquent way of saying I think they're done.

20          THE COURT:  Excellent.  All right.  Well, I have

21  a call into Justice Marowitz.  Hopefully, he'll get it.  And

22  -- but in the meantime, the motions have been granted.  I

23  appreciate counsel's efforts.  And we will stand in recess

24  then.

25          MR. BOTTER:  Judge, thank you very much.

1

        THE COURT:  Thank you all.

2

        MR. BROMLEY:  Thank you, Your Honor.  And I'd

3

also --

4

        THE COURT:  And good evening.

5

        MR. BROMLEY:  I'd also like to note Ms. Kim will

6

be doing other things for a few months, so this will be the

7

last time with us for a while.

8

        THE COURT:  Ms. Kim, congratulations and good

9

luck to you.

10

        MS. KIM:  Thank you very much, Your Honor.

11

        THE COURT:  And I have feeling the case will

12

still be going on.  In fact, your child may be handling this

13

case.  Who knows?

14

        MS. KIM:  I fully expect that all of our friends

15

here will be moving this case along, and I will definitely

16

see you when I come back.

17

        THE COURT:  Oh, I have a feeling you'll be

18

disappointed if you think that.

19

        THE COURT:  Good evening, everyone.

20

        MR. BROMLEY:  Thank you, Your Honor.

21

        THE COURT:  Thank you.

22

        UNIDENTIFIED SPEAKER:  Thank you, Judge.

23

        THE COURT:  Congratulations.

24

        UNIDENTIFIED SPEAKER:  Thank you, Judge.

25

[Whereupon at 6:21 p.m., the hearing was adjourned.]

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____          23 October 2009

Alicia Jarrett                                    Date

Transcriber

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **10.1(b)(v)**(1) 93:16 | | **advantages**(1) 53:21 | | **also**(44) 5:13 7:1 8:5 8:16 8:25 9:20 | | **and**(301) 37:7 37:9 37:10 37:12 37:14 | |
| **143-page**(1) 53:24 | | **adversarial**(1) 45:7 | | 12:14 13:10 15:18 16:25 18:11 21:15 | | 37:14 37:20 37:23 37:25 38:1 38:3 38:4 | |
| **abbott**(8) 1:24 3:5 3:6 3:7 3:11 3:12 3:17 | | **advised**(2) 62:13 99:15 | | 22:22 24:22 25:17 26:2 26:8 26:25 30:17 | | 38:6 38:6 38:9 38:13 38:13 38:15 38:18 | |
| 3:20 | | **advisor**(3) 34:12 35:11 36:4 | | 31:15 37:19 42:21 43:9 50:3 55:10 63:8 | | 38:19 38:21 39:11 39:12 39:14 39:16 | |
| | | **advisors**(4) 14:7 14:20 15:16 37:12 | | 64:6 65:20 66:15 67:1 68:9 75:22 77:24 | | 39:20 39:22 39:23 40:3 40:4 40:6 40:6 | |
| **ability**(3) 32:6 46:22 51:10 | | **affairs**(1) 18:21 | | 78:17 79:5 84:4 89:3 89:12 98:12 98:24 | | 40:9 40:11 40:23 41:5 41:12 41:14 41:22 | |
| **able**(12) 7:3 9:4 15:1 21:24 23:24 41:19 | | **affected**(1) 51:10 | | 99:2 99:11 103:3 103:5 | | 41:22 41:24 41:24 41:25 42:1 42:2 42:4 | |
| 41:21 41:23 42:5 60:9 90:18 92:7 | | **affidavit**(6) 19:22 85:22 89:11 98:7 99:8 | | | | 42:5 42:13 42:16 42:21 42:25 43:1 43:4 | |
| | | 100:16 | | **alternative**(1) 92:9 | | 43:7 43:8 43:9 43:16 43:17 43:22 44:3 | |
| **about**(14) 4:20 12:24 36:19 37:2 41:13 | | | | **alternate**(5) 49:14 50:12 50:18 52:5 61:13 | | 44:3 44:5 44:6 44:6 44:18 44:20 44:21 | |
| 49:8 50:13 59:23 64:12 67:20 75:2 79:19 | | **affiliate**(1) 6:19 | | **alternative**(12) 18:19 52:9 60:22 61:1 65:1 | | 44:21 44:25 45:2 45:7 45:11 45:12 45:14 | |
| 79:22 94:5 | | **affiliates**(2) 29:21 98:15 | | 68:23 88:21 89:2 91:7 93:18 93:19 93:20 | | 45:17 45:18 45:19 46:4 46:10 46:12 | |
| | | **after**(17) 7:6 8:7 11:23 22:11 30:11 30:11 | | | | 46:13 47:6 47:7 47:14 47:17 47:20 47:20 | |
| **above**(1) 89:9 | | 35:17 36:11 56:9 69:13 72:11 77:11 86:17 | | **although**(3) 42:10 68:17 73:1 | | 47:20 47:22 47:24 48:1 48:2 48:2 48:14 | |
| **aboveentitled** (1) 104:5 | | 93:21 94:9 100:4 100:7 | | **altogether**(1) 4:14 | | 48:15 48:18 48:20 48:23 48:24 48:25 | |
| **absence**(2) 18:7 88:14 | | | | **always**(2) 83:2 83:12 | | 48:25 49:5 49:15 49:16 49:17 49:23 50:1 | |
| **absolutely**(7) 12:19 24:14 45:23 55:19 | | **afternoon**(22) 3:3 3:5 3:6 3:8 3:9 3:10 | | **amazing**(1) 51:8 | | 50:1 50:3 50:10 50:13 50:15 50:20 50:24 | |
| 77:8 77:14 85:2 | | 4:4 4:6 4:7 11:6 17:4 17:5 24:6 24:7 24:8 | | **amend**(1) 101:3 | | 50:25 51:5 51:6 51:7 51:9 51:11 51:11 | |
| | | 40:17 43:14 43:15 47:12 53:3 76:16 77:17 | | **amended**(1) 6:9 | | 51:13 51:21 51:21 51:23 52:3 52:9 52:11 | |
| **accept**(2) 16:20 76:8 | | | | **amending**(1) 59:14 | | 52:16 52:17 52:18 52:18 52:25 53:4 53:5 | |
| **acceptable**(16) 11:5 21:6 39:24 43:9 43:11 | | **again**(16) 4:8 12:13 18:1 21:18 22:19 | | **amendments**(1) 70:13 | | 53:8 53:22 53:24 53:25 54:1 54:1 54:4 | |
| 43:18 70:14 70:21 75:4 75:12 78:8 94:23 | | 40:18 47:12 50:2 52:3 55:11 57:14 66:23 | | **america**(5) 5:14 6:13 22:16 53:14 | | 54:5 54:7 54:8 54:12 54:13 54:16 54:20 | |
| 95:1 96:15 96:21 99:16 | | 68:14 70:15 88:15 89:5 | | **american**(3) 29:5 29:24 33:7 | | 54:21 54:24 54:25 55:1 55:10 55:11 55:15 | |
| | | | | **among**(2) 95:5 100:20 | | 55:17 55:18 55:19 56:2 56:5 56:6 56:7 | |
| **acceptance**(1) 98:18 | | **agenda**(1) 3:14 | | **amongst**(1) 90:19 | | 56:9 56:10 56:10 56:12 56:12 56:13 56:16 | |
| **access**(15) 6:25 9:2 13:9 13:16 14:15 16:5 | | **ago**(1) 55:25 | | **amount**(4) 6:20 7:6 32:25 63:24 | | 56:18 56:18 56:20 56:24 57:1 57:2 57:6 | |
| 23:6 28:6 28:20 31:7 31:14 32:2 36:8 | | **agree**(8) 10:4 44:23 48:3 54:18 73:3 75:5 | | **page**(2) 77:19 77:20 | | 57:6 57:10 57:22 57:25 58:1 58:4 | |
| 38:3 43:22 | | 76:2 83:14 | | **analyses**(1) 35:18 | | 58:6 58:7 58:7 58:19 58:24 58:25 59:6 | |
| | | | | **analysis**(1) 35:22 | | 59:12 59:13 59:13 59:15 60:2 60:2 60:6 | |
| **accessible**(1) 65:6 | | **agreeable**(1) 42:16 | | **ancillary**(1) 30:18 | | 60:7 60:10 60:15 60:19 60:23 61:3 61:6 | |
| **accommodate**(3) 10:8 77:13 92:22 | | **agreed**(9) 9:18 10:2 10:12 41:20 41:24 | | **and**(301) 2:42 3:3 3:8 3:21 3:24 4:3 4:4 | | 61:13 61:21 62:1 62:3 62:7 62:9 62:9 | |
| **accommodations**(1) 95:4 | | 53:24 90:23 100:8 101:12 | | 4:8 4:11 4:13 4:15 4:17 4:18 4:21 4:23 | | 62:10 62:12 62:18 62:22 63:1 63:3 63:6 | |
| **accompanied**(1) 30:18 | | | | 4:23 5:6 5:8 5:10 5:11 5:15 5:15 5:20 | | 63:12 63:21 64:4 64:6 64:6 64:7 64:7 | |
| **accomplished**(1) 83:13 | | **agreed-upon**(1) 100:21 | | 5:20 5:22 5:24 6:3 6:5 6:6 6:14 6:14 6:18 | | 64:8 64:9 64:13 64:15 64:19 64:21 64:24 | |
| **accordance**(4) 69:21 85:17 98:3 98:20 | | **agreement**(72) 4:17 8:21 8:25 16:3 17:11 | | 6:21 6:22 6:24 6:25 7:5 7:6 7:8 7:11 | | 65:2 65:3 65:6 65:7 65:19 65:22 66:1 | |
| **accorded**(1) 52:19 | | 17:12 29:3 29:4 29:6 29:24 30:2 30:3 | | 7:13 7:14 7:15 7:19 7:21 8:1 8:2 8:3 8:4 | | 66:2 66:7 66:10 66:12 66:15 66:20 66:23 | |
| **according**(1) 101:3 | | 30:18 30:20 30:21 30:23 30:24 30:24 | | 8:5 8:5 8:12 8:14 8:15 8:16 8:20 8:24 | | 66:25 67:1 67:22 68:9 68:13 68:14 68:18 | |
| **accordingly**(5) 75:10 87:24 89:10 | | 31:12 31:16 31:16 32:22 33:4 33:12 37:5 | | 8:24 8:25 9:1 9:3 9:8 9:16 9:17 9:18 10:1 | | 68:20 68:25 69:8 69:15 69:21 69:23 70:2 | |
| **accurate**(1) 43:17 | | 37:6 38:17 46:6 53:14 57:22 57:22 60:16 | | 10:1 10:1 10:3 10:6 10:11 10:12 10:15 | | 70:3 70:5 70:12 70:14 70:17 70:22 70:23 | |
| **achieve**(2) 80:6 95:7 | | 62:2 63:8 63:23 64:3 64:16 66:10 68:2 | | 10:16 10:20 11:4 11:7 11:11 11:14 11:15 | | 71:3 71:7 71:9 71:12 71:17 71:21 71:23 | |
| **achieved**(2) 38:1 102:6 | | 70:5 70:13 70:20 70:20 70:22 71:19 72:10 | | 11:18 11:19 11:23 12:3 12:5 12:16 12:17 | | 72:4 72:5 72:5 72:15 73:4 73:16 73:20 | |
| **acknowledge**(1) 10:20 | | 75:13 82:9 82:17 87:17 90:19 91:12 91:13 | | 12:22 12:22 13:1 13:3 13:6 13:9 13:9 | | 74:8 74:12 74:16 74:17 74:17 74:20 74:22 | |
| **acquire**(2) 28:22 38:6 | | 91:20 92:8 93:13 93:15 93:25 94:10 98:3 | | 13:10 13:10 13:15 13:15 13:16 13:18 | | 74:23 74:23 74:25 75:1 75:2 75:4 75:10 | |
| **acquiring**(2) 14:4 15:17 | | 98:14 98:16 98:19 98:23 99:4 99:7 99:17 | | 13:18 13:19 13:22 13:24 13:25 14:4 14:7 | | 75:14 75:16 75:18 76:2 | |
| **acquisitions**(2) 25:4 35:12 | | 100:8 100:9 100:12 100:15 101:23 | | 14:9 14:10 14:14 14:19 14:20 14:22 14:24 | | | |
| **across**(2) 27:15 53:18 | | | | 15:2 15:2 15:5 15:11 15:15 15:18 15:23 | | **and**(144) 76:10 76:21 76:24 76:25 77:2 | |
| **act**(3) 46:9 61:7 61:12 | | **agreements**(24) 9:2 9:3 14:12 15:1 16:4 | | 15:23 16:5 16:6 16:7 16:8 16:10 16:14 | | 77:17 77:23 77:23 78:1 78:3 78:6 78:11 | |
| **acting**(1) 66:8 | | 28:5 28:18 29:8 29:10 29:12 29:20 29:22 | | 16:16 16:25 17:1 17:5 17:9 17:10 17:13 | | 78:16 79:4 79:20 80:5 80:5 80:6 80:7 | |
| **action**(1) 36:13 | | 29:23 30:1 30:5 30:19 30:25 31:1 31:3 | | 17:16 17:25 18:2 18:2 18:5 18:8 18:8 | | 80:10 80:12 80:25 81:2 81:2 81:4 82:9 | |
| **active**(5) 8:14 23:20 53:12 80:6 95:7 | | 31:5 32:5 36:7 100:10 100:13 | | 18:11 18:13 18:15 18:18 18:21 18:21 | | 82:23 83:1 83:6 83:10 83:13 84:3 84:7 | |
| **actively**(3) 7:20 7:21 20:12 | | | | 18:24 18:25 19:1 19:7 19:10 19:11 19:13 | | 84:8 84:16 85:19 85:23 85:23 85:24 86:5 | |
| **activities**(2) 20:10 87:22 | | **ahead**(1) 44:23 | | 19:15 19:18 19:23 20:1 20:12 20:14 20:17 | | 86:7 86:14 86:20 86:21 86:23 87:16 87:17 | |
| **actually**(9) 5:20 8:3 9:12 19:5 46:5 46:11 | | **ain't**(1) 102:3 | | 21:12 21:19 21:22 22:7 22:8 22:10 22:11 | | 87:20 87:22 88:10 88:15 89:1 89:5 89:8 | |
| 72:13 72:15 97:1 | | **akin**(3) 2:20 24:8 47:13 | | 22:16 22:16 22:17 22:19 22:20 22:24 23:1 | | 89:10 89:11 89:11 89:18 89:22 89:23 | |
| | | **alcatel-lucent**(1) 27:4 | | 23:7 23:12 23:21 23:23 23:25 24:9 24:14 | | 90:18 90:21 91:5 91:10 91:12 91:12 91:15 | |
| **adaptive**(1) 26:3 | | **alicia**(1) 104:9 | | 24:22 24:22 24:24 24:24 25:3 25:5 25:5 | | 91:16 91:17 91:22 91:23 92:1 92:10 92:11 | |
| **add**(8) 11:14 17:2 20:4 20:8 58:15 78:17 | | **all**(78) 8:2 9:1 10:21 11:13 14:14 15:15 | | 25:7 25:8 25:10 25:11 25:22 25:15 25:16 | | 92:18 92:21 92:23 93:5 93:7 93:9 93:10 | |
| 81:10 96:21 | | 16:17 16:20 19:15 24:16 27:15 28:20 29:4 | | 26:8 26:10 26:14 26:14 26:18 26:19 26:24 | | 93:11 93:22 94:1 94:17 94:22 95:1 95:4 | |
| | | 29:7 32:13 32:21 34:2 35:10 37:2 39:2 | | 27:5 27:8 27:11 27:14 27:15 27:19 27:21 | | 95:4 95:7 95:8 95:9 95:18 95:24 95:25 | |
| **added**(1) 12:1 | | 40:15 41:2 43:19 45:7 45:20 46:4 46:16 | | 27:25 28:2 28:4 28:5 28:12 28:16 28:18 | | 96:7 96:8 96:11 96:16 96:19 96:20 96:21 | |
| **addition**(7) 7:22 14:16 15:21 17:8 33:13 | | 48:1 48:6 48:10 49:13 49:21 49:23 50:6 | | 28:21 28:23 28:24 29:5 29:9 29:11 29:13 | | 97:2 97:6 97:7 97:10 97:10 97:11 97:18 | |
| 38:2 101:6 | | 50:11 50:22 58:10 61:20 62:12 65:17 | | 29:15 29:15 29:17 29:20 29:21 29:22 | | 97:19 98:5 98:8 98:14 98:15 98:18 98:18 | |
| | | 65:20 67:25 68:7 69:1 70:14 70:22 73:22 | | 29:23 29:24 29:25 30:1 30:7 30:7 30:11 | | 98:22 99:4 99:7 99:8 99:10 99:16 99:20 | |
| **additional**(5) 28:16 33:5 40:23 76:11 79:17 | | 74:7 74:14 78:18 79:9 79:24 80:3 81:25 | | 30:13 31:2 31:10 31:11 31:12 31:21 31:21 | | 99:22 100:1 100:12 100:16 100:19 100:25 | |
| **additionally**(3) 27:17 31:11 50:6 | | 82:11 84:5 84:11 84:15 87:22 87:3 87:4 | | 31:23 31:25 32:1 32:2 32:5 32:6 32:8 | | 101:5 101:10 101:11 101:12 101:13 102:10 | |
| **address**(4) 27:6 45:22 70:1 82:22 | | 87:4 87:16 88:23 89:8 90:1 90:7 90:9 | | 32:9 32:10 32:10 32:12 32:17 32:19 32:23 | | 102:16 102:18 102:21 102:23 103:2 103:4 | |
| **addressed**(3) 10:9 52:4 52:16 | | 90:13 94:15 95:3 95:25 101:10 102:16 | | 32:25 33:3 33:4 33:5 33:5 33:7 33:13 | | 103:8 103:11 103:15 | |
| **adequate**(4) 41:15 41:23 43:2 43:4 | | 102:17 102:20 103:1 103:14 | | 33:18 33:20 34:13 34:17 34:9 34:20 | | | |
| **adhere**(1) 54:11 | | | | 34:25 34:25 35:7 35:10 35:12 35:15 35:19 | | **and/or**(3) 37:7 51:22 60:20 | |
| **adjourned**(1) 103:25 | | **allow**(3) 19:11 31:17 90:20 | | 35:21 36:1 36:3 36:4 36:6 36:7 36:8 | | **anixter**(19) 2:31 9:14 10:10 10:12 10:13 | |
| **adjustments**(1) 29:15 | | **allowed**(1) 69:17 | | 36:12 36:13 36:16 36:17 36:17 36:20 | | 10:21 11:1 11:7 39:20 40:1 40:3 40:3 | |
| **administered**(1) 1:5 | | **allowing**(2) 11:7 26:5 | | 36:21 37:5 | | 40:9 40:11 40:13 40:18 40:21 80:23 80:24 | |
| **administrative**(1) 91:22 | | **allows**(2) 22:23 22:25 | | | | | |
| **administrator**(1) 36:17 | | **almost**(1) 8:10 | | | | **anixter's**(3) 10:16 11:3 39:20 | |
| **administrators**(3) 7:9 16:11 31:11 | | **along**(2) 68:8 103:15 | | | | **announce**(1) 42:4 | |
| **admit**(1) 39:3 | | **already**(4) 4:22 23:22 38:12 84:23 | | | | **announced**(2) 22:6 38:14 | |
| **admitted**(1) 34:6 | | | | | | **another**(5) 33:15 49:20 75:24 89:16 89:24 | |
| **adv**(1) 27:7 | | | | | | **answer**(7) 18:8 31:25 44:21 56:13 58:22 | |
| **advanced**(1) 49:21 | | | | | | 71:15 102:16 | |
| | | | | | | **answered**(2) 71:16 88:23 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **anticipate(4)** 23:20 76:20 83:15 97:22 | | **aren't(1)** 76:25 | | **back(20)** 4:7 46:4 46:22 50:16 50:17 55:12 64:19 73:2 74:8 77:6 80:15 85:5 85:6 89:23 90:18 93:5 96:2 97:2 102:16 103:16 | | **believe(28)** 7:15 11:3 17:10 19:10 19:18 22:11 23:14 37:16 39:11 42:6 44:8 44:15 45:1 45:11 46:3 48:16 49:15 52:8 52:15 58:5 64:12 64:16 65:7 71:8 79:16 84:23 91:21 94:22 | |
| **anticipated(2)** 100:17 101:10 | | **argue(2)** 45:15 76:21 | | **backed(1)** 55:17 | | | |
| **anticipates(1)** 23:13 | | **arguing(1)** 77:1 | | **background(3)** 12:17 12:22 24:3 | | **believes(6)** 13:24 48:9 48:12 50:15 52:10 86:22 | |
| **any(44)** 7:17 8:6 9:8 10:14 10:15 10:17 10:23 11:18 12:8 14:5 16:25 16:25 17:3 18:17 19:25 20:19 20:22 26:5 26:11 31:11 33:21 37:20 40:11 40:22 40:22 41:19 41:23 43:2 43:5 48:2 56:23 65:7 65:11 67:2 67:7 72:21 73:11 75:16 81:14 87:7 88:19 89:1 94:11 94:19 | | **argument(2)** 65:7 71:18 | | **backup(6)** 49:13 49:16 49:19 61:13 75:23 76:2 | | **beneficial(1)** 8:22 | |
| | | **arguments(2)** 43:4 43:6 | | **bacon(66)** 2:12 52:24 52:24 53:1 53:2 53:8 53:17 56:2 58:11 58:12 59:15 59:18 59:19 70:3 76:13 76:14 76:14 76:19 77:6 77:9 77:13 77:15 77:18 77:22 77:25 78:6 78:9 78:20 80:12 80:14 80:18 82:11 82:13 82:15 82:16 82:16 82:21 83:1 83:6 83:9 83:15 83:16 83:20 83:21 83:25 84:6 84:10 90:22 91:11 92:25 93:2 93:3 93:3 94:4 94:16 95:10 95:13 95:16 95:18 96:3 96:4 96:22 96:23 97:4 97:7 | | **benefit(11)** 18:16 32:15 33:10 38:13 52:3 52:8 54:6 58:6 75:8 88:18 88:24 | |
| **anybody(2)** 73:10 84:24 | | **arise(2)** 8:6 48:10 | | | | | |
| **anyone(9)** 12:7 16:17 24:5 33:21 33:22 34:3 38:24 38:24 52:23 | | **arms-length(2)** 33:17 37:17 | | | | **benefits(1)** 56:14 | |
| | | **arose(2)** 37:15 48:4 | | | | **berra(1)** 102:4 | |
| **anything(10)** 17:1 20:4 37:17 44:23 46:6 55:13 58:13 60:10 73:15 73:18 | | **around(5)** 5:23 6:13 14:1 22:14 22:21 33:5 40:4 78:11 96:8 | | | | **best(17)** 13:24 16:16 19:12 27:23 30:13 36:13 38:1 44:19 54:10 57:23 60:5 86:19 86:22 86:25 95:6 95:8 101:4 | |
| **appear(1)** 11:8 | | | | **bank(2)** 34:18 34:19 | | | |
| **appearances(2)** 2:28 2:39 | | **arrangement(1)** 75:4 | | **banker(1)** 34:15 | | **bet(1)** 83:19 | |
| **appears(1)** 72:7 | | **arrangements(2)** 89:21 101:14 | | **bankers(1)** 8:16 | | **better(15)** 17:18 17:19 17:20 17:22 18:19 30:15 33:12 49:9 50:1 58:1 76:22 88:21 89:1 97:20 100:11 | |
| **appendices(4)** 64:7 64:8 64:15 99:3 | | **arrival(1)** 74:12 | | **banking(1)** 34:18 | | | |
| **appendix(1)** 98:16 | | **arrived(1)** 33:17 | | **bankruptcy(13)** 1:1 1:18 10:15 11:17 35:17 40:8 56:4 56:6 85:15 86:2 93:17 98:1 98:10 | | | |
| **applicability(1)** 68:19 | | **arsht(1)** 1:22 | | **bargain(2)** 53:25 58:7 | | **between(13)** 5:15 5:17 6:1 30:5 32:8 37:5 40:11 40:23 45:2 47:25 48:13 72:4 98:14 | |
| **applicable(4)** 30:6 46:2 63:8 71:14 | | **asa(2)** 72:8 72:12 | | **baseball(1)** 102:2 | | | |
| **applicant(1)** 98:11 | | **aside(2)** 36:23 46:7 | | **based(16)** 4:19 9:3 13:10 16:12 21:23 30:9 37:1 40:20 40:25 46:8 46:19 47:23 68:10 86:15 94:8 97:14 | | **beyond(1)** 11:5 | |
| **applicant's(1)** 101:6 | | **ask(12)** 12:16 20:1 33:21 39:20 39:22 44:15 45:14 57:15 58:7 68:21 79:5 90:22 | | | | **bid(23)** 4:18 8:5 32:23 32:24 33:5 33:6 33:10 33:13 33:14 33:16 38:8 38:12 38:15 38:16 51:17 52:5 59:24 66:10 68:9 87:8 94:8 94:12 95:8 | |
| **applicants(5)** 66:8 86:4 89:6 100:5 101:6 | | | | | | | |
| **applications(2)** 26:1 99:23 | | **asked(4)** 46:11 66:17 71:10 83:22 | | **basement(1)** 54:1 | | | |
| **appreciate(4)** 84:6 84:8 95:4 102:23 | | **asking(6)** 9:23 44:8 44:10 44:13 55:3 | | **basic(1)** 101:22 | | **bidder(30)** 6:3 6:4 6:10 8:13 9:7 25:20 31:13 32:15 32:20 33:11 33:14 37:20 38:11 49:10 49:14 49:14 49:16 49:20 50:2 50:11 50:12 51:3 61:13 75:24 75:24 76:1 76:2 87:3 94:7 100:23 | |
| **approach(6)** 20:16 32:10 42:9 79:14 80:10 87:20 | | **aspect(3)** 26:13 62:3 101:18 | | **basically(4)** 56:4 62:7 63:16 64:24 | | | |
| | | **aspects(1)** 35:10 | | **basis(15)** 4:9 7:10 8:13 9:7 10:4 23:23 26:21 27:15 44:24 45:7 45:8 45:11 57:25 70:23 101:13 | | | |
| | | **assert(2)** 43:3 72:11 | | | | **bidder's(1)** 94:20 | |
| **approached(3)** 28:3 36:5 37:2 | | **asset(17)** 17:11 19:17 29:3 29:4 30:17 31:16 32:15 32:22 33:4 34:21 35:23 37:5 38:17 53:13 72:8 93:24 98:12 | | | | **bidders(30)** 7:25 8:1 8:3 9:1 14:12 14:13 14:17 14:19 14:24 16:2 28:8 32:2 32:4 32:6 36:10 37:8 38:2 38:5 48:13 49:13 50:6 50:18 61:9 68:7 75:19 87:5 87:8 94:17 100:20 100:24 | |
| **appropriate(15)** 15:25 20:1 42:25 44:16 45:18 46:3 50:15 52:18 57:16 61:21 64:13 74:3 75:20 80:5 88:13 | | | | **became(1)** 7:1 | | | |
| | | **assets(51)** 10:1 12:24 13:2 13:24 14:4 14:5 14:21 14:21 15:10 15:11 15:17 16:14 16:16 19:13 19:22 20:11 24:25 25:11 25:12 25:21 26:14 27:10 27:19 27:20 27:22 28:17 29:3 29:5 29:7 29:17 29:23 30:14 34:25 35:2 35:21 37:3 37:23 38:3 52:7 53:18 57:24 86:5 86:19 86:20 86:23 86:25 87:3 87:4 87:7 100:3 100:9 | | **because(27)** 6:17 6:20 15:8 19:4 19:7 26:13 33:10 38:11 43:3 43:6 44:16 49:22 49:25 53:23 54:17 62:11 64:14 65:1 65:8 69:11 73:16 76:20 77:7 83:17 90:24 95:13 96:6 | | | |
| **appropriately(1)** 71:17 | | | | **become(2)** 33:8 100:23 | | **bidding(42)** 15:14 16:15 31:13 31:20 32:17 32:17 38:12 48:17 49:11 61:12 61:14 62:1 64:2 72:9 74:21 75:21 76:6 79:25 85:21 86:1 86:4 86:24 87:1 87:5 87:9 87:16 88:1 88:20 89:3 89:10 89:14 98:7 98:9 98:20 98:21 99:7 99:14 99:15 100:19 100:21 102:5 | |
| **approval(22)** 15:15 20:18 24:2 31:21 59:3 64:2 64:3 64:3 66:9 67:1 70:5 70:12 85:20 85:25 87:24 88:9 89:5 98:6 98:9 98:12 98:18 98:24 | | **assign(3)** 11:18 29:20 63:17 | | **becomes(3)** 18:9 31:12 57:10 | | | |
| | | **assigned(1)** 62:25 | | **been(71)** 4:13 4:17 5:5 6:4 6:16 7:13 7:20 8:1 8:3 14:4 14:15 15:1 19:4 19:13 19:15 19:16 20:9 20:12 22:3 23:3 23:4 23:5 26:18 30:21 31:5 31:7 32:9 34:10 34:16 36:18 39:10 43:23 44:5 44:5 44:7 47:16 47:21 52:8 53:13 54:15 55:23 56:19 58:23 61:8 62:10 65:18 66:23 67:18 67:19 68:6 69:6 74:23 80:4 81:7 85:18 86:7 87:21 88:2 88:15 88:23 88:25 89:12 90:14 98:7 98:9 98:20 98:21 99:7 99:14 99:15 100:19 100:21 102:5 | | | |
| | | **assignment(3)** 10:18 10:25 40:6 | | | | | |
| **approvals(1)** 60:24 | | **assistance(1)** 100:18 | | | | **bids(14)** 7:23 49:21 49:23 50:1 50:1 68:9 75:16 87:2 87:3 87:6 87:9 87:12 94:16 100:23 | |
| **approve(18)** 10:17 11:18 18:7 18:10 20:2 52:1 58:7 70:6 70:7 70:23 76:9 79:12 79:25 80:7 88:13 89:10 97:11 102:16 | | **associated(1)** 29:17 | | | | **big(3)** 53:19 61:5 94:1 | |
| | | **assume(4)** 10:14 11:18 29:19 73:24 | | **before(30)** 1:17 4:8 4:10 4:22 12:21 18:20 23:22 25:8 31:22 34:10 42:14 45:15 48:18 53:11 53:18 54:9 56:6 57:17 63:11 64:19 64:22 65:2 65:10 68:10 69:23 70:5 70:24 73:4 95:16 96:6 | | **billion(1)** 101:16 | |
| | | **assuming(1)** 90:20 | | | | **bird(1)** 70:24 | |
| **approved(14)** 46:2 54:7 54:15 55:8 71:25 78:15 78:16 85:18 87:25 88:3 89:12 91:20 92:10 98:5 | | **assumption(3)** 10:17 10:24 40:6 | | **beforehand(1)** 90:23 | | **bit(10)** 3:15 5:8 17:16 20:14 22:1 41:17 43:22 59:24 70:18 82:18 | |
| | | **assurance(1)** 41:15 | | **began(3)** 28:1 36:2 100:3 | | | |
| **approving(1)** 18:14 | | **assure(1)** 48:2 | | **beginning(1)** 56:19 | | | |
| **approximately(7)** 35:9 36:5 63:21 101:15 101:17 101:19 101:20 | | **attached(1)** 98:16 | | **behalf(9)** 3:7 11:7 24:9 40:18 47:14 50:23 65:16 67:16 72:25 | | **blackline(1)** 80:10 | |
| | | **attempt(3)** 9:24 87:20 92:1 | | | | **blame(1)** 54:25 | |
| **april(1)** 14:3 | | **attempting(1)** 9:25 | | **behind(1)** 72:23 | | **bless(1)** 56:14 | |
| **apropos(1)** 102:2 | | **attention(1)** 95:20 | | **behoove(2)** 95:14 96:7 | | **board(1)** 95:3 | |
| **are(120)** 3:12 4:10 5:11 5:11 5:12 6:12 6:18 8:10 8:13 9:16 9:17 10:25 13:17 16:3 16:25 18:12 18:15 18:25 19:22 19:23 22:14 22:15 26:15 26:20 27:2 27:3 29:4 29:25 30:4 30:5 32:1 32:17 33:18 36:24 38:9 38:14 38:18 39:7 39:13 40:10 40:10 41:5 41:5 43:5 44:4 44:15 44:17 45:3 46:5 46:17 47:21 48:5 48:17 49:8 49:8 49:11 49:13 50:7 50:19 51:23 52:1 52:6 52:7 52:15 53:10 54:9 54:21 54:24 57:8 58:5 58:22 58:23 60:1 61:17 62:15 64:1 64:7 64:17 65:16 66:3 66:8 66:14 66:25 67:17 69:1 71:18 71:19 71:20 71:21 75:1 75:13 76:9 76:24 78:11 79:7 79:12 80:15 81:19 81:22 84:1 84:4 84:22 85:3 87:13 88:1 88:17 90:21 91:13 91:14 91:18 93:11 95:7 95:25 98:22 99:7 99:15 100:10 100:15 101:9 101:14 | | **auction(43)** 7:10 7:14 8:19 9:2 16:7 23:20 24:1 25:16 30:15 31:24 35:4 38:1 38:11 47:23 48:4 51:3 51:8 51:15 51:17 56:5 56:9 56:13 58:1 58:3 58:4 59:1 61:8 75:16 75:25 79:5 80:4 80:6 87:12 92:10 94:7 94:9 94:18 94:21 95:8 100:20 100:25 101:2 101:3 | | **being(16)** 13:2 25:21 26:5 26:14 37:23 41:21 41:23 42:7 50:2 53:20 54:2 61:1 64:17 85:11 85:14 97:25 | | **bona(2)** 18:18 88:20 | |
| | | | | | | **bondholder(2)** 7:8 50:25 | |
| | | | | | | **bondholders(2)** 16:10 31:10 | |
| | | | | | | **booming(1)** 17:24 | |
| | | **auctions(5)** 15:25 31:22 47:20 48:13 74:23 | | | | **border(1)** 85:18 | |
| | | **audible(10)** 12:9 16:19 20:24 33:24 34:4 39:1 67:9 72:22 73:12 81:16 | | | | **both(39)** 4:8 4:9 8:11 10:2 12:18 18:25 21:23 21:25 23:22 24:1 24:4 26:10 41:20 42:22 48:4 48:18 51:8 51:9 54:5 54:10 54:18 64:19 66:20 67:18 68:12 69:14 69:15 72:3 77:20 84:7 85:18 90:20 92:10 92:22 95:24 96:12 98:5 98:22 99:16 | |
| | | **authorize(1)** 88:9 | | | | | |
| | | **authorizing(2)** 86:3 93:17 | | | | | |
| | | **available(8)** 4:9 21:23 24:24 31:25 34:13 84:1 84:4 84:5 | | | | | |
| **area(1)** 37:10 | | **avaya(1)** 76:1 | | | | | |
| **areas(1)** 67:20 | | **avenue(1)** 2:7 | | | | | |
| | | **avoid(2)** 21:4 56:4 | | | | | |
| | | **avoided(1)** 4:14 | | | | | |
| | | **await(1)** 74:12 | | | | | |
| | | **aware(4)** 3:13 35:25 66:4 89:1 | | | | | |
| | | **b.a(1)** 34:22 | | | | **bother(1)** 84:17 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **botter**(45) 2:22 24:6 24:7 24:8 33:25 34:1 47:7 47:11 47:12 47:13 48:23 49:4 52:20 52:21 57:13 58:14 60:10 60:11 60:13 60:15 60:18 61:19 67:16 67:20 68:5 69:1 70:2 71:3 71:4 71:7 72:15 72:19 72:20 73:17 82:5 82:6 82:7 82:14 83:24 89:24 90:3 94:23 94:25 96:24 102:25 | | **but**(69) 5:3 5:4 5:9 5:12 5:13 5:14 6:8 6:24 8:16 10:5 10:25 11:21 14:24 17:23 18:9 20:14 20:15 21:23 22:1 26:16 31:6 33:17 34:20 40:24 41:11 41:21 42:6 42:24 43:23 44:22 45:5 45:16 46:7 46:11 46:15 49:1 51:2 52:4 54:13 54:16 54:25 55:5 55:7 56:13 56:23 57:14 59:9 60:2 60:6 63:18 70:19 71:22 71:25 73:14 73:24 76:8 77:10 78:24 82:21 83:3 83:10 83:17 90:23 92:3 92:7 93:6 93:8 97:10 102:22 | | **certification**(1) 104:2 **certify**(1) 104:3 **chambers**(1) 81:18 **chance**(2) 76:16 77:1 **change**(4) 50:1 51:13 62:18 81:11 **changed**(1) 49:18 **changes**(7) 51:14 51:17 51:17 51:18 82:10 94:25 97:11 | | **commencement**(4) 28:9 30:12 94:18 100:4 **commensurate**(1) 75:9 **comment**(2) 69:8 86:9 **commentary**(2) 74:18 87:15 **comments**(2) 20:14 21:9 72:21 **commercially**(2) 20:16 87:19 **commit**(1) 33:11 **committee**(33) 2:20 7:7 16:9 24:10 31:9 31:10 34:2 39:16 39:23 47:7 47:14 47:16 48:9 48:12 48:16 50:24 52:10 55:10 55:21 57:8 58:8 67:16 72:6 74:25 75:22 77:24 78:3 82:23 92:23 93:5 94:24 95:1 99:11 |
| **botter's**(1) 60:7 **bound**(2) 33:11 54:14 **bounds**(1) 54:24 **box**(1) 1:26 **breach**(1) 72:10 **breaches**(2) 60:23 72:13 **break**(7) 21:2 49:1 66:12 68:18 68:25 73:20 79:21 | | **buy**(1) 19:5 **buyer**(5) 49:6 51:22 52:1 67:22 68:14 **buyers**(2) 28:4 36:6 **buying**(1) 56:4 **calendar**(1) 76:15 **call**(3) 40:8 102:1 102:21 | | **chapter**(6) 1:7 22:8 30:12 31:6 86:3 98:11 **characteristics**(1) 13:17 **characterize**(1) 48:8 **chicago**(2) 2:15 2:35 **chief**(4) 12:13 12:21 24:21 25:13 **child**(1) 103:12 **chill**(3) 50:17 61:12 75:21 **chilling**(2) 51:4 75:16 | | **committee's**(5) 48:14 54:25 58:21 61:7 **committees**(2) 36:16 51:11 **common**(3) 29:14 35:15 101:23 **communicated**(2) 4:2 74:17 **communication**(1) 13:12 **communications**(4) 27:3 81:19 86:12 86:15 **community**(2) 18:17 88:19 **companies**(1) 27:4 **companion**(1) 29:6 |
| **breakup**(21) 32:25 52:10 56:15 58:19 59:6 59:9 60:20 60:25 71:13 71:23 75:3 75:5 75:9 91:3 91:5 92:11 92:16 93:18 93:22 93:24 98:22 | | **called**(5) 13:2 25:15 31:4 35:6 37:11 **calling**(1) 73:11 **can**(44) 5:23 9:19 11:5 12:6 17:10 18:6 19:5 22:1 26:4 26:9 38:1 43:1 43:2 44:14 45:14 48:2 52:16 52:17 57:11 57:13 59:15 60:15 63:17 63:20 64:20 77:13 78:4 78:6 79:21 81:18 83:4 83:17 84:24 88:10 89:17 89:18 89:21 90:23 95:10 95:14 96:8 97:22 102:1 102:7 | | **choice**(1) 71:24 **chosen**(1) 92:10 **ciena**(37) 2:41 4:18 22:12 23:8 23:11 23:13 25:19 27:7 28:8 29:1 29:14 29:21 37:5 37:11 37:17 37:20 37:22 38:2 43:10 53:2 56:21 56:24 63:2 63:12 63:18 66:9 76:15 78:18 92:8 92:23 93:4 94:6 94:7 94:17 98:15 99:16 101:23 | | **company**(6) 23:12 25:8 28:12 47:24 65:23 68:24 **compare**(3) 42:2 43:1 54:13 **comparison**(1) 35:19 **compete**(1) 27:1 **competing**(1) 27:13 **competition**(2) 13:22 26:24 **competitive**(3) 7:24 13:22 26:23 |
| **bridge**(1) 102:16 **brief**(4) 3:25 61:25 67:14 73:24 **briefly**(7) 12:4 53:8 60:13 71:8 72:25 81:18 86:12 | | **can't**(6) 43:6 45:10 50:4 54:8 56:4 96:8 **canada**(20) 6:13 17:1 17:24 19:23 19:24 20:11 30:25 44:7 45:2 50:25 61:23 64:1 64:23 66:1 66:3 66:17 71:16 73:1 78:1 101:19 | | **ciena's**(2) 94:11 94:13 **circuit**(10) 51:24 51:25 61:15 61:17 71:15 71:23 72:2 75:4 75:6 91:4 | | **competitively**(2) 45:3 45:18 **competitor**(1) 66:20 **competitors**(2) 27:3 49:22 **complex**(2) 53:17 99:18 **complicated**(1) 91:12 **comply**(4) 44:12 71:14 72:1 72:9 |
| **bring**(3) 24:1 73:4 95:19 **brings**(2) 85:20 98:6 **bromley**(101) 1:33 3:18 4:1 4:6 5:1 5:20 8:24 9:10 9:12 9:14 9:16 10:20 11:14 12:1 12:11 12:12 12:20 16:21 16:22 18:1 19:2 20:14 21:6 21:12 21:22 24:11 24:17 24:18 34:7 34:8 38:23 39:5 39:10 39:18 39:25 40:1 41:3 41:10 41:17 43:13 43:17 43:20 44:1 44:3 45:21 46:9 47:1 47:6 47:10 48:3 53:10 56:21 58:13 58:15 58:22 59:8 59:12 59:22 60:24 64:10 72:5 73:18 73:19 73:22 73:24 73:25 78:21 78:24 79:2 79:4 79:8 79:11 79:14 80:2 80:9 80:22 80:25 90:14 90:15 90:17 91:2 91:10 92:7 92:18 92:20 93:1 93:4 96:9 96:16 96:14 97:6 97:22 102:12 102:15 102:18 103:2 103:5 103:20 | | **canadian**(17) 3:24 17:25 18:3 18:25 64:14 67:23 68:3 68:19 69:20 69:25 70:15 96:1 99:12 101:18 101:21 101:21 102:12 **canadians**(1) 3:9 **candian/u.s.**(1) 69:16 **cannot**(3) 27:11 44:23 73:3 **capabilities**(3) 13:19 25:25 99:12 **capacity**(4) 25:13 26:5 26:10 85:24 **capital**(2) 27:16 29:15 **capped**(1) 33:3 **care**(1) 8:6 **carefully**(1) 82:21 **carfagnini**(8) 2:43 17:2 20:4 20:6 20:7 65:14 65:15 65:15 | | **circumstance**(2) 50:16 92:11 **circumstances**(15) 23:4 33:18 37:15 38:18 43:23 50:11 60:19 66:13 67:1 70:9 75:20 76:3 76:9 91:7 91:24 **cisco**(1) 27:5 **claim**(2) 43:7 72:11 **claims**(2) 10:1 41:14 **clarifications**(1) 12:4 **clarify**(2) 10:6 72:16 **clarifying**(3) 9:25 11:1 11:15 **clarity**(1) 69:2 **clean**(1) 80:10 **clear**(8) 7:1 10:1 18:20 71:24 92:8 96:5 97:10 99:24 | | **component**(2) 23:10 23:11 **components**(1) 23:10 **comprehensive**(2) 53:17 53:20 **compromise**(2) 95:5 95:23 **con**(1) 56:18 **concept**(2) 67:25 68:17 **concepts**(1) 62:25 **concern**(8) 40:4 41:13 44:22 58:17 68:12 91:5 92:24 101:4 **concerned**(4) 49:8 75:1 78:19 102:3 **concerning**(3) 40:5 74:21 75:23 **concerns**(9) 10:3 10:9 45:3 49:5 58:21 60:7 60:8 84:9 92:22 |
| **bromley's**(3) 11:10 40:19 47:18 **brought**(4) 4:22 23:22 31:22 64:18 **brown**(1) 34:22 **bryant**(1) 2:23 **building**(2) 62:9 101:9 **built**(2) 13:16 58:24 **bulk**(2) 19:22 20:11 **bullet**(1) 68:16 **burden**(1) 46:1 **bush**(1) 70:25 **business**(99) 4:17 4:24 5:4 5:10 6:8 6:11 6:11 6:17 6:21 6:22 7:19 7:19 7:24 8:4 8:7 8:10 8:19 9:1 9:5 10:17 10:22 12:25 13:4 13:20 14:8 14:14 15:3 15:6 15:8 18:18 18:22 18:23 19:1 19:3 19:6 19:12 19:24 21:15 21:15 22:2 22:2 22:3 22:6 22:20 22:22 22:23 22:23 23:1 23:2 25:1 25:4 25:22 26:8 26:14 26:16 26:23 27:10 27:25 28:2 28:11 28:14 28:23 29:5 29:7 29:18 29:20 30:11 35:15 36:1 36:3 36:12 36:13 36:19 36:25 38:7 38:15 40:4 42:19 42:21 57:25 62:10 63:4 80:7 82:5 82:5 86:18 86:21 87:21 87:22 88:4 88:7 88:21 94:9 99:18 99:19 100:6 101:3 101:4 101:15 | | **carling**(1) 31:1 **carrier**(2) 25:23 99:20 **carrier-grade**(2) 25:24 99:21 **case**(19) 1:4 7:5 11:1 34:5 47:18 50:21 54:15 54:16 55:9 57:6 61:3 68:4 75:7 88:13 88:22 91:21 103:11 103:13 103:15 **cases**(3) 30:12 65:20 99:13 **cash**(2) 23:10 23:10 27:14 29:13 **catbird**(1) 49:23 **categories**(2) 49:2 49:5 **category**(1) 51:21 **cca**(1) 18:6 **ccaa**(6) 22:9 63:10 88:14 99:24 100:4 34:25 47:20 51:9 54:7 54:11 88:4 | | **clearly**(5) 18:8 65:3 69:19 75:21 95:5 **cleary**(4) 1:30 47:19 51:11 72:12 **clerk**(9) 3:2 74:7 74:14 81:25 82:2 90:7 90:9 90:13 102:7 **client**(12) 53:22 53:23 53:23 56:2 56:3 56:5 56:20 76:17 77:2 77:9 77:21 78:3 **clock**(2) 80:17 89:25 **close**(2) 42:7 63:5 **closely**(1) 54:11 **closer**(1) 17:17 **closing**(11) 29:25 42:16 52:5 52:9 60:22 61:1 75:8 75:25 93:19 93:20 100:14 **club**(1) 64:24 **cmda**(1) 47:22 **co-counsel**(1) 102:13 **co-head**(1) 34:17 **code**(3) 10:15 11:18 40:8 **codependent**(1) 29:25 **coherent**(1) 79:22 **colleague**(3) 67:16 71:16 74:12 **colt**(2) 2:4 43:16 **combination**(1) 7:23 **come**(13) 8:5 9:4 44:21 46:22 51:11 54:23 63:3 72:7 76:6 90:18 97:2 103:16 **comes**(1) 40:23 **comfort**(1) 49:15 **comfortable**(2) 40:13 42:15 **coming**(3) 63:14 80:15 89:23 **commenced**(1) 98:11 | | **concluded**(7) 18:22 35:21 36:12 42:7 86:18 87:18 102:11 **concludes**(1) 89:13 **conclusions**(1) 66:7 **concur**(1) 11:10 **conditions**(3) 33:5 53:24 100:12 **conduct**(4) 24:13 86:4 100:18 100:20 **conducted**(8) 14:16 28:21 36:21 85:13 85:17 87:12 97:24 98:3 **conducting**(3) 16:7 57:25 98:19 **confer**(2) 76:16 77:1 **conferred**(2) 52:3 52:8 **confidential**(13) 14:8 26:13 26:20 28:7 28:19 36:8 44:8 45:17 46:7 64:6 64:8 66:19 99:3 **confidentiality**(10) 14:11 16:3 16:4 28:5 28:18 31:12 32:5 36:7 44:22 46:6 **confirm**(5) 11:4 39:20 47:2 59:16 96:1 **confirmation**(1) 40:12 **confirmed**(2) 40:9 43:10 **confirming**(1) 10:23 **congratulations**(2) 103:8 103:23 **conjunction**(2) 62:5 63:25 |
| **business's**(1) 26:2 **businesses**(11) 4:23 6:12 14:10 19:7 19:8 25:5 26:17 27:13 27:15 35:14 100:2 | | **certain**(30) 29:14 29:19 29:21 29:23 30:5 30:24 31:1 31:5 31:6 41:11 43:2 44:4 44:5 45:17 48:21 48:23 53:21 53:22 56:14 58:23 58:25 59:2 59:3 59:3 59:4 60:25 91:6 98:14 99:13 100:10 **certainly**(15) 6:5 23:23 42:17 43:3 45:14 56:24 59:13 60:5 61:20 70:14 77:16 78:12 78:24 80:3 80:6 | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

connection(14) 5:17 12:15 25:11 26:18 28:2 35:1 36:3 47:19 48:16 85:10 88:3 88:10 88:25 100:13

cons(2) 54:1 57:2
consensus(1) 7:9
consent(3) 63:5 70:19 94:11
consider(6) 5:24 18:12 44:20 69:18 96:11 99:25

consideration(5) 4:19 16:13 30:10 81:6 88:12

considered(2) 88:15 89:8
considering(1) 68:22
considers(1) 66:11
consist(2) 13:3 25:22
consistency(1) 81:19
consistent(5) 7:4 45:11 66:15 75:6 93:23
consists(4) 46:5

consolidate(1) 100:1
constituents(6) 7:7 8:2 36:16 47:25 50:24 51:6

constitutes(3) 4:21 37:23 72:10
consult(3) 16:8 69:15 77:21
consultation(1) 69:13
consulted(1) 74:21
consummated(5) 15:12 27:21 68:23 86:24 91:8

consummation(1) 92:12
contact(2) 15:15 15:18
contacted(6) 19:15 28:15 32:7 36:19 36:20 36:23

contain(1) 65:9
contained(1) 32:18
contains(3) 31:17 80:20 99:3
contemplate(1) 32:24
contemplated(2) 30:15 100:14
contentious(3) 37:14 56:22 56:23
contest(1) 67:10
context(4) 41:7 57:1 57:5 60:8
continue(4) 7:14 14:24 20:12 48:5
continued(2) 2:2 22:11
continues(1) 7:21
continuing(1) 86:20
contract(2) 6:22 31:2

contracts(10) 10:15 10:18 10:23 10:24 11:19 26:15 29:19 29:23 40:7 40:10

contractual(1) 96:17
contrast(1) 54:13
contributes(1) 38:11
controversy(1) 3:14
conundrum(1) 41:17
conventional(1) 56:15
conventionally(1) 58:5
conversation(2) 9:20 46:8
conversations(2) 10:4 21:24
convey(1) 87:2
cooperate(1) 8:5
cooperation(1) 8:2
cooperative(2) 46:20 47:25
coordinate(2) 16:8 89:23
coordinated(1) 22:20
coordination(1) 7:6
copies(3) 49:21 84:25 87:8
copy(2) 17:11 99:5
core(3) 13:9 13:16 31:6
corporate(1) 25:3
corporation(6) 24:22 25:19 53:2 56:21 56:24 98:15

correct(7) 4:1 40:19 58:20 59:17 59:19 70:8 104:3

cost(5) 13:14 13:23 26:1 26:24 99:22

cost-effectively(1) 26:7
costs(3) 33:1 33:2 86:20
could(23) 11:4 15:9 27:18 36:24 39:6 39:12 39:18 44:19 54:13 54:20 54:21 58:15 59:15 60:9 60:25 70:22 71:25 77:2 78:2 79:2 79:4 82:12 83:1

couldn't(1) 79:11

counsel(24) 3:24 10:12 10:13 11:3 37:12 39:20 39:22 40:9 40:9 42:13 74:15 77:2 78:3 78:12 81:18 81:24 82:3 84:3 84:9 84:15 89:16 90:4 95:25 97:22

counsel's(2) 95:4 102:23
counterparties(1) 37:2
countries(3) 13:14 30:7 53:19 101:16
couple(5) 9:17 58:15 59:23 67:23 93:9
course(10) 24:12 36:13 37:13 37:15 40:20 55:4 67:4 75:2 76:18 77:23

court(233) 1:1 3:3 3:8 3:11 3:13 3:16 3:19 3:21 4:4 4:25 5:19 8:20 8:23 9:4 9:8 9:11 9:13 9:15 10:19 11:9 11:13 11:25 12:8 12:10 12:12 12:19 15:14 16:17 16:20 17:3 17:15 17:19 18:6 19:16 21:3 21:11 21:21 24:6 24:14 25:10 31:6 31:20 33:22 33:25 34:2 34:5 34:24 38:23 39:2 39:9 39:17 39:23 39:24 40:15 41:1 41:2 41:9 41:16 43:12 43:14 43:19 44:5 44:2 45:20 45:23 46:16 46:23 47:5 47:9 47:11 48:22 49:3 52:20 52:22 53:1 53:7 53:16 54:7 54:20 55:3 55:13 55:19 55:23 56:1 56:14 57:7 57:15 57:17 57:19 58:10 58:12 58:17 59:7 59:11 59:18 59:21 60:12 60:14 60:17 61:19 64:23 65:6 67:5 68:11 69:22 69:22 70:5 70:6 70:19 70:22 71:3 71:11 71:13 71:24 72:14 72:19 73:4 73:22 73:25 74:5 74:8 74:11 74:19 75:12 76:18 77:3 77:5 77:8 77:9 77:12 77:14 77:16 77:19 77:23 78:5 78:7 78:16 78:21 79:1 79:3 79:6 79:9 79:12 79:16 79:24 80:3 80:11 80:14 80:17 80:19 80:24 81:23 82:3 82:6 82:15 82:20 82:25 83:5 83:8 83:12 83:19 83:21 84:1 84:5 84:8 84:11 84:15 84:19 84:24 85:2 85:5 85:9 85:15 85:16 85:19 85:19 86:2 87:25 88:3 88:9 89:5 89:5 89:13 89:19 89:22 90:4 90:6 90:10 90:14 90:16 91:1 91:9 91:20 92:6 92:17 92:19 93:1 93:17 94:3 94:15 94:23 95:3 95:12 95:21 96:6 96:9 96:13 96:25 97:5 97:9 97:17 98:1 98:2 98:5 98:5 98:10 99:6 99:15 101:25 102:8 102:10 102:14 102:17 102:20 103:1 103:4 103:8 103:11 103:17 103:19 103:21 103:23

court's(7) 55:4 55:17 76:7 76:15 76:19 76:21 96:18

courtesy(1) 69:21
courtroom(6) 1:9 11:3 21:19 24:21 24:23 34:13

courts(16) 23:23 24:2 31:22 48:18 52:17 54:5 57:8 64:19 67:18 68:13 69:14 84:7 84:9 84:9 92:10 94:14

cover(1) 33:1
covered(3) 62:1 68:15 69:2
create(3) 33:13 42:11 58:25
creates(3) 32:20 50:8
creation(2) 50:3 50:3
creditor(1) 28:10
creditors(10) 2:19 16:10 18:17 24:10 31:9 31:17 36:16 72:6 88:20 99:11

critical(4) 26:15 48:11 48:13 96:25
critically(1) 51:19
cross(1) 85:17
cross-border(2) 74:16 98:4
cross-examination(1) 24:13

cross-examine(3) 16:18 33:22 38:25
culminated(1) 28:25
culmination(1) 53:12
current(3) 4:19 25:6 62:20
currently(5) 19:23 23:12 62:8 101:7 101:9
curtis(2) 2:4 43:16
customer(4) 26:12 26:15 26:18 26:20
customers(4) 15:5 27:15 35:15 38:14
data(12) 1:46 6:25 8:15 13:19 14:15 16:5 22:25 23:7 28:20 32:2 38:4

date(13) 10:22 11:23 28:13 42:3 42:12 42:16 59:2 59:2 59:3 62:20 62:24 87:22 104:9

date(2) 98:13 98:25
dates(6) 51:18 51:18 58:23 58:24 60:25 81:1

david(3) 2:22 24:8 47:13
day(2) 55:24 78:11
daylight(1) 78:10
days(5) 4:12 10:13 11:20 11:22 94:9
deadline(2) 42:5 42:6
deal(16) 10:3 12:22 18:4 21:1 30:19 38:14 45:6 49:15 53:20 57:6 59:13 62:3 62:6 96:11 97:16 102:4

dealing(1) 64:10
deals(4) 4:15 10:5 29:6 60:19
dealt(1) 18:5
debtor(5) 1:22 10:1 57:18 77:23 86:3
debtor's(13) 9:24 13:25 16:12 24:25 26:17 27:23 29:19 37:22 48:15 61:6 80:7 88:19 95:6

debtor-anixter(1) 10:24
debtors(27) 1:11 3:7 9:25 10:16 11:16 14:4 16:7 28:13 29:11 31:18 33:7 33:8 34:12 40:11 47:17 47:18 50:23 51:5 52:1 52:7 52:14 57:21 57:23 59:5 60:5 74:22 91:20

decide(1) 73:21
decided(1) 35:21
deciding(1) 18:12
decipher(1) 93:6
decision(2) 18:11 75:7
decisions(2) 54:5 64:22
decline(2) 15:10 27:19
declined(1) 77:10
dedicated(1) 35:9
deemed(1) 94:20
defer(1) 80:7
deferring(1) 75:3
deficit(1) 18:17
defined(2) 98:23 98:25
definitely(1) 103:15
definitive(2) 15:1 15:5
delaware(5) 1:2 1:11 3:1 86:2 98:10
delay(1) 27:15
deleterious(1) 65:4
deliver(5) 26:10 79:22 84:21 84:22 87:8
delivered(1) 81:8
delivering(2) 25:24 99:21
demands(1) 27:14
denied(1) 69:7
denying(1) 10:23
deployable(1) 26:5
deployed(1) 86:13
deposit(14) 50:7 50:12 50:14 50:16 50:17 68:1 68:2 68:7 68:8 75:17 75:18 75:20 94:8 94:20

derek(2) 1:24 3:6
described(10) 11:2 49:17 85:22 86:11 87:18 98:7 99:8 99:18 99:19 100:15

designed(3) 80:5 87:19 95:7
desire(1) 87:8

desired(1) 62:19
despite(1) 48:14
detail(5) 5:8 59:13 67:21 68:20 100:15
details(1) 82:18
determination(2) 7:9 36:14
determine(3) 41:23 43:2 69:15
determined(4) 57:21 94:6 94:14 94:21
determines(1) 71:13
deutsche(2) 34:18 34:19
developed(1) 100:21
developing(1) 26:9
development(3) 25:4 26:25 86:21
developments(1) 13:23
develops(1) 13:8
devil(1) 82:17
diaz(1) 1:46
did(14) 9:20 9:22 10:4 10:10 11:14 37:20 41:21 54:6 60:5 60:9 73:24 76:1 78:13 81:10

didn't(4) 56:22 76:20 76:20 96:4
dies(1) 60:2
differ(1) 5:9
difference(5) 5:15 6:1 9:6 92:19 92:20 92:21

differences(1) 30:5
different(6) 5:7 20:15 70:15 70:18 88:1 93:9

difficult(4) 52:7 70:3 79:9 93:7
difficulty(2) 17:16 21:9
diligence(5) 23:7 28:7 31:25 32:3 36:8
diligent(1) 14:25
diligently(1) 18:20
direction(1) 51:12
directly(1) 15:16
director(1) 34:11
disadvantages(1) 53:22
disagreement(1) 47:3
disappointed(1) 103:18
disclosed(1) 73:3
discovery(1) 46:14
discretion(3) 14:14 69:18 94:13
discuss(4) 4:15 39:16 76:11
discussed(2) 36:14 95:24
discussing(1) 70:13
discussion(1) 7:6
discussions(8) 14:18 15:3 19:8 28:8 36:9 37:14 62:17 72:4

dismissed(1) 69:7
disposition(2) 69:7 97:15
distressed(1) 34:21
district(3) 1:2 86:2 98:10
divest(6) 27:25 28:11 28:14 36:1 86:22 100:6

divestiture(1) 100:1
dividing(2) 16:23 91:16
docket(1) 81:3
docketed(1) 97:3
document(5) 53:24 59:14 69:20 69:20
documentation(1) 68:10
documented(1) 33:2
documents(6) 22:15 31:7 31:8 31:14 44:11 46:11

does(18) 5:9 5:20 16:17 33:22 40:21 48:16 52:23 60:21 60:22 63:5 65:9 70:16 70:17 71:14 72:1 83:14 87:5 89:4

doesn't(2) 63:19 63:24
doing(9) 18:1 42:15 55:14 55:18 61:9 66:10 83:3 96:11 103:6

dollars(4) 56:7 56:8 56:10 63:7
dominant(2) 5:12 6:18

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| don't(28) 5:3 7:18 9:8 17:3 43:13 46:3 46:14 49:25 54:25 56:6 57:14 57:15 57:16 59:1 60:10 62:23 64:16 65:7 71:4 73:1 73:15 76:15 78:2 78:17 82:23 84:16 91:17 91:23 | | enter(4) 15:1 32:6 62:5 95:2 entered(9) 14:11 14:23 22:16 29:22 30:22 62:17 96:17 100:13 101:12 | | exhibit(1) 60:16 exhibits(1) 99:4 exist(1) 41:21 existing(1) 15:5 exists(2) 27:10 72:1 expect(8) 46:12 46:12 46:14 64:18 69:14 78:23 89:6 103:14 | | fiber(1) 26:5 fide(2) 18:18 88:20 field(18) 48:12 48:18 49:4 49:7 50:3 50:9 50:19 52:18 55:1 55:4 55:6 55:7 55:8 58:8 67:22 67:25 68:5 75:15 | |
| done(14) 5:7 19:16 19:16 21:17 23:3 23:19 44:6 52:14 56:6 84:7 84:23 92:2 93:10 102:19 doug(4) 52:24 76:14 82:16 93:3 douglas(1) 2:12 down(2) 49:1 89:18 downturn(1) 27:12 draft(6) 8:20 8:25 9:2 11:15 79:20 81:5 drafted(1) 93:5 | | entering(1) 16:6 enterprise(18) 4:23 10:3 22:13 22:18 25:12 35:2 41:8 41:18 42:3 42:7 42:20 42:22 47:20 47:22 51:9 54:7 88:6 88:7 entertain(2) 87:2 87:6 entertaining(1) 15:20 entirely(1) 44:1 entities(7) 28:15 28:22 32:8 36:18 36:22 36:24 100:10 | | expectation(1) 9:3 expedited(1) 100:18 expeditious(1) 86:23 expenditures(1) 27:16 expense(10) 26:7 32:25 33:3 58:20 59:10 66:12 91:5 91:22 93:22 98:22 expenses(3) 33:2 56:16 56:16 experience(4) 33:9 37:1 38:8 38:10 | | filing(2) 35:18 36:11 filings(3) 22:8 22:9 22:11 filled(1) 42:12 finally(1) 61:11 financial(8) 14:7 15:23 28:4 34:12 36:4 36:6 37:12 38:6 find(2) 19:11 78:6 fine(4) 73:8 96:23 96:24 97:4 finest(1) 3:9 | |
| drafting(2) 82:18 82:19 drew(13) 2:6 42:13 43:14 43:15 43:16 45:21 45:23 45:24 45:24 46:21 46:24 46:25 47:4 drive(2) 2:13 2:33 drop(1) 57:11 due(3) 27:12 28:7 36:8 during(6) 37:8 37:13 37:15 48:4 79:21 81:13 | | entitle(1) 30:2 entity(1) 32:9 entry(3) 90:20 93:16 96:19 environment(1) 13:21 26:22 envisioned(1) 38:17 equipment(12) 26:6 41:11 41:13 41:15 41:20 41:21 41:22 42:19 42:20 42:23 42:25 43:4 ericsson(1) 27:5 ernst(2) 2:42 85:24 | | experienced(1) 15:4 experiences(1) 47:23 experiencing(2) 15:4 27:12 expert(1) 57:16 expertise(1) 38:6 expire(1) 62:20 explain(4) 5:8 6:4 90:24 92:23 explained(2) 52:12 56:3 explanation(2) 8:12 9:6 explore(2) 28:1 36:2 explored(1) 14:3 | | finish(1) 83:4 first(12) 5:3 26:9 39:19 40:1 55:24 67:25 74:22 80:3 84:17 85:11 97:21 97:23 fiscal(2) 101:16 101:18 fit(2) 10:24 69:8 fits(1) 92:24 five(9) 28:6 28:16 34:20 36:19 80:17 93:11 94:8 94:19 97:19 | |
| dynamics(1) 33:14 each(5) 25:13 29:25 35:2 60:1 74:24 earlier(2) 90:25 91:11 eastern(1) 78:10 easy(2) 54:18 57:7 echo(1) 91:10 echoes(2) 20:13 43:22 economic(5) 15:2 18:17 27:12 70:17 88:19 economically(1) 12:5 ecro(1) 1:44 edge(2) 13:15 13:18 effect(3) 53:23 54:21 75:19 effective(1) 13:15 effectively(1) 51:4 effects(3) 65:3 65:4 65:5 effort(1) 47:25 efforts(18) 14:24 14:25 16:9 19:15 22:10 28:2 28:14 29:6 34:4 47:17 48:8 48:11 48:15 49:24 84:8 95:4 100:6 102:23 | | escrow(1) 94:10 escrows(1) 19:4 esq(9) 1:24 1:32 1:33 1:39 2:6 2:12 2:22 2:32 2:43 essence(1) 62:18 essentially(3) 9:23 13:3 59:19 established(1) 14:9 establishing(1) 33:14 estate(9) 31:2 32:13 33:10 49:25 50:4 52:3 52:8 63:24 75:9 estates(9) 13:25 27:23 35:23 37:22 48:19 49:17 51:20 52:19 61:10 ethernet(16) 4:16 21:2 21:14 21:15 22:2 22:22 23:1 25:1 25:22 25:23 25:25 26:14 29:5 99:18 99:20 99:21 | | exposed(2) 19:17 68:24 express(1) 14:13 expressed(5) 15:16 28:17 38:2 40:5 41:13 expression(1) 65:5 expressions(1) 14:19 extend(1) 73:17 extended(3) 42:6 62:20 73:17 extensive(9) 7:12 21:18 28:23 33:17 56:24 66:5 67:17 87:15 100:7 extensively(7) 6:15 19:13 20:10 32:23 55:6 62:1 65:18 extent(5) 6:16 11:19 40:22 68:16 96:25 extremely(1) 74:23 face(1) 44:4 facilitate(4) 29:18 54:5 62:16 101:11 facilitated(1) 54:4 facilities(1) 41:12 facing(1) 27:13 fact(4) 47:3 60:4 72:1 103:12 factors(7) 18:12 18:15 75:14 88:14 88:17 88:22 89:9 | | five-percent(2) 50:7 94:8 five-zero(1) 28:3 fix(1) 76:24 fixes(1) 76:24 flex(8) 39:21 39:22 42:1 43:9 45:4 45:19 64:10 64:12 flexibility(14) 18:24 48:1 48:10 48:19 49:5 50:20 50:23 51:2 51:4 51:14 51:16 52:19 61:6 67:22 flexible(2) 19:3 19:11 flextronics(15) 2:4 39:14 41:4 41:4 41:8 41:12 41:19 42:14 43:18 43:20 44:10 44:16 44:17 73:1 80:21 flextronics's(2) 41:12 43:3 floor(8) 16:25 32:16 41:12 62:11 62:14 62:23 63:13 63:17 floors(3) 62:9 62:11 101:9 flow(1) 22:25 focus(3) 91:15 91:25 focusing(1) 35:12 folks(1) 23:5 follow(1) 100:19 follow-up(2) 70:1 71:5 following(1) 19:4 35:21 follows(2) 88:17 93:11 | |
| either(12) 10:5 11:3 15:16 30:2 54:9 55:18 63:17 67:3 69:6 70:2 70:6 99:13 electronic(9) 1:51 14:9 14:15 16:5 22:24 28:20 32:2 38:4 104:4 element(3) 54:3 56:19 90:24 elements(1) 8:9 eliminated(1) 94:20 eloquent(1) 102:19 else(7) 7:5 33:21 34:3 52:23 60:10 73:10 73:15 | | ethernets(1) 35:8 europe(6) 5:12 6:14 6:16 6:18 9:1 53:19 evaluate(2) 28:12 31:18 even(9) 33:12 45:12 50:15 52:18 53:18 57:5 75:15 92:14 95:14 evening(4) 93:10 97:1 103:4 103:19 event(5) 75:24 91:7 91:19 92:9 93:15 every(1) 48:25 everybody(2) 78:4 96:16 everyday(1) 53:11 everyone(5) 32:11 46:13 46:15 74:11 everything(3) 7:5 69:2 92:3 | | facts(2) 18:2 37:15 failure(5) 60:23 60:25 61:12 72:9 91:19 fair(12) 8:14 16:1 31:24 37:23 46:10 47:15 49:1 54:21 56:20 57:14 80:5 82:8 fairly(3) 56:14 68:2 71:24 faith(1) 66:8 fall(2) 34:17 36:2 familiar(7) 15:14 29:2 31:19 35:13 37:4 44:2 51:24 | | |
| email(1) 102:15 emea(10) 22:17 29:7 29:24 30:7 33:8 53:18 57:22 93:24 100:9 100:10 emerged(1) 23:8 emerging(2) 26:1 99:23 emphasize(1) 53:9 employ(1) 23:18 employed(6) 6:5 8:1 23:2 25:7 34:16 34:19 employee(2) 24:22 30:24 employees(4) 19:24 66:2 66:21 101:6 encompassed(1) 101:14 end(3) 3:23 56:12 57:4 60:25 endeavor(1) 42:17 endorsed(1) 81:7 endorsement(2) 86:9 89:14 engage(1) 28:23 engaged(3) 15:3 19:24 36:8 engine(1) 26:4 engineering(1) 26:6 ensure(2) 16:1 31:23 | | evidence(7) 16:21 18:19 34:6 39:3 53:10 65:2 65:10 evidentiary(1) 12:7 evolved(1) 69:8 exact(3) 10:7 41:22 93:8 exactly(4) 5:8 43:7 45:9 92:5 example(2) 60:22 61:12 exceed(1) 56:16 excellent(5) 47:5 47:22 52:14 79:14 102:20 except(3) 80:25 93:23 94:20 excess(1) 4:20 exchange(5) 29:15 42:1 42:12 42:15 42:17 exclude(1) 87:6 exclusively(1) 29:20 exclusivity(1) 7:18 excused(1) 80:12 executed(4) 4:18 28:5 28:18 36:7 exercise(9) 14:11 18:9 18:14 18:21 23:18 42:21 59:5 94:11 94:13 exercises(1) 59:8 | | fairly(3) 56:14 68:2 71:24 faith(1) 66:8 fall(2) 34:17 36:2 familiar(7) 15:14 29:2 31:19 35:13 37:4 44:2 51:24 far(7) 19:4 47:17 48:8 48:15 51:7 76:5 78:19 fashion(1) 23:21 fast(1) 83:16 fault(1) 91:3 fee(26) 32:25 52:10 56:15 58:19 59:6 59:9 60:20 61:1 66:12 68:18 68:18 68:25 68:25 71:13 71:23 75:4 75:6 75:10 91:3 91:5 92:11 92:16 93:18 93:22 93:24 98:22 feeling(2) 103:11 103:17 feelings(1) 55:11 fees(1) 33:2 feld(3) 2:21 24:9 47:14 few(7) 78:3 103:6 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**for(170)** 1:2 1:22 1:38 2:4 2:11 2:19 2:31 2:42 4:8 5:16 5:21 6:16 7:3 7:11 7:15 8:12 8:18 8:25 8:25 9:21 9:23 10:2 10:5 11:7 12:15 12:18 13:5 13:11 13:12 13:22 13:25 14:1 14:6 14:9 14:21 15:2 15:6 15:15 16:16 17:3 18:1 18:20 19:1 19:12 19:12 19:14 19:19 20:7 20:16 21:23 22:4 22:6 23:16 24:2 25:8 25:8 25:17 25:17 25:25 26:1 26:24 27:23 29:15 30:14 31:20 32:6 32:17 32:19 33:4 33:14 34:2 34:18 34:19 34:20 35:23 37:23 38:15 38:19 38:21 39:20 39:22 40:6 40:24 42:7 43:21 44:8 44:10 44:11 44:13 44:14 44:15 44:20 45:13 45:14 46:11 46:23 48:15 48:19 49:9 51:10 53:14 54:1 54:18 57:7 57:23 57:25 60:22 61:10 61:12 62:10 62:19 62:21 63:25 64:14 64:17 66:1 66:16 66:17 68:12 68:14 70:5 70:10 72:13 72:16 73:11 73:14 73:20 74:15 76:6 76:14 78:12 79:5 80:1 80:25 81:5 81:12 84:6 84:12 84:24 85:12 85:20 86:2 86:9 86:12 86:13 86:14 86:15 86:25 87:3 87:4 87:20 88:10 92:10 93:3 95:1 97:7 98:6 98:10 98:19 99:22 99:22 100:3 100:9 100:22 101:2 101:5 101:12 103:6 103:7

**forced(1)** 28:10
**foregoing(1)** 104:3
**forgive(1)** 80:24
**form(7)** 43:7 71:25 81:1 81:15 86:1 87:16 98:16

**forms(1)** 66:6
**forth(4)** 68:2 68:20 70:4 87:13
**forward(3)** 52:17 68:8 71:19
**found(1)** 91:2
**four(7)** 18:12 18:15 49:8 50:19 64:1 88:21 94:16

**fourth(3)** 62:9 62:23 63:13
**france(1)** 6:22
**frankly(2)** 49:24 76:20
**free(2)** 10:1 65:5
**french(2)** 6:19 6:23
**friends(2)** 61:22 103:14
**from(57)** 3:13 3:24 7:16 7:24 7:25 9:14 15:4 15:20 16:1 17:25 18:2 19:2 20:4 21:22 26:7 34:22 34:22 36:23 37:22 39:13 39:14 39:16 43:16 47:3 51:6 52:24 53:9 56:19 57:20 58:13 58:13 59:16 61:9 61:16 61:22 62:20 62:24 65:16 67:23 69:8 69:16 69:25 70:15 70:15 71:9 71:12 77:11 81:4 81:11 88:11 90:1 90:8 96:17 99:10 100:23 102:12 104:4

**front(3)** 17:7 49:11 83:3
**fujitsu(1)** 27:5
**full(4)** 15:11 27:10 27:20 52:4
**fully(4)** 47:16 52:12 66:3 103:14
**fundamentally(1)** 58:5
**further(10)** 58:13 67:2 67:5 69:8 70:13 72:21 86:8 89:5 99:6 100:15

**furthermore(1)** 62:13
**future(2)** 28:12 38:15
**game-play(1)** 76:20
**garner(1)** 86:24
**general(2)** 35:16 59:16
**generally(5)** 15:13 26:19 31:19 59:4 70:6
**generate(2)** 7:25 16:15
**geographies(1)** 7:23
**george(1)** 12:13
**get(23)** 19:5 19:6 23:3 32:2 49:20 49:21 50:12 50:16 55:17 56:12 56:14 56:22 77:2 81:3 81:18 84:7 84:25 93:10 95:16 96:7 97:19 102:21

**getting(10)** 4:11 47:20 49:10 51:6 51:6 52:14 53:20 56:8 83:12 101:25

**give(6)** 39:6 53:8 77:19 77:20 78:2 89:16
**given(3)** 26:8 28:20 42:8
**gives(1)** 59:4
**giving(2)** 51:3 72:10
**glass(1)** 97:21
**global(2)** 27:3 46:1
**globally(3)** 13:6 27:14 101:15
**globe(1)** 15:23
**gms(1)** 78:14
**going(25)** 22:6 49:20 59:12 55:14 55:17 56:7 56:9 56:12 57:19 59:12 59:23 67:23 70:12 76:21 81:19 83:9 83:16 83:17 83:23 84:13 84:21 84:22 90:22 93:5 101:4 103:12

**going-forward(1)** 101:13
**gone(1)** 42:21
**good(35)** 3:3 3:5 3:6 3:8 3:9 3:10 4:4 4:6 4:6 4:11 11:6 17:4 17:5 22:12 24:6 24:7 24:7 40:17 43:14 43:15 47:12 52:13 53:2 57:9 60:5 60:9 63:15 66:8 74:2 78:13 82:16 101:25 103:4 103:8 103:19

**goodie(1)** 49:20
**goodmans(2)** 2:42 65:16
**got(2)** 55:4 83:15
**gotten(2)** 4:13 59:16
**gottlieb(1)** 1:30
**government(1)** 60:24
**gprs(1)** 13:15
**graft(1)** 93:9
**grant(1)** 95:9
**granted(4)** 14:15 81:8 89:9 102:22
**great(3)** 6:6 49:15 59:13
**greater(1)** 51:15
**gross(29)** 1:17 3:10 4:6 17:5 20:7 20:25 21:10 24:7 47:12 51:23 67:3 67:15 68:13 69:7 69:23 72:17 74:3 74:16 74:17 78:22 79:18 81:21 82:7 84:13 85:15 89:13 89:16 90:15 98:1

**group(3)** 7:8 34:20 50:25
**groups(1)** 7:25
**gsm(37)** 5:10 5:11 5:15 5:15 6:2 6:8 6:17 6:18 6:21 7:24 8:19 9:5 10:16 10:22 11:11 12:24 13:3 13:4 13:6 13:7 13:9 13:11 13:11 13:15 13:16 65:25 86:12 86:14 86:15 86:19 86:20 86:22 86:25 87:3 87:4 87:7 87:21

**gsm-r(8)** 5:10 5:11 5:16 5:22 9:5 10:16 10:22 13:3

**gsm/gsm-r(6)** 20:23 80:1 85:12 85:21 86:5 86:18

**gump(3)** 2:20 24:8 47:13
**guys(1)** 51:12
**had(30)** 4:1 6:16 6:25 10:8 12:3 14:15 18:4 22:18 22:18 23:6 34:3 38:23 40:8 41:10 41:17 43:23 51:7 51:9 51:13 54:3 56:25 61:5 61:7 72:6 72:11 72:12 79:6 81:2 88:22 92:24

**half(5)** 39:14 39:15 66:2 79:22 89:16
**half-a-million(1)** 63:7
**hallway(1)** 57:14
**hamilton(1)** 1:30
**hamstring(1)** 51:5
**hamstrung(1)** 61:8
**hand(2)** 17:10 70:24
**handle(1)** 62:22
**handling(1)** 103:12
**handwriting(2)** 93:6 93:7
**happening(2)** 7:5 62:7
**happens(2)** 52:6 63:12
**happy(4)** 4:20 9:16 38:14 42:4 44:20 45:21 71:20 73:20

**hard(4)** 44:14 47:23 47:24 55:11

**hardin(1)** 2:31
**harmful(1)** 49:16
**harrisburg(1)** 1:48
**harvard(1)** 34:22
**has(81)** 4:17 6:14 7:12 7:20 8:1 8:2 12:7 13:13 14:2 15:25 17:1 18:22 20:9 20:12 22:3 22:13 23:3 23:9 26:18 32:7 32:7 34:21 35:8 35:10 41:12 42:8 42:22 45:1 46:13 47:16 48:21 48:24 48:24 50:21 52:8 53:13 53:23 56:2 56:5 56:6 56:18 56:21 56:25 60:10 62:13 63:3 63:23 65:17 65:20 65:20 65:22 66:23 67:16 67:18 68:8 68:13 69:1 69:11 69:12 71:11 71:16 74:20 74:25 75:22 77:10 79:20 80:4 81:7 83:22 85:18 86:7 87:15 87:18 87:21 88:9 90:19 95:17 97:15 98:4 99:15 100:21

**hate(1)** 21:12
**hauer(3)** 2:20 24:9 47:13
**have(194)** 3:22 4:3 4:13 4:13 4:15 4:22 5:5 5:7 5:13 6:3 6:5 7:14 7:17 7:18 7:19 8:9 8:14 8:19 8:20 8:21 8:25 9:1 9:8 9:12 9:17 9:18 9:20 10:2 10:10 10:12 12:2 12:6 12:16 14:4 14:19 14:25 15:3 15:16 16:2 16:4 16:8 17:3 17:7 17:13 18:9 19:17 19:25 20:4 20:19 20:21 21:17 21:17 21:18 21:22 22:10 22:11 22:11 22:15 22:18 23:2 23:4 23:5 24:5 24:11 28:13 29:21 31:5 31:7 31:14 31:22 32:4 32:9 32:10 38:2 38:3 38:5 39:10 39:15 40:9 41:6 41:14 42:6 42:11 43:9 44:5 44:5 44:7 44:19 45:3 45:5 45:6 45:15 45:21 46:22 47:21 49:4 49:9 49:25 49:25 51:1 51:22 52:14 54:6 54:15 54:21 55:15 55:23 56:7 56:13 57:13 57:21 58:18 58:23 59:1 60:4 61:2 61:22 62:5 62:8 62:10 62:16 62:21 63:7 63:9 64:4 64:5 64:6 64:18 64:20 64:22 64:24 65:11 67:3 67:3 67:5 67:19 69:6 69:8 69:10 70:16 70:17 71:15 71:24 73:18 74:16 74:17 74:20 74:22 75:18 76:10 77:16 78:17 79:19 80:10 81:5 82:9 82:17 83:1 83:6 84:3 84:16 84:17 88:15 88:20 88:24 88:25 89:12 90:22 91:19 91:21 91:22 91:23 92:7 99:12 100:7 101:12 101:12 101:24 102:4 102:5 102:11 102:12 102:22 103:11 103:17

**haven't(2)** 46:10 54:23
**having(11)** 8:10 17:15 21:4 21:9 23:20 38:13 46:2 55:12 66:4 76:5 89:8

**he'll(1)** 102:21
**he's(10)** 15:13 29:2 31:19 34:12 34:16 34:20 34:24 35:13 35:25 37:4

**head(1)** 34:20
**hear(9)** 3:24 61:22 73:24 77:10 79:10 79:11 79:19 84:24 90:1

**heard(9)** 11:21 11:23 12:20 19:2 19:13 52:23 70:24 85:14 97:25

**hearing(22)** 4:2 4:9 11:20 11:21 11:22 11:24 12:10 17:16 21:9 39:2 42:14 51:18 59:3 70:18 85:13 85:16 85:16 97:24 98:2 98:3 102:11 103:25

**hearings(3)** 3:22 69:12
**heaven(1)** 56:11
**heavily(1)** 59:14
**heavy(1)** 18:1
**help(4)** 17:16 32:12 32:12 88:4
**helpful(3)** 54:17 92:21 97:2

**here(38)** 3:7 3:12 5:13 7:8 9:6 12:8 16:25 17:22 17:24 19:16 21:17 21:19 23:3 23:18 44:4 48:15 48:25 49:12 50:13 51:24 52:2 54:23 55:5 57:9 65:7 67:4 71:14 73:1 75:5 75:18 76:4 78:4 78:13 79:3 80:6 88:4 97:15 103:15

**here's(1)** 51:12
**hide(1)** 47:3
**high(1)** 13:17
**high-performance(1)** 13:15
**high-quality(1)** 23:2
**higher(7)** 22:25 25:25 30:14 33:12 58:1 99:22 100:11

**highest(6)** 16:16 19:19 30:13 37:25 86:25 95:8

**highlight(2)** 64:9 69:24
**highlighted(1)** 68:5
**highly(3)** 13:21 26:23 58:19
**him(2)** 18:1 37:16
**his(30)** 12:17 12:22 15:7 16:15 25:2 25:6 32:13 25:13 27:22 30:12 31:15 32:11 32:14 33:9 33:16 35:1 36:17 36:24 37:1 37:9 37:19 37:21 38:4 38:8 38:10 38:10 70:4 70:19 85:16 98:11

**history(2)** 46:19 50:21
**hold(2)** 28:11 46:3
**holding(1)** 49:23
**honestly(1)** 83:25
**honor(114)** 3:6 3:12 3:17 3:20 4:1 4:12 5:4 9:21 11:6 11:14 12:2 12:12 12:20 13:2 16:22 20:6 20:9 20:19 21:7 21:8 21:12 21:18 22:2 23:19 24:3 24:11 24:18 24:20 33:19 34:1 34:8 34:9 34:11 38:21 39:5 40:2 40:17 41:3 41:7 43:15 43:21 45:11 45:15 45:24 46:22 47:1 47:6 47:15 47:22 48:5 48:14 48:20 48:21 49:14 49:19 49:24 50:6 50:10 50:18 51:21 52:1 52:19 52:24 53:4 54:14 56:17 57:6 58:7 58:11 58:16 58:23 59:20 60:2 60:11 60:15 60:18 61:11 61:14 61:18 65:15 65:17 65:25 66:22 67:13 67:15 67:18 68:21 69:12 73:8 73:19 79:2 80:2 80:9 80:18 80:22 81:9 82:16 85:9 85:15 91:2 93:12 94:2 94:25 95:2 95:10 95:22 96:4 96:24 97:4 97:12 98:1 103:2 103:10 103:20

**honor's(1)** 66:15
**honorable(1)** 1:17
**honors(5)** 33:3 42:8 51:8 61:25 71:7 72:3
**hope(4)** 6:7 23:23 54:4 89:24
**hopeful(1)** 48:5
**hopefully(2)** 48:24 102:21
**horse(40)** 4:18 6:3 6:4 6:10 7:4 7:17 8:13 15:1 23:8 23:17 25:19 28:25 32:15 32:18 32:20 33:11 33:15 38:11 49:10 49:12 49:20 50:2 50:8 50:14 51:3 52:2 53:21 54:2 54:19 55:20 57:2 57:22 58:2 61:9 62:2 64:3 66:10 68:6 76:10 98:20

**hour(6)** 77:25 78:1 78:25 79:22 80:16
**hours(2)** 51:6 94:18
**how(8)** 5:9 39:6 42:22 56:11 81:19 83:14 83:22 92:24

**however(5)** 33:3 42:8 52:15 63:22 74:24
**huawei(1)** 27:4
**huge(2)** 19:14 53:13
**i'd(11)** 17:22 24:4 39:6 39:11 62:2 65:24 91:10 92:25 97:20 103:2 103:5

**i'll(12)** 34:9 41:5 67:13 74:17 76:23 76:25 77:1 78:12 79:19 79:19 79:21 80:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| i'm(44) 9:15  17:24  23:25  25:9  29:18  45:21  48:2  48:21  48:23  52:24  55:10  55:14  55:17  55:18  56:9  56:12  57:19  61:22  63:14  67:22  68:16  76:21  76:25  79:8  79:20  80:22  83:16  83:17  83:20  84:5  84:19  84:21  84:22  88:8  89:11  89:8  89:21  93:5  93:7  93:19  96:4  96:7  97:16 | | interrelatedness(1) 19:7  intimately(1) 51:23  into(31) 9:18  9:19  10:7  11:14  12:18  14:11  14:23  15:1  16:6  16:21  22:16  25:5  29:22  30:22  34:6  39:3  42:11  49:1  55:12  55:18  58:9  58:24  59:13  62:5  62:17  90:22  91:16  93:9  100:13  101:12  102:21 | | juniper(1) 25:7  jurisdiction(4) 18:9  18:10  87:7  88:9  jurisdictions(2) 6:13  30:8  just(37) 3:17  11:2  19:1  21:8  26:19  39:6  39:11  42:14  45:24  50:13  53:8  53:14  57:3  57:19  58:15  58:17  59:16  67:13  67:22  68:21  69:24  71:3  72:25  77:1  77:3  79:6  81:11  81:17  82:5  83:11  90:23  95:16  95:22  95:25  96:5  101:25  102:1 | | let(6) 3:8  58:8  58:17  73:20  81:23  82:5  let's(1) 8:7  letter(3) 62:4  66:24  98:24  level(3) 48:12  48:18  52:18  liberty(1) 1:34  license(2) 30:23  30:24  liens(1) 10:1  life(1) 62:22  lifting(1) 18:1  light(2) 40:23  90:25  like(33) 5:21  5:25  12:4  17:2  19:16  22:13  22:13  23:19  24:4  24:5  33:21  38:24  38:24  39:6  39:11  55:7  55:10  55:11  55:21  59:24  62:2  65:24  76:10  76:15  76:16  76:16  76:25  77:1  81:17  83:10  91:10  102:17  103:5 |
| i've(4) 55:13  55:13  59:16  i.e(1) 93:16  idea(2) 3:21  83:15  identical(1) 54:9  identified(3) 23:5  43:1  71:21  identify(2) 41:19  41:21  ignore(1) 60:3  illegitimate(1) 60:8  image(1) 84:22  immaterial(1) 87:6  immediately(1) 96:17  implement(2) 13:7  13:14  implicate(1) 44:17  implicated(1) 42:23  implicates(1) 6:19  importance(1) 97:10  important(15) 5:4  26:11  40:3  44:25  45:4  45:16  50:22  51:19  64:25  72:15  74:25  75:14  97:13 | | intuitive(1) 5:17  inventory(1) 31:3  investment(1) 34:18  investments(1) 25:5  investors(2) 28:4  36:6  invite(2) 15:19  70:2  involve(3) 7:23  60:21  60:22  involved(14) 20:9  20:12  20:13  29:3  29:9  29:10  37:6  38:9  55:23  65:18  66:3  66:23  87:21  87:23  involvement(3) 19:20  37:9  66:2  involving(1) 16:14  ipla(1) 30:23  irrevocable(1) 87:2  isis(7) 5:6  5:9  6:2  7:11  12:6  13:2  16:24  issue(22) 18:4  41:20  43:20  44:3  44:12  44:13  45:19  46:13  46:22  47:2  48:2  59:25  68:15  68:19  76:7  86:7  91:16  91:17  92:1  92:13  92:15  92:16 | | justice(88) 3:10  3:23  4:7  17:5  17:7  17:13  17:22  18:2  20:3  20:21  20:25  21:4  21:8  21:13  24:8  47:13  48:24  51:24  52:11  52:21  53:3  55:15  61:24  63:11  63:15  63:15  67:6  67:15  69:3  69:5  70:1  70:9  71:1  71:5  71:10  72:17  72:20  72:23  73:5  73:9  73:13  73:16  73:23  74:1  74:2  74:15  74:19  74:20  75:1  75:2  75:13  78:7  78:9  78:22  79:4  79:6  79:16  79:18  79:24  81:4  81:14  81:17  82:7  83:14  83:22  84:2  84:3  84:13  84:16  84:20  84:21  85:3  85:6  85:7  85:10  88:7  89:20  90:5  90:11  90:17  90:21  95:16  95:19  96:2  97:14  97:18  102:10  102:21  justify(1) 65:8  keep(1) 78:12  kept(1) 54:17  kevin(1) 1:17  key(1) 76:6 | | likely(2) 15:10  27:18  likewise(1) 88:8  limitation(1) 98:21  limited(4) 24:22  27:5  41:4  line(1) 21:16  lines(3) 22:24  22:24  23:1  liquidity(1) 100:1  list(3) 41:25  42:1  42:16  listed(1) 23:12  listening(1) 84:17  lists(4) 26:18  26:20  42:2  42:13  literally(2) 55:24  56:11  litigate(1) 45:5  little(11) 3:14  5:7  5:8  17:15  43:22  59:24  70:18  77:3  82:18  83:1  97:20 |
| impossible(2) 8:10  60:3  improvements(1) 35:5  inc(2) 1:7  85:24  incidental(1) 55:22  include(3) 16:2  25:3  59:1  includes(4) 25:22  26:3  65:5  99:19  including(13) 28:3  28:18  31:8  31:9  32:24  35:14  36:5  46:14  48:6  50:24  50:25  65:4  98:21  incorporate(1) 10:7  incorporated(2) 12:18  24:23  incur(1) 29:11  indeed(5) 4:15  6:18  14:1  58:5  92:3  indicated(5) 74:20  79:7  84:4  95:17  99:25  indicative(1) 22:19  indiscernible(6) 17:10  63:22  81:5  85:12  89:7  98:13 | | issues(19) 6:8  8:6  30:19  43:2  44:18  48:4  48:10  49:6  51:2  51:21  61:11  61:20  69:25  71:21  71:22  76:11  78:17  78:18  91:18  it's(65) 4:7  6:3  8:16  8:21  8:24  8:24  17:22  18:24  40:25  44:14  44:25  45:12  45:16  46:3  46:3  46:10  47:15  49:1  53:19  53:19  55:14  56:20  57:3  57:4  57:6  57:14  57:15  57:16  59:24  60:8  62:10  65:4  66:24  68:9  69:19  69:20  70:3  70:3  70:14  72:7  73:25  76:23  77:18  77:25  77:25  78:9  80:3  80:5  80:22  82:8  82:21  83:2  83:4  83:12  84:23  85:7  89:20  89:22  91:11  91:23  92:15  93:11  95:15  96:24  104:4 | | kim(5) 1:32  103:5  103:8  103:10  103:14  king(1) 1:40  kingdom(1) 16:11  know(34) 4:22  10:9  34:15  40:22  43:7  43:13  44:13  45:3  45:5  45:6  45:9  45:25  46:7  51:23  53:25  54:15  55:16  55:17  56:18  58:18  59:22  59:25  60:7  60:10  60:15  71:4  73:20  76:15  76:22  76:25  77:18  77:25  78:2  102:18  known(1) 21:15  knows(2) 56:11  103:13  lack(1) 49:9  lacking(1) 41:24  laid(1) 78:17 | | live(1) 24:5  lives(1) 60:1  llp(6) 1:23  1:31  2:5  2:21  2:31  2:42  loaned(1) 30:24  local(2) 30:6  30:8  located(4) 6:21  19:22  20:11  41:22  logistics(3) 95:11  95:17  96:6  loi(7) 62:24  63:6  63:16  64:4  98:25  99:5  101:14  long(2) 30:9  91:11  long-term(1) 16:13  longer(1) 62:22  longest(1) 22:4  look(4) 60:18  61:4  63:25  78:12  looking(2) 3:9  78:24  looks(6) 44:2  55:7  56:5  76:15  76:16  80:25  lose(1) 96:6  lost(1) 102:15  lot(1) 55:7  lots(1) 23:6  lower(3) 26:1  35:22  99:22  lte(3) 4:23  25:11  34:25  luck(1) 103:9  ma    (2) 8:16  25:7  m.b.a(1) 34:22  m5b(1) 2:46 |
| induce(1) 33:11  industry(2) 27:2  34:16  35:16  37:1  industry's(1) 26:9  inevitable(1) 58:3  infinero(1) 27:8  inform(1) 78:13  information(17) 14:8  14:13  26:12  28:19  31:17  40:23  43:22  45:17  64:12  64:15  64:18  65:9  66:19  66:20  66:20  69:23  81:13  informative(1) 54:16  informed(1) 78:13  infrastructure(1) 13:10  initial(1) 85:12  input(1) 65:22  insert(1) 42:10  instance(1) 91:21  instances(1) 51:13  instructed(1) 42:22  intellectual(1) 30:2  intend(2) 32:10  87:5  intends(3) 15:15  15:24  31:23  intent(3) 62:4  66:24  98:25  intentionally(2) 32:10  44:6  interdependent(1) 22:20  interest(8) 7:25  14:3  14:14  14:19  28:17  29:17  37:3  38:3  65:1  65:6  86:22  95:6  interested(11) 8:4  8:15  15:18  23:6  25:18  28:6  32:9  32:11  36:25  62:14  100:22  internal(1) 56:11  internally(1) 5:5 | | it's(65) ...  itself(2) 31:24  60:16  i'm(1) 56:7  james(1) 1:33  2:6  43:15  45:24  jammed(1) 57:3  jane(1) 1:32  january(1) 35:8  jarrett(1) 104:9  jay(3) 2:43  20:6  65:15  jennifer(1) 1:44  job(2) 25:2  52:14  jobs(2) 50:5  101:5  john(2) 11:7  40:18  joint(5) 4:9  8:5  85:16  87:3  98:2  jointly(2) 1:5  87:5  jon(1) 2:32  journal(1) 15:22  judge(41) 1:18  3:10  4:6  17:5  20:7  20:25  21:9  24:7  47:12  51:23  67:3  67:15  68:13  69:7  69:23  72:17  74:3  74:16  74:19  77:15  78:20  78:22  79:18  80:12  81:21  82:5  82:7  83:25  84:10  84:13  85:15  89:13  89:16  90:15  93:3  98:1  102:7  102:25  103:22  103:24  judgment(4) 18:22  66:11  76:7  80:7  judicial(1) 57:7  july(2) 88:11  88:16  junctures(1) 56:25  june(3) 18:5  62:20  62:21 | | language(9) 10:2  10:7  11:15  42:10  55:2  93:8  93:14  96:15  96:20  large(5) 4:21  5:1  5:14  6:16  27:3  largely(1) 30:6  last(5) 15:17  72:4  72:5  103:7  lastly(1) 50:10  late(1) 84:1  later(5) 10:22  78:1  81:8  94:17  100:24  latham(2) 2:11  52:25  law(10) 51:24  52:15  54:16  61:14  61:17  68:19  71:14  71:23  75:4  75:7  layer(1) 53:18  lazard(10) 8:17  21:22  34:12  34:16  35:7  35:8  37:7  47:19  51:10  54:20  lead(1) 19:19  leading(1) 13:18  learned(1) 55:13  lease(7) 30:25  62:8  62:18  62:18  63:1  101:7  101:13  leases(1) 101:8  leasing(1) 62:14  least(10) 5:21  10:13  23:15  23:24  36:9  38:5  39:21  50:21  95:14  102:5  leave(2) 63:11  74:18  led(3) 37:16  51:14  51:14  left(1) 52:7  legal(5) 15:2  18:3  18:4  46:2  71:22  legitimate(1) 92:22  less(6) 3:15  89:19  89:20  89:20  89:22  97:20  lessons(1) 42:8 | | made(14) 7:9  20:14  36:14  41:5  54:18  57:18  62:16  66:14  67:16  72:6  89:21  91:11  93:22  mail(1) 15:23  main(1) 18:12  maintain(3) 48:18  48:19  50:23  maintaining(4) 48:1  48:9  48:12  51:2  major(8) 6:22  14:5  14:22  37:9  50:24  51:5  60:3  68:12  majority(1) 92:2  majorly(1) 51:10  make(23) 12:4  19:17  20:22  21:3  26:19  31:24  33:20  39:3  42:17  43:6  44:11  50:14  59:23  67:7  68:7  73:10  81:14  87:8  89:6  92:8  93:23  96:5  makes(1) 77:6 |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| making(7) 4:8 4:14 51:16 51:17 51:18 68:1 97:10 | | metro(12) 4:16 21:14 21:15 22:2 22:22 23:1 24:25 25:22 26:14 29:5 35:7 99:18 | | mutually(1) 42:16 | | not(113) 5:14 6:3 7:17 7:19 8:15 9:25 10:4 10:22 14:25 15:11 17:19 18:6 18:9 18:13 18:25 26:15 27:20 27:21 31:5 35:3 |
| | | | | mutually-acceptable(1) 94:10 | | |
| | | | | myself(2) 5:21 72:4 | | 37:20 42:12 44:1 44:5 44:15 45:4 45:4 |
| mallet-prevost(1) 2:4 | | michael(1) 34:10 | | naked(2) 7:10 80:4 | | 45:12 45:12 45:18 46:4 46:17 47:3 48:25 |
| mallet-prevost(1) 43:16 | | microphone(1) 17:17 | | names(1) 5:18 | | 49:12 50:8 50:11 50:14 50:17 53:11 54:9 |
| | | might(10) 21:1 32:8 32:11 39:7 41:14 | | narrow(1) 91:25 | | 54:14 54:15 54:23 55:2 55:6 55:17 55:17 |
| management(9) 7:1 14:17 14:20 23:7 | | 42:23 48:10 67:2 79:18 96:10 | | nasdaq(1) 23:12 | | 55:18 56:5 57:3 57:4 58:8 59:9 59:13 |
| 28:21 31:24 36:15 36:21 56:12 | | | | nature(2) 22:20 61:13 | | 59:13 60:8 60:21 60:22 61:5 61:8 61:16 |
| | | million(13) 4:20 23:10 23:13 23:14 29:13 | | nay(2) 71:11 71:15 | | 63:2 63:5 63:9 63:12 63:18 64:12 64:13 |
| managing(1) 34:11 | | 53:19 53:25 56:10 57:12 63:21 | | ndas(1) 36:21 | | 65:1 68:6 68:18 68:23 69:3 69:8 69:9 |
| manner(2) 79:22 86:23 | | 101:19 101:23 | | near(1) 5:14 | | 69:19 69:20 70:6 70:16 70:17 71:14 71:25 |
| manufactures(1) 13:8 | | | | | | 72:1 73:24 75:3 75:6 75:11 75:15 75:18 |
| manufacturing(1) 31:2 | | millions(2) 56:7 56:8 | | necessarily(2) 60:21 68:18 | | 75:25 76:2 76:3 76:9 76:21 76:23 |
| many(8) 6:11 8:8 18:20 28:15 36:18 48:3 | | mind(1) 5:3 | | necessary(9) 19:15 46:15 48:17 54:12 | | 76:23 77:7 78:13 83:17 84:23 87:5 89:1 |
| 51:13 56:11 | | mine(1) 55:2 | | 57:16 60:24 66:25 84:23 94:14 | | 91:6 91:8 91:14 91:17 93:6 93:7 94:17 |
| | | minor(1) 19:21 | | | | 96:7 101:10 |
| market(16) 1:10 1:25 5:13 13:22 14:5 | | minute(1) 9:19 | | necessity(1) 68:1 | | |
| 14:21 14:22 19:18 23:14 23:15 26:24 27:3 | | minutes(9) 78:2 78:25 79:23 81:20 83:24 | | | | note(3) 19:20 44:25 45:16 74:22 75:25 |
| 27:7 38:6 87:20 87:22 | | 83:25 84:12 89:25 97:19 | | need(9) 12:4 61:3 62:11 62:23 63:19 | | 89:3 102:12 103:5 |
| | | | | 73:15 79:17 83:23 100:23 | | |
| marketed(3) 6:15 19:14 22:4 | | mirror(1) 84:22 | | | | notes(1) 43:1 |
| marketing(3) 6:15 7:12 100:3 | | misinterpreted(1) 83:9 | | needed(1) 64:25 | | nothing(4) 20:8 47:21 48:7 57:4 |
| marketplace(2) 16:14 30:11 | | mix(2) 28:3 36:5 | | needs(3) 18:22 49:18 65:4 | | notice(5) 10:14 11:2 15:22 57:7 64:19 |
| marowitz(87) 3:10 3:23 4:7 17:6 17:7 | | mobile(2) 13:5 86:12 86:13 | | negotiate(4) 8:10 55:12 60:5 60:9 | | notify(1) 89:22 |
| 17:13 17:22 18:2 20:3 20:21 20:25 21:4 | | modifications(6) 93:22 94:12 95:9 99:14 | | negotiated(8) 8:21 22:15 30:21 32:23 | | notwithstanding(3) 14:25 20:10 93:14 |
| 21:8 21:13 24:8 47:13 48:24 51:25 52:11 | | 99:14 101:13 | | 38:18 55:6 58:4 59:14 | | november(10) 7:15 8:20 9:5 23:21 23:25 |
| 52:21 53:3 55:15 61:24 63:11 63:15 65:13 | | | | | | 24:2 87:9 87:13 100:25 101:1 |
| 67:6 67:15 69:3 69:5 70:1 70:9 71:1 | | modified(3) 76:8 93:14 95:2 | | negotiating(3) 37:6 55:15 75:10 | | |
| 71:10 72:18 72:20 72:23 73:5 73:9 73:13 | | moment(2) 78:11 90:23 | | negotiation(6) 25:18 31:8 35:3 44:18 | | now(19) 4:10 13:24 18:2 21:1 27:22 34:9 |
| 73:16 73:23 74:1 74:2 74:15 74:19 74:20 | | momentarily(1) 90:11 | | 55:15 57:13 | | 40:23 57:13 60:2 78:22 82:12 83:4 88:12 |
| 75:1 75:2 75:13 78:7 78:9 78:22 79:4 | | money(1) 50:13 | | | | 89:16 96:25 97:16 97:22 97:24 100:8 |
| 79:6 79:16 79:18 79:24 81:14 81:14 81:17 | | monies(1) 25:5 | | negotiations(20) 14:23 22:10 28:24 28:25 | | |
| 82:7 83:14 83:22 84:2 84:3 84:13 84:16 | | monitor(31) 7:8 16:9 20:7 20:8 20:11 | | 32:19 33:18 37:10 37:13 37:16 53:13 54:4 | | number(16) 19:14 19:14 23:4 30:18 39:13 |
| 84:20 84:21 85:3 85:6 85:7 85:10 88:7 | | 20:13 20:17 31:9 36:17 50:25 64:6 65:16 | | 54:17 55:21 55:22 56:22 56:23 57:9 57:11 | | 46:1 46:5 64:22 74:25 75:12 93:13 94:1 |
| 89:20 90:5 90:11 90:17 90:21 95:16 95:19 | | 65:17 65:20 66:3 66:6 66:11 66:14 66:18 | | 58:9 100:7 | | 94:6 94:11 94:16 94:19 |
| 96:2 97:14 97:18 102:10 102:21 | | 66:23 67:4 85:24 87:15 87:18 87:21 87:23 | | | | |
| | | 95:24 98:8 98:17 99:9 100:18 | | neither(3) 10:23 41:18 42:5 | | numerous(4) 12:21 34:10 36:7 37:8 |
| marowitz's(1) 71:5 | | | | net(1) 37:21 | | o'brien(8) 75:7 91:3 91:15 91:16 91:17 |
| massive(1) 55:8 | | monitor's(10) 17:8 17:9 20:5 20:15 65:19 | | network(3) 13:16 26:4 26:10 | | 91:18 92:13 92:25 |
| material(2) 17:8 72:13 | | 66:5 66:7 66:17 87:14 95:24 | | networking(4) 25:23 26:3 27:8 99:19 | | |
| materials(12) 28:7 32:1 32:3 36:8 44:4 | | | | networks(13) 1:7 6:17 13:5 13:6 13:15 | | object(7) 10:21 18:18 43:5 48:17 67:10 |
| 44:5 44:7 44:9 44:15 45:2 64:20 65:21 | | months(10) 15:17 18:21 19:14 22:8 51:2 | | 24:21 24:22 24:23 24:24 27:5 29:5 86:14 | | 73:1 88:20 |
| | | 55:25 58:8 62:24 93:21 103:6 | | 99:18 | | |
| matter(4) 21:14 35:8 73:4 104:5 | | | | never(2) 53:25 55:14 | | objection(50) 9:12 9:17 9:23 10:11 11:12 |
| matters(2) 35:12 89:18 | | more(21) 4:10 6:18 6:20 14:17 19:3 21:16 | | new(7) 1:23 2:8 2:24 25:5 36:19 73:6 | | 12:3 12:7 24:11 39:14 39:15 39:16 39:21 |
| max(1) 32:12 | | 22:13 22:21 44:12 49:24 52:18 55:24 | | news(2) 78:13 82:17 | | 40:1 40:2 40:5 40:14 40:20 40:22 40:24 |
| maximize(10) 13:25 20:16 27:23 32:12 | | 71:20 77:3 77:11 83:1 85:1 87:5 87:11 | | next(2) 21:14 81:20 | | 41:4 41:10 43:21 45:6 45:12 45:13 46:17 |
| 57:23 61:9 66:9 81:20 87:20 101:5 | | 92:15 93:7 | | nice(2) 5:21 8:24 | | 47:8 48:20 49:1 49:17 50:20 50:22 52:4 |
| | | | | niches(1) 27:6 | | 55:3 64:11 67:17 67:19 68:15 69:14 69:16 |
| may(34) 3:13 3:17 7:22 7:24 8:4 8:6 9:21 | | morning(5) 23:17 40:8 67:20 72:4 97:3 | | nichols(1) 1:22 | | 69:19 72:6 72:12 75:5 75:22 80:21 80:23 |
| 12:10 15:11 19:25 20:11 24:16 27:20 | | morris(1) 1:22 | | night(1) 72:4 | | 86:6 86:8 86:10 |
| 41:14 44:14 44:16 50:17 50:22 61:16 63:5 | | mosle(2) 2:5 43:16 | | nine(1) 62:23 | | |
| 65:11 67:3 70:13 76:23 79:14 80:10 80:11 | | most(5) 17:11 38:12 50:22 54:12 71:17 | | nnl(2) 63:6 87:1 | | objections(17) 4:12 9:8 10:5 12:8 39:8 |
| 80:12 82:13 89:19 89:20 94:20 102:3 | | mostly(1) 3:14 | | nnsa(1) 6:20 | | 39:23 50:19 51:22 69:6 69:15 69:19 70:23 |
| 103:12 | | motion(40) 10:14 10:17 11:17 11:20 11:21 | | nokia(1) 27:4 | | 75:1 88:25 99:9 99:10 99:12 |
| | | 11:22 11:23 17:18 20:23 21:2 24:24 30:16 | | non(1) 9:25 | | |
| maybe(1) 96:11 | | 34:6 34:14 57:19 57:20 60:16 64:1 65:12 | | non-granting(1) 65:8 | | objectors(1) 21:24 |
| mcfarland(8) 67:12 67:13 69:4 69:11 70:8 | | 67:8 67:11 69:10 73:6 77:10 80:8 81:8 | | none(2) 12:10 20:21 | | obligation(1) 91:22 |
| 70:11 71:2 71:4 | | 81:12 84:17 85:11 85:11 85:12 85:14 | | nonetheless(1) 5:5 | | obligations(2) 29:9 29:11 |
| | | 85:20 85:25 87:24 89:9 95:9 97:25 98:6 | | nonrefundable(1) 94:19 | | obtain(2) 16:5 60:23 |
| mckinsey(3) 25:8 25:9 25:9 | | 99:1 | | nor(1) 41:18 | | obvious(1) 36:24 |
| mean(2) 22:5 96:4 | | | | nortel(71) 1:7 3:7 6:12 6:20 8:16 12:14 | | obviously(10) 43:6 48:20 53:21 57:9 70:22 |
| means(2) 5:16 38:6 | | motions(6) 3:13 3:18 4:11 12:18 69:5 | | 12:22 13:5 13:8 13:13 14:1 14:2 15:15 | | 71:16 74:16 74:24 75:10 84:25 |
| meantime(2) 43:3 102:22 | | 102:22 | | 15:21 15:24 18:20 18:22 23:2 23:21 24:21 | | |
| measurement(1) 92:14 | | | | 24:22 24:23 25:6 27:12 28:1 28:3 28:4 | | occasions(2) 12:21 34:11 37:8 |
| measures(4) 15:25 16:1 31:23 65:1 | | move(3) 11:5 34:9 52:17 | | 28:10 28:23 29:16 29:21 31:23 32:7 34:25 | | occupied(1) 101:9 |
| median(1) 62:3 | | moving(3) 41:3 71:18 103:15 | | 35:7 35:19 35:20 36:2 36:4 36:6 36:15 | | occur(1) 30:1 |
| meet(3) 42:5 60:25 84:9 | | much(12) 4:8 6:18 17:6 17:19 19:17 23:19 | | 37:5 37:19 40:4 41:11 41:18 41:25 46:1 | | occurred(1) 60:4 |
| meets(1) 95:6 | | 34:8 80:9 83:14 83:22 102:25 103:10 | | 46:9 46:19 85:20 86:18 86:22 87:5 87:11 | | october(8) 1:13 3:1 10:11 85:22 98:8 |
| memoranda(1) 14:8 14:13 28:19 | | | | 87:20 88:3 88:11 88:16 88:23 98:6 98:12 | | 98:13 98:25 104:8 |
| men(33) 5:1 6:7 12:15 12:23 21:15 22:2 | | multi-service(1) 99:20 | | 98:14 98:18 98:24 99:16 99:25 100:3 | | |
| 22:6 25:17 26:2 26:8 26:16 26:23 27:10 | | multiple(2) 6:12 6:24 | | 100:17 101:3 101:11 | | off(2) 71:18 102:7 |
| 27:25 28:11 28:14 35:14 36:1 36:3 36:12 | | multiservice(1) 25:24 | | | | offer(4) 16:16 30:15 32:16 86:25 |
| 36:13 36:19 36:25 47:21 48:7 48:16 52:15 | | murray(8) 21:20 34:10 35:6 37:4 37:25 | | nortel's(17) 5:9 13:3 13:16 14:20 25:22 | | offered(1) 37:21 |
| 52:17 57:24 62:10 63:9 100:6 | | 38:22 38:25 39:3 | | 27:2 27:24 35:10 35:14 35:25 36:12 43:5 | | offering(1) 97:7 |
| | | | | 86:5 86:18 99:18 101:17 101:20 | | offers(3) 33:13 58:1 100:11 |
| mentioned(3) 64:5 64:22 91:2 | | murray's(2) 34:10 47:19 | | | | officer(4) 12:14 12:22 24:21 25:14 |
| mergers(2) 25:3 35:12 | | must(4) 30:1 76:7 87:8 100:24 | | north(8) 1:25 5:13 6:13 22:16 29:4 29:24 | | offices(1) 57:9 |
| merits(1) 74:25 | | | | 33:6 53:14 | | official(6) 7:7 16:9 24:9 47:14 47:16 50:23 |
| met(1) 37:7 | | | | | | |

| Word | Page:Line |
|------|-----------|
| **okay**(20) 3:16 10:19 20:25 43:12 46:23 49:3 57:11 59:7 59:21 63:16 72:14 77:22 82:20 82:25 84:6 85:10 92:6 97:12 97:14 97:18 | |
| **omitted**(1) 32:9 | |
| **once**(8) 5:17 8:25 12:13 36:14 42:25 70:14 83:11 91:20 | |
| **one**(47) 1:34 2:23 3:14 4:15 5:4 5:17 6:5 8:19 14:16 19:1 19:4 19:11 19:19 22:16 22:16 33:14 39:2 39:10 41:6 46:1 48:7 49:23 56:10 56:15 56:16 57:19 58:21 60:1 62:11 67:21 68:17 70:3 70:3 72:3 75:12 75:14 78:15 86:6 88:5 88:17 90:24 92:3 93:13 94:1 94:1 96:12 99:10 | |
| **one-third**(1) 33:7 | |
| **ones**(1) 23:22 | |
| **only**(15) 8:15 12:2 12:3 19:23 26:15 35:3 49:22 55:6 56:10 62:11 62:13 71:11 81:9 93:6 93:20 | |
| **open**(6) 16:24 23:16 33:20 45:19 65:6 | |
| **opened**(1) 23:14 | |
| **operate**(2) 13:21 38:7 | |
| **operates**(3) 5:22 26:23 101:15 | |
| **operating**(1) 7:2 | |
| **operators**(5) 13:6 13:7 13:12 13:14 86:15 | |
| **opinion**(6) 15:7 31:16 32:14 33:16 37:21 38:5 | |
| **opportunity**(6) 32:20 50:1 57:23 73:14 77:20 86:19 | |
| **opposed**(1) 73:6 | |
| **opposing**(1) 77:2 | |
| **optical**(8) 22:23 22:24 25:23 26:3 26:4 26:9 27:7 99:19 | |
| **option**(3) 70:10 70:11 71:11 | |
| **options**(1) 36:15 | |
| **oral**(1) 81:7 | |
| **order**(38) 9:19 11:15 28:11 42:11 44:8 48:1 51:25 62:16 65:4 65:8 66:16 72:9 73:2 74:14 78:4 79:15 79:20 81:1 81:5 81:11 81:15 90:20 93:9 93:17 95:2 95:14 96:13 96:14 96:16 96:21 97:1 97:11 97:11 99:2 99:5 99:6 101:11 | |
| **ordered**(1) 97:5 | |
| **ordering**(1) 76:14 | |
| **orders**(4) 10:2 10:7 10:8 64:25 | |
| **originally**(1) 28:15 | |
| **other**(46) 3:14 14:5 15:18 15:25 20:8 20:22 23:4 26:17 26:19 29:21 29:25 30:3 30:18 30:21 31:1 31:21 31:22 32:3 32:6 34:11 36:24 37:17 37:20 39:15 43:20 44:17 44:18 44:23 49:13 50:6 50:24 53:5 61:4 63:2 65:20 66:15 67:7 68:7 72:3 78:14 78:17 79:5 80:25 93:21 94:17 103:6 | |
| **others**(3) 6:20 24:15 27:6 | |
| **otherwise**(4) 16:16 44:7 63:9 94:21 | |
| **our**(43) 4:10 6:6 7:7 9:1 9:3 10:4 11:12 11:14 17:8 21:12 21:16 23:23 24:12 40:19 42:12 44:24 45:7 45:15 45:19 46:10 49:1 49:17 50:14 52:4 52:12 53:4 53:9 54:4 54:17 56:2 56:4 61:8 61:22 71:24 72:11 73:2 74:3 78:18 79:15 97:10 102:12 102:16 103:14 | |
| **ourselves**(1) 8:21 | |
| **out**(38) 6:16 7:14 8:3 8:20 10:6 17:24 18:2 19:10 20:11 22:1 42:23 54:24 55:2 56:4 56:10 57:14 63:8 63:22 63:24 64:20 64:23 65:3 65:9 65:24 66:11 67:17 67:21 72:12 77:3 78:6 78:17 81:10 89:10 90:11 92:21 99:1 101:22 | |
| **outline**(1) 39:6 | |

| Word | Page:Line |
|------|-----------|
| **outset**(1) 56:3 | |
| **outside**(1) 19:23 | |
| **outweigh**(1) 65:4 | |
| **over**(19) 13:14 15:10 22:8 26:5 27:19 37:20 51:4 56:24 66:2 74:21 75:19 76:5 81:19 85:16 92:25 96:5 98:2 102:3 102:4 | |
| **overall**(2) 24:3 32:19 | |
| **overrule**(1) 70:22 | |
| **overruled**(2) 69:6 69:17 | |
| **oversaw**(1) 25:13 | |
| **overseeing**(1) 25:16 | |
| **oversight**(1) 25:17 | |
| **own**(5) 33:15 60:2 65:21 74:24 93:7 | |
| **owned**(1) 41:11 | |
| **p.m**(13) 1:14 3:1 74:10 74:10 82:1 82:1 89:18 90:8 90:8 100:24 102:9 102:9 103:25 | |
| **p.o**(1) 1:26 | |
| **package**(3) 54:19 55:20 57:6 | |
| **page**(1) 72:7 | |
| **pages**(1) 53:15 | |
| **paid**(7) 33:6 33:7 61:1 91:6 91:6 91:19 92:12 | |
| **pain**(1) 97:20 | |
| **paper**(1) 82:12 | |
| **paragraph**(16) 11:16 12:1 19:21 57:20 65:19 66:5 66:16 66:18 66:22 68:15 68:17 81:10 82:19 82:22 83:3 88:16 | |
| **paragraphs**(2) 68:20 97:23 | |
| **parallel**(3) 28:24 85:14 97:25 | |
| **parameters**(1) 54:19 | |
| **park**(2) 2:7 2:23 | |
| **part**(9) 8:1 14:10 19:4 22:3 58:6 63:1 63:4 69:17 78:1 | |
| **participants**(2) 14:22 75:16 | |
| **participate**(3) 15:19 15:21 56:23 | |
| **participated**(3) 34:21 35:3 35:18 | |
| **participating**(1) 6:25 | |
| **participation**(1) 50:18 | |
| **particular**(17) 5:12 6:14 6:19 29:12 29:24 31:1 35:12 35:19 49:11 62:9 64:1 66:6 68:4 69:25 75:2 75:7 91:4 | |
| **particularity**(1) 41:19 | |
| **particularly**(1) 62:3 | |
| **parties**(34) 6:25 8:11 8:15 14:3 15:15 15:18 23:6 25:18 28:3 28:5 28:6 28:16 28:17 28:22 28:24 31:6 36:5 36:20 36:25 42:22 43:1 46:4 48:1 58:25 59:4 67:7 70:12 70:14 73:3 76:10 90:19 95:5 96:1 100:7 | |
| **partner's**(1) 93:6 | |
| **partnerships**(1) 25:4 | |
| **parts**(2) 54:12 67:10 | |
| **party**(9) 15:6 20:22 30:2 31:11 42:5 45:4 67:7 81:14 100:23 | |
| **pasierb**(1) 1:44 | |
| **passage**(1) 58:24 | |
| **past**(7) 4:3 5:8 16:8 21:17 23:19 60:4 | |
| **patrick**(1) 1:39 | |
| **pause**(2) 74:13 90:12 | |
| **pay**(4) 53:24 63:7 63:21 63:23 | |
| **payable**(8) 33:8 58:20 59:6 59:9 60:21 91:24 93:18 93:20 | |
| **payment**(3) 32:24 60:20 66:12 | |
| **payments**(3) 91:14 92:4 92:14 | |
| **pbgc**(3) 9:20 9:22 10:4 | |
| **pbgc's**(2) 10:3 10:8 | |
| **peculiarities**(1) 19:2 | |
| **pen**(1) 82:11 | |
| **penalty**(2) 63:7 63:21 | |
| **pending**(1) 99:6 | |
| **pennsylvania**(1) 1:48 | |

| Word | Page:Line |
|------|-----------|
| **penultimate**(1) 72:7 | |
| **people**(2) 19:14 83:3 | |
| **per**(1) 73:2 | |
| **percent**(7) 32:8 56:15 56:15 56:16 94:8 101:17 101:20 | |
| **perfectly**(1) 39:24 | |
| **perform**(2) 91:19 91:22 | |
| **performance**(3) 13:18 25:25 99:22 | |
| **performed**(1) 65:21 | |
| **perhaps**(2) 21:1 46:17 | |
| **period**(8) 7:16 7:18 7:18 7:20 22:4 36:20 56:25 69:13 | |
| **periodically**(1) 56:21 | |
| **periphery**(1) 53:5 | |
| **permit**(1) 71:7 | |
| **permutations**(1) 82:22 | |
| **personal**(2) 66:20 81:13 | |
| **personally**(2) 35:11 35:13 | |
| **persons**(1) 15:20 | |
| **perspective**(11) 17:25 18:3 53:9 67:24 69:16 69:25 70:15 70:16 71:9 71:12 96:17 | |
| **pertinent**(1) 54:12 | |
| **petition**(1) 28:13 | |
| **phone**(4) 5:23 13:5 40:8 86:14 | |
| **picked**(1) 83:6 | |
| **piece**(1) 8:4 | |
| **place**(15) 7:13 8:8 9:3 16:3 22:7 22:8 22:18 23:21 32:1 32:16 42:18 46:18 59:2 59:2 101:1 | |
| **placed**(1) 45:13 | |
| **places**(1) 93:9 | |
| **plan**(7) 18:7 27:25 29:18 29:19 36:1 36:12 88:15 | |
| **plans**(1) 28:11 | |
| **playing**(18) 48:12 48:18 49:4 49:7 50:3 50:9 50:19 52:18 55:1 55:3 55:6 55:7 55:7 58:8 67:22 67:25 68:5 75:15 | |
| **playoffs**(1) 102:2 | |
| **plaza**(1) 1:34 | |
| **pleading**(1) 52:12 | |
| **please**(6) 3:2 3:3 74:11 82:2 82:3 90:10 | |
| **pleased**(3) 81:2 90:18 95:8 | |
| **pleases**(1) 71:3 | |
| **pleasure**(1) 4:7 | |
| **plus**(5) 23:15 28:15 56:15 63:7 101:23 | |
| **podium**(3) 3:18 47:7 92:25 | |
| **point**(33) 7:13 10:6 10:25 12:16 12:24 24:4 32:19 39:7 43:8 45:15 45:22 51:16 52:4 52:15 56:8 59:22 61:2 63:22 64:9 64:9 65:24 65:24 68:16 72:3 72:5 72:8 72:16 73:18 74:4 74:18 78:25 81:10 91:11 | |
| **pointed**(3) 66:7 71:20 72:12 | |
| **pointing**(1) 92:21 | |
| **points**(9) 41:5 45:25 46:7 58:16 59:23 66:11 66:14 67:23 69:1 | |
| **portfolio**(1) 26:3 | |
| **portion**(3) 14:14 39:22 45:11 | |
| **portions**(2) 87:6 91:13 | |
| **position**(6) 25:6 33:15 53:20 55:12 66:17 100:2 | |
| **positions**(1) 52:12 | |
| **positive**(1) 88:23 | |
| **possible**(7) 16:5 19:18 42:18 60:6 68:22 74:9 97:20 | |
| **post-filing**(1) 36:20 | |
| **post-petition**(1) 91:21 | |

| Word | Page:Line |
|------|-----------|
| **potential**(29) 8:3 14:12 14:13 14:17 14:19 14:21 14:24 15:5 15:9 15:13 23:5 23:6 27:17 28:1 28:8 30:10 31:13 32:4 35:23 36:3 36:9 36:25 37:2 37:20 38:5 41:13 43:7 49:13 66:12 | |
| **potentially**(1) 15:18 | |
| **ppearances**(2) 1:20 2:1 | |
| **practices**(2) 30:7 35:15 | |
| **pray**(1) 95:1 | |
| **pre-filing**(2) 27:24 36:1 | |
| **precede**(1) 91:22 | |
| **precedent**(5) 54:6 61:2 61:3 61:3 72:2 | |
| **precedential**(1) 61:16 | |
| **prefer**(1) 37:20 | |
| **preference**(1) 49:9 | |
| **preferential**(1) 49:15 | |
| **preferred**(1) 6:5 | |
| **prejudiced**(1) 68:22 | |
| **preliminary**(1) 10:11 | |
| **premises**(5) 62:4 62:15 62:19 62:21 63:20 | |
| **preparation**(1) 14:6 | |
| **prepare**(1) 77:7 | |
| **prepared**(10) 14:7 71:21 76:9 77:20 79:7 79:12 79:25 95:3 97:1 97:16 | |
| **prerogative**(1) 55:5 | |
| **prescribed**(1) 61:14 | |
| **presence**(2) 5:15 38:10 | |
| **present**(5) 3:18 6:12 13:1 24:20 54:20 | |
| **presentations**(2) 14:7 14:17 28:21 36:21 | |
| **presented**(2) 53:10 54:5 | |
| **presents**(2) 6:8 53:21 | |
| **preserve**(4) 44:24 100:1 101:4 101:5 | |
| **president**(1) 25:7 | |
| **presiding**(2) 85:15 98:2 | |
| **press**(1) 22:4 | |
| **pressure**(3) 15:4 15:4 27:13 | |
| **presumably**(1) 9:11 | |
| **pretty**(1) 54:11 | |
| **prevailing**(1) 72:1 | |
| **prevent**(2) 64:25 65:2 | |
| **previous**(2) 69:5 88:8 | |
| **previously**(10) 25:9 32:5 34:21 34:24 36:18 81:2 85:18 88:2 88:15 98:4 | |
| **price**(13) 4:19 15:9 23:15 23:16 27:18 29:13 29:16 35:5 37:10 54:1 57:12 101:22 101:22 | |
| **principal**(1) 101:24 | |
| **principals**(1) 89:7 | |
| **principle**(1) 82:9 | |
| **prior**(34) 3:22 4:2 6:6 9:21 10:8 10:13 11:20 11:22 21:2 22:8 25:6 34:17 36:4 42:16 43:23 46:19 50:1 59:23 61:16 73:10 74:23 94:18 99:24 100:4 | |
| **private**(1) 101:24 | |
| **pro**(2) 56:18 63:4 | |
| **probably**(3) 22:3 42:19 97:18 | |
| **problems**(3) 52:16 52:16 71:19 | |
| **procedures**(53) 3:13 9:22 10:18 11:18 15:14 16:15 31:13 31:20 32:12 32:23 33:5 40:6 48:17 49:11 51:17 54:8 54:12 54:14 57:4 59:24 62:1 64:2 72:9 74:22 79:5 79:25 85:21 86:1 86:4 86:24 87:1 87:10 87:13 87:16 87:25 88:1 88:2 88:10 89:3 89:10 89:12 89:14 94:12 95:7 98:7 98:9 98:21 99:7 99:14 99:15 100:19 100:21 102:5 | |
| **proceed**(14) 3:22 3:23 4:3 6:9 7:10 12:10 21:25 23:21 24:16 39:7 39:19 42:25 57:1 57:1 | |
| **proceeded**(1) 28:23 | |
| **proceeding**(5) 6:24 8:13 18:6 24:12 75:25 | |
| **proceedings**(19) 1:16 1:51 28:10 31:7 51:1 63:10 65:6 70:19 86:3 86:7 86:10 98:11 99:10 99:12 99:24 100:4 100:5 104:5 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|

proceeds(1) 52:6

process(60) 4:11 6:5 6:9 6:15 6:15 6:24 8:1 10:25 13:16 16:1 16:6 18:10 18:15 18:25 19:3 19:10 19:18 20:2 20:13 21:18 22:7 23:2 25:16 26:8 30:15 31:24 32:6 32:7 37:6 38:1 40:5 41:24 41:25 42:7 42:11 42:24 43:8 43:10 51:1 51:15 52:13 52:13 56:9 58:24 62:15 68:3 69:11 75:21 80:5 81:13 86:24 87:18 87:23 88:13 88:14 98:20 100:3 100:19 100:22 101:3

processes(6) 6:6 16:3 32:1 46:18 48:4 61:8

produced(1) 1:52

product(1) 13:17

products(3) 13:7 25:24 99:21

professionals(7) 35:9 47:24 47:25 49:25 50:4 61:6 61:7

proffer(15) 12:5 12:8 12:15 12:17 16:20 21:25 24:4 24:12 24:16 33:19 34:6 34:9 38:21 39:3 39:3

proffered(3) 25:11 35:1 77:10

progress(1) 4:14

prohibited(1) 61:17

project(5) 5:5 5:6 5:9 6:2 21:16

prompt(1) 46:12

promptly(1) 46:12

proper(3) 12:6 64:19 64:19

properties(1) 30:25

property(2) 30:22 31:1

proposal(4) 19:5 30:14 90:21 95:23

proposals(1) 28:22

propose(5) 23:18 33:20 39:18 42:10 93:8

proposed(11) 10:21 16:15 23:20 30:13 74:21 75:3 75:6 75:11 78:18 101:2 101:2

proposes(1) 87:1

proposing(2) 7:12 8:18

pros(2) 54:1 57:2

prospect(1) 55:16

prospective(4) 16:2 26:16 65:22 68:12

protect(1) 45:7

protection(8) 28:10 41:23 43:2 43:4 49:6 51:23 67:22 68:14

protections(10) 32:17 32:24 33:6 33:10 33:13 33:17 38:9 38:17 52:1 55:20

protocol(4) 69:21 74:16 85:18 98:4

provide(19) 10:13 11:2 15:3 25:25 32:18 32:21 33:10 44:14 44:16 44:21 45:10 69:22 74:18 75:17 81:12 87:19 93:14 94:7 100:22

provided(10) 14:20 26:18 28:18 31:7 36:7 65:22 74:15 79:20 87:15 94:17

providers(1) 26:6

provides(8) 13:12 12:16 33:4 49:15 63:17 63:23 72:8 72:13

provision(2) 75:11 76:8

provisions(8) 61:15 85:17 92:2 92:13 93:11 93:23 93:24 98:3

public(1) 65:6

publicly-traded(1) 23:11

publish(1) 15:22

pull(1) 79:21

purchase(6) 15:9 27:18 29:13 29:16 53:14 57:12 62:22 87:16

purchaser(22) 26:16 59:8 62:13 63:1 63:3 63:12 63:13 63:18 63:18 63:19 63:23 68:6 68:6 70:16 72:10 75:11 75:11 75:17 75:18 76:4 76:5 98:15

purchaser's(1) 75:23

purchasers(3) 23:5 63:2 65:22

purchasing(1) 28:17

purpose(1) 69:23

purposes(2) 40:25 98:19

pursuant(9) 10:14 11:17 11:19 31:13 87:1 87:9 93:16 94:9 101:8

pursue(1) 14:24

put(15) 7:3 8:20 9:18 10:2 10:5 12:5 22:6 28:10 41:25 42:1 68:8 70:4 70:5 82:11 82:11

putting(2) 12:14 68:2

quadruple(1) 26:4

qualifications(2) 12:17 12:23

qualified(9) 15:20 37:12 87:7 87:12 94:16 94:17 100:20 100:23 100:23

quality(1) 13:18

quasi(1) 64:10

question(10) 18:3 18:5 18:8 50:10 57:10 70:2 71:9 71:10 71:17 71:23

questions(10) 16:25 17:1 17:3 19:25 20:19 31:25 33:21 65:11 67:2 71:6

quick(1) 16:5 32:2

quickly(6) 15:12 26:7 27:21 44:22 82:12 90:18

quid(1) 63:3

quiet(2) 7:18 7:19

quite(7) 4:11 6:16 48:5 48:21 48:23 56:20 69:3

quiver(1) 55:16

quo(1) 63:4

quote(1) 92:3

radio(1) 13:18

railroad(2) 5:16 5:24

railway(5) 5:16 5:22 6:23 13:12 86:15

railways(3) 13:11 86:14

raised(5) 43:23 64:10 74:25 75:22 88:25

range(1) 15:2 38:19

rapid(2) 13:23 26:25

rather(7) 7:25 22:24 89:25 92:15

reach(2) 22:14 92:8

reached(1) 90:19

react(3) 48:2 48:10 51:2

read(7) 39:19 39:21 48:21 48:24 57:19 90:22 96:15

reads(1) 72:8

ready(3) 21:11 81:21 85:8

real(1) 31:2

realized(5) 15:9 15:12 27:11 27:18 27:20

really(18) 6:2 8:12 45:10 45:12 45:13 46:3 47:23 51:9 51:19 53:25 57:17 62:11 70:16 82:22 82:23 84:6 92:15 95:13

reason(2) 76:23 88:20

reasonable(17) 20:16 32:19 33:1 33:2 33:18 37:23 38:9 38:19 44:11 54:22 65:1 66:13 66:25 69:2 87:19 91:23 94:13

reasonably(2) 46:9 54:20

reasons(7) 15:2 18:18 79:21 81:7 84:22 88:11 88:16

reassignment(1) 63:6

recall(2) 9:21 41:7

recanvas(1) 28:15

recanvassed(1) 36:18

recanvassing(1) 30:11

receipt(2) 30:14 69:14

received(4) 4:13 12:3 14:12 87:11

receiving(1) 75:19

recent(1) 17:11

recess(18) 3:25 74:3 74:5 74:6 74:10 74:17 74:21 78:23 81:22 81:23 82:1 84:12 84:14 85:3 90:6 90:8 102:9 102:23

recesses(1) 21:5

recitation(1) 11:11

recommend(1) 66:9

recommendations(1) 66:7

recommending(1) 20:17

recommends(2) 67:1 87:24

reconsider(1) 73:6

record(21) 9:18 10:18 12:5 12:7 12:18 39:12 40:13 48:6 72:16 81:7 81:12 86:11 90:22 95:2 96:13 96:14 96:19 97:5 97:10 99:1 102:7

recorded(1) 1:51

recording(2) 1:51 104:4

recovery(1) 19:19

reduce(5) 26:6 27:16 39:12 62:22 86:20

reduction(1) 62:12

refer(2) 68:21 88:15

reference(1) 89:6

referenced(1) 89:9

referred(2) 22:22 80:4

referring(1) 5:6

refund(1) 50:12

refundable(1) 68:10

refusal(1) 75:23

refuses(1) 61:9

regard(4) 13:8 25:10 34:25 73:5

regarding(4) 14:8 26:12 29:10 30:10

regional(1) 27:14

registrar(1) 78:12

rehash(1) 48:25

reimbursement(10) 33:1 33:3 58:20 59:10 66:12 68:18 68:25 91:6 93:23 98:22

reinitiated(2) 28:14 100:5

reject(1) 10:14

relate(3) 10:16 91:13 92:14

related(4) 29:19 30:8 85:21 86:21

relates(12) 4:16 5:9 12:5 12:17 22:16 22:17 42:19 42:20 45:19 68:1 91:3 92:3

relating(15) 6:22 9:24 10:18 10:23 11:15 12:24 24:25 30:25 31:2 41:10 41:14 41:15 57:24 66:19 85:11

relationships(2) 26:12 44:17

relatively(3) 7:16 19:21 86:23

release(1) 22:5

relevant(1) 90:24

relief(1) 40:12

remain(5) 15:10 26:12 27:19 46:7 50:2

remaining(5) 19:24 33:7 39:13 48:6 100:2

remedies(1) 46:13

reopen(3) 55:21 57:9 57:11

reply(2) 72:21 73:11

report(21) 9:16 17:9 17:9 17:10 20:9 64:5 65:19 66:5 66:6 85:23 85:25 87:14 87:17 87:19 89:11 90:18 90:8 98:8 98:17 99:3 99:9 100:16

reported(2) 20:9 65:19

reporter(2) 85:7 85:9

represent(6) 52:25 53:2 55:18 55:22 57:22 58:4

representation(3) 40:20 40:25 57:18

representations(1) 65:12

representative(1) 67:4

representatives(2) 37:7 37:8

represented(2) 37:12 101:17

represents(2) 30:13 101:20

reps(1) 60:23

repudiate(1) 63:9

request(7) 43:21 44:11 44:12 44:20 46:10 64:17 66:16

requested(1) 32:1

requests(3) 15:20 43:5 66:18

require(5) 6:9 19:3 76:4 89:4 89:5

required(13) 41:24 49:13 50:7 50:8 50:14 61:9 63:3 63:8 68:7 68:8 78:25 86:9 101:10

requirement(1) 94:19

requirements(4) 27:1 30:6 76:6 95:6

requires(1) 51:25

rescinded(1) 63:6

reservation(3) 9:23 40:2 73:7

reserve(3) 24:12 40:21 73:2

reserved(1) 43:5

reserves(2) 10:21 46:15

reset(1) 55:1 55:3 58:8

resetting(1) 55:6

resolution(6) 11:5 11:11 39:19 39:21 41:6 80:20

resolve(3) 40:21 89:17 92:1

resolved(5) 9:17 39:11 39:15 86:7 99:12

resources(1) 27:14

respect(35) 8:6 11:11 24:24 29:11 33:20 34:13 35:18 39:12 40:21 40:24 43:4 44:9 49:7 51:16 51:22 52:2 61:2 61:11 66:21 68:3 68:14 71:13 71:22 81:15 82:9 86:4 86:9 86:17 89:14 91:4 91:18 94:12 99:2 100:2 101:18

respond(4) 70:2 70:3 71:5 71:8

responding(1) 46:10

response(10) 12:9 16:19 20:24 33:24 34:4 39:1 67:9 72:22 73:12 81:16

responses(1) 46:12

responsibilities(1) 25:3

responsible(1) 25:17

rest(2) 62:12 92:13

restrict(1) 61:5

restriction(1) 61:5

restructuring(5) 18:7 27:11 35:10 35:11 35:20

result(10) 11:12 27:21 28:16 48:14 49:10 51:6 51:7 51:8 89:4 91:12

resulted(2) 35:4 35:22

resulting(1) 28:7

results(4) 6:7 24:1 51:9 51:15

retained(1) 35:7

return(1) 75:19

revenue(2) 101:18 101:21

revenues(2) 101:16 101:19

review(3) 65:21 66:8 86:17

reviewed(3) 36:12 66:24 81:2

revised(1) 97:11

revision(2) 81:12 93:15

revisions(1) 93:23

revisited(2) 56:21 57:2

riedel(37) 12:13 12:15 12:21 13:1 13:13 13:20 14:2 14:6 14:18 15:7 15:13 15:24 16:12 16:18 21:19 24:19 24:20 25:2 25:9 25:15 26:22 27:21 27:24 29:2 29:8 30:4 30:9 30:17 31:15 32:14 33:9 33:20 33:23 85:22 98:7 99:8 100:16

riedel's(3) 19:22 34:5 89:11

right(43) 11:13 15:8 16:17 16:20 18:13 24:16 34:2 39:2 40:15 41:2 41:16 43:5 43:19 45:20 46:16 51:4 55:2 58:10 59:11 61:20 61:22 63:9 65:5 72:11 73:22 79:9 79:24 80:2 81:3 82:12 83:3 83:11 83:21 84:5 84:11 84:15 90:1 91:9 94:15 95:3 96:14 102:17 102:20

rights(19) 9:24 10:21 24:12 29:16 40:3 40:21 43:3 44:24 45:8 45:15 46:15 58:25 58:25 59:4 59:5 59:9 73:2 73:7 94:12

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **rise**(8) 3:2  74:7  74:14  81:25  82:2  90:7  90:9  90:13 | | **see**(11) 19:5  19:16  19:21  38:14  78:4  78:23  80:20  81:18  88:11  89:17  103:16 | | **sir**(6) 3:5  11:9  78:8  81:23  82:15  91:1 | | **starting**(3) 32:16  32:19  78:25 | |
| | | | | **sits**(1) 41:11 | | **state**(2) 15:7  16:12 | |
| | | | | **situated**(1) 66:3 | | **stated**(1) 96:16 | |
| **rising**(2) 72:23  78:24 | | **seek**(2) 58:1  87:6 | | **situation**(4) 50:4  52:5  60:21  69:9 | | **statement**(3) 39:11  43:17  68:23 | |
| **risk**(2) 64:25  65:2 | | **seeking**(6) 24:25  44:8  52:2  64:2  64:2  64:7 | | **situations**(1) 61:4 | | **states**(7) 1:1  1:18  45:2  65:3  79:15  85:15  98:1 | |
| **robust**(1) 38:12 | | **seeks**(4) 98:12  98:18  98:24  99:2 | | **six**(5) 15:17  53:12  55:25  58:8  89:25 | | | |
| **role**(1) 53:4 | | **seems**(1) 4:12 | | **six-month**(1) 56:25 | | **station**(1) 78:10 | |
| **roll**(1) 7:14 | | **seen**(3) 48:24  50:2  69:8 | | **size**(1) 38:20 | | **stay**(2) 84:24  85:1 | |
| **room**(7) 6:25  8:15  14:9  14:15  16:6  28:21  38:4 | | **selection**(1) 25:19 | | **slippery**(1) 57:10 | | **steen**(1) 1:30 | |
| | | **sell**(7) 9:5  9:25  15:8  18:23  24:25  35:21  36:13 | | **slope**(1) 57:10 | | **steep**(2) 13:23  26:25 | |
| | | | | **smaller**(2) 5:4  42:19 | | **stick**(1) 96:8 | |
| **rooms**(2) 23:7  32:2 | | | | **snow**(1) 21:16 | | **still**(4) 5:14  36:13  69:17  103:12 | |
| **roughly**(2) 53:19  83:22 | | **sellers**(7) 13:21  14:7  14:11  14:16  14:23  14:25  15:3 | | **so-called**(1) 7:10 | | **stock**(5) 4:19  23:11  23:13  29:14  101:22 | |
| **rules**(2) 30:7  58:4 | | | | **sold**(4) 13:2  25:21  26:14  37:24 | | **stop**(1) 16:24 | |
| **ruling**(5) 76:19  76:21  79:5  79:17  90:25 | | **selling**(3) 13:24  19:1  27:22 | | **solely**(2) 64:13  71:9 | | **strategic**(6) 25:4  27:25  28:4  36:1  36:6  99:25 | |
| **run**(1) 6:16 | | **sells**(1) 13:9 | | **solid**(3) 32:16 | | | |
| | | **sense**(4) 7:10  21:3  59:16  77:6 | | **solution**(4) 19:12  25:12  39:22  43:9 | | **strategy**(5) 12:14  12:21  24:21  25:3  25:13 | |
| **said**(11) 18:11  46:8  50:14  52:11  52:12  56:6  56:22  66:4  73:23  73:25  102:4 | | **sensitive**(3) 45:4  45:18  65:9 | | **solutions**(4) 4:24  13:10  13:16  35:2 | | **strauss**(3) 2:20  24:9  47:13 | |
| | | **sensitivity**(1) 97:9 | | **solve**(1) 83:10 | | **streamlined**(1) 32:7 | |
| | | **sent**(1) 102:15 | | **solved**(1) 92:13 | | **street**(6) 1:10  1:25  1:40  1:47  2:44  15:22 | |
| **sale**(92) 3:13  4:10  6:6  6:7  9:21  9:22  10:2  10:7  10:8  10:22  11:11  11:20  11:21  11:22  11:24  14:7  15:10  15:12  15:25  16:1  17:11  17:11  18:7  18:10  18:15  18:16  18:18  18:21  19:12  20:13  22:7  22:15  25:10  25:12  25:16  25:18  27:18  27:20  28:2  29:3  29:4  29:18  30:17  31:16  31:23  32:15  32:22  33:4  34:25  35:1  36:3  37:5  38:17  40:22  40:24  46:2  51:18  53:11  59:1  59:2  59:3  62:16  63:1  63:4  63:22  68:2  75:5  86:18  87:18  87:23  87:25  88:3  88:18  88:20  88:25  89:4  93:24  98:12  98:13  98:19  98:23  99:4  99:7  99:17  100:3  100:8  100:9  100:12  100:14  100:18  101:2  101:3 | | **some**(23) 4:13  4:14  5:21  6:8  21:9  42:8  44:6  52:15  53:5  54:3  54:9  54:10  55:4  62:8  66:6  76:5  76:11  76:24  76:25  79:21  81:18  83:15  97:15 | | **someone**(1) 50:15 | | **stronger**(1) 33:14 | |
| | | | | **something**(9) 5:25  43:23  45:14  51:19  52:6  55:24  57:3  76:3  95:20 | | **structure**(2) 22:17  92:4 | |
| | | | | | | **structured**(1) 23:13 | |
| | | | | | | **subcategories**(1) 49:8 | |
| | | | | **somewhat**(1) 88:1 | | **subject**(17) 19:25  29:14  30:14  33:12  40:7  40:10  40:12  44:18  46:5  53:23  58:3  65:11  67:2  70:12  85:25  98:9  100:11 | |
| | | | | **soon**(3) 16:4  42:18  74:8 | | | |
| **sales**(14) 18:14  34:21  35:2  35:23  48:6  48:8  48:11  48:15  74:23  81:13  88:13  88:14  88:17  88:23 | | **serious**(4) 28:7  36:9  38:3  64:25 | | **sorry**(15) 9:15  22:5  23:25  25:9  29:19  61:22  68:16  68:17  79:8  80:22  83:20  84:20  93:19  96:4  97:15 | | **submission**(2) 69:20  70:16 | |
| | | **serve**(5) 57:25  75:23  76:2 | | | | **submissions**(10) 20:23  21:1  66:14  67:5  67:7  67:11  69:9  70:4  73:10  81:15 | |
| | | **served**(2) 34:19  35:11 | | | | | |
| | | **service**(4) 1:46  1:52  13:10  26:6 | | **sort**(2) 78:24  97:15 | | **submit**(3) 20:1  50:7  95:14 | |
| **salutary**(1) 65:3 | | **services**(4) 1:46  30:20  30:20  83:6 | | **sound**(3) 1:51  76:25  104:4 | | **submitted**(6) 15:14  28:22  31:20  65:21  96:7  100:24 | |
| **same**(13) 10:7  23:24  42:11  55:16  69:22  78:10  78:10  81:1  86:1  92:5  92:15  96:19  96:20 | | **session**(2) 85:5  85:6 | | **south**(2) 2:13  2:33 | | | |
| | | **set**(13) 19:10  42:3  63:6  64:23  65:9  67:17  67:20  68:19  87:13  89:10  99:1  100:21  101:22 | | **space**(6) 62:8  62:20  63:19  63:20  101:7  101:10 | | **substance**(1) 43:7 | |
| | | | | | | **substantial**(8) 5:13  5:14  6:20  7:6  27:2  35:4  50:13  68:8 | |
| **satisfied**(9) 46:9  46:18  46:19  46:21  86:8  88:8  88:22  89:8  90:21 | | | | | | | |
| | | **setting**(1) 18:2 | | **spaced**(1) 53:15 | | **substantially**(7) 22:25  29:4  29:7  51:15  86:1  87:2  87:4 | |
| | | **seven**(3) 19:23  28:21  36:22 | | **speak**(2) 8:11  96:5 | | | |
| **satisfy**(2) 46:1  64:24 | | **several**(4) 14:23  19:6  38:2  53:18 | | **speaker**(2) 103:22  103:24 | | **success**(2) 6:6  48:13 | |
| **say**(3) 3:8  8:7  8:14  8:24  17:22  44:14  44:19  45:4  45:10  47:15  51:12  54:13  56:20  71:11  71:25  73:15  73:18  78:9  79:19  82:8  84:17  89:17  95:23 | | **shall**(11) 10:13  11:16  84:19  89:17  93:18  93:20  94:7  94:13  94:14  94:16  94:20 | | **speaking**(4) 17:17  42:13  59:5  70:6 | | **successful**(13) 23:23  47:22  48:7  61:7  62:15  63:3  63:18  74:23  75:8  75:14  75:19  75:24  94:7 | |
| | | | | **special**(1) 54:3 | | | |
| | | | | **specializes**(1) 34:15 | | | |
| | | **share**(4) 5:13  13:22  23:15  26:24 | | **specific**(6) 6:8  26:12  27:6  30:6  38:16  44:19  44:20  46:11  82:22 | | **successfully**(4) 92:2  102:5  102:6  102:11 | |
| | | **shared**(2) 45:18  46:6 | | | | **such**(11) 10:18  11:20  13:6  27:4  27:7  35:4  41:13  41:20  43:5  64:17  93:15 | |
| | | **shares**(4) 23:15  25:12  29:14  101:23 | | | | | |
| | | **shop**(1) 7:19 | | **specifically**(2) 49:12  66:18 | | | |
| **saying**(4) 42:15  71:18  102:15  102:19 | | **shopped**(2) 7:20  7:21 | | **spend**(3) 56:7  90:23  95:10 | | **sufficient**(1) 31:17 | |
| **scale**(1) 27:1 | | **short**(4) 7:16  47:21  48:7  67:14 | | **spent**(2) 56:8  56:10 | | **suggest**(4) 5:24  51:7  54:14  102:11 | |
| **scar**(1) 59:24 | | **shorter**(1) 4:13 | | **splitting**(2) 8:7  8:9 | | **suggested**(1) 60:24 | |
| **scenario**(2) 35:22  35:24 | | **shorthand**(1) 82:23 | | **spoke**(1) 67:20 | | **suite**(3) 2:14  2:34  2:45 | |
| **scenarios**(3) 35:20  35:20 | | **should**(23) 5:24  17:9  18:9  18:14  19:20  50:16  52:10  57:1  63:2  63:22  64:4  64:5  64:6  64:9  67:19  69:16  70:19  71:17  75:18  78:16  89:9  90:11  96:11 | | **squarely**(2) 69:18  70:4 | | **summary**(1) 22:1 | |
| **schedule**(1) 83:18 | | | | **stage**(1) 9:22 | | **sums**(1) 50:13 | |
| **scheduled**(2) 7:15  100:25 | | | | **stake**(1) 70:17 | | **supplement**(4) 17:14  85:23  87:17  89:12 | |
| **schedules**(1) 99:4 | | | | **stakeholders**(4) 20:17  32:13  32:21  70:22 | | **supplementary**(1) 17:9 | |
| **schiff**(1) 2:31 | | | | **stalking**(41) 4:18  6:3  6:4  6:10  7:4  7:17  8:13  15:1  23:8  23:17  25:19  28:25  32:15  32:18  32:20  33:11  33:15  38:10  49:10  49:12  49:19  50:2  50:7  50:14  51:3  52:2  53:21  54:2  54:19  54:19  55:20  57:2  57:21  58:2  61:2  61:3  64:3  66:10  68:6  76:9  98:20 | | **supplier**(2) 13:5  40:3 | |
| **schuylkill**(1) 1:47 | | | | | | **supplies**(1) 13:9 | |
| **scope**(1) 37:10 | | | | | | **support**(6) 6:21  8:2  34:6  48:15  67:8  86:21 | |
| **sealed**(3) 64:15  66:19  68:3 | | **shouldn't**(1) 57:1 | | | | | |
| **sealing**(9) 64:4  64:7  64:21  65:8  66:16  73:2  73:6  99:2  99:5 | | **shown**(1) 50:21 | | | | **supportive**(2) 47:16  71:18 | |
| | | **sic**(1) 50:11 | | | | **supports**(1) 57:17 | |
| | | **side**(2) 10:10  12:23 | | | | **supreme**(1) 64:23 | |
| **seat**(1) 49:23 | | **sides**(1) 54:18 | | **stand**(6) 48:25  74:6  84:11  89:18  90:6  102:23 | | **sure**(13) 19:17  26:20  42:17  46:23  48:2  55:11  79:20  82:14  89:21  93:7  96:5  96:8  97:9 | |
| **seated**(4) 3:4  74:12  82:3  90:10 | | **siemens**(1) 27:5 | | | | | |
| **second**(7) 4:16  21:1  65:24  68:12  72:7  88:5  95:11 | | **sierra**(1) 64:23 | | | | | |
| | | **sign**(3) 16:2  81:2  97:1 | | **stand-alone**(1) 27:11 | | **surrender**(1) 63:20 | |
| | | **signed**(4) 16:4  32:5  36:14  38:13 | | **standalone**(2) 35:19  35:22 | | **suspend**(1) 27:15 | |
| **second-highest**(1) 76:1 | | **significant**(8) 26:13  27:9  27:13  53:22  66:1  66:2  68:24  87:7 | | **standard**(6) 13:5  68:3  86:13  91:4  91:15  97:19 | | **switching**(4) 25:23  25:24  99:20  99:20 | |
| **secondly**(2) 66:22  75:13 | | | | | | **sworn**(2) 85:22  98:8 | |
| **section**(6) 10:15  11:15  11:17  11:19  40:7  40:10  93:13  93:16 | | | | | | **system**(4) 5:22  6:23  86:12  86:15 | |
| | | **significantly**(1) 51:5 | | **standards**(1) 46:2 | | **systems**(4) 5:11  5:22  13:12  27:6 | |
| | | **signs**(1) 31:12 | | **standpoint**(3) 7:24  20:5  81:4 | | **table**(3) 8:11  38:13  38:15 | |
| **sections**(3) 60:19  67:21  68:21 | | **silly**(1) 69:4 | | **stands**(1) 74:24 | | | |
| **secure**(2) 13:12  86:14 | | **similar**(7) 5:12  6:7  22:17  23:3  23:22  26:17  30:20 | | **start**(5) 5:3  22:1  24:19  41:5  80:13 | | | |
| **security**(1) 13:18 | | | | **started**(2) 22:7  71:18 | | | |
| | | **similarly**(3) 29:22  48:11  49:19 | | | | | |
| | | **simple**(2) 76:24  76:24 | | | | | |
| | | **simply**(8) 11:1  12:21  19:25  44:23  60:8  63:20  69:24  70:23 | | | | | |
| | | | | | | | |
| | | **simultaneously**(1) 30:1 | | | | | |
| | | **since**(5) 9:2  14:2  28:13  34:16  55:24 | | | | | |
| | | **single**(4) 7:25  48:25  53:14  87:3 | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| **tae**(26) 17:1 17:4 17:5 17:15 17:18 17:20 17:24 20:3 20:14 44:8 61:24 61:25 63:12 63:14 63:16 65:13 72:21 73:11 73:13 73:14 79:20 88:5 88:6 95:17 95:22 96:2 | | **that**(301) 3:21 4:12 4:17 4:18 4:18 4:20 4:21 5:5 5:7 5:16 5:21 5:23 5:25 6:2 6:6 6:7 6:8 6:9 7:1 7:2 7:3 7:4 7:5 7:9 7:12 7:14 7:15 7:16 7:22 8:1 8:6 8:9 8:12 8:14 8:18 8:19 8:21 8:25 9:4 9:17 9:17 9:18 9:19 9:25 10:11 10:12 10:16 10:20 10:20 10:23 11:1 11:2 11:4 11:4 11:5 11:16 11:19 11:20 12:1 12:2 12:6 12:7 13:2 13:4 13:13 13:17 13:20 13:24 13:24 14:2 14:4 14:6 14:10 14:15 14:16 14:18 14:23 14:25 15:7 15:9 15:11 15:13 15:15 15:21 15:24 16:1 16:1 16:2 16:3 16:6 16:7 16:12 16:20 17:2 17:11 17:18 17:20 17:20 17:22 18:4 18:11 18:11 18:12 18:13 18:22 18:25 19:3 19:4 19:8 19:10 19:11 19:15 19:17 19:18 19:19 19:20 19:22 19:23 20:1 20:2 20:8 20:10 20:22 21:3 21:6 21:7 22:3 22:5 22:6 22:7 22:15 22:15 22:17 22:18 22:19 22:23 22:24 23:2 23:8 23:9 23:16 23:18 23:22 23:24 23:25 24:1 24:1 24:3 25:2 25:5 25:8 25:16 25:21 26:2 26:8 26:9 26:11 26:11 26:15 26:18 26:19 26:20 26:22 27:1 27:2 27:6 27:9 27:11 27:17 27:18 27:22 27:24 27:25 28:4 28:9 28:13 28:24 29:2 29:3 29:6 29:6 29:8 29:11 29:12 29:15 29:16 29:18 29:21 29:23 29:25 30:4 30:7 30:9 30:12 30:17 30:19 30:19 30:22 30:23 31:4 31:6 31:11 31:12 31:15 31:16 31:19 31:21 31:22 31:23 31:24 32:1 32:4 32:6 32:7 32:8 32:9 32:11 32:11 32:14 32:16 32:17 32:17 32:19 32:22 32:23 33:1 33:4 33:5 33:9 33:13 33:16 33:19 33:19 33:21 34:5 34:15 34:17 35:4 35:7 35:8 35:10 35:13 35:17 35:22 35:22 35:25 35:25 36:2 36:6 36:11 36:12 36:14 36:17 36:18 36:23 36:24 37:1 37:4 37:5 37:7 37:9 37:9 37:11 37:13 37:16 37:16 37:19 37:21 37:25 38:2 38:4 38:8 38:10 38:13 38:14 38:16 38:21 39:3 39:10 39:12 39:14 39:20 40:4 40:7 40:9 40:10 40:11 40:12 40:13 40:19 40:20 41:5 41:11 41:13 41:14 41:15 41:20 41:25 41:25 42:4 42:4 | | **that**(301) 42:6 42:6 42:6 42:11 42:15 42:15 42:17 42:17 42:18 42:19 42:20 42:21 42:24 43:8 43:8 43:9 43:10 43:10 43:10 43:13 43:23 44:4 44:4 44:4 44:5 44:6 44:7 44:10 44:11 44:12 44:14 44:15 44:15 44:17 44:19 44:24 44:25 45:1 45:2 45:3 45:4 45:7 45:8 45:10 45:11 45:11 45:11 45:15 45:16 45:16 45:17 45:19 45:22 45:25 46:8 46:9 46:10 46:12 46:16 46:18 46:19 46:20 46:21 47:2 47:3 47:15 48:3 48:3 48:4 48:9 48:10 48:12 48:17 48:21 48:21 48:23 49:8 49:9 49:11 49:14 49:20 50:8 50:15 50:16 50:17 50:21 50:21 51:4 51:7 51:8 51:8 51:9 51:14 51:14 51:19 51:22 51:23 51:25 52:1 52:2 52:8 52:10 52:13 52:15 52:16 53:4 53:10 53:10 54:1 54:3 54:6 54:6 54:8 54:13 54:14 54:14 54:18 54:19 54:24 54:25 57:5 57:8 55:14 55:14 55:16 55:18 55:20 55:21 55:25 56:3 56:16 56:18 56:20 57:2 57:3 57:5 57:8 57:13 57:21 58:2 58:3 58:18 58:18 58:19 58:20 58:21 58:23 58:23 59:1 59:3 59:5 59:6 59:12 59:14 59:16 59:16 60:2 60:4 60:6 60:6 60:15 60:19 60:21 61:4 61:12 61:13 61:15 62:3 62:5 62:7 62:12 62:13 62:18 62:21 62:25 63:4 63:5 63:8 63:11 63:14 63:17 63:19 63:20 63:22 63:23 63:23 64:5 64:10 64:11 64:11 64:12 64:12 64:14 64:15 64:17 64:18 64:18 64:20 64:23 64:24 65:3 65:5 65:7 65:7 66:3 66:4 66:4 66:6 66:6 66:11 66:18 66:19 66:19 66:25 67:7 67:18 67:20 68:5 68:15 68:16 68:21 68:24 69:9 69:9 69:9 69:13 69:14 69:17 69:23 70:3 70:4 70:5 70:10 70:21 70:24 71:10 71:12 71:13 71:25 71:25 72:3 72:5 72:5 72:8 72:8 72:12 72:13 72:15 73:5 73:22 74:22 75:5 75:11 75:14 75:15 75:15 75:17 75:17 75:18 75:20 75:25 76:1 76:3 76:3 76:3 76:7 76:8 76:20 77:16 78:1 78:7 78:13 78:14 78:15 78:16 78:17 78:19 78:23 78:23 79:7 79:11 79:12 79:12 79:17 79:20 80:16 80:20 80:25 81:1 81:2 81:11 81:11 81:17 81:18 81:21 82:8 82:11 82:12 82:22 83:15 83:19 | |
| **taeate**(1) 4:2 | | | | | | | |
| **take**(28) 3:24 4:16 7:12 8:6 9:2 15:25 21:4 23:20 31:23 57:7 59:1 59:2 63:19 63:20 69:8 73:20 74:3 74:5 78:2 78:23 81:21 81:23 84:14 85:3 96:20 97:18 97:21 100:25 | | | | | | | |
| **taken**(5) 74:10 74:17 82:1 90:8 102:9 | | | | | | | |
| **takes**(2) 8:8 42:18 | | | | | | | |
| **taking**(4) 7:13 21:2 22:7 25:6 | | | | | | | |
| **talk**(3) 8:3 12:24 77:11 | | | | | | | |
| **talking**(4) 8:15 50:13 59:23 94:4 | | | | | | | |
| **tandem**(1) 19:9 | | | | | | | |
| **taxes**(1) 63:8 | | | | | | | |
| **team**(8) 8:16 35:8 47:19 47:19 51:11 51:11 72:12 87:4 | | | | | | | |
| **teams**(1) 36:17 | | | | | | | |
| **technically**(1) 54:16 | | | | | | | |
| **technological**(1) 26:25 | | | | | | | |
| **technologies**(1) 27:4 | | | | | | | |
| **technology**(10) 13:4 13:11 13:23 26:4 26:9 34:16 34:18 34:20 86:13 86:16 | | | | | | | |
| **telephone**(1) 11:4 | | | | | | | |
| **telephonic**(1) 2:28 | | | | | | | |
| **telephonically**(1) 11:8 | | | | | | | |
| **tell**(6) 46:4 54:8 58:17 73:17 76:23 102:3 | | | | | | | |
| **tellabs**(1) 27:8 | | | | | | | |
| **ten**(6) 11:16 12:2 23:13 29:13 78:2 83:3 | | | | | | | |
| **term**(4) 30:10 49:9 62:19 62:23 | | | | | | | |
| **terminate**(1) 30:2 | | | | | | | |
| **terminated**(1) 93:15 | | | | | | | |
| **termination**(5) 30:1 60:20 91:14 92:4 | | | | | | | |
| **termination-type**(1) 92:15 | | | | | | | |
| **terms**(16) 6:17 16:23 25:18 41:21 42:24 49:9 53:23 64:21 66:16 66:24 76:10 100:8 100:9 100:12 101:8 101:12 | | | | | | | |
| **test**(3) 64:21 64:23 64:24 | | | | | | | |
| **testament**(1) 18:24 | | | **that**(69) 84:1 84:4 86:8 86:18 86:23 87:6 87:18 87:24 88:8 88:22 89:3 89:6 89:7 89:9 89:21 90:18 90:19 90:20 91:5 91:7 91:11 91:13 91:13 91:14 91:17 91:18 91:21 91:23 92:2 92:3 92:8 92:9 92:9 92:10 92:11 92:12 92:13 92:21 92:23 93:10 93:10 93:14 93:15 94:4 94:23 95:5 95:7 96:15 96:20 96:21 97:1 97:2 97:2 97:8 97:12 97:14 99:24 99:25 100:17 101:10 102:1 102:3 102:11 102:17 102:18 102:18 103:14 103:18 104:3 | |
| **testified**(2) 25:10 34:24 | | | | | | | |
| **testify**(61) 13:1 13:13 13:20 14:2 14:6 14:10 14:16 14:18 14:22 15:13 15:21 15:24 24:5 24:24 25:2 25:15 25:16 25:21 26:2 26:11 26:22 27:1 27:9 27:17 27:22 27:24 28:9 28:13 29:2 29:8 29:10 29:12 30:4 30:9 30:17 31:4 31:15 31:19 32:4 32:14 32:22 33:9 33:16 34:13 35:6 35:6 35:13 35:17 35:25 36:11 36:23 37:1 37:4 37:11 37:19 37:21 37:25 38:4 38:8 38:16 54:21 | | | | **that'd**(2) 78:2 96:23 | |
| **testimony**(6) 3:23 21:23 25:11 26:17 35:1 57:17 | | | | **that's**(38) 4:1 9:6 12:2 12:3 18:5 19:11 20:19 30:15 30:21 39:24 43:8 43:16 43:17 45:5 46:23 51:18 54:1 54:15 55:1 55:2 56:18 57:7 57:10 59:15 59:19 59:24 61:22 70:8 70:18 73:8 75:12 79:9 80:2 83:21 94:1 94:1 94:22 102:1 | |
| **tests**(1) 13:9 | | | | | | | |
| **than**(21) 5:7 6:20 7:25 19:3 20:8 22:13 22:24 35:23 37:17 42:20 44:23 55:24 70:18 71:20 80:25 85:1 88:2 89:25 92:16 94:18 100:24 | | | | | | | |
| **thank**(86) 3:3 3:19 3:20 11:13 16:22 17:6 17:20 18:1 20:3 20:6 20:7 20:21 21:12 21:12 24:14 24:18 34:8 38:23 39:4 39:5 39:24 40:15 41:2 43:19 46:24 46:25 47:1 47:9 47:10 52:19 52:20 52:21 52:22 58:10 58:11 58:12 59:21 61:18 61:19 61:25 65:13 67:6 71:1 71:2 72:17 72:17 72:19 72:20 73:9 73:14 73:19 73:21 74:9 74:11 74:19 76:14 77:15 78:20 80:9 80:18 80:24 81:9 81:24 82:3 84:10 84:15 89:14 90:3 90:4 90:5 90:10 93:1 93:1 93:3 95:10 95:22 96:2 97:7 102:25 103:1 103:2 103:10 103:21 103:21 103:22 103:24 | | | | | | | |
| **thanks**(1) 11:7 | | | | | | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

the(301) 20:13 20:13 20:15 20:17 20:23
21:1 21:1 21:2 21:3 21:11 21:14 21:14
21:15 21:17 21:19 21:21 21:24 22:2 22:3
22:3 22:4 22:6 22:8 22:11 22:13 22:14
22:14 22:17 22:18 22:19 22:21 22:22
22:23 22:23 23:1 23:2 23:7 23:8 23:9
23:12 23:14 23:15 23:18 23:19 23:21
23:22 23:24 23:25 24:1 24:2 24:3 24:4
24:6 24:9 24:14 24:20 24:21 24:23 24:24
24:25 24:25 25:5 25:10 25:12 25:12 25:16
25:17 25:18 25:18 25:19 25:19 25:21 26:2
26:3 26:8 26:8 26:9 26:13 26:14 26:14
26:15 26:16 26:16 26:17 26:20 26:22
26:23 26:24 27:1 27:1 27:7 27:10 27:10
27:12 27:17 27:19 27:20 27:20 27:22
27:23 27:23 27:25 28:1 28:2 28:6 28:9
28:11 28:12 28:12 28:13 28:13 28:14
28:15 28:17 28:20 28:22 28:25 29:3 29:3
29:3 29:4 29:5 29:7 29:7 29:8 29:9 29:9
29:10 29:10 29:11 29:11 29:12 29:17
29:17 29:18 29:18 29:19 29:19 29:20 29:23
29:24 29:24 29:25 29:25 30:1 30:2 30:5
30:7 30:7 30:9 30:10 30:11 30:13 30:13
30:14 30:15 30:16 30:17 30:20 31:1 31:5
31:7 31:8 31:8 31:9 31:9 31:10 31:10
31:11 31:13 31:16 31:16 31:18 31:18
31:20 31:20 31:21 31:23 32:2 32:5 32:6
32:6 32:10 32:12 32:17 32:18 32:22 32:24
32:24 32:25 33:3 33:4 33:5 33:6 33:6
33:7 33:8 33:10 33:11 33:12 33:15 33:16
33:18 33:19 33:22 33:25 34:2 34:2 34:5
34:5 34:6 34:9 34:12 34:12 34:12 34:16
34:17 34:17 34:19 34:20 34:25 34:25 35:1
35:2 35:3 35:4 35:7 35:14 35:16 35:17
35:22 35:23 35:23 36:1 36:2 36:2 36:3
36:11 36:12 36:13 36:14 36:15 36:16
36:16 36:17 36:18 36:19 36:20 36:25 37:1
37:3 37:5 37:6 37:6 37:8 37:9 37:10
37:13 37:13 37:15 37:15 37:21 37:22
37:22 37:23 37:25 38:3 38:3 38:6 38:7
38:8 38:10 38:11 38:12 38:15 38:15 38:16
38:17 38:18 38:21 38:23 39:2 39:3 39:9
39:12 39:12 39:13 39:15 39:16 39:16
39:17 39:18 39:19 39:21 39:22 39:22
39:23 39:23 39:24 40:1 40:4 40:4

the(301) 40:4 40:5 40:5 40:6 40:7 40:11
40:13 40:15 40:22 40:22 40:23 40:25 41:1
41:2 41:5 41:7 41:8 41:9 41:12 41:13
41:16 41:17 41:20 41:22 42:3 42:5 42:7
42:11 42:11 42:12 42:14 42:16 42:18
42:20 42:20 42:21 42:24 42:24 42:25 43:1
43:3 43:4 43:7 43:7 43:12 43:14 43:19
43:20 43:21 43:25 44:2 44:3 44:3 44:12
44:18 45:2 45:2 45:16 45:20 45:23 46:1
46:2 46:2 46:4 46:16 46:16 46:22 46:23
47:5 47:7 47:7 47:9 47:11 47:14 47:15
47:16 47:17 47:17 47:18 47:18 47:22
47:23 47:24 47:24 47:24 47:25 48:6 48:6
48:8 48:9 48:10 48:11 48:13 48:14 48:15
48:16 48:17 48:19 48:19 48:20 48:22 49:3
49:7 49:9 49:9 49:10 49:12 49:16 49:16
49:19 49:19 49:21 49:22 49:23 49:23
50:20 50:22 50:23 50:23 50:24 50:24
50:25 51:2 51:5 51:5 51:6 51:8 51:10
51:10 51:11 51:11 51:12 51:14 51:15
51:24 51:25 52:1 52:1 52:2 52:3 52:4
52:7 52:8 52:9 52:14 52:16 52:17 52:18
52:19 52:20 52:22 53:1 53:5 53:6 53:7
53:9 53:10 53:12 53:13 53:16 53:18 53:20
53:25 54:1 54:5 54:6 54:6 54:7 54:8
54:24 54:11 55:3 55:16 55:16 55:7 55:10
55:20 55:20 55:21 55:22 55:24 56:1 56:2
56:3 56:5 56:8 56:10 56:12 56:13 56:14
56:16 56:18 56:19 56:20 56:22 57:1 57:2
57:4 57:5 57:7 57:8 57:8 57:10 57:11
57:14 57:15 57:16 57:17 57:18 57:18
57:24 57:24 58:3 58:4 58:4 58:6 58:6
58:8 58:8 58:9 58:10 58:12 58:17 58:19
58:21 58:22 58:24 58:24 59:5 59:5 59:7
59:8 59:9 59:9 59:11 59:14 59:15 59:18
59:21 59:22 59:23 60:3 60:4 60:4 60:5
60:8 60:12 60:14 60:16 60:17 60:19 60:19
60:25 61:2 61:3 61:4 61:5 61:6 61:6
61:10 61:12 61:14 61:17 61:19 61:20 62:1
62:1 62:2 62:3 62:4

the(301) 62:4 62:8 62:9 62:10 62:11 62:12
62:13 62:14 62:14 62:16 62:17 62:17
62:18 62:18 62:19 62:19 62:20 62:21
62:22 62:22 62:23 62:23 62:24 62:24
62:25 63:1 63:1 63:1 63:2 63:3 63:4 63:5
63:6 63:9 63:10 63:12 63:12 63:13 63:16
63:17 63:17 63:18 63:19 63:22 63:23
63:24 64:2 64:3 64:3 64:4 64:4 64:4 64:5
64:6 64:7 64:7 64:9 64:10 64:17 64:21
64:21 64:22 64:23 64:24 64:24 65:2 65:2
65:3 65:5 65:5 65:8 65:8 65:9 65:16
65:17 65:17 65:19 65:20 65:21 65:21
65:22 65:24 65:25 66:2 66:3 66:4 66:6
66:7 66:8 66:8 66:9 66:10 66:11 66:12
66:13 66:14 66:16 66:16 66:17 66:17
66:25 67:4 67:8 67:11 67:16 67:17 67:20
67:21 68:1 68:5 68:6 68:10 68:10 68:12
68:14 68:14 68:15 68:16 68:16 68:17
68:17 68:19 68:19 68:22 68:22 68:24 69:6
69:7 69:9 69:11 69:12 69:13 69:13 69:16
69:16 69:19 69:19 69:21 69:22 69:23 70:1
70:5 70:10 70:11 70:12 70:13 70:16 70:17
70:18 70:18 70:19 70:20 70:22 70:23
70:23 70:24 70:24 70:25 71:3 71:8
71:11 71:11 71:11 71:13 71:13 71:14
71:15 71:17 71:22 71:23 71:23 71:24
71:25 72:5 72:5 72:7 72:7 72:8 72:8 72:9
72:10 72:10 72:12 72:12 72:14 72:16
72:19 73:3 73:4 73:4 73:6 73:6 73:14
74:12 74:14 74:16 74:19 74:21 74:21
74:22 74:25 75:3 75:5 75:7 75:7 75:9
75:11 75:11 75:12 75:14 75:16 75:17
75:18 75:19 75:21 75:22 75:23 75:24
75:24 76:1 76:1 76:4 76:5 76:6 76:6 76:7
76:7 76:8 76:10 76:15 76:18 76:19 76:21
76:23 77:3 77:5 77:8 77:9 77:10 77:12
77:14 77:16 77:19 77:23 77:23 77:24 78:5
78:7 78:11 78:11 78:12 78:13 78:14 78:14
78:16 78:18 78:18 78:21 79:1 79:3 79:5
79:6 79:9 79:12 79:15 79:16 79:20 79:21
79:24 79:25 80:1 80:3 80:3 80:4 80:7
80:8 80:11 80:14 80:15 80:15 80:17 80:19
80:20 80:20 80:22 80:24 81:1

the(301) 81:1 81:1 81:3 81:7 81:9 81:10
81:11 81:12 81:13 81:15 81:19 81:20
81:23 81:25 82:2 82:3 82:6 82:8 82:10
82:15 82:16 82:17 82:18 82:18 82:18
82:20 82:23 82:25 83:5 83:8 83:12 83:19
83:21 84:1 84:5 84:8 84:8 84:9 84:9
84:11 84:15 84:17 84:19 85:2 85:5 85:9
85:11 85:11 85:12 85:12 85:14 85:16
85:16 85:17 85:17 85:19 85:20 85:20
85:21 85:22 85:23 85:23 85:23 85:25
85:25 85:25 86:1 86:1 86:2 86:2 86:3
86:3 86:6 86:7 86:9 86:10 86:11 86:11
86:12 86:19 86:19 86:19 86:20 86:20
86:21 86:22 86:22 86:23 86:24 86:25
86:25 87:1 87:3 87:4 87:7 87:9 87:11
87:13 87:13 87:15 87:16 87:17 87:17
87:17 87:18 87:18 87:21 87:21 87:23
87:23 87:24 87:24 88:1 88:2 88:3 88:4
88:5 88:5 88:7 88:8 88:9 88:9 88:10
88:13 88:13 88:14 88:14 88:16 88:18
88:18 88:19 88:20 88:21 88:22 88:23
88:23 88:25 89:3 89:5 89:6 89:6 89:8
89:9 89:10 89:11 89:11 89:13 89:14 89:19
89:22 89:24 90:1 90:4 90:6 90:7 90:9
90:10 90:13 90:14 90:16 90:19 90:20
90:20 90:21 90:22 91:1 91:3 91:3 91:4
91:5 91:5 91:7 91:9 91:13 91:14 91:16
91:19 91:19 91:20 91:25 92:1 92:2 92:2
92:5 92:6 92:9 92:10 92:11 92:12 92:13
92:13 92:13 92:14 92:14 92:17 92:19
92:22 92:22 92:24 92:25 93:1 93:9 93:13
93:14 93:15 93:15 93:17 93:18 93:19
93:20 93:22 93:24 93:24 94:1 94:3 94:6
94:7 94:9 94:12 94:13 94:14 94:15 94:18
94:19 94:21 94:23 94:23 95:1 95:2 95:2
95:3 95:4 95:5 95:5 95:6 95:6 95:7 95:8
95:9 95:12 95:17 95:21 95:24 95:24 96:1
96:6 96:6 96:9 96:13 96:14 96:14 96:15
96:16 96:16 96:18 96:19 96:19 96:21
96:25 96:25 97:1 97:3 97:5 97:5 97:5
97:9 97:9 97:10 97:11 97:17 97:19 97:22
97:25 98:2 98:2 98:3 98:3 98:4 98:5 98:7
98:8 98:8 98:9 98:9 98:10 98:10 98:11
98:11 98:12 98:16 98:16 98:17 98:17
98:19 98:19 98:19 98:20 98:21 98:21
98:23 98:24

the(100) 98:25 99:1 99:1 99:2 99:3 99:4
99:5 99:5 99:6 99:7 99:8 99:8 99:9 99:9
99:10 99:10 99:11 99:14 99:14 99:15
99:15 99:17 99:17 99:19 99:24 100:3
100:3 100:4 100:5 100:5 100:5 100:6
100:7 100:8 100:8 100:9 100:10 100:12
100:12 100:13 100:14 100:14 100:16
100:16 100:17 100:18 100:19 100:19
100:22 100:22 100:25 101:1 101:3 101:4 101:4
101:5 101:5 101:6 101:8 101:8 101:9
101:10 101:11 101:11 101:11 101:13
101:14 101:15 101:18 101:18 101:22
101:22 101:25 102:3 102:5 102:7 102:7
102:8 102:10 102:11 102:14 102:16 102:17
102:20 102:22 102:22 103:1 103:4 103:6
103:8 103:11 103:11 103:17 103:19 103:21
103:23 103:25 104:3 104:4 104:4 104:5

their(24) 14:7 16:9 28:14 29:23 37:2
39:23 43:1 45:12 46:13 46:15 47:7 49:22
50:4 50:16 50:17 55:2 55:2 57:24 60:5
68:9 75:20 87:9 89:17 100:5

them(19) 4:13 8:5 11:2 15:19 21:23 21:25
24:5 42:2 43:11 44:21 45:6 45:10 50:2
54:13 54:25 58:7 64:16 71:21 82:24

themselves(1) 47:18

then(30) 3:24 3:24 12:10 16:21 24:16
39:12 39:21 39:22 42:25 43:1 45:14 47:6
49:5 49:25 51:7 56:9 56:12 62:25 62:25
63:20 65:11 70:1 71:15 84:11 85:9 90:2
92:11 94:7 96:20 102:24

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|

**there**(64) 4:17 9:17 16:25 18:11 18:19 19:23 20:22 22:4 22:14 23:4 29:6 30:4 30:22 36:24 38:12 38:13 39:7 40:2 40:10 41:4 41:5 43:2 43:21 44:4 44:14 45:1 45:17 48:3 49:7 50:10 52:5 52:6 52:10 52:15 58:18 58:19 58:22 58:23 64:11 65:7 66:1 68:4 68:23 69:13 70:4 71:19 72:3 75:8 75:15 75:15 86:6 87:12 88:21 88:24 91:13 91:18 92:9 92:19 93:5 93:11 96:10 97:13 97:15 102:16

**there'll**(1) 30:23

**there's**(14) 5:17 32:5 38:14 44:22 46:13 46:21 47:2 47:2 56:9 57:4 73:15 92:20 97:14 100:25

**thereafter**(1) 87:11
**therefore**(3) 20:17 41:22 63:25
**thereto**(2) 76:6 89:12

**these**(46) 3:18 4:12 10:5 14:4 14:5 14:24 15:3 16:1 16:4 16:6 22:10 27:10 28:2 28:16 28:24 29:20 30:12 31:4 31:5 31:6 31:14 31:22 32:11 35:11 36:4 37:13 38:5 45:1 48:11 51:1 51:19 52:7 52:12 52:16 54:5 57:4 60:1 60:1 69:15 76:9 76:11 76:24 77:13 99:12 101:8 101:14

**they**(36) 11:4 16:8 21:8 30:5 32:9 32:23 33:8 33:10 41:14 44:11 44:15 44:16 44:19 45:13 45:14 46:20 49:21 50:16 50:17 54:11 54:21 55:11 56:7 56:23 60:6 61:16 62:15 64:17 66:9 66:13 66:25 78:9 84:4 84:24 84:25 89:17

**they'd**(1) 45:9
**they'll**(1) 49:22
**they're**(8) 44:13 54:9 55:1 55:3 58:6 60:7 85:1 102:19

**they've**(2) 56:25 63:8
**thing**(3) 18:13 81:10 83:2
**things**(11) 9:18 10:10 12:23 16:23 44:20 53:9 54:24 61:13 64:1 76:24 103:6

**think**(105) 3:21 4:3 4:8 4:14 6:3 6:9 8:14 10:9 11:5 16:24 17:25 18:4 18:19 18:24 19:16 20:25 21:3 21:24 39:7 39:14 39:15 40:12 41:6 41:20 42:14 42:18 42:22 42:24 43:8 43:17 44:3 44:10 44:12 44:18 44:25 45:9 45:16 45:19 46:8 47:15 49:1 49:18 50:20 52:13 52:13 55:19 56:6 56:20 57:7 57:14 57:15 57:16 57:18 58:22 59:4 59:12 59:14 59:19 59:22 61:15 61:21 65:2 69:1 71:10 73:15 74:2 76:3 77:16 77:20 77:22 77:25 78:1 78:3 78:22 80:4 80:5 82:8 82:17 82:18 83:10 83:19 83:21 83:25 90:24 91:10 91:14 91:17 92:1 92:12 92:20 92:21 92:24 94:2 95:5 95:13 95:22 96:3 96:10 96:15 96:17 97:6 97:12 97:22 102:19 103:18

**third**(16) 4:21 5:1 14:3 15:6 39:16 51:21 51:24 51:25 60:3 62:3 62:9 62:14 71:14 72:1 75:4 75:6 91:4

**third-floor**(1) 62:19
**thirty**(1) 83:24

**this**(164) 3:23 4:9 5:6 6:15 6:18 6:22 7:13 7:20 7:22 10:25 11:6 11:16 11:16 12:16 12:24 13:8 14:10 16:23 18:6 18:13 18:16 18:21 18:23 19:2 19:5 19:12 19:12 19:17 19:18 19:20 19:24 20:1 20:2 22:20 23:17 24:4 24:14 28:9 25:10 26:17 27:3 30:10 34:13 34:24 36:14 38:9 38:20 39:7 40:8 40:12 42:9 42:19 43:22 46:14 47:17 48:14 48:18 49:21 50:21 50:21 51:13 51:24 52:4 52:13 52:14 53:5 53:10 53:11 53:13 53:24 54:7 54:15 54:20 55:3 55:8 55:12 55:14 55:23 55:23 56:6 56:8 56:19 56:20 56:24 57:6 57:11 57:17 57:18 61:3 61:15 61:17 61:21 62:3 62:5 62:15 63:4 63:9 64:1 64:9 65:12 65:18 65:25 66:5 67:19 68:4 68:13 69:5 69:10 69:22 69:22 70:6 70:20 71:9 71:19 71:23 72:4 73:18 74:3 74:18 75:5 75:9 76:6 76:16 77:17 81:3 81:4 83:4 83:6 84:19 84:24 85:10 85:13 85:16 85:19 85:20 86:7 86:9 86:21 87:22 87:25 88:3 88:9 88:10 88:18 88:22 89:2 89:13 91:20 92:4 93:8 93:10 95:6 95:20 96:7 96:11 96:18 97:11 97:24 98:2 98:5 98:6 98:16 103:6 103:12 103:15

**those**(46) 9:2 9:3 10:9 19:8 29:12 32:8 35:2 36:20 36:23 42:1 43:6 44:6 44:9 46:7 47:20 48:1 48:4 50:18 51:14 58:24 58:25 59:5 59:8 61:11 61:15 63:20 64:15 65:12 66:14 66:21 67:1 67:23 68:9 68:14 68:21 69:1 69:24 70:9 71:21 71:22 76:2 88:17 91:24 94:25 95:9 97:11

**though**(5) 6:2 21:9 33:12 54:3 92:14
**thought**(2) 56:25 71:8
**thousands**(1) 56:11
**three**(17) 4:21 5:2 22:8 28:8 28:22 28:24 36:9 39:7 39:13 49:2 56:15 63:21 67:20 81:11 88:19 94:11 99:9

**threshold**(3) 18:3 18:4 44:13
**through**(20) 9:19 15:9 15:16 22:25 27:18 30:15 33:17 38:1 42:21 66:4 68:20 69:12 71:20 71:22 79:19 82:12 97:19 99:13 99:13 100:22

**throughout**(4) 7:20 31:8 49:17 51:1
**thursday**(1) 3:1
**thus**(4) 27:19 47:17 48:8 48:15
**tightly**(1) 58:6
**time**(32) 7:13 7:16 7:21 10:25 15:8 15:10 18:16 22:4 27:19 34:17 37:9 44:23 55:16 61:21 73:6 76:11 77:3 77:17 78:10 78:10 79:17 82:8 83:2 83:14 83:22 84:19 88:18 89:2 89:7 92:7 96:20 103:7

**timeframe**(1) 7:2
**timeline**(2) 7:4 15:6
**timely**(1) 45:12
**times**(2) 15:23 37:14
**tinker**(1) 1:39
**tinkered**(1) 70:21
**tissue**(1) 59:24
**title**(1) 29:17
**today**(23) 3:12 4:15 7:16 7:21 10:5 11:8 12:13 23:14 23:24 31:21 47:21 53:4 53:9 53:12 55:22 58:7 64:14 77:3 78:4 81:8 83:4 85:11 90:20

**today's**(3) 23:15 40:24 57:9
**together**(7) 7:3 8:5 41:25 42:1 51:1 79:21 83:13

**tomorrow's**(1) 97:4
**tonight**(2) 95:14 96:7
**too**(1) 50:8
**took**(2) 22:7 54:10
**top**(1) 80:15
**toronto**(1) 2:46
**total**(2) 4:19 23:16

**touch**(2) 62:2 67:23
**touched**(1) 68:13
**track**(1) 48:6
**trademark**(1) 30:23
**training**(1) 83:18
**transaction**(76) 4:17 5:6 6:2 6:19 7:3 7:11 7:17 7:22 8:8 8:8 8:18 9:5 12:6 12:16 13:3 14:5 16:24 18:15 22:12 22:12 22:13 22:14 22:19 23:9 23:12 24:1 28:25 29:9 29:10 30:13 31:18 32:18 37:16 37:18 37:22 38:9 38:19 41:8 41:18 42:3 42:8 42:9 46:4 52:9 52:17 53:13 55:23 56:9 58:18 60:3 60:6 61:1 65:18 65:25 66:1 66:22 68:24 74:24 76:1 78:14 78:15 78:18 78:19 79:13 80:1 86:11 88:17 88:24 89:1 91:8 92:9 93:18 93:19 93:21 99:17 101:11

**transactions**(19) 4:22 6:1 9:22 16:7 16:13 26:19 30:10 30:21 31:21 35:3 47:17 54:8 55:8 60:1 61:17 65:18 68:4 88:8 100:14

**transcriber**(1) 104:10
**transcript**(4) 1:16 1:52 84:25 104:4
**transcription**(2) 1:46 1:52
**transfer**(4) 15:6 29:16 29:22 100:9
**transferred**(1) 41:14
**transition**(2) 30:19 30:20
**transport**(2) 25:25 99:21
**treat**(1) 56:16
**treated**(1) 26:20
**treatment**(3) 44:9 45:1 49:16
**tricky**(1) 83:2
**tried**(3) 17:17 60:6 91:25
**troglodyte**(1) 5:21
**trouble**(1) 82:23
**true**(1) 45:5
**truly**(1) 48:5
**trustee**(3) 1:38 1:38 31:10
**try**(6) 8:3 77:13 89:23 93:6 96:7 97:19
**trying**(5) 54:25 55:1 82:11 91:15 92:22
**tuned**(1) 85:1
**tunnell**(1) 1:22
**turn**(1) 92:25
**turning**(2) 50:20 88:12
**two**(34) 3:12 4:10 4:15 5:15 6:1 19:7 21:18 22:15 23:9 29:23 30:1 30:5 36:16 38:5 39:13 39:13 41:5 45:25 46:5 52:16 55:8 57:8 60:4 62:11 70:25 84:9 87:4 87:11 88:18 94:6 94:9 96:10 97:23 101:8

**two-fold**(1) 70:11
**two-thirds**(1) 33:6
**type**(4) 51:6 52:1 69:6 96:20
**types**(1) 61:15
**typical**(1) 38:19
**u.k**(2) 31:11 36:17
**u.s**(27) 4:20 6:14 18:25 31:10 40:11 64:13 64:13 68:19 69:7 69:20 69:25 70:16 70:18 71:9 71:12 85:16 85:19 86:23 86:6 86:10 89:13 98:2 98:5 98:10 99:10 101:23

**ultimate**(2) 63:2 100:20
**ultimately**(1) 89:4
**unable**(1) 14:4
**unclear**(1) 68:9
**unconventional**(2) 57:5 57:5
**under**(12) 7:2 18:6 33:18 38:18 63:10 75:4 75:20 76:2 76:8 88:14 92:24 100:5
**understand**(10) 46:16 53:4 58:2 58:3 60:7 61:20 66:13 76:19 92:17 97:9

**understanding**(1) 40:13
**understands**(1) 77:9
**understood**(1) 78:5
**undertaken**(1) 86:17 87:22
**uneven**(8) 49:4 49:7 50:3 50:8 50:19 67:21 67:25 68:4

**unfairness**(1) 68:22
**unfold**(1) 69:10
**unidentified**(2) 103:22 103:24
**united**(5) 7:1 1:18 16:11 45:2 79:15 85:14 98:1

**university**(2) 34:22 34:23
**unless**(4) 12:7 15:12 20:19 24:5
**unlike**(2) 7:2 58:19
**unlikely**(2) 7:2 58:19
**unreasonable**(1) 64:17
**unredacted**(1) 99:5
**unsecured**(4) 16:10 24:10 31:9 99:11
**unsold**(2) 15:11 27:19
**unsolicited**(1) 15:20
**until**(8) 7:13 43:6 44:13 45:9 70:20 89:18 97:3 102:3

**upgrade**(1) 26:7
**upon**(8) 46:19 47:23 68:10 93:16 93:19 93:20 96:18 101:12

**urge**(1) 8:4
**use**(3) 5:23 57:8 84:19
**used**(2) 62:10 82:8
**uses**(1) 22:24
**using**(3) 32:15 32:20 80:13
**value**(26) 13:25 14:22 15:11 20:16 23:16 23:17 26:13 26:15 27:9 27:10 27:20 27:23 32:12 32:21 33:14 35:23 37:21 37:23 38:1 38:11 57:24 61:9 66:9 86:20 87:20 101:5

**variant**(1) 13:11
**various**(8) 7:7 7:23 13:7 30:19 35:14 36:15 67:21 69:12

**vendors**(1) 98:15
**verify**(1) 55:20
**vernacular**(1) 21:16
**version**(1) 81:11
**versus**(1) 35:20
**very**(39) 4:8 4:20 8:14 8:22 11:25 12:4 17:6 19:11 20:12 22:12 22:17 23:1 23:3 23:19 23:21 34:8 49:8 51:1 52:7 52:13 53:6 53:22 56:3 56:19 57:10 63:10 61:7 65:9 66:5 66:6 67:13 71:8 72:25 80:9 90:18 91:11 99:18 102:25 103:10

**veto**(3) 51:4 75:19 76:5
**viability**(1) 35:18
**viable**(3) 18:19 88:21 89:1
**viacella**(1) 5:24
**vice**(1) 25:7
**video-intensive**(2) 26:1 99:23
**videoconference**(3) 2:39 85:14 97:25
**view**(14) 14:20 16:14 16:15 20:15 27:22 30:12 32:11 36:24 37:19 45:16 66:25 71:24 96:18 100:19

**vigano**(8) 2:32 11:6 11:7 11:10 40:16 40:17 40:18 41:2

**vigorous**(1) 37:14
**vigorously**(1) 38:13
**virtually**(1) 81:1
**voice**(3) 13:17 13:19 70:16
**volume**(3) 22:25 42:18 42:20
**wacker**(2) 2:13 2:33
**wait**(1) 90:1
**wall**(1) 15:22
**want**(11) 10:6 45:10 45:13 51:12 51:12 53:8 69:18 82:23 83:10 84:25 96:5

**wanted**(3) 60:18 95:23 95:25
**wants**(6) 55:5 57:8 63:13 64:12 71:4 78:4
**warranted**(3) 18:16 88:18 88:24
**warranties**(1) 60:23

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| was(80) 6:23  6:24  7:2  7:4  7:5  7:9  10:11 18:8  18:20  22:4  22:6  23:7  23:16  25:6 25:11  25:17  27:25  34:17  34:18  35:1  35:7 35:21  36:1  36:13  36:14  37:6  37:10  37:11 40:2  40:5  40:5  41:22  41:23  41:24  41:25 42:13  43:21  44:6  51:10  51:10  53:10  54:1 54:17  55:24  56:2  59:14  59:23  64:11  69:19 69:20  70:20  70:20  71:8  72:3  73:16  73:24 79:9  81:11  85:13  85:16  86:6  86:8  86:17 86:19  88:5  91:8  91:16  91:16  91:17  92:21 94:4  95:23  97:24  98:3  99:11  99:24  100:25 102:3  102:4  103:25 | | which(55) 3:22  4:16  5:11  13:11  13:21 22:13  23:4  23:19  25:13  25:22  26:4  26:23 35:20  42:4  42:12  42:23  46:14  47:2  49:20 52:23  55:4  55:13  55:24  58:4  58:18  61:4 62:19  62:23  65:5  67:17  67:18  67:21  70:15 71:17  72:6  72:8  75:1  75:9  76:7  84:22 85:18  88:2  89:12  91:11  93:7  94:14  97:16 98:4  99:3  100:10  100:22  100:22  101:17 101:20  101:24 | | with(207) 3:23  4:2  4:10  4:18  5:4  7:1  7:4 7:7  7:7  8:2  8:6  8:16  8:16  8:20  8:21  9:5 9:20  10:3  10:12  10:16  11:2  11:10  11:11 12:2  12:12  12:15  12:22  13:6  13:14  14:5 14:12  14:17  14:19  14:20  14:23  15:14 15:25  16:8  16:9  16:9  18:4  18:5  18:7  21:1 21:17  21:24  21:25  22:1  22:12  24:19  24:24 25:10  25:12  25:18  26:18  28:2  28:5  28:8 28:21  28:24  29:1  29:2  29:6  29:17  30:19 31:5  31:7  31:20  33:20  34:13  34:24  35:1 35:14  35:18  36:3  36:9  36:15  36:15  36:16 36:22  37:4  37:7  37:16  37:22  40:8  40:12 40:21  40:24  41:5  41:19  42:13  43:4  43:10 43:23  44:9  44:12  44:17  44:21  45:6  45:7 46:6  46:8  46:18  46:19  47:20  48:3  48:6 48:16  49:7  51:16  51:22  51:24  52:2  52:7 52:17  53:12  54:23  55:12  57:13  57:15 60:19  61:2  61:11  62:4  62:5  62:17  62:22 63:25  64:4  64:10  64:16  66:15  66:20  67:18 67:19  68:2  68:3  68:8  68:13  69:2  69:21 69:22  71:12  71:14  71:19  71:22  72:1  72:9 74:2  75:5  75:6  75:9  75:10  76:17  76:21 77:2  77:2  77:3  77:21  77:23  77:24  78:3 78:3  78:18  78:23  79:15  81:12  81:15  81:17 81:21  82:9  85:11  85:15  85:17  86:9  86:17 88:3  88:10  88:25  90:21  91:3  91:4  91:18 92:8  92:23  94:12  94:25  95:9  95:24  95:24 95:25  96:11  96:24  97:5  97:16  97:25  98:1 98:3  98:20  99:2  100:2  100:13  100:13 100:17  100:19  101:18  103:7 | | would(166) 7:3  7:14  8:9  8:19  10:24  11:21 11:23  12:4  12:16  13:1  13:13  13:20  14:2 14:6  14:10  14:16  14:18  14:22  15:7  15:13 15:21  15:24  16:12  16:24  17:2  17:16  18:12 19:16  20:1  21:3  21:7  21:24  23:25  24:5 25:2  25:15  25:21  26:2  26:11  26:22  26:25 27:9  27:17  27:22  27:24  28:9  28:12  29:2 29:8  29:9  29:12  29:16  30:4  30:9  30:17 31:4  31:15  31:19  32:4  32:14  32:22  33:1 33:3  33:6  33:7  33:9  33:16  33:19  33:20 35:6  35:13  35:17  35:25  36:11  36:23  37:1 37:4  37:11  37:17  37:19  37:21  37:25  38:4 38:5  38:8  38:16  38:21  38:24  38:24  39:18 39:19  40:7  40:11  41:25  42:1  42:1  42:2 42:11  42:12  42:14  43:10  44:7  45:6  46:6 47:6  48:3  48:7  50:12  51:7  53:9  55:5 55:10  55:11  55:19  55:21  58:20  58:25  59:6 59:9  59:10  60:20  61:21  68:20  69:13  69:14 69:15  69:17  70:21  70:21  71:7  71:15  71:24 73:3  73:5  75:8  75:9  75:21  76:4  76:8 76:10  76:16  77:1  78:23  81:10  81:17  89:24 90:19  91:6  91:6  91:18  91:23  92:4  92:8 92:11  93:8  95:1  96:6  96:12  96:16  96:18 96:18  97:2  99:6  99:25  100:2  102:4  102:10 |
| water(1) 97:21 | | who(16) 3:18  8:4  12:13  14:12  14:13  15:16 23:5  50:25  56:10  63:18  67:4  67:10  87:8 96:8  96:8  103:13 | | | | | |
| watkins(2) 2:11  52:25 | | | | | | | |
| way(17) 4:5  13:25  19:1  20:1  27:23  39:18 42:25  51:13  54:24  59:15  61:4  85:13  96:18 97:24  100:1  101:4  102:19 | | who'd(1) 33:21 | | | | wouldn't(1) 97:3 |
| | | who's(1) 24:20 | | | | write(2) 83:2  83:2 |
| | | whoever(1) 102:3 | | | | written(4) 10:14  82:21  84:25  96:21 |
| ways(5) 53:5  53:6  54:4  54:10  96:11 | | whole(6) 18:16  19:6  28:12  55:7  69:17 | | | | wrong(1) 68:16 |
| we'd(2) 58:7  83:10 | | why(4) 6:4  8:12  9:6  9:8 | | | | yea(1) 71:11 |
| we'll(15) 4:3  45:10  45:14  46:22  47:3 53:25  73:17  74:5  74:8  78:6  84:7  90:6 93:10  97:18  97:19 | | widely(1) 86:13 | | | | yeah(3) 17:24  96:10  96:23 |
| | | widely-deployed(1) 13:4 | | | | years(4) 25:8  34:19  34:20  55:13 |
| | | will(104) 3:18  3:21  3:22  3:23  3:24  4:16 5:3  5:8  6:7  9:1  9:2  9:4  10:6  11:1  12:14 12:22  12:23  15:18  15:21  16:2  16:8  16:15 18:16  19:11  19:19  19:21  20:12  21:22 23:24  24:18  29:22  30:2  30:21  30:22  31:13 31:24  32:12  39:2  40:19  41:7  42:15  42:17 44:11  46:9  46:14  46:20  47:1  47:3  48:25 49:21  50:17  51:4  54:4  55:18  55:22  56:14 56:16  58:4  62:20  63:6  63:9  64:18  65:1 68:7  68:10  70:6  74:5  74:12  74:22  75:25 76:12  77:19  78:15  78:16  80:6  80:7  81:3 84:11  86:24  87:12  87:23  88:18  88:24  89:3 89:4  89:5  89:6  89:16  89:23  90:1  93:8 93:13  93:22  95:13  95:23  96:20  100:18 101:10  102:23  103:5  103:6  103:11  103:15 103:15 | | | | yep(1) 82:14 |
| we're(35) 4:11  4:14  4:20  7:11  8:18  9:6 10:22  17:15  23:9  44:20  46:9  46:21  50:12 53:5  53:6  53:11  54:3  58:2  58:3  60:2 64:1  64:2  64:14  73:19  76:17  77:20  78:10 78:24  83:3  83:13  85:5  85:5  90:17  93:10 96:5 | | | | | yes(52) 4:25  5:19  8:23  9:15  11:9  18:8 21:3  21:7  21:21  39:9  39:17  40:17  40:25 41:9  43:25  46:23  48:22  53:7  53:16  56:1 56:13  56:13  60:12  60:14  60:17  65:15  74:5 77:5  77:12  78:7  79:1  79:3  80:2  80:14 80:17  81:23  82:7  82:15  83:5  83:8  83:13 84:3  85:9  90:16  91:1  92:17  94:3  95:12 95:21  97:17  97:17  102:8 |
| we've(26) 4:12  10:8  12:1  19:4  19:10  23:3 23:19  23:22  42:21  49:17  51:7  51:9  51:13 52:3  52:12  61:5  61:7  61:8  70:24  71:20 71:21  78:17  82:8  83:15  92:1  102:15 | | | | within(14) 5:22  6:22  7:5  10:24  11:22  27:7 32:18  38:19  54:18  69:18  91:14  92:24 93:21  94:9 | | |
| | | | | | | yet(4) 42:12  46:11  69:3  78:14 |
| weathered(1) 19:1 | | williams(4) 72:23  72:25  73:8  81:9 | | without(12) 3:14  6:9  8:10  8:13  9:7  51:3 52:9  59:12  61:1  75:8  75:10  98:21 | | yield(1) 6:7 |
| welcome(3) 53:1  73:9  85:1 | | willing(1) 77:10 | | | | yielded(1) 22:11 |
| well(33) 4:2  9:10  9:24  11:25  13:23  14:21 15:19  17:10  21:25  23:11  24:15  27:6  31:10 35:15  36:19  45:13  48:25  51:1  63:14  69:11 71:5  73:5  73:23  83:16  85:5  88:4  96:8 97:22  98:18  99:4  100:8  102:2  102:20 | | wilmington(4) 1:11  1:27  1:41  3:1 | | | | yogi(1) 102:4 |
| | | win(1) 55:14 | | | | yonge(1) 2:44 |
| | | wire(1) 83:6 | | witnesses(3) 21:19  24:4  55:19 | | york(4) 1:35  2:8  2:24  101:1 |
| | | wireless(6) 5:11  6:17  13:4  13:19  86:13 86:14 | | wonder(2) 17:16  76:10 | | you(195) 3:13  3:19  3:20  4:4  4:8  4:8  4:10 4:22  4:23  5:3  5:23  8:9  8:9  9:21  10:9 11:13  12:10  12:12  16:22  17:3  17:6  17:7 17:7  17:10  17:16  17:17  17:21  18:9  18:9 18:11  18:12  18:13  18:20  19:8  19:21  19:25 20:2  20:3  20:4  20:6  20:7  20:19  20:21 20:25  21:12  21:13  24:14  24:16  24:18  34:8 34:10  34:15  38:23  39:4  39:5  39:25  40:15 40:22  41:2  41:7  43:19  45:3  45:5  45:6 45:24  46:7  46:17  46:24  46:25  47:1  47:9 47:10  48:2  51:23  52:19  52:20  52:21  52:22 53:1  53:8  53:11  53:18  54:8  54:9  55:5 55:16  56:4  56:14  56:18  58:10  58:11  58:12 58:13  58:17  59:21  59:22  59:25  60:7  61:3 61:18  61:19  61:25  63:11  64:5  64:6  64:21 65:2  65:10  65:11  65:13  67:2  67:6  67:19 69:9  69:15  69:18  70:2  71:1  71:2  72:17 72:17  72:19  72:20  72:24  73:9  73:14  73:19 73:20  73:20  73:23  73:25  74:9  74:11  74:18 74:19  76:11  76:14  76:23  76:25  77:15 77:19  77:20  78:8  78:13  78:20  79:17  79:19 80:9  80:11  80:18  80:19  80:24  81:5  81:9 81:22  81:24  82:4  84:1  84:10  84:15  84:16 85:3  88:10  89:15  90:2  90:3  90:4  90:5 90:10  90:20  91:2  92:24  93:1  93:1  93:3 95:10  95:16  95:22  96:2  96:5  97:7  102:1 102:3  102:18  102:25  103:1  103:2  103:9 103:10  103:16  103:18  103:20  103:21 103:22  103:24 |
| went(1) 56:10 | | | | word(1) 49:1 | | |
| were(33) 6:25  7:2  8:9  9:25  10:9  21:8  28:6 28:18  28:20  28:21  32:23  33:17  36:21  37:2 37:14  38:17  41:19  42:5  45:5  47:23  48:3 54:18  55:8  55:22  56:22  56:23  57:2  58:5 60:9  91:15  99:9  101:16  101:19 | | wisely(1) 82:9 | | work(7) 6:21  35:7  47:18  47:23  47:24 71:20  71:22 | | |
| | | wish(7) 16:17  33:22  38:24  52:23  67:10 69:10  81:14 | | worked(3) 13:13  25:8  51:1 | | |
| | | | | workforce(1) 62:12 | | |
| what(45) 5:7  5:20  7:11  10:12  21:17  21:17 22:11  23:3  42:10  42:14  44:10  44:13  45:9 46:4  48:7  53:25  54:24  54:25  55:10  60:6 60:9  61:9  61:14  62:23  63:12  63:16  63:25 64:14  71:8  71:11  73:3  73:20  76:15  76:25 79:18  79:19  80:4  84:17  84:23  90:22  91:15 91:16  91:17  91:25  92:7 | | wishes(4) 20:22  67:7  73:18  95:19 | | working(4) 18:20  29:15  35:9  93:10 | | |
| | | wishing(1) 73:10 | | works(2) 13:6  59:15 | | |
| | | | | world(7) 5:23  6:13  14:1  22:14  22:21  40:4 91:16 | | |
| what's(4) 57:17  62:7  70:9  83:9 | | | | worldwide(1) 6:11 | | |
| whatever(3) 55:5  64:11  73:23 | | | | worth(2) 23:16  70:24 | | |
| when(4) 38:12  66:4  101:25  103:16 | | | | worthwhile(3) 6:4  83:4  83:12 | | |
| whenever(1) 21:11 | | | | | | |
| where(16) 7:18  16:23  41:6  41:22  47:21 50:4  50:16  52:5  52:6  52:6  52:6  56:25 60:20  61:4  62:8  72:7 | | | | | | |
| whereas(1) 68:7 | | | | | | |
| whereupon(1) 103:25 | | | | | | |
| whether(10) 16:25  17:1  18:6  18:13  19:5 19:6  50:11  68:9  75:3  88:12 | | | | | | you'll(2) 89:22  103:17 |

| Word | Page:Line |
|---|---|

**you're**(9) 21:11  46:17  46:19  54:14  56:3
73:9  83:22  84:13  85:7

**you've**(7) 12:20  18:5  19:2  19:13  66:17
84:23  96:15

**young**(3) 2:42  78:11  85:24
**your**(136) 3:6  3:12  3:17  3:20  4:1  4:12  5:3
5:23  9:21  11:6  11:14  12:2  12:12  12:20
13:2  16:22  18:8  18:14  20:6  20:9  20:19
21:7  21:8  21:9  21:12  21:17  22:2  23:18
24:3  24:11  24:18  24:20  33:19  34:1  34:8
34:9  34:11  38:21  39:5  40:2  40:17  41:3
41:7  43:15  43:21  45:11  45:15  45:24  46:17
46:22  47:1  47:6  47:15  47:22  48:5  48:14
48:20  48:21  49:11  49:14  49:19  49:24  50:6
50:10  50:18  51:8  51:21  52:11  52:19  52:24
53:4  53:11  54:13  56:17  57:6  58:7  58:11
58:16  58:23  59:20  60:2  60:11  60:15  60:18
61:11  61:13  61:18  61:25  64:22  65:15
65:17  65:24  66:15  66:22  67:13  67:15
67:18  68:21  69:9  69:12  69:18  71:7  72:3
73:8  73:19  74:18  77:21  79:2  79:5  79:17
80:2  80:9  80:18  80:22  81:9  82:5  82:16
83:17  84:24  85:9  90:25  91:2  93:11  94:1
94:25  95:1  95:10  95:22  96:4  96:24  97:4
97:12  103:2  103:10  103:12  103:20

**yours**(1) 17:20
**yourselves**(1) 4:9
**yup**(2) 102:16  102:17