## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**NORTEL NETWORKS INC., *et al.*,**<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138(KG)<br>Jointly Administered<br><br>Re: Docket No. 1525 |

## LEAD PLAINTIFFS' LIMITED RESPONSE TO DEBTORS' MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF DEBTORS' NEXT GENERATION SERVING PACKET CORE NETWORK COMPONENTS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES

Lead Plaintiffs[1] in the putative securities class action captioned *David Lucescu, Individually and on Behalf of all Others Similarly Situated v. Mike Zafirovski,* Civil Action No. 09-cv-04691 (SAS) (the "Securities Litigation") filed in the United States District Court for the Southern District of New York (the "District Court"), on behalf of all persons (the "Class"), who purchased or otherwise acquired securities of Nortel Networks Corporation ("NNC"), between May 2, 2008 and September 17, 2008, inclusive, submit their limited response (the "Response") to Debtors' Motion for an Order Authorizing and Approving Sale of Debtors' Next Generation Serving Packet Core Network Components Free and Clear of all Liens, Claims and Encumbrances (the "Motion")[2] and state the following:

### PRELIMINARY STATEMENT

1.      Lead Plaintiffs do not object to the relief sought in the Motion, but request that any Order granting the relief requested, in whole or in part, provide some protocol, policy or mechanism for the retention, preservation and protection of books, records and other documents, in whatever form, that may be transferred as part of the Sale and also provide for notice to Lead

---

[1]    Kien Chen and Moreno Minto were appointed Lead Plaintiffs on July 22, 2009.

[2]    Capitalized terms shall have the meaning ascribed to them in the Motion unless defined otherwise herein.

Plaintiffs of, and an opportunity to object to and be heard on, any efforts by the Sellers or Purchaser to destroy or abandon any of the foregoing (including those, if any, retained by Debtors).

## BACKGROUND

2.      On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the Canadian Nortel Group") commenced proceedings under *Canada's Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended, (the "Canadian Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").

3.      On January 14, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11.U.S.C. §§ 1107(a) and 1108.

4.      On January 14, 2009, Ernst & Young, Inc., the court-appointed monitor (the "Monitor") and authorized foreign representative of the Canadian Nortel Group in the Canadian Proceedings commenced proceedings (the "Chapter 15 Cases") under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5.      On January 14, 2009, the Ontario Court issued its Initial Order, which was subsequently amended and restated by the Ontario Court on February 10, 2009, April 7, 2009 and June 30, 2009 (the "Initial Order").

6.      On February 27, 2009, the Bankruptcy Court entered an order in the Chapter 15 Cases granting recognition to the Canadian Proceedings as foreign main proceedings and giving full force and effect in the United States to the Initial Order of the Ontario Court (and any further amendments or extensions thereof as may be granted from time to time by the Ontario Court) (the "Recognition Order") (Docket No. 40.)

7.      On May 18, 2009, David Lucescu, individually and on behalf of all others similarly situated (the "Plaintiff"), filed the Securities Litigation Complaint in the District Court for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against Mike Zafirovski and Pavi Binning (the "Non-Debtor Defendants"), both of whom are officers of NNC.

8.      Due to the discovery stay of the Private Securities Litigation Reform Act of 1995 (the "PSLRA")[3] and the automatic bankruptcy stay, as well as the stay in the Canadian Proceedings, which currently extends to the Non-Debtor Defendants, Lead Plaintiffs have not had the opportunity to conduct formal discovery of the Debtors, their affiliates or the Non-Debtor Defendants in the Securities Litigation.

9.      On September 21, 2009, the Debtors filed the Motion seeking, *inter alia,* authority to sell certain Assets free and clear of liens.  On September 30, 2009, the Court entered an Order (Docket No. 1584) approving the sale procedures and scheduling the hearing to approve the sale for October 28, 2009.

10.      Relevant to this Response, the proposed Transaction Agreement (the "Agreement") provides that:

> (a)      After the Closing, the Purchaser shall preserve, until at least the greater of the third (3rd) anniversary of the Closing Date or as otherwise provided in the Purchaser's applicable document retention policies, all pre-Closing Date records to the extent relating to the Business possessed or to be possessed by such Person.  After the Closing Date and up until at least the third (3rd) anniversary of the Closing Date, upon any reasonable advance notice and during regular business hours, the Purchaser shall, and/or shall cause the Person holding such records to, (i) provide to the Sellers or their Representatives reasonable access to such records during normal business hours and (ii) permit the Sellers or their Representatives to make copies of such records; provided, however, that (A) any such access shall be conducted at Sellers' expense, in accordance with Law, under the supervision of the Purchaser's personnel and in such a manner as to maintain

---

[3]      The PSLRA discovery stay prohibits discovery until motions to dismiss have been denied.

confidentiality and not to interfere with the normal operations of the businesses of the Purchaser and its Affiliates, and (B) the Purchaser will not be required to provide to the Sellers access to or copies of any Employee Records.

(b)      Notwithstanding anything contained in this Agreement or any other agreement between the Purchaser and the Sellers executed on or prior to the date hereof, the Purchaser shall not have any obligation to make available to the Sellers or its Representatives, or provide the Sellers or its Representatives with (i) any income Tax Return or any combined or consolidated Tax Return filed by the Purchaser or any of its Affiliates or predecessors, or any related material, or (ii) more generally, any information if making such information available would (A) jeopardize any attorney-client or other legal privilege or (B) potentially cause the Purchaser to be found in contravention of any applicable Law or contravene any fiduciary duty or agreement (including any confidentiality agreement to which the Purchaser or any of its Affiliates is a party), it being understood that the Purchaser shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Sellers to occur without so jeopardizing privilege or contravening such Law, duty or agreement.

## **OBJECTION**

11.      Lead Plaintiffs do not object to the Sale of the Debtors' assets provided some further protocol or mechanism is imposed for the preservation, maintenance, protection and availability of the Debtors' books, records and other documents, in whatever form, including native form (the "Books and Records"),[4] that may be relevant to the claims asserted in the

---

[4]      Books and Records, which may contain information relevant to the claims in the Securities Litigation, also include such other assets to be sold pursuant to the Agreement including, but not limited to:
- Digital communications (*e.g.,* e-mail, voice mail, instant messaging);
- Word processed documents (*e.g.,* Word or WordPerfect documents and drafts);
- Spreadsheets and tables (*e.g.,* Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.,* QuickBooks, Money, Peachtree data fields);
- Image and Facsimile Files (*e.g.,* PDF, .TIFF, .JPEG, .GIF images);
- Sound Recordings (*e.g.,* WAV and .MP$_3$ files);
- Video and Animation (*e.g.,* AVI and .MOV files);
- Databases (*e.g.,* Access, Oracle, SQL Server data SAP);
- Contact and Relationship Management Data (*e.g.,* Outlook, ACT!)
- Calendar and Diary Application Data (*e.g.,* Outlook PST, Yahoo, blog tools);
- Online Access Data (*e.g.,* Temporary Internet Files, History, Cookies);
- Presentations (*e.g.,* PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;

Securities Litigation and that such protocol be available to Lead Plaintiffs and other parties-in-interest in these proceedings.

12.     Many of the Debtors' assets, specifically the Books and Records, may be relevant to the claims asserted in the Securities Litigation.  Indeed, the accounting and reporting practices of the Debtors are squarely at issue in the Securities Litigation.  As discussed above, the PSLRA discovery stay, the Automatic Stay and the stay in the Canadian Proceedings currently prohibit Lead Plaintiffs from obtaining formal discovery from the Debtors, their affiliates and the Non-Debtor Defendants in the Securities Litigation.  The Sale of the Assets provides no guarantee that access to the Books and Records, relevant to the claims in the Securities Litigation, as well as to the claims asserted or to be asserted in the chapter 11, chapter 15 or Canadian proceeding, is available to third parties or that the Books and Records are properly maintained and preserved.  Therefore, some protocol is required to ensure that the Books and Records are properly maintained and preserved and available to the parties to the Securities Litigation.

13.     Permitting the Debtors to sell their Assets and transfer their Books and Records without an appropriate reservation of rights or protocol to ensure that access to such records remains available to third parties would unduly and inappropriately prejudice the rights of Lead Plaintiffs and the putative Class in the Securities Litigation, as well as those of other creditors and stakeholders in these proceedings.  Furthermore, neither the Motion nor the Agreement specifically identify the records subject to § 5.15 of the Agreement.  Indeed, the description of those records in the Agreement is extremely vague, ambiguous and completely subjective ("all pre-Closing documents to the extent relating to the Business").  Nor is there any provision for the Debtors' books and records that are not transferred or that may not be related to the Business.  Such books and records could conceivably be destroyed or abandoned (without notice).  To the extent such books, records and documents are not transferred to the successful purchaser, they should remain with the Debtors and be maintained and preserved pursuant to the provisions of

- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (*e.g.*, Zip, .GHO).

the Bankruptcy Code.  There also may be some such books, records or documents that are transferred, but not deemed related to the Business.  Those books, records and documents must be maintained and preserved as well.

14.    Because the Books and Records are described in such vague and general terms (*see* Agreement, § 5.15 and ¶ 13, *supra*), Lead Plaintiffs cannot determine if the Books and Records include information and/or evidence potentially relevant to the claims in the Securities Litigation.  Full disclosure of the Books and Records or a reasonable retention policy that does not allow the Debtors or the Purchaser to destroy documents is warranted to provide Lead Plaintiffs and others an opportunity to move for appropriate relief, if necessary, to access those Books and Records relevant to the Securities Litigation and other issues in this case.[5]

15.    The conduct of the Debtors and certain of their officers and directors leading up to the filing of the Petitions here and in the other proceedings (which conduct lead to the Securities Litigation), requires that before documents relating to their activities and operations are abandoned or transferred, parties in interest be given the opportunity to access and examine such documents and information.  At the very least, such documents must be maintained and preserved for the duration of the Securities Litigation, including any appeals, so access can be provided at the appropriate time.

## <u>CONCLUSION</u>

16.    Based upon the foregoing, Lead Plaintiffs respectfully request that unless and until an appropriate protocol or other mechanism is in place to safeguard, preserve, maintain, protect and make available the Debtors' books and records, including those sold pursuant to the Agreement or such other asset purchase agreement that may be approved by the Court, relevant to the claims asserted in the Securities Litigation, an order be entered denying the Sale and granting such other and further relief as the Court deems just and proper.

---

[5]    The Agreement does not appear to provide any protocol for the destruction or abandonment of the Books and Records.  Lead Plaintiffs submit that such a protocol is warranted and must provide notice to Lead Plaintiffs in advance with an opportunity to be heard by a court of competent jurisdiction.

Dated:  October 27, 2009

**LOWENSTEIN SANDLER PC**


By:  /s/ Michael S. Etkin
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs
and the Putative Class*


**COUGHLIN STOIA GELLER RUDMAN &
ROBBINS LLP**
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100 (Telephone)
(631) 367-1173 (Facsimile)

*Lead Counsel for Lead Plaintiffs and
the Putative Class*