# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

## NOTICE OF FILING OF APPROVAL AND VESTING ORDER OF THE ONTARIO COURT IN THE CANADIAN PROCEEDINGS RELATING TO SALE OF THE NEXT GENERATION PACKET CORE BUSINESS

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

**PLEASE TAKE NOTICE** that on October 30, 2009, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation, in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Ontario Court**"), by its undersigned counsel, filed, in the above-captioned cases, copies of the Approval and Vesting Order of the Ontario Court regarding the sale of assets relating to Nortel's Next Generation Packet Core Business (the "**NGPCB Order**") and the Endorsement of the Ontario Court relating to the NGPCB Order (the "**NGPCB Order Endorsement**"), each dated October 28, 2009. Copies of the NGPCB Order and the NGPCB Order Endorsement are annexed hereto as Exhibit A and Exhibit B, respectively.

**PLEASE TAKE FURTHER NOTICE** that copies of the NGPCB Order and the NGPCB Order Endorsement are also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

Dated: Wilmington, Delaware
October 30, 2009

ALLEN & OVERY LLP

Ken Coleman
Lisa Kraidin
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
lisa.kraidin@allenovery.com

-and-

BUCHANAN INGERSOLL & ROONEY

By: /s/ Mary F. Caloway
Mary F. Caloway (No. 3059)
Peter J. Duhig (No. 4024)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone (302) 552-4200
Facsimile (302) 552-4295
mary.caloway@bipc.com

Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Nortel Group

**EXHIBIT A**

**EXHIBIT A**



Court File No.: 09-CL-7950

ONTARIO
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 28TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF OCTOBER, 2009 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

APPROVAL AND VESTING ORDER
(Next Generation Packet Core Business)

THIS MOTION, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL" and together with Nortel Networks Inc., the "Sellers"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' Notice of Motion dated October 26, 2009 including, the approval of a transaction (the "Transaction") to sell certain assets pursuant to a transaction agreement dated October 25, 2009 (the "Sale Agreement") among the Sellers, as sellers and Hitachi, Ltd., as purchaser (the "Purchaser") was heard this day at 330 University Avenue, Toronto, Ontario.

DOCSTOR: 1796815\3

- 2 -

ON READING the affidavit of George Riedel sworn October 26, 2009 and the twenty-sixth report of Ernst & Young Inc. in its capacity as monitor (the "Monitor") dated October 26, 2009 (the "Twenty-Sixth Report") and on hearing the submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other person on the service list, although properly served as appears from the affidavit of Katie Legree sworn October 27, 2009, filed:

1. THIS COURT ORDERS that the time for the service of the Notice of Motion, the Twenty-Sixth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2. THIS COURT ORDERS that capitalized terms used herein and not otherwise defined will have the meaning given to them in the Sale Agreement.

3. THIS COURT ORDERS AND DECLARES that, subject to the approval of the Transaction and Sale Agreement by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Cases of the U.S. Debtors, the Transaction is hereby approved. The execution, delivery and performance of the Sale Agreement and the Intellectual Property License Agreement by NNL is hereby authorized and approved (with such alterations and amendments as the parties thereto may agree, subject to obtaining Monitor consent prior to making any material alterations or amendments to the Sale Agreement or Intellectual Property License Agreement), and NNL is hereby authorized and directed to take such additional steps and execute such additional documents, including without limitation the Ancillary Agreements, as may be necessary or desirable for the completion of the Transaction and for the conveyance of the Assets to the Purchaser or its Designated Purchaser, if applicable.

4. THIS COURT ORDERS AND DECLARES that upon the delivery of a Monitor's certificate to the Purchaser substantially in the form attached as Schedule "A" hereto (the "Monitor's Certificate"), all of NNL's right, title and interest in and to the Assets shall vest absolutely in the Purchaser or, to the extent designated by the Purchaser in accordance with the Sale Agreement, its Designated Purchaser, free and clear of and from any and all security interests (whether contractual, statutory, or otherwise), hypothecs, mortgages, trusts or deemed trusts (whether contractual, statutory, or otherwise), liens, executions, levies, charges, or other financial or monetary claims, whether or not they have attached or been perfected, registered or

- 3 -

filed and whether secured, unsecured or otherwise (collectively, the "Claims") including, without limiting the generality of the foregoing: (i) any encumbrances or charges created by the Orders made in these proceedings, including the Initial Order of the Honourable Justice Morawetz dated January 14, 2009 (as amended and restated); and (ii) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system; excluding only those Seller Encumbrances, Assumed Liabilities and licenses expressly permitted or assumed under the Sale Agreement. For greater certainty, this Court orders that all Liens, other than Seller Encumbrances and licenses expressly permitted under the Sale Agreement, affecting or relating to the Assets, are hereby expunged and discharged as against the Assets.

5.  THIS COURT ORDERS that, except as otherwise expressly permitted by and in accordance with the terms of the Ancillary Agreements, NNL shall not revoke, disclaim, terminate or resiliate the Ancillary Agreements and notwithstanding any such action by the Sellers, the Purchaser or its Designated Purchaser, as the case may be, shall be entitled to use the Licensed Intellectual Property in accordance with the Intellectual Property License Agreement as though such action had not occurred. For greater certainty, nothing in this paragraph 5 shall prohibit NNL from exercising any and all rights and remedies (including any termination rights) available to it pursuant to and in accordance with the express terms of the Ancillary Agreements, or applicable law outside any insolvency or bankruptcy proceeding.

6.  THIS COURT ORDERS that for the purposes of determining the nature and priority of Claims, the net proceeds from the sale of the Assets shall stand in the place and stead of the Assets, and that from and after the delivery of the Monitor's Certificate all Claims and Encumbrances shall attach to the net proceeds from the sale of the Assets with the same priority as they had with respect to the Assets immediately prior to the sale, as if the Assets had not been sold and remained in the possession or control of the person having that possession or control immediately prior to the sale.

7.  THIS COURT ORDERS that all proceeds of the Transaction, subject to the Purchaser's rights under the Sale Agreement and less applicable transfer or value added taxes incurred by the Sellers, and, to the extent agreed by the Sellers, any transaction costs, shall be deposited by the Sellers upon receipt from the Purchaser into an Escrow Account (as such term is defined in the

- 4 -

Interim Funding and Settlement Agreement entered into on June 9, 2009 (the "IFA")), and such proceeds shall not be distributed in advance of either (i) agreement by all of the ~~Sellers~~ *Selling Debtors (as defined in the IFA)* as to the distribution of such proceeds (in accordance with Section 12.g. of the IFA) or (ii) in the case where the ~~Sellers~~ *Selling Debtors* fail to reach such agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by this Court.

8.   THIS COURT ORDERS AND DIRECTS the Monitor to file with the Court a copy of the Monitor's Certificate, forthwith after delivery thereof.

9.   THIS COURT ORDERS that, notwithstanding:

   (a)   the pendency of these proceedings;

   (b)   any applications for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act* (Canada) in respect of any of the Applicants and any bankruptcy order issued pursuant to any such applications; and

   (c)   any assignment in bankruptcy made in respect of any of the Applicants;

the vesting of the Assets in the Purchaser or its Designated Purchaser, as the case may be, pursuant to this Order and all the terms of the Sale Agreement and the Ancillary Agreements shall be binding on any trustee in bankruptcy that may be appointed in respect of any of the Applicants and shall not be void or voidable by creditors of any of the Applicants, nor shall they constitute nor be deemed to be a settlement, fraudulent preference, assignment, fraudulent conveyance, transfer at under value or other reviewable transaction under the *Bankruptcy and Insolvency Act* (Canada) or any other applicable federal or provincial legislation, nor shall they constitute oppressive or unfairly prejudicial conduct pursuant to any applicable federal or provincial legislation.

10.   THIS COURT ORDERS that any sale or transfer of the Licensed Intellectual Property by NNL or a bankruptcy trustee or receiver appointed in respect of NNL, whether by vesting order

- 5 -

or otherwise, shall be made subject to the Intellectual Property License Agreement, and the Purchaser and Designated Purchaser, as the case may be, shall be permitted to continue to use the Licensed Intellectual Property in accordance with the Intellectual Property License Agreement following and notwithstanding any such sale or transfer of the Licensed Intellectual Property. For greater certainty, nothing in this paragraph 10 shall prohibit a purchaser of NNL's interest in the Licensed Intellectual Property or an assignee of the Intellectual Property License Agreement (if assigned in accordance with the Intellectual Property License Agreement) from exercising any and all rights and remedies (including any termination rights) available to such party pursuant to and in accordance with express terms of the Intellectual Property License Agreement, or applicable law outside any insolvency or bankruptcy proceeding.

11. THIS COURT ORDERS AND DECLARES that the Transaction is exempt from the application of the *Bulk Sales Act* (Ontario).

12. THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

13. THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

14.   THIS COURT ORDERS that the Confidential Appendix "B" to the Twenty-Sixth Report be and is hereby sealed pending further Order of this Court.

_____

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

OCT 2 8 2009

PER / PAR: TN

**Schedule A – Form of Monitor's Certificate**

Court File No.: 09-CL-7950

## ONTARIO
## SUPERIOR COURT OF JUSTICE
## COMMERCIAL LIST

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**MONITOR'S CERTIFICATE**
**(Next Generation Packet Core Business)**

**RECITALS**

A.   Pursuant to an Order of the Honourable Justice Morawetz of the Ontario Superior Court of Justice (the "Court") dated ●, 2009 (as amended and restated), Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL" and together with NNC, the "Sellers"), Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation (collectively, the "Applicants") commenced proceedings pursuant to the *Companies' Creditors Arrangement Act* (Canada) and Ernst & Young Inc. was appointed as monitor (the "Monitor") in these proceedings.

B.   Pursuant to an Order of the Court dated ●, 2009, the Court approved a transaction agreement dated October 25, 2009 (the "Sale Agreement") among the Sellers and Hitachi, Ltd., as purchaser (the "Purchaser") and provided for the vesting in the Purchaser or Designated Purchaser of NNL's right,

DOCSTOR: 1796815\3

- 2 -

title and interest in and to the Assets, which vesting is to be effective with respect to the Assets upon the delivery by the Monitor to the Purchaser of a certificate confirming receipt of confirmation from NNL that (i) the Purchaser has paid the Purchase Price; (ii) the conditions to Closing as set out in Article 8 of the Sale Agreement have been satisfied or waived by the Sellers and the Purchaser, as applicable; and (iii) the Transaction has been completed to the satisfaction of NNL.

C.    Unless otherwise indicated herein, terms with initial capitals have the meanings set out in the Sale Agreement.

THE MONITOR CERTIFIES the following:

1.    NNL has advised the Monitor that the Purchaser has paid and [●] has received the Purchase Price payable on the Closing Date pursuant to the terms of the Sale Agreement;

2.    NNL has advised the Monitor that the conditions to Closing as set out in Article 8 of the Sale Agreement have been satisfied or waived by the Sellers and the Purchaser, as applicable; and

3.    NNL has advised the Monitor that the Transaction has been completed to the satisfaction of the Sellers.

This Certificate was delivered by the Monitor at _____ [TIME] on _____ 2009.

**Ernst & Young Inc. in its capacity as monitor in the CCAA proceedings of Nortel Networks Corporation, et. al. and not in its personal capacity**

Per: _____

   Name:
   Title:

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**APPROVAL AND VESTING ORDER**
(Next Generation Packet Core Business)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

**EXHIBIT B**

Court File No: 09-CL-7950

28 OCT 2009

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**MOTION RECORD**
Approval and Vesting Order
Next Generation Packet Core Business
(returnable October 28, 2009)

FILED / DÉPOSÉ
OCT 27 2009

**LATE FILING**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay** LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte** LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam** LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

---

October 28/09

D. Tay + J. Stam for Applicants

M. Starnino for Sup. of FS.

J. Pasquariello + C. Armstrong for Monitor

S R Orzy for Bondholders

A. MacFarlane for UCC

H. Meredith for Hitachi

S. Campbell for EMEA Debtors

M. Zigler for Former Employees

The motion was not opposed.

The Applicants seek an Approval + Vesting Order + reasons in respect

1) [illegible]

②

Assets (as defined in the Sale Agreement) relating to Nortel's Next Generation Packet Core research and development activities. The proposed purchaser is Hitachi Ltd.

The purchase price is US$10,000,000 plus the assumption of certain liabilities.

The proposed transaction is described in the supporting affidavits of Mr. George Riedel and in the 26th Report.

A Sales Process was previously approved by this Court on Sept 29/09 and by the U.S. Bankruptcy Court on Sept 30/09.

Having reviewed the record and having heard submissions I am satisfied that the Applicant has followed the approved process and that

(3)

the proposed transaction represents a reasonable outcome in the circumstances. The Monitor has been involved in the process and recommends the approval of the transaction.

I am satisfied that the principles set forth in Royal Bank v. Soundair have been adhered to and that this ~~proposed~~ transaction should be approved.

The Monitor has submitted that Confidential Appendix B contains sensitive commercial information, the disclosure of which would adversely affect certain stakeholders. I accept the submission. In my view a sealing order is appropriate.

In arriving at this conclusion I

(4)

have taken into account the principles set out in <u>Sierra Club</u>. The document is to be sealed pending further order.

The motion is granted.

An order shall issue in the form presented, as amended. This Order is not effective ~~was~~ until such time as similar relief has been granted by the U.S. Bankruptcy Court.

[Subject to edit if typed]

/s/ [signature]