# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------- X
:
*In re*                                                  :   Chapter 11
                                                         :
Nortel Networks Inc., *et al.*,[1]                       :   Case No. 09-10138 (KG)
                                                         :
                                    Debtors.             :   Jointly Administered
                                                         :
                                                         :   **Hearing date: November 19, 2009 at 1:00 PM (ET)**
                                                         :   **Objections due: November 12, 2009 at 4:00 PM (ET)**
-------------------------------------------------------- X

### DEBTORS' FIRST OMNIBUS MOTION FOR AN ORDER (A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN ADDITIONAL EXECUTORY CONTRACTS PURSUANT TO THE SALE OF THE DEBTORS' CDMA AND LTE BUSINESS AND (B) AUTHORIZING THE DEBTORS TO FILE INFORMATION UNDER SEAL

#### *PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND CONTRACTS OR LEASES ON EXHIBIT A.*

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of orders pursuant to sections 105, 107, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the assumption and assignment of certain additional executory contracts in connection with the sale of certain of the Debtors' CDMA and LTE assets to Telefonaktiebolaget

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

LM Ericsson (publ) ("Ericsson" and together with, and including, any Designated Purchaser (as defined in the Ericsson Sale Agreement), the "Purchaser") in accordance with the terms and conditions of that certain Asset Sale Agreement entered into by the Debtors and Ericsson dated July 24, 2009, as may be subsequently amended (the "Ericsson Sale Agreement"); (b) authorizing the Debtors to file certain information under seal; and (c) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested herein are sections 105, 107, 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9018 of the Bankruptcy Rules, and Rule 9018-1 of the Local Rules.

## Background

**A.    Introduction**

1.    On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (as defined below) filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

2

4.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

5.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

6.      On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to:  (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

7.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

8.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

9.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

10.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

**C.     The CDMA and LTE Asset Sale**

11.    Nortel's Carrier Network business ("Carrier") offers wireline and wireless networks that help service providers and cable operators supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices.  The Carrier portfolio includes 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA"), and its research and development efforts have included innovative technologies focused in the areas of 4G broadband wireless, including Long Term Evolution ("LTE"), an evolving networking standard for which Nortel has completed early trials with customers.

12.     On June 19, 2009, the Debtors filed a Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' CDMA and LTE Business Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Certain Contracts and (C) the Assumption and Sublease of Certain Leases [D.I. 931] (the "Sale Motion")[4] seeking approval of the sale of certain of the Debtors' assets relating to the Debtors' CDMA and LTE business (the "Assets"), including the assumption and assignment of certain executory contracts to the Successful Bidder at an auction, and the approval of certain bidding procedures (the "Bidding Procedures") in connection with the proposed sale.  Following a hearing on the Bidding Procedures, this Court and the Canadian Court, by an order dated June 30, 2009 [D.I. 1012] and the Order Applying the Previously-Entered Bidding Procedures Order and Sale Motion, as Supplemented, to Nortel Networks (CALA) Inc. prospectively, dated July 20, 2009 [D.I. 1129] (together the "Sale Procedures Orders"), approved the Bidding Procedures to govern the sale by Nortel Networks Inc. and certain of its affiliates (collectively, the "Sellers") of the Assets.

13.     In accordance with the Bidding Procedures, the Sellers conducted an auction on July 24, 2009 (the "Auction").  The Successful Bid (as defined in the Bidding Procedures) resulting from the Auction was the Ericsson Sale Agreement, dated as of July 24, 2009 with Ericsson as Purchaser (the "Successful Bid").

---

[4]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

14.    On July 28, 2009, this Court entered an order approving the sale of the Assets to the Purchaser pursuant to the Successful Bid [D.I. 1205] (the "Sale Order").  The Canadian Court entered a corresponding order approving the sale in the Canadian Proceedings on the same day.

### Relief Requested

15.    By this Motion, the Debtors seek an order (a) approving the assumption and assignment of certain additional executory contracts to the Purchaser pursuant to section 365 of the Bankruptcy Code; (b) authorizing the Debtors to file certain information under seal; and (c) granting such other relief as the Court deems just and proper.

### Facts Relevant to the Motion

16.    As part of the Sale Order, the Court authorized the Debtors under Bankruptcy Code section 365 to "assume the Assumed Agreements and to assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing."  Sale Order at ¶ 4.  The Assumed Agreements and the Assumed and Assigned Contracts were defined in the Ericsson Sale Agreement to include certain executory contracts (including supplier and customer contracts) to which the Debtors were a party prior to the sale.

17.    Since the entry of the Sale Order, the Debtors and the Purchaser have identified a small number of additional prepetition executory contracts that are related to the Assets (the "Additional Contracts") that were inadvertently excluded from the schedules of Assumed and Assigned Contracts in the Ericsson Sale Agreement but that the Debtors wish to assume and assign to the Purchaser in connection with the sale of the Assets.  By this Motion the Debtors seek permission to assume and assign the Additional Contracts effective as of the later of (i) the closing date of the Ericsson Sale Agreement or (ii) the date of the entry of the Order on this Motion (the "Effective Assumption and Assignment Date").

18.    The Additional Contracts designated for assumption and assignment to the

Purchaser consist of approximately sixty (60) customer contracts related to the Assets to which the Debtors are a party, including non-disclosure agreements and service agreements.  As with other customer contracts that were assumed and assigned in connection with the sale, the identity of the counterparties to the Additional Contracts (the "Counterparties") constitutes an integral component of the Additional Contracts' value.  Access to the list of Counterparties absent appropriate confidentiality restrictions would entail releasing valuable confidential information of critical value not only to the Purchaser of the Assets but also to the Debtors' other businesses, many of which share overlapping customer lists.  Thus, publicly releasing the names of the Counterparties would have an immediate detrimental impact on the value of the Assets as well as other aspects of the Debtors' business.  The Debtors will serve notice of this Motion on each of the Counterparties to the Additional Contracts, including a personalized schedule containing those contracts designated for assumption and assignment to which they are a Counterparty.  The Debtors also are prepared to file a complete list under seal and will provide a complete list of the Additional Contracts to the Office of the U.S. Trustee, counsel to the Committee, and the Bondholder Group.

### *Cure Amounts*

19.    To the extent necessary to consummate a sale of the Assets as contemplated by the Sale Motion, the Debtors shall pay the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with section 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount") promptly.  To the best of the Debtors' knowledge, there are no Cure Amounts to be paid in association with the Additional Contracts.

### *Adequate Assurance of Future Performance*

20.    The Debtors submit that the Purchaser is able to comply with section 365 of the

Bankruptcy Code and to perform the obligations under the Additional Contracts.  Ericsson is the world's leading provider of technology and services to telecom operators.  Ericsson is the leader in 2G, 3G and 4G mobile technologies, and provides support for networks with over 1 billion subscribers and has a leading position in managed services.  Ericsson's portfolio comprises of mobile and fixed network infrastructure, telecom services, software, broadband and multimedia solutions for operators, enterprises and the media industry.  Ericsson is advancing its vision "to be the prime driver in an all-communicating world" through innovation, technology, and sustainable business solutions.  Working in 175 countries, more than 75,000 employees generated revenue of SEK 209 billion (USD 32.2 billion) in 2008.  Founded in 1876 with the headquarters in Stockholm, Sweden, Ericsson is listed on NASDAQ OMX Stockholm and NASDAQ New York.  Additional information regarding Ericsson is available on the Ericsson website at http://www.ericsson.com.  Given the Purchaser's industry experience and financial wherewithal, the Debtors submit that a showing of adequate assurance has been met.

21.     The Debtors further propose that any Counterparty will be deemed to have received adequate assurance of future performance as required by section 365 of the Bankruptcy Code if the Debtors, after payment of any Cure Amounts, would no longer have any payment or delivery obligations under the Additional Contract.

### *Counterparty Objections*

22.     To the extent that any Counterparty wishes to object to any matter pertaining to the proposed assumption and assignment of the Additional Contracts, including without limitation the proposed Cure Amount and the adequate assurance of future performance by the Purchaser under the applicable Additional Contract, then such Counterparty must file with this Court and serve a written objection on or before **4:00 p.m. (ET) on November 12, 2009**.

23.    All Counterparty objections must specify the grounds for such objection, including stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount) if the Counterparty disagrees with the Debtors' proposed Cure Amount and any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Additional Contract.

24.    To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be (i) deemed to have consented to such Cure Amounts, if any, and to the assumption and assignment or assumption and sublease of the applicable Additional Contract; (ii) bound to such corresponding Cure Amount, if any; (iii) deemed to have agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iv) deemed to have agreed that all defaults under the Additional Contracts arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the Additional Contract shall remain in full force and effect for the benefit of the Purchaser and the Counterparty in accordance with its terms; (v) to have waived any right to terminate the Additional Contract or designate an early termination date under the applicable Additional Contract as a result of any default that occurred and/or was continuing prior to the assignment date; and (vi) to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Additional Contract.

***Reservation of Rights***

25.    The Debtors' assumption and assignment of the Additional Contracts is subject to

Court approval and consummation of the sale of the Assets to the Purchaser.  Accordingly, the

Debtors shall be deemed to have assumed each of the Additional Contracts as of the Effective

Assumption and Assignment Date, and, absent the closing of the sale, the Additional Contracts

shall be deemed neither assumed nor assigned and shall in all respects be subject to subsequent

assumption or rejection by the Debtors under the Bankruptcy Code.  The Debtors also reserve the

right, in consultation with the Purchaser, to withdraw the designation of an Additional Contract

for assumption and assignment prior to the closing date of the sale.

26.      The Purchaser shall have no rights in and to a particular Additional Contract until

such time as the particular Additional Contract is assumed and assigned upon the Effective

Assumption and Assignment Date.

27.      To the extent an objection to the assumption and assignment of an Additional

Contract is not resolved prior to the closing date of the sale of the Assets, including any

objections related to cure, the Debtors, in consultation with the Purchaser, may elect to (i) not

assume and assign such Additional Contract or (ii) postpone the assumption and assignment of

such Additional Contract until the resolution of such objection.

28.      Pursuant to Section 365(f) of the Bankruptcy Code, the Debtors seek

authorization and approval to assume and assign the Additional Contracts to the Purchaser

notwithstanding any provision to the contrary in the Additional Contracts, or in applicable non-

bankruptcy law, that prohibits, restricts, or conditions the assignment.

29.      Upon assumption of the Additional Contracts by the Debtors and assignment to

the Purchaser, the Additional Contracts shall be deemed valid and binding, in full force and

effect in accordance with their terms, subject to the provisions of this Order.

## Basis for Relief

**A.     The Assumption and Assignment of the Additional Assumed And Assigned Contracts Should Be Authorized**

30.     Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval,

may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C.

§ 365(a).  Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an

executory contract of a debtor.  This subsection provides:

> (b) (1)     If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> > (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part,

that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if --
>
> > (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and
> >
> > (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

31.     The meaning of "adequate assurance of future performance" depends on the facts

and circumstances of each case, but should be given "practical, pragmatic construction." <u>EBG</u>

<u>Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.)</u>, 139

B.R. 585, 593 (S.D.N.Y. 1992); <u>In re Prime Motor Inns Inc.</u>, 166 B.R. 993, 997 (Bankr. S.D. Fla.

1994); <u>Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)</u>, 103 B.R. 524, 538 (Bankr.

D.N.J. 1988).

32.     Among other things, adequate assurance may be provided by demonstrating the

assignee's financial health and experience in managing the type of enterprise or property

assigned.  <u>See, e.g.</u>, <u>In re Bygaph, Inc.</u>, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding

adequate assurance of future performance present when prospective assignee of lease from

debtor has financial resources and has expressed willingness to devote sufficient funding to

business in order to give it strong likelihood of succeeding).

33.     To the extent any defaults exist under any Additional Contract, any such default

will be promptly cured or adequate assurance that such default will be cured will be provided

prior to the assumption and assignment.  If necessary, the Debtors will submit additional facts

prior to or at the hearing on this Motion to show the financial credibility of the Purchaser and

willingness and ability to perform under the Additional Contracts.  The hearing will therefore

provide the Court and other interested parties the opportunity to evaluate and, if necessary,

challenge the ability of the Purchaser to provide adequate assurance of future performance under

the Additional Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

34.     In addition, the Debtors submit that it is an exercise of their sound business

judgment to assume and assign the Additional Contracts to the Purchaser, and the assumption,

assignment, and sale of the Additional Contracts to the Purchaser are in the best interests of the

Debtors, their estates, their creditors, and all parties in interest.  The Additional Contracts being

assigned to the Purchaser are an integral part of the Assets being purchased by the Purchaser, and

accordingly, such assumption, assignment, and sale of the Additional Contracts are reasonable

and enhance the value of the Debtors' estates.  The Court should therefore authorize the Debtors

to assume and assign the Additional Contracts as set forth herein.

**B.      Information Regarding the Debtors' Customers Is Confidential Commercial
         Information and Should Be Filed Under Seal**

35.      The Debtors propose to file the list of Additional Contracts to be assumed and

assigned under seal.

36.      The relief requested by the Debtors is squarely authorized under the Bankruptcy

Code.  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to

issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information. . . .

11 U.S.C. § 107(b).

37.      Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may

move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

38.      This Court has defined "commercial information" in the context of section 107(b)

as follows:

> Commercial information is information which would result in 'an
> unfair advantage to competitors by providing them information as
> to the commercial operations of the debtor.'

In re Alterra Healthcare Corp., 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (citing In re Orion

Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)).  This Court has also explained that section

107(b)'s exception to usual public disclosure mandated by section 107(a) is "intended to avoid

'affording an unfair advantage to competitors by providing them information as to the

commercial operations of the debtor.'"  In re MUMA Services Inc., 279 B.R. 478, 484 (Bankr.

D. Del. 2002) (citing In re Itel Corp., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

     39.     Since information related to the Additional Contracts is "commercial

information" within the ambit of section 107, the Court should enter an order permitting the

Debtors to file under seal all confidential information related to the Additional Contracts.

     40.     The identities of the Counterparties constitute confidential commercial

information because they represent a significant aspect of the value of the Business and the

Assets.  Access to the list of the Counterparties absent appropriate confidentiality restrictions

would entail releasing confidential information of critical value not only to any prospective

purchaser of the Additional Contracts but also to the Debtors' other businesses.  Therefore, it is

critical to the preservation of the value of the Debtors' estates that the Court allow for this

confidential information to be filed under seal.

     41.     As such, the Debtors respectfully submit that the Court should permit the Debtors

to file their certificate of service listing the names and addresses of such parties under seal.

**C.     Waiver of Automatic Ten-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

     42.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all

orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are

automatically stayed for ten days after entry of the order.  Similarly, under Bankruptcy Rule

6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts are

automatically stayed for ten days after entry of the order.  The purpose of Bankruptcy Rules

6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending

appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr.

P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

43.    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee

Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day

stay period, commentators agree that the 10-day stay period should be eliminated to allow a sale

or other transaction to close immediately where there has been no objection to the procedure.

See generally 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999).  Furthermore, if an objection

is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay

may be reduced to the amount of time necessary to file such appeal.  Id.

44.    Pursuant to the Ericsson Sale Agreement, and because of the potentially

diminishing value of the Assets, the Debtors must close this sale promptly after all closing

conditions have been met or waived.  It is in the Debtors' interest to complete the assumption

and assignment of the Additional Contracts either at closing or as soon thereafter as practicable.

Thus, waiver of any applicable stays is appropriate in this circumstance.

## Notice

45.    Notice of the Motion has been given via first-class mail, facsimile, electronic

transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the

Counterparties; (iii) the U.S. Trustee; (iv) the Monitor; (v) counsel to the Committee; (vi)

counsel to the Bondholder Group; and (vii) the general service list established in these chapter 11

cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that under the circumstances no

other or further notice is necessary.

## No Prior Request

46.    No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: October 30, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*

3209514.1