# IN THE UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS, INC., et al[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br><br>(Jointly Administered)<br><br>**Hearing Date: November 19, 2009, at 1:00 p.m**<br>**Objection Date: November 12, 2009, at 4:00 p.m.** |

## MOTION OF BELDEN INC. PURSUANT TO SECTIONS 362 AND 553 OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY TO EFFECTUATE A SETOFF OF PREPETITION AMOUNTS OWED BY AND BETWEEN BELDEN INC. AND DEBTORS

Belden Inc. ("Belden"), by and through its undersigned counsel, hereby moves this Court pursuant to sections 105, 362(d) and 553 of title 11 of the United States Code (the "Bankruptcy Code") for relief from the automatic stay to allow Belden to effectuate a setoff of prepetition amounts owing and due between Belden and a certain above-captioned Debtor, Nortel Networks Limited and certain debtor affiliates, including Nortel Networks, Inc. (collectively "NNL"), pursuant to certain prepetition agreements between the parties (the "Motion"), as further set forth below.

### Preliminary Statement

Prior to the Debtors filing their petitions for relief in these chapter 11 cases, Belden was a party to an Escrow Agreement dated July 16, 2008, which concerned a merger between two

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

1

companies known as Shark Acquisition Corp. ("Shark") and Trapeze Networks, Inc. ("Trapeze"). Belden is the parent corporation of Shark. NNL, through its wholly owned subsidiary Nortel Networks, Inc., was a shareholder of Trapeze. Under the Escrow Agreement, $10,000,000 in funds potentially payable to shareholders of Trapeze were placed in escrow, pending satisfaction of various conditions under the merger agreement and the Escrow Agreement. NNL owned 4.6782% of Trapeze and was potentially entitled to its pro rata share of the escrow amount, $467,823.75, upon distribution of the escrow funds. The obligations of Belden and NNL under these agreements are not in dispute, although the amounts at issue remain subject to adjustment as provided in the escrow agreement.

In addition, NNL is obligated to Belden in the amount of $332,344.57, for retirement/pension indemnification obligations arising from an Asset Purchase Agreement entered into by two respective predecessor companies, Northern Telecom Limited and Cable Design Technologies (CDT) Canada Inc., dated December 16, 1995.

Therefore, Belden seeks an order from this Court granting relief from the automatic stay so that Belden may properly assert its rights to setoff the pre-petition amounts due and owing from Belden to NNL against the pre-petition amounts owed from NNL to Belden. After application of its setoff rights, NNL will be left with a claim of up to $135,479.18 against the Escrow funds.

## JURISDICTION

1.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory relief sought in this matter is predicated upon sections 105, 362 and 553 of the Bankruptcy Code.

## BACKGROUND

2.   On January 14, 2009 (the "Petition Date"), the Debtors, including NNL, commenced these cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). Pursuant to an Order of this Court, the Chapter 11 Cases are being jointly administered.

3.   On January 26, 2009 the United States Trustee established the Committee of Unsecured Creditors (the "Committee") in the Chapter 11 Cases [Docket Nos. 141 & 142].

4.   On February 5, 2009, the Court entered its *Order Clarifying Relief Granted Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Honor Prepetition Obligations to the Customers* (the "Customer Obligation Order") [Docket No. 166]. The Court has ordered that "all rights of Debtors' customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors." (Customer Obligation Order, ¶ 5.)

### NNL Owes $332,344.57 in Pre-Petition Amounts to Belden

5.   On December 16, 1995, Northern Telecom Limited, a predecessor to NNL, entered into an Asset Purchase Agreement (the "APA") with Cable Design Technologies (CDT) Canada Inc., a predecessor to Belden. Under the APA (a copy of which is not attached due to its volume, but will be provided upon request), NNL sold certain business assets to Belden, and Belden agreed to pay certain amounts and assume certain obligations of NNL.

6.   Under the APA, NNL indemnified Belden against certain claims arising from employee benefit and pension plan obligations associated with the assets purchased under the APA (the "Pension Obligations"). The Pension Obligations subject to indemnification have accrued in the amount of $332,344.57. On or about June 16, 2009, Belden filed a proof of claim for the Pension Obligations, and individual proofs of claim are also being submitted with respect to the Pension Obligations.

7.     To the best of Belden's knowledge, the validity of NNL's obligations and the amounts owed to Belden are not in dispute.

### Belden Owes Up To $467,823.75 in Pre-Petition Amounts to NNL

8.     On July 16, 2008, Belden entered into a certain Escrow Agreement (the "Escrow Agreement") with Wells Fargo Bank, as escrow agent, and John Cadeddu, as representative of the stockholders of Trapeze Networks, Inc. ("Trapeze"). The Escrow Agreement was executed in connection with a Merger Agreement, whereby Shark Acquisition Corp. ("Shark") merged into Trapeze, with Trapeze as the surviving corporation. Shark was a wholly owned subsidiary of Belden.

9.     Under the Merger Agreement, Belden was required to withhold certain amounts (the "Escrow Amount") from the total consideration payable under the Merger Agreement to the stockholders of Trapeze on a pro rata basis. As a stockholder of Trapeze, Nortel Networks, Inc., a wholly owned subsidiary of Nortel Networks Limited, was potentially entitled to $467,823.75 of the $10,000,000 Escrow Amount, once the requisite delivery and release conditions in the Escrow Agreement are met.

### RELIEF REQUESTED

10.    Belden seeks relief from the automatic stay of Bankruptcy Code § 362(a) to effect setoffs of prepetition obligations owing (a) from NNL to Belden and (b) from Belden to NNL. Relief from the automatic stay would allow NNL and Belden to reconcile their undisputed prepetition obligations in a manner contemplated by the Bankruptcy Code and under applicable state law.

## BASIS FOR RELIEF

### Belden Is Entitled to Setoff the Amounts Owed to NNL Against NNL's Indemnification Obligations to Belden.

11.     The Bankruptcy Code preserves parties' non-bankruptcy rights of setoff. Specifically, Bankruptcy Code § 553 provides in pertinent part that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553; see also Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995) (holding that Bankruptcy Code § 553(a) "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy"). This right of setoff is intended to avoid "the absurdity of making A pay B when B owes A." Id. (quoting Studley v. Boylston Nat. Bank, 229 U.S. 523, 528 (1913)). "The right of setoff allows parties that owe mutual debts to each other to assert the amounts owed, subtract one from the other, and pay only the balance." Darr v. Muratore, 8 F.3d 854, 860 (1st Cir. 1993) (citing Cohen v. The Sav. and Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F. 2d 54 (3d Cir. 1990)).

12.     In addition, the right to set off claims "is an established part of our bankruptcy laws ... [and] should be enforced unless compelling circumstances . . . require otherwise." United States v. Offord Fin., Inc. (In re Medina), 205 B.R. 216, 223 (B.A.P. 9th Cir. 1996) (internal citations and quotations omitted); see also Bohack Corp. v. Borden, Inc., 599 F. 2d 1160, 1165 (2d Cir. 1979).

13.     A creditor may exercise its non-bankruptcy setoff rights pursuant to Bankruptcy Code § 553 where the creditor shows (1) the debtor owes the creditor a prepetition debt; (2) the creditor owes the debtor a prepetition debt; (3) the debts are mutual; and (4) the debts owed to

both the creditor and debtor are enforceable and valid. 11 U.S.C. § 553(a); see, e.g., Ames v. Dehart (In re Ames), 195 F. 3d 177, 182 (3d Cir. 1999); In re Koch, 224 B.R. 572, 576 (Bankr. E.D. Va. 1998); In re Czyzk, 297 B.R. 406, 409 (3d Cir. 2003).

14. It is well established that section 553 of the Bankruptcy Code, while providing guideposts and threshold requirements for the exercise of setoff rights of creditors against a bankrupt debtor, does not create such setoff rights. 11 U.S.C. § 553(a). Section 553 "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before commencement of the case under [the Bankruptcy Code] against a claim against the debtor that arose before commencement of the case." See id. Accordingly, appropriate state law setoff rights apply to creditors' assertions of setoff. 11 U.S.C. § 553(a); see also In re Garden Ridge Corp., 338 B.R. 627, 632 (Bankr. D. Del. 2006) (holding that set-off rights are determined according to applicable state law); Scherling v. Hellman Elec. Corp (In re Westchester Structures, Inc.), 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995); U.S. ex rel I.R.S. v. Norton, 717 F.2d 767 (3d Cir. 1983).

15. By the terms of the Escrow Agreement, Delaware law governs the setoff rights of the parties in the instant case. (Escrow Agreement, § 8(a)). Delaware law allows parties to setoff mutual debts. See Trader v. Wilson, 2002 WL 499888, at *4, n.7 (Del. Super. Ct. 2002); Walpole v. Walls, 2003 WL 22931330 (Del. Com. Pl. 2003);; Gray v. Hitchens Bros., 1989 WL 848982, at *1 (Del. Com. Pl. 1989); see also 10 Del. C. §§ 8106, 9536.

16. Belden has valid and enforceable state-law bases under the Escrow Agreement pursuant, *inter alia*, to the applicable Delaware law to effect setoff. Moreover, nothing in either the Escrow Agreement or the APA limits or restricts any rights of setoff of any party.

17. Under § 553 of the Bankruptcy Code, Belden has the affirmative right to setoff the Escrow Amount due to NNL against the Pension Obligations that NNL owes to Belden.

18. First, both the Escrow Amount due to NNL and the Pension Obligations owed to Belden are comprised entirely of amounts arising prepetition and due for prepetition claims and debts.

19. Second, no dispute exists with respect to any of the amounts at issue. Accordingly, these amounts are fully valid and enforceable.

20. In sum, applicable non-bankruptcy law permits Belden to exercise its setoff rights against NNL. NNL and Belden owe each other mutual debts that arose before the Debtors filed their petitions in bankruptcy. Thus, this Court should lift the automatic stay to permit Belden to exercise its setoff rights.

**Relief from the Automatic Stay is Appropriate to Allow Belden to Effectuate a Setoff.**

21. A party seeking to assert its setoff rights must obtain relief from the automatic stay imposed by § 362(a)(7) of the Bankruptcy Code prior to actually applying the asserted setoff. See In re Academy Servs., Inc., 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988). By this Motion, Belden seeks to comply with this procedural requirement.

22. The automatic stay provides important protections for debtors in bankruptcy cases, however, upon compliance with the procedural requirements that notice be given and a hearing be held, cause exists under § 362(d)(1) of the Bankruptcy Code to grant Belden relief from the automatic stay so that Belden, as a creditor, may move forward and apply its rights of setoff. In re NTG Indus., Inc., 103 B.R. at 197 (relief from stay granted to allow creditor to effectuate setoff); In re Whitaker, 173 B.R. 359 (Bankr. S.D. Ohio 1994) (same); In re Bevill, Bresler & Schulman Asset Mgmt. Corp., 896 F. 2d at 61.

23.     Setoff in the instant case is appropriate and needed for Belden and NNL to move forward with their independent operations. Section 362(a)(7) does not alter a creditor's setoff rights. Bevill, Bresler & Schulman Asset Mgmt. Corp., 896 F. 2d at 61; H.R. Rep. No. 595, 95th Cong. 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong. 2d Sess., at 51 (1978). More specifically, § 362(a)(7) stays enforcement pending an examination of the respective parties' rights. Id. Following a grant of stay relief, a creditor may then exercise its rights of setoff, that remain unimpaired by Section 362(a)(7). In re NTG Indus., Inc., 103 B.R. at 197. The automatic stay under Section 362(a)(7) does not alter a creditor's substantive rights of setoff, it only delays the exercise or application of those setoff rights. See In re Luz Int'l, Ltd., 219 B.R. 837, 841 (9th Cir. B.A.P. 1998).

24.     In the instant case, Belden's rights to setoff the Escrow Amount owed to NNL against NNL's Pension Obligations to Belden are undeniable, as the obligations being setoff are prepetition and undisputed. Such obligations are ripe to be setoff pursuant § 553 of the Bankruptcy Code, applicable statutory and common law, and Belden's equitable rights. The setoff requires no payment from any of the Debtors. The result is a netting effect, reducing debt owed by both NNL and Belden.

25.     Granting relief from stay to allow Belden to enforce its setoff rights does not, and will not, impair the Debtors' restructuring and reorganization efforts. Such stay relief also does not prejudice the rights of other creditors/customers to apply similar setoff rights. Cause exists under § 362(d)(1) to grant relief from the automatic stay to Belden, for the limited purpose of effectuating its valid prepetition setoff rights.

## RESERVATION OF RIGHTS

26.     Belden reserves all rights (1) to defend against challenges from other parties regarding Belden's claims against NNL, and (2) to seek recovery on other alternative grounds.

Belden further reserves all rights it may have against any Debtors (or their affiliates) in the related Canadian insolvency proceeding. Nothing herein shall be construed to constitute an admission, assumption, or acknowledgment of liability for the debts of any other entity.

WHEREFORE, Belden respectfully requests that the Court enter an Order (a) granting Belden relief from the automatic stay to effect a setoff of mutual obligations between NNL and Belden, and (b) granting Belden such other and further just and proper relief.

Dated: October 30, 2009

POTTER ANDERSON & CORROON LLP

*/s/ R. Stephen McNeill*
Laurie Selber Silverstein (#2396)
R. Stephen McNeill (#5210)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Telephone: (302) 984-6000
E-mail: lsilverstein@potteranderson.com
rmcneill@potteranderson.com

and

LEWIS, RICE & FINGERSH, L.C.
Larry E. Parres
John J. Hall
500 North Broadway, Suite 2000
St. Louis, MO 63102
Telephone: (314) 444-7600
E-Mail: lparres@lewisrice.com
jhall@lewisrice.com

***COUNSEL TO BELDEN INC.***