## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
                                    :

*In re*                                :       Chapter 11
                                      :

Nortel Networks Inc., *et al.*,[1]     :       Case No. 09-10138 (KG)
                                      :

                 Debtors.       :       Jointly Administered
                                      :

                                      :       **Hearing date: November 19, 2009 at 1:00 p.m. (ET)**
                                      :       **Objections due: November 12, 2009 at 4:00 p.m. (ET)**

-----------------------------------------------------------X

## APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF GLOBAL IP LAW GROUP, LLC *NUNC PRO TUNC* TO OCTOBER 13, 2009 AS INTELLECTUAL PROPERTY CONSULTANT TO THE DEBTORS AND DEBTORS IN POSSESSION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Application"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing the employment and retention of Global IP Law Group, LLC ("Global IP") as intellectual property consultant to the Debtors *nunc pro tunc* to October 13, 2009, (ii) approving the terms and conditions under which

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Global IP will be retained and compensated at the expense of the Debtors' estates, including certain limited indemnification rights, and (iii) granting them such other and further relief as the Court deems just and proper. In support of this Application, the Debtors rely on the Declaration of Steven G. Steger (the "Steger Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.    Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code, which were granted by this Court on February 27, 2009.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.

8.    On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., (Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.    In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.    On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.    On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.    On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.    On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].    An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

11.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

12.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

**Relief Requested**

13.    By this Application, the Debtors seek entry of an order pursuant to sections 105, 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1 (i) authorizing the employment and retention of Global IP as intellectual property consultant to the Debtors (as well as certain of their affiliates) *nunc pro tunc* to October 13, 2009, (ii) approving the terms and conditions under which Global IP will be retained and compensated at the expense of the Debtors' estates as contained in that certain Revised Response to Request For Proposal by and between NNI, NNL, NNUK, and NN Ireland on the one hand and Global IP on the other, dated as of October 15, 2009, (the "RFP") (the

---

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

conflicts, work product and fee proposal provisions of which are attached hereto as <u>Exhibit C</u>)[5]

and the Master Consulting Agreement (the "<u>MCA</u>" and, together with the RFP, the

"<u>Agreement</u>") by and between NNI, NNL, NNUK, and NN Ireland on the one hand and Global

IP on the other, dated as of October 15, 2009, attached hereto as <u>Exhibit D</u>, and (iii) granting

such other and further relief as the Court deems just and proper.

### Basis for Relief

14.     Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ

one or more professionals that do not hold or represent an interest adverse to the estate and that

are disinterested persons to assist the debtor-in-possession in carrying out its duties under the

Bankruptcy Code.  11 U.S.C. § 327(a).

15.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section

327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and

conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee

basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

16.     Bankruptcy Rule 2014 requires that an application for retention of a professional

person include:

> [S]pecific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee.

---

[5]     A complete, unredacted copy of the RFP, which contains confidential information, is being provided to the
Office of the United States Trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . .  shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1(a).

17.    By this Application, the Debtors request that the Court approve the employment and compensation arrangements with Global IP as set forth herein pursuant to section 328(a) of the Bankruptcy Code.  These employment arrangements are beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for Global IP to act expeditiously and prudently with respect to the matters for which it will be employed.

18.    The Debtors also request approval of the employment of Global IP *nunc pro tunc* to October 13, 2009.  Such relief is warranted by the extraordinary circumstances presented by these cases.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990).  The complexity, intense activity and speed that have characterized these cases have necessitated that the Debtors, Global IP, and the Debtors' other professionals focus their immediate attention on time-sensitive matters and promptly devote substantial resources to the affairs of the Debtors pending submission and approval of this Application.

**Selection of Global IP**

19.    As part of Nortel's exploration of various sale opportunities, Nortel has begun reviewing its intellectual property portfolio, which includes approximately 3,500 "patent families" that are not predominant to any of Nortel's businesses that have been or may be sold in connection with the various creditor protection proceedings (the "Residual Patent Portfolio").

Certain of Nortel's affiliates, including NNL, NNI, NNUK and NN Ireland have decided it is in their interests, as owners of and/or holders of exclusive licenses to patents contained within the Residual Patent Portfolio, to retain an intellectual property consultant to evaluate the marketability of the assets in the Residual Patent Portfolio, and the best manner in which to their ability to maximize the value realized from the portfolio.  To that end, NNL on behalf of itself, NNI and the other parties to the Agreement, requested proposals from nine intellectual property experts that could potentially offer such services.  On August 27, 2009, NNL submitted requests for proposal to these nine experts.  Based on a submission and interview process that followed, NNL and NNI, in consultation with their legal and financial advisors as well as representatives of the Committee and the Bondholder Group, selected Global IP to provide these services.

20.    Global IP is a global law firm focused on monetizing intellectual property (particularly patents) through sale, licensing and litigation.  Collectively, Global IP partners have more than 45 years of experience in all aspects of patent monetization, and have negotiated and closed over $300 million in intellectual property sales, licenses, and settlements.  Global IP partners and associates have extensive experience in providing monetization strategies and performing all aspects of the monetization process including identifying marketable patent assets, developing detailed claim charts to demonstrate the value of issued and pending claims, developing marketing materials, identifying potential strategic buyers and key contacts at those buyers, approaching both strategic and non-strategic buyers with the opportunity to purchase the portfolio, negotiating with the various buyers, and litigating claims.  Global IP has high-level business contacts in many different industries and at all major patent aggregators and licensing companies.  Moreover, Global IP maintains extensive market intelligence regarding active buyers' interest in various technologies.

21.     The Debtors believe that the retention of experienced professionals specializing in the provision of intellectual property consulting services, such as Global IP, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals in these cases.    The Debtors believe they require the services of a capable and experienced intellectual property consulting firm because, among other reasons, the valuation and monetization of the Residual Patent Portfolio cannot be effectuated without such services, and such efforts are important to the Debtors' success in their Chapter 11 cases both individually and as part of Nortel's global restructuring efforts.

22.     The Debtors and their affiliates chose Global IP to act as their intellectual property consultant postpetition, and particularly to assist them in the management of their Residual Patent Portfolio based upon, among other things, (i) Global IP's presentation to Nortel during the selection process, which far exceeded that of any of the other participants; (ii) the Debtors' need to retain an intellectual property specialist to provide advice with respect to the disposition of the Residual Patent Portfolio, and (iii) Global IP's extensive experience and excellent reputation in providing intellectual property consulting services, including partner experience in chapter 11 bankruptcy cases.

23.     As a result, the Debtors believe that Global IP is well qualified to perform these services and represent the Debtors' interests in these chapter 11 cases.    Denial of the relief requested by the Debtors in this Application would deprive the Debtors of the assistance of uniquely qualified advisors.

**Scope of Services**

24.    On or about October 15, 2009, NNI, NNL, NNUK, and NN Ireland on the one hand and Global IP on the other reached an agreement on the services sought from Global IP, and entered into the Agreement.[6]

25.    Pursuant to the Agreement,[7] Global IP will render consulting and advisory services to the Debtors, NNL, NNUK and NN Ireland with respect to the Residual Patent Portfolio.  The Debtors contemplate three potential phases of services.  The first phase involves asset identification, ownership due diligence, and creation of an independent claims database ("Phase 1").  In Phase 1, Global IP also will perform a preliminary market analysis, and identify key segments of the Residual Patent Portfolio assets, including an indication of relative patent strength.  If implemented, the second phase would involve developing business cases for each key segment of the Residual Patent Portfolio ("Phase 2").  The third phase would involve a valuation analysis of the top segments of the Residual Patent Portfolio, development of strategic alternatives for exploiting the Residual Patent Portfolio, and recommendation of a strategy to maximize the value of the entire Nortel patent portfolio and IP business ("Phase 3").  Global IP has not been retained with respect to Phase 2 and Phase 3.  Retention for these services will be negotiated and proposed to the Court at the appropriate later date if and to the extent it becomes necessary.  Phase 1, the retention requested by this Application, will include:

> a.    providing the Debtors with a summary analysis of the Residual Patent Portfolio, including narrative description and overview of key markets;

---

[6]    Within no later than 30 days after receipt of the Court approval for the Application, NNSA may accede to the Agreement by written notice confirming such accession sent on behalf of NNSA to each of NNL, NNI, NNUK and NN Ireland.

[7]    The summary of the Agreement in this Application is solely for the benefit of the Court and parties in interest.  To the extent that the summary and the terms of the Agreement are inconsistent, the terms of the Agreement shall control.  Capitalized terms not defined in this Application shall have the meanings given them in the Agreement.

b.      providing the Debtors with one or more electronic, fully searchable databases of the independent claims in the Residual Patent Portfolio;

c.      providing the Debtors with incidental identification of possible claim improvements;

d.      providing the Debtors with an overview of the key segments of the Residual Patent Portfolio, including an indication of the relative patent strength;

e.      providing the Debtors with recommendations on Phase 2, Phase 3 and monetization strategies; and

f.      providing such other services as customary in engagement of this type contemplated hereby and as may be reasonably agreed upon by the Debtors and Global IP.

26.     It is necessary that the Debtors employ Global IP to render the foregoing professional services.  The Debtors believe that the services will not duplicate the services that other professionals will be providing the Debtors in these chapter 11 cases.  Specifically, Global IP will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases to avoid the unnecessary duplication of services.

**Professional Compensation and Employment Terms**

27.     Global IP's decision to commence this engagement to advise and assist the Debtors is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment and compensated for its services and reimbursed for the expenses it incurs in accordance with its customary billing practices.

28.     The Agreement provides that NNL will make all payments to Global IP due under the Agreement, and that NNI, NNUK, and NN Ireland will reimburse NNL for their share of any such costs, which share will be agreed separately among NNL, NNI, NNUK and NN Ireland.

29.     Prior to making any payment to NNL for NNI's share of the professional services rendered and expenses incurred by Global IP in connection with these chapter 11 cases, NNI will

file a motion with the Court for approval of such costs, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and any other applicable procedures and orders of the Court and consistent with the proposed compensation set forth in the Agreement (the "Fee Structure").  Such motion will provide the Court with the same level of detail as is customarily contained in a fee application filed pursuant to sections 330 and 331 of the Bankruptcy Code.

30.    In summary, the Fee Structure provides that NNL will pay the following compensation to Global IP (with NNI to pay a share to be agreed between the Nortel entities):

    a.    $350,000 for analysis of the Residual Patent Portfolio, payable in three equal installments and invoiced as follows:

        (i)    one-third at October 31, 2009;

        (ii)    one-third at November 30, 2009; and

        (iii)    one-third at the later of Acceptance of the Deliverables or December 31, 2009.

    b.    NNL also will reimburse Global IP, at cost, for out-of-pocket expenses.  The cost of data entry for the proposed claims database is estimated at ten thousand dollars ($10,000).  The travel and material budget for Phase 1 is estimated at twenty-five thousand dollars ($25,000).  All out-of-pocket expenses of Global IP in excess of these estimates must be pre-approved by Nortel in writing before being incurred.

31.    As set forth in the Steger Declaration, the Fee Structure is reasonable and comparable to those generally charged by intellectual property consulting firms of similar stature to Global IP and for comparable engagements, both in-and out-of-court.  The Debtors believe, as does Global IP, that the Fee Structure is in fact reasonable, market-based and designed to fairly compensate Global IP for its work and to cover fixed and routine overhead expenses.

32.    Global IP will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases,

including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.

33.     Given the numerous issues which Global IP may be required to address in the performance of its services hereunder, Global IP's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Global IP's services for engagements of this nature, the Debtors believe that the Fee Structure described above is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

**Indemnification and Reimbursement Provisions**

34.     The Debtors also have agreed, among other things, to indemnify and reimburse Global IP in certain discrete circumstances in accordance with the indemnification provisions set forth in the Agreement.

35.     The indemnification and reimbursement provisions reflected in the Agreement are customary and reasonable terms of engagement for compensation specialists such as Global IP for proceedings both out of court and in chapter 11.  The terms of the Agreement, including indemnification provisions, generally were fully negotiated between Nortel and Global IP at arm's-length and the Debtors respectfully submit that the Agreement, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

36.     Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification granted under the Agreement, as modified in the proposed order attached hereto as <u>Exhibit A</u> and as set forth below:

> a.     For the avoidance of doubt, the Debtors shall be jointly and severally liable with their affiliates who are parties to the Agreement for

all obligations pursuant to the Agreement as they relate to this engagement;

b.      Subject to the provisions of subparagraph (c) and (d) below, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, the Indemnified Party (as defined in the Agreement) in accordance with the Agreement for any claim arising from, related to, or in connection with the services provided for in the Agreement, but not for any claim arising from, related to, or in connection with Global IP's postpetition performance of any other services unless such postpetition services and indemnification therefor are approved by the Court;

c.      Notwithstanding any indemnification provisions of the Agreement to the contrary, the Debtors shall have no obligation to indemnify Global IP or provide reimbursement to Global IP (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Global IP's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Global IP's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (d), below, to be a claim or expense for which Global IP should not receive indemnity or reimbursement under the terms of the Agreement, as modified by this Order;

d.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Global IP believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Agreement (as modified by this Order), including without limitation the advancement of defense costs, Global IP must file an application therefor in this Court, and the Debtors may not pay any such amounts to Global IP before the entry of an order by this Court approving the payment.  This subparagraph (d) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Global IP for indemnification or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Global IP.

14

### Global IP's Disinterestedness

37.    To the best of the Debtors' knowledge, information and belief, and based and in reliance upon Global IP's review of its client files and records and the Steger Declaration: (i) Global IP is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code and (ii) Global IP holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Global IP is to be employed.  As disclosed in the Steger Declaration, Global IP has represented and may continue to represent various creditors and other parties in interest in these cases, but only in matters unrelated to the Debtors or these chapter 11 cases.

### No Duplication of Services

38.    The Debtors intend that the services of Global IP will compliment, not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases.  Global IP understands that the Debtors have retained and may retain additional professionals during the term of the engagement and will work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

### Notice

39.    Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

40.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  October 30, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

   - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s Ann C. Cordo*
_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

3209847.1