IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re* | Chapter 11 |
|  | Case No. 09-10138 (KG) |
| Nortel Networks, Inc., et al., |  |
|  | Jointly Administered |
| Debtors. | **Re: Docket Nos. 1627 and 1685** |

**OBJECTION OF QWEST COMMUNICATIONS COMPANY, LLC TO:**

**DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO
A STALKING HORSE ASSET SALE AGREEMENT WITH CIENA CORPORATION,
(B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID
PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE
ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) AUTHORIZING THE FILING
OF CERTAIN DOCUMENTS UNDER SEAL AND (E) SETTING A DATE FOR THE
SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF
CERTAIN ASSETS OF DEBTORS' METRO ETHERNET NETWORKS BUSINESS**

**AND**

**NOTICE OF DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN
CERTAIN CONTRACTS**

Qwest Communications Company, LLC f/k/a Qwest Communications Corporation

("Qwest"), through its undersigned counsel, files this Objection (the "Objection") to Debtors'

Motion for Orders (I)(A) Authorizing Debtors' Entry Into A Stalking Horse Asset Sale

Agreement With Ciena Corporation (the "Purchaser"), (B) Authorizing And Approving The

Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The

Assumption And Assignment Procedures, (D) Authorizing The Filing Of Certain Documents

Under Seal And (E) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving

(A) The Sale Of Certain Assets Of Debtors' Metro Ethernet Networks Business (the "Sale

Motion") (D.I. 1627) and the Notice of Debtors' Request for Authority to Assume and Assign

Certain Contracts (the "Assignment Notice").  In support of the Objection, Qwest states as follows:

## I.    FACTUAL BACKGROUND

1.    On January 14, 2009 (the "Petition Date"), Nortel Networks Corporation and their affiliates (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    Prior to the Petition Date, Qwest and the Debtors entered into certain executory contracts (the "Contracts").  As a result of the Contracts, Qwest is a customer of the Debtors.

4.    On October 7, 2009, the Debtors filed the Sale Motion.  (D.I. 1627).  The Debtors also filed a proposed Order (the "Proposed Order") granting the Sale Motion.

5.    Pursuant to Section 2.1.3 of the Sale Agreement, the Purchaser agreed to assume:

> *all Liabilities, whether arising before, on or after the Closing Date*, with respect to (A) any Cure Costs payable by the Purchaser pursuant to Section 2.1.7(b) of the Sellers Disclosure Schedule, (B) any obligation to buy back from the relevant resellers the Products sold by the Business (excluding the EMEA Business) to its resellers under the Seller Contracts (to the extent such Contracts are Assigned Contracts), (C) any obligations under any warranty liabilities relating to the Products and Services which have been supplied under any Assigned Contract including warranties in respect of Known Product Defects and (D) all liabilities and obligations of a type accrued on the Business' historic Financial Statements under the heading "Other Accrued and Contractual Liabilities" to the extent reflected in the final calculation of Net Working Capital Transferred . . .

See Sale Agreement § 2.1.3 (emphasis added).

6.    On the other hand, paragraph 11 of the Proposed Order provides that upon its entry, "all *defaults* (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured and satisfied though the Payment of the Cure

Amounts" and that "no other amounts will be owed by the Debtors, their estates or the Purchaser" for the pre-closing period.

7.      Unlike the language of Section 2.1.3 of the Sale Agreement, paragraph 11 of the Proposed Order does not provide for the payment of obligations that have accrued prior to the closing, but are not yet payable and therefore not in default as of the closing.

8.      The deadline for objecting to the Sale Motion is November 6, 2009. The auction (at which time the successful bidder will be selected) does not commence until November 13, 2009. Accordingly, pursuant to the Assignment Notice, Qwest hereby requests adequate assurance materials be delivered to its undersigned counsel.

## II.      SUMMARY OF OBJECTIONS

9.      Qwest objects to the Sale Motion and the Assignment Notice on the following grounds:

    a.      The Debtors have not adequately identified the contracts to be assumed and assigned;

    b.      The Debtors and Purchaser must (i) cure all defaults and (ii) close the "gap" in liability for contractual obligations that, under the Proposed Order, will be satisfied by neither the Debtors nor the Purchaser;

    c.      The Debtors have not yet provided adequate assurance of future performance by the Purchaser or other successful bidder; and

    d.      The Proposed Order improperly enjoins non-debtor contract parties from enforcing their rights.

## III.   OBJECTIONS

### A.   THE DEBTORS HAVE NOT ADEQUATELY IDENTIFIED THE CONTRACTS TO BE ASSUMED AND ASSIGNED.

10.   Qwest has many contracts with the Debtors.  In the Assignment Notice, the Debtors list seventeen (17) "Maintenance Agreements" with Qwest, but do not identify those Contracts by date or any other distinguishing information.

11.   The Assignment Notice also lists a Procurement Agreement for Transmission Products w/ Schedule A-S (Agreement No. #QWT9901P) and Amendments 1106 5873 11698 Am#6.  Although the Debtors provide more information regarding the Procurement Agreement, the contract and amendment numbers provided by Nortel are its own internal contract numbers: Those numbers do not mean anything to Qwest and do not help Qwest identify which of the Contracts is being assumed.

12.   Based on the sparse information provided by the Debtors, Qwest is unable to identify exactly what Contracts the Debtors propose to assume and assign to the Purchaser.

### B.   THE DEBTORS AND PURCHASER MUST (I) CURE ALL DEFAULTS AND (II) CLOSE THE LIABILITY GAP TO ASSUME AND ASSIGN THE CONTRACTS.

13.   The Bankruptcy Code generally authorizes a debtor, with bankruptcy court approval, to assume or assign an executory contract without the consent of the other party to the contract and without regard to contractual provisions prohibiting such assignment.  Specifically, Section 365(a) provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract." 11 U.S.C. § 365(a).

14.   Section 365(b)(1)(A) and (B) of the Bankruptcy Code requires a debtor to "cure" defaults and "compensate" the non-debtor party to an executory contract as a condition to the debtor in possession's assumption of an executory contract.  See 11 U.S.C. § 365(b)(1)(A)-(B).

15.     When a debtor assumes an executory contract or an unexpired lease it becomes a binding obligation of the debtor's bankruptcy estate.  The debtor must cure defaults and provide adequate assurance of future performance in order to assume an executory contract or unexpired lease.  See 11 U.S.C. § 365(b)(1)(A)-(C).  If a debtor assumes a contract, it must do so *cum onere*, with all the burdens as well as the benefits.  See Cinicola v. Scharffenberger, 248 F.3d 110, 119-120 (3d Cir. 2001); American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 78 (3d Cir. 1999); see also In re Italian Cook Oil Corp., 190 F.2d 994, 996-97 (3d Cir. 1951).  A debtor may not "cherry pick" the benefits and shirk the obligations under the contract.  See Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994); In re Leslie Fay Cos., Inc., 166 B.R. 802, 808 (S.D.N.Y. 1994) ("An executory contract cannot be assumed in part and rejected in part").

16.     Accordingly, to assume any of the Contracts, the Debtors and/or the Purchaser must cure any arrearages, and pay any other sums that fall due prior to the assumption and/or assignment of the Contract.  The Purchaser must also provide adequate assurance of future performance of all monetary and nonmonetary obligations that fall due post-closing (regardless of when those obligations accrue).

17.     To date, the Debtors have not identified adequately which Contracts they intend to assume and assign.  Accordingly, Qwest objects to the proposed cure amount of "$0" and reserves its rights with respect to the actual cure amounts.

18.     In addition, as indicated above, paragraph 11 of the Proposed Order conflicts with Section 2.13 of the Sale Agreement.  Although Section 2.1.3 of the Sale Agreement provides for the Purchaser to pay "all Liabilities, whether arising before, on or after the Closing Date," with respect to any "Cure Costs" and warranty liabilities, and certain other accrued contractual

liabilities, paragraph 11 of the Proposed Order is much more limited.  Paragraph 11 of the Proposed Order provides that upon its entry, "all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured and satisfied though the Payment of the Cure Amounts" and that "no other amounts will be owed by the Debtors, their estates or the Purchaser" for the pre-Closing period.  Compare Sale Agreement at § 2.13 and Proposed Order at ¶ 11.

19.     Accordingly, unlike Section 2.1.3 of the Sale Agreement, paragraph 11 of the Proposed Order does not provide for the payment of obligations that have *accrued* prior to the closing, but are *not yet due* as of the closing (and, therefore, not defaults that need to be "cured").

20.     The Debtors and the Purchaser cannot leave non-debtor parties with a liability "gap" in the obligations under an assumed contract.

21.     Section 365 authorizes a debtor to assign a "contract," not part of a "contract." See 11 U.S.C. § 365(f)(2); see also American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999) (noting that Section 365(k) provides for the assignment "*of a contract*") (emphasis in original).  An "assignment" of a "contract" involves "involves a commitment by the assignee to perform *all obligations* under the contract, as well as to acquire all rights created by the contract."  Id. at 81 (emphasis added); see also In re AHERF, 383 F.3d 169, 175, 176-77 (3rd Cir. 2004) (discussing American Flint Glass).

22.     Thus, the Purchaser must be liable for all obligations under an assumed contract that are not defaults already cured as part of the debtor's assumption of the contract. Otherwise, the Debtor is not "assigning" the contract.[1]

**C.     OBJECTION AND RESERVATION OF RIGHTS REGARDING ADEQUATE ASSURANCE**

23.     Section 365(f)(2) of the Bankruptcy Code provides that a debtor in possession may assign an executory contract only if the trustee assumes the contract and the assignee provides adequate assurance of future performance. See 11 U.S.C. § 365(f)(2).

24.     Qwest objects to the present lack of any evidence of adequate assurance of future performance and reserves its right to challenge any successful purchaser's ability to provide adequate assurance of future performance.

**D.     THE INJUNCTION IN THE PROPOSED ORDER IS IMPROPER.**

25.     Paragraph 10 of the Proposed Order purports to enjoin creditors with respect to the assertion of their contractual rights under assumed contracts. See Proposed Order at ¶ 10.

26.     The Debtors and the Purchasers cannot be awarded an injunction in the Proposed Order. To obtain an injunction, the Debtors must file an adversary proceeding. See Fed.R.Bankr.P. 7001(7) ("The following are adversary proceedings: . . . (7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12 or chapter 13 plan provides for the relief.").

---

[1]  Of course, the Debtor would not be entitled to the release provided by Section 365(k) absent an "assignment" of a contract. See American Flint Glass, 197 F.3d at 80-81; AHERF, 383 F.3d at 175, 176-77.

27.     The failure to file an adversary proceeding, by itself, is a basis for denying the injunction.  In re Conxus Comm'cns, Inc., 262 B.R. 893, 899 (D. Del. 2001) (failure to "file the required adversary proceeding was alone sufficient reason for the Bankruptcy Court to deny" request for an injunction.) (citing Fed.R.Bankr.P. 7001(7)).

28.     Moreover, the wording of the proposed injunction is so broad as to prohibit non-debtor contract parties from rightfully acting to protect their interests in the event of monetary or nonmonetary defaults under assumed contracts.  Paragraph 10 should be stricken from the Proposed Order.

WHEREFORE Qwest respectfully request that this Court enter an Order (i) sustaining the Objection, and (ii) granting such further relief as is appropriate.

Dated:  November 6, 2009          Respectfully submitted,
        Wilmington, Delaware
                                  REED SMITH LLP

                              By: /s/ Kurt F. Gwynne
                                  Kurt F. Gwynne (No. 3951)
                                  1201 N. Market Street, Suite 1500
                                  Wilmington, DE 19801
                                  Telephone: (302) 778-7500
                                  Facsimile: (302) 778-7575
                                  Email: kgwynne@reedsmith.com


                                  Counsel to Qwest Communications Company, LLC

- 8 -