UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks, Inc., et al., | ) | Case Nos. 09-10138 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

**OBJECTION OF MOTOROLA, INC. TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL, AND (E) SETTING A DATE FOR THE SALE HEARING AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS' METRO ETHERNET NETWORKS BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

Motorola, Inc. (collectively, together with any affiliated entities participating in the business or transactions referenced herein "Motorola"), by its undersigned counsel and in compliance with this Court's prior orders, makes and files this objection ("Objection") to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry Into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Approving the Notice Procedures and the Assumption and Assignment Procedures, (D) Authorizing the Filing of Certain Documents under Seal, and (E) Setting a Date for the Sale Hearing and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' Metro Ethernet Networks Business Free and Clear of All Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory Contracts (the "Sale Motion"), as well as to any and all Notice of Debtors' Request for Authority to Assume and Assign Certain Contracts or any other notice for the

assumption and assignment of an executory contract that have or may hereafter be directed to Motorola (the "Notice"). As and for its Objection, Motorola states the following:

## INTRODUCTION

1. Motorola is a global communications company that develops, implements and executes a broad portfolio of technologies, solutions and services—including wireless handsets, wireless accessories, digital entertainment devices, wireless access systems, voice and data communications systems and enterprise mobility products.

2. In order to deliver the high quality and specialized products and services in its portfolio, Motorola maintains a supply chain of vendors and other third party service providers. Motorola employs a rigorous qualification process for each of these vendors and providers, continuously monitors the quality of performance under each of these arrangements, and shares highly confidential and sensitive information with them to facilitate their work with Motorola. By the terms of these relationships and applicable law, none of these relationships are assignable or delegable without Motorola's consent.

3. Nortel Networks, Inc. is a qualified Motorola supplier, and furnishes both goods and services to Motorola pursuant to that certain Supply, Installation and Service Agreement (the "Supply Agreement"), replacing a prior Supply, Installation and Service Agreement dated July 22, 2002, as amended and modified from time to time. There are multiple amendments and annexed exhibits to the Supply Agreement as well as other related agreements, that govern the business relationship between Motorola and the Debtors (collectively, the "Motorola Agreements").

4. Pursuant to the Sale Motion, the Debtors sought, among other things approval of the Debtors' asset sale agreement with Ciena Corporation for, among other things, the sale of certain assets as a "stalking-horse" purchase agreement, including the assumption and assignment of various customer contracts.

5. While Motorola has not yet been able to confirm receipt of an assumption and assignment notice with respect to any of the Motorola Agreements, the Sale Motion does contemplate the assignment of various "customer contracts." Pursuant to the order entered on October 16, 2009, approving, in part, the assumption and assignment procedures, a counterparty has until November 6, 2009 at 4:00 p.m. Eastern Time to object to any matter pertaining to the proposed assumption and assignment of the contract. In an abundance of caution and until Motorola is able to confirm that the Motorola Agreements are not included in the proposed assignments, Motorola files this objection on a protective basis. While Motorola does not rule out the possibility that it may be willing to accept assignment of the Motorola Agreements to one or more of the proposed purchasers, Motorola cannot confirm such acceptance until the prospective assignee has been properly qualified as a Motorola supplier, and satisfactory documentation confirming the go-forward relationship has been finalized.

## RELEVANT FACTS

6. On October 7, 2009, the Debtors filed its Sale Motion, wherein the Debtors indicated their contracts between the Debtors and their customers to be assumed and assigned as a part of the sale of the Metro Ethernet Networks business ("Assumed Customer Contracts"), and the identity of the parties to the Assumed Customer Contracts is a valuable component of this asset.

7. On October 16, 2009, the court entered an order approving the procedures for the assumption and assignment of the Assumed Customer Contracts set forth in the Sale Motion (the "Order") that, in summary, provides that identities of the Debtors' customers constitutes confidential commercial information so any list disclosing the identity of such counterparties may be filed under seal to protect the value of the Assumed Customer Contracts.

8. On October 19, 2009, Debtors filed a Notice of Debtors' Request For Authority to Assume and Assign Certain Contracts, and pursuant to the Order, a list identifying the Assumed Customer Contracts is not publicly available.

9. Pursuant to this notice, any demand for adequate assurance, objection to any cure amount and objection to the assumption and assignment of any executory contract to be assumed and assigned must be filed on or before November 6, 2009.

10. While Motorola has not yet been able to confirm receipt of an individualized notice, the Motorola Agreements could be construed to fall within the general definition of a customer contract to be assumed and assigned under the Sale Motion.

11. Motorola has made diligent inquiries into the matter of whether it has received a Notice indicating Motorola Agreements are among the Assumed Customer Contracts; however based on the information available, Motorola has thus far been unable to determine whether the Motorola Agreements are among the Assumed Customer Contracts.

12. As a protective measure, Motorola files its Objection to reserve all rights, claims and objections of Motorola, including but not limited to, Motorola's objection to the cure amount, Motorola's objection to the assumption and assignment of the Motorola Agreements as an Assumed Customer Contract, Motorola's right to make a demand for adequate assurance of future performance, Motorola's right to a claim of default arising under the Motorola

Agreements, while preserving any and all rights Motorola is entitled to pursuant to the Motorola Agreements and under applicable law.

## II. OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE MOTOROLA AGREEMENTS

13. Motorola objects to the assumption and assignment of the Motorola Agreements and withholds consent to any such assignment, whether to the stalking horse bidder, or to another purchaser at the sale (the "Purchaser"), unless and until Motorola has had an opportunity to qualify that Purchaser as an approved Motorola supplier, ensure that Motorola's confidential and proprietary information is protected, and to document the go forward arrangements accordingly.

14. The Motorola Agreements are executory contracts within the meaning of 11 U.S.C. § 365. Section 365 permits a debtor-in-possession to assume or reject executory contracts, subject to certain limitations contained in the statute. *See* 11 U.S.C. §365(c).

15. Among those limitations, section 365(c)(1) precludes the Debtors from assuming or assigning an executory contract where:

> (A) applicable law excuses a party . . . to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment

11 U.S.C. § 365(c)(1).

11. Section 365(c)(1), as interpreted by many federal courts, prevents the assumption of executory contracts by the debtor in possession where "applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material." *In re Catapult Entertainment, Inc.,* 165 F.3d 747, 754-755 (9th Cir. 1999); *See also In re West*

*Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32 (Bankr. D. Del. 1999).

12. Moreover, the court in *Catapult* noted that § 365(c)(1) protects a non-debtor party to a contract from being forced to accept performance from or render performance to a party other than the one with which the party originally contracted, where applicable law excuses the non-debtor party. 165 F.3d at 752.

13. Under Illinois law, which is the law governing the Supply Agreement, "In the case of an executory contract, . . . the rule is well settled that the contract generally is not assignable without the consent of both parties thereto, where the personal acts and qualities of one of the parties form a material and ingredient part of the contract." *Ginsburg v. Bull Dog Auto Fire Insurance Association of Chicago*, 328 Ill. 571, 574 (1928).

14. The Motorola Agreements are a classic example of the sort of undertaking "where the personal acts and qualities of one of the parties form a material and ingredient part of the contract." Motorola goes to tremendous time and effort to qualify those suppliers and vendors most capable of participating in the development, manufacture, distribution and sale of Motorola's highly specialized products and services. If Motorola were forced to accept performance without these safeguards, it would be, to say the least, highly problematic for Motorola's efforts to assure supply chain reliability and quality. In addition, Motorola's interests would be harmed substantially if it were forced to share confidential and proprietary information with a competitor or to share such information without sufficient safeguards against improper use or disclosure of that information.

15. As a result, there is sufficient "applicable law" to prevent the Debtors from assuming or assigning the Motorola Agreements absent Motorola's consent. *See, e.g.*, *In re West*

*Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 48 (Bankr. D. De. 1999); *see also In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th Cir. 1998). Motorola therefore objects to the assumption or assignment of the Motorola Agreements in light of *In re West* and *In re Catapult Entertainment, Inc.*, *supra.*, absent an opportunity for Motorola to qualify the proposed purchaser and assignee as a supplier, and to conclude appropriate, go forward contractual arrangements with that party.

## III. OBJECTION TO CURE AMOUNT

16. Without waiving the foregoing objection to the assumption and assignment of the Motorola Agreements and reserving any and all rights, claims and actions pursuant to its objection, defaults arising under the Motorola Agreements must be cured as of the time of the assumption. *See* 11 U.S.C. § 365(b)(1).

17. As noted above, Motorola has not yet been able to ascertain which, if any, of the Motorola Agreements are proposed to be Assumed Customer Contracts. It necessarily follows that Motorola has not had a sufficient opportunity to verify any cure proposed with respect to any such agreements.

18. Motorola therefore objects to any cure proposed with respect to any of the Motorola Agreements, until such time as Motorola has had an opportunity to confirm the status of performance thereunder.

## IV. DEMAND FOR ADEQUATE ASSURANCE

19. Debtors must provide adequate assurance of future performance as a prerequisite to the assumption of an executory contract. *See* 11 U.S.C. § 365(b). Motorola, without waiving and expressly reserving all other rights, claims and objections, and specifically Motorola's objection to the assumption and assignment of the Motorola Agreements, demands adequate

assurance of future performance of any and all of the Motorola Agreements proposed to be assigned, all as required by 11 U.S.C. § 365(b)(1).

20. Pursuant to section 365(f), a debtor may only assign an executory contract if it assumes the contract pursuant to the terms of section 365, and provides adequate assurance of future performance by the assignee of such contract, whether or not there has been a default in such contract or lease.

21. Motorola demands adequate assurance that Motorola's confidential and proprietary information that is shared pursuant to the Motorola Agreements will be safeguarded by the appropriate protective procedures, particularly if the proposed assumption of the Motorola Agreements would entail any sharing or disclosure of such confidential and proprietary information to a party that is or potentially could be a competitor of Motorola.

22. No Motorola Agreement may be assigned without a showing of adequate assurance of future performance, and Motorola hereby makes a demand for such a showing.

23. Responses to Motorola's demand for adequate assurance should be sent to Mortorola's counsel, Jonathan W. Young, by electronic mail at young@wildman.com, with a copy to Mary E. Olson by electronic mail at molson@wildman.com.

**RESERVATION OF RIGHTS**

24. Motorola is willing to meet with any and all proposed purchasers and assignees of the Motorola Agreements, and to consider, in its discretion, whether such parties may properly be qualified as Motorola suppliers. Until Motorola has had an opportunity to conduct that due diligence, and to consent to the proposed assignment, Motorola respectfully submits that any assignment of the Motorola Agreements should not be approved due to the resulting failure of the Debtors to satisfy the elements of 11 U.S.C. § 365(c).

25. Without waiving its objection to the assignment of the Motorola Agreements, Motorola also reserves the right to object to the cure amount, the right to not be bound to such corresponding cure amount, the right to assert claims for any default arising under the Motorola Agreements, and reserves the right to amend or supplement this statement and/or object to any cure amount.

26. Without waiving its objection to the assignment of the Motorola Agreements, Motorola also demands adequate assurance of future performance, and reserves the right to make future demands for such assurance pursuant to section 365(b), including the development of procedures to protect and safeguard Motorola's confidential and proprietary information that may be disclosed pursuant to the Motorola Agreements.

27. Motorola further reserves all rights, claims, defenses and objections stated herein, under the Motorola Agreements and under applicable law, and the right to raise these rights, claims, defenses, and objections to any proposed assumption and assignment.

28. Motorola reserves the right to amend, supplement, or otherwise modify this Objection, including, without limitation, the right to contest the cure amount asserted by the Debtors in relation to the assumption and assignment of any contracts with Motorola.

WHEREFORE, for the foregoing reasons, Motorola, Inc. respectfully requests that this Court:

(a) decline to approve any assignment of the Motorola Agreements until such time as Motorola has expressly consented to such assignment, all as required by 11 U.S.C. § 365(c);

(b) declare that Motorola reserves the right to challenge any proposed cure under the Motorola Agreements, or to request further adequate assurance of future

performance thereunder (including the development of procedures to protect any of Motorola's confidential and proprietary information that is shared or disclosed pursuant to the Motorola Agreements); and

(c) grant such other and further relief as may be just and fitting under the circumstances.

Dated: November 6, 2009
Wilmington, Delaware

Respectfully submitted,

MOTOROLA, INC.

By: ______________________
One of its Attorneys

William A. Hazeltine, Esq. (DE Bar ID No. 3294)
Elihu Ezekiel Allinson, III, Esq. (DE Bar ID No. 3476)
SULLIVAN HAZELTINE ALLINSON LLC
4 East 8th Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 428-8191
Facsimile: (302) 428-8195

-and-

Jonathan W. Young
Mary Olson
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
Telephone: (312) 201-2000
Facsimile: (312) 201-2555
*Attorneys for Motorola, Inc.*