IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
In re                                                          : Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                             : Case No. 09-10138 (KG)
:
            Debtors.                              : Jointly Administered
:
:
---------------------------------------------------------------X

### DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1) SHORTENING NOTICE RELATING TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(A) AND § 363(B) FOR AN ORDER (A) APPROVING DEBTORS' ENTRY INTO THE CDMA ESCROW AGREEMENT AND (B) GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this court (the "Motion to Shorten") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to permit consideration on shortened notice of Debtors' Motion Pursuant to 11 U.S.C. § 105(a) and § 363(b) for an Order (a) Approving Debtor's Entry into the CDMA Escrow Agreement (the "Escrow Agreement") and (b) Granting Related Relief (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

"Escrow Agreement Motion"). In support of this Motion to Shorten, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 102(1) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

**A.    Introduction**

3. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

4. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, except for Nortel Networks (CALA) Inc. ("NN CALA"), which filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7. Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

8. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9. On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration (the "EMEA Proceedings") under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

10. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36]. On July 17, 2009, this Court entered a further order of joint administration that provided for the joint administration of NN CALA's case with the pre-existing cases of its Debtor-affiliates [D.I. 1098].

11. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

12. On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding

claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

13. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

14. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

### Relief Requested

15. By this Motion to Shorten, the Debtors seek an order: (i) shortening the notice period for the Escrow Agreement Motion and (ii) granting related relief.

### Facts Relevant to this Motion

**A.     The Interim Funding and Settlement Agreement**

16. On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA")[4]

---

[4] The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion to Shorten are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the IFSA. In the event there is a conflict between the Motion to Shorten and the IFSA, the IFSA shall control in all respects.

5

governing certain intercompany matters, including the obligation of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

17. The IFSA, as approved by the Court, calls for an escrow agreement, the terms of which shall be negotiated and agreed upon by all Selling Debtors (as defined in the IFSA) acting reasonably. The Sale Proceeds (less applicable transfer or value-added taxes and, to the extent agreed upon by the Selling Debtors, transaction costs) shall be deposited in an escrow account pursuant to the Escrow Agreement, pending the distribution of the Sale Proceeds.

**B.    Sale of Nortel's CDMA and LTE Business**

18. Nortel's Carrier Network business ("Carrier") offers wireline and wireless networks that help service providers and cable operators supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices. The Carrier portfolio includes 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA"), and its research and development efforts

have included innovative technologies focused in the areas of 4G broadband wireless, including Long Term Evolution ("LTE"), an evolving networking standard for which Nortel has completed early trials with customers.

19. On June 19, 2009, the Sellers entered into an asset sale agreement (the "Stalking Horse Agreement") with respect to the CDMA and LTE Business by and among the Sellers and Nokia Siemens Networks B.V., as the purchaser, subject to higher and better offers. The Debtors conducted a sale process (including an auction) in accordance with the procedures approved by this Court. After the conclusion of the auction held on July 24, 2009, the Debtors determined that the highest and best bid was that of Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser"). On July 24, 2009, the Sellers and the Purchaser entered into an asset sale agreement (the "Sale Agreement"), which this Court subsequently authorized and approved by order entered July 28, 2009 (the "Sale Order") [D.I. 1205].

20. Pursuant to the Sale Order, this Court has authorized the Debtors to deposit amounts paid in accordance with the Sale Agreement into an escrow account pending final allocation.

**C.    The Escrow Agreement**

21. Pursuant to Section 12.b of the IFSA and Paragraph 38 of the Sale Order, the Debtors, certain of their affiliates including the Canadian Debtors and EMEA Debtors (collectively, the "Depositors") and JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, as escrow agent ("JPMorgan" or the "Escrow Agent") negotiated the "Escrow Agreement" in the form annexed

to the Escrow Agreement Motion as Exhibit B.[5] As a result of time constraints, the form of the Escrow Agreement reflects the comments of the Debtors, the Canadian Debtors, the Monitor, the Committee and the Bondholder Group. As of the date hereof, the Escrow Agreement does not reflect all of the comments of the Joint Administrators for the EMEA Debtors.

### Basis for Relief Requested

22. Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). As set forth below, shortening notice is justified here.

23. The Debtors respectfully submit that shortened notice is appropriate in this instance because court approval and authorization to enter into the Escrow Agreement is a complementary and necessary step in the larger sale process of the CDMA and LTE businesses and related assets to Ericsson. On October 30, 2009, the Sellers and the Purchaser executed an amendment to the Sale Agreement extending the deadline by which the Sale must close, from October 31, 2009 to November 30, 2009 [D.I. 1862]. Under the Sale Agreement, as amended, failure to consummate the sale by November 30, 2009 is grounds for termination by either the Sellers or the Purchaser. Furthermore, failure to close within five (5) business days of written demand by the Purchaser to consummate the Closing is grounds for termination by the Purchaser. The Escrow Agent (as defined in the Escrow Agreement Motion) requires court approval of the Escrow Agreement and a closing may take place as early as November 13, 2009. The Escrow Agreement must be in place prior to closing. For these reasons, the Debtors believe that a hearing on the Escrow Agreement Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

---

[5] To the extent that there are inconsistencies between the description of the provisions of the Escrow Agreement contained in this Motion to Shorten and the terms and conditions of the Escrow Agreement, the terms and conditions of the Escrow Agreement shall control.

24. The Debtors have consulted with the Committee, the Bondholder Group and the Monitor about the relief sought in this Motion to Shorten, and understand that none has an objection to the relief being sought in this Motion to Shorten. At present, no such confirmation has been obtained from the Joint Administrators.

25. For these reasons, the Debtors respectfully submit that allowing the Escrow Agreement Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

### Notice

26. Notice of the Motion to Shorten is being given via facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) Counsel to the Joint Administrators; and (vii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

27. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion to Shorten and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated November 10, 2009<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (No. 5125)<br>Lisa M. Schweitzer (No. 1033)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>/s/ Derek C. Abbott<br><br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors<br>and Debtors in Possession* |

10