IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------X
                                          :       Chapter 11
*In re*                                   :
                                          :       Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.,*           :
                                          :       Jointly Administered
                                          :
            Debtors.                      :       **Related Dkt. No. 1627**
                                          :       **Hearing Date: 11/19/09 @ 1:00 p.m.**
                                          :
----------------------------------------------------X


LIMITED OBJECTION OF THE AFFILIATES OF VERIZON COMMUNICATIONS
INC. TO DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN
CERTAIN CONTRACTS IN CONNECTION WITH THE SALE OF THEIR METRO
ETHERNET NETWORKS BUSINESS

The affiliates of Verizon Communications Inc. (collectively, "Verizon")[1] hereby file this

Limited Objection to the Debtors' Requests For Authority To Assume And Assign Certain

Contracts with Verizon (the "Assumption Requests") in connection with the proposed sale of

their Metro Ethernet Networks business.  In support of its objection, Verizon respectfully states

as follows:

## I.    BACKGROUND FACTS

### A.    The Proposed MEN Asset Sale

1.    In their pending Motion For Orders Authorizing And Approving The Sale Of

Certain Assets Of Debtors' Metro Ethernet Networks Business Free And Clear Of All Liens,

Claims And Encumbrances And The Assumption And Assignment Of Certain Executory

---

[1]    The definition of Verizon includes, without limitation, all wholly-owned subsidiaries of Verizon
Communications Inc. (including, without limitation, Verizon Corporate Services Group Inc., Verizon Services
Corp., Verizon Network Integration Corp., Verizon Business Network Services Inc., Verizon Select Services Inc.,
MCI Communications Services, Inc. d/b/a Verizon Business Services and the local operating telephone company
subsidiaries of Verizon Communications Inc.) and Cellco Partnership d/b/a Verizon Wireless.

Contracts (the "Sale Motion"), the Debtors seek the Court's approval of a transaction by which they propose to sell their Metro Ethernet Networks ("MEN") line of business and related assets to a third-party purchaser. Although a "stalking horse" bidder for the MEN business, Ciena Corporation ("Ciena"), has been identified, the auction of the Debtors' MEN assets is not scheduled to occur until November 13, 2009, and thus the identity of the purchaser that ultimately will be proposed by the Debtors (the "Purchaser") is not yet known.

**B.    The Applicable Executory Contracts With Verizon**

2.      Verizon purchases certain products and services in the Debtors' MEN portfolio under three (3) executory contracts between Verizon and the Debtors. Of these three contracts, only one – the Definitive Agreement For Next Generation Add Drop Multiplexer Products And Services (the "NGADM Agreement") – relates exclusively to the Debtors' MEN business. Verizon uses some of the Debtors' MEN products and services in its own network, and resells some of those products and services to its own customers.

3.      Pursuant to the NGADM Agreement, the Debtors indemnify Verizon against, among other things, any damages or losses caused by the products purchased thereunder, or as a result of claims for infringement of patents, copyrights or other intellectual property rights asserted by third parties against Verizon (collectively, the "Indemnification Provisions"). The Indemnification Provisions are essential to the NGADM Agreement because, among other things, by using and/or reselling Nortel equipment to Verizon customers, Verizon may be exposed to liability should a claim be asserted against Verizon by a third-party on account of the Debtors' equipment.

**C.    The Assumption Requests**

4.      On or about October 21, 2009, the Debtors served five Assumption Requests on

Verizon in connection with the proposed MEN sale, two of which are the subject of this Limited Objection.[2] In these two Assumption Requests, the Debtors seek authority to assume and assign the following to the Purchaser pursuant to Section 365 of the Bankruptcy Code:

(a)    a so-called MERS System Deployment Agreement (the "MERS Agreement"), certain amendments to the NGADM Agreement and the Optera and Latin America Statements of Work ("SOWs")[3] ("Assumption Request No. 1"); and

(b)    a Technical Support LOA as to Article VI of the NGADM Agreement ("Assumption Request No. 2").

5.    Reference to the Sale Motion and the accompanying Asset Sale Agreement ("ASA") further indicates, however, that the Purchaser is not proposing to assume all liabilities under the executory contracts assumed and assigned to it by the Debtors, but rather, is only assuming the "Assumed Liabilities." The "Assumed Liabilities" include, among other things, obligations arising in connection with the performance of any of the Assigned Contracts[4] after

---

[2]    In response to specific concerns and grounds for objection conveyed informally by Verizon's counsel, counsel for the Debtors have confirmed in writing that three of the five Assumptions Notices originally served on Verizon will be withdrawn. Specifically, Verizon and the Debtors have mutually confirmed that a Maintenance Agreement with Verizon Select Services Inc. is no longer in effect or eligible for assumption and assignment, and that the two other executory contracts between the parties that relate to the Debtors' MEN business – the General Purchase Agreement (the "GPA") effective as of January 1, 2007 and the Global Master Procurement Agreement (the "GMPA") effective as of November 20, 1998 – are "bundled" contracts that also cover other lines of the Debtors' business, and therefore cannot be assigned to the Purchaser of the MEN business except by agreement of Verizon, rather than pursuant to section 365 of the Bankruptcy Code. In addition, counsel for the Debtors have confirmed their agreement that any SOWs, amendments, supplements or other parts of the NGADM Agreement cannot be assumed and assigned to the Purchaser unless the entire NGADM Agreement is assumed and assigned to the Purchaser as well.

[3]    Verizon and the Debtors have recently conferred and now mutually understand that the Optera SOW is issued under the bundled GMPA referenced in footnote 2 above. Accordingly, the Debtors should withdraw Assumption Request No. 1 to that extent and seek to assume the Optera SOW, along with the remainder of the GMPA, by agreement with Verizon. Verizon is still investigating internally and conferring with the Debtors to determine whether the Latin America SOW is issued under the NGADM Agreement or under the GMPA. If under the latter, the Latin America SOW will also need to be assumed and assigned by agreement with Verizon, along with the remainder of the GMPA, rather than pursuant to section 365.

[4]    Capitalized terms not otherwise defined in this Limited Objection shall have the definitions assigned to them in the Sale Motion and/or the ASA.

the Closing Date (ASA at ¶ 2.1.3(b)(i)) and obligations arising under any warranty covering products and services purchased under an Assigned Contract, whether arising before or after the Closing Date. (Id. at ¶ 2.1.3(b)(ii)(C)).

6.    The "Assumed Liabilities" do not expressly include any indemnification obligations, however, and under the most generous reading, do not appear to include any indemnification obligations that may be deemed to have arisen before the Closing Date. In fact, pre-Closing Date indemnification obligations appear to be among the "Excluded Liabilities" that the Purchaser is expressly declining to assume in connection with the MEN acquisition. (Id. at ¶ 2.1.4(d) (excluding, among other things, "any Liability relating to events or conditions occurring or existing in connection with, or arising out of, the Business as operated prior to the Closing Date, or the ownership, possession, use, operation or sale of other disposition prior to the Closing Date of the Assets").)

7.    Consistent with the Sale Motion and the ASA, the proposed order approving the Sale Motion (the "Proposed Order") provides that on the Closing Date, all of the Assigned Contracts and other MEN-related Assets "shall be transferred to the Purchaser free and clear of all Claims and Interests (other than Assumed Liabilities)." (Proposed Order at ¶ 16; *see also* id. at ¶¶ 6, 17-18.)    Although the Purchaser is not assuming all the liabilities arising under the Assigned Contracts, the Proposed Order nonetheless provides that counterparties to those contracts shall be barred and enjoined from asserting any pre-Closing Date claims against the Debtors, specifically including claims for any defaults under the Assigned Contracts that purportedly arose or accrued prior to the Closing Date. (Id. at ¶¶ 9, 11.)

## II.    VERIZON'S OBJECTIONS TO THE ASSUMPTION REQUESTS

8.    In general, Verizon has no objection to either the Sale Motion or the Debtors'

assumption and assignment of the NGADM Agreement to the Purchaser. Verizon does object,

however, to certain aspects of the Assumption Requests, both individually and as they purport to

operate together with provisions of the Sale Motion and the ASA.

A.    **The Assumption and Assignment Of Any Contract With Verizon**
      **Must Include Its Indemnification Provisions And Other Obligations.**

9.    First, Verizon objects to both of the Assumption Requests at issue to the extent

that Verizon's rights under the Indemnification Provisions are not assumed by the Purchaser

along with all of the other provisions of any Assigned Contract. The ASA and the Sale Order

can be read to preclude Verizon from asserting a claim for indemnity against the Purchaser if

such claim relates to events that occurred prior to the Closing Date (even if the claim was not

asserted against Verizon until after the Closing Date). This is not permissible under Section 365,

and the NGADM Agreement, or any other executory contract with Verizon, must be assumed

and assigned in its entirety, without limiting Verizon's rights under the Indemnification

Provisions and other provisions that impose pre-Closing Date obligations.[5] In addition, Verizon

must be provided with adequate assurance of future performance that its bargained for rights to

indemnity will be protected.

10.   It is black letter law that a debtor assumes a contract under Section 365 of the

Bankruptcy Code *cum onere* - with all of its benefits and burdens. NLRB v. Bildisco & Bildisco,

465 U.S. 513, 531 (1984); In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007). As stated

---

[5]       There are several other obligations under the NGADM Agreement that must also be assumed and assigned
in their entirety, and without being limited to the post-Closing period only. Under the NGADM Agreement, for
example, the Debtors are required to send technicians to service and upgrade their products, in addition to providing
services related to the warranties on such products. In addition, the Debtors are also bound by confidentiality
provisions in the NGADM Agreement. The Purchaser must also be bound by these provisions, as well as all other
provisions contained in the contract. Although the ASA appears to provide that the Purchaser is assuming at least
some of these provisions in their entirety, such as "obligations under any warranty liabilities" (ASA at ¶
2.1.3(b)(ii)(C)). Verizon objects to the extent that the proposed assignment does not include all the obligations under
the NGADM Agreement, and without a purported post-Closing limitation.

by the Third Circuit,

> Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder ... 'The [debtor] . . . may not blow hot and cold. If he accepts the benefits he must adopt the burdens. He cannot accept one and reject the other'. . . . The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'

Fleming, 499 F.3d at 308 (citations omitted). Similarly, a debtor seeking to assign a contract under Section 365 must also assign the contract in whole with all the benefits and burdens. Id. at 308 ("an assignment is intended to change only who performs an obligation, not the obligation to be performed") (*citing* Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001); *see also* In re Morande Enters., Inc., 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) ("The Debtor cannot assume and assign the contract in part, under either § 365 or the Florida Dealer Law, but must do so in whole, including the Location Provision"); In re Cajun Elec. Power Co-Op., Inc., 230 B.R. 693, 710 (Bankr. M.D. La. 1999) ("The rule that an executory contract must be assumed or assigned *in toto* has been recognized on several occasions by the Fifth Circuit .... an executory contract must be assumed or assigned in its entirety...").

11.    Among the reasons that a contract must be assigned in its entirety under Section 365 is that the debtor will be relieved of its obligations under the contract pursuant to Section 365(k). Therefore, the assignee must assume all of the obligations so that the counterparty's rights are protected. The Third Circuit addressed the issue of whether a party can make a partial assignment under Section 365 in American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999). In American Flint, the debtor objected to proofs of claim filed under collective bargaining agreements that had been assumed and assigned to the purchaser of the debtor's assets. The bankruptcy court found that the debtor was relieved of liability under Section 365(k), and therefore, the claims could not be asserted against the debtor.

The Third Circuit reversed, holding that an assignment under Section 365 did not take place because the contracts at issue were not assigned with all of the benefits and burdens:

> In the bankruptcy context, however, Code § 365(k) changes the common law rule by effecting a novation by operation of law whether or not the obligee consents to the substitution.... But consistent with the basic concept of a contract's assignment, under which every contractual assignee takes the entire bundle of rights and obligations under the contract, such a forced novation is dependent on just such a total undertaking by the assignee. Code § 365(k) (emphasis added) provides: Assignment by the trustee to an entity *of a contract* or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.

> Where Congress uses legal terms that have "accumulated settled meaning" under common law, it must be presumed (unless of course the statute dictates otherwise) that Congress meant to employ that established meaning.... Hence we construe the terms in Code § 365(k) to incorporate the general common law of assignments. In particular, we will follow the dominant consensus of common law jurisdictions, rather than the law of any particular jurisdiction....

> That dominant consensus conforms to the clear meaning of the language involved: that an assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract.

Id. at 80-81 (finding the debtor was still liable because the contract was not assigned in its entirety).

12.    In this case, the Debtors are seeking to assume and assign the Assigned Contracts under Section 365 and are seeking to be relieved of all liability after such assignment pursuant to Section 365(k). However, the Purchaser is not taking the Assigned Contracts with all benefits and burdens, but rather, is seeking to limit its liabilities to the "Assumed Liabilities," *i.e.*, only liabilities related to post-Closing Date performance. As the Third Circuit has made clear, this is not permissible under Section 365 of the Bankruptcy Code. In an analogous case, In re 1945 Route 23 Assocs., Inc., 2008 WL 2386296 (Bankr. D. N.J. 2008), the assignee of a lease argued that it was not responsible for pre-closing costs because, similar to the ASA in this case, the

assignee was only responsible for post-closing costs under the asset purchase agreement. The

court rejected the argument, reasoning:

> The court is similarly not persuaded by Autobacs's construction of the pertinent
> provisions of the APA. Autobacs concedes that the Tozzo lease is an Assumed
> Agreement but then contends that the 2007 Corrected Cost Statement is not an
> Assumed Liability because much of the amount due under that cost statement
> accrued prior to the sale closing date (May 2, 2007). It contends that under the
> APA's definition of Assumed Liabilities, the obligation must both arise and relate
> to a period after the closing date. Further, it concludes that the following sentence
> in the definition clearly expresses Autobacs's intent not to assume liabilities like
> those contained in the 2007 Corrected Cost Statement: "For avoidance of doubt,
> Assumed Liabilities excludes any Liability attributable to any act, occurrence or
> omission which occurred prior to Closing except as expressly assumed
> hereunder." Autobacs concludes from this that because it did not expressly
> assume the obligation to pay the cost statement, the obligation is expressly
> excluded. The flaw in Autobacs's argument is that under the APA Autobacs
> expressly assumed the Tozzo lease, and thereby expressly assumed all of its
> provisions, including the obligation to satisfy the payment of the 2007 Corrected
> Cost Statement. When R & S, and subsequently Autobacs, assumed the Tozzo
> lease, they assumed it in its entirety, accepting the burdens as well as the benefits.
> See In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007). Unquestionably
> then, the assumed obligation to pay the Corrected 2007 Cost Statement arises and
> relates to the period after the closing date because that is when the obligation
> came due.

Id., 2008 WL 2386296 at *7.

13.    Here, under the NGADM Agreement, Verizon has the right to assert claims for

indemnity if claims are asserted against Verizon on account of the Debtors' products. Pursuant

to Section 365 of the Bankruptcy Code, the Purchaser must take any assignment subject to those

rights. As it currently stands, the ASA would appear to bar Verizon from asserting its bargained

for indemnity rights against the Purchaser if a claim based on pre-closing conduct is asserted

against Verizon. This is not permissible, and accordingly, the Assumption Requests should not

be approved unless the Purchaser also agrees to fully and unconditionally assume the

Indemnification Provisions contained in the NGADM Agreement or any other Assigned Contract

with Verizon.

14.    Absent assumption of the Indemnification Provisions, the Debtors also have failed to provide adequate assurance of future performance under the Assigned Contracts.

15.    To effectuate an assignment under the Bankruptcy Code, the Debtors must demonstrate adequate assurance of future performance. Adequate assurance of future performance is an element of the assumption and assignment process which must be met in addition to the curing of any defaults under an executory contract. 11 U.S.C. § 365(f)(2). Even in the absence of a default under the contract, adequate assurance of future performance must be afforded before the trustee can assign an executory contract. *See* In re E-Z Serve Convenience Stores, Inc., 289 B.R. 45, 52 (Bankr. M.D.N.C. 2003) (refusing to excise a right of first refusal from a lease agreement reasoning that, among other things, absent such provision the non-debtor party "will not receive the full benefit of its bargain and the Trustee cannot give adequate assurance of future performance"). Although not defined in the Bankruptcy Code, the phrase "adequate assurance of future performance," adopted from Section 2-609(1) of the Uniform Commercial Code, is intended to be given a "practical, pragmatic construction based upon the facts and circumstances of each case." Cinicola v. Scharffenberger, 248 F.3d 110, 120 (3d Cir. 2001) (citations omitted).

16.    As discussed, Section 365(k) of the Bankruptcy Code relieves the trustee and the estate from any liability under a contract occurring after assignment. In re Washington Capital Aviation & Leasing, 156 B.R. 167, 175 & n.3 (Bankr. E.D. Va. 1993) (Section 365(k) alters the common law rule that the original obligor remains ultimately liable after assignment until discharged by performance, consent or otherwise.); *see also* In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) (in the context of shopping center leases, the court held that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or

lease. because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"), *cert. denied*, 531 U.S. 873 (2000).

17.    Here, Verizon's indemnity claims based on events that occurred prior to the Closing Date could arise months or years thereafter. Assuming *arguendo* that these claims are considered pre-closing claims, the ASA would appear to prevent Verizon from asserting the claims against the Purchaser for a variety of reasons. This would leave Verizon without its bargained for rights. resulting in the failure to provide adequate assurance of future performance.

18.    In short, the Debtors must provide adequate assurance that Verizon's bargained for rights will be protected. which means that the Assigned Contracts, including the Indemnification Provisions. must be assumed in their entirety in a seamless fashion.

19.    Accordingly, Verizon further requests that the Court condition any approval of the Assumption Requests on a requirement that all of the Debtors' obligations under the NGADM Agreement or any other Assigned Contract with Verizon, including the Indemnification Provisions. be assumed and undertaken by the Purchaser as well. without being limited to the post-Closing Date period.

## B.    The MERS Agreement Is No Longer In Effect, And Therefore Cannot Be Assumed And Assigned Under Section 365.

20.    Second. Verizon further objects to Assumption Request No. 1 to the extent that it purports to request approval of the assumption and assignment of the MERS Agreement. The MERS Agreement is no longer in force, and Verizon is no longer purchasing any MENS products or services under that contract. The MERS Agreement therefore is not eligible for assumption and assignment to the Purchaser under Section 365, and on this basis. Verizon requests that Request No. 2 be denied to that extent.

## REQUEST FOR ADEQUATE ASSURANCE OF FUTURE PERFORMANCE

21.     Verizon also insists that any approval of the Assumption Requests be conditioned upon the provision of adequate assurance of future performance to Verizon by the Purchaser as to any and all other obligations under any Assigned Contract with Verizon. Pursuant to the applicable procedures order, Verizon hereby requests that it be provided with adequate assurance information as to Ciena and any other bidders at the November 13, 2009 auction.

## RESERVATION OF FURTHER RIGHTS

22.     In addition to the foregoing, Verizon hereby reserves its rights to object in the event that the Verizon MEN Contracts are later designated to be rejected, rather than assumed and assigned to the Purchaser, whether such change of designation is pursuant to ¶ 5 of the Sale Order or on any other purported basis.

23.     Verizon also continues to reserve the pre-petition setoff rights that it has asserted and expressly reserved at every step from the inception of this case. Verizon has conveyed to counsel for the Debtors that – apart from grounds for objection discussed above – Verizon insists upon either the full effectuation of its setoff rights in advance of the closing of the sale or a further reservation of those rights that preserves Verizon's ability fully to effectuate such rights at a later date, notwithstanding a completed sale of the Debtors' MEN assets. To date, however, the Debtors have not provided any definitive response to Verizon's concerns or stated conditions with respect to its setoff rights. This Court's previous orders approving sales of the Debtors' assets in these cases have included a provision expressly reserving Verizon's setoff rights. (*See* Order approving the sale of the Debtors' CDMA and LTE assets, Docket no. 1205, at ¶ 32; Order approving the sale of the Debtors' Enterprise assets, Docket no. 1514, at ¶ 30.) Verizon insists, at a minimum, that any order entered on the present Sale Motion include the same such

provision.

WHEREFORE, Verizon respectfully requests that the Court

(a)     sustain this Objection;

(b)     condition approval of any of the Assumption Requests on the satisfaction of all of Verizon's objections and concerns identified above, and specifically by requiring the NGADM Agreement or any other Assigned Contract with Verizon to be assumed and assigned in its entirety, by requiring the Purchaser to fully and unconditionally assume the Indemnification Provisions and any other provisions contained in such Assigned Contracts;

(c)     deny Assumption Request No. 2 to the specific extent that it purports to request the assumption and assignment of the MERS Agreement, which is no longer on force or effect; and

(d)    afford Verizon such other and further relief as this Court may deem just and proper.

Dated: November 10, 2009               Respectfully submitted,

ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin
Frank N. White
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
(404) 873-8500
dladdin@agg.com

-and-

SMITH, KATZENSTEIN & FURLOW LLP

/s/ Kathleen M. Miller
Kathleen M. Miller, Esq. (No. 2898)
800 Delaware Avenue, 10th Floor
P. O. Box 410
Wilmington, DE 19899
(302) 652-8405
kmiller@skfdelaware.com

ATTORNEYS FOR VERIZON