## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*, [1]

                    Debtors.

-----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: December 2, 2009 at 11:00 AM (ET)**

**Objections due: November 25, 2009 at 4:00 PM (ET)**

## MOTION PURSUANT TO 11 U.S.C. § 105(A), § 363 AND
## FED. R. BANKR. P. 9019 FOR AN ORDER (A) APPROVING THE ASIA
## RESTRUCTURING AGREEMENT, AND (B) GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order substantially in the form attached hereto as Exhibit A, approving the Asia Restructuring

Agreement dated as of November 5, 2009 (the "Agreement"),[2] attached hereto as Exhibit B, by

and among the Debtors, the Canadian Debtors (as defined below) including Nortel Networks

Limited ("NNL"), the EMEA Debtors (as defined below, other than NNSA) and the APAC

Entities (as defined below and, together with the Debtors, Canadian Debtors, the EMEA Debtors

(other than NNSA), the "Parties"), and for purposes of Section 16 of the Agreement only, the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]      The description of the Agreement set forth herein is for informational purposes only.  In the event of any discrepancy between the description and the terms of the Agreement, the terms of the Agreement shall govern.

Joint Administrators (as defined below) of the EMEA Debtors; and granting them such other and

further relief as the Court deems just and proper.  In support of this Motion, the Debtors

respectfully represent as follows:

**Jurisdiction**

1.        The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.        The statutory bases for the relief requested herein are sections 105(a) and 363 of

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

**A.        Introduction**

3.        On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.        The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases

and for consolidation for procedural purposes only [D.I. 36].

6.        Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent NNL (together with NNC and their

affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively,

the "Canadian Debtors")  filed an application with the Ontario Superior Court of Justice (the

"Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"),

2

seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian

Debtors continue to manage their properties and operate their businesses under the supervision of

the Canadian Court.

       7.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and

as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this

Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15

of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing

these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On

February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign

main proceedings under chapter 15 of the Bankruptcy Code.

       8.      On January 14, 2009, the High Court of Justice in England placed nineteen of

Nortel's European affiliates (collectively, the "EMEA Debtors")  into administration under the

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA continued to operate as a going concern for an initial period of

three months, which period was subsequently extended.  On October 1, 2009, pursuant to a

motion filed by the Joint Administrators, the French Court approved an order to:  (i) suspend the

liquidation operations relating to the sale of the assets and/or businesses of NNSA for a

renewable period of two months; (ii) authorize the continuation of the business of NNSA so long

as the liquidation operations are suspended; and (iii) maintain the powers of the French

Administrator and Liquidator during the suspension period, except with respect to the sale of

assets and/or businesses of NNSA.  In accordance with the European Union's Council

Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the

"English Proceedings," and together with the Debtors' chapter 11 proceedings and the Canadian

Proceedings, the "Proceedings") remain the main proceedings in respect of NNSA.  On June 8,

2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the

English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On

June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main

proceedings under chapter 15 of the Bankruptcy Code.

9.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel

(Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court,

pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of

proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D.

Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the

"Joint Israeli Administrators").

10.      On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

11.      On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with

NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of

the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration

and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for

procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in

the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

12.    A description of the Debtors' corporate structure and business and the events

leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First

Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

13.    By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019, (a) approving the terms and conditions of

the Agreement, and (b) granting related relief.

**Facts Relevant to the Motion**

**A.    Background**

14.     Nortel has a number of affiliates in the Asia-Pacific region (collectively, the

"APAC Entities")[3].  As a consequence of the Proceedings, certain APAC Entities have

experienced financial difficultes, as certain amounts or balances of intercompany payables owing

by the Debtors, the Canadian Debtors and the EMEA Debtors (collectively, the "Filed Entities")

to the APAC Entities as of the Filing Date became impaired.  As a result, certain APAC Entities,

although generating cash flow from continuing operations, have liquidity and/or balance sheet

constraints after conducting a proper pre-filing setoff of the corresponding intercompany debt

owing to them as of the Petition Date.  These issues have served as the impetus for discussions

---

[3]        The APAC Entities include the following entities:  Nortel Networks (Asia) Limited, Nortel Networks
Australia Pty. Limited, Nortel Networks (India) Private Limited, PT Nortel Networks Indonesia, Nortel Networks
Kabushiki Kaisha, Nortel Networks Korea Limited, Nortel Networks Malaysia Sdn. Bhd., Nortel Networks New
Zealand Limited, Nortel Networks Singapore Pte Ltd, Nortel Networks (Thailand) Limited, and Nortel Vietnam
Limited.

over the past several months amongst the APAC Entities, the Filed Entities, the Monitor, the

Committee, the Bondholder Group and the Joint Administrators regarding ways the APAC

Entities might address their ongoing financial issues so as to continue their respective business

operations and preserve their assets and businesses in order to facilitate and participate in

potential sale of Nortel's global business units.  To this end, an Asia-Pacific restructuring plan

has been discussed and developed amongst the Parties during this period.  The Agreement

represents the outcome of those discussions.

**B.**     **Terms of the Asia Restructuring Agreement**

15.     Following lengthy, difficult, and good faith negotiations, on or about November

5, 2009, the Parties entered into the Asia Restructuring Agreement.  The main terms of the

Agreement are as follows:[4]

- The Agreement establishes a structure whereby the APAC Entities will be able to restructure their debt to allow for increased liquidity and enable the APAC Entities to satisfy certain portion of their outstanding debt to the Filed Entities (as such term is defined in the Agreement) as of the Petition Date (the "Pre-Petition Intercompany Debt").

  - Initial Payments.  Under the Agreement, a portion of each APAC Entity's Pre-Petition Intercompany Debt will be repaid to the Filed Entities.

  - Subsequent Payments.  Under the Agreement, a further portion of each APAC Entity's Pre-Petition Intercompany Debt will be repayable in monthly amounts, but only to the extent of such APAC Entity's net cash balance, after provision for its estimated working capital requirements, certain estimated severance payments, certain estimated costs for reinstatement of leased premises, estimated future taxes and certain other specified costs, expenses and provisions.

  - Subordination.  Under the Agreement, the remainder of each APAC Entity's Pre-Petition Intercompany Debt will be subordinated and postponed to the prior payment in full of certain other debts, including:  (a) obligations owed to certain non-filed Nortel affiliates and certain non-affiliated third parties; (b) intercompany obligations incurred after the Petition Date; and (c) the portions

---

[4] To the extent that there are inconsistencies between the summary description of the Agreement contained herein and the terms and conditions of the Agreement attached hereto as Exhibit B, the terms and conditions of the Agreement shall control.

of Pre-Petition Intercompany Debt to be repaid in accordance with the provisions stated above.

- Appointment of Restructuring Agreement.  APAC Entities have agreed to appoint Ernst & Young Solutions LLP as the restructuring manager to provide financial consulting and advisory services to the APAC Entities as set forth in Annex G to the Agreement.

- Global Sale Transactions.  Lastly, under the Agreement, the APAC Entities have agreed to cooperate and participate in the sale of global businesses or other assets to third parties (the "Global Sale Transactions").  In furtherance of these Global Sale Transactions, the APAC Entities have also agreed to enter into future agreements to terminate intellectual property licenses extended to such APAC Entities by Canadian Debtors.  Most importantly, participation in Global Sale Transactions by APAC Entities shall not be conditioned upon minimum allocation of sale proceeds from such Global Sale Transactions.

- Conditions to Effectiveness.  Implementation of the Agreement is conditioned on receipt of the approval of the Canadian Court and this Court and, if so sought, a direction of the English Court confirming that the Joint Administrators are at liberty to enter into the Agreement on behalf of each of the EMEA Debtors (excluding NNSA).  In addition, the participation of certain of the APAC Entities in the restructuring and other matters provided for in the Agreement is conditioned on receipt of certain regulatory approvals in their respective jurisdictions of incorporation.

## Basis for Relief

16.    The relief requested herein is authorized by sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code states that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Under Section 105(a) of the Bankruptcy Code, the Court has broad equitable powers.  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings

7

Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, 391 F.3d at 236).

17.     Section 363(b) of the Bankruptcy Code permits a debtor to use property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in such a way that it ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

18.     The use or transfer of estate property under this provision must be supported by a sound business purpose.  The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071).  In addition, a Debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange.  See In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Industries, Inc., 2002 WL 32332749, at *2.

19.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Martin, 91 F.3d at 393 (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)). In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court. See In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

20.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers, 2008 WL 821088, at *5 (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000); Coram, 315 B.R. at 330; Pennsylvania Truck Lines, 150 B.R. at 598. The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

21.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393.

22.     The Debtors respectfully submit that the Agreement meets each of the requirements under section 363 and Bankruptcy Rule 9019.  The Agreement is proposed as a good faith means to allow the APAC Entities to continue to operate their respective business operations, while allowing the Filed Entities and the APAC Entities to consummate Global Sale Transactions, which are in the best interests of the Debtors and their estates.  With these considerations in mind, good faith negotiations took place with the intention of avoiding the potential cost and delay of litigation relating to the claims between the APAC Entities and the Filed Entities.  It was determined by the Debtors that a consensual resolution is in the best interest of the Debtors, their estates and their creditors.

23.     The Agreement is necessary to preserve and increase the Debtors' estates, because if the APAC Entities are not allowed to restructure their Pre-Petition Intercompany Debt, they may be forced to resort to litigation and to commence creditor protection proceedings.  The effect of any such actions would be to hinder and/or decrease the value of the Global Sale Transactions.

24.     If the Agreement were not approved, the Debtors may have no choice but to pursue legal action to recover Pre-Petition Intercompany Debt owed to the Debtors.  Any such lawsuit is likely to be complicated and drawn out given the factual nature of the dispute and the interconnected workings of the various Nortel businesses, and will drain resources from the Debtors' estates and detract attention from other important matters facing the estates – in particular, the important task of signing and consummating Global Sale Transactions.

25.     Accordingly, the Debtors respectfully submit that the Agreement has been proposed in good faith upon reasonable and adequate notice, and is in the best interest of the

Debtors' estates, creditors and other stakeholders and should, therefore, be approved by the Court.

## **Notice**

26.     Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) the Joint Administrators, and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

27.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 12, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

James L. Bromley (admitted pro hac vice)
Lisa M. Schweitzer (admitted pro hac vice)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

   - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*