IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

In re                                                                      :    Chapter 11
                                                                               :
Nortel Networks Inc., *et al.*,[1]                              :    Case No. 09-10138 (KG)
                                                                               :
               Debtors.                                   :    Jointly Administered
                                                                               :
                                                                               :    **Hearing date: December 15, 2009**
                                                                               :    **Objections due: December 8, 2009**

------------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER (A) AUTHORIZING THE ASSUMPTION OF AN UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY UNDER SECTION 365 OF THE BANKRUPTCY CODE, (B) APPROVING A LEASE MODIFICATION AGREEMENT AND (C) AUTHORIZING DEBTORS TO ENTER INTO A LEASE MODIFICATION AGREEMENT

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to sections 105(a) and 365 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order substantially in the form attached hereto as Exhibit A, (a) authorizing the Debtors to assume that certain unexpired lease of nonresidential real property dated as of February 26, 2003 between USAA Real Estate Company, predecessor-in-interest to IPC Metrocenter, LLC, as landlord (the "Landlord"), and Nortel Networks Inc., as tenant, for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567), and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

premises located at 220 Athens Way, Nashville, Tennessee (together with all amendments, supplements and modifications, the "Lease"), (b) approving that certain Fifth Amendment to Lease, attached hereto as Exhibit B (the "Lease Modification Agreement"), (c) authorizing the Debtors to enter into the Lease Modification Agreement; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rule 6004.

## Background

**A.     Introduction**

3. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

4. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.  Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

8.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.  On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel

3

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

10. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D.

---

Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

4

Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

11. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

12. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

13. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

**Relief Requested**

14. By this Motion, the Debtors seek an order (a) authorizing the Debtors to assume the Lease as modified by the Lease Modification Agreement, and (b) authorizing the Debtors' entry into the Lease Modification Agreement. For the reasons discussed below, the Debtors

---

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

believe that the assumption of the Lease, as modified, is in the best interests of the Debtors, their estates and their creditors.

## Facts Relevant to this Motion

15. As of the Petition Date, the Debtors were lessees under approximately seventy-five (75) leases of nonresidential real property. Since the Petition Date, the Debtors have entered into one (1) new lease, assumed one (1) lease, rejected fifty (50) leases and three (3) leases have expired by their terms in the ordinary course of business. Thus, the Debtors are currently lessees under approximately eighteen (18) unexpired leases of nonresidential real property, including the Lease.[5]

16. On May 7, 2009, this Court entered an Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Nonresidential Real Property, extending the Debtors' time to assume or reject unexpired leases of nonresidential real property through and including August 12, 2009 [D.I. 717] (the "First Extension Order").

17. On June 26, 2009, this Court entered an Order Under 11 U.S.C. 363(b)(1) And 365(d)(4) Granting Extension Of The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Nonresidential Real Property Upon Receipt Of Written Consent From Lessors, extending the deadline by which the Debtors must assume or reject an unexpired lease of nonresidential real property upon the Debtors' receipt of a landlord's written consent to such extension [D.I. 965] (the "Second Extension Order").

---

[5] The leases described in this sentence, including the Lease, include all unexpired leases of nonresidential real property to which the Debtors are lessees and have not previously assumed or rejected. Inclusion or omission of any instrument in this paragraph does not constitute an admission by the Debtors that such instrument is or is not a true lease or otherwise.

6

18.   Currently, the Debtors have received written consents for a 365(d)(4)(B)(ii) extension from a substantial number of landlords, including the Landlord, agreeing to extend the deadline by which the Debtors must assume or reject the leases through March 31, 2010. The Debtors also continue to assess which leases may no longer be necessary for their continued business operations.

19.   The Debtors have determined that the leased premises are necessary for the Debtors' current and continuing business needs. The Debtors therefore have negotiated the Lease Modification Agreement with the Landlord, which among other things, extends the term of the Lease through November 30, 2011[6] and reduces the size of the leased premises, thereby decreasing the Debtors' total monthly rental obligation.[7] Moreover, the space, which is used for commercial office space purposes, is necessary for the Debtors in their continued restructuring. The Debtors therefore believe that assumption of the Lease and entry into the Lease Modification Agreement are in the best interests of the Debtors, their estates and creditors, and within the Debtors' sound business judgment. Moreover, given the relative size of the rent obligation under the Lease Modification Agreement and the Debtors' current cash position, the Debtors have an adequate ability to perform their obligations under the Lease.

20.   The Debtors' payment history with respect to their leased property portfolio is excellent. Since the commencement of the term of the Lease, the Debtors have timely paid their monthly obligation under the Lease. During the pendency of these chapter 11 cases, the Debtors have continued to pay rent. As of the date of this Motion, to the Debtors' knowledge, the

---

[6]   Absent entry into the Lease Modification Agreement, the Lease, as currently amended, would expire by its terms on December 31, 2009.

[7]   This summary of the Lease Modification Agreement is qualified in its entirety by reference to and does not modify the Lease Modification Agreement. Any conflict between the summary and the Lease Modification Agreement should be resolved in favor of the Lease Modification Agreement.

Debtors have fulfilled all material obligations of the Lease and have not received a notice of default from the Landlord. The Debtors, therefore, assert that no cure payments are owed in connection with the assumption of the Lease, for purposes of section 365(b) of the Bankruptcy Code.

### Basis for Relief

21.   Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Additionally, Bankruptcy Code section 105(a) allows this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

**A.     Assumption of the Lease is in the Best Interests of the Debtors' Estates.**

22.   When determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease, courts apply the "business judgment" rule. See NLRB v. Bildisco & Bildisco (In re Bildisco), 682 F.2d 72, 79 (3d Cir. 1982). In order to assume a lease, a debtor-in-possession must make the determination to assume as an exercise of the debtor-in-possession's sound business judgment. In re ANC Rental Corp., Inc., 278 B.R. 714, 723 (Bankr. D. Del. 2002) (citing In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999)).

23.   A court's review of a decision to assume is a deferential one. See In re Bullet Jet Charter, Inc., 177 B.R. 593, 601 (Bankr. N.D. Ill. 1995) ("The bankruptcy judge should have a deferential view of the debtor's business judgment in this regard, but need not accept that judgment blindly."). The decision to assume need not be perfect or precise; instead it must only stem from sources other than the product of bad faith, gross abuse of discretion, whim or caprice. Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.),

756 F.2d 1043, 1046-47 (4th Cir. 1985); In re Riodizio, Inc., 204 B.R. 417, 424 (Bankr. S.D.N.Y. 1997) ("[A] court will ordinarily defer to the business judgment of the debtor's management, . . . ."); In re Chipwich, Inc., 54 B.R. 427, 430-31 (Bankr. S.D.N.Y. 1985) (finding a court should not interfere with a debtor's decision to assume or reject "absent a showing of bad faith or abuse of business discretion").

24. The Lease is important to the Debtors' ongoing operations and efforts to maximize value for the benefit of all stakeholders. As described above, the Debtors believe that the Lease Modification Agreement creates more favorable terms for the Debtors under the Lease, including, among other things, a reduction in the size of the leased premises and a reduction in total monthly rent. Absent the Lease Modification Agreement and the corresponding favorable terms included therein, the Debtors may not have decided to assume the Lease. Moreover, the Landlord would not have entered into the Lease Modification Agreement if the Debtors did not assume the Lease, as modified, and obtain Court approval to enter into the Lease Modification Agreement. As such, the Debtors have determined, in their sound business judgment, that it is in the best interests of the Debtors, their estates and their stakeholders to remain in a reduced portion of the leased premises through November 30, 2011. Additionally, the Debtors reserve their right to assign the Lease pursuant to section 365(f) of the Bankruptcy Code.

25. In addition, under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the best interest of preserving or protecting the value of the debtors' assets. See, e.g., Chinichian v. Campolongo (In re Chinichian), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (citations omitted); see also, e.g., Bird v. Crown Convenience (In re NWFX, Inc.), 864

F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern.") (citations omitted).

26. Therefore, the Debtors have determined, in the exercise of their sound business judgment and informed consideration of the issues associated with entering into the Lease Modification Agreement, that assumption of the Lease and entry into the Lease Modification Agreement are in the best interests of the Debtors' estates.

**B.    Cure and Adequate Assurance of Future Performance.**

27. Section 365(b)(1) of the Bankruptcy Code requires a debtor to cure, or provide adequate assurance that the debtor will promptly cure, any outstanding defaults under the executory contract to be assumed. 11 U.S.C. § 365(b)(1). See also In re ANC Rental, 278 B.R. 714, at 724.

28. As of the date of this Motion, the Debtors are not aware of any defaults under the Lease. Therefore, the Debtors are under no obligation to pay any cure amounts or to provide adequate assurance that the Debtors will promptly pay such cure amounts.

**C.    Waiver of the 10-Day Stay is Appropriate.**

29. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). The purpose of this rule is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).

30. Although 6004(h) and the accompanying Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay, commentators agree that the 10-day stay should be eliminated, and the transaction allowed to proceed, if there has been no objection to the procedure. See 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999).

So far as the Debtors are aware, there has been no objection to this procedure and it would be in the Debtors' best interests to eliminate the 10-day stay.

## Notice

31.     Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) counsel to the Landlord; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

32.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as is just and proper.

Dated: November 20, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*