**EXHIBIT B**
**Lease Modification Agreement**

## FIFTH AMENDMENT
## TO COMMERCIAL OFFICE LEASE

THIS FIFTH AMENDMENT TO COMMERCIAL OFFICE LEASE (this "Fifth Amendment") is entered into and effective as of _____, 2009 (the "Effective Date") by and between IPC METROCENTER, LLC, a Delaware limited partnership ("Landlord"), and NORTEL NETWORKS INC., a Delaware corporation ("Tenant").

## RECITALS

A.      Landlord, as successor in interest to USAA Real Estate Company ("USAA"), and Tenant are the "Landlord" and Tenant", respectively, under that one certain Commercial Office Lease entered into by and between USAA and Tenant dated February 26, 2003 (the "Original Lease", and as amended by the First Amendment to Commercial Office Lease dated December 5, 2005 and entered into by and between USAA and Tenant, the Second Amendment to Lease Agreement dated September 29, 2006 and entered into by and between Landlord and Tenant, the Third Amendment to Lease Agreement dated May 7, 2008 and entered into by and between Landlord and Tenant, and the Amended and Restated Fourth Amendment to Commercial Office Lease Agreement entered into by Landlord and Tenant on November __ but effective as of as of October 31, 2009, the "Lease") and pursuant to which Tenant leases from Landlord 32,162 Rentable Square Feet known as Suite 300 (referred to in the Lease and herein as the "Premises") of the building known as Plaza 1 MetroCenter and located at 220 Athens Way, Nashville, Tennessee (referred to in the Lease and herein as the "Building"), as the Premises and Building are more specifically described in the Lease;

B.      The Term of the Lease currently expires on December 31, 2009 (the "Current Expiration Date"); and

C.      Landlord and Tenant desire to extend the Term of the Lease as to only a portion of the Premises, and otherwise amend the Lease in certain respects, all on the terms and conditions set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the Premises and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Landlord and Tenant hereby agree, and the Lease is amended, as follows:

1.      Recitals. The Recitals are confirmed to be true and correct and are incorporated into this Fifth Amendment.

2.      Application of Lease Terms. Capitalized terms used in this Fifth Amendment and not defined herein shall have the meanings ascribed to them in the Lease.

3.      Extension of Term as to Extended Leased Premises. The Term of the Lease is extended solely as to the portion of the Premises comprised of 20,129 Rentable Square Feet and depicted on Exhibit A attached hereto as the "Extended Premises" for a period of twenty-three months commencing on January 1, 2010 and expiring on November 30, 2011 (such date being the new "Expiration Date" under the Lease and such extension period herein referred to as the "Fourth Extended Term"), unless sooner terminated or extended by written agreement of the parties.

4.      Expiration of Term as to Expiring Leased Premises. The Term of the Lease shall expire

1

**solely** with respect to the remaining 12,033 Rentable Square Feet of the Premises depicted on Exhibit A attached hereto as the "Expiring Premises" effective as of 11:59 p.m. on the Current Expiration Date. Tenant shall vacate and surrender up the Expiring Premises not later than the Current Expiration Date pursuant to the terms and conditions required under the Lease. From and after December 31, 2009, the term "Premises" as used in the Lease shall mean and include, and all references in the Lease, as amended hereby to the "Premises" shall be, a reference only to the Extended Premises.

5.      Separation Work. Landlord shall perform all work necessary to separate the Expiring Premises from the Extended Premises at Landlord's sole cost and expense (the "Separation Work") using Building standard materials and construction methods. The Separation Work shall be limited to the scope of work set forth on Exhibit B attached hereto. Tenant acknowledges that the Separation Work will occur during Tenant's occupancy of the Extended Premises. Landlord will complete the Separation Work within a reasonable time after the Current Expiration Date. Tenant shall allow Landlord and its architects, construction representatives, engineers and contractors reasonable access to the Extended Premises at all times during the construction of the Separation Work and shall cooperate with Landlord in furtherance of Landlord's efforts to complete the Separation Work. Landlord will employ reasonable construction practices in an effort to minimize any disruption of Tenant's business operations during the performance of the Separation Work, but Landlord shall not be required to incur any extra costs or expenses with respect thereto, and Landlord shall not be liable to Tenant for any disruption or any other interference with Tenant's normal business operations arising or due to the performance of the Separation Work. **Other than the Separation Work, Landlord shall not be required to perform any alterations, repairs or improvements to the Extended Premises or the Building, or to contribute to the cost of any alterations, repairs or improvements desired by Tenant to the Extended Premises, and Tenant accepts the Extended Premises for the Fourth Extended Term AS IS.**

6.      Basic Rent for Extended Leased Premises. Until the commencement of the Fourth Extended Term, Tenant shall continue to pay Basic Rent when and as required under the terms of the Lease as in effect prior to the Effective Date. During the Fourth Extended Term, Basic Rent shall be due and payable for the Extended Leased Premises in accordance with the following schedule:

| Lease Period | Basic Rent per Rentable Square Foot of Extended Premises | Annualized Basic Rent | Monthly Basic Rent |
|---|---|---|---|
| 1/1/2010 – 12/31/2010 | $19.00 | $382,451.04 | $31,870.92 |
| 1/1/2011 – 11/30/2011 | $19.50 | $392,515.50* | $32,709.63 |

*Total Basic Rent for the subject period (11 months) will be $359,805.93.

Tenant shall pay the above Basic Rent, and all other Rent due under the Lease, at the times and place and in the manner provided in the Lease, as amended hereby.

7.      Rentable Square Feet of Project. Effective on January 1, 2010, Section 1.5 of the Original Lease is hereby amended to read in its entirety as follows:

"1.5     Project. The development known as Plaza I MetroCenter consisting of the real property and all improvements built thereon including without limitation the

2

Land, Building Common Area (as hereinafter defined), Parking Facilities (as hereinafter defined), and any other buildings, walkways, driveways, fences and landscaping, containing approximately 156,279 Rentable Square Feet."

9.      Tenant's Proportionate Share.  Effective January 1, 2010, Section 1.15 of the Original Lease is amended to provide that, Tenant Proportionate Share shall be 12.88%.

8.      Extension Option.  Tenant's option to further extend the Term of the Lease set forth in Article 26 of the Lease is hereby confirmed and ratified; provided, however, that (i) the reference to "initial Term" therein is changed to "Fourth Extended Term", (ii) the "Renewal Term" will be one (1) year commencing on December 1, 2011 and ending on November 30, 2012, and (iii) Basic Rent during the Renewal Term will be $32,709.63 per month.  Section 26.2 and Section 26.3 of the Original Lease are deleted.  Except as set forth in Article 26 of the Original Lease, as amended hereby, Tenant shall have no option or right to further extend or renew the Term of the Lease beyond the new Expiration Date, and any provision of the Lease to the contrary, is hereby deleted and made null and void.

9.      Brokers.  Tenant warrants that it has had no dealings with any broker or agent in connection with the negotiation or execution of this Fifth Amendment other than Jan Elwell of Fischer ("Tenant's Broker"), whose rights to a commission are governed by a separate written agreement with Landlord.  Tenant shall indemnify, defend and hold Landlord harmless from and against any and all claims, costs, expenses or liabilities, including reasonable attorneys' fees, for commissions or other compensation in connection with this Fifth Amendment claimed by any broker or agent claiming by or through Tenant, provided that Tenant's above-stated obligations to indemnify, defend and hold harmless shall not in any event apply to any claim in connection with this Fifth Amendment by Tenant's Broker.  Landlord shall indemnify, defend and hold Tenant harmless from and against any and all claims, costs, expenses or liabilities, including reasonable attorneys' fees, for commissions or other compensation in connection with this Fifth Amendment claimed by any broker or agent claiming by or through Landlord, including without limitation any claim in connection with this Fifth Amendment by Tenant's Broker.

10.     Prohibited Persons and Transactions.  Tenant represents and warrants to Landlord that (a) Tenant is currently in compliance with and shall at all times during the Term (including any extension thereof) remain in compliance with the regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury and the September 24, 2001, Executive Order No. 13224 Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or Support Terrorism (the "Executive Order"); and (b) Tenant is not, and will not be, a person with whom Landlord is restricted from doing business under the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (USA Patriot Act), H. R. 3152, Public Law 107-56 and the Executive Order and the regulations promulgated thereunder and including persons and entities named on the OFAC Specially Designated Nationals and Blocked Persons List.

13.     Representations.  Tenant hereby represents and warrants to Landlord that (i) as of the Effective Date hereof, Tenant is the legal and equitable owner of the Tenant's entire interest in, to and under the Lease, has not previously assigned the Lease, and has full power and authority to execute and deliver this Fifth Amendment; and (ii) Tenant has not alleged any default by Landlord that is uncured as of the Effective Date and to Tenant's knowledge Landlord is not in default under the Lease as of the Effective Date, and, to its knowledge, Tenant has no pending claims or set-offs against Landlord arising out of the Lease or relating thereto.

14.     Ratification.  As amended hereby, the Lease is ratified and confirmed as being in full force and effect.  Each party agrees that, as amended hereby, the Lease is the binding and enforceable obligation of such party.  To the extent of any conflict or inconsistency between this Fifth Amendment

3

and the terms of the Lease, the terms of this Fifth Amendment shall govern and control to the extent, but only to the extent, of such conflict or inconsistency. Nothing in this Fifth Amendment shall be deemed a waiver or release of any unperformed obligations of Landlord and Tenant under the Lease, including, without limitation, any delinquent rentals or other delinquent payments payable by Tenant under the Lease. References in the Original Lease to "this Lease" or similar references shall be a reference to the Original Lease, as amended from time to time.

15.    Court Approval. With recognition that Tenant and certain of its affiliates and subsidiaries filed voluntary petitions for relief under title 11 of the United States Code (the "Bankruptcy Code") on January 14, 2009, which proceedings are pending as of the Effective Date hereof in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), Case No. 09-10138 (the "Chapter 11 Proceedings"), and certain of Tenant's affiliates filed applications with the Ontario Superior Court of Justice ("Canadian Bankruptcy Court") under the Companies Creditor Arrangements Act (Canada) seeking relief from their creditors (the "CCAA Proceedings"), the effectiveness of this Fifth Amendment is further conditioned upon Tenant providing evidence satisfactory to Landlord in its reasonable business judgment that (i) Tenant has assumed the Lease, as amended hereby, pursuant to section 365 of the Bankruptcy Code and has obtained any approvals/orders of the Bankruptcy Court authorizing Tenant's execution of and performance under this Fifth Amendment pursuant to a specific motion filed with the Bankruptcy Court for such purpose or, alternatively, (ii) Tenant has previously obtained approvals/orders of the Bankruptcy Court authorizing Tenant, pursuant to section 365 of the Bankruptcy Code, to assume the Lease and to enter into this Fifth Amendment upon full execution and delivery hereof (collectively, the "Approval Conditions"). If Tenant does not provide such evidence to the Landlord that the Tenant has fulfilled either of the Approval Conditions prior to December 1, 2009, then, Landlord and Tenant shall treat the Lease as extended under its applicable terms for a period of up to ninety (90) days (the "Extended Period") without giving effect to this Fifth Amendment and as a function of the conduct of the ordinary course of Tenant's business under 11 U.S.C. §363. After 90-days has expired into the Extended Period, if Tenant has still not satisfied either Approval Condition, then, at Landlord's sole option exercisable by written notice to Tenant, this Fifth Amendment shall be null and void and of no further force or effect and the Term of the Lease shall expire and end as of the last day of the Extended Period. No provision herein shall be deemed to be a waiver of Tenant's obligation to pay Rent currently due or to cure Events of Default in order to assume the Lease or any other right, remedy or claim relating to or arising from 11 U.S.C. §365; provided, that Landlord and Tenant hereby agree that as of the date hereof, to Landlord's knowledge: (x) Tenant is not in default under the Lease, (y) no Events of Default have occurred or are continuing; and (z) no amounts under the Lease are currently past due or owing. Tenant's continued occupancy during the Extended Period will not constitute a holding over or an Event of Default by Tenant under the Lease. The Landlord does not waive any of its rights to seek allowance and payment of administrative rent pursuant to relevant Bankruptcy Code provisions related to the Lease or the Extended Period.

16.    Counterparts. This Fifth Amendment may be executed in a number of identical counterparts. If so executed, each of such counterparts is to be deemed an original for all purposes, and all such counterparts shall, collectively, constitute one instrument, but, in making proof of this instrument, it shall not be necessary to produce or account for more than one such counterpart.

17.    Confidentiality. Except to the extent that disclosure is required in connection with the Chapter 11 Proceedings (including, without limitation, disclosure to the Tenant's Unsecured Creditors' Committee, filing this Fifth Amendment with the Bankruptcy Court in connection with any motion to assume the Lease as amended hereby or to obtain Bankruptcy Court approval to enter into this Fifth Amendment) and/or in connection with CCAA Proceedings (including, without limitation, disclosure to the Canadian Bankruptcy Court-appointed Monitor and any necessary filings that need to be made with the Canadian Bankruptcy Court), Tenant will keep confidential (i) the terms of this Fifth Amendment, and

4

(ii) all negotiations and communications with Landlord in connection with this Fifth Amendment (collectively, "Confidential Information"), and Tenant will not otherwise disclose or make available any Confidential Information to any other Tenant in the Building or to any other person or entity, except to Tenant's accountants, brokers, attorneys, consultants and other agents for the purpose of providing advice to Tenant in connection with the Confidential Information and who agree to preserve the confidential nature of the Confidential Information or as otherwise required by law.

(Signatures on following page)

IN WITNESS WHEREOF, Landlord and Tenant have executed this Fifth Amendment as of the Effective Date.

**LANDLORD:**

IPC METROCENTER, LLC,
a Delaware limited liability company

By: _____

Name: _____

Title: _____

**TENANT:**

NORTEL NETWORKS INC.
a Delaware corporation

By: _____

Name: _____

Title: _____

6

## EXHIBIT A

## EXTENDED PREMISES AND
## EXPIRING PREMISES



THIRD FLOOR

## EXHIBIT B

### SCOPE OF SEPARATION WORK

1. Demolition – Misc. drywall ceiling, walls at elevator lobby, doors & side-lites and misc. carpet
2. (2) new UL cherry doors at new vestibule at elevator lobby.
3. Drywall
   - New demising walls at vestibule.
   - Top out existing walls to create new demising walls.
   - Repair existing drywall ceiling.
4. Acoustical Ceiling – repairs at new demising walls
5. Flooring
   - New section of carpet, approx. 34 yards, including cutting charge
   - Rubber base on new walls.
6. Paint & Wall Covering
   - Vinyl wall covering at new vestibule only.
   - Misc. paint at new demising walls & touch up of drywall ceiling to remain.
   - Finish (2) new door units.
7. Fire Sprinklers – adjust for new demising walls & new vestibule.
8. HVAC
   - (7) fire dampers and related duct work.
   - Complete separation of system at demising walls.
9. Electrical
   - Relocate and re-switch (6) light fixtures.
   - Connect vestibule lighting to energy management system.
   - Re-feed (2) duplex receptacles
   - Relocate (1) maglock and request to exit button.
10. General Conditions – supervision, cleaning, protection of existing finishes, permit, dumpster, etc.

**Schedule of Values:**

| | | |
|---|---|---:|
| 1. | Demolition | $ 559 |
| 2. | Doors | 2,873 |
| 3. | Drywall | 4,879 |
| 4. | Acoustical Ceilings | 480 |
| 5. | Flooring | 1,033 |
| 6. | Paint & Wall Covering | 1,457 |
| 7. | Fire Sprinklers | 1,080 |
| 8. | HVAC | 5,460 |
| 9. | Electrical | 1,980 |
| 10. | General Conditions | 2,157 |
| 11. | Overhead & Fee | 2,196 |
| 12. | Total | $24,153 |

IPC Metrocenter/Nortel Fifth Amendment v2bdh