IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
: Hearing date: December 2, 2009 at 11:00 a.m. (ET)
: [Proposed]
: Objections due: December 1, 2009 at 12:00 p.m. (ET)
: [Proposed]
:
----------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(A)
AND § 363(B) FOR AN ORDER (A) APPROVING
DEBTORS' ENTRY INTO THE NEXT GENERATION
PACKET CORE NETWORK COMPONENTS
ESCROW AGREEMENT AND (B) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order in the form attached hereto as Exhibit A, (a) approving that certain escrow agreement substantially in the form attached hereto as Exhibit B (the "Escrow Agreement") entered into by and among the Debtors, the Canadian Debtors (as defined below), Nortel Networks UK Limited ("NNUK") and the EMEA Filed Entities, the Joint Administrators, the Estate Fiduciaries (as each is defined in the Escrow Agreement), and JPMorgan Chase Bank, N.A., (b) granting them

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

**A.  Introduction**

3. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

4. On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. NN CALA filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.  On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.  Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

8.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.  On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2]  The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]  The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel

3

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

10.     On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D.

---

Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

4

Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

11. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

12. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B. Debtors' Corporate Structure and Business**

13. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

**Relief Requested**

14. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363: (a) approving the Escrow Agreement and (b) granting related relief.

5

## Facts Relevant to this Motion

A.   **The Interim Funding and Settlement Agreement**

15.   On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA")[4] governing certain intercompany matters, including the obligation of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

16.   The IFSA, as approved by the Court, calls for an escrow agreement, the terms of which shall be negotiated and agreed upon by all Selling Debtors (as defined in the IFSA) acting reasonably. The Sale Proceeds (less applicable transfer or value-added taxes and, to the extent

---

[4]   The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the IFSA. In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

agreed upon by the Selling Debtors, transaction costs) shall be deposited in an escrow account pursuant to the Escrow Agreement, pending the distribution of the Sale Proceeds.

**B.     Sale of Nortel's Next Generation Packet Core Network Components**

17.     Nortel's Carrier Network's wireless business ("Wireless") offers wireless network solutions to service providers that supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices. As part of the Wireless business, Nortel has been developing technologies focused in the areas of 2G, 3G and 4G broadband wireless. In this regard, Nortel has been conducting research and development on network components designed to provide data network connectivity for 2G GPRS, 3G UMTS and 4G LTE wireless networks and increase network bandwidth for multimedia content and applications over wireless networks (such components, the "Next Generation Packet Core Network Components").

18.     The Debtors conducted a sale process in accordance with the procedures approved by this Court. After the conclusion of the sale process, the Debtors determined that the highest and best bid was that of Hitachi, Ltd. On October 25, 2009, the Sellers entered into a transaction agreement (the "Transaction Agreement") with respect to the Next Generation Packet Core Network Components by and among the Sellers and Hitachi, Ltd., as the purchaser (the "Purchaser"), which this Court subsequently authorized and approved by order entered October 28, 2009 (the "Sale Order") [D.I. 1760].

19.     Pursuant to the Sale Order, this Court has authorized the Debtors to deposit amounts paid in accordance with the Transaction Agreement into an escrow account pending final allocation.

7

C.  **The Escrow Agreement**

20. Pursuant to Section 12.b of the IFSA and Paragraph 23 of the Sale Order, the Debtors, certain of their affiliates including the Canadian Debtors and EMEA Debtors (collectively, the "Depositors") and JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America, as escrow agent ("JPMorgan" or the "Escrow Agent") negotiated the escrow agreement (the "Escrow Agreement")[5] substantially in the form annexed hereto as Exhibit B.

21. Among other things, the Escrow Agreement provides as follows:

- Appointment of Escrow Agent.

  - The Depositors shall jointly nominate, constitute and appoint the Escrow Agent to hold the Escrow Funds in an Escrow Account (as defined below).

  - The Escrow Agent shall agree that deposits to, and disbursements from, the escrow account, or applicable portions thereof, shall only be made in accordance with the terms and conditions of the Escrow Agreement.

  - The Depositors and the Escrow Agent shall agree that any action specified in the Escrow Agreement as to be taken by all of the Depositors, acting jointly, shall be binding upon each of the Depositors, and the Escrow Agent shall be entitled to act and rely upon any such action.

- Deposit of Escrow Deposit or Property. Funds shall be deposited in an escrow account as follows:

  - At the Closing, the Sellers[6] shall instruct the Purchaser to deposit the Deposited Purchase Price with the Escrow Agent in immediately available funds in an account established with the Escrow Agent (the "Escrow Account").

---

[5]  Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the Escrow Agreement. To the extent that there are inconsistencies between the description of the provisions of the Escrow Agreement contained in this Motion and the terms and conditions of the Escrow Agreement, the terms and conditions of the Escrow Agreement shall control.

[6]  "Sellers" are defined in the Transaction Agreement as being NNI and NNL. Parties intend to enter an amendment to the Transaction Agreement to include NNTC as a Seller.

- At the Closing, NNI shall deposit the Good Faith Deposit with the Escrow Agent in immediately available funds in the Escrow Account.

- Investment of Escrow Funds.

    - Until otherwise jointly directed by all of the Depositors, the Escrow Agent shall invest the Escrow Funds in Permitted Investments as defined in the Escrow Agreement.

    - The Escrow Agent shall have the right to liquidate investments as necessary to distribute Escrow Funds pursuant to the Escrow Agreement.

- Distribution of Escrow Funds. Until the termination of the escrow established pursuant to the Escrow Agreement, the Escrow Agent shall hold the Escrow Funds and not disburse any amounts from the Escrow Account except in accordance with the terms and conditions of the Escrow Agreement:

    - The Escrow Agent shall disburse to any person amounts from the Escrow Funds if and as so instructed pursuant to (i) letter of direction jointly executed by the Depositors and the Estate Fiduciaries, a copy of which shall be provided by the Depositors to the Bondholder Group or (ii) where the Depositors have entered into the Allocation Protocol in accordance with clause 12 of the IFSA (the existence of the Allocation Protocol and identity of the relevant dispute resolver(s) shall be set forth in a written notice jointly executed by the Depositors and delivered to the Escrow Agent), any Depositor's delivery to the Escrow Agent, with copies to the other Depositors, the Estate Fiduciaries and the Bondholder Group, of a duly authenticated copy of the binding decision made by the relevant dispute resolver(s) under that protocol regarding the allocation of sales proceeds (a "Decision") which is not stayed or subject to appeal, accompanied by a certificated from such Depositor certifying as to the finality of the Decision; provided, however, that any amounts owing under certain indemnification obligations by any Depositor (a "Debtor Depositor") to any other Depositor at the time of an intended distribution from the Escrow Account shall be paid out of the share of the Escrow Funds otherwise payable to such Debtor Depositor.

    - The Depositors understand and agree that no payments or reimbursements in respect of Transfer Taxes shall constitute any part of the Deposited Purchase Price or the Escrow Funds, or shall be required to be paid by the Buyer into the Escrow Account.

    - The Escrow Agent shall have no responsibility or obligation for investigating or determining the validity or sufficiency of any matter asserted in a letter of direction or of any pending claim for entitlement to release of funds from the Escrow Account. The Escrow Agent shall have the right to withhold an amount equal to the amount due and owing to the

Escrow Agent, plus any reasonable costs and expenses incurred by Escrow Agent in accordance with the terms of this Agreement in connection with the termination of the Escrow Account.

- Termination of Escrow Account. The Escrow Agreement shall terminate upon the distribution of all Escrow Funds from the Escrow Account, subject to the survival of provisions, which expressly survive the termination of the Escrow Agreement.

**Basis for Relief**

22. The relief in this Motion is authorized by sections 105(a) and 363 of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue an order…that is necessary or appropriate to carry out the provision of this title." 11 U.S.C. § 105(a). See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (*citing* In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

23. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

24. The use or transfer or estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The

10

Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (*quoting* In re Lionel, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. *See* In re Delaware & Hudson Ry. Co., 124 B.R. at 176; In re Decora Industries, Inc., 2002 WL 32332749, at *2.

25. The Debtors respectfully submit that the Escrow Agreement meets each of the requirements under section 363 of the Bankruptcy Code. The Escrow Agreement is supported by a sound business purpose because it provides security for both the Purchaser and Depositors which is essential to completing the sale of the Debtors' businesses, particularly given the ongoing creditor protection proceedings in various jurisdictions. The Debtors have entered into the Escrow Agreement in order to facilitate cooperation amongst the parties in working toward completion of the sale.

26. Concurrently with this Motion, the Debtors are filing a motion to shorten the notice period applicable to this Motion. The Debtors respectfully submit that shortened notice is appropriate in this instance because court approval and authorization to enter into the Escrow Agreement is a complementary and necessary step to finalize the larger sale process of the Next Generation Packet Core Network Components and related assets to the Purchaser. Under the

Transaction Agreement, failure to consummate the sale by December 31, 2009 is grounds for termination by either the Sellers or the Purchaser. Furthermore, failure to close within five (5) business days of written demand by the Purchaser to consummate the Closing is grounds for termination by the Purchaser. The Escrow Agent requires court approval of the Escrow Agreement and a closing may take place as early as December 4, 2009. The Escrow Agreement must be in place prior to closing and is currently the only additional outstanding approval required for the sale to close. For these reasons, the Debtors believe that a hearing on the Escrow Agreement Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

27. The Debtors have consulted with the Joint Administrators, Committee, the Bondholder Group and the Monitor about the relief sought in the Motion to Shorten, and understand that none has an objection to the relief being sought in the Motion to Shorten.

### Notice

28. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser; (ii) U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) counsel to the Joint Administrators; and (vii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

29. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 23, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*