# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : | Jointly Administered |
| | : | |
| Debtors | : | <u>Objection Deadline</u>: December 14, 2009 at 4:00 p.m. (ET) |
| | : | <u>Hearing Date</u>: Scheduled only if necessary |

-------------------------------------------------------X

## NINTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009

This is a(n):   <u>X</u>   monthly  _____  interim  _____  final application.

Name of Applicant:   <u>Akin Gump Strauss Hauer & Feld LLP</u>

Authorized to Provide
Professional Services to: <u>Official Committee of Unsecured Creditors</u>

Date of Retention: <u>March 5, 2009 (nunc pro tunc to January 22, 2009)</u>

Period for which Compensation
and Reimbursement is sought: <u>October 1, 2009 through October 31, 2009</u>

Amount of Compensation sought as
actual, reasonable, and necessary: <u>$1,036,266.50</u>

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: <u>$35,745.59</u>

The total time expended during this Compensation Period for the preparation of Akin Gump's
Eighth Monthly Fee Application was 19.80 hours and the corresponding compensation is $7,873.50.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

**Prior Fee Applications:**

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/22/09 – 02/28/09 (First Monthly Fee Application) | $1,002,466.75 | $14,994.50 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the First Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the First Monthly Fee Application. |
| 03/01/09 – 03/31/09 (Second Monthly Fee Application) | $866,587.25 | $14,080.55 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Second Monthly Fee Application. Akin Gump voluntarily agreed to reduce the expenses requested by $1,459.22. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Second Monthly Fee Application. |
| 04/01/09 – 04/30/09 (Third Monthly Fee Application) | $919,594.75 | $22,201.07 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Third Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Third Monthly Fee Application. |

| | | | |
|---|---|---|---|
| 05/01/09 – 05/31/09<br><br>(Fourth Monthly Fee Application) | $766,765.75 | $54,512.10 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fourth Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fourth Monthly Fee Application. |
| 06/01/09 – 06/30/09<br><br>(Fifth Monthly Fee Application) | $962,202.75 | $25,000.85 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fifth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fifth Monthly Fee Application. |
| 07/01/09 – 07/31/09<br><br>(Sixth Monthly Fee Application) | $1,042,206.00 | $24,587.92 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Sixth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Sixth Monthly Fee Application. |
| 08/01/09 – 08/31/09<br><br>(Seventh Monthly Fee Application) | $653,999.00 | $44,610.63 | On October 21, 2009, Akin Gump filed a certificate of no objection (Docket No. 1708) with respect to the Seventh Monthly Fee Application.  Akin Gump has received 80% of the fees and 100% of the expenses requested in the Seventh Monthly Fee Application. |

| | | | |
|---|---|---|---|
| 09/01/09 – 09/30/09<br><br>(Eighth Monthly Fee Application) | $1,103,982.50 | $24,753.35 | On November 23, 2009, Akin Gump filed a certificate of no objection with respect to the Eighth Monthly Fee Application. Akin Gump has not received payment of the fees and expenses requested in the Eighth Monthly Fee Application. |

**SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
RENDERING SERVICES DURING THE PERIOD
OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 10 years; Admitted in 1989; Financial Restructuring Department | $925 | 24.50 | $22,662.50 |
| David H. Botter | Partner for 8 years; Admitted in 1990; Financial Restructuring Department | $825 | 144.20 | $118,965.00 |
| David J. D'Urso | Partner for 3 years; Admitted in 1997; Corporate Department | $700 | 69.70 | $48,790.00 |
| Fred S. Hodara | Partner for 20 years; Admitted in 1982; Financial Restructuring Department | $950 | 92.90 | $88,255.00 |
| Karol A. Kepchar | Partner for 10 years; Admitted in 1992; Intellectual Property Department | $620 | 8.10 | $5,022.00 |
| Stephen B. Kuhn | Partner for 9 years; Admitted in 1991; Corporate Department | $745 | 64.00 | $47,680.00 |
| Bruce S. Mendelsohn | Partner for 23 years; Admitted in 1977; Corporate Department | $810 | 2.00 | $1,620.00 |
| Jordan J. Metzger | Partner for 8 years; Admitted in 1984; Real Estate Department | $595 | 1.70 | $1,011.50 |
| Robert H. Pees | Partner for 13 years; Admitted in 1988; Litigation Department | $765 | 18.50 | $14,152.50 |
| Abid Qureshi | Partner for 2 years;  Admitted in 1995; Financial Restructuring Department | $675 | 32.10 | $21,667.50 |
| Bruce E. Simonetti | Partner for 5 years; Admitted in 1995; ERISA Department | $755 | 13.80 | $10,419.00 |
| W. Thomas Weir | Partner for 27 years; Admitted in 1973; Tax Department | $730 | 15.60 | $11,388.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Justin Williams | Partner for 1 year; Admitted in 1993; Litigation Department | $790 | 1.40 | $1,106.00 |
| James P. Chou | Senior Counsel for 1 year; Admitted in 1997; Litigation Department | $605 | 37.60 | $22,748.00 |
| Kenneth A. Davis | Senior Counsel for 2 years; Admitted in 1995; Financial Restructuring Department | $620 | 75.60 | $46,872.00 |
| Ira L. Rosenblatt | Senior Counsel for 1 year; Admitted in 1997; Corporate Department | $610 | 48.80 | $29,768.00 |
| Kevin M. Rowe | Senior Counsel for 9 years; Admitted in 1985; Tax Department | $650 | 124.10 | $80,665.00 |
| Alexander F. Anderson | Counsel for 3 years; Admitted in 2001; Tax Department | $580 | 41.60 | $24,128.00 |
| David T. Blonder | Counsel for 1 year; Admitted in 2001; Litigation Department | $500 | 10.70 | $5,350.00 |
| Michelle A. Burg | Counsel for 3 years; Admitted in 2001; Labor Department | $625 | 3.50 | $2,187.50 |
| Tony D. Feuerstein | Counsel for 2 years; Admitted in 2003; Corporate Department | $580 | 156.45 | $90,741.00 |
| Brian D. Geldert | Counsel for 1 year; Admitted in 2004; Financial Restructuring Department | $530 | 42.30 | $22,419.00 |
| Ryan C. Jacobs | Counsel for 1 year; Admitted in 2004; Financial Restructuring Department | $530 | 153.75 | $81,487.50 |
| Austin S. Lilling | Counsel for 2 years; Admitted in 2001; Tax Department | $560 | 2.50 | $1,400.00 |
| David C. Vondle | Counsel for 1 year; Admitted in 2003; Intellectual Property Department | $490 | 50.60 | $24,794.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Graeme D. Bell | International Law Advisor for 1 year; Admitted in 2003; Financial Restructuring Department | $525 | 106.70 | $56,017.50 |
| Thomas R. Evans | Associate for 4 years Admitted in 2007; Litigation Department | $405 | 5.50 | $2,227.50 |
| Brad M. Kahn | Associate for 2 years; Admitted in 2008; Financial Restructuring Department | $375 | 187.50 | $70,312.50 |
| Nyron J. Persaud | Associate for 2 years; Admitted in 2008; Tax Department | $375 | 5.50 | $2,062.50 |
| Joshua Y. Sturm | Associate for 3 years; Admitted in 2007; Financial Restructuring Department | $420 | 140.25 | $58,905.00 |
| Chad Vance | Associate for 2 years; Admitted in 2008; Corporate Department | $375 | 7.90 | $2,962.50 |
| Daniel Z. Vira | Associate for 9 years; Admitted in 1993; ERISA Department | $580 | 7.90 | $4,582.00 |
| Russell L. Wininger | Associate for 1 year; Not Yet Admitted; Financial Restructuring Department | $325 | 18.00 | $5,850.00 |
| Jennifer L. Woodson | Associate for 1 year; Not Yet Admitted; Tax Department | $325 | 6.80 | $2,210.00 |
| Rebecca L. Barloon | Legal Assistant for 2 years; Financial Restructuring Department | $190 | 14.30 | $2,717.00 |
| James W. Ma | Legal Assistant for 10 years; Litigation Department | $200 | 1.50 | $300.00 |
| Peter J. Sprofera | Legal Assistant for 33 years; Financial Restructuring Department | $245 | 8.80 | $2,156.00 |
| Scott A. Fener | Librarian for 2 years | $190 | 3.50 | $665.00 |

Total Amount of Fees:      $1,036,266.50
Total Number of Hours:    1,750.15
Blended Hourly Rate:        $592.10

## COMPENSATION BY PROJECT CATEGORY
## OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 17.10 | $8,026.00 |
| Akin Gump Fee Applications/Monthly Billing Reports | 20.40 | $8,156.00 |
| Analysis of Other Professionals Fee Applications/Reports | 0.90 | $337.50 |
| Retention of Professionals | 20.10 | $9,686.00 |
| Creditors Committee Meetings | 176.20 | $104,551.00 |
| Court Hearings | 42.50 | $25,543.00 |
| Financial Reports and Analysis | 0.80 | $402.00 |
| DIP, Cash Collateral Usage and Exit Financing | 23.10 | $16,611.00 |
| Executory Contracts/License Agreements | 1.60 | $600.00 |
| General Claims Analysis/Claims Objections | 5.90 | $3,252.00 |
| Analysis of Pre-Petition Transactions | 76.40 | $36,749.00 |
| Canadian Proceedings/Matters | 91.80 | $56,351.50 |
| General Adversary Proceedings | 2.10 | $1,770.00 |
| Tax Issues | 199.80 | $131,774.00 |
| Labor Issues/Employee Benefits | 123.00 | $79,106.00 |
| Real Estate Issues | 11.10 | $4,747.50 |
| Asset/Stock Transactions/Business Liquidations | 596.00 | $348,522.00 |
| Travel (billed at 50% of actual time) | 34.05 | $21,713.00 |
| Avoidance Actions | 8.00 | $3,380.00 |
| Non-Debtor Affiliates | 44.50 | $21,899.50 |
| Intercompany Analysis | 201.60 | $126,664.50 |
| Intellectual Property | 53.20 | $26,425.00 |
| **TOTAL** | **1,750.15** | **$1,036,266.50** |

8234690 v2

## DISBURSEMENT SUMMARY
## OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009

| | |
|---|---|
| Computerized Research, Corporate Service Fees & PACER Charges | $798.31 |
| Conference Call /Telephone Charges | $18,271.56 |
| Courier Service/Postage | $346.21 |
| Duplicating (@ $0.10 per page) | $2,122.00 |
| Meals/Committee Meeting Expenses | $3,913.92 |
| Travel Expenses – Airfare | $4,466.56 |
| Travel Expenses – Ground Transportation | $2,771.03 |
| Travel Expenses – Lodging | $851.80 |
| Travel Expenses – Train Fare | $2,204.20 |
| | |
| **TOTAL** | **$35,745.59** |

8234690 v2

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                          :
In re                                     :    Chapter 11
                                          :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]          :    Jointly Administered
                                          :
                              Debtors     :    <u>Objection Deadline</u>: Dec. 14, 2009 at 4:00 p.m. (ET)
                                          :    <u>Hearing Date</u>: Scheduled only if necessary
-------------------------------------------------------X

**NINTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT
OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD
<u>FROM OCTOBER 1, 2009 THROUGH OCTOBER 31, 2009</u>**

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or the "Applicant"), co-counsel to

the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its ninth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of $1,036,266.50 and for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith in the amount of $35,745.59 for the period from October 1, 2009 through October 31, 2009 (the "Compensation Period"). In support of this Application, Akin Gump respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under Canada's Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor (the "Monitor").

5.    On January 14, 2009, the High Court of Justice in England (the "UK Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceedings" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.    On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation (the "PBGC"); and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.    On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, *nunc pro tunc* to January 22, 2009. On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.    On June 10, 2009, Akin Gump filed its First Interim Fee Application Request for the Period January 22, 2009 through April 30, 2009 (the "First Interim Application"). In its First

3

Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,788,648.75 and the reimbursement of expenses in the amount of $48,632.74.[2] On July 17, 2009, this Court entered an order approving 100% of the fees and expenses sought in the First Interim Application and Akin Gump has received payment of such amounts.

9.    On September 10, 2009, Akin Gump filed its Second Interim Fee Application Request for the Period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,771,174.50 and the reimbursement of expenses in the amount of $104,100.87.[3] On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application and Akin Gump has received payment of such amounts.

10.    On September 29, 2009, Akin Gump filed its Seventh Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period August 1, 2009 through August 31, 2009 (the "Seventh Monthly Application"). In its Seventh Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $653,999.00 and the reimbursement of expenses in the amount of $44,610.63. On October 21, 2009, Akin Gump filed a Certificate of No Objection with this Court regarding the Seventh Monthly Application. Pursuant to the Administrative Fee Order,

---

[2] The First Interim Application sought the award of fees and expenses for the period from January 22, 2009 through April 30, 2009, as follows: (a) January 22, 2009 through February 28, 2009: $1,002,466.75 of fees and $14,994.50 of expenses; (b) March 1, 2009 through March 31, 2009: $866,587.25 of fees and $14,080.55 of expenses; and (c) April 1, 2009 through April 30, 2009: $919,594.75 of fees and $22,201.07 of expenses. Following discussions with the U.S. Trustee, Akin Gump agreed to a voluntary reduction of $1,184.16 for expenses incurred during the period covered by the First Interim Application.

[3] The Second Interim Application sought the award of fees and expenses for the period from May 1, 2009 through July 31, 2009, as follows: (a) May 1, 2009 through May 31, 2009: $766,765.75 of fees and $54,512.10 of expenses; (b) June 1, 2009 through June 30, 2009: $962,202.75 of fees and $25,000.85 of expenses; and (c) July 1, 2009 through July 31, 2009: $1,042,206.00 of fees and $24,587.92 of expenses.

Akin Gump has received payment of 80% of the fees and 100% of the expenses requested in the Seventh Monthly Application.

11.     On October 29, 2009, Akin Gump filed its Eighth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period September 1, 2009 through September 30, 2009 (the "Eighth Monthly Application"). In its Eighth Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $1,103,982.50 and the reimbursement of expenses in the amount of $24,753.35. On November 23, 2009, Akin Gump filed a Certificate of No Objection with this Court regarding the Eighth Monthly Application. As of the date of this Application, Akin Gump has not yet received payment on account of the Eighth Monthly Application.

### III.     RELIEF REQUESTED

12.     By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $1,036,266.50, representing 1722.05 hours of professional services and 28.10 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of $35,745.59.

13.     Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80% of its fees ($829,013.20) and 100% of its expenses ($35,745.59) relating to services rendered during the Compensation Period.

14.     Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases. There is no agreement or

understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these cases.

15.    As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

16.    Akin Gump has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period.  The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines.

17.    In the ordinary course of its practice, Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

18.    In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection.  A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C.  A detailed summary of the expenses is attached hereto as Exhibit D.

19.     Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

20.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B.  Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

### Case Administration

(Fees: $8,026.00; Hours: 17.10)

21.     This subject matter relates to services rendered to the Committee to satisfy the Committee's continuing organizational and administrative needs and enable the Committee to continue to function as a coordinated group and to acquit its fiduciary duties.

22.     During the Compensation Period, Akin Gump reviewed and analyzed all motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto.  In connection with such analyses, Akin Gump conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases.  These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

23.     During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates.  In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls.  Akin Gump also regularly consulted with Jefferies, Capstone, FMC and Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

24.    Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

### Akin Gump Fee Application/Monthly Billing Reports

(Fees: $8,156.00; Hours: 20.40)

25.     This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

### Retention of Professionals

(Fees: $9,686.00; Hours: 20.10)

26.     This subject matter relates to work performed by Akin Gump attorneys to satisfy Akin Gump's continuing disclosure obligations and to prepare supplemental declarations related thereto.  Akin Gump attorneys and paraprofessionals spent time during the Compensation Period preparing the Fourth Supplemental Declaration of Fred S. Hodara in Connection with the Application of the Official Committee of Unsecured Creditors of Nortel Networks Inc., *et al.*, to

8

Retain and Employ Akin Gump Strauss Hauer & Feld LLP as Co-Counsel, *Nunc Pro Tunc* to

January 22, 2009 (Docket No. 1807), which was filed with this Court on November 4, 2009.

Additionally, during the Compensation Period, Akin Gump, on behalf of the Committee, spent

time analyzing and discussing with the Committee the terms of engagement of professionals

retained by the Debtors, including Global IP Law Group, LLC, as intellectual property

consultant, and Special Counsel, Inc. as provider of legal services to assist in securing regulatory

approval of certain of the divestiture efforts described herein.

### Committee Meetings

(Fees: $104,551.00; Hours: 176.20)

27.　　This subject matter relates to Committee matters, meetings and conference calls

with the Committee as a whole, with individual Committee members and with the Committee's

other legal and financial advisors.  Akin Gump, together with the other Committee professionals,

held five telephonic meetings with the full Committee during the Compensation Period.  In

addition, during the Compensation Period, Akin Gump had numerous telephonic conferences

with individual Committee members and the chair of the Committee and their respective

professionals.

28.　　Prior to its meetings with the Committee, Akin Gump reviewed each pending

matter requiring the Committee's attention and all underlying documentation in connection

therewith.  Thereafter, Akin Gump discussed each of these matters with the Committee's other

professionals, the Committee, as well as individual Committee members.  During these

discussions, Akin Gump assisted the Committee in formulating a position with respect to each

pending matter.  In addition, Akin Gump prepared and/or assisted the Committee's other

professionals in preparing detailed memoranda for the Committee discussing the status of

pertinent matters in these proceedings.

9

29.      Through meetings, telephone conferences, and correspondence, Akin Gump has

assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the

various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors'

management of these proceedings, and to reach independent conclusions on the merits of specific

matters.

### Court Hearings

(Fees: $25,543.00; Hours: 42.50)

30.      This subject matter relates to preparation for and attendance at hearings and other

proceedings before this Court. Akin Gump attorneys appeared at three hearings held before this

Court during the Compensation Period, where they actively represented the Committee and

asserted the Committee's positions with respect to the matters being considered. Akin Gump

attorneys prepared for Court hearings by reviewing all applicable motions and applications filed

with the Court, including any responses thereto, and consulted with the Committee's other

professionals and the Debtors' advisors to formulate appropriate strategies. Akin Gump's

participation at such hearings was necessary to protect the interests of unsecured creditors.

### Asset Sales

(Fees: $348,522.00; Hours: 596.00)

31.      Akin Gump spent considerable time during the Compensation Period working

closely with the Nortel Debtors and their U.S. and Canadian advisors to evaluate strategic

options with respect to the divestiture of certain of the Debtors' assets. Specifically, Akin Gump

attorneys spent time during the Compensation Period working with the Nortel Debtors and their

professionals, the Monitor, and professionals for the other major creditor constituents to evaluate

and analyze divestiture options for the metro ethernet networks ("MEN"), GSM/GSM-R

("GSM"), and next generation packet core network components  ("Next Generation") businesses.

10

In that regard, Akin Gump, together with the Committee's other professionals, evaluated third party bids for certain of those assets, analyzed and assessed numerous financial and legal issues, negotiated transaction agreements with potential stalking horse candidates, attended auctions, and advised the Committee on those issues through detailed memoranda and telephonic conferences, as necessary. Additionally, during the Compensation Period, Akin Gump continued its active involvement, on behalf of the Committee, in finalizing documentation and facilitating consummation of the CDMA/LTE and enterprise solutions transactions. The closing of the CDMA/LTE transaction occurred on November 13, 2009.

*MEN Sale*

32.    During the Compensation Period, Akin Gump attorneys spent considerable time working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' MEN business (the "MEN Sale") and selecting an acceptable stalking horse bidder in connection therewith. These efforts culminated in the Nortel Debtors' announcement on October 7, 2009 that Ciena Corporation ("Ciena") was selected as the stalking horse bidder for the MEN Sale. In connection therewith, Akin Gump attorneys reviewed, commented on, and negotiated all underlying documentation, including the form of proposed bidding procedures and related sale motion (the "MEN Bidding Procedures Motion") and held numerous conference calls with the Committee's other professionals and the Committee to ascertain and develop the Committee's position on the proposed procedures and transaction. As this Court is aware, the Committee filed and successfully prosecuted an objection with respect to certain aspects of the MEN Bidding Procedures Motion at a joint hearing before the U.S. and Canadian Courts on October 15, 2009. This Court subsequently entered an order approving the MEN Bidding Procedures Motion in a

form acceptable to the Committee on October 16, 2009. An auction with respect to the MEN Sale took place on November 20 - 22, 2009, and Ciena was selected as the successful bidder.

*GSM Sale*

33.     Akin Gump attorneys also spent considerable time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' GSM business (the "GSM Sale"). In connection therewith, Akin Gump attorneys reviewed, commented on, and negotiated all underlying documentation, including the form of proposed bidding procedures and related sale motion (the "GSM Bidding Procedures Motion") and held numerous conference calls with the Committee's other professionals and the Committee to ascertain and develop the Committee's position on the proposed procedures and transaction. This Court subsequently entered an order approving the GSM Bidding Procedures Motion on October 15, 2009. An auction with respect to the GSM Sale is scheduled to take place on November 24, 2009.

*CDMA/LTE Sale*

34.     Since the approval on July 28, 2009 by the U.S. and Canadian Courts of the sale of the CDMA/LTE assets to Telefonaktiebolaget L M Ericsson ("Ericsson"), Akin Gump attorneys continued their active involvement in reviewing, commenting on, and negotiating all underlying documentation necessary to timely consummate the transaction. In connection therewith, Akin Gump attorneys, together with professionals from Jefferies, Capstone and FMC, participated in numerous meetings and conference calls with professionals for the Nortel Debtors, Ericsson and other major stakeholders, to negotiate and finalize underlying documentation. As previously noted, these efforts culminated in the closing of the sale of the

CDMA/LTE assets to Ericsson on November 13, 2009, and the Nortel Debtors' receipt of approximately $1.12 billion of sale proceeds.

*Enterprise Sale*

35.     Finally, since the approval by the U.S. and Canadian Courts of the sale of the Nortel Debtors' enterprise solutions business (the "Enterprise Sale") to Avaya Inc. ("Avaya") on September 16, 2009, Akin Gump attorneys have continued working with the professionals for the Nortel Debtors and Avaya to negotiate and finalize documentation necessary for the successful consummation of the transaction.

## Canadian Funding Issues

(Fees: $56,351.50; Hours: 91.80)

36.     As the Court may recall, earlier in these Insolvency Proceedings, the Committee engaged in lengthy negotiations with the Nortel Debtors, the Monitor, the Administrator and the ad hoc group of bondholders (the "Ad Hoc Bondholder Group") to address the Canadian Debtors' liquidity concerns. Those negotiations resulted in the Canadian, U.S. and EMEA Debtors entering into the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Interim Funding Agreement"). The Interim Funding Agreement provided the Canadian Debtors funding through September 30, 2009. As such, during the Compensation Period, the Canadian Debtors, through the Monitor, approached the Committee to discuss longer term funding solutions. Akin Gump, on behalf of the Committee, spent considerable time during the Compensation Period participating in several in-person and telephonic meetings with the Nortel Debtors, the Monitor and the Ad Hoc Bondholder Group to consider potential funding options, and evaluating those options in the context of various intra-estate issues that will require resolution in these cases. Negotiations among the parties are ongoing and Akin Gump, on behalf

13

of the Committee, will continue to protect the interests of the Debtors' unsecured creditors throughout this process.

### Tax Issues

(Fees: $131,774.00; Hours: 199.80)

37.     This subject matter relates to legal services rendered by Akin Gump relating to tax matters affecting the Nortel Debtors. During the Compensation Period, Akin Gump continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel Debtors' legacy transfer pricing system. In connection therewith, Akin Gump attorneys participated in numerous conferences with the Committee's other professionals and the Debtors' senior management team and advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

38.     On or about August 20, 2009, the Internal Revenue Service filed an amended proof of claim in the U.S. Proceeding asserting an aggregate claim of over $3 billion (the "IRS Proof of Claim"). During the Compensation Period, Akin Gump attorneys continued working with the Committee's other professionals and the Debtors' advisors to analyze the IRS Proof of Claim and its potential impact on these Insolvency Proceedings, and particularly the consummation of the Enterprise Sale. On September 15, 2009, the Debtors filed an objection to the IRS Proof of Claim seeking disallowance of the IRS claim on the grounds that it was partially time-barred and without a reasonable basis. The Debtors also sought to adjudicate the IRS Proof of Claim on an expedited basis to permit the Enterprise Sale to proceed. On September 16, 2009, this Court ordered that the IRS Proof of Claim be adjudicated on an expedited basis by October 13, 2009. In connection therewith, Akin Gump, on behalf of the Committee, participated in negotiations and a mediation session with the Debtors and the IRS to resolve certain issues raised by the IRS Proof of Claim as they related to the Enterprise Sale. As

14

a result of these efforts, the parties were able to come to a consensual resolution that would permit the Enterprise Sale to proceed. A stipulation documenting the agreement among the parties was approved by this Court on October 13, 2009.

### Labor and Employee Benefits Issues

(Fees: $79,106.00; Hours: 123.00)

39.     This subject matter relates to services rendered by Akin Gump in connection with the Committee's analysis of the Debtors' benefit plans and general labor matters. During the Compensation Period, Akin Gump attorneys spent considerable time analyzing the pension and employee related issues raised by the various asset divestitures described above, and where appropriate, commenting on and negotiating the underlying documentation of such transactions. Further, Akin Gump attorneys analyzed the impact of potential claims that could be asserted by the PBGC on certain of the assets being sold in the various divestiture processes, and worked with the Debtors on potential settlement options in connection therewith. On October 13, 2009, this Court approved a stipulation between the Debtors and the PBGC, pursuant to which the PBGC agreed to waive claims and potential claims against certain NNI wholly owned, non-debtor subsidiaries, the shares of which (the "Non-Debtor Shares") are being sold to Avaya in the Enterprise Sale, in exchange for a lien on the proceeds of the Enterprise Sale allocated to the sale of the Non-Debtor Shares.

40.     Akin Gump attorneys also spent time during the Compensation Period reviewing the proofs of claim and related materials filed jointly by the Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund against each of the U.S. Debtors and Canadian Debtors (collectively, the "UK Pension Claims") in their respective Insolvency Proceedings. In connection therewith, Akin Gump attorneys conferred with Ashurst and FMC to analyze the alleged basis for such claims, and to evaluate potential strategies with respect to the

15

UK Pension Claims.  Akin Gump, together with Ashurst and FMC, prepared a detailed memorandum for the Committee analyzing the legal issues relating to the UK Pension Claims.

41.     Additionally, during the Compensation Period, Akin Gump attorneys, together with Capstone, continued to work closely with the Debtors and their professionals on the appointment of a U.S. principal officer (the "U.S. Principal Officer") to represent the Debtors' estates as part of the new corporate organizational structure outlined by NNC in its August 10, 2009 press release.  In connection therewith, Akin Gump, Capstone and professionals for the Debtors and the Ad Hoc Bondholder Group interviewed potential candidates for such a position.

## Intercompany Issues
(Fees: $126,664.50; Hours: 201.60)

42.     As required under the terms of the Interim Funding and Settlement Agreement approved by the U.S. and Canadian Courts on June 29, 2009, Akin Gump, on behalf of the Committee, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding a protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates.  Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a framework for the allocation of sale proceeds.

## Intellectual Property
(Fees: $26,425.00; Hours: 53.20)

43.     During the Compensation Period, Akin Gump attorneys continued to review and examine the Nortel Debtors' intellectual property portfolio, and analyzed intellectual property issues associated with the various asset divestitures by the estates.

16

**Non-Debtor Affiliates**

(Fees: $21,899.50; Hours: 44.50)

44.     This subject matter relates to time spent by Akin Gump attorneys in connection with certain restructuring issues and proposals related to Nortel's non-Debtor affiliates.  During the Compensation Period, Akin Gump, along with the Committee's other professionals, spent time analyzing a restructuring proposal (the "APAC Restructuring") for the Nortel Debtors' Asian and pacific region affiliates and subsidiaries (the "APAC Debtors").  In connection therewith, Akin Gump, on behalf of the Committee, participated in numerous in-person and telephonic meetings with the Nortel Debtors' professionals and other major stakeholders to negotiate and finalize the APAC Restructuring plan.  On November 11, 2009, the Debtors filed a motion with this Court to approve the APAC Restructuring, which restructuring will benefit the Debtors' estates by enabling the APAC Debtors to continue their operations and preserve their assets in order to facilitate the various divestitures described above.  A hearing to approve the APAC Restructuring is scheduled before this Court on December 2, 2009.

**Non-Working Travel**

(Fees: $21,713.00; Hours: 34.05)

45.     During the Compensation Period, Akin Gump attorneys spent 68.10 non-working hours traveling to Court hearings and/or meetings.  Pursuant to Local Rule 2016-2(d)(viii), Akin Gump has discounted this time by 50% and, accordingly, has billed 34.05 working hours traveling for the Compensation Period.

## V.     ALLOWANCE OF COMPENSATION

46.     The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited not only the members of the Committee, but also

the unsecured creditor body as a whole and the Debtors' estates.

47.    The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

48.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ."  11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3).  The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

49.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 1750.15 hours.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

50.     As shown by this application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of time.  Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services.  In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $35,745.59 for which Akin Gump respectfully requests reimbursement in full.

51.     The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters.  Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

52.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such

19

services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for Westlaw computer assisted legal research.

53.     No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

54.     No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

*[The remainder of this page intentionally left blank]*

**WHEREFORE**, Akin Gump respectfully requests that this Court:

(a)     approve the allowance of $1,036,266.50 for compensation for professional services rendered to the Committee during the period from October 1, 2009 through and including October 31, 2009;

(b)     approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period from October 1, 2009 through and including October 31, 2009 in the amount of $35,745.59; and

(c)     authorize and direct the Debtors to immediately pay to Akin Gump the amount of $864,758.79, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:   New York, New York
         November 23, 2009

                              AKIN GUMP STRAUSS HAUER & FELD LLP

                              By: _____
                                  Fred S. Hodara (pro hac vice)
                                  A Member of the Firm
                                  One Bryant Park
                                  New York, New York 10036
                                  (212) 872-1000
                                  Co-Counsel to the Official Committee of
                                  Unsecured Creditors

21