**EXHIBIT B**

**Execution Version**

# SETTLEMENT AND RELEASE AGREEMENT

Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd ("FTS") and the affiliates of FC and FTS that are signatories hereto, on behalf of themselves and their respective Affiliates (as defined below) (collectively, "Flextronics"), and (i) Nortel Networks Limited ("NNL") and its Canadian  affiliates that have filed an application under the Companies' Creditors Arrangement Act  (the "CCAA"), (ii) Nortel Networks Inc. ("NNI") and its US debtor affiliates, (iii) the companies listed on Schedule A hereto (collectively the "EMEA Entities"; and (i), (ii) and (iii) collectively, "Nortel")), and (iv) the joint administrators acting on behalf of the EMEA Entities also listed on Schedule A hereto (the "Joint Administrators") (Flextronics, Nortel and the Joint Administrators are collectively referred to herein as the "Parties") hereby enter into this agreement (the "Settlement and Release Agreement"), on the terms and conditions set forth below:

**WHEREAS**, NNL and Flextronics are parties to a Master Contract Manufacturing Services Agreement, dated as of September 30, 2003, between NNL and Flextronics Corporation (f/k/a Solectron Corporation) (including any ancillary agreements incorporated by reference thereunder, including without limitation certain Virtual Systems House Agreements ("VSHAs") and purchase orders, and as amended by an amending agreement, dated June 18, 2004; the "SLR MCMSA"), and an Amended and Restated Master Contract Manufacturing Services Agreement, dated as of June 29, 2004, between NNL and Flextronics Telecom Systems Ltd. (including any ancillary agreements incorporated by reference thereunder, including without limitation certain VSHAs and purchase orders, as amended from time to time by the following agreements: (i) the first amending agreement, dated November 1, 2004; (ii) the second amending agreement, dated May 8, 2006; (iii) a memorandum of understanding, dated

**Execution Version**

October 13, 2006; and (iv) the third amending agreement, dated March 31, 2008, the "Flextronics MCMSA," and together with the SLR MCMSA, as amended, the "MCMSAs").

**WHEREAS**, on January 13, 2009, NNL and Flextronics entered into an agreement (the "Amending Agreement") which, among other things, amended the contractual relationship, as set forth in the MCMSAs, in a variety of ways, including: (i) NNL agreed to purchase from Flextronics US$120,000,000 of inventory, as identified in Schedule A of the Amending Agreement, via four payments over an approximately six-month period; (ii) NNL agreed to issue, on a quarterly basis, purchase orders to Flextronics for certain inventory defined therein as Quarterly E&O; (iii) NNL and Flextronics agreed to treatment of certain existing plans of record for transfers of operations; and (iv) NNL and Flextronics modified NNL's credit terms to provide for payments on a weekly basis;

**WHEREAS**, on or about January 14, 2009 (the "Petition Date")[1], (i) NNL and certain of its Canadian Affiliates filed an application under and were granted certain initial creditor protection pursuant to the  CCAA in Canada to facilitate a comprehensive business and financial restructuring (the "CCAA Proceedings") pursuant to the terms of an initial order of the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), as the same has been and may be amended and restated from time to time, (ii) NNI and certain of its U.S. subsidiaries (the "Debtors")[2] commenced bankruptcy cases (the "US Bankruptcy Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "US Bankruptcy Court" and together with the Canadian Court, the "Courts"), and (iii) the High Court

---

[1]The Petition Date shall also refer, only in the case of Nortel Networks (CALA) Inc., to July 14, 2009.
[2]The Debtors also include Nortel Networks (CALA) Inc., which subsequently filed a voluntary chapter 11 petition in the US Bankruptcy Court on July 14, 2009, and the US Bankruptcy Cases include the Chapter 11 case of Nortel Networks (CALA) Inc.

of Justice in England placed nineteen of Nortel's European affiliates, including the EMEA

Entities, into administration under the control of individuals from Ernst & Young LLC (the

"<u>EMEA Proceedings</u>", and together with the CCAA Proceedings and the US Bankruptcy Cases,

the "<u>Proceedings</u>");

   **WHEREAS**, Flextronics' business relationship with Nortel is primarily governed

by the MCMSAs;

   **WHEREAS**, subsequent to the commencement of the Proceedings, certain

disputes emerged between Flextronics and Nortel regarding the proper interpretation of the

Amending Agreement and certain other matters, and the resolution of such disputes was

memorialized in a Settlement Agreement (the "<u>Settlement Agreement</u>") and related Side Letter

(the "<u>Side Letter</u>"), each dated as of May 22, 2009;

   **WHEREAS**, the Amending Agreement, the Settlement Agreement and the Side

Letter have been approved by the Canadian Court in the CCAA Proceedings, and the Settlement

Agreement and Side Letter have been approved by the US Bankruptcy Court in the US

Bankruptcy Cases;

   **WHEREAS**, the Settlement Agreement provides, among other things, that "the

termination of the SLR MCMSA, pursuant to the termination notice delivered by Flextronics

dated January 12, 2009, shall be effective on December 12, 2009";

   **WHEREAS**, the Flextronics MCMSA remains in effect and no termination

notices have been given thereunder;

   **WHEREAS**, Nortel has not repudiated or moved to assume or reject either of the

MCMSAs to date;

**WHEREAS,** the MCMSAs establish a complex manufacturing relationship by which, in essence, Nortel has "outsourced" its hardware design, manufacturing and supply functions to Flextronics;

**WHEREAS**, in general terms (subject to the actual terms of the MCMSAs), pursuant to this complex relationship, NNL and certain Nortel entities issue 12-month nonbinding "forecasts" of orders for goods and services expected to be placed by NNL and such other Nortel entities in the coming year, which forecasts Flextronics uses as a basis to place orders for materials from third parties and to otherwise manage its manufacturing process to meet Nortel's expected demand ("Forecasts");

**WHEREAS**, certain Nortel entities place monthly orders for finished goods to Flextronics, which, following acceptance by Flextronics, obligate Flextronics to ship goods in accordance with the accepted purchase orders;

**WHEREAS**, on July 20, 2009, the Debtors filed the Debtors' Motion For Orders (I) (A) Authorizing Entry Into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date For the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases [Docket No. 1131] (the "US Enterprise Sale Motion") in the US Bankruptcy Court;

**WHEREAS**, on September 4, 2009, Flextronics filed a timely limited objection and reservation of rights with respect to the US Enterprise Sale Motion  (the "Enterprise Objection");

**WHEREAS**, on September 15, 2009, Nortel Networks Corporation, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Applicants") filed a motion for the relief set forth in the Applicants' Notice of Motion, including approval to sell assets and shares in Nortel's Enterprise Solutions Business pursuant to an amended and restated asset and share sale agreement, dated as of September 14, 2009 (the "Canadian Enterprise Sale Motion") in the Canadian Court;

**WHEREAS**, on September 16, 2009, the US Bankruptcy Court entered the Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases (the "US Enterprise Sale Order") which, *inter alia*, granted the relief sought in the US Enterprise Sale Motion and contained in paragraph 28 thereof a resolution of the Enterprise Objection;

**WHEREAS**, on September 17, 2009, the Canadian Court entered the Approval and Vesting Order (Enterprise Solutions Business) (the "Canadian Enterprise Sale Order," together with the US Enterprise Sale Order, the "Enterprise Sale Orders"), which, *inter alia*, granted the relief sought in the Canadian Enterprise Sale Motion and contained in paragraph 11 thereof a resolution of the Enterprise Objection;

**WHEREAS**, Flextronics and certain of the Nortel entities have certain outstanding amounts owing between them and their various Affiliates, where "Affiliates" means

any entity that controls, is controlled by or is under common control with any of the Parties, where "control" means ownership of more than 10% of the voting equity of an entity or the ability to otherwise direct the management of an entity;

**WHEREAS**, while Nortel does not admit the validity of any objection Flextronics has asserted to date in the Proceedings, or that it could assert with respect to any prior, pending or future sale of a business or product line or any other assets or shares of Nortel (a "Business") to one or more third parties (a "Purchaser") (any such sale, whether by asset sale, merger, operation of law or otherwise, a "Divestiture"), including without limitation to the treatment of the MCMSAs in connection with any such Divestiture, the Parties wish to resolve certain matters as set forth in this Settlement and Release Agreement, including to (i) resolve the Enterprise Objection, (ii) fully and finally resolve the proofs of claim filed by Flextronics against Nortel and the Released Claims (as defined in Section 7 of this Settlement and Release Agreement), including the Post-Petition Ordinary Course Contractual Claims (as defined in Section 1 of this Settlement and Release Agreement), except as otherwise expressly stated herein, (iii) ensure Flextronics' cooperation with regard to pending and future Divestitures, (iv) ensure the provision by Flextronics of a supply contract with the Purchaser in connection with any future Divestiture on the terms described herein and (v) provide for the Parties' performance of their postpetition obligations under the MCMSAs until termination in accordance with this Settlement and Release Agreement;

**WHEREAS**, nothing in this Settlement and Release Agreement shall cause any of the EMEA Entities, the Joint Administrators  or any other Nortel entity to assume any obligations under the MCMSAs or any other agreement to which such EMEA Entity, Joint Administrator or other Nortel entity is not a signatory prior to the date hereof; and

**WHEREAS**, the Parties have been and are currently represented by counsel at all times during the course of the settlement negotiations culminating in this Settlement and Release Agreement.

**NOW THEREFORE**, in consideration of the foregoing and in consideration of the terms, conditions, mutual agreements and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, and in order to avoid the expense, delay and uncertainty associated with further litigation relating to the Enterprise Objection or any prior, pending or future Divestiture and in order to resolve certain claims and the other matters addressed herein, it is hereby:

**AGREED**, by and between the Parties hereto, as follows:

1.    <u>**Payment Obligations**</u>.  In full and final settlement of the Released Claims, subject to the terms and conditions set forth below, NNI shall pay to Flextronics on behalf of Nortel (in accordance with a side agreement among the Nortel parties hereto to which Flextronics is not a party) the Payment Obligation (as defined in Schedule B of this Settlement and Release Agreement) set out in Schedule B of this Settlement and Release Agreement, at the times set forth in Schedule B to this Settlement and Release Agreement.  The Payment Obligation shall constitute an administrative expense pursuant to Section 503(b) of the Bankruptcy Code against NNI in its US Bankruptcy Case  which must be paid in accordance with the terms set forth in Schedule B of this Settlement and Release Agreement.  In addition, in full and final settlement of the portion of the claims included in the US Proofs of Claim and the Canadian Proofs of Claim (as such terms are defined in section 7 herein) that the Parties hereby agree are valid obligations arising after the Petition Date owed by Nortel to Flextronics, and which claims are identified in Schedule C to this Settlement and Release Agreement (the "<u>Post-</u>

<u>Petition Ordinary Contractual Claims</u>"), subject to the terms and conditions set forth below, certain Nortel entities shall pay to Flextronics the amounts set out in Schedule C of this Settlement and Release Agreement in the ordinary course of business, which amounts the Parties acknowledge are undisputed and shall be paid not later than December 15, 2009. Notwithstanding any other provision of this Settlement and Release Agreement or any other agreement among the parties, the obligation of each Nortel entity to make the payment next to its name in Schedule C of this Settlement and Release Agreement is a several obligation of such entity and nothing in this Settlement and Release Agreement or any other agreement among the parties shall be construed to cause the obligations set out in Schedule C to be a joint obligation of any Nortel entity, and Flextronics expressly agrees hereby that the liability of each of the Nortel entities to make the payments set out next to its name is limited to the amount of such payment for such entity and that no other Nortel entity has any liability to make any of the payments set out therein.

2. **Post-Filing Performance.**

(a) The Parties hereby acknowledge and agree that, except as otherwise expressly set forth in section 4(a)(iv) of this Settlement and Release Agreement, the Parties shall perform in good faith in the ordinary course of business in accordance with the terms of the MCMSAs, as amended by the Amending Agreement, the Settlement Agreement or the Side Letter (including without limitation Nortel's obligations to provide reasonable Forecasts of expected orders consistent with historical business practices between the Parties, to issue purchase orders consistent with historical business practices and to make timely payment of invoices with respect to deliveries made in accordance with such purchase orders, and Flextronics' obligations to purchase inventory and to fulfill purchase orders), without any claim or demand for adequate

assurances, changes in payment terms or deposits or any other credit protection, until termination pursuant to section 5 of this Settlement and Release Agreement**.**

(b) With respect to inventory that Flextronics identifies as subject to a post-petition purchase obligation by Nortel, Flextronics hereby agrees that (i) Nortel may reasonably request information regarding any such inventory, (ii) Flextronics shall supply information pursuant to and shall reasonably cooperate with such request and (iii) Nortel will be afforded reasonable access to inspect such inventory, in order for Nortel to determine (which determination shall be made in writing to Flextronics within 30 days of the date Flextronics identifies such inventory as subject to a post-petition purchase obligation by Nortel) whether such inventory is defective or does not comply with the applicable specifications in accordance with the MCMSAs, was not acquired using prudent purchasing practices in accordance with the MCMSAs or was previously paid for by Nortel under the Amending Agreement or the Settlement Agreement or otherwise, for which the obligation to pay has become an obligation of a Purchaser in connection with a Divestiture, or for any other reason is not an unsatisifed post-petition purchase obligation.  For the avoidance of doubt, this section shall not apply to any obligations released under this Settlement and Release Agreement.

(c) With respect to inventory owned by Nortel that Flextronics or a third-party warehousing provider holds on consignment as of the Effective Date (the "Consigned Inventory"), Flextronics agrees to buy from such Consigned Inventory, at the lesser of (i) the price paid by Nortel to Flextronics for such Consigned Inventory or (ii) the then-prevailing market price at the time Flextronics purchases the Consigned Inventory, any inventory that Flextronics needs in order to fulfill a purchase order that Flextronics receives from any third party (including, but not limited to, a Purchaser in connection with any of the Divestitures) prior

to Flextronics purchasing any such inventory from any of its suppliers, <u>provided</u>, <u>however</u>, that Flextronics shall be permitted to consume inventory purchased pursuant to an existing non-cancelable purchase order with a third party prior to purchasing Consigned Inventory.  For the avoidance of doubt, the foregoing sentence does not limit the ability of Flextronics to sell any inventory that Flextronics owns as of the Effective Date.

       (d) The Parties hereby acknowledge and agree that, notwithstanding Section 8 of the Side Letter, and except as otherwise expressly set forth in this Settlement and Release Agreement or as agreed to in advance and in writing by the Parties in the ordinary course of business, the Parties shall not hold or offset any past, present or future payables, claims or other amounts that they or any of their Affiliates now owe or in the future may owe the other Party or any of its Affiliates (including, without limitation, any amounts owed by the Parties or any of their Affiliates under the MCMSAs or any other agreement among any of the Parties that are not part of the Released Claims) against any past, present or future payables, claims or other amounts that are now owed or may in the future be owed to them or their Affiliates by the other Party or any of its Affiliates, and the Parties agree that all such amounts shall be paid in accordance with the terms of the relevant agreement.  For the avoidance of doubt and without limiting the foregoing, the Parties agree that (i) the Parties will not hold or offset any past, present or future payables, claims or other amounts that they or any of their Affiliates may now owe or in the future may owe to the other Party or any of its Affiliates or have a past, present or future right of set-off with respect to the Pension Claims (as defined in section 6 below) and (ii) any right of recovery from Nortel with respect to the Pension Claims is restricted to any distribution to unsecured creditors under any Plan of Arrangement in the CCAA Proceedings, or

such rights as Flextronics may have, if any, as against the Nortel Networks Health & Welfare Trust.

   3.   **The Enterprise Sale Orders.**

    (a)   The Enterprise Sale Orders as they relate to the resolution of the Enterprise Objection (paragraph 28 of the US Enterprise Sale Order and paragraph 11 of the Canadian Enterprise Sale Order) shall remain effective as set forth therein; provided that Flextronics and Nortel agree that the obligations under section (vi) of paragraph 28 of the US Enterprise Sale Order and paragraph 11 of the Canadian Enterprise Sale Order are satisfied as follows:

    (i)   Flextronics shall not assert, or shall be deemed to have withdrawn, any rights to adequate protection or similar rights related to the transfer of equipment owned by Nortel in connection with the sale of Nortel's Enterprise Solutions Business as authorized by the Courts on September 16 and 17, 2009;

    (ii)   Flextronics and Nortel agree to effect the orderly transfer of the equipment in Flextronics' possession owned by Nortel and proposed to be transferred to the Purchaser of the Enterprise Solutions Business, which equipment has been identified in writing and agreed to between the Parties as of November 5, 2009.  Nortel or the Purchaser shall provide Flextronics with written notification of its intent to transfer such equipment.  Within 30 days of such written notification, Flextronics shall provide Nortel or the Purchaser, as appropriate, in writing, the estimated documented costs directly related to such transfer.  For the avoidance of doubt, Nortel or the Purchaser, as appropriate and as agreed to between Nortel and Flextronics (in advance of any such transfer), shall bear the reasonable, documented costs directly related to any such transfer, including costs of storage, insurance and transportation directly related to any such transfer, any depreciation charge-backs and any taxes including sales, use, VAT and

transfer taxes or any levies, customs duties or similar governmental charges of any kind, each of which costs shall be excluded from the Flextronics Released Claims (defined below), but shall not include any formal or informal requests or demands for adequate protection payments or any similar payments or protections.

(b) Nothing herein shall be construed as an amendment or restatement of the Enterprise Sale Orders.  Flextronics further agrees that it shall not and will not file or assert any formal or informal objection or take any other action in opposition to any motion or other request by Nortel for relief to effect the sale of the Enterprise Solutions Business provided such relief is not inconsistent with section 3 of this Settlement and Release Agreement.

4.    **Future Divestitures**.

(a) In connection with any proposed future Divestiture, which for the purposes of this section 4(a) excludes (x) the sale of Nortel's Enterprise Solutions Business pursuant to the agreement approved by the Enterprise Sale Orders, (y) the sale of Nortel's CDMA and LTE Access Business pursuant to the sale agreement approved in the Proceedings on July 28, 2009, provided that each of (x) and (y) shall not be excluded if such sale is not consummated in accordance with the approved applicable sale agreement, or in accordance with such applicable sale agreement as modified or amended, and (z) the sale of Nortel's Layer 4-7 business pursuant to the sale agreement approved in the U.S. Proceedings on March 26, 2009 and Canadian Proceedings on April 7, 2009:

(i)    Flextronics agrees that at the request of Nortel in connection with such Divestiture, it will conduct good faith negotiations with a proposed Purchaser for the purpose of entering into a direct agreement by and among Flextronics, such Purchaser and any of such

Purchaser's designated Affiliates for the supply of products and services related to the applicable Business being acquired on market competitive terms and conditions; and

          (ii)       Without limiting Flextronics' obligation in section 4(a)(i) of this Settlement and Release Agreement, if by the earliest of (x) 45 days after the conclusion of the auction of the Business pursuant to bidding procedures approved by the Courts, (y) 10 days after the entry of orders approving such Divestiture by the Courts (or if such orders are not entered on the same day, 10 days after the entry of the earlier order) and (z) 30 days prior to the closing of such Divestiture (as determined by Nortel), Flextronics and the Purchaser have not reached a direct agreement as described in section 4(a)(i) of this Settlement and Release Agreement, Flextronics hereby consents to, at the request of Nortel, enter into and execute an agreement with the Purchaser, which agreement shall be effective upon the closing of such Divestiture, that contains terms and conditions identical (aside from nonmaterial conforming changes) to the terms and conditions (including, but not limited to, payment and pricing terms) existing under the MCMSAs, as such terms and conditions relate to the Business subject to such Divestiture, as of January 12, 2009, provided that (A) for the avoidance of doubt, such agreement shall not include the terms of the Amending Agreement except as set forth in section 4(a)(ii)(B) of this Settlement and Release Agreement, (B) such agreement shall include the Quarterly E&O obligations set forth in section 4 of the Amending Agreement and section 5 of the Settlement Agreement, (C) at Purchaser's option, such agreement shall provide that Purchaser and Flextronics shall agree not to exercise their respective rights to deliver a notice for termination for convenience (as provided for in section 1.5 of the Flextronics MCMSA) for a period of three (3) months after the closing of such Divestiture; and (D) if Flextronics determines in good faith that the Purchaser's creditworthiness is insufficient to support such pre-Amending Agreement

payment terms, Flextronics shall be permitted to modify such payment terms (but not the pricing terms), provided that such modified payment terms shall be no worse than the payment terms received by any Flextronics customer whose creditworthiness is substantially similar to the Purchaser and shall not include demands for letters of credit, deposits or other similar creditor protections.  In connection with the foregoing, upon the request of Nortel, Flextronics shall assess any potential Purchaser's creditworthiness and provide Nortel with the payment terms that Flextronics deems acceptable for such Purchaser in writing within two (2) business days of Nortel's request for such information, provided that (1) Nortel provides Flextronics, contemporaneously with such request for payment terms, all material nonpublic information provided by Purchaser to Nortel related to such Purchaser's creditworthiness, to the extent authorized by Purchaser, and (2) Nortel reasonably cooperates with Flextronics in connection with any of Flextronics' requests for further information regarding the Purchaser; and

(iii)     Nortel agrees, except to the extent provided above in this section 4, that the MCMSAs and any of Nortel's contractual rights thereunder as they relate to such Divestiture shall not be assigned to the Purchaser in connection with such Divestiture;

(iv)     Without limiting the obligation of Flextronics described in section 2(c) of this Settlement and Release Agreement, Nortel and Flextronics agree to conduct good faith negotiations with the Purchaser regarding a three-way inventory purchase agreement in connection with such Divestiture as set forth in section 3 of the Settlement Agreement (notwithstanding the limitation therein with respect to Divestitures where the gross proceeds are less than $100 million); provided that notwithstanding the foregoing and section 3(c) of the Settlement Agreement, in connection with such Divestiture, Nortel shall not be responsible or otherwise required to pay for any unconsumed portion of such Purchaser's Forecast (as defined

in the Settlement Agreement) or any other Quarterly E&O liability arising after the date of closing related to the Business subject to such Divestiture and Flextronics waives its right to seek payment from Nortel for such amounts; and

(v)     At Nortel's request, within 30 days of execution of a Divestiture agreement, or a later date determined by Nortel, Flextronics and Nortel shall identify, in writing, any equipment in Flextronics' possession owned by or reserved for Nortel and proposed to be transferred to the Purchaser in such Divestiture, and shall promptly meet and confer to reconcile any potential discrepancies.  Flextronics and Nortel agree to effect the orderly transfer of such equipment in accordance with the procedures set forth under the MCMSAs, as modified by the provisions of this section 4(a)(v).  Nortel or the Purchaser shall provide Flextronics with written notification of its intent to transfer such equipment.  Within 30 days of such written notification, Flextronics shall provide Nortel or the Purchaser, as appropriate, in writing, the estimated documented costs directly related to such transfer.  For the avoidance of doubt, Nortel or the Purchaser, as appropriate and as agreed to between Nortel and Flextronics (in advance of any such transfer), shall bear the reasonable, documented costs directly related to any such transfer, including costs of storage, insurance and transportation directly related to any such transfer, any depreciation charge-backs and any taxes including sales, use, VAT and transfer taxes or any levies, customs duties or similar governmental charges of any kind, each of which costs shall be excluded from the Flextronics Released Claims (defined below).  Flextronics further agrees that it shall not make any formal or informal requests or demands for adequate protection payments or any similar payments or protections in connection with equipment proposed to be transferred to the Purchaser in such Divestiture; and

(vi)    Upon closing of such Divestiture, Nortel shall cease placing Forecasts or purchase orders under the MCMSAs for products or services exclusively used in the Business subject to such Divestiture, provided that Nortel, in its capacity as transition service provider to the Purchaser, shall not be prohibited from providing administrative services to the Purchaser, including, but not limited to placing Forecasts or purchase orders on behalf of the Purchaser, and Nortel shall not be (A) restricted from placing Forecasts or purchase orders for any portion of the business not subject to such Divestiture or (B) released from any liability for such Forecasts or purchase orders referred to in (A) above.

(b) Except as otherwise provided in section 3(b) herein, Flextronics agrees that it shall not file with any court or assert in any proceeding or otherwise any formal or informal objection or take any other action in opposition to or with the intention of frustrating any Divestiture.  Flextronics further agrees that it shall not seek from Nortel or the Purchaser any remedy, payment, or any modification of the MCMSAs as a result of any such Divestiture, including without limitation any claim or demand for adequate assurances, changes in payment terms, deposits or any other credit protection, cure costs, or any request or demand for the termination, assumption, rejection or repudiation of the MCMSAs or any part thereof. Flextronics further agrees that it shall not assert any claim or seek any payment or other remedy from a Purchaser in compensation for the Released Claims or any other right or claim waived or compromised by Flextronics pursuant to this Settlement and Release Agreement.

5.    **Termination of MCMSAs.**  The Parties acknowledge and agree that unless otherwise agreed between the Parties: (i) without limiting any of Flextronics' or Nortel's respective rights to terminate the Flextronics MCMSA upon a material breach by the other Party, the Parties shall not seek to reject, repudiate or otherwise cancel or terminate the Flextronics

**Execution Version**

MCMSA pursuant to the processes applicable in the Proceedings except upon 210 days notice to the other Party (or such shorter period as the Parties may agree), during which period the Parties shall continue to perform their obligations under the Flextronics MCMSA in the ordinary course of business, and the Parties agree that if such notice is provided they will not deliver a notice for termination for convenience that would become effective prior to such planned rejection, repudiation, cancellation or termination date; and (ii) Flextronics and Nortel agree to not exercise their respective rights to deliver a notice for termination for convenience pursuant to section 1.5 of the Flextronics MCMSA for the period through December 31, 2010, which for the avoidance of doubt shall govern (y) the production of the SLR Enterprise Products (as defined in the ERS8K Manufacturing Agreement, defined below) pursuant to the ERS8K Manufacturing Agreement between and among  NNL, NNI, FC and FTS (the "ERS8K MA"), provided that the Parties shall not be bound by this Section 5(ii)(y) until each of the parties to the ERS8K MA execute the agreed form ERS8K MA attached hereto as Exhibit 1, and provided further that any modifications to the agreed form ERS8K MA requested prior to the execution of such agreed form ERS8K MA shall be subject to the reasonable approval of the parties to the ERS8K MA, and (z) the production of the SLR MEN Products (as defined in the MEN Manufacturing Agreement, defined below) pursuant to the MEN Manufacturing Agreement between and among NNL, NNI, FC and FTS (the "MEN MA"), provided that the Parties shall not be bound by this Section 5(ii)(y) until each of the parties to the MEN MA execute the agreed form MEN MA attached hereto as Exhibit 2, and provided further that any modifications to the agreed form MEN MA requested prior to the execution of such agreed form MEN MA shall be subject to the reasonable approval of the parties to the MEN MA, and (iii) the SLR MCMSA shall terminate as currently scheduled effective as of December 12, 2009 pursuant to and subject to the contractual

terms and conditions that apply to a termination made in accordance with its terms; provided, however, that notwithstanding the termination of the SLR MCMSA and section 4 of the Settlement Agreement, the Parties agree that Flextronics and Nortel shall continue to perform in accordance with the terms and conditions of the SLR MCMSA all operations (A) under the present VSHAs applicable to the CDMA business, and (B) under the Wireline Manufacturing Agreement between and among NNL, NNI, FC and FTS, effective on June 23, 2009 (the "Wireline Manufacturing Agreement") applicable to the Wireline Products business (as defined in the Wireline Manufacturing Agreement).  Flextronics further agrees that it shall grant a Purchaser terms and conditions identical (aside from nonmaterial conforming changes) to the terms and conditions under the then-existing ERS8K MA, MEN MA and  Wireline Manufacturing Agreement, respectively, as such terms and conditions relate to a Business subject to a future Divestiture, all on such terms, and subject to the provisions, as set forth in section 4(a)(ii) of this Settlement and Release Agreement.

6.     **Nortel Release.**  Upon the Effective Date, Nortel (including the Debtors and their estates) (the foregoing collectively referred to as the "Nortel Releasors"), do hereby release, waive, and discharge (i) the claims for open accounts receivable owed by Flextronics to Nortel as of October 29, 2009 listed on Schedule H to this Settlement and Release Agreement, and (ii) any and all rights, rights of set-off, causes of action, liabilities, remedies and claims of any kind or nature whatsoever which the Nortel Releasors have, may have or could have asserted against Flextronics or its former**,** present or future officers, directors, employees or agents (the "Flextronics Released Parties"), which arise directly from or relate to transactions or events occurring or deemed to occur prior to the Petition Date in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, whether

or not hidden or concealed, whether based on tort, fraud, contract or otherwise, and/or any other obligations, claims, interests, or debts of any kind, which the Nortel Releasors, from the beginning of time, heretofore possessed or may possess against the Flextronics Released Parties, which include, without limitation, causes of action included in Chapter 5 of the Bankruptcy Code (and any similar causes of action under applicable state law) (collectively, the "Chapter 5 Claims"), all claims arising under or relating to the MCMSAs, including without limitation claims for guaranty, warranty and indemnity arising thereunder, claims arising under purchase orders issued pursuant to the MCMSAs, claims of set-off and claims for cure under the MCMSAs (collectively, the "Nortel Released Claims").  Without limiting section 2(d) of this Settlement and Release Agreement, the Nortel Released Claims shall not include any rights, causes of action, liabilities, remedies and claims or defenses of any kind or nature the Nortel Releasors have, may have or could have against Flextronics arising pursuant to a Pension and Retirement Benefits Agreement (the "PRBA") in connection with the transfer of facilities and employees from Nortel to Flextronics in 2004, including any rights, causes of action, liabilities, remedies and claims of any kind or nature or defenses arising from obligations under the PRBA for certain post-retirement benefits (PRBs), transition retirement allowances (TRAs) and retirement allowance payments (RAPs) (the "Pension Claims").  Notwithstanding the foregoing, the Parties acknowledge and agree that, unless Flextronics is shown, following notice to Flextronics provided within nine (9) months after the Effective Date, to have breached any of its material obligations set forth in section 4 of this Settlement and Release Agreement, and unless Flextronics does not cure such breach within five (5) business days following receipt of such notice, the release by the Nortel Releasors of Chapter 5 Claims shall become effective upon the earlier of (i) nine (9) months after the Effective Date and (ii) closing of Nortel's Divestitures

with respect to the CDMA/LTE, Enterprise, Optical, CVAS, Passport, GSM and Repair Operations business lines (and upon closing of each of these identified Divestitures Flextronics shall be released from Chapter 5 Claims relating to transactions in connection with such specific business lines).  The Nortel Releasors shall not assert any Chapter 5 Claims against Flextronics unless and until, after giving notice of material breach, such breach not timely cured, as set forth in the immediately preceding sentence.  In the event that a Chapter 5 Claim is asserted by one or more of the Nortel Releasors against Flextronics, the Parties agree that Flextronics shall be entitled to assert any defenses related to such Chapter 5 Claims provided for under the Bankruptcy Code or state law that Flextronics would have been able to assert if the Released Claims had not been released pursuant to this Settlement and Release Agreement.  For the avoidance of doubt and without limiting the foregoing or other claims that may not be released under this Settlement and Release Agreement, the Nortel Released Claims do not include (i) any obligations, rights, causes of action, liabilities, remedies or claims of any kind or nature arising under this Settlement and Release Agreement, or (ii) claims and defenses  to those open accounts receivable on Schedule I to this Settlement and Release Agreement, which remain subject to reconciliation by the Parties in the ordinary course of business.  For purposes of this section 6, the Parties acknowledge and agree that (i) any guaranty, warranty, indemnity or similar obligation shall be deemed to arise on the earliest date that the relevant goods are "delivered" by Flextronics to Nortel or its designee or vice versa and (ii) "delivered" shall have the meaning agreed to in section 6(a) of the Settlement Agreement.  It is further agreed that to the extent that the Nortel Releasors make any claim or commence or maintain any action or proceeding on behalf of themselves or on behalf of any other person or causes any other person to make any claim or commence or maintain any action or proceeding  against any person or corporation or

other entity in which any claim could arise against the Flextronics Released Parties, or any of them, for contribution or indemnity or any other similar relief arising from or relating to the Nortel Released Claims (each such action a "Nortel Third Party Action"), the Nortel Releasors shall indemnify and hold harmless the Flextronics Released Parties for any reasonable and actual costs, fees (including reasonable attorneys' fees) or damages directly attributable to such Nortel Third Party Actions (such indemnity obligation the "Nortel Third Party Indemnity Obligations"). The Nortel Releasors hereby agree that the Flextronics Released Parties may require the Nortel Releasors to escrow any funds actually received on account of such Nortel Third Party Actions in an account to secure such Nortel Third Party Indemnity Obligations.

      7.    **Flextronics Release.**  Upon the Effective Date, Flextronics (the foregoing referred to as the "Flextronics Releasors"), do hereby release, waive, and discharge any and all rights, rights of set-off, causes of action, liabilities, remedies and claims of any kind or nature whatsoever which the Flextronics Releasors have, may have or could have asserted against Nortel or its former**,** present or future administrators, trustees, officers, and Ernst & Young Inc. as "Monitor" in connection with the CCAA Proceedings (the "Monitor"), directors, employees or agents (the "Nortel Released Parties"), which arise directly from or relate to transactions or events occurring or deemed to occur prior to the Petition Date, in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, whether or not hidden or concealed, whether based on tort, fraud, contract or otherwise, and/or any other obligations, claims, interests, or debts of any kind, which the Flextronics Releasors, from the beginning of time, heretofore possessed or may possess against the Nortel Released Parties, which include, without limitation: any and all claims for Pre-Filing Inventory (as defined in the Settlement Agreement) provided however that Nortel shall not be entitled to ownership of

such Pre-Filing Inventory unless payment is made in accordance with the MCMSAs; claims

arising under § 503(b)(9) of the Bankruptcy Code, including the claims pursuant to § 503(b)(9)

of the Bankruptcy Code filed or otherwise asserted by FC, FTS, Flextronics America, LLC

("Flextronics America"), Flextronics International Europe B.V. ("Flextronics Int'l Europe"),

Flextronics Logistics USA, Inc. ("Flextronics Logistics USA"), Flextronics Sales & Marketing

North Asia (L) Ltd ("Flextronics Sales & Marketing North Asia"), Flextronics Technology

(Penang) Sdn. Bhd. ("Flextronics Technology (Penang)"), Flextronics International Latin

America (L) Ltd. ("Flextronics Int'l Latin America") and Flextronics International USA, Inc.

("Flextronics Int'l USA"), against NNI, Nortel Altsystems, Inc. ("Nortel Altsystems") and Nortel

Networks (CALA), Inc. ("Nortel Networks (CALA)") (as detailed in Schedule E of this

Settlement and Release Agreement) and any other claims arising under § 503(b)(9) of the

Bankruptcy Code that have been or could be filed or otherwise asserted in the US Bankruptcy

Cases (such claims, "§ 503(b)(9) Claims"); all claims included in the proofs of claim filed or

otherwise asserted by FC, FTS, Flextronics America, Flextronics EMS Canada Inc. ("Flextronics

EMS Canada"), Flextronics Int'l Europe, Flextronics Int'l Latin America, Flextronics Int'l USA,

Flextronics Logistics USA, Flextronics Sales & Marketing North Asia and Flextronics

Technology (Penang) against NNI, Nortel Networks Capital Corporation, Inc., Nortel

Altsystems, Nortel Networks International Inc. and Nortel Networks (CALA) (as detailed in

Schedule F of this Settlement and Release Agreement) and any other such proofs of claim that

have been or could be filed or otherwise asserted in the US Bankruptcy Cases (such claims, "US

Proofs of Claim"); all claims included in the proofs of claim filed or otherwise asserted by FC,

FTS, Flextronics Int'l Europe, Flextronics Electronics Technology (Suzhou) Co. Ltd.,

Flextronics Distribution, Inc., Flextronics America, Flextronics International Europe B.V.,

Flextronics Int'l Latin America, Flextronics (Canada) Inc., Flextronics International Poland sp. z.o.o., Flextronics Sales & Marketing North Asia, Flextronics Canada Design Services Inc., Flextronics EMS Canada and Flextronics Enclosure Systems (Chongzhou) Ltd. against NNL, Nortel Networks Technology Corporation, Nortel Networks International Corporation, Nortel Networks Global Corporation and Nortel Networks Corporation (as detailed in Schedule G of this Settlement and Release Agreement) and any other such proofs of claim that have been or could be filed or otherwise asserted in the CCAA Proceedings (such claims, "Canadian Proofs of Claim"); any other claims that have been or could be filed or otherwise asserted in the EMEA Proceedings (the "EMEA Proofs of Claim"); any claims that have been or could be filed or otherwise asserted in any other proceeding of a Nortel entity or otherwise (such claims together with the EMEA Proofs of Claim, the § 503(b)(9) Claims, the US Proofs of Claim and the Canadian Proofs of Claim, the "Flextronics Proofs"); reclamation claims arising under § 546 of the Bankruptcy Code or otherwise; any potential obligation owed by the Nortel Released Parties to the Flextronics Releasors related to or arising under the Montreal closing as set forth and contemplated in section 5 of the Side Letter, and all claims arising under or relating to the MCMSAs, including without limitation claims for guaranty, warranty and indemnity arising thereunder, claims arising under purchase orders issued pursuant to the MCMSAs, claims of set-off and claims for cure under the MCMSAs (all of the foregoing collectively, the "Flextronics Released Claims" and together with the Nortel Released Claims, the "Released Claims"). Without limiting section 2(d) of this Settlement and Release Agreement, the Flextronics Released Claims shall not include any rights, causes of action, liabilities, remedies and claims or defenses of any kind or nature the Flextronics Releasors have, may have or could have against NNL or the Nortel Networks Health & Welfare Trust arising in connection with the Pension

Claims or against any party with respect to Chapter 5 Claims.  For the avoidance of doubt, the

following claims, <u>inter</u> <u>alia</u>, are included in the Flextronics Released Claims: (i) the

US$180,896,868 of claims for unpaid accounts receivable as of the Petition Date asserted in the

Flextronics Proofs against the Nortel Released Parties at, <u>inter</u> <u>alia</u>, paragraphs 19-21 of the proof

of claim asserted by FC against NNI [Claim No. 4873] (the "<u>NNI Proof of Claim</u>"), (ii) any and

all claims by Flextronics against the Nortel Released Parties for unpaid accounts receivable as of

the Petition Date arising from Nortel's CDMA and LTE Access Business, (iii) any and all claims

by Flextronics against the Nortel Released Parties for unpaid accounts receivable on account of

goods or services delivered to the Nortel Released Parties or any of their customers or invoiced

to the Nortel Released Parties or any of their customers prior to the Petition Date, (iv) the

ordinary course contractual claims asserted in the Flextronics Proofs at, <u>inter</u> <u>alia</u>, paragraphs 22-

24 of the NNI Proof of Claim listed on Schedule D of this Settlement and Release Agreement,

(v) the Post-Petition Ordinary Course Contractual Claims asserted in the Flextronics Proofs at,

<u>inter</u> <u>alia</u>, paragraphs 22-24 of the NNI Proof of Claim listed on Schedule C of this Settlement

and Release Agreement, (vi) all claims related to Pre-Filing Inventory specifically including the

$98,757,797 for inventory on hand and the 3% cost of acquisition related to such inventory

asserted in the Flextronics Proofs at, <u>inter</u> <u>alia</u>, paragraphs 25-28 of the NNI Proof of Claim and

in the "Summary Tab" of the spreadsheets contained on the disk attached to the NNI Proof of

Claim as Exhibit C, and (vii) any and all other breach of contract claims asserted in the

Flextronics Proofs at, <u>inter</u> <u>alia</u>, paragraphs 29-30 of the NNI Proof of Claim, including

contingent, unliquidated and unmatured claims and claims for continuing breach.  For the

avoidance of doubt and without limiting the foregoing or other claims that may not be released

under this Settlement and Release Agreement, the Flextronics Released Claims do not include (i)

any obligations, rights, causes of action, liabilities, remedies or claims of any kind or nature

arising under this Settlement and Release Agreement, or (ii) claims and defenses related to those

open accounts receivable on Schedule I to this Settlement and Release Agreement, which remain

subject to reconciliation by the Parties in the ordinary course of business.  For purposes of this

section 7, the Parties acknowledge and agree that (i) any guaranty, warranty, indemnity or

similar obligation shall be deemed to arise on the earliest date that the relevant goods are

"delivered" by Flextronics to Nortel or its designee or vice versa and (ii) "delivered" shall have

the meaning agreed to in section 6(a) of the Settlement Agreement.  It is further agreed that to

the extent that the Flextronics Releasors make any claim or commence or maintain any action or

proceeding on behalf of themselves or on behalf of any other person or causes any other person

to make any claim or commence or maintain any action or proceeding  against any person or

corporation or other entity in which any claim could arise against the Nortel Released Parties, or

any of them, for contribution or indemnity or any other similar relief arising from or relating to

the Flextronics Released Claims (each such action a "Flextronics Third Party Action"), the

Flextronics Releasors shall indemnify and hold harmless the Nortel Released Parties for any

reasonable and actual costs, fees (including reasonable attorneys' fees) or damages directly

attributable to such Flextronics Third Party Actions (such indemnity obligation the "Flextronics

Third Party Indemnity Obligations").  The Flextronics Releasors hereby agree that the Nortel

Released Parties may require the Flextronics Releasors to escrow any funds actually received on

account of such Flextronics Third Party Actions in an  account to secure such Flextronics Third

Party Indemnity Obligations.

   8. **No Claims or Defenses Asserted.**  For the avoidance of doubt, except as

expressly permitted under this Settlement and Release Agreement, Flextronics and Nortel hereby

acknowledge and agree that they (i) shall not assert any further claim, demand payment or seek further court relief or resolution, in either the Courts or any other court, with respect to all or any portion of the Pre-Filing Inventory or any other Released Claims, (ii) promptly following the Effective Date, shall reduce the related accounts receivable and accounts payable to zero balances in their respective books and records and accounting systems and shall close all invoices relating to the Pre-Filing Inventory in their respective books and records and accounting systems, and (iii) shall not seek or be entitled to any remedy, cure or any other payment or consideration or accommodation from a Purchaser or any other party in a Divestiture in respect of any portion of the Pre-Filing Inventory or any other Released Claim.  Notwithstanding the foregoing or any other provision of this Settlement and Release Agreement, Pre-Filing Inventory shall continue to be used in the calculation of Quarterly E&O pursuant to section 5 of the Settlement Agreement.  Flextronics further hereby acknowledges and agrees that the Flextronics Proofs shall be deemed withdrawn in the applicable proceedings with prejudice, provided, however, that Flextronics shall be permitted to file one or more amended proofs of claim against NNL solely with regard to the Pension Claims that Flextronics alleges are owed by NNL.  With respect to such Pension Claims, Flextronics and NNL hereby agree that such claims will be evaluated, adjudicated and resolved in accordance with the claims procedures to be established by one or more claims procedure orders to be issued in the CCAA Proceedings.  For the avoidance of doubt, nothing in this Settlement and Release Agreement releases or constitutes a waiver of Nortel's defenses to any proofs of claim filed by Flextronics with respect to the Pension Claims.

9. **Resolution of Pension Claims.**  NNL shall not remove Flextronics from the service list maintained in the CCAA Proceedings, and in the event that any distributions to

creditors are proposed in a plan of reorganization, arrangement or compromise under the CCAA

(a "<u>CCAA Plan</u>") prior to the final resolution of the Pension Claims in accordance with the

claims resolution process, NNL shall provide to Flextronics a copy of the proposed CCAA Plan

and shall provide notice of the hearing to approve the CCAA Plan, the proposed distribution and

the manner of addressing the claims including, without limitation, the establishment of a reserve

for the unresolved claims of all creditors that have timely filed claims (which notice may be

effected by service upon the service list maintained in the CCAA Proceedings or by distribution

to creditors generally in accordance with such procedures as may be approved by the Canadian

Court). NNL shall, if requested by Flextronics, consult with Flextronics regarding the proposed

treatment of the unresolved claims, including, without limitation, the amount of the proposed

reserve in respect of the unresolved claims, if the Pension Claims are then unresolved, prior to

any vote on the CCAA Plan by affected creditors. NNL shall further use reasonable best efforts,

subject to and consistent with its duties and obligations under applicable law and in accordance

with the terms of the PRBA, to (i) preserve documents related to the Pension Claims and make

such documents available to Flextronics upon request and (ii) reasonably cooperate with

Flextronics in connection with any litigation or other disputes with third parties relating to the

Pension Claims. Nothing contained in this Settlement and Release Agreement shall affect the

rights Flextronics may have, if any, as against the Nortel Networks Health & Welfare Trust in

respect of the Pension Claims.

      10.     **<u>Approval by the US Bankruptcy Court.</u>**  This Settlement and Release

Agreement is subject in all respects to the entry of a final (as defined below) order by the US

Bankruptcy Court approving all terms and conditions contained in this Settlement and Release

Agreement. Within three (3) business days after NNI's receipt of an executed copy of this

Settlement and Release Agreement, NNI shall file a motion with the US Bankruptcy Court, which motion shall be in form and substance reasonably acceptable to Flextronics, seeking the approval of this Settlement and Release Agreement pursuant to §§ 101 and 363 of the Bankruptcy Code (the "US Approval Order") and any other applicable law, rules, orders or procedures, and shall use reasonable best efforts to pursue the same until the US Approval Order is entered and becomes Final.  If the US Bankruptcy Court does not approve all terms and conditions contained in this Settlement and Release Agreement, and the Parties are unable to obtain court approval of this Settlement and Release Agreement, then this Settlement and Release Agreement shall be null and void.

11.    **Approval by the Canadian Court.**  This Settlement and Release Agreement is subject in all respects to the entry of a final order by the Canadian Court approving all terms and conditions contained in this Settlement and Release Agreement.  After NNL's receipt of an executed copy of this Settlement and Release Agreement, NNL shall file a motion with the Canadian Court in sufficient time to ensure such motion will be heard at a joint hearing with the US Bankruptcy Court, which motion shall be in form and substance reasonably acceptable to Flextronics, seeking the approval of this Settlement and Release Agreement pursuant to applicable law in the CCAA Proceedings (the "Canadian Approval Order") and any other applicable law, rules, orders or procedures, and shall use reasonable best efforts to pursue the same until the Canadian Approval Order is entered and becomes Final.  If the Canadian Court does not approve all terms and conditions contained in this Settlement and Release Agreement, and the Parties are unable to obtain court approval of this Settlement and Release Agreement, then this Settlement and Release Agreement shall be null and void, and the Parties shall be restored to their respective positions.

12.    **Effective Date.**  This Settlement and Release Agreement shall become effective on the first day after both the US Approval Order and the Canadian Approval Order (each an "Approval Order") become Final (the "Effective Date").  For purposes of this Settlement and Release Agreement, "Final" with respect to each Approval Order means the date on which the respective Approval Order is approved and entered by the respective court and is no longer subject to appeal, writ of certiorari, reargument or rehearing, or, in the event that a timely appeal has been noticed, or a timely writ of certiorari, reargument or rehearing has been sought with regard to the respective Approval Order, then such Approval Order shall become Final upon being affirmed by the highest court to which the Approval Order was appealed and the time to take any further appeal, to petition for writ of certiorari or to move for reargument or rehearing has expired.  Notwithstanding the foregoing, the Parties shall have the right to waive the requirement that the Approval Orders become Final.

13.    **Execution of Documents.**  The Parties agree to execute any and all documents, and to perform any acts, upon request by the other, reasonably necessary or proper to effectuate or further evidence the terms and provisions of this Settlement and Release Agreement.

14.    **Consultation and Review.**  Each of the Parties hereby represents to the other that (i) it has had full and adequate opportunity to request and review any and all documents relevant to this Settlement and Release Agreement; (ii) it has negotiated this Settlement and Release Agreement at arm's length; (iii) it has read this Settlement and Release Agreement in its entirety and understands its terms and contents; (iv) it has had full and adequate opportunity to consult with and, in fact, has consulted with legal counsel on all matters related to this Settlement and Release Agreement; (v) it has provided any comments regarding this Settlement and Release

Agreement to its legal counsel; (vi) it has executed this Settlement and Release Agreement freely, voluntarily and without coercion; and (vii) it has not relied on any inducements, promises, statements, representations or warranties made by any person or entity not expressly set forth in this Settlement and Release Agreement.

15. **Binding Effect.** This Settlement and Release Agreement constitutes a legal, valid and binding obligation, enforceable against each of the Parties and any successors or assigns of the Parties, in accordance with the terms hereof, subject to the approval of the US Bankruptcy Court and the Canadian Court. Each of the Parties represents and warrants that the execution, delivery and performance of this Settlement and Release Agreement has been approved, if necessary, by all requisite corporate actions on its part and is within the scope of its authority and powers, and shall not cause any default in or breach or violation of any applicable law, rule, regulation, contract or other instrument to which it is a party or by which any of its assets are bound or affected.

16. **Objection to Settlement and Release Agreement.** In the event that an objection is filed to any motion for US Bankruptcy Court approval or Canadian Court approval of this Settlement and Release Agreement, the Parties shall in good faith support the approval of this Settlement and Release Agreement before the US Bankruptcy Court and/or the Canadian Court, and to defend any appeals of an Approval Order to the fullest extent reasonably practical.

17. **Third-Party Rights.** Nothing in this Settlement and Release Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Settlement and Release Agreement on any persons other than the Parties and their respective successors and assigns, nor is anything in this Settlement and Release Agreement intended to relieve or discharge the obligation or liability of any third persons to the Parties, nor shall any

provision give any third persons any right of subrogation or action against any party to this Settlement and Release Agreement; provided, however, that any Purchaser in a Divestiture that has been authorized by the Courts shall be deemed a third party beneficiary of section 4 of this Settlement and Release Agreement and shall be entitled to enforce and take advantage of the benefits thereof to their fullest extent as if it were a signatory hereto.

18.     **No Admission of Liability.**  It is understood by the Parties that this Settlement and Release Agreement represents a compromise of disputed claims, and that this Settlement and Release Agreement made hereunder is not to be construed as an admission of liability on any claims, except as expressly stated herein.  Neither the fact of this Settlement and Release Agreement, nor any provision contained herein, nor any action taken hereunder, shall constitute an admission with respect to any claims or facts alleged by any of the Parties hereto, except as expressly stated herein.  Without limiting the foregoing, Nortel does not admit the validity of any objection Flextronics has asserted to date in the Proceedings, or that it could assert with respect to any pending or future Divestiture, including without limitation to the treatment of the MCMSAs in connection with any such Divestiture.

19.     **Interpretation.**  Terms not defined herein shall have the meanings provided in the Settlement Agreement and related Side Letter and if not provided therein, in the Amending Agreement or the applicable MCMSA.  To the extent of any conflict, inconsistency or ambiguity between and among this Settlement and Release Agreement, the Settlement Agreement, the Side Letter, the Amending Agreement and the MCMSAs, this Settlement and Release Agreement shall control, followed by the Settlement Agreement and Side Letter, followed by the Amending Agreement, followed by the applicable MCMSA.  To the extent that the last date for any act or action permitted or required to be taken under the Settlement and Release Agreement falls on a

day that is not a Business Day, that act or action may be taken on the next Business Day following.  If any provisions of terms of this Settlement and Release Agreement are deemed unenforceable for any reason, then the parties agree that the rest of the Settlement and Release Agreement should be given full force and effect to the greatest extent permissible under applicable law, and that the court interpreting such provision is entitled to amend or substitute a provision that give effect to the original intent and meaning of the unenforceable provision to the greatest extent possible.

20.    **No Assumption, etc**.  The Parties agree that this Settlement and Release Agreement is not intended to and shall not constitute or give rise to the assumption, rejection, novation or repudiation of any of the agreements referred to in this Settlement and Release Agreement or, except as expressly provided herein, otherwise affect the Parties' rights with respect to any such agreements, whether in connection with the Proceedings or otherwise, and, without limiting the foregoing, nothing in this Settlement and Release Agreement shall cause any of the EMEA Entities, the Joint Administrators or any other Nortel entity to assume any obligations under the MCMSAs or any other agreement to which such EMEA Entity or Joint Administrator is not a signatory prior to the date hereof.

21.    **No Transfer of Claims**.  By executing this Settlement and Release Agreement, each Party represents and warrants to the other that it has not sold, assigned, transferred or otherwise conveyed any of  its respective Released Claims to any other person or corporation or other entity that is not a Party to this Settlement and Release Agreement.    Any sale, assignment, transfer or other conveyance of claims in violation of this section 21 shall be null and void and of no force and effect.

22.    **Modification**.  This Settlement and Release Agreement may not be changed, modified or altered in any manner, except in a written instrument signed by each of the Parties (with the consent of the Monitor, the Official Committee of Unsecured Creditors appointed in the US Bankruptcy Cases and  the steering committee members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with NNL) or approved by the Courts that refers specifically to this Settlement and Release Agreement.

23.    **Headings**.  The headings contained herein are set forth only as a matter of convenience and for reference and in no way define, limit or describe the scope of this Settlement and Release Agreement nor the intent of any provision thereof.

24.    **Consent to Jurisdiction**.   To the fullest extent and for the maximum time period permitted by applicable law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the US Bankruptcy Court and the Canadian Court (if applicable, in a joint hearing conducted under the cross-border protocol adopted by such courts, as it may be in effect from time to time (the "Cross-Border Protocol")), for purposes of all legal proceedings to the extent relating to the matters agreed in this Settlement and Release Agreement, (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Settlement and Release Agreement must be commenced in the US Bankruptcy Court if such claim, action or proceeding would solely affect the US Debtors, the Canadian Court if such claim, action or proceeding would solely affect the Canadian Debtors, a joint hearing of both the Canadian Court and the US Court conducted under the Cross-Border Protocol if such claim, action or proceeding would affect the Canadian Debtors and the US Debtors and the English courts if such claim, action or proceeding would solely affect the EMEA Debtors, (iii) waives and agrees not to assert any objection that it may now or hereafter have to

the laying of the venue of any such action brought in such a court or any claim that any such

action brought in such a court has been brought in an inconvenient forum, (iv) agrees that

mailing of process or other papers in connection with any such action or proceeding or any other

manner as may be permitted by law shall be valid and sufficient service thereof, and (v) agrees

that a final judgment in any such action or proceeding shall be conclusive and may be enforced

in other jurisdictions by suit on the judgment or in any other manner provided by applicable law.

25.    **Injunctive Relief.**  Each of the Parties agrees that this Settlement and Release

Agreement may be pled as a defense to any such claim or action in any court of competent

jurisdiction.  In connection with the foregoing, the Parties agree that monetary damages would

not be sufficient to remedy any breach by a party of this Settlement and Release Agreement and

that the non-breaching party would be entitled to equitable relief, including, without limitation,

temporary injunctive relief preventing (or allowing, as the case may be) the unilateral

termination of performance and specific performance in respect of any breach of the Settlement

and Release Agreement.

26.    **Governing Law**.  This Settlement and Release Agreement shall be governed

by the laws of the Province of Ontario and the federal laws of Canada applicable therein;

provided, however, that any questions, claims, disputes, remedies or Actions arising from or

related to Sections 29 – 32 and any questions, claims, disputes, remedies or actions arising from

or related to  (i) the capacity of the Joint Administrators to act as agents of the EMEA Entities,

(ii) the personal liability of the Joint Administrators, their firm, partners, employees, advisors,

representatives or agents, (iii) their qualification to act as insolvency practitioners in accordance

with Part XIII of the UK Insolvency Act, (iv) their appointment as joint administrators of the

EMEA Entities and their status as such, or (v) the statutory duties of the Joint Administrators or

the legal obligations in relation to the exercise of their powers, duties or functions as administrators of the EMEA Entities under the UK Insolvency Act or any other applicable legislation or statutory instrument, shall be governed by English law and subject to the non-exclusive jurisdiction of the English courts.

27.    **Counterparts.**  This Settlement and Release Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same complete agreement between the Parties.  A facsimile or a PDF signature shall be treated in all manners and respects as a binding and original signature.

28.    **Notices.**  All notices and other communications under this Settlement and Release Agreement shall be in writing and shall be deemed to have been given when provided by e-mail in addition to one of the following: (a) when delivered personally by hand, (b) when sent by facsimile (with written confirmation of receipt) or (c) one (1) business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following e-mails, addresses and facsimile numbers:

> If to Nortel (if prior to November 20, 2009):
>
> Nortel Networks Limited
> 195 The West Mall
> Mailstop: T0503006
> Toronto, Ontario, Canada M9C 5K1
> Attention: Anna Ventresca
> Fax: (905) 863-2057
> E-Mail: annav@nortel.com:
>
> If to Nortel (if on or subsequent to November 20, 2009):
>
> Nortel Networks Limited
> 5945 Airport Road, Suite 360
> Mississauga, Ontario, Canada L4V 1R9
> Attention: Anna Ventresca

Fax:  (905) 863-2057
E-Mail:  annav@nortel.com

with copies (which shall not constitute notice) to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
Attn: James L. Bromley, Esq.
        Lisa M. Schweitzer, Esq.
Fax:  (212) 225-3999
E-Mail: jbromley@cgsh.com
          lschweitzer@cgsh.com

-and-

Ogilvy Renault LLP
Royal Bank Plaza
South Tower
200 Bay Street, Suite 3800
P.O. Box 84
Toronto, Ontario, Canada M5J 2Z4
Attn: Derrick C. Tay, Esq.
Fax:  (416) 216-3930
E-Mail: dtay@ogilvyrenault.com

If to the Monitor:

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street, P. O. Box 251
Toronto, Ontario, Canada N M5K 1J7
Attn: Murray A. McDonald
Fax:  (416) 943-3300
Murray.A.McDonald@ca.ey.com

with copies (which shall not constitute notice) to:

Goodmans L.L.P.
Attn: Joseph Pasquariello
Fax: (416) 979-1239
jpasquariello@goodmans.ca

If prior to or on December 22, 2009 at:

250 Yonge Street
Suite 2400
Toronto, Ontario, Canada M5B 2M6

If after December 22, 2009 at:

Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario, Canada M5H 2S7

If to the Joint Administrators:

Ernst & Young LLP
One More  Place
London SE1 2AF

United Kingdom
Attn: Alan Bloom
Fax: +44 (0) 20 7951 1345
abloom@uk.ey.com

with copies (which shall not constitute notice) to:

Herbert Smith LLP
Exchange House
Primrose Street
London EC2A 2HS
United Kingdom
Attn:   Alan Montgomery, Esq.
          Ben Ward, Esq.
Fax: +44 (0) 20 7098 4878
          alan.montgomery@herbertsmith.com
          ben.ward@herbertsmith.com

If to Flextronics:

Flextronics Corporation
48 Gables Court
Beaconsfield, Quebec, Canada H9W 5H4
Attn: Simon Robins
Fax:  (514) 426-4262
E-Mail: simon.robins@ca.flextronics.com

-and-

Flextronics International
305 Interlocken Pkwy
Broomfield, Colorado 80021
Attn.: John Ritsick, Esq.
E-Mail: john.ritsick@flextronics.com

with copies (which shall not constitute notice) to

Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Attn:  Steven J. Reisman, Esq.
Fax:  (212) 697-1559
E-Mail: sreisman@curtis.com

-and-

ThorntonGroutFinnigan LLP
Suite 3200, Canadian Pacific Tower
100 Wellington St. West, Toronto-Dominion Centre
Toronto, Ontario, Canada M5K 1K7
Attention: Leanne M. Williams, Esq.
Fax: 416-304-1313
E-Mail: lwilliams@tgf.ca

29.   **Authorized Signatory.**  Each person who executes this Settlement and Release Agreement on behalf of (i) NNL and each of its Canadian affiliates that have filed an application under the CCAA and (ii) NNI and its US debtor affiliates warrants and represents that he or she has been duly authorized and empowered to execute and deliver this Settlement and Release Agreement on behalf of each Nortel entity for which it signs.    The persons who execute this Settlement and Release Agreement on behalf of (i) each of the EMEA Entities and (ii) the Joint Administrators warrants and represents that he or she has been duly authorized and empowered to execute and deliver this Settlement and Release Agreement on behalf of each EMEA Entity or Joint Administrator for which it signs.  The person who executes this Settlement and Release Agreement on behalf of Flextronics warrants and represents that he or she has been duly authorized and empowered to execute and deliver this Settlement and Release Agreement on behalf of Flextronics and each of its Affiliates.  Each of Flextronics' Affiliates shall be entitled to enforce and take advantage of the benefits of this Settlement and Release Agreement to its fullest extent as if they were signatories hereto.

30.   **NNSA Accession.**  Nortel Networks S.A. ("<u>NNSA</u>") may, within 30 days of the Effective Date, by notice in writing to the Parties hereto, accede to this Settlement and Release Agreement as an EMEA Entity on the same terms and conditions as an EMEA Entity (such accession conditioned, if applicable, on French Court approval), and the Parties shall

forthwith on receipt of such notice enter into an appropriate form of accession agreement with NNSA.  The Parties agree that the provisions of this section 29 are for the benefit of NNSA and may be enforced by NNSA.

31.    Without limiting anything in this Settlement and Release Agreement or any other agreement between the Parties, each of the Parties agrees that it shall not do indirectly, through an affiliate, agent or otherwise, anything that it has agreed not to do under this Settlement and Release Agreement.

32.    The Parties acknowledge that the Joint Administrators  are entering into this Settlement and Release Agreement as agents for the EMEA Entities and that none of the Joint Administrators or their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of the EMEA Entities to observe, perform or comply with any of their obligations under this Settlement and Release Agreement or under or in relation to any associated arrangements or negotiations.

33.    The Parties acknowledge that the Joint Administrators have agreed to the terms of this Settlement and Release Agreement (i) as agents of the EMEA Entities of which they are administrators; and (ii) in their own capacity solely for taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the UK Insolvency Act 1986 or any provisions of  this Settlement and Release Agreement in their favor and enforcing obligations under this Settlement and Release Agreement.

34.    For the purposes of the acknowledgements or agreements to, or exclusions of, liability in favor of the Joint Administrators in this Settlement and Release Agreement, references to the Joint Administrators where the context so permits shall mean and include any

**Execution Version**

additional or successor administrator of the EMEA Entities and their respective firms or future firms, employees, agents, members, partners and personal representatives.

[*Remainder of page intentionally left blank.  Signatures follow.*]

IN WITNESS WHEREOF, each Party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Settlement and Release Agreement.

**NORTEL NETWORKS CORPORATION**

By: _____

Name: _Anna Ventresca_

Title: _General Counsel-Corporate and Corporate Secretary_

Dated: November 20 2009

By: _____

Name: _John Doolittle_

Title: _SVP, Finance & Corporate Services_

Dated: November 20, 2009


**NORTEL NETWORKS LIMITED**

By: _____

Name: _Anna Ventresca_

Title: _General Counsel-Corporate and Corporate Secretary_

Dated: November 20 2009

By: _____

Name: _John Doolittle_

Title: _SVP, Finance & Corporate Services_

Dated: November 20, 2009


**NORTEL NETWORKS INC.**

By: _____

Name: _Anna Ventresca_

Title: _Chief Legal Officer_

Dated: November 20 2009


**NORTEL NETWORKS CAPITAL CORPORATION**

By: _____

Name: _John Doolittle_

Title: _President_

Dated: November 20 2009


**NORTEL ALTSYSTEMS INC.**

By: _____

Name: _John Doolittle_

Title: _President_

Dated: November 20, 2009

**SONOMA SYSTEMS**

By: _____

Name: _____ John Doolittle

Title: __ Pres. & Treasurer

Dated:   November 20, 2009

**OTERA CORPORATION**

By: _____

Name: _____ John Doolittle

Title: ___ President

Dated:   November 20, 2009

**CORETEK, INC**

By: _____

Name: _____ John Doolittle

Title: ___ President

Dated:   November 20, 2009

**NORTEL NETWORKS
APPLICATIONS MANAGEMENT
SOLUTIONS INC.**

By: _____

Name: _____ John Doolittle

Title: ___ President

Dated:   November 20, 2009

**NORTEL NETWORKS OPTICAL
COMPONENTS INC.**

By: _____

Name: _____ John Doolittle .

Title: ___ President

Dated:   November 20, 2009

**NORTEL NETWORKS HPOCS INC.**

By: _____

Name: _____ John Doolittle

Title: ___ President

Dated:   November 20, 2009

**ARCHITEL SYSTEMS (U.S.)
CORPORATION**

By: _____

Name: _____ John Doolittle _____

Title: _____ President _____

Dated:    November 20, 2009


**NORTEL NETWORKS
INTERNATIONAL INC.**

By: _____

Name: _____ John Doolittle _____

Title: _____ President _____

Dated:    November 20, 2009


**NORTHERN TELECOM
INTERNATIONAL INC.**

By: _____

Name: _____ John Doolittle _____

Title: _____ President _____

Dated:    November 20, 2009


**NORTEL NETWORKS CABLE
SOLUTIONS INC.**

By: _____

Name: _____ John Doolittle _____

Title: _____ V-P _____

Dated:    November 20, 2009


**NORTEL NETWORKS (CALA) INC.**

By: _____

Name: _____ John Doolittle _____

Title: _____ Treasurer _____

Dated:    November 20, 2009

By: _____

Name: _____ Peter Look _____

Title: _____ President _____

Dated:    November 20, 2009

**NORTEL ALTSYSTEMS**
**INTERNATIONAL INC.**

By: _____

Name: _John Doolittle_

Title: _President_

Dated:    November _20_ 2009

**XROS, INC.**

By: _____

Name: _John Doolittle_

Title: _President_

Dated:    November _20_ 2009

Signed by CHRISTOPHER J.W.HILL as
joint administrator on behalf of the Joint
Administrators and the EMEA Entities
(except Nortel Networks (Ireland) Limited)
without personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this Agreement expressed to be
conferred on or given to the Joint
Administrators

By _____

Name:   CHRISTOPHER HILL

Title:   JOINT ADMINISTRATOR

Signed by David Hughes as joint
administrator on behalf of the Joint
Administrators and Nortel Networks
(Ireland) Limited without personal liability
and solely for the purpose of obtaining the
benefit of the provisions of this Agreement
expressed to be conferred on or given to the
Joint Administrators

By _____

Name:  DAVID  HUGHES

Title:  JOINT  ADMINISTRATOR

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS UK LIMITED (IN**
**ADMINISTRATION) by**
**CHRISTOPHER J.W. HILL** as Joint
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

)
)
)
)

**CHRISTOPHER J.W. HILL**

Witness:  _____

Name:  JAN CORDELL
Address:  1 HORE LONDON PLACE
          LONDON SE1 2AF

**SIGNED** for and on behalf of **NORTEL**  )
**NETWORKS (IRELAND) LIMITED**  )  **DAVID HUGHES**
**(IN ADMINISTRATION)**  )
by **DAVID HUGHES** as Joint  )
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

Witness: _Eimear Ní Ghríofa_

Name: _EIMEAR NI GHRIOFA_
Address: _C/O ERNST & YOUNG, HARCOURT CENTRE, HARCOURT STREET, DUBLIN 2 ._

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS BV (IN**
**ADMINISTRATION)**
by **CHRISTOPHER J.W. HILL** as Joint
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

)
)
)
)

**CHRISTOPHER J.W. HILL**

Witness: _____

Name: _JAN CORDELL_
Address: _1 MORE LONDON PLACE_
_LONDON SE1 2AF_

)
)    **CHRISTOPHER J.W. HILL**
)
)

**SIGNED** for and on behalf of **NORTEL NETWORKS HISPANIA, S.A.**
by **CHRISTOPHER J.W. HILL** as Joint Administrator (acting as agent and without personal liability whatsoever) in the presence of:

Witness: _____ (handwritten signature)

Name: _____ JAN CORDELL
Address: _____ 1 MORE LONDON PLACE
LONDON SE1 2AF

**FLEXTRONICS TELECOM SYSTEMS LTD**

By: _____

Name:  Manny Marimuthu

Title: Director


Dated:    November __, 2009


**FLEXTRONICS CORPORATION**

By: _____

Name: Michael Clarke

Title: President, Infrastructure


Dated:    November __, 2009


**FLEXTRONICS AMERICA, LLC**

By: _____

Name: Michael Clarke

Title: President, Infrastructure


Dated:    November __, 2009


**FLEXTRONICS EMS CANADA INC.**


By: _____

Name: Kieran Gunning

Title:  Vice President


Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL EUROPE B.V.**

By: _____

Name:_____

Title:_____


Dated:          November __, 2009

**FLEXTRONICS TELECOM SYSTEMS LTD**

By: _____

Name:  Manny Marimuthu

Title: Director

Dated:    November __, 2009

**FLEXTRONICS CORPORATION**

By: _____

Name:  Michael Clarke

Title: President, Infrastructure

Dated:    November _10_, 2009

**FLEXTRONICS AMERICA, LLC**

By: _____

Name:  Michael Clarke

Title: President, Infrastructure

Dated:    November _10_, 2009

**FLEXTRONICS EMS CANADA INC.**

By: _____

Name:  Kieran Gunning

Title:  Vice President

Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL EUROPE B.V.**

By: _____

Name: _____

Title: _____

Dated:            November __, 2009

**FLEXTRONICS TELECOM SYSTEMS LTD**

By: _____

Name:  Manny Marimuthu

Title: Director

Dated:    November __, 2009


**FLEXTRONICS CORPORATION**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November __, 2009


**FLEXTRONICS AMERICA, LLC**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November __, 2009


**FLEXTRONICS EMS CANADA INC.**

By: _____

Name: Kieran Gunning

Title:  Vice President

Dated:    November __, 2009


**FLEXTRONICS INTERNATIONAL EUROPE B.V.**

By: _____

Name:_____

Title:_____

Dated:            November __, 2009

**FLEXTRONICS TELECOM SYSTEMS LTD**

By: _____

Name:  Manny Marimuthu

Title: Director

Dated:    November ___, 2009

**FLEXTRONICS CORPORATION**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November ___, 2009

**FLEXTRONICS AMERICA, LLC**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November ___, 2009

**FLEXTRONICS EMS CANADA INC.**

By: _____

Name: Kieran Gunning

Title:  Vice President

Dated:    November ___, 2009

**FLEXTRONICS INTERNATIONAL EUROPE B.V.**

By: _____

Name: _B. P. H. M  VAN LOON_

Title: _Director_

Dated: ~~January~~ November 7, 2009

**FLEXTRONICS INTERNATIONAL
LATIN AMERICA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL USA,
INC.**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November __, 2009

**FLEXTRONICS LOGISTICS USA, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:    November __, 2009

**FLEXTRONICS SALES & MARKETING
NORTH ASIA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November __, 2009

**FLEXTRONICS FUNDING LLC**

By: _____

Name: Paul Read

Title: President

Dated:    November __, 2009

**FLEXTRONICS ELECTRONICS
TECHNOLOGY (SUZHOU) CO. LTD.**

By: _____

Name: Manny Marimuthu

Title: Legal Representative

Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL LATIN AMERICA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November ___, 2009

**FLEXTRONICS INTERNATIONAL USA, INC.**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November 10, 2009

**FLEXTRONICS LOGISTICS USA, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:    November ___, 2009

**FLEXTRONICS SALES & MARKETING NORTH ASIA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November ___, 2009

**FLEXTRONICS FUNDING LLC**

By: _____

Name: Paul Read

Title: President

Dated:    November ___, 2009

**FLEXTRONICS ELECTRONICS TECHNOLOGY (SUZHOU) CO. LTD.**

By: _____

Name: Manny Marimuthu

Title: Legal Representative

Dated:    November ___, 2009

**FLEXTRONICS INTERNATIONAL LATIN AMERICA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director


Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL USA, INC.**

By: _____

Name: Michael Clarke

Title: President, Infrastructure


Dated:    November __, 2009

**FLEXTRONICS LOGISTICS USA, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President


Dated:    November __, 2009

**FLEXTRONICS SALES & MARKETING NORTH ASIA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director


Dated:    November __, 2009

**FLEXTRONICS FUNDING LLC**

By: _____

Name: Paul Read

Title: President


Dated:    November __, 2009

**FLEXTRONICS ELECTRONICS TECHNOLOGY (SUZHOU) CO. LTD.**

By: _____

Name: Manny Marimuthu

Title: Legal Representative


Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL LATIN AMERICA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November __, 2009

**FLEXTRONICS INTERNATIONAL USA, INC.**

By: _____

Name: Michael Clarke

Title: President, Infrastructure

Dated:    November __, 2009

**FLEXTRONICS LOGISTICS USA, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:    November __, 2009

**FLEXTRONICS SALES & MARKETING NORTH ASIA (L) LTD.**

By: _____

Name: Manny Marimuthu

Title:  Director

Dated:    November __, 2009

**FLEXTRONICS FUNDING LLC**

By: _____

Name: Paul Read

Title: President

Dated:    November __, 2009

**FLEXTRONICS ELECTRONICS TECHNOLOGY (SUZHOU) CO. LTD.**

By: _____

Name: Manny Marimuthu

Title: Legal Representative

Dated:    November __, 2009

**FLEXTRONICS TECHNOLOGY**
**(PENANG) SDN. BHD.**

By: _____

Name: Manny Marimuthu

Title:  Director


Dated:   November ___, 2009

**FLEXTRONICS DISTRIBUTION, INC.**

By: _Donald H Standley_

Name: Donald H. Standley

Title: Vice President

Dated:    November __, 2009


**FLEXTRONICS (CANADA) INC.**

By: _____

Name: Kieren Gunning

Title:  Vice President

Dated:    November __, 2009


**FLEXTRONICS INTERNATIONAL POLAND AP. Z.O.O.**

By: _____

Name:_____

Title:_____

Dated:    November __, 2009


**FLEXTRONICS CANADA DESIGN SERVICES INC.**

By: _____

Name: Brent Serbin

Title:  Vice President

Dated:    November __, 2009

**FLEXTRONICS ENCLOSURE SYSTEMS (CHANGZHOU) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director

Dated:    November __, 2009

**FLEXTRONICS DISTRIBUTION, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:   November ___, 2009

**FLEXTRONICS (CANADA) INC.**

By: _____

Name: Kieren Gunning

Title: Vice President

Dated:   November ___, 2009

**FLEXTRONICS INTERNATIONAL POLAND AP. Z.O.O.**

By: _____

Name:_____

Title:_____

Dated:   November ___, 2009

**FLEXTRONICS CANADA DESIGN SERVICES INC.**

By: _____

Name: Brent Serbin

Title:  Vice President

Dated:   November _11_, 2009

**FLEXTRONICS ENCLOSURE SYSTEMS (CHANGZHOU) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director

Dated:   November ___, 2009

**FLEXTRONICS DISTRIBUTION, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:   November __, 2009


**FLEXTRONICS (CANADA) INC.**

By: _Kieren J. Gunning_

Name: Kieren Gunning

Title:  Vice President


Dated:   November __, 2009


**FLEXTRONICS INTERNATIONAL POLAND AP. Z.O.O.**

By: _____

Name: _____

Title: _____


Dated:   November __, 2009


**FLEXTRONICS CANADA DESIGN SERVICES INC.**

By: _____

Name: Brent Serbin

Title:  Vice President


Dated:   November __, 2009

**FLEXTRONICS ENCLOSURE SYSTEMS (CHANGZHOU) LTD.**


By: _____

Name: Manny Marimuthu

Title: Director


Dated:   November __, 2009

**FLEXTRONICS DISTRIBUTION, INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated:    November __, 2009


**FLEXTRONICS (CANADA) INC.**

By: _____

Name: Kieren Gunning

Title:  Vice President

Dated:    November __, 2009


**FLEXTRONICS INTERNATIONAL POLAND AP. Z.O.O.**

By: _____

Name:_____

Title:_____

Dated:    November __, 2009


**FLEXTRONICS CANADA DESIGN SERVICES INC.**

By: _____

Name: Brent Serbin

Title:  Vice President

Dated:    November __, 2009


**FLEXTRONICS ENCLOSURE SYSTEMS (CHANGZHOU) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director

Dated:    November __, 2009

**FLEXTRONICS DISTRIBUTION INC.**

By: _____

Name: Donald H. Standley

Title: Vice President

Dated: November __, 2009

**FLEXTRONICS (CANADA) INC.**

By: _____

Name: Kieren Gunning

Title: Vice President

Dated: November __, 2009

**FLEXTRONICS INTERNATIONAL POLAND SP. Z.O.O.**

By: _____ ~~MATIC~~

Name: Justyna Wrzesien-Fic

Title: Site Controller

Dated: November 12th, 2009

**FLEXTRONICS CANADA DESIGN SERVICES INC.**

By: _____

Name: Brent Serbin

Title: Vice President

Dated: November __, 2009

**FLEXTRONICS ENCLOSURE SYSTEMS (CHANGZHOU) LTD.**

By: _____

Name: Manny Marimuthu

Title: Director

Dated: November __, 2009

_Paul Allan_

Name: Paul Allan

Title: General Manager

Dated: November 2009

**Execution Version**

**Schedule A - The EMEA Entities**

1.      The EMEA Entities

Nortel Networks B.V (in administration)
Nortel Networks (Ireland) Limited (in administration)
Nortel Networks UK Limited (in administration)
Nortel Networks Hispania, S.A. (in administration)

2.      The Joint Administrators of Nortel Networks B.V. (in administration), Nortel Networks UK Limited (in administration) and Nortel Networks Hispania, S.A. (in administration)

Alan Robert Bloom
Stephen John Harris
Alan Michael Hudson
Christopher John Wilkinson Hill
c/o Ernst & Young LLP
1 Moore Place
London SE1 2AF

3.      The Joint Administrators of Nortel Netwoks (Ireland) Limited (in administration)

David Hughes
c/o Ernst & Young Chartered Accountants
Harcourt Centre, Harcourt Street
Dublin 2, Ireland

Alan Robert Bloom
c/o Ernst & Young LLP
1 Moore Place
London SE1 2AF

## Schedule B – The Payment Obligations of NNI

1. NNI shall pay to an account to be identified by Flextronics ███████████ (such payment together with the Adjustment Amount (as defined below), the "Payment Obligation") in two equal installments.  The first installment of ███████████ shall be paid 10 days after the Effective Date (the "First Installment").  The second installment of ███████████ shall be paid on or before May 31, 2010 (the "Second Installment").

2. The Parties agree to work in good faith to determine within 10 days of the execution of this Settlement and Release Agreement which, if any, of the open accounts receivable listed on Schedule J to this Settlement and Release Agreement are not valid obligations owed by Flextronics to Nortel.

3. With respect to open accounts receivable listed on Schedule J to this Settlement and Release Agreement where the only dispute between Flextronics and Nortel is Nortel's failure to provide an invoice and/or a proof of delivery ("POD") for such open accounts receivable, (i) Flextronics shall review its books and records to determine whether it has invoices and/or proofs of receipt related to such open accounts receivable and (ii) Nortel shall provide invoices and/or PODs for such open accounts receivable to Flextronics on or prior to December 15, 2009.  For any such open accounts receivable for which Flextronics is unable to locate an invoice (to the extent missing) and a proof of receipt (to the extent missing) and Nortel does not provide a (i) an invoice (to the extent missing) and (ii) a POD (to the extent missing) ((i) and (ii) together the "Missing Invoice/POD") by that time, Nortel shall pay to an account identified by Flextronics the amount of such open accounts receivable (the "Missing Invoice/POD Amount") on or prior to December 24, 2009.  In the event that Nortel subsequently provides, but not later than February 26, 2010, Flextronics with the Missing Invoice/POD for any open accounts receivable comprising the Missing Invoice/POD Amount, Flextronics shall pay to an account to be identified by Nortel the amount of such Missing Invoice/POD within ten (10) days of receipt of such Missing Invoice/POD.

4. With respect to all other open accounts receivable listed on Schedule J to this Settlement and Release Agreement, on or prior to December 15, 2009, Flextronics shall deliver to Nortel written notice itemizing the portions of the invoices relating to such accounts receivable that Flextronics agrees are valid obligations owing to Nortel.  For any portion of such invoices that remain in dispute as of December 15, 2009, the Parties agree to continue to work in good faith to reconcile and resolve such disputes.  NNI shall pay to Flextronics (i) the amount, if any, in respect of such remaining accounts receivable that the Parties subsequently agree do not constitute valid obligations owed by Flextronics to Nortel, or (ii) if the Parties are unable to agree on such amount on or prior to February 1, 2010, an amount in respect of such remaining accounts receivable determined by the Courts in a joint hearing upon notice to not constitute valid obligations owed by Flextronics to Nortel (the "Invalid Invoice Amount").  Nortel shall pay to an account to be identified by Flextronics the Invalid Invoice Amount on or prior to ten (10)

**Execution Version**

days from the date of written confirmation of an agreement between Flextronics and Nortel pursuant to (i) above or entry of the final determination by the Courts pursuant to (ii) above.

5.  The Parties further agree that the Missing POD Amount plus the Invalid Invoice Amount (together the "Adjusted Amount") shall not exceed ▮▮▮▮▮▮▮▮▮.

## Schedule C – Post-Petition Ordinary Course Contractual Claims

| NT PO # | NT Legal Entity on PO | LOB | Inco-terms | Flex Site (MEP Code) | Flex Invoice # | Flex Invoice Date | Flex Legal Entity | Flex POD Number (Bill of Lading / Airway#) | Delivery Date per Flex POD | Amount Invoiced Local Currency | Invoiced Currency | FX Rate | USD$ | Claims Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Nortel Networks Inc. | OPTICAL/PP/ CDMA | | PCBA Guadalajara North | 20002020-A | 24-Aug-09 | Flextronics International Latin America (L) Ltd | | | ▬ | USD | 1 0000 | ▬ | ROIC Q4'09 (Jan'09-Mar'09) BT post-filing |
| | Nortel Networks Inc. | OPTICAL/PP/ CDMA | | PCBA Guadalajara North | 20002020-D | 24-Aug-09 | Flextronics International Latin America (L) Ltd | | | ▬ | USD | 1 0000 | ▬ | ROIC Q1'10 (Apr'09-Jun'09) BT post-filing |
| 4320081568 | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002732 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | ROIC cost structure model Jan 14th, 2009 to Mar 31st |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | Feb 2009 ROIC |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | March 2009 ROIC |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | April 2009 ROIC |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | Jan 2009 ROIC (post-filing) |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | May 2009 ROIC |
| | Nortel Networks Inc. | OPTICAL/PP/ CDMA | | PCBA Guadalajara North | 20002020-B | 24-Aug-09 | Flextronics International Latin America (L) Ltd | | | ▬ | USD | 1 0000 | ▬ | ROIC Q4'09 (Jan'09-Mar'09) prefiling |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 103 / 101 | 21-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | Jun 2009 ROIC |
| | Nortel Networks Inc. | Enterprise - Voice | | PCBA Calgary, Canada | 104 | 24-Aug-09 | Flextronics International Europe BV | | | ▬ | USD | 1 0000 | ▬ | July 2009 ROIC |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002951 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Consumables |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002560 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering Change Orders (ECO) |
| 20081218-184713 | Nortel Networks Inc. | Carrier - CDMA | | PCBA Penang, Malaysia Other | 2011289 | 30-Jan-09 | Flextronics Technology (Penang) Sdn. Bhd. | | | ▬ | USD | 1 0000 | ▬ | Engineering Support to Customer (Jan'09) |
| 4320075906 | Nortel Networks Limited | Carrier - CDMA | | PCBA Guadalajara North | 10000581 | 18-May-09 | Flextronics International Latin America (L) Ltd. | | | ▬ | USD | 1 0000 | ▬ | NPI for CMOE-2, CDMA |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002725 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering Change Orders (ECO) |
| 4320075683 | Nortel Networks Limited | Carrier - CDMA | | PCBA Guadalajara North | 41620001400 | 15-May-09 | Flextronics International Latin America (L) Ltd | | | ▬ | USD | 1 0000 | ▬ | Consumables Craids (Jan14-Feb28) |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410003057 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering General Support to Customer |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410000298 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Freight & Duty - Inbound |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002724 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Rework / Upgrades |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410000296 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering Change Orders (ECO) |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002434 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering General Support to Customer |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410002433 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering Change Orders (ECO) |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | | PCBA Creedmoor, North Carolina | J2410000297 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Freight & Duty - Inbound |
| | Nortel Networks Inc. | Carrier CVAS (Wireline) | EXP INV | PCBA Creedmoor, North Carolina | J2410002561 | 26-Aug-09 | Flextronics America LLC | | | ▬ | USD | 1 0000 | ▬ | Engineering Change Orders (ECO) |

**Execution Version**

## Schedule D – Pre-Petition Ordinary Course Contractual Claims

| Amount Invoiced Local Currency | Invoiced Currency | FX Rate | USD$ | Claims Description |
|---|---|---|---|---|
| ■■■■ | USD | 1.0000 | ■■■■ | ROIC Q2'08 Sept08 (BT) |
| ■■■■ | USD | 1.0000 | ■■■■ | Legacy E&O after BOP |
| ■■■■ | USD | 1 0000 | ■■■■ | ROIC Q3'08 (oct-nov-dec) |
| ■■■■ | USD | 1 0000 | ■■■■ | ROIC model cost structure model. Nov 2nd, 2008 to Dec 31st, 2008 |
| ■■■■ | USD | 1 0000 | ■■■■ | TRA - Retirement Benefit (Oct - Dec 2008) |
| ■■■■ | CDN | 1.2157 | ■■■■ | Q2-09 NN Portion of Pension Support MTL  (Apr - Jun'09) |
| ■■■■ | CND | 1.2157 | ■■■■ | Q1-09 NN Portion of Pension Support MTL (15th Jan - 31st Mar) |
| ■■■■ | CDN | 1 2157 | ■■■■ | Q2-09 NN Portion of Pension Support CGY (Apr - Jun'09) |
| ■■■■ | USD | 1.0000 | ■■■■ | Jan 2009 ROIC (pre-filing) |
| ■■■■ | USD | 1.0000 | ■■■■ | Outbound freight (Jan 1 - Jan 14th) |
| ■■■■ | USD | 1 0000 | ■■■■ | Mind Ready claim (over a year old) |
| ■■■■ | USD | 1.0000 | ■■■■ | ROIC model cost structure model  Jan 1st to Jan 13th, 2009 |
| ■■■■ | CND | 1.2157 | ■■■■ | Q1-09 NN Portion of Pension Support MTL (1st-14th Jan) |
| ■■■■ | USD | 1.0000 | ■■■■ | TRA - Retirement Benefit  (Oct - Dec 2008) |
| ■■■■ | USD | 1 0000 | ■■■■ | Stock Rotation # 142 Rework (December'08) |
| ■■■■ | USD | 1 0000 | ■■■■ | Monkstown Packaging Claim (Oct - Dec) |
| ■■■■ | USD | 1.0000 | ■■■■ | Expedited Air Freight (Dec'08) |
| ■■■■ | USD | 1.0000 | ■■■■ | Q1-09 NN Portion of Pension Support CGY (15th Jan - 31st Mar) |
| ■■■■ | USD | 1 0000 | ■■■■ | RTP Packaging Claim (Oct - Dec) |
| ■■■■ | USD | 1 0000 | ■■■■ | Calgary NPI (Nov'08) |
| ■■■■ | USD | 1.0000 | ■■■■ | Calgary NPI (Dec'08) |
| ■■■■ | USD | 1.0000 | ■■■■ | Calgary NPI (Aug'08) |
| ■■■■ | USD | 1.0000 | ■■■■ | Calgary NPI (Oct'08) |
| ■■■■ | USD | 1 0000 | ■■■■ | Calgary NPI (Sep'08) |
| ■■■■ | USD | 1 0000 | ■■■■ | Stock Rotation # 141 Rework (November'08) |
| ■■■■ | USD | 1 0000 | ■■■■ | Flextronics Q3 under consumption |
| ■■■■ | USD | 1.0000 | ■■■■ | NPI (Jan 1st - 14th) |
| ■■■■ | CND | 1 2157 | ■■■■ | Q1-09 NN Portion of Pension Support CGY (1st-14th Jan) |
| ■■■■ | USD | 1.0000 | ■■■■ | Flex's CSA invoices (2007-2008) |
| ■■■■ | USD | 1.0000 | ■■■■ | Engineering Related (nov'08) |
| ■■■■ | USD | 1.0000 | ■■■■ | Tooling, Fabrication Tooling (nov-08) |

**Schedule E – § 503(b)(9) Claims[3]**

| Claim Register ID No. | U.S. Debtor | Creditor Name | Amount Claimed (USD) |
|---|---|---|---|
| 4858 | Nortel Altsystems Inc. | Flextronics Corporation | 24,795,601.00 |
| 4859 | Nortel Networks Inc. | Flextronics Corporation | 24,795,601.00 |
| 4862 | Nortel Networks Inc. | Flextronics Sales & Marketing North Asia (L) Ltd. | 331,437.00 |
| 4863 | Nortel Networks Inc. | Flextronics Technology (Penang) Sdn. Bhd. | 46,351.00 |
| 4864 | Nortel Networks Inc. | Flextronics International Latin America (L) Ltd. | 637,596.00 |
| 4865 | Nortel Networks (CALA), Inc. | Flextronics International Europe B.V. | 472.00 |
| 4866 | Nortel Networks Inc. | Flextronics International USA Inc. | 9,427.00 |
| 4867 | Nortel Networks (CALA), Inc. | Flextronics America LLC | 2,076.00 |
| 4868 | Nortel Networks Inc. | Flextronics International Europe B.V. | 10,663,45.00 |
| 4869 | Nortel Networks Inc. | Flextronics America LLC | 11,918,347.00 |
| 4870 | Nortel Altsystems Inc. | Flextronics Telecom Systems Ltd. | 24,795,601.00 |
| 4871 | Nortel Networks Inc. | Flextronics Telecom Systems Ltd. | 24,795,601.00 |
| 4875 | Nortel Networks Inc. | Flextronics Logistics USA Inc. | 1,195,872.00 |

---

[3] This Schedule E is provided for illustrative purposes only. To the extent that this Schedule E is inconsistent with the releases contained in section 7 of this Settlement and Release Agreement, the releases contained in section 7 of this Settlement and Release Agreement shall govern.

## Schedule F – US Proofs of Claim[4]

| Claim Register ID No. | U.S. Debtor | Creditor Name | Amount Claimed (USD) |
|---|---|---|---|
| | Nortel Altsystems Inc. | Flextronics Telecom Systems Ltd. | 608,200,466.00 |
| 4857 | Nortel Networks International Inc. | Flextronics Telecom Systems Ltd. | 608,200,466.00 |
| 4860 | Nortel Networks Inc. | Flextronics Telecom Systems Ltd. | 608,200,466.00 |
| 4861 | Nortel Networks Capital Corporation | Flextronics Telecom Systems Ltd. | 608,200,466.00 |
| 4872 | Nortel Networks Capital Corporation | Flextronics Corporation | 608,200,466.00 |
| 4873 | Nortel Networks Inc. | Flextronics Corporation | 608,200,466.00 |
| 4874 | Nortel Altsystems Inc. | Flextronics Corporation | 608,200,466.00 |
| 4876 | Nortel Networks Inc. | Flextronics Sales & Marketing North Asia (L) Ltd. | 303,738,362.00 |
| 4877 | Nortel Networks Inc. | Flextronics Logistics USA, Inc. | 305,640,281.00 |
| 4878 | Nortel Networks Inc. | Flextronics Technology (Penang) Sdn. Bhd. | 303,583,529.00 |
| 4879 | Nortel Networks (CALA), Inc. | Flextronics International Europe B.V. | 472.00 |
| 4880 | Nortel Networks Inc. | Flextronics International USA, Inc. | 302,779,326.00 |
| 4881 | Nortel Networks Inc. | Flextronics International Latin America (L) Ltd. | 312,698,697.00 |
| 4882 | Nortel Networks Inc. | Flextronics International Europe B.V. | 334,302,199.00 |
| 4883 | Nortel Networks Inc. | Flextronics America, LLC | 349,425,851.00 |
| 4884 | Nortel Networks (CALA), Inc. | Flextronics America, LLC | 2,076.00 |
| 4885 | Nortel Networks International Inc. | Flextronics Corporation | 608,200,466.00 |

---

[4] This Schedule F is provided for illustrative purposes only.  To the extent that this Schedule F is inconsistent with the releases contained in section 7 of this Settlement and Release Agreement, the releases contained in section 7 of this Settlement and Release Agreement shall govern.

| 4886 | Nortel Networks Inc. | Flextronics EMS Canada Inc. | 302,771,369.00 |

## Schedule G – Canadian Proofs of Claim[5]

| E&Y Claim ID Number | CCAA Applicant | Creditor Name | Amount Claimed (CAD) |
|---|---|---|---|
| 1840 | Nortel Networks Limited | Flextronics International Europe B.V. | 83,703,679.00 |
| 1841 | Nortel Networks Limited | Flextronics Electronics Technology (Suzhou) Co. Ltd. | 120,436.23 |
| 1842 | Nortel Networks Limited | Flextronics Distribution, Inc. | 72,219.28 |
| 1843 | Nortel Networks Technology Corporation | Flextronics America, LLC | 14,756.48 |
| 1844 | Nortel Networks Limited | Flextronics America, LLC | 529.59 |
| 1845 | Nortel Networks Technology Corporation | Flextronics Telecom Systems Ltd | 741,541,610.00 |
| 1846 | Nortel Networks Technology Corporation | Flextronics International Latin America (L) Ltd. | 38,808.83 |
| 1847 | Nortel Networks Limited | Flextronics International Latin America (L) Ltd. | 4,270,873.78 |
| 1850 | Nortel Networks Limited | Flextronics (Canada) Inc. | 33,679,301.00 |
| 1866 | Nortel Networks Limited | Flextronics Telecom Systems Ltd | 775,220,909.98 |
| 1870 | Nortel Networks International Corporation | Flextronics Telecom Systems Ltd | 741,541,610.20 |
| 1872 | Nortel Networks Global Corporation | Flextronics Telecom Systems Ltd | 741,541,610.20 |
| 1875 | Nortel Networks Corporation | Flextronics Telecom Systems Ltd | 741,541,610.20 |
| 1878 | Nortel Networks Technology Corporation | Flextronics Corporation | 741,541,608.98 |
| 1879 | Nortel Networks Limited | Flextronics Corporation | 741,541,608.98 |
| 1881 | Nortel Networks Global | Flextronics Corporation | 741,541,608.98 |

---

[5] This Schedule G is provided for illustrative purposes only.  To the extent that this Schedule G is inconsistent with the releases contained in section 7 of this Settlement and Release Agreement, the releases contained in section 7 of this Settlement and Release Agreement shall govern.

**Execution Version**

| | Corporation | | |
|---|---|---|---|
| 1884 | Nortel Networks International Corporation | Flextronics Corporation | 741,541,608.98 |
| 1887 | Nortel Networks Corporation | Flextronics Corporation | 741,541,608.98 |
| 1894 | Nortel Networks Limited | Flextronics International Poland Sp. z.o.o. | 19,710.70 |
| 1898 | Nortel Networks Limited | Flextronics Sales & Marketing North Asia (L) Ltd | 20,046.27 |
| 1902 | Nortel Networks Technology Corporation | Flextronics Canada Design Services Inc. | 5,638,089.47 |
| 1903 | Nortel Networks Technology Corporation | Flextronics EMS Canada Inc. | 2,558,618.98 |
| 1904 | Nortel Networks Technology Corporation | Flextronics Enclosure Systems (Changzhou) Ltd. | 43,421.38 |

## <u>Schedule H – Open Accounts Receivable</u>

Confidential.  Filed under seal pursuant to the Order Authorizing the Debtors to File Under Seal Certain Portions of (I) the Settlement and Release Agreement and (II) the Side Agreement, Attached as Exhibits to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Authorizing and Approving the Flextronics Settlement and Release Agreement, (II) Authorizing and Approving the Related Side Agreement and (III) Granting Related Relief [D.I. _____]. Copies of Schedule H will be provided to the United States Trustee and the Court.

## **Schedule I – Preserved Open Accounts Receivable**

Confidential.  Filed under seal pursuant to the Order Authorizing the Debtors to File Under Seal Certain Portions of (I) the Settlement and Release Agreement and (II) the Side Agreement, Attached as Exhibits to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Authorizing and Approving the Flextronics Settlement and Release Agreement, (II) Authorizing and Approving the Related Side Agreement and (III) Granting Related Relief [D.I. _____]. Copies of Schedule I will be provided to the United States Trustee and the Court.

## <u>Schedule J – Adjustment Amount Open Accounts Receivables</u>

Confidential.  Filed under seal pursuant to the Order Authorizing the Debtors to File Under Seal Certain Portions of (I) the Settlement and Release Agreement and (II) the Side Agreement, Attached as Exhibits to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Authorizing and Approving the Flextronics Settlement and Release Agreement, (II) Authorizing and Approving the Related Side Agreement and (III) Granting Related Relief [D.I. _____]. Copies of Schedule J will be provided to the United States Trustee and the Court.

**Execution Version**

## Exhibit 1 – Form ERS8K MA

## ERS8K MANUFACTURING AGREEMENT

This Agreement is entered into between Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI") (NNL and NNI collectively "Nortel") on the one hand and on the other hand Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation (f/k/a Solectron Corporation, "FC") (FTS and FC, collectively, "Flextronics"), on the terms and conditions set forth below. This Agreement will become effective on _____, 2009 (the "Effective Date").

WHEREAS, Nortel is currently purchasing the contract manufacturing services related to certain of its products identified in Schedule A attached hereto as "SLR Enterprise Products," as produced in Flextronics's facility in Penang, Malaysia ("Penang"), Charlotte, North Carolina ("Charlotte"), Milpitas, California ("Milpitas") and distributed through Flextronics's facility in Columbia, South Carolina ("Columbia"). The purchase and sale of the SLR Enterprise Products is currently governed by that certain Master Contract Manufacturing Services Agreement between FC and Nortel, dated as of September 30, 2003 and as subsequently amended by the parties (the "SLR MCMSA");

AND WHEREAS, NNL and Flextronics have agreed, pursuant to that certain Settlement Agreement dated May 22, 2009 (the "Settlement Agreement"), that, *inter alia,* the business and operations conducted pursuant to the SLR MCMSA related to the SLR Enterprise Products would terminate in accordance with the terms of the SLR MCMSA as of December 12, 2009;

AND WHEREAS, the Parties have subsequently agreed that Flextronics will continue to provide the manufacturing services related to the SLR Enterprise Products under the terms and conditions set out herein;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth (the receipt and sufficiency of which is hereby acknowledged), the Parties hereby agree as follows:

1.      The Parties agree that, with respect to the SLR Enterprise Products, Flextronics's continued production of such products shall be pursuant to the terms of that certain Amended and Restated Master Contract Manufacturing Services Agreement between FTS and Nortel, dated as of June 29, 2004 and as subsequently amended by the parties (the "Flex MCMSA"), and, further, that such production and services shall be continued until (a) December 31, 2010 with respect to the services currently provided in Penang, Charlotte and Milpitas and (b) March 31, 2010 with respect to the services currently provided in Columbia. With respect to such continuing support, the pricing will be fixed through December 31, 2009

2.      Except as set out herein, the terms and conditions governing the provision of the manufacturing services related to the SLR Enterprise Products shall be, in order of precedence (controlling documents listed first): (i) this Agreement, (ii) Settlement Agreement, (iii) the Amending Agreement by and between the parties dated January, 13, 2009, and (iv) the Flex MCMSA, as amended and as particularly amended by that certain Amending Agreement dated January 13, 2009 and the Settlement Agreement. The Parties have agreed that the terms of any applicable Virtual System House Agreements or other agreements currently governing the SLR

Enterprise Products business shall continue in their current forms, except to the extent such terms are superseded by the terms of the Flex MCMSA and this Agreement.

3.    The pricing for the SLR Enterprise Products will remain at the current rates through December 31, 2009.



January 1, 2010
April 1, 2010
July 1, 2010
October 1, 2010

 As part of the closing of the sale to Avaya Inc. by Nortel of Nortel's Enterprise Solutions business ("Closing"), Flextronics consents to Nortel's assignment to Avaya of Nortel's obligation to pay all of the above described quarterly payments that will become due after the effective date of the Closing; provided, Avaya Inc. acknowledges its assumption of such payment obligation in writing with Flextronics in advance of the Closing. Upon Avaya Inc. and Flextronics entering into the written agreement acknowledging assumption of the described quarterly payments, Flextronics will release Nortel from all liability for such payments.

4.    Flextronics utilizes certain "gold boards" as part of the test processes for the SLR Enterprise Products (the "Gold Boards"), Nortel and FC will mutually agree on an appropriate Gold Board population and identify these quantities in Schedule B. Nortel shall submit a purchase order for the Gold Boards in the amount set forth in Schedule B, which Nortel shall pay to Flextronics on Payment terms consistent with the current AA process Flextronics shall retained possession of the Gold Boards as Loaned Assets under the Flex MCMSA.

5.    For the avoidance of doubt, Flextronics shall submit and Nortel shall be responsible for claims for Quarterly E&O generated by the SLR Enterprise Products in accordance with the terms of the Settlement Agreement and Amending Agreement.

[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have signed this Manufacturing Agreement, to be effective as of the Effective Date first above written, although actually signed by the parties on the dates shown below their respective signatures.

**NORTEL NETWORKS LIMITED**               **FLEXTRONICS TELECOM SYSTEMS, LTD**.

By:                                                       By:

Name:                                                   Name:
Title:                                                     Title:

Date:                                                     Date:

                                                          **FLEXTRONICS CORPORATION**

                                                          By:
                                                          Name:
                                                          Title:

                                                          Date:

## **Schedule A**

### **SLR Enterprise Products**

As of the Effective Date, the SLR Enterprise Products consist of the following Products manufactured in Penang:

## Schedule B

## Gold Boards

.

## Exhibit 2 – Form MEN MA

## MEN MANUFACTURING AGREEMENT

This Agreement is entered into between Nortel Networks Limited ("NNL") and Nortel Networks Inc. ("NNI") (NNL and NNI collectively "Nortel") on the one hand and on the other hand Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation (f/k/a Solectron Corporation, "FC") (FTS and FC, collectively, "Flextronics"), on the terms and conditions set forth below. This Agreement will become effective on October 15, 2009 (the "Effective Date").

WHEREAS, Nortel is currently purchasing the contract manufacturing services related to certain of its products identified in Schedule A attached hereto as SLR Metro Ethernet Networks (MEN) Products, as produced in Flextronics' facility in Guadalajara, Mexico. The purchase and sale of the SLR MEN Products is currently governed by that certain Master Contract Manufacturing Services Agreement between FC and Nortel, dated as of September 30, 2003 and as subsequently amended by the parties (the "SLR MCMSA");

AND WHEREAS, NNL and Flextronics have agreed, pursuant to that certain Settlement Agreement dated May 22, 2009 (the "Settlement Agreement"), that, *inter alia,* the business and operations conducted pursuant to the SLR MCMSA related to the SLR MEN Products would terminate in accordance with the terms of the SLR MCMSA as of December 12, 2009;

AND WHEREAS, the Parties have subsequently agreed that Flextronics will continue to provide the manufacturing services related to the SLR MEN Products under the terms and conditions set out herein;

NOW, THEREFORE, in consideration of the mutual promises hereinafter set forth (the receipt and sufficiency of which is hereby acknowledged), the Parties hereby agree as follows:

1.      The Parties agree that, with respect to the SLR MEN Products, Flextronics' continued production of such products shall be pursuant to the terms of that certain Amended and Restated Master Contract Manufacturing Services Agreement between FTS and Nortel, dated as of June 29, 2004 and as subsequently amended by the parties (the "Flex MCMSA"), and, further, that such production and services shall be continued until June 30, 2010 unless an extension to this agreement is mutually agreed prior to June 30, 2010.

2.      Except as set out herein, the terms and conditions governing the provision of the manufacturing services related to the SLR MEN Products shall be, in order of precedence (controlling documents listed first): (i) this Agreement, (ii) Settlement Agreement, (iii) the Amending Agreement by and between the parties dated January, 13, 2009, and (iv) the Flex MCMSA, as amended and as particularly amended by that certain Amending Agreement dated January 13, 2009 and the Settlement Agreement. The Parties have agreed that the terms of any applicable Virtual System House Agreements or other agreements currently governing the SLR MEN Products business shall continue in their current forms, except to the extent such terms are superseded by the terms of the Flex MCMSA and this Agreement.

3.      Pricing for the SLR MEN Products will remain at the current rates through December 31, 2009. ███████████████████████████████████████████████████████████████████████████

January 1, 2010    ██████████████████████████████████████████
April 1, 2010      ██████████████████████████████████████████

The January 1 payment is for the first quarter of calendar year 2010, whilst the April 1 payment is for the second quarter of calendar year 2010.

During the period for which ███████████████ Transformation cost for the Products will remain fixed at current levels, Material costs will continue to be agreed monthly in accordance with the MPLP process.

4.      For the avoidance of doubt, Flextronics shall submit and Nortel shall be responsible for claims for Quarterly E&O generated by the SLR MEN Products in accordance with the terms of the Settlement Agreement and Amending Agreement.

[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have signed this Wireline Manufacturing Agreement, to be effective as of the Effective Date first above written, although actually signed by the parties on the dates shown below their respective signatures.

**NORTEL NETWORKS LIMITED**

**FLEXTRONICS TELECOM SYSTEMS, LTD.**

By:

By:

Name:

Name:

Title:

Title:

Date:

Date:

**FLEXTRONICS CORPORATION**

By:
Name:
Title:

Date:

**[and other Nortel and Flex entities as required]**

## Schedule A

### SLR MEN Products

As of the Effective Date, the SLR MEN Products consist of the following Products manufactured in Guadalajara:

**OM3K:**

| | |
|---|---|
| NTN451BA | OM 3500 LIF Left interface circuit pack |
| NTN451BH | OM3500 LIF Left interface circuit pack Hardened |
| NTN451HA | OM3500: 20A Power Module |
| NTN451MA | OM 3500 LOAM left OAM circuit pack |
| NTN451MH | OM3500 LOAM left OAM circuit pack Hardened |
| NTN452AA | DS1 1-28 Top Front I/O Module |
| NTN452AH | DS1 1-28 Enhanced Front I/O Module |
| NTN452BA | DS1 1-28 Top Rear I/O Module |
| NTN452CA | DS1 29-56 Top Front I/O Module |
| NTN452CH | DS1 29-56 Top Front I/O Module |
| NTN452DA | DS1 29-56 Top Rear I/O Module |
| NTN452EA | DS1 29-84 Top Front I/O Module |
| NTN452EH | DS1 29-84 Top Front I/O Module |
| NTN452FA | DS1 29-84 Top Rear I/O Module |
| NTN452HB | 8 X - RJ45 Top Rear I/O Module |
| NTN452JA | BNC 12-port I/O Module |
| NTN452JH | BNC 12-port I/O Front Module |
| NTN452KA | BNC 12-port I/O Rear Module |
| NTN452NA | 8 X -RJ45 Top Front I/O Module |
| NTN452NH | 8 X - RJ45 Top Front I/O Module |
| NTN458HB | OM3500: FAN FRONT EXHAUST |
| NTN458HC | OM 3500 Fan Module- Front Exhaust |
| NTN458HH | OM 3500 Fan Module |
| NTN458MW | OM3500 Power Module & Cooling Unit Upgrade Kit |
| NTN458QA | Optical Metro 3500 Fan Kit |
| NTN458QH | Optical Metro 3500 Fan Kit |
| NTN476AH | Optical Metro 3500 Universal Shelf Assembly Hardened |

**Passport7/9K:**

| | |
|---|---|
| NT0489AG | MSS7K |
| NT0490AG | MSS7K |
| NTBP07AG | MSS7K |
| NTBP07BG | MSS7K |
| NTBP07CG | MSS7K |
| NTBP85AG | MSS7K |
| NTEP14BG | MSS7K |
| NTEP65BG | MSS7K |
| NTEP66DG | MSS7K |
| NTEP80AG | MSS7K |
| NTEP81AG | MSS7K |
| NTEP82AG | MSS7K |
| NTHQ19AG | MSS7K |
| NTJS20AG | MSS7K |
| NTJS52BG | MSS7K |
| NTJS53BG | MSS7K |
| NTJS56BG | MSS7K |
| NTJS62FG | MSS7K |
| NTJS63EG | MSS7K |
| NTJS64EG | MSS7K |
| NTJS65DG | MSS7K |
| NTJS66EG | MSS7K |
| NTJS67EG | MSS7K |
| NTJS74AG | MSS7K |
| NTJV24CG | MSS7K |
| NTJV32AG | MSS7K |
| NTPS20AG | MSS7K |
| NTPS20BG | MSS7K |
| NTPS22AG | MSS7K |
| NTNS40AA | MSS9K |
| NTNS41AA | MSS9K |

**Passport 15K:**

NTHR11EA
NTHR12EA
NTHR13EA
NTHR15EA
NTHW76EA
NTHR5071