## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
              :  Chapter 11
              :
*In re*            :  Case No. 09-10138 (KG)
              :
Nortel Networks Inc., *et al.*,[1]   :
              :  Jointly Administered
        Debtors.  :
              :  **Hearing date: December 2, 2009 at 11:00 a.m. (ET)**
              :  **Objections due: December 1, 2009 at 12:00 p.m. (ET)**
              :
----------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL CERTAIN PORTIONS OF (I) THE SETTLEMENT AND RELEASE AGREEMENT AND (II) THE SIDE AGREEMENT, ATTACHED AS EXHIBITS TO THE DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR THE ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE FLEXTRONICS SETTLEMENT AND RELEASE AGREEMENT, (II) AUTHORIZING AND APPROVING THE <u>RELATED SIDE AGREEMENT AND (III) GRANTING RELATED RELIEF</u>

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>") for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") authorizing the Debtors to file under seal certain portions of: (i) a

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

settlement and release agreement (the "Settlement and Release Agreement") by and among

(a) Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd. ("FTS") and certain

affiliates of FC and FTS that are signatories thereto, on behalf of themselves and their respective

affiliates (collectively, "Flextronics"), (b) the Canadian Debtors (as defined below), (c) the

Debtors, (d) Nortel Networks B.V., Nortel Networks (Ireland) Limited, Nortel Networks

Hispania, S.A., and Nortel Networks UK Ltd. ("NN UK") (each an EMEA Debtor (as defined

below), and collectively, the "EMEA Entities"), and (e) the joint administrators acting on behalf

of the EMEA Entities (the "EMEA Entities' Joint Administrators") (Flextronics, the Canadian

Debtors, the Debtors, the EMEA Entities and the EMEA Entities' Joint Administrators are

collectively referred to herein as the "Parties"); and (ii) a side agreement (the "Side Agreement,"

and together with the Settlement and Release Agreement, the "Agreements") by and among (a)

the Canadian Debtors (as defined below), (b) the Debtors, (c) the EMEA Entities and (d) the

EMEA Entities' Joint Administrators (collectively, the "Side Agreement Parties"); both

agreements as attached in redacted form to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105*

*and 363 and Fed. R. Bankr. P. 9019 for the Entry of an Order (I) Authorizing and Approving the*

*Flextronics Settlement and Release Agreement, (II) Authorizing and Approving the Related Side*

*Agreement and (III) Granting Related Relief* (the "Settlement Motion").[2]  In support of this

Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]        Capitalized terms used but not defined herein have the meanings ascribed to them in the Settlement Motion.

2.      The statutory bases for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9018 and Local Rule 9018-1.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15

---

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, NN

---

[4]      The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

UK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

11.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.**     **Debtors' Corporate Structure and Business**

12.     A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

<u>Relief Requested</u>

13.     By this Motion, the Debtors seek an order pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Debtors to file certain portions of the Settlement and Release Agreement and Side Agreement under seal. The Committee and the Bondholder Group have consented to the relief requested herein.

<u>Facts Relevant to this Motion</u>

14.     Since 2004, Nortel and Flextronics have engaged in a complex, wide-ranging contract manufacturing relationship whereby Flextronics, pursuant to specifications supplied by Nortel, purchases materials and components, assembles those materials and components into higher-level components and finished goods, and stores and delivers such finished components and goods to Nortel based on Nortel's forecasts and demands.

15.     Flextronics is by far Nortel's largest supplier.  As the Debtors informed this Court at the January 15, 2009 first day hearing in the chapter 11 proceedings, as of the Petition Date, Flextronics was responsible for the supply of approximately 70% of Nortel's hardware products. <u>See</u> Hearing Tr. 17:22-25, Jan. 15, 2009, the relevant portions of which are attached to the Settlement Motion as <u>Exhibit D</u>.  In addition, Flextronics provides a significant portion of the logistics and repair services required in connection with those products.  Indeed, as the Debtors explained to the Court, Flextronics is, in many respects, "the critical vendor" of Nortel.  <u>Id.</u> at 18:6.

**A.    Nortel's Postpetition Relationship with Flextronics**

16.    Just prior to the Petition Date, in anticipation of the filing and in recognition of the extreme importance of Flextronics' continued performance during the chapter 11, CCAA and EMEA proceedings, Nortel entered into negotiations with Flextronics to ensure ongoing supply during the postpetition period.  In the resulting Amending Agreement, Flextronics agreed to continue supplying products to Nortel; and in exchange, NNL agreed to purchase certain Flextronics inventory in the total amount of $120 million and to certain additional terms.  The Canadian Court approved the Amending Agreement in its Initial Order in the Canadian Proceedings.  Initial Order at ¶ 48.  The cost of the Amending Agreement was allocated among various Nortel entities, including NNI, pursuant to an ordinary course intercompany allocation of the cost of such inventory.

17.    Subsequent to the commencement of the CCAA, EMEA and chapter 11 proceedings, certain disputes emerged between Nortel and Flextronics regarding the proper interpretation of the Amending Agreement and other matters.  Again recognizing the extreme importance of Flextronics' continued performance during Nortel's bankruptcy proceedings, Nortel engaged Flextronics in negotiations in order to maintain the relationship and resolve the disputes concerning the Amending Agreement.  This resulted in an agreement (the "May Settlement") and related side letter (the "May Side Letter"), the cost of which agreement was again allocated among various Nortel entities, including NNI, pursuant to an ordinary course intercompany allocation.  The May Settlement and May Side Letter were approved by this Court on June 11, 2009 [D.I. 895] and by the Canadian Court on June 16, 2009.

**B.    The Flextronics Objections and Proofs of Claim**

18.    Flextronics has objected to the sales of Nortel's CDMA business (the "CDMA Objection") and Enterprise Solutions business (the "Enterprise Objection").  Nortel, Flextronics

7

and the Purchaser of the CDMA and LTE assets consensually resolved the CDMA Objection and it was withdrawn by Flextronics on July 27, 2009 [D.I. 1183].  The Enterprise Objection was resolved pursuant to certain representations and terms set forth in (i) paragraph 28 of an order entered by this Court on September 16, 2009 approving the sale of the Enterprise Solutions business (the "US Enterprise Sale Order") [D.I. 1514] and (ii) paragraph 11 of an order entered by the Canadian Court on September 17, 2009 approving the sale of the Enterprise Solutions business (the "Canadian Enterprise Sale Order").

19.     Nortel is currently in the process of divesting its assets through various pending and future sales of businesses or product lines or any other assets or shares of Nortel (each, a "Business") to one or more third parties (a "Purchaser") (any such sale, whether by asset sale, merger, operation of law or otherwise, a "Divestiture").  Flextronics is a supplier to several of the Businesses, including without limitation the Enterprise Solutions, MEN (Optical), CVAS, Passport, and GSM businesses.  Due to the size of the Debtors' supply relationship with Flextronics, the Debtors expect it is likely that potential Purchasers will want to continue a supply relationship with Flextronics in connection with a Divestiture.

20.     As further described in the Settlement Motion, Flextronics has filed claims against certain Debtors, asserting that such Debtors owe Flextronics no less than $24,795,601 on account of §503(b)(9) claims and no less than $608,200,466, plus certain contingent and/or unliquidated amounts, on account of prepetition claims.  Flextronics also filed a number of proofs of claim against the Canadian Debtors asserting prepetition amounts owed by the Canadian Debtors to Flextronics.

C.       **The Settlement and Release Agreement**

21.      In light of the several pending and potential Divestitures, the significance, size and complexity of the supply relationship with Flextronics, and Nortel's experience in prior Divestitures since its commencement of creditor protection proceedings, Nortel and Flextronics have determined that it is in their mutual best interests to enter into an agreement that provides a mechanic for the transfer of the supply relationship to interested parties, resolves the settlement and payment of certain claims held by Nortel and Flextronics that would need to be resolved in connection with such Divestitures, and resolves other claims held by each of the parties in order to fully settle the prepetition claims held by the parties and certain other claims related to open accounts receivable and payable by Flextronics and Nortel.  Moreover, while Nortel does not admit the validity of (i) any objection Flextronics has asserted to date in these chapter 11 proceedings and the Canadian Proceedings, or that it could assert with respect to any pending or future Divestiture, including without limitation to the treatment of the MCMSAs in connection with any such Divestiture, or (ii) any claim asserted in the Flextronics Proofs, Nortel believes it is in the best interests of Nortel and its creditors to avoid the expense, delay and uncertainty associated with any possible litigation relating to such potential sale-related objections, the Flextronics Proofs, and the other matters addressed in the Settlement and Release Agreement. To this end, the Parties have reached agreement to (i) ensure Flextronics' cooperation with regard to pending and future Divestitures, (ii) ensure the provision by Flextronics of a supply contract with the Purchaser in connection with any future Divestiture on the terms described in the Settlement and Release Agreement, (iii) satisfy the resolution of the Enterprise Objection, (iv) fully and finally resolve the Flextronics Proofs, including certain post-petition ordinary course contractual claims, and all of the Parties' respective claims arising prior to the Petition

Date, except as otherwise expressly stated in the Settlement and Release Agreement and (v) provide for the Parties' performance of their postpetition obligations under the MCMSAs in accordance with the Settlement and Release Agreement.  The agreement is the result of lengthy and vigorous negotiations between Nortel and Flextronics, including extensive discussions with the Committee, the Bondholder Group and the Monitor.

22.    The agreement between Nortel and Flextronics has been memorialized in a Settlement and Release Agreement dated November 20, 2009.  As more fully described in the Settlement Motion,[5] pursuant to the Settlement and Release Agreement:  (i) NNI agrees to pay to Flextronics on behalf of the Nortel parties to the Settlement and Release Agreement, and in accordance with the Side Agreement, certain amounts (the "Payment Obligation") in two equal installments; (ii) Flextronics agrees to cooperate with regard to pending and future Divestitures and provide a supply contract with a Purchaser in connection with any future Divestiture on the terms described in the Settlement and Release Agreement; (iii) the Parties agree to satisfy the obligations under section (vi) of paragraph 28 of the US Enterprise Sale Order and paragraph 11 of the Canadian Enterprise Sale Order pursuant to terms set forth in the Settlement and Release Agreements; (iv) the Parties agree to perform in good faith their postpetition obligations under the MCMSAs in accordance with the terms of the Settlement and Release Agreement; and (v) the Parties agree to release certain claims including their respective claims arising prior to the Petition Date, except as otherwise expressly stated in the Settlement and Release Agreement.

**D.    The Side Agreement**

23.    The Debtors, the Canadian Debtors and the EMEA Entities concluded it was in their best interests to further the Settlement and Release Agreement through the entry into a Side

---

[5]    The following overview is intended as a summary of the terms of the Settlement and Release Agreement. If any conflict arises between this overview and the Settlement and Release Agreement, the terms of the Settlement and Release Agreement shall control.

Agreement to govern to allocation of responsibility for the Payment Obligation and the settlement of certain avoidance actions under the Settlement and Release Agreement.  Following lengthy negotiations, including extensive negotiations with the Committee, the Bondholder Group, the Monitor and the EMEA Entities' Joint Administrators, on or about November 20, 2009, the Side Agreement Parties entered into the Side Agreement governing the initial funding of the Payment Obligation under the Settlement and Release Agreement and ultimate allocation of the Settlement Cost (as defined in the Side Agreement) amongst them.[6]  The Side Agreement provides for the initial funding of the Payment Obligation among the estates, the establishment of a segregated account by NNI to hold the funds pending payment, and a methodology for the ultimate allocation of the Settlement Cost incurred by the Side Agreement Parties in each of the following three groups:  (i) the Canadian Debtors, (ii) the Debtors and (iii) the EMEA Entities (each of (i), (ii) and (iii), a "Regional Entity") according to the weighted average of proceeds allocated to such Regional Entity from the sales of the Enterprise, MEN (Optical), CVAS and GSM Businesses.

## E.    The Redacted Material

24.    By this Motion, the Debtors respectfully request that certain sections of the Agreements containing sensitive commercial information concerning the relationship between Nortel and Flextronics (the "Redacted Material") be redacted in the public filing and the unredacted versions of the Agreements be filed under seal.  Specifically, the Debtors request to file under seal (i) the value of the Payment Obligation as set forth in Schedule B to the Settlement and Release Agreement and (ii) certain other Schedules and portions of Schedules

---

[6]    This overview is intended as a summary of the terms of the Side Agreement.  If any conflict arises between this overview and the Side Agreement, the terms of the Side Agreement shall control.  Capitalized terms used in this overview but not described herein have the meaning ascribed to them in the Side Agreement.

and Exhibits to the Settlement and Release Agreement that contain pricing information.[7]  In the

Side Agreement, the Debtors request to file under seal all values set forth therein that, if not filed

under seal, would allow for the determination of the Payment Obligation and the total Settlement

Cost of the Settlement and Release Agreement.

## Basis for Relief

25.     The relief requested by the Debtors is squarely authorized under the Bankruptcy

Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the

power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information . . . .

11 U.S.C. § 107(b).

26.     Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may

move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.  Local Rule 9018-1 requires any party who seeks to file documents under

seal to file a motion to that effect.  Del. Bankr. L.R. 9018-1(b).

---

[7]     This includes:  (i) pricing information contained on Schedule C – Post-Petition Ordinary Course
Contractual Claims; (ii) pricing information contained on Schedule D – Pre-Petition Ordinary Course Contractual
Claims; (iii) Schedule H – Open Accounts Receivable; (iv) Schedule I – Preserved Open Accounts Receivable; (v)
Schedule J – Adjustment Amount Open Accounts Receivable; (vi) pricing information contained in Exhibit 1 –
Form ERS8K MA; and (vii) pricing information contained in Exhibit 2 – Form MEN MA.

27.     This Court has previously described "commercial information" as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  In re Alterra Healthcare Corp., 353 B.R. 66, 75 (Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994).  This Court has also noted that "commercial information" may include "the terms of agreements with suppliers."  Id. at 76 (citing In re Barney's, Inc., 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)).

28.     A movant is not required to demonstrate "good cause" to file under seal.  Rather, if the material sought to be filed under seal falls within one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no discretion to deny the application."  Orion, 21 F.3d at 27.

29.     Since the Redacted Material contains "commercial information" within the ambit of section 107(b), the Court should enter an order permitting the Debtors to file the Agreements under seal.  As described above, the redacted portions of the Agreements contain sensitive commercial information concerning the relationship between the Debtors and their largest supplier, Flextronics.  The disclosure of this information would unfairly advantage the Debtors' competitors by revealing certain costs and terms associated with Nortel's supply chain and production process.  As this Court has noted before, the expenses associated with a debtor's operations are "commercial and sensitive in nature."  Alterra, 353 B.R. at 76.

30.     Additionally, in In re Orion Pictures Corp., the Second Circuit reviewed a bankruptcy court's order authorizing a debtor to file under seal a licensing agreement by which McDonald's agreed to distribute one of the debtor's products.  21 F.3d at 26.  The Second Circuit upheld the bankruptcy court's decision to file the agreement under seal, explaining that:

> Here, the bankruptcy court properly found, after reviewing the
> licensing agreement and other relevant material, that disclosing the

> sealed information, including the overall structure, terms and
> conditions of the McDonald's Agreement, renders very likely a
> direct and adverse impairment to [the debtor's] ability to negotiate
> favorable promotion agreements * * *, thereby giving [the
> debtor's] competitors an unfair advantage.

Id. at 27-28.  In this case, the redacted portions of the Agreements contain information the

release of which would similarly disadvantage the Debtors.  The settlement with Flextronics is

both necessitated by and reflective of Nortel's unique relationship with Flextronics and the

complexity of the relationship.  The disclosure of certain details of the settlement would severely

impair the ability of the Debtors to successfully manage their relationships with their other

suppliers and creditors, and thereby place strain on the Debtors' operations during this critical

period and potentially result in added expenses that would drain additional resources from the

Debtors' estates and reduce the eventual recovery of creditors.  Moreover, the information

redacted in the Side Agreement relates to the Side Agreement Parties' payment obligations and

agreements regarding the allocation methodology that, if disclosed, could compromise the

process for allocation of the Settlement Cost.  As one bankruptcy court has explained, "the

commercial information that is entitled to protection under Code section 107(b) and Bankruptcy

Rule 9018 must be viewed from the practical perspective of damage to the estate or its

creditors."  In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

31.     Furthermore, the disclosure of certain economic details of the settlement

contained in Redacted Material would disrupt the Divestitures the Debtors are undertaking to

maximize value for their estates and creditors and the necessary negotiations between the

Debtors' suppliers and potential Purchasers to facilitate the transfer of supply arrangements until

such Divestiture.  Courts have recognized that filing commercial information under seal is

appropriate when its disclosure would reduce the value of the estate by having a "serious and

14

detrimental impact on the prices for which . . . assets could be sold."  <u>In re Farmland Industries</u>, 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003); <u>see also</u> <u>Global Crossing</u>, 295 B.R. at 725 (holding that section 107(b) of the Bankruptcy Code "squarely includes information that could prejudice either [the estate or its creditors] as part of a sale process").

32.      Consequently, this Court should enter an order authorizing the Debtors to file the unredacted Agreements under seal.

### Notice

33.      Notice of the Motion has been given via hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Flextronics; and (vii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

34.      No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 24, 2009
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*