## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| **NORTEL NETWORKS INC.,** *et al.,* | Case No. 09-10138(KG) |
| Debtors. | Jointly Administered |
|  | Re: Docket No. 1587 and 1669 |
|  | **Hearing Date: December 2, 2009 @ 11:00 a.m.**<br>**Objection Deadline: November 25, 2009 @ 4:00 p.m.** |

### LEAD PLAINTIFFS' LIMITED RESPONSE TO DEBTORS' MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF CERTAIN ASSETS OF DEBTORS' GSM/GSM-R BUSINESSS

Lead Plaintiffs[1] in the putative securities class action captioned *David Lucescu, Individually and on Behalf of all Others Similarly Situated v. Mike Zafirovski,* Civil Action No. 09-cv-04691(SAS) (the "Securities Litigation"), filed in the United States District Court for the Southern District of New York (the "District Court"), on behalf of all persons (the "Class"), who purchased or otherwise acquired securities of Nortel Networks Corporation ("NNC"), between May 2, 2008 and September 17, 2008, inclusive, submit this limited response (the "Response") to Debtors' Motion for an Order Authorizing and Approving the Sale of Certain Assets of the Debtors' GSM/GSM-R Business (Docket No. 1587) (the "Motion")[2] and state the following:

### PRELIMINARY STATEMENT

1.      Lead Plaintiffs do not object to the relief sought in the Motion, but request that any Order granting the relief requested, in whole or in part, provide some protocol, policy or mechanism for the retention, preservation and protection of books, records and other documents (as more specifically defined in note 4, *infra*), in whatever form, that may be transferred as part of

---

[1]      Kien Chen and Moreno Minto were appointed Lead Plaintiffs on July 22, 2009.
[2]      Capitalized terms shall have the meaning ascribed to them in the Motion unless defined otherwise herein.

the Sale and also provide for notice to Lead Plaintiffs of, and an opportunity to object to and be heard on, any efforts by the Sellers or Purchaser to destroy or abandon any of the foregoing (including those, if any, retained by Debtors).

## **BACKGROUND**

2.      On January 14, 2009, Nortel Networks Corporation ("NNC"), Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Canadian Nortel Group") commenced proceedings under *Canada's Companies' Creditors Arrangement Act,* R.S.C. 1985, c. C-36, as amended, (the "Canadian Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").

3.      On January 14, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in this Court.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11.U.S.C. §§ 1107(a) and 1108.

4.      On January 14, 2009, Ernst & Young, Inc., the court-appointed monitor (the "Monitor") and authorized foreign representative of the Canadian Nortel Group in the Canadian Proceedings commenced proceedings under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5.      On January 14, 2009, the Ontario Court issued its Initial Order (and together with subsequent amendments, the "Initial Order").

6.      On February 27, 2009, the Bankruptcy Court entered an order in the Chapter 15 Cases granting recognition to the Canadian Proceedings as foreign main proceedings and giving full force and effect in the United States to the Initial Order of the Ontario Court (and any further amendments or extensions thereof as may be granted from time to time by the Ontario Court) (the "Recognition Order") (Docket No. 40.)

7.      On May 18, 2009, David Lucescu, individually and on behalf of all others

similarly situated (the "Plaintiff"), filed the Securities Litigation Complaint in the District Court for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against Mike Zafirovski and Pavi Binning (the "Non-Debtor Defendants"), current and former officers of NNC.

8.      Due to the discovery stay of the Private Securities Litigation Reform Act of 1995 (the "PSLRA")[3] and the automatic bankruptcy stay, as well as the stay in the Canadian Proceedings, which currently extends to the Non-Debtor Defendants, Lead Plaintiffs have not had the opportunity to conduct formal discovery of the Debtors, their affiliates or the Non-Debtor Defendants in the Securities Litigation.

9.      On September 30, 2009, the Debtors filed the Motion seeking, *inter alia,* authority to sell certain Assets free and clear of liens.  On October 15, 2009, the Court entered an Order (Docket No. 1676) approving the sale procedures and scheduling the hearing to approve the sale (the "Sale Hearing") for November 11, 2009.  The Sale Hearing has been adjourned to December 2, 2009 at 11:00 a.m.  As of the date of filing this response, a successful purchaser has not been identified.

10.      Lead Plaintiffs submit this limited Response to the proposed Asset Sale Agreement (the "ASA") (Docket No. 1669) and reserve their rights to the extent a modified ASA is submitted for approval to the Court.

11.      Relevant to this Response, the ASA provides the following:

> Section 5.23.  <u>Maintenance of Books and Records</u>.  After the Closing, the Purchaser shall, and shall cause the Designated Purchasers to, preserve, until at least the seventh (7th) anniversary of the Closing Date (or such longer period as may be required by applicable Law), all pre-Closing Date records to the extent relating to the Business possessed or to be possessed by such Person.  After the Closing Date and up until at least the seventh (7th) anniversary of the Closing Date (or such longer period as may be required by applicable Law), upon any reasonable request from the Sellers or their representatives, the Purchaser shall, and/or shall cause the

---

[3]      The PSLRA discovery stay prohibits discovery until motions to dismiss have been denied.

Person holding such records to, (a) provide to the Sellers or their representatives reasonable access to such records during normal business hours and (b) permit the Sellers or their representatives to make copies of such records, in each case at no cost to the Sellers or their representatives (other than for reasonable out-of-pocket expenses).  In addition, in the event that the financial statements of the Business are audited for any period prior to the Closing Date, upon execution of a customary access letter if required, the Sellers and their representatives (including their outside accountants) shall be granted access to all relevant work papers, schedules, memoranda and other documents prepared by the Business or their representatives (including outside accountants) in connection with the Sellers' completing the audit of their accounts for the 2009 fiscal year; provided, however, that nothing herein shall require the Purchaser to disclose any information to the Sellers if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Purchaser shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Sellers to occur without so jeopardizing privilege or contravening such Law, duty or agreement) or require the Purchaser to disclose any income Tax Return or any combined or consolidated Tax Return filed by the Purchaser.  Such records may be sought under this Section 5.23 for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities disclosure or other similar needs of the Sellers (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement).  Notwithstanding the foregoing, (i) any and all such records may be destroyed by the Purchaser if the Purchaser sends to the Sellers written notice of its intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Sellers notify the destroying party that the Sellers desire to obtain possession of such records, in which event the Purchaser shall transfer or cause to be transferred the records to the Sellers and the Sellers shall pay all reasonable expenses of the Purchaser in connection therewith and (ii) the Purchaser shall not be required to provide the Sellers access to, or copies of, any Tax records.

## **OBJECTION**

12.	Lead Plaintiffs do not object to the Sale provided some further protocol or mechanism is imposed for the preservation, maintenance, protection and availability of the

Debtors' books, records and other documents, in whatever form, including native form (the "Books and Records"),[4] that may be relevant to the claims asserted in the Securities Litigation and that such protocol be available to Lead Plaintiffs and other parties-in-interest in these proceedings.

13.    Many of the Debtors' assets, specifically the Books and Records, may be relevant to the claims asserted in the Securities Litigation.  Indeed, the accounting and reporting practices of the Debtors are squarely at issue in the Securities Litigation.  As discussed above, the PSLRA discovery stay, the automatic stay and the stay in the Canadian Proceedings currently prohibit Lead Plaintiffs from obtaining formal discovery from the Debtors, their affiliates and the Non-Debtor Defendants in the Securities Litigation.  The Sale provides no guarantee that access to the Books and Records, relevant to the claims in the Securities Litigation, as well as to the claims asserted or to be asserted in the chapter 11, chapter 15 or Canadian proceeding, is available to third parties or that the Books and Records are properly maintained and preserved.  Therefore, some protocol is required to ensure that the Books and Records are properly maintained and preserved and available to the parties to the Securities Litigation.

14.    Permitting the Debtors to sell their Assets and transfer their Books and Records without an appropriate reservation of rights or protocol to ensure that access to such records

---

[4]    Books and Records, which may contain information relevant to the claims in the Securities Litigation, also include such other assets to be sold pursuant to the Agreement including, but not limited to:

- Digital communications (*e.g.,* e-mail, voice mail, instant messaging);
- Word processed documents (*e.g.,* Word or WordPerfect documents and drafts);
- Spreadsheets and tables (*e.g.,* Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.,* QuickBooks, Money, Peachtree data fields);
- Image and Facsimile Files (*e.g.,* PDF, .TIFF, .JPEG, .GIF images);
- Sound Recordings (*e.g.,* WAV and .MP$_3$ files);
- Video and Animation (*e.g.,* AVI and .MOV files);
- Databases (*e.g.,* Access, Oracle, SQL Server data SAP);
- Contact and Relationship Management Data (*e.g.,* Outlook, ACT!);
- Calendar and Diary Application Data (*e.g.,* Outlook PST, Yahoo, blog tools);
- Online Access Data (*e.g.,* Temporary Internet Files, History, Cookies);
- Presentations (*e.g.,* PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (*e.g.,* Zip, .GHO).

remains available to third parties would unduly and inappropriately prejudice the rights of Lead Plaintiffs and the putative Class in the Securities Litigation, as well as those of other creditors and stakeholders in these proceedings.

15.     Furthermore, neither the Motion nor the Agreement specifically identify the records subject to § 5.23 of the ASA.  Indeed, the description of those records in the Agreement is extremely vague, ambiguous and completely subjective ("all pre-Closing Date records to the extent relating to the Business").  To the extent any Books and Records are not transferred to the successful purchaser, they should remain with the Debtors and be maintained and preserved pursuant to the provisions of the Bankruptcy Code.  There also may be some such books, records or documents that are transferred, but not deemed related to the Business.  Those books, records and documents must be maintained and preserved as well and should not be destroyed or rendered otherwise unavailable.

16.     The ASA further provides that included among the assets to be transferred is "Business Information" as of the Closing Date.  Business Information is defined as:

> all books, records, files, ledgers, documentation, sales literature or similar information in the possession or under control of the Sellers and that, in each case, is used *exclusively* in the Business . . .

ASA, § 1.1 (emphasis added).  The term Business appears to exclude:

> financial information, technology, legal, marketing, human resource operations, real estate or other 'corporate' or related services supporting or utilized by such activities,

ASA, § 1.1.

17.     To the extent that these defined terms are intended to prevent the transfer of Books and Records relevant to the Securities Litigation, there is no assurance that included among the Assets to be transferred will be such relevant information or other potential evidence.  Indeed, these provisions of the ASA do not appear to be directly tied to § 5.23 of the ASA addressing the Purchaser's obligation to preserve "all pre-Closing Date records to the extent

relating to the Business," and, in any event, are subjective at best.

18.      Moreover, notwithstanding the 7 year retention period, the Purchaser appears to have the right to unilaterally destroy "such records" upon sixty (60) days notice only to the Sellers.  *See* ASA, § 5.23.  The retention period then is meaningless and puts the Books and Records transferred pursuant to the ASA at risk and prejudices the Lead Plaintiffs and other stakeholders.

19.      Because the Books and Records are described in such vague and general terms (*see* ASA, § 5.23 and ¶ 15, *supra*), Lead Plaintiffs cannot determine if the Books and Records include information and/or evidence potentially relevant to the claims in the Securities Litigation.  Full disclosure of the Books and Records or a reasonable retention policy that does not allow the Debtors (who are presumably bound by 11 U.S.C. § 554(a), requiring notice and a hearing before a debtor may abandon assets) or the Purchaser to destroy documents is warranted to provide Lead Plaintiffs and others an opportunity to move for appropriate relief, if necessary, to access those Books and Records relevant to the Securities Litigation and other issues in this case.

20.      The conduct of the Debtors and certain of their officers and directors leading up to the filing of the Petitions here and in the other proceedings (which conduct lead to the Securities Litigation), requires that before documents relating to their activities and operations are abandoned or transferred, parties in interest be given the opportunity to access and examine such documents and information.  At the very least, such documents must be maintained and preserved for the duration of the Securities Litigation, including any appeals, so access can be provided at the appropriate time.

## **CONCLUSION**

21.      Based upon the foregoing, Lead Plaintiffs respectfully request that unless and until an appropriate protocol or other mechanism is in place to safeguard, preserve, maintain, protect and make available the Debtors' Books and Records, including those sold pursuant to the

ASA or such other asset purchase agreement that may be approved by the Court, relevant to the claims asserted in the Securities Litigation, an order be entered denying the Sale and granting such other and further relief as the Court deems just and proper.

Dated:  November 25, 2009

**CROSS & SIMON LLC**

By:  ___/s/ Christopher P. Simon___
Christopher P. Simon (Bar No. 3697)
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE  19899-1380
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
65 Livingston Avenue
Roseland, NJ  07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs
and the Putative Class*

**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY  11747
(631) 367-7100 (Telephone)
(631) 367-1173 (Facsimile)

*Lead Counsel for Lead Plaintiffs and
the Putative Class*