## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Nortel Networks, Inc., et al., | ) | Case Nos. 09-10138 |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | |

### OBJECTION OF MOTOROLA, INC. TO DEBTORS' MOTION FOR ORDERS (I) (A) AUHORIZING AND APPROVING THE BIDDING PROCEDURES, (B) APPROVING THE NOTICE PROCEDURES, AND (C) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS OF DEBTORS' GSM/GSM-R BUSINESS

Motorola, Inc. (collectively, together with any affiliated entities participating in the business or transactions referenced herein "Motorola"), by its undersigned counsel and in compliance with this Court's prior orders, makes and files this objection ("Objection") to the Debtors' Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving Notice Procedures, and (C) Setting a Date For Sale Hearing, and (II) Authorizing and Approving the Sale of Certain Assets of Debtors' GSM/GSM-R Business (the "Sale Motion") [D.I. 1587], as well as to any and all motions to assume and assign any contracts pursuant to Section 365 of the Bankruptcy Code or any notice for the assumption and assignment of an executory contract that have or may hereafter be directed to Motorola. As and for its Objection states the following:

### INTRODUCTION

1.  Motorola is a global communications company that develops, implements and executes a broad portfolio of technologies, solutions and services—including wireless handsets, wireless accessories, digital entertainment devices, wireless access systems, voice and data communications systems and enterprise mobility products.

2.     In order to deliver the high quality and specialized products and services in its portfolio, Motorola maintains a supply chain of vendors and other third party service providers. Motorola employs a rigorous qualification process for each of these vendors and providers, continuously monitors the quality of performance under each of these arrangements, and shares highly confidential and sensitive information with them to facilitate their work with Motorola that may in some instances be shared through a license. By the terms of these relationships and applicable law, none of these relationships are assignable or delegable without Motorola's consent.

3.     Nortel Networks, Inc. is a qualified Motorola supplier, and furnishes both goods and services to Motorola pursuant to that certain Supply, Installation and Service Agreement (the "Supply Agreement"), replacing a prior Supply, Installation and Service Agreement dated July 22, 2002, as amended and modified from time to time. There are multiple amendments and annexed agreements to the Supply Agreement as well as other related agreements that govern the business relationship between Motorola and the Debtors (collectively, the "Motorola Agreements").

4.     Pursuant to Debtors' Sale Motion, the Debtors sought, among other things, approval of the Debtors' proposed sale of certain assets of the GSM/GSM-R Business (the "GSM/GSM-R Business" or the "Assets"). The GSM/GSM-R Business has been described by the Debtors as the following:

> Global System for Mobile communications ("GSM") is a widely deployed wireless technology standard for mobile phone networks. Nortel is a supplier of GSM networks to operators globally and works with such operators to implement various GSM products. In this regard, Nortel develops, manufactures, tests, sells and supplies GSM access and core infrastructure, services and solutions (the "GSM Business"). Also based on GSM technology is a variant of GSM for Railways, which provides a secure communications

    system for railways operators (together with the GSM Business, the "GSM/GSM-R Business").

*See* Sale Motion, ¶ 10.

  5. Pursuant to the Sale Motion, a list of contracts related to the Assets is in the process of being assembled, and to the extent the Debtors find it necessary to assume and assign pursuant to Section 365 in conjunction with the sale, a separate motion will be filed. *See* Sale Motion, ¶ 21.

  6. While the Sale Motion provides that the Sellers will file a separate motion for the assumption and assignment of any contracts it deems necessary to assume and assign in conjunction with the sale, Motorola, in an abundance of caution and until Motorola is able to confirm that the Motorola Agreements are not nor may hereafter be sought to be assumed and assigned in conjunction with the sale of the GSM/GSM-R Business, Motorola files this objection on a protective basis.

  7. While Motorola does not rule out the possibility that it may be willing to accept assignment of the Motorola Agreements to one or more of the potential purchasers, Motorola cannot confirm such acceptance until the prospective assignee has been properly qualified as a Motorola supplier, and satisfactory documentation confirming the go-forward relationship has been finalized.

  8. Further, Motorola files this objection to preserve any of its rights, claims, defenses and objections it may have pursuant to section 365(n) of the Bankruptcy Code for any of the Motorola Agreements that are licenses under which the Debtors are the licensors.

## RELEVANT FACTS

9. On September 21, 2009, the Debtors filed its Sale Motion, wherein the Debtors state that a list of contracts related to the Assets was in the process of being assembled, and to the extent the Sellers determine it necessary to assume and assign contracts pursuant to section 365 of the Bankruptcy Code, they would file a separate motion seeking approval of for such assumption and assignment. *See* Sale Motion, ¶ 21.

10. On October 15, 2009, the court entered an order approving the Sale Motion (the "Order"). To the extent that the Debtors file a motion seeking to assume and assign any contracts in conjunction with the Sale pursuant to section 365, the motion may be heard at the Sale Hearing, if it is filed twenty (20) days prior to such hearing, otherwise, the motion will be heard separately. *See* Order, ¶ 10.

11. While Motorola is not aware of the filing of any such motion for the assumption and assignment of contracts pursuant to section 365 in conjunction with the sale of the GSM/GSM-R Business, Motorola files this Objection on a protective basis to the extent that the Motorola Agreements are or may hereafter be sought to be assumed and assigned in conjunction with the sale.

12. Motorola files this Objection to reserve all rights, claims and objections of Motorola, including but not limited to, Motorola's objection to the cure amount, Motorola's objection to the assumption and assignment of the Motorola Agreements, Motorola's right to make a demand for adequate assurance of future performance, Motorola's right to a claim of default arising under the Motorola Agreements, Motorola's right to enforce a license pursuant to section 365(n), while preserving any and all rights Motorola is entitled to pursuant to the Motorola Agreements and under applicable law.

## II. OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE MOTOROLA AGREEMENTS

13. To the extent that the Motorola Agreements are or may be sought to be assumed and assigned in connection with the sale of the GSM/GSM-R Business, Motorola objects to such assumption and assignment and withholds consent to any such assignment to the prevailing purchaser at the sale (the "Purchaser"), unless and until Motorola has had an opportunity to qualify that Purchaser as an approved Motorola supplier, ensure that Motorola's confidential and proprietary information is protected, and to document the go forward arrangements accordingly.

14. The Motorola Agreements are executory contracts within the meaning of 11 U.S.C. § 365. Section 365 permits a debtor-in-possession to assume or reject executory contracts, subject to certain limitations contained in the statute. *See* 11 U.S.C. §365(c).

15. Among those limitations, section 365(c)(1) precludes the Debtors from assuming or assigning an executory contract where:

> (A) applicable law excuses a party . . . to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
>
> (B) such party does not consent to such assumption or assignment

11 U.S.C. § 365(c)(1).

11. Section 365(c)(1), as interpreted by many federal courts, prevents the assumption of executory contracts by the debtor in possession where "applicable nonbankruptcy law makes an executory contract nonassignable because the identity of the nondebtor party is material." *In re Catapult Entertainment, Inc.,* 165 F.3d 747, 754-755 (9th Cir. 1999); *See also In re West Electronics, Inc.,* 852 F.2d 79, 83 (3d Cir. 1988); *In re Access Beyond Technologies, Inc.,* 237 B.R. 32 (Bankr. D. Del. 1999).

12. Moreover, the court in *Catapult* noted that § 365(c)(1) protects a non-debtor party to a contract from being forced to accept performance from or render performance to a party other than the one with which the party originally contracted, where applicable law excuses the non-debtor party. 165 F.3d at 752.

13. Under Illinois law, which is the law governing the Supply Agreement, "In the case of an executory contract, . . . the rule is well settled that the contract generally is not assignable without the consent of both parties thereto, where the personal acts and qualities of one of the parties form a material and ingredient part of the contract." *Ginsburg v. Bull Dog Auto Fire Insurance Association of Chicago*, 328 Ill. 571, 574 (1928).

14. The Motorola Agreements are a classic example of the sort of undertaking "where the personal acts and qualities of one of the parties form a material and ingredient part of the contract." Motorola goes to tremendous time and effort to qualify those suppliers and vendors most capable of participating in the development, manufacture, distribution and sale of Motorola's highly specialized products and services. If Motorola were forced to accept performance without these safeguards, it would be, to say the least, highly problematic for Motorola's efforts to assure supply chain reliability and quality. In addition, Motorola's interests would be harmed substantially if it were forced to share confidential and proprietary information with a competitor or to share such information without sufficient safeguards against improper use or disclosure of that information.

15. As a result, there is sufficient "applicable law" to prevent the Debtors from assuming or assigning the Motorola Agreements absent Motorola's consent. *See, e.g., In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *In re Access Beyond Technologies, Inc.*, 237 B.R. 32, 48 (Bankr. D. De. 1999); *see also In re Catapult Entertainment, Inc.*, 165 F.3d 747 (9th

Cir. 1998). Motorola therefore objects to the assumption or assignment of the Motorola Agreements in light of *In re West* and *In re Catapult Entertainment, Inc., supra.*, absent an opportunity for Motorola to qualify the proposed purchaser and assignee as a supplier, and to conclude appropriate, go forward contractual arrangements with that party.

### III. OBJECTION TO CURE AMOUNT

16. Without waiving the foregoing objection to the assumption and assignment of the Motorola Agreements and reserving any and all rights, claims and actions pursuant to its objection, defaults arising under the Motorola Agreements must be cured as of the time of the assumption. *See* 11 U.S.C. § 365(b)(1).

17. As noted above, Motorola has not yet been able to ascertain which, if any, of the Motorola Agreements are proposed to be assumed and assigned. It necessarily follows that Motorola has not had a sufficient opportunity to verify any cure proposed with respect to any such agreements.

18. Motorola therefore objects to any cure proposed with respect to any of the Motorola Agreements, until such time as Motorola has had an opportunity to confirm the status of performance thereunder.

### IV. DEMAND FOR ADEQUATE ASSURANCE

19. Debtors must provide adequate assurance of future performance as a prerequisite to the assumption of an executory contract. *See* 11 U.S.C. § 365(b). Motorola, without waiving and expressly reserving all other rights, claims and objections, and specifically Motorola's objection to the assumption and assignment of the Motorola Agreements, demands adequate assurance of future performance of any and all of the Motorola Agreements proposed to be assigned, all as required by 11 U.S.C. § 365(b)(1).

20. Pursuant to section 365(f), a debtor may only assign an executory contract if it assumes the contract pursuant to the terms of section 365, and provides adequate assurance of future performance by the assignee of such contract, whether or not there has been a default in such contract or lease.

21. Motorola demands adequate assurance that Motorola's confidential and proprietary information that is shared pursuant to the Motorola Agreements will be safeguarded by the appropriate protective procedures, particularly if the proposed assumption of the Motorola Agreements would entail any sharing or disclosure of such confidential and proprietary information to a party that is or potentially could be a competitor of Motorola.

22. No Motorola Agreement may be assigned without a showing of adequate assurance of future performance, and Motorola hereby makes a demand for such a showing.

## V. RESERVATION OF RIGHTS PURSUANT TO SECTION 365(n)

23. To the extent that any of the Motorola Agreements represent licenses sought to be rejected in connection with the sale of the GSM/GSM-R Business, Motorola further reserves all rights, claims, defenses and objections applicable under Section 365(n) of the Bankruptcy Code.

24. Where a licensor-debtor decides to reject the license, the Bankruptcy Code grants the licensee certain limited rights to retain the licensed property. *See* 11 U.S.C. §365(n).

25. Section 365(n) further provides that,

Unless and until the trustee rejects such contract, on the written request of the licensee the trustee shall –

> (A) to the extent provided in such contract or any agreement supplementary to such contract - (i) perform such contract; or (ii) provide to the licensee such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law) held by the trustee; and

> (B) not interfere with the rights of the licensee as provided in such contract, or any agreement supplementary to such contract, to such

intellectual property (including such embodiment), including any right to obtain such intellectual property (or such embodiment) from another entity.

26. As noted above, Motorola has not yet been able to ascertain which, if any, of the Motorola Agreements are proposed to be assumed and assigned or rejected. It necessarily follows that Motorola has not had a sufficient opportunity to verify the rejection of any licenses under which the Debtors are the licensors.

27. Motorola therefore reserves any rights, claims, defenses or objections that are available to Motorola pursuant to section 365(n) to the extent that any Motorola Agreements are licenses wherein the Debtors are the licensors, including but not limited to Motorola's right to preserve intellectual property rights provided by any such licenses.

## VI. RESERVATION OF RIGHTS

28. Motorola is willing to meet with any and all proposed purchasers and assignees of the Motorola Agreements, and to consider, in its discretion, whether such parties may properly be qualified as Motorola suppliers. Until Motorola has had an opportunity to conduct that due diligence, and to consent to the proposed assignment, Motorola respectfully submits that any assignment of the Motorola Agreements should not be approved due to the resulting failure of the Debtors to satisfy the elements of 11 U.S.C. § 365(c).

29. Without waiving its objection to the assignment of the Motorola Agreements, Motorola also reserves the right to object to the cure amount, the right to not be bound to such corresponding cure amount, the right to assert claims for any default arising under the Motorola Agreements, and reserves the right to amend or supplement this statement and/or object to any cure amount.

30. Without waiving its objection to the assignment of the Motorola Agreements, Motorola also demands adequate assurance of future performance, and reserves the right to make

future demands for such assurance pursuant to section 365(b), including the development of procedures to protect and safeguard Motorola's confidential and proprietary information that may be disclosed pursuant to the Motorola Agreements.

31. Motorola further reserves all rights, claims, defenses and objections stated herein, including but not limited to, those available pursuant to section 365(n), under the Motorola Agreements and under applicable law, and the right to raise these rights, claims, defenses, and objections to any proposed assumption and assignment.

32. Motorola reserves the right to amend, supplement, or otherwise modify this Objection, including, without limitation, the right to contest the cure amount asserted by the Debtors in relation to the assumption and assignment of any contracts with Motorola.

WHEREFORE, for the foregoing reasons, Motorola, Inc. respectfully requests that this Court:

(a) decline to approve any assignment of the Motorola Agreements until such time as Motorola has expressly consented to such assignment, all as required by 11 U.S.C. § 365(c);

(b) declare that Motorola reserves the right to challenge any proposed cure under the Motorola Agreements, to request further adequate assurance of future performance thereunder (including the development of procedures to protect any of Motorola's confidential and proprietary information that is shared or disclosed pursuant to the Motorola Agreements), or to challenge any rejection of or to preserve the intellectual property rights provided by a license under which the Debtors are the licensors; and

  (c)  grant such other and further relief as may be just and fitting under the circumstances.

Date: November 25, 2009
   Wilmington, Delaware

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ E.E. Allinson III*

William D. Sullivan (No. 2820)
William A. Hazeltine (No. 3294)
Elihu E. Allinson, III (No. 3476)
4 East 8th Street, Suite 400
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

-and-

Jonathan W. Young
Mary Olson
WILDMAN, HARROLD, ALLEN & DIXON LLP
225 West Wacker Drive
Chicago, IL 60606-1229
Telephone: (312) 201-2000
Facsimile: (312) 201-2555
*Attorneys for Motorola, Inc.*

**CERTIFICATE OF SERVICE**

    I, Elihu E. Allinson, III, do hereby certify I am not less than 18 years of age and that on this 25th day of November 2009, I caused a copy of the within *Objection of Motorola, Inc. to Debtors' Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving the Notice Procedures, and (C) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving the Sale of Certain Assets of Debtors' GSM/GSM-R Business* to be served upon the parties on the attached service list via U.S. Mail, First Class, postage pre-paid.

    Under penalty of perjury, I declare the foregoing to be true and correct.

November 25, 2009                              */s/ Elihu E. Allinson, III*
Date                                                  Elihu E. Allinson, III

*In re Nortel Networks, Inc., et al.*
Case No. 09-10138, jointly administered
U.S. Bankruptcy Court, District of Delaware

## SERVICE LIST

James L. Bromley
Lisa M. Schweitzer
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY  10006
Facsimile:  212-225-3999
*Counsel to Debtors*

Derek C. Abbott
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
Wilmington DE  19801
Facsimile:  302-658-3989
*Counsel to Debtors*

Roland Hlawaty
Milbank, Tweed, Hadley & McCloy
One Chase Manhattan Plaza
New York, NY  10006
Facsimile:  212-822-5735
*Counsel to Bondholder Group*

Fred S. Hodara
Stephen Kuhn
Kenneth Davis
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY  10036
Facsimile:  212-872-1002
*Counsel to Committee*

Christopher M. Samis
Richards, Layton & Finger, P.A.
One Rodney Square
920 N. King Street
Wilmington, DE  19801
Facsimile:  302-651-7701
*Counsel to Committee*