IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
*In re*                                                   :    Chapter 11
                                                          :
                                                          :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                        :
                                                          :    Jointly Administered
                   Debtors.                               :
                                                          :    Hearing date: December 15, 2009 at 10:00 AM (ET)
                                                          :    Objections due: December 8, 2009 at 4:00 PM (ET)
                                                          :
----------------------------------------------------------X

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF AN UNEXPIRED LEASE OF NONRESIDENTIAL REAL PROPERTY AND A RELATED SUBLEASE PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to sections 105(a) and 365 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order substantially in the form attached hereto as Exhibit C, (i) approving the assumption by NNI of that certain unexpired lease of nonresidential real property dated as of March 7, 1997, between Technology Park X Limited Partnership, as landlord (the "Landlord"), and NNI (f/k/a Northern Telecom Inc.) as tenant, for premises (the "Premises") located at 600 Technology Park Drive, Billerica, Massachusetts (together with any amendments, supplements

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

and modifications, the "Lease") to Avaya Inc. ("Avaya") and that certain sublease dated as of August 1, 2005 between NNI, as sublandlord, and Raytheon Company ("Raytheon") as subtenant, for approximately 135,825 rentable square feet of space at the Premises referenced above (together with any amendments, supplements and modifications, the "Sublease"); (ii) approving the assignment of the Lease and the Sublease to Avaya; and (iii) granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006.

### Background

**A.    Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.  Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.  On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

11. On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B. Debtors' Corporate Structure and Business**

12. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

13. By this Motion, the Debtors seek an order authorizing the Debtors to assume the Lease and the Sublease and to assign the Lease and the Sublease to Avaya upon the closing of the sale of the Enterprise Solutions Business (as defined below) to Avaya (the "Closing").[4] The date upon which the Closing is consummated shall be referred to herein as the "Closing Date".

---

[4] The Debtors' decision to assume and assign the Lease and the Sublease are subject to Court approval and consummation of the sale of the Enterprise Solutions Business to Avaya. Accordingly, the Debtors shall be deemed to have assumed and assigned the Lease and the Sublease as of and effective only upon entry of an order approving the assumption by NNI and assignment to Avaya of the Lease and the Sublease and the Closing. Absent a closing

## Facts Relevant to this Motion

14. As of the Petition Date, the Debtors were lessees under approximately seventy-five (75) leases of nonresidential real property. Since the Petition Date, the Debtors have entered into one (1) new lease, assumed one (1) lease, rejected fifty (50) leases and three (3) leases have expired by their terms in the ordinary course of business. Thus, the Debtors are currently lessees under approximately eighteen (18) unexpired leases of nonresidential real property, including the Lease.[5]

15. On May 7, 2009, this Court entered an Order Pursuant to Section 365(d)(4) of the Bankruptcy Code Extending The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Nonresidential Real Property, extending the Debtors' time to assume or reject unexpired leases of nonresidential real property through and including August 12, 2009 [D.I. 717] (the "First Extension Order").

16. On June 26, 2009, this Court entered an Order Under 11 U.S.C. 363(b)(1) And 365(d)(4) Granting Extension Of The Deadline By Which The Debtors Must Assume Or Reject Unexpired Leases Of Non-Residential Real Property Upon Receipt Of Written Consent From Lessors, extending the deadline by which the Debtors must assume or reject an unexpired lease of nonresidential real property upon the Debtors' receipt of a landlord's written consent to such extension [D.I. 965] (the "Second Extension Order").

---

that includes the Lease and the Sublease, each of the Lease and the Sublease shall be deemed neither assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code and the Second Extension Order (as defined below).

[5] The leases described in this sentence, including the Lease, include all unexpired leases of nonresidential real property to which the Debtors are lessees and have not previously assumed or rejected. Inclusion or omission of any instrument in this paragraph does not constitute an admission by the Debtors that such instrument is or is not a true lease or otherwise.

17. Pursuant to paragraph 6 of the Second Extension Order, on August 11, 2009, the Debtors provided notice to the Court of those landlords that had agreed to extensions under section 365(d)(4)(B)(ii) [D.I. 1305] (the "Extension Notice"). Exhibit A of the Extension Notice indicated that the Landlord consented to an extension of the deadline by which the Debtors must assume or reject the Lease to March 31, 2010.

18. On July 20, 2009, the Debtors filed a motion seeking approval of the sale (the "Sale") of certain assets of, and equity interests in, the Debtors' Enterprise Solutions business (the "Enterprise Solutions Business") to Avaya, subject to the receipt of higher and better offers [D.I. 1131]. On September 16, 2009, the Court entered an order approving the sale to Avaya (the "Sale Order") as the successful bidder upon completion of a vigorous auction [D.I. 1514].

19. In connection with the Sale, and pursuant to that certain Asset and Share Sale Agreement (the "Agreement") between Avaya, NNI, and certain of NNI's affiliates, dated September 14, 2009, Avaya has designated the Lease and the Sublease for assumption and assignment. As such, the transfer of the Lease and the Sublease to Avaya by NNI is necessary to consummate the Sale, which this Court has determined is in the best interests of the Debtors, their estates and their creditors.

20. The Debtors' payment history with respect to their leased property portfolio is excellent. The Debtors have satisfied their monthly payment obligations in a timely manner under the Lease. During the pendency of these chapter 11 cases, the Debtors have continued to meet their payment obligations under the Lease. As of the date of this Motion, to the Debtors' knowledge, other than the Cure Amounts (defined in paragraph 24, below) the Debtors have fulfilled all of their material obligations under the Lease and have not received a notice of default from the Landlord.

21. The Debtors' history of performance of their obligations as sublandlord under the Sublease is excellent. The Debtors have fulfilled their obligations in a timely manner under the Sublease. As of the date of this Motion, to the Debtors' knowledge, the Debtors have fulfilled all of their material obligations under the Sublease and have not received a notice of default from Raytheon.

### Basis for Relief

22. Section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 365(a) of the Bankruptcy Code authorizes a debtor in possession to assume an unexpired lease subject to the bankruptcy court's approval. 11 U.S.C. § 365(a).[6] Section 365(b) of the Bankruptcy Code requires a debtor in possession to satisfy certain requirements at the time of assumption if a default exists under the subject contract, lease or agreement to be assumed. 11 U.S.C. § 365(b).[7] Where a debtor is seeking to assume and assign a lease, section 365(f) of the Bankruptcy Code requires the debtor to "assume" the lease in

---

[6] Section 365(a) of the Bankruptcy Code provides:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

[7] Section 365(b) of the Bankruptcy Code states, in relevant part:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
(C) provides adequate assurance of future performance under such contract or lease.

8

accordance with section 365 and requires the assignee of the lease to provide adequate assurance of future performance. 11 U.S.C. § 365(f)(2).[8]

### A. The Debtors Have Exercised Sound Business Judgment in Determining to Assume and Assign the Lease and the Sublease to Avaya

23. When determining whether to approve a debtor's decision to assume or reject an executory contract or unexpired lease, courts in this Circuit apply the "business judgment" rule. See, e.g., Sharon Steel Corp. v. National Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.), 872 F.2d 36, 40 (3d Cir. 1989); see NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984) (describing the business judgment test as the "traditional" test); In re III Enterprises, Inc. V, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment–a standard which we have concluded many times is not difficult to meet.") (citations omitted). So long as assumption of the contract or lease is an exercise of the debtor's sound business judgment and the debtor otherwise satisfies the requirements of section 365(b), the assumption should be approved. Id.

24. Upon this Court's entry of an order granting this Motion, the Debtors will enter into an assumption and assignment agreement with Avaya to be effective as of the Closing (the "Assignment Agreement"), in substantially the form attached hereto as Exhibit A. In connection with the assumption and assignment of the Lease and the Sublease, the Debtors may be obligated

---

[8] Section 365(f) of the Bankruptcy Code provides, in relevant part:

> (f) (1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease under paragraph (2) of this subsection.
>
> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
>> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

9

to cure certain defaults, if any, under the Lease and the Sublease (the "Cure Amounts").[9] Pursuant to section 2.1.7. of the Agreement, Avaya shall directly pay or otherwise provide for payment of such Cure Amounts. In light of the foregoing, the requirements of section 365(b)(1)(A)-(B) have been or will be satisfied.

25. Because the Debtors have designated Avaya as assignee of the Lease and the Sublease, defaults, if any, have been or will be cured and the assumption and assignment of the Lease and the Sublease are necessary to satisfy the obligations of the Debtors under the Agreement, the Debtors' decision to enter, and seek approval of, the Assignment Agreement is clearly within the Debtors' sound business judgment and the Debtors have demonstrated good, sufficient and sound business judgment.

### B. Avaya Has Provided Adequate Assurance to the Landlord and Raytheon

26. By demonstrating the financial wherewithal to close a $900,000,000 transaction with the Debtors and their affiliates, Avaya has provided adequate assurance of future performance to the Landlord and Raytheon. See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (holding that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."); In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when the prospective assignee of a lease from the debtors has the financial resources and has expressed a willingness to devote sufficient funding to the business in order to give it a strong likelihood of succeeding; "chief determinant of adequate assurance of future performance is whether rent will be paid"). Additionally, Avaya is a leader in enterprise communications systems, providing

---

[9] The Debtors' proposed Cure Amounts may be found on the chart attached hereto as Exhibit B.

unified communications and contact center solutions to leading businesses and organizations worldwide. Avaya's combination of communications applications, software and services serves to help companies by integrating multiple forms of communications, including telephony, e-mail, instant messaging and video into their business practices. Avaya employs approximately 16,000 people worldwide, including 2,300 research and development professionals, and has more than 4,000 channel partners worldwide, including system integrators, service providers, value-added resellers and business partners that provide sales and service support. Avaya has achieved leadership positions in unified communications, including telephony systems, enterprise messaging, audio conferencing, hardware maintenance and software support services as well as contact center solutions. Additional information regarding Avaya is available on the Avaya website at www.avaya.com. Accordingly, the requirements of section 365(b)(1)(C) and 365(f)(2) have been satisfied.

### C. Waiver of the 10-Day Stay Is Appropriate

27. Finally, Bankruptcy Rule 6006(d) provides that "an order authorizing the [debtor] to assign an executory contract or unexpired lease under § 365(f) is stayed until the expiration of 10 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6006(d). The Debtors submit that there is sufficient justification for a waiver of the ten-day stay of an order approving this Motion, given the current uncertainty as to when the Closing Date will occur.

28. Based on the foregoing, the Debtors submit that the requirements of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006(d) have been satisfied and respectfully request that this Court approve the assumption and assignment of the Lease and the Sublease.

## Notice

29. Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; (iv) the Landlord; (v) Raytheon; and (vi) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

30. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: November 25, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*