**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
: 
:                Chapter 11
: 
*In re*                                                 :                Case No. 09-10138 (KG)
: 
Nortel Networks Inc., *et al.*, [1]                     :                Jointly Administered
: 
Debtors.                 :
: 
:                **RE: D.I. _____**
:
---------------------------------------------------------X

**ORDER AUTHORIZING AND APPROVING
SALE OF DEBTORS' GSM/GSM-R
FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES**

Upon the motion dated September 30, 2009 (the "Motion"),[2] of Nortel Networks Inc. and

certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), for

entry of an order, as more fully described in the Motion, authorizing and approving sale of the

Debtors' right, title and interest in the GSM/GSM-R Business (the "Subject Assets") to the

Successful Bidder, free and clear of all liens, claims, and interests, pursuant to sections 105 and

363 of title 11 of the Bankruptcy Code [D.I. 1587]; and the Court having entered an order (the

"Bidding Procedures Order") approving, among other things, the Bidding Procedures (attached

as Exhibit 1 to the Bidding Procedures Order) on October 15, 2009 based upon the evidence

presented at the bidding procedures hearing held on October 15, 2009 (the "Bidding Procedures

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems, Inc. (9769), Nortel Altsystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Agreement (as defined herein).

Hearing") [D.I. 1676]; and an Auction (as defined in the Bidding Procedures Order) having been held on November 24, 2009 in accordance with the Bidding Procedures Order; and at the conclusion of said Auction Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser") was chosen as the Successful Bidder in accordance with the Bidding Procedures for certain of the Subject Assets; and the Debtors having filed a Notice of Successful Bidder designating the Purchaser as the purchaser of the Assets (as defined in the Sale Agreement referred to below) pursuant to that certain asset sale agreement dated as of  November 24, 2009, a copy of which is attached hereto as Exhibit A (the "Sale Agreement"), by and among the Purchaser and certain of the Debtors, certain foreign debtor affiliates and certain non-debtor affiliates (collectively, the "Sellers"); and the Court having reviewed and considered the Motion and conducted a hearing on the Motion on [●] (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Sale Agreement and the transactions contemplated thereby (the "Transactions"); and the Court having reviewed and considered the Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing and these chapter 11 cases, and after due deliberation thereon, and good cause appearing therefore it is hereby

FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. § 157(b)(1) and 1334(b);

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding within the meaning of 28 U.S.C. §

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

157(b)(2);

C.      The statutory predicates for the relief requested in the Motion are

Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 6004, 6006, 9014 and

9018, and Local Rules 6004-1 and 9018-1;

D.      Notice of the Motion and the Sale Hearing has been provided to (A) (i) all

entities reasonably known to have expressed an interest in a transaction with respect to the

Purchased Assets (as defined below) during the past nine (9) months, (ii) all entities reasonably

known to have asserted any interest in the Purchased Assets, (iii) the attorneys general for all

states in which Purchased Assets are located, all federal and state taxing authorities, the SEC, the

IRS, and the Department of Labor and similar state labor or employment agencies, (iv) all parties

entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and

Assigned Contracts, (vi) all known or potential creditors of the Debtors and (viii) the Official

Committee of Unsecured Creditors (the "Committee"); and (B) other parties through publication

of the Sale Notice, all in accordance with and as provided by the Bidding Procedures Order;

E.      As evidenced by affidavit of publication filed with the Court, notice of the

Sale Hearing was published in The Wall Street Journal (National Edition), The Globe and Mail

(National Edition) and The Financial Times (International Edition) on October 21, 2009;

F.      Based upon the affidavits of service and publication filed with the Court:

(a) notice of the Motion and the Sale Hearing was adequate and sufficient under the

circumstances of these chapter 11 cases and these proceedings and complied with the various

applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the

Bidding Procedures Order and no other or further notice is necessary; and (b) a reasonable

opportunity to object and be heard with respect to the Motion and the relief requested therein was

afforded to all interested persons and entities;

G.    The legal and factual bases set forth in the Motion and the record in these proceedings establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest;

H.    The Assets (as defined in the Sale Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Sale Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates;

I.    The Debtors and their professionals marketed the Purchased Assets and conducted the marketing and sale process as set forth in and in accordance with the Motion. Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets;

J.    The Bidding Procedures were substantively and procedurally fair to all parties.  The Debtors conducted the sale process (including the Auction) in accordance with the Bidding Procedures;

K.    After the conclusion of the Auction, which was held on November 24, 2009, the Debtors, along with other Sellers under the Sale Agreement and the EMEA Agreement, determined that the highest and best Qualified Bid (as defined in the Bid Procedures Order) for the Assets was that of the Purchaser;

L.    Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute the Sale Agreement, the Ancillary Agreements (as defined in the Sale Agreement) and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Sale Agreement and

(iii) has taken all company action necessary to authorize and approve the Sale Agreement, the

Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the consummation by

the Debtors of the Transactions.  No consents or approvals, other than those expressly provided

for in the Sale Agreement or this Order, are required for the Debtors to close the Sale and

consummate the Transactions;

M.     The Sale Agreement and the Sale were negotiated and have been and are

undertaken by the Debtors and the Purchaser at arm's length without collusion or fraud, and in

good faith within the meaning of Bankruptcy Code section 363(m).  As a result of the foregoing,

the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy

Code;

N.     The total consideration provided by the Purchaser for the Purchased

Assets is the highest and best offer received by the Debtors, and the Purchase Price (as defined in

the Sale Agreement) constitutes (a) reasonably equivalent value under the Bankruptcy Code and

Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent

Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any

other applicable laws of the United States, any state, territory or possession, or the District of

Columbia, for the Purchased Assets;

O.     The Purchaser would not have entered into the Sale Agreement and would

not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not

free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if

the Purchaser would, or in the future could, be liable for any of such liens, claims and interest.  A

sale of the Purchased Assets other than one free and clear of all Claims and Interests (each as

defined herein) would yield substantially less value for the Debtors' estates, with less certainty,

than the Sale.  Therefore, the Sale contemplated by the Sale Agreement is in the best interests of the Debtors, their estates and creditors, and all other parties in interest;

P.    The Debtors may sell the Purchased Assets free and clear of all Interests to the extent provided in the Sale Agreement because, with respect to each creditor asserting an Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been satisfied.  Those holders of Interests who did not object or who withdrew their objections to the Sale or the Motion are deemed to have consented to the Motion and Sale pursuant to Bankruptcy Code § 363(f)(2).  Any holders of Interests who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f);

Q.    Neither the Debtors nor the Purchaser engaged in any conduct that would cause or permit the Sale Agreement or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code;

R.    The Purchaser is not holding itself out to the public as a continuation of the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders existed between the Purchaser and any of the Debtors.  Pursuant to the Sale Agreement, the Purchaser is not purchasing all of the Debtors' assets in that Purchaser is not purchasing any of the Excluded Assets (as defined in the Sale Agreement), and Purchaser is not holding itself out to the public as a continuation of the Debtors.  The conveyance of the Purchased Assets pursuant to the Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser

6

does not constitute a successor to the Debtors or the Debtors' estates.  Upon the Closing (as defined in the Sale Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities (as defined in the Sale Agreement).  Except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Assets purchased.  The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories;

S.    The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser (or a Designated Purchaser) and to assume the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases and sublease or license, as appropriate, same to the Purchaser (or a Designated Purchaser), in each case, in connection with the consummation of the Sale and the assumption, assignment, and sale of Assumed and Assigned Contracts to the Purchaser and the assumption and sublease or license, as appropriate, the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases to the Purchaser (or a Designated Purchaser) is in the best interests of the Debtors, their estates, their creditors, and all parties in interest.  The Assumed and Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts is reasonable and enhances the value of the Debtors' estates.  The cure amounts required to be paid pursuant to section 365(b) that are mutually agreed to be paid by the Debtors and/or the Purchaser, as

applicable, and the counterparty to the applicable Assumed and Assigned Contract, the Assumed and Subleased Real Estate Lease or Assumed and Licensed Real Estate Lease or as ordered to be paid by this Court pursuant to a final order (the "Cure Amounts") are deemed the entire cure obligation due and owing under the Assumed and Assigned Contracts under Bankruptcy Code section 365;

T.     Each and every provision of the Assumed and Assigned Contracts, the Assumed and Subleased Real Estate Leases or Assumed and Licensed Real Estate Leases or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract, Assumed and Subleased Real Estate Lease or Assumed and Licensed Real Estate Lease has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365;

U.     Upon the payment of the Cure Amount, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts, the Assumed and Subleased Real Estate Leases or Assumed and Licensed Real Estate Leases;

V.     The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365;

W.     Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order;

X.     Entry into the Sale Agreement and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.  The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the

Purchased Assets to the Purchaser.  Additionally, (i) the Sale Agreement constitutes the highest and best offer for the Purchased Assets; (ii) the Sale Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; and (iv) the Sale Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than would be provided by any other presently available alternative.

Y.      The transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and will vest the Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, free and clear of (i) all Claims and Interests of any kind or nature whatsoever (other than the Assumed Liabilities and the Permitted Encumbrances (as defined in the Sale Agreement)), and (ii) all Excluded Liabilities (as defined in the Sale Agreement), claims as defined in 11 U.S.C. § 101(5), rights or causes of action (whether in law or in equity), obligations, demands, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise , including any "Claims" as defined in the Sale Agreement (collectively, the "Claims"), other than the Assumed Liabilities and the Permitted Encumbrances;

Z.      The Sale does not constitute a *sub rosa* chapter 11 plan;

AA.     Time is of the essence in consummating the Sale.  In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Sale Agreement.  Accordingly, there is a cause to lift the stay contemplated by the Bankruptcy Rules 6004(h) and 6006(d);

BB.    The Sale contemplated by the Sale Agreement is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and

THEREFORE, IT IS HEREBY ORDERED THAT:

1.    The relief requested in the Motion is GRANTED.

2.    All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein, are hereby overruled on the merits.

3.    Pursuant to sections 105 and 363 of the Bankruptcy Code and subject to the approval of the sale by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors and the satisfaction (or waiver, if permitted under the Sale Agreement) of each condition under the Sale Agreement, (a) the Sale Agreement and the Ancillary Agreements, (b) the Sale of the Purchased Assets, and (c) consummation of the Transactions are hereby approved and authorized.

4.    Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contracts or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, under section 365 of the Bankruptcy Code, to the extent not already assumed, the Debtors are authorized to assume the Assumed and Assigned Contracts and to assume and assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing.

5.    To the extent not already assumed, the Debtors' assumption of the Assumed and Assigned Contracts is subject to Court approval and consummation of the sale of the Assets to the Purchaser, and, solely as it relates to the Assumed and Subleased Real Estate

Leases and Assumed and Licensed Real Estate Leases, the Debtors' and the Purchaser's entry into subleases and licenses, as appropriate, as set forth in the Sale Agreement. To the extent that an objection by a Counterparty to any Assumed and Assigned Contract is not resolved prior to the Closing Date (as defined in the Sale Agreement) or the Debtors and the Purchaser have failed to enter into a sublease or license with respect to any Assumed and Subleased Real Estate Lease or Assumed and Licensed Real Estate Lease, the Debtors, in consultation with the Purchaser, but subject in all respects to the terms and conditions of the Sale Agreement, may elect to (i) not assume such Assumed and Assigned Contract, (ii) postpone the assumption of such Assumed and Assigned Contract until the resolution of such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assumption, subject to the sharing provisions in section 2.1.7 of the Sale Agreement with respect to Cure Amounts, Debtors or Purchaser in accordance with the terms of the Sale Agreement shall pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or other agreement between the Debtors and the Counterparty, the Counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled. Any Cure Amounts outstanding on the Closing Date shall be paid to the appropriate Counterparty as a condition subsequent to such assumption and assignment of the relevant Assumed and Assigned Contract.

6.      Upon the Closing, (a) the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to the Purchaser free and clear of any and all interests pursuant to section 363 of the Bankruptcy Code, including (without limitation) all liens,

including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance on real property, easement, encroachment, right-of-way, restrictive covenant on real property, real property license, lease or conditional sale arrangement (collectively, including "Liens" as defined in the Sale Agreement, the "Liens") and debts, liabilities and obligations, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured or determined or undeterminable, known or unknown, including those arising under any Law or Action and those arising under any Contract or otherwise, including any Tax liability (other than Assumed Liabilities and the Permitted Encumbrances) (collectively, the "Liabilities" and together with the Liens, the "Interests"), with such Interests to attach to the sale proceeds in the same validity, extent and priority as immediately prior to the sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in interest, and (b) except as otherwise expressly provided in the Sale Agreement, all such Interests (other than Assumed Liabilities and the Permitted Encumbrances) shall be and hereby are released, terminated and discharged as to the Purchaser and the Purchased Assets.

7.      The transfer of the Purchased Assets to the Purchaser pursuant to the Agreement shall be, and hereby is deemed to be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the Purchaser all right, title and interest of the Debtors in the Purchased Assets, free and clear of all Claims and Interests of any kind or nature whatsoever (other than the Permitted Encumbrances and the Assumed Liabilities), with any Interests attaching to the sale proceeds in the same validity, extent and priority as immediately prior to the transaction, subject to any rights, claims and defenses of the Debtors and other parties in interest.

12

8.      Upon the Closing, and except as otherwise expressly provided in the Sale Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and obligations of, the Debtors or any of the Debtors' predecessors or affiliates.  Without limiting the generality of the foregoing, and except as otherwise provided in the Sale Agreement, (a) the Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser shall have no liability or obligation in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

9.      As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

10.      Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured through the payment of the Cure Amounts; (ii) no other amounts will be owed by the Debtors, their

13

estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed and Assigned Contracts, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or defaults exist under the Assumed and Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

11.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser.  Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

12.     Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in any of the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases or in applicable non-bankruptcy law that prohibits, restricts or conditions the assumption and sublease or license of same, the Debtors may assume the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases and sublease or license same to the Purchaser.  Upon the assumption of the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases and the sublease or license of same to the Purchaser, the Assumed and Subleased Real Estate Leases and Assumed and Licensed Real Estate Leases shall be deemed valid and binding, in full force and effect in

14

accordance with their terms, subject to the provisions of this Order.

13.     The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m).  The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14.     Pursuant to sections 105 and 363 of the Bankruptcy Code and subject to the approval of the sale by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors and the satisfaction (or waiver, if permitted under the Sale Agreement) of each condition under the Sale Agreement, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:  (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed and Assigned Contracts; (iii) assume and sublease or license, as applicable, the Assumed and Sublease Real Estate Leases and Assumed and Licensed Real Estate Leases and (iv) perform, consummate, implement and close fully the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement.

15.     The Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:  (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Sale Agreement and this Order; and (ii) perform, consummate, implement and close fully the Sale Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement.

16.     The Purchaser is hereby authorized in connection with the consummation

15

of the Sale to allocate the Purchased Assets, including the Assumed and Assigned Contracts, among its affiliates, designees, assignees, and/or successors, including any Designated Purchaser (as defined in the Sale Agreement), in a manner as it in its sole discretion deems appropriate and to assign, license, sublicense, transfer or otherwise dispose of any of the Purchased Assets, including the Assumed and Assigned Contracts, to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded to the Purchaser under this Order and the Sale Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing; provided, however, subject to the terms of the Sale Agreement, the Debtors shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

17.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  Except as provided in the Sale Agreement, no brokers were involved in consummation of the Sale or the Transactions, and no brokers' commissions are due to any Person in connection with the Sale or the Transactions.

18.     The consideration provided by the Purchaser for the Purchased Assets under the Agreement shall be deemed for all purposes to constitute value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision, of the Bankruptcy Code.

19.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement, free and

clear of all Liens, Claims and Interests (other than Assumed Liabilities and the Permitted Encumbrances).

20.    Except as otherwise provided in the Sale Agreement and to the extent permitted by applicable law, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (other than Assumed Liabilities and the Permitted Encumbrances) and shall be delivered at the time of Closing to the Purchaser.

21.    Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Liens, Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (other than Assumed Liabilities and Permitted Encumbrances).

22.    The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtor or the Debtors' estates.  Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities.  Except for the Assumed Liabilities and Permitted Encumbrances, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the

17

time of Closing.  The Purchaser's operations shall not be deemed a continuation of the Debtors'

business as a result of the acquisition of the Assets purchased.

23.     This Order (a) is and shall be effective as a determination that other than

the Permitted Encumbrances and Assumed Liabilities, all Liens, Claims and Interests of any kind

or nature whatsoever existing as to the Purchased Assets prior to the Closing have been

unconditionally released, discharged and terminated, and that the conveyances described herein

have been effected, and (b) is and shall be binding upon and shall authorize all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units,

governmental departments or units, secretaries of state, federal, state, and local officials, and all

other persons and entities, who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to the Purchased Assets

conveyed to the Purchaser.  All such entities described above in this paragraph are authorized

and specifically directed to strike all recorded Interests against the Purchased Assets from their

records, official and otherwise.

24.     If any person or entity which has filed statements or other documents or

agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to

the Debtors before the Closing, in proper form for filing and executed by the appropriate parties,

termination statements, instruments of satisfaction, releases of liens and easements, and any

other documents necessary for the purpose of documenting the release of all Liens which the

person or entity has or may assert with respect to the Purchased Assets, the Debtors and the

Purchaser are hereby authorized to execute and file such statements, instruments, releases and

18

other documents on behalf of such person or entity with respect to the Purchased Assets.

25.     All counterparties to the Assumed and Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

26.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Agreement.

27.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

28.     To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Sale Agreement (including all ancillary documents executed in connection therewith), the terms of the Order shall govern.

29.     This Order applies only to assets owned by the Debtors.  Consequently, notwithstanding any other provision of this Order or the Sale Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of

creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities except to the extent otherwise agreed by such creditor in writing.

30.     Except as expressly provided in the Sale Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including, without limitation, any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

31.     Any amounts that become payable by the Debtors to the Purchaser pursuant to the Sale Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Sale Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Sale Agreement without further order of this Court.

32.     This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

33.     This Order and the Sale Agreement shall be binding in all respects upon and inure to the benefit of the Debtors, the Purchaser, and all creditors and interest holders of any of the Debtors, all non-debtor parties to the Assumed and Assigned Contracts, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Sale

Agreement shall not be subject to rejection or avoidance under any circumstances.

34.     Except with respect to enforcing the terms of the Sale Agreement, the Bidding Procedures, the Bidding Procedures Order and/or this Order, absent a stay pending appeal, no person shall take any action to prevent, enjoin or otherwise interfere with consummation of the transactions contemplated in or by the Sale Agreement, the Bidding Procedures or this Order to the maximum extent permitted by law.

35.     The failure specifically to include or make reference to any particular provisions of the Sale Agreement or any Ancillary Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement and the Ancillary Agreements are authorized and approved in their entirety.

36.     Subject to Section 10.6 of the Sale Agreement, until these cases are closed or dismissed, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

37.     The Sale Agreement, Ancillary Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the Court; *provided, however*, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby (it being understood, for the sake of clarity, that no such modification, amendment or supplement shall be deemed to be material or shall be deemed to materially change the economic substance of the transactions to the extent that the impact does not exceed two percent of the Purchase Price (as defined in the Sale Agreement)); and *provided further* that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or

21

with the prior consent of, the Official Committee, c/o Akin Gump Strauss Hauer & Feld LLP,

One Bryant Park, New York, NY 10036 (Attention:  Fred S. Hodara, Stephen Kuhn, and

Kenneth Davis).

38.     The Debtors are hereby authorized to perform each of their covenants and

undertakings as provided in the Sale Agreement prior to or after closing without further order of

the Court, including the payment of the Termination Payments on the terms set forth in the Sale

Agreement.

39.     As provided by Bankruptcy Rule 7062, this Order shall be effective and

enforceable immediately upon entry.  The provisions of Bankruptcy Rules 6004(g) and 6006(d)

staying the effectiveness of this Order for ten (10) days are hereby waived, and this Order shall

be effective, and the parties may consummate the transactions contemplated by the Sale

Agreement immediately upon entry of this Order.  Time is of the essence in closing the

transaction and parties to the Sale Agreement shall be authorized to close the sale as soon as

possible consistent with the terms of this Order.

40.     Notwithstanding any provision in the Bankruptcy Rules or Local Rules to

the contrary:  (i) the terms of this Order shall be immediately effective and enforceable upon its

entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or

realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and

without further delay, take any action and perform any act authorized under this Order.

41.     The provisions of this Order are nonseverable and mutually dependent.

42.     The Purchaser shall deposit proceeds of the Sale, subject to the price

adjustments and Purchaser's rights under the Sale Agreement and less applicable or value-added

taxes incurred by the Main Sellers (as such term is defined in the Sale Agreement) and the Other

Sellers (as such term is defined in the Sale Agreement) party to the Sale Agreement, and, to the extent agreed by the Sellers, any transaction costs, into an Escrow Account (as defined in the Interim Funding and Settlement Agreement, dated June 9, 2009 (the "IFA")).  In accordance with this Court's order approving and authorizing the transactions contemplated by the IFA, the proceeds in the Escrow Account shall not be distributed in advance of either (a) agreement of all of the Main Sellers and the Other Sellers that are parties to the Sale Agreement as to the distribution of such proceeds (subject to the prior consent of the Committee and the Bondholder Group acting in good faith in accordance with Section 12.g. of the IFA) or (b) in the case where the Main Sellers and the Other Sellers that are parties to the Sale Agreement fail to reach agreement, determination by the relevant dispute resolver(s) in accordance with the terms of the Interim Sales Protocol (as such term is defined in the IFSA and subject to the requirements of Section 12.g of the IFA), which Interim Sales Protocol shall be approved by the Court.  The Debtors are hereby authorized to enter into an escrow agreement with an escrow agent to establish an Escrow Account.

Dated: _____, 2009
      Wilmington, Delaware

                                               _____
                                             THE HONORABLE KEVIN GROSS
                                             UNITED STATES BANKRUPTCY JUDGE