## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
                                            :

                                            :

*In re*                                      :

                                            :

Nortel Networks Inc., *et al.*, [1]              :

                                            :

                               Debtors.     :

                                            :

                                            :

                                            :

                                            :

-----------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: December 2, 2009 at 11:00 a.m. (ET) [PROPOSED]**
**Objections due: December 1, 2009 at 4:00 p.m. (ET) [PROPOSED]**

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. §105(a) AND § 363 FOR AN ORDER (A) AUTHORIZING AND APPROVING THE GSM TERMINATION FEE AGREEMENT AND (B) GRANTING RELATED RELIEF

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>"), for the entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105 and 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), (A) authorizing and approving that certain GSM termination fee agreement attached hereto as <u>Exhibit B</u> (the "<u>GSM Termination Fee</u>

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Agreement"), entered into by and among Nortel Networks Corporation ("NNC"), Nortel

Networks Limited ("NNL") and NNI (together, the "Main Sellers") and Telefonaktiebolaget LM

Ericsson (publ) (together with its designees, the "Purchaser"), dated November 24, 2009; and (B)

granting them such other and further relief as the Court deems just and proper.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363 of

the Bankruptcy Code.

## Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) Bankruptcy Rules that provided for the joint administration of these cases and

for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's

direct corporate parent NNL (NNL, and together with NNC and their affiliates, including the

Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian

Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to:  (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.     On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.     On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

11.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

12.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**Relief Requested**

13.    By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) authorizing and approving the terms and conditions of the GSM Termination Fee Agreement, and (b) granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Motion**

14.    The Purchaser and its advisors have expended considerable time, energy, and resources pursuing the purchase of the Assets, and have engaged in extended, good faith negotiations.  The Sellers and the Purchaser have entered into that certain asset sale agreement among, inter alia, the Main Sellers and the Purchaser, dated November 24, 2009 (the "North American Purchase Agreement").  Additionally, certain of the Debtors' European affiliates and the Joint Administrators have entered into an independent Asset Sale Agreement, dated

November 24, 2009, with Kapsch Carriercom AG ("Kapsch") (the "EMEA Purchase Agreement").  The North American Purchase Agreement is the culmination of these efforts.  The GSM Termination Fee Agreement was entered into by the Main Sellers and the Purchaser to address certain issues among the Main Sellers and the Purchaser raised by their entry into the North American Purchase Agreement.

15.     Among other things, the GSM Termination Fee Agreement provides as follows:[4]

a.   Certain Covenants.

i.   Within two (2) Business Days of the date of the GSM Termination Fee Agreement, NNI shall file (a) a notice with this Court to inform all parties in interest that upon completion of the Auction, the Purchaser has been designated by the Sellers as the Successful Bidder, (b) a motion with this Court seeking approval of the assumption and assignment procedures for the Assumed and Assigned Contracts of the Debtors (the "Assignment Procedures Motion"), (c) a notice of a proposed final sale order approving and authorizing the Sale, which shall be substantially in the form of Exhibit 5.1 of the North American Purchase Agreement (with such changes thereto as the Purchaser and the Sellers both approve in their respective reasonable discretion) and (d) this Motion.

ii.   Within two (2) Business Days of the date of the GSM Termination Fee Agreement, NNL and NNC shall file (a) a motion with the Canadian Court seeking approval of the Canadian Approval and Vesting Order Motion with respect to the Sale and (b) a motion with the Canadian Court seeking approval of this Agreement.

iii.   The Main Sellers shall not withdraw the U.S. Sale Motion or the Canadian Approval and Vesting Order Motion with respect to the Sale.  For purposes hereof, the "U.S. Sale Motion" means that certain Debtors' Motion For Orders (I)(A) Authorizing And Approving The Bidding Procedures, (B) Approving The Notice Procedures, And (C) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving The Sale Of Certain Assets Of Debtors' GSM/GSM-R Business, which was filed on September 30, 2009 with the U.S. Bankruptcy Court.

[4] Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the GSM Termination Fee Agreement.  To the extent that there are inconsistencies between the description of the provisions of the GSM Termination Fee Agreement contained in this Motion and the terms and conditions of the GSM Termination Fee Agreement, the terms and conditions of the GSM Termination Fee Agreement shall control.

iv.  Subject to the availability of this Court, NNI shall use reasonable best efforts to prosecute and seek approval of each of the Assignment Procedures Motion, the Motion and the U.S. Sale Motion with respect to the Sale by December 2, 2009, <u>provided</u> that if this Court approves the Sale and grants the relief sought by the U.S. Sale Motion and the Canadian Court approves the Sale and grants the relief sought in the Canadian Approval and Vesting Motion prior to the approval of the Motion, the parties hereby agree that NNI may withdraw the Motion without incurring any obligation to pay the Termination Fee (as defined below).

b.  <u>Termination Payment</u>.  In the event of a breach by the Main Sellers of their obligations under Section 2 of the GSM Termination Fee Agreement (summarized in paragraph 15.a. above), the Purchaser shall provide written notice to the Main Sellers of such breach ("<u>Breach Notice</u>").  If the Main Sellers fails to cure the breach set forth in the Breach Notice within one (1) Business Day of actual receipt of the Breach Notice, the Main Sellers shall pay to the Purchaser, as the sole and exclusive remedy of the Purchaser, in immediately available funds within two (2) Business Days following such event, a cash fee of $3.09 million (the "<u>Termination Fee</u>").  The Sellers acknowledge and agree that the Termination Fee is a reasonable amount given the size and complexity of the transactions contemplated by this Agreement.  The Main Sellers' obligation to pay the Termination Fee shall, to the extent owed by the U.S. Debtors, constitute allowed administrative expense claims against the U.S. Debtors under Section 503(b) of the U.S. Bankruptcy Code and shall be entitled to a first priority Lien on the proceeds of an Alternative Transaction, if any.  For purposes hereof, "<u>Alternative Transaction</u>" means the sale, transfer or other disposition, directly or indirectly, including through an asset sale, stock sale, merger, amalgamation or other similar transaction, of all or a material portion of the Business or all or a material portion of the Assets (or a material portion of the EMEA Assets and the NNSA Assets, taken together as a whole) in a transaction or a series of transactions with one or more Persons other than the Purchaser, Kapsch and/or their respective Affiliates.

## **Basis for Relief**

16.  The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.

17.  Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's

7

assets in a way that ventures beyond an ordinary course transaction. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 395 (3d Cir. 1996).

18.     The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. <u>The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation)</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983); <u>In re Decora Industries, Inc.</u>, No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); <u>The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991); <u>Travelers Casualty and Surety Company v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).    A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward</u>, 242 B.R. at 153-54 (quoting <u>In re Lionel</u>, 722 F.2d at 1071).

19.     The purpose of the GSM Termination Fee Agreement is to ensure that the Debtors take all necessary and reasonable steps to ensure that the North American Purchase Agreement is approved by this Court in a timely manner. The Termination Fee provides the Purchaser with an appropriate remedy for liquidated damages in the event that the Debtors fail to fulfill their obligations under Section 2 of the Fee Agreement.    By providing these protections, the Termination Fee incentivized the Purchaser to enter into the North American Purchase Agreement.    The Debtors, therefore, respectfully submit that the entry into the GSM Termination Fee Agreement is supported by a sound business purpose and fully satisfies the requirements under section 363 of the Bankruptcy Code.

20.     The GSM Termination Fee Agreement meets each of the requirements under section 363 of the Bankruptcy Code.  The GSM Termination Fee Agreement is supported by a sound business purpose because by providing necessary protections to the Purchaser, it incentivized the Purchaser to enter into the North American Purchase Agreement and therefore facilitated the sale of Nortel's GSM/GSM-R Business.

## Notice

21.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

22.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  November 27, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Andrew R. Remming
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*