**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------X
                                                            :
In re                                                       :    Chapter 11
                                                            :
Nortel Networks Inc., et al.,¹                              :    Case No. 09-10138 (KG)
                                                            :
                Debtors.                                    :    Jointly Administered
                                                            :
                                                            :    Hearing date: December 2, 2009 at 11:00 AM
                                                            :    (ET) (proposed)
                                                            :    Objections due: December 1, 2009 at 4:00 PM
                                                            :    (ET) (proposed)
                                                            :
------------------------------------------------------------X
```

**DEBTORS' MOTION FOR AN ORDER (A) APPROVAL OF
THE ASSUMPTION AND ASSIGNMENT PROCEDURES IN CONNECTION
WITH THE SALE OF NORTEL'S GSM/GSM-R BUSINESS AND
(B) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, 9014 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the procedures as set forth below for the assumption and assignment of certain executory contracts (the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

"<u>Assignment Procedures</u>") in connection with the sale of substantially all of the North American GSM assets of the Debtors and certain of their affiliates (collectively, the "<u>Assets</u>") to Telefonaktiebolaget L M Ericsson (publ) (including any designated purchaser as defined in the North American Purchase Agreement, as defined below, "<u>Ericsson</u>" or the "<u>Purchaser</u>") in accordance with the terms and conditions of the Asset Sale Agreement entered into by the Debtors, certain of their affiliates, including without limitation, certain of the Canadian Debtors, and the Purchaser dated November 24, 2009, as may be subsequently amended (the "<u>North American Purchase Agreement</u>")[2]; (b) authorizing the Debtors to file certain documents under seal; and (c) granting the Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006, 9014 and 9018 of the Bankruptcy Rules, and Rule 9018-1 of the Local Rules.

**Background**

**A.    Introduction**

3. On January 14, 2009 (the "<u>Petition Date</u>"), the Debtors, other than Nortel Networks (CALA) Inc. ("<u>NN CALA</u>"), filed voluntary petitions for relief under chapter 11 of the

---

[2] Certain of the Debtors' European affiliates and the Joint Administrators (as defined below) have entered into an interdependent Asset Sale Agreement, dated November 24, 2009, with Kapsch Carriercom AG ("<u>Kapsch</u>") (the "<u>EMEA Purchase Agreement</u>").

Bankruptcy Code. NN CALA filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to:  (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an

---

[4] The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

11. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

12. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

**Facts Relevant to the Motion**

13.     Global System for Mobile communications ("GSM") is a widely deployed wireless technology standard for mobile phone networks. Nortel is a supplier of GSM networks to operators globally and works with such operators to implement various GSM products. In this regard, Nortel develops, manufactures, tests, sells and supplies GSM access and core infrastructure, services and solutions (the "GSM Business"). Also based on GSM technology is a variant of GSM for Railways, which provides a secure communications system for railways operators (together with the GSM Business, the "GSM/GSM-R Business").

14.     On September 30, 2009, the Debtors filed a Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving the Notice Procedures, and (C) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving the Sale of Certain Assets of Debtors' GSM/GSM-R Business [D.I. 1587] (the "Sale Motion")[5] seeking approval of, among other things, the sale of the Assets, and the approval of certain bidding procedures related thereto (the "Bidding Procedures"). Following a hearing on the Bidding Procedures, this Court and the Canadian Court, by an order dated October 15, 2009 [D.I. 1676] approved the Bidding Procedures to govern the sale by Nortel Networks Inc. and certain of its affiliates (collectively, the "Sellers") of the Assets.

15.     In accordance with the Bidding Procedures, the Sellers conducted an auction on November 24, 2009 (the "Auction"). The Successful Bid (as defined in the Bidding Procedures) for the sale of the Assets resulting from the Auction was the bid submitted by Ericsson and Kapsch, dated as of November 24, 2009 (the "Successful Bid").

---

[5]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

16.     Pursuant to the North American Purchase Agreement, the Debtors have entered into a binding obligation to assume and assign certain pre-petition executory contracts and unexpired leases (if any) of the Debtors to the Purchaser.

## Relief Requested

17.     By this Motion, the Debtors seek an order (a) approving the Assignment Procedures pursuant to section 365 of the Bankruptcy Code; (b) authorizing the Debtors to file certain documents under seal; and (c) granting such other relief as the Court deems just and proper.

## The Assignment Procedures

18.     In light of the foregoing and the need to coordinate the sale of the Debtors' Assets, the Debtors submit the following procedures (the "Assignment Procedures") for the Court's approval:

**NOTICES**

*Customer Contracts – Notice*

a.      The Debtors shall, no later than thirty (30) days prior to the Closing Date, serve an individual notice substantially in the form attached hereto as Exhibit A (the "Customer Notice") by first class mail on each counterparty to a customer contract (respectively, a "Customer Contract Counterparty" and "Designated Customer Contract") (and its attorney, if such attorney has filed a notice of appearance in these chapter 11 proceedings) at the last known address available to the Debtors. Each Customer Notice shall set forth the following information: (i) the name and address of the Customer Contract Counterparty, (ii) identification of the Designated Customer Contracts, (iii) notice of the proposed effective date of the assignment, (iv) a description of the Purchaser and a statement as to the Purchaser's ability to perform the Debtors' obligations under the Designated Customer Contracts, and (v) any Cure Amount (as defined below) under each relevant Designated Customer Contract, where "Cure Amount" means, with respect to an agreement, any amount required by section 365(b)(1) of the Bankruptcy Code and Rule 6006(f) of the Bankruptcy Rules to pay for any actual pecuniary losses that have resulted from any defaults by the relevant Debtor under such agreement.

b. The Debtors shall file under seal with the Court and deliver a full, alphabetized list of Customer Contract Counterparties, along with an affidavit or declaration confirming that a Customer Notice (as defined below) has been sent to each Customer Contract Counterparty, to (i) counsel to the Purchaser (as defined below), (ii) the U.S. Trustee (iii) the Monitor, (iv) counsel to the Committee, and (v) counsel to the Bondholder Group.

*Non-Customer Contracts – Omnibus Notices*

c. The Debtors shall, no later than thirty (30) days prior to the Closing Date, also file with the Court one or more omnibus notices, each covering no greater than 100 non-customer contracts (the "Designated Non-Customer Contracts," and, together with Designated Customer Contracts "Designated Contracts"), substantially in the form attached hereto as Exhibit B ("Omnibus Notice" and, together with the Customer Notice, the "Notice"), and serve each omnibus notice on each counterparty to a Designated Non-Customer Contract (a "Non-Customer Contract Counterparty," and together with a Customer Contract Counterparty, a "Counterparty") whose Designated Non-Customer Contract appears on such omnibus notice. The Omnibus Notices will provide, inter alia, Cure Amounts relating to such Contracts.

**OBJECTION PROCEDURES**

a. To the extent that any Counterparty wishes to object to any matter pertaining to the proposed assumption and assignment of a Designated Contract, including, without limitation, the adequate assurance of future performance by the Purchaser under the applicable Designated Contract or the Cure Amount, if any (any objection regarding the Cure Amount, a "Cure Objection"), then such Counterparty must file a written objection with the Court no later than ten (10) days following service of the Notice, and serve notice of such objection on counsel to the Debtors: Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Fax: (212) 225-3999 (Attention: James L. Bromley and Lisa M. Schweitzer) and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Wilmington, Delaware 19801, Fax: (302) 658-3989 (Attention: Derek C. Abbott). Copies also must be served contemporaneously on (a) counsel to the Purchaser: Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Fax: (212) 373-3990 (Attention: Stephen J. Shimshak and Marilyn Sobel); (b) counsel to the Committee: Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, New York 10036, Fax: (212) 872-1002 (Attention: Fred S. Hodara, Stephen Kuhn and Kenneth Davis) and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attention: Christopher M. Samis), and (c) counsel to the Bondholder Group: Milbank, Tweed, Hadley & McCloy, One Chase Manhattan Plaza, New York, New York 10006, Fax: (212) 822-5735 (Attention: Roland Hlawaty).

b.      To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be deemed to have (i) consented to the assumption and assignment of the applicable Designated Contract; (ii) agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iii) consented to such Cure Amount, if any; (iv) agreed that all defaults under the Designated Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the effective date of the assignment, the Designated Contract shall remain in full force and effect for the benefit of the Purchaser and the Counterparty in accordance with its terms; (v) waived any right to terminate the Designated Contract or designate an early termination date under the applicable Designated Contract as a result of any default that occurred or was continuing prior to the effective date of the assignment; and (vi) agreed that the terms of the orders to (I) (a) approve the Assignment Procedures File Certain Documents Under Seal; (c) Granting Such Other Relief as the Court Deems Just and Proper (the "<u>Assignment Procedures Order</u>") and (II) Authorizing and Approving Sale of Debtors' GSM/GSM-R Business Free and Clear of All Liens (the "<u>Final Sale Order</u>") shall apply to the assumption and assignment.  Pursuant to Bankruptcy Code section 365(k), the Debtors shall be relieved from any further liability with respect to the Designated Contract following assignment to the Purchaser.

**RESOLUTION OF OBJECTIONS**

c.      Upon filing of an objection by a Counterparty, the Debtors shall be required to respond to such objection within ten (10) days after receiving such objection.

d.      To the extent that an objection by a Counterparty is not resolved prior to the Closing Date, the Debtors, in consultation with the Purchaser, subject in all respects to the North American Purchase Agreement, may elect to (i) not assume and assign such Designated Contract, (ii) postpone the assumption and assignment of such Designated Contract until the resolution or adjudication of such objection, or (iii) in the case of a Cure Objection, the relevant party responsible for payment of the Cure Amount under the North American Purchase Agreement shall segregate any disputed Cure Amount pending the resolution or adjudication of any such objection, in which case the Debtors shall be permitted to assume and assign such Designated Contract as of the Closing Date.

**RESERVATION OF RIGHTS**

e.      The Debtors' decision to assume and assign the Designated Contracts is subject to Bankruptcy Court approval and consummation of the sale of the GSM/GSM-R Assets to the Purchaser.  Accordingly, the Debtors shall be deemed to have assumed and assigned those Designated Contracts ultimately identified

under the North American Purchase Agreement as of and effective only upon the Closing Date. Absent a closing that includes such Designated Contracts, each of the Designated Contracts shall be deemed neither assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtors under the Bankruptcy Code.

f. The Purchaser shall have no rights in and to a particular Designated Contract until such time as the particular Designated Contract is assumed and assigned in accordance with the procedures set forth herein.

g. To the extent required by applicable law, the Debtors reserve the right to file one or more motions to assume and assign any unexpired contracts of the Debtors.

19. To facilitate the assumption and assignment of the Designated Contracts, the Debtors further request that the Court find the anti-assignment provisions of the Designated Contracts, if any, to be unenforceable under section 365(f) of the Bankruptcy Code.[6]

## Basis for Relief

**C.    The Assumption and Assignment Procedures Should Be Authorized**

20. Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor. This subsection provides:

> (b) (1)    If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> > (A)    cures, or provides adequate assurance that

---

[6]    Section 365(f)(1) provides in part that, "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease…" 11 U.S.C. § 365(f)(1). Section 365(f)(3) further provides that "[n]otwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee." 11 U.S.C. § 365(f)(3).

> the trustee will promptly cure, such default . . . ;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1). Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if --
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

21. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992); In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

22. Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from

debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

23. To the extent any defaults exist under any Contract, any such default will be promptly cured or adequate assurance that such default will be cured will be provided prior to the assumption and assignment. If necessary, the Debtors will submit additional facts prior to or at the hearing on this Motion to show the financial credibility of the Purchaser and willingness and ability to perform under the Contracts. The hearing will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to provide adequate assurance of future performance under the Designated Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

24. In addition, the Debtors submit that it is an exercise of their sound business judgment to assume and assign the Designated Contracts to the Purchaser in connection with the consummation of the Sale Transaction, and the assumption and assignment of the Designated Contracts are in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Designated Contracts being assumed and assigned to the Purchaser are an integral part of the Debtors' Assets being acquired by the Purchaser, and accordingly, such assumption, and assignment of the Designated Contracts are reasonable and enhance the value of the Debtors' estates. The Court should therefore authorize the Debtors to assume and assign the Designated Contracts.

**D.    Information Regarding the Debtors' Customers Is Confidential Commercial Information and Should Be Filed Under Seal**

25. The Debtors propose to file the list of Designated Customer Contracts to be assumed and assigned under seal, and will file omnibus notices each with a schedule of the Non-Customer Designated Contracts.

26.     The relief requested by the Debtors is squarely authorized under the Bankruptcy Code.  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information. . . .

11 U.S.C. § 107(b).

27.     Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

28.     This Court has defined "commercial information" in the context of section 107(b) as follows:

> Commercial information is information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'

In re Alterra Healthcare Corp., 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)).  This Court has also explained that section 107(b)'s exception to usual public disclosure mandated by section 107(a) is "intended to avoid 'affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  In re MUMA Services Inc., 279 B.R. 478, 484 (Bankr. D. Del. 2002) (citing In re Itel Corp., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

29. Since information related to the Contracts is "commercial information" within the ambit of section 107, the Court should enter an order permitting the Debtors to file under seal all confidential information related to the Contracts.

30. The identities of the Counterparties constitute confidential commercial information because they represent a significant aspect of the value of the Assets. Access to the list of the Counterparties absent appropriate confidentiality restrictions would entail releasing confidential information of critical value not only to any prospective purchaser of the Contracts but also to the Debtors' other businesses. Therefore, it is critical to the preservation of the value of the Debtors' estates that the Court allow for this confidential information to be filed under seal.

31. As such, the Debtors respectfully submit that the Court should permit the Debtors to file their certificate of service listing the names and addresses of such parties under seal.

**E.    Waiver of Automatic Ten-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

32. Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for ten days after entry of the order. Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts are automatically stayed for ten days after entry of the order. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

33. Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 10-day stay period, commentators agree that the 10-day stay period should be eliminated to allow a sale

or other transaction to close immediately where there has been no objection to the procedure. See generally 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal. Id.

34. As required by the North American Purchase Agreement, and because of the potentially diminishing value of the Assets, the Debtors must close this sale promptly after all closing conditions have been met or waived. It is in the Debtors' interest to complete the assumption and assignment of the Contracts either at closing or as soon thereafter as practicable. Thus, waiver of any applicable stay is appropriate in this circumstance.

## Notice

35. Notice of the Motion has been given via first-class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the Counterparties; (iii) the U.S. Trustee; (iv) the Monitor; (v) counsel to the Committee; (vi) counsel to the Bondholder Group; and (vii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

36. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: November 27, 2009<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley *admitted pro hac vice*<br>Lisa M. Schweitzer *admitted pro hac vice*<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Andrew R. Remming*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors and Debtors in Possession* |