## EXHIBIT A

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**MOTION RECORD**
**Flextronics Settlement Approval Motion**
**(returnable December 2, 2009)**

November 27, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

DOCSTOR: 1680120\1

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

## INDEX

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Notice of Motion returnable December 2, 2009 | 1 |
| 2. | Affidavit of Donald McKenna, sworn November 24, 2009 | 30 |
| A. | Exhibit "A" – Settlement and Release Agreement | 47 |
| B. | Exhibit "B" – Side Agreement | 139 |
| C. | Exhibit "C" – Order of Justice Morawetz dated June 16, 2009 | 166 |
| D. | Exhibit "D" – Amending Agreement dated January 13, 2009 | 169 |
| 3. | Draft Order | 177 |

# TAB 1

Court File No.  09-CL-7950

*ONTARIO*
*SUPERIOR COURT OF* JUSTICE
(COMMERCIAL LIST)

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**NOTICE OF MOTION**
(Flextronics Settlement Motion returnable December 2, 2009)

Nortel Networks Corporation, Nortel Networks Limited ("NNL"), Nortel Networks
Technology Corporation, Nortel Networks International Corporation and Nortel Networks
Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of
the Commercial List court on Wednesday, December 2, 2009 at 11:00 a.m., or as soon after that
time as the motion can be heard, at 330 University Avenue, Toronto, Ontario.

**PROPOSED METHOD OF HEARING:** The motion is to be heard orally.

**THE MOTION IS FOR AN ORDER:**

1.    Abridging the time for the service of the Notice of Motion and Motion Record in respect
      of this motion and dispensing with further service thereof;

2.    authorizing and approving the Settlement and Release Agreement (as defined below), by
      and among (a) Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd.

$2$

- 2 -

("FTS") and certain affiliates of FC and FTS that are signatories thereto, on behalf of themselves and their respective affiliates (collectively, "Flextronics"), (b) the Applicants, (c) the U.S. Debtors (as defined below), (d) Nortel Networks B.V., Nortel Networks (Ireland) Limited, Nortel Networks Hispania, S.A., and Nortel Networks UK Ltd. ("NNUK") (each an EMEA Debtor (as defined below), and collectively, the "EMEA Entities"), and (e) the joint administrators acting on behalf of the EMEA Entities (the Applicants, the U.S. Debtors, and the EMEA Entities, are collectively referred to herein as "Nortel") (Nortel, Flextronics and the Joint Administrators are collectively referred to herein as the "Parties");

3.      authorizing and approving the related Side Agreement (as defined below), by and among Nortel and the Joint Administrators; and

4.      permitting Nortel to file under seal:

(a)      certain portions of the Settlement and Release Agreement; and

(b)      certain portions of the Side Agreement;

as they appear in Exhibits "A" and "B" to the Affidavit of Donald McKenna sworn November 24, 2009, and such portions shall not form part of the public record, subject to further Order of this Court;

5.      Approving the settlement reflected in the Settlement Documents (as defined below), and authorizing and directing the Applicants to comply with their obligations thereunder; and

6.      Such further and other relief as counsel may request and this Honourable Court deems just.

*3*

- 3 -

**THE GROUNDS FOR THE MOTION ARE:**

**Background**

1.   On January 14, 2009 (the "Filing Date"), this Honourable Court made an Initial Order granting the CCAA stay of proceedings against the Applicants and appointing Ernst & Young Inc. as Monitor in the CCAA proceedings;

2.   Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including Nortel Networks Inc. ("NNI"), (collectively, the "U.S. Debtors"), made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code") (the "Chapter 11 Proceedings"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

3.   Additionally, on January 15, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in the Europe, Middle East and Africa region ("EMEA") (the "EMEA Debtors") each obtained an administration order from the English High Court of Justice under the Insolvency Act 1986;

4.   On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102.(a)(1) of the Bankruptcy Code. An *ad hoc* group of bondholders holding claims against certain of the U.S. Debtors and certain of the Applicants has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the U.S. Debtors' cases;

- 4 -

4

**The Relationship Between Nortel and Flextronics**

5.     In 2006, Nortel completed its plan to transition to an outsourcing model by transferring to third parties substantially all of its hardware manufacturing and related activities, including certain product integration, testing, repair operations, supply chain management, third party logistics and design assets. As part of this plan, in 2004, NNL entered into an asset purchase agreement with FTS for the sale of the bulk of Nortel's remaining manufacturing facilities and related inventory;

6.     Since 2004, Nortel and Flextronics have engaged in a complex, wide-ranging contract manufacturing relationship whereby Flextronics, pursuant to specifications supplied by Nortel, purchases materials and components, assembles those materials and components into higher-level components and finished goods, and stores and delivers such finished components and goods to Nortel based on Nortel's forecasts and demands;

7.     Flextronics is by far Nortel's largest supplier, and its most critical. It is responsible for the supply of approximately 70% of Nortel's hardware products. In addition, it provides a significant portion of the logistics and repair services required in connection with those products;

8.     The manufacturing relationship between Flextronics and Nortel is governed by a number of agreements (the "MCMSAs"):

(a)     On September 2003, NNL and Solectron Corporation (a predecessor to Flextronics) entered into the Master Contract manufacturing Services Agreement; and

(b)     On June 29, 2004, NNL and FTS entered into the Amended and Restated Master Contract Manufacturing Services Agreement;

9.     Under the MCMSAs, Nortel has also entered into "Virtual Systems House Agreements" (the "VSHAs") with Flextronics and other related agreements, which further prescribe the relationship between the parties;

- 5 -

### The Amending Agreement

10. On the eve of the filing under the CCAA and in recognition of the critical importance of Flextronics' continued performance during these insolvency proceedings, Nortel entered into an agreement with Flextronics that amended certain terms of their relationship (the "Amending Agreement");

11. The Amending Agreement was approved by this Honourable Court in the Initial Order and, at paragraph 48, Nortel was authorized and directed to comply with its obligations thereunder;

12. The Amending Agreement included, among other things, an agreement by Flextronics to continue to supply products to Nortel. In exchange, Nortel agreed, among other things, to purchase certain Flextronics inventory in the total amount of $120 million payable in four instalments between January 14, 2009 and July 1, 2009. Nortel also agreed to submit purchase orders on a quarterly basis for certain other inventory and to pay on a weekly basis for goods supplied during the immediately previous week;

### The May Settlement

13. Subsequent to the Initial Order, certain disputes emerged between Nortel and Flextronics as to the interpretation of the Amending Agreement and other matters;

14. Recognizing the importance of Flextronics' continued performance of its obligations, Nortel entered into negotiations in order to resolve these disputes and maintain the relationship;

15. Following extensive negotiations, Flextronics and Nortel resolved the disputes existing between them on May 22, 2009 by execution of a settlement and release agreement and a side letter (the "May Settlement"). This Honourable Court approved the May Settlement on June 16, 2009;

- 6 -



**Divestiture Process**

16.     Nortel is in the process of divesting its assets through various pending and future sales of businesses or product lines or any other assets or shares of Nortel (each, a "Business") to one or more third parties (a "Purchaser") (any such sale, whether by asset sale, merger, operation of law or otherwise, a "Divestiture");

17.     Flextronics is a supplier to several of the Businesses, including without limitation the Enterprise Solutions, MEN (Optical), CVAS, Passport and GSM Businesses;

18.     Due to the size of Nortel's supply relationship with Flextronics, Nortel expects it is likely that potential Purchasers will want to continue a supply relationship with Flextronics in connection with a Divestiture;

19.     On September 30, 2009, Flextronics filed a number of proofs of claim against the Applicants asserting pre-filing amounts owed by the Applicants to Flextronics (the "Canadian Proofs of Claim");

20.     The Canadian Proofs of Claim, together with the claims filed in the Chapter 11 Proceedings, any claims that have been or could be filed or otherwise asserted against the EMEA Entities (the "EMEA Proofs of Claim") and any claims that have been or could be filed or otherwise asserted in any other proceeding of a Nortel entity or otherwise in any other proceeding of a Nortel entity (the "Flextronics Proofs");

**The Settlement Agreement**

21.     In light of the several pending and potential Divestitures, the significance, size and complexity of the supply relationship with Flextronics, and Nortel's experience in prior Divestitures since its commencement of creditor protection proceedings, Nortel and Flextronics have determined that it is in their mutual best interests to enter into an agreement that:

      (a)     provides a mechanism for the transfer of the supply relationship to interested parties;

- 7 -

(b)  resolves the settlement and payment of certain claims held by Nortel and Flextronics that would need to be resolved in connection with such Divestitures; and

(c)  resolves other claims held by each of the Parties in order to fully settle pre-filing claims held by the Parties and certain other claims related to open accounts receivable and payable by Flextronics and Nortel;

22.  Moreover, while Nortel does not admit the validity of:

(a)  any objection Flextronics has asserted to date in these proceedings or the Chapter 11 Proceedings, or that it could asset with respect to any pending or future Divestiture, including without limitation to the treatment of the MCMSAs in connection with any such Divestiture, or

(b)  any claim asserted in the Flextronics Proofs;

Nortel believes it is in the best interests of Nortel and its creditors to avoid the expense, delay and uncertainty associated with any possible litigation relation to such potential sale-related objections, the Flextronics Proofs, and the other matters addressed in the Settlement and Release Agreement.

23.  The agreement is the result of lengthy and vigorous negotiations between Nortel and Flextronics, including extensive discussions with the Monitor, the Committee and the Bondholder Group;

24.  The agreements between Nortel and Flextronics have been memorialized in a settlement and release agreement dated November 20, 2009 (the "Settlement and Release Agreement"). On the same date, Nortel also entered into a side agreement with the Joint Administrators (the "Side Agreement") dated November 20, 2009 (collectively, the "Settlement Documents");

25.  The Parties have reached an agreement to:

- 8 -

(a)  ensure Flextronics' cooperation with regard to pending and future Divestitures;

(b)  ensure the provision by Flextronics of a supply contract with the Purchaser in connection with any future Divestiture on the terms described in the Settlement and Release Agreement;

(c)  satisfy the resolution of the existing objections with respect to the sale of the Nortel Enterprise business;

(d)  fully and finally resolve the Flextronics Proofs, including certain post-filing ordinary course contractual claims, and all of the Parties' respective claims arising prior to the Initial Order, except as otherwise expressly stated in the Settlement and Release Agreement; and

(e)  provide for the Parties' performance of their post-filing obligations under the MCMSAs in accordance with the Settlement and Release Agreement.

26.  Nortel discussed the negotiations and settlement with the following parties, none of whom raised any objections to the Settlement Documents:

(a)  The Monitor;

(b)  the Committee;

(c)  the Bondholder Group; and

(d)  the Joint Administrators (appointed to administer nineteen of Nortel's European affiliates);

27.  NNI has filed a motion seeking approval of the U.S. Bankruptcy Court seeking approval and sealing of the Settlement Documents, which is scheduled to be heard at the joint hearing on December 2, 2009;

28.  Nortel seeks approval of the Settlement Documents to the extent that they contain provisions not in the ordinary course of its business and to the extent that they relate to

- 9 -

the Amending Agreement and May Settlement which were both approved by this Honourable Court;

29.    Approval of the Settlement Documents is in the best interests of Nortel's estate, creditors and other stakeholders;

**The Need for a Sealing Order**

30.    The Applicants request to file under seal the following information in the Settlement and Release Agreement:

(a)    the value of the Payment Obligation as set forth in Schedule B to the Settlement and Release Agreement; and

(b)    certain other Schedules and portions of Schedules and Exhibits to the Settlement and Release Agreement that contain pricing information.

31.    In the Side Agreement, the Applicants request to file under seal all values set forth therein that, if not filed under seal, would allow for the determination of the Payment Obligation and the total Settlement Cost of the Settlement and Release Agreement;

32.    The disclosure of certain details of the settlement:

(a)    would severely impair the ability of the Applicants to successfully manage their relationships with their other suppliers and creditors, and thereby place strain on the Applicants' operations during this critical period and potentially result in added expenses that would drain additional resources from the Applicants' estates and reduce the eventual recovery of creditors;

(b)    would disrupt the Divestitures Nortel is undertaking to maximize value for their estates and creditors and the necessary negotiations between the Applicants' suppliers and potential Purchasers to facilitate the transfer of supply arrangements until such Divestiture; and

(c)    could compromise the process for allocation of the Settlement Cost.

- 10 -

33. The Monitor, the Committee and the Bondholder Group consent to the relief sought herein;

34. Section 137(2) of the *Courts of Justice Act*;

35. The provisions of the *CCAA* and the equitable jurisdiction of this Honourable Court; and

36. Such further and other grounds as counsel may advise and this Honourable Court permit;

**THE FOLLOWING DOCUMENTARY EVIDENCE** will be used at the hearing of the motion:

37. The Affidavit of Donald McKenna sworn November 24, 2009, and the exhibits thereto;

38. The Thirty-First Report of the Monitor, to be filed; and

39. Such further and other evidence as counsel may request and this Honourable Court deem just.


November 27, 2009

**Ogilvy Renault LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Fax: (416) 216-3930
Email: dtay@ogilvyrenault.com


Lawyers for the Applicants


TO:    Attached Service List

*//*

Court File No.  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)


IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED


AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION


APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED


### SERVICE LIST


TO:      **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:     416.216.4000
Fax:    416.216.3930

Lawyers for the Applicants

- 2 -

*12*

TO:   **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:   416.943.3016
Fax:   416.943.3300

AND
TO:   **GOODMANS LLP**
250 Yonge Street
Suite 2400
Toronto, ON  M5B 2M6

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
carmstrong@goodmans.ca

Tel:   416.597.4107
Fax:   416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:   **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:   lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:   416.362.2111
Fax:   416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:   **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:   416.868.3538
Fax:   416.364.7813

Lawyers for Export Development Canada

13

- 3 -

AND TO:
**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON K1A 1K3

Jennifer Sullivan

Email:  jsullivan@edc.ca

Tel:  613.597.8651
Fax:  613.598.3113

AND TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:  rthornton@tgf.ca
        mbarrack@tgf.ca
        rmoncur@tgf.ca
        lwilliams@tgf.ca

Tel:  416.304.1616
Fax:  416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:  john.stringer@mcinnescooper.com
        stephen.kingston@mcinnescooper.com

Tel:  902.425.6500
Fax:  902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
        msims@millerthomson.com

Tel:  416.595.8615/8577
Fax:  416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:  barry.wadsworth@caw.ca
        lewis.gottheil@caw.ca

Tel.:  416.495.3776
Fax:  416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email:  hharrison@boughton.ca

Tel:  604.687.6789
Fax:  604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

*14*

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:    416. 367.6646
Fax:    416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:    416.367.6266
Fax:    416.361.7067

Email:  srappos@blgcanada.com
Tel:    416.367.6033
Fax:    416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
        dimitri.lascaris@siskinds.com
        monique.radlein@siskinds.com

Tel:    519.672.2121
Fax:    519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND
TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:    416.307.4087
Fax:    416.304.3855

Email   jcontini@langmichener.ca
Tel:    416.307.4148
Fax:    416.304.3767

Email   arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:  zychk@bennettjones.com
Tel:    416.777.5738
Fax:    416.863.1716

Email:  orzyr@bennettjones.com
Tel:    416.777.5737
Fax:    416.863.1716

Email:  finlaysong@bennettjones.com
Tel:    416.777.5762
Fax:    416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

*15*

| | | | | |
|---|---|---|---|---|
| AND<br>TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, ON  M5H 3R3 | | AND<br>TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON  M5H 3S1 |

KOSKIE MINSKY

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:   mzigler@kmlaw.ca
Tel:       416.595.2090
Fax:      416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:       416.595.2104
Fax:      416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:       416.595.2130
Fax:      416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:       416.595.2150
Fax:      416.204.2874

Lawyers for the Former Employees of Nortel

MILLER THOMSON LLP

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:      416.595.8695

Email:   msims@millerthomson.com
Tel:       416.595.8577
Fax:      416.595.8695

Email:   jmklotz@millerthomson.com
Tel:       416.595.4373
Fax:      416.595.8695

Lawyers for LG Electronics Inc.

AND TO:   **MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:      416.595.8695

Email   msims@millerthomson.com
Tel:       416.595.8577
Fax:      416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND TO:   **LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:       +82.2.3777.3171
Fax:      +82.2.3777.5345

- 6 -

/10

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:  harvey@chaitons.com

Tel:    416.218.1129
Fax:   416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:  Shayne.kukulowicz@fmc-law.com
        Alex.macfarlane@fmc-law.com
        Michael.wunder@fmc-law.com

Tel:    416.863.4511
Fax:   416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:    416.646.4304
Fax:   416.646.4301

Email:  max.starnino@paliareroland.com
Tel:    416.646.7431
Fax:   416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:    416.646.4326
Fax:   416.646.4301

Email:  tina.lie@paliareroland.com
Tel:    416.646.4332
Fax:   416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@gowlings.com

Tel:    416.369.7399
Fax:   416.862.7661

Lawyers for Westcon Group

17

- 7 -

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:   rslattery@mindengross.com
         dullmann@mindengross.com
Tel:     416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND
TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:   mfleming@millerthomson.com
Tel:      416.595.8686
Fax:      416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Brookfield LePage Johnson Controls
Facility Management Services

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:   andrew.kent@mcmillan.ca
Tel:      416.865.7160
Fax:      416.865.7048

Email:   hilary.clarke@mcmillan.ca
Tel:      416.865.7286
Fax:      416.865.7048

Email:   tushara.weerasooriya@mcmillan.ca
Tel:      416.865.7262
Fax:      416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Perot Systems Corporation

- 9 -

AND
TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:     416.865.7178
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:     416.865.7285
Fax:    416.865.7048

Lawyers for Citibank

AND
TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:     416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND
TO:
**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:     416.307.4087
Fax:    416.365.1719

Email:  arousseau@langmichener.ca
Tel:     416.307.4081
Fax:    416.365.1719

Lawyers for Right Management Inc.

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:     416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND
TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:     416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:  smitra@airdberlis.com
          svitorovich@airdberlis.com

Tel:     416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

- 10 -

AND
TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
ainslie.benedict@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca

Tel:   613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND
TO:
**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:   416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND
TO:
**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec H3A 3M8

David J. Dropsy

Email:   ddropsy@colby-monet.com
Tel:   514.284.3663
Fax:   514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:   bleonard@casselsbrock.com
hgarman@casselsbrock.com
mcasey@casselsbrock.com

Tel:   416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND
TO:
**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:   613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND
TO:
**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
mgaggino@schneidergaggino.com

Tel:   514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

*2)*

- 11 -

AND
TO:  **NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
steven.levitt@nelligan.ca
christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:    613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees -- Post CCAA
as at January 14, 2009

AND
TO:  **BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
laugesenm@bennettjones.com

Tel:     416.863.1200
Fax:    416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:  **MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:     416.369.4335
Fax:    416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:  **BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:     416.865.2318
Fax:    416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:    416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:  **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:     416.601.7627
Fax:    416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:     416.601.7750
Fax:    416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:  **EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:     613.745.0921
Fax:    613.745.1172

- 12 -

22

AND
TO:

**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:      613.771.9991
Fax:      613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND
TO:

**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351
Fax:      714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:

**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:

**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :  jysimard@lavery.ca
Tel :     514.871.1522
Fax :     514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

23

- 13 -

AND
TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351


AND
TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:      416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:      416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND
TO:
**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Email:   slaubman@counsel-toronto.com
Tel:      416.598.1744
Fax:      416.598.3730

Lawyers for William A. Owens

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:   david.cohen@gowlings.com

Tel:      416.369.6667
Fax:      416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND
TO:
**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:   rschwill@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Email:   mgottlieb@dwpv.com
Tel:      416.863.0900
Fax:      416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:      416.865.6944
Fax:      416.863.6275

Lawyers for Wipro Limited

24

- 14 -

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:      416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:     416.973.0810

- 15 -

| | |
|---|---|
| AND TO: | **BLAKE, CASSELS & GRAYDON LLP**<br>199 Bay Street, Suite 2800<br>Commerce Court West<br>Toronto, Ontario  M5L 1A9<br><br>Pamela Huff<br>Milly Chow<br>Hugh DesBrisay<br>Craig Thorburn<br><br>Email:  pamela.huff@blakes.com<br>Tel:     416.863.2958<br>Fax:     416.863.2653<br><br>Email:  milly.chow@blakes.com<br>Tel:     416.863.2594<br>Fax:     416.863.2653<br><br>Email:  hugh.desbrisay@blakes.com<br>Tel:     416.863.2426<br>Fax:     416.863.2653<br><br>Email:  craig.thorburn@blakes.com<br>Tel:     416.863.2965<br>Fax:     416.863.2653<br><br>Lawyers for MatlinPatterson Global Advisers LLC,<br>MatlinPatterson Global Opportunities Partners III<br>L.P. and MatlinPatterson Opportunities Partners<br>(Cayman) III L.P. | AND TO: | **BLAKE, CASSELS & GRAYDON LLP**<br>199 Bay Street, Suite 2800<br>Commerce Court West<br>Toronto, Ontario  M5L 1A9<br><br>Susan M. Grundy<br>Marc Flynn<br><br>Email:  susan.grundy@blakes.com<br>Tel:     416.863.2572<br>Fax:     416.863.2653<br><br>Email:  marc.flynn@blakes.com<br>Tel:     416.863.2685<br>Fax:     416.863.2653<br><br>Lawyers for Telefonaktiebolaget L M Ericsson (publ) |

| | | | |
|---|---|---|---|
| AND TO: | **LANG MICHENER LLP**<br>Brookfield Place<br>181 Bay Street, Suite 2500<br>Toronto, Ontario, M5J 2T7<br><br>Sheryl E. Seigel<br><br>Email:  sseigel@langmichener.ca<br>Tel:     416.307.4063<br>Fax:     416.365.1719<br><br>Lawyers for The Bank of New York Mellon | AND TO: | **McCARTHY TETRAULT LLP**<br>Suite 5300, Toronto Dominion Bank Tower<br>Toronto, Ontario  M5K 1E6<br><br>Kevin P. McElcheran<br>Ryan Stabile<br><br>Email:  kmcelcheran@mccarthy.ca<br>Tel:     416.601.7730<br>Fax:     416.868.0673<br><br>Email:  rstabile@mccarthy.ca<br>Tel:     416.601.8335<br>Fax:     416.868.0673<br><br>Lawyers for Avaya Inc. |

- 16 -

26

| | | | |
|---|---|---|---|
| AND<br>TO: | **SACK GOLDBLATT MITCHELL LLP**<br>20 Dundas Street West<br>Suite 1100<br>Toronto, Ontario  M5G 2G8 | AND<br>TO: | **FOGLER, RUBINOFF LLP**<br>Barristers and Solicitors<br>Suite 1200<br>Toronto-Dominion Centre<br>95 Wellington Street West<br>Toronto, Ontario  M5J 2Z9 |

**SACK GOLDBLATT MITCHELL LLP**

James McDonald
Darrell Brown

Email:   jmcdonald@sgmlaw.com
Tel:       416.979.6425
Fax:      416.591.7333

Email:   dbrown@sgmlaw.com
Tel:       416.979.4050
Fax:      416.591.7333

Lawyers for Edmund Fitzgerald

AND     **STIKEMAN ELLIOTT LLP**
TO:       5300 Commerce Court West
            199 Bay Street
            Toronto, ON  M5L 1B9

Ashley John Taylor

Email:   ataylor@stikeman.com
Tel:       416.869.5236
Fax:      416.947.0866

Lawyers for Ciena Corporation

**FOGLER, RUBINOFF LLP**

Jeffrey K. Spiegelman

Email:   jspiegelman@foglers.com
Tel:       416.864.9700
Fax:      416.941.8852

Lawyers for Belden (Canada) Inc.

27

- 17 -

## COURTESY COPIES:

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:     602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
         rjacobs@akingump.com

Tel:     212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
         jdrew@curtis.com

Tel:     212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:     212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:     212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:     212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

- 18 -

28

AND  **VEDDER PRICE P.C.**
TO:  1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:  212.407.6920
Fax:  212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND  **MACLEOD DIXON LLP**
TO:  3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :  andrew.robertson@macleoddixon.com
caylee.rieger@macleoddixon.com

Tel :  403.267.8222
Fax :  403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND  **BRYAN CAVE LLP**
TO:  161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:  eric.prezant@bryancave.com
Tel:  312.602.5033
Fax:  312.602.5050

U.S. Lawyers for Tellabs, Inc.

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**
Proceeding commenced at Toronto

**NOTICE OF MOTION**
(Flextronics Settlement Motion Returnable December 2, 2009)

**OGILVY RENAULT LLP**
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com
**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com
**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Fax: (416) 216-3930
Email: jstam@ogilvyrenault.com

Lawyers for the Applicants

DOCSTOR: 18159770.2

# TAB 2



Court File No: 09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AFFIDAVIT OF DONALD MCKENNA
### (sworn November 24, 2009)

I, DONALD MCKENNA, of the City of Darien, in the State of Connecticut in the United States of America, MAKE OATH AND SAY:

1.      I am currently employed with Nortel Networks Inc., and am an officer in the position of Chief Procurement Officer and Vice President Global Manufacturing with Nortel Networks Corporation and Nortel Networks Limited ("NNL"), which is among the Applicants to this proceeding. As such, I have personal knowledge of the information to which I swear and where I have obtained information from others, I believe that information to be true.

2.      I swear this affidavit in support of Nortel's motion for an Order:

  (a)     authorizing and approving the Settlement and Release Agreement (as defined below), attached hereto as Exhibit "A", by and among (a) Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd. ("FTS") and certain affiliates of FC and FTS that are signatories thereto, on behalf of themselves and their respective affiliates (collectively, "Flextronics"), (b) the Applicants, (c) the U.S. Debtors (as defined below), (d) Nortel Networks B.V., Nortel Networks (Ireland) Limited, Nortel Networks Hispania, S.A., and Nortel Networks UK Ltd. ("NNUK") (each

- 2 -

*3)*

an EMEA Debtor (as defined below), and collectively, the "EMEA Entities"), and (e) the joint administrators acting on behalf of the EMEA Entities (the Applicants, the U.S. Debtors, the EMEA Entities, are collectively referred to herein as "Nortel") (Nortel, Flextronics and the Joint Administrators are collectively referred to herein as the "Parties");

(b)    authorizing and approving the related Side Agreement (as defined below), attached hereto as Exhibit "B", by and among Nortel and the Joint Administrators; and

(c)    permitting Nortel to file certain portions of the Settlement Documents under seal.

## Background

3.    The Applicants filed for and obtained protection under the *Companies' Creditors Arrangement Act* (the "CCAA") by order of this Honourable Court dated January 14, 2009 (such order, as amended and restated from time to time, the "Initial Order").

4.    Also on January 14, 2009, Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries (collectively, the "U.S. Debtors") filed voluntary petitions for relief under Chapter 11 of the U.S. Bankruptcy Code (the "Chapter 11 Proceedings").

5.    This Honourable Court has recognized the Chapter 11 Proceedings under section 18.6 of the CCAA; the U.S. Bankruptcy Court similarly entered an order recognizing these proceedings under Chapter 15 of the Bankruptcy Code on February 27, 2009.

6.    On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[1] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").

---

[1]    The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel

- 3 -



7.    On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French administrator and liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.

8.    In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.    On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law.

10.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code. An ad hoc group of bondholders holding claims against certain of the U.S. Debtors and certain of the Applicants has also been organized

---

Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

- 4 -

(the "Bondholder Group").  No trustee or examiner has been appointed in the U.S. Debtors' cases.

11.    On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the Chapter 11 Proceedings for procedural proposes, and applying to NN CALA certain previously entered orders in the Chapter 11 Proceedings.

12.    Nortel continues to manage its properties and operate its businesses under the supervision of this Honourable Court, which has appointed Ernst & Young Inc., as Monitor.

13.    As disclosed in the affidavit material filed by the Applicants in support of the Initial Order, Flextronics is the main hardware supplier for Nortel.  The continued and stable supply of those products is critical for Nortel.  Subsequent to the Initial Order, disputes arose with respect to the interpretation of certain agreements between Nortel and Flextronics.

14.    The parties negotiated a settlement of those issues and entered into a Settlement Agreement on May 22, 2009 (the "May Settlement Agreement").

15.    On June 16, 2009, the parties sought and obtained this Honourable Court's approval of the May Settlement Agreement.  Attached as Exhibit "C" is a copy of this Court's Order dated June 16, 2009.

16.    Since entering into the May Settlement Agreement, additional issues have arisen between the parties with regards to various pending and future sales of businesses or product lines and other assets of Nortel.

17.    The parties have now negotiated a settlement of those new issues, and seek this Honourable Court's approval of that settlement, and authorization to file portions of the Settlement Documents under seal.  The Committee and the Bondholder Group have consented to the relief being sought.

- 5 -

## The Relationship Between Nortel and Flextronics

18.     In 2006, Nortel completed its plan to transition to an outsourcing model by transferring to third parties substantially all of its hardware manufacturing and related activities, including certain product integration, testing, repair operations, supply chain management, third party logistics and design assets. As part of this plan, in 2004 NNL entered into an asset purchase agreement with FTS for the sale of the bulk of Nortel's remaining manufacturing facilities and related inventory.

19.     Since 2004, Nortel and Flextronics have engaged in a complex, wide-ranging contract manufacturing relationship whereby Flextronics, pursuant to specifications supplied by Nortel, purchases materials and components, assembles those materials and components into higher-level components and finished goods, and stores and delivers such finished components and goods to Nortel based on Nortel's forecasts and demands.

20.     Flextronics is by far Nortel's largest supplier, and its most critical. It is responsible for the supply of approximately 70% of Nortel's hardware products. In addition, it provides a significant portion of the logistics and repair services required in connection with those products.

21.     The contract manufacturing relationship between Flextronics and Nortel is governed by a number of agreements entered into by various Flextronics and Nortel entities. On September 30, 2003, NNL and Solectron Corporation ("Solectron") entered into the Master Contract Manufacturing Services Agreement (including any ancillary agreements incorporated by reference thereunder, including without limitation certain VSHAs (as defined below) and purchase orders, and as amended by an amending agreement dated June 8, 2009, the "SLR MCMSA"). Subsequently, Flextronics acquired Solectron in 2007. Additionally, on June 29, 2004, in connection with FTS' purchase of the bulk of Nortel's manufacturing facilities, NNL and FTS entered into the Amended and Restated Master Contract Manufacturing Services Agreement (including any ancillary agreements incorporated by reference thereunder, including without limitation certain VSHAs (as defined below) and purchase orders as amended from time to time by the following agreements: (i) the first amending agreements, dated November 1, 2004; the second amending agreement, dated May 8, 2006; (iii) a memorandum of

- 6 -

understanding, dated October 13. 2006; and (iv) a third amending agreement, dated March 31, 2008, the "Flextronics MCMSA," and collectively with the SLR MCMSA, the "MCMSAs").

22.    Under the MCMSAs, NNL and certain of its subsidiaries, including NNI, also have entered into "Virtual Systems House Agreements" (the "VSHAs") with Flextronics.  The VSHAs authorize the Nortel entity party to the VSHA to issue purchase orders to Flextronics and outline the responsibilities of the VSHA parties with respect to individual Flextronics manufacturing sites and particular Nortel products. For example, each VSHA may contain terms and conditions unique to each Flextronics manufacturing site, such as a list of products manufactured at the site, support teams and the specific reporting requirements for the site. Additionally, each Nortel entity and Flextronics entity that enters into a VSHA becomes a party to the MCMSA with regard to the products covered by the VSHA and the VSHAs are incorporated by reference into the relevant MCMSA.

23.    To manage this process, Nortel provides to Flextronics non-binding rolling, forward-looking forecasts of their requirements for the products to be manufactured, assembled or supplied.  In turn, Flextronics uses these forecasts to purchase and maintain the inventories necessary to meet Nortel's forecasted demand.

24.    Based on the Nortel forecasts, Flextronics carries a substantial inventory of materials and components to be used to supply Nortel with the products it requires; and under the terms of the MCMSAs, Nortel has certain obligations to purchase obsolete and excess inventory from Flextronics.

25.    Nortel allocates the cost of inventory purchases among the four Nortel entities that serve as transaction control centers ("TCCs"),[2] which are used to coordinate Nortel's global purchasing and supply chain. Under this system, Nortel determines the product line for which inventory will be used. Then, the cost of the inventory is allocated between Nortel entities based on the historical mix of purchases by product line that each TCC made in 2008. As a result of this purchasing system, costs related to the provision of goods and services are settled in the

---

[2] The four TCCs are NNL, NNI, Nortel Networks UK and Nortel Networks S.A.

- 7 -

ordinary course through intercompany receivables and payables between the Nortel entities that serve as TCCs.

## The Amending Agreement

26. On the eve of the filing under the CCAA and in recognition of the critical importance of Flextronics' continued performance during these proceedings, NNL entered into an agreement with Flextronics that amended certain terms of their relationship (the "Amending Agreement"). Attached as Exhibit "D" is copy of the Amending Agreement dated January 13, 2009.

27. The key terms of the Amending Agreement include the following:

  (a) NNL agreed to purchase from Flextronics certain obsolete and excess inventory in the total amount of US $120 million in four instalments between January 14, 2009 and July 1, 2009;

  (b) The parties specifically agreed that all other amounts owing to Flextronics as of the date of filing would be dealt with in the insolvency proceedings;

  (c) For the term of these proceedings and any bankruptcy, reorganization or similar protections, any goods delivered by Flextronics after the date of the Amending Agreement would be paid by NNL on a weekly basis notwithstanding the terms of the MCMSAs;

  (d) The terms at which excess inventory would be addressed starting April 1, 2009; and

  (e) Transfers of production from Flextronics to other suppliers would continue pursuant to the "plans of record" then existing.

28. The Amending Agreement was approved by this Honourable Court in the Initial Order which provided, at paragraph 48, that the Applicants were authorized and directed to comply with its obligations thereunder.

- 8 -

## The May Settlement

29.    Subsequent to the Initial Order, the parties discovered certain disputes between them regarding the proper interpretation of the Amending Agreement and other matters. Recognizing the extreme importance of Flextronics' continued performance during Nortel's insolvency proceedings, Nortel engaged Flextronics in negotiations in order to maintain the relationship and resolve the disputes concerning the Amending Agreement.

30.    As Nortel's critical vendor, Nortel is dependent on Flextronics to supply the majority of the products and services required for its ongoing business. In the absence of a secure and steady supply of those products and services, Nortel will not be able to continue to service its customers or conduct its business in the ordinary course.

31.    It was not possible for Nortel to replicate the Flextronics relationship with a new supplier without incurring significant delays, costs and disruptions.

32.    Any disruption of business would have had a deleterious effect, especially given that Nortel's relationship with its customers is already under stress as a result of the proceedings.

33.    Following extensive negotiations, Nortel and Flextronics resolved the disputes existing between them concerning the Amending Agreement on May 22, 2009 by execution of a settlement agreement and a side letter (collectively, the "May Settlement Documents").

34.    Through the May Settlement Documents, Nortel and Flextronics acknowledged that they had reached a full and final settlement of the disputes relating to the interpretation of the Amending Agreement known by both parties as of May 22, 2009, including:

    (a)    Confirming that Nortel's obligations to purchase inventory in accordance with existing plans of record is in addition to its obligation to purchase $120 million of inventory from Flextronics;

    (b)    Confirming that termination of the 2003 MCMSA will not occur on July 12, 2009, as had been provided in the termination notice delivered by Flextronics dated January 12, 2009;



- 9 -

(c)     Confirming that inventory acquired by Flextronics on or before the effective date of the Amending Agreement may be used in the calculation of Nortel's quarterly E&O purchase orders, but that Nortel shall not be required to purchase such inventory as part of its purchase of the quarterly E&O;

(d)     Confirming, for purposes of determining the due date for Nortel's payments in accordance with the modified weekly credit terms set forth in the Amending Agreement, that date of "delivery" means the date that Nortel physically receives the items delivered or provided by Flextronics; and

(e)     Addressing in the side letter certain other disputes that have arisen between the parties, including an agreement that performance under the MCMSAs and subsequent agreements does not constitute an extension of credit by either party.

35.     The terms of the May Settlement Agreement, which was filed under seal, was approved by the U.S. Bankruptcy Court on June 11, 2009 and by this Honourable Court on June 16, 2009.

**Divestiture Process**

36.     Nortel currently is in the process of divesting its assets through various pending and future sales of businesses or product lines or any other assets or shares of Nortel (each, a "Business") to one or more third parties (a "Purchaser") (any such sale, whether by asset sale, merger, operation of law or otherwise, a "Divestiture"). Flextronics is a supplier to several of the Businesses, including without limitation the Enterprise Solutions, MEN (Optical), CVAS, Passport and GSM Businesses. Due to the size of Nortel's supply relationship with Flextronics, Nortel expects it is likely that potential Purchasers will want to continue a supply relationship with Flextronics in connection with a Divestiture.

37.     On September 30, 2009, Flextronics filed a number of proofs of claim against the Applicants asserting pre-filing amounts owed by the Applicants to Flextronics (the "Canadian Proofs of Claim"). The Canadian Proofs of Claim, together with the claims filed in the Chapter 11 Proceedings, any claims that have been or could be filed or otherwise asserted against the EMEA Entities (the "EMEA Proofs of Claim") and any claims that have been or could be filed

- 10 -

or otherwise asserted in any other proceeding of a Nortel entity or otherwise in any other proceeding of a Nortel entity (the "Flextronics Proofs").

## The Settlement Documents

38.    In light of the several pending and potential Divestitures, the significance, size and complexity of the supply relationship with Flextronics, and Nortel's experience in prior Divestitures since its commencement of creditor protection proceedings, Nortel and Flextronics have determined that it is in their mutual best interests to enter into an agreement that:

(a)    provides a mechanism for the transfer of the supply relationship to interested parties;

(b)    resolves the settlement and payment of certain claims held by Nortel and Flextronics that would need to be resolved in connection with such Divestitures; and

(c)    resolves other claims held by each of the Parties in order to fully settle pre-filing claims held by the Parties and certain other claims related to open accounts receivable and payable by Flextronics and Nortel.

39.    Moreover, while Nortel does not admit the validity of:

(a)    any objection Flextronics has asserted to date in these proceedings or the chapter 11 proceedings, or that it could assert with respect to any pending or future Divestiture, including without limitation to the treatment of the MCMSAs in connection with any such Divestiture, or

(b)    any claim asserted in the Flextronics Proofs;

Nortel believes it is in the best interests of Nortel and its creditors to avoid the expense, delay and uncertainty associated with any possible litigation relating to such potential sale-related objections, the Flextronics Proofs, and the other matters addressed in the Settlement and Release Agreement.

- 11 -

40.    To this end, the Parties have reached agreement to:

    (a)    ensure Flextronics' cooperation with regard to pending and future Divestitures;

    (b)    ensure the provision by Flextronics of a supply contract with the Purchaser in connection with any future Divestiture on the terms described in the Settlement and Release Agreement;

    (c)    satisfy the resolution of the existing objections with respect to the sale of the Nortel Enterprise business;

    (d)    fully and finally resolve the Flextronics Proofs, including certain post-filing ordinary course contractual claims, and all of the Parties' respective claims arising prior to the Initial Order, except as otherwise expressly stated in the Settlement and Release Agreement; and

    (e)    provide for the Parties' performance of their post-filing obligations under the MCMSAs in accordance with the Settlement and Release Agreement.

41.    The agreement is the result of lengthy and vigorous negotiations between Nortel and Flextronics, including extensive discussions with the Monitor, the Committee and the Bondholder Group.

42.    The agreements between Nortel and Flextronics have been memorialized in a settlement and release agreement (the "Settlement and Release Agreement") dated November 20, 2009. On that same date, Nortel also entered into a side agreement with the Joint Administrators (the "Side Agreement", collectively, with the Settlement and Release Agreement, the "Settlement Documents").

*Settlement and Release Agreement*

43.    The main terms of the Settlement and Release Agreement include:

    (a)    a payment by Nortel in the amounts set forth in paragraph 1 of Schedule B to the Settlement and Release Agreement (such payment together with the Adjustment Amount (as defined below), the "Payment Obligation"), to be made in two equal

- 12 -

installments —10 days after the Effective Date (as defined in the Settlement and Release Agreement), and on or before May 31, 2010 — in consideration for Flextronics' obligations under the Settlement and Release Agreement, and the full and final settlement of (i) the Flextronics Proofs, including certain post-filing ordinary course contractual claims, and (ii) all of the Parties' respective claims arising prior to the Initial Order, except as otherwise expressly stated in the Settlement and Release Agreement. The Settlement and Release Agreement provides that NNI shall pay the Payment Obligation to Flextronics on behalf of Nortel. The allocation within Nortel for the Payment Obligation is provided for under the Side Agreement.

(b)     the resolution of additional disputed accounts receivable (listed on Schedule J to the Settlement and Release Agreement) owed by Flextronics to Nortel. In the event the disputed invoices are determined to be invalid, Nortel shall not be entitled to setoff those amounts against amounts it otherwise would owe Flextronics, and accordingly would be required to pay to Flextronics such amounts (the "Adjustment Amount").

(c)     the Payment Obligation (including the Adjustment Amount) shall constitute an administrative expense claim pursuant to section 503(b) of the Bankruptcy Code against NNI in the Chapter 11 Proceedings.

(d)     Flextronics and Nortel agree that, except as may be specifically provided under the Settlement and Release Agreement, their post-filing accounts receivable and payable, including without limitation certain accounts receivable identified in Schedule C to the Settlement and Release Agreement (the "Post-Filing Ordinary Contractual Claims"), will be resolved and paid in the ordinary course of business.

(e)     Flextronics agrees to cooperate with Nortel and Purchasers in pending and future Divestitures, including by:

- 13 -

412

(i)     Flextronics agrees not to assert any rights to adequate protection or similar rights related to the transfer of equipment owned by Nortel in connection with the sale of Nortel's Enterprise Solutions Business as authorized by this Court and the U.S. Bankruptcy Court on September 16 and 17, 2009, and to effect the orderly transfer of the equipment in Flextronics' possession owned by Nortel and proposed to be transferred to the Purchaser of the Enterprise Solutions Business.

(ii)    in connection with any proposed future Divestiture,

> (1)    Flextronics agrees that at the request of Nortel in connection with such Divestiture, it will conduct good faith negotiations with a proposed Purchaser for the purpose of entering into a direct agreement by and among Flextronics, such Purchaser and any of such Purchaser's designated Affiliates for the supply of products and services related to the applicable Business being acquired on market competitive terms and conditions.

> (2)    Without limiting the foregoing obligation, if by the time periods set forth in the Settlement and Release Agreement, such direct agreement has not been reached, Flextronics will, at the request of Nortel, enter into and execute a new supply agreement with the Purchaser that contains terms and conditions identical (aside from nonmaterial conforming changes) to the terms and conditions (including, but not limited to, payment and pricing terms) existing under the MCMSAs, as such terms and conditions relate to the Business subject to such Divestiture, as of January 12, 2009 (subject to certain terms as described in the Settlement and Release Agreement).

> (3)    Nortel and Flextronics agree to conduct good faith negotiations with the Purchaser regarding a three-way inventory purchase agreement in connection with such Divestiture and to limit

- 14 -

Nortel's liability for certain unconsumed portions of forecasts, as further described in the Settlement and Release Agreement.

(4)     Nortel and Flextronics further agree that Nortel will not place purchase orders for a Business following the closing of a Divestiture, except in an administrative role for a Purchaser.

(iii)     Flextronics agrees not to file any formal or informal objection or take any other action in opposition to or with the intention of frustrating any Divestiture, or to seek from Nortel or the Purchaser any remedy, payment or any modification of the MCMSAs as a result of any such Divestiture, including without limitation any claim or demand for adequate assurances, changes in payment terms, deposits or any other credit protection, cure costs, or any request or demand for the termination, assumption, rejection or repudiation of the MCMSAs or any part thereof. Flextronics further agrees that it shall not assert any claim or seek any payment or other remedy from a Purchaser in compensation for any right or claim released, waived or compromised by Flextronics pursuant to the Settlement and Release Agreement.

(iv)     The Settlement and Release Agreement provides further mechanics and terms to facilitate Divestitures.

(f)     Flextronics and Nortel further agree that (absent a material breach by the other Party) the Parties shall not seek to reject, repudiate or otherwise cancel or terminate the Flextronics MCMSA pursuant to the processes applicable in the Proceedings except upon 210 days notice to the other Party (or such shorter period as the Parties may agree), during which period the Parties shall continue to perform their obligations under the Flextronics MCMSA in the ordinary course of business.

(g)     Flextronics and Nortel agree to not exercise their respective rights to deliver a notice for termination for convenience under the Flextronics MCMSA for the period through December 31, 2010, and to enter into certain agreements related to

44

- 15 -

the continuation of specific manufacturing agreements, following the termination of the SLR MCMSA.

(h)     Nortel and Flextronics each are releasing claims against each other for pre-filing amounts and as described and qualified in sections 6 and 7 of the Settlement and Release Agreement. The releases include a release by the U.S. Debtors of claims arising under chapter 5 of the Bankruptcy Code, subject to certain conditions set forth in the Settlement and Release Agreement.

*The Side Agreement*

44.    The Applicants, the U.S. Debtors and the EMEA Entities concluded it was in their best interests to further the Settlement and Release Agreement through the entry into a Side Agreement to govern allocation of responsibility for the Payment Obligation and the settlement of certain avoidance actions under the Settlement and Release Agreement.

45.    Following lengthy negotiations, including extensive negotiations with the Monitor, the Committee, the Bondholder Group and the Joint Administrators, on or about November 20, 2009, the Applicants, the U.S. Debtors, the EMEA Entities and the Joint Administrators (collectively, the "Side Agreement Parties") entered into the Side Agreement governing the initial funding of the Payment Obligation under the Settlement and Release Agreement and ultimate allocation of the Settlement Cost (as defined in the Side Agreement) amongst them.

46.    The Side Agreement provides for the initial funding of the Payment Obligation among the estates, the establishment of a segregated account by NNI to hold the funds pending payment, and a methodology for the ultimate allocation of the Settlement Cost incurred by the Side Agreement Parties in each of the following three groups: (i) the Applicants, (ii) the U.S. Debtors and (iii) the EMEA Entities (each of (i), (ii) and (iii), a "Regional Entity") according to the weighted average of proceeds allocated to such Regional Entity from the sales of the Enterprise, MEN (Optical), CVAS and GSM businesses.

47.    Nortel discussed the negotiations and settlement with the following parties, none of whom has raised any objections to the Settlement Documents:

- 16 -

(a)    the Monitor;

(b)    the Committee;

(c)    the Bondholder Group; and

(d)    the Joint Administrators.

48.    The U.S. Debtors have filed a motion with the U.S. Bankruptcy Court seeking approval of the Settlement Documents, which is scheduled to be heard at a joint hearing on December 2, 2009.

49.    I believe that the Settlement Documents are a good faith means to resolve the issues between Nortel and Flextronics and that the Applicants will benefit from the Settlement and Release Agreement through their ability to further Divestitures, and the avoidance of the time, cost and expense of resolution of the other claims between them and Flextronics whether on a consensual basis or through litigation. The Side Agreement provides for a fair and efficient method for allocating the costs of settlement among the Nortel estates. The Agreements are within sound business judgment and further the interests of the Applicants and the Applicants' stakeholders.

**The Need for a Sealing Order**

50.    I am advised that an unredacted copy of the Settlement Documents is to be filed with this Honourable Court. I have reviewed the Settlement Documents with the redactions as reflected in Exhibit "A" "B" to my affidavit and I believe it is essential that the redacted information not become publicly available.

51.    Specifically, the Applicants request to file under seal the following information in the Settlement and Release Agreement:

(a)    the value of the Payment Obligation as set forth in Schedule B to the Settlement and Release Agreement; and

46

- 17 -

(b)    certain other Schedules and portions of Schedules and Exhibits to the Settlement and Release Agreement that contain pricing information.

52.    In the Side Agreement, the Applicants request to file under seal all values set forth therein that, if not filed under seal, would allow for the determination of the Payment Obligation and the total Settlement Cost of the Settlement and Release Agreement.

53.    I believe that the redacted portions of the Settlement Documents contain information the release of which would similarly disadvantage the Applicants. The settlement with Flextronics is both necessitated by and reflective of Nortel's unique relationship with Flextronics and the complexity of the relationship. The disclosure of certain details of the settlement would severely impair the ability of the Applicants to successfully manage their relationships with their other suppliers and creditors, and thereby place strain on the Applicants' operations during this critical period and potentially result in added expenses that would drain additional resources from the Applicants' estates and reduce the eventual recovery of creditors.

54.    I believe that the disclosure of certain economic details of the settlement contained in Redacted Material would disrupt the Divestitures Nortel is undertaking to maximize value for their estates and creditors and the necessary negotiations between the Applicants' suppliers and potential Purchasers to facilitate the transfer of supply arrangements until such Divestiture.

55.    Moreover, the information redacted in the Side Agreement relates to the Side Agreement Parties' payment obligations and agreements regarding the allocation methodology that, if disclosed, could compromise the process for allocation of the Settlement Cost.

| | |
|---|---|
| SWORN BEFORE ME in the city/town of _Neu i br K_ in the state of _Neu i'rk_ in the United States of America, on this _? 4_ th day of November, 2009. | _Donde McJ-_ <br> **DONALD MCKENNA** |
| _Susan Cumiskey_ <br> Commissioner for Taking Affidavits | |

SUSAN CUMISKEY
Notary Public, State Of New York
No.01CU6086318
Qualified In Westchester County
Certificate Filed In New York County
Commission Expires January 21, 2011

DOCSTOR: 1811938\5

# TAB A

47

This is Exhibit ........... referred to in the
affidavit of ........ Donald T. Kenna
sworn before me, this .............
day of ..... November ............ 20 15.

Susan Cumiskey
A COMMISSIONER FOR TAKING AFFIDAVITS

SUSAN CUMISKEY
Notary Public, State Of New York
No.01CU6086318
Qualified In Westchester County
Commission Expires January 21, 2011

**Execution Version**

**SETTLEMENT AND RELEASE AGREEMENT**

Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd ("FTS") and the affiliates of FC and FTS that are signatories hereto, on behalf of themselves and their respective Affiliates (as defined below) (collectively, "Flextronics"), and (i) Nortel Networks Limited ("NNL") and its Canadian affiliates that have filed an application under the Companies' Creditors Arrangement Act (the "CCAA"), (ii) Nortel Networks Inc. ("NNI") and its US debtor affiliates, (iii) the companies listed on Schedule A hereto (collectively the "EMEA Entities"; and (i), (ii) and (iii) collectively, "Nortel")), and (iv) the joint administrators acting on behalf of the EMEA Entities also listed on Schedule A hereto (the "Joint Administrators") (Flextronics, Nortel and the Joint Administrators are collectively referred to herein as the "Parties") hereby enter into this agreement (the "Settlement and Release Agreement"), on the terms and conditions set forth below:

**WHEREAS**, NNL and Flextronics are parties to a Master Contract Manufacturing Services Agreement, dated as of September 30, 2003, between NNL and Flextronics Corporation (f/k/a Solectron Corporation) (including any ancillary agreements incorporated by reference thereunder, including without limitation certain Virtual Systems House Agreements ("VSHAs") and purchase orders, and as amended by an amending agreement, dated June 18, 2004; the "SLR MCMSA"), and an Amended and Restated Master Contract Manufacturing Services Agreement, dated as of June 29, 2004, between NNL and Flextronics Telecom Systems Ltd. (including any ancillary agreements incorporated by reference thereunder, including without limitation certain VSHAs and purchase orders, as amended from time to time by the following agreements: (i) the first amending agreement, dated November 1, 2004; (ii) the second amending agreement, dated May 8, 2006; (iii) a memorandum of understanding, dated

1

48

October 13, 2006; and (iv) the third amending agreement, dated March 31, 2008, the

"Flextronics MCMSA," and together with the SLR MCMSA, as amended, the "MCMSAs").

WHEREAS, on January 13, 2009, NNL and Flextronics entered into an

agreement (the "Amending Agreement") which, among other things, amended the contractual

relationship, as set forth in the MCMSAs, in a variety of ways, including: (i) NNL agreed to

purchase from Flextronics US$120,000,000 of inventory, as identified in Schedule A of the

Amending Agreement, via four payments over an approximately six-month period; (ii) NNL

agreed to issue, on a quarterly basis, purchase orders to Flextronics for certain inventory defined

therein as Quarterly E&O; (iii) NNL and Flextronics agreed to treatment of certain existing plans

of record for transfers of operations; and (iv) NNL and Flextronics modified NNL's credit terms

to provide for payments on a weekly basis;

WHEREAS, on or about January 14, 2009 (the "Petition Date")[1], (i) NNL and

certain of its Canadian Affiliates filed an application under and were granted certain initial

creditor protection pursuant to the CCAA in Canada to facilitate a comprehensive business and

financial restructuring (the "CCAA Proceedings") pursuant to the terms of an initial order of the

Ontario Superior Court of Justice (Commercial List) (the "Canadian Court"), as the same has

been and may be amended and restated from time to time, (ii) NNI and certain of its U.S.

subsidiaries (the "Debtors")[2] commenced bankruptcy cases (the "US Bankruptcy Cases") by

filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "US

Bankruptcy Court" and together with the Canadian Court, the "Courts"), and (iii) the High Court

---

[1] The Petition Date shall also refer, only in the case of Nortel Networks (CALA) Inc., to July 14, 2009.
[2] The Debtors also include Nortel Networks (CALA) Inc., which subsequently filed a voluntary chapter 11 petition in the US Bankruptcy Court on July 14, 2009, and the US Bankruptcy Cases include the Chapter 11 case of Nortel Networks (CALA) Inc.

49

of Justice in England placed nineteen of Nortel's European affiliates, including the EMEA Entities, into administration under the control of individuals from Ernst & Young LLC (the "EMEA Proceedings", and together with the CCAA Proceedings and the US Bankruptcy Cases, the "Proceedings");

WHEREAS, Flextronics' business relationship with Nortel is primarily governed by the MCMSAs;

WHEREAS, subsequent to the commencement of the Proceedings, certain disputes emerged between Flextronics and Nortel regarding the proper interpretation of the Amending Agreement and certain other matters, and the resolution of such disputes was memorialized in a Settlement Agreement (the "Settlement Agreement") and related Side Letter (the "Side Letter"), each dated as of May 22, 2009;

WHEREAS, the Amending Agreement, the Settlement Agreement and the Side Letter have been approved by the Canadian Court in the CCAA Proceedings, and the Settlement Agreement and Side Letter have been approved by the US Bankruptcy Court in the US Bankruptcy Cases;

WHEREAS, the Settlement Agreement provides, among other things, that "the termination of the SLR MCMSA, pursuant to the termination notice delivered by Flextronics dated January 12, 2009, shall be effective on December 12, 2009";

WHEREAS, the Flextronics MCMSA remains in effect and no termination notices have been given thereunder;

WHEREAS, Nortel has not repudiated or moved to assume or reject either of the MCMSAs to date;

3

Execution Version

**WHEREAS,** the MCMSAs establish a complex manufacturing relationship by which, in essence, Nortel has "outsourced" its hardware design, manufacturing and supply functions to Flextronics;

**WHEREAS,** in general terms (subject to the actual terms of the MCMSAs), pursuant to this complex relationship, NNL and certain Nortel entities issue 12-month nonbinding "forecasts" of orders for goods and services expected to be placed by NNL and such other Nortel entities in the coming year, which forecasts Flextronics uses as a basis to place orders for materials from third parties and to otherwise manage its manufacturing process to meet Nortel's expected demand ("Forecasts");

**WHEREAS,** certain Nortel entities place monthly orders for finished goods to Flextronics, which, following acceptance by Flextronics, obligate Flextronics to ship goods in accordance with the accepted purchase orders;

**WHEREAS,** on July 20, 2009, the Debtors filed the Debtors' Motion For Orders (I) (A) Authorizing Entry Into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents Under Seal and (G) Setting a Date For the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases [Docket No. 1131] (the "US Enterprise Sale Motion") in the US Bankruptcy Court;

$6\backslash$

**Execution Version**

**WHEREAS**, on September 4, 2009, Flextronics filed a timely limited objection and reservation of rights with respect to the US Enterprise Sale Motion (the "Enterprise Objection");

**WHEREAS**, on September 15, 2009, Nortel Networks Corporation, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Applicants") filed a motion for the relief set forth in the Applicants' Notice of Motion, including approval to sell assets and shares in Nortel's Enterprise Solutions Business pursuant to an amended and restated asset and share sale agreement, dated as of September 14, 2009 (the "Canadian Enterprise Sale Motion") in the Canadian Court;

**WHEREAS**, on September 16, 2009, the US Bankruptcy Court entered the Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases (the "US Enterprise Sale Order") which, *inter alia*, granted the relief sought in the US Enterprise Sale Motion and contained in paragraph 28 thereof a resolution of the Enterprise Objection;

**WHEREAS**, on September 17, 2009, the Canadian Court entered the Approval and Vesting Order (Enterprise Solutions Business) (the "Canadian Enterprise Sale Order," together with the US Enterprise Sale Order, the "Enterprise Sale Orders"), which, *inter alia*, granted the relief sought in the Canadian Enterprise Sale Motion and contained in paragraph 11 thereof a resolution of the Enterprise Objection;

**WHEREAS**, Flextronics and certain of the Nortel entities have certain outstanding amounts owing between them and their various Affiliates, where "Affiliates" means

5

any entity that controls, is controlled by or is under common control with any of the Parties, where "control" means ownership of more than 10% of the voting equity of an entity or the ability to otherwise direct the management of an entity;

**WHEREAS**, while Nortel does not admit the validity of any objection Flextronics has asserted to date in the Proceedings, or that it could assert with respect to any prior, pending or future sale of a business or product line or any other assets or shares of Nortel (a "Business") to one or more third parties (a "Purchaser") (any such sale, whether by asset sale, merger, operation of law or otherwise, a "Divestiture"), including without limitation to the treatment of the MCMSAs in connection with any such Divestiture, the Parties wish to resolve certain matters as set forth in this Settlement and Release Agreement, including to (i) resolve the Enterprise Objection, (ii) fully and finally resolve the proofs of claim filed by Flextronics against Nortel and the Released Claims (as defined in Section 7 of this Settlement and Release Agreement), including the Post-Petition Ordinary Course Contractual Claims (as defined in Section 1 of this Settlement and Release Agreement), except as otherwise expressly stated herein, (iii) ensure Flextronics' cooperation with regard to pending and future Divestitures, (iv) ensure the provision by Flextronics of a supply contract with the Purchaser in connection with any future Divestiture on the terms described herein and (v) provide for the Parties' performance of their postpetition obligations under the MCMSAs until termination in accordance with this Settlement and Release Agreement;

**WHEREAS**, nothing in this Settlement and Release Agreement shall cause any of the EMEA Entities, the Joint Administrators or any other Nortel entity to assume any obligations under the MCMSAs or any other agreement to which such EMEA Entity, Joint Administrator or other Nortel entity is not a signatory prior to the date hereof; and

53

**WHEREAS**, the Parties have been and are currently represented by counsel at all times during the course of the settlement negotiations culminating in this Settlement and Release Agreement.

**NOW THEREFORE**, in consideration of the foregoing and in consideration of the terms, conditions, mutual agreements and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, and in order to avoid the expense, delay and uncertainty associated with further litigation relating to the Enterprise Objection or any prior, pending or future Divestiture and in order to resolve certain claims and the other matters addressed herein, it is hereby:

**AGREED**, by and between the Parties hereto, as follows:

1.      **Payment Obligations**.  In full and final settlement of the Released Claims, subject to the terms and conditions set forth below, NNI shall pay to Flextronics on behalf of Nortel (in accordance with a side agreement among the Nortel parties hereto to which Flextronics is not a party) the Payment Obligation (as defined in Schedule B of this Settlement and Release Agreement) set out in Schedule B of this Settlement and Release Agreement, at the times set forth in Schedule B to this Settlement and Release Agreement. The Payment Obligation shall constitute an administrative expense pursuant to Section 503(b) of the Bankruptcy Code against NNI in its US Bankruptcy Case  which must be paid in accordance with the terms set forth in Schedule B of this Settlement and Release Agreement.  In addition, in full and final settlement of the portion of the claims included in the US Proofs of Claim and the Canadian Proofs of Claim (as such terms are defined in section 7 herein) that the Parties hereby agree are valid obligations arising after the Petition Date owed by Nortel to Flextronics, and which claims are identified in Schedule C to this Settlement and Release Agreement (the "Post-

7

54

**Execution Version**

Petition Ordinary Contractual Claims"), subject to the terms and conditions set forth below,

certain Nortel entities shall pay to Flextronics the amounts set out in Schedule C of this

Settlement and Release Agreement in the ordinary course of business, which amounts the Parties

acknowledge are undisputed and shall be paid not later than December 15, 2009.

Notwithstanding any other provision of this Settlement and Release Agreement or any other

agreement among the parties, the obligation of each Nortel entity to make the payment next to its

name in Schedule C of this Settlement and Release Agreement is a several obligation of such

entity and nothing in this Settlement and Release Agreement or any other agreement among the

parties shall be construed to cause the obligations set out in Schedule C to be a joint obligation of

any Nortel entity, and Flextronics expressly agrees hereby that the liability of each of the Nortel

entities to make the payments set out next to its name is limited to the amount of such payment

for such entity and that no other Nortel entity has any liability to make any of the payments set

out therein.

    2.    **Post-Filing Performance.**

       (a) The Parties hereby acknowledge and agree that, except as otherwise expressly

set forth in section 4(a)(iv) of this Settlement and Release Agreement, the Parties shall perform

in good faith in the ordinary course of business in accordance with the terms of the MCMSAs, as

amended by the Amending Agreement, the Settlement Agreement or the Side Letter (including

without limitation Nortel's obligations to provide reasonable Forecasts of expected orders

consistent with historical business practices between the Parties, to issue purchase orders

consistent with historical business practices and to make timely payment of invoices with respect

to deliveries made in accordance with such purchase orders, and Flextronics' obligations to

purchase inventory and to fulfill purchase orders), without any claim or demand for adequate

8

assurances, changes in payment terms or deposits or any other credit protection, until termination pursuant to section 5 of this Settlement and Release Agreement.

(b) With respect to inventory that Flextronics identifies as subject to a post-petition purchase obligation by Nortel, Flextronics hereby agrees that (i) Nortel may reasonably request information regarding any such inventory, (ii) Flextronics shall supply information pursuant to and shall reasonably cooperate with such request and (iii) Nortel will be afforded reasonable access to inspect such inventory, in order for Nortel to determine (which determination shall be made in writing to Flextronics within 30 days of the date Flextronics identifies such inventory as subject to a post-petition purchase obligation by Nortel) whether such inventory is defective or does not comply with the applicable specifications in accordance with the MCMSAs, was not acquired using prudent purchasing practices in accordance with the MCMSAs or was previously paid for by Nortel under the Amending Agreement or the Settlement Agreement or otherwise, for which the obligation to pay has become an obligation of a Purchaser in connection with a Divestiture, or for any other reason is not an unsatisifed post-petition purchase obligation. For the avoidance of doubt, this section shall not apply to any obligations released under this Settlement and Release Agreement.

(c) With respect to inventory owned by Nortel that Flextronics or a third-party warehousing provider holds on consignment as of the Effective Date (the "Consigned Inventory"), Flextronics agrees to buy from such Consigned Inventory, at the lesser of (i) the price paid by Nortel to Flextronics for such Consigned Inventory or (ii) the then-prevailing market price at the time Flextronics purchases the Consigned Inventory, any inventory that Flextronics needs in order to fulfill a purchase order that Flextronics receives from any third party (including, but not limited to, a Purchaser in connection with any of the Divestitures) prior

9

to Flextronics purchasing any such inventory from any of its suppliers, provided, however, that Flextronics shall be permitted to consume inventory purchased pursuant to an existing non-cancelable purchase order with a third party prior to purchasing Consigned Inventory. For the avoidance of doubt, the foregoing sentence does not limit the ability of Flextronics to sell any inventory that Flextronics owns as of the Effective Date.

(d) The Parties hereby acknowledge and agree that, notwithstanding Section 8 of the Side Letter, and except as otherwise expressly set forth in this Settlement and Release Agreement or as agreed to in advance and in writing by the Parties in the ordinary course of business, the Parties shall not hold or offset any past, present or future payables, claims or other amounts that they or any of their Affiliates now owe or in the future may owe the other Party or any of its Affiliates (including, without limitation, any amounts owed by the Parties or any of their Affiliates under the MCMSAs or any other agreement among any of the Parties that are not part of the Released Claims) against any past, present or future payables, claims or other amounts that are now owed or may in the future be owed to them or their Affiliates by the other Party or any of its Affiliates, and the Parties agree that all such amounts shall be paid in accordance with the terms of the relevant agreement. For the avoidance of doubt and without limiting the foregoing, the Parties agree that (i) the Parties will not hold or offset any past, present or future payables, claims or other amounts that they or any of their Affiliates may now owe or in the future may owe to the other Party or any of its Affiliates or have a past, present or future right of set-off with respect to the Pension Claims (as defined in section 6 below) and (ii) any right of recovery from Nortel with respect to the Pension Claims is restricted to any distribution to unsecured creditors under any Plan of Arrangement in the CCAA Proceedings, or

10

Execution Version

such rights as Flextronics may have, if any, as against the Nortel Networks Health & Welfare Trust.

      3.    **The Enterprise Sale Orders.**

      (a)  The Enterprise Sale Orders as they relate to the resolution of the Enterprise Objection (paragraph 28 of the US Enterprise Sale Order and paragraph 11 of the Canadian Enterprise Sale Order) shall remain effective as set forth therein; provided that Flextronics and Nortel agree that the obligations under section (vi) of paragraph 28 of the US Enterprise Sale Order and paragraph 11 of the Canadian Enterprise Sale Order are satisfied as follows:

      (i)      Flextronics shall not assert, or shall be deemed to have withdrawn, any rights to adequate protection or similar rights related to the transfer of equipment owned by Nortel in connection with the sale of Nortel's Enterprise Solutions Business as authorized by the Courts on September 16 and 17, 2009;

      (ii)     Flextronics and Nortel agree to effect the orderly transfer of the equipment in Flextronics' possession owned by Nortel and proposed to be transferred to the Purchaser of the Enterprise Solutions Business, which equipment has been identified in writing and agreed to between the Parties as of November 5, 2009. Nortel or the Purchaser shall provide Flextronics with written notification of its intent to transfer such equipment. Within 30 days of such written notification, Flextronics shall provide Nortel or the Purchaser, as appropriate, in writing, the estimated documented costs directly related to such transfer. For the avoidance of doubt, Nortel or the Purchaser, as appropriate and as agreed to between Nortel and Flextronics (in advance of any such transfer), shall bear the reasonable, documented costs directly related to any such transfer, including costs of storage, insurance and transportation directly related to any such transfer, any depreciation charge-backs and any taxes including sales, use, VAT and

Execution Version

transfer taxes or any levies, customs duties or similar governmental charges of any kind, each of

which costs shall be excluded from the Flextronics Released Claims (defined below), but shall

not include any formal or informal requests or demands for adequate protection payments or any

similar payments or protections.

(b) Nothing herein shall be construed as an amendment or restatement of the

Enterprise Sale Orders. Flextronics further agrees that it shall not and will not file or assert any

formal or informal objection or take any other action in opposition to any motion or other request

by Nortel for relief to effect the sale of the Enterprise Solutions Business provided such relief is

not inconsistent with section 3 of this Settlement and Release Agreement.

4.    **Future Divestitures**.

(a) In connection with any proposed future Divestiture, which for the purposes of

this section 4(a) excludes (x) the sale of Nortel's Enterprise Solutions Business pursuant to the

agreement approved by the Enterprise Sale Orders, (y) the sale of Nortel's CDMA and LTE

Access Business pursuant to the sale agreement approved in the Proceedings on July 28, 2009,

provided that each of (x) and (y) shall not be excluded if such sale is not consummated in

accordance with the approved applicable sale agreement, or in accordance with such applicable

sale agreement as modified or amended, and (z) the sale of Nortel's Layer 4-7 business pursuant

to the sale agreement approved in the U.S. Proceedings on March 26, 2009 and Canadian

Proceedings on April 7, 2009:

(i)    Flextronics agrees that at the request of Nortel in connection with such

Divestiture, it will conduct good faith negotiations with a proposed Purchaser for the purpose of

entering into a direct agreement by and among Flextronics, such Purchaser and any of such

65

Purchaser's designated Affiliates for the supply of products and services related to the applicable Business being acquired on market competitive terms and conditions; and

(ii)     Without limiting Flextronics' obligation in section 4(a)(i) of this Settlement and Release Agreement, if by the earliest of (x) 45 days after the conclusion of the auction of the Business pursuant to bidding procedures approved by the Courts, (y) 10 days after the entry of orders approving such Divestiture by the Courts (or if such orders are not entered on the same day, 10 days after the entry of the earlier order) and (z) 30 days prior to the closing of such Divestiture (as determined by Nortel), Flextronics and the Purchaser have not reached a direct agreement as described in section 4(a)(i) of this Settlement and Release Agreement, Flextronics hereby consents to, at the request of Nortel, enter into and execute an agreement with the Purchaser, which agreement shall be effective upon the closing of such Divestiture, that contains terms and conditions identical (aside from nonmaterial conforming changes) to the terms and conditions (including, but not limited to, payment and pricing terms) existing under the MCMSAs, as such terms and conditions relate to the Business subject to such Divestiture, as of January 12, 2009, provided that (A) for the avoidance of doubt, such agreement shall not include the terms of the Amending Agreement except as set forth in section 4(a)(ii)(B) of this Settlement and Release Agreement, (B) such agreement shall include the Quarterly E&O obligations set forth in section 4 of the Amending Agreement and section 5 of the Settlement Agreement, (C) at Purchaser's option, such agreement shall provide that Purchaser and Flextronics shall agree not to exercise their respective rights to deliver a notice for termination for convenience (as provided for in section 1.5 of the Flextronics MCMSA) for a period of three (3) months after the closing of such Divestiture; and (D) if Flextronics determines in good faith that the Purchaser's creditworthiness is insufficient to support such pre-Amending Agreement

payment terms, Flextronics shall be permitted to modify such payment terms (but not the pricing terms), provided that such modified payment terms shall be no worse than the payment terms received by any Flextronics customer whose creditworthiness is substantially similar to the Purchaser and shall not include demands for letters of credit, deposits or other similar creditor protections. In connection with the foregoing, upon the request of Nortel, Flextronics shall assess any potential Purchaser's creditworthiness and provide Nortel with the payment terms that Flextronics deems acceptable for such Purchaser in writing within two (2) business days of Nortel's request for such information, provided that (1) Nortel provides Flextronics, contemporaneously with such request for payment terms, all material nonpublic information provided by Purchaser to Nortel related to such Purchaser's creditworthiness, to the extent authorized by Purchaser, and (2) Nortel reasonably cooperates with Flextronics in connection with any of Flextronics' requests for further information regarding the Purchaser; and

(iii)    Nortel agrees, except to the extent provided above in this section 4, that the MCMSAs and any of Nortel's contractual rights thereunder as they relate to such Divestiture shall not be assigned to the Purchaser in connection with such Divestiture;

(iv)    Without limiting the obligation of Flextronics described in section 2(c) of this Settlement and Release Agreement, Nortel and Flextronics agree to conduct good faith negotiations with the Purchaser regarding a three-way inventory purchase agreement in connection with such Divestiture as set forth in section 3 of the Settlement Agreement (notwithstanding the limitation therein with respect to Divestitures where the gross proceeds are less than $100 million); provided that notwithstanding the foregoing and section 3(c) of the Settlement Agreement, in connection with such Divestiture, Nortel shall not be responsible or otherwise required to pay for any unconsumed portion of such Purchaser's Forecast (as defined

14

(c|

**Execution Version**

in the Settlement Agreement) or any other Quarterly E&O liability arising after the date of closing related to the Business subject to such Divestiture and Flextronics waives its right to seek payment from Nortel for such amounts; and

        (v)     At Nortel's request, within 30 days of execution of a Divestiture agreement, or a later date determined by Nortel, Flextronics and Nortel shall identify, in writing, any equipment in Flextronics' possession owned by or reserved for Nortel and proposed to be transferred to the Purchaser in such Divestiture, and shall promptly meet and confer to reconcile any potential discrepancies. Flextronics and Nortel agree to effect the orderly transfer of such equipment in accordance with the procedures set forth under the MCMSAs, as modified by the provisions of this section 4(a)(v). Nortel or the Purchaser shall provide Flextronics with written notification of its intent to transfer such equipment. Within 30 days of such written notification, Flextronics shall provide Nortel or the Purchaser, as appropriate, in writing, the estimated documented costs directly related to such transfer. For the avoidance of doubt, Nortel or the Purchaser, as appropriate and as agreed to between Nortel and Flextronics (in advance of any such transfer), shall bear the reasonable, documented costs directly related to any such transfer, including costs of storage, insurance and transportation directly related to any such transfer, any depreciation charge-backs and any taxes including sales, use, VAT and transfer taxes or any levies, customs duties or similar governmental charges of any kind, each of which costs shall be excluded from the Flextronics Released Claims (defined below). Flextronics further agrees that it shall not make any formal or informal requests or demands for adequate protection payments or any similar payments or protections in connection with equipment proposed to be transferred to the Purchaser in such Divestiture; and

15

Execution Version

(vi)    Upon closing of such Divestiture, Nortel shall cease placing Forecasts or purchase orders under the MCMSAs for products or services exclusively used in the Business subject to such Divestiture, provided that Nortel, in its capacity as transition service provider to the Purchaser, shall not be prohibited from providing administrative services to the Purchaser, including, but not limited to placing Forecasts or purchase orders on behalf of the Purchaser, and Nortel shall not be (A) restricted from placing Forecasts or purchase orders for any portion of the business not subject to such Divestiture or (B) released from any liability for such Forecasts or purchase orders referred to in (A) above.

(b) Except as otherwise provided in section 3(b) herein, Flextronics agrees that it shall not file with any court or assert in any proceeding or otherwise any formal or informal objection or take any other action in opposition to or with the intention of frustrating any Divestiture.  Flextronics further agrees that it shall not seek from Nortel or the Purchaser any remedy, payment, or any modification of the MCMSAs as a result of any such Divestiture, including without limitation any claim or demand for adequate assurances, changes in payment terms, deposits or any other credit protection, cure costs, or any request or demand for the termination, assumption, rejection or repudiation of the MCMSAs or any part thereof. Flextronics further agrees that it shall not assert any claim or seek any payment or other remedy from a Purchaser in compensation for the Released Claims or any other right or claim waived or compromised by Flextronics pursuant to this Settlement and Release Agreement.

5.    **Termination of MCMSAs.** The Parties acknowledge and agree that unless otherwise agreed between the Parties: (i) without limiting any of Flextronics' or Nortel's respective rights to terminate the Flextronics MCMSA upon a material breach by the other Party, the Parties shall not seek to reject, repudiate or otherwise cancel or terminate the Flextronics

16

Execution Version

MCMSA pursuant to the processes applicable in the Proceedings except upon 210 days notice to

the other Party (or such shorter period as the Parties may agree), during which period the Parties

shall continue to perform their obligations under the Flextronics MCMSA in the ordinary course

of business, and the Parties agree that if such notice is provided they will not deliver a notice for

termination for convenience that would become effective prior to such planned rejection,

repudiation, cancellation or termination date; and (ii) Flextronics and Nortel agree to not exercise

their respective rights to deliver a notice for termination for convenience pursuant to section 1.5

of the Flextronics MCMSA for the period through December 31, 2010, which for the avoidance

of doubt shall govern (y) the production of the SLR Enterprise Products (as defined in the

ERS8K Manufacturing Agreement, defined below) pursuant to the ERS8K Manufacturing

Agreement between and among  NNL, NNI, FC and FTS (the "ERS8K MA"), provided that the

Parties shall not be bound by this Section 5(ii)(y) until each of the parties to the ERS8K MA

execute the agreed form ERS8K MA attached hereto as Exhibit 1, and provided further that any

modifications to the agreed form ERS8K MA requested prior to the execution of such agreed

form ERS8K MA shall be subject to the reasonable approval of the parties to the ERS8K MA,

and (z) the production of the SLR MEN Products (as defined in the MEN Manufacturing

Agreement, defined below) pursuant to the MEN Manufacturing Agreement between and among

NNL, NNI, FC and FTS (the "MEN MA"), provided that the Parties shall not be bound by this

Section 5(ii)(y) until each of the parties to the MEN MA execute the agreed form MEN MA

attached hereto as Exhibit 2, and provided further that any modifications to the agreed form

MEN MA requested prior to the execution of such agreed form MEN MA shall be subject to the

reasonable approval of the parties to the MEN MA, and (iii) the SLR MCMSA shall terminate as

currently scheduled effective as of December 12, 2009 pursuant to and subject to the contractual

(c4

**Execution Version**

terms and conditions that apply to a termination made in accordance with its terms; provided,

however, that notwithstanding the termination of the SLR MCMSA and section 4 of the

Settlement Agreement, the Parties agree that Flextronics and Nortel shall continue to perform in

accordance with the terms and conditions of the SLR MCMSA all operations (A) under the

present VSHAs applicable to the CDMA business, and (B) under the Wireline Manufacturing

Agreement between and among NNL, NNI, FC and FTS, effective on June 23, 2009 (the

"Wireline Manufacturing Agreement") applicable to the Wireline Products business (as defined

in the Wireline Manufacturing Agreement). Flextronics further agrees that it shall grant a

Purchaser terms and conditions identical (aside from nonmaterial conforming changes) to the

terms and conditions under the then-existing ERS8K MA, MEN MA and  Wireline

Manufacturing Agreement, respectively, as such terms and conditions relate to a Business

subject to a future Divestiture, all on such terms, and subject to the provisions, as set forth in

section 4(a)(ii) of this Settlement and Release Agreement.

      6.   **Nortel Release.**  Upon the Effective Date, Nortel (including the Debtors and

their estates) (the foregoing collectively referred to as the "Nortel Releasors"), do hereby release,

waive, and discharge (i) the claims for open accounts receivable owed by Flextronics to Nortel as

of October 29, 2009 listed on Schedule H to this Settlement and Release Agreement, and (ii) any

and all rights, rights of set-off, causes of action, liabilities, remedies and claims of any kind or

nature whatsoever which the Nortel Releasors have, may have or could have asserted against

Flextronics or its former, present or future officers, directors, employees or agents (the

"Flextronics Released Parties"), which arise directly from or relate to transactions or events

occurring or deemed to occur prior to the Petition Date in law or in equity, whether known or

unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, whether



or not hidden or concealed, whether based on tort, fraud, contract or otherwise, and/or any other

obligations, claims, interests, or debts of any kind, which the Nortel Releasors, from the

beginning of time, heretofore possessed or may possess against the Flextronics Released Parties,

which include, without limitation, causes of action included in Chapter 5 of the Bankruptcy Code

(and any similar causes of action under applicable state law) (collectively, the "Chapter 5

Claims"), all claims arising under or relating to the MCMSAs, including without limitation

claims for guaranty, warranty and indemnity arising thereunder, claims arising under purchase

orders issued pursuant to the MCMSAs, claims of set-off and claims for cure under the

MCMSAs (collectively, the "Nortel Released Claims"). Without limiting section 2(d) of this

Settlement and Release Agreement, the Nortel Released Claims shall not include any rights,

causes of action, liabilities, remedies and claims or defenses of any kind or nature the Nortel

Releasors have, may have or could have against Flextronics arising pursuant to a Pension and

Retirement Benefits Agreement (the "PRBA") in connection with the transfer of facilities and

employees from Nortel to Flextronics in 2004, including any rights, causes of action, liabilities,

remedies and claims of any kind or nature or defenses arising from obligations under the PRBA

for certain post-retirement benefits (PRBs), transition retirement allowances (TRAs) and

retirement allowance payments (RAPs) (the "Pension Claims"). Notwithstanding the foregoing,

the Parties acknowledge and agree that, unless Flextronics is shown, following notice to

Flextronics provided within nine (9) months after the Effective Date, to have breached any of its

material obligations set forth in section 4 of this Settlement and Release Agreement, and unless

Flextronics does not cure such breach within five (5) business days following receipt of such

notice, the release by the Nortel Releasors of Chapter 5 Claims shall become effective upon the

earlier of (i) nine (9) months after the Effective Date and (ii) closing of Nortel's Divestitures

with respect to the CDMA/LTE, Enterprise, Optical, CVAS, Passport, GSM and Repair Operations business lines (and upon closing of each of these identified Divestitures Flextronics shall be released from Chapter 5 Claims relating to transactions in connection with such specific business lines). The Nortel Releasors shall not assert any Chapter 5 Claims against Flextronics unless and until, after giving notice of material breach, such breach not timely cured, as set forth in the immediately preceding sentence. In the event that a Chapter 5 Claim is asserted by one or more of the Nortel Releasors against Flextronics, the Parties agree that Flextronics shall be entitled to assert any defenses related to such Chapter 5 Claims provided for under the Bankruptcy Code or state law that Flextronics would have been able to assert if the Released Claims had not been released pursuant to this Settlement and Release Agreement. For the avoidance of doubt and without limiting the foregoing or other claims that may not be released under this Settlement and Release Agreement, the Nortel Released Claims do not include (i) any obligations, rights, causes of action, liabilities, remedies or claims of any kind or nature arising under this Settlement and Release Agreement, or (ii) claims and defenses to those open accounts receivable on Schedule I to this Settlement and Release Agreement, which remain subject to reconciliation by the Parties in the ordinary course of business. For purposes of this section 6, the Parties acknowledge and agree that (i) any guaranty, warranty, indemnity or similar obligation shall be deemed to arise on the earliest date that the relevant goods are "delivered" by Flextronics to Nortel or its designee or vice versa and (ii) "delivered" shall have the meaning agreed to in section 6(a) of the Settlement Agreement. It is further agreed that to the extent that the Nortel Releasors make any claim or commence or maintain any action or proceeding on behalf of themselves or on behalf of any other person or causes any other person to make any claim or commence or maintain any action or proceeding against any person or corporation or

20

other entity in which any claim could arise against the Flextronics Released Parties, or any of them, for contribution or indemnity or any other similar relief arising from or relating to the Nortel Released Claims (each such action a "Nortel Third Party Action"), the Nortel Releasors shall indemnify and hold harmless the Flextronics Released Parties for any reasonable and actual costs, fees (including reasonable attorneys' fees) or damages directly attributable to such Nortel Third Party Actions (such indemnity obligation the "Nortel Third Party Indemnity Obligations"). The Nortel Releasors hereby agree that the Flextronics Released Parties may require the Nortel Releasors to escrow any funds actually received on account of such Nortel Third Party Actions in an account to secure such Nortel Third Party Indemnity Obligations.

7.    **Flextronics Release.**   Upon the Effective Date, Flextronics (the foregoing referred to as the "Flextronics Releasors"), do hereby release, waive, and discharge any and all rights, rights of set-off, causes of action, liabilities, remedies and claims of any kind or nature whatsoever which the Flextronics Releasors have, may have or could have asserted against Nortel or its former, present or future administrators, trustees, officers, and Ernst & Young Inc. as "Monitor" in connection with the CCAA Proceedings (the "Monitor"), directors, employees or agents (the "Nortel Released Parties"), which arise directly from or relate to transactions or events occurring or deemed to occur prior to the Petition Date, in law or in equity, whether known or unknown, foreseen or unforeseen, matured or unmatured, contingent or not contingent, whether or not hidden or concealed, whether based on tort, fraud, contract or otherwise, and/or any other obligations, claims, interests, or debts of any kind, which the Flextronics Releasors, from the beginning of time, heretofore possessed or may possess against the Nortel Released Parties, which include, without limitation: any and all claims for Pre-Filing Inventory (as defined in the Settlement Agreement) provided however that Nortel shall not be entitled to ownership of

21



such Pre-Filing Inventory unless payment is made in accordance with the MCMSAs; claims

arising under § 503(b)(9) of the Bankruptcy Code, including the claims pursuant to § 503(b)(9)

of the Bankruptcy Code filed or otherwise asserted by FC, FTS, Flextronics America, LLC

("Flextronics America"), Flextronics International Europe B.V. ("Flextronics Int'l Europe"),

Flextronics Logistics USA, Inc. ("Flextronics Logistics USA"), Flextronics Sales & Marketing

North Asia (L) Ltd ("Flextronics Sales & Marketing North Asia"), Flextronics Technology

(Penang) Sdn. Bhd. ("Flextronics Technology (Penang)"), Flextronics International Latin

America (L) Ltd. ("Flextronics Int'l Latin America") and Flextronics International USA, Inc.

("Flextronics Int'l USA"), against NNI, Nortel Altsystems, Inc. ("Nortel Altsystems") and Nortel

Networks (CALA), Inc. ("Nortel Networks (CALA)") (as detailed in Schedule E of this

Settlement and Release Agreement) and any other claims arising under § 503(b)(9) of the

Bankruptcy Code that have been or could be filed or otherwise asserted in the US Bankruptcy

Cases (such claims, "§ 503(b)(9) Claims"); all claims included in the proofs of claim filed or

otherwise asserted by FC, FTS, Flextronics America, Flextronics EMS Canada Inc. ("Flextronics

EMS Canada"), Flextronics Int'l Europe, Flextronics Int'l Latin America, Flextronics Int'l USA,

Flextronics Logistics USA, Flextronics Sales & Marketing North Asia and Flextronics

Technology (Penang) against NNI, Nortel Networks Capital Corporation, Inc., Nortel

Altsystems, Nortel Networks International Inc. and Nortel Networks (CALA) (as detailed in

Schedule F of this Settlement and Release Agreement) and any other such proofs of claim that

have been or could be filed or otherwise asserted in the US Bankruptcy Cases (such claims, "US

Proofs of Claim"); all claims included in the proofs of claim filed or otherwise asserted by FC,

FTS, Flextronics Int'l Europe, Flextronics Electronics Technology (Suzhou) Co. Ltd.,

Flextronics Distribution, Inc., Flextronics America, Flextronics International Europe B.V.,

**Execution Version**

Flextronics Int'l Latin America, Flextronics (Canada) Inc., Flextronics International Poland sp.

z.o.o., Flextronics Sales & Marketing North Asia, Flextronics Canada Design Services Inc.,

Flextronics EMS Canada and Flextronics Enclosure Systems (Chongzhou) Ltd. against NNL,

Nortel Networks Technology Corporation, Nortel Networks International Corporation, Nortel

Networks Global Corporation and Nortel Networks Corporation (as detailed in Schedule G of

this Settlement and Release Agreement) and any other such proofs of claim that have been or

could be filed or otherwise asserted in the CCAA Proceedings (such claims, "Canadian Proofs of

Claim"); any other claims that have been or could be filed or otherwise asserted in the EMEA

Proceedings (the "EMEA Proofs of Claim"); any claims that have been or could be filed or

otherwise asserted in any other proceeding of a Nortel entity or otherwise (such claims together

with the EMEA Proofs of Claim, the § 503(b)(9) Claims, the US Proofs of Claim and the

Canadian Proofs of Claim, the "Flextronics Proofs"); reclamation claims arising under § 546 of

the Bankruptcy Code or otherwise; any potential obligation owed by the Nortel Released Parties

to the Flextronics Releasors related to or arising under the Montreal closing as set forth and

contemplated in section 5 of the Side Letter, and all claims arising under or relating to the

MCMSAs, including without limitation claims for guaranty, warranty and indemnity arising

thereunder, claims arising under purchase orders issued pursuant to the MCMSAs, claims of set-

off and claims for cure under the MCMSAs (all of the foregoing collectively, the "Flextronics

Released Claims" and together with the Nortel Released Claims, the "Released Claims").

Without limiting section 2(d) of this Settlement and Release Agreement, the Flextronics

Released Claims shall not include any rights, causes of action, liabilities, remedies and claims or

defenses of any kind or nature the Flextronics Releasors have, may have or could have against

NNL or the Nortel Networks Health & Welfare Trust arising in connection with the Pension

23

Claims or against any party with respect to Chapter 5 Claims. For the avoidance of doubt, the

following claims, inter alia, are included in the Flextronics Released Claims: (i) the

US$180,896,868 of claims for unpaid accounts receivable as of the Petition Date asserted in the

Flextronics Proofs against the Nortel Released Parties at, inter alia, paragraphs 19-21 of the proof

of claim asserted by FC against NNI [Claim No. 4873] (the "NNI Proof of Claim"), (ii) any and

all claims by Flextronics against the Nortel Released Parties for unpaid accounts receivable as of

the Petition Date arising from Nortel's CDMA and LTE Access Business, (iii) any and all claims

by Flextronics against the Nortel Released Parties for unpaid accounts receivable on account of

goods or services delivered to the Nortel Released Parties or any of their customers or invoiced

to the Nortel Released Parties or any of their customers prior to the Petition Date, (iv) the

ordinary course contractual claims asserted in the Flextronics Proofs at, inter alia, paragraphs 22-

24 of the NNI Proof of Claim listed on Schedule D of this Settlement and Release Agreement,

(v) the Post-Petition Ordinary Course Contractual Claims asserted in the Flextronics Proofs at,

inter alia, paragraphs 22-24 of the NNI Proof of Claim listed on Schedule C of this Settlement

and Release Agreement, (vi) all claims related to Pre-Filing Inventory specifically including the

$98,757,797 for inventory on hand and the 3% cost of acquisition related to such inventory

asserted in the Flextronics Proofs at, inter alia, paragraphs 25-28 of the NNI Proof of Claim and

in the "Summary Tab" of the spreadsheets contained on the disk attached to the NNI Proof of

Claim as Exhibit C, and (vii) any and all other breach of contract claims asserted in the

Flextronics Proofs at, inter alia, paragraphs 29-30 of the NNI Proof of Claim, including

contingent, unliquidated and unmatured claims and claims for continuing breach. For the

avoidance of doubt and without limiting the foregoing or other claims that may not be released

under this Settlement and Release Agreement, the Flextronics Released Claims do not include (i)

$\jmath|$

any obligations, rights, causes of action, liabilities, remedies or claims of any kind or nature

arising under this Settlement and Release Agreement, or (ii) claims and defenses related to those

open accounts receivable on Schedule I to this Settlement and Release Agreement, which remain

subject to reconciliation by the Parties in the ordinary course of business. For purposes of this

section 7, the Parties acknowledge and agree that (i) any guaranty, warranty, indemnity or

similar obligation shall be deemed to arise on the earliest date that the relevant goods are

"delivered" by Flextronics to Nortel or its designee or vice versa and (ii) "delivered" shall have

the meaning agreed to in section 6(a) of the Settlement Agreement. It is further agreed that to

the extent that the Flextronics Releasors make any claim or commence or maintain any action or

proceeding on behalf of themselves or on behalf of any other person or causes any other person

to make any claim or commence or maintain any action or proceeding against any person or

corporation or other entity in which any claim could arise against the Nortel Released Parties, or

any of them, for contribution or indemnity or any other similar relief arising from or relating to

the Flextronics Released Claims (each such action a "Flextronics Third Party Action"), the

Flextronics Releasors shall indemnify and hold harmless the Nortel Released Parties for any

reasonable and actual costs, fees (including reasonable attorneys' fees) or damages directly

attributable to such Flextronics Third Party Actions (such indemnity obligation the "Flextronics

Third Party Indemnity Obligations"). The Flextronics Releasors hereby agree that the Nortel

Released Parties may require the Flextronics Releasors to escrow any funds actually received on

account of such Flextronics Third Party Actions in an account to secure such Flextronics Third

Party Indemnity Obligations.

8.    **No Claims or Defenses Asserted.** For the avoidance of doubt, except as

expressly permitted under this Settlement and Release Agreement, Flextronics and Nortel hereby

72

acknowledge and agree that they (i) shall not assert any further claim, demand payment or seek further court relief or resolution, in either the Courts or any other court, with respect to all or any portion of the Pre-Filing Inventory or any other Released Claims, (ii) promptly following the Effective Date, shall reduce the related accounts receivable and accounts payable to zero balances in their respective books and records and accounting systems and shall close all invoices relating to the Pre-Filing Inventory in their respective books and records and accounting systems, and (iii) shall not seek or be entitled to any remedy, cure or any other payment or consideration or accommodation from a Purchaser or any other party in a Divestiture in respect of any portion of the Pre-Filing Inventory or any other Released Claim. Notwithstanding the foregoing or any other provision of this Settlement and Release Agreement, Pre-Filing Inventory shall continue to be used in the calculation of Quarterly E&O pursuant to section 5 of the Settlement Agreement. Flextronics further hereby acknowledges and agrees that the Flextronics Proofs shall be deemed withdrawn in the applicable proceedings with prejudice, provided, however, that Flextronics shall be permitted to file one or more amended proofs of claim against NNL solely with regard to the Pension Claims that Flextronics alleges are owed by NNL. With respect to such Pension Claims, Flextronics and NNL hereby agree that such claims will be evaluated, adjudicated and resolved in accordance with the claims procedures to be established by one or more claims procedure orders to be issued in the CCAA Proceedings. For the avoidance of doubt, nothing in this Settlement and Release Agreement releases or constitutes a waiver of Nortel's defenses to any proofs of claim filed by Flextronics with respect to the Pension Claims.

       9.    **Resolution of Pension Claims.** NNL shall not remove Flextronics from the service list maintained in the CCAA Proceedings, and in the event that any distributions to

26

23

creditors are proposed in a plan of reorganization, arrangement or compromise under the CCAA (a "CCAA Plan") prior to the final resolution of the Pension Claims in accordance with the claims resolution process, NNL shall provide to Flextronics a copy of the proposed CCAA Plan and shall provide notice of the hearing to approve the CCAA Plan, the proposed distribution and the manner of addressing the claims including, without limitation, the establishment of a reserve for the unresolved claims of all creditors that have timely filed claims (which notice may be effected by service upon the service list maintained in the CCAA Proceedings or by distribution to creditors generally in accordance with such procedures as may be approved by the Canadian Court). NNL shall, if requested by Flextronics, consult with Flextronics regarding the proposed treatment of the unresolved claims, including, without limitation, the amount of the proposed reserve in respect of the unresolved claims, if the Pension Claims are then unresolved, prior to any vote on the CCAA Plan by affected creditors. NNL shall further use reasonable best efforts, subject to and consistent with its duties and obligations under applicable law and in accordance with the terms of the PRBA, to (i) preserve documents related to the Pension Claims and make such documents available to Flextronics upon request and (ii) reasonably cooperate with Flextronics in connection with any litigation or other disputes with third parties relating to the Pension Claims. Nothing contained in this Settlement and Release Agreement shall affect the rights Flextronics may have, if any, as against the Nortel Networks Health & Welfare Trust in respect of the Pension Claims.

10.    **Approval by the US Bankruptcy Court.** This Settlement and Release Agreement is subject in all respects to the entry of a final (as defined below) order by the US Bankruptcy Court approving all terms and conditions contained in this Settlement and Release Agreement. Within three (3) business days after NNI's receipt of an executed copy of this

27