·153

**SONOMA SYSTEMS**

By: _____

Name: __John Doolittle__

Title: __Pres. & Treasurer__

Dated:   November 20, 2009

**QTERA CORPORATION**

By: _____

Name: __John Doolittle__

Title: __President__

Dated:   November 20, 2009

**CORETEK, INC**

By: _____

Name: __John Doolittle__

Title: __President__

Dated:   November 20, 2009

**NORTEL NETWORKS**
**APPLICATIONS MANAGEMENT**
**SOLUTIONS INC.**

By: _____

Name: __John Doolittle__

Title: __President__

Dated:   November 20, 2009

**NORTEL NETWORKS OPTICAL**
**COMPONENTS INC.**

By: _____

Name: __John Doolittle__

Title: __President__

Dated:   November 20, 2009

**NORTEL NETWORKS HPOCS INC.**

By: _____

Name: __John Doolittle__

Title: __President__

Dated:   November 20, 2009

**ARCHITEL SYSTEMS (U.S.)
CORPORATION**

By: _____

Name: _John Doolittle_

Title: _President_

Dated:   November _20_, 2009

**NORTEL NETWORKS
INTERNATIONAL INC.**

By: _____

Name: _John Doolittle_

Title: _President_

Dated:   November _20_, 2009

**NORTHERN TELECOM
INTERNATIONAL INC.**

By: _____

Name: _John Doolittle_

Title: _President_

Dated:   November _20_, 2009

**NORTEL NETWORKS CABLE
SOLUTIONS INC.**

By: _____

Name: _John Doolittle_

Title: _V-P_

Dated:   November _20_, 2009

**NORTEL NETWORKS (CALA) INC.**

By: _____

Name: _John Doolittle_

Title: _Treasurer_

Dated:   November _20_, 2009

By: _____

Name: _Peter Look_

Title: _President_

Dated:   November _20_, 2009

**NORTEL ALTSYSTEMS INTERNATIONAL INC.**

By: _____

Name: ___John Doolittle___

Title: ___President___

Dated:    November 20 2009

**XROS, INC.**

By: _____

Name: ___John Doolittle___

Title: ___President___

Dated:    November 20 2009

Signed by CHRISTOPHER J.W.HILL as
joint administrator on behalf of the Joint
Administrators and the EMEA Entities
(except Nortel Networks (Ireland) Limited)
without personal liability and solely for the
purpose of obtaining the benefit of the
provisions of this Agreement expressed to be
conferred on or given to the Joint
Administrators

By _____

Name:   CHRISTOPHER HILL

Title:   JOINT ADMINISTRATOR

Signed by David Hughes as joint
administrator on behalf of the Joint
Administrators and Nortel Networks
(Ireland) Limited without personal liability
and solely for the purpose of obtaining the
benefit of the provisions of this Agreement
expressed to be conferred on or given to the
Joint Administrators

By _____
Name: ___DAVID   HUGHES___
Title: ___JOINT   ADMINISTRATOR___

SIGNED for and on behalf of NORTEL  )
NETWORKS UK LIMITED (IN  )      CHRISTOPHER J.W. HILL
ADMINISTRATION) by  )
CHRISTOPHER J.W. HILL as Joint  )
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

Witness: _____

Name: __JAN CORDELL__
Address: __1 HORE LONDON PLACE__
          __LONDON SE1 2AF__

159

SIGNED for and on behalf of NORTEL  )
NETWORKS (IRELAND) LIMITED  )    DAVID HUGHES
(IN ADMINISTRATION)  )
by DAVID HUGHES as Joint  )
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

Witness: _Eimear Ní Ghríofa_

Name: EIMEAR NI GHRIOFA
Address: c/o ERNST & YOUNG, HARCOURT CENTRE, HARCOURT STREET, DUBLIN 2.

SIGNED for and on behalf of **NORTEL**
**NETWORKS BV (IN**
**ADMINISTRATION)**
by **CHRISTOPHER J.W. HILL** as Joint
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

)
)
)
)

**CHRISTOPHER J.W. HILL**

Witness:

Name:  JAN CORDELL
Address:  1 MORE LONDON PLACE
LONDON SE1 2AF

SIGNED for and on behalf of NORTEL )
NETWORKS HISPANIA, S.A. )
by CHRISTOPHER J.W. HILL as Joint )
Administrator (acting as agent and without
personal liability whatsoever) in the
presence of:

Witness:      ⟨signature⟩

Name:      JAN CORDELL
Address:    1 MORE LONDON PLACE
            LONDON  SE1 2AF

CHRISTOPHER J.W. HILL

162

**Execution Version**

**Exhibit 1**

Settlement and Release Agreement

**Schedule A – EMEA Entities**

Nortel Networks UK Limited (in administration)

Nortel Networks (Ireland) Limited (in administration)

Nortel Networks B.V. (in administration)

Nortel Networks Hispania SA (in administration)

If Nortel Networks S.A. accedes to this Agreement pursuant to Section 3.4, it shall be considered an EMEA Entity.

### Schedule B – The Payment Obligations

1.    Initial Payment to Flextronics

NNI shall, on behalf of all of the Parties and following the receipt of payment of ▮▮▮ ▮▮▮▮▮▮▮▮▮▮ from the EMEA Entities as Segregated Funds as contemplated in Section 2.2 of this Agreement (the "EMEA Payment"), pay Flextronics from the Segregated Account ▮▮▮▮▮▮▮▮▮▮ within 10 days after the Effective Date of the Settlement and Release Agreement.

2.    Final Payment to Flextronics

NNI shall, on behalf of all of the Parties and following the receipt of the EMEA Payment, pay Flextronics from the Segregated Account ▮▮▮▮▮▮▮▮▮▮ on or before May 31, 2010.

3.    Payment to NNL

NNI shall, on behalf of all of the Parties and following the receipt of the EMEA Payment, pay NNL from the Segregated Account ▮▮▮▮▮▮▮▮▮▮ within 10 days after the Effective Date of the Settlement and Release Agreement.

4.    Released Accounts Payable

Immediately following the payment described in item 3 above, the "Released Accounts Payable" for the Regional Entities shall equal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5.    Adjustment Amount

(a)    Promptly, but in no case more than 5 days, following the determination of the Adjustment Amount (or any portion thereof) in accordance with Schedule B to the Settlement and Release Agreement, each Regional Entity shall pay to NNI for deposit into the Segregated Account the actual amount of the Adjustment Amount attributable to each Regional Entity (which shall be determined according to the Nortel legal entities listed for the accounts payable agreed not to be valid obligations in accordance with Schedule B to the Settlement and Release Agreement).

(b)    NNI shall, on behalf of all of the Parties and following the receipt of the payments from the Canadian Entities and EMEA Entities required in 4(a) above, pay to Flextronics the Adjustment Amount from the Segregated Account in accordance with Schedule B to the Settlement and Release Agreement.

## Schedule C -- Settlement Cost

Confidential. Filed under seal pursuant to the Order Authorizing the Debtors to File Under Seal Certain Portions of (I) the Settlement and Release Agreement and (II) the Side Agreement, Attached as Exhibits to the Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for Entry of an Order (I) Authorizing and Approving the Flextronics Settlement and Release Agreement, (II) Authorizing and Approving the Related Side Agreement and (III) Granting Related Relief [D.I. _____]. Copies of Schedule C will be provided to the United States Trustee and the Court.

# TAB C

1146

This is Exhibit C referred to in the affidavit of Donald McKenna sworn before me, this 24th day of November 20 09

Susan Cumiskey
A COMMISSIONER FOR TAKING AFFIDAVITS

SUSAN CUMISKEY
Notary Public, State Of New York
No.01CU6086318
Qualified In Westchester County
Certificate Filed In New York County
Commission Expires January 21, 2011

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | TUESDAY, THE 16th |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JUNE, 2009 |




**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION (the "Applicants")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**

THIS MOTION, made by the Applicants, for the relief set out in the Applicants' notice of motion dated June 8, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of Joseph Flanagan sworn June 5, 2009 and the exhibits thereto (the "Flanagan Affidavit"), and the Thirteenth Report of the Monitor dated June 11, 2009, and on hearing the submissions of counsel for the Applicants, the Monitor and Flextronics Telecom Systems Ltd. and those other parties present, no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Katie Legree sworn June 8, 2009, filed:

- 2 -

1.    THIS COURT ORDERS that the time for service of the Notice of Motion, the Thirteenth Report and the Motion Record is hereby abridged so that this motion is properly returnable today and hereby dispenses with further service thereof.

2.    THIS COURT ORDERS that the Applicants may file under seal certain portions of the settlement documents dated May 22, 2009 among Nortel Networks Limited on one hand and Flextronics Telecom Systems Ltd. and Flextronics Corporation on the other (the "**Settlement Documents**"), as appears in Exhibit B to the ~~Flanagan Affidavit~~ *Thirteenth Report of the Monitor #70*, and such portions shall not form part of the public record, subject to further Order of this Court.

3.    THIS COURT ORDERS that the Settlement Documents be and are hereby approved, and Nortel Networks Limited is hereby authorized and directed to comply with its obligations thereunder.


ENTERED AT / INSCRIT A TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 1 6 2009

PER / PAR:

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #:46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1705109\2

# TAB D

Nortel-Flextronics                                                                        Agreement dated January 13, 2009

## AMENDING AGREEMENT

This Amending Agreement ("Agreement") is entered into and made effective as of January 13, 2009 (the "Effective Date") by and between on the one hand Nortel Networks Limited ("Nortel"), and on the other hand Flextronics Telecom Systems Ltd. ("FTS") and Flextronics Corporation (f/k/a Solectron Corporation, "FC") (FTS and FC, collectively, "Flextronics"), on the terms and conditions set forth below.

WHEREAS, pursuant to the Amended and Restated Master Contract Manufacturing Services Agreement by and between Nortel and FTS, dated June 29, 2004 (as previously amended by the parties before the Effective Date, the "Flex MCMSA"), the agreement dated October 13, 2006 between Nortel and FTS (the "October Agreement") and the Master Contract Manufacturing Services Agreement by and between Nortel and FC, dated September 30, 2003 previously amended by Nortel and FC before the Effective Date) (the "SLR MCMSA") (the Flex MCMSA and SLR MCMSA and the October Agreement are each an "MCMSA" and are collectively referred to as the "MCMSAs"), the parties hereto are engaged in a complex contract manufacturing relationship whereby Flextronics purchases materials and components, assembles the materials into higher-level components and finished goods, stores and delivers such finished components and goods to Nortel based on Nortel's forecasts and demands;

AND WHEREAS, parties hereto are parties to (i) the Master Repair Services Agreement dated June 29, 2004, between Nortel and FTS, as amended by the parties thereto before the Effective Date, (ii) the Master Contract Logistics Services Agreement dated June 29, 2004, between FTS and Nortel, as amended by the parties thereto before the Effective Date and (iii) the Master Contract Repair Services Agreement dated June 3, 2000, between Nortel and FT, as amended by the parties thereto before the Effective Date, (collectively the foregoing agreements are referred to as the "Related Services Agreements");

AND WHEREAS, the parties desire by this Agreement to amend the MCMSAs, to address certain outstanding obligations between them and to modify the terms on which the parties engage in their relationship;

NOW, THEREFORE, in consideration of the foregoing, the consideration recited below and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, the parties agree as follows:

1. **Purchase of Inventories.** The parties have been engaged in ongoing discussions regarding the identification of various inventories that Flextronics currently holds on behalf of Nortel (individually and collectively, the "Inventory" or "Inventories"). Nortel will purchase the Inventories identified in the attached Schedule A, in the amount of $120 million (U.S. dollars) (the "Inventory Purchase Amount"); Flextronics will deliver and transfer title for such Inventory to Nortel within 30 days of each payment made by Nortel as set forth below (e.g., following the first payment of $25 million, Flextronics will deliver and transfer title to Nortel Inventory priced at $25 million under the applicable pricing between the parties). Nortel will pay the Inventory Purchase Amount in advance of delivery by Flextronics in accordance with the following schedule:

> $25 million shall be paid by wire transfer initiated on January 14, 2009
> $50 million due and payable in full on January 20, 2009
> $25 million due and payable in full on April 1, 2009
> $20 million due and payable in full on July 1, 2009

The obligation of Flextronics to deliver and transfer title to up to $120 million dollars in Inventory set forth in this Agreement shall not be subject to any claims of set off or counterclaim by Flextronics howsoever arising, in respect of any claim Flextronics may have as of, or prior to, the Effective Date.

Except as set out herein, all amounts owing to Flextronics by Nortel as of the date of Bankruptcy (as hereinafter defined) shall be subject to, and dealt with, in accordance with such a Bankruptcy and the court orders issued in connection therewith.

DOCSTOR: 1604377\2

This is Exhibit .......... referred to in the
affidavit of ..Linda McKenna..
sworn before me, this ..24th..
day of ..November.. 20..7..

..Susan Cumiskey..
A COMMISSIONER FOR TAKING AFFIDAVITS

SUSAN CUMISKEY
Notary Public, State Of New York
No.01CU6086318
Qualified In Westchester County
Certificate Filed In New York County
Commission Expires January 21, 2011



Nortel-Flextronics                                          Agreement dated January 13, 2009

The Inventory Purchase Amount will include a 3% cost of acquisition of Material and no additional charges or adders will be payable  Flextronics agrees that Inventory to be delivered will be in compliance with the applicable Specification. Flextronics agrees to cooperate with Nortel, including by segregating Inventory and allowing access for Nortel, to provide a reasonable amount of time to validate the Inventory being transferred, such validation to be completed no later than 30 days after the date of payment.

**2. Accounts Receivable.** For the term of any Bankruptcy (as defined below), with respect to any amounts that come due for Products, Materials and services delivered or provided after the Effective Date, notwithstanding the payment terms set forth in the MCMSAs and the Related Services Agreements, Nortel will pay on a weekly basis, to be received by Flextronics the Wednesday of each week (unless the Wednesday is not a Business Day, in which case the payment will be the next Business Day) by wire transfer, all amounts due for Products, Materials, services or other items delivered or provided by Flextronics during the immediately previous week (Monday through Sunday).

**3. Pricing and Claims Processes.** After the Effective Date, the parties agree that the mechanisms for adjustments to pricing (including ROIC) and claims processes, other than the uplift percentage for underconsumption of liability pursuant to the SLR MCMSA, will remain in effect pursuant to the processes in place immediately prior to the Effective Date. Flextronics agrees that current transformation prices under the MCMSAs and Related Services Agreements, as applicable, will remain fixed during the term of any Bankruptcy (as defined below) through the end of calendar year 2009; if any Bankruptcy continues past such time, then the parties will negotiate pricing in accordance with the MCMSAs.

**4. Excess Inventory Obligations.**

(a)     On the first day of each calendar quarter (i.e., January 1, April 1, July 1 and October 1), beginning April 1, 2009, and with respect to the current calendar quarter as soon as the parties can identify the applicable amounts (but with effect from January 1, 2009), Flextronics will provide to Nortel a report of the following inventories: (i) all Materials and Products in Flextronics's inventory that are in excess of Nortel's then-current forecast (i.e., the forecast loaded into Flextronics's MRP system by Nortel as of the first day of the quarter) for the next 6 months' of demand by Nortel (regardless of aging); (ii) all Materials and Products for which there is zero demand in the then-current forecast; (iii) all finished Products then in Flextronics's inventory and built in accordance with the MCMSAs (individually and collectively, such items identified in (i)-(iii), other than Materials and Products acquired before the Effective Date ("Quarterly E&O").

(b)     Nortel will provide Flextronics with a purchase order covering such Quarterly E&O (the "QEO Order") no later than the first day of the second month of each calendar quarter,; payment for the Quarterly E&O will be due in full in accordance with the terms for payment set forth above. Flextronics will deliver such Quarterly E&O to Nortel or a designated storage facility or third party.

(c)     Nortel shall not be liable to purchase Quarterly E & O that either (or both) (i) does not comply with applicable Specifications in accordance with the MCMSAs, or (ii) Nortel can demonstrate was not acquired using prudent purchasing practices in accordance with the MCMSAs, provided in either case (i.e., (i) or (ii)) that Nortel provides evidence of the basis for objection within 30 days of identification of such Quarterly E&O to Nortel.

**5. Changes to Supplier Terms.** Nortel will compensate Flextronics (and adjust terms with Flextronics as necessary) to address any changes to the terms for purchases of any NC Supplier or NCD Supplier.

**6. Transfers of Operations.** With respect to planned and previously-discussed transfers of operations (which include transfers from Flextronics to different Flextronics facilities, transfers from Flextronics to Nortel and transfers from Flextronics to third parties) (individually and collectively, "Transfers"):

(a)     All Transfers currently subject to agreed-upon plans of record (e.g., PP15K, Calgary, M1 PCBA, Option 11) will remain subject to such plans of record, unless otherwise mutually agreed.

|7|

(b)      The parties agree to consider specifically the discussed transfer of fastflow from Calgary to Flextronics operations in Columbia, South Carolina and M1 to Monkstown, and to evaluate the desirability of such potential Transfers.

7.  **Available Remedies.** For the term of any Bankruptcy, if Nortel breaches any obligations set forth in this Agreement (and such breach continues for more than 2 Business Days following notice from Flextronics), including, without limitation, late payment on any amounts due to Flextronics, then Flextronics may, in addition to any other remedies available, at its option, stop shipment on any pending orders, suspend the Production Effort, cancel outstanding orders for Materials and demand pre-payments before accepting any additional Purchase Orders, after notice to Nortel of such breach.

8.  **Filing to Court, Approval of Agreement.** Due to the central and strategic nature of Flextronics's services for Nortel, without which Nortel would be substantially impaired in its operations, in the event that Nortel files for any bankruptcy, reorganization or similar protections under the laws of Canada (any such proceeding individually and in combination, a "Bankruptcy"), Nortel will within 7 days following any filing petition the court, cooperate with Flextronics and otherwise use Nortel's best efforts to have this Agreement approved (or recognized, accepted or any similar designation as may be applicable) by the court with respect to such filing by Nortel. The objective of such efforts is to establish the enforceability of this Agreement in the context of the Bankruptcy and authorize Nortel to make the payments provided for herein. Nortel agrees that it will not, during the pendency of the Bankruptcy, treat any supplier or vendor of goods or services any better than the treatment afforded to Flextronics hereunder, in respect of pre-filing claims; provided, however, that this provision shall not apply to payments to be made by Nortel to other suppliers and vendors of goods or services in an amount of up to $30 million in the aggregate during the pendency of the Bankruptcy. As part of such filing, Nortel will describe in such petition(s) and approval(s) the terms and conditions in this Agreement or Nortel will attach a copy of this Agreement to such filings. Nortel agrees that Flextronics may, in its sole discretion, submit this Agreement to any court, monitor or similar authority in support of and as evidence Nortel's agreement and obligations hereunder.

9.  **General.** Terms not defined herein will have the meanings provided in the applicable MCMSAs. To the extent of any conflict, inconsistency or ambiguity between and among this Agreement and the MCMSAs and October Agreement, this Agreement will control. Except as set forth herein, this Agreement is not a waiver or release of any rights or remedies available to either at law or in equity. Except as amended herein, the MCMSAs will continue to govern the relationship of the parties and will continue in effect in accordance with their respective terms; however, this Agreement will not in any way effect or negate the notice of termination of the SLR MCMSA that Flextronics provided to Nortel on January 12, 2009. If any of the provisions or terms of this Agreement are deemed unenforceable for any reason, then the parties agree that the rest of the Agreement should be given full force and effect to the greatest extent permissible under applicable law, and that the court interpreting such provision is entitled to amend or substitute a provision that gives effect to the original intent and meaning of the unenforceable provision to the greatest extent possible. This Agreement may be executed in counterparts, and each party hereto may affirm its assent by any electronic or facsimile means. This Agreement will be governed by the laws of the Province of Ontario and the federal laws of Canada applicable therein.

[REST OF PAGE INTENTIONALLY LEFT BLANK – SIGNATURES FOLLOW]

172

Nortel-Flextronics                                      Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.

Nortel Networks Limited                  Flextronics Telecom Systems Ltd.

Signed                                   Signed

GORDON A. DAVIES
Print Name                               Print Name

CHIEF LEGAL OFFICER
Title                                    Title
AND CORPORATE SECRETARY

NORTEL NETWORKS LIMITED                  Flextronics Corporation

ANNA VENTRESCA                           Signed
ASSISTANT SECRETARY
                                         Print Name

                                         Title

DOCSTOR:1605370

173

Nortel-Flextronics                                    Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.

Nortel Networks Limited                    Flextronics Telecom Systems Ltd.

_____                    _____
Signed                                     Signed
                                              Manny Marimuthu

_____                    _____
Print Name                                 Print Name
                                              Director

_____                    _____
Title                                      Title


                                           Flextronics Corporation

                                           _____
                                           Signed

                                           _____
                                           Print Name

                                           _____
                                           Title

174

Nortel-Flextronics                                    Agreement dated January 13, 2009

IN WITNESS WHEREOF, each party, by its respective duly-authorized representative identified below, acknowledges and agrees to the terms and conditions of this Amending Agreement.

Nortel Networks Limited                    Flextronics Telecom Systems Ltd.

_____                    _____
Signed                                     Signed

_____                    _____
Print Name                                 Print Name

_____                    _____
Title                                      Title

                                           Flextronics Corporation


                                           _____
                                           Signed                _____

                                           Michael Clarke_____
                                           Print Name

                                           President, FlexInfrastructure____
                                           Title

Agreement dated January 13, 2009

## Schedule A

## Identification of Inventory

The parties acknowledge and agree that the specific inventory amounts, Materials and Products have been the subject of ongoing discussions, updates and negotiations and that the following breakdowns represent the agreements among the parties as to the nature of the inventory that Nortel is purchasing. Flextronics will select the specific items to be delivered from the following identified categories, the details of which will be provided to Nortel.

Flextronics will select the specific items to be delivered based on the schedules of such items that have been delivered to and discussed with Nortel.

The parties agree that the inventory purchase by Nortel will include (without limitation) the following:

- MEN (MD and other)
- PP15K (RoHS and non-RoHS)
- PP15K bonepile (Flextronics will continue debug efforts until June, 2009)

Flextronics will identify the applicable inventory based on a snapshot of all inventory currently held by Flextronics as of the Effective Date

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**AFFIDAVIT OF DONALD MCKENNA**
**(sworn November 24th, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1811938S

1960

# TAB 3

177

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 2nd |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF DECEMBER, 2009 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION (the "Applicants")**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
**(Flextronics Settlement Approval Motion)**

THIS MOTION, made by the Applicants, for the relief set out in the Applicants' notice of motion dated November 27, 2009 was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of Donald McKenna sworn November 24, 2009 and the exhibits thereto (the "McKenna Affidavit"), and the Thirty-First Report of the Monitor dated November 27, 2009 (the "Thirty-First Report"), and on hearing the submissions of counsel for the Applicants, the Monitor and Flextronics Telecom Systems Ltd. and those other parties present,

- 2 -



no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of Katie Legree sworn November 27, 2009, filed:

1.      THIS COURT ORDERS that the time for service of the Notice of Motion, the Thirty-First Report and the Motion Record is hereby abridged so that this motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that the Applicants may file under seal:

   (a)      certain portions of the Settlement and Release Agreement dated November 20, 2009 among: (a) Flextronics Corporation ("FC"), Flextronics Telecom Systems Ltd. ("FTS") and certain affiliates of FC and FTS that are signatories thereto, on behalf of themselves and their respective affiliates; (b) the Applicants; (c) the U.S. Debtors (as defined in the McKenna Affidavit); (d) the EMEA Entities (as defined in the McKenna Affidavit) and (e) the EMEA Entities' Joint Administrators(as defined in the McKenna Affidavit); and

   (b)      certain portions of the Side Agreement also dated November 20, 2009 between the Applicants, the U.S. Debtors, the EMEA Entities and the EMEA Entities' Joint Administrators.

(collectively, the "Settlement Documents"), as they appear in Exhibits "A" and "B" to the McKenna Affidavit, and such portions shall not form part of the public record, subject to further Order of this Court.

3.      THIS COURT ORDERS that the Settlement Documents be and are hereby approved, and the Applicants are hereby authorized and directed to comply with their obligations thereunder.

179

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**ORDER**
**(Flextronics Settlement Approval Motion)**

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1816984\1

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**MOTION RECORD**
**Flextronics Settlement Approval Motion**
**(returnable December 2, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**BRIEF OF AUTHORITIES OF THE APPLICANTS**
**Flextronics Settlement Approval Motion**
**(returnable December 2, 2009)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC#: 46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com

Fax: (416) 216-3930

Lawyers for the Applicants

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO:        **OGILVY RENAULT LLP**
           Royal Bank Plaza, South Tower
           200 Bay Street, Suite 3800
           Toronto, Ontario M5J 2Z4

           Derrick Tay
           Mario Forte
           Jennifer Stam

           Email:    dtay@ogilvyrenault.com
                     mforte@ogilvyrenault.com
                     jstam@ogilvyrenault.com

           Tel:      416.216.4000
           Fax:      416.216.3930

           Lawyers for the Applicants

- 2 -

TO:    **ERNST & YOUNG INC.**
       Ernst & Young Tower
       222 Bay Street, P.O. Box 251
       Toronto, ON M5K 1J7

       Murray McDonald
       Brent Beekenkamp

       Email:   nortel.monitor@ca.ey.com

       Tel:     416.943.3016
       Fax:     416.943.3300

AND    **GOODMANS LLP**
TO:    250 Yonge Street
       Suite 2400
       Toronto, ON M5B 2M6

       Jay Carfagnini
       Joseph Pasquariello
       Gail Rubenstein
       Chris Armstrong

       Email:   jcarfagnini@goodmans.ca
                jpasquariello@goodmans.ca
                grubenstein@goodmans.ca
                carmstrong@goodmans.ca

       Tel:     416.597.4107
       Fax:     416.979.1234

       Lawyers for the Monitor, Ernst & Young Inc.

AND    **OSLER HOSKIN AND HARCOURT**
TO:    **LLP**
       100 King Street West
       1 First Canadian Place
       Suite 6100
       P.O. Box 50
       Toronto, ON M5X 1B8

       Lyndon Barnes
       Rupert Chartrand
       Edward Sellers
       Adam Hirsh

       Email:   lbarnes@osler.com
                rchartrand@osler.com
                esellers@osler.com
                ahirsh@osler.com

       Tel:     416.362.2111
       Fax:     416.862.6666

       Lawyers for the Boards of Directors of
       Nortel Networks Corporation and Nortel
       Networks Limited

AND    **FASKEN MARTINEAU DUMOULIN LLP**
TO:    66 Wellington Street West
       Toronto Dominion Bank Tower
       P.O. Box 20, Suite 4200
       Toronto, ON M5K 1N6

       Donald E. Milner
       Aubrey Kauffman
       Edmond Lamek
       Jon Levin

       Email:   dmilner@fasken.com
                akauffman@fasken.com
                elamek@fasken.com
                jlevin@fasken.com

       Tel:     416.868.3538
       Fax:     416.364.7813

       Lawyers for Export Development Canada

- 3 -

AND TO:
**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON K1A 1K3

Jennifer Sullivan

Email:   jsullivan@edc.ca

Tel:    613.597.8651
Fax:    613.598.3113

AND TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:   rthornton@tgf.ca
         mbarrack@tgf.ca
         rmoncur@tgf.ca
         lwilliams@tgf.ca

Tel:    416.304.1616
Fax:    416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:   john.stringer@mcinnescooper.com
         stephen.kingston@mcinnescooper.com

Tel:    902.425.6500
Fax:    902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
         msims@millerthomson.com

Tel:    416.595.8615/8577
Fax:    416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:   barry.wadsworth@caw.ca
         lewis.gottheil@caw.ca

Tel.:   416.495.3776
Fax:    416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email:   hharrison@boughton.ca

Tel:    604.687.6789
Fax:    604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:  mmacnaughton@blgcanada.com
Tel:     416. 367.6646
Fax:     416. 682.2837

Email:  rjaipargas@blgcanada.com
Tel:     416.367.6266
Fax:     416.361.7067

Email:  srappos@blgcanada.com
Tel:     416.367.6033
Fax:     416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:  ray.leach@siskinds.com
          dimitri.lascaris@siskinds.com
          monique.radlein@siskinds.com

Tel:     519.672.2121
Fax:     519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND
TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:     416.307.4087
Fax:     416.304.3855

Email   jcontini@langmichener.ca
Tel:     416.307.4148
Fax:     416.304.3767

Email   arousseau@langmichener.ca
Tel:     416.307.4081
Fax:     416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:  zychk@bennettjones.com
Tel:     416.777.5738
Fax:     416.863.1716

Email:  orzyr@bennettjones.com
Tel:     416.777.5737
Fax:     416.863.1716

Email:  finlaysong@bennettjones.com
Tel:     416.777.5762
Fax:     416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:   mzigler@kmlaw.ca
Tel:     416.595.2090
Fax:     416.204.2877

Email:   sphilpott@kmlaw.ca
Tel:     416.595.2104
Fax:     416.204.2882

Email:   dyiokaris@kmlaw.ca
Tel:     416.595.2130
Fax:     416.204.2810

Email:   amckinnon@kmlaw.ca
Tel:     416.595.2150
Fax:     416.204.2874

Lawyers for the Former Employees of Nortel

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email    msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:   jcarhart@millerthomson.com
Tel:     416.595.8615
Fax:     416.595.8695

Email:   msims@millerthomson.com
Tel:     416.595.8577
Fax:     416.595.8695

Email:   jmklotz@millerthomson.com
Tel:     416.595.4373
Fax:     416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:   joseph.kim@lge.com

Tel:     +82.2.3777.3171
Fax:     +82.2.3777.5345

- 6 -

AND TO:  **CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:  harvey@chaitons.com

Tel:  416.218.1129
Fax:  416.218.1849

Lawyers for IBM Canada Limited

AND TO:  **FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:  Shayne.kukulowicz@fmc-law.com
Alex.macfarlane@fmc-law.com
Michael.wunder@fmc-law.com

Tel:  416.863.4511
Fax:  416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND TO:  **PALIARE ROLAND ROSENBERG**
**ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:  416.646.4304
Fax:  416.646.4301

Email:  max.starnino@paliareroland.com
Tel:  416.646.7431
Fax:  416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:  416.646.4326
Fax:  416.646.4301

Email:  tina.lie@paliareroland.com
Tel:  416.646.4332
Fax:  416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND TO:  **GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@gowlings.com

Tel:  416.369.7399
Fax:  416.862.7661

Lawyers for Westcon Group

- 7 -

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
         dullmann@mindengross.com
Tel:    416.369.4149
Fax:   416.864.9223

Lawyers for Verizon Communications Inc.

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:   416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:   416.865.6636

Lawyers for Andrew, LLC

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:   416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:   416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:   416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:   416.863.1515

Lawyers for Microsoft Corporation

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
         smitra@airdberlis.com

Tel:    416.863.1500
Fax:   416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND
TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:   604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:  mfleming@millerthomson.com
Tel:    416.595.8686
Fax:    416.595.8695

Lawyers for Verint Americas Inc. and Verint Systems, Inc.

AND TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Brookfield LePage Johnson Controls Facility Management Services

AND TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:    416.865.7160
Fax:    416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:    416.865.7286
Fax:    416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:    416.865.7262
Fax:    416.865.7048

Lawyers for Royal Bank of Canada

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Lawyers for Perot Systems Corporation

- 9 -

AND TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:    416.865.7178
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:    416.865.7285
Fax:    416.865.7048

Lawyers for Citibank

AND TO:

**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:

**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:    416.307.4087
Fax:    416.365.1719

Email:  arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for Right Management Inc.

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:  smitra@airdberlis.com
        svitorovich@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

- 10 -

AND TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
         ainslie.benedict@nelligan.ca
         steven.levitt@nelligan.ca
         christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:     613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND TO:

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:     416.775.4680
Fax:     416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND TO:

**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:   ddropsy@colby-monet.com
Tel:     514.284.3663
Fax:     514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:   bleonard@casselsbrock.com
         hgarman@casselsbrock.com
         mcasey@casselsbrock.com

Tel:     416.860.6455
Fax:     416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:     613.233.2679
Fax:     613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND TO:

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
         mgaggino@schneidergaggino.com

Tel:     514.631.8787
Fax:     514.631.0220

Lawyers for the Teamsters Quebec Local 1999

- 11 -

AND TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
            steven.levitt@nelligan.ca
            christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
            laugesenm@bennettjones.com

Tel:    416.863.1200
Fax:   416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn    .

Email:   tdunn@mindengross.com
Tel:    416.369.4335
Fax:   416.864.9223

Lawyers for 2748355 Canada Inc.

AND TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:    416.865.2318
Fax:   416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:   416.863.6275

Lawyers for Jabil Circuit Inc.

AND TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:    416.601.7627
Fax:   416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:    416.601.7750
Fax:   416.868.0673

Lawyers for Frank Andrew Dunn

AND TO:
**EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:    613.745.0921
Fax:   613.745.1172

- 12 -

AND
TO:
**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:      613.771.9991
Fax:     613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :    416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351
Fax:     714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :    416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :  jysimard@lavery.ca
Tel :     514.871.1522
Fax :    514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

- 13 -

AND TO:
**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351

AND TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:   david.cohen@gowlings.com

Tel:      416.369.6667
Fax:     416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND TO:
**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:      416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:      416.941.5397
Fax:     416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND TO:
**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:   rschwill@dwpv.com
Tel:      416.863.0900
Fax:     416.863.0871

Email:   mgottlieb@dwpv.com
Tel:      416.863.0900
Fax:     416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND TO:
**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Email:   slaubman@counsel-toronto.com
Tel:      416.598.1744
Fax:     416.598.3730

Lawyers for William A. Owens

AND TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:      416.865.6944
Fax:     416.863.6275

Lawyers for Wipro Limited

- 14 -

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND TO:
**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:      416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND TO:
**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND TO:
**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario M5X 1K6

Diane Winters

Email:  dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:    416.973.0810

- 15 -

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:     416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:     416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:     416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:     416.863.2572
Fax:     416.863.2653

Email:  marc.flynn@blakes.com
Tel:     416.863.2685
Fax:     416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:     416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:     416.601.7730
Fax:     416.868.0673

Email:  rstabile@mccarthy.ca
Tel:     416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

- 16 -

| | | | |
|---|---|---|---|
| AND<br>TO: | **SACK GOLDBLATT MITCHELL LLP**<br>20 Dundas Street West<br>Suite 1100<br>Toronto, Ontario  M5G 2G8 | AND<br>TO: | **FOGLER, RUBINOFF LLP**<br>Barristers and Solicitors<br>Suite 1200<br>Toronto-Dominion Centre<br>95 Wellington Street West<br>Toronto, Ontario  M5J 2Z9 |

AND
TO:  **SACK GOLDBLATT MITCHELL LLP**
20 Dundas Street West
Suite 1100
Toronto, Ontario  M5G 2G8

James McDonald
Darrell Brown

Email:   jmcdonald@sgmlaw.com
Tel:       416.979.6425
Fax:      416.591.7333

Email:   dbrown@sgmlaw.com
Tel:       416.979.4050
Fax:      416.591.7333

Lawyers for Edmund Fitzgerald

AND
TO:  **STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Ashley John Taylor

Email:   ataylor@stikeman.com
Tel:       416.869.5236
Fax:      416.947.0866

Lawyers for Ciena Corporation

AND
TO:  **FOGLER, RUBINOFF LLP**
Barristers and Solicitors
Suite 1200
Toronto-Dominion Centre
95 Wellington Street West
Toronto, Ontario  M5J 2Z9

Jeffrey K. Spiegelman

Email:   jspiegelman@foglers.com
Tel:       416.864.9700
Fax:      416.941.8852

Lawyers for Belden (Canada) Inc.

- 17 -

## COURTESY COPIES:

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:    sbrown@lrlaw.com

Tel:      602.262.5321
Fax:      602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:    fhodara@akingump.com
          rjacobs@akingump.com

Tel:      212.872.1000
Fax:      212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:   sreisman@curtis.com
          jdrew@curtis.com

Tel:      212.696.6000
Fax:      212-697-1559

Lawyers for Flextronics International

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:    DDunne@milbank.com
Tel:      212.530.5770
Fax:      212.530.5219

Email:    ALeblanc@milbank.com
Tel:      212.835.7574
Fax:      212.530.5219

Email:    APisa@milbank.com
Tel:      212.530.5319
Fax:      212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

- 18 -

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:   mschein@vedderprice.com

Tel:     212.407.6920
Fax:     212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :   andrew.robertson@macleoddixon.com
          caylee.rieger@macleoddixon.com

Tel :     403.267.8222
Fax :     403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees -- Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:     312.602.5050

U.S. Lawyers for Tellabs, Inc.

# INDEX

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT*,
**R.S.C. 1985, c. C-36, AS AMENDED**

### BRIEF OF AUTHORITIES

1.    *BASF Canada Inc. v. Max Auto Supply (1986) Inc.,* [1999] O.J. No. 515 (Gen. Div)

2.    *Muscletech Research and Development Inc. (Re),* [2006] O.J. No. 462 (S.C.J.)

3.    *Nortel Networks Corp. (Re),* [2009] O.J. No 1044 (S.C.J.)

4.    *Shaw v. Shaw,* [2007] O.J. No. 4999 (S.C.J.)

5.    *Sierra Club of Canada v. Canada (Minister of Finance),* [2002] S.C.J. No. 42

# TAB 1

*Indexed as:*

# BASF Canada Inc. v. Max Auto Supply (1986) Inc.

**Between**
**BASF Canada Inc., plaintiff, and**
**Max Auto Supply (1986) Inc., Jackmax Inc., 866551 Ontario**
**Limited, 986633 Ontario Inc., Genuine Auto and Machine Ltd.**
**and ICI Paints (Canada) Inc. (c.o.b. as ICI Autocolor),**
**defendants**
**And between**
**Max Auto Supply (1986) Inc., Jackmax Inc., 866551 Ontario**
**Limited, and 986633 Ontario Inc., plaintiffs by counterclaim,**
**and**
**BASF Canada Inc. and BASF Corp., defendants by counterclaim**

[1999] O.J. No. 515

91 O.T.C. 264

30 C.P.C. (4th) 23

86 A.C.W.S. (3d) 501

Court File No. 97-CV-2227

Ontario Court of Justice (General Division)
Ottawa, Ontario

**Master Beaudoin**

February 12, 1999.

(10 pp.)

*Practice -- Discovery -- Production and inspection of documents -- Confidentiality orders.*

Motion by the plaintiff BASF for a protective order to allow the parties to designate certain commercially sensitive documents as confidential. The defendant Max Auto was a distributor for BASF automotive refinishing products until 1997. Shortly thereafter, BASF brought an action for breach of contract in respect of the distribution agreement. Max Auto counterclaimed on the basis of price discrimination. BASF sought to protect pricing information, alleging that unrestricted disclosure would result in a competitive disadvantage to BASF. Max Auto alleged that the price list was two years old and therefore not of any benefit to competitors. Max Auto further alleged that since paint cost was a relatively low percentage of the total cost of a body shop sale, the importance of paint

pricing information had been over-emphasized by BASF. Max Auto claimed that the information was not confidential, and that it required the information to instruct counsel.

HELD: Motion allowed. The proportion of the cost to the end user was irrelevant. The cost to the suppliers was critical. Even if the information was stale-dated as suggested, a competitor could use the information to calculate the profit margins of BASF. The information sought to be protected was confidential and commercially sensitive. Max Auto showed no undue prejudice resulting from the issue of a protective order.

### Statutes, Regulations and Rules Cited:

Competition Act, s. 50(1)(a).
Courts of Justice Act, s. 137(2).
Ontario Rules of Civil Procedure, Rule 30.11.

### Counsel:

Randall J. Hofley, for the plaintiff/defendant by counterclaim/moving party.
Matthew J. Halpin, for the defendant/plaintiff by counterclaim/responding party.

---

MASTER BEAUDOIN

Background

**1**    The defendants by counterclaim, BASF Canada Inc. and BASF Corp. ("BASF") bring this motion for a protective order which would allow the parties to designate as confidential certain documents which are of a commercially sensitive nature. It is proposed that such documents would be restricted to review by counsel for the opposite party and third-party experts subject to further order of this court.

**2**    BASF" is a manufacturer and seller of automotive refinishing products. The defendants/plaintiffs by counterclaim, ("Max Auto") are a group of companies which acted as a distributor for "BASF" (and its corporate predecessors) products for approximately 25 years until April of 1997.

**3**    Under BASF's distribution program, distributors are classified according to function and according to volumes of sales. They have three difference categories of distributors: warehouse distributors, wholesale distributors, and jobbers. Each category of distributor has a different price list and each distributor would receive discounts, allowances and/or rebates depending on their classification. It is not disputed that "Max Auto Group" was classified as a wholesale distributor.

**4**    These proceedings were initially commenced by a statement of claim in June of 1997 wherein "BASF" claimed against "Max Auto" for breach of contract in respect of the distribution agreement between "BASF" and the "Max Auto" and wherein they also sought damages as against the defendants I.C.I. Paints for interference with contractual relations and inducing breach of contract. I.C.I Paints have not responded to this motion. "Max Auto" has counterclaimed on the basis of price discrimination under section 50(1)(a) of the Competition Act. In essence, "Max Auto" claims that other customers of "BASF" were given advantageous price treatment which was not offered to "Max Auto" in respect of sales of products of like quality and quantity.

**5**   "BASF"'s concerns with respect to confidentiality are two-fold. Firstly, they are concerned about releasing commercially sensitive information directly to the "Max Auto" in that "Max Auto" competes directly with "BASF" and, secondly, that the disclosure of this information to "Max Auto" would allow this information to come into the hands of other manufacturers and sellers of automotive refinishing products such as the defendants ICI Paints.

Is the Information Confidential?

**6**   "BASF" seeks to protect pricing information. Mr. Paul Soulière, their business manager, deposes at paragraphs 13 and 14 of his affidavit as to the confidentiality of the pricing information and addresses its commercially sensitive nature. While Mr. James Maxwell, on behalf of "Max Auto", suggests that the information is not confidential. He admits, on cross-examination, that some of it is in fact confidential. While paragraph 17 of his affidavit, Mr. Maxwell suggests that pricing information is "readily available"; he refused, on cross-examination, to provide the same information from his new suppliers. His responses, as well as those of Mr. Halpin, illustrate this point. (See Maxwell cross-examination, pp. 73-76, Q. 259, and pp. 80-81, Q. 266, pp. 124-125, Q. 455-461.)

**7**   The third-party witness examined by "Max Auto" in connection with these proceedings also expressed reluctance to share pricing and volume information. ( See examination of Steve Mara, pp. 29-32, Q. 136-145.)

**8**   Although the plaintiffs by counterclaim seemingly acknowledge the commercially sensitive nature of this information, they nevertheless maintain that price lists change every year and that the information sought by "Max Auto" is two years old, it is stale-dated. They also submit that paint cost is only six to eight percent of the total cost of the finished product of a body shop sale and, accordingly, the nature, extent, and importance of pricing information is over-emphasized by "BASF". Finally, they argue that the other parties who distribute "BASF" products also carry competing paint lines. They allege that the very same information that "BASF" is attempting to characterize as confidential and proprietary has been provided to competitors of "Max Auto" who deal with other paint suppliers and who are fully able to compare pricing information between "BASF" and its competitors.

**9**   With respect to the pricing information, whether or not it represents six to eight percent of the cost to the end user is irrelevant. It is the cost to the suppliers that is critical and the evidence of Mr. Soulière, which was not contradicted, is that the market share is small and that profit margins are very important. It is the sharing of the information to "BASF"'s competitors that is critical, not to the end users.

**10**   Even if the information is stale-dated, as it suggested by the "Max Auto", it is still conceivable that a competitor could use this information to calculate "BASF"'s profit margins and use this information to undersell them to other distributors. Finally, with respect to some distributors carrying two product lines, namely that of "BASF" and one of its competitors, Mr. Soulière, in his affidavit, deposes that this may be the case during the process of conversion from one product line to "BASF"'s product line. The process of conversion may take some time. The example cited by the defendants, plaintiffs by counterclaim, namely that of another distributor, "CarQuest" was a case of a merger where the BASF products happened to be part of one side of the new merged entity.

**11**   In summary, the court is satisfied that the information sought to be protected is confidential.

Is the Information Commercially Sensitive and Would BASF be Prejudiced by Protected Disclosure?

**12** Mr. Soulière, in his affidavit, describes the nature of the potential prejudice to BASF in fairly precise terms. He alleges that unrestricted disclosure of the information would: (1) Allow for disclosure in open court of information to BASF's competitors who would be monitoring the trial; (2) Provide BASF's competitors with competitive advantage unavailable to BASF, (3) Allow BASF's competitors to calculate the profit margin of BASF's distributors; (4) Allow BASF's competitors to calculate the prices at which is should offer its own products to distributors so as to be reasonably assured of undercutting BASF's prices, thereby permitting BASF's competitors to convert its distributors to their own products; (5) Seriously erode BASF's market share in the automotive refinish market; and (6) Potentially expose BASF Canada to liability under the Competition Act.

**13** BASF's concerns about disclosure are justified to some degree. Mr. Maxwell has already filed in open court documents which were allegedly given to him in confidence subject to an express secrecy agreement, namely Exhibit K to the affidavit of Mr. Maxwell sworn January 28, 1998. Furthermore, in that same affidavit, Mr. Maxwell deposes that he intends to show the confidential information he received to third parties. (Paragraph 31).

**14** The commercial sensitivity and issue of prejudice was not seriously challenged by the defendants/plaintiffs by counterclaim. They have resisted this motion primarily on the basis that the information was not confidential and, secondly, on the basis that "Max Auto" needs to see these documents in order to instruct counsel. They maintain that they are a small company being sued by a corporate giant. They are involved in virtually every detail of the operation and management of the company and do not have unlimited resources to hire third-party experts to review documents or to make decisions on their behalf with respect to allegations in the law suit.

The Law

**15** The court has the inherent jurisdiction, as well as jurisdiction under s. 137(2) of the Courts of Justice Act and Rule 30.11 to grant a protective order restricting production of documents in circumstances where unlimited production would prejudice a party. Such an order may be made by a master of the court. (See Automated Tabulation Inc. v. Canadian Market Images Ltd. et al. (1995), 24 O.R. (3d) 292 (Gen. Div.) and CPC International Inc. v. Seaforth Creamery Inc. (1996), 49 C.P.C. (3d) 382 (Gen. Div.).

**16** As described by Cumming J.in the CPC International case, the making of a protective order is designed to strike a balance between the disclosure necessary for the conduct of an action and a party's bona fide right to protection of confidential and sensitive information. The courts have held that where the information at issue is such that the disclosure would allow a competitor to improve its competitive position, it is appropriate that a protective order be issued to guard against such effect.

(Zellers Inc. v. Venta Investments Ltd. [1998] O.J. No. 2118, (Gen. Div.)

**17** In the present case, the court is satisfied that the information is confidential, that it is commercially sensitive, and that a competitor could obtain an unfair advantage through its release and, therefore, prima facie, the moving parties should be entitled to a protective order unless the defendants, plaintiffs by counterclaim, would be unduly prejudiced by this.

**18** As pointed out by Mr. Soulière in his affidavit, paragraph 19:

> Max Auto Group need only be able to advise its counsel and any independent expert it may retain as to the automotive refinish business generally. Similarly, there is no need for Max Auto Group to show this information to third parties as

part of Max Auto Group's efforts to marshall evidence of discriminatory pricing practices, which disclosure Max Auto Group has advised it intends to undertake. In short, there is distinction between the expertise to understand the manner of pricing in the automotive refinish business and the expertise necessary to perform the mechanical calculations that show whether price discrimination, as defined in the Competition Act, has occurred.
(Emphasis mine.)

**19**    The issue as to whether or not there has been a breach of s. 50(1) of the Competition Act requires a comparison between price-related benefits like quantity and like quality. (Emphasis mine.) "Max Auto"'s counsel or its expert can do the mechanical calculations.

**20**    It is not enough to suggest that "BASF" is protected in any event by the applied undertaking to be found in Rule. 30.1. Rule 30.1 would not prevent the use of the information by a competitor if that information was acquired as a result of a lawsuit and the competitor does not use the information to commence a new lawsuit but simply seeks to improve its competitive position. (See Zellers Inc. v. Venta Investments Ltd., supra.) In addition, the deemed undertaking rule explicitly does not apply to evidence filed in the court or that is referred to in hearing. Lastly, the rule only applied to parties and to counsel and not to third parties who would have access to material filed with this court or disclosed by a party.

**21**    "BASF"'s counsel have drafted a protective order attached at Tab A to their factum. The principal operating provisions of the protective order as follows:

(a)    If either party is concerned about the confidentiality of information of a commercially sensitive nature which is to be disclosed, they may designate the information as "Confident - Counsel Only";

(b)    Such information may only be used by counsel and independent third parties who sign an undertaking as to confidentiality;

(c)    If counsel disagrees with the assessment of the information as confidential, or believes that disclosure of the document to their client is essential for the conduct of the action, they may bring the matter back for hearing with respect to that document and the existence of the protective orders without prejudice to determination of such a motion.

**22**    The court has reviewed the draft protective order and considers that it would be appropriate in the circumstances of this case. The court notes also that this a case-managed proceeding and that this court has already intervened in terms of issuing an interim protective order. Should further rulings be required with respect to the confidentiality of any particular document that needs to be produced, the parties have a ready access to the court for an early determination of this issue.

**23**    Accordingly, an order will issue in accordance with the draft protective order found at Tab A of the moving party's factum. The parties may contact the court to arrange an appropriate time to speak to the issue of costs.

MASTER BEAUDOIN

# TAB 2

*Case Name:*
## Muscletech Research and Development Inc. (Re)

**IN THE MATTER OF the Companies' Creditors Arrangement
Act, R.S.C. 1985, c. C-36, as amended
AND IN THE MATTER OF Muscletech Research and
Development Inc. and those entities listed on Schedule
"A" hereto \***
**[\* Editor's note: Schedule A was not attached to
the copy received from the Court and therefore is not
included in the judgment.]**

[2006] O.J. No. 462

19 C.B.R. (5th) 57

145 A.C.W.S. (3d) 759

2006 CarswellOnt 720

Court File No. 06-CL-6241

Ontario Superior Court of Justice
Commercial List

**J.M. Farley J.**

February 6, 2006.

(12 paras.)

*Civil procedure -- Trials -- Stay of proceedings -- Application for an extension of the stay of proceedings -- Application allowed -- The CCAA applicants were proceeding in good faith and with due diligence -- Matters were moving along quickly -- The trial in the United States was not going to be derailed by granting a stay.*

*Creditors & debtors law -- Legislation -- Debtors' relief -- Companies' Creditors Arrangement Act -- Application for an extension of the stay of proceedings -- Application allowed -- The CCAA applicants were proceeding in good faith and with due diligence -- Matters were moving along quickly -- The trial in the United States was not going to be derailed by granting a stay.*

*Motion for an extension of the stay of proceedings, for an order sealing the unredacted version of the Monitor's second report, and recognition of the U.S. Protective orders -- One party opposed the motion pertaining to the stay -- It argued that the CCAA filing was designed to derail a trial sched-*

*uled in New Mexico -- HELD: Motion allowed -- An order was granted sealing the unredacted re-
port -- The report was available to any party that executed a confidentiality agreement -- The court
recognized the U.S. Protective orders -- The CCAA applicants were proceeding in good faith and
with due diligence -- Matters were moving quickly -- They were not attempting to derail the trial in
New Mexico -- The Canadian court was working well with the American courts -- It was appropri-
ate to extend the stay.*

**Statutes, Regulations and Rules Cited:**

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36, as amended,

**Counsel:**

J.A. Carfagnini and Caterina Costa, for the Applicants

Derrick Tay, for the Iovate Companies, the DIP Lender and Gardiner personally

Jay Swartz and Natasha MacParland, for the Monitor

Steven Golick, for Zurich Insurance Company

Jeffrey Carhart and A. Sambasivan, for the Ad Hoc Committee of the MuscleTech Tort Claimants

Bill Baldiga and Stephen Smith, U.S. counsel for the Ad Hoc Committee of MuscleTech Tort
Claimants

Tom Ringe, U.S. counsel for the Applicants

David Rothwell, Canadian counsel for the Jaramillo plaintiffs

Jere Smith, U.S. counsel for the Jaramillo plaintiffs

---

## ENDORSEMENT

**1    J.M. FARLEY J.** (endorsement):-- This endorsement should be read in conjunction with my
endorsement of January 18, 2006.

**2**    The essential aspects of the motion before me today were for an extension of the stay of pro-
ceedings to March 15, 2006, the sealing of the unredacted version of the Monitor's Second Report
and recognition the U.S. Protective Orders. Allow me to deal with the two non-contentious aspects.
Firstly, I note that there has been minimal redaction of the Monitor's Second Repot as to sensitive
commercial financial information, all in accordance with the principles Sierra Club v. Canada
(2002), 211 D.L.R. (4th) 193 (SCC). The draft order contemplates a sealing of the unredacted ver-
sion pending further order of the court; thus any interested person could apply to the court for an
unsealing on proper grounds. The unredacted version may be made available to any party which
executes a suitable confidentiality/non-disclosure agreement. Similarly, with respect to the recogni-
tion of the U.S. Protective Orders, this makes common sense and is in general accord with the prin-
ciples of Sierra Club.

**3** That leaves the question of the extension of the protective stay to March 15, 2006. Let me observe that all the parties represented before me today, except for counsel for the Jaramillos, were supportive of this request. Those supportive indicated that very significant progress had been made since the January 18, 2006 Initial Order with respect to the mechanics concerning a global resolution and as to initial discussions concerning substance; in contrast, the Jaramillos were concerned that this CCAA filing was designed to derail their trial scheduled for April 3, 2006 in New Mexico. In defence of the attitude of the Jaramillos in this regard, I would observe that I can understand their frustration and suspicion that, vis-à-vis them, the CCAA filing was a ploy and/or a stall designed to defeat a looming trial date. If that were shown to be the case, then this (Canadian) court would not tolerate such tactical game playing. However, I am satisfied on the evidence before me (and as supported by the other parties represented here today, including the Monitor, being an officer of the court - appointed by the court, with special responsibilities to the court, including neutrality as to all stakeholders (including the Jaramillos)) that the CCAA applicants have been proceeding in good faith with due diligence towards a CCAA resolution (and with the timetable addressed in the material having to be met demonstrating that they are presently proceeding in good faith and with due diligence) that it would be appropriate in these circumstances to extend the stay to March 15, 2006. I pause to note that at any time and from time to time any interested person may employ the comeback clause provision of the Initial Order and in this regard the Jaramillos (or others) are perfectly at liberty to request that the stay be terminated even before the March 15, 2006 date. One would ordinarily assume that that use of the comeback clause would be triggered by some adverse happening or negative result; however, the comeback clause is not so restricted.

**4** Allegations by the Jaramillos of bad faith as to past activities have been made against the CCAA applicants and the Gardiner interests. However, the question of good faith is with respect to how these parties are conducting themselves in these CCAA proceedings.

**5** It was suggested by U.S. counsel for the Jaramillos (I would observe that US counsel were variously present in the courtroom as shown in the list of counsel) that the CCAA applicants were attempting to pit this (Canadian) court off against the U.S. court (this would include Judge Rakoff's court and the court in New Mexico). I would observe that this court has a long tradition of comity and cooperation with the courts of the U.S. and it will not engage in such an activity. As discussed in Judge Rakoff's hearing transcript of January 25, 2006, he would be calling me and I would confirm that he and I had a very pleasant and productive discussion as to coordination and cooperation - and we will continue with that liaison and endeavour. I know that he is waiting to see how this hearing in Canada goes, before dealing with the matter in New York on February 9.

**6** In that regard, and as I pointed out, I have absolutely no difficulty with the element of Judge Rakoff having to be satisfied as to the appropriateness of how to deal with the Jaramillo litigation in New Mexico. It will be up to him to assess whether that litigation should be carved out, as to which see his previous consideration in this regard. I advised counsel (and Mr. Ringe specifically acknowledged) that they would have to be up to speed re the New Mexico case if Judge Rakoff did not find favour with the process as presently contemplated.

**7** In that regard, I would also advise that I impressed upon all parties/counsel that they would have to continue with the lightning (choice of that word being that of one supportive counsel) progress that had been made to date. I found it very helpful to have the Monitor's interim report as to transactions affecting the CCAA applicants with related parties. That report will have to be finalized forthwith, including all aspects of "reviewable transactions". I was advised by the Monitor that the

CCAA applicants and the other Gardiner entities plus Mr. Gardiner personally recognized the importance of this and that the Monitor was receiving full cooperation and candour in this respect. I am certain that the Supplemental Objection to Motion For Temporary Restraining Order and Preliminary Injunction (headed up with the style of proceedings in the CCAA matter, but clearly addressed to the U.S. court) of the Jaramillos will be of assistance in allowing the Monitor to give special attention to the concerns addressed there. Originally, it was thought that the final report could be completed by February 15, 2006, but with the additional workload forthcoming, it was suggested that February 22, 2006 would be a more manageable date. I would therefore expect a draft interim report by February 15, 2006 to demonstrate that real progress is being made in this regard. Given the future dates in question, it would be better to consider February 22, 2006 as an outside date and better to provide same earlier.

**8**    I understand that later this week the Ad Hoc Committee will be requesting a representation and ancillary order incorporating a joint funding agreement. [Note: as this is being typed up February 8th, I would note that I have just granted such an order.]

**9**    I would reiterate my observations in Re Grace Canada Inc., [2005] O.J. No. 4868 (End. S.C.J.) at paragraph 5 and 11:

> 5.    It would seem to me that the various class proceedings would benefit from cooperation and coordination - using the 3 Cs of the Commercial List (communication, cooperation and common sense). Otherwise, they will be faced with the practical problem of fighting amongst themselves as to a turf war and running the risk of being divided and therefore susceptible to being conquered.
>
> 11.    It would seem to me that the insolvency adjudicative proceedings would, at least under presently anticipated circumstances, result in a more effective efficient process than would a full-blown class action proceeding.

**10**    As well, it is helpful to recall what Blair J. (as he then was) said concerning CCAA stays of proceedings against third parties in Campeau v. Olympia & York Developments Ltd. (1992), 14 C.B.R. (3d) 303 (End. Gen. Div.) at paragraphs 13, 17, 20, 24 and 25:

> 13.    The second motion is by National Bank, which of course opposes the first motion, and which seeks an order staying the Campeau action as against it as well, pending the disposition of the C.C.A.A. proceedings. Counsel submits that the factual substratum of the claim against the bank is dependent entirely on the success of the allegations against the Olympia & York defendants, and that the claim against those defendants is better addressed within the parameters of the C.C.A.A. proceedings. He points out also that if the action were to be taken against the bank alone, his client would be obliged to bring Olympia & York back into the action as third parties in any event.
>
> 17.    By its formal title the C.C.A.A. is known as "An Act to facilitate compromises and arrangement between companies and their creditors". To ensure the effective nature of such a "facilitative" process it is essential that the debtor company be afforded a respite from the litigious and other rights being exercised by creditors, while it attempts to carry on as a going concern

     and to negotiate an acceptable corporate restructuring arrangements with such creditors.

20.    I agree with those sentiments and would simply add that, in my view, the restraining power extends as well to conduct which could seriously impair the debtor's ability to focus and concentrate its efforts on the business purpose of negotiating the compromise or arrangement.

24.    In making these orders, I see no prejudice to the Campeau plaintiffs. The processing of their action is not being precluded, but merely postponed. Their claims may, indeed, be addressed more expeditiously than might have otherwise been the case, as they may be dealt with - at least for the purposes of that proceeding - in the C.C.A.A. proceeding itself. On the other hand, there might be great prejudice to Olympia & York if its attention is diverted from the corporate restructuring process and it is required to expend time and energy in defending an action of the complexity and dimension of this one. While there may not be a great deal of prejudice to National Bank in allowing the action to proceed against it, I am satisfied that there is little likelihood of the action proceeding very far or very effectively unless and until Olympia & York - whose alleged misdeeds are the real focal point of the attack on both sets of defendants - is able to participate.

25.    In addition to the foregoing, I have considered the following factors in the exercise of my discretion:

    1.    Counsel for the plaintiffs argued that the Campeau claim must be dealt with, either in the action or in the C.C.A.A. proceedings and that it cannot simply be ignored. I agree. However, in my view, it is more appropriate, and in fact is essential, that the claim be addressed within the parameters of the C.C.A.A. proceedings rather than outside, in order to maintain the integrity of those proceedings. Were it otherwise, the numerous creditors in that mammoth proceeding would have no effective way of assessing the weight to be given to the Campeau claim in determining their approach to the acceptance or rejection of the Olympia & York plan filed under the Act.

    2.    In this sense, the Campeau claim - like other secured, undersecured, unsecured, and contingent claims - must be dealt with as part of a "controlled stream" of claims that are being negotiated with a view to facilitating a compromise and arrangement between Olympia & York and its creditors. In weighing "the good management" of the two sets of proceedings - i.e., the action and the C.C.A.A. proceeding - the scales tip in favour of dealing with the Campeau claim in the context of the latter: see Attorney General v. Arthur Andersen & Co. (1988), [1989] E.C.C. 224 (C.A.), cited in Arab Monetary Fund v. Hashim, supra.

I am aware, when saying this, that in the initial plan of compromise and arrangement filed by the applicants with the court on August 21, 1992, the

applicants have chosen to include the Campeau plaintiffs amongst those described as "Persons not Affected by the Plan". This treatment does not change the issues, in my view, as it is up to the applicants to decide how they wish to deal with that group of "creditors" in presenting their plan, and up to the other creditors to decide whether they will accept such treatment. In either case, the matter is being dealt with, as it should be, within the context of the C.C.A.A. proceedings.

3.   Pre-judgment interest will compensate the plaintiffs for any delay caused by the imposition of the stays, should the action subsequently proceed and the plaintiffs ultimately be successful.

4.   While there may not be great prejudice to National Bank if the action were to continue against it alone and the causes of action asserted against the two groups of defendants are different, the complex factual situation is common to both claims and the damages are the same. The potential of two different inquiries at two different times into those same facts and damages is not something that should be encouraged. Such multiplicity of inquiries should in fact be discouraged, particularly where - as is the case here - the delay occasioned by the stay is relatively short (at least in terms of the speed with which an action like this Campeau action is likely to progress).

**11**   I am satisfied on a balancing of interests, weighing the benefits and the detriments, that it is appropriate to exercise my discretion to extend the stay. Order is to issue as per my fiat.

**12**   This endorsement was written over the lunch hour. I directed counsel to have their lunch together usefully discussing how this matter may productively proceed. I then returned to court to give them this endorsement and read it to them. I was advised that counsel (including those for the Jaramillos) had an open and frank discussion.

J.M. FARLEY J.

# TAB 3

*Case Name:*
# Nortel Networks Corp. (Re)

**IN THE MATTER OF the Companies' Creditors Arrangement
Act, R.S.C. 1985, c. C-36, as amended
AND IN THE MATTER OF a plan of compromise or
arrangement of Nortel Networks Corporation, Nortel
Networks Limited, Nortel Networks Global Corporation,
Nortel Networks International Corporation and Nortel
Networks Technology Corporation (the "Applicants")
application under the Companies' Creditors Arrangement
Act, R.S.C. 1985, c. C-36, as amended**

[2009] O.J. No. 1044

Court File Nos. 09-CL-7950 and 09-CL-7951

Ontario Superior Court of Justice
Commercial List

**G.B. Morawetz J.**

Heard: March 6, 2009.
Judgment: March 12, 2009.

(20 paras.)

*Bankruptcy and insolvency law -- Motion by restructuring company for approval of plans designed
to retain key employees during restructuring allowed -- Applicant obtained independent advice re-
garding the relevant industry standards -- Record established that the employees who were covered
by the plans were key to the operations of the applicant and were sought after by competitors -- The
Monitor reviewed the details of the applicant's proposed plans and believed that they provided rea-
sonable compensation in the current situation.*

Motion by Nortel for approval of certain payment plans designed to retain key employees during its
restructuring. In designing the plans, Nortel obtained independent advice regarding the relevant in-
dustry standards. The applicant argued that the commitment and retention of key employees was
essential to the execution of a restructuring of Nortel and the completion of a plan of arrangement.
The motion was not opposed by any party or the Monitor.

HELD: Motion allowed. It was appropriate to approve the plans in question. The record established
that the employees who were covered by the plans were key to the operations of Nortel and were
sought after by competitors. The Monitor reviewed the details of the applicant's proposed plans and
believed that they provided reasonable compensation in the current situation.

**Counsel:**

Derrick Tay and Jennifer Stam, for Nortel Networks Corporation, et al.

J. Pasquariello, for Ernst & Young Inc., Monitor.

Jonathan Bell, for Informal Group of Nortel Networks Noteholders.

R. Moncur and M. Barrack, for Flextronics.

M. Starnino, for Pension Benefits Guarantee Fund.

Harvey Chaiton, for IBM.

D. Ullman, for Verizon Communications Inc.

Harvey Garman, for U.K. Protection Fund and Nortel Networks UK Pension Trust Limited.

Demetrios Yiokaris, for Certain Former Salaried Employees of Nortel Networks.

Alex MacFarlane, for the U.S. Unsecured Creditors' Committee.

---

### ENDORSEMENT

**1   G.B. MORAWETZ J.:**-- This motion was heard on March 6, 2009 and the requested relief was granted, with brief reasons to follow.

**2**   At the outset of the Nortel proceedings on January 14, 2009, Mr. Tay, on behalf of Nortel Networks Corporation (the "Applicants or Nortel"), indicated that the Applicants would be seeking approval of a Key Employee Incentive Plan ("KEIP") and a Key Employee Retention Plan ("KERP"). Such approval was sought on this motion, together with a request to approve the Calgary Retention Plan (the "Calgary Retention Plan") providing for retention bonus payments promised to employees in connection with the closing of the Westwinds facility.

**3**   This motion was not opposed.

**4**   The record establishes that the commitment and retention of key employees will be essential to the execution of a restructuring of Nortel and the completion of a plan of arrangement.

**5**   The KEIP applies to certain executives of the Senior Leadership Team ("SLTs") and the Executive Leadership Team ("ELTs") and the KERP applies to certain other key employees.

**6**   The Monitor reports that these plans have been developed to incent those employees who are:

      (i)   absolutely key to the success of the restructuring; and

      (ii)  to remain with the Applicants and U.S. Debtors through to the completion of the Canadian and U.S. proceedings

**7**   In designing the plans, Nortel obtained independent advice from Mercer (U.S.) Inc. ("Mercer") which included benchmarking total direct compensation levels against industry standards in comparing other key employee incentive plans approved by the courts in recent comparable North American restructurings. In addition, the Monitor reports that Nortel's financial advisor, Lezard

Fréres & Co., as well as the Monitor were consulted by Nortel throughout the development process with respect to the plans and have provided Nortel with appropriate input.

**8**    A total of 972 employees are eligible for the plans. This represents approximately 5% of Nortel's global workforce (excluding employees of the EMEA Filed Entities and the joint venturers). The KEIP covers 92 participants, of which, 29 are employed by the Applicants. The potential dollar value to be paid out under the KEIP is approximately $23 million, of which $6.8 million is allocated to the Canadian Applicants. With respect to the KERP, this plan covers 880 participants, of which 294 are employed by the Canadian Applicants. The total potential dollar value to be paid out under the KERP is approximately $22 million, of which $6.2 million is allocated to the Canadian Applicants.

**9**    The awards under both the KEIP and the KERP will vest based on the achievement of three milestones, namely, achievement of North American objectives; achievement of certain parameters that will result in a leaner and more focussed organization; and court-approved confirmation of a plan of restructuring.

**10**    The Unsecured Creditors' Committee ("UCC") in the Chapter 11 proceedings has indicated that it supports the plans, although such support with respect to the KEIP for the SLTs is conditional upon the delivery to the UCC of Nortel's 2009 financial projections.

**11**    Counsel to the Applicants advised that the U.S. Bankruptcy Court has approved the KEIP (except as it relates to the SLTs) and the KERP.

**12**    In order to maintain consistency between Canada and the U.S., the Applicants' motion to approve the KEIP excludes the SLTs. The Monitor reports that the Applicants have advised that they intend to request approval of the KEIP for the SLTs at a future date.

**13**    With respect to the Calgary Retention Plan, a decision was made in July 2008 to close the Westwinds facility and transfer R & D and global operations to other facilities over a period of 12 months. In July 2008, Nortel developed the Calgary Retention Plan that provided for retention payments to be made to those Westwinds facility employees who Nortel determined were critical to the successful shutdown of the facility. The Applicants have indicated that the maximum cost of the Calgary Retention Plan is estimated to be approximately $727,000 to be paid to 45 employees at the time the employees have completed their portion of the project.

**14**    I am satisfied that the record establishes that the employees who are covered by the KEIP, the KERP and the Calgary Retention Plan are key to the operations of Nortel and are sought after by competitors, even given current market conditions.

**15**    The Monitor has reviewed the details of the Applicants proposed plans and Mercer's analysis and believes that the proposed plans provide reasonable compensation in the current situation.

**16**    Full details with respect to the plans are contained in the Confidential Report. I have reviewed this Report and agree with the submissions of both the Applicants and the Monitor that the Report contains sensitive commercial information that would be harmful to the Applicants if it were disclosed in the marketplace. In addition, the Confidential Report contains sensitive personal information relating to Nortel's employees, the disclosure of which, in my view, would be harmful.

**17**    The Applicants and the Monitor request that the Confidential Report be sealed, pending further order of the court. I am satisfied that the test for sealing the Confidential Report, as set out in