## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------X
                                                     :
                                                     :       Chapter 11
                                                     :
In re                                                :
                                                     :       Case No. 09-10138 (KG)
Nortel Networks Inc., et al., 1                      :
                                                     :       Jointly Administered
                          Debtors.                   :
                                                     :
                                                     :       Related Docket Nos. 1627, 1685,
                                                     :       2014
-----------------------------------------------------X
```

**MEN ACQUISITION LLC'S (I) JOINDER TO LIMITED OBJECTION OF
MATLINPATTERSON GLOBAL ADVISERS LLC AND (II) OBJECTION
TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING
DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE
AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING
PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE
NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT
PROCEDURES, (D) AUTHORIZING THE FILING OF CERTAIN
DOCUMENTS UNDER SEAL AND (E) SETTING A DATE FOR THE
SALE HEARING AND (II) AUTHORIZING AND APPROVING (A) THE
SALE OF CERTAIN ASSETS OF THE DEBTORS' METRO ETHERNET
NETWORKS BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS
AND ENCUMBRANCES AND (B) THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

MEN Acquisition LLC ("MEN Acquisition") hereby joins in that limited objection filed

by MatlinPatterson Global Advisors LLC ("MP") (Docket No. 2014) (the "MP Objection") and

files this objection to the Debtors' Motion for Orders (I)(A) Authorizing Debtors' Entry Into The

Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures

And Bid Protections, (C) Approving The Notice Procedures And The Assumption And

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Assignment Procedures, (D) Authorizing The Filing Of Certain Documents Under Seal And (E)

Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of

Certain Assets Of Debtors' Metro Ethernet Networks Business Free And Clear Of All Liens,

Claims And Encumbrances And (B) The Assumption And Assignment Of Certain Executory

Contracts (D.I. 1627) (the "Bid Procedures and Sale Motion"), and respectfully states as follows:

## BACKGROUND

1.      On January 14, 2009 (the "Petition Date") the Debtors filed voluntary

petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  The Debtors continue to operate and manage their businesses as debtors in possession

pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.      On October 7, 2009, the Debtors filed the Bid Procedures and Sale Motion

seeking approval of (i) certain bidding procedures (the "Bid Procedures") and a break up fee and

expense reimbursement (the "Bid Protections") in connection with the proposed sale of the

Debtors'  Metro Ethernet Networks assets (the "MEN Assets") and Ciena Corporation's ("Ciena")

stalking horse bid for such MEN Assets, and (ii) the sale of the MEN Assets to Ciena or other

successful bidder.  On October 16, 2009, the Court entered an order approving the Bid

Procedures and the Bid Protections (D.I. 1685) (the "Bid Procedures Order").[2]

3.      On November 17, 2009, MEN Acquisition submitted a Qualified Bid for

the MEN Assets in compliance with the Bid Procedures (the "MEN Acquisition Bid").  At the

auction beginning on November 20, 2009 (the "Auction"), MEN Acquisition increased the MEN

Acquisition Bid to an <u>all-cash</u> $770 million offer for the MEN Assets (the "Final MEN

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Bid
Procedures Order.

Acquisition Bid").  At the Auction, Ciena likewise increased its stalking horse bid, and made a final bid for the MEN Assets for $530 million in cash and $239 million of convertible notes (the "Final Ciena Bid").  Other than the all-cash nature of the Final MEN Acquisition Bid, the Final MEN Acquisition Bid was on substantially the same terms as the Final Ciena Bid. Notwithstanding the all-cash nature of the Final MEN Acquisition Bid, the Debtors selected the Final Ciena Bid as the Successful Bid and have asked this Court to approve the sale of the MEN Assets to Ciena on the terms of the Final Ciena Bid.[3]

## OBJECTION

4.	The Bid Procedures approved by this Court require that each incremental bid following the Starting Bid and/or the Leading Bid "provide net value to the estate of at least U.S.$5,000,000 over the Starting Bid or the Leading Bid, as the case may be[.]"  See Exhibit A to Bid Procedures Order, page 12.  The Bid Procedures allow the Debtors (in consultation with the Committee, the Bondholder Group, and the Monitor) to modify such $5,000,000 bidding increments.  Id.  At the final stages of the Auction, the Debtors increased such bidding increments to $10,000,000 after previously increasing the bidding increment to $25,000,000.

5.	Accordingly, for the Final Ciena Bid to be a higher or better offer than the Final MEN Acquisition Bid pursuant to the terms of the Court-approved Bid Procedures, the Final Ciena Bid must have been equal to a "net value to the estate" of at least $759,000,000. Specifically, (i) the Final MEN Acquisition Bid presented an all-cash value of $770,000,000, (ii) the Bid Protections totaled $21,044,000 and (iii) the overbid increment was set at $10,000,000.

---

[3]	The terms of the debt portion of the Final Ciena Bid have not been made fully available by the Debtors.

6.     As noted above, the Debtors chose the Final Ciena Bid as the Successful

Bid, which Final Ciena Bid was comprised of $530,000,000 in cash plus $239,000,000 in

convertible notes (the "Ciena Convertible Debt").  The full documentation for such Ciena

Convertible Debt has not been made public by the Debtors or Ciena.[4]  See e.g., MP Objection,

see also Notice of Filing of Successful Bid (Docket No. 1969).  In determining that the Final

Ciena Bid was higher or otherwise better than the Final MEN Acquisition Bid, the Debtors and

their advisors valued the Ciena Convertible Debt offered by Ciena for the MEN Assets at par or

at least at a value of $229 million (i.e., 95.6% of par).  Any such valuation of the Ciena

Convertible Debt at par or 95.6% of par is simply unsupportable, and resulted in the Auction

being terminated prematurely.    Indeed, at any value less than 95.6% of par for the Ciena

Convertible Debt, the Final MEN Acquisition Bid remained the highest or otherwise best bid for

the MEN Assets.  Consequently, either Ciena should have been required to increase its bid for

the MEN Assets or the Debtors should have been required to set forth the basis for valuing the

Ciena Convertible Debt at par or at 95.6% discount of par.

7.     Importantly, the value of the Ciena Convertible Debt is not a matter of the

Debtors' business judgment but rather a valuation issue.  Indeed, MEN Acquisition made such

point and requested that the Debtors adjourn the Auction to fix such valuation after consultation

with experts, which the Debtors declined to do, placing MEN Acquisition in an untenable

position with respect to further bidding.

8.     Consequently, had the Debtors properly valued the Ciena Convertible

Debt, the Debtors could not have concluded that the Final Ciena Bid was the highest or

---

[4]     While the Debtors have filed certain information and documentation relating to the Ciena Convertible Debt, including as recently as today (Docket No. 2045), certain critical information and documentation regarding the Ciena Convertible Debt has not been made public by the Debtors to date.

otherwise best offer for the MEN Assets.  Indeed, this is exacerbated by the fact that the Debtors

have refused to make public the documentation supporting the Ciena Convertible Debt.  To

remedy the situation, the Court should (i) require the Debtors to place a fair discount on the

Ciena Convertible Debt and set forth their basis for valuing the Ciena Convertible Debt and

(ii) reopen the Auction consistent therewith to provide bidders with an opportunity to bid based

upon the true value of the Ciena Convertible Debt and creditors to evaluate the basis for selection

of a Successful Bid.[5]

## CONCLUSION

WHEREFORE, for the reasons set forth above and for those reasons set forth in

the MP Objection, MEN Acquisition respectfully requests that the Court decline approval of the

sale of the MEN Assets to Ciena on the terms set forth in the Final Ciena Bid.

Dated: December 1, 2009
      Wilmington, Delaware

          /s/  Gregg M. Galardi
          Gregg M. Galardi (I.D. No. 2991)
          Sarah E. Pierce (I.D. No. 4648)
          Skadden, Arps, Slate, Meagher & Flom LLP
          One Rodney Square
          P.O. Box 636
          Wilmington, Delaware 19899-0636
          (302) 651-3000

          Counsel for MEN Acquisition LLC

---

[5] Notwithstanding its objections set forth herein and although unnecessary under the Bid Procedures, to demonstrate its continued interest in bidding for the MEN Assets and as evidence that the Auction ended prematurely, MEN Acquisition has submitted a bid to the Debtors of $810,000,000 in cash for the MEN Assets upon a reopened Auction based upon the parameters set forth herein, with any bids submitted at such reopened Auction (including the $810,000,000 bid submitted by MEN Acquisition) governed by the discount and valuation of the Ciena Convertible Debt requested herein.  Indeed, the Debtors will suffer no prejudice by reopening the Auction with additional valuation and discount disclosure for the Ciena Convertible Debt, as MEN Acquisition is willing to immediately submit its bid of $810,000,000 in cash for the MEN Assets in any such reopened Auction and in fact has submitted such an offer to the Debtors in writing, a copy of which is attached hereto as Exhibit A.

**EXHIBIT A**

## MEN ACQUISITION LLC

To Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Inc. and the
Other Entities Identified as Sellers in the Agreements

December 1, 2009

Dear Sir or Madam,

MEN Acquisition LLC ("Bidder") is pleased to submit its offer (the "December 1 Bid") to
acquire the optical networking solutions and carrier Ethernet switching segment, the "Metro
Ethernet Networks" business, of Nortel Networks Corporation, Nortel Networks Limited,
Nortel Networks Inc. and certain of their affiliates (collectively, "Nortel"), subject to the
terms set forth in this letter.  Reference is made to the Bidding Procedures approved by order
of the United States Bankruptcy Court on October 16, 2009 (the "Bidding Procedures Order")
and the Bidder's bid submitted pursuant to the Bidding Procedures in round 10 of the Auction
on November 22, 2009 (the "November 22 Bid").  Terms used but not otherwise defined
herein have the meanings assigned to them in the Bidding Procedures Order.

Bidder hereby offers to purchase the Assets for $810 million in cash, upon the terms set forth
in the November 22 Bid (as modified by the express terms of this letter) and subject to the
condition that the Auction is reopened for bidding by Nortel or by order of the Bankruptcy
Court.  Any further bids to be made by Bidder will be contingent on either (i) the Sellers and
Bidder agreeing to the value of any non-cash consideration of a bid, including, without
limitation, convertible debt of Ciena Corporation or (ii) the Bankruptcy Court determining
the value of any such non-cash consideration.

We believe that this December 1 Bid represents the highest or otherwise best offer for the
Assets.

The revocation right set forth in the November 22 Bid is hereby deleted, and this December 1
Bid may be revoked by Bidder unless it is formally declared the Leading Bid or the
Successful Bid by December 31, 2009.  Bidder agrees that if it is selected as the Successful
Bidder its offer shall remain irrevocable until the earlier of (i) closing of the Sale to the
Successful Bidder or (ii) April 30, 2010.

The Bidder, Nokia Siemens Networks B.V. ("NSN") and One Equity Partners III, L.P.
("OEP") reserve all their respective rights in connection with the Auction and otherwise.

We look forward to your response. We are available to discuss the December 1 Bid at your
convenience.  Please contact Gerwin Zott (Tel: +49-172-843-45-88; email:
gerwin.zott@nsn.com) at NSN, Robert Arsov (Tel: 646-256-4622; email:
robert.arsov@credit-suisse.com) or Brian Gudofsky (Tel: 917-445-5222; email:
brian.gudofsky@credit-suisse.com), NSN's financial advisors at Credit Suisse, or Lynn
Hiestand (Tel: +44-207-519-7012; email: Lynn.Hiestand@skadden.com), NSN's legal
counsel at Skadden Arps, David Walsh (Tel: 917-647-3255; email:
david.a.walsh@onequity.com) at OEP, Jamie Koven (Tel: 917-498-2738; email:
james.koven@onequity.com) at OEP, Madhu Namburi (Tel: 917-940-7963; email:
madhukar.namburi@jpmorgan.com) OEP's financial advisor JP Morgan, or David Allinson
(Tel: 212-906-1749; email: david.allinson@lw.com), OEP's legal counsel at Latham &
Watkins LLP, if you have any questions in connection with this letter.

Sincerely yours,

MEN ACQUISITION LLC

By:  One Equity Partners III, L.P., in its capacity as 50% member

    By:    OEP General Partner III, L.P.,
            its General Partner

    By:    OEP Holding Corporation,
            its General Partner

    By:    _____
            Name:  David A. Walsh
            Title:  Managing Director

By:  Nokia Siemens Networks B.V., in its capacity as 50% member

    By:    _____
            Name:  Michael Matthews
            Title:  Head of Strategy and Business Development

Sincerely yours,

MEN ACQUISITION LLC

By: One Equity Partners III, L.P., in its capacity as 50% member

    By:    OEP General Partner III, L.P.,
              its General Partner

    By:    OEP Holding Corporation,
              its General Partner

    By:    _____
              Name:  David A. Walsh
              Title:  Managing Director

By: Nokia Siemens Networks B.V., in its capacity as 50% member

    By:    _____
              Name:  Michael Matthews
              Title:  Head of Strategy and Business Development

2