## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------X
In re                                                 :
                                                      :
Nortel Networks Inc., et al.,[1]                      :
                          Debtors.                    :
                                                      :
                                                      :
                                                      :
                                                      :
                                                      :
------------------------------------------------------X
```

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing Date: December 15, 2009 at 10:00 a.m.
(prevailing Eastern Time) [PROPOSED]**

**Objections Due: December 14, 2009 at 12:00 p.m.
(prevailing Eastern Time) [PROPOSED]**

## DEBTORS' MOTION FOR AN ORDER APPROVING SETTLEMENT AGREEMENT WITH THE INTERNATIONAL BUSINESS MACHINES CORPORATION

Nortel Networks Inc. ("NNI")[2], and its affiliated debtors and debtors-in-possession

(collectively, the "Debtors"), hereby move this Court (the "Motion"), pursuant to section 105(a)

of Title 11 of the United States Code, 11 U.S.C. et seq. 101 (as amended, the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the entry of an order substantially in the form attached hereto as **Exhibit A**, approving a

settlement agreement (the "Settlement Agreement") between NNI and the International Business

Machines Corporation ("IBM") (IBM, together with NNI, the "Parties"), in the form attached

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. f/k/a Alteon WebSystems, Inc. (9769), Nortel Altsystems International, Inc. f/k/a Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Settlement Agreement.

hereto as **Exhibit B**, pursuant to which IBM has agreed to, among other things, waive claims in exchange for certain consideration from NNI.[3]   In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## BACKGROUND

**A.      Introduction**

3.      Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

4.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc., filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  NN CALA filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

---

[3]    The summaries and descriptions of the terms and conditions of the Settlement Agreement set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the Settlement Agreement. In the event there is a conflict between the Motion and the Settlement Agreement, the Settlement Agreement shall control in all respects.

5.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[4] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").    The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

8.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[4]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

9.    On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[5] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.    In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[5]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria)

10. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

11. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

12. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

---

GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

B.    **Debtors' Corporate Structure and Business**

13.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

## FACTS RELEVANT TO THIS MOTION

A.    **Background of Current Dispute Between the Parties**

14.    IBM is a New York corporation, with its principal place of business in New York. IBM is an international information technology consulting, computer and technology corporation.

15.    On March 30, 2007, NNL, on behalf of itself, its parent NNC, and Subsidiaries[6] and IBM executed that certain Master Services Agreement (the "HLR/HSS Agreement").  On March 31, 2008, NNL, on behalf of itself, its parent NNC, and NNI and IBM executed that certain Master Services Agreement (the "PV&T Agreement", and together with the HLR/HSS Agreement, the "Agreements").  Under the Agreements, IBM provided development and testing services for various Nortel businesses.

16.    On March 20, 2009, the Court entered the *Order Approving Procedures for the Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Certain Assets Related Thereto* [D.I. 510] (the "Rejection Procedures Order").

17.    On May 28, 2009, in accordance with the Rejection Procedures Order, the Debtors filed the *Fifth Notice of Rejection of Executory Contract(s) and/or Personal Property Lease(s) by Debtors and Debtors in Possession* [D.I. 794] (the "PV&T Agreement Rejection Notice").  Following the expiration of the Rejection Notice Period applicable to the PV&T

---

[6]    As defined in the HLS/HSS Agreement.

Rejection Notice[7] without objection to the PV&T Agreement Rejection Notice, the PV&T Agreement was deemed rejected on May 28, 2009.[8]

18.    On September 29, 2009, in accordance with the Rejection Procedures Order, the Debtors filed the *Sixteenth Notice of Rejection of Executory Contract(s) and/or Personal Property Lease(s) by Debtors and Debtors in Possession* [D.I. 1572] (the "HLR/HSS Agreement Rejection Notice"). Following the expiration of the Rejection Notice Period applicable to the HLR/HSS Agreement Rejection Notice[9] without objection to the HLR/HSS Agreement Rejection Notice, the HLR/HSS Agreement was deemed rejected on September 30, 2009.[10]

19.    On August 4, 2009, the Court entered the *Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof* [D.I. 1280] (the "U.S. Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) as the last date for persons or entities to file proofs of claim based upon prepetition obligations of the Debtors.

20.    On July 30, 2009, the Canadian Court entered the Claims Procedure Order (the "Canadian Bar Date Order", and together with the U.S. Bar Date Order, the "Bar Date Order") establishing September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) as the last date for persons or entities to file proofs of claim based on prefiling obligations of the Canadian Debtors.

21.    On February 2, 2009, IBM filed claim number 192 (the "Initial IBM Claim") against the Debtors. On September 30, 2009, IBM filed claim numbers 5418, 5419, and 5420

---

[7]    As defined by the Rejection Procedures Order.

[8]    By letter dated May 28, 2009 (the "PV&T Agreement Repudiation Letter"), pursuant to paragraph 11(d) of the Initial Order, NNL and NNC repudiated the PV&T Agreement.

[9]    As defined by the Rejection Procedures Order.

[10]    By letter dated September 29, 2009 (the "HLR/HSS Agreement Repudiation Letter"), pursuant to paragraph 11(d) of the Initial Order, NNL and NNC repudiated the HLR/HSS Agreement.

against the Debtors (collectively, the "Additional IBM Claims", and together with the Initial IBM Claim, the "IBM U.S. Claim").

22.     On September 30, 2009, IBM filed a claim against both of NNC and NNL each of which claim consisted of a US $22,299,106.76 unsecured claim and a US $29,310,274.38 restructuring claim; IBM Global Services (China) Co. Ltd. filed a claim against both of NNC and NNL each of which claim consisted of a US $485,750.96 unsecured claim and a US $493,509.95 restructuring claim; and IBM Canada Limited filed a claim against NNC which consisted of a US $576,343.04 unsecured claim, a CAN $2,308,982.81 unsecured claim and a CAN $13,384,621.97 restructuring claim  (collectively, the "IBM Canada Claim", and together with the IBM U.S. Claim, the "IBM Claim").

23.     IBM asserts, through, among other things, the IBM Claim, a claim against the Debtors (as defined in the Settlement Agreement) for certain amounts due and owing under the Agreements arising both prior to and after the Petition Date.

24.     IBM has asserted its entitlement to significant post-petition administrative claims, in excess of $4,690,000.

**B.     The Proposed Settlement Agreement**

25.     Following the decision to reject and repudiate the Agreements, the Parties entered into discussions to resolve and settle IBM's claims under the Agreements.  As a result of these negotiations, in exchange for certain consideration from NNI, IBM agreed to settle its post-petition claims under the Agreements through the agreed terms set for in the attached Settlement Agreement, which includes the following substantive components:

1.  IBM agrees to reduce its post-petition claim to $2,500,000.

2.  IBM agrees that its claim for the Termination and Wind Down Charges and Lab Start Up Costs under the Agreements are pre-petition claims and waives any right to assert that the

8

Termination and Wind Down Charges and Lab Start Up Costs are post-petition claims or otherwise entitled to administrative priority.

3.   IBM agrees to waive and release all other post-petition claims under the Agreements and waives any right to assert that such claims are post-petition claims or otherwise entitled to administrative priority.

4.   IBM agrees that the Pre-Petition Claim, IBM's claim for the Termination and Wind Down Charges and IBM's claim for the Lab Start Up Costs shall not be allowed against the estate of more than one Debtor (as defined in the Settlement Agreement).

## RELIEF REQUESTED AND BASIS FOR RELIEF

26.    By this Motion, the Debtors seek an Order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, approving the Settlement Agreement, and granting such other and further relief as the Court deems just and proper.

27.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

28.    Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the Bankruptcy Court. See In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004).

29.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008). Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968). The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992). The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

30.    Applying these principles to the instant matter, the Debtors submit that the Settlement Agreement is clearly in the best interests of the Debtors, their estates and their creditors and should be approved. Under the Settlement Agreement, IBM is releasing certain post-petition claims against the Nortel Released Parties and waiving the right to assert that other claims are post-petition claims or otherwise assert that such claims are entitled to administrative priority. The Debtors believe that such claims could be substantial.

31.    While the Debtors are prepared to litigate the dispute, such litigation would add expense and the Debtors do not believe it would achieve a better result for NNI than the one achieved under the Settlement Agreement. Even if the Debtors were ultimately successful in a

10

litigation, any litigation to pursue the issues otherwise resolved by the Settlement Agreement would likely result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

32.     Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Settlement Agreement. The Debtors believe that the interests of their creditors are supported by the prompt and efficient resolution of this dispute, and the minimization of administrative claims and expenses.

33.     In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement is preferable to further opposition to IBM. The proposed Settlement Agreement and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim.   For these reasons, the Debtors assert that the Settlement Agreement should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## NOTICE

34.     Notice of this Motion has been given to (i) the U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for the Bondholders; (iv) counsel for IBM; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

35.     No prior request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  December 7, 2009
       Wilmington, Delaware

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                _____
                Derek C. Abbott (No. 3376)
                Eric D. Schwartz (No. 3134)
                Ann C. Cordo (No. 4817)
                Andrew R. Remming (No. 5120)
                1201 North Market Street
                P.O. Box 1347
                Wilmington, Delaware 19801
                Telephone:  (302) 658-9200
                Facsimile: (302) 658-3989

                *Delaware and General Bankruptcy Counsel for the*
                *Debtors and Debtors-in-Possession*

3253772.3