IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
                                                          :
                                                          :   Chapter 11
*In re*                                                   :
                                                          :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                        :
                                                          :   Jointly Administered
                            Debtors.                      :
                                                          :
                                                          :
----------------------------------------------------------X   Hearing Date: January 6, 2010 at 10:00 a.m.
                                                              Objection Deadline: December 30, 2009 at 4:00
                                                              p.m.


DEBTORS' MOTION FOR AN ORDER PURSUANT TO
11 U.S.C. § 363 AUTHORIZING AND APPROVING THE
EMPLOYMENT AND RETENTION OF JOHN RAY AS THE
DEBTORS' PRINCIPAL OFFICER,
*NUNC PRO TUNC* TO DECEMBER 7, 2009

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), authorizing and approving the employment and retention of John Ray as the Debtors' Principal Officer ("Principal Officer"), *nunc pro tunc* to December 7, 2009; and granting them such other and further relief as the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

deems just and proper. In support of this Application, the Debtors rely on the Declaration of John Ray (the "Ray Declaration"), attached hereto as Exhibit B. In further support of this Application, the Debtors respectfully represent as follows:

### Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is section 363 of the Bankruptcy Code.

### Background

**A.   Introduction**

3. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

4. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that

provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

7. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

8. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9. On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel
(Continued . . .)

3

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

10. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court,

---

(. . . continued)
Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

11.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

12.  On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.   Debtors' Corporate Structure and Business**

13.  A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[4]

---

[4] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

## Relief Requested

14.     By this Motion, the Debtors respectfully request the entry of an order authorizing and approving the employment and retention of John Ray as the Debtors' Principal Officer, *nunc pro tunc* to December 7, 2009, pursuant to the engagement letter, attached hereto as <u>Exhibit C</u> (the "<u>Engagement Letter</u>").

## Facts Relevant To This Motion

15.     On August 10, 2009, the Debtors issued a press release announcing that they were in the process of identifying a principal officer for the Debtors in these chapter 11 cases, noting that such appointment would be subject to the approval of this Court.  Throughout the past several months, the Debtors and their representatives, together with representatives of the Committee and the Bondholder Group have met with a number of potential candidates, including Mr. Ray.  After due deliberation and after receiving input from the Committee, the Bondholder Group, the Monitor and management of the Canadian Debtors, the Debtors concluded that Mr. Ray is the best candidate for the position.

16.     On December 7, 2009, John Ray and NNI executed the Engagement Letter after several weeks of good faith negotiations involving the Debtors, the Committee, the Bondholder Group, and their respective representatives.

## Scope Of Services[5]

17. Pursuant to the Engagement Letter, Mr. Ray will, among other things: (a) direct and oversee the winding up of the businesses of the Debtors, and review and guide their interaction with other Nortel entities and businesses, (b) support and defend the interests of the Debtors' estates and their creditors on issues including, without limitation, purchase price and cost allocation, repatriation of cash, cost reductions, transition services and related pricing, claims resolution, inter-estate disputes between the Debtors or among the Debtors and the various Nortel entities, compensation, auditing and other administrative functions, and any other issues that may affect recoveries to creditors of the Debtors' estates, (c) receive periodic reports from operational management on the provision of transition services and the winding down of the Nortel businesses, (d) work with all constituents to develop and implement plans to monetize remaining assets, strategies to wind down Nortel businesses, or plans of liquidation or reorganization, (e) interact and consult as appropriate with Nortel employees, the Monitor, the Joint Administrators, the Committee, the Bondholders' Group and each of their various retained advisors, (f) meet with and provide periodic reports to the Board of Directors of NNI, the Committee, the steering committee of the Bondholders' group and, to the extent necessary, the Bankruptcy Court, which with respect to the Committee and the steering committee of the Bondholders' group, shall include, if requested, one in-person meeting approximately every 60 days from and after December 7, 2009, and (g) provide such other services as may be mutually

---

[5] The summaries and descriptions of the terms and conditions of the Engagement Letter set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the Engagement Letter. In the event there is a conflict between the Motion and the Engagement Letter, the Engagement Letter shall control in all respects.

agreed upon by Mr. Ray and NNI, provided however, that such services shall not include day-to-day operational management of the Debtors' businesses.

18.   The Debtors are familiar with the professional standing and reputation of Mr. Ray and are aware that Mr. Ray has an excellent reputation for services rendered in similar matters throughout the United States.  In particular, Mr. Ray's experience in restructuring matters, including Enron and Fruit of the Loom among others, as described in more detail in the Ray Declaration submitted herewith.

19.   The role of Mr. Ray as Principal Officer is critical to the Debtors' efforts to support and defend the Debtors' interests among the various constituencies, to maximize recoveries for creditors of the Debtors, as well as to market and sell their remaining businesses and assets, and, ultimately, a favorable outcome in these chapter 11 cases.  Mr. Ray will help ensure that critical management functions related to the Debtors' bankruptcy cases and sale processes are effectively discharged.

20.   Mr. Ray shall not render any services other than those set forth in the Engagement Letter.

## Professional Compensation and Employment Terms

21.   Mr. Ray will be compensated for the services he provides to the Debtors at an hourly rate of $450 (the "Fees").  Such Fees shall be payable monthly, and may be revised periodically, provided that annual increases shall not exceed 5%.  Except as provided in Section 5.1 of the Standard Terms and Conditions attached to the Engagement Letter, 50% of the Fees earned by Mr. Ray in calendar years 2009 and 2010 shall be deferred and paid to Mr. Ray in a single lump sum payment on the later of January 1, 2011 and the date that the Debtors make a

distribution or distributions equal to or exceeding 35% of the amount estimated in an approved disclosure statement for distribution to general unsecured creditors under a plan approved by this Court (the "Distribution"), provided, that whether or not the Distribution occurs, such payment will be made no later than December 31, 2011. The Debtors will also reimburse Mr. Ray for all reasonable out-of-pocket expenses incurred in connection with Mr. Ray's work for the Debtors, such as airfare, meals, hotel accommodations, telephone, research, duplicating and printing charges in accordance with the guidelines of this Court.

22. Because Mr. Ray is not being employed as a professional under section 327 of the Bankruptcy Code, he is not subject to the compensation requirements of sections 330 and 331 of the Bankruptcy Code. However, Mr. Ray has agreed to submit fee applications and receive payment in accordance with the interim compensation procedures order approved by this Court pursuant to the interim compensation procedures order entered on February 4, 2009 [D.I. 222] ("ICP Order").

23. The Debtors believe that this compensation is fair and reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, Mr. Ray's experience in comparable chapter 11 cases and the scope of work to be performed.

### Indemnification

24. The Debtors will provide Mr. Ray with officers' insurance coverage. Further, Mr. Ray will be entitled to the benefit of the same post-petition limitations of liabilities, indemnities and other protections provided by the Debtors to their other officers. Mr. Ray and the Debtors acknowledge that Mr. Ray will not be entitled to any further indemnification provided by the Debtors.

25. Such indemnification provisions reflected in the Engagement Letter are customary and reasonable terms of engagement for Principal Officers such as Mr. Ray for proceedings both out of court and in chapter 11. The terms of the Engagement Letter, including indemnification provisions, generally were fully negotiated between Nortel and Mr. Ray at arm's-length and the Debtors respectfully submit that the Engagement Letter, including the indemnification contained therein, is reasonable and in the best interests of the Debtors, their estates and their creditors.

26. Accordingly, as part of this Motion, the Debtors request that the Court approve the indemnification granted under the Engagement Letter, as modified in the proposed order attached hereto as <u>Exhibit A</u> and as set forth below:

    a. Subject to the provisions of subparagraph (b) and (c) below, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, the Indemnified Party (as defined in the Engagement Letter) in accordance with the Engagement Letter for any claim arising from, related to, or in connection with the services provided for in the Engagement Letter;

    b. Notwithstanding any indemnification provisions of the Agreement to the contrary, the Debtors shall have no obligation to indemnify Mr. Ray or provide reimbursement to Mr. Ray for any claim or expense that is judicially determined (the determination having become final) to have arisen from Mr. Ray's bad faith, self-dealing, breach of fiduciary duty (if any), or willful misconduct.

**Cash Management Order**

27. At the time of the commencement of these proceedings, the Debtors sought permission to maintain a cash management system. *See* Debtor's Motion For An Order Pursuant To Sections 245, 363(c)(1) And 503(b)(1): (A) Approving The Continued Use Of the Cash Management System, Bank Accounts And Business Forms; (B) Permitting Continued Intercompany Transactions, Granting Administrative Priority Status To Postpetition

Intercompany Claims And Preserving And Permitting The Exercise Of Intercompany Setoff Rights; (C) Authorizing Banks To Honor Certain Transfers And Charge Certain Fees And Other Amounts; And (D) Waiving The Requirements of 11 U.S.C. Section 345(b) On An Interim Basis [D.I. 9] (the "Cash Management Motion"); Order Pursuant To Sections 245, 363(c)(1) And 503(b)(1): (A) Approving The Continued Use Of the Cash Management System, Bank Accounts And Business Forms; (B) Permitting Continued Intercompany Transactions, Granting Administrative Priority Status To Postpetition Intercompany Claims And Preserving And Permitting The Exercise Of Intercompany Setoff Rights; (C) Authorizing Banks To Honor Certain Transfers And Charge Certain Fees And Other Amounts; And (D) Waiving The Requirements of 11 U.S.C. Section 345(b) On An Interim Basis [D.I. 58] (the "Cash Management Order"). Among other things, the Cash Management Order and Cash Management Motion state that the Debtors, including NNI, agree to forebear from exercising certain rights of set-off on claims against the Canadian Debtors until, among other things, an interim or permanent trustee, a responsible officer or an examiner with powers beyond the duty to investigate and report (as set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code) has been appointed to oversee or operate any of the Debtors in these chapter 11 cases. For the avoidance of doubt, the appointment of Mr. Ray as Principal Officer does not provide the Debtors with the right to exercise any such set-off rights.

### Disinterestedness

28. To the best of the Debtors' knowledge, information and belief, and based and in reliance upon the Ray Declaration: (i) Mr. Ray is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy

Code and referenced by section 328(c) of the Bankruptcy Code, and (ii) Mr. Ray holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters for which Mr. Ray is to be employed.

### Basis For Relief Requested

29.     Section 363(b)(1) of the Bankruptcy Code permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and hearing. 11 U.S.C. § 363(b)(1). To obtain court approval to use property under section 363(b), the Debtors need only show a legitimate business justification for the proposed action. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 772 F.2d 1063 (2d Cir. 1983); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" test for section 363(b)). If a valid business justification exists—as it surely does in this case—the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption "that in making a business decision the directors of the corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

30.     The employment and retention of Mr. Ray as Principal Officer is proper under section 363 of the Bankruptcy Code and the Debtors believe that the employment and retention of Mr. Ray as Principal Officer would greatly benefit the Debtors' estates and creditors. Accordingly, the Debtors believe that the employment and retention of Mr. Ray as Principal Officer reflect an exercise of the Debtors' sound business judgment.

**Notice**

31. Notice of the Motion has been given via first class mail, facsimile, electronic transmission or hand delivery to the (i) U.S. Trustee; (ii) the Committee; (iii) the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

32. No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: December 8, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*