**EXHIBIT B**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
Debtors. : Jointly Administered
:
:
------------------------------------------------------------X

**DECLARATION OF JOHN RAY IN SUPPORT OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF JOHN RAY AS THE DEBTORS' PRINCIPAL OFFICER, *NUNC PRO TUNC* TO DECEMBER 7, 2009**

I, John Ray, do hereby declare (the "Declaration")[2] as follows:

1.  I am Senior Managing Director and sole member of Avidity Partners, LLC ("Avidity"), which maintains an office at One Lincoln Centre, 18 W140 Butterfield Road, 15th Floor, Oakbrook Terrace, Illinois, 60181. I submit this Declaration in support of the Debtors' motion (the "Motion") for entry of an order, pursuant to section 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), authorizing and approving the employment and retention of John Ray as the Debtors' Principal Officer ("Principal Officer"), *nunc pro tunc* to December 7, 2009. Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

2.      I have experience in areas relevant to financial restructuring. From 1998 through 2002, I served as Chief Administrative Officer and General Counsel of Fruit of the Loom. Fruit of the Loom filed for chapter 11 bankruptcy protection, Case No. 99-04497 in the United States Bankruptcy Court for the District of Delaware, on December 29, 1999. I continued as General Counsel to Fruit of the Loom through its restructuring process and was appointed, through Avidity, as post confirmation Chapter 11 Trustee in those proceedings on April 30, 2002. In connection with my roles as General Counsel and Chapter 11 Trustee to Fruit of the Loom, I was primarily responsible for the sale process, the wind down of the estate, the administrative, secured and priority claims resolution process and the distribution of sale proceeds to creditors, the sale of notes, bonds and receivables and the prosecution of litigation related to the Fruit of the Loom plan of reorganization.

3.      From 2004 to 2009, I served as Chairman of the Board and from 2005 to 2009 as President (the most senior officer) of Enron Corporation, now known as Enron Creditor Recovery Group ("Enron"). As President and Chairman of Enron, I managed the business through its post-confirmation chapter 11 proceedings and was principally involved in overseeing Enron's $23 billion proceeding which included a multitude of stock and asset sales, including a going concern business of multiple billion in sales, a public offering of stock, prosecution of approximately 1,000 avoidance, fraud and other actions, and the resolution of filed and scheduled claims exceeding several hundred billion dollars.

4.      In addition to my roles at Fruit of the Loom and Enron, I have also served as a Chapter 11 Trustee of Burlington Industries, Pac-West, National Century Healthcare and Hayes Lemmerz International, among other entities. In this capacity, I have experience collecting receivables, resolving contracts and leases, managing the termination of 401(k) plans,

liquidating assets and entities, prosecuting preference actions, resolving claims and distributing assets to creditors.

5. I have been licensed as an attorney in Illinois since 1985.

6. I will assist and advise the Debtors with respect to managing the Debtors' reorganization and/or sale of all or substantially all of their assets under chapter 11 of the Bankruptcy Code. In this regard, I will be employed and retained on as Principal Officer of the Debtors. I will provide restructuring services as requested by the Debtors and described in the engagement letter dated as of December 7, 2009 attached to the Motion as Exhibit C (the "Engagement Letter"), including but not limited to, the following: (a) directing and overseeing the winding up of the businesses of the Debtors, and reviewing and guiding their interaction with other Nortel entities and businesses, (b) supporting and defending the interests of the Debtors' estates and their creditors, (c) receiving periodic reports from operational management on the provision of transition services and the winding down of the Nortel businesses, (d) working with all constituents to develop and implement plans to monetize remaining assets, plans to wind down Nortel businesses, or plans of liquidation or reorganization, (e) interacting and consulting as appropriate with Nortel employees, the Monitor, the Joint Administrators, the Committee, the Bondholders' Group and each of their various retained advisors, (f) meeting with and providing periodic reports to the Board of Directors of NNI, the Committee, the steering committee of the Bondholders' group and, to the extent necessary, the Bankruptcy Court, which with respect to the Committee and the steering committee of the Bondholders' group, shall include, if requested, one in-person meeting approximately every 60 days from and after December 7, 2009, and (g) providing such other services as may be mutually agreed upon, provided however, that such services shall not include day-to-day operational management of the Debtors' businesses.

3

7. To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with these cases, neither I nor Avidity have any connection with the Debtors, their creditors, the United States Trustee or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants, except as set forth herein.

8. Neither Avidity nor I have been employed by any entity other than the Debtors in matters related to these chapter 11 cases.

9. From time to time Avidity may provide services, and likely will continue to provide services to entities or trusts in which certain creditors of the Debtors and various other parties adverse to the Debtors may also be creditors in such entities or trusts unrelated to these chapter 11 cases. However, neither I nor Avidity represents such creditors individually and in many circumstances the identity of such creditors is not known to Avidity or to myself. As described below, however, Avidity is undertaking a detailed search to determine and to disclose whether Avidity is providing or has provided services to any significant creditors, equity security holders, insiders, or other parties in interest in such unrelated matters.

10. I may provide services in connection with cases, proceedings and transactions unrelated to these chapter 11 cases. These unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in these cases, or some of which may represent such parties.

11. Avidity and I have undertaken a review of our clients and other parties in interest with respect to prior and current engagements. Avidity and I have, or will, run conflicts reports on the following parties:

    a. the Debtors;

4

b. directors or officers of one or more of the Debtors;

c. significant shareholders of one or more of the Debtors;

d. trade creditors of one or more of the Debtors;

e. landlords of one or more of the Debtors;

f. banks holding Debtors' accounts;

g. vendors of utilities (electricity, gas, water, sewer, and telephone services) for one or more of the Debtors;

h. parties filing UCC statements against the Debtors;

i. insurance vendors for one or more of the Debtors;

j. Debtors' professionals';

k. lenders under a revolving credit facility;

l. employees asserting claims; taxing authorities; and

m. additional parties identified by the Debtors.

Avidity and I understand that compilation of a list of interested parties is on-going, and that additional interested parties may be identified from time to time.

12. I provide advisory and crisis management services in many areas, including restructuring. As a result, Avidity and I have represented and may in the future represent certain parties in matters unrelated to these chapter 11 cases, either individually or as a part of representation of a committee of creditors or interest holders.

13. Despite the efforts described above to identify and disclose the connections that Avidity and I have with parties in interest in these cases, because the Debtors are a large enterprise with numerous creditors and other relationships, I am unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if I

discover additional information that requires disclosure, I will file a supplemental disclosure with the Court.

14. Upon information and belief, as a result of my review thus far of the information described above, I am unaware of any client relationships with any of the interested parties, provided that, as stated above, other professionals who provide services to the Debtors or other parties in interest may have been or may now be retained to provide services to matters in which Avidity or myself are involved unrelated to these cases.

15. Avidity and I submit that neither of us hold an adverse interest as to the matters for which I have been employed.

16. Avidity and I reserve the right to supplement this Declaration in the event that we discover any facts bearing on matters described in this Declaration regarding my employment.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK.]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 7, 2009

_____
John Ray
Senior Managing Director
Avidity Partners, LLC

[New York #2147591 v1]