## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
----------------------------------------------------X
                                                    :
In re                                               :     Chapter 11
                                                    :
Nortel Networks Inc., et al.,¹                      :     Case No. 09-10138 (KG)
                                                    :
                          Debtors.                  :     Jointly Administered
                                                    :
                                                    :     Hearing date:  December 15, 2009 at 10:00 AM (ET)
                                                    :     [PROPOSED]
                                                    :     Objections due: December 14, 2009 at 12:00 PM (ET)
                                                    :     [PROPOSED]
----------------------------------------------------X
```

## DEBTORS' MOTION FOR AN ORDER APPROVING
## THE COMPROMISE OF A CONTROVERSY BY AND AMONG (I) THE DEBTORS
## AND (II) THE CHAPTER 7 TRUSTEE OF NETTEL CORPORATION, INC

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise a controversy between: (i) NNI, in its capacity as administrative agent ("Agent") for NNI, Allied Capital Corporation ("Allied") and Williams Communications, Inc. ("Williams"), secured lenders (collectively, the "Lenders" or the "Secured Lenders") of NETtel Corporation, Inc. and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. f/k/a Alteon WebSystems, Inc. (9769), Nortel Altsystems International, Inc. f/k/a Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546 Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

its corporate parent, NETtel Communications, Inc. and (ii) the Chapter 7 Trustee of the estates of NETtel Corporation Inc.("NETtel") and its corporate parent, NETtel Communications, Inc. (the "NETtel Parent") (together with NNI as Agent, the "Parties") as more fully described below and as set forth in the agreed terms of the Stipulation of Compromise of Controversy (the "Stipulation"), attached hereto as Exhibit B; and granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

### Background

**B.**     **Introduction**

3.       On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.       The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrator").

6.    On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only.

7.    On January 26, 2009, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section

---

[2]    The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

1102(a)(1) of the Bankruptcy Code (D.I.s 141, 142).  No trustee or examiner has been appointed in the Debtors' cases.

**B.      Debtors' Corporate Structure and Business**

8.      A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications (the "First Day Declaration").

<u>**Relief Requested**</u>

9.      By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019:  (a) authorizing the compromise of controversy between NNI as Agent and the Chapter 7 Trustee of the NETtel and the NETtel Parent estates, and (b) granting related relief.

<u>**Facts Relevant to this Motion**</u>

**A.      Background of Current Dispute between the Parties**

10.      NNI and the Lenders provided loans to NETtel in furtherance of the construction of a telephone network.  Ultimately, this venture was unsuccessful.  NETtel commenced a chapter 11 Case on September 28, 2000 (the "NETtel Petition Date") in the United States Bankruptcy Court for the District of Columbia (the "DC Court"). NETtel operated as debtor-in-possession for 25 days.  On October 23, 2000, NETtel's chapter 11 case was converted to chapter 7 (the "NETtel Conversion Date," and the period between the NETtel Petition and Conversion Dates, the "NETtel Ch. 11 Period").  On October 24, 2000, Wendell W. Webster, Esq. ( the "NETtel Trustee") was appointed as Ch. 7 Trustee of the NETtel bankruptcy estate) as well as the NETtel Parent's bankruptcy estate (together, the "Ch. 7 Estates").

11.      NNI, as Agent, and on behalf of the Lenders, timely asserted secured claims against the Ch. 7 Estates in an aggregate amount in excess of $92 Million, arising from loans to

4

NETtel and the NETtel Parent during the period July 1999 through August 2000.[4] As collateral

for these loans, NETtel and the NETtel Parent had granted NNI, as Agent, a first priority lien on,

and security interest in, their pre-petition assets, including:

    a.    All Capital Stock of each of the subsidiaries of the NETtel Parent;

    b.    All Property of NETtel, as more particularly defined in the Security Documents, including without limitation:  accounts; chattel paper; instruments; general intangibles; documents; contract rights; equipment; inventory; intellectual property; licenses; investment property; Deposit Accounts; customer deposits; brokerage accounts; Pledged Shares; indebtedness owed to NETtel; real property; other goods and personal property of any kind or character, whether tangible or intangible; and

    c.    All cash and non-cash proceeds and products of any and all of the foregoing

    12.    On October 18, 2000, the DC Court approved and entered an Interim Agreement and Consent Order Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection ("Interim Order").  Pursuant to the Interim Order, NETtel was permitted to use the Cash and Cash Collateral of NNI as Agent, to satisfy certain of its post-petition chapter 11 expenses; in exchange, NNI as Agent was granted a valid, perfected, first priority lien on, and security interest in, NETtel's assets and proceeds of those assets, regardless of whether the assets were acquired before or after the NETtel Petition Date.  The Interim Order also granted NNI as Agent a replacement lien on proceeds related to certain preference actions (the "Preference Action Proceeds") to the extent that NNI as Agent held valid, perfected, first priority liens on, and security interests in, the Collateral or Cash Collateral that was used by NETtel during the Ch. 11 Period, when such usage was not fully replaced with post-petition assets of equal value.

---

[4]    NNI also asserted general unsecured claims against the Ch. 7 Estates arising from the pre-NETtel Petition Date delivery of equipment to NETtel.

13.    On November 17, 2005, NNI, as Agent, filed a complaint in the DC Court seeking a judgment determining and declaring the extent of its lien on the Preference Action Proceeds. On January 9, 2006, the NETtel Trustee filed an answer.  In accordance with the then applicable Scheduling Order, NNI, as Agent, filed a Motion for Partial Summary Judgment; the NETtel Trustee filed an Opposition; NNI, as Agent, filed a Reply; and the NETtel Trustee filed a Supplemental Opposition.  In April 2008, the DC Court issued a Memorandum and Order denying the Motion for Partial Summary Judgment without prejudice.

14.    Following a status hearing, the DC Court re-opened discovery (i) to allow NNI, as Agent, to attempt to determine the source of deposits to a certain Lockbox Account during the Ch. 11 Period; and (ii) to allow NNI as Agent to attempt to determine the source of NETtel's deposit accounts' balances as of the NETtel Petition Date.  Thereafter, the DC Court entered Amended Scheduling Orders.  In accordance with these Orders, NNI, as Agent, conducted discovery, served supplemental discovery responses, disclosed its expert, and filed its Renewed Motion for Summary Judgment, in which it sought judgment declaring and determining that a replacement lien on the Preference Action Proceeds be granted to NNI as Agent for the Secured Lenders in the amount of $4.2 Million, and authorizing and directing disbursement of the then remaining amount of the Preference Action Proceeds to NNI as Agent.

15.    Additionally, on August 5, 2009, NNI as Agent filed an Application for Allowance of Administrative Expenses (the "Application") pursuant to, *inter alia*, Section 507(a)(1) and (d) of the Bankruptcy Code (as applicable to the Debtor's Ch. 11 and Ch. 7 Cases), the DC Court's Orders dated December 11, 2001 and April 10, 2003 (as amended by Order entered on June 9, 2005) (the "Compensation Orders") and principles of subrogation, seeking the allowance and payment of the following:  (a) in excess of $1.6 Million paid from Collateral of NNI, as Agent, previously held by the NETtel Trustee in accordance with terms of the

Compensation Orders, which required the NETtel Trustee to support the request of NNI, as Agent, for full subrogation; (b) in excess of $4.1 Million disbursed by the NETtel Trustee from Collateral under the November 13, 2000 Order; and (c) in excess of $1.7 Million disbursed by the NETtel Trustee from Collateral in satisfaction of certain allowed Ch. 7 administrative expenses.

16.    At present, NNI is informed that the remaining property of the Ch. 7 Estates consists of cash of approximately $4,200,000, held in several NETtel Trustee accounts, including:    (a) "Preference Escrow:" approximately $3,728,000; (b) "Employee Trust:" approximately $60,000; and (c) approximately $412,000, including the proceeds of sales of equipment and other liquidated assets (collectively, "Proceeds"). In addition, the NETtel Trustee is pursuing recovery of approximately $193,000 in principal and interest in *Webster v. Scott & Reid General Contracting, Inc.*, Adversary Proceeding No. 02-10118 (the "Remaining Adversary Proceeding").

C.    **The Proposed Settlement and Stipulation**

17.    The Parties have engaged in extended, arms length, good faith negotiations to discuss the resolution and settlement of these issues, particularly in light of each Party's bankruptcy status. These negotiations intensified during 2009, and the Scheduling Order in the Adversary Proceeding has been modified from time to time to permit such negotiations to continue without the necessity for the parties to incur further costs and expenses of litigation. As a result of these negotiations, the Parties have proposed to resolve their dispute pursuant to the agreed terms set forth in the Stipulation, and the Joint Motion of Chapter 7 Trustee and Agent Pursuant to, Inter Alia, Sections 105 350, 363, 704, 725 and 726 of the Bankruptcy Code, and Bankruptcy Rules 2002 (a)(2), (3), (6), 3012 and 9019(b), for an Order Approving Compromise of Controversies with Respect to (i) Trustee's Recovery, under Section 506(c) of the Bankruptcy

7

Code, from Certain Property in which Agent has an Interest, (ii) Trustee's Disposition, under

Section 725 of the Bankruptcy Code, of Property in which Agent has an Interest, Before, and in

Aid, of Trustee's Final Distribution, and (iii) Trustee's Distributions in Payment of Certain

Chapter 7 Administrative Expenses under Section 726(a) and (b) of the Bankruptcy Code ("Joint

Motion") attached hereto and incorporated herein as <u>Exhibit B</u> which were filed with the DC

Court on November 4, 2009, and which include the following salient components:[5]

> (a) In full satisfaction of all of claims of NNI, as Agent, against the Ch. 7 Estates, the Parties have agreed for purposes of settlement: (i) to recognize a valid, perfected, first priority lien on all current balances in the Preference Escrow and the Proceeds, free and clear of any interest of any entity other than NNI, as Agent; (ii) to distribute to NNI, as Agent, the aggregate amount of $2.9 Million ($2,500,000 from the Preference Escrow and $400,000.00 from the remaining Proceeds); and (iii) to release any and all claims the NETtel Trustee or the Ch. 7 Estates have, or may have, against NNI and/or the Secured Lenders, including any claim to surcharge the Collateral of NNI, as Agent, except as provided in subparagraph (b), below.

> (b) In exchange, NNI, as Agent, has agreed for purposes of settlement: (i) to release to the NETtel Trustee its lien on the current balance in the Preference Escrow in excess of $2.5 Million (the "Released Preference Balance"); (ii) to release to the NETtel Trustee any lien or other interest it may have in the current balance in Proceeds held by the NETtel Trustee in excess of $400,000; (iii) to release to the NETtel Trustee any lien or other interest it may have in the Remaining Adversary Proceeding and/or any proceeds thereof; (iv) to waive the Administrative Expense, as well its Ch. 11 administrative expenses, if any, and general unsecured claims against the Ch. 7 Estates and all claims, if any, against the NETtel Trustee; (v) to recognize, and support the NETtel Trustee's judgments and conclusions (A) that each of the Ch. 7 Expenses is a reasonable, necessary cost and expense of preserving or disposing of the Collateral which benefited the Secured Lenders' Collateral; (B) that the NETtel Trustee is entitled to recover all of such Ch. 7 Expenses from the Released Preference Balance as a surcharge under 11 U.S.C. § 506(c); (C) that the NETtel Trustee is entitled to disburse such Ch. 7 Expense payments from the Released Preference Balance as the proceeds of the surcharge under 11 U.S.C. § 506(c); and (D) that the remainder of the Released Preference Balance, the proceeds, if any, of the Remaining

---

[5]    This overview is merely intended to provide a general summary of the Stipulation. To the extent that it conflicts with the Stipulation, the Stipulation shall control.

Adversary Proceeding and any remaining Proceeds may be utilized by the NETtel Trustee, subject to approval of the DC Court, in the NETtel Trustee's sole discretion to make a final distribution and file a final report in each of the above-captioned Ch. 7 Cases; and

(c) The NETtel Trustee (and the Ch. 7 Estates) and NNI will exchange mutual releases with respect to all claims, except as otherwise provided in the Stipulation (Exhibit B).

18.     In connection with the hearing to approve the Stipulation before the DC Court, the Parties agreed to modify the Stipulation by reducing the Gross Settlement Amount (as defined below) by $125,000 in connection with the resolution of an objection filed by Hartford Fire Insurance Company.  A copy of the revised stipulation is included as Exhibit C.  A copy of the Order approving the revised stipulation is included as Exhibit D.

## Basis for Relief

19.     The Debtors seek an order granting the relief sought in this Motion pursuant to section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. §105(a).

20.     Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004).

21.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)); see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); Coram, 315 B.R. at 330; Official Unsecured Creditors' Comm. of Pa. Truck Lines v. Pa. Truck Lines, Inc., 150 B.R. 595, 598 (E.D. Pa. 1992).  The court need not be convinced that the settlement is the best possible compromise in order to approve it. Coram, 315 B.R. at 330.

22.     In determining whether a settlement proposal is within the range of reasonableness the Third Circuit has set out four criteria that a bankruptcy court should consider including:  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393; see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).  The ultimate inquiry is whether the compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

23.    Applying the above factors to the instant matter, the Debtors submit that the settlement set forth in the Stipulation is in the best interests of the Debtors' estates and their creditors.  Under the agreement, NNI, as Agent for the Secured Lenders, will receive $2,775,000 (the "Gross Settlement Amount").  NNI, as Agent, intends to allocate the Gross Settlement Amount among the Secured Lenders as set forth in Exhibit E which is attached hereto and incorporated herein, and will result in value for the Debtors' estates of approximately $1,817,760.  Absent such a settlement, NNI, as Agent, would have to continue to pursue a claim in the DC Court for recognition of its priority status.

24.    While the Debtors are prepared to litigate the dispute, such litigation would add expense and there is no assurance it would achieve a better result for NNI, as Agent, and as one of the Secured Lenders, than the one achieved under the Stipulation, particularly in light of NETtel's chapter 7 debtor status.  The anticipated costs to NNI, as Agent, and as one of the Secured Lenders, in pursuing a claim are high in light of the limited additional upside (if any) that could be gained from pursuing the claim compared to the Stipulation.  Moreover, litigation to pursue the issues otherwise resolved by the Stipulation would result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

25.    Given the hard fought nature of this settlement, with negotiations ongoing up until this motion was filed, the NETtel Trustee has informed NNI that time is of the essence in approving this settlement.  The NETtel Trustee, NNI, as Agent, and other creditors have worked tirelessly over the past several months to reach an acceptable compromise regarding the issues settled by this agreement.

26.    Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Stipulation.  The Debtors believe that the interests of its creditors

11

are supported by the prompt and efficient resolution of this claim, particularly due to NETtel's Chapter 7 debtor status, and the minimization of administrative claims and expenses.

27.     In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Stipulation is preferable to further litigation with the NETtel Trustee. The proposed Stipulation and proposed order reflect a valuable resolution in light of the value being given, the contingencies of success in litigation and the costs and delays attendant thereto and is well within the range of reasonableness when considering the potential outcomes associated with litigating the claim.     For these reasons, the Debtors assert that the Stipulation should be approved as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

28.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) the Bondholders; (iv) NETtel Trustee; (v) the general service list established in these Chapter 11 cases; (vi) counsel for the Lenders; and (vii) counsel for The Hartford Insurance Company.   The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other court, except for the United States Bankruptcy Court for the District of Columbia in accordance with the terms of the Stipulation and proposed order.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: December 8, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*