**EXHIBIT B**

## UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF COLUMBIA

*In re*

NETtel COMMUNICATIONS, INC., and
NETtel CORPORATION,

               Debtors.

Case No. 00-1771 (Chapter 7)

Jointly Administered

---

**JOINT MOTION OF CHAPTER 7 TRUSTEE AND AGENT PURSUANT TO, *INTER ALIA*, SECTIONS 105, 350, 363, 704, 725 AND 726 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 (a)(2), (3), (6), 3012 AND 9019(b), FOR AN ORDER APPROVING COMPROMISE OF CONTROVERSIES WITH RESPECT TO (I) TRUSTEE'S RECOVERY, UNDER SECTION 506(c) OF THE BANKRUPTCY CODE, FROM CERTAIN PROPERTY IN WHICH AGENT HAS AN INTEREST, (II) TRUSTEE'S DISPOSITION, UNDER SECTION 725 OF THE BANKRUPTCY CODE, OF PROPERTY IN WHICH AGENT HAS AN INTEREST, BEFORE, AND IN AID, OF TRUSTEE'S FINAL DISTRIBUTION, AND (III) TRUSTEE'S DISTRIBUTIONS IN PAYMENT OF CERTAIN CHAPTER 7 ADMINISTRATIVE EXPENSES UNDER SECTION 726(a) AND (b) OF THE BANKRUPTCY CODE**

Wendell W. Webster, Trustee ("Trustee")[1] in the case under Chapter 7 of Title 11 of the

United States Code (the "Bankruptcy Code") of the Debtor, NETtel Corporation, Inc. ("Debtor"

or "NETtel") (as well as the Trustee in the case under Chapter 7 of the Bankruptcy Code of the

Debtor, NETtel Communications, Inc. ("the NETtel Parent")) and Nortel Networks Inc.

("Nortel"), in its capacity as administrative agent ("Agent" or "Plaintiff") for Nortel, Allied

Capital Corporation ("Allied") and Williams Communications, Inc. ("Williams"), secured

lenders of the Debtor (collectively, the "Lenders" or the "Secured Lenders"), hereby move this

Court for entry of a Stipulation and Order, substantially in the form attached hereto as Exhibit A,

and pursuant to, among other things, Sections 105(a), 350, 363(b), 704, 725 and 726 of the

Bankruptcy Code and Rules 2002(a)(2), (3), (6), 3012 and 9019 of the Federal Rules of

---

[1] Unless defined otherwise herein, capitalized terms shall have the meanings ascribed in Agent's Renewed Motion for Summary Judgment (Adversary Proceeding No. 05-10077 DE # 66) (the "Renewed Motion").

Bankruptcy Procedure ("Bankruptcy Rules"), authorizing the Trustee to compromise certain

controversies which have arisen between Agent and the Trustee as reflected in Adversary

Proceeding No. 05-10077 (the "Adversary Proceeding") and the contested matter initiated by

Agent's Notice of, and Application for, Allowance of Administrative Expenses and Request for

Payment (DE # 1121) (the "Application"), each of which is currently pending before the Court,

as more fully described below, and granting the Trustee and Agent such other and further relief

as the Court deems just and proper. The resolution of these controversies will enable the Trustee

to make distributions in payment of certain Ch. 7 administrative expenses (under Sections 726(a)

and (b) of the Bankruptcy Code), to recover from certain property in which Agent has an interest

(i.e., a lien) (under Section 506(c) of the Bankruptcy Code), to dispose of the remainder of such

property before a final distribution by the Trustee (under Section 725 of the Bankruptcy Code),

and to thereby facilitate and expedite such a final distribution and the filing of final reports

(under Section 704(a)(9) of the Bankruptcy Code) in these long standing Ch. 7 Cases. In support

of this Motion, the Trustee and Nortel respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and Bankruptcy Rule bases for the relief requested herein are, *inter

alia*, Sections 105, 350, 363(b), 704, 725 and 726 of the Bankruptcy Code and Bankruptcy Rules

2002 (a)(2), (3), (6), 3012 and 9019.

## BACKGROUND

3.      NETtel commenced its Ch. 11 Case at approximately 11:56 p.m. on Thursday,

September 28, 2000 (the "Petition Date"). The Debtor operated as debtor-in-possession for 25

days. On October 23, 2000, the Ch. 11 Case was converted to Ch. 7 (the "Conversion Date," and

the period between the Petition and Conversion Dates, the "Ch. 11 Period"). On October 24,

Wendell W. Webster, Esq. was appointed as Ch. 7 Trustee of the Debtor's bankruptcy estate as

well as the NETtel Parent's bankruptcy estate (together, the "Ch. 7 Estates").

4.      Lenders have asserted claims against the Ch. 7 Estates in an aggregate amount, as

of the Petition Date, of more than $92 Million. Pursuant to a Credit Agreement (dated July 28,

1999) and a Pledge and Security Agreement (dated July 28, 1999), the Debtor had granted the

Lenders a first priority lien on, and security interest in, the Debtor's pre-Petition assets,

including:

> a.      All Capital Stock of each of the subsidiaries of the Debtor;
>
> b.      All Property of the Debtor, as more particularly defined in the Security Documents, including without limitation: accounts; chattel paper; instruments; general intangibles; documents; contract rights; equipment; inventory; intellectual property; licenses; investment property; Deposit Accounts; customer deposits; brokerage accounts; Pledged Shares; indebtedness owed to Debtor; real property; other goods and personal property of any kind or character, whether tangible or intangible; and
>
> c.      All cash and non-cash proceeds and products of any and all of the foregoing.

UCC financing statements were timely filed with respect to the Lenders' first priority lien on,

and security interest in, these assets.

5.      In addition, on or about March 27, 2000, NETtel, Agent and Bank of America,

N.A. ("BOA") entered into a Deposit Bank Acknowledgment dated as of March 27, 2000 (the

"BOA Acknowledgment") with respect to NETtel's Lockbox Deposit Account No. 1914234110

(the "Lockbox Account") and Disbursement Account No. 1914191554 (together, the "BOA

Accounts").

6.      On or about March 27, 2000, NETtel, Agent and First Union National Bank

("FUNA") entered into a Deposit Bank Acknowledgment dated as of March 27, 2000 (the

"FUNA Acknowledgment") with respect to NETtel's Operating Disbursement Account No.

4310799667, Payroll Disbursement Account No. 9980568139, and Money Market Account No.

10100004697903 (collectively, the "FUNA Accounts," and together with the BOA Accounts, the

"Deposit Accounts").

7.      The BOA Acknowledgment and the FUNA Acknowledgment each provided, in

part, as follows:

> "Section 1.01. Acknowledgment of Security Interest:
> Wavier of Setoff. The Borrower and the Depository Bank hereby
> agree and acknowledge that Borrower has granted to
> Administrative Agent, for the benefit of the Lender a valid first
> priority security interest in the Bank Accounts and all instrument,
> monies, investment property and general intangibles relating
> thereto or held therein (the "Security Interest") to secure the
> payment and performance of the Obligations. The Borrower
> agrees that it will not permit the Bank Accounts to become subject
> to any other pledge, assignment, security interest, lien, charge or
> encumbrance of any kind, nature or description, other than the
> Security Interest and collateral assignment referred to herein and
> except for the Permitted Liens under the Credit Agreement which
> are permitted to attach to the Bank Accounts."

8.      On October 18, 2000, the Court entered an Interim Agreement and Consent Order

Authorizing Debtor to Use Cash Collateral and Granting Adequate Protection ("Interim Order").

Pursuant to the Interim Order, the Debtor was permitted to use the Lenders' Cash and Cash

Collateral to satisfy its post-Petition Ch. 11 expenses; in exchange, the Lenders were granted a

valid, perfected, first priority lien on, and security interest in, the Debtor's assets and proceeds of

those assets, regardless of whether the assets were acquired before or after the Petition Date. The

Interim Order also granted the Lenders a replacement lien on the Preference Action Proceeds to

the extent that the Lenders held valid, perfected, first priority liens on, and security interests in,

the Collateral or Cash Collateral that was used by the Debtor during the Ch. 11 Period, when such usage was not fully replaced with post-Petition assets of equal value. The Interim Order is binding on the Trustee.

9.      Effective November 3, 2000, the Trustee was authorized to operate the Debtor's business as a going concern under Ch. 7 of the Bankruptcy Code.

10.     On November 17, 2005, Agent commenced the Adversary Proceeding by filing a complaint seeking a judgment determining and declaring the extent of the Lenders' lien on the Preference Action Proceeds. On January 9, 2006, the Trustee filed an answer. In accordance with the then applicable Scheduling Order, Agent filed its Prior Motion; the Trustee filed an Opposition; Agent filed a Reply; and the Trustee filed a Supplemental Opposition.

11.     In opposition to the Prior Motion, the Trustee asserted that: (a) because the Debtor had operated during the Ch. 11 Period, some deposits to the Lockbox Account during that Period were attributable to collections of the Debtor's ARs generated by Ch. 11 Period sales; and (b) excerpts from the 4th and 5th Amendments[2] appeared to suggest that in July/August 2000, the Lenders made $19 Million in equity infusions (i.e., acquired shares of Series D Preferred Stock in exchange for $19 Million cash).

12.     The Trustee also raised questions of law regarding (1) the Lenders' burden, if any, of proving that they had "valid and perfected pre-petition liens and security interests" in the collateral and cash collateral in which they asserted an interest and (2) the necessity, if any, to trace or segregate funds to distinguish pre-petition assets from postpetition assets, in order to determine the extent to which "the Debtor's use of Lenders' Collateral or Cash Collateral [was]

---

[2] The Fourth Amendment to (July 28, 1999) Credit Agreement dated July 17, 2000 (the "4[th] Amendment"); the Fifth Amendment to (July 28, 1999) Credit Agreement dated August 3, 2000 (the "5[th] Amendment").

not fully replaced with postpetition assets of equal value."

13.     Subsequently, the Court filed its Memorandum. Following a status hearing, the Court re-opened discovery (i) to allow Plaintiff to attempt to determine the source of deposits to the Lockbox Account during the Ch. 11 Period; and (ii) to allow Plaintiff to attempt to determine the source of the Deposit Accounts' Balance as of the Petition Date. Thereafter, the Court entered Amended Scheduling Orders. In accordance with these Orders, Plaintiff conducted discovery, served supplemental discovery responses, disclosed its expert and his expert report, and filed its Renewed Motion, in which Plaintiff sought judgment declaring and determining that a replacement lien on the Preference Action Proceeds be granted to the Lenders in the amount of $4.2 Million, and authorizing and directing disbursement of the then remaining amount of the Preference Action Proceeds to the Agent.

14.     In its Renewed Motion, Plaintiff asserted that there is no dispute that the Debtor did not receive any funds from loans, equity infusions, asset sales, or other outside sources during the Ch. 11 Period, and that the Lenders had a Perfected Security Interest in the Debtor's pre-Petition ARs.

15.     In support of the Renewed Motion, Plaintiff presented the Declaration of Bernard A. Katz (the "Katz Declaration"), a partner in the accounting and consulting firm J.H. Cohn LLP regarding the source of the cash in the NETtel bank accounts as of the Petition Date and regarding whether the cash collections during the Chapter 11 Period were proceeds of pre-petition or post-petition accounts receivable. According to the Katz Declaration: (i) as of the Petition Date, the Deposit Accounts' aggregate balance (the "Deposit Accounts' Balance") was $1,973,344.26 Million; (ii) during the Ch. 11 Period, the Deposit Accounts' Balance increased by $2,237,713.90 as a result of deposits to the Lockbox Account; (iii) during the same period, the

Debtor paid out at least $2,593,572.83 from the Deposit Accounts; (iv) as of the Conversion

Date, the Deposit Accounts' Balance totaled $1,617,485.33; (v) as of Saturday, September 30,

2000, one business day after the Petition Date, the Debtor's pre-Petition AR balance (the

"9/30/00 AR Balance") was approximately $6.1 Million; (vi) as of October 31, 2000, the

Debtor's pre-Petition AR balance (the "10/31/00 AR Balance") was approximately $2.4 Million;

(vii) the difference between the 9/30/00 and 10/31/00 AR Balances was approximately $3.7

Million; and (viii) the revenues collected during the Ch. 11 Period consisting of cash was

$3,771,841.60. It was noted that Mr. Daniel M. Jones, the Debtor's former Vice President of

Direct Sales (both pre-Petition and during the Ch. 11 Period), appeared as the Trustee's witness

at a November 9, 2000 hearing before this Court. Mr. Jones had been called by the Trustee to

testify in support of the "Emergency Motion by Trustee Wendell W. Webster for Authority to

Operate Debtor's Business." Mr. Jones testified that, among other things that (i) all of the

Debtors' cash on hand as of October 27, 2000, was received by the Debtor on account of pre-

Petition sales; (ii) the Debtor typically invoiced its customers by mail on a semi-monthly basis

for sales during the preceding thirty days (e.g., invoices mailed to customers within three to four

days after September 15 would have a closing date of September 15 and would seek payment for

sales from August 16 - September 15; invoices mailed to customers within three to four days

after September 30 would have a closing date of September 30 and would seek payment for sales

from September 1 - September 30); and (iii) as of November 9, 2000, the Debtor had not

processed any October 1, or October 15, 2000 invoices. Accordingly, Plaintiff maintains that

there is no dispute that all deposits to the Lockbox Account during the Ch. 11 Period, were

attributable to collections on account of the Debtors' pre-Petition ARs. As such, these deposits

were (i) proceeds of the Lenders' pre-Petition AR Collateral; and (ii) therefore remained, post-

Petition, subject to the Lenders' pre-Petition, Perfected Security Interests.

16.   With regard to the Trustee's assertion that the 4th and 5th Amendments appeared to suggest that the Lenders made equity infusions in July/August 2000, it was noted that the 4th and 5th Amendments described conversion privileges that were not exercised.  For example, Recital B of the 4th Amendment provides as follows:

> The Borrower has requested that Nortel Networks Inc. and Allied Capital Corporation provide an additional $13,930,000 advancing term loan facility to the Borrower, which term loan facility may, at the option of the Lenders providing such facility, be converted in whole or in part to Series D Convertible Preferred Stock of Holdings, and, in connection therewith, the parties hereto desire to reduce the Term Loans A Commitments by $15,000,000 and to further amend the Credit Agreement in certain other respects upon the terms and conditions contained herein.

Consistent with this Recital, Section 2.23 of the 4th Amendment added a new subsection (h) to Section 2.1 of the Credit Agreement.  The new subsection (h) was entitled "(h) Optional Conversion of Term Loans C," and provided, in relevant part, as follows:

> "(h)   Optional   Conversion   of   Term   Loans   C. Notwithstanding anything to the contrary contained in this Agreement, the outstanding principal amount of the Term Loans C may be converted to shares of Series D Preferred Convertible Stock of Holdings (the "Series D Stock") in accordance with the terms and provisions of this Section 2.1(h):
>
> (i) Conversion Privilege:  The outstanding principal amount of the Term Loans C may, at the election of the Term Loans C Lender which holds such Term Loans C, be converted, in whole or in part and at any time and from time to time, into the number of shares of the Series D Stock equal to the quotient of (A) the principal amount of the Term Loans C then being converted

divided by (b) the conversion prices of $8.81 (the "<u>Conversion Price</u>");"[3]

Consistent with each of the foregoing, Recitals A and B of the 5th Amendment provide, in relevant part, as follows:

> ". . . and (iv) a $13,930,000 term loan facility to finance certain of the Borrower's working capital needs and for general corporate purposes, which term loan facility may, at the option of the Lenders providing such facility, be converted in whole or in part to Series D Convertible Preferred Stock of Holdings (the "<u>Term Loan C Facility</u>").

> B.    The Borrower has requested that Williams provide an additional $4,975,000 advance to the Borrower under the Term Loan C Facility, and, in connection therewith the parties hereto desire to further amend the Credit Agreement in certain other respects upon the terms and conditions contained herein."

Plaintiff maintained that the plain language of the 4th and 5th Amendments provides only for a privilege (not an obligation or requirement), exercisable only by the Lenders at their option/election and in accordance with certain procedures, to convert all or part of the Term Loans C ($18,905,000) to Series D Convertible Preferred Stock of NETtel Parent ("Series D Preferred Stock"). This language neither mandated nor memorialized the exercise of such "Conversion Privilege" by any of the Lenders.

17.    During July 2000, and in accordance with the 4th Amendment, Nortel loaned NETtel $9.95 Million and Allied loaned NETtel $3.98 Million. Plaintiff maintained that at no time did Nortel or Allied acquire any Series D Preferred Stock by exercising the 4th Amendment

---

[3] The pertinent terms and provisions which governed any exercise of the "<u>Conversion Privilege</u>" are set forth in the following subparagraphs of New Subsection (h) added by the 4th Amendment and entitled:

    (ii)    <u>Manner of Conversion, Partial Conversion, Etc.</u>
    (iii)    <u>Delivery of Stock Certificates, Fractional Shares</u>
    (iv)    <u>Reservation of Series D Stock</u>.
    (v)    <u>Investor Rights Agreement and Registration Rights Agreement</u>.

conversion privilege.  In July 2000, Nortel invested $50,000 (cash), and Allied $20,000 (cash), in

Series D Preferred Stock.  During August 2000, and in accordance with the 5th Amendment,

Williams loaned NETtel $4.975 Million.  Plaintiff further maintained that at no time did

Williams acquire any Series D Preferred Stock by exercising the 4th and 5th Amendment

conversion privilege.  In August 2000, Williams invested $25,000 (cash) in Series D Preferred

Stock. The Lenders purchased no other stock or other equity interests in the Debtors during July

or August 2000.  All cash generated from equity investments and loans in July and August 2000

was consumed in NETtel's operations by August 31, 2000.  The Debtor's only source of funding

during September 2000 and through the Conversion Date was the collection of pre-Petition ARs,

and the collection of pre-Petition ARs was the source of the $1,973,344.26 Deposit Accounts'

Balance as of the Petition Date.

     18.    According to the Debtor's internal balance sheets and the Debtor's Statement of

Financial Affairs and Schedules of Assets and Liabilities, during the six-month period from

March 31, 2000 to September 28, 2000, the Debtor received approximately $70.2 Million,

including $27 Million from the sale of preferred stock in April 2000.[4]  From March 31, 2000 to

September 28, 2000, the Debtor spent $42 Million and suffered losses of $31.5 Million.  *Id.*  In

short, the Debtor spent $3.8 Million more than it received during the six-month period.  *Id.*  By

August 31, 2000, all cash generated from equity investments and loans had been consumed in the

Debtor's operations and the Debtor was living on pre-Petition AR collections, its only source of

funding.

---

[4] In April/May 2000, Nortel, Williams, Allied and Gold & Appel Transfer, S.A. ("G&A") invested in NETtel Parent
Preferred Stock (i.e., acquired preferred stock in exchange for cash) as follows:  Nortel - $5 million, Williams - $2
million, Allied - $3 million and G&A - $2 million.

19.     The $1,973,344.26 Deposit Accounts' Balance as of the Petition Date was comprised solely of collections on account of pre-Petition ARs. As such, the $1,973,344.26 constituted proceeds of the Debtor's pre-Petition ARs subject to the Lenders Perfected Security Interest.

20.     At present, the Trustee holds approximately $4,200,000.00, held in several Trustee accounts, including: (a) "Preference Escrow":  approximately $3,728,000; (b) "Employee Trust":  approximately $60,000.00; and (c) approximately $412,000, including the proceeds of sales of equipment and other liquidated assets (collectively, "Proceeds").  At present, the Trustee is pursuing the recovery of approximately $193,000.00 in principal and interest in *Webster v. Scott & Reid General Contracting, Inc.*, Adversary Proceeding No. 02-10118 (the "Remaining Adversary Proceeding").

21.     In addition to the Renewed Motion filed in the Adversary Proceeding, on August 5, 2009, Agent filed its Application for Allowance of Administrative Expenses (the "Application"). (DE #1121).  The Application seeks, under among other things, Section 507(a)(1) and (d) of the Bankruptcy Code (in the text applicable to the Debtor's Ch. 11 and Ch. 7 Cases), this Court's Orders dated December 11, 2001 and April 10, 2003 (as amended by Order entered on June 9, 2005) (the "Compensation Orders") and principles of subrogation, the allowance and payment of the following:  (a) in excess of $1.6 Million paid from the Lenders' Collateral previously held by the Trustee in accordance with terms of the Compensation Orders, which terms require the Trustee to support Agent's request for full subrogation; (b) in excess of $4.1 Million disbursed by the Trustee from the Lenders' Collateral under the November 13, 2000 Order; and (c) in excess of $1.7 Million disbursed by the Trustee from the Lenders' Collateral in satisfaction of certain allowed Ch. 7 administrative expenses.

22.    The following Ch. 7 administrative expenses, in the aggregate amount of

$511,608.06, have been allowed under Orders entered by this Court, but have not yet been paid:

(a) Williams: $338,352.00; (b) Vartec: $10,858.00; (c) Microtech: $22,744.00; (d) Tauber &

Associates/135 West 50 LLC: $26,618.06; (e) Cyberrep.com: $7,512.00; and Webster,

Fredrickson, Correia & Puth: $105,524.00. Additionally, the Trustee's counsel has submitted an

application for compensation and reimbursement of expenses in the amount of $158,314.50 and

the Trustee has submitted his Application for Trustee Compensation in the amount of

$288,447.74 (collectively, $958,370.30, the "Ch. 7 Expenses"). The Trustee believes: (a) that all

of the Ch. 7 Expenses were reasonable, necessary costs and expenses of preserving or disposing

of the Lenders' Collateral which benefited the Lenders; and (b) that, therefore, the Trustee is

entitled to recover all of such Ch. 7 Expenses from the Lenders' Collateral under Section 506(c)

of the Bankruptcy Code. For the avoidance of doubt, the Hartford Expense (as defined and

discussed in paragraphs 23 and 24 below) is not among these Ch. 7 Expenses.

23.    The proposed Stipulation and Order does not include a payment to The Hartford

Fire Insurance Company ("Hartford") for its allowed Chapter 7 administrative expense in the

amount of $863,170.00 (the "Hartford Expense")[5]. Hartford's allowed administrative claim

arose out of a Stipulation and Order entered into between Hartford and the Trustee on March 5,

2002, resolving the dispute between the parties as well as the objection filed by Nortel and Allied

Capital Corporation. (DE #760.) The Trustee had maintained that the claim arose prepetition at

the time of the debtor's default, however, Hartford asserted an administrative claim for the

postpetition period prior to rejection under 11 U.S.C. § 365(d)(3). By the 2002 Stipulation and

---

[5] On July 27, 2009, Hartford filed its Motion to Pay Allowed Administrative Expense Claim. (DE #1119.) Specifically, Hartford requested disbursement of the sum of $1,041,055.32 in full payment of its allowed Chapter 7 and Chapter 11 administrative expense claims. The Court denied the Motion. (See DE #1136.)

Order, the parties agreed to the amount and priority of Hartford's claim, under 11 U.S.C. §

503(b)(1). Hartford reserved its right to assert claims pursuant to 11 U.S.C. § 506(c), but has

failed to assert such a claim, despite the Trustee's invitations to do so.

24.    The Trustee has taken the following facts into consideration: (1) NETtel never

occupied the premises for which the Hartford payment was made pursuant to NETtel's lease with

West Group; (2) the expenditure did not have any connection with the generation of revenue for

the estate; and (3) Hartford has not presented any facts or argument to support a claim by the

Trustee that the expenditure benefited the Secured Lenders' collateral. Accordingly, the Trustee

has concluded: (a) that the Hartford Expense was not a reasonable, necessary cost and expense

of preserving or disposing of the Lenders' Collateral which benefited the Lenders' Collateral; and

(b) that, therefore, the Trustee is not entitled to recover any portion of the Hartford Expense from

the Lenders' Collateral. Agent concurs with the Trustee's conclusions as to the Hartford

Expense.

## THE NORTEL REORGANIZATION PROCEEDINGS

25.    On January 14, 2009, Nortel and fourteen (14) of its subsidiaries (collectively, the

"Nortel Debtors") filed petitions in the United States Bankruptcy Court for the District of

Delaware (the "Delaware Bankruptcy Court") seeking relief under Ch. 11 of the Bankruptcy

Code. The Nortel Debtors' Ch. 11 Cases have been assigned to United States Bankruptcy Judge

Kevin Gross. The Nortel Debtors' cases are being jointly administered for procedural purposes

(i.e., all pleadings are maintained on the case docket for Nortel Case No. 09-10138 (the "Main

Case Docket"). On January 14, 2009, the Nortel Debtors' ultimate corporate parent, Nortel

Networks Corporation ("NNC"), and Nortel's direct corporate parent, Nortel Networks Limited,

together with certain of their affiliates (collectively, the "Canadian Debtors") filed an application

with the Ontario Superior Court of Justice (Commercial List) under the Companies' Creditors

Arrangement Act (Canada), seeking relief from their creditors (collectively, the "Canadian

Proceedings"). The Canadian Court appointed Ernst & Young Inc. ("E&Y") to serve as Monitor

for the Canadian Proceedings. On January 14, 2009, E&Y, as foreign representative for the

Canadian Debtors, filed petitions for recognition of the Canadian Proceedings as foreign main

proceedings under Ch. 15 of the Bankruptcy Code. In addition, on January 14, 2009, the High

Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the

"U.K. Debtors") into administration under the control of individuals from Ernst & Young

(collectively, the "U.K. Proceedings").

      26.    On February 27, 2009, the Delaware Bankruptcy Court entered an order

recognizing the Canadian Proceedings as foreign main proceedings under Ch. 15 of the

Bankruptcy Code. In addition, on January 14, 2009, the High Court of Justice in England placed

nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors") into administration

under the control of individuals from Ernst & Young LLC (collectively, the "Joint

Administrators"). On May 28, 2009, at the request of the Administrators, the Commercial Court

of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA will continue to operate as a going concern for an initial period

of three months. In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK

Limited ("NNUK") filed petitions in the Delaware Bankruptcy Court for recognition of the

English Proceedings as foreign main proceedings under Ch. 15 of the Bankruptcy Code. On

June 26, 2009, the Delaware Bankruptcy Court entered an order recognizing the English

Proceedings as foreign main proceedings under Ch. 15 of the Bankruptcy Code.

27.    On July 14, 2009, Nortel Networks (CALA) Inc. ("NN CALA") filed a petition

with the Delaware Bankruptcy Court seeking relief under Ch. 11 of the Bankruptcy Code (Case

No. 09-12515). On July 15, the Delaware Bankruptcy Court entered an Order approving the

joint administration and consolidation of NN CALA's case with the Ch. 11 cases of Nortel and

its affiliated debtors (jointly administered under Case No. 09-10138), and the application to NN

CALA of certain previously entered orders in the Nortel Debtors' Ch. 11 cases. On June 19,

2009, the Nortel Debtors filed a motion with the Delaware Bankruptcy Court seeking authority

to enter into an asset sale agreement with Nokia Seimens Networks B.V. for the sale of

substantially all of its CDMA business and LTE Access assets (the "Sale Motion"). Following

an initial hearing on certain relief requested under such motion, the Delaware Bankruptcy Court

entered an Order approving the bidding procedures and certain other related matters relevant to

the proposed sale (the "Bidding Procedures Order"). Under the Bidding Procedures Order, a

public auction was held, and a hearing to confirm the final sale will be held July 28, 2009. On

July 17, 2009, NN CALA filed a motion to join the Sale Motion. The Delaware Bankruptcy

Court entered an order approving this motion on July 20, 2009.

### THE PROPOSED SETTLEMENT

28.    The Trustee and Agent have engaged in extended, arms length, good faith

negotiations throughout the pendency of the Adversary Proceeding in an attempt to resolve the

issues described above. These negotiations intensified during 2009, and the Scheduling Order in

the Adversary Proceeding has been modified from time to time to permit such negotiations to

continue without the necessity for the parties to incur further costs and expenses of litigation. As

a result of these negotiations, the Trustee and Agent now propose, subject to approval of this

Court and the Delaware Bankruptcy Court, to resolve all of their remaining disputes pursuant to

the terms of the attached Stipulation Order (Exhibit A), which includes the following salient

components:

(a) In full satisfaction of all of Agent's claims against the Debtor and the NETtel

Parent, the Trustee has agreed for purposes of settlement: (i) to recognize a valid, perfected, first

priority lien on all current balances in the Preference Escrow and the Proceeds, free and clear of

any interest of any entity other than Agent; (ii) to distribute to Agent the aggregate amount of

$2.9 Million ($2,500,000 from the Preference Escrow and $400,000.00 from the remaining

Proceeds); and (iii) to release any and all claims the Trustee or the Ch. 7 Estates have, or may

have, against Agent and/or the Lenders, including any claim to surcharge the Lenders' collateral

under Section 506(c) of the Bankruptcy Code, except as provided in subparagraph (b), below.

(b) In exchange, Agent has agreed for purposes of settlement: (i) to release to the

Trustee its lien on the current balance in the Preference Escrow in excess of $2.5 Million (the

"Released Preference Balance"); (ii) to release to the Trustee any lien or other interest it may

have in the current balance in Proceeds held by the Trustee in excess of $400,000; (iii) to release

to the Trustee any lien or other interest it may have in the Remaining Adversary Proceeding

and/or any proceeds thereof; (iv) to waive the Administrative Expense, as well its Ch. 11

administrative expenses, if any, and general unsecured claims against the Ch. 7 Estates and all

claims, if any, against the Trustee; (v) to recognize, and support the Trustee's judgments and

conclusions (A) that each of the Ch. 7 Expenses is a reasonable, necessary cost and expense of

preserving or disposing of the Lenders' Collateral which benefited the Lenders' Collateral; (B)

that the Trustee is entitled to recover all of such Ch. 7 Expenses from the Released Preference

Balance as a surcharge under 11 U.S.C. § 506(c); (C) that the Trustee is entitled to disburse such

Ch. 7 Expense payments from the Released Preference Balance as the proceeds of the surcharge

under 11 U.S.C. § 506(c); and (D) that the remainder of the Released Preference Balance, the

proceeds, if any, of the Remaining Adversary Proceeding and any remaining Proceeds may be

utilized by the Trustee, subject to approval of this Court, in the Trustee's sole discretion to make

a final distribution and file a final report in each of the above-captioned Ch. 7 Cases; and

(c) The Trustee (and the Ch. 7 Estates) and Agent will exchange mutual releases

with respect to all claims, except as otherwise provided in the Stipulation and Order (Exhibit A).

## APPLICABLE AUTHORITY

29.     Bankruptcy Rule 9019 provides that the Court "may approve a compromise or

settlement." Compromises are tools for expediting the administration of the case and reducing

administrative costs and are favored in bankruptcy. See Fogel v. Zell, 221 F. 3d 955, 960 (7th

Cir. 2000); In re Martin, 91 F.3d 389, 393 (3d Cir. 1996). Various courts have endorsed the use

of Bankruptcy Rule 9019; In re Bond, 1994 U.S. App. Lexis 1282, 9-14 (4th Cir. 1994) ("To

minimize litigation and expedite the administration of a bankruptcy estate, 'compromises are

favored in bankruptcy.'" See, e.g., Bartel v. Bar Harbour Airways, Inc., 196 B.R. 268 (S.D.N.Y

1996); In re Foundation for New Era Philanthropy, Case No. 95-13729B, 1996 Bankr. LEXIS

1892 (Bankr. E.D. Pa. Aug. 21, 1996); In re Miller, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); In

re Check Reporting Service, Inc., 137 B.R. 653 (Bankr. W.D. Mich. 1992); In re Patel, 43 B.R.

500, 504 (N.D. Ill. 1982).

30.     The decision to approve a settlement or compromise is within the discretion of the

Court, and is warranted where the settlement is found to be reasonable and fair in light of the

particular circumstances of the case. See Protective Comm. For Indep. Stockholders of TMT

Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  The settlement need not be the best that

the Trustee could have achieved, but need only fall "within the reasonable range of litigation

possibilities." In re Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill.

1994). In making its determination, a court should not substitute its own judgment for that of the

Trustee. In re Neshaminy Office Bldg. Assoc., 62 B.R. 798, 803 (E.D. Pa. 1986). The United

States Court of Appeals for the Third Circuit has stated that Section 363 of the Bankruptcy Code

is the substantive provision requiring a hearing and court approval of settlements, while

Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. See In

re Martin, 91 F.3d 389, 395 n.2 (3d Cir. 1996) (distinguishing the substance of Section 363 from

the procedural effect of Bankruptcy Rule 9019).

31.     In determining whether to approve a settlement, a bankruptcy court is required to

"assess and balance the value of the claim that is being compromised against the value to the

estate of the acceptance of the compromise proposal." Id. at 393. In making this determination, a

court should consider four criteria: "(1) the probability of success in the litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved, and the expense,

inconvenience and delay . . .; and (4) the paramount interest of the creditors." Id. (referencing

TMT Trailer Ferry, 390 U.S. at 424-25); United States ex. Rel. Rahman v. Oncology Assoc.,

P.C., 269 B.R. 139, 152 (D. Md. 2001), In re Frye, 216 B.R. 166, 174 (E.D. Va. 1997), see also

In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (listing the Anderson factors

as controlling whether a settlement should be approved). The ultimate inquiry is whether the

compromise is fair, reasonable, and in the interest of the estate. See In re Louise's, Inc., 211

B.R. 798, 801 (D. Del. 1997).

32.     Applying the above factors to the instant matter, the Trustee and Agent

respectfully submit that the compromises set forth in the Stipulation and Order are fair,

reasonable, and in the best interests of the Ch. 7 Estates and their creditors (as well as the Nortel

Debtors' estates and their creditors). The Settlement is the product of extensive arm's length,

good faith negotiations between the Trustee and Agent following two rounds of discovery, expert

testimony, pre-trial motions and the extensive Memorandum in which the Court substantially

narrowed the issues for the parties and provided an explicit "roadmap" for litigation of the

remaining disputes addressed in the Renewed Motion. Absent this Settlement, Agent would

continue to pursue its lien claim of approximately $4.2 Million, as well as its Ch. 7

administrative expense of $7.4 Million. If Agent were to prevail, there could be no currently

available funds for distribution to other creditors, and disgorgement might be necessary to

equalize distributions to holders of Ch. 7 administrative claims.

33.      While the Trustee and Agent are prepared to litigate these disputes, such litigation

would add considerable expense, and there is no assurance that litigation would achieve a better

result for either party or the Ch. 7 Estates than the one achieved under the Settlement,

particularly in light of the current stage of the Debtor's Ch. 7 Case and Nortel's current Ch. 11

debtor/debtor-in-possession status. The anticipated costs to the Trustee and Agent in pursuing

the litigation are high in light of the limited additional upside (if any) that could be gained from

pursuing the litigation compared to the Settlement. Moreover, litigation to pursue the issues

otherwise resolved by the Settlement would result in the expenditure of substantial legal fees and

expenses, and it is in the interest of the Trustee and the Ch. 7 Estates to minimize such fees and

expenses.

34.      Furthermore, the interests of creditors strongly militate in favor of approval of the

Settlement. The Trustee and the Nortel debtor/debtor-in-possession believe that the interests of

their respective creditors are supported by the prompt and efficient resolution of this claim,

particularly due to the status of the Ch. 7 Cases and Agent's Ch. 11 debtor status, and the

minimization of administrative claims and expenses.[6]

35.     Approval of the Settlement will effectively enable the Trustee (i) to simultaneously make immediate distributions in payment of the Ch. 7 Expenses under Sections 726(a) and (b) of the Bankruptcy Code, and to recover all of such payments from the Lenders' Collateral under Section 506(c) of the Bankruptcy Code, and (ii) to both fix the amount of the remainder of such Collateral and to dispose of it (after notice and a hearing) before making a final distribution as required under Section 725 of the Bankruptcy Code. Approval of the Settlement will, therefore, facilitate and expedite such a final distribution and the filing of final reports in these Ch. 7 Cases.

36.     The Trustee estimates that additional funds will be available in the estate to pay, pro rata, Hartford based on its 503(b)(1) administrative claim as well as any Chapter 7 administrative expenses incurred in the final administration of the estate through the completion of the Final Report by the Trustee. Based upon the funds currently on hand ($4.2 million), the Trustee estimates that the unencumbered funds remaining after the disbursements made pursuant to this settlement will not exceed $300,000.00. Any proceeds generated by the *Scott & Reid* Remaining Adversary Proceeding upon its completion also will be available to pay remaining administrative expenses.

37.     In light of the foregoing, the Trustee and Agent believe that a compromise on the terms contemplated in the Stipulation and Order is preferable to further litigation. The proposed settlement reflects a valuable resolution in light of the value being given, the uncertainties of

---

[6] To the extent that the "absolute priority rule" applies to settlements other than under a plan, *see, e.g., Motorola v. Official Comm. of Unsecured Creditors (in re Iridium Operating, LLC*, 478 F.3d 452 (2007), the disposition plan proposed under the Stipulation and Order (Exhibit A) respects the priority scheme established under Sections 725 and 726 (a), (b) of the Bankruptcy Code.

litigation, and the costs and delays attendant thereto. Further, the proposed settlement is within

the range of reasonableness considering the potential outcomes associated with litigating the

disputes. For these reasons, the Trustee and Agent assert that the settlement should be approved

as it is in the best interests of the Trustee, the Nortel debtor/debtor-in-possession, their respective

estates, and their respective creditors.

## NOTICE

38.      Notice of the Motion has been given to the (i) Office of the United States Trustee;

(ii) and the updated mailing matrix maintained by the Clerk of the Court, including, but not

limited to, each holder of a Ch. 7 Expense (or its representative) and counsel for the holder of the

Hartford Expense. The Trustee and Agent submit that under the circumstances no other or

further notice is necessary.

## NO PRIOR REQUEST

39.      No prior request for the relief sought herein has been made to this or any other

Court, except for the substantially contemporaneous concurrent request to the Delaware

Bankruptcy Court for the District of Delaware in accordance with the terms of the Stipulation

and Order (Exhibit A).

Respectfully submitted:                          Respectfully submitted:


/s/ Linda M. Correia                             /s/ John G. McJunkin
Linda M. Correia (D.C. Bar No. 435027)           John G. McJunkin (D.C. Bar No. 420223)
Webster, Fredrickson, Correia                    Daniel J. Carrigan (D.C. Bar No. 299401)
  & Puth, PLLC                                    Megan Hoffman (D.C. Bar No. 982153)
1775 K Street, NW                                McKenna Long & Aldridge LLP
Suite 600                                        1900 K Street, NW
Washington, DC 20006                             Washington, DC 20006
(202) 659-8510 phone                             (202) 496-7500 phone
(202) 659-4082 fax                               (202) 496-7756 fax


Counsel for Wendell W. Webster, in his           Counsel for Debtor/Debtor-In-Possession,
Capacities as Chapter 7 Trustee of the           Nortel Networks Inc., as Agent for the Lenders
NETtel Corporation, Inc. and NETtel
Communications, Inc. Bankruptcy Estates

# EXHIBIT A
## TO JOINT MOTION OF
## CHAPTER 7 TRUSTEE AND AGENT

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 25 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 2 of 8

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

*In re*

NETtel COMMUNICATIONS, INC., and          Case No. 00-1771 (Chapter 7)
NETtel CORPORATION,
                                          Jointly Administered
                        Debtors.

---

**STIPULATION OF CHAPTER 7 TRUSTEE AND AGENT PURSUANT TO, *INTER ALIA*, SECTIONS 105, 350, 363, 704, 725 AND 726 OF THE BANKRUPTCY CODE, AND BANKRUPTCY RULES 2002 (a)(2), (3), (6), 3012 AND 9019(b), REGARDING COMPROMISE OF CONTROVERSIES WITH RESPECT TO (I) TRUSTEE'S RECOVERY, UNDER SECTION 506(c) OF THE BANKRUPTCY CODE, FROM CERTAIN PROPERTY IN WHICH AGENT HAS AN INTEREST, (II) TRUSTEE'S DISPOSITION, UNDER SECTION 725 OF THE BANKRUPTCY CODE, OF PROPERTY IN WHICH AGENT HAS AN INTEREST, BEFORE, AND IN AID, OF TRUSTEE'S FINAL DISTRIBUTION, AND (III) TRUSTEE'S DISTRIBUTIONS IN PAYMENT OF CERTAIN CHAPTER 7 ADMINISTRATIVE EXPENSES UNDER SECTION 726(a) AND (b) OF THE BANKRUPTCY CODE; AND ORDER AUTHORIZING AND APPROVING STIPULATION**

It is hereby stipulated and agreed, by and between Wendell W. Webster, Trustee ("Trustee") in the case under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") of the Debtor, NETtel Corporation, Inc. ("Debtor" or "NETtel") (as well as the Trustee in the case under Chapter 7 of the Bankruptcy Code of the Debtor, NETtel Communications, Inc. ("the NETtel Parent")) and Nortel Networks Inc. ("Nortel"), in its capacity as administrative agent ("Agent" or "Plaintiff") for Nortel, Allied Capital Corporation ("Allied") and Williams Communications, Inc. ("Williams"), secured lenders of the Debtor (collectively, the "Lenders"), pursuant to, among other things, the Joint Motion[1] filed herewith by the Trustee and the Agent

---

[1] Unless defined otherwise herein, capitalized terms shall have the meanings ascribed in the Joint Motion or in Agent's Renewed Motion for Summary Judgment (Adversary Proceeding No. 05-10077 DKT. 66) (the "Renewed Motion").

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 26 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 3 of 8

(together, the "Parties") (the "Joint Motion"), and Sections 105(a), 350, 363(b), 704, 725 and 726 of the Bankruptcy Code and Rules 2002(a)(2), (3), (6), 3012 and 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), subject to the approval of both the United States Bankruptcy Court for the District of Columbia in the above-captioned Ch. 7 Cases, (the "Court"), and the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court") in the Nortel Debtors' Ch. 11 Cases, as follows:

1.    Concurrently, the Trustee and the Agent have filed the Joint Motion for an Order authorizing the Trustee to compromise certain controversies which have arisen between the Trustee and the Agent, as reflected in Adversary Proceeding No. 05-10077 (the "Adversary Proceeding") and the contested matter initiated by Agent's Notice of, and Application for, Allowance of Administrative Expenses and Request for Payment (DE 1121) (the "Application"), each of which is currently pending before the Court, as more fully described in the Joint Motion, and granting the Trustee and the Agent such other and further relief as the Court deems just and proper, to enable the Trustee to make distributions in payment of certain Ch. 7 administrative expenses (under Sections 726(a) and (b) of the Bankruptcy Code), to recover from certain property in which Agent has an interest (i.e., a lien) (under Section 506(c) of the Bankruptcy Code), to dispose of a portion of the remainder of such property before a final distribution by the Trustee (under Section 725 of the Bankruptcy Code) by paying Agent a compromised amount from such property, and to thereby facilitate and expedite such a final distribution from the remaining portion of such property and the filing of final reports (under Section 704(a)(9) of the Bankruptcy Code) in these long standing Ch. 7 Cases.

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 27 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 4 of 8

2.      The matters set forth in paragraphs 1 through 37 of the Joint Motion are true and correct to the best of the Parties' current knowledge, information and belief.

3.      In full satisfaction of all of Agent's claims against the Debtor and the NETtel Parent, the Trustee, for purposes of settlement: (i) recognizes a valid, perfected, first priority lien on all current balances in the Preference Escrow and the Proceeds, free and clear of any interest of any entity other than Agent; (ii) shall distribute to Agent the aggregate amount of $2.9 Million ($2,500,000 from the Preference Escrow and $400,000.00 from the remaining Proceeds); and (iii) releases any and all claims the Trustee or the Ch. 7 Estates have, or may have, against Agent (as well as its bankruptcy estate, any of Agent's affiliates or their bankruptcy estates) and/or the Lenders, including, without limitation, any claim to surcharge the Lenders' collateral, except as provided in paragraph (4), below, and any claims or avoidance actions arising under Chapter 5 of the Bankruptcy Code.

4.      In exchange for the relief provided for in paragraph 3, above, Agent, for purposes of settlement: (i) releases to the Trustee its lien on the current balance in the Preference Escrow in excess of $2.5 Million (the "Released Preference Balance"); (ii) releases to the Trustee any lien or other interest it may have in the current balance in Proceeds held by the Trustee in excess of $400,000; (iii) releases to the Trustee any lien or other interest it may have in the Remaining Adversary Proceeding and/or any proceeds thereof; (iv) waives the Administrative Expense, as well its Ch. 11 administrative expenses, if any, and general unsecured claims against the Ch. 7 Estates and all claims, if any, against the Trustee; (v) recognizes, and supports the Trustee's judgments and conclusions (A) that each of the Ch. 7 Expenses[2] is a reasonable, necessary cost

─────────────────

[2] For avoidance of doubt, the Hartford Expense is not among these Ch. 7 Expenses.

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 28 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 5 of 8

and expense of preserving or disposing of the Lenders' Collateral which benefited the Lenders' Collateral; (B) that the Trustee is entitled to recover all of such Ch. 7 Expenses from the Released Preference Balance; (C) that the Trustee is entitled to disburse such Ch. 7 Expense payments from the Released Preference Balance; and (D) that the remainder of the Released Preference Balance, the proceeds, if any, of the Remaining Adversary Proceeding and any remaining Proceeds may be utilized by the Trustee, subject to approval of this Court, in the Trustee's sole discretion to make a final distribution and file a final report in each of the above-captioned Ch. 7 Cases.

5.      The Trustee and the Agent will file a joint motion in the Nortel Debtors Ch. 11 Cases, in form and substance substantially identical to the Joint Motion.

Linda M. Correia (D.C. Bar No. 435027)
Webster, Fredrickson, Correia
  & Puth, PLLC
1775 K Street, NW
Suite 600
Washington, DC 20006
(202) 659-8510 phone
(202) 659-4082 fax

Counsel for Wendell W. Webster, in his
Capacities as Chapter 7 Trustee of the
NETtel Corporation, Inc. and NETtel
Communications, Inc. Bankruptcy Estates

John G. McJunkin (D.C. Bar No. 420223)
Daniel J. Carrigan (D.C. Bar No. 299401)
Megan Hoffman (D.C. Bar No. 982153)
McKenna Long & Aldridge LLP
1900 K Street, NW
Washington, DC 20006
(202) 496-7500 phone
(202) 496-7756 fax

Counsel for Debtor/Debtor-In-Possession,
Nortel Networks Inc., as Agent for the Lenders

DC:50656545.2

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 29 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 6 of 8

## ORDER APPROVING THE COMPROMISE OF CONTROVERSY
## BY AND BETWEEN TRUSTEE AND AGENT

Upon the Joint Motion[3] of the Trustee and the Agent for entry of an Order, as more fully described in the Joint Motion, granting the Trustee authority, pursuant to *inter alia*, Sections 105, 350, 363, 704, 725 and 726 of the Bankruptcy Code, and Bankruptcy Rules 2002(a)(2), (3), (6), 3012 and 9019(b), to enter into a settlement with Agent (the Trustee and the Agent, together, the "Parties") pursuant to the terms set forth in the foregoing Stipulation; and adequate notice of the Motion having been given as set forth in the Joint Motion; and it appearing that no other or further notice is necessary; and the Court having jurisdiction to consider the Joint Motion and the relief requested therein pursuant to 28 U.S.C. § § 157 and 1334; and the Court having determined that consideration of the Joint Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having determined that the legal and factual bases set forth in the Joint Motion establish just cause for the relief requested in the Joint Motion, and that such relief is in the best interests of the Trustee, the Debtors' estates, their creditors and the parties in interest; and upon the record in these proceedings; and after due deliberation;

IT IS HEREBY ORDERED THAT:

1.      The Joint Motion is GRANTED.  All objections to relief sought in the Joint Motion, to the extent not withdrawn or resolved, are hereby overruled.

2.      The Trustee is authorized to enter into the settlement with the Agent pursuant to the terms set forth in the Stipulation, which Stipulation the Court finds is in the best interests of the Trustee, the Debtors' estates, their creditors and the other parties in interest.

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Motion.

Case 09-10138-MFW    Doc 2099-3    Filed 12/08/09    Page 30 of 31

Case 00-01771    Doc 1144-1    Filed 11/04/09    Entered 11/04/09 19:28:09    Desc
Exhibit Exhibit A - Proposed Stipulation and Order    Page 7 of 8

3.      The settlement as set forth in the Stipulation between the Parties is approved,

subject to approval by the United States Bankruptcy Court for the District of Delaware in the

Nortel Debtors' Ch. 11 Cases.

4.      The Trustee is authorized to pay and disburse to Agent the aggregate amount of

$2.9 Million ($2,500,000 from the Preference Escrow and $400,000 from the remaining

Proceeds).

5.      The Trustee also is authorized to pay and disburse the following amounts for Ch.

7 administrative expenses, in the aggregate amount of $511,608.06, as reasonable, necessary

costs and expenses of preserving or disposing of the Lenders' Collateral which benefited the

Lenders' Collateral under 11 U.S.C. § 506(c):  (a) Williams: $338,352.00; (b) Vartec:

$10,858.00; (c) Microtech: $22,744.00; (d) Tauber & Associates/135 West 50 LLC:

$26,618.06; (e) Cyberrep.com: $7,512.00; and (f) Webster, Fredrickson, Correia & Puth:

$105,524.00.

6.      To the extent allowed by separate order, the Trustee's payments to Webster,

Fredrickson, Correia & Puth on its Eighth Application for Compensation and Reimbursement

of Expenses in the amount of $158,314.50 and to the Trustee for his Application for Trustee

Compensation in the amount of $288,447.74 are authorized as reasonable, necessary costs

and expenses of preserving or disposing of the Lender's Collateral which benefited the

Lenders' Collateral under 11 U.S.C. § 506(c).

7.      Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to

the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon

its entry, (ii) the Trustee and the Agent are not subject to any stay in the implementation,

enforcement or realization of the relief granted in this Order, and (iii) the Trustee and the

Agent may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

8.    The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the contents of the Joint Motion or otherwise deemed waived.

9.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2009
      Washington, DC

_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

DC:50656545.2