**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------X
                                                      :
                                                      :   Chapter 11
                                                      :
In re                                                 :
                                                      :   Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,  ¹                      :
                                                      :   Jointly Administered
                              Debtors.                :
                                                      :   Hearing date: December 15, 2009 at 10:00 a.m. (ET)
                                                      :   (proposed)
                                                      :   Objections due: December 14, 2009 at 12:00 p.m. (ET)
                                                      :   (proposed)
                                                      :
------------------------------------------------------X
```

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(A)
AND § 363(B) FOR AN ORDER (A) APPROVING
DEBTORS' ENTRY INTO THE ENTERPRISE SOLUTIONS
BUSINESS ESCROW AGREEMENT AND (B) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of

an order in the form attached hereto as Exhibit A, (a) approving that certain escrow agreement

substantially in the form attached hereto as Exhibit B (the "Escrow Agreement") entered into by

and among NNI, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL", and

together with NNI and NNC, the "Sellers"), the EMEA Filed Entities, the Joint Administrators,

the Israeli Companies, the Estate Fiduciaries (as each is defined in the Escrow Agreement), and

JPMorgan Chase Bank, N.A. a national banking association organized and existing under the

laws of the United States of America, as escrow and distribution agent ("JPMorgan" or the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

"Distribution Agent"), (b) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## Background

**A.    Introduction**

3.       On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel Networks (CALA) Inc. ("NN CALA"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  NN CALA filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

4.       The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.       On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.       Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent, NNL (NNL, and together with NNC and their affiliates, including the

Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings during which NNSA continued to operate as a going concern for an initial period of three months, which period was subsequently extended. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

9.     On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

11.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with

the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.      Debtors' Corporate Structure and Business**

12.      A description of the Debtors' corporate structure and business and the events

leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First

Day Motions and Applications [D.I. 3].

### Relief Requested

13.      By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363:

(a) approving the Escrow Agreement and (b) granting related relief.

### Facts Relevant to this Motion

**A.      The Interim Funding and Settlement Agreement**

14.      On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors

and the Joint Administrators entered into an Interim Funding and Settlement Agreement

(the "IFSA")[4] governing certain intercompany matters, including the obligations of the

---

[4]      The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such.  The summaries and descriptions are qualified in their entirety by the IFSA.  In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a

timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning

the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined

in the IFSA), which Interim Sales Protocol shall provide binding procedures for the

allocation of Sale Proceeds where the relevant parties in any such Sale Transaction have

been unable to reach agreement regarding such allocation, and (b) following entry into any

Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach

agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within

a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol

(failing which the Interim Sales Protocol shall apply to determine the allocation of the

relevant Sale Proceeds).  On June 29, 2009, this Court entered an Order (A) Approving the

Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

15.     The IFSA, as approved by the Court, calls for an escrow agreement, the terms of

which shall be negotiated and agreed upon by all Selling Debtors (as defined in the IFSA) acting

reasonably.  The Sale Proceeds (less applicable transfer or value-added taxes and, to the extent

agreed upon by the Selling Debtors, transaction costs) shall be deposited in an escrow account

pursuant to the Escrow Agreement, pending the distribution of the Sale Proceeds.  This Court has

approved substantially similar escrow agreements in respect of earlier sale transactions.

**B.      Sale of Nortel's Enterprise Solutions Business**

16.     Nortel's Enterprise Solutions business unit provides solutions for addressing the

communication needs of large and small businesses globally across a wide variety of industries

by building new networks and transforming existing networks into more cost-effective, packet-

based networks supporting data, voice and multimedia communications (the "Enterprise

Solutions Business").  In particular, the Enterprise Solutions Business specializes in providing

solutions that allow its customers to integrate and remove barriers between voice, email, conferencing, video and instant messaging technologies.

17.      On July 20, 2009, the Sellers and certain of their affiliates entered into an Asset and Share Sale Agreement (the "Stalking Horse Agreement") for the sale of certain assets of, and equity interests in, the Enterprise Solutions Business by and among the Sellers, certain of their affiliates and Avaya Inc. ("Avaya"), subject to higher and better offers.  The Debtors conducted a bidding and auction process in accordance with the procedures approved by this Court.  At the conclusion of the auction held from September 11, 2009 to September 14, 2009, the final bid by Avaya (together with its designees, the "Purchaser"), was selected as the highest and best bid.  On September 14, 2009, the Sellers and the Purchaser entered into the Amended and Restated Asset and Share Sale Agreement (the "Sale Agreement"), which this Court subsequently authorized and approved by order entered September 16, 2009 (the "Sale Order") [D.I. 1514].

18.      Pursuant to the Sale Order, this Court has authorized the Debtors to deposit amounts paid in accordance with the Sale Agreement into an escrow account pending final allocation.

**C.      The Escrow Agreement**

19.      Pursuant to Section 12.b of the IFSA and Paragraph 31 of the Sale Order, the Debtors, certain of their affiliates including the Canadian Debtors and EMEA Debtors (collectively, the "Depositors") and JPMorgan negotiated the escrow agreement (the "Escrow Agreement")[5] substantially in the form attached hereto as Exhibit B.

20.      Among other things, the Escrow Agreement provides as follows:

---

[5]      Capitalized terms used but not defined in this Motion have the meaning ascribed to them in the Escrow Agreement.  To the extent that there are inconsistencies between the description of the provisions of the Escrow Agreement contained in this Motion and the terms and conditions of the Escrow Agreement, the terms and conditions of the Escrow Agreement shall control.

- <u>Appointment of Distribution Agent</u>.

  ▪ The Depositors shall jointly nominate, constitute and appoint the Distribution Agent to hold escrow funds in a Distribution Account (as defined below).

  ▪ The Distribution Agent shall agree that deposits to, and disbursements from, the Distribution Account (as defined below), or applicable portions thereof, shall only be made in accordance with the terms and conditions of the Escrow Agreement.

  ▪ The Depositors and the Distribution Agent shall agree that any action specified in the Escrow Agreement as to be taken by all of the Depositors, acting jointly, when taken by all of the Depositors shall be binding upon each of the Depositors, and the Distribution Agent shall be entitled to act and rely upon any such action.

- <u>Deposit of Escrow Property</u>.  Funds shall be deposited in a distribution account as follows:

  ▪ At the Closing, the Sellers shall instruct the Purchaser to deposit the Deposited Purchase Price with the Distribution Agent to an interest bearing account established with the Distribution Agent (the "<u>Distribution Account</u>").

  ▪ At the Closing, NNL, NNI and NNUK shall cause Wells Fargo National Association ("<u>Wells Fargo</u>") to deposit all amounts of cash held by Wells Fargo in the Good Faith Deposit Escrow Account (including actual earnings thereon) with the Distribution Agent, in immediately available funds, in the Distribution Account.

  ▪ After the Closing, the Sellers shall instruct the Purchaser to deposit any purchase price adjustments to be paid to the Sellers under the Sale Agreement with the Distribution Agent in the Distribution Account.

  ▪ After the Closing, NNL, NNI and NNUK shall instruct Wells Fargo to deposit any of Escrow Amounts (including any earnings thereon) to be released to the Sellers and the EMEA Sellers pursuant to the Purchaser Escrow Agreement with the Distribution Agent in the Distribution Account.

- <u>Investment of Escrow Funds</u>.

  ▪ Until otherwise jointly directed by all of the Depositors and the Estate Fiduciaries (as defined in the Escrow Agreement), the Distribution Agent

8

shall invest the Escrow Funds in Permitted Investments as defined in the Escrow Agreement.

- The Distribution Agent shall have the right to liquidate investments as necessary to distribute Escrow Funds pursuant to the Escrow Agreement.

- Distribution of Escrow Funds.  Until the termination of the escrow established pursuant to the Escrow Agreement, the Distribution Agent shall hold the Escrow Funds and not disburse any amounts from the Escrow Account except in accordance with the terms and conditions of the Escrow Agreement:

  - The Distribution Agent shall disburse to any person amounts from the Escrow Funds if and as so instructed pursuant to (i) a letter of direction jointly executed by the Depositors and the Estate Fiduciaries, a copy of which shall be provided by the Depositors to the Bondholder Group or (ii) where the Depositors have entered into the Allocation Protocol in accordance with clause 12 of the IFSA (the existence of the Allocation Protocol shall be set forth in a written notice jointly executed by the Depositors and delivered to the Distribution Agent), any Depositor's delivery to the Distribution Agent, with copies to the other Depositors, the Estate Fiduciaries and the Bondholder Group, of a duly authenticated copy of the binding decision made by the relevant dispute resolver(s) under that protocol regarding the allocation of the sales proceeds relating to the Enterprise Solutions business of the Depositors (a "Decision") which is not stayed or subject to appeal, accompanied by a certificate from such Depositor certifying as to the finality of the Decision.

  - The Distribution Agent shall disburse amounts from the Distribution Account to satisfy (i) any obligations to pay any purchase price adjustments to be paid by the Sellers and/or the EMEA Sellers to the extent not paid from funds held in the Purchaser Escrow Agreement; (ii) any payment of any fees paid or payable to Lazard Frères & Co. in connection with the sale of the Business as approved by the U.S. Bankruptcy Court and Canadian Court, and (iii) any payment of any retainer paid or payable to one or more dispute resolvers appointed pursuant to the Allocation Protocol with respect to the allocation of the sales proceeds relating to the Business, subject, in each case, to certain adjustments as described more fully in the Escrow Agreement.

  - The Depositors understand and agree that no payments or reimbursements in respect of Transfer Taxes or in respect of VAT shall constitute any part of the Deposited Purchase Price, the amount transferred from the Good Faith Deposit Escrow Account (including any actual earnings thereon) or the Escrow Funds, or shall be required to be paid by the Purchaser into the Distribution Account.

9

- ▪ The Distribution Agent shall have no responsibility or obligation for investigating or determining the validity or sufficiency of any matter asserted in a letter of direction or of any pending claim for entitlement to release of funds from the Distribution Account.  The Distribution Agent shall have the right to withhold an amount equal to the amount due and owing to the Distribution Agent, plus any reasonable costs and expenses incurred by Distribution Agent in accordance with the terms of this Agreement in connection with the termination of the Distribution Account.

- • Termination of Distribution Account.  The Escrow Agreement shall terminate upon the distribution of all Escrow Funds from the Distribution Account, subject to the survival of provisions which expressly survive the termination of the Escrow Agreement.

**Basis for Relief**

21.     The relief sought in this Motion is authorized by sections 105(a) and 363 of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue an order…that is necessary or appropriate to carry out the provision of this title." 11 U.S.C. § 105(a).  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

22.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

23.     The use or transfer of estate property under section 363 of the Bankruptcy Code

must be supported by a sound business purpose.  The Committee of Equity Security Holders v.

Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re

Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The

Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward

Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R.

169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants

Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court

determining whether a sound business purpose justifies the transaction "should consider all

salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of

the debtor, creditors and equity holders, alike."  In re Montgomery Ward, 242 B.R. at 153-54

(quoting In re Lionel Corporation, 722 F.2d at 1071).  In addition, a debtor must show that the

transaction has been proposed in good faith, that adequate and reasonable notice has been

provided, and that it is receiving fair and reasonable value in exchange.  See In re Delaware &

Hudson Ry. Co., 124 B.R. at 176; In re Decora Industries, Inc., 2002 WL 32332749, at *2.

24.     The Debtors respectfully submit that the Escrow Agreement meets each of the

requirements under section 363 of the Bankruptcy Code.  The Escrow Agreement is supported

by a sound business purpose because it provides security for both the Purchaser and Depositors

which is essential to completing the sale of the Debtors' businesses, particularly given the

ongoing creditor protection proceedings in various jurisdictions.  The Debtors have agreed to

enter into the Escrow Agreement in order to facilitate cooperation amongst the parties in working

toward completion of the sale.

**Notice**

25.      Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser; (ii) the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) counsel to the Joint Administrators; (vii) the Distribution Agent; and (viii) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

26.      No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  December 11, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

                               James L. Bromley (No. 5125)
                               Lisa M. Schweitzer (No. 1033)
                               One Liberty Plaza
                               New York, New York 10006
                               Telephone:  (212) 225-2000
                               Facsimile:  (212) 225-3999

                                 - and -

                               MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                               */s/ Ann C. Cordo*
                               Derek C. Abbott (No. 3376)
                               Eric D. Schwartz (No. 3134)
                               Ann C. Cordo (No. 4817)
                               Andrew R. Remming (No. 5120)
                               1201 North Market Street
                               P.O. Box 1347
                               Wilmington, Delaware 19801
                               Telephone:  (302) 658-9200
                               Facsimile: (302) 658-3989

                               *Counsel for the Debtors*
                               *and Debtors in Possession*