**EXHIBIT B**

**Form of Escrow Agreement**

**FORM OF ESCROW AGREEMENT**

**among**

**NORTEL NETWORKS CORPORATION**

**NORTEL NETWORKS LIMITED**

**NORTEL NETWORKS INC.**

**and**

**THE OTHER ENTITIES IDENTIFIED HEREIN AS SELLERS**

**and**

**THE EMEA FILED ENTITIES**

**and**

**THE EMEA NON-FILED ENTITIES**

**and**

**THE ISRAELI COMPANIES**

**and**

**THE ESTATE FIDUCIARIES**

**and**

**JPMorgan Chase Bank, N.A., as Distribution Agent**

**dated as of December [•], 2009**

**This ESCROW AGREEMENT** (this "**Agreement**"), dated as of December [•], 2009, by and among (i) Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**"); (ii) Nortel Networks Limited, a corporation organized under the laws of Canada ("**NNL**"); (iii) Nortel Networks Inc., a corporation organized under the laws of Delaware ("**NNI**" and, together with NNC and NNL, the "**Main Sellers**"); (iv) the affiliates of the Main Sellers listed on Schedule A Parts 1 and 2 (the "**Other Sellers**" and, together with the Main Sellers, the "**Sellers**"); (v) the companies set out in Schedule B Part 1 (the "**EMEA Filed Entities**"), which are acting by Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP (other than Nortel Networks (Ireland) Limited (In Administration) for which David Hughes of Ernst & Young Chartered Accountants and Alan Robert Bloom serve as joint administrators (collectively the "**Joint Administrators**")) who act as agents of the EMEA Filed Entities without any personal liability as set forth in Paragraph 20 below; (v) the companies listed in Schedule B Part 2 (the "**EMEA Non-Filed Entities**"); (vi) the companies listed in Schedule B Part 3 (the "**Israeli Companies**"), which are acting by Yaron Har-Zvi and Avi D. Pelossof (the "**Joint Israeli Administrators**") who act as agents of the Israeli Companies without any personal liability as set forth in Paragraph 20 below (the Israeli Companies and collectively with the EMEA Filed Entities, the EMEA Non-Filed Entities, the Main Sellers and the Other Sellers, the "**Depositors**"); (vii) the Estate Fiduciaries (as defined below) with the exclusion from liability set forth in Paragraph 28; and (viii) JPMorgan Chase Bank, N.A., a national banking association organized and existing under the laws of the United States of America ("**JPMorgan**") and acting through its TS/Escrow Services Division and solely in its capacity as escrow and distribution agent under this Agreement, and any successors appointed pursuant to the terms hereof (JPMorgan in such capacity, the "**Distribution Agent**").

**WHEREAS**, on January 14, 2009 (the "**Petition Date**"), NNC, NNL and certain of their affiliates (collectively, the "**Canadian Debtors**") filed with the Ontario Superior Court of Justice (the "**Canadian Court**") an application for protection under the Companies' Creditors Arrangement Act (Canada) (the "**CCAA**") and were granted certain creditor protection pursuant to an order issued by the Canadian Court on the same date, which has been extended by further order of the Canadian Court (such proceedings, together with any other formal insolvency proceedings commenced in Canada in respect of any Depositor that is a Canadian debtor, the "**Canadian Cases**");

**WHEREAS**, NNI and certain of its affiliates (collectively, the "**U.S. Debtors**") are debtors-in-possession under Title 11 of the United States Code (the "**U.S. Bankruptcy Code**"), which commenced cases under Chapter 11 of the U.S. Bankruptcy Code on January 14, 2009 (the "**Petition Date**") (except for Nortel Networks (CALA) Inc., which commenced its case under Chapter 11 of the U.S. Bankruptcy Code on July 14, 2009) by filing voluntary petitions for relief in the U.S. Bankruptcy Court for the District of Delaware (the "**U.S. Bankruptcy Court**") (the "**U.S. Cases**" and together with the Canadian Cases, the "**Bankruptcy Cases**");

**WHEREAS**, the Canadian Court has appointed Ernst & Young Inc. as Monitor in the Canadian Cases and as foreign representative for the Canadian Debtors (the "**Monitor**"), and the Office of the United States Trustee for the District of Delaware has appointed an Official Committee of Unsecured Creditors as representative for the creditors of the U.S. Debtors (the

1

"**Committee**" and, together with the Monitor, the "**Estate Fiduciaries**"), and in addition, an ad hoc group of bondholders holding claims against certain of the US Debtors and certain of the Canadian Debtors has also been organized (the "**Bondholder Group**");

WHEREAS, on the Petition Date, the High Court of Justice in London, England (the "**English Court**") ordered that the EMEA Filed Entities be placed into administration under the English Insolvency Act 1986, as amended (the "**Insolvency Act**") and European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings (the "**EC Regulation**") and appointed the Joint Administrators (as appropriate) to manage the affairs, business and property of the EMEA Filed Entities;

WHEREAS, on January 18, 2009, the Israeli Companies filed applications with the Tel-Aviv-Jaffa District Court (the "**Israeli Court**"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto (collectively, the "**Israeli Companies Law**") for a stay of proceedings, and on January 19, 2009, the Israeli Court appointed Joint Israeli Administrators, as joint administrators of the Israeli Companies under the Israeli Companies Law;

WHEREAS, on May 28, 2009, insolvency proceedings, in accordance with Article 3(3) of the EC Regulation, were opened by the Commercial Court of Versailles (the "**French Court**") in relation to Nortel Networks SA in accordance with Article 27 of the EC Regulation pursuant to which the French Court appointed Maître Cosme Rogeau, 26, avenue Hoche, 78000 Versailles as the "Liquidateur Judiciaire" and Maître Franck Michel, partner of Selarl F. Michel – A. Miroitte – C. Gorins, 10 Allée Pierre de Coubertin, 78000 Versailles as the "Administrateur Judiciaire" of NNSA under Articles 641-1 et seq. of the French Commercial Code;

WHEREAS, the Sellers, the EMEA Filed Entities, the EMEA Non-Filed Entities and Avaya Inc. (the "**Purchaser**") have entered into that certain Amended and Restated Asset and Share Sale Agreement, dated as of September 14, 2009 (as amended and restated and as may be further amended and/or restated from time to time in accordance with its terms, the "**ASSA**"), whereby the Purchaser and/or certain Designated Purchasers will acquire the Enterprise Solutions business segment of the Sellers.  Capitalized terms used and not otherwise defined herein shall have the meaning given to them in the ASSA;

WHEREAS, the EMEA Filed Entities, the EMEA Non-Filed Entities, the Israeli Companies, the Joint Administrators, the Joint Israeli Administrators and the Purchaser have entered into that certain Amended and Restated Asset Sale Agreement relating to the Sale and Purchase of the EMEA Assets, dated as of September 14, 2009 (as amended and restated by that certain Amendment and Restatement Agreement dated as of September 14, 2009 and as may be further amended and/or restated from time to time in accordance with its terms, the "**EMEA ASA**"), whereby the Purchaser and/or certain EMEA Designated Purchasers will acquire the Enterprise Solutions business segment of the EMEA Filed Entities, the EMEA Non-Filed Entities and the Israeli Companies;

WHEREAS, NNL, NNI, Nortel Networks UK Limited, a limited liability company organized under the laws of England ("**NNUK**"), the Purchaser and Wells Fargo, National Association ("**Wells Fargo**") have entered into that certain Amended and Restated Escrow Agreement, dated as of September 14, 2009 (as amended and restated and as may be

further amended and restated from time to time in accordance with its terms, the "**Purchaser Escrow Agreement**") pursuant to which Wells Fargo has been appointed as escrow agent to receive certain funds from the Purchaser and to hold, administer and deliver such funds as contemplated by the Purchaser Escrow Agreement;

WHEREAS, on July 20, 2009, pursuant to Section 2.2.5 of the ASSA, Purchaser delivered to Wells Fargo cash in an amount of USD 100,000,000 (the "**Good Faith Deposit**");

WHEREAS, it is contemplated under Section 2.3.2 (b) of the ASSA that, at Closing, NNL, NNI and NNUK shall cause Wells Fargo to deliver to the Distribution Agent all amounts of cash held by Wells Fargo in the Good Faith Deposit Escrow Account (including actual earnings thereon) by wire transfer in immediately available funds to an account designated by the Distribution Agent;

WHEREAS, it is contemplated under Section 2.3.2(a)(ii) of the ASSA that, at Closing, the Purchaser will deliver or cause to be delivered to Wells Fargo by wire transfer in immediately available funds an aggregate amount equal to the sum of: (i) the Purchase Price Adjustment Escrow Amount, (ii) the Holdback Escrow Amount, (iii) the French Tax Escrow Amount and (iv) if applicable, the EMEA Employment Escrow Amount (such sum, the "Escrow Amount");

WHEREAS, the parties hereto acknowledge that the Sellers have not elected to exercise the Asset Sale Election contemplated by Section 10.20(a) of the ASSA and that therefore the –6 Purchase Price Adjustment and the Estimated –6 Liability Escrow Amount contemplated by Sections 10.20(b) and 10.20(c) respectively are not applicable.

WHEREAS, the parties hereto acknowledge that, as of the date hereof, no Delay Fee is due and no Delay Fee Payments have been made under Section 2.2.1(b) or 2.2.1(c).

WHEREAS, it is contemplated under Section 2.3.2 of the ASSA that, at Closing, the Purchaser will deliver or cause to be delivered to the Distribution Agent as consideration for the transactions contemplated by the ASSA and EMEA ASA an amount (the "**Deposited Purchase Price**"), by wire transfer in immediately available funds, equal to (a) the Estimated Purchase Price minus (b) the sum of (i) the amount of cash in the Good Faith Deposit Escrow Account (including any actual earnings thereon), (ii) the Escrow Amount, (iii) the amounts to be paid directly by an affiliate of the Purchaser to Nortel Networks (India) Private Limited and Nortel Technology Excellence Centre Private Limited (the amounts referred to in this clause (b)(iii) collectively referred to as the "**Nortel India Allocation**") and (iv) the amounts to be paid directly by an affiliate of the Purchaser to Nortel Networks (China) Limited and Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd. (the amounts referred to in this clause (b)(iv) collectively referred to as the "**Nortel China Allocation**").

WHEREAS, the Closing is expected to occur on December 18, 2009 and the Depositors desire to establish an account prior to Closing for the escrow of the Deposited Purchase Price and the amount of cash in the Good Faith Deposit Escrow Account (including any actual earnings thereon) pursuant to this Agreement, it being understood by the Depositors that this Agreement is subject to amendment in accordance with Paragraph 15(a) to, among other things, reflect further agreement among the Depositors as to the terms of the escrow of the

3

Deposited Purchase Price the amount of cash in the Good Faith Deposit Escrow Account (including any actual earnings thereon);

WHEREAS, the Depositors and certain other parties (together, the "**IFSA Parties**") have entered into that certain agreement to address interim funding and the settlement of certain matters dated June 9, 2009 (the "**IFSA**"), pursuant to clause 12.c and clause 12.g of which, the IFSA Parties have agreed to negotiate in good faith a protocol for resolving disputes concerning the allocation of sale proceeds from sale transactions (the "**Allocation Protocol**"), which shall provide binding procedures for the allocation of sales proceeds where the IFSA Parties are otherwise unable to reach agreement;

WHEREAS, this Agreement will be approved by the Canadian Court and the U.S. Bankruptcy Court prior to Closing and the Depositors will, promptly after receiving such approval, provide the Distribution Agent with evidence of such approvals; and

WHEREAS, the Depositors wish to appoint JPMorgan as escrow and distribution agent and JPMorgan is willing to accept such appointment and to act as escrow and distribution agent, in each case upon the terms and conditions of the Agreement;

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby irrevocably acknowledged, the Depositors and the Distribution Agent hereto agree as follows:

1.    Appointment of Distribution Agent.  The Depositors hereby jointly nominate, constitute and appoint the Distribution Agent as escrow and distribution agent to hold the Escrow Funds (as defined below) in the Distribution Account (as defined below) upon the terms and conditions set forth herein.  The Distribution Agent hereby accepts such appointment and agrees that deposits to, and disbursements from, the Distribution Account, or applicable portions thereof, shall only be made in accordance with the terms and conditions of this Agreement.  The Distribution Agent hereby represents to each of the Depositors that it has the corporate power and legal authority to execute this Agreement and to perform its obligations hereunder.  The Depositors and the Distribution Agent agree that any action specified in this Agreement as to be taken by all of the Depositors, acting jointly, when taken by all of the Depositors, shall be binding upon each of the Depositors and the Distribution Agent shall be entitled to act and rely upon any action taken by all of the Depositors, acting jointly, and to the extent required hereunder, the Estate Fiduciaries, as provided in this Agreement.

2.    Deposit of Escrow Property.  Funds shall be deposited in the Distribution Account (as defined below) as follows:

(a)    At the Closing, the Sellers shall instruct the Purchaser to deposit the Deposited Purchase Price with the Distribution Agent, in immediately available funds, in an account (the "**Distribution Account**") established with the Distribution Agent being account number [•];

4

(b)   At the Closing, NNL, NNI and NNUK shall cause Wells Fargo to deposit all amounts of cash held by Wells Fargo in the Good Faith Deposit Escrow Account (including actual earnings thereon) with the Distribution Agent, in immediately available funds, in the Distribution Account;

(c)   After the Closing, the Sellers shall instruct the Purchaser to deposit any purchase price adjustments to be paid to the Sellers under the ASSA with the Distribution Agent in the Distribution Account; and

(d)   After the Closing, NNL, NNI and NNUK shall instruct Wells Fargo to deposit any of the Escrow Amounts (including any earnings thereon) to be released to the Sellers and the EMEA Sellers pursuant to the Purchaser Escrow Agreement with the Distribution Agent in the Distribution Account.

(all funds deposited in accordance with sub-paragraphs (a)-(d) above collectively, the "**Escrow Property**").   The Escrow Property, plus all interest and other income thereon received by Distribution Agent, less any funds distributed or paid in accordance with this Agreement, is collectively referred to herein as "**Escrow Funds**").   The Distribution Agent shall provide written confirmation to the Depositors, and the Estate Fiduciaries and the Bondholder Group upon its receipt of any Escrow Property from the Purchaser, any Designated Purchaser, Wells Fargo or otherwise.   Prior to the deposits in accordance with sub-paragraphs (a)-(d) above, there shall be no other funds in the Distribution Account.   The Escrow Property shall at all times, until disbursement as provided herein, remain segregated and separately identified by the Distribution Agent and shall not be commingled with the other assets held by the Distribution Agent.   Each of the Depositors, the Estate Fiduciaries and the Bondholder Group acknowledges and consents to the direct payment of the Nortel India Allocation to Nortel Networks (India) Private Limited and Nortel Technology Excellence Centre Private Limited, as well as the direct payment of the China India Allocation to Nortel Networks (China) Limited and Nortel Networks Telecommunications (Shanghai) Co., Ltd.

3.   Investment of Escrow Funds.

(a)   Until otherwise jointly directed by all of the Depositors and the Estate Fiduciaries, the Distribution Agent shall invest the Escrow Funds in Permitted Investments only. "**Permitted Investments**" means (1) United States Treasury obligations with maturities not in excess of one year, (2) money market funds invested solely in such United States Treasury obligations and (3) the JPMorgan Chase Bank Collateralized Money Market Deposit Account; provided, however, that in no event shall Permitted Investments include investments that are not eligible for the portfolio interest exemption or other similar exception to U.S. withholding tax. The Distribution Agent shall invest the Escrow Funds on the date of deposit so long as the relevant funds are received on or before 11:00 a.m. New York City time.   Any written notice to remit payment received by the Distribution Agent after 11:00 a.m. New York City time shall be treated as if received on the following Business Day.   For purposes of this Agreement, "**Business Day**" shall mean any day other than a Saturday, Sunday or any other day on which the Distribution Agent located at the notice address set forth on Schedule C is authorized or required by law or executive order to remain closed.   In the absence of joint written instruction from the Depositors and the Estate Fiduciaries, the Distribution Agent will invest the Escrow Funds in item (3) referenced above.   The parties recognize and agree that the Distribution Agent will not

provide supervision, recommendations or advice relating to either the investment of the Escrow Funds or the purchase, sale, retention or other disposition of any investment described herein. The Distribution Agent shall not have any liability for any loss sustained as a result of any investment in an investment made pursuant to the terms of this Agreement or as a result of any liquidation of any investment prior to its maturity or for the failure of the Depositors to give the Distribution Agent instructions to invest or reinvest the Escrow Funds.

(b)     Any investment direction contained herein may be executed through an affiliated broker-dealer of the Distribution Agent, which shall be entitled to such affiliated broker-dealer's usual and customary fee.  Neither the Distribution Agent nor any of its affiliates assume any duty or liability for monitoring the investment rating of the investments.

(c)     The Distribution Agent shall have the right to liquidate investments as necessary to distribute Escrow Funds pursuant to Paragraph 5.

4.     Ownership of Escrow Funds; Taxes.

(a)     The Escrow Funds at all times are and shall be the exclusive property of the Depositors.  Interest or other income earned on or with respect to the Escrow Funds shall, as of the end of each calendar year and to the extent required by law, be reported by the Distribution Agent on Form 1099 or Form 1042-S as the income of Depositors or their affiliates, based upon the disbursement of the Escrow Funds to Depositors or their affiliates pursuant to Paragraph 5 if such income was disbursed during such calendar year or, with respect to any Escrow Funds not disbursed during such calendar year, based upon each Depositor's pro rata share of such income, with each Depositor's pro rata share being deemed to be equal to such Depositor's interest allocation percentage as set forth on Exhibit 1.  The Distribution Agent acknowledges and agrees that the interest percentages set forth on Exhibit 1 are not indicative of the final allocation of the Escrow Funds and, accordingly, the Distribution Agent agrees to amend Form 1099 and Form 1042-S upon a joint written request from the Depositors and the Estate Fiduciaries, which request shall set forth the re-allocation of all interest and any other earnings on Escrow Funds previously reported on Form 1099 and Form 1042-S; provided, however, that the Distribution Agent shall be permitted to rely at all times upon the interest percentages then set forth on Exhibit 1 delivered to the Distribution Agent and the Distribution Agent shall be entitled to act upon the allocations and interest percentages as then set forth in Exhibit 1 without liability to any Depositor, notwithstanding any subsequent amendment to Exhibit 1 setting forth any new allocation or interest percentage.  Any other tax returns required to be filed will be prepared and filed by the Depositors with the IRS and any other taxing authority as required by law, including but not limited to, any applicable reporting or withholding pursuant to the Foreign Investment in Real Property Tax Act ("**FIRPTA**").  The Depositors acknowledge and agree that the Distribution Agent shall have no responsibility for the preparation and/or filing of any tax return or any applicable FIRPTA reporting or withholding with respect to the Escrow Funds or any income earned by the Escrow Funds.  Each Depositor further acknowledges and agrees that any taxes payable from the income earned by such Depositor on the investment of any sums held in the Escrow Funds shall be paid by such Depositor.  All proceeds of the Escrow Funds shall be retained in the Distribution Account and reinvested from time to time by the Distribution Agent as provided in this Agreement.  The Distribution Agent shall withhold any taxes required by law, including but not limited to required withholding in the absence of proper tax documentation, and shall remit such taxes to

the appropriate authorities.  The parties hereby agree and acknowledge that the Distribution Agent has no ownership interest in the Escrow Funds but is serving solely as escrow holder having only possession thereof.  This Paragraph 4 shall survive notwithstanding any termination of this Agreement or the resignation of the Distribution Agent.  Each Depositor will provide the Distribution Agent with the appropriate form W-9 or W-8 either (x) if any of the Escrow Funds are to be disbursed to such Depositor prior to December 31, 2009, as a condition to such Depositor's receipt of such Escrow Funds from the Distribution Agent, prior to the Distribution Agent making such disbursement hereunder or (y) if none of the Escrow Funds are to be disbursed to such Depositor prior to December 31, 2009, on or before December 31, 2009.  If W-8 or W-9 forms, validated by the Distribution Agent, have not been provided by all of the Depositors prior to December 31, 2009 the Distribution Agent shall report taxes on a disbursement basis in the year they are disbursed.

(b)      To the extent that the Distribution Agent becomes liable for the payment of any taxes in respect of income derived from the investment of the Escrow Funds, the Distribution Agent shall satisfy such liability to the extent possible from the Escrow Funds.  The Depositors shall, jointly and severally, indemnify, defend and hold the Distribution Agent harmless from and against any tax, late payment, interest, penalty or other cost or expense that may be assessed against the Distribution Agent on or with respect to the Escrow Funds and the investment thereof unless such tax, late payment, interest, penalty or other expense was caused by the gross negligence or willful misconduct of the Distribution Agent.  Any indemnification payments arising from the indemnification provided by this Paragraph 4(b) shall be initially satisfied out of the Escrow Funds to the extent available.  As among themselves, the Depositors agree that the costs of any such indemnification shall be borne on a pro rata basis by the Depositors in accordance with the percentage of the Escrow Funds allocable to each of the Depositors pursuant to the Allocation Protocol or a letter of direction as described in clause i.(i) of Paragraph 5(a), and any Depositor or any of its Respective Affiliates paying in excess of its pro rata share of the cost of such indemnification shall have rights of contribution vis-à-vis any Depositor that has paid less than its pro rata share of such costs either directly to the Distribution Agent or by payment to another Depositor pursuant to this sentence; provided, that if the costs of any such indemnification arise from a breach of this Agreement or other fault of a Depositor, the Depositor(s) so in breach or at fault shall bear the cost of such indemnification and any Depositor paying in excess of its share of the cost of such indemnification, after taking into account the breach or fault of the other Depositors, shall have rights of contribution vis-à-vis any Depositor that has paid less than its share of such costs either directly to the Distribution Agent or by payment to another Depositor.  The indemnification provided by this Paragraph 4(b) is in addition to the indemnification provided in Paragraph 9 and shall survive the resignation or removal of Distribution Agent and the termination of this Agreement.

5.      Distribution of Escrow Funds.

(a)      The Depositors, the Estate Fiduciaries and the Distribution Agent hereby agree that, until the termination of the escrow established pursuant to this Agreement, the Distribution Agent shall hold the Escrow Funds and not disburse any amounts from the Distribution Account except in accordance with the following terms and conditions:

i.      The Distribution Agent shall disburse to any person amounts from the Escrow Funds if and as so instructed pursuant to (i) a letter of direction jointly executed by

7

the Depositors and the Estate Fiduciaries, a copy of which shall be provided by the Depositors to the Bondholder Group or (ii) where the Depositors have entered into the Allocation Protocol in accordance with clause 12 of the IFSA (the existence of the Allocation Protocol and the identity of the relevant dispute resolver(s) shall be set forth in a written notice jointly executed by the Depositors and delivered to the Distribution Agent), any Depositor's delivery to the Distribution Agent, with copies to the other Depositors, the Estate Fiduciaries and the Bondholder Group, of a duly authenticated copy of the binding decision made by the relevant dispute resolver(s) under that protocol regarding the allocation of the sales proceeds relating to the Enterprise Solutions business of the Depositors (a "**Decision**") which is not stayed or subject to appeal, accompanied by a certificate from such Depositor certifying as to the finality of the Decision; provided, however, that any amounts owing under Paragraph 4(b) or Paragraph 9 by any Depositor (a "**Debtor Depositor**") to any other Depositor at the time of an intended distribution from the Escrow Account shall be paid out of the share of the Escrow Funds otherwise payable to such Debtor Depositor and an amount equal to the Lazard Fees (as defined below) shall be held back from any such distribution until such time as the final allocation contemplated by clause (y) of the proviso to Paragraph 5(b) is determined by the Depositors and the Estate Fiduciaries and such parties notify the Distribution Agent of such determination, acting promptly and in good faith.

        ii.    The Depositors understand and agree that no payments or reimbursements made pursuant to Section 6.1 of the ASSA in respect of Transfer Taxes or Section 11.6 of the EMEA ASA in respect of VAT shall constitute any part of the Deposited Purchase Price, the amount transferred from the Good Faith Deposit Escrow Account (including any actual earnings thereon) or the Escrow Funds, or shall be required to be paid by the Purchaser into the Distribution Account. In the event, however, that Purchaser or its affiliates make any payments with respect to Transfer Taxes or VAT, as applicable, that are payable to or intended for the benefit of one or more Sellers or any affiliate or agent thereof pursuant to Section 6.1 of the ASSA or one or more EMEA Sellers or any affiliate or agent thereof pursuant to Section 11.6 of the EMEA ASA, but which are deposited into the Distribution Account (any such payment, "**Misdirected Tax Payment**"), then the applicable Depositor(s) shall have the right to request the release of such Misdirected Tax Payment by providing the Distribution Agent with a letter of direction executed by an Authorized Representative of such Depositor identifying the amount that is represented to be a Misdirected Tax Payment(s) and further directing the release of such Misdirected Tax Payment to the appropriate beneficiary in accordance with Paragraph 12 below. The requesting Depositor(s) shall (A) send a copy of such letter of direction to each of the other Depositors, the Estate Fiduciaries and the Bondholder Group at the same time as such letter is sent to the Distribution Agent and (B) attach thereto (i) supporting documentation evidencing the amount of the Transfer Taxes or VAT, as applicable, payable (it being understood that the Distribution Agent shall have no responsibility for verifying the accuracy, delivery or sufficiency of such supporting documentation) and (ii) a certification of an Authorized Representative of such Depositor that the amount requested by such Depositor represents amounts deposited into escrow that are payable to or intended for the benefit of such Depositor by the Purchaser or its affiliates with respect to Transfer Taxes pursuant to the ASSA or VAT pursuant to the EMEA ASA, as applicable. The Distribution Agent shall on or as soon as reasonably practicable following the tenth (10th) day following receipt of such letter of direction, disburse to such Depositor the amounts requested therein; provided, however, that if the Distribution Agent receives a notice of objection from one or more of the Depositors or an

Estate Fiduciary prior to making such disbursement (but in no event later than 3:00 p.m. EST on such release date), the Distribution Agent shall not make such disbursement until the Distribution Agent either (x) receives an order of a court of competent jurisdiction (as provided in <u>Paragraph 21</u> below), which is not stayed or subject to appeal, instructing it to make such distribution or (y) the objecting Depositor(s) and/or Estate Fiduciary(ies) provide written notice to the Distribution Agent withdrawing such objection.  Subject to the proviso to the preceding sentence, the Distribution Agent shall be entitled to act upon any such written letter of direction even if not countersigned by one or more of the other Depositors and/or Estate Fiduciary(ies).

        iii.     The Distribution Agent shall have no responsibility or obligation for investigating or determining the validity or sufficiency of any matter asserted in a letter of direction or of any pending claim for entitlement to release of funds from the Distribution Account. The Distribution Agent shall have the right to withhold an amount equal to the amount due and owing to the Distribution Agent, plus any reasonable costs and expenses incurred by Distribution Agent in accordance with the terms of this Agreement in connection with the termination of the Distribution Account.

        iv.     No Depositor shall submit to the Distribution Agent a certificate that falsely certifies to the finality of a Decision.

        v.     Any request for a distribution pursuant to this <u>Paragraph 5(a)</u> shall be accompanied by a completed <u>Schedule B</u> with respect to the Depositors participating in such distribution, unless a completed <u>Schedule B</u> with respect to such Depositor has previously been provided to the Distribution Agent (in which case the <u>Schedule B</u> to be provided to the Distribution Agent need only contain the requisite information with respect to the Depositors as to whom no previous <u>Schedule B</u> has been provided to the Distribution Agent).  The Depositors shall comply with any request from another Depositor for information necessary for inclusion in <u>Schedule B</u>.

        (b)     The Depositors, the Estate Fiduciaries and the Distribution Agent hereby agree that they shall cause the Distribution Agent to disburse amounts from the Distribution Account in accordance with the procedures set forth in <u>Paragraph 5(a)</u> to satisfy (i) any obligations to pay any purchase price adjustments to be paid by the Sellers and/or the EMEA Sellers under Section 2.2.3.2(g) of the ASSA to the extent not paid from funds held under the Purchaser Escrow Agreement pursuant to 2.2.4(c) of the ASSA, (ii) any payment of any fees paid or payable to Lazard Frères & Co. in connection with the sale of the Business as approved by the U.S. Bankruptcy Court and Canadian Court (the "**Lazard Fees**"), and (iii) any payment of any retainer paid or payable to one or more dispute resolvers appointed pursuant to the Allocation Protocol with respect to the allocation of the sales proceeds relating to the Business; provided, however, that: [Language regarding adjustment among the Depositors regarding final allocation of the Escrow Funds to be provided.]

        6.     <u>Termination of Distribution Account</u>.  The Agreement shall terminate upon the distribution of all Escrow Funds from the Distribution Account established hereunder in accordance with <u>Paragraph 5</u> hereof, subject to the survival of provisions which expressly survive the termination of this Agreement; <u>provided</u>, <u>however</u>, that this Agreement shall not terminate prior to all purchase price adjustment amounts owing to the Sellers under the terms of the

ASSA have been deposited in the Distribution Account by the Purchaser in accordance herewith and subsequently distributed hereunder.

7.  <u>Method of Payment</u>.  Any payments to be made hereunder shall be made by wire transfer in immediately available funds to the account of such party designated on <u>Schedule B</u> annexed hereto (collectively, the "**Standing Settlement Instructions**").  Any Depositor shall have the right, from time to time, to provide written notice to the Distribution Agent and the other Depositors updating its Standing Settlement Instructions, and the Distribution Agent shall thereafter use such revised Standing Settlement Instructions for purposes of any subsequent distributions to such Depositor pursuant to <u>Paragraph 5</u> until such Standing Settlement Instructions have been further updated pursuant to this <u>Paragraph 7</u>.

The Depositors acknowledge that the Distribution Agent may rely upon all identifying information set forth in the Standing Settlement Instructions. The Distribution Agent and the Depositors agree that such Standing Settlement Instructions shall be effective as the funds transfer instructions of the Depositors, without requiring a verifying callback, whether or not authorized, if the Distribution Agent has previously authenticated such Standing Settlement Instructions with respect to such Depositor.  The Depositors acknowledge that such Standing Settlement Instructions are a security procedure and are commercially reasonable.

8.  <u>Monthly Reports</u>.  The Distribution Agent shall, promptly following the end of each calendar month, provide monthly account statements to the Depositors with respect to the Distribution Account, with copies to the Estate Fiduciaries and the Bondholder Group.

9.  <u>Liability of Distribution Agent</u>.  The Distribution Agent's sole liability hereunder shall be to hold and invest the Escrow Funds and any moneys or other properties received with respect thereto, to make payments and distributions therefrom in accordance with the terms of this Agreement, and otherwise to discharge its obligations hereunder.  It shall be under no obligation to institute or defend any action, suit or legal proceeding in connection herewith, or to take any other action likely to involve it in expense unless first indemnified to its satisfaction by the party or parties who desire that it undertake such action. The Distribution Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys (and shall be liable only for the careful selection of any such agent or attorney) and may consult with counsel, accountants and other skilled persons to be selected and retained by it.  The Distribution Agent shall not be liable for anything done, suffered or omitted by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons.  The Distribution Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent jurisdiction (as set forth in <u>Paragraph 21</u> below) determines that the Distribution Agent's gross negligence or willful misconduct was the cause of any loss to any Depositor.  The Distribution Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and reasonably believed by it to be genuine and to have been signed or presented by the proper party or parties without inquiry

10

and without requiring substantiating evidence of any kind. The Distribution Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Distribution Agent shall have no duty to solicit any payments which may be due to it or in connection with the Distribution Account, including, without limitation, the Escrow Property, nor shall the Distribution Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder. The Distribution Agent shall have no duty or obligation to make any calculations of any kind hereunder. In the event that the Distribution Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by the parties pursuant to Paragraph 5(a) which eliminates such ambiguity or uncertainty to the satisfaction of the Distribution Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction (as set forth in Paragraph 21 below).

Anything in this Agreement to the contrary notwithstanding, in no event shall the Distribution Agent be liable for special, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Distribution Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

If any dispute should arise with respect to the payment or ownership or right of possession of the Escrow Funds, or any part thereof, at any time, that cannot be settled under other provisions hereof, the Distribution Agent is authorized to retain in its possession, without liability to anyone, all or any part of the Escrow Funds, as applicable, or the proceeds from any sale thereof until a distribution is requested in accordance with Paragraph 5(a).

The Depositors shall, jointly and severally, indemnify and hold harmless the Distribution Agent and its affiliates and their respective successors, assigns, directors, agents and employees (the "**Indemnitees**") from all losses, costs, damages, claims, liabilities, penalties, judgments, settlements, litigation, investigations, and expenses (including, without limitation, the reasonable fees and expenses of outside counsel) (collectively, "**Losses**") arising out of or in connection with (a) the Distribution Agent's execution and performance of this Agreement, tax reporting or withholding, the enforcement by the Distribution Agent of any of its rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the Indemnitee, except, in the case of any Indemnitee, to the extent that such Losses are finally adjudicated by a court of competent jurisdiction (as set forth in Paragraph 21 below) to have been caused by the gross negligence or willful misconduct of such Indemnitee, or (b) its following any instructions or directions, whether joint or singular, from the parties, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof. The parties hereto acknowledge that the foregoing indemnities shall survive the resignation, replacement or removal of the Distribution Agent or the termination of this Agreement. Any indemnity payments to the Distribution Agent arising from the indemnification provided by this Paragraph 9 shall be initially satisfied from the Escrow Funds to the extent

available.  As among themselves, the Depositors agree that the costs of any such indemnification shall be borne on a pro rata basis by the Depositors in accordance with the percentage of the Escrow Funds allocable to each of the Depositors pursuant to the Allocation Protocol or a letter of direction as described in clause i.(i) of Paragraph 5(a), and any Depositor or any of their Respective Affiliates paying in excess of its pro rata share of the cost of such indemnification shall have rights of contribution vis-à-vis any Depositor that has paid less than its pro rata share of such costs either directly to the Distribution Agent or by payment to another Depositor pursuant to this sentence; provided, that if the costs of any such indemnification arise from a breach of this Agreement or other fault of a Depositor, the Depositor(s) so in breach or at fault shall bear the cost of such indemnification and any Depositor paying in excess of its share of the cost of such indemnification, after taking into account the breach or fault of the other Depositors, shall have rights of contribution vis-à-vis any Depositor that has paid less than its share of such costs either directly to the Distribution Agent or by payment to another Depositor.  The indemnification provided by this Paragraph 9 is in addition to the indemnification provided in Paragraph 4(b) and shall survive the resignation or removal of the Distribution Agent and the termination of this Agreement.

The duties and responsibilities of the Distribution Agent hereunder shall be determined solely by the express provisions of this Agreement, which shall be deemed purely ministerial in nature, and no other or further duties or responsibilities shall be implied.  The Distribution Agent shall not have any liability under, nor duty to inquire into, the terms and provisions of any agreement or instructions, including the ASSA, the EMEA ASA, the IFSA and the Allocation Protocol, other than as outlined in this Agreement, nor shall the Distribution Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Distribution Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement.  In the event of any conflict between the terms and provisions of this Agreement, those of the ASSA, the EMEA ASA, any schedule or exhibit attached to the ASSA or EMEA ASA, the IFSA, the Allocation Protocol, or any other agreement among Depositors, or any of them, the terms and conditions of this Agreement shall control solely to the extent such conflict is with respect to the rights, duties, obligations and liabilities of the Distribution Agent.

10.    Compensation of Distribution Agent.  The Depositors agree to pay the Distribution Agent a fee in the amount of USD2,500 in the aggregate on the date hereof and on the anniversary of the date hereof each year thereafter as full compensation for its services hereunder; provided, however, that the Depositors further agree to reimburse the Distribution Agent all reasonable, documented out-of-pocket costs and out-of-pocket expenses, including reasonable attorneys' fees, suffered or incurred by the Distribution Agent in connection with the performance of its duties and obligations hereunder, including but not limited to any suit in interpleader brought by the Distribution Agent (which shall be brought only in a court of competent jurisdiction (as set forth in Paragraph 21 below)).  The Distribution Agent shall collect amounts due to it under this Paragraph 10 from the Distribution Account.

11.    Resignation or Removal of Distribution Agent.  The Distribution Agent may resign as such following the giving of thirty (30) days' prior written

notice to the other parties hereto and upon selection of a successor escrow agent pursuant to the provisions of this Agreement. Similarly, the Distribution Agent may be removed and replaced following the giving of thirty (30) days' prior written notice to the Distribution Agent by the Depositors and the Estate Fiduciaries. In either event the Distribution Agent shall then deliver the balance of the Escrow Funds then in its possession to a successor escrow agent as shall be appointed by the Depositors and the Estate Fiduciaries as evidenced by a written notice sent to the Distribution Agent and signed by the Depositors and the Estate Fiduciaries.

If the Depositors and the Estate Fiduciaries are unable to agree upon a successor or shall have failed to appoint a successor prior to the expiration of thirty (30) days following the date of notice of resignation or removal, the then-acting escrow agent may petition any court of competent jurisdiction (as set forth in Paragraph 21 below) for the appointment of a successor escrow agent or otherwise appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. For the avoidance of doubt, the parties acknowledge that under no circumstances shall any party be entitled to obtain a distribution from the Distribution Account as a result of the resignation of the Distribution Agent.

The successor escrow agent shall be a bank or trust company having its principal executive office in the United States and assets in excess of USD5,000,000,000.

Upon acknowledgement by any successor escrow agent of the receipt of the then-remaining balance of the Escrow Funds, the then-acting escrow agent shall be fully released and relieved of all duties, responsibilities and obligations under this Agreement.

Any corporation into which the Distribution Agent in its individual capacity may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which the Distribution Agent in its individual capacity shall be a party, or any corporation to which substantially all the corporate trust business of the Distribution Agent in its individual capacity may be transferred, shall be the Distribution Agent under this Agreement without further act.

12.    Notices. All communications hereunder shall be in writing and shall be deemed to be duly given and received: (i) upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile; (ii) on the next Business Day if sent by overnight courier; or (iii) four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth in Schedule C or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

Notwithstanding the above, in the case of communications delivered to the Distribution Agent pursuant to (i), (ii) or (iii) of this Paragraph 12, such communications shall be deemed to have been given on the date received by an officer of the Distribution Agent or any employee of the Distribution Agent who reports directly to any such officer at the above-referenced office. In the event that the Distribution Agent, in its sole discretion, shall determine

13

that an emergency exists, the Distribution Agent may use such other means of communication as the Distribution Agent deems appropriate.

In the event wire transfer instructions are given (other than in writing at the time of execution of this Agreement), whether in writing, by facsimile or otherwise, the Distribution Agent is authorized to seek confirmation of such instructions by telephone call-back to the person or persons designated on <u>Schedule D</u> hereto (each an "**Authorized Representative**" of the applicable Depositor), and the Distribution Agent may rely upon the confirmations of anyone purporting to be the person or persons so designated. The persons and telephone numbers for call-backs may be changed only in writing actually received and acknowledged by the Distribution Agent, it being understood that each Depositor shall have the right to replace its Authorized Representative from time to time by providing written notice to the Distribution Agent, the other Depositors, the Estate Fiduciaries and the Bondholder Group or by providing a copy of a court order of a court of competent jurisdiction (as provided in <u>Paragraph 21</u> below) to the Distribution Agent designating a successor Authorized Representative. The Depositors acknowledge that such security procedure is commercially reasonable.

If, at any time prior to the termination of this Agreement, any of the Estate Fiduciaries is discharged, removed or dissolved, whether pursuant to an approved plan of reorganization or liquidation by order of the Canadian Court or U.S. Bankruptcy Court or otherwise, any Depositor or Estate Fiduciary may present to the Distribution Agent evidence of such discharge, removal or dissolution in the form of a court order or other officially certified document which upon receipt by the Distribution Agent shall constitute an effective amendment to this Agreement, and such Estate Fiduciary by operation of this Agreement, as amended, shall cease to be such for all purposes of this Agreement and the consent of such removed or dissolved Estate Fiduciary shall no longer be required for any purposes hereunder. If such discharge, removal or dissolution provides for a successor to the duties and responsibilities of such removed or dissolved Estate Fiduciary, or a successor to the same or substantially similar duties and responsibilities of such removed or dissolved Estate Fiduciary (including, without limitation, a trustee in bankruptcy) is otherwise appointed, then the preceding sentence shall be of no effect with respect to such successor entity, the rights and responsibilities of such Estate Fiduciary hereunder shall pass automatically to such successor entity and such successor entity shall be deemed to be a party to this Agreement as if it were a signatory hereto.

If, at any time prior to the termination of this Agreement, any of the Depositors is liquidated or dissolved, whether pursuant to an approved plan of reorganization or liquidation by order of the Canadian Court or U.S. Bankruptcy Court (or, in the case of the EMEA Filed Entities, such order of a court of competent jurisdiction or by operation of law) or otherwise, any Depositor, or Estate Fiduciary (as the case may be) shall present to the Distribution Agent evidence of such dissolution or liquidation in the form of a court order or other officially certified document which upon receipt by the Distribution Agent shall constitute an effective amendment to this Agreement, and such dissolved or liquidated Depositor by operation of this Agreement, as so amended, shall cease to be such for all purposes of this Agreement, as amended, and the consent of such dissolved or liquidated Depositor shall no longer be required for any purposes hereunder. If such dissolution or liquidation provides for a successor to such dissolved or liquidated Depositor, then such rights and responsibilities shall pass automatically to such successor entity.

14

The Depositors represent, warrant and covenant that each document, notice, instruction or request provided by such party to the Distribution Agent shall comply with applicable laws and regulations. Where, however, the conflicting provisions of any such applicable law may be waived, they are hereby irrevocably waived by the Depositors to the fullest extent permitted by law, to the end that this Agreement shall be enforced as written.

13. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but such counterparts shall constitute one and the same agreement. Facsimile copies may be deemed originals for the purpose of this Agreement.

14. <u>Paragraph Headings</u>. The paragraph headings of this Agreement are for convenience of reference only and shall not be deemed to limit or affect any of the provisions hereof.

15. <u>Amendments; No Waivers</u>.

(a) Except for the resignation, removal or replacement of an Estate Fiduciary as set forth in <u>Paragraph 12</u> or the liquidation or dissolution of a Depositor as set forth in <u>Paragraph 12</u>, any provision of this Agreement may be waived or amended if, and only if, such amendment or waiver is in writing and is signed by the Depositors, the Estate Fiduciaries and the Distribution Agent (with a copy thereof to the Bondholder Group) and, if prior to the entry of a final decree closing the Bankruptcy Cases, such amendment or waiver is approved by both the U.S. Bankruptcy Court and the Canadian Court; <u>provided</u>, <u>however</u>, that (i) court approval shall not be required of any applicable court (whether the U.S. Bankruptcy Court or the Canadian Court) if a final decree closing the Bankruptcy Cases pending before such court shall have been entered by such court and (ii) court approval shall not be required of any court if final decrees terminating the Bankruptcy Cases shall have been entered by the U.S. Bankruptcy Court and the Canadian Court.

(c) No failure by any party hereto to insist upon the strict performance of any covenant, duty, agreement or condition of this Agreement, or to exercise any right or remedy consequent upon a breach hereof, shall constitute a waiver of any such breach or any other covenant, duty, agreement or condition hereof.

16. <u>Entire Agreement; No Third Party Beneficiaries</u>. This Agreement (including any exhibits, schedules and amendments hereto) and (solely with respect to the Depositors that are parties thereto) the ASSA, the EMEA ASA, the IFSA, the ALT and the Allocation Protocol to be entered into pursuant thereto (a) constitute the entire Agreement and understandings of the parties hereto and supersedes all prior agreements and understandings, both written and oral, among the parties hereto with respect to the subject matter hereof and (b) is not intended to confer upon any other Person any rights or remedies hereunder; <u>provided</u>, <u>however</u>, that the Joint Administrators and the Joint Israeli Administrators shall be entitled to enforce and take the benefit of <u>Paragraph 20</u> hereof.

17.  <u>Governing Law</u>.  Subject to <u>Paragraph 20</u>, this Agreement shall be governed by and construed in accordance with the Laws of the State of New York (without regard to the choice of law provisions thereof).

18.  <u>Account Opening Information</u>.  To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.  When an account is opened, the Distribution Agent will ask for information that will allow it to identify relevant parties.

19.  <u>Severability</u>.  If any provision of this Agreement is determined by a court of competent jurisdiction (as set forth in <u>Paragraph 21</u> below) to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

20.  <u>Exclusion of Liability for the Joint Administrators and Joint Israeli Administrators</u>.

(a)  Subject to Paragraph 20(b) below, the parties hereto agree that the Joint Administrators and the Joint Israeli Administrators have negotiated this Agreement both in their capacities as administrators of the EMEA Filed Entities for and on behalf of the EMEA Filed Entities and of the Israeli Companies for and on behalf of the Israeli Companies, respectively, and that none of the Joint Administrators, the Joint Israeli Administrators or their respective firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any EMEA Filed Entity or any Israeli Company, as applicable, to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations whether such liability would arise under Paragraph 99(4) of Schedule B1 to the Insolvency Act, the Israeli Companies Law or otherwise howsoever.

(b)  Nothing in this Section 20 or any other provision of this Agreement shall prevent the Sellers or the Distribution Agent from bringing any action against the EMEA Filed Entities, the Joint Administrators or the Joint Israeli Administrators for fraud.

(c)  Notwithstanding anything in Paragraph 21, any claim, action or proceeding against the Joint Administrators or the Israeli Joint Administrators in their personal capacities (and not as agents for any EMEA Filed Entities or the Israeli Companies, respectively) under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

21.  <u>JURISDICTION</u>.  SUBJECT TO <u>PARAGRAPH 20</u>, EACH PARTY HEREBY IRREVOCABLY SUBMITS TO AND ACCEPTS FOR ITSELF AND ITS PROPERTIES, GENERALLY AND UNCONDITIONALLY TO THE EXCLUSIVE JURISDICTION OF AND SERVICE OF PROCESS PURSUANT TO THE RULES OF BOTH (I) THE U.S. BANKRUPTCY

16

COURT AND THE CANADIAN COURT, IF BROUGHT PRIOR TO THE ENTRY OF A FINAL DECREE CLOSING THE BANKRUPTCY CASES INVOLVING THE RELEVANT DEPOSITORS PENDING BEFORE SUCH COURTS, INCLUDING THE AMENDED CROSS-BORDER PROTOCOL APPROVED BY THE U.S. BANKRUPTCY COURT ON JUNE 29, 2009, AND BY THE CANADIAN COURT ON JUNE 29, 2009, AND (II) THE FEDERAL COURTS IN THE SOUTHERN DISTRICT OF NEW YORK AND THE STATE COURTS OF THE STATE OF NEW YORK, COUNTY OF MANHATTAN (COLLECTIVELY, THE "NEW YORK COURTS"), IF BROUGHT AFTER ENTRY OF SUCH FINAL DECREE CLOSING SUCH BANKRUPTCY CASES, WAIVES ANY DEFENSE OF FORUM NON CONVENIENS AND AGREES TO BE BOUND BY ANY JUDGMENT RENDERED THEREBY ARISING UNDER OR OUT OF, IN RESPECT OF, OR IN CONNECTION WITH THIS AGREEMENT. EXCEPT AS PROVIDED IN THE FOREGOING NO PARTY HERETO SHALL INITIATE ANY LEGAL PROCEEDING ARISING UNDER OR OUT OF, IN RESPECT OF, OR IN CONNECTION WITH THIS AGREEMENT IN ANY OTHER STATE OR FEDERAL COURT IN THE UNITED STATES OF AMERICA, CANADA OR ANY COURT IN ANY OTHER COUNTRY. EACH PARTY FURTHER IRREVOCABLY DESIGNATES AND APPOINTS THE INDIVIDUAL IDENTIFIED PURSUANT TO PARAGRAPH 12 HEREOF (OR, IN THE CASE THAT A SUCCESSOR PERSON IS APPOINTED AS AUTHORIZED REPRESENTATIVE PURSUANT TO PARAGRAPH 12, SUCH SUCCESSOR PERSON) TO RECEIVE NOTICES ON ITS BEHALF, AS ITS AGENT TO RECEIVE ON ITS BEHALF SERVICE OF ALL PROCESS IN ANY SUCH ACTION BEFORE ANY BODY, SUCH SERVICE BEING HEREBY ACKNOWLEDGED TO BE EFFECTIVE AND BINDING SERVICE IN EVERY RESPECT. A COPY OF ANY SUCH PROCESS SO SERVED SHALL BE MAILED BY REGISTERED MAIL TO EACH PARTY AT ITS ADDRESS PROVIDED PURSUANT TO PARAGRAPH 12; PROVIDED THAT, UNLESS OTHERWISE PROVIDED BY APPLICABLE LAW, ANY FAILURE TO MAIL SUCH COPY SHALL NOT AFFECT THE VALIDITY OF THE SERVICE OF SUCH PROCESS. IF ANY AGENT SO APPOINTED REFUSES TO ACCEPT SERVICE, THE DESIGNATING PARTY HEREBY AGREES THAT SERVICE OF PROCESS SUFFICIENT FOR PERSONAL JURISDICTION IN ANY ACTION AGAINST IT IN THE APPLICABLE JURISDICTION MAY BE MADE BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ITS ADDRESS PROVIDED PURSUANT TO PARAGRAPH 12. EACH PARTY HEREBY ACKNOWLEDGES THAT SUCH SERVICE SHALL BE EFFECTIVE AND BINDING IN EVERY RESPECT. NOTHING HEREIN SHALL AFFECT THE RIGHT TO SERVE PROCESS IN ANY OTHER MANNER PERMITTED BY LAW OR SHALL LIMIT THE RIGHT OF ANY PARTY TO BRING ANY ACTION OR PROCEEDING AGAINST THE OTHER PARTY IN ANY OTHER JURISDICTION. NOTWITHSTANDING ANYTHING IN THIS PARAGRAPH 21 TO THE CONTRARY, ANY CLAIM, ACTION OR PROCEEDING SET FORTH IN PARAGRAPH 20 SHALL BE BROUGHT

<u>EXCLUSIVELY</u> IN THE ENGLISH COURTS.  FINALLY, REGARDLESS OF THE JURISDICTION OF THE APPLICABLE COURT, THE PARTIES FURTHER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY WITH RESPECT TO ANY LAWSUIT OR JUDICIAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

22.    <u>Interpretation</u>.  As used in this Agreement (including all exhibits, schedules and amendments hereto), the masculine, feminine or neuter gender and the singular or plural number shall be deemed to include the others whenever the context so requires. References to Paragraphs and Articles refer to sections and articles of this Agreement, unless the context otherwise requires. Words such as "herein," "hereinafter," "hereof," "hereto," "hereby" and "hereunder," and words of like import, unless the context requires otherwise, refer to this Agreement. The captions contained herein are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

23.    <u>Compliance with Court Orders</u>.  In the event that any of the Escrow Funds shall be attached, garnished or levied upon by any court order, or the distribution or disbursement thereof shall be stayed or enjoined by an order of a court of competent jurisdiction (as set forth in <u>Paragraph 21</u> above), or any order, judgment or decree shall be made or entered by any court order affecting the property deposited under this Agreement, the Distribution Agent is hereby expressly authorized, in its sole discretion, to obey and comply with all writs, orders or decrees so entered or issued, which it is advised by legal counsel of its own choosing is binding upon it, whether with or without jurisdiction, and in the event that the Distribution Agent obeys or complies with any such writ, order or decree it shall not be liable to any of the parties hereto or to any other person, firm or corporation, by reason of such compliance notwithstanding such writ, order or decree be subsequently reversed, modified, annulled, set aside or vacated.

24.    <u>Force Majeure</u>.  In the event that any party or the Distribution Agent is unable to perform its obligations under the terms of this Agreement because of acts of God, strikes, equipment or transmission failure or damage reasonably beyond its control, or other cause reasonably beyond its control, the Distribution Agent shall not be liable for damages to the other parties for any damages resulting from such failure to perform otherwise from such causes. Performance under this Agreement shall resume when the Distribution Agent is able to perform substantially.

25.    <u>Patriot Act Disclosure</u>.    Section 326 of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "**USA PATRIOT Act**") requires the Distribution Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.  Accordingly, each Depositor acknowledges that Section 326 of the USA PATRIOT Act and the Distribution Agent's identity verification procedures require the Distribution Agent to obtain information which may be used to confirm such Depositor's identity including without limitation name, address and organizational documents ("**Identifying**

18

**Information**").  Each Depositor agrees to provide the Distribution Agent with and consent to the Distribution Agent obtaining from third parties any such Identifying Information with respect to it required as a condition of opening an account with or using any service provided by the Distribution Agent.

26.    Taxpayer Identification Numbers ("**TIN**").  Each Depositor will provide the Distribution Agent with its fully executed Internal Revenue Service ("**IRS**") Form W-8, or W-9 and/or other required documentation as set forth in Paragraph 4(a).  Each Depositor providing such documentation represents that its correct TIN assigned by the IRS, or any other taxing authority, shall be set forth in the delivered forms

27.    Allocation Protocol.  The Depositors and the Estate Fiduciaries agree and acknowledge that nothing in this Agreement including, without limitation, Paragraph 5(b), shall prejudice any pre-existing rights or obligations of any of the Depositors and the Estate Fiduciaries to argue the appropriateness of any allocation of the Escrow Funds before a dispute resolver(s) appointed pursuant to the Allocation Protocol.  Without limitation to the foregoing, the Depositors' interest allocation percentages set forth on Exhibit 1 are not indicative of the final allocation of the Escrow Funds and shall not be presented by any of the Depositors and the Estate Fiduciaries in any of their submissions (whether in writing or orally) as to the appropriate allocation of the Escrow Funds before the dispute resolver(s) appointed pursuant to the Allocation Protocol.  Furthermore, (i) the Depositors and the Estate Fiduciaries agree that the Nortel India Allocation and the Nortel China Allocation were agreed to solely for the purpose of complying with local law requirements and to facilitate the closing of the transactions contemplated by the ASSA and the EMEA ASA and the Depositors and the Estate Fiduciaries hereby agree that such allocations shall have no precedential impact on the allocations of the Escrow Funds to any other Selling Debtor or any other sales proceeds before a dispute resolver(s) appointed pursuant to the Allocation Protocol and [language to reflect treatment of portion of the Purchase Price attributable to NGS working capital to be provided].

28.    Exclusion of Liability for Estate Fiduciaries.  The Depositors and the Distribution Agent agree that (a) each of the Estate Fiduciaries has negotiated and is entering into this Agreement as a representative of its applicable creditor constituency for the purpose of benefiting from the rights being granted hereunder and to allow the Distribution Agent to be able to rely on any joint instructions signed by the Estate Fiduciaries and (b) none of the Estate Fiduciaries, their firms, members or affiliates of such parties and such parties respective partners, associates, employees, advisers, representatives or agents shall incur any liability whatsoever under this Agreement.  *[Signature Pages follow]*

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement to be executed on the day and year first above written.


NORTEL NETWORKS LIMITED

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and
Corporate Services


By:_____
Name:   Anna Ventresca
Title:    General Counsel – Corporate and
Corporate Secretary


NORTEL NETWORKS INC.


By:_____
Name:  Anna Vestresca
Title:   Chief Legal Officer


NORTEL NETWORKS CORPORATION

By:_____
Name: John Doolittle
Title:   Senior Vice-President, Finance and
Corporate Services


By:_____
Name:   Anna Ventresca
Title:    General Counsel – Corporate and
Corporate Secretary


DISTRIBUTION AGENT


JPMorgan Chase Bank, N.A., as Distribution
Agent


By:_____
Name:
Title:


ERNST & YOUNG INC. IN ITS CAPACITY
AS THE MONITOR OF NORTEL
NETWORKS CORPORATION ET AL.,
AND NOT IN ITS PERSONAL CAPACITY


By:_____
Name:
Title:


THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF NORTEL
NETWORKS INC., ET. AL.

By:  Flextronics Corporation, solely in its
capacity as Chair of the Committee and not in
its individual capacity,

By:_____
Name:  Timothy Burling
Title:   Vice President, Finance

**SIGNED** in the name and on behalf of **NORTEL ALTSYSTEMS, INC.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services


By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary


**SIGNED** in the name and on behalf of **NORTEL NETWORKS TECHNOLOGY CORPORATION.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services


By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary


**SIGNED** in the name and on behalf of **NORTEL NETWORKS CHILE S.A.** by

NORTEL NETWORKS LIMITED, as Representative


By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services


By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS DE MEXICO, S.A. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL DE MEXICO, S. DE R.L. DE C.V.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS PERU S.A.C.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS AUSTRALIA PTY LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (INDIA) PRIVATE LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **PT NORTEL NETWORKS INDONESIA** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS MALAYSIA SDN. BHD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS NEW ZEALAND LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS SINGAPORE PTE. LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (ASIA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:   Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:   General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CHINA) LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:   Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:   General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS (THAILAND) LTD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:   Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:   General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL VIETNAM LIMITED** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS TELECOMMUNICATIONS EQUIPMENT (SHANGHAI) CO., LTD.** by

NORTEL NETWORKS LIMITED, as Representative

By:_____
Name:  John Doolittle
Title:    Senior Vice-President, Finance and Corporate Services

By:_____
Name:  Anna Ventresca
Title:    General Counsel – Corporate and Corporate Secretary

**SIGNED** in the name and on behalf of **NORTEL NETWORKS INTERNATIONAL INC.** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  Anna Vestresca
Title:    Chief Legal Officer


**SIGNED** in the name and on behalf of **NORTEL NETWORKS (CALA) INC.** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  Anna Vestresca
Title:    Chief Legal Officer


**SIGNED** in the name and on behalf of **NORTEL TECHNOLOGY EXCELLENCE CENTRE PRIVATE LIMITED** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  Anna Vestresca
Title:    Chief Legal Officer


**SIGNED** in the name and on behalf of **NORTEL NETWORKS KABUSHIKI KAISHA** by

NORTEL NETWORKS INC., as Representative


By:_____
Name:  Anna Vestresca
Title:    Chief Legal Officer

**SIGNED** for and on behalf of **NORTEL**    )   ..............................................................
**NETWORKS UK LIMITED** (in    )   Alan Bloom
administration) by **ALAN BLOOM** as Joint    )
Administrator (acting as agent and without    )
personal liability) in the presence of:

Witness signature

..............................................................    )
Name:    )
Address:    )
**SIGNED** for and on behalf of **NORTEL**    )   ..............................................................
**NETWORKS NV** (in administration) by    )   Alan Bloom
**ALAN BLOOM** as Joint Administrator (acting    )
as agent and without personal liability) in the    )
presence of:

Witness signature

..............................................................    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **NORTEL**    )   ..............................................................
**NETWORKS SPA** (in administration) by    )   Alan Bloom
**ALAN BLOOM** as Joint Administrator (acting    )
as agent and without personal liability) in the    )
presence of:

Witness signature

..............................................................    )
Name:    )
Address:    )

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS BV** (in administration) by
**ALAN BLOOM** as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)

..............................................................
Alan Bloom

Witness signature

..............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS POLSKA SP Z.O.O.** (in
administration) by **ALAN BLOOM** as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

..............................................................
Alan Bloom

Witness signature

..............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS HISPANIA SA** (in
administration) by **ALAN BLOOM** as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

..............................................................
Alan Bloom

Witness signature

..............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**                )        .............................................................
**NETWORKS (AUSTRIA) GMBH** (in            )        Alan Bloom
administration) by **ALAN BLOOM** as Joint      )
Administrator (acting as agent and without      )
personal liability) in the presence of:

Witness signature

.............................................................        )
Name:                                                                    )
Address:                                                                 )

**SIGNED** for and on behalf of **NORTEL**                )        .............................................................
**NETWORKS S.R.O** (in administration) by      )        Alan Bloom
**ALAN BLOOM** as Joint Administrator (acting   )
as agent and without personal liability) in the      )
presence of:

Witness signature

.............................................................        )
Name:                                                                    )
Address:                                                                 )

**SIGNED** for and on behalf of **NORTEL**                )        .............................................................
**NETWORKS ENGINEERING SERVICE**       )        Alan Bloom
**KFT** (in administration) by **ALAN BLOOM** as  )
Joint Administrator (acting as agent and without   )
personal liability) in the presence of:

Witness signature

.............................................................        )
Name:                                                                    )
Address:                                                                 )

**SIGNED** for and on behalf of **NORTEL**    )    ...........................................................................
**NETWORKS PORTUGAL SA** (in           )    Alan Bloom
administration) by **ALAN BLOOM** as Joint    )
Administrator (acting as agent and without    )
personal liability) in the presence of:

Witness signature

...........................................................................    )
Name:                                      )
Address:                                   )

**SIGNED** for and on behalf of **NORTEL**    )    ...........................................................................
**NETWORKS SLOVENSKO S.R.O** (in         )    Alan Bloom
administration) by **ALAN BLOOM** as Joint    )
Administrator (acting as agent and without    )
personal liability) in the presence of:

Witness signature

...........................................................................    )
Name:                                      )
Address:                                   )

**SIGNED** for and on behalf of **NORTEL**    )    ...........................................................................
**NETWORKS ROMANIA SRL** (in            )    Alan Bloom
administration) by **ALAN BLOOM** as Joint    )
Administrator (acting as agent and without    )
personal liability) in the presence of:

Witness signature

...........................................................................    )
Name:                                      )
Address:                                   )

**SIGNED** for and on behalf of **NORTEL**                    )          ..............................................................
**GMBH** (in administration) by **ALAN BLOOM**        )          Alan Bloom
as Joint Administrator (acting as agent and              )
without personal liability) in the presence of:            )


Witness signature

..............................................................        )
Name:                                                              )
Address:                                                          )


**SIGNED** for and on behalf of **NORTEL**                    )          ..............................................................
**NETWORKS OY** (in administration) by                    )          Alan Bloom
**ALAN BLOOM** as Joint Administrator (acting        )
as agent and without personal liability) in the          )
presence of:                                                       )


Witness signature

..............................................................        )
Name:                                                              )
Address:                                                          )


**SIGNED** for and on behalf of **NORTEL**                    )          ..............................................................
**NETWORKS AB** (in administration) by                    )          Alan Bloom
**ALAN BLOOM** as Joint Administrator (acting        )
as agent and without personal liability) in the          )
presence of:                                                       )


Witness signature

..............................................................        )
Name:                                                              )
Address:                                                          )

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS FRANCE S.A.S** (in
administration) by **ALAN BLOOM** as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)

.............................................................
Alan Bloom

Witness signature

.............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS SA** (in administration) by
**ALAN BLOOM** as Joint Administrator (acting
as agent and without personal liability) in the
presence of:

)
)
)
)
)

.............................................................
Alan Bloom

Witness signature

.............................................................
Name:
Address:

)
)
)

**SIGNED** for and on behalf of **NORTEL**
**NETWORKS (IRELAND) LIMITED** (in
administration) by **ALAN BLOOM** as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)

)
)
)

.............................................................
Alan Bloom

Witness signature

.............................................................
Name:
Address:

)
)
)

**SIGNED** by                                                    )
Duly authorized for and on behalf of **O.O.O.**          ...............................................................
**NORTEL NETWORKS** in the presence of:
                                                                )
                                                                )
                                                                )

Witness signature

...............................................................    )
Name:                                                           )

Address:                                                        )

**SIGNED** by                                                    )
Duly authorized for and on behalf of **NORTEL**          ...............................................................
**NETWORKS SOUTH AFRICA (PTY)**
**LIMITED** in the presence of:
                                                                )
                                                                )
                                                                )

Witness signature

...............................................................    )
Name:                                                           )

Address:                                                        )

**SIGNED** by                                                    )
Duly authorized for and on behalf of **NORTEL**          ...............................................................
**NETWORKS AG** in the presence of:
                                                                )
                                                                )
                                                                )


Witness signature

...............................................................    )
Name:                                                           )

Address:                                                        )


**SIGNED** by                                                    )
Duly authorized for and on behalf of **NORTEL**          ...............................................................
**NETWORKS AS** in the presence of:
                                                                )
                                                                )
                                                                )


Witness signature

...............................................................    )
Name:                                                           )

Address:                                                        )

| | | |
|---|---|---|
| SIGNED for and on behalf of Nortel | ) | |
| Communications Holdings (1997) Limited (in | | ............................................................... |
| administration) by Yaron Har-Zvi and Avi D. | ) | Yaron Har-Zvi |
| Pelossof as Joint Israeli Administrators (acting | ) | |
| jointly and without personal liability) in | ) | |
| connection with the Israeli Assets and | ) | |
| Liabilities: | ) | ............................................................... |
| | ) | Avi D. Pelossof |

Witness signature

| | |
|---|---|
| ............................................................... | ) |
| Name: | ) |
| Address: | ) |

| | | |
|---|---|---|
| SIGNED for and on behalf of Nortel Networks | ) | |
| Israel (Sales and Marketing) Limited (in | ) | ............................................................... |
| administration) by Yaron Har-Zvi and Avi D. | ) | Yaron Har-Zvi |
| Pelossof as Joint Israeli Administrators (acting | | |
| jointly and without personal liability) in | ) | |
| connection with the Israeli Assets and | ) | ............................................................... |
| Liabilities: | ) | Avi D. Pelossof |
| | ) | |
| | ) | |

Witness signature

| | |
|---|---|
| ............................................................... | ) |
| Name: | ) |
| Address: | ) |

## SCHEDULE A

## OTHER SELLERS

### PART 1: OTHER SELLERS REPRESENTED BY NNL

Nortel Altsystems, Inc. (f/k/a Alteon Websystems, Inc. name change effective 4/30/09)

Nortel Networks Technology Corporation

Nortel Networks Chile S.A.

Nortel Networks de Mexico, S.A. de C.V.

Nortel de Mexico, S. de R.L. de C.V.

Nortel Networks Peru S.A.C.

Nortel Networks Australia Pty Limited

Nortel Networks (India) Private Limited

PT Nortel Networks Indonesia

Nortel Networks Malaysia Sdn. Bhd.

Nortel Networks New Zealand Limited

Nortel Networks Singapore Pte. Limited

Nortel Networks (Asia) Limited

Nortel Networks (China) Limited

Nortel Networks (Thailand) Ltd.

Nortel Vietnam Limited

Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd.

### PART 2: OTHER SELLERS REPRESENTED BY NNI

Nortel Networks International Inc.

Nortel Networks (CALA) Inc.

Nortel Technology Excellence Centre Private Limited

Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha)

**SCHEDULE B**

**PART 1: EMEA FILED ENTITIES**

Nortel Networks UK Limited

Nortel Networks (Ireland) Limited

Nortel GmbH

Nortel Networks France SAS

Nortel Networks SpA

Nortel Networks Hispania SA

Nortel Networks B.V.

Nortel Networks AB

Nortel Networks N.V.

Nortel Networks (Austria) GmbH

Nortel Networks Polska Sp. z.o.o.

Nortel Networks Oy

Nortel Portugal SA

Nortel Networks s.r.o.

Nortel Networks Romania srl

Nortel Networks Engineering Services kft

Nortel Networks Slovensko s.r.o.

Nortel Networks SA

**PART 2: EMEA NON-FILED ENTITIES**

o.o.o. Nortel Networks

Nortel Networks South Africa (Pty) Limited

Nortel Networks AG

Nortel Networks AS

## PART 3: ISRAELI COMPANIES

Nortel Networks Israel (Sales and Marketing) Limited

Nortel Communications and Holdings (1997) Limited

SCHEDULE C

**STANDING SETTLEMENT INSTRUCTIONS**


Nortel Networks Limited
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 38545364

Nortel Networks Inc.
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30463444

Nortel Networks Corporation
Bank: Citibank, N.A.
ABA#: 021000089
SWIFT: CITIUS33
A/C#: 30428374

Nortel Altsystems, Inc. (f/k/a Alteon Websystems, Inc. name change effective 4/30/09)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Technology Corporation
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Chile S.A.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks de Mexico, S.A. de C.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel de Mexico, S. de R.L. de C.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Peru S.A.C.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Australia Pty Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (India) Private Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

PT Nortel Networks Indonesia
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Malaysia Sdn. Bhd.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks New Zealand Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Singapore Pte. Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Asia) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (China) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Thailand) Ltd.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Vietnam Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks International Inc.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (CALA) Inc.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Technology Excellence Centre Private Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha)
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks UK Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Ireland) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel GmbH
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks France SAS
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks SpA
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Hispania SA
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks B.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

o.o.o. Nortel Networks
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks South Africa (Pty) Limited
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AB
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AG
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks N.V.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks AS
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks (Austria) GmbH
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Polska Sp. z.o.o.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Oy
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Portugal SA
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks s.r.o.
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Romania srl
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Engineering Services kft
Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks Slovensko s.r.o.

Bank: tbc
ABA#:
SWIFT:
A/C#:

Nortel Networks SA
Bank: tbc
ABA#:
SWIFT:
A/C#:

## SCHEDULE D

## NOTICE ADDRESSES

Depositors:

| | |
|---|---|
| NNC, NNL and the Other Sellers listed on Schedule A Part 1: | 5945 Airport Road<br>Suite 360<br>Mississauga, Ontario, Canada  L4V 1R9<br>Attn:  Anna Ventresca<br>Phone: 905.863.1204<br>Facsimile: 905.863.2057 |
| NNI and the Other Sellers listed on Schedule A Part 2: | Legal Department<br>220 Athens Way, Suite 300<br>Nashville, Tennessee, USA  37228<br>Attn:  Lynn C. Egan<br>Phone: 615.432.4289<br>Facsimile: 615.432.4067 |
| The EMEA Filed Entities and the EMEA Non-Filed Entities: | c/o Herbert Smith LLP<br>Exchange House<br>Primrose Street<br>London<br>EC2A 2HS<br>United Kingdom<br>Attn: Stephen Gale and Kevin F Lloyd<br>Phone: +44 20 7374 8000<br>Facsimile: +44 20 7374 0888 |
| The Israeli Companies: | Avi D. Pelossof<br>Zellermayer, Pelossof & Co.<br>The Rubenstein House<br>20 Lincoln Street<br>Tel Aviv<br>67131<br>Israel<br>Facsimile:        +972 3 6255500 |
| Distribution Agent: | JPMorgan Chase Bank, N.A.<br>TS / Escrow Services<br>4 New York Plaza, 21st Floor<br>New York, New York 10004<br>Attn:  Andy Jacknick<br>Phone: 212.623. 0241<br>Facsimile: 212.623.6168 |

Estate Fiduciaries:

| | |
|---|---|
| The Official Committee of Unsecured Creditors in connection with the Chapter 11 cases of Nortel Networks Inc., et al. (Case No. 09-10138): | c/o Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, New York 10036<br>Attn:  Fred S. Hodara, Stephen B. Kuhn, David H. Botter and Kenneth A. Davis<br>Phone: 212.872.1000<br>Facsimile: 212.872.1002 |
| Monitor: | Ernst & Young Inc.<br>Ernst & Young Tower<br>222 Bay Street, P. O. Box 251<br>Toronto, Ontario, Canada<br>M5K 1J7<br>Facsimile: (416) 943-3300<br>Attn: Murray A. McDonald |
| Bondholder Group: | c/o Milbank, Tweed, Hadley & McCloy LLP<br>1 Chase Manhattan Plaza<br>New York, New York 10005<br>Attn: Albert A. Pisa and Roland Hlawaty<br>Phone: 212.530.5000<br>Facsimile: 212.822.5735 |

**SCHEDULE E**

**Telephone Number(s) for Call-Backs;
Person(s) Designated to Give and Confirm Funds Transfer Instructions; and Addresses**

If to NNC:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|
| John Marshall Doolittle | 905.863.6636 | _____ |
| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
| Anna Ventresca | 905.863.1204 | _____ |
| Address | See <u>Schedule C</u> | |

If to NNL and the Other Sellers listed on <u>Schedule A</u> <u>Part 1</u>:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|
| John Marshall Doolittle | 905.863.6636 | _____ |
| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
| Anna Ventresca | 905.863.1204 | _____ |
| Address | See <u>Schedule C</u> | |

If to NNI and the Other Sellers listed on <u>Schedule A</u> <u>Part 2</u>:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|
| John Marshall Doolittle | 905.863.6636 | _____ |

| Name | Telephone Number | Signature Specimen |
|------|------------------|--------------------|
| Anna Ventresca | 905.863.1204 | _____ |
| Address | See Schedule C | |

If to the EMEA Filed Entities (apart from Nortel Networks (Ireland) Limited) and the EMEA Non-Filed Entities:

| Name | Telephone Number | Signature Specimen |
|------|------------------|--------------------|
| Alan Bloom | +44 (0) 207 951 9898 | |

| Name | Telephone Number | Signature Specimen |
|------|------------------|--------------------|
| Stephen Harris | +44 (0) 207 951 9835 | |
| Address | See Schedule C | |

If to Nortel Networks (Ireland) Limited:

| Name | Telephone Number | Signature Specimen |
|------|------------------|--------------------|
| Alan Bloom | +44 (0) 207 951 9898 | |
| Name | Telephone Number | Signature Specimen |
| David Hughes | +353 1 221 2301 | |
| Address | c/o Herbert Smith LLP Exchange House Primrose Street London EC2A 2HS Attn: Stephen Gale and Kevin F Lloyd | |

Schedule E-2

If to the Israeli Companies:

| <u>Name</u> | <u>Telephone Number</u> | <u>Signature Specimen</u> |
|---|---|---|

Yaron Har-Zvi

Address                     See <u>Schedule C</u>

Avi D. Pelossof

Address                     See <u>Schedule C</u>

Telephone call backs shall be made to all applicable Parties if joint instructions are required pursuant to the agreement. All funds transfer instructions must include the signature of the person(s) authorizing said funds transfer and must not be the same person confirming said transfer. Inasmuch as there is only one individual who can confirm and instruct, on behalf of a Party, wire transfers in accordance with the attached Escrow Agreement, the Distribution Agent shall call such individual to confirm any federal funds wire transfer payment order purportedly issued by such individual.  Such individual's continued issuance of payment orders to the Distribution Agent on behalf of a Party and his confirmation in accordance with this procedure will constitute such Party's agreement (1) to the callback security procedure outlined herein and (2) that the security procedure outlined herein constitutes a commercially reasonable method of verifying the authenticity of payment orders.  Moreover, such Party agrees to accept any risk associated with a deviation from the Distribution Agent's policy.

# EXHIBIT 1

## INTEREST ALLOCATION PERCENTAGES(*)

|  | Interest Allocation Percentage |
|---|---|
| NNI | 100% |
| NNL | 100% |
| NNC | 0% |
| Nortel Altsystems, Inc. (f/k/a Alteon Websystems, Inc. name change effective 4/30/09) | 0% |
| Nortel Networks Technology Corporation | 0% |
| Nortel Networks Chile S.A. | 0% |
| Nortel Networks de Mexico, S.A. de C.V. | 0% |
| Nortel de Mexico, S. de R.L. de C.V. | 0% |
| Nortel Networks Peru S.A.C. | 0% |
| Nortel Networks Australia Pty Limited | 0% |
| Nortel Networks (India) Private Limited | 0% |
| PT Nortel Networks Indonesia | 0% |
| Nortel Networks Malaysia Sdn. Bhd. | 0% |
| Nortel Networks New Zealand Limited | 0% |
| Nortel Networks Singapore Pte. Limited | 0% |
| Nortel Networks (Asia) Limited | 0% |
| Nortel Networks (China) Limited | 0% |
| Nortel Networks (Thailand) Ltd. | 0% |
| Nortel Vietnam Limited | 0% |
| Nortel Networks Telecommunications | 0% |

Exhibit 1

|  | **Interest Allocation Percentage** |
|---|---|
| Equipment (Shanghai) Co., Ltd. | |
| Nortel Networks International Inc. | 0% |
| Nortel Networks (CALA) Inc. | 0% |
| Nortel Technology Excellence Centre Private Limited | 0% |
| Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha) | 0% |
| The EMEA Filed Entities | 0% |
| The EMEA Non-Filed Entities | 0% |
| The Israeli Companies | 0% |

\*   The inclusion of the interest allocation percentages set forth above does not constitute an admission of any Depositor that such interest allocation percentage reflects the percentage of the proceeds to be received by any Depositor or any of its Respective Affiliates under the ASSA or EMEA ASA, as applicable**.**   The interest allocation percentages are the initial allocation percentages hereunder and are subject to amendment in accordance with Paragraph 15.   The interest allocation percentages set forth above shall not be presented by any party hereto as being indicative of the final allocation of proceeds received by the Depositors under the ASSA and EMEA ASA, as applicable.

Exhibit 1-2