**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------X
                                                            :
                                                            :    Chapter 11
                                                            :
In re                                                       :
                                                            :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹                              :
                                                            :    Jointly Administered
                          Debtors.                          :
                                                            :
                                                            :
                                                            :
------------------------------------------------------------X
```

**DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1) SHORTENING
NOTICE RELATING TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(A)
AND § 363(B) FOR AN ORDER (A) APPROVING DEBTORS' ENTRY
INTO THE ENTERPRISE SOLUTIONS BUSINESS
ESCROW AGREEMENT AND (B) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this court (the "Motion to Shorten") for

entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section

102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") to permit consideration on shortened notice of Debtors' Motion

(the "Motion") Pursuant to 11 U.S.C. § 105(a) and § 363(B) for an Order (a) Approving Debtor's

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Entry into the Enterprise Solutions Business Escrow Agreement (the "Escrow Agreement") and

(b) granting related relief.  In support of this Motion to Shorten, the Debtors respectfully

represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 102(1) of the

Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

### Background

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than Nortel

Networks (CALA) Inc. ("NN CALA"), filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code.  NN CALA filed its voluntary petition for relief under chapter 11 of the

Bankruptcy Code on July 14, 2009.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's

direct corporate parent NNL, and together with NNC and their affiliates, including the Debtors,

"Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA continued to operate as a going concern for an initial period of

---

[2]      The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

three months, which period was subsequently extended.  On October 1, 2009, pursuant to a

motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the

liquidation operations relating to the sale of the assets and/or businesses of NNSA for a

renewable period of two months; (ii) authorize the continuation of the business of NNSA so long

as the liquidation operations are suspended; and (iii) maintain the powers of the French

Administrator and Liquidator during the suspension period, except with respect to the sale of

assets and/or businesses of NNSA.  In accordance with the European Union's Council

Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the

"English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009,

NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main

proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an

order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the

Bankruptcy Code.

9.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel

(Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court,

pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of

proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D.

Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the

"Joint Israeli Administrators").

10.     On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

4

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

11.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

(NN CALA and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with

the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

12.     A description of the Debtors' corporate structure and business and the events

leading to the chapter 11 cases are set forth in the Declaration of John Doolittle in Support of

First Day Motions and Applications [D.I. 3].

## Relief Requested

13.     By this Motion to Shorten, the Debtors seek entry of an order (i) shortening the

notice period required for approval of the Motion, and setting **December 15, 2009 at 10:00 a.m.**

as the hearing date to consider approval of the Motion; (ii) setting **December 14, 2009 at 12:00**

**p.m. (Eastern Time)** as the deadline to object to the Motion; and (iii) granting them such other

relief as the Court deems just and proper.

## Facts Relevant to this Motion

**A.     The Interim Funding and Settlement Agreement**

14.     On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the

Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA")[4]

---

[4]      The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are
intended solely for informational purposes to provide the Court and parties in interest with an overview of

governing certain intercompany matters, including the obligations of the parties to the IFSA to

(a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the

"Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds (as

defined in the IFSA) from Sale Transactions (as defined in the IFSA), which Interim Sales

Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant

parties in any such Sale Transaction have been unable to reach agreement regarding such

allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a

timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from

such Sale Transaction within a reasonable period of time or as may be otherwise provided in the

Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the

allocation of the relevant Sale Proceeds).  On June 29, 2009, this Court entered an Order

(A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief

[D.I. 993].

16.    The IFSA, as approved by the Court, calls for an escrow agreement, the terms of

which shall be negotiated and agreed upon by all Selling Debtors (as defined in the IFSA) acting

reasonably.  The Sale Proceeds (less applicable transfer or value-added taxes and, to the extent

agreed upon by the Selling Debtors, transaction costs) shall be deposited in an escrow account

pursuant to the Escrow Agreement, pending the distribution of the Sale Proceeds.

**B.    Sale of Nortel's Enterprise Solutions Business**

16.    Nortel's Enterprise Solutions business unit provides solutions for addressing the

communication needs of large and small businesses globally across a wide variety of industries

by building new networks and transforming existing networks into more cost-effective, packet-

---

significant terms thereof and should only be relied on as such.  The summaries and descriptions are qualified in their entirety by the IFSA.  In the even there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

based networks supporting data, voice and multimedia communications (the "Enterprise

Solutions Business").  In particular, the Enterprise Solutions Business specializes in providing

solutions that allow its customers to integrate and remove barriers between voice, email,

conferencing, video and instant messaging technologies.

17.    On July 20, 2009, the Sellers and certain of their affiliates entered into an Asset

and Share Sale Agreement (the "Stalking Horse Agreement") for the sale of certain assets of, and

equity interests in, the Enterprise Solutions Business by and among the Sellers, certain of their

affiliates and Avaya Inc. ("Avaya"), subject to higher and better offers.  The Debtors conducted a

bidding and auction process in accordance with the procedures approved by this Court.  At the

conclusion of the auction held from September 11, 2009 to September 14, 2009, the final bid by

Avaya (together with its designees, the "Purchaser"), was selected as the highest and best bid.

On September 14, 2009, the Sellers and the Purchaser entered into the Amended and Restated

Asset and Share Sale Agreement (the "Sale Agreement"), which this Court subsequently

authorized and approved by order entered September 16, 2009 (the "Sale Order") [D.I. 1514].

18.    Pursuant to the Sale Order, this Court has authorized the Debtors to deposit

amounts paid in accordance with the Sale Agreement into an escrow account pending final

allocation.

C.    **The Escrow Agreement**

19.    Pursuant to Section 12.b of the IFSA and Paragraph 31 of the Sale Order, the

Debtors, certain of their affiliates including the Canadian Debtors and EMEA Debtors

(collectively, the "Depositors") and JPMorgan Chase Bank, N.A., a national banking association

organized and existing under the laws of the United States of America, as escrow and

distribution agent ("JPMorgan" or the "Distribution Agent") negotiated the Escrow Agreement,

substantially in the form attached to the Motion as Exhibit B.[5]

### Basis for Relief Requested

20.      Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on

written motion (served on all interested parties) specifying the exigencies justifying shortened

notice." Del. Bankr. L.R. 9006-1(e). As set forth below, shortening notice is justified here.

21.      The Debtors respectfully submit that shortened notice is appropriate in this

instance because court approval and authorization to enter into the Escrow Agreement is a

complementary and necessary step to finalize the larger sale process of the Enterprise Solutions

Business and related assets to the Purchaser. The Distribution Agent (as defined in the Motion)

requires court approval of the Escrow Agreement and the closing will take place by year-end.

The Escrow Agreement must be in place prior to closing. For these reasons, the Debtors believe

that a hearing on the Motion on shortened notice is in the best interests of the Debtors' estates

and creditors.

22.      For these reasons, the Debtors respectfully submit that allowing the Motion to be

considered on shortened notice is reasonable and appropriate under the circumstances.

### Notice

23.      Notice of the Motion to Shorten is being given via facsimile, electronic

transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the U.S.

Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group;

(vi) Counsel to the Joint Administrators; (vii) the Distribution Agent and (viii) the general

---

[5]      To the extent that there are inconsistencies between the description of the provisions of the Escrow Agreement contained in this Motion to Shorten and the terms and conditions of the Escrow Agreement, the terms and conditions of the Escrow Agreement shall control.

service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors

submit that under the circumstances no other or further notice is necessary.

## No Prior Request

24.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion to

Shorten and the relief requested herein; (ii) enter the proposed order attached hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  December 11, 2009          CLEARY GOTTLIEB STEEN & HAMILTON LLP
          Wilmington, Delaware

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

9