**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------X
                                                          :
*In re*                                                    :        Chapter 11
                                                          :
Nortel Networks Inc., *et al.*,[1]                          :        Case No. 09-10138 (KG)
                                                          :
                    Debtors.                               :        Jointly Administered
                                                          :
-----------------------------------------------------------X

**STIPULATION AMONG NORTEL NETWORKS INC.,**
**AT&T SERVICES, INC. AND AVAYA INC.**

This stipulation (the "Stipulation") is entered into by and among Nortel Networks

Inc. ("NNI"), AT&T Services, Inc., on its own behalf and as agent on behalf of AT&T Corp. and

its subsidiaries and affiliates (collectively, "AT&T"), and Avaya Inc. ("Avaya") (NNI, AT&T

and Avaya collectively referred to herein as the "Parties" and individually as a "Party"), with

respect to the following facts:

WHEREAS, (i) on January 1, 2001, a certain Unified Networks Distributorship

Agreement between NNI and SBC Services, Inc. (a predecessor-in-interest of AT&T Services,

Inc.) became effective and (ii) on June 2, 2006, a certain Nortel Facilities Management

Agreement, No.20091008.015.C, between NNI and BellSouth Communications System, LLC

d/b/a AT&T Communications Systems Southeast, LLC became effective ((i) and (ii), as

amended, and/or supplemented, and including all agreements, work statements or similar

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

documents issued thereunder, collectively referred to herein as the "AT&T Customer Contracts"); and

WHEREAS, on January 14, 2009, NNI and its affiliated debtors and debtors-in-possession (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"); and

WHEREAS, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on January 26, 2009, the Office of the United States Trustee for the District of Delaware appointed an Official Committee of Unsecured Creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]; an ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized, and no trustee or examiner has been appointed in the Debtors' cases; and

WHEREAS, on July 20, 2009, the Debtors moved the Court for an order authorizing the Debtors' entry into an Asset and Share Sale Agreement with Avaya (the "ASSA") for the Debtors' Enterprise Solutions Business (the "Enterprise Solutions Business") (the "Enterprise Sale Motion") [D.I. 1131]; and

WHEREAS, the Debtors sought, in the Enterprise Sale Motion, the Court's approval of certain Assignment Procedures pursuant to which the Debtors would assume and assign certain of their executory contracts to the Successful Bidder; and

WHEREAS, on September 4, 2009, AT&T filed a limited objection to the Enterprise Sale Motion concerning the AT&T Customer Contracts [D.I. 1432]; (the "AT&T Objection"); and

WHEREAS, on September 16, 2009, the Court entered the Order Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases (the "Enterprise Sale Order") [D.I. 1514] which reserved all rights of the Parties with respect to the AT&T Customer Contracts and the AT&T Objection; and

WHEREAS, following arms-length negotiations between the Parties, the Parties have reached the agreement set forth in this Stipulation that resolves, fully and formally, the AT&T Objection and any disputes relating to the assumption and assignment of the AT&T Customer Contracts on the terms set forth herein;

NOW, THEREFORE, for the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.      Incorporation of Recitals.  The foregoing recitals are incorporated herein by reference as if fully set forth herein.

2.      Assumption and Assignment of AT&T Customer Contracts.  The Parties hereby agree that on the Closing Date (as defined in the ASSA), the AT&T Customer Contracts shall be assumed and assigned to Avaya under section 365 of the Bankruptcy Code, free and clear of all Interests (as defined in paragraph L of the Enterprise Sale Order) of any kind or nature whatsoever, other than the Assumed Liabilities (as defined in the ASSA) on the terms set

forth in the ASSA.  On the Closing, Date Avaya shall be deemed to have assumed the Assumed Liabilities related to the AT&T Customer Contracts.  For the avoidance of doubt, this Stipulation explicitly overrides the reservation of AT&T's rights in paragraph 27 of the Enterprise Sale Order.

3.    <u>No Cure Costs</u>.  AT&T hereby agrees that the cure amount in respect of the AT&T Customer Contracts is $0.00, and there are no existing defaults under any of the AT&T Customer Contracts as of the Closing Date.

4.    <u>Reservation of Rights</u>.  Notwithstanding the assumption and assignment of the AT&T Customer Contracts to Avaya on the terms set forth above, nothing in this Stipulation, the ASSA or in the Enterprise Sale Order shall affect, prejudice, estop, bar, impair or otherwise limit in any respect, the rights of AT&T or Avaya at a date subsequent to the date of this Stipulation to oppose or support the position that by virtue of the assumption and assignment of the AT&T Customer Contracts to Avaya on the terms set forth above that Avaya has assumed, whether under the Bankruptcy Code or other applicable law, all obligations and liabilities associated with the AT&T Customer Contracts relating to the conduct or operation of the Enterprise Solutions Business by NNI and the Debtors before the Closing Date that do not constitute Assumed Liabilities under the ASSA, including without limitation, any indemnification obligations or liabilities (collectively, the "<u>Pre-Closing Obligations</u>").  For the avoidance of doubt, none of the provisions or terms in the ASSA or the Enterprise Sale Order shall bar, estop, preclude or limit AT&T from arguing that the Pre-Closing Obligations were assumed by Avaya by operation of law or otherwise and Avaya may not rely on any provisions in the Enterprise Sale Order to contend that such Pre-Closing Obligations were not assumed by Avaya.

5.      <u>Claims Relating to Pre-Closing Obligations</u>.    In the event that it is determined by this Court or, if the Debtors' cases have been closed, another court of competent jurisdiction, or agreed by AT&T and Avaya that Avaya has assumed the Pre-Closing Obligations, generating a claim under such obligations (the "<u>Pre-Closing Claim</u>"), the Parties agree that (i) AT&T shall assert a general unsecured claim against NNI in respect of such Pre-Closing Claim as to which NNI shall have the right to challenge the amount of such Pre-Closing Claim, but shall not have the right to challenge AT&T's right to assert such Pre-Closing Claim, and AT&T, upon determination of such Pre-Closing Claim by the Court, shall waive any rights to assert an administrative priority expense claim against NNI on account of such Pre-Closing Claim, (ii) Avaya shall be obligated to AT&T for any deficiency between the allowed amount of AT&T's Pre-Closing Claim and AT&T's actual recovery from NNI in respect of such claim, and (iii) Avaya shall assert a general unsecured claim against NNI for any amounts paid by Avaya to AT&T in respect of such Pre-Closing Claim as to which NNI shall support allowance by the Court, and Avaya, upon such allowance, shall waive any rights to assert an administrative priority expense claim against NNI on account of such Pre-Closing Claim; provided, however, in the event that Avaya is found to have assumed the Pre-Closing Obligations and AT&T cannot receive distribution on account of the Pre-Closing Claim against NNI because, among other things, all distributions to unsecured creditors having been made or the Debtors' bankruptcy cases having been closed, Avaya shall be obligated to AT&T for the entire amount of the Pre-Closing Claim, regardless of whether Avaya can assert such a claim against the Debtors' estates for any amounts in respect of such Pre-Closing Claim.  In the event that Avaya shall be found not to have assumed the Pre-Closing Obligations, the Parties agree that, with respect to any Pre-Closing Claim, AT&T shall assert a general unsecured claim against NNI in the amount of such

Pre-Closing Claim as to which NNI shall have the right to challenge the amount of such Pre-Closing Claim but shall not challenge AT&T's right to assert such Pre-Closing Claim, and AT&T, upon determination of such claim by the Court, shall waive any rights to assert an administrative expense claim against NNI on account of such Pre-Closing Claim.

6.    <u>No Reliance</u>.  The Parties acknowledge and agree that none of the Parties has relied on any statement or representation of any other Party, person or entity in determining to enter into this Stipulation.

7.    <u>Construction of Terms</u>.  All capitalized terms used and not defined herein shall have their meanings in the Enterprise Sale Order.

8.    <u>Binding Effect</u>.  Upon entry by the Bankruptcy Court, this Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the Parties hereto, including but not limited to, any trustee or receiver subsequently appointed in these cases.

9.    <u>Entire Agreement</u>.  Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Stipulation, and that this Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.  It is expressly understood and agreed that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each Party or the authorized representatives of each of the Parties.

10.    <u>Jurisdiction</u>.    NEW   YORK   LAW   SHALL   GOVERN   THE CONSTRUCTION  OF  NON-BANKRUPTCY  PROVISIONS,  IF  ANY  AND  TO  THE

EXTENT APPLICABLE, RELEVANT TO THIS STIPULATION, WITHOUT REGARD TO THE CONFLICTS OF LAWS OR PRINCIPLES THEREOF. THE PARTIES ACKNOWLEDGE AND AGREE THAT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE SHALL HAVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE PARTIES WITH RESPECT TO THIS STIPULATION.

11.    <u>Representative Capacity</u>.  Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

12.    <u>Participation In Drafting</u>.  Each Party represents and warrants that it has participated in the drafting and preparation of this Stipulation. In any construction of this Stipulation, the Stipulation shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

13.    <u>Manner of Execution</u>.  This Stipulation may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto were on the same instrument, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

14.    <u>Court Approval</u>.  All provisions of this Stipulation are subject to the approval of the Bankruptcy Court.  This Stipulation shall terminate immediately and have no further force or effect if approval by the Bankruptcy Court of the Stipulations is not obtained on or before January 22, 2010, or such later date as to which the Parties mutually agree.

15.    <u>Consent to Entry of Order</u>.  The Parties hereby agree to the entry of an order by the Delaware Bankruptcy Court approving this Stipulation.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties

have executed this Stipulation.

Dated: December 14, 2009

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James Bromley
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2264

*Counsel to Nortel Networks Inc.*

FULBRIGHT & JAWORSKI L.L.P.

David Rosenzweig
666 Fifth Avenue
New York, NY 10103
Telephone: (212) 318-3035

*Counsel to AT&T Services, Inc.*

ROPES & GRAY LLP

Mark Bane
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 841-8808

*Counsel to Avaya Inc.*

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated:  December 14, 2009

CLEARY GOTTLIEB STEEN & HAMILTON LLP

_____

James Bromley
One Liberty Plaza
New York, NY 10006
Telephone:  (212) 225-2264

*Counsel to Nortel Networks Inc.*

FULBRIGHT & JAWORSKI L.L.P.

_____

David Rosenzweig
666 Fifth Avenue
New York, NY 10103
Telephone:  (212) 318-3035

*Counsel to AT&T Services, Inc.*

ROPES & GRAY LLP

_____

Mark Bane
1211 Avenue of the Americas
New York, NY 10036
Telephone:  (212) 841-8808

*Counsel to Avaya Inc.*