## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
: 
*In re*                                                   :      Chapter 11
                                                          :
Nortel Networks Inc., *et al.,*[1]                        :      Case No. 09-10138 (KG)
                                                          :
                                        Debtors.          :      Jointly Administered
                                                          :
                                                          :      **Hearing date: January 6, 2010 at 10:00 AM (ET)**
                                                          :      **Objections due: December 30, 2009 at 4:00 PM (ET)**
                                                          :
---------------------------------------------------------X

## MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 FOR
## AN ORDER (A) APPROVING THE CDMA/LTE CHINA
## SIDE AGREEMENT AND (B) GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, approving that certain side agreement attached hereto as Exhibit B (the "China Side Agreement"), entered into by and among Nortel Networks (China) Limited ("Nortel China"), Nortel Networks Limited ("NNL"), and NNI (the "Parties"); and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code").

**Background**

**A.      Introduction**

3.      On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, except for Nortel Networks (CALA) Inc. ("NN CALA"), which filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code on July 14, 2009.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.  Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[New York #2121142 v5]

representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  In addition, at 8 p.m. (London time) on January 14, 2009, the High Court of Justice in England placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Administrators, the Commercial Court of Versailles, France (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA will continue to operate as a going concern for an initial period of three months.  In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 8, 2009, Nortel Networks UK Limited ("NNUK") filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.  On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

---

[3]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[New York #2121142 v5]

6.      On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].  On July 17, 2009, this Court entered a further order of joint administration that provided for the joint administration of NN CALA's case with the pre-existing cases of its Debtor-affiliates [D.I. 1098].

7.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

8.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

9.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with

4

the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

10.    On August 4, 2009, this Court entered an order fixing the general bar date for filing proofs of claim or interest [D.I. 1280].  The General Bar Date for this case was September 30, 2009 at 4:00 PM (Eastern Time).  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interest against NN CALA [D.I. 2059].

11.    General schedules were filed for all Debtors except NN CALA on April 20, 2009 and May 29, 2009.   Schedules for NN CALA were filed on September 11, 2009.

**B.    Debtors' Corporate Structure and Business**

12.    Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

13.    A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration"). [4]

**Relief Requested**

14.    By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the China Side Agreement, and (b) granting related relief.

---

[4]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

[New York #2121142 v5]

**Facts Relevant to this Motion**

**A.     The Interim Funding and Settlement Agreement**

15.     On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA") governing certain intercompany matters, including the obligation of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.     Sale of Nortel's CDMA and LTE Business**

16.     Nortel's Carrier Network business ("Carrier") offers wireline and wireless networks that help service providers and cable operators supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices. The Carrier portfolio includes 2G/3G mobility networking solutions based on Code Division Multiple Access ("CDMA"), and its research and development efforts have included innovative technologies focused in the areas of 4G broadband wireless, including

6

Long Term Evolution ("LTE"), an evolving networking standard for which Nortel has completed early trials with customers.

17.    On June 19, 2009, the Sellers entered into an asset sale agreement (the "Stalking Horse Agreement") with respect to the CDMA and LTE Business by and among the Sellers and Nokia Siemens Networks B.V., as the purchaser, subject to higher and better offers.  The Debtors conducted a sale process (including an auction) in accordance with the procedures approved by this Court.  After the conclusion of the auction held on July 24, 2009, the Debtors determined that the highest and best bid was that of Telefonaktiebolaget LM Ericsson (publ) (the "Purchaser").  On July 24, 2009, the Sellers and the Purchaser entered into an asset sale agreement (the "Sale Agreement").  This Court subsequently authorized and approved the sale by order entered July 28, 2009 [D.I. 1205].

18.    As part of the transactions contemplated by the Sale Agreement, the Sellers and the Purchaser agreed that Nortel China and Purchaser would execute a separate agreement for sale of certain of Nortel China's assets relating to the CDMA/LTE business (the "Transferred China Assets").

19.    On November 2, 2009, Nortel China entered into a China Asset Sale Agreement (the "China ASA") with Ericsson China Communications Company Ltd.

## C.    The China Side Agreement

20.    In connection with the entry into the Sale Agreement and the China ASA and in furtherance of the larger sale transaction, NNL and NNI entered into the China Side Agreement[5] on November 2, 2009.  The Side Agreement is intended to provide a mechanism to ensure Nortel

---

[5]    Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the China Side Agreement.   To the extent that there are inconsistencies between the description of the provisions of the China Side Agreement contained in this Motion and the terms and conditions of the China Side Agreement, the terms of the China Side Agreement shall control.

China receives at least the minimum necessary consideration for the sale of its assets required

under local laws and regulations

21.     The China Side Agreement provides for the following:

- In the event that the amount of sale proceeds to be allocated to Nortel China as consideration for the Transferred China Assets to comply with applicable laws and regulations of the People's Republic of China (the "Required Purchase Price") exceeds the amount of sale proceeds allocated to Nortel China for the Transferred China Assets pursuant to the Interim Sales Protocol (the "Allocated Purchase Price"), NNL and NNI shall each pay to Nortel China, as additional sale proceeds, fifty percent of the difference between the Required Purchase Price and the Allocated Purchase Price (the "Adjustment Amount").

- The Required Purchase Price will be determined by an independent third-party valuation expert retained by Nortel China at its own expense, in consultation with NNL and NNI.  If either NNL or NNI objects to the valuation provided by the valuation expert within thirty (30) calendar days of receipt of notice, two additional valuation experts will be retained, and the Required Purchase Price shall be the average of the three.

- Any payment by NNL or NNI of its portion of the Adjustment Amount shall be considered to be a corresponding deduction in the amount of sale proceeds allocated to NNL and NNI for the sale of their respective CDMA/LTE assets pursuant to the ASA.

- If NNL and/or NNI object to the valuations provided by the additional valuation experts (the Additional Valuation Amounts) within 30 days of receipt of written notification of the Additional Valuation Amounts, the Parties shall submit the determination of the Adjustment Amount to arbitration in Beijing under the auspices of the China International Economic and Trade Arbitration Commission.

- In the event that subsequent to the payment of the Adjustment Amount Nortel China makes one or more dividend payments, distributions or other payments to NNL in its capacity as a shareholder of Nortel China ("Distributed Amounts"), NNL hereby agrees to pay 50% of the after-tax amounts of such Distributed Amounts to NNI upon actual receipt of the Distributed Amounts, provided that such payments to NNI shall not in the aggregate exceed the portion of the Adjustment Amount paid by NNI to Nortel China.

[New York #2121142 v5]

**Basis for Relief**

22.     The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.

23.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

24.     The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose.  The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike."  In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071).  In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is

9

receiving fair and reasonable value in exchange.  See In re Delaware & Hudson Ry. Co., 124

B.R. at 176; In re Decora Industries, Inc., 2002 WL 32332749, at *2.

25.    The Debtors respectfully submit that the China Side Agreement meets each of the
requirements under section 363 of the Bankruptcy Code.  The China Side Agreement is
supported by a sound business purpose because sale of the Transferred China Assets is
specifically contemplated as a component of the Sale Agreement.  Once the Sellers have divested
the rest of their CDMA and LTE Business, NN China will no longer be able to operate the
CDMA and LTE portions of its business as it did before the Sale. The China Side Agreement
furthers a prompt and smooth closing of the sale transaction, and provides an efficient
mechanism for allocating the consideration paid for the NN China assets in a manner compliant
with local law.

26.    Under the Sale Order, this Court found that the total Purchase Price payable
pursuant to the Sale Agreement constitutes value and fair consideration for the CDMA and LTE
Business under the Bankruptcy Code and any other applicable law.  Payment of the Allocated
Purchase Price upon execution of the China ASA was specifically contemplated as a portion of
the Purchase Price pursuant to section 2.2.2 of the Sale Agreement.  The Allocated Purchase
Price represents the value that the Sellers and Purchaser believe, in good faith, to be the accurate
value of the Transferred China Assets.  However, the laws of the PRC require a more elaborate
valuation process that may ultimately require a greater portion of the total Purchase Price to be
allocated to NN China.  The Parties to the China Side Agreement have agreed that to the extent
that a greater portion of the total proceeds of the sale must be allocated to NN China, the excess
above the amount originally contemplated should be borne equally by NNI and NNL.  The China
Side Agreement documents and provides a mechanism to effectuate this agreement.

**Notice**

27.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or first class mail to (i) counsel to the Purchaser; (ii) the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; and (vi) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

28.     No prior request for the relief sought herein has been made to this or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[New York #2121142 v5]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  December 15, 2009
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

[New York #2121142 v5]