## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
*In re*                                                  :       Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                       :       Case No. 09-10138 (KG)
:
                                      Debtors.           :       Jointly Administered
:
                                                         :       **Hearing date:  January 21, 2010 at 11:00 a.m. (ET)**
                                                         :       **Responses due:  January 8, 2010 at 4:00 p.m. (ET)**
---------------------------------------------------------X

### DEBTORS' THIRD OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO SECTION 502 OF THE BANKRUPTCY CODE AND RULE 3007 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (DUPLICATE CLAIMS)

**TO THE CLAIMANTS LISTED ON <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION:**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED ON <u>EXHIBIT A</u> ATTACHED TO THIS OBJECTION.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBIT A</u>.**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

The above-captioned debtors and debtors-in-possession (the "Debtors") hereby object (the "Objection") pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to those certain claims listed on **Exhibit A**, attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of Allan Bifield in Support of the Debtors' Third Omnibus Objection to those certain claims (the "Allan Bifield Declaration"), attached hereto as **Exhibit B** and incorporated by reference, and respectfully state as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code sections 105 and 502, Bankruptcy Rule 3007, and Local Rule 3007-1.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), the direct corporate parent of Nortel Networks Inc. ("NNI"), Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of liquidation for a further period of three months.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law.

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

11.    Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.    Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].   In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065].

**D.      Bar Date, Schedules and Notice**

14.      On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") [D.I.s 616-627, 801-810].   On September 11, 2009, the Debtors filed the Schedules and Statements for NN CALA.   On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities (the "Amended Schedules") and Amended Statements of Financial Affairs (the "Amended Statements") [D.I.s 1811-1825].

15.      On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280] establishing September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors other than NN CALA (collectively, the "Claimants") to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.   Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.   On December 2,

2009, the Court entered an order [D.I.  2059] establishing January 25, 2010 at 4:00 p.m. (prevailing Eastern Time) as the general claims bar date for filing proofs of claim against NN CALA.

**E.      The Claims Resolution Process**

16.      In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts thereof owed to their creditors.

17.      The Debtors' register of claims (the "Claims Register"), prepared and maintained by the Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, reflects that, as of the General Bar Date, approximately 5,764 proofs of claim (collectively, the "Proofs of Claim") were filed in these chapter 11 cases asserting claims against the Debtors (collectively, the "Claims").  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules (the "Scheduled Claims") and the Claims asserted in the Proofs of Claim (including any supporting documentation) filed in these cases.  The Debtors also are comparing the Claims asserted in the Proofs of Claims with their Books and Records to determine the validity of the asserted Claims.

18.      This reconciliation process includes identifying particular categories of Claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of Claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors will continue to file omnibus objections to such categories of Claims if and where warranted.  This Objection is one such omnibus objection.

19.     On December 14, 2009, the Court entered an Order granting the Debtors relief

from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I.

2125].

## Relief Requested

20.     The Debtors object to each of the Claims identified on the attached **Exhibit A** (the

"Duplicate Claims") and respectfully request that the Court enter an order pursuant to section

502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 disallowing in

full each of the Duplicate Claims.  The Debtors and/or their advisors have reviewed the Claims

Register and each of the Duplicate Claims.  Based on this review, the Debtors have determined

that each of the Duplicate Claims is redundant of another Claim filed against the same Debtor

entity by or on behalf of the same Claimant relating to the same purported liability.[6]  If the

Duplicate Claims identified on **Exhibit A** are not disallowed, the Claimants may obtain double

recovery for the same alleged liability.  By this Objection, the Debtors seek disallowance of each

of the Duplicate Claims in order to limit each Claimant to a single claim against a Debtor's estate

arising from the same alleged liability.

21.     A Claimant is not entitled to multiple recoveries for a single liability against a

single Debtor because a Claimant is entitled to only a single satisfaction, if at all, of any

particular claim of liability against a debtor.  See, e.g., In re Handy Andy Home Improvement

Ctrs., Inc., 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998) ("as it is axiomatic that one can not recover

for the same debt twice").  Absent disallowance of the Duplicate Claims, the Debtors and their

estates would risk multiple recoveries by a single Claimant for a single claim of liability against

a Debtor.

---

[6]     In certain instances, the Claimant did not identify a Debtor against whom the Duplicate Claim or Surviving
Claim is being asserted.

22.     For each of the Duplicate Claims, the Debtors have identified a surviving claim which asserts the same liability and which claim number is identified on **Exhibit A** in the column labeled "Surviving Claim."   The Surviving Claims will be unaffected by the relief requested in this Objection (subject to the Debtors' right to assert additional objections and defenses to the allowance of such claim), and each Claimant's right to assert these liabilities against the Debtors' estates will be preserved, subject to the Debtors' reservations of their rights to object to the Surviving Claims and other claims on all grounds, whether legal, factual, procedural, substantive or non-substantive.   Accordingly, each of the Duplicate Claims should be disallowed in full.

### Legal Bases for Objection

23.     When asserting a proof of claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992).   Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.   See id.   A party wishing to dispute such claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.   Id.   In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.   Id.   Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.   Id.   The burden of persuasion is always on the claimant.   Id.

24.     For the reasons set forth above, the Claims addressed in this Objection do not meet the standards for *prima facie* validity, given that creditors should not be entitled to a double

recovery from the Debtors through the filing of two proofs of claim, and the Claims therefore should be disallowed as requested.

## **Separate Contested Matters**

25.     To the extent that a response is filed regarding any Claim listed in the Objection and the Debtors are unable to resolve the response, such Claim, and the objection by the Debtors to such claim asserted herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in the Objection shall be deemed a separate order with respect to each Claim.

## **Responses to Omnibus Objections**

26.     To contest an objection, a Claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time) on January 8, 2010 (the "Response Deadline")**.  Every Response must be filed with the Office of the Clerk of the United States Bankruptcy Court for the District of Delaware: 824 Market Street, Wilmington, Delaware 19801, and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  James L. Bromley and Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott

27.     Every Response to this Objection must contain, at a minimum, the following information:

    a.   A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of the Objection to which the response is directed;

    b.   The name of the Claimant, the claim number, and a description of the basis for the amount of the Claim;

    c.   The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

    d.   Any supporting documentation, to the extent that it was not included in the Proof of Claim previously filed with the clerk or claims agent, upon which the Claimant intends to rely to support the basis for and amounts asserted in the Proof of Claim; and

    e.   The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or the Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the Claimant.

28.     If a Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the claim, without further notice to the Claimant or a hearing.

## Replies to Responses

29.     The Debtors may, at their option, file and serve a reply to any response so that it is received by the Claimant (or the Claimant's counsel, if represented) no later than three (3) days prior to the Hearing.

## Adjournment of Hearing

30.     The Debtors reserve the right to seek an adjournment of the Hearing on any Responses to the Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the Hearing, and such agenda will be served on the affected Claimant by serving the person designated in the Response.

## Reservation of Rights

31.     The Debtors expressly reserve the right to amend, modify or supplement this Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed or overruled, the Debtors reserve the right to object to each of the Claims on any other grounds that the Debtors discover or elect to pursue.  This Objection sets out non-substantive objections to the Claims set forth in **Exhibit A**.  The Debtors reserve their right to assert other non-substantive objections and/or one or more substantive objections to the Claims set forth on **Exhibit A** at a later time.

32.     Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have to (a) commence avoidance actions under the applicable sections of the Bankruptcy Code, including, but not limited to, sections 547 and 548 of the Bankruptcy Code, against the Claimants subject to this Objection, (b) enforce the Debtors' rights of setoff against the Claimants relating to such avoidance actions, or (c) seek disallowance pursuant to Bankruptcy Code Section 502(d) of Claims of the Claimants that are subject to such avoidance actions.

## Relief From Amended Bankruptcy Rule 3007

33.     Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007, as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

**<u>Notice</u>**

34.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibit A**; and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order substantially in the form attached hereto as **Exhibit C** disallowing each of the Duplicate Claims identified in **Exhibit A** as requested herein, and (ii) grant such other and further relief as is just and proper.

Dated:  December 22, 2009
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*