## Exhibit H

**Incentive Fee Letter**

EXECUTION VERSION

## INCENTIVE FEE SIDE AGREEMENT

This agreement (the "**Agreement**") is entered by and among (i) Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**"), (ii) Nortel Networks Limited, a corporation organized under the laws of Canada ("**NNL**"), (iii) Nortel Networks Inc., a corporation organized under the laws of Delaware ("**NNI**" and, together with NNC and NNL, the "**Main Sellers**"), (iv) Nortel Networks UK Limited (in administration) ("**NNUK**" and together with the Main Sellers, the "**Payment Parties**") acting by its joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF who act as agents for NNUK without any personal liability whatsoever (the "**Joint Administrators**") and (v) the Joint Administrators (together, the "**Parties**").  To the extent capitalized words used in this Agreement are not defined in this Agreement, those words shall have the meanings given to them in the North American Agreement (as defined below).

WHEREAS, pursuant to that certain Asset Sale Agreement, dated the date hereof (the "**North American Agreement**"), among the Main Sellers and the Affiliates of the Main Sellers listed in Exhibit A thereto (the "**Other Sellers**" and together with the Main Sellers, the "**Sellers**") and GENBAND, Inc., a corporation organized under the laws of Delaware ("**Purchaser**"), the Sellers have agreed to transfer the Business (as defined in the North American Agreement) owned by the Sellers to the Purchaser;

WHEREAS, simultaneously with the execution of the North American Agreement, pursuant to that certain Asset Sale Agreement, dated the date hereof, among the EMEA Sellers (as defined in the EMEA Agreement) and certain other parties and the Purchaser (the "**EMEA Agreement**" and, together with the North American Agreement, the "**Sale Agreements**"), the EMEA Sellers have agreed to transfer the Business owned by the EMEA Sellers to the Purchaser; and

WHEREAS, as an inducement to the Purchaser and to compensate One Equity Partners III, L.P. ("**OEP**"), an existing shareholder of the Purchaser, for its willingness to provide financing to the Purchaser for the proposed transactions under the Sale Agreements, the Parties have agreed to pay a fee in the amount of US$3,600,000 to OEP (the "**Incentive Fee**").

NOW, THEREFORE, in further consideration of the respective covenants made herein, and of the mutual benefits to be derived hereby, the Parties hereto agree to the following terms:

## ARTICLE ONE

SECTION 1.1  <u>Incentive Fee</u>.  Within five (5) Business Days of the Effectiveness Date (as defined below), the Payment Parties shall pay the Incentive Fee to OEP in accordance with the terms of this Section 1.1.  The Parties hereby agree and acknowledge that: (a) each of NNI, NNC and NNUK shall initially each pay one third (1/3) of the Incentive Fee on behalf of NNI and its Respective Affiliates; NNC, NNL and their Respective Affiliates; and NNUK and the other EMEA Sellers, respectively; and (b) the EMEA Sellers intend to enter into a separate agreement to govern the allocation of their share of the Incentive Fee under this Agreement;

provided that if the EMEA Sellers fail to reach such agreement, the payment obligations of NNUK under this Agreement shall continue to be in full force and effect; and provided, further that if the transactions contemplated by the Sale Agreements are consummated or an Alternative Transaction is consummated, the Incentive Fee shall be ultimately borne by the Payment Parties in proportion to the allocation of sales proceeds from such transactions or Alternative Transaction, as the case may be, to NNI and its Respective Affiliates (taken together); NNC, NNL and their Respective Affiliates (taken together); and NNUK and the other EMEA Sellers (taken together).

SECTION 1.2  Effectiveness.  No provision of this Agreement or the obligations of the Parties under this Agreement shall be effective until the later of the date that (x) the U.S. Bidding Procedures Order is entered and (y) the Canadian Sales Process Order is entered (the "Effectiveness Date").

## ARTICLE TWO

SECTION 2.1  Exclusion of Liability and Acknowledgments re Joint Administrators.

(a)    The Parties agree that the Joint Administrators have negotiated and are entering into this Agreement as agents for NNUK to which they are appointed and that none of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether such liability would arise under Paragraph 99(4) of Schedule B1 of the Insolvency Act or otherwise howsoever, whether on their own part or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

(b)    The Joint Administrators are a party to this Agreement: (i) as agents for, and on behalf of, NNUK; and (ii) in their own capacities solely for (1) taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act, (2) obtaining the benefit of any provisions of this Agreement expressed to be conferred on them and (3) enforcing the obligations of the other Parties to this Agreement.

(c)    Notwithstanding anything to the contrary in Section 3.3 of this Agreement, any claim, action or proceeding against the Joint Administrators arising from or related to (i) the personal liability of the Joint Administrators, their firm or partners, (ii) their qualification to act as insolvency practitioners in accordance with Part XIII of the Insolvency Act or (iii) their appointment as joint administrators of NNUK and their remaining as current joint administrators thereof under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

## ARTICLE THREE

SECTION 3.1  Counterparts.  The Parties may execute this Agreement in three or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together will constitute one and the same instrument.

2

SECTION 3.2  <u>Severability</u>.  In the event that any provision of this Agreement shall be illegal, invalid, or unenforceable, such provision shall be construed by limiting it in such a way so as to render it legal, valid and enforceable to the maximum extent provided by applicable law, and the legality, validity and enforceability of the remaining provisions shall not in any way be affected or impaired by any illegality, invalidity or unenforceability of any provision.  The Parties hereto shall negotiate in good faith with respect to any provision to this Agreement found to be illegal, invalid or unenforceable, in order to agree on a substitute provision giving effect, to the maximum extent possible, to the original intent of such provision.

SECTION 3.3  <u>Governing Law</u>.  The Parties agree that this Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction; <u>provided</u> that Article 2 shall be governed exclusively by English law.

SECTION 3.4  <u>Jurisdiction</u>.  To the fullest extent permitted by applicable Law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the U.S. Bankruptcy Court and the Canadian Court (in a joint hearing conducted under the Cross-Border Protocol adopted by such courts, as it may be in effect from time to time), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement, (ii) agrees that any claim, action or proceeding by such party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement may be brought in the U.S. Bankruptcy Court and the Canadian Court, (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum, (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by law shall be valid and sufficient service thereof and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable Law; <u>provided</u> that any claim, action or proceeding set forth in Article Two shall be brought exclusively in the English courts.

SECTION 3.5  <u>Successors</u>.  Except as otherwise expressly provided in this Agreement, all covenants and agreements set forth in this Agreement will be binding upon and inure to the benefit of such parties and their respective successors

SECTION 3.6  <u>Headings</u>.  The headings used in this Agreement are for the purpose of reference only and shall not affect the meaning or interpretation of any provision of this Agreement.

3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of December 23, 2009

Nortel Networks Corporation

By: _____
    Name: Anna Ventresca
    Title:  General Counsel-Corporate and
    Corporate Secretary

By: _____
    Name: Grace McDonald
    Title:  Assistant Secretary


Nortel Networks Limited

By: _____
    Name: Anna Ventresca
    Title:  General Counsel-Corporate and
    Corporate Secretary

By: _____
    Name: Grace McDonald
    Title:  Assistant Secretary


Nortel Networks Inc.

By: _____
    Name: Anna Ventresca
    Title:  Chief Legal Officer

[Side Letter Signature Page]

**SIGNED** for and on behalf of **Nortel Networks** )
**UK Limited** (in administration) by Christopher )
Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

..................................................
Christopher Hill

Witness signature
.......................................................... )
Name: MICHELLE WOOD )
Address: ERNST & YOUNG LLP )
1 More London Place
London
SE1 2AF

**SIGNED** by Christopher Hill                    )

in his own capacity and on behalf of the Joint
Administrators without personal liability and
solely for the benefit of the provisions of this
Agreement expressed to be conferred on or
given to the Joint Administrators:

)
)
)

..................................................
Christopher Hill

Witness signature

..................................................
Name:    MICHELLE WOOD
Address:

)
)
)

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**