IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X

*In re*

Nortel Networks Inc., *et al.*,[1]

                Debtors.

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

------------------------------------------------------------X

## DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1) SHORTENING NOTICE RELATING TO DEBTORS' MOTION FOR ORDERS AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT AND RELATED RELIEF

Nortel Networks Inc. ("NNI")[2], and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), hereby move this Court (the "Motion to Shorten") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) shortening notice with respect to certain elements of the Debtors Motion (the "Sale Motion") for orders (I)(A) authorizing the Debtors' entry into the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Stalking Horse Agreement (the "Stalking Horse Agreement") among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC") and certain other entities identified therein as sellers (together, the "Sellers") and GENBAND Inc., as purchaser ("GENBAND" or the "Stalking Horse Purchaser") for the sale of certain assets of the Sellers' Carrier Voice Over IP and Application Solutions business (the "CVAS Business") (the "Purchased Assets" and together with the Assumed and Assigned Contracts, the "Assets"), (B) authorizing and approving the Bidding Procedures and Bid Protections, (C) approving payment of an Incentive Fee (as defined in the Motion), (D) approving the Notice Procedures (as defined in the Motion) and the Assumption and Assignment Procedures (as defined in the Motion), (E) authorizing the Debtors to file certain documents under seal and (F) setting the date for a hearing (the "Sale Hearing") to consider the sale of the Assets and the assumption and assignment of the Assumed and Assigned Contracts (the "Sale"), (II) authorizing and approving (A) the sale of the Purchased Assets, free and clear of all liens, claims and encumbrances, and (B) the assumption and assignment of certain executory contracts (the "Motion"); (ii) permitting parties to file objections, if any, to certain elements of the relief requested in the Motion on or before January 4, 2010 at 4:00 p.m. (prevailing Eastern Time); and (iii) allowing certain elements of the Motion to be heard at the omnibus hearing scheduled for January 6, 2010 at 10:00 a.m. (prevailing Eastern Time) (the "January 6th Hearing"). For the reasons set forth herein, the Debtors believe that prompt consideration of the Motion on shortened notice is necessary and appropriate and respectfully request that the Court enter an order shortening notice with respect to the Motion and permitting the Motion to be heard at the January 6th Hearing. In support of this Motion to Shorten, the Debtors respectfully state as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002 and 9006 and Local Rule 9006-1(e).

## BACKGROUND

A. **Introduction**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL"), and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), has filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

7. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria)

of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 8, 2009, NNUK filed petitions in this Court for recognition of the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code. On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

11. A description of the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3].

## RELIEF REQUESTED

12. By this Motion to Shorten, the Debtors respectfully request that the Court enter an order (i) shortening notice pursuant to sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002 and 9006 and Local Rule 9006-1(e), with respect to the Motion; (ii) permitting parties to file objections, if any, to the relief requested in the Motion on or before January 4, 2010 at 4:00 p.m. (prevailing Eastern Time); (iii) allowing certain elements of the Motion to be heard at the January 6th Hearing; and (iv) granting such other and further relief to the Debtors as the Court deems just and proper.

### Facts Relevant to this Motion

13. As set forth more fully in the Sale Motion, certain of the Debtors and the other Sellers have entered into the Stalking Horse Agreement pursuant to which the Sellers propose to sell to the Stalking Horse Purchaser certain assets and to assume and assign certain executory

contracts of the Debtors relating to their CVAS Business (the "Assets"). As set forth in the declaration of George Reidel, attached as Exhibit B to the Motion (the "Reidel Declaration"), the potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold. While it is clear that the Assets have significant value, the full value of these Assets may not be realized if a sale is not consummated quickly.

14. The Debtors entered into the Stalking Horse Agreement after extensive marketing efforts and discussions with multiple interested parties. As a result, the Debtors believe that the Stalking Horse Agreement represents the best deal available for the sale of the Assets. The Stalking Horse Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Stalking Horse Agreement if certain milestones in the sale process are not timely met. Furthermore, the Debtors covenant to use commercially reasonable efforts to ask the Court to enter the U.S. Bidding Procedures within fifteen (15) days of filing the Motion. In light of this background, the Debtors believe it is essential to commence and complete this sale process as quickly as possible.

**BASIS FOR RELIEF**

15. Bankruptcy Rule 2002(a)(2) requires ". . . at least 21 days' notice by mail of . . . a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice...." According to Local Rule 9006-1(e), however, the notice period may be shortened by order of the Court upon written motion "specifying the exigencies justifying shortened notice." The Debtors respectfully submit that allowing the Motion to be considered on an expedited basis at the January 6th Hearing is reasonable and appropriate under the circumstances.

16. The Debtors respectfully submit that shortened notice is appropriate in this instance because, as discussed above, the expeditious sale of the Assets is critical to the maximization of the value of the Assets and, in turn, to a recovery for the Debtors' estates. Therefore, the Debtors believe that a hearing on certain elements of the Sale Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

17. The Debtors have consulted with counsel for the Committee and the Bondholders Group, and understand that both are supportive of shortening the notice period for the Sale Motion as requested herein.

18. For these reasons, the Debtors respectfully submit that allowing the Sale Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

## NOTICE

19. Notice of the Motion and Motion to Shorten have been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel for the Committee; (iii) counsel for the Bondholders; (iv) counsel to the Stalking Horse Purchaser; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## NO PRIOR REQUEST

20. No prior request for the relief sought herein has been made to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully requests that this Court enter an order (i) shortening notice pursuant to sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2002 and 9006 and Local Rule 9006-1(e); (ii) permitting parties to file objections, if any, to the relief requested in the Motion on or before January 4, 2010 at 4:00 p.m. (prevailing Eastern Time); (iii) allowing certain elements of the Motion to be heard at the January 6th Hearing; and (iv) granting such other and further relief to the Debtors as the Court deems just and proper.

Dated: December 23, 2009
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (No. 5125)
Lisa M. Schweitzer (No. 1033)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4663

*Counsel for the Debtors and Debtors in Possession*