IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
In re :
: Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1] :
: Jointly Administered
Debtors. :
:
--------------------------------------------------------- X

**DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1)
SHORTENING NOTICE RELATING TO DEBTORS' OMNIBUS MOTION FOR AN
ORDER (A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF
CERTAIN ADDITIONAL EXECUTORY CONTRACTS IN CONNECTION WITH
THE SALE OF THE DEBTORS' ENTERPRISE SOLUTIONS BUSINESS AND
(B) AUTHORIZING THE DEBTORS TO FILE INFORMATION UNDER SEAL**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this court (the "Motion to Shorten") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9006-1(e) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to permit consideration on shortened notice of Debtors' Motion (the "Motion") for an Order (a) approving the assumption and assignment of certain additional

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

executory contracts in connection with the sale of certain assets of, and equity interests in, the Debtors' Enterprise Solutions Business to Avaya Inc. ("Avaya") as purchaser (together with its designees, the "Purchaser") in accordance with the terms and conditions of the Amended and Restated Asset and Share Sale Agreement entered into by the Debtors, certain of their affiliates, and the Purchaser dated September 14, 2009, as may be subsequently amended (the "Sale Agreement"); (b) authorizing the Debtors to file certain information under seal; and (c) granting them such other and further relief as the Court deems just and proper. In support of this Motion to Shorten, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 102(1) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On November 30, 2009, the French Court extended the suspension of liquidation for a further period of three months. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

11. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.    Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network

5

components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya [D.I. 1514]. In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065] (the foregoing, collectively, the "Sale Transactions").

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

### Relief Requested

15. By this Motion to Shorten, the Debtors seek an order: (i) shortening the notice period for the Motion, and (ii) granting related relief.

### Facts Relevant to this Motion

**A.     The Enterprise Business Solutions Sale**

16. Nortel's Enterprise Solutions business unit provided solutions for addressing the communication needs of large and small businesses globally across a wide variety of industries by building new networks and transforming existing networks into more cost-effective, packet-based networks supporting data, voice and multimedia communications (the "Enterprise Solutions Business"). In particular, the Enterprise Solutions Business specialized in providing solutions that allow its customers to integrate and remove barriers between voice, email, conferencing, video and instant messaging technologies. Nortel's Enterprise Solutions Business

had a global presence with operations and customers in the United States, Canada, Central and Latin America, Europe, the Middle East, Africa, and Asia.

17. On July 20, 2009, the Debtors filed a Motion for Orders (I)(A) Authorizing Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal and (G) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases [D.I. 1131] (the "Sale Motion"). The Sale Motion sought approval of the sale of certain of the Debtors' assets relating to the Debtors' Enterprise Solutions Business (the "Assets"), including the assumption and assignment of certain executory contracts to the Successful Bidder at an auction, and the approval of certain bidding procedures (the "Bidding Procedures") in connection with the proposed sale. Following a hearing on the Bidding Procedures, this Court entered an order on August 4, 2009 [D.I. 1278] (the "Sale Procedures Order"), approving the Bidding Procedures to govern the sale by NNI and certain of its affiliates (collectively, the "Sellers") of the Assets.

18. In accordance with the Bidding Procedures, the Sellers conducted an auction that commenced on September 11, 2009 (the "Auction"). The Successful Bid (as defined in the Bidding Procedures) resulting from the Auction was the Sale Agreement, dated as of September 14, 2009 with Avaya as Purchaser (the "Successful Bid").

19.     On September 16, 2009, this Court entered an order approving the sale of the Assets to the Purchaser pursuant to the Successful Bid [D.I. 1514] (the "Sale Order"). The Canadian Court entered a corresponding order approving the sale in the Canadian Proceedings on the same day. The sale of the Enterprise Solutions Business was consummated on December 18, 2009.

20.     As part of the Sale Order, the Court authorized the Debtors under Bankruptcy Code section 365 to assume and assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing or such later date as contemplated by the Sale Agreement. The Assumed and Assigned Contracts were defined in the Sale Agreement to include certain executory contracts (including supplier and customer contracts) to which the Debtors were a party prior to the sale.

21.     The Debtors and the Purchaser have identified a number of additional prepetition executory contracts that are related to the Assets (the "Additional Contracts"), the counterparties to which (the "Counterparties") have not been notified of the assumption and assignment of such contracts pursuant to the Assignment Procedures approved by the Court in the Sale Procedures Order. The Additional Contracts designated for assumption and assignment to the Purchaser consist of approximately sixty-four (64) customer contracts related to the Assets to which the Debtors are a party, including reseller agreements and sales agreements.

**Basis for Relief Requested**

22.     Local Rule 9006-1(e) provides for shortened notice "by order of the Court, on written motion (served on all interested parties) specifying the exigencies justifying shortened notice." Del. Bankr. L.R. 9006-1(e). As set forth below, shortening notice is justified here.

23.     The Debtors respectfully submit that shortened notice is appropriate in this instance. The sale of the Enterprise Solutions Business was consummated on December 18,

2009, and the assumption and assignment of the Additional Contracts is required in order to smooth the operational integration of the two businesses and to maintain customer confidence during the transition. The Debtors submit that smoothly integrating the businesses is in the best interests of the Debtors' estates and creditors, as it provides customers of the Enterprise Solutions Business, many of whom are also customers of the Debtors' other businesses, the confidence required to continue doing business with the Debtors until other asset sales are consummated. Additionally, despite the shortening of the notice period requested by this Motion to Shorten, taking into account the totality of the circumstances, Counterparties will have been provided with adequate notice. Pursuant to the Assignment Procedures approved by the Court in the Sale Procedures Order, any Counterparty wishing to object to any matter pertaining to a proposed assumption and assignment of a contract had ten (10) days to file a written objection with the Court. The Debtors have served notice of the Motion on each of the Counterparties to the Additional Contracts on December 23, 2009, including a personalized schedule containing those contracts designated for assumption and assignment to which they are a Counterparty. Therefore, each of the Counterparties will be provided with more than ten (10) days notice of the proposed assumption and assignment of its contract. Furthermore, the vast majority of the Counterparties to the Additional Contracts have already received notice that the Debtors wish to assign their contracts outside of the bankruptcy process.

24. As the sale of the Enterprise Solutions Business is global in scope and involved the Debtors' affiliates all around the world, in addition to the Assignment Procedures approved by the Court in the Sale Procedures Order, the Debtors' affiliates pursued other means to transfer contracts of non-debtor affiliates. Notices of assignment were sent to counterparties of so-called non-365 contracts – contracts that were not prepetition executory contracts of the Debtors subject

to assumption and assignment under section 365 of the Bankruptcy Code. Sixty (60) of the sixty-four (64) Counterparties to the Additional Contracts inadvertently received this form of notice rather than the traditional section 365 notice. As of the date of this Motion to Shorten, the Debtors are not aware that any of the sixty (60) Counterparties that received this form of notice have any objection to the assignment of their contracts to Avaya.

25. For these reasons, the Debtors respectfully submit that allowing the Motion to be considered on shortened notice is reasonable and appropriate under the circumstances.

## Notice

26. Notice of the Motion to Shorten is being given via first-class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the Counterparties; (iii) the U.S. Trustee; (iv) the Monitor; (v) counsel to the Committee; (vi) counsel to the Bondholder Group; and (vii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

27. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion to Shorten and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: December 23, 2009  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley  
Lisa M. Schweitzer  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors  
and Debtors in Possession*