**UNITED STATES (U.S.) BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
In re: Nortel Networks Inc. et al [1]
Cases No. 09-10138 – 09-10152 (KG) Jointly Administered
Reporting Period: November 1, 2009 through November 28, 2009

**MONTHLY OPERATING REPORT**
**No. 10**

| REQUIRED DOCUMENTS | Form No. | Document Attached | Affidavit/ Supplement Attached |
|---|---|---|---|
| Condensed Combined Debtors-In-Possession Statement of Operations for the period from November 1, 2009 through November 28, 2009 | MOR-1 | X | |
| Condensed Combined Debtors-In-Possession Balance Sheets as of November 28, 2009 | MOR-2 | X | |
| Condensed Combined Debtors-In-Possession Statement of Cash Flows for the period from November 1, 2009 through November 28, 2009 | MOR-3 | X | |
| Notes to Monthly Operating Report | MOR-4 | X | |
| Schedule of Cash Disbursements | MOR-5 | X | |
| Disbursements by Petitioning Entity | A | X | |
| Bank Account Information | B | X | |
| Changes in Balances with Debtors and Non-Debtors | MOR-6 | X | |
| Status of Post-Petition Taxes | MOR-7 | X | |
| Summary of Unpaid Post-Petition Debts | MOR-8 | X | |
| Summary Accounts Payable Aging Schedule | MOR-8 | X | |
| Summary Accounts Receivable Aging Schedule | MOR-8 | X | |
| Debtor Questionnaire | MOR-9 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the attached documents are true and correct to the best of my knowledge and belief.

**RESPONSIBLE PARTY AND PREPARER:**

_____                    December 23, 2009
Clarke Glaspell  Vice President of each of the U.S. Debtors


_____


([1]) The U.S. Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel AltSystems, Inc. (9769), Nortel AltSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226) (together, the "U.S. Debtors").  Addresses for the U.S. Debtors can be found in the U.S. Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

MOR-1

# U.S. BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE
In re: Nortel Networks Inc. et al
### Cases No. 09-10138 – 09-10152 (KG) Jointly Administered
### Condensed Combined Debtors-In-Possession Statement of Operations
### Reporting Period: November 1, 2009 through November 28, 2009
### (Unaudited)
### (In millions of U.S. dollars)

| | NNI | AltSystems | Other |
|---|---|---|---|
| Total revenues | $ 141 | $ - | $ - |
| Total cost of revenues | 66 | - | - |
| Gross profit | 75 | - | - |
| Selling, general and administrative expense | 39 | - | - |
| Research and development expense | 14 | - | - |
| Amortization of intangible assets | - | - | - |
| Loss (gain) on sales of businesses and assets | (5) | - | - |
| Other operating expense (income) - net | (6) | - | - |
| Operating earnings (loss) | 33 | - | - |
| Other income (expense) - net | - | - | - |
| Interest expense | (1) | - | - |
| Earnings from continuing operations before reorganization items, income taxes and equity in net earnings (loss) of associated companies | 32 | - | - |
| Reorganization items - net (note 6) | (11) | - | - |
| Earnings from continuing operations before income taxes and equity in net earnings (loss) of associated companies | 21 | - | - |
| Income tax expense | - | - | - |
| Earnings from continuing operations before equity in net earnings (loss) of associated companies | 21 | - | - |
| Equity in net earnings (loss) of associated companies - net of tax | - | - | - |
| Equity in net earnings (loss) of non-Debtor subsidiaries - net of tax | - | 1 | - |
| Net earnings (loss) from continuing operations | $ 21 | $ 1 | $ - |
| Net earnings (loss) from discontinued operations - net of tax (note 10) | 43 | - | - |
| Net earnings (loss) | $ 64 | $ 1 | $ - |
| Income attributable to noncontrolling interests | - | - | - |
| Net earnings (loss) attributable to U.S. Debtors | $ 64 | $ 1 | $ - |

The Condensed Combined Debtors-In-Possession Statement of Operations of each Reporting Group contained herein was derived from the books and records of the U.S. Debtors. The amounts reflected in these condensed combined financial statements are unaudited. The accompanying notes and schedules are an integral part of the condensed combined financial statements.

MOR-2

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks Inc. et al**
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Condensed Combined Debtors-In-Possession Balance Sheet**
**As of November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

| | NNI | AltSystems | Other |
|---|---|---|---|
| **ASSETS** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | $ 1,028 | $ - | $ - |
| Restricted cash and cash equivalents | 45 | 1 | - |
| Accounts receivable - net | 107 | - | - |
| Intercompany accounts receivable | 672 | 39 | (5) |
| Inventories - net | 85 | - | - |
| Other current assets | 116 | - | - |
| Assets held for sale (note 9) | 382 | - | - |
| Assets of discontinued operations (note 10) | 309 | - | - |
| **Total current assets** | 2,744 | 40 | (5) |
| Investments in non-Debtor subsidiaries | 222 | 1 | (2) |
| Investments - other | 38 | - | - |
| Plant and equipment - net | 217 | - | - |
| Goodwill | - | 1 | - |
| Other assets | 38 | - | - |
| **Total assets** | $ 3,259 | $ 42 | $ (7) |
| **LIABILITIES AND SHAREHOLDERS' DEFICIT** | | | |
| **Current liabilities not subject to compromise** | | | |
| Trade and other accounts payable | $ 25 | $ - | $ - |
| Intercompany accounts payable | 82 | 9 | (6) |
| Payroll and benefit-related liabilities | 70 | 1 | - |
| Contractual liabilities | 2 | - | - |
| Restructuring liabilities | 4 | - | - |
| Other accrued liabilities | 204 | - | - |
| Liabilities held for sale (note 9) | 539 | - | - |
| Liabilities of discontinued operations (note 10) | 345 | 1 | - |
| **Total current liabilities not subject to compromise** | 1,271 | 11 | (6) |
| Restructuring | 7 | - | - |
| Deferred income and other credits | 33 | - | - |
| Deferred revenue | 5 | - | - |
| Post-employment benefits | 70 | - | - |
| **Total liabilities not subject to compromise** | 1,386 | 11 | (6) |
| Liabilities subject to compromise (note 7) | 5,979 | 53 | 126 |
| **Total liabilities** | 7,365 | 64 | 120 |
| **SHAREHOLDERS' DEFICIT** | | | |
| Common shares | - | 719 | 32 |
| Preferred shares | - | 16 | 47 |
| Additional paid-in capital | 17,746 | 7,330 | 5,252 |
| Accumulated deficit | (21,856) | (8,087) | (5,457) |
| Accumulated other comprehensive income (loss) | 4 | - | (1) |
| **Total U.S. Debtors shareholders' deficit** | (4,106) | (22) | (127) |
| Noncontrolling interests | - | - | - |
| **Total shareholders' deficit** | (4,106) | (22) | (127) |
| **Total liabilities and shareholders' deficit** | $ 3,259 | $ 42 | $ (7) |

The Condensed Combined Debtors-In-Possession Balanced Sheet of each Reporting Group contained herein was derived from the books and records of the U.S. Debtors. The amounts reflected in these condensed combined financial statements are unaudited. The accompanying notes and schedules are an integral part of the condensed combined financial statements.

MOR-3

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
In re: Nortel Networks Inc. et al
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Condensed Combined Debtors-In-Possession Statement of Cash Flows**
**Reporting Period: November 1, 2009 through November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

| | NNI | AltSystems | Other |
|---|---|---|---|
| **Cash flows from (used in) operating activities** | | | |
| Net earnings (loss) attributable to U.S. Debtors | $      64 | $      1 | $ |
| Net loss (earnings) from discontinued operations - net of tax | (43) | - | |
| Adjustments to reconcile net loss from continuing operations to net cash from | | | |
| (used in) operating activities, net of effects from acquisitions and divestitures of businesses: | | | |
| Amortization and depreciation | 4 | - | - |
| Gain on sales and write downs of investments, businesses and assets - net | (4) | - | - |
| Pension and other accruals | 3 | - | - |
| Reorganization items - non cash | 10 | - | - |
| Other - net | 49 | (1) | - |
| Change in operating assets and liabilities | 16 | - | - |
| Net cash from (used in) operating activities - continuing operations | 99 | - | - |
| Net cash from (used in) operating activities - discontinued operations | - | - | |
| Net cash from (used in) operating activities | 99 | - | |
| **Cash flows from (used in) investing activities** | | | |
| Change in restricted cash and cash equivalents | 5 | - | |
| Net cash from (used in) investing activities - continuing operations | 5 | - | - |
| Net cash from (used in) investing activities - discontinued operations | - | - | - |
| Net cash from (used in) investing activities | 5 | - | - |
| **Cash flows from (used in) financing activities** | | | |
| Decrease in capital leases obligations | (1) | - | |
| Net cash from (used in) financing activities - continuing operations | (1) | - | - |
| Net cash from (used in) financing activities - discontinued operations | - | - | - |
| Net cash from (used in) financing activities | (1) | - | - |
| Effect of foreign exchange rate changes on cash and cash equivalents | - | - | - |
| **Net cash from (used in) continuing operations** | 103 | - | - |
| **Net cash from (used in) discontinued operations** | - | - | - |
| **Net increase (decrease) in cash and cash equivalents** | 103 | - | - |
| **Cash and cash equivalents at beginning of the period (November 1, 2009)** | 925 | - | - |
| **Cash and cash equivalents at end of the period (November 28, 2009)** | 1,028 | - | - |
| **Less cash and cash equivalents of discontinued operations at end of the period (November 28, 2009)** | - | - | - |
| **Cash and cash equivalents of continuing operations at end of the period (November 28, 2009)** | $   1,028 | $      - | $      - |

The Condensed Combined Debtors-In-Possession Statement of Cash Flows of each Reporting Group contained herein was derived from the books and records of the U.S. Debtors. The amounts reflected in these condensed combined financial statements are unaudited. The accompanying notes and schedules are an integral part of the condensed combined financial statements.

### NORTEL NETWORKS INC. et al
### (DEBTORS-IN-POSSESSION)
### NOTES TO MONTHLY OPERATING REPORT No. 10 (UNAUDITED)
### (In millions of U.S. dollars)

## 1. Reservation of Rights:

Nothing contained in this Monthly Operating Report shall constitute a waiver of any of the Debtors' rights or an admission with respect to their Chapter 11 Proceedings (as defined herein), including, but not limited to, matters involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts, assumption or rejection of contracts under the provisions of chapter 3 of title 11 of the United States Code ("Bankruptcy Code") and/or causes of action under the provisions of chapter 5 of the Bankruptcy Code or any other relevant applicable laws to recover assets or avoid transfers.

## 2. Background and Organization:

The U.S. Debtors (collectively referred to as "Nortel", "we" and "our") supply end-to-end networking products and solutions that help organizations enhance and simplify communications. These organizations range from small businesses to multi-national corporations involved in all aspects of commercial and industrial activity, to federal, state and local government agencies and the military. They include cable operators, wireline and wireless telecommunications service providers, and Internet service providers.

Our networking solutions include hardware and software products and services designed to reduce complexity, improve efficiency, increase productivity and drive customer value. We design, develop, engineer, market, sell, supply, license, install, service and support these networking solutions worldwide. We have technology expertise across carrier and enterprise, wireless and wireline, applications and infrastructure. We have made significant investments in technology research and development ("R&D"), and have had strong customer loyalty earned over more than 100 years of providing reliable technology and services.

*Creditor Protection Proceedings* - On January 14, 2009 ("Petition Date"), we initiated Creditor Protection Proceedings in the U.S. Bankruptcy Court for the District of Delaware ("U.S. Court") under the Bankruptcy Code ("Chapter 11 Proceedings"), several of our Canadian affiliates ("Canadian Debtors"), including our ultimate parent company, Nortel Networks Corporation ("NNC"), initiated Creditor Protection Proceedings in Canada at the Ontario Superior Court of Justice ("Canadian Court") under the Companies' Creditors Arrangement Act ("CCAA"), and several of our affiliates in Europe, Middle East and Africa ("EMEA") ("EMEA Debtors") initiated Creditor Protection Proceedings in the United Kingdom under the Insolvency Act 1986 and subsequently, in Israel, followed by secondary proceedings in France. On July 14, 2009, Nortel Networks (CALA) Inc. ("NNCI"), an affiliate of Nortel Networks Inc., ("NNI"), initiated Chapter 11 Proceedings. On July 17, 2009, the U.S. Court entered an order that provided for the joint administration of NNCI's case with the pre-existing cases of the other U.S. Debtors. As a result, NNCI is included as a Debtor in the financial statements herein. Collectively, all entities under the Creditor Protection Proceedings are referred to as the "Debtors". Those entities operating in Chapter 11 Proceedings are referred to as the "Debtors in Possession" or the "U.S. Debtors." Our affiliates in Asia, including LG-Nortel Co. Ltd., and in the Caribbean and Latin American ("CALA") region are not included in these proceedings. During the Creditor Protection Proceedings, the businesses of the Debtors continue to operate under the jurisdictions and orders of the applicable courts and in accordance with applicable legislation.

As of November 28, 2009, the U.S. Debtors consisted of the following entities:

| U.S. Debtors | Case no. |
|---|---|
| Nortel Networks Inc. | 09-10138 |
| Nortel Networks Capital Corporation | 09-10139 |
| Nortel Networks International, Inc. | 09-10150 |
| Nortel AltSystems, Inc. | 09-10140 |
| Nortel AltSystems International, Inc. | 09-10141 |
| Architel Systems (U.S.) Corporation | 09-10149 |
| CoreTek, Inc. | 09-10145 |
| Nortel Networks Applications Management Solutions Inc. | 09-10146 |
| Nortel Networks Cable Solutions Inc. | 09-10152 |
| Nortel Networks Optical Components Inc. | 09-10147 |
| Nortel Networks HPOCS Inc. | 09-10148 |
| Northern Telecom International Inc. | 09-10151 |
| Qtera Corporation | 09-10144 |
| Sonoma Systems | 09-10143 |

Xros, Inc.                                        09-10142
Nortel Networks (CALA) Inc.                       09-12515

Under the Bankruptcy Code, the U.S. Debtors may assume, assume and assign, or reject certain executory contracts including unexpired leases, subject to the approval of the U.S. Court and certain other conditions.

The accompanying unaudited condensed combined financial statements do not include the effects of all current or future claims relating to the Creditor Protection Proceedings. Certain claims filed may have priority over those of the U.S. Debtors' unsecured creditors. As of the date of this Monthly Operating Report, it is not possible to determine the extent of claims filed and to be filed, whether such claims will be disputed and whether they will be subject to discharge in the Creditor Protection Proceedings. It is also not possible at this time to determine whether to establish any additional liabilities in respect of claims.

### 3.  Basis of Presentation:

The financial statements contained herein were not intended to reconcile to any financial statements otherwise prepared or distributed by the Debtors or any of the Debtors' affiliates. Significant efforts have been put forth to attribute the assets and liabilities to the proper legal entity. However, because the Debtors' accounting systems, policies, and practices were developed with a view to producing consolidated reporting, rather than by legal entity, it is possible that not all assets or liabilities have been recorded at the correct legal entity. Accordingly, the Debtors reserve all rights to supplement or amend any financial statements contained in this Monthly Operating Report.

### 4.  Significant Accounting Policies:

Unless otherwise noted herein, the U.S. Debtors follow the significant accounting policies of NNC as discussed in NNC's 2008 Annual Report on Form 10-K for the fiscal year ended December 31, 2008 ("2008 Form 10-K") and Quarterly Reports on Form 10-Q for the quarters ended March 31, 2009 ("2009 First Quarter Form 10-Q"), June 30, 2009 ("2009 Second Quarter Form 10-Q") and September 30, 2009 ("2009 Third Quarter Form 10-Q") that were filed with the United States Securities and Exchange Commission.

### (a)  Condensed Combined Debtors-In-Possession Financial Statements

The financial statements contained herein represent the unaudited condensed combined financial statements for the U.S Debtors only. The U.S. Debtors' non-Debtor subsidiaries are treated as non-consolidated subsidiaries in these financial statements and as such their net loss is included as "Equity in net earnings (loss) from non-Debtor subsidiaries - net of tax" in the statement of operations and their net assets are included as "Investments in non-Debtor subsidiaries" in the balance sheet. The U.S. Debtors' financial statements contained herein have been prepared in accordance with the guidance in Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") 852 Reorganizations ("ASC 852").

The unaudited condensed combined financial statements have been derived from the books and records of the U.S. Debtors. The presentation combines the U.S. Debtors into three Reporting Groups consistent with the companies' ownership structure and activities as follows:

• NNI Reporting Group: Nortel Networks Inc. and its U.S. Debtor subsidiaries Nortel Networks Capital Corporation, Nortel Networks Cable Solutions Inc., Nortel Networks International, Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Nortel Networks (CALA) Inc., Northern Telecom International Inc. and Qtera Corporation;

• AltSystems Reporting Group: Nortel AltSystems, Inc. and Nortel AltSystems International, Inc.; and

• Other Reporting Group: Architel Systems (U.S.) Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions, Inc., Sonoma Systems and Xros Inc.

The Monthly Operating Report is limited in scope, covers a limited time period, and has been prepared solely for the purpose of complying with the monthly reporting requirements of the Bankruptcy Court and the United States Trustee. The information presented herein has not been subject to all procedures that would typically be applied to financial information presented in accordance with U.S. Generally Accepted Accounting Principles ("U.S. GAAP"). Upon the application of such procedures (such as tests of asset impairment), the U.S. Debtors believe that the financial information could be subject to changes, and these changes could be material. The information furnished in this Monthly Operating Report includes normal recurring adjustments, but does not include all of the adjustments that would typically be made for interim financial statements in accordance with U.S. GAAP. As of November 28, 2009, certain pre-petition trade accounts payable and debt balances are subject to further review and possible reclassification. In addition, certain information and footnote disclosures normally included in financial statements prepared in accordance with U.S. GAAP have been condensed or omitted. Therefore, the Debtors caution readers not to place undue reliance upon the information contained in this Monthly Operating Report. For further information, please refer to the consolidated financial statements of NNC and notes thereto

included in NNC's 2008 Form 10-K, and the condensed, combined and consolidated financial statements in NNC's 2009 First Quarter Form 10-Q and 2009 Second Quarter Form 10-Q, and the condensed consolidated financial statements in NNC's 2009 Third Quarter Form 10-Q.

The results of operation herein are not necessarily indicative of results which may be expected from any other period or for the full year and may not necessarily reflect the combined results of operations, financial position and cash flows of U.S. Debtors in the future.

The condensed combined financial statements filed with the U.S. Bankruptcy Court are subject to change. The U.S. Debtors may, at a future date, amend this Monthly Operating Report for updated financial information.

#### (b) Intercompany transactions

Intercompany transactions among the NNI Reporting Group and the AltSystems Reporting Group have been eliminated in the condensed combined financial statements. Intercompany transactions within the entities in the Other Reporting Group have not been eliminated as they are affiliates of common ownership under NNC rather than subsidiaries of one another. Intercompany transactions involving any non-U.S. Debtors have not been eliminated in the financial statements and are presented as intercompany receivables, loans, and payables.

#### (c) Use of estimates

We make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities as of the date of the condensed combined financial statements, and the reported amounts of revenues and expenses during the reporting period. Actual results may differ from those estimates. Estimates are used when accounting for items and matters such as revenue recognition and accruals for losses on contracts, allowances for uncollectible accounts receivable, inventory provisions and outsourced manufacturing related obligations, product warranties, estimated useful lives of intangible assets and plant and equipment, asset valuations, impairment and recoverability assessments, employee benefits including pensions, taxes and related valuation allowances and provisions, restructuring and other provisions and contingencies.

### 5. Debt in Default:

Upon filing for creditor protection certain of the U.S. Debtors (and certain of their non-U.S. Debtor affiliates) became in default under substantially all of their pre-petition debt obligations. Filing for creditor protection automatically stays most actions against the Debtors and therefore substantially all pre-petition debt obligations are subject to settlement under the Creditor Protection Proceedings.

The following borrowings represent the debt agreements which are fully and unconditionally guaranteed by NNI and are in default:

On May 28, 2008, Nortel Networks Limited ("NNL"), NNI's direct parent company, completed the offering of $675 Fixed Rate Notes due July 2016. The 2016 Fixed Rate Notes issued May 2008 have a stated interest rate per annum of 10.75% and were issued as additional notes under an existing indenture dated July 5, 2006 ("2006 Indenture"), and are part of the same series as NNL's outstanding $450 Senior Notes due July 2016 that were issued on July 5, 2006 under the 2006 Indenture. The 2016 Fixed Rate Notes issued May 2008 and the 2016 Fixed Rate Notes issued July 2006 have the same ranking, guarantee structure, interest rate, maturity date and other terms and are treated as a single class of securities under the indenture and holders vote together as one class.

On March 28, 2007, NNC completed an offering of $1,150 of unsecured convertible senior notes ("Convertible Notes"). The Convertible Notes consist of $575 principal amount of senior convertible notes due 2012 ("2012 Notes") and $575 of senior convertible notes due 2014 ("2014 Notes"). The 2012 Notes have a stated interest rate per annum of 1.75% and the 2014 Notes have a stated interest rate per annum of 2.125%. The 2012 Notes and 2014 Notes are each convertible into NNC common shares at any time based on an initial conversion rate of 31.25 NNC common shares per $1,000.00 principal amount of Convertible Notes (which is equal to an initial conversion price of $32.00 per common share).

On July 5, 2006, under the 2006 Indenture, NNL completed an offering of $2,000 senior notes ("July 2006 Notes"). The July 2006 Notes consist of the $450 2016 Fixed Rate Notes issued July 2006, $550 of senior fixed rate notes due 2013 ("2013 Fixed Rate Notes") and $1,000 of floating rate senior notes due 2011 ("2011 Floating Rate Notes"). The 2016 Fixed Rate Notes issued July 2006 have a stated interest rate per annum of 10.75%, the 2013 Fixed Rate Notes have a stated interest rate per annum of 10.125%, and the 2011 Floating Rate Notes have a stated interest rate per annum, reset quarterly, equal to the LIBOR plus 4.25%.

As a guarantor, NNI is an obligor for the defaulted debt obligations (and accrued interest payable) of $3,935. As a result, an accrual of $3,935 has been made in the U.S. Debtors financial statements for NNI's guarantee of the NNC and NNL outstanding long-term debt arrangements. Although some guarantee exposures are redundant to liabilities recorded elsewhere in the Debtors' financial statements,

NNI has recorded this accrual in accordance with ASC 852. The guarantor amount has been recorded as a liability subject to compromise and reorganization expenses in the NNI financial statement column. To the extent that information available in the future indicates a difference from the recognized amounts, the provision will be adjusted.

On June 17, 1996, Nortel Networks Capital Corporation, a wholly owned subsidiary of NNI, completed the offering of $150 Fixed Rate Notes due June 2026. The 2026 Fixed Rate Notes have a stated interest rate per annum of 7.875%. The 2026 Fixed Rate Notes are fully and unconditionally guaranteed by NNL.

In addition, NNI has guaranteed NNL's obligations under the EDC Support Facility. The EDC Support Facility provides for the issuance by EDC of support in the form of guarantee bonds or guarantee type documents issued to financial institutions that issue letters of credit or guarantee, performance or surety bonds, or other instruments in support of Nortel's contract performance. NNI has agreed to indemnify EDC and reimburse it for any amounts that EDC is required to pay to such financial institutions pursuant to its support.

## 6. Reorganization Items:

ASC 852 requires items of revenue and expense directly attributed to the reorganization such as professional fees directly related to the U.S. Debtors' Chapter 11 Proceedings, realized gains and losses, and provisions for losses resulting from such proceedings to be separately accumulated and disclosed in the statement of operations.

The following table sets forth the U.S. Debtors' reorganization items for the period from November 1, 2009 through November 28, 2009:

| | | |
|---|---|---|
| Professional fees directly related to reorganization | $ | (9) |
| Intercompany interest and dividend income | | 1 |
| Lease repudiation | | (3) |
| Total Reorganization items | $ | (11) |

## 7. Liabilities Subject to Compromise:

As a result of the Chapter 11 Proceedings, pre-petition liabilities may be subject to compromise or other treatment under the U.S. Debtors' Chapter 11 Proceedings. Generally, actions to enforce or otherwise effect payment of pre-petition liabilities are stayed. Although pre-petition claims are generally stayed, under the Chapter 11 Proceedings, the U.S. Debtors are permitted to undertake certain actions designed to stabilize the U.S. Debtors' operations including, among other things, payment of employee wages and benefits, maintenance of Nortel's cash management system, satisfaction of customer obligations, payments to suppliers for goods and services received after the Petition Date and retention of professionals.

The U.S. Debtors have been paying and intend to continue to pay undisputed post-petition obligations in the ordinary course of business. In addition, the U.S. Debtors may reject pre-petition executory contracts and unexpired leases with respect to the U.S. Debtors' operations, with the approval of the U.S. Bankruptcy Court. Damages resulting from rejection of executory contracts and unexpired leases are treated as pre-petition general unsecured claims and will be classified as liabilities subject to compromise. Any differences between claim amounts listed by the U.S. Debtors in their Schedules of Assets and Liabilities (as may be amended) and claims filed by creditors will be investigated and, if necessary, the U.S. Bankruptcy Court will make the final determination as to the amount, nature and validity of claims. The determination of how liabilities will ultimately be settled and treated cannot be made until the U.S. Bankruptcy Court approves a Chapter 11 plan of reorganization. Accordingly, the ultimate amount of such liabilities is not determinable at this time.

On August 4, 2009, the U.S. Court approved the establishment of a claims process in the U.S. for claims that arose prior to the Petition Date. Under this claims process, proof of claims, except in relation to NNCI, had to be received by the U.S. Claims Agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), by no later than 4:00 p.m. (Eastern Time) on September 30, 2009 (subject to certain exceptions, including the establishment of supplemental bar dates, as provided in the order establishing the claims bar date). For claims in relation to NNCI, on December 2, 2009, the U.S. Court approved the establishment of 4:00 p.m. (Eastern Time) on January 25, 2010 as the deadline for receipt by Epiq of proof of claims against NNCI (subject to certain exceptions, including the establishment of supplemental bar dates, as provided in the order establishing the claims bar date).

ASC 852 requires pre-petition liabilities of the debtor that are subject to compromise to be reported at the claim amounts expected to be allowed, even if they may be settled for lesser amounts.

At December 14, 2009, the U.S. Debtors had received approximately 5,734 timely-filed claims outstanding asserting approximately $10,385 in aggregate liquidated claims, as well as additional unliquidated claims. Although the U.S. Debtors have and may continue to

object to various court filings made throughout the Creditor Protection Proceedings, as at November 28, 2009 only one proof of claim (the "IRS Claim"), which asserted approximately $3,017 in aggregate liquidated amounts plus additional unliquidated amounts, has been objected to by the U.S. Debtors; however, the United States Internal Revenue Service ("IRS") has recently agreed to withdraw its proof of claim (see Note 11). The U.S. Court has not entered any orders disallowing any of these claims. Any such order would reduce the amount of asserted claims noted above. Although the U.S. Court has established bar dates by which certain claims, subject to exceptions, against the relevant U.S. Debtors were required to be filed if the claimants were to receive any distribution under the Creditor Protection Proceedings, certain further claims are and may be permitted. In addition, the U.S. Debtors anticipate that additional proofs of claim will be the subject of future objections as such proofs of claim are reconciled. Accordingly, the ultimate number and amount of allowed claims is not determinable at this time. Since the Petition Date, Nortel has and may continue to enter into court-approved and other agreements relating to settlement of certain pre-Petition Date and post-Petition Date claim amounts. As at December 23, 2009, the U.S. Debtors have agreed to net payments of approximately $67.3 in the aggregate relating to certain asserted pre-Petition Date and post-Petition Date claims and related liabilities, subject to adjustment in certain circumstances and excluding amounts relating to the Interim Funding Settlement Agreement, as described in note 11. These agreements may also include the release of other disputed and unliquidated amounts.

The amounts currently classified as liabilities subject to compromise may be subject to future adjustments depending on U.S. Bankruptcy Court actions, further developments with respect to disputed claims, determinations of the secured status of certain claims, if any, the values of any collateral securing such claims, or other events.

The following tables set forth the U.S. Debtors' estimated liabilities subject to compromise as of November 28, 2009:

| | NNI | | AltSystems | | Other | |
|---|---:|---|---:|---|---:|---|
| Trade and other accounts payable | $ | 219 | $ | - | $ | - |
| Accounts payable intercompany | | 762 | | 53 | | - |
| Restructuring liabilities | | 83 | | - | | - |
| Contingent liability for NNI's debt guarantee | | 3,935 | | - | | - |
| Long-term debt | | 236 | | - | | - |
| Financial obligations | | 35 | | - | | - |
| Pension obligations | | 417 | | - | | - |
| Postretirement obligations other than pensions | | 233 | | - | | - |
| Notes and interest payable intercompany | | - | | - | | 126 |
| Other | | 59 | | - | | - |
| Total liabilities subject to compromise | $ | 5,979 | $ | 53 | $ | 126 |

| | October 31, 2009 | | Change in the Month | | November 28, 2009 | |
|---|---:|---|---:|---|---:|---|
| Trade and other accounts payable | $ | 222 | $ | (3) | $ | 219 |
| Accounts payable intercompany | | 815 | | - | | 815 |
| Restructuring liabilities | | 80 | | 3 | | 83 |
| Contingent liability for NNI's debt guarantee | | 3,935 | | - | | 3,935 |
| Long-term debt | | 236 | | - | | 236 |
| Financial obligations | | 34 | | 1 | | 35 |
| Pension obligations | | 416 | | 1 | | 417 |
| Postretirement obligations other than pensions | | 233 | | - | | 233 |
| Notes and interest payable intercompany | | 126 | | - | | 126 |
| Other | | 62 | | (3) | | 59 |
| Total liabilities subject to compromise | $ | 6,159 | $ | (1) | $ | 6,158 |

Classification for purposes of this report of any pre-petition liabilities on any basis other than liabilities subject to compromise is not an admission against interest or legal conclusion by the U.S. Debtors as to the manner of classification, treatment, allowance, or payment in the Creditor Protection Proceedings, including in connection with any plan that may be approved by the U.S. Court and that may become effective pursuant an order of the U.S. Court.

The change in the month was primarily due to decreases in trade and other accounts payable and other offset by increases in restructuring liabilities, financial obligations and pension obligations.

In addition, liabilities subject to compromise of $88 are included in liabilities of discontinued operations (see note 10).

**8. Post-Petition Accounts Payable:**

To the best of the U.S. Debtors' knowledge, all undisputed post-petition accounts payable have been and are being paid in the ordinary course of the U.S. Debtors' business.

**9. Assets and Liabilities Held for Sale:**

On June 19, 2009, NNC, NNL, and certain of NNC's other subsidiaries, including NNI, entered into a "stalking horse" asset sale agreement with Nokia Siemens Networks B.V. ("NSN") for the planned sale of substantially all of its Code Division Multiple Access ("CDMA") business and Long Term Evolution ("LTE") Access assets for $650, subject to purchase price adjustments under certain circumstances. On July 24, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for these assets and executed a formal asset sale agreement for the sale of substantially all of its CDMA business and LTE Access assets with Telefonaktiebolaget LM Ericsson ("Ericsson"), who emerged as the successful bidder agreeing to pay $1,130 subject to certain post-closing purchase price adjustments. Nortel obtained U.S. Court and Canadian Court approvals for the sale to Ericsson on July 28, 2009. On November 13, 2009, NNC announced that following satisfaction of all closing conditions, the sale had concluded. The related CDMA business and LTE Access assets and liabilities have been classified as held for sale beginning as of June 30, 2009. Nortel determined that the fair value less estimated costs to sell exceeded the carrying value of the CDMA business and LTE Access assets and liabilities and therefore no impairment was recorded on the reclassification of these assets to held for sale. The gain on disposal of the CDMA business and LTE Access assets will be recognized in the fourth quarter of fiscal 2009 and has not been reflected in this Monthly Operating Report. As a result, the balance sheet continues to include the related assets and liabilities as held for sale.

On October 7, 2009, NNC, NNL, and certain of NNC's other subsidiaries, including NNI, entered into a "stalking horse" and other sale agreements with Ciena Corp. ("Ciena") for the planned sale of substantially all of the assets of its Optical Networking and Carrier Ethernet businesses globally for a purchase price of $390 in cash and 10 million shares of Ciena common stock, subject to purchase price adjustments under certain circumstances. On November 22, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for these assets and executed formal sale agreements dated November 24, 2009 for the sale of substantially all of its Optical Networking and Carrier Ethernet businesses with Ciena, who emerged as the successful bidder agreeing to pay $530 in cash, plus $239 principal amount of convertible notes due June 2017, subject to certain post-closing purchase price adjustments. At a joint hearing on December 2, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Ciena. The sale is also subject to court approvals in France and Israel, information and consultation with employee representatives and/or employees in certain EMEA jurisdictions, as well as regulatory approvals and other customary closing conditions. The related Optical Networking and Carrier Ethernet businesses assets and liabilities have been classified as held for sale beginning as of October 31, 2009. Nortel determined that the fair value less estimated costs to sell exceeded the carrying value of the Optical Networking and Carrier Ethernet businesses assets and liabilities and therefore no impairment was recorded on the reclassification of these assets to held for sale.

On September 30, 2009, NNC announced that it planned to sell, by "open auction" substantially all of its global Global System for Mobile communications ("GSM")/GSM for Railways ("GSM-R") business. On November 24, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for these assets and executed formal sale agreements for the sale of substantially all of its GSM/GSM-R business with Ericsson and Kapsch CarrierCom AG ("Kapsch"), who emerged as the successful joint bidders agreeing to pay $103 in cash, subject to certain post-closing purchase price adjustments. At a joint hearing on December 2, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Ericsson and Kapsch. The sale is also subject to court approval in France, information and consultation with employee representatives and/or employees in certain EMEA jurisdictions, as well as regulatory approvals and other customary closing conditions. The related GSM/GSM-R business assets and liabilities have been classified as held for sale beginning as of October 31, 2009. Nortel determined that the fair value less estimated costs to sell exceeded the carrying value of the GSM/GSM-R business assets and liabilities and therefore no impairment was recorded on the reclassification of these assets to held for sale.

On September 21, 2009, NNC announced its plan to sell, by "open auction", the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components ("Next Generation Packet Core Assets"). On October 25, 2009, in accordance with court approved procedures, NNL and NNI entered into an agreement with Hitachi, Ltd. ("Hitachi") for the sale of these assets for a purchase price of $10 subject to purchase price adjustments under certain circumstances. On October 28, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Hitachi. On December 8, 2009, Nortel announced that following satisfaction of all closing conditions, the sale had concluded. The related Next Generation Packet Core Assets and liabilities have been classified as held for sale beginning as of October 31, 2009. Nortel determined that the fair value less estimated costs to sell exceeded the carrying value of the Next Generation Packet Core Assets and liabilities and therefore no impairment was recorded on the reclassification of these assets to held for sale.

The related CDMA business and LTE Access and Next Generation Packet Core financial results of operations have not been classified as discontinued operations in these unaudited condensed combined financial statements as they did not meet the definition of a component of an entity. Nortel is currently assessing whether the GSM/GSM-R and Optical Networking and Carrier Ethernet planned divestitures should be accounted for as discontinued operations.

Assets and liabilities of $382 and $539, respectively, related to the Debtors-In-Possession have been classified as held for sale as of November 28, 2009.

The assets and liabilities of the Enterprise Solutions ("ES") business are classified as discontinued operations and are excluded from the information presented below. See note 10 for information related to assets and liabilities of the ES business.

The following tables set forth assets and liabilities held for sale as of November 28, 2009:

| | NNI | AltSystems | Other |
|---|---|---|---|
| **Assets** | | | |
| Accounts receivable - net | $ 116 | $ - | $ - |
| Inventories - net | 217 | - | - |
| Plant and equipment - net | 33 | - | - |
| Other | 16 | - | - |
| Assets of businesses held for sale | $ 382 | $ - | $ - |
| | | | |
| **Liabilities** | | | |
| Trade and other accounts payable | $ 55 | $ - | $ - |
| Employee-related liabilities | 27 | - | - |
| Contractual liabilities | 7 | - | - |
| Other current liabilities | 442 | - | - |
| Other long-term liabilities | 8 | - | - |
| Liabilities of businesses held for sale | $ 539 | $ - | $ - |

| | CDMA/ LTE | Packet Core | Optical Networking and Carrier Ethernet | GSM/ GSM-R | Total |
|---|---|---|---|---|---|
| **Assets** | | | | | |
| Accounts receivable - net | $ 35 | $ - | $ 4 | $ 77 | $ 116 |
| Inventories - net | 96 | - | 102 | 19 | 217 |
| Plant and equipment - net | 18 | 2 | 8 | 5 | 33 |
| Other | - | - | 11 | 5 | 16 |
| Assets of businesses held for sale | $ 149 | $ 2 | $ 125 | $ 106 | $ 382 |
| | | | | | |
| **Liabilities** | | | | | |
| Trade and other accounts payable | $ 42 | $ - | $ 4 | $ 9 | $ 55 |
| Employee-related liabilities | 14 | - | 6 | 7 | 27 |
| Contractual liabilities | 4 | - | 3 | - | 7 |
| Other current liabilities | 295 | - | 62 | 85 | 442 |
| Other long-term liabilities | 1 | - | 1 | 6 | 8 |
| Liabilities of businesses held for sale | $ 356 | $ - | $ 76 | $ 107 | $ 539 |

## 10. Discontinued Operations:

On July 20, 2009 NNC announced that it, NNL, and certain of NNC's other subsidiaries, including NNI and Nortel Networks UK Limited ("NNUK"), had entered into a "stalking horse" asset and share sale agreement with Avaya Inc. ("Avaya") for its North American, CALA and Asian ES business; and an asset sale agreement with Avaya for the EMEA portion of its ES business for a purchase price of $475 subject to purchase price adjustments under certain circumstances. These agreements include the planned sale of substantially all of the assets of the ES business globally as well as the shares of Nortel Government Solutions ("NGS") and DiamondWare, Ltd. On September 14, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for

the sale of these assets as well as the shares of NGS and DiamondWare, Ltd. to Avaya, who emerged as the successful bidder agreement to pay $900 in cash to Nortel, with an additional pool of $15 reserved for an employee retention program, subject to purchase price adjustments under certain circumstances. At a joint hearing on September 16, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Avaya. On December 18, 2009, NNC announced that the sale of substantially all of these assets had been completed.  The sale of certain ES assets held by Israeli subsidiaries remains subject to court approval in Israel and Nortel will continue to work diligently to obtain such approval. All other closing conditions have been satisfied.

As part of the transaction with Avaya, Nortel has agreed to undertake certain activities to assist the buyer with the transition of the business from Nortel's infrastructure to that of the buyer. As a result of this agreement, Nortel expects to generate certain direct and indirect cash flows that are associated with the disposed component for a period of time that is not currently expected to exceed one year. The operations and cash flows of the Enterprise business meet the definition of a component as prescribed by FASB ASC 360-10-35 "Impairment or Disposal of Long-Lived Assets" ("ASC 360-10-35"). A component of an entity that is being disposed of should be shown as discontinued operations where the cash flows associated with the component will be eliminated and the entity will not have any significant continuing involvement, as defined in the applicable accounting guidance, with the component post-disposition. Nortel has evaluated the nature and significance of these cash flows arising from transition services Nortel expects to provide to Avaya and has determined that they do not preclude the recognition and presentation of this business component as discontinued operations for the period presented.

The following table summarizes certain financial information of the ES business for the period from November 1, 2009 through November 28, 2009:

| | NNI | AltSystems | Other |
|---|---|---|---|
| **Operations** | | | |
| Total revenues | $          69 | $          - | $          - |
| | | | |
| Earnings (loss) from discontinued operations before income taxes | $          43 | $          - | $          - |
| Income tax benefit (expense) | - | - | |
| Net earnings (loss) from discontinued operations before disposal - net of taxes | $          43 | $          - | $          - |

The following table sets forth assets and liabilities related to the operations of the ES business as at November 28, 2009:

| | NNI [a] | AltSystems | Other |
|---|---|---|---|
| **Assets** | | | |
| Accounts receivable - net | $         126 | $          - | $          - |
| Inventories - net | 106 | - | - |
| Other current assets | 15 | - | - |
| Plant and equipment - net | 32 | - | - |
| Intangible assets - net | 20 | - | - |
| Other long-term assets | 10 | - | - |
| Assets of discontinued operations | $         309 | $          - | $          - |
| | | | |
| **Liabilities** | | | |
| Trade and other accounts payables | $          15 | $          - | $          - |
| Employee-related liabilities | 54 | - | - |
| Contractual liabilities | 1 | - | - |
| Other current liabilities | 180 | - | - |
| Other long-term liabilities | 7 | - | - |
| Liabilities subject to compromise | 88 | 1 | - |
| Liabilities of discontinued operations | $         345 | $          1 | $          - |

(a)    Does not include assets and liabilities related to the shares of DiamondWare Ltd. and NGS, which are a part of the divestiture of the ES business, but are not Debtors-in-Possession.

Of these assets and liabilities, Nortel currently estimates that the following items would, at November 28, 2009, have been acquired or assumed by Avaya pursuant to the terms of the asset and share sale agreement:

| | | |
|---|---|---:|
| **Assets** | | |
| Accounts receivable - net | $ | 21 |
| Inventories - net | | 103 |
| Plant and equipment - net | | 32 |
| Other long-term assets | | 31 |
| Assets held for sale | $ | 187 |
| | | |
| **Liabilities** | | |
| Employee-related liabilities | $ | 57 |
| Contractual liabilities | | 1 |
| Other current liabilities | | 136 |
| Other long-term liabilities | | 7 |
| Liabilities held for sale | $ | 201 |

## 11. Case Developments:

On June 19, 2009, NNC announced that it, NNL, and certain of NNC's other subsidiaries, including NNI, had entered into a "stalking horse" asset sale agreement with NSN for the planned sale of substantially all of its CDMA business and LTE Access assets for a purchase price of $650, subject to purchase price adjustments under certain circumstances. On July 24, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for these assets and executed a formal asset sale agreement for the sale of these assets with Ericsson, who emerged as the successful bidder agreeing to pay $1,130 subject to purchase price adjustments under certain circumstances. At a joint hearing on July 28, 2009, Nortel obtained U.S. Court and Canadian Court approval for the sale to Ericsson. On November 13, 2009, NNC announced that following satisfaction of all closing conditions, the sale was concluded.

On July 20, 2009 NNC announced that it, NNL, and certain of NNC's other subsidiaries, including NNI and NNUK, had entered into a "stalking horse" asset and share sale agreement with Avaya for its North American, CALA and Asian ES business; and an asset sale agreement with Avaya for the EMEA portion of its ES business for a purchase price of $475 subject to purchase price adjustments under certain circumstances. These agreements include the planned sale of substantially all of the ES business globally as well as the shares of NGS and DiamondWare, Ltd. On September 14, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for the sale of these assets to Avaya, who emerged as the successful bidder agreeing to pay $900 in cash to Nortel, with an additional pool of $15 reserved for an employee retention program, subject to purchase price adjustments under certain circumstances. At a joint hearing on September 16, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Avaya. On December 18, 2009, NNC announced that the sale of substantially all of these assets had been completed. The sale of certain ES assets held by Israeli subsidiaries remains subject to court approval in Israel and Nortel will continue to work diligently to obtain such approval. All other closing conditions have been satisfied.

On September 21, 2009, NNC announced its plan to sell, by "open auction", the assets of its Wireless Networks business associated with the development of Next Generation Packet Core Assets. On October 25, 2009, in accordance with court approved procedures, NNL and NNI entered into an agreement with Hitachi for the sale of these assets for a purchase price of $10 subject to purchase price adjustments under certain circumstances. On October 28, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Hitachi. On December 8, 2009, NNC announced that following satisfaction of all closing conditions, the sale was concluded.

On September 30, 2009, NNC announced that it planned to sell, by "open auction" substantially all of its global GSM/GSM-R business. On November 24, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for the sale of theses assets to Ericsson and Kapsch who emerged as the winning joint bidders with a purchase price of $103 in cash, subject to purchase price adjustments under certain circumstances. At a joint hearing on December 2, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Ericsson and Kapsch. The sale is also subject to court approval in France, information and consultation with employee representatives and/or employees in certain EMEA jurisdictions, as well as regulatory approvals and other customary closing conditions

On October 7, 2009, NNC announced that it, NNL, and certain of NNC's other subsidiaries, including NNI, had entered into a "stalking horse" and other sale agreements with Ciena for the planned sale of substantially all of the assets of its Optical Networking and Carrier Ethernet businesses globally for a purchase price of $390 in cash and 10 million shares of Ciena common stock, subject to purchase price adjustments under certain circumstances. On November 22, 2009, in accordance with court approved procedures, Nortel concluded a successful auction for the sale of these assets to Ciena, who emerged as the successful bidder agreeing to pay $530 in cash, plus $239 principal amount of convertible notes due June 2017, subject to purchase price adjustments under certain circumstances At a joint hearing on December 2, 2009, Nortel obtained U.S. Court and Canadian Court approval of the sale to Ciena.

The sale is also subject to court approvals in France and Israel, information and consultation with employee representatives and/or employees in certain EMEA jurisdictions, as well as regulatory approvals and other customary closing conditions.

On December 23, 2009, NNC announced that it, NNL, and certain of NNC's other subsidiaries, including NNI, had entered into a "stalking horse" and other sale agreements with GENBAND Inc. for the planned sale of substantially all assets of the Carrier VoIP and Application Solutions (CVAS) business globally for a purchase price of $282, subject to balance sheet and other adjustments currently estimated at approximately $100. This sale requires a court-approved bidding process, known as a "stalking horse" or 363 Sale under Chapter 11 that will allow other qualified bidders to submit higher or otherwise better offers. In early January, Nortel expects to seek U.S. Court and Canadian Court approvals for bidding procedures, including a bid deadline and tentative auction date. Following completion of the bidding process, final approval of the U.S. Court and Canadian Court will be required. The sale is also subject to court approval in Israel, information and consultation with employee representatives and/or employees in certain EMEA jurisdictions, as well as regulatory approvals and other customary closing conditions.

There can be no assurance the Debtors will be able to access proceeds in a timely manner from divestitures completed after the Petition Date as the Debtors and the various estates continue discussions on purchase price allocations. Nortel continues to advance in its discussions with external parties to sell its other businesses. To provide maximum flexibility Nortel has also taken appropriate steps to complete the move to organizational standalone businesses. Nortel will assess other restructuring alternatives for these businesses in the event it is unable to maximize value through sales.

On August 10, 2009, NNC announced that it was at a natural transition point resulting in a number of leadership changes and a new organizational structure designed to work towards the completion of the sales of its businesses and other restructuring activities. Effective August 10, 2009, President and Chief Executive Officer Mike Zafirovski stepped down. Also effective August 10, 2009, the Boards of Directors of NNC and NNL were reduced from nine to three members: John A. MacNaughton, Jalynn H. Bennett and David I. Richardson, with Mr. Richardson serving as Chair. These individuals also serve as members of NNC's and NNL's audit committees.

In connection with these changes, Nortel obtained Canadian Court approval for the court-appointed monitor under the CCAA Proceedings ("Canadian Monitor"), to take on an enhanced role with respect to the oversight of the business, sales processes, claims processes and other restructuring activities under the CCAA Proceedings. Further, on December 8, 2009 NNC announced that NNI has entered into an agreement with John Ray who will, subject to the approval of the U.S. Court, fill the role of principal officer of the U.S. Debtors. In such capacity, John Ray will work with Nortel management, the Canadian Monitor, the joint administrators in the in the U.K. and Ireland with respect to the EMEA Creditor Protection Proceedings and various retained advisors, in monitoring and providing oversight of the conduct of the businesses of the U.S. Debtors in relation to various matters in connection with the Chapter 11 Proceedings.

Nortel has also established a streamlined structure that is enabling it to effectively continue to serve its customers, and also facilitate the sales of its businesses and integration processes with acquiring companies as well as continue with its restructuring activities. Nortel's business units currently report to the Chief Restructuring Officer, Pavi Binning. The mergers and acquisitions teams continue their work under the Chief Strategy Officer, George Riedel. Nortel Business Services continues to be led by Joe Flanagan and continues to serve the transitional operations needs of Nortel's businesses as they are sold to ensure customer and network service levels are maintained throughout the sale and integration processes. A core Corporate Group has been established that is primarily responsible for the management of ongoing restructuring activities during the sales process as well as post business dispositions. This group is lead by John Doolittle, Senior Vice President Finance and Corporate Services. These leaders report to the NNC and NNL Boards of Directors and the Canadian Monitor and will also report to the proposed U.S. principal officer.

Historically, Nortel has deployed its cash through a variety of intercompany borrowing and transfer pricing arrangements to allow it to operate on a global basis and to allocate profits and losses, and certain costs, among the corporate group. In particular, the Canadian Debtors have continued to allocate profits and losses, and certain costs, among the corporate group through transfer pricing agreement payments ("TPA Payments"). Other than one $30 payment made by NNI to NNL in respect of amounts that Nortel believes are owed in connection with the transfer pricing agreement, TPA Payments had been suspended since the Petition Date. However, the Canadian Debtors and the U.S. Debtors with the support of the U.S. Creditors' Committee and the Bondholder Group, as well as the EMEA Debtors (other than Nortel Networks S.A. ("NNSA")), entered into an Interim Funding and Settlement Agreement ("IFSA") dated June 9, 2009 under which NNI paid $157 to NNL, in four installments during the period ended September 30, 2009 in full and final settlement of TPA Payments for the period from the Petition Date to September 30, 2009. A portion of this funding may be repayable by NNL to NNI in certain circumstances. The IFSA was approved by the U.S. Court and Canadian Court on June 29, 2009 and on June 23, 2009, the High Court of England and Wales confirmed that the court appointed the joint administrators in the in the U.K. and Ireland with respect to the EMEA Creditor Protection Proceedings were at liberty to enter into the IFSA on behalf of each of the EMEA Debtors (except for NNSA which was authorized to enter into the IFSA by the Commercial Court of Versailles, France on July 7, 2009). NNSA acceded to the IFSA on September 11, 2009.

On December 23, NNC NNL, NNI and certain of NNC's other Canadian and U.S. subsidiaries that have filed for creditor protection in Canada or the U.S., entered into a Final Canadian Funding and Settlement Agreement (Final Funding Agreement). The Final Funding Agreement provides, among other things, for the settlement of certain intercompany claims, including in respect of amounts determined to be owed by NNL to NNI under Nortel's transfer pricing arrangements for the years 2001 through 2005. As part of the settlement, NNL has agreed to the establishment of a pre-filing claim in favour of NNI in the Canadian Creditor Protection Proceedings in the net amount of approximately $2,063, which claim will not be subject to any offset. The Final Funding Agreement also provides that NNI will pay to NNL approximately $190 over the course of 2010, which amount includes the contribution of NNI and certain U.S. affiliates towards certain estimated costs to be incurred by NNL on their behalf for the duration of the Creditor Protection Proceedings. The Final Funding Agreement also provides for the allocation of certain other anticipated costs to be incurred by the parties, including those relating to the divestiture of Nortel's various businesses.

The Final Funding Agreement is subject to a number of conditions, including: that NNL and NNI enter into advance pricing agreements with the Canadian and U.S. tax authorities to resolve certain transfer pricing issues, on a retrospective basis, for the taxable years 2001 through 2005; and court approvals in the U.S. and Canada.

In addition, in consideration for a settlement payment of US$37.5 million, the IRS has agreed to release all of its claims against NNI and other members of NNI's consolidated tax group for the years 1998 through 2008. As a result of this settlement, the IRS has agreed to withdraw its proof of claim against NNI in the amount of approximately US$3 billion. This settlement is a condition of the Final Funding Agreement and is also subject to U.S. Court approval.

As a consequence of the Creditor Protection Proceedings, certain amounts of intercompany payables to certain Nortel subsidiaries ("APAC Agreement Subsidiaries") in the Asia-Pacific ("APAC") region as of the Petition Date became impaired. To enable the APAC Agreement Subsidiaries to continue their respective business operations and to facilitate any potential divestitures, the Debtors (other than NNSA) entered into an Asia restructuring agreement ("APAC Agreement"). Under the APAC Agreement, the APAC Agreement Subsidiaries will pay a portion of certain of the APAC Agreement Subsidiaries' net intercompany debt outstanding as of the Petition Date ("Pre-Petition Intercompany Debt") and the Canadian Debtors, the U.S. Debtors and the EMEA Debtors (including NNSA to the extent it elects to participate in the APAC Agreement) will initially receive approximately $15, $18 and $15, respectively, in aggregate. A further portion of the Pre-Petition Intercompany Debt will be repayable in monthly amounts but only to the extent of such APAC Agreement Subsidiary's net cash balance, and subject to certain reserves and provisions. The remainder of each APAC Agreement Subsidiary's Pre-Petition Intercompany Debt will be subordinated and postponed to the prior payment in full of such APAC Agreement Subsidiary's liabilities and obligations. All required court approvals have been obtained in the U.S. and Canada; however, implementation of the APAC Agreement for certain parties in other jurisdictions, remains subject to receipt of outstanding regulatory approvals.

MOR-5A

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks Inc. et al**
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Schedule of Cash Disbursements by Petitioning Entity**
**Reporting Period: November 1, 2009 through November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

| In re: Nortel Networks Inc. et al | Case # | Payments | |
|---|---|---|---|
| Nortel Networks Inc. [1] | 09-10138 | $ | 200 |
| Nortel Networks Capital Corporation | 09-10139 | | - |
| Nortel AltSystems, Inc. | 09-10140 | | - |
| Nortel AltSystems International, Inc. | 09-10141 | | - |
| Xros Inc. | 09-10142 | | - |
| Sonoma Systems | 09-10143 | | - |
| Qtera Corporation | 09-10144 | | - |
| Coretek, Inc. | 09-10145 | | - |
| Nortel Networks Applications Management Solutions, Inc. | 09-10146 | | - |
| Nortel Networks Optical Components Inc. | 09-10147 | | - |
| Nortel Networks HPOCS Inc. | 09-10148 | | - |
| Architel Systems (U.S.) Corporation | 09-10149 | | - |
| Nortel Networks International, Inc. | 09-10150 | | 2 |
| Northern Telecom International Inc. | 09-10151 | | - |
| Nortel Networks Cable Solutions Inc. | 09-10152 | | - |
| Nortel Networks (CALA) Inc. | 09-12515 | | 3 |
| Total Payments | | $ | 205 |

(1) NNI is the centralized disbursement entity for multiple U.S. Debtors and non-Debtors and accordingly makes payments, both by wire and checks, for multiple U.S. Debtors and non-Debtors. Individual U.S. Debtor disbursements have been separated from NNI and listed under specific individual U.S. Debtors. However, disbursements made for the benefit of NNI as well as other U.S. Debtors and/or non-Debtors are still consolidated with NNI for financial reporting purposes.

MOR-5B

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks Inc. et al**
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Existing Bank Account Information**
**Reporting Period: November 1, 2009 through November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

| Legal Entity | Bank | Account Type | Lockbox / Account | Bank Balance |
|---|---|---|---|---|
| Nortel Networks Inc. | Bank of America | Receipts | 3750819519 | $ - |
| Nortel Networks Inc. | Bank of America | Receipts | 3750886432 | 3 |
| Nortel Networks Inc. | Bank of America | Lockbox (Receipts) | Box 3985 | - |
| Nortel Networks Inc. | Bank of America | Payroll | 0101183623 | - |
| Nortel Networks Inc. | Bank of America | Health & Wealthfare Trust account | 7206010001650 | - |
| Nortel Networks Inc. | Citibank NA | Main Concentration | 30463444 | 8 |
| Nortel Networks Inc. | Citibank NA | Receipts | 30508403 | 17 |
| Nortel Networks Inc. | Citibank NA | Lockbox (Receipts) | Box 2937 | - |
| Nortel Networks Inc. | Citibank NA | Disbursement (EVS) | 30509086 | 2 |
| Nortel Networks Inc. | Citibank NA | Disbursement (AP) | 30580851 | 7 |
| Nortel Networks Inc. | Citibank NA | Receipts (Credit Card) | 30509078 | 1 |
| Nortel Networks Inc. | Citibank NA | CDMA Good Faith Deposit | 40773075 | - |
| Nortel Networks Inc. | Citibank NA | Flexible Benefits | 30614505 | 1 |
| Nortel Networks Inc. | Citibank NA | Good Faith Deposits | 30810143 | 1 |
| Nortel Networks Inc. | Citibank NA | Good Faith Deposits | 30812798 | 30 |
| Nortel Networks Inc. | Citibank Delaware | Disbursement (Sales & Use Tax) | 38660426 | 1 |
| Nortel Networks Inc. | Citibank Delaware | Disbursement (EVS) | 38659062 | - |
| Nortel Networks Inc. | Citibank Delaware | Checking | 38696453 | 2 |
| Nortel Networks Inc. | Citibank Delaware | Benefits-Cigna Travel Well | 38659097 | 1 |
| Nortel Networks Inc. | Citibank Delaware | Benefits-US-Cigna Expat | 38659089 | - |
| Nortel Networks Inc. | Citibank Delaware | Disbursement (AP) | 38682182 | - |
| Nortel Networks Inc. | Citibank Delaware | Utilities Order | 38794977 | 1 |
| Nortel Networks Inc. | Citibank Canada | Disbursement AP | 2010621007 | - |
| Nortel Networks Inc. | Deutsche Bank | Brokerage | 400519 | - |
| Nortel Networks Inc. | Morgan Stanley | Brokerage | 293 058697 502 | - |
| Nortel Networks Inc. | Banc of America Securities | Investment [1] | 275783-22453989 | 900 |
| Nortel Networks Inc. | The Reserve | Investment | 703-29-420 | 18 |
| Nortel Networks Inc. | K&H Bank | General | 10201006-50041181 | - |
| Nortel Networks Inc. | K&H Bank | General | 10200971-60061049 | - |
| Nortel Networks Inc. | Citibank Egypt | General | 100827506 | 1 |
| Nortel Networks Inc. | Citibank Egypt | General | 100827018 | 2 |
| Nortel Networks Inc. | Citibank Tunis | General | 150021006 | - |
| Nortel Networks Inc. | Citibank Tunis | General | 150021014 | - |
| Nortel Networks Inc. | Citibank Tunis | General | 150021022 | - |
| Nortel Networks Inc. | Citibank Tunis | General | 100056011 | 1 |
| Nortel Networks Capital Corp. | Citibank NA | General | 30508438 | 1 |
| Nortel Networks Capital Corp. | Banc of America Securities | Investment | 383752-22352662 | 2 |
| Nortel Networks International, Inc. | Bank of America | General | 6059-60258-010 | - |
| Nortel Networks International, Inc. | Citibank Dubai | General | 10100262002 | 2 |
| Nortel Networks (CALA) Inc. | Citibank NA | General | 30635672 | 51 |
| Nortel Networks (CALA) Inc. | Citibank Delaware | Disbursement (AP) | 38746828 | - |
| Nortel Networks (CALA) Inc. | Citibank Montevideo | General | 0055067007 | 1 |
| Nortel Networks (CALA) Inc. | Citibank Montevideo | General | 0055067619 | - |
| Nortel Networks (CALA) Inc. | Citibank Port of Spain | General | 0106586004 | - |
| Nortel Networks (CALA) Inc. | Citibank Puerto Rico | General | 0301085028 | 17 |
| | | | | $ 1,071 |

(1) Reflects investments in money market funds via Banc of America Securities brokerage account. As of November 28 NNI holds investments in Dreyfus Govt Cash Mgmt 289, Dreyfus Govt Prime Cash Mgmt 227, Federated Treasury Obligations 68, Fidelity Treasury 695 and JPMorgan U.S. Govt Mkt 3164.

Formal reconciliations between the U.S. Debtors' bank balances and the general ledger are prepared and reviewed quarterly in accordance with the U.S. Debtors' established guidelines.

MOR-6

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks Inc. et al**
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Changes in Balances with Debtors and Non-Debtors**
**Reporting Period: November 1, 2009 through November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

| In re: Nortel Networks Inc. et al | Case # | Increase / (Decrease) | |
|---|---|---|---|
| Nortel Networks Inc. | 09-10138 | $ | (1) |
| Nortel Networks Capital Corporation | 09-10139 | | 1 |
| Nortel AltSystems, Inc. | 09-10140 | | - |
| Nortel AltSystems International, Inc. | 09-10141 | | - |
| Xros, Inc. | 09-10142 | | - |
| Sonoma Systems | 09-10143 | | - |
| Qtera Corporation | 09-10144 | | - |
| CoreTek, Inc. | 09-10145 | | - |
| Nortel Networks Applications Management Solutions, Inc. | 09-10146 | | - |
| Nortel Networks Optical Components Inc. | 09-10147 | | - |
| Nortel Networks HPOCS Inc. | 09-10148 | | - |
| Archetel Systems (U.S.) Corporation | 09-10149 | | - |
| Nortel Networks International, Inc. | 09-10150 | | - |
| Northern Telecom International Inc. | 09-10151 | | - |
| Nortel Networks Cable Solutions Inc. | 09-10152 | | - |
| Nortel Networks (CALA) Inc. | 09-12515 | | (5) |
| Net Intercompany Change [1] | | $ | (5) |

(1) The Changes in Balances with Debtors and Non-Debtors exclude discontinued operations transactions.

MOR-7

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
**In re: Nortel Networks Inc. et al**
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Status of Post-Petition Taxes**
**Reporting Period: November 28, 2009**
**(Unaudited)**

I, Clarke Glaspell, Vice-President, Finance, of each of the U.S. Debtors, attest under penalty of perjury and to the best of my knowledge, information and belief, all post-petition federal, state and local taxes of each of the U.S. Debtors are current as of November 28, 2009 in all material respects.

_____                              December 23, 2009
Clarke Glaspell – Vice President of each of the U.S. Debtors

MOR-8

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
In re: Nortel Networks Inc. et al
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Summary of Unpaid Post-Petition Debts**
**Reporting Period: November 1, 2009 through November 28, 2009**
**(Unaudited)**
**(In millions of U.S. dollars)**

### ACCOUNTS PAYABLE AGING POST-PETITION *

| Accounts Payable Aging | NNI | | AltSystems | | Other | |
|---|---|---|---|---|---|---|
| 0 - 30 days | $ | 23 | $ | - | $ | - |
| 31 - 60 days | | 6 | | - | | - |
| 61 - 90 days | | 3 | | - | | - |
| 91 + days | | 2 | | - | | - |
| Accounts Payable [1] | $ | 34 | $ | - | $ | - |

* Includes only third party trade payables and excludes intercompany transactions and other post-petition obligations of the U.S. Debtors.

### BILLED TRADE ACCOUNTS RECEIVABLES AGING

| Accounts Receivable Aging | NNI | | AltSystems | | Other | |
|---|---|---|---|---|---|---|
| Current | $ | 177 | $ | - | $ | - |
| 0 - 30 days | | 34 | | - | | - |
| 31 - 60 days | | 22 | | - | | - |
| 61 - 90 days | | 6 | | - | | - |
| 91 + days | | 37 | | - | | - |
| Total Trade Accounts Receivable | | 276 | | - | | - |
| Less: provisions for doubtful accounts | | (4) | | - | | - |
| Accounts receivable - net [1] | $ | 272 | $ | - | $ | - |

(1) The Accounts Payable Aging and Billed Trade Accounts Receivables Aging exclude intercompany and discontinued operations transactions.

MOR-9

**U.S. BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**
In re: Nortel Networks Inc. et al
**Cases No. 09-10138 – 09-10152 (KG) Jointly Administered**
**Debtor Questionnaire**
**Reporting Period: November 1, 2009 through November 28, 2009**

| Must be completed each month | Yes | No |
|---|---|---|
| **1. Have any assets been sold or transferred outside the normal course of business this reporting period? If yes, provide an explanation below.**<br><br>On November 13, 2009, Nortel concluded the sale of substantially all of its CDMA business and LTE Access assets with Ericsson. See Notes 9 and 11 of this Monthly Operating Report for more information.<br><br>On December 18, 2009, Nortel concluded the sale of substantially all of the assets of its ES business globally as well as the shares of NGS and DiamondWare, Ltd. to Avaya. See Notes 10 and 11 of this Monthly Operating Report for more information.<br><br>On November 25, 2009, Nortel concluded a successful auction for the planned sale of its global GSM/GSM-R business to Ericsson and Kapsch. See Notes 9 and 11 of this Monthly Operating Report for more information.<br><br>On November 23, 2009, Nortel concluded a successful auction for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses globally to Ciena. See Notes 9 and 11 of this Monthly Operating Report for more information.<br><br>On December 8, 2009, Nortel concluded the sale of its Next Generation Packet Core Assets with Hitachi. See Notes 9 and 11 of this Monthly Operating Report for more information.<br><br>On December 22, 2009, Nortel entered into agreements with GENBAND Inc. for the planned sale of substantially all assets of the CVAS business globally. See Note 11 of this Monthly Operating Report for more information. | X | |
| **2. Have any bank accounts been opened during the reporting period?  If yes, provide documentation identifying the opened account(s).  If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3.** | | X |
| **2. Have any funds been disbursed from any account other than a Debtor-In-Possession account this reporting period? If yes, provide an explaination below.** | | X |
| **3. Have all post-petition tax returns been timely filed? If no, provide an explanation below.** | X | |
| **4. Are workers compensation, general liability and other necessary insurance coverages in effect? If no, provide an explanation below.** | X | |