**EXHIBIT B—SETTLEMENT STIPULATION**

EXECUTION VERSION

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

------------------------------------------------X
:
*In re*                                         :    Chapter 11
:
Nortel Networks Inc., *et al.*, [1]             :    Case No. 09-10138 (KG)
:
Debtors.                                        :    Jointly Administered
:
------------------------------------------------X

## STIPULATION BETWEEN NORTEL NETWORKS INC. AND THE INTERNAL REVENUE SERVICE

This stipulation (the "Stipulation") is entered into by and between Nortel Networks Inc. ("NNI") and the Internal Revenue Service ("IRS") (collectively referred to herein as the "Parties" and individually as a "Party"), with respect to the following:

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and its affiliated debtors and debtors-in-possession (the "US Debtors")[2] filed voluntary petitions under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "US Court");

---

1. The US Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc (9769), Nortel Altsystems International Inc (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226)  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2. One US Debtor, Nortel Networks (CALA), Inc. ("NN CALA"), filed its voluntary petition on July 14, 2009.

1

WHEREAS, the US Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

WHEREAS, also on the Petition Date, the US Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings");

WHEREAS, on January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "US Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142], an ad hoc group of bondholders holding claims against certain of the US Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"), and no trustee or examiner has been appointed in the Debtors' cases;

WHEREAS, on August 4, 2009, the US Court entered the Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order") establishing September 30, 2009 (the "Bar Date") as the bar date for all US Debtors other than NN CALA [D.I. 1084];

WHEREAS, on August 20, 2009, the IRS filed an amended proof of claim bearing the claim identification number 1935 (the "IRS Proof of Claim"), which asserts (a) an

---

3. The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation

2

unsecured priority claim against NNI pursuant to section 507(a)(8) of the Bankruptcy Code for the taxable years 1998-2008, for income taxes due in the amount of $1,804,637,586.00, and interest to the Petition Date in the amount of $1,162,748,632.82, for an aggregate amount of $2,967,386,218.82; (b) an unsecured non-priority claim against NNI for penalties (including interest thereon) to date in the amount of $49,264,612.00, for a total claim of $3,016,650,830.82; and (c) an unassessed, unliquidated and contingent FICA withholding tax claim against NNI;

WHEREAS, NNI and its subsidiaries file U.S. federal tax returns on a consolidated basis (collectively the "NNI Filing Group")[4];

WHEREAS, on September 15, 2009, the US Debtors filed with the US Court Debtor NNI's Objection to Proof of Claim Filed by the Internal Revenue Service (the "IRS Claim Objection"), pursuant to section 502(b) of the Bankruptcy Code, seeking disallowance of the IRS Claim;

WHEREAS, following arm's-length negotiations between the Parties, and in order to avoid the cost and risk inherent in litigating the IRS Claim, the Parties agreed to a stipulation (i) waiving any liability of certain non-Debtor subsidiaries arising under Treasury Regulation section 1.1502-6, (ii) setting a minimum claim for certain U.S. federal tax liabilities of NNI and the NNI Filing Group for U.S. federal tax purposes (the "IRS Minimum Claim"); and (iii) granting a lien in favor of the IRS to secure the IRS Minimum Claim (the "IRS Lien") against certain proceeds that will be generated by the sale of the Enterprise Solutions Business (the "-6 Stipulation");

---

4.  The following US Debtors are not part of the NNI Filing Group: Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc (2846), and Architel Systems (U S ) Corporation (3826)

WHEREAS, on October 13, 2009, the US Court entered an order approving the – 6 Stipulation and adjourned the IRS Claim Objection without date;

WHEREAS, on March 15, 2002, NNI and NNL submitted a joint request for a bilateral advance pricing agreement ("APA") to the IRS and the Canada Revenue Agency (the "CRA"), which request (as later amended) covered NNI's and NNL's taxable years ending December 31, 2001 through December 31, 2005 (the "APA Term");

WHEREAS, the IRS and the CRA have been engaged in competent authority review for several years regarding the APA, which review eventually resulted in the IRS APA (as defined below);

WHEREAS, on June 26, 2009, the IRS verbally informed NNI's representatives that the two taxing authorities had determined, among other things, that NNI had overpaid NNL during the APA Term and that the taxable income of each of NNI and NNL for the APA Term should be adjusted accordingly (the "Adjustment Amount");

WHEREAS, on August 25, 2009, October 16, 2009, and December 8, 2009, the IRS provided NNI drafts of an APA that each provided that NNI's taxable income will be increased by the Adjustment Amount for the APA Term;

WHEREAS, on September 14, 2009 and December 8, 2009, the CRA provided NNL with drafts of an APA that each provided that NNL's taxable income will be decreased by the Adjustment Amount for the APA Term;

WHEREAS, on November 18, 2009, the IRS provided NNI with (i) an IRS Form 872 relating to U.S. federal income tax for NNI's taxable years ending December 31, 1998 through December 31, 2004; and (ii) an IRS Form 872 relating to U.S. federal withholding tax

4

for NNI's taxable years ending December 31, 1998 through December 31, 2003 and December 31, 2005 (together, the "IRS Forms 872");

WHEREAS, for the taxable years ending December 31, 1998 through December 31, 2000, NNI has asserted claims on behalf of the NNI Filing Group, and has the right to assert additional claims on behalf of the NNI Filing Group, against the IRS for interest, which claims, when (i) calculated against the NNI Filing Group's taxable income for taxable years through 2008, as increased by the Adjustment Amount for the APA Term; (ii) netted under U.S. federal income tax principles against other interest amounts owed to the IRS; and (iii) combined with a recent change in law that increases the net operating losses available to the NNI Filing Group to offset the NNI Filing Group's taxable income for taxable years through 2008, as increased by the Adjustment Amount for the APA Term, total approximately $20.9 million (the "Refund Claims");

WHEREAS, NNI, NNL, the Monitor, the Committee and the Bondholder Group have engaged in negotiations with respect to resolving certain inter-estate issues between the US Debtors and the Canadian Debtors, including without limitation, issues relating to overpayments made in the period prior to the Petition Date (the "Pre-Filing Period") by NNI to NNL, certain open balances between NNI and NNL relating to the Pre-Filing Period, and claims for reimbursement and for future funding in the period after the Petition Date (the "Post-Filing Period");

WHEREAS, as a result of such negotiations, NNI, NNL, the Monitor, the Committee and the Bondholder Group recently reached an agreement subject to court approval, the Final Canadian Funding and Settlement Agreement (the "Canadian Funding Agreement"),

5

that will resolve material issues among the US and Canadian Debtors and will, among other things, establish a valid and enforceable claim for the Pre-Filing Period in favor of NNI against NNL in the Canadian Proceedings in the amount of $2,062,700,000 (the "NNI Claim") and, following the Effective Date (as defined below), provide for payments to NNL in the amount of $190,800,000;

WHEREAS, it is expected that the IRS will provide NNI with a final APA for signature that will provide for, among other things, an increase in NNI's taxable income by the Adjustment Amount over the course of the APA Term (the "IRS APA");

WHEREAS, it is expected that the CRA will provide NNL with a final APA for signature that will provide for a corresponding decrease in NNL's taxable income by the Adjustment Amount over the course of the APA Term (the "CRA APA");

WHEREAS, following arm's-length negotiations between the Parties regarding the IRS Claim and discussions concerning the IRS APA, and in order to avoid the cost and risk inherent in litigating the IRS Claim, the Parties have agreed to the settlement and compromise set forth in this Stipulation.

NOW, THEREFORE, for the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties wish to resolve their entire dispute regarding the IRS Claim and therefore stipulate and agree as follows:

1. _Incorporation of Recitals_. The foregoing recitals are incorporated by reference as if fully set forth herein.

2.  <u>Effectiveness</u>. The agreements, acknowledgments and obligations contained herein are expressly contingent upon, and shall become effective only upon (i) entry by the US Court of an order or orders approving this Stipulation and entry into the IRS APA; and (ii) satisfaction of the conditions to effectiveness of the Canadian Funding Agreement by the parties thereto (such date, the "<u>Effective Date</u>").

3.  <u>IRS Release</u>. As of the Effective Date, the IRS will fully and finally release, and waive as against, each of the members of the NNI Filing Group, and their respective assets, any claim, lien, interest or obligation, the right to assert or take any action giving rise to any such claim, lien, interest or obligation, and the right to assess or impose any liability based on any such claim, lien, interest or obligation, whether arising under the Internal Revenue Code of 1986, as amended, or any Treasury Regulations thereunder or any other legal or equitable doctrine or theory, for all taxable years of NNI ending December 31, 1998 through December 31, 2008 (the "<u>IRS Claim Release Period</u>"), for any amount in excess of the IRS Final Claim Amount (as defined below) (the "<u>IRS Release</u>"), by delivering to NNI an executed original of the Closing Agreement (as defined below). For the avoidance of doubt, the IRS Release covers any and all claims by the IRS against the NNI Filing Group, including but not limited to the claims described in the proofs of claim filed by the IRS against NNI, dated as of February 13, 2009, May 22, 2009 and August 20, 2009, bearing the respective claim identification numbers 250, 1226 and 1935 (collectively, the "<u>IRS Claim</u>"), and the IRS will make no additional claims against the NNI Filing Group in connection with the IRS Claim Release Period and seek no relief from the Bar Date or the Bar Date Order. The IRS Release shall be effective immediately upon receipt of the Settlement Payment (as defined below).

7

4. <u>The Closing Agreement</u>. The Parties agree to negotiate in good faith to agree upon the terms and conditions of a closing agreement (the "<u>Closing Agreement</u>"), by and among the IRS and NNI, as agent for the NNI Filing Group, that determines the final tax liability of the NNI Filing Group for the IRS Claim Release Period to be $37.5 million. The Parties acknowledge and agree that the terms of the Closing Agreement will be consistent with this Stipulation. The Parties further agree that they will present a final version of the Closing Agreement to the US Court for approval, along with this Stipulation, by no later than one business day before the date on which the US Court holds a hearing to approve this Stipulation. On the second business day following the Effective Date (the "<u>Settlement Date</u>"), the IRS will deliver an executed original of the Closing Agreement to NNI.

5. <u>The IRS Final Claim</u>. As of the Effective Date, the US Debtors that are part of the NNI Filing Group will be deemed to have acknowledged a claim in favor of the IRS (the "<u>IRS Final Claim</u>") in respect of US federal tax for the IRS Claim Release Period, in an amount of $37.5 million (the "<u>IRS Final Claim Amount</u>"). The Parties acknowledge and agree that the IRS Final Claim Amount includes, and is not in addition to, the IRS Minimum Claim. Subject to the occurrence of the Effective Date, the IRS Claim is hereby agreed and allowed solely to the extent of the IRS Final Claim Amount, the Parties acknowledge and agree that the IRS is entitled to a claim for no less than the IRS Final Claim Amount, and the Parties also agree that in no event shall the allowed amount of the IRS Claim exceed IRS Final Claim Amount.

6. <u>Payment on the IRS Final Claim</u>. On the Settlement Date, NNI will make a cash payment to the IRS in an amount equal to the IRS Final Claim Amount (the "<u>Settlement Payment</u>").

7. <u>Extinguishment of the IRS Lien</u>. The Parties agree that upon payment of the Settlement Payment by NNI to the IRS, the IRS Lien will be extinguished, and any and all rights of the IRS arising out of the –6 Stipulation will be null and void.

8. <u>The IRS APA</u>. The Parties agree that no later than the Settlement Date, they will execute the IRS APA in a form that will be presented to the US Court, under seal, by no later than one business day before the date on which the US Court holds a hearing to approve this Stipulation. NNI agrees that it will seek authorization from the US Court of NNI's entry into the IRS APA. NNI further agrees that, pursuant to the IRS APA and contingent upon receipt of US Court approval of NNI's entry into the IRS APA, it will file amended U.S. federal income tax returns that adjust NNI's taxable income to reflect the Adjustment Amount for the APA Term. The IRS acknowledges that NNI has provided the IRS with draft amended returns (the "<u>Amended Returns</u>") that reflect the Adjustment Amount for the APA Term, and the IRS agrees that the Amended Returns are satisfactory in form to the IRS. The IRS agrees that, upon NNI's formal filing of the Amended Returns with the IRS, NNI will be deemed to have satisfied all of the requirements set forth in the IRS APA, including but not limited to the reporting requirements contained in paragraphs 5(e), 5(f) and 5(g) and Appendix C of the IRS APA. NNI agrees that the IRS APA is highly confidential and implicates confidential taxpayer information as well as other confidential information and, as such, will file a motion with the US Court requesting confidential treatment of the IRS APA.

9. <u>Remaining Tax Attributes</u>. The Parties acknowledge and agree, and the Closing Agreement will provide, that after increasing NNI's taxable income by the Adjustment Amount for the APA Term, as of January 1, 2009, the NNI Filing Group has a federal tax net

9

operating loss carryforward of $813,886,666 available to offset taxable income. The Parties further acknowledge and agree that as of January 1, 2009, the NNI Filing Group may be entitled to general business credits, and the Parties will work in good faith to determine the amount thereof in a timely manner.

10. <u>Payments from NNL to NNI</u>. The IRS acknowledges that the Canadian Funding Agreement requires the establishment of the NNI Claim and the IRS further acknowledges that NNI may receive payments in respect of the NNI Claim up to the face amount of the NNI Claim. The IRS agrees (i) to treat, solely for U.S. federal income tax purposes, any such amounts received by NNI in respect of the NNI Claim as a nontaxable event and (ii) that the cancellation or discharge, without payment, of any portion of the NNI Claim will not give rise to any U.S. federal taxes.

11. <u>IRS Forms 872</u>. NNI agrees to execute the IRS Forms 872 and deliver the IRS Forms 872 to the IRS by December 30, 2009; *provided, however*, that, by executing the IRS Forms 872, NNI neither acknowledges the validity of nor creates any claims against NNI in favor of the IRS nor waives any protections against assessment of taxes provided by the bankruptcy process. The IRS agrees that immediately upon payment by NNI of the Settlement Payment to the IRS, the IRS Forms 872 shall be deemed revoked and NNI's consent to extend the statute of limitations on assessment shall be terminated.

12. <u>Refund Claims</u>. On the Settlement Date, NNI, on behalf of the NNI Filing Group, (i) agrees to withdraw any Refund Claims previously filed by NNI on behalf of the NNI Filing Group against the IRS for taxable years through 2008, and (ii) waives, and agrees not to assert, any additional Refund Claims by NNI on behalf of the NNI Filing Group for taxable years

through 2008 against the IRS. The IRS hereby acknowledges that NNI has provided the IRS with calculations to support the Refund Claims. The Parties acknowledge that, but for this Stipulation, NNI would have asserted and defended, as necessary, the Refund Claims on behalf of the NNI Filing Group against the IRS. NNI agrees that withdrawal and waiver of the Refund Claims by NNI will be with prejudice against NNI and the NNI Filing Group.

13. <u>Additional Agreements</u>. On the Settlement Date, NNI will withdraw its Claim Objection with prejudice, and the IRS will withdraw, with prejudice, its Motion for Withdrawal of Reference of All Issues Relating to Debtor NNI's Objection to Proof of Claim filed by the Internal Revenue Service.

14. <u>No Reliance</u>. Each Party acknowledges and agrees that it has not relied on any statement or representation of any other Party, person or entity in determining to enter into this Stipulation or the Closing Agreement.

15. <u>No Admissions</u>. Each Party acknowledges that nothing in this Stipulation constitutes an admission or concession of any legal issue raised.

16. <u>Construction of Terms</u>. All capitalized terms used and not defined herein shall have their meanings in the −6 Stipulation. In the event of any inconsistency between the −6 Stipulation and this Stipulation, this Stipulation shall control.

17. <u>Binding Effect</u>. As of the Effective Date, this Stipulation and the Order approving the Stipulation shall be binding upon any successors or assigns of the parties hereto, including but not limited to, any member of the NNI Filing Group and any trustee or receiver subsequently appointed in these proceedings.

18. <u>Full and Final Settlement</u>.  The Parties agree that this Stipulation constitutes a full and final settlement of the IRS Claim, and of all U.S. federal tax liability of the NNI Filing Group for the IRS Claim Release Period.

19. <u>Entire Agreement</u>. Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Stipulation, and that this Stipulation constitutes the entire agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof; *provided, however*, that nothing in this Stipulation shall alter the rights of each of NNI, Nortel Government Solutions Inc. (and its subsidiaires) and DiamondWare Ltd. with respect to the -6 Waiver and release provided by the IRS in the –6 Stipulation and the closing agreement attached thereto as Exhibit A. It is expressly understood and agreed that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by each Party or the authorized representatives of each of the Parties. Each Party hereby agrees that such Party will make no claim at any time or place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

20. <u>Costs and Expenses</u>. Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of this Stipulation and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

21. <u>Jurisdiction</u>. NEW YORK LAW SHALL GOVERN THE CONSTRUCTION OF NON-BANKRUPTCY PROVISIONS, IF ANY AND TO THE

EXTENT APPLICABLE, RELEVANT TO THIS STIPULATION, WITHOUT REGARD TO THE CONFLICTS OF LAWS OR PRINCIPLES THEREOF. THE PARTIES ACKNOWLEDGE AND AGREE THAT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE SHALL HAVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE PARTIES WITH RESPECT TO THIS STIPULATION.

22. Representative Capacity. Each person executing this Stipulation in a representative capacity represents and warrants that he or she is empowered to do so.

23. Participation In Drafting. Each Party represents and warrants that it has participated in the drafting and preparation of this Stipulation. In any construction of this Stipulation, the Stipulation shall not be construed for or against any Party, but the same shall be construed fairly according to its plain meaning.

24. Covenant of Good Faith. Each Party hereto covenants that it has entered into this Stipulation in good faith, and agrees to do all things necessary or convenient to carry out and effectuate the terms of this Stipulation, including, without limitation, the execution of all further and additional documents, and not to do or fail to do anything, directly or indirectly, that will interfere with the terms or conditions hereof or adversely affect any of the rights provided for herein.

25. Manner of Execution. This Stipulation may be executed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto were on the same instrument, and such counterparts shall be construed together as one instrument. Facsimile or pdf signatures shall be deemed original signatures.

26. <u>Court Approval</u>. All provisions of this Stipulation are subject to the approval of the US Court. NNI shall file one or more motions with the US Court on or before December 31, 2009 seeking approval of (i) this Stipulation, (ii) the IRS APA and (iii) the Canadian Funding Agreement. The IRS agrees to support such requests for relief.

27. <u>Consent to Entry of Order</u>. The Parties hereby agree to the entry of an order by the US Court approving this Stipulation.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK

SIGNATURE PAGE FOLLOWS

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

| NORTEL NETWORKS INC., on its behalf and on behalf of the members of the NNI Filing Group | INTERNAL REVENUE SERVICE |
|---|---|
| *(signed)* <br> Peter Look <br> Authorized Signatory | _____ <br> William Bradley Russell <br> Trial Counsel <br> Department of Justice <br> Counsel to the Internal Revenue Service |
| Dated: 12-23-09 | Dated: _____ |

15

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

NORTEL NETWORKS INC., on its behalf and on behalf of the members of the NNI Filing Group

INTERNAL REVENUE SERVICE

_____
Peter Look
Authorized Signatory

_____
William Bradley Russell
Trial Counsel
Department of Justice
Counsel to the Internal Revenue Service

Dated: _____

Dated: *December 23, 2009*

15