## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*, [1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

## NOTICE PURSUANT TO SECTION 12(d) OF THE CROSS-BORDER PROTOCOL OF FILING OF MOTION RECORD FILED IN THE CANADIAN PROCEEDINGS TO APPROVE CVAS BUSINESS BIDDING PROCEDURES

**PLEASE TAKE NOTICE** that pursuant to section 12(d) of the Cross-Border Protocol approved in the above-captioned cases (Docket No. 18), on January 4, 2010, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (the "**Canadian Nortel Group**"), in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Proceedings**"), by its undersigned counsel, filed in the above-captioned cases the Motion Record of the Applicants filed in the Canadian Proceedings in support of the Canadian Nortel Group's motion to approve the Carrier Voice Over IP and Application Solutions ("CVAS") Business Bidding Procedures Order (the "**Motion Record**"). A joint hearing is scheduled to be held in the Canadian Proceedings and the above-captioned cases on January 6, 2010. A copy of the Motion Record is annexed hereto as Exhibit A.

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

**PLEASE TAKE FURTHER NOTICE** that copies of the Motion Record are also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

Dated: Wilmington, Delaware
      January 4, 2010

                ALLEN & OVERY LLP

                Ken Coleman
                Lisa Kraidin
                1221 Avenue of the Americas
                New York, New York  10020
                Telephone (212) 610-6300
                Facsimile (212) 610-6399
                ken.coleman@allenovery.com
                lisa.kraidin@allenovery.com

                -and-

                BUCHANAN INGERSOLL & ROONEY

                By: /s/ Mary F. Caloway
                Mary F. Caloway (No. 3059)
                Peter J. Duhig (No. 4024)
                 The Brandywine Building
                1000 West Street, Suite 1410
                Wilmington, Delaware 19801
                Telephone (302) 552-4200
                Facsimile (302) 552-4295
                mary.caloway@bipc.com

                Attorneys for Ernst & Young Inc., as Monitor
                and Foreign Representative of the Canadian Nortel
                Group

## EXHIBIT A

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**MOTION RECORD**
**CVAS Business Bidding Procedures**
**(returnable January 6, 2010)**

December 29, 2009

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**INDEX**

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Notice of Motion returnable January 6, 2010 | 1 |
| 2. | Affidavit of George Riedel sworn December 23, 2009 | 26 |
| 3. | Draft Order | 42 |

# TAB 1

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(returnable January 6, 2010)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on **Wednesday, January 6, 2010 at 10:00 a.m. at 393 University Avenue, Toronto, Ontario.**

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR AN ORDER:

(a)    Abridging the time for service of the Notice of Motion and Motion Record in respect of this motion and dispensing with further service thereof;

- 2 -

(b)     Approving the bidding procedures (the "Bidding Procedures") described in the affidavit of George Riedel sworn December 23, 2009 (the "Riedel Affidavit") and the thirty-fourth report (the "Thirty-Fourth Report") of Ernst & Young Inc., in its capacity as monitor (the "Monitor") to be filed separately, subject to the approval of the Bidding Procedures by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the Chapter 11 Debtors and authorizing the Applicants to conduct the sale process contemplated therein;

(c)     Approving an asset sale agreement dated as of December 22, 2009 (the "Stalking Horse Agreement") among NNC, NNL, Nortel Networks Inc. ("NNI") and certain other entities identified therein as sellers (together, the "Sellers") and GENBAND Inc., as purchaser ("GENBAND" or the "Stalking Horse Purchaser") for the sale (the "Sale") of certain assets of the Sellers' Carrier Voice Over IP and Application Solutions business (the "CVAS Business") as described therein (the "Assets") in the form attached as an appendix to the Thirty-Fourth Report and approving and accepting the Stalking Horse Agreement for the purposes of conducting the "stalking horse" bidding process in accordance with the Bidding Procedures including, without limitation the Break-Up Fee and the Expense Reimbursement (as both terms are defined in the Stalking Horse Agreement");

(d)     Authorizing and directing NNC to pay the Incentive Fee (defined below);

(e)     Approving the Incentive Fee Letter (defined below) relating to the payment of the Incentive Fee;

(f)     Sealing of the confidential appendices to the Thirty-Fourth containing the schedules and exhibits to the Stalking Horse Agreement; and

(g)     Such further and other relief as counsel may request and this Honourable Court deem just.

- 3 -

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)  On January 14, 2009 (the "Filing Date"), this Honourable Court made an Initial Order granting a stay of proceedings against the Applicants pursuant to the *Companies' Creditors Arrangement Act*, (Canada) R.S.C. 1985, c. C-36, as amended (the "CCAA") and appointing Ernst & Young Inc. as Monitor in the CCAA proceedings;

(b)  Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including Nortel Networks Inc. ("NNI"), made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

(c)  Additionally, on January 15, 2009, Nortel Networks UK Limited and certain subsidiaries of the Nortel group incorporated in the Europe, Middle East and Africa region ("EMEA") each obtained an administration order for the appointment of joint administrators (the "Joint Administrators") from the High Court of England and Wales under the Insolvency Act 1986;

(d)  References to "Nortel" herein shall be to the global enterprise as a whole;

(e)  Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Riedel Affidavit;

**THE CVAS BUSINESS**

(f)  Nortel's CVAS Business provides telecom service providers with network solutions that help them improve operational efficiency, reduce costs, and generate new revenue through the deployment of multimedia applications and voice over internet protocol ("VoIP") solutions that enhance the communications experience for businesses and consumers;

- 4 -

(g)     Nortel first began to explore a divestiture of the CVAS Business in April of 2009. With a strong customer base and industry-leading technology, the CVAS Business is considered a premium asset with a highly differentiated offering, making it attractive to potential purchasers;

## THE STALKING HORSE AGREEMENT

(h)     After extensive negotiations the parties have now agreed on the terms of the Stalking Horse Agreement as well as the terms of an EMEA Agreement (as defined in the Riedel Affidavit) for the transfer of assets by certain of the EMEA entities, which agreements are subject to higher or better offers;

(i)     The terms and conditions of the Stalking Horse Agreement, and the agreements to be entered into in connection with the closing of the transactions contemplated in the Stalking Horse Agreement are described in further detail in the Riedel Affidavit and the Thirty-Fourth Report and provides for, among other things, a purchase price of US$282 million in cash;

(j)     It is anticipated that, Nortel, with the assistance of the Monitor, will conduct an expedited sale process and follow the Bidding Procedures with a view to the ultimate conduct of an auction amongst the Qualified Bidders (as defined below);

(k)     An agreed upon set of Bidding Procedures have been developed, which provide for a process through which an interested party may become a "Qualified Bidder". The Thirty-Fourth Report will attach and outline the proposed sale process and the Bidding Procedures in more detail;

(l)     As part of the transaction and in recognition of this· expenditure of time, energy, and resources expended by the Purchaser, the Sellers (and the EMEA Sellers under the EMEA Agreement) have agreed to pay certain Bid Protections under certain circumstances which are more specifically outlined in the Thirty-Fourth Report;

(m)     The proposed auction sale process for the CVAS Business, based on the Stalking Horse Agreement as a stalking horse bid, is the best way to preserve the business as a going concern and maximize the value and preserve jobs for the Applicants' employees;

**THE INCENTIVE FEE**

(n)     One Equity Partners III, L.P. ("OEP") is the largest single equity investor in GENBAND, currently holding approximately 35% of GENBAND's common stock;

(o)     OEP has informed the Sellers and the EMEA Sellers that it has incurred significant un-reimbursed costs in connection with its pursuit of these various other transactions, and that it requires compensation for these costs as a condition to its financial sponsorship of the Stalking Horse Agreement;

(p)     The Sellers and EMEA Sellers have agreed, subject to obtaining the required court approvals, to pay to OEP an incentive fee in connection with the execution of the Stalking Horse Agreement, to induce OEP's continued participation in the auction process.   The incentive fee agreed to by the parties consists of a payment of US$3,600,000, funded as US$1.2 million by each of: (i) NNI, (ii) NNC, and (iii) NNUK, on their own behalf and on behalf of their respective affiliates (NNC's obligation to pay $1.2 million is referred to herein as the "Incentive Fee");

(q)     NNC, NNL, NNI and NNUK and the Joint Administrators have executed a letter agreement that provides that the US$3.6 million in incentive fee payments, including the Incentive Fee, would be subject to further allocation amongst the estates if the Sale or Alternate Transaction is consummated (the "Incentive Fee Letter");

(r)     The agreement to pay the Incentive Fee to OEP is, among other things, in recognition of OEP's good faith efforts to pursue the Sale and the value that it has provided to the Applicants through its participation in other transactions;

**SEALING**

(s)     The confidential appendices to the Thirty-Fourth Report contain sensitive, competitive and, in some instances, employee information;

(t)      The sealing of these confidential appendices are appropriate in the circumstances;

**MISCELLANEOUS**

(u)      The provisions of the CCAA; and

(v)      Such further and other grounds as counsel may advise and this Honourable Court permit.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)      The Riedel Affidavit;

(b)      The Thirty-Fourth Report, to be filed separately; and

(c)      Such further and other relief as counsel may request and this Honourable Court deem just.

December 29, 2009                    **OGILVY RENAULT LLP**
                                     Suite 3800
                                     Royal Bank Plaza, South Tower
                                     200 Bay Street
                                     Toronto, Ontario  M5J 2Z4  CANADA

                                     **Derrick Tay LSUC#: 21152A**
                                     Tel: (416) 216-4832
                                     Email: dtay@ogilvyrenault.com

                                     **Mario Forte LSUC#: 27293F**
                                     Tel: (416) 216-4870
                                     Email: mforte@ogilvyrenault.com

                                     **Jennifer Stam LSUC #46735J**
                                     Tel: (416) 216-2327
                                     Email: jstam@ogilvyrenault.com

                                     Fax: (416) 216-3930
                                     Lawyers for the Applicants

TO:      Attached Service List

꒾

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. c-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C-36, AS AMENDED

**SERVICE LIST**

TO:     **OGILVY RENAULT LLP**
Royal Bank Plaza, South Tower
200 Bay Street, Suite 3800
Toronto, Ontario M5J 2Z4

Derrick Tay
Mario Forte
Jennifer Stam

Email:    dtay@ogilvyrenault.com
mforte@ogilvyrenault.com
jstam@ogilvyrenault.com

Tel:    416.216.4000
Fax:    416.216.3930

Lawyers for the Applicants

- 2 -

8

TO:  **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:  nortel.monitor@ca.ey.com

Tel:  416.943.3016
Fax:  416.943.3300

AND
TO:  **GOODMANS LLP**
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:  jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
carmstrong@goodmans.ca

Tel:  416.597.4107
Fax:  416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND
TO:  **OSLER HOSKIN AND HARCOURT LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:  lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:  416.362.2111
Fax:  416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND
TO:  **FASKEN MARTINEAU DUMOULIN LLP**
66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:  dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:  416.868.3538
Fax:  416.364.7813

Lawyers for Export Development Canada

AND TO:

**EXPORT DEVELOPMENT CANADA**
151 O'Connor Street
Ottawa, ON K1A 1K3

Jennifer Sullivan

Email:   jsullivan@edc.ca

Tel:     613.597.8651
Fax:     613.598.3113

AND TO:

**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email:   rthornton@tgf.ca
         mbarrack@tgf.ca
         rmoncur@tgf.ca
         lwilliams@tgf.ca

Tel:     416.304.1616
Fax:     416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:

**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email:   john.stringer@mcinnescooper.com
         stephen.kingston@mcinnescooper.com

Tel:     902.425.6500
Fax:     902.425.6350

Lawyers for Convergys EMEA Limited

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:   jcarhart@millerthomson.com
         msims@millerthomson.com

Tel:     416.595.8615/8577
Fax:     416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:

**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email:   barry.wadsworth@caw.ca
         lewis.gottheil@caw.ca

Tel.:    416.495.3776
Fax:     416.495.3786

Lawyers for all active and retired Nortel
employees represented by the CAW-Canada

AND TO:

**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email:   hharrison@boughton.ca

Tel:     604.687.6789
Fax:     604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

AND
TO:
**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:   mmacnaughton@blgcanada.com
Tel:      416. 367.6646
Fax:      416. 682.2837

Email:   rjaipargas@blgcanada.com
Tel:      416.367.6266
Fax:      416.361.7067

Email:   srappos@blgcanada.com
Tel:      416.367.6033
Fax:      416.361.7306

Lawyers for Bell Canada


AND
TO:
**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:   ray.leach@siskinds.com
            dimitri.lascaris@siskinds.com
            monique.radlein@siskinds.com

Tel:      519.672.2121
Fax:      519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare


AND
TO:
**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:      416.307.4087
Fax:      416.304.3855

Email   jcontini@langmichener.ca
Tel:      416.307.4148
Fax:      416.304.3767

Email   arousseau@langmichener.ca
Tel:      416.307.4081
Fax:      416.365.1719

Lawyers for ABN AMRO Bank N.V.


AND
TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:   zychk@bennettjones.com
Tel:      416.777.5738
Fax:      416.863.1716

Email:   orzyr@bennettjones.com
Tel:      416.777.5737
Fax:      416.863.1716

Email:   finlaysong@bennettjones.com
Tel:      416.777.5762
Fax:      416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

| | | | |
|---|---|---|---|
| AND TO: | **KOSKIE MINSKY**<br>20 Queen Street West<br>Suite 900<br>Toronto, ON M5H 3R3 | AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON M5H 3S1 |

KOSKIE MINSKY
20 Queen Street West
Suite 900
Toronto, ON M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:  mzigler@kmlaw.ca
Tel:    416.595.2090
Fax:    416.204.2877

Email:  sphilpott@kmlaw.ca
Tel:    416.595.2104
Fax:    416.204.2882

Email:  dyiokaris@kmlaw.ca
Tel:    416.595.2130
Fax:    416.204.2810

Email:  amckinnon@kmlaw.ca
Tel:    416.595.2150
Fax:    416.204.2874

Lawyers for the Former Employees of Nortel

AND TO:  MILLER THOMSON LLP
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email   msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND TO:  MILLER THOMSON LLP
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:  jcarhart@millerthomson.com
Tel:    416.595.8615
Fax:    416.595.8695

Email:  msims@millerthomson.com
Tel:    416.595.8577
Fax:    416.595.8695

Email:  jmklotz@millerthomson.com
Tel:    416.595.4373
Fax:    416.595.8695

Lawyers for LG Electronics Inc.

AND TO:  LG ELECTRONICS INC.
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:  joseph.kim@lge.com

Tel:    +82.2.3777.3171
Fax:    +82.2.3777.5345

AND
TO:
**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:     416.218.1849

Lawyers for IBM Canada Limited

AND
TO:
**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder

Email:   Shayne.kukulowicz@fmc-law.com
            Alex.macfarlane@fmc-law.com
            Michael.wunder@fmc-law.com

Tel:      416.863.4511
Fax:     416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:
**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:     416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:     416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:     416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:     416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:
**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:     416.862.7661

Lawyers for Westcon Group

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:  rslattery@mindengross.com
        dullmann@mindengross.com
Tel:    416.369.4149
Fax:    416.864.9223

Lawyers for Verizon Communications Inc.

AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Andrew, LLC

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:    416.865.7726
Fax:    416.863.1515

Email:  iaversa@airdberlis.com
Tel:    416.865.3082
Fax:    416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:  hfogul@airdberlis.com
Tel:    416.865.7773
Fax:    416.863.1515

Email:  pczegledy@airdberlis.com
Tel:    416.865.7749
Fax:    416.863.1515

Lawyers for Microsoft Corporation

AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:  renglish@airdberlis.com
        smitra@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND TO:

**ALEXANDER HOLBURN BEAUDIN & LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:  surquhart@ahbl.ca
Tel:    604.484.1757
Fax:    604.484.1957

Lawyers for Algo Communication Products Ltd.

*14*

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:  mfleming@millerthomson.com
Tel:     416.595.8686
Fax:     416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:     416.365.3529
Fax:     416.369.5210

Email:  jdavissydor@davis.ca
Tel:     416.941.5397
Fax:     416.365.7886

Lawyers for Brookfield LePage Johnson Controls
Facility Management Services

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:  andrew.kent@mcmillan.ca
Tel:     416.865.7160
Fax:     416.865.7048

Email:  hilary.clarke@mcmillan.ca
Tel:     416.865.7286
Fax:     416.865.7048

Email:  tushara.weerasooriya@mcmillan.ca
Tel:     416.865.7262
Fax:     416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:  sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:  iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for Perot Systems Corporation

AND TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca
Tel:    416.865.7178
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca
Tel:    416.865.7285
Fax:    416.865.7048

Lawyers for Citibank

AND TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com
Tel:    416.860.5219
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

AND TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com
Tel:    416.593.2996
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com
Tel:    416.865.6655
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com
Tel:    416.865.6641
Fax:    416.865.6636

Lawyers for Amphenol Corporation

AND TO:
**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario  M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:  lwittlin@langmichener.ca
Tel:    416.307.4087
Fax:    416.365.1719

Email:  arousseau@langmichener.ca
Tel:    416.307.4081
Fax:    416.365.1719

Lawyers for Right Management Inc.

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:  smitra@airdberlis.com
        svitorovich@airdberlis.com

Tel:    416.863.1500
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

AND
TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
         ainslie.benedict@nelligan.ca
         steven.levitt@nelligan.ca
         christopher.rootham@nelligan.ca

Tel:   613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND
TO:
**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario M5H 2M5

Gail E. Misra

Email:   misrag@caleywray.com

Tel:   416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND
TO:
**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec H3A 3M8

David J. Dropsy

Email:   ddropsy@colby-monet.com
Tel:   514.284.3663
Fax:   514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

AND
TO:
**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:   bleonard@casselsbrock.com
         hgarman@casselsbrock.com
         mcasey@casselsbrock.com

Tel:   416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND
TO:
**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario K2P 0A2

Paul K. Lepsoe

Email:   pklepsoe@mcfarlanelaw.com

Tel:   613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND
TO:
**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec H9S 2A5

Dan Goldstein
Marco Gaggino

Email:   dgoldstein@schneidergaggino.com
         mgaggino@schneidergaggino.com

Tel:   514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:   janice.payne@nelligan.ca
         steven.levitt@nelligan.ca
         christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:     613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:   ryanbellr@bennettjones.com
         laugesenm@bennettjones.com

Tel:     416.863.1200
Fax:     416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:   tdunn@mindengross.com
Tel:     416.369.4335
Fax:     416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:   chris.besant@bakernet.com

Tel:     416.865.2318
Fax:     416.863.6275

Email:   lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:     416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:   theintzm@mccarthy.ca
Tel:     416.601.7627
Fax:     416.868.0673

Email:   jsirivar@mccarthy.ca
Tel:     416.601.7750
Fax:     416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:

**EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:   nanci@eurodata.ca
Tel:     613.745.0921
Fax:     613.745.1172

AND
TO:
**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:     613.771.9991
Fax:     613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :    416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:     714.998.4351
Fax:     714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:   arthur.jacques@shibleyrighton.com
Tel:     416.214.5213
Fax:     416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :    416.214.5206
Fax :    416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email:   jysimard@lavery.ca
Tel :    514.871.1522
Fax :    514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

| | |
|---|---|
| AND TO: | **NATIONAL TECHNICAL SYSTEMS**<br>130 Chaparral Ct., Suite 250<br>Anaheim, California, U.S.A.<br>92808<br><br>Cynthia Maher<br><br>Email:  cynthia.maher@ntscorp.com<br>Tel:    714.998.4351 | AND TO: | **GOWLING LAFLEUR HENDERSON LLP**<br>Suite 1600, First Canadian Place<br>100 King Street West<br>Toronto, ON  M5X 1G5<br><br>David F.W. Cohen<br><br>Email:  david.cohen@gowlings.com<br><br>Tel:    416.369.6667<br>Fax:   416.862.7661<br><br>Lawyers for General Electric Canada Equipment Finance G.P. and GE Capital Canada Leasing Services Inc. |

| | |
|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON  M5X 1E2<br><br>Bruce Darlington<br>Jonathan Davis-Sydor<br><br>Email:  bdarlington@davis.ca<br>Tel:    416.365.3529<br>Fax:   416.369.5210<br><br>Email:  jdavissydor@davis.ca<br>Tel:    416.941.5397<br>Fax:   416.365.7886<br><br>Lawyers for Computershare Trust Company of Canada | AND TO: | **DAVIES WARD PHILLIPS & VINEBERG LLP**<br>44th Floor<br>1 First Canadian Place<br>Toronto, ON  M5X 1B1<br><br>Robin B. Schwill<br>Matthew P. Gottlieb<br><br>Email:  rschwill@dwpv.com<br>Tel:    416.863.0900<br>Fax:   416.863.0871<br><br>Email:  mgottlieb@dwpv.com<br>Tel:    416.863.0900<br>Fax:   416.863.0871<br><br>Lawyers for Nortel Networks UK Limited (In Administration) |

| | |
|---|---|
| AND TO: | **LAX O'SULLIVAN SCOTT LLP**<br>Counsel<br>Suite 1920, 145 King Street West<br>Toronto, Ontario  M5H 1J8<br><br>Terrence O'Sullivan<br>Shaun F. Laubman<br><br>E-mail:  tosullivan@counsel-toronto.com<br>Tel:    416.598.1744<br>Fax:   416.598.3730<br><br>Email:  slaubman@counsel-toronto.com<br>Tel:    416.598.1744<br>Fax:   416.598.3730<br><br>Lawyers for William A. Owens | AND TO: | **BAKER & McKENZIE LLP**<br>Brookfield Place, P.O. Box 874<br>181 Bay Street, Suite 2100<br>Toronto, Ontario  M5J 2T3<br><br>Lydia Salvi<br><br>Email:  lydia.salvi@bakernet.com<br><br>Tel:    416.865.6944<br>Fax:   416.863.6275<br><br>Lawyers for Wipro Limited |

- 14 -

<table>
<tr><td>AND<br>TO:</td><td>

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

</td><td>AND<br>TO:</td><td>

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:     416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

</td></tr>
<tr><td>AND<br>TO:</td><td>

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:     416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

</td><td>AND<br>TO:</td><td>

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

</td></tr>
</table>

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:     416.863.2958
Fax:     416.863.2653

Email:  milly.chow@blakes.com
Tel:     416.863.2594
Fax:     416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:     416.863.2426
Fax:     416.863.2653

Email:  craig.thorburn@blakes.com
Tel:     416.863.2965
Fax:     416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:     416.863.2572
Fax:     416.863.2653

Email:  marc.flynn@blakes.com
Tel:     416.863.2685
Fax:     416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:     416.307.4063
Fax:     416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:     416.601.7730
Fax:     416.868.0673

Email:  rstabile@mccarthy.ca
Tel:     416.601.8335
Fax:     416.868.0673

Lawyers for Avaya Inc.

22

- 16 -

| | |
|---|---|
| AND TO: | **SACK GOLDBLATT MITCHELL LLP**<br>20 Dundas Street West<br>Suite 1100<br>Toronto, Ontario  M5G 2G8<br><br>James McDonald<br>Darrell Brown<br><br>Email:  jmcdonald@sgmlaw.com<br>Tel:    416.979.6425<br>Fax:    416.591.7333<br><br>Email:  dbrown@sgmlaw.com<br>Tel:    416.979.4050<br>Fax:    416.591.7333<br><br>Lawyers for Edmund Fitzgerald | AND TO: | **FOGLER, RUBINOFF LLP**<br>Barristers and Solicitors<br>Suite 1200<br>Toronto-Dominion Centre<br>95 Wellington Street West<br>Toronto, Ontario  M5J 2Z9<br><br>Jeffrey K. Spiegelman<br><br>Email:  jspiegelman@foglers.com<br>Tel:    416.864.9700<br>Fax:    416.941.8852<br><br>Lawyers for Belden (Canada) Inc. |

AND TO:

**STIKEMAN ELLIOTT LLP**
5300 Commerce Court West
199 Bay Street
Toronto, ON  M5L 1B9

Ashley John Taylor

Email:  ataylor@stikeman.com
Tel:    416.869.5236
Fax:    416.947.0866

Lawyers for Ciena Corporation

**COURTESY COPIES:**

AND
TO:

**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:      602.262.5321
Fax:     602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:

**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara
Ryan C. Jacobs

Email:   fhodara@akingump.com
             rjacobs@akingump.com

Tel:      212.872.1000
Fax:     212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail:  sreisman@curtis.com
             jdrew@curtis.com

Tel:      212.696.6000
Fax:     212-697-1559

Lawyers for Flextronics International

AND
TO:

**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:      212.530.5770
Fax:     212.530.5219

Email:   ALeblanc@milbank.com
Tel:      212.835.7574
Fax:     212.530.5219

Email:   APisa@milbank.com
Tel:      212.530.5319
Fax:     212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

24

- 18 -

AND
TO:
**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:  mschein@vedderprice.com

Tel:     212.407.6920
Fax:     212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:
**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :  andrew.robertson@macleoddixon.com
           caylee.rieger@macleoddixon.com

Tel :    403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:
**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:      312.602.5033
Fax:      312.602.5050

U.S. Lawyers for Tellabs, Inc.

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

Applicants

25

*ONTARIO*
**SUPERIOR COURT OF JUSTICE COMMERCIAL LIST**

Proceeding commenced at Toronto

**NOTICE OF MOTION**
**(returnable January 6, 2010)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1835076\1

# TAB 2

26

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF GEORGE RIEDEL**
**(sworn December 23, 2009)**

I, George Riedel, of the city of Boston in the State of Massachusetts, MAKE OATH
AND SAY:

1.      I am the Chief Strategy Officer of Nortel Networks Corporation ("NNC") and Nortel
Networks Limited ("NNL") and have held those positions since February, 2006. As such, I have
personal knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do
not possess personal knowledge, I have stated the source of my information and, in all such
cases, believe it to be true.

2.      I swear this Affidavit in support of the motion to approve, among other things, the
bidding procedures and an asset sale agreement dated as of December 22, 2009 (the "Stalking
Horse Agreement") among NNC, NNL, Nortel Networks Inc. ("NNI") and certain other entities
identified therein as sellers (together, the "Sellers") and GENBAND Inc., as purchaser
("GENBAND" or the "Stalking Horse Purchaser") for the sale (the "Sale") of certain assets of
the Sellers' Carrier Voice Over IP and Application Solutions business (the "CVAS Business") as
described therein (the "Assets") as a "stalking-horse" sale agreement as well as authorizing and
directing NNC to pay an Incentive Fee to OEP (as such terms are defined below).

- 2 -

3.    A copy of the Stalking Horse Agreement (without exhibits or schedules) is or will be attached as an appendix to the thirty-fourth report (the "Thirty-Fourth Report") of the Monitor (as defined below) to be filed in connection with this motion.

4.    References to "Nortel" herein are references to the global enterprise of NNC, NNL, NNI and their respective affiliates as a whole.

5.    In connection with entering into the Stalking Horse Agreement, a corresponding asset sale agreement relating to the sale and purchase of the EMEA Assets (as defined in the EMEA Agreement) among certain of the EMEA Debtors (defined below) and their affiliates (the "EMEA Sellers"), the Joint Administrators (defined below), the Joint Israeli Administrators (defined below), and the Stalking Horse Purchaser dated December 23, 2009 (the "EMEA Agreement" and together with the Stalking Horse Agreement, the "Purchase Agreements").

6.    All dollar references are US$ unless otherwise indicated.

**BACKGROUND**

7.    On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

8.    Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "Initial U.S. Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

9.    Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa ("EMEA")

each obtained an administration order for the appointment of administrators (the "Joint Administrators") from the High Court of England and Wales under the Insolvency Act 1986.

10.    On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators (the "Joint Israeli Administrators") of the Israeli Company under the Israeli Companies Law.

11.    On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

12.    On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months which period was subsequently extended to November 28, 2009.   In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On October 1, 2009, the French Court approved an order to (i) suspend the liquidation operation relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French administrator and liquidator during that period except with respect to the sale of assets and/or businesses of NNSA.  On November 30, 2009, the French Court approved an order to extend the aforementioned suspension for a further period of three months and authorized the continuation of the business of NNSA during that period.

13.    On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "English Proceedings") under Chapter 15 of the Code.  On June 26, 2009, the U.S.

29

- 4 -

Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

14.    On July 14, 2009, Nortel Networks (CALA) Inc. (together with the Initial U.S. Debtors, the "U.S. Debtors") made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

15.    Further details regarding the background to these proceedings are set out in the affidavit of John Doolittle sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these proceedings and are therefore not repeated herein.

16.    The Applicants have previously obtained various relief related to the sale of certain other of their assets including:

   (a)    The sale of certain portions of Nortel's Layer 4-7 Application Delivery Business, which sale closed on April 1, 2009;

   (b)    The sale of NNL's real property known as the "Westwinds Facility" in Alberta, which sale closed on June 16, 2009;

   (c)    A sale process for the divestiture of NNL's interest in its joint venture with LG Electronics Inc., which process is still underway;

   (d)    Bidding procedures and a stalking horse agreement entered into with Nokia Siemens Networks B.V. for the sale of substantially all of Nortel's Code Division Multiple Access business and Long Term Evolution Access assets, which was subject to higher and better offers and which ultimately led to the approval of a sale agreement for the sale of such assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson"), which sale closed on November 13, 2009;

   (e)    Bidding procedures and a stalking horse agreement entered into with Avaya Inc. ("Avaya") for the sale of substantially all of the assets of Nortel's Enterprise Solutions business, which was subject to higher and better offers and subsequently led to the approval of an amended and restated sale agreement for the sale of that business to Avaya which sale closed on December 18, 2009;

3ʋ

- 5 -

(f)     A sales process and subsequent approval and vesting order for the sale of the assets of Nortel's Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Inc. which sale closed on December 4, 2009;

(g)     Bidding procedures and a stalking horse agreement entered into with Ciena Corporation ("Ciena") for the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit, which was subject to higher and better offers and subsequently led to the approval of an amended and restated sale agreement for the sale of that business to Ciena and anticipated to close in Q1 2010; and

(h)     Bidding procedures and an ultimate purchase agreement entered into with Ericsson for the sale of substantially all of Nortel's GSM/GSM-R business, which sale is anticipated to close in Q1 2010.

**THE TRANSACTION**

17.     Capitalized terms used in this section of my Affidavit not otherwise defined herein shall have the meanings given to them in the Stalking Horse Agreement.

*The CVAS Business*

18.     Nortel's CVAS Business provides telecom service providers with network solutions that help them improve operational efficiency, reduce costs, and generate new revenue through the deployment of multimedia applications and voice over internet protocol ("VoIP") solutions that enhance the communications experience for businesses and consumers.

19.     The CVAS Business specializes in deploying new VoIP networks for operators, in helping carriers transition their older voice infrastructure to state-of-the-art VoIP networks, and in delivering advanced multimedia offerings that unify and simplify communications for users.

20.     The CVAS Business unit sells VoIP platforms (such as softswitches and media gateways), TDM switching systems (for local, toll and long-distance deployments), and associated services (such as installation, technical support, repairs management). These and

- 6 -

other products from the CVAS portfolio are combined into solutions that address specific service provider requirements and opportunities, including: business voice and multimedia, consumer voice and multimedia, transit and multimedia interconnect, and class 5.

21.     Nortel's CVAS Business has a global presence -- with nearly 2,100 employees in North America, Europe, the Middle East, Africa, Caribbean, Latin America, Asia-Pacific -- and a worldwide customer base. Nortel's CVAS customers include many of the world's large carriers (including two-thirds of the top 20 service providers globally), leading regional operators, and major cable operators.

22.     Nortel's principal competitors include Alcatel-Lucent, Huawei Technologies, Nokia Siemens Networks, Ericsson, Sonus Networks, GENBAND, Broadsoft and MetaSwitch. Despite a challenging economic environment and increasing competition in the carrier VoIP market space, CVAS remains the number one carrier VoIP and softswitch market leader, a position Nortel has held for the past seven and half years according to industry analyst firm Dell'Oro Group.

*Previous Marketing Efforts*

23.     Nortel first began to explore a divestiture of the CVAS Business in April of 2009. With a strong customer base and industry-leading technology, the CVAS Business is considered a premium asset with a highly differentiated offering, making it attractive to potential purchasers.

24.     In connection with this initial effort, Nortel, in consultation with its financial advisors, approached approximately twenty five (25) parties likely to be interested and able to acquire the CVAS Business, including a mix of financial investors and strategic buyers. An information memorandum was provided to the eighteen (18) parties who had executed confidentiality agreements. Of those parties who subsequently submitted expressions of interest, Nortel conducted management presentations with the ten (10) entities it deemed able to consummate a transaction for the CVAS Business, and ultimately gave eight (8) companies access to an electronic data room containing confidential diligence materials regarding the CVAS Business.

25.     I am aware that the Thirty-Fourth Report will also include information regarding Nortel's sale efforts in this regard.

- 7 -

*The Stalking Horse Agreement*

26.    After extensive arms'-length, good faith negotiations among the Sellers, the EMEA Sellers and the Purchaser and their respective advisors, the Sellers and the EMEA Sellers have agreed, among other things, to convey the Assets to the Purchaser or certain other purchasers designated by the Purchaser all in accordance with the terms and conditions of the Purchase Agreements, subject to the approval of the transaction in a number of the jurisdictions in which the Sellers and EMEA Sellers are subject to insolvency proceedings.

27.    The Stalking Horse Agreement contemplates the sale of the Assets, subject to higher and/or better bids, on the following material terms:[1]

    (a)    *Purchase Price.* At the Closing, the Stalking Horse Purchaser will pay to the Sellers and the EMEA Sellers, through their Distribution Agent, a base purchase price of $282 million in cash, subject to balance sheet and other adjustments currently estimated at approximately $100 million.

    (b)    *Certain Fees.* As further described below, in certain circumstances the Sellers and the EMEA Sellers may be required to pay to the Stalking Horse Purchaser a Break-Up Fee, and/or an Expense Reimbursement.

    (c)    *Good Faith Deposit.* On the date following the entry of the U.S. Bidding Procedures Order, the Stalking Horse Purchaser will deliver to the Escrow Agent for the Sellers a good faith deposit of 5% of the base Purchase Price, an estimated $14,100,000 in cash. The good faith deposit will be applied to the balance of the Purchase Price to be paid by the Stalking Horse Purchaser at Closing.

    (d)    *Assets.* The Assets to be acquired by the Stalking Horse Purchaser include, among other things, certain (i) inventory and supplies, (ii) unbilled accounts receivable, (iii) equipment, (iv) contracts and certain bids made by the Sellers for a contract which could result in a contract after the Closing Date, (v) prepaid expenses, (vi) tangible embodiment of business information, (vii) intellectual property, (viii) rights under warranties, representations and guarantees by

---

[1]    The Applicants are not parties to the EMEA Agreement, and therefore this Motion does not discuss the terms and conditions of the EMEA Agreement.

33

- 8 -

suppliers, manufacturers and contractors and third parties related to the Assets, (ix) net insurance proceeds to be received in respect of equipment, and (x) tax records required by law to be transferred. The assets to be acquired by the Stalking Horse Purchaser exclude, among other things, certain cash and cash equivalents, accounts receivable (excluding receivables that are unbilled as of the Closing date), bank account balances and petty cash, and certain assets and rights (for example, the right to tax refunds, credits, or similar benefits, and rights under certain contracts (other than Assigned Contracts)) relating to the pre-closing period.

(e)     *Assigned Contracts.*   The Sellers agree to assign certain Seller Contracts, including customer contracts, to the Stalking Horse Purchaser, and to cooperate with the Stalking Horse Purchaser to assist in the transition of Bundled Contracts to the Stalking Horse Purchaser as they relate to the CVAS Business. The Sellers have agreed to pay the Cure Costs associated with the assignment of customer contracts.

(f)     *Assumed Liabilities.*   The liabilities to be assumed by the Stalking Horse Purchaser include, among others, (i) liabilities arising after the Closing Date to the extent related to the operation of the CVAS Business by the Stalking Horse Purchaser following the Closing, (ii) liabilities arising from the performance of Assigned Contracts after the Closing Date, (iii) certain liabilities relating to transferred intellectual property, (iv) certain tax liabilities, (v) certain warranty liabilities and (vi) certain liabilities related to employees and employee benefit plans and under employment laws.

(g)     *Sale Free and Clear.*   The Assets to be transferred by the Sellers will be transferred free and clear of all liens, claims and encumbrances, other than those expressly assumed by the Stalking Horse Purchaser or otherwise expressly permitted under the Stalking Horse Agreement.

(h)     *Avoidance Actions.*   The Sellers have covenanted not to commence avoidance actions under the United States Bankruptcy Code with respect to any assumed and assigned customer contracts.

34

- 9 -

(i)   *Ancillary Agreements.*  Pursuant to the Stalking Horse Agreement, at or prior to the Closing, certain Sellers, certain EMEA Sellers and the Stalking Horse Purchaser will enter into, among others, the following ancillary agreements:

   (i)   *Transition Services Agreement.*  At the Closing, NNL, NNC, NNI, NNUK, Nortel Networks (Ireland) Limited, certain of their affiliates and the Stalking Horse Purchaser will enter into one or more agreements under which NNL, NNC, NNI, NNUK, Nortel Networks (Ireland) Limited and their affiliates will agree to provide to the Stalking Horse Purchaser and its affiliates certain information technology, business transition and related services, commencing at the Closing and continuing for a period not to exceed eighteen (18) months.

   (ii)   *Intellectual Property License Agreement.*  At the Closing, NNL, NNI, the EMEA Sellers (the "Nortel Parties") and the Stalking Horse Purchaser will enter into an intellectual property license agreement (the "IPLA") pursuant to which (i) the Nortel Parties will grant to the Stalking Horse Purchaser a non-exclusive license to certain intellectual property necessary for the commercialization of the products and the provision of services within a defined field of use, and (ii) the Nortel Parties will receive a license back to all intellectual property included in the Assets as necessary for use in their other businesses or to comply with terms of other divestitures. The IPLA licenses will be perpetual.

   (iii)   *Trademark License Agreement.*  At the Closing, NNL and the Stalking Horse Purchaser will enter into a license agreement allowing the Stalking Horse Purchaser to use certain Nortel trademarks in connection with its sales of the Products for a limited period after the Closing.

   (iv)   *Loaned Employee Agreement.*  At the Closing, Nortel and the Stalking Horse Purchaser will enter into an agreement under which certain employees of Nortel and its affiliates will be seconded to the Stalking Horse Purchaser to perform services for the Stalking Horse Purchaser for a

90-day period beginning on the Closing Date and certain visa employees will be seconded to the Stalking Horse Purchaser for a period of up to twelve months beginning on the Closing Date. Nortel will continue to pay all employment costs in respect of the Loaned Employees that relate to the period of the Loaned Employee Agreement, and the Stalking Horse Purchaser will provide for the payment of, or if not paid pursuant to the pre-funding mechanism in the Loaned Employee Agreement, promptly reimburse Nortel for, all such employment costs.

(v)     *Real Estate Terms and Conditions.* At the Closing, the Sellers and the Stalking Horse Purchaser will finalize the general terms to which the parties agree, which will govern the applicable leases, subleases or license agreements in respect of certain real property which the Sellers will lease, sublease or license to the Stalking Horse Purchaser (or an affiliate) from and after Closing.

(j)     *Restrictions on Solicitation of Competing Bids.* As set forth in section 5.29 of the Stalking Horse Agreement and subject to the terms and limitations therein, the Stalking Horse Agreement prohibits the Sellers from soliciting competing transactions or seeking relief inconsistent with the Stalking Horse Agreement from the date of execution of the Stalking Horse Agreement until the entry of the Bidding Procedures Order, and from the date of the conclusion of the Auction until the Closing Date or termination of the Stalking Horse Agreement.

(k)     *Closing Conditions:* In addition to certain other customary closing conditions, including conditions relating to bankruptcy court approvals, the obligation of the Stalking Horse Purchaser to close the sale is subject to the satisfaction of the performance in all material respects of all material covenants, obligations and agreements required to be performed by the Sellers on or before the Closing.

(l)     *Ongoing Covenants and Restrictions:* In addition to certain other customary postclosing obligations such as information-sharing and redirection of customers and payments, the Sellers have agreed to cooperate with the Stalking Horse Purchaser for an agreed period after Closing in relation to arrangements regarding

- 11 -

(i) Bundled Contracts, (ii) Assets which were not transferred at Closing due to bankruptcy proceedings commenced in other jurisdictions following execution of the Stalking Horse Agreement and (iii) Contracts for which required consents were not obtained prior to Closing.

(m)    *Post-Closing Access to Books and Records.*  For five (5) years after the Closing, and subject to its right to destroy such document upon sixty (60) days notice to the Sellers, the Purchaser must preserve pre-closing records to the extent related to the CVAS Business. The Purchaser and the Seller must preserve tax records through the end of the applicable statute of limitations period.  Through such periods the Sellers and the Purchaser, as applicable, shall, and/or shall cause the person holding such records to provide to the party requesting the records or its representative reasonable access to such records during normal business hours.

*Employees*

28.    As part of the Stalking Horse Agreement, the Purchaser has agreed to make offers to at least 1,638 Nortel employees associated with the CVAS Business.  The Stalking Horse Agreement provides that, subject to the terms of the Stalking Horse Agreement, within thirty (30) days following the granting of the U.S. Sale Order and the Canadian Approval and Vesting Order, the Purchaser shall notify the Sellers of certain Identified Employees to whom the Purchaser or a Designated Purchaser intends to provide a written offer of employment or notice of continued employment.  Promptly following Purchaser's notification to Seller of Identified Employees, but in any event no later than the time required to provide the Offer Consideration Period described in the Stalking Horse Agreement, the Purchaser shall, or shall cause a Designated Purchaser to, extend Offers to the Identified Employees.

*Break Up Fee and Expense Reimbursement*

29.    The Purchaser and its advisors have expended, and expect to continue to expend, considerable time, energy, and resources pursuing the purchase of the Assets and have engaged in extended good faith negotiations.  The Purchase Agreements are the culmination of these efforts.

- 12 -

30.   In recognition of this expenditure of time, energy, and resources, the Sellers and the EMEA Sellers, in accordance with Section 9.2 of the Stalking Horse Agreement and Section 15.5 of the EMEA Agreement and upon the termination events described therein, have agreed to pay the Stalking Horse Purchaser an aggregate fee of five million dollars and 00/100 ($5,000,000), which is equal to approximately two and eight-tenths percent (2.8%) of the estimated aggregate Purchase Price, after accounting for balance sheet and other adjustments currently estimated at approximately $100 million (to the extent payable by the Sellers, the "Break-Up Fee").   In accordance with Section 9.2 of the Stalking Horse Agreement and Section 15.5 of the EMEA Agreement and upon the termination events described therein, the Sellers and the EMEA Sellers also have agreed to pay Purchaser's reasonable and documented fees, out-of-pocket costs and expenses (including fees and expenses of the Stalking Horse Purchaser's advisors and notification and filing fees) in connection with the preparation, execution and performance of the Stalking Horse Agreement and the EMEA Agreement, which shall not exceed five million dollars and 00/100 ($5,000,000), which is equal to approximately two and eight-tenths percent (2.8%) of the estimated aggregate Purchase Price after accounting for balance sheet and other adjustments currently estimated at approximately $100 million (to the extent payable by the Sellers, the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections").   Under the Stalking Horse Agreement and the EMEA Agreement, two-thirds of the aggregate Bid Protections will be payable by the Sellers, including the Debtors that are Sellers, and the remaining one-third will be payable by the EMEA Sellers.

31.   I believe, based on my discussions with the Monitor, that the Thirty-Fourth Report will be providing more detail as to the circumstances in which the Bid Protections are payable.

32.   The Sellers have further agreed that their obligation to pay the Break-Up Fee and Expense Reimbursement shall survive termination of the Purchase Agreements.

*Incentive Fee*

33.   One Equity Partners III, L.P. ("OEP") is the largest single equity investor in GENBAND, currently holding approximately 35% of GENBAND's common stock.   I believe that OEP's support of the proposed Sale, both as an equity holder and as a financial sponsor of the Sale is crucial to the Purchaser's ability to execute the Stalking Horse Agreement.   OEP has provided a financing commitment letter that provides for payment of the Purchase Price by OEP.

30

- 13 -

34.    I am also aware that OEP also has been an active participant in other Nortel divestitures. Over the entire course of these proceedings, OEP has conducted extensive diligence with respect to multiple potential transactions. Most recently and notably, OEP was an equity sponsor of MEN Acquisition LLC in its submission of a bid and its participation at the auction of the MEN business.

35.    OEP has informed the Sellers and the EMEA Sellers that it has incurred significant un-reimbursed costs in connection with its pursuit of these various other transactions, and that it requires compensation for these costs as a condition to its financial sponsorship of the Stalking Horse Agreement.

36.    The Sellers and EMEA Sellers have agreed, subject to obtaining the required court approvals, to pay to OEP an incentive fee in connection with the execution of the Stalking Horse Agreement, to induce OEP's continued participation in the auction process. The incentive fee agreed to by the parties consists of a payment of $3,600,000, funded as $1.2 million by each of: (i) NNI, (ii) NNC/NNL, and (iii) NNUK, on their own behalf and on behalf of their respective affiliates (NNC's obligation to pay $1.2 million is referred to herein as the "Incentive Fee").

37.    NNC, NNL, NNI and NNUK and the Joint Administrators have executed a letter agreement that provides that the $3.6 million in incentive fee payments, including the Incentive Fee, would be subject to further allocation amongst the estates if the Sale or Alternate Transaction is consummated (the "Incentive Fee Letter").

38.    I am aware that a copy of the Incentive Fee Letter will be attached as an appendix to the Thirty-Fourth Report.

*The Sale and Bid Process*

39.    In connection with having entered into the Purchase Agreements and subject to approvals by the U.S. Court and this Honourable Court, Nortel will conduct an auction process for the sale of the Assets to ensure that the Sellers receive the maximum value for the Assets and the Sellers and the Purchaser have agreed that the Stalking Horse Agreement is subject to higher or better offers. It is anticipated that if the U.S. Bidding Procedures Order and the Canadian Sales Process

39

- 14 -

Orders are granted, Nortel will conduct an expedited sale process and follow the Bidding Procedures (as defined below) with a view to the ultimate conduct of an auction.

40.    An agreed upon set of bidding procedures (the "Bidding Procedures") have been developed, which provide for a process through which an interested party may become a "Qualified Bidder". I am aware that the Thirty-Fourth Report will attach and outline the proposed sale process and the Bidding Procedures in more detail. I have reviewed the Bidding Procedures and believe them to be fair in the circumstances.

*Sealing*

41.    I am aware that the Monitor has or will be filing confidential appendices to the Thirty-Fourth Report which contain the disclosure schedules and exhibits to the Stalking Horse Agreement. The disclosure schedules and exhibits contain sensitive competitive and, in some instances, employee information.

42.    I believe sealing this confidential appendices are appropriate in the circumstances.

**CONCLUSION**

43.    I believe that the Stalking Horse Agreement is the product of a vigorous, comprehensive and fair process.  The proposed auction sale process for the CVAS Business, based on the Stalking Horse Agreement as a stalking horse bid, is the best way to preserve the business as a going concern and to maximize value and preserve jobs for the Applicants' employees.

44.    Based on the foregoing, I believe that the proposed transaction with the Purchaser represents the highest and best proposal available for the CVAS Business, subject to the receipt of a better bid through the auction process contemplated in this motion.

45.    The Stalking Horse Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Stalking Horse Agreement if certain milestones in the sale process are not timely met. For these reasons, the expeditious sale of the Assets is critical to the maximization of the value of the Applicants' assets and, in turn, to a recovery for the Applicants' estates.

40

- 15 -

46.    The agreement to pay the Incentive Fee to OEP is in recognition of OEP's good faith efforts to pursue the Sale and the value that it has provided to the Applicants through its participation in other transactions. OEP informed the Sellers that the provision of financing for GENBAND's entry into the Stalking Horse Agreement is dependent upon the payment of the Incentive Fee, which represents the fees and expenses OEP has incurred as an active participant in multiple Nortel sale processes, including the MEN auction.

47.    Without the Sellers' agreement to provide OEP with the Incentive Fee, the Stalking Horse Purchaser would not have undertaken efforts to research the value of the Assets or have entered into the Stalking Horse Agreement and will not continue to participate in the auction process, precluding the use of the Stalking Horse Agreement as the floor at a subsequent auction. Furthermore, time is of the essence in order to maximize the value that the Debtors can realize from the sale of the Assets, and the Stalking Horse Agreement represents the best opportunity to quickly realize value from the sale of the Assets.

SWORN BEFORE ME at the City of
Weston , in the State of
Massachusetts on this 23 day of
December, 2009.

_____
Commissioner for Taking Affidavits or
Notary Public



_____
George Riedel

MARK LOZIER
Notary Public
Commonwealth of Massachusetts
My Commission Expires
March 7, 2014

41

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**AFFIDAVIT OF GEORGE RIEDEL**
(sworn December 23, 2009)

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

# TAB 3

42

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 6TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JANUARY, 2010 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**ORDER**
(CVAS Business Bidding Procedures Order)

**THIS MOTION**, made by Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion dated ●, 2010 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of George Riedel sworn December 23, 2009 (the "Riedel Affidavit") and the Thirty-Fourth report of Ernst & Young Inc. dated ●, 2009 (the "Thirty-Fourth Report") in its capacity as monitor (the "Monitor") and on hearing submissions of counsel for the Applicants, the Monitor and those other parties present, no one appearing for any other

- 2 -

43

person on the service list, although served as appears from the Affidavit of Service of ● sworn ●, filed.

1.     **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Thirty-Fourth Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.     **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Riedel Affidavit.

3.     **THIS COURT ORDERS** that the bidding procedures (the "Bidding Procedures") described in the Riedel Affidavit, the Thirty-Fourth Report and attached as Schedule "A" hereto are hereby approved and, subject to approval of the Bidding Procedures in substantially the same form by the United States Bankruptcy Court for the District of Delaware in the Chapter 11 Proceedings of the Chapter 11 Debtors, the Applicants shall be authorized to conduct the sale process and auction (the "Stalking Horse Process") contemplated therein.

4.     **THIS COURT ORDERS** that the asset sale agreement dated as of December 22, 2009 (the "Stalking Horse APA") among GENBAND Inc. as buyer, and NNC, NNL and Nortel Networks Inc., and the other parties identified as sellers therein, as vendors, in the form attached as Appendix "●" to the Thirty-Fourth Report be and is hereby approved and accepted for the purposes of conducting the Stalking Horse Process including, without limitation, the Applicants' obligation to pay the Break-Up Fee and the Expense Reimbursement.

5.     **THIS COURT ORDERS** the Applicant, NNC, is authorized and shall to pay to One Equity Partners III, L.P. an Incentive Fee of $1.2 million dollars ($1,200,000), which shall be payable within five (5) business days of following the entry of this Order and an order of the U.S. Court approving the Incentive Fee regardless of whether the Stalking Horse Agreement and the Sale are ultimately approved as a Successful Bid (as defined in the Bidding Procedures) by this Court or any other court.

6.     **THIS COURT ORDERS** that the side letter dated as of ●, 2009 substantially in the form attached as Appendix ● to the Thirty-Fourth Report be and is hereby approved.

- 3 -

44

7.     **THIS COURT ORDERS** that in connection with the Stalking Horse APA and the Stalking Horse Process and pursuant to clause 7(3)(c) of the Canada *Personal Information Protection and Electronic Documents Act*, the Applicants shall disclose personal information of identifiable individuals to prospective purchasers or bidders for the Business and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Business (each, a "Sale"). Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall (i) return all such information to the Applicants; (ii) destroy all such information; or (iii) in the case of such information that is electronically stored, destroy all such information to the extent it is reasonably practical to do so. The purchaser of the Business shall be entitled to continue to use the personal information provided to it, and related to the Business, in a manner which is in all material respects identical to the prior use of such information by the Applicants, and shall (i) return all other personal information to the Applicants; (ii) ensure that all other personal information is destroyed; or (iii) in the case of all other personal information that is electronically stored, destroy all such other personal information to the extent it is reasonably practical to do so.

8.     **THIS COURT ORDERS** that confidential appendix "●" to the Thirty-Fourth Report be and is hereby sealed pending further order of the Court.

9.     **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

45

- 4 -

10.    **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

46

**SCHEDULE "A"**
(Bidding Procedures)

47

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Court File No: 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ORDER**
**(CVAS Business Bidding Procedures Order)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

DOCSTOR: 1721583\7

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS
CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

Proceeding commenced at Toronto

**MOTION RECORD**
**CVAS Business Bidding Procedures**
**(returnable January 6, 2010)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants