1      IN THE UNITED STATES BANKRUPTCY COURT
2           FOR THE DISTRICT OF DELAWARE

3  IN RE:                            :
                                     : Chapter 11
4  NORTEL NETWORKS, INC., *et al.*,  :
                                     : Case No. 09-10138-KG
5          Debtors.                  :
                                     :
6                                    :
   . . . . . . . . . . . . . . . .
7
                    Wilmington, Delaware
8                   December 17, 2009
                        10:02 a.m.
9
                    TRANSCRIPT OF HEARING
10           BEFORE THE HONORABLE KEVIN GROSS
              UNITED STATES BANKRUPTCY JUDGE
11
   APPEARANCES:
12
   For the Debtors:          Derek C. Abbott, Esquire
13                           Morris, Nichols, Arsht & Tunnell, LLP

14                           James Bromley, Esquire
                             Cleary, Gottlieb, Steen & Hamilton
15
   For the Joint             Maris Finnegan, Esquire
16 Administrators and        Young, Conaway, Stargatt & Taylor
   Foreign Representatives
17 for Nortel Networks UK    Kevin Lloyd, Esquire
   Ltd.:                     Thomas Walsh, Esquire
18                           Ben Ward, Esquire
                             John Whiteoak, Esquire
19                           Herbert Smith

20 For the UK                Edwin Harron, Esquire
   Administrators:           Young, Conaway, Stargatt & Taylor
21
   For Verizon               Darryl Laddin, Esquire
22 Communications, Inc.:     Arnall, Golden & Gregory, LLP

23 For Silver Lake           Anneliese H. Pak, Esquire
   Capital, *et al.*:        Ropes & Gray, LLP
24
   For the Creditors'        David Botter, Esquire
25 Committee:                Akin, Gump, Strauss, Hauer & Feld

```
 1   Court Recorder:         Jennifer Pasierb

 2   Transcription Service:  Perfect Pages Transcription, Inc.
                             18 Tuckerton Road
 3                           Shamong, NJ 08088
                             www.perfecttranscripts.com
 4                           (609) 654-8880

 5   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1        (Call to order of the Court.)
2            THE COURT:  Good morning, counsel.
3            MR. ABBOTT:  Good morning, Your Honor.  Derek Abbott
4    here from Morris, Nichols.  Your Honor, I just became aware
5    that Mr. Botter is having some trouble with Court Call letting
6    him in.  I think he's going to try again in a second.
7            THE COURT:  All right.
8            MR. ABBOTT:  So we may want to -- I don't know if
9    Mr. Samis is on the phone from Richards yet or not but I just
10   wanted to make sure the Court was aware of that.
11           THE COURT:  I do not see Mr. Samis on my list.  So I
12   don't know that he's on the phone and we should wait for Mr.
13   Botter.
14           OPERATOR:  Your Honor, I do not have Mr. Samis.
15           THE COURT:  No.  Thank you.
16           OPERATOR:  Or Mr. Botter.
17           MR. ABBOTT:  Is there a way to get word to Court
18   Call that he should be permitted to join?  I think the problem
19   seems to be --
20           THE COURT:  Oh, permission.  Is this the Court Call
21   representative?
22           OPERATOR:  Yes, Your Honor.
23           THE COURT:  It would be acceptable to add Mr. Botter
24   and Mr. Samis if either or both of them are trying to get on.
25           OPERATOR:  Okay.  I will let them know.  One moment.

4

1  Thank you.
2      THE COURT:  Thank you.
3      MR. ABBOTT:  Thank you, Your Honor.  Sorry for the
4  confusion.
5      THE COURT:  That's quite all right.  How is
6  everyone?
7      MR. BROMLEY:  Very good, Your Honor.  James Bromley,
8  from Cleary, Gottlieb.
9      THE COURT:  I'd know that voice anywhere.  You know,
10 I was looking today and I went to go into the Docket and I see
11 that this is an '09 case and I thought, my goodness, we've
12 gotten an awful lot done in one -- in less than a year.
13     MR. BROMLEY:  We have, Your Honor.  Although, I have
14 to say this is -- I received a notice from the History Book of
15 the Month Club terminating my account because they received a
16 bar date in this case and they thought it was my personal
17 declaration of bankruptcy.
18     THE COURT:  That's funny.
19     MR. BROMLEY:  So that's one thing I need to correct
20 in the new year.
21     THE COURT:  Yes.
22     MR. ABBOTT:  Jim, if you need counsel I'll be happy
23 to help.
24     THE COURT:  There you go.
25     MR. BROMLEY:  I really appreciate that.  I think I

```
 1  do need some help.
 2          THE COURT:  You probably haven't had much time to
 3  read, Mr. Bromley.
 4          MR. BROMLEY:  That's true but --
 5          THE COURT:  Well, I'm quite a history buff myself.
 6  It sounds like an interesting membership.
 7          MR. BROMLEY:  It is, but now I'm dealing with their
 8  machinery as to the customer service center.  I think it might
 9  be a Nortel Enterprise driven group.
10          THE COURT:  How is Ms. Kim by the way?
11          MR. BROMLEY:  She's excellent.  The baby is
12  wonderful.
13          THE COURT:  Good.
14     (Pause in proceedings.)
15          THE COURT:  Mr. Botter, are you now on the phone?
16          MR. ABBOTT:  Your Honor, he's not.  I just got
17  another e-mail that he's on hold.  I'm going to instruct him
18  to dial in again.
19          THE COURT:  Oh, wonderful.
20     (Pause in proceedings.)
21          MR. ABBOTT:  I'm also going to ask him to send me an
22  e-mail where I can just conference him in from my phone, Your
23  Honor, if that's acceptable.
24          THE COURT:  That would also be fine.  I don't mind
25  waiting, but that would be fine too.
```

6

1   OPERATOR: I apologize for the interruption. They
2   just now connected David Botter.
3   THE COURT: Thank you so much.
4   MR. BOTTER: Judge, my apologies. I was lost in the
5   Court Call world.
6   THE COURT: I quite understand, Mr. Botter. No
7   apology necessary.
8   MR. BOTTER: Thank you, Your Honor.
9   THE COURT: I guess now with the addition of Mr.
10  Botter, we probably have everyone on who would like to be on.
11  MR. HARRON: Good morning, Your Honor. This is Ed
12  Harron for the U.K. Administrators. I just wanted to let you
13  know I'm on the line. And several of my co-counsel from the
14  Herbert Smith firm in London also have dialed in.
15  THE COURT: Excellent. Thank you. All right. Mr.
16  Abbott or Mr. Bromley, if you would like to proceed.
17  MR. BROMLEY: Thank you, Your Honor. It's James
18  Bromley from Cleary, Gottlieb. Once again, we thank you very
19  much for accommodating us on short notice. The -- as you
20  recall two days ago, we were before you with respect to a form
21  of Escrow Agreement and an Order approving that form of Escrow
22  Agreement, which is necessary for the closing of the
23  Enterprise transaction, which is scheduled to take place
24  tomorrow. We had I think substantial agreement on the form of
25  the Escrow Agreement except for one paragraph, which was

1  paragraph 29.  That had been added to the Escrow Agreement and
2  it related to a very specific issue, which was there is a U.S.
3  subsidiary as you know, Nortel Government Solutions that is
4  the -- a direct affiliate and subsidiary of Nortel Networks,
5  Inc., the main operating Debtor in the United States.  And
6  there obviously is the history of working hard to keep NGS out
7  of Chapter 11, so that it could be transferred through a stock
8  sale.  And we have accomplished quite a bit on that front in
9  terms of reaching an agreement with our Federal Government and
10 the Internal Revenue Service to make sure that that could
11 occur.  And so we are poised to have the closing tomorrow and
12 to, indeed, transfer the stock of NGS.
13     The Assets Share and Sale Agreement is the document that
14 governs the U.S. and Canadian elements of the Enterprise
15 transaction and in it, it provides for the transfer of NGS
16 with a certain minimum amount of working capital, $16.1
17 million.  The working capital calculations relating to NGS and
18 based on the current cash at NGS and certain other near cash
19 equivalents, yields an excess over 16.1 million of
20 approximately $55 million.  And so it was the hope in adding
21 paragraph 29 in, that we would be able to address a fairly, we
22 thought ministerial issue, which is to avoid the need to take
23 a dividend out of that entity prior to the closing and to
24 simply have an adjustment through the purchase price.
25     The conversations that took place on the phone call with

1  the Court on Tuesday made it clear that the Joint
2  Administrators disagreed with the view of the North American
3  estates that the funds could be adjusted through the Escrow
4  Agreement.  And we attempted to have a conversation about that
5  yesterday.  I think it's fair to say that it did not go well.
6  The conversation took place yesterday at 10:00 a.m., and we
7  were not actually able to engage in a dialogue on that point.
8  We were simply told that the Joint Administrators position and
9  the instructions of their counsel were simply to say no.  We
10  had hoped to engage in a further conversation during the
11  course of the day yesterday, and we were not able to do that.
12  We did receive a confirming e-mail at the end of the day,
13  London time.  When I say end of -- the end of the U.S.
14  business but certainly, I think just prior to midnight London
15  time confirming that the view of the Joint Administrators has
16  not changed and they answered with that they would not agree
17  to paragraph 29.
18       I think it's fair to say from the U.S. estates
19  perspective, we're very disappointed in that position.  We're
20  even more disappointed in the fact that we were not given the
21  opportunity, during the course of the day yesterday, to
22  actually have a conversation on this point.  We were given a
23  flat statement of instruction at 10:00 a.m., and that was
24  followed up by an e-mail, like I said, near midnight London
25  time reiterating the same point.  So we did not have the

opportunity during the course of the day yesterday to talk about this.  We were simply told the position.

We certainly hope that this is not a harbinger of future issues that we're going to have to deal with, but we will take it on face value.  What the U.S. estate is willing to do is to not push for paragraph 29 to be inserted into the Escrow Agreement and there is another provision at the end of paragraph 5B, with reference to paragraph 29, so the draft that you had seen, Your Honor, we would remove both of those references.  We will say nothing about the working capital adjustment and the contractual rights of the parties will be what they will be.  We had hoped to use the Escrow Agreement to accomplish what we thought was a clear and unequivocal right of the U.S. estate, if -- and that has failed.  So we are, as I said, disappointed in that, but recognizing that there is a $900 million transaction that is scheduled to close tomorrow, U.S. estates are not going to push for the inclusion of that provision and put at jeopardy that closing.  Though, I do, again, say that we reserve our rights.

There is one other addition that we have put into the Escrow Agreement, which reflects an Order that Your Honor entered yesterday.  We did reach an agreement with the Pension Benefit Guaranty Corporation.  That was memorialized in a stipulation that Your Honor entered yesterday.

THE COURT:  Yes.

1  MR. BROMLEY: It is a provision -- the stipulation
2  provides for the payment to the PBGC at the amount of 500,000
3  U.S. dollars, and this releases all claims and arguments that
4  the PBGC might have to seek recovery out of the non-U.S.
5  entities and the assets thereof that are part of this
6  transaction.
7  We had a similar settlement that was approved coincident
8  with the closing on the CDMA deal. In that situation the
9  amount of settlement was $250,000. So the Escrow Agreement
10 here has been amended to add in that that $500,000 will be
11 paid directly to the PBGC out of the purchase price. That is
12 the same amendment that was made to the CDMA Escrow Agreement,
13 to allow the prior $250,000 to be paid.
14  THE COURT: Yes.
15  MR. BROMLEY: So on that basis, Your Honor, the two
16 changes to the Escrow Agreement as you had it before you on
17 Tuesday are, one, we've removed paragraph 29 and the reference
18 in paragraph 5B. We've added into paragraph 5A the reference
19 to the $500,000. So with that, we believe that there's no
20 issue with respect to the form of the Agreement and on that
21 basis would appreciate the Court entering an Order we will
22 submit later today that attaches the form of the Escrow
23 Agreement amended as I've just described it.
24  THE COURT: All right, Mr. Bromley, thank you. Does
25 anyone else wish to be heard?

**1**       MR. BOTTER: Your Honor, it's David Botter of Akin,
**2** Gump on behalf of the Creditors' Committee. Your Honor, we
**3** are equally if not more so disappointed in what occurred
**4** yesterday or really for lack of a better term, what didn't
**5** occur yesterday. It is fairly clear -- not fairly clear, it
**6** is crystal clear from the document that the U.S. estates could
**7** have given into this cash out but instead of just doing that,
**8** and the U.S. estates sought an administratively more
**9** convenient route through the inclusion of paragraph 29 in the
**10** Escrow Agreement, rather than work with us and/or even engage
**11** in a conversation, the U.K. Administrators just said,
**12** absolutely no. And I too am hopeful that this is not the
**13** foreshadowing of events to come, but, you know, the failure to
**14** -- the failure to absolutely recognize these rights that were
**15** contained in the document to me almost borders on bad faith
**16** and I hope that things will change dramatically in the new
**17** year, Your Honor.
**18**       THE COURT: Thank you, Mr. Botter.
**19**       MR. HARRON: Your Honor, this is Ed Harron, may I be
**20** heard?
**21**       THE COURT: Of course, Mr. Harron.
**22**       MR. HARRON: Your Honor, first I'd like to thank Mr.
**23** Bromley on behalf of the U.K. Administrators for agreeing to
**24** make the changes to the Order. And subject to seeing a
**25** Revised Order, it sounds like our issues are resolved for

1  today.  I don't wish to burden the Court with a discussion of
2  the parties' conduct leading up to today's hearing.  I would
3  just like to say for the record, that the U.K. Administrators
4  disagree with Mr. Bromley and with Mr. Botter in their
5  characterization of our efforts to advance this case, and to
6  resolve the Escrow Agreement.  My clients have acted
7  constructively throughout this process and are committed to
8  doing so, until we reach conclusion, so I just wanted to make
9  that for the record, Your Honor.
10          THE COURT:  I certainly understand and I think under
11 the circumstances, it's best for me not to say anything other
12 than that hopefully the parties will work together to resolve
13 issues and I'm not saying that they did or didn't on this
14 matter but that in the next year, that things will really be
15 subject to consensus and discussion.
16          MR. HARRON:  That's our goal as well, Your Honor.
17          THE COURT:  Very well.
18          UNIDENTIFIED SPEAKER:  Thank you, Your Honor.  We
19 appreciate that.
20          THE COURT:  Yes.
21          MR. BROMLEY:  Thank you very much, Your Honor.
22          THE COURT:  I am certainly going to approve the
23 Motion and the Escrow Agreement.  It's clearly appropriate and
24 in the best interest of the Debtors' estate and will make it
25 possible to close this very important transaction tomorrow.

1  MR. ABBOTT:  Thank you, Your Honor.
2  THE COURT:  Yes.
3  MR. BROMLEY:  Thank you, Your Honor.  We have one
4 other matter --
5  THE COURT:  Yes.
6  MR. BROMLEY:  -- which I have to get on bended knee
7 and thank you once again for accommodating us.  Two days ago,
8 we moved on very shortened notice to memorialize an
9 arrangement between the Debtors, ATT and Avia, to facilitate
10 the transfer of a major customer contract.  At that time, Your
11 Honor, we were also in intensive discussions with Verizon,
12 along very similar lines, three-party arrangements to make
13 sure that the customer contracts that relate to the Verizon
14 business that has been conducted with the Enterprise business
15 could be transferred to Avia in a consensual manner.
16      And as you'll recall, Your Honor, at the time that the
17 Enterprise sale was approved, we did have an argument in front
18 of you relating to certain rights and issues concerning the
19 Verizon contract.
20  THE COURT:  Yes.  I recall it well.
21  MR. BROMLEY:  And I'm happy to report, Your Honor,
22 that subsequent to that, despite the concern at the time that
23 we thought we may have to litigate an issue before you, that
24 the parties, in particular Verizon and Avia, have worked very
25 constructively together to come to an agreement and that

1  agreement has been reached in just the last couple of days.
2  That agreement is as well acceptable to the U.S. estates, and
3  on that basis, on a very expedited basis, we've asked for
4  authorization to assume and assign one or more contracts with
5  Verizon to Avia.  That agreement as I said, Your Honor, only
6  came truly together last night.  We have provided notice to
7  the Committee and to Verizon and Avia.  We have just prior to
8  this phone call or to this hearing, Your Honor, been on the
9  phone with both counsel for Verizon and Avia and have reached
10 agreement on a couple of minor changes to the Form of the
11 Order that we believe are appropriate and really memorializing
12 the fact that there's a separate Assumption and Assignment
13 Agreement and the Order is not intended to trump that.
14      So on that basis, Your Honor, we do recognize we're
15 asking for extraordinarily shortened notice and consideration,
16 but the parties that are interested in this are all on the
17 phone and aware of the arrangements.  And as you do know, Your
18 Honor, the Verizon relationship has been an important and
19 historic one particularly in the Enterprise business, so we're
20 very happy that there's a consensual arrangement.
21 We do, however, need an Order under 365 to make sure that what
22 we do tomorrow at the closing has been properly authorized.
23           THE COURT:  I certainly understand.  I understand
24 the need for the expedition, but let me first make certain
25 that no one objects to it, to our proceeding on a shortened

1  notice.

2  MR. BOTTER:  No objection from the Creditors'
3  Committee, Your Honor.

4  THE COURT:  And how -- Mr. Laddin, are you on the
5  telephone?

6  MR. LADDIN:  Yes.  Good morning, Your Honor.  Thank
7  you for allowing me to appear on shortened notice.  We have no
8  objection and, in fact, the parties that Mr. Bromley indicated
9  have been working hard on the Form of an Assumption and
10 Assignment Agreement that we expect to execute this afternoon,
11 and are very grateful to the Court hearing us on shortened
12 notice.

13 THE COURT:  Well, it's certainly a pleasure and I
14 recognize, especially in regard to a transaction, that very
15 often things occur at the last moment and I'm pleased that I
16 was available and I'm prepared to consider the matter on
17 shortened notice.  And I'm also prepared to find that clearly
18 this is appropriate relief and in the best interest of the
19 Debtors' estates, and I'm pleased that the parties were able
20 to resolve their -- any issues between them.  I certainly -- I
21 will also say, by the way, that there was extensive argument
22 and I believe even testimony at a prior hearing, and certainly
23 that is support for what we're doing now.  So with that I will
24 grant the Motion.

25 MR. BROMLEY:  Thank you very much, Your Honor.  We

1  very much appreciate it.
2          THE COURT:  And I assume that I've got the -- do I
3  have the final version of the Order, Mr. Bromley?
4          MR. BROMLEY:  No, you do not, Your Honor.  We have
5  agreed to add a couple of sentences just prior to getting on
6  the phone.  So what I would proposed to do is we will
7  circulate a black line to the parties on the phone and then
8  submit the agreed Form of Order this afternoon.
9          THE COURT:  That would be fine and as well I guess
10 the Motion for the -- I'm sorry, the Order on the Escrow
11 Agreement.
12         MR. BROMLEY:  Exactly, Your Honor.  We will do both
13 at the same time.
14         THE COURT:  Excellent.
15         MR. HARRON:  Mr. Bromley, if you could copy me on
16 the Revised Order, I'd appreciate it.  It was Ed Harron.
17 Thank you.
18         THE COURT:  That was Mr. Harron.
19         MR. BROMLEY:  Mr. Harron, do you want the Verizon
20 Order as well or simply the --
21         MR. HARRON:  I'd like to see both of the Orders when
22 you circulate them and you just add me to the e-mail
23 circulation.
24         MR. BROMLEY:  We will do that.
25         MR. HARRON:  Thank you.

1    THE COURT: All right, counsel, is there anything
2 else?
3    MR. ABBOTT: No, Your Honor. As soon as we've got
4 consents, we'll get those over to you as quickly as we can.
5    THE COURT: That's fine. I'm here at least until
6 6:00 tonight, so you have time Mr. Abbott without breaking
7 your neck.
8    MR. ABBOTT: Your Honor, happily, Mr. Remming will
9 be working hard to make sure all this happens without any
10 injuries to anybody in the office.
11    THE COURT: All right. That sounds good. It's in
12 good hands with Mr. Remming that's for sure. Counsel, I
13 appreciate your being able to resolve matters and I wish
14 everyone a very, very happy holiday and a healthy new year.
15 And we will stand in recess.
16    UNIDENTIFIED SPEAKER: And to you as well, Judge.
17    THE COURT: Thank you. And good day to all of you.
18    UNIDENTIFIED SPEAKER: Thank you, Your Honor. Bye-
19 bye.
20    (Court adjourned at 10:23 a.m.)

18

## CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*/s/April J. Foga*                              December 27, 2009
April J. Foga, CET, CCR, CRCR