## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
| | :
|:--|:--|
| *In re* | : |
| | : |
| Nortel Networks Inc., *et al.,* [1] | : |
| | : |
| Debtors. | : |
| | : |
| | : |

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. 2193**

---------------------------------------------------------X

### ORDER (A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING PAYMENT OF AN INCENTIVE FEE, (D) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (E) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (F) SETTING A DATE FOR THE SALE HEARING

Upon the motion dated December 23, 2009 [D.I. 2193] (the "Motion"),[2] of Nortel

Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors in possession in the

above-captioned cases (the "Debtors"), for entry of orders, under Bankruptcy Code sections 105,

107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006, 9014 and 9018 and Local Rules

6004-1 and 9018-1 (i)(a) authorizing the Debtors' entry into that certain asset sale agreement

dated as of December 22, 2009 among NNI, Nortel Networks Limited ("NNL"), Nortel

Networks Corporation ("NNC") and certain other entities identified therein as sellers (together,

the "Sellers") and GENBAND, Inc. as purchaser ("GENBAND" or the "Stalking Horse

Purchaser") for the sale of certain assets of the Sellers' Carrier Voice Over IP and Application

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286) and Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Solutions business (the "CVAS Business") as described therein (the "Purchased Assets") as a "stalking-horse" sale agreement (as appended hereto as Exhibit A, the "Stalking Horse Agreement"), (b) authorizing and approving the bidding procedures (appended hereto as Exhibit 1, the "Bidding Procedures") and the Bid Protections (as defined below), (c) approving payment of an Incentive Fee (as defined in the Motion), including granting administrative expense status to the Incentive Fee and Bid Protections payable by the Debtors to the Stalking Horse Purchaser, (d) approving the form and manner of sale notice and publication notice (the "Notice Procedures") and the procedures (the "Assumption and Assignment Procedures") as set forth below for the assumption and assignment of the Assumed and Assigned Contracts (as defined below, and together with the Purchased Assets and contracts as described in the Stalking Horse Agreement, the "Assets"), (e) authorizing the Debtors to file certain documents under seal and (f) setting the time, date and place for a hearing (the "Sale Hearing") to consider the sale of the Assets and the assumption and assignment of the Assumed and Assigned Contracts (the "Sale"); (ii) authorizing and approving (a) the sale of the Purchased Assets, free and clear of all liens, claims, and encumbrances, pursuant to section 363 of the Bankruptcy Code, except as set forth in the Stalking Horse Agreement and (b) the assumption and assignment of the Assumed and Assigned Contracts pursuant to section 365 of the Bankruptcy Code; and (iii) granting them such other and further relief as the Court deems just and proper; and the Court having reviewed the Motion; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Stalking Horse Agreement (as defined herein).

2

sufficient cause appearing therefore including for the reasons stated on the record at the Bidding

Procedures Hearing, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.    The court has jurisdiction to hear and determine the Motion and to grant the relief

requested in the Motion pursuant to 28 U.S.C. § 157 and 1334.

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §

1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.    The statutory and legal predicates for the relief requested in the Motion are

Bankruptcy Code sections 105, 107(b)(1), 363 and 365, Bankruptcy Rules 2002, 6004, 6006,

9014 and 9018, and Local Rules 6004-1 and 9018-1.

D.    Good and sufficient notice of the relief granted by this Order has been given and

no further notice is required.  A reasonable opportunity to object or be heard regarding the relief

granted by this Order (including, without limitation, with respect to the proposed Bidding

Procedures, Incentive Fee and Bid Protections) has been afforded to those parties entitled to

notice pursuant to Local Rule 2002-1(b).

E.    The Debtors' proposed sale notice, substantially in the form attached to the

Motion as Exhibit E (the "Sale Notice") and the Debtors' proposed publication notice,

substantially in the form attached to the Motion as Exhibit F (the "Publication Notice"), are each

appropriate and reasonably calculated to provide all interested parties with timely and proper

notice of the Bidding Procedures, the Auction (if necessary) and the Sale Hearing, and no other

or further notice is required.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  See. Fed. R. Bankr. P. 7052.

F.      The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u>, are fair, reasonable, and appropriate and are designed to maximize recovery with respect to the sale of the Assets.

G.      The Debtors have demonstrated compelling and sound business justifications for authorizing the sale of the Assets, entry into the Stalking Horse Agreement and the payment of the Incentive Fee and Bid Protections (as defined below) under the circumstances, timing, and procedures set forth herein, in the Motion and in the Stalking Horse Agreement.

H.      Entry into the Stalking Horse Agreement with the Stalking Horse Purchaser as a "stalking-horse" sale agreement is in the best interest of the Debtors and the Debtors' estates and creditors.  The Stalking Horse Agreement will enable the Debtors to secure an adequate floor for the Auction and will provide a clear benefit to the Debtors' estates.

I.      The Break-Up Fee and Expense Reimbursement (each as defined below, and together the "<u>Bid Protections</u>") are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

J.      The Incentive Fee is fair and reasonable and provides a benefit to the Debtors' estates and creditors, and NNI's entry into the Incentive Fee Letter is in its best interest and the best interest of its estate and creditors.

K.      The Debtors' payment of the Bid Protections under the conditions set forth in section 9.2 of the Stalking Horse Agreement, the Motion and this Order, and the payment of the Incentive Fee each are (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of section 503(b) of the Bankruptcy Code, (b) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (c) reasonable and appropriate, and (d) necessary to ensure that the Stalking Horse Purchaser will continue to pursue the proposed Stalking Horse Agreement to undertake the sale of the Assets.  Notwithstanding anything to the

4

contrary in this or any other order of this Court, the Bid Protections and Incentive Fee shall constitute administrative expenses with priority pursuant to Bankruptcy Code sections 503(b).

L.      The filing of certain documents under seal, including the Schedules, is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein.

M.      The entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and it is therefore

### ORDERED, ADJUDGED AND DECREED THAT:

1.      Those portions of the Motion seeking approval of the Debtors' entry into the Stalking Horse Agreement, the Bidding Procedures, the Bid Protections, the Incentive Fee, the Notice Procedures, the Assumption and Assignment Procedures, setting the time, date and place of the Sale Hearing, setting the deadline by which to object to the relief sought in the Motion and authorizing the Debtors to file certain documents under seal, including the Schedules, are GRANTED and any objections thereto are OVERRULED except as set forth on the record or herein.

2.      Except as expressly provided herein, nothing herein shall be construed as a determination of the rights of any party in interest in these chapter 11 cases.

### The Bidding Procedures

3.      The Bidding Procedures attached hereto as <u>Exhibit 1</u> are hereby APPROVED. Subject to the approval of the Bidding Procedures by the Ontario Superior Court of Justice in the Canadian Proceedings regarding the Canadian Debtors, the Debtors are hereby authorized to conduct a sale by auction of the Assets pursuant to the Bidding Procedures and the terms of this Order.

4.      The Stalking Horse Purchaser shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes.

5.      The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets and the Auction.

### The Assumption and Assignment Procedures

6.      The Assumption and Assignment Procedures as set forth in the Motion are hereby authorized, approved and made part of this Order as if fully set forth herein.

7.      The Court recognizes that the list of Customer Contracts (as defined in the Motion) and affidavits of service that identify the Debtors' customers constitute confidential commercial information, and therefore authorizes that any such lists and affidavits to be filed in connection with this Motion and the procedures approved herein may be filed under seal.

8.      The Debtors shall provide unredacted lists of Customer Contracts to be assumed and assigned and affidavits of service identifying the Debtors' customers to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) the title of the list of Customer Contracts and affidavits of service that identify the Debtors' customers and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

9.      Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the Debtors to file an omnibus motion incorporating more than one hundred (100) executory contracts to be assumed and assigned pursuant to section 365 of the Bankruptcy Code.

### The Stalking Horse Agreement

10.     Subject to the Bidding Procedures and approval of the sale at the Sale Hearing, the Debtors' entry into the Stalking Horse Agreement is hereby approved.

6

## The Break-Up Fee and Expense Reimbursement

11.     To the extent due under section 9.2 of the Stalking Horse Agreement, the Sellers (including the Debtors) are authorized to pay to the Stalking Horse Purchaser:  (i) a fee of two-thirds of five million dollars and 00/100 ($3,333,333.33)(the "Break-Up Fee") and (ii) an amount in cash equal to the total amount of all reasonable and documented fees, costs and expenses incurred by the Stalking Horse Purchaser in connection with the preparation, performance and execution of the Stalking Horse Agreement and the EMEA Agreement and the transactions contemplated thereby,[4] including all filing and notification fees, and all fees and expenses of the Stalking Horse Purchaser's representatives in an amount not to exceed two-thirds of five million dollars and 00/100 ($3,333,333.33)(the "Expense Reimbursement," and together with the Break-Up Fee, the "Bid Protections"), which shall be payable as provided for pursuant to the terms of the Stalking Horse Agreement, regardless of whether the Stalking Horse Agreement and the Sale are ultimately approved by this Court or any other court.

12.     The Sellers' obligation to pay the Break-Up Fee and Expense Reimbursement pursuant to section 9.2 of the Stalking Horse Agreement shall survive termination of the Stalking Horse Agreement, shall constitute an administrative expense claim under section 503(b) of the Bankruptcy Code to the extent payable by the Debtors, and shall be payable under the terms and conditions of the Stalking Horse Agreement and this Order, notwithstanding section 507(a) of the Bankruptcy Code.

13.     Other than the Purchaser's ability to seek equitable relief, the Break-Up Fee and/or the Expense Reimbursement, if payable, will be the sole and exclusive remedy of the Stalking Horse Purchaser for the Sellers' failure to consummate the transaction or breach the

---

[4]     For the avoidance of doubt, the standard fee and expense structures of Latham and Watkins LLP shall be deemed reasonable.

Stalking Horse Agreement prior to Closing.  The Break-Up Fee and/or the Expense

Reimbursement will not be payable and will not be the sole and exclusive remedy of the Stalking

Horse Purchaser for the Sellers' post-Closing breach.

14.     In no event shall the Sellers be responsible or liable for any losses or liabilities

under the Stalking Horse Agreement that are consequential, in the nature of lost profits,

diminution in the value of property, special or punitive, or otherwise not actual damages.

### Incentive Fee

15.     NNI's entry into that certain Incentive Fee Letter by and between NNC, NNL,

NNI and NNUK dated as of January 8, 2010 (attached hereto as <u>Exhibit 2</u>), is hereby approved

and NNI is authorized to perform all of its obligations thereunder.

16.     NNI is authorized to pay to One Equity Partners III, L.P. an Incentive Fee of 1.2

million dollars and 00/100 ($1,200,000), which shall be payable within five (5) business days

following completion of the Auction, regardless of the outcome of the Auction and whether the

Stalking Horse Agreement and the Sale are ultimately approved as a Successful Bid by this

Court or any other court, so long as GENBAND participates in the Auction and the Financing

Commitment remains in full force and effect.  In the event that (i) the Auction is cancelled

because no Qualified Bids other than the Purchase Agreements received from the Purchaser are

received or (ii) the Auction is terminated prior to the selection of a Successful Bid or (iii) the

Purchase Agreements are terminated by the Sellers or the EMEA Sellers prior to the Auction for

any reason other than as a result of a breach by GENBAND under the Purchase Agreements, the

Incentive Fee shall be payable within five (5) business days following the filing of the notice of

the cancellation of the Auction, notice of termination of the Auction or notice of the termination

of the Purchase Agreements with this Court, as applicable.

17.     The Sellers' obligation to pay the Incentive Fee shall survive termination of the Stalking Horse Agreement, shall constitute an administrative expense claim under section 503(b) of the Bankruptcy Code to the extent payable by the Debtors, and shall be payable under the terms and conditions of this Order, notwithstanding section 507(a) of the Bankruptcy Code.

**Notice Procedures**

18.     The notices, in substantially the same form as annexed to the Motion as Exhibits E, F and G, are sufficient to provide effective notice to all interested parties of the Bidding Procedures, the Auction, the Sale and the Assumption and Assignment Procedures, pursuant to Bankruptcy Rules 2002(a)(2), 6004 and 6006, and are hereby approved.

19.     As soon as reasonably practicable after entry of this Bidding Procedures Order and the Canadian Sale Process Order, the Debtors (or their agent) shall serve the Sale Notice, in substantially the form attached as Exhibit E to the Motion, by first-class mail, postage prepaid, and/or via overnight mail, facsimile, hand delivery or electronic transmission upon (i) all entities reasonably known to have expressed an interest in a transaction with respect to the Assets (as defined in the Stalking Horse Agreement) during the past nine (9) months, (ii) all entities reasonably known to have asserted any claim, lien, encumbrance or interest in the Assets, (iii) the attorneys general for all states in which Purchased Assets (as defined below) owned by the Debtors are located, all federal and state taxing authorities, the Securities and Exchange Commission, the Environmental Protection Agency, state environmental protection agencies, the Internal Revenue Service, and the Department of Labor and similar state labor or employment agencies, (iv) all parties entitled to notice pursuant to Local Rule 2002-1(b), (v) all counterparties to the Assumed and Assigned Contracts, (vi) all known creditors of the Debtors, the (vii) the Committee, and (viii) the Bondholders Group.  The Debtors also shall publish notice substantially in the form attached as Exhibit G to the Motion in The Wall Street Journal

9

(National Edition), <u>The Globe and Mail</u> (National Edition) and <u>The Financial Times</u> (International Edition) within five (5) business days of entry of this Bidding Procedures Order and the Canadian Bidding Procedures Order or as soon as reasonably practicable thereafter.

20.     The Assumption and Assignment Notice, in substantially the same form as annexed to the Motion as Exhibit G, is sufficient to provide effective notice pursuant to Bankruptcy Rules 2002(a)(2), 6004(a) and 6006(c) to all Counterparties (as defined in the Motion) of the Debtors' intent to assume and assign some or all of the Assumed and Assigned Contracts, and is hereby approved.  Each Assumption and Assignment Notice shall set forth the following information:  (i) the name and address of the Counterparty, (ii) notice of the proposed effective date of the assignment (subject to the Debtors' and the Stalking Horse Purchaser's or other Successful Bidder's right to withdraw such request for assumption and assignment pursuant to the Stalking Horse Agreement), (iii) identification of the Assumed and Assigned Contract, (iv) the Cure Amount, if any, and (v) a description of the Stalking Horse Purchaser and a statement as to the Stalking Horse Purchaser's ability to perform the Debtors' obligations under the Assumed and Assigned Contracts.

21.     The Debtors (or their agent) shall serve the Assumption and Assignment Notice, in substantially the form attached as Exhibit G to the Motion upon each Counterparty pursuant to the Assumption and Assignment Procedures set forth in the Motion.  For Customer Contracts, the Debtors shall file under seal with the Court and deliver to (a) counsel to the Stalking Horse Purchaser, (b) the U.S. Trustee, (c) counsel to the Monitor, (d) counsel to the Bondholder Group, and (e) counsel to the Committee, a master notice of assignment of contracts that sets forth: (i) the name and address of each Counterparty, (ii) notice of the proposed effective date of each assignment, (iii) a description of each Assumed and Assigned Contract, and (iv) the Cure

Amount, if any, as well as an affidavit confirming that Assumption and Assignment Notices have been sent to each.

### Objection Procedures

22.    Any party that seeks to object to the relief requested in the Motion pertaining to approval of the sale of the Assets, including (without limitation) the sale, assumption and assignment of the Assumed and Assigned Contracts shall file a formal objection that complies with the objection procedures as set forth in the Motion. Each objection shall state the legal and factual basis of such objection and may be orally supplemented at the Sale Hearing. To the extent that any party to an Assumed and Assigned Contract does not timely file an objection to the Motion pursuant to the procedures set forth therein, such party shall be bound to the corresponding Cure Amount.

23.    Any and all written objections as contemplated by this Order (including, without limitation, any objection to the assumption and assignment of any contract or the Cure Amount under any contract) must be: (a) in writing; (b) signed by counsel or attested to by the objecting party; (c) in conformity with the Bankruptcy Rules and the Local Rules; (d) filed with the Bankruptcy Court; and (e) served in accordance with the Local Rules so as to be received on or before the appropriate deadline as set forth in the Motion on the following: (a) counsel to the Debtors, (b) counsel to the Stalking Horse Purchaser, (c) counsel to the Committee, (d) counsel to the Bondholder Group, and (e) the Office of the U.S. Trustee.

24.    Failure to object to the relief requested in the Motion shall be deemed to be "consent" for purposes of Bankruptcy Code section 363(f).

25.    The General Objection Deadline (as defined in the Motion) is **4:00 p.m. (ET) on February 17, 2010**.

11

26.     The Supplemental Objection Deadline (as defined in the Motion) is **4:00 p.m. (ET) on March 2, 2010**.

27.     All objections to the Motion or the relief requested therein (and all reservations of rights included therein), as it pertains to the entry of this Order, are overruled to the extent they have not been withdrawn, waived or otherwise resolved.

### Other Relief Granted

28.     The Auction is scheduled for **9:00 a.m. (ET) on February 25, 2010** at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006.

29.     The Sale Hearing shall be held in this Court on **March 3, 2010, at 2:00 p.m.** (ET). The Sale Hearing may be adjourned or rescheduled without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

30.     The Purchaser shall deposit the Good Faith Deposit into an escrow account (the "Escrow Account") in accordance with section 2.2.5 of the Stalking Horse Agreement. The Debtors are hereby authorized to negotiate and enter into an escrow agreement on terms and conditions reasonably satisfactory to the Committee and the Monitor, acting in good faith, with an escrow agent to establish the Escrow Account without further order of this Court.

31.     The Debtors are authorized to conduct the Sale (as defined in the Bidding Procedures) without the necessity of complying with any state or local bulk transfer laws or requirements.

32.     The Debtors are authorized to file the Schedules under seal. The Debtors shall provide the Schedules to the Clerk's Office of the United States Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket number of this Order, (iv) a

12

statement identifying the contents of the envelope as the Schedules and (v) the legend "DOCUMENTS TO BE KEPT UNDER SEAL" in bold print.

33.    In the event there is a conflict between this Order and the Motion or the Stalking Horse Agreement, this Order shall control and govern.

34.    Nothing in this Order, the Stalking Horse Agreement or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract.

35.    Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, (i) the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.  For the avoidance of doubt, the Bid Protections approved by this Order shall be immediately appealable and failure to appeal in accordance with the Bankruptcy Rules or other applicable law shall constitute a waiver of such rights.

36.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: January 8 , 2010
      Wilmington, Delaware

                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE