## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
                        :

                        :

*In re*                    :

Nortel Networks Inc., *et al.*,[1]  :

                    Debtors.  :

                        :

                        :

---------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: February 3, 2010 at 10:00 a.m. (ET)**
**Objections due: January 27, 2010 at 4:00 p.m. (ET)**

## DEBTORS' MOTION FOR AN ORDER
## APPROVING THE DEBTORS' ASSIGNMENT OF OUTSTANDING
## INDEBTEDNESS OF RUSSIAN TELECOMMUNICATIONS
## DEVELOPMENT CORPORATION TO VELENIO HOLDINGS LIMITED

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to enter into an agreement between NNI and Velenio Holdings Limited assigning outstanding indebtedness owed to NNI by Russian Telecommunications Development Corporation ("RTDC"), a Russian telecommunications holding company, to its successor, Velenio Holdings Limited, as described more fully below and as set forth in the agreed terms of an agreement (the

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

"NNI Assignment Agreement"), substantially in the form attached hereto as Exhibit B; and

granting them such other and further relief as the Court deems just and proper.  In support of this

Motion, the Debtors respectfully represent as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.       On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.       On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

---

[3]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to:  (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of

liquidation for a further period of three months.  On June 26, 2009, this Court entered an order

recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main

proceedings under chapter 15 of the Bankruptcy Code.[4]

9.    On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

10.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

11.    Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.    Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has

---

[5]        Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

completed auction processes and obtained Court approval for the planned sale of substantially all

the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro

Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of

its GSM/GSM-R business [D.I. 2065].

14.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On

December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern

Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

## Relief Requested

15.    By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b)

of the Bankruptcy Code and Bankruptcy Rule 9019:  (a) authorizing the Debtors to enter into an

agreement assigning outstanding indebtedness owed by RTDC to Velenio Holdings Limited, and

(b) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

**A.    The 2004 Financing Arrangement**

16.    RTDC is a telecommunications holding company incorporated in Delaware that,

in 2004, indirectly owned a 50% share in Closed Joint Stock Company Sky Link ("Sky Link").

Sky Link is a shareholder of and/or the provider of the Sky Link trademark for numerous

telecommunications operators within Russia.  For practical purposes, RTDC and Sky Link

together control a substantial majority of telecommunications operators of Code Division

Multiple Access ("CDMA") technology in Russia.  Nortel, through its Carrier Network business,

has historically offered networking solutions based on CDMA technology.

17.     In late 2004, Nortel Networks UK Limited and Nortel Networks o.o.o.[6] agreed to supply CDMA equipment and services to certain operators controlled by RTDC and/or Sky Link (collectively, the "Sky Link Operators").[7]  As part of this arrangement, certain Nortel affiliates, namely NNI and Nortel Networks International Finance and Holding B.V., entered into financing arrangements with RTDC and the Sky Link Operators whereby the Nortel entities agreed to finance the supply of equipment and/or provide additional working capital to RTDC and the Sky Link Operators (the "CDMA Financing").[8]  Specifically, NNI supplied approximately $3.7 million in financing to RTDC, which then on-lent the funds to one of the Sky Link Operators, Closed Joint Stock Company Uralwestcom ("UWC").  Although UWC currently trades under the Sky Link name, it was at the time wholly owned by RTDC.  Subsequently, in 2008, RTDC sold its interest in the Sky Link Operators, including UWC, to Velenio Holdings Limited, a company organized under the laws of the Republic of Cyprus ("Velenio").

18.     In total, between the CDMA Financing and unpaid trade receivables owed to Nortel Networks o.o.o., the Sky Link Operators accumulated approximately $20 million in principal debt to NNI, Nortel Networks International Finance and Holding B.V. and Nortel Networks o.o.o. (collectively, the "Nortel Lenders").  The CDMA Financing, provided in connection with other commercial arrangements, was intended to give Nortel a foothold in the nascent Russian CDMA market, with an ultimate goal of becoming a significant supplier to RTDC, Sky Link and their affiliates for the long-term future.  The debt associated with the

---

[6]     Nortel Networks o.o.o. is a subsidiary of Nortel Networks UK Limited based in Russia and is not the subject of pending creditor protection proceedings.

[7]     The specific operators involved are:  Closed Joint Stock Company Uralwestcom, Open Joint Stock Company Apex and Closed Joint Stock Company Saratov System of Cellular Communication.

[8]     Nortel Networks International Finance and Holding B.V. is a subsidiary of Nortel Networks UK Limited based in the Netherlands and is one of the EMEA Debtors.

CDMA Financing (together with unpaid trade receivables owed to Nortel Networks o.o.o., the "CDMA Debt") was to be repaid by the Sky Link Operators in two to four years.

19.      Nortel's efforts to enter the CDMA market in Russia were unsuccessful for various operational and strategic reasons, and, as a result, a substantial amount of the CDMA Financing has not been repaid.  Additionally, RTDC, Sky Link and their affiliates have experienced financial difficulties in recent years, including due to increased competition in the Russian wireless technology market, the emergence of new wireless technologies in the region and the onset of the global financial crisis in 2008.

**B.      Sky Link's Proposed Purchase of the Indebtedness**

20.      Consequently, the CDMA Debt is now past due.  Moreover, since January 2009, the Sky Link Operators have been unable to service even interest payments on the CDMA Debt.

21.      As of December 31, 2009, the Nortel Lenders are owed approximately USD $22,641,059.56 on the CDMA Debt.  Specifically, as of December 31, 2009, NNI is owed $2,700,000.00 in outstanding principal and $201,227.40 in unpaid interest on the CDMA Debt.[9] The unpaid interest owed to NNI continues to accrue on a daily basis and is invoiced on a monthly basis.

22.      Sky Link wishes to preserve the value of its trade name, including by seeking to clear the outstanding debts of operators that trade under that name, including the Sky Link Operators.  To that end, recently the Nortel Lenders and Sky Link have engaged in arms' length, good faith negotiations to resolve issues surrounding the debt, particularly in light of the financial difficulties each has experienced.  As a result of these negotiations, the parties propose to resolve their dispute pursuant to the agreed terms set forth in a series of agreements (together,

---

[9]      As of December 31, 2009, Nortel Networks International Finance Holding B.V. is owed approximately $16,688,556.14 in principal and $2,141,954.40 in unpaid interest.  As of December 31, 2009, Nortel Networks o.o.o. is owed approximately $909,321.62 on unpaid trade receivables, including $92,924.18 in unpaid interest.

the "Agreements"), one of which is the NNI Assignment Agreement substantially in the form

attached hereto as **Exhibit B**.[10]  Under the salient terms of the Agreements, Sky Link, either

through itself or one or more of its affiliates, has agreed to buy the entirety of the CDMA Debt

payable to the Nortel Lenders for an aggregate sum of $1.5 million in cash, or approximately

6.7% of the total outstanding principal and interest.  In exchange, the Nortel Lenders have agreed

to release RTDC, Sky Link and the Sky Link Operators from their remaining obligations on the

CDMA Debt.  Under the NNI Assignment Agreement specifically, NNI will recover

approximately $192,210.00 from Velenio, an affiliate of Sky Link and the assignee of the portion

of the CDMA Debt owed to NNI.

### Basis for Relief

23.     The Debtors seek an order granting the relief sought in this Motion pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order…that is

necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

24.     Section 363(b) of the Bankruptcy Code permits a debtor to use, sell, or lease the

property of the estate outside of the ordinary course of business after notice and a hearing.  11

U.S.C. § 363.  Section 363 applies when a settlement agreement involves the disposition of the

estate's assets in such a way that it ventures beyond an ordinary course transaction.  Myers v.

Martin (In re Martin), 91 F.3d 389, 394-95 (3d Cir. 1996).

25.     The use or transfer of estate property under this provision must be supported by a

sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.),

722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL

---

[10]     The NNI Assignment Agreement is the only Agreement to which NNI or any of the Debtors is a party.

32332749, at *2 (D. Del. May 20, 2002); <u>Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 175-76 (D. Del. 1991); <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward Holding Corp.</u>, 242 B.R. at 153-54 & n.1 (quoting <u>In re Lionel Corp.</u>, 722 F.2d at 1071). In addition, a Debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided and that it is receiving fair and reasonable value in exchange. <u>See</u> <u>In re Decora Industries, Inc.</u>, 2002 WL 32332749, at *2; <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. at 176. Courts have distinguished the application of Section 363 to settlements as opposed to property sales, finding that the settlement of pre-petition claims requires less scrutiny than asset sales because settlements must be approved quickly and are often an important first step in formulating a plan. <u>Official Unsecured Creditors' Comm. of Pennsylvania Truck Lines v. Pennsylvania Truck Lines, Inc. (In re Pennsylvania Truck Lines)</u>, 150 B.R. 595, 599 (E.D. Pa., 1992) (quoting <u>In re Grant Broadcasting of Phila., Inc.</u>, 71 B.R. 390, 398 (Bankr. E.D. Pa. 1987) and <u>In re Neshaminy Office Bldg. Assocs.</u>, 62 B.R. 798, 805 (E.D. Pa. 1986)).

26.    Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Pursuant to this authority, the Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 393

(3d Cir. 1996) (quoting <u>Collier on Bankruptcy</u> ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  <u>See</u> <u>In re Coram Healthcare Corp.</u>, 315 B.R. 321, 329 (Bankr. D. Del. 2004).

27.     The settlement of disputes that could lead to time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy."  <u>In re World Health Alternatives, Inc.</u>, 344 B.R. 291, 296 (Bankr. D. Del. 2006); <u>see also</u> <u>In re Penn Cent. Transp. Co.</u>, 596 F.2d 1102, 1112 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), <u>quoting</u> <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968).

28.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate."  <u>In re Key3Media Group, Inc.</u>, 336 B.R. 87, 92 (Bankr. D. Del. 2005); <u>see also</u> <u>In re Marvel Entm't Group, Inc.</u>, 222 B.R. 243, 249 (D. Del. 1998) (quoting <u>In re Louise's, Inc.</u>, 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation."  <u>TMT Trailer Ferry</u>, 390 U.S. at 424-25.  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness."  <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing <u>In re Jasmine, Ltd.</u>, 258 B.R. 119, 123 (D.N.J. 2000)).  The court should not substitute its judgment for that of the debtor and need not be convinced that the settlement is the best possible

compromise.  See Coram, 315 B.R. at 330; In re Neshaminy Office Bldg. Assocs., 62 B.R. 798,

803 (E.D. Pa. 1986).

29.     The Third Circuit has enumerated four factors for a bankruptcy court to consider

when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in

litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved,

and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest

of the creditors."  Martin, 91 F.3d at 393 (citing Neshaminy, 62 B.R. at 803); see also Fry's

Metals, Inc. v. Gibbons (In re RFE Indus.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc.,

331 B.R. 176, 198 (Bankr. D. Del. 2005).   The ultimate inquiry is whether the compromise is

fair, reasonable and in the interest of the estate.  See In re Louise's, Inc., 211 B.R. 798, 801 (D.

Del. 1997).

30.     Applying the above analysis to the instant matter, the Debtors respectfully submit

that the proposed settlement meets each of the requirements under section 363 of the Bankruptcy

Code and Bankruptcy Rule 9019 and is in the best interests of the Debtors' estates and their

creditors.

31.     As contemplated by section 363 and Bankruptcy Rule 9019, the NNI Assignment

Agreement is proposed as a good faith means to reach agreement and to resolve actual and

potential disputes between the parties regarding the repayment of the CDMA Debt.  The Debtors

have reviewed their ability to pursue recovery of the CDMA Debt through litigation, and the

Debtors have determined that while the costs and time associated with such an effort would be

significant, the likelihood of substantial recovery is extremely low.  As the CDMA Financing

was provided by multiple Nortel entities to RTDC and two distinct Sky Link Operators in

different locations within Russia, litigation could require pursuing multiple proceedings in

different jurisdictions, and any judgment obtained would have to be enforced in Russian courts, dramatically increasing the cost -- in both time and dollars -- required to be expended.

32.    Additionally, even were it determined that such litigation is practically feasible and Nortel were to succeed in obtaining a judgment, the risk of collection would remain.  Sky Link and the Sky Link Operators have experienced financial difficulties caused in part by intense competition in the market, the attendant emergence of new wireless technology in the region and the global financial crisis.  These entities have substantial indebtedness in addition to that owed to the Nortel Lenders.  Accordingly, the Nortel Lenders' ability to collect *any* of the CDMA Debt outside of the Agreements is highly uncertain.

33.    Participation in the NNI Assignment Agreement obviates the need for litigation, saves the Debtors significant time and expense in the potential litigation over the debt and avoids distracting the Debtors' officers and employees during the chapter 11 proceedings.  Although the proposed recovery is a fraction of the overall outstanding amount of the debt, the Debtors believe that the NNI Assignment Agreement presents the best opportunity to maximize the value of the CDMA Debt for distribution to the estates and their creditors.  Moreover, the Debtors believe that the interests of their creditors are best served by the prompt and efficient resolution of the dispute over the CDMA Debt and the minimization of legal fees and administrative expenses that would be required to pursue these amounts through litigation.

34.    In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the NNI Assignment Agreement is preferable to potential litigation to recover the CDMA Debt and is within the sound business judgment of the Debtors.  The proposed agreement reflects an optimal resolution in light of: (i) the value being given and (ii) the contingencies of success in potential litigation and the costs and delays attendant thereto.  For

these reasons, the Debtors submit that the assignment of the outstanding indebtedness should be approved, as it is in the best interests of the Debtors, their estates and their creditors.

## Notice

35.     Notice of the Motion has been given via hand delivery or first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) RTDC; (v) Velenio; (vi) Sky Link and (vii) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

36.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this

Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  January 13, 2009
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

   - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*