## EXHIBIT A

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**MOTION RECORD**
**(returnable January 21, 2010)**

January 18, 2010

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto Ontario  M5J 2Z4

Derrick Tay LSUC#: 21152A
Tel:  (416) 216-4832
Email: dtay@ogilvyrenault.com

Mario Forte  LSUC#: 27293F
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

Jennifer Stam LSUC #46735J
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

# INDEX

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

### INDEX

| TAB | DOCUMENT | PAGE |
|-----|----------|------|
| 1. | Notice of Motion returnable January 21, 2010 | 1 |
| 2. | Affidavit of John Doolittle, sworn January 18, 2010 | 28 |
| 3. | Affidavit of John Doolittle, sworn June 22, 2009 | 50 |
| 4. | Draft Order | 75 |

# TAB 1

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF MOTION**
**(returnable January 21, 2010)**

Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively, the "Applicants") will make a motion to Justice Morawetz of the Commercial List court on **Thursday, January 21, 2010 at 11:00 a.m. at 393 University Avenue, Toronto, Ontario.**

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐  in writing under subrule 37.12.1(1) because it is on consent or unopposed or made without notice;

☐  in writing as an opposed motion under subrule 37.12.1(4);

☒  orally.

THE MOTION IS FOR AN ORDER:

(a)    Abridging the time for service of the Notice of Motion and Motion Record in respect of this motion and dispensing with further service thereof;

- 2 -

(b)     Approving the Canadian Funding Agreement (as defined below);

(c)     Approving the CRA APA (as defined below);

(d)     Approving the creation and allowance of the NNI Claim (as defined below);

(e)     Approving the NNI Loan Agreement Extension (as defined below);

(f)     Approving the thirteenth extension of the Canadian GSPA (as defined below);

(g)     Approving the extension of the Employee Hardship Process (as defined below) to April 23, 2010;

(h)     Approving the extension of the Stay Period (as defined in the Initial Order, defined below) to April 23, 2010;

(i)     Sealing of the confidential appendices to the thirty-fifth report of the Monitor (as defined below) (the "Thirty-Fifth Report"); and

(j)     Such further and other relief as counsel may request and this Honourable Court deem just.

THE GROUNDS FOR THE MOTION ARE:

**BACKGROUND**

(a)     On January 14, 2009 (the "Filing Date"), this Honourable Court made an initial order (as subsequently amended and restated, the "Initial Order") granting a stay of proceedings against the Applicants pursuant to the *Companies' Creditors Arrangement Act*, (Canada) R.S.C. 1985, c. C-36, as amended (the "CCAA") and appointing Ernst & Young Inc. as monitor (the "Monitor") in the CCAA proceedings;

(b)     Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including Nortel Networks Inc. ("NNI") (together with the other U.S. filing entities, the "U.S. Debtors"), made voluntary filings under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section

- 3 -

18.6(4) of the CCAA recognizing the Chapter 11 cases in the U.S. as "foreign proceedings" in Canada and giving effect to the automatic stay under the Code in Canada;

(c)     Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries of the Nortel group incorporated in the Europe, Middle East and Africa region ("EMEA") each obtained an administration order for the appointment of joint administrators (the "Joint Administrators") from the High Court of England and Wales under the Insolvency Act 1986;

(d)     References to "Nortel" herein shall be to the global enterprise as a whole;

(e)     All dollar references are US$ unless otherwise indicated;

(f)     Capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Affidavit of John Doolittle, sworn January 18, 2010 (the "Doolittle Affidavit");

**CANADIAN FUNDING AGREEMENT**

(g)     On or about June 9, 2009, after extensive negotiation among NNI, NNL, the Monitor, the Joint Administrators, the Official Committee of Unsecured Creditors of NNI (the "Creditors' Committee") and the ad hoc Bondholders' Committee (the "Bondholders' Committee", together with the Creditors' Committee, the "Creditor Groups"), the parties reached an interim funding solution and the Applicants, the U.S. Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA");

(h)     The IFSA was approved by this Court on June 29, 2009 and by the U.S. Court on the same day;

(i)     The IFSA, among other things, authorized funding by NNI to NNL in the amount of $157 million, which provided partial financing for the Applicants' operations from the Filing Date through September 30, 2009;

- 4 -

4

(j)    The interim funding period under the IFSA ended on September 30, 2009 and NNI has not provided any additional funding to NNL in respect of any period since that date;

(k)    Since September 30, 2009, various interested parties have been discussing the appropriate means to alleviate NNL's liquidity issues and as a result of these discussions, NNI, NNL, the Monitor and the Creditor Groups reached consensus on the form and substance of the Canadian Funding Agreement;

(l)    Following lengthy negotiations which included NNL, NNI, the Monitor and the Creditor Groups, on or about December 23, 2009, the Canadian Funding Agreement was executed. In broad terms, the Canadian Funding Agreement provides for the following:

    (i)    Payment by NNI to NNL of $190.8 million (subject to adjustment as described in the Canadian Funding Agreement) in five instalments;

    (ii)    Settlement of certain claims by NNL against NNI for goods and services provided during the period covered by the Canadian Funding Agreement;

    (iii)    Allocation among NNL and NNI of corporate costs for the period covered by the Canadian Funding Agreement on a 50% / 50% basis and subject to a subsequent true-up based on the allocation of sale proceeds;

    (iv)    Allocation of M&A Costs on a transaction-by-transaction basis to be satisfied out of sale proceeds;

    (v)    Establishment of a pre-filing claim against NNL in favour of NNI in the amount of $2.0627 billion (the "NNI Claim") to settle any overpayments made by NNI to NNL during the period 2001 to 2005 and settling certain of the net pre-filing obligations of NNI and NNL;

    (vi)    Finalization of the APAs between NNI and the Internal Revenue Service ("IRS") and between NNL and Canada Revenue Agency ("CRA") for the taxable years 2001 to 2005;

- 5 -

> (vii)   Certain other agreements relating to intercompany bar dates, a cross-border claims protocol and an agreement to not exercise any right of termination under the Master R&D Agreement; and
>
> (viii)   Certain reservations of rights in respect of the allocation of sale proceeds.

## CRA APA

(m)   The Nortel Transfer Pricing Regime (as defined in the Doolittle Affidavit) provides for profit and loss allocations among a core group of Nortel entities. This system relies in part on "advance pricing agreements" ("APA") with multiple taxing jurisdictions to achieve a coordinated resolution of transfer pricing issues;

(n)   Over the past seven years, the competent authority divisions of the IRS and the CRA have been engaged in competent authority review regarding a bilateral APA relating to Nortel, which review eventually resulted in the IRS APA;

(o)   As a result of extensive negotiations involving NNL, the Monitor, the CRA as well as NNI and the IRS, the terms of the APAs, including the CRA APA have now been substantially agreed upon;

## THE NNI CLAIM

(p)   The creation and allowance of the NNI Claim, as noted above, is fundamental to the Canadian Funding Agreement and is closely associated with the entering into of the CRA APA and NNI's entry into the IRS APA;

(q)   The NNI Claim is a fundamental element to the resolution of NNL's funding issues as well as the resolution of the tax claims relating to the APA Years;

## NNI LOAN AGREEMENT EXTENSION

(r)   Pursuant to an order of this Court made on April 7, 2009, this Court approved an amended and restated loan agreement dated as of March 27, 2009 (the "NNI Loan



- 6 -

Agreement") among NNI, as lender, NNL as borrower and NNC and the other Applicants as guarantors;

(s)    The NNI Loan Agreement amended and restated an earlier original NNI loan agreement that had been approved by this Court on January 14, 2009;

(t)    The original term of the NNI Loan Agreement expired on December 31, 2009 but was subject to a further extension;

(u)    As part of the larger negotiations relating to the Canadian Funding Agreement, NNI has agreed to extend the term of the NNI Loan Agreement and NNI and NNL entered into an amendment to the NNI Loan Agreement dated as of December 23, 2009, (the "NNI Loan Agreement Extension") to December 31, 2010;

**GROUP SUPPLIER PROTOCOL AGREEMENT**

(v)    As set out above, upon filing under these CCAA Proceedings and in the U.S. Chapter 11 cases, Nortel entered into two group supplier protocol agreements, one between the Applicants and the Joint Administrators (the "Canadian GSPA"), and the other between the U.S. Debtors and the Joint Administrators (the "U.S. GSPA");

(w)    Pursuant to previous orders of this Court, extensions of the Canadian GSPA have been previously approved, up to and including a twelfth extension.  The twelfth extension expired on January 15, 2010;

(x)    The Applicants have now entered into and seek approval of the thirteenth extension of the Canadian GSPA, extending the Canadian GSPA to March 31, 2010;

**EMPLOYEE HARDSHIP PROCESS**

(y)    Pursuant to an Order of this Honourable Court made on July 30, 2009, an employee hardship process (the "Employee Hardship Process") was approved in recognition of the fact that there may be cases in which former employees of one of the Applicants is experiencing financial hardship due to illness or healthcare costs, or due to ineligibility for pension or employment insurance benefits;



- 7 -

(z)     The maximum amount that was made available for the Employee Hardship Process was $750,000.  Further, any hardship payments are considered advances against future distributions based on the claims of these former employees;

(aa)    The original expiration of the Employee Hardship Process was November 30, 2009. Pursuant to an Order of this Court dated December 2, 2009, the period for receipt of employee hardship application was extended to January 31, 2010;

(bb)    There will continue to be terminations and the potential for hardship past January 31, 2010;

## EXTENSION OF THE STAY PERIOD

(cc)    The Applicants generally have and continue to work diligently and in good faith and continue to focus on their restructuring sale efforts;

(dd)    As the Applicants continue to work to complete the transactions as well as resolve claims and carry out their other restructuring efforts, they continue to need the protection of this Court;

(ee)    Accordingly, the Applicants request an extension of the Stay Period to April 23, 2010;

## SEALING

(ff)    The confidential appendices to the Thirty-Fifth Report contain sensitive and competitive information, some of which is subject to confidentiality agreements;

(gg)    The sealing of these confidential appendices are appropriate in the circumstances;

## MISCELLANEOUS

(hh)    The provisions of the CCAA; and

(ii)    Such further and other grounds as counsel may advise and this Honourable Court permit.



- 8 -

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)     The Doolittle Affidavit;

(b)     The Affidavit of John Doolittle, sworn June 22, 2009;

(c)     The Thirty-Fifth Report, to be filed separately; and

(d)     Such further and other relief as counsel may request and this Honourable Court deem
just.

January 18, 2010                     **OGILVY RENAULT LLP**
                                     Suite 3800
                                     Royal Bank Plaza, South Tower
                                     200 Bay Street
                                     Toronto, Ontario  M5J 2Z4  CANADA

                                     **Derrick Tay LSUC#: 21152A**
                                     Tel:  (416) 216-4832
                                     Email: dtay@ogilvyrenault.com

                                     **Mario Forte  LSUC#: 27293F**
                                     Tel: (416) 216-4870
                                     Email: mforte@ogilvyrenault.com

                                     **Jennifer Stam LSUC #46735J**
                                     Tel: (416) 216-2327
                                     Email: jstam@ogilvyrenault.com

                                     Fax: (416) 216-3930
                                     Lawyers for the Applicants

TO:       Attached Service List

9

Court File No.  09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**SERVICE LIST**

TO:       **OGILVY RENAULT LLP**
          Royal Bank Plaza, South Tower
          200 Bay Street, Suite 3800
          Toronto, Ontario M5J 2Z4

          Derrick Tay
          Mario Forte
          Jennifer Stam

          Email:      dtay@ogilvyrenault.com
                      mforte@ogilvyrenault.com
                      jstam@ogilvyrenault.com

          Tel:        416.216.4000
          Fax:        416.216.3930

          Lawyers for the Applicants

10

- 2 -

TO:   **ERNST & YOUNG INC.**
Ernst & Young Tower
222 Bay Street, P.O. Box 251
Toronto, ON  M5K 1J7

Murray McDonald
Brent Beekenkamp

Email:   nortel.monitor@ca.ey.com

Tel:   416.943.3016
Fax:   416.943.3300

AND   **GOODMANS LLP**
TO:   Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay Carfagnini
Joseph Pasquariello
Gail Rubenstein
Chris Armstrong

Email:   jcarfagnini@goodmans.ca
jpasquariello@goodmans.ca
grubenstein@goodmans.ca
carmstrong@goodmans.ca

Tel:   416.597.4107
Fax:   416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

AND   **OSLER HOSKIN AND HARCOURT**
TO:   **LLP**
100 King Street West
1 First Canadian Place
Suite 6100
P.O. Box 50
Toronto, ON  M5X 1B8

Lyndon Barnes
Rupert Chartrand
Edward Sellers
Adam Hirsh

Email:   lbarnes@osler.com
rchartrand@osler.com
esellers@osler.com
ahirsh@osler.com

Tel:   416.362.2111
Fax:   416.862.6666

Lawyers for the Boards of Directors of
Nortel Networks Corporation and Nortel
Networks Limited

AND   **FASKEN MARTINEAU DUMOULIN LLP**
TO:   66 Wellington Street West
Toronto Dominion Bank Tower
P.O. Box 20, Suite 4200
Toronto, ON  M5K 1N6

Donald E. Milner
Aubrey Kauffman
Edmond Lamek
Jon Levin

Email:   dmilner@fasken.com
akauffman@fasken.com
elamek@fasken.com
jlevin@fasken.com

Tel:   416.868.3538
Fax:   416.364.7813

Lawyers for Export Development Canada

11

- 3 -

| | |
|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, ON K1A 1K3<br><br>Jennifer Sullivan<br><br>Email: jsullivan@edc.ca<br><br>Tel: 613.597.8651<br>Fax: 613.598.3113 | AND TO: | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, ON M5K 1K7<br><br>Robert I. Thornton<br>Michael Barrack<br>Rachelle Moncur<br>Leanne M. Williams<br><br>Email: rthornton@tgf.ca<br>mbarrack@tgf.ca<br>rmoncur@tgf.ca<br>lwilliams@tgf.ca<br><br>Tel: 416.304.1616<br>Fax: 416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |

**EXPORT DEVELOPMENT CANADA**
AND TO:
151 O'Connor Street
Ottawa, ON K1A 1K3

Jennifer Sullivan

Email: jsullivan@edc.ca

Tel: 613.597.8651
Fax: 613.598.3113

AND TO:
**THORNTON GROUT FINNIGAN LLP**
3200-100 Wellington Street West
Toronto-Dominion Centre, Canadian Pacific Tower
Toronto, ON M5K 1K7

Robert I. Thornton
Michael Barrack
Rachelle Moncur
Leanne M. Williams

Email: rthornton@tgf.ca
mbarrack@tgf.ca
rmoncur@tgf.ca
lwilliams@tgf.ca

Tel: 416.304.1616
Fax: 416.304.1313

Lawyers for Flextronics Telecom Systems Ltd.

AND TO:
**McINNES COOPER**
Purdy's Wharf Tower II
1300 – 1969 Upper Water Street
Halifax, NS B3J 2V1

John Stringer, Q.C.
Stephen Kingston

Email: john.stringer@mcinnescooper.com
stephen.kingston@mcinnescooper.com

Tel: 902.425.6500
Fax: 902.425.6350 ·

Lawyers for Convergys EMEA Limited

AND TO:
**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON M5H 3S1

Jeffrey Carhart
Margaret Sims

Email: jcarhart@millerthomson.com
msims@millerthomson.com

Tel: 416.595.8615/8577
Fax: 416.595.8695

Lawyers for Toronto-Dominion Bank

AND TO:
**CAW-CANADA**
Legal Department
205 Placer Court
Toronto, ON M2H 3H9

Barry E. Wadsworth
Lewis Gottheil

Email: barry.wadsworth@caw.ca
lewis.gottheil@caw.ca

Tel.: 416.495.3776
Fax: 416.495.3786

Lawyers for all active and retired Nortel employees represented by the CAW-Canada

AND TO:
**BOUGHTON LAW CORPORATION**
Suite 700
595 Burrard Street
Vancouver, BC V7X 1S8

R. Hoops Harrison

Email: hharrison@boughton.ca

Tel: 604.687.6789
Fax: 604.683.5317

Lawyers for Tonko Realty Advisors (BC) Ltd.

- 4 -

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:   mmacnaughton@blgcanada.com
Tel:       416. 367.6646
Fax:      416. 682.2837

Email:   rjaipargas@blgcanada.com
Tel:       416.367.6266
Fax:      416.361.7067

Email:   srappos@blgcanada.com
Tel:       416.367.6033
Fax:      416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:   ray.leach@siskinds.com
            dimitri.lascaris@siskinds.com
            monique.radlein@siskinds.com

Tel:       519.672.2121
Fax:      519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND
TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:       416.307.4087
Fax:      416.304.3855

Email   jcontini@langmichener.ca
Tel:       416.307.4148
Fax:      416.304.3767

Email   arousseau@langmichener.ca
Tel:       416.307.4081
Fax:      416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:   zychk@bennettjones.com
Tel:       416.777.5738
Fax:      416.863.1716

Email:   orzyr@bennettjones.com
Tel:       416.777.5737
Fax:      416.863.1716

Email:   finlaysong@bennettjones.com
Tel:       416.777.5762
Fax:      416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

13

- 5 -

AND TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:    mzigler@kmlaw.ca
Tel:       416.595.2090
Fax:      416.204.2877

Email:    sphilpott@kmlaw.ca
Tel:       416.595.2104
Fax:      416.204.2882

Email:    dyiokaris@kmlaw.ca
Tel:       416.595.2130
Fax:      416.204.2810

Email:    amckinnon@kmlaw.ca
Tel:       416.595.2150
Fax:      416.204.2874

Lawyers for the Former Employees of Nortel

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:    jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:      416.595.8695

Email    msims@millerthomson.com
Tel:       416.595.8577
Fax:      416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:    jcarhart@millerthomson.com
Tel:       416.595.8615
Fax:      416.595.8695

Email:    msims@millerthomson.com
Tel:       416.595.8577
Fax:      416.595.8695

Email:    jmklotz@millerthomson.com
Tel:       416.595.4373
Fax:      416.595.8695

Lawyers for LG Electronics Inc.

AND TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongdeungpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:    joseph.kim@lge.com

Tel:       +82.2.3777.3171
Fax:      +82.2.3777.5345

14

- 6 -

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:   harvey@chaitons.com

Tel:      416.218.1129
Fax:      416.218.1849

Lawyers for IBM Canada Limited

AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:   Shayne.kukulowicz@fmc-law.com
         Alex.macfarlane@fmc-law.com
         Michael.wunder@fmc-law.com
         ryan.jacobs@fmc-law.com

Tel:      416.863.4511
Fax:      416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:   ken.rosenberg@paliareroland.com
Tel:      416.646.4304
Fax:      416.646.4301

Email:   max.starnino@paliareroland.com
Tel:      416.646.7431
Fax:      416.646.4301

Email:   lily.harmer@paliareroland.com
Tel:      416.646.4326
Fax:      416.646.4301

Email:   tina.lie@paliareroland.com
Tel:      416.646.4332
Fax:      416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:   patrick.shea@gowlings.com

Tel:      416.369.7399
Fax:      416.862.7661

Lawyers for Westcon Group

- 7 -

15

AND TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:   rslattery@mindengross.com
         dullmann@mindengross.com
Tel:     416.369.4149
Fax:     416.864.9223

Lawyers for Verizon Communications Inc.


AND TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:     416.865.6655
Fax:     416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:     416.865.6641
Fax:     416.865.6636

Lawyers for Andrew, LLC


AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Canadian Lawyers for Tellabs, Inc.


AND TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:   hfogul@airdberlis.com
Tel:     416.865.7773
Fax:     416.863.1515

Email:   pczegledy@airdberlis.com
Tel:     416.865.7749
Fax:     416.863.1515

Lawyers for Microsoft Corporation


AND TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:   renglish@airdberlis.com
         smitra@airdberlis.com

Tel:     416.863.1500
Fax:     416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation


AND TO:

**ALEXANDER HOLBURN BEAUDIN & LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:   surquhart@ahbl.ca
Tel:     604.484.1757
Fax:     604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street, West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Maurice Fleming

Email:    mfleming@millerthomson.com
Tel:        416.595.8686
Fax:       416.595.8695

Lawyers for Verint Americas Inc. and Verint
Systems, Inc.

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:    bdarlington@davis.ca
Tel:        416.365.3529
Fax:       416.369.5210

Email:    jdavissydor@davis.ca
Tel:        416.941.5397
Fax:       416.365.7886

Lawyers for Brookfield LePage Johnson Controls
Facility Management Services

AND
TO:

**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario  M5J 2T3

Andrew F. Kent
Tushara Weerasooriya
Hilary E. Clarke

Email:    andrew.kent@mcmillan.ca
Tel:        416.865.7160
Fax:       416.865.7048

Email:    hilary.clarke@mcmillan.ca
Tel:        416.865.7286
Fax:       416.865.7048

Email:    tushara.weerasooriya@mcmillan.ca
Tel:        416.865.7262
Fax:       416.865.7048

Lawyers for Royal Bank of Canada

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:    sgraff@airdberlis.com
Tel:        416.865.7726
Fax:       416.863.1515

Email:    iaversa@airdberlis.com
Tel:        416.865.3082
Fax:       416.863.1515

Lawyers for Perot Systems Corporation

17

- 9 -

AND TO:
**McMILLAN LLP**
Brookfield Place, Suite 4400
181 Bay Street
Toronto, Ontario M5J 2T3

Lawrence J. Crozier
Adam C. Maerov

Email:   lawrence.crozier@mcmillan.ca
Tel:      416.865.7178
Fax:      416.865.7048

Email:   adam.maerov@mcmillan.ca
Tel:      416.865.7285
Fax:      416.865.7048

Lawyers for Citibank

AND TO:
**BLANEY McMURTRY LLP**
Barristers and Solicitors
1500 – 2 Queen Street East
Toronto, Ontario M5C 3G5

Domenico Magisano

Email:   dmagisano@blaney.com
Tel:      416.593.2996
Fax:      416.593.5437

Lawyers for Expertech Network Installation Inc.

AND TO:
**LANG MICHENER LLP**
Brookfield Place
Suite 2500, 181 Bay Street
P.O. Box 747
Toronto, Ontario M5J 2T7

Leslie Wittlin
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:      416.307.4087
Fax:      416.365.1719

Email:   arousseau@langmichener.ca
Tel:      416.307.4081
Fax:      416.365.1719

Lawyers for Right Management Inc.

AND TO:
**CASSELS BROCK & BLACKWELL LLP**
40 King Street West,
Suite 2100
Toronto, Ontario M5H 3C2

Deborah S. Grieve

Email:   dgrieve@casselsbrock.com
Tel:      416.860.5219
Fax:      416.350.6923

Lawyers for Alvarion Ltd.

AND TO:
**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:   jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:      416.865.6636

Email:   vdare@gardiner-roberts.com
Tel:      416.865.6641
Fax:      416.865.6636

Lawyers for Amphenol Corporation

AND TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, Ontario M5J 2T9

Sanjeev P.R. Mitra
Sandra A. Vitorovich

Email:   smitra@airdberlis.com
           svitorovich@airdberlis.com

Tel:      416.863.1500
Fax:      416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

- 10 -

18

<div style="display:flex">
<div>

AND
TO:

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:    janice.payne@nelligan.ca
          ainslie.benedict@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:      613.231.8245
Fax:      613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

AND
TO:

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:    misrag@caleywray.com

Tel:      416.775.4680
Fax:      416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

AND
TO:

**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:    ddropsy@colby-monet.com
Tel:      514.284.3663
Fax:      514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

</div>
<div>

AND
TO:

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:    bleonard@casselsbrock.com
          hgarman@casselsbrock.com
          mcasey@casselsbrock.com

Tel:      416.860.6455
Fax:      416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

AND
TO:

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:    pklepsoe@mcfarlanelaw.com

Tel:      613.233.2679
Fax:      613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

AND
TO:

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:    dgoldstein@schneidergaggino.com
          mgaggino@schneidergaggino.com

Tel:      514.631.8787
Fax:      514.631.0220

Lawyers for the Teamsters Quebec Local 1999

</div>
</div>

DOCSTOR: 1600901\2A

19

- 11 -

AND
TO:
**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Steven Levitt
Christopher Rootham

Email:    janice.payne@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:     613.231.8245
Fax:     613.788.3655

Lawyers for the Steering Committee of Nortel
Canadian Continuing Employees – Post CCAA
as at January 14, 2009

AND
TO:
**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, Ontario  M5X 1A4

Robyn M. Ryan Bell
Mark Laugesen

Email:    ryanbellr@bennettjones.com
          laugesenm@bennettjones.com

Tel:     416.863.1200
Fax:     416.863.1716

Lawyers for Tel-e Connect Systems Ltd. and
Tel-e Connect Systems (Toronto) Ltd.

AND
TO:
**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, Ontario  M5H 4G2

Timothy R. Dunn

Email:    tdunn@mindengross.com
Tel:     416.369.4335
Fax:     416.864.9223

Lawyers for 2748355 Canada Inc.

AND
TO:
**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Chris Besant
Lydia Salvi

Email:    chris.besant@bakernet.com

Tel:     416.865.2318
Fax:     416.863.6275

Email:    lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:     416.863.6275

Lawyers for Jabil Circuit Inc.

AND
TO:
**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Thomas G. Heintzman
Junior Sirivar

Email:    theintzm@mccarthy.ca
Tel:     416.601.7627
Fax:     416.868.0673

Email:    jsirivar@mccarthy.ca
Tel:     416.601.7750
Fax:     416.868.0673

Lawyers for Frank Andrew Dunn

AND
TO:
**EURODATA**
2574 Sheffield Road
Ottawa, Ontario  K1B 3V7

Nanci Shore

Email:    nanci@eurodata.ca
Tel:     613.745.0921
Fax:     613.745.1172

*20*

- 12 -

AND
TO:
**BALDWIN LAW PROFESSIONAL
CORPORATION**
54 Victoria Avenue
Belleville, Ontario K8N 5J2

Ian W. Brady

Email:   lbrady@baldwinlaw.ca
Tel:      613.771.9991
Fax:      613.771.9998

Lawyers for Sydney Street Properties Corp.

AND
TO:
**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for Huawei Technologies Co. Ltd.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Co-Counsel for the Steering Committee of
Nortel Canadian Continuing Employees – Post
CCAA as at January 14, 2009

AND
TO:
**AETL TESTING, INC.**
130 Chaparral Court, Suite 250
Anaheim, California 92808

Cynthia R. Maher

Email:   cynthia.maher@ntscorp.com
Tel:      714.998.4351
Fax:      714.998.7142

Lawyers for AETL Testing, Inc.

AND
TO:
**SHIBLEY RIGHTON LLP**
Barristers and Solicitors
250 University Avenue, Suite 700
Toronto, Ontario M5H 3E5

Arthur O. Jacques
Thomas McRae

Email:  arthur.jacques@shibleyrighton.com
Tel:      416.214.5213
Fax:      416.214.5413

Email :  thomas.mcrae@shibleyrighton.com
Tel :     416.214.5206
Fax :     416.214.5400

Lawyers for The Recently Severed Canadian
Nortel Employees Committee

AND
TO:
**LAVERY, DE BILLY, LLP**
Barristers & Solicitors
Suite 2400, 600 de la Gauchetière West
Montreal, Quebec H3B 4L8

Jean-Yves Simard

Email :   jysimard@lavery.ca
Tel :      514.871.1522
Fax :      514.871.8977

Lawyers for Texas Landlords to Nortel Networks
Inc.

- 13 -

*21*

<table>
<tr><td>

AND
TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:  cynthia.maher@ntscorp.com
Tel:    714.998.4351

</td><td>

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:  david.cohen@gowlings.com

Tel:    416.369.6667
Fax:    416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

</td></tr>
<tr><td>

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:  bdarlington@davis.ca
Tel:    416.365.3529
Fax:    416.369.5210

Email:  jdavissydor@davis.ca
Tel:    416.941.5397
Fax:    416.365.7886

Lawyers for Computershare Trust Company of
Canada

</td><td>

AND
TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:  rschwill@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Email:  mgottlieb@dwpv.com
Tel:    416.863.0900
Fax:    416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

</td></tr>
<tr><td>

AND
TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Email:  slaubman@counsel-toronto.com
Tel:    416.598.1744
Fax:    416.598.3730

Lawyers for William A. Owens

</td><td>

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:  lydia.salvi@bakernet.com

Tel:    416.865.6944
Fax:    416.863.6275

Lawyers for Wipro Limited

</td></tr>
</table>

DOCSTOR: 1600901\2A

22

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:   iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:      416.601.8342
Fax:      416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:      416.865.7370
Fax:      416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:      416.973.3172
Fax:      416.973.0810

23

- 15 -

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND
TO:

**BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:    416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:    416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND
TO:

**LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:    416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:    416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

.24

- 16 -

AND
TO:      **SACK GOLDBLATT MITCHELL LLP**
         20 Dundas Street West
         Suite 1100
         Toronto, Ontario M5G 2G8

         James McDonald
         Darrell Brown

         Email:   jmcdonald@sgmlaw.com
         Tel:     416.979.6425
         Fax:     416.591.7333

         Email:   dbrown@sgmlaw.com
         Tel:     416.979.4050
         Fax:     416.591.7333

         Lawyers for Edmund Fitzgerald


AND
TO:      **STIKEMAN ELLIOTT LLP**
         5300 Commerce Court West
         199 Bay Street
         Toronto, ON  M5L 1B9

         Ashley John Taylor

         Email:   ataylor@stikeman.com
         Tel:     416.869.5236
         Fax:     416.947.0866

         Lawyers for Ciena Corporation


AND
TO:      **FOGLER, RUBINOFF LLP**
         Barristers and Solicitors
         Suite 1200
         Toronto-Dominion Centre
         95 Wellington Street West
         Toronto, Ontario  M5J 2Z9

         Jeffrey K. Spiegelman

         Email:   jspiegelman@foglers.com
         Tel:     416.864.9700
         Fax:     416.941.8852

         Lawyers for Belden (Canada) Inc.


AND
TO:      **STIKEMAN ELLIOTT LLP**
         445 Park Avenue, 7th Floor
         New York, NY  10022

         Gordon Cameron
         Ron Ferguson

         Email:   gncameron@stikeman.com
         Tel:     212.845.7464
         Fax:     212.371.7087

         Email:   rferguson@stikeman.com
         Tel:     212.845.7477
         Fax:     212.371.7087

         Lawyers for GENBAND Inc.

- 17 -

*25*

## COURTESY COPIES:

AND
TO:
**LEWIS AND ROCA**
40 North Central Avenue
Phoenix, Arizona
USA 85004-4429

Scott K. Brown

Email:   sbrown@lrlaw.com

Tel:    602.262.5321
Fax:    602.734.3866

Lawyers for The Prudential Insurance
Company of America

AND
TO:
**CURTIS, MALLET-PREVOST, COLT &
MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061

Steven J. Reisman
James V. Drew

E-mail: sreisman@curtis.com
        jdrew@curtis.com

Tel:    212.696.6000
Fax:    212-697-1559

Lawyers for Flextronics International

AND
TO:
**AKIN GUMP STRAUSS HAUER &
FELD LLP**
One Bryant Park
New York, NY  10036

Fred S. Hodara

Email:   fhodara@akingump.com

Tel:    212.872.1000
Fax:    212.872.1002

U.S. Lawyers for the Official Committee of
Unsecured Creditors

AND
TO:
**MILBANK, TWEED, HADLEY
McCLOY LLP**
1 Chase Manhattan Plaza
New York, NY  10005

Dennis F. Dunne
Andrew M. Leblanc
Albert A. Pisa

Email:   DDunne@milbank.com
Tel:    212.530.5770
Fax:    212.530.5219

Email:   ALeblanc@milbank.com
Tel:    212.835.7574
Fax:    212.530.5219

Email:   APisa@milbank.com
Tel:    212.530.5319
Fax:    212.530.5219

U.S. Lawyers for The Informal Nortel
Noteholder Group

26

- 18 -

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:   mschein@vedderprice.com

Tel:       212.407.6920
Fax:      212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :   andrew.robertson@macleoddixon.com
          caylee.rieger@macleoddixon.com

Tel :      403.267.8222
Fax :      403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:       312.602.5033
Fax:      312.602.5050

U.S. Lawyers for Tellabs, Inc.

27

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

Applicants

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

Proceeding commenced at Toronto

NOTICE OF MOTION
(returnable January 21, 2010)

OGILVY RENAULT LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

DOCSTOR: 1845447\2

**TAB 2**

*28*

Court File No: 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL
NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL
CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AFFIDAVIT OF JOHN DOOLITTLE**
**(sworn January 18, 2010)**

I, John Doolittle, of the city of Oakville, in the Province of Ontario, MAKE OATH AND
SAY:

1.      I am the Senior Vice-President, Finance and Corporate Services of Nortel Networks
Corporation ("NNC") and Nortel Networks Limited ("NNL"). I am also the Treasurer of NNC
and NNL and have held those positions since June 23, 2008. From January 7, 2009 to August
10, 2009, I was the vice-president of Nortel Networks Inc. ("NNI") and from October 14, 2002
to June 12, 2006, I was the Vice-President, Tax for NNC and NNL. As such, I have personal
knowledge of the matters to which I hereinafter depose in this Affidavit. Where I do not possess
personal knowledge, I have stated the source of my information and, in all such cases, believe it
to be true.

2.      I swear this Affidavit in support of the motion to approve, among other things:

        (a)      The Canadian Funding Agreement (defined below);

        (b)      The CRA APA (defined below);

        (c)      The creation and allowance of the NNI Claim (defined below);

*2⁹*

- 2 -

(d)     Approval of NNI Loan Agreement Extension (defined below);

(e)     The Thirteenth Extension of the Canadian GSPA (as both terms are defined below);

(f)     The extension of the Employee Hardship Process (defined below) to April 23, 2010;

(g)     An extension of the Stay Period (as defined in the Initial Order, defined below) to April 23, 2010; and

(h)     Sealing the confidential appendices to the Thirty-Fifth Report (defined below).

3.      References to "Nortel" herein are references to the global enterprise of NNC, NNL, NNI and their respective affiliates as a whole.

4.      All dollar references are US$ unless otherwise indicated.

**BACKGROUND**

5.      On January 14, 2009 (the "Filing Date"), NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") were granted protection under the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") pursuant to an initial order (as subsequently amended and restated, the "Initial Order") of this Honourable Court and Ernst & Young Inc. was appointed as monitor (the "Monitor") in the CCAA proceedings.

6.      Also on January 14, 2009, certain of NNC's U.S. subsidiaries, including its principal U.S. operating subsidiary NNI (together with the other U.S. filing entities, the "Initial U.S. Debtors"), made voluntary filings in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court") under Chapter 11 of the United States Bankruptcy Code (the "Code"). On the same date, this Honourable Court granted an Order pursuant to Section 18.6(4) of the CCAA recognizing the Chapter 11 cases as "foreign proceedings" in Canada and giving effect in Canada to the automatic stay under the Code.

30

- 3 -

7.      Additionally, on January 15, 2009, Nortel Networks UK Limited ("NNUK") and certain subsidiaries of the Nortel group incorporated in Europe, the Middle East or Africa ("EMEA") each obtained an administration order for the appointment of administrators (the "Joint Administrators") from the High Court of England and Wales under the Insolvency Act 1986.

8.      On January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators (the "Joint Israeli Administrators") of the Israeli Company under the Israeli Companies Law.

9.      On February 27, 2009, the U.S. Court granted petitions recognizing these proceedings as "foreign main proceedings" pursuant to Chapter 15 of the Code.

10.     On May 28, 2009, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary insolvency proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months which period was subsequently extended to November 28, 2009.   In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, the French Court approved an order to (i) suspend the liquidation operation relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French administrator and liquidator during that period except with respect to the sale of assets and/or businesses of NNSA.  On November 30, 2009, the French Court approved an order to extend the aforementioned suspension for a further period of three months and authorized the continuation of the business of NNSA during that period.

11.     On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to

3\

- 4 -

NNUK (the "English Proceedings") under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

12.    On July 14, 2009, Nortel Networks (CALA) Inc. (together with the Initial U.S. Debtors, the "U.S. Debtors") made a voluntary filing with the U.S. Court under Chapter 11 of the Code.

13.    Further details regarding the background to these proceedings are set out in my affidavit sworn January 14, 2009 (the "Initial Order Affidavit") previously filed in these proceedings and are therefore not repeated herein.

**CANADIAN FUNDING**

*Nortel's Transfer Pricing Regime*

14.    As was set out in the Initial Order Affidavit as well as my affidavit sworn June 22, 2009 (the "IFSA Affidavit"), Nortel is a highly integrated business with significant distribution and research and development operations around the world. The Initial Order Affidavit set out several of the ways in which business was integrated across international lines, including cost allocation and profit sharing.

15.    NNL, NNI, NNUK, Nortel Networks (Ireland) Limited ("NNIR") and NNSA (collectively, the "Main Nortel Companies"), among others, are or have been the primary source of the research and development that has created Nortel's global technology footprint, the benefits of which are shared across multiple corporate entities within the Nortel group. These five Nortel entities also provide service and support on an ongoing basis to Nortel customers in their respective jurisdictions, as well as certain overhead and institutional support to Nortel entities and customers outside of their jurisdictions. Certain other Nortel companies function primarily as sales operations, acting as intermediaries between the Main Nortel Companies and customers in jurisdictions not served by the Main Nortel Companies, and, in certain circumstances, providing ongoing service and support in their local jurisdictions.

16.    In light of the foregoing, certain Nortel entities, including the Main Nortel Companies, have entered into a number of agreements and have been engaged in certain practices designed

32

- 5 -

both to allow Nortel to operate on a global basis and to allocate profits and losses and certain costs across the corporate entities within the Nortel Group. These agreements include:

(a)    the Master Research and Development Agreement, dated as of December 22, 2004 among NNL, NNI, NNUK, NNIR, NNSA and other affiliates (as amended from time to time, the "Master R&D Agreement"); and

(b)    certain distribution agreements between one or more Nortel entities (the "Distribution Agreements" and together with the Master R&D Agreement, the "Transfer Pricing Agreements").

17.    For a number of years, Nortel has used "transfer pricing" to allocate profits, losses and certain costs among the various Nortel companies. A more detailed description of Nortel's transfer pricing model was set out in my Initial Order Affidavit. Transfer pricing is an accepted method for such allocation, used widely by multinational enterprises similar in structure and geographic scope to Nortel.

18.    In the case of Nortel, the Master R&D Agreement is the governing document pursuant to which the Nortel Group implemented its transfer pricing regime using the residual profit split methodology (the "Nortel Transfer Pricing Regime"). It confirms and formalizes the operating arrangements of the parties thereto at and from January 1, 2001, which is the effective date of the Master R&D Agreement. Among other things, the Nortel Transfer Pricing Regime was designed to determine the arm's length allocation due to each of the parties for their share of the profits and losses arising from "R&D Activity," as that term is defined in the Master R&D Agreement.

19.    In general terms, the Nortel Transfer Pricing Regime historically sought to allocate residual profits and losses among the Main Nortel Companies based on the proportionate share of R&D Activity conducted by, or on behalf of, such affiliates. Among other things, the Nortel Transfer Pricing Regime typically requires that profits, losses and certain costs be allocated among such affiliates during a calendar year under the Transfer Pricing Agreements (the "Transfer Pricing Payments") and that true-up payments are determined after the actual results for the year are known.

33

- 6 -

20.     Within Nortel, NNL holds legal title to of the vast majority of Nortel's intellectual
property assets and, in accordance with the Master R&D Agreement, NNL licenses its
intellectual property to the Main Nortel Companies on a royalty-free basis. NNL has historically
been a net recipient of payments under the Nortel Transfer Pricing Regime given that NNL
generates lower levels of revenue when compared to the high level of corporate overhead and
R&D Activity incurred in Canada.

21.     As was set out in the IFSA Affidavit, Nortel entered into two group supplier protocol
agreements, one between the Applicants and the Joint Administrators on behalf of the EMEA
Debtors and the other between the Chapter 11 Debtors and the Joint Administrators on behalf of
the EMEA Debtors (the "Canadian GSPA" and the "US GSPA", respectively, and together, as
each has been and may be amended from time to time, the "GSPAs"). The GSPAs were entered
into to facilitate the inter-company trading of goods and services subsequent to the Filing Date.

22.     The parties have continued to rely on the GSPAs (which have been extended from time to
time since the Filing Date) in respect of basic trading activity. However, following the
commencement of these proceedings, discussions began with various interested parties,
including Nortel, the Monitor, the Joint Administrators, the Official Committee of Unsecured
Creditors of NNI (the "Creditors' Committee") and the ad hoc Bondholders' Committee (the
"Bondholders' Committee", together with the Creditors' Committee, the "Creditor Groups")
concerning continued payments under the Nortel Transfer Pricing Regime within the context of
Nortel's worldwide insolvency proceedings.

23.     As a result, prior to the IFSA (as defined and discussed below), only one payment had
been made in respect of amounts that could arguably be owed in respect of the Master R&D
Agreement – a January 2009 payment of $30 million by NNI to NNL (the "January Payment").

24.     The lack of payments compensating NNL for corporate overhead and other general
enterprise related costs it incurs on behalf of Nortel globally left NNL with significant liquidity
issues.

34.

- 7 -

*The Interim Funding and Settlement Agreement*

25.     On or about June 9, 2009, after extensive negotiation among various parties including NNL, NNI, the Monitor, the Joint Administrators and the Creditor Groups, the parties reached an interim funding solution and the Applicants, the U.S. Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA"). The IFSA was approved by this Court on June 29, 2009 and by the U.S. Court on the same day.

26.     The IFSA, among other things, authorized funding by NNI to NNL in the amount of $157 million in addition to the January Payment in full and final settlement of interim obligations of the U.S. Debtors, including transfer pricing claims through September 30, 2009, which provided partial financing for the Applicants' operations from the Filing Date through September 30, 2009.

27.     The interim funding period under the IFSA ended on September 30, 2009. NNI has not provided any additional funding to NNL in respect of any period since that date. However, during the period since October 1, 2009, NNL has continued to provide general corporate services ("Services") for the benefit of Nortel generally and NNI in particular. It is further anticipated that NNL will continue to provide Services and incur expenses on an ongoing basis, which services are critical to, among other things, Nortel's ability to provide transition services to the purchasers of the various businesses.

*Discussions since September 2009*

28.     Since September 30, 2009, various interested parties have been discussing the appropriate means to alleviate NNL's liquidity issues. As a result of these discussions, NNI, NNL, the Monitor and the Creditor Groups reached consensus on the form and substance of the Canadian Funding Agreement pursuant to which, among other things, NNL will receive payments from NNI as a full and final settlement of any and all claims that the Applicants may have against the U.S. Debtors in respect of the Services provided to NNI and related expenses incurred by NNL for the Settlement Period (as defined in the Canadian Funding Agreement and described in more detail below), and such payments should provide NNL with sufficient liquidity through the Settlement Period. Additionally, as part of the Canadian Funding Agreement, NNL will acknowledge certain pre-filing intercompany claims in the CCAA proceedings in favor of NNI,

35

- 8 -

including claims for overpayment of amounts under the Master R&D Agreement. These claims
will not be subject to setoff or reduction as described below.

29.      Although Nortel exercised care and diligence in administering the Nortel Transfer Pricing
Regime, certain overpayments may have occurred in the past. In particular, it has been
determined that NNI overpaid NNL during the period from 2001 to 2005. After reviewing the
Nortel Transfer Pricing Regime, NNI and NNL agreed that a $2 billion adjustment was
necessary to rectify the overpayment as discussed below. In order to reach agreement on
Canadian funding, it was also necessary to address the overpayment as well as certain related tax
issues (which tax related issues are discussed in more detail below).

30.      I am also aware that the Monitor will be filing its thirty-fifth report (the "Thirty-Fifth
Report") which will include further details regarding these matters.

*The Canadian Funding Agreement*

31.      Following lengthy negotiations which included NNL, NNI, the Monitor and the Creditor
Groups, on or about December 23, 2009, the Canadian Funding Agreement was executed. In
very broad terms, the Canadian Funding Agreement provides for the following:

   (a)    Payment by NNI to NNL of $190.8 million (subject to adjustment as described in
          the Canadian Funding Agreement) in five installments;

   (b)    Settlement of certain claims by NNL against NNI for goods and services provided
          during the period covered by the Canadian Funding Agreement;

   (c)    Allocation among NNL and NNI of corporate costs for the period covered by the
          Canadian Funding Agreement on a 50% / 50% basis and subject to a subsequent
          true-up based on the allocation of sale proceeds;

   (d)    Allocation of M&A Costs on a transaction-by-transaction basis to be satisfied out
          of sale proceeds;

   (e)    Establishment of a pre-filing claim against NNL in favor of NNI in the amount of
          $2.0627 billion to settle any overpayments made by NNI to NNL during the

3ψ

- 9 -

period 2001 to 2005 and settling certain of the net pre-filing obligations of NNI
and NNL;

(f)     Finalization of the APAs (defined below) between NNI and the Internal Revenue
        Service ("IRS") and between NNL and Canada Revenue Agency ("CRA") for the
        taxable years 2001 to 2005 (which are discussed in further detail below);

(g)     Certain other agreements relating to intercompany bar dates, a cross-border
        claims protocol and an agreement to not exercise any right of termination under
        the Master R&D Agreement; and

(h)     Certain reservations of rights in respect of the allocation of sale proceeds.

32.     The main terms of the Canadian Funding Agreement are as follows (capitalized terms
used below and not otherwise defined have the meanings ascribed thereto in the Canadian
Funding Agreement:

        (a)     *Part A – NNI Funding to NNL; Settlement Matters*:

                (i)     *Settlement Payment.* NNI shall pay to NNL an amount equal to $190.8
                        million, a portion of which may be adjusted by the Parties, pursuant to the
                        Canadian Funding Agreement, payable in five installments.

                (ii)    *Use of Funds.* To the extent NNL seeks to use funds from the Settlement
                        Payment for purposes other than for working capital and those other
                        purposes as reflected in the 13 Week CF Forecast, NNL must obtain the
                        consent for such uses from NNI, the Creditors' Committee and the
                        Bondholders' Committee.

                (iii)   *Settlement.* The Settlement Payment represents (A) the maximum
                        payment that the U.S. Debtors may or could owe in respect of the Covered
                        Obligations[1] for the Settlement Period, (B) the maximum post-filing or

---

[1]     "Covered Obligations" means claims for corporate overhead, research and development costs, or such other
alleged payment or cost reimbursement obligations under any legal theory or contractual or extra-contractual
arrangement including, without limitation, pursuant to Transfer Pricing Agreements, such other agreements between
and among the Nortel entities or otherwise, incurred by any Applicant for the benefit of the U.S. Debtors which any

- 10 -

administrative claim (or such other applicable priority claim) that any of the Debtors may have or could assert against one or more entities in any Proceeding with respect to the Covered Obligations, and (C) constitutes a full and final settlement of any and all Covered Obligations.

(iv) *Indemnity.* Each of NNL and the other Applicants agrees to indemnify each U.S. Debtor from and against any and all claims, damages, taxes, and expenses (including without limitation reasonable attorneys' fees and disbursements) resulting from a claim, demand, lawsuit, action or proceeding relating to, arising from or in connection with (x) Section 1 of the Canadian Funding Agreement, (y) the Transfer Pricing Payments for the calculation period in the applicable Transfer Pricing Agreements in respect of the Settlement Period, or (z) the Covered Obligations. The Applicants shall from time to time reserve reasonable amounts from proceeds of Sales Transactions or IP Transactions allocated, pursuant to the Interim Sales Protocol (as defined in the IFSA) or as agreed by the Selling Debtors (as defined in the IFSA) in accordance with the IFSA, to the Applicants to provide for any Indemnifiable Claims, where the amount of such reserves will be mutually agreed by the Applicants, the U.S. Debtors, the Monitor and the Creditor Groups.

(b) *Part B -- Allocation of Certain Costs:*

(i) *Allocated Corporate Costs.* NNL agrees to use commercially reasonable efforts to recover from Nortel entities a portion of the Allocated Corporate Costs[2] incurred by NNL on behalf of Nortel entities globally, which will

---

Applicant has asserted or could assert (without admission by the U.S. Debtors and subject to Section 23 of the Agreement) and would have been reimbursed to the Applicant through payments (including without limitation Transfer Pricing Payments) payable by the U.S. Debtors to the Applicant during, or with respect to, the period from October 1, 2009 through the later of the conclusion of the CCAA proceedings or the consummation of the wind-down of the Applicants' estates (the "Settlement Period").

[2]    "Allocated Corporate Costs" means the insurance costs (other than property and casualty insurance) paid by NNL, public company compliance costs, including certain audit and accounting fees and related costs, incurred by NNL for the benefit of Nortel, costs for certain officers and employees of NNL that perform global corporate functions and any other costs mutually agreed by the Applicants, the U.S. Debtors, the Monitor, the Creditors' Committee and the Bondholders' Committee.

38

- 11 -

be allocated to those entities (including both NNL and NNI) that are considered to benefit from such costs and to have the financial ability to pay their respective share of such costs. NNL and NNI each agree that it will initially pay fifty percent (50%) of the aggregate Allocated Corporate Costs, respectively, of the Applicants and the U.S. Debtors.

(ii)   *Certain Fixed Payments.* NNL and NNI each agree that it will initially make fifty percent (50%) of Certain Fixed Payments (as defined in the Canadian Funding Agreement); *provided, however*, that it is understood and agreed by the Parties that $62.5 million of the Certain Fixed Payments shall be paid solely by NNI and shall not be shared by NNL or any other Nortel entity, and such payment shall be made by NNI three (3) Business Days following satisfaction in full of all of the Conditions; *provided, further*, that the remaining Certain Fixed Payments, to the extent not recovered from other Nortel entities participating as sellers in the Sale Transactions, will ultimately be adjusted and borne by the Applicants and the U.S. Debtors on an overall weighted average basis in proportion to the amount of the aggregate proceeds of sale allocated to each of such entities from the Sale Transactions.

(iii)  *M&A Costs.* The Parties agree, and shall use reasonable best efforts to cause the other relevant Selling Debtors to agree, to the extent permitted by applicable law, that the M&A Costs[3] incurred by the Applicants or the U.S. Debtors shall be treated as transaction costs and will be recovered by such entities, on a transaction-by-transaction basis, from the respective proceeds of sale from the Sale Transactions prior to any allocation of sale proceeds among the relevant Selling Debtors, participating in each such transaction.

---

[3]   "M&A Costs" mean the following costs and expenses incurred by the Applicants or the U.S. Debtors in connection with the Sale Transactions and sales of other assets of Nortel: (a) fees and expenses of Lazard Ltd; (b) costs and expenses (including professional fees) to prepare carve-out financial statements of the various businesses of Nortel; and (c) salaries of the employees of the Nortel's corporate merger and acquisitions team ("M&A Group") and the cost of other benefits provided to the M&A Group, and any expenses incurred by the M&A Group.

39

- 12 -

(c)   *Part C – Advance Pricing Agreements*:[4]

    (i)   NNL and the Monitor agree that NNL shall, in a timely manner, enter into the CRA APA with the CRA, which shall apply on a retrospective basis, to the five taxable years beginning on January 1, 2001 and ending on December 31, 2005 (the "APA Years").

    (ii)   NNI agrees that NNI shall, in a timely manner, enter into the IRS APA with the IRS, which shall apply on a retrospective basis, to the APA Years.

    (iii)   Each of NNL, the Monitor and NNI shall cooperate with each other in finalizing the terms and conditions of the CRA APA and the IRS APA with the CRA and the IRS, as applicable.

(d)   *Part D – NNI Claim*:

    (i)   The Parties agree that NNL shall allow a $2.0627 billion pre-filing claim in the CCAA Proceedings in favor of NNI (the "NNI Claim") for the full and final settlement of the following claims:

        (1)   any claims the U.S. Debtors have against the Applicants for overpayments to the Applicants under the Transfer Pricing Agreements for, or with respect to, the period from January 1, 2001 to December 31, 2005 (a "NNI TPA Claim");

        (2)   certain claims of NNI against NNL due and owing under that certain Revolving Loan Agreement, dated as of March 21, 2008 (the "Revolving Loan Agreement") between NNI and NNL (a "Revolver Claim"); and

        (3)   any claims of the Applicants for (A) corporate overhead, research and development costs, or such other alleged payment or cost reimbursement obligations pursuant to Transfer Pricing

---

[4] The APAs are described in further detail below.

40

- 13 -

  Agreements or otherwise incurred by any Applicant for the benefit of the U.S. Debtors for the period prior to the Filing Date or (B) relating to pre-filing intercompany trading of goods and services.

(ii) The NNI Claim, unlike other unsecured pre-filing claims against NNL, shall not be subject to any offsets or counterclaims. The priority of the NNI Claim shall be as follows: (A) $2 billion of the NNI Claim shall be a pre-filing unsecured claim against NNL ranking *pari passu* with other unsecured pre-petition claims against NNL and (B) the remaining $62.7 million of the NNI Claim shall constitute the remainder of the secured revolver claim (the "Remaining Revolver Claim") and shall continue to have the benefit of the court-ordered charge in these proceedings relating to the Revolving Loan Agreement.

(iii) The Applicants and the Monitor waive any and all rights to assert any Claims (as defined in the Code) against the U.S. Debtors relating to the period prior to the Filing Date (subject to clause (iv) below);

(iv) The Parties agree that NNI and other U.S. Debtors shall retain the right to assert claims against the Applicants relating to the period prior to the Filing Date, *provided, however,* that the U.S. Debtors shall have no right to assert any NNI TPA Claim or Revolver Claim (other than the Remaining Revolver Claim) against the Applicants (such pre-petition Claim but excluding the NNI Claim (including the Remaining Revolver Claim), NNI TPA Claim or Revolver Claim, an "Additional NNI Claim"). Upon the filing of an Additional NNI Claim in the CCAA Proceedings or subsequent proceedings, the waivers of the Applicants described in clause (iii) above shall automatically terminate and shall be of no further force and effect and the Applicants shall have the right to defend against such Additional NNI Claim, assert counterclaims against the U.S. Debtors in the CCAA Proceedings or subsequent proceedings with regards to such Additional NNI Claim, and assert any additional Claims against the U.S. Debtors in the US Proceedings or subsequent proceedings. For the

41

- 14 -

avoidance of doubt, the filing of one or more Additional NNI Claims by the U.S. Debtors shall in no way affect the obligations and waivers of the Applicants and the Monitor under Section 11 of the Canadian Funding Agreement (which provides that the Applicants and the Monitor irrevocably waive any and all rights to setoff against, assert counterclaims with respect to the amount or validity of, or otherwise reduce the amount of, the NNI Claim) and such obligations and waivers shall continue to be in full force and effect.

(v)     The Parties agree that (i) no Applicant shall establish a deadline for the filing of claims by the U.S. Debtors in the CCAA Proceedings and (ii) no U.S. Debtor shall establish a deadline for the filing of claims by the Applicants in the Chapter 11 Proceedings, without the prior written consent of all other Parties to the Canadian Funding Agreement and the Creditor Groups, which consent shall not be unreasonably withheld or delayed.

(e)   *Part E – Other settlement matters:*

(i)      The Applicants and the U.S. Debtors agree to work with the Monitor, the Creditors' Committee and the Bondholders' Committee to develop and timely seek approval from each of the Courts of a cross-border claims protocol and claims resolution procedures for the resolution of claims filed in the CCAA Proceedings and the Chapter 11 Proceedings, each of which shall be acceptable in form and substance to the Monitor, the Creditors' Committee, and the Bondholders' Committee.

(f)   *Part F – Provisions of general application:*

(i)      Written confirmation has been received from the Creditors' Committee and from counsel to the Bondholders' Committee confirming that they will each file appropriate materials with the applicable Courts in support of the motions by the Applicants and the U.S. Debtors for Court approval of the Canadian Funding Agreement.

42

- 15 -

(ii)    Except as expressly provided in the Canadian Funding Agreement, nothing in the Canadian Funding Agreement shall constitute an amendment, modification or waiver of rights of any Party (i) under any other agreement, including, without limitation, the Transfer Pricing Agreements, applicable law or otherwise, or (ii) with respect to any potential tax contingencies, assessments, rulings or agreements arising from Transfer Pricing Payments pursuant to the Transfer Pricing Agreements or any offset arising therefrom or otherwise; *provided, however*, that the Parties waive any and all rights to object to or otherwise seek to amend or revisit (A) any payments made pursuant to the Canadian Funding Agreement, (B) the APAs, (C) the allowance in full of the NNI Claim (including the Remaining Revolver Claim in the CCAA Proceedings, or (D) the waiver by the Applicants and the Monitor of their rights to setoff or in any way reduce the amount of the NNI Claim (including the Remaining Revolver Claim).

(iii)    Neither the Applicants nor the U.S. Debtors will exercise a right of termination under the Master R&D Agreement without the prior written consent of the other Parties to the Canadian Funding Agreement and the Creditor Groups.

(g)    *Conditions to Effectiveness*:

(i)    Among the conditions to the effectiveness of the Canadian Funding Agreement are the following:

(1)    Approving NNI Loan Agreement Extension (defined below);

(2)    The orders of this Court and the U.S. Court set forth in Section 17.a.i. and Section 17.a.ii. of the Canadian Funding Agreement shall have each become a Final Order.

(h)    *Sealing*

43

- 16 -

(i)    I am aware that a redacted version of the Canadian Funding Agreement
will be attached as an appendix to the Thirty-Fifth Report and that an
unredacted version of the Canadian Funding Agreement will be attached
as a confidential appendix to the Thirty-Fifth Report. Those portions of the
Canadian Funding Agreement that have been redacted contain confidential
information subject to confidentiality agreements. Therefore, the
Applicants are requesting that the unredacted version of the Canadian
Funding Agreement be sealed pending further Order of this Court.

**ADVANCED PRICING AGREEMENTS**

33.    As set out above, the Nortel Transfer Pricing Regime provides for profit and loss
allocations among a core group of Nortel entities. This system relies in part on "advance pricing
agreements" ("APAs") with multiple taxing jurisdictions to achieve a coordinated resolution of
transfer pricing issues. Without such coordination, Nortel could be taxed in multiple
jurisdictions on the same income.

34.    On March 15, 2002, NNL and NNI submitted a joint request for a bilateral APA to the
IRS and the CRA and requested competent authority consideration. As amended, the request
covered the APA Years.

35.    Over the past seven years, the competent authority divisions of the IRS and the CRA
have been engaged in competent authority review regarding a bilateral APA relating to Nortel,
which review eventually resulted in the IRS APA.

36.    On August 25, 2009, the IRS sent NNI a draft APA (the "IRS APA"). On September 14,
2009, the CRA sent NNL an APA (the "CRA APA") (collectively, with the IRS APA, the
"APAs"). Since last fall, discussions have been ongoing with respect to both APAs. On the one
hand, strict deadlines were imposed upon NNL by the CRA as to the deadline for acceptance.
However, at the same time, due to a number of factors, including the complexities associated
with the terms of the APAs, NNL requested further time for consideration. Given the overall
circumstances NNL believes there is urgency with respect to the resolution of these matters and

44

- 17 -

has worked with the Monitor as well as NNI and others in order to agree on the final terms of the CRA APA.

*The CRA APA*

37.    As a result of extensive negotiations involving NNL, the Monitor, the CRA as well as NNI and the IRS, the terms of the APAs, including the CRA APA have now been substantially agreed upon. These terms provide for a negative adjustment to NNL's taxable income for the APA Years of $2 billion.

38.    As part of the CRA APA and related documents, NNL and the Monitor are required to maintain confidentiality of the details of the CRA APA and related documents and discussions.

*The IRS APA*

39.    Concurrently with the negotiations regarding the CRA APA, NNI entered into negotiations with IRS in respect of the claim filed by the IRS in the Chapter 11 proceedings. As a result of those negotiations, NNI has agreed to:

(a)    enter into a stipulation (the "Settlement Stipulation") providing for, among other things, the settlement of the claim filed by the IRS in the Chapter 11 proceedings and NNI's entry into the IRS APA; and

(b)    sign the IRS APA and to file a motion seeking the U.S. Court's approval thereof. Pursuant to the IRS APA, and contingent upon such approval of the U.S. Court, NNI will adjust its taxable income to reflect an increase of $2 billion ratably over the course of the APA Years (the "Income Adjustment"). Solely for tax purposes, to reconcile books of account to the Income Adjustment, the IRS APA will treat NNI as having made a distribution to NNL in the amount of the adjustment for each year that is subject to withholding tax. The IRS's right to such withholding tax will be satisfied in full as provided in the Settlement Stipulation.

40.    I am aware that NNI will be bringing a motion on the same return date as this motion to seek approval of the Settlement Stipulation and the IRS APA in the U.S. Court.

DOCSTOR: 1841685\4