IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 09-10138 (KG) |
| | (Jointly Administered) |
| Nortel Networks Inc., *et al.*, | |
| | Related to D. I. No. 2204 |
| | Objection Deadline: January 19, 2010 |
| | (on consent) |
| | Hearing Date: To be determined |
| Debtors. | |

**OBJECTION OF CYPRESS COMMUNICATIONS INC. TO THE
TWENTY-SIXTH NOTICE OF REJECTION OF EXECUTORY
CONTRACT(S) AND/OR NONRESIDENTIAL REAL PROPERTY
LEASE(S) BY DEBTORS AND DEBTORS IN POSSESSION**

Cypress Communications Inc. ("Cypress"), by and through its counsel, Kelley Drye & Warren LLP, submits this objection (the "Objection") to the above-captioned debtors' (the "Debtors") Twenty-Sixth Omnibus Notice of Rejection of Executory Contracts and/or Nonresidential Real Property Leases (the "Rejection Notice"). [D.I. No. 2204] In support of the Objection, Cypress respectfully represents as follows:

### BACKGROUND

1. On January 14, 2009 (the "Petition Date") each of the Debtors filed voluntary petitions for relief pursuant to chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have continued to operate their businesses and manage their property as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. On or about January 30, 2006, Nortel Networks Inc. ("NNI"), one of the Debtors, and Cypress entered into a Purchase and License Agreement (the "PLA") for the sale of goods and related services by NNI to Cypress.[1]

3. In addition to the sale of goods and services, the PLA also grants Cypress a license to ███ ████████████████████████████████████████ Specifically, the PLA states:



PLA at ¶ 4.

4. On December 1, 2006, NNI and Cypress entered into Amendment No. 1 to Purchase and License Agreement Between Cypress Communications Inc. and Nortel Networks

---

[1] A copy of the PLA has been provided to the Court and filed under seal as Exhibit 1 to this Objection pursuant to a sealing motion filed by Cypress contemporaneously herewith (the "Motion to Seal"). Copies of the PLA and any other sealed documents referenced herein will be provided to other notice parties upon (a) the prior written consent of NNI, as required under the PLA and (b) the written agreement by the receiving parties that it will be treated on a "professional eyes only" basis and will be used only in connection with the Rejection Notice and the Objection.

███████████████████████████████████████

Inc. ("Amendment No. 1").[3] Among other things, Amendment No. 1 amended the PLA by

███████████████████████████████████

5.  Amendment No. 1 references the PLA and expressly provides that:



Amendment No. 1 at ¶ 8.

6.  On or about July 20, 2009, NNI and Cypress entered into Amendment No. 2 to Purchase and License Agreement Between Cypress Communications Inc. and Nortel Networks Inc. ("Amendment No. 2").[4] Among other things, Amendment No. 2 ███

███████████████████████████████████

7.  Amendment No. 2 references the PLA and expressly provides that:



Amendment No. 2 at ¶ 9.

8.  On December 23, 2009, the Debtors served the Rejection Notice on Cypress. The Rejection Notice seeks authority for the Debtors to reject the PLA and Amendment No. 1 pursuant to section 365(a) of the Bankruptcy Code. The Rejection Notice does not seek to reject Amendment No. 2. A copy of the Rejection Notice is attached hereto as Exhibit 4.

---

[3] A copy of Amendment No. 1 has been provided to the Court and filed under seal as Exhibit 2 to this Objection pursuant to the Motion to Seal.

[4] A copy of Amendment No. 2 has been provided to the Court and filed under seal as Exhibit 3 to this Objection pursuant to the Motion to Seal.

9. Each of the PLA, Amendment No. 1 and Amendment No. 2 are governed by New York law. PLA at ¶ 16(c); Amendment No. 1 at ¶ 8; Amendment No. 2 at ¶ 9.

10. On December 23, 2009, the Debtors filed a Motion seeking Orders approving, *inter alia*, the Debtors' entry into an Asset Purchase Agreement (the "APA") with GENBAND, Inc. ("GENBAND") for the sale of the Debtors' Carrier Voice Over IP and Application Solutions business (the "Carrier Division") to GENBAND or such higher or better bidder that may prevail at auction (the "Carrier Sale"), together with certain bid procedures that would govern the sale (the "Bid Procedures Motion"). [D.I. No. 2193]

11. On January 8, 2010, the Court entered an Order (A) Authorizing Debtors' Entry into the Stalking Horse Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving Payment of an Incentive Fee, (D) Approving the Notice Procedures and the Assumption and Assignment Procedures, (E) Authorizing the Filing of Certain Documents Under Seal and (F) Setting a Date for the Sale Hearing (the "Bid Procedures Order"). [D.I. 2259] Pursuant to the Bid Procedures Order, competing bidders for the Carrier Division are required to model their bids on the APA. *See* Bid Procedures Order at 6-7.

## OBJECTION

### A.   The Debtors Cannot Partially Reject the PLA

12. The Debtors' right to reject executory contracts is governed by section 365(a) of the Bankruptcy Code, which states:

> [e]xcept as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

4

13.     The Debtors' election to reject a contract "is an all-or-nothing proposition—either the whole contract is assumed or the whole contract is rejected." *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003). *Accord In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951) (stating, "[i]f [a trustee] accepts the contract he accepts it *cum onere*[;] [i]f he receives the benefits he must adopt the burdens"); *In re Metro Transp. Co.*, 87 B.R. 338, 342 (Bankr. E.D. Pa. 1988) ("recogniz[ing] that assumption or rejection of an executory contract requires an all-or-nothing commitment going forward, and hence a debtor cannot assume part of an executory contract in the future while rejecting another part").

14.     State law governs whether separately executed agreements constitute a single agreement that a debtor must assume or reject *in toto*. *See In re Buffets Holdings, Inc.*, 387 B.R. 115, 120 (Bankr. D. Del. 2008) (holding that the issue of severability under section 365 is a question of state law); *In re Coudert Brothers LLP*, 2009 WL 2868722 *4 (S.D.N.Y.) (holding that state law governs whether separately executed agreements constitute one agreement under section 365); *In re S.E. Nichols Inc.*, 120 B.R. 745, 749 (Bankr. S.D.N.Y. 1990); *In re Ecoventure Wiggins Pass, Ltd.*, 406 B.R. 115, 120 (Bankr. M.D. Fla. 2009).

15.     As a general matter,

> [t]here is no formulaic test under New York law for determining whether a contract is severable. Rather, as with all contract interpretation, severability is a question of the parties' intent, to be determined from the language employed by the parties, viewed in light of the circumstances surrounding them at the time they contracted.

*In re Am. Home Mtg., Inc.*, 379 B.R. 503, 521 (Bankr. D. Del. 2008) (internal quotations omitted). Additionally, "[u]nder New York law, a contract will not be regarded as severable unless (1) the parties' performance can be apportioned into corresponding pairs of performances,

5

and (2) the parts of each pair can be treated as agreed equivalents." *In re Pakope*, 317 B.R. 593 (Bankr. E.D.N.Y. 2004) (internal quotations omitted).

16. When evaluating whether an amendment to an agreement is severable under New York law, courts have held that, "[i]f the original agreement was altered, then New York law mandates characterization of the two agreements as one contract incapable of separate assumption and rejection under the Bankruptcy Code." *Coudert Brothers, LLP*, 2009 WL 2868722 at *4; *see also S.E. Nichols Inc.*, 120 B.R. at 749 (same).

17. As set forth above, Amendment No. 2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Coudert Brothers, LLP*, 2009 WL 2868722 at *4 (holding that New York law requires a finding that an amendment and original agreement are one executory contract a debtor must assume or reject in whole when the amendment modifies the earlier agreement). Amendment No. 2 also expressly evidences the parties' intent that it merely amend the PLA, which otherwise shall continue to govern the terms of the parties' business. *See Am. Home Mtg., Inc.*, 379 B.R. at 521 (recognizing that the parties' intent determines whether a contract is severable under New York law); *Pakope*, 317 B.R. at 599 (holding that a contract is not severable when its various promises are interrelated and cannot be "apportioned into corresponding pairs").

18. These facts establish that Amendment No. 2 is not severable under New York law and, accordingly, notwithstanding the Debtors' failure to list Amendment No. 2 on the Rejection Notice, rejecting the PLA necessarily will reject Amendment No. 2 as well.

B.  **The Debtors' Request to Reject the PLA is Premature**

19.  The PLA is a "Bundled Contract" under the APA.[5] Pursuant to section 5.14(b) of the APA, the Debtors have agreed to work with GENBAND (or the successful bidder for the Carrier Division) to preserve Bundled Contracts for at least 180 days post-closing to allow the purchaser the opportunity to negotiate with parties like Cypress concerning the assignment of all or a portion of their agreements as part of the Carrier Sale.  APA at § 5.14(b).

20.  By seeking to reject the PLA before this period has expired, or even before bids for the Carrier Division are due, the Debtors have breached the APA, and rejection of the PLA will deprive GENBAND or any other bidder of the opportunity to designate the PLA for assignment or otherwise negotiate a transfer of the PLA from Cypress pursuant to the Carrier Sale.

C.  **If the PLA is Rejected, Cypress Will Exercise its Rights Under 11 U.S.C. § 365(n)**

21.  If the Court enters an Order authorizing the Debtors to reject the PLA, Cypress hereby elects to retain its rights under the PLA pursuant to section 365(n)(1)(B) of the Bankruptcy Code, which provides:

> If the trustee rejects an executory contract under which the debtor is a licensor of a right to intellectual property, the licensee under such contract may elect—
>
> * * *
>
> (B) to retain its rights (including a right to enforce any exclusivity provision of such contract, but excluding any other right under applicable nonbankruptcy law to specific performance of such contract) under such contract and under any agreement supplementary to such contract, to

---

[5]  Pursuant to the APA, "Bundled Contracts" include contracts entered by NNI "providing for the sale or provision of CVAS Products or CVAS Services and the sale or provision of other products or services of the Sellers or their Affiliates." APA at § 5.14(a). The PLA is a Bundled Contract because it covers goods and services NNI sells through the Carrier Division and previously sold through its Enterprise Division.

7

such intellectual property (including any embodiment of such intellectual property to the extent protected by applicable nonbankruptcy law), as such rights existed immediately before the case commenced, for—

  (i) the duration of such contract; and

  (ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law.

11 U.S.C. § 365(n).

## CONCLUSION

WHEREFORE, Cypress respectfully requests that the Court deny the Debtors' request to partially reject the PLA and grant such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
       January 19, 2010

Respectfully submitted,

**MESSANA ROSNER & STERN, LLP**

By: /s/ *Frederick B. Rosner*
    Frederick B. Rosner (DE Bar No. 3995)
1000 N. West Street
Suite 1200
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: frosner@mrs-law.com

- and -

**KELLEY DRYE & WARREN LLP**
James S. Carr
Kristin S. Elliott
101 Park Avenue
New York, New York 10178
Tel:   (212) 808-7800
Fax:  (212) 808-7894
Email: jcarr@kelleydrye.com
       kelliott@kelleydrye.com

*Counsel for Cypress Communications, Inc.*