## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | ) Chapter 11 |
| | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) Jointly Administered |
| | ) |
| Debtors. | ) <u>Objection Deadline:</u> **February 8, 2010 at 4:00 pm (ET)** |
| | ) <u>Hearing Date:</u> **Scheduled only if necessary** |
| | ) |

## TENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM <u>NOVEMBER 1 TO NOVEMBER 30, 2009</u>
### (All Amounts in Canadian Dollars)

This is a(n): <u>x</u> monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | <u>Fraser Milner Casgrain LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>March 5, 2009 (nunc pro tunc to January 26, 2009)</u> |
| Period for which Compensation And Reimbursement is sought: | <u>November 1 to November 30, 2009</u> |
| Amount of Compensation sought as actual, reasonable and necessary: | <u>CDN $403,398.45 (Fees $384,189.00 Plus Taxes $19,209.45)</u> <u>Equivalent to USD $394,039.60[2]</u> |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | <u>CDN $6,810.78 (Expenses $6,486.46 Plus Taxes $324.32 )</u> <u>Equivalent to USD $6,652.77[2]</u> |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Ninth Monthly Fee Application was 8.40 hours and the corresponding compensation is CDN. $6,394.50 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on January 15, 2010 was CDN. $0.9768 : U.S. $1.00

### SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### NOVEMBER 1, 2009 THROUGH NOVEMBER 30, 2009
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|-----------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 20.0 | $775.00 | $15,500.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 64.6 | $775.00 | $50,065.00 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 3.0 | $750.00 | $2,250.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 108.4 | $750.00 | $81,300.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 16.9 | $725.00 | $12,252.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 162.6 | $725.00 | $117,885.00 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 9.1 | $700.00 | $6,370.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 28.9 | $675.00 | $19,507.50 |
| Paul, S.E. | Partner | Competition/Anti-Trust | Ontario - 1983 | 3.1 | $675.00 | $2,092.50 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 12.2 | $600.00 | $7,320.00 |
| Woodbury, C.D. | Partner | Employment/Pension/ Research | Ontario - 1981 | 21.5 | $650.00 | $13,975.00 |
| Dietrich, J. | Associate | Financial Restructuring | Ontario - 2004 | 0.6 | $480.00 | $288.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 2.2 | $400.00 | $880.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 52.9 | $350.00 | $18,515.00 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 64.0 | $295.00 | $18,880.00 |
| North, A.R. | Associate | Financial Restructuring | Ontario - 2009 | 48.3 | $295.00 | $14,248.50 |
| Shay, R. | Consultant | Corporate | Ontario - 1979 | 4.4 | $650.00 | $2,860.00 |
| TOTAL | | | | 622.7 | CDN. | $384,189.00 |

**COMPENSATION BY PROJECT CATEGORY**
**NOVEMBER 1, TO NOVEMBER 30, 2009**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 0.2 | $145.00 |
| FMC Fee Application/Monthly Billing Reports | 11.4 | $8,265.00 |
| Creditors Committee Meetings | 31.2 | $22,740.00 |
| Court Hearings | 22.8 | $17,100.00 |
| Financial Reports and Analysis | 2.3 | $1,782.50 |
| DIP, Cash Collateral Usage and Exit Financing | 0.5 | $387.50 |
| General Claims Analysis/Claims Objections | 0.2 | $155.00 |
| Analysis of Pre-Petition Transactions | 3.7 | $2,775.00 |
| General Adversary Proceedings | 0.8 | $600.00 |
| Tax Issues | 16.1 | $11,570.00 |
| Labour Issues/Employee Benefits | 225.9 | $126,233.00 |
| Real Estate Issues/Leases | 18.7 | $13,570.00 |
| Telecommunications/Regulatory | 40.3 | $25,035.00 |
| Asset/Stock Transaction/Business Liquidations | 80.1 | $57,101.50 |
| Intercompany Analysis | 65.6 | $42,133.50 |
| Committee Website | 0.4 | $310.00 |
| Canadian Proceedings/Matters | 102 | $53,906.00 |
| U.S. Proceedings/Matters | 0.5 | $380.00 |
| **Total** | **622.7** | **$384,189.00** |

## DISBURSEMENT SUMMARY
## NOVEMBER 1 TO NOVEMBER 30, 2009
## (All Amounts in Canadian Dollars)

Taxable Disbursements

| | |
|---|---|
| Airfare/Travel | $1,038.28 |
| Fax Charges | $    6.50 |
| Library Computer Research | $1,286.84 |
| Long Distance Telephone Calls | $  388.76 |
| Meals & Beverages | $  566.86 |
| Parking | $    21.02 |
| Photocopy Charges | $2,510.00 |
| Taxi Charges (Courier) | $  668.20 |
| | |
| Total Taxable Disbursements | $6,486.46 |
| Total GST | 324.32 |
| Total Taxable Disbursements including Taxes | **$6,810.78 CDN.** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                                       :
In re                                                  : Chapter 11
                                                       : Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                      : Jointly Administered
                                                       :
                        Debtors                        : **Objection Deadline: February 8, 2010 at 4:00 pm (ET)**
                                                       : **Hearing Date: Scheduled only if necessary**
-------------------------------------------------------X

**TENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP,**
**CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE**
**OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF**
**COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES**
**FOR SERVICES RENDERED DURING THE PERIOD FROM**
**NOVEMBER 1, 2009 THROUGH NOVEMBER 30, 2009**

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its tenth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $403,398.45 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number,
are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769);
Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251);
Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical
Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel
Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable
Solutions Inc. (0567).

$384,189.00 for fees and CDN. $19,209.45 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $6,810.78 (CDN. $6,486.46 for expenses and CDN. $324.32 for applicable Canadian taxes) for the period from November 1 through November 30, 2009 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian Court.

5.     On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.     On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.     On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.     On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has

received payment of such amounts.

9.    On September 10, 2009, FMC filed its Second Interim Fee Application Request

for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its

Second Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court

entered an order approving 100% of the fees and expenses sought in the Second Interim

Application, and FMC has received payment of such amounts.

10.    On February 25, 2009, FMC filed its Third Interim Fee Application for the period

from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an

order approving 100% of the fees and expenses sought in the Third Interim Application, and

FMC has received payment of such amounts.

### III.    RELIEF REQUESTED

11.    By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $403,398.45(CDN. $384,189.00 for fees and CDN. $19,209.45 for applicable Canadian

taxes) representing 622.70 hours in professional services; and (ii) reimbursement of actual and

necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $6,810.78 (including applicable Canadian taxes).

12.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $322,718.76 including applicable Canadian taxes) and 100% of its expenses (CDN. $6,810.78 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

13.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

14.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.    SUMMARY OF SERVICES RENDERED

15.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

16.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In

accordance with the provisions of the Administrative Fee Order, a compilation showing the name

of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the

Committee during the Compensation Period is annexed hereto as Exhibit B.

17.    In the ordinary course of its practice, FMC also maintains records of all actual and

necessary out-of-pocket expenses incurred in connection with the rendition of its professional

services, all of which are available for inspection. A schedule of the categories of expenses and

amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed

summary of the expenses is attached hereto as Exhibit D.

18.    FMC respectfully submits that the professional services that it rendered on behalf

of the Committee were necessary and appropriate, and have directly and indirectly contributed to

the effective administration of these chapter 11 cases, including the Committee's interest in the

Canadian Proceeding.

19.    The following summary of services rendered during the Compensation Period is

not intended to be a detailed description of the work performed, as those day-to-day services and

the time expended in performing such services are fully set forth in Exhibit B. Rather, it is

merely an attempt to highlight certain of those areas in which services were rendered to the

Committee, as well as to identify some of the problems and issues that FMC was required to

address.

## Case Administration

(Fees: CDN. $145.00 plus CDN. $7.25 taxes; Hours 0.20)

20.    During the Compensation Period, FMC routinely held internal meetings with the

professionals assigned to this matter to ensure that FMC was representing the Committee in the

most efficient matter with the least cost to these estates with respect to the Canadian Proceeding.
FMC ensured that it coordinated its activities with those of Akin Gump and the other
professionals acting on behalf of the Committee, including Jefferies and Capstone.

21.     FMC believes it was able to efficiently address all issues relating to the case
administration that have arisen during the pendency of the Canadian Proceeding and the
Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $53,906.00 plus CDN. $2,695.30 taxes; Hours 102.00)

22.     During the Compensation Period, FMC reviewed and analyzed the amended and
restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in
connection with various issues and transactions arising in the Canadian Proceeding. FMC also
reviewed and analyzed successive motions filed by the Canadian Debtors and others parties in
the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested
in the proposed order, participated in conference calls and in-person meetings with the Monitor
(as that term is defined below), Nortel Debtors' Canadian counsel, as well as other major
stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC
conducted diligence on the subject matter of each motion in order to determine the effect that the
relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the
interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In
connection therewith FMC, along with Akin Gump, participated in numerous conference calls
with the Debtors' professionals and the Monitor (as that term is defined below) and its
professionals, to discuss the relief requested in the Canadian Proceeding. FMC, with the
assistance of Akin Gump, ensured that the Committee had a complete understanding of the

Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

23.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors.  FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $8,265.00 plus CDN. $413.25 taxes; Hours 11.40)

24.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings

(Fees: CDN. $22,740.00 plus CDN. $1,137.00 taxes; Hours 31.20)

25.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

26.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding.  Thereafter, FMC

discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

27.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

### Court Hearings

(Fees: CDN $17,100.00 plus CDN. $855.00 taxes; Hours 22.80)

28.     This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Asset Sales

(Fees: CDN $57,101.50 plus CDN. $2,855.08; Hours 80.10)

29.     FMC spent considerable time during the Compensation Period working closely with the Nortel Debtors, Akin Gump and the Committee's other advisors and the advisors of the Nortel Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets. Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, as well as professionals for the other major creditor constituents to evaluate and analyze divestiture options for the metro ethernet networks ("MEN"), GSM/GSM-R ("GSM") businesses. In that regard, FMC worked closely with the Committee's other advisors to evaluate third party bids for those assets, assess and analyze transaction issues, negotiate transaction agreements with potential stalking horse candidates, and advise the Committee on those issues through detailed memoranda and numerous telephonic conferences. In addition, FMC continued its active involvement, on behalf of the Committee, with Akin Gump, in finalizing documentation of and facilitating the completion of the sales transactions related to the Nortel Debtors' CDMA/LTE and enterprise solutions businesses. The closing of the CMDA/LTE transaction occurred on November 13, 2009, and the closing of the enterprise solutions transaction occurred on December 18, 2009.

*MEN Sale*

30.     During the Compensation Period, FMC attorneys spent considerable time working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' MEN business (the "MEN Sale"). On October 7, 2009, the Nortel Debtors announced that Ciena Corporation ("Ciena") was selected as

the stalking horse bidder for the MEN Sale.  Following the Committee's filing and successful

prosecution of an objection to the Debtors' motion to approve proposed bidding procedures

related to the MEN Sale (the "MEN Bidding Procedures Motion"), this Court entered an order

approving the MEN Bidding Procedures Motion in a form acceptable to the Committee on

October 16, 2009.  An auction with respect to the MEN Sale took place over the three day period

from November 20-22, 2009.  As this Court is aware, Ciena was selected as the successful bidder

at the auction with a purchase price of approximately $769 million, a substantial increase from

its stalking-horse bid.  Unsuccessful bidder MEN Acquisition LLC ("MEN Acquisition")

subsequently submitted an all-cash bid of $810 million approximately ten days after the Debtors

declared the auction concluded (the "New Bid").  In an effort to maximize value for the Debtors'

creditors, FMC attorneys worked with MEN Acquisition and the Nortel Debtors' professionals to

evaluate the New Bid and negotiate certain conditions related thereto, and to prepare to advocate

for the re-opening of the auction to recognize the New Bid as the highest and best offer for the

MEN business.  Following a contested joint hearing of the U.S. and Canadian Courts, an order

approving the MEN Sale to Ciena was entered on December 3, 2009.  Since that date, FMC

attorneys have continued working with Akin Gump, and the professionals for the Nortel Debtors

and Ciena to negotiate and finalize documentation necessary for the successful consummation of

the transaction.

*GSM Sale*

31.     FMC attorneys also spent considerable time during the Compensation Period

working with the Committee's other professionals and professionals for the Nortel Debtors,

negotiating and documenting the terms of a sale of the Nortel Debtors' GSM business (the "GSM

Sale").  In connection therewith, FMC attorneys reviewed, commented on, and negotiated

underlying documentation, including the form of proposed bidding procedures and related sale

motion (the "GSM Bidding Procedures Motion") and held numerous conference calls with the

Committee's other professionals and the Committee to ascertain and develop the Committee's

position on the proposed procedures and transaction. This Court subsequently entered an order

approving the GSM Bidding Procedures Motion on October 15, 2009. An auction with respect

to the GSM Sale took place on November 24, 2009 at which a joint bid by Telefonaktiebolaget L

M Ericsson ("Ericsson") and Kapsch Carriercom AG ("Kapsch" and together with Ericsson, the

"GSM Purchasers") was declared the successful bid with a purchase price of approximately $103

million. Following a joint hearing of the U.S. and Canadian Courts, an order was entered

approving the GSM Sale to the GSM Purchasers on December 2, 2009.

*CDMA/LTE Sale*

        32.     Since the approval on July 28, 2009 by the U.S. and Canadian Courts of the sale

of the CDMA/LTE assets to Ericsson, FMC attorneys, working together with Akin Gump

attorneys, continued their active involvement in reviewing, commenting on, and negotiating all

underlying documentation necessary to timely consummate the transaction. In connection

therewith, FMC attorneys, together with professionals from Akin Gump, Jefferies and Capstone

participated in numerous meetings and conference calls with professionals for the Nortel

Debtors, Ericsson and other major stakeholders, to negotiate and finalize underlying

documentation. As previously noted, these efforts culminated in the closing of the sale of the

CDMA/LTE assets to Ericsson on November 13, 2009, and the Nortel Debtors' receipt of

approximately $1.12 billion of sale proceeds.

*Enterprise Sale*

33.     Finally, since the approval by the U.S. and Canadian Courts of the sale of the

Nortel Debtors' enterprise solutions business (the "Enterprise Sale") to Avaya Inc. ("Avaya") on

September 16, 2009, FMC attorneys have continued working with Akin Gump, together with the

professionals for the Nortel Debtors and Avaya to negotiate and finalize documentation

necessary for the successful consummation of the transaction. These efforts resulted in the

closing of the Enterprise Sale to Avaya on December 18, 2009, and the Nortel Debtors' receipt of

approximately $900 million of sale proceeds.

## Labor and Employee Benefits Issues

(Fees: CDN. $126,233.00 plus CDN. $6,311.65 taxes; Hours 225.90)

34.     This subject matter relates to services rendered by FMC in connection with the

analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC lawyers spent time analyzing the pension and employee related

issues raised by the various asset divestitures described herein, and where appropriate,

commented on and negotiating the underlying documentation of such transactions. Further,

FMC attorneys analyzed the impact of potential claims that could be asserted by the Ontario

pension regulator on certain of assets being sold in the various divestiture processes.

35.     FMC attorneys also spent time during the compensation period reviewing the

proofs of claim and related materials filed jointly by the Nortel Networks UK Pension Trust

Limited and the Board of the Pension Protection Fund against each of the U.S. Debtors and

Canadian Debtors (collectively, the "UK Pension Claims") in their respective Insolvency

Proceedings. In connection therewith, FMC attorneys conferred with Ashurst and Akin Gump to

analyze the alleged legal basis for such claims, and to evaluate potential strategies with respect to

the UK Pension Claims. FMC, together with Ashurst and Akin Gump, prepared a detailed memorandum for the Committee analyzing the legal issues relating to the UK Pension Claims.

36.     During the Compensation Period, FMC attorneys spent considerable time reviewing material relating to Sun Life Canada annuities held by NNL and preparing for a court hearing to be heard by the Canadian Court regarding the beneficial ownership of such annuities. FMC attorneys attended to such court hearing on November 30, 2009 to represent the interests of the Committee (the decision of the Canadian Court on this issue has not yet been issued).

### Real Estate Issues/Leases

(Fees: CDN. $13,570.00 plus CDN. $678.50 taxes; Hours 18.70)

37.     This subject matter relates to time spent by FMC lawyers on matters relating to the real estate assets of the Canadian Debtors. During the Compensation Period, FMC lawyers, in consultation with Akin Gump, Capstone and Jefferies, continued an analysis of the Canadian Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property. FMC lawyers also assessed issues and negotiated documents in the Canadian Proceeding relating to the proposed sale transactions as they relate to Canadian real estate issues.

### Intercompany Analysis/Canadian Funding Issues

(Fees: CDN. $42,133.50 plus CDN. $2,106.68 taxes; Hours 65.60)

38.     As the Court may recall, earlier in these Insolvency Proceedings, the Committee engaged in lengthy negotiations with the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group to address the Canadian Debtors' liquidity issues. Those negotiations resulted in the Canadian, U.S. and EMEA Debtors entering into the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "Interim Funding Agreement"). The Interim Funding Agreement provided the Canadian Debtors funding, and fully and finally resolved any and all postpetition cost reimbursement type claims of the Canadian Debtors against the U.S.

Debtors through September 30, 2009. The Canadian Debtors continue to have liquidity issues and, therefore, during the Compensation Period, the Canadian Debtors, the Monitor and the U.S. Debtors approached the Committee to discuss a final funding solution. FMC together with Akin Gump, on behalf of the Committee, spent considerable time during the Compensation Period participating in several in-person and telephonic meetings with the Nortel Debtors, the Monitor and the Ad Hoc Bondholder Group to consider and evaluate potential funding options in the context of various intra-estate issues that require resolution in these cases, and to negotiate and document an agreement for the final funding of the Canadian Debtors (the "Final Canadian Funding and Settlement Agreement"). The Final Canadian Funding and Settlement Agreement provides for, among other things: (a) payment by NNI to NNL of $190.8 million (subject to adjustment); and (b) the establishment of a valid and enforceable pre-filing claim (not subject to setoff or reduction) in favor of NNI against NNL in the Canadian Proceeding (the "NNI Claim") in the amount of $2,062,700,000 in part on account of certain tax-related income adjustments, as described herein titled "Tax Issues". On December 23, 2009, the Debtors filed a motion to approve the Final Canadian Funding and Settlement Agreement, which motion will be heard by this Court on January 21, 2010.

39.    As required by the terms of the Interim Funding Agreement, FMC together with Akin Gump, on behalf of the Committee, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding the protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates. FMC together with Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a ?? for the allocation of sale proceeds.

### Telecommunications/Regulatory/Intellectual Property

(Fees: CDN. $25,035.00 plus CDN. $1,251.75 taxes; Hours 40.30)

40.      FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets. Additionally, during the Compensation Period, FMC lawyers analyzed documents in connection with the various asset sale processes described above and assessed regulatory issues in connection therewith, as well as examining the intellectual property issues associated with such divestitures.

### Tax Issues

(Fees: CDN. $11,570.00 plus CDN. $578.50 taxes; Hours 16.10)

41.      This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors. During the Compensation Period, FMC continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the legacy transfer pricing system between, among others, the Debtors and the Canadian Debtors. In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the senior management of the Debtors and their respective advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

## V.      ALLOWANCE OF COMPENSATION

42.      The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered

to the Committee were performed efficiently, effectively and economically, and the results

obtained to date have benefited not only the members of the Committee, but also the unsecured

creditor body as a whole and the Debtors' estates.

43.     The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

44.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

45.     The total time spent by FMC lawyers during the Compensation Period was 622.70 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

46.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $6,810.78 (CDN. $6,486.46 for expenses and CDN. $324.32 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

47.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

48.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually

used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

49.      No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

50.      No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)     approve the allowance of CDN. $403,398.45 (CDN. $384,189.00 for fees and CDN. $19,209.45 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from November 1, 2009 through and including November 30, 2009;

(b)     approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period November 1, 2009 through and including November 30, 2009 in the amount of CDN. $6,810.78 (CDN. $6,486.46 for expenses and CDN. $324.32 for applicable Canadian taxes) ; and

(c)     authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $329,529.54 (USD $321,884.45[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          January 19, 2010

                    **FRASER MILNER CASGRAIN LLP**

                    By: _____

                        Michael J. Wunder (*pro hac vice*)
                        A Member of the Firm

                        Suite 3900
                        1 First Canadian Place
                        100 King Street West
                        Toronto, Ontario  M5X 1B2
                        (416) 863-4511
                        Canadian Counsel to the Official Committee of
                        Unsecured Creditors

---

[2] Reuters Exchange Rate as of close of business on January 15, 2010 was CDN. $0.9768 : U.S. $1.00