**EXHIBIT D**

**Kois, Maria**

**Subject:** Nortel - US Motion to approve Canadian Funding Agreement
**Attachments:** document2010-01-12-162108.pdf

---

**From:** GALE, STEPHEN
**Sent:** 12 January 2010 21:04
**To:** jpasquariello@goodmans.ca; James L BROMLEY
**Subject:** Nortel - US Motion to approve Canadian Funding Agreement

Jim and Joe

I attach a letter which outlines some concerns the Joint Administrators have to the the Canadian Funding Agreement which is subject to court approval on 21 January 2010. I thought it would be helpful if I set out these concerns in detail. I am hopeful our concerns will be able to be readily resolved between ourselves.

To give us time to discuss these issues, I request that the US Debtors grant us an extension to file any objection to the US motion to Monday 18 January 2010, 4:00pm (EST). Would you be able to let me know by COB today whether the US Debtors are prepared to grant us this extension?

Otherwise let me know when we can discuss the contents of this letter.

Many thanks

Kind regards

Steve

**Stephen Gale**
Partner
Herbert Smith LLP
Email: stephen.gale@herbertsmith.com
Tel: 020 7466 2878
Fax: 020 7098 4878
Mobile: 07785 254901

20/01/2010

# Herbert Smith

Goodmans LLP
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON
M5H 2S7
**For the attention of Joe Pasquariello**

Cleary Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
**For the attention of Jim Bromley**

Herbert Smith LLP
Exchange House
Primrose Street
London EC2A 2HS
T +44 (0)20 7374 8000
F +44 (0)20 7374 0888
DX 28

www.herbertsmith.com

Our ref
308899402/ 2878/ 1403
Your ref

Date
12 January 2010

Dear Jim and Joe

**Canadian Funding Agreement entered into by Nortel Networks Inc ("NNI") and Nortel Networks Limited ("NNL"), amongst others**

I write on behalf of the Joint Administrators for each of the EMEA filed entities, in particular Nortel Networks UK Limited ("NNUK"), Nortel Networks (Ireland) Limited ("NN Ireland") and Nortel Networks SA ("NNSA") (collectively "EMEA Debtors").

I note from court filings that the US and Canadian Debtors entered into a Canadian Funding Agreement ("CFA") on 23 December 2009. I also note that the motion for approval of the CFA is set down for a joint hearing on 21 January 2010 with objections to be filed (in the US proceedings) by 14 January 2010.

As you know, although NNL has not formally called for proofs of claims from intercompany creditors, it is likely several EMEA Debtors will be substantial creditors of the Canadian Debtors. As well, each of the EMEA Debtors have entered into intercompany agreements with the Canadian Debtors.

The Joint Administrators have now had an opportunity to review the CFA. There are a few matters which we have concerns about and which we would appreciate some clarification on from you. I anticipate that these matters should be able to be readily resolved between us without the need for formal objections or reservation of rights being made to the court. However, I am also conscious that the date to file objections with the US court is 14 January 2010. To enable us to discuss our concerns and seek the clarification that we require, I ask that the date for filing objections be extended for the EMEA Debtors until 4:00pm (EST) on 18 January 2010. Please confirm that NNI is prepared to grant us this extension.

Herbert Smith LLP is a limited liability partnership registered in England and Wales with registered number OC310989. It is regulated by the Solicitors' Regulation Authority of England and Wales. A list of the members and their professional qualifications is open to inspection at the registered office, Exchange House, Primrose Street, London EC2A 2HS. We use the word partner to refer to a member of Herbert Smith LLP, or an employee or consultant with equivalent standing and qualifications.

10/25475995_2


Herbert Smith in association with
Gleiss Lutz and Stibbe

# Herbert Smith

I set out our concerns below. I am, of course, happy to discuss these with you and, hopefully, to reach a resolution to them prior to 18 January 2010.

**Settlement of Covered Obligations**

Clause 3 of the CFA states, inter alia, that the Settlement Payment is in full and final settlement of the Covered Obligations (as defined) and represents the maximum post-filing or administrative claim (or such other priority claim) that any of the **Debtors** (excluding the US Debtors) may have or could assert against one or more US Debtor in any proceeding with respect to the Covered Obligations. Debtors are defined in the CFA to include the EMEA Debtors. Obviously the EMEA Debtors are not a party to the CFA nor have they approved it or acceded to it. I am, therefore, puzzled as to why the CFA purports to prejudice the EMEA Debtors' rights to bring any claim (whether or not post-filing or administrative in nature or otherwise) against one or more of the US Debtors, especially in light of the fact that the CFA is to be approved by both the Canadian and the US Courts. I note that paragraph 33 of the US motion supporting the CFA states that this provision is only intended to be the maximum post-filing or administrative claim that any of the *Canadian Debtors* may have or could assert against one or more of the Debtors in any proceeding with respect to the Covered Obligations. Which statement, if either, correctly reflects the intent of the parties to the CFA? I would appreciate this concern being resolved by way of a minor amendment that makes abundantly clear that this provision only relates to the Canadian Debtors as against the US Debtors.

Second, the Covered Obligations relate to transfer pricing agreements, including the MRDA. As you will appreciate the MRDA is not a bilateral agreement, but a multilateral agreement between NNI, NNL, NNUK, NNSA and NN Ireland. Under that agreement NNL operates not only in its own right but also as "administrative agent" on behalf of the parties to that agreement. The CFA cannot prejudice any rights that NNUK, NNSA or NN Ireland have under the MRDA, including to call for the due performance of the agreement or to require NNL to act or bring any claim on its behalf. Equally nothing in the CFA can alter the content or effect of the MRDA insofar as it relates to NNUK, NNSA or NN Ireland. Given the broad way clause 3 is drafted, the agreement could potentially impact the rights of NNUK, NN Ireland and NNSA under the MRDA I therefore request that appropriate wording be included in the CFA or by way of side letter that makes clear that the rights of NNUK, NN Ireland and NNSA are unaffected by the CFA.

Third, I note that clause 4 of the CFA requires the Canadian Debtors to indemnify the US Debtors and to also reserve reasonable amounts from Sales Transactions or IP Transactions (as defined) to provide for any indemnified claims. Please confirm that any amounts that the Canadian Debtors reserve for this purpose will not be taken into account by the Monitor, the Creditors' Committee and the Bondholders' Committee in determining NNL's liquidity pursuant to the NNL Liquidity Review Procedures pursuant to clause 5 of the IFSA. Otherwise, this provision could affect the ability of the EMEA Debtors to recover the Shortfall Payments under the IFSA.

Fourth, I would generally appreciate some clarification as to the intent behind clauses 3 and 4 of the CFA. These provisions seem to suggest that the Canadian Debtors will be precluded from claiming against the US Debtors if a subsequent transfer pricing claim is made against the Canadian Debtors for which they would be entitled to, in turn, seek payment from the US Debtors. If this is the case, then the Joint Administrators require some information as to how an appropriate settlement amount:

Herbert Smith in association with
Gleiss Lutz and Stibbe

# Herbert Smith

(a) was determined and calculated; and

(b) can be supported without the knowledge of what other transfer pricing claims are, or are likely to be made.

**IRS Claim**

I note that the CFA also deals with intercompany claims between the Canadian and US Debtors, in particular in relation to a $2.067 billion IRS claim. Under the terms of the CFA the IRS claim is accepted by NNL. Further the part of that claim is secured and the unsecured portion is allowed free from any set-off or counterclaim which will apply to other unsecured claims.

I anticipate that the Monitor's report that will be filed in connection with the motion to approve the CFA will provide an appropriately comprehensive summary of the settlement of the IRS claims and the rationale for supporting the claims of the US Debtors against the Canadian Debtors (including the secured versus unsecured portions). Such detail will assist the Joint Administrators in fulfilling their diligence requirements in connection with this issue. If an appropriately comprehensive summary will not be provided in the Monitor's report for confidentiality reasons or otherwise, then the Joint Administrators would appreciate a meeting with the Monitor to better understand this aspect of the settlement in order to fulfil their diligence requirements.

In that report or discussion we would expect the following to be addressed:

(a) Clause 11 of the CFA appears to suggest that court approval will be sought in order to approve and allow the IRS claim as an intercompany claim against the Canadian Debtors prior to a formal intercompany claims process being established. Further, the Canadian Debtors have agreed that they will waive any intercompany claims available to the Canadian Debtor (pre- petition) as against the US Debtor. Conversely, the US Debtors only restrictions on claiming against the Canadian Debtors relate to the matters which have been settled by the CFA. It would be helpful to understand the rationale behind this element of the CFA.

(b) We understand that the IRS claim itself relates to an alleged overpayment by the US Debtors pursuant to the transfer pricing agreements. As you will appreciate we do not have the necessary details to evaluate the IRS claim or the basis on which the Canadian Debtors have decided to admit this claim. We look forward to receiving more information, including in relation to:

    a. the basis that this claim and its quantum has been admitted by NNL;
    b. the taxation implications for the Canadian Debtors, including in relation to tax refunds from the Canada Revenue Agency; and
    c. Whether the NNL is intending to seek to recover any of this amount from any other party, including the EMEA Debtors. From the information we currently have, we would be concerned if having accepted and prioritised this claim in the manner which it has, NNL could seek to claim these amounts from any other Nortel entity.

Herbert Smith in association with
Gleiss Lutz and Stibbe

# Herbert Smith

The Joint Administrators necessarily reserve all of their rights in respect of the IRS claim including as to its validity, quantum and the underlying facts that constitute that claim. Nothing in the acceptance of that claim by NNL nor in any ultimate approval of it by the Canadian and US Courts should prejudice the EMEA Debtors in anyway. Please confirm that you agree to this proposition.

If it all possible, receiving a draft of the Monitor's report and form of order being sought as soon as possible would greatly assist us in ensuring that the Joint Administrators are properly informed and that we, in turn, are properly instructed in connection with this upcoming motion. This will permit us to deal with any issues, if any, before the motion on a consensual basis without having to worry about the need to make any submissions on such motion.

I would also like to suggest that the Monitor keep in mind that other Nortel entities and tax authorities may well be looking at the Monitor's description of its rationale for supporting the IRS claim for the purposes of making their own related transfer pricing related tax claims against NNL and other Nortel entities.

**Amendment to the IFSA**

Clause 29 of the CFA seeks to amend the IFSA. As you will be aware an amendment to the IFSA requires the consent of all the parties under clause 15 of the IFSA. How do you propose to deal with this?

We suspect these matters should be readily able to be resolved. I am, of course, happy to discuss these with you. Would you, however, be able to confirm by close of business in the US today that the US Debtors agree to the extension I have requested for filing an objection. On the assumption that the US Debtors are content to agree to this I look forward to hearing from you more comprehensively shortly.

Regards

*pw*

Stephen Gale
Partner
Herbert Smith LLP

Herbert Smith in association with
Gleiss Lutz and Stibbe