**EXHIBIT A**



## CASSELS BROCK

E. Bruce Leonard
DIRECT LINE: (416) 869-5757
FAX: (416) 640-3027
E-MAIL: bleonard@casselsbrock.com

January 20, 2010

E-MAIL

J. A. Carfagnini, Esq.
Goodmans LLP
Barristers and Solicitors
333 Bay Street
Toronto, ON  M5H 2S7

Dear Jay:

Re:   Nortel CCAA Proceedings:  Proposed Canadian Settlement Agreement

With reference to my correspondence of January 14 and 15, 2010 (copies enclosed for ease of reference) and to our subsequent telephone conversation, we received the Monitor's Report overnight and sent it promptly to our clients in England.

Our clients remain concerned that issues that we addressed in our earlier correspondence have not been resolved, or in some cases, even discussed in the Monitor's Report although they are continuing to review the Monitor's Report.

It could be that additional information as to the advantages of the Settlement Agreement from the point of view of the Monitor over other alternatives would be useful and we would be prepared to discuss with you a short adjournment of the motion in order to allow our clients and other concerned creditors of the Canadian estate to become more fully briefed by the Monitor on the merits of proceeding with the Settlement Agreement instead of other approaches to the funding issue which seem more attractive.  If the motion proceeds, our instructions are to oppose Court approval of the Settlement Agreement



Legal*4767524.1

2100 Scotia Plaza, 40 King Street West, Toronto, ON Canada  M5H 3C2
tel 416 869 5300   fax 416 360 8877   www.casselsbrock.com



CASSELS BROCK

Page 2

We look forward to hearing from you at your convenience.

Yours very truly,

Bruce Leonard

EBL/jh
cc: Deborah S. Grieve, Esq.
    David S. Ward, Esq.



## CASSELS BROCK
LAWYERS

E. Bruce Leonard
DIRECT LINE: (416) 869-5757
FAX: (416) 640-3027
E-MAIL: bleonard@casselsbrock.com

January 14, 2010

E-MAIL

J. A. Carfagnini, Esq.
Goodmans LLP
Barristers and Solicitors
333 Bay Street
Toronto, ON  M5H 2S7

Dear Jay:

Re:   Nortel CCAA Proceedings:  Proposed Canadian Settlement Agreement

As you know, we act for the Trustees of the NNUK Pension Plan and for the Board of the UK Pension Protection Fund. The Trustees and the Fund have filed Proofs of Claim in the Nortel CCAA proceedings that reflect liabilities in excess of $1.2B - $1.3B although the final proved amounts of these claims might be higher than this estimate.

Our clients are concerned at what they understand will be proposed to the Court next week on behalf of the Canadian Nortel entities. We note that there has been no disclosure to the Service List of the terms of the agreement for which approval will be sought nor has there been a Report from the Monitor which our clients could consider.

As substantial creditors in the Canadian Nortel proceedings, our clients are concerned there will be a very significant dilution in the recovery on their claims and on the claims of other creditors in the Canadian Nortel proceedings as a result of this prospective agreement. Our clients' concerns include, among other things, the following:

>   1. Our clients understand that NNI will be permitted to have a US $2.0B admitted claim in the Nortel CCAA proceedings and an approximately





CASSELS BROCK

Page 2

$70M secured claim. The basis upon which the Monitor can recommend these terms as being in the best interests of the creditors of the Nortel Canadian estates has not been explained to our clients nor, it appears, to substantially all of the other unsecured creditors of the Nortel CCAA estates;

2. We believe that NNI considers it important that NNL continue in operation to assist in completing the sales of its various divisions and because NNL holds title to virtually all of the intellectual property assets in the Nortel Group. We understand that the anticipated sales proceeds will be in excess of US $3.0B of which a significant position is likely to flow to the Nortel CCAA entities.

3. It is our clients' understanding that, in return for admitting the claims of NNI in an amount which will severely dilute the claims of ordinary unsecured creditors of these Nortel CCAA estates, NNI will only provide funding for NNL's operations for a period of thirteen weeks and that NNL's use of the funds will be subject to the direction of the United States Creditors' Committee and the United States Bondholders' Committee rather than the CCAA Court;

4. As a result of the claims process in the CCAA case, very substantial amounts of claims have been submitted and there will undoubtedly be instances in which the Nortel CCAA debtors could seek contribution and indemnity or pursue claims over or recovery against NNI or its affiliated debtors. We understand that it is proposed that the Nortel CCAA debtors give up these potential avenues of recovery and we would appreciate receiving your advice as to the Monitor's analysis that doing so is in the best interest of the creditors of the Canadian Nortel estates.

5. We understand that prospective settlement arrangements involve a settlement of tax-related transfer pricing issues up until only the end of December 2005. Has any disposition been made of such liabilities for the period commencing in 2006 and, if not, what are the liabilities that are likely to flow from that period and how will they be treated between the Nortel CCAA entities and the Nortel Chapter 11 entities?

Legal*4757455.1



CASSELS BROCK

Page 3

6. Our clients are concerned that the prospective settlement agreement may affect the rights of the Nortel CCAA entities in the prospective proceedings by which the proceeds of the sales of Nortel's various divisions are determined and allocated. We would appreciate confirmation that the settlement agreement does not in any way affect or diminish the rights of the Nortel CCAA entities in those allocation proceedings;

In short, our clients' concern is that the Nortel CCAA entities are proposing to subject the creditors of their estates to a very significant dilution in the recovery on their claims and have waived claims in a manner that has not been reciprocated by the US Nortel entities, all with a view to obtaining short-term operating funding for a relatively short where the use and disposition of that funding is controlled, not by the Court, but by the United States Creditors' Committee and the United States Bondholders' Committee.

Our clients have not had any answers to these concerns explained to them nor have they been allowed to understand the background to the negotiations that produced an agreement which has this very deleterious effect on their position and on the other creditors in the Nortel CCAA proceedings. We would ask that these concerns be addressed to our clients before the Court is asked to rule on the dilution of the value of the claims in the Canadian estate.

We would be prepared to meet with you at your convenience to afford you an opportunity to provide us with the background to the matter which will satisfy the concerns of our clients and of all other creditors in the Nortel CCAA proceedings whose claims will be diluted as a result of this agreement. We appreciate your attention and look forward to hearing from you at your earliest convenience.

Yours very truly,

Bruce Leonard
EBL/ft

Legal*4757455.1



## CASSELS BROCK

E. Bruce Leonard
DIRECT LINE: (416) 869-5757
FAX: (416) 640-3027
E-MAIL: bleonard@casselsbrock.com

January 15, 2010

E-MAIL

J. A. Carfagnini, Esq.
Goodmans LLP
Barristers and Solicitors
333 Bay Street
Toronto, ON  M5H 2S7

Dear Jay:

Re:   Nortel CCAA Proceedings:  Proposed Canadian Settlement Agreement

With reference to my earlier letter of January 14, 2010, I would appreciate your letting me know if you and the Monitor are available to provide us with and discuss the information that our clients will need to properly assess the prospective settlement agreement that is scheduled to be put before the Court next week. We are very concerned that the complexity of the documentation, the complexity of the issues and the complexity of the Monitor's analysis will make it difficult for our clients to arrive at a proper assessment of the issues involved in the arrangements contemplated by the prospective settlement agreement.

In that regard, we would note as you are aware that the Rules of Practice now require "at least" seven business days notice prior to the motion: Rule 37.07(6). The time for service of motion materials for a motion on January 21st would have expired on January 12, 2010. This would suggest that the motion be adjourned to be heard at a time that is in compliance with the Rules of Practice and in a time frame that will permit the Monitor to provide the information that the stakeholders in the Canadian proceedings



Legal*4760955.1    Cassels Brock & Blackwell LLP    2100 Scotia Plaza, 40 King Street West, Toronto, ON Canada M5H 3C2
tel 416 869 5300   fax 416 360 8877   www.casselsbrock.com



## CASSELS BROCK

Page 2

need to assess the proposed settlement agreement. I am sure that most of the other parties to the proceedings would be agreeable to rescheduling the motion to be heard at a convenient date that is in accordance with the Rules of Practice.

On other aspects of the proposed agreement, it would seem that the same result that is in contemplation as the reason for the settlement agreement could be achieved in a much more convenient, simpler and more straightforward fashion. We understand that the proceeds of the sales of Nortel's various businesses have produced or will produce proceeds that may be in the range of US $3.0B – US $3.5B. I believe it is also common ground that NNL owns virtually all of the intellectual property assets in the Nortel Group and that consequently it could reasonably be expected to be entitled to a significant distributive portion of the sale proceeds. Has the Monitor considered securing funding for Nortel's operations by way of a draw against NNL's potential distributive share of the sale proceeds? We assume that this would be suitable to the other parties involved as everyone seems to accept that it is essential for NNL to continue in place because of its critical importance to the successful completion of the sales of its businesses.

The obvious concern of the stakeholders is that the prospective settlement agreement will provide only limited funding to NNL and that, when the operating funding runs out in March or April, NNL will again be without resources and will be dependent upon NNI and its creditors who may well be adverse to the interests of NNL and its creditors. The advantages of funding NNL's continuing operations through a draw on its prospective distributive share of the sale proceeds are that:

- There would be no need to provide a release of NNL's potential claims and claims over against NNI and the Chapter 11 debtors;

- NNL would continue to have its rights under its existing agreements with NNI and the other affected Nortel entities under which NNI has already paid something in the order of US $160M;

- Issues relating to the proper amount of the claim of NNI would be left to the normal claims processes that were established by order of the Court some time ago and NNI would not "jump the queue";

Legal*4760955.1



CASSELS BROCK

Page 3

- NNL would be assured of funding beyond the 90 days of funding that is apparently being offered in the settlement agreement and its funding would not be subject to the control of the United States Creditors' Committee nor the United States Bondholder Committee and would be subject to the direction of the CCAA Court which is thoroughly appropriate in the circumstances of a CCAA reorganization;

- NNL would have assured resources in order to permit it to participate in the processes that are being established to deal with the allocation of the sales proceeds among various Nortel jurisdictions and various Nortel entities.

It would seem to our clients that the best interests of the creditors generally and the Nortel CCAA administrations would be served by a draw by NNL against its distributive share of the proceeds of the sale of its businesses rather than by entering into a restrictive form of settlement agreement which seems to be being imposed by a particular group of creditors. We trust that the Monitor will be able to recommend to the Court that the motion on Thursday be adjourned to permit fuller disclosure of the very complex issues that are involved in the prospective settlement agreement. I look forward to hearing from you at your convenience.

Yours very truly,

Bruce Leonard
EBL/ft

Legal*4760955.1