IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>Nortel Networks, Inc., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138 (KG)<br>Jointly Administered<br><br>**Re: Docket Nos. 2264 and 2193** |

**OBJECTION OF QWEST CORPORATION TO NOTICE OF DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN CERTAIN CONTRACTS AND REQUEST FOR ADEQUATE ASSURANCE**

Qwest Services Corporation ("Qwest"), through its undersigned counsel, files this Objection (the "Objection") to the Notice of Debtors' Request for Authority to Assume and Assign Certain Contracts (the "Notice") in connection with the Debtors' motion for approval of the sale of their carrier voice over internet protocol and applications solutions ("CVAS") business (D.I. 2264). Qwest also requests adequate assurance of future performance. In support of the Objection, Qwest states as follows:

I. **BACKGROUND**

1. On January 14, 2009 (the "Petition Date"), Nortel Networks Corporation and its affiliates (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Prior to the Petition Date, Qwest and certain of its affiliates entered into certain executory contracts with the Debtors (the "Contracts"). As a result of certain of those Contracts, Qwest remains a customer of the Debtors.

4.  On January 15, 2010, the Debtors served the Notice of their intent to assume and assign the Procurement Contract for Digital Switches No. RPHCR42292 (with Amendments 1-40, 42-53, Exhibit A and Appendices 1-7) between Qwest and Nortel Networks Inc., effective December 11, 1989.

## II. OBJECTION

5.  Although the proposed asset purchase agreement provides that the successful purchaser will take an assignment of certain customer contracts, the purchaser is not agreeing to assume all liabilities under those contracts. The purchaser would assume, among others, the following liabilities: (i) post-closing liabilities related to the purchaser's operation of the CVAS business, (ii) liabilities arising from post-closing performance under the assigned contracts, and (iii) post-closing warranty liabilities related to the CVAS products and services. See Asset Purchase Agreement at § 2.1.3.

6.  The Debtors also seek entry of an order providing that (a) all defaults (monetary and non-monetary) under assumed and assigned contracts through the closing shall be deemed cured, (b) no other amounts will be owed by the Debtors, their estates or the successful purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period prior to closing, (iii) any and all persons or entities shall be forever barred and estopped from asserting such claims against the Debtors or successful purchaser.

7.  In short, pursuant to the asset purchase agreement and proposed sale order, the Debtors will "cure" defaults existing as of the closing date. Both the Debtors and the purchaser, however, would be relieved of liability for obligations that accrue pre-closing, but do not fall due until post-closing. Thus, there is a "gap" in liability under contracts that the Debtors seek to assume and assign to the successful purchaser.

8. The Bankruptcy Code generally authorizes a debtor, with bankruptcy court approval, to assume or assign an executory contract without the consent of the other party to the contract and without regard to contractual provisions prohibiting such assignment. Specifically, Section 365(a) provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract." 11 U.S.C. § 365(a).

9. Section 365(b)(1)(A) and (B) of the Bankruptcy Code requires a debtor to "cure" defaults and "compensate" the non-debtor party to an executory contract as a condition to the debtor in possession's assumption of an executory contract. See 11 U.S.C. § 365(b)(1)(A)-(B).

10. When a debtor assumes an executory contract or an unexpired lease it becomes a binding obligation of the debtor's bankruptcy estate. The debtor must cure defaults and provide adequate assurance of future performance in order to assume an executory contract or unexpired lease. See 11 U.S.C. § 365(b)(1)(A)-(C). If a debtor assumes a contract, it must do so *cum onere*, with all the burdens as well as the benefits. See Cinicola v. Scharffenberger, 248 F.3d 110, 119-120 (3d Cir. 2001); American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 78 (3d Cir. 1999); see also In re Italian Cook Oil Corp., 190 F.2d 994, 996-97 (3d Cir. 1951). A debtor may not "cherry pick" the benefits and shirk the obligations under the contract. See Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994); In re Leslie Fay Cos., Inc., 166 B.R. 802, 808 (S.D.N.Y. 1994) ("An executory contract cannot be assumed in part and rejected in part").

11. Section 365 authorizes a debtor to assign a "contract," not part of a "contract." See 11 U.S.C. § 365(f)(2); see also American Flint Glass, 197 F.3d at 80 (noting that Section 365(k) provides for the assignment "*of a contract*") (emphasis in original). An "assignment" of a "contract" involves "a commitment by the assignee to perform *all obligations* under the contract,

as well as to acquire all rights created by the contract." Id. at 81 (emphasis added); see also In re AHERF, 383 F.3d 169, 175, 176-77 (3d Cir. 2004) (discussing American Flint Glass).

12. Thus, the Debtors and the purchaser cannot leave a non-debtor party with a liability "gap" in the obligations under an assumed contract. The purchaser must be liable for all obligations under assumed contracts that are not defaults already cured as part of the Debtors' assumption of the contract. Otherwise, the Debtor is not "assigning" the contract.[1]

13. In addition, the Debtor must remain liable for any defaults that may fall due prior to closing, and Qwest reserves its right to assert such amounts.

### III. REQUEST FOR ADEQUATE ASSURANCE

14. Pursuant to the Notice, Qwest hereby requests adequate assurance and supporting documentation relating to the stalking horse purchaser or other successful purchase. Such information should be sent to the undersigned counsel for Qwest at the email addresses set forth below.

---

[1] Of course, the Debtor would not be entitled to the release provided by Section 365(k) absent an "assignment" of a contract. See American Flint Glass, 197 F.3d at 80-81; AHERF, 383 F.3d at 175, 176-77.

WHEREFORE Qwest respectfully requests that this Court enter an Order (i) sustaining the Objection, and (ii) granting such further relief as is appropriate.

Dated: January 25, 2010
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ Kurt. F. Gwynne
Kurt F. Gwynne (No. 3951)
J. Cory Falgowski (No. 4546)
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com
jfalgowski@reedsmith.com

Counsel to Qwest Corporation