**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
                                    :

| | |
|---|---|
| *In re* | Chapter 11 |
| | |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| | |
| Debtors. | Jointly Administered |
| | |
| | **RE: D.I. 2070** |
| | |
| | **Hearing date: February 26, 2010 at 10:00 a.m. (ET)** |
| | **Objections due: February 19, 2010 at 4:00 p.m. (ET)** |

-------------------------------------------------------X

**DEBTORS' MOTION TO ADD CERTAIN ADDITIONAL**
**DEBTORS AS SELLERS IN THE SALE OF THE DEBTORS'**
**METRO ETHERNET NETWORKS BUSINESS TO CIENA CORPORATION**

Xros, Inc., CoreTek, Inc., Qtera Corporation (collectively, the "Additional Sellers") and

Nortel Networks Inc. ("NNI") and certain of their affiliates, as debtors and debtors in possession

(the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in

the form attached hereto as Exhibit A, pursuant to sections 105 and 363 of title 11 of the United

States Code (the "Bankruptcy Code"), to approve a certain amendment to the Sale Agreement

with Ciena (each as defined below) substantially in the form attached hereto as Exhibit B, and

confirm the applicability of the Order Authorizing and Approving the (A) Sale of Certain Assets

of the Debtors' Metro Ethernet Networks Business Free and Clear of all Liens, Claims and

Encumbrances and (B) Assumption and Assignment of Certain Executory Contracts [D.I. 2070]

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

(the "<u>Sale Order</u>") previously entered to the Additional Sellers as Sellers (as defined below); and

granting such other and further relief as the Court deems just and proper.  In support of this

Motion, the Debtors respectfully represent as follows:

## **Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105 and 363 of the

Bankruptcy Code.

## **Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "<u>Petition Date</u>"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") that

provided for the joint administration of these cases and for consolidation for procedural purposes

only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("<u>NNC</u>"), NNI's direct corporate parent Nortel Networks Limited ("<u>NNL</u>," and

together with NNC and their affiliates, including the Debtors, "<u>Nortel</u>"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of

liquidation for a further period of three months.  On June 26, 2009, this Court entered an order

recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main

proceedings under chapter 15 of the Bankruptcy Code.[4]

        9.      On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with

the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.      Debtors' Corporate Structure and Business**

11.      Nortel is a technology company that designs, develops and deploys

communication products, systems and solutions to its customers around the globe.  Its principal

assets include its employees, the intellectual property derived and maintained from its research

and development activities, its customers and other significant contracts and agreements.

12.      Additional information regarding the Debtors' corporate structure and business

and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in

Support of First Day Motions and Applications [D.I. 3].

**C.      Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and it would assess other restructuring alternatives for its

businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed

(i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the

sale of substantially all of its CDMA business and LTE Access assets business to

Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless

Networks business associated with the development of Next Generation Packet Core network

components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the

Enterprise Solutions business globally, including the shares of Nortel Government Solutions

Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has

completed auction processes and obtained Court approval for the planned sale of substantially all

the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro

Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of

its GSM/GSM-R business [D.I. 2065].

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On

December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern

Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**D.     The Metro Ethernet Networks Business Sale**

15.     Nortel's Metro Ethernet Networks business (the "MEN Business") includes

optical networking, carrier Ethernet switching and multiservice switching products, delivering

carrier-grade Ethernet transport capabilities for higher performance and lower cost for emerging

video-intensive applications.  The MEN Business's optical networking portfolio includes the

40G Adaptive Optical Engine technology, which can quadruple network capacity while being

deployable over any fiber, allowing service providers to reduce engineering and equipment

expense and upgrade quickly and cost-effectively from 10G to 40G.  The MEN Business also is

in the process of developing the industry's first optical technology that can deliver both 40G and

100G network capacity, enabling four times the network throughput immediately, while

providing the foundation to simply and affordably increase capacity tenfold as required.

16.     On October 7, 2009, the Debtors filed a Motion for Orders (I)(A) Authorizing

Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving

the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and the

Assumption and Assignment Procedures, (D) Authorizing the Filing of Certain Documents under

Seal and (E) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the

Sale of Certain Assets of Debtors' Metro Ethernet Networks Business Free and Clear of All

Liens, Claims and Encumbrances and (B) the Assumption and Assignment of Certain Executory

Contracts [D.I. 1627] (the "Sale Motion")[5] seeking approval of the sale of certain of the Debtors'

assets relating to the Debtors' MEN Business (the "Assets") and the approval of certain bidding

procedures (the "Bidding Procedures") in connection with the proposed sale.  Following a

hearing on the Bidding Procedures, this Court entered the Bidding Procedures Order on October

16, 2009 approving the Bidding Procedures to govern the sale by NNI and certain of its affiliates

(collectively, the "Sellers") of the Assets [D.I. 1685].  The Canadian Court entered a

corresponding order approving the Bidding Procedures in the Canadian Proceedings on the same

day.

      17.     In accordance with the Bidding Procedures, the Sellers conducted an auction that

commenced on November 20, 2009 (the "Auction").  The Successful Bid resulting from the

Auction was the Amended and Restated Asset Sale Agreement (the "Sale Agreement") entered

into by the Sellers and Ciena Corporation ("Ciena" and together with, and including, any

Designated Purchaser (as defined in the Sale Agreement), the "Purchaser"), dated as of

November 24, 2009 (the "Successful Bid").

      18.     On December 3, 2009, this Court entered the Sale Order approving the sale of the

Assets to Ciena pursuant to the Successful Bid.  The Canadian Court entered a corresponding

order approving the sale in the Canadian Proceedings on December 2, 2009.

---

[5]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

**E.      The Additional Sellers**

19.      Xros, Inc. and CoreTek, Inc. are direct subsidiaries of NNC.  Qtera Corporation is a direct subsidiary of NNI.  All three of the Additional Sellers were inactive as of the Petition Date and continue to be inactive and do not have ongoing business operations as of the date hereof.

**Relief Requested**

20.      By this Motion, the Debtors seek an order approving an amendment to the Sale Agreement that adds the Additional Sellers as Sellers under the Sale Agreement, and confirms the applicability of the Sale Order to the Additional Sellers as Sellers under the Sale Agreement.

**Facts Relevant to this Motion**

21.      As described above, this Court entered the Sale Order approving the sale of the Assets to the Purchaser pursuant to the terms of the Sale Agreement.  The Sale Agreement is attached as Exhibit A to the Sale Order.  NNI and NN CALA are each Sellers under the Sale Agreement.[6]

22.      The Sale Agreement provides for the transfer and sale of various Assets, including certain Transferred Intellectual Property (as defined in the Sale Agreement).  Section 1.1(k) of the Sellers Disclosure Schedule attached to the Sale Agreement (the "Sellers Disclosure Schedule") lists the patents (the "Transferred Patents") included in Transferred Intellectual Property.

23.      Since the entry of the Sale Order, the Debtors and the Purchaser have identified the Additional Sellers as the owners of record of three Transferred Patents listed in section 1.1(k)

---

[6]      Exhibit A to the Sale Agreement, which lists the Other Sellers, including NN CALA, was filed under seal pursuant to the Order Authorizing the Debtors to File Under Seal the Sellers Disclosure Schedule and Exhibits and Other Schedules Related to the Sale of Certain Assets of the Metro Ethernet Networks Business [D.I. 2078] (the "Sealing Order").

of the Sellers Disclosure Schedule (the "Additional Seller Patents"). The Debtors and the

Purchaser propose to amend the Sale Agreement to (i) add the Additional Sellers as Other Sellers

under Exhibit A to the Sale Agreement in order for the Additional Sellers to be authorized to

transfer the Additional Seller Patents to the Purchaser upon closing and (ii) have each of the

Additional Sellers appoint NNC or NNI (as appropriate) as its representative under Section

11.15(a) of the Sellers Disclosure Schedule.[7]   The amendment to the Sale Agreement adding the

Additional Sellers as Other Sellers and appointing NNC or NNI as each of the Additional

Sellers' representative (as appropriate) is attached hereto as Exhibit B (the "Amendment").[8]  The

Debtors also seek confirmation that the terms of the Sale Order apply to the Additional Sellers as

Sellers under the Sale Agreement.

## Basis for Relief

24.     Section 105(a) of the Bankruptcy Code provides this Court with the power to

grant the relief requested herein by the Debtors. Section 105(a) of the Bankruptcy Code states

that a bankruptcy court "may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under

Section 105(a) of the Bankruptcy Code, the Court has broad equitable powers. See In re

Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of

the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide

equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re

VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a)

bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391

---

[7]      Section 11.15(a)(i)-(iii) of the Sellers Disclosure Schedule, which appoints NNC, NNL or NNI (as
appropriate) as the representative of each of the Other Sellers, was filed under seal pursuant to the Sealing Order.

[8]      Note that in accordance with the Sale Order, other non-material amendments to the Sale Agreement may
have been made and may in the future be made to the Sale Agreement for which the Debtors may not seek court
approval.

F.3d 190, 236 (3d Cir. 2004)).  Approval of the Debtors' authority to enter into the Amendment

and confirmation of the applicability of the Sale Order to the Additional Sellers will further a

seamless process for the consummation of the sale of the Debtors' Assets.  Furthermore, since

the Additional Seller Patents were included in the Assets to be sold under the Sale Agreement,

there is no need for a separate sale process to sell these assets and allowing the Additional Sellers

to be added as Other Sellers under the Sale Agreement will help to assure an orderly transfer of

the Assets to the Purchaser.  Accordingly, the Debtors submit that the relief requested herein is in

the best interests of the Debtors, their estates, their creditors and all other parties in interest.

## Notice

25.    Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii)

counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Purchaser

and (v) the general service list established in these chapter 11 cases.  The Debtors submit that

under the circumstances no other or further notice is necessary.

## No Prior Request

26.    No prior request for the relief sought herein has been made to this or any other

court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  February 5, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*