IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
:    Chapter 11
: 
*In re*    : 
:    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]    : 
:    Jointly Administered
          Debtors.    : 
:    **Hearing date: February 26, 2010 at 10:00 a.m. (ET)**
:    **Objections due: February 19, 2010 at 4:00 p.m. (ET)**
: 
------------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER
APPROVING A COMPROMISE OF A CONTROVERSY BETWEEN
(I) NORTEL NETWORKS INC., (II) NORTEL NETWORKS LIMITED,
(III) PEACOCK COMMUNICATIONS, ATSSC, INC. AND (IV) JOHN PEACOCK**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to compromise a controversy between (i) NNI, (ii) Nortel Networks Limited ("NNL," together with NNI, the "Plaintiffs"), (iii) Peacock Communications, ATSSC, Inc., d/b/a Atlanta Telephone Company ("ATC") and (iv) John Peacock, individually and d/b/a Atlanta Telephone Company ("Peacock," and together with ATC, the "Defendants") as described more fully below and as set forth in the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

agreed terms of a settlement agreement (the "Settlement Agreement"), a redacted version of which is attached hereto as Exhibit B; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019.

## Background

**B.     Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively,

the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.  On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.  On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On November 30, 2009, the French Court extended the suspension of liquidation for a further period of three months. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

---

[4]   Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

C. **Debtors' Corporate Structure and Business**

11. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

D. **Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions

Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]. In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065].

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

## Relief Requested

15. By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019: (a) authorizing the compromise of controversy between the Plaintiffs and the Defendants, and (b) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

**A.    The 2006 Action**

16. ATC is a telecommunications company incorporated in Georgia. In 2004, ATC became an authorized reseller of Nortel products pursuant to a reseller agreement executed by John Peacock, as president of ATC (the "Reseller Agreement").

17. In 2006, the Plaintiffs discovered multiple breaches and misrepresentations by the Defendants related to the Reseller Agreement. On December 1, 2006, the Plaintiffs filed a Complaint and Jury Demand against the Defendants in the United States District Court for the Northern District of Georgia (the "District Court"), captioned as Nortel Networks Inc. *et al.* v. Peacock Communications, ATSSC, Inc., *et al.*, Civil Action No. 1:06-CV-3056-ODE (the "2006

6

Complaint"). Defendant Peacock filed an Answer to the 2006 Complaint (the "2007 Answer"), and Defendant ATC filed an Answer and a Counterclaim (the "2007 Counterclaim," together with the 2006 Complaint and the 2007 Answer, the "2006 Action").

18. The 2006 Action was resolved by a settlement agreement between the Plaintiffs and Defendants (together, the "Parties") executed in or around April 2008 (the "2008 Settlement Agreement") pursuant to which ATC executed a consent judgment in the amount of $5 million (the "2008 Consent Judgment"), which to date has been paid in part.

**B.     The 2008 Action**

19. In 2008, a customer of the Defendants contacted the Plaintiffs to report that they had received a shipment of counterfeit Nortel telephone sets originating with the Defendants.

20. On September 22, 2008, the Plaintiffs filed a Complaint and Application for Seizure of Counterfeit Goods, Temporary Restraining Order in the District Court, captioned as Nortel Networks Inc. *et al* v. Peacock Communications, ATSSC, Inc., Civil Action No. 1:08-CV-2969-ODE (the "2008 Complaint"), wherein the Plaintiffs alleged the Defendants were liable for trademark infringement, dilution and false designation of the origin.  On September 28, 2008, in accordance with the District Court's temporary restraining order, the Plaintiffs entered into the Defendants' place of business and seized a portion of the Defendants' inventory (the "Seized Inventory").  On October 20, 2008, the Defendants filed Answers to the 2008 Complaint, denying the allegations (the "2008 Answer," together with the 2008 Complaint, the "2008 Action").

**C.     The Proposed Settlement and Agreement**

21. The Parties entered into negotiations after determining that it was in their respective best interests to compromise and settle both the remaining payments under the 2008 Consent Judgment and the 2008 Action (together, the "Disputes") without further litigation.

7

22. After extensive negotiations, the Parties have resolved the Disputes. The resolution is memorialized in the Settlement Agreement entered into between the Plaintiffs and the Defendants on February 2, 2010.

23. Specifically, the Settlement Agreement provides that:[5]

    a. ATC shall pay the Plaintiffs a lump-sum payment (the "<u>Settlement Payment</u>").[6]

    b. The Plaintiffs shall be entitled to retain the Seized Inventory and shall take title thereto.

    c. The Parties shall execute a proposed Order and Stipulation of Dismissal for the 2008 Action.

    d. The Plaintiffs will mark as satisfied the 2008 Consent Judgment.

    e. The Plaintiffs shall release all claims against the Defendants and the Defendants shall release all claims against the Plaintiffs.

    f. The Plaintiffs shall request that any disclosure required in connection with their bankruptcy proceedings be maintained in confidence by the receiving party and will attempt to file the Settlement Agreement or information related to thereto with the United States Bankruptcy Court under seal, if possible.

### Basis for Relief

24. The relief requested herein is authorized by section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order…that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25. Bankruptcy Rule 9019 provides, in pertinent part, that, "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019. Pursuant to this authority, the Third Circuit has emphasized that

---

[5] This overview is intended as a summary of the terms of the Settlement Agreement. If any conflict arises between this overview and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[6] This lump sum payment shall be deposited into an NNI bank account.

"[c]ompromises are favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of Delaware has recognized that the approval of a proposed compromise and settlement is committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

26.    The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy." In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Cent. Transp. Co., 596 F.2d 1102, 1112 (3d Cir. 1979) ("'administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims . . . .'"), quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968).

27.    Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the best interest of the estate." In re Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing In re Jasmine, Ltd., 258 B.R. 119, 123 (D.N.J. 2000)).  The court should not substitute its judgment for that of the debtor and need not be convinced that the settlement is the best possible

compromise. See Coram, 315 B.R. at 330; In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986).

28.  The Third Circuit has enumerated four factors for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"): "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Martin, 91 F.3d at 393 (citing Neshaminy, 62 B.R. at 803); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

29.  The Debtors respectfully submit that the Settlement Agreement meets each of the requirements under Bankruptcy Rule 9019 and that the Settlement Payment lies well above the lowest point in the range of reasonable litigation possibilities. In addition, the applicable Martin Factors weigh in favor of approving the Settlement Agreement. Accordingly, the Debtors respectfully request that the Settlement Agreement should be approved pursuant to Bankruptcy Rule 9019.

30.  While the litigation risks are low here, there is always an element of uncertainty in litigation. Additionally, the costs and distraction of litigating the 2008 Action would be high in comparison to the potential recoverable amount. Absent the Settlement Agreement, the 2008 Action would ultimately be litigated with no assurances of a favorable outcome. The resolution of the Disputes with the Defendants under the terms of the Settlement Agreement obviates the need for further litigation, saves the Debtors significant time and expense in the litigation of the 2008 Action and avoids significantly distracting the Debtors' officers and employees from the Debtors' chapter 11 proceedings. The Settlement Agreement also incorporates the 2008 Consent

Judgment and settles the Debtors' right to receive payment under that judgment.  By entering into the Settlement Agreement, the Debtors are able to receive payment now rather than to have to pursue the Defendants for enforcement of the 2008 Consent Judgment and a judgment in the 2008 Action, if and when one is obtained, thereby obviating the risks and costs of collection on such judgments.

31.     The litigation between the Plaintiffs and Defendants has been lengthy and complex.  While the Debtors are prepared to litigate the 2008 Action, such litigation would add expense without any assurance that it would result in a better outcome for the Debtors than the one achieved under the Settlement Agreement.  To date, NNI has already incurred substantial expense in investigative, litigation-related and settlement preparation costs with regard to the 2006 and 2008 Actions.  Additional litigation to pursue the Disputes resolved by the Settlement Agreement likely would result in the expenditure of substantial legal fees, and it is in the interest of the Debtors and their estates to minimize such fees and expenses.

32.     Furthermore, the interests of creditors strongly militate in favor of approval of the settlement as set forth in the Settlement Agreement.  The Debtors believe that the interests of their creditors are supported by the prompt and efficient resolution of the Disputes and the minimization of administrative claims and expenses that would be incurred if the Disputes were litigated.

33.     In light of the foregoing, the Debtors believe that a settlement on the terms contemplated in the Settlement Agreement is preferable to further litigation against the Defendants.  The proposed Settlement Agreement reflects a valuable resolution in light of:  (i) the value being given; (ii) the contingencies of success in litigation and the costs and delays attendant thereto; and (iii) the fact that the settlement is well within the range of reasonableness

when considering the potential outcomes associated with litigating the claim. For these reasons, the Debtors assert that the Settlement Agreement should be approved, as it is in the best interests of the Debtors, their estates and their creditors.

## **Notice**

34.  Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Defendants; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

35.  No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: February 5, 2010<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (*admitted pro hac vice*)<br>Lisa M. Schweitzer (*admitted pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |