**EXHIBIT B**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made on this __th day of January 2010, by the following parties: (a) Nortel Networks Inc. ("NNI") and Nortel Networks Limited ("NNL") (collectively "Nortel" and/or "Plaintiff") as one Party, and (b) Peacock Communications, ATSSC, Inc., d/b/a Atlanta Telephone Company ("ATC") and John Peacock, individually and d/b/a Atlanta Telephone Company ("Peacock"), (collectively "Defendants"), as the other party. Plaintiff and Defendants are collectively referred to as the "Parties." This Agreement is a compromise settlement and release whereby the Parties hereto mutually extinguish certain rights and obligations while creating new rights and obligations.

## RECITALS

WHEREAS, on December 15, 2006, Nortel filed a Complaint and Jury Demand against Defendants in the United States District Court for the Northern District of Georgia (the "District Court"), captioned as Nortel Networks Inc. et al., v. Peacock Communications, ATSSC, Inc., et al., Civil Action Number 1:06-CV-3056-ODE (the "2006 Complaint");

WHEREAS, on February 21, 2007, Defendant Peacock filed an Answer (the "2007 Answer") to the 2006 Complaint and Defendant ATC filed an Answer and Counterclaim (the "2007 Counterclaim") (the 2006 Complaint, 2007 Answer, and 2007 Counterclaim are collectively referred herein as the "2006 Action");

WHEREAS, the 2006 Action was resolved pursuant to a settlement agreement between the Parties executed on or about April 2008 (the "2008 Settlement Agreement");

WHEREAS, as part of the 2008 Settlement Agreement, ATC executed a consent judgment in the amount of five million dollars ($5,000,000) (the "2008 Consent Judgment").



WHEREAS, on September 22, 2008, Nortel filed a separate Complaint and an Application for Seizure of Counterfeit Goods, Temporary Restraining Order in the District Court, Case No. 1:08-CV-2969-ODE, wherein Nortel alleged that Defendants were liable for trademark infringement, dilution, and false designation of origin (the "2008 Complaint");

WHEREAS, on September 28, 2008, in accordance with the District Court's TRO, Nortel entered into Defendant ATC's place of business and seized a portion of Defendant ATC's inventory (the "Seized Inventory");

WHEREAS, on October 20, 2008, Defendants filed their Answers to the 2008 Complaint denying the allegations (the "2008 Answer") (the 2008 Complaint and the 2008 Answer are collectively referred to herein as the "2008 Action");

WHEREAS, on December 29, 2008, the District Court entered an order granting a Preliminary Injunction;

WHEREAS, the Parties wish to resolve the 2008 Action without admitting any liability or making any representations regarding the merits of the 2008 Action as well as

resolve and end the requirement for the remaining payments due under the 2008 Settlement Agreement;

WHEREAS, this Agreement sets forth the terms and conditions of the settlement, compromise and release of all judgments, awards, claims and disputes that the Parties have against each other whether known or unknown, disputed or undisputed, including but not limited to all claims arising out of the 2008 Action and all payments due in accordance with the 2008 Settlement Agreement in the manner set forth herein; and

NOW, THEREFORE, in consideration of the promises and the mutual agreements contained herein, including but not limited to the promise of the Parties to maintain the confidentiality of this Agreement, the parties do hereby agree as follows:

SECTION 1. Approval by the United States Bankruptcy Court

1.1     This Agreement is subject in all respects to the entry of a final order by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), approving all terms and conditions contained in this Agreement. NNI shall file a motion with the Bankruptcy Court seeking the approval of this Agreement pursuant to Bankruptcy Rule 9019 (the "US Approval Order") and any other applicable law, rules, orders or procedures. If the Bankruptcy Court does not approve all terms and conditions contained in this Agreement, then this Agreement shall be null and void. If the Bankruptcy Court does not approve all terms and conditions contained in this Agreement, the Parties will jointly petition the District Court to reopen this matter, permit the Parties to conduct 3 months of fact discovery, followed by one month of expert witness discovery, and to have all other deadlines triggered by the close of such discovery periods.

SECTION 2.   Lump-Sum Payment and Dismissal with Prejudice

2.1    Defendant ATC agrees to pay Nortel ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ (the "Settlement Amount") within five (5) business days of Nortel returning to Defendant ATC (1) a fully executed copy of this Agreement; (2) the original 2008 Consent Judgment in the amount of five million dollars ($5,000,000), and all copies thereof, executed by the Parties as part of the 2008 Settlement Agreement and attached thereto as Exhibit A, which 2008 Consent Judgment shall be marked "Satisfied" by Nortel; and (3) a final order of the Bankruptcy Court approving all terms and conditions contained in this Agreement. The payment, in the form of a check, shall be delivered to law offices of Call & Jensen.

2.2    Defendant ATC agrees that Nortel shall be entitled to retain the Seized Inventory and shall take title thereto upon Nortel's satisfying the conditions set forth in subsections 1 through 3 in Section 2.1 herein. Nortel shall take all steps necessary with the District Court in order to allow it to remove the Seized Inventory from Your Extra Attic store, 3280 Peachtree Industrial Blvd., Duluth, Georgia (the "Secure Location") listed in the District Court's September 22, 2008 Order Granting Seizure. Defendant ATC agrees that it will cooperate with any reasonable request of Nortel, involving communication with the District Court, in order to effectuate Nortel's ability to remove the Seized Inventory from the Secure Location. In allowing Nortel to retain the Seized Inventory, Defendant ATC in no away admits that any portion of the Seized Inventory is counterfeit or unauthorized.

2.3    Within ten 10 (ten) days of receipt of payment specified in Section 1.1 above, counsel for the Parties shall execute a proposed Order and Stipulation of Dismissal

("Dismissal Order") substantially in the form attached as Exhibit A. In the event that Dismissal Order is not entered by the District Court within 30 days of service upon the District Court, the Parties agree and acknowledge that the Action is dismissed with prejudice, with each side bearing its own costs and attorneys' fees and that the District Court retains jurisdiction to enforce the terms of the Agreement.

2.4 The Parties further stipulate that the Consent Order Granting Preliminary Injunction, filed in the 2008 Action on December 29, 2008, shall expire upon execution of this Agreement.

SECTION 3. 2008 Consent Judgment

3.1 Nortel will mark as satisfied the 2008 Consent Judgment executed by the Parties as part of the 2008 Settlement Agreement and attached thereto as Exhibit A and return it and all copies thereof to Defendant ATC pursuant to Section 2.1 herein.

3.2 

3.3 Nortel agrees not to execute, levy, attach, garnish, or take any other collection action upon the 2008 Consent Judgment. Nortel warrants and represents that it has not assigned or conveyed and/or in any way transferred any right, title or interest in

the 2008 Consent Judgment. Any future attempted to assign, convey or transfer the 2008 Consent Judgment by Nortel shall be null and void.

SECTION 4. Prior Payment Schedule

4.1 

SECTION 5. Confidentiality

5.1 

5.2     The Parties agree that Nortel may disclose the terms of the Settlement Agreement and/or the actual Settlement Agreement in connection with any bankruptcy proceedings of Nortel in the United States or Canada, or as otherwise required by any court of law.  Specifically, Nortel is permitted to disclose the terms of the Settlement Agreement and/or the actual Settlement Agreement to any committee of creditors, representatives appointed by a court, outside counsel for Nortel or any creditors, and any other person who demands disclosure in connection with the bankruptcy proceedings of Nortel.  Nortel shall request that any disclosure be maintained in confidence by the receiving party, and will attempt to file the Settlement Agreement or information related thereto with the United States Bankruptcy Court under seal, if possible.  However, in the event that the Bankruptcy Court does not permit the filing of the Settlement Agreement or other information related thereto under seal, disclosure of the terms of the Settlement Agreement and/or the actual Settlement Agreement in pleadings relating to Nortel's request for authorization to enter into the Settlement Agreement shall not violate the terms of the preceding paragraph.

SECTION 6: Release of Claims

6.1     Effective upon receipt of the Settlement Amount, Plaintiff Nortel, on behalf of itself and its attorneys, agents, representatives, and assigns, hereby releases and forever discharges Defendants, and the directors, officers, shareholders, partners, employees, attorneys, agents, predecessors, successors, and assigns of Defendants, and all other persons or entities related to them (parents, affiliates, and subsidiaries, including but not limited to Atlanta Telephone and Cable Corporation, Atlanta Telephone Sales & Service Company, Atlanta Telephone Systems, Inc., and Atlanta Telephone & Data

Corporation), past or present, and each of them, of and from any and all rights, claims, debts, demands, liabilities, awards, obligations, attorneys' fees, actions, and causes of action, of every nature, kind, character and description whatsoever, that it now holds, or has ever held or ever could have held, against such released entities and persons, whether such claims are known or unknown, suspected or unsuspected, direct or indirect, which arise from the facts alleged in the 2008 Action or otherwise, or which are mentioned or suggested in any pleadings, discovery or other documents in the 2008 Action or otherwise. This release extends to all claims held by Plaintiff Nortel, including, without limitation, the causes of action asserted in the 2008 Action. This release does not, however, extend and/or apply to the 2008 Settlement Agreement or relieve Defendants of their obligations set forth in the 2008 Settlement Agreement, except for the Prior Payment Schedule obligations contained in the 2008 Settlement Agreement. The foregoing release shall not affect the obligations created by this Agreement.

6.2   Effective upon Nortel's receipt of the Settlement Amount, Defendants, on behalf of themselves and their attorneys, agents, representatives, and assigns, hereby release and forever discharge Plaintiff, and the directors, officers, shareholders, partners, employees, attorneys, agents, predecessors, successors, and assigns of Plaintiff, past or present, and each of them, of and from any and all rights, claims, debts, demands, liabilities, awards, obligations, attorneys' fees, actions, and causes of action, of every nature, kind, character and description whatsoever, that they now hold, or have ever held or ever could have held, against such released entities, whether such claims are known or unknown, suspected or unsuspected, direct or indirect, which arise from the facts alleged in the 2008 Action or otherwise, or which are mentioned or suggested in any pleadings,

discovery or other documents in the 2008 Action or otherwise. This release extends to all claims held by Defendants.

6.3 The Parties warrant that:

(a) no other person or entity has any interest in the claims, demands, obligations, or causes of action referred to in this Release;

(b) the Parties have the right and exclusive authority to execute this Release and receive the sum, if applicable, herein; and

(c) the Parties have not sold, assigned, transferred, conveyed or otherwise disposed of any claims, demands, obligations, or causes of action referred to in this Release.

SECTION 7: Warranty Against Transfer

7.1 Each Party agrees to indemnify, defend, and hold the other harmless from any liabilities, losses, claims, demands, costs, expenses or attorney fees incurred by the other as the result of a breach of any of the warranties set forth in Section 6.3 above.

SECTION 8: Cooperation

8.1 The Parties agree, upon request, to take such other action and to execute and deliver such other documents as may be necessary to carry out the terms of this Agreement as set forth herein.

8.2 This Agreement shall be (a) binding and enforceable against any and all heirs, executors, administrators, successors and assigns of each of the Parties hereto, and (b) inure to the benefit of, and be enforceable by, any and all heirs, executors, administrators, successors and assigns of each of the Parties hereto.

SECTION 9: Assumption of Risk

9.1    Each Party hereto understands that if any fact with respect to any matter covered by this Agreement is found to be other than, or different from, the facts now believed by it to be true, it expressly accepts and assumes the risk of such possible differences in facts, and agrees that this Agreement shall be, and remain, in effect notwithstanding such differences in fact.

9.2    The Parties recognize that they may have some claim, demand, or cause of action against each other, related to the 2008 Action, of which they are totally unaware and unsuspecting which they are giving up by execution of this Agreement. It is the intention of the Parties in executing this instrument that it will deprive them of each such claim, demand or cause of action and prevent them from asserting it against each other as provided in Section 6.

SECTION 10: Severability

10.1    The provisions of this Agreement are severable, and if any part of it is found to be illegal or unenforceable for any reason, the other paragraphs shall remain fully valid and enforceable.

SECTION 11: Applicable Law

11.1    This Agreement shall be construed, governed by and administered in accordance with the laws of the State of Georgia, without regard to conflicts-of-law rules or principles. Any and all litigation under this Agreement shall be conducted only in the District Court, provided that by entering into this Agreement, Plaintiff Nortel does not waive any stays applicable to it as a result of their creditor protection proceedings.

SECTION 12: Warranty of Authority to Execute

12.1 Each Party hereto represents and warrants that its attorneys are authorized and directed to perform the acts necessary to effect the settlement.

12.2 Any person signing this Agreement on behalf of any entity represents and warrants that he or she is authorized by that entity to sign this Agreement on its behalf.

SECTION 13: Representations as to Negotiation Process

13.1 Each Party hereto represents and warrants: that it has been fully advised by counsel of its choice regarding the effect which the execution of this Agreement will have on its rights and obligation; that its representative has read, knows and understands the contents of this Agreement; that its representative has executed the Agreement voluntarily; and that it fully understands that no one may ever again proceed against the releasees with respect to any of the claims released hereinabove.

SECTION 14: No Reliance

14.1 By executing this Agreement, the Parties represent and acknowledge that they do not rely and have not relied upon any representation or statement not set forth in this Agreement. This Agreement sets forth the entire agreement between the Parties with respect to the matter set forth herein. The Parties each acknowledge that no Party, nor any agent or attorney of any Party, has made any promise, representation or warranty whatsoever, express or implied, not contained herein to induce any other Party to execute this Agreement. The Parties, and each of them, further represent and declare that they have carefully read this Agreement and know the contents hereof, and that they sign the same freely and voluntarily.

SECTION 15: No Admission of Liability

15.1 All parties hereto expressly understand and agree that this is a "SETTLEMENT AND COMPROMISE" of disputed claims and the parties deny any wrongdoing or liability of any kind whatsoever; and that said Agreement shall not be construed as an admission of liability on the part of any party hereto.

SECTION 16: Costs and Expenses of Litigation

16.1 Each Party hereto agrees that it shall bear its own costs, attorneys' fees, and costs of suit incurred in connection with the 2008 Action and in preparing this Agreement. Neither Party will seek to recover any costs of suit, attorneys' fees, nor other expenses incurred with respect to the 2008 Action from any other Party hereto.

SECTION 17: Prohibited Conduct and Cooperation

17.1 Defendants agree not to sell counterfeit or otherwise infringing Nortel products. Further, Defendants agree to only advertise and/or sell used, refurbished, and "unused" Nortel products, none of which shall be advertised as "new" Nortel products. For purposes of this Agreement, "unused" shall mean a part or piece of equipment never having been used, which is no longer being sold as new by the manufacturer in that specific form, including, but not limited to, manufacturing closeouts, end of life equipment, outdated equipment, older model equipment, liquidated goods, damaged goods, salvaged goods, promotional merchandise, and/or equipment no longer being sold by authorized distributors. Nortel does not endorse or authorize Defendants to purchase Nortel products from authorized Nortel distributors or partners.

SECTION 18: Non-Affiliation with Nortel

18.1    Defendants agree not to claim or in any way represent any association, partnership, sponsorship, or other affiliation with Nortel.

SECTION 19: Bankruptcy

19.1    In the event that all or any portion of this Agreement or any payment made hereunder is set aside or voided as a preference, fraudulent conveyance or under any similar provision of the United States Bankruptcy Code (11 U.S.C. § 101, et seq.) or any other bankruptcy or insolvency or creditor rights law or in any similar proceeding under the laws of any jurisdiction, then at Nortel's option, the Agreement shall be deemed to be null and void, the Parties' rights shall be restored and nothing herein shall constitute an admission, limitation or waiver with respect to Nortel's claims against the Defendants. Nortel's option to deem the Agreement null and void pursuant to this paragraph shall expire two (2) years and one month from the date the Settlement Amount is received by Nortel.

SECTION 20: Joint Drafting and Neutral Interpretation

20.1    This Agreement shall be construed and interpreted in a neutral manner. This Agreement is a negotiated document and shall be deemed to have been drafted jointly by the Parties, and no rule of construction or interpretation shall apply against any particular Party based on a contention that the Agreement was drafted by one of the Parties.

SECTION 21: Amendment and Modification

21.1    This Agreement may neither be modified nor amended except in a writing executed by all Parties hereto.

SECTION 22: Counterparts

22.1 This Agreement may be executed in counterparts, all of which, taken together, shall be deemed one original.

BY EXECUTING THIS AGREEMENT, EACH SIGNATOR ACKNOWLEDGES THAT HE OR SHE HAS READ THIS AGREEMENT AND UNDERSTANDS ITS TERMS AND PROVISIONS.

This Agreement shall become effective upon execution by all Parties. This Agreement consists of fifteen (15) pages, including the continued signature pages below.

NORTEL NETWORKS INC.

Dated: _Feb. 2/10_  By: _____
Anna Ventresca
Chief Legal Officer

NORTEL NETWORKS LIMITED.

Dated: _Feb. 2/10_  By: _____
Anna Ventresca,
General Counsel-Corporate and
Corporate Secretary

NORTEL NETWORKS LIMITED

Dated: _Feb. 2/10_  By: _____
John Doolittle
SVP, Finance and Corporate Services

CALL & JENSEN

Dated: 2/4/10          By: /s/ David R. Sugden
                           David R. Sugden
                           Attorney for Plaintiff Nortel

PEACOCK COMMUNICATIONS ATSSC, INC.

Dated: _____  By: _____
                           Authorized Representative

JOHN PEACOCK

Dated: _____  By: _____
                           John Peacock

ANDERSEN, TATE & CARR, P.C.

Dated: _____  By: _____
                           Elizabeth L. Clack-Freeman
                           Attorney for Defendants

CALL & JENSEN

Dated: _____    By: _____
                                              David R. Sugden
                                              Attorney for Plaintiff Nortel

PEACOCK COMMUNICATIONS ATSSC, INC.

Dated: 1-26-2010    By: _____
                                              Authorized Representative

JOHN PEACOCK

Dated: 1-26-2010    By: _____
                                              John Peacock

ANDERSEN, TATE & CARR, P.C.

Dated: 1.27.2010    By: _____
                                              Elizabeth L. Clack-Freeman
                                              Attorney for Defendants