IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------X
:
*In re*                                                         :      Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                              :      Case No. 09-10138 (KG)
:
　　　　　　　　　　Debtors.                                     :      Jointly Administered
:
:      Hearing date: February 26, 2010, 10:00 am
:      Objections due: February 19, 2010, 4:00 pm
:
---------------------------------------------------------------X      RE: D.I. 294, 507

## DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPROVING AN AMENDMENT TO THE TERMS OF COMPENSATION OF LAZARD FRÈRES & CO. LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby move this Court (the "Application") for entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), authorizing an amendment to the terms under which Lazard Frères & Co. LLC ("Lazard") is compensated as financial advisor and investment banker to the Debtors; and granting them such other and further relief as the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Alteon WebSystems, Inc. (9769), Alteon WebSystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

deems just and proper. In support of the Application, the Debtors respectfully represent as follows:

## Jurisdiction and Venue

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and this matter is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1.

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

---

[2]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On November 30, 2009, the French Court extended the suspension of liquidation for a further period of three months. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

4

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099], including the Original Retention Order (as defined below).

**B.    Debtors' Corporate Structure and Business**

11.    Nortel is a group of technology companies that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.    Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]. In addition, Nortel has

completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065]. Finally, the Debtors have scheduled an auction for the sale of certain assets for their Carrier Voice Over IP and Application Solutions business [D.I. 2259] (collectively, the "Sales Transactions").

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15. By this Application, the Debtors seek entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local Bankruptcy Rule 2014-1, authorizing an amendment to the terms under which Lazard is compensated as financial advisor and investment banker to the Debtors, and granting them such other and further relief as the Court deems just and proper.

**Facts Relevant to this Application**

16. On February 13, 2009, the Debtors filed an application for an order authorizing employment and retention of Lazard as their financial advisor and investment banker *nunc pro tunc* to the Petition Date [D.I. 294] (the "Original Application").

17. On March 20, 2009, the Court entered the Order under sections 327(a) and 328(a) of the Bankruptcy Code authorizing retention and employment of Lazard as financial advisor and investment banker to the Debtors *nunc pro tunc* to the Petition Date [D.I. 507] (the "Original

6

Retention Order"), which approved the terms and conditions of the Lazard engagement as set forth in that certain letter agreement dated March 16, 2009 attached as Exhibit A to the Original Retention Order (the "Engagement Agreement").  A copy of the Engagement Agreement is attached hereto as Exhibit B.

18. At the time the Original Application was filed, neither Nortel nor Lazard anticipated that Nortel would undertake an effort to divest substantially all of its business units. Nearly a year later, the Debtors find themselves near the conclusion of a remarkable period of M&A activity, with four transactions closed, the closing of two others pending and another auction scheduled to take place in just a few weeks.

19. With respect to each and every one of these divesture transactions that have taken place, Lazard has devoted tremendous amount of time and resources that neither the Debtors nor Lazard imagined at the time of commencement of these proceedings.  Lazard has taken responsibility in all aspects of these transactions including, but not limited to: conducting the assessment and marketing of the assets, leading numerous negotiation sessions with various parties, engaging in the auction process, and closing of the deals.  Over all, Lazard has performed its role as a financial advisor and investment banker in an effective and prudent manner, successfully assisting Nortel to maximize the value of its businesses and the Debtors to maximize the value of their estates.

**Amended Fee Structure**

20. Against the backdrop of reduced M&A activity and the beginning of a new stage in Nortel's insolvency proceedings worldwide, the Debtors have entered a transition period.  As a part of this transition, the Debtors and the Canadian Debtors entered into discussions with Lazard in order to reassess Lazard's compensation structure, as set forth in the Original

Retention Order (the "Original Fee Structure") in light of the tremendous efforts undertaken by Lazard since the commencement of these proceedings. After careful consideration of all aspects of the development of the case, Nortel's remaining assets and businesses, the quality and quantity of services provided by Lazard and the need for continued assistance from Lazard, the Debtors, the Canadian Debtors and Lazard have agreed, subject to the Court's approval, to amend the Original Fee Structure as described below (the "Amended Fee Structure").

21. The Amended Fee Structure provides:

   (a) Monthly Fee. The Original Fee Structure provides a monthly fee of US$ 250,000 (the "Monthly Fee"), payable in advance on the first day of each month beginning February 1, 2009 until the earlier of the completion of the Restructuring or the termination of Lazard's engagement. One-half of each Monthly Fee that becomes payable on or after July 1, 2009 and is paid thereafter is credited against any Restructuring/Breakup Fee or Sale Transaction Fee. As clarified by the Amended Fee Structure, the creditable one-half Monthly Fee is credited against any Minority Sale Transaction Fee as well.

   (b) Restructuring/Breakup Fee. The Original Fee Structure provides a fee of US$15,000,000 that is payable upon the consummation of a Restructuring or Breakup (the "Restructuring/Breakup Fee"). Under the Amended Fee Structure, Lazard is not entitled to charge, and the Debtors have no obligation to pay, the Restructuring/Breakup Fee if Lazard charges, and the Debtors pay, with the Court's approval, the Sale Transaction Fee.

   (c) Sale Transaction Fee. The Original Fee Structure provides a fee equal to the Restructuring/Breakup Fee, payable if and when, whether in connection with the consummation of a Restructuring or otherwise, Nortel consummates a Sale Transaction incorporating all or a majority of its assets or all or a majority or controlling interest in the equity securities (the "Sale Transaction Fee"). Under the Amended Fee Structure, Lazard is not entitled to charge, and the Debtors have no obligation to pay, the Sale Transaction Fee if Lazard charges, and the Debtors pay, with the Court's approval, the Restructuring/Breakup Fee.

   (d) Minority Sale Transaction Fee. Under the Original Fee Structure, a fee equal to 50% of the fee calculated based on the Aggregate Consideration as set forth in Schedule I thereto (the "Minority Sale Transaction Fee") is payable if, whether in connection with the consummation of a Restructuring or otherwise, Nortel consummates a Sale Transaction but does not accrue the Sale Transaction Fee (a "Minority Sale Transaction").

8

                The Amended Fee Structure clarifies that multiple Minority Sale Transaction Fees may become payable (regardless of whether the applicable Minority Sale Transactions involve, in the aggregate, all or a majority of the assets of the Debtors) and, the aggregate amount of all Minority Sale Transaction Fees may exceed US$15 million, provided, however, that the maximum amount of Minority Sale Transaction Fees that may be paid to Lazard in respect of the transactions that have received final Bankruptcy Court approval prior to February 1, 2010, is US$15 million.

(e)    <u>Credit Mechanism.</u> The Original Fee Structure provides that any fee paid as Minority Sale Transaction Fee is credited against any fees subsequently payable as the Restructuring/Breakup Fee or the Sale Transaction Fee. The Amended Fee Structure does not change this credit mechanism.

(f)    <u>The Fee Cap.</u> The Original Application provides a cap of US$ 15,000,000 (the "<u>Fee Cap</u>") on the total amount of compensation payable as the Restructuring/Breakup Fee, the Sale Transaction Fee, and the Minority Sale Transaction Fee. The Debtors, the Canadian Debtors and Lazard have agreed to, subject to this Court's approval, remove the Fee Cap (subject to the proviso in (d) above) by deleting the last sentence of Section 3(g) of the Engagement Agreement.

Other than the amendments specifically identified above, the Debtors are seeking no further changes to the Original Fee Structure.[5]

**Basis for Relief**

22.    Under section 327(a) of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

23.    Section 328(a) of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage

---

[5] It is also important to note that the total cost of Lazard's retention will be borne by the Debtors, the Canadian Debtors and the EMEA Debtors, to be paid out of the proceeds of the various Sales Transactions.

9

fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

24.     By this Application, the Debtors respectfully request that the Court approve the Amended Fee Structure.

25.     The Debtors believe that the Amended Fee Structure is reasonable and comparable to those generally charged by investment banking and financial advisory firms of similar stature to Lazard and for comparable engagements, both in- and out-of-court.  In reaching this conclusion, the Debtors have considered the leading role Lazard has taken in the remarkable period of M&A activity.  After such consideration, the Debtors came to believe, as does Lazard, that amending the Original Fee Structure as described above is in fact reasonable and compensates fairly Lazard for its services.

26.     The Debtors believe that, with respect to each and every one of the divesture transactions that have taken place since the commencement of these chapter 11 proceedings, Lazard has performed its leading role as a financial advisor and investment banker in an effective and prudent manner, successfully assisting the Debtors to maximize the value of the estate.

27.     Accordingly, the Debtors respectfully submit that the Amended Fee Structure is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

28.     Except as expressly set forth in this Application, all other terms and conditions set forth in the Engagement Agreement and approved by the Original Retention Order shall remain the same.

### Reservation of Rights

29.     Should this Court determine not to approve this Application for any reason, then the Engagement Agreement, as approved by the Original Retention Order, shall remain in full force and effect, without interruption.  The Debtors and Lazard hereby reserve any and all of

their rights to further amend, restate or terminate the Engagement Agreement pursuant to such agreement's terms, and subject to any necessary court approval.

## **Notice**

30. Notice of this Application has been provided via facsimile, electronic transmission, hand delivery or overnight mail to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

31. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: February 9, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley *(admitted pro hac vice)*
Lisa M. Schweitzer *(admitted pro hac vice)*
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
  and Debtors-in-Possession*