# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
          :

*In re*                     :    Chapter 11
          :

Nortel Networks Inc., *et al.*,[1]    :    Case No. 09-10138 (KG)
          :

            Debtors.      :    Jointly Administered
          :

          :    **Hearing date: March 3, 2010 at 2:00 p.m. (ET)**
          :    **Objections due: February 24, 2010 at 4:00 p.m. (ET)**

---------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL EXHIBIT B TO THE DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105 AND 363 AND FED. R. BANKR. P. 9019 FOR ENTRY OF AN ORDER APPROVING CERTAIN AGREEMENTS AND SETTLEMENTS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the Debtors to file under seal Exhibit B ("Exhibit B") to the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 9019 for the*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

*Entry of an Order Approving Certain Agreements and Settlements* (the "Approval Motion").[2]  In

support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a) and 107(b)

of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9018 and Local Rule 9018-1.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario

---

[2]      Capitalized terms used but not defined herein have the meanings ascribed to them in the Approval Motion.

[3]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

---

[4]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of liquidation for a further period of three months.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[5]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered

---

[5]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.      Debtors' Corporate Structure and Business**

11.      Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.      Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.      Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro

Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065].

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

## Relief Requested

15.     By this Motion, the Debtors seek an order pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Debtors to file Exhibit B under seal.

## Facts Relevant to this Motion

16.     Jabil is the primary supplier to Nortel of certain circuit boards, which are used in Nortel's Passport 15k business (the "Passport 15k Business"), and in turn incorporated into other products that both are supplied to other Nortel business lines and sold directly to the market.

17.     Jabil is a significant supplier to the Passport 15k Business pursuant to a Master Contract Manufacturing Services Agreement with NNL, dated August 6, 2008 (the "MCMSA") and a Virtual System House Agreement with NNI, dated November 25, 2008 (the "VSHA"). Since the Petition Date, Jabil and Nortel have entered into an additional agreement related to the MCMSA and the VSHA, including with respect to the award of certain additional business to Jabil (this additional agreement, together with the MCMSA and the VSHA, the "Supply Agreements").

18.     Jabil has asserted certain breaches by Nortel of the Supply Agreements, and has claimed such breaches would entitle it to stop shipping goods pursuant to such agreements. While Nortel does not admit to the validity of Jabil's claims, or its right to discontinue shipments

under the Supply Agreements, Nortel and Jabil entered into discussions to resolve their disputes and to ensure the continued supply of goods to Nortel.  After vigorous negotiations, NNL, NNI, NNUK and Jabil (collectively, the "ISDA Parties") reached an agreement on February 5, 2010 memorialized as the Inventory Security Deposit Agreement (the "ISDA"), an escrow agreement (the "Escrow Agreement"), and a related side agreement between NNL, NNI and NNUK (the "Side Agreement," and together with the ISDA and the Escrow Agreement, the "Agreements," all as attached to Exhibit B to the Approval Motion).

19.    Pursuant to the ISDA, Jabil has agreed to not pursue and to release certain claims against Nortel related to the alleged breach of the Supply Agreements, and Nortel and Jabil have entered into certain further commercial arrangements (which have been disclosed in full to representatives of the Committee and Bondholder Group) in connection with further performance of the Supply Agreements, as more fully described in the declaration of Robert Bariahtaris, attached as Exhibit B to the Approval Motion.  In connection with its entry into the ISDA, NNI entered into the Side Agreement with NNL and NNUK to address the allocation of certain costs related to the ISDA.

20.    The Approval Motion, filed simultaneously with this motion, seeks approval of the Agreements from this Court.  By this Motion, the Debtors seek to seal the declaration of Robert Bariahtaris in support of the Approval Motion and the exhibits thereto, including the ISDA, Escrow Agreement and Side Agreement (collectively, the "Sensitive Material").  The Sensitive Material contains confidential information concerning the relationship between the Debtors and one of their largest suppliers, Jabil.

### Basis for Relief

21.    The relief requested by the Debtors is squarely authorized under the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order,

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11

U.S.C. § 105(a).  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the

power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information . . . .

11 U.S.C. § 107(b).

22.     Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may

move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.  Local Rule 9018-1 requires any party who seeks to file documents under

seal to file a motion to that effect.  Del. Bankr. L.R. 9018-1(b).

23.     This Court has previously described "commercial information" as "information

which would result in 'an unfair advantage to competitors by providing them information as to

the commercial operations of the debtor.'"  In re Alterra Healthcare Corp., 353 B.R. 66, 75

(Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)).  This

Court has also noted that "commercial information" may include "the terms of agreements with

suppliers."  Id. at 76 (citing In re Barney's, Inc., 201 B.R. 703, 709 (Bankr. S.D.N.Y. 1996)).

24.     A movant is not required to demonstrate "good cause" to file under seal.  Rather,

if the material sought to be filed under seal falls within one of the categories identified in section

107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no

discretion to deny the application."  Orion, 21 F.3d at 27.

25.     Since the Sensitive Material contains "commercial information" within the ambit of section 107(b), the Court should enter an order permitting the Debtors to file Exhibit B under seal.  As described above, the Sensitive Material contains confidential commercial information concerning the relationship and commercial contract terms between the Debtors and one of their largest suppliers, Jabil.  The disclosure of this information could unfairly advantage the Debtors' competitors or their relationships with their other suppliers by revealing certain costs and terms associated with Nortel's supply chain and production process.  As this Court has noted before, the expenses associated with a debtor's operations are "commercial and sensitive in nature."  Alterra, 353 B.R. at 76.

26.     Additionally, in In re Orion Pictures Corp., the Second Circuit reviewed a bankruptcy court's order authorizing a debtor to file under seal a licensing agreement by which McDonald's agreed to distribute one of the debtor's products.  21 F.3d at 26.  The Second Circuit upheld the bankruptcy court's decision to file the agreement under seal, explaining that:

> Here, the bankruptcy court properly found, after reviewing the licensing agreement and other relevant material, that disclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to [the debtor's] ability to negotiate favorable promotion agreements * * *, thereby giving [the debtor's] competitors an unfair advantage.

Id. at 27-28.  In this case, the Sensitive Material contains information the release of which would similarly disadvantage the Debtors.  The Agreements with Jabil are both necessitated by and reflective of Nortel's unique relationship with one of its largest suppliers.  The disclosure of certain details of the compromise could severely impair the ability of the Debtors to successfully manage their relationships with their other suppliers and creditors, and thereby place strain on the Debtors' operations during this critical period and potentially result in added expenses that would drain additional resources from the Debtors' estates and reduce the eventual recovery of

creditors.  As one bankruptcy court has explained, "the commercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors."  <u>In re Global Crossing Ltd.</u>, 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003).

27.    Furthermore, the disclosure of certain economic details of the Agreements may impact the divestitures the Debtors are undertaking to maximize value for their estates and creditors, and the negotiations with the Debtors' suppliers in connection with such divestitures. Courts have recognized that filing commercial information under seal is appropriate when its disclosure would reduce the value of the estate by having a "serious and detrimental impact on the prices for which . . . assets could be sold."  <u>In re Farmland Industries</u>, 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003); <u>see also</u> <u>Global Crossing</u>, 295 B.R. at 725 (holding that section 107(b) of the Bankruptcy Code "squarely includes information that could prejudice either [the estate or its creditors] as part of a sale process").

28.    Consequently, this Court should enter an order authorizing the Debtors to file Exhibit B under seal.

### <u>Notice</u>

29.    Notice of the Motion has been given via hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Jabil; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### <u>No Prior Request</u>

30.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  February 10, 2010
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley
Lisa M. Schweitzer
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

3391050