## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

## NOTICE OF FILING OF THIRTY-SIXTH REPORT OF THE MONITOR OF THE CANADIAN NORTEL COMPANIES <u>IN THE CANADIAN PROCEEDINGS</u>

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

**PLEASE TAKE NOTICE** that on February 12, 2010, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation, in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List), by its undersigned counsel, filed, in the above-captioned cases, a copy of the Thirty-Sixth Report of the Monitor (the **"Thirty-Sixth Report"**), dated February 8, 2010.  A copy of the Thirty-Sixth Report is annexed hereto as <u>Exhibit A</u>.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Thirty-Sixth Report is also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

Dated: Wilmington, Delaware
      February 12, 2010

ALLEN & OVERY LLP

Ken Coleman
Lisa Kraidin
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
ken.coleman@allenovery.com
lisa.kraidin@allenovery.com

-and-

BUCHANAN INGERSOLL & ROONEY

By: /s/ Mary F. Caloway
Mary F. Caloway (No. 3059)
Peter J. Duhig (No. 4024)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone (302) 552-4200
Facsimile (302) 552-4295
mary.caloway@bipc.com

Attorneys for Ernst & Young Inc., as Monitor
and Foreign Representative of the Canadian Nortel
Group

## **EXHIBIT A**

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**THIRTY-SIXTH REPORT OF THE MONITOR
DATED FEBRUARY 8, 2010**

## INTRODUCTION

1.  On January 14, 2009 (the **"Filing Date"**) Nortel Networks Corporation (**"NNC"** and collectively with all its subsidiaries **"Nortel"** or the **"Company"**), Nortel Networks Limited (**"NNL"**), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the **"Applicants"**) filed for and obtained protection under the *Companies' Creditors Arrangement Act* (**"CCAA"**). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the **"Initial Order"**), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the **"Monitor"**) in the CCAA proceedings. The stay of proceedings was extended to April 23, 2010, by this Honourable Court in its Order dated January 21, 2010.

- 2 -

2.      Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed
        voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the
        "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S.
        Court**") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law,
        an official unsecured creditors committee (the "**Committee**") was established in January,
        2009.

3.      An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital
        Corporation has been organized and is participating in these proceedings as well as the
        Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of
        this Honourable Court dated May 27, 2009, and July 22, 2009, representative counsel
        was appointed on behalf of the former employees of the Applicants and on behalf of the
        continuing employees of the Applicants, respectively, and each of these groups is
        participating in the CCAA proceedings (as described in further detail below).

4.      Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed
        on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of
        Title 11 of the Code in the U.S. Court on July 14, 2009.

5.      Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA
        were granted Administration orders (the "**UK Administration Orders**") by the High
        Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**").
        The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and
        Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors,
        except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan

- 3 -

Bloom were appointed (collectively the "**Joint Administrators**"). On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "**English Proceedings**") under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

6.  On January 20, 2009, Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (together "**NN Israel**") were granted Administration orders by the court in Israel (the "**Israeli Administration Orders**"). The Israeli Administration Orders appointed representatives of Ernst & Young LLP in the UK and Israel as Administrators of NN Israel (the "**Joint Israeli Administrators**") and provided a stay of NN Israel's creditors which, subject to further order of the Israeli Court, remains in effect during the Administration.

7.  Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

**PURPOSE**

8.  The purpose of this Thirty-Sixth Report of the Monitor ("**Thirty-Sixth Report**") is to provide this Honourable Court with information regarding the Applicants' motion seeking an Order (the "**Notice Procedure Order**") approving:

- 4 -

- a service and notice process in respect of a settlement reached among the Applicants, the Monitor, the Settlement Employee Representatives (on their own behalf and on behalf of the parties they represent), the Former Employees' Representative Counsel, LTD Beneficiaries' Representative Counsel and CAW (as subsequently defined) (collectively, the "**Settlement Parties**") for the benefit of the Applicants and all of their stakeholders regarding certain issues related to, among other things, the Applicants' pension plans, Health and Welfare Trust (the "**HWT**") and certain employment related issues (the "**Settlement**");

- the procedure for the filing of a notice of intent to appear and oppose the Settlement in a prescribed form; and

- the setting of a bar date to file such notice of intent to appear and oppose the Settlement

and to provide the Monitor's support thereof.

**TERMS OF REFERENCE**

9. In preparing this Thirty-Sixth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and, accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Thirty-Sixth Report.

- 5 -

10.    Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

11.    Capitalized terms not defined in this Thirty-Sixth Report are as defined in the Pre-Filing Report, previous Reports of the Monitor and the Notice Procedure Order.

**GENERAL BACKGROUND**

12.    Nortel is a technology company that designs, develops and deploys communication products, systems, and solutions to its carrier and enterprise customers around the globe. Its principal assets include its people, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

13.    Since September 30, 2009, Nortel has conducted its global business through four reportable business unit segments: Wireline and Wireless Networks, Metro Ethernet Networks, Carrier Voice Application Solutions, and LG Nortel Co. Ltd. ("**LGN**"). The revenue and assets of each of the business units, except for LGN, are distributed among the multiple Nortel legal entities and joint ventures around the world.

14.    The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the voluntary proceedings under Chapter 11 of the Code are posted.

- 6 -

**EMPLOYEE REPRESENTATIVES AND REPRESENTATIVE COUNSEL**

15.    As set out in the Monitor's Seventh Report dated April 16, 2009, the Monitor was of the view that the appointment of representative counsel for employees was appropriate due to: (a) the large number of former employees of the Applicants; (b) the combination of resources required in order for employee claims to be advanced; and (c) the efficiency of representative counsel to coordinate assistance for the large number of individuals involved.

16.    Following a series of motions, this Honourable Court held that appointing representative counsel, along with employee representatives, was prudent to efficiently represent the interests of the large number of employees in various constituencies.

17.    Accordingly, the following appointments were made by a series of Court Orders:

(a)    the appointment on May 27, 2009 of Koskie Minsky LLP to act as representative counsel (the **"Former Employees' Representative Counsel"**) to all former employees, including pensioners, of the Applicants or any person claiming an interest under or on behalf of such former employees or pensioners and surviving spouses in receipt of an Applicant pension, or group or class of them (collectively, the "Former Employees");

(b)    the appointment on May 27, 2009 of Donald Sproule, David Archibald and Michael Campbell as representatives of the Former Employees (the **"Former Employees' Representatives"**), including for the purpose of settling or compromising claims by the Former Employees in the CCAA proceedings;

- 7 -

(c)     the appointment on July 30, 2009 of Koskie Minsky LLP as representative counsel (the **"LTD Beneficiaries' Representative Counsel"**, together with the Former Employees' Representative Counsel, **"Settlement Representative Counsel"**) to those employees of the Applicants who are currently not working due to an injury, illness or medical condition in respect of which they are receiving or entitled to receive disability income benefits by or through the Applicants, and who may assert an existing or future claim for payment, reimbursement or coverage arising in connection with their employment with the Applicants or termination thereof, a pension or benefit plan sponsored by the Applicants, including in relation to medical, dental, long-term or short-term disability benefits, life insurance or any other benefit, obligation or payment to which such person (or others who may be entitled to claim under or through such person) may be entitled from or through the Applicants, save and except those who are currently employed and whose benefit or other payments, as described above, arise directly or inferentially out of a collective agreement between the Applicants, or any of them, and the CAW (as defined below) (collectively, the **"LTD Beneficiaries"**);

(d)     the appointment on July 30, 2009 of Sue Kennedy as representative of the LTD Beneficiaries (the **"LTD Beneficiaries' Representative"**, together with the Former Employees' Representatives, the **"Settlement Employee Representatives"**), including for the purpose of settling or compromising claims by the LTD Beneficiaries in the CCAA proceedings;

- 8 -

(e)    the appointment on July 22, 2009 of Nelligan O'Brien Payne LLP and Shibley Righton LLP to act as representative counsel (the **"Continuing Employees' Representative Counsel"**) to all Canadian non-unionized employees of the Applicants whose employment with the Applicants is continuing (the **"Continuing Employees"**); and

(f)    the appointment on July 22, 2009 of Kent Felske and Dany Sylvain as representatives of the Continuing Employees (the **"Continuing Employees' Representatives"**, together with the Former Employees' Representatives and the LTD Beneficiaries' Representative, the **"Employee Representatives"**).

18.    Notwithstanding the appointment of Former Employees' Representative Counsel, any Former Employees already represented by Lewis Gottheil (**"CAW Counsel"**, and together with the Settlement Representative Counsel and Continuing Employees' Representative Counsel, the **"Representative Counsel"**), counsel to the National Automobile, Aerospace, Transportation and General Workers union of Canada (**"CAW"**), continue to be so represented and are not included in the mandate of the Former Employees' Representative Counsel (with all active and retired employees of the Applicants represented by CAW being referred to herein collectively as the **"Unionized Employees"**).

19.    This Honourable Court made specific mention that the employee representatives seeking appointment on behalf of former employees are members of the Nortel Retiree and Former Employee Protection Canada, a national-based group of over 2,000 former

- 9 -

employees with a stated mandate to defend and protect pensions, severance, termination and retirement payments and other benefits.

20.    Individual employees in the various constituencies were provided notice of the above appointments and the opportunity to opt-out of any such representation and alternatively represent themselves as an independent individual party to the extent they wish to appear in the CCAA proceedings. The Monitor has received two (2) opt-out letters, one from a former employee and one from an active employee.

21.    The various appointments described above and approved by Court Orders provide an important framework for the efficient resolution of employment related issues.

22.    As a result of progress made in the proceedings, including various significant sale transactions and the approval of the Final Canadian Funding and Settlement Agreement, the Settlement Parties utilized this framework to reach the Settlement.

23.    The Settlement Parties have entered into a Settlement Agreement dated February 8, 2010 (the "**Settlement Agreement**"). A copy of the Settlement Agreement is attached hereto as Appendix "A". Attached as Schedule "C" to the Settlement Agreement is a letter between the Applicants and the Superintendent of Financial Services of Ontario, in his capacity as administrator of the Pension Benefits Guarantee Fund, with respect to the Settlement Agreement.

24.    The Settlement Agreement primarily affects former employees, pensioners and LTD Beneficiaries. Although Continuing Employees' Representative Counsel is not a party to the Settlement Agreement, the Monitor and the Applicants have apprised such counsel of

- 10 -

the settlement process and the Settlement Agreement and have provided such counsel with drafts of relevant documents. The active employees represented by Continuing Employees' Representative Counsel are included in the notice and opposition process described below.

25.    The Applicants have advised the Monitor that they expect to attend before this Honourable Court on March 3, 2010 to request approval of the Settlement Agreement and matters required to implement the Settlement(the **"Settlement Approval Motion"**). The form of Order being sought at the Settlement Approval Motion is attached as Schedule "B" to the Settlement Agreement. Prior to that motion, the Monitor intends to submit a further report to this Honourable Court addressing the basis for its recommendation for approval of the Settlement Agreement and its belief that the Applicants have sufficient funds to make the payments contemplated by the Settlement Agreement.

26.    The motion materials relating to the Notice Procedure Order were served as soon as practicable following execution of the Settlement Agreement. As indicated below, motion materials relating to the Settlement Approval Motion will be served on, among others, the Service List.

**NOTICE AND OPPOSITION PROCESS**

27.    As described above, pursuant to the terms of the various court orders, the interests of Former Employees, LTD Beneficiaries, Continuing Employees and Unionized Employees, with the exception of one active employee and one former employee, are represented in these CCAA proceedings by the Employee Representatives and Representative Counsel. This includes, in the case of the Former Employees and LTD

- 11 -

Beneficiaries, representation for the purpose of settling and compromising claims. Notwithstanding this representation, the Settlement Parties are of the view that a Court-approved notice and opposition process will be beneficial primarily to ensure that: (a) all parties on whose behalf, now or in the future, the Settlement Employee Representatives, Settlement Representative Counsel and CAW entered into the Settlement Agreement are provided with adequate notice of the Settlement Approval Motion and the opportunity to appear and oppose such motion, failing which, such parties will, among other things, be bound by the terms of the Settlement Agreement and the Settlement Approval Order; and (b) those parties who are not represented by the Settlement Employee Representatives and the Settlement Representative Counsel (in particular, active employees of the Applicants) are provided with adequate notice of the Settlement Approval Motion and the opportunity to appear and oppose such motion, failing which, such parties will, among other things, be bound by the terms of the Settlement Approval Order.

28.    Several steps to provide notice of the Settlement have taken place.    Specifically, Settlement Representative Counsel has advised the Monitor: (a) it held a webinar on February 3, 2010, available to the constituents it represents and the Unionized Employees, for the purpose of providing such parties with advance notice of a forthcoming motion that would impact their situation; (b) it intends to issue one or more press releases, on or about February 8, 2010 (in both English and French), regarding the Settlement and the holding of a webinar relating thereto; and (c) it intends to hold the webinar on or about February 23, 2010, available to its constituents and the Unionized Employees to review and respond to inquiries regarding the Settlement Agreement and the notice and opposition process described below.

- 12 -

29.     The Applicants have also advised the Monitor that they intend to issue a press release to announce the entering into of the Settlement Agreement on or about February 8, 2010 (in both English and French).

*Notice*

30.     The Monitor will post a copy of a document package including a notice letter substantially in the form attached hereto as Appendix "B" (the **"Notice Letter"**), a notice of appearance substantially in the form attached hereto as Appendix "C" (the **"Notice of Appearance"**), the Settlement Agreement and all Schedules thereto, the Thirty-Sixth Report and the Notice Procedure Order (collectively, the **"Settlement Document Package"**) on its website at "www.ey.com/ca/nortel" as soon as practicable but in any event within two days following the making of the Notice Procedure Order.  The Settlement Document Package will include a French translation of the Notice Letter and the Notice of Appearance.

31.     The Monitor, on behalf of the Applicants, will send a copy of the Notice Letter to each of the Former Employees, the LTD Beneficiaries, the Unionized Employees, the Continuing Employees and provincial pension plan regulators (collectively, the **"Affected Settlement Notice Parties"**) (for which it has an address) as soon as practicable but in any event within seven days following the making of the Notice Procedure Order.

32.     The Monitor will publish an English version of the Notice Letter in the Toronto Star, The Globe and Mail (National Edition), the Ottawa Citizen, the London Free Press, the Montreal Gazette, the Calgary Herald, the Halifax Chronicle Herald, the Kingston Whig Standard, the Vancouver Sun and the Belleville Intelligencer and a French translation of

- 13 -

the Notice Letter in La Presse and La Droit as soon as practicable but in any event within seven days following the making of the Notice Procedure Order.

33.    The Monitor will use its toll free help line commencing within three days from the date of the Notice Procedure Order to respond to inquiries and information requests from Affected Settlement Notice Parties.

34.    The Monitor intends to deliver the Notice Letter: (a) in the case of Former Employees, the LTD Beneficiaries and retired Unionized Employees, by prepaid ordinary mail to the address as last shown in the records of the Applicants; (b) in the case of Continuing Employees and active Unionized Employees, by electronic transmission to the address as last shown in the records of the Applicants; and (c) in the case of the provincial pension plan regulators, by electronic transmission (to the majority of such regulators) or prepaid ordinary mail to the address as shown on Schedule "C" to the Notice Procedure Order.

35.    The Monitor believes the identification of Affected Settlement Notice Parties, the sending of the Notice Letter, the posting of the Settlement Document Package on the Monitor's website and the newspaper advertisements described above provide sufficient and timely notice to any such affected parties to submit their intention to appear and oppose the Settlement Approval Motion by the bar date described below.

36.    Settlement Representative Counsel has also advised the Monitor it intends to post the Settlement Document Package on its website at www.kmlaw.ca.

- 14 -

*Notice of Appearance Bar Date*

37.     Pursuant to the proposed notice procedure, any Affected Settlement Notice Party wishing to appear and oppose the Settlement Approval Motion must deliver a Notice of Appearance to the Monitor, with a copy to the Monitor's counsel.

38.     The Applicants have proposed a bar date of 11:59 p.m. (prevailing Eastern Time) on February 24, 2010 for the filing of a Notice of Appearance with the Monitor (the "**Notice of Appearance Bar Date**").

39.     Any Affected Settlement Notice Party filing a Notice of Appearance in accordance with paragraphs 37 and 38 above, must appear in person or through his or her own independent counsel, at such party's own expense, with respect to the Settlement Approval Motion and any other proceedings relating to the Settlement in which such party wishes to participate.

40.     Within five (5) days following the Notice of Appearance Bar Date, the Monitor will provide the Service List with notice of any Notice(s) of Appearance received that have not been withdrawn in that five (5) day period (the "**Remaining Notice(s) of Appearance**") by way of a Monitor's Report or otherwise at the discretion of the Monitor.   The Applicants and the Monitor, with the assistance of the Settlement Representative Counsel and the Employee Representatives, will use this five-day period to communicate with parties who submitted Notice(s) of Appearance.

- 15 -

41.    The Monitor will also provide copies of any Remaining Notice(s) of Appearance to the Settlement Parties, counsel to the Committee, counsel to the Bondholder Group and Continuing Employees' Representative Counsel.

42.    If an Affected Settlement Notice Party does not file a Notice of Appearance as provided for in the Notice Procedure Order, that Affected Settlement Notice Party: (a) shall not be entitled to appear or be heard at the Settlement Approval Motion or to receive any further notice of or materials and other documentation relating to, arising out of or in connection with the Settlement Approval Motion; (b) shall be forever barred and enjoined from making any objection or opposition to, disputing in any manner whatsoever, appealing or moving to set aside or vary, the Settlement Approval Motion, the Settlement, the Settlement Agreement, the Settlement Approval Order or any other documents, orders or proceedings with respect to, arising out of or in connection with the Settlement Approval Motion, the Settlement, the Settlement Agreement and the Settlement Approval Order; and (c) shall be bound by the terms of the Settlement, the Settlement Agreement and of all other documents entered into with respect to or in connection with the Settlement and the Settlement Agreement, and by the terms of the Settlement Approval Order and all other related orders that may subsequently be made in these proceedings.

43.    Affected Settlement Notice Parties who did not submit a Notice of Appearance by the Notice of Appearance Bar Date will also be bound by the terms of an amended Settlement Agreement, if such amendment does not materially adversely affect the interests of the Affected Settlement Notice Parties.   Neither the Monitor nor the Applicants will be required to provide any additional notice to such parties if the Settlement Agreement is subsequently amended in this manner.   If the Settlement

- 16 -

Agreement is amended in a manner different than that described above, the Monitor and the Applicants may attend before this Honourable Court to seek directions.

44.     The proposed notice and opposition process provides a simplified and streamlined method for the notification to the large number of Affected Settlement Notice Parties about the Settlement and the procedure required for them to appear and oppose the Settlement Approval Motion, if they so wish.

45.     The Monitor believes the Notice of Appearance Bar Date and independent individual representation, if a Notice of Appearance is filed by the Notice of Appearance Bar Date, is reasonable in the context of: (i) a Settlement Agreement entered into with Court-approved Employee Representatives and Representative Counsel; (ii) a prior opt-out process should individuals not wish to be represented by such Employee Representatives and Representative Counsel; (iii) advance notification to former employees and LTD Beneficiaries that a motion affecting their interests will be forthcoming; and (iv) an informational webinar hosted by Settlement Representative Counsel prior to the Notice of Appearance Bar Date providing an overview of the Settlement Agreement and the opportunity for affected parties to ask questions with respect to the Settlement Agreement and the notice and opposition process. Further, there will be a mailing to all Affected Settlement Notice Parties, email notices to all active employees and broad publication as described herein, as well as website posting. The Notice of Appearance Bar Date is twelve (12) calendar days after the date on which the Settlement Document Package, including the Notice Letter, will be publicly available. The Monitor believes the proposed notice and opposition process provides sufficient time for Affected Settlement

- 17 -

Notice Parties to evaluate the Settlement and submit a form of their intent to appear should they wish to oppose.

46.     The Applicants intend to serve the motion materials relating to the Settlement Approval Motion on the Service List and any Affected Settlement Notice Party who has filed a Notice of Appearance with the Monitor on or before the Notice of Appearance Bar Date and whose Notice of Appearance has not subsequently been withdrawn.

**MONITOR'S RECOMMENDATION**

47.     The Monitor recommends this Honourable Court approve the Notice Procedure Order on the terms and conditions substantially in the form as submitted by the Applicants. The proposed notice procedures are thorough, provide for notice through multiple media sources and allow affected parties the opportunity to review the terms of the Settlement Agreement and oppose the Settlement Approval Motion, if they so wish, well in advance of the proposed date for the Settlement Approval Motion.

All of which is respectfully submitted this 8th day of February, 2010.

**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants

Per:

Murray A. McDonald
President

APPENDIX "A"

[ATTACHED]

# SETTLEMENT AGREEMENT

**THIS AGREEMENT** made as of the 8th day of February, 2010

**AMONG :**

**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS GLOBAL CORPORATION**

(collectively, **"Nortel"** and individually a **"Nortel Entity"**)

- and --

**ERNST & YOUNG INC.**, solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

(the **"Monitor"**)

- and -

**DONALD SPROULE, DAVID ARCHIBALD and MICHAEL CAMPBELL**, court appointed representatives of the Nortel Former Employees (as hereinafter defined)

(the **"Former Employees Representatives"**)

- and -

**SUE KENNEDY**, court appointed representative of the Represented LTD Beneficiaries (as hereinafter defined)

(the **"LTD Representative"**)

- and -

**KOSKIE MINSKY LLP**, court appointed counsel to the Former Employees of Nortel and the Represented LTD Beneficiaries

(**"Representative Counsel"**)

- 2 -

- and -

**NATIONAL AUTOMOBILE, AEROSPACE,
TRANSPORTATION AND GENERAL WORKERS
UNION OF CANADA** (CAW-Canada) and its Locals 27,
1525, 1530, 1837, 1839, 1905 and/or 1915 and George
Borosh et al.

**("CAW")**


*A.   RECITALS*

> **WHEREAS** Nortel filed for and obtained protection under the *Companies'
Creditors Arrangement Act* (**"CCAA"**) by order of the Ontario Superior Court of Justice
(Commercial List) (the **"Court"**) dated January 14, 2009, as amended and restated (the **"Initial
Order"**);

> **AND WHEREAS** by Order of the Court dated May 27, 2009, the Former
Employees Representatives were appointed representatives of all former employees, including
pensioners, of Nortel or any person claiming an interest under or on behalf of such former
employees or pensioners and surviving spouses in receipt of a Nortel pension, or group or class
of them, other than (a) those represented by counsel to the CAW, and (b) those who elected
pursuant to the requirements of such Order not to be bound by such Order (the individuals in
respect of whom the Former Employees Representatives were appointed pursuant to such Order,
are referred to herein as the **"Nortel Former Employees"**);

> **AND WHEREAS** certain employees and former employees of Nortel are
represented by counsel to the CAW;

> **AND WHEREAS** by Order of the Court dated July 30, 2009, the LTD
Representative was appointed representative of those employees of Nortel who are currently not
working due to an injury, illness or medical condition in respect of which they are receiving or
entitled to receive disability income benefits by or through Nortel, and who may assert an
existing or future claim for payment, reimbursement or coverage arising in connection with their
employment with Nortel or termination thereof, a pension or benefit plan sponsored by Nortel,
including in relation to medical, dental, long-term or short-term disability benefits, life insurance
or any other benefit, obligation or payment to which such person (or others who may be entitled
to claim under or through such person) may be entitled from or through Nortel , other than (a)
those individuals who are currently employed and whose benefit or other payments, as described
above, arise directly or inferentially out of a collective agreement between any Nortel Entity and
the CAW, and (b) those individuals who elected pursuant to the requirements of such Order not
to be bound by such Order (the individuals in respect of whom the LTD Representative was
appointed pursuant to such Order are referred to herein as the **"Represented LTD
Beneficiaries"**);

- 3 -

AND WHEREAS Representative Counsel was appointed as counsel to the Nortel Former Employees and the Represented LTD Beneficiaries by Court orders dated May 27, 2009 and dated July 30, 2009, respectively, for the purpose of, among other things, settling or compromising the claims of the individuals they represent;

AND WHEREAS the parties to this Settlement Agreement (the **"Parties"**) have reached an agreement for the benefit of Nortel and all of its stakeholders, as well as the Official Committee of Unsecured Creditors of Nortel Networks Inc. and certain of its affiliates in the chapter 11 proceedings before the U.S. Bankruptcy Court for the District of Delaware (the **"UCC"**) and the Informal Nortel Noteholder Group (the **"Bondholder Committee"**) regarding certain issues related to, among other things, Nortel's Pension Plans, HWT (both as defined below) and certain employment related issues (collectively, the **"Settlement"**); and

NOW THEREFORE for value received (the receipt and sufficiency of which are hereby acknowledged), the Parties agree as follows:

*B.    BENEFITS AND EMPLOYEES*

1.    For the remainder of 2010, Nortel shall continue in accordance with current practice to pay medical and dental benefits and life insurance benefits to Nortel pensioners and their beneficiaries and survivors, whether or not represented by Representative Counsel, and for greater certainty, including without limitation all of the individuals referenced in paragraphs (a) and (b) of the second recital above (collectively, the **"Pensioners"**) and the Nortel employees receiving or who become entitled during 2010 to receive long term disability benefits, whether or not represented by Representative Counsel, and for greater certainty, including without limitation all of the individuals referenced in paragraphs (a) and (b) of the fourth recital above (collectively, the **"LTD Beneficiaries"**) in accordance with the current benefit plan terms and conditions. The Pensioners and the LTD Beneficiaries shall be referred to collectively as the **"M&D Beneficiaries"**. Medical and dental benefits to be paid to the M&D Beneficiaries shall be funded solely from Nortel's funds on a "pay as you go basis" in respect of benefits for the coverage period ending December 31, 2010 (the **"Medical and Dental Payments"**), provided that no Medical and Dental Payments claims submitted after February 28, 2011 shall be accepted, honoured or paid. Life insurance benefits to the M&D Beneficiaries shall continue unchanged until December 31, 2010 and shall be funded in the same manner as for 2009 (the **"Life Insurance Benefits"**). For greater certainty, no Medical and Dental Payments or Life Insurance Benefits shall be paid by Nortel for any benefit coverage period following December 31, 2010.

2.    Nortel shall pay income benefits to the LTD Beneficiaries and to those people receiving or who become entitled during 2010 to receive survivor income benefits and survivor transition benefits under Nortel benefit plans (as such plans exist at the date of this Settlement Agreement) solely from Nortel funds on a "pay as you

- 4 -

go basis" for benefits in respect of the coverage period from January 1, 2010 to December 31, 2010 (the "**Income Payments**"). For greater certainty, no Income Payments shall be paid by Nortel for the benefit coverage period following December 31, 2010.

3.   Upon the satisfaction of all of the conditions in paragraph I.1 of this Settlement Agreement, Nortel shall create a pool of $4.3 million (inclusive of Representative Counsel's costs in respect of the motion for leave to appeal referred to in paragraph B.4 below to a maximum of $100,000.00, based on documented and reasonable fees and disbursements) (the "**Termination Fund**") to be set aside for employees and former employees of Nortel whose employment has been terminated or is terminated prior to or on June 30, 2010 to whom amounts are or may become owing for termination or severance payments, who have not been offered employment with a purchaser of Nortel's assets and who have not received or are not entitled to receive (i) gross cumulative Annual Incentive Plan payments from and after October 1, 2009 of $3,000.00 or more; or (ii) a Key Employee Incentive Plan or Key Employee Retention Plan payment in 2009; or (iii) payment from any Court approved equivalent 2010 plan. Each such individual shall be paid a maximum of $3,000.00 (subject to applicable withholding taxes) from the Termination Fund (the "**Termination Payments**"). Any Termination Payments paid to such individuals shall be credited against allowed claims of such individuals and such claims shall be correspondingly reduced. To the extent that funds are unused in respect of terminations prior to or on June 30, 2010, or payment of Representative Counsel's costs referred to above, the Termination Fund may be used to make payments on account of terminations after June 30, 2010. If such unused funds are to be used for another purpose, such purpose shall be approved by the Court, on such basis as is agreed to between Representative Counsel and the Monitor.

4.   Upon the issuance of an order by the Court approving this Settlement Agreement in its entirety, including all schedules thereto, and upon the expiry of all appeals and rights of appeal in respect thereof (the "**Final Approval Order**"), Representative Counsel shall promptly withdraw their application for leave to appeal the decision of the Court of Appeal, dated November 26, 2009, to the Supreme Court of Canada (the "**Leave Application**") on a with prejudice basis. No claim for costs in respect of the Leave Application shall be made by or against Nortel, or any creditor participants (including the UCC and the Bondholder Committee).

5.   The employment of the LTD Beneficiaries shall terminate on December 31, 2010. However, such termination shall not affect in any manner any rights the LTD Beneficiaries or anyone claiming through them may have, either under a collective agreement, at common law or pursuant to any statute in relation to ordinary unsecured claims against Nortel arising out of their employment or termination thereof, including but not limited to claims for future lost long term

- 5 -

disability or income continuation benefits, pension benefits or pension benefit accruals, and medical, dental and life insurance benefits, nor should affect in any manner their ability to participate in any program of benefits for which they are eligible that is established as a successor to the plans in which they currently participate. For greater certainty, such claims, to the extent they are allowed as claims against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank as ordinary unsecured claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel. Nothing in this paragraph will affect the rights of the LTD Beneficiaries to make claims in respect of the HWT (as defined below).

C.    *HEALTH AND WELFARE TRUST*

1.    <u>Resolution</u>: The Parties will work towards a Court approved distribution of the Health and Welfare Trust ("**HWT**") corpus in 2010 to its beneficiaries entitled thereto and the resolution of any issues necessarily incident thereto. For greater certainty, nothing in this Settlement Agreement affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT. Any fees or expenses incurred in connection with any dispute or litigation among the beneficiaries of the HWT concerning entitlement (including without limitation all legal, actuarial and other fees and expenses of the trustee of the HWT and other service providers of the HWT) shall not be paid by Nortel, but shall be paid by the HWT corpus. For greater certainty, such fees or expenses shall not include those of the Monitor and incurred by Nortel in connection with any motion for termination of the HWT or for directions with respect to the HWT, which shall be paid by Nortel.

2.    <u>Ranking</u>: The CAW, Representative Counsel, the LTD Representative and the Former Employee Representatives (the "**Representatives**") agree, on behalf of those they represent and on their own behalf, that in respect of any funding deficit in the HWT or any HWT related claims (the "**HWT Claims**"), in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any of the entities listed in Schedule "A" (collectively the "**Nortel Worldwide Entities**" and individually, a "**Nortel Worldwide Entity**") or the HWT, they shall not advance, assert or make any claim that any HWT Claims are entitled to any priority or preferential treatment over ordinary unsecured claims, including without limitation that they  rank as priority claims against Nortel or any Nortel Worldwide Entity, or are the subject of a constructive trust or trust of any nature or kind in respect of the property and assets of Nortel or any Nortel Worldwide Entity, nor shall they take any action or support any party, person or entity, directly or indirectly, who advances, asserts or makes such claims, and such claims, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank as ordinary unsecured

- 6 -

claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel.

## D.  REGISTERED PENSION PLANS

1.    Administration:    Nortel shall continue to administer the Nortel Networks Negotiated Pension Plan (Registration No. 08587766) and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan (Registration No. 0342048) (collectively, the "**Pension Plans**") until 11:59 p.m. on September 30, 2010. For greater certainty, Nortel Networks Limited shall remain the administrator (as defined in the *Pension Benefits Act*) of the Pension Plans until 11:59 p.m. on September 30, 2010. Neither Nortel nor the Monitor will take any steps to initiate a wind up, in whole or in part, of the Pension Plans with an effective date prior to September 30, 2010 at 11:59 p.m. Nortel shall cease to administer the Pension Plans on September 30, 2010 at 11:59 p.m. and thereafter shall have no further responsibility or liability for administration thereof (including any windup). So long as Nortel continues to administer the Pension Plans, there shall be no change whatsoever to the plan terms of the Pension Plans without the approval of the Court, and no change to the current asset mix or investment policies with respect to the Pension Plans other than at the request, and with the consent, of the Representative Counsel and the approval of the Court.

2.    Payments:    Nortel shall continue to make contributions to the Pension Plans in the same manner as it has been doing over the course of the proceedings, under the CCAA, through to March 31, 2010, and for greater certainty, shall continue to make all current service payments and special payments related to the Pension Plans through that date in accordance with the last actuarial valuation for the Pension Plans filed with the Financial Services Commission of Ontario in the aggregate amount of $2,216,254.00 per month (the "**March Pension Payments**"). Thereafter and through to September 30, 2010, Nortel shall make only current service payments to the Pension Plans in the aggregate amount of $379,837.00 per month (the "**September Pension Payments**"). For greater certainty, Nortel shall not make any special payment contributions to the Pension Plans after March 31, 2010. The March Pension Payments and the September Pension Payments shall be referred to collectively as the "**Pension Payments**". Nortel shall not make any payments or contributions whatsoever to the Pension Plans after September 30, 2010, except in respect of any claims in respect of the Pension Plans allowed against Nortel (which claims shall rank on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel) pursuant to any claims adjudication procedure established in these proceedings. Neither Nortel, nor any Nortel Worldwide Entity shall have any obligation or liability regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans after September 30, 2010. For greater certainty, nothing in this paragraph affects any obligation or liability of Nortel regarding any contributions, fees, indemnities, charges or costs of any kind in

- 7 -

respect of the administration of the Pension Plans before 11:59 p.m. on September 30, 2010.

3.  Transition: With the assistance of the Monitor, Nortel shall use reasonable efforts to cause all books, records, data and other information relating to the Pension Plans or beneficial to the administration or winding-up of the Pension Plans in the possession or control of Nortel to be consolidated in Toronto, Ontario, Canada by no later than March 31, 2010. The Monitor and Nortel shall take all reasonable steps, at the sole cost and expense of Nortel, to complete the orderly transfer of the records of administration of the Pension Plans to a new administrator appointed by the Superintendent of Financial Services (the "**Superintendent**"), on September 30, 2010 (the "**New Administrator**"). Any non-compliance or allegation of non-compliance by Nortel or the Monitor under this paragraph D.3 shall have no effect on the enforceability or effectiveness of any other provision of this Agreement.

## E.  *RANKING OF PENSION CLAIMS*

1.  The Representatives agree on behalf of the members of the Pension Plans their and beneficiaries and surviving spouses who are entitled to benefits from the Pension Plans and whom they represent and on their own behalf (collectively, the "**Pension Claimants**") that in respect of any claim for payment of or damages related to any solvency or wind up deficiencies, unfunded liabilities, or unpaid or accrued contributions (including, for greater certainty, any special payments whatsoever), any liability regarding the Pension Benefits Guarantee Fund (the "**PBGF**") or any obligation of or claim arising against any person with respect to the Pension Plans or the administration thereof (the "**Pension Claims**"): (a) no Pension Claims shall enjoy any priority in any manner over the claims of ordinary unsecured creditors made against Nortel; (b) the Pension Claimants hereby waive, and shall not directly or indirectly assert, advance, re-assert or re-file any claims or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel or any Nortel Worldwide Entity or the Pension Plans, that the Pension Claims or any part thereof rank as a priority claim over the claims of ordinary unsecured creditors, as a trust (whether deemed or otherwise) or a lien or charge (hereinafter referred to as a "**lien**"), or under any other legal or equitable theory; and (c) the Pension Claimants shall not support, directly or indirectly, any application, claim or action by Nortel, in its capacity as administrator of the Pension Plans, the New Administrator, any successor administrator howsoever appointed, the Superintendent, as the administrator of and on behalf of the PBGF, or any other person or entity, to directly or indirectly assert, advance, re-assert or re-file any claims or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel or any

- 8 -

Nortel Worldwide Entity or the Pension Plans, that the Pension Claims or any part thereof rank as a priority claim over the claims of ordinary unsecured creditors, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory, and such claims shall be treated as ordinary unsecured claims, and for greater certainty, any such claims, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel.

2.  That portion of any proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel or by any person claiming that any payments by the PBGF or that the Pension Claims or any part thereof rank as a priority or preferential claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory shall be disallowed, but only to the extent that they claim such priority or preference, and such disallowance shall not be opposed or appealed, directly or indirectly, by such claimants. For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims, which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

## F.  NON-OPPOSITION

1.  The Representatives agree, on their own behalf and on behalf of those they represent, that they shall not oppose, directly or indirectly, any employee incentive program, including any charge therefor, that is determined by the Monitor to be reasonable and necessary for the continued operation of Nortel. They further agree that they shall not oppose, directly or indirectly, the creation of a trust with respect to claims or potential claims against persons who accept directorships of a Nortel Worldwide Entity in order to facilitate the restructuring, provided that: (i) such trust is approved and recommended by the Monitor; (ii) no part of the corpus of the trust may be used to pay bonuses or any other compensation to the directors; and (iii) any corpus of the trust remaining on the termination of the trust reverts to Nortel.

## G.  RELEASE AND CHARGE

1.  The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension Claimants and the beneficiaries of the HWT who they represent (collectively, the "**Pension HWT Claimants**") that each of the trustee of the HWT, the Monitor, and all members of Pension Plans' committees, (in their personal capacity), and their respective officers, directors, employees, agents, members, legal counsel, financial advisors,

- 9 -

and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing and the officers, directors, employees, agents, members, legal counsel, financial advisors of Nortel and the Nortel Worldwide Entities and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing (collectively, the "**Releasees**"), are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans except as required by this Settlement Agreement) and the investment of the Pension Plan assets; and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

2.    The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension HWT Claimaints that Nortel and the Nortel Worldwide Entities and their respective successors and assigns (collectively, the "**Nortel Releasees**") are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory.  For greater certainty, notwithstanding the foregoing, nothing in this Settlement Agreement shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

3.    In furtherance of the foregoing and in order to ensure that this constitutes a true settlement of the subject matter hereof, the Pension HWT Claimants agree that they shall not assert, advance or make any claims of any nature whatsoever

- 10 -

against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or the Nortel Releasees with respect to the subject matter of the release provisions of this Settlement Agreement.

4.    The M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the **"Payments Charge"**), which Payments Charge shall not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00) and which Payments Charge shall rank subordinate in priority to the Inter-company Charge (as defined in the Initial Order). The Payments Charge shall apply in these proceedings and in any subsequent bankruptcy or receivership. The maximum amount secured by the Payments Charge shall be reduced as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made. Once the last payment is made, the Monitor shall file a certificate (the **"Monitor's Certificate"**) with the Court certifying that the terms of the Settlement have been complied with by Nortel, and the Payments Charge shall automatically terminate and be extinguished by the filing of the Monitor's Certificate.

## *H.    CCAA PLAN OR SUBSEQUENT BANKRUPTCY*

1.    The Representatives agree on their own behalf and on behalf of the Pension HWT Claimants that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the **"Plan"**) be proposed or approved if: (i) the Plan provides for separate classification of any Pension HWT Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Pension HWT Claimants and the other ordinary unsecured creditors of Nortel do not receive the same *pari passu* treatment of their allowed ordinary unsecured claims against Nortel pursuant to the Plan.

2.    Notwithstanding anything else in this Settlement Agreement, including for greater certainty paragraph G.2 hereof, in the event of a bankruptcy of Nortel, if there is an amendment to any provision of the *Bankruptcy and Insolvency Act* that changes the current, relative priorities of the claims against Nortel, no party is precluded by this Settlement Agreement from arguing the applicability or non-applicability of any such amendment in relation to any such claim.

## *I.    CONDITIONS*

1.    This Settlement Agreement is conditional upon (i) Nortel obtaining the Final Approval Order substantially in the form attached as Schedule "B" with such changes as the parties may agree to, acting reasonably; (ii) the Superintendent in

- 11 -

his capacity as administrator of the PBGF, Nortel and the Monitor executing the letter attached as Schedule "C"; and (iii) the Leave Application having been withdrawn on a with prejudice basis.

2.    It is the intention of the Parties that these terms be binding upon, and enure to the benefit of the Pension HWT Claimants, the Releasees and the Nortel Releasees, and that: (i) as beneficiaries hereof, the Releasees and the Nortel Releasees shall be entitled to rely upon and to seek the enforcement of these terms, which cannot be varied without further order of the Court on full and proper notice to them; and (ii) the ordinary unsecured creditors of Nortel shall be entitled to rely upon and benefit from the provisions and agreements herein and to seek their enforcement, which provisions and agreements cannot be varied without further order of the Court on full and proper notice to them.

## J.    GENERAL

1.    The Monitor shall post the motion record for approval of the Settlement, including the Settlement Agreement and the proposed Final Approval Order on the Monitor's website at www.ey.com/ca/Nortel and on the website of Representative Counsel at www.kmlaw.ca.

2.    The Representatives, the Representative Counsel and the CAW shall co-operate with Nortel and the Monitor on all communications related to this settlement, as required.

3.    This Settlement Agreement will be governed by and interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein. The Parties hereby irrevocably consent and submit to the non-exclusive jurisdiction of the Ontario Superior Court of Justice and waive any objection based on venue or forum non conveniens with respect to any action commenced in connection with this Settlement Agreement.

4.    This Settlement Agreement may be executed in any number of counterparts (including by way of facsimile and PDF) and all of such counterparts taken together will be deemed to constitute one and the same instrument.

*[Signature pages to follow]*

**IN WITNESS WHEREOF** the Parties have duly executed this Agreement as of the date first written above:

**NORTEL NETWORKS CORPORATION**

Per: _____

Name: Anna Ventresca
Title: General Counsel-Corporate and Corporate Secretary

Per: _____

Name: John Doolittle
Title: SVP, Finance and Corporate Services

**NORTEL NETWORKS LIMITED**

Per: _____

Name: Anna Ventresca
Title: General Counsel-Corporate and Corporate Secretary

Per: _____

Name: John Doolittle
Title: SVP, Finance and Corporate Services

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

Per: _____

Name: Anna Ventresca
Title: Secretary

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

Per: _____

Name: John Doolittle
Title: President

Per: _____

Name: Anna Ventresca
Title: Secretary

NORTEL NETWORKS GLOBAL
CORPORATION

Per: _____

Name: Anna Ventresca       John Doolittle
Title: Secretary           President

ERNST & YOUNG INC., solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____

Name:
Title:

DONALD SPROULE, court appointed
representative of the Nortel Former Employees

Per: _____

Name:
Title:

DAVID ARCHIBALD, court appointed
representative of the Nortel Former Employees

Per: _____

Name:
Title:

MICHAEL CAMPBELL, court appointed
representative of the Nortel Former Employees

Per: _____

Name:
Title:

SUE KENNEDY, court appointed representative
of the Represented LTD Beneficiaries

Per: _____

Name:
Title:

**NORTEL NETWORKS GLOBAL CORPORATION**

Per: _____
        Name:
        Title:

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____
        Name:
        Title:

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per: _____
        Name:
        Title:

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per: _____
        Name:
        Title:

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per: _____
        Name:
        Title:

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____
        Name:
        Title:

**NORTEL NETWORKS GLOBAL CORPORATION**

Per: _____
        Name:
        Title:

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____
        Name:
        Title:

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per: _DEKSproule_____
        Name:
        Title: NATIONAL CHAIR  NRPC

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per: _____
        Name:
        Title:

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per: _____
        Name:
        Title:

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____
        Name:
        Title:

NORTEL NETWORKS GLOBAL
CORPORATION

Per:    _____
        Name:
        Title:

ERNST & YOUNG INC., solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per:    _____
        Name:
        Title:

DONALD SPROULE, court appointed
representative of the Nortel Former Employees

Per:    _____
        Name:
        Title:

DAVID ARCHIBALD, court appointed
representative of the Nortel Former Employees

Per:    _____
        Name: _____
        Title: _____

MICHAEL CAMPBELL, court appointed
representative of the Nortel Former Employees

Per:    _____
        Name:
        Title:

SUE KENNEDY, court appointed representative
of the Represented LTD Beneficiaries

Per:    _____
        Name:
        Title:

**ERNST & YOUNG INC.,** solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
          Name:
          Title:

**DONALD SPROULE,** court appointed
representative of the Nortel Former Employees

Per: _____
          Name:
          Title:

**DAVID ARCHIBALD,** court appointed
representative of the Nortel Former Employees

Per: _____
          Name:
          Title:

**MICHAEL CAMPBELL,** court appointed
representative of the Nortel Former Employees

Per: _M. A. Campbell, P. Eng._
          Name: M. A. CAMPBELL, P. ENG
          Title: VICE CHAIR, NRPC

**SUE KENNEDY,** court appointed representative
of the Represented LTD Beneficiaries

Per: _____
          Name:
          Title:

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____
      Name:
      Title:

**ERNST & YOUNG INC.**, solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
      Name:
      Title:

**DONALD SPROULE,** court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**DAVID ARCHIBALD,** court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**MICHAEL CAMPBELL,** court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**SUE KENNEDY,** court appointed representative
of the Represented LTD Beneficiaries

Per: _Sue Kennedy_____
      Name:
      Title:

**KOSKIE MINSKY LLP,** court appointed
counsel to the Former Employees of Nortel and
the Represented LTD Beneficiaries

Per:

Name: Susan Philpott

Title: Representative Counsel

**NATIONAL AUTOMOBILE, AEROSPACE,
TRANSPORTATION AND GENERAL
WORKERS UNION OF CANADA** (CAW-
Canada) and its Locals 27, 1525, 1530, 1837,
1839, 1905 and/or 1915 and George Borosh et al.

Per:

Name:

Title:

**KOSKIE MINSKY LLP,** court appointed
counsel to the Former Employees of Nortel and
the Represented LTD Beneficiaries

Per: _____

        Name:
        Title:

**NATIONAL AUTOMOBILE, AEROSPACE,
TRANSPORTATION AND GENERAL
WORKERS UNION OF CANADA** (CAW-
Canada) and its Locals 27, 1525, 1530, 1837,
1839, 1905 and/or 1915 and George Borosh et al.

Per: _____

        Name: PETER KENNEDY
        Title: NATIONAL SECRETARY-TREASURER

## SCHEDULE "A"

## NORTEL NETWORKS CORPORATION

### Direct and Indirect Subsidiaries

| |
|---|
| Sonoma Systems |
| Sonoma Limited |
| Sonoma Systems Europe Limited |
| Nortel Networks Optical Components (Switzerland) GmbH |
| Xros, Inc. |
| Architel Systems Corporation |
| Architel Systems (U.S.) Corporation |
| Architel Systems (UK) Limited |
| NN Applications Management Solutions Inc. |
| CoreTek, Inc. |
| Alteon WebSystems Inc. |
| Alteon WebSystems International Inc. |
| Alteon WebSystems AB |
| Alteon WebSystems International Limited |
| Nortel Networks Limited |
| Capital Telecommunications Funding Corporation |
| PT Nortel Networks Indonesia |
| Nortel Networks Peru S.A.C. |
| Nortel Networks (Thailand) Ltd. |
| Nortel Networks Telecommunicacoes do Brazil Ltda. |
| Nortel Networks Malaysia Sdn Bhd. |
| Nortel Networks New Zealand Limited |
| Nortel Networks Global Corporation |
| Nortel Networks de Colombia S.A. |
| Nortel Networks Chile S.A. |
| Nortel Networks de Argentina S.A. |
| Nortel Networks del Paraguay S.A. |
| Nortel Networks de Venezuela C.A. |

- 2 -

| |
|---|
| Nortel Networks del Ecuador S.A. |
| Nortel Networks de Mexico S.A. de C.V. |
| Nortel de Mexico, S. De R.L. de C.V. |
| Nortel Networks del Uruguay S.A. |
| Nortel Networks Technology Corporation |
| Nortel Vietnam Limited |
| Nortel Networks Korea Limited |
| Nortel Networks Singapore Pte Ltd |
| Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd. |
| Nortel Networks International Corporation |
| Shenyang Nortel Telecommunications Company Limited |
| Nortel Networks (Ireland) Limited |
| Northern Telecom Maroc SA |
| Nortel Networks Electronics Corporation |
| Regional Telecommunications Funding Corporation |
| Nortel Networks de Bolivia S.A. |
| 1328556 Ontario Inc. |
| CTFC Canada Inc. |
| Northern Telecom Canada Limited |
| Nortel Networks de Panama S.A. |
| TSFC Canada Inc. |
| Nortel Networks Mauritius Ltd. |
| Nortel Networks (India) Private Limited |
| Nortel Networks S.A. |
| Northern Telecom France SA |
| Nortel Networks France SAS |
| Matra Communications Business Systeme GmbH |
| Nortel Networks (China) Limited |
| Nortel Networks Communications Engineering Ltd. |
| Nortel Networks (Asia) Limited |
| Guangdong – Nortel Telecommunications Equipment Co. Ltd. |
| LG-Nortel Co. Ltd. |

- 3 -

| |
|---|
| 6141-Sub  Novera Optics Korea Inc. |
| Novera Optics Inc. |
| LN Srithai Comm Co Ltd |
| Nortel Communications Inc. |
| Nortel Networks Financial Services Limited Liability Co. |
| Nortel Networks Inc. |
| Bay Networks do Brasil Ltda. |
| Bay Networks Fedes de Dados para Sistemas Informaticos, da. |
| Clarify Limited |
| Clarify K.K. |
| Nortel Networks Cable Solutions Inc. |
| Nortel Networks Capital Corporation |
| Nortel Networks Technology K.K. |
| Nortel Networks Eastern Mediterranean Ltd. |
| Nortel Networks International Inc. |
| Nortel Ventures LLC |
| Nortel Networks Japan |
| Penril Datacomm Limited |
| Nortel Networks Southeast Asia Pte Ltd. |
| Nortel Networks Technology (Thailand) Ltd. |
| Nortel Technology Excellence Centre Private Limited |
| Diamondware, Ltd. |
| Northern Telecom International Inc. |
| Nortel Networks Optical Components Inc. |
| The Nortel Foundation |
| Nortel Networks India International Inc. |
| Nortel Networks (CALA) Inc. |
| Nortel Networks de Guatemala, Ltda. |
| Nortel Trinidad and Tobago Limited |
| Qtera Corporation |
| Nortel Networks Technology Ltd. |
| Nortel Networks (Shannon) Limited |

- 4 -

| |
|---|
| Nortel Networks Europe Sales Limited |
| Nortel Government Solutions Incorporated |
| AC Technologies, Inc. |
| Integrated Information Technology Corporation |
| Nortel Networks UK Limited |
| Northern Telecom International Limited |
| Nor. Web DLP Limited |
| Nortel Limited |
| Nortel Networks (Northern Ireland) Limited |
| Networks Employee Benefit Trustee Company Limited |
| Nortel-SE d.o.o. Beograd |
| Nortel Networks Properties Limited |
| Promatory Communications  Limited |
| X-CEL Communications Limited |
| Nortel Networks Optical Components Limited |
| Nortel Networks (Photonics) Pty. Ltd. |
| Northern Telecom PCN Limited |
| Telephone Switching International Limited |
| Frisken Investments Pty. Ltd. |
| Betts Investments Pty. Ltd. |
| Periphonics Limited |
| Nortel Networks Australia Pty Limited |
| Nortel Australia Communication Systems Pty. Limited |
| Star 21 Networks GmbH |
| Star 21 Networks (Schweiz) AG |
| Star 21 Networks Deutschland GmbH |
| Star 21 Facility Management Verwaltung GmbH |
| Star 21 Operations GmbH |
| Star 21 Facility Management GmbH & Co. KG |
| Nortel Networks International Finance & Holding BV |
| Uni-Nortel Communication Technologies (Hellas), S.A. |
| Nortel Networks (Austria) GmbH |

- 5 -

| |
|---|
| Nortel Networks AG |
| Nortel Networks AS |
| Nortel Networks S.R.O. |
| Nortel Networks S.p.A. |
| Nortel Networks S.A. |
| Nortel Networks South Africa (Proprietary) Limited |
| Nortel Networks NV |
| Matra Communication Cellular Terminals GmbH |
| Nortel Networks Engineering Service Kft. |
| Nortel Networks (Bulgaria) EOOD |
| Nortel Networks Slovensko, s.r.o. |
| Nortel Networks Romania Srl |
| Nortel Networks O.O.O |
| Nortel Networks Portugal, S.A. |
| Nortel Communications Holdings (1997) Limited |
| Nortel Networks Israel (Sales and Marketing) Limited |
| Nortel Networks Communications (Israel) Limited |
| Nortel Networks Polska Sp. z.o.o. |
| Nortel GmbH |
| Nortel Networks BV |
| Nortel Networks Malta Limited |
| Nortel Ukraine Ltd. |
| Nortel Networks AB |
| Nortel Networks OY |
| Nortel Networks, Hispania S.A. |
| Nortel Networks Netas Telekomunikasyon A.S. |

**SCHEDULE "B" TO SETTLEMENT AGREEMENT**

**[ATTACHED]**

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | ●, THE ● DAY OF |
| | ) | |
| JUSTICE MORAWETZ | ) | ●, 2010 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

### S E T T L E M E N T   A P P R O V A L   O R D E R

**THIS MOTION**, made by the Applicants (collectively, "Nortel") for an order
approving the settlement agreement made as of the 8th day of February, 2010, attached as
Schedule "A" to this Order (the "Settlement Agreement") and for the other relief set out in the
Notice of Motion dated ● was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of ● sworn ●, 2010 (the "●Affidavit") and the ● Report
of Ernst & Young Inc. dated ●, 2010 (the "● Report") in its capacity as monitor (the
"Monitor"), and on hearing submissions of counsel for the Applicants and the Monitor, and
on the consent of CAW, the Former Employees Representatives, the LTD Representative and
Representative Counsel (as those terms are defined in the Settlement Agreement); the UCC,
the Bondholder Committee (as those terms are defined in the Settlement Agreement) and the
Superintendent of Financial Services of Ontario (the "Superintendent") as the administrator of
and on behalf of the Pension Benefits Guarantee Fund (the "PBGF") not opposing, no one

appearing for ● although duly served as appears for the affidavit of service of ● date ●, 2010, filed, ●.

1.     **THIS COURT ORDERS** that service of the Notice of Motion, the ● Report and the Motion Record is in accordance with the Order of this Court dated ● and is hereby validated so that this Motion is properly returnable today and further service thereof is hereby dispensed with.

2.     **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the ● Affidavit or the Settlement Agreement.

**Settlement Agreement**

3.     **THIS COURT ORDERS** that the Settlement Agreement is hereby approved in its entirety, including all schedules attached thereto, and that the Parties thereto (including by representation) are hereby bound by this Order and the Settlement Agreement  and authorized and directed to comply with their obligations thereunder, including, without limitation, to make the payments provided for therein.

**Pension Plans**

4.     **THIS COURT ORDERS AND DECLARES** that any Pension Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans shall, to the extent they are allowed pursuant to any claims adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, such that no part of any Pension Claims shall be entitled to any preferential treatment or enjoy any priority in any manner over the claims of ordinary unsecured creditors made against Nortel, or rank as a priority claim, as a trust (whether deemed or otherwise) or a lien or charge.

5.     **THIS COURT ORDERS AND DECLARES** that no person or entity, including without limitation, (i) the Representatives, (ii) the Superintendent, as administrator of and on behalf of the PBGF, (iii) NNL, as the administrator of the Pension Plans, (iv) all successor

administrators of the Pension Plans (whether appointed by the Superintendent or otherwise), and (v) the Pension HWT Claimants, all future members and beneficiaries of the Pension Plans, the trustee of the Pension Plans, the employees and former employees of Nortel and others who may have or make claims against Nortel or any Nortel Worldwide Entity with respect to employment or post employment or post retirement benefits (collectively, with the Pension HWT Claimants, the "Employee Claimants"), shall directly or indirectly assert, advance, re-assert or re-file any claim or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent such claims are provable) or the Pension Plans except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and shall not assert or advance any claim, directly or indirectly, that the Pension Claims, or any part thereof, ranks as a priority or preferential claim over the claims of ordinary unsecured creditors or Nortel, including, without limitation, that it is the subject of a trust (whether deemed or otherwise) or a lien or charge, or under other legal or equitable theory, and all such priority, trust, lien or charge claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the Pension Plans, the trustee of the Pension Plans, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

6.      **THIS COURT ORDERS** that the portion of proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel, by any Employee Claimants or by any other person or entity claiming, asserting or advancing priority or preferential treatment of any kind, including, without limitation, trusts (whether deemed or otherwise) liens or charges in respect of any Pension Claims or payments by the PBGF with respect to the Pension Plans be and they hereby are disallowed, but only to the extent that they claim such priority or preferential treatment, without prejudice to the ordinary unsecured claims included in such proofs of claim. For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims, which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors

of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

7.     **THIS COURT ORDERS** that with respect to claims by the Superintendent on behalf of the PBGF, and any administrator appointed by the Superintendent, paragraphs 4, 5 and 6 shall only apply if: (i) the Pension Payments are made in accordance with the Settlement Agreement; and (ii) no bankruptcy order is made with respect to Nortel on or before September 30, 2010.

8.     **THIS COURT ORDERS** that as long as NNL continues to administer the Pension Plans, there shall be no change whatsoever to the plan terms of the Pension Plans without the approval of the Court, and no change to the current asset mix or investment policies with respect to the Pension Plans other than at the request, and with the consent, of the Representative Counsel and the approval of the Court.

9.     **THIS COURT ORDERS** that Nortel shall make all current service payments and special payments to the Pension Plans in the same manner as it has been doing over the course of the proceedings under the CCAA, through to March 31, 2010 in accordance with the last actuarial valuation for the Pension Plans filed with the Financial Services Commission of Ontario ("FSCO") in the aggregate amount of $2,216,254.00 per month. Thereafter and through to September 30, 2010, Nortel shall make only current service payments to the Pension Plans (in accordance with the last actuarial valuation for the Pension Plans filed with FSCO) in the aggregate amount of $379,837.00 per month. For greater certainty, Nortel shall not be required to make any special payment contributions to the Pension Plans after March 31, 2010. Nortel shall not be required to make any payments to the Pension Plans after September 30, 2010, except in respect of any claims in respect of the Pension Plans allowed against Nortel (which claims shall rank on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) pursuant to any claims adjudication procedure established in these proceedings. Neither Nortel, nor any Nortel Worldwide Entity shall have any liability regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs after September 30, 2010. For greater certainty, nothing in this paragraph affects any obligation or liability of Nortel

regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs before 11:59 p.m. on September 30, 2010.

**Health and Welfare Trust**

10.    **THIS COURT ORDERS AND DECLARES** that any HWT Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the HWT shall, to the extent they are allowed against Nortel pursuant to any claims adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and no part of any such HWT Claims shall rank as a preferential or priority claim or shall be the subject of a constructive trust or trust of any nature or kind.

11.    **THIS COURT ORDERS AND DECLARES** that  no person or entity, including without limitation, the Employee Claimants and the Representatives, shall, directly or indirectly (i) advance, assert, re-assert, re-file or make any HWT Claim in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent that such claims are provable) or the HWT except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, or (ii) advance, assert, re-assert, re-file or make any claim that any HWT Claims are entitled to any priority or preferential treatment over ordinary unsecured claims, including without limitation that they rank as preferential or priority claims against Nortel or any Nortel Worldwide Entity, or are the subject of a constructive trust or trust of any nature or kind, and all such claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the HWT and the trustee of the HWT, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

12.    **THIS COURT ORDERS AND DECLARES THAT** nothing in this Order, including, without limiting the generality of the foregoing, the provisions of paragraphs 10

and 11, affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT.

**Release and Charge**

13.     **THIS COURT ORDERS** that the M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the "Payments Charge"), which Payments Charge shall:  (i) not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00); (ii) rank subordinate in priority to the Inter-company Charge (as defined in the Initial Order); (iii) apply in these proceedings and in any subsequent bankruptcy or receivership; (iv) be reduced in amount as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made; and (v) automatically terminate and be extinguished on the filing with this Honourable Court by the Monitor of a certificate certifying that the terms of the Settlement Agreement have been complied with by Nortel.

14.     **THIS COURT ORDERS** that the creation of the Payments Charge shall not preclude this Court from creating additional charges under the Initial Order that rank in priority to or *pari passu* with the Payments Charge.

15.     **THIS COURT ORDERS AND DECLARES** that the Releasees, the CAW, the Representatives, the Superintendent in his capacity as administrator of and on behalf of the PBGF (if and only if paragraphs 4, 5 and 6 apply as provided in paragraph 7), and their legal counsel and financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing, be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien or charge, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans, except as required by paragraph 9 of this Order) and the investment of the Pension Plan assets, and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

16.    **THIS COURT ORDERS AND DECLARES** that the Nortel Releasees be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien or charge, or under any other legal or equitable theory.   For greater certainty, notwithstanding the foregoing, nothing in this Order shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims (which claims shall rank as on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

17.    **THIS COURT ORDERS** that the Employee Claimants shall not assert, advance or make any claims of any nature whatsoever against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or Nortel Releasees with respect to the subject matter of the release provisions hereof.

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

**CCAA Plan or Subsequent Bankruptcy**

18.     **THIS COURT ORDERS AND DECLARES** that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the "Plan") be proposed or approved by the Court if: (i) the Plan provides for separate classification of any Employee Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Employee Claimants and the other ordinary unsecured creditors do not receive the same *pari passu* treatment of their allowed claims against Nortel pursuant to the Plan.

19.     **THIS COURT ORDERS** that notwithstanding anything else in this Order, including for greater certainty paragraph 16 hereof, if there is an amendment to any provision of the *Bankruptcy and Insolvency Act* that changes the current, relative priorities of the claims against Nortel, no party is precluded by this Order from arguing the applicability or non-applicability of any such amendment in relation to any such claim.

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

**SCHEDULE "A"**

SCHEDULE "C" TO SETTLEMENT AGREEMENT

[ATTACHED]

# NRTEL

February 8, 2010

Pension Benefits Guarantee Fund (Ontario)
c/o Financial Services Commission of Ontario
4th Floor
5160 Yonge Street
Toronto, ON
M2N 6L9

**Attention: K. David Gordon, Deputy Superintendent, Pensions**

Dear Sirs:

**Re:    Court File No. 09-CL-7950**
**In the Matter of the Companies' Creditors Arrangement Act and Nortel**
**Networks Corporation et al (Nortel")**

This letter sets out, among other things, the understanding among Nortel, the Monitor and the Superintendent of Financial Services in his capacity as Administrator of the Pension Benefits Guarantee Fund concerning the administration of Nortel's registered pension plans (the "Pension Plans") and the transition of the Pension Plans to a new administrator, in order to provide for an orderly, cost effective transition that will be in the best interests of the members of the Pension Plans.

Defined terms used herein shall have the meaning given to them in the agreement made as of the 8th day of February, 2010 a copy of which is attached hereto as Schedule "A" (the "Settlement Agreement"):

1.  <u>Conditional Understanding</u>: It is acknowledged that the terms of this letter are conditional on (a) the Settlement Agreement having been fully executed and delivered, and (b) the order of the Court approving the Settlement Agreement having been issued and entered substantially in the form of the Order attached as Schedule "B".

2.  <u>Pension Plan Administration</u>: Nortel will continue to administer the Pension Plans until September 30, 2010 at 11:59 p.m. Neither Nortel nor the Monitor will take any steps to initiate a wind up, in whole or in part, of the Pension Plans with an effective date prior to October 1, 2010. So long as Nortel is the administrator of the Pension Plans there will be no change to the current asset mix, investment policies or the plan terms with respect to the Pension Plans without the consent of the Representative Counsel and the approval of the Court.

3.  <u>Pension Plan Transition</u>: (a) Nortel will ensure that all books, records, data and other information relating to the Pension Plans or beneficial to the



administration or winding-up of the Pension Plans are consolidated in Toronto, Ontario, Canada by no later than March 31, 2010; and (b) the Monitor and Nortel will take all reasonable steps, at the sole cost and expense of Nortel, to complete the orderly transfer of the administration of the Pension Plans to a new administrator appointed by the Superintendent effective October 1, 2010 (the "New Administrator").

4.    <u>Settlement Agreement and Settlement Approval Order:</u>  The Superintendent will not oppose the granting of an Order substantially in the form attached hereto as Schedule "B".

5.    <u>Employee Incentive and Director Charge Order:</u>  The Superintendent will not oppose the granting of a court order approving (a) any employee incentive program, including any charge therefor, that is determined by the Monitor to be reasonable and necessary for the continued operation of Nortel, or (b) the creation of a trust for persons who accept the directorship of Nortel worldwide subsidiaries in order to facilitate the restructuring, provided that: (i) such trust is approved and recommended by the Monitor; (ii) no part of the corpus of the trust may be used to pay bonuses or any other compensation to the directors; and (iii) any corpus of the trust remaining on the termination of the trust reverts to Nortel.

6.    <u>Directors:</u>  The Superintendent confirms that as of January 15, 2010, he is not aware of any claims against directors, officers or the Monitor, other than such claims as may arise as a result of the transfer of pension information and other records outside of Canada.

Please sign and return the copy of this letter attached.

Yours very truly,

attachments



**Nortel Networks Corporation**

Per:

Name  ANNA VENTRESCA
Title  General Counsel - Corporate
and Corporate Secretary

**Nortel Networks Corporation**

Per:

Name  JOHN DOOLITTLE
Title  Sr. Vice President, Finance and
Corporate Services

**Nortel Networks Limited**

Per:

Name  ANNA VENTRESCA
Title  General Counsel - Corporate
and Corporate Secretary

**Nortel Networks Limited**

Per:

Name  JOHN DOOLITTLE
Title  Sr. Vice President, Finance and
Corporate Services

**Nortel Networks Global Corporation**

Per:

Name  Anna Ventresca
Title  Secretary

**Nortel Networks Global Corporation**

Per:

Name  JOHN DOOLITTLE
Title  President

**Nortel Networks International Corporation**

Per:

Name  Anna Ventresca
Title  Secretary

**Nortel Networks International Corporation**

Per:

Name  John Doolittle
Title  President

**Nortel Networks Technology Corporation**

Per:

Name  Anna Ventresca
Title  Secretary



Ernst & Young Inc., solely in its capacity
as Monitor in the CCAA proceedings of
Nortel and not in its personal capacity

Per:

_____
Name
Title

Superintendent of Financial Services of
Ontario as administrator of the Pension
Benefits Guarantee Fund without personal
liability
Per:

_____
Name
Title



Ernst & Young Inc., solely in its capacity
as Monitor in the CCAA proceedings of
Nortel and not in its personal capacity

Per:

_____
Name
Title

Superintendent of Financial Services of
Ontario as administrator of the Pension
Benefits Guarantee Fund without personal
liability

Per: _____

Name  R. David Gordon

Title  Deputy Superintendent, Pensions

APPENDIX "B"

[ATTACHED]

**NOTICE LETTER**
**CONCERNING NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY**
**CORPORATION**
(hereinafter collectively referred to as "Nortel")

RE:   **NOTICE OF SETTLEMENT OF MATTERS INVOLVING NORTEL, ITS FORMER**
**EMPLOYEES, EMPLOYEES ON LONG TERM DISABILITY ("LTD**
**BENEFICIARIES"), ITS PENSIONERS AND ITS CONTINUING EMPLOYEES AND**
**NOTICE OF BAR DATE AND RELEASE RELATING TO THE PROPOSED**
**SETTLEMENT AND ORDER IMPLEMENTING THE SETTLEMENT**

The Court appointed representatives of former employees of Nortel, including pensioners, the Court appointed representative of the LTD Beneficiaries, the Court appointed representative counsel to such parties ("**Representative Counsel**"), CAW, Nortel and the Monitor have entered into a settlement agreement in respect of which a Court order will be sought involving, among other things:

(i)     payment by Nortel of medical, dental and life insurance benefits to pensioners and LTD Beneficiaries is to continue unchanged until December 31, 2010;

(ii)    payment by Nortel of income benefits to LTD Beneficiaries, and of survivor income and survivor transition benefits is to be made from Nortel funds on a "pay as you go basis" until December 31, 2010;

(iii)   LTD Beneficiaries will maintain status as active employees until December 31, 2010, with termination of employment to occur on that date;

(iv)    payment to a maximum of $3,000 to eligible terminated employees who, among other things, were terminated on or prior to June 30, 2010, as an advance against their claims under the *Companies' Creditors Arrangement Act*, for a total maximum pool of $4.2 million;

(v)     the termination of special payment contributions by Nortel to its pension plans at the end of March, 2010, and the continued administration and current service funding by Nortel of its pension plans until September 30, 2010, after which the administration will be transferred in accordance with the Pension Benefits Act and no creditor preference will apply to the pension deficit;

(vi)    a diminishing charge on Nortel assets initially in the amount of $57 million to secure the payments contemplated by (i), (ii), (iv) and (v) above;

(vii)   to the extent that claims in respect of, among other things, any pension plan deficit, by, among others, a pension plan administrator, or any other claims of the continuing and former employees of Nortel, including pensioners and LTD Beneficiaries, are allowed pursuant to any claims adjudication process established with respect to Nortel, such claims will rank as ordinary unsecured claims on a *pari passu* (equal priority) basis with the claims of all ordinary unsecured creditors of Nortel;

(viii)  the release of certain potential claims by all persons including all pension plan beneficiaries and health and welfare trust beneficiaries as against certain specified persons and entities including Nortel's directors, officers and pension plan committee members and the Monitor, relating to the administration of Nortel's pension plans and health and welfare trust, except for potential claims for fraud and certain

potential claims against directors for, among others, misrepresentation (the release does not bar unsecured claims employees and former employees may have against Nortel itself, including claims related to pensions plans, health and welfare benefits or claims to the funds held in the Health and Welfare Trust) ; and

(ix)     the withdrawal, on a with prejudice basis, of the pending leave to appeal application to the Supreme Court of Canada with respect to the payment of termination and severance claims by the former employees of Nortel.

(collectively, the "**Settlement**").

Questions can be directed to the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808). Representative Counsel can be contacted at 1-866-777-6344 or www.kmlaw.ca/case-central or nortel@kmlaw.ca. You may also contact the Court appointed representatives directly through www.nortelpensioners.ca or CNELTD-owner@yahoogroups.com. If you are a member or former member of the CAW with respect to Nortel represented by counsel to the CAW, you may contact Barry Wadsworth at 1-800-268-5763 ext. 3776. Representative Counsel will hold a webinar, with an audio-only option for individuals without internet access, on February 23, 2010 to explain the Settlement and its impact.

The Settlement, including the Settlement Approval Order sought as part of the Settlement, contains terms and provisions that may compromise, limit or release certain of your rights. Please consult the Settlement Document package for more details at the Monitor's website "**www.ey.com/ca/nortel**".

This notice is being published pursuant to an Order of the Superior Court of Justice of Ontario (the "**Court**") made February 9, 2010 (the "**Notice Procedure Order**"). Pursuant to the Notice Procedure Order, this Notice Letter has been approved by the Court. A copy of this Notice Letter will be sent to former employees, pensioners, LTD Beneficiaries and continuing employees of Nortel and certain regulatory authorities (the "**Settlement Notice Parties**") on or before February 16, 2010, if those parties are known to Nortel, and if Nortel has a current address. Settlement Notice Parties may obtain a Settlement document package, including the form of Settlement Approval Order, further details of the Settlement and a form of notice of appearance (the "**Notice of Appearance**"), from the website of Ernst & Young Inc., Court-appointed monitor of Nortel, at "**www.ey.com/ca/nortel**".

A motion for approval and implementing of the Settlement including for the barring and release of certain claims (the "**Settlement Approval Motion**") has been scheduled with the Court in Toronto for March 3, 2010. If you wish to attend and be heard at the Settlement Approval Motion on March 3, 2010 to oppose such motion, a Notice of Appearance must be submitted by courier, registered mail, email or fax to the Monitor and the Monitor's counsel, Goodmans LLP, at the following addresses:

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:     Nortel Settlement
> Telephone:    1-416-943-4439 or 1-866-942-7177
> E-mail         nortel.monitor@ca.ey.com
> Fax:           1-416-943-2808
>
> With a copy to:

GOODMANS LLP
Lawyers for the Court-appointed Monitor of Nortel Networks Corporation & others
The Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, Ontario
Canada  M5B 2S7

| | |
|---|---|
| Attention: | Gale Rubenstein |
| Email: | grubenstein@goodmans.ca |
| Fax:      . | 1-416-979-1234 |

**Notices of Appearance must be received by the Monitor and Goodmans LLP by 11:59 p.m. (prevailing Eastern Time) on February 24, 2010 (the "Notice of Appearance Bar Date"). It is your responsibility to ensure that the Monitor and Goodmans LLP receive your Notice of Appearance by the Notice of Appearance Bar Date if you wish to appear and be heard to oppose the Settlement Approval Motion.  If you file a Notice of Appearance by the Notice of Appearance Bar Date you must be represented in person or through legal counsel as an independent individual party at your own expense with respect to the Settlement Approval Motion and any other proceedings regarding the Settlement and the Settlement Agreement in which you wish to participate.**

**PLEASE NOTE: Several of the Nortel affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States. None of the Settlement, the Settlement Agreement Approval Motion nor these procedures apply to former employees, employees on long-term disability, pensioners and continuing employees of the Nortel affiliates.**

**SETTLEMENT NOTICE PARTIES WILL BE BOUND BY ALL TERMS OF THE SETTLEMENT, THE SETTLEMENT AGREEMENT AND THE SETTLEMENT APPROVAL ORDER AND WILL BE BARRED AND ENJOINED FROM OBJECTING TO, DISPUTING IN ANY MANNER WHATSOEVER, APPEALING OR MOVING TO SET-ASIDE OR VARY THE SETTLEMENT, THE SETTLEMENT AGREEMENT, OR THE SETTLEMENT APPROVAL ORDER IF A NOTICE OF APPEARANCE IS NOT RECEIVED BY THE MONITOR AND GOODMANS LLP ON OR BEFORE THE NOTICE OF APPEARANCE BAR DATE AND SUCH SETTLEMENT NOTICE PARTY DOES NOT ATTEND IN PERSON OR BY LEGAL COUNSEL AT THE SETTLEMENT APPROVAL MOTION TO BE HEARD ON MARCH 3, 2010 AT THE COURT HOUSE, 8TH FLOOR, 393 UNIVERSITY AVENUE, TORONTO, ONTARIO.**

**DATED** at Toronto this ● day of February, 2010.

\5810315

APPENDIX "C"

[ATTACHED]

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**NOTICE OF APPEARANCE**

TO:  ERNST & YOUNG INC.
Court-appointed Monitor of Nortel Networks
Corporation & others
222 Bay Street, Suite 1600
Toronto, Ontario
Canada M5K 1J7

WITH A COPY TO:  GOODMANS LLP
Lawyers for the Court-appointed Monitor of Nortel
Networks Corporation & others
Bay Adelaide Centre, 333 Bay Street, Suite 3400
Toronto, Ontario
Canada M5H 2S7

Attention:     Nortel Settlement
Phone:  1-416-943-4439 or 1-866-942-7177
E-mail: nortel.monitor@ca.ey.com
Fax:    1-416-943-2808

Attention:       Gale Rubenstein
Email:          grubenstein@goodmans.ca
Fax:            1-416-979-1234

I, _____ (please check the box that applies):
　　　　　(insert name)

☐    am a current employee of the Canadian Nortel companies;

☐    am a current employee of the Canadian Nortel companies and am currently in receipt of
      or have applied for disability income benefits;

☐    am a former employee of the Canadian Nortel companies;

☐    am a former employee of the Canadian Nortel companies in receipt of a Nortel pension;

☐    am a surviving spouse in receipt of a Nortel pension or a person claiming an interest
      under or on behalf of a former employee of the Canadian Nortel companies in receipt of a
      Nortel pension;

☐    am a provincial pension plan regulator _____
      　　　　　　　　　　　　　　　　　　　(state name of provincial pension regulator and your title)

- 2 -

Under the Order of Mr. Justice Morawetz dated February 9, 2010, affected notice parties who wish to appear and be heard to oppose a motion currently scheduled for March 3, 2010 (the "**Settlement Approval Motion**") to approve a settlement described in the Notice Letter sent to such parties (the "**Settlement**") may do so by filing this Notice of Appearance with the Monitor and Goodmans LLP by way of fax/email/regular mail/courier provided that such Notice of Appearance is received by the Monitor and Goodmans LLP on or before 11:59 p.m. (prevailing Eastern Time) on February 24, 2010.

I hereby notify the Monitor that: (a) I intend to appear at the Settlement Approval Motion to oppose the Settlement Approval Motion; and (b) I will appear in person or through my own independent counsel at my own expense at the Settlement Approval Motion and to the extent I wish to appear in any other proceedings relating to the Settlement. I oppose the Settlement for the following reasons (briefly describe your reasons for opposing in the space provided below):

_____

_____

_____

_____

**Failure to file a Notice of Appearance with the Monitor and Goodmans LLP on or before 11:59 p.m. (prevailing Eastern Time) on February 24, 2010 will result in you being bound by all terms of the Settlement, the Settlement Agreement and the Settlement Approval Order and in you being forever barred and enjoined from objecting to, opposing, disputing in any manner whatsoever, appealing or moving to set aside or vary the Settlement, the Settlement Agreement and the Settlement Approval Order.**

| | |
|---|---|
| _____ | _____ |
| Date | Signature |

My contact information for service is as follows:          My solicitor's address for service is as follows:

_____          _____

_____          _____

(please insert an email address for service or a street address if you do not have an email address)

My contact phone number is as follows:

_____

(please complete the above information for the solicitor, if any, you have retained to represent you at the Settlement Approval Motion)

\5810160

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

---

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at **Toronto**

---

**THIRTY-SIXTH REPORT**
**OF THE MONITOR**
**DATED FEBRUARY 8, 2010**

---

**GOODMANS LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada  M5B 2M6

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\5810031