IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.,* | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Re: Docket No. 2193 |

**PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS OF SNMP RESEARCH INTERNATIONAL, INC. TO DEBTORS' MOTION FOR APPROVAL OF THE SALE OF CERTAIN ASSETS OF DEBTORS' CARRIER VOICE OVER IP AND APPLICATION SOLUTIONS BUSINESS**

SNMP Research International, Inc. ("SNMPRI"), through undersigned counsel, hereby files this preliminary objection and reservation of rights (the "Objection") to the motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for orders (I)(A) authorizing the Debtors' entry into the stalking horse agreement, (B) authorizing and approving the bidding procedures and bid protections, (C) approving payment of an incentive fee, (D) approving the notice procedures and the assumption and assignment procedures, (E) authorizing the filing of certain documents under seal and (F) setting a date for the sale hearing, and (II) authorizing and approving (A) the sale of certain assets of the Debtors' Carrier Voice Over IP and Application Solutions Business free and clear of all liens, claims and encumbrances and (B) the assumption and assignment of certain executory contracts [Docket No. 2193] (the "Sale Motion"). In support of this Objection, SNMPRI respectfully represents as follows:

**The License Agreement**

1.    SNMPRI and Nortel Networks Corporation ("NNC"), a Canadian corporation, are parties to a certain license agreement (the "License Agreement") executed prior to the Petition Date (defined herein) governing NNC's use of certain intellectual property described as source code and binary license code licensed by SNMPRI to NNC.  The License Agreement contains

over 70 schedules that each list one or more specific products, development software, and run-time software licensed to NNC.  Section 7.1 of the License Agreement permits NNC to assign the License Agreement as follows:

> [u]pon prior written notice of such to SNMPRI, NNC may assign this Agreement, in its entirety only, and only in conjunction with a change of ownership, merger, acquisition, sale or transfer of all of substantially all of its business or assets.  Such assignment shall only be valid as to NNC's business units as of the date of such assignment, and the rights and licenses of this Agreement shall not be enlarged to encompass the entirety of the new entity, if larger, or the entirety of the new entity's product line, if larger.  The terms and conditions of this Agreement shall bind and inure to each party's successors and assigns.

License Agreement at 7.1.

2. Should NNC desire to assign only a portion of the License Agreement, section 7.2 of the License Agreement provides:

> [u]pon prior written notice of such to SNMPRI, execution of a fresh copy of this Agreement, and payment of an Adoption Fee, a Specified Entity previously licensed under one or more Schedules A that is to be made an independent entity by NNC may adopt this Agreement as an agreement separate from NNC ("New Agreement").  The Adoption Fee shall be equal to the amount that SNMP would have charged the Specified Entity under the relevant Schedule A if the Specified Entity had not been a Nortel Networks Company (Standard Value), minus the amount previously paid under the relevant Schedule A.  SNMP's liability under the New Agreement shall be limited to a straight line three year depreciation of the Standard Value, starting from the execution date of the new agreement.  The scope of the new license shall be to the named Specified Entity only, and shall not include the possibility of addition of any other "Specified Entities" at a later point in time.

License Agreement at 7.2.

3. SNMPRI and NNC were parties to the License Agreement on the Petition Date (defined herein).

**Background**

4. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

5. On December 23, 2009, the Debtors filed the Sale Motion. The Sale Motion, among other things, seeks the approval of: (i) sale of certain assets of Debtors' Voice Over IP and Application Solutions Business free and clear of all liens, claims and encumbrances (the "Sale") pursuant to section 363 of the Bankruptcy Code, (ii) the assumption and assignment of certain executory contracts pursuant to section 365 of the Bankruptcy Code, and (iii) the assignment of contracts not otherwise assignable under section 365 of the Bankruptcy Code. The Stalking Horse Agreement also provides for the sale of certain intellectual property. The specific contracts, executory or otherwise, and intellectual property contemplated by the Sale Motion and the Stalking Horse Agreement have not been disclosed—although such items are contemplated to be included as exhibits to the Stalking Horse Agreement.

6. Moreover, the Debtors are conducting an ongoing auction, and it is possible that GENBAND Inc., the stalking horse bidder, will be outbid.

**Preliminary Objection and Reservation of Rights**

7. Since SNMPRI cannot yet determine if its intellectual property or the License Agreement are involved in the sale, SNMPRI files this objection to request that the Debtors clarify, by inclusion in any order to be entered by the Court approving the sale, the Sellers' and purchasers' intentions with respect to the License Agreement. Specifically, if the parties to the sale determine that the License Agreement or SNMPRI's intellectual property will not be transferred, SNMPRI requests that the Debtors include the following language in any order approving the sale:

> Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for or approves the transfer, assumption and/or assignment, whether under sections 363 or 365 of the Bankruptcy Code or otherwise, of any intellectual property or license agreement with SNMP Research International, Inc. ("SNMPRI"). To the extent the Purchaser elects to have the Sellers assign to the Purchaser any contract with or intellectual property right of SNMPRI, the Sellers and Purchaser will do so in accordance with the terms of such contract or applicable license, which terms may include, *inter alia*, the written consent of SNMPRI. To the extent the Purchaser discovers they have received SNMPRI's intellectual property or intellectual property rights, the Purchaser will make reasonable efforts to enter into a new license agreement with SNMPRI within a reasonable time after such discovery.

8. If SNMPRI's intellectual property or the License Agreement are involved in the sale: (i) any transfer, assumption, or assignment of the License Agreement and SNMPRI's intellectual property must be made pursuant to the terms of the License Agreement, (ii) any outstanding obligations owed to SNMPRI must be cured, and (iii) SNMPRI must receive adequate assurance of future performance.

9. The terms of the License Agreement govern the procedure for the assignment of the agreement and require it to be assigned in its entirety. If the License Agreement is not assigned in its entirety, all parties must comply with the procedure and obligations set forth in section 7.2 of the License Agreement, including the execution of a new agreement and the payment of an adoption fee.

10. Section 365(b) of the Bankruptcy Code requires a debtor to cure any defaults and provide adequate assurance of future performance before an executory contract can be assumed. 11 U.S.C. § 365(b). To the extent that any parties to the sale seek to assume and assign the License Agreement or transfer SNMPRI's intellectual property, any defaults under the agreement must be cured and adequate assurance must be provided. SNMPRI uses royalty reports provided

by NNC to determine amounts owed to SNMPRI for royalties. SNMPRI estimates that approximately $20,781 (US dollars) plus any/all amounts associated with royalties that have not been reported by NNC to date are owed to SNMPRI. Such outstanding amounts must be paid.

11. Finally, SNMPRI demands adequate assurance of future performance once the purchaser is identified.

12. At this juncture, the specific intellectual property and contracts that the Debtors propose to include in the sale have not been disclosed. SNMPRI reserves all rights to object to the sale and the transfer, assumption, assignment or rejection of any agreements affecting SNMPRI and the intellectual property of SNMPRI and SNMPRI's suppliers.

13. SNMPRI reserves all rights to supplement or amend the objections raised herein and to seek discovery regarding sale issues, including, but not limited to, cure amounts, and the Debtors' rights and abilities to assume and assign the License Agreement.

WHEREFORE, SNMPRI objects to the Sale Motion and reserves all rights.

Dated: February 17, 2010  
       Wilmington, Delaware

CIARDI CIARDI & ASTIN

*/s/ Mary E. Augustine*  
Daniel K. Astin (No. 4068)  
Anthony M. Saccullo (No. 4141)  
Mary E. Augustine (No. 4477)  
Carl D. Neff (No. 4895)  
919 N. Market Street, Suite 700  
Wilmington, Delaware 19801  
(302) 658-1100 telephone  
(302) 658-1300 facsimile  
dastin@ciardilaw.com  
asaccullo@ciardilaw.com  
maugustine@ciardilaw.com  
cneff@ciardilaw.com

*Attorneys for SNMP Research International, Inc.*