# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
:
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*, [1] :
: Jointly Administered
             Debtors. :
:
:
:
---------------------------------------------------------X


## DECLARATION OF LISA M. SCHWEITZER IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST CERTAIN CLAIMANTS WITH RESPECT TO THE UK PENSION PROCEEDINGS

I, Lisa M. Schweitzer, do hereby declare as follows:

      1.      I am a partner with the law firm of Cleary Gottlieb Steen & Hamilton LLP, co-counsel to the Debtors in these cases, and my practice focuses on U.S. bankruptcy and restructuring matters. I am admitted to the bar of the State of New York and have been a member in good standing of such bar since 1997.

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226), (collectively the "U.S. Nortel Entities" or the "Debtors"). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

2.       I submit this Declaration in support of the Debtors' Motion[2] for entry of an order, pursuant to sections 362(a)(1) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code") enforcing the automatic stay against claimants the Trustee of the NNUK Pension Plan (the "U.K. Pension Trustee"), and the U.K. Pension Protection Fund (the "PPF") with respect to their participation in certain Pension Administrative Proceedings in the U.K.  The purpose of this Declaration is to place certain exhibits relevant to the Motion before the Court and to describe certain aspects of the procedural history of the cases.  Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, information supplied to me by members of the Debtors' management or other professionals, and information that I learned from reviewing relevant documents.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.

## THE BANKRUPTCY CASES

3.       On January 14, 2009 (the "Petition Date"), the Debtors (except for NN CALA, which filed on July 14, 2009) filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  In re Nortel Networks Inc., et al., No. 09-10138 (KG) (Bankr. D. Del. January 14, 2009) (Ct. Dkt. No. 1), (Bankr. D. Del. July 14, 2009) (Ct. Dkt. No. 1074).[3]

4.       The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

5.       Also on the Petition Date, the Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and

---

[2]   Capitalized terms not defined herein have the same meanings as in the Motion.

[3]   The Nortel Networks Inc. docket citations are referenced herein as "NNI Ct. Dkt. No. ___."

certain of their Canadian affiliates (collectively, the "Canadian Debtors") filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").

6. The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court. Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), filed petitions in this Court for recognition of the Canadian Proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code. On January 14, 2009, the Canadian Court entered an order recognizing these Chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, the Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code. In re Nortel Networks Corp. et al., No. 09-10164 (KG) (Bankr. D. Del. Feb. 27, 2009) (Ct. Dkt. No. 40).

7. In addition, on January 14, 2009 after the filing by the U.S. Nortel Entities, the High Court of Justice in England placed nineteen of Nortel's European affiliates, including Nortel Networks U.K. Limited ("NNUK") (collectively, the "EMEA Debtors")[4] into administration under the control of certain individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On June 8, 2009, NNUK filed petitions in this Court for recognition of its English insolvency proceeding as foreign main proceedings under Chapter 15 of the

---

[4] The EMEA Debtors include the following entities: NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

Bankruptcy Code. In re Nortel Networks UK Ltd., No. 09-11972 (KG) (Bankr. D. Del. June 8, 2009) (Ct. Dkt. No. 8). On June 26, 2009, the Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Bankruptcy Code. In re Nortel Networks UK Ltd., No. 09-11972 (KG) (Bankr. D. Del. June 26, 2009) (Ct. Dkt. No. 36).

8. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases (other than the case of NN CALA) and for consolidation for procedural purposes only. NNI Ct. Dkt. No. 36.

9. On or about January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to Section 1102(a)(1) of the Bankruptcy Code. NNI Ct. Dkt. No. 141.[5] An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors also has been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, the Court entered orders approving the joint administration and consolidation of NN CALA's Chapter 11 case with the other Debtors' Chapter 11 cases for procedural proposes (NNI Ct. Dkt. No. 1098), and applying to NN CALA certain previously entered orders in the Debtors' Chapter 11 cases (NNI Ct. Dkt. No. 1099).

---

[5] The order appointing the Committee was amended on January 26, 2009 to reflect that Odyssey American Reinsurance Corporation had resigned from the Committee. NNI Ct. Dkt. No. 142.

4

**Bar Dates**

11. On August 4, 2009, the Court entered the Order Establishing Deadlines for Filing Proofs of Claim and Approving Form and Manner of Notice Thereof (the "Bar Date Order"). NNI Ct. Dkt. No. 1280.

12. Pursuant to the procedures set forth in the Bar Date Order, with certain exceptions, all entities (including governmental units) that desired to assert a claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtors (other than NN CALA) that arose prior to the Petition Date, were required to file a proof of claim in writing so that it was received on or before September 30, 2009, at 4:00 p.m. (prevailing Eastern Time). A similar Bar Date Order was entered with respect to NN CALA, setting the bar date of January 25, 2010. NNI Ct. Dkt. No. 2059.

**The NNUK Proof of Claim**

13. On September 30, 2009, NNUK filed proofs of claim against NNI and the other U.S. Debtors (except NN CALA) "in respect of any heretofore unknown, unliquidated, or unmatured claim or claims … against Nortel Networks Inc. or its affiliated debtors in these cases." The proofs of claim (the "NNUK Claim") are listed on the Debtors' claim log as claim numbers 5122-5136. A true and correct copy of the NNUK proof of claim against NNI, which is representative of all of the NNUK proofs of claim, is attached hereto as Exhibit A.

**The Interim Funding and Settlement Agreement and the Asset Sale Process**

14. The NNUK Claim illustrates certain of the various cross-affiliate claims and asset allocation issues that must be resolved with respect to the U.S. Debtors, Canadian Debtors and EMEA Debtors. On June 9, 2009, the U.S. Debtors, Canadian Debtors, and EMEA

5

Debtors, including NNUK (by the Joint Administrators), entered into an Interim Funding and Settlement Agreement (the "IFSA") to resolve, on an interim basis, certain allocation and post-petition cross-affiliate claims issues, pending the final allocation of the proceeds of certain planned asset sales of their businesses.  The Court approved the IFSA on June 29, 2009.  NNI Ct. Dkt. No. 993.  Pursuant to Section 12 of the IFSA, the parties agreed that the proceeds of any sale of their material assets (less taxes and costs), would be held in escrow until the parties either reached a consensual allocation of the proceeds, or:

> "[I]n the case where the Selling Debtors fail to reach agreement, determination by the relevant dispute resolver(s) under the terms of the Protocol [as defined below] applicable to the Sale Proceeds . . . which Protocol shall provide binding procedures for the allocation of Sales Proceeds …."

A true and correct copy of the IFSA is attached hereto as Exhibit B.  As noted below, the Protocol is the subject of extensive negotiations among the Nortel debtors in the U.S., Canada and the U.K.  As per various escrow agreements entered into by the parties, the proceeds of the sales that have been consummated thus far are being held in escrow accounts located in the United States.  By way of example, a true and correct copy of the escrow agreement with respect to the sale of substantially all of Nortel's CDMA business and LTE Access assets is attached hereto as Exhibit C.

15. In addition, in the IFSA, all parties agreed that New York law would govern that Agreement, and consented to the jurisdiction of the U.S. and Canadian courts for all legal proceedings concerning the Agreement, other than proceedings against the U.K. Joint Administrators in their personal capacities, which were required to be brought in the U.K. with U.K. law governing.  (IFSA ¶¶ 16-17.).

16. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for

its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd.  (NNI Ct. Dkt. No. 539); (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) (NNI Ct. Dkt. No. 1205); (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. (NNI Ct. Dkt. No. 1760); and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. (NNI Ct. Dkt. No. 1514).  In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit (NNI Ct. Dkt. No. 2070) as well as for the planned sale of substantially all of its GSM/GSM-R business (NNI Ct. Dkt. No. 2065).

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 17, 2010

_____
Lisa M. Schweitzer