John Ray Declaration

- Exhibit C -

Court File No. 09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT
OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION**

**MOTION RECORD**
**(Returnable February 25, 2010)**

**GOODMANS LLP**
Barristers & Solicitors
333 Bay Street, Suite 3400
Toronto, Canada   M5H 2S7

Jay A. Carfagnini (LSUC#222936)
Joseph Pasquariello (LSUC#37389c)
Chris Armstrong (LSUC#55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for Monitor, Ernst & Young Inc.

# INDEX

Court File No.  09-CL-7950

## *ONTARIO*
## SUPERIOR COURT OF JUSTICE
## (COMMERCIAL LIST)

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

## INDEX

| Document | Tab |
|---|---|
| **Notice of Motion returnable February 25, 2010** | 1 |
| **Thirty-Eighth Report of the Monitor dated February 17, 2010** | 2 |
| Appendix "A" – Third Amended and Restated Initial Order dated January 14, 2009 | A |
| Appendix "B" – Order dated January 21, 2010 | B |
| Appendix "C" – Amended and Restated Claims Procedure Order dated Oct. 7, 2009 | C |
| Appendix "D" – Interim Funding and Settlement Agreement dated June 9, 2009 | D |
| Appendix "E" – Guarantee dated November 21, 2006 | E |
| Appendix "F" – Guarantee dated December 21, 2007 | F |
| Appendix "G" – Proof of Claim filed by the Trustee and PPF dated September 30, 2009 | G |
| Appendix "H" – Letter from The Pensions Regulator to NNC dated September 4, 2009 | H |
| Appendix "I" – Letter from NNC to The Pensions Regulator dated September 16, 2009 | I |
| Appendix "J" – Letter from The Pensions Regulator to the Joint Administrators dated November 11, 2009 | J |
| Appendix "K" – Letter from The Pensions Regulator to NNL dated January 13, 2010 | K |
| Appendix "L" – Letter from The Pensions Regulator to NNC dated January 13, 2010 | L |
| Appendix "M" – Letter from the Monitor to The Pensions Regulator dated February 9, 2010 | M |

- 2 -

Appendix "N" – Letter from The Pensions Regulator to the Monitor dated February 15, 2010 ........................................................................................... N

Appendix "O" – Letter from the Monitor's U.K. Counsel to the Joint Administrators dated February 12, 2010 ....................................................... O

**Affidavit of Anna Ventresca sworn February 17, 2010** ......................................... **3**

Exhibit "A" – Funding Guarantee between Nortel Networks Limited and Nortel Networks UK Pension Trust Limited as Trustee of the Nortel Networks UK Pension Plan ................................................................................. A

Exhibit "B" – Insolvency Guarantee between Nortel Networks Limited and Nortel Networks UK Pension Trust Limited as Trustee of the Nortel Networks UK Pension Plan ................................................................................. B

Exhibit "C" – Claims Procedure Order dated July 30, 2009 ............................................ C

Exhibit "D" – Proof of Claim dated September 30, 2009 filed by the U.K. Pension Trustee and U.K. Pension Protection Fund against Nortel Networks Corporation ................................................................................. D

Exhibit "E" – Letter from Pensions Regulator to Nortel Networks Corporation dated September 4, 2009 ................................................................................. E

Exhibit "F" – Letter from Nortel Networks Corporation to the Pensions Regulator dated September 16, 2009 ................................................................................. F

Exhibit "G" – Letter from the Pensions Regulator to the Joint Administrator dated November 11, 2009 ................................................................................. G

Exhibit "H" – Letter from the Pensions Regulator to Nortel Networks Limited dated January 11, 2010 ................................................................................. H

Exhibit "I" – Letter from the Pensions Regulator to Nortel Networks Corporation dated January 11, 2010 ................................................................................. I

Exhibit "J" – Letter from Allen & Overy to Herbert Smith dated February 12, 2010 ..... J

Exhibit "K" – Letter from Freshfields Bruckhaus Deringer to the Pensions Regulator dated February 3, 2010 ................................................................................. K

Exhibit "L" – Letter from Goodmans LLP to the Pensions Regulator dated February 8, 2010 ................................................................................. L

Exhibit "M" – E-mail from the Pensions Regulator to Freshfields Bruckhaus Deringer dated February 9, 2010 ................................................................................. M

- 3 -

Exhibit "N" – Letter from Freshfields Bruckhaus Deringer to the Pensions Regulator dated February 10, 2010 ............................................................................. N

**Affidavit of Robin Knowles C.B.E, Q.C. sworn February 17, 2010 ...................................... 4**

Exhibit "A" – (UK) Insolvency Act, 1986 .................................................................... A

Exhibit "B" – The Cross-Border Insolvency Regulations, 2006 (SI 2006/1030) ............. B

Exhibit "C" – (UK) Pension Act, 2004 ....................................................................... C

Exhibit "D" – The Pensions Regulator (Financial Support Directions, etc.) Regulations 2005 (SI No. 2188) .............................................................. D

Exhibit "E" – The Pensions Regulator (Miscellaneous Amendment) Regulations 2009 (SI No. 617) ....................................................................................... E

Exhibit "F" – The decision of Judge Kevin J. Carey in Re Sea Containers et al. dated September 19, 2008 ................................................................. F

Exhibit "G" – Thomas Winsor v. Special Railway Administrators [2002] EWCA (Civ) 955 ................................................................................ G

Exhibit "H" – Perpetual Trustees Co. Ltd. and Others v. BNY Corporate Trustess Services Ltd. [2009] EWHC 1912 (Ch) .................................................. H

Exhibit "I" – D/S Norden A/S v. Samsun Logix Corporation [2009] EWHC 2304 (Ch) . I

Exhibit "J" – David Rubin v. Henry Lan v. Euorfinance SA [2009] EWHC 2129 (Ch) .. J

Exhibit "K" – Banque Indosuez SA v Ferromet Resources Inc. [1993] BCLC 112 ........ K

Exhibit "L" – Cambridge Gas Transportation Corporation v Unsecured Creditors of Navigator Holdings plc [2007] 1 AC 508. 518 ........................................ L

Exhibit "M" – Hughes v Hannover [1997] BCC 921 ..................................................... M

Exhibit "N" – New Cap Reinsurance Corp. Ltd. v HIH Casualty & General Insurance Ltd. [2002] 2 BCLC 228 ........................................................... N

Exhibit "O" – In re Atlantic Computers Systems plc [1992] Ch 505 ............................... O

Exhibit "P" – Re Aro Ltd. [1980] Ch 196 .................................................................... P

Exhibit "Q" – Re HIH Casualty and General Insurance Ltd. [2008] UKHL 21 .............. Q

Exhibit "R" – Emerson Electric Co., Valeo SA, Robert Bosch Gmbh, Visteon Corporation, Rockwell Corporation v Morgan Crucible 2007 CAT 28 ... R

**TAB 1**

Court File No: 09-CL-7950.    1

**_ONTARIO_**
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE COMPANIES' CREDITORS
ARRANGEMENT ACT, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")**

**NOTICE OF MOTION**
**(Returnable February 25, 2010)**

Ernst & Young Inc. in its capacity as monitor of the Applicants (the "Monitor") pursuant to the Third Amended and Restated Initial Order dated January 14, 2009 (the "Initial Order") will make a motion to The Honourable Mr. Justice Morawetz of the Ontario Superior Court of Justice, on Thursday, February 25, 2010, at 10:00 a.m. or as soon after that time as the motion can be heard at 330 University Avenue, Toronto, Ontario.

PROPOSED METHOD OF HEARING: The motion is to be heard:

☐ in writing under subrule 37.12.1(1) because it is on consent ;

☐ in writing as an opposed motion under subrule 37.12.1(4);

☒ orally.

THE MOTION IS FOR an Order:

(a)    abridging the time for service of this Notice of Motion and the Motion Record herein and validating service thereof so that this motion is properly returnable on February 25, 2010;

(b)    declaring that the purported exercise of rights and the commencement of proceedings against the Applicants, Nortel Networks Corporation and Nortel

Networks Limited, by The Pensions Regulator under *The Pensions Act 2004* (U.K.) amount to breaches of paragraphs 14 and 15 of the Initial Order;

2

(c)     authorizing, directing and requiring the Applicants and the Monitor to refrain from participating in any proceedings commenced by The Pensions Regulator in breach of the Initial Order;

(d)     declaring that for the purposes of these proceedings all acts taken by the U.K. Pensions Regulator in the purported exercise of rights and in commencing any proceedings against any of the Applicants, without the consent of those Applicants and the Monitor or without leave of this Court having been first obtained, are null and void and shall be given no force or effect in these proceedings nor otherwise recognized as creating or forming the basis of any valid or enforceable rights, remedies or claims against the Applicants or any of their assets, property or undertakings in Canada; and

(e)     such further and other relief as to this Honourable Court seems just.

THE GROUNDS FOR THE MOTION ARE:

(a)     Under paragraph 14 of the Initial Order, no proceeding or enforcement process in any Court or tribunal may be commenced or continued against any of the Applicants, except with the consent of the affected Applicant and the Monitor or with leave of this Honourable Court first having been obtained;

(b)     Under paragraph 15 of the Initial Order, the exercise of all rights and remedies of all entities, including governmental bodies, against any of the Applicants or affecting their businesses or property are stayed and suspended except with the consent of the affected Applicant and the Monitor, or with leave of this Honourable Court first having been obtained;

(c)     The Pensions Regulator is the body charged with enforcement of certain provisions of *The Pension Act 2004* (UK) (the "UK Statute"). It has, to date,

refrained from participating in these proceedings or submitting to the jurisdiction of this Honourable Court;

(d)     On January 11, 2010, The Pensions Regulator delivered a "warning notice" in accordance with the procedure set out in section 96 of the UK Statute (the "Warning Notice") to Nortel Networks Limited and Nortel Networks Corporation in Canada. The Warning Notice is effectively a pleading required under the UK Statute to enable The Pensions Regulator to make "financial support" orders under the UK Statute so as to cause foreign affiliates of Nortel Networks UK Limited ("NNUK"), including Nortel Networks Limited and Nortel Networks Corporation in Canada, to become liable to provide financial support for the pension plan maintained by NNUK. In the Warning Notice, The Pensions Regulator purports to exercise rights under the UK Statute including, without limitation, the commencement of the proceedings to require Nortel Networks Limited and Nortel Networks Corporation to pay up to £2.1 billion (approximately $4 billion Canadian) to fund the deficit in NNUK's pension plan and the purported right to deem the value of certain resources under Regulation 12 of The Pensions Regulator (Financial Support Directions etc.) Regulations 2005 made under the UK Statute;

(e)     The Warning Notice, including appendices, is over 150 pages in length and is supported by additional, voluminous productions. The Pensions Regulator demanded that Nortel Networks Limited and Nortel Networks Corporation deliver a response by March 1, 2010 under the UK Statute, failing which default proceedings would be taken;

(f)     The Pensions Regulator has exercised rights and commenced proceedings against Nortel Networks Limited and Nortel Networks Corporation without the consent of those Applicants, the Monitor or leave of this Honourable Court and is therefore in breach of the Initial Order;

(g)     Moreover, the exercise of rights and the commencement of proceedings by The Pensions Regulator against Nortel Networks Limited and Nortel Networks

- 4 -

4

Corporation at this time and in the manner undertaken is contrary to the purpose of the stay of proceedings and contrary to the objectives of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended to January 14, 2009 (the "CCAA");

(h) The substance of the allegations advanced by The Pensions Regulator against Nortel Networks Limited and Nortel Networks Corporation is that they ought to be held liable to provide funds to the pension plan of NNUK due to the historic manner of the allocation of funds among the various affiliates of the Applicants located in Canada and abroad;

(i) This Honourable Court has already approved a procedure establishing a bar date of September 30, 2009, for the filing of claims against any of the Applicants in its Order dated July 30, 2009, as amended and restated (the "Claims Procedure Order"). In accordance with the Claims Procedure Order, Nortel Networks UK Pension Trust Limited (the trustee of the NNUK pension plan – the "Trustees") and the UK Pension Protection Fund ("PPF") have delivered claims in this proceeding with respect to "financial support" under the UK Statute;

(j) Moreover, by Order of this Honourable Court dated June 29, 2009, the Court approved and directed the Applicants and the Monitor to enter into an agreement (the Interim Funding and Settlement Agreement dated as of June 9, 2009 (the "IFSA")) with the UK Administrators and representatives of the insolvent US affiliates of the Applicants and their creditors under which, among other things, the Canadian, UK and US representatives of the Applicants, their foreign affiliates and their creditors are actively engaged in negotiation of an "Allocation Protocol" to govern the process to determine the distribution of the proceeds of sale of the various businesses carried on by the Applicants and their affiliates around the world. The proceeds are currently being held in escrow. The proceeds may be released from escrow either by consensus among the parties or pursuant to the decision of an arbitral panel to

-5-

be established under the Allocation Protocol. Among the primary proposed purposes of the Allocation Protocol is for the representatives of the insolvent debtors to negotiate a manner in which to allocate the sale proceeds among the relevant parties. As part of this process, parties are likely to assert claims based on pre-filing contributions and other factors which claims are likely to be contested;

(k)    Management is fully engaged at the present time in the implementation of the various Court-approved sales transactions that involve the conveyance of assets all over the world, the transitioning of the many Nortel businesses in Canada and abroad, the negotiation of significant sales of other businesses and assets, such as LG-Nortel, considering alternatives for the realization of the significant residual intellectual property, and in engaging in the negotiation of the Allocation Protocol, among other things. The Applicants can ill afford to participate at this time in major litigation of a claim of up to $4 billion when many of the issues raised in the Warning Notice are key components that will be raised by parties in the negotiation of the Allocation Protocol or in the arbitration of allocation of the sale proceeds pursuant to the Allocation Protocol;

(l)    In these circumstances, proceeding with a major claim now on an urgent timetable is an inefficient and ineffective prioritization and use of the scarce human and economic resources of the Applicants;

(m)    Allowing the UK Pensions Regulator to ignore the stay, serve demands and process in Canada and proceed with its enforcement of rights and litigation at this time and in this manner would undermine the negotiation of the Allocation Protocol and might destabilize the entire restructuring processes for the Applicants and their affiliates both here and abroad by impairing managements' ability to engage in the pressing tasks currently facing the Applicants and their foreign affiliates and undermining, usurping or predetermining the outcome of the Allocation Protocol;

(n)     There are significant issues to be resolved in the UK proceedings commenced by The Pensions Regulator including substantial defences to the issues regarding allocation of funds among the various Nortel entities. This same issue is the subject matter of voluminous documentary disclosure efforts being undertaken in connection with the negotiation of the Allocation Protocol. Moreover, there are significant issues as to whether any order against Nortel Networks Limited or Nortel Networks Corporation that The Pensions Regulator may decide to make to require the Canadian Applicants to provide "financial support" will amount to a recognized claim under the CCAA in any event. The CCAA defines and determines "claims" against the Canadian Applicants, not a foreign statute. The claim being brought by the Pensions Regulator is a device to attempt to give UK creditors an advantage over other creditors by creating a "claim" which does not exist in Canada or in the UK at the present time;

(o)     NNL executed two limited guarantees in relation to the liabilities of NNUK to fund its pensions. Claims under these guarantees have been delivered to the Monitor under the Claims Procedure Order by the Trustees, PPF and the UK Administrators in addition to their claims for additional "financial support". The aggregate amount claimed under NNL's guarantees is in excess of $1 billion. It is inappropriate to use a foreign long-arm statute to create additional *ex post facto* "claims" or to deem that a post-filing event creates a pre-filing claim when insolvency proceedings are already underway against the Canadian Applicants in this Court and elsewhere. The Pensions Regulator has confirmed to the UK Administrators that the very purpose of its actions is to take funds from Canadian and other pensioners and creditors in an attempt to increase recovery for UK pensioners. This is contrary to the doctrine of comity and international cooperation in insolvency proceedings, contrary to the purposes of the CCAA, contrary to the terms of the IFSA, to which the UK Administrators are a party, and contrary to the purpose of the negotiation of the Allocation Protocol as approved by this Honourable Court and by the U.S. Bankruptcy Court;

7

(p)    It is not apparent that The Pensions Regulator is amenable to, or would abide by, any further Order of this Honourable Court requiring it to refrain from proceeding under the Warning Notice. Therefore, the appropriate relief to respond to and redress the blatant disregard of the jurisdiction and Orders of this Honourable Court is to refuse to participate in, recognize or give any effect whatsoever to the purported exercise of rights and proceedings brought by The Pensions Regulator and those who would purport to rely upon the outcome thereof;

(q)    Nortel Networks UK Pension Trust Limited, UK Pension Protection Fund and the UK Administrators have attorned to the jurisdiction of this Honourable Court and ought not to be participating in or benefiting from proceedings that have been brought in breach of the Initial Order.

(r)    The Monitor relies on sections 11(4) and 12 of the CCAA; and

(s)    Such further and other grounds as counsel may advise and this Honourable Court permits.

THE FOLLOWING DOCUMENTARY EVIDENCE will be used at the hearing of the motion:

(a)    The Thirty-Eighth Report of the Monitor dated February 17, 2010;

(b)    The Affidavit of Anna Ventresca sworn February 17, 2010;

(c)    The Affidavit of Robin Knowles C.B.E., Q.C. sworn February 17, 2010; and

(d)    Such further and other materials as counsel may advise and this Honourable Court permits.

- 8 -

8

February 17, 2010

**Goodmans LLP**
Barristers & Solicitors
333 Bay Street
 Suite 3400
Toronto, Canada  M5H 2S76

Jay Carfagnini  LSUC#: 222936
Fred Myers  LSUC#: 26301A
Joseph A. Pasquariello  LSUC#: 37389C

Tel:    416.597.5923
Fax:    416.979.1234

Lawyers for Ernst & Young Inc., in its capacity
as Court-Appointed Monitor

TO:

**ATTACHED SERVICE LIST**

AND TO:

The Pensions Regulator
Napier House
Trafalgar Place
Brighton, U.K.
BN1 4DW

Court File No.  09-CL-7950          9

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**


**IN THE MATTER OF THE** *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. c-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL**
**NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL**
**CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION**

**APPLICATION UNDER THE** *COMPANIES' CREDITORS ARRANGEMENT ACT,*
**R.S.C. 1985, c. C-36, AS AMENDED**


**SERVICE LIST**


TO:       **OGILVY RENAULT LLP**
          Royal Bank Plaza, South Tower
          200 Bay Street, Suite 3800
          Toronto, Ontario M5J 2Z4

          Derrick Tay
          Mario Forte
          Jennifer Stam

          Email:     dtay@ogilvyrenault.com
                     mforte@ogilvyrenault.com
                     jstam@ogilvyrenault.com

          Tel:       416.216.4000
          Fax:       416.216.3930

          Lawyers for the Applicants

- 2 -

1J

| | | | |
|---|---|---|---|
| TO: | **ERNST & YOUNG INC.**<br>Ernst & Young Tower<br>222 Bay Street, P.O. Box 251<br>Toronto, ON  M5K 1J7<br><br>Murray McDonald<br>Brent Beekenkamp<br><br>Email:  nortel.monitor@ca.ey.com<br><br>Tel:    416.943.3016<br>Fax:   416.943.3300 | AND<br>TO: | **GOODMANS LLP**<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON  M5H 2S7<br><br>Jay Carfagnini<br>Joseph Pasquariello<br>Gail Rubenstein<br>Chris Armstrong<br><br>Email:  jcarfagnini@goodmans.ca<br>        jpasquariello@goodmans.ca<br>        grubenstein@goodmans.ca<br>        carmstrong@goodmans.ca<br><br>Tel:    416.597.4107<br>Fax:   416.979.1234<br><br>Lawyers for the Monitor, Ernst & Young Inc. |
| AND<br>TO: | **OSLER HOSKIN AND HARCOURT LLP**<br>100 King Street West<br>1 First Canadian Place<br>Suite 6100<br>P.O. Box 50<br>Toronto, ON  M5X 1B8<br><br>Lyndon Barnes<br>Rupert Chartrand<br>Edward Sellers<br>Adam Hirsh<br><br>Email:  lbarnes@osler.com<br>        rchartrand@osler.com<br>        esellers@osler.com<br>        ahirsh@osler.com<br><br>Tel:    416.362.2111<br>Fax:   416.862.6666<br><br>Lawyers for the Boards of Directors of<br>Nortel Networks Corporation and Nortel<br>Networks Limited | AND<br>TO: | **FASKEN MARTINEAU DUMOULIN LLP**<br>66 Wellington Street West<br>Toronto Dominion Bank Tower<br>P.O. Box 20, Suite 4200<br>Toronto, ON  M5K 1N6<br><br>Donald E. Milner<br>Aubrey Kauffman<br>Edmond Lamek<br>Jon Levin<br><br>Email:  dmilner@fasken.com<br>        akauffman@fasken.com<br>        elamek@fasken.com<br>        jlevin@fasken.com<br><br>Tel:    416.868.3538<br>Fax:   416.364.7813<br><br>Lawyers for Export Development Canada |

| | | | |
|---|---|---|---|
| AND TO: | **EXPORT DEVELOPMENT CANADA**<br>151 O'Connor Street<br>Ottawa, ON  K1A 1K3<br><br>Jennifer Sullivan<br><br>Email:  jsullivan@edc.ca<br><br>Tel:     613.597.8651<br>Fax:     613.598.3113 | AND TO: | **THORNTON GROUT FINNIGAN LLP**<br>3200-100 Wellington Street West<br>Toronto-Dominion Centre, Canadian Pacific Tower<br>Toronto, ON  M5K 1K7<br><br>Robert I. Thornton<br>Michael Barrack<br>Rachelle Moncur<br>Leanne M. Williams<br><br>Email:  rthornton@tgf.ca<br>           mbarrack@tgf.ca<br>           rmoncur@tgf.ca<br>           lwilliams@tgf.ca<br><br>Tel:     416.304.1616<br>Fax:     416.304.1313<br><br>Lawyers for Flextronics Telecom Systems Ltd. |
| AND TO: | **McINNES COOPER**<br>Purdy's Wharf Tower II<br>1300 – 1969 Upper Water Street<br>Halifax, NS  B3J 2V1<br><br>John Stringer, Q.C.<br>Stephen Kingston<br><br>Email:  john.stringer@mcinnescooper.com<br>           stephen.kingston@mcinnescooper.com<br><br>Tel:     902.425.6500<br>Fax:     902.425.6350<br><br>Lawyers for Convergys EMEA Limited | AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON  M5H 3S1<br><br>Jeffrey Carhart<br>Margaret Sims<br><br>Email:  jcarhart@millerthomson.com<br>           msims@millerthomson.com<br><br>Tel:     416.595.8615/8577<br>Fax:     416.595.8695<br><br>Lawyers for Toronto-Dominion Bank |
| AND TO: | **CAW-CANADA**<br>Legal Department<br>205 Placer Court<br>Toronto, ON M2H 3H9<br><br>Barry E. Wadsworth<br>Lewis Gottheil<br><br>Email:  barry.wadsworth@caw.ca<br>           lewis.gottheil@caw.ca<br><br>Tel.:    416.495.3776<br>Fax:     416.495.3786<br><br>Lawyers for all active and retired Nortel employees represented by the CAW-Canada | AND TO: | **BOUGHTON LAW CORPORATION**<br>Suite 700<br>595 Burrard Street<br>Vancouver, BC  V7X 1S8<br><br>R. Hoops Harrison<br><br>Email:  hharrison@boughton.ca<br><br>Tel:     604.687.6789<br>Fax:     604.683.5317<br><br>Lawyers for Tonko Realty Advisors (BC) Ltd. |

- 4 -

12

AND
TO:

**BORDEN LADNER GERVAIS LLP**
Scotia Plaza, 40 King Street West
Toronto, ON  M5H 3Y4

Michael J. MacNaughton
Roger Jaipargas
Sam P. Rappos

Email:   mmacnaughton@blgcanada.com
Tel:      416. 367.6646
Fax:     416. 682.2837

Email:   rjaipargas@blgcanada.com
Tel:      416.367.6266
Fax:     416.361.7067

Email:   srappos@blgcanada.com
Tel:      416.367.6033
Fax:     416.361.7306

Lawyers for Bell Canada

AND
TO:

**SISKINDS LLP**
680 Waterloo Street
London, ON  N6A 3V8

Raymond F. Leach
A. Dimitri Lascaris
Monique L. Radlein

Email:   ray.leach@siskinds.com
             dimitri.lascaris@siskinds.com
             monique.radlein@siskinds.com

Tel:      519.672.2121
Fax:     519.672.6065

Lawyers for Indiana Electrical Workers Pension
Trust Fund IBEW, Laborers Local 100 and 397
Pension Fund, and Bruce William Lapare

AND
TO:

**LANG MICHNER LLP**
Brookfield Place, Suite 2500
181 Bay Street
Toronto, ON  M5J 2T7

Leslie A. Wittlin
John Contini
Aaron Rousseau

Email:   lwittlin@langmichener.ca
Tel:      416.307.4087
Fax:     416.304.3855

Email    jcontini@langmichener.ca
Tel:      416.307.4148
Fax:     416.304.3767

Email    arousseau@langmichener.ca
Tel:      416.307.4081
Fax:     416.365.1719

Lawyers for ABN AMRO Bank N.V.

AND
TO:

**BENNETT JONES LLP**
1 First Canadian Place
Suite 3400
Toronto, ON  M5X 1A4

Kevin Zych
S. Richard Orzy
Gavin Finlayson

Email:   zychk@bennettjones.com
Tel:      416.777.5738
Fax:     416.863.1716

Email:   orzyr@bennettjones.com
Tel:      416.777.5737
Fax:     416.863.1716

Email:   finlaysong@bennettjones.com
Tel:      416.777.5762
Fax:     416.863.1716

Canadian Lawyers for The Informal Nortel
Noteholder Group

- 5 -

13

AND
TO:

**KOSKIE MINSKY**
20 Queen Street West
Suite 900
Toronto, ON  M5H 3R3

Mark Zigler
Susan Philpott
Demetrios Yiokaris
Andrea McKinnon

Email:    mzigler@kmlaw.ca
Tel:      416.595.2090
Fax:      416.204.2877

Email:    sphilpott@kmlaw.ca
Tel:      416.595.2104
Fax:      416.204.2882

Email:    dyiokaris@kmlaw.ca
Tel:      416.595.2130
Fax:      416.204.2810

Email:    amckinnon@kmlaw.ca
Tel:      416.595.2150
Fax:      416.204.2874

Lawyers for the Former Employees of Nortel

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims

Email:    jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:      416.595.8695

Email     msims@millerthomson.com
Tel:      416.595.8577
Fax:      416.595.8695

Canadian Lawyers for Telmar Network
Technology, Inc. and Precision Communication
Services, Inc.

AND
TO:

**MILLER THOMSON LLP**
Scotia Plaza
40 King Street West, Suite 5800
P.O. Box 1011
Toronto, ON  M5H 3S1

Jeffrey Carhart
Margaret Sims
James Klotz

Email:    jcarhart@millerthomson.com
Tel:      416.595.8615
Fax:      416.595.8695

Email:    msims@millerthomson.com
Tel:      416.595.8577
Fax:      416.595.8695

Email:    jmklotz@millerthomson.com
Tel:      416.595.4373
Fax:      416.595.8695

Lawyers for LG Electronics Inc.

AND
TO:

**LG ELECTRONICS INC.**
11/F, LG Twin Towers (West)
20 Yeouido-dong, Yeongduengpo-gu
Seoul 150-721, Korea

Joseph Kim

Email:    joseph.kim@lge.com

Tel:      +82.2.3777.3171
Fax:      +82.2.3777.5345

| | | | | |
|---|---|---|---|---|
| AND TO: | **CHAITONS LLP** | | AND TO: | **FRASER MILNER CASGRAIN LLP** |

<table>
<tr><td>AND<br>TO:</td><td><b>CHAITONS LLP</b><br>185 Sheppard Avenue West<br>Toronto, ON M2N 1M9</td></tr>
</table>

AND
TO:

**CHAITONS LLP**
185 Sheppard Avenue West
Toronto, ON  M2N 1M9

Harvey G. Chaiton

Email:  harvey@chaitons.com

Tel:     416.218.1129
Fax:    416.218.1849

Lawyers for IBM Canada Limited


AND
TO:

**FRASER MILNER CASGRAIN LLP**
1 First Canadian Place
100 King Street West
Toronto, ON  M5X 1B2

R. Shayne Kukulowicz
Alex MacFarlane
Michael J. Wunder
Ryan Jacobs

Email:  Shayne.kukulowicz@fmc-law.com
         Alex.macfarlane@fmc-law.com
         Michael.wunder@fmc-law.com
         ryan.jacobs@fmc-law.com

Tel:     416.863.4511
Fax:    416.863.4592

Canadian Lawyers for the Official Committee of
Unsecured Creditors


AND
TO:

**PALIARE ROLAND ROSENBERG
ROTHSTEIN LLP**
Suite 501
250 University Avenue
Toronto, ON  M5H 3E5

Kenneth T. Rosenberg
Massimo (Max) Starnino
Lily Harmer
Tina Lie

Email:  ken.rosenberg@paliareroland.com
Tel:     416.646.4304
Fax:    416.646.4301

Email:  max.starnino@paliareroland.com
Tel:     416.646.7431
Fax:    416.646.4301

Email:  lily.harmer@paliareroland.com
Tel:     416.646.4326
Fax:    416.646.4301

Email:  tina.lie@paliareroland.com
Tel:     416.646.4332
Fax:    416.646.4301

Lawyers for the Superintendent of Financial
Services as Administrator of the Pension
Benefits Guarantee Fund


AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

E. Patrick Shea

Email:  patrick.shea@gowlings.com

Tel:     416.369.7399
Fax:    416.862.7661

Lawyers for Westcon Group

[ 5

AND
TO:

**MINDEN GROSS LLP**
145 King Street West, Suite 2200
Toronto, ON  M5H 4G2

Raymond M. Slattery
David T. Ullmann

Email:    rslattery@mindengross.com
            dullmann@mindengross.com
Tel:      416.369.4149
Fax:      416.864.9223

Lawyers for Verizon Communications Inc.

AND
TO:

**AIRD & BERLIS**
Brookfield Place
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Harry Fogul
Peter K. Czegledy

Email:    hfogul@airdberlis.com
Tel:      416.865.7773
Fax:      416.863.1515

Email:    pczegledy@airdberlis.com
Tel:      416.865.7749
Fax:      416.863.1515

Lawyers for Microsoft Corporation

AND
TO:

**GARDINER ROBERTS LLP**
Suite 3100, Scotia Plaza
40 King Street West
Toronto, ON  M5H 3Y2

Jonathan Wigley
Vern W. DaRe

Email:    jwigley@gardiner-roberts.com
Tel:      416.865.6655
Fax:      416.865.6636

Email:    vdare@gardiner-roberts.com
Tel:      416.865.6641
Fax:      416.865.6636

Lawyers for Andrew, LLC

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

D. Robb English
Sanjeev P. R. Mitra

Email:    renglish@airdberlis.com
            smitra@airdberlis.com

Tel:      416.863.1500
Fax:      416.863.1515

Lawyers for Tata Consultancy Services Limited
and Tata America International Corporation

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:    sgraff@airdberlis.com
Tel:      416.865.7726
Fax:      416.863.1515

Email:    iaversa@airdberlis.com
Tel:      416.865.3082
Fax:      416.863.1515

Canadian Lawyers for Tellabs, Inc.

AND
TO:

**ALEXANDER HOLBURN BEAUDIN &
LANG LLP**
Barristers and Solicitors
700 West Georgia Street
Suite 2700
Vancouver, British Columbia  V7Y 1B8

Sharon M. Urquhart

Email:    surquhart@ahbl.ca
Tel:      604.484.1757
Fax:      604.484.1957

Lawyers for Algo Communication Products Ltd.

- 8 -

i 6

| | |
|---|---|
| AND TO: | **MILLER THOMSON LLP**<br>Scotia Plaza<br>40 King Street, West, Suite 5800<br>P.O. Box 1011<br>Toronto, ON M5H 3S1<br><br>Maurice Fleming<br><br>Email:  mfleming@millerthomson.com<br>Tel:      416.595.8686<br>Fax:     416.595.8695<br><br>Lawyers for Verint Americas Inc. and Verint Systems, Inc. |

| | |
|---|---|
| AND TO: | **DAVIS LLP**<br>1 First Canadian Place<br>Suite 5600<br>100 King Street West<br>Toronto, ON M5X 1E2<br><br>Bruce Darlington<br>Jonathan Davis-Sydor<br><br>Email:  bdarlington@davis.ca<br>Tel:      416.365.3529<br>Fax:     416.369.5210<br><br>Email:  jdavissydor@davis.ca<br>Tel:      416.941.5397<br>Fax:     416.365.7886<br><br>Lawyers for Brookfield LePage Johnson Controls Facility Management Services |

| | |
|---|---|
| AND TO: | **McMILLAN LLP**<br>Brookfield Place, Suite 4400<br>181 Bay Street<br>Toronto, Ontario M5J 2T3<br><br>Andrew F. Kent<br>Tushara Weerasooriya<br>Hilary E. Clarke<br><br>Email:  andrew.kent@mcmillan.ca<br>Tel:      416.865.7160<br>Fax:     416.865.7048<br><br>Email:  hilary.clarke@mcmillan.ca<br>Tel:      416.865.7286<br>Fax:     416.865.7048<br><br>Email:  tushara.weerasooriya@mcmillan.ca<br>Tel:      416.865.7262<br>Fax:     416.865.7048<br><br>Lawyers for Royal Bank of Canada |

| | |
|---|---|
| AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON M5J 2T9<br><br>Steven L. Graff<br>Ian E. Aversa<br><br>Email:  sgraff@airdberlis.com<br>Tel:      416.865.7726<br>Fax:     416.863.1515<br><br>Email:  iaversa@airdberlis.com<br>Tel:      416.865.3082<br>Fax:     416.863.1515<br><br>Lawyers for Perot Systems Corporation |

- 9 -

17

<table>
<tr><td>

AND<br>
TO:

**McMILLAN LLP**<br>
Brookfield Place, Suite 4400<br>
181 Bay Street<br>
Toronto, Ontario  M5J 2T3

Lawrence J. Crozier<br>
Adam C. Maerov

Email:  lawrence.crozier@mcmillan.ca<br>
Tel:     416.865.7178<br>
Fax:    416.865.7048

Email:  adam.maerov@mcmillan.ca<br>
Tel:     416.865.7285<br>
Fax:    416.865.7048

Lawyers for Citibank

</td><td>

AND<br>
TO:

**CASSELS BROCK & BLACKWELL LLP**<br>
40 King Street West,<br>
Suite 2100<br>
Toronto, Ontario  M5H 3C2

Deborah S. Grieve

Email:  dgrieve@casselsbrock.com<br>
Tel:     416.860.5219<br>
Fax:    416.350.6923

Lawyers for Alvarion Ltd.

</td></tr>
<tr><td>

AND<br>
TO:

**BLANEY McMURTRY LLP**<br>
Barristers and Solicitors<br>
1500 – 2 Queen Street East<br>
Toronto, Ontario  M5C 3G5

Domenico Magisano

Email:  dmagisano@blaney.com<br>
Tel:     416.593.2996<br>
Fax:    416.593.5437

Lawyers for Expertech Network Installation Inc.

</td><td>

AND<br>
TO:

**GARDINER ROBERTS LLP**<br>
Suite 3100, Scotia Plaza<br>
40 King Street West<br>
Toronto, ON  M5H 3Y2

Jonathan Wigley<br>
Vern W. DaRe

Email:  jwigley@gardiner-roberts.com<br>
Tel:     416.865.6655<br>
Fax:    416.865.6636

Email:  vdare@gardiner-roberts.com<br>
Tel:     416.865.6641<br>
Fax:    416.865.6636

Lawyers for Amphenol Corporation

</td></tr>
<tr><td>

AND<br>
TO:

**LANG MICHENER LLP**<br>
Brookfield Place<br>
Suite 2500, 181 Bay Street<br>
P.O. Box 747<br>
Toronto, Ontario  M5J 2T7

Leslie Wittlin<br>
Aaron Rousseau

Email:  lwittlin@langmichener.ca<br>
Tel:     416.307.4087<br>
Fax:    416.365.1719

Email:  arousseau@langmichener.ca<br>
Tel:     416.307.4081<br>
Fax:    416.365.1719

Lawyers for Right Management Inc.

</td><td>

AND<br>
TO:

**AIRD & BERLIS LLP**<br>
Barristers & Solicitors<br>
Brookfield Place, P.O. Box 754<br>
181 Bay Street, Suite 1800<br>
Toronto, Ontario  M5J 2T9

Sanjeev P.R. Mitra<br>
Sandra A. Vitorovich

Email:  smitra@airdberlis.com<br>
          svitorovich@airdberlis.com

Tel:     416.863.1500<br>
Fax:    416.863.1515

Lawyers for Enbridge Gas Distribution Inc.

</td></tr>
</table>

DOCSTOR: 1600901\3

- 10 -

18

<table>
<tr>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**NELLIGAN O'BRIEN PAYNE LLP**
Barristers and Solicitors
50 O'Connor Street
Suite 1500
Ottawa, Ontario  K1P 6L2

Janice B. Payne
Ainslie Benedict
Steven Levitt
Christopher Rootham

Email:  janice.payne@nelligan.ca
          ainslie.benedict@nelligan.ca
          steven.levitt@nelligan.ca
          christopher.rootham@nelligan.ca

Tel:    613.231.8245
Fax:   613.788.3655

Lawyers for the Steering Committee of Recently
Severed Canadian Nortel Employees

</td>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**CASSELS BROCK & BLACKWELL LLP**
2100 Scotia Plaza
40 King Street West
Toronto, Ontario  M5H 3C2

E. Bruce Leonard
Harvey Garman
Michael Casey

Email:  bleonard@casselsbrock.com
          hgarman@casselsbrock.com
          mcasey@casselsbrock.com

Tel:    416.860.6455
Fax:   416.640.3054

Lawyers for the UK Pension Protection Fund and
Nortel Networks UK Pension Trust Limited

</td>
</tr>
<tr>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**CALEYWRAY**
Labour/Employment Lawyers
1600-65 Queen Street West
Toronto, Ontario  M5H 2M5

Gail E. Misra

Email:  misrag@caleywray.com

Tel:    416.775.4680
Fax:   416.366.3293

Lawyers for the Communication, Energy and
Paperworkers Union of Canada

</td>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**MCFARLANE LEPSOE**
Barristers & Solicitors
70 Gloucester Street, Third Floor
Ottawa, Ontario  K2P 0A2

Paul K. Lepsoe

Email:  pklepsoe@mcfarlanelaw.com

Tel:    613.233.2679
Fax:   613.233.3774

Lawyers for Iron Mountain Canada Corporation
and Iron Mountain Information Management, Inc.

</td>
</tr>
<tr>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**COLBY, MONET DEMERS, DELAGE &
CREVIER LLP**
Tour McGill College
1501 McGill College Avenue
Suite 2900
Montreal, Quebec  H3A 3M8

David J. Dropsy

Email:  ddropsy@colby-monet.com
Tel:    514.284.3663
Fax:   514.284.1961

Lawyers for GFI INC., a division of Thomas &
Betts Manufacturing Inc.

</td>
<td valign="top">AND<br>TO:</td>
<td valign="top">

**SCHNEIDER & GAGGINO**
375 Lakeshore Drive
Dorval, Quebec  H9S 2A5

Dan Goldstein
Marco Gaggino

Email:  dgoldstein@schneidergaggino.com
          mgaggino@schneidergaggino.com

Tel:    514.631.8787
Fax:   514.631.0220

Lawyers for the Teamsters Quebec Local 1999

</td>
</tr>
</table>

- 11 -

19

| | | | |
|---|---|---|---|
| AND TO: | **NELLIGAN O'BRIEN PAYNE LLP**<br>Barristers and Solicitors<br>50 O'Connor Street<br>Suite 1500<br>Ottawa, Ontario  K1P 6L2<br><br>Janice B. Payne<br>Steven Levitt<br>Christopher Rootham<br><br>Email:  janice.payne@nelligan.ca<br>steven.levitt@nelligan.ca<br>christopher.rootham@nelligan.ca<br><br>Tel:  613.231.8245<br>Fax:  613.788.3655<br><br>Lawyers for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009 | AND TO: | **BAKER & McKENZIE LLP**<br>Brookfield Place, P.O. Box 874<br>181 Bay Street, Suite 2100<br>Toronto, Ontario  M5J 2T3<br><br>Chris Besant<br>Lydia Salvi<br><br>Email:  chris.besant@bakernet.com<br><br>Tel:  416.865.2318<br>Fax:  416.863.6275<br><br>Email:  lydia.salvi@bakernet.com<br><br>Tel:  416.865.6944<br>Fax:  416.863.6275<br><br>Lawyers for Jabil Circuit Inc. |
| AND TO: | **BENNETT JONES LLP**<br>1 First Canadian Place<br>Suite 3400<br>Toronto, Ontario  M5X 1A4<br><br>Robyn M. Ryan Bell<br>Mark Laugesen<br><br>Email:  ryanbellr@bennettjones.com<br>laugesenm@bennettjones.com<br><br>Tel:  416.863.1200<br>Fax:  416.863.1716<br><br>Lawyers for Tel-e Connect Systems Ltd. and Tel-e Connect Systems (Toronto) Ltd. | AND TO: | **McCARTHY TETRAULT LLP**<br>Suite 5300, Toronto Dominion Bank Tower<br>Toronto, Ontario  M5K 1E6<br><br>Thomas G. Heintzman<br>Junior Sirivar<br><br>Email:  theintzm@mccarthy.ca<br>Tel:  416.601.7627<br>Fax:  416.868.0673<br><br>Email:  jsirivar@mccarthy.ca<br>Tel:  416.601.7750<br>Fax:  416.868.0673<br><br>Lawyers for Frank Andrew Dunn |
| AND TO: | **MINDEN GROSS LLP**<br>145 King Street West, Suite 2200<br>Toronto, Ontario  M5H 4G2<br><br>Timothy R. Dunn<br><br>Email:  tdunn@mindengross.com<br>Tel:  416.369.4335<br>Fax:  416.864.9223<br><br>Lawyers for 2748355 Canada Inc. | AND TO: | **EURODATA**<br>2574 Sheffield Road<br>Ottawa, Ontario  K1B 3V7<br><br>Nanci Shore<br><br>Email:  nanci@eurodata.ca<br>Tel:  613.745.0921<br>Fax:  613.745.1172 |

- 12 -

20

| | |
|---|---|
| AND TO: | **BALDWIN LAW PROFESSIONAL CORPORATION**<br>54 Victoria Avenue<br>Belleville, Ontario K8N 5J2<br><br>Ian W. Brady<br><br>Email:  lbrady@baldwinlaw.ca<br>Tel:      613.771.9991<br>Fax:     613.771.9998<br><br>Lawyers for Sydney Street Properties Corp. |
| AND TO: | **AIRD & BERLIS LLP**<br>Barristers & Solicitors<br>Brookfield Place, P.O. Box 754<br>181 Bay Street, Suite 1800<br>Toronto, ON  M5J 2T9<br><br>Steven L. Graff<br>Ian E. Aversa<br><br>Email:  sgraff@airdberlis.com<br>Tel:      416.865.7726<br>Fax:     416.863.1515<br><br>Email:  iaversa@airdberlis.com<br>Tel:      416.865.3082<br>Fax:     416.863.1515<br><br>Lawyers for Huawei Technologies Co. Ltd. |
| AND TO: | **SHIBLEY RIGHTON LLP**<br>Barristers and Solicitors<br>250 University Avenue, Suite 700<br>Toronto, Ontario M5H 3E5<br><br>Arthur O. Jacques<br>Thomas McRae<br><br>Email:  arthur.jacques@shibleyrighton.com<br>Tel:      416.214.5213<br>Fax:     416.214.5413<br><br>Email :  thomas.mcrae@shibleyrighton.com<br>Tel :     416.214.5206<br>Fax :     416.214.5400<br><br>Co-Counsel for the Steering Committee of Nortel Canadian Continuing Employees – Post CCAA as at January 14, 2009 |

| | |
|---|---|
| AND TO: | **AETL TESTING, INC.**<br>130 Chaparral Court, Suite 250<br>Anaheim, California 92808<br><br>Cynthia R. Maher<br><br>Email:  cynthia.maher@ntscorp.com<br>Tel:      714.998.4351<br>Fax:     714.998.7142<br><br>Lawyers for AETL Testing, Inc. |
| AND TO: | **SHIBLEY RIGHTON LLP**<br>Barristers and Solicitors<br>250 University Avenue, Suite 700<br>Toronto, Ontario M5H 3E5<br><br>Arthur O. Jacques<br>Thomas McRae<br><br>Email:  arthur.jacques@shibleyrighton.com<br>Tel:      416.214.5213<br>Fax:     416.214.5413<br><br>Email :  thomas.mcrae@shibleyrighton.com<br>Tel :     416.214.5206<br>Fax :     416.214.5400<br><br>Lawyers for The Recently Severed Canadian Nortel Employees Committee |
| AND TO: | **LAVERY, DE BILLY, LLP**<br>Barristers & Solicitors<br>Suite 2400, 600 de la Gauchetière West<br>Montreal, Quebec H3B 4L8<br><br>Jean-Yves Simard<br><br>Email :  jysimard@lavery.ca<br>Tel :     514.871.1522<br>Fax :     514.871.8977<br><br>Lawyers for Texas Landlords to Nortel Networks Inc. |

DOCSTOR: 1600901\3

AND
TO:

**NATIONAL TECHNICAL SYSTEMS**
130 Chaparral Ct., Suite 250
Anaheim, California, U.S.A.
92808

Cynthia Maher

Email:   cynthia.maher@ntscorp.com
Tel:     714.998.4351

AND
TO:

**DAVIS LLP**
1 First Canadian Place
Suite 5600
100 King Street West
Toronto, ON  M5X 1E2

Bruce Darlington
Jonathan Davis-Sydor

Email:   bdarlington@davis.ca
Tel:     416.365.3529
Fax:     416.369.5210

Email:   jdavissydor@davis.ca
Tel:     416.941.5397
Fax:     416.365.7886

Lawyers for Computershare Trust Company of
Canada

AND
TO:

**LAX O'SULLIVAN SCOTT LLP**
Counsel
Suite 1920, 145 King Street West
Toronto, Ontario  M5H 1J8

Terrence O'Sullivan
Shaun F. Laubman

E-mail:  tosullivan@counsel-toronto.com
Tel:     416.598.1744
Fax:     416.598.3730

Email:   slaubman@counsel-toronto.com
Tel:     416.598.1744
Fax:     416.598.3730

Lawyers for William A. Owens

AND
TO:

**GOWLING LAFLEUR HENDERSON LLP**
Suite 1600, First Canadian Place
100 King Street West
Toronto, ON  M5X 1G5

David F.W. Cohen

Email:   david.cohen@gowlings.com

Tel:     416.369.6667
Fax:     416.862.7661

Lawyers for General Electric Canada Equipment
Finance G.P. and GE Capital Canada Leasing
Services Inc.

AND
TO:

**DAVIES WARD PHILLIPS & VINEBERG
LLP**
44th Floor
1 First Canadian Place
Toronto, ON  M5X 1B1

Robin B. Schwill
Matthew P. Gottlieb

Email:   rschwill@dwpv.com
Tel:     416.863.0900
Fax:     416.863.0871

Email:   mgottlieb@dwpv.com
Tel:     416.863.0900
Fax:     416.863.0871

Lawyers for Nortel Networks UK Limited (In
Administration)

AND
TO:

**BAKER & McKENZIE LLP**
Brookfield Place, P.O. Box 874
181 Bay Street, Suite 2100
Toronto, Ontario  M5J 2T3

Lydia Salvi

Email:   lydia.salvi@bakernet.com

Tel:     416.865.6944
Fax:     416.863.6275

Lawyers for Wipro Limited

- 14 -

22

AND
TO:

**AIRD & BERLIS LLP**
Barristers & Solicitors
Brookfield Place, P.O. Box 754
181 Bay Street, Suite 1800
Toronto, ON  M5J 2T9

Steven L. Graff
Ian E. Aversa

Email:   sgraff@airdberlis.com
Tel:     416.865.7726
Fax:     416.863.1515

Email:   iaversa@airdberlis.com
Tel:     416.865.3082
Fax:     416.863.1515

Lawyers for the Current and Former Employees of
Nortel Networks Inc. who are or were Participants
in the Long-Term Investment Plan Sponsored by
Nortel Networks Inc.

AND
TO:

**McCARTHY TETRAULT LLP**
Suite 5300, TD Bank Tower
Toronto Dominion Centre
Toronto, Ontario  M5K 1E6

Heather Meredith

Email:   hmeredith@mccarthy.ca
Tel:     416.601.8342
Fax:     416.868.0673

Lawyers for Hitachi Communications
Technologies, Ltd.

AND
TO:

**TORYS LLP**
79 Wellington Street West, Suite 3000
Box 270, TD Centre
Toronto, Ontario  M5K 1N2

Scott Bomhof

Email:   sbomhof@torys.com
Tel:     416.865.7370
Fax:     416.865.7380

Lawyers for Nokia Siemens Networks B.V.

AND
TO:

**DEPARTMENT OF JUSTICE**
Ontario Regional Office
The Exchange Tower, Box 36
130 King Street W., Suite 3400
Toronto, Ontario  M5X 1K6

Diane Winters

Email:   dwinters@justice.gc.ca
Tel:     416.973.3172
Fax:     416.973.0810

23

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Pamela Huff
Milly Chow
Hugh DesBrisay
Craig Thorburn

Email:  pamela.huff@blakes.com
Tel:    416.863.2958
Fax:    416.863.2653

Email:  milly.chow@blakes.com
Tel:    416.863.2594
Fax:    416.863.2653

Email:  hugh.desbrisay@blakes.com
Tel:    416.863.2426
Fax:    416.863.2653

Email:  craig.thorburn@blakes.com
Tel:    416.863.2965
Fax:    416.863.2653

Lawyers for MatlinPatterson Global Advisers LLC,
MatlinPatterson Global Opportunities Partners III
L.P. and MatlinPatterson Opportunities Partners
(Cayman) III L.P.

AND TO: **BLAKE, CASSELS & GRAYDON LLP**
199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario  M5L 1A9

Susan M. Grundy
Marc Flynn

Email:  susan.grundy@blakes.com
Tel:    416.863.2572
Fax:    416.863.2653

Email:  marc.flynn@blakes.com
Tel:    416.863.2685
Fax:    416.863.2653

Lawyers for Telefonaktiebolaget L M Ericsson
(publ)

AND TO: **LANG MICHENER LLP**
Brookfield Place
181 Bay Street, Suite 2500
Toronto, Ontario, M5J 2T7

Sheryl E. Seigel

Email:  sseigel@langmichener.ca
Tel:    416.307.4063
Fax:    416.365.1719

Lawyers for The Bank of New York Mellon

AND TO: **McCARTHY TETRAULT LLP**
Suite 5300, Toronto Dominion Bank Tower
Toronto, Ontario  M5K 1E6

Kevin P. McElcheran
Ryan Stabile

Email:  kmcelcheran@mccarthy.ca
Tel:    416.601.7730
Fax:    416.868.0673

Email:  rstabile@mccarthy.ca
Tel:    416.601.8335
Fax:    416.868.0673

Lawyers for Avaya Inc.

- 16 -

24

| | | | |
|---|---|---|---|
| AND TO: | **SACK GOLDBLATT MITCHELL LLP**<br>20 Dundas Street West<br>Suite 1100<br>Toronto, Ontario  M5G 2G8 | AND TO: | **FOGLER, RUBINOFF LLP**<br>Barristers and Solicitors<br>Suite 1200<br>Toronto-Dominion Centre<br>95 Wellington Street West<br>Toronto, Ontario  M5J 2Z9 |

AND TO:    **SACK GOLDBLATT MITCHELL LLP**
            20 Dundas Street West
            Suite 1100
            Toronto, Ontario  M5G 2G8

            James McDonald
            Darrell Brown

            Email:    jmcdonald@sgmlaw.com
            Tel:      416.979.6425
            Fax:      416.591.7333

            Email:    dbrown@sgmlaw.com
            Tel:      416.979.4050
            Fax:      416.591.7333

            Lawyers for Edmund Fitzgerald

AND TO:    **FOGLER, RUBINOFF LLP**
            Barristers and Solicitors
            Suite 1200
            Toronto-Dominion Centre
            95 Wellington Street West
            Toronto, Ontario  M5J 2Z9

            Jeffrey K. Spiegelman

            Email:    jspiegelman@foglers.com
            Tel:      416.864.9700
            Fax:      416.941.8852

            Lawyers for Belden (Canada) Inc.

AND TO:    **STIKEMAN ELLIOTT LLP**
            5300 Commerce Court West
            199 Bay Street
            Toronto, ON  M5L 1B9

            Ashley John Taylor

            Email:    ataylor@stikeman.com
            Tel:      416.869.5236
            Fax:      416.947.0866

            Lawyers for Ciena Corporation

AND TO:    **STIKEMAN ELLIOTT LLP**
            445 Park Avenue, 7th Floor
            New York, NY  10022

            Gordon Cameron
            Ron Ferguson

            Email:    gncameron@stikeman.com
            Tel:      212.845.7464
            Fax:      212.371.7087

            Email:    rferguson@stikeman.com
            Tel:      212.845.7477
            Fax:      212.371.7087

            Lawyers for GENBAND Inc.

AND TO:    **STIKEMAN ELLIOTT LLP**
            5300 Commerce Court West
            199 Bay Street
            Toronto, ON  M5L 1B9

            Sean F. Dunphy

            Email:    sdunphy@stikeman.com
            Tel:      416.869.5662
            Fax:      416.947.0866

            Lawyers for GENBAND Inc.

**COURTESY COPIES:**

AND TO:   **LEWIS AND ROCA**
          40 North Central Avenue
          Phoenix, Arizona
          USA 85004-4429

          Scott K. Brown

          Email:    sbrown@lrlaw.com

          Tel:      602.262.5321
          Fax:      602.734.3866

          Lawyers for The Prudential Insurance
          Company of America

AND TO:   **CURTIS, MALLET-PREVOST, COLT &
          MOSLE LLP**
          101 Park Avenue
          New York, New York 10178-0061

          Steven J. Reisman
          James V. Drew

          E-mail:   sreisman@curtis.com
                    jdrew@curtis.com

          Tel:      212.696.6000
          Fax:      212-697-1559

          Lawyers for Flextronics International

AND TO:   **AKIN GUMP STRAUSS HAUER &
          FELD LLP**
          One Bryant Park
          New York, NY 10036

          Fred S. Hodara

          Email:    fhodara@akingump.com

          Tel:      212.872.1000
          Fax:      212.872.1002

          U.S. Lawyers for the Official Committee of
          Unsecured Creditors

AND TO:   **MILBANK, TWEED, HADLEY
          McCLOY LLP**
          1 Chase Manhattan Plaza
          New York, NY 10005

          Dennis F. Dunne
          Andrew M. Leblanc
          Albert A. Pisa

          Email:    DDunne@milbank.com
          Tel:      212.530.5770
          Fax:      212.530.5219

          Email:    ALeblanc@milbank.com
          Tel:      212.835.7574
          Fax:      212.530.5219

          Email:    APisa@milbank.com
          Tel:      212.530.5319
          Fax:      212.530.5219

          U.S. Lawyers for The Informal Nortel
          Noteholder Group

- 18 -

26

AND
TO:

**VEDDER PRICE P.C.**
1633 Broadway, 47th Floor
New York, New York  10019

Michael L. Schein

Email:   mschein@vedderprice.com

Tel:     212.407.6920
Fax:    212.407.7799

U.S. Lawyers for Telmar Network Technology,
Inc. and Precision Communication Services, Inc.

AND
TO:

**MACLEOD DIXON LLP**
3700 Canterra Tower
400, 3rd Avenue N.W.
Calgary, Alberta  T2P 4H2

Andrew Robertson
Caylee M. Rieger

Email :   andrew.robertson@macleoddixon.com
            caylee.rieger@macleoddixon.com

Tel :     403.267.8222
Fax :    403.264.5973

Agent for Nelligan O'Brien Payne LLP, lawyers
for the Steering Committee of Recently Severed
Canadian Nortel Employees and lawyers for the
Steering Committee of Nortel Canadian
Continuing Employees – Post CCAA as at
January 14, 2009

AND
TO:

**BRYAN CAVE LLP**
161 North Clark Street, Suite 4300
Chicago, Illinois  60601

Eric S. Prezant

Email:   eric.prezant@bryancave.com
Tel:     312.602.5033
Fax:    312.602.5050

U.S. Lawyers for Tellabs, Inc.

DOCSTOR: 1600901\3

27

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

Applicants

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(Commercial List)**

Proceeding commenced at Toronto

**NOTICE OF MOTION**
**(RETURNABLE FEBRUARY 25, 2010)**

**Goodmans LLP**
Barristers & Solicitors
333 Bay Street
Suite 3400
Toronto, Canada  M5H 2S7

Jay Carfagnini  LSUC#: 222936
Fred Myers  LSUC#: 26301A
Joseph A. Pasquariello  LSUC#: 37389C

Lawyers for Ernst & Young Inc., in its capacity as Court-Appointed Monitor

**TAB 2**

Court File No. 09-CL-7950  28

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS***
***ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF**
**COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION AND NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

**THIRTY-EIGHTH REPORT OF THE MONITOR**
**DATED FEBRUARY 17, 2010**

## INTRODUCTION

1.      On January 14, 2009 (the "**Filing Date**") Nortel Networks Corporation ("**NNC**" and collectively with all its subsidiaries "**Nortel**" or the "**Company**"), Nortel Networks Limited ("**NNL**"), Nortel Networks Technology Corporation, Nortel Networks International Corporation and Nortel Networks Global Corporation (collectively the "**Applicants**") filed for and obtained protection under the *Companies' Creditors Arrangement Act* ("**CCAA**"). Pursuant to the Order of this Honourable Court dated January 14, 2009, as amended and restated (the "**Initial Order**"), Ernst & Young Inc. was appointed as the Monitor of the Applicants (the "**Monitor**") in the CCAA proceedings. The stay of proceedings was extended to April 23, 2010, by this Honourable Court in its Order dated January 21, 2010.

2.      Nortel Networks Inc. ("**NNI**") and certain of its U.S. subsidiaries concurrently filed voluntary petitions under Chapter 11 of Title 11 of the U.S. Bankruptcy Code (the "**Code**") in the United States Bankruptcy Court for the District of Delaware (the "**U.S. Court**") on January 14, 2009 (the "**Chapter 11 Proceedings**"). As required by U.S. law, an official unsecured creditors committee (the "**Committee**") was established in January, 2009.

- 2 -

29

3.    An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "**Bondholder Group**"). In addition, pursuant to Orders of this Honourable Court dated May 27, 2009, and July 22, 2009, representative counsel was appointed on behalf of the former employees of the Applicants and on behalf of the continuing employees of the Applicants, respectively, and each of these groups is participating in the CCAA proceedings.

4.    Nortel Networks (CALA) Inc. (together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "**U.S. Debtors**") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.    Nortel Networks UK Limited ("**NNUK**") and certain of its subsidiaries located in EMEA were granted Administration orders (the "**U.K. Administration Orders**") by the High Court of England and Wales on January 14, 2009 (collectively the "**EMEA Debtors**"). The U.K. Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as Administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "**Joint Administrators**"). On June 8, 2009, the Joint Administrators appointed in respect of NNUK filed a petition with the U.S. Court for the recognition of the Administration Proceedings as they relate to NNUK (the "**English Proceedings**") under Chapter 15 of the Code. On June 26, 2009, the U.S. Court entered an order recognizing the English Proceedings as foreign main proceedings under Chapter 15 of the Code.

6.    On January 20, 2009, Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (together "**NN Israel**") were granted Administration orders by the court in Israel (the "**Israeli Administration Orders**"). The Israeli Administration Orders appointed representatives of Ernst & Young LLP in the U.K. and Israel as Administrators of NN Israel (the "**Joint Israeli Administrators**") and provided a stay of NN Israel's creditors which, subject to further order of the Israeli Court, remains in effect during the Administration.

7.    Subsequent to the Filing Date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

## PURPOSE

8.    The purpose of this Thirty-Eighth Report (the "**Thirty-Eighth Report**") is to provide an overview of the proceedings commenced by The Pensions Regulator (United Kingdom) against NNC and NNL and to provide support for the Monitor's motion seeking the relief outlined in the Notice of Motion.

## TERMS OF REFERENCE

9.    In preparing this Thirty-Eighth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel. The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Thirty-Eighth Report.

10.    Unless otherwise stated, all monetary amounts contained herein are expressed in U.S. dollars.

11.    Capitalized terms not defined in this Thirty-Eighth Report are as defined in the Affidavit of John Doolittle sworn on January 14, 2009 (the "Doolittle Affidavit") or previous reports of the Monitor.

12.    The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the Chapter 11 Proceedings are posted.

- 4 -

31

## OVERVIEW OF THE PENSIONS REGULATOR'S PROCEEDING

13.     On January 11, 2010, The Pensions Regulator issued a document to NNC and NNL
        styled: "Warning Notice In the matter of NORTEL NETWORKS UK PENSION PLAN
        ("the Scheme") And in the matter of THE PENSIONS ACT 2004 (the "Act")" (the
        **Warning Notice**").

14.     The Warning Notice is a pleading required under *The Pensions Act 2004* (U.K.) (the
        "**U.K. Statute**") that commences a proceeding enabling The Pensions Regulator to make
        "financial support direction" ("**FSD**") orders pursuant to the U.K. Statute so as to cause
        affiliates of NNUK to become liable to contribute up to approximately £2.1 billion
        toward the deficit in the pension plan maintained by NNUK (the "**NNUK Pension
        Plan**").

15.     The Warning Notice has also been issued against, amongst other Nortel entities, NNI and
        Nortel Networks (CALA) Inc. The Monitor understands the U.S. Debtors are bringing a
        motion in the Chapter 11 Proceedings seeking relief similar in nature to the relief being
        sought by the Monitor in the within motion.

16.     In the Warning Notice, The Pensions Regulator purported to exercise rights against NNC
        and NNL under the U.K. Statute including, without limitation, the commencement of
        proceedings and the purported right to deem certain facts under Regulation 12 of the U.K.
        Statute.

17.     The ultimate result of the Warning Notice proceeding could be the issuance of an FSD
        and contribution notice ("**CN**") against NNC and/or NNL that would purport to hold one
        or both of them liable for all or a portion of the funding deficiency in the NNUK Pension
        Plan.

18.     Further details regarding the Warning Notice as well as the circumstances surrounding it
        are provided below at paragraphs 44 to 65.

32

## OVERVIEW OF PROCEEDINGS TO DATE

### *The Initial Order and Stay*

19.  As noted above at paragraph 1, on January 14, 2009, this Honourable Court granted the Initial Order that, amongst other things, stayed all proceedings against the Applicants and stayed the rights and remedies of all persons against or in respect of the Applicants, or their business or property:

> 14. THIS COURT ORDERS that until and including February 13, 2009 or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced, or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the affected Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the affected Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

> 15. THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the affected Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) exempt the Applicants from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

20.  The stay period provided for in the Initial Order has been extended by numerous subsequent Orders of this Honourable Court, most recently until April 23, 2010, pursuant to an Order dated January 21, 2010. Copies of the Initial Order and the most recent stay extension order are attached as Appendices "A" and "B", respectively.

### *Claims Process*

21.  On July 30, 2009, this Honourable Court granted a Claims Procedure Order (as amended and restated, the "**Claims Procedure Order**") that, amongst other things, established claims bar dates for Prefiling Claims and Restructuring Claims (each as defined in the

Claims Procedure Order). The claims bar date for Prefiling Claims was September 30, 2009. A copy of the Claims Procedure Order is attached as Appendix "C" hereto.

22.    On or about September 30, 2009, the Nortel Networks UK Pension Trust Limited (the "**Trustee**"), the trustee of the NNUK Pension Plan, and the U.K. Protection Pension Fund (the "**PPF**")[1] filed proofs of claim against each of the Applicants. These proofs of claim are discussed in greater detail below beginning at paragraph 40.

23.    The Applicants have recently begun discussions on a cross-border claims protocol with the U.S. Debtors which, in conjunction with a claims resolution order, will form the basis for resolving the Prefiling Claims and Restructuring Claims filed against the Applicants.

*Sales Processes and Allocation Protocol*

24.    As this Honourable Court knows, Nortel has been auctioning off its various global businesses as a means of preserving those businesses as going concerns and maximizing value for its global creditors. To date, these auctions have resulted in expected sale proceeds to Nortel of approximately $3 billion.

25.    The task of allocating the sale proceeds from the sales of these businesses amongst the various Nortel entities worldwide is complex as the businesses are not operated through dedicated legal entities or stand-alone divisions.

26.    As set out in the Fifteenth Report, the Applicants, the U.S. Debtors, and certain of the EMEA entities, through the Joint Administrators, entered into the Interim Funding and Settlement Agreement ("**IFSA**") which was approved by this Honourable Court on June 29, 2009. A copy of the IFSA is attached as Appendix "D" hereto. Pursuant to the IFSA, each of the Applicants, the U.S. Debtors and the EMEA Debtors agreed that the proceeds shall be deposited in an escrow account and any distribution from the escrow account shall be contingent upon (i) the agreement of the relevant parties, or (ii) in the case where

---

[1] The PPF is a corporation established pursuant to the U.K. Statute that administers a statutory fund that provides compensation to members of defined benefit pension plans in the U.K. where there is a qualifying insolvency event and insufficient assets in the plan to provide benefits of the same amount as the compensation which the PPF would provide.

34

the parties fail to reach an agreement, a determination of the allocation by the relevant dispute resolvers.

27.  In accordance with the IFSA, the sale proceeds received by Nortel in connection with the CDMA/LTE Access, Enterprise, Layer 4-7 and Next Generation Packet Core businesses have been placed into escrow and the sale proceeds from the MEN transaction, the GSM/GSM-R transaction and the CVAS transaction will also be placed into escrow.

28.  The parties to the IFSA have also agreed to negotiate in good faith in an attempt to reach agreement on a protocol (the **"Allocation Protocol"**) for resolving disputes concerning the allocation of sales proceeds where the parties have been unable to reach an agreement regarding such allocation.

29.  Subsequent to the execution of the IFSA, the relevant parties have been negotiating the terms of the Allocation Protocol in good faith and considerable progress on the terms of the Allocation Protocol has been made. In addition, the relevant entities have begun submitting preliminary requests for information in connection with their efforts to agree on an allocation and on the terms of the Allocation Protocol.

30.  As noted above, NNUK, through the Joint Administrators, is a party to the IFSA and will be one of the parties to the Allocation Protocol. The Monitor expects that, as part of the allocation negotiations and, if necessary, the dispute resolution process envisioned under the draft Allocation Protocol, parties are likely to assert claims based on pre-filing contributions and other factors, which claims are likely to be contested.

### *Present Circumstances of the Restructuring*

31.  As detailed at paragraphs 14 to 34 of the Thirty-Seventh Report, the Applicants have made considerable strides in implementing their restructuring strategy; however, a number of crucial steps remain, including, amongst other things:

(a)  closing the sale of the MEN business for sale proceeds valued at approximately $769 million;

- 8 -

(b)    closing the sale of GSM/GSM-R business for proceeds of approximately $103 million;

(c)    completing the sale of the CVAS business, including conducting an auction scheduled for February 25, 2010;

(d)    selecting a purchaser for NNL's interest in the LG-Nortel joint venture and closing such transaction;

(e)    ensuring the smooth transition of the above businesses, as well as the CDMA/LTE Access and Enterprise businesses, to their respective purchasers in accordance with the various transition services agreements that Nortel has entered into or will enter into;

(f)    implementing a strategy for the divestiture or value maximization of Nortel's remaining assets, including its Passport-15 business and extensive patent portfolio;

(g)    finalizing a claims resolution order and cross-border claims protocol, as well as establishing a claims process for Compensation Claims (as defined in the Claims Procedure Order);

(h)    finalizing the Allocation Protocol and allocating sale proceeds; and

(i)    distributing the Applicants' assets to their creditors.

32.    In sum, while significant progress has been made in the Applicants' restructuring to date, there remains many crucial tasks to be completed in the coming months that require the full attention of the Applicants.

33.    It is imperative that the Applicants' man agement and advisors be permitted to stay focused on the remaining divestitures and the other tasks described above for the benefit of all stakeholders.

**THE NNUK PENSION PLAN CLAIMS[2]**

34.     As noted above, NNUK is a direct subsidiary of NNL and is subject to administration proceedings in the United Kingdom.

35.     In 1991, Northern Telecom PLC, a wholly owned subsidiary of Northern Telecom Limited (which in 1999 became NNC), acquired the shares of STC plc ("**STC**"), a public company headquartered in the United Kingdom. STC had sponsored a defined benefit pension scheme for the benefit of its U.K. employees since 1949. Upon the acquisition of STC, NNUK became the sponsor and participating employer of this pension plan, which subsequently became the NNUK Pension Plan.

36.     The Monitor understands that in 2006 the Trustee and NNUK entered into negotiations regarding a funding deficiency in the NNUK Pension Plan. These negotiations ultimately resulted in NNUK and the Trustee entering into certain arrangements regarding the funding of the NNUK Pension Plan, including the payment of past service deficit contributions and current service contributions.

37.     At the request of the Trustee, NNL provided a guarantee dated November 21, 2006, in favour of the Trustee (the "**Guarantee**") of certain of NNUK's obligations in relation to the NNUK Pension Plan, including NNUK's obligation to make the past service deficit contributions described above in paragraph 36. A copy of the Guarantee is attached as Appendix "E" hereto. NNL's obligations under the Guarantee are triggered by NNUK's failure to, amongst other things, make the past service deficit contributions. The Monitor understands that NNUK has failed to make certain of the past service deficit contributions. The proof of claim filed by the Trustee and the PPF against NNL claims £495.25 million (or approximately CAD$880 million converted at the exchange rate approved in the Claims Procedure Order) on account of the Guarantee.

38.     In 2007, again at the request of the Trustee, NNL provided a second guarantee in favour

---

[2] The descriptions of the Trustee's and/or the PPF's potential claims contained in this Thirty-Eighth Report are for informational purposes only and shall in no way constitute admission or acceptance of all or a portion of the proofs of claim filed by the Trustee and the PPF.

- 10 -

of the Trustee dated December 21, 2007 (the "**Insolvency Guarantee**"), a copy of which is attached as Appendix "F" hereto. The Insolvency Guarantee is triggered by an Insolvency Event (as defined in the Insolvency Guarantee) occurring in connection with NNUK. The amount of the Insolvency Guarantee is limited to a maximum of $150 million.

39.     The Monitor understands that NNL's decision to provide the Guarantee and the Insolvency Guarantee were the result of extensive negotiations amongst the Trustee, NNUK and NNC/NNL in respect of the NNUK Pension Plan. The Monitor further understands that The Pensions Regulator was aware of these negotiations as well as the terms of the Guarantee and the Insolvency Guarantee.

40.     On September 30, 2009, the Trustee and the PPF filed the proofs of claim referenced above at paragraph 22. A copy of a portion of the proof of claim filed by the Trustee and the PPF against NNL is attached as Appendix "G" hereto.[3]

41.     In addition to describing the claims the Trustee and the PPF make against NNL in relation to the Funding Guarantee and the Insolvency Guarantee, the proof of claim purports to make a claim, "...in the amount to be determined to be owing to [the Trustee and the PPF] pursuant to the Financial Support Direction Proceedings undertaken pursuant to the provisions of the [U.K. Statute]", which claim is discussed in greater detail below.

42.     NNUK, through the Joint Administrators, has also filed proofs of claim against each of the Applicants in the claims process, which proofs of claim purport to be, "in respect of any heretofore unknown, unliquidated, or unmatured claim or claims..."[4]

43.     In addition, on September 30, 2009, the Trustee served a demand letter on NNL in Canada for payment under the Guarantee.

---

[3] As the proof of claim is well over a 1000 pages long, most of the appendices thereto, being copies of the relevant agreements, correspondence and U.K. statutory provisions (many of which are already attached as Appendices to this Thirty-Seventh Report) are omitted.

[4] The Monitor notes that the Claims Procedure Order designated intercompany claims as "Excluded Claims".

38

## THE WARNING NOTICE

### *Financial Support Directions*

44. The Monitor understands that, pursuant to the U.K. Statute, The Pensions Regulator has a mandate to protect the plan benefits of members of certain U.K. pension plans and to reduce the risk that compensation would be required from the PPF to honour those benefits.

45. In furtherance of that objective, the U.K. Statute gives authority to The Pensions Regulator to issue an FSD pursuant to Section 43 of the U.K. Statute where the employer funding the pension plan is either (a) a service company, or (b) "insufficiently resourced".

46. An FSD, which is preceded by a Warning Notice, is a direction issued by the determinations panel of The Pensions Regulator to secure financial support for a pension plan. An FSD: (i) may only be issued against a person who is either the employer, or is "connected and/or associated with" the employer, regardless of where such entity is situate; (ii) specifies a certain time period during which the financial support is to be put in place, and directs that this support is to continue for as long as the pension plan is in existence; and (iii) may only be issued against a non-employer if the determinations panel of The Pensions Regulator believes it is reasonable to do so.

47. In deciding whether it is reasonable to issue an FSD against a non-employer, the determinations panel considers certain factors it regards as relevant, including: (a) the relationship between the non-employer and the employer, including whether the non-employer controlled the employer; (b) the value of any benefits received directly or indirectly by the non-employer from the employer; (c) any connection or involvement of the non-employer with the pension plan; (d) the financial circumstances of the non-employer; and (e) such other matters as may be prescribed.

48. If the determinations panel decides to issue an FSD, the financial support may take a form reasonable under the circumstances, including any combination of the following: (a) instructing all non-employers who are members of the same corporate group as the

*39*

employer to assume joint and several liability for the whole or part of the employer's pension liabilities; (b) where there is a holding company for the employer's corporate group, instructing the holding company to assume liabilities for the whole or part of the employer's pension liabilities; and/or (c) any other arrangement that meets the statutory requirements and provides financial resources to the employer's pension plan. An arrangement is prescribed for these purposes if the parties consent to the jurisdiction of the courts of England and Wales and enter into a legally enforceable agreement.

49.     In addition to its ability to issue an FSD, The Pensions Regulator may issue a CN when it believes: (i) that the target has not complied with the FSD (such that the pension plan remains not fully supported financially); and (ii) it is reasonable to do so.

50.     The persons to whom a CN is issued are under a liability to pay to the trustee of the pension plan the sum specified in the CN. The CN may be for all or part of the amount by which the pension plan is under-funded. This amount is treated as a debt due to the trustee of the pension plan. While The Pensions Regulator can generally exercise the powers of the trustee of the pension plan to recover such debt during an assessment period (which the NNUK Pension Plan has been in since NNUK entered administration proceedings), only the PPF may exercise the trustee's rights and powers.

51.     In determining whether it is reasonable to issue a CN, The Pensions Regulator must consider both the reasonableness of issuing a CN to a particular person and the reasonableness of the sum specified in the notice. The Pensions Regulator must also have regard for such matters as it considers relevant, including, with respect to a non-employer: (a) whether the non-employer has taken reasonable steps to procure financial support for the pension plan; (b) the relationship the non-employer has or had with the employer, including whether the non-employer controlled the employer; (c) the value of any benefits received directly or indirectly by the non-employer from the employer; (d) the relationship that the non-employer has or had with the parties to any arrangements put in place in accordance with the FSD (including whether the non-employer has or had control of those parties); (e) any connection or involvement which the non-employer has or had with the employer's pension plan; (f) the financial circumstances of the non-employer; and (g) such other matters as may be prescribed.

- 13 -

40

*Service of the Warning Notice*

52.     On September 4, 2009, NNC received a letter from The Pensions Regulator purporting to alert the Applicants to the fact that The Pensions Regulator was considering issuing a warning notice pursuant to sections 96(2) and 43(2) of the U.K. Statute. A copy of this letter is attached hereto as Appendix "H".

53.     On September 16, 2009, NNC sent a letter to The Pensions Regulator indicating that:

> ... there is a stay of proceedings under Canadian law in relation to NNC and certain of its subsidiaries, and by [the Claims Procedure Order], the Canadian Court has ordered that the bar date for submitting claims against NNC (and relevant subsidiaries) is 30 September 2009. All claims against NNC (and relevant subsidiaries) are being dealt with in accordance with the claims procedure for debtors pursuant to [the Claims Procedure Order] and the [CCAA].
>
> As you can therefore appreciate, NNC is not in a position to enter into any correspondence with individual entities in respect of potential claims against NNC.

A copy of this letter is attached hereto as Appendix "I".

54.     On November 11, 2009, The Pensions Regulator wrote to the Joint Administrators. A copy of this letter is attached hereto as Appendix "J". This letter stated in part:

> The Pensions Regulator will shortly be in a position to issue the appropriate warning notice under section 96 of the [U.K. Statute] [...]. As many if not all these Nortel entities are also in some form of insolvency process, we anticipate that the financial support sought will be simply the ability of the pension scheme to prove in the various insolvency estates as a creditor.

55.     On January 13, 2010, NNL and NNC each received a copy of a letter addressed to John Doolittle from The Pensions Regulator purporting to serve NNL and NNC in Canada with the Warning Notice pursuant to Section 303 of the U.K. Statute. Copies of these letters are attached hereto as Appendices "K" and "L".

56.    The Warning Notice is more than 150 pages in length and includes nine binders of supporting documents. The supporting documents include financial documents, spreadsheets and witness statements sworn by former Nortel employees.

57.    The Warning Notice, in paragraph 1, states:

> This is a Warning Notice issued by the [The Pensions Regulator] against the above named target companies which are part of the Nortel Group. It is issued pursuant to sections 96(2) and 43(2) of the [U.K. Statute]. [The Pensions Regulator] believes that it is reasonable, within the meaning of section 43(5) of the [U.K. Statute], to require the companies against whom this Warning Notice is issued to put in place financial support for the [NNUK Pension Plan]. NNUK entered administration on 14 January 2009 with a deficit in its pension scheme of some £2.1 billion. This Warning Notice is also being sent to the [Trustee and the PPF] as Directly Affected Parties.

58.    The Warning Notice purports to require written representations from NNC and NNL by no later than midday on March 1, 2010, failing which the determinations panel of The Pensions Regulator will make its decisions based on the information contained in the Warning Notice.

59.    On February 9, 2010, the Monitor sent a letter to The Pensions Regulator indicating the issuance of the Warning Notice was in direct contravention of the stay of proceedings granted by this Honourable Court pursuant to the Initial Order and that the Monitor would bring the within motion to, amongst other things, enforce the stay. A copy of the Monitor's letter is attached hereto as Appendix "M". In a letter dated February 15, 2010, The Pensions Regulator replied that they were preparing a response to the Monitor's letter and hoped to be able to reply within the next seven days. A copy of The Pensions Regulator's letter is attached as Appendix "N".

*Implications of the Warning Notice*

60.    Section 82 of the U.K. Statute prevents any person from disclosing information that has been obtained by The Pensions Regulator in the exercise of its functions and is not already publicly available ("**Restricted Information**"). The Monitor is of the view that the Warning Notice does not contain Restricted Information as the majority of its contents were either not obtained by The Pensions Regulator from another person, or, in

the case of information which appears to have been obtained from NNUK, are already publicly available. However, without prejudice to this position and out of an abundance of caution, the Monitor has written to the U.K. Administrators seeking their consent to the disclosure to this Honourable Court of any Restricted Information obtained from and/or relating to NNUK. A copy of this letter is attached as Appendix "O" hereto. To date, no response has been received. Accordingly, the Monitor has elected not to file a copy of the Warning Notice with this Honourable Court at this point in time.

61.    The Monitor is able to report that the theory of liability advanced in the Warning Notice is prefaced on The Pensions Regulator's views of, amongst other things:

    (a)    the operation of Nortel's transfer pricing system;

    (b)    the operation of the NNUK Pension Plan;

    (c)    NNUK's ability to resource the pension scheme;

    (d)    the credit given to NNUK for its relative contribution to Nortel's R&D;

    (e)    the credit given to NNUK for its performance of corporate functions; and

    (f)    a 2007 corporate reorganization of the EMEA entities.

62.    The Monitor expects certain of these issues – most notably Nortel's transfer pricing system – will be at the heart of negotiations regarding the allocation of the sale proceeds of the various business divestitures and, failing the consensual resolution of such allocation, the dispute resolution process contemplated by the draft Allocation Protocol. Accordingly, the commencement of proceedings by The Pensions Regulator that would purport to make findings in respect of such matters threatens the sanctity of the allocation process that both this Honourable Court and the U.S. Court have approved, and the Joint Administrators have agreed to.

63.    Moreover, such proceedings are neither necessary nor permissible where this Honourable Court has already established a claims process for resolving claims against the Applicants. Furthermore, the entities with the ultimate economic interest in the

- 16 -

43

proceedings commenced by The Pensions Regulator, being the Trustee and the PPF, have filed claims in the claims process that are, in part, the same claim that the determinations board of The Pensions Regulator would pass judgment on.

64.    In addition, allowing the FSD proceedings to continue in the face of the stay would distract the Applicants' management from the ongoing restructuring efforts as outlined above at paragraph 31. Given the breadth of the allegations contained in the Warning Notice, the Applicants would be required to direct significant resources from a number of different groups to respond to the Warning Notice. The Monitor is of the view that having to direct the Applicants' human resources in this manner would be extremely prejudicial to their ongoing restructuring efforts.

65.    Finally, the Monitor also notes there are significant issues with respect to the merits of The Pensions Regulator's position as outlined in the Warning Notice, as well as whether any order that The Pensions Regulator may decide to make will amount to a recognized claim under the CCAA in any event.

## MONITOR'S RECOMMENDATION

66.    The Monitor is of the view that:

   (a)    the service of the Warning Notice on NNC and NNL; and

   (b)    the commencement of proceedings by The Pensions Regulator,

are violations of the stay granted by this Honourable Court in the Initial Order.

67.    The Monitor is also of the view that the proceedings commenced by The Pensions Regulator seek to circumvent both the claims process established by this Honourable Court as well as the allocation process approved by this Honourable Court, both of which are fundamental to the successful resolution of these CCAA proceedings, and, in the case of the Allocation Protocol, has been agreed to by the relevant parties, including the Joint Administrators, as the means by which the various Nortel worldwide entities will resolve the complex matter of allocating the sale proceeds from the various business divestitures.