277

3.4     Currency

Any amount payable under this Agreement is payable in Sterling.

3.5     No set-off or counterclaim

All payments made by the Guarantor under this Agreement must be made without set-off or counterclaim.

3.6     Business Days

If a payment under this Agreement is due on a day which is not a Business Day, the due date for that payment will instead be the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not).

3.7     No Double Recovery or Greater Recovery

For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor an amount of the Guaranteed Obligation which has been paid by the Company to the Beneficiary, except insofar as payment of the amount concerned by the Company is or is claimed to be, by reason of the operation of any law relating to insolvency, bankruptcy or reorganization, void, voidable, unenforceable, or is otherwise required to be disgorged.

For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor any amount save the Guaranteed Obligation.

4.      REPRESENTATIONS AND UNDERTAKING

4.1     Representations

The representations set out in this Clause are made as of the date hereof by the Guarantor to the Beneficiary.

4.2     Status

The Guarantor is a corporation, duly incorporated and validly existing under the laws of Canada.

4.3     Powers and authority

The Guarantor has the power to enter into and perform, and has taken all necessary action to authorise the entry into and performance of, this Agreement and the transactions contemplated by this Agreement.

4.4     Legal validity

Subject to the Reservations, this Agreement is a legally binding obligation of the Guarantor, enforceable in accordance with its terms.

4.5     Non-conflict

The entry into and performance by the Guarantor of, and the transactions contemplated by, this Agreement do not conflict with:

(a)     any law or regulation applicable to the Guarantor; or

(b)    the Guarantor's constitutional documents; or

(c)    any agreement binding on the Guarantor to the extent that such conflict would result in a Material Adverse Effect.

4.6    **No default**

The Guarantor is not in default under any agreement binding on the Guarantor to an extent or in a manner which would result in a Material Adverse Effect.

4.7    **Pari passu ranking**

The Guarantor's payment obligations under this Agreement rank pari passu in right of payment with all its other present unsecured payment obligations, except for obligations mandatorily preferred by law.

4.8    **Times for making representations**

The representations set out in this Clause are made by the Guarantor on and as of the date of this Agreement.

4.9    **Undertaking**

The Guarantor undertakes with the Beneficiary that it shall not, in any contractual obligations it enters into in the future with its other unsecured creditors, agree to any explicit contractual term that ranks the Guarantor's payment obligations to such unsecured creditors ahead of the Guarantor's payment obligations under this Agreement, except for such obligations that must be mandatorily preferred by law.

5.    **CHANGES TO THE PARTIES**

(a)    The Guarantor may not assign or transfer any of its rights and obligations under this Agreement other than with the prior written consent of the Beneficiary.

(b)    The Beneficiary may not assign or transfer any of their rights and obligations under this Agreement other than with the prior written consent of the Guarantor save that the Beneficiary's rights under this Agreement may be transferred in their entirety, but not in part, to any person or persons who may, from time to time and for the time being, be appointed as trustee or trustees of the Scheme pursuant to any appropriate trust deed, or pursuant to any statutory authority (such person being a "Successor Trustee"). The Beneficiary shall promptly thereafter give written notice to the Guarantor of the appointment of the Successor Trustee such notice to be signed by the Beneficiary and the Successor Trustee. With effect from the date of delivery of such notice, the Successor Trustee shall assume all the Beneficiary's rights and obligations under this Agreement and this Agreement shall be construed as if all references to the Beneficiary were replaced by references to the Successor Trustee. The obligations of the Guarantor under this Agreement shall remain unaltered by such transfer and replacement.

6.    **SEVERABILITY**

If a term of this Agreement is or becomes illegal, invalid or unenforceable in any jurisdiction, that shall not affect:

(a)    the legality, validity or enforceability in that jurisdiction of any other term of this Agreement; or

(b)    the legality, validity or enforceability in other jurisdictions of that or any other term of this Agreement.

## 7. COUNTERPARTS

This Agreement may be executed in any number of counterparts and by the parties to it on separate counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

## 8. NOTICES

### 8.1 In writing

(a)    Any communication in connection with this Agreement must be in writing and, unless otherwise stated, may be given in person, by post or fax.

(b)    Unless it is agreed to the contrary, any consent or agreement required under this Agreement must be given in writing.

### 8.2 Contact details

(a)    The contact details of the Guarantor for this purpose are:

| | |
|---|---|
| Address: | Nortel Networks Limited |
| | MS T0503010 |
| | 195 The West Mall |
| | Toronto, Ontario, M9C 5K1 |
| | Canada |
| Fax number: | +001 (905) 863-2486 |
| Attention: | Treasurer. |

With a copy to:

| | |
|---|---|
| Address: | Nortel Networks Limited |
| | MS T0503005 |
| | 195 The West Mall |
| | Toronto, Ontario M9C 5K1 |
| | Canada |
| Fax number: | +001 (905) 863-7386 |
| Attention: | General Counsel – Corporate |

(b)    The contact details of the Beneficiary are:

| | |
|---|---|
| Address: | Nortel Networks UK Pension Trust Limited |
| | Maidenhead Office Park |
| | Westacott Way |
| | Maidenhead |
| | Berkshire |
| | SL6 3QH |
| Fax number: | +44 (0)1628 432 872 |

E-mail:        louisehha@nortel.com
with a copy to  bruce.richess@btinternet.com
Attention:      Louise Hammond – UK Pensions Manager

8.3    **Effectiveness**

(a)    Except as provided below, any Demand or communication in connection with this Agreement will be deemed to be delivered or given as follows:

(i)    if delivered in person, at the time of delivery;

(ii)   if posted, five days after being deposited in the post, postage prepaid, registered and with return receipt requested, in a correctly addressed envelope; and

(iii)  if by fax, when received in legible form with transmission confirmed by a generated transmission receipt.

(b)    A communication given under paragraph (a) above but received on a non-working day or after business hours in the place of receipt will only be deemed to be given on the next working day in that place.

9.     **TAXES**

9.1    **General**

In this Clause:

Tax means any tax, levy, impost, duty or other charge or withholding of a similar nature (including any related penalty or interest).

Tax Deduction means a deduction or withholding for or on account of Tax from a payment under this Agreement.

9.2    **Tax gross-up**

(a)    If the Guarantor is aware that it must make a Tax Deduction (or that there is a change in the rate or the basis of a Tax Deduction), it must promptly notify the Beneficiary.

(b)    If:

(i)    a Tax Deduction is required by law to be made by the Guarantor or the Beneficiary; and

(ii)   such Tax Deduction would not have been required to be made if the relevant underlying payment was being made by the Company (and not the Guarantor),

then the amount of the payment due from the Guarantor will be increased to an amount which (after making the Tax Deduction) leaves an amount equal to the payment which would have been due if no Tax Deduction had been required.

(c)    If the Guarantor is required to make a Tax Deduction required by law, the Guarantor must make the Tax Deduction and must make any payment required in connection with that Tax Deduction within the time allowed by law.

(d)     Prior to 31 March of the calendar year following either a Tax Deduction or a payment required in connection with a Tax Deduction, the Guarantor must deliver to the Beneficiary evidence satisfactory to the Beneficiary (acting reasonably) that the Tax Deduction has been made or (as applicable) the appropriate payment has been paid to the relevant taxing authority.

9.3     If the Guarantor pays any such additional amount as is referred to in clause 9.2 in respect of any Tax Deduction and the Beneficiary determines that the Scheme has received a credit or refund for any Tax Deduction, the Beneficiary will (to the extent that it can do so without prejudice to the retention of such credit or refund and to the extent that it is not unlawful or contrary to any official regulation or directive for it to do so and provided that no amount due and payable to the Beneficiary under either this Agreement remains unpaid) reimburse the Guarantor with such amount (if any) as the Beneficiary determines will leave the Guarantor (after such reimbursement) in no better or worse position that it would have been in if the Guarantor had not been required to make such Tax Deduction.

10.     **LANGUAGE**

Any notice given in connection with this Agreement must be in English.

11.     **GOVERNING LAW**

This Agreement is governed by English law.

12.     **ENFORCEMENT**

12.1    Jurisdiction

(a)     The courts of England have exclusive jurisdiction to settle any dispute in connection this Agreement (including a dispute regarding the existence, validity or termination of this Agreement).

(b)     The parties agree that the courts of England are the most appropriate and convenient courts to settle any such dispute and accordingly no party will argue to the contrary.

(c)     This Clause is for the benefit of the Beneficiary only. As a result, to the extent permitted by law, a Beneficiary may take:

(i)     proceedings in any other court; and

(ii)    concurrent proceedings in any number of jurisdictions.

12.2    Waiver of immunity

The Guarantor irrevocably and unconditionally:

(a)     agrees not to claim any immunity from proceedings brought by a Beneficiary against it in relation to this Agreement and to ensure that no such claim is made on its behalf;

(b)     consents generally to the giving of any relief or the issue of any process in connection with those proceedings; and

(c)     waives all rights of immunity in respect of it or its assets.

This Agreement has been entered into on the date stated at the beginning of this Agreement.

282

**SCHEDULE 1**

FORM OF DEMAND

To:    Nortel Networks Limited

Guarantee in respect of the Nortel Networks UK Pension Plan dated [●] 2007 (the "Guarantee")

We refer to the Guarantee. Terms defined in the Guarantee shall bear the same meaning in this letter. We certify that an Insolvency Event has occurred.

We demand payment of the sum of £[●] (the "Requested Amount") and confirm that the Requested Amount is equal to or less than the Guaranteed Obligation.

The Requested Amount should be made the following account:

Name: [●]

Bank: [●]

Account number: [●]

Sort Code: [●]

Yours faithfully

For and on behalf of
Nortel Networks UK Pension Trust Limited as trustee of the Nortel Networks UK Pension Plan

283

SIGNATORIES

Guarantor

EXECUTED AS A DEED by:          )
NORTEL NETWORKS LIMITED          )
acting by                        )

By: _____
Name:        Gordon A. Davies
Title:        General Counsel- Corporate
              and Corporate Secretary

and

By: _____
Name:        Tracy S.L. Connolly McAuley
Title:        Assistant Secretary

Beneficiary

EXECUTED as a deed by            )
NORTEL NETWORKS UK               )
PENSION TRUST LIMITED            )
acting by                        )

Director _____
              DW DAVIES

Director/Secretary _____
              C. H. GILCHRIST
              FOR BESTRUSTEES PLC

284

SIGNATORIES

**Guarantor**

EXECUTED AS A DEED by          )
NORTEL NETWORKS LIMITED        )
acting by                      )

By: _____
Name: _____
Title: _____

and

By: _____
Name: _____
Title: _____

**Beneficiary**

EXECUTED as a deed by          )
NORTEL NETWORKS UK             )
PENSION TRUST LIMITED          )
acting by                      )

Director

Director/Secretary

# TAB C

This is Exhibit ........ C ........ referred to in the
affidavit of ....Anna Ventresca....
sworn before me, this ..17....
day of ..February.... 20.10.

........Donna Woollett........
A COMMISSIONER FOR TAKING AFFIDAVITS

DONNA WOOLLETT, Notary Public, Regional Municipality of Peel,
limited to the attestation of instruments and the
taking of affidavits, for Nortel Networks Corporation
and its subsidiaries. Expires January 29, 2011.

285

File No. 09-CL-7950

**ONTARIO**

**SUPERIOR COURT OF JUSTICE- COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | THURSDAY, THE 30TH |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF JULY, 2009 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION (the "Applicants")

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**CLAIMS PROCEDURE ORDER**

THIS MOTION, made by the Applicants for an Order substantially in the form included

in the Applicants' Motion Record was heard this day at 330 University Avenue, Toronto,

Ontario.

ON READING the Applicants' Notice of Motion, the affidavit of John Doolittle sworn

on July 24, 2009, the Sixteenth report of Ernst & Young Inc. (the "Monitor") dated July 24,

2009, and on hearing the submissions of counsel for the Applicants, the Monitor, and those other

parties present, no one appearing for the other parties served with the Applicants' Motion

Record, although duly served as appears from the affidavit of service of Marna McGeorge sworn

July 24, 2009, filed:

DOCSTOR: 1724621\1 1

- 2 -

**SERVICE**

1.    THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion

Record filed by the Applicants in support of this Motion be and it is hereby abridged such

that the Motion is properly returnable today.

**MONITOR'S ROLE**

2.    THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and

obligations under the CCAA (as hereinafter defined) and under the Third Amended and

Restated Initial Order of this Court dated January 14, 2009 (such Order, as further

supplemented, amended or varied from time to time, is referred to herein as the "Initial

Order"), is hereby directed and empowered to take such other actions and fulfill such

other roles as are authorized by this Order, and that in taking such other actions and in

fulfilling such other roles, the Monitor shall have the protections given to it in the Initial

Order and this Order, including without limitation the protections provided in paragraph

21 of this Order.

**DEFINITIONS**

3.    The following terms shall have the following meanings ascribed thereto:

(a)    "Bond" means a bond, note or debenture issued pursuant to any of the Bondholder

Trust Indentures and any bonds, notes or debentures issued in substitution or

replacement thereof;

(b)    "Bondholder" means a registered or beneficial holder of a Bond;

(c)    "Bondholder Trustee" means a trustee in respect of any issue of Bonds, being The

Bank of New York Mellon with respect to the first three Bondholder Trust

287

Indentures identified in paragraph 3(d) below and Law Debenture Trust Company of New York with respect to the fourth of such Bondholder Trust Indentures;

(d)     "Bondholder Trust Indentures" means collectively (i) the Indenture dated as of March 28, 2007 governing the 1.75% Convertible Senior Notes due 2012 and the 2.125% Convertible Senior Notes due 2014 issued by Nortel Networks Corporation and guaranteed by Nortel Networks Limited and Nortel Networks Inc.; (ii) the Indenture dated as of July 5, 2006, as supplemented by the First Supplemental Indenture dated as of July 5, 2006, the Second Supplemental Indenture dated as of May 1, 2007, and the Third Supplemental Indenture dated as of May 28, 2008, governing the Floating Rate Senior Notes due 2011, the 10.125% Senior Notes due 2013 and the 10.750% Senior Notes due 2016 issued by Nortel Networks Limited and guaranteed by Nortel Networks Corporation and Nortel Networks Inc.; (iii) the Indenture dated as of November 30, 1988, governing the 6.875% Notes due 2023 issued by Northern Telecom Limited (now Nortel Networks Limited); and (iv) the Indenture dated as of February 15, 1996, governing the 7.875% Notes due 2026 issued by Northern Telecom Capital Corporation (now Nortel Networks Capital Corporation) and guaranteed by Northern Telecom Limited (now Nortel Networks Limited);

(e)     "Business Day" means a day, other than a Saturday or a Sunday, on which banks are generally open for business in Toronto, Ontario;

(f)     "CCAA" means *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended;

- 4 -

288

(g)     "Chapter 11 Cases" means the proceedings commenced by Nortel Networks Inc. and others in the United States Bankruptcy Court for the District of Delaware, lead case number 09-10138;

(h)     "Charges" means the Charges as defined in the Initial Order, other than the Directors' Charge, as defined in the Initial Order;

(i)     "Claim" means each of:

(i)     any right of any Person against the Applicants, or any of them, in connection with any indebtedness, liability or obligation of any kind of the Applicants, or any of them, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown, by guarantee, surety or otherwise and whether or not such right is executory in nature, including the right or ability of any Person to advance a claim for contribution or indemnity or otherwise with respect to any matter, action, cause or chose in action, whether existing at present or commenced in the future, which indebtedness, liability or obligation (A) is based in whole or in part on facts existing prior to the Filing Date, (B) relates to a time period prior to the Filing Date, or (C) would have been a claim provable in bankruptcy had the Applicants become bankrupt on the Filing Date (each, a "Prefiling Claim", and collectively, the "Prefiling Claims"),

(ii)    any indebtedness, liability or obligation of any kind arising out of the restructuring, termination, repudiation or disclaimer of any lease, contract,

or other agreement or obligation on or after the Filing Date and whether such restructuring, termination, repudiation or disclaimer took place or takes place before or after the date of this Order (each, a "Restructuring Claim", and collectively, the "Restructuring Claims"); and

(iii)    any right of any Person against the Directors or Officers of the Applicants, or any of them, that relates to a Prefiling Claim or a Restructuring Claim for which the Directors or Officers of the Applicants are by law liable to pay in their capacity as Directors or Officers or in any other capacity, including without limitation, any capacity relating to the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries (each, a "Director/Officer Claim", and collectively, the "Directors/Officers Claims"),

provided however, that "Claim" shall not include an Excluded Claim;

(j)    "Claims Bar Date" means the Prefiling Claims Bar Date or the Restructuring Claims Bar Date, as the case may be;

(k)    "Claims Resolution Order" has the meaning ascribed to that term in paragraph 17 of this Order;

(l)    "Compensation Claims" has the meaning ascribed to that term in paragraph 3(t)(iii) of this Order;

(m)    "Court" means the Ontario Superior Court of Justice (Commercial List);

- 6 -

290

(n)    "Creditor" means any Person having a Claim;

(o)    "Creditors' Guide to Completing the Proof of Claim form" means the guide to completing the Proof of Claim form, in substantially the form attached as Schedule "C" hereto;

(p)    "Creditors' Meeting" means the meeting or meetings of Creditors scheduled pursuant to further Order of this Court, or by a Plan if and when filed with this Court;

(q)    "Cross Border Claims Protocol" means a protocol for the resolution of cross-border claims filed in these CCAA proceedings and/or in the Chapter 11 Cases, once approved by the courts presiding in these CCAA proceedings and in the Chapter 11 Cases;

(r)    "Directors" means all current and former directors of the Applicants, and "Director" means any one of them;

(s)    "Directors/Officers Claim" has the meaning ascribed to that term in paragraph 3(i)(iii) of this Order;

(t)    "Excluded Claim" means the following claims, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, unsecured, present, future, known or unknown:

     (i)    claims secured by any of the Charges;

- 7 -

(ii)      inter-company claims, as between any of the Applicants, and as between any of the Applicants and any of the Applicants' direct or indirect subsidiaries or affiliates, other than claims by any Joint Venture;

(iii)      claims of (A) any current or former employee of any of the Applicants, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Applicants, including without limitation claims on account of wages, salaries, any other form of compensation (whether sales-based, incentive-based, deferred, retention-based, share-based, or otherwise), severance or termination pay, employee benefits (including, but not limited to, medical and similar benefits, disability benefits, relocation or mobility benefits, and benefits under employee assistance programs), pension and retirement benefits, vacation pay, and employee expenses, (B) any current or former employee of any of the Applicants arising from the administration, management or oversight of any of the pension plans or employee benefit plans administered or sponsored by the Applicants or their subsidiaries, and (C) any Director for compensation for acting as a Director, including without limitation fees, deferred share-based compensation, benefits and Director expenses (collectively, including employee and Director claims of the above nature, "Compensation Claims");

(iv)      grievances under any collective agreements to which the Applicants, or any of them, are a party; and

292

- 8 -

(v)     claims of any Director or Officer for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant;

(u)     "Filing Date" means January 14, 2009, the date of the Initial Order;

(v)     "Initial Order" has the meaning ascribed to that term in paragraph 2 of this Order;

(w)     "Joint Venture" means each of Nortel Networks Netas Telekomunikasyon A.S., L-G Nortel Co. Ltd., Senyang Nortel Telecommunications Co. Ltd., Guangdong-Nortel Telecommunications Equipment Company Ltd., and Nortel Networks Communications Engineering Ltd.;

(x)     "Known Creditors" means:

(i)     those Creditors which, to the knowledge of the Applicants and the Monitor, were owed monies by any Applicant as of the Filing Date and which monies remain unpaid in whole or in part;

(ii)     any Person who commenced a legal proceeding against the Applicants, or any of them, which legal proceeding was commenced and served upon an Applicant prior to the Filing Date, and which legal proceeding is known to the Monitor;

(iii)     any Person who is party to a lease, contract, or other agreement or obligation of any Applicant which was (to the knowledge of the Applicants and the Monitor) restructured, terminated, repudiated or disclaimed by such Applicant between the Filing Date and the date of this Order; and

DOCSTOR: 1724621\11

- 9 -

293

(iv)  any other Creditor actually known to the Applicants and the Monitor as of the date of this Order;

(y)  "Monitor" means Ernst & Young Inc. in its capacity as monitor pursuant to the Initial Order;

(z)  "Notice to Creditors" means the notice to Creditors for publication in substantially the form attached as Schedule "A" hereto;

(aa)  "Officers" means all current and former officers of the Applicants, and "Officer" means any one of them;

(bb)  "Person" includes any individual, partnership, joint venture, trust, corporation, unlimited liability company, unincorporated organization, government body or agency or instrumentality thereof, or any other juridical entity howsoever designated or constituted;

(cc)  "Plan" means any plan of compromise and arrangement by one or more of the Applicants, if and when filed and approved by this Court, as revised, amended, modified or supplemented from time to time in accordance with its terms;

(dd)  "Prefiling Claim" has the meaning ascribed to that term in paragraph 3(i)(i) of this Order;

(ee)  "Prefiling Claims Bar Date" means 4:00 p.m. (prevailing Eastern Time) on September 30, 2009;

(ff)  "Proof of Claim" means the form of Proof of Claim in substantially the form attached as Schedule "B" hereto;

- 10 -

294

(gg)   "Proof of Claim Document Package" means a document package that includes a copy of the Notice to Creditors, the Creditors' Guide to Completing the Proof of Claim form, a Proof of Claim, and such other materials as the Monitor may consider appropriate or desirable;

(hh)   "Proven Claim" means a Claim as finally determined, including for the purposes of voting and distribution under the Plan;

(ii)   "Restructuring Claim" has the meaning ascribed to that term in paragraph 3(i)(ii) of this Order; and

(jj)   "Restructuring Claims Bar Date" means, in respect of each Restructuring Claim and each Person having a Restructuring Claim, 4:00 p.m. (prevailing Eastern Time) on the later of (i) September 30, 2009, and (ii) the date that is 30 days after the date on which the Monitor sends a Proof of Claim Document Package to the Person with respect to a Restructuring Claim that arose or that may have arisen by virtue of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation on or after the Filing Date.

**NOTICE TO CREDITORS**

4.    THIS COURT ORDERS that:

(a)   the Monitor shall no later than five (5) days following the making of this Order, post a copy of the Proof of Claim Document Package on its website at "www.ey.com/ca/nortel";

295

(b)     the Monitor shall no later than five (5) days following the making of this Order, send on behalf of the Applicants to each Bondholder Trustee a copy of the Proof of Claim Document Package;

(c)     the Monitor shall no later than ten (10) days following the making of this Order, send on behalf of the Applicants to each of the Known Creditors (for which it has an address) a copy of the Proof of Claim Document Package, provided however that the Monitor is not required to send Proof of Claim Document Packages to Bondholders or to the current or former employees of any Applicant;

(d)     the Monitor shall cause to be published, on or before August 15, 2009, the Notice to Creditors in *The Globe and Mail* (National Edition) and *The Wall Street Journal* (national and global editions);

(e)     with respect to Restructuring Claims arising from the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation, the Monitor shall send to the counterparty(ies) to such lease, contract, or other agreement or obligation a Proof of Claim Document Package no later than ten (10) days following the time that the Monitor becomes aware of the restructuring, termination, repudiation or disclaimer of any such lease, contract, or other agreement or obligation; and

(f)     the Monitor shall, provided such request is received by the Monitor prior to the applicable Claims Bar Date, deliver as soon as reasonably possible following receipt of a request therefor a copy of the Proof of Claim Document Package to any Person claiming to be a Creditor and requesting such material.

- 12 -

296

5. THIS COURT ORDERS that neither the Applicants nor the Monitor are under any obligation to give notice to or deal with any Person other than the Creditor holding a Claim, and without limitation shall have no obligation to give notice to or deal with any Person having a security interest in the Claim (including the holder of a security interest created by way of a pledge or a security interest created by way of an assignment of the Claim), and such Persons shall be bound by any notices given to the Creditor and any steps taken in respect of such Claim in accordance with this Order.

6. THIS COURT ORDERS that a separate process shall be established by further Order of this Court, to deal with Compensation Claims, and that this Order shall be without prejudice to any matter relating to any Compensation Claims now existing or arising in the future, and without prejudice to any claims that now exist or that may in the future exist against the Ontario Pension Benefits Guarantee Fund.

**CLAIMS BAR DATES**

7. THIS COURT ORDERS that Proofs of Claim with respect to (i) a Prefiling Claim, shall be filed with the Monitor on or before the Prefiling Claims Bar Date, (ii) a Restructuring Claim, shall be filed with the Monitor on or before the Restructuring Claims Bar Date, and (iii) a Directors/Officers Claim, shall be filed on or before the Prefiling Claims Bar Date, except to the extent that the Directors/Officers Claim relates to a Restructuring Claim, in which case such Directors/Officers Claim shall be filed with the Monitor on or before the applicable Restructuring Claims Bar Date.

8. THIS COURT ORDERS that any Creditor that does not file a Proof of Claim as provided for herein such that such Proof of Claim is received by the Monitor on or before the applicable Claims Bar Date (a) shall be and is hereby forever barred from making or

- 13 -

*297*

enforcing any Claim against the Applicants, or any of them, or the Directors or Officers, or any of them; (b) shall not be entitled to vote at the Creditors' Meeting in respect of the Plan or to receive any distribution thereunder; and (c) shall not be entitled to any further notice in, and shall not be entitled to participate as a creditor in, these proceedings.

## PROOFS OF CLAIM

9.     THIS COURT ORDERS that each Creditor shall file a separate Proof of Claim for each Applicant against whom it asserts a Claim and, if the Claim is also being asserted against the Directors or Officers of that Applicant, such Claim against those Directors or Officers shall be included in the same Proof of Claim.

10.    THIS COURT ORDERS that each Creditor shall include any and all Claims it asserts against an Applicant in a single Proof of Claim, provided however that where a Creditor has taken an assignment or transfer of a Claim after the Filing Date, that Creditor shall file a separate Proof of Claim for each such assigned or transferred Claim.

11.    THIS COURT ORDERS that where a Claim against any Applicant is based on that Applicant's guarantee of the repayment of a debt of another Applicant or the debt of any other Person, the Proof of Claim in respect of such Claim shall clearly state that it is based on such a guarantee, and that where any Applicant has guaranteed the repayment of the debt of any other Applicant, a Proof of Claim in respect of that debt shall be filed against each such Applicant.

12.    THIS COURT ORDERS that if any Claim arose in a currency other than Canadian dollars, then the Creditor making the Claim shall complete its Proof of Claim indicating the amount of the Claim in such currency, rather than in Canadian dollars or any other

- 14 -

298

currency.  The Monitor shall subsequently calculate the amount of such Claim in Canadian dollars, using the Reuters closing rate on January 13, 2009, without prejudice to the ability of the Applicants to utilize a different exchange rate in any Plan.

13.    THIS COURT ORDERS that each Bondholder Trustee is authorized and directed to file one or more Proofs of Claim on or before the Prefiling Claims Bar Date in respect of all of the Bonds for which such Bondholder Trustee acts, indicating the amount owing on an aggregate basis for each separate series of Bonds issued under each Bondholder Trust Indenture.  Notwithstanding any other provisions of this Order, Bondholders are not required to file individual Proofs of Claim in respect of Claims relating solely to the debt evidenced by their Bonds.  The Applicants and the Monitor may disregard any Proof of Claim filed by any individual Bondholder claiming the debt evidenced by the Bonds, or any of them, and such Proofs of Claims shall be ineffective for all purposes.  The process for determining each individual Bondholder's Claim for voting purposes with respect to the Plan will be established by further order of the Court.

14.    THIS COURT ORDERS that the Monitor may, where it is satisfied that a Claim has been adequately filed, waive strict compliance with the requirements of this Order as to completion and execution of Proofs of Claim.

**REVIEW OF PROOFS OF CLAIM**

15.    THIS COURT ORDERS that the Monitor, in consultation with the Applicants, shall review all Proofs of Claims that are filed on or before the applicable Claims Bar Date.  At any time, the Monitor or the Applicants may request additional information from a Creditor with respect to a Claim, and the Monitor may request that the Creditor file a revised Proof of Claim.

- 15 -

*299*

16.     THIS COURT ORDERS that a Claim shall not be a Proven Claim unless and until the

Claim has been allowed or otherwise finally determined in accordance with the claims

dispute and resolution procedures to be set out in the Claims Resolution Order and the

Cross Border Claims Protocol.

## DETERMINATION OF PROVEN CLAIM

17.     THIS COURT ORDERS that the Proven Claim of a Creditor shall be as allowed or as

finally determined in accordance with the other forms and claim procedures to be

authorized by further Order of this Court (the "Claims Resolution Order") and in the

Cross Border Claims Protocol, provided however that no Claim may be allowed or may

be established as a Proven Claim unless a Proof of Claim with respect to that Claim is

filed in accordance with this Order, on or prior to the applicable Claims Bar Date.

## NOTICE OF TRANSFEREES

18.     THIS COURT ORDERS that neither the Applicants nor the Monitor shall be obligated to

give notice to or to otherwise deal with a transferee or assignee of a Claim as the Creditor

in respect thereof unless and until (i) actual written notice of transfer or assignment,

together with satisfactory evidence of such transfer or assignment, shall have been

received by the Monitor, and (ii) the Monitor shall have acknowledged in writing such

transfer or assignment, and thereafter such transferee or assignee shall for the purposes

hereof constitute the "Creditor" in respect of such Claim. Any such transferee or assignee

of a Claim, and such Claim, shall be bound by any notices given or steps taken in respect

of such Claim in accordance with this Order prior to the written acknowledgement by the

Monitor of such transfer or assignment.

- 16 -

300

19.     THIS COURT ORDERS that if the holder of a Claim has transferred or assigned the whole of such Claim to more than one Person or part of such Claim to another Person or Persons, such transfer or assignment shall not create a separate Claim or Claims and such Claim shall continue to constitute and be dealt with as a single Claim notwithstanding such transfer or assignment, and the Applicants and the Monitor shall in each such case not be bound to acknowledge or recognize any such transfer or assignment and shall be entitled to give notices to and to otherwise deal with such Claim only as a whole and then only to and with the Person last holding such Claim in whole as the Creditor in respect of such Claim.    Provided that a transfer or assignment of the Claim has taken place in accordance with paragraph 18 of this Order and the Monitor has acknowledged in writing such transfer or assignment, the Person last holding such Claim in whole as the Creditor in respect of such Claim may by notice in writing to the Monitor direct that subsequent dealings in respect of such Claim, but only as a whole, shall be with a specified Person and, in such event, such Creditor, such transferee or assignee of the Claim and the whole of such Claim shall be bound by any notices given or steps taken in respect of such Claim by or with respect to such Person in accordance with this Order.

20.     THIS COURT ORDERS that the transferee or assignee of any Claim (i) shall take the Claim subject to the rights and obligations of the transferor/assignor of the Claim, and subject to the rights of any Applicant against any such transferor or assignor, including any rights of set-off which any Applicant had against such transferor or assignor, and (ii) cannot use any transferred or assigned Claim to reduce any amount owing by the transferee or assignee to any Applicant, whether by way of set off, application, merger, consolidation or otherwise.

301

- 17 -

**PROTECTIONS FOR MONITOR**

21.    THIS COURT ORDERS that (i) in carrying out the terms of this Order, the Monitor shall

have all of the protections given to it by the CCAA and the Initial Order or as an officer

of this Court, including the stay of proceedings in its favour, (ii) the Monitor shall incur

no liability or obligation as a result of the carrying out of the provisions of this Order, (iii)

the Monitor shall be entitled to rely on the books and records of the Applicants, and any

information provided by the Applicants, all without independent investigation, and (iv)

the Monitor shall not be liable for any claims or damages resulting from any errors or

omissions in such books, records or information.

**DIRECTIONS**

22.    THIS COURT ORDERS that any Applicant or the Monitor may, at any time, and with

such notice as this Court may require, seek directions from the Court with respect to this

Order and the Claims process set out herein, including the forms attached as Schedules

hereto.

**SERVICE AND NOTICE**

23.    THIS COURT ORDERS that the Monitor or the Applicants, as the case may be, are at

liberty to deliver the Proof of Claim Document Package, and any letters, notices or other

documents to Creditors or other interested Persons, by forwarding true copies thereof by

prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to

such Persons at the address as last shown on the records of the Applicants and that any

such service or notice by courier, personal delivery or electronic or digital transmission

shall be deemed to be received on the next Business Day following the date of

- 18 -

302

forwarding thereof, or if sent by prepaid ordinary mail, on the fourth Business Day after mailing.

24.    THIS COURT ORDERS that any notice or other communication (including, without limitation, Proofs of Claim) to be given under this Order by a Creditor to the Monitor shall be in writing in substantially the form, if any, provided for in this Order and will be sufficiently given only if given by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission addressed to:

> ERNST & YOUNG INC.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
>
> Attention:     Nortel Claims
> Telephone:    1-416-943-4439 or 1-866-942-7177
> E-mail           nortel.monitor@ca.ey.com
> Fax:              1-416-943-2808

Any such notice or other communication by a Creditor shall be deemed received only upon actual receipt thereof during normal business hours on a Business Day.

## MISCELLANEOUS

25.    THIS COURT ORDERS AND REQUESTS the aid and recognition of any court of any judicial, regulatory or administrative body in any province or territory of Canada (including the assistance of any court in Canada pursuant to Section 17 of the CCAA) and any court or any judicial, regulatory or administrative body of the United States of America, the United Kingdom, the French Republic, the State of Israel, and the Republic

303

- 19 -

of Korea, and of any other nation or state, to act in aid of and to be complementary to this

Court in carrying out the terms of this Order.

_____

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUL 3 0 2009

PER / PAR:

*304*

SCHEDULE "A"

## NOTICE TO CREDITORS
### of NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION
(hereinafter referred to as the "Debtors")

RE:    **NOTICE OF CLAIMS PROCEDURE FOR THE DEBTORS PURSUANT TO THE** *COMPANIES' CREDITORS ARRANGEMENT ACT* (the "CCAA")

**PLEASE TAKE NOTICE** that this notice is being published pursuant to an Order of the Superior Court of Justice of Ontario made July 30, 2009 (the "Order"). Pursuant to the Order, Proof of Claim packages will be sent to creditors by mail, on or before August 15, 2009, if those creditors are known to the Debtors, and if the Debtors have a current address. Creditors may also obtain the Order and a Proof of Claim package from the website of Ernst & Young Inc., Court-appointed monitor of the Debtors, at "www.ey.com/ca/nortel", or by contacting the Monitor by telephone (1-416-943-4439 or 1-866-942-7177) or by fax (1-416-943-2808).

Proofs of Claim must be submitted to the Monitor for any claim against any Debtor, whether unliquidated, contingent or otherwise, or a claim against any current or former officer or director of the Debtors, or any of them, in each case where the claim (i) arose prior to January 14, 2009, or (ii) arose on or after January 14, 2009 as a result of the restructuring, termination, repudiation or disclaimer of any lease, contract, or other agreement or obligation. Please consult the Proof of Claim package for more details.

**Completed Proofs of Claim must be received by the Monitor by 4:00 p.m. (prevailing Eastern Time) on the applicable Claims Bar Date, as set out in the Order. The Claims Bar Date for most claims is SEPTEMBER 30, 2009. It is your responsibility to ensure that the Monitor receives your Proof of Claim by the applicable Claims Bar Date.**

**Certain Creditors are exempted from the requirement to file a Proof of Claim. Among those creditors who do not need to file a Proof of Claim are (i) current or former employees of the Debtors, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Debtors, and (ii) individual bondholders in respect of Claims relating solely to the debt evidenced by their bonds. Please consult the Claims Procedure Order made on July 30, 2009 for details with respect to these and other exemptions.**

**PLEASE NOTE that these procedures apply ONLY to claims filed against the Debtors in the CCAA proceedings. Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate proceedings and deadlines have been or will be established in those cases for the filing of claims. With respect to the U.S. proceedings, a general bar date of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) has been established by the U.S. Court. If you believe you have claims against the U.S. Debtors, any such claims must be filed in, and only in, the U.S.**

- 2 -

305

proceedings with the U.S. Debtors' claims agent.  A list of the U.S. Debtors and procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link: www.chapter11.epiqsystems.com/nortel.

**CLAIMS WHICH ARE NOT RECEIVED BY THE APPLICABLE CLAIMS BAR DATE WILL BE BARRED AND EXTINGUISHED FOREVER.**

**DATED** at Toronto this ● day of ●, 2009.

306

# SCHEDULE "B"

### (form of Proof of Claim attached)

307

**CANADIAN CCAA Proof of Claim      re Nortel Networks Corporation and others**

**❶   Name of Debtor (the "Debtor")**
Debtor:

**❷   Original Creditor Identification (the "Creditor")**

| Legal Name of Creditor | | | Name of Contact |
|---|---|---|---|
| Address | | | Phone # |
| | | | Fax # |
| City | Prov / State | Postal/Zip code | e-mail |

**❸   Assignee, if claim has been assigned**

| Full Legal Name of Assignee | | | Name of Contact |
|---|---|---|---|
| Address | | | Phone # |
| | | | Fax # |
| City | Prov / State | Postal/Zip code | e-mail |

**❹   Amount of Claim**

The Debtor / Officer(s) / Director(s) was/were and still is/are indebted to the Creditor as follows:

| | Claims will be recorded as "Unsecured" unless the "Secured" box is checked | | (Check only if applicable) | | If you are making a claim against an Officer or Director check the box below, and list the Officer(s) and Director(s) against whom you assert your claim |
|---|---|---|---|---|---|
| Currency | Original Currency Amount | Secured | S. 136 Priority | Restructuring | |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |

**❺   Documentation**

Provide all particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor which has guaranteed the Claim, and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the affected Debtor to the Creditor and estimated value of such security, particulars of any restructuring claim.

**❻   Certification**

I hereby certify that:
- I am the Creditor, or authorized Representative of the Creditor.
- I have knowledge of all the circumstances connected with this Claim.
- The Creditor asserts this claim against the Debtor; and the Officer(s) and Director(s) as indicated above.
- Complete documentation in support of this claim is attached.

This space reserved for use by the Monitor

| Signature | Name |
|---|---|
| | Title |
| Dated at | Signed at |

**❼   Filing of Claim**

**This Proof of Claim must be received by the Monitor by no later than 4:00 p.m. (prevailing Eastern Time) on SEPTEMBER 30, 2009, by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission at the following address:**

Ernst & Young Inc.
222 Bay St., P.O. Box 251
Toronto-Dominion Centre
Toronto, ON  M5K 1J7
CANADA
Attention: Nortel Claims

Fax: 416-943-2808
Tel: 1-866-942-7177 or 416-943-4439
e-mail: nortel.monitor@ca.ey.com

An electronically fillable version of this form is available at www.ey.com/ca/nortel

## SCHEDULE "C"

### GUIDE TO COMPLETING THE PROOF OF CLAIM FORM

This Guide has been prepared to assist Creditors in filling out the Proof of Claim form with respect to the Debtors listed in Section 1, below. If you have any additional questions regarding completion of the Proof of Claim form, please consult the Monitor's website at www.ey.com/ca/nortel or contact the Monitor, whose contact information is shown below.

Additional copies of the Proof of Claim form may be found at the Monitor's website address noted above.

Please note that this is a guide only, and that in the event of any inconsistency between the terms of this guide and the terms of the Claims Procedure Order made on July 30, 2009, the terms of the Claims Procedure Order will govern.

**Section 1 – Name of Debtor:**
- A separate Proof of Claim form must be filed for each Debtor against whom a claim is being asserted.
- The following is a list of Debtor companies against whom a claim may be asserted in this claims process:
  - Nortel Networks Corporation
  - Nortel Networks Limited
  - Nortel Networks Global Corporation
  - Nortel Networks International Corporation
  - Nortel Networks Technology Corporation.
- Please note that these procedures apply ONLY to claims filed against the five Debtor companies listed above. Several of the Debtors' affiliates are subject to creditor protection proceedings in other jurisdictions, including in the United States. Separate proceedings and deadlines have been or will be established in those cases for the filing of claims. With respect to the U.S. proceedings, a general bar date of September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) has been established by the U.S. Court. If you believe you have claims against the U.S. Debtors,[1] any such claims must be filed in, and only in, the U.S. proceedings with the U.S. Debtors' claims agent. Procedures for filing such claims in the U.S. Proceedings can be found by going to the following internet link: www.chapter11.epiqsystems.com/nortel.

---

[1] The U.S. Debtors are: Nortel Networks Inc.; Nortel Networks Capital Corporation; Nortel Altsystems Inc.; Nortel Altsystems International Inc.; Xros Inc.; Sonoma Systems; Qtera Corporation; CoreTek, Inc.; Nortel Networks Applications Management Solutions Inc.; Nortel Networks Optical Components Inc.; Nortel Networks HPOCS Inc.; Nortel Networks (CALA) Inc.; Architel Systems (U.S.) Corporation; Nortel Networks International Inc.; Northern Telecom International Inc.; and Nortel Networks Cable Solutions Inc.

## Section 2 – Original Creditor

- A separate Proof of Claim form must be filed by each legal entity or person asserting a claim against a Debtor listed in Section 1.
- The Creditor shall include any and all Claims it asserts against a single Debtor in a single Proof of Claim[2].
- The full legal name of the Creditor must be provided.
- If the Creditor operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the Claim has been assigned or transferred to another party, Section 3 must also be completed.
- Unless the Claim is assigned or transferred, all future correspondence, notices, etc. regarding the Claim will be directed to the address and contact indicated in this section.
- Certain Creditors are exempted from the requirement to file a Proof of Claim. Among those creditors who do not need to file a Proof of Claim are (i) current or former employees of the Debtors, for amounts owing to him or her in his or her capacity as a current or former employee of any of the Debtors, and (ii) individual bondholders in respect of Claims relating solely to the debt evidenced by their bonds. Please consult the Claims Procedure Order made on July 30, 2009 for details with respect to these and other exemptions.

## Section 3 – Assignee

- If the Creditor has assigned or otherwise transferred its Claim, then Section 3 must be completed.
- The full legal name of the Assignee must be provided.
- If the Assignee operates under a different name, or names, please indicate this in a separate schedule in the supporting documentation.
- If the Monitor is satisfied that an assignment or transfer has occurred, all future correspondence, notices, etc. regarding the Claim will be directed to the Assignee at the address and contact indicated in this section.

## Section 4 – Amount of Claim of Creditor against Debtor

- Indicate the amount the Debtor / Officer(s) or Director(s) was, and still is indebted to the Creditor

*Currency, Original Currency Amount*

- The amount of the Claim must be provided in the currency in which it arose.
- Indicate the appropriate currency in the Currency column.
- If the Claim is denominated in multiple currencies, use a separate line to indicate the Claim amount in each such currency. If there are insufficient lines to record these amounts, attach a separate schedule indicating the required information.

---

[2] Paragraph 10 of the Claims Procedure Order made on [DATE] provides that: "THIS COURT ORDERS that each Creditor shall include any and all Claims it asserts against an Applicant in a single Proof of Claim, provided however that where a Creditor has taken an assignment or transfer of a Claim after the Filing Date, that Creditor shall file a separate Proof of Claim for each such assigned or transferred Claim."

- 4 -

310

- Claims denominated in a currency other than Canadian dollars will be converted into Canadian dollars by the Monitor using the exchange rates set out in Appendix A.

*Secured*
- Check the Secured box ONLY if the Claim recorded on that line is secured. Do not check this box if your Claim is unsecured
- If the value of the collateral securing your Claim is less than the amount of your Claim, enter the shortfall portion on a separate line as an unsecured claim
- Evidence supporting the security you hold must be submitted with the Proof of Claim form. Provide full particulars of the nature of the security, including the date on which the security was given and the value you attribute to the collateral securing your Claim. Attach a copy of all related security documents.

*S. 136 Priority*
- Check this box ONLY if the amount of your Claim has a right to priority pursuant to Section 136 of the Bankruptcy and Insolvency Act (Canada) (the "BIA") or would be entitled to claim such a priority if this Proof of Claim were being filed in accordance the provisions of the BIA.
- If a priority claim is being asserted, please provide details as to the nature of the claim being asserted, and the basis for priority on which you rely.

*Restructuring*
- Check this box ONLY if the amount of the Claim against the Debtor arose out of the restructuring, termination, repudiation or disclaimer of a lease, contract, or other agreement or obligation on or after January 14, 2009.

*Officers and Directors*
- Check this box only if the Claim you are making is also being asserted against a current or former officer or director of the Debtor.
- You must identify the individual officer(s) or director(s) against whom you are asserting the Claim.

**Section 5 – Documentation**
- Attach to the claim form all particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor which has guaranteed the Claim[3], and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the debtor or any officer or director to the Creditor and estimated value of such security, and particulars of any restructuring claim.

**Section 6 – Certification**
- The person signing the Proof of Claim form should

---

[3] If the guarantor is another of the Debtors listed in Section 1, or one of the U.S. Debtors, a Proof of Claim against that Debtor or U.S. Debtor, as the case may be, must also be filed in these Canadian Proceedings or (in the case of U.S. Debtors) in the U.S. proceedings.

- 5 -

- o  Be the Creditor, or authorized Representative of the Creditor.
- o  Have knowledge of all the circumstances connected with this Claim.
- • By signing and submitting the Proof of Claim, the Creditor is asserting the claim against the Debtor and / or the indicated officer(s) or director(s)

## Section 7 – Filing of Claim

- • This Proof of Claim **must be received** by the Monitor by no later than 4:00 p.m. (prevailing Eastern Time) on SEPTEMBER 30, 2009. Proofs of Claim should be send by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission to the following address:

> Ernst & Young Inc.
> Court-appointed Monitor of Nortel Networks Corporation & others
> 222 Bay Street, Suite 1600
> Toronto, Ontario
> Canada M5K 1J7
> Attention:    Nortel Claims
>
> Telephone:   1-866.942-7177  or  416-943-4439
> E-mail:        Nortel.monitor@ca.ey.com
> Fax:            416-943-2808

**Failure to file your Proof of Claim so that it is received by the Monitor by 4:00 p.m., on the Claims Bar Date of September 30, 2009 will result in your claim being barred and you will be prevented from making or enforcing a Claim against the Debtor or any current or former officer or director of any of the Debtors. In addition, you shall not be entitled to further notice in and shall not be entitled to participate as a creditor in these proceedings.**

- 6 -

312

## Appendix A

Currency conversion factors
Source: Reuters, January 14, 2009

This Appendix is for
information only.  You are
to make your claim in the
currency in which it arose.
The Monitor will calculate
all currency conversions.

| | | CAD per unit of Currency |
|---|---|---|
| CAD | Canadian Dollar | 1 |
| USD | United States Dollar | 1.22025 |
| EUR | Euro | 1.6170753 |
| GBP | United Kingdom: Pnd Ster | 1.77741615 |
| JPY | Japan: Yen | 0.01362647 |

| | | |
|---|---|---|
| AED | United Arab Emir.: Dirham | 0.33221709 |
| ARS | Argentine Peso | 0.35410621 |
| AUD | Australian Dollar | 0.82275356 |
| BBD | Barbados Dollar | 0.61319095 |
| BDT | Bangladeshi Taka | 0.01772331 |
| BGN | Bulgaria: New Lev | 0.82683968 |
| BOB | Bolivian Boliviano | 0.17345416 |
| BRL | Brazilian Real | 0.52726527 |
| CHF | Swiss Franc | 1.09468915 |
| CLP | Chilean Peso | 0.0019827 |
| CNY | China: Yuan Renminbi | 0.17854268 |
| COP | Colombian Peso | 0.00054867 |
| CRC | Costa Rican Colon | 0.00219273 |
| CZK | Czech Koruna | 0.06004872 |
| DKK | Danish Krone | 0.21701242 |
| DOP | Dominican Peso | 0.03444601 |
| DZD | Algerian Dinar | 0.01682672 |
| EEK | Estonian Kroon | 0.10334226 |
| EGP | Egyptian Pound | 0.22086973 |
| FJD | Fiji Dollar | 0.67418812 |
| GTQ | Guatemala: Quetzal | 0.15495238 |
| HKD | Hong Kong Dollar | 0.15732068 |
| HUF | Hungary: Forint | 0.00583154 |
| IDR | Indonesia: Rupiah | 0.00010993 |
| ILS | Israel: Shekel | 0.31449742 |
| INR | Indian Rupee | 0.02499872 |
| ISK | Iceland Krona | 0.00966994 |
| JMD | Jamaican Dollar | 0.01515838 |
| JOD | Jordanian Dinar | 1.72084329 |
| KPW | North Korean Won | 0.00853023 |
| KRW | Republic Of Korea: Won | 0.00090543 |
| KWD | Kuwaiti Dinar | 4.28157891 |
| LBP | Lebanese Pound | 0.00080945 |
| LKR | Sri Lanka Rupee | 0.01072276 |

| | | |
|---|---|---|
| LTL | Lithuanian Litas | 0.46830925 |
| LVL | Latvian Lats | 2.29456567 |
| MAD | Moroccan Dirham | 0.14500201 |
| MXN | Mexican Peso | 0.08842392 |
| MYR | Malaysian Ringgit | 0.34156754 |
| NGN | Nigerian Naira | 0.00816494 |
| NOK | Norwegian Krone | 0.17167276 |
| NZD | New Zealand Dollar | 0.6711375 |
| OMR | Oman: Rial Omani | 3.16980987 |
| PAB | Panama: Balb0A | 1.22025 |
| PEN | Peru: Nuevo Sol | 0.3889243 |
| PGK | Papua New Guinea Kina | 0.4671117 |
| PHP | Philippine Peso | 0.02592415 |
| PKR | Pakistan Rupee | 0.015414 |
| PLN | Poland: Zloty | 0.39077386 |
| PYG | Paraguay: Guarani | 0.0002498 |
| QAR | Qatar: Qatari Rial | 0.33516446 |
| RON | New Romania Leu | 0.37703348 |
| RUB | Russian Ruble | 0.03847246 |
| SAR | Saudi Arabia: Saudi Riyal | 0.32539566 |
| SEK | Swedish Krona | 0.14788041 |
| SGD | Singapore Dollar | 0.82052921 |
| THB | Thailand: Baht | 0.03495417 |
| TND | Tunisian Dinar | 0.89144172 |
| TRY | New Turkish Lira | 0.76914592 |
| TTD | Trinidad & Tobago Dollar | 0.19524 |
| UAH | Ukraine: Hryvnia | 0.13945714 |
| UYU | Uruguay: Peso | 0.05016444 |
| VEF | Bolivar Fuerte | 0.56827178 |
| VND | Vietnam: Dong | 0.00006981 |
| XCD | East Caribbean Dollar | 0.4587406 |
| ZAR | South Africa: Rand | 0.12249969 |
| ZMK | Zambia: Kwacha | 0.00024601 |

Court File No: 09-CL-7950

313

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

## CLAIMS PROCEDURE ORDER

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jenifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

**TAB D**

DOCSTOR: 1680120\1

**Canadian CCAA Proof of Claim    re Nortel Networks Corporation and others**    *1853*    Page 1 of 2

**1 Name of Debtor (the "Debtor")**
Debtor: Nortel Networks Corporation

**2 Original Creditor Identification (the "Creditor")**

| | |
|---|---|
| Legal Name of Creditor<br>Nortel Networks UK Pension Trust Limited ("Trustee") and<br>U.K. Pension Protection Fund ("PPF"). | Name of Contact<br>Trustee: David Davies |
| Address<br>Trustee: Maidenhead Office Park, Westacott Way Littlewick Green<br><br>Continued on Page 2 | Phone # (44) 7808 296 794<br><br>Fax # (07) 917 677 221<br><br>Continued on Page 2 |

| City<br>Maidenhead | Prov/State<br>Berkshire. | Postal/Zip code<br>SL6 3QH. | Country<br>England | e-mail dwdavies826@btinternet.com<br>cc: bleonard@casselsbrock.com" |

**3 Assignee, if claim has been assigned**

| | |
|---|---|
| Full Legal Name of Assignee | Name of Contact |
| Address | Phone # |
| | Fax # |
| City | Prov/State | Postal/Zip code | e-mail |

**4 Amount of Claim**
The Debtor/Officer(s)/Director(s) was/were and still is/are indebted to the Creditor as follows:

| Claims will be recorded as "Unsecured" unless the "Secured" box is checked | | | (Check only if applicable) | | If you are making a claim against an Officer or Director check the box below, and list the Officer(s) and Director(s) against whom you assert your claim |
|---|---|---|---|---|---|
| Currency | Original Currency Amount | Secured | S. 136 Priority | Restructuring | |
| £ | | ☐ | ☐ | ☐ | ☐ |
| £ | | ☐ | ☐ | ☐ | ☐ |
| £ | | ☐ | ☐ | ☐ | ☐ |
| | | ☐ | ☐ | ☐ | ☐ |

**5 Documentation**
Provide all particulars of the Claim and supporting documentation, including amount, description of transaction(s) or agreement(s) giving rise to the Claim, name of any guarantor which has guaranteed the Claim, and amount of invoices, particulars of all credits, discounts, etc. claimed, description of the security, if any, granted by the affected Debtor to the Creditor and estimated value of such security, particulars of any restructuring claim.

**See Schedule 'A' Attached**

**6 Certification**
I hereby certify that:
- I am an authorized Representative of the Creditor.
- I have knowledge of all the circumstances connected with this Claim.
- The Creditor asserts this claim against the Debtor, and the Officer(s) and Director(s) as indicated above.
- Complete documentation in support of this claim is attached.

Received

SEP 3 0 2009

| Signature | Name<br>David Davies |
| | Title |
| Dated | Signed at |

**7 Filing of Claim**
This Proof of Claim must be received by the Monitor by no later than 4:00 p.m. (prevailing Eastern Time) on SEPTEMBER 30, 2009, by prepaid ordinary mail, courier, personal delivery or electronic or digital transmission at the following address:

Ernst & Young Inc.
222 Bay St., P.O. Box 251
Toronto-Dominion Centre
Toronto, ON M5K 1J
CANADA
Attention: Nortel Claims

Fax: 416-943-2808
Tel: 1-866-942-7177 or 416-943-4439
email: nortel.monitor@ca.ey.com

Legal*4477535.1
041691-00001

This is Exhibit .......D....... referred to in the affidavit of ...Dana Ventresca...... sworn before me, this ...17....... day of ...February...... 20.10.

DONNA WOOLLETT, Notary Public, Regional Municipality of Peel, limited to the attestation of instruments and the taking of affidavits, for Nortel Networks Corporation and its subsidiaries. Expires January 29, 2011.

Donna Woollett
A COMMISSION*ER FOR TAKING

315

**Schedule A**

**Claimants:**
Nortel Networks UK Pension Trust Limited
(as trustee of the Nortel Networks UK Pension Plan)
Westacott Way
Maidenhead, Berkshire, England
SL6 3QH

    Attn:  David Davies, Chairman
    Telephone:  44 78 0829 6794
    Fax:   44 207 667 7011
    Email: dwdavies826@btinternet.com

The Board of the Pension Protection Fund
Knollys House
17 Addiscombe Road
Croydon
Surrey, England
CRO 6SR

    Attn:  Richard Favier, Senior Insolvency Advisor
    Telephone:  44 208 633 4940
    Fax:44 208 633 4910
    e-mail: Richard.Favier@ppf.gsi.gov.uk

**Courtesy copy to:**
Cassels Brock & Blackwell LLP
2100 Scotia Plaza
40 King Street West
Toronto, Ontario
M5H 3C2

    Attn:  Bruce Leonard
    Telephone number:  416 869 5757
    Fax: (416) 640-3027
    e-mail: bleonard@casselsbrock.com

DAVID DAVIES
AS TRUSTEE PLC

Per:
Date: PLEASE DO NOT DATE
Location:

Per: RICHARD FAVIER SENIOR INSOLVENCY ADVISER
Date: PLEASE DO NOT DATE
Location:

Legal*4481620.1

"The Claimant" :  Nortel Networks UK Pension Trust Limited (the "Trustee") and the Board of the Pension Protection Fund ("the PPF") in accordance with their respective interests.

"The Debtor":  Nortel Networks Limited

## Schedule A

The Debtor is liable and indebted to the Claimant under the two guarantees referred to below. The Debtor also has a contingent liability and indebtedness to the Trustee and the PPF in accordance with their respective interests arising pursuant to the Pensions Act 2004 and the Pensions Act 1995 (Acts of the UK Parliament) and all applicable UK Regulations (collectively, "UK Legislation", as a result of the matters set out below.  See Appendix B (Schedule of Applicable Laws).

1.1  Nortel Networks UK Limited ("NNUK") has carried on business in the United Kingdom by itself and through its predecessors for over 18 years as part of the Nortel group of companies (the "Nortel Group") and for many years before that outside the Nortel Group.  NNUK's predecessors established, and NNUK participated in, the occupational pension scheme known as the Nortel Networks UK Pension Plan (the "Plan"), in order to provide pensions and other benefits for their employees.  The Trustee is the trustee of the Plan.

1.2  The Plan is a defined benefit arrangement pursuant to which employees of participating employers become entitled to pension benefits based on final salary and the employers agree to meet the balance of the cost of providing such benefits after taking into account the employees' own contributions.  A copy of the current governing documentation for the Plan is appended hereto in Appendix A.  The Plan now has over 40,000 present and potential (deferred) pensioners.

1.3  Messrs A. Bloom, A. Hudson, S. Harris and C. Hill of Ernst & Young LLP (hereinafter referred to as the "Administrators") were appointed as joint administrators of NNUK under Schedule B1 of the UK Insolvency Act 1986 on January 14, 2009 (hereinafter referred to as the "Administration").

1.4  Notice was given by the PPF (a statutory body established under the Pensions Act 2004) on March 30, 2009 to the Administrators confirming that the Plan was in an assessment period for the purposes of the Pensions Act 2004.  See Appendix A.  An assessment period is a period in which the PPF will work with the Trustee of the Plan so that a valuation of the Plan can be completed to determine the Plan's admittance into the PPF.  This notice has been accepted by the Administrators in the Administration.



317

1.5    Under section 137 of the Pensions Act 2004, during an assessment period, the rights and powers of a trustee of a pension scheme in relation to any debt (including any contingent debt) due to them by the employer, whether by virtue of section 75 of the Pensions Act 1995 (an Act of the UK Parliament) or otherwise, are exercisable by the PPF. In addition, under section 49(5) of the Pensions Act 2004, the rights and powers of a trustee in relation to any debt due to it by virtue of a contribution notice issued pursuant to the process described below are exercisable by the PPF. A trustee retains the right to enforce claims and rights in respect of which the PPF does not have creditor rights. The whole of any amount paid in respect of such debts are ultimately payable to the Plan, whether it is the PPF or the Trustee who exercises the right or power to enforce the obligations.

2.    LIABILITIES UNDER THE DEBTOR'S 2006 GUARANTEE (the "Funding Guarantee") -

2.1    To address the deficiency in the amount of the obligations of the Plan to the pensioners and employees covered by the Plan, NNUK entered in to a funding agreement with the Trustee dated November 21, 2006 with respect to its obligations under the Plan (the "Funding Agreement") a copy of which is appended hereto in Appendix A. Under the Funding Agreement, NNUK agreed to make contributions to eliminate the deficit in the Plan during a recovery period ending in April, 2012.

2.2    Under the Funding Agreement, NNUK was required to make past service deficit contributions between April 2008 and April 2012 in 16 equal quarterly instalments totalling the amount of the Plan deficit as valued for those purposes, until the deficit was reduced to zero subject to a minimum obligation to pay such contributions in an amount not less than the contributions payable by NNUK in accordance with the schedule of contributions under the UK Pensions Act 1995, a copy of which is appended hereto in Appendix A. The Claimant refers to these past service deficit contributions, howsoever calculated, as the "past service deficit contributions".

2.3    Under the Funding Agreement, NNUK also agreed to make contributions in respect of pension liabilities accruing as a result of the current service of Plan members.

2.4    To support the obligations of NNUK to the Trustee, the Debtor guaranteed payment of certain obligations of NNUK under the Funding Agreement in respect of the past service deficit contributions and current service contributions under a Guarantee made by the Debtor in favour of the Trustee dated November 21, 2006 (the "Funding Guarantee") a copy of which is appended hereto in Appendix A. The guaranteed obligations included those obligations referred to above.

2.5    Under the Funding Agreement, NNUK is obligated to the Claimant in respect of the past service deficit contributions. In relation to the past service deficit contributions payable in respect of the period April 2008 to April 2012, the Plan deficit was valued by

- 2 -

the Plan Actuary as being £548M.  On that basis, under the Funding Agreement, NNUK was required to pay £34.25M per quarter into the Plan following April 6, 2008 as past service deficit contributions (i.e., 6.25% of the said deficit in each quarter for 16 quarters ending in April, 2012).

2.6     Accordingly, for the period from April 6, 2008 to January 14, 2009, the sum of £102.75M (3 quarterly payments of £34.25M per quarter) was due and payable in relation to past service deficit contributions. NNUK, however, paid only £57.75M following April 6, 2008 in respect of past service deficit contributions such that a balance of £45M was due and owing under the Funding Agreement and the Funding Guarantee in relation to past service deficit contributions as at January 14, 2009.

2.7     In addition to the Claimant's claim for £45M due and owing as at January 14, 2009, NNUK is insolvent and has failed to pay and is not able to pay the further past service deficit contributions required under the Funding Agreement during the period of the Funding Agreement.  The Administrators have confirmed that they will not make the payments required under the Funding Agreement by letter dated September 18, 2009, a copy of which is appended in Appendix A.  NNUK is therefore obligated and liable under the Funding Agreement in the aggregate amount of £445.25M (2 quarterly instalments of £34.25M which fell due on 4 April 2009 and 4 July 2009 which were not paid by NNUK and 11 further quarterly instalments of £34.25M each which NNUK is required to pay in the period up to April 5, 2012) for amounts payable under the Funding Agreement following January 14, 2009 and the Debtor is obligated and liable pursuant to the Funding Guarantee for such amounts.

2.8     Under the Funding Guarantee the Debtor also guaranteed the payment by NNUK of current service contributions required under the Funding Agreement.  NNUK was required to pay current service contributions in quarterly instalments of £2.5M in the period following November 21, 2006 (but with effect from July 4, 2006) subject to a minimum obligation to pay such contributions in amounts not less than the contributions payable by NNUK in accordance with the schedule of contributions under the Pensions Act 1995.

2.9     The Claimant claims that NNUK has an ongoing liability to make current service contributions under the Funding Agreement up to and after January 14, 2009.

2.10    The Funding Agreement obligations guaranteed by the Debtor under the Funding Guarantee (the **"Guaranteed Obligations"**) therefore include:

(a) Past service deficit contributions payable in the period from April 6, 2008 to January 14, 2009 totalling £102.75M less amounts actually received (£57.75M), being £45M.

- 3 -

(b) Past service deficit contributions due or accruing due in the period from January 14, 2009 to April 5, 2012 consisting of 13 quarterly payments of £34.25M each, for a total of £445.25M.

(c) Current service contributions for the period following January 14, 2009 in the amount of £5M (2 quarterly payments of £2.5M) to September 30, 2009 and all current service contributions subsequently due or accruing due under the Funding Agreement.

2.11    By written notification served on September, 15 2009, a copy of which is appended hereto in Appendix A, the Trustee notified NNUK through the Administrators that the obligations of NNUK under the Funding Agreement were due and owing and unpaid and required payment of the obligations to be made. Payment of such obligations of NNUK has not been made and, as confirmed by the Administrators, will not be made. The entire amounts referred to above are consequently obligations for which the Debtor is obligated and liable under the Funding Agreement and the Funding Guarantee.

2.12    The Funding Guarantee provides that the Debtor's liabilities under the Funding Guarantee become due and payable after:

(a) NNUK fails to pay any of the Guaranteed Obligations within 10 business days of receiving written notification that payment of such obligations is due; and

(b) the Trustee makes demand on the Debtor in accordance with the terms of the Funding Guarantee.

Following the notification served upon the Administrators (on behalf of NNUK), demand on the Debtor for payment under the Funding Guarantee of obligations guaranteed was made on the Debtor on September 30, 2009 and payment of such obligations was not made. The Debtor is consequently obligated to the Claimant for the entire amount of all of such guaranteed obligations.

2.13    The Debtor agreed in the Funding Guarantee that the Funding Guarantee would be governed by English law and that the Courts of England would have exclusive jurisdiction to settle any dispute in connection with the Funding Guarantee (including any disputes regarding the existence, validity or termination of the Funding Guarantee) and that the Courts of England were the most appropriate and convenient Courts to settle any such disputes and that it would not argue to the contrary. Under the Funding Guarantee, the Debtor irrevocably and unconditionally agreed, among other things, not to claim any immunity from proceedings brought by the Claimant and to ensure that no such claim would be made on its behalf and consented to the giving of any relief or the issue of any process in connection with such proceedings. The Claimant states that, under the terms of the Funding Guarantee, the Debtor is precluded from contending or asserting that the Courts of England do not have

- 4 -

exclusive jurisdiction to settle disputes in connection with the Funding Guarantee as provided therein and opposes and objects to any attempt by the Debtor to fail to comply with its obligations under the Funding Guarantee in that regard and respectfully submits that the Debtor be directed to comply with such obligations under the Funding Guarantee.

3.      **LIABILITIES UNDER THE DEBTOR'S 2007 GUARANTEE (the "Insolvency Guarantee"): -**

3.1     As a condition of a corporate restructuring in 2007, the Debtor gave a further guarantee on December 21, 2007 in favour of the Trustee as beneficiary (the "Insolvency Guarantee") a copy of which is appended hereto in Appendix A, by which it further guaranteed payment of the obligations of NNUK in connection with the Plan.  Under the terms of the Insolvency Guarantee, the Debtor guaranteed in favour of the Trustee NNUK's obligations to make payments to the Plan upon or after an "Insolvency Event".

3.2     "Insolvency Event" is defined in the Insolvency Guarantee as, in summary:

        (a) a court order for the winding up or dissolution of NNUK;

        (b) NNUK being dissolved; or

        (c) NNUK passing a resolution for its winding up,

following which the Plan commences its winding up (without any other company agreeing with the Trustee to assume the performance of NNUK's obligations under the Plan).  The Plan will either be wound up during the assessment period, or it will be treated as (a) having commenced winding-up as at the start of the assessment period pursuant to section 154 of the Pensions Act, 2004 or (b) having been wound up when the PPF assumes responsibility for the Plan pursuant to section 161(2) of the Pensions Act, 2004 at the end of the assessment period.

3.3     In summary, the amount payable under the Insolvency Guarantee is limited to the lesser of: (1) US$150M; and (2) the amount of the Plan's buy-out deficit (net of any payment made by an associated company under a Contribution Notice or Financial Support Direction issued by the Pensions Regulator under the Pensions Act 2004 and any amount recoverable by the Trustee from NNUK in NNUK's liquidation or dissolution).

Legal*4499660.1

3.4   The Claimant filed a Proof of Claim in the amount of £2.0B on or about March 9, 2009 with the Administrators which was accepted by the Administrators in the Administration proceedings for purposes of voting in connection with the Administration.

3.5   The amount of the Plan's buy-out deficit has been estimated to be over £2.1B as at the close of business on January 13, 2009. See Actuary letter dated September 29, 2009, a copy of which is appended hereto in Appendix A. The liabilities of the Debtor pursuant to the terms of the Insolvency Guarantee are consequently US$150M. The Claimant reasonably expects that an Insolvency Event is highly likely to occur within the next 12-18 months or earlier and that NNUK will be unable to pay guaranteed obligations far in excess of US$150M.

3.6   The Debtor agreed in the Insolvency Guarantee that the Insolvency Guarantee would be governed by English law and that the Courts of England would have exclusive jurisdiction to settle any dispute in connection with the Insolvency Guarantee (including any disputes regarding the existence, validity or termination of the Insolvency Guarantee) and that the Courts of England were the most appropriate and convenient Courts to settle any such disputes and that it would not argue to the contrary. Under the Insolvency Guarantee, the Debtor irrevocably and unconditionally agreed among other things, not to claim any immunity from proceedings brought by the Claimant and to ensure that no such claim would be made on its behalf and consented to the giving of any relief or the issue of any process in connection with such proceedings. The Claimant states that, under the terms of the Insolvency Guarantee, the Debtor is precluded from contending or asserting that the Courts of England do not have exclusive jurisdiction to settle disputes in connection with the Insolvency Guarantee as provided therein and opposes and objects to any attempt by the Debtor to fail to comply with its obligations under the Insolvency Guarantee in that regard and respectfully submits that the Debtor be directed to comply with such obligations under the Insolvency Guarantee.

4.   LIABILITIES UNDER FINANCIAL SUPPORT DIRECTION PROCEEDINGS UNDER THE UK PENSIONS ACT 2004.

4.1   The Pensions Regulator in the United Kingdom ("the Regulator") has power under the Pensions Act 2004 to issue a financial support direction ("**Financial Support Direction**") to any company connected with or an associate of a company which is an employer in relation to a UK occupational pension scheme. A Financial Support Direction requires the company or companies to whom it is issued to secure that financial support for the pension scheme is put in place within the period specified by the Regulator and as approved by the Regulator, and that such support remains in place whilst the pension scheme is in existence.

Legal*4499660.1

4.2    The procedure for issuing a Financial Support Direction is that the Regulator reviews the background and circumstances relating to the pension plan. The Regulator, if it concludes that there are grounds to do so, then sets out the case for the issuance of a Financial Support Direction in a warning notice (the "**Warning Notice**"), which is sent to the named company or companies. The company or companies to whom the Warning Notice is addressed have the opportunity to make written representations as to the matters set out in the Warning Notice to the Regulator, and then all parties have the opportunity to make submissions at a hearing in front of the Determinations Panel of the Regulator, which must then decide whether it is appropriate under the Pensions Act 2004 and related laws and regulations to issue a Financial Support Direction.

4.3    The Plan is a UK occupational pension scheme. NNUK is the current employer in relation to the Plan. The Debtor, being part of the Nortel Group, is an associate of or connected with NNUK for the purposes of the Pensions Act 2004 and the Insolvency Act 1986.

4.4    The Plan has a funding deficit (as described more fully below). As is confirmed by the letter from the Regulator to the Trustee and the PPF (see Appendix A), the Regulator has investigated and is continuing to investigate the circumstances of this case. The Regulator in the light of its investigation has concluded that grounds exist to issue Warning Notices and to seek a Financial Support Direction against one or more of the members of the Nortel Group, whose members expressly include the Debtor. See Schedule A to Letter in Appendix A.

4.5    A Financial Support Direction may be issued by the Regulator when the employer in relation to the Plan is insufficiently resourced within the meaning of Part 1 of the Pensions Act 2004 (and associated Regulations) at a time determined by the Regulator, which in this case was June 30, 2008, and the other statutory and regulatory requirements are satisfied. See Sections 43-44 of the Pensions Act 2004.

4.6    The Regulator considers that NNUK was insufficiently resourced within the meaning of the UK Legislation, because:

4.6.1    the Regulator has determined the value of NNUK's resources (as defined in the UK Legislation) to be less than 50% of the "estimated section 75 debt" (see Section 2.7 below) of NNUK as at the date specified by the Regulator, namely June 30, 2008 - such estimated section 75 debt being (UK) £1.777 billion (see Appendix A); and

4.6.2    Nortel Networks Corporation ("NNC"), which is and was the ultimate parent company of both NNUK and the Debtor, is an associate of NNUK for the purposes of the UK Legislation. The Regulator has determined the value of the resources of NNC to be not less than (and, indeed, more than) the

- 7 -

difference between the value of the resources of NNUK and 50% of NNUK's estimated section 75 debt (see Appendix A).

4.7   The section 75 debt under the Pensions Act 1995 is the amount which the Regulator estimates would become due from NNUK to the Trustee if the liability had been triggered on June 30, 2008.   The liability under section 75 is broadly equal to the deficiency in the funding of a pension scheme on a "buy-out" basis together with certain costs. For the purpose of calculating the "buy-out" amount, the assets of the Plan are compared to the amount required or estimated by the actuary for the Plan (the "**Plan Actuary**") to be required to "buy out" its liabilities by purchasing equivalent annuities from an authorised insurance company.

4.8   The Plan Actuary has estimated the section 75 debt of NNUK as of January 13, 2009 to be (UK) £2.1 billion. See Appendix A. The Administrators of NNUK have stated that an informal estimate of the section 75 debt of NNUK is (US) $3.1 billion. See Appendix A.

4.9   The issuance of a Financial Support Direction against the Debtor will require the Debtor either alone or together with other members of the Nortel Group to procure financial support for the Plan satisfactory to the Regulator.

4.10   Under the Pensions Act 2004, if the Debtor fails to put or keep in place financial support approved by the Regulator, the Regulator has power to issue a contribution notice ("**Contribution Notice**") imposing on the Debtor a liability to pay the sum specified in the notice, which may be in an amount equal to the whole of the debt that is or would be due by NNUK in relation to the Plan under section 75 of the Pensions Act 1995.

4.11   By virtue of section 49 of the Pensions Act 2004, the sum specified in such a Contribution Notice is to be treated as a debt due from the Debtor to the Trustee of the Plan. As set out above, by virtue of section 49(5), during an assessment period the rights and powers of the Trustee in relation to the debt to the Trustee pursuant to said Contribution Notice are exercisable by the PPF.

4.12   The indebtedness or liability of the Debtor to the Claimant under the applicable laws and the Plan arose at the latest on the date on which NNUK was first insufficiently resourced within the meaning of Part 1 of the Pensions Act 2004. The liability had therefore been incurred no later than June 30, 2008.

4.13   As summarized above, the process under the Pensions Act 2004 relating to the determination of any potential Financial Support Direction obligations of the Debtor and other entities in the Nortel Group is underway ("**Financial Support Direction Proceedings**"), and certain entities within the Nortel Group have received and responded to inquiries from the Regulator. The responses to the Regulator's inquiries and any additional evidence that may be submitted and any submissions that may be

- 8 -

324

made by the Debtor or other affected entities within the Nortel Group will be considered by the Regulator's Determination Panel in reaching a determination of the Debtor's and the other members of the Nortel Groups' Financial Support Direction and other obligations.

5.      **CLAIMS SUMMARY: -**

5.1     The Claimant's claims against the Debtor consist of the aggregate of the liabilities of the Debtor pursuant to the Funding Guarantee, the Insolvency Guarantee and the Financial Support Direction Proceedings as follows:

5.2     **Funding Guarantee: -**

(a) Plan contributions due and unpaid under the Funding Agreement as at January 14, 2009 as referred to in Section 2.10(a) above in the amount of £45M, for which the Debtor is liable and obligated under the Funding Guarantee;

(b) Plan contributions referred to in Section 2.10(b) above due or accruing due from and after January 14, 2009 during the period ending April 5, 2012 in the amount of £445.25M, for which the Debtor is liable and obligated pursuant to the Funding Guarantee.

(c) Current service deficit contributions referred to in Section 2.10(c) above due or accruing due from and after January 14, 2009 for which the Debtor is liable and obligated pursuant to the Funding Guarantee.

5.3     **Insolvency Guarantee: -**

(a) The Plan Deficit is estimated to be £2.1B as at January 13, 2009. The obligations and liabilities of the Debtor under the Insolvency Guarantee are consequently US$150,000,000.

(b) The Administrators anticipate that NNUK will go into liquidation but because that NNUK has not yet gone into liquidation or been dissolved and the Plan has not commenced winding-up as at the date of the Claim, the Claimant's claim under the Insolvency Guarantee is a contingent claim but with a high likelihood of the contingencies occurring within the next 12 -18 months.

5.4     **FSD Proceedings: -**

(a) The amount to be determined to be owing to the Claimant pursuant to Financial Support Direction Proceedings undertaken pursuant to the provisions of the UK Pensions Act, 2004.

Legal*4499660.1

325

6.    **TOTAL LIABILITIES OF DEBTOR TO CLAIMANT: -**

The Claimant's claims against the Debtor in the aggregate are as follows:

(a) Pursuant to the Funding Guarantee, the amount of £45M due and owing as at January 14, 2009 and the further amount of £445.25M for the balance of the period of the Funding Agreement to April 5, 2012 and current service deficit contributions due from and after January 14, 2009.

(b) Pursuant to the Insolvency Guarantee, the amount of US $150M contingent on NNUK going into liquidation or dissolution and the Plan commencing a winding-up or being deemed to have been wound up;

(c) The amount to be determined to be owing to the Claimant pursuant to Financial Support Direction Proceedings undertaken pursuant to the provisions of the UK Pensions Act, 2004.

7.    **RESERVATION OF RIGHTS, ETC.**

7.1    The Claimant reserves the right to (a) amend, clarify, modify, update or supplement this proof of claim at any time and in any respect, including without limitation to assert additional claims or additional grounds for its claim and/or to specify the amount of any contingent, unmatured or unliquidated claim as they become non-contingent, matured and/or liquidated; (b) adduce additional documents to support claims, as they may become available or as necessary.

7.2    To the extent that the Claimant is or may become entitled to any other rights (including, without limitation, defences or set-off) in law or in equity, the Claimant expressly preserves such rights.

7.3    By filing this proof of claim, the Claimant does not waive, but specifically preserves, all procedural and substantive defences to any claim that may be asserted by the Debtor, or by any receiver, trustee, creditor representative, liquidator or similar entity.

7.4    The Claimant is continuing to investigate the elements of the claims. This proof of claim is filed under the compulsion of an order which sets a final date for filing proofs of claim. Accordingly, this proof of claim is filed to protect the Claimant from potential forfeiture of any and all rights against the Debtor. The filing of this proof of claim shall not constitute (a) a waiver or release of the rights of the Claimant against the Debtor or any other person or property; (b) a waiver by the Claimant of its right to contest the jurisdiction of the Ontario Superior Court of Justice with respect to the subject matter of any claim; or (c) an election of remedies or choice of law.

Legal*4499660.1