**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------X
                                                            :
In re                                                       :     Chapter 11
                                                            :
Nortel Networks Inc., et al.,¹                              :     Case No. 09-10138 (KG)
                                                            :
                          Debtors.                          :     Jointly Administered
                                                            :
                                                            :     Hearing date: March 17, 2010 11:00 a.m. (ET)
                                                            :     Objections due: March 10, 2010 4:00 p.m.  (ET)
                                                            :
------------------------------------------------------------X
```

**APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT AND
RETENTION OF LINKLATERS LLP *NUNC PRO TUNC* TO JANUARY 26, 2010
AS U.K. COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a),

328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014

and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules

2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), (i) authorizing

the employment and retention of Linklaters LLP ("Linklaters" or the "Firm") as counsel to the

Debtors for the purpose of U.K. law advice, and in particular regarding asserted potential

pension obligations under U.K. law *nunc pro tunc* to January 26, 2010; (ii) approving the terms

---

¹       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

and conditions under which Linklaters will be retained and compensated; and (iii) granting them

such other and further relief as the Court deems just and proper.  In support of this Application,

the Debtors rely upon the Declaration of Mark Blyth (the "Blyth Declaration"), attached hereto

as Exhibit B, the Declaration of Paul Newman (the "Newman Declaration"), attached hereto as

Exhibit C, and the declaration of James Walmsley (the "Walmsley Declaration"), attached hereto

as Exhibit D.  In further support of this Application, the Debtors respectfully represent as

follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 327(a), 328(a), 330

and 331 of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Bankruptcy

Rules and Rules 2014-1 and 2016-1 of the of the Local Rules.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.       Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.       On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.       On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

---

[2]       The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]       The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA was originally authorized to continue to operate as a going

concern for an initial period of three months, which period was subsequently extended to

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of

liquidation for a further period of three months.  On June 26, 2009, this Court entered an order

recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main

proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary

petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with

the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that designs, develops and deploys

communication products, systems and solutions to its customers around the globe.  Its principal

assets include its employees, the intellectual property derived and maintained from its research

and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business

and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in

Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and it would assess other restructuring alternatives for its

businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed

(i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the

sale of substantially all of its CDMA business and LTE Access assets business to

---

[5]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless

Networks business associated with the development of Next Generation Packet Core network

components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the

Enterprise Solutions business globally, including the shares of Nortel Government Solutions

Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has

completed auction processes and obtained Court approval for the planned sale of substantially all

the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro

Ethernet Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of

its GSM/GSM-R business [D.I. 2065].

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On

December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern

Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15.     By this Application, the Debtors seek entry of an order substantially in the form

attached hereto as Exhibit A, pursuant to sections 327(a), 328(a), 330 and 331 of the Bankruptcy

Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-1 authorizing the

employment and retention of Linklaters[6] as counsel to the Debtors for the purpose of U.K. law

advice, and in particular regarding asserted potential pension obligations under U.K. law *nunc*

*pro tunc* to January 26, 2010; (ii) approving the terms and conditions under which Linklaters will

---

[6]     NNI on behalf of the Debtors has entered into standard engagement terms with Linklaters as required under the professional rules to which the firm is subject in the United Kingdom. However, those terms are subject to any applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and any other applicable orders entered by this Court.

be retained and compensated; and (iii) granting such other and further relief as the court deems

just and proper.

**Facts Relevant to this Application**

16.     On September 30, 2009, the Nortel Networks UK Pension Trust (the "Trustee"),

the trustee of NNUK's pension scheme, and the Board of the Pension Protection Fund, a

statutory corporation responsible for managing the United Kingdom's Pension Protection Fund

(the "PPF"), which pays compensation to members of eligible pension schemes, filed proofs of

claim against NNI and several of its debtor affiliates.  Also on September 30, 2009, the Trustee

and the PPF filed proofs of claim against the Canadian Debtors in the CCAA proceedings.

17.     On January 25, 2010, the Trustee and the PPF filed a proof of claim against NN

CALA.

18.     Specifically, the Trustee and the PPF allege contingent and unliquidated claims

against the US and Canadian Debtors for an undetermined amount no less than NNUK's pension

scheme deficit, which the actuary for the NNUK pension scheme estimates to be approximately

£2.1 billion as of January 13, 2009.  The PPF had previously asserted a claim for a similar

amount against NNUK.

19.     In addition, the Pensions Regulator, the United Kingdom's regulator of work-

based pension schemes, has issued a warning letter with regard to certain pension-related

proceedings in the United Kingdom against various Nortel entities, including certain US and

Canadian Debtors.

**Basis for Relief**

20.     In light of the proofs of claim filed by the Trustee and the PPF, the Debtors have

determined that it will be necessary to engage capable and experienced United Kingdom counsel

such as Linklaters because Linklaters' resources and capabilities are crucial to the multi-

jurisdictional issues confronting the Debtors' success, including asserted potential pension obligations under U.K. law.  Such legal counsel will enable the Debtors to carry out their duties in these chapter 11 proceedings.  The Debtors, therefore, propose to retain and employ Linklaters as counsel to the Debtors for the purpose of U.K. law advice, and in particular regarding asserted potential pension obligations under U.K. law.

21.     Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

22.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

23.     Bankruptcy Rule 2014 requires that an application for retention of a professional person include:

> [S]pecific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . .  shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval."  Del. Bankr. L.R. 2014-1(a).

24.     By this Application, the Debtors request that the Court approve the Debtors'

proposed retention of Linklaters as counsel to the Debtors for the purpose of U.K. law advice,

and in particular asserted potential pension obligations under U.K. law.  The proposed retention

of Linklaters is beneficial to the Debtors' estates and the professional compensation

arrangements provide certainty and proper inducement for Linklaters to act expeditiously and

prudently with respect to the matters for which it will be employed.

25.     The Debtors also request approval of the employment of Linklaters *nunc pro tunc*

to January 26, 2010.  Such relief is warranted by the extraordinary circumstances presented by

these cases.  The Third Circuit has identified "time pressure to begin service" and absence of

prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650

(3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal

dismissed, 909 F.2d 1476 (3d Cir. 1990).  The complexity and intense activity that have

characterized these cases have necessitated that the Debtors, Linklaters' and the Debtors' other

professionals focus their immediate attention on certain critical matters, such as the asserted

potential pension obligations under U.K. law, and promptly devote substantial resources to the

affairs of the Debtors pending submission and approval of this Application.

## Selection of Linklaters and Scope of Services

26.     Linklaters is a global law firm, which employs more than 2,200 qualified lawyers.

Linklaters maintains offices for the practice of law at One Silk Street, London, England, as well

as offices in New York, Paris, Madrid, Lisbon, Brussels, Antwerp, Amsterdam, Düsseldorf,

Frankfurt, Berlin, Munich, Stockholm, Rome, Milan, Luxembourg, Warsaw, Moscow, Dubai,

Bangkok, Singapore, Beijing, Shanghai, Hong Kong, Tokyo, and São Paulo.

27.    Linklaters advises a number of the world's leading companies, financial

institutions and governments in their challenging transactions and assignments. Linklaters has

substantial expertise in the areas of bankruptcy and restructuring. They provide advice on

restructuring and insolvency issues (including in relation to large and complex cases under

chapter 11 of the Bankruptcy Code) to creditors, banks, financial investors, steering committees,

insolvency practitioners, corporate debtors and their directors/officers.

28.    The Debtors believe they require the services of capable and experienced United

Kingdom counsel such as Linklaters because Linklaters' resources and capabilities are crucial to

the multi-jurisdictional issues confronting the Debtors' success, including asserted potential

pension obligations under U.K. law.  Linklaters has one of the best-regarded and longest

established pensions law practices in the U.K.  It acts for trustees and corporations in relation to

the largest U.K. pension schemes and the issues they face.  It has extensive experience of

pension scheme issues that arise in relation to corporate insolvency.  It also has the resources

available to advise and represent the Debtors in this matter.

29.    As a result, the Debtors believe that Linklaters is both well qualified and uniquely

able to represent the Debtors as counsel for the purpose of U.K. law advice, and in particular

with regard to the asserted potential pension obligations under U.K. law.  Denial of the relief

requested by the Debtors in this Application would deprive the Debtors of the assistance of

highly capable and experienced United Kingdom counsel.  Furthermore, it would unjustly

disadvantage the Debtors, their estates and all parties in interest, as the Debtors would be forced

to engage new counsel who lack Linklaters' extensive knowledge and experience in the area of

U.K. pensions law and would be starting this matter afresh.

30.     The services of Linklaters are necessary and essential to enable the Debtors to

defend the claims of the Trustee and the PPF.  Subject to the control and further order of this

Court, Linklaters will be required to render various services to the Debtors in connection with the

asserted potential pension obligations under U.K. law, including the following professional

services:

a.      providing advice to the Debtors with respect to U.K. law, and in
        particular regarding the asserted potential pension obligations
        under U.K. law and the proofs of claim filed by the Trustee and the
        PPF

b.      preparing, assisting in the preparation of, retaining necessary
        experts for, and appearing on behalf of the Debtors in connection
        with applications, motions, answers, orders, reports, memoranda of
        law and other papers in connection with the asserted potential
        pension obligations in any appropriate forum in order to defend the
        Debtors or assert their rights under U.K. law and/or in connection
        with the proofs of claim filed by the Trustee and the PPF, and
        assisting the Debtors in any related negotiations or proceedings

c.      performing other necessary or appropriate legal services in
        connection with the alleged pension obligations and the proofs of
        claim filed by the Trustee and the PPF

d.      Linklaters has indicated a willingness to act on behalf of the
        Debtors to render the foregoing professional services.

31.     Subject to court approval, Linklaters has instructed an external U.K. Queens'

Counsel (a "barrister") who specializes in pensions law and regulation and also a junior

supporting barrister to represent NNI and NN CALA in the event necessary to defend those

debtors in a U.S. proceeding or otherwise assert their rights under U.K. law.  To the best of the

Debtors' knowledge and except as otherwise disclosed in the declarations of Paul Newman QC

and James Walmsley of Wilberforce Chambers, annexed hereto as Exhibits C and D, the

barristers do not have any connection with, the Debtors, their creditors, equity security holders or

any other parties in interest in any matters relating to the Debtors and their estates.

**Linklaters' Disinterestedness**

32.     To the best of Debtors' knowledge, and except as set forth herein and as otherwise disclosed in the Blyth Declaration, annexed hereto as Exhibit B, the partners, counsel and associates of Linklaters have not represented, and do not have any connection with, the Debtors, their creditors, equity security holders or any other parties in interest in any matters relating to the Debtors and their estates.

33.     As disclosed in the Blyth Declaration, the Firm currently represents certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these proceedings. Linklaters has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to the Firm's continued representation of these entities in matters unrelated to these proceedings. The Debtors believe that Linklaters' current and future representation of these entities will not in any way adversely affect the Firm's representation of the Debtors.

34.     As further disclosed in the Blyth Declaration, Linklaters formerly represented (i) certain of Nortel's creditors and other parties in interest in matters related to these proceedings and the English Proceedings and (ii) certain other clients in matters involving Nortel. These matters are closed and Linklaters no longer represents those clients in connection with those matters. Linklaters has informed the Debtors of its former representation of such entities. The Debtors believe that Linklaters' former representation of these entities will not in any way adversely affect their representation of the Debtors.

35.     To the best of the Debtors' knowledge and as disclosed in the Blyth Declaration, Linklaters does not hold or represent any interest adverse to the Debtors or their estates, Linklaters is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Linklaters'

employment and retention is necessary and in the best interests of the Debtors and their estate.

Given the size of the Debtors and the extent of their creditor and interest holder constituencies,

the Debtors believe that it is unlikely that any major law firm in the United Kingdom with the

expertise necessary to defend the claims filed by the Trustee and the PPF could be found that is

not currently representing some of the Debtors' major creditors or interest holders in unrelated

matters or did not formerly represent certain of Nortel's creditors and other parties in interest in

matters related to these proceedings or the English Proceedings

36.     Linklaters will periodically review its files during the pendency of this retention

to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new

relevant facts or relationships are discovered or arise, Linklaters will use reasonable efforts to

identify such further developments and will promptly file a supplemental declaration if needed,

as required by Bankruptcy Rule 2014(a).

### Professional Compensation

37.     The Debtors understand that Linklaters intends to apply to the Court for

allowance of compensation and reimbursement of expenses in accordance with applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and orders of the

Court.  Subject to such provisions and Court orders, compensation will be payable to Linklaters

on an hourly basis at its customary hourly rates for bankruptcy services in relation to pensions

work rendered as in effect from time to time, plus reimbursement of actual, necessary expenses

incurred by the Firm.  Linklaters' hourly rates for London office timekeepers applicable in these

chapter 11 proceedings, subject to periodic adjustments to reflect economic and other conditions,

plus applicable Value Added Tax (VAT), are (in U.K. sterling £):

| | |
|---|---|
| Partners: | £650 |
| Counsel: | £600 |
| Managing Associates: | £550 |

| | |
|---|---|
| Associates: | £465 |
| Trainee Solicitors: | £280 |
| Paralegals: | £125 |

Linklaters' standard hourly rates are set at a level designed to compensate fairly the Firm for the work of its legal staff and paralegals and to cover fixed and routine overhead expenses.

38.     In connection with the reimbursement of actual, necessary expenses, the Debtors have been informed that it is the Firm's policy to charge its clients in all areas of practice for expenses and charges incurred in connection with the clients' cases.  The expenses generally charged to Linklaters' clients include, among other things, photocopying charges, national and international telephone calls, facsimile transmissions, messenger and delivery services, courier mail, online and external research services, word processing, secretarial and temporary employees, overtime meals, overtime and late night transportation, travel, lodging, food charges for business meetings, postage, printing, transcripts, filing fees, document retrieval, fees and expenses of barristers instructed by Linklaters, and expert fees.  The Debtors have been informed that the Firm believes it is fairer to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all its clients.  The Debtors have been assured that Linklaters will charge the Debtors for these expenses in a manner and at rates consistent with charges generally made to the Firm's other clients.

39.     In addition, the Debtors have been informed that, consistent with U.K. practice, it is the Firm's policy to charge its clients the fees and expenses of barristers instructed by Linklaters.  Mr. Newman's hourly rate applicable in these chapter 11 cases, subject to periodic adjustments to reflect economic and other conditions, plus applicable Value Added Tax (VAT), is (in U.K. sterling £) £500.  Mr. Walmsley's hourly rate applicable in these chapter 11 cases, subject to periodic adjustments to reflect economic and other conditions, plus applicable Value

14

Added Tax (VAT), is (in U.K. sterling £) £175.  Mr. Newman and Mr. Walmsley do not charge

expenses other than travel expenses.  In the event Mr. Newman or Mr. Walmsley is required to

travel in connection with their instruction by Linklaters as set forth in this Application,

Linklaters will charge Mr. Newman's and Mr. Walmsley's travel, lodging and food expenses to

the Debtors.  The fees and expenses of barristers instructed by Linklaters shall be paid by

Linklaters and reimbursed by the Debtors as an expense in accordance with the terms of the

interim compensation order entered by this Court [D.I. 222].  Linklaters will include the

barristers' timekeeping and expense details in the applications for compensation it will file with

this Court pursuant to the terms of the interim compensation order.

40.     To the best of Linklaters' information and belief the Debtors did not make any

payments to Linklaters during the 90-day period prior to the Petition Date.

41.     No promises have been received by either the Firm or any partner, counsel,

managing associate, associate, trainee solicitor or other employee thereof as to compensation or

payment in connection with this retention other than in accordance with the provisions of the

Bankruptcy Code, the Bankruptcy Rules and the Local Rules and orders of this Court.  Linklaters

has no agreement with any other entity to share with such entity any compensation received by

the Firm in connection with this retention.

42.     Notice of the Motion has been given via first class mail and hand delivery to the

(i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv)

the general service list established in these chapter 11 cases.  The Debtors submit that under the

circumstances no other or further notice is necessary.

### No Prior Request

43.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully requests that this Court (i) grant this Motion and the

relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  February 18, 2010                    CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

                                            James L. Bromley
                                            Lisa M. Schweitzer
                                            One Liberty Plaza
                                            New York, New York 10006
                                            Telephone:  (212) 225-2000
                                            Facsimile:  (212) 225-3999

                                                  - and -

                                            MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                          */s/ Ann C. Cordo*
                                          Derek C. Abbott (No. 3376)
                                          Eric D. Schwartz (No. 3134)
                                          Ann C. Cordo (No. 4817)
                                          Andrew R. Remming (No. 5120)
                                          1201 North Market Street
                                          P.O. Box 1347
                                          Wilmington, Delaware 19801
                                          Telephone:  (302) 658-9200
                                          Facsimile: (302) 658-3989

                                          *Counsel for the Debtors*
                                          *and Debtors in Possession*