## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE  DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **NORTEL NETWORKS, INC., *et al.*,**[1] | : | **Case No. 09-10138 (KG)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| | : | **RE:  D.I. 2387** |
| | : | |
| | : | **Hearing date:    February 26, 2010 at 10:00 a.m. (ET)** |
| | : | **Objections due: February 19, 2010 at   4:00 p.m. (ET)** |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**LIMITED OBJECTION OF MICROVISION, INC. TO DEBTORS' MOTION TO ADD CERTAIN ADDITIONAL DEBTORS AS SELLERS IN THE SALE OF THE DEBTORS' METRO ETHERNET NETWORKS BUSINESS TO CIENA CORPORATION**

Microvision, Inc. ("Microvision"), an exclusive licensee of patents of Xros, Inc. ("Xros"), in order to protect its rights under its patent license, hereby submits this limited objection (the "Limited Objection") to the Debtors' Motion to Add Certain Additional Debtors as Sellers in the Sale of the Debtors' Metro Ethernet Networks Business to Ciena Corporation [D.I. 2387] (the "Additional Seller Motion"), and respectfully represents and sets forth as follows:

### Jurisdiction and Venue

1.      This Court has jurisdiction over the Limited Objection pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The Limited Objection is a core proceeding pursuant to 28 U.S.C. § 157(b).  The statutory predicates for the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

relief requested herein are sections 365(f) and (n) of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code").

## Background

2.      On January 14, 2009 and July 14, 2009 (the "Petition Dates"), the Debtors filed voluntary petitions with this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## The Xros License

3.      Microvision is the holder of an exclusive, world-wide license to certain patents and related intellectual property (the "Licensed Intellectual Property") owned by Xros. The exclusive license is governed by a License Agreement dated as of February 2, 1998, by and between Xros, as licensor, and Microvision, as licensee (as amended from time to time, the "License Agreement").

4.      Under the License Agreement, Microvision licensed approximately thirteen United States patents and their foreign counterparts from Xros.  Since 1998, Microvision has made substantial investments in the patents under the License Agreement and has paid royalties and other amounts to Xros in total amount in excess of $1.9 million to date.  After Nortel Networks Corporation ("NNC") acquired Xros in June 2000, without prior notice to Microvision, Xros allowed all but seven of the licensed United States patents (the "Remaining Licensed Patents") to lapse.[2]

5.      After the bankruptcy filings in January, Microvision contacted the Debtors to discuss the status of the Remaining Licensed Patents.  On May 1, 2009, the Debtors referred

---

[2]      Microvision reserves all of its rights in respect of Nortel's abandonment of these licensed patents.

#12149338 v1

Microvision to their financial advisor, Lazard Frères & Co. LLC ("Lazard"). Microvision contacted Lazard and made it clear that, given the bankruptcy proceedings, it was concerned about the future disposition of the Remaining Licensed Patents and was interested in acquiring such patents.

6.      Lazard informed Microvision that it had recorded Microvision's interest in the Remaining Licensed Patents and that the Debtors would contact Microvision if and when any process was initiated for the disposition of the Remaining Licensed Patents. Lazard requested that Microvision check in with Lazard periodically for a status update, and Microvision contacted Lazard by phone and e-mail every couple of months thereafter.

7.      On January 11, 2010, in response to an e-mail from Microvision, Lazard notified Microvision that one of the Remaining Licensed Patents, U.S. Patent No. 6,229,139 (the " '139 Patent") had been sold as part of a sale of assets relating to the Debtors' Metro Ethernet Networks business (the "Sale") to Ciena Corporation ("Ciena"). Microvision subsequently learned that the Sale had been approved by this Court on December 3, 2009.

8.      Prior to the Sale, Microvision had regularly contacted Lazard and, through Lazard, the Debtors had represented that Microvision would be notified of any disposition of the Remaining Licensed Patents. Despite the Debtors' representations, Microvision received no formal or informal notice of the Sale. The notice address for Microvision in the certificate of service [D.I. 1650] for the Sale Motion (as defined below) was incorrect, even though the Debtors and Lazard hold the current contact information for Microvision. Nevertheless, even if Microvision had received formal notice of the Sale, such notice would have been insufficient to inform Microvision that the '139 Patent was included in the assets to be sold to Ciena, because Xros was not then a party to the Asset Sale Agreement and the Exhibits and Schedules were filed

-3-

under seal, including the exhibit identifying the "Other Original Sellers" and the schedule identifying "Transferred Intellectual Property" (as such terms are defined in the Asset Purchase Agreement).

### The MEN Business Sale to Ciena

9.      On October 7, 2009, the Debtors filed a Motion for an Order (I)(A) Authorizing Debtors' Entry into the Stalking Horse Asset Sale Agreement, (B) Authorizing and Approving the Bidding Procedures and Bid Protections, (C) Approving the Notice Procedures and Assumption and Assignment Procedures, (D) Authorizing the Filing of Certain Documents Under Seal, and (E) Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain Assets of Debtors' Metro Ethernet Networks Business Free and Clear of All Liens, Claims, and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts [D.I. 1627] (the "Sale Motion").  By the Sale Motion, the Debtors requested authority, among other things, for the Sale.  Ciena served as the stalking horse bidder for the Sale, pursuant to an Asset Sale Agreement, dated October 7, 2009 (the "Stalking Horse Agreement"), by and among NNC, Nortel Networks Limited ("NNL"), Nortel Networks, Inc. ("NNI"), and certain sellers listed on exhibits thereto (the "Other Original Sellers" and collectively with NNC, NNL, and NNI, the "Original Sellers"), as sellers, and Ciena, as buyer.

10.      On November 3, 2009, the Debtors filed a Motion for an Order Authorizing the Debtors to File Under Seal the Sellers Disclosure Schedule and Exhibits and Other Schedules Relating to the Sale of Certain Assets of the Metro Ethernet Networks Business [D.I. 1805] (the "Sealing Motion").  By the Sealing Motion, the Debtors requested authority to file under seal the Sellers Disclosure Schedule and all Exhibits and Schedules (as defined in the Stalking Horse Agreement) (the "Schedules"), including the exhibit that identified the "Other

-4-

Original Sellers" and schedule of "Transferred Intellectual Property" (as defined in the Asset Purchase Agreement).  On November 17, 2009, the Debtors filed the Schedules under seal.

11.    On December 3, 2009, this Court entered the Order Authorizing and Approving (A) Sale of Certain Assets of the Debtors' Metro Ethernet Networks Business Free and Clear of all Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Executory Contracts [D.I. 2070] (the "Sale Order"), which approved the Sale to Ciena, pursuant to the Amended and Restated Asset Sale Agreement, dated November 24, 2009, (the "Asset Sale Agreement"), by and among the Original Sellers and Ciena.

12.    On December 4, 2009, this Court entered the Order Authorizing the Debtors to File Under Seal the Sellers Disclosure Schedule and Exhibits and Other Schedules Related to the Sale of Certain Assets of the Metro Ethernet Networks Business [D.I. 2078] (the "Sealing Order"), which authorized the Debtors to file the Schedules under seal.

13.    On February 5, 2010, the Debtors filed the Additional Seller Motion, requesting authority to add Xros, CoreTek, Inc. ("CoreTek"), and Qtera Corporation ("Qtera" and collectively with Xros and CoreTek, the "Proposed Additional Sellers") as sellers under the Asset Sale Agreement and confirm the applicability of the Sale Order to the Proposed Additional Sellers.

**Relief Requested**

14.    By the Limited Objection, Microvision objects to the Additional Seller Motion to the extent that the addition of Xros to the Asset Sale Agreement and the application of the Sale Order to Xros would result in the sale of the '139 Patent free and clear of the License Agreement or Microvision's rights under § 365(n) of the Bankruptcy Code (in the event of the rejection of the License Agreement by Xros and the exercise by Microvision of its rights under section 365(n) of the Bankruptcy Code).  Microvision also requests that, in light of the sale of

-5-

#12149338 v1

some but not all of the Remaining licensed Patents, the order clarify the recipient of future payments under the License Agreement and provide customary protections to Microvision as a creditor of Xros. Specifically, Microvision requests confirmation in any order approving the Additional Seller Motion that (i) any sale of the '139 Patent remains subject to the License Agreement and Microvision's rights under § 365(n) of the Bankruptcy Code, (ii) Microvision may discharge its obligations by making payments to Xros, and not to Ciena, whether such payments are made under this License Agreement, or under section 365(n) of the Bankruptcy Code, and (iii) the proceeds of the Sale be placed into a segregated, interest-bearing account pending court approved allocation of such proceeds among the individual Debtors constituting Sellers under the Asset Sale Agreement or substantive consolidation of such Sellers in accordance with applicable law pursuant to a chapter 11 plan of reorganization or otherwise.

**A.    The '139 Patent Cannot Be Sold Free and Clear Under
Section 363(f) of the Bankruptcy Code of Microvision's Interests.**

15.    Section 2.1.1(e) of the Asset Purchase Agreement specifically provides that Ciena is purchasing the Transferred Intellectual Property "subject to the licenses granted under such Intellectual Property prior to the [date of the Asset Purchase Agreement]." Accordingly, Ciena has agreed by contract to take the '139 Patent subject to the License Agreement.

16.    Further, the Debtors may not sell the '139 Patent free and clear of Microvision's rights under the License Agreement to Ciena, because none of the standards under section 363(f) of the Bankruptcy Code have been met with respect to the '139 Patent. Under section 363(f) of the Bankruptcy Code, a debtor may sell property free and clear of any interest of another party in such property if –

#12149338 v1

> (a)    applicable nonbankruptcy law permits such a sale;
>
> (b)    the holder of the interest consents;
>
> (c)    the interest is a lien and the price at which such property is to be sold exceeds the aggregate value of all liens on the property;
>
> (d)    the interest is in bona fide dispute; or
>
> (e)    the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).

17.    Because the '139 Patent is subject to the License Agreement, applicable nonbankruptcy law would not permit such a sale of the '139 Patent free and clear of the License Agreement.  Furthermore, Microvision has not and cannot be deemed to have consented to the sale by Xros of the '139 Patent, as Microvision did not receive any formal or informal notice of the Sale Motion, the Schedules identifying the Other Original Sellers and the Transferred Intellectual Property were filed under seal, and Xros was not then a party to the Asset Purchase Agreement.  Finally, Microvision could not be compelled to accept a monetary satisfaction of its interest in a legal or equitable proceeding.  As a licensee of a right to intellectual property, if the License Agreement is rejected, Microvision may elect to retain its rights to the '139 Patent and other Remaining Licensed Patents under section 365(n)(1)(B) of the Bankruptcy Court, as "such rights existed immediately before the case commenced, for (i) the duration of such contract; and (ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law."  11 U.S.C. § 365(n)(1)(B).

18.    Accordingly, based on the foregoing, Microvision requests that any order allowing this Additional Seller Motion include the following clarification from this Court that Ciena is purchasing the '139 Patent subject to the License Agreement and Microvision's rights under § 365(n) of the Bankruptcy Code:

> The sale of U.S. Patent No. 6,229,139 is subject to (i) Micorovision's rights of Microvision, Inc. ("Microvision") under the License Agreement dated February 2, 1998 between Xros, Inc., as licensor and Microvision as licensee, and (ii) to the extent applicable, Microvision's rights under § 365(n) of the Bankruptcy Code.

**B.      Microvision Requests Clarification in any Order Approving the Additional Seller Motion that any Future Royalty or Other Payments under the License Agreement or Section 365 of the Bankruptcy Code Shall Be Made to Xros and not to Ciena.**

19.      The License Agreement provides for certain payments by Microvision to Xros.  In addition, section 365(n) of the Bankruptcy Code provides that, if the debtor rejects a license of a right to intellectual property under which it acts as licensor, the licensee may retain its rights as "such rights existed immediately before the case commenced, for (i) the duration of such contract; and (ii) any period for which such contract may be extended by the licensee as of right under applicable nonbankruptcy law."  11 U.S.C. § 365(n)(1)(B).  To retain these rights, the licensee is required to "make all royalty payments due under such contract for the duration of such contract."  11 U.S.C. § 365(n)(2)(B).

20.      The plain language of the statute indicates that any royalties paid under section 365(n)(2)(B) of the Bankruptcy Code "are directly linked to the rejected contract, not the intellectual property."  Schlumberger Resource Mgmt Servs., Inc. v. Cellnet Data Systems, Inc. (In re Cellnet Data Sys.), 327 F.3d 242, 252 (3d Cir. 2003).  Accordingly, the Third Circuit has held that, where an asset sale agreement operates to sever the payment of royalties from the use of intellectual property under a license and the license is subsequently rejected, the debtor (and not the purchaser of the intellectual property) is entitled to payment of the royalties under section 365(n) of the Bankruptcy Code.  Id. at 251.

21.      Under the Asset Purchase Agreement, Ciena excluded all accounts receivable from the assets of the Metro Ethernet Networks business to be purchased (other than

#12149338 v1

certain accounts receivables relating to contracts in progress for which milestones have not been met, which do not apply to the License Agreement). In addition, the Asset Purchase Agreement does not provide for the sale to Ciena of rights to royalty payments under section 365(n) of the Bankruptcy Code. If the License Agreement is rejected, under Cellnet, this exclusion would operate to sever the royalty payments from the ownership of the intellectual property purchased by Ciena. Accordingly, if the License Agreement is rejected, any royalty payments to be made under section 365(n) of the Bankruptcy Code must be made to the Debtors. Although Microvision believes that this result is clear under applicable law, to avoid potential ambiguity, Microvision requests that, in any order granting the Additional Seller Motion, this Court clarify that the Debtors, and not Ciena, would be entitled to receive royalty or other payments for its use of the '139 Patent under the License Agreement or under section 365(n) of the Bankruptcy Code.

C. **The Proceeds of the Sale Should Be Placed in a Segregated, Interest Bearing Account Pending an Allocation by this Court of such Proceeds Among the Individual Debtors that are Sellers Under this Asset Purchase Agreement.**

22. Xros is not currently an operating company. The Schedules of Assets and Liabilities filed by Xros on April 20, 2009, [D.I. 620] (which were later amended on November 4, 2009 [D.I. 1815]) indicate that the only creditors of Xros are (i) Microvision, as a licensee under the License Agreement, and (ii) NNI, as a holder of $44,642,460.19 in intercompany payables against Xros.[3] If the '139 Patent is sold to Ciena as part of the Sale, Microvision is concerned that commingling of such proceeds with other assets of the Debtors' estates may prevent it from receiving its rightful share of such proceeds as a creditor of Xros's estate. Accordingly, Microvision requests that any order allowing the Additional Seller Motion provide that "all proceeds from the Sale be placed in a segregated, interest bearing account, pending an

---

[3]     Microvision reserves all of its rights in respect of its claims against Xros and the relative priority of such claims as against claims of NNI or other insiders of Xros.

#12149338 v1

-10-

allocation by this Court of such proceeds among the individual Sellers under the Asset Purchase Agreement or substantive consolidation of such Sellers in accordance with applicable law pursuant to a chapter 11 plan of reorganization or otherwise."

23.    Based on the foregoing, Microvision submits that the relief requested in this Limited Objection is necessary and appropriate, and should be granted in all respects.

## **Notice**

24.    Microvision served notice of the Limited Objection on:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to the Debtors; (iii) counsel to Ciena; (iv) counsel to the Official Committee of Unsecured Creditors; and (v) all other persons that have formally appeared and requested notice or copies of pleadings filed in the Debtors' cases under Bankruptcy Rule 2002.  Microvision submits that no other or further notice need be provided.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

#12149338 v1

WHEREFORE, Microvision respectfully requests the Court (a) grant the relief in the Limited Objection, (b) confirm, in any order approving the Additional Seller Motion, that (i) any sale of the '139 Patent remains subject to the License Agreement and Microvision's rights under § 365(n) of the Bankruptcy Code, (ii) Microvision may discharge its obligations by making payments to Xros, and not to Ciena, whether such payments are made under the License Agreement or under § 365(n) of the Bankruptcy Code, and (iii) the proceeds of the Sale be placed into a segregated, interest-bearing account pending allocation by this Court of such proceeds among the individual Sellers under the Asset Purchase Agreement or substantive consolidation of such Sellers in accordance with applicable law pursuant to a chapter 11 plan of reorganization or otherwise, and (b) grant such other and further relief as is just and proper.

Dated: February 18, 2010
        Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ Evelyn J. Meltzer
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
John H. Schanne II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Tel:  302.777.6500
Fax: 302.421.8390

-AND-

ROPES & GRAY LLP
James M. Wilton (*pro hac vice*)
Patricia I. Chen (*pro hac vice*)
One International Place
Boston, MA 02110-2624
Tel:  617.951.7000
Tel:  617.951.7050

*Attorneys for Microvision, Inc.*

#12149338 v1