IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NORTEL NETWORKS INC., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138(KG)<br>Jointly Administered<br><br>**Re: Docket No. 2193 and 2259**<br><br>Hearing Date: March 3, 2010 @ 2:00 p.m.<br>Objection Deadline: February 19, 2010 @ 4:00 p.m.,<br>(extended with Debtors' consent) |

### LEAD PLAINTIFFS' LIMITED OBJECTION TO DEBTORS' MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF CERTAIN ASSETS OF DEBTORS' CVAS BUSINESSS

Lead Plaintiffs[1] in the putative securities class action captioned *David Lucescu, Individually and on Behalf of all Others Similarly Situated v. Mike Zafirovski,* Civil Action No. 09-cv-04691(SAS) (the "Securities Litigation"), filed in the United States District Court for the Southern District of New York (the "District Court"), on behalf of all persons (the "Class"), who purchased or otherwise acquired securities of Nortel Networks Corporation ("NNC"), between May 2, 2008 and September 17, 2008, inclusive, submit this limited objection (the "Objection") to Debtors' Motion for [*inter alia*] an Order Authorizing and Approving the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Application Solutions Business (Docket No. 2193) (the "Motion")[2] and state the following:

#### PRELIMINARY STATEMENT

1. Lead Plaintiffs do not object to the relief sought in the Motion (approval of the Sale), but request, as they have in connection with prior sales, that any Order granting the relief requested, in whole or in part, provide some protocol, policy or mechanism for the retention,

---

[1] Kien Chen and Moreno Minto were appointed Lead Plaintiffs on July 22, 2009.
[2] Capitalized terms shall have the meaning ascribed to them in the Motion unless defined otherwise herein.

23210/2
02/19/2010 13792757.1

preservation, maintenance and protection of books, records and other documents (as more specifically defined in note 4, *infra*), in whatever form, that may be transferred as part of the Sale and also provide for notice to Lead Plaintiffs of, and an opportunity to object to and be heard on, any efforts by the Sellers or Purchaser to destroy or abandon any of the foregoing (including those, if any, retained by Debtors). While Lead Plaintiffs and the Debtors were previously able to agree upon representations to be made on the record to resolve this issue with respect to prior sales, the Debtors have not agreed to make similar representations with respect to this Motion. Thus, the filing of this limited Objection has become necessary.

## **BACKGROUND**

2.  On January 14, 2009, NNC, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Canadian Nortel Group") commenced proceedings under the CCAA (the "Canadian Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").

3.  On January 14, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11.U.S.C. §§ 1107(a) and 1108.

4.  On January 14, 2009, Ernst & Young, Inc., the court-appointed monitor (the "Monitor") and authorized foreign representative of the Canadian Nortel Group in the Canadian Proceedings commenced proceedings under chapter 15 of title 11 of the United States Code (the "Bankruptcy Code") in this Court.

5.  On January 14, 2009, the Ontario Court issued its Initial Order (and together with subsequent amendments, the "Initial Order").

6.  On February 27, 2009, the Bankruptcy Court entered an order in the Chapter 15 Cases granting recognition to the Canadian Proceedings as foreign main proceedings and giving

full force and effect in the United States to the Initial Order of the Ontario Court (and any further amendments or extensions thereof as may be granted from time to time by the Ontario Court) (the "Recognition Order") (Docket No. 40.)

7. On May 18, 2009, David Lucescu, individually and on behalf of all others similarly situated (the "Plaintiff"), filed the Securities Litigation Complaint in the District Court for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against Mike Zafirovski and Pavi Binning (the "Non-Debtor Defendants"), former and current officers of NNC.

8. Due to the discovery stay of the Private Securities Litigation Reform Act of 1995 (the "PSLRA")[3] and the automatic bankruptcy stay, as well as the stay in the Canadian Proceedings, which currently extends to the Non-Debtor Defendants, Lead Plaintiffs have not had the opportunity to conduct formal discovery of the Debtors, the Canadian Nortel Group, their affiliates or the Non-Debtor Defendants in the Securities Litigation. Therefore, the preservation of books, records and other documents is critical.

9. On December 23, 2009, the Debtors filed the Motion seeking, *inter alia*, authority to sell certain CVAS Assets free and clear of liens pursuant to the Stalking Horse Agreement. On January 8, 2010, the Court entered an Order (Docket No. 2259), *inter alia*, approving the Debtors' entry into the Stalking Horse Agreement, approving the bid procedures and scheduling an auction for February 25, 2010, and the hearing to approve the sale (the "Sale Hearing") for March 3, 2010.

10. Lead Plaintiffs submit this limited Objection to the proposed Stalking Horse Agreement (the Asset Sale Agreement, annexed to the Motion as Exhibit A, or as may be amended (the "ASA")). GENBAND, Inc. is the proposed purchaser (the "Purchaser") under the ASA.

11. Relevant to this Objection, the ASA provides the following:

---

[3] The PSLRA discovery stay prohibits discovery until motions to dismiss have been denied.

Section 5.22. Maintenance of Books and Records.

(a) After the Closing, the Purchaser shall, and shall cause the Designated Purchasers to, preserve, until at least the fifth (5th) anniversary of the Closing Date, all pre-Closing Date records to the extent relating to the Business possessed by, or that comes (*sic*) into the possession of, such Person. After the Closing Date and up until at least the fifth (5th) anniversary of the Closing Date, upon any reasonable request from the Sellers or their representatives, the Purchaser shall, and/or shall cause the Person holding such records to, (i) provide to the Sellers or their representatives reasonable access to such records during normal business hours and (ii) permit the Sellers or their representatives to make copies of such records, in each case at no cost to the Sellers or their representatives (other than for reasonable out-of-pocket expenses). In addition, in the event that the financial statements of the Business are audited for any period prior to the Closing Date, upon execution of a customary access letter if required, the Sellers and their representatives (including their outside accountants) shall be granted access to all relevant work papers, schedules, memoranda and other documents prepared by the Business or their representatives (including outside accountants) in connection with the Sellers' completing the audit of their accounts for the 2009 fiscal year; provided, however, that nothing herein shall require the Purchaser to disclose any information to the Sellers if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Purchaser shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Sellers to occur without so jeopardizing privilege or contravening such Law, duty or agreement) or, other than as provided in Section 6.5 [Tax and Restricted Technical Records] require the Purchaser to disclose its Tax Records. Such records may be sought under this Section 5.22(a) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities disclosure or other similar needs of the Sellers (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (y) any and all such records may be destroyed by the Purchaser if the Purchaser sends to the Sellers written notice of its intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Sellers notify the destroying party that the Sellers desire to obtain possession of such

records, in which event the Purchaser shall transfer or cause to be transferred the records to the Sellers and the Sellers shall pay all reasonable expenses of the Purchaser in connection therewith, and (z) other than as provided in Section 6.5, the Purchaser shall not be required to provide the Sellers access to, or copies of, any Tax records.

(b)     After the Closing, Sellers shall preserve, until the fifth (5th) anniversary of the Closing Date, all pre-Closing Date records to the extent relating to the Business possessed by, or that comes (*sic*) into the possession of, such Person. After the Closing Date and up until the Fifth (5th) anniversary of the Closing Date, upon any reasonable request from the Purchaser, any Designated Purchaser or their respective representatives, the relevant Seller shall, and/or shall cause the Person holding such records to, (i) provide to the Purchaser, any Designated Purchaser or their respective representatives reasonable access to such records during normal business hours and (ii) permit the Purchaser, any Designated Purchaser or their respective representatives to make copies of such records, in each case at no cost to the Purchaser, any Designated Purchaser or their respective representatives (other than for reasonable out-of-pocket expenses); provided, however, that nothing herein shall require the Sellers or their Affiliates to disclose any information to the Purchaser, any Designated Purchaser or their respective representatives if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Sellers shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Purchaser, any Designated Purchaser or their respective representatives to occur without so jeopardizing privilege or contravening such Law, duty or agreement). Such records may be sought under this Section 5.22(b) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities disclosure, financing or other similar needs of the Purchaser, any Designated Purchaser or their respective representatives (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (y) any and all such records may be destroyed by the Sellers if the Sellers send to the Purchaser written notice of their intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Purchaser notifies the destroying party that the Purchaser or any Designated Purchaser desire (*sic*) to obtain possession of such records, in which event the

> Sellers shall transfer or cause to be transferred the records to the Purchaser and the Purchaser shall pay all reasonable expenses of the Sellers in connection therewith and (z) the Sellers shall not be required to provide the Purchaser, any Designated Purchaser or their respective representatives access to, or copies of, any Tax records or audited financial statements covering any pre-Closing period, except as specifically required pursuant to the terms of this Agreement.

ASA, § 5.22(a) and (b).

12. While various "books, records, files, documentation or sales literature" are excluded from the Sale, those constituting Business Information are not excluded. ASA §2.1.2(f)(i) and (iii). Business Information is defined as:

> all books, records, files, ledgers, sales literature or similar documents in the possession or under control of the Sellers and that, in each case, is used *exclusively* in connection with the Business . . .

ASA, § 1.1 (emphasis added), and such books, records and documents are included in the Sale.

## **OBJECTION**

13. As previously stated, Lead Plaintiffs do not object to the Sale provided some further protocol or mechanism is imposed for the preservation, maintenance, protection, availability and notice of the proposed destruction or abandonment of the Sellers' books, records and other documents, in whatever form, including native form (the "Books and Records"),[4] that

---

[4] Books and Records, which may contain information relevant to the claims in the Securities Litigation, also include such other assets to be sold pursuant to the Agreement including, but not limited to:
- Digital communications (*e.g.*, e-mail, voice mail, instant messaging);
- Word processed documents (*e.g.*, Word or WordPerfect documents and drafts);
- Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data fields);
- Image and Facsimile Files (*e.g.*, PDF, .TIFF, .JPEG, .GIF images);
- Sound Recordings (*e.g.*, WAV and .MP$_3$ files);
- Video and Animation (*e.g.*, AVI and .MOV files);
- Databases (*e.g.*, Access, Oracle, SQL Server data SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, ACT!)
- Calendar and Diary Application Data (*e.g.*, Outlook PST, Yahoo, blog tools);
- Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;

may be relevant to the claims asserted in the Securities Litigation and that such process or protocol be available to Lead Plaintiffs and other parties-in-interest in these proceedings.

14. The Books and Records may be relevant to the claims asserted in the Securities Litigation. Indeed, the accounting and reporting practices of the Debtors are squarely at issue in the Securities Litigation. As discussed above, the PSLRA discovery stay, the automatic stay and the stay in the Canadian Proceedings currently prohibit Lead Plaintiffs from obtaining formal discovery from the Debtors, the Canadian Nortel Group, their affiliates and the Non-Debtor Defendants in the Securities Litigation. The Sale provides no guarantee that access to the Books and Records relevant to the claims in the Securities Litigation, as well as to the claims asserted or to be asserted in the chapter 11, chapter 15 or Canadian Proceedings, will be available to third parties or that the Books and Records will be properly maintained and preserved. Therefore, some protection is required to ensure that the Books and Records are properly maintained and preserved and available to the parties to the Securities Litigation and other stakeholders, and that notice and an opportunity to be heard be given before any Books and Records are destroyed or rendered otherwise unavailable.

15. Permitting the Debtors to sell their Assets and transfer their Books and Records without appropriate protections or a protocol to ensure that access to such records remains available to third parties would unduly and inappropriately prejudice the rights of Lead Plaintiffs and the putative Class in the Securities Litigation, as well as those of other creditors and stakeholders in these proceedings.

16. Furthermore, neither the Motion nor the Agreement specifically identify the records subject to § 5.22 of the ASA. Indeed, the description of those records in the Agreement is extremely vague, ambiguous and completely subjective ("all pre-Closing Date records to the extent relating to the Business"). If certain Books and Records are not transferred to the

---

- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (*e.g.*, Zip, .GHO).

successful purchaser, they should remain with the Sellers and be maintained and preserved pursuant to the provisions of the Bankruptcy Code. There also may be books, records or documents that are transferred and are not deemed related to the Business, but which should be maintained and preserved as well and not destroyed or otherwise rendered unavailable.

17. Indeed, in connection with prior sales approved by the Court, the Debtors have represented that no *original* records would be transferred to the respective purchaser, but that only copies would be transferred. No such representation has yet been made in connection with this Sale. Moreover, the ASA provides that the Sellers have the right to retain *copies* of "any book, record, literature, list and any other written or recorded information constituting Business Information" to which the Sellers determine they may require access, ASA, following § 2.1.2(q), which appears contrary to earlier representations that no originals would be transferred.

18. To the extent that the Sellers intend not to transfer Books and Records relevant to the Securities Litigation, there is no such assurance in the current version of the ASA. Indeed, the provisions of the ASA addressing Excluded Assets do not appear to be directly tied to § 5.22 of the ASA in connection with the Purchaser's obligation to preserve "all pre-Closing Date records to the extent relating to the Business." In any event, this provision (ASA § 5.22) is subjective at best, and meaningless in light of the unilateral right of either the Sellers or Purchaser, as the case may be, to destroy "such records" on (limited) notice only to the other. This puts the Books and Records transferred pursuant to the ASA at risk and prejudices the Lead Plaintiffs and other stakeholders.

19. Because the books and records in the ASA are described in such vague and general terms (*see* ASA, § 5.22 and ¶ 16, *supra*), Lead Plaintiffs cannot determine if they include information and/or evidence potentially relevant to the claims in the Securities Litigation. Full disclosure of the books and records and a reasonable retention policy that does not allow the Sellers (to the extent bound by 11 U.S.C. § 554(a), requiring notice and a hearing before a debtor may abandon assets) or the Purchaser to destroy documents are warranted to provide Lead Plaintiffs and others an opportunity to move for appropriate relief, if necessary, to access those

Books and Records relevant to the Securities Litigation and other issues in this case.

20. The conduct of the Sellers and certain of their officers and directors leading up to the filing of the Petitions here and in the other proceedings (which conduct lead to the Securities Litigation), requires that before documents relating to their activities and operations are abandoned, destroyed or transferred, parties in interest be given the opportunity to access and examine such documents and information. At the very least, such documents must be maintained and preserved for the duration of the Securities Litigation, including any appeals, so access can be provided at the appropriate time. To the extent any party to the ASA seeks to destroy the Books and Records, reasonable notice and an opportunity to be heard must be provided to Lead Plaintiffs and other parties in interest.

## **CONCLUSION**

21. Based upon the foregoing, Lead Plaintiffs respectfully request that unless and until an appropriate protocol or other mechanism (substantially similar to that which is described herein) is in place to (i) safeguard, preserve, maintain, protect and make available the Sellers' Books and Records, including those sold or transferred pursuant to the ASA or such other asset purchase agreement that may be approved by the Court, relevant to the claims asserted in the Securities Litigation, and (ii) provide notice and an opportunity to be heard prior to any destruction or abandonment of the Books and Records, an order be entered denying the Sale and granting such other and further relief as the Court deems just and proper.

[SIGNATURE PAGE TO FOLLOW]

Dated: February 19, 2010
      Wilmington, Delaware

CROSS & SIMON LLC

By: _____
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)
kmann@crosslaw.com

-and-

**LOWENSTEIN SANDLER PC**
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs and the Putative Class*

-and-

**COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP**
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100 (Telephone)
(631) 367-1173 (Facsimile)

*Lead Counsel for Lead Plaintiffs and the Putative Class*