IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTEL NETWORKS INC., <u>et al.</u>,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No. 2388** |

**AFFIDAVIT OF MAILING**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

**PANAGIOTA MANATAKIS**, being duly sworn, deposes and says:

1. I am employed as a Noticing Coordinator by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017.  I am over the age of eighteen years and am not a party to the above-captioned action.

2. On February 5, 2010, I caused to be served a Customized version of the "Debtors' Fourth Omnibus Motion for an Order (A) Approving the Assumption and Assignment of Certain Additional Executory Contracts in Connection with the Sale of the Debtors' Enterprise Solutions Business and (B) Authorizing the Debtors to File Information Under Seal," dated February 5, 2010 [Docket No. 2388] a sample of which is annexed hereto as <u>Exhibit A</u>, consisting of the following:

    i.   the "Notice of Debtors' Fourth Omnibus Motion for an Order (A) Approving the Assumption and Assignment of Certain Additional Executory Contracts in Connection with the Sale of the Debtors' Enterprise Solutions Business and (B) Authorizing the Debtors to File Information Under Seal," dated February 5, 2010,

    ii.  "Debtors' Fourth Omnibus Motion for an Order (A) Approving the Assumption and Assignment of Certain Additional Executory Contracts in Connection with the Sale of the Debtors' Enterprise Solutions Business and (B) Authorizing the Debtors to File Information Under Seal," dated February 5, 2010, and

    iii. a Personalized Exhibit "B",

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems, Inc. (9769), Nortel Altsystems International, Inc. (5596) Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

T:\Clients\NORTEL\Affidavits\4th Omni Assumption Mtn & Ntc with Cust Exhibit B_DI_2388_Aff_2-5-10.doc

by causing true and correct copies to be enclosed securely in separate postage pre-paid envelopes and delivered via first class mail to those parties listed on Exhibit B.

3.  All envelopes utilized in the service of the foregoing contained the following legend: "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

Panagiota Manatakis

Sworn to before me this
18th day of February, 2010

Notary Public

HERBERT BAER
Notary Public, State of New York
No. 01BA6205563
Qualified in Westchester County
Commission Expires May 11, 2013

T:\Clients\NORTEL\Affidavits\4th Omni Assumption Mtn & Ntc with Cust Exhibit B_DI_2388_Aff_2-5-10.doc

**EXHIBIT A**

**EXHIBIT B**

**SCHEDULE OF CONTRACTS**

| Name and Address of Counterparty | Proposed Effective Date of Assignment | Description of Contract to be Assumed and Assigned | Cure Amount |
|---|---|---|---|
|  |  |  |  |

NOTE:  For purposes of filing, this schedule has been intentionally left blank.  Pursuant to the Motion, those parties whom the Debtors believe to be a party in interest to a Contract will receive an individualized schedule.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------X
                                    :

*In re*

NORTEL NETWORKS INC., *et al.,*[1]

                    Debtors.

----------------------------------------------------------X

|  |  |
|---|---|
| : | Chapter 11 |
| : |  |
| : | Case No. 09-10138 (KG) |
| : |  |
| : | Jointly Administered |
| : |  |
| : | **Hearing Date: February 26, 2010 at 10:00 a.m. (ET)** |
| : | **Objections Due: February 19, 2010 at 4:00 p.m. (ET)** |

**NOTICE OF DEBTORS' FOURTH OMNIBUS MOTION FOR AN ORDER
(A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
ADDITIONAL EXECUTORY CONTRACTS IN CONNECTION WITH THE
SALE OF THE DEBTORS' ENTERPRISE SOLUTIONS BUSINESS AND
(B) AUTHORIZING THE DEBTORS TO FILE INFORMATION UNDER SEAL**

        PLEASE TAKE NOTICE that the debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases, have today filed the attached **Debtors' Fourth Omnibus Motion For An Order (A) Approving The Assumption And Assignment Of Certain Additional Executory Contracts In Connection With The Sale Of The Debtors' Enterprise Solutions Business And (B) Authorizing The Debtors To File Information Under Seal** ("Motion").

        PLEASE TAKE FURTHER NOTICE that any party wishing to oppose the entry of an order approving the Motion must file a response or objection ("Objection") if any, to the Motion with the Clerk of the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 3rd Floor, Wilmington, Delaware 19801 on or before **February 19, 2010 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").

        At the same time, you must serve such Objection on counsel for the Debtors so as to be received by the Objection Deadline.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

PLEASE TAKE FURTHER NOTICE THAT A HEARING ON THE MOTION WILL BE HELD ON **FEBRUARY 26, 2010 AT 10:00 A.M. (EASTERN TIME)** BEFORE THE HONORABLE KEVIN GROSS AT THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 MARKET STREET, 6TH FLOOR, COURTROOM #3, WILMINGTON, DELAWARE 19801.  ONLY PARTIES WHO HAVE FILED A TIMELY OBJECTION WILL BE HEARD AT THE HEARING.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated:  February 5, 2010
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (*admitted pro hac vice*)
Lisa M. Schweitzer (*admitted pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_____*/s/ Ann C. Cordo*_____
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

3385921.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
                                                           :
                                                           :     Chapter 11
                                                           :
*In re*                                                    :
                                                           :     Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]                         :
                                                           :     Jointly Administered
                                   Debtors.                :
                                                           :     **Hearing date:** February 26, 2010 at 10:00 AM (ET)
                                                           :     **Objections due:** February 19, 2010 at 4:00 PM (ET)
                                                           :
                                                           :
-----------------------------------------------------------X

### DEBTORS' FOURTH OMNIBUS MOTION FOR AN ORDER (A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN ADDITIONAL EXECUTORY CONTRACTS IN CONNECTION WITH THE SALE OF THE DEBTORS' ENTERPRISE SOLUTIONS BUSINESS AND (B) AUTHORIZING THE DEBTORS TO FILE INFORMATION UNDER SEAL

### *PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND CONTRACTS ON EXHIBIT B OR EXHIBIT C.*

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 107, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the assumption and assignment of certain additional executory contracts in connection with the sale of certain assets of, and equity interests in, the Debtors' Enterprise Solutions Business to Avaya Inc. ("Avaya") as purchaser (together with its designees, the "Purchaser") in accordance with the terms and conditions of the Amended and Restated Asset and Share Sale Agreement entered into by the Debtors, certain of their affiliates, and the Purchaser dated September 14, 2009, as may be subsequently amended (the "Sale Agreement"); (b) authorizing the Debtors to file certain information under seal; and (c) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 107, 363 and 365 of the Bankruptcy Code, Rules 2002, 6004, 6006 and 9018 of the Bankruptcy Rules, and Rule 9018-1 of the Local Rules.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA was originally authorized to continue to operate as a going

concern for an initial period of three months, which period was subsequently extended to

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On November 30, 2009, the French Court extended the suspension of

liquidation for a further period of three months.  On June 26, 2009, this Court entered an order

recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main

proceedings under chapter 15 of the Bankruptcy Code.[4]

    9.    On January 26, 2009, the Office of the United States Trustee for the District of

Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to

Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless

Networks business associated with the development of Next Generation Packet Core network

components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the

Enterprise Solutions business globally, including the shares of Nortel Government Solutions

Incorporated and DiamondWare Ltd. to Avaya [D.I. 1514].  In addition, Nortel has completed

auction processes and obtained Court approval for the planned sale of substantially all the assets

of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet

Networks business unit [D.I. 2070]; as well as for the planned sale of substantially all of its

GSM/GSM-R business [D.I. 2065] (the foregoing, collectively, the "Sale Transactions").

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On

December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern

Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

D.      **The Enterprise Business Solutions Sale**

15.     Nortel's Enterprise Solutions business unit provided solutions for addressing the

communication needs of large and small businesses globally across a wide variety of industries

by building new networks and transforming existing networks into more cost-effective, packet-

based networks supporting data, voice and multimedia communications (the "Enterprise

Solutions Business").  In particular, the Enterprise Solutions Business specialized in providing

solutions that allow its customers to integrate and remove barriers between voice, email,

conferencing, video and instant messaging technologies.  Nortel's Enterprise Solutions Business

had a global presence with operations and customers in the United States, Canada, Central and

Latin America, Europe, the Middle East, Africa, and Asia.

16.     On July 20, 2009, the Debtors filed a Motion for Orders (I)(A) Authorizing

Debtors' Entry into the Asset and Share Sale Agreement, (B) Authorizing and Approving the

Bidding Procedures, (C) Authorizing and Approving a Break-Up Fee and Expense

Reimbursement, (D) Approving the Notice Procedures, (E) Approving the Assumption and

Assignment Procedures, (F) Authorizing the Filing of Certain Documents under Seal and (G)

Setting a Date for the Sale Hearing, and (II) Authorizing and Approving (A) the Sale of Certain

Assets of, and Equity Interests In, Debtors' Enterprise Solutions Business, (B) the Assumption

and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of

Certain Leases [D.I. 1131] (the "Sale Motion").[5]  The Sale Motion sought approval of the sale of

certain of the Debtors' assets and equity interests relating to the Debtors' Enterprise Solutions

Business (the "Assets"), including the assumption and assignment of certain executory contracts

to the Successful Bidder at auction, and the approval of certain bidding procedures (the "Bidding

Procedures") in connection with the proposed sale.  Following a hearing on the Bidding

Procedures, this Court entered an order on August 4, 2009 [D.I. 1278] (the "Sale Procedures

Order"), approving the Bidding Procedures to govern the sale by NNI and certain of its affiliates

(collectively, the "Sellers") of the Assets.

17.     In accordance with the Bidding Procedures, the Sellers conducted an auction that

commenced on September 11, 2009 (the "Auction").  The Successful Bid (as defined in the

Bidding Procedures) resulting from the Auction was the Sale Agreement, dated as of September

14, 2009 with Avaya as Purchaser (the "Successful Bid").

18.     On September 16, 2009, this Court entered an order approving the sale of the

Assets to the Purchaser pursuant to the Successful Bid [D.I. 1514] (the "Sale Order").  The

Canadian Court entered a corresponding order approving the sale in the Canadian Proceedings

---

[5]        Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

on the same day.  The sale of the Enterprise Solutions Business was consummated on December

18, 2009 (the "Closing Date").

## Relief Requested

19.      By this Motion, the Debtors seek an order (a) approving the assumption and

assignment of certain additional executory contracts to the Purchaser pursuant to section 365 of

the Bankruptcy Code; (b) authorizing the Debtors to file certain information under seal; and (c)

granting such other relief as the Court deems just and proper.

## Facts Relevant to this Motion

20.      As part of the Sale Order, the Court authorized the Debtors under Bankruptcy

Code section 365 to assume and assign the Assumed and Assigned Contracts to the Purchaser

which assignment and sublease shall take place on and be effective as of the Closing or such

later date as contemplated by the Sale Agreement.  The Assumed and Assigned Contracts were

defined in the Sale Agreement to include certain executory contracts (including supplier and

customer contracts) to which the Debtors were a party prior to the sale.

21.      On December 23, 2009, the Debtors had filed the Debtors' Omnibus Motion For

An Order (A) Approving the Assumption and Assignment of Certain Additional Executory

Contracts in Connection with the Sale of the Debtors' Enterprise Solutions Business and (B)

Authorizing the Debtors to File Information Under Seal [D.I. 2198].  On January 6, 2010, this

Court entered an order granting that motion [D.I. 2248].

22.      In recent weeks, the Debtors and the Purchaser became aware of a number of

additional prepetition executory contracts that are related to the Assets (the "Contracts"), the

counterparties to which (the "Contract Counterparties") have not been notified of the assumption

and assignment of such contracts pursuant to the Assignment Procedures approved by the Court

in the Sale Procedures Order.  Additionally, in recent weeks, the Debtors and the Purchaser

became aware of four motor vehicle lease agreements that are related to the Assets (the "Motor Vehicle Leases", and together with the Contracts, the "Additional Contracts"), the counterparty to which (the "Lease Counterparty", and together with the Contract Counterparties, the "Counterparties") have not been notified of the assumption and assignment of such lease agreements.  Those Motor Vehicle Leases that have been designated for assumption and assignment are set forth on Exhibit C attached hereto.  By this Motion, the Debtors seek permission to assume and assign the Additional Contracts effective as of the Closing Date.

23.    The Contracts designated for assumption and assignment to the Purchaser consist of customer contracts related to the Assets to which the Debtors are a party, including reseller agreements, sales agreements, and developer agreements.  As with other customer contracts that were assumed and assigned in connection with the sale, the identity of the Contract Counterparties constitutes an integral component of the Contracts' value.  Access to the list of Contract Counterparties absent appropriate confidentiality restrictions would entail releasing valuable confidential information of critical value not only to the Purchaser of the Assets but also to the Debtors' other businesses, which share overlapping customer lists.  Thus, publicly releasing the names of the Contract Counterparties would have an immediate detrimental impact on the value of the Assets as well as other aspects of the Debtors' business.  The Debtors will serve notice of this Motion on each of the Contract Counterparties, including a personalized schedule containing those contracts designated for assumption and assignment to which they are a Contract Counterparty.  The Debtors also are prepared to file a complete list under seal, and will provide a complete list of the Contracts to the Office of the U.S. Trustee and counsel to the Committee and the Bondholder Group.

**_Cure Amounts_**

24.    To the extent necessary to consummate a sale of the Assets as contemplated by the Sale Motion, the Debtors shall arrange for payment of the amount, if any, determined by the Debtors to be necessary to be paid to cure any existing default in accordance with section 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure Amount") promptly.  To the best of the Debtors' knowledge, there are no Cure Amounts to be paid in association with the Contracts and a total of  $1,001.28 in Cure Amounts to be paid in association with the Motor Vehicle Leases.

### *Adequate Assurance of Future Performance*

25.    The Debtors submit that the Purchaser is able to comply with section 365 of the Bankruptcy Code and to perform the obligations under the Additional Contracts.  Avaya is a leader in enterprise communications systems, providing unified communications and contact center solutions to leading businesses and organizations worldwide.  Avaya's combination of communications applications, software and services serves to help companies by integrating multiple forms of communications, including telephony, e-mail, instant messaging and video into their business practices.  Avaya employs approximately 16,000 people worldwide, including 2,300 research and development professionals, and has more than 4,000 channel partners worldwide, including system integrators, service providers, value-added resellers and business partners that provide sales and service support.  Avaya has achieved leadership positions in unified communications, including telephony systems, enterprise messaging, audio conferencing, hardware maintenance and software support services as well as contact center solutions. Additional information regarding Avaya is available on the Avaya website at www.avaya.com. A copy of the Sale Agreement is available at http://chapter11.epiqsystems.com/nortel.  Given the Purchaser's industry experience and financial wherewithal, the Debtors submit that a showing of adequate assurance has been met.

***Counterparty Objections***

26.     To the extent that any Counterparty wishes to object to any matter pertaining to the proposed assumption and assignment of the Additional Contracts, including without limitation the proposed Cure Amount and the adequate assurance of future performance by the Purchaser under the applicable Additional Contract, the Debtors propose that such Counterparty must file with this Court and serve a written objection on or before **4:00 p.m. (ET) on February 19, 2010**.

27.     All Counterparty objections must specify the grounds for such objection, including stating the Counterparty's alleged Cure Amount (including, on a transaction by transaction basis, calculations and detail of specific charges and dates, and any other amounts receivable or payable supporting such alleged Cure Amount) if the Counterparty disagrees with the Debtors' proposed Cure Amount and any other defaults or termination events the Counterparty alleges must be cured to effect assignment of the Additional Contract.

28.     To the extent that any Counterparty does not timely serve an objection as set forth above, such Counterparty will be (i) deemed to have consented to such Cure Amount, if any, and to the assumption and assignment of the applicable Additional Contract; (ii) bound to such corresponding Cure Amount, if any; (iii) deemed to have agreed that the Purchaser has provided adequate assurance of future performance within the meaning of Bankruptcy Code section 365(b)(1)(C); (iv) deemed to have agreed that all defaults under the Additional Contract arising or continuing prior to the effective date of the assignment have been cured as a result or precondition of the assignment, such that the Purchaser or the Debtors shall have no liability or obligation with respect to any default occurring or continuing prior to the assignment, and from and after the date of the assignment the Additional Contract shall remain in full force and effect

11

for the benefit of the Purchaser and the Counterparty in accordance with its terms; (v) deemed to have waived any right to terminate the Additional Contract or designate an early termination date under the applicable Additional Contract as a result of any default that occurred and/or was continuing prior to the assignment date; and (vi) deemed to have agreed that the terms of the Sale Order shall apply to the assumption and assignment of the applicable Additional Contract.

### *Reservation of Rights*

29.     The Debtors' assumption and assignment of the Additional Contracts remains subject to Court approval.  The Debtors reserve the right, in consultation with the Purchaser and subject to the Sale Agreement, to withdraw the designation of an Additional Contract for assumption and assignment prior to entry of an order approving the assumption and assignment of any Additional Contract.

30.     The Purchaser shall have no rights in and to a particular Additional Contract until such time as the particular Additional Contract is assumed and assigned.

31.     To the extent an objection to the assumption and assignment of an Additional Contract is not resolved prior to the date of a hearing on the relief sought in this Motion, including any objections related to cure, the Debtors, in consultation with the Purchaser, may elect to (i) not assume and assign such Additional Contract, or (ii) postpone the assumption and assignment of such Additional Contract until the resolution of such objection.

32.     Bankruptcy Rule 6006(e) allows for the sale of multiple contracts in one motion upon authorization of the Court.  The Debtors therefore request that the Court grant authorization to file an omnibus motion pursuant to Bankruptcy Rule 6006(f)(6).

33.     Pursuant to Section 365(f) of the Bankruptcy Code, the Debtors seek authorization and approval to assume and assign the Additional Contracts to the Purchaser

12

notwithstanding any provision to the contrary in the Additional Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment.

34.     Upon assumption of the Additional Contracts by the Debtors and assignment to the Purchaser, the Additional Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of the Order.

### Basis for Relief

**A.     The Assumption and Assignment of the Additional Assumed And Assigned Contracts Should Be Authorized**

35.     Under Bankruptcy Code section 365(a), a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for assuming an executory contract of a debtor.  This subsection provides:

> (b) (1)     If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee -
>
> > (A)     cures, or provides adequate assurance that the trustee will promptly cure, such default . . . ;
> >
> > (B)     compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
> >
> > (C)     provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).  Section 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if --

> (A)     the trustee assumes such contract or lease in accordance with the provisions of this section; and

> (B)     adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

36.     The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." EBG Midtown S. Corp. v. McLaren/Hart Envtl. Eng'g Corp. (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992); In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994); Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

37.     Among other things, adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. See, e.g., In re Bygaph, Inc., 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding adequate assurance of future performance present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business in order to give it strong likelihood of succeeding).

38.     To the extent any defaults exist under any Additional Contract, any such default will be promptly cured or adequate assurance that such default will be cured will be provided prior to the assumption and assignment. If necessary, the Debtors will submit additional facts prior to or at the hearing on this Motion to show the financial credibility of the Purchaser and willingness and ability to perform under the Additional Contracts. The hearing will therefore provide the Court and other interested parties the opportunity to evaluate and, if necessary, challenge the ability of the Purchaser to provide adequate assurance of future performance under

14

the Additional Contracts, as required under section 365(b)(1)(C) of the Bankruptcy Code.

39.     In addition, the Debtors submit that it is an exercise of their sound business judgment to assume and assign the Additional Contracts to the Purchaser, and the assumption, assignment, and sale of the Additional Contracts to the Purchaser are in the best interests of the Debtors, their estates, their creditors, and all parties in interest.  The Additional Contracts being assigned to the Purchaser are an integral part of the Assets purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Additional Contracts are reasonable and enhance the value of the Debtors' estates.  The Court should therefore authorize the Debtors to assume and assign the Additional Contracts as set forth herein.

**B.     Information Regarding the Debtors' Customers Is Confidential Commercial Information and Should Be Filed Under Seal**

40.     The Debtors propose to file the list of Contracts to be assumed and assigned under seal.

41.     The relief requested by the Debtors is squarely authorized under the Bankruptcy Code.  Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . .
> protect an entity with respect to a trade secret or confidential
> research, development, or commercial information. . . .

11 U.S.C. § 107(b).

42.     Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court
> may make any order which justice requires . . . to protect the estate
> or any entity in respect of a trade secret or other confidential
> research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.

43.     This Court has defined "commercial information" in the context of section 107(b) as follows:

> Commercial information is information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'

In re Alterra Healthcare Corp., 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d 24, 27-28 (2d Cir. 1994)).  This Court has also explained that section 107(b)'s exception to usual public disclosure mandated by section 107(a) is "intended to avoid 'affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  In re MUMA Services Inc., 279 B.R. 478, 484 (Bankr. D. Del. 2002) (citing In re Itel Corp., 17 B.R. 942, 944 (B.A.P. 9th Cir. 1982)).

44.     Since information related to the Contracts is "commercial information" within the ambit of section 107, the Court should enter an order permitting the Debtors to file under seal all confidential information related to the Contracts.

45.     The identities of the Contract Counterparties constitute confidential commercial information because they represent a significant aspect of the value of the Enterprise Solutions Business and the Assets.  Access to the list of the Contract Counterparties absent appropriate confidentiality restrictions would entail releasing confidential information of critical value not only to any prospective purchaser of the Contracts but also to the Debtors' other businesses. Therefore, it is critical to the preservation of the value of the Debtors' estates that the Court allow for this confidential information to be filed under seal.

46.     As such, the Debtors respectfully submit that the Court should permit the Debtors to file their certificate of service listing the names and addresses of such parties under seal.

**C.    Waiver of Automatic Fourteen-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

47.    Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.  Similarly, under Bankruptcy Rule 6006(d), unless the Court orders otherwise, all orders authorizing the assignment of contracts are automatically stayed for fourteen days after entry of the order.  The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.  See Advisory Committee Notes to Fed. R. Bankr. P. 6004(h); Advisory Committee Notes to Fed. R. Bankr. P. 6006(d).

48.    Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, commentators agree that the stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure.  See generally 10 Collier on Bankruptcy ¶ 6004.09 (15th ed. 1999).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  Id.

49.    As described above, the sale of the Enterprise Solutions Business was consummated on December 18, 2009.  Due to operational challenges and the complexity inherent in integrating two businesses of this size and geographic scope, it is in the Debtors' interest for the assumption and assignment of the Additional Contracts to be effective as of the Closing Date.  Thus, waiver of any applicable stays is appropriate in this circumstance.

**Notice**

50.     Notice of the Motion has been given via first-class mail, facsimile, electronic transmission, hand delivery or overnight mail to (i) counsel to the Purchaser; (ii) the Counterparties; (iii) the U.S. Trustee; (iv) the Monitor; (v) counsel to the Committee; (vi) counsel to the Bondholder Group; and (vii) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002.  The Debtors submit that under the circumstances no other or further notice is necessary.

**No Prior Request**

51.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.

Dated:  February 5, 2010          CLEARY GOTTLIEB STEEN & HAMILTON LLP
       Wilmington, Delaware

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------X
                                          :
                                          :     Chapter 11
                                          :
In re                                     :
                                          :     Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,¹            :
                                          :     Jointly Administered
                      Debtors.            :
                                          :     RE: D.I. _____
                                          :
-----------------------------------------------------X
```

**ORDER (A) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
ADDITIONAL EXECUTORY CONTRACTS IN CONNECTION WITH THE SALE OF THE
DEBTORS' ENTERPRISE SOLUTIONS BUSINESS AND  (B) AUTHORIZING
THE DEBTORS TO FILE INFORMATION UNDER SEAL**

Upon the motion dated February 5, 2010 (the "Motion"),[2] of Nortel Networks Inc. and its

affiliated debtors, as debtors and debtors in possession in the above-captioned cases (the

"Debtors"), for entry of an order, as more fully described in the Motion, pursuant to sections 105,

107, 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

6004, 6006 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and Rule 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules") (a) approving the assumption

and assignment of certain additional executory contracts in connection with the sale of certain

---

[1]       The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]       Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Sale Motion.

assets of, and equity interests in, the Debtors' Enterprise Solutions Business to Avaya Inc., as

purchaser (together with its designees, the "Purchaser"), in accordance with the terms and

conditions of the Amended and Restated Asset and Share Sale Agreement entered into by the

Debtors and the Purchaser dated September 14, 2009, (as may be subsequently amended, the

"Sale Agreement"); (b) authorizing the Debtors to file certain documents under seal; and (c) and

granting them such other and further relief as the Court deems just and proper; and adequate

notice of the Motion having been given as set forth in the Motion; and it appearing that no other

or further notice is necessary; and the Court having jurisdiction to consider the Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having determined

that consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the

Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief requested in the Motion, and that such relief is in the best interests of the

Debtors, their estates, their creditors and the parties in interest; and upon the record in these

proceedings; and after due deliberation it is hereby

FOUND AND DETERMINED THAT:[3]

A.      The Debtors have demonstrated that it is an exercise of their sound

business judgment to assume and assign the Additional Contracts to the Purchaser in connection

with the consummation of the Sale, and the assumption, assignment, and sale of the Additional

Contracts is in the best interests of the Debtors, their estates, their creditors, and all parties in

interest.  The Additional Contracts being assigned to the Purchaser are an integral part of the

Assets being purchased by the Purchaser, and accordingly, the assumption, assignment and sale

---

[3]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

of the Additional Contracts is reasonable and enhances the value of the Debtors' estates.  The

cure amounts, if any, required to be paid pursuant to section 365(b) that are mutually agreed to

be paid by the Debtors and the counterparty to the applicable Additional Contract or ordered to

be paid by this Court (the "Cure Amounts") are deemed the entire cure obligation due and owing

under the Additional Contracts under Bankruptcy Code section 365.

        B.      Each and every provision of the Additional Contracts or applicable non-

bankruptcy law that purport to prohibit, restrict, or condition, or could be construed as

prohibiting, restricting, or conditioning assignment of any Additional Contract have been

satisfied or are otherwise unenforceable under Bankruptcy Code section 365.

        C.      Upon the payment of the Cure Amount, there are no outstanding defaults

of the Debtors and their estates under the Additional Contracts.

        D.      The Purchaser has demonstrated adequate assurance of future performance

of all Additional Contracts within the meaning of Bankruptcy Code section 365.

        E.      Upon the assignment and sale to the Purchaser, the Additional Contracts

shall be deemed valid and binding, in full force and effect in accordance with their terms, subject

to the provisions of this Order.

        ORDERED, ADJUDGED AND DECREED THAT:

        1.      The relief requested in the Motion is GRANTED.

        2.      Pursuant to Bankruptcy Code sections 105(a), 363 and 365, the Debtors'

assumption and assignment to the Purchaser of the Additional Contracts, and the Purchaser's

acceptance of such assignments on the terms set forth in the Sale Agreement, are hereby

approved.  The Additional Contracts, whether entered into or amended before or after the

Petition Date, shall be deemed to have been assumed and assigned to the Purchaser as of the

Closing Date, free and clear of all Interests of any kind or nature whatsoever other than the

Assumed Liabilities on the terms set forth in the Sale Agreement, and shall remain in full force

and effect for the benefit of the Purchaser in accordance with their respective terms,

notwithstanding any provision in any such Additional Contracts (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, limits or

conditions such assignment.  Pursuant to Bankruptcy Code section 365(k), the Debtors shall be

relieved from any further liability with respect to the Additional Contracts following assignment

to the Purchaser.  Debtors are hereby authorized to execute and perform under any other

agreement executed in connection with the transfer of the Transferred Property to the Purchaser,

and to execute and deliver to the Purchaser such documents or other instruments as may be

necessary to assign to Purchaser the Additional Contracts.

       3.     As of the Closing Date, subject to the provisions of this Order, the

Purchaser shall be deemed to have succeeded to the entirety of the Debtors' rights and

obligations in the Additional Contracts first arising and attributable to the time period occurring

on or after the Closing Date and shall have all rights thereunder.

       4.     Upon entry of this Order, subject to Avaya's payment of $1,001.28 to the

Lease Counterparty under the Motor Vehicle Leases, all defaults under the Motor Vehicle Leases

shall be deemed cured, and the Debtors and their estates shall have no further liability under the

Motor Vehicle Leases whatsoever.

       5.     The Cure Amounts with respect to each Additional Contract shall

constitute findings of the Court and shall be final and binding on parties to such Additional

Contracts (and their successors and designees), and shall not be subject to further dispute or audit

based on performance prior to the time of assumption and assignment, irrespective of the terms

4

and conditions of such Additional Contract.  Upon the assumption and assignment of the

Additional Contract, each counterparty to an Additional Contract shall be forever barred,

estopped and permanently enjoined from (i) asserting against the Debtors or the Purchaser, or the

property of either of them, any default existing as of the Closing Date; or, against the Purchaser,

any counterclaim, defense, setoff or any other Interest asserted or assertable against the Debtors;

and (ii) imposing or charging against the Purchaser Releasees any accelerations, assignment fees,

increases or any other fees as a result of the Debtors' assumption and assignments to Purchaser

of the Additional Contracts.

6.      To the extent that any counterparty failed to object to the Cure Amount

with respect to an Additional Contract, such counterparty shall be deemed to have consented to

the applicable Cure Amount, and the assignment to Purchaser of such Additional Contract.

7.      Pursuant to sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy

Code, the Debtors have provided adequate assurance to the Counterparties of the Purchaser's

future performance under the Additional Contracts.

8.      Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any

provision to the contrary in the Additional Contracts, or in applicable non-bankruptcy law, that

prohibits, restricts, or conditions the assignment of the Additional Contracts, the Debtors may

assign the Additional Contracts to the Purchaser.

9.      Upon assumption of the Additional Contracts by the Debtors and

assignment to the Purchaser, the Additional Contracts shall be deemed valid and binding, in full

force and effect in accordance with their terms, subject to the provisions of this Order.

10.     All Counterparties to the Additional Contracts shall cooperate and

expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not

charge the Purchaser for, any instruments, applications, consents, or other documents which may

be required or requested by any public or quasi-public authority or other party or entity to

effectuate the applicable transfers in connection with the Transactions.

11.     The Court recognizes that the list of Contracts and affidavits of service

that identify the Debtors' customers constitute confidential commercial information, and

therefore authorizes that any such lists and affidavits to be filed in connection with this Motion

may be filed under seal.

12.     The Debtors shall provide the unredacted list of Contracts and affidavits of

service that identify the Debtors' customers to the Clerk's Office of the United States

Bankruptcy Court for the District of Delaware in a prominently marked envelope with a cover

sheet attached containing (i) the caption, (ii) the docket number of the Motion, (iii) the docket

number of this Order, (iv) the title of the list of Additional Contracts and affidavits of service that

identify the Debtors' customers, and (v) the legend "DOCUMENTS TO BE KEPT UNDER

SEAL" in bold print.

13.     Pursuant to Bankruptcy Rule 6006(f)(6), the Court hereby authorizes the

Debtors to file an omnibus motion incorporating all the executory contracts to be assumed and

assigned pursuant to section 365 of the Bankruptcy Code.

14.     This Order shall be effective immediately upon entry, and any stay of

orders provided for in Bankruptcy Rules 6004 or 6006 or any other provision of the Bankruptcy

Code or the Bankruptcy Rules is expressly lifted.

15.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, (i)

the terms of this Order shall be immediately effective and enforceable upon its entry, (ii) the

Debtors are not subject to any stay in the implementation, enforcement or realization of the relief

granted in this Order, and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

16.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
        Wilmington, Delaware
                                        _____
                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

**SCHEDULE OF MOTOR VEHICLE LEASES**

| Name and Address of Counterparty | Proposed Effective Date of Assignment | Description of Additional Contract to be Assumed and Assigned | Cure Amount |
|---|---|---|---|
| ARI Fleet LT<br>9000 Midlantic Drive<br>P.O. Box 5039<br>Mt Laurel, NJ 08054 | December 18, 2009 | Motor Vehicle Lease Agreement (2005 Chevrolet - 25087) | $156.65 |
| ARI Fleet LT<br>9000 Midlantic Drive<br>P.O. Box 5039<br>Mt Laurel, NJ 08054 | December 18, 2009 | Motor Vehicle Lease Agreement (2005 Chevrolet - 25088) | $156.65 |
| ARI Fleet LT<br>9000 Midlantic Drive<br>P.O. Box 5039<br>Mt Laurel, NJ 08054 | December 18, 2009 | Motor Vehicle Lease Agreement (2005 GMC - 25101) | $477.65 |
| ARI Fleet LT<br>9000 Midlantic Drive<br>P.O. Box 5039<br>Mt Laurel, NJ 08054 | December 18, 2009 | Motor Vehicle Lease Agreement (2005 Chevrolet - 25102) | $210.33 |

# EXHIBIT B

NNI ASSUMPTION ADDS 2-5-10
AKIN GUMP
ATTN: FRED S. HODARA, ESQ.; RYAN C. JACOBS
ONE BRYANT PARK
NEW YORK, NY  10036

NNI ASSUMPTION ADDS 2-5-10
OFFICE OF THE U.S. TRUSTEE
ATTN: PATRICK TINKER, ESQ.
844 KING STREET, SUITE 2207
LOCKBOX 35
WILMINGTON, DE  19801-3519

NNI ASSUMPTION ADDS 2-5-10
MILBANK TWEED HADLEY & MCCLOY LLP
ATTN: DENNIS F. DUNNE, ESQ.; THOMAS R.
KRELLER, ESQ; ALBERT A. PISA, ESQ.; ANDREW M.
LEBLANC, ESQ.
ONE CHASE MANHATTAN PLAZA
NEW YORK, NY  10005