# APPENDIX "E"

[Attached]

167

# GUARANTEE

DATED 21 November 2006

BY

NORTEL NETWORKS LIMITED

FOR

NORTEL NETWORKS UK PENSION TRUST LIMITED
AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN

CERTIFIED TO BE A TRUE AND COMPLETE
COPY OF THE ORIGINAL
DATED THIS 23rd DAY OF November 2006

Pinsent Masons...... Pinsent Masons.

1

THIS GUARANTEE is dated    21 November    2006    168

BETWEEN:

(1)    Nortel Networks Limited (a company registered in Canada with number 125147-3 and principal place of business at 195 The West Mall, Toronto, Ontario, M9C 5K1 ) (the "Guarantor"); and

(2)    Nortel Networks UK Pension Trust Limited (a company registered in England and Wales with number 2091890 whose registered office is at Maidenhead Office Park, Westacott Way, Littlewick Green, Maidenhead, Berkshire, SL6 3QH) as trustee of the Nortel Networks UK Pension Plan (the "Beneficiary").

IT IS AGREED as follows:

1.    INTERPRETATION

1.1    Definitions

In this Agreement:

Agreement means this Guarantee.

Business Day means a day (other than a Saturday or a Sunday) on which banks are open for general business in both (i) Toronto, Ontario, Canada and (ii) London, England.

Company means Nortel Networks UK Limited (registered in England and Wales with number 03937799) whose registered office is at Maidenhead Office Park, Westacott Way, Littlewick Green, Maidenhead, Berkshire, SL6 3QH.

Demand means a written demand made by the Beneficiary to the Guarantor in the form set out at Schedule 1 to this Agreement.

Expiry Date means the earlier of:

(a)    30 June 2012;

(b)    termination (in full or in part) of the Funding Agreement in the circumstances set out in clause 12 of the Funding Agreement; and

(c)    the payment in full of all Guaranteed Obligations.

Funding Agreement means the funding agreement made between the Company and the Beneficiary in respect of the Scheme dated on or about the date of this Agreement.

Guaranteed Obligations means the payment obligations and liabilities of the Company to the Beneficiary under or in connection with clauses 3.2, 3.3 and 4.2 of the Funding Agreement but, for the avoidance of doubt, not including obligations referred to in clauses 5 or 6 of the Funding Agreement.

Insolvency Act means the Insolvency Act 1986, an Act of Parliament of England & Wales.

Material Adverse Effect means a material adverse effect on:

2

    (a)    the ability of the Guarantor to perform its payment obligations under this Agreement;

    (b)    the validity or enforceability of this Agreement;

    (c)    any right or remedy of the Beneficiaries under this Agreement.

**NNC** means Nortel Networks Corporation, a company registered in Canada with number 375438-3 with a principal place of business at The West Mall, Toronto, Ontario, M9C 5KL .

**Pensions Act** means the Pensions Act 2004, an Act of Parliament of England & Wales.

**Reservations** means:

    (a)    the principle that equitable remedies are remedies which may be granted or refused at the discretion of the court and damages may be regarded as an adequate remedy;

    (b)    the limitation on enforcement as a result of laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws affecting the rights of creditors generally;

    (c)    the statutory time-barring of claims;

    (d)    defences of set off or counterclaim;

    (e)    rules against penalties and similar principles;

    (f)    the possibility that an undertaking to assume liability for, or indemnify a person against, non-payment of stamp duty may be void;

    (g)    the fact that a court may refuse to give effect to a purported contractual obligation to pay costs imposed upon another person in respect of costs of an unsuccessful litigation brought against that person or may not award by way of costs all of the expenditure incurred by a successful litigant in proceedings brought before that court or that a court may stay proceedings if concurrent proceedings based on the same grounds and between the same parties have previously been brought before another court,

and any other reservations or qualifications of law contained in any legal opinion delivered to the Company, the Beneficiary or the Guarantor in respect of this Agreement.

**Scheme** means the Nortel Networks UK Pension Plan currently governed by the Consolidated Definitive Trust Deed and Rules made between the Company and the Beneficiary dated 21 August 2003 (as supplemented or amended from time to time).

**Seizure Event** has the meaning given to it in the Funding Agreement.

**Trigger Event** means the Company failing to pay any amount payable by it to the Beneficiary when contractually due pursuant to the terms of clauses 3.2, 3.3 and 4.2 of the Funding Agreement within a period of 10 Business Days following receipt of a written notification from the Beneficiary that such payment is overdue.

1.2    **Construction**

    (a)    In this Guarantee, unless the contrary intention appears, a reference to:

(i)     assets includes present and future properties, revenues and rights of every description;

170

(ii)     an **authorisation** includes an authorisation, consent, approval, resolution, licence, exemption, filing, registration or notarisation;

(iii)     a **person** includes any individual, company, corporation, unincorporated association or body (including a partnership, trust, joint venture or consortium), government, state, agency, organisation or other entity whether or not having separate legal personality;

(iv)     a **regulation** includes any regulation, rule, official directive, request or guideline (whether or not having the force of law but, if not having the force of law, being of a type with which persons to which it applies are accustomed to comply) or any governmental, inter-governmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(v)     a **currency** is a reference to the lawful currency for the time being of the relevant country;

(vi)     a **provision of law** is a reference to that provision as extended, applied, amended or re-enacted and includes any subordinate legislation;

(vii)     a Clause, a Subclause or a Schedule is a reference to a clause or subclause of, or a schedule to, this Agreement;

(viii)     a party to this Agreement or any other person includes its successors in title, permitted assigns and permitted transferees; and

(ix)     a **time of day** is a reference to London time.

(b)     Unless the contrary intention appears, a reference to a **month** or **months** is a reference to a period starting on one day in a calendar month and ending on the numerically corresponding day in the next calendar month or the calendar month in which it is to end, except that:

(i)     if the numerically corresponding day is not a Business Day, the period will end on the next Business Day in that month (if there is one) or the preceding Business Day (if there is not);

(ii)     if there is no numerically corresponding day in that month, that period will end on the last Business Day in that month; and

(iii)     notwithstanding subparagraphs (i) and (ii) above, a period which commences on the last Business Day of a month will end on the last Business Day in the next month or the calendar month in which it is to end, as appropriate.

(c)     The headings in this Agreement do not affect its interpretation.

4                                                                                    171

## 2.    GUARANTEE

### 2.1   Guarantee

Subject at all times to Clauses 2.2 and 3.6, the Guarantor irrevocably and unconditionally guarantees to the Beneficiary punctual performance by the Company of the Guaranteed Obligations, when due, in the event that:

(a)    a Trigger Event occurs; and

(b)    a Demand is subsequently delivered to the Guarantor.

### 2.2   Limitations

(a)    The guarantee contained in this Agreement is given subject as follows:

    (i)    any Demand made under this Agreement shall be addressed to the Guarantor and shall be delivered if given in person at or sent by registered delivery post, courier or fax to the address or fax number set out in clause 8.2 of this Agreement or such other address or fax number as may be notified in writing by the Guarantor to the Beneficiary from time to time by not less than 7 days' notice. A Demand served by fax shall only be deemed to be received by the Guarantor if the Beneficiary has obtained a successful delivery receipt for the transmission;

    (ii)   no amendment of the Funding Agreement, or other agreement between the Company and the Beneficiary, shall have the effect of increasing the Guaranteed Obligations or accelerating the time for payment thereof, unless the Guarantor has agreed in writing to any such amendment and this Guarantee is amended accordingly;

    (iii)  no Demand may be made under this Agreement after 11a.m. (London time) on the Expiry Date; and

    (iv)   notwithstanding any other provision of this Agreement, in the event that the Company or any persons connected with or associated to it (as such terms are defined in sections 249 and 435 of the Insolvency Act) (which shall include, for the avoidance of doubt, the Guarantor, NNC and any of NNC's subsidiary companies and corporations) make any contributions to the Scheme under a contribution notice or financial support direction issued by the United Kingdom Pensions Regulator under the provisions of Part 1 Pensions Act, or otherwise, such contributions shall reduce the Guaranteed Obligations on a pound-for-pound basis.

### 2.3   Supporting indemnity

(a)    In addition to its guarantee under Clause 2.1 (and subject at all times to Clauses 2.2 and 3.6), the Guarantor indemnifies the Beneficiaries against any loss or liability properly suffered by the Beneficiaries if any of the Guarantor's payment obligations under the guarantee contained in Clause 2.1 become unenforceable, invalid or illegal.

(b)    The amount of the loss or liability under this indemnity will be equal to the amount the Beneficiaries would otherwise have been entitled to recover (including, but

without limitation, pursuant to clause 9 had such guarantee obligations not become unenforceable, invalid or illegal (as the case may be).

172

(c)     For the avoidance of doubt, nothing in this indemnity shall entitle the Beneficiaries to recover (i) any sum from the Guarantor that relates to a Guaranteed Obligation that has ceased to exist or (ii) any amount which the Company is not liable to pay as part of, or for failing to perform, the Guaranteed Obligations.

## 2.4    Continuing guarantee

This guarantee is a continuing guarantee and will extend to the ultimate balance of all sums payable by the Company in respect of its Guaranteed Obligations and shall continue in full force and effect until the Expiry Date.

## 2.5    Reinstatement

If any discharge or arrangement is made in whole or in part on the faith of any payment, security or other disposition which is avoided or must be restored on insolvency, liquidation or otherwise without limitation, the liability of the Guarantor under this Clause will continue as if the discharge or arrangement had not occurred.

## 2.6    Waiver of defences

Subject to Clauses 2.2 and 3.6, the obligations of the Guarantor under this Clause will not be affected by any act, omission or thing which, but for this provision, would reduce, release or prejudice any of its obligations under this Clause. This includes:

(a)     any time or waiver granted to, or composition with, any person;

(b)     any release of any person under the terms of any composition or arrangement (other than a release by the Beneficiary of the Company from its obligations under the Funding Agreement);

(c)     the taking, variation, compromise, exchange, renewal or release of, or refusal or neglect to perfect, take up or enforce, any rights against, or security over assets of, any person;

(d)     any non-presentation or non-observance of any formality or other requirement in respect of any instrument or any failure to realise the full value of any security (other than a failure to present a Demand as required by this Agreement);

(e)     any incapacity or lack of power, authority or legal personality of or dissolution or change in the members or status of any person;

(f)     any amendment (however fundamental) of the Funding Agreement provided that no such amendment shall have the effect of increasing the Guaranteed Obligations or accelerating the time for payment thereof unless the Guarantor has agreed in writing to any such amendment and this Guarantee is amended accordingly; or

(g)     any unenforceability, illegality, invalidity or non-provability of any Guaranteed Obligation due in any such case to the insolvency, bankruptcy, reorganisation, or liquidation of the Company.

173

6

### 2.7    Subrogation/Non-competition

Upon payment of any of the Guaranteed Obligations by or on behalf of the Guarantor, the Guarantor (or its nominee) shall thereupon be subrogated to the rights and benefits of the Beneficiary under the Funding Agreement provided that such subrogated rights of the Guarantor (or its nominee) shall be and remain subject and subordinate to the rights of the Beneficiary as provided in this Clause 2.7. Unless:

(a)    all amounts which may be or become payable by the Company to the Beneficiary pursuant to clauses 3 and 4 of the Funding Agreement have been irrevocably paid in full; or

(b)    the Beneficiary otherwise directs,

the Guarantor will not, during a period following the service of a Demand and only while the same Demand remains unsatisfied in full:

(i)    exercise any rights in the nature of subrogation with respect to any rights, security or moneys held, received or receivable by any Beneficiary (or any trustee or agent on its behalf);

(ii)    exercise any right of contribution or indemnity in respect of any payment made or moneys received on account of the Guarantor's liability under this Clause;

(iii)    claim, rank, prove or vote as a creditor of the Company or its estate in competition with the Beneficiary (or any trustee or agent on their behalf) provided however that subject to the final sentence of this Clause 2.7 the Guarantor shall not be prohibited from filing or proving any such claim to the extent (A) that the Guarantor would otherwise be barred from proving or asserting such claim later if application is not made during such period, and (B) the rights of the Guarantor under any such claim are, during such period, subordinate to the rights of the Beneficiary and any distribution received on account of any such claim during such period is held in trust for the benefit of the Beneficiary and transferred to the Beneficiary in accordance with the final sentence of this Clause 2.7; or

(iv)    receive, claim or have the benefit of any payment, distribution or security from or on account of the Company (except as provided in the immediately-preceding sub-clause), or exercise any right of set-off as against the Company.

The Guarantor must hold in trust for and immediately pay or transfer to the Beneficiary any payment or distribution or benefit of security received by it during such period contrary to this Clause or in accordance with any directions given by the Beneficiary under this Clause.

### 3.    PAYMENTS

### 3.1    Due date for payments

(a)    Any payment due from the Guarantor to the Beneficiary following the service of a Demand under this Agreement shall be due within 10 Business Days of the date of delivery of such Demand on the Guarantor by the Beneficiary.

7

(b)   For the avoidance of doubt, provided the requirements of Clause 2.1 of this Agreement have been satisfied when making a Demand and subject to Clause 3.6, it is not necessary for the Beneficiary to have taken court action against the Company to recover the Guaranteed Obligations before such Demand will become payable by the Guarantor.

174

## 3.2   Funds

Payments under this Agreement to the Beneficiary must be made for value on the due date at such times and in such manner as the Beneficiary may specify to the Guarantor in a Demand.

## 3.3   Currency

Any amount payable under this Agreement is payable in Sterling.

## 3.4   No set-off or counterclaim

All payments made by the Guarantor under this Agreement must be made without set-off or counterclaim.

## 3.5   Business Days

If a payment under this Agreement is due on a day which is not a Business Day, the due date for that payment will instead be the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not).

## 3.6   No Double Recovery or Greater Recovery

(a)   For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor an amount of the Guaranteed Obligations which has been paid by the Company to the Beneficiary, except insofar as payment of the amount concerned by the Company is or is claimed to be, by reason of the operation of any law relating to insolvency, bankruptcy or reorganization, void, voidable, unenforceable, or is otherwise required to be disgorged.

(b)   For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor any amount which the Company is not liable to pay as part of, or for failing to perform, the Guaranteed Obligations and any limitations on the Company's liability under the Funding Agreement will equally apply to the Guarantor's liability under this Agreement.

## 4.   REPRESENTATIONS AND UNDERTAKING

### 4.1   Representations

The representations set out in this Clause are made as of the date hereof by the Guarantor to the Beneficiary.

### 4.2   Status

The Guarantor is a corporation, duly incorporated and validly existing under the laws of Canada.

8

175

### 4.3 Powers and authority

The Guarantor has the power to enter into and perform, and has taken all necessary action to authorise the entry into and performance of, this Agreement and the transactions contemplated by this Agreement.

### 4.4 Legal validity

Subject to the Reservations, this Agreement is a legally binding obligation of the Guarantor, enforceable in accordance with its terms.

### 4.5 Non-conflict

The entry into and performance by the Guarantor of, and the transactions contemplated by, this Agreement do not conflict with:

(a)     any law or regulation applicable to the Guarantor; or

(b)     the Guarantor's constitutional documents; or

(c)     any agreement binding on the Guarantor to the extent that such conflict would result in a Material Adverse Effect.

### 4.6 No default

The Guarantor is not in default under any agreement binding on the Guarantor to an extent or in a manner which would result is a Material Adverse Effect.

### 4.7 Pari passu ranking

The Guarantor's payment obligations under this Agreement rank at least pari passu in right of payment with all its other present unsecured payment obligations, except for obligations mandatorily preferred by law.

### 4.8 Times for making representations

The representations set out in this Clause are made by the Guarantor on and as of the date of this Agreement.

### 4.9 Undertaking

The Guarantor undertakes with the Beneficiary that it shall not, in any contractual obligations it enters into in the future with its other unsecured creditors, agree to any explicit contractual term that ranks the Guarantor's payment obligations to such unsecured creditors ahead of the Guarantor's payment obligations under this Agreement, except for such obligations that must be mandatorily preferred by law.

## 5.    CHANGES TO THE PARTIES

(a)     The Guarantor may not assign or transfer any of its rights and obligations under this Agreement other than with the prior written consent of the Beneficiary.

(b)     The Beneficiary may not assign or transfer any of their rights and obligations under this Agreement other than with the prior written consent of the Guarantor save that the Beneficiary's rights under this Agreement may be transferred in their entirety, but

not in part, to any person or persons who may, from time to time and for the time being, be appointed as trustee or trustees of the Scheme pursuant to any appropriate trust deed, or pursuant to any statutory authority (such person being a "Successor Trustee"). The Beneficiary shall promptly thereafter give written notice to the Guarantor of the appointment of the Successor Trustee such notice to be signed by the Beneficiary and the Successor Trustee. With effect from the date of delivery of such notice, the Successor Trustee shall assume all the Beneficiary's rights and obligations under this Agreement and this Agreement shall be construed as if all references to the Beneficiary were replaced by references to the Successor Trustee. The obligations of the Guarantor under this Agreement shall remain unaltered by such transfer and replacement.

6.    SEVERABILITY

If a term of this Agreement is or becomes illegal, invalid or unenforceable in any jurisdiction, that shall not affect:

(a)    the legality, validity or enforceability in that jurisdiction of any other term of this Agreement; or

(b)    the legality, validity or enforceability in other jurisdictions of that or any other term of this Agreement.

7.    COUNTERPARTS

This Agreement may be executed in any number of counterparts and by the parties to it on separate counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

8.    NOTICES

8.1    In writing

(a)    Any communication in connection with this Agreement must be in writing and, unless otherwise stated, may be given in person, by post or fax.

(b)    Unless it is agreed to the contrary, any consent or agreement required under this Agreement must be given in writing.

8.2    Contact details

(a)    The contact details of the Guarantor for this purpose are:

Address:        Nortel Networks Limited
                MS T0503010
                195 The West Mall
                Toronto, Ontario, M9C 5K1
                Canada
Fax number:     +001 (905)-863-2486
Attention:      Treasurer.

With a copy to:

Address:        Nortel Networks Limited

10                                                                                          177

>
MS T0503005
195 The West Mall
Toronto, Ontario M9C 5K1
Canada

Fax number:    +001 (905) 863-7386
Attention:     General Counsel - Corporate

(b)    The contact details of the Beneficiary are:

Address:       Nortel Networks UK Pension Trust Limited
               Maidenhead Office Park
               Westacott Way
               Maidenhead
               Berkshire
               SL6 3QH

Fax number:    +44 (0)1628 432 872
E-mail:        louiseha@nortel.com
               with a copy to clive.gilchrist@bestrustees.co.uk
Attention:     Louise Hammond – UK Pensions Manager

8.3    **Effectiveness**

(a)    Except as provided below, any Demand or communication in connection with this Agreement will be deemed to be delivered or given as follows:

   (i)    if delivered in person, at the time of delivery;

   (ii)   if posted, five days after being deposited in the post, postage prepaid, registered and with return receipt requested, in a correctly addressed envelope; and

   (iii)  if by fax, when received in legible form with transmission confirmed by a generated transmission receipt.

(b)    A communication given under paragraph (a) above but received on a non-working day or after business hours in the place of receipt will only be deemed to be given on the next working day in that place.

9.    **TAXES**

9.1    **General**

In this Clause:

**Tax** means any tax, levy, impost, duty or other charge or withholding of a similar nature (including any related penalty or interest).

**Tax Deduction** means a deduction or withholding for or on account of Tax from a payment under this Agreement.

11

**9.2    Tax gross-up**

(a)    If the Guarantor is aware that it must make a Tax Deduction (or that there is a change in the rate or the basis of a Tax Deduction), it must promptly notify the Beneficiary.

(b)    If:

    (i)    a Tax Deduction is required by law to be made by the Guarantor or the Beneficiary; and

    (ii)    such Tax Deduction would not have been required to be made if the relevant underlying payment was being made by the Company (and not the Guarantor),

    then the amount of the payment due from the Guarantor will be increased to an amount which (after making the Tax Deduction) leaves an amount equal to the payment which would have been due if no Tax Deduction had been required.

(c)    If the Guarantor is required to make a Tax Deduction required by law, the Guarantor must make the Tax Deduction and must make any payment required in connection with that Tax Deduction within the time allowed by law.

(d)    Prior to 31 March of the calendar year following either a Tax Deduction or a payment required in connection with a Tax Deduction, the Guarantor must deliver to the Beneficiary evidence satisfactory to the Beneficiary (acting reasonably) that the Tax Deduction has been made or (as applicable) the appropriate payment has been paid to the relevant taxing authority.

9.3    If the Guarantor pays any such additional amount as is referred to in clause 9.2 in respect of any Tax Deduction and the Beneficiary determines that the Scheme has received a credit or refund for any Tax Deduction, the Beneficiary will (to the extent that it can do so without prejudice to the retention of such credit or refund and to the extent that it is not unlawful or contrary to any official regulation or directive for it to do so and provided that (i) no Seizure Event has occurred and is continuing in respect of the Parent, and (ii) no amount due and payable to the Beneficiary under either this Agreement or the Funding Agreement remains unpaid) reimburse the Guarantor with such amount (if any) as the Beneficiary determines will leave the Guarantor (after such reimbursement) in no better or worse position that it would have been in if the Guarantor had not been required to make such Tax Deduction.

**10.    LANGUAGE**

Any notice given in connection with this Agreement must be in English.

**11.    GOVERNING LAW**

This Agreement is governed by English law.

**12.    ENFORCEMENT**

**12.1    Jurisdiction**

(a)    The courts of England have exclusive jurisdiction to settle any dispute in connection this Agreement (including a dispute regarding the existence, validity or termination of this Agreement).

12

179

 (b)  The parties agree that the courts of England are the most appropriate and convenient courts to settle any such dispute and accordingly no party will argue to the contrary.

 (c)  This Clause is for the benefit of the Beneficiary only. As a result, to the extent permitted by law, a Beneficiary may take:

  (i)  proceedings in any other court; and

  (ii)  concurrent proceedings in any number of jurisdictions.

## 12.2  Waiver of immunity

The Guarantor irrevocably and unconditionally:

 (a)  agrees not to claim any immunity from proceedings brought by a Beneficiary against it in relation to this Agreement and to ensure that no such claim is made on its behalf;

 (b)  consents generally to the giving of any relief or the issue of any process in connection with those proceedings; and

 (c)  waives all rights of immunity in respect of it or its assets.

This Agreement has been entered into on the date stated at the beginning of this Agreement.

**SCHEDULE 1**

**FORM OF DEMAND**

180

To:    Nortel Networks Limited

Guarantee in respect of the Nortel Networks UK Pension Plan dated [●] 2006 (the "Guarantee")

We refer to the Guarantee. Terms defined in the Guarantee shall bear the same meaning in this letter.

We certify that a Trigger Event has occurred.

We demand payment of the sum of £[●] (the "Requested Amount") and confirm that the Requested Amount is equal to or less than the Guaranteed Obligations.

The Requested Amount should be made the following account:

Name: [●]

Bank: [●]

Account number: [●]

Sort Code: [●]

Yours faithfully

For and on behalf of
Nortel Networks UK Pension Trust Limited as trustee of the Nortel Networks UK Pension Plan

14

181

SIGNATORIES

Guarantor

EXECUTED AS A DEED by          )
NORTEL NETWORKS LIMITED        )
acting by                      )

By: _____
Name: _____
Title: _____

and

By: _____
Name: _____
Title: _____

Beneficiary

EXECUTED as a deed by          )
NORTEL NETWORKS UK             )
PENSION TRUST LIMITED          )
acting by                      )

Director          _Kenneth Rennue_

Director/Secretary

**APPENDIX "F"**

[Attached]

182

# GUARANTEE

DATED *21 DECEMBER* 2007

BY

NORTEL NETWORKS LIMITED

FOR

NORTEL NETWORKS UK PENSION TRUST LIMITED
AS TRUSTEE OF THE NORTEL NETWORKS UK PENSION PLAN

We hereby certify that this is a true
and accurate copy of the original
dated this *19* day of *FEBRUARY*
*Osborne Clarke* *2008*
Osborne
2 Temple
Temple Quay
Bristol BS1 6EG

183

## CONTENTS

Clause

1.........................................................................................................Interpretation
2.................................................................................................................Guarantee
3.................................................................................................................Payments
4.......................................................................Representations and Undertaking
5.............................................................................................Changes to the Parties
6.............................................................................................................Severability
7.............................................................................................................Counterparts
8...................................................................................................................Notices
9......................................................................................................................Taxes
10..................................................................................................................Language
11............................................................................................Governing law
12........................................................................................................Enforcement

Schedules

Form of Demand


Signatories

184

THIS GUARANTEE is dated *21 DECEMBER*                    2007

BETWEEN:

(1)    Nortel Networks Limited (a company registered in Canada with number 125147-3 and principal place of business at 195 The West Mall, Toronto, Ontario, M9C 5K1) (the "Guarantor"); and

(2)    Nortel Networks UK Pension Trust Limited (a company registered in England and Wales with number 2091890 whose registered office is at Maidenhead Office Park, Westacott Way, Maidenhead, Berkshire, SL6 3QH) as trustee of the Nortel Networks UK Pension Plan (the "Beneficiary").

IT IS AGREED as follows:

1.    INTERPRETATION

1.1    Definitions

In this Agreement:

Agreement means this Guarantee.

Business Day means a day (other than a Saturday or a Sunday) on which banks are open for general business in both (i) Toronto, Ontario, Canada and (ii) London, England.

Buy Out Deficit means the difference in the value of the Scheme's liabilities and assets measured in accordance with the Occupational Pension Schemes (Employer Debt) Regulations 2005 (UK Statutory Instrument No. 2005/678) and certified by the Scheme actuary.

Company means Nortel Networks UK Limited (registered in England and Wales with number 03937799) whose registered office is at Maidenhead Office Park, Westacott Way, Littlewick Green, Maidenhead, Berkshire, SL6 3QH.

Demand means a written demand made after the occurrence of an Insolvency Event by the Beneficiary to the Guarantor in the form set out at Schedule 1 to this Agreement.

Expiry Date means the earlier of

(a)    30 June 2012; or

(b)    the payment in full by the Company or the Guarantor of the Guaranteed Obligation.

Guaranteed Obligation means all obligations and liabilities of the Company to make payments to the Scheme upon or after the date of the occurrence of an Insolvency Event up to the lesser of:

(a) the sum of US$ 150 million (one hundred and fifty million US dollars), or,

(b) the amount of the Scheme's Buy Out Deficit reduced by clause 2.2 (a) (iv) and any amount actually or prospectively recoverable by the Beneficiary from the Company during the period of the Company's winding up, liquidation or dissolution as appropriate, the quantum of

such amount to be agreed between the Guarantor and the Beneficiary prior to the serving of a Demand.

185

Insolvency Act means the Insolvency Act 1986, an Act of Parliament of England & Wales.

Insolvency Event means ,

(a)     a court making a winding up order or an order for the dissolution or liquidation of the Company;

(b)     the Company being dissolved by virtue of or pursuant to any statutory provision or otherwise; or

(c)     the Company passing a resolution for its winding up

following and as a consequence of which the Scheme commences winding up without, for the avoidance of doubt, another body corporate whether before, in contemplation of or after the occurrence of such an event entering into an agreement with the Beneficiary and the Company or its liquidator to perform the obligations of the Company under the Scheme.

Material Adverse Effect means a material adverse effect on:

(a)     the ability of the Guarantor to perform its payment obligations under this Agreement;

(b)     the validity or enforceability of this Agreement;

(c)     any right or remedy of the Beneficiary under this Agreement.

NNC means Nortel Networks Corporation, a company registered in Canada with number 375438-3 with a principal place of business at The West Mall, Toronto, Ontario, M9C 5KL .

Pensions Act means the Pensions Act 2004, an Act of Parliament of England & Wales.

Reservations means:

(a)     the principle that equitable remedies are remedies which may be granted or refused at the discretion of the court and damages may be regarded as an adequate remedy;

(b)     the limitation on enforcement as a result of laws relating to bankruptcy, insolvency, liquidation, reorganisation, court schemes, moratoria, administration and other laws affecting the rights of creditors generally;

(c)     the statutory time-barring of claims;

(d)     defences of set off or counterclaim;

(e)     rules against penalties and similar principles;

(f)     the possibility that an undertaking to assume liability for, or indemnify a person against, non-payment of stamp duty may be void;

(g)     the fact that a court may refuse to give effect to a purported contractual obligation to pay costs imposed upon another person in respect of costs of an unsuccessful litigation brought against that person or may not award by way of costs all of the expenditure incurred by a successful litigant in proceedings brought before that court

or that a court may stay proceedings if concurrent proceedings based on the same grounds and between the same parties have previously been brought before another court,

and any other reservations or qualifications of law contained in any legal opinion delivered to the Company, the Beneficiary or the Guarantor in respect of this Agreement.

**Scheme** means the Nortel Networks UK Pension Plan currently governed by the Consolidated Definitive Trust Deed and Rules made between the Company and the Beneficiary dated 21 August 2003 (as supplemented or amended from time to time).

### 1.2    Construction

(a)    In this Guarantee, unless the contrary intention appears, a reference to:

(i)    assets includes present and future properties, revenues and rights of every description;

(ii)    an authorisation includes an authorisation, consent, approval, resolution, licence, exemption, filing, registration or notarisation;

(iii)    a person includes any individual, company, corporation, unincorporated association or body (including a partnership, trust, joint venture or consortium), government, state, agency, organisation or other entity whether or not having separate legal personality;

(iv)    a regulation includes any regulation, rule, official directive, request or guideline (whether or not having the force of law but, if not having the force of law, being of a type with which persons to which it applies are accustomed to comply) or any governmental, inter-governmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation;

(v)    a currency is a reference to the lawful currency for the time being of the relevant country;

(vi)    a provision of law is a reference to that provision as extended, applied, amended or re-enacted and includes any subordinate legislation;

(vii)    a Clause, a Subclause or a Schedule is a reference to a clause or subclause of, or a schedule to, this Agreement;

(viii)    a party to this Agreement or any other person includes its successors in title, permitted assigns and permitted transferees; and

(ix)    a time of day is a reference to London time.

(b)    Unless the contrary intention appears, a reference to a month or months is a reference to a period starting on one day in a calendar month and ending on the numerically corresponding day in the next calendar month or the calendar month in which it is to end, except that:

187

(i) if the numerically corresponding day is not a Business Day, the period will end on the next Business Day in that month (if there is one) or the preceding Business Day (if there is not);

(ii) if there is no numerically corresponding day in that month, that period will end on the last Business Day in that month; and

(iii) notwithstanding subparagraphs (i) and (ii) above, a period which commences on the last Business Day of a month will end on the last Business Day in the next month or the calendar month in which it is to end, as appropriate.

(c) The headings in this Agreement do not affect its interpretation.

## 2. GUARANTEE

### 2.1 Guarantee

Subject at all times to Clauses 2.2 and 3.7, the Guarantor irrevocably and unconditionally guarantees to the Beneficiary the performance of the Guaranteed Obligation by the Company when due, upon receipt by the Guarantor of a Demand in accordance with Clause 3.1.

### 2.2 Limitations

(a) The guarantee contained in this Agreement is given subject as follows:

(i) any Demand made under this Agreement shall be addressed to the Guarantor and shall be delivered if given in person at or sent by registered delivery post, courier or fax to the address or fax number set out in Clause 8.2 of this Agreement or such other address or fax number as may be notified in writing by the Guarantor to the Beneficiary from time to time by not less than 7 days' notice. A Demand served by fax shall only be deemed to be received by the Guarantor if the Beneficiary has obtained a successful delivery receipt for the transmission;

(ii) no amendment to this Agreement, nor the terms of any other agreement between the Company and the Beneficiary, shall have the effect of increasing the Guaranteed Obligation or accelerating the time for payment thereof, unless the Guarantor has agreed in writing to any such amendment and this Guarantee is amended accordingly;

(iii) no Demand may be made under this Agreement after 11a.m. (London time) on the Expiry Date subject to sub-clause (v) below, and upon the Expiry Date if no Demand has been received by the Guarantor, the Guarantor shall have no further liability to the Beneficiary under this Agreement;

(iv) in the event that the Company or any persons connected with or associated to it (as such terms are defined in sections 249 and 435 of the Insolvency Act) (which shall include, for the avoidance of doubt, the Guarantor, NNC and any of NNC's subsidiary companies and corporations) make any payments to the Scheme after the occurrence of an Insolvency Event under a contribution notice or financial support direction issued by the United Kingdom Pensions Regulator under the provisions of Part 1 Pensions Act, such payments shall under any such contribution notice and financial support direction shall

reduce the Guaranteed Obligation on a pound-for-pound basis in the manner set out in the definition of Guaranteed Obligation;

(v)    this Agreement shall terminate forthwith with effect from the certification by the Scheme actuary that the Scheme does not have a Buy Out Deficit and upon such termination the Guarantor shall have no further liability to the Beneficiary under this Agreement.

## 2.3    Supporting indemnity

(a)    In addition to its guarantee under Clause 2.1 (and subject at all times to Clauses 2.2 and 3.7), the Guarantor indemnifies the Beneficiary against any loss or liability properly suffered by the Beneficiary if the Guarantor's payment obligation under the guarantee contained in Clause 2.1 become unenforceable, invalid or illegal.

(b)    The amount of the loss or liability under this indemnity will be equal to the amount the Beneficiary would otherwise have been entitled to recover (including, but without limitation, pursuant to Clause 9) had such guarantee obligation not become unenforceable, invalid or illegal (as the case may be).

(c)    For the avoidance of doubt, nothing in this indemnity shall entitle the Beneficiary to recover (i) any sum from the Guarantor that relates to any part of the Guaranteed Obligation that has ceased to exist or (ii) any amount which the Company is not liable to pay as part of, or for failing to perform, the Guaranteed Obligation.

## 2.4    Continuing guarantee

This guarantee is a continuing guarantee and will extend to the ultimate balance of all sums payable by the Company in respect of the Guaranteed Obligation and shall continue in full force and effect until the Expiry Date.

## 2.5    Reinstatement

If any discharge or arrangement is made in whole or in part on the faith of any payment, security or other disposition which is avoided or must be restored on insolvency, liquidation or otherwise without limitation, the liability of the Guarantor under this Clause will continue as if the discharge or arrangement had not occurred.

## 2.6    Waiver of defences

Subject to Clauses 2.2 and 3.7, the obligations of the Guarantor under this Clause will not be affected by any act, omission or thing which, but for this provision, would reduce, release or prejudice any of its obligations under this Clause. This includes:

(a)    any time or waiver granted to, or composition with, any person;

(b)    any release of any person under the terms of any composition or arrangement;

(c)    the taking, variation, compromise, exchange, renewal or release of, or refusal or neglect to perfect, take up or enforce, any rights against, or security over assets of, any person;

(d)    any non-presentation or non-observance of any formality or other requirement in respect of any instrument or any failure to realise the full value of any security (other than a failure to present a Demand as required by this Agreement);

(e)   any incapacity or lack of power, authority or legal personality of or dissolution or change in the members or status of any person; or

(f)   any unenforceability, illegality, invalidity or non-provability of any part of the Guaranteed Obligation due in any such case to the insolvency, bankruptcy, reorganisation, or liquidation of the Company

**2.7    Subrogation / Non-competition**

Upon payment of any part of the Guaranteed Obligation by or on behalf of the Guarantor, the Guarantor (or its nominee) shall thereupon be subrogated to the rights and benefits of the Beneficiary in relation thereto provided that such subrogated rights of the Guarantor (or its nominee) shall be and remain subject and subordinate to the rights of the Beneficiary as provided in this Clause 2.7. Unless the Beneficiary otherwise directs, the Guarantor will not, during a period following the service of a Demand and only while the same Demand remains unsatisfied in full:

(i)   exercise any rights in the nature of subrogation with respect to any rights, security or moneys held, received or receivable by the Beneficiary (or any trustee or agent on its behalf);

(ii)   exercise any right of contribution or indemnity in respect of any payment made or moneys received on account of the Guarantor's liability under this Clause;

(iii)   claim, rank, prove or vote as a creditor of the Company or its estate in competition with the Beneficiary (or any trustee or agent on their behalf) in respect of amounts paid or owing under this Agreement only provided however that subject to the final sentence of this Clause 2.7 the Guarantor shall not be prohibited from filing or proving any such claim to the extent (A) that the Guarantor would otherwise be barred from proving or asserting such claim later if application is not made during such period, and (B) the rights of the Guarantor under any such claim are, during such period, subordinate to the rights of the Beneficiary and any distribution received on account of any such claim during such period is held in trust for the benefit of the Beneficiary and transferred to the Beneficiary in accordance with the final sentence of this Clause 2.7; or

(iv)   receive, claim or have the benefit of any payment, distribution or security from or on account of the Company (except as provided in the immediately-preceding sub-clause), or exercise any right of set-off as against the Company in each case in respect of amounts paid or owing under this Guarantee only.

The Guarantor must hold in trust for and immediately pay or transfer to the Beneficiary any payment or distribution or benefit of security received by it during such period contrary to this Clause or in accordance with any directions given by the Beneficiary under this Clause.

**3.    PAYMENTS**

**3.1    Establishment of the Guaranteed Obligation**

(a)   Upon the occurrence of an Insolvency Event, the Beneficiary shall forthwith instruct the Scheme actuary to calculate the Buy Out Deficit and certify the same in writing (the "Actuary's Certificate"). It is acknowledged by the Guarantor and the Beneficiary that it may take a number of months for the Scheme actuary to complete the relevant actuarial calculations to produce the Actuary's Certificate.

(b)     Once available, a copy of the Actuary's Certificate will be provided to the Guarantor together with such information on the actuarial methods and assumptions underlying the calculation of the Buy Out Deficit as the Scheme actuary in his opinion considers sets out sufficient detail to enable the Guarantor (after taking such actuarial advice as it considers appropriate) to understand how the Buy Out Deficit was calculated.

(c)     The Guarantor may, within 15 Business Days of receipt of a copy of the Actuary's Certificate (after taking such actuarial advice as it considers appropriate) request from the Beneficiary any further information that it reasonably requires to facilitate its understanding of how the Buy Out deficit was calculated. The Beneficiary shall use reasonable endeavours to supply the further information requested to the Guarantor within 10 Business Days of receiving the request from the Guarantor.

(d)     Following the occurrence of the Insolvency Event, the Beneficiary may issue a Demand once:

(i)      the Actuary's Certificate has been provided to the Guarantor in accordance with Clause 3.1 (b);

(ii)     any further information requested has been supplied in accordance with Clause 3.1 (c); and

(iii)    the Guarantor has confirmed in writing to the Beneficiary within 10 Business Days of receipt of any further information supplied under Clause 3.1 (c) (or if no such information has been requested by the Guarantor, within 15 Business Days of receipt of the Actuary's Certificate) that it does not believe that there is any manifest error or other legitimate ground on which the contents of the Actuary's Certificate should be challenged.

(e)     In the event that the Guarantor does not seek to dispute the Actuary's Certificate and subject always to the maximum amount of the Guaranteed Obligation hereunder, any Demand made to the Guarantor requesting payment of an amount equal to or less than the amount certified in the Actuary's Certificate appended to such Demand shall be conclusive evidence (and admissible as such) of the Guarantor's liability to pay the Beneficiary and of the amount of the sum or sums which the Guarantor is liable to pay the Beneficiary.

3.2     Due date for payments

(a)     Any payment due from the Guarantor to the Beneficiary following the service of a Demand under this Agreement shall be due within 10 Business Days of the date of delivery of such Demand by the Guarantor from the Beneficiary.

(b)     For the avoidance of doubt, provided an Insolvency Event has occurred when making a Demand and subject to Clause 3.7, it is not necessary for the Beneficiary to have taken court action against the Company to recover the Guaranteed Obligations before such Demand will become payable by the Guarantor.

3.3     Funds

Payments under this Agreement to the Beneficiary must be made for value on the due date at such times and in such manner as the Beneficiary may specify to the Guarantor in a Demand.

3.4    Currency

Any amount payable under this Agreement is payable in Sterling.                    191

3.5    No set-off or counterclaim

All payments made by the Guarantor under this Agreement must be made without set-off or counterclaim.

3.6    Business Days

If a payment under this Agreement is due on a day which is not a Business Day, the due date for that payment will instead be the next Business Day in the same calendar month (if there is one) or the preceding Business Day (if there is not).

3.7    No Double Recovery or Greater Recovery

For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor an amount of the Guaranteed Obligation which has been paid by the Company to the Beneficiary, except insofar as payment of the amount concerned by the Company is or is claimed to be, by reason of the operation of any law relating to insolvency, bankruptcy or reorganization, void, voidable, unenforceable, or is otherwise required to be disgorged.

For the avoidance of doubt, nothing in this Agreement entitles the Beneficiary to recover from the Guarantor any amount save the Guaranteed Obligation.

4.    REPRESENTATIONS AND UNDERTAKING

4.1    Representations

The representations set out in this Clause are made as of the date hereof by the Guarantor to the Beneficiary.

4.2    Status

The Guarantor is a corporation, duly incorporated and validly existing under the laws of Canada.

4.3    Powers and authority

The Guarantor has the power to enter into and perform, and has taken all necessary action to authorise the entry into and performance of, this Agreement and the transactions contemplated by this Agreement.

4.4    Legal validity

Subject to the Reservations, this Agreement is a legally binding obligation of the Guarantor, enforceable in accordance with its terms.

4.5    Non-conflict

The entry into and performance by the Guarantor of, and the transactions contemplated by, this Agreement do not conflict with:

(a)    any law or regulation applicable to the Guarantor; or

(b)  the Guarantor's constitutional documents; or

(c)  any agreement binding on the Guarantor to the extent that such conflict would result in a Material Adverse Effect.

### 4.6  No default

The Guarantor is not in default under any agreement binding on the Guarantor to an extent or in a manner which would result in a Material Adverse Effect.

### 4.7  Pari passu ranking

The Guarantor's payment obligations under this Agreement rank pari passu in right of payment with all its other present unsecured payment obligations, except for obligations mandatorily preferred by law.

### 4.8  Times for making representations

The representations set out in this Clause are made by the Guarantor on and as of the date of this Agreement.

### 4.9  Undertaking

The Guarantor undertakes with the Beneficiary that it shall not, in any contractual obligations it enters into in the future with its other unsecured creditors, agree to any explicit contractual term that ranks the Guarantor's payment obligations to such unsecured creditors ahead of the Guarantor's payment obligations under this Agreement, except for such obligations that must be mandatorily preferred by law.

### 5.  CHANGES TO THE PARTIES

(a)  The Guarantor may not assign or transfer any of its rights and obligations under this Agreement other than with the prior written consent of the Beneficiary.

(b)  The Beneficiary may not assign or transfer any of their rights and obligations under this Agreement other than with the prior written consent of the Guarantor save that the Beneficiary's rights under this Agreement may be transferred in their entirety, but not in part, to any person or persons who may, from time to time and for the time being, be appointed as trustee or trustees of the Scheme pursuant to any appropriate trust deed, or pursuant to any statutory authority (such person being a "Successor Trustee"). The Beneficiary shall promptly thereafter give written notice to the Guarantor of the appointment of the Successor Trustee such notice to be signed by the Beneficiary and the Successor Trustee. With effect from the date of delivery of such notice, the Successor Trustee shall assume all the Beneficiary's rights and obligations under this Agreement and this Agreement shall be construed as if all references to the Beneficiary were replaced by references to the Successor Trustee. The obligations of the Guarantor under this Agreement shall remain unaltered by such transfer and replacement.

### 6.  SEVERABILITY

If a term of this Agreement is or becomes illegal, invalid or unenforceable in any jurisdiction, that shall not affect:

(a)  the legality, validity or enforceability in that jurisdiction of any other term of this Agreement; or

(b)  the legality, validity or enforceability in other jurisdictions of that or any other term of this Agreement.

193

7.  COUNTERPARTS

This Agreement may be executed in any number of counterparts and by the parties to it on separate counterparts. This has the same effect as if the signatures on the counterparts were on a single copy of this Agreement.

8.  NOTICES

8.1  In writing

(a)  Any communication in connection with this Agreement must be in writing and, unless otherwise stated, may be given in person, by post or fax.

(b)  Unless it is agreed to the contrary, any consent or agreement required under this Agreement must be given in writing.

8.2  Contact details

(a)  The contact details of the Guarantor for this purpose are:

Address:        Nortel Networks Limited
                MS T0503010
                195 The West Mall
                Toronto, Ontario, M9C 5K1
                Canada
Fax number:     +001 (905)-863-2486
Attention:      Treasurer.

With a copy to:

Address:        Nortel Networks Limited
                MS T0503005
                195 The West Mall
                Toronto, Ontario M9C 5K1
                Canada
Fax number:     +001 (905) 863-7386
Attention:      General Counsel - Corporate

(b)  The contact details of the Beneficiary are:

Address:        Nortel Networks UK Pension Trust Limited
                Maidenhead Office Park
                Westacott Way
                Maidenhead
                Berkshire
                SL6 3QH
Fax number:     +44 (0)1628 432 872

194

E-mail:         louiseha@nortel.com
with a copy to  bruce.moness@btinternet.com
Attention:      Louise Hammond -- UK Pensions Manager

8.3    **Effectiveness**

    (a)    Except as provided below, any Demand or communication in connection with this Agreement will be deemed to be delivered or given as follows:

        (i)    if delivered in person, at the time of delivery;

        (ii)    if posted, five days after being deposited in the post, postage prepaid, registered and with return receipt requested, in a correctly addressed envelope; and

        (iii)    if by fax, when received in legible form with transmission confirmed by a generated transmission receipt.

    (b)    A communication given under paragraph (a) above but received on a non-working day or after business hours in the place of receipt will only be deemed to be given on the next working day in that place.

9.    **TAXES**

9.1    **General**

In this Clause:

**Tax** means any tax, levy, impost, duty or other charge or withholding of a similar nature (including any related penalty or interest).

**Tax Deduction** means a deduction or withholding for or on account of Tax from a payment under this Agreement.

9.2    **Tax gross-up**

(a)    If the Guarantor is aware that it must make a Tax Deduction (or that there is a change in the rate or the basis of a Tax Deduction), it must promptly notify the Beneficiary.

(b)    If:

        (i)    a Tax Deduction is required by law to be made by the Guarantor or the Beneficiary; and

        (ii)    such Tax Deduction would not have been required to be made if the relevant underlying payment was being made by the Company (and not the Guarantor),

    then the amount of the payment due from the Guarantor will be increased to an amount which (after making the Tax Deduction) leaves an amount equal to the payment which would have been due if no Tax Deduction had been required.

(c)    If the Guarantor is required to make a Tax Deduction required by law, the Guarantor must make the Tax Deduction and must make any payment required in connection with that Tax Deduction within the time allowed by law.

(d) Prior to 31 March of the calendar year following either a Tax Deduction or a payment required in connection with a Tax Deduction, the Guarantor must deliver to the Beneficiary evidence satisfactory to the Beneficiary (acting reasonably) that the Tax Deduction has been made or (as applicable) the appropriate payment has been paid to the relevant taxing authority.

9.3 If the Guarantor pays any such additional amount as is referred to in clause 9.2 in respect of any Tax Deduction and the Beneficiary determines that the Scheme has received a credit or refund for any Tax Deduction, the Beneficiary will (to the extent that it can do so without prejudice to the retention of such credit or refund and to the extent that it is not unlawful or contrary to any official regulation or directive for it to do so and provided that no amount due and payable to the Beneficiary under either this Agreement remains unpaid) reimburse the Guarantor with such amount (if any) as the Beneficiary determines will leave the Guarantor (after such reimbursement) in no better or worse position that it would have been in if the Guarantor had not been required to make such Tax Deduction.

## 10. LANGUAGE

Any notice given in connection with this Agreement must be in English.

## 11. GOVERNING LAW

This Agreement is governed by English law.

## 12. ENFORCEMENT

### 12.1 Jurisdiction

(a) The courts of England have exclusive jurisdiction to settle any dispute in connection this Agreement (including a dispute regarding the existence, validity or termination of this Agreement).

(b) The parties agree that the courts of England are the most appropriate and convenient courts to settle any such dispute and accordingly no party will argue to the contrary.

(c) This Clause is for the benefit of the Beneficiary only. As a result, to the extent permitted by law, a Beneficiary may take:

(i) proceedings in any other court; and

(ii) concurrent proceedings in any number of jurisdictions.

### 12.2 Waiver of immunity

The Guarantor irrevocably and unconditionally:

(a) agrees not to claim any immunity from proceedings brought by a Beneficiary against it in relation to this Agreement and to ensure that no such claim is made on its behalf;

(b) consents generally to the giving of any relief or the issue of any process in connection with those proceedings; and

(c) waives all rights of immunity in respect of it or its assets.

This Agreement has been entered into on the date stated at the beginning of this Agreement.

196

SCHEDULE 1

## FORM OF DEMAND

To:    Nortel Networks Limited

Guarantee in respect of the Nortel Networks UK Pension Plan dated [●] 2007 (the "Guarantee")

We refer to the Guarantee. Terms defined in the Guarantee shall bear the same meaning in this letter. We certify that an Insolvency Event has occurred.

We demand payment of the sum of £[●] (the "Requested Amount") and confirm that the Requested Amount is equal to or less than the Guaranteed Obligation.

The Requested Amount should be made the following account:

Name: [●]

Bank: [●]

Account number: [●]

Sort Code: [●]


Yours faithfully


For and on behalf of
Nortel Networks UK Pension Trust Limited as trustee of the Nortel Networks UK Pension Plan

SIGNATORIES

197

Guarantor

EXECUTED AS A DEED by      )
NORTEL NETWORKS LIMITED   )
acting by      )

By: _____
Name: ~~Gordon A. Davies~~
Title: ~~General Counsel - Corporate~~
    and Corporate Secretary

and

By: _J Connelly M'Bully_____
Name: ~~Tracy S.J. Connelly McGilley~~
Title: ~~Assistant Secretary~~

Beneficiary

EXECUTED as a deed by     )
NORTEL NETWORKS UK     )
PENSION TRUST LIMITED    )
acting by      )

Director _____
         DW DAVIES

Director/~~Secretary~~ _____
         C. M. GILCHRIST
         FOR BESTRUSTEE PC

198

SIGNATORIES

Guarantor

EXECUTED AS A DEED by     )
NORTEL NETWORKS LIMITED   )
acting by                     )

By: _____
Name: B.W.
Title: _____

and

By: _____
Name: _____
Title: _____

Beneficiary

EXECUTED as a deed by       )
NORTEL NETWORKS UK      )
PENSION TRUST LIMITED    )
acting by                    )

Director

Director/Secretary