# SCHEDULE "A"

## ADDITIONAL DEFINITIONS

| Term | Definition | Cross-Reference |
|---|---|---|
| Affected Settlement Notice Parties | The Former Employees, the LTD Beneficiaries, the Unionized Employees, the Continuing Employees and provincial pension plan regulators | 36th Report Para. 31 |
| CAW | National Automobile, Aerospace, Transportation and General Workers Union of Canada | 36th Report Para. 18 |
| CAW Counsel | Lewis Gottheil, counsel to the CAW | 36th Report Para. 18 |
| Continuing Employees | All Canadian non-unionized employees of the Applicants whose employment with the Applicants is continuing | 36th Report Para. 17(e) |
| Continuing Employees' Representatives | Kent Felske and Dany Sylvain, as appointed by the court on July 22, 2009 | 36th Report Para. 17(f) |
| Continuing Employees' Representative Counsel | Nelligan O'Brien Payne, as appointed by the court on July 22, 2009 | 36th Report Para. 17(e) |
| Employee Claimants | Any person or entity, including without limitation, (i) the Representatives, (ii) the Superintendent, as administrator of and on behalf of the PBGF, (iii) NNL, as the administrator of the Pension Plans, (iv) all successor administrators of the Pension Plans (whether appointed by the Superintendent or otherwise), and (v) the Pension HWT Claimants, all future members and beneficiaries of the Pension Plans, the trustee of the Pension Plans, the employees and former employees of Nortel and others who may have or make claims against Nortel or any Nortel Worldwide Entity with respect to employment or post employment or post retirement benefits | Settlement Approval Order Para. 5 |
| Former Employees | All former employees, including pensioners, of the Applicants or any person claiming an interest under or on behalf of such former employees or pensioners and surviving spouses in receipt of an Applicant pension, or group or class of them | 36th Report Para. 17(a) |
| Former Employees' Representatives | Donald Sproule, David Archibald and Michael Campbell as representatives of the Former Employees, as appointed by the court on May 27, 2009 | 36th Report Para. 17(b) |
| Former Employees' Representative Counsel | Koskie Minsky LLP, as appointed by the court on May 27, 2009 | 36th Report Para. 17(a) |
| HWT Claims | Any claims in respect of any funding deficit in the HWT or any HWT related claims | Settlement Agreement Para. C(2) |

| Term | Definition | Cross-Reference |
|---|---|---|
| Pension Claimants | Members of the Pension Plans and their beneficiaries and surviving spouses who are entitled to benefits from the Pension Plans | Settlement Agreement Para. E(1) |
| Pensioners | All of the Applicants' pensioners and their beneficiaries and survivors, whether or not represented by Settlement Representative Counsel | Settlement Agreement Para. B(1) |
| Pension HWT Claimants | CAW, LTD Representative and the Former Employee Representatives, on their own behalf and on behalf of the Pension Claimants and the beneficiaries of the HWT who they represent | Settlement Agreement Para. G(1) |
| Pension Plans | Nortel Networks Negotiated Pension Plan (Registration No. 08587766), together with the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan (Registration No. 0342048) | Settlement Agreement Para. D(1) |
| Releasees | The trustee of the HWT, the Monitor, and all members of the Pension Plans' committees (in their personal capacity) and their respective officers, directors, employees, agents, members, legal counsel, financial advisors, and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing and the officers, directors, employees, agents, members, legal counsel, financial advisors of Nortel and the Nortel Worldwide Entities and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing | Settlement Agreement Para. G(1) |
| Representative Counsel | CAW Counsel, together with Settlement Representative Counsel and Continuing Employees' Representative Counsel | 36th Report Para. 18 |
| Representatives | The CAW, Settlement Representative Counsel, the LTD Representative and the Former Employees' Representatives | Settlement Agreement Para. C(2) |
| Settlement Approval Motion | The motion returnable March 3, 2010 to request the approval of the Settlement Agreement and matters required to implement the Settlement | 36th Report Para. 25 |
| Settlement Employee Representatives | LTD Beneficiaries' Representative together with the Former Employees' Representatives | 36th Report Para. 17(d) |
| Settlement Representative Counsel | LTD Beneficiaries' Representative Counsel, together with the Former Employees' Representative Counsel | 36th Report Para. 17(c) |
| Unionized Employees | All active and retired employees of the Applicants represented by the CAW | 36th Report Para. 18 |

\5815359

**APPENDIX A – JANUARY 6 LETTER**



KOSKIE
MINSKY LLP
BARRISTERS & SOLICITORS

January 6, 2010                                                            **Susan Philpott**
Direct Dial: 416.595. 2104
Direct Fax: 416.204. 2882
sphilpott@kmlaw.ca

**Via E-mail**

Jay Carfagnini                Murray McDonald          Derrick Tay
Goodmans LLP                  Ernst & Young Inc.        Ogilvy Renault LLP
Suite 2400, 250 Yonge St.     222 Bay Street           RBC Plaza, South Tower
Toronto, ON M5B 2M6           Toronto, ON M5K 1J7      200 Bay Street, P.O. Box 84
                                                       Toronto, ON M5J 2Z4

Dear Sirs:

           Re:    **Nortel CCAA Proceedings**
           Re:    **Funding Agreement**
                  **Our File No. 09/0479**

We write on behalf of both of our client groups, the Court appointed representatives for the
Former Employees and the Disabled Employees of the Canadian Nortel companies. We
understand that an agreement has been reached with the U.S. company and other stakeholders
regarding the transfer of funding to the Canadian estate to permit its operations for the duration
of the insolvency proceedings (the "Funding Agreement"). We were not privy to the negotiations
which resulted in that agreement, and have not been provided a copy of the applicable
documentation setting out the Funding Agreement, nor any draft of it. Our clients have grave
concerns about the contents and terms of the Agreement that have been disclosed thus far, and
the impact on them and their constituents. We require a copy of the latest draft of the Agreement
and an opportunity to comment on its contents before it is finalized, and raise the following for
your immediate consideration and action.

To date, our clients have supported the continuation of the CCAA stay of proceedings, and the
interim funding agreement ("IFA") that was reached in June, because funding for the pension
plans and benefit plans was provided for, and has continued during the CCAA process. Our
clients did not oppose the expenditure of estate funds on employee bonuses under the KEIP,
KERP and AIP programs because they were told that their benefits coverage would continue,
and funding for that coverage was included under the IFA. However we have been advised that
the current Funding Agreement, which is scheduled to be brought to court for approval on
January 21, 2010, provides funding for these costs only through Q1 of 2010. There is no
provision for these costs through the balance of 2010 and 2011, leaving our clients without
health benefits and pension funding during the CCAA proceedings. This, along with the fact that
Nortel has been depleting the health and welfare trust by failing to fund the ongoing LTD and
SIB costs, is wholly unacceptable.

Accordingly, our clients will object to the Funding Agreement and any further extension of the
CCAA stay of proceedings unless provision is made for:



# KOSKIE
# MINSKY LLP
BARRISTERS & SOLICITORS

Page 2

1) the continuation of our clients' medical and health benefits through the CCAA process;

2) pension funding to at least the end of September of 2010, when the next valuation must be filed with the Regulator;

3) payment of LTD and SIB income benefits directly by the company out of its operating revenues as an employee cost through 2010; and

4) provision of some minimum standards pay for severed employees in addition to the current hardship program.

We understand that funds are available in 2010 for the Canadian estate to pay these costs, and expect binding confirmation that they will be paid.

As has become clear through this most recent set of negotiations regarding the funding for the Canadian estate, the established process remains very unsatisfactory to our clients. They had no seat at the table and were thereby unable to press for the minimum guarantees required by their constituents for health benefits.  And yet, the bondholder group successfully insisted upon a mandatory audit for 2009, at an exorbitant cost of over $20 million, the expenditure of which is unnecessary and benefits only the bondholders (and KPMG). It would be unconscionable that more than $20 million in audit fees, and millions more in employee bonuses, are to be paid out in 2010 while Nortel retirees and disabled people go without health benefits. Moreover, the IFA process is used as a mechanism to bind the Canadian estate to future transactions and our ability to object is hamstrung because of the terms of the IFA that our clients had no part in crafting.

We look forward to speaking with you immediately to discuss our clients' demands. In the absence of an agreement as set out above, we have no choice but to object to court approval of the Funding Agreement on January 21, 2010.

Yours truly,

**KOSKIE MINSKY LLP**

Susan Philpott
SP:mp
c       NRPC Committee, Sue Kennedy
        Tom Levy and Ron Olsen. Segal
        Gus Tertigas, RSM Richter LLP
        Gale Rubenstein, Goodmans LLP
        Ken Rosenberg, Paliare Roland LLP
        Mark Zigler/Andrea McKinnon, Koskie Minsky LLP

K:\2009\090479\Correspondence - Sent\Carfagnini McDonald Tay Ltr Jan 6 10.doc

**APPENDIX B – SETTLEMENT AGREEMENT**

# SETTLEMENT AGREEMENT

**THIS AGREEMENT** made as of the 8th day of February, 2010

**AMONG :**

> **NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS TECHNOLOGY CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION, NORTEL NETWORKS GLOBAL CORPORATION**
>
> (collectively, **"Nortel"** and individually a **"Nortel Entity"**)
>
> - and –
>
> **ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity
>
> (the **"Monitor"**)
>
> - and -
>
> **DONALD SPROULE, DAVID ARCHIBALD and MICHAEL CAMPBELL,** court appointed representatives of the Nortel Former Employees (as hereinafter defined)
>
> (the **"Former Employees Representatives"**)
>
> - and -
>
> **SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries (as hereinafter defined)
>
> (the "**LTD Representative**")
>
> - and -
>
> **KOSKIE MINSKY LLP,** court appointed counsel to the Former Employees of Nortel and the Represented LTD Beneficiaries
>
> (**"Representative Counsel"**)

- 2 -

- and -

**NATIONAL AUTOMOBILE, AEROSPACE, TRANSPORTATION AND GENERAL WORKERS UNION OF CANADA** (CAW-Canada) and its Locals 27, 1525, 1530, 1837, 1839, 1905 and/or 1915 and George Borosh et al.

**("CAW")**

## A.    RECITALS

**WHEREAS** Nortel filed for and obtained protection under the *Companies' Creditors Arrangement Act* (**"CCAA"**) by order of the Ontario Superior Court of Justice (Commercial List) (the **"Court"**) dated January 14, 2009, as amended and restated (the **"Initial Order"**);

**AND WHEREAS** by Order of the Court dated May 27, 2009, the Former Employees Representatives were appointed representatives of all former employees, including pensioners, of Nortel or any person claiming an interest under or on behalf of such former employees or pensioners and surviving spouses in receipt of a Nortel pension, or group or class of them, other than (a) those represented by counsel to the CAW, and (b) those who elected pursuant to the requirements of such Order not to be bound by such Order (the individuals in respect of whom the Former Employees Representatives were appointed pursuant to such Order, are referred to herein as the **"Nortel Former Employees"**);

**AND WHEREAS** certain employees and former employees of Nortel are represented by counsel to the CAW;

**AND WHEREAS** by Order of the Court dated July 30, 2009, the LTD Representative was appointed representative of those employees of Nortel who are currently not working due to an injury, illness or medical condition in respect of which they are receiving or entitled to receive disability income benefits by or through Nortel, and who may assert an existing or future claim for payment, reimbursement or coverage arising in connection with their employment with Nortel or termination thereof, a pension or benefit plan sponsored by Nortel, including in relation to medical, dental, long-term or short-term disability benefits, life insurance or any other benefit, obligation or payment to which such person (or others who may be entitled to claim under or through such person) may be entitled from or through Nortel , other than (a) those individuals who are currently employed and whose benefit or other payments, as described above, arise directly or inferentially out of a collective agreement between any Nortel Entity and the CAW, and (b) those individuals who elected pursuant to the requirements of such Order not to be bound by such Order (the individuals in respect of whom the LTD Representative was appointed pursuant to such Order are referred to herein as the **"Represented LTD Beneficiaries"**);

- 3 -

AND WHEREAS Representative Counsel was appointed as counsel to the Nortel Former Employees and the Represented LTD Beneficiaries by Court orders dated May 27, 2009 and dated July 30, 2009, respectively, for the purpose of, among other things, settling or compromising the claims of the individuals they represent;

AND WHEREAS the parties to this Settlement Agreement (the "**Parties**") have reached an agreement for the benefit of Nortel and all of its stakeholders, as well as the Official Committee of Unsecured Creditors of Nortel Networks Inc. and certain of its affiliates in the chapter 11 proceedings before the U.S. Bankruptcy Court for the District of Delaware (the "**UCC**") and the Informal Nortel Noteholder Group (the "**Bondholder Committee**") regarding certain issues related to, among other things, Nortel's Pension Plans, HWT (both as defined below) and certain employment related issues (collectively, the "**Settlement**"); and

NOW THEREFORE for value received (the receipt and sufficiency of which are hereby acknowledged), the Parties agree as follows:

**B.    BENEFITS AND EMPLOYEES**

1. For the remainder of 2010, Nortel shall continue in accordance with current practice to pay medical and dental benefits and life insurance benefits to Nortel pensioners and their beneficiaries and survivors, whether or not represented by Representative Counsel, and for greater certainty, including without limitation all of the individuals referenced in paragraphs (a) and (b) of the second recital above (collectively, the "**Pensioners**") and the Nortel employees receiving or who become entitled during 2010 to receive long term disability benefits, whether or not represented by Representative Counsel, and for greater certainty, including without limitation all of the individuals referenced in paragraphs (a) and (b) of the fourth recital above (collectively, the "**LTD Beneficiaries**") in accordance with the current benefit plan terms and conditions. The Pensioners and the LTD Beneficiaries shall be referred to collectively as the "**M&D Beneficiaries**". Medical and dental benefits to be paid to the M&D Beneficiaries shall be funded solely from Nortel's funds on a "pay as you go basis" in respect of benefits for the coverage period ending December 31, 2010 (the "**Medical and Dental Payments**"), provided that no Medical and Dental Payments claims submitted after February 28, 2011 shall be accepted, honoured or paid. Life insurance benefits to the M&D Beneficiaries shall continue unchanged until December 31, 2010 and shall be funded in the same manner as for 2009 (the "**Life Insurance Benefits**"). For greater certainty, no Medical and Dental Payments or Life Insurance Benefits shall be paid by Nortel for any benefit coverage period following December 31, 2010.

2. Nortel shall pay income benefits to the LTD Beneficiaries and to those people receiving or who become entitled during 2010 to receive survivor income benefits and survivor transition benefits under Nortel benefit plans (as such plans exist at the date of this Settlement Agreement) solely from Nortel funds on a "pay as you

- 4 -

go basis" for benefits in respect of the coverage period from January 1, 2010 to December 31, 2010 (the "**Income Payments**"). For greater certainty, no Income Payments shall be paid by Nortel for the benefit coverage period following December 31, 2010.

3.  Upon the satisfaction of all of the conditions in paragraph I.1 of this Settlement Agreement, Nortel shall create a pool of $4.3 million (inclusive of Representative Counsel's costs in respect of the motion for leave to appeal referred to in paragraph B.4 below to a maximum of $100,000.00, based on documented and reasonable fees and disbursements) (the "**Termination Fund**") to be set aside for employees and former employees of Nortel whose employment has been terminated or is terminated prior to or on June 30, 2010 to whom amounts are or may become owing for termination or severance payments, who have not been offered employment with a purchaser of Nortel's assets and who have not received or are not entitled to receive (i) gross cumulative Annual Incentive Plan payments from and after October 1, 2009 of $3,000.00 or more; or (ii) a Key Employee Incentive Plan or Key Employee Retention Plan payment in 2009; or (iii) payment from any Court approved equivalent 2010 plan. Each such individual shall be paid a maximum of $3,000.00 (subject to applicable withholding taxes) from the Termination Fund (the "**Termination Payments**"). Any Termination Payments paid to such individuals shall be credited against allowed claims of such individuals and such claims shall be correspondingly reduced. To the extent that funds are unused in respect of terminations prior to or on June 30, 2010, or payment of Representative Counsel's costs referred to above, the Termination Fund may be used to make payments on account of terminations after June 30, 2010. If such unused funds are to be used for another purpose, such purpose shall be approved by the Court, on such basis as is agreed to between Representative Counsel and the Monitor.

4.  Upon the issuance of an order by the Court approving this Settlement Agreement in its entirety, including all schedules thereto, and upon the expiry of all appeals and rights of appeal in respect thereof (the "**Final Approval Order**"), Representative Counsel shall promptly withdraw their application for leave to appeal the decision of the Court of Appeal, dated November 26, 2009, to the Supreme Court of Canada (the "**Leave Application**") on a with prejudice basis. No claim for costs in respect of the Leave Application shall be made by or against Nortel, or any creditor participants (including the UCC and the Bondholder Committee).

5.  The employment of the LTD Beneficiaries shall terminate on December 31, 2010. However, such termination shall not affect in any manner any rights the LTD Beneficiaries or anyone claiming through them may have, either under a collective agreement, at common law or pursuant to any statute in relation to ordinary unsecured claims against Nortel arising out of their employment or termination thereof, including but not limited to claims for future lost long term

- 5 -

disability or income continuation benefits, pension benefits or pension benefit accruals, and medical, dental and life insurance benefits, nor should affect in any manner their ability to participate in any program of benefits for which they are eligible that is established as a successor to the plans in which they currently participate. For greater certainty, such claims, to the extent they are allowed as claims against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank as ordinary unsecured claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel. Nothing in this paragraph will affect the rights of the LTD Beneficiaries to make claims in respect of the HWT (as defined below).

### C.    HEALTH AND WELFARE TRUST

1.    <u>Resolution:</u> The Parties will work towards a Court approved distribution of the Health and Welfare Trust ("**HWT**") corpus in 2010 to its beneficiaries entitled thereto and the resolution of any issues necessarily incident thereto. For greater certainty, nothing in this Settlement Agreement affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT. Any fees or expenses incurred in connection with any dispute or litigation among the beneficiaries of the HWT concerning entitlement (including without limitation all legal, actuarial and other fees and expenses of the trustee of the HWT and other service providers of the HWT) shall not be paid by Nortel, but shall be paid by the HWT corpus. For greater certainty, such fees or expenses shall not include those of the Monitor and incurred by Nortel in connection with any motion for termination of the HWT or for directions with respect to the HWT, which shall be paid by Nortel.

2.    <u>Ranking:</u> The CAW, Representative Counsel, the LTD Representative and the Former Employee Representatives (the "**Representatives**") agree, on behalf of those they represent and on their own behalf, that in respect of any funding deficit in the HWT or any HWT related claims (the "**HWT Claims**"), in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any of the entities listed in Schedule "A" (collectively the "**Nortel Worldwide Entities**" and individually, a "**Nortel Worldwide Entity**") or the HWT, they shall not advance, assert or make any claim that any HWT Claims are entitled to any priority or preferential treatment over ordinary unsecured claims, including without limitation that they rank as priority claims against Nortel or any Nortel Worldwide Entity, or are the subject of a constructive trust or trust of any nature or kind in respect of the property and assets of Nortel or any Nortel Worldwide Entity, nor shall they take any action or support any party, person or entity, directly or indirectly, who advances, asserts or makes such claims, and such claims, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank as ordinary unsecured

- 6 -

claims on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel.

**D.    REGISTERED PENSION PLANS**

1.    Administration:    Nortel shall continue to administer the Nortel Networks Negotiated Pension Plan (Registration No. 08587766) and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan (Registration No. 0342048) (collectively, the **"Pension Plans"**) until 11:59 p.m. on September 30, 2010. For greater certainty, Nortel Networks Limited shall remain the administrator (as defined in the *Pension Benefits Act*) of the Pension Plans until 11:59 p.m. on September 30, 2010. Neither Nortel nor the Monitor will take any steps to initiate a wind up, in whole or in part, of the Pension Plans with an effective date prior to September 30, 2010 at 11:59 p.m. Nortel shall cease to administer the Pension Plans on September 30, 2010 at 11:59 p.m. and thereafter shall have no further responsibility or liability for administration thereof (including any windup). So long as Nortel continues to administer the Pension Plans, there shall be no change whatsoever to the plan terms of the Pension Plans without the approval of the Court, and no change to the current asset mix or investment policies with respect to the Pension Plans other than at the request, and with the consent, of the Representative Counsel and the approval of the Court.

2.    Payments:    Nortel shall continue to make contributions to the Pension Plans in the same manner as it has been doing over the course of the proceedings, under the CCAA, through to March 31, 2010, and for greater certainty, shall continue to make all current service payments and special payments related to the Pension Plans through that date in accordance with the last actuarial valuation for the Pension Plans filed with the Financial Services Commission of Ontario in the aggregate amount of $2,216,254.00 per month (the "**March Pension Payments**"). Thereafter and through to September 30, 2010, Nortel shall make only current service payments to the Pension Plans in the aggregate amount of $379,837.00 per month (the "**September Pension Payments**"). For greater certainty, Nortel shall not make any special payment contributions to the Pension Plans after March 31, 2010. The March Pension Payments and the September Pension Payments shall be referred to collectively as the "**Pension Payments**". Nortel shall not make any payments or contributions whatsoever to the Pension Plans after September 30, 2010, except in respect of any claims in respect of the Pension Plans allowed against Nortel (which claims shall rank on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel) pursuant to any claims adjudication procedure established in these proceedings. Neither Nortel, nor any Nortel Worldwide Entity shall have any obligation or liability regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans after September 30, 2010. For greater certainty, nothing in this paragraph affects any obligation or liability of Nortel regarding any contributions, fees, indemnities, charges or costs of any kind in

- 7 -

respect of the administration of the Pension Plans before 11:59 p.m. on September 30, 2010.

3.    Transition:  With the assistance of the Monitor, Nortel shall use reasonable efforts to cause all books, records, data and other information relating to the Pension Plans or beneficial to the administration or winding-up of the Pension Plans in the possession or control of Nortel to be consolidated in Toronto, Ontario, Canada by no later than March 31, 2010.  The Monitor and Nortel shall take all reasonable steps, at the sole cost and expense of Nortel, to complete the orderly transfer of the records of administration of the Pension Plans to a new administrator appointed by the Superintendent of Financial Services (the "**Superintendent**"), on September 30, 2010 (the "**New Administrator**").   Any non-compliance or allegation of non-compliance by Nortel or the Monitor under this paragraph D.3 shall have no effect on the enforceability or effectiveness of any other provision of this Agreement.

**E.    RANKING OF PENSION CLAIMS**

1.    The Representatives agree on behalf of the members of the Pension Plans their and beneficiaries and surviving spouses who are entitled to benefits from the Pension Plans and whom they represent and on their own behalf (collectively, the "**Pension Claimants**") that in respect of any claim for payment of or damages related to any solvency or wind up deficiencies, unfunded liabilities, or unpaid or accrued contributions (including, for greater certainty, any special payments whatsoever), any liability regarding the Pension Benefits Guarantee Fund (the "**PBGF**") or any obligation of or claim arising against any person with respect to the Pension Plans or the administration thereof (the "**Pension Claims**"):  (a) no Pension Claims shall enjoy any priority in any manner over the claims of ordinary unsecured creditors made against Nortel; (b) the Pension Claimants hereby waive, and shall not directly or indirectly assert, advance, re-assert or re-file any claims or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel or any Nortel Worldwide Entity or the Pension Plans, that the Pension Claims or any part thereof rank as a priority claim over the claims of ordinary unsecured creditors, as a trust (whether deemed or otherwise) or a lien or charge (hereinafter referred to as a "**lien**"), or under any other legal or equitable theory; and (c) the Pension Claimants shall not support, directly or indirectly, any application, claim or action by Nortel, in its capacity as administrator of the Pension Plans, the New Administrator, any successor administrator howsoever appointed, the Superintendent, as the administrator of and on behalf of the PBGF, or any other person or entity, to directly or indirectly assert, advance, re-assert or re-file any claims or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel or any

- 8 -

Nortel Worldwide Entity or the Pension Plans, that the Pension Claims or any part thereof rank as a priority claim over the claims of ordinary unsecured creditors, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory, and such claims shall be treated as ordinary unsecured claims, and for greater certainty, any such claims, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel.

2.      That portion of any proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel or by any person claiming that any payments by the PBGF or that the Pension Claims or any part thereof rank as a priority or preferential claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory shall be disallowed, but only to the extent that they claim such priority or preference, and such disallowance shall not be opposed or appealed, directly or indirectly, by such claimants. For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims, which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

## F.    NON-OPPOSITION

1.      The Representatives agree, on their own behalf and on behalf of those they represent, that they shall not oppose, directly or indirectly, any employee incentive program, including any charge therefor, that is determined by the Monitor to be reasonable and necessary for the continued operation of Nortel. They further agree that they shall not oppose, directly or indirectly, the creation of a trust with respect to claims or potential claims against persons who accept directorships of a Nortel Worldwide Entity in order to facilitate the restructuring, provided that: (i) such trust is approved and recommended by the Monitor; (ii) no part of the corpus of the trust may be used to pay bonuses or any other compensation to the directors; and (iii) any corpus of the trust remaining on the termination of the trust reverts to Nortel.

## G.    RELEASE AND CHARGE

1.      The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension Claimants and the beneficiaries of the HWT who they represent (collectively, the "**Pension HWT Claimants**") that each of the trustee of the HWT, the Monitor, and all members of Pension Plans' committees, (in their personal capacity), and their respective officers, directors, employees, agents, members, legal counsel, financial advisors,

and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing and the officers, directors, employees, agents, members, legal counsel, financial advisors of Nortel and the Nortel Worldwide Entities and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing (collectively, the "**Releasees**"), are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans except as required by this Settlement Agreement) and the investment of the Pension Plan assets; and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

2.    The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension HWT Claimants that Nortel and the Nortel Worldwide Entities and their respective successors and assigns (collectively, the "**Nortel Releasees**") are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory. For greater certainty, notwithstanding the foregoing, nothing in this Settlement Agreement shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

3.    In furtherance of the foregoing and in order to ensure that this constitutes a true settlement of the subject matter hereof, the Pension HWT Claimants agree that they shall not assert, advance or make any claims of any nature whatsoever

- 10 -

against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or the Nortel Releasees with respect to the subject matter of the release provisions of this Settlement Agreement.

4.    The M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the **"Payments Charge"**), which Payments Charge shall not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00) and which Payments Charge shall rank subordinate in priority to the Inter-company Charge (as defined in the Initial Order). The Payments Charge shall apply in these proceedings and in any subsequent bankruptcy or receivership. The maximum amount secured by the Payments Charge shall be reduced as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made. Once the last payment is made, the Monitor shall file a certificate (the **"Monitor's Certificate"**) with the Court certifying that the terms of the Settlement have been complied with by Nortel, and the Payments Charge shall automatically terminate and be extinguished by the filing of the Monitor's Certificate.

## H.    CCAA PLAN OR SUBSEQUENT BANKRUPTCY

1.    The Representatives agree on their own behalf and on behalf of the Pension HWT Claimants that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the **"Plan"**) be proposed or approved if: (i) the Plan provides for separate classification of any Pension HWT Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Pension HWT Claimants and the other ordinary unsecured creditors of Nortel do not receive the same *pari passu* treatment of their allowed ordinary unsecured claims against Nortel pursuant to the Plan.

2.    Notwithstanding anything else in this Settlement Agreement, including for greater certainty paragraph G.2 hereof, in the event of a bankruptcy of Nortel, if there is an amendment to any provision of the *Bankruptcy and Insolvency Act* that changes the current, relative priorities of the claims against Nortel, no party is precluded by this Settlement Agreement from arguing the applicability or non-applicability of any such amendment in relation to any such claim.

## I.    CONDITIONS

1.    This Settlement Agreement is conditional upon (i) Nortel obtaining the Final Approval Order substantially in the form attached as Schedule "B" with such changes as the parties may agree to, acting reasonably; (ii) the Superintendent in

- 11 -

his capacity as administrator of the PBGF, Nortel and the Monitor executing the letter attached as Schedule "C"; and (iii) the Leave Application having been withdrawn on a with prejudice basis.

2.   It is the intention of the Parties that these terms be binding upon, and enure to the benefit of the Pension HWT Claimants, the Releasees and the Nortel Releasees, and that: (i) as beneficiaries hereof, the Releasees and the Nortel Releasees shall be entitled to rely upon and to seek the enforcement of these terms, which cannot be varied without further order of the Court on full and proper notice to them; and (ii) the ordinary unsecured creditors of Nortel shall be entitled to rely upon and benefit from the provisions and agreements herein and to seek their enforcement, which provisions and agreements cannot be varied without further order of the Court on full and proper notice to them.

## J.   GENERAL

1.   The Monitor shall post the motion record for approval of the Settlement, including the Settlement Agreement and the proposed Final Approval Order on the Monitor's website at www.ey.com/ca/Nortel and on the website of Representative Counsel at www.kmlaw.ca.

2.   The Representatives, the Representative Counsel and the CAW shall co-operate with Nortel and the Monitor on all communications related to this settlement, as required.

3.   This Settlement Agreement will be governed by and interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein. The Parties hereby irrevocably consent and submit to the non-exclusive jurisdiction of the Ontario Superior Court of Justice and waive any objection based on venue or forum non conveniens with respect to any action commenced in connection with this Settlement Agreement.

4.   This Settlement Agreement may be executed in any number of counterparts (including by way of facsimile and PDF) and all of such counterparts taken together will be deemed to constitute one and the same instrument.

*[Signature pages to follow]*

**IN WITNESS WHEREOF** the Parties have duly executed this Agreement as of the date first written above:

NORTEL NETWORKS CORPORATION

Per: _____

Name: Anna Ventresca
Title: General Counsel-Corporate and Corporate Secretary

Per: _____

Name: John Doolittle
Title: SVP, Finance and Corporate Services

NORTEL NETWORKS LIMITED

Per: _____

Name: Anna Ventresca
Title: General Counsel-Corporate and Corporate Secretary

Per: _____

Name: John Doolittle
Title: SVP Finance and Corporate Services

NORTEL NETWORKS TECHNOLOGY CORPORATION

Per: _____

Name: Anna Ventresca
Title: Secretary

NORTEL NETWORKS INTERNATIONAL CORPORATION

Per: _____

Name: John Doolittle
Title: President

Per: _____

Name: Anna Ventresca
Title: Secretary

**NORTEL NETWORKS GLOBAL CORPORATION**

Per:  Name: Anna Ventresca      John Doolittle
      Title: Secretary          President

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____
     Name:
     Title:

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per: _____
     Name:
     Title:

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per: _____
     Name:
     Title:

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per: _____
     Name:
     Title:

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____
     Name:
     Title:

**NORTEL NETWORKS GLOBAL CORPORATION**

Per: _____
       Name:
       Title:

**ERNST & YOUNG INC.**, solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____
       Name:
       Title:

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per: _____
       Name:
       Title:

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per: _____
       Name:
       Title:

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per: _____
       Name:
       Title:

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____
       Name:
       Title:

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____
      Name:
      Title:

**ERNST & YOUNG INC.**, solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
      Name:
      Title:

**DONALD SPROULE**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title: NATIONAL CHAIR  NRPC

**DAVID ARCHIBALD**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**MICHAEL CAMPBELL**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**SUE KENNEDY**, court appointed representative
of the Represented LTD Beneficiaries

Per: _____
      Name:
      Title:

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____
      Name:
      Title:

**ERNST & YOUNG INC.**, solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
      Name:
      Title:

**DONALD SPROULE**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**DAVID ARCHIBALD**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**MICHAEL CAMPBELL**, court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

**SUE KENNEDY**, court appointed representative
of the Represented LTD Beneficiaries

Per: _____
      Name:
      Title:

ERNST & YOUNG INC., solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____

      Name:
      Title:

**DONALD SPROULE**, court appointed
representative of the Nortel Former Employees

Per: _____

      Name:
      Title:

**DAVID ARCHIBALD**, court appointed
representative of the Nortel Former Employees

Per: _____

      Name:
      Title:

**MICHAEL CAMPBELL**, court appointed
representative of the Nortel Former Employees

Per: _____

      Name: M. A. CAMPBELL, P.ENG
      Title: VICE CHAIR, NCPC

**SUE KENNEDY**, court appointed representative
of the Represented LTD Beneficiaries

Per: _____

      Name:
      Title:

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____

         Name:
         Title:

**ERNST & YOUNG INC.**, solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____

         Name:
         Title:

**DONALD SPROULE**, court appointed
representative of the Nortel Former Employees

Per: _____

         Name:
         Title:

**DAVID ARCHIBALD**, court appointed
representative of the Nortel Former Employees

Per: _____

         Name:
         Title:

**MICHAEL CAMPBELL**, court appointed
representative of the Nortel Former Employees

Per: _____

         Name:
         Title:

**SUE KENNEDY**, court appointed representative
of the Represented LTD Beneficiaries

Per: _____Sue Kennedy_____

         Name:
         Title:

**KOSKIE MINSKY LLP,** court appointed
counsel to the Former Employees of Nortel and
the Represented LTD Beneficiaries

Per: _____

    Name: _Susan Philpott_

    Title: _Representative Counsel_

**NATIONAL AUTOMOBILE, AEROSPACE,
TRANSPORTATION AND GENERAL
WORKERS UNION OF CANADA (CAW-**
Canada) and its Locals 27, 1525, 1530, 1837,
1839, 1905 and/or 1915 and George Borosh et al.

Per: _____

    Name: _____

    Title: _____

**KOSKIE MINSKY LLP,** court appointed
counsel to the Former Employees of Nortel and
the Represented LTD Beneficiaries

Per: _____

        Name:
        Title:

**NATIONAL AUTOMOBILE, AEROSPACE,
TRANSPORTATION AND GENERAL
WORKERS UNION OF CANADA** (CAW-
Canada) and its Locals 27, 1525, 1530, 1837,
1839, 1905 and/or 1915 and George Borosh et al.

Per: _____

        Name: PETER KENNEDY
        Title: NATIONAL SECRETARY-TREASURER

## SCHEDULE "A"

## NORTEL NETWORKS CORPORATION

### Direct and Indirect Subsidiaries

| |
|---|
| Sonoma Systems |
| Sonoma Limited |
| Sonoma Systems Europe Limited |
| Nortel Networks Optical Components (Switzerland) GmbH |
| Xros, Inc. |
| Architel Systems Corporation |
| Architel Systems (U.S.) Corporation |
| Architel Systems (UK) Limited |
| NN Applications Management Solutions Inc. |
| CoreTek, Inc. |
| Alteon WebSystems Inc. |
| Alteon WebSystems International Inc. |
| Alteon WebSystems AB |
| Alteon WebSystems International Limited |
| Nortel Networks Limited |
| Capital Telecommunications Funding Corporation |
| PT Nortel Networks Indonesia |
| Nortel Networks Peru S.A.C. |
| Nortel Networks (Thailand) Ltd. |
| Nortel Networks Telecommunicacoes do Brazil Ltda. |
| Nortel Networks Malaysia Sdn Bhd. |
| Nortel Networks New Zealand Limited |
| Nortel Networks Global Corporation |
| Nortel Networks de Colombia S.A. |
| Nortel Networks Chile S.A. |
| Nortel Networks de Argentina S.A. |
| Nortel Networks del Paraguay S.A. |
| Nortel Networks de Venezuela C.A. |

- 2 -

| |
|---|
| Nortel Networks del Ecuador S.A. |
| Nortel Networks de Mexico S.A. de C.V. |
| Nortel de Mexico, S. De R.L. de C.V. |
| Nortel Networks del Uruguay S.A. |
| Nortel Networks Technology Corporation |
| Nortel Vietnam Limited |
| Nortel Networks Korea Limited |
| Nortel Networks Singapore Pte Ltd |
| Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd. |
| Nortel Networks International Corporation |
| Shenyang Nortel Telecommunications Company Limited |
| Nortel Networks (Ireland) Limited |
| Northern Telecom Maroc SA |
| Nortel Networks Electronics Corporation |
| Regional Telecommunications Funding Corporation |
| Nortel Networks de Bolivia S.A. |
| 1328556 Ontario Inc. |
| CTFC Canada Inc. |
| Northern Telecom Canada Limited |
| Nortel Networks de Panama S.A. |
| TSFC Canada Inc. |
| Nortel Networks Mauritius Ltd. |
| Nortel Networks (India) Private Limited |
| Nortel Networks S.A. |
| Northern Telecom France SA |
| Nortel Networks France SAS |
| Matra Communications Business Systeme GmbH |
| Nortel Networks (China) Limited |
| Nortel Networks Communications Engineering Ltd. |
| Nortel Networks (Asia) Limited |
| Guangdong – Nortel Telecommunications Equipment Co. Ltd. |
| LG-Nortel Co. Ltd. |

- 3 -

| |
|---|
| 6141-Sub  Novera Optics Korea Inc. |
| Novera Optics Inc. |
| LN Srithai Comm Co Ltd |
| Nortel Communications Inc. |
| Nortel Networks Financial Services Limited Liability Co. |
| Nortel Networks Inc. |
| Bay Networks do Brasil Ltda. |
| Bay Networks Fedes de Dados para Sistemas Informaticos, da. |
| Clarify Limited |
| Clarify K.K. |
| Nortel Networks Cable Solutions Inc. |
| Nortel Networks Capital Corporation |
| Nortel Networks Technology K.K. |
| Nortel Networks Eastern Mediterranean Ltd. |
| Nortel Networks International Inc. |
| Nortel Ventures LLC |
| Nortel Networks Japan |
| Penril Datacomm Limited |
| Nortel Networks Southeast Asia Pte Ltd. |
| Nortel Networks Technology (Thailand) Ltd. |
| Nortel Technology Excellence Centre Private Limited |
| Diamondware, Ltd. |
| Northern Telecom International Inc. |
| Nortel Networks Optical Components Inc. |
| The Nortel Foundation |
| Nortel Networks India International Inc. |
| Nortel Networks (CALA) Inc. |
| Nortel Networks de Guatemala, Ltda. |
| Nortel Trinidad and Tobago Limited |
| Qtera Corporation |
| Nortel Networks Technology Ltd. |
| Nortel Networks (Shannon) Limited |

- 4 -

| |
|---|
| Nortel Networks Europe Sales Limited |
| Nortel Government Solutions Incorporated |
| AC Technologies, Inc. |
| Integrated Information Technology Corporation |
| Nortel Networks UK Limited |
| Northern Telecom International Limited |
| Nor. Web DLP Limited |
| Nortel Limited |
| Nortel Networks (Northern Ireland) Limited |
| Networks Employee Benefit Trustee Company Limited |
| Nortel-SE d.o.o. Beograd |
| Nortel Networks Properties Limited |
| Promatory Communications Limited |
| X-CEL Communications Limited |
| Nortel Networks Optical Components Limited |
| Nortel Networks (Photonics) Pty. Ltd. |
| Northern Telecom PCN Limited |
| Telephone Switching International Limited |
| Frisken Investments Pty. Ltd. |
| Betts Investments Pty. Ltd. |
| Periphonics Limited |
| Nortel Networks Australia Pty Limited |
| Nortel Australia Communication Systems Pty. Limited |
| Star 21 Networks GmbH |
| Star 21 Networks (Schweiz) AG |
| Star 21 Networks Deutschland GmbH |
| Star 21 Facility Management Verwaltung GmbH |
| Star 21 Operations GmbH |
| Star 21 Facility Management GmbH & Co. KG |
| Nortel Networks International Finance & Holding BV |
| Uni-Nortel Communication Technologies (Hellas), S.A. |
| Nortel Networks (Austria) GmbH |

- 5 -

| |
|---|
| Nortel Networks AG |
| Nortel Networks AS |
| Nortel Networks S.R.O. |
| Nortel Networks S.p.A. |
| Nortel Networks S.A. |
| Nortel Networks South Africa (Proprietary) Limited |
| Nortel Networks NV |
| Matra Communication Cellular Terminals GmbH |
| Nortel Networks Engineering Service Kft. |
| Nortel Networks (Bulgaria) EOOD |
| Nortel Networks Slovensko, s.r.o. |
| Nortel Networks Romania Srl |
| Nortel Networks O.O.O |
| Nortel Networks Portugal, S.A. |
| Nortel Communications Holdings (1997) Limited |
| Nortel Networks Israel (Sales and Marketing) Limited |
| Nortel Networks Communications (Israel) Limited |
| Nortel Networks Polska Sp. z.o.o. |
| Nortel GmbH |
| Nortel Networks BV |
| Nortel Networks Malta Limited |
| Nortel Ukraine Ltd. |
| Nortel Networks AB |
| Nortel Networks OY |
| Nortel Networks, Hispania S.A. |
| Nortel Networks Netas Telekomunikasyon A.S. |

SCHEDULE "B" TO SETTLEMENT AGREEMENT

[ATTACHED]

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

Court File No.  09-CL-7950

*ONTARIO*
**SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | ●, THE ● DAY OF |
| | ) | |
| JUSTICE MORAWETZ | ) | ●, 2010 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY
CORPORATION (the "Applicants")**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**S E T T L E M E N T   A P P R O V A L   O R D E R**

**THIS MOTION,** made by the Applicants (collectively, "Nortel") for an order approving the settlement agreement made as of the 8th day of February, 2010, attached as Schedule "A" to this Order (the "Settlement Agreement") and for the other relief set out in the Notice of Motion dated ● was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of ● sworn ●, 2010 (the "●Affidavit") and the ● Report of Ernst & Young Inc. dated ●, 2010 (the "● Report") in its capacity as monitor (the "Monitor"), and on hearing submissions of counsel for the Applicants and the Monitor, and on the consent of CAW, the Former Employees Representatives, the LTD Representative and Representative Counsel (as those terms are defined in the Settlement Agreement); the UCC, the Bondholder Committee (as those terms are defined in the Settlement Agreement) and the Superintendent of Financial Services of Ontario (the "Superintendent") as the administrator of and on behalf of the Pension Benefits Guarantee Fund (the "PBGF") not opposing, no one

appearing for ● although duly served as appears for the affidavit of service of ● date ●, 2010, filed, ●.

1.     **THIS COURT ORDERS** that service of the Notice of Motion, the ● Report and the Motion Record is in accordance with the Order of this Court dated ● and is hereby validated so that this Motion is properly returnable today and further service thereof is hereby dispensed with.

2.     **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the ● Affidavit or the Settlement Agreement.

**Settlement Agreement**

3.     **THIS COURT ORDERS** that the Settlement Agreement is hereby approved in its entirety, including all schedules attached thereto, and that the Parties thereto (including by representation) are hereby bound by this Order and the Settlement Agreement and authorized and directed to comply with their obligations thereunder, including, without limitation, to make the payments provided for therein.

**Pension Plans**

4.     **THIS COURT ORDERS AND DECLARES** that any Pension Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans shall, to the extent they are allowed pursuant to any claims adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, such that no part of any Pension Claims shall be entitled to any preferential treatment or enjoy any priority in any manner over the claims of ordinary unsecured creditors made against Nortel, or rank as a priority claim, as a trust (whether deemed or otherwise) or a lien or charge.

5.     **THIS COURT ORDERS AND DECLARES** that no person or entity, including without limitation, (i) the Representatives, (ii) the Superintendent, as administrator of and on behalf of the PBGF, (iii) NNL, as the administrator of the Pension Plans, (iv) all successor

For Discussion Purposes Only
DRAFT: 1 - February 8, 2010 at 2:53 PM

administrators of the Pension Plans (whether appointed by the Superintendent or otherwise), and (v) the Pension HWT Claimants, all future members and beneficiaries of the Pension Plans, the trustee of the Pension Plans, the employees and former employees of Nortel and others who may have or make claims against Nortel or any Nortel Worldwide Entity with respect to employment or post employment or post retirement benefits (collectively, with the Pension HWT Claimants, the "Employee Claimants"), shall directly or indirectly assert, advance, re-assert or re-file any claim or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent such claims are provable) or the Pension Plans except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and shall not assert or advance any claim, directly or indirectly, that the Pension Claims, or any part thereof, ranks as a priority or preferential claim over the claims of ordinary unsecured creditors or Nortel, including, without limitation, that it is the subject of a trust (whether deemed or otherwise) or a lien or charge, or under other legal or equitable theory, and all such priority, trust, lien or charge claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the Pension Plans, the trustee of the Pension Plans, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

6.      **THIS COURT ORDERS** that the portion of proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel, by any Employee Claimants or by any other person or entity claiming, asserting or advancing priority or preferential treatment of any kind, including, without limitation, trusts (whether deemed or otherwise) liens or charges in respect of any Pension Claims or payments by the PBGF with respect to the Pension Plans be and they hereby are disallowed, but only to the extent that they claim such priority or preferential treatment, without prejudice to the ordinary unsecured claims included in such proofs of claim. For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims, which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors

of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

7.     **THIS COURT ORDERS** that with respect to claims by the Superintendent on behalf of the PBGF, and any administrator appointed by the Superintendent, paragraphs 4, 5 and 6 shall only apply if: (i) the Pension Payments are made in accordance with the Settlement Agreement; and (ii) no bankruptcy order is made with respect to Nortel on or before September 30, 2010.

8.     **THIS COURT ORDERS** that as long as NNL continues to administer the Pension Plans, there shall be no change whatsoever to the plan terms of the Pension Plans without the approval of the Court, and no change to the current asset mix or investment policies with respect to the Pension Plans other than at the request, and with the consent, of the Representative Counsel and the approval of the Court.

9.     **THIS COURT ORDERS** that Nortel shall make all current service payments and special payments to the Pension Plans in the same manner as it has been doing over the course of the proceedings under the CCAA, through to March 31, 2010 in accordance with the last actuarial valuation for the Pension Plans filed with the Financial Services Commission of Ontario ("FSCO") in the aggregate amount of $2,216,254.00 per month. Thereafter and through to September 30, 2010, Nortel shall make only current service payments to the Pension Plans (in accordance with the last actuarial valuation for the Pension Plans filed with FSCO) in the aggregate amount of $379,837.00 per month. For greater certainty, Nortel shall not be required to make any special payment contributions to the Pension Plans after March 31, 2010. Nortel shall not be required to make any payments to the Pension Plans after September 30, 2010, except in respect of any claims in respect of the Pension Plans allowed against Nortel (which claims shall rank on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) pursuant to any claims adjudication procedure established in these proceedings. Neither Nortel, nor any Nortel Worldwide Entity shall have any liability regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs after September 30, 2010. For greater certainty, nothing in this paragraph affects any obligation or liability of Nortel

regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs before 11:59 p.m. on September 30, 2010.

**Health and Welfare Trust**

10.     **THIS COURT ORDERS AND DECLARES** that any HWT Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the HWT shall, to the extent they are allowed against Nortel pursuant to any claims adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and no part of any such HWT Claims shall rank as a preferential or priority claim or shall be the subject of a constructive trust or trust of any nature or kind.

11.     **THIS COURT ORDERS AND DECLARES** that  no person or entity, including without limitation, the Employee Claimants and the Representatives, shall, directly or indirectly (i) advance, assert, re-assert, re-file or make any HWT Claim in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent that such claims are provable) or the HWT except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, or (ii) advance, assert, re-assert, re-file or make any claim that any HWT Claims are entitled to any priority or preferential treatment over ordinary unsecured claims, including without limitation that they rank as preferential or priority claims against Nortel or any Nortel Worldwide Entity, or are the subject of a constructive trust or trust of any nature or kind, and all such claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the HWT and the trustee of the HWT, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

12.     **THIS COURT ORDERS AND DECLARES THAT** nothing in this Order, including, without limiting the generality of the foregoing, the provisions of paragraphs 10

and 11, affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT.

**Release and Charge**

13.     **THIS COURT ORDERS** that the M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the "Payments Charge"), which Payments Charge shall:  (i) not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00); (ii) rank subordinate in priority to the Inter-company Charge (as defined in the Initial Order); (iii) apply in these proceedings and in any subsequent bankruptcy or receivership; (iv) be reduced in amount as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made; and (v) automatically terminate and be extinguished on the filing with this Honourable Court by the Monitor of a certificate certifying that the terms of the Settlement Agreement have been complied with by Nortel.

14.     **THIS COURT ORDERS** that the creation of the Payments Charge shall not preclude this Court from creating additional charges under the Initial Order that rank in priority to or *pari passu* with the Payments Charge.

15.     **THIS COURT ORDERS AND DECLARES** that the Releasees, the CAW, the Representatives, the Superintendent in his capacity as administrator of and on behalf of the PBGF (if and only if paragraphs 4, 5 and 6 apply as provided in paragraph 7), and their legal counsel and financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing, be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any

subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien or charge, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans, except as required by paragraph 9 of this Order) and the investment of the Pension Plan assets, and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

16.     **THIS COURT ORDERS AND DECLARES** that the Nortel Releasees be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien or charge, or under any other legal or equitable theory.   For greater certainty, notwithstanding the foregoing, nothing in this Order shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims (which claims shall rank as on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

17.     **THIS COURT ORDERS** that the Employee Claimants shall not assert, advance or make any claims of any nature whatsoever against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or Nortel Releasees with respect to the subject matter of the release provisions hereof.

**CCAA Plan or Subsequent Bankruptcy**

18.   **THIS COURT ORDERS AND DECLARES** that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the "Plan") be proposed or approved by the Court if: (i) the Plan provides for separate classification of any Employee Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Employee Claimants and the other ordinary unsecured creditors do not receive the same *pari passu* treatment of their allowed claims against Nortel pursuant to the Plan.

19.   **THIS COURT ORDERS** that notwithstanding anything else in this Order, including for greater certainty paragraph 16 hereof, if there is an amendment to any provision of the *Bankruptcy and Insolvency Act* that changes the current, relative priorities of the claims against Nortel, no party is precluded by this Order from arguing the applicability or non-applicability of any such amendment in relation to any such claim.

For Discussion Purposes Only[9]
DRAFT: 1 - February 8, 2010 at 2:53 PM

## SCHEDULE "A"

\5805980.12