## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | Jointly Administered |
| Debtors. | **Objection Deadline: March 15, 2010 at 4:00 pm (ET)** |
| | **Hearing Date: Scheduled only if necessary** |

## TWELFTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1 TO JANUARY 31, 2010
### (All Amounts in Canadian Dollars)

This is a(n): x monthly _____ interim _____ final application.

Name of Applicant:                                    Fraser Milner Casgrain LLP

Authorized to Provide
Professional Services to:                          Official Committee of Unsecured Creditors

Date of Retention:                                    March 5, 2009 (nunc pro tunc to January 26, 2009)

Period for which Compensation
And Reimbursement is sought:                 January 1 to January 31, 2010

Amount of Compensation sought as
actual, reasonable and necessary:             CDN $461,488.39 (Fees $439,512.75 Plus Taxes $21,975.64)
                                                                   Equivalent to USD $442,336.62[2]

Amount of Expense Reimbursement
sought as actual, reasonable and               CDN $10,545.77 (Expenses $10,043.59 Plus Taxes $502.18)
necessary                                                  Equivalent to USD $10,108.12[2]

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Eleventh Monthly Fee Application was 7.80 hours and the corresponding compensation is CDN. $5,401.73 (including applicable Canadian taxes).

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on February 22, 2010 was CDN. $0.9585 : U.S. $1.00

**SUMMARY OF LAWYERS AND PARALEGALS**
**RENDERING SERVICES DURING THE PERIOD**
**JANUARY 1, 2010 THROUGH JANUARY 31, 2010**
**(All Amounts in Canadian Dollars)**

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|---|---|---|---|---|---|---|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 4.5 | $775.00 | $3,487.50 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 80.1 | $775.00 | $62,077.50 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 10.4 | $750.00 | $7,800.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 144.0 | $750.00 | $108,000.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 11.4 | $725.00 | $8,265.00 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 160.4 | $725.00 | $116,290.00 |
| Steeves, C.J. | Partner | Taxation | Ontario - 1994 | 4.7 | $700.00 | $3,290.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 7.5 | $675.00 | $5,062.50 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 9.2 | $600.00 | $5,520.00 |
| Dietrich, J. | Associate | Financial Restructuring | Ontario - 2004 | 4.6 | $480.00 | $2,208.00 |
| Banks, T. | Partner | Employment/Pension/ Research | Ontario - 2002 | 30.1 | $450.00 | $13,545.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 2.6 | $400.00 | $1,040.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 6.8 | $350.00 | $2,380.00 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 14.5 | $295.00 | $4,277.50 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 21.4 | $295.00 | $6,313.00 |
| North, A.R. | Associate | Financial Restructuring | Ontario - 2009 | 17.1 | $295.00 | $5,044.50 |
| Jacobs, R.C. | Consultant | Financial Restructuring | | 139.1 | $600.00 | $83,460.00 |
| Walker, R.W. | Partner | Financial Restructuring | Ontario - 1976 | 3.6 | $750.00 | $2,700.00 |
| Misetich, Linda | Partner | Corporate | Ontario - 1999 | 4.1 | $535.00 | $2,193.50 |
| TOTAL | | | | 677.4 | CDN. | $443,799.00 |
| | | Less Non-Working Travel Time Discount (50% of $8,572.50) | | | | ($4,286.25) |
| TOTAL | | | | 677.4 | CDN. | $439,512.75 |

**COMPENSATION BY PROJECT CATEGORY**
**JANUARY 1, TO JANUARY 31, 2010**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 3.3 | $1,974.50 |
| FMC Fee Application/Monthly Billing Reports | 7.8 | $5,144.50 |
| Analysis of Other Professionals Fee Applications/Rep | 0.2 | $120.00 |
| Retention of Professionals | 1.1 | $660.00 |
| Creditors Committee Meetings | 45.9 | $28,277.50 |
| Court Hearings | 53.7 | $36,332.50 |
| Financial Reports and Analysis | 2.8 | $1,967.50 |
| Executory Contracts/License Agreements | 10.7 | $6,420.00 |
| General Claims Analysis/Claims Objections | 6.8 | $4,080.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 17.5 | $10,500.00 |
| Tax Issues | 14.1 | $9,340.00 |
| Labour Issues/Employee Benefits | 246.6 | $169,539.00 |
| Real Estate Issues/Leases | 13.3 | $9,455.00 |
| Exclusivity | 0.4 | $240.00 |
| Telecommunications/Regulatory | 23 | $14,852.50 |
| Asset/Stock Transaction/Business Liquidations | 43 | $26,923.50 |
| Travel | 12.1 | $8,572.50 |
| Intercompany Analysis | 47.2 | $31,958.00 |
| Canadian Proceedings/Matters | 126.7 | $76,547.00 |
| U.S. Proceedings/Matters | 1.2 | $895.00 |
| **Total** | **677.4** | **$443,799.00** |

## DISBURSEMENT SUMMARY
## JANUARY 1 TO JANUARY 31, 2010
### (All Amounts in Canadian Dollars)

Taxable Disbursements

| | |
|---|---|
| Accommodations | $1,283.58 |
| Airfare/Travel | $4,281.63 |
| Cellular Phones | $ 244.46 |
| Library Computer Research | $ 708.77 |
| Long Distance Telephone Calls | $ 389.10 |
| Meals & Beverages | $ 359.18 |
| Parking | $    9.56 |
| Photocopy Charges | $2,035.50 |
| Ground Transportation (including Courier) | $ 731.81 |
| | |
| Total Taxable Disbursements | $10,043.59 |
| Total GST | 502.18 |
| Total Taxable Disbursements including Taxes | **$10,545.77 CDN.** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
:
In re                                  : Chapter 11
                                       : Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]      : Jointly Administered
                                       :
                    Debtors            : Objection Deadline: March 15, 2010 at 4:00 pm (ET)
                                       : Hearing Date: Scheduled only if necessary
------------------------------------------------------X

### TWELFTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JANUARY 1, 2010 THROUGH JANUARY 31, 2010

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its tenth monthly application (the "Application") pursuant to (i)

sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $461,488.39 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$439,512.75 for fees and CDN. $21,975.64 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $10,545.77 (CDN. $10,043.59 for expenses and CDN. $502.18 for applicable Canadian taxes) for the period from January 1 through January 31, 2010 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.     JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.     BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian Court.

5.     On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.     On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.     On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.     On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application").  In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has

received payment of such amounts.

9.    On September 10, 2009, FMC filed its Second Interim Fee Application Request

for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its

Second Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court

entered an order approving 100% of the fees and expenses sought in the Second Interim

Application, and FMC has received payment of such amounts.

10.    On November 25, 2009, FMC filed its Third Interim Fee Application for the

period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its

Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an

order approving 100% of the fees and expenses sought in the Third Interim Application, and

FMC has received payment of such amounts.

11.    On January 19, 2010, FMC filed its Tenth Monthly Fee Application for Interim

Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the

Period November 1, 2009 through November 30, 2009 (the "Tenth Monthly Application"). In its

Tenth Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.

$403,398.45 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $6,810.78 (including applicable taxes). On February 12, 2010, FMC filed a Certificate of

Note Objection with this Court regarding the Tenth Monthly Application. As of the date of this

Application, FMC has not yet received payment on account of the Tenth Monthly Application.

12.     On February 12, 2010, FMC filed its Eleventh Monthly Fee Application for

Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered

During the Period December 1, 2009 through December 31, 2009 (the "Eleventh Monthly

Application"). In its Eleventh Monthly Application, FMC sought the award and allowance of

fees in the amount of CDN. $257,713.84 (including applicable taxes) and the reimbursement of

expenses in the amount of CDN. $6,721.89 (including applicable taxes). As of the date of this

Application, FMC has not yet received payment on account of the Eleventh Monthly

Application.

### III.    RELIEF REQUESTED

13.     By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $461,488.39 (CDN. $439,512.75 for fees and CDN. $21,975.64 for applicable Canadian

taxes) representing 677.40 hours in professional services; and (ii) reimbursement of actual and

necessary expenses incurred by FMC during the Compensation Period in connection with the

rendition of such professional services in the amount of CDN. $10,545.77 (including applicable

Canadian taxes).

14.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its

fees (CDN $369,190.71 including applicable Canadian taxes) and 100% of its expenses (CDN.

$10,545.77 including applicable Canadian taxes) relating to services rendered during the

Compensation Period.

15.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

16.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.     SUMMARY OF SERVICES RENDERED

17.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

18.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

19.     In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and

amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

20.     FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

21.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

### Case Administration

(Fees: CDN. $1,974.50 plus CDN. $98.73 taxes; Hours 3.30)

22.     During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies and Capstone.

23.     FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $76,547.00 plus CDN. $3,827.35 taxes; Hours 126.70)

24.     During the Compensation Period, FMC reviewed and analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising in the Canadian Proceeding. FMC also reviewed and analyzed successive motions filed by the Canadian Debtors and others parties in the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested in the proposed order, participated in conference calls and in-person meetings with the Monitor (as that term is defined below), Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtors' professionals and the Monitor (as that term is defined below) and its professionals, to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

25.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each

of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $5,144.50 plus CDN. $257.23 taxes; Hours 7.80)

26.     This subject matter relates to time spent reviewing invoices and drafting monthly fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings

(Fees: CDN. $28,277.50 plus CDN. $1,413.88 taxes; Hours 45.90)

27.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

28.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding. Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

29.     Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same

relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

## Court Hearings

(Fees: CDN $36,332.50 plus CDN. $1,816.63 taxes; Hours 53.70)

30.    This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

## Asset Sales

(Fees: CDN $26,923.50 plus CDN. $1,346.18; Hours 43.00)

31.    FMC spent time during the Compensation Period working closely with the Nortel Debtors, Akin Gump and the Committee's other advisors and the advisors of the Nortel Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets. Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, as well as professionals for the other major creditor constituents to evaluate and analyze divestiture options for the metro ethernet networks ("MEN"),

GSM/GSM-R ("GSM") businesses. In that regard, FMC worked closely with the Committee's other advisors to evaluate third party bids for those assets, assess and analyze transaction issues, negotiate transaction agreements with potential stalking horse candidates, and advise the Committee on those issues through detailed memoranda and numerous telephonic conferences, as necessary.

*MEN Sale*

32.    Since the approval on December 3, 2009 by the U.S. and Canadian Courts of the sale of the MEN business to Ciena Corporation ("Ciena"), FMC attorneys, together with Akin Gump, have continued their active involvement in reviewing, commenting on, and negotiating underlying documentation necessary to timely consummate the transaction. In connection therewith, FMC attorneys, together with Akin Gump and professionals from Jefferies and Capstone, participated in meetings and conference calls with professionals for the Nortel Debtors, Ciena and other major stakeholders to negotiate and finalize underlying documentation necessary to successfully close the transaction.

*GSM Sale*

33.    Since the approval by the U.S. and Canadian Courts of the sale of the Nortel Debtors' GSM business (the "GSM Sale") to Telefonaktiebolaget L M Ericsson ("Ericsson") and Kapsch Carriercom AG ("Kapsch" and together with Ericsson, the "GSM Purchasers") on December 2, 2009, FMC attorneys have continued working with Akin Gump and the professionals for the Nortel Debtors and the GSM Purchasers to negotiate and finalize documentation necessary for the successful consummation of the transaction.

*CVAS Sale*

34.     FMC attorneys spent considerable time during the Compensation Period working with Akin Gump and the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' CVAS business (the "CVAS Sale"). On December 23, 2009, the Nortel Debtors publicly announced that GENBAND Inc. ("GENBAND"), with equity sponsor One Equity Partners III, L.P. ("OEP" and, together with GENBAND, the "CVAS Stalking Horse Parties"), was selected as the stalking horse bidder for the CVAS Sale. In connection therewith, FMC attorneys reviewed, commented on, and negotiated underlying documentation, including the form of proposed bidding procedures and related sale motion (the "CVAS Bidding Procedures Motion") and held numerous conference calls with the Committee's other professionals and the Committee to ascertain and develop the Committee's position on the proposed procedures and transaction. As this Court is aware, on January 5, 2010, the Committee filed an objection with respect to certain aspects of the CVAS Bidding Procedures Motion, including the payment of an incentive fee to OEP and breakup and expense reimbursement fees potentially payable to the CVAS Stalking Horse Parties. Following a joint hearing before the U.S. and Canadian Courts on January 6, 2010, this Court entered an order approving the CVAS Bidding Procedures Motion on January 8, 2010. Since that time, FMC attorneys, along with the Committee's other professionals, have continued to work with the professionals for the Nortel Debtors to analyze various issues in connection with the CVAS Sale. An auction with respect to the CVAS Sale is tentatively scheduled to take place on February 25, 2010.

## Labor and Employee Benefits Issues

(Fees: CDN. $169,539.00 plus CDN. $8,476.95 taxes; Hours 246.60)

35.    This subject matter relates to services rendered by FMC in connection with the analysis of the Canadian Debtors' benefits plans and general labor matters. During the Compensation Period, FMC lawyers spent time analyzing the pension and employee related issues raised by the various asset divestitures described herein, and where appropriate, commented on and negotiating the underlying documentation of such transactions. Further, FMC attorneys analyzed the impact of potential claims that could be asserted by the Ontario pension regulator on certain of assets being sold in the various divestiture processes.

36.    FMC attorneys also spent time during the compensation period reviewing the proofs of claim and related materials filed jointly by the Nortel Networks UK Pension Trust Limited and the Board of the Pension Protection Fund against each of the U.S. Debtors and Canadian Debtors (collectively, the "UK Pension Claims") in their respective Insolvency Proceedings. In connection therewith, FMC attorneys conferred with Ashurst and Akin Gump to analyze the alleged legal basis for such claims, and to evaluate potential strategies with respect to the UK Pension Claims. FMC, together with Ashurst and Akin Gump, kept the Committee apprised of legal and business issues relating to the UK Pension Claims.

37.    During the compensation period, FMC attorneys spent considerable time reviewing and assessing a proposed settlement transaction proposed to be entered into by the Debtors with representatives of its former employees, long term disability employees and pensioners, on notice to and with the consent of the Ontario pension regulator (the "Ontario Regulator"), which settlement agreement includes agreements relating to the transfer of the Canadian Debtors' pension plans to the control of the Ontario Regulator and agreements relating to cut-off dates for further payments by the Canadian Debtors under and in respect of their

pension plans. FMC attorneys spent considerable time assessing the proposed settlement and negotiating documentation and notice procedures in connection therewith, as well as reporting to the Committee. FMC attorneys attended to several in person meetings with representatives from the Canadian Debtors, the Monitor, counsel for the employee groups and the Ontario Regulator. The Canadian Debtors entered into a settlement agreement on February 4, 2010 and a court hearing to approve that settlement transaction is scheduled to be heard by the Canadian Court on March 30, 2010. Due to certain provisions in the settlement agreement which are detrimental to the Debtors, it is anticipated that the Committee will be objecting to such "offensive provisions" at the March 3, 2010 hearing.

### Real Estate Issues/Leases

(Fees: CDN. $9,455.00 plus CDN. $472.75 taxes; Hours 13.30)

38.     This subject matter relates to time spent by FMC lawyers on matters relating to the real estate assets of the Canadian Debtors. During the Compensation Period, FMC lawyers, in consultation with Akin Gump, Capstone and Jefferies, continued an analysis of the Canadian Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property. FMC lawyers also assessed issues and negotiated documents in the Canadian Proceeding relating to the proposed sale transactions as they relate to Canadian real estate issues.

### Intercompany Analysis/Canadian Funding Issues/Canadian Proceedings

(Fees: CDN. $108,505.00 plus CDN. $5,425.25 taxes; Hours 173.90)

39.     As the Court is aware, on December 23, 2009, the Debtors filed a motion (the "Final Canadian Funding Motion") to approve the Final Canadian Funding and Settlement Agreement, dated December 23, 2009 (the "Final Canadian Funding and Settlement Agreement"). The Final Canadian Funding and Settlement Agreement provides for, among other things: (a) payment by NNI to NNL of $190.8 million (subject to adjustment); and (b) the

establishment of a valid and enforceable pre-filing claim (not subject to setoff or reduction) in favor of NNI against NNL in the Canadian Proceeding (the "NNI Claim") in the amount of $2,062,700,000 in part on account of certain tax-related income adjustments, as described herein in the section titled "Tax Issues". Following the filing of the Final Canadian Funding Motion, FMC attorneys, on behalf of the Committee, spent time working with Akin Gump and the professionals for the Nortel Debtors, the Monitor and the ad hoc group of bondholders (the "Ad Hoc Bondholder Group") to resolve issues raised by certain parties, including the Administrator in the European Proceedings, with respect to approval of the Final Canadian Funding and Settlement Agreement. After a joint hearing before the U.S. and Canadian Courts on January 21, 2010, this Court entered an order approving the Final Canadian Funding and Settlement Agreement on January 26, 2010.

40.     As required by the terms of the Interim Funding Agreement, FMC together with Akin Gump, on behalf of the Committee, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding the protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates. FMC together with Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a framework for the allocation of sale proceeds.

### Telecommunications/Regulatory/Intellectual Property

(Fees: CDN. $14,852.50 plus CDN. $742.63 taxes; Hours 23.00)

41.     FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets. Additionally, during the Compensation Period,

FMC lawyers analyzed documents in connection with the various asset sale processes described above and assessed regulatory issues in connection therewith, as well as examining the intellectual property issues associated with such divestitures.

### Tax Issues

(Fees: CDN. $9,340.00 plus CDN. $467.00 taxes; Hours 14.10)

42.    This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors.  During the Compensation Period, FMC continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the legacy transfer pricing system between, among others, the Debtors and the Canadian Debtors.  In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the senior management of the Debtors and their respective advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

## V.    ALLOWANCE OF COMPENSATION

43.    The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort.  It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

44.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

45.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

46.     The total time spent by FMC lawyers during the Compensation Period was 622.70 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

47.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $10,545.77 (CDN. $10,043.59 for expenses and CDN. $502.18 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

48.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

49.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

50.     No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

51.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $461,488.39 (CDN. $439,512.75 for fees and CDN. $21,975.64 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from January 1, 2010 through and including January 31, 2010;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period January 1, 2010 through and including January 31, 2010 in the amount of CDN. $10,545.77 (CDN. $10,043.59 for expenses and CDN. $502.18 for applicable Canadian taxes) ; and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $379,736.48 (USD $363,977.41[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          February 23, 2010

**FRASER MILNER CASGRAIN LLP**

By: _____
    Michael J. Wunder (*pro hac vice*)
    A Member of the Firm

Suite 3900
1 First Canadian Place
100 King Street West
Toronto, Ontario  M5X 1B2
(416) 863-4511
Canadian Counsel to the Official Committee of
Unsecured Creditors

---

[2] Reuters Exchange Rate as of close of business on February 22, 2010 was CDN. $0.9585 : U.S. $1.00