IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: <br><br> NORTEL NETWORKS INC., *et al.*,[1] <br><br> Debtors. | : Chapter 11 <br> : <br> : Case No.: 09-10138 (KG) <br> : <br> : Jointly Administered <br> : <br> : |

**DECLARATION OF DAVID WYNDHAM DAVIES IN SUPPORT OF THE OBJECTION OF THE TRUSTEE OF NORTEL NETWORKS UK PLAN AND THE BOARD OF THE PENSION PROTECTION FUND TO DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST CERTAIN CLAIMANTS WITH RESPECT TO THE UK PENSION PROCEEDINGS**

I, David Wyndham Davies, hereby declare as follows:

1. I submit this declaration in support of the Objection of the Trustee of Nortel Networks UK Plan (the "Trustee") and the Board of the Pension Protection Fund (the "PPF") to Debtors' Motion for Entry of an Order Enforcing the Automatic Stay Against Certain Claimants with respect to the UK Pension Proceedings (the "Motion"). Except where otherwise stated, the facts contained in this declaration are based upon my personal knowledge, and information that I learned from reviewing relevant documents. If I were called to testify, I could and would testify competently to the facts set forth herein.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

## Background

2. I am the Chairman of the Board of Nortel Networks U.K. Pension Trust Limited, which is the Trustee of the Nortel Networks UK Pension Plan (the "Plan") described below. I have held this position since June 2007. I am an independent trustee director.

3. Prior to taking on my role as a Director and Chairman of the Trustee, I was a Trustee Director of the British Telecom Pension Scheme for 9 years (1997 – 2005), the U.K.'s largest private pension scheme. Following that, I was a non-executive director of Hermes Pensions Management Limited (the principal Investment manager of the British Telecom Pension scheme).

4. I was previously chief executive of Sunlife of Canada (U.K.) and am currently the chairman of Sunlife of Canada (U.K.). I have also been chief executive of several life insurance companies, including London Life and Pearl Group. I am also a Director of Co-operative Financial Services Limited including Co-operative Bank and Co-operative Insurance Company.

5. I have been a qualified actuary since 1973 and am a fellow of the Institute of Actuaries.

6. I have never been employed by a Nortel Group company and I am not a member of the Plan.

## Nortel Networks U.K. Pension Plan

7. Prior to the petition date on 14 January 2009 ("the Petition Date"), Nortel Networks UK ("NNUK") and its predecessor companies carried on business in the United

Kingdom for over a hundred years. The corporate headquarters of NNUK and its predecessor companies are, and have been based, in Maidenhead in the U.K. NNUK and its predecessors provided its employees with pensions and other benefits under the terms of the Plan as the principal employer of the Plan.

8. The Plan is a defined benefit plan, under which employees are entitled to pension benefits based on their final salary, with the employer agreeing to meet the balance of the cost of providing such pension benefits after taking into account the employees' own contributions.

9. The Plan currently has over 40,000 members of whom over half are pensioners. The vast majority of these members reside in the U.K. which is also where the Trustee is based.

10. The Plan has a substantial funding deficit. Although not yet finally determined, the Plan actuary estimated NNUK's section 75 debt (as of 13 January 2009) as £2.1 billion. A copy of the Plan actuary's letter dated 29 September 2009 to the Trustee is attached as Exhibit A. Similarly, the Plan's deficit was estimated in a Report dated 13 August 2009 made by the Joint Administrators to be in the vicinity of U.S. $3.1 billion. A copy of the report of the Joint Administrators dated 13 August 2009 is attached as Exhibit B.

11. The Plan is the largest and most significant defined benefit pension scheme within the Nortel Group in terms of the number of members involved for whom Nortel has failed to provide the pension benefits to which they are entitled. The Plan has the most material pension deficit in all the pensions schemes across the Nortel Group, according to the Joint Administrators' statement of proposals for NNUK, attached as Exhibit C.

**U.K. Pensions Regulation and the U.K. Regulatory Procedure**

12. The Pensions Regulator is a public body established under a U.K. statute and located in the U.K., with regulatory responsibilities over U.K. pension schemes.

13. I have read the expert opinion of Mr. Ham QC in which he sets out the regulatory objectives and functions of both the Pensions Regulator and the PPF, as well as the statutory rules and procedure relating to the U.K. Regulatory Procedure.

14. As part of the U.K. Regulatory Procedure, the Pensions Regulator has served a number of entities, including the Trustee with the Warning Notice. The Trustee is, therefore, one of the "directly affected parties" listed in the Warning Notice. The outcome of the U.K. Regulatory Procedure is of critical importance to the Trustee and to the interests of the beneficiaries under the Plan which the Trustee is charged to protect. As I understand it from the opinion of Mr. Ham QC, the Trustee would be obliged to participate in a U.K. Regulatory Procedure if such participation was in the best interests of the members.

15. I can confirm that the Trustee takes the view that its participation in the U.K. Regulatory Procedure is in the best interests of the members and accordingly that the Trustee considers itself to be obliged to participate in the U.K. Regulatory Procedure. As a result, if the Debtors' Motion were to succeed so as to prevent the participation by the Trustee in the U.K. Regulatory Procedure, the Trustee would be put in an impossible position. Since the Trustee cannot under English law simply ignore the U.K. Regulatory Procedure in circumstances where it considers that it is in the best interests of the members of the Plan to participate, if it were not to participate in that procedure it is likely that the Trustee will be open to criticism, and possibly even litigation, by Plan members for not having taken steps to maximize the recovery for the

beneficiary pensioners.

16. I would also add that although they are all located in the U.K., the Pensions Regulator is a completely separate entity from the Trustee and the PPF. The Trustee has no right or power to control the Pensions Regulator or to halt the Pensions Regulator's use of its regulatory powers; nor as far as I am aware does the PPF. Accordingly, even if the Trustee and the PPF are prohibited from participating in the U.K. Regulatory Procedure, this does not mean that either the Trustee or the PPF can prevent the Pensions Regulator from continuing with that procedure.

**The Primacy Of The Chapter 11 Proceedings**

17. It is important to note that the Trustee or the PPF will not attempt via the U.K. Regulatory Procedure to collect money, seize assets or enforce claims against the Debtors or anyone else. The U.K. Regulatory Procedure will simply assess and, if sufficient grounds are found to exist, quantify the statutory liabilities involved. It is not an exercise of rights that will decide matters otherwise than before this Honorable Court, as the Debtors contend. Indeed, the Trustee and the PPF intend that any liability for a Financial Support Direction arising against the Debtors will be subject to the claims allowance procedure of this Honorable Court. It is for that reason that the Trustee and the PPF submitted a proof of claim as I will describe below.

18. The U.K. Regulatory Procedure does not, therefore, in any way undermine the U.S. bankruptcy claims process: the Trustee and the PPF understand that the final allowance or disallowance of claims based on liabilities that may be determined in the U.K. Regulatory Procedure will be made by this Honorable Court at the appropriate time. The Trustee and the PPF are respectful of the U.S. bankruptcy proceedings and have no intention of taking actions

which would usurp that procedure.

19. I see that the Motion makes much of the Allocation Protocol ("the Protocol"). I cannot comment on this to any great extent as the Trustee has not participated in any negotiations or discussions in respect of the Protocol with the NNUK Administrators or any other Nortel party. As far as I know, the Protocol has not been agreed and I can state our views have not been sought.

**Claims Bar Orders - The Trustee and The PPF's Claims**

20. Pursuant to the Honorable Court's orders dated 4 August 2009 and 3 December 2009 (collectively, the "Bar Date Orders"), 30 September 2009 was set as the deadline for the filing of proofs of claims against the Debtors (other than Nortel Networks (CALA) Inc. ("NN CALA")), and 25 January 2010 for filing proofs of claims against NN CALA. The Trustee and the PPF filed proofs of claim against the Debtors in accordance with the Bar Date Orders. The Trustee and the PPF also filed proofs of claim in the Canadian proceedings.

21. The claims filed by the Trustee and the PPF related to the Debtors' Plan-related liabilities arising pursuant to the U.K. legislation described above. The proofs of claim (excluding exhibits) filed are attached as Exhibits D and E.

**The Determinations Panel Is The Best Forum For Resolving The U.K. Regulatory Procedure**

22. I believe that the U.K. Regulatory Procedure is the best and most convenient way to resolve the issues identified in the Warning Notice. As I understand from the opinion of Mr. Ham QC, it involves a single integrated assessment of Nortel Group company liabilities in

relation to Plan funding issues before a specialized and expert panel, thereby avoiding the delay and expense of having a multiplicity of concurrent procedures in different jurisdictions that would inevitably lead to conflicting findings of fact and determinations of law.

23.     Furthermore, the U.K. Regulatory Procedure is currently the only procedure in which all the relevant members of the Nortel Group from Canada, the U.S., Europe, the Middle East and Africa are parties. Indeed, many other Nortel Group entities will undoubtedly participate in the U.K. Regulatory Procedure. Ernst & Young LLP, as U.K. Joint Administrators ("Joint Administrators") appointed by the High Court of Justice, have advised that they intend to participate in the U.K. Regulatory Procedure on behalf of 16 Nortel Group entities which operated in 10 different countries.

**The Steps Taken By The Pensions Regulator In Pursuing The U.K. Regulatory Procedure**

24.     It is clear that the Debtors and other Nortel Companies listed in the Warning Notice ("Related Entities") have known about the U.K. Regulatory Procedure for some time. The Pensions Regulator advised the Trustee and the PPF by letter dated 25 September 2009 that it intended to issue a Warning Notice particularizing the case for the issuance of a Financial Support Direction against one or more of 20 Nortel Group entities, including the Debtors. A copy of this letter dated 25 September 2009 setting out the Pensions Regulator's intention to proceed in this manner is attached as Exhibit F. This letter was exhibited to the proofs of claim filed by the Trustee and the PPF on 30 September 2009 as described above. The proof of claim made it abundantly clear that the U.K. Regulatory Procedure was under way.

25.     On 11 January 2010 the Pensions Regulator issued a Warning Notice in respect of Nortel Networks Inc. ("NNI"), NN CALA and 27 other entities in the Nortel Group. A copy

of the Warning Notice was sent to the Trustee and the PPF.

26. The Warning Notice provides, in accordance with applicable U.K. legislation, that each of the recipient Related Entities has the opportunity to make representations to the Determinations Panel with respect to whether a Financial Support Direction should or should not issue, or to whom a Financial Support Direction should issue.

27. The Trustee has subsequently received the Debtors' Motion seeking an order enjoining the Trustee and the PPF from participating in the U.K. Regulatory Procedure. However, as explained above, this puts the Trustee in an impossible position because the Trustee must protect the interests of members under the Plan and considers that it therefore ought under English law to participate fully in that procedure, including appearing at any oral hearing that the Determinations Panel may convene and filing written submissions with the Determinations Panel.

28. From a timing perspective, I understand that the U.K. Regulatory Procedure that is now underway must be completed by 30 June 2010 as a matter of English law. On behalf of the 16 Nortel EMEA (Europe, Middle East and Africa) entities in 10 countries that are in the European Administration, the joint administration acknowledge that the Pensions Regulator was not prevented by the U.K. Insolvency Act 1986 from issuing the Warning Notice, and have confirmed their intention to participate in the U.K. Regulatory Procedure and to make submissions to the Determinations Panel. The Joint Administrators have requested an oral hearing before the Determinations Panel. The Joint Administrators' correspondence to the Pensions Regulator dated 25 November 2009 (written in response to a letter from the Pensions Regulator dated 11 November 2009) and 5 February 2010 in that regard are respectively attached

as Exhibit G and Exhibit H to this affidavit.

**Balance of Hardships**

29.     The Trustee and the PPF have complied with the Bar Date Orders and all other Orders of this Honorable Court.

30.     The Trustee and the PPF will be seriously prejudiced should the relief sought by the Debtors on this Motion be granted. In particular, as I explain above, the Trustee takes the view that it is in the best interests of the members of the Plan to participate in the U.K. Regulatory Procedure and accordingly considers itself to be obliged to do so. As a result, should the Honorable Court rule that such participation is a violation of the automatic stay under the U.S. Bankruptcy Code, the Trustee will find itself in an entirely untenable position.

31.     Conversely, I do not see how the Debtors will be prejudiced by the Trustee's participation in U.K. Regulatory Procedure. I note in particular from the opinion of Mr. Ham QC that the hearing before the Determinations Panel is only the first stage of the U.K. Regulatory Procedure. I understand that there can be an entirely new hearing before the Pensions Regulator Tribunal to review any Determination to issue a Financial Support Direction. It is my understanding that the affected Nortel entities may adduce new evidence and arguments at this rehearing. I can confirm on behalf of the Trustee and the PPF that we would not seek to prevent NNI and NN CALA from doing so at such a hearing. Therefore, even if (which I doubt) NNI and NN CALA would not be able to respond fully before 30 June 2010, they would not be prejudiced and could fully re-argue and present their case before the Pensions Regulator Tribunal.

- 10 -

32. Finally, I would reiterate that the issuance of a Financial Support Direction in accordance with the U.K. Regulatory Procedure does not amount to an attempt by the Trustee or PPF to collect a debt, seize assets, or enforce claims against the Debtors. The amount of the liability established in the U.K. Regulatory Procedure is simply intended to quantify the liability of the affected Nortel Related Entities for purposes of the proofs of claim that have been submitted in these Chapter 11 proceedings.

- 11 -

I declare, under the penalty of perjury that the foregoing is true and correct.

Executed this 24 day of February, 2010
in London, England

David Wyndham Davies