**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTEL NETWORKS INC., *et al.*,[1] | : Case No.: 09-10138 (KG) |
| | : |
| | : Jointly Administered |
| | : |
| Debtors. | : |
| | : |

**DECLARATION OF RICHARD FAVIER IN SUPPORT OF THE OBJECTION OF
THE TRUSTEE OF NORTEL NETWORKS UK PLAN AND THE BOARD OF THE
PENSION PROTECTION FUND TO DEBTORS' MOTION FOR ENTRY OF AN
ORDER ENFORCING THE AUTOMATIC STAY AGAINST CERTAIN
CLAIMANTS WITH RESPECT TO THE UK PENSION PROCEEDINGS**

I Richard Favier of Knollys House, 17 Addiscombe Road, Croydon, Surrey CR0 6SR hereby

declare as follows:

     1.    I am the Senior Insolvency Advisor to the U.K. Pension Protection Fund (the

"PPF"), Knollys House, 17 Addiscombe Road, Croydon, Surrey CR0 6SR.

     2.    I submit this declaration in support of the Objection of the Trustee of Nortel

Networks UK Plan (the "Trustee") and the Board of the Pension Protection Fund (the

"Board") to Debtors' Motion for Entry of an Order Enforcing the Automatic Stay Against

Certain Claimants with respect to the UK Pension Proceedings (the "Motion").  Except where

otherwise stated, the facts contained in this declaration are based upon my personal

knowledge, and information that I learned from reviewing relevant documents.  If I were

called to testify, I could and would testify competently to the facts set forth herein.

---

[1]    The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620),
Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma
Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications
Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks
HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc.
(0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and
Nortel Networks (CALA) Inc. (4226).

3.      I have been working for the Board in the role of Senior Insolvency Adviser since 5 April 2005 (when the PPF was established).  I am authorised by the Board to make this declaration.

**The Pension Protection Fund**

4.      The PPF is a statutory fund run by the Board, a statutory corporation established under the provisions of the Pensions Act of 2004 (the "Pensions Act 2004").  As a statutory body, the Board is accountable to the U.K. government through the Secretary of State for the Department for Work and Pensions.

5.      The PPF is required by statute to pay compensation to members of eligible underfunded defined benefit pension schemes where there has been a qualifying insolvency event in relation to the employer of that scheme and where there are insufficient assets in the pension scheme to cover PPF levels of compensation (the "Protected Liabilities").   Since it was set up in April 2005, the PPF has taken responsibility for 113 pension schemes with a total of 34,286 members and has paid a total compensation of approximately £119,836,305 (as at the end of January 2010).

6.      Where the PPF is required to accept responsibility for a scheme, the pension benefits payable by the Board to the members of that scheme are limited under statute to the PPF compensation level. This will often be less than the total benefits that have been accrued by a member under the terms of the pension scheme because pension benefits payable to members are subject to a statutory cap and in relation to certain categories of member are limited to only a proportion of their accrued benefits.   As a result, where an insolvent employer has underfunded a pension scheme to such an extent that the Board is required to take responsibility for the scheme, the members will (despite the statutory protection provided by the PPF) still lose any difference between their accrued pension entitlements

under the scheme and the statutory prescribed PPF compensation level. Broadly speaking the only members who will not be subject to a reduction to their benefits are those whose pensions were already in payment (subject to statutory requirements) as at the date of the scheme's employer's qualifying insolvency event (although even then restrictions can still apply).

7.     In order to fund the payment of pension benefits to eligible members, the Board is required by statute to charge all eligible occupational pension schemes an annual levy. Currently more than 7,000 pension schemes across the U.K. are charged a levy by the Board. The levy charged to schemes is a composite levy with part of it being calculated according to the risk of the insolvency of the scheme's sponsoring employer.   In general terms the more liabilities for which the Board is required to accept liability, the more funds it has to raise through levies. Accordingly, where the Board is required to accept responsibility for a pension scheme with a large deficit such as that of the Nortel Networks UK Pension Plan (the "Plan") this can have an impact on the levies that other pension schemes will have to pay in future years.

8.     The PPF consequently performs an important public role in that it is required by statute to provide compensation to members of underfunded schemes where the insolvency of the employers of those schemes means they are unable to provide further contributions.  As a statutory body, the Board has an important relationship with the U.K. Government to which it is accountable in the carrying out of its functions. In particular:

(a)     The Board is required to submit annual reports to the Secretary of State under section 119 of the Pensions Act 2004.  These reports must be laid before both Houses of Parliament of the U.K. government and must set out the activities of the Board in the financial year for which it is prepared including the

strategic direction of the Board and the manner in which it has been kept under review, the steps taken to scrutinise the performance of the Chief Executive in securing that the Board's functions are exercised efficiently and effectively, the Board's objectives and targets and the steps taken to monitor the extent to which they are being met.

(b)    The Pension Protection Fund compensation levels, including the percentages of accrued benefits paid as compensation and the statutory cap on benefits payable to members can be amended by the Secretary of State under paragraphs 27 to 30 of Schedule 7 to the Pensions Act 2004.

9.    The PPF is an entirely separate public body from the Pensions Regulator. The Pensions Regulator has its own statutory objectives and functions under the Pensions Act 2004 for the regulation of occupational pension schemes in the U.K. and the PPF has no right or power to control the regulatory functions of the Pension Regulator.

**The Assessment Period For The Nortel Networks UK Pension Plan**

10.    The entering into administration of Nortel Networks UK Ltd ("NNUK") on the 14 January 2009 constituted a qualifying insolvency event under section 121 of the Pensions Act 2004.  As a result, since this date the Plan has been in an "assessment period" under section 132 of the Pensions Act 2004 which is the period during which time the Board will assess whether it is required under the relevant statutory provisions to take responsibility to pay members' benefits at the Pension Protection Fund compensation level.

11.    During this period of assessment, the Board regards one of its main functions as trying to ensure that the scheme recovers all debts due to it.  The greater the success of the Board in achieving this function the less likely it is that it will be required to accept

responsibility for the scheme, and thereby avoid (for the reasons explained above) a reduction in the benefits payable to members.

12.    In order to achieve this function:

(a)    During the assessment period the rights and powers of the trustees or managers of the scheme in relation to any debt (including any contingent debt) due to them by the employer are exercisable by the Board to the exclusion of the Trustee: section 137 of the Pensions Act 2004. The Board considers that this includes the pursuing of any regulatory procedure associated with a debt owed to employer such as that initiated by the Pensions Regulator to obtain a Financial Support Direction from a number of entities of the Nortel Group connected or associated with NNUK (the "U.K. Regulatory Procedure").

(b)    The Board has the power to direct the Trustee to act in a certain way in order to ensure that the scheme's Protected Liabilities do not exceed its assets or, if they do exceed its assets, that the excess is kept to a minimum: see section 134(2) of the Pensions Act 2004. Issuing such a direction is seen as a serious step as this is a rarely-used power.

(c)    The Board also has the power to require the Trustee to provide information to it under section 190 of the Pensions Act 2004. A failure to comply with such a request from the Board is a criminal offence under section 193 of the Pensions Act 2004.

13.    The Trustee remains a completely independent entity from the PPF during the assessment period. It continues to have responsibility for the payment of benefits to the members of the Plan (limited during this period to the PPF compensation levels) and must continue to comply with its fiduciary duties to act in the best interests of the members of the

scheme. This is subject, however, to the Board's powers to direct the Trustee as set out above.

**The U.K. Regulatory Procedure**

14.    The Board has an interest in the success of the U.K. Regulatory Procedure which mirrors the interests of the Trustee in maximising the assets available to the Plan and this is the case whether or not the Board will ultimately be required to accept responsibility for the members of the Plan.

15.    The Board believes that the Trustee ought to participate in the U.K. Regulatory Procedure because the Trustee has an important role to play, not only in terms of the information that is available to the Trustee that could assist in the regulatory procedure, but also because any payment to the Plan that is achieved through the actions of the Pensions Regulator will be payable to the Trustee. As a result, if the Trustee were to decide not to participate in the U.K. Regulatory Procedure for any reason, the Board would give very serious consideration to making appropriate directions to require the Trustee to participate to the extent possible under the statutory powers of the Board.

I declare, under the penalty of perjury that the foregoing is true and correct.

Executed this 24th day of February, 2010
in Croydon, England

RICHARD FAVIER
Senior Insolvency Adviser
Duly authorised to sign
on behalf of the Pension
Protection Fund

6