UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* : | |
| : | Chapter 11 |
| NORTEL NETWORKS, INC., *et al.*, : | |
| : | Case Number 09-10138 (KG) |
| Debtors. : | (Jointly Administered) |
| : | (Hearing: 3/3/10 @ 2:00 p.m.; |
| | Objection deadline: extended for |
| | the U.S. Trustee to 3/1/10) |
| _____ | |

**OBJECTION OF THE
UNITED STATES TRUSTEE
TO DEBTORS' MOTION FOR ENTRY OF AN
ORDER (A) APPROVING THE NORTEL SPECIAL INCENTIVE
PLAN; (B) AUTHORIZING CERTAIN PAYMENTS UNDER THE KEY
EMPLOYEE RETENTION PLAN AND KEY EXECUTIVE INCENTIVE
PLAN; AND (C) APPROVING CERTAIN EMPLOYMENT AGREEMENTS**

In support of her objection to the Debtors' Motion for Entry of an Order (A) Approving the Nortel Special Incentive Plan; (B) Authorizing Certain Payments under the Key Employee Retention Plan and Key Executive Incentive Plan; and (C) Approving Certain Employment Agreements (the "Motion"), Roberta A. DeAngelis, Acting United States Trustee for Region 3 (the "U.S. Trustee"), through her counsel, states:

**INTRODUCTION**

1. Under (`i) 28 U.S.C. § 1334, (ii) an order of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this objection.

2. Under 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee is charged with monitoring

1

plans filed under Chapter 11 and filing comments with regard to such. This duty is part of the U.S. Trustee's responsibility to enforce the laws as written by Congress and interpreted by the courts. See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.), 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.  Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the Motion and the issues raised in this objection.

### **THE MOTION**

4.  The Debtors had previously filed a motion seeking court approval of a key employee retention pan (the "KERP") and a key executive incentive plan" (the "KEIP"). The Court granted that motion in orders entered on March 5, 2009 (with respect to plan participants who were *not* U.S. members of the Nortel Senior Leadership Team) and March 20, 2009 (with respect to the U.S. Nortel Senior Leadership Team members). Some of the award amounts under the KEIP were subject to a "third milestone," i.e. confirmation of a plan of reorganization in the U.S. or confirmation of plan of restructuring or arrangement in Canada. *See* Motion, at 10-11. Certain KERP amounts were also payable upon the occurrence of either the third milestone or June 10, 2010, which ever date occurred first. The third milestone has not yet occurred.

5.  On February 11, 2010, the Debtors filed the Motion, which seeks authority to

make the "third milestone" payments under the KERP and the KEIP irrespective of the non-occurrence of the third milestone. The Debtors assert that the cases have drastically changed direction since the KERP and KEIP were approved, so that confirmation of a plan of reorganization became meaningless as a goal for incentivizing employees. The Debtors assert that payment should instead be approved now based on the Debtors' successful liquidation efforts.

6. The Debtors' Motion also seeks approval of a new plan called the "Nortel Special Incentive Plan" (the "NSIP"). The Debtors argue that their various successful sales efforts have had the result that Debtors' staff will need to provide "transition services" in connection with those sales. The Debtors therefore describe two new organizational structures for the Nortel enterprise: the "Nortel Business Services" (which focuses on providing transition services) and the "Corporate Group" (charged with providing corporate overhead services as well as services related to the sales and restructuring efforts). *See* Motion, at 13-14. The Motion seeks authority for incentive payments under the NSIP totaling $55,596,095 over two years, for 866 of the Debtors' employees. According to the Debtors, approximately 88% of the cost of these payments has been built into the transfer servicing agreements, so that the total cost to the Debtors is approximately $7 million.

7. The Motion also seeks approval of three new employment agreements, for Christopher Ricaurte (the new President of NBS), Donald McKenna (VP Supply Chain Services & Real Estate), and John Veschi (Chief Intellectual Property Officer). Each of those agreements includes incentive payments based partly on performance, and partly on retention

3

with the Debtors for each of the 2010 and 2011 calendar years.

## THE UNITED STATES TRUSTEE'S OBJECTION

8. The Pursuant to Section 503(c),

Notwithstanding subsection (b) [allowing the payment of administrative expenses in certain circumstances], there shall neither be allowed, nor paid –

(1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based upon evidence in the record that –

> (A) the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;

> (B) the services provided by the person are essential to the survival of the business; and

> (C) either

> (i) the amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred; or

> (ii) if no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred; [or]

\*   \*   \*   \*   \*

(3) other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of filing of the petition.

9. With respect to the "third milestone" payments, the United States Trustee objects

that retroactive substitution of the sales criteria for the plan confirmation requirement is meaningless, because the sales are already completed. Particularly with respect to insiders, no incentivizing function is served, i.e. the sales are a fait accompli.

10. The United States Trustee objects to the NSIP for various reasons. First, the aggregate total of incentive payments is extraordinary. Assuming all payments were made equally among employees, the average would be $32,000/year per employee. Second, the argument that of 88% of the cost is being borne by the purchasers of the various lines of business is misplaced; any sale of services should be at a price which covers costs that may be anticipated. Third, the payment criteria (the "metrics") for awards to insiders do not appear to fully comply with Section 503(c)(1), because some of the criteria are retention-based. Other "performance" criteria are not sufficiently described in the Motion, so that their "incentivizing" feature cannot be properly determined under Section 503(c)(3). (The United States Trustee and the Debtors continue to be engaged in discussions regarding the metrics.)

11. The metrics for incentive awards under the employment agreements appear to be similarly deficient, lacking sufficient detail to enable one to determine that they are not "retention-based" under Section 501(c)(1) and appropriate under Section 501(c)(3). Thus, the United States Trustee objects that the employment agreements fail to comply with Section 501(c).

## CONCLUSION

WHEREFORE, the U.S. Trustee requests that this Court enter an order denying the Motion.

    Respectfully submitted,

    **ROBERTA A. DeANGELIS**
    **ACTING UNITED STATES TRUSTEE**

**BY:** /s/ T. Patrick Tinker
    T. Patrick Tinker, Esquire (Fl. Bar No.64874 )
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Room 2207, Lockbox 35
    Wilmington, DE  19801
    (302) 573-6491
    (302) 573-6497 (Fax)

Date: March 2, 2009