IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
:
*In re*                                                  :    Chapter 11
                                                         :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,[1]                         :    Jointly Administered
                                                         :
                              Debtors                    :    Hearing Date: March 3, 2010 at 2:00 p.m (ET)
                                                         :    RE: D.I. 2574
---------------------------------------------------------x

### RESERVATION OF RIGHTS OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(a) AND § 363(b) FOR AN ORDER APPROVING THE METRO ETHERNET NETWORKS SIDE AGREEMENT AND GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditor (the "Committee") of Nortel Networks Inc. ("NNI"), et al. (the "U.S. Debtors") submits this reservation of rights (the "Reservation of Rights"), with respect to the Debtors' Motion Pursuant to 11 U.S.C. § 105(a) and § 363(b) for an Order Approving the Metro Ethernet Networks Side Agreement and Granting Related Relief (the "Motion"). In support of this Reservation of Rights, the Committee respectfully submits as follows:

### I. PRELIMINARY STATEMENT

1. While the Committee does not object to the substantive terms of the Side Agreement (as defined below), it does object to the proposed designation of Nortel Networks S.A. ("NNSA") as a Selling Debtor under section 12.a of the IFSA (as defined below), as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc (9769); Nortel Altsystems International Inc (5596); Xros, Inc (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc (5722); Nortel Networks Applications Management Solutions, Inc (2846); Nortel Networks Optical Components, Inc (3545); Nortel Networks HPOCS Inc (3546); Architel Systems (U S ) Corporation (3826); Nortel Networks International Inc (0358); Northern Telecom International Inc (6286); Nortel Networks Cable Solutions Inc (0567); and Nortel Networks (CALA) Inc (4226).

described in the recitals of the Side Agreement. Such designation was agreed to by Nortel without prior consultation with the Committee. Given NNSA's limited contribution to the MEN Sale (as defined below), the Committee strongly disagrees with the designation and reserves it rights to argue that such designation shall have no precedential effect, or relevance, on the ultimate allocation of proceeds to NNSA, if any, from the MEN Sale pursuant to the Allocation Protocol (as defined below).

## II. BACKGROUND

2. On January 14, 2009, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Proceeding") in the United States Bankruptcy Court for the District of Delaware (the "Court").

3. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4. On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and, together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice for a plan of compromise or arrangement under Canada's Companies' Creditors Arrangement Act. The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor.

5. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates into administration (the "EMEA Debtors" and, together with the US

Debtors and the Canadian Debtors, the "Nortel Debtors") under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") ordered the commencement of secondary proceedings in respect of NNSA. NNSA has been authorized to continue to operate as a going concern under the supervision of a French administrator and a French liquidator.

6. On January 22, 2009, pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware appointed the Committee. The Committee currently consists of four members.[2]

### A. The Interim Funding and Settlement Agreement

7. On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into that certain Interim Funding and Settlement Agreement (the "IFSA"). Pursuant to section 12 of the IFSA, the parties have agreed to negotiate in good faith in an effort to reach agreement on a protocol (the "Allocation Protocol") for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (both terms as defined in the IFSA). On June 29, 2009, this Court entered an order approving the IFSA.

8. Section 12 of the IFSA also creates certain rights and obligations for "Selling Debtors", which are defined in section 12.a. of the IFSA as those Nortel Debtors that are selling *material assets* in a given transaction. Specifically, (a) section 12.b of the IFSA provides that no distributions can be made from a Sale Proceeds escrow account prior to (i) the agreement of all applicable Selling Debtors or (ii) failing such agreement, a determination of the dispute resolvers

---

[2] The Committee is currently comprised of the following entities: Flextronics Corporation (Chairperson); Law Debenture Trust Company of New York, as indenture trustee; Pension Benefit Guaranty Corporation; and The Bank of New York Mellon, as indenture trustee.

under the Allocation Protocol, and (b) section 12.d of the IFSA provides that the Selling Debtors shall, following entry into an asset sale, negotiate in good faith to attempt to reach agreement regarding the allocation of Sale Proceeds from the relevant Sale Transactions, and failing such agreement of the Selling Debtors, the allocation of the Sale Proceeds will be conducted under the procedures in the Allocation Protocol.

9. Section 11.a of the IFSA requires that the U.S. Debtors and EMEA Debtors enter into intellectual property license termination agreements (the "License Termination Agreements") with respect to licenses granted to such entities by NNL under that certain Master Research and Development Agreement, dated as of December 22, 2004 (as amended and supplemented from time to time, the "MRDA") "for the purpose of facilitating, and in consideration of a right to an allocation, to be determined in accordance with this Section 11, to such Debtors of portions of the sale proceeds from, the sale of any material assets … ." Section 11.d of the IFSA further states that any Nortel Debtor that enters into a License Termination Agreement (each such entity, a "License Termination Party") shall be *deemed* a "Selling Debtor" for the purposes of sections 12.b and 12.d described above, but are not entities that have sold *material assets* under section 12.a.

### B.    The MEN Sale and the Motion

10. On October 7, 2009, the Debtors filed a motion (the "MEN Bidding Procedures Motion") to approve proposed bidding procedures and stalking horse agreement with Ciena Corporation ("Ciena") for the sale of the Nortel Debtors' Metro Ethernet Networks business (the "MEN Sale"). This Court entered an order approving the MEN Bidding Procedures Motion on October 16, 2009. As this Court is aware, Ciena was selected as the successful bidder after a three day auction. Following a joint hearing of the U.S. and Canadian Courts, an order approving the MEN Sale to Ciena was entered by this Court on December 3, 2009.

11. On February 26, 2010, the Debtors filed the instant Motion, seeking approval of that certain Metro Ethernet Networks Side Agreement by and among NNI, NNC, NNL, certain of their affiliates and subsidiaries, certain of the EMEA Debtors and the Joint Administrators (the "Side Agreement") which, among other things, facilitates cooperation among the various Nortel Debtors to consummate the MEN Sale and addresses certain matters related to the allocation of the benefits and costs of such sale.

12. The Side Agreement contains the following recital:

> WHEREAS, NNSA acceded to the IFSA on September 11, 2009 and, notwithstanding that NNSA is not a party to the Sale Agreements, NNSA is, pursuant to a letter dated September 28, 2009, a Selling Debtor *under Section 12 a of the IFSA* for the purposes of the Transaction (as defined below) and, as such, any reference in this Agreement to a Selling Party shall be construed as including NNSA (emphasis added).

### III. RESERVATION OF RIGHTS

13. Without first consulting, or seeking the input of, the Committee (which itself has consent rights over certain actions of the U.S. Debtors with respect to section 12 of the IFSA), NNI, NNC, NNL (collectively, the "Nortel Parties") and certain of their affiliates signed a letter with NNSA, dated September 28, 2009 (the "NNSA Letter"), acknowledging that NNSA is a Selling Debtor *under section 12 a* of the IFSA, and agreeing that NNSA will participate in any procedure for, and shall have the right to, an allocation of the Sale Proceeds from the MEN Sale regardless of whether Ciena acquires any of NNSA's assets. Upon information and belief, the Nortel Parties agreed to this acknowledgement in exchange for NNSA's agreement to terminate its intellectual property license rights to facilitate the MEN Sale.

14. NNSA's participation in the MEN Sale is limited to the termination of an intellectual property license and the potential transfer of two employees to Ciena. Further, NNSA is not a party to any of the sale agreements related to the MEN Sale. This hardly qualifies

as a sale of NNSA's material assets, and accordingly, the Committee strongly believes that NNSA is <u>not</u> a Selling Debtor under *section 12.a* of the IFSA. Given its limited role in the transaction, NNSA is more appropriately characterized as a License Termination Party, as described in *section 11.d* of the IFSA.

15. Properly characterizing NNSA as a License Termination Party will not prejudice the rights of NNSA to participate in the proceeds allocation process under the Allocation Protocol or to argue that NNSA is entitled to some portion of the proceeds from the MEN Sale. Such characterization will also have no effect on the ultimate quantum of Sale Proceeds, if any, that NNSA may be awarded. All of those rights are preserved under the IFSA. As such, the Committee does not understand the demand by NNSA to be labeled a "Selling Debtor" as opposed to a "License Termination Party", and does not agree with the decision of the Nortel Parties in that regard. Accordingly, the Committee reserves its rights to argue that the proposed designation of NNSA as a Selling Debtor under the IFSA should have no effect on, and shall not be relevant in determining, the ultimate allocation of proceeds to NNSA, if any, from the MEN Sale pursuant to the Allocation Protocol.

Dated: New York, New York
      March 2, 2010

                                            AKIN GUMP STRAUSS HAUER & FELD LLP

                                            /s/ David H. Botter
                                            Fred S. Hodara (*pro hac vice*)
                                            David H. Botter (*pro hac vice*)
                                            Akin Gump Strauss Hauer & Feld LLP
                                            One Bryant Park
                                            New York, NY 10036
                                            Tel.: (212) 872-1000

                                            Co-counsel to the Committee

                                            And

Mark D. Collins (No. 2981)
Christopher M. Samis (No. 4909)
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
Tel.: (302) 651-7700

Co-counsel to the Committee