IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                                            :
*In re*                                                     :   Chapter 11
                                                            :
Nortel Networks Inc., *et al.*,[1]                          :   Case No. 09-10138 (KG)
                                                            :
                          Debtors.                          :   Jointly Administered
                                                            :
                                                            :   Hearing date: March 31, 2010, 10:00 a.m. (ET)
                                                            :   Objections due: March 24, 2010, 4:00 p.m. (ET)
                                                            :
                                                            :   RE:  D.I. 859, 860, 986, 988
                                                            :
------------------------------------------------------------X

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER APPROVING AN AMENDMENT TO THE TERMS OF COMPENSATION AND RETENTION OF PALISADES CAPITAL ADVISORS LLC AND PUNTER SOUTHALL LLC AS PENSION CO-ADVISORS TO THE DEBTORS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby file this application (the "Application"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), approving an amendment to the terms of compensation and retention of Palisades Capital Advisors LLC ("Palisades Advisors," now doing business as Palisades Capital Management LLC ("Palisades Management," and together

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

with Palisades Advisors, "Palisades") as further described herein) and Punter Southall LLC ("Punter Southall," and together with Palisades, the "Pension Co-Advisors") as pension co-advisors to the Debtors. In support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327 and 328 of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

## Background

**A.   Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited

("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to

---

[2]   The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]   The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On February 26, 2010, the French Court extended the suspension of liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter from Kapsch CarrierCom AG stating that its bid for the GSM//GSM-R assets of NNSA has become unconditional.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

11. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.    Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539];

---

[5]   Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

(ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]. In addition, Nortel has obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065]; as well as the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business [D.I. 2632].

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15. By this Application, the Debtors seek an order, pursuant to Bankruptcy Code sections 327(a) and 328(a), as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1, approving an amendment to the terms and conditions under which Palisades and Punter Southall are compensated as pension co-advisors to the Debtors.

**Facts Relevant to this Application**

16. On June 5, 2009, the Debtors filed concurrent applications for orders authorizing the retention of Palisades and Punter Southall, effective as of May 8, 2009, as

pension co-advisors in connection with these chapter 11 cases (the "Original Applications") [D.I.s 859, 860]. As discussed in the Original Applications, the experience and specialization of the Pension Co-Advisors make them critical to any effort to assess and resolve pension-related issues.

17.     On June 26, 2009, this Court entered orders that approved the retention of Palisades and Punter Southall, effective as of May 8, 2009, as pension co-advisors to the Debtors (the "Original Retention Orders") [D.I.s 986, 988], pursuant to the terms of that certain letter agreement among NNI, Palisades and Punter Southall, dated as of May 8, 2009 (the "Engagement Agreement"), attached hereto as Exhibit B.

18.     Since their retention, the Pension Co-Advisors have provided important services to the Debtors relating to the analysis and resolution of pension-related issues. Specifically, the Pension Co-Advisors have provided advice and analysis to the Debtors with regard to alleged potential pension obligations. For example, the Debtors have consulted the Pension Co-Advisors in connection with three divestiture-related settlements with the Pension Benefit Guaranty Corporation (the "PBGC"), including one settlement between the Debtors, the Internal Revenue Service and the PBGC [D.I.s 1205, 1658, 2157]. The Debtors expect the Pension Co-Advisors to continue providing advice to the Debtors with regard to asserted potential pension obligations, including, if and when necessary, with respect to any future divestiture-related settlements with the PBGC.

19.     On March 1, 2010, Palisades Advisors completed a reorganization process whereby Palisades Advisors became Palisades Management. Palisades Management, an entity affiliated with Palisades Advisors, assumed Palisades' advisory business activities. The

7

reorganization will have no effect on the provision of such services to the Debtors by the same principal and employees.

## Amended Compensation and Retention Structure

20. Although the advice of the Pension Co-Advisors remains critical to any resolution of pension-related issues, due to a lower initial volume of pension-related issues in the early months of their engagement, the Pension Co-Advisors entered into discussions with the Debtors to restructure the compensation of the Pension Co-Advisors. After careful consideration, the Debtors and the Pension Co-Advisors have agreed to modify the compensation scheme originally set forth in the Engagement Agreement as described below (the "Amended Fee Structure"). Additionally, in light of the proofs of claim filed by the Trustee of the NNUK Pension Plan and the Pension Protection Fund with respect to claimed liability of the Debtors for the NNUK Pension Plan underfunding, the Pension Co-Advisors have also agreed to amend their sharing percentage to better compensate each co-advisor for their respective services.

21. The Amended Fee Structure provides:

   a. <u>Reduction of Monthly Advisory Fee</u>: Beginning with December 2009, the monthly cash fee paid to the Pension Co-Advisors (the "<u>Monthly Advisory Fee</u>") will be reduced from $200,000 to $125,000.

   b. <u>Extension of Minimum Advisory Fee Period</u>: The length of the guaranteed payment period (the "<u>Minimum Advisory Fee Period</u>") will be extended two months, from the first ten months of the Co-Advisors' engagement to the first twelve months of the Co-Advisors' engagement, and will run through April 2010. In the event the Engagement Agreement is terminated prior to the end of the Minimum Advisory Fee Period, the Pension Co-Advisors will be entitled to at least the aggregate Monthly Advisory Fees payable through the Minimum Advisory Fee Period.

   c. <u>Sharing of the Monthly Advisory Fee</u>: The sharing percentages of the Monthly Advisory Fee set forth in the Engagement Agreement will continue through February 2010, with sixty-five percent of the Monthly Advisory Fee payable to Palisades and thirty-five percent

to Punter Southall. The Pension Co-Advisors have agreed that in March and April 2010, fifty percent of the Monthly Advisory Fee will be paid to Palisades and fifty percent to Punter Southall, and in subsequent months, thirty-five percent will be paid to Palisades and sixty-five percent to Punter Southall.

22. As the successor to Palisades Advisors, Palisades Management now provides the pension advisory services set forth in the Engagement Agreement to the Debtors as a Pension Co-Advisor. Subsequent to the date of Palisades' reorganization, the appropriate percentage of the Monthly Advisory Fee will be paid to Palisades Management (this change in retention, together with the Amended Fee Structure, the "<u>Amended Compensation and Retention</u>").[6]

### Basis for Relief

23. Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ one or more professionals that do not hold or represent an interest adverse to the estate and that are disinterested persons to assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code. 11 U.S.C. § 327(a).

24. Section 328 of the Bankruptcy Code provides, in pertinent part, that under section 327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

25. By this Application, the Debtors request that the Court approve the Amended Compensation and Retention.

---

[6] Prior to the approval of this Motion, the Pension Co-Advisors filed fee applications for December and January which reflect the Amended Compensation and Retention, and upon entry of an order approving this Motion, the fees and expenses for December and January will paid according to the interim compensation procedures approved in these cases. Additionally, any fee applications filed by the Pension Co-Advisors prior to the approval of this Motion will reflect the Amended Compensation and Retention and upon entry of an order approving this Motion, the fees and expenses will be paid according to the interim compensation procedures approved in these cases.

26. The amendment aligns the arrangements between NNI and the Pension Co-Advisors with the current needs of the Debtors. The fee modification is in the best interests of the Debtors' creditors and estates as it restructures the monthly payments to the Pension Co-Advisors to better reflect the needs of the Debtors, while at the same time maintaining the critical relationship with the Pension Co-Advisors. Additionally, the amendment reflects Palisades' reorganization and current corporate structure.

27. Accordingly, the Debtors respectfully submit that the Amended Compensation and Retention is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

28. Except as expressly set forth in this Application, all other terms and conditions set forth in the Engagement Agreement and approved by the Original Retention Orders shall remain the same.

### Reservation of Rights

29. Should this Court determine not to approve this Application for any reason, then the Engagement Letter, as approved by the Original Retention Orders, shall remain in full force and effect, without interruption. The Debtors and the Pension Co-Advisors hereby reserve any and all of their rights to further amend, restate or terminate the Engagement Letter pursuant to such agreement's terms, and subject to any necessary Court approval.

### Notice

30. Notice of the Application has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

31. No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: March 10, 2010  
      Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone: (212) 225-2000  
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  */s/ Alissa T. Gazze*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Alissa T. Gazze (No. 5338)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone: (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors in Possession*