**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
:
: Hearing Date: March 31, 2010 at 10:00 a.m. (ET)
: Objection Deadline: March 24, 2010 at 4:00 p.m. (ET)
---------------------------------------------------------X

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363
FOR AN ORDER (I) AUTHORIZING AND APPROVING
NORTEL NETWORK INC.'S ENTRY INTO THE CASCADING DIRECTORS'
TRUST INDENTURE, (II) AUTHORIZING AND APPROVING THE
<u>RELATED SIDE AGREEMENT AND (III) GRANTING RELATED RELIEF</u>**

Nortel Networks Inc. ("<u>NNI</u>") and certain of its affiliates, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), hereby move this Court (the "<u>Motion</u>") for the entry of an order substantially in the form attached hereto as <u>Exhibit 1</u>, pursuant to sections 105(a) and 363 of title 11 of the United States Code (as amended, the "<u>Bankruptcy Code</u>"), (i) authorizing and approving NNI's entry into the trust indenture attached hereto as <u>Exhibit 2</u> (the "<u>Indenture</u>"); (ii) authorizing and approving the related side agreement (the "<u>Side Agreement</u>," and together with the Indenture, the "<u>Agreements</u>"), by and between NNI and NNL (as defined below), attached hereto as <u>Exhibit 3</u>; and (iii) granting them such other and further relief as the Court

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

deems just and proper. In support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

---

[2]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On the Petition Date, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On February 26, 2010, the French Court extended the suspension of liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter from Kapsch CarrierCom AG stating that its bid for the GSM/GSM-R assets of NNSA has become unconditional. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

11. Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to

---

[5]     Capitalized terms used but not defined herein (other than paragraph 21 of this Motion) have the meanings ascribed to them in the First Day Declaration.

Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065]; as well as the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business [D.I. 2632].

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

### Relief Requested

15. By this Motion, the Debtors respectfully request the entry of an order authorizing NNI to enter into the Indenture, pursuant to which NNI (along with NNL) seeks to establish an indemnity trust with regards to certain potential claims for the benefit of certain directors, officers, or agents of certain non-filed subsidiaries of NNI and/or NNL, and granting such further relief as the Court deems just and proper.

**Facts Relevant To This Motion**

16.     As discussed above, Nortel, in consultation with its various creditor constituencies, has determined to divest its various businesses to third party buyers (each such sale, a "Global Sale").

17.     In order to sell Nortel's businesses on a going concern basis and to maximize the recoveries of Nortel's creditors, it is important that all relevant Nortel entities, including those entities that have not filed for any creditor protection proceedings, participate in the Global Sales.

18.     Under the laws of various jurisdictions in which Nortel operates, the directors, officers and agents of the relevant Nortel entity may become exposed to potential claims for personal liability relating to their service as a director, an officer or an agent of such Nortel entity.

19.     In order to enable certain individuals designated by NNI or NNL, as applicable, to serve as directors, officers or agents of certain non-filed Nortel entities (each such entity, a "Cascade Subsidiary") and to facilitate the participation of such Cascade Subsidiaries in the Global Sales (as permitted by applicable law) and the orderly wind-down of such Cascade Subsidiaries upon completion of the relevant Global Sales (or in some cases where such entity is dormant to facilitate an orderly wind-down of such entity), NNI and NNL (together, the "Settlors") have agreed to provide financial assurances, subject to the limitations set forth in and in accordance with the terms of the Indenture, in the event certain claims are asserted against the directors, officers or agents of the Cascade Subsidiaries relating to, arising from or based on their service as directors, officers or agents of the Cascade Subsidiaries.

20.     By establishing a trust to indemnify the Beneficiaries (as defined below) against certain claims, the Settlors seek to create conditions that will allow the Beneficiaries to focus without distraction on their responsibilities in their designated positions – namely, consummation of the Global Sales, the provision of transition services required pursuant to the transaction documents of the Global Sales and an orderly wind-down of Nortel's affairs (including, without limitation, the wind-down of Cascade Subsidiaries), each in accordance with the exercise of their relevant fiduciary responsibilities.

**Terms of the Indenture**[6]

21.     Under the terms of the Indenture, NNI and NNL will each initially contribute cash, equal to the amount set forth in Exhibit B of the Indenture, to an irrevocable trust (the "Trust") to be applied for the exclusive benefit of the individuals set forth in Exhibit C of the Indenture in their capacities as directors, officers and/or agents of a Cascade Subsidiary, and any successor to these individuals serving in any such position (collectively, the "Beneficiaries"). The Trust, subject to the terms and conditions set forth in the Indenture, will indemnify and hold each Beneficiary harmless for any cost reasonably incurred by such Beneficiary as it relates to, arises from or is based on such Beneficiary's service as a director, an officer or an agent of a Cascade Subsidiary. As such, the Trust reflects a modest compromise to enable these individuals

---

[6]     The summaries and descriptions of the terms and conditions of the Indenture set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the Indenture. In the event there is a conflict between the Motion and the Indenture, the Indenture shall control in all respects.

8

to serve as directors, officers, or agents of non-filed Nortel entities in order to further the restructuring process. The main terms of the Indenture include:[7]

- Indemnified claim: The Trust shall indemnify each Beneficiary in connection with any Claim that may be made or asserted against or affecting such Beneficiary if it relates to, arises from or is based on such Beneficiary's service as a director, an officer, or an agent of a Cascade Subsidiary (an "Indemnified Claim").

- Procedure for Making a Claim: Each Beneficiary agrees to seek payment for any Costs relating to any Indemnified Claim in the following order: first, the assets of the Cascade Subsidiary to which such Indemnified Claim is related (subject to the limitations set forth in the Indenture); second, any D&O Insurance available to such Beneficiary to cover such Costs; and third, the remaining Trust Property at such time (subject to the limitations set forth in this Indenture).

- Releases from the Settlors and the Cascade Subsidiaries: To the maximum extent permitted by applicable Laws, the Settlors shall release each Beneficiary from any liability in connection with actions taken by such Beneficiary in its capacity as a director officer, or agent of a Cascade Subsidiary, other than any liability resulting from such Beneficiary's fraud or wilful misconduct.

- Indemnification: To the maximum extent permitted by applicable Laws, the Settlors shall cause, at the time of appointment of any Beneficiary as a director, an officer or an agent of any Cascade Subsidiary, the relevant Cascade Subsidiary to agree to (a) indemnify and hold harmless such Beneficiary for any Indemnified Claims relating to, arising from or based on such Beneficiary's service in an Indemnified Capacity with regards to such Cascade Subsidiary (other than any Claims (x) resulting from such Beneficiary's fraud or wilful misconduct or (y) the indemnification of which is prohibited by applicable Laws), (b) designate such Beneficiary as an insured party under any insurance policy applicable to the directors, officers or agents of such Cascade Subsidiary, and (c) release such Beneficiary from any liability in connection with actions taken by such Beneficiary in its Indemnified Capacity (other than any liability resulting from such Beneficiary's fraud or wilful misconduct).

- Subrogation: Each Beneficiary grants the Trust a right of subrogation against any Cascade Subsidiary for reimbursement of amounts paid by the Trust

---

[7] Capitalized terms used in this paragraph but not defined herein have the meanings ascribed to them in the Indenture.

pursuant to this Indenture.  Each Beneficiary agrees to execute any documents as the Trust may reasonably request in order to evidence or exercise any such subrogation rights.

- No Liability for Insufficient Funds:  The Trustee[8] shall not be liable to any Person (including any Beneficiary or the Settlors) in the event that the Trust Property is insufficient to pay in full or in part any Indemnified Claim.  In the event of any insufficiency of funds in the Trust Property, the Trustee has no obligation to seek additional money, property or value to the Trust from the Settlors or any other Person, and the Settlors or the Trustee shall have no obligation pursuant to this Indenture or otherwise to provide additional money, property or value to the Trust.

- No Further Contribution from the Settlors:  Beyond the initial contribution contemplated in Exhibit B, the Settlors have no further obligation to provide or contribute any money, property or value to the Trust, the Trustee, any Beneficiary or any other Person in respect of any Indemnified Claim or otherwise.

- Indemnification of the Trustee:  Subject to certain exceptions as set forth in the Indenture, the Trustee shall be indemnified out of the Trust Property from and against all Claims and Costs arising in any manner out of or in connection with this Indenture and the Trust except to the extent that the Claims and Costs are attributable to dishonesty, fraud or wilful misconduct by the Trustee.

- Adjustment of Trust Corpus:  At the earlier of (i) the Confirmation Date, and (ii) the fifth anniversary of the creation of the Trust, but in no event before December 31, 2011, the Beneficiaries, the Settlors and the Trustee shall meet to discuss a reduction in the Trust Property and a termination date for the Trust.  In the event that the parties agree to reduce the Trust Property, the Trustee shall distribute to each Settlor an equal proportionate amount (50% each) of the amount by which the Trust Property is to be reduced.  Upon termination of the Trust, all remaining Trust Property shall be distributed to each Settlor in equal proportionate amounts.  In the event that the parties cannot reach agreement on the appropriate amount of Trust Property or the appropriate date for the Trust to terminate, then the Settlors shall submit for resolution of the appropriate reduction in the Trust Property and/or a termination date for the Trust to the Relevant Court.

---

[8] The Trustee is John T. Evans, who is a former partner of the Canadian law firm, Osler, Hoskin & Harcourt LLP ("Osler").  Osler is counsel to the board of directors of certain Canadian Debtors.  John T. Evans also serves as successor trustee to a directors' and officers' trust previously established by NNC in conjunction with the CCAA Proceedings.

### Side Agreement Terms[9]

22. In order to facilitate the establishment of the Trust in a timely manner, the Settlors have agreed to initially contribute amounts as set forth in Exhibit B of the Indenture in equal proportions. However, because the main purpose of the establishment of the Trust is to allow the Cascade Subsidiaries to participate in the Global Sales, NNI and NNL have agreed to enter into a side agreement that requires each to use commercially reasonable efforts to recover from other Nortel entities that are benefiting from the Global Sales (with certain exceptions as set forth in Section 2.1 of the Side Agreement) a reasonable portion of the net amounts contributed by the Settlors to establish the Trust.

23. In addition, NNI and NNL have agreed to share the net amounts contributed by each of them in establishing the Trust on a pro rata basis based on the weighted average of proceeds allocated to each of them from certain Global Sales as set forth in Side Agreement.

24. NNL will also seek approval of the Indenture and the Side Agreement by the Canadian Court.

### Basis For Relief Requested

25. The relief requested by the Debtors is squarely authorized under the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b)(1) of the Bankruptcy Code permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and hearing. 11 U.S.C. § 363(b)(1). To obtain court approval to use property under section 363(b), the Debtors

---

[9] This overview is intended as a summary of the terms of the Side Agreement. If any conflict arises between this overview and the Side Agreement, the terms of the Side Agreement shall control. Capitalized terms used in this overview but not described herein have the meaning ascribed to them in the Side Agreement.

need only show a legitimate business justification for the proposed action.  See <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 772 F.2d 1063 (2d Cir. 1983); <u>In re Del. & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991) (noting that the Third Circuit has adopted the "sound business purpose" test for section 363(b)).  If a valid business justification exists, the law vests a debtor's decision to use property out of the ordinary course of business with a strong presumption "that in making a business decision the directors of the corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  <u>Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.</u>, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting <u>Smith v. Van Gorkom</u>, 488 A.2d 858, 872 (Del. 1985)).

26. As discussed above, NNI seeks to establish the Trust for three primary reasons: (a) to facilitate timely consummation of the Global Sales; (b) to provide transition services to third party buyers as required by the transaction documents of the Global Sales; and (c) to support an orderly wind-down of the Cascade Subsidiaries upon completion of the relevant Global Sales.  Without the establishment of the Trust, it is unlikely that the Beneficiaries will agree to serve (or continue to serve) as directors, officers or agents of the Cascade Subsidiaries and therefore the establishment of the Trust is beneficial to the estates to the extent it facilitates the restructuring process.  Accordingly, the Debtors believe that the entry into the Agreements by NNI is a reasonable exercise of the Debtors' business judgment and respectfully submit that the Court should approve NNI's entry into the Agreements.

## Notice

27. Notice of the Motion has been given via first class mail, facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) the Committee; (iii) the

Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

28.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  March 10, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*