**EXHIBIT 2**

**EXHIBIT C OF EXHIBIT 2 FILED UNDER SEAL**

**EXECUTION VERSION**

**NORTEL NETWORKS LIMITED**

**NORTEL NETWORKS INC.**

**- and -**

**JOHN T. EVANS**

---

**TRUST INDENTURE**

Dated ●, 2010

---

## TABLE OF CONTENTS

Page

ARTICLE 1    INTERPRETATION................................................................................. 2

    1.1    Definitions........................................................................................... 2
    1.2    Headings, etc. ..................................................................................... 6
    1.3    Articles; Sections; etc. ....................................................................... 6
    1.4    Gender; Singular/Plural ..................................................................... 6
    1.5    Certain Phrases, etc. .......................................................................... 7
    1.6    Business Day ...................................................................................... 7

ARTICLE 2    INDEMNITY ...................................................................................... 7

    2.1    Indemnity ........................................................................................... 7
    2.2    Notice of Claim .................................................................................. 7
    2.3    Procedure for Making a Claim........................................................... 8
    2.4    Defense of Action .............................................................................. 8
    2.5    Former Directors and Officers ........................................................... 9
    2.6    Enurement .......................................................................................... 9
    2.7    Previous Indemnities.......................................................................... 9
    2.8    Releases from the Settlors and the Cascade Subsidiaries ................... 10

ARTICLE 3    THE TRUST ...................................................................................... 10

    3.1    Creation of Trust ................................................................................ 10
    3.2    Irrevocable ......................................................................................... 11
    3.3    Name .................................................................................................. 11
    3.4    Objects ............................................................................................... 11
    3.5    Beneficiaries ...................................................................................... 11
    3.6    No Right to Corpus of the Trust ........................................................ 11
    3.7    D&O Qualifying Claims .................................................................... 11
    3.8    Qualified Investments ........................................................................ 12
    3.9    Residence ........................................................................................... 12

ARTICLE 4    PAYMENT OF CLAIMS ................................................................... 12

    4.1    Reserve for Trustee Fees and Expenses............................................. 12
    4.2    Receipt and Analysis of Claims......................................................... 12
    4.3    Funding of Dispute ............................................................................ 13
    4.4    Payment of Costs of Indemnified Claims .......................................... 14
    4.5    Settlement .......................................................................................... 15
    4.6    No Liability for Insufficient Funds .................................................... 15
    4.7    No Further Contributions from the Settlors ....................................... 15
    4.8    Directions........................................................................................... 15
    4.9    Method of Disbursement and Delivery............................................... 15

ARTICLE 5    THE TRUSTEE ................................................................................. 16

    5.1    Fees and Expenses ............................................................................. 16
    5.2    Termination and Replacement ........................................................... 16

i

## TABLE OF CONTENTS
### (continued)

Page

| | | | |
|---|---|---|---|
| 5.3 | Replacement Trustee | | 17 |
| 5.4 | Accounting | | 18 |
| 5.5 | Liability of Trustee | | 18 |
| 5.6 | Acceptance of Trusts | | 19 |
| 5.7 | Indemnification | | 19 |
| 5.8 | Financial Matters | | 19 |
| 5.9 | Accumulation of Income | | 20 |
| 5.10 | Professional Advisors | | 20 |
| 5.11 | Application to Court | | 20 |
| 5.12 | Certificate of Incumbency | | 21 |
| 5.13 | Incidental Rights; Actions; Defenses; etc. | | 21 |
| ARTICLE 6 | RESTRICTIONS ON INDEMNITY | | 21 |
| 6.1 | Notice of Claims | | 21 |
| ARTICLE 7 | AMENDMENT | | 22 |
| 7.1 | Amendment Restrictions | | 22 |
| ARTICLE 8 | ADJUSTMENT; TERMINATION | | 22 |
| 8.1 | Adjustment of Trust Corpus | | 22 |
| 8.2 | Termination Date | | 23 |
| 8.3 | Consequence of Termination | | 24 |
| 8.4 | Survival | | 24 |
| ARTICLE 9 | OTHER MATTERS | | 24 |
| 9.1 | Governing Law | | 24 |
| 9.2 | Assignment | | 24 |
| 9.3 | No Waiver, etc. | | 25 |
| 9.4 | Entire Agreement | | 25 |
| 9.5 | Severability | | 25 |
| 9.6 | Time of the Essence | | 25 |
| 9.7 | Further Assurances | | 25 |
| 9.8 | Counterpart Execution | | 26 |
| 9.9 | Third Party Beneficiaries | | 26 |
| 9.10 | No Obligation to Pay Indemnities Prohibited by Law | | 26 |
| 9.11 | Notice | | 27 |
| 9.12 | U.S. Federal Income Tax Treatment | | 29 |
| EXHIBIT A | Cascade Subsidiaries | | A-1 |
| EXHIBIT B | Contribution of the Settlors | | B-1 |
| EXHIBIT C | List of Directors | | C-1 |

ii

## TRUST INDENTURE

**THIS INDENTURE** dated the ● day of ●, 2010.

**BETWEEN:**

### NORTEL NETWORKS LIMITED

### NORTEL NETWORKS INC.

- and-

### JOHN T. EVANS

**WHEREAS:**

A.   On January 14, 2009 (the "**Petition Date**"), Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**"), Nortel Networks Limited, a corporation organized under the laws of Canada ("**NNL**"), and certain of NNC's other Canadian affiliates (collectively, the "**Canadian Debtors**") commenced creditor protection proceedings before the Ontario Superior Court of Justice (Commercial List) (the "**Canadian Court**") under the Companies' Creditors Arrangement Act (Canada) (together with any formal insolvency proceeding commenced in Canada in respect of NNC and/or NNL, the "**Canadian Proceedings**"), in connection with which Ernst & Young Inc. was appointed monitor (the "**Monitor**");

B.   On the Petition Date, Nortel Networks Inc., a corporation organized under the laws of the State of Delaware, United States ("**NNI**"), and certain of NNI's United States affiliates (collectively, the "**US Debtors**") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "**US Court**") under chapter 11 of title 11 of the United States Code (respectively, the "**Bankruptcy Code**" and the "**US Proceedings**");

C.   On the Petition Date, Nortel Networks UK Limited, Nortel Networks (Ireland) Limited ("**NNIR**"), Nortel Networks S.A. and certain of Nortel Networks UK Limited's affiliates in the Europe, Middle East and Africa ("**EMEA**") region (collectively, the "**EMEA Debtors**"), commenced administration proceedings (the "**UK Proceedings**" and, together with the Canadian Proceedings, the US Proceedings and any other insolvency proceedings with respect to any other Nortel entity, the "**Creditor Protection Proceedings**") before the High Court of Justice in London, England, represented by individuals from Ernst & Young LLP, and, in the case of NNIR only, Ernst & Young Chartered Accountants, serving as administrators in the UK Proceedings;

D.   On July 14, 2009, Nortel Networks (CALA) Inc. filed a petition in the US Court under chapter 11 of the Bankruptcy Code and became subject to the US Proceedings;

E.   Subsequent to the commencement of the Creditor Protection Proceedings, Nortel (as defined below), in consultation with its various creditor constituencies, determined to

1

divest its various businesses to third party buyers (each such divestment, a "**Global Sale**");

F.     In order to sell Nortel's businesses on a going concern basis and to maximize the recoveries of Nortel's creditors, it is important that all relevant Nortel entities, including those entities that have not filed for any creditor protection proceedings, participate in the Global Sales;

G.     Under the Laws (as defined below) of various jurisdictions in which Nortel operates, the directors, officers and agents of the relevant Nortel entity may potentially become personally liable for Indemnified Claims (as defined below);

H.     In order to enable the Beneficiaries (as defined below) to serve as directors, officers or agents of certain non-filed Nortel entities as set forth in Exhibit A attached hereto (each such entity, a "**Cascade Subsidiary**") and to facilitate the participation of such Cascade Subsidiaries in the Global Sales and the orderly wind-down of such Cascade Subsidiaries upon completion of the relevant Global Sales (or in some cases, where such entity is dormant, to facilitate an orderly wind-down of such entity), the Settlors (as defined below) have agreed to provide financial support, subject to the limitations set forth in and in accordance with the terms of this Indenture, to cover Indemnified Claims potentially asserted against the Beneficiaries;

I.     The Official Committee of Unsecured Creditors appointed in the US Proceedings (the "**Creditors' Committee**"), the members of the ad hoc group of bondholders that have executed confidentiality or non-disclosure agreements with NNL (the "**Bondholders Group**") and the Monitor have each agreed to support the entry by the Settlors into this Indenture; and

J.     On ●, 2010, the US Court and the Canadian Court authorized NNI and NNL, respectively, to enter into this Indenture (and, pursuant to Section 303 of the Delaware General Corporation Law, no further action by the shareholders or the directors of NNI is required).

**NOW THEREFORE** in consideration of the foregoing and the mutual agreements contained herein (the receipt and adequacy of which are acknowledged), it is agreed and declared as follows:

**ARTICLE 1**
**INTERPRETATION**

**1.1     Definitions**

Where used in this Indenture, including in the recitals, the following terms shall have the following meanings:

"**Adjustment Negotiating Parties**" has the meaning ascribed to such term in Section 8.1 to this Indenture;

2

**"Bankruptcy Code"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Beneficiary"** means any current or former Director;

**"Bondholders Group"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Business Day"** means a day on which the banks are open for business (Saturdays, Sundays, statutory and civic holidays excluded) in (i) New York, New York, United States, and (ii) Toronto, Ontario, Canada;

**"Canadian Court"** has the meaning ascribed to such term in the recitals to this Indenture;

 **"Canadian Debtors"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Canadian Proceedings"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Cascade Subsidiary"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Claim"** means all and any claims, actions, suits, applications, litigation, charges, complaints, prosecutions, assessments, reassessments, investigations, inquiries, hearings and other proceedings, whether civil, criminal, administrative or otherwise;

**"Condition"** has the meaning ascribed to such term in Section 9.10(b);

**"Confirmation Date"** means the later of (x) the date of entry of a final decree closing the US Proceedings and (y) the date of termination of the Canadian Proceedings;

**"Cost"** means all injury, liability, loss, damage, charge, cost, expense, fine and settlement amounts which the Beneficiary incurs or is required to pay (but excluding costs due to fraud or wilful misconduct of such Beneficiary), including, without limitation, any bond or similar deposit required to be posted or paid while any Claim is pending, all legal and other professional fees and all out-of-pocket expenses for attending meetings and proceedings in connection with any Claim;

**"Courts"** means the US Court, the Canadian Court and any other court before which the US Proceedings or the Canadian Proceedings or any proceedings thereunder are held, as well as any other courts where any voluntary or involuntary bankruptcy, insolvency, administration or similar judicial proceedings concerning any of the Settlors are held from time to time;

**"Creditors' Committee"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Creditor Protection Proceedings"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Cross-Border Protocol"** means that certain Cross-Border Insolvency Protocol approved by the US Court pursuant to Section 105(a) of the Bankruptcy Code in an order, dated January 15,

3

2009, and by the Canadian Court pursuant to an order, dated January 14, 2009, as amended or as amended and restated from time to time;

**"D&O Insurance"** means the policy or policies of insurance maintained by Nortel with respect to director and officer liabilities, including, without limitation, any policy or policies of insurance maintained by the Cascade Subsidiaries;

**"D&O Qualifying Claim"** is an Indemnified Claim that qualifies for coverage under the D&O Insurance whether or not the amount of the coverage available under the D&O Insurance is adequate to defend the Directors against, and to pay, the particular Indemnified Claim;

 **"Directors"** means the list of individuals as set forth in <u>Exhibit C</u> to the extent serving as a director, officer and/or agent of any Cascade Subsidiary and any successor any individual set forth in <u>Exhibit C</u> serving in any such position; <u>provided</u> that for any such successor to qualify as a Director for the purpose of this Indenture, each Settlor must approve in writing the appointment of such successor; <u>provided</u>, <u>further</u> that if one Initial Director ceases to serve in such capacity at a time when the other Initial Director is serving as a Director, then the qualification of his successor shall be subject to prior written consent of the other Initial Director (such consent not to be unreasonably withheld);

**"EMEA"** has the meaning ascribed to such term in the recitals to this Indenture;

**"EMEA Debtors"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Global Sale"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Governmental Authority"** means governments, regulatory authorities, governmental departments, agencies, commissions, bureaus, officials, ministers, Crown corporations, courts, bodies, boards, tribunals, or dispute settlement panels or other law, rule or regulation-making organizations or entities:

    (a)    having or purporting to have jurisdiction on behalf of any nation, province, territory, state or other geographic or political subdivision of any of them; or

    (b)    exercising or entitled or purporting to exercise any administrative, executive, judicial, legislative, policy, regulatory or taxing authority or power;

**"Indemnified Amount"** means any amount that the Trust is obliged to pay pursuant to Article 2 of this Indenture;

**"Indemnified Claim"** has the meaning ascribed to such term in Section 2.1(a);

**"Indemnified Capacity"** means the service or continued service of a Beneficiary as a director, officer or agent of a Cascade Subsidiary;

**"Indenture"** means this Trust Indenture, as amended or supplemented from time to time pursuant to the terms hereof;

4

**"Initial Directors"** means the list of individuals as set forth in Exhibit C;

**"Law"** or **"Laws"** means applicable laws (including, without limitation, common law, civil law and laws or regulations prohibiting indemnification of directors of a company under certain circumstances), statutes, by-laws, rules, regulations, Orders, ordinances, protocols, codes, guidelines, treaties, policies, notices, directions, decrees, judgments, awards or requirements, in each case of any Governmental Authority;

**"Monitor"** has the meaning ascribed to such term in the recitals to this Indenture;

**"NNC"** has the meaning ascribed to such term in the recitals to this Indenture;

**"NNI"** has the meaning ascribed to such term in the recitals to this Indenture;

**"NNIR"** has the meaning ascribed to such term in the recitals to this Indenture;

**"NNL"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Nortel"** means NNC and its debtor and non-debtor affiliates;

**"Orders"** means orders, injunctions, judgments, administrative complaints, decrees, rulings, awards, assessments, directions, instructions, settlements, penalties or sanctions issued, filed or imposed by any Governmental Authority or arbitrator and includes remedial orders;

**"Party"** or **"Parties"** means individually or collectively, as the case may be, the Settlors and the Trustee and, solely for the purposes of Articles 2 and 9, the Beneficiaries;

**"Person"** includes any individual, partnership, limited partnership, limited liability company, joint venture, syndicate, sole proprietorship, company or corporation with or without share capital, unincorporated association, trust, trustee, executor, administrator or other legal personal representative, Governmental Authority or organization or entity however designated or constituted;

**"Petition Date"** has the meaning ascribed to such term in the recitals to this Indenture;

**"Qualified Investments"** means short-term bank instruments issued by a Scheduled Canadian Bank (as defined below), or a banking institution in the United States of America that, in the opinion of the Trustee, has credit ratings equivalent to a Scheduled Canadian Bank, with a term to maturity of less than ninety (90) days; and treasury bills issued by the Government of Canada or the Government of the United States of America;

**"Relevant Court"** means (a) if a final decree closing the US Proceedings has not been entered and the Canadian Proceedings have not terminated, a joint hearing of the US Court and the Canadian Court under the Cross-Border Protocol, (b) if a final decree closing the US Proceedings has not been entered and the Canadian Proceedings have terminated, the US Court, (c) if a final decree closing the US Proceedings has been entered and the Canadian Proceedings

5

have not terminated, the Canadian Court, or (d) if a final decree closing the US Proceedings has been entered and the Canadian Proceedings have terminated, the Canadian Court;

**"Scheduled Canadian Bank"** means a bank listed on Schedule I or Schedule II of the Bank Act (Canada);

**"Settlors"** means NNL and NNI, and their respective successors (including successors by amalgamation, merger, consolidation, plan of arrangement, plan of reorganization or otherwise pursuant to the relevant Creditor Protection Proceeding);

**"Termination Date"** has the meaning ascribed to such term in Section 8.2;

**"Trust"** means the trust created pursuant to this Indenture;

**"Trustee"** at any time means the Person serving as trustee hereunder at such time and at the date hereof means Mr. John T. Evans;

**"Trustee Expenses"** has the meaning ascribed to such term in Section 5.1(b);

**"Trustee Fees"** has the meaning ascribed to such term in Section 5.1(a);

**"Trust Property"** means the aggregate amount contributed by the Settlors to the Trustee in accordance with Section 3.1 of this Indenture (as set forth in <u>Exhibit B</u> attached hereto) and any further deposits or amounts received by the Trustee to be held under the terms of this Indenture together with interest and other revenues generated thereby and any property into which all of the foregoing may be converted less amounts which have been paid or distributed pursuant to the terms of this Indenture;

**"UK Proceedings"** has the meaning ascribed to such term in the recitals to this Indenture;

**"US Court"** has the meaning ascribed to such term in the recitals to this Indenture;

**"US Debtors"** has the meaning ascribed to such term in the recitals to this Indenture;

**"US Proceedings"** has the meaning ascribed to such term in the recitals to this Indenture; and

**"US$"** means the lawful currency of the United States of America.

**1.2    Headings, etc.**

The provision of a table of contents, the division of this Indenture into articles and sections and the insertion of headings are for convenient reference only and are not to affect the interpretation of this Indenture.

**1.3    Articles; Sections; etc.**

Reference to articles, sections or other parts of this Indenture are to the specified article, section or part.

[New York #2169605 v12]

## 1.4    Gender; Singular/Plural

References to gender include all genders and, except where the context otherwise requires, the singular includes the plural and vice versa.

## 1.5    Certain Phrases, etc.

In this Indenture (i) the words "including" and "includes" mean "including (or includes) without limitation", (ii) in the computation of periods of time from a specified date to a later specified date, unless otherwise expressly stated, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding", and (iii) the words "hereafter", "hereby", "herein", "hereof", "hereunder" and "herewith" refer to the entire Indenture, not just a particular article or section.

## 1.6    Business Day

Any action or payment required or permitted to be taken or made hereunder on a day which is not a Business Day may be taken or made on the next succeeding Business Day.

**ARTICLE 2**
**INDEMNITY**

## 2.1    Indemnity

(a)    Subject to Sections 4.1 and 9.10, the Trust shall indemnify and hold each Beneficiary harmless for the lesser of (x) the full amount of any Cost reasonably incurred by such Beneficiary in connection with any Claim that may be made or asserted against or affecting such Beneficiary or in which such Beneficiary is required by law to participate or in which such Beneficiary participates at the request of any Settlor or in which such Beneficiary chooses to participate (based on such Beneficiary's reasonable belief that such Beneficiary may be subsequently named in that Claim or any Claim related to it) if it relates to, arises from or is based on such Beneficiary's service in an Indemnified Capacity, in any case whether or not such Beneficiary has been named (an "**Indemnified Claim**"), and (y) the Trust Property then remaining less the aggregate amount of any reserves established under Section 4.1. For greater certainty, if a court or tribunal of competent jurisdiction in a final judgment that has become non-appealable determines that any Claim resulted from a Beneficiary's fraud or wilful misconduct or the payment of such Claim is prohibited by applicable Law, then such Claim shall not constitute an Indemnified Claim under this Indenture.

(b)    Notwithstanding anything to the contrary contained in this Indenture, no Settlor shall be liable to pay any Cost, and a Beneficiary's recovery of any Cost shall be limited to amounts recovered from the Trust (subject to the limitations set forth in and in accordance with the terms of this Indenture), the D&O Insurance and the assets of the relevant Cascade Subsidiary (subject to the limitations set forth in Section 2.3(b) of this Indenture). For greater certainty, under no circumstances

7

shall the Trustee be personally liable to pay any Costs incurred by one or more Beneficiaries.

## 2.2    Notice of Claim

(a)    If a Beneficiary becomes aware of any Indemnified Claim or reasonably expects that an Indemnified Claim will be made, such Beneficiary shall give each Settlor and the Trustee notice in writing promptly of such Indemnified Claim or potential Indemnified Claim.

(b)    If a Settlor becomes aware of any Indemnified Claim or reasonably expects that an Indemnified Claim will be made, such Settlor will give the relevant Beneficiaries, the other Settlor and the Trustee notice in writing promptly of such Indemnified Claim or potential Indemnified Claim.

## 2.3    Procedure for Making a Claim

(a)    If a Beneficiary wishes to make any claim for payment of an Indemnified Amount, such Beneficiary shall deliver a written notice of such claim to the Trustee along with the information required pursuant to Section 4.2 of this Indenture, copies of which shall be provided by the Trustee to the Settlors.

(b)    Each Beneficiary hereby agrees that such Beneficiary shall seek payment for any Costs relating to any Indemnified Claim in the following order: first, the assets of the Cascade Subsidiary to which such Indemnified Claim is related; provided that (x) the then current Directors of such Cascade Subsidiary determine, in their reasonable business judgment, that it is feasible to recover such assets to cover such Costs in a timely manner (the Parties hereby agree that the Trustee may rely on the reasonable business judgment of the then current Directors with regards to such determination and the Trustee shall have no obligation to undertake any independent investigation with regards to such determination) and (y) such Cascade Subsidiary makes payments to cover such Costs in a timely manner; second, that any D&O Insurance available to such Beneficiary to cover such Costs; and third, the remaining Trust Property at such time subject to and in accordance with the terms of this Indenture.

(c)    Any payments of Indemnified Amounts shall be made in accordance with and subject to the limitations set forth in Article 4 of this Indenture.

## 2.4    Defense of Action

Each Beneficiary shall be entitled to assume carriage of such Beneficiary's own defense relating to any potential Indemnified Claim (and for greater certainty, the full amount of reasonable expense such Beneficiary incurs in connection with such defense shall be an Indemnified Amount subject to and in accordance with terms hereof); provided that:

8

(a)     such Beneficiary shall keep the Settlors reasonably informed on a timely basis of all steps and developments relating to any Indemnified Claim;

(b)     such Beneficiary shall not agree to settle any Indemnified Claim without the prior written consent of each Settlor and the Trustee, which consent shall not be unreasonably withheld; provided, further that such consent shall not be required if (x) such Beneficiary, after consultation with the Settlors and the Trustee, has a reasonable belief that it will not be fully indemnified by the Trust if the Indemnified Claim proceeds and (y) such settlement does not contain any admission of liability against the Settlors or the applicable Cascade Subsidiary;

(c)     if the Indemnified Claim would be covered by the D&O Insurance, such Beneficiary shall comply with the applicable conditions of such coverage; provided, further that the failure to do so (so long as such Beneficiary's actions or omissions, as the case may be, are in good faith) shall not relieve the Trust of its obligations to indemnify such Beneficiary in accordance with and subject to the terms of this Indenture; and

(d)     a Settlor may, at such Settlor's expense, elect to assume the defense of any Claim relating to a potential Indemnified Claim so long as in circumstances where such Settlor and such Beneficiary are both parties to such Claim, there are no material conflicts in the defenses available to such Settlor and such Beneficiary.

## 2.5     Former Directors and Officers

(a)     In the event that a Beneficiary ceases to be a Director, such Beneficiary shall continue to be entitled to indemnification and advances hereunder in accordance with the terms hereof with respect to Indemnified Claims that relate to, arise from or are based on such Beneficiary's service in an Indemnified Capacity, even though such Beneficiary may no longer be acting in an Indemnified Capacity.

(b)     Each Beneficiary and such Beneficiary's advisors shall at all times be entitled to review during regular business hours all documents, records and other information with respect to any of the Cascade Subsidiaries in which such Beneficiary acted in an Indemnified Capacity, which are under either Settlor's control and which may be reasonably necessary in order for such Beneficiary to defend itself against any Claim that relates to, arises from or is based on such Beneficiary's service in an Indemnified Capacity; provided that such Beneficiary shall maintain all such information in strictest confidence and shall enter into a non-disclosure and/or joint interest agreement to be mutually agreed by such Beneficiary and the relevant Cascade Subsidiary, with each party acting reasonably and negotiating in good faith.

9

**2.6    Enurement**

This Article 2 and the benefit of the obligations of the undersigned hereunder shall enure to the benefit of each Beneficiary, its heirs, estate, executors and administrators and shall be binding upon the Trust.

**2.7    Previous Indemnities**

This indemnity supersedes and replaces all prior indemnities, if any, provided for the benefit of any Beneficiary by NNC or any Settlor with respect to such Beneficiary's service in an Indemnified Capacity for the Cascade Subsidiaries.

**2.8    Releases from the Settlors and the Cascade Subsidiaries**

(a)    To the maximum extent permitted by applicable Laws, the Settlors hereby release each Beneficiary from any liability in connection with actions taken by such Beneficiary in its Indemnified Capacity other than any liability resulting from such Beneficiary's fraud or wilful misconduct.

(b)    To the maximum extent permitted by applicable Laws, the Settlors shall cause, at the time of appointment of any Beneficiary as a director, officer or agent of any Cascade Subsidiary, the relevant Cascade Subsidiary to agree to (a) indemnify and hold harmless such Beneficiary for any Indemnified Claims relating to, arising from or based on such Beneficiary's service in an Indemnified Capacity with regards to such Cascade Subsidiary (other than any Claims (x) resulting from such Beneficiary's fraud or wilful misconduct or (y) the indemnification of which is prohibited by applicable Laws), (b) designate such Beneficiary as an insured party under any insurance policy applicable to the directors, officers or agents of such Cascade Subsidiary, and (c) release such Beneficiary from any liability in connection with actions taken by such Beneficiary in its Indemnified Capacity (other than any liability resulting from such Beneficiary's fraud or wilful misconduct).

(c)    Each Beneficiary grants the Trust a right of subrogation against any Cascade Subsidiary for reimbursement of amounts paid by the Trust pursuant to this Indenture. Each Beneficiary agrees to execute any documents as the Trust may reasonably request in order to evidence or exercise any such subrogation rights.

(d)    Nothing in the releases contemplated by this Section 2.8 or any other provision of this Indenture shall in any way prejudice the right of the Trust or any Settlor to claim, by subrogation or otherwise, against any Cascade Subsidiary for reimbursement of amounts paid by the Trust pursuant to this Indenture.

10

## ARTICLE 3
## THE TRUST

### 3.1    Creation of Trust

Each Settlor hereby settles and deposits cash equal to the amount set forth in <u>Exhibit B</u> attached hereto with the Trustee on the trusts provided for in this Indenture. The Trustee accepts and agrees to hold such amount together with any other amounts or property that may from time to time constitute Trust Property upon the trusts provided for in, and subject to and in accordance with the terms of, this Indenture. The Trustee agrees to distribute and deal with the Trust Property, and at all times agrees to keep the Trust Property segregated from the property and assets of the Trustee, the Settlors and any other trust in which the Trustee may serve as a trustee, and in one or more segregated accounts, on the terms and subject to the conditions hereof.

### 3.2    Irrevocable

Except as provided for in Article 8 of this Indenture, the Trust is intended and is hereby declared to be irrevocable.  Except as provided for in Section 8.1 of this Indenture, the Trust Property shall be held and applied solely for the objects of the Trust and, prior to the Termination Date and except as otherwise herein provided, the Trust Property shall not revert to or be applied for the benefit of the Settlors but shall be applied for the exclusive benefit of the Beneficiaries in accordance with the terms hereof.

### 3.3    Name

The name of the Trust shall be the "Nortel Cascade Directors' Trust". Wherever lawful and convenient, the affairs of the Trust shall be conducted under such name, or any other name the Trustee deems appropriate.

### 3.4    Objects

The objects of the Trust are, subject to and in accordance with the terms hereof, to provide financial support for the defense of the Beneficiaries against Indemnified Claims and for the payment and satisfaction of Indemnified Claims, to the extent that the D&O Insurance, for any reason, does not do so and to provide for the payment of the Trustee Fees and Trustee Expenses.

### 3.5    Beneficiaries

Prior to the Termination Date, the beneficiaries of the Trust Property are the Beneficiaries and, under certain circumstances as expressly set forth in this Indenture, the Settlors. On the Termination Date, the Settlors are the residuary beneficiaries of the Trust Property, and each Settlor shall be a residual beneficiary to an equal proportionate amount (50% each) of the Trust Property.

11

### 3.6    No Right to Corpus of the Trust

Other than expressly provided in this Indenture, no Person shall have any right to the corpus of the Trust.

### 3.7    D&O Qualifying Claims

This Indenture and the Trust do not constitute insurance.  Except as expressly provided in this Indenture, the Trust Property shall not be available to provide financial support for the defense of Indemnified Claims which are D&O Qualifying Claims or to pay Indemnified Claims which are D&O Qualifying Claims. Notwithstanding the foregoing, the Trust Property shall provide financial support for defending the Beneficiaries in any Claim with respect to a D&O Qualifying Claim and to pay a D&O Qualifying Claim (or a portion thereof) that the Trustee in its discretion is satisfied will not be defended or paid by the D&O Insurance because coverage is inadequate, is disputed or is for some other reason unavailable in a timely fashion. Furthermore, the Trustee shall make a payment in respect of a D&O Qualifying Claim and be subrogated to the relevant Beneficiary claim under the D&O Insurance if the insurer or insurers fail to pay any D&O Qualifying Claim within ninety (90) days of such claim having been made in accordance with the terms of the D&O Insurance or if it otherwise appears, in the reasonable discretion of the Trustee, that the D&O Qualifying Claim is being disputed or delayed in settlement or recognition by the insurer or insurers for more than ninety (90) days.

### 3.8    Qualified Investments

Pending disbursement of the Trust Property, the Trustee shall hold, invest and reinvest the Trust Property in Qualified Investments in such manner as may be directed in writing executed by each Settlor and, failing direction in Qualified Investments or agreement between the Settlors, as the Trustee in its discretion determines to be appropriate.  All Qualified Investments shall be held in trust by the Trustee subject to and in accordance with the terms hereof and, where any amounts are held in an interest-bearing bank or trust account, the trust nature of such account shall be clearly identified.

### 3.9    Residence

The residence of the Trust is the Province of Ontario, Canada.

### ARTICLE 4
### PAYMENT OF CLAIMS

### 4.1    Reserve for Trustee Fees and Expenses

The Trustee may reserve from the Trust Property, prior to paying any Indemnified Claims, amounts sufficient to fully pay and satisfy all of the Trustee Fees and the Trustee Expenses and other payments to the Trustee to be met from the Trust Property under this Indenture, including, without limitation, any indemnification payments under Section 5.7 of this Indenture (collectively, the "**Trustee Payments**"), and is authorized to pay all of the Trustee Fees and the Trustee Expenses from the Trust Property in accordance with the terms of this Indenture.  To the

12

extent that the Trustee determines at any time that the remaining Trust Property at such time is insufficient to cover all payments to be met from the Trust Property under this Indenture, the Trustee Payments shall have priority over any payments to the Beneficiaries under this Indenture.

## 4.2    Receipt and Analysis of Claims

The Trustee may receive a claim or potential claim for payment or indemnity out of the Trust Property of an Indemnified Claim from any of the Beneficiaries. The Trustee may require, in support of any such claim or request, any supporting information the Trustee considers relevant including the following information:

(a)    the amount of the claim or potential claim, the circumstances in which it arose and the status of any Claims with respect to the subject matter of the claim;

(b)    where the claim or potential claim is based on facts that might be the subject of dispute, such information as is reasonably available concerning the relevant facts and analysis thereof;

(c)    the availability of any defense to the claim, or any procedure whereby damages may be mitigated, or any right of set-off, or any other matter that could reduce the quantum of the claim;

(d)    information relevant to a determination as to whether the particular claim or potential claim:

(i)    constitutes, in whole or in part, an Indemnified Claim; or

(ii)    if it constitutes, in whole or in part, an Indemnified Claim, whether it also constitutes a D&O Qualifying Claim; and

(e)    any attempts that have been made to satisfy the claim from the D&O Insurance.

The Trustee is authorized to obtain from such advisors as the Trustee in its discretion may require in accordance with Section 5.10 such additional advice and analysis as the Trustee considers to be desirable in making a determination as to any of the matters set out above. Receipt by the Trustee of information as to a claim or potential claim or a request in accordance with this Section in no way commits the Trustee to pay or satisfy the claim or potential claim. Where the Trustee concludes that a particular claim or potential claim is only partially an Indemnified Claim or partially a D&O Qualifying Claim, then the Trustee in its discretion may treat the particular claim or potential claim as two or more separate claims only one of which is an Indemnified Claim eligible for payment.

## 4.3    Funding of Dispute

(a)    Where an Indemnified Claim is disputed as to:

13

(i)    whether a Beneficiary is liable in whole or in part therefor; or

(ii)   whether it is a D&O Qualifying Claim,

then the Trustee in its discretion may provide financial support from the Trust Property to any Beneficiary for legal fees and any other expenses necessary for such Beneficiary in connection with the dispute; provided that the Beneficiary has agreed that if a court or tribunal of competent jurisdiction in a final judgment that has become non-appealable determines that the Trust is prohibited by Law from providing indemnification with respect to such Claim or that such Cost resulted from the Beneficiary's fraud or wilful misconduct, the Beneficiary shall repay such advances to the Trust.

(b)    Notwithstanding any other provision of this Indenture, the Trustee, to the extent that the D&O Insurance does not do so, shall advance financial support from the Trust Property (taking into account any reserves established under Section 4.1 of this Indenture) with respect to the Costs of a Claim that is made or asserted against or affecting any Beneficiary or in which a Beneficiary is required by Law to participate or in which a Beneficiary participates at the request of any Settlor or in which the Beneficiary chooses to participate (based on the reasonable belief of the Beneficiary that it may be subsequently named in the Claim or in any Claim related to it) if the Claim relates to, arises from or is based on the Beneficiary's service as a director, officer or agent of a Cascade Subsidiary, in any case whether or not the Beneficiary has been named, prior to the resolution of the merits of such Claim; provided that the Beneficiary has agreed that if a court or tribunal of competent jurisdiction in a final judgment that has become non-appealable determines that the Trust is prohibited by Law from providing indemnification with respect to such claim or that such Cost resulted from the Beneficiary's fraud or wilful misconduct, the Beneficiary shall repay such advances to the Trust.

## 4.4    Payment of Costs of Indemnified Claims

(a)    Subject to Section 3.7, prior to the Termination Date (or thereafter, in the case of outstanding commitments to pay the Costs related to Indemnified Claims), the Trustee in its discretion may pay any Costs related to an Indemnified Claim out of the Trust Property (taking into account any reserves established under Section 4.1 of this Indenture) to any third Person in payment or satisfaction of the Costs of such Indemnified Claim and/or directly to the relevant Beneficiary or Beneficiaries or, if applicable, to its personal representative, or to either of the Settlors to apply in payment or satisfaction of the Costs of Indemnified Claims.

(b)    Notwithstanding the foregoing, the Trustee may delay payment of Costs related to an Indemnified Claim for a period as the Trustee in its discretion determines appropriate from the date which such claim was commenced by a claimant or submitted by a Beneficiary, pending a determination:

14

(i)     of a dispute or disputes, either as to a matter referred to in Section 4.3, or as to some other matter; or

(ii)    of the adequacy of the resources of the Trust Property to pay claims.

(c)     Nothing in this Indenture shall require the Trustee to make any payment if the Trustee believes in its discretion it may result in a claim against the Trustee personally.

## 4.5    Settlement

The Trustee has full discretion to negotiate the settlement of any and all Costs related to Indemnified Claims, including through agreeing to a payment made out of the Trust Property with respect to an Indemnified Claim on the basis that a release of liability under the Indemnified Claim be given to the relevant Beneficiaries. Such a settlement may comprise less than a full payment, all with the intention that the Trustee has the right to make use of the Trust Property to the maximum extent feasible towards the reduction or elimination of Indemnified Claims.

## 4.6    No Liability for Insufficient Funds

The Trustee shall not be liable to any Person (including any Beneficiary or the Settlors) in the event that the Trust Property (taking into account any reserves established under Section 4.1 of this Indenture) is insufficient to pay in full or in part any Indemnified Claim. Furthermore, the Trustee shall, in the event of any insufficiency of funds in the Trust Property (taking into account any reserves established under Section 4.1 of this Indenture), have no obligation to seek any further monies from the Settlors or any other Person, and the Settlors or the Trustee shall have no obligation pursuant to this Indenture or otherwise to provide any such additional money, property or value to the Trust.

## 4.7    No Further Contributions from the Settlors

Notwithstanding any other provision of this Indenture to the contrary, no Settlor under any circumstance shall be under any obligation to provide or contribute any money, property or value to the Trust, the Trustee, any Beneficiary or any other Person in respect of any Indemnified Claim or otherwise, except as set forth in Section 3.1 of this Indenture, and for greater certainty no Beneficiary shall be entitled to assert any Claim against any Settlor with respect to such amount.

## 4.8    Directions

Subject to Section 5.12, the Trustee shall be protected in acting on any written direction of the Settlors as provided in this Indenture if signed on behalf of each Settlor by an individual purporting to be a duly authorized representative of such Settlor without the Trustee having to confirm the correctness of such direction.

15

**4.9**     **Method of Disbursement and Delivery**

(a)     All disbursements of money made under Section 4.4 or pursuant to this Indenture shall be made by cheque or bank draft drawn upon a Scheduled Canadian Bank made payable to the Persons entitled to disbursement and in the correct amount, and delivered, as determined by the Trustee in its discretion, to a third Person in payment or satisfaction of an Indemnified Claim or to a Beneficiary to be applied by the Beneficiary in payment of an Indemnified Claim.

(b)     The delivery of a cheque by the Trustee as required hereunder shall satisfy and discharge the liability for any amounts due to the extent of the sum or sums represented thereby, unless such cheque is not honoured on presentation; provided that in the event of the non-receipt of such cheque by the payee, or the loss or destruction thereof, the Trustee, upon being furnished with reasonable evidence of such non-receipt, loss or destruction, shall issue to such payee a replacement cheque for the amount of such cheque not received, lost or destroyed.

### ARTICLE 5
### THE TRUSTEE

**5.1**     **Fees and Expenses**

(a)     Any Person shall be entitled to fees for acting as Trustee in such amounts as are agreed among the Settlors, the then current Directors and such Trustee (the **"Trustee Fees"**); provided that a Beneficiary shall not act as a Trustee under this Trust Indenture; and provided, further that the then current Directors shall not represent, in any capacity whatsover, any Settlor in approving the Trustee Fees. The Trustee Fees shall be reimbursed in accordance with Section 5.1(c) of this Indenture.

(b)     The Trustee shall be reimbursed all expenses (including taxes, except for any taxes payable with respect to any fees paid to the Trustee) and disbursements, including, without limitation, any expenses incurred pursuant to Section 5.10 of this Indenture and the cost and expense of any Claim of any character (including, without limtation, any Claims before any Governmental Authority), reasonably incurred in connection with its duties hereunder, but excluding expenses and disbursements paid, incurred or suffered by the Trustee in any Claim in which the Trustee is determined to have acted dishonestly, fraudulently or to have been guilty of wilful misconduct (such reimbursable expenses collectively, the **"Trustee Expenses"**). The Trustee Expenses shall be reimbursed in accordance with Section 5.1(c) of this Indenture.

(c)     The Trustee shall provide the Settlors and the Beneficiaries from time to time, or as agreed among the Settlors, the then current Directors and the Trustee, with invoices of any Trustee Fees or Trustee Expenses that may be owing. If within thirty (30) days from the date of the invoice thereof such Trustee Fees or Trustee

16

Expenses are otherwise uncontested, the Trustee may satisfy such invoices from the Trust Property.

**5.2 Termination and Replacement**

In the event that:

    (a)    any Trustee that is not an individual:

        (i)    resigns as a Trustee;

        (ii)    enters into liquidation, whether compulsory or voluntary (not being merely a voluntary liquidation for the purposes of amalgamation or reconstruction);

        (iii)    has a receiver or a receiver-manager appointed with respect to its affairs;

        (iv)    ceases to be a resident of Canada within the meaning of the Income Tax Act (Canada); or

        (v)    becomes subject to any bankruptcy laws; or

    (b)    any Trustee, being an individual:

        (i)    dies;

        (ii)    refuses or becomes unable to act or to continue to act or becomes incapable of managing property. For the purposes of this Section 5.2(b)(ii), a Trustee shall be deemed to be unable to act or to continue to act as a Trustee of the Trust if such Trustee is under a legal disability or if two (2) medical doctors licensed to practice in Canada notify the Settlors and the successor Trustee of the Trust, then acting, that illness or physical or mental disability have rendered such a Trustee unable to give prompt and intelligent consideration to financial affairs;

        (iii)    resigns as a Trustee;

        (iv)    is declared bankrupt, insolvent, or mentally incompetent;

        (v)    ceases to be a resident of Canada within the meaning of the Income Tax Act (Canada); or

        (vi)    becomes a citizen of the United States of America or becomes a resident of the United States of America within the meaning of the U.S. Internal Revenue Code;

17

such Trustee shall, immediately upon the happening of any such event other than a resignation, cease to be a Trustee hereof. A resignation by a Trustee shall be made by an instrument in writing and shall be effective from the date, which is seven (7) days after the notice of such resignation has been delivered to the Settlors; provided that no resignation shall be effective until the earlier of (x) the appointment of a successor Trustee, and (y) ninety (90) days after notice of such resignation has been delivered to the Settlors. The Trustee and the former Trustee shall co-operate reasonably in effecting the transition to any replacement Trustee.

**5.3    Replacement Trustee**

(a)    The Trustee may at any time, by an instrument in writing, appoint a replacement Trustee with the prior written consent of each Settlor and each Beneficiary. In the event that the Settlors and Beneficiaries fail to agree with respect to a suitable replacement Trustee, the replacement Trustee shall be appointed by the Relevant Court.

(b)    Where a Trustee's appointment is terminated pursuant to Section 5.2, the Settlors may appoint a replacement Trustee; provided that such appointment is approved by each Settlor and each Beneficiary. In the event that the Settlors and Beneficiaries fail to agree with respect to a suitable replacement Trustee, the replacement Trustee shall be appointed by the Relevant Court.

(c)    Any Person appointed pursuant to Section 5.3 shall, upon acceptance of such appointment, be vested with the Trust Property and with all the trusts, powers, authorities, duties and obligations herein contained, without further assignment, transfer or conveyance of any kind or any order of any court or tribunal whatsoever as if such Person were an original party to this Indenture.

(d)    All instruments in writing relating to the appointment of replacement Trustees shall be attached to this Indenture and shall be sufficient evidence of the facts to which such instruments relate.

**5.4    Accounting**

The Trustee shall maintain accurate books, records and accounts of the transactions effected or controlled by the Trustee hereunder and the receipt, investment, reinvestment and disbursement of the Trust Property, and shall provide to the Settlors and the Beneficiaries records and written statements thereof periodically upon request of the Settlors or an order of the Relevant Court.

**5.5    Liability of Trustee**

(a)    The Trustee shall exercise the powers and discretions given to the Trustee in good faith in what it deems to be the best interests, whether monetary or otherwise, of the Beneficiaries, whether or not such exercise may have the effect of conferring an advantage on any one or more of the Beneficiaries at the expense of any other Beneficiary or would otherwise, but for the foregoing, be considered as being other than an impartial exercise of its duties hereunder or as not being the

18

maintenance of an even hand between the Beneficiaries, and all such exercise of its powers and discretions made in good faith shall be binding upon the Beneficiaries and shall not be subject to any question by any Person whatsoever or whomsoever. In performing the trusts hereof and in exercising its powers hereunder the Trustee may act in its discretion and, provided the Trustee has acted honestly, the Trustee shall not be liable, answerable or accountable for any claims resulting from the exercise of a discretion or the refusal to exercise a discretion. The Trustee shall only be liable, answerable and accountable for its own dishonesty, fraud or wilful misconduct. The Trustee is liable, answerable and accountable only for money and securities for money actually received by such Trustee, even though the Trustee has signed a receipt or other instrument for the sake of conformity. A Trustee is not liable, answerable or accountable for the acts, receipts, negligence, defaults, dishonesty, fraud or wilful misconduct of any other Trustee, or of any other Person having custody of any part of the Trust Property and is not liable, answerable or accountable for any loss of money or security for money unless the same happens through the Trustee's own dishonesty, fraud or wilful misconduct. Honesty and good faith shall be presumed in favor of the Trustee unless such presumption is rebutted.

(b)     Subject to its obligations hereunder to the Settlors and to the Beneficiaries with respect to the Trust Property, the Trustee shall have no personal liability to any other Person arising from commitments in this Indenture or contractual relationships arising out of its position as Trustee. The Trustee is authorized to require any such commitment or contractual relationship to include a provision confirming the foregoing sentence to the Trustee, the Beneficiaries or any other Person with respect to the performance of the responsibilities of the Trustee hereunder, except for damages that may be caused by the dishonesty, fraud or wilful misconduct of the Trustee.

## 5.6    Acceptance of Trusts

The Trustee hereby accepts the covenants, trusts and obligations in this Indenture declared and provided for and agrees to perform the same upon the terms and conditions herein set forth, and to hold and exercise the rights, privileges and benefits conferred upon the Trustee hereby in trust for the benefit of the Persons having an interest in the Trust Property.

## 5.7    Indemnification

Subject to Section 6.1, the Trustee (and its directors, officers and employees, if any) shall be indemnified and held harmless out of the Trust Property from and against all Claims and Costs arising in any manner out of or in connection with this Indenture and the Trust (including, without limitation, any investments made, retained or disposed of on the direction of the Settlors, Trustee Fees and Trustee Expenses) except (x) to the extent that the same is attributable to the dishonesty, fraud or wilful misconduct of the Trustee and (y) any income taxes payable by the Trustee with respect to the Trustee Fees and the Trustee Expenses paid to the Trustee in accordance with Section 5.1 of this Indenture. Subject to the foregoing, this entitlement to

19

[New York #2169605 v12]

indemnification includes Costs incurred by the Trustee in enforcing its rights to indemnification hereunder. Without prejudice to the generality of Section 4.7, under no circumstances shall the Settlors be liable to the Trustee for any amounts due under this Section 5.7. So long as a Trustee resigns, or is replaced, in accordance with the terms of this Indenture, such former Trustee shall continue to be entitled to indemnification under this Section 5.7 with respect to any Claims that relate to, arise from or are based on such former Trustee's service as a Trustee.

**5.8    Financial Matters**

    (a)    The Trustee shall, to the extent required by Law and subject to Section 9.12, prepare and file tax returns or other applicable filings or reports in connection with the Trust Property, and pay any taxes owing by the Trust from the Trust Property; and

    (b)    The Trustee shall for the purposes of this Indenture open, operate and maintain one or more bank accounts at a Canadian Schedule I or II chartered bank and shall deposit all assets comprising the Trust Property with such bank and any cheques drawn upon such accounts and all other instructions, as applicable, shall be signed by the Trustee.

**5.9    Accumulation of Income**

    (a)    Any payments from the Trust Property made by the Trustee under the terms of this Indenture shall be made first from capital of the Trust Property, and to the extent capital of the Trust Property is insufficient to make such payment, from the income of the Trust. Any income not so paid in any year shall be added to and dealt with as part of the capital of the Trust Property. All taxes payable on such income shall be paid from the Trust Property and, to the maximum extent permitted by applicable Laws, the Settlors shall be under no obligation to pay such taxes.

    (b)    For U.S. federal income tax purposes, the Parties acknowledge that the portion of the income of the Trust that will be attributed to NNI will be the amount in respect of that portion of the total contributions to the Trust that were contributed by NNI.

**5.10    Professional Advisors**

The Trustee shall be entitled to take legal, accounting, tax or other advice and employ such assistance as in its judgment, acting reasonably, may be necessary for the proper discharge of its duties (including advice or assistance from any Person who provides advice or assistance to the Settlors) and, if acting in good faith, may rely upon the opinion, information or advice of any counsellor or any other independent expert or advisor retained by the Trustee and shall not be responsible for any loss resulting from any action or inaction taken in good faith in reliance upon such opinion, information or advice. Notwithstanding anything to the contrary herein, the reasonable payment for such legal, accounting, tax or other advice may be made from the Trust

Property and paid directly to such third party advisor by the Trustee. Without prejudice to the generality of Section 4.7, under no circumstances shall the Settlors be liable to the Trustee or any other Person for any amounts due under this Section 5.10.

**5.11    Application to Court**

Any Settlor or Beneficiary, or the Trustee may apply to the Relevant Court at any time and from time to time for advice and direction in connection with any aspect of this Indenture and the administration of the Trust, and, in the case of the Trustee, the performance of any of its duties and responsibilities hereunder, including, without limitation, the appointment of a replacement trustee in accordance with the terms of Section 5.3 of this Indenture.

**5.12    Certificate of Incumbency**

Each of the Settlors shall deliver to the Trustee a certificate of incumbency, which certifies the incumbency and signatures of the directors, officers or other agents of such Settlor who have the authority to execute documents contemplated under this Indenture on behalf of such Settlor. The Trustee shall be entitled to rely on such certificate as to the matters certified therein and absent manifest irregularity in the manner of execution of any document deliverable under this Indenture, the Trustee shall have no obligation to verify the authenticity of any signatures on any document.

**5.13    Incidental Rights; Actions; Defenses; etc.**

In addition to all other powers conferred upon it by the other provisions hereof or by any Law, the Trustee, subject to the obligation to invest in Qualified Investments, shall have the following powers, authorities and discretion:

(a)    to exercise all rights incidental to the ownership of investments and property held as part of the Trust Property, and without limiting the generality of the foregoing, the right to vote upon and issue proxies respecting any investments held in the Trust Property, the right to sell, the right to consent to and join in any plan, reorganization, readjustment, amalgamation, merger or consolidation with respect to any Person whose securities at any time form part of the Trust Property, and the right to authorize the sale of the assets or undertaking of any Person whose securities at any time form part of the Trust Property;

(b)    to join or take any action in connection with any investment or asset held by the Trustee as part of the Trust Property or to which the Trustee may be entitled in connection herewith and to exercise any rights, powers and privileges that at any time may exist or arise in connection with such investment or asset;

(c)    to take, institute, maintain or defend any action or other proceeding that may be necessary or advisable in the opinion of the Trustee for the preservation or protection of or realization upon any property forming part of the Trust Property; and

[New York #2169605 v12]

(d)    any other power granted to the Trustee pursuant to a written authorization executed by each Settlor and each Beneficiary.

## ARTICLE 6
## RESTRICTIONS ON INDEMNITY

**6.1    Notice of Claims**

In no case shall the Trust be liable under the indemnity contained in Section 5.7 with respect to any claim against the Trustee unless the Settlors and the Beneficiaries shall be notified by the Trustee of the written assertion of a claim against the Trustee or of any Claim commenced against the Trustee, promptly after the Trustee shall have received any such written assertion of the claim or shall have been served with a summons, complaint or other first legal process giving the Settlors information as to the nature and basis of the Claim. The Settlors shall be entitled to participate at their own expense in the defense of any Claim. If any Settlor so elects at any time after receipt of such notice, such Settlor, at its own expense and in consultation with the Trustee, may assume the defense of any Claim brought to enforce such Claim.

## ARTICLE 7
## AMENDMENT

**7.1    Amendment Restrictions**

This Indenture may be amended, varied or supplemented only by written agreement executed by the Trustee and each of the Settlors, and, subject to Section 9.5, only:

(a)    to add to the provisions hereof additional covenants or provisions for the benefit of the Settlors, the Beneficiaries and/or the Trustee; or

(b)    for the purpose of correcting or rectifying ambiguities, defects, errors or omissions contained herein;

provided that any such amendment pursuant to Sections 7.1(a) or 7.1(b) is not, in the opinion of the Trustee and the Settlors, based on the advice of legal counsel, inconsistent with the purposes hereof or prejudicial in any material respect to the interests of the Beneficiaries; and provided, further that no increase in the amounts set forth in Exhibit B shall be effective without prior approval by the Relevant Court and prior written consent of each Party (such consent may be withheld, conditioned or delayed in the sole discretion of each Party).

With respect to any of the matters referred to in this Section 7.1 as to which the agreement or determination of the Settlors is required, NNI shall enter into no such agreement or make any such determination without prior consultation with the Creditors' Committee and the Bondholders Group and NNL shall enter into no such agreement or make any such determination without prior consultation with the Monitor and the Bondholders Group.

22

## ARTICLE 8
## ADJUSTMENT; TERMINATION

### 8.1    Adjustment of Trust Corpus

At the earlier of (i) the Confirmation Date, and (ii) the fifth anniversary of the creation of the Trust, but in no event before December 31, 2011, the Beneficiaries, the Settlors and the Trustee (collectively, the "**Adjustment Negotiating Parties**"), shall meet to discuss a reduction in the Trust Property and a termination date for the Trust.   In such discussions, the Adjustment Negotiating Parties shall take into account (A) the expected Costs of any Indemnified Claims that have then been asserted against the Beneficiaries but remain unresolved, (B) the amount of any potential Indemnified Claim that might reasonably be expected to be asserted against the Beneficiaries after such time and (C) any other relevant circumstances then in existence; provided that in no event shall the agreed upon reduction in the Trust Property have the effect of reducing the amount of the Trust Property to less than the aggregate amount of any reserves established pursuant to Section 4.1.   In the event that the Adjustment Negotiating Parties agree to reduce the Trust Property, the Trustee, within five (5) Business Days of receipt of written direction (which must be executed by each Adjustment Negotiating Party), shall implement the agreement of the Adjustment Negotiating Parties as set forth in such direction and distribute to each Settlor an equal proportionate amount (50% each) of the amount by which the Trust Property is to be reduced.   In the event that the Adjustment Negotiating Parties reach agreement on a date to terminate the Trust, each of the Settlors, the Trustee and each Beneficiary shall deliver to the Trust a written direction specifying such date, which shall be the Termination Date for purposes of Section 8.2.

In the event that the Adjustment Negotiating Parties cannot reach agreement on the appropriate amount of Trust Property or the appropriate date for the Trust to terminate, then the Settlors shall submit for resolution of the appropriate reduction in the Trust Property and/or a termination date for the Trust (taking into account the factors set forth in the preceding paragraph) to the Relevant Court. Until the Adjustment Negotiating Parties reach agreement or the Relevant Court resolves the issues of any reduction in Trust Property and/or determination of the termination date of the Trust, there shall be no such reduction of the Trust Property pursuant to this Section 8.1 and the Trust shall not terminate pursuant to Section 8.2(b) pending such determination by the Relevant Court.

For the purposes of this Section 8.1, with respect to any of the matters referred to in this Section 8.1 as to which the agreement or determination of the Settlors is required, NNI shall enter into no such agreement or make any such determination without prior consultation with the Creditors' Committee and the Bondholders Group and NNL shall enter into no such agreement or make any such determination without prior consultation with the Monitor and the Bondholders Group.

### 8.2    Termination Date

The Trust shall terminate upon the earliest to occur of:

23

(a)     a date determined by the Trustee if the Trustee in its discretion determines that there is no further Trust Property available to pay or satisfy Indemnified Claims; and

(b)     the date on which the Adjustment Negotiating Parties have determined the Trust should terminate, in accordance with Section 8.1, or in the event that the Adjustment Negotiating Parties cannot reach agreement on the appropriate date for the Trust to terminate, the date on which the Relevant Court has determined the Trust should terminate, in accordance with Section 8.1,

which earliest date shall be referred to as the **"Termination Date"**.

## 8.3     Consequence of Termination

Upon the termination of the Trust in accordance with Section 8.2, the Trustee shall, as soon as reasonably practicable, satisfy any commitments to pay Indemnified Claims made under Articles 2 and 4 and any outstanding Trustee Fees and Trustee Expenses, and deliver an equal proportionate amount (50% each) of the Trust Property then remaining, if any, to each Settlor or any designee of such Settlor (as designated in a written direction of such Settlor).

## 8.4     Survival

Articles 1 and 9, and Sections 2.8(a), 4.1, 4.4, 4.5, 4.6, 4.7, 4.9, 5.1, 5.5, 5.7, 5.8, 5.11, 5.12, 8.3 and 8.4 shall survive the termination of the Trust and this Indenture and shall continue for the benefit of the Parties.

## ARTICLE 9
## OTHER MATTERS

## 9.1     Governing Law

(a)     This Indenture shall be governed and construed in accordance with the Laws of the Province of Ontario and the laws of Canada applicable therein.

(b)     To the fullest extent permitted by applicable Law, each Party: (i) agrees that any claim, action or proceeding by such Party (including any Beneficiary) seeking any relief whatsoever arising out of, or in connection with, this Indenture, or the matters contemplated hereby shall be brought only in the Relevant Court; (ii) agrees to submit to the jurisdiction of the Relevant Court pursuant to the preceding clause (a) for purposes of all legal proceedings arising out of, or in connection with, this Indenture or the matters contemplated hereby; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of such action brought in any such court or any claim that any such action brought in such court has been brought in an inconvenient forum; (iv) agrees that the mailing of process or other papers in connection with any such action or proceeding in the manner provided in Section 9.11 or any other manner as may be permitted by Law shall be valid and sufficient service thereof; and (v)

24

agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in any other jurisdictions by suit on the judgment or in any other manner provided by applicable Law.

**9.2    Assignment**

Subject to Sections 5.2 and 5.3, the rights and obligations under this Indenture may not be assigned by the Trustee without the prior consent in writing of each Settlor. A Settlor may assign its rights and obligations under this Indenture with the prior written consent of the other Settlor; provided that no prior written consent of the other Settlor shall be required if the rights of a Settlor are transferred (x) to a liquidation trust established in connection with the relevant Creditor Protection Proceedings, (y) in connection with the implementation of a plan of reorganization of such Settlor or (z) a trustee of such Settlor in bankruptcy or receiver of such Settlor. Under no circumstances may the Beneficiaries transfer their rights and obligations under this Indenture. This Indenture shall be binding upon and enure to the benefit of the Parties and their respective heirs, estates, administrators, executors, legal personal representatives, successors and assigns.

**9.3    No Waiver, etc.**

(a)    No waiver of any of the provisions of this Indenture shall be deemed to constitute a waiver of any other provision (whether or not similar), nor shall such waiver be binding unless executed in writing by the party to be bound by the waiver.

(b)    No failure on the part of any Party to exercise, and no delay in exercising any right under this Indenture shall operate as a waiver of such right, nor shall any single or partial exercise of any such right preclude any other or further exercise of such right or the exercise of any other right.

**9.4    Entire Agreement**

This Indenture constitutes the entire agreement among the Parties with respect to the issues contemplated herein and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of such parties. There are no conditions or other agreements, express or implied, collateral, statutory or otherwise, among the Parties in connection with the subject matter of this Indenture, except as specifically set forth herein, and the Parties have not relied and are not relying on any other information, discussion or understanding in entering into and completing the transactions contemplated by this Indenture.

**9.5    Severability**

If any provision of this Indenture shall be determined by an arbitrator or any court of competent jurisdiction to be illegal, invalid or unenforceable, that provision will be severed from this Indenture and the remaining provisions shall remain in full force and effect. The Parties shall endeavor in good faith negotiations to replace the illegal, invalid or unenforceable provision with a valid provision which comes closest to the intention of the Settlors underlying the illegal, invalid or unenforceable provision.

**9.6    Time of the Essence**

Time is of the essence of this Indenture.

**9.7    Further Assurances**

The Settlors and the Trustee shall do or cause to be done all such acts and things and shall execute or cause to be executed all such documents, agreements and other instruments as may be reasonably necessary or desirable for the purpose of carrying out the provisions and intent of this Indenture.

**9.8    Counterpart Execution**

This Indenture may be executed in any number of counterparts and may be delivered by facsimile or other electronic transmission and all such counterparts taken together shall be deemed to constitute one and the same instrument.

**9.9    Third Party Beneficiaries**

Nothing in this Indenture, whether express or implied, is intended to confer any rights or remedies under or by reason of this Indenture on any persons other than the Settlors, the Beneficiaries, the Trustee and their respective successors and permitted assigns, nor is anything in this Indenture intended to relieve or discharge the obligation or liability of any third party to the Settlors, the Trustee or the Beneficiaries, nor shall any provision give any third party any right of subrogation or action against any Party to this Indenture, nor shall any provision estop or otherwise limit the rights of the Settlors, the Trustee or the Beneficiaries to assert any claims, counterclaims or defenses against any third party.

**9.10    No Obligation to Pay Indemnities Prohibited by Law**

(a)    Notwithstanding anything contained herein, the Trust shall not pay any Indemnified Claim hereunder if the payment of such amount would be prohibited under the applicable Laws.

(b)    Without prejudice to the generality of Section 9.10(a), the Trust shall not pay any Indemnified Claim of a Beneficiary hereunder unless such Beneficiary:

(i)    acted honestly and in good faith with a view to the best interests of the relevant Cascade Subsidiaries; and

(ii)    in the case of a criminal or administrative action or proceeding that is enforced by a monetary penalty, such Beneficiary had reasonable grounds for believing that such Beneficiary's conduct was lawful (each of (i) and (ii), a "**Condition**").

(c)    If the Trust pays to a Beneficiary an Indemnified Amount which it is prohibited from paying by Law (as determined by a court or administrative tribunal of

26

competent jurisdiction in a final judgment that has become non-appealable), then such amount shall be deemed to have been an advance of Costs by the Trust to such Beneficiary and upon written request by the Trustee, such Beneficiary shall repay such amounts to the Trust. For greater certainty, it is acknowledged that such Beneficiary shall be entitled to an advance of Costs in connection with an Indemnified Claim prior to the resolution of the merits of any action; provided that if a court or administrative tribunal of competent jurisdiction in its final judgment that has become non-appealable, determines that such Beneficiary does not fulfil either of the Conditions or that the relevant Claim resulted from the Beneficiary's fraud or wilful misconduct, such Beneficiary shall refund such amounts to the Trust.

**9.11    Notice**

Any notice, direction or other communication given under this Indenture shall be in writing and given by delivering it or sending it via facsimile, or other similar form of recorded communication, during normal business hours, addressed:

(a)    to NNL at:

Nortel Networks Limited
5945 Airport Road
Suite 360
Mississauga, Ontario L4V 1R9
Canada

Attention:    Anna Ventresca, Esq.
Facsimile:    +1 905 863 2075

with a copy to:

Ogilvy Renault LLP
200 Bay Street
Suite 3800, P.O. Box 84
Royal Bank Plaza, South Tower
Toronto, Ontario M5J 2Z4
Canada

Attention:    Michael J. Lang, Esq. and Derrick Tay, Esq.
Facsimile:    +1 416 216 3930 / 216 4832

(b)    to NNI at:

Nortel Networks Inc.
2221 Lakeside Boulevard
Richardson, Texas 75082
U.S.A.

27

Attention:     John Ray
Facsimile:     +1 972 684 2470

with a copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006
U.S.A.

Attention:     Craig B. Brod, Esq. and James L. Bromley, Esq.
Facsimile:     +1 212 225 3999

with a copy to:

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801
U.S.A.

Attention:     Derek C. Abbott, Esq.
Facsimile:     +1 302 425 4664

(c)     to the initial Beneficiaries at:

Nortel Networks Limited
5945 Airport Road
Suite 360
Mississauga, Ontario L4V 1R9
Canada

Attention:     ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Facsimile:     +1 905 863 2075

with a copy to:

Mayer Brown LLP
1675 Broadway
New York, NY 10019
U.S.A.

Attention:     Brian Trust, Esq. and Thomas M. Vitale, Esq.
Facsimile:     +1 212 262 1910

(d)     to the Trustee at:

28

John T. Evans, Esq.
44 Charles Street West
Suite 3202
Toronto, Ontario
Canada M4Y 1R8

Email: jevans@osler.com

Any such communication shall be deemed to have been validly and effectively given (i) if personally delivered, on the date of such delivery if such date is a Business Day and such delivery was made prior to 4:00 p.m. (Toronto time) and otherwise on the next Business Day, or (ii) if transmitted via facsimile or by electronic mail, on the Business Day following the date of transmission. Any of the above parties may change his or its address for service from time to time by notice given in accordance with the foregoing and any subsequent notice shall be sent to such party at its changed address.

## 9.12    U.S. Federal Income Tax Treatment

The Parties intend that the Trust shall be treated merely as a custodial arrangement that is not recognized as an entity for U.S. federal income tax purposes, and shall interpret the provisions of this Trust Indenture in accordance with such treatment.  If such treatment is not available, NNI and the Trustee agree to cooperate to ensure that each of NNI and the Trustee properly and consistently prepare and timely file any tax returns, information returns, and other applicable filings or reports that such Party is responsible for preparing under applicable Law in connection with the Trust Property for U.S. federal income tax purposes.

[New York #2169605 v12]

**IN WITNESS WHEREOF** this Indenture has been executed as of the date first written above.

**NORTEL NETWORKS LIMITED**

By: _____
      Name:
      Title:


By: _____
      Name:
      Title:


**NORTEL NETWORKS INC.**


By: _____
      Name:
      Title:


**TRUSTEE**


_____
Name:  John T. Evans

30

Signed by the Beneficiaries solely for the purposes of being a party to Articles 2 and 9 of this Indenture

By: _____
    Name: ███████████

By: _____
    Name: █████████

By: _____
    Name: ███████████

31

## EXHIBIT A

### CASCADE SUBSIDIARIES

All non-filed subsidiaries of the US Debtors and the Canadian Debtors as of the date hereof shall qualify as Cascade Subsidiaries, including, without limitation, the following entities:

| | | |
|---|---|---|
| 1. | Nortel Networks (China) Limited | NNL |
| 2. | Nortel Networks Telecommunications Equipment (Shanghai) Co. Ltd. | NNL[1] |
| 3. | Nortel Networks (Asia) Limited | NNL[2] |
| 4. | Nortel Networks Japan | NNI |
| 5. | Nortel Networks Australia Pty Limited | NNL[3] |
| 6. | Nortel Networks New Zealand Pty Limited | NNL[4] |
| 7. | Nortel Networks (India) Pvt Ltd | NNI[5] |
| 8. | Nortel Technology Excellence Centre Pvt Ltd. | NNI[6] |
| 9. | PT Nortel Networks Indonesia | NNL |
| 10. | Nortel Networks Malaysia Sdn Bhd | NNL |
| 11. | Nortel Networks Mauritius Limited | NNL |
| 12. | Nortel Networks Singapore Ltd | NNL |
| 13. | Nortel Networks Southeast Asia Pte Ltd | NNI |
| 14. | Nortel Networks (Thailand) Ltd | NNL[7] |
| 15. | Nortel Networks Technology (Thailand) Ltd | NNI[8] |
| 16. | Nortel Vietnam Limited | NNL |

---

[1] Ownership: 70%NNL, 30% Nortel Networks China
[2] Ownership: 99.99% NNL, 0.01% Nortel Networks International Corporation ("**NNIC**")
[3] Ownership: 0.01% NNIC, 1.10% NNL, 98.89% Nortel Networks UK Limited ("**NNUK**")
[4] Ownership: 99.99% NNL, 0.01% NNIC
[5] Ownership: 99.99% Nortel Networks Mauritius Ltd ("**NN Mauritius**"), 0.01% Nortel Networks Singapore Pte Ltd
[6] Ownership: 99.01% NNI, 0.99% NN Mauritius
[7] Ownership: 99.99% NNL, 0.01% NNL Nominees
[8] Ownership: 99.94% NNI, 0.01% Nortel Networks International Inc., 0.01% Nortel Networks Technology Ltd, 0.04% Nominees

A-1

# EXHIBIT B

## CONTRIBUTION OF THE SETTLORS

| | |
|---|---|
| NNL | US$17,500,000 |
| NNI | US$17,500,000 |
| Total Contribution | US$35,000,000 |

B-1

[New York #2169605 v12]

**EXHIBIT C**

**FILED UNDER SEAL**