# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
: Re: D.I. 2644
---------------------------------------------------------X

**RESPONSE OF DEBTORS IN OPPOSITION TO THE MOTION OF THE TRUSTEE OF NORTEL NETWORKS U.K. PENSION PLAN AND THE BOARD OF THE PENSION PROTECTION FUND FOR AN ORDER CERTIFYING THE AUTOMATIC STAY ORDER FOR IMMEDIATE APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)**

Debtors Nortel Networks Inc. ("NNI") and certain of its affiliated debtors, as respective debtors and debtors in possession (the "Debtors"), by and through their undersigned counsel, hereby respond in opposition (the "Response") to the motion of the Trustee of Nortel Networks U.K. Pension Plan (the "Trustee") and the Board of the Pension Protection Fund (the "PPF", together with the Trustee, the "Movants") for an order certifying this Court's February 26, 2010 order enforcing the automatic stay (the "Order") for immediate appeal to the United

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 158(d)(2) (the "Motion").[2]

For its Response to the Motion, Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1. Moving on shortened notice,[3] Movants seek an order certifying for direct appeal to the Third Circuit this Court's Order enforcing the automatic stay with respect to their participation in certain administrative proceedings in the U.K. (the "U.K. Administrative Proceedings"). They point to nothing, however, to demonstrate either that the issues raised in their appeal involve broad, far-reaching, previously undecided legal questions or that certification would materially advance the progress of these bankruptcy cases, as required to justify a direct appeal to the Third Circuit under the standards set forth in 28 U.S.C. § 158(d)(2)(A). Accordingly, certification should be denied.

2. First, the Order does not involve a pure question of law as to which there is no controlling decision of the Third Circuit, but rather involves the application of well-settled and controlling law to a set of facts for which there is no specific decision on point, as developed in a full factual hearing and record before this Court. Second, the Order does not involve a legal question of public importance that "transcends the litigants" in this case; rather, it is limited to Movants' desire to have their particular private claim liquidated in a foreign proceeding on their own turf, on a timetable of their choosing, before a quasi-judicial panel whose entire purpose is to protect the benefits of private U.K. pension plans. Third, an immediate appeal would not materially advance the progress of these bankruptcy proceedings, as is required for certification

---

[2] Subsequent to the Order and to the Motion, on March 9, 2010, this Court issued a memorandum opinion (the "Opinion") setting forth the "substance of the Court's findings and its rationale for granting the [Stay Motion] and thereby enforcing the automatic stay." (Opinion at 2.) (NNI Ct. Dkt. No. 2664.)

[3] Debtors did not contest the Movants' Motion to Shorten Notice filed simultaneously with their Motion, but do not accept as valid the arguments made therein.

to the court of appeals.  Instead, as this Court specifically held, participation in the U.K. Administrative Proceedings would effectively put the "cart before the horse," requiring the Debtors to devote their resources to a claims matter that involves issues of intercompany benefits and financial circumstances that directly overlap with, and must await the resolution of, the significant allocation issues that the Debtors are currently working hard to determine.  (See Opinion at 20-22; Tr. 183:20-184:2.)[4]

3. Just as Movants falsely portray the matter as involving important previously undecided legal questions, they also seek to create a sense of urgency because of an illusory U.K. statutory "deadline" of June 30, 2010.  (Motion ¶ 3.)  The record before this Court makes clear that the June 30, 2010 date is <u>not</u> an immovable deadline, but rather is a date that can be moved by the decision of the U.K. Pensions Regulator ("TPR") to select another "relevant date."  In the five months since the Movants filed their proofs of claim in this Court (the "U.K. Pension Claim") in September 2009, they have failed to move this Court to lift the automatic stay to allow them to participate in the U.K. Administrative Proceedings without violating the Bankruptcy Code.  Movants cannot now point to a fire drill that is so clearly of their own making as the basis for a direct and immediate appeal to the Third Circuit – especially when this Court has determined that the U.K. Pension Claim can be liquidated in the claims allowance process before this Court in due course.

## PROCEDURAL BACKGROUND

4. On February 18, 2010, the Debtors filed a motion (the "Stay Motion") pursuant to Sections 362(a)(1) and (a)(6) of title 11 of the United States Code (the "Bankruptcy Code") to enforce the automatic stay against Movants with respect to their participation in the

---

[4] All references to "Tr." herein refer to the February 26, 2010 transcript of the Hearing, a copy of which is attached hereto as Exhibit A.

U.K. Administrative Proceedings brought by TPR against NNI and Nortel Networks (CALA) Inc. ("NN CALA") and a number of non-U.S. Nortel entities. (NNI Ct. Dkt. No. 2441.) On February 24, 2010, the Trustee and PPF filed an objection (the "Objection") to the Stay Motion. (NNI Ct. Dkt. No. 2503.)

5. On February 26, 2010, a hearing (the "Hearing") on the Stay Motion was held before this Court. At the Hearing, the parties made arguments and submitted evidence to the Court, including seven declarations (attaching some twenty-six exhibits)[5] and other papers, and cross-examined five of their respective declarants. Those submissions included, inter alia, the following:

- Movants argued that TPR was established to remedy a "moral hazard" of underfunded pension plans and, consequently, that the police power exception to the automatic stay should apply in this case. (See, e.g., Tr. 57:3-58:10 (Opening); Ham Dec. ¶¶ 27-35; Tr. 172:2-174:4 (Closing).) However, Debtors demonstrated that the principal objective of TPR was to protect the benefits of private pension schemes, not to remedy a moral hazard, and that the purpose of the U.K. Administrative Proceedings was to assess and quantify the liability with respect to the U.K. Pension Claim filed by Movants. (See, e.g., Tr. 44:14-48:14 (Opening); O'Connor Dec. Ex. E ¶¶ 3(c), 19 (February 24, 2010 letter from TPR); Hitchcock Dec. ¶¶ 30-32, 38-41; Tr. 104:16-105:23 (Hitchcock Cross); Davies Dec. ¶ 32; Tr. 115:18-22, 117:6-14 (Davies Cross); Tr. 127:18-131:4, 134:22-135:11 (Ham Cross); Tr. 147:22-148:4 (Favier Cross); Tr. 156:20-157:22 (Closing).) Consequently, Debtors demonstrated that the U.K. Administrative Proceedings had a "pecuniary purpose" and not a public purpose, that they were addressing the private rights of the Movants and not a matter of public safety or welfare, and that, therefore, TPR was not exercising a "police power" in the particular circumstances of this case. (See, e.g., Tr. 42:6-10, 47:18-21, 54:3-7, 156:23-157:1.)[6]

---

[5] Submitted in support of the Stay Motion and moved into evidence at the Hearing were the February 18, 2010 Declaration of Richard Hitchcock (the "Hitchcock Dec.") (NNI Ct. Dkt. No. 2445), the February 18, 2010 Declaration of John Ray (the "Ray Dec.") (NNI Ct. Dkt. No. 2444), and the February 17, 2010 Declaration of Lisa Schweitzer (NNI Ct. Dkt. No. 2443). Submitted in support of the Objection and moved into evidence at the Hearing were the February 24, 2010 Declaration of Robert Wallace Ham, Q.C. (the "Ham Dec.") (NNI Ct. Dkt. No. 2509), the February 24, 2010 Declaration of Brian O'Connor (the "O'Connor Dec.") (NNI Ct. Dkt. No. 2507), the February 24, 2010 Declaration of David Davies (the "Davies Dec.") (NNI Ct. Dkt. No. 2506), and the February 24, 2010 Declaration of Richard Favier. (NNI Ct. Dkt. No. 2508.)

[6] Movants did not argue to the Court that there was an overarching unsettled question of law, but rather argued that they should prevail based upon the application of existing Third Circuit and other law to the particular facts of this case. (See, e.g., Tr. 55:16-19 [O'Connor]: "I don't think we do dispute the law. I think we do have

4

- Despite Movants' attempt to minimize the significance of the allocation process, the evidence at the Hearing demonstrated that any factual determinations made in the U.K. Administrative Proceedings would directly overlap with the allocation of the proceeds from post-petition sale transactions among the Debtors and various other Nortel entities, including Nortel Networks U.K. Limited ("NNUK"). (See, e.g., Tr. 53:7-24; Ray Dec. ¶¶ 14-19; Tr. 90:23-92:11 (Ray Cross).) For instance, pursuant to the U.K Pensions Act 2004 (the "U.K. Pensions Act"), any determination by TPR would necessarily include an assessment of the financial condition of both the target Debtors and NNUK; such a determination would be premature as the financial conditions of the companies will be determined largely by the outcome of the allocation process. (See, e.g., Tr. 53:7-24; Ray Dec. ¶ 19.) Moreover, the Debtors demonstrated to the Court that the U.K. Administrative Proceedings would impose significant burdens on the estate at a time when it had scarce resources to devote. (See, e.g., Ray Dec. ¶¶ 20-21; Tr. 94:5-97:19 (Ray Cross); Tr. 151:9-152:13, 155:22-156:14; see also Tr. 166:23-167:17 (argument by the Official Committee of Unsecured Creditors of the Debtors (the "Creditors' Committee")).)

- Movants attempted to argue that this Court would be hampered in liquidating the U.K. Pension Claim under U.K. law in the claims allowance process. (See, e.g., Tr. 84:9-85:8, 176:24-177:14.) Both the Debtors and the Creditors' Committee, however, demonstrated that the U.K. Pension Claim (as with any other claim) could clearly be liquidated before this Court, and that Movants would have the right to make all arguments before this Court that they could have made in the U.K. Administrative Proceedings. (See, e.g., Tr. 155:1-7, 168:15-169:16.)[7]

6. At the conclusion of the Hearing, this Court granted the Debtors' Stay Motion, setting forth the basis for its ruling on the record. The Court subsequently issued the

---

different characterizations of the process, and we do dispute the ultimate conclusions that the debtors reach." (emphasis added).) Citing In re: Sea Containers Ltd., No. 06-11156 (KJC), 2008 WL 4296562 (Bankr. D. Del. Sept. 19, 2008), as well as other decisions of courts in the Third Circuit and elsewhere, Movants contended that "the law is pretty clear that the actions – the action commenced by the pension's regulator is a government regulatory police power that is accepted [sic] from the automatic stay." (Tr. 73:6-9.) For their part, the Debtors also relied on the application of existing Third Circuit and other cases arising in the context of governmental agency actions (see Tr. 159:13-161:17) to the particular facts of this case, and distinguished Sea Containers based on the significantly different factual circumstances there – namely, that the case was presented to the bankruptcy court on a motion to approve a settlement following the debtors' voluntary participation in a U.K. Financial Support Directive ("FSD") proceeding, and involved an objection by a creditors' committee not to the FSD process, but to the proposed settlement. (See Tr. 48:15-50:24.)

[7] Indeed, while Movants' own U.K. law expert testified on cross-examination that an FSD does not necessarily have to specify a dollar amount for the liability of the targets to which it is issued (Tr. 135:22-139:10 (Ham Cross)), in this case TPR and Movants have made it clear that TPR would do just that, thereby allowing Movants to argue to this Court later in the claims allowance process that the U.K Pension Claim had already been liquidated. (See, e.g., O'Connor Dec. Ex. E ¶¶ 3(c), 19 (letter from TPR); Ham Dec. ¶ 50; Tr. 136:4-9, 137:22-139:10 (Ham Cross); Davies Dec. ¶¶ 17, 32; Tr. 113:23-115:22 (Davies Cross); Tr. 63:13-16, 64:17-20, 77:10-78:4, 83:4-5 (O'Connor Opening); Tr. 177:6-178:6 (O'Connor Closing).)

Opinion setting forth its decision and reasoning in more detail. The Court found that the U.K. Administrative Proceedings were subject to the automatic stay, and that Movants had submitted to the jurisdiction of the Court by filing the U.K. Pension Claim, which was "the very subject of the U.K. proceedings." (Opinion at 11; Tr. 183:4-13.) The Court further found that the police power exception to the automatic stay did not apply to the facts of this case. (Opinion at 11-17; Tr. 184:13-21.) Rather, the Court held that the U.K. Administrative Proceedings were clearly a "pecuniary matter" that, under the applicable case law, did not satisfy the "pecuniary purpose" test, and did not qualify as a matter of public safety or welfare as would be required to satisfy the "public policy" test. (Opinion at 12-17; see also Tr. 184:22-185:2.) In addition, the Court noted important distinctions between this case and In re: Sea Containers Ltd., No. 06-11156 (KJC), 2008 WL 4296562 (Bankr. D. Del. Sept. 19, 2008), both in the procedural context and the underlying factual circumstances. (Opinion at 17-19.) The Court stated, inter alia, that Sea Containers involved a settlement by the debtors after they voluntarily participated in the FSD proceeding, which was presented to the Court on a motion by the debtors under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). Moreover, not only had the debtors not sought to stay or invalidate the FSD proceedings, but it appeared that the only party objecting to the settlement, one of the creditors' committees in that case, had also failed to seek to enforce the automatic stay or formally object to the FSD proceedings, and may have "sat on its rights" in waiting to object. Under these circumstances, the Court stated, the Sea Containers court could well have found that laches applied. (Tr. 185:3-17; see also Opinion at 19.) Here, however, the Court found that the Debtors, with the Creditors' Committee's support, were acting in a proactive manner to stave off a potential drain on the resources of the estate by enforcing the automatic stay. (Tr. 185:17-23; Opinion at 19.)

6

7. The Court further found that the issues raised in the U.K. Administrative Proceedings would "overlap[] heavily" with the issues in the allocation process – issues that the Debtors and other Nortel debtors, including NNUK, had agreed to resolve on a global basis and in a single cross-jurisdictional forum, and which "should not be decided even in part, by an administrative body in a single jurisdiction with a single constituency." (Opinion at 21; see also Tr. 183:14-17.) Responding to the Movants' arguments about comity, the Court found that it was Movants who were ignoring comity concerns, and that their efforts to litigate their claims "clear of the Court's jurisdiction and automatic stay" were "inimical" to the ongoing and complex allocation process. (Opinion at 15-16; see also Tr. 183:18-184:2.) The Court stressed, both at the Hearing and in the Opinion, that "[c]laimants can obtain complete monetary relief in this Court at the appropriate time." (Opinion at 14; Tr. 183:13-14.)

## ARGUMENT

### Movants Fail to Meet Any of the Statutory Requirements for Certification to the Third Circuit

#### A. The Standard for Certification

8. Under 28 U.S.C. § 158(d), certification for direct appeal[8] to the court of appeals is appropriate in only three limited circumstances:

> (i) where the bankruptcy court "judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance";
>
> (ii) where the bankruptcy court "judgment, order, or decree involves a question of law requiring resolution of conflicting decisions."[9]; or

---

[8] The Debtors do not concede that the Order is an appealable order. See United States v. Nicolet, 857 F.2d 202, 206 n.2 (3d Cir. 1988).

[9] Movants have not moved for certification on this basis.

7

>  (iii) where "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken."

28 U.S.C. § 158(d)(2)(A).

9. Courts have interpreted the "controlling precedent" prong of 28 U.S.C. § 158(d)(2)(A)(i) to require that there be "no governing law on the issue before the court." Mull Drilling Co. v. SemCrude, L.P. (In re SemCrude, L.P.), 407 B.R. 82, 111 (Bankr. D. Del. 2009). See generally Weber v. United States, 484 F.3d 154 (2d Cir. 2007). Appeals seeking merely to dispute the application of existing controlling law to specific facts do not satisfy this basis for certification. SemCrude, 407 B.R. at 111; In re Gen. Motors Corp., 409 B.R. 24, 28 (Bankr. S.D.N.Y. 2009) (denying motion for certification and noting that "where the Circuit has already decided the bottom line … there's no conflict for the Circuit to resolve.").

10. Courts have also interpreted the "public importance" prong of 28 U.S.C. § 158(d)(2)(A)(i) narrowly. To show that a bankruptcy court judgment, order, or decree involves a matter of "public importance," a party seeking certification must show that the issue on appeal "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." Am. Home Mortgage Inv. Corp. v. Lehman Bros. and Lehman Commercial Paper Inc. (In re Am. Home Mortgage Inv. Corp.), 408 B.R. 42, 44 (D. Del. 2009). An appeal that impacts only the parties, and not the public at large, is not "'a matter of public importance.'" See Reorganized Debtors ex rel Goody's Family Clothing, Inc. v. Blue Dog Props. Trust (In re Goody's Family Clothing, Inc.), No. 09-409 (RMB), 2009 WL 2355705, at *2 (D. Del. July 31, 2009) (denying certification) (quoting 28 U.S.C. § 158(d)(2)(A)(i)).

11. In addition, courts have construed these two prongs of Section 158(d)(2)(A) to require that the question on appeal be a *pure question of law*: "Congress intended § [158(d)] to facilitate [the courts' of appeals] provision of guidance on pure questions of law." Weber, 484 F.3d at 158 (emphasis added) (exercising its discretion to deny certification). Mixed questions of law and fact "that implicate the particular circumstances" of the case do not warrant direct appeal. Am. Home Mortgage Inv. Corp., 408 B.R. at 44 (citing 1 Collier on Bankruptcy 5.05[A] (15th ed. rev.)) (denying certification); see In re 15375 Mem'l Corp., No. 06-10859-KG, 2008 WL 2698678, at *1 (D. Del. July 3, 2007) (same).

12. The third basis on which courts may certify an appeal is where "an immediate appeal . . . may materially advance the progress of the case. . . ." 28 U.S.C. § 158(d)(2)(A)(iii). In applying this standard, courts are mindful that Congress did not "wish us to privilege speed over other goals [and that] speed is not necessarily compatible with our ultimate objective – answering questions wisely and well." Weber, 484 F.3d at 160. Furthermore, courts deny motions to certify on this basis when the bankruptcy case is "proceeding regardless of [a direct] appeal." See Am. Home Mortgage Inv. Corp., 408 B.R. at 44 (denying certification).

13. Movants have failed to demonstrate that any of these requirements for certification is present here.

### B. The Order Does Not Involve A Question Of Law Without Controlling Authority

14. Movants argue that the Motion should be granted because, under 28 U.S.C. § 158(d)(2)(A)(i), the Order involves "a question of law as to which there is no controlling authority in either the Third Circuit or the United States Supreme Court." (Motion ¶ 9.) They seek to define this supposed "question of law" alternatively as "(i) whether the

automatic stay applies to enjoin[10] a proceeding commenced by an agency of a foreign sovereign in which claims arising exclusively under a statute of the foreign sovereign are fixed and liquidated by a committee of the agency, or (ii) whether that proceeding is excepted from the automatic stay by the regulatory/police power exception contained in section 362(b)(4) of the Bankruptcy Code." (Id.)  However, Movants' arguments are not supported by either the record that led to the Order or by the Court's Opinion, because (i) the Court's decision is based on established Third Circuit precedent, and (ii) the Court's decision involves mixed questions of fact and law.

      **(i)    The Court's Decision Relies on Established, Controlling Third Circuit Precedent and Legislative History**

15.    Relying on an extensive factual record, this Court determined that under both the "pecuniary purpose" and "public interest" tests applied in the Third Circuit and elsewhere, the U.K. Administrative Proceedings do not constitute an exercise of the police power by TPR, and are thus subject to the automatic stay under Bankruptcy Code § 362(a).  This decision comports with extensive case law in this Circuit that is controlling on the issues of the scope of the automatic stay and the police power exception.  See, e.g., In re Fairchild Corp., No. 09-10899 (CSS), 2009 WL 4546581 (Bankr. D. Del. Dec. 1, 2009); In re Spansion, Inc., 418 B.R. 84 (Bankr. D Del. 2009); see also Brock v. Morysville Body Works Inc., 829 F.2d 383 (3d Cir. 1987); Penn Terra Ltd. v. Dep't of Env't Res., Commw. of Pa., 733 F.2d 267 (3d Cir. 1984).  Moreover, the Court found, as a matter of these facts, that Movants' attempt to litigate the U.K. Pension Claim in the U.K. Administrative Proceedings was "inimical to the Debtors' effort and

---

[10]    Contrary to Movants' assertion, the Stay Motion did not seek an injunction, nor did the Court's Order issue an injunction.  Moreover, to the extent that Movants are suggesting, ipse dixit, that there is no need to even reach the police power exception under Bankruptcy Code § 362(b)(4) because under Section 362(a) the automatic stay does not apply at all to the U.K. Administrative Proceedings, they have not and cannot point to anything in the statutory language, the case law or the record that would support this proposition.

10

those of non-U.S. debtors in a highly complex liquidation to assemble the assets, reduce them to money, allocate those assets among numerous entities in many countries and then distribute the assets." (Opinion at 15-16.)

16. There can be no serious dispute that there is controlling authority in this Circuit on the standards that govern the police power exception to the automatic stay. Indeed, in Movants' Objection they argued at length, citing not only a number of Third Circuit cases but also legislative history, that (i) there is governing authority on the issue of whether the police power exception should be applied in this case; (ii) there are two well-established tests – the "'public policy' and the 'pecuniary purpose' tests [that] have evolved for assessing whether a governmental or regulatory proceeding comes within the ambit of subsection 362(b)(4)" (Objection ¶ 41); and (iii) the Court should apply these established standards to deny the Debtors' Stay Motion. (See Objection ¶¶ 39-57.)

17. Moreover, contrary to the position they now assert in the Motion, at the Hearing Movants' counsel argued that the law on the issues presented was "clear":

> So, in short, Your Honor, we think the law is pretty clear that the actions – the action commenced by the pension's regulator is a government regulatory police power that is accepted [sic] from the automatic stay. Not only does Sea Containers support that most analogously, but the law in the United States involving domestic agency [sic] we think fully supports that as well.

(Tr. 73:6-11.)[11]

---

[11] Movants resort to a partial quotation of Debtors' counsel in order to suggest a concession that "no controlling authority" exists. (Motion ¶ 10.) The complete quote from the transcript belies any such conclusion: "It is true, as Mr. O'Connor pointed out, that we do not have a case to cite to this Court which is exactly on point. We have the regulator, which is the prosecutor, and the judicial body, the decider and the appellate court, we don't have that structure. But I think we do have, and we cited the Court instances where bankruptcy courts have been asked to determine whether when private rights are being adjudicated in front of a regulatory body which has, unquestionably, a specialized and legislatively granted focus, substantive focus, whether that implicates the police power, and in those instances the answer is no." (Tr. 157:23-158:8.)

11

18. On this Motion, Movants would have this Court rewrite the "no controlling authority" standard to mean that there is "no appellate court decision decided on precisely the same facts." But that is not what the "no controlling authority" standard means. See SemCrude, 407 B.R. at 111 (finding no controlling authority where "there is no governing law on the issue before the court"); see generally Weber, 484 F.3d 154. The courts of appeal would be inundated with direct appeals if each new set of facts warranted certification.

19. Indeed, in their Objection, Movants argued that there are "numerous" cases involving the police power exception that are applicable here. (Objection ¶ 36.) However, the cases on which Movants relied in their Objection are to a substantial extent the *very same cases* they now contend are not "controlling" because they did not involve a foreign regulator.[12] Contrast Objection ¶¶ 40-47 with Motion at 5 n.5 (both citing, e.g., In re Mystic Tank Lines Corp., 544 F.3d 524 (3d Cir. 2008); Penn Terra, 733 F.2d 267; Nicolet, 857 F.2d 202). Movants cannot have it both ways.

20. The single case on which Movants rely in making their "lack of controlling authority" argument, SemCrude, 407 B.R. 82, does not support their position. (Motion ¶ 10.) In SemCrude, Judge Shannon was faced with a summary judgment motion on "purely legal questions" of first impression under the Kansas version of the U.C.C. regarding the perfection of security interests. SemCrude, 407 B.R. at 95. As the court stated, "there is no case law, state or federal, construing Kansas § 9-339a. As such, in interpreting the statute the Court is obliged to *predict* state law." Id. at 95-96 (emphasis added). In light of the fact that there was

---

[12] The police power exception to the automatic stay under Section 362(b)(4) applies to exercises of such power by a "governmental unit." As Movants argued in their Objection in seeking to invoke the police power exception, however, the Bankruptcy Code definition of "governmental unit" expressly includes not only federal and state governments and agencies, but also "foreign state[s]," "foreign government[s]," and their "department[s], agencie[s] or instrumentalit[ies]." (See Objection at 16 n.9.) See 11 U.S.C. § 101(27). The issue is not whether a foreign regulator can qualify for the police power exception, but rather whether in this case the foreign regulator is exercising the police power as defined under Third Circuit precedent.

"no governing law on the issue before the Court," Judge Shannon sua sponte certified the matter for direct appeal to the Third Circuit, which could then certify the question to the Kansas Supreme Court. Id. at 111. In contrast, in this case, by Movants' own admission, there are "numerous" cases in this Circuit addressing the police power issue. (Objection ¶ 36.) See, e.g., Brock, 829 F.2d 383; Penn Terra, 733 F.2d 267; Fairchild, 2009 WL 4546581; Spansion, 418 B.R. 84. And it was precisely these cases and others, both in this Circuit and elsewhere, that formed the basis for this Court's Opinion. (See Opinion at 13-16.)

### (ii) The Court's Decision Involves Mixed Questions of Fact and Law

21. The Court's decision also makes clear that the issue presented by the Order is not a "pure question of law" as is required under Section 158(d)(2)(A)(i), see Weber, 484 F.3d at 157-58, but a mixed question of law and fact, involving the application of established Third Circuit standards concerning the "police power" exception to the automatic stay to the particular facts of this case. See, e.g., Am. Home Mortgage Inv. Corp., 408 B.R. at 44 (denying certification motion where the issues on appeal were "mixed questions that implicate the particular circumstances of this case, and as such, they are not pure legal questions warranting direct certification").

22. Specifically, the Court cited the following factual conclusions, among others, as the basis for its decision:

- The U.K. Administrative Proceedings are primarily a property issue, not an issue of health, welfare, morals or safety, so under both the pecuniary purpose test and the public interest test, the police power exception under section 362(b)(4) does not apply. (Tr. 184:13-185:2; Opinion at 11-17.)

- The Court can capably decide the U.K. Pension Claim in the claims process. (Tr. 183:13-14; Opinion at 14.)

13

- The allocation issue is a primary issue that the Debtors are now addressing, and the ultimate disposition of the U.K. Pension Claim requires a reasonableness determination, which cannot be made until the allocation process is complete. (Tr. 183:14-184:2; Opinion at 20-22.)

- Movants' attempts to litigate their claims in the U.K. Administrative Proceedings would undermine the allocation process. (Tr. 184:3-12, 185:17-23; Opinion at 15-16.)

23. Some courts have implied that the presence of factual issues alone warrants denial of certification. See In re 15375 Mem'l Corp., 2008 WL 2698678, at *1 (declining to address the material advancement factor after finding that "a pure question of law" had not been stated). This approach is consistent with Congressional intent. See H.R. Rep. No. 109-31, at 148-49 (2005) (noting that in revising Section 158(d), Congress did not intend to permit direct appeals of "fact-intensive issues," but rather intended that appeals on such issues be heard by district court judges or bankruptcy appellate panels). See Weber, 484 F.3d at 160 (cautioning that "[p]ermitting direct appeal too readily might impede the development of a coherent body of bankruptcy case law").

### C. The Order Does Not Involve A Matter Of Public Importance

24. To demonstrate that a matter of public importance is involved, Movants face the substantial hurdle of showing that the case "'transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case.'" Am. Home Mortgage Inv. Corp., 408 B.R. at 44 (quoting 1 Collier on Bankruptcy 5.05[A] (15th ed. rev.)).[13] Here, Movants fail to demonstrate that the Order, which

---

[13] The difficulty of satisfying the "public importance" test is underscored by the paucity of cases in which the courts have held that the "public importance" standard was met. Indeed, Movants cite only one such case, Ransom v. MBNA Am. Bank, N.A. (In re Ransom), 380 B.R. 809, 812 (9th Cir. B.A.P. 2007). In re Ransom, however, involved an unsettled question of law (whether a debtor may take a certain vehicle deduction in his statement of current monthly income) over which there was "substantial conflict" among the bankruptcy courts and where there were no circuit decisions that were on point. Id. Here, as discussed above, there is no unsettled legal question, but rather only a question of how to apply well-settled law to the particular facts of this case.

applies to the particular facts of this case a well-settled legal principle (that the action of a regulatory body seeking to secure the pecuniary interest of a private party is not exempt from the automatic stay), "transcends the litigants" and involves a matter of public importance.[14]

25. Movants argue that the Order involves a matter of public importance because of "principles of comity." (Motion ¶ 11.) At the Hearing Movants argued this point at length, and this Court explicitly considered – and rejected – the argument, noting that while "the Court is very sensitive to comity," comity "runs both ways." (Tr. 183:18-20.) The Court reasoned that the Debtors and other Nortel entities were devoting their resources to arrive at a global resolution of the key allocation issues, and the U.K. Administrative Proceedings would be putting the "cart before the horse" because resolution of the U.K. Pension Claim would require a determination of reasonableness that could not be made until the allocation issues were resolved. (Tr. 183:18-184:2; see also Opinion at 16 ("The Claimants who implore this Court to give comity to the U.K. Proceedings are themselves ignoring comity. They as much as say, 'give the proceedings of our choice the respect we are unwilling to show to other proceedings in which many debtors and creditors are working tirelessly to formulate a coherent, equitable plan.'").) That conclusion is equally applicable on the "public importance" issue here.

26. In addition to their arguments about comity, Movants also speculate that enforcement of the automatic stay in this circumstance will "induce foreign creditors generally to forgo submitting claims in U.S. bankruptcy courts," and that they will instead seek to "seize debtors' assets abroad." (Motion ¶ 12.) But were the Court to accept this conjecture, any

---

[14] Movants also erroneously separate the question of public importance from the question of whether a matter is subject to controlling law. (Motion ¶¶ 9-12.) Courts have suggested, however, that where the issues that form the basis of an appeal have already been decided in controlling precedent, deciding those same issues again necessarily cannot be a matter of public importance under 28 U.S.C. § 158(d)(2). See, e.g., Gen. Motors Corp., 409 B.R. at 28 (denying motion for certification and noting that the legal question has "already been decided by the Circuit; deciding it again is not a matter of public importance.").

15

enforcement of the automatic stay against a foreign creditor would be deemed a matter of "public importance." The Bankruptcy Code explicitly contemplates that all claims against debtors – whether asserted by domestic or foreign creditors – will be resolved only by the bankruptcy court, and courts have repeatedly held that the automatic stay serves an important public purpose in requiring a single forum for the determination of claims against a debtor. See Nickless v. Kessler (In re Berman), 352 B.R. 533, 540 (Bankr. D. Mass. 2006) (the "automatic stay prevents different proceedings in different courts," thus avoiding a "'free-for-all'" against the debtor) (quoting In re Soares, 107 F.3d 969, 975 (1st Cir. 1997)); accord Underwood v. Hillard (In re Underwood), 98 F.3d 956, 961 (7th Cir. 1996) (holding that a violation of the automatic stay imperiled "the orderly administration of the bankruptcy proceeding, and by doing so it posed an indirect threat to the estate").[15] (See also Opinion at 15 ("What we have here are creditors who have filed claims in this Court and who are seeking to litigate those claims clear of the Court's jurisdiction and the automatic stay.").) Moreover, any creditor, domestic or foreign, that seeks to pursue a matter against the debtor outside of the bankruptcy court has a Bankruptcy Code remedy, where it can demonstrate cause for doing so: a motion for relief from the stay under Bankruptcy Code section 362(d). Tellingly, Movants failed to make such a motion here.

---

[15] Citing alleged "important principles of comity" as a basis for certification (Motion ¶ 11), Movants rely on Stonington Partners, Inc. v. Lernout & Hauspie Speech Prods. N.V., 310 F.3d 118 (3d Cir. 2002), and Compagnie des Bauxites de Guinea v. Insurance Company of North America, 651 F.2d 877 (3d Cir. 1981) to support their "public importance" argument. These cases are entirely inapposite. They involved anti-suit injunctions that had *nothing to do with the automatic stay.* In Stonington, the bankruptcy court enjoined a party from obtaining a determination of its claims in a parallel foreign insolvency proceeding, where there was a conflict between the foreign and U.S. law in how those claims would be determined, and the court found that the "center of gravity" of the claims was in the U.S. 310 F.3d at 122-25. In Compagnie, which is not even a bankruptcy case, the district court enjoined the defendant from pursuing proceedings in an English court that raised duplicative issues. 651 F.2d at 880. Here, by contrast, the Debtors are not seeking an anti-suit injunction; indeed, Movants have conceded that the U.K. Administrative Proceedings will continue without their participation, and that TPR is no less likely to issue an FSD if they do not participate. (See, e.g., Tr. 121:21-122:2 (Davies Cross).) Further, the U.K. Administrative Proceedings are plainly not parallel insolvency proceedings; rather, they are post-petition proceedings to assess and quantify the U.K. Pension Claim that has been asserted by Movants before this Court, which directly implicates the automatic stay.

### D. Immediate Appeal To The Third Circuit Will Not Materially Advance This Case

27. The third basis for certification, that an immediate direct appeal would materially advance the progress of the case, is plainly not present here. As an initial matter, the "case" that must be materially advanced by a direct appeal is the bankruptcy case itself, not some other proceeding. See, e.g., SemCrude, 407 B.R. at 111. Movants' wrong-headed argument that a direct appeal will materially advance the U.K. Administrative Proceedings is thus inapposite. (See Motion ¶ 13 (arguing that an expedited appeal may allow the parties to participate in the U.K. Administrative Proceedings).)[16] Moreover, as noted above, there is no evidence in the record to suggest that the U.K. Administrative Proceedings will move any faster if there is a direct appeal to the Third Circuit here. Indeed, Movants concede that under U.K. law, they are not required to participate in those proceedings, and that the U.K. Administrative Proceedings will go forward even in their absence. They further concede that an FSD is no less likely to issue against the target Debtors as a result of enforcement of the automatic stay against Movants. (See Tr. 121:21-122:2 (Davies Cross).)

28. In addition, this Court has already determined that the most efficient manner in which to resolve the U.K. Pension Claim is to allow the Debtors to first focus on the allocation process, which likely will involve issues that will directly overlap with those that would be raised in the U.K. Administrative Proceedings (Tr. 183:22-184:12; see also Opinion at 21-22), and then for the Court to determine the U.K. Pension Claim in the claims allowance process. (See Opinion at 21-22 (noting that Movants' were attempting to "'grab' at Debtors'

---

[16] Thus, Movants' reliance on SemCrude, 407 B.R. 82, is misplaced, as that court specifically held that prompt consideration of the appeal there would serve to advance the Chapter 11 bankruptcy proceedings, as the debtors had filed a plan of reorganization and intended to emerge from bankruptcy three months after the issuance of the order. Id. at 111. Moreover, as noted above, SemCrude is further distinguishable from the present case because there the court was addressing "purely legal questions." Id. at 95.

17

assets when there is already a procedure in place for the allocation of the multi-national Debtors' assets.").) The Court found that it "not easily but, certainly, capably, can decide [the U.K. Pension Claim] at the appropriate time." (Tr. 183:13-14; see also Opinion at 14.) A direct appeal will not materially advance either the allocation procedure or the claims allowance process, both of which will occur in due course.

29. On the issue of timing, Movants repeatedly assert in their papers that there is a June 30, 2010 "statutory deadline," and that this is a reason for this Court to grant certification and for any appeal to be expedited. (See Motion ¶¶ 3, 13.) The record, however, belies these assertions. The June 30, 2010 deadline is a date based solely on TPR's strategic, unilateral decision to select June 30, 2008 as the date on which it would measure whether NNUK was "insufficiently resourced" to pay its pension obligations under the U.K. Pensions Act.[17] If TPR were to choose a later date, the supposed "deadline" would necessarily be moved.

30. Not only are this June 30 "deadline" and the alleged exigencies involved here a strawman, but any timing issues relating to the U.K. Administrative Proceedings were entirely the making of TPR and the Movants. TPR waited over a year after the insolvency of the various Nortel entities to issue its warning notice, the first step in the U.K. Administrative Proceedings. For their part, Movants filed the U.K. Pension Claim on September 30, 2009,[18] but they have failed in the five months since to seek relief from the automatic stay. The timing here is a result of the actions and inactions of TPR and Movants, not the Debtors.

---

[17] See, e.g., Ham Dec. ¶ 35 ("[I]n the present case the Regulator has chosen to perform the 'insufficiently resourced' test as at 30 June 2008. Therefore the Determinations Panel must make any Determination to issue an FSD by 30 June 2010 at the latest.") (emphasis added); see also U.K. Pensions Act § 43(2) (Ham Dec. Ex. A).

[18] The U.K. Pension Claim specifically acknowledged that TPR had chosen June 30, 2008 as the relevant date. (See, e.g., U.K. Pension Claim against NNI, Ray Dec. Ex. A, ¶¶ 2.5-2.7.)

18

## REQUEST FOR ORAL ARGUMENT

31. Although Debtors acknowledge that the Court is free to decide the Motion on the papers pursuant to Bankruptcy Rule 8001(f)(3)(E), they respectfully request oral argument if it would be helpful to the Court.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

Dated: March 11, 2010
Wilmington, Delaware

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*