## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------X
                                                       :
In re                                                  :
                                                       :
Nortel Networks Inc., et al.,[1]                       :
                                                       :
                              Debtors.                 :
                                                       :
                                                       :
                                                       :
-------------------------------------------------------X
```

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: March 31, 2010 10:00 a.m. (ET)**
**Objections due: March 24, 2010 4:00 p.m.  (ET)**

## APPLICATION OF THE DEBTORS FOR AN ORDER AUTHORIZING CLEARY GOTTLIEB STEEN AND HAMILTON LLP'S EMPLOYMENT AND RETENTION OF CHILMARK PARTNERS, LLC *NUNC PRO TUNC* TO MARCH 4, 2010 AS CONSULTING EXPERT FOR COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Application") for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a),

327(a), 328(a), 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rules

2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and

Rules 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the Debtors'

counsel in the above-captioned chapter 11 cases, Cleary Gottlieb Steen & Hamilton LLP

("Cleary Gottlieb"), to employ and retain Chilmark Partners, LLP ("Chilmark") as consulting

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

expert to Cleary Gottlieb in connection with the Debtors' chapter 11 cases including, without limitation, with respect to (a) all processes and proceedings regarding the potential allocation of value of the proceeds from the sale of certain assets of Nortel Networks Corporation ("NNC"), the Debtors' ultimate corporate parent, and its debtor and non-debtor affiliates (collectively, the "Nortel Group") between NNI and other Nortel Group entities (the "Allocation Process"), and (b) any other contested matters, *nunc pro tunc* to March 4, 2010; (ii) approving the terms and conditions under which Chilmark will be retained and compensated; and (iii) granting them such other and further relief as the Court deems just and proper.  In support of this Application, the Debtors rely upon the Declaration of Matthew R. Rosenberg (the "Rosenberg Declaration"), attached hereto as Exhibit B.  In further support of this Application, the Debtors respectfully represent as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, as supplemented by Rules 2014 and 2016 of the Bankruptcy Rules and Rules 2014-1 of the of the Local Rules.

## Background

### A.      Procedural History

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2]      The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA was originally authorized to continue to operate as a going

concern for an initial period of three months, which period was subsequently extended to

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On February 26, 2010, the French Court extended the suspension of

liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter

from Kapsch CarrierCom AG stating that its bid for the GSM//GSM-R assets of NNSA has

become unconditional.  On June 26, 2009, this Court entered an order recognizing the English

Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under

chapter 15 of the Bankruptcy Code.[4]

---

[4]        Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and
Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.      Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

---

Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

C.      **Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has completed auction processes and obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065]; as well as the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business [D.I. 2632].

14.      On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15.      By this Application, the Debtors seek entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a), 327(a), 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rule 2014-1 (i) authorizing

Cleary Gottlieb to employ and retain Chilmark as consulting expert to Cleary Gottlieb in connection with the Debtors' chapter 11 cases including, without limitation, with respect to the Allocation Process and any other contested matters, *nunc pro tunc* to March 4, 2010; (ii) approving the terms and conditions under which Chilmark will be retained and compensated at the expense of the Debtors' estates, including certain limited indemnification rights, as contained in that certain letter agreement, dated as of March 4, 2010 (the "Engagement Agreement"); and (iii) granting them such other and further relief as the Court deems just and proper.  A copy of the Engagement Agreement is attached hereto as Exhibit C.

### Facts Relevant to this Application

**A.    Debtors' Retention of Cleary Gottlieb**

16.    Prior to the commencement of the Debtors' chapter 11 cases, Cleary Gottlieb has regularly provided representation and advice to Nortel, including the Debtors, their Canadian parents, and their affiliates, as long standing clients of Cleary Gottlieb.  On January 14, 2009, at the commencement of these proceedings, the Debtors applied for an order of this Court authorizing the employment and retention of Cleary Gottlieb as counsel to the Debtors in the above-captioned chapter 11 cases [D.I. 24].  On February 4, 2009, this Court entered the Order Authorizing the Retention and Employment of Cleary Gottlieb Steen & Hamilton LLP as Counsel for the Debtors *nunc pro tunc* to the Petition Date [D.I. 221].  Cleary Gottlieb has continued to represent the Debtors in all aspects of these chapter 11 proceedings since the Petition Date.

**B.    The Allocation Process**

17.    On June 29, 2009, this Court approved the Debtors entry into the Interim Funding and Settlement Agreement (the "IFSA") between the Debtors, the Canadian Debtors and the EMEA Debtors that provided for certain payments to be made to the Canadian Debtors' estates

7

in lieu of full and final settlement of certain transfer pricing obligations for the period from the

Petition Date through September 30, 2009 [D.I. 993].

18.     Pursuant to the terms of section 12(c) of the IFSA, the Debtors are engaged in

ongoing discussions with the Canadian Debtors, the EMEA Debtors, the Monitor, the Joint

Administrators, the Committee, and the Bondholder Group regarding the development of a

protocol to resolve the allocation of proceeds from the sale of certain assets of the Nortel Group

among the Nortel Group entities (the "Allocation Protocol").

19.     As set forth in section 12(c) of the IFSA, the Allocation Protocol, which is

currently being negotiated, will provide binding procedures for the allocation of sale proceeds

where the Selling Debtors (as defined in the IFSA) have been unable to reach agreement

regarding such allocation for a particular sale transaction.  In the absence of an agreement among

the parties, the allocation will be decided by means of an arbitration or other contested process.

## Basis for Relief

20.     In light of the challenging issues surrounding the Allocation Process, the Debtors'

counsel, Cleary Gottlieb, has determined that it will be necessary to engage a capable and

experienced consulting expert such as Chilmark, because Chilmark's resources and expertise are

crucial to the multi-jurisdictional allocation issues confronting the Debtors' success.  As

described more fully in the Engagement Agreement, Chilmark is being engaged by Cleary

Gottlieb in order to protect all available privileges in the context of the Allocation Process and

other contested matters as to which Chilmark is being retained.  In light of the payment and

indemnification terms set forth in the Engagement Agreement and as described further below,

the Debtors propose by this Application that Cleary Gottlieb retain and employ Chilmark as

consulting expert to Cleary Gottlieb in connection with its representation of the Debtors, and in

particular regarding the Allocation Process.

21.     Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable

powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

22.     Under section 327 of the Bankruptcy Code, a debtor-in-possession may employ

one or more professionals that do not hold or represent an interest adverse to the estate and that

are disinterested persons to assist the debtor-in-possession in carrying out its duties under the

Bankruptcy Code.  11 U.S.C. § 327(a).

23.     Section 328 of the Bankruptcy Code provides, in pertinent part, that under section

327 of the Bankruptcy Code, a professional may be employed "on any reasonable terms and

conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage fee

basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

24.     Bankruptcy Rule 2014 requires that an application for retention of a professional

person include:

> [S]pecific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the
> United States trustee, or any person employed in the office of the
> United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Rule 2014-1 further requires that "[a]ny entity seeking

approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . .  shall file with

the Court a motion, a supporting affidavit or verified statement of the professional person and a

proposed order for approval."  Del. Bankr. L.R. 2014-1(a).

25.     By this Application, the Debtors request that the Court approve Cleary Gottlieb's

proposed retention of Chilmark as a consulting expert to Cleary Gottlieb as set forth herein.  The

proposed retention of Chilmark is beneficial to the Debtors' estates and the professional

compensation arrangements provide certainty and proper inducement for Chilmark to act

expeditiously and prudently with respect to the matters for which it will be employed.

26.    The Debtors also request approval of the employment of Chilmark *nunc pro tunc*

to March 4, 2010.  Such relief is warranted by the extraordinary circumstances presented by

these cases.  The Third Circuit has identified "time pressure to begin service" and absence of

prejudice as factors favoring *nunc pro tunc* retention.  See In re Arkansas Co., 798 F.2d 645, 650

(3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal

dismissed, 909 F.2d 1476 (3d Cir. 1990).  The complexity and intense activity that have

characterized these cases have necessitated that the Debtors, Cleary Gottlieb, Chilmark and the

Debtors' other professionals focus their immediate attention on certain critical matters, such as

the Allocation Process, and promptly devote substantial resources to the affairs of the Debtors

pending submission and approval of this Application.

### Selection of Chilmark and Scope of Services

27.    Chilmark is well suited to provide the type of professional services required by

Cleary Gottlieb.  Chilmark specializes in financial advisory work in corporate restructurings and

distressed situations.  The firm is a recognized leader in the restructuring field because of its

innovative solutions to complex financial problems.  Chilmark has experience providing a broad

array of services to its clients, including investment banking, transaction execution, financial

analysis, valuation, plans of reorganization and claims analysis, litigation support and expert

testimony.  Chilmark's senior professionals have professional backgrounds in finance,

investment banking, law, executive and operations management, business consulting,

accounting, information technology and other management disciplines.

28.     Chilmark has extensive experience in both in-court and out-of-court restructurings as an advisor to debtors and creditors.  Significant restructurings in which Chilmark or its principals have participated include:  Chrysler Corporation; Idearc, Inc.; Precision Partners Holding Company; ION Media Networks; Seattle Times Company; Trinity Coal Corporation; JHT Holdings; CMP Susquehanna; Recycled Paper Greetings, Inc.; USG Corporation; Covanta Energy; Interstate Bakeries Corporation; Lodgian, Inc.; Sirva, Inc.; Wellman, Inc.; Fruit of the Loom, Inc.; Genesis Health Ventures/The Multicare Companies, Inc.; ContiGroup Companies, Inc.; and MobileMedia Communications, Inc.

29.     The Debtors and Cleary Gottlieb believe that the services of a capable and experienced consulting expert such as Chilmark are essential to Cleary Gottlieb as it navigates the complex and challenging issues posed to the Debtors by the Allocation Process.  Chilmark has extensive experience fashioning imaginative solutions to complex problems and has the resources available to advise Cleary Gottlieb in this matter.  The benefit of Chilmark's advice and expertise will permit Cleary Gottlieb to most effectively represent the Debtors in these chapter 11 proceedings.

30.     As a result, the Debtors and Cleary Gottlieb believe that Chilmark is both well-qualified and uniquely able to render the advice and expertise that Cleary Gottlieb seeks, in particular with regard to the Allocation Process.  The Debtors also believe that the services provided by Chilmark will not duplicate the services that other professionals provide to the Debtors in these cases.  Denial of the relief requested by the Debtors in this Application would deprive Cleary Gottlieb of the assistance of highly capable and experienced consultants to the detriment of the Debtors.

31.     Chilmark's services are critical to the Debtors' efforts relating to allocation. Pursuant to the Engagement Agreement[5] and subject to the control and further order of this Court, Chilmark will provide consulting expert services to Cleary Gottlieb in connection with these issues and in that role will provide such customary and appropriate consulting services as Cleary Gottlieb reasonably requests in connection with the Debtors' chapter 11 proceedings, including, without limitation, the Allocation Process and any other contested matters.

32.     As set forth in the Engagement Agreement, Chilmark shall at all times act at the direction of Cleary Gottlieb, and all services, advice and information, and reports provided by Chilmark to Cleary Gottlieb shall be for the sole benefit of Cleary Gottlieb, as counsel to the Debtors, and shall not be disclosed to or relied upon by any other person without the express authorization of Chilmark, except as required by law.

## Chilmark's Disinterestedness

33.     To the best of Debtors' knowledge, and except as set forth herein and as otherwise disclosed in the Rosenberg Declaration, annexed hereto as Exhibit B, Chilmark has not represented, and does not have any connection with, the Debtors, their creditors, equity security holders or any other parties in interest in any matters relating to the Debtors and their estates.

34.     As disclosed in the Rosenberg Declaration, Chilmark currently represents certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these proceedings.  Chilmark has informed the Debtors of its ongoing representation of such entities, and the Debtors have consented to Chilmark's continued representation of these entities in matters unrelated to these proceedings.  The Debtors believe that Chilmark's current and future

---

[5]     The summary of the Engagement Agreement in this Application is solely for the benefit of the Court and parties-in-interest.  To the extent that the summary and terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.  Capitalized terms used but not defined in this Application shall have the meanings ascribed to them in the Engagement Agreement.

representation of these entities will not in any way adversely affect its consultation of Cleary Gottlieb.

35.      As further disclosed in the Rosenberg Declaration, Chilmark formerly represented certain of the Debtors' creditors and other parties in interest in matters wholly unrelated to these proceedings.  Chilmark has informed the Debtors of its past representation of such entities.  The Debtors believe that Chilmark's past representation of these entities will not in any way adversely affects its consultation of Cleary Gottlieb.

36.      To the best of the Debtors' knowledge and as disclosed in the Rosenberg Declaration, Chilmark does not hold or represent any interest adverse to the Debtors or their estates, Chilmark is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Chilmark's employment and retention by Cleary Gottlieb is necessary and in the best interests of the Debtors and their estates.

37.      Chilmark will periodically review its files during the pendency of this retention to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Chilmark will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration if needed, as required by Bankruptcy Rule 2014(a).

## Professional Compensation

38.      The Debtors understand that Chilmark intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of the Court and consistent with the proposed compensation set forth in the Engagement Agreement (the "Fee Structure").

Subject to such provisions and Court orders, the Fee Structure provides that compensation will

be payable to Chilmark on the following basis:

a.  A monthly advisory fee in the amount of $250,000 per month (the "Monthly Fee"), such Monthly Fee to be payable upon signing and on each monthly anniversary of the Effective Date of the Engagement Agreement;

b.  Upon the earlier to occur of (i) confirmation of a plan of reorganization for NNI or (ii) settlement or resolution of the Allocation Process, an additional fee of $2,000,000 (the "Completion Fee").  Seventy-Five percent of the Monthly Fees paid to Chilmark pursuant to (a) above shall be credited against the Completion Fee, provided that such credits shall not reduce the Completion Fee below zero; and

c.  Reimbursement of all reasonable expenses incurred during this engagement, including but not limited to photocopying charges, national and international telephone calls, facsimile transmissions, messenger and delivery services, courier mail, online and external research services, word processing, secretarial and temporary employees, overtime meals, overtime and late night transportation, travel, lodging, food charges for business meetings, postage, printing, and legal counsel for the preparation of fee applications and other related matters.

39.    Notwithstanding anything to the contrary in the Engagement Agreement, all

payments to Chilmark, whether for the Monthly Fee, Completion Fee, or reimbursement of

expenses, shall be paid by NNI, which shall be exclusively responsible for all financial

obligations related to the Engagement Agreement, subject to the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules or applicable orders of the Bankruptcy

Court.  Pursuant to the Engagement Agreement, it is specifically agreed that Cleary Gottlieb

shall have no responsibility for such financial obligations and is exonerated from any liability

therefore.

40.    The Debtors and Cleary Gottlieb believe that the ultimate benefit of Chilmark's

services hereunder cannot be measured in reference to the number of hours to be expended by

Chilmark's professionals in the performance of such services.  Nonetheless, the Debtors and

Cleary Gottlieb believe that the fees payable pursuant to the Engagement Agreement are

reasonable and are a customary and market based compensation structure under the standards set

forth in section 328(a) of the Bankruptcy Code, both in light of the services to be performed and

the fact that the hours worked, the results achieved and the ultimate benefit to Cleary Gottlieb on

behalf of the Debtors of the work performed may be highly variable.

   41. Chilmark will maintain records in support of any actual, necessary costs and

expenses incurred in connection with the rendering of its services to Cleary Gottlieb in

connection with these chapter 11 proceedings, including reasonably detailed descriptions of

those services and the individuals who provided those services, and will present such records to

the Court.

   42. Pursuant to the Engagement Agreement, the Debtors will indemnify and

reimburse Chilmark and certain related persons and entities in accordance with the

indemnification provisions set forth in the Engagement Agreement.

   43. The indemnification and reimbursement provisions reflected in the Engagement

Agreement are customary and reasonable terms of compensation for consultants such as

Chilmark for proceedings both out-of-court and in chapter 11.  The terms of the Engagement

Agreement, including the indemnification provisions, were fully negotiated between Cleary

Gottlieb and Chilmark at arm's-length and consented to by NNI, and the Debtors respectfully

submit that the Engagement Agreement, including the indemnification contained therein, is

reasonable and in the best interests of the Debtors, their estates and their creditors.

   44. Accordingly, as part of this Application, the Debtors request that the Court

approve the indemnification granted under the Engagement Agreement, subject during the

pendency of these cases to the modifications in the proposed order attached hereto as Exhibit A

and as set forth below:

a.  Subject to the provisions of subparagraph (c) beneath, the Debtors are authorized to indemnify, and to provide reimbursement to, and shall indemnify, and provide reimbursement to, Chilmark and its present and former partners, principals and employees in accordance with the terms of the Engagement Agreement for any claim arising from, related to, or in connection with the services provided for in the Engagement Agreement, but not for any claim arising from, related to, or in connection with Chilmark's postpetition performance of any other services unless such postpetition services and indemnification therefore are approved by the Court.

b.  Notwithstanding any indemnification provisions of the Engagement Agreement to the contrary, the Debtors shall have no obligation to indemnify Chilmark or provide reimbursement to Chilmark (i) for any claim or expense that is judicially determined (the determination having become final) to have arisen from Chilmark's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct, (ii) for a contractual dispute in which the Debtors allege the breach of Chilmark's contractual obligations unless the Court determines that indemnification or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003), or (iii) for any claim or expense that is settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing pursuant to subparagraph (c), beneath, to be a claim or expense for which Chilmark should not receive indemnity or reimbursement under the terms of the Engagement Agreement, as modified by this Order.

c.  If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become final and no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, Chilmark believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, Chilmark must file an application therefore in this Court, and the Debtors may not pay any such amounts to Chilmark before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time during which the Court shall have jurisdiction over any request for compensation and expenses by Chilmark for indemnification or reimbursement and is not a provision limiting the duration of the Debtors' obligation to indemnify Chilmark.

45.     To the best of Chilmark's information and belief, the Debtors did not make any payments to Chilmark during the 90-day period prior to the Petition Date, and Chilmark is not a prepetition creditor of the Debtors.

46.     No promises have been received by either Chilmark or any partner, principal or other employee thereof as to compensation or payment in connection with this retention other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and orders of this Court.  Chilmark has no agreement with any other person or entity to share with such entity any compensation received by Chilmark in connection with this retention.

47.     Notice of the Application has been given via first class mail and hand delivery to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

48.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully requests that this Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  March 12, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*