IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
: **Hearing date: March 31, 2010 at 10:00 a.m. (ET)**
: **Objections due: March 24, 2010 at 4:00 p.m. (ET)**
:
------------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO FILE UNDER SEAL (I) THE INTERIM AGREEMENT AND (II) THE STATEMENT OF WORK, ATTACHED AS EXHIBITS TO THE DEBTORS' SUPPLEMENTAL APPLICATION FOR AN ORDER AUTHORIZING EMPLOYMENT OF GLOBAL IP LAW GROUP, LLC *NUNC PRO TUNC* TO JANUARY 15, 2010 AS INTELLECTUAL PROPERTY CONSULTANT AND LEGAL ADVISORS TO THE DEBTORS AND DEBTORS IN POSSESSION

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9018-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing the Debtors to file under seal: (i) a the Proposal for

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Nortel Representation on a Time and Materials Basis Dated as of January 15, 2010 (the "Interim Agreement); and (ii) the Statement of Work for Nortel Patent Analysis and Monetization dated as of March 12, 2010 (the "SOW"); both agreements exhibits to the *Debtors' Supplemental Application for an Order Authorizing Employment and Retention of Global IP Law Group, LLC Nunc Pro Tunc to January 15, 2010 as Intellectual Property Consultant and Legal Advisors to the Debtors and Debtors in Possession* (the "Supplemental Application").[2]  In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 107(b) of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9018 and Local Rule 9018-1.

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

---

[2]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Supplemental Application.

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On February 26, 2010, the French Court extended the suspension of liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter from Kapsch CarrierCom AG stating that its bid for the GSM//GSM-R assets of NNSA has become unconditional. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[5]

9.     On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the

---

[5] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

"Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.    Debtors' Corporate Structure and Business**

11. Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.    Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the

sale of substantially all of its CDMA business and LTE Access assets business to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; and (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514].  In addition, Nortel has obtained Court approval for the planned sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit [D.I. 2070]; the planned sale of substantially all of its GSM/GSM-R business [D.I. 2065]; as well as the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business [D.I. 2632].

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15. By this Motion, the Debtors seek an order pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and Local Rule 9018-1 authorizing the Debtors to file the Interim Agreement and SOW under seal, in order to protect confidential commercial information contained in those documents.  The Committee and the Bondholder Group have consented to the relief requested herein.

**Facts Relevant to this Motion**

A.    **Initial Retention of Global IP**

16.    On October 30, 2009, the Debtors filed the Application for an Order Authorizing Employment and Retention of Global IP Law Group, LLC *Nunc Pro Tunc* to October 13, 2009 as Intellectual Property Consultant to the Debtors and Debtors in Possession (the "Initial Application") [D.I. 1796].

17.    On November 20, 2009, the Court entered the Retention Order, authorizing Global IP to perform a preliminary market analysis of the Nortel Residual Patent Portfolio and to make certain recommendations on monetization strategies.

18.    The Agreement outlined in the Initial Application contemplated three potential phases of services with regard to the Residual Patent Portfolio. The first phase involved asset identification, ownership due diligence, and creation of a claims database, as well as performing a preliminary market analysis and identifying the key segments of the Residual Patent Portfolio Assets ("Phase 1"). The second phase was to involve developing business cases for each key segment of the Residual Patent Portfolio ("Phase 2"). The third phase was to involve a valuation analysis of the top segments of the Residual Patent Portfolio, development of strategic alternatives for exploiting the Residual Patent Portfolio, and recommendation of a strategy to maximize the value of the entire Nortel Patent Portfolio and IP business ("Phase 3"). The Retention Order authorized Global IP's retention for Phase 1 only, on the understanding that the Debtors would propose retention for Phase 2 and Phase 3 at an appropriate later date.

19. By the end of 2009, Global IP had completed the services included in Phase 1, and shortly thereafter Global IP commenced discussions with the Debtors regarding the proper scope and timing of the services to be offered in Phase 2 and Phase 3.

20. On or about January 15, 2010, Nortel agreed to the terms of the Interim Agreement, which permitted Global IP to render legal and consulting services to Nortel on an hourly basis until the SOW took effect on February 1, 2010. Among other things, during that period Global IP advised and counseled Nortel on how best to prepare for Phase 2 and Phase 3.

21. Phase 2 and Phase 3, the primary retention requested by the Supplemental Application, will include, in consultation with the IP Working Group, providing the Debtors with advice and counsel during the monetization process, the details of which are referenced in the Interim Agreement and the SOW.

**B.     The Retention Agreements**

22. By this Motion, the Debtors assert that the Interim Agreement and the SOW contain sensitive commercial information concerning the specifics of the Debtors' strategy for monetizing its intellectual property assets, and respectfully request that they be filed under seal.

**Basis for Relief**

23. The relief requested by the Debtors is squarely authorized under the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders to protect a party's confidential, commercial or proprietary information:

> On request of a party in interest, the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).

24.     Furthermore, Bankruptcy Rule 9018 defines the procedure by which a party may move for relief under section 107(b) of the Bankruptcy Code:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires . . . to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information . . . .

Fed. R. Bankr. P. 9018.  Local Rule 9018-1 requires any party who seeks to file documents under seal to file a motion to that effect.  Del. Bankr. L.R. 9018-1(b).  A movant is not required to demonstrate "good cause" to file under seal.  Rather, if the material sought to be filed under seal falls within one of the categories identified in section 107(b) of the Bankruptcy Code, "the court is required to protect a requesting party and has no discretion to deny the application."  In re Orion Pictures Corp., 21 F.3d 24, 27 (2d Cir. 1994)

25.     This Court has previously described "commercial information" as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'"  In re Alterra Healthcare Corp., 353 B.R. 66, 75 (Bankr. D. Del. 2006) (citing In re Orion Pictures Corp., 21 F.3d at 27-28).  Courts have recognized that filing commercial information under seal is appropriate when its disclosure would reduce the value of the estate by having a "serious and detrimental impact on the prices for which . . . assets could be sold."  In re Farmland Industries, 290 B.R. 364, 369 (Bankr. W.D. Mo. 2003); see also In re Global Crossing Ltd., 295 B.R. 720, 725 (Bankr. S.D.N.Y. 2003) (holding that section 107(b) of the Bankruptcy Code "squarely includes information that could prejudice either [the estate or its creditors] as part of a sale process").

26.     As described above, the Interim Agreement and the SOW Material contain specific and sensitive information regarding the Debtors' strategy and timing for monetizing the

9

Residual Patent Portfolio, confidential information that qualifies for protection under Section 107(b)(1) of the Bankruptcy Code. Public disclosure of this information could compromise the Debtors' ability to solicit interest from potential purchasers or licensors of the assets in the Residual Patent Portfolio, and could erode the Debtors' bargaining power in the course of negotiations with such parties, thereby compromising the Debtors' ability to achieve maximum value for the assets in the Residual Patent Portfolio, to the detriment of the Debtors' estates and creditors.

27. The Debtors will provide the Creditors Committee and the Bondholders Group with copies of the Interim Agreement and the SOW, since appropriate confidentiality arrangements are in force among the Debtors and such parties. The Debtors submit that this limited access to the Interim Agreement and the SOW properly balances the respective interests of the estates and all parties in interest.

28. In view of the foregoing, the Debtors submit it is appropriate for this Court to authorize the Debtors to file the Interim Agreement and the SOW under seal.

## Notice

29. Notice of the Motion has been given via hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

30. No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated:  March 16, 2010<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone:  (212) 225-2000<br>Facsimile:  (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |

3451816