**EXHIBIT B**



March 3, 2010

Mr. James P. Donley
Vice President Transitional Services
Ciena Corporation
1201 Winterson Road
Linthicum, MD  21090

Audit • Tax • Advisory

**Grant Thornton LLP**
201 S. College St., Suite 2500
Charlotte, NC 28244

T 704.632.3500
F 704.334.7701
www.GrantThornton.com

Mr. Randy Solski
Information & Technology M&A
Nortel Networks Limited
195 The West Mall
Toronto, Ontario  M9C 5K1

Mr. John Doolittle
Director and President
Nortel Networks Inc.
195 The West Mall
Toronto, Ontario M9C 5K1

The Joint Administrators
Nortel Networks UK Limited (in administration)
C/O
1 More London Place
London, SE1 2AF
United Kingdom

The Joint Administrators
Nortel Networks (Ireland) Limited (in administration)
C/O Ernst & Young LLP
1 More London Place
London, SE1 2AF
United Kingdom

*Re: Appointment of Neutral Arbitrator pursuant to the Asset Sale Agreement By and  Among Nortel Networks Inc., Nortel Networks Limited, and Affiliates and Ciena Corporation and Affiliates*

Dear Mr. Donley & Mr. Solski:

This letter and Attachment A (collectively, the "Agreement"), documents the understanding between and among Nortel Networks Inc. ("NNI"), Nortel Networks Limited ("NNL"), and Nortel Networks U.K. Limited (in administration) ("NNUK" ) and Nortel Networks (Ireland) Limited (in administration) ("NN Ireland") (for which both NNUK and NN Ireland are acting by their Joint Administrators (defined below), who act as agents of NNUK and NN Ireland only and without personal liability whatsoever (NNI, NNL, NNUK and NN Ireland together,

"Nortel"), the Joint Administrators and Ciena Corporation and Affiliates "Ciena"; (collectively the "Parties", or "you"), and Grant Thornton LLP ("Grant Thornton LLP", "we" or "us") for certain arbitration services and related accounting consultation services, reports and other deliverables defined below (the "Services"). The Services relate to the appointment nunc pro tunc to February 26, 2010, of Mr. Erik C. Lioy of Grant Thornton LLP as an arbitrator with respect to such future disputes arising from that certain Asset Sale Agreement referenced below as you may submit to us pursuant to such agreement.

All defined terms shall have the meanings ascribed to them in this letter and in Attachment A.

**Bankruptcy Court Approval**

On January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates (collectively, the "Debtors") filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On the Petition Date NNL and certain of its affiliates filed with the Ontario Superior Court of Justice (the "Canadian Court") an application for protection under the Companies' Creditors Arrangement Act (the "Canadian Insolvency Proceedings") and were granted certain initial credit protection pursuant to an order issued by the Canadian Court on the same date, which order also appointed Ernst & Young Inc. as monitor in connection with the Canadian Insolvency Proceedings. Also on the Petition Date, NNUK, NN Ireland and certain of Nortel's European affiliates filed applications with the English High Court pursuant to the Insolvency Act 1986 and the European Union's Council Regulation number 1346/2000 of 29 May 2000 on Insolvency Proceedings, and the English High Court appointed (in the case of NNUK) Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF and (in the case of NN Ireland) David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland and Alan Robert Bloom, to serve as joint administrators of NNUK and NN Ireland (as appropriate), who act as agents of the NNUK and NN Ireland only and without any personal liability whatsoever (the "Joint Administrators"). This Agreement, and Grant Thornton LLP's obligations and responsibilities relating to this Agreement are expressly subject to and conditioned upon approval by the Bankruptcy Court and the Canadian Court of the Agreement in its entirety. In the event that the Bankruptcy Court and the Canadian Court approve the Agreement but delete or hold unenforceable certain provisions thereof, Grant Thornton LLP in its sole discretion may accept the Agreement as modified, or may terminate the Agreement as set forth above, all without prejudice to its other rights and remedies. In the event that Grant Thornton LLP elects to terminate this engagement, then, promptly upon Grant Thornton LLP's request, the parties hereby agree to withdraw or amend any motion filed with such courts seeking approval of the terms of the Agreement.

**Grant Thornton**

## Scope of Services

We understand that pursuant to the Asset Sale Agreement by and among Nortel Networks Inc., Nortel Networks Limited, Nortel Networks Corporation and Affiliates and Ciena Corporation and Affiliates (the "ASA"), the Parties have agreed to name Mr. Lioy of Grant Thornton LLP, an accounting and business advisory firm, including information technology services, to serve as the neutral arbitrator described in the ASA, and specifically Section 5.28 of the Sellers' Disclosure Schedule to the ASA entitled "Covenants in respect of Transition Services," for the purpose of resolving certain disputes between the Parties, including, without limitation, with respect to issues involving whether the "TSA Sellers" are "First Day Ready" as further defined and described in, and subject to, the terms of the ASA.

As required by the ASA, Mr. Lioy and Grant Thornton LLP are both impartial and independent of the "Purchaser" and the TSA Sellers. In accepting the appointment as neutral arbitrator, Grant Thornton LLP believe that it has the necessary experience in implementing transition services arrangements ancillary to M&A transactions, and that involve sophisticated enterprise resource planning systems that are similar in scope and complexity to the systems at issue. Mr. Lioy and Grant Thornton LLP will maintain neutrality in the context of any dispute. Depending on the nature of any dispute submitted to Mr. Lioy, he may consult with other Grant Thornton LLP partners, principals or employees with applicable subject matter expertise.

As further defined and described in, and subject to, the terms of the ASA, Mr. Lioy, as neutral arbitrator, will, among other things:

a) Familiarize himself with the "Critical Systems," the "Testing Protocols," and such other information as he deems relevant to making a determination as to whether "First Day Ready" has been achieved;

b) In case of a dispute concerning "First Day Ready":

    (i) Meet together with representatives of the TSA Sellers and Purchaser to review the "Deficiency List" and any operating data or other information which either Party wishes to present for consideration or which Mr. Lioy deems pertinent to his determination of whether the TSA Sellers are First Day Ready;

    (ii) Discuss with the Parties the "Testing Protocols" as may be requested to enable understanding of the pertinent features thereof;

    (iii) If he deems it necessary, supervise a "Test," during which he and the Purchaser may be "on-site" if so requested by either;

    (iv) Review the results together with the Parties, make a written determination concerning First Day Ready, and prepare a written report, including an explanation, with respect to his findings;

**Grant Thornton**

    c)   In the case of other disputes, meet jointly with both the applicable TSA Sellers and Purchaser and review all information provided by the Parties as well as other information he believes is relevant to his determination.

    d)   Make such other inquires or require that either Party provide any information, data or test results which exist and are in a Party's or its agents' possession as he deems necessary to make his determinations.

The Parties understand that the decision of the arbitrator regarding the matters submitted to him by the Parties shall be final and binding on the Parties as per the terms of this Agreement upon delivery of his written opinion. His report, including summaries, schedules and working papers of any kind generated in connection with the Services, shall not be used or disseminated for any other purpose without our prior written consent except as may be required by law or legal process or in connection with litigation arising hereunder.

The Parties understand and acknowledge that Grant Thornton LLP is not a party to the ASA, and nothing contained herein will change that. You understand and agree that Mr. Lioy's interpretation and application of terms of the ASA will be based on his judgment and on his expertise as an accountant and business advisor. In reaching his decision, Mr. Lioy will review all information the Parties wish to present to him for consideration, and any other information he deems relevant. He will not consider or evaluate any legal precedent, case law, statutes or other administrative regulations in reaching his decision. He will report his findings, including an explanation, in a written report. If he determines, in his professional judgment, that there are insufficient facts available to reach a conclusion he will so advise you and provide a reasonable opportunity for the Parties to provide such information. Regardless of whether such information is forthcoming, the Parties agree that after the opportunity to submit such information has passed, Mr. Lioy will make his decision on the basis of the information that is available to him in accordance with Clause 5.28(m)(ii) of the Disclosure Schedule to the ASA.

Our Services will be undertaken in accordance with the Statement on Standards for Consulting Services promulgated by the American Institute of Certified Public Accountants. Accordingly, the Services do not constitute a rendering by Grant Thornton LLP or its partners or staff of any legal advice, nor do they include the compilation, review or audit of financial statements. Because our Services are limited in nature and scope, they cannot be relied upon to discover all documents and other information or provide all analyses that may be of importance in this matter. Neither Party involved in the Agreement, nor any parent, subsidiary or party related to them, will hold us responsible for any loss or liability which may result from the non-discovery of any matters which might have an influence on this matter.

As set forth in the declaration of Erik C. Lioy in support of NNI's motion seeking Bankruptcy Court Approval of the terms of the Agreement, we have undertaken a relationship check on the names the Debtors supplied to us. We have not undertaken any process to identify any other relationships we might have with the Parties. No relationship has come to our attention which, in our view, constitutes a conflict of interest or which would inhibit our ability to objectively provide assistance in this matter.

# Grant Thornton

The Parties acknowledge and agree that (1) they are aware that Grant Thornton LLP may have provided, is currently providing, and/or may in the future provide professional services to the Parties or their counsels in matters wholly unrelated to the scope of this Agreement, (2) they are aware that any counsel engaged by either of the Parties in connection with this matter, or in the ordinary course of their business, may have in the past, or currently, or may in the future, represent or oppose Grant Thornton LLP and/or its affiliates and/or its personnel in matters unrelated to this engagement, or may have engaged Grant Thornton LLP to provide services. As previously disclosed to the Parties, professionals from Grant Thornton LLP's Mid-Atlantic Practice have previously and are currently providing advisory services to Ciena Corporation in matters wholly unrelated to the scope of this Agreement.

Partners, principals and employees of Grant Thornton LLP who have provided services to either of the Parties since January 1, 2005, (the "Designated Professionals") will not be assigned to assist Mr. Lioy in any dispute submitted pursuant to this agreement. Further, Mr. Lioy will not communicate the status of any dispute he is arbitrating to the Designated Professionals.

The Parties agree that the relationships discussed above and any relationships disclosed in the Declaration do not adversely affect our impartiality and that the procedures for separating the Designated Professionals from the team(s) supporting Mr. Lioy are adequate. If a dispute submitted to us involves a new party, we will conduct an additional relationship search when such dispute is submitted, evaluate the results and communicate to you our findings. We reserve the right to resign from this engagement once ninety (90) days have elapsed from the date of this Agreement (and at any time thereafter) if, in our sole determination, any conflicts or other situations arise or become known to us from existing matters that, in our judgment, would impair our objectivity or our ability to continue to perform or provide the Services.

Grant Thornton LLP shall be obligated only for the Services described in this Agreement and only for changes in such scope that are set forth in writing and duly executed by the Parties hereto. Further, Grant Thornton LLP's obligation shall not extend to any subsequent periods for which we are not engaged. We are under no obligation to update our work, respond to questions or requests for clarification, or to other queries regarding our report or findings.

In addition to any confidentiality arrangement that may be agreed as part of the arbitration or as may be required by the ASA, Grant Thornton LLP agrees that all communications between Grant Thornton LLP's personnel on this engagement and the Parties, as well as any materials or information developed or received by us pursuant to this Agreement (collectively, the "confidential information") will be treated by Grant Thornton LLP as confidential as to any party (a "third party") other than the Parties and will not be used by Grant Thornton LLP except in the performance of its duties hereunder. At any time, upon request of any Party, we shall return to that Party information provided to us by such Party, on any media, provided that Grant Thornton LLP may retain copies of confidential information that, in its judgment, it is required to retain in accordance with applicable professional standards, laws and regulations. Accordingly, we agree, except as required by applicable law, regulation, or court or governmental order or process, not to disclose confidential information. If access to any of the materials in our possession relating to this Agreement is sought by a third party, we will promptly notify you of such action, tender to you our defense in connection with the response

to such a request and cooperate with you concerning the response thereto. Upon signing, this Agreement supersedes the Nondisclosure Agreement between the Parties and Grant Thornton LLP dated January 11, 2010.

## Exculpation

Based on the nature of the arbitration and other professional services outlined in the Agreement, and concerns Grant Thornton LLP has in having final and binding decision-making authority, the Parties agree to exculpate Grant Thornton LLP from actions or omissions taken or to be taken pursuant to this engagement, other than with respect to actions arising from their gross negligence, willful misconduct, or fraud, which exculpation shall be specifically approved by any court order approving the terms of this Agreement. Such exculpation of Grant Thornton LLP is in addition to the other protections afforded Grant Thornton LLP in this Agreement and Attachment A.

## Fees

The hourly rates charged by Grant Thornton LLP for the Services provided by its personnel differ based upon, among other things, each professional's level of experience, and types of Services being provided. In the ordinary course of business, Grant Thornton LLP periodically revises its hourly rates to reflect promotions and other changes in personnel responsibilities, increases in experience, and increases in the cost of doing business. The next rate change is expected to occur on or about March 2011. Changes in regular hourly rates will be noted on the invoices for the first time period in which the revised rates become effective.

In exchange for the Services summarized previously and in consideration of Grant Thornton LLP's undertaking to remain on stand-by for this critical period and to dedicate full time and attention to resolution of the arbitration issues, Grant Thornton LLP will be entitled to (a) a fee of $100,000.00 and (b) compensation at its standard hourly rates for professional services rendered from and after February 26, 2010. The professional fees shall be calculated by multiplying the actual hours expended providing the agreed-upon Services by the standard hourly billing rates for the specific personnel involved. At present, Grant Thornton LLP's applicable hourly rates by classification are as follows:

| | |
|---|---|
| Partners (including Erik C. Lioy) | $525 |
| Managers/Senior Managers | $350-475 |
| Associates/Senior Associates | $175-325 |
| Paraprofessionals | $100 |

If the assignment has not concluded 90 days after signing of the Agreement, Grant Thornton LLP shall be entitled to submit an invoice for $100,000.00, with payment of that bill to be made promptly and in any event within five (5) business days by the Parties in accordance with their allocated responsibility for such fee. In addition to professional fees, Grant Thornton LLP will be entitled to reimbursement of reasonable expenses incurred in connection with this engagement, including but not limited to travel, report production, delivery services, photocopying and other costs incurred in providing the Services.

**GrantThornton**

The $100,000 fee shall be allocated equally between Nortel and Ciena. Nortel's $50,000 share of that fee will be further allocated in equal one third shares between NNL, NNI and, together, NNUK and NN (Ireland). The allocation of Grant Thornton LLP's compensation at its standard hourly rates for professional services rendered and reimbursement of reasonable expenses, as set forth above, as between the Sellers on the one hand and the Purchaser on the other shall be in accordance with section 5.28(l)(vii) of the Disclosure Schedule to the ASA. To the extent such costs and fees are allocated among the Parties, each Party is responsible to pay its corresponding share of the fees, without any joint liability for the fees due from the other Party. In the event Nortel is liable for the fees, NNL, NNI and, together, NNUK and NN (Ireland) will each be responsible for one third of Nortel's share. Except as set forth above, Grant Thornton LLP shall present one final bill at the conclusion of the project with payment of that bill to be made promptly and in any event within five (5) business days.

NNL, NNI, and NNUK and NN (Ireland) also reserve their right to seek contribution or further allocation of these fees and expenses amongst themselves and their affiliates as set forth in the Metro Ethernet Networks Side Agreement (the "Side Agreement") that was filed with the Bankruptcy Court on February 26, 2010 as Exhibit B to the Debtors' Motion Pursuant to 11 U.S.C. 105(a) and 363(b) for an Order Approving the Metro Ethernet Networks Side Agreement and Granting Related Relief, and with the Canadian court on March 2, 2010 as Tab A to the Metro Ethernet Networks Motion Records or through other separate agreements as may be applicable. Further allocation or contribution of Nortel's share of such fees and expenses amongst NNL, NNI, NNUK and NN Ireland and their affiliates as set forth in the Side Agreement will in no way impact the Parties' responsibility to timely satisfy Grant Thornton's final bill at the conclusion of the project pursuant to the terms set forth in the proceeding paragraph.

Payment of our fees is not contingent on the outcome of this matter. Because of the nature of this type of engagement, we may invest a considerable amount of time before generating a report or other deliverable. We may stop work should you jointly request or settle. In the event we stop work, you agree to pay our fees and expenses for all Services performed through the date work is stopped, whether or not we have produced any deliverables.

**Limitation of Liability and Indemnification**

With respect to the Services, the liability of Grant Thornton LLP and its present and former partners, principals and employees and including, specifically, Erik C. Lioy for any claim by anyone, save and except for awards based on gross negligence, willful misconduct and fraud, shall not exceed the fees it receives hereunder for the portion of the work giving rise to such liability, nor shall Grant Thornton LLP and its present and former partners, principals and employees, including, specifically, Erik C. Lioy, be liable for any special, consequential, incidental or exemplary damages or loss (or any lost profits, taxes, interest, tax penalties, savings or business opportunity). In addition, we will have no liability to the Parties, or any third party by reason of any action taken or omitted by us in good faith relating to our Services.

The Parties shall (severally and not jointly) indemnify, hold harmless, and defend Grant Thornton LLP and its affiliates and its present and former partners, principals and employees and including, specifically, Erik C. Lioy (collectively, the "Indemnitees") from and against all

# Grant Thornton

claims, liabilities, losses, demands, fees, expenses, damages and costs (including defense costs) associated with any third-party claim arising from or relating to (i) misrepresentations by the Parties or (ii) false or incomplete information provided to Grant Thornton LLP in the performance of its Services, provided that the parties to this Agreement shall agree that the Parties' aggregate liability under the Indemnities shall be capped at $60,000,000. The Parties shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel and the costs of Grant Thornton LLP's professional time (Grant Thornton LLP's professional time will be reimbursed at Grant Thornton LLP's rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an Indemnitee may be required or agree to participate but in which it is not a party. The Indemnitees may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates. The terms of this paragraph and the preceding paragraph shall apply regardless of the nature of any claim asserted (including but not limited to contract, statute, tort, strict liability or any form of negligence, whether of Parties, Grant Thornton LLP, or others, except for Grant Thornton LLP's gross negligence, willful misconduct, or fraud) and whether or not Grant Thornton LLP was advised of the possibility of the damage or loss asserted, but such terms shall not apply to the extent finally determined to be contrary to any applicable law. Such terms shall also continue to apply after any termination of this Agreement and during any dispute between the Parties.

For the avoidance of doubt, (but without prejudice to the other terms of this Agreement) the Parties hereby agree that the terms of this section do not, in and of themselves, provide that Grant Thornton LLP is under any obligation to indemnify, nor become liable or responsible for, any actions, proceedings, claims, demands, costs, expenses, damages, compensation, fines, penalties or other liabilities against the Joint Administrators or the directors of Nortel.

Notwithstanding that this Agreement shall have been signed by the Joint Administrators in their capacities as joint administrators of NNUK and NN Ireland for and on behalf of NNUK and NN Ireland respectively (as appropriate) and also in their personal capacities, the parties to this Agreement expressly agree and declare that no personal liability under or in connection with this Agreement shall fall on the Joint Administrators or their respective firm, partners, employees, agents, advisers or representatives whether such personal liability would arise under paragraph 99(4) of schedule B1 to the Insolvency Act 1986 or otherwise.

The Joint Administrators are party to this Agreement in their personal capacities only for the purpose of receiving the benefit of this section (Limitation of Liability and Indemnification) and the exclusions, limitations, undertakings, covenants and indemnities in their favour contained in this section. Each party to this Agreement acknowledges and agrees that in the negotiation and the completion of this Agreement the Joint Administrators are acting only as agents for and on behalf of NNUK, and NN Ireland (as appropriate), and without any personal liability whatsoever.

Each party to this Agreement further acknowledges that it has entered into this Agreement without reliance on any warranties or representations made by the Joint Administrators or their firms, partners, employees, agents, advisors or representatives and (save in respect of fraud, fraudulent misrepresentation or fraudulent misstatement) it shall not have any remedy in

**Grant Thornton**

respect of any misrepresentation or untrue statement by such persons made by or on behalf of any other party to this Agreement.

The parties to this Agreement expressly agree and declare that no personal liability under or in connection with this Agreement shall fall on any Nortel directors at the date hereof and from time to time howsoever such personal liability should arise.

**Timetable and Protocol**

Once notified of a dispute and after reading and considering the initial information to be provided by the Parties and correspondence between the Parties regarding the areas of dispute, Grant Thornton LLP will propose a timetable and protocol for the submission of information. Grant Thornton LLP will use commercially reasonable effort to complete its services and render its report within the seven (7) day period set forth in the ASA; however, Grant Thornton LLP cannot provide absolute assurance that it will be able to meet that deadline.

All information in connection with any dispute submitted for arbitration shall be forwarded to the arbitrator by overnight courier or e-mail at the following address:

Mr. Erik C. Lioy
Grant Thornton LLP
201 South College Street, Suite 2500
Charlotte, NC 28244
Erik.Lioy@gt.com

Information sent from Mr. James P. Donley will be forwarded by overnight courier or e-mailed to:

Mr. Randy Solski
Information & Technology M&A
Nortel Networks Limited
195 The West Mall
Toronto, Ontario M9C 5K1
solski@nortel.com

and

Mr. Alan Bloom, Mr. Stephen Harris
Ernst & Young LLP
1 More London Place
London, SE1 2AF
United Kingdom
abloom@uk.ey.com, sharris@uk.ey.com

**Grant**Thornton

With a copy to:

Mr. Peter Newell
Ogilvy Renault LLP
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street, P. O. Box 84
Toronto, Ontario  M5J 2Z4
pnewell@ogilvyrenault.com

and

Mr. Daniel S. Sternberg
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
dsternberg@cgsh.com

and

Nortel Networks Inc.
Legal Department
220 Athens Way, Suite 300
Nashville, Tennessee  37228
Attention:  Lynn C. Egan
             Assistant Secretary
Facsimile:  +1-615-432-4067

and

Nortel Networks Inc.
Legal Department
220 Athens Way, Suite 300
Nashville, Tennessee  37228
Attention:  Robert Fishman
             Senior Counsel
Facsimile:  +1-347-427-3815 & +1-615-432-4067

**GrantThornton**

and

Mr. Gavin Davies, Mr. Alan Montgomery, Mr. Nick Elverston
Herbert Smith LLP
Exchange House
Primrose Street
London, EC2A 2HS
United Kingdom
gavin.davies@herbertsmith.com, alan.montgomery@herbertsmith.com,
nick.elverston@herbertsmith.com

Information sent from Mr. Randy Solski will be forwarded by overnight courier or e-mailed to:

Mr. James P. Donley
Vice President Transitional Services
Ciena Corporation
1201 Winterson Road
Linthicum, MD 21090
jdonley@ciena.com

and

Alan Bloom, Stephen Harris
Ernst & Young LLP
1 More London Place
London, SE1 2AF
United Kingdom
abloom@uk.ey.com, sharris@uk.ey.com

With a copy to:

Mr. Kevin Boyle
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C.  20004-1304
U.S.A.
kevin.boyle@lw.com

# Grant Thornton

and

Gavin Davies, Alan Montgomery, Nick Elverston
Herbert Smith LLP
Exchange House
Primrose Street
London, EC2A 2HS
United Kingdom
gavin.davies@herbertsmith.com, alan.montgomery@herbertsmith.com,
nick.elverston@herbertsmith.com

Information sent from the Joint Administrators on behalf of NNUK or NN Ireland will be forwarded by overnight courier or e-mailed to Mr. Randy Solski and Mr. James P. Donley and copied to each of the above persons (except the Ernst & Young LLP and Herbert Smith LLP addressees), all at the above addresses.

We understand that each of you wishes to be included in any e-mail or other communication we might have with any of you in connection with any dispute that arises. We understand that each Party has agreed to supply to the other Party a copy of all submissions made to Grant Thornton LLP in connection with any proceeding undertaken in connection with our engagement. If we receive an e-mail from either Party who neglects to copy the other Party, we will forward it to that Party's designee.

**Other Matters**
All Services will be rendered under the supervision of by qualified and suitably experienced staff in accordance with the terms and conditions set forth herein. Grant Thornton LLP makes no other representation or warranty regarding the Services; in particular, and without limitation of the foregoing, any express or implied warranties arising by custom or usage in the profession, and warranties arising by operation of law are expressly disclaimed.

The Parties understand that Mr. Lioy or Grant Thornton LLP may decide to seek advice from legal counsel, including, without limitation, Grant Thornton LLP internal counsel if he in his sole discretion deems such advice to be necessary as he works on this engagement. The Parties agree to pay the reasonable fees and out of pocket expenses of outside counsel for Grant Thornton LLP and Mr. Lioy incurred in connection with the negotiation and documentation of this Agreement, any amendments thereto, and the implementation and management of the engagement through the bankruptcy process.

 Grant Thornton

All payments made by the Parties to Grant Thornton LLP shall be payable upon receipt of invoice via wire transfer to Grant Thornton LLP's bank account, as follows:

| | | |
|---|---|---|
| Receiving Bank: | Harris, N.A. | |
| Receiving Account: | ABA | 071 000 288 |
| | SWIFT CODE | HATRUS44 |
| | BANK ADDRESS | 111 West Monroe Street |
| | | Chicago IL, 60690 |
| | ACCT | 2750602 |
| | BENEFICIARY | Grant Thornton LLP |

The Parties agree that Mr. Lioy and Grant Thornton LLP are entitled to rely on any document signature, notice, request, representation, confirmation, or other advice believed by him to be genuine, and he may assume that any person purporting to act on behalf of the Parties has been authorized to do so.

This Agreement sets forth the entire understanding between and among the Parties and Grant Thornton LLP regarding the Services and supersedes all prior and contemporaneous agreements, arrangements and communications and may not be modified or amended except by the mutual written agreement of the Parties and Grant Thornton LLP. If any portion of this Agreement is held invalid, it is agreed that such invalidity shall not affect any of the remaining portions.

Please confirm your acceptance of this Agreement (including Attachment A, which is an integral part of the Agreement) by signing below and returning a signed copy, retaining a copy for yourself. If we do not receive the signed Agreement within 30 days from the date of this Agreement, this offer to perform services will be withdrawn and terminated. In any event, our engagement terminates two years from the date hereof, unless we are then actively serving as arbitrator for a dispute that has arisen, in which case our services under this Agreement will terminate upon issuance of our report in connection with that dispute. We appreciate the opportunity to serve you.

Very truly yours,

**GRANT THORNTON LLP**

Erik C. Lioy
Partner

Enclosure



**Accepted and Agreed:**
For and on behalf of Nortel Networks UK Limited (in administration)
as Joint Administrator (acting as agent and without personal liability)

(Insert Title) Alan Bloom, Joint Administrator

Date: 03.03.10

**Accepted and Agreed:**
For and on behalf of Nortel Networks (Ireland) Limited (in administration)
as Joint Administrator (acting as agent and without personal liability)

(Insert Title) Alan Bloom, Joint Administrator

Date: 03.03.10

**Accepted and Agreed:**
SIGNED by

(Insert Title) Alan Bloom, Joint Administrator

Date: 03.03.10

in his own capacity and on behalf of the Joint Administrators without personal liability and
solely for the benefit of the provisions of this Agreement expressed to be conferred on or given
to the Joint Administrators.

**Accepted and Agreed:**
Nortel Networks Inc.

Per: _____                    Date:  03.03.10
Name: John Doolittle
Title:  President


**Accepted and Agreed:**
Nortel Networks Limited

Per: _____                    Date:  03.03.10
Name: Paviter S. Binning
Title:  Executive Vice-President, Chief Financial
Officer and Chief Restructuring Officer

Per: _____                    Date:  03.03.10
Name: John Doolittle
Title:  Senior Vice-President, Finance and
Corporate Services


*[Signatures continue on the following page]*


*[Signature page to Grant Thornton TSA Arbitrator Letter Agreement]*

 **Grant**Thornton

**Accepted and Agreed:**
**Nortel Networks Inc.**

Date:

**Accepted and Agreed:**
**Nortel Networks Limited**

Date:

**Accepted and Agreed:**
**Ciena Corporation**           *James P. Daley*

(Insert Title)     *VP – Transitional Services*

Date:   *3/3/2010*



**Attachment A – Additional Terms**

The terms in this Attachment A apply to the Agreement dated March XX, 2010 for the Services to be provided to Nortel Networks Inc., Nortel Networks Limited and Nortel Networks UK Limited (in administration), ("NNUK") and Nortel Networks (Ireland) Limited (in administration) ("NN Ireland") who are acting by their joint administrators (in the case of NNUK, being Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF) and (in the case of NN Ireland, being David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland and Alan Robert Bloom), who act as agents of the NNUK and NN Ireland only and without any personal liability whatsoever (the "Joint Administrators"), the Joint Administrators and Ciena Corporation and Affiliates "Ciena"; (collectively, the "Parties" or "you") and Grant Thornton LLP ("Grant Thornton LLP", "we" or "us") for certain services, relating to the appointment of Grant Thornton LLP as arbitrator pursuant to section 5.28 of the Sellers' Disclosure Schedule to the ASA. Any capitalized terms herein that are undefined shall have the meaning assigned to them elsewhere in the Agreement.

1.  **Ability to Perform.** None of the parties to this Agreement shall be liable for any delay or failure in performance due to circumstances beyond its reasonable control. However, it is possible that because of an event of force majeure, we, acting reasonably, may determine that we cannot complete our Services. If, in our professional judgment, such circumstances exist, we may resign from this engagement prior to completion without incurring any liability to you.  In addition, Grant Thornton LLP reserves the right to in whole or in part decline to perform Services if information comes to our attention indicating that performing any Services would cause us to be in violation of applicable law, regulations or standards or in a conflict of interest, or to suffer damages to our reputation.

2.  **Standards of Performance.** The parties acknowledge that this engagement will involve analysis, judgment and other performance from time to time in a context where the participation of the parties or others is necessary, where answers often are not certain or verifiable in advance and where facts and available information change with time. Accordingly, evaluation of Grant Thornton LLP's Services shall be based solely on its substantial conformance with any standards or specifications expressly set forth in this Agreement and all applicable professional standards. Unless the parties agree otherwise, in writing, Grant Thornton LLP shall have no responsibility to update any of its work after its completion.

3.  **Successors and Affiliates.**

    a)  Except to the extent expressly provided hereto to the contrary, no third-party beneficiaries are intended under this Agreement.

    b)  This Agreement is binding on each party hereto and on each of its successors, assigns, heirs, legatees and legal representatives.

**Grant Thornton**

   c) None of the Parties to this Agreement, including Grant Thornton LLP, shall assign any rights, obligations or claims relating to this Agreement, without the prior written consent of the others, which consent shall not be unreasonably withheld, provided that any Party, including Grant Thornton LLP, may, without such consent, assign this Agreement and its rights, obligations, and claims hereunder to an affiliate or in connection with the transfer or sale of all or substantially all of its business, or in the event of its reorganization, reclassification, merger, consolidation, change in control or comparable transaction.

4. **Electronic Communications.** The parties may need to electronically transmit information to each other and to other entities engaged by any of the parties. However, e-mail is not a secure means of communication, and thus confidentiality could be compromised. Parties agree to the use of e-mail and other electronic methods to transmit and receive information, including confidential information, between the parties and between Grant Thornton LLP and outside specialists or other entities engaged by Grant Thornton LLP or the Parties. We shall not be liable for any loss, damage, expense, inconvenience, or harm resulting from the loss, delay, interception, corruption, or alteration of any electronic communication due to any reason beyond our reasonable control.

5. **Outsourcing to Third-Parties.** Grant Thornton LLP is the U.S. member firm of Grant Thornton International ("GTI"), a global organization of member firms in over 100 countries. From time to time, the partners and staff of the member firms may assist in the professional services being rendered. Member firms are not members of one international partnership or otherwise legal partners with each other. There is no common ownership, control, governance, or agency relationship between member firms. Parties agree that information provided by the Parties may be disclosed to a member firm or a third-party service provider, including other accounting firms that may not be members of GTI, solely for purposes of performing our professional services, provided that Grant Thornton LLP obtains prior written consent from the Client whose information is disclosed to a member firm or a third-party service provider, and such member firm or third-party service provider, as applicable, agrees in writing, prior to receiving such information, to keep such information confidential and not to disclose any of such information to any other third party, except as required by applicable law, regulation, or court or governmental order or process, and provided further that prior to utilizing such member firm or third-party service provider, Grant Thornton LLP will conduct a conflicts and relationship check with respect to such entities in accordance with its standard procedures.

6. **Hiring of Personnel.** When we lose a valued member of our engagement team, we incur significant expenses in hiring and training replacements. Accordingly, during the term of this engagement and for a period of one (1) year after the Services are completed, the Parties agree not to solicit, directly or indirectly, or hire any of our personnel who participate in this engagement without our express written consent. If this provision is violated, the Parties will pay Grant Thornton LLP a fee equal to the hired

**Grant Thornton**

person's annual salary in effect at the time of the violation to reimburse the costs of hiring and training replacement personnel.

7. **General.**

a) Each party is an independent contractor with respect to the other and shall not be construed as having a trustee, joint venture, agency or fiduciary relationship.

b) Except as set forth in section 7(c) below, any controversy or claim arising out of or relating to the terms and conditions of Nortel's employment a of Grant Thornton as arbitrator pursuant to the Agreement shall first be submitted to voluntary mediation. A mediator will be selected by agreement of the parties, or if the parties cannot agree a mediator acceptable to all parties will be appointed by the American Arbitration Association. The mediation will proceed in accordance with the customary practice of mediation. In the unlikely event that such differences cannot be resolved by mediation, the parties recognize that the matter will probably involve complex business issues that would be decided most equitably by a judge hearing the evidence without a jury. Accordingly, the parties agree to waive any right to a trial by jury in any action, proceeding or counterclaim arising out of or relating to the terms and conditions of Nortel's employment and compensation of Grant Thornton as arbitrator pursuant to the Agreement. For the avoidance of doubt, the Parties agree that the terms of this section do not apply to any controversy or claim arising out of or relating to the Services, including any decision of Grant Thornton as arbitrator regarding the matters submitted by the Parties.

c) The parties agree that the Bankruptcy Court has jurisdiction over any controversy or claim arising out of or relating to Nortel Network Inc.'s compensation of Grant Thornton LLP for the Services provided under the terms of the Agreement and further agree that any such controversies or claims shall be heard and determined by the Bankruptcy Court. If for any reason the Bankruptcy Court fails to exercise jurisdiction over any controversy or claim arising out of or relating to Nortel Network Inc.'s compensation of Grant Thornton LLP, the parties agree such controversies or claims are subject to the jurisdiction of the state and federal courts of the state of Delaware and further agree that any such controversies or claims shall be heard and determined in the state or federal courts in the state of Delaware.

d) Subject to the following paragraph, this Agreement, including its formation and the parties' respective rights and duties, and all disputes that might arise from or in connection with this Agreement or its subject matter shall be governed by and construed in accordance with the laws of New York, without giving effect to conflicts of laws or rules.

e) The parties to this Agreement agree that the personal liability provisions of the Joint Administrators under this Agreement are governed by English law and the



English courts shall have exclusive jurisdiction to deal with any matter, question or dispute arising out of or in connection with any question of liability of the Joint Administrators in their personal capacity under this Agreement, and the parties agree to the exclusive jurisdiction of the English courts in relation to such matters and waive any objection to the English courts on the grounds that they are an inconvenient or inappropriate forum to settle any such matter, question or dispute.