

in advance (but not in arrears). On the date of the first of such payment, any arrears relating to the period commencing from and including the date of this Order shall also be paid. Upon delivery of a Notice of Repudiation, such Applicant shall pay all Rent due for the notice period stipulated in paragraph 11(c) of this Order, to the extent that Rent for such period has not already been paid.

10.     THIS COURT ORDERS that, except as specifically permitted herein, each of the Applicants is hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by such Applicant to any of its creditors as of this date unless such payments have been approved by the Monitor; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of its Property; and (c) to not grant credit or incur liabilities except in the ordinary course of business unless such obligation has been approved by the Monitor.

10A.    THIS COURT ORDERS that, notwithstanding paragraph 10 hereof,

   (a)     the existing letter of credit agreements between the Applicants and ABN, RBC and Citibank, N.A. acting through its Canadian branch ("Citibank") and any amendments thereto made after January 14, 2009 with the written approval of the Monitor, together with any agreements entered into by the Applicants or any of them with any other lenders with the written approval of the Monitor providing letter of credit facilities or similar facilities to the Applicants or any of them (including those which may be the subject of EDC guarantee bonds issued pursuant to the EDC Support Facility) (collectively, the "LC Agreements"), and the issuance or renewal of LC's pursuant thereto by ABN, RBC, Citibank and any other lenders (collectively, the "LC Banks"), together with any payments made by the Applicants or EDC with respect thereto; and

   (b)     the EDC Support Agreements and any amendments thereto made after June 18, 2009 with the written consent of the Monitor, together with any payments made by NNL with respect thereto,



are specifically permitted herein and authorized hereby and shall not and will not constitute fraudulent preferences, oppressive conduct, settlements or other challengeable, voidable or reviewable transactions under any applicable law

10B.   THIS COURT ORDERS that, notwithstanding any other provision in this Order, no LC Bank shall be required to issue a letter of credit to the Applicants or any of them and EDC shall not be required to provide any Secured Support to the Applicants or any of them.

**RESTRUCTURING**

11.   THIS COURT ORDERS that each of the Applicants shall, have the right to:

   (a)   permanently or temporarily cease, downsize or shut down any of its business or operations and to dispose of redundant or non-material assets not exceeding CDN$10,000,000 in any one transaction or CDN$50,000,000 in the aggregate, subject to paragraph (c), if applicable;

   (b)   terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate and to deal with the consequences thereof in the Plan or on further order of the Court;

   (c)   in accordance with paragraphs 12 and 13, vacate, abandon or quit the whole but not part of any leased premises and/or repudiate any real property lease and any ancillary agreements relating to any leased premises, on not less than seven (7) days notice in writing to the relevant landlord on such terms as may be agreed upon between the Applicant and such landlord, or failing such agreement, to deal with the consequences thereof in the Plan;

   (d)   repudiate such of its arrangements or agreements of any nature whatsoever, including, without limitation, any of its deferred compensation, or bonus plans, change of control plans, stock options or restructured stock unit plans and shareholder rights plans whether oral or written, as such Applicant may deem appropriate on such terms as may be agreed upon between such Applicant or any one of them and such counter-



parties, or failing such agreement, to deal with the consequences thereof in the Plan; and

(e)     pursue all avenues of refinancing and offers for material parts of its Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing or any sale (except as permitted by subparagraph (a), above);

all of the foregoing to permit the Applicants to proceed with an orderly restructuring of the Business (the "Restructuring").

12.     THIS COURT ORDERS that each of the Applicants shall provide each of the relevant landlords with notice of such Applicant's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes such Applicant's entitlement to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and such Applicant, or by further Order of this Court upon application by such Applicant on at least two (2) days notice to such landlord and any such secured creditors. If such Applicant repudiates the lease governing such leased premises in accordance with paragraph 11(c) of this Order, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in paragraph 11(c) of this Order), and the repudiation of the lease shall be without prejudice to such Applicant's claim to the fixtures in dispute.

13.     THIS COURT ORDERS that if a Notice of Repudiation is delivered, then (a) during the notice period prior to the effective time of the repudiation, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Applicants and the Monitor 24 hours' prior written notice, and (b) at the effective time of the repudiation, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the Applicants in respect of such lease or leased premises and such landlord shall be entitled to notify the Applicants of the basis on which it is taking possession and to gain possession of and re-lease such leased

premises to any third party or parties on such terms as such landlord considers advisable, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

## NO PROCEEDINGS AGAINST THE APPLICANTS OR THE PROPERTY

14.    THIS COURT ORDERS that until and including February 13, 2009 or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each, a "Proceeding") shall be commenced, or continued against or in respect of any of the Applicants or the Monitor, or affecting the Business or the Property, except with the written consent of the affected Applicant and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the affected Applicant or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

## NO EXERCISE OF RIGHTS OR REMEDIES

15.    THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing, collectively being "Persons" and each being a "Person") against or in respect of the Applicants or the Monitor, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the affected Applicant and the Monitor, or leave of this Court, provided that nothing in this Order shall (i) empower the Applicants to carry on any business which the Applicants are not lawfully entitled to carry on, (ii) exempt the Applicants from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH RIGHTS

16.    THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Applicants, except with the written consent of the Applicants and the Monitor, or leave of this Court.

**CONTINUATION OF SERVICES**

17.    THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements with the Applicants or with third parties on behalf of the Applicants, or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, employment agency services, insurance, transportation services, utility, leasing or other services to the Business or to any of the Applicants, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the applicable Applicant and that such Applicant shall be entitled to the continued use of its current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by such Applicant, in accordance with normal payment practices of such Applicant, as applicable, or such other practices as may be agreed upon by the supplier or service provider and the affected Applicant and the Monitor, or as may be ordered by this Court.

**NON-DEROGATION OF RIGHTS**

18.    THIS COURT ORDERS that, notwithstanding anything else contained herein, no creditor of the Applicants shall be under any obligation after the making of this Order to advance or re-advance any monies or otherwise extend any credit to the Applicants. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

19.    THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.5(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Applicants with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Applicants whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such



obligations, until a compromise or arrangement in respect of the Applicants, if one is filed, is sanctioned by this Court or is refused by the creditors of the Applicants or this Court.

## DIRECTORS AND OFFICERS

20.     THIS COURT ORDERS that each of the Applicants shall indemnify its directors and officers from all claims, costs, charges and expenses relating to the failure of such Applicant, after the date hereof, to make payments of the nature referred to in subparagraphs 6(a), 6(b), 8(a), 8(b) and 8(c) of this Order or for the Applicants' failure to make payments in respect of employer health tax or workers' compensation which they sustain or incur by reason of or in relation to their respective capacities as directors and/or officers except to the extent that, with respect to any officer or director, such officer or director has actively participated in the breach of any related fiduciary duties or has been grossly negligent or guilty of wilful misconduct.

21.     THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property, which charge shall not exceed an aggregate amount of CDN\$90 million, as security for the indemnities provided in paragraph 20 of this Order as well as the fees and disbursements of their legal counsel. The Directors' Charge shall have the priority set out in paragraphs 42 and 44 herein.

22.     THIS COURT ORDERS that, notwithstanding any language in any applicable insurance policy to the contrary, (a) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (b) each of the Applicants' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 20 of this Order.

23.     THIS COURT ORDERS that each of NNC's and NNL's directors shall be entitled to receive remuneration in cash on a current basis at current compensation levels (less an overall U.S.\$25,000 reduction) notwithstanding the terms of, or elections made under, the Directors' Compensation Plan.



**APPOINTMENT OF MONITOR**

24.     THIS COURT ORDERS that E&Y is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Property and the Applicants' conduct of the Business with the powers and obligations set out in the CCAA or set forth herein and that each of the Applicants and its officers, directors, and Assistants shall advise the Monitor of all material steps taken by such Applicant pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations.

25.     THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)     monitor the Applicants' receipts and disbursements;

(b)     provide the consents contemplated herein;

(c)     report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(d)     advise the Applicants in their preparation of the Applicants' cash flow statements and any other reporting to the Court or otherwise;

(e)     advise the Applicants in their development of the Plan or Plans and any amendments to such Plan or Plans;

(f)     assist the Applicants, to the extent required by the Applicants, with the Restructuring;

(g)     assist the Applicants, to the extent required by the Applicants, with the holding and administering of creditors' or shareholders' meetings for voting on the Plan or Plans;

(h)     have full and complete access to the books, records and management, employees and advisors of the Applicants and to the Business and the Property to the extent required to perform its duties arising under this Order;



- 15 -

(i)     be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order including, without limitation, one or more entities related to or affiliated with the Monitor;

(j)     consider, and if deemed advisable by the Monitor, prepare a report and assessment on the Plan or Plans;

(k)     assist the Applicants with respect to any insolvency proceedings commenced by or with respect to any other Nortel Company (as defined in the Doolittle Affidavit) in any foreign jurisdiction (collectively, "Foreign Proceedings") and report to this Court, as it deems appropriate, on the Foreign Proceedings with respect to matters relating to the Applicants;

(l)     apply as the foreign representative of the Applicants, for recognition of these proceedings as "Foreign Main Proceedings", pursuant to Chapter 15 of the United States Bankruptcy Code, 11 U.S.C. §101 (the "U.S. Bankruptcy Code") or similar legislation in any other jurisdiction; and

(m)     perform such other duties as are required by this Order or by this Court from time to time.

26.     THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

27.     THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the



*Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "Environmental Legislation"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

28.     THIS COURT ORDERS that that the Monitor shall provide any creditor of the Applicants with information provided by the Applicants in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Applicants is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicants may agree.

29.     THIS COURT ORDERS that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment and the fulfilment of its duties or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

30.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the Applicants and counsel to directors shall be paid their reasonable fees and disbursements incurred both before and after the making of the Order, in each case at their standard rates and charges, by the Applicants as part of the costs of these proceedings. Each of the Applicants is hereby authorized and directed to pay the accounts of the Monitor, counsel for the Monitor, counsel for the Applicants and counsel to directors on a weekly basis and, in addition, each of the Applicants is hereby authorized to pay to: (a) the Monitor and its Canadian and U.S. counsel a retainer in the aggregate amount of CDN$750,000; and (b) counsel to the Applicants a retainer



in the amount of CDN$750,000 (collectively, the "Retainers") to be held by them as security for payment of their respective fees and disbursements outstanding from time to time.

31.    THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

32.    THIS COURT ORDERS that the Monitor, counsel to the Monitor, if any, and the Applicants' counsel shall be entitled to the benefit of and are hereby granted a charge (the "Administration Charge") on the Property, which charge shall not exceed an aggregate amount of $5,000,000, as security for their professional fees and disbursements incurred at the standard rates and charges of the Monitor and such counsel, both before and after the making of this Order in respect of these proceedings.  The Administration Charge shall have the priority set out in paragraphs 42 and 44 hereof.

**EDC**

33.    Intentionally Deleted.

**INTERCOMPANY LOANS**

34.    THIS COURT ORDERS to the extent that an Applicant receives a post-filing inter-company loan or other transfer (including goods and services) from a Chapter 11 Entity (as defined in the Doolittle Affidavit) (including as a result of the Applicants' cash management system or otherwise) (each such Applicant, a "Beneficiary Applicant"), and such post-filing inter-company loan or other transfer is made (each an "Advance") by a Chapter 11 Entity (together with NNL for the purposes of paragraph 34A below, a "Protected Entity"), then, subject to the limitations set forth in this paragraph:

(a)    the Protected Entity shall have a proven and valid claim against such Beneficiary Applicant for the amount of such Advance (each, an "Inter-company Reimbursement Claim"), which Inter-company Reimbursement Claim shall bear interest at a rate agreed between the applicable Beneficiary Applicant and Protected Entity from time to time for the period in accordance with past practice; and



(b)    all of the Property of the Beneficiary Applicant, is hereby charged by a mortgage, lien and security interest (such mortgage, lien and security interest, "Inter-company Charge") in favour of each of the Protected Entities as security for payment of the Inter-company Reimbursement Claim (including principal, interest and expenses) by the applicable Beneficiary Applicant to the corresponding Protected Entity.

34A.    THIS COURT ORDERS that the Inter-Company Charge shall also secure any Advances made by NNL to Nortel Networks Technology Corporation ("NNTC") on or after January 14, 2009 and that NNL shall be a "Protected Entity" and NNTC shall be a "Beneficiary Applicant" in respect of such Advances.

35.    THIS COURT ORDERS that the Inter-company Charge shall also secure any amounts owed by any of the Applicants to any Chapter 11 Entity at the date of filing under the Existing NNI Revolver (as defined in the Doolittle Affidavit) and all rights that such Chapter 11 Entity has with respect thereto are preserved.

36.    THIS COURT ORDERS the Inter-company Charge shall be junior, subject and subordinate only to the other Charges (defined below), and any other future charges against such Beneficiary Applicant that, by the Court order creating them, are expressly stated to be senior to the Inter-company Charges entered after notice and a hearing.

37.    THIS COURT ORDERS that pending further order of this Court, an Inter-company Charge shall be a "silent" charge and the Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Inter-company Reimbursement Claim held by such party, including, without limitation, as to seeking relief from the stay granted hereunder, or seeking any sale, foreclosure, realization upon repossession or liquidation of any Property of a Beneficiary Applicant, or taking any position with respect to any disposition of the Property, the business operations, or the reorganization of a Beneficiary Applicant. An Inter-company Charge automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that Property subject to such Inter-company Charge is sold or otherwise disposed of in accordance with the terms of this Order or further order of this Court after notice and a hearing, with respect to the effect of an Inter-company Charge on any sale of Property by any Beneficiary Applicant.



38.     THIS COURT ORDERS that the Beneficiary Applicants may sell Property, in accordance with the terms of this Order or further order of this Court after notice and a hearing, in each case free and clear of any Inter-company Charge, with such Inter-company Charge attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the Property sold.

## INTERIM GROUP SUPPLIER PROTOCOL AGREEMENT

39.     THIS COURT ORDERS that the Applicants be and are hereby authorized to enter into a group supplier protocol agreement (the "Interim GSPA") substantially in the form attached as Exhibit "C" to the Doolittle Affidavit which agreement shall be effective upon the appointment of the Administrators in the United Kingdom, and the Applicants are hereby authorized to perform each of their obligations, if any, under the Interim GSPA. The obligations of the Applicants under the Interim GSPA shall be secured by the Inter-Company Charge.

## NNI LOAN

40.     THIS COURT ORDERS that the amended and restated loan agreement entered into between NNL, as borrower, NNTC and the other Applicants as guarantors, and Nortel Networks Inc. ("NNI") as lender (the "NNI Loan Agreement"), substantially in the form attached as Exhibit "B" to the Affidavit of John Doolittle sworn March 27, 2009 providing for a revolving loan facility of up to U.S.$200 million is hereby approved and each of the Applicants is hereby directed to execute and to comply with its obligations under the NNI Loan Agreement.

41.     THIS COURT ORDERS that as security for NNL's and NNTC's obligations under the NNI Loan Agreement, NNI shall be entitled to the benefit of and is hereby granted charges (the "Carling Facility Charges") by each of NNL and NNTC, NNL's wholly owned subsidiary, on all of the fee simple interest of NNTC and leasehold interest of NNL respectively in the Carling Facility (as defined in the Doolittle Affidavit) and that no equal or higher charge shall be granted by the Court order unless consented to by NNI as authorized by the United States Bankruptcy Court for the District of Delaware. The Carling Facility Charges shall have the priority set out in paragraphs 42 and 44, hereof. For greater certainty, NNI shall not be required to have exhausted



its remedies under the Carling Facility Charges prior to realizing on or being entitled to proceeds from the NNI Loan Charge.

41A.   THIS COURT ORDERS that in addition to the Carling Facility Charges, NNI shall be entitled to the benefit of and is hereby granted a charge on the Property (the "NNI Loan Charge") as security for the Applicants obligations under the NNI Loan Agreement. The NNI Loan Charge shall have the priority set out in paragraphs 42 and 44 hereof.

41B.   THIS COURT ORDERS that pending further order of this Court, NNI shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to the Applicants' obligations under the NNI Loan Agreement, including, without limitation, as to seeking relief from the stay granted hereunder, or seeking any sale, foreclosure, realization upon repossession or liquidation of any Property of an Applicant, or taking any position with respect to any disposition of the Property, the business operations, or the reorganization of an Applicant. The NNI Loan Charge automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that Property subject to such NNI Loan Charge is sold or otherwise disposed of in accordance with the terms of this Order or further order of this Court after notice and a hearing, with respect to the effect of an NNI Loan Charge on any sale of Property by any Applicant.

41C.   THIS COURT ORDERS that the Applicants may sell Property, in accordance with the terms of this Order or further order of this Court after notice and a hearing, in each case free and clear of the NNI Loan Charge, with the NNI Loan Charge attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the Property sold.

**EXCESS FUNDING CHARGE**

41D. THIS COURT ORDERS that as security for NNL's obligation to repay to NNI the Contingent Payment (as defined in the Interim Funding Agreement, as defined in the June Affidavit) along with interest, if any, NNI shall be entitled to the benefit of and is hereby granted a charge on the Property (the "Excess Funding Charge"). The Excess Funding Charge shall have the priority set out in paragraphs 42 and 44 hereof.



**SHORTFALL CHARGE**

41E. THIS COURT ORDERS that as security for any obligation of NNL to make the Shortfall Payments (as defined in the Interim Funding Agreement, as defined in the June Affidavit), Nortel Networks UK Limited shall be entitled to the benefit of and is hereby granted a charge on the Property (the "Shortfall Charge"). The Shortfall Charge shall have the priority set out in paragraphs 42 and 44 hereof.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

42.    THIS COURT ORDERS that the priorities of the Administration Charge, the Goldman Charge, the Carling Facility Charges, the Excess Funding Charge, the Directors' Charge, the NNI Loan Charge, the Inter-company Charge and the Shortfall Charge on all Property:

>    First -

>>    (a) the Administration Charge;

>>    (b) the Goldman Charge (as defined in the Nortel-LGE Joint Venture Sale Process Order of this Court made on June 1, 2009), ranking *pari passu* with the Administration Charge but only with respect to the assets which are the subject of the Goldman Charge

>    Second – the Carling Facility Charges;

>    Third – the Excess Funding Charge

>    Fourth – the Directors' Charge;

>    Fifth – the NNI Loan Charge; and

>    Sixth -

>>    (a) the Inter-Company Charge;

>>    (b) the Shortfall Charge,



which Inter-company Charge and Shortfall Charge shall rank *pari passu* with one another.

43.     THIS COURT ORDERS that the filing, registration or perfection of the Administration Charge, the Goldman Charge, the Carling Facility Charges, Excess Funding Charge, the Directors' Charge, the NNI Loan Charge, the Inter-company Charge and the Shortfall Charge (collectively, the "Charges") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.  Notwithstanding anything herein, the Charges shall not attach to the Retainers.

44.     THIS COURT ORDERS that each of the Charges (all as constituted and defined herein), shall subject to this paragraph 44 and to paragraph 46 herein constitute a charge on the Property secured thereunder, and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, statutory or otherwise (collectively, "Encumbrances") in favour of any Person.  For greater certainty,

(a)     the Charges shall attach to the LC Cash Collateral junior in priority to any rights or Encumbrances in favour of LC Banks in respect of LC Cash Collateral and only to the extent of the rights of the Applicants to the return of any LC Cash Collateral from the LC Banks following the exercise of the rights of the LC Banks as against any such LC Cash Collateral pursuant to the LC Agreements or section 18.1 of the CCAA, and

(b)     the Charges shall attach to the EDC Cash Collateral junior in priority to any rights or Encumbrances in favour of EDC in respect of EDC Cash Collateral and only to the extent of the rights of NNL to the return of any EDC Cash Collateral from EDC following the exercise of the rights of EDC as against any such EDC Cash Collateral pursuant to the EDC Support Agreements or section 18.1 of the CCAA

notwithstanding anything to the contrary contained in this Order.

45.     THIS COURT ORDERS that except as otherwise expressly provided for herein, or as may be approved by this Court, the Applicants shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges charging such Property,



unless the Applicants also obtain the prior written consent of the Monitor and the beneficiaries of such Charges, or by further Order of this Court.

46.      THIS COURT ORDERS that none of the Charges, the LC Agreements and the EDC Support Agreements shall be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "Chargees") thereunder, the rights of the LC Banks under LC Agreements and the rights of EDC under the EDC Support shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan documents, lease, sublease, offer to lease or other agreement (collectively, an "Agreement") which binds the Applicants, and notwithstanding any provision to the contrary in any Agreement:

(a)      the creation of the Charges, the entering into of the LC Agreements and the issuance or renewal of LC's thereunder and the entering into of the EDC Support Agreements and the provision of Secured Support, as defined and contemplated thereunder, shall not create or be deemed to constitute a breach by any of the Applicants of any Agreement to which it is a party;

(b)      none of the Chargees, the LC Banks and EDC shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from, the creation of the Charges, the entering into of the LC Agreements or the issuance or renewal of LC's thereunder or the entering into of the EDC Support Agreements and the provision of Secured Support; and

(c)      the payments made by the Applicants pursuant to this Order and the granting of the Charges and the entering into of the LC Agreements and the EDC Support Agreements do not and will not constitute fraudulent preferences, fraudulent



- 24 -

conveyances, oppressive conduct, settlements or other challengeable, voidable or reviewable transactions under any applicable law.

47.    THIS COURT ORDERS that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Applicants' interest in such real property leases.

**FLEXTRONICS AMENDING AGREEMENT**

48.    THIS COURT ORDERS that the Flextronics Amending Agreement in the form attached as Exhibit "B" to the Doolittle Affidavit be and is hereby approved and NNL is hereby authorized and directed to comply with its obligations thereunder.

**CROSS-BORDER PROTOCOL**

49.    THIS COURT ORDERS that the cross-border protocol, as amended, in the form attached as Schedule "A" hereto be and is hereby approved and shall become effective upon its approval by the United States Bankruptcy Court for the District of Delaware and the parties to these proceedings and any other Person shall be governed by it and shall comply with the same.

**FOREIGN PROCEEDINGS**

50.    THIS COURT ORDERS that the Monitor is hereby authorized and directed to apply for recognition of these proceedings as "Foreign Main Proceedings" in the United States pursuant to Chapter 15 of the U.S. Bankruptcy Code.

51.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.



52.    THIS COURT ORDERS that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

**SERVICE AND NOTICE**

53.    THIS COURT ORDERS that the Monitor shall, within ten (10) business days of the date of entry of this Order, send notice of this Order and the commencement of the within proceedings to the Applicants' known creditors, other than employees and creditors to which the Applicants owe less than $5,000, at their addresses as they appear on the Applicants' records, and shall promptly send a copy of this Order (a) to all parties filing a Notice of Appearance in respect of this Application, and (b) to any other interested Person requesting a copy of this Order, and the Monitor is relieved of its obligation under Section 11(5) of the CCAA to provide similar notice, other than to supervise this process. The Monitor, on behalf of the Applicants, shall, in its discretion, be entitled to engage a third party mailing service in order to assist or complete the mailing. Any such service provider shall be considered an "Assistant" hereunder.

54.    THIS COURT ORDERS that the Applicants and the Monitor be at liberty to serve this Order, any other materials and orders in these proceedings, and any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the Applicants' creditors or other interested parties at their respective addresses as last shown on the records of the Applicants and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing.

55.    THIS COURT ORDERS that the Applicants, the Monitor, and any party who has filed a Notice of Appearance may serve any court materials in these proceedings by e-mailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, in accordance with the E-filing protocol of the Commercial List to the extent practicable, and the Monitor may post a copy of any or all such materials on its website at http://www.ey.com/ca/nortel.



**GENERAL**

56.     THIS COURT ORDERS that any of the Applicants or the Monitor may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.

57.     THIS COURT ORDERS that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Applicants, the Business or the Property.

58.     THIS COURT ORDERS that any interested party (including the Applicants and the Monitor) may apply to this Court to vary or amend this Order on not less than seven (7) days notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

59.     THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard Time on the date of this Order.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 3 0 2009

PER / PAR:



## SCHEDULE "A" – CROSS-BORDER PROTOCOL

**Attached.**



## CROSS-BORDER INSOLVENCY PROTOCOL

This cross-border insolvency protocol (the "Protocol") shall govern the conduct of all parties in interest in the Insolvency Proceedings (as such term is defined herein).

The Guidelines Applicable to Court-to-Court Communications in Cross-Border Cases (the "Guidelines") attached as Schedule "A" hereto, shall be incorporated by reference and form part of this Protocol. Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

A.    **Background**

1.    Nortel Networks Inc. ("NNI") is the wholly owned U.S. subsidiary of Nortel Networks Limited ("NNL"), the principal Canadian operating subsidiary of Nortel Networks Corporation ("NNC"). NNC is a telecommunications company headquartered in Toronto, Ontario, Canada. NNI is incorporated under Delaware law and is headquartered in Richardson, Texas.

2.    NNI and certain of its affiliates (collectively, the "U.S. Debtors"),[1] have commenced reorganization proceedings (the "U.S. Proceedings") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "U.S. Court"), and such cases have been consolidated (for procedural purposes only) under Case No. 09-10138 (KG). The U.S. Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the U.S. Proceedings. On January 22, 2009,

---

[1]    The Debtors in the U.S. Proceedings (as defined herein) are: NNI, Nortel Networks Capital Corporation, Nortel Altsystems Inc., Nortel Altsystems International Inc., XROS, Inc., Sonoma Systems, QTERA Corporation, CoreTek, Inc., Nortel Networks Applications Management Solutions Inc., Nortel Networks Optical Components Inc., Nortel Networks HPOCS Inc., Architel Systems (U.S.) Corporation, Nortel Networks International Inc., Northern Telecom International Inc. and Nortel Networks Cable Solutions Inc.

the Office of United States Trustee (the "U.S. Trustee") appointed an official committee of

unsecured creditors (the "Creditors Committee") in the U.S. Proceeding. An ad hoc committee

of bondholders (the "Bondholders Committee") has also been organized.

       3.     On January 14, 2009, the U.S. Debtors' ultimate corporate parent NNC,

NNI's direct corporate parent NNL (together with NNC and their affiliates, including the U.S.

Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian

Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court")

under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from

their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors have obtained

an initial order of the Canadian Court (as amended and restated, the "Canadian Order"), under

which, inter alia: (a) the Canadian Debtors have been determined to be entitled to relief under

the CCAA; (b) Ernst & Young Inc. has been appointed as monitor (the "Monitor") of the

Canadian Debtors, with the rights, powers, duties and limitations upon liabilities set forth in the

CCAA and the Canadian Order; and (c) a stay of proceedings in respect of the Canadian Debtors

has been granted.

       4.     The Monitor filed petitions and obtained an order in the U.S. Court

granting recognition of the Canadian Proceedings under chapter 15 of the Bankruptcy Code (the

"Chapter 15 Proceedings"). NNI also filed an application and obtained an order in the Canadian

Court pursuant to section 18.6 of the CCAA recognizing the U.S. Proceedings as "foreign

proceedings" in Canada and giving effect to the automatic stay thereunder in Canada. None of

the U.S. Debtors or Canadian Debtors are applicants in both the U.S. Proceedings and Canadian

Proceedings.

---

[2]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

3



5.      For convenience, (a) the U.S. Debtors and the Canadian Debtors shall be referred to herein collectively as the "Debtors," (b) the U.S. Proceedings and the Canadian Proceedings shall be referred to herein collectively as the "Insolvency Proceedings," and (c) the U.S. Court and the Canadian Court shall be referred to herein collectively as the "Courts", and each individually as a "Court."

**B.    Purpose and Goals**

6.      Though full and separate plenary proceedings are pending in the United States for the U.S. Debtors and in Canada for the Canadian Debtors, the implementation of administrative procedures and cross-border guidelines is both necessary and desirable to coordinate certain activities in the Insolvency Proceedings, protect the rights of parties thereto, ensure the maintenance of the Courts' respective independent jurisdiction and give effect to the doctrines of comity.  Accordingly, this Protocol has been developed to promote the following mutually desirable goals and objectives in the Insolvency Proceedings:

    a.      harmonize and coordinate activities in the Insolvency Proceedings before the Courts;

    b.      promote the orderly and efficient administration of the Insolvency Proceedings to, among other things, maximize the efficiency of the Insolvency Proceedings, reduce the costs associated therewith and avoid duplication of effort;

    c.      honor the independence and integrity of the Courts and other courts and tribunals of the United States and Canada, respectively;

    d.      promote international cooperation and respect for comity among the Courts, the Debtors, the Creditors Committee, the Estate Representatives (which include the Chapter 11 Representatives and the Canadian Representatives as such terms are defined below) and other creditors and interested parties in the Insolvency Proceedings;

    e.      facilitate the fair, open and efficient administration of the Insolvency Proceedings for the benefit of all of the Debtors' creditors and other interested parties, wherever located; and

4

f.      implement a framework of general principles to address basic
administrative issues arising out of the cross-border nature of the
Insolvency Proceedings.

As the Insolvency Proceedings progress, the Courts may also jointly determine that other cross-

border matters that may arise in the Insolvency Proceedings should be dealt with under and in

accordance with the principles of this Protocol.  Subject to the provisions of this Protocol,

including, without limitation, those included in paragraph 15 hereof, where an issue is to be

addressed only to one Court, in rendering a determination in any cross-border matter, such Court

may:  (a) to the extent practical or advisable, consult with the other Court; and (b) in its sole

discretion and bearing in mind the principles of comity, either (i) render a binding decision after

such consultation; (ii) defer to the determination of the other Court by transferring the matter, in

whole or in part to the other Court; or (iii) seek a joint hearing of both Courts.

C.      **Comity and Independence of the Courts**

7.      The approval and implementation of this Protocol shall not divest nor

diminish the U.S. Court's and the Canadian Court's respective independent jurisdiction over the

subject matter of the U.S. Proceedings and the Canadian Proceedings, respectively.  By

approving and implementing this Protocol, neither the U.S. Court, the Canadian Court, the

Debtors nor any creditors or interested parties shall be deemed to have approved or engaged in

any infringement on the sovereignty of the United States of America or Canada.

8.      The U.S. Court shall have sole and exclusive jurisdiction and power over

the conduct of the U.S. Proceedings and the hearing and determination of matters arising in the

U.S. Proceedings.  The Canadian Court shall have sole and exclusive jurisdiction and power over

the conduct of the Canadian Proceedings and the hearing and determination of matters arising in

the Canadian Proceedings.

5

9.    In accordance with the principles of comity and independence recognized

herein, nothing contained herein shall be construed to:

    a.    increase, decrease or otherwise modify the independence, sovereignty or jurisdiction of the U.S. Court, the Canadian Court or any other court or tribunal in the United States or Canada, including the ability of any such court or tribunal to provide appropriate relief on an ex parte or "limited notice" basis to the extent permitted under applicable law;

    b.    require the U.S. Court to take any action that is inconsistent with its obligations under the laws of the United States;

    c.    require the Canadian Court to take any action that is inconsistent with its obligations under the laws of Canada;

    d.    require the Debtors, the Creditors Committee, the Estate Representatives or the U.S. Trustee to take any action or refrain from taking any action that would result in a breach of any duty imposed on them by any applicable law;

    e.    authorize any action that requires the specific approval of one or both of the Courts under the Bankruptcy Code or the CCAA after appropriate notice and a hearing (except to the extent that such action is specifically described in this Protocol); or

    f.    preclude the Debtors, the Creditors Committee, the Monitor, the U.S. Trustee, any creditor or other interested party from asserting such party's substantive rights under the applicable laws of the United States, Canada or any other relevant jurisdiction including, without limitation, the rights of parties in interest to appeal from the decisions taken by one or both of the Courts.

10.  The Debtors, the Creditors Committee, the Estate Representatives and their

respective employees, members, agents and professionals shall respect and comply with the

independent, non-delegable duties imposed upon them, if any, by the Bankruptcy Code, the

CCAA, the Canadian Order and other applicable laws.

**D.    Cooperation**

11.    To assist in the efficient administration of the Insolvency Proceedings and

in recognizing that the U.S. Debtors and Canadian Debtors may be creditors of the others'

6



estates, the Debtors and their respective Estate Representatives shall, where appropriate: (a)

cooperate with each other in connection with actions taken in both the U.S. Court and the

Canadian Court and (b) take any other appropriate steps to coordinate the administration of the

Insolvency Proceedings for the benefit of the Debtors' respective estates.

           12.      To harmonize and coordinate the administration of the Insolvency

Proceedings, the U.S. Court and the Canadian Court each may coordinate activities and consider

whether it is appropriate to defer to the judgment of the other Court. In furtherance of the

foregoing:

      a.      The U.S. Court and the Canadian Court may communicate with one
another, with or without counsel present, with respect to any procedural
matter relating to the Insolvency Proceedings.

      b.      Where the issue of the proper jurisdiction of either Court to determine an
issue is raised by an interested party in either of the Insolvency
Proceedings with respect to a motion or application filed in either Court,
the Court before which such motion or application was initially filed may
contact the other Court to determine an appropriate process by which the
issue of jurisdiction will be determined; which process shall be subject to
submissions by the Debtors, the Creditors Committee, the Monitor, the
Bondholders Committee (collectively the "Core Parties"), the U.S. Trustee
and any interested party prior to a determination on the issue of
jurisdiction being made by either Court.

      c.      The Courts may, but are not obligated to, coordinate activities in the
Insolvency Proceedings such that the subject matter of any particular
action, suit, request, application, contested matter or other proceeding is
determined in a single Court.

      d.      The U.S. Court and the Canadian Court may conduct joint hearings (each
a "Joint Hearing") with respect to any cross-border matter or the
interpretation or implementation of this Protocol where both the U.S.
Court and the Canadian Court consider such a Joint Hearing to be
necessary or advisable, or as otherwise provided herein, to, among other
things, facilitate or coordinate proper and efficient conduct of the
Insolvency Proceedings or the resolution of any particular issue in the
Insolvency Proceedings. With respect to any Joint Hearing, unless
otherwise ordered, the following procedures will be followed:

7

(i)     A telephone or video link shall be established so that both the U.S.
        Court and the Canadian Court shall be able to simultaneously hear
        and/or view the proceedings in the other Court.

(ii)    Submissions or applications by any party that are or become the
        subject of a Joint Hearing (collectively, "Pleadings") shall be made
        or filed initially only to the Court in which such party is appearing
        and seeking relief.  Promptly after the scheduling of any Joint
        Hearing, the party submitting such Pleadings to one Court shall file
        courtesy copies with the other Court.  In any event, Pleadings
        seeking relief from both Courts shall be filed in advance of the
        Joint Hearing with both Courts.

(iii)   Any party intending to rely on any written evidentiary materials in
        support of a submission to the U.S. Court or the Canadian Court in
        connection with any Joint Hearing (collectively, "Evidentiary
        Materials") shall file or otherwise submit such materials to both
        Courts in advance of the Joint Hearing.  To the fullest extent
        possible, the Evidentiary Materials filed in each Court shall be
        identical and shall be consistent with the procedural and
        evidentiary rules and requirements of each Court.

(iv)    If a party has not previously appeared in or attorned or does not
        wish to attorn to the jurisdiction of a Court, it shall be entitled to
        file Pleadings or Evidentiary Materials in connection with the Joint
        Hearing without, by the mere act of such filings, being deemed to
        have appeared in or attorned to the jurisdiction of such Court in
        which such material is filed, so long as such party does not request
        any affirmative relief from such Court.

(v)     The Judge of the U.S. Court and the Justice of the Canadian Court
        who will preside over the Joint Hearing shall be entitled to
        communicate with each other in advance of any Joint Hearing,
        with or without counsel being present, (1) to establish guidelines
        for the orderly submission of Pleadings, Evidentiary Materials and
        other papers and for the rendering of decisions by the Courts; and
        (2) to address any related procedural, administrative or preliminary
        matters.

(vi)    The Judge of the U.S. Court and the Justice of the Canadian Court,
        shall be entitled to communicate with each other during or after
        any joint hearing, with or without counsel present, for the purposes
        of (1) determining whether consistent rulings can be made by both
        Courts; (2) coordinating the terms upon of the Courts' respective
        rulings; and (3) addressing any other procedural or administrative
        matters.

8



13.     Notwithstanding the terms of the paragraph 12 above, this Protocol recognizes that the U.S. Court and the Canadian Court are independent courts. Accordingly, although the Courts will seek to cooperate and coordinate with each other in good faith, each of the Courts shall be entitled at all times to exercise its independent jurisdiction and authority with respect to: (a) the conduct of the parties appearing in matters presented to such Court; and (b) matters presented to such Court, including, without limitation, the right to determine if matters are properly before such Court.

14.     Where one Court has jurisdiction over a matter which requires the application of the law of the jurisdiction of the other Court, such Court may, without limitation, hear expert evidence of such law or, subject to paragraph 15 herein, seek the written advice and direction of the other Court which advice may in the discretion of the receiving Court, be made available to parties in interest.

15.     Notwithstanding anything to the contrary herein contained, to the extent any motion is filed or relief is sought (collectively, "Requested Relief") in either Court relating to: (i) the proposed sale of assets for gross proceeds in excess of U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (ii) any motion to allocate sale proceeds which are in the aggregate more than U.S. $30 million and where at least one U.S. Debtor and one Canadian Debtor are parties to the related sale agreement or that involves assets owned by at least one U.S. Debtor and one Canadian Debtor; (iii) matters relating to the advanced pricing agreement involving both the United States and Canadian taxing authorities; (iv) matters regarding transfer pricing methodology relating to an obligation for the transfer of goods and services between one or more U.S. Debtors and one or more Canadian

9

Debtors; (v) any matter relating to alleged fraudulent conveyance or preference claims in excess of U.S. \$30 million and which may have a material impact on both one or more U.S. Debtors and one or more Canadian Debtors; (vi) matters relating to any proposal or approval of a disclosure statement, information circular, plan of reorganization or plan of compromise and arrangements in either the U.S. Proceedings or the Canadian Proceedings; (vii) any motion to appoint a Trustee or Examiner in the U.S. Proceedings, any motion to convert the U.S. Proceedings to a Chapter 7 proceeding, any motion to appoint a Receiver in the Canadian Proceedings, or any motion to convert the Canadian Proceedings to a bankruptcy or proposal proceeding under the Bankruptcy and Insolvency Act (Canada); (viii) any motion to substantively consolidate the Debtors' estates; (ix) matters impacting the material tax attributes of the U.S. Debtors, including the net operating losses of the U.S. Debtors in any prior fiscal year; (x) any motion to amend the terms of any of the Debtors' registered pension plans the effect of which would increase the liability of any Debtor thereunder; (xi) any motion to assume, ratify, reject, repudiate, modify or assign executory contracts having a material impact on the assets, operations, obligations, rights, property or business of both the U.S. and Canadian estates and accounting for annual gross revenue in excess of U.S. \$30 million ("Material Contracts"); (xii) any motion seeking relief from the automatic stay in the U.S. Proceedings and/or the stay of proceedings in the Canadian Proceedings (1) involving any Material Contract or (2) to pursue actions having a material impact on the assets, operations, obligations, rights, property or business of at least one U.S. Debtor and one Canadian Debtor and involving damages in excess of U.S. \$30 million; (xiii) any motion seeking to create or extend any program, plan, proposal or scheme relating to or authorizing payments to employees where the consideration relates to non-ordinary course incentive performance, retention, severance, termination or such like payments; and (xiv) any

10

motion regarding any program, plan proposal, scheme or similar course of action related to the

wind-down of one or more of the Debtors' businesses;

Then the following procedures shall be followed:

a.   unless otherwise consented to by the Core Parties, any and all documents, other than any Monitor's report related to the Requested Relief, shall be filed (as applicable) and served on the Core Parties on not less than seven days notice prior to the proposed hearing date for such Requested Relief in the Court of the forum country where the party seeking the Requested Relief intends the Requested Relief to be heard; *provided, however*, that to the extent the Requested Relief is necessary to avoid irreparable harm to the Debtors and/or the Debtors' bankruptcy estates, as may be determined by the Court of the forum country where the Requested Relief is being sought or such Court otherwise determines, such documents related to the Requested Relief shall be served on the Core Parties on such reasonable notice as such Court may determine;

b.   upon notice of such Requested Relief being provided to the Core Parties, each of the Core Parties will have not less than two business days from receipt of such notice (or such shorter period as the Court of the forum country where the Requested Relief is being sought shall determine, as set forth in paragraph 15(a) herein) to request, in writing, that the filing party seek a Joint Hearing for the Requested Relief;

c.   if the filing party agrees to seek a Joint Hearing, the Requested Relief shall be heard at a Joint Hearing conducted by the Courts in accordance with the procedures set forth in paragraph 12 herein; and

d.   if the filing party does not agree to seek a Joint Hearing, the party seeking to have the Requested Relief heard at a Joint Hearing may file a notice of Joint Hearing dispute in both the Court of the forum country and the Court of the non-forum country and serve notice thereof on the remaining Core Parties, whereupon the respective Courts of the forum country and the non-forum country may consult with one another in accordance with paragraphs 6 and 12 hereof, in order to determine whether a Joint Hearing is necessary or may otherwise consult with the Core Parties prior to any party proceeding with the underlying Requested Relief in the original proposed forum country.

## E.   Recognition of Stays of Proceedings

16.   The Canadian Court hereby recognizes the validity of the stay of

proceedings and actions against the U.S. Debtors and their property under section 362 of the

11

Bankruptcy Code (the "U.S. Stay"). In implementing the terms of this paragraph, the Canadian

Court may consult with the U.S. Court regarding: (i) the interpretation, extent, scope and

applicability of the U.S. Stay and any orders of the U.S. Court modifying or granting relief from

the U.S. Stay; and (ii) the enforcement of the U.S. Stay in Canada.

    17. The U.S. Court hereby recognizes the validity of the stay of proceedings

and actions against the Canadian Debtors and their property under the Canadian Order (the

"Canadian Stay"). In implementing the terms of this paragraph, the U.S. Court may consult with

the Canadian Court regarding: (i) the interpretation, extent, scope and applicability of the

Canadian Stay and any orders of the Canadian Court modifying or granting relief from the

Canadian Stay; and (ii) the enforcement of the Canadian Stay in the United States.

    18. Nothing contained herein shall affect or limit the Debtors' or other

parties' rights to assert the applicability or nonapplicability of the U.S. Stay or the Canadian Stay

to any particular proceeding, property, asset, activity or other matter, wherever pending or

located. Subject to paragraph 15, herein, motions brought respecting the application of the stay

of proceedings with respect to assets or operations of the Canadian Debtors shall be heard and

determined by the Canadian Court. Subject to paragraph 15 herein, motions brought respecting

the application of the stay of proceedings with respect to assets or operations of the U.S. Debtors

shall be heard and determined by the U.S. Court.

**F.**  **Rights to Appear and Be Heard**

    19. The Debtors, the Core Parties, and any other committee that may be

appointed by the U.S. Trustee, and the professionals and advisors for each of the foregoing, shall

have the right and standing: (i) to appear and to be heard in either the U.S. Court or Canadian

Court in the U.S. Proceedings or Canadian Proceedings, respectively, to the same extent as

creditors and other interested parties domiciled in the forum country, subject to any local rules or

12

regulations generally applicable to all parties appearing in the forum; and (ii) to file notices of

appearance or other papers with the clerk of the U.S. Court or the Canadian Court in respect of

the U.S. Proceedings or Canadian Proceedings, respectively; provided, however, that any

appearance or filing may subject a creditor or interested party to the jurisdiction of the Court in

which the appearance or filing occurs; provided further, that an appearance by the Creditors

Committee in the Canadian Proceedings shall not form a basis for personal jurisdiction in

Canada over the members of the Creditors Committee.  Notwithstanding the foregoing, and in

accordance with the policies set forth above, including, inter alia, paragraph 12 above; (i) the

Canadian Court shall have jurisdiction over the Chapter 11 Representatives (as defined below)

solely with respect to the particular matters as to which the Chapter 11 Representatives appear

before the Canadian Court; and (ii) the U.S. Court shall have jurisdiction over the Canadian

Representatives (as defined below) solely with respect to the particular matters as to which the

Canadian Representatives appear before the U.S. Court.

         20.     In connection with any matter in the Canadian Proceedings in which the

Creditors Committee seeks to become involved and which would otherwise require the Creditors

Committee to execute a confidentiality agreement, the Creditors Committee, its individual

members and professionals shall not be required to execute confidentiality agreements but

instead the Creditors Committee and its members shall be bound by the confidentiality

provisions contained in the Creditors Committee bylaws, and the Creditors Committee's

professionals shall be bound by the terms of the confidentiality agreement with the Debtors dated

February 2, 2009.

**G.**    **Claims Protocol**

         21.     The Debtors anticipate that it will be necessary to implement a specific

claims protocol to address, among other things and without limitation, the timing, process,

13



jurisdiction and applicable governing law to be applied to the resolution of intercompany claims filed by the Debtors' creditors in the Canadian Proceedings and the U.S. Proceedings. In such event, and in recognition of the inherent complexities of the inter-company claims that may be asserted in the Insolvency Proceedings, the Debtors shall use commercially reasonable efforts to negotiate a specific claims protocol, in form and substance satisfactory to the Debtors, the Monitor, and the Creditors Committee, which protocol shall be submitted to the Canadian Court and the U.S. Court for approval. In the event that the Debtors fail to reach agreement among such parties, the Debtors shall file a motion in both the Canadian Court and the U.S. Court seeking approval of such claims protocol as the Debtors shall determine to be in the best interest of the Debtors and their creditors.

**H.    Retention and Compensation of Estate Representative and Professionals**

22.    The Monitor, its officers, directors, employees, counsel and agents, wherever located, (collectively the "Monitor Parties") and any other estate representatives appointed in the Canadian Proceedings (collectively, the "Canadian Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the Canadian Court with respect to all matters, including: (a) the Canadian Representatives' tenure in office; (b) the retention and compensation of the Canadian Representatives; (c) the Canadian Representatives' liability, if any, to any person or entity, including the Canadian Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Canadian Representatives arising in the Canadian Proceedings under the CCAA or other applicable Canadian law. The Canadian Representatives shall not be required to seek approval of their retention in the U.S. Court for services rendered to the Debtors. Additionally, the Canadian Representatives: (a) shall be compensated for their services to the Canadian Debtors solely in accordance with the CCAA, the Canadian Order and other applicable

14

Canadian law or orders of the Canadian Court; and (b) shall not be required to seek approval of their compensation in the U.S Court.

23.    The Monitor Parties shall be entitled to the same protections and immunities in the United States as those granted to them under the CCAA and the Canadian Order.  In particular, except as otherwise provided in any subsequent order entered in the Canadian Proceedings, the Monitor Parties shall incur no liability or obligations as a result of the Canadian Order, the appointment of the Monitor, the carrying out of its duties or the provisions of the CCAA and the Canadian Order by the Monitor Parties, except any such liability arising from actions of the Monitor Parties constituting gross negligence or willful misconduct.

24.    Any estate representative appointed in the U.S. Proceedings, including without limitation any examiners or trustees appointed in accordance with section 1104 of the Bankruptcy Code (collectively, the "Chapter 11 Representatives") shall (subject to paragraph 19) be subject to the sole and exclusive jurisdiction of the U.S. Court with respect to all matters, including:  (a) the Chapter 11 Representatives' tenure in office; (b) the retention and compensation of the Chapter 11 Representatives; (c) the Chapter 11 Representatives' liability, if any, to any person or entity, including the U.S. Debtors and any third parties, in connection with the Insolvency Proceedings; and (d) the hearing and determination of any other matters relating to the Chapter 11 Representatives arising in the U.S. Proceedings under the Bankruptcy Code or other applicable laws of the United States.  The Chapter 11 Representatives shall not be required to seek approval of their retention in the Canadian Court and (a) shall be compensated for their services to the U.S. Debtors solely in accordance with the Bankruptcy Code and other applicable laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek

15

102

approval of their compensation for services performed for the U.S. Debtors in the Canadian

Court.

　　　　　25.　　　Any professionals (i) retained by and being compensated solely by, or (ii)

being compensated solely by, the Canadian Debtors including in each case, without limitation,

counsel and financial advisors (collectively, the "Canadian Professionals"), shall be subject to

the sole and exclusive jurisdiction of the Canadian Court. Such Canadian Professionals: (a)

shall be subject to the procedures and standards for retention and compensation applicable in the

Canadian Court under the CCAA, the Canadian Order and any other applicable Canadian law or

orders of the Canadian Court with respect to services performed on behalf of the Canadian

Debtors; and (b) shall not be required to seek approval of their retention or compensation in the

U.S. Court.

　　　　　26.　　　Any professionals (i) retained by, or (ii) being compensated by, the U.S.

Debtors including in each case, without limitation, counsel and financial advisors (collectively,

the "U.S. Professionals") shall be subject to the sole and exclusive jurisdiction of the U.S. Court.

Such U.S. Professionals: (a) shall be subject to the procedures and standards for retention and

compensation applicable in the U.S. Court under the Bankruptcy Code and any other applicable

laws of the United States or orders of the U.S. Court; and (b) shall not be required to seek

approval of their retention or compensation in the Canadian Court.

　　　　　27.　　　Subject to paragraph 19 herein, any professional retained by the Creditors

Committee, including in each case, without limitation, counsel and financial advisors

(collectively, the "Committee Professionals") shall be subject to the sole and exclusive

jurisdiction of the U.S. Court. Such Committee Professionals: (a) shall be subject to the

procedures and standards for retention and compensation applicable in the U.S. Court under the

16

Bankruptcy Code and any other applicable laws of the United States or orders of the U.S. Court;

and (b) shall not be required to seek approval of their retention or compensation in the Canadian

Court or any other court.

## I.    Notice

28.    Notice of any motion, application or other Pleading or paper (collectively

the "Court Documents") filed in one or both of the Insolvency Proceedings involving or relating

to matters addressed by this Protocol and notice of any related hearings or other proceedings

shall be given by appropriate means (including, where circumstances warrant, by courier,

telecopier or other electronic forms of communication) to the following:  (a) all creditors and

interested parties, in accordance with the practice of the jurisdiction where the papers are filed or

the proceedings are to occur; and (b) to the extent not otherwise entitled to receive notice under

clause (a) of this sentence, counsel to the Debtors; the U.S. Trustee; the Monitor; the Creditors

Committee; the Bondholders Committee and any other statutory committees appointed in the

Insolvency Proceedings and such other parties as may be designated by either of the Courts from

time to time.  Notice in accordance with this paragraph shall be given by the party otherwise

responsible for effecting notice in the jurisdiction where the underlying papers are filed or the

proceedings are to occur.  In addition to the foregoing, upon request, the U.S. Debtors or the

Canadian Debtors shall provide the U.S. Court or the Canadian Court, as the case may be, with

copies of any orders, decisions, opinions or similar papers issued by the other Court in the

Insolvency Proceedings.

29.    When any cross-border issues or matters addressed by this Protocol are to

be addressed before a Court, notices shall be provided in the manner and to the parties referred to

in paragraph 28 above.

17

J.    **Effectiveness; Modification**

30.    This Protocol shall become effective only upon its approval by both the U.S. Court and the Canadian Court.

31.    This Protocol may not be supplemented, modified, terminated, or replaced in any manner except upon the approval of both the U.S. Court and the Canadian Court after notice and a hearing. Notice of any legal proceeding to supplement, modify, terminate or replace this Protocol shall be given in accordance with the notice provisions set forth above.

K.    **Procedure for Resolving Disputes Under this Protocol**

32.    Disputes relating to the terms, intent or application of this Protocol may be addressed by interested parties to the U.S. Court, the Canadian Court or both Courts upon notice in accordance with the notice provisions outlined in paragraph 28 above. In rendering a determination in any such dispute, the Court to which the issue is addressed: (a) shall consult with the other Court; and (b) may, in its sole and exclusive discretion, either: (i) render a binding decision after such consultation; (ii) defer to the determination of the other Court by transferring the matter, in whole or in part, to such other Court; or (iii) seek a Joint Hearing of both Courts in accordance with paragraph 12 above. Notwithstanding the foregoing, in making a determination under this paragraph, each Court shall give due consideration to the independence, comity and inherent jurisdiction of the other Court established under existing law.

33.    In implementing the terms of this Protocol, the U.S. Court and the Canadian Court may, in their sole, respective discretion, provide advice or guidance to each other with respect to legal issues in accordance with the following procedures:

     a.    the U.S. Court or the Canadian Court, as applicable, may determine that such advice or guidance is appropriate under the circumstances;

     b.    the Court issuing such advice or guidance shall provide it to the non-issuing Court in writing;

18



c.   copies of such written advice or guidance shall be served by the applicable Court in accordance with paragraph 28 hereof;

d.   the Courts may jointly decide to invite the Debtors, the Creditors Committee, the Estate Representatives, the U.S. Trustee and any other affected or interested party to make submissions to the appropriate Court in response to or in connection with any written advice or guidance received from the other Court; and

e.   for clarity, the provisions of this paragraph shall not be construed to restrict the ability of either Court to confer as provided in paragraph 12 above whenever it deems it appropriate to do so.

**L.    Preservation of Rights**

34.    Except as specifically provided herein, neither the terms of this Protocol nor any actions taken under the terms of this Protocol shall:  (a) prejudice or affect the powers, rights, claims and defenses of the Debtors and their estates, the Creditors Committee, the Estate Representatives, the U.S. Trustee or any of the Debtors' creditors under applicable law, including, without limitation, the Bankruptcy Code the CCAA, and the orders of the Courts; or (b) preclude or prejudice the rights of any person to assert or pursue such person's substantive rights against any other person under the applicable laws of Canada or the United States.

19

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

| | |
|---|---|
| | *ONTARIO*<br>**SUPERIOR COURT OF JUSTICE**<br>**(COMMERCIAL LIST)**<br><br>Proceeding commenced at Toronto |
| | **THIRD AMENDED AND RESTATED<br>INITIAL ORDER** |
| | **OGILVY RENAULT LLP**<br>Suite 3800<br>Royal Bank Plaza, South Tower<br>200 Bay Street<br>P.O. Box 84<br>Toronto, Ontario M5J 2Z4, Canada<br><br>**Derrick Tay LSUC#: 21152A**<br>Tel: (416) 216-4832<br>Email: dtay@ogilvyrenault.com<br><br>**Mario Forte LSUC#: 27293F**<br>Tel: (416) 216-4870<br>Email: mforte@ogilvyrenault.com<br><br>**Jennifer Stam LSUC #467335J**<br>Tel: (416) 216-2327<br>Email: jstam@ogilvyrenault.com<br>Fax: (416) 216-3930<br>Lawyers for the Applicants |

**TAB 4**



Court File No.:  09-CL-7950

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 31ST |
| | ) | |
| JUSTICE MORAWETZ | ) | DAY OF MARCH, 2010 |

### IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND NORTEL NETWORKS TECHNOLOGY CORPORATION

### APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

### ORDER

**THIS MOTION**, made by Nortel Networks Corporation, Nortel Networks Limited ("NNL"), Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation (collectively, the "Applicants") for the relief set out in the Applicants' notice of motion dated March 18, 2010 was heard this day at 393 University Avenue, Toronto, Ontario.



**ON READING** the affidavit of Paviter Binning sworn March 18, 2010 (the "Binning Affidavit") and the forty-first report of Ernst & Young Inc. dated March ●, 2010 (the "Forty-First Report") in its capacity as monitor (the "Monitor") and on hearing submissions of counsel for the Applicants, the Monitor and those other parties present,  no one appearing for any other person on the service list, although served as appears from the Affidavit of Service of ● sworn March ●, 2010, filed.

1.      **THIS COURT ORDERS** that the time for the service of the Notice of Motion, the Forty-First Report and the Motion Record is hereby abridged so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Binning Affidavit.

3.      **THIS COURT ORDERS** that the trust indenture agreement dated as of March 10, 2010 (the "Indenture") among NNL, Nortel Networks Inc. ("NNI") and John T. Evans be and is hereby approved and NNL is hereby authorized and directed to comply with its obligations thereunder.

4.      **THIS COURT ORDERS** that the side agreement between NNL and NNI dated as of March 10, 2010 (the "Side Agreement") be and is hereby approved and NNL is hereby authorized and directed to comply with its obligations thereunder.

5.      **THIS COURT ORDERS** that paragraph 21 of the Initial Order be and is hereby deleted in its entirety and replaced with the following:

> "21.     THIS COURT ORDERS that the directors and officers of the Applicants shall be entitled to the benefit of and are hereby granted a charge (the "Directors' Charge") on the Property, which charge shall not exceed an aggregate amount of CDN $45 million, as security for the indemnities provided in paragraph 20 of this Order as well as for fees and disbursements of their legal counsel.  The Directors' Charge shall have the priority set out in paragraphs 42 and 44 herein."



6.    **THIS COURT ORDERS** that the following paragraph 21A be and is hereby added to the Initial Order:

> "21A.    THIS COURT ORDERS that, to the extent that any one or more of proven Claims (as defined below), together with the fees and disbursements of legal counsel to the directors and officers of the Applicants, individually or in the aggregate, exceed the amount of CDN $45 million, each such proven Claim against such directors and officers shall be reduced *pro rata* so that the aggregate of all such proven Claims, together with the fees and disbursements of legal counsel to such directors and officers, shall not exceed the amount of CDN $45 million and such excess amounts of all such proven Claims and any other Claims are hereby and shall be forever barred, disallowed, enjoined, released, discharged and extinguished as against the directors and officers of the Applicants. Provided, however, that nothing in this paragraph 21A shall operate to release any director or officer of an Applicant in respect of such excess amount of any such Claim where, in respect of such Claim, such director or officer has actively participated in the breach of any related fiduciary duties or has been grossly negligent or guilty of wilful misconduct.
>
> In this paragraph 21A, "Claim" shall mean any claim (contingent, liquidated or unliquidated, proven or unproven, known or unknown) or any legal proceeding or action of any nature or kind, in these proceedings or any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever, against one or more of the directors or officers of any one or more of the Applicants relating to the failure of any of the Applicants to make payments of the nature referred to in subparagraphs 6(a), 6(b), 8(a), 8(b) and 8(c) of this Order or the Applicants' failure to make payments in respect of employer health tax or workers' compensation, which are or may be directly or indirectly advanced, asserted, re-asserted, refiled or made by any person, governmental or regulatory authority or other entity against one or more of the directors or officers of any one or more of the Applicants, to the extent that such Claim is not covered under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 20 of this Order."

7.    **THIS COURT ORDERS** that confidential appendix "C" to the Forty-First Report be and is hereby sealed pending further Order of this Court.

8.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States, the United Kingdom or elsewhere, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order.  All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be



- 4 -

necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

9.     **THIS COURT ORDERS** that each of the Applicants and the Monitor be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

_____

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**ORDER**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4, Canada

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930
Lawyers for the Applicants

Court File No: 09-CL-7950

IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL
NETWORKS CORPORATION, NORTEL NETWORKS LIMITED, NORTEL NETWORKS
GLOBAL CORPORATION, NORTEL NETWORKS INTERNATIONAL CORPORATION AND
NORTEL NETWORKS TECHNOLOGY CORPORATION

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**MOTION RECORD**
**(returnable March 31, 2010)**

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
P.O. Box 84
Toronto, Ontario  M5J 2Z4

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants