IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
                                                          :
                                                          :    Chapter 11
*In re*                                                   :
                                                          :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*, [1]                       :
                                                          :    Jointly Administered
                    Debtors.                              :
                                                          :    Hearing Date: April 14, 2010 at 10:00 a.m.
                                                          :    Objection Deadline: April 7, 2010 at 4:00 p.m.
----------------------------------------------------------X


**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b)
FOR AN ORDER (A) AUTHORIZING THE DEBTORS
TO ACCEPT THE METRO ETHERNET NETWORKS
ARGENTINA SIDE OFFER AND (B) GRANTING RELATED RELIEF**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, authorizing the Debtors to accept that certain offer made by Nortel Networks de Argentina S.A. ("Nortel Argentina"), attached hereto as Exhibit B (the "Argentina Side Offer"), to Nortel Networks Limited ("NNL"), Nortel Networks International Corporation ("NNIC"), NNI, the EMEA Sellers (as defined in the Argentina Side Offer), the EMEA LTA Sellers (as defined in the Argentina Side Offer), the Joint Administrators and the Joint Israeli Administrators (as each is defined below) (collectively, with Nortel Argentina, the "Parties") addressing the sale of certain Argentine assets related to the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Metro Ethernet Networks business; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (as defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates

(collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

       7.     On the Petition Date, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

       8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently

---

[2]    The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and NNIC.

[3]    The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On February 26, 2010, the French Court extended the suspension of liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter from Kapsch CarrierCom AG stating that its bid for the GSM/GSM-R assets of NNSA has become unconditional. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

        9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain

---

[4]     Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

of the Canadian Debtors has also been organized (the "<u>Bondholder Group</u>").  No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "<u>CALA Petition Date</u>"), Nortel Networks (CALA) Inc. ("<u>NN CALA</u>" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].

**B.     Debtors' Corporate Structure and Business**

11. Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "<u>First Day Declaration</u>").

**C.     Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539];

(ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; and (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070].  In addition, Nortel has obtained Court approval for the planned sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; as well as the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632].  Efforts continue to be made with respect to the monetization of Nortel's remaining assets.

       14.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009, this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

### Relief Requested

       15.    By this Motion, the Debtors respectfully request the entry of an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) authorizing the Debtors to accept the Argentina Side Offer and (b) granting related relief.

**Facts Relevant To This Motion**

**A.     The Interim Funding and Settlement Agreement**

16.     On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into that certain Interim Funding and Settlement Agreement (the "<u>IFSA</u>"),[5] dated as of June 9, 2009, governing certain intercompany matters, including the obligations of the parties to the IFSA to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "<u>Interim Sales Protocol</u>") for resolving disputes concerning the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in any such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.     Sale of Nortel's Metro Ethernet Networks Business**

17.     Nortel's Metro Ethernet Networks business (the "<u>MEN Business</u>") includes optical networking, carrier Ethernet switching and multiservice switching products, delivering carrier-grade Ethernet transport capabilities for higher performance and lower cost for

---

[5]     The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the IFSA. In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

emerging video-intensive applications. The MEN Business's optical networking portfolio includes the 40G Adaptive Optical Engine technology, which can quadruple network capacity while being deployable over any fiber, allowing service providers to reduce engineering and equipment expense and upgrade quickly and cost-effectively from 10G to 40G. The MEN Business also is in the process of developing the industry's first optical technology that can deliver both 40G and 100G network capacity, enabling four times the network throughput immediately, while providing the foundation to simply and affordably increase capacity tenfold as required.

18. On October 7, 2009, the Sellers (as defined in the Sale Agreement, as defined below) and certain of their affiliates entered into an Asset Sale Agreement for the sale of certain assets relating to the MEN Business by and among the Sellers, certain of their affiliates and Ciena Corporation ("Ciena"), subject to higher and better offers. The Debtors conducted a bidding and auction process in accordance with the procedures approved by this Court. At the conclusion of the auction that commenced on November 20, 2009, the final bid by Ciena (together with, and including, any Designated Purchaser (as defined in the Sale Agreement), the "Purchaser"), was selected as the highest and best bid. On November 24, 2009, the Sellers and the Purchaser entered into the Amended and Restated Asset Sale Agreement, as amended from time to time (the "Sale Agreement"), which this Court subsequently authorized and approved by order entered December 3, 2009 [D.I. 2070] (the "Sale Order"). The sale to Ciena closed on March 19, 2010.

19. As part of the transactions contemplated by the Sale Agreement, Nortel Argentina agreed to sell certain of its assets located in Argentina relating to the MEN Business to the Purchaser and the Purchaser agreed to purchase those assets and assume certain liabilities

relating to the MEN Business (the "Transferred Argentina Assets and Liabilities").  In furtherance of that transaction, on March 19, 2010, Nortel Argentina made a written offer to the Purchaser for the sale of the Transferred Argentina Assets and Liabilities (the "Argentina Asset Offer"), which the Debtors are informed was accepted by the Purchaser.

**C.    The Argentina Side Offer**

20.    The Sale Agreement, the Sale Order and a side agreement entered into among the Sellers and certain other parties that was approved by this Court by order dated March 3, 2010 [D.I. 2627], generally provide for the payment of an aggregate purchase price that is placed into escrow, subject to final allocation among the Sellers and other specified parties.[6]

21.    In furtherance of the larger sale transaction and in consideration of certain local law requirements, Nortel Argentina negotiated an agreement with NNL, NNI, NNIC, the EMEA Sellers,[7] the EMEA LTA Sellers, the Joint Administrators and the Joint Israeli Administrators to address the amount of sale proceeds to be allocated to Nortel Argentina in connection with the larger sale transaction.  This agreement is embodied in the Argentina Side Offer dated March 19, 2010, extended by Nortel Argentina to its above listed affiliates.  The Argentina Side Offer provides, among other things, NNL, NNI, the EMEA Sellers and the EMEA LTA Sellers would pay the difference between the consideration that Nortel Argentina must receive in consideration for the Transferred Argentina Assets and Liabilities under the applicable laws and accounting principles applicable to Nortel Argentina (the "Required Purchase Price"), and the consideration allocated to Nortel Argentina in accordance with the

---

[6]    The description of these documents and the allocation process are provided for background only and are qualified in their entirety by the terms of the documents.

[7]    Capitalized terms used but not defined in this Motion have the meanings ascribed to them in the Argentina Side Offer.  To the extent that there are inconsistencies between the description of the provisions of the Argentina Side Offer contained in this Motion and the terms and conditions of the Argentina Side Offer, the terms of the Argentina Side Offer shall control.

terms of the IFSA (the "Allocated Purchase Price"). To the extent the Required Purchase is greater than the Allocated Purchase Price, NNL, NNI, the EMEA Sellers and the EMEA LTA Sellers would pay the difference between the two amounts, less transaction costs (the "Adjustment Amount").

  22. The main terms of the Argentina Side Offer are as follows:

- Payment of the Adjustment Amount: Each selling party shall pay its pro rata share of the Adjustment Amount based on the proportion of the Sale Proceeds allocated to such party (in the case of NNL and NNI, this pro rata share will be determined by taking into account Sale Proceeds allocated to the Canadian Debtors and the Debtors, respectively).

- Determination of the Required Purchase Price: To the extent required by Applicable Procedures, the Required Purchase Price will be determined by a transfer pricing study performed by the Buenos Aires office of an independent internationally recognized accounting firm retained at the expense of Nortel Argentina and with the approval of NNL, NNI, NNUK, the Monitor, the Committee and the Bondholder Group (the "Relevant Parties"). If one of Relevant Parties objects to the valuation performed within thirty (30) days of the receipt of the transfer pricing report, Nortel Argentina will retain one (1) additional internationally recognized accounting firm at the expense of the Relevant Selling Parties and the Required Purchase Price will be the average of the valuations of the two accounting firms.

- Corresponding Deduction in Sale Proceeds: Any payment made by any Relevant Selling Party of its portion of the Adjustment Amount will be considered to be a corresponding deduction in the amount of Sale Proceeds allocated to such Relevant Selling Party for the sale of the MEN Business.

- Distribution of Dividends: In the event that subsequent to the payment of the Adjustment Amount, Nortel Argentina makes one or more dividend payments, distributions or other payments to NNL or NNIC in their respective capacity as shareholders of Nortel Argentina ("Distributed Amounts"), NNL and NNIC agree to pay to each Relevant Selling Party (other than NNL) such Party's Agreed Respective Percentage of the after-tax amounts of the Distributed Amounts. The payments made to each Relevant Selling Party (other than NNL) of the Distributed Amounts shall not in the aggregate exceed the portion of the Adjustment Amount by each such Relevant Selling Party to Nortel Argentina.

**Basis for Relief**

23.    The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code.  Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.  See In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (citing In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

24.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing.  11 U.S.C. § 363.  Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction.  Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

25.    The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Indus., Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008).  A court determining whether a sound business purpose justifies the

transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward</u>, 242 B.R. at 153-54 (quoting <u>In re Lionel</u>, 722 F.2d at 1071).  In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange.  See <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. at 176; <u>In re Decora Indus., Inc.</u>, 2002 WL 32332749, at *2.

26. The Debtors respectfully submit that this Court should authorize the Debtors to accept the Argentina Side Offer because the Argentina Side Offer meets each of the requirements under section 363 of the Bankruptcy Code.  The Argentina Side Offer was extended in furtherance of the sale transaction, and furthers the smooth completion of the sale. By accepting the Argentina Side Offer, the Debtors and their affiliates will permit Nortel Argentina to comply with applicable laws in participating in the sale.  Moreover, the costs of the Argentina Side Offer are proposed to be borne by the various affiliates in proportion to the relative benefits they derive from the sale.  Accordingly, the proposed acceptance of the Argentina Side Offer is supported by sound business purpose.

### Notice

27. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser; (ii) U.S. Trustee; (iii) Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) Department of Justice; (vii) counsel to the Joint Administrators; and (viii) general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

28.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated:  March 24, 2010<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (admitted *pro hac vice*)<br>Lisa M. Schweitzer (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone:  (212) 225-2000<br>Facsimile:  (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>__*/s/ Alissa T. Gazze*_____<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Alissa T. Gazze (No. 5338)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone:  (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors*<br>*and Debtors in Possession* |