**Exhibit 1 – Stipulation**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- X
                                          :
In re                                     :     Chapter 11
                                          :
Nortel Networks Inc., et al.,¹            :     Case No. 09-10138 (KG)
                                          :
                        Debtors.          :     Jointly Administered
                                          :
                                          :
--------------------------------------------------------X
```

## STIPULATION AMONG THE DEBTORS,
## CERTAIN AFFILIATES AND PENSION BENEFIT GUARANTY CORPORATION

WHEREAS, Nortel Networks Inc. ("NNI") and its affiliated debtors and debtors

in possession in the above-captioned cases (the "Debtors") commenced chapter 11 proceedings

by filing voluntary petitions on January 14, 2009 and July 14, 2009 (in the case of Nortel

Networks (CALA) Inc.); and

WHEREAS, NNI sponsored the Nortel Networks Retirement Income Plan (the

"Pension Plan"), a defined benefit pension plan which is intended to be qualified under Section

401(a) of the Internal Revenue Code of 1986 (as amended, the "Code"); and

WHEREAS, the Pension Plan was terminated under section 4042(c) of ERISA,

effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty

Corporation (the "PBGC," and together with the Main Sellers (as defined below), the "Parties")

and the Retirement Plan Committee of the Pension Plan, which agreement also appointed the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

PBGC trustee of the Pension Plan under section 4042(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

WHEREAS, NNI, along with Nortel Networks Corporation and Nortel Networks Limited (collectively, the "Main Sellers") have executed an amended and restated asset sale agreement with Telefonaktiebolaget L M Ericsson (publ) ("Ericsson") dated November 24, 2009 (as it may be amended from time to time, and including all Ancillary Agreements (as defined therein) the "Asset Sale Agreement") for the sale of certain assets of the Debtors' GSM/GSM-R Business (collectively, the "GSM Business Assets"); and

WHEREAS, the Asset Sale Agreement requires the transfer of the GSM Business Assets free and clear of all liens and claims, other than certain enumerated permitted encumbrances;

WHEREAS, on December 3, 2009, this Court entered an Order Authorizing and Approving Sale of Debtors' GSM/GSM-R Free and Clear of All Liens, Claims and Encumbrances [D.I. 2065] (the "Sale Order");

WHEREAS, the Sale Order applies only to assets owned by the Debtors and does not apply to assets owned by non-debtor entities;

WHEREAS, certain of the assets to be conveyed pursuant to the Asset Sale Agreement are owned or otherwise held by Nortel Networks de Mexico S.A. de C.V., Nortel Networks (Asia) Limited, and Nortel Networks (China) Limited, (collectively, the "Foreign Non-Debtors") which are non-debtor subsidiaries and affiliates of the Debtors (collectively, the "Foreign Non-Debtor Assets");

WHEREAS, Section 4062 of ERISA provides for the imposition of certain claims and liens on the sponsor of a terminated pension plan and all members of the sponsor's controlled group for, inter alia, the underfunding of the pension plan and Section 4068 of ERISA

2

provides that a lien may arise against any person liable to the PBGC under Section 4062 (the "PBGC Lien");

WHEREAS, the Main Sellers do not concede the validity or applicability of the PBGC Lien on the Foreign Non-Debtor Assets but have concluded it is in the best interests of the Main Sellers and their affiliates to enter into this Stipulation in furtherance of the sale transaction.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, and in consideration of the foregoing, the Main Sellers and the PBGC hereby agree and stipulate as follows:

1. On the later of (i) the date of the Closing (as defined in the Asset Sale Agreement) and the Main Sellers' receipt of a payment of the purchase price specified in the Asset Sale Agreement, or (ii) the date of approval of the Stipulation by the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court") the Main Sellers shall pay the PBGC $100,000 in cash, out of such proceeds (the "Settlement Payment").

2. In consideration for and effective immediately upon its receipt of the Settlement Payment, the PBGC (a) consents to the sale of the Foreign Non-Debtor Assets; (b) agrees not to pursue or perfect, against the Sellers (as defined in the Asset Sale Agreement), the Foreign Non-Debtors, the Purchaser (as defined in the Asset Sale Agreement) or their respective parents, subsidiaries and affiliates, whether now or hereafter existing, any lien or claim with respect to the Pension Plan, whether arising before or after the date of this Stipulation, relating to the Foreign Non-Debtor Assets or any of the proceeds from the sale thereof; (c) forever waives its rights, covenants not to sue, releases, and discharges the Purchaser, their successors, assigns, subsidiaries (direct or indirect), joint ventures, and Affiliates (as defined in the Asset Sale

3

Agreement), and the respective current or future employees, agents, representatives, officers, directors, partners, members, governors, managers, and equityholders of any of the foregoing (collectively, the "Purchaser Third Party Beneficiaries") from any and all actions, causes of action, accounts, agreements, covenants, contracts, controversies, claims, damages, whether known or unknown, in law, admiralty or equity, which the PBGC may now have, ever has had or ever will have with respect to the Pension Plan relating to the sale of the Foreign Non-Debtor Assets (including the Foreign Non-Debtor Assets and the proceeds relating to the Foreign Non-Debtor Assets) or the Purchaser's purchase of the Foreign Non-Debtor Assets, including, without limitation, any liabilities imposed or that could be imposed under ERISA and the Code, which the PBGC may now have, ever has had or ever will have, from the beginning of the world, and (d) forever waives its rights, covenants not to sue, releases, and discharges the Sellers, its successors, assigns, subsidiaries (direct or indirect), joint ventures, and Affiliates (as defined in the Asset Sale Agreement), and the respective current or future employees, agents, representatives, officers, directors, partners, members, governors, managers, and equityholders of any of the foregoing (collectively, and together with the Purchaser Third Party Beneficiaries defined above, the "Third Party Beneficiaries") from any and all actions, causes of action, accounts, agreements, covenants, contracts, controversies, claims, damages, whether known or unknown, in law, admiralty or equity, which the PBGC may now have, ever has had or ever will have with respect to the Pension Plan relating to the sale of the Foreign Non-Debtor Assets (including the Foreign Non-Debtor Assets and the proceeds relating to the Foreign Non-Debtor Assets).

3. Notwithstanding any other provision contained herein to the contrary, the PBGC's rights to assert claims relating to the Pension Plan against the Debtors (but not against

4

the Purchaser, any Purchaser Third Party Beneficiary or any of their assets, including the assets

of the Debtor being sold to the Purchaser pursuant to the Asset Sale Agreement) and any claims

relating to breaches of fiduciary duty by any fiduciaries of the Pension Plan shall be expressly

preserved and the Debtors' (or fiduciaries') or any other party in interest's rights to object to any

such claims and/or assert any defenses or claims against the PBGC relating to the Pension Plan

are expressly preserved, provided, however, that the PBGC's recoveries on all of its claims with

respect to the Pension Plan shall not exceed the total amount of the liabilities imposed on all

liable parties by ERISA.

       4.  This Stipulation may be executed by facsimile, which shall have the same

effect as an original, and in two or more counterparts, each of which shall be deemed to be an

original, but all of which together shall constitute one and the same instrument.

       5.  This Stipulation shall be binding upon and inure to the benefit of the Parties

and each and all of their respective successors, assigns, heirs and personal representatives.  The

Parties hereto agree that the Foreign Non-Debtors and the Third Party Beneficiaries shall be third

party beneficiaries to this Stipulation and shall have all rights to enforce this Stipulation against

the Parties as if a party to this Stipulation.

       6.  Each of the undersigned represents that he or she is authorized to execute this

Stipulation on behalf of his or her respective clients.

       7.  It is acknowledged that each party has participated in, jointly consented to and

drafted this Stipulation and that any claimed ambiguity shall not be construed for or against

either party on account of such drafting.

       8.  This Stipulation shall be interpreted, construed and enforced in accordance

with the substantive laws of the State of New York, without regard to New York's principles of

conflicts of laws, to the extent not preempted by ERISA or other federal law. The Parties consent

to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation

during the pendency of the Debtors' chapter 11 cases and, thereafter, any action or proceeding to

interpret or enforce this Stipulation may be brought in a United States District Court having

jurisdiction over such matter.

> 9. This Stipulation is subject to approval of the Bankruptcy Court; <u>provided,</u>
<u>however</u>, that the Parties shall support such Bankruptcy Court approval and comply with this

Stipulation pending the Bankruptcy Court's entry of such an order approving or disapproving

this Stipulation.

> 10. Nothing in this Stipulation or any negotiations or proceedings in connection

herewith shall constitute or be deemed to be evidence of an admission by any party of any

liability or wrongdoing whatsoever, or the truth or untruth, merit or lack thereof, of any claim or

defense of any party. Neither this Stipulation nor any negotiations or proceedings in connection

herewith may be used in any proceeding against any party for any purpose whatsoever except

with respect to the effectuation and enforcement of this Stipulation. This matter has been settled

for convenience purposes only, is non-precedential and is without prejudice to the Parties' rights

and defenses with regard to any other asset sale transaction that has occurred or may occur in the

future.

> 11. This Stipulation contains the entire agreement of the Parties with respect to its

subject matter and supersedes any prior or contemporaneous oral or written agreements. The

Parties acknowledge that no promise, inducement or agreement not stated herein has been made

to them in connection with this Stipulation. The Parties understand and agree that this

Stipulation may not be altered, amended, modified or otherwise changed in any respect

whatsoever except by a writing duly executed by the Parties hereto. The Parties agree and acknowledge that they will make no claim at any time or place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

12. Notwithstanding anything else in this Stipulation to the contrary, the allocation of the cost of the Settlement Payment among the Main Sellers shall be governed by the terms and conditions of the Interim Funding and Settlement Agreement, dated as of June 9, 2009, or any side agreement or allocation protocol created in accordance therewith.

[The remainder of this page intentionally left blank.]

7

**Nortel Networks Inc.**

By: _____

Name:  Lynn Egan

Title:  Secretary

Date:

**Pension Benefit Guaranty Corporation**

By: _____

Name:  Terrence M. Deneen

Title:  Chief Insurance Program Officer

Date:

**Nortel Networks Corporation**

By: _____

Name:  John Doolittle

Title:  SVP, Corporate Services and CFO

Date:

By: _____

Name:  Clarke Glaspell

Title:  Controller

Date:

**Nortel Networks Limited**

By: _____

Name:  John Doolittle

Title:  SVP, Corporate Services and CFO

Date:

By: _____

Name:  Clarke Glaspell

Title:  Controller

Date:

8

**Nortel Networks Inc.**

By: _____
Name:   Lynn Egan
Title:   Secretary
Date:

**Pension Benefit Guaranty Corporation**

By: _____
Name:  Terrence M. Deneen
Title:  Chief Insurance Program Officer
Date:

**Nortel Networks Corporation**

By: _____
Name:  John Doolittle
Title:  SVP, Corporate Services and CFO
Date:                    March 24, 2010

By: _____
Name:  Clarke Glaspell
Title:  Controller
Date:   March 25, 2010

**Nortel Networks Limited**

By: _____
Name:  John Doolittle
Title:  SVP, Corporate Services and CFO
Date:                    March 24, 2010

By: _____
Name:  Clarke Glaspell
Title:  Controller
Date:   March 25, 2010

**Nortel Networks Inc.**

By: _____
Name:
Title:
Date:

**Nortel Networks Corporation**

By: _____
Name:
Title:
Date:

By: _____
Name:
Title:
Date:

**Nortel Networks Limited**

By: _____
Name:
Title:
Date:

By: _____
Name:
Title:
Date:

**Pension Benefit Guaranty Corporation**

By: _____
Name:  Terrence M. Deneen
Title:  Chief Insurance Program Officer
Date:  3/25/2010