IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

IN RE:                                  )
                                        )        No. 09-10138 (KG)
NORTEL NETWORKS INC. et al.,            )
                                        )        Chapter 11
                                        )
                        Debtors.        )

**UNITED STATES' RESPONSE TO DEBTORS' MOTION FOR ENTRY OF AN
ORDER PURSUANT TO 11 U.S.C. §§ 505 AND 105 DETERMINING CERTAIN TAX
LIABILITIES**

On June 29, 2009 Debtors were put on notice that they might need to invoke the

"open transaction" doctrine.   Debtors, on that date or at any point during the

intervening nine months, could have availed themselves of the opportunity that is

available to every taxpayer to achieve comfort that its tax position is correct—they could

have asked the Internal Revenue Service (the "Service") for a Private Letter Ruling.

Debtors did not do what other taxpayers would have done.   Instead, they are asking

this Court to issue a declaratory judgment that their theory is correct.

The Court, however, should not issue such an advisory opinion because there is

no case or controversy yet.   Debtors acknowledge that they have not filed a tax return.

The United States has made no assessment against Debtors for 2009.   The United States

has not filed a proof of claim in regard to 2009.   The United States may even ultimately

agree with Debtors' proposed position.   Simply put, there is no actual controversy for

the Court to adjudicate.

Debtors seek comfort that the advice of its tax counsel was correct.   This Court

1

5345563.1

has no jurisdiction to offer such comfort.   In fact, Debtors do not cite a single case holding that a § 505(a) proceeding is appropriate where no return was filed, no assessment was made, and no proof of claim was filed.   Furthermore, Congress did not authorize the courts to issue declaratory judgments in § 505(<u>a</u>).   Congress did provide for declaratory relief in 11 U.S.C. § 505(<u>b</u>) but required that Debtors file a tax return and give the Service 180 days to examine the return.   Debtors want the § 505(b) relief without the § 505(b) responsibilities.   The Court should not indulge them.

1. <u>**THE COURT LACKS JURISDICTION TO GRANT THE REQUESTED RELIEF**</u>

   **a.** *Debtors' Motion Does Not Satisfy the Case or Controversy Requirement in Article III of the Constitution*

Debtors' Motion does not satisfy the case or controversy requirement set forth in Article III of the United States Constitution and reiterated in the Declaratory Judgment Act.   Article III of the Constitution limits the judicial power of federal courts to adjudication of "cases" or "controversies." <u>See</u> U.S. Const. art. III, § 2, cl. 1; <u>see also</u> <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477 (1990) (under Article III federal courts may only adjudicate "actual, ongoing cases or controversies").[1]   This limitation is reemphasized in the Declaratory Judgment Act which only permits declaratory

---

[1]      The Supreme Court considers the constitutional limitation of federal-court jurisdiction to actual cases or controversies to be the most fundamental principle to the proper role of the judiciary in our system of government. <u>See</u> <u>Simon v. Eastern Kentucky Welfare Rights Organization</u>, 426 U.S. 26, 37 (1976).

5345563.1

judgments "[i]n a case of actual controversy." See 28 U.S.C. § 2201(a).[2] Given that there

is no present dispute regarding Debtors' potential tax liabilities, there is no case or

controversy as required by Article III and no actual controversy as required by the

Declaratory Judgment Act, and, consequently, the Motion must be dismissed for lack of

jurisdiction.

Part of the case or controversy limitation in Article III is the concept of standing,

which focuses on the party seeking to get its complaint before a federal court, not on the

issues it wishes to have adjudicated. Simon v. Eastern Kentucky Welfare Rights

Organization, 426 U.S. 26, 37-38 (1976).[3]  A party must demonstrate three elements to

establish Article III standing: (1) "injury in fact" meaning "a harm that is both 'concrete'

and 'actual or imminent, not conjectural or hypothetical'"; (2) "causation—a 'fairly . . .

trace[able]' connection between the alleged injury in fact and the alleged conduct of the

defendant"; and (3) "redressability".   Vermont Agency of Natural Resources v. United

States, 529 U.S. 765, 771 (2000). "These requirements together constitute the irreducible

constitutional minimum of standing, which is an essential and unchanging part of

---

[2]      It is well settled that the "actual controversy" limitation in the Declaratory
Judgment Act is the same as the Article III case or controversy requirement. See Aetna
Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937).

[3]      The related doctrines of standing, ripeness, and mootness, termed "justiciability
doctrines", were developed to elaborate on the case-or-controversy requirement in
Article III. See Allen v. Wright, 468 U.S. 737, 750 (1984); Warth v. Seldin; 422 U.S. 490,
499 n.10 (1975); National Treasury Employees Union v. United States, 101 F.3d 1423,
1427 (D.C. Cir. 1996).

5345563.1

Article III's case-or-controversy requirement." Id. (internal quotation marks and citation omitted).

The Debtors cannot point to any actual, imminent, non-hypothetical "injury in fact" at this time and only allege a hypothetical future harm: "*if* the U.S. Debtors' reliance on the open transaction doctrine is *later* determined to be inappropriate, the taxing authorities *could* take the position that the U.S. Debtors have failed to correctly report and pay their taxes, leading to the *potential attempted* imposition by the taxing authorities of substantial penalties and interest." Motion, ¶ 32 (emphasis added). Given the absence of a showing of actual injury, the Debtors lack standing to bring a motion seeking affirmation of their *intended* reporting position and a federal court's exercise of judicial power over the motion would be inconsistent with Article III's case or controversy limitation. See Eastern Kentucky, 426 U.S. at 38. Consequently, the Motion must be dismissed for lack of jurisdiction.

The concept of standing bears close affinity to another justiciability doctrine developed under Article III, the concept of ripeness, which requires inquiry into whether the harm asserted has matured sufficiently to warrant judicial intervention. See Warth v. Seldin, 422 U.S. 490, 499 n.10 (1975); see also Duke Power Co. v. Carolina Environmental Study, 438 U.S. 59, 81 (1978) ("[t]o the extent that issues of ripeness involve, at least in part, the existence of a live Case or Controversy, our conclusion that appellees will sustain immediate injury from the operation of the disputed power plants and that such injury would be redressed by the relief requested would appear to satisfy this

4

requirement" (internal quotations and citation omitted)); <u>National Treasury Employees Union</u>, 101 F.3d at 1427 ("[r]ipeness, while often spoken of as a justiciability doctrine distinct from standing, in fact shares the constitutional requirement of standing that an injury in fact be certainly impending"); <u>DKT Memorial Fund Ltd. v. Agency for Intern. Development</u>, 887 F.2d 275, 297 (D.C. Cir. 1989) (holding that <u>Duke Power Co.</u> teaches that the constitutional requirement for ripeness is injury in fact). As set forth in <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148-49 (1967), the test for ripeness considers the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration until a dispute becomes more concrete.[4]   As the United States does not dispute, and may never dispute, the tax liabilities which the Debtors have not even reported, and for which the Debtors seek a determination, this Motion is not ripe for adjudication.

**b.**  *Debtors' Motion is Barred by the Declaratory Judgment Act*

**i.**  <u>Section 505 must be narrowly construed in favor of the United States</u>

The United States, as sovereign, may only be sued to the extent that it consents to be sued by statute.   <u>See</u> <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).   Waivers of the United States' sovereign immunity must be unequivocally expressed and must be

---

[4]      In <u>Abbott Laboratories</u>, the Supreme Court explained that the basic rationale of the doctrine of ripeness "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." <u>Abbott Laboratories</u>, 387 U.S. at 148-149.

strictly construed in favor of the United States.   See United States v. Nordic Village, 503

U.S. 30, 33-34 (1992).   Any limitations or conditions imposed by Congress must be

strictly enforced.   Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 260 (1999); United

States v. King, 395 U.S. 1, 4 (1969); Soriano v. United States, 352 U.S. 270, 276 (1957).   All

"ambiguities [must be] construed against waiver."   In re Torres, 432 F.3d 20, 23-24 (1st

Cir. 2005).   The terms of the United States' consent to be sued in a particular court

defines that court's jurisdiction to entertain the suit.   See Sherwood, 312 U.S. at 586.

Section 106 of the Bankruptcy Code addresses the waiver of sovereign immunity

in bankruptcy cases by "governmental units," including federal, state and local

governments.   See 11 U.S.C. § 101(26).   That section abrogates the United States'

sovereign immunity to the extent set forth in certain other sections of the Bankruptcy

Code, including section 505.[5]   See 11 U.S.C. § 106(a).   Section 106 does not create any

substantive claim for relief not otherwise existing under the Bankruptcy Code, or

relevant non-bankruptcy law.   See 11 U.S.C. § 106(a)(5).

Accordingly, the Court must narrowly construe § 505 in favor of the United

States.

---

[5]     Section 106 waives sovereign immunity to the extent provided in section 105
which empowers a court to issue any order, process, or judgment that is necessary or
appropriate to carry out other provisions of the Bankruptcy Code.   See 11 U.S.C. §
105(a); In Re Kmart Corp., 359 F.3d 866, 871 (7th Cir. 2004).   However, section 105 plainly
only works in conjunction with another provision of the Bankruptcy Code which needs
to be implemented.   See 11 U.S.C. § 105(a); In Re Kmart, 359 F.3d at 871.

5345563.1

**ii.** <u>The Debtors' Motion under Section 505 violates the Declaratory Judgment Act</u>

Debtors' Motion for an order "pursuant to 11 U.S.C. § 505(a)" determining the validity of the Debtors' theory of income tax liability is barred by the Declaratory Judgment Act.

The Declaratory Judgment Act, 28 U.S.C. § 2201, provides, in part, as follows:

> In a case of actual controversy within its jurisdiction, <u>except with respect to Federal taxes other than ... a proceeding under section 505 or 1146 of title 11</u>, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]

28 U.S.C. § 2201 (a) (emphasis added).   Any proceeding seeking a declaratory judgment with respect to federal taxes brought in bankruptcy court is barred by the Declaratory Judgment Act unless it falls within the scope of 11 U.S.C. § 505 or 1146.   <u>Id</u>; <u>see also</u> H. Rep. No. 95-595, 95th Cong., 1st Sess. at 450 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. at 158 (1978). The reference in the Declaratory Judgment Act to § 505 is limited to § 505(b). <u>See</u> H. Rep. No. 95-595, 95th Cong., 1st Sess. at 356; S. Rep. No. 95-989, 95th Cong., 2d Sess. at 67-68. The legislative history to the 1978 amendment to the Declaratory Judgment Act (28 U.S.C. § 2201), which added § 505 as an exception to the tax exclusion clause of that Act, confirms this. Congress inserted the exception into the Declaratory Judgment Act at the time it enacted the Bankruptcy Code. The House and Senate reports both explain:

> This section amends 28 U.S.C. 2201, relating to declaratory judgments to except from the prohibition on declaratory judgment on tax matters, the two instances provided for under the bankruptcy code, relating to relieving a trustee from personal liability for taxes owing by the estates (11 U.S.C. 505(c)) and the tax

7

5345563.1

effects of a reorganization (11 U.S.C. 1146(d)).

H. Rep. No. 95-595, 95'" Cong., 1st Sess. at 450. See S. Rep. No. 95-989, 95th Cong., 2d Sess. at 158. Section 505(c) of the referenced bills ultimately became § 505(b) of the Bankruptcy Code, as a result of changes made during the conference.[6] Thus, Congress understood that § 505(b) was the "declaratory" portion of the statute, since it pertains to the potential personal liability of a trustee or debtor in the event that a distribution is made in reliance upon a determination of the Service or the court under § 505(b).

Accordingly, the exclusion in 28 U.S.C. § 2201 referencing 11 U.S.C. § 505 refers to the right of a trustee of the bankruptcy estate, under § 505(b), to request an expedited determination of liability of the bankruptcy estate for a "tax incurred during administration" and obtain a "discharge" of personal liability for distributing the estate in accordance with the expedited determination of the Service or the court. See In re UAL Corporation, 336 B.R. 370, 379 (Bankr. N.D. Ill. Jan. 3, 2006), (observing that the House and Senate reports explain that the reference to § 505 in the Declaratory Judgment Act are intended to address declarations under § 505(c) (ultimately enacted as § 505(b)); In re Agway Inc., 412 B.R. 32, 38-40 (Bankr. N.D.N.Y. Aug. 14, 2009) (agreeing with UAL).

Indeed, § 505(b) is the only part of § 505 that is necessarily declaratory at all. Section 505(a) allows the court to adjudicate the merits of a tax asserted in a claim and a

---

[6]    At the time the reports were written, the House and Senate bills both had language identical to the current § 505(b) under a proposed § 505(c). In the conference, subsection (b), which concerned trustees' appeals of tax cases, was deleted as unnecessary and subsection (c) was redesignated as subsection (b).

5345563.1

refund suit by the trustee of the bankruptcy estate.[7]    A claim is not declaratory; rather it is seeking a distribution from the estate, and, obviously, a refund suit is not declaratory either.    There is no suggestion in § 505(a) or its legislative history that a debtor could seek a declaration that an administrative period tax return is correct when a debtor has not even filed a tax return, when the Service has not filed its claim, and when a debtor is not seeking a refund.    Debtors' reading of § 505(a) would impermissibly render § 505(b) superfluous.    See e.g., Woodfork v. Marine Cooks & Stewards Union, 642 F.2d 966, 970-71 (11th Cir. 1981) ("A basic principle of statutory construction is that a statute should be construed in such a way as to render certain provisions superfluous or insignificant.") (citations omitted).

Even if § 505(a) were encompassed by the § 505 carve out in the Declaratory Judgment Act, the determination sought here would not be permitted by the Declaratory Judgment Act which only provides for declaratory judgments "[i]n a case of actual

---

[7]    The legislative history of § 505(a) indicates that, aside from refund suits, the Court's authority to "determine the amount or legality of any tax" under that section is limited to taxes asserted in a claim:

> Determinations of tax liability: Authority of bankruptcy court to rule on merits of *tax claims*. - The House amendment authorizes the bankruptcy court to rule on merits of *any tax claim*. . . . However, the bankruptcy court will not have jurisdiction to rule on the merits of *any tax claim* which has been previously adjudicated, in a contested proceeding, before a court of competent jurisdiction.

Statements of Floor Managers, Sen. DiConcini and Rep. Edwards, reprinted in West, Bankruptcy Code, Rules and Forms (2008 ed. at p.136) (emphasis added). See also id. at p.137 ("In essence, under the House amendment, the bankruptcy judge will have authority to determine which court [bankruptcy court or U.S. Tax Court] will determine the merits of the tax *claim* . . . " (emphasis added)).

9

controversy." 28 U.S.C. § 2201(a). Here, there is no actual controversy.    The Debtors are

seeking a determination that the open transaction doctrine applies and that the Debtors

are relieved from any liability for penalties and interest.    However, since they have not

even filed a return, the government has not expressed any disagreement with their

proposed treatment.    Consequently, as noted above, there is no actual controversy and

the declaratory judgment sought here is not permitted under the Declaratory Judgment

Act.

What is really going on here is that Debtors seek a comfort order that the tax

reporting position they would like to take is valid.    What Debtors thus seek in the guise

of a § 505(a) determination is really a § 505(b) discharge, which only applies, *inter alia*,

when Debtors file a return reporting the tax liability of a bankruptcy estate and give the

Service at least 180 days to examine such a return.    See 11 U.S.C. § 505(b)(2).[8]    The

_____

[8]    Section 505(b) of the Bankruptcy Code provides, in relevant part, that:

(2) A trustee may request a determination of any unpaid liability of the
estate for any tax incurred during the administration of the administration
of the case by submitting a tax return for such tax and a request for such a
determination to the governmental unit charged with responsibility for
collection or determination of such tax. . . . Unless such return is
fraudulent, or contains a material representation, the estate, the trustee, the
debtor, and any successor to the debtor are discharged from liability for
such tax –
        (A) upon payment of the tax shown on such return, if –
                (i) such governmental unit does not notify the trustee, within
60 days after such request, that such return has been selected for
examination; or
                (ii) such governmental unit does not complete such an
examination and notify the trustee of any tax due, within 180 days after
such request or within such additional time as the court, for cause, permits;

5345563.1

policy embedded in 505(b) is consistent with a self-reporting system of tax administration in which the taxpayers file tax returns and the Service examines them. Debtors, instead, filed no return and gave the Service less than two weeks to respond. Nowhere did Congress waive the United States' sovereign immunity to allow such a gambit.   Debtors' explanation for this gambit rings hollow, because for the past nine months they were at liberty to do what all the other taxpayers do to ensure that the Service agreed with their position, or find out what the Service thought about their position.   They could have simply asked for a Private Letter Ruling.[9]   Moreover, such a request would have actually given the Service time to consider Debtors' position.

**2.** **THE DEBTORS FAILED TO ESTABLISH THEY ARE ENTITLED TO THE REQUESTED RELIEF**

The Debtors submitted no sworn declaration and no exhibit to substantiate their claim that the "open transaction" doctrine applies in this case.   It is axiomatic that

> (B) upon payment of the tax determined by the court, after notice and a hearing, after completion by such governmental unit of such examination; or
>
> (C) upon payment of the tax determined by such governmental unit to be due.

11 U.S.C. § 505(b)(2).   Section 505(b)(2) explicitly provides that the "trustee" may request the determination of any unpaid tax liability of the "estate."   11 U.S.C. § 505(b)(2).   Debtors have the same rights as the trustee in Section 505(b) proceedings. 11 U.S.C. § 1107(a).

[9]   A Private Letter Ruling is "[a] written statement issued to the taxpayer by the Internal Revenue Service in which interpretations of the tax law are made and applied to a specific set of facts. [The] [f]unction of the letter ruling, usually sought by the taxpayer in advance of a contemplated transaction, is to advise the taxpayer regarding the tax treatment he can expect from the I.R.S. in the circumstances specified by the ruling." Black's Law Dictionary, p. 1196 (6th ed. 1990) (West Publishing Company) (citing U.S. v. Wahlin, 384 F. Supp. 43, 37 (D.C.Wis. 1974).

11

5345563.1

statements made in a brief or oral argument, standing alone, do not constitute admissible evidence. See e.g., Thorton v. United States, 493 F.2d 164, 167 (3d Cir. 1974) ("A statement in a brief or in oral argument does not constitute evidence."); Trap Rock Indus., Inc. v. Local 825, Int'l Union of Op. Engineers, 982 F.2d 884, 892 (3d Cir. 1992) ("[A]rguments, allegations or 'facts' contained in briefs, . . . that are not evidentiary because they are not sworn to, are insufficient to overcome a motion for summary judgment based on sworn affidavits."); Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1138 (3d Cir. 1995) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."); ERBE Electromedizin GmbH v. Canady Technology LLC, 529 F. Supp.2d 577, 584 (W.D. Pa. 2007) (same); Pappoe v. Avis Car Rental, 2006 WL 2092565 at * 2 (W.D. Okla. 2006) (information contained in brief was unsworn and not sufficient) (citing Tavery v. United States, 32 F.3d 1423, 1431-33 (10th Cir.1994) (Garth, J., concurring) (explaining proper summary judgment evidence and citing Thornton v. United States, 493 F.2d at 167).

While the United States expects that Debtors will seek to proffer evidentiary support at the hearing, the absence of any discovery will prejudice the United States' ability to examine witnesses and documents at the hearing on April 14, 2010. The United States respectfully submits that since this is a 505 proceeding, it will need full discovery envisioned by the Bankruptcy Rules, including depositions, interrogatories, and requests for production of documents. 15-TX5 Collier on Bankruptcy P

5345563.1

TX5.04[2][b]; see also Fed. R. Bankr. P. 7026-7037, 9014; In re Cable & Wireless USA, Inc,

331 B.R. 568, 576 (Bankr. Del. 2005).   In the interest of judicial efficiency, however, the

United States respectfully suggests that the Court determine whether it has jurisdiction

to grant the requested relief before the parties engage in costly discovery.


DATE: April 12, 2010

                                    Respectfully submitted,

                                     /s/ Jan M. Geht_____
                                    JAN M. GEHT
                                    WILLIAM BRADLEY RUSSELL JR.
                                    Trial Attorneys, Tax Division
                                    U.S. Department of Justice
                                    P.O. Box 227
                                    Washington, D.C.   20044
                                    Telephone: (202) 307-6449
                                    Fax: (202) 514-6866
                                    E-mail: jan.m.geht@usdoj.gov
                                    *Counsel for the United States*

5345563.1

## <u>CERTIFICATE OF SERVICE</u>

IT IS CERTIFIED that the foregoing RESPONSE, together with supporting

documents, was served on April 12, 2010, by ECF to all counsel of record.


  /s/Jan M. Geht_____
JAN M. GEHT