**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| _____ ) | |
| In re: ) | **Chapter 11** |
| ) | **Case No. 09-10138 (KG)** |
| **Nortel Networks Inc., _et al_.,** ) | **Jointly Administered** |
| ) | |
| ) | **Hearing Date: April 14, 2010 @ 10:00 a.m.** |
| **Debtors.** ) | **Obj. Deadline: April 12, 2010 @ 4:00 p.m.** |
| ) | **April 14, 2010 Agenda Item No. 5** |
| _____ ) | **Related to Docket Nos. 2779, 2854** |

**CALIFORNIA FRANCHISE TAX BOARD'S OPPOSITION TO**
**DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO**
**11 U.S.C. §§505 AND 105 DETERMINING CERTAIN TAX LIABILITIES**

California Franchise Tax Board ("FTB"), by and through its undersigned counsel,

hereby objects to the Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 505 and

105 Determining Certain Tax Liabilities (the "Motion"), dated March 26, 2010 [Dkt. No.

2779], for the following reasons and for the reasons stated in the Internal Revenue Service's

Response to Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. § 505 and 105

Determining Certain Tax Liabilities, dated April 12, 2010 [Dkt. No. 2854].

By their Motion, the Debtors seek an order allowing them: (a) to postpone the

recognition of any taxable income gain or loss from various sales transactions in calculating

their taxes for the 2009 tax year and thereafter (including any interest) while the proceeds from

the sales transactions are held in escrow; (b) to exclude such amounts from any estimation or

filing required by a taxing authority; and (c) to file their income tax returns for the 2009 tax

year and thereafter without being subject to any interest or penalties from the taxing

authorities, including FTB, if amendments to such tax returns are required in the future in

connection with the escrowed amounts.

As further set forth herein, the Debtors are not entitled to such relief.  First, there is no existing tax dispute between the Debtors and the taxing authorities, as no tax return has been filed.  As such, there is no actual controversy or tax dispute for the Court to determine at this time.  Second, the Debtors have not followed the procedures of section 505(b) of the Bankruptcy Code to properly discharge postpetition tax obligations.  Third, in that the sales are complete and proceeds have been received, the transactions at issue here are "closed."  By law, the Debtors are required to report the income and are forbidden from assigning away recognition of such income for tax purposes to another entity.  Finally, the Debtors' proposal to allocate sale proceeds for taxation runs afoul of California's unitary method of taxation.  Accordingly, the Debtors' Motion should be dismissed.

## **BACKGROUND**

1.      The Debtors' Chapter 11 bankruptcy case was filed on January 14, 2009.

2.      FTB is a governmental unit of the State of California.  Cal. Gov't Code § 15700 ("There is in the state government, in the Agriculture and Services Agency, a Franchise Tax Board consisting of the State Controller, the Director of Finance and the Chairman of the State Board of Equalization."); 11 U.S.C. § 101(27).  Specifically, FTB is responsible for administering the California Corporation Tax, which includes a tax measured by net income on corporations doing business in California.  Cal. Rev. & Tax. Code §§ 19501 and 23151.

3.      On September 28, 2009, FTB filed the following pre-petition tax claims:

    • $137,006,015.00 against Nortel Networks Inc. (Case No. 09-10138 KG) (Claim No. 4292);

    • $3,238,002.00 against Alteon Websystems, Inc. (Case No. 09-10140 KG) (Claim No. 4293);

    • $76,721.00 against Xros, Inc. (Case No. 09-10142 KG) (Claim No. 4294);

• $800.00 against Sonoma Systems (Case No. 09-10143 KG) (Claim No. 4295); and

• $800.00 against Northern Telecom International Inc. (Case No. 09-10151 KG) (Claim No. 4296).

4.      For their post-petition 2009 tax year, the Debtors admit they realized income from sales of their assets.  Motion, ¶ 27.  Section 61 of the Internal Revenue Code (to which California conforms) requires the Debtors to recognize that income and report it in the year of sale, i.e., the 2009 tax year.  I.R.C. § 61.  Under California law, the Debtors must file an income tax return for the 2009 tax year and pay any tax liability due on or before March 15, 2010 (not including any extension of time to file said return).  Cal. Rev. & Tax. Code §§ 18601, 18604.  Any unpaid income tax would be a postpetition administrative expense of the Debtors.  11 U.S.C. § 503(b)(1)(B).

## ARGUMENT

**A.      The Court Lacks Jurisdiction to Decide Issues that are Antecedent to the Determination of a Tax Liability and it is Otherwise Premature to Determine Tax Liability Where No Tax Returns Have Been Filed.**

**(i)  There is No Actual Controversy or Tax Dispute for the Court to Determine at this Time.**

5.      Bankruptcy Code § 505(a) and (b) set forth procedural provisions of the Bankruptcy Code relevant to the Debtors' attempt to address their California post-petition tax obligations.  11 U.S.C. § 505(a)-(b).  Section 505(a) provides that the Court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid."  11 U.S.C. § 505(a).  Section 505(b)(2) provides the method to request an expedited determination of any unpaid postpetition administrative tax claim incurred during the bankruptcy case:

> A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax . . . . .

11 U.S.C. § 505(b)(2).

6.      The exercise of the Court's jurisdiction under Bankruptcy Code § 505 is not without limitation.  "Pursuant to section 505, a bankruptcy court has the jurisdiction only to determine tax liabilities; there is no grant of jurisdiction to decide issues that are antecedent to the determination of tax liability."  *Internal Revenue Service v. Sulmeyer* (*In re Grand Chevrolet, Inc.*), 153 B.R. 296, 299 (C.D. Cal. 1993) (in dismissing a complaint seeking a declaration that the trustee could file a consolidated tax return); *Inter Urban Broadcasting of Cincinnati, Inc. v. Lewis* (*In re Inter Urban Broadcasting of Cincinnati, Inc.*), 180 B.R. 153, 155 (Bankr. E.D. La. 1995) (in granting motion to dismiss, the court stated: "The determination of the debtor's tax status as an S or C corporation is not a determination of the debtor's tax liability.").

7.      Rather, there must be an existing tax liability dispute between the parties; in other words, the tax dispute must be ripe.  *Dycoal, Inc. v. Internal Revenue Service* (*In re Dycoal, Inc.*), 327 B.R. 220, 227 (Bankr. W.D. Pa. 2005) (trustee not entitled to determine whether tax credits can be used under a tax return that had not been filed); *In re Grand Chevrolet, Inc.*, 153 B.R. at 299; *In re Inter Urban Broadcasting of Cincinnati, Inc.*, 180 B.R. at 155-56.

8.      According to the Supreme Court,

> Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

. . .
> Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.

*National Park Hospitality Association v. Department of the Interior*, 538 U.S. 803, 807-808, 123 S. Ct. 2026, 2030, 155 L. Ed. 2d 1017, 1024 (2003).

9.      Here, the Debtors admit a filing requirement for the 2009 tax year but ask the Court to allow them to file their 2009 tax returns (and tax returns thereafter) "without limitation," i.e., at any time after the Debtors allocate sales proceeds among themselves.  As analyzed further below, it is irrelevant how, post sale, the Debtors decide to allocate the sale proceeds.  The Debtors are not seeking the Court's determination of any tax liability.  Instead, the Debtors are asking the Court to decide an issue antecedent to the determination of tax liability – namely *when* the Debtors must report the income from the 2009 Transaction and whether they may file their 2009 tax returns (and thereafter) without paying interest and penalties associated with the funds held in escrow.  Thus, there is no actual controversy or tax dispute for the Court to determine at this time because the Debtors have not shown any existing tax dispute with FTB that is ripe for the Court's determination.

### (ii)    The Debtors Have Failed to Follow Section 505(b) of the Bankruptcy Code.

10.     In addition, under 26 U.S.C. §§ 959 and 960, Congress has mandated that, with respect to income that is taxed to a bankruptcy estate under federal law, the trustee (or debtor in possession) is responsible for paying the taxes and filing the tax returns on behalf of the estate.  26 U.S.C. §§ 959-960.[1]  Further, in *California State Board of Equalization v. Sierra Summit, Inc.*, the Supreme Court interpreted what is now 28 U.S.C. § 960(a), stating:

---

[1]  26 U.S.C. § 959(b)  provides in part:

> [A] trustee . . ., including a debtor in possession, shall manage and operate the property in his possession as such trustee . . . according to the requirements of the valid laws of the State in which

as a matter of federal law, "a business in receivership, or conducted under court order, should be subject to the same tax liability as the owner would have been if in possession and operating the enterprise," . . . The statute "indicates a Congressional purpose to facilitate – not to obstruct – enforcement of state laws."

490 U.S. 844, 851-53, 109 S. Ct. 2228; 104 L. Ed. 2d 910 (1989) (citations omitted).

*See also id.* at 851-52 ("'[A] court must proceed carefully when asked to recognize an exemption from state taxation that Congress has not clearly expressed' . . . .") (citation omitted).

11.    By their Motion, the Debtors request the Court to determine unpaid postpetition tax liability. Congress, however, provided Bankruptcy Code § 505(b) as the procedure to discharge postpetition tax liabilities. *See* 11 U.S.C. § 505(b)(2); *In re Shin*, 306 B.R. 397, 407 (Bankr. D.C. 2004) ("The court will not allow the plan to operate to discharge any postpetition tax claim or any penalties on such claims, except to the extent that such taxes or penalties are discharged by complying with the procedures of § 505(b)."). If the Debtors seek such relief under Section 505(b)(2) then the Debtors are required to submit "[1] a tax return for such tax and [2] a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax . . . ." 11 U.S.C. § 505(b)(2). Because the Debtors have not followed these procedures, the Debtors are not entitled to such relief.

12.    Additionally, in that section 505(b)(2) is the method for the Debtors to discharge postpetition tax liability, a determination of the tax is premature absent the filing of a tax return to FTB. 11 U.S.C. § 505(b); *In re Shin*, 306 B.R. at 407. Indeed, even a case cited

---

such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

26 U.S.C. § 960(a) states:

Any officers and agents conducting any business under authority of a United States court shall be subject to all Federal, State and local taxes applicable to such business to the same extent as if it were conducted by an individual or corporation.

by the Debtors as supporting authority under § 505(a) to determine tax liability in a Chapter 11

bankruptcy case itself involved a tax dispute based on <u>filed</u> tax returns.  Motion, ¶ 23; *In re*

*Schmidt*, 205 B.R. 394, 396 (Bankr. N.D. Ill. 1997) (quoting *Collier on Bankruptcy*:

"Evidently Congress intended the language of section 505(a) to be sufficiently broad to include

virtually any type of tax liability . . . .  Perhaps the only significant limitations on the

jurisdictional grant are . . . (ii) the requirement that there be an actual controversy based upon a

filed tax return").

13.      Accordingly, absent the filing of a tax return by the Debtors, there is no basis

for the Court to order that the Debtors may file their 2009 tax returns (and returns thereafter) at

their leisure, despite the fact that the Debtors may also have other items of income that are

currently taxable, and without inclusion of gain or loss associated with the 2009 Transactions

or interest or penalty while the proceeds are held in escrow.

**B.      The "Open Transaction" Doctrine is Inapplicable Here**

14.      In their Motion, the Debtors argue that the "open transaction" doctrine, which

allows a taxpayer to defer reporting taxable gain where the consideration received is uncertain,

justifies the relief sought because the Debtors are unable to determine their share of the Sale

Proceeds[2] until there is a final determination of the allocation of proceeds.  Motion, ¶¶ 27, 30.

15.      According to Westin's Tax Dictionary, an "open transaction" is a "[s]ale or other

disposition in which the cash or accrual method taxpayer's amount realized is so uncertain that

the only just result is to delay reporting gains or losses until the taxpayer has enjoyed a

recovery of capital.  *Burnet v. Logan*, 283 U.S. 404, 51, S. Ct. 550, 75 L. Ed. 1143 (1931) (sale

of mine based on future production).  The government position is that such transactions are

extremely rare . . . ."  Westin, WG&L Tax Dictionary (2010).  Further, in California, the State

Board of Equalization, the administrative tribunal which reviews appeals of Franchise Tax Board tax determinations, recently held that "open transaction treatment is generally restricted to those rare and extraordinary cases in which the property received has no reasonably ascertainable fair market value."  *Appeal of Larry and Rhoda Geisel*, 2007-SBE-002, Dec. 12, 2007.

16.    Clearly, the instant case is not one of those "rare" occasions.  The property received by the Debtors upon the sale of their assets was cash (Motion, ¶ 26), so fair market value was undeniably established.  Further, the Debtors admit in their Motion that the 2009 Transactions are "closed" and that they realized income from sales of their assets.  Motion, ¶¶ 13, 27.  The only thing "open" about the transactions at issue is how the Debtors plan to allocate the sales proceeds among themselves, an event separate and distinct from the determination of income for purposes of imposing California's corporation tax.

17.    In addition, the Debtors admit that they are accrual basis taxpayers (Motion at ¶ 20; *see* I.R.C. § 446) and concede that they are required to report income once the "all events" test of Treasury Regulation section 1.451-1(a) is satisfied.  Motion, ¶ 30.  That section provides that "[u]nder an accrual method of accounting, income is includible in gross income when all the events have occurred which fix the right to receive such income and the amount thereof can be determined with reasonable accuracy."  26 CFR 1.451-1(a).  Here, the Debtors' right to receive the income from the sales is fixed – namely the assets to be sold were identified, purchasers were found, the sales price was agreed upon, sales were finalized, and proceeds were paid – and, given that the sales proceeds were paid, the amount of the income received can be determined with reasonable accuracy.  This is the essence of a "done deal" and fully meets the "all events" test.  Consequently, under section 61 of the Internal Revenue Code (to

---

[2] Any terms not otherwise defined herein shall have the meanings attributed to them in the Motion.

which California conforms), the Debtors who owned the assets sold must report in 2009 the amount of income realized from the sale thereof.  I.R.C. § 61.  It is irrelevant how, post sale, the Debtors decide to allocate the sale proceeds.

18.    In reality, the Debtors are attempting to avoid the assignment of income rule (also referred to as the "nonassignment of income" rule) under the guise of the open transaction doctrine.  The assignment of income rule is a judicially created doctrine that stands for the proposition that once a taxpayer earns income, that taxpayer cannot assign away recognition of such income for tax purposes to another, no matter how that assignment is "skillfully devised."  *See Lucas v. Earl*, 281 U.S. 111, 115, 50 S. Ct. 241, 74 L. Ed. 731 (1930).  While the Debtors argue the Interim Funding and Settlement Agreement (the "IFSA") is intended for the protection of creditors, as the Supreme Court stated, no exception can be given "according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew."  *Id.*

19.    The incidents of taxation must remain with the owner of the asset sold (*see Lucas*, supra), regardless of future "allocation" of the sales proceeds under the IFSA.  Absent the rule against the assignment of income, the Debtors would be able to play a shell game and shift income from taxing to non-taxing jurisdictions and from high-tax to low-tax entities, wreaking havoc with the tax system and depriving taxing jurisdictions, which are also creditors in this bankruptcy, of revenues to which they are legally entitled.

**C.    The Debtors' Proposal to Allocate Sale Proceeds for Taxation Runs Afoul of California's Unitary Method of Taxation.**

20.    California imposes a tax on corporations doing business in the state on California-source income.  If a taxpayer has income from sources both in and outside of California, it is required to allocate and apportion its net income in accordance with the

provisions of the Uniform Division of Income for Tax Purposes Act ("UDITPA") (Cal. Rev. & Tax. Code §§ 25120 – 25139) and its California tax liability is measured solely by the net income derived from or attributable to sources within this state (Cal. Rev. & Tax. Code § 25101).  When a taxpayer conducts a single unitary business both in and outside of California, its business income is divided between states by means of an apportionment formula to determine that portion which has its source in California.  Cal. Code Regs., tit. 18 §§ 25101 and 25121; *Appeal of Fluor Corp.*, 95-SBE-16, Dec. 12, 1995.

21.    If two or more corporations are engaged in a single unitary business in and outside of the state, California law requires these corporations to file a combined report on a worldwide basis using the unitary method of accounting.  *See* Cal. Rev. & Tax. Code §§ 25101, 25102; *Honolulu Oil Corp. v. Franchise Tax Board,* 60 Cal. 2d 417 (1963).  It is well-settled that California's method of worldwide combined reporting ("WWCR") is an appropriate means by which to apportion and allocate the income of multinational taxpayers, such as the Debtors, which derive income from sources inside and outside of California.  *See Barclays Bank PLC v. Franchise Tax Board,* 512 U.S. 298, 114 S. Ct. 2268, 129 L. Ed. 2d 244 (1994); *Container Corporation of America v. Franchise Tax Board,* 463 U.S. 159, 103 S. Ct. 2933, 77 L. Ed. 2d 545 (1983).

22.    UDITPA distinguishes between "business income," which must be apportioned by formula, and "nonbusiness income," which is specifically allocated by situs or commercial domicile.  Business income is apportioned using a formula comprised of California property, payroll, and sales, compared with worldwide property, payroll, and sales; some nonbusiness income, such as gains from the sale of real property, are specifically allocated to the geographic location of such realty.  *See generally* Cal. Rev. & Tax. Code §§ 25120 – 25139.

Generally, the business income of each member of the WWCR group is combined, and the apportionment formula is applied to this total to arrive at California source income; the taxpayer then adds California-source nonbusiness income to this figure to arrive at total California-source income subject to the tax.  Cal. Code Regs., tit. 18 § 25106.5, *et seq.*

23.     The Debtors' allocation of sales proceeds for purposes of taxation would allow the Debtors to allocate income outside of California that is properly included in California income for purposes of taxation.  That approach runs afoul of and is contrary to California's method of taxation, which apportions income based on a judicially-sanctioned constitutional apportionment formula to arrive at California source income, and therefore should not be approved.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, FTB respectfully requests the Court deny the Debtor's Motion in its entirety and grant such other further relief as may be just and proper.


Dated:  April 12, 2010             Respectfully submitted,
        Wilmington, DE
                                   CAMPBELL & LEVINE LLC

                                   */s/ Mark T. Hurford*
                                   Mark T. Hurford (Bar No. 3299)
                                   800 North King Street, Suite 300
                                   Wilmington, DE  19801
                                   Phone: (302) 426-1900
                                   Fax:    (302) 426-9947
                                   Email: mhurford@camlev.com

Jonathan P. Guy (*pro hac vice pending*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005-1706
Phone: (202) 339-8400
Fax:  (202) 339-8500
Email: jguy@orrick.com

*Counsel for California Franchise Tax Board*