Nortel Worldwide Entity or the Pension Plans, that the Pension Claims or any part thereof rank as a priority claim over the claims of ordinary unsecured creditors, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory, and such claims shall be treated as ordinary unsecured claims, and for greater certainty, any such claims, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings, shall rank on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel.

2.      That portion of any proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel or by any person claiming that any payments by the PBGF or that the Pension Claims or any part thereof rank as a priority or preferential claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory shall be disallowed, but only to the extent that they claim such priority or preference, and such disallowance shall not be opposed or appealed, directly or indirectly, by such claimants. For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims, which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

## F.    NON-OPPOSITION

1.      The Representatives agree, on their own behalf and on behalf of those they represent, that they shall not oppose, directly or indirectly, any employee incentive program, including any charge therefor, that is determined by the Monitor to be reasonable and necessary for the continued operation of Nortel. They further agree that they shall not oppose, directly or indirectly, the creation of a trust with respect to claims or potential claims against persons who accept directorships of a Nortel Worldwide Entity in order to facilitate the restructuring, provided that: (i) such trust is approved and recommended by the Monitor; (ii) no part of the corpus of the trust may be used to pay bonuses or any other compensation to the directors; and (iii) any corpus of the trust remaining on the termination of the trust reverts to Nortel.

## G.    RELEASE AND CHARGE

1.      The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension Claimants and the beneficiaries of the HWT who they represent (collectively, the "**Pension HWT Claimants**") that each of the trustee of the HWT, the Monitor, and all members of Pension Plans' committees, (in their personal capacity), and their respective officers, directors, employees, agents, members, legal counsel, financial advisors,

and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing and the officers, directors, employees, agents, members, legal counsel, financial advisors of Nortel and the Nortel Worldwide Entities and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing (collectively, the "**Releasees**"), are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans except as required by this Settlement Agreement) and the investment of the Pension Plan assets; and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

2. The CAW, the LTD Representative and the Former Employees Representatives agree on their own behalf and on behalf of the Pension HWT Claimants that Nortel and the Nortel Worldwide Entities and their respective successors and assigns (collectively, the "**Nortel Releasees**") are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien, or under any other legal or equitable theory. For greater certainty, notwithstanding the foregoing, nothing in this Settlement Agreement shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

3. In furtherance of the foregoing and in order to ensure that this constitutes a true settlement of the subject matter hereof, the Pension HWT Claimants agree that they shall not assert, advance or make any claims of any nature whatsoever

- 10 -

against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or the Nortel Releasees with respect to the subject matter of the release provisions of this Settlement Agreement.

4.     The M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the **"Payments Charge"**), which Payments Charge shall not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00) and which Payments Charge shall rank subordinate in priority to the Inter-company Charge (as defined in the Initial Order). The Payments Charge shall apply in these proceedings and in any subsequent bankruptcy or receivership. The maximum amount secured by the Payments Charge shall be reduced as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made. Once the last payment is made, the Monitor shall file a certificate (the **"Monitor's Certificate"**) with the Court certifying that the terms of the Settlement have been complied with by Nortel, and the Payments Charge shall automatically terminate and be extinguished by the filing of the Monitor's Certificate.

## H.     CCAA PLAN OR SUBSEQUENT BANKRUPTCY

1.     The Representatives agree on their own behalf and on behalf of the Pension HWT Claimants that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the **"Plan"**) be proposed or approved if: (i) the Plan provides for separate classification of any Pension HWT Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Pension HWT Claimants and the other ordinary unsecured creditors of Nortel do not receive the same *pari passu* treatment of their allowed ordinary unsecured claims against Nortel pursuant to the Plan.

## I.     CONDITIONS

1.     This Settlement Agreement is conditional upon (i) Nortel obtaining the Final Approval Order substantially in the form attached as Schedule "B" with such changes as the parties may agree to, acting reasonably; (ii) the Superintendent in his capacity as administrator of the PBGF, Nortel and the Monitor executing the letter attached as Schedule "C"; and (iii) the Leave Application having been withdrawn on a with prejudice basis.

2.     It is the intention of the Parties that these terms be binding upon, and enure to the benefit of the Pension HWT Claimants, the Releasees and the Nortel Releasees, and that: (i) as beneficiaries hereof, the Releasees and the Nortel Releasees shall

- 11 -

be entitled to rely upon and to seek the enforcement of these terms, which cannot be varied without further order of the Court on full and proper notice to them; and (ii) the ordinary unsecured creditors of Nortel shall be entitled to rely upon and benefit from the provisions and agreements herein and to seek their enforcement, which provisions and agreements cannot be varied without further order of the Court on full and proper notice to them.

**J.     GENERAL**

1.     The Monitor shall post the motion record for approval of the Settlement, including the Settlement Agreement and the proposed Final Approval Order on the Monitor's website at www.ey.com/ca/Nortel and on the website of Representative Counsel at www.kmlaw.ca.

2.     The Representatives, the Representative Counsel and the CAW shall co-operate with Nortel and the Monitor on all communications related to this settlement, as required.

3.     This Settlement Agreement will be governed by and interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein. The Parties hereby irrevocably consent and submit to the non-exclusive jurisdiction of the Ontario Superior Court of Justice and waive any objection based on venue or forum non conveniens with respect to any action commenced in connection with this Settlement Agreement.

4.     This Settlement Agreement may be executed in any number of counterparts (including by way of facsimile and PDF) and all of such counterparts taken together will be deemed to constitute one and the same instrument.

*[Signature pages to follow]*

**IN WITNESS WHEREOF** the Parties have duly executed this Agreement as of the date first written above:

**NORTEL NETWORKS CORPORATION**

Per: _____

Name: John Doolittle
Title: Senior Vice-President, Corporate Services and Chief Financial Officer

Per: _____

Name: Clarke Glaspell
Title: Controller

**NORTEL NETWORKS LIMITED**

Per: _____

Name: John Doolittle
Title: Senior Vice-President, Corporate Services and Chief Financial Officer

Per: _____

Name: Clarke Glaspell
Title: Controller

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

Per: _____

Name: Clarke Glaspell
Title: President and Controller

- 13 -

**NORTEL NETWORKS INTERNATIONAL
CORPORATION**

Per: _____
      Name:  John Doolittle
      Title:   President

Per: _____
      Name:  Clarke Glaspell
             Treasurer

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____
      Name:  John Doolittle
      Title:   President

Per: _____
      Name:  Clarke Glaspell
      Title:   Controller

**ERNST & YOUNG INC.,** solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
      Name:
      Title:

**DONALD SPROULE,** court appointed
representative of the Nortel Former Employees

Per: _____
      Name:
      Title:

- 13 -

**NORTEL NETWORKS GLOBAL CORPORATION**

Per:    _____
        Name:
        Title:


**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity


Per:    _____
        Name: Murray A. McDonald
        Title: President


**DONALD SPROULE,** court appointed representative of the Nortel Former Employees


Per:    _____
        Name:
        Title:


**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees


Per:    _____
        Name:
        Title:

13 -

**NORTEL NETWORKS GLOBAL CORPORATION**

Per:   _____

      Name:

      Title:

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per:   _____

      Name:

      Title:

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per:   *DE K Sproule*

      Name:

      Title: *NRPC National Chair*

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per:   _____

      Name:

      Title:

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per:   _____

      Name:

      Title:

- 13 -

**NORTEL NETWORKS GLOBAL CORPORATION**

Per: _____

Name: _____

Title: _____

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____

Name: _____

Title: _____

**DONALD SPROULE,** court appointed representative of the Nortel Former Employees

Per: _____

Name: _____

Title: _____

**DAVID ARCHIBALD,** court appointed representative of the Nortel Former Employees

Per: _____

Name: _DAVID D. ARCHIBALD_

Title: _RETIREE_

**MICHAEL CAMPBELL,** court appointed representative of the Nortel Former Employees

Per: _____

Name: _____

Title: _____

- 13 -

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per: _____
       Name:
       Title:

**ERNST & YOUNG INC.,** solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
       Name:
       Title:

**DONALD SPROULE,** court appointed
representative of the Nortel Former Employees

Per: _____
       Name:
       Title:

**DAVID ARCHIBALD,** court appointed
representative of the Nortel Former Employees

Per: _____
       Name:
       Title:

**MICHAEL CAMPBELL,** court appointed
representative of the Nortel Former Employees

Per: _Ma Campbell P.eng._
       Name: _MICHAEL CAMPBELL._
       Title: _C. A. R._

- 14 -

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _Sue Kennedy_____
        Name:
        Title:

**KOSKIE MINSKY LLP,** court appointed counsel to the Former Employees of Nortel and the Represented LTD Beneficiaries

Per: _____
        Name:
        Title:

**NATIONAL AUTOMOBILE, AEROSPACE, TRANSPORTATION AND GENERAL WORKERS UNION OF CANADA** (CAW-Canada) and its Locals 27, 1525, 1530, 1837, 1839, 1905 and/or 1915 and George Borosh et al.

Per: _____
        Name:
        Title:

\5830538.1

- 14 -

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____

      Name:
      Title:

**KOSKIE MINSKY LLP,** court appointed counsel to the Former Employees of Nortel and the Represented LTD Beneficiaries

Per: _____

      Name: Susan Philpott
      Title: Representative Counsel

**NATIONAL AUTOMOBILE, AEROSPACE, TRANSPORTATION AND GENERAL WORKERS UNION OF CANADA** (CAW-Canada) and its Locals 27, 1525, 1530, 1837, 1839, 1905 and/or 1915 and George Borosh et al.

Per: _____

      Name:
      Title:

\5830538.1

- 14 -

**SUE KENNEDY,** court appointed representative of the Represented LTD Beneficiaries

Per: _____

     Name:

     Title:


**KOSKIE MINSKY LLP,** court appointed counsel to the Former Employees of Nortel and the Represented LTD Beneficiaries


Per: _____

     Name:

     Title:


**NATIONAL AUTOMOBILE, AEROSPACE, TRANSPORTATION AND GENERAL WORKERS UNION OF CANADA** (CAW-Canada) and its Locals 27, 1525, 1530, 1837, 1839, 1905 and/or 1915 and George Borosh et al.


Per: _____

     Name:

     Title:

\5830538.1

**SCHEDULE "A"**

**NORTEL NETWORKS CORPORATION**

**Direct and Indirect Subsidiaries**

| |
|---|
| Sonoma Systems |
| Sonoma Limited |
| Sonoma Systems Europe Limited |
| Nortel Networks Optical Components (Switzerland) GmbH |
| Xros, Inc. |
| Architel Systems Corporation |
| Architel Systems (U.S.) Corporation |
| Architel Systems (UK) Limited |
| NN Applications Management Solutions Inc. |
| CoreTek, Inc. |
| Alteon WebSystems Inc. |
| Alteon WebSystems International Inc. |
| Alteon WebSystems AB |
| Alteon WebSystems International Limited |
| Nortel Networks Limited |
| Capital Telecommunications Funding Corporation |
| PT Nortel Networks Indonesia |
| Nortel Networks Peru S.A.C. |
| Nortel Networks (Thailand) Ltd. |
| Nortel Networks Telecommunicacoes do Brazil Ltda. |
| Nortel Networks Malaysia Sdn Bhd. |
| Nortel Networks New Zealand Limited |
| Nortel Networks Global Corporation |
| Nortel Networks de Colombia S.A. |
| Nortel Networks Chile S.A. |
| Nortel Networks de Argentina S.A. |
| Nortel Networks del Paraguay S.A. |
| Nortel Networks de Venezuela C.A. |

- 2 -

| |
|---|
| Nortel Networks del Ecuador S.A. |
| Nortel Networks de Mexico S.A. de C.V. |
| Nortel de Mexico, S. De R.L. de C.V. |
| Nortel Networks del Uruguay S.A. |
| Nortel Networks Technology Corporation |
| Nortel Vietnam Limited |
| Nortel Networks Korea Limited |
| Nortel Networks Singapore Pte Ltd |
| Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd. |
| Nortel Networks International Corporation |
| Shenyang Nortel Telecommunications Company Limited |
| Nortel Networks (Ireland) Limited |
| Northern Telecom Maroc SA |
| Nortel Networks Electronics Corporation |
| Regional Telecommunications Funding Corporation |
| Nortel Networks de Bolivia S.A. |
| 1328556 Ontario Inc. |
| CTFC Canada Inc. |
| Northern Telecom Canada Limited |
| Nortel Networks de Panama S.A. |
| TSFC Canada Inc. |
| Nortel Networks Mauritius Ltd. |
| Nortel Networks (India) Private Limited |
| Nortel Networks S.A. |
| Northern Telecom France SA |
| Nortel Networks France SAS |
| Matra Communications Business Systeme GmbH |
| Nortel Networks (China) Limited |
| Nortel Networks Communications Engineering Ltd. |
| Nortel Networks (Asia) Limited |
| Guangdong – Nortel Telecommunications Equipment Co. Ltd. |
| LG-Nortel Co. Ltd. |

- 3 -

| |
|---|
| 6141-Sub  Novera Optics Korea Inc. |
| Novera Optics Inc. |
| LN Srithai Comm Co Ltd |
| Nortel Communications Inc. |
| Nortel Networks Financial Services Limited Liability Co. |
| Nortel Networks Inc. |
| Bay Networks do Brasil Ltda. |
| Bay Networks Fedes de Dados para Sistemas Informaticos, da. |
| Clarify Limited |
| Clarify K.K. |
| Nortel Networks Cable Solutions Inc. |
| Nortel Networks Capital Corporation |
| Nortel Networks Technology K.K. |
| Nortel Networks Eastern Mediterranean Ltd. |
| Nortel Networks International Inc. |
| Nortel Ventures LLC |
| Nortel Networks Japan |
| Penril Datacomm Limited |
| Nortel Networks Southeast Asia Pte Ltd. |
| Nortel Networks Technology (Thailand) Ltd. |
| Nortel Technology Excellence Centre Private Limited |
| Diamondware, Ltd. |
| Northern Telecom International Inc. |
| Nortel Networks Optical Components Inc. |
| The Nortel Foundation |
| Nortel Networks India International Inc. |
| Nortel Networks (CALA) Inc. |
| Nortel Networks de Guatemala, Ltda. |
| Nortel Trinidad and Tobago Limited |
| Qtera Corporation |
| Nortel Networks Technology Ltd. |
| Nortel Networks (Shannon) Limited |

- 4 -

| |
|---|
| Nortel Networks Europe Sales Limited |
| Nortel Government Solutions Incorporated |
| AC Technologies, Inc. |
| Integrated Information Technology Corporation |
| Nortel Networks UK Limited |
| Northern Telecom International Limited |
| Nor. Web DLP Limited |
| Nortel Limited |
| Nortel Networks (Northern Ireland) Limited |
| Networks Employee Benefit Trustee Company Limited |
| Nortel-SE d.o.o. Beograd |
| Nortel Networks Properties Limited |
| Promatory Communications  Limited |
| X-CEL Communications Limited |
| Nortel Networks Optical Components Limited |
| Nortel Networks (Photonics) Pty. Ltd. |
| Northern Telecom PCN Limited |
| Telephone Switching International Limited |
| Frisken Investments Pty. Ltd. |
| Betts Investments Pty. Ltd. |
| Periphonics Limited |
| Nortel Networks Australia Pty Limited |
| Nortel Australia Communication Systems Pty. Limited |
| Star 21 Networks GmbH |
| Star 21 Networks (Schweiz) AG |
| Star 21 Networks Deutschland GmbH |
| Star 21 Facility Management Verwaltung GmbH |
| Star 21 Operations GmbH |
| Star 21 Facility Management GmbH & Co. KG |
| Nortel Networks International Finance & Holding BV |
| Uni-Nortel Communication Technologies (Hellas), S.A. |
| Nortel Networks (Austria) GmbH |

- 5 -

| |
|---|
| Nortel Networks AG |
| Nortel Networks AS |
| Nortel Networks S.R.O. |
| Nortel Networks S.p.A. |
| Nortel Networks S.A. |
| Nortel Networks South Africa (Proprietary) Limited |
| Nortel Networks NV |
| Matra Communication Cellular Terminals GmbH |
| Nortel Networks Engineering Service Kft. |
| Nortel Networks (Bulgaria) EOOD |
| Nortel Networks Slovensko, s.r.o. |
| Nortel Networks Romania Srl |
| Nortel Networks O.O.O |
| Nortel Networks Portugal, S.A. |
| Nortel Communications Holdings (1997) Limited |
| Nortel Networks Israel (Sales and Marketing) Limited |
| Nortel Networks Communications (Israel) Limited |
| Nortel Networks Polska Sp. z.o.o. |
| Nortel GmbH |
| Nortel Networks BV |
| Nortel Networks Malta Limited |
| Nortel Ukraine Ltd. |
| Nortel Networks AB |
| Nortel Networks OY |
| Nortel Networks, Hispania S.A. |
| Nortel Networks Netas Telekomunikasyon A.S. |

**SCHEDULE "B" TO AMENDED AND RESTATED SETTLEMENT AGREEMENT**

**[ATTACHED]**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 31ST DAY |
| | ) | |
| JUSTICE MORAWETZ | ) | OF MARCH, 2010 |

**IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,**
**R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF**
**NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,**
**NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS**
**INTERNATIONAL CORPORATION and NORTEL NETWORKS TECHNOLOGY**
**CORPORATION (the "Applicants")**

APPLICATION UNDER THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

**S E T T L E M E N T   A P P R O V A L   O R D E R**

**THIS MOTION**, made by the Applicants (collectively, "Nortel") for an order approving the amended and restated settlement agreement made as of the 30th day of March, 2010, attached as Schedule "A" to this Order (the "Amended and Restated Settlement Agreement") and for the other relief set out in the Notice of Motion dated March 30, 2010 was heard this day at 393 University Avenue, Toronto, Ontario.

**ON READING** the affidavit of Elena King sworn March 30, 2010 and the Forty-Second Report of Ernst & Young Inc. dated March 30, 2010 (the "Forty-Second Report") in its capacity as monitor (the "Monitor"), and on hearing submissions of counsel for the Applicants, the Monitor, The Northern Trust Company, Canada, in its capacity as trustee of the HWT and it is capacity as trustee and custodian for the trust funds maintained in respect of the Pension Plans and the master trust for the Pension Plans, the Northern Telecom Limited Pension Trust Fund, the Opposing LTD Employees and the Board of Directors of Nortel Networks Corporation and Nortel Networks Limited and on the consent of CAW, the Former

Employees Representatives, the LTD Representative and Representative Counsel (as those terms are defined in the Amended and Restated Settlement Agreement); the UCC, the Bondholder Committee (as those terms are defined in the Amended and Restated Settlement Agreement) and the Superintendent of Financial Services of Ontario (the "Superintendent") as the administrator of and on behalf of the Pension Benefits Guarantee Fund (the "PBGF") not opposing, no one else appearing although duly served as appears from the affidavit of service of Katie Legree dated March 30, 2010, filed.

1.    **THIS COURT ORDERS** that service of the Notice of Motion, the Forty-Second Report and the Motion Record is hereby validated so that this Motion is properly returnable today and further service thereof is hereby dispensed with.

2.    **THIS COURT ORDERS** that capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Affidavit of Elena King dated February 18, 2010 or the Amended and Restated Settlement Agreement.

**Amended and Restated Settlement Agreement**

3.    **THIS COURT ORDERS** that the Amended and Restated Settlement Agreement is hereby approved in its entirety, including all schedules attached thereto, and that the Parties thereto (including by representation) are hereby bound by this Order and the Amended and Restated Settlement Agreement  and authorized and directed to comply with their obligations thereunder, including, without limitation, to make the payments provided for therein.   The Amended and Restated Settlement Agreement supersedes all prior arrangements and understandings among the Parties thereto (including by representation) with respect to such subject matter, including, without limitation, the Settlement Agreement made as of the 8th day of February, 2010.

**Pension Plans**

4.    **THIS COURT ORDERS AND DECLARES** that any Pension Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans shall, to the extent they are allowed pursuant to any claims

adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, such that no part of any Pension Claims shall be entitled to any preferential treatment or enjoy any priority in any manner over the claims of ordinary unsecured creditors made against Nortel, or rank as a priority claim, as a trust (whether deemed or otherwise) or a lien or charge.

5.      **THIS COURT ORDERS AND DECLARES** that no person or entity, including without limitation, (i) the Representatives, (ii) the Superintendent, as administrator of and on behalf of the PBGF, (iii) NNL, as the administrator of the Pension Plans, (iv) all successor administrators of the Pension Plans (whether appointed by the Superintendent or otherwise), and (v) the Pension HWT Claimants, all future members and beneficiaries of the Pension Plans, the trustee of the Pension Plans, the employees and former employees of Nortel and others who may have or make claims against Nortel or any Nortel Worldwide Entity with respect to employment or post employment or post retirement benefits (collectively, with the Pension HWT Claimants, the "Employee Claimants"), shall directly or indirectly assert, advance, re-assert or re-file any claim or initiate any legal proceedings or actions of any nature or kind in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent such claims are provable) or the Pension Plans except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and shall not assert or advance any claim, directly or indirectly, that the Pension Claims, or any part thereof, ranks as a priority or preferential claim over the claims of ordinary unsecured creditors or Nortel, including, without limitation, that it is the subject of a trust (whether deemed or otherwise) or a lien or charge, or under other legal or equitable theory, and all such priority, trust, lien or charge claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the Pension Plans, the trustee of the Pension Plans, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

6.      **THIS COURT ORDERS** that the portion of proofs of claim already or hereafter filed by the Superintendent as the administrator of and on behalf of the PBGF, by Nortel, by any

4

Employee Claimants or by any other person or entity claiming, asserting or advancing priority or preferential treatment of any kind, including, without limitation, trusts (whether deemed or otherwise) liens or charges in respect of any Pension Claims or payments by the PBGF with respect to the Pension Plans be and they hereby are disallowed, but only to the extent that they claim such priority or preferential treatment, without prejudice to the ordinary unsecured claims included in such proofs of claim.  For greater certainty, such disallowance shall not otherwise affect the quantum or validity of such claims,  which shall rank as ordinary unsecured creditors on a *pari passu* basis with the claims of the ordinary unsecured creditors of Nortel, in each case, to the extent allowed against Nortel pursuant to any claims adjudication procedure established in these proceedings.

7.    THIS COURT ORDERS that with respect to claims by the Superintendent on behalf of the PBGF, and any administrator appointed by the Superintendent, paragraphs 4, 5 and 6 shall only apply if: (i) the Pension Payments are made in accordance with the Amended and Restated Settlement Agreement; and (ii) no bankruptcy order is made with respect to Nortel on or before September 30, 2010.

8.    **THIS COURT ORDERS** that as long as NNL continues to administer the Pension Plans, there shall be no change whatsoever to the plan terms of the Pension Plans without the approval of the Court, and no change to the current asset mix or investment policies with respect to the Pension Plans other than at the request, and with the consent, of the Representative Counsel and the approval of the Court.

9.    **THIS COURT ORDERS** that Nortel shall make all current service payments and special payments to the Pension Plans in respect of defined benefit entitlements thereunder in the same manner as it has been doing over the course of the proceedings under the CCAA, through to March 31, 2010 in accordance with the last actuarial valuation for the Pension Plans filed with the Financial Services Commission of Ontario ("FSCO") in the aggregate amount of $2,216,254.00 per month.  Thereafter and through to September 30, 2010, Nortel shall make only current service payments to the Pension Plans (in accordance with the last actuarial valuation for the Pension Plans filed with FSCO) in the aggregate amount of $379,837.00 per month.  For greater certainty, Nortel shall not be required to make any

special payment contributions to the Pension Plans after March 31, 2010.  Nortel shall also make current service contributions in respect of defined contribution entitlements under the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan (Registration No. 0342048) in accordance with the terms thereof, through to September 30, 2010 and shall not be precluded from doing so by the terms of the Amended and Restated Settlement Agreement. Nortel shall not be required to make any payments to the Pension Plans after September 30, 2010, except in respect of any claims in respect of the Pension Plans allowed against Nortel (which claims shall rank on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) pursuant to any claims adjudication procedure established in these proceedings.  Neither Nortel, nor any Nortel Worldwide Entity shall have any liability regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs after September 30, 2010.  For greater certainty, nothing in this paragraph affects any obligation or liability of Nortel regarding any contributions, fees, indemnities, charges or costs of any kind in respect of the administration of the Pension Plans that occurs before 11:59 p.m. on September 30, 2010.

**Health and Welfare Trust**

10.    **THIS COURT ORDERS AND DECLARES** that any HWT Claims made in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the HWT shall, to the extent they are allowed against Nortel pursuant to any claims adjudication procedure established in such proceedings, rank as ordinary unsecured claims on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, and no part of any such HWT Claims shall rank as a preferential or priority claim or shall be the subject of a constructive trust or trust of any nature or kind.

11.    **THIS COURT ORDERS AND DECLARES** that  no person or entity, including without limitation, the Employee Claimants and the Representatives, shall, directly or indirectly (i) advance, assert, re-assert, re-file or make any HWT Claim in these proceedings or in any subsequent receivership or bankruptcy proceedings, or in any other proceedings, or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity (to the extent

that such claims are provable) or the HWT except as an ordinary unsecured claim ranking on a *pari passu* basis with the claims of ordinary unsecured creditors of Nortel, or (ii) advance, assert, re-assert, re-file or make any claim that any HWT Claims are entitled to any priority or preferential treatment over ordinary unsecured claims, including without limitation that they rank as preferential or priority claims against Nortel or any Nortel Worldwide Entity, or are the subject of a constructive trust or trust of any nature or kind, and all such claims are hereby forever barred, enjoined, released and extinguished as against Nortel, any Nortel Worldwide Entity, the HWT and the trustee of the HWT, and their respective officers, directors, employees, agents, members, legal counsel, financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing.

12.    **THIS COURT ORDERS AND DECLARES THAT** nothing in this Order, including, without limiting the generality of the foregoing, the provisions of paragraphs 10 and 11, affects the determination on any basis whatsoever of the entitlement of any beneficiary to a distribution from the corpus of the HWT.

**Release and Charge**

13.    **THIS COURT ORDERS** that the M&D Beneficiaries and former employees entitled to payment from the Termination Fund shall be entitled to the benefit of a charge on Nortel's Property (as defined in the Initial Order) to secure payment of the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments (the "Payments Charge"), which Payments Charge shall:  (i) not exceed an aggregate amount of FIFTY-SEVEN MILLION DOLLARS ($57,000,000.00); (ii) rank subordinate in priority to the Inter-company Charge and the Shortfall Charge (as both terms are defined in the Initial Order); (iii) apply in these proceedings and in any subsequent bankruptcy or receivership; (iv) be reduced in amount as the Medical and Dental Payments, Income Payments, Termination Payments and Pension Payments are paid by an amount equal to each such payment made; and (v) automatically terminate and be extinguished on the filing with this Honourable Court by the Monitor of a certificate certifying that the terms of the Amended and Restated Settlement Agreement have been complied with by Nortel.

14. **THIS COURT ORDERS** that the Payments Charge shall constitute a "Charge" pursuant to the Initial Order, and shall be subject to the provisions relating to Charges including, without limitation, paragraphs 42 through 47 thereof and that the creation of the Payments Charge shall not preclude this Court from creating additional charges under the Initial Order that rank in priority to or *pari passu* with the Payments Charge.

15. **THIS COURT ORDERS AND DECLARES** that the Releasees, the CAW, the Representatives, and if and only if paragraphs 4, 5 and 6 apply as provided in paragraph 7, the Superintendent in his capacity as administrator of and on behalf of the PBGF, and their legal counsel and financial advisors and each of the heirs, executors, administrators, legal representatives, successors and assigns of each of the foregoing, be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement (whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) related to (i) the Pension Plans, including without limitation, the administration of the Pension Plans, any obligation to assert or advance in these proceedings, or in any subsequent receivership or bankruptcy proceedings or in any other proceedings or in any other forum whatsoever concerning Nortel, any Nortel Worldwide Entity or the Pension Plans, any priority claim, as a trust (whether deemed or otherwise) or a lien or charge, the funding of the Pension Plans (including any obligation to contribute to the Pension Plans, except as required by paragraph 9 of this Order) and the investment of the Pension Plan assets, and (ii) the HWT, including without limitation, the administration of the HWT, the funding of the HWT, any obligation to contribute to the HWT and the investment of the HWT assets, provided that nothing herein shall release a director of Nortel from any matter referred to in subsection 5.1(2) of the CCAA or with respect to fraud on the part of any Releasee, with respect to that Releasee only.

16. **THIS COURT ORDERS AND DECLARES** that the Nortel Releasees be and they are hereby released, discharged and remised from any and all direct and indirect claims (contingent, liquidated or unliquidated, proven or unproven, known or unknown, in the nature of damages or otherwise, whether or not asserted and whether arising by contract, agreement

8

(whether written or oral), under statute, civil law, common law, or in equity, or otherwise in any jurisdiction) that the Pension Claims and the HWT Claims, or any part thereof, rank as a preferential or priority claim over the claims of ordinary unsecured creditors of Nortel, as a trust (whether deemed or otherwise) or a lien or charge, or under any other legal or equitable theory.   For greater certainty, notwithstanding the foregoing, nothing in this Order shall release or discharge the Nortel Releasees from any Pension Claims and HWT Claims to the extent such claims are allowed as ordinary unsecured claims (which claims shall rank as on a *pari passu* basis with the unsecured claims of the ordinary unsecured creditors of Nortel) against the Nortel Releasees pursuant to any claims adjudication procedure established in these proceedings.

17.    **THIS COURT ORDERS** that the Employee Claimants shall not assert, advance or make any claims of any nature whatsoever against any person or entity whatsoever that could reasonably be expected to result in a claim over (including, without limitation, a claim for contribution or indemnity) being made against any of the Releasees or Nortel Releasees with respect to the subject matter of the release provisions hereof.

**CCAA Plan or Subsequent Bankruptcy**

18.    **THIS COURT ORDERS AND DECLARES** that under no circumstances shall any CCAA Plan of Arrangement in the Nortel proceedings (the "Plan") be proposed or approved by the Court if: (i) the Plan provides for separate classification of any Employee Claimants from ordinary unsecured creditors of Nortel, including, without limitation, bondholders and Nortel Networks Inc.; or (ii) the Employee Claimants and the other ordinary unsecured creditors do not receive the same *pari passu* treatment of their allowed claims against Nortel pursuant to the Plan.

## SCHEDULE "A"

\5805980.22

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

---

*ONTARIO*
## SUPERIOR COURT OF JUSTICE
### (COMMERCIAL LIST)

Proceeding commenced at Toronto

---

## SETTLEMENT APPROVAL ORDER

---

**OGILVY RENAULT LLP**
Suite 3800
Royal Bank Plaza, South Tower
200 Bay Street
Toronto, Ontario  M5J 2Z4
CANADA

**Derrick Tay LSUC#: 21152A**
Tel: (416) 216-4832
Email: dtay@ogilvyrenault.com

**Mario Forte  LSUC#: 27293F**
Tel: (416) 216-4870
Email: mforte@ogilvyrenault.com

**Jennifer Stam LSUC #46735J**
Tel: (416) 216-2327
Email: jstam@ogilvyrenault.com
Fax: (416) 216-3930

Lawyers for the Applicants

**SCHEDULE "C" TO AMENDED AND RESTATED SETTLEMENT AGREEMENT**

**[ATTACHED]**



# N⊘RTEL

March **30**, 2010

Pension Benefits Guarantee Fund (Ontario)
c/o Financial Services Commission of Ontario
4th Floor
5160 Yonge Street
Toronto, ON
M2N 6L9

**Attention: K. David Gordon, Deputy Superintendent, Pensions**

Dear Sirs:

Re:    **Court File No. 09-CL-7950**
       **In the Matter of the Companies' Creditors Arrangement Act and Nortel**
       **Networks Corporation et al (Nortel")**

This letter sets out, among other things, the understanding among Nortel, the Monitor and
the Superintendent of Financial Services in his capacity as Administrator of the Pension
Benefits Guarantee Fund concerning the administration of Nortel's registered pension
plans (the "Pension Plans") and the transition of the Pension Plans to a new
administrator, in order to provide for an orderly, cost effective transition that will be in
the best interests of the members of the Pension Plans.

Defined terms used herein shall have the meaning given to them in the agreement made
as of the **30**th day of March, 2010 a copy of which is attached hereto as Schedule "A"
(the "Amended and Restated Settlement Agreement"):

1.    <u>Conditional Understanding:</u>  It is acknowledged that the terms of this letter
      are conditional on (a) the Amended and Restated Settlement Agreement
      having been fully executed and delivered, and (b) the order of the Court
      approving the Amended and Restated Settlement Agreement having been
      issued and entered substantially in the form of the Order attached as
      Schedule "B".

2.    <u>Pension Plan Administration:</u>  Nortel will continue to administer the
      Pension Plans until September 30, 2010 at 11:59 p.m. Neither Nortel nor
      the Monitor will take any steps to initiate a wind up, in whole or in part, of
      the Pension Plans with an effective date prior to October 1, 2010. So long
      as Nortel is the administrator of the Pension Plans, there will be no change
      to the current asset mix, investment policies or the plan terms with respect
      to the Pension Plans without the consent of the Representative Counsel
      and the approval of the Court.

3.    <u>Pension Plan Transition:</u> (a) Nortel will ensure that all books, records, data and other information relating to the Pension Plans or beneficial to the administration or winding-up of the Pension Plans are consolidated in Toronto, Ontario, Canada by no later than March 31, 2010; and (b) the Monitor and Nortel will take all reasonable steps, at the sole cost and expense of Nortel, to complete the orderly transfer of the administration of the Pension Plans to a new administrator appointed by the Superintendent effective October 1, 2010 (the "New Administrator").

4.    <u>Amended and Restated Settlement Agreement and Settlement Appoval Order:</u> The Superintendent will not oppose the granting of an Order substantially in the form attached hereto as Schedule "B".

5.    <u>Employee Incentive and Director Charge Order:</u> The Superintendent will not oppose the granting of a court order approving (a) any employee incentive program, including any charge therefor, that is determined by the Monitor to be reasonable and necessary for the continued operation of Nortel, or (b) the creation of a trust for persons who accept the directorship of Nortel worldwide subsidiaries in order to facilitate the restructuring, provided that: (i) such trust is approved and recommended by the Monitor; (ii) no part of the corpus of the trust may be used to pay bonuses or any other compensation to the directors; and (iii) any corpus of the trust remaining on the termination of the trust reverts to Nortel.

6.    <u>Directors:</u> The Superintendent confirms that as of January 15, 2010, he is not aware of any claims against directors, officers or the Monitor, other than such claims as may arise as a result of the transfer of pension information and other records outside of Canada.

Please sign and return the copy of this letter attached.

Yours very truly,


attachments


\5812988

Page 3

**NORTEL NETWORKS CORPORATION**

Per:

Name: John Doolittle
Title: Senior Vice-President, Corporate
       Services and Chief Financial
       Officer

Per:

Name: Clarke Glaspell
Title: Controller

**NORTEL NETWORKS LIMITED**

Per:

Name: John Doolittle
Title: Senior Vice-President, Corporate
       Services and Chief Financial
       Officer

Per:

Name: Clarke Glaspell
Title: Controller

**NORTEL NETWORKS GLOBAL
CORPORATION**

Per:

Name: John Doolittle
Title: President

Per:

Name: Clarke Glaspell
Title: Controller

Page 4

**NORTEL NETWORKS INTERNATIONAL
CORPORATION**

Per:

Name: John Doolittle
Title: President

Per:

Name:   Clarke Glaspell
Treasurer

**NORTEL NETWORKS TECHNOLOGY
CORPORATION**

Per:

Name:   Clarke Glaspell

Title:   President and Controller

**ERNST & YOUNG INC.,** solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per:

Name:
Title:

**SUPERINTENDENT OF FINANCIAL
SERVICES OF ONTARIO** as administrator of
the Pension Benefits Guarantee Fund. without
personal liability

Per:

Name:
Title:

Page 4

**NORTEL NETWORKS INTERNATIONAL CORPORATION**

Per: _____
        Name:
        Title:

Per: _____
        Name:
        Title:

**NORTEL NETWORKS TECHNOLOGY CORPORATION**

Per: _____
        Name:
        Title:

**ERNST & YOUNG INC.,** solely in its capacity as monitor in the CCAA proceedings of Nortel and not in its personal capacity

Per: _____
        Name: Murray A. McDonald
        Title: President

**SUPERINTENDENT OF FINANCIAL SERVICES OF ONTARIO** as administrator of the Pension Benefits Guarantee Fund. without personal liability

Per: _____
        Name:
        Title:

Page 4

**NORTEL NETWORKS INTERNATIONAL
CORPORATION**

Per: _____
     Name:
     Title:

Per: _____
     Name:
     Title:

**NORTEL NETWORKS TECHNOLOGY
CORPORATION**

Per: _____
     Name:
     Title:

**ERNST & YOUNG INC.**, solely in its capacity
as monitor in the CCAA proceedings of Nortel
and not in its personal capacity

Per: _____
     Name: Murray A. McDonald
     Title: President

**SUPERINTENDENT OF FINANCIAL
SERVICES OF ONTARIO** as administrator of
the Pension Benefits Guarantee Fund. without
personal liability

Per: _____
     Name: K David Gordon
     Title: Deputy Superintendant, Pensions

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**FORTY-SECOND REPORT**
**OF THE MONITOR**
**DATED MARCH 30, 2010**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre, 333 Bay Street
Toronto, Canada  M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.