# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                    :
In re                               :    Chapter 11
                                    :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]   :    Jointly Administered
                                    :
                    Debtors         :    <u>Objection Deadline</u>: May 18, 2010 at 4:00 p.m. (ET)
                                    :    <u>Hearing Date</u>: Scheduled only if necessary
-------------------------------------------------------X

**FOURTEENTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
THE REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>MARCH 1, 2010 THROUGH MARCH 31, 2010</u>**

This is a(n):   <u>X</u>   monthly _____ interim _____ final application.

Name of Applicant:   <u>Akin Gump Strauss Hauer & Feld LLP</u>

Authorized to Provide
Professional Services to: <u>Official Committee of Unsecured Creditors</u>

Date of Retention: <u>March 5, 2009 (nunc pro tunc to January 22, 2009)</u>

Period for which Compensation
and Reimbursement is sought: <u>March 1, 2010 through March 31, 2010</u>

Amount of Compensation sought as
actual, reasonable, and necessary: <u>$958,619.25</u>

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: <u>$20,735.21</u>

The total time expended during this Compensation Period for the preparation of Akin Gump's
Thirteenth Monthly Fee Application and Fourth Interim Fee Request was 15.80 hours and the
corresponding compensation is $8,936.00.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

**Prior Fee Applications:**

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/22/09 – 02/28/09 (First Monthly Fee Application) | $1,002,466.75 | $14,994.50 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the First Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the First Monthly Fee Application. |
| 03/01/09 – 03/31/09 (Second Monthly Fee Application) | $866,587.25 | $14,080.55 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Second Monthly Fee Application. Akin Gump voluntarily agreed to reduce the expenses requested by $1,459.22. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Second Monthly Fee Application. |
| 04/01/09 – 04/30/09 (Third Monthly Fee Application) | $919,594.75 | $22,201.07 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Third Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Third Monthly Fee Application. |

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 05/01/09 – 05/31/09<br><br>(Fourth Monthly Fee Application) | $766,765.75 | $54,512.10 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fourth Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fourth Monthly Fee Application. |
| 06/01/09 – 06/30/09<br><br>(Fifth Monthly Fee Application) | $962,202.75 | $25,000.85 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fifth Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fifth Monthly Fee Application. |
| 07/01/09 – 07/31/09<br><br>(Sixth Monthly Fee Application) | $1,042,206.00 | $24,587.92 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Sixth Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Sixth Monthly Fee Application. |
| 08/01/09 – 08/31/09<br><br>(Seventh Monthly Fee Application) | $653,999.00 | $44,610.63 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Seventh Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Seventh Monthly Fee Application. |

| Time Period | Fee Requested | Expenses Requested | Status |
|---|---|---|---|
| 09/01/09 – 09/30/09<br><br>(Eighth Monthly Fee Application) | $1,103,982.50 | $24,753.35 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Eighth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Eighth Monthly Fee Application. |
| 10/01/09 – 10/31/09<br><br>(Ninth Monthly Fee Application) | $1,036,266.50 | $35,745.59 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Ninth Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Ninth Monthly Fee Application. |
| 11/01/09 – 11/30/09<br><br>(Tenth Monthly Fee Application) | $1,008,811.00 | $40,388.57 | On March 17, 2010, this Court entered an order (Docket No. 2730) awarding Akin Gump 100% of the fees and expenses requested in the Tenth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Tenth Monthly Fee Application. |
| 12/01/09 – 12/31/09<br><br>(Eleventh Monthly Fee Application) | $1,003,203.75 | $40,839.88 | On March 17, 2010, this Court entered an order (Docket No. 2730) awarding Akin Gump 100% of the fees and expenses requested in the Eleventh Monthly Fee Application. Akin Gump has received 100% of the fees and 100% of the expenses requested in the Eleventh Monthly Fee Application. |

| Time Period | Fee Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/01/10 – 01/31/10<br><br>(Twelfth Monthly Fee Application) | $638,879.75 | $34,184.80 | On March 17, 2010, this Court entered an order (Docket No. 2370) awarding Akin Gump 100% of the fees and expenses requested in the Twelfth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Twelfth Monthly Fee Application. |
| 02/01/10 – 02/28/10<br><br>(Thirteenth Monthly Fee Application) | $636,531.00 | $26,874.51 | On April 15, 2010, a certificate of no objection (Docket No. 2891) was filed with respect to the Thirteenth Monthly Fee Application.  Akin Gump has not received payment of the fees and expenses requested in the Thirteenth Monthly Fee Application. |

## SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS
## RENDERING SERVICES DURING THE PERIOD
## MARCH 1, 2010 THROUGH MARCH 31, 2010

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 11 years; Admitted in 1989; Financial Restructuring Department | $950 | 29.10 | $27,645.00 |
| David H. Botter | Partner for 9 years; Admitted in 1990; Financial Restructuring Department | $875 | 152.75 | $133,656.25 |
| Fred S. Hodara | Partner for 21 years; Admitted in 1982; Financial Restructuring Department | $975 | 55.20 | $53,820.00 |
| John V. Jansonius | Partner for 22 years; Admitted in 1980; Labor Department | $650 | 3.00 | $1,950.00 |
| Karol A. Kepchar | Partner for 9 years; Admitted in 1992; Intellectual Property Department | $645 | 33.30 | $21,478.50 |
| Stephen B. Kuhn | Partner for 10 years; Admitted in 1991; Corporate Department | $775 | 115.00 | $89,125.00 |
| Robert H. Pees | Partner for 14 years; Admitted in 1988; Litigation Department | $790 | 5.10 | $4,029.00 |
| Sarah A. Schultz | Partner for 1 year; Admitted in 2001; Financial Restructuring Department | $640 | 159.85 | $102,304.00 |
| Bruce E. Simonetti | Partner for 6 years; Admitted in 1995; ERISA Department | $780 | 3.50 | $2,730.00 |
| Kenneth A. Davis | Senior Counsel for 3 years; Admitted in 1995; Financial Restructuring Department | $675 | 27.00 | $18,225.00 |
| Ira L. Rosenblatt | Senior Counsel for 2 years; Admitted in 1997; Corporate Department | $635 | 13.80 | $8,763.00 |
| Kevin M. Rowe | Senior Counsel for 10 years; Admitted in 1985; Tax Department | $675 | 49.20 | $33,210.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Alexander F. Anderson | Counsel for 4 years; Admitted in 2001; Tax Department | $600 | 23.10 | $13,860.00 |
| Tony D. Feuerstein | Counsel for 3 years; Admitted in 2003; Corporate Department | $600 | 246.05 | $147,630.00 |
| David C. Vondle | Counsel for 2 years; Admitted in 2003; Intellectual Property Department | $550 | 69.10 | $38,005.00 |
| Graeme D. Bell | International Law Advisor for 2 years; Admitted in 2003 | $600 | 184.70 | $110,820.00 |
| Brad M. Kahn | Associate for 3 years; Admitted in 2008; Financial Restructuring Department | $450 | 187.70 | $84,465.00 |
| Machir Stull | Associate for 1 year; Admitted in 2009; Financial Restructuring Department | $325 | 21.60 | $7,020.00 |
| Joshua Y. Sturm | Associate for 4 years; Admitted in 2007; Financial Restructuring Department | $500 | 102.60 | $51,300.00 |
| Daniel Z. Vira | Associate for 10 years; Admitted in 1993; Corporate Department | $605 | 4.10 | $2,480.50 |
| Jennifer L. Woodson | Associate for 1 year; Admitted in 2010; Tax Department | $350 | 15.10 | $5,285.00 |
| Kinga Bernath | Legal Assistant for 4 years; Corporate Department | $200 | 2.00 | $400.00 |
| Scott A. Fener | Librarian for 3 years | $190 | 2.20 | $418.00 |

Total Amount of Fees:    $958,619.25
Total Number of Hours:   1,505.05
Blended Hourly Rate:     $636.94

## COMPENSATION BY PROJECT CATEGORY
## MARCH 1, 2010 THROUGH MARCH 31, 2010

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 7.40 | $5,472.50 |
| Akin Gump Fee Applications/Monthly Billing Reports | 15.80 | $8,936.00 |
| Analysis of Other Professionals Fee Applications/Reports | 37.20 | $22,310.50 |
| Retention of Professionals | 46.00 | $20,822.00 |
| Creditors' Committee Meetings | 163.30 | $107,333.50 |
| Court Hearings | 29.50 | $18,711.50 |
| Financial Reports and Analysis | 50.40 | $30,698.00 |
| Executory Contracts/License Agreements | 1.50 | $675.00 |
| General Claims Analysis/Claims Objections | 32.70 | $20,206.00 |
| Canadian Proceedings/Matters | 15.40 | $12,947.50 |
| General Adversary Proceedings | 1.60 | $1,370.00 |
| Tax Issues | 90.20 | $54,008.50 |
| Labor Issues/Employee Benefits | 111.50 | $76,293.00 |
| Real Estate Issues | 0.70 | $452.50 |
| Asset/Stock Transactions/Business Liquidations | 672.10 | $422,484.50 |
| Travel (billed at 50% of actual time) | 21.45 | $13,045.75 |
| Non-Debtor Affiliates | 15.10 | $9,385.00 |
| Intercompany Analysis | 60.80 | $44,782.50 |
| Intellectual Property | 132.40 | $88,685.00 |
| **TOTAL** | **1,505.50** | **$958,619.25** |

## DISBURSEMENT SUMMARY
## MARCH 1, 2010 THROUGH MARCH 31, 2010

| | |
|---|---:|
| Computerized Research, Corporate Service Fees & PACER Charges | $170.88 |
| Conference Call /Telephone Charges | $10,671.66 |
| Courier Service/Postage | $37.54 |
| Duplicating (@ $0.10 per page) | $878.80 |
| Meals/Committee Meeting Expenses | $3,505.13 |
| Transcript Charges | $327.17 |
| Travel Expenses – Airfare | $1,864.65 |
| Travel Expenses – Ground Transportation | $1,297.70 |
| Travel Expenses – Lodging | $1,549.68 |
| Travel Expenses – Parking | $23.00 |
| Travel Expenses – Train Fare | $409.00 |
| | |
| **TOTAL** | **$20,735.21** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                  :

In re                                  :     Chapter 11
                                   :     Case No. 09-10138 (KG)

Nortel Networks Inc., <u>et al.</u>, [1]     :     Jointly Administered
                                   :

                  Debtors     : <u>Objection Deadline:</u> May 18, 2010 at 4:00 p.m. (ET)
                                   : <u>Hearing Date:</u> Scheduled only if necessary

-------------------------------------------------------X

**FOURTEENTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS
HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT
OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD
<u>FROM MARCH 1, 2010 THROUGH MARCH 31, 2010</u>**

Akin Gump Strauss Hauer & Feld LLP ("<u>Akin Gump</u>" or the "<u>Applicant</u>"), co-counsel to

the Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc.

("<u>NNI</u>"), <u>et al.</u> (collectively, the "<u>Debtors</u>"), hereby submits its fourteenth monthly application

(the "<u>Application</u>") pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the

"<u>Bankruptcy Code</u>"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the

District of Delaware (the "<u>Local Rules</u>"), and (iv) the Administrative Order Pursuant to 11

U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing

Procedures for Interim Compensation and Reimbursement of Fees and Expenses for

Professionals and Official Committee Members entered on February 4, 2009 (the

"<u>Administrative Fee Order</u>"), for interim allowance of compensation for services rendered in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

aggregate amount of $958,619.25 and for reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith in the amount of $20,735.21 for the period from March 1, 2010 through March 31, 2010 (the "Compensation Period"). In support of this Application, Akin Gump respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and, together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under Canada's Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor (the "Monitor").

5.      On January 14, 2009, the High Court of Justice in England (the "UK Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors"), including Nortel Networks U.K. Limited ("NNUK"), into administration (the "European Proceedings" and, together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. The Committee currently consists of four members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Law Debenture Trust Company of New York, as indenture trustee; (iii) Pension Benefit Guaranty Corporation; and (iv) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases. An ad hoc group of holders of bonds issues by the Nortel Debtors has also been formed (the "Ad Hoc Bondholder Group").

7.      On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, *nunc pro tunc* to January 22, 2009. On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

3

8.      On June 10, 2009, Akin Gump filed its First Interim Fee Application Request for

the Period January 22, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, Akin Gump sought the award and allowance of fees in the amount of

$2,788,648.75 and the reimbursement of expenses in the amount of $48,632.74.[2]  On July 17,

2009, this Court entered an order approving 100% of the fees and expenses sought in the First

Interim Application and Akin Gump has received payment of such amounts.

9.      On September 10, 2009, Akin Gump filed its Second Interim Fee Application

Request for the Period May 1, 2009 through July 31, 2009 (the "Second Interim Application").

In its Second Interim Application, Akin Gump sought the award and allowance of fees in the

amount of $2,771,174.50 and the reimbursement of expenses in the amount of $104,100.87.[3]  On

September 30, 2009, this Court entered an order approving 100% of the fees and expenses

sought in the Second Interim Application and Akin Gump has received payment of such

amounts.

10.      On November 24, 2009, Akin Gump filed its Third Interim Fee Application

Request for the Period August 1, 2009 through October 31, 2009 (the "Third Interim

Application"). In its Third Interim Application, Akin Gump sought the award and allowance of

fees in the amount of $2,794,248.00 and the reimbursement of expenses in the amount of

---

[2] The First Interim Application sought the award of fees and expenses for the period from January 22, 2009 through
April 30, 2009, as follows: (a) January 22, 2009 through February 28, 2009: $1,002,466.75 of fees and $14,994.50
of expenses; (b) March 1, 2009 through March 31, 2009: $866,587.25 of fees and $14,080.55 of expenses; and (c)
April 1, 2009 through April 30, 2009: $919,594.75 of fees and $22,201.07 of expenses.  Following discussions with
the U.S. Trustee, Akin Gump agreed to a voluntary reduction of $1,184.16 for expenses incurred during the period
covered by the First Interim Application.

[3] The Second Interim Application sought the award of fees and expenses for the period from May 1, 2009 through
July 31, 2009, as follows: (a) May 1, 2009 through May 31, 2009: $766,765.75 of fees and $54,512.10 of expenses;
(b) June 1, 2009 through June 30, 2009: $962,202.75 of fees and $25,000.85 of expenses; and (c) July 1, 2009
through July 31, 2009: $1,042,206.00 of fees and $24,587.92 of expenses.

$105,109.57.[4] On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application and Akin Gump has received payment of such amounts.

11.    On February 24, 2010, Akin Gump filed its Fourth Interim Fee Application Request for the Period November 1, 2009 through January 31, 2010 (the "Fourth Interim Application").[5] In its Fourth Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,650,894.50 and the reimbursement of expenses in the amount of $115,413.25.[6] On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application and Akin Gump has received payment of such amounts.

12.    On March 23, 2010, Akin Gump filed its Thirteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period February 1, 2010 through February 28, 2010 (the "Thirteenth Monthly Application"). In its Thirteenth Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $636,531.00 and the reimbursement of expenses in the amount of $26,874.51. A certificate of no objection was filed with respect to the Thirteenth Monthly Application on April 15, 2010. As of the date of this Application, Akin Gump has not received any payment on account of the Thirteenth Monthly Application.

---

[4] The Third Interim Application sought the award of fees and expenses for the period from August 1, 2009 through October 31, 2009, as follows: (a) August 1, 2009 through August 31, 2009: $653,999.00 of fees and $44,610.63 of expenses; (b) September 1, 2009 through September 30, 2009: $1,103,982.50 of fees and $24,753.35 of expenses; and (c) October 1, 2009 through October 31, 2009: $1,036,266.50 of fees and $35,745.59 of expenses.

[5] On March 1, 2010, Akin Gump filed an Amended Notice of Fourth Interim Fee Application Request solely to provide information regarding a change in its hourly billing rates effective January 1, 2010.

[6] The Fourth Interim Application sought the award of fees and expenses for the period from November 1, 2009 through January 31, 2010, as follows: (a) November 1, 2009 through November 30, 2009: $1,008,811.00 of fees and $40,388.57 of expenses; (b) December 1, 2009 through December 31, 2009: $1,003,203.75 of fees and $40,839.88 of expenses; and (c) January 1, 2010 through January 31, 2010: $638,879.75 of fees and $34,184.80 of expenses.

### III.    RELIEF REQUESTED

13.    By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $958,619.25, representing 1500.85 hours of professional services and 4.20 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of $20,735.21.

14.    Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80% of its fees ($766,895.40) and 100% of its expenses ($20,735.21) relating to services rendered during the Compensation Period.

15.    Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases other than in accordance with the Administrative Fee Order.  There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these cases.

16.    As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

17.    Akin Gump has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period.  The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the

Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines.

18.    In the ordinary course of its practice, Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

19.    In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

20.    Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

21.    The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

## Case Administration

(Fees: $5,472.50; Hours: 7.40)

22.    This subject matter relates to services rendered to the Committee to satisfy the Committee's continuing organizational and administrative needs and enable the Committee to continue to function as a coordinated group and to acquit its fiduciary duties.

23.    During the Compensation Period, Akin Gump reviewed and analyzed all motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto.  In connection with such analyses, Akin Gump conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases.  These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

24.    During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates.  In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls.  Akin Gump also regularly consulted with Jefferies, Capstone, FMC and Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

25. Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

## Akin Gump Fee Application/Monthly Billing Reports

(Fees: $8,936.00; Hours: 15.80)

26. This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

## Analysis of Other Professionals' Fees

(Fees: $22,310.50; Hours: 37.20)

27. Akin Gump attorneys, along with Capstone, spent time during the Compensation Period analyzing issues related to the sharing of certain professionals' fees across the Nortel Debtors' estates. As stated in the Supplemental Fourth Omnibus Order Allowing Certain Professionals Interim Compensation for Services Rendered and Reimbursement of Expenses entered by this Court on March 31, 2010 (Docket No. 2812), NNI, NNL and NNUK have agreed that the fees and expenses owed to Lazard Freres & Co. LLC as financial advisor to the Debtors, will be allocated among such entities in accordance with written agreement to be negotiated by the parties. During the Compensation Period, Akin Gump attorneys, on behalf of the Creditors' Committee, negotiating such agreement with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group.

## Retention of Professionals

(Fees: $20,822.00; Hours: 46.00)

28.     During the Compensation Period, Akin Gump, on behalf of the Committee, spent time analyzing the terms of engagement of professionals retained by the Debtors, including Chilmark Partners LLC, as consulting expert in connection with the allocation of sales proceeds, and Linklaters LLP, as United Kingdom counsel to the Debtors primarily in connection with the Debtors' potential pension obligations. Additionally, during the Compensation Period, the Debtors filed a supplemental application to employ and retain Global IP Law Group, LLC to provide additional consulting services with respect to the Nortel Debtors' intellectual property portfolio. In connection with each of the aforementioned retention applications, Akin Gump, along with the Committee's other professionals, reviewed the terms of the engagement, discussed such terms with the Debtors' professionals, and apprised the Committee of such terms and any material issues related thereto in order to assist the Committee in acquitting its fiduciary duties.

## Committee Meetings

(Fees: $107,333.50; Hours: 163.30)

29.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, with individual Committee members and with the Committee's other legal and financial advisors. Akin Gump, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, Akin Gump had numerous telephonic conferences with individual Committee members and the chair of the Committee and their respective professionals.

30.     Prior to its meetings with the Committee, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection

therewith.  Thereafter, Akin Gump discussed each of these matters with the Committee's other professionals, the Committee, as well as individual Committee members.  During these discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter.  In addition, Akin Gump prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee discussing the status of pertinent matters in these proceedings.

31.    Akin Gump also held regular telephone conferences with the Debtors' principal officer, Mr. John Ray, during which, Akin Gump, along with the Committee's other professionals, discussed with Mr. Ray various matters arising in these Insolvency Proceedings, and the impact of such matters on the Debtors' unsecured creditors.

32.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: $18,711.50; Hours: 29.50)

33.    This subject matter relates to preparation for and attendance at hearings and other proceedings before this Court.  Akin Gump attorneys appeared, either in person or telephonically, at four hearings held before this Court during the Compensation Period, where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered.  Akin Gump attorneys prepared for Court hearings by reviewing all applicable motions and applications filed with the Court, including any responses thereto, and consulted with the Committee's other professionals and the Debtors' advisors to formulate appropriate

11

strategies. Akin Gump's participation at such hearings was necessary to protect the interests of unsecured creditors.

### Asset Sales

(Fees: $422,484.50; Hours: 672.10)

34.    Akin Gump spent considerable time during the Compensation Period working closely with the Nortel Debtors and their U.S. and Canadian advisors to evaluate strategic options with respect to the divestiture of certain of the Debtors' assets. Specifically, Akin Gump attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, and professionals for the other major creditor constituents to evaluate and analyze divestiture options for the metro ethernet networks ("MEN"), GSM/GSM-R ("GSM") and Carrier Voice Over IP and Application Solutions ("CVAS") businesses. In that regard, Akin Gump, together with the Committee's other professionals, analyzed and assessed numerous financial and legal issues related to these transactions, negotiated agreements and other transactional documents with potential purchasers, and advised the Committee on those issues through detailed memoranda and telephonic conferences, as necessary.

*CVAS Sale*

35.    Akin Gump attorneys spent considerable time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' CVAS business (the "CVAS Sale"). On December 23, 2009, the Nortel Debtors publicly announced that GENBAND Inc. ("GENBAND"), with equity sponsor One Equity Partners III, L.P. ("OEP" and, together with GENBAND, the "CVAS Purchasers"), was selected as the stalking horse bidder for the CVAS Sale. Following a joint hearing before the U.S. and Canadian Courts on January 6, 2010, this Court entered an order approving the form of proposed bidding procedures and related sale

12

motion on January 8, 2010. On February 24, 2010, the Nortel Debtors announced that the CVAS
Sale would not proceed to auction and that they would consummate a transaction with the CVAS
Purchasers. On March 3, 2010, following a joint hearing before the U.S. and Canadian Courts,
this Court approved the CVAS Sale to the CVAS Purchasers. During the Compensation Period,
Akin Gump attorneys, along with the Committee's other professionals, have worked with the
professionals for the Nortel Debtors to review, comment on and negotiate all underlying
documentation necessary to close the CVAS Sale.

*MEN Sale*

36.     Since the approval on December 3, 2009 by the U.S. and Canadian Courts of the
sale of the MEN business to Ciena Corporation ("Ciena"), Akin Gump attorneys spent
considerable time reviewing, commenting on, and negotiating all underlying documentation
necessary to timely consummate the transaction. In connection therewith, Akin Gump attorneys,
together with professionals from Jefferies and Capstone, participated in numerous meetings and
conference calls with professionals for the Nortel Debtors, Ciena and other major stakeholders,
to negotiate and finalize underlying documentation necessary to successfully close the
transaction. As a result of these efforts, the sale of the MEN business to Ciena closed on March
19, 2010.

*GSM Sale*

37.     Finally, since the approval by the U.S. and Canadian Courts of the sale of the
Nortel Debtors' GSM business (the "GSM Sale") to Telefonaktiebolaget L M Ericsson
("Ericsson") and Kapsch Carriercom AG ("Kapsch" and, together with Ericsson, the "GSM
Purchasers") on December 2, 2009, Akin Gump attorneys have continued working with the
professionals for the Nortel Debtors and the GSM Purchasers to negotiate and finalize

13

documentation necessary for the successful consummation of the transaction. These efforts resulted in the closing of the GSM Sale to the GSM Purchasers on March 31, 2010, and the Nortel Debtors' receipt of approximately $118 million of sale proceeds.

## Canadian Issues

(Fees: $12,947.50; Hours: 15.40)

38.     During the Compensation Period, Akin Gump attorneys worked closely with the Committee's Canadian counsel, FMC, to review all pleadings filed in the Canadian Proceedings and to analyze the impact the relief requested may have on the Debtors' estates and their creditors. During the Compensation Period, Akin Gump attorneys worked with FMC to ensure that the interests of the Debtors' estates were protected in the negotiation and documentation of a settlement (the "Canadian Employee Settlement") of certain Canadian employee pension and benefit issues in the Canadian Proceeding. On February 8, 2010, the Canadian Debtors entered into the Canadian Employee Settlement. Akin Gump assisted FMC in formulating an objection to certain reservations of rights contained in the Canadian Employee Settlement, which objection was filed with the Canadian Court on March 2, 2010. Following a three-day hearing from March 3 through March 5, 2010, the Canadian Court issued a decision on March 26, 2010, denying approval of the Canadian Employee Settlement, relying in part on the Committee's objection. The relevant parties subsequently negotiated an amended settlement agreement, which agreement was approved by the Canadian Court on March 31, 2010.

## Tax Issues

(Fees: $54,008.50; Hours: 90.20)

39.     This subject matter relates to legal services rendered by Akin Gump relating to tax matters affecting the Nortel Debtors. During the Compensation Period, Akin Gump continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel

Debtors' legacy transfer pricing system. In connection therewith, Akin Gump attorneys participated in numerous conferences with the Committee's other professionals and the Debtors' senior management team and advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto. Additionally, during the Compensation Period, Akin Gump attorneys spent time analyzing the tax issues in connection with the various asset divestitures described herein, and where appropriate, commenting on and negotiating the underlying documentation of such transactions.

40.    During the Compensation Period, Akin Gump attorneys also spent time analyzing certain issues related to the Debtors' income tax filing requirements for taxable year 2009. In connection therewith, Akin Gump attorneys worked closely with the Debtors' professionals to consider strategic alternatives to best protect the Debtors' estates from unnecessary tax liability in connection with the filing of their 2009 income tax returns.

### Labor and Employee Benefits Issues
(Fees: $76,293.00; Hours: 111.50)

41.    This subject matter relates to services rendered by Akin Gump in connection with the Committee's analysis of the Debtors' benefit plans and general labor matters. During the Compensation Period, Akin Gump attorneys spent time analyzing the pension and employee related issues attendant to the various asset divestitures described herein, and where appropriate, commenting on and negotiating the underlying documentation of such transactions.

42.    Akin Gump attorneys spent considerable time during the Compensation Period working with the Committee's other professionals to analyze strategic alternatives with respect to the warning notice (the "Warning Notice") purportedly issued to NNI by the U.K. Pensions Regulator, initiating administrative proceedings (the "U.K. Pension Proceedings") regarding the

alleged shortfall in the funding of the Nortel Networks U.K. Pension Plan, and asserting that the issuance of a financial support direction against NNI, among others, is reasonable.

43.     As the Court is aware, on February 18, 2010, the Debtors filed the Debtors' Motion for Entry of an Order Enforcing the Stay With Respect to the U.K. Pension Proceedings (the "U.K. Pension Stay Motion"), seeking to enforce the automatic stay against the Nortel Networks UK Pension Trust Limited (the "U.K. Pension Trustee") and the Board of the Pension Protection Fund (the "PPF") with respect to their participation in the U.K. Pension Proceedings. This Court entered an order approving the U.K. Pension Stay Motion (the "U.K. Pension Stay Order") following a lengthy hearing on February 26, 2010, following which, the U.K. Pension Trustee and PPF filed a notice of appeal and motion for direct certification (the "U.K. Certification Motion") of such appeal to the Third Circuit Court of Appeals. On March 11, 2010, the Committee filed a joinder to the Debtors' response in opposition to the U.K. Certification Motion. This Court entered an order denying the U. K. Certification Motion on March 18, 2010. Since that time, the Delaware District Court has denied a motion by the U.K. Pension Trustee and PPF to stay the U.K. Pension Stay Order and referred the appeal to a magistrate judge.

### Intercompany Issues

(Fees: $44,782.50; Hours: 60.80)

44.     This subject matter relates to time spent by Akin Gump attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and their impact on the Nortel Debtors' Insolvency Proceedings. As required under the terms of the Interim Funding Agreement, Akin Gump, along with the Committee's other professionals, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding a protocol for resolving disputes concerning the allocation of sale proceeds generated by the

various asset sales consummated by the estates. Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a framework for the allocation of sale proceeds.

### Intellectual Property

(Fees: $88,685.00; Hours: 132.40)

45.    During the Compensation Period, Akin Gump attorneys continued to review and examine the Nortel Debtors' intellectual property portfolio, analyze intellectual property issues associated with the various asset divestitures by the estates, and consider strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates. In connection therewith, Akin Gump attorneys spent considerable time during the Compensation Period working with Capstone to prepare a presentation for the Committee on the Nortel Debtors' intellectual property portfolio and issues related thereto.

### Non-Debtor Affiliates

(Fees: $9,385.00; Hours: 15.10)

46.    This subject matter relates to time spent by Akin Gump attorneys in connection with certain restructuring issues and proposals related to Nortel's non-Debtor affiliates. During the Compensation Period, Akin Gump attorneys, along with Capstone, worked with the Nortel Debtors to negotiate and document a trust (the "Cascading Director Indemnity Trust") to indemnify certain individuals who will serve as directors and officers of certain of the Nortel Debtors' non-filed subsidiaries and affiliates in order to facilitate the participation of these entities in the various divestiture processes described above. Akin Gump attorneys also worked with the Debtors' professionals to negotiate a side agreement among NNI and NNL to ensure that the costs associated with the Cascading Director Indemnity Trust are shared in a manner that

17

protects the interests of the Debtors' estates.  An order approving the Cascading Director

Indemnity Trust and the related side agreement was entered by this Court on March 31, 2010.

### Non-Working Travel

(Fees: $13,045.75; Hours: 21.45)

47.     During the Compensation Period, Akin Gump attorneys spent 42.90 non-working

hours traveling to Court hearings and/or meetings.  Pursuant to Local Rule 2016-2(d)(viii), Akin

Gump has discounted this time by 50% and, accordingly, has billed 21.45 working hours

traveling for the Compensation Period.

### V.     ALLOWANCE OF COMPENSATION

48.     The professional services rendered by Akin Gump required a high degree of

professional competence and expertise so that the numerous issues requiring evaluation and

determination by the Committee could be addressed with skill and dispatch and have, therefore,

required the expenditure of substantial time and effort.  It is respectfully submitted that the

services rendered to the Committee were performed efficiently, effectively and economically,

and the results obtained to date have benefited not only the members of the Committee, but also

the unsecured creditor body as a whole and the Debtors' estates.

49.     The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331.  Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

50.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board
> certified or otherwise has demonstrated skill and experience in the
> bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary
> compensation charged by comparably skilled practitioners in cases other
> than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

51.     The total time spent by Akin Gump attorneys and paraprofessionals during the

Compensation Period was 1505.05 hours. The work involved, and thus the time expended, was

carefully assigned in light of the experience and expertise required for a particular task.

52.     As shown by this application and supporting documents, Akin Gump spent its

time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is

19

a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $20,735.21 for which Akin Gump respectfully requests reimbursement in full.

53.    The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

54.    Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for computer assisted legal research.

55.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

56.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court:

(a)    approve the allowance of $958,619.25 for compensation for professional services rendered to the Committee during the period from March 1, 2010 through and including March 31, 2010;

(b)    approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period from March 1, 2010 through and including March 31, 2010 in the amount of $20,735.21; and

(c)    authorize and direct the Debtors to immediately pay to Akin Gump the amount of $787,630.61, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:    New York, New York
            April 28, 2010

AKIN GUMP STRAUSS HAUER & FELD LLP

By: _____
David H. Botter (*pro hac vice*)
A Member of the Firm
One Bryant Park
New York, New York 10036
(212) 872-1000
Co-Counsel to the Official Committee of
Unsecured Creditors

21