IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re*                                                     :    Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                          :    Case No. 09-10138 (KG)
:
             Debtors.     :    Jointly Administered
:
:    **RE: D.I. 1760**
:
:    Hearing date: May 19, 2010 at 2:00 p.m. (ET) (proposed)
:    Objections due: May 14, 2010 at 4:00 p.m. (ET) (proposed)
:
------------------------------------------------------------X

**DEBTORS' MOTION TO AMEND THE INTELLECTUAL
PROPERTY LICENSE AGREEMENT AND TRANSITION
SERVICES AGREEMENT IN THE SALE OF THE DEBTORS'
NEXT GENERATION PACKET CORE NETWORK COMPONENTS TO HITACHI**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 363 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to amend the Intellectual Property License Agreement and Transition Services Agreement with Hitachi (each as defined below); and granting such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 363 and 105(a) of the Bankruptcy Code and Bankruptcy Rule 6004(h).

**Background**

**A.    Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.     On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

---

[4]     Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099]. On March 10, 2010, Nortel Networks Telecomunicacoes do Brasil Ltda. ("NN Brazil") filed for bankruptcy protection in Brazil, and was placed under the control of a Brazilian bankruptcy trustee. NN Brazil will no longer be participating in the Nortel global restructuring efforts.

**B.    Debtors' Corporate Structure and Business**

11.    Nortel is a technology company that designs, develops and deploys communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.    Case Milestones**

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks

5

business unit to Ciena Corporation [D.I. 2070]; and (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]. In addition, Nortel has obtained Court approval for the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**D.    Sale of Nortel's Next Generation Packet Core Network Components**

15.    Nortel's Carrier Network's wireless business ("Wireless") offered wireless network solutions to service providers that supply mobile voice, data and multimedia communications services to individuals and enterprises using cellular telephones, personal digital assistants, laptops, soft-clients, and other wireless computing and communications devices. As part of the Wireless business, Nortel developed technologies focused in the areas of 2G, 3G and 4G broadband wireless. In this regard, Nortel conducted research and development on network components designed to provide data network connectivity for 2G GPRS, 3G UMTS and 4G LTE wireless networks and increase network bandwidth for multimedia content and applications over wireless networks (such components, the "Next Generation Packet Core Network Components").

16.    The Debtors conducted a sale process in accordance with the procedures approved by this Court to sell the Next Generation Packet Core Network Components. After the conclusion of the sale process, the Debtors determined that the highest and best bid was that of

Hitachi, Ltd. ("Hitachi"). As a result, NNI and certain of its affiliates (the "Sellers") entered into that certain Transaction Agreement, dated as of October 25, 2009 (the "Transaction Agreement") with respect to the Next Generation Packet Core Network Components by and among the Sellers and Hitachi as the purchaser (the "Purchaser"), which this Court subsequently authorized and approved by order entered October 28, 2009 [D.I. 1760] (the "Sale Order"). On October 28, 2009 this Court also entered an Order Authorizing the Debtors to File Under Seal the Sellers Disclosure Schedules and all Exhibits and Schedules to the Transaction Agreement Related to the Assets Being Sold at D.I. 1525, authorizing the Debtors to file under seal the Schedules to the Transaction Agreement pursuant to section 107(b) of the Bankruptcy Code [D.I. 1761] (the "Sealing Order"). In connection with the closing under the Transaction Agreement, the Sellers and the Purchaser entered into that certain Intellectual Property License Agreement, dated as of December 8, 2009 (the "IPLA") and that certain Transition Services Agreement, dated as of December 7, 2009 (the "TSA").

### Relief Requested

17. By this Motion, the Debtors seek an order approving certain amendments to the IPLA and TSA expanding the intellectual property rights licensed to the Purchaser under the TSA and IPLA.[5]

---

[5] As the Exhibits and Schedules to the Transaction Agreement were filed under seal pursuant to the Sealing Order, to the extent that the Amendment seeks to modify or add Exhibits and Schedules (including the IPLA) to the Transaction Agreement, the Debtors contend that the Sealing Order applies and permits them to file the modified and/or additional Exhibits and Schedules under seal. In particular, the portion of the Amendment modifying the IPLA, as described in paragraph 18, would divulge confidential commercial information relating to the additional intellectual property rights afforded to the Purchaser. It is important for the Debtors to maintain their ability to protect their intellectual property and not reveal the material terms under which they license or sublicense that intellectual property to contract counterparties. Keeping such terms confidential will further the Debtors' ability to maximize the value of their estates through protection of their intellectual property.

**Facts Relevant to this Motion**

18.     The Purchaser has requested to expand its rights under the IPLA and TSA to sublicense certain of the Sellers' intellectual property licensed to the Purchaser to an unaffiliated third party.  To that end, the Sellers have entered into that certain amendment to the TSA and IPLA with the Purchaser, dated as of May 3, 2010 (the "Amendment"), attached hereto as Exhibit B.  Under the Amendment, in exchange for the additional intellectual property rights given to the Purchaser, the Purchaser will pay the Sellers a licensing fee of $500,000 (the "Additional Licensing Fee").  Pursuant to the Sale Order approved by this Court, the Debtors are required to seek Court approval for any modification, amendment or supplement to the Transaction Agreement or related agreements that impacts the economic substance of the transaction in excess of two percent (2%) of the Purchase Price (as defined in the Transaction Agreement).  Because the Additional Licensing Fee is in excess of two percent (2%) of the Purchase Price, the Debtors have submitted this Motion for approval of their entry into the Amendment.  The Additional Licensing Fee will be deposited into the Escrow Account (as defined in the Sale Order) already established and holding the remainder of the proceeds from the original sale to Purchaser, pursuant to the Sale Order.  In accordance with this Court's order approving and authorizing the transactions contemplated by the IFSA (as defined in the Sale Order), the proceeds in the Escrow Account shall not be distributed in advance of the time specified in paragraph 23 of the Sale Order, but will be held subject to allocation among the various Nortel entities that might have a claim to a portion of those proceeds.

**Basis for Relief**

19.     The relief in this Motion is authorized by sections 363 and 105(a) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue an order…that is necessary or appropriate to carry out the provision of this title." 11 U.S.C.

§ 105(a). *See* In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); In re VII Holdings Co., 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (*citing* In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004)).

20.    Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's assets in a way that ventures beyond an ordinary course transaction. Myers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996).

21.    The use or transfer or estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. The Committee of Equity Security Holders v. Lionel Corporation (In re Lionel Corporation), 722 F.2d 1063, 1070-71 (2d Cir. 1983); In re Decora Industries, Inc., No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991); Travelers Casualty and Surety Company v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." In re Montgomery Ward, 242 B.R. at 153-54 (quoting In re Lionel, 722 F.2d at 1071). In addition, a debtor must show that the transaction has

been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange.  See <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. at 176; <u>In re Decora Industries, Inc.</u>, 2002 WL 32332749, at *2.

22.     The Debtors respectfully submit that the Sellers entry into the Amendment meets each of the requirements under section 363 of the Bankruptcy Code.  The Amendment is supported by a sound business purpose because it provides for an additional payment in respect of the Debtors' intellectual property already licensed to Purchaser pursuant to the IPLA and TSA.  Furthermore, entry into the Amendment continues the process of joint cooperation amongst the Debtors and their affiliates to maximize value to the estates.  The Amendment has been entered in good faith, and provides reasonable and fair value to the Debtors' estates and their creditors.

23.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, all orders authorizing the sale or use of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order.  The purpose of Bankruptcy Rules 6004(h) is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.  <u>See</u> Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Although Bankruptcy Rules 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, commentators agree that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately where there has been no objection to the procedure.  <u>See generally</u> 10 <u>Collier on Bankruptcy</u> 6004.09 (15th ed. 1999).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time necessary to file such appeal.  <u>Id.</u>

24. Pursuant to the Amendment and the resulting necessity for the transaction to be consummated within five business days of the final approval of the Amendment by this Court, which must be in advance of June 1, 2010, the Debtors submit that the waiver of any applicable stays is appropriate in this circumstance.

## Notice

25. Notice of the Motion has been given via overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Purchaser and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

26. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: May 4, 2010<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>James L. Bromley (*admitted pro hac vice*)<br>Lisa M. Schweitzer (*admitted pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors<br>and Debtors in Possession* |

3529345.1