**EXHIBIT B**

EXECUTION

# AMENDMENT TO
# THE
# INTELLECTUAL PROPERTY LICENSE AGREEMENT
# AND
# TRANSITION SERVICES AGREEMENT

This Amendment to the Intellectual Property License Agreement and Transition Services Agreement (this "Amendment") is made and entered into as of May 3, 2010 ("Amendment Date"), BY AND BETWEEN:

>**NORTEL NETWORKS LIMITED**, a corporation duly incorporated under the laws of Canada, having its executive offices at 5945 Airport Road, Suite 360, Mississauga, Ontario, L4V 1R9, Canada, and

>**NORTEL NETWORKS INC.**, a Delaware corporation, having its executive offices at 220 Athens Way, Suite 300, Nashville, TN 37228, U.S.A (collectively, "Nortel"), each acting on its own behalf and, to the extent of its legal right to do so, on behalf of its Affiliates,

AND

>**HITACHI, LTD.**, a company organized under the laws of Japan, having its executive offices at Hitachi Ltd. Telecommunications & Network Systems Division, 216 Totsuka-cho, Totsuka-ku, Yokohama-shi, Kanagawa 244-8567 Japan (hereinafter "Hitachi"), acting on its own behalf and on behalf of its Affiliate Hitachi Communication Technologies America, Inc. ("HCTA"); each a "Party" and collectively, the "Parties."

WHEREAS, Nortel Networks Limited and Hitachi previously entered into an Intellectual Property License Agreement dated as of December 8, 2009 (the "IPLA") and Nortel and HCTA entered into a Transition Services Agreement dated as of December 7, 2009 (the "TSA");

WHEREAS, Nortel and Hitachi desire to amend the IPLA and TSA to, among other things, permit Hitachi to sublicense certain Licensed Intellectual Property and Licensed Applications to an unaffiliated sublicensee;

WHEREAS, pursuant to Section 8.05 of the IPLA and Section 21 of the TSA, the IPLA and TSA, respectively, may be amended pursuant to a written agreement by the parties; and

WHEREAS, pursuant to Section 3 of the Amended Approval and Vesting Order (Next Generation Packet Core Business) issued by the Ontario Superior Court of Justice on December 3, 2009 ("Court Order"), Nortel has obtained consent from the Monitor (as defined in the Court Order) ( "Monitor") to enter into this Amendment.

2

WHEREAS, the effectiveness of this Amendment is conditioned on approval of this Amendment by the U.S. Bankruptcy Court and CCAA Court.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.  <u>Definitions</u>.  Except as otherwise provided herein, capitalized terms used in this Amendment shall have meanings ascribed to them in the IPLA or TSA, as applicable.

**Amendment of TSA**

2.  <u>Amendment of TSA:  Section 3.0 of Part B of Schedule 1</u>.  Subject to paragraph 10 of this Amendment, the first two sentences of Section 3.0 of Part B of Schedule 1 of the TSA shall be deleted in their entirety and replaced with the following (the rest of Section 3.0 of Part B of Schedule 1 of the TSA shall continue in full force and effect):

> "The Sellers hereby grant to the Purchaser a worldwide, perpetual, irrevocable, fully paid up, royalty free, non-exclusive, non-transferable (except in connection with an assignment in accordance with Section 3.05 of the IPLA), non-sublicensable (other than as expressly provided below) license to use, reproduce, modify and make derivative works of the following applications listed below, in source code and object code form, including related documentation ("<u>Licensed Applications</u>"), solely for internal use in connection with (i) the Next Generation Packet Core Network Components of the Purchaser and its Affiliates and (ii) solely in the case of a sublicense pursuant to subsection (z) below, in connection with Purchaser's sublicensee's internal development and testing of Next Generation Packet Core Network Components of such sublicensee, including such sublicensee's Next Generation Packet Core Network Components using architectures or hardware other than Sellers' ATCA (excluding Passport or Shasta/SER) provided such Next Generation Packet Core Network Components of such sublicensee incorporate Software included in the Assigned Intellectual Property; but in each case of (i) and (ii) with no right to commercialize (i.e., sell, license, sublicense, or distribute to third parties other than sublicenses to permitted sublicensees as provided herein) such Licensed Applications.  The foregoing license includes the right of the Purchaser to grant sublicenses (no broader than the license granted herein) (x) to the Purchaser's Affiliates, (y) to subcontractors of the Purchaser or its Affiliates acting for or on behalf of the Purchaser or such Purchaser Affiliate, and (z) with respect only to the non-exclusive right to use, reproduce, modify and make derivative works of, solely for internal use for development and testing purposes, the Licensed Applications CATT and CATT-LW in object code and source code form ("<u>Sublicensable CATT Tools</u>"), to one sublicensee (together with such sublicensee's successors and assigns) of the Purchaser under contract with Purchaser (as such sublicensee was identified to Nortel in writing on April 30, 2010) to sublicense any Software included in the Assigned Intellectual Property or Next Generation Packet Core Network Components (it being understood that, under this subsection (z), Purchaser does not have the right to grant a sublicense more than once and

3                                                                Confidential

does not have the right to grant a sublicense hereunder to any Patent with respect to the provision of any services to third parties, or with respect to any modifications or derivative works of the Sublicensable CATT Tools (to the extent such derivative works are different or modified from the Sublicensable CATT Tools). The permitted sublicensee shall have the limited right to further sublicense to the same extent that Licensee has in subsections (x) and (y) above (in which case references to "Purchaser" in subsections (x) and (y) shall refer to the permitted sublicensee). The sublicense to a permitted sublicensee under subsection (z) must be pursuant to a written agreement with Purchaser which contains terms that are as protective of any Confidential Information in the Sublicensable CATT Tools as Sections 4.01, 4.02 and 4.03 of the IPLA. Purchaser shall be responsible for the performance and actions of any permitted sublicensee (and its sublicensees) under subsection (z).

## Amendment of IPLA

3.  Amendment of IPLA: Schedule D. The attached Schedule D shall be inserted after Schedule C of the IPLA as a new schedule incorporated in and to the IPLA.

4.  Amendment of IPLA: Section 3.02. Subject to paragraph 10 of this Amendment, Section 3.02 of the IPLA shall be deleted in its entirety and replaced with the following:

**[REDACTED - specific terms of sublicense as described in paragraph 18 of the motion.]**

5.                      **Payment**. Subject to the provisions of this paragraph 5, for the sublicense rights granted to HCTA and Hitachi, respectively, pursuant to this Amendment of both (i) the Sublicensable CATT Tools pursuant to Section 3.0(z) of Part B of Schedule 1 of the TSA and (ii) the Common Documentation pursuant to Section 3.02(iv) of the IPLA, Hitachi agrees to pay to an account designated in a written notice to Hitachi at least ten (10) days prior to the Effective Date by, and held on behalf of, the Sellers (as such term is defined under the Transaction Agreement) a fee of Five Hundred Thousand U.S. Dollars (US$500,000.00) (the "Price") within five (5) Business Days (as such term is defined in the Transaction Agreement) of the Approval Date. Payment of all or any portion of the Price may be made by an Affiliate of Hitachi (in lieu of by Hitachi) provided that such affiliate is not registered for Goods & Services Tax (GST) in Canada. No such fee shall be owed for any sublicense granted if such sublicense could have been granted pursuant to the terms of the TSA or IPLA prior to the Amendment Date (e.g., if such sublicense is to a Hitachi Affiliate, or to a subcontractor, customer, OEM, or other sublicensee of Hitachi or its Affiliates permitted under the applicable terms prior to the Amendment Date). If Hitachi is required for any reason to deduct or withhold from the Price any tax imposed by any tax authority, such payment of the Price shall be increased to an amount which, after taking into account such deduction or withholding, will result in payment to the Sellers of the full amount such Sellers would have received from Hitachi had no such deduction or withholding been made. Hitachi shall furnish the Sellers with such evidence as may be required by the applicable Tax Authorities (as such term is defined in the Transaction Agreement) to establish that any such Tax has been paid, and shall indemnify and hold harmless the Sellers on an after-Tax basis from any liability for penalties or interest due to the payor's failure to timely withhold and remit amounts in respect of taxes to the applicable tax authority. Except as provided in the Tax Side Agreement, the Sellers shall have no obligation to complete and/or file with any tax authority an application, certificate of exemption, or any other

documents that would reduce the amount of withholding taxes to be paid, if any, in connection with the foregoing. "Tax Side Agreement" shall mean the Hitachi IP License Tax Letter Agreement entered into as of May 3, 2010, among Nortel Networks Limited, Nortel Networks Inc. and Hitachi.

6. <u>Invoice</u>.  The parties agree that Nortel will provide an invoice to Hitachi for the Price in the form attached as <u>Exhibit I</u> hereto.

7. <u>Transfer Taxes</u>.  The parties agree that the Price is exclusive of any Transfer Taxes (as such term is defined under the Transaction Agreement). Hitachi shall promptly pay directly to the appropriate tax authority all applicable Transfer Taxes that may be imposed upon or payable or collectible or incurred in connection with this Amendment or the transactions contemplated herein; provided, that if any such Transfer Taxes are required to be collected, remitted or paid by Nortel or any subsidiary, affiliate, representative or agent thereof, such Transfer Taxes shall be paid by Hitachi to Nortel, as requested.  The parties shall make commercially reasonable efforts to avoid the imposition of Transfer Taxes in connection with this Amendment, including, if appropriate, by designating a Hitachi Affiliate (subject to paragraph 5) to make the payment described in paragraph 5.

8. <u>Monitor's Consent.</u>  Nortel represents that, pursuant to the Court Order, Nortel has obtained the consent of the Monitor to enter into this Amendment.

9. <u>Court Approval</u>.  The Parties acknowledge that this Amendment is subject to, and its effectiveness is conditioned on, approval of the U.S. Bankruptcy Court and CCAA Court (the date upon which final approval of the Amendment by both the U.S. Bankruptcy Court and CCAA Court has been obtained, the "Approval Date").  If this Amendment has not been approved (in its current form without modification) by the Monitor and the courts identified above by June 1, 2010, Hitachi may terminate this Amendment by written notice to NNI, in which case this Amendment shall not go into effect and neither party shall have any obligation under this Amendment.

10. <u>Effective Date of Amendment.</u>   Notwithstanding anything to the contrary herein, this Amendment shall become effective only upon and shall be of no effect until the date upon which the Price is paid in full in accordance with paragraph 5 of this Amendment (such date, the "Effective Date").

11. <u>Governing Law and Jurisdiction</u>.  Capitalized terms used in this paragraph 11 shall have meanings ascribed to them in the Transaction Agreement, except that the terms "Party" and "Parties" shall have the meaning specified in this Amendment. Any questions, claims, disputes, remedies or Actions arising from or related to this Amendment, and any relief or remedies sought by either of the Parties, shall be governed exclusively by the Laws of the State of New York applicable to contracts made and to be performed in that State and without regard to the rules of conflict of laws of any other jurisdiction.  To the fullest extent permitted by applicable Law, each Party: (i) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever arising out of, or in connection with, this Amendment, or the transactions contemplated hereby shall be brought only in (A) the Bankruptcy Court, if brought

prior to the entry of a final decree closing the Chapter 11 Cases, or the Canadian Court, if brought prior to the termination of the CCAA Cases, provided that if (x) a final decree closing the Chapter 11 Cases has not been entered and (y) the CCAA Cases have not terminated, the U.S. Debtors, the Canadian Debtors or the Purchaser may, in accordance with the Cross-Border Protocol, move the Bankruptcy Court and the Canadian Court to hold a joint hearing of the Bankruptcy Court and the Canadian Court to determine the appropriate jurisdiction for such claim, action or proceeding, and (B) in the New York Courts, if brought after entry of a final decree closing the Chapter 11 Cases and termination of the CCAA Cases, and shall not be brought in each case, in any other court in the United States of America, Canada or any court in any other country; (ii) agrees to submit to the jurisdiction of the Bankruptcy Court, the Canadian Court, the New York Courts and the Ontario Court, as applicable, pursuant to the preceding clauses (A) and (B) for purposes of all legal proceedings arising out of, or in connection with, this Amendment or the transactions contemplated hereby; (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of such action brought in any such court or any claim that any such action brought in such court has been brought in an inconvenient forum; (iv) agrees that the mailing of process or other papers in connection with any such action or proceeding in the manner provided in Section 8.15 of the Intellectual Property License Agreement or any other manner as may be permitted by Law shall be valid and sufficient service thereof, and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable Law.  However, nothing in the foregoing shall be deemed to prevent Purchaser from enforcing or defending its rights or defenses in the most appropriate forum between the U.S. Bankruptcy Court and the Canadian Court as to any debtor Party.  For example, this consent to U.S. Bankruptcy Court jurisdiction is not a waiver of Purchaser's right to resolve any disputes against a Canadian debtor in the Canadian Court, rather than in the U.S. Bankruptcy Court.

EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AMENDMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.  EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AMENDMENT, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS PARAGRAPH 11.

12. <u>Entire Agreement</u>.  This Amendment together with the TSA and IPLA sets forth the entire understanding of the Parties relating to the subject matter hereof, and all prior or contemporaneous understandings, agreements, representations and warranties relating to the subject matter hereof, whether written or oral, are superseded and all such prior or contemporaneous understandings, agreements, representations and warranties are hereby terminated.  Except as expressly modified hereby, all terms and conditions of the TSA

and IPLA, respectively, shall continue in full force and effect.  In the event of any inconsistency or conflict between the TSA or IPLA, respectively, and this Amendment, the terms and conditions of the TSA and IPLA shall govern and control.

   13.         <u>Confidentiality of Amendment</u>.  The Parties agree that this Amendment shall be subject to Section 4.04 of the IPLA.

   14.         <u>Counterparts</u>. The Parties may execute this Amendment in two or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together shall constitute one and the same instrument.

*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*

IN WITNESS WHEREOF, the Parties hereto have signed and executed this Amendment on the date first above mentioned.

| | |
|---|---|
| **NORTEL NETWORKS LIMITED** | **HITACHI, LTD.** |
| By: _[signature]_ | By: _____ |
| Name: Anna Ventresca | Name: _____ |
| Title: General Counsel-Corporate and Corporate Secretary | Title: _____ |
| Date: _____ | Date: _____ |

**NORTEL NETWORKS LIMITED**
By: _[signature]_
Name: John Doolittle
Title: SVP, Corporate Services & CFO
Date: _____

**NORTEL NETWORKS INC.**
By: _[signature]_
Name: Anna Ventresca
Title: Chief Legal Officer
Date: _____

Confidential
[New York #2204983 v15]
F-2828019

IN WITNESS WHEREOF, the Parties hereto have signed and executed this Amendment on the date first above mentioned.

| | |
|---|---|
| **NORTEL NETWORKS LIMITED** | **HITACHI, LTD.** |
| By: _____ | By: _S. Takahashi_____ |
| Name: _____ | Name: _Setsuo Takahashi_ |
| Title: _____ | Title: _EVP, Hitachi, LTD., TNS Division_ |
| Date: _____ | Date: _April 30, 2010_ |

**NORTEL NETWORKS LIMITED**

By: _____
Name: _____
Title: _____
Date: _____

**NORTEL NETWORKS INC.**

By: _____
Name: _____
Title: _____
Date: _____

[New York #2204983 v15]
sf-2828019

Confidential

Schedule D

Filed Under Seal

Exhibit I

Filed Under Seal