Exhibit B

Proposed Form of Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------------X
                                                           :
                                                           :
                                                           :
In re                                                      :
                                                           :
Nortel Networks Inc., et al.,¹                             :
                                                           :
                          Debtors.                         :
                                                           :
                                                           :
                                                           :
-----------------------------------------------------------X
```

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**RE: D.I. ___**

## ORDER (I) AUTHORIZING THE SALE OF CERTAIN ASSETS OF DEBTORS' GSM/GSM-R BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES; (II) AUTHORIZING AND APPROVING THE ASSET SALE AGREEMENT; (III) AUTHORIZING AND APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS; AND (IV) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL

Upon the motion dated May 11, 2010 (the "Motion"),[2] of Nortel Networks Inc. ("NNI")

and certain of its affiliated debtors, as debtors and debtors in possession in the above-captioned

cases (the "Debtors"), for entry of an order, as more fully described in the Motion, (i) authorizing

the sale of certain assets of the Debtors' GSM/GSM-R Business to Telefonaktiebolaget L M

Ericsson (publ) (together with any Designated Purchaser (as defined in the Agreement referred to

below), "Ericsson" or the "Purchaser") free and clear of all liens, claims, and encumbrances,

pursuant to sections 105 and 363 of the Bankruptcy Code, (ii) authorizing and approving that

certain asset sale agreement dated as of May 11, 2010 among Nortel Networks Limited ("NNL"),

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2]        Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Motion, or if not defined in the Motion, shall have the meanings ascribed to such terms in the Agreement (as defined herein).

NNI, Nortel Networks (CALA) Inc. ("NN CALA", together with NNL, NNI and certain other entities identified therein as sellers, the "Sellers") and Ericsson for the sale of the Assets (as defined in the Agreement) as described therein (the "Agreement"), (iii) authorizing and approving the assumption and assignment of the Assumed and Assigned Contracts, and (iv) authorizing the Debtors to file certain documents under seal; and the Court having reviewed and considered the Motion; and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement and the transactions contemplated thereby (the "Transactions"); and after due deliberation thereon, and good cause appearing therefore,

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    The Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b);

B.    Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2);

C.    The statutory predicates for the relief requested in the Motion are sections 105, 107(b)(1), 363 and 365 of the Bankruptcy Code, and Rules 6004, 6006, 9014 and 9018 of the Bankruptcy Rules, and Local Rules 6004-1 and 9018-1;

D.    Notice of the Motion has been provided to (i) counsel to the Purchaser; (ii) the Office of the U.S. Trustee; (iii) the Monitor; (iv) counsel to the Committee; (v) counsel to the Bondholder Group; (vi) the non-debtor parties to the Assumed and Assigned Contracts; (vii) all taxing authorities or recording offices which have a reasonably known interest in the relief requested, (viii) all United States federal, state, and local regulatory authorities with jurisdiction

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

over the Debtors, (ix) each of the entities that had received an invitation from the Sellers to acquire the Purchased Assets (as defined below), (x) all entities reasonably known by the Debtors to have asserted a lien against the Purchased Assets (as defined below), and (xi) the general service list established in these chapter 11 cases pursuant to Bankruptcy Rule 2002;

E.      Based upon the affidavit of service filed with the Court:  (a) notice of the Motion and the Sale Hearing was adequate and sufficient under the circumstances of these chapter 11 cases and these proceedings and complied with the various applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary; and (b) a reasonable opportunity to object and be heard with respect to the Motion and the relief requested therein was afforded to all interested persons and entities;

F.      The legal and factual bases set forth in the Motion and the record in these proceedings establish just cause for the relief requested therein, and that such relief is in the best interests of the Debtors, their estates, their creditors and the parties in interest;

G.      The Assets (as defined in the Agreement) sought to be transferred and/or assigned by the Debtors to the Purchaser pursuant to the Agreement (the "Purchased Assets") are property of the Debtors' estates and title thereto is vested in the Debtors' estates;

H.      The Debtors marketed the Purchased Assets and conducted the marketing and sale process as set forth in the Motion.  The marketing process for the Purchased Assets was adequate and reasonable;

I.      Subject to the entry of this Order, each Debtor that is a Seller (i) has full power and authority to execute Agreement, the Ancillary Agreements (as defined in the Agreement) and all other documents contemplated thereby, (ii) has all of the power and authority necessary to consummate the Transactions contemplated by the Agreement and (iii) has taken all

3

company action necessary to authorize and approve the Agreement, the Ancillary Agreements, the sale of the Purchased Assets (the "Sale") and the consummation by the Debtors of the Transactions.  No consents or approvals, other than those expressly provided for in the Agreement or this Order, are required for the Debtors to close the Sale and consummate the Transactions;

      J.      The Agreement and the Sale were negotiated and have been and are undertaken by the Debtors and the Purchaser at arm's length without collusion or fraud, and in good faith within the meaning of Bankruptcy Code section 363(m).  As a result of the foregoing, the Debtors and the Purchaser are entitled to the protections of section 363(m) of the Bankruptcy Code;

      K.      The total consideration provided by the Purchaser for the Purchased Assets is the highest or otherwise best offer received by the Debtors, and the Purchase Price (as defined in Agreement) constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act, and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Purchased Assets;

      L.      The Purchaser would not have entered into the Agreement and would not consummate the Transactions if the sale of the Purchased Assets to the Purchaser was not free and clear of all liens, claims and interests pursuant to Bankruptcy Code section 363(f), or if the Purchaser would, or in the future could, be liable for any of such liens, claims and interests.  A sale of the Purchased Assets other than one free and clear of all Claims and Interests (each as defined herein) would yield substantially less value for the Debtors' estates, with less certainty,

than the Sale. Therefore, the Sale contemplated by the Agreement is in the best interests of the

Debtors, their estates and creditors, and all other parties in interest;

        M.     The Debtors may sell the Purchased Assets free and clear of all Interests to

the extent provided in the Agreement because, with respect to each creditor asserting a Claim or

Interest, one or more of the standards set forth in Bankruptcy Code § 363(f)(1)-(5) has been

satisfied. Those holders of Claims and Interests who did not object or who withdrew their

objections to the Sale or the Motion are deemed to have consented to the Motion and Sale

pursuant to Bankruptcy Code § 363(f)(2). Those holders of Claims or Interests who did object

fall within one or more of the other subsections of Bankruptcy Code section 363(f);

        N.     Neither the Debtors nor the Purchaser engaged in any conduct that would

cause or permit the Agreement or the consummation of the Transactions to be avoided, or costs

or damages to be imposed, under section 363(n) of the Bankruptcy Code;

        O.     The Purchaser is not holding itself out to the public as a continuation of

the Debtors and is not an "insider" or "affiliate" of any of the Debtors, as those terms are defined

in the Bankruptcy Code, and no common identity of incorporators, directors or stockholders

existed between the Purchaser and any of the Debtors. Pursuant to the Agreement, the Purchaser

is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the

Excluded Assets (as defined in the Agreement), and the Purchaser is not holding itself out to the

public as a continuation of the Debtors. The conveyance of the Purchased Assets pursuant to the

Sale does not amount to a consolidation, merger or *de facto* merger of the Purchaser and the

Debtors and/or Debtors' estates, there is not substantial continuity between the Purchaser and the

Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the

Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser

does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing (as defined in the Agreement), the Purchaser shall be deemed to have assumed only the Assumed Liabilities (as defined in the Agreement). Pursuant to sections 363 and 365 of the Bankruptcy Code, except for the Assumed Liabilities, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Purchased Assets. The Court finds that the Purchaser would not have acquired the Purchased Assets but for the foregoing protections against potential claims based upon "successor liability" theories;

P.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed and Assigned Contracts to the Purchaser (or a Designated Purchaser) in connection with the consummation of the Sale, and the assumption, assignment, and sale of the Assumed and Assigned Contracts to the Purchaser is in the best interests of the Debtors, their estates, their creditors, and all parties in interest. The Assumed and Assigned Contracts being assigned to the Purchaser are an integral part of the Purchased Assets being purchased by the Purchaser, and accordingly, such assumption, assignment, and sale of the Assumed and Assigned Contracts are reasonable and enhance the value of the Debtors' estates. The Cure Costs required to be paid pursuant to section 365(b) of the Bankruptcy Code by the Debtors to the counterparty to the applicable Assumed and Assigned Contract, or as ordered to be paid by this Court pursuant to a final order (the "Cure Amounts") are deemed to be the entire cure obligation due and owing under the Assumed and Assigned Contracts under Bankruptcy Code section 365;

Q.      Each and every provision of the Assumed and Assigned Contracts or applicable non-bankruptcy law that purports to prohibit, restrict, or condition, or could be construed as prohibiting, restricting, or conditioning assignment of any Assumed and Assigned Contract has been satisfied or is otherwise unenforceable under Bankruptcy Code section 365;

R.      Upon the payment of the Cure Amount, if any, to the relevant counterparty, there are no outstanding defaults of the Debtors and their estates under the Assumed and Assigned Contracts;

S.      The Purchaser has demonstrated adequate assurance of future performance of all Assumed and Assigned Contracts within the meaning of Bankruptcy Code section 365;

T.      Upon the assignment and sale to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order;

U.      Entry into the Agreement, the Ancillary Agreements and consummation of the Transactions constitute the exercise by the Debtors of sound business judgment, and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest. The Court finds that the Debtors have articulated good and sufficient business reasons justifying the Sale of the Purchased Assets to the Purchaser.  Additionally, (i) the Agreement constitutes the highest or otherwise best offer for the Purchased Assets; (ii) the Agreement and the closing thereon will present the best opportunity to realize the value of the Purchased Assets and avoid further decline and devaluation of the Purchased Assets; (iii) there is risk of deterioration of the value of the Purchased Assets if the Sale is not consummated promptly; (iv) proceeding by private sale and not pursuant to an auction is justified under the circumstances; and (v) the Agreement and the closing thereon will provide a greater recovery for the Debtors' creditors than

would be provided by any other presently available alternative.

V.    The transfer of the Purchased Assets to the Purchaser will be a legal, valid and effective transfer of the Purchased Assets, and (except as otherwise provided in the Agreement) will vest the Purchaser with all of the Debtors' right, title and interest of, in and to the Purchased Assets, pursuant to sections 363 and 365 of the Bankruptcy Code, free and clear of all claims (as defined in § 101(5) of the Bankruptcy Code) and interests of any kind or nature whatsoever, rights or causes of action (whether in law or in equity), obligations, demands, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, the "Claims");

W.    The Sale does not constitute a *sub rosa* chapter 11 plan;

X.    Time is of the essence in consummating the Sale.  In order to maximize the value of the Debtors' assets, it is essential that the sale of the Purchased Assets occur within the time constraints set forth in the Agreement.  Accordingly, there is a cause to lift the stay contemplated by the Bankruptcy Rules 6004(h) and 6006(d);

Y.    The Schedules to the Agreement contain substantial sensitive commercial information, which would be damaging to the Debtors and the Purchaser if it were to be disclosed to their competitors.  Filing the Schedules to the Agreement under seal is in the best interests of the Debtors, their estates, creditors and other parties in interest.

Z.    The lists of customer counterparties to the Assumed and Assigned Contracts constitute commercially sensitive information, which would be damaging to the Debtors if it were to be disclosed to their competitors.  Filing the lists of customer counterparties to the Assumed and Assigned Contracts, including certificates of service and Exhibit C to the

Motion, under seal is in the best interests of the Debtors, their estates, creditors and other parties in interest.

    AA.  The Sale contemplated by the Agreement is in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest; and it is therefore:

    ORDERED ADJUDGED AND DECREED THAT:

    1.  The relief requested in the Motion is GRANTED.

    2.  All objections with regard to the relief sought in the Motion that have not been withdrawn, waived, settled or otherwise dealt with as expressly provided herein or on the record at the Sale Hearing, are hereby overruled on the merits, with prejudice.

    3.  Pursuant to Bankruptcy Code sections 105, 363 and 365 and subject to the satisfaction (or waiver, if permitted under the Agreement) of each condition under the Agreement, (a) the Debtors' entry into the Agreement and the Ancillary Agreements, (b) the Sale of the Purchased Assets, and (c) consummation of the Transactions are hereby approved and the Debtors are authorized to comply with the Motion, the Agreement and the Ancillary Agreements.

    4.  Pursuant to section 365 of the Bankruptcy Code, notwithstanding any provision of any Assumed and Assigned Contracts or applicable non-bankruptcy law that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors are authorized to assume and to assign the Assumed and Assigned Contracts to the Purchaser, which assignment shall take place on and be effective as of the Closing; provided, however, that nothing in the Motion, the Agreement, Ancillary Agreements or this Order shall preclude the Debtors and the Purchaser from seeking the assumption and assignment of any

further contracts after the Closing.

       5.     The Debtors' assumption of the Assumed and Assigned Contracts is subject to the consummation of the sale of the Assets to the Purchaser.  To the extent that an objection by a Counterparty to any Assumed and Assigned Contract, including any objection related to a Cure Amount, is not resolved prior to the Closing Date (as defined in the Agreement), the Debtors, in consultation with the Purchaser, but subject in all respects to the terms and conditions of the Agreement, may elect to (i) not assume such Assumed and Assigned Contract, (ii) postpone the assumption of such Assumed and Assigned Contract until the resolution of such objection or (iii) if the dispute relates solely to the amount of the Cure Amount, at the time of the assumption, pay to the Counterparty any undisputed portion of the proposed Cure Amount and place any disputed portion into a segregated interest-bearing account such that, upon any resolution by the Court of the Cure Amount dispute, or other agreement between the Debtors and the counterparty, the counterparty will be entitled to payment from the segregated account of any disputed portion and interest earned thereon to which the Court finds, or the Debtors and Counterparty agree, it is entitled.  Any Cure Amount outstanding on the Closing Date shall be paid to the appropriate counterparty as a condition subsequent to such assumption and assignment of the relevant Assumed and Assigned Contract.

       6.     Upon the Closing, (a) except as otherwise provided in the Agreement, the Debtors are hereby authorized and directed to consummate, and shall be deemed for all purposes to have consummated, the sale, transfer and assignment of the Purchased Assets to the Purchaser free and clear of any and all interests pursuant to sections 363 and 365 of the Bankruptcy Code, including (without limitation) all liens, including any lien (statutory or otherwise), mortgage, pledge, security interest, charge, right of first refusal, hypothecation, encumbrance on real

property, easement, encroachment, right-of-way, restrictive covenant on real property, real

property license, lease or conditional sale arrangement (collectively, including "Liens" as

defined in the Agreement, the "Liens") and debts, liabilities and obligations, whether accrued or

fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured

or determined or undeterminable, known or unknown, including those arising under any Law or

Action and those arising under any Contract or otherwise, including any Tax liability

(collectively, the "Liabilities" and together with the Liens, the "Interests"), with such Interests to

attach to the sale proceeds in the same validity, extent and priority as immediately prior to the

sale transactions, subject to any rights, claims and defenses of the Debtors and other parties in

interest, and (b) except as otherwise expressly provided in the Agreement, all such Interests shall

be and hereby are released, terminated and discharged as to the Purchaser and the Purchased

Assets.

       7.     Except as otherwise provided in the Agreement, the transfer of the

Purchased Assets to the Purchaser pursuant to the Agreement shall be, and hereby is deemed to

be, a legal, valid and effective transfer of the Purchased Assets, and vests with or will vest in the

Purchaser all right, title and interest of the Debtors in the Purchased Assets, pursuant to sections

363 and 365 of the Bankruptcy Code, free and clear of all Claims and Interests of any kind or

nature whatsoever, with any Interests attaching to the sale proceeds in the same validity, extent

and priority as existed with respect to the Purchased Assets immediately prior to the transaction,

subject to any rights, claims and defenses of the Debtors and other parties in interest.

       8.     Upon the Closing, and except as otherwise expressly provided in

Agreement, the Purchaser shall not be liable for any claims against, and Liabilities and

obligations of, the Debtors or any of the Debtors' predecessors or affiliates.  Without limiting the

generality of the foregoing, and except as otherwise provided in the Agreement, (a) the Purchaser shall have no liability or obligation to pay wages, bonuses, severance pay, benefits (including, without limitation, contributions or payments on account of any under-funding with respect to any pension plans) or make any other payment to employees of the Debtors, (b) the Purchaser shall have no liability or obligation in respect of any employee pension plan, employee health plan, employee retention program, employee incentive program or any other similar agreement, plan or program to which any Debtors are a party (including, without limitation, liabilities or obligations arising from or related to the rejection or other termination of any such plan, program agreement or benefit), (c) the Purchaser shall in no way be deemed a party to or assignee of any such employee benefit, agreement, plan or program, and (d) all parties to any such employee benefit, agreement, plan or program are enjoined from asserting against the Purchaser any Claims arising from or relating to such employee benefit, agreement, plan or program.

9.      As of the Closing, subject to the provisions of this Order, the Purchaser shall succeed to the entirety of Debtors' rights and obligations in the Assumed and Assigned Contracts first arising and attributable to the time period occurring on or after the Closing and shall have all rights thereunder.

10.      Upon the entry of this Order, (i) all defaults (monetary and non-monetary) under the Assumed and Assigned Contracts through the Closing shall be deemed cured and satisfied through the payment of the Cure Amounts; (ii) no other amounts will be owed by the Debtors, their estates or the Purchaser with respect to amounts first arising or accruing during, or attributable or related to, the period before Closing with respect to the Assumed and Assigned Contracts, (iii) any and all persons or entities shall be forever barred and estopped from asserting a claim against the Debtors, their estates, or the Purchaser that any additional amounts are due or

defaults exist under the Assumed and Assigned Contracts that arose or accrued, or relate to or are attributable to the period before the Closing.

11.    Pursuant to section 365(f) of the Bankruptcy Code, notwithstanding any provision to the contrary in the Assumed and Assigned Contracts, or in applicable non-bankruptcy law, that prohibits, restricts, or conditions the assignment of the Assumed and Assigned Contracts, the Debtors may assign the Assumed and Assigned Contracts to the Purchaser.  Upon assumption of the Assumed and Assigned Contracts by the Debtors and assignment to the Purchaser, the Assumed and Assigned Contracts shall be deemed valid and binding, in full force and effect in accordance with their terms, subject to the provisions of this Order.

12.    The Transactions have been undertaken by the Purchaser in good faith and the Purchaser is a good faith purchaser of the Purchased Assets as that term is used in Bankruptcy Code section 363(m).  The Purchaser is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

13.    Pursuant to sections 105 and 363 of the Bankruptcy Code and subject to the satisfaction (or waiver, if permitted under the Agreement) of each condition under the Agreement, the Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:  (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; (ii) assume and assign the Assumed and Assigned Contracts; and (iii) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement.  The Debtors are hereby authorized to perform each of their covenants and undertakings as provided in the

Agreement and the Ancillary Agreements prior to or after Closing without further order of the Court.

14.    The Debtors and the Purchaser are each hereby authorized to take any and all actions necessary or appropriate to:  (i) consummate the Sale of the Purchased Assets to the Purchaser and the Closing of the Sale in accordance with the Motion, the Agreement and this Order; and (ii) perform, consummate, implement and close fully the Agreement together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement.

15.    The Purchaser is hereby authorized in connection with the consummation of the Sale to allocate the Purchased Assets, including the Assumed and Assigned Contracts, among its affiliates, designees, assignees, and/or successors, including any Designated Purchaser (as defined in the Agreement), in a manner as it in its sole discretion deems appropriate and to assign, license, sublicense, transfer or otherwise dispose of any of the Purchased Assets, including the Assumed and Assigned Contracts, to its affiliates, designees, assignees, and/or successors with all of the rights and protections accorded to the Purchaser under this Order and the Agreement, and the Debtors shall cooperate with and take all actions reasonably requested by the Purchaser to effectuate any of the foregoing; provided, however, subject to the terms of the Agreement, the Debtors shall be reimbursed by the Purchaser for any reasonable expenses in connection therewith.

16.    No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  Except as provided in the Agreement, no brokers were involved in consummation of the Sale or the Transactions, and no brokers' commissions are due to any Person in connection with the Sale or the Transactions.

17.     The consideration provided by the Purchaser for the Purchased Assets under the Agreement shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the Sale may not be avoided, or costs or damages imposed or awarded, under section 363(n) or any other provision of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act or any other similar state laws.

18.     On the Closing Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of all of the Purchased Assets or a bill of sale transferring good and marketable title in such Purchased Assets to the Purchaser on the Closing Date pursuant to the terms of the Agreement, free and clear of all Liens, Claims and Interests (except as otherwise provided in the Agreement) pursuant to sections 363 and 365 of the Bankruptcy Code.

19.     Except as otherwise provided in the Agreement and to the extent permitted by applicable law, any and all Purchased Assets in the possession or control of any person or entity, including, without limitation, any vendor, supplier or employee of the Debtors shall be transferred to the Purchaser free and clear of all Liens, Claims and Interests (except as otherwise provided in the Agreement) pursuant to section 363 and 365 of the Bankruptcy Code and shall be delivered at the time of Closing to the Purchaser.

20.     Upon the Closing, all creditors, employees and equity holders of the Debtors are permanently and forever barred, restrained and enjoined from asserting any Liens, Claims or Interests or enforcing remedies, or commencing or continuing in any manner any action or other proceeding of any kind, against the Purchaser or the Purchased Assets on account of any of the Liens, Claims, Interests, Excluded Liabilities or Excluded Assets (except as

15

otherwise provided in the Agreement).

21.    The Transactions do not amount to a consolidation, merger or *de facto* merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates. Upon the Closing, the Purchaser shall be deemed to have assumed only the Assumed Liabilities. Except as otherwise provided in the Agreement, the Purchaser's acquisition of the Purchased Assets shall be free and clear of any "successor liability" claims of any nature whatsoever, whether known or unknown and whether asserted or unasserted as of the time of Closing. The Purchaser's operations shall not be deemed a continuation of the Debtors' business as a result of the acquisition of the Assets purchased.

22.    This Order (a) is and shall be effective as a determination that other than as provided in the Agreement, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Purchased Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets conveyed to the Purchaser. All such

entities described above in this paragraph are authorized and specifically directed to strike all recorded Interests against the Purchased Assets from their records, official and otherwise.

23.     If any person or entity which has filed statements or other documents or agreements evidencing Liens on, or Interests in, the Purchased Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Liens or Interests which the person or entity has or may assert with respect to the Purchased Assets, the Debtors and the Purchaser are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Purchased Assets.

24.     All counterparties to the Assumed and Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable request of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents, or other documents which may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

25.     Each and every federal, state and governmental agency or department, and any other person or entity, is hereby authorized to accept any and all documents and instruments in connection with or necessary to consummate the Transactions contemplated by the Agreement.

26.     No governmental unit may revoke or suspend any right, license, trademark or other permission relating to the use of the Purchased Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the

consummation of the Sale.

27.    This Order applies only to assets owned by the Debtors.  Consequently, notwithstanding any other provision of this Order or the Agreement to the contrary, the portions of this Order that approve the transfer of assets to the Purchaser free and clear of all liens and other encumbrances, or that modify, enjoin, release or otherwise limit the rights of creditors of entities transferring assets, apply only to assets owned by the Debtors and do not apply to any assets owned by non-debtor entities except to the extent otherwise agreed by such creditor in writing.

28.    Except as expressly provided in the Agreement or the Ancillary Agreements, nothing in this Order shall be deemed to waive, release, extinguish or estop the Debtors or their estates from asserting or otherwise impair or diminish any right (including without limitation any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Purchased Asset.

29.    Any amounts that become payable by the Debtors to the Purchaser pursuant to the Agreement or any of the documents delivered by the Debtors pursuant to or in connection with the Agreement shall (a) constitute administrative expenses of the Debtors' estates within the meaning of section 503(b) of the Bankruptcy Code, and (b) be paid by the Debtors in the time and manner as provided in the Agreement without further order of this Court.

30.    This Order shall not be modified by any chapter 11 plan confirmed in these chapter 11 cases or subsequent order of this Court unless expressly consented to in writing by the Purchaser.

31.    This Order and the Agreement shall be binding in all respects upon and inure to the benefit of the Debtors, the Purchaser, and all creditors and interest holders of any of

the Debtors, all non-debtor parties to the Assumed and Assigned Contracts, the Committee, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons" or other fiduciaries appointed in the Debtors' bankruptcy chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and the Agreement shall not be subject to rejection or avoidance under any circumstances.

32.     The failure specifically to include or make reference to any particular provisions of the Motion, the Agreement or any Ancillary Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Motion, the Agreement and the Ancillary Agreements are authorized and approved in their entirety.

33.     Subject to Section 10.6 of the Agreement, until these cases are closed or dismissed, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including, without limitation, the authority to: (1) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the terms of the Agreement, the Ancillary Agreements, all amendments thereto and any waivers and consents thereunder; (2) protect the Purchaser, or the Purchased Assets, from and against any of the Claims or Interests; (3) compel delivery of all Purchased Assets to the Purchaser; (4) compel the Purchaser to perform all of its obligations under the Sale Agreement; and (5) resolve any disputes arising under or related to the Motion, the Agreement, the Ancillary Agreements, the Sale or the Transactions.

34.     The Agreement, the Ancillary Agreements and any related agreements, documents or other instruments may be modified, amended, or supplemented through a written document signed by the parties in accordance with the terms thereof without further order of the

Court; *provided, however*, that any such modification, amendment or supplement is neither material nor materially changes the economic substance of the transactions contemplated hereby; and *provided further* that no such modifications, amendments, or supplements may be made except following two (2) days written notice to, or with the prior consent of, the Committee, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attention: Fred S. Hodara, Stephen Kuhn, and Kenneth Davis).

35.     Notwithstanding any provision in the Bankruptcy Rules (including Bankruptcy Rules 6004 and 6006) or Local Rules to the contrary: (i) the terms of this Order shall be immediately effective and enforceable upon its entry; (ii) the Debtors are not subject to any stay in the implementation, enforcement or realization of the relief granted in this Order; and (iii) the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

36.     The provisions of this Order are nonseverable and mutually dependent.

37.     The Purchaser shall deposit proceeds of the Sale, subject to Purchaser's rights under the Agreement and less applicable transfer or value-added taxes incurred by the Sellers (as such term is defined in the Agreement), and, to the extent agreed by the Sellers, any transaction costs, into an escrow account designated by the Sellers (the "Escrow Account"). The proceeds in the Escrow Account shall be governed by an escrow agreement that, among other things, shall provide that the proceeds only may be released from the Escrow Account upon either (a) written instruction delivered by all of the Sellers as to the distribution of such proceeds (subject to the prior consent of the Committee, the Monitor and the Bondholder Group acting in good faith) or (b) upon order of this Court and the Canadian Court (as defined in the Agreement) after notice and a joint hearing. The Debtors are hereby authorized to negotiate and enter into an

escrow agreement, on terms and conditions reasonably satisfactory to the Committee and the

Monitor acting in good faith, with an escrow agent to establish the Escrow Account without

further order of this Court.

38.    The Schedules delivered to the Court by the Debtors shall be kept

segregated and under seal by the Clerk of Court and shall not be made publicly available

pursuant to sections 105(a) and 107(b) of the Bankruptcy Code, Bankruptcy Rule 9018 and

Local Rule 9018-1(b).

39.    The lists of customer counterparties to the Assumed and Assigned

Contracts, including the certificates of service and Exhibit C to the Motion, delivered to the

Court by the Debtors shall be kept segregated and under seal by the Clerk of Court and shall not

be made publicly available pursuant to sections 105(a) and 107(b) of the Bankruptcy Code,

Bankruptcy Rule 9018 and Local Rule 9018-1(b).


Dated: _____, 2010
       Wilmington, Delaware

                                        _____
                                        THE HONORABLE KEVIN GROSS
                                        UNITED STATES BANKRUPTCY JUDGE