IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
: Chapter 11
*In re* :
: Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1] :
: Jointly Administered
Debtors. :
: Hearing date: May 19, 2010 at 2:00 PM (ET)
: (proposed)
: Objections due: May 17, 2010 at 12:00 PM (ET)
: (proposed)
:
------------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 105(a) AND § 363 (b) FOR ENTRY OF AN ORDER APPROVING THE GSM/GSM-R SIDE AGREEMENT AND GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession, (collectively, the "Debtors") hereby move this Court (the "Motion") for the entry of an order, substantially in the form attached hereto as Exhibit A, approving that certain GSM/GSM-R Side Agreement, attached hereto as Exhibit B (the "Side Agreement"), entered into by and among NNI, Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL", and, together with NNI and NNC, the "Main Sellers"), certain of their affiliates (together with the Main Sellers, the "Sellers"), the EMEA Sellers (as defined in the Side Agreement), certain other Selling Parties (as defined in the Side Agreement), the Joint Administrators (as defined below) and the French Office Holders (as defined in the Side

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Agreement); and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a) and 363 (b) of title 11 of the United States Code (the "Bankruptcy Code").

## Background

### A. Procedural History

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Federal Rule of Bankruptcy Procedure 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL (together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, this Court entered

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.     Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise

Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; and (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]. In addition, Nortel has obtained Court approval for the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009, this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Relief Requested**

15. By this Motion, the Debtors seek an order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, (a) approving the terms and conditions of the Side Agreement, and (b) granting related relief.

**Facts Relevant to this Motion**

**A.    The Interim Funding and Settlement Agreement**

16. On June 9, 2009, the Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (the "IFSA") [5] governing certain intercompany matters, including the obligations of the parties to the IFSA to

---

[5] The summaries and descriptions of the terms and conditions of the IFSA set forth in the Motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in

(a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "Interim Sales Protocol") for resolving disputes concerning the allocation of Sale Proceeds (as defined in the IFSA) from Sale Transactions (as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in any such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds). On June 29, 2009, this Court entered an Order (A) Approving the Interim Funding and Settlement Agreement, and (B) Granting Related Relief [D.I. 993].

**B.    Sale of Nortel's GSM/GSM-R Business**

17.    Global System for Mobile Communications ("GSM") is a widely deployed wireless technology standard for mobile phone networks. Historically, Nortel was a supplier of GSM networks to operators globally and worked with such operators to implement various GSM products. In this regard, Nortel historically developed, manufactured, tested, sold and supplied GSM access and core infrastructure, services and solutions (the "GSM Business"). Also Nortel supplied a variant of GSM technology for railways, which provides a secure communications system for railways operators (together with the GSM Business, the "GSM/GSM-R Business").

18.    On September 30, 2009, the Debtors filed a Motion for Orders (I) (A) Authorizing and Approving the Bidding Procedures, (B) Approving the Notice Procedures, and (C) Setting a

---

their entirety by the IFSA. In the event there is a conflict between the Motion and the IFSA, the IFSA shall control in all respects.

Date for the Sale Hearing, and (II) Authorizing and Approving the Sale of Certain Assets of Debtor's GSM/GSM-R Business [D.I. 1587] (the "Sale Motion") seeking approval of, among other things, the sale of the Assets (as such term is defined in the Sale Motion), and the approval of certain bidding procedures related thereto (the "Bidding Procedures"). Following a hearing on the Bidding Procedures, this Court and the Canadian Court, by an order dated October 15, 2009 [D.I. 1676], approved the Bidding Procedures to govern the sale by Nortel Networks Inc. and certain of its affiliates of the Assets.

19. In accordance with the Bidding Procedures, the Sellers conducted an auction on November 24, 2009 (the "Auction"). The Successful Bid (as such term is defined in the Bidding Procedures) for the sale of the Assets resulting from the Auction was the bid submitted by Ericsson and Kapsch Carriercom AG ("Kapsch"), dated as of November 24, 2009.

20. Accordingly, the Debtors and certain of their affiliates, including without limitation, certain of the Canadian Debtors, have entered into that certain Asset Sale Agreement, dated November 24, 2009, with Ericsson (the "North American Purchase Agreement"), and certain of the Debtors' European affiliates and the Joint Administrators have entered into an interdependent Asset Sale Agreement, dated November 24, 2009, with Kapsch (the "EMEA Purchase Agreement" and, together with the North American Purchase Agreement, the "Sale Agreements").

21. On December 3, 2009, this Court entered an Order Authorizing And Approving Sale of Debtors' GSM/GSM-R Business Free And Clear Of All Liens, Claims And Encumbrances [D.I. 2065].

22. On March 31, 2010, the transfer of Nortel's GSM/GSM-R Business to Ericsson and Kapsch was consummated in accordance with the terms of the Sale Agreements.

C.  **The Side Agreement**

23. In connection with the entry into the Sale Agreements, the Debtors and certain other Nortel entities (collectively, the "<u>Parties</u>") negotiated the Side Agreement[6] attached hereto as <u>Exhibit B</u>, to address certain issues among the Selling Parties raised by their entry into the Sale Agreement.

24. Certain terms of the Side Agreement are as follows:

- <u>Efforts to Complete the Transaction</u>. Each of the Parties shall use their reasonable best efforts to cooperate with each other, the Purchaser and the EMEA Purchaser in order to complete the Transaction.

- <u>Notice and Consultation</u>. Each of NNL, NNI and NNUK and, to the extent applicable, the Joint Administrators, shall provide to the others as much notice as possible and shall consult in good faith prior to (a) amending or waiving any material provision or right under their Respective Sale Agreement, (b) consenting to commencement of any Secondary Proceedings in relation to any EMEA Seller or any bankruptcy proceedings relating to any Non-Debtor Seller, or (c) delivering or otherwise consenting to the amount reflected in any Closing Statements, Disagreement Notice or any settlement regarding the matters contained therein or the Determination of Net Market Value.

- <u>Collection and Allocation of Total Proceeds</u>. Any payments by the Purchaser and the EMEA Purchaser to the Parties under the Sale Agreements or, upon release from escrow, any escrow agreements provided for in the Sale Agreements or the Transaction Documents, that is included in the Total Proceeds shall be collected and held in escrow in the Distribution Escrow Account. These sale proceeds will be distributed to the Parties in accordance with the Allocation Rules, the Side Agreement and the Distribution Escrow Agreement.

- <u>Allocation of Total Payments</u>. The Parties have agreed that each Party will initially bear its Initial Respective Percentage[7] and ultimately bear its Agreed Respective Percentage of the Total Payments, as set forth in the Side Agreement.

---

[6] Capitalized terms used in this section but not defined herein have the meanings ascribed to them in the Side Agreement. To the extent that there are inconsistencies between the description of the provisions of the Side Agreement contained in this Motion and the terms and conditions of the Side Agreement, the terms and conditions of the Side Agreement shall control.

[7] Initial Respective Percentage means one third (1/3) for NNI and its Respective Affiliates, one third (1/3) for NNC, NNL and its Respective Affiliates, and one third (1/3) for the EMEA Sellers and NNSA.

9

- <u>Tax Cooperation</u>. In the event that the preparation of a Tax Return could reasonably be expected to require a Partial Allocation or in the event that a Selling Party is preparing any Partial Allocation with the Purchaser or the EMEA Purchaser, the Selling Party responsible for filing such Tax Return shall provide notice to the other Selling Parties of such Tax Return or Partial Allocation. The notifying Party shall be required to consider any comments in good faith. The noticed Parties will not have a consent or veto right with regards to such Tax Return or Partial Allocation. This provision shall not or shall not be deemed to determine, ratify or adopt or have any impact whatsoever on the allocation of the proceeds.

- <u>Indemnification of the Distribution Agent and Escrow Agents</u>. The Parties have agreed that the costs of any indemnification of the Distribution Agent and the Escrow Agents shall be borne on a pro rata basis by each Selling Party in accordance with its Agreed Respective Percentage. In addition, the Parties have agreed that if the costs of any such indemnification arise solely from the breach or fault of one or more Parties, then such breaching Parties shall bear the cost of such indemnification.

### Basis for Relief

25. The relief requested in this Motion is authorized by sections 105(a) and 363(b) of the Bankruptcy Code. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. <u>See</u> <u>In re Combustion Engineering, Inc.</u>, 391 F.3d 190, 236 (3d Cir. 2004) (noting that section 105(a) of the Bankruptcy Code "has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."); <u>In re VII Holdings Co.</u>, 362 B.R. 663, 668 (Bankr. D. Del. 2007) (BLS) (noting that "[s]ection 105(a) bestows broad equitable powers on the Court.") (<u>citing</u> <u>In re Combustion Engineering, Inc.</u>, 391 F.3d 190, 236 (3d Cir. 2004)).

26. Section 363(b) of the Bankruptcy Code permits a debtor to use, sell or lease property of the estate outside of the ordinary course of business after notice and a hearing. 11 U.S.C. § 363. Section 363 applies when an agreement involves the disposition of the estate's

assets in a way that ventures beyond an ordinary course transaction. <u>Myers v. Martin (In re Martin)</u>, 91 F.3d 389, 395 (3d Cir. 1996).

27. The use or transfer of estate property under section 363 of the Bankruptcy Code must be supported by a sound business purpose. <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d 1063, 1070-71 (2d Cir. 1983); <u>In re Decora Indus., Inc.</u>, No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002); <u>Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)</u>, 242 B.R. 147, 153 (D. Del. 1999); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991); <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785, 2008 WL 821088, at *4 (D.N.J. Mar. 25, 2008). A court determining whether a sound business purpose justifies the transaction "should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike." <u>In re Montgomery Ward</u>, 242 B.R. at 153-54 (quoting <u>In re Lionel</u>, 722 F.2d at 1071). In addition, a debtor must show that the transaction has been proposed in good faith, that adequate and reasonable notice has been provided, and that it is receiving fair and reasonable value in exchange. <u>See</u> <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. at 176; <u>In re Decora Indus., Inc.</u>, 2002 WL 32332749, at *2.

28. The Debtors respectfully submit that the Side Agreement meets each of the requirements under section 363 of the Bankruptcy Code. The Side Agreement is supported by a sound business purpose because cooperation amongst the Sellers and the EMEA Sellers is essential to maximizing value in connection with the sale of Nortel's GSM/GSM-R Business, particularly given the ongoing creditor protection proceedings in various jurisdictions. The Debtors have entered into the Side Agreement in order to facilitate cooperation amongst the

Parties in working towards completion of the Transaction and to determine the allocation of the benefits and burdens of the Transaction.

## Notice

29. Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) counsel to the Purchaser, (ii) counsel to the EMEA Purchaser, (iii) U.S. Trustee; (iv) Monitor (v) counsel to the Committee; (vi) counsel to the Bondholder Group; (vii) Department of Justice; (viii) counsel to the Joint Administrators; and (ix) general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

30. No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  May 12, 2010
   Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Andrew R. Remming*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile:  (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*