## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| *In re:* | ) Chapter 11 |
|  | ) Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | ) Jointly Administered |
|  | ) |
| Debtors. | ) <u>Objection Deadline</u>: June 1, 2010 at 4:00 pm (ET) |
|  | ) <u>Hearing Date</u>: Scheduled only if necessary |
|  | ) |

**FOURTEENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
<u>MARCH 1 TO MARCH 31, 2010</u>
(All Amounts in Canadian Dollars)**

This is a(n): <u>x</u> monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | <u>Fraser Milner Casgrain LLP</u> |
| Authorized to Provide Professional Services to: | <u>Official Committee of Unsecured Creditors</u> |
| Date of Retention: | <u>March 5, 2009 (nunc pro tunc to January 26, 2009)</u> |
| Period for which Compensation And Reimbursement is sought: | <u>March 1 to March 31, 2010</u> |
| Amount of Compensation sought as actual, reasonable and necessary: | <u>CDN $550,471.53 (Fees $524,261.00 Plus Taxes $26,210.53)</u> <u>Equivalent to USD $541,663.99[2]</u> |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | <u>CDN $12,710.86 (Expenses $12,105.58 Plus Taxes $605.28)</u> <u>Equivalent to USD $12,507.49[2]</u> |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Thirteenth Monthly Fee Application was 3.90 hours and the corresponding compensation is CDN. $2,992.50 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on May 10, 2010 was CDN. $0.9840 : U.S. $1.00

**SUMMARY OF LAWYERS AND PARALEGALS
RENDERING SERVICES DURING THE PERIOD
MARCH 1, 2010 THROUGH MARCH 31, 2010
(All Amounts in Canadian Dollars)**

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|---|---|---|---|---|---|---|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 10.0 | $785.00 | $7,850.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 33.4 | $775.00 | $25,885.00 |
| LeGault, N.A. | Partner | Employment/Labour | Ontario - 1982 | 2.4 | $750.00 | $1,800.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 160.5 | $750.00 | $120,375.00 |
| Matheson, R.J. | Partner | Corporate/M&A/Finance/Real Estate | Ontario - 1980 | 6.9 | $785.00 | $5,416.50 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 188.2 | $750.00 | $141,150.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 15.0 | $675.00 | $10,125.00 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 3.4 | $600.00 | $2,040.00 |
| Dietrich, J. | Associate | Financial Restructuring | Ontario - 2004 | 0.1 | $510.00 | $51.00 |
| Banks, T. | Partner | Employment/Pension/ Research | Ontario - 2002 | 29.7 | $520.00 | $15,444.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 2.5 | $400.00 | $1,000.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 78.1 | $375.00 | $29,287.50 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 65.8 | $310.00 | $20,398.00 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 9.1 | $320.00 | $2,912.00 |
| Shay, R. | Partner | Corporate | Ontario - 1979 | 5.1 | $725.00 | $3,697.50 |
| Jacobs, R.C. | Consultant | Financial Restructuring | | 225.3 | $600.00 | $135,180.00 |
| Peters, Matthew | Partner | Taxation | Ontario - 2002 | 8.7 | $560.00 | $4,872.00 |
| Villeneuve, C. | Paralegal | | | 1.0 | $210.00 | $210.00 |
| Besner, Yan | Partner | Real Estate | Quebec - 2003 | 3.0 | $360.00 | $1,080.00 |
| Rehner, Alison | | | Student | 3.8 | $200.00 | $760.00 |
| TOTAL | | | | 852.0 | CDN. | $529,533.50 |
| | Less Non-Working Travel Time Discount (50% of $17,465.00) | | | | | ($5,272.50) |
| TOTAL | | | | 852.0 | CDN. | $524,261.00 |

**COMPENSATION BY PROJECT CATEGORY**
**MARCH 1, TO MARCH 31, 2010**
**(All Amounts in Canadian Dollars)**

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 12.9 | $7,635.50 |
| FMC Fee Application/Monthly Billing Reports | 3.9 | $2,850.00 |
| Analysis of Other Professionals Fee Applications/Rep | 11.9 | $7,140.00 |
| Retention of Professionals | 7.5 | $4,334.00 |
| Creditors Committee Meetings | 44.1 | $26,823.00 |
| Court Hearings | 181.6 | $120,850.50 |
| Financial Reports and Analysis | 5 | $3,750.00 |
| General Claims Analysis/Claims Objections | 40.5 | $24,266.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 11.4 | $6,120.00 |
| General Adversary Proceedings | 0.7 | $525.00 |
| Tax Issues | 12.2 | $7,122.00 |
| Labour Issues/Employee Benefits | 246.1 | $141,417.00 |
| Real Estate Issues/Leases | 7.1 | $5,566.50 |
| Plan, Disclosure Statement and Plan Related Document | 0.8 | $480.00 |
| Telecommunications/Regulatory | 28 | $16,187.50 |
| Asset/Stock Transaction/Business Liquidations | 93.2 | $57,036.00 |
| Travel | 15.1 | $10,545.00 |
| Intercompany Analysis | 34.8 | $23,824.00 |
| Canadian Proceedings/Matters | 93.2 | $61,607.50 |
| U.S. Proceedings/Matters | 2 | $1,454.00 |
| **Total** | 852 | $529,533.50 |

**DISBURSEMENT SUMMARY**
**MARCH 1 TO MARCH 31, 2010**
**(All Amounts in Canadian Dollars)**

Taxable Disbursements

| | |
|---|---|
| Accommodations | $4,422.09 |
| Airfare/Travel | $2,411.54 |
| Binding Books / Documents | $    40.40 |
| Cellular Phones | $  134.38 |
| Library Computer Research | $    98.05 |
| Long Distance Telephone Calls | $  366.84 |
| Meals & Beverages | $  978.41 |
| Parking | $      5.73 |
| Photocopy Charges | $2,421.40 |
| Process Server Fees | $    50.00 |
| SOQUIJ Search | $      3.85 |
| Ground Transportation (including Courier) | $1,172.89 |
| | |
| Total Taxable Disbursements | $12,105.58 |
| Total GST | 605.28 |
| Total Taxable Disbursements including Taxes | **$12,710.86 CDN.** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------X

In re                            : Chapter 11
                                : Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]     : Jointly Administered
                                :
                Debtors    : <u>Objection Deadline</u>: June 1, 2010 at 4:00 pm (ET)
                                : <u>Hearing Date</u>: Scheduled only if necessary

---------------------------------------------------X

## FOURTEENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM MARCH 1, 2010 THROUGH MARCH 31, 2010

Fraser Milner Casgrain LLP ("<u>FMC</u>" or the "<u>Applicant</u>"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "<u>Committee</u>") of Nortel Networks Inc., et al.

(the "<u>Debtors</u>"), hereby submits its fourteenth monthly application (the "<u>Application</u>") pursuant

to (i) sections 330 and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), (ii)

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), (iii) Rule

2016-2 of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "<u>Local</u>

<u>Rules</u>"), and (iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R.

Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation

and Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "<u>Administrative Fee Order</u>"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $550,471.53 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$524,261.00 for fees and CDN. $26,210.53 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $12,710.86 (CDN. $12,105.58 for expenses and CDN. $605.28 for applicable Canadian taxes) for the period from March 1 through March 31, 2010 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian Court.

5.    On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.    On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.    On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.    On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.
$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of
CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order
approving 100% of the fees and expenses sought in the First Interim Application, and FMC has
received payment of such amounts.

9.    On September 10, 2009, FMC filed its Second Interim Fee Application Request
for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its
Second Interim Application, FMC sought the award and allowance of fees in the amount of
CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the
amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court
entered an order approving 100% of the fees and expenses sought in the Second Interim
Application, and FMC has received payment of such amounts.

10.    On November 25, 2009, FMC filed its Third Interim Fee Application for the
period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its
Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN.
$1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of
CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an
order approving 100% of the fees and expenses sought in the Third Interim Application, and
FMC has received payment of such amounts.

11.    On February 24, 2010, FMC filed its Fourth Interim Fee Application for the
period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In
its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of
CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN.$24,078.44 (including applicable taxes).  On March 17, 2010, this Court entered

an order approving 100% of the fees and expenses sought in the Fourth Interim Application and

as of the date of this Application, FMC has not yet received payment of such amounts.

12.     On Thursday, April 1, 2010, FMC filed its Thirteenth Monthly Application for

Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered

during the period from February 1, 2010 through February 28, 2010 (the "Thirteenth Monthly

Application").  In its Thirteenth Monthly Application, FMC sought the award and allowance of

fees in the amount of CDN.$665,828.63 (including applicable taxes) and the reimbursement of

expenses in the amount of CDN.$7,031.01 (including applicable taxes).  A certificate of no

objection was filed with respect to the Thirteenth Monthly Application after April 21, 2010.  As

of the date of this Application, FMC has not received any payment on account of the Thirteenth

Monthly Application.

### III.     RELIEF REQUESTED

13.     By this Application, FMC seeks (i) interim allowance and award of compensation

for the professional services rendered by FMC during the Compensation Period in the amount of

CDN. $550,471.53 (CDN. $524,261.00 for fees and CDN. $26,210.53 for applicable Canadian

taxes) representing 851.0 hours in professional services and 1.0 hours in paraprofessional

services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the

Compensation Period in connection with the rendition of such professional services and

paraprofessional services in the amount of CDN. $12,710.86 (including applicable Canadian

taxes).

14.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its

fees (CDN $440,377.22 including applicable Canadian taxes) and 100% of its expenses (CDN.

$12,710.86 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

15.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

16.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

### IV.    SUMMARY OF SERVICES RENDERED

17.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

18.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

19.     In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

20.     FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

21.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

## Case Administration

(Fees: CDN. $7,635.50 plus CDN. $381.78 taxes; Hours 12.90)

22.     During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other professionals acting on behalf of the Committee, including Jefferies and Capstone.

23.    FMC believes it was able to efficiently address all issues relating to the case administration that have arisen during the pendency of the Canadian Proceeding and the Recognition Proceeding.

### Canadian Proceedings

(Fees: CDN. $61,607.50 plus CDN. $3,080.38 taxes; Hours 93.20)

24.    During the Compensation Period, FMC reviewed and analyzed the amended and restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in connection with various issues and transactions arising in the Canadian Proceeding. FMC also reviewed and analyzed successive motions filed by the Canadian Debtors and the Monitor (as that term is defined below) in the Canadian Proceeding. In connection therewith, FMC, carefully analyzed the relief requested in the proposed order, participated in conference calls and in-person meetings with the Monitor (as that term is defined below), Nortel Debtors' Canadian counsel, as well as other major stakeholders, to discuss the issues associated therewith. In connection with such analyses, FMC conducted diligence on the subject matter of each motion in order to determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of the Debtors' cases. In connection therewith FMC, along with Akin Gump, participated in numerous conference calls with the Debtors' professionals and the Monitor (as that term is defined below) and its professionals, to discuss the relief requested in the Canadian Proceeding. FMC, with the assistance of Akin Gump, ensured that the Committee had a complete understanding of the Canadian Proceeding and was apprised of all material developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

25.     During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with an update on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors. FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

### FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $2,850.00 plus CDN. $142.50 taxes; Hours 3.90)

26.     This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

### Committee Meetings

(Fees: CDN. $26,823.00 plus CDN. $1,341.15 taxes; Hours 44.10)

27.     This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

28.     Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding.  Thereafter, FMC discussed each of these matters with Akin Gump and the Committee's other professionals, the

Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

29.   FMC, together with Akin Gump, also held regular telephone conferences with the Debtors' principal officer, Mr. John Ray, during which, Akin Gump, FMC and the Committee's other professionals, discussed with Mr. Ray various matters arising in these Insolvency Proceedings, and the impact of such matters on the Debtors' unsecured creditors.

30.   Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters, as well as regarding the prospects of reorganization.

### Court Hearings

(Fees: CDN $120,850.50 plus CDN. $6,042.53 taxes; Hours 181.60)

31.   This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. As discussed in more detail in the "Labour and Employee Benefits Issues" section below, FMC lawyers appeared at a multi-day court hearing in early March, 2010 and a subsequent hearing at the end of March, 2010 in connection with the "Canadian Employee Settlement" (as that term is

defined below). FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors.

### Asset Sales

(Fees: CDN $57,036.00 plus CDN. $2,851.80; Hours 93.20)

32.     FMC spent time during the Compensation Period working closely with the Nortel Debtors, Akin Gump and the Committee's other advisors and the advisors of the Nortel Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets. Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, as well as professionals for the other major creditor constituents to evaluate and analyze divestiture options for the metro ethernet networks ("MEN"), GSM/GSM-R ("GSM") and Carrier Voice Over IP and Application Solutions ("CVAS") businesses. In that regard, FMC worked closely with the Committee's other advisors to evaluate third party bids for those assets, assess and analyze transaction issues, negotiate transaction agreements with potential stalking horse candidates, and advise the Committee on those issues through detailed memoranda and numerous telephonic conferences, as necessary.

*CVAS Sale*

33.     FMC attorneys spent time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing and negotiating the terms of a sale of the Nortel Debtors' CVAS business (the "CVAS Sale"). On December 23, 2009, the Nortel Debtors publicly announced that GENBAND Inc. ("GENBAND"), with equity sponsor One Equity Partners III, L.P. ("OEP" and, together with GENBAND, the "CVAS Purchasers"), was selected as the stalking horse bidder for the CVAS

Sale.  Following a joint hearing before the U.S. and Canadian Courts on January 6, 2010, this

Court entered an order approving the form of proposed bidding procedures and related sale

motion on January 8, 2010.  On February 24, 2010, the Nortel Debtors announced that the CVAS

Sale would not proceed to auction and that they would consummate a transaction with the CVAS

Purchasers.  On March 3, 2010, following a joint hearing before the U.S. and Canadian Courts,

this Court approved the CVAS Sale to the CVAS Purchasers.  During the Compensation Period,

FMC attorneys, along with the Committee's other professionals, have worked with the

professionals for the Nortel Debtors to review, comment on and negotiate underlying

documentation necessary to close the CVAS Sale.

*MEN Sale*

     34.    Since the approval on December 3, 2009 by the U.S. and Canadian Courts of the

sale of the MEN business to Ciena Corporation ("Ciena"), FMC attorneys, together with Akin

Gump, have continued their active involvement in reviewing, commenting on, and negotiating

underlying documentation necessary to timely consummate the transaction.  In connection

therewith, FMC attorneys, together with Akin Gump and professionals from Jefferies and

Capstone, participated in meetings and conference calls with professionals for the Nortel

Debtors, Ciena and other major stakeholders to negotiate and finalize underlying documentation

necessary to successfully close the transaction.  As a result of these efforts, the sale of the MEN

business to Ciena closed on March 19, 2010.

*GSM Sale*

     35.    Since the approval by the U.S. and Canadian Courts of the sale of the Nortel

Debtors' GSM business (the "GSM Sale") to Telefonaktiebolaget L M Ericsson ("Ericsson") and

Kapsch Carriercom AG ("Kapsch" and together with Ericsson, the "GSM Purchasers") on

December 2, 2009, FMC attorneys have continued working with Akin Gump and the professionals for the Nortel Debtors and the GSM Purchasers to negotiate and finalize documentation necessary for the successful consummation of the transaction. These efforts resulted in a closing of the GSM Sale to the GSM Purchasers on March 31, 2010, and the Nortel Debtors' receipt of approximately U.S. $118 million of sale proceeds.

### Labor and Employee Benefits Issues

(Fees: CDN. $141,417.00 plus CDN. $8,570.85 taxes; Hours 246.10)

36.     This subject matter relates to services rendered by FMC in connection with the analysis of the Canadian Debtors' benefits plans and general labor matters. During the Compensation Period, FMC lawyers spent time analyzing the pension and employee related issues raised by the various asset divestitures described herein, and where appropriate, commented on and negotiating the underlying documentation of such transactions. Further, FMC attorneys analyzed the impact of potential claims that could be asserted by the Ontario pension regulator on certain of assets being sold in the various divestiture processes.

37.     FMC attorneys spent considerable time during the Compensation Period working with Akin Gump and the Committee's other professionals to analyze strategic alternatives with respect to the warning notice (the "Warning Notice") purportedly issued to certain of the Canadian Debtors by the U.K. Pensions Regulator, initiating administrative proceedings (the "U.K. Pension Proceedings") regarding the alleged shortfall in the funding of the Nortel Networks U.K. Pension Plan, and asserting that the issuance of a financial support direction against certain of the Canadian Debtors, among others, is reasonable. FMC attorneys also spent time analyzing and reviewing the proofs of claim and related materials filed jointly by the Nortel Networks UK Pension Trust Limited (the "U.K. Pension Trustee") and the Board of the Pension Protection Fund (the "PPF") against the Canadian Debtors (collectively, the "U.K. Pension

Claims") in their respective Insolvency Proceedings. During the Compensation Period, FMC attorneys conferred with Ashurst and Akin Gump, as well as the Nortel Debtors' professionals, to evaluate potential strategies with respect to the Warning Notice and the UK Pension Claims. FMC attorneys, on behalf of the Committee, spent considerable time consulting and meeting with the professionals for the Canadian Debtors and the Monitor to analyze and assess various options available to the Canadian Debtors to deal with the UK Pension Claims. The Monitor filed a motion for an order enforcing the CCAA stay of proceedings with respect to the U.K. Pension Proceedings (the "Canadian Pension Stay Motion"), seeking to enforce the automatic stay against the U.K. pension regulator (the "U.K. Regulator"), U.K. Pension Trustee and the PPF with respect to their participation in the U.K. Pension Proceedings. The Canadian Court approved the motion to enforce the CCAA stay of proceedings following a lengthy hearing on February 25, 2010, following which, the U.K. Regulator filed a request for leave to appeal such decision. At the request of the Committee, FMC lawyers worked with the Canadian lawyers for the Canadian Debtors and the Monitor reviewing and providing comments on their respective legal briefs to be filed with the Ontario Court of Appeal in connection with such appeal, and FMC lawyers worked on preparation of a factum to be filed on behalf of the Committee in connection with such request for leave to appeal.

38.      During the compensation period, FMC attorneys spent considerable time preparing for and attending at a multi-day hearing before the Canadian Court in connection with a settlement transaction (the "Canadian Employee Settlement") entered into by the Debtors with representatives of its former employees, long term disability employees and pensioners, on notice to and with the consent of the Ontario pension regulator (the "Ontario Regulator"), which settlement agreement included agreements relating to the transfer of the Canadian Debtors'

pension plans to the control of the Ontario Regulator and agreements relating to cut-off dates for further payments by the Canadian Debtors under and in respect of their pension plans. FMC attorneys had spent considerable time assessing the proposed settlement and negotiating documentation and notice procedures in connection therewith with the Monitor and its counsel, and counsel for the Canadian Debtors and the Canadian employee groups, as well as reporting to the Committee and its advisors. FMC attorneys attended to several in person meetings with representatives from the Canadian Debtors, the Monitor, counsel for the employee groups and the Ontario Regulator. The Canadian Debtors entered into a settlement agreement on February 8, 2010 and a court hearing to approve that settlement transaction was heard by the Canadian Court over three days starting on March 3, 2010. Due to a provision in the settlement agreement, commonly referred to as clause H2, which contemplated that one of the most important terms of the settlement transaction regarding the priorities of the claims of the employee groups could be revisited if Canada's Parliament passes legislation in the future to revise the priority rules under Canada's bankruptcy legislation, the Committee objected to clause H2 being included in the settlement agreement, and FMC, on behalf of the Committee, filed opposition material in connection therewith in the Canadian Proceeding and made submissions at the hearing objecting to the inclusion of clause H2. Following the three day hearing in early March, the Canadian Court issued a decision on March 26, 2010 denying approval of the Canadian Employee Settlement, relying in part on the Committee's objection, and holding that the Canadian Court would not approve the Canadian Employee Settlement with the inclusion of clause H2. The relevant Canadian parties subsequently negotiated an amended and restated settlement agreement, without clause H2, which amended and restated settlement agreement was approved by the Canadian Court at a hearing on March 31, 2010.

### Real Estate Issues/Leases

(Fees: CDN. $5,566.50 plus CDN. $278.33 taxes; Hours 7.10)

39.     This subject matter relates to time spent by FMC lawyers on matters relating to the real estate assets of the Canadian Debtors.  During the Compensation Period, FMC lawyers, in consultation with Akin Gump, Capstone and Jefferies, continued an analysis of the Canadian Debtors' real estate portfolio and proposed restructuring alternatives regarding such real property. FMC lawyers also assessed issues and negotiated documents in the Canadian Proceeding relating to the proposed sale transactions as they relate to Canadian real estate issues.

### Intercompany Analysis/Canadian Funding Issues/Canadian Proceedings

(Fees: CDN. $23,824.00 plus CDN. $1,191.20 taxes; Hours 34.80)

40.     As required by the terms of the Interim Funding Agreement, FMC together with Akin Gump, on behalf of the Committee, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding the protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates.  FMC together with Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a framework for the allocation of sale proceeds.

### Telecommunications/Regulatory/Intellectual Property

(Fees: CDN. $16,187.50 plus CDN. $809.38 taxes; Hours 28.00)

41.     FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets, and considering strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates.  Additionally, during the Compensation Period, FMC lawyers analyzed documents in

connection with the various asset sale processes described above and assessed regulatory issues in connection therewith, as well as examining the intellectual property issues associated with such divestitures.

### Tax Issues

(Fees: CDN. $7,122.00 plus CDN. $365.10 taxes; Hours 12.20)

42.     This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors.  During the Compensation Period, FMC continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the legacy transfer pricing system between, among others, the Debtors and the Canadian Debtors.  In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the senior management of the Debtors and their respective advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

### Non-Working Travel

(Fees: CDN. $10,545.00 plus CDN. $527.25 taxes; Hours 15.10)

43.     During the Compensation Period, FMC attorneys spent 27.10 non-working hours traveling to court hearings and/or meetings.  Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 13.55 working hours traveling for the Compensation Period.

## V.     ALLOWANCE OF COMPENSATION

44.     The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the

expenditure of substantial time and effort. It is respectfully submitted that the services rendered

to the Committee were performed efficiently, effectively and economically, and the results

obtained to date have benefited not only the members of the Committee, but also the unsecured

creditor body as a whole and the Debtors' estates.

45. The allowance of interim compensation for services rendered and reimbursement

of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every
> 120 days after an order for relief in a case under this title, or more often if the
> court permits, for such compensation for services rendered . . . as is provided
> under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to

the Administrative Fee Order.

46. With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in

pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the
> court shall consider the nature, the extent, and the value of such services, taking
> into account all relevant factors, including —
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or
> beneficial at the time at which the service was rendered toward the
> completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of
> time commensurate with the complexity, importance, and nature of the
> problem, issue, or task addressed;

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

47.     The total time spent by FMC lawyers and paraprofessionals during the Compensation Period was 852.00 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

48.     As shown by this application and supporting documents, FMC spent its time economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a schedule of the hours expended by the lawyers and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, FMC incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $12,710.86 (CDN. $12,105.58 for expenses and CDN. $605.28 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

49.     The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

50.     FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually

used in performing services for it.  In these proceedings, FMC charges $.10 per page for internal duplicating.

51.    No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

52.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $550,471.53 (CDN. $524,261.00 for fees and CDN. $26,210.53 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from March 1, 2010 through and including March 31, 2010;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period March 1, 2010 through and including March 31, 2010 in the amount of CDN. $12,710.86 (CDN. $12,105.58 for expenses and CDN. $605.28 for applicable Canadian taxes) ; and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $453,088.08 (USD $445,838.67[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:    Toronto, Ontario
          May 12, 2010

                            FRASER MILNER CASGRAIN LLP

                            By: _____
                                Michael J. Wunder (*pro hac vice*)
                                A Member of the Firm

                            Suite 3900
                            1 First Canadian Place
                            100 King Street West
                            Toronto, Ontario  M5X 1B2
                            (416) 863-4511
                            Canadian Counsel to the Official Committee of
                            Unsecured Creditors

---

[2]    Reuters Exchange Rate as of close of business on May 10, 2010 was CDN. $0.9840 : U.S. $1.00