# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------X
:
*In re*                                                   : Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                        : Case No. 09-10138 (KG)
:
                Debtors. : Jointly Administered
:
: **Hearing date: June 9, 2010 at 10:00am (ET)**
: **Objections due: June 2, 2010 at 4:00pm (ET)**
----------------------------------------------------------X

## DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING AN EXAMINATION OF AND PRODUCTION OF CERTAIN DOCUMENTS BY VERIZON COMMUNICATIONS INC. AND ITS AFFILIATES PURSUANT TO FED. R. BANKR. P. 2004

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, directing Verizon Communications Inc. and its affiliates (collectively, "Verizon") to produce certain documents to the Debtors, and to produce a witness with knowledge for an oral examination regarding the bases for Verizon's proof of claim submitted in these bankruptcy cases; and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are section 105 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2004-1 of the of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

**Background**

**A. Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.   On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.   On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to

---

[2]   The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]   The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.  On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.     Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

(i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; and (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065].  In addition, Nortel has obtained Court approval for the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632].  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**Facts Relevant to this Motion**

A. **Proof of Claim Filed by "The Affiliates of Verizon Communications Inc."**

15. On September 30, 2009, "The Affiliates of Verizon Communications Inc." submitted a proof of claim against NNI, which is listed on the Debtors' claim register as claim number 5521 (the "Proof of Claim").  The Proof of Claim includes an attachment (the "Proof of Claim Attachment") and an exhibit to that attachment ("Attachment Exhibit A").  (A copy of the

proof of claim and its attachments is attached as Exhibit A to the Declaration of Jennifer Westerfield in Support of Debtors' Motion for Entry of an Order Directing an Examination of an Production of Certain Documents by Verizon Communications Inc. and its Affiliates, dated May 21, 2010 (the "Westerfield Declaration" or "Westerfield Decl.").

16. The Proof of Claim Attachment includes, inter alia, three distinct sections describing claims asserted by various Verizon entities against NNI.

17. The first of these sections sets forth a claim described as "liquidated amounts owed by Nortel Networks Inc. to Verizon" (the "Trade Claims"). (Westerfield Decl. Ex. A at 2, ¶ 2.) These "liquidated" amounts are identified in a spreadsheet that is Exhibit A to the Proof of Claim Attachment. (See id. at 4-8.)

18. The second section of the Proof of Claim Attachment describes a purported prepetition claim of $10,691,085.93 allegedly owed by NNI to Verizon affiliate VSSI under the "warranty and/or indemnification provisions" of a "Global Business Partner Agreement ("GBPA") between Verizon and Nortel." Pursuant to that Agreement, Nortel supplied an allegedly faulty telecommunications switch to VSSI that was "incorporated into a project that VSSI performed for one of its customers." (Id. at 2, ¶ 5.) (the "VSSI Switch Claim").[6]

19. The third section of the Proof of Claim Attachment relates to a purported indemnity claim arising out of Voxpath Networks, Inc. v. Verizon Commc'ns, Inc. et al., No. 08-cv-127 (E.D. Tex), a pending patent infringement lawsuit in which several Verizon entities are named as defendants (the "Voxpath Indemnity Claim"). (Westerfield Decl. Ex. A at 3, ¶ 6.) The Proof of Claim Attachment states that "Verizon has procured certain products and services from

---

[6] Verizon has informed Nortel that subsequent to the filing of the Proof of Claim, VSSI resolved the dispute with its customer, and as a result, the amount of its VSSI Switch Claim would be a substantially lesser sum than asserted in the Proof of Claim. (Westerfield Decl. ¶ 11.)

7

Nortel, including, but not limited to, PBX devices and CS2K softswitches, that may be implicated in the Voxpath litigation." (Id.) Verizon seeks to recover "(i) costs and expenses associated with the defense of the Voxpath Litigation that relate to the Nortel products and services, and (ii) any awards, judgments and/or settlements of the Voxpath Litigation that relate to the Nortel products and services." (Id.)

20. In addition to the three sections describing claims asserted by various Verizon entities against NNI, the Proof of Claim Attachment also asserts that NNI "owes various warranty and indemnification obligations to Verizon under executory contracts that, as of the filing of this Proof of Claim, have neither been assumed or rejected by Nortel pursuant to 11 U.S.C. § 365." (Id. at 3, ¶ 7.) It purports to assert and include in the Proof of Claim "any actual and unsatisfied, or contingent and unliquidated, warranty and indemnification obligations that Nortel may owe to Verizon pursuant to such contracts." (Id.) It further purports to reserve the "right to include any unsatisfied, contingent and/or unliquidated warranty and indemnification obligations in any additional pre-petition claims (*i.e.*, so-called "rejection damage claims") that Verizon may assert . . . as and when Nortel rejects any executory contracts with Verizon[.]" (Id.)

21. The Proof of Claim Attachment also states that "the pre-petition sums owed to Verizon and set forth in this Proof of Claim are subject to rights of setoff, as against sums owed by Verizon to Nortel Networks Inc. as of the Petition Date[.]" (Id. at 2, ¶ 4.) It further states that those rights are reserved "by the Court's February 5, 2009 Order Clarifying Relief Granted Pursuant To Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors To Honor Pre-Petition Obligations To Their Customers." (Id.)

**B.      Verizon's Failure to Provide Documents and Information in Support of its Claims**

22.     Since February 8, 2010, NNI's attorneys have attempted to obtain information and documents from Verizon that would permit NNI to review and assess the merits of the claims asserted in the Proof of Claim. (Westerfield Decl. ¶ 10.) Specifically, NNI's attorneys have sought information and documents in support of the VSSI Switch Claim and the Voxpath Indemnity Claim from Verizon's counsel, to whom the Proof of Claim states that notice regarding the Proof of Claim should be directed. (Id. ¶¶ 10-11.)

23.     With respect to the VSSI Switch Claim, NNI's attorneys requested documents that would assist NNI in understanding the nature of Verizon's and its customer's complaints about the Nortel switch, including any related contracts and correspondence by and between Verizon, Nortel, and Verizon's customer. With respect to the Voxpath Indemnity Claim, NNI's attorneys requested copies of the infringement contentions provided to the Voxpath court; a claim chart mapping the patent claims asserted in the litigation to the allegedly infringing products, including in particular any Nortel products involved; a description of the method of calculation of the indemnification sought from Nortel; and a brief summary of the history and status of the Voxpath litigation, including the involvement of any other vendors. (Id. ¶ 12; see also copies of email correspondence between NNI's attorneys and Verizon's counsel, attached as Exhibit B to the Westerfield Declaration).

24.     Although Verizon's counsel orally indicated that he would provide information and documents in support of Verizon's claims, no such documents have yet been provided. As of the date of this Motion, in fact, the only document Verizon has provided to NNI's attorneys with regard the Proof of Claim is an excel spreadsheet relating to Verizon's assertion that the claims set forth in the Proof of Claim are subject to rights of setoff. (Westerfield Decl. ¶ 13.)

25. With respect to the VSSI Switch Claim, Verizon has failed to provide any supporting documents. (Id. ¶ 14.) The only information Verizon has provided is an April 1, 2010 email setting forth with greater specificity than in the Proof of Claim Attachment Verizon's allegations that the switch failed to function properly. The April 1, 2010 email does not attach any of the supporting documents NNI's attorneys had previously requested to enable NNI to analyze and assess the merits of the VSSI Switch Claim. Without this information and documents, NNI is unable to determine whether it has any liability on that claim, and if so, the extent of any such liability. (Id.)

26. With respect to the Voxpath Indemnity Claim, Verizon has failed to provide any supporting information or documentation whatsoever to NNI's attorneys. (Id. ¶ 15.) While Verizon's counsel did express a willingness to facilitate a conference call between Verizon's in-house counsel for the Voxpath litigation and NNI's in-house patent counsel, NNI's attorneys explained several times that such a conference call would not be productive unless and until Verizon, at a minimum, identified all Nortel products allegedly involved in the Voxpath litigation, and provided documentation setting forth Voxpath's infringement contentions. Without this information, NNI is unable to determine whether any indemnity obligation exists at all, much less the extent of any such obligation. (Id.)[7]

---

[7] On May 7, 2010, without any explanation, Verizon's counsel sent the Debtors' counsel a form Non-Disclosure Agreement, which, presumably, Verizon sought as a condition to producing any documents. That Agreement, however, was a form that was clearly not intended to be used in the current circumstances, and would have imposed unduly burdensome obligations on the Debtors. (Westerfield Decl. ¶ 17.) On May 12, 2010, the Debtors' counsel forwarded a revised version of the Agreement to Verizon's counsel. (Id.) Subsequently, on May 19, 2010, the Debtors' counsel sent an email to counsel for Verizon attaching a list of specific documents and requesting production of the documents to facilitate Nortel's review of the Proof of Claim. The email further requested that Verizon agree to provide the documents by June 11, 2010, or another agreeable date, and confirm that agreement promptly. (Id. ¶ 18.) During a phone call the next day, counsel for Verizon stated to Debtors' counsel that subject to his client's approval and successful negotiation of a Non-Disclosure Agreement, Verizon would be willing to provide the documents NNI had requested with regard to the Voxpath Indemnity Claim, but that the documents NNI had requested with regard to the Trade Claims and the VSSI Switch Claim were either

**Relief Requested**

27.     By this Motion, the Debtors seek an order, pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 2004, and Local Rule 2004-1, directing Verizon to produce, on or before June 30, 2010, any and all books, records and documents (whether in paper, electronic or other format) currently in its possession, custody or control, concerning (a) Verizon's purported right to withhold post-petition payments owed to the Debtors; (b) the Trade Claims; (c) the VSSI Switch Claim; (d) the Voxpath Indemnity Claim; (e) any warranty and/or indemnity obligations purportedly owed by NNI to Verizon, whether allegedly contingent or non-contingent, liquidated or unliquidated; and (f) any rejection damages NNI allegedly owes Verizon (collectively, the "Requested Documents").

28.     As described in Exhibit I to the Westerfield Declaration, the Requested Documents include, without limitation, the following:

    a.    All documents supporting, setting forth the basis for, or otherwise concerning, the allegations in Paragraph 2 of the Proof of Claim Attachment.  These documents shall include, but are not limited to,

        (i)    invoices issued by Verizon that correspond to the balances listed on Attachment Exhibit A to the Proof of Claim.

    b.    All documents supporting, setting forth the basis for, or otherwise concerning, the allegations in Paragraph 4 of the Proof of Claim Attachment.  These documents shall include, but are not limited to,

        (i)    documents reflecting or containing the account numbers associated with Verizon entities that owed debts to NNI as of the Petition Date;

---

unnecessary, impractical, or premature. (Id. ¶ 19.) Later that day, Debtors' counsel sent an email to counsel for Verizon informing him, inter alia, that if Verizon did not commit by 3:00 p.m. on May 21, 2010 to producing the requested documents by June 11, 2010 or some other agreeable date, the Debtors would file this Motion. (Id. ¶ 20.) As of the date of this Motion, Verizon has not confirmed that it would produce the requested documents. (Id. ¶ 21.)

    (ii)  invoices received by Verizon concerning all such amounts owed to NNI; and

    (iii)  documents, including, but not limited to, invoices reflecting or concerning the amounts owed to NNI by Verizon entities as of the Petition Date.

 c. All documents supporting, setting forth the basis for, or otherwise concerning, the allegations in Paragraph 5 of the Proof of Claim Attachment. These documents shall include, but are not limited to,

    (i)  documents concerning the calculation of the $10,691,085.93 sum allegedly owed by NNI to VSSI;

    (ii)  the Global Business Partner Agreement referred to in Paragraph 5;

    (iii)  documents concerning and/or describing the project VSSI performed for the customer referred to in Paragraph 5 (the "Customer"), including any and all statements of work, purchase orders or other contracts relating to the project, together with any amendments or supplements thereto;

    (iv)  documents concerning or describing any and all engineering notes related to the project VSSI performed for the Customer;

    (v)  documents concerning or describing the Nortel products and services incorporated into the project VSSI performed for the Customer;

    (vi)  documents concerning or describing non-Nortel products or services incorporated into the project VSSI performed for the Customer;

    (vii)  documents concerning, describing, or otherwise recording the alleged failure of the Nortel switch to function properly, including, but not limited to, documents identifying the cause of the alleged failure and/or any allegedly defective components of the switch, and/or any allegedly defective products or services related to the switch;

    (viii)  documents concerning any tests conducted by any party, including, without limitation, Verizon and the Customer, to determine the reason for the alleged failure of the Nortel switch;

  (ix) documents concerning any pre-litigation communications between Verizon and the Customer regarding the alleged failure of the Nortel switch;

  (x) documents reflecting or concerning communications between Verizon and any Nortel entity concerning the alleged failure of the Nortel switch;

  (xi) documents reflecting or concerning the warranty Verizon obtained from NNI with regard to the Nortel switch and any related Nortel products or services, including documents reflecting or concerning any extended warranty Verizon obtained from NNI, as well as documents reflecting or concerning the start and end date(s) of any warranty Verizon obtained from NNI with regard to the Nortel switch;

  (xii) documents concerning the Customer's complaints and demands to Verizon with respect to the alleged failure of the Nortel switch, including but not limited to any and all versions of any "action register" or "punch list" and any compilations of Customer complaint data; and

  (xiii) documents concerning the settlement between Verizon and its Customer regarding the project VSSI performed for the Customer, including, without limitation, any settlement agreement between Verizon and its Customer, as well as documents reflecting or concerning the portion of the settlement amount, if any, allocated to losses incurred as a result of the alleged failure of Nortel equipment or software.

d. All documents supporting, setting forth the basis for, or otherwise concerning, the allegations in Paragraph 6 of the Proof of Claim Attachment. These documents shall include, but are not limited to,

  (i) the pleadings and briefing submitted in the Voxpath Litigation, as defined in Paragraph 6 of the Proof of Claim Attachment;

  (ii) documents concerning the mapping of patent claims asserted in the Voxpath Litigation to allegedly infringing products and services, including any and all Nortel products and services, such as all versions of infringement contentions or "claim charts";

      (iii)    agreements between Verizon, on the one hand, and NNI or any other entity, on the other hand, concerning the Nortel products and services allegedly implicated in the Voxpath Litigation, including, but not limited to, the executory contracts referred to in Paragraph 6 of the Proof of Claim Attachment;

      (iv)    communications between Verizon and NNI or any affiliate of NNI concerning the Voxpath Litigation;

      (v)    documents reflecting notice from Verizon to NNI or any other Nortel entity requesting that Nortel comply with its "defense and indemnity obligations under the applicable Nortel executory contracts" referred to in Paragraph 6 of the Proof of Claim Attachment;

      (vi)    if available, the Voxpath court's Markman Ruling referred to in Paragraph 6 of the Proof of Claim Attachment;

      (vii)    if available, Voxpath's expert report on damages referred to in Paragraph 6 of the Proof of Claim Attachment; and

      (viii)    documents concerning the calculation of costs and expenses associated with Verizon's defense of the Voxpath Litigation that allegedly relate to Nortel products and services.

    e.    All documents concerning any warranty and/or indemnification obligations Nortel purportedly owes to Verizon, as alleged in Paragraph 7 of the Proof of Claim Attachment.

    f.    All documents concerning any "rejection damage claims," as described in Paragraph 7 of the Proof of Claim Attachment, including all documents reflecting or concerning the calculation of such rejection damages.

29.    In addition, pursuant to Bankruptcy Rule 2004, the Debtors seek authorization to examine (a) representative(s) of Verizon with knowledge of the basis for the Proof of Claim.

### Basis for Relief

30.    Under Bankruptcy Rule 2004(a), "[o]n motion of any party in interest, the court may order the examination of any entity." The scope of any such examination shall relate

> to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In a . . . reorganization case under chapter 11 of the Code, . . . the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan.

Fed. R. Bankr. P. 2004(b). Courts have described the scope of a Bankruptcy Rule 2004 examination as "unfettered and broad," In re Wash. Mut., 408 B.R. 45, 49-50 (Bankr. D. Del. 2009) (quoting In re Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)), and the examination can legitimately "be in the nature of a fishing expedition." In re Vantage Petroleum Corp., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983); In re Wash. Mut., 408 B.R. at 50.

31. The purpose of a Bankruptcy Rule 2004 examination, whether it be an oral examination or an examination of documents, is to allow the court to gain a clear picture of the condition and whereabouts of the debtor's estate. In re Int'l Fibercom, Inc., 283 B.R. 290, 292 (Bankr. D. Ariz. 2002). The examination of witnesses having knowledge of the debtor's liabilities is therefore proper, see, e.g., In re Johns-Manville Corp., 42 B.R. 362, 364 (1984), as is the examination of documents concerning the debtor's liability. See In re Int'l Fibercom, 283 B.R. at 291 (noting that subrogee to debtor's rights could properly seek discovery of documents "as to the Debtor's liabilities . . . and as to the Debtor's defenses to such liabilities" from a third party under Bankruptcy Rule 2004).

32. Bankruptcy Rule 2004 is properly employed by debtors seeking to compel discovery of information maintained by creditors or third parties where such information is relevant to the effective administration of the estate and its assets. See, e.g., In re Wash. Mut.,

15

408 B.R. at 53 (granting debtors' motion for a Rule 2004 examination of third party purchaser of debtors' former assets); In re Teleglobe Commc'ns Corp., 493 F.3d 345, 354, 354 n.6 (3d Cir. 2007) (noting debtors' use of Bankruptcy Rule 2004 to conduct discovery concerning possibility of commencing an adversary proceeding against debtors' former parent company).

33.  "The attendance of an entity for examination and for the production of documents" may be ordered by the Court "at any time or place it designates." Fed. R. Bankr. P. 2004(c), (d).[8]

34.  Here, the Debtors are entitled to documents from and an oral examination of Verizon, by (a) witness(es) with knowledge, pursuant to Bankruptcy Rule 2004.  Despite NNI's repeated requests for voluntary production of information underlying the Proof of Claim, Verizon has failed to provide it.  Accordingly, NNI is unable to determine the extent to which, if any, it is liable to Verizon on account of the VSSI Switch Claim and the Voxpath Indemnity Claim.  (Westerfield Decl. ¶¶ 14-15.)  Moreover, with respect to the Voxpath Indemnity Claim, a claim for which Verizon has not asserted a dollar amount, without such information, NNI will have no idea how much any such potential liability would amount to.  The resulting uncertainty as to the Debtors' liability, if any, to Verizon, significantly hampers the efficient administration of the Debtors' estates.

35.  NNI files this Motion only after repeated fruitless efforts to obtain information voluntarily from Verizon.  NNI's attorneys have attempted, for over three months, to obtain information and documents from Verizon on a voluntary basis sufficient to permit NNI to review

---

[8]  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. See 11 U.S.C. § 105(a).  Accordingly, section 105(a) provides another basis for the relief requested herein.

and assess the merits of the VSSI Switch Claim and the Voxpath Indemnity Claim, with only nominal success. (Id. ¶¶ 11-15.) The Debtors believe Verizon's compelled production of the Requested Documents, as set forth herein, will provide them with the information necessary to determine the merits of the claims asserted in the Proof of Claim, thereby permitting the Debtors (a) to understand the nature and extent of their liabilities with respect to the Proof of Claim, if any, and (b) to fulfill their duties and obligations to the Debtors' estates and creditors.

## Certification of Counsel

36. Pursuant to Local Rule 2004-1(b), as discussed in paragraphs 18-21 of the Westerfield Declaration, the undersigned counsel for the Debtors certify that, as required by Local Rule 2004-1(a), they have communicated with counsel for Verizon regarding the proposed date, time, place and scope of the production of the Requested Documents and, as of the date hereof, the parties have been unable to reach an agreement with respect to such production.

## No Prior Request

37. No prior request for the relief sought herein has been made to this or any other court.

## Notice

38. Notice of the Motion has been given via first class mail or hand delivery to (i) the counsel for the affiliates of Verizon Communications Inc. as identified on the Proof of Claim; (ii) the U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

| | |
|---|---|
| Dated: May 21, 2010<br>Wilmington, Delaware | CLEARY GOTTLIEB STEEN & HAMILTON LLP<br><br>Deborah M. Buell (admitted *pro hac vice*)<br>James L. Bromley (admitted *pro hac vice*)<br>Neil P. Forrest (admitted *pro hac vice*)<br>One Liberty Plaza<br>New York, New York 10006<br>Telephone: (212) 225-2000<br>Facsimile: (212) 225-3999<br><br>- and -<br><br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br><br>*/s/ Ann C. Cordo*<br>Derek C. Abbott (No. 3376)<br>Eric D. Schwartz (No. 3134)<br>Ann C. Cordo (No. 4817)<br>Andrew R. Remming (No. 5120)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, Delaware 19801<br>Telephone: (302) 658-9200<br>Facsimile: (302) 658-3989<br><br>*Counsel for the Debtors<br>and Debtors in Possession* |

3557638.1