## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
:
                                              :    Chapter 11
*In re*                                       :
                                              :    Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,[1]            :
                                              :    Jointly Administered
                          Debtors.            :
                                              :
                                              :
-----------------------------------------------------------X

## DECLARATION OF JENNIFER M. WESTERFIELD IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER DIRECTING AN EXAMINATION OF AND PRODUCTION OF CERTAIN DOCUMENTS BY VERIZON COMMUNICATIONS INC. AND ITS AFFILIATES PURSUANT TO FED. R. BANKR. P. 2004

I, Jennifer M. Westerfield, do hereby declare as follows:

1.      I am an associate with the law firm of Cleary Gottlieb Steen & Hamilton LLP

("CGSH"), co-counsel to the Debtors in these cases. I am admitted to the bar of the State of

New York and have been a member in good standing of such bar since 2008.

2.      I submit this Declaration in support of the Debtors' Motion for Entry of an Order

Directing An Examination of and Production of Certain Documents by Verizon Communications

---

[1]      The debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226), (collectively the "U.S. Nortel Entities" or the "Debtors").  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Inc. and its Affiliates (the "<u>Motion</u>"),[2] pursuant to section 105 of title 11 of the United States

Code (the "<u>Bankruptcy Code</u>"), Rule 2004 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>") and Rule 2004-1 of the of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local</u>

<u>Rules</u>"). Except as otherwise indicated, all facts set forth in this Declaration are based upon my

personal knowledge or information that I learned from reviewing relevant documents. If I were

called upon to testify, I could and would testify competently to the facts set forth herein.

### Proof of Claim Filed by "The Affiliates of Verizon Communications Inc."

3.      On September 30, 2009, "The Affiliates of Verizon Communications Inc."

(collectively, "<u>Verizon</u>") submitted a proof of claim against Nortel Networks Inc. ("<u>NNI</u>") in

these proceedings, which is listed on Debtors' claim register as claim number 5521 (the "<u>Proof</u>

<u>of Claim</u>"). The total amount of the claim "at Time Case Filed" recorded on the Proof of Claim

is $11,207,760.90. An assertion that the claim is secured by "[r]ights of setoff" is also noted.

The Proof of Claim states that notice should be sent to "Darryl S. Laddin, Esq., Arnall Golden

Gregory LLP, 171 17th Street NW, Suite 2100, Atlanta, GA 30363-1031." Attached hereto as

**Exhibit A** is a true and correct copy of the Proof of Claim, including the Attachment to the Proof

of Claim (the "<u>Proof of Claim Attachment</u>"), and Exhibit A to the Attachment to the Proof of

Claim ("<u>Attachment Exhibit A</u>").

4.      The Proof of Claim Attachment includes, <u>inter alia</u>, three distinct sections

describing claims asserted by various Verizon entities against NNI.

5.      The first of these sections sets forth a claim described as "liquidated amounts

owed by Nortel Networks Inc. to Verizon" (the "<u>Trade Claims</u>"). (<u>See</u> Ex. A at 2, ¶ 2.) These

---

[2]      Capitalized terms not defined herein have the same meanings as in the Motion.

2

"liquidated" amounts are identified in a spreadsheet that is Attachment Exhibit A.  The Verizon

entities listed on the spreadsheet include MCI Communications Services Inc., MCI International

Inc., Verizon California Inc., Verizon Delaware Inc., Verizon Florida LLC, Verizon Maryland

Inc., Verizon New England Inc., Verison New Jersey Inc., Verizon New York Inc., Verizon

North Inc., Verizon Northwest Inc., Verizon Pennsylvania Inc., Verizon South Inc., Verizon

Virginia Inc., and Cellco Partnership d/b/a Verizon Wireless.  (See id. at 4-8.)

      6.      The second section of the Proof of Claim Attachment describes a purported

prepetition claim of $10,691,085.93 allegedly owed by NNI to Verizon affiliate VSSI under the

"warranty and/or indemnification provisions" of a "Global Business Partner Agreement

("GBPA") between Verizon and Nortel."  Pursuant to that agreement, Nortel supplied an

allegedly faulty telecommunications switch to VSSI that was "incorporated into a project that

VSSI performed for one of its customers." (Id. at 2, ¶ 5.) (the "VSSI Switch Claim").

      7.      The third section of the Proof of Claim Attachment relates to a purported

indemnity claim arising out of Voxpath Networks, Inc. v. Verizon Commc'ns, Inc. et al., No. 08-

cv-127 (E.D. Tex), a pending patent infringement lawsuit in which several Verizon entities are

named as defendants (the "Voxpath Indemnity Claim").  (Id. at 3, ¶ 6.)  The Proof of Claim

Attachment states that "Verizon has procured certain products and services from Nortel,

including, but not limited to, PBX devices and CS2K softswitches, that may be implicated in the

Voxpath litigation."  (Id.)  Verizon seeks to recover "(i) costs and expenses associated with the

defense of the Voxpath Litigation that relate to the Nortel products and services, and (ii) any

awards, judgments and/or settlements of the Voxpath Litigation that relate to the Nortel products

and services."  (Id.)  As of the date of this declaration, based on my review of the court docket in

the Eastern District of Texas, I understand that no award, judgment, or settlement in the <u>Voxpath</u> litigation has yet been issued or confirmed by that court.

       8.     In addition to the three sections describing claims asserted by various Verizon entities against NNI, the Proof of Claim Attachment also asserts that NNI "owes various warranty and indemnification obligations to Verizon under executory contracts that, as of the filing of this Proof of Claim, have neither been assumed or rejected by Nortel pursuant to 11 U.S.C. § 365." (<u>Id.</u> at 3, ¶ 7.) It purports to assert and include in the Proof of Claim "any actual and unsatisfied, or contingent and unliquidated, warranty and indemnification obligations that Nortel may owe to Verizon pursuant to such contracts." (<u>Id.</u>) It further purports to reserve the "right to include any unsatisfied, contingent and/or unliquidated warranty and indemnification obligations in any additional pre-petition claims (<i>i.e.</i>, so-called "rejection damage claims") that Verizon may assert . . . as and when Nortel rejects any executory contracts with Verizon[.]" (<u>Id.</u>)

       9.     The Proof of Claim Attachment also states that "the pre-petition sums owed to Verizon and set forth in this Proof of Claim are subject to rights of setoff, as against sums owed by Verizon to Nortel Networks Inc. as of the Petition Date[.]" (<u>Id.</u> at 2, ¶ 4.) It further states that those rights are reserved "by the Court's February 5, 2009 Order Clarifying Relief Granted Pursuant To Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors To Honor Pre-Petition Obligations To Their Customers." (<u>Id.</u>)

**<u>Verizon's Failure to Provide Documents and Information in Support of its Proof of Claim</u>**

      10.     On February 8, 2010, I placed a telephone call to Darryl Laddin, counsel for Verizon, seeking information underlying the Proof of Claim. I directed my call to Mr. Laddin because the Proof of Claim states that Mr. Laddin is the person to whom notice regarding the Proof of Claim should be directed.

11.    During the February 8 call, I specifically requested that Mr. Laddin provide

CGSH, on behalf of the Debtors, with information and documents that would permit us to review

and assess the merits of the VSSI Switch Claim and the Voxpath Indemnity Claim.  Mr. Laddin

stated that it would take him some time, but he agreed to provide the supporting information and

documents.  He further stated that while the amount set forth in the Proof of Claim Attachment

with regard to the VSSI Switch Claim was over $10 million, Verizon intended to reduce the

amount sought with regard to the VSSI Switch Claim substantially because it had been able to

resolve its customer's complaints.

12.    Over the next three months, my colleague Robin Baik and I engaged in several

additional telephone calls and email exchanges with Mr. Laddin regarding the information we

had requested that he provide to CGSH.  With respect to the VSSI Switch Claim, we requested

documents that would assist us in understanding the nature of Verizon's and its customer's

complaints about the Nortel switch, including any related contracts and correspondence by and

between Verizon, Nortel, and Verizon's customer.  With respect to the Voxpath Indemnity

Claim, we requested copies of the infringement contentions provided to the Voxpath court; a

claim chart mapping the patent claims asserted in the litigation to the allegedly infringing

products, including especially any Nortel products involved; a description of the method of

calculation of the indemnification sought from Nortel; and a brief summary of the history and

status of the Voxpath litigation, including the involvement of any other vendors.

13.    These telephone calls and emails were largely unproductive.  Prior to April 1,

2010, the only information Mr. Laddin provided to CGSH in support of the Proof of Claim was

an excel spreadsheet relating to Verizon's contention that the claims set forth in the Proof of

Claim are subject to rights of setoff.

14.     With respect to the VSSI Switch Claim, Verizon has failed to provide any supporting documents to CGSH. The only information Mr. Laddin has provided to CGSH pertaining to the VSSI Switch Claim is an April 1, 2010 email setting forth with greater specificity than in the Proof of Claim Attachment Verizon's allegations that the switch failed to function properly. The April 1, 2010 email does not attach any of the supporting documents we had previously requested so that NNI can analyze and assess the merits of the VSSI Switch Claim. Without this information and documents, NNI is unable to determine whether it has any liability on that claim, and if so, the extent of any such liability.

15.     With respect to the Voxpath Indemnity Claim, Verizon has failed to provide any supporting information or documentation whatsoever to CGSH. While Mr. Laddin did express a willingness to facilitate a conference call between Verizon's in-house counsel for the Voxpath litigation and NNI's in-house patent counsel, I explained several times that such a conference call would not be productive unless and until Verizon, at minimum, identified all Nortel products allegedly involved in the Voxpath litigation, and provided documentation setting forth Voxpath's infringement contentions. Without this information, NNI is unable to determine whether any indemnity obligation exists at all, much less the extent of any such obligation.

16.     Attached hereto as **Exhibit B** are true and correct copies of email correspondence between myself and Mr. Laddin over the period between February 18, 2010 and April 28, 2010, which document my unsuccessful attempts to obtain information and documents providing the basis for the VSSI Switch Claim and the Voxpath Indemnity Claim.

17.     On May 7, 2010, without any explanation, Mr. Laddin forwarded a form Non-Disclosure Agreement to myself and my colleague Robin Baik, which, presumably, Verizon sought as a condition to producing any documents. That Agreement, however, was a form that

was clearly not intended to be used in the current circumstances, and would have imposed unduly burdensome obligations on the Debtors. On May 12, 2010, I forwarded a revised version of the Agreement to Mr. Laddin. Attached hereto as **Exhibit C** is a true and correct copy of the Non-Disclosure Agreement forwarded by Mr. Laddin. Attached hereto as **Exhibit D** is a true and correct copy of the revised version of the Non-Disclosure Agreement I returned to Mr. Laddin.

18.    On May 19, 2010, I sent an email to Mr. Laddin requesting specific documents to facilitate Nortel's review of the Proof of Claim. In my email, I stated that Nortel believes it needs these documents in order to understand the basis for the Proof of Claim. I asked Mr. Laddin to confirm Verizon's agreement to provide these documents by Friday, June 11, 2010. I also alerted Mr. Laddin that if he were unable to confirm that Verizon would provide these documents by an agreed upon date, Nortel reserved its right to file a motion pursuant to Bankruptcy Rule 2004 as early as Friday, May 21, 2010. Attached hereto as **Exhibit E** is a true and correct copy of my email to Mr. Laddin dated May 19, 2010, and its attachment.

19.    On May 20, 2010, I received a telephone call from Mr. Laddin. During our conversation, Mr. Laddin stated that subject to his client's approval and successful negotiation of a Non-Disclosure Agreement, Verizon would be willing to provide the documents NNI had requested with regard to the Voxpath Indemnity Claim. However, with regard to the Trade Claims and the VSSI Switch Claim, Mr. Laddin stated that the documents NNI had requested were either unnecessary, impractical, or premature. Mr. Laddin stated that before providing any documents related to the VSSI Switch Claim, he wished to receive a response from Nortel to his email of April 1, 2010, which set forth with greater specificity than in the Proof of Claim Attachment Verizon's allegations that the switch failed to function properly. I am aware that

7

there have been recent communications between NNI and Verizon in which NNI has informed Verizon that it believed the Nortel switch was not defective, but that a component of the Verizon network attached to the switch caused the main problem of which Verizon's customer complained, and that Verizon itself conducted a test that demonstrated this to be the case. At no time during our telephone conversation did Mr. Laddin commit to producing any of the documents NNI had requested.

20.     Later that day, my colleague Neil Forrest sent Mr. Laddin an email in which he informed him, inter alia, that if Verizon did not commit by 3:00 p.m. on May 21, 2010 to producing the requested documents by June 11, 2010 or some other agreeable date, the Debtors would file a motion seeking to compel production of the requested documents pursuant to Bankruptcy Rule 2004. Attached hereto as **Exhibit F** is a true and correct copy of Mr. Forrest's email to Mr. Laddin.

21.     At 2:48 p.m. on May 21, 2010, Mr. Laddin sent an email to Mr. Forrest in response to Mr. Forrest's email of the previous day, on which he copied, inter alia, myself. In his email, Mr. Laddin made no commitment to provide NNI with the documents NNI had requested from Verizon. Mr. Forrest replied by email to Mr. Laddin and those copied on Mr. Laddin's prior email, in which he expressed a willingness to discuss consensual resolution of the issues, but further stated that he was willing to have this Court decide the issues that NNI and Verizon are unable to resolve consensually. Attached hereto as **Exhibit G** is a true and correct copy of Mr. Laddin's email of May 21, 2010. Attached hereto as **Exhibit H** is a true and correct copy of Mr. Forrest's response to that email.

22.     Attached hereto as **Exhibit I** is a schedule of documents the Debtors request Verizon be ordered to produce pursuant to Bankruptcy Rule 2004.

8

23.     In addition, in order to understand the requested documentation, the Debtors seek

to examine a Verizon witness or witnesses with knowledge thereof.


I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 21, 2010


Jennifer M. Westerfield

9