# **Exhibit H**



| | | |
|---|---|---|
| Neil Forrest/NY/Cgsh | To | "Laddin, Darryl S" <Darryl.Laddin@AGG.com> |
| 21 May 2010 04:27 PM | cc | "White, Frank N." <Frank.White@AGG.com>, "James L BROMLEY" <jbromley@cgsh.com>, "Jennifer M Westerfield" <jwesterfield@cgsh.com>, "Lisa M SCHWEITZER" |
| | bcc | |
| | Subject | RE: Nortel Networks Inc. |

Mr. Laddin:

We strongly disagree with your version of past events.

We continue to be willing to resolve Nortel's discovery requests on a cooperative basis, but I note that to date Verizon has provided very little information to Nortel and has been quite erratic in its willingness even to respond to our inquiries. If you are proposing a call to discuss the trade claims, please suggest a couple of times that work on your end, and tell us who will participate on the call from Verizon. For the Hewitt switch and Voxpath claims, Verizon is required to provide us with the documents that it believes support the proof of claim it has filed. If we are unable to resolve these information needs on a consensual basis before the hearing, then we are willing to have the judge decide them.

With regard to the motion to enforce the stay, the debtors are entitled to their post-petition receivables. If Verizon wished to be authorized to withhold payment now on account of a pre-petition claim, it had an obligation to move for relief from the stay.

Sincerely,
Neil P. Forrest

_____
Neil P. Forrest
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2488 | f: 1 212 225 3999
www.clearygottlieb.com | nforrest@cgsh.com


| | | |
|---|---|---|
| "Laddin, Darryl S" <Darryl.Laddin@AGG.com> | To | "Neil Forrest" <nforrest@cgsh.com> |
| 21 May 2010 02:48 PM | cc | "Jennifer M Westerfield" <jwesterfield@cgsh.com>, "James L BROMLEY" <jbromley@cgsh.com>, "Lisa M SCHWEITZER" <lschweitzer@cgsh.com>, "White, Frank N." <Frank.White@AGG.com> |
| | Subject | RE: Nortel Networks Inc. |

Dear Mr. Forrest:

I was disappointed by the tone and content of your message to me last night, which

came as quite a surprise, and seems to indicate that you are relatively new to the matters in this case as they relate to the dealings between Nortel and Verizon. As you may not have all of the background, I am hopeful that this e-mail will begin to re-set the tone of cooperation between Nortel and Verizon on the matters at issue that existed earlier in this bankruptcy case and existed for years in the business relationship between the two parties.

The setoff issue is one that has existed and been discussed between the parties from the inception of these Chapter 11 cases. Verizon has in no way violated the automatic stay, has raised and expressly reserved its setoff rights on numerous occasions (with Nortel's express consent), and has endeavored at every step to work candidly and cooperatively with Nortel towards a mutually agreeable resolution of the issue. That the issue is not already resolved is equally, if not largely, attributable to delays that your colleagues at Cleary have specifically requested at various stages of the case so that they could devote their time and attention to other matters that they considered to be more pressing. If the time is now right for both sides to address the matter fully and agree on a timetable and process by which an agreeable resolution can hopefully be reached, then Verizon is more than willing to engage in those discussions and efforts beginning immediately.

But (and especially in light of my prior discussions with your colleagues) for you to send me an e-mail at 8:18 p.m. on a Thursday evening, well after the close of business -- and with no prior contact or discussion of any kind -- and out-of-the-blue demand that Verizon make a payment of millions of dollars to the Debtors by 3:00 p.m. the following afternoon, less than 19 hours later, and with no basis for setting such a short and arbitrary deadline, is unrealistic and unreasonable. Aside from the fact that it is unclear whether your demand also seeks for Verizon effectively to forfeit all of the legitimate rights that Verizon has preserved with Nortel's consent and discussed openly with Nortel from the inception of these cases, the timing of your demand does not even afford me a realistic opportunity to confer with my clients (some of whom are simply not available today) or even attempt to confirm the extent to which your assertion about funds that Verizon has withheld is accurate. The fact that you have purported to apply the same arbitrary deadline concurrently to two distinct, but equally complicated, issues only compounds the troublesome nature of your demand.

On the setoff issue, however, the fundamental fact is that Verizon has not violated the automatic stay. At the inception of the bankruptcy cases, in January 2009, Nortel requested that Verizon pay millions of dollars in charges that had accrued prior to the Petition Date. Verizon pointed out, correctly, that those charges were subject to rights of setoff that Verizon was entitled to exercise with respect to sums that Nortel owed to Verizon for the same period. Ultimately, the parties reached an agreement that, rather than filing a motion for stay relief and seeking to effectuate its rights at that juncture, Verizon would pay the pre-petition charges over to Nortel's estate, but in so doing would preserve its setoff rights and -- once definitively established and quantified by mutual agreement or eventual determination by the Court -- have the ability to effectuate those rights. This agreement was expressly memorialized in an order entered by the Court.

Implicit in this agreement, too, was an understanding that Verizon's eventual setoff rights could be effectuated in one of only two ways -- either the estate would be required to disgorge the pre-petition sums that Verizon had previously paid over, or Verizon would be permitted to withhold payables accruing to the Nortel estates post-petition.

Since that time, and in addition to reserving its setoff rights with Nortel's consent in orders by the Court authorizing various asset sales, Verizon has endeavored on numerous occasions to engage your colleagues at Cleary in discussions towards an ultimate resolution of the setoff issue. In July of 2009, for example, I provided your colleagues with a summary of Verizon's position on setoff and attempted to initiate a discussion towards a resolution of the issue. The response I received was that Nortel did not have sufficient resources at that time to deal with the issue, and preferred to wait until the Court had approved motions to sell certain assets before turning its attention to resolution of setoff with Verizon. A subsequent effort to engage in discussions on the subject was met with a request by your colleagues that it be deferred until after the September 2009 bar date in the Chapter 11 cases had passed. On February 1 of this year, I again initiated contact with your firm and suggested that the parties turn their mutual attention to resolution of the setoff issue. I also provided another summary of Verizon's position as a starting point for discussions at that time. Since then, there has been some back-and-forth on the issue, but also some further delay. Much of this is attributable to your side. For example, on April 1 of this year, I sent detailed correspondence to your colleagues concerning the largest component of Verizon's setoff claim, the obligation to Hewitt Associates arising from Nortel's provision of defective equipment, and again asked them to contact me to discuss a process for resolution, both of that matter and the overall setoff issue. To date, I have never received any response to that April 1 inquiry, although I presumed a response would be forthcoming as soon as your colleagues at Cleary believed that the time was right finally to address these issues.

In short, if it is suddenly Nortel's position that Verizon must file a motion for stay relief in order to effectuate its setoff rights, then Verizon can certainly do so. But to date, Nortel has never conveyed any such position, the parties have engaged for well over a year in cooperative and amicable discussions and exchanges of information on the issue of setoff as time and perceived priorities have permitted, and -- until I received your e-mail after-hours last night -- it was my understanding that the parties would continue to have measured discussions, and work amicably and efficiently towards a resolution, as soon as activity in the Chapter 11 cases had sufficiently subsided and your colleagues were prepared to devote sufficient time and attention to the issue. That certainly is how we believe these issues can and should be brought to an efficient conclusion. Verizon has no desire to delay that resolution, and in fact has never been the material cause of any such delay.

Before you proceed in an entirely different direction by initiating unnecessary litigation, I submit that it would be far more productive for you to call me so that we can discuss a process for swifter and far more efficient closure to be brought to the matter. And, in order to remove the sudden sense of urgency that you seem to have injected into the

discussion with your e-mail last night, <u>Verizon is willing to deposit any post-petition payables that it has withheld from Nortel to date into a segregated escrow account pending final quantification of its setoff rights, whether that is reached by mutual agreement between the parties or after submission to the Court for determination. Alternatively, Verizon is willing to pay these funds directly to Nortel in the event that Nortel itself establishes a segregated escrow account that would be sufficient to cover Verizon's setoff rights.</u>  Kindly confer with your clients and let me know if they are willing to proceed in this fashion, and without further delay.

With respect to the document production issue that is also addressed in your message sent last night, and as I have already explained to Ms. Westerfield, you essentially have requested every single document that relates in any way to the trade claims included in Verizon's pre-petition claim, as well as all documents relating to the setoff issues.  The former, incidentally, has never been requested by Nortel until a few days ago.  Moreover, the request, in its current form, would encompass volumes and volumes of documents, which would literally fill rooms and rooms, and many of which are already in Nortel's possession, or are even documents that Nortel generated.

I have been responsive to Ms. Westerfield, but because the request is so overbroad (and the filing of a Rule 2004 Motion would initiate an unnecessary discovery barrage going both ways), I have suggested ways in which the much smaller universe of truly necessary documents on all relevant issues can be isolated and provided to Nortel in a way that is far more efficient and beneficial to both sides.  Again, Verizon has no motivation or desire to delay the resolution of these issues.  As to Verizon's trade claims and the potential setoff claims, I suggested that Ms. Westerfield have a Nortel business person coordinate with Bill Cummings (Verizon's Director to Special Assets) on a reconciliation of those claims, which is what we've done successfully in numerous other Chapter 11 cases.  There is no apparent reason why the parties cannot reach an efficient agreement on the amount of Verizon's trade claims in that fashion.  On the Hewitt component of the setoff claim, I suggested that she respond to my April 1, 2010 e-mail, that she serve a subpoena to obtain the Hewitt Settlement Agreement, and that we then have a joint call with our clients with knowledge to narrow the disputes and determine what needs to be exchanged between the parties in order to get it resolved.  As to the Voxpath component of the setoff claim, I told her I would discuss the requests for information with my in-house Verizon contact on that issue, and hoped to respond to her by Monday.  As a practical matter, that contact has been in depositions in another case this week, is still in depositions today, and thus is not even available to speak with me until Monday morning.  Given that this is the case, not to mention the breadth of the requests and that the bulk of these documents was never even requested until the afternoon of May 19, your requested timing is unworkable from a practical standpoint.

As is the case on the setoff issue, I submit that it would be far more efficient, and beneficial to both sides, if you would simply call me to discuss the scope, process and timing of an appropriate and efficient exchange of information on Verizon's claims, rather than initiating litigation that will be unnecessarily expensive and unproductive.  Verizon is just as eager as Nortel to bring all of these issues to an efficient and final

resolution.  Again, please confer with your clients and let me know if they are willing to proceed in this fashion, so that our further efforts in connection with these issues can be productive rather than unnecessarily adversarial.

Darryl S. Laddin
Arnall Golden Gregory LLP
404.873.8120 (direct dial)
404.873.8121 (fax)
dladdin@agg.com
**From:** Neil Forrest [mailto:nforrest@cgsh.com]
**Sent:** Thursday, May 20, 2010 8:18 PM
**To:** Laddin, Darryl S
**Cc:** Jennifer M Westerfield
**Subject:** Nortel Networks Inc.

Dear Mr. Laddin:

Our clients Nortel Networks Inc. ("NNI") and its affiliated debtors and debtors in possession (collectively the "Debtors"), have informed us that  certain Verizon entities (collectively "Verizon") have withheld in excess of $8 million in post-petition payments due and owing to NNI on invoices for goods and services provided to Verizon. The Debtors believe that Verizon's withholding of these payments constitutes a clear violation of the automatic stay.  Accordingly, on behalf of the Debtors, we write to you as counsel for Verizon in this matter, to demand that Verizon immediately release to NNI the full amount of these withheld post-petition payments, and to put Verizon on notice that if such amount is not released and wired to NNI so it is received by 3:00 p.m. Eastern Time tomorrow, May 21, 2010, the Debtors will file a motion to enforce the automatic stay against Verizon by the end of the day tomorrow, for hearing on the next Nortel omnibus hearing date.

In addition, my colleague Jennifer Westerfield has informed me of her communications with you regarding the documents we have requested concerning the basis for the proof of claim against NNI filed by "The Affiliates of Verizon Communications Inc."  Ms. Westerfield has previously informed you that in the absence of Nortel's committment to provide the Debtors with the documents we have requested by June 11 or some other agreeable date, the Debtors reserved the right to file a motion under Bankruptcy Rule 2004 against Verizon this week.  Please be informed that unless we receive such a committment by 3:00 p.m. Eastern Time tomorrow, May 21, 2010, the Debtors will also file a Rule 2004 motion by the end of the day tomorrow.

Very truly yours,
Neil P. Forrest

_____

Neil P. Forrest
Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza, New York NY 10006
t: +1 212 225 2488 | f: 1 212 225 3999
www.clearygottlieb.com | nforrest@cgsh.com
This message is being sent from a law firm and may contain
confidential or privileged information.  If you are not
the intended recipient, please advise the sender
immediately by reply e-mail and delete this message and

```
any attachments without retaining a copy.
```

**Note:**
This message and any attachments from the law firm Arnall Golden Gregory LLP may contain CONFIDENTIAL and legally protected information.  If you are not the addressee and an intended recipient, please do not read, copy, use or disclose this communication to others;  also, please notify the sender by replying to this message, and then delete it from your system.  Thank you.