**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| Debtors. | : | Jointly Administered |
| | : | **Hearing date: June 9, 2010, 10:00 a.m.**<br>**Objections due: June 2, 2010, 4:00 p.m.** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER ENFORCING THE AUTOMATIC STAY AGAINST CERTAIN AFFILIATES OF VERIZON COMMUNICATIONS INC.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, (i) enforcing the automatic stay imposed by section 362 of title 11 of the United States Code (the "Bankruptcy Code") against Verizon Business Purchasing LLC ("VBP"), Verizon Select Services Inc. ("VSSI"), Verizon Network Integration Corp. ("VNI"), and Verizon Service Corp. ("VSC" and collectively with the other Verizon entities named herein, the "Verizon Entities") with respect to any and all acts by the Verizon Entities to collect, assess, or recover on all or any part of the prepetition claims asserted by certain affiliates of Verizon Communications Inc. against the Debtors in these cases, including, but not limited to, withholding payments on the postpetition obligations they owe to

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

the Debtors that are otherwise due and owing; and (ii) granting the Debtors such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors rely on the Declaration of Chris Paczynski in Support of Debtors' Motion for Entry of an Order Enforcing the Automatic Stay against Certain Affiliates of Verizon Communications Inc., dated May 21, 2010 (the "Paczynski Declaration" or "Paczynski Decl."), filed contemporaneously herewith, with the exhibits thereto, and respectfully represent as follows:

## Relief Requested

1. By this Motion, the Debtors seek the entry of an order pursuant to section 362(a)(6) of the Bankruptcy Code, enforcing the automatic stay against the Verizon Entities with respect to any and all actions they have taken and may take to collect, assess, or recover on all or any part of the prepetition claims asserted by certain affiliates of Verizon Communications Inc. against the Debtors in these cases. Such actions include, without limitation, the Verizon Entities' ongoing withholding of certain of their postpetition payment obligations to the Debtors that arose from their ordinary course of business during the pendency of these chapter 11 cases, and that are otherwise due and owing (the "Postpetition Obligations"). Not only have the Verizon Entities failed to obtain relief from the automatic stay, as would be required to take actions that would otherwise violate section 362(a)(6), but the actions they have taken are improper under section 553 of the Bankruptcy Code. For the reasons set forth below, the Motion should be granted in all respects.

## Jurisdiction

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. Verizon Communications Inc. and its affiliates, including the Verizon Entities (collectively "Verizon"), have submitted to this Court's jurisdiction by filing a proof of claim against NNI in these proceedings, which is listed on the Debtors' claim register as claim number 5521 (the "Proof of Claim"). See Langenkamp v. Culp, 498 U.S. 42, 44 (1990) (stating that "by filing a claim against a bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power" (internal quotations deleted)). The Proof of Claim, including the attachment thereto, is attached as Exhibit B to the Paczynski Declaration.

4. The statutory bases for the relief requested herein are sections 362(a)(6) and 553 of the Bankruptcy Code and Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

**A. Procedural History**

5. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

8. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

9. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

10. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

11. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

12. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B. Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; and (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]. In addition, Nortel has obtained Court approval for the planned sale of certain assets of its Carrier Voice Over IP

and Application Solutions business to GENBAND Inc. [D.I. 2632]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

## Facts Relevant to this Motion

### A. Verizon Withholds Payment of Amounts Due to NNI

15. On or about January 20, 2009, without seeking leave of the Court, Verizon Wireless Network Procurement LP ("VWNP") withheld payments that were otherwise due and owing to NNI. (Paczynski Decl., ¶ 4.) The outstanding amount owed by VWNP to NNI was in excess of $137,000,000, of which more than $72,000,000 was past due. (Id.)

16. On February 5, 2009, this Court entered an Order Clarifying Relief Granted Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors to Honor Prepetition Obligations to their Customers [D.I. 237]. The Order included the following paragraph: "All rights of Debtors' customers to assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by such customers to the Debtors." (Id. ¶ 5.)

17. During the first week of February 2009, VWNP resumed making payments to NNI in the normal course of business. (Paczynski Decl. ¶ 5.)

18. Between February of 2009 and March of 2010, various Verizon entities continued to make payments to NNI on invoices they received from NNI in the normal course of business. (Id. ¶ 6.)

**B. Verizon's Proof of Claim Against the Debtors**

19. On September 30, 2009, "The Affiliates of Verizon Communications Inc." filed the Proof of Claim. (Id. Ex. B.) The total amount of the claim "at Time Case Filed" recorded on the Proof of Claim is $11,207,760.90. (Id.) An assertion that the claim is secured by "[r]ights of setoff" is also noted. (Id.)

20. The attachment to the Proof of Claim (the "Proof of Claim Attachment") includes, inter alia, three distinct sections describing purported claims asserted by various Verizon affiliates against NNI.

21. The first of these sections sets forth a claim described as "liquidated amounts owed by Nortel Networks Inc. to Verizon" (the "Trade Claims"). (Id. Ex. B at 2, ¶ 2.) These liquidated amounts are identified in a spreadsheet that is attached to the Proof of Claim Attachment as Exhibit A. The Verizon entities listed on the spreadsheet include MCI Communications Services Inc., MCI International Inc., Verizon California Inc., Verizon Delaware Inc., Verizon Florida LLC, Verizon Maryland Inc., Verizon New England Inc., Verizon New Jersey Inc., Verizon New York Inc., Verizon North Inc., Verizon Northwest Inc., Verizon Pennsylvania Inc., Verizon South Inc., Verizon Virginia Inc., and Cellco Partnership d/b/a Verizon Wireless. (See id. Ex. B at 4-8.)

22. The second section of the Proof of Claim Attachment describes a prepetition sum of $10,691,085.93 allegedly owed by NNI to VSSI (the "VSSI Switch Claim")[5] under the "warranty and/or indemnification provisions" of a "Global Business Partner Agreement ("GBPA") between Verizon and Nortel," pursuant to which Nortel supplied an allegedly faulty

[5] Verizon has informed the Debtors that subsequent to the filing of the Proof of Claim, VSSI resolved the dispute with its customer, and as a result, the amount of its VSSI Switch Claim would be a lesser sum than asserted in the Proof of Claim.

telecommunications switch to VSSI that was "incorporated into a project that VSSI performed for one of its customers." (Id. Ex. B at 2, ¶ 5.)

23. The third section of the Proof of Claim Attachment relates to a purported indemnity claim arising out of Voxpath Networks, Inc. v. Verizon Commc'ns, Inc. et al., No. 08-cv-127 (E.D. Tex), a pending patent infringement lawsuit in which several Verizon entities are named as defendants (the "Voxpath Indemnity Claim"). (Id. Ex. B at 3, ¶ 6.) The Proof of Claim Attachment states that "Verizon has procured certain products and services from Nortel, including, but not limited to, PBX devices and CS2K softswitches, that may be implicated in the Voxpath litigation." (Id.) Verizon seeks to recover "(i) costs and expenses associated with the defense of the Voxpath Litigation that relate to the Nortel products and services, and (ii) any awards, judgments and/or settlements of the Voxpath Litigation that relate to the Nortel products and services." (Id.)

24. The Proof of Claim Attachment also states that "[t]he pre-petition sums owed to Verizon and set forth in this Proof of Claim are subject to rights of setoff, as against sums owed by Verizon to Nortel Networks Inc. as of the Petition Date[.]" (Id. Ex. B at 2, ¶ 4.) It further states that those rights are reserved "by the Court's February 5, 2009 Order Clarifying Relief Granted Pursuant To Sections 105(a) and 363(b) of the Bankruptcy Code Authorizing Debtors To Honor Pre-Petition Obligations To Their Customers." (Id.)[6]

[6] Simultaneously with this Motion, the Debtors are filing with this Court a Motion for Entry of an Order Directing Production of Certain Documents from and an Examination of Verizon Communications Inc. and its Affiliates pursuant to Fed. R. Bankr. P. 2004 (the "2004 Motion"). The 2004 Motion was necessitated by Verizon's failure, despite repeated requests, to provide information and documents in support of the VSSI Switch Claim and the Voxpath Indemnity Claim. The details of Verizon's failure to provide information and documents are set forth in the Declaration of Jennifer M. Westerfield, dated May 21, 2010, filed in support of the 2004 Motion.

**C. Verizon Again Withholds Payments of Amounts Due to NNI**

25. On or about April 1, 2010, the Verizon Entities placed a hold on payments due and owing to NNI. (Paczynski Decl. ¶ 8.) As of May 20, 2010, the outstanding amount withheld by these Entities is approximately $10,379,084.61, of which approximately $7,129,132.84 is past due. (Id. ¶¶ 24-27; see also id. Exs. J-Q (copies of aging reports providing details of NNI's undisputed and past due invoices on which VBP, VSSI, VNI and VSC are withholding payments, together with sample invoices).) At no time did Verizon seek leave of this Court to withhold payments due and owing to NNI.

26. In an April 19, 2010 email from Vicki Marvin, a Verizon employee, to Jaya Das, a Nortel employee in Nortel's North America Accounts Receivable department, Ms. Marvin indicated that "Nortel invoices are not paying due to Verizon's attorneys request." (Id. Ex. A at 5-6.) In an April 21, 2010 email from Louis H. Parras, a Verizon employee, to Ms. Das at Nortel, Mr. Parras wrote that "the amounts are being withheld at the direction of our attorneys," and indicated that questions should be directed to Bill Cummings. (Id. Ex. A at 3.)

27. In an April 22, 2010 telephone conversation between Bill Cummings, a Verizon employee, and Chris Paczynski, Nortel's Global Customer Credit Manager, Mr. Cummings confirmed that Verizon entities were deliberately withholding payments due and owing to NNI. (Id. ¶¶ 9-10.) He stated that Verizon was withholding the payments on account of Nortel's failure to resolve two disputed pre-bankruptcy matters included in the Proof of Claim, and that such withholding of payment was intended to setoff the amounts due and owing on current invoices against certain amounts Verizon seeks in the Proof of Claim with respect to those two matters. (Id. ¶ 10-11.)

28. Mr. Cummings described the first disputed matter in the Proof of Claim as a claim for products sold and services rendered by various Verizon entities to NNI in the amount of approximately $500,000 – the Trade Claims. He described the second matter in the Proof of Claim as a telecommunications project on which NNI and Verizon had collaborated for the benefit of a Verizon customer, Hewitt Associates LLC – the VSSI Switch Claim. (Id. ¶ 11; see also id. Ex. B at 2, ¶¶ 2, 5.)

29. Mr. Cummings reiterated these positions in subsequent communications with Mr. Paczynski through the days leading up to the filing of this Motion. (Paczynski Decl. ¶¶ 14-19, 22; see also id. Exs. C, F.)

## Basis for Relief

### A. Verizon's Conduct Violates the Stay

30. Under section 362(a)(6) of the Bankruptcy Code, it is a violation of the automatic stay for a creditor to engage in "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). This section has generally been "read broadly to enforce Congress's purpose of preventing harassment of debtors." United States v. Harchar, 371 B.R. 254, 269 (N.D. Ohio 2007) (citing In re Duke, 79 F.3d 43, 45 (7th Cir. 1996)). See Lee v. Schweiker, 739 F.2d 870, 876 (3d Cir. 1984) (Social Security Administration's withholding of debtor's postpetition social security benefit in an attempt to recover certain prepetition overpayments was a violation of the automatic stay); see also In re Hellums, 772 F.2d 379, 381 (7th Cir. 1985) (stating that in enacting section 362(a)(6), "Congress broadly sought to prevent creditors 'from attempting *in any way* to collect a prepetition debt'" (citation omitted)).

31. In light of section 362(a)(6), a creditor cannot take any action to collect on a prepetition claim, even the exercise of an undisputed right of setoff, unless it first obtains relief from the automatic stay. United States v. Norton, 717 F.2d 767, 771 (3d Cir. 1983) ("[B]efore a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay."); In re Penn Cent. Transp. Co., 453 F.2d 520, 523 (3d Cir. 1972) (prohibiting banks from setting off debts against a corporate account during the pendency of a reorganization proceeding, unless the banks first request and receive relief from the automatic stay). See also 11 U.S.C. § 362(a)(7) (expressly staying "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor").

32. Here, the Verizon Entities are withholding payments in excess of $10,379,084.61 with respect to undisputed postpetition Nortel invoices on account of the Debtors' failure to resolve outstanding issues relating to Verizon's Proof of Claim, namely the Trade Claims and the VSSI Switch Claim. (Paczynski Decl. ¶¶ 10-11.) Thus, by their own admission, the Verizon Entities' withholding of payments on the Postpetition Obligations constitutes an "act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6).

33. Accordingly, having failed even to seek, let alone obtain, relief from the stay before taking such actions, the Verizon Entities' withholding of payments on the Postpetition Obligations constitutes a violation of the automatic stay under section 362(a)(6) of the Bankruptcy Code. The Debtors are entitled to an order enforcing the automatic stay against the

Verizon Entities with respect to any and all acts by these Entities prohibited by section 362(a)(6), including, but not limited to, withholding of payments on the Postpetition Obligations.[7]

**B. Verizon's Actions Are Improper and Unlawful**

34. Aside from violating the automatic stay, to the extent Verizon's withholding of payments on the Postpetition Obligations is an attempt to create a right of setoff, such attempt is improper and unlawful under section 553 of the Bankruptcy Code.[8] Section 553 preserves, but does not create, rights of setoff that are otherwise recognized under applicable nonbankruptcy law. See, e.g., In re Semcrude, L.P., 399 B.R. 388, 393 (Bankr. D. Del. 2009) ("[S]etoff is appropriate in bankruptcy only when a creditor both enjoys an independent right of setoff under applicable nonbankruptcy law, and meets the further Code-imposed requirements and limitations set forth in section 553."); see also Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18 (1995) (confirming that no federal right of setoff is created by the Bankruptcy Code); Norton, 717 F.2d at 772 (Section 553 is "understood as a legislative attempt to preserve the common-law right of setoff arising out of nonbankruptcy law." (Citations omitted.)). The Verizon Entities do not have a right of setoff and they may not create that right now.

35. First, a fundamental requirement for a valid setoff under section 553 is that mutuality exist between the creditor's claim and the debt owed by the creditor to the debtor. See Cohen v. Sav. Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54, 59 (3d Cir. 1990); In re Semcrude, 399 B.R. at 393. Although the Bankruptcy Code

---

[7] The Debtors reserve their rights to take such further action as they deem necessary and proper to enforce the Order sought herein if such Order is issued.

[8] Section 553(a) of the Bankruptcy Code, in pertinent part, reads:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a *mutual* debt owing by such creditor to the debtor that *arose before the commencement of the case* under this title against a claim of such creditor against the debtor that *arose before the commencement of the case*….

11 U.S.C. § 553(a) (emphasis added).

does not define the term "mutual," for purposes of section 553, debts are considered mutual only when "they are due to and from the same persons in the same capacity." In re Semcrude, 399 B.R. at 393-94 (citing Westinghouse Credit Corp. v. D'Urso, 278 F.3d 138, 149 (2d Cir. 2002)) (disallowing a triangular setoff for lack of mutuality between the creditor and the debtor). Therefore, the threshold inquiry on mutuality is whether the relevant claim and debt exist between the same parties. 5 Collier on Bankruptcy ¶ 553.03[3][b] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.). No exception to the "mutual debt" requirement in section 553 can be created by private agreement. In re Semcrude, 399 B.R. at 399.

36. In this case, Verizon has failed to assert in the Proof of Claim or otherwise provide any documentation sufficient to satisfy the mutuality requirement. To the contrary, the documentation provided with the Proof of Claim shows that VBP, which owes the vast majority of the Postpetition Obligations, and VNI and VSC, which also owe Postpetition Obligations, are not among the Verizon affiliates that are purportedly owed the debts alleged in the Proof of Claim. Only VSSI both owes a Postpetition Obligation and asserts a prepetition claim, but the amount of its Postpetition Obligation is only a fraction of the total amount of the payments that have been withheld.

37. Second, in addition to the mutuality requirement, by the express terms of the statute, a setoff is permitted under section 553 only if both the claim asserted by the creditor and the debt owed by the creditor arose "before the commencement of the case." 11 U.S.C. § 553. See In re Anes, 195 F.3d 177, 183 (3d Cir. 1999) ("Section 553(a) exempts a creditor's right of setoff from the bankruptcy code only where each party's obligation arose prior to commencement of the bankruptcy case." (Citation omitted.)); Lee, 739 F.2d at 875; see also In re

Semcrude, 399 B.R. at 393; Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1079 (3d Cir. 1992). Where the creditor attempts to set off a postpetition obligation to the debtor against its prepetition claim against the debtor, the setoff is invalid under section 553 of the Bankruptcy Code. In re Anes, 195 F.3d at 183; Lee, 739 F.2d at 875.

38. Here, it is undisputed that the Verizon Entities have withheld payments for postpetition transactions, as a means of collecting on prepetition claims against the Debtors asserted on behalf of other (except for VSSI) Verizon affiliates. The products and services provided to the Verizon Entities for which they have failed to pay were provided postpetition, the invoices from the Debtors were issued postpetition, and payment became due postpetition. (Paczynski Decl. ¶¶ 24-27.)

39. Accordingly, to the extent that Verizon is attempting to create a setoff right by withholding payments on the Postpetition Obligations, such action is impermissible and invalid under section 553 of the Bankruptcy Code.[9]

40. In sum, the Verizon Entities' withholding of payments on the Postpetition Obligations violates the automatic stay under section 362(a)(6) of the Bankruptcy Code; to the

---

[9] With respect to the VSSI Switch Claim, as well as the Voxpath Indemnity Claim, Verizon's attempted setoff also fails because it never had a state law setoff right to preserve under section 553. Under New York law, which expressly governs the GBPA that purportedly gave rise to the VSSI Switch Claim – by far the largest Claim asserted by Verizon in the Proof of Claim – a creditor cannot setoff a disputed claim (*i.e.* contingent and/or unliquidated), against a non-contingent, liquidated obligation. See, e.g., Ferguson v. Lion Holding, Inc., 312 F.Supp.2d 484, 503 (S.D.N.Y. 2004) ("[T]here is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable." (Internal citation omitted.)); Wallace v. Merrill Lynch Capital Servs., Inc., 29 A.D.3d 382, 383 (1st Dep't 2006); In re Trojan Hardware Co., Inc. v. Bonacquisti Constr. Corp., 141 A.D.2d 278, 281 (3d Dep't 1988). Here, with respect to the VSSI Switch Claim, as well as the Voxpath Indemnity Claim, Verizon's claim against the Debtors is contingent, unliquidated and disputed. On the other hand, Verizon's obligations owed to Nortel on undisputed postpetition invoices are non-contingent and liquidated. As such, with respect to those Claims, Verizon never had a state law setoff right to exercise under section 553 of the Bankruptcy Code.

extent Verizon argues that its actions preserve a valid right of setoff, no such right exists.[10] The Court should grant the Motion and enter the requested Order enforcing the automatic stay.

**No Prior Request**

41. No prior request for the relief sought herein has been made to this or any other court.

**Notice**

42. Notice of the Motion has been given via first class mail or hand delivery (i) the counsel for the affiliates of Verizon Communications Inc. as identified on the Proof of Claim; (ii) the U.S. Trustee; (iii) the counsel to the Committee; (iv) the counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

[10] To the extent that Verizon argues that the language that was inserted in the Court's February 5, 2009 Order preserves its setoff rights, that Order and that language are of no help to Verizon to the extent, for the reasons set forth above, it had no enforceable setoff rights to preserve.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: May 21, 2010
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Neil Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

3557681.1