**<u>Exhibit A – Order</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

```
-----------------------------------------------------------X
                                            :    Chapter 11
In re                                       :
                                            :    Case No. 09-10138 (KG)
Nortel Networks Inc., et al.,²              :
                                            :    Jointly Administered
                      Debtors.              :
                                            :    RE: D.I. ____
                                            :
-----------------------------------------------------------X
```

### ORDER APPROVING STIPULATION AMONG THE DEBTORS, CERTAIN AFFILIATES AND THE PENSION BENEFIT GUARANTY CORPORATION

Upon consideration of the *Stipulation Among the Debtors, Certain Affiliates and the Pension Benefit Guaranty Corporation* (the "Stipulation"), a copy of which is attached hereto as **Exhibit 1**, as agreed between Nortel Networks Inc. ("NNI") and its affiliated debtors, as debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), certain of the Debtors' affiliates, and the Pension Benefit Guaranty Corporation (the "PBGC", together with the Debtors and their affiliates, the "Parties");

IT IS HEREBY ORDERED THAT:

1.    The Stipulation is APPROVED.

2.    The Debtors are authorized, but not directed, to enter into the Stipulation with the PBGC.

---

[2]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems, Inc. (9769), Nortel Altsystems International, Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

3.      The failure to specifically include any particular provision of the Stipulation in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court to approve the Stipulation in its entirety.

4.      The Parties are hereby authorized to take any and all actions reasonably necessary to effectuate the terms of the Stipulation.

5.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
          Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit 1 – Stipulation</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------- X
                                                               :

*In re*                                        :       Chapter 11
                                               :

Nortel Networks Inc., *et al.*,[1]          :       Case No. 09-10138 (KG)
                                             :

                        Debtors.       :       Jointly Administered
                                             :

                                             :
-------------------------------------------------------- X

**STIPULATION AMONG THE DEBTORS,**
**CERTAIN AFFILIATES AND PENSION BENEFIT GUARANTY CORPORATION**

        WHEREAS, Nortel Networks Inc. ("NNI") and its affiliated debtors and debtors in possession in the above-captioned cases (the "Debtors") commenced chapter 11 proceedings by filing voluntary petitions on January 14, 2009 and July 14, 2009 (in the case of Nortel Networks (CALA) Inc.); and

        WHEREAS, NNI sponsored the Nortel Networks Retirement Income Plan (the "Pension Plan"), a defined benefit pension plan which is intended to be qualified under Section 401(a) of the Internal Revenue Code of 1986 (as amended, the "Code"); and

        WHEREAS, the Pension Plan was terminated under section 4042(c) of ERISA, effective July 17, 2009, pursuant to an agreement between the Pension Benefit Guaranty Corporation (the "PBGC," and together with the Main Sellers (as defined below), the "Parties") and the Retirement Plan Committee of the Pension Plan, which agreement also appointed the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

PBGC trustee of the Pension Plan under section 4042(c) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

WHEREAS, NNI, along with Nortel Networks Corporation and Nortel Networks Limited (collectively, the "Main Sellers") have executed an amended and restated asset sale agreement with GENBAND Inc. ("GENBAND") dated December 22, 2009 (as it may be amended from time to time, and including all Ancillary Agreements (as defined therein) the "Asset Sale Agreement") for the sale of certain assets of the Debtors' Carrier Voice Over IP and Application Solutions business (collectively, the "CVAS Business Assets"); and

WHEREAS, the Asset Sale Agreement requires the transfer of the CVAS Business Assets free and clear of all liens and claims, other than certain enumerated permitted encumbrances;

WHEREAS, on March 4, 2010, this Court entered an Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Communications Solutions Business Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts [D.I. 2632] (the "Sale Order");

WHEREAS, the Sale Order applies only to assets owned by the Debtors and does not apply to assets owned by non-debtor entities;

WHEREAS, certain of the assets to be conveyed pursuant to the Asset Sale Agreement are owned or otherwise held by Nortel Networks de Argentina, S.A., Nortel Networks de Mexico, S.A. de C.V, Nortel Networks Peru S.A.C., Nortel Networks Australia Pty. Limited, Nortel Networks (India) Private Limited, PT Nortel Networks Indonesia, Nortel Networks Japan (in Japan, Nortel Networks Kabushiki Kaisha), Nortel Networks Malaysia Sdn. Bhd., Nortel Networks New Zealand Limited, Nortel Networks Singapore Pte. Ltd., Nortel

2

Networks (Thailand) Ltd., Nortel Networks (Asia) Limited, Nortel Networks (China) Limited, Nortel de México, S. de R.L. de C.V., Nortel Networks A.G., Nortel Networks O.O.O., and Nortel Networks de Guatemala, Ltda. (collectively, the "Foreign Non-Debtors") which are non-debtor subsidiaries and affiliates of the Debtors (collectively, the "Foreign Non-Debtor Assets");

WHEREAS, Section 4062 of ERISA provides for the imposition of certain claims and liens on the sponsor of a terminated pension plan and all members of the sponsor's controlled group for, inter alia, the underfunding of the pension plan and Section 4068 of ERISA provides that a lien may arise against any person liable to the PBGC under Section 4062 (the "PBGC Lien");

WHEREAS, the Main Sellers do not concede the validity or applicability of the PBGC Lien on the Foreign Non-Debtor Assets but have concluded it is in the best interests of the Main Sellers and their affiliates to enter into this Stipulation in furtherance of the sale transaction.

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, and in consideration of the foregoing, the Main Sellers and the PBGC hereby agree and stipulate as follows:

1.  On the later of (i) the date of the Closing (as defined in the Asset Sale Agreement) and the Main Sellers' receipt of a payment of the purchase price specified in the Asset Sale Agreement, or (ii) the date of approval of the Stipulation by the United States Bankruptcy Court for the District of Delaware ("the Bankruptcy Court") the Main Sellers shall pay the PBGC $100,000 in cash, out of such proceeds (the "Settlement Payment").

2.  In consideration for and effective immediately upon its receipt of the Settlement Payment, the PBGC (a) consents to the sale of the Foreign Non-Debtor Assets; (b) agrees not to pursue or perfect, against the Sellers (as defined in the Asset Sale Agreement), the

3

Foreign Non-Debtors, the Purchaser (as defined in the Asset Sale Agreement) or their respective

parents, subsidiaries and affiliates, whether now or hereafter existing, any lien or claim with

respect to the Pension Plan, whether arising before or after the date of this Stipulation, relating to

the Foreign Non-Debtor Assets or any of the proceeds from the sale thereof; (c) forever waives

its rights, covenants not to sue, releases, and discharges the Purchaser, their successors, assigns,

subsidiaries (direct or indirect), joint ventures, and Affiliates (as defined in the Asset Sale

Agreement), and the respective current or future employees, agents, representatives, officers,

directors, partners, members, governors, managers, and equityholders of any of the foregoing

(collectively, the "Purchaser Third Party Beneficiaries") from any and all actions, causes of

action, accounts, agreements, covenants, contracts, controversies, claims, damages, whether

known or unknown, in law, admiralty or equity, which the PBGC may now have, ever has had or

ever will have with respect to the Pension Plan relating to the sale of the Foreign Non-Debtor

Assets (including the Foreign Non-Debtor Assets and the proceeds relating to the Foreign Non-

Debtor Assets) or the Purchaser's purchase of the Foreign Non-Debtor Assets, including, without

limitation, any liabilities imposed or that could be imposed under ERISA and the Code, which

the PBGC may now have, ever has had or ever will have, from the beginning of the world, and

(d) forever waives its rights, covenants not to sue, releases, and discharges the Sellers, its

successors, assigns, subsidiaries (direct or indirect), joint ventures, and Affiliates (as defined in

the Asset Sale Agreement), and the respective current or future employees, agents,

representatives, officers, directors, partners, members, governors, managers, and equityholders of

any of the foregoing (collectively, and together with the Purchaser Third Party Beneficiaries

defined above, the "Third Party Beneficiaries")  from any and all actions, causes of action,

accounts, agreements, covenants, contracts, controversies, claims, damages, whether known or

4

unknown, in law, admiralty or equity, which the PBGC may now have, ever has had or ever will have with respect to the Pension Plan relating to the sale of the Foreign Non-Debtor Assets (including the Foreign Non-Debtor Assets and the proceeds relating to the Foreign Non-Debtor Assets).

3.    Notwithstanding any other provision contained herein to the contrary, the PBGC's rights to assert claims relating to the Pension Plan against the Debtors (but not against the Purchaser, any Purchaser Third Party Beneficiary or any of their assets, including the assets of the Debtor being sold to the Purchaser pursuant to the Asset Sale Agreement) and any claims relating to breaches of fiduciary duty by any fiduciaries of the Pension Plan shall be expressly preserved and the Debtors' (or fiduciaries') or any other party in interest's rights to object to any such claims and/or assert any defenses or claims against the PBGC relating to the Pension Plan are expressly preserved, provided, however, that the PBGC's recoveries on all of its claims with respect to the Pension Plan shall not exceed the total amount of the liabilities imposed on all liable parties by ERISA.

4.    This Stipulation may be executed by facsimile, which shall have the same effect as an original, and in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

5.    This Stipulation shall be binding upon and inure to the benefit of the Parties and each and all of their respective successors, assigns, heirs and personal representatives.  The Parties hereto agree that the Foreign Non-Debtors and the Third Party Beneficiaries shall be third party beneficiaries to this Stipulation and shall have all rights to enforce this Stipulation against the Parties as if a party to this Stipulation.

6.    Each of the undersigned represents that he or she is authorized to execute this Stipulation on behalf of his or her respective clients.

7.    It is acknowledged that each party has participated in, jointly consented to and drafted this Stipulation and that any claimed ambiguity shall not be construed for or against either party on account of such drafting.

8.    This Stipulation shall be interpreted, construed and enforced in accordance with the substantive laws of the State of New York, without regard to New York's principles of conflicts of laws, to the extent not preempted by ERISA or other federal law.  The Parties consent to the exclusive jurisdiction of the Bankruptcy Court for all matters concerning this Stipulation during the pendency of the Debtors' chapter 11 cases and, thereafter, any action or proceeding to interpret or enforce this Stipulation may be brought in a United States District Court having jurisdiction over such matter.

9.    This Stipulation is subject to approval of the Bankruptcy Court; provided, however, that the Parties shall support such Bankruptcy Court approval and comply with this Stipulation pending the Bankruptcy Court's entry of such an order approving or disapproving this Stipulation.

10.    Nothing in this Stipulation or any negotiations or proceedings in connection herewith shall constitute or be deemed to be evidence of an admission by any party of any liability or wrongdoing whatsoever, or the truth or untruth, merit or lack thereof, of any claim or defense of any party.  Neither this Stipulation nor any negotiations or proceedings in connection herewith may be used in any proceeding against any party for any purpose whatsoever except with respect to the effectuation and enforcement of this Stipulation.  This matter has been settled for convenience purposes only, is non-precedential and is without prejudice to the Parties' rights

and defenses with regard to any other asset sale transaction that has occurred or may occur in the future.

11.  This Stipulation contains the entire agreement of the Parties with respect to its subject matter and supersedes any prior or contemporaneous oral or written agreements.  The Parties acknowledge that no promise, inducement or agreement not stated herein has been made to them in connection with this Stipulation.  The Parties understand and agree that this Stipulation may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by the Parties hereto.  The Parties agree and acknowledge that they will make no claim at any time or place that this Stipulation has been orally altered or modified or otherwise changed by oral communication of any kind or character.

12.  Notwithstanding anything else in this Stipulation to the contrary, the allocation of the cost of the Settlement Payment among the Main Sellers shall be governed by the terms and conditions of the Interim Funding and Settlement Agreement, dated as of June 9, 2009, or any side agreement or allocation protocol created in accordance therewith.

[The remainder of this page intentionally left blank.]

**Nortel Networks Inc.**

By: _____
Name: Lynn C. Egan
Title: Secretary
Date:

**Nortel Networks Corporation**

By: _____
Name: John Doolittle
Title: SVP, Corporate Services and CFO
Date:            May 21, 2010

By: _____
Name: Clarke Glaspell
Title: Controller

Date: May 25, 2010

**Nortel Networks Limited**

By: _____
Name: John Doolittle
Title: SVP, Corporate Services and CFO
Date: May 21 2010

By: _____
Name: Clarke Glaspell
Title: Controller

Date: May 25, 2010

**Pension Benefit Guaranty Corporation**

By: _____
Name: Terrence M. Deneen
Title: Chief Insurance Program Officer
Date:

8

**Nortel Networks Inc.**

By: _____
Name:
Title:
Date:

**Nortel Networks Corporation**

By: _____
Name:
Title:
Date:

By: _____
Name:
Title:
Date:

**Nortel Networks Limited**

By: _____
Name:
Title:
Date:

By: _____
Name:
Title:
Date:

**Pension Benefit Guaranty Corporation**

By: _____
Name:  Terrence M. Deneen
Title:  Chief Insurance Program Officer
Date:  *Friday, May 21st 2010*