## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
                                                      :
*In re*                                               :       Chapter 11
                                                      :
Nortel Networks Inc., *et al.*,[1]                    :       Case No. 09-10138 (KG)
                                                      :
                                    Debtors.          :       Jointly Administered
                                                      :
                                                      :       **Hearing date: June 24, 2010 at 10:00am (ET)**
                                                      :       **Objections due: June 10, 2010 at 4:00pm (ET)**
------------------------------------------------------X

## DEBTORS' OBJECTION TO PROOF OF CLAIM NO. 4643
## FILED BY ERNEST DEMEL

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby object (the "Objection") to the proof of claim

filed on September 29, 2009, by Ernest Demel, ("Mr. Demel" or "Claimant") which is

designated on Debtors' claim register as Claim No. 4643 (the "Proof of Claim").  In support of

this Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1.      The Debtors file this objection seeking to disallow and expunge a claim that the

Claimant admits is not against the debtors, and with respect to which he seeks no recovery

against property of the Debtors' estates.   In the Proof of Claim, attaching a district court

complaint filed against a number of *non-debtors*, Mr. Demel asserts that he is entitled to certain

unpaid pension and disability benefits as a former employee of "Northern Telecom, Inc.," where

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

he worked in the early 1980's.  <u>Demel v. Group Benefits Plan for Employees of Northern</u>

<u>Telecom, Inc, dated as of January 1, 1982, et al.</u>, 07-CV-00189 (GBD) (S.D.N.Y. 2007) (the

"<u>District Court Action</u>").  Indeed, in the District Court Action, Mr. Demel filed papers in which

he not only admits that his claims are against non-debtors, but also concedes that he is not

seeking to recover property of the Debtors' estates. (<u>See</u> Memorandum of Law in Support of

Motion to Remove Action from Suspense Docket, dated April 29, 2009 ("<u>Demel Dist. Ct.</u>

<u>Memo</u>"), at 4 ("This action is not an action against, or an action to obtain possession of any

property of the bankruptcy estates of, Nortel Networks Inc. or any of its affiliated debtor

entities.") (A copy of the Demel Dist. Ct. Memo is annexed as Exhibit B to the Declaration of

Ebunoluwa Taiwo, dated May 25, 2010, submitted herewith (the "<u>Taiwo Decl.</u>")).

2.      Relying upon these concessions, and the separate legal existence from the Debtors

of the benefit plans Mr. Demel named as defendants, the District Court permitted the matter to

proceed in the District Court, where it is currently pending.  (<u>See</u> Memorandum Decision and

Order filed January 8, 2010 (the "<u>Dist. Ct. Decision</u>"), a copy of which is annexed to the Taiwo

Decl. as Exhibit C.)  Accordingly, by his own admission in an action in a federal district court --

an admission upon which the District Court relied in rendering its decision to allow the matter to

proceed -- Claimant has no claim against the Debtors, and has no claim to the property of the

Debtors' estates.  On this basis, the Debtors' Objection should be sustained, and the Proof of

Claim should be disallowed and expunged.

**<u>Jurisdiction</u>**

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2

4.      The statutory bases for the relief requested herein are section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

**A.      Procedural History**

5.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

8.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

9.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the

Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"),

this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings

under chapter 15 of the Bankruptcy Code.

       10.     On January 14, 2009, the High Court of England and Wales placed nineteen of

Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA was originally authorized to continue to operate as a going

concern for an initial period of three months, which period was subsequently extended to

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

---

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On February 26, 2010, the French Court extended the suspension of liquidation until the earlier of (i) May 31, 2010 or (ii) the filing with the French Court of a letter from Kapsch CarrierCom AG stating that its bid for the GSM//GSM-R assets of NNSA has become unconditional.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

11.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

12.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

13.      Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

14.      Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.      Case Milestones**

15.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its

---

[5]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; and (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065].  In addition, Nortel has obtained Court approval for the planned sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632].  Efforts continue to be made with respect to the monetization of Nortel's remaining assets.

16.    On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

**D.    The Claims Resolution Process**

17.    In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

18.    The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of proofs of claim (collectively, the "Proofs of Claim") that have been filed in these chapter 11 cases asserting claims against the Debtors (collectively, the "Claims").  As of December 31, 2009, the Claims Register consisted of 6,541 Proofs of Claim.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims asserted in the Proofs of Claim (including any supporting documentation) filed in these cases.  The Debtors also are comparing the Claims asserted in the Proofs of Claims with their Books and Records to determine the validity of the asserted Claims.

**Facts Relevant to this Motion**

19.     On January 10, 2007, Mr. Demel, who alleges that he was employed by Northern

Telecom, Inc. from August 17, 1981 through February 3, 1984, commenced the District Court

Action seeking to recover certain long-term disability and disability pension benefits arising

from an alleged total disability resulting from an automobile accident.  The named defendants in

the Action are Group Benefits Plan for Employees of Northern Telecom, Inc. dated as of January

1, 1982; Northern Telecom, Inc. Retirement Plan for Employees (collectively, the "Benefit

Plans"), as well as the Trustees and Administrators of the Benefits Plans, an Employee Benefits

Committee, and The Prudential Insurance Company of America, as co-Administrator of the

Long-Term Disability Benefits Plan (all defendants in the District Court Action are collectively

referred to as the "Benefits Defendants").  (See Complaint, attached as part of Taiwo Decl. Ex.

A).  Neither NNI nor any other Debtor was named or subsequently added as a defendant in the

District Court Action.

20.     On February 5, 2009, defendants in the District Court Action filed a Suggestion of

Bankruptcy, citing the Debtors' voluntary petitions for relief in these proceedings.  In response,

on February 17, 2009, the District Court transferred the Action to the suspense docket.  (See

Order dated February 17, 2009, attached as part of Taiwo Decl. Ex. A.)

21.     On April 22, 2009, Mr. Demel moved the District Court to remove the Action

from the suspense docket.  (See Demel Dist. Ct. Mem., Taiwo Decl. Ex. B)  In his motion, Mr.

Demel stated that "[t]he entities named as Defendants in [the District Court] Action are not

debtors in the Delaware bankruptcy proceeding."  Id. at 2.  He also asserted that the defendant

Benefits Plans are distinct legal entities subject to suit.  Id. at 4.  He further stated that the

District Court Action "is not an action against, or an action to obtain possession of any property

of the bankruptcy estates of Nortel Networks, Inc. or any of its affiliated debtor entities."  Id.

8

22.     While his motion to remove the District Court Action from the suspense docket was still pending, on September 25, 2009, Mr. Demel filed his Proof of Claim against NNI in the amount of $1,924,557.70, with the attachments thereto.  (Taiwo Decl. Ex. A.)  The Proof of Claim attaches the Complaint and seeks to recover from NNI the exact same benefits that are the subject of the District Court Action.  It also attaches a declaration signed by Mr. Demel's counsel, which acknowledges that the Complaint does not name any of the Debtors as a defendant.  (See Declaration of Gary Steven Stone dated September 25, 2009, at ¶ 3, attached as part of Taiwo Decl. Ex. A.)

23.     On January 8, 2010, the District Court granted Mr. Demel's motion to remove the District Court Action from the suspense docket.  In his Decision, Judge Daniels agreed with Mr. Demel that the Action was not being prosecuted against a debtor, and that Mr. Demel was "seeking recovery for funds in the [Benefits Plans] trust . . . not seeking the debtor's property." (See Dist. Ct. Decision, Taiwo Decl. Ex. C, at 3.)  On this basis, Judge Daniels determined that the Action could proceed without implicating the automatic stay.

## Basis for Objection and Relief Requested

24.     By this Objection, the Debtors request that the Court disallow and expunge the Proof of Claim filed by Mr. Demel, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9014.[6]

25.     When asserting a claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Pinnacle Brands, Inc., 259 B.R. 46, 49-50 (Bankr. D. Del. 2001).   Where the claimant alleges

---

[6]     Since this is not an omnibus objection, the Debtors do not believe Rule 3007-1(f)(iii) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") is applicable to this Objection.  To the extent, however, that the Court determines otherwise, the Debtors are prepared and respectfully request permission to submit a supplemental objection as necessary.

sufficient facts to support its claim, its claim is afforded prima facie validity.  See id. at 50.  A party wishing to dispute such claim must produce evidence in sufficient force to negate the claim's prima facie validity.  Id.  This is not a heavy burden for the debtor to meet.  "The amount of evidence which a debtor is required to submit in order to shift the burden back to a claimant is slight."  In re Finova Capital Corp., 356 B.R. 609, 623 (Bankr. D. Del. 2006).  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Singh v. Mariner Post Acute Network, Inc., 155 Fed. Appx. 611, 612 (3d Cir. 2005).  The burden of persuasion is always on the claimant.  Id.  Mr. Demel has failed to meet even his threshold burden.

26.    First, Mr. Demel has failed to allege sufficient facts in support of his claim to render it prima facie valid.  He does not and cannot allege that NNI is in any way liable to him.  Indeed, by his own admission, his claims are against non-debtors, not NNI, and he does not seek to recover property of the Debtors' estates. (See Demel Dist. Ct. Mem., Taiwo Decl Ex. B, at 2, 4).  Mr. Demel's failure to allege that NNI is liable is fatal to his Proof of Claim.  See Wilson v. Broadband Wireless Int'l Corp., 295 B.R. 140, 146 (B.A.P. 10th Cir. 2003) ("When the face of a proof of claim does not assert a claim against the debtor and, in fact, admits that the basis of the claim is for services rendered, money loaned, or employment by a nondebtor person or entity, it is not properly executed and filed in the debtor's case, and it cannot be prima facie evidence of the validity and the amount of a claim against the debtor…").

27.    Even if the Proof of Claim were entitled to be treated as prima facie valid, however, the only support Claimant attaches to the Proof of Claim -- the Complaint in the District Court Action against non-debtors only -- negates that prima facie validity.

28.     Further, to the extent he seeks through the Proof of Claim a determination of the liability of the Benefit Plans, Mr. Demel is in the wrong court.  Not only does a bankruptcy court generally lack jurisdiction to determine the liabilities of non-debtors, see, e.g., In re O'Malley, 252 B.R. 451, 458-59 (Bankr. N.D. Ill. 1999) (holding that the court lacked jurisdiction over claimant's allegations of by fraud by nondebtors, where those claims did not involve the administration or property of the debtor's estate); In re McConaghy, 15 Bankr. 480, 481 (Bankr. E.D. Va. 1981) (holding that the court lacked jurisdiction to decide disputes between third parties in which the estate of the debtor had no interest), but Claimant is already pursuing such a claim in the District Court Action, in which he is proceeding against the proper parties, the Benefits Defendants.

29.     Additionally, the Proof of Claim should be disallowed and expunged as Mr. Demel is judicially estopped from proceeding on it.  In the District Court Action, Mr. Demel affirmatively argued that his claims are not against the Debtors and do not involve the Debtors' property.  Indeed, in his motion to remove the District Court Action from the Suspense Docket, he argued that the Section 362 automatic stay should not apply because his Complaint was not against a debtor, and he sought no recovery from the Debtors' estates.  (See Taiwo Decl. Ex. B.) In reliance on that argument, the District Court granted his motion and Mr. Demel has been permitted to proceed with the District Court Action.

30.     Having represented to the District Court that his claims are not against the Debtors and do not involve property of the Debtors' estates, and having obtained a favorable ruling from the District Court in reliance on those representations, Mr. Demel should be judicially estopped from taking the opposite position in these proceedings. See, e.g., Scarano v. Central R.R. Co. of New Jersey, 203 F.2d 510, 513 (3rd Cir. 1953) (Judicial estoppel prevents a

11

party from "playing 'fast and loose with the courts'" by using intentional self contradiction as a means of obtaining unfair advantage.); <u>Miller v. USA Waste Servs., Inc.</u> 259 B.R. 73, 79-81 (Bankr. D. Pa. 2001) (denying the trustee's motion to amend the complaint to include a fraud claim where the trustee had earlier disavowed intentions to pursue a claim based on fraud).

31.    Mr. Demel cannot have it both ways.  Either his claims are against non-debtors, in which case they must be litigated in the District Court, and his Proof of Claim in this Court disallowed and expunged, or his claims are against the Debtors in these proceedings, in which case the District Court Action must be stayed, and his claims determined as part of the claims allowance process in due course.

32.    Having argued the former and obtained a ruling in his favor from the District Court, Mr. Demel's Proof of Claim against NNI in these proceedings should be disallowed and expunged.

## Notice

33.    Notice of this Objection has been given via first class mail or hand delivery to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Mr. Demel; and (v) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

34.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) sustain this Objection;

(ii) enter the proposed order attached hereto, disallowing and expunging the Proof of Claim; and

(iii) grant such other and further relief as it deems just and proper.

Dated:  May 25, 2010
          Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

        - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

3561532.1