# Exhibit A

B10 (Official Form 10) (12/08)

| United States Bankruptcy Court - **District of Delaware** | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>  Nortel Networks, Inc. | Case Number:<br>  09-10138 |
|---|---|

*NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br>  **Ernest Demel** | ☐ Check this box to indicate that this claim amends a previously filed claim. |
| Name and address where notices should be sent:<br>  **Gary Stone**<br>  **South Brooklyn Lgl Svcs**<br>  **Legal Services NYC**<br>  **105 Court Street, 3rd Floor**<br>  **Brooklyn, NY 11201**<br>  Telephone number:  **(718) 237-5542** | Court Claim Number: _____<br>  *(If known)*<br><br>  Filed on: _____ |
| Name and address where payment should be sent (if different from above):<br>  **Jeremy M. King, Esq.**<br>  **Dickstein Shapiro, LLP**<br>  **1633 Broadway**<br>  **New York 10019-6708**<br><br>  Telephone number:  **(212) 277-6718** | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>  ☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1. Amount of Claim as of Date Case Filed:** $ <u>1,924,557.70</u><br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>■ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) |
| **2. Basis for Claim:** Retiree benefits, penalties under ERISA for non-payment of plan benefits<br>  (See instruction #2 on reverse side.) | ☑ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4). |
| **3. Last four digits of any number by which creditor identifies debtor:** ___ ***-**-9711<br><br>  **3a. Debtor may have scheduled account as:** <u>Ernest Demel (on Sch. F)</u><br>  (See instruction #3a on reverse side.) | ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5). |
| **4. Secured Claim** (See instruction #4 on reverse side.)<br>  Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>  **Nature of property or right of setoff:**  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other<br>  **Describe:**<br><br>  **Value of Property:**$_____  Annual Interest Rate_____<br><br>  **Amount of arrearage and other charges as of time case filed included in secured claim, if any:** $_____  **Basis for perfection:** _____<br><br>  **Amount of Secured Claim:** $_____  **Amount Unsecured:** $_____ | ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br><br>**Amount entitled to priority:**<br><br>$_____<br><br>* *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| | |
|---|---|
| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | |
| **7. Documents:** Attach redacted copies of any documents, purchase orders, invoices, itemized statements or agreements. You may attach a summary. Attach perfection of a security interest. You may also att<br><br>DO NOT SEND ORIGINAL DOCUMENTS. AT SCANNING.<br><br>If the documents are not available, please explain. | Filed: USBC - District of Delaware<br>Nortel Networks Inc., Et Al.<br>09-10138 (KG)        0000004643<br><br>[barcode]<br><br>**FOR COURT USE ONLY**<br>**FILED / RECEIVED**<br><br>SEP 29 2009<br><br>EPIQ BANKRUPTCY SOLUTIONS, LLC |
| Date:<br><br>**September 25, 2009** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>**/s/ William Z. Kransdorf, Esq.**<br>**William Z. Kransdorf, Esq.** | |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ERNEST DEMEL,
                                    Plaintiff,

                -against-

GROUP BENEFITS PLAN FOR EMPLOYEES OF
NORTHERN TELECOM, INC., dated as of
January 1, 1982, TRUSTEES AND
ADMINISTRATOR OF THE GROUP BENEFITS
PLAN FOR EMPLOYEES OF NORTHERN
TELECOM, INC., EMPLOYEE BENEFITS
COMMITTEE OF NORTHERN TELECOM, INC.,
NORTHERN TELECOM, INC. RETIREMENT
PLAN FOR EMPLOYEES, TRUSTEES AND
ADMINISTRATOR OF  NORTHERN TELECOM,
INC. RETIREMENT PLAN FOR EMPLOYEES,
and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

                                    Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FILED
DOC #:
DATE FILED: FEB 1 8 2009

**ORDER**
07 CV 00189 (GBD)

GEORGE B. DANIELS, District Judge:

        This action having been stayed due to the pending bankruptcy proceeding concerning the

defendant, it is hereby

        ORDERED that the action be transferred to the suspense docket.  Counsel for the

defendant shall contact the Court within thirty days of a disposition of its bankruptcy petition.

Dated: New York, New York

        February 17, 2009

                                    SO ORDERED:

                                    *George B. Daniels*

                                    GEORGE B. DANIELS

                                    United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————x

ERNEST DEMEL,                                    :          Index No. 07CV0189

                              Plaintiff,         :

                                                 :          **COMPLAINT**

                    v.                           :

GROUP BENEFITS PLAN FOR EMPLOYEES OF             :
NORTHERN TELECOM, INC., dated as of January 1,   :
1982, TRUSTEES AND ADMINISTRATOR OF THE          :
GROUP BENEFITS PLAN FOR EMPLOYEES OF             :
NORTHERN TELECOM, INC., EMPLOYEE                 :
BENEFITS COMMITTEE OF                            :
NORTHERN TELECOM, INC., NORTHERN                 :
TELECOM INC. RETIREMENT PLAN FOR                 :
EMPLOYEES, TRUSTEES AND                          :
ADMINISTRATOR OF NORTHERN TELECOM,               :
INC. RETIREMENT PLAN FOR EMPLOYEES, and          :
THE PRUDENTIAL INSURANCE COMPANY                 :
OF AMERICA                                       :

                              Defendants.        :

——————————————————————x

        Plaintiff, ERNEST DEMEL, by and through his attorneys, Legal Services for the

Elderly and Dickstein Shapiro LLP alleges as follows:

                              **NATURE OF ACTION**

        1.  Plaintiff, Ernest Demel, brings this action to seek an award of disability income

benefits pursuant to Group Benefits Plan for Employees of Northern Telecom, Inc., dated as of

January 1, 1982 (Plan Number 506) ("Benefits Plan") and the Northern Telecom, Inc. Retirement

Plan for Employees, dated as of January 1, 1984 ("Retirement Plan").  The Benefits Plan and

Retirement Plan provided disability and retirement benefits to employees of Northern Telecom,

1

Inc. A true and correct copy of the Benefits Plan is attached hereto and by that reference incorporated herein as Exhibit A. A true and correct copy of the Retirement Plan is attached hereto and by that reference incorporated herein as Exhibit B. This action is made pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

2. In the alternative, plaintiff brings an action under §502(a)(3) of ERISA seeking equitable relief in the form of a declaration of Mr. Demel's eligibility for benefits and/or the issuance of an injunction requiring Defendants to permit Mr. Demel to apply for benefits and have his claim adjudicated on its merits.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this suit pursuant to 502(a) and (e) of the Employees Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f), which confers district courts with jurisdiction in cases concerning employee benefit plans subject to ERISA. All administrative remedies have been exhausted. In addition, this action is properly before this Court pursuant to 28 U.S.C. §1331, which conveys jurisdiction over actions arising under the laws of the United States of America. Pursuant to these provisions, Federal courts have exclusive jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan.

4. The ERISA statute provides a mechanism for administrative or internal appeal of benefit denials. *See* 29 U.S.C. §1133. Those avenues of appeal have been exhausted.

5. The Southern District of New York, where Plaintiff resides and which is the place of Defendants' breach of their obligations to him, is an appropriate venue pursuant to 29 U.S.C. § 1132(e)(2).

2

107032.08

## PARTIES

6.  Ernest Demel ("Mr. Demel" or "Plaintiff") is and was a resident of New York, New York at all times relevant hereto.

7.  Mr. Demel worked for Northern Telecom, Inc. ("Nortel") on a full-time basis for approximately two-and-one-half years from August 17, 1981 through February 3, 1984, the date he was rendered disabled in an automobile accident. The Social Security Administration of the United States Department of Health and Human Services ("SSA") has awarded Mr. Demel Disability Insurance Benefits, based on its determination that he has been unable to engage in any form of substantial gainful activity since the date of his automobile accident in 1984. The determination by the Administrative Law Judge finding Mr. Demel completely disabled is attached hereto as Exhibit C.

8.  The Defendants are employee benefits plans and the administrator and trustees of those plans. As a consequence of his employment, at all times relevant hereto, Mr. Demel had been a participant in both the Benefits Plan and the Retirement Plan. The Benefits Plan and Retirement Plan provided disability and retirement benefits to employees of Northern Telecom, Inc.

9.  Upon information and belief, Defendant The Prudential Insurance Company of America is an insurance company that provides claims administration services to Northern Telecom Inc.

10. Upon information and belief, Nortel provided Long Term Disability Benefits under the Benefits Plan, which is administered by the Employee Benefits Committee and The Prudential Insurance Company of America.

3

107032.08

11.  Upon information and belief, Nortel created the Retirement Plan and administers it through its Employee Benefits Committee.

12.  Upon information and belief, Nortel enjoyed and continues to enjoy significant federal tax advantages by making contributions to these plans while claiming compliance with the requirements of ERISA, including the requirement of section 29 U.S.C. § 1104(a)(1) that employee benefit and retirement plans be administered solely in the interest of its participants and beneficiaries.

## STATEMENT OF FACTS

A.    **Events Leading To Mr. Demel's Disability And Status As A Disabled Worker**

13.  On August 17, 1981, after being interviewed in New York City, Mr. Demel, began his employment at Nortel as a field engineer for the Eastern Region. Mr. Demel's base office was in New York.

14.  After completing the training program, Mr. Demel was promoted to DMS/SL Engineer II, a position that required him to spend approximately eighty percent (80%) of his work time traveling to and working at numerous job sites throughout the United States.

15.  In early February 1984, Mr. Demel was required to travel to a project site in Middletown, Connecticut. Because the job site was a substantial distance from his residence, Mr. Demel had to travel by automobile from a local hotel.

16.  At approximately 8:00 a.m. on February 3, 1984, while driving from his hotel to the job site, Mr. Demel's car skidded off the road because of icy conditions. As a result of this accident, Mr. Demel suffered extensive physical injuries as well as psychological and emotional trauma. These injuries included a herniated disc, damage to his right leg, nerve damage in his

4

neck, palmar hyperhydrosis, post-traumatic stress disorder and severe depression. Due to these impairments, Mr. Demel has been unable to engage in any substantial gainful activity since that date.

17. After this accident, Mr. Demel received five (5) days of sick leave at full salary. Beginning on February 10, 1984 and continuing to February 29, 1984, Mr. Demel received short-term disability benefits from Nortel under the terms of the Benefits Plan.

18. During the four (4) weeks he was on short term disability, Mr. Demel received benefits equaling 100% of his salary. Upon information and belief, Nortel was able to offset this amount with recovery from worker's compensation for which Nortel applied on February 8, 1984, with Nortel's carrier at the time, Liberty Mutual Insurance Company.

19. At the time of his injury and immediately thereafter, Mr. Demel was not given a Summary Plan Description nor was he verbally informed of his rights under the Plan.

20. In early March 1984, pursuant to his doctor's restrictions on the duties that Mr. Demel could perform given his impairments, Nortel enrolled Mr. Demel in a five week training program at Nortel in Dallas, Texas where he took courses in data transmission engineering.

21. Following his completion of the training course, Mr. Demel did not receive work commensurate with his training, education or past experience but rather was temporarily assigned to on-the-job vocational rehabilitation at a storage warehouse in Dallas, Texas, an unskilled position that did not involve any of the duties in which he normally engaged nor any of the duties for which he was trained. This was not a reasonable work assignment commensurate with his training, education or past experience.

22. Mr. Demel made several calls to his regional manager to complain about the rehabilitation work at the warehouse, which occasionally involved heavy lifting beyond Mr.

5

Demel's physical ability, and he repeatedly requested a transfer to an appropriate assignment. Nortel never made such a transfer.

23.  Upon information and belief, while he was in the rehabilitation program, Mr. Demel was taken off short term disability and put back on Nortel's payroll as a regular full time employee.

24.  Mr. Demel was not informed in writing or verbally that he was being taken off short term disability or that his status was changing in any way while he attended vocational training.

25.  On April 30, 1984, Mr. Demel was summoned to Nortel's Dallas office, at which time he was terminated.

26.  On May 1, 1984, Mr. Demel requested a reason for his termination.  On that day, Nortel's human resource department only stated that he had been terminated for violation of company rules.  Although he immediately denied having committed any such violation, Nortel did not provide Mr. Demel with any of the evidence upon which this accusation was based. Further, Nortel did not provide Mr. Demel with any opportunity to rebut the accusation that was the ostensible reason for his dismissal.

**B.      Defendants' Failure to Notify Mr. Demel of Long Term Disability and Retirement Benefits Rights as Required by ERISA §102(a), 29 U.S.C. §1022(a).**

27.  During his employment by Nortel, Defendants failed to provide Mr. Demel with a Summary Plan Description ("SPD"), giving him notice of his rights under the Benefits Plan. This notice was required to be given to Mr. Demel by ERISA § 102(a), 29 U.S.C. § 1022(a).

28.  Despite their knowledge of Mr. Demel's severe physical and mental impairment and the significant possibility that he would meet the Benefits Plan's criteria for short term and

6

long term disability benefits, Defendants never attempted by any means to inform Mr. Demel of

his rights under the Benefits Plan or Retirement Plan. Mr. Demel's disability entitles him to

retirement benefits. Additionally, at the time of his termination, Mr. Demel was not provided

with any notification or documentation regarding any rights that he may have had under either

plan.

29. Mr. Demel inquired about his rights to disability benefits in October of 1986. On

November 11, 1986, Nortel sent Mr. Demel a letter stating that Liberty Mutual Insurance

Company ("Liberty Mutual") would be handling his claim. A true and correct copy of this letter

is attached as Exhibit D. As set forth below, Liberty Mutual took an active role in Mr. Demel's

workers compensation hearing, but Liberty Mutual did not provide Mr. Demel with any

information regarding the Benefits Plan or the Retirement Plan. Further, in 1987, Mr. Demel

filed suit against Nortel in the Civil Court of the City of New York, County of Queens, seeking

recovery of unpaid travel expenses he incurred while participating in vocational rehabilitation.

Nortel never answered that complaint.

### C.  Mr. Demel's Successful Attempt to Obtain Social Security Disability Insurance Benefits.

30. Approximately one and a half years after Mr. Demel's termination from Nortel,

he applied to the Social Security Administration of the United States Department of Health and

Human Services ("SSA") for Disability Insurance Benefits ("SSDI").

31. On January 20, 1989, after reviewing the relevant medical documents,

considering Mr. Demel's vocational rehabilitation period and conducting an evidentiary hearing

where he was able to question Mr. Demel under oath, evaluate his responses, and observe his

7

107032.08

demeanor, an SSA Administrative Law Judge ("ALJ") issued a decision finding that Mr. Demel was unable to engage in any form of substantial gainful activity. The decision listed the disability onset date as March 27, 1987.

32. On November 22, 1999, a different SSA ALJ issued a second decision (the "Amended SSA Decision") that corrected and superseded the first decision by finding that Mr. Demel's disability dated from the time of his automobile accident on February 3, 1984, based upon the evidentiary hearing. At the hearing, a medical expert testified as to the extent of Mr. Demel's injuries and in support of the fact that Mr. Demel was disabled as of the date of his accident. A copy of the Amended SSA Decision is annexed hereto as Exhibit C.

### D.    Mr. Demel's Exhaustion of Administrative Remedies.

33. After Mr. Demel's termination, Nortel filed workers' compensation claim forms for him with their workers' compensation carrier, Liberty Mutual Insurance. Immediately thereafter, a series of workers' compensation hearings ensued which continued until settlement in July, 2006.

34. Through its representatives, Nortel took an active role in the workers' compensation hearings. Throughout that time, Mr. Demel insisted that he was entitled to Long Term Disability Benefits, but Nortel ignored his requests. In fact, Nortel has recognized both that Mr. Demel has asserted his rights to benefits for years and that no response has been forthcoming from Nortel, as further set forth below.

35. After years of being unable to obtain information through his own efforts, on November 3, 2000, Mr. Demel retained counsel at Legal Services for the Elderly, a poverty law office, to investigate and help him obtain any benefits to which he was entitled.

107032.08

**Benefits Plan**

36. On November 3, 2000, counsel sent a letter to the Nortel Benefits Department on Mr. Demel's behalf, asking that it inform him of the status of Mr. Demel's claim, that it furnish him with any forms that he or his physicians needed to complete, that his claim be processed "as expeditiously as possible in light of the extreme hardship of Mr. Demel's situation," and that it send counsel "copies of the Plan and Summary Plan Description, and relevant amendments thereto." A copy of the November 3, 2000 letter is annexed hereto as Exhibit E.

37. Nortel did not respond to this November 3 letter and over the next six months, counsel made numerous telephone calls to Nortel. On January 19, 2001 and April 5, 2001 counsel sent additional letters to Nortel renewing the requests made in the November 3 letter. A true and correct copy of those letters are annexed hereto as Exhibit F and G, respectively. In the April 5, 2001 letter, Mr. Demel's counsel reiterated that Mr. Demel still had not been provided with the plan materials to which he was entitled.

38. On May 7, 2001, counsel spoke by telephone to Ruth Hillis, Nortel's Senior Benefits Counsel, in Nashville, Tennessee, who disputed Mr. Demel's entitlement to benefits and asserted that he had been terminated because of his own unspecified "malfeasance." Ms. Hillis insisted that there could be "no dispute" because Nortel's records supported Nortel's position. Mr. Demel's counsel noted Mr. Demel's disagreement and again requested relevant documents including the Benefits Plan and the SPD. Ms. Hillis responded that if the documents still existed she would send them, even though she believed Mr. Demel had no right to see them. As set forth below, a copy of the Benefits Plan eventually was received from Ms. Hillis on or about August 20, 2001.

9

39. On July 9, 2002, Mr. Demel's counsel telephoned Barbara Carson of Nortel's Labor and Employee Relations department, inquiring about relevant documents and giving further information regarding Mr. Demel's eligibility for both a disability benefit and disability retirement pension.

40. On July 11, 2002, Mr. Demel's counsel sent a letter to Ms. Carson, requesting adjudication of Mr. Demel's rights under the Benefits Plan. A copy of the July 11, 2002 letter is annexed hereto as Exhibit H. That letter also requested an explanation for why Mr. Demel was not ever given any forms or an application for applying for long term disability benefits.

41. On July 26, 2002, Ms. Carson responded by letter, refusing to submit Mr. Demel's claim to formal adjudication. Instead, Ms. Carson stated that Nortel's position is that Mr. Demel is not eligible for benefits under the Benefits Plan, despite the SSA's finding that Mr. Demel has been disabled since the date of his accident. Ms. Carson's letter did not contain any information required of a denial of claim pursuant to statute. A copy of the July 26, 2002 letter is annexed hereto as Exhibit I.

42. In Ms. Carson's July 26, 2002 letter, she acknowledged that Mr. Demel had been seeking a resolution of his claim for benefits under the Benefits Plan "for years" prior to her letter.

43. On February 26, 2004, another letter was sent on behalf of Mr. Demel. This letter was addressed to Ruth Hillis, of Nortel's Employee Benefits Committee, and the Plan Trustee. This letter again requested formal adjudication of Mr. Demel's claim under the Benefits Plan. After counsel for Mr. Demel subsequently contacted Nortel by telephone, Ms. Paula Holden responded to this letter on behalf of the Nortel Employee Benefits Committee on July 12, 2004. This July 12, 2004 letter provided Mr. Demel with the information necessary to pursue an

10

107032.08

administrative review of his claim.  A copy of the February 26, 2004 letter is annexed hereto as Exhibit J.  A copy of the July 12, 2004 letter is annexed hereto as Exhibit K.

44.  Later, a November 12, 2004 letter written by a representative of The Prudential Insurance Company of America denied Mr. Demel benfits pursuant to the Benefits Plan.  That November 12, 2004 letter also provided Mr. Demel with the information necessary to pursue an administrative review of his claim.  A copy of the November 12, 2004 letter is annexed hereto as Exhibit L.

45.  As set forth more fully below, Mr. Demel pursued that review to no avail.

### Retirement Plan

46.  On May 30, 2001, Mr. Demel's counsel sent Ms. Hillis a letter stating, *inter alia*, that due to Mr. Demel's favorable SSDI decision, he met "the standard of § 4.4.2.1" for an award of a disability retirement benefit under the terms of the Retirement Plan.  Section 4.4.2.1 provides that a member of the Plan "is eligible to receive a Disability Insurance Benefit as provided in the Social Security Law of the United States of America."  The letter added:  "If you do not agree, please explain why, and indicate whether in stating your opinion you are issuing a final or non-final decision on behalf of the Plan."  A copy of the May 30, 2001 letter is annexed hereto as Exhibit M.

47.  On June 14, 2001, Ms. Hillis sent Mr. Demel's counsel a letter stating, *inter alia*, that she was "not the administrator of the plan," that her "prior letter" had been intended only to address counsel's "request for particular information," and that "[i]f Mr. Demel desires to file a formal claim for benefits under the Retirement Plan he should send such a claim to the Employee Services address at P.O. Box 1310, Mailstop 11A0110B5, Research Triangle Park, North Carolina."  A copy of the June 14, 2001 letter is annexed hereto as Exhibit N.

11

48. On or about August 20, 2001, Mr. Demel's counsel for the first time received from Ms. Hillis a portion of the Retirement Plan along with a copy of the Benefits Plan, but not the SPD. This response was received only after counsel for Mr. Demel wrote to Nortel on June 22, 2001 and August 8, 2001. Unfortunately, the copy of the Retirement Plan was incomplete as it only included certain excerpted pages. Ms. Hillis' cover letter stated that the short term disability benefits paid to Mr. Demel immediately after his accident were part of a "salary continuation program," not an ERISA plan. No documentation was provided to support this statement. A full copy of the Retirement Plan was received by Mr. Demel's counsel on August 27, 2001.

49. On September 26, 2001, Mr. Demel's counsel wrote to the Plan Administrator at the address provided by Ms. Hillis, enclosing a copy of the Amended SSA Decision. The letter reiterated the reasons Mr. Demel was entitled to benefits under the Retirement Plan. The letter also requested that Mr. Demel's counsel be sent any forms that needed to be filled out, asked that his counsel be informed if any further medical evidence was needed, and stated that it should be treated "as a formal request for a favorable decision." A copy of the September 26, 2001 letter is annexed hereto as Exhibit O.

50. Nortel responded to the September 26, 2001 letter with an October 3, 2001 letter from Charlotte Cox, an employee of Pricewaterhouse Coopers, that was only two sentences long and flatly stated that Mr. Demel was not entitled to benefits. No reasoning or authority was cited. On October 9, 2001, counsel for Mr. Demel requested an explanation for that conclusion and a clarification regarding who the plan administrator was and what Pricewaterhouse Coopers' role was with respect to administering the Retirement Plan. Receiving no response, counsel for Mr. Demel wrote to Ms. Cox again on January 9, 2002, renewing his request for information.

12

Ms. Cox replied on February 4, 2002, providing the summary plan description for the Retirement Plan and again flatly stating that Mr. Demel was not entitled to benefits.

51. As mentioned above, on July 9, 2002, Mr. Demel's counsel telephoned Barbara Carson of Nortel's Labor and Employee Relations department, inquiring about relevant documents and giving further information regarding Mr. Demel's eligibility for both a disability benefit and disability retirement pension. In addition, the July 11, 2002 letter mentioned above requested information from Nortel regarding the Retirement Plan.

52. On February 10, 2004, Nortel sent to Mr. Demel a letter responding to an inquiry made by him regarding his entitlement to Retirement Benefits. In this February 10, 2004 letter, Nortel contended that Mr. Demel had no vested benefit in the Retirement Plan. A copy of this February 10, 2004 letter is annexed hereto as Exhibit P.

53. On July 26, 2004, Nortel sent to Mr. Demel a letter denying his claim for benefits under the Retirement Plan. A copy of this July 26, 2004 letter is annexed hereto as Exhibit Q. Mr. Demel appealed this determination, as further set forth below.

### Final Adjudication

54. After repeated efforts by counsel to have Mr. Demel's claims reviewed, in 2005 Nortel finally adjudicated Mr. Demel's claims under the Benefits Plan. As Mr. Demel had reached retirement age, Nortel also adjudicated Mr. Demel's claims for retirement benefits under the Retirement Plan.

55. Mr. Demel's claims for disability retirement benefits under the Retirement Plan were finally considered by Nortel in 2005. Mr. Demel's claim under the terms of the Retirement Plan was denied in a letter dated January 31, 2005, from Mr. John Scannapieco, on behalf of the

13

107032.08

Nortel Benefits Committee.  A copy of this January 31, 2005 letter is annexed hereto as

Exhibit R.

56.  Mr. Demel's claims for Long Term Disability Benefits under the Benefits Plan

also were denied on June 7, 2005.  A copy of this June 7, 2005 letter is annexed hereto as

Exhibit S.

57.  Having exhausted all of his administrative remedies, Mr. Demel now brings suit.

To the extent any further administrative remedies are available to Mr. Demel, pursuing such

remedies would be futile.

### FIRST CLAIM FOR RELIEF
(Breach of the Benefits Plan)

58.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through

57 above as if set forth more fully herein.

59.  According to the Benefits Plan, "[an employee is] considered totally disabled at

any time [he is] unable to work because of disease or injury."

60.  Under the Benefits Plan, during the first 24 months of "total disability," an

employee is considered "unable to work" if he cannot work at the type of occupation in which he

normally engages and this period only ends when an employees starts work at any "reasonable

occupation."  Vocational rehabilitation or part-time work for the purposes of vocational

rehabilitation do not constitute a "reasonable occupation" under the Benefits Plan.

61.  Upon information and belief, the five (5) week training program attended by Mr.

Demel at Nortel's request and the temporary warehouse position to which he was assigned

following the training constituted vocational rehabilitation under the Plan and was not a

"reasonable occupation."

14

62. The terms of the Benefits Plan provided that while participating in a rehabilitation program "[an employee] will not lose [his] eligibility for benefits."

63. Under the terms of the Benefits Plan, Nortel was required to keep Mr. Demel on short term disability benefits during his training and temporary assignment.

64. The Defendants failed to explain to Mr. Demel that he was being removed from short term disability and to explain the consequences of such an action to his rights under the Plan as required under ERISA and the Plan. In doing so, the Defendants failed to afford him the opportunity to dispute their decision at that time.

65. Defendants' wrongful termination of Mr. Demel's short term disability benefits under the Plan resulted in his purported ineligibility for long term disability benefits and the denial of retirement benefits.

66. Defendants wrongfully denied Mr. Demel benefits in contravention of the terms of the Benefit Plan.

67. As a result of the foregoing, Mr. Demel is entitled to recover benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), including an order directing Defendants to pay all benefits wrongly withheld.

## SECOND CLAIM FOR RELIEF
(Breach of the Retirement Plan)

68. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 67 above as if set forth more fully herein.

69. Section 2.1.4 of the Retirement Plan provides that a new employee shall become a member of a plan "on the later of the first anniversary of the date that he commenced his

employment and age 25." Mr. Demel became a member of the Retirement Plan on August 17, 1982.

70. Section 4.4.1 of the Retirement Plan provides that a disability pension will be provided to a plan member who is rendered totally and permanently disabled. Section 3.1.4 of the Retirement Plan provides for the accrual of Benefit Service, as defined therein, for plan members who are totally and permanently disabled provided the plan member had accrued one year of Vesting Service, as defined therein. At the time he became totally and permanently disabled, Mr. Demel had accrued more than one year of Vesting Service.

71. Section 4.4.2.1 of the Retirement Plan states that an active member will be considered totally and permanently disabled if "[h]e is eligible to receive a Disability Insurance benefit as provided in the Social Security Law of the United States."

72. On March 22, 1999, the Amended SSA Decision found that Mr. Demel was eligible to receive a disability insurance benefit as provided under the Social Security Law of the United States and that his disability began while he was an active member of the Retirement Plan on February 3, 1984.

73. Section 502(a)(1)(B) of ERISA, 29 U.S.C.A. § 1132(a)(1)(B) provides that an action may be brought by a plan beneficiary "to enforce his rights under the terms of the plan."

74. Defendants, through their actions and omissions, have prevented Mr. Demel from receiving benefits to which he would be entitled under the terms of the Retirement Plan.

75. As a result of the foregoing, Mr. Demel therefore is entitled to recover benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), including an order directing Defendants to pay all benefits wrongly withheld and to make the future payments that would be due him as a recipient of a disability retirement pension.

16

**THIRD CLAIM FOR RELIEF**
(Violation of Title I of ERISA)

76.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 75 above as if set forth more fully herein.

77.  Pursuant to § 404 of ERISA, 29 U.S.C. § 1104, Defendants had a fiduciary duty to discharge their duties "solely in the interests of the participants and beneficiaries" of a plan.

78.  Despite their knowledge of his impaired physical and mental condition and the significant possibility of his eligibility, Defendants failed to fulfill their fiduciary duty to Mr. Demel when they failed to provide any assistance to him in making a claim for long term disability or retirement benefits at the time he became disabled and for several years thereafter.

79.  In failing to fully inform Mr. Demel of his rights at the time he became disabled and in their administration of the plans, Defendants failed to meet the requirements of § 503 of ERISA, 29 U.S.C. § 1133.  Defendants failed to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" and failed to provide a reasonable opportunity for fiduciary review of the denial of his claim.

80.  Defendants administered the claims procedure in a manner "that unduly inhibits or hampers the initiation or processing of claims for benefits," contrary to Federal regulations. 29 C.F.R. § 2560.503-1(b)(3).

81.  Defendants failed to implement the Plan in a manner that provides Mr. Demel with "administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents."  Defendants also failed

17

107032.08

to ensure that Mr. Demel was treated like "similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5).

82. Defendants failed to provide Mr. Demel with reasonable claims procedures, in violation of Federal regulations promulgated by the Secretary of Labor, to implement § 503 of ERISA, 29 U.S.C. § 1133. 29 C.F.R. § 2560.503-1.

83. In the event that relief cannot be granted under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), this Court should grant Mr. Demel equitable relief under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) so as to have redress for Defendants' violations of Title I, in that those violations, separately or in combination, prevented him from obtaining benefits that otherwise would have been due under the terms of the plans.

84. Appropriate equitable relief under these circumstances would include a decision declaring Mr. Demel's eligibility for benefits and/or the issuance of an injunction requiring Defendants to permit Mr. Demel to apply for benefits and have his claim adjudicated on its merits.

WHEREFORE, Plaintiff Ernest Demel respectfully requests that judgment be awarded against Defendants as follows:

a. On the First Claim For Relief, that Defendants pay damages sustained by Plaintiff as a consequence of their breach;

b. On the First Claim For Relief, a declaration that Plaintiff is entitled to short term and long term disability benefits under the terms of the Benefits Plan;

c. On the Second Claim For Relief, that Defendants pay damages sustained by Plaintiff as a consequence of their breach;

18

       d.  On the Second Claim For Relief, a declaration that Plaintiff is entitled to benefits under the terms of the Retirement Plant;

       e.  On the Third Claim For Relief, that Defendants pay damages sustained by Plaintiff as a consequence of their violation;

       f.  On the Third Claim For Relief, a declaration that Plaintiff is entitled to have his claim adjudicated on its merits;

       g.  On all counts, reasonable costs, expert witness fees and attorneys' fees;[1] and

       h.  Any and all other relief as the Court may deem just and proper.

New York, New York
Dated: January 9, 2007

By:_____/s_____
Gary Steven Stone (GSS5563)
Legal Services for the Elderly
130 West 42nd Street, 17th Floor
New York, New York 10036-7803
Tel: (646) 442-3316
Fax: (212) 719-1939

**Attorney for Plaintiff**

*Of Counsel*
Jeremy King (JK6835)
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, New York 10036
Tel: (212) 277-6718
Fax: (212) 277-6901

---

[1] The reasonable attorneys' fees of Legal Services for the Elderly are not being sought in this action.

19

107032.08

William Z. Kransdorf (WK 9364)
NYC Bankruptcy Assistance Project
at Legal Services NYC
350 Broadway, 6th Floor
New York, NY 10013
Tel/Fax: (646) 442-3646
wkransdorf@ls-nyc.org

Attorneys for Creditor Ernest Demel

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**
-------------------------------------------------------------- X
In re:

NORTEL NETWORKS, INC., *et al.*

                                               Case No. 09-10138
                                               Chapter 11

    Debtors
-------------------------------------------------------------- X

## DECLARATION IN SUPPORT OF PROOF OF CLAIM

GARY STEVEN STONE, an attorney duly admitted to practice in the State of New York,

declares under penalty of perjury, the following:

    1. I am an attorney with South Brooklyn Legal Services, which is part of Legal Services

NYC. My office address is 105 Court Street, 3rd Floor, Brooklyn, NY 11201.

    2. I represent, the Plaintiff, Ernest Demel, in an action before the Federal District Court in

Manhattan for non-payment of certain pension and disability benefits owed to him by Group

Benefits Plan ("Plan") for Employees of Northern Telecom, Inc., et al. Complaint attached

hereto as Exhibit A.

    3. Although our complaint did not name any of the Debtors in the Northern Telecom

bankruptcy as a defendant, Northern Telecom did file a Suggestion of Bankruptcy in our suit

against the Pension Plan.

4. The District Court ordered that case placed on the suspense docket in February, 2009.
See: Order of the District Court, Attached hereto as Exhibit B.

5. In the course of our Federal Court litigation of Mr. Demel's benefits claims against the
Plan, we entered into a mediation on or about January 21, 2008.  On or about that date, we
calculated the extent of Mr. Demel's claims against the Plan to be as follows:

- $702,928.85, actual unpaid disability and retirement benefits, including intrest;

- Between $29,100 and $518,700 in penalties under ERISA, depending on the
  number of days Defendant had been in breach.

16. I declare under penalty of perjury under the laws of the United States that the
foregoing is true and correct to the best of my knowledge, information and belief.

Dated:      September 25, 2009
            New York, New York

*[signature]*

GARY STONE, ESQ.

is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.    **WHAT TO FILE**

The Debtors are enclosing a proof of claim form for use in the Debtors' cases (Attachment A); if your claim is scheduled by the Debtors, the form also sets forth the amount of your claim as scheduled by the Debtors, the specific Debtor against which the claim is scheduled and whether the claim is scheduled as disputed, contingent or unliquidated. You will receive a different proof of claim form for each claim scheduled in your name by the Debtors. You may utilize the proof of claim form(s) provided by the Debtors to file your claim. Additional proof of claim forms may be obtained at www.uscourts.gov/bkforms.

Section 503(b)(9) of the Bankruptcy Code provides administrative claim priority for "the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Any holder of a claim pursuant to section 503(b)(9) must complete the proof of claim form enclosed as Attachment B (the "Section 503(b)(9) Claim Form") to indicate that a section 503(b)(9) priority is being asserted.

All proof of claim forms must be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant. It must be written in English and be denominated in United States currency. You should attach to your completed proof of claim any documents on which the claim is based (if voluminous, attach a summary) or an explanation as to why the documents are not available.

Any holder of a claim against more than one Debtor must file a separate proof of claim with respect to each such Debtor and all holders of claims must identify on their proof of claim the specific Debtor against which the claim is asserted and the case number of that Debtor's bankruptcy case.

3.    **WHEN AND WHERE TO FILE**

Except as provided for herein, all proofs of claim against the Debtors must be filed so as to be actually received at the following address **on or before 4:00 p.m. (prevailing Eastern Time) on September 30, 2009:**

**IF DELIVERED BY MAIL:**

Nortel Networks Inc. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5075
New York, NY 10150-5075

**IF DELIVERED BY HAND DELIVERY OR OVERNIGHT COURIER:**

Nortel Networks Inc. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY 10017

Proofs of claim will be deemed filed only when received by Epiq Bankruptcy Solutions, LLC (the "Claims Agent") at the addresses listed herein on or before 4:00 p.m. (prevailing Eastern

3

From:    Origin ID: QNYA   (212) 277-6567
Janice Oneal

1633 Broadway

New York, NY 10019




J09300907312923

Ship Date: 28SEP09.
ActWgt: 1.0 LB
CAD: 4336730/INET9090
Account#: S *********

Delivery Address Bar Code

SHIP TO:    (212) 277-6756          BILL SENDER

**Nortel Networks Inc.**
**Claims Processing Center**
**757 Third Avenue - 3rd Fl.**
**c/o Epiq Bankruptcy Solutions, LLC**
**NEW YORK, NY 10017**



Ref #    T9270.0005
Invoice #
PO #
Dept #

TRK#
0201   7969 8208 3165

**TUE - 29SEP**          **A1**

**FIRST OVERNIGHT**

10017
NY-US
EWR

# E9 OGSA



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic valueof the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $500, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.