IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
: 
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
                  Debtors. : Jointly Administered
:
: Hearing date: July 7, 2010 at 10:00 a.m. (ET)
: Objections due: June 30, 2010 at 4:00 p.m. (ET)
------------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO 11 U.S.C. § 1121(d) TO EXTEND THE EXCLUSIVE PERIODS FOR NORTEL NETWORKS (CALA) INC. TO (I) FILE A CHAPTER 11 PLAN AND (II) SOLICIT ACCEPTANCES THEREOF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as **Exhibit A** (the "Order"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code") (i) extending the period during which Nortel Networks (CALA) Inc. ("NN CALA") has the exclusive right to file a chapter 11 plan (the "NN CALA Exclusive Filing Period") through and including January 13, 2011, and (ii) extending the period during which NN CALA has the exclusive right to solicit acceptances thereof (the "NN CALA Exclusive Solicitation Period" and, together with the NN CALA Exclusive Filing Period, the "NN CALA Exclusive Periods") through and including March 13, 2011. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

## Background

### A. Procedural History

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA, filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing

---

[3] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the " NN CALA Petition Date"), NN CALA filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

---

[4] Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

4

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

### B. Debtors' Corporate Structure and Business

11. Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

### C. Case Milestones

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated

---

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

5

and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632] (collectively, the "Sale Transactions"). Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.   On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) (the "Bar Date") as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) (the "NN CALA Bar Date") as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

## Relief Requested

15.   By this Motion, the Debtors seek an order pursuant to section 1121(d) of the Bankruptcy Code extending (a) the NN CALA Exclusive Filing Period through and including January 13, 2011, and (b) the NN CALA Exclusive Solicitation Period through and including March 13, 2011.[6]

## Facts Relevant to this Motion

16.   On January 21, 2010, this Court entered an Order Extending the Exclusive Periods during which the Debtors May File a Chapter 11 Plan and Solicit Acceptances thereof [D.I. 2325] (the "Nortel Exclusivity Order") (i) extending the period during which the Debtors

---

[6]   Although the Debtors, including NN CALA, currently intend to file a plan of reorganization prior to the expiration of the Nortel Exclusive Filing Period (as defined below), the Debtors seek the extension of the NN CALA Exclusive Filing Period and the NN CALA Exclusive Solicitation Period in order to preserve their exclusivity rights with respect to NN CALA to the fullest extent permitted by the Bankruptcy Code.

6

have the exclusive right to file a plan or plans (the "Nortel Exclusive Filing Period") through and including July 13, 2010, and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances thereof (the "Nortel Exclusive Solicitation Period" and, together with the Nortel Exclusive Filing Period, the "Nortel Exclusive Periods") through and including September 13, 2010. Accordingly, the current NN CALA Exclusive Filing Period extends through July 13, 2010 and the current NN CALA Exclusive Solicitation Period extends through September 13, 2010.[7]

17. Since the NN CALA Petition Date, NN CALA, together with the other Debtors, has worked diligently on a variety of fronts to administer its estate, to maximize value for its stakeholders, and to further its restructuring efforts. As discussed in greater detail below, the Debtors, including NN CALA, have undertaken significant steps with respect to the ultimate disposition of their assets and the transfer of substantial numbers of employees and contracts to purchasers in connection with such, and the design and implementation of an internal reorganization to further such sales. At the same time, the Debtors, including NN CALA, have made substantial efforts to manage and preserve their remaining assets and to reduce secondary costs, including through the rejection of real property leases and other contracts not necessary for their continued business operations. The Debtors also have taken other steps to preserve and maximize value, including the development of a key employee incentive and retention plan, the resolution of significant inter-company funding and coordination issues, the prompt resolution of reclamation claims asserted by suppliers against the Debtors, and the establishment of the Bar

---

[7] While this Motion is scheduled to be heard prior to the expiration of these periods, Rule 9006-2 of the Local Rules of Bankruptcy Practice and Procedure of the Untied States Bankruptcy Court for the District of Delaware (the "Local Rules") provides: "[I]f a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Code, Fed. R. Bankr. P., these Local Rules or Court order, the time shall automatically be extended until the Court acts on the motion, without the necessity for the entry of a bridge order."

Date and the NN CALA Bar Date. At the end of 2009, after consultation with the Committee, the Bondholder Group, the Monitor and the Canadian Debtors, the Debtors also named John Ray the principal officer of the Debtors to help lead the next stage of the Debtors' efforts to maximize value.

18. Additionally, the Debtors, including NN CALA, have engaged suppliers and customers of Nortel's worldwide operations in an effort to preserve the value of their business operations while divestitures are pursued. The Debtors also have actively coordinated the U.S. restructuring efforts and court proceedings with the various other multi-jurisdictional proceedings and their non-debtor affiliates, and have actively solicited input from, provided input to, and coordinated restructuring efforts with the Committee, the Bondholder Group, the Monitor and the Joint Administrators.

19. In light of the foregoing and as described below, the Debtors, including NN CALA, have made and continue to make substantial progress toward the stated objective of value maximization. At this point, with the Sale Transactions largely complete other than the Debtors' provision of transition services to purchasers, the focus of the Debtors has now shifted to addressing the allocation of proceeds from the Sale Transactions, realization of value from the Debtors' remaining assets, and the comprehensive review and effective and fair resolution of the claims asserted against the Debtors in their chapter 11 cases. These efforts continue to occupy the Debtors' attention over the next several months.

20. Given the complexity of the Debtors' cases, the successes of the Debtors, including NN CALA, since the Petition Date and the additional tasks to be addressed, the best interests of the Debtors, their estates, and their creditors would be well served by extending the NN CALA Exclusive Periods for the reasons set forth herein.

## Basis for Relief

21. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a plan. Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor proposes and files a plan within the initial 120-day exclusive period, the debtor then has until 180 days after the commencement of the chapter 11 case to solicit and obtain acceptances of such plan. Pursuant to section 1121(d)(1) of the Bankruptcy Code, "on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Such extensions are capped, however, by section 1121(d)(2) of the Bankruptcy Code, which limits any extension of the exclusive filing period to eighteen (18) months after the petition date and any extension of the solicitation period to twenty (20) months after the petition date. 11 U.S.C. § 1121(d)(2)(A)-(B). By this Motion, the Debtors seek to extend the NN CALA Exclusive Periods to the latest dates permitted by section 1121(d)(2) of the Bankruptcy Code.

22. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." H.R. Rep. No. 95, 95th Cong., 1st Sess. 232 (1977); see also In re Public Serv. Co. of N.H., 88 B.R. 521, 534 (Bankr. D.N.H. 1988) ("[T]he legislative intent...[is] to promote maximum flexibility."). To facilitate this legislative intent, a debtor should be given a reasonable opportunity to negotiate an acceptable plan with creditors and to prepare adequate financial and non-financial information concerning the ramifications of any proposed plan for

disclosure to creditors. See, e.g., In re McLean Indus., Inc., 87 B.R. 830 at 833-34 (Bankr. S.D.N.Y. 1987); In re Texaco, Inc., 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987).

23. The decision to extend a debtor's exclusive periods is committed to the bankruptcy court's sound discretion, guided by the facts and circumstances of each case. See, e.g., First Am. Bank of N.Y. v. S.W. Gloves and Safety Equip., Inc., 64 B.R. 963, 965 (D. Del. 1986). Courts consider a variety of factors in determining whether "cause" exists to warrant an extension of the exclusive periods, including: (a) the size and complexity of the case, (b) the debtor's progress in resolving issues facing the estate, and (c) whether an extension of time will harm the debtor's creditors. See, e.g., In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409-10 (E.D.N.Y. 1989) (listing above-referenced factors); see also In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997) (citing In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996)). The existence of good faith progress and the need for additional time to continue such progress is also a factor in establishing cause for extending the exclusive periods under section 1121(d) of the Bankruptcy Code. See Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1382-3 (5th Cir. 1984); In re Express One Int'l, Inc., 194 B.R. at 101; McLean, 87 B.R. at 834; In re Pine Run Trust, Inc., 67 B.R. 432, 435 (Bankr. E.D. Pa. 1986).

24. As demonstrated in this Motion, "cause" exists to further extend the NN CALA Exclusive Periods in its chapter 11 case.

A.   **The Size and Complexity of these Chapter 11 Cases**

25. Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for the extension of a debtor's exclusive period to file a plan and the period to solicit acceptances of such a plan. "[I]f an unusually large company were to seek reorganization under chapter 11, the court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 595, 9th Cong., 1st Sess., 232

10

(1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191. In fact, the size and complexity of a chapter 11 case is the basis upon which courts most commonly grant extensions. See, e.g., In re Express One Int'l, Inc., 194 B.R. at 100; In re Texaco, Inc., 76 B.R. at 326 ("The large size of a debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods.").

26. As described in the First Day Declaration, the Debtors' chapter 11 cases are both large and complex. The enormous post-petition efforts on the many Sale Transactions clearly demonstrate that these cases also present unique challenges that have consumed, and will continue to consume, substantial attention and resources. Each of the Sale Transactions has required careful planning and coordination among various constituencies across multiple jurisdictions. Moreover, the transition services required by each of the Sale Transactions require continued operation of material elements of multiple businesses through the fourth quarter of 2011. Accordingly, the size and complexity of the Debtors' chapter 11 cases have warranted and continue to warrant extending the NN CALA Exclusive Periods.

**B.   NN CALA's Progress in its Chapter 11 Case**

27. NN CALA has made substantial progress in its chapter 11 case and continues to work diligently on matters related to its restructuring. In addition to the substantial effort that has been required to continue its operations, since the NN CALA Petition Date, NN CALA has coordinated with the other Debtors to address myriad significant issues relating to the Debtors' chapter 11 cases. NN CALA continues to work to build consensus and develop procedures for the resolution of key issues among numerous and diverse constituencies regarding its chapter 11 plan during the NN CALA Exclusive Periods as a result of its focus on the following issues and the numerous other matters relating to its chapter 11 case.

11

28. **Sale Transactions.** Since the Petition Date, NN CALA has joined the other Debtors as they have made substantial progress in the pursuit of asset sales in coordination with their counterparts in Canada, Europe, and other global affiliates. As described above, and as a result of these efforts, NN CALA has participated as a Seller in six of the seven separate Sale Transactions the Debtors have entered into and sought approval of this Court since the Petition Date.

- On February 20, 2009, the Debtors filed a motion seeking approval of the sale of the Debtors' Layer 4-7 assets and related sale procedures [D.I. 353]. On March 26, 2009, this Court entered an order approving the sale of the Layer 4-7 assets to Radware Ltd for $17.65 million in cash [D.I. 539]. The sale closed on March 31, 2009. NN CALA participated in this Sale Transaction as a Seller although it was not a chapter 11 debtor at the time of the transaction.

- On June 19, 2009, the Debtors filed a motion seeking to approve the sale of certain CDMA and LTE-related assets (which fall under Nortel's Carrier business) and related sale procedures [D.I. 931]. In accordance with the relevant bidding procedures, an auction took place on July 24, 2009. On July 28, 2009, this Court entered an order approving the sale of the CDMA and LTE business to Ericsson for $1.13 billion in cash [D.I. 1205]. The sale closed on November 13, 2009. NN CALA participated in this Sale Transaction as a Seller.

- On July 20, 2009, the Debtors filed a motion seeking to approve the sale of the Enterprise Solutions business and related sale procedures [D.I. 1131]. In accordance with the relevant bidding procedures, an auction took place beginning on September 11, 2009 and concluding on September 14, 2009. On September 16, 2009, this Court entered an order approving the sale of the Enterprise Solutions business to Avaya Inc. for $900 million, plus an additional $15 million for employee retention [D.I. 1514]. The sale closed on December 18, 2009. NN CALA participated in this Sale Transaction as a Seller.

- On September 30, 2009, the Debtors filed a motion seeking to approve the sale of the GSM/GSM-R business and related sale procedures [D.I. 1587]. In accordance with the relevant bidding procedures, an auction took place on November 24, 2009. On December 2, 2009, this Court entered an order approving the sale of certain assets of the GSM/GSM-R business to Ericsson and Kapsch Carriercom AG for $103 million in cash [D.I. 2065]. The sale closed on March 31, 2010. In addition, on May 24, 2010, this Court entered an order approving the sale of certain assets of the GSM/GSM-R business to

Ericsson for $2 million in cash [D.I. 3048]. The sale closed on June 4, 2010. NN CALA participated in this Sale Transaction as a Seller.

- On October 7, 2009, the Debtors filed a motion seeking to approve the sale of the Metro Ethernet Networks business and related sale procedures [D.I. 1627]. In accordance with the relevant bidding procedures, an auction took place beginning on November 20, 2009 and concluding on November 24, 2009. On December 3, 2009, this Court entered an order approving the sale of the Metro Ethernet Networks business to Ciena Corporation for $530 million in cash plus $239 million (aggregate principal amount) of a new class of Ciena's senior convertible notes [D.I. 2070]. The sale closed on March 19, 2010. NN CALA participated in this Sale Transaction as a Seller.

- On December 23, 2009, the Debtors filed a motion seeking approval of the sale of assets associated with their CVAS business to GENBAND Inc. for a price of approximately $282 million (subject to certain adjustments), subject to the receipt of higher and better offers [D.I. 2193]. On March 4, 2010, this Court entered an order approving the sale of CVAS business to GENBAND Inc. [D.I. 2632]. The sale closed on May 28, 2010. NN CALA participated in this Sale Transaction as a Seller.

Additionally, NN CALA anticipates joining the other Debtors in certain additional divestitures of less substantial assets, as well as working with various constituents on the development of a process for the maximization of value of Nortel's intellectual property portfolio.

29.     *Inter-company issues.*  The Debtors, including NN CALA, have worked throughout these proceedings to coordinate their restructuring with their affiliates, including the Canadian Debtors, the EMEA Debtors and other non-debtor affiliates around the globe. Significant headway has been made in respect of various substantive and procedural issues related to these efforts.

30.     The Debtors, including NN CALA, also have engaged in ongoing and rigorous discussions with the representatives of the Canadian and EMEA Debtors, the Monitor, the Joint Administrators, the Committee and the Bondholder Group regarding a number of inter-company issues, including transfer pricing, inter-company funding and tax issues. In the second quarter of 2009, these discussions led to the execution of the Interim Funding and Settlement Agreement

(the "IFSA") between the Debtors, the Canadian Debtors and the EMEA Debtors, which was approved by the Court on June 29, 2009 [D.I. 993] (although NN CALA was not a party to that agreement). A cross-border protocol, as amended, also was approved by the Court on June 29, 2009, to further facilitate the consideration and resolution of cross-border issues [D.I. 990].

31. Over the several months following the approval of IFSA, the Debtors, the Canadian Debtors, the Monitor, the Committee and the Bondholder Group have engaged in a series of discussions regarding additional funding of the Canadian Debtors, resolution of certain claims among the Debtors and the Canadian Debtors, and resolution of certain material tax issues involving the Debtors and the Canadian Debtors. These discussions led to the execution of the Final Canadian Funding and Settlement Agreement (the "CFA") by the debtors (other than NN CALA) and the resolution of certain claims of the Internal Revenue Service ("IRS") against the Debtors. On January 21, 2010, this Court entered an order approving the settlement with the IRS [D.I. 2322]. On January 26, 2010, this Court entered an order approving the CFA [D.I. 2347].

32. Other discussions regarding inter-company issues remain ongoing. For example, in accordance with the terms of the IFSA, the Debtors, including NN CALA, have been engaged in ongoing discussions with the Canadian Debtors, the EMEA Debtors, the Monitor, the Joint Administrators, the Committee, and the Bondholder Group regarding the development of a protocol to resolve the allocation of proceeds from the various asset sales. Efforts relating to this protocol have consumed substantial attention of the relevant parties during the first two quarters of 2010, and it is expected that these efforts will continue through the fourth quarter of 2010.

33. ***Schedules of Assets and Liabilities.*** On April 20, 2009 and May 29, 2009, the Debtors filed their Schedules of Assets and Liabilities (the "Nortel Schedules") and Statements of Financial Affairs (the "Nortel Statements") [D.I. 616-627, 801-810]. The Debtors filed

Schedules of Assets and Liabilities and Statements of Financial Affairs for NN CALA on September 11, 2009 (the "NN CALA Schedules" and "NN CALA Statements," respectively) [D.I. 1477, 1478]. The preparation of the NN CALA Schedules and the NN CALA Statements as well as the Nortel Schedules and the Nortel Statements required the accumulation and review of substantial amounts of information related to the estates' assets, liabilities, contracts, and operations. The Debtors have filed periodic monthly operating reports, and the reports required under Bankruptcy Rule 2015.3.

34.     ***Claims Resolution.*** To proceed with the development of a plan of reorganization, the Debtors need complete and accurate information describing the nature, validity, amount and status of all claims that have been, and may be, asserted against them in addition to those listed on the Debtors' Schedules. Accordingly, the Debtors requested, and the Court ordered, the establishment of the Bar Date. On August 10, 2009, the Debtors completed mail service of notice of the claims bar dates to all known creditors. On December 3, 2009, the Court entered an order establishing January 25, 2010 as the NN CALA Bar Date. On December 9, 2009, the Debtors completed mail service of notice of the claims bar dates with respect to NN CALA to all known creditors of NN CALA. To date, the Debtors collectively have received over 7,200 proofs of claim in connection with their chapter 11 cases, approximately 680 of which were filed against NN CALA. Since the Bar Date, the Debtors and their advisors have been taking all necessary and appropriate actions to administer the claims reconciliation process, and such efforts have continued with respect to all claims filed against NN CALA. The Debtors have filed a series of objections to claims including nine omnibus objections and expect to file additional objections throughout the NN CALA Exclusive Periods, if extended. The Debtors also are working with the Canadian Debtors, the Monitor, the Committee, and the Bondholder Group on

the development of a protocol for the resolution of claims that raise cross-border issues with the Canadian Debtors.

35. *Nortel Principal Officer.* On January 6, 2010, this Court entered an order authorizing the Debtors to employ and retain John Ray as the Debtors' Principal Officer *nunc pro tunc* to December 7, 2009 [D.I. 2249]. In his capacity as Principal Officer, Mr. Ray has provided, and continues to provide, important leadership to the Debtors in these proceedings, including with respect to the development of a chapter 11 plan.

36. *Other Efforts.* In addition to the above, the Debtors, including NN CALA, (1) are working with the Pension Benefit Guarantee Corporation to reach agreement regarding issues related to the Debtors' defined pension plans, (2) have filed settlements pursuant to Bankruptcy Rule 9019, and (3) have rejected several executory contracts determined to be non-essential for their continued business operations.

37. Accordingly, in light of the accomplishments of NN CALA thus far in its chapter 11 case, as well as the extraordinary complexity and breadth of Nortel's global business and the multi-jurisdictional nature of the Debtors' bankruptcy proceedings, further extension of the NN CALA Exclusive Periods is warranted. The various matters described above, as well as various others that will require the Debtors' attention over the next several months, will need to be resolved in connection with the preparation and solicitation of a chapter 11 plan by NN CALA.

C. **The Requested Extension Of The NN CALA Exclusive Periods Is Consistent With The Purpose Of Section 1121 Of The Bankruptcy Code And Will Not Harm Creditors**

38. The extension of the NN CALA Exclusive Periods as requested will afford NN CALA and all other parties in interest an opportunity to develop fully the grounds upon which serious negotiations toward a plan of reorganization can be based. NN CALA intends to use the extended NN CALA Exclusive Periods to continue to operate its residual businesses and pursue

the monetization of its remaining assets, further review executory contracts for assumption or rejection, review claims that are filed against NN CALA's estate, as well as engage in further coordinated efforts with the other Debtors, the Committee, the Bondholder Group, the Monitor, the Joint Administrators and the other Nortel entities in furtherance of the Debtors' restructuring and, ultimately, the development and solicitation of a chapter 11 plan.

39. NN CALA's requested extension of the NN CALA Exclusive Periods does not exceed the eighteen (18) month limitation for the exclusive period to file a plan or the twenty (20) month limitation for the exclusive period to solicit acceptances of a plan. As a result, the Court is not precluded from granting the relief requested by section 1121(d)(2) of the Bankruptcy Code.

40. Affording NN CALA a full opportunity to develop a chapter 11 plan by extending the NN CALA Exclusive Periods will not prejudice creditors. Terminating the NN CALA Exclusive Periods before this process is complete and the process of negotiation has been developed fully, would defeat the very purpose of section 1121 (*i.e.*, to afford the debtor a meaningful and reasonable opportunity to negotiate with its creditors and propose and confirm a consensual plan of reorganization). Furthermore, the requested extension will not preclude parties in interest from seeking a reduction or termination of the NN CALA Exclusive Periods for cause.[8]

41. Based upon the foregoing, the Debtors submit that cause exists to extend the NN CALA Exclusive Filing Period through and including January 13, 2011, and the NN CALA Exclusive Solicitation Period through and including March 13, 2011.

---

[8] Nothing herein shall prejudice the Debtors' (including NN CALA's) right to oppose such relief if sought.

## No Prior Request

42. No prior request for the relief sought herein has been made to this or any other court.

## Notice

43. Notice of the Motion has been given via first class mail to (i) the U.S. Trustee; (ii) the counsel to the Committee; (iii) the counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein, (ii) enter the proposed order attached hereto as **Exhibit A**, extending (a) the NN CALA Exclusive Filing Period through and including January 13, 2011 and (b) the NN CALA Exclusive Solicitation Period through and including March 13, 2011, and (iii) grant such other and further relief as it deems just and proper.

Dated: June 18, 2010
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Derek C. Abbott

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*