**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re*: | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

**NOTICE OF FILING OF FORTY-EIGHTH REPORT OF THE
MONITOR OF THE CANADIAN NORTEL COMPANIES
IN THE CANADIAN PROCEEDINGS**

---

[1] The Debtors in the Chapter 11 Cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); CoreTek, Inc. (5722); Nortel Networks Applications Management Solutions Inc. (2846); Nortel Networks Optical Components Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).

**PLEASE TAKE NOTICE** that on June 24, 2010, Ernst & Young Inc., the Monitor and foreign representative of Nortel Networks Corporation and certain of its direct and indirect subsidiaries, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation, in proceedings under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, pending before the Ontario Superior Court of Justice (Commercial List), by its undersigned counsel, filed, in the above-captioned cases, a copy of the Forty-Eighth Report of the Monitor (the "**Forty-Eighth Report**"), dated June 8, 2010.  A copy of the Forty-Eighth Report is annexed hereto as <u>Exhibit A</u>.

**PLEASE TAKE FURTHER NOTICE** that a copy of the Forty-Eighth Report is also available on the Monitor's website, www.ey.com/ca/nortel or upon request to the Monitor's counsel.

Dated: June 24, 2010
       Wilmington, Delaware

**ALLEN & OVERY LLP**

Ken Coleman
Lisa Kraidin
1221 Avenue of the Americas
New York, New York  10020
Telephone (212) 610-6300
Facsimile (212) 610-6399
Email:  ken.coleman@allenovery.com
       lisa.kraidin@allenovery.com

-and-

**BUCHANAN INGERSOLL & ROONEY**

By: <u>/s/ Mona A. Parikh</u>
Mary F. Caloway (No. 3059)
Mona A. Parikh (No. 4901)
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, Delaware 19801
Telephone (302) 552-4200
Facsimile (302) 552-4295
Email:  mary.caloway@bipc.com
      mona.parikh@bipc.com

*Attorneys for Ernst & Young Inc., as Monitor and Foreign Representative of the Canadian Nortel Group*

2

**EXHIBIT A**

Court File No. 09-CL-7950

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

**IN THE MATTER OF THE *COMPANIES' CREDITORS
ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED**

**AND IN THE MATTER OF A PLAN OF
COMPROMISE OR ARRANGEMENT OF
NORTEL NETWORKS CORPORATION, NORTEL NETWORKS LIMITED,
NORTEL NETWORKS GLOBAL CORPORATION, NORTEL NETWORKS
INTERNATIONAL CORPORATION AND NORTEL NETWORKS
TECHNOLOGY CORPORATION**

**FORTY-EIGHTH REPORT OF THE MONITOR
DATED JUNE 8, 2010**

## INTRODUCTION

1.  On January 14, 2009 (the "Filing Date"), Nortel Networks Corporation ("NNC" and
    collectively with all its subsidiaries "Nortel" or the "Company"), Nortel Networks Limited
    ("NNL"), Nortel Networks Technology Corporation ("NNTC"), Nortel Networks
    International Corporation and Nortel Networks Global Corporation (collectively the
    "Applicants") filed for and obtained protection under the *Companies' Creditors
    Arrangement Act* ("CCAA"). Pursuant to the Order of this Honourable Court dated January
    14, 2009, as amended and restated (the "Initial Order"), Ernst & Young Inc. was appointed
    as the Monitor of the Applicants (the "Monitor") in the CCAA proceedings. The stay of
    proceedings was extended to July 22, 2010 by this Honourable Court by its Order dated
    April 14, 2010.

2.  Nortel Networks Inc. ("NNI") and certain of its U.S. subsidiaries concurrently filed
    voluntary petitions under Chapter 11 of the U.S. Bankruptcy Code (the "Code") in the
    United States Bankruptcy Court for the District of Delaware (the U.S. Court") on January
    14, 2009 (the "Chapter 11 Proceedings"). As required by U.S. law, an official committee
    of unsecured creditors (the "Committee") was established in January, 2009.

3.    An ad hoc group of holders of bonds issued by NNL, NNC and Nortel Networks Capital Corporation has been organized and is participating in these proceedings as well as the Chapter 11 Proceedings (the "Bondholder Group").  In addition, pursuant to Orders of this Honourable Court dated May 27, 2009 and July 22, 2009, respectively, representative counsel was appointed on behalf of the former employees of the Applicants and on behalf of the continuing employees of the Applicants, and each of these groups is participating in the CCAA proceedings.

4.    Nortel Networks (CALA) Inc. ("NN CALA") and together with NNI and certain of its subsidiaries that filed on January 14, 2009, the "U.S. Debtors") filed a voluntary petition under Chapter 11 of Title 11 of the Code in the U.S. Court on July 14, 2009.

5.    Nortel Networks UK Limited ("NNUK") and certain of its subsidiaries located in EMEA were granted administration orders (the "UK Administration Orders") by the High Court of England and Wales on January 14, 2009 (collectively the "EMEA Debtors").  The UK Administration Orders appointed Alan Bloom, Stephen Harris, Alan Hudson and Chris Hill of Ernst & Young LLP as administrators of the various EMEA Debtors, except for Ireland, to which David Hughes (Ernst & Young LLP Ireland) and Alan Bloom were appointed (collectively the "Joint Administrators").

6.    Subsequent to the filing date, Nortel Networks SA commenced secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court.

7.    Furthermore, both the CCAA and NNUK proceedings have been recognized by the U.S. Court as foreign main proceedings under Chapter 15 of the Code and certain other Nortel subsidiaries have filed for creditor protection in the local jurisdiction in which they are located.

**PURPOSE**

8.  The purpose of this forty-eighth report of the Monitor ("Forty-Eighth Report") is to provide information to this Honourable Court with respect to the following:

> (a)  the Applicants' request for an Order approving a claims resolution process ("Claims Resolution Order") whereby the Monitor, in conjunction with the Applicants, will determine Claims, as defined in the Claims Resolution Order, filed with the Monitor pursuant to the provisions of the Amended and Restated Claims Procedure Order dated July 30, 2009 ("Claims Procedure Order") for voting and distribution purposes in relation to a plan of compromise or arrangement to be presented by the Applicants at a future date (the "Plan");

> (b)  the appointment of Donald Brenner QC, Bill Horton and Andrew Diamond as claims officers ("Claims Officers" and individually a "Claims Officer") to assist in the determination of any disputed claims the Monitor may refer to any one of them.

**TERMS OF REFERENCE**

9.  In preparing this Forty-Eighth Report, the Monitor has relied upon unaudited financial information, the Company's books and records, financial information prepared by the Company and discussions with management of Nortel.  The Monitor has not audited, reviewed or otherwise attempted to verify the accuracy or completeness of the information and accordingly, the Monitor expresses no opinion or other form of assurance on the information contained in this Forty-Eighth Report.

10.  Unless otherwise stated, all monetary amounts contained herein are expressed in Canadian dollars.

11.  Capitalized terms not defined in this Forty-Eighth Report are as defined in the Affidavit of John Doolittle dated January 14, 2009, Pre-Filing Report, previous Reports of the Monitor and the Claims Procedure Order.

- 4 -

12. The Monitor has made various materials relating to the CCAA proceedings available on its website at www.ey.com/ca/nortel. The Monitor's website also contains a dynamic link to Epiq Bankruptcy LLC's website where materials relating to the voluntary proceedings under Chapter 11 of the Code are posted.

**CLAIMS RESOLUTION ORDER**

13. On July 31, 2009, this Honourable Court granted the Claims Procedure Order:

   a)  calling for certain claims against the Applicants;

   b)  establishing a process for notifying all creditors of the Applicants of the call for claims;

   c)  establishing September 30, 2009 as the time by which pre-filing Claims, as defined therein, ("Pre-Filing Claims") had to be filed with the Monitor ("Pre-Filing Claims Bar Date") and establishing the day that is 30 days after the date on which the Monitor sends a Proof of Claim Document Package to a Person with respect to a restructuring claim, as defined therein, ("Restructuring Claims") as the time by which Restructuring Claims had to be filed with the Monitor ("Restructuring Claims Bar Date"); and

   d)  certain other directions related to such Claims.

We have provided below a summary of the proofs of claim received to date pursuant to the provisions of the Claims Procedure Order including the number and amount of such claims by category and by each individual Applicant.

| Claim Category | Nortel Networks Corporation | | Nortel Networks Global Corporation | | Nortel Networks International Corporation | | Nortel Networks Limited | | Nortel Networks Technology Corporation | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| (In CAD $ millions) | # | Value | # | Value | # | Value | # | Value | # | Value | # | Value |
| Contract Rejections - Non-Real Estate | 4 | 132 | | | | | 5 | 140 | 1 | | 10 | 272 |
| Employee (note 1) | 21 | 2 | 1 | | 1 | | 81 | 14 | 2 | | 106 | 16 |
| Equity | 87 | 3 | | | | | 40 | 7 | | | 127 | 11 |
| Late Claims (note 2) | 11 | 1 | | | | | 12 | 3 | 2 | | 25 | 4 |
| Litigation | 9 | 462 | | | | | 4 | 581 | | | 13 | 1,043 |
| NNI / Inter-company Claim | | | | | | | 1 | 2,063 | | | 1 | 2,063 |
| Pension & Benefits | 7 | 1,451 | 6 | 1,447 | 6 | 1,447 | 7 | 1,448 | 6 | 1,447 | 32 | 7,241 |
| Real Estate | 1 | | | | | | 14 | 281 | | | 15 | 281 |
| Tax & Governmental | 4 | | 2 | | 2 | | 7 | 2 | 3 | | 18 | 2 |
| Trade Payables | 69 | 1,537 | 7 | 1,484 | 5 | 1,483 | 243 | 1,874 | 92 | 1,532 | 416 | 7,910 |
| Treasury | 7 | 4,809 | | | | | 14 | 5,538 | | | 21 | 10,347 |
| Other (note 3) | 38 | 260 | 34 | 214 | 34 | 214 | 37 | 260 | 35 | 214 | 178 | 1,161 |
| Current | 258 | 8,658 | 50 | 3,145 | 48 | 3,144 | 465 | 12,211 | 141 | 3,193 | 962 | 30,352 |

**Notes:**
Note 1:  Represents claims filed by employees though such claims were Excluded Claims pursuant to the Claims Procedure Order.
Note 2:  Represents claims received after the Pre-filing Claims Bar Date.  No determination has been made as to whether
    such claims will be considered in the Claims process.
Note 3:  Primarily relates to insurance company policy coverage claims and claims filed by EMEA entities and the UK Joint
    Administrators.

The U.S. Debtors also implemented a "call for claims" procedure requiring creditors to file any claims against the U.S. Debtors by September 30, 2009.

14.  The Claims Procedure Order set bar dates and called for proofs of claim for only certain types of claims.  The following claims were excluded ("Excluded Claims") from having to be proven at that time:

a)  Inter-company Claims;

b)  Compensation Claims of current or former employees and directors of the Applicants;

c)  claims secured by any of the Charges in the Initial Order;

d)  claims for grievances under any collective agreements to which any of the Applicants are a party; and

e)  claims of any Director and Officer of the Applicants for indemnification and/or contribution arising from such Director's or Officer's service to any Applicant.

15. The Applicants and Monitor are continuing to work with representative counsel for the former and current employees to develop a claims process for any Compensation Claims.

16. The Claims Resolution Order is intended to apply to all Claims as defined in and governed by the Claims Procedure Order, however, the Applicants propose that certain claims filed in both the Canadian Proceedings and the US Proceedings by the same party or by the same affiliated parties, which claims arise from the same underlying claim, property, debt or transaction ("Overlapping Claim") be excluded from the application of the provisions of this Claims Resolution Order until further Order of this Honourable Court.

17. The Applicants intend on returning to this Honourable Court in the future seeking a further Order providing for determination of the Excluded Claims and Overlapping Claims.

18. As a result of the large volume of claims expected to be filed, the complexities surrounding the multi-jurisdictional nature of Nortel's business relationships and the extensive amount of management and advisor time that has been focused on the completion of a series of sales of Nortel business units as well as ongoing operations. The Claims Procedure Order did not address a process for the determination of the Claims filed including any determination as to the nature, amount, value, priority or validity of any such Claim. Furthermore, attempts were being made to reach agreement with the U.S. Debtors, the Bondholder Group and the Committee as to a cross-border protocol to deal with Overlapping Claims. To date, issues related to these efforts have not yet been resolved.

19. Now that the Pre-Filing Claims Bar Date has passed and Nortel has successfully divested of five of their major business units, the Applicants are requesting approval of the Claims Resolution Order such that the Monitor, in conjunction with the Applicants, may determine those Claims that are filed for voting and distribution purposes in relation to a Plan.

20. In CCAA proceedings, the Monitor, as a result of its unique position as an impartial court appointed officer with no vested interest in the outcome of the proceedings, plays the central role in respect of determination of claims. The Monitor's duty, as an officer of the court, includes upholding the integrity of the claims review and adjudication process thus ensuring the interest of all creditors and other stakeholders are fairly considered.

21. Any Claim, as determined in accordance with the Claim Procedure Order and Claims Resolution Order shall be final for all purposes including any Plan filed with this Honourable Court and any distributions made to Creditors of the Applicants pursuant to such Plan.

22. The Monitor, in conjunction with the Applicants, will review each Proof of Claim filed and at any time may:

   a)  request additional information from a Creditor;

   b)  request the Creditor to file a revised Proof of Claim;

   c)  attempt to consensually resolve the amount of the Proof of Claim with the creditor;

   d)  accept (in whole or in part) the amount and/or status of the Claim; and

   e)  by notice in writing, pursuant to the provisions of the Claims Resolution Order, revise or disallow (in whole or in part) the amount and/or status of any Claim by delivering to the Creditor a notice of disallowance (the "Notice of Disallowance").  For administrative purposes, the Creditor will also be provided at the same time with a copy of a notice of dispute form ( "Dispute Notice").

23. Any Creditor who intends to dispute the amount of its Claim as set out in the Notice of Disallowance must file a Dispute Notice with the Monitor no later than the date that is 14 calendar days after the deemed receipt (pursuant to the provisions of the Claims Resolution Order) of the Notice of Disallowance from the Monitor.

24. The Monitor believes the period of time to file a Dispute Notice is reasonable as most creditors will have performed an evaluation of their Claim prior to submitting a Proof of Claim and thereof should be in a position to respond within the time period established.

25. The Monitor believes the appointment of Claims Officers will greatly assist with the administration of the provisions of the Claims Resolution Order and provide an efficient and timely means of determining those claims that are disputed and which the Monitor, in conjunction with the Applicants, are unable to resolve.

26.    Upon receipt of a Dispute Notice, the Monitor, in conjunction with the Applicants, may attempt to consensually resolve the amount of the Claim with the Creditor and if the Claim is not settled within a time period or in a manner satisfactory to the Monitor, the Monitor may refer the dispute to a Claims Officer for determination or in the alternative, in its sole discretion, bring the dispute before this Honourable Court for determination.

27.    If the Monitor refers the dispute to a Claims Officer for determination, the Claims Officer will determine the manner, if any, in which evidence may be brought before the Claims Officer by the parties as well as any other procedural or substantive manners.

28.    The Claims Officer shall notify the Creditor, Monitor and Applicants as soon as practicable and in any event no later than 30 calendar days from the closing of submissions or such other date as the Claims Officer and the Monitor may agree, as to the Claims Officer's determination of the amount and status of the Creditor's Claim.

29.    The Applicants propose the Creditor, the Monitor and the Applicants each have the ability to appeal a determination of the Claims Officer by way of motion to this Honourable Court filed within ten calendar days of delivery of such determination.  Any such appeal shall be binding for all purposes and there shall be no further right of appeal, review or recourse from this Honourable Court's determination of a Claim.

**APPOINTMENT OF CLAIMS OFFICERS**

30.    Donald Brenner QC, Bill Horton and Andrew Diamond have been proposed by the Applicants to act as Claims Officers.  The Monitor has reviewed the Curriculum Vitae ("CV") of each of the proposed Claims Officers, spoken with its legal counsel as well as legal counsel for the Applicants regarding the reputation and relevant experience of the proposed parties and is of the belief that each Claims Officer is sufficiently knowledgeable and experienced in insolvency and claims resolution matters to competently act in such capacity.  A copy of the CV for each of the proposed Claims Officers is attached as Appendix A, B and C.

**MONITOR'S RECOMMENDATION**

31.  As a result of the volume and complexity of the Proofs of Claim filed, the resources required to reconcile such claims and the likelihood that many of the Claims will require significant effort and time to resolve, undertaking the resolution of Claims at this time is both prudent from the perspective of ensuring adequate Company resources are available to complete the task and furthermore will assist the Applicants in progressing towards the development of a Plan.

32.  The Monitor is of the view that as a result of its impartial and independent status and its duty to ensure the interest of all creditors and stakeholders are fairly considered, it is the appropriate party to administer the claims process.  The Monitor furthermore believes the appointment of the proposed Claims Officers will greatly assist in ensuring the claims resolution process proceeds in an efficient and timely manner.

33.  The Applicants have now completed the sale of five of their largest business units, are executing under transitional service agreements with purchasers of those business units and are undertaking the evaluation of various global subsidiary operations with a view to efficiently exit these operations on a basis that will maximize value to the various stakeholder groups.  These processes will continue to run parallel to the determination of the amount of creditors' Claims pursuant to the claims resolution process proposed herein.

34.  For the foregoing reasons, the Monitor believes it is necessary to commence a claims resolution process and proceed with the appointment of the proposed Claims Officers at this time.  The Monitor therefore recommends this Honourable Court approve the claims resolution process and appointment of Claims Officers proposed by the Applicants.

- 10 -

All of which is respectfully submitted this 8th day of June, 2010.


**ERNST & YOUNG INC.**
In its capacity as Monitor of the Applicants


Per:


Murray A. McDonald
President

- 11 -

APPENDIX "A"

(ATTACHED)

**THE HONOURABLE DONALD I. BRENNER QC**
President, Brenner ADR,
Senior Counsel, Farris, Vaughan, Wills & Murphy
2500-700 W Georgia Street
Vancouver, B.C.
Canada V7Y 1B3

Tel: 1 604 661 9390
Cell: 1 604 209 3009
Fax: 1 604 661 9349
E-Mail: dbrenner@brenneradr.com; dbrenner@farris.com
DOB: May 14, 1945

**SUMMARY:**
2009-present: President, Brenner ADR; Senior Counsel,
Farris, Vaughan, Wills & Murphy, Vancouver, BC
2000-2009: Chief Justice, Supreme Court of British
Columbia; director, Vancouver Foundation (vice chairman and
chair of the governance committee since 2005).

1992-2000: judge of the Supreme Court of British Columbia

1971-1992: Senior partner, Vancouver law firm of Brenner &
Company. Specialist law firm in insurance defence in areas
of aviation, products liability and professional indemnity.

1966-1975: Pilot (Captain ret'd) CP Air, DC-6B and Boeing
737 aircraft.


**EDUCATION:**
University of British Columbia, B.A. 1967; LLB. 1970.


**LAW:**
Private practice in Vancouver 1971-1992. Member of the bars
of B.C., Alberta, Yukon and NWT.
Founder and Senior partner of **Brenner & Company**; insurance
practice specialized in the fields of aviation, products
liability and professional indemnity law.
General insurance defense counsel for Canadian Airlines
International, Canadian Helicopters Ltd. and others; local
defence counsel for Cessna Aircraft, Boeing and major
international airlines.

**QUEEN'S COUNSEL:** appointed 1987

**LAW SOCIETY AND BAR:**
1986-1992: Ad Hoc Bencher, Law Society of British Columbia:
member, Planning, Credentials and Insurance Committees;
Past chair: Air Law Section, Canadian Bar Association
Course Coordinator: CLE Seminars on products liability
2009 – present: Member, Law Society of British Columbia;
Canadian Bar Association

**JUDICIAL:**
June 1992: appointed to the Supreme Court of British
Columbia.

On May 12, 2000 at age 54 appointed by the Prime Minister
of Canada as Chief Justice of the Supreme Court of British
Columbia;
2000-2009: Member, Canadian Judicial Council (CJC), a
council comprised of the Canadian Chief Justices;
membership on numerous CJC committees and subcommittees
including Executive Committee, Judges Technology Advisory
Committee, Administration of Justice Committee.

Founding member 2002: British Columbia Justice Review Task
Force
Co-chair: BC Civil Justice Review Working Group.

**AVIATION:**
TOTAL TIME: 6000 hours
LICENCE: Airline Transport Rating – Total time 5000 hours
1963-1966: Helicopter pilot, worked summer contract in
Western Canada and Central America. Total time rotary wing:
1000 hours
1966-1975: Airline pilot – CP Air; last position held:
Captain, Boeing 737.
Past Director, Air Transport Association of Canada, B.C.
Aviation Council

**PROFESSIONAL AND COMMUNITY:**
1998-present: Canadian representative, FIS (International
Ski Federation) Court of Arbitration, Lausanne, Switzerland
1998-present: Appeals Officer, British Columbia, Alpine
Canada (hear any appeals arising out of athletes'
agreements)
1998-2009: Member, Judicial Liaison Council, The Insolvency
Institute of Canada

- 3 -

2009: Honorary Life Member, The Insolvency Institute of
Canada
1998-2009: Member, Judicial Group, INSOL (International
Federation of Insolvency Professionals)
2002-present: Member, International Insolvency Institute

2000-2010: Director, Vancouver Foundation;
2005-2010: Director, Vice-Chair, Chair, Governance
Committee, member Executive Committee, Vancouver
Foundation.
The Vancouver Foundation is Canada's largest community
foundation with assets under administration of
approximately $800 million. It distributes approximately
$30 million annually in communities throughout British
Columbia.
2007-2009: Chair, Rhodes Scholarship selection committee
for British Columbia


Vancouver, British Columbia
April, 2010

- 12 -

APPENDIX "B"

(ATTACHED)

# William G. Horton
### Barrister   Arbitrator   Mediator

**Professional Qualifications**

Called to the Bar: Ontario, Canada 1976

Other calls to the Bar (not current): Alberta, New Brunswick

Bachelor of Laws (First Class Honours): Osgoode Hall Law School 1974

Bachelor of Arts: Victoria College, University of Toronto 1971

FCIArb: Chartered Institute of Arbitrators 1997

University of Windsor: ADR Workshop 2001

Harvard Law School/PIL: Mediation Workshop, 2004

Chartered Institute of Arbitrators: Fellowship course, Berlin 1996

Chartered Arbitrator:  ADR Institute of Canada, 2009

ICC Institute Masterclass for Arbitrators, Paris, June, 2009

**Law Firms**

Laskin, Jack, Horton & Harris (partner 1978-1982)

McMillan Binch (articling student and associate 1974-1978 and partner 1982-2000)

Blake, Cassels & Graydon LLP (partner 2000-2006)

(Served terms as head of litigation at McMillan Binch and Blake, Cassels & Graydon LLP)

**Current Practice** Barrister, Arbitrator, Mediator

**General Practice Description** (See Case Experience page for details)

Bill Horton has appeared before all levels of courts up to and including the

Supreme Court of Canada and has served as both an arbitrator and counsel in commercial arbitrations.  Bill has successfully represented clients in significant cases involving business and corporate disputes, fraud, lender liability, international banking disputes, litigation arising from major insolvencies and reorganizations, fiduciary duty and good faith obligations, directors and officers liability, professional liability, insurance and reinsurance disputes, competition offences, defamation, shareholder disputes, class action and injunctive remedies.

**Professional Associations**

- International Bar Association (past chair of the International Litigation Committee of the Section on Business Law)
- ICC (Member Canadian Exec. Comm. and Arbitration Roster, Member ICC Commission)
- ICDR (Panel Member)
- ADR Institute of Canada (arbitration member, editorial board ADRIC Journal)
- Chartered Institute of Arbitrators (Fellow)
- ADR Chambers (Former member and former Co-Chair ADR Chambers Commercial and International Panels)
- Public Accountants Council (Part-time Council Member)
- Arbitration Roundtable of Toronto (Founding Member)
- The Advocates' Society (former director)
- The Law Society of Upper Canada (member, former counsel to Complaints Review Committee)
- International Law Association (former Director, Canadian Branch; Program Co-Chair 2006 Biennial Conference)
- Osgoode Hall Law School (former lecturer in civil procedure, assistant instructor in LLM program)
- NAFTA 2022 Committee (Canadian member)
- British Columbia International Commercial Arbitration Centre (member of the international panel)
- Vis Moot (memorial judge and adjudicator)
- Canadian Bar Association (member)
- Ontario Bar Association (member, former member editorial board "Briefly Speaking"))
- American Bar Association (member)

**Professional Recognitions**

Bill is recognized in the following recent surveys:

- 2010 Lexpert/American Lawyer Guide to the Leading 500 Lawyers in Canada (International Arbitration)
- Best Lawyers in Canada 2010:  International Arbitration, Alternative Dispute Resolution, Corporate and Commercial Litigation, Class Action Litigation and Director and Officer Liability.

- Legal Media Group's 2009 Guide to the World's Leading Experts in Commercial Arbitration
- 2009/2010 Canadian Legal Lexpert Directory: International Commercial Arbitration (Most Frequently Recommended), Also Repeatedly Recommended for Corporate Commercial Litigation , Directors and Officers Liability, Securities Litigation.
- 2009 Who's Who Legal: Commercial Litigation.
- 2009 Lexpert/American Lawyer Guide to the Leading 500 Lawyers in Canada (International Arbitration)
- Lexpert Guide to Leading US/Canada Cross Border Lawyers (2008) (International Arbitration)
- Peer selection for Best Lawyers in Canada 2009 in four specialties: Corporate & Commercial Litigation, International Arbitration, Alternative Dispute Resolution and Directors & Officer Liability
- 2008 Canadian Legal Lexpert Directory:  International Commercial Arbitration (Most Frequently Recommended), Corporate Commercial Litigation (Most Frequently Recommended), Directors and Officers Litigation (Repeatedly Recommended), Securities Litigation (Repeatedly Recommended).
- Legal Media Group's Guide to the World's Leading Experts in Commercial Arbitration 2008
- The International Who's Who of Business Lawyers Commercial Litigation 2008, published by Law Business Research
- The 2008 Lexpert/American Lawyer Guide to the Leading 500 Lawyers in Canada (Arbitration and Litigation – Corporate/Commercial)
- Peer selection for Best Lawyers in Canada 2008 in four specialties: Commercial Litigation, International Arbitration, Alternative Dispute Resolution and Director & Officer Liability
- The International Who's Who of Business Lawyers 2007, published by Law Business Research – Ten Most Highly Regarded Individuals (Global) in the field of commercial litigation:  **"As in previous years, William Horton is the country's most highly nominated litigator.  Academically strong and tremendous in the courtroom."**
- Lexpert 2007: Leading US/Canada Cross Border Litigation Lawyers in Canada
- The International Who's Who of Business Lawyers 2006, published by Law Business Research – Ten Most Highly Regarded Individuals (Global) in the field of commercial litigation, **"most highly nominated"** and **"a very well known litigator with a tremendously strong reputation."**
- The 2007 Lexpert/American Lawyer Guide to the Leading 500 Lawyers in Canada (Litigation – Corporate/Commercial)
- Chambers Global: The World's Leading Lawyers for Business 2006 – Rank 3 (Dispute Resolution: Ontario), **"won praise as an 'incredibly capable, superb lawyer' with an 'excellent court-room presence' to boot."**
- Chambers Global: The World's Leading Lawyers for Business 2007 – Rank 3 **"recommended as a go-to lawyer for arbitration"**
- Martindale-Hubbell – AV Peer Review Rating (Very High to Pre-eminent), **"shows that a lawyer has reached the height of professional excellence, has usually practiced law for many years, and is recognized for the highest levels of skill and integrity"**

Phone: 416-504-4666, Fax: 416-504-7257, E-mail: wgh@wghlaw.com
Website: http://www.wghlaw.com

- 13 -

APPENDIX "C"

(ATTACHED)

# Andrew Michael Diamond

**239 Warren Road**
**Toronto, Ontario**
**M4V 2S6**
**(416) 577-5707**
andrew.diamond@jus.gov.on.ca

## PROFESSIONAL QUALIFICATIONS

Member in good standing of the Law Society of Upper Canada
Called to the Bar of Ontario in 1991

## EMPLOYMENT

**2005 – Current     Public Sector Adjudicator and Mediator**

I hold the following three concurrent public sector appointments:

**Member Ontario Human Rights Tribunal:**

The role of a member of the Ontario Human Rights Tribunal is to mediate and adjudicate hearings between individuals who are alleging that their rights under the Ontario Human Rights Code have been violated, and the party that is alleged to have violated those rights. This is a part-time Order in Council appointment commenced in 2008.

**Deputy Registrar in Bankruptcy Ontario Superior Court of Justice:**

Appointed Deputy Registrar in Bankruptcy in 2006 by the Chief Justice of the Superior Court of Ontario to sit in the Bankruptcy Court in Toronto.  This position includes the adjudication of contested bankruptcy discharges, the hearing of motions related to the Bankruptcy and Insolvency Act and the hearing of appeals from the decisions of trustees in bankruptcy with respect to the validity of claims. Included in the responsibilities of this position: the conducting of hearings, the drafting and delivery of both oral and written decisions, reasons and orders from hearings and motions.

**Vice-Chair Ontario Licence Appeals Tribunal:**

The role of a Vice-Chair is to sit as an adjudicator in the hearing of appeals from the decisions of various governmental agencies and licensing authorities. The Tribunal also hears appeals from the Ontario New Home Warranty Program. Included in the responsibilities of this position: the conducting of hearings and pre-hearing conferences, the drafting of reasons, decisions and orders from hearings and motions. This is a part-time Order in Council appointment which commenced in 2005 and expires in 2013.

**Employment (continued)**

2003 – Current      **Mediator, Legal and Business Consultant**

After completing my M.B.A., I started an independent consulting practice providing both business and legal advice on a broad range of projects including: assisting a company in the alternate energy business to obtain financing, drafting their business plan and researching regulatory issues; conducting market and regulatory research for an American alcoholic beverage producer that was contemplating establishing Canadian operations; assisting in the resolution of partnership dispute; and involvement with a multi- disciplinary group that examined the viability of a joint venture for an international airport on a Caribbean island. Since my public appointments, my private practice has focused exclusively on mediation, and arbitration, including being appointed as the Claims Officer in both the restructurings of Eddie Bauer and InterTAN/Radio Shack.  In 2009 I joined the ADR Chamber to continue my private mediation and arbitration practice.

2000 – 2002      **Vice-President and General Counsel, Legal Outfitters Inc.**

As General Counsel, I dealt with all corporate law and regulatory matters for the business, including compliance with both the Bank Act and the Insurance Act. Other responsibilities included the management of outside law firms, including their selection, retainer and fee negotiation, as well as file management. I was also responsible internally for the negotiation and drafting of supplier and distributor agreements, licence agreements, leases and employment contracts and review of all marketing material.

1996- 2000      **Counsel, Osler Hoskin & Harcourt LLP**

At Osler Hoskin & Harcourt my practice focused primarily on insolvency and restructuring litigation, competition law and securities litigation.  I was involved in the largest and most complex insolvency files of the day including: SkyDome; Confederation Life which at the time was the largest insolvency ever in Canada; Anvil Range; and White Rose. My advocacy was focused primarily before the Commercial List of the Superior Court in Toronto.  This included trials related to bankruptcy issues, applications under the Ontario Business Corporations Act, and motions under the Companies' Creditors Arrangement Act.

1991-1996      **Counsel, Blake Cassels & Graydon**

As a member of the litigation department, I had a general corporate commercial litigation practice.  I specialized in employment and labour law, competition law, media law, and banking law (with an emphasis on negotiable instruments). I was also involved in personal injury and product liability litigation. My practice involved appearances before all levels of court in Ontario.  This court experience included trials, motions and appeals.  I also appeared before a number of boards and tribunals including the Ontario Labour Relations Board, the Ontario Municipal Board, and the Assessment Review Board.

**EDUCATION**

| | |
|---|---|
| 2009 | Harvard Law School Mediation Training Program. |
| 2002-2003 | Schulich School of Business, M.B.A. with Distinction, granted June, 2003. |
| 1990-1991 | Law Society of Upper Canada Bar Admission Course. |
| 1986-1989 | Osgoode Hall Law School, LL.B., granted June, 1989. |
| 1985 | The American University, Washington, D.C.  Seminar program in law and justice. |
| 1982-1985 | McGill University, Bachelor of Arts, granted 1985. |

**ACADEMIC AWARDS**

Schulich School of Business Dean's List, 2003

Canadian Imperial Bank of Commerce, MBA Award, 2003

Canadian Imperial Bank of Commerce, MBA Award, 2002

American University Scholarship, 1985

**PUBLICATIONS, PAPERS, PRESENTATIONS AND LECTURES**

**Articles:**

"Emphasizing the Criminal in Quasi-Criminal: Prosecutions under the Bankruptcy and Insolvency Act." (2010) Annual Review of  Insolvency Law 2009, Carswell.

"Does No Mean No? The Treatment of Exempt Assets on Discharge from Bankruptcy, Are the Amendments to the BIA Pro-debtor?" (2009) Annual Review of Insolvency Law 2008, Carswell.

"What to do with a Drunken Sailor and other Bankrupts with Addictions," (2008) 36 Canadian Bankruptcy Reporters (5th) 167.

"Corporate Arrangements 'Non Practicable' What is the Standard?" Corporate Litigation, (1999) Vol. III, No. 2.

"The CCAA – Two Initials, Two Steps," with Lyndon Barnes and Fred Myers, (1999) National Creditor/Debtor Review, Vol. 14 p. 49.

"Til Death Do Us Part – Employers' Responsibility to Provide Benefits to Terminated Employees," Employment and Labour Law Reporter, (1997) Vol. 5, No. 9.

"The Use of Summary Judgment Motions in Wrongful Dismissal Cases – The End of the Delay Game," (1996) Employment and Labour Law Reporter, Vol. 5, No. 8.

"Property Claims and the Terminated Employee," (1996) Employment and Labour Law Reporter, Vol. 5, No. 11.

"A Job is a Job and Notice is Notice," (1995) Employment and Labour Law Reporter, Vol. 5, No. 1.

**Industry Presentations**:

"Payday Loans/Bookies /Bankruptcy – Looking for Prevention and Early Intervention Opportunities Before the Crisis Hits", Responsible Gambling Council Discovery 2010 Conference, Toronto.

"Emphasizing the Criminal in Quasi-Criminal: Prosecutions under the Bankruptcy and Insolvency Act" Annual Review of Insolvency Law Conference, Kelowna B.C. 2010.

"Treatment of Bankrupts with Gambling Addictions" Center for Addiction and Mental Health (CAMH), Panel Member, Toronto, Windsor and Hamilton, 2009, Ottawa 2010.

"World Markets in Transition: Canada's Opportunities and Challenges Conference." Bankruptcy Panel Moderator, Toronto, 2009.

"Treatment of Exempt Assets and the Amendments to the *BIA*" at the Registrar's Conference, Office of the Superintendent of Bankruptcy Canada, Industry Canada, Ottawa, 2008.

"The Bankruptcy and Insolvency Act and Its Impact on Hearings Before the Landlord and Tenant Board," at the Annual Educational Meeting of the Ontario Landlord and Tenant Board, Toronto, 2008.

"The Discharge of Bankrupts Suffering from Addiction and Mental Illness – Section 173 Voluntary vs. Involuntary," at the Registrar's Conference, Office of the Superintendent of Bankruptcy Canada, Industry Canada, Montreal, 2006.

"Bankruptcy Court Practice in Ontario" to the Ontario Association of Insolvency and Restructuring Professionals, 2006.

**Academic Lectures:**

York University, Osgoode Hall Law School:
Guest Lecturer in Bankruptcy Law, 2009.

University of Toronto Law School and Rotman School of Business: Guest Lecturer on Bankruptcy Law, 2008.

York University, Schulich School of Business
Guest Lecturer in Insolvency law, restructuring and finance, 2006.

York University, Osgoode Hall Law School
Guest Lecturer Business Law Intensive Program, 2003.

York University, Osgoode Hall Law School
Instructor in Civil Procedure, 1996.

## COMMUNITY

Past member of the Board of Directors of the Society of Ontario Adjudicators and Regulators (SOAR).
- Chair of the SOAR Finance Committee and
- Member of the SOAR Medal Selection Committee.

Member of the Board of Directors of the University Club of Toronto
- Chair of the House Committee

Member of the Commercial List Users Group

Member of the Registrar's Court Committee

Member of the Advocates Society

Member of the Mustique Company Legal and Security Committee

Past Member of Human Rights Watch Toronto Committee

Past Member of the Upper Canada College Alumni Fundraising Committee

Past Member of the Board of Directors of Independence Afloat, a sailing school for people with disabilities

Past United Jewish Appeal volunteer.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

Court File No: 09-CL-7950

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**FORTY-EIGHTH REPORT OF THE MONITOR**
**DATED JUNE 8, 2010**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.

\5855319