**EXHIBIT I**

Case 09-10138-MFW    Doc 3231-10    Filed 06/25/10    Page 1 of 5



INTELLIGENT COMMUNICATIONS

June 18, 2010

Nortel Networks Corporation
5945 Airport Road
Suite 360
Mississauga, Ontario, Canada L4V 1R9
Attention: Anna Ventresca
   General Counsel-Corporate,
   Corporate Secretary and
   Chief Compliance Officer
Facsimile: +1-905-863-2057

Alan Bloom / Christopher Hill / Stephen Harris
Ernst & Young LLP
1 More London Place
London
SE1 2AF
United Kingdom
Facsimile: +44 (0)20 7951 1345

Nortel Networks Limited
5945 Airport Road
Suite 360
Mississauga, Ontario, Canada L4V 1R9
Attention: Anna Ventresca
   General Counsel-Corporate,
   Corporate Secretary and
   Chief Compliance Officer
Facsimile: +1-905-863-2057

Sharon Rolston / Simon Freemantle
Maidenhead Office Park
Westacott Way
Maidenhead
Berkshire SL6 3QH
United Kingdom
Facsimile: +44(0) 1628 432416

Nortel Networks Inc.
Legal Department
220 Athens Way, Suite 300
Nashville, Tennessee, USA 37228
Attention: Lynn C. Egan
   Assistant Secretary
Facsimile: +1-615-432-4067

Avi D. Pelossof
Zellermayer, Pelossof & Co.
The Rubenstein House
20 Lincoln Street
Tel Aviv
67131
Israel
Facsimile: +972 3 6255500

Ladies and Gentlemen:

Reference is made to (i) the Amended and Restated Asset and Share Sale Agreement, dated as of September 14, 2009, as amended (the "ASSA") by and among (x) Nortel Networks Corporation, a Canadian corporation ("NNC"), Nortel Networks Limited, a Canadian corporation ("NNL"), Nortel Networks Inc., a Delaware corporation ("NNI" and together with NNC and NNL, the "Main Sellers") and the Other Sellers (as defined therein, and, together with the Main Sellers, the "Sellers") and (y) Avaya Inc., a Delaware corporation (the "Purchaser"), (ii) the Amended and Restated Asset Sale Agreement, dated as of September 14, 2009 (as amended, the "EMEA ASA", and together with the ASSA, the "Agreements"), by and among (x) the EMEA Sellers (as defined

therein), the Joint Administrators (as defined therein), the Joint Israeli Administrators (as defined therein) and (y) the Purchaser; (iii) the Closing Statement delivered by the Main Sellers and the EMEA Sellers on February 16, 2010 (the "Closing Statement"), (iv) the Disagreement Notice delivered by Purchaser on April 19, 2010 (the "Disagreement Notice"), (v) the letter dated May 21, 2010 delivered by the Main Sellers in connection with the Disagreement Notice (the "May 21 Letter"), (vi) the letter dated June 11, 2010 delivered by the Purchaser in connection with the Disagreement Notice (the "June 11 Letter") and (vii) the letter dated June 14, 2010 delivered by the Main Sellers in connection with the Disagreement Notice (the "June 14 Letter"). Capitalized terms used and not otherwise defined herein shall have the meanings given to such terms in the Agreements.

Without prejudice to any outstanding dispute between the Purchaser and the Sellers and the EMEA Sellers in connection with the Disagreement Notice, the Purchaser believes it is helpful to communicate to the Sellers and the EMEA Sellers its understanding of the outstanding issues in connection with the Disagreement Notice.

**Adjustment #A1**

The Purchaser has indicated in the Disagreement Notice that it disagrees with the determination in the Closing Statement as it relates to the documentation and application of mitigation plans with respect to excess and obsolete inventory in determining Inventory Value. After repeated requests by the Purchaser for the required documentation, conference calls were held on June 3 and 4, 2010 in which the Main Sellers were not able to offer necessary substantiation. The Purchaser promptly retained outside experts (at its own expense) and initiated a comprehensive review of the mitigation plans in order to resolve the dispute in good faith and plans to deliver a detailed response on this item to the Sellers and EMEA Sellers as soon as possible and, in any event, prior to June 30, 2010. Based on the work done to date, we expect to revise downward the amount in dispute when we complete our review.

In the June 14 Letter, the Main Sellers objected to the timing of the Purchaser's expected response and have demanded the Purchaser's response no later than the close of business, New York time, on June 18, 2010 (without providing any rationale for the setting of the June 18 deadline). The Purchaser is proceeding in good faith and as expeditiously as possible given the absence of requested documentation.

**Adjustment #A2**

As set forth in the Disagreement Notice, the Purchaser has indicated that the demand forecast assumptions used in establishing inventory reserves in the Closing Statement are incorrect. The supporting information provided by the Main Sellers has not been sufficient to resolve the Purchaser's disagreement in connection with the issues set forth in Adjustment #A2. Unless the Main Sellers have changed their view since the May 21 Letter, the Purchaser agrees that the parties should proceed to resolution by an Accounting Arbitrator on this issue.

**Adjustment #B1**

The Purchaser has stated in the Disagreement Notice that the Companies Net Working Capital should be decreased for the current portion of restructuring liability. Specifically, lease payments,

property taxes and common area maintenance costs for facilities that were vacated due to NGS restructuring activities should have been included in the Companies Net Working Capital as current liabilities. If the Purchaser and the Main Sellers are unable to resolve the dispute in connection with Adjustment #B1 through good faith negotiations, the Purchaser is, and understands the Main Sellers to be, prepared to submit this item to the Accounting Arbitrator for resolution.

### Adjustment #C1

Pursuant to the Disagreement Notice, the Purchaser is disputing Nortel's inclusion of a $135,000 tax credit in its calculation of the Italian TFR liability. The Purchaser requested, but has not yet received, documentation confirming that such tax credit could be used, in full, by the Purchaser. The Purchaser believes that it has no obligation under the Agreements to assume this tax credit and that, without complete certainty that the Purchaser can use the full amount of the tax credit, the Purchaser intends to pursue the full $135,000 adjustment to the Purchase Price. If the Purchaser and the Main Sellers are unable to resolve the dispute in connection with Adjustment C#1 through good faith negotiations, the Purchaser is, and understands the Main Sellers to be, prepared to submit this item to the Accounting Arbitrator for resolution.

### Adjustments #B2, #B3, #C2 and #C3

The Purchaser hereby confirms its withdrawal of Adjustments #C2 (Canadian CBA Adjustment) and #C3 (Israeli Retirement Obligation Adjustment) set forth in the Disagreement Notice in exchange for the Main Sellers' agreement to Adjustments #B2 (Deferred Revenue Adjustment to the Companies Net Working Capital) and #B3 (Deferred Rent Adjustment to the Companies Net Working Capital) set forth in the Disagreement Notice.

### Joint Instructions to the Escrow Agent

As noted above, the Purchaser disagrees with the Main Sellers' position with respect to the arbitrability of the issues in connection with Adjustment #A1. As a result, no funds are to be released under the terms of the Escrow Agreement.

Finally, the Purchaser reiterates that it will not and need not take into account the purported revisions to the Closing Statement contained in the letter from the Main Sellers and the EMEA Sellers on April 16, 2010. Such letter was delivered more than 60 days after the Closing, and such revisions are therefore of no legal effect pursuant to Section 2.2.3 of the ASSA.

If you have any questions about this letter, we encourage the Sellers and/or EMEA Sellers contact Frank Mahr at the Purchaser (Phone: (908) 953-3918; Email: fmahr@avaya.com), Neill Jakobe at Ropes & Gray (Phone: (312) 845-1260; Email: neill.jakobe@ropesgray.com) or Howard Glazer at Ropes & Gray (Phone: (617) 951-7490; Email: howard.glazer@ropesgray.com).

cc: Nortel Networks Limited
   5945 Airport Road
   Suite 360
   Mississauga, Ontario, Canada  L4V 1R9
   Attention:  Robert Fishman
      Senior Counsel
   [Delivered as a PDF via email to rfishman@nortel.com per request on 12/1/2009]

   Nortel Networks Inc.
   Legal Department
   220 Athens Way, Suite 300
   Nashville, TN  37228
   USA
   Attention:  Robert Fishman
      Senior Counsel
   [Delivered as a PDF via email to rfishman@nortel.com per request on 12/1/2009]

   Cleary Gottlieb Steen & Hamilton LLP
   One Liberty Plaza
   New York, NY 10006
   USA
   Attention: Neil Q. Whoriskey
      David Leinwand
   Facsimile:  +1-212-225-3999

   Ogilvy Renault LLP
   200 Bay Street
   Suite 3800, P.O. Box 84
   Royal Bank Plaza, South Tower
   Toronto, Ontario M5J 2Z4
   Canada
   Attention: Michael Lang
   Facsimile:  +1-416-216-3930

   Ben Ward / Alan Montgomery
   Herbert Smith LLP
   Exchange House
   Primrose Street
   London
   EC2A 2HS
   Facsimile:  +44 (0)20 7098 4618

   Sandy Shandro
   3-4 South Square
   Gray's Inn
   London
   WC1R 5HP
   Facsimile:  +44 (0)20 7696 99