## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : | Jointly Administered |
| | : | |
| Debtors | : | **Objection Deadline: July 21, 2010 at 4:00 p.m.** |
| | : | **Hearing Date: Scheduled only if necessary** |

-----------------------------------------------------------X

### SIXTEENTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR THE REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM MAY 1, 2010 THROUGH MAY 31, 2010

This is a(n):  __X__ monthly _____ interim _____ final application.

Name of Applicant:   Akin Gump Strauss Hauer & Feld LLP

Authorized to Provide
Professional Services to:  Official Committee of Unsecured Creditors

Date of Retention:  March 5, 2009 (nunc pro tunc to January 22, 2009)

Period for which Compensation
and Reimbursement is sought:  May 1, 2010 through May 31, 2010

Amount of Compensation sought as
actual, reasonable, and necessary: $633,157.50

Amount of Expense Reimbursement sought
as actual, reasonable, and necessary: $29,100.46

The total time expended during this Compensation Period for the preparation of Akin Gump's Fifteenth Monthly Fee Application was 18.20 hours and the corresponding compensation is $8,808.00.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

**Prior Fee Applications:**

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/22/09 – 02/28/09<br><br>(First Monthly Fee Application) | $1,002,466.75 | $14,994.50 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the First Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the First Monthly Fee Application. |
| 03/01/09 – 03/31/09<br><br>(Second Monthly Fee Application) | $866,587.25 | $14,080.55 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Second Monthly Fee Application.  Akin Gump voluntarily agreed to reduce the expenses requested by $1,459.22.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Second Monthly Fee Application. |
| 04/01/09 – 04/30/09<br><br>(Third Monthly Fee Application) | $919,594.75 | $22,201.07 | On July 17, 2009, this Court entered an order (Docket No. 1103) awarding Akin Gump 100% of the fees and expenses requested in the Third Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Third Monthly Fee Application. |

| Time Period | Fees Requested | Expenses Requested | Status |
|---|---|---|---|
| 05/01/09 – 05/31/09<br><br>(Fourth Monthly Fee Application) | $766,765.75 | $54,512.10 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fourth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fourth Monthly Fee Application. |
| 06/01/09 – 06/30/09<br><br>(Fifth Monthly Fee Application) | $962,202.75 | $25,000.85 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Fifth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Fifth Monthly Fee Application. |
| 07/01/09 – 07/31/09<br><br>(Sixth Monthly Fee Application) | $1,042,206.00 | $24,587.92 | On September 30, 2009, this Court entered an order (Docket No. 1582) awarding Akin Gump 100% of the fees and expenses requested in the Sixth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Sixth Monthly Fee Application. |
| 08/01/09 – 08/31/09<br><br>(Seventh Monthly Fee Application) | $653,999.00 | $44,610.63 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Seventh Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Seventh Monthly Fee Application. |

| Time Period | Fee Requested | Expenses Requested | Status |
|---|---|---|---|
| 09/01/09 – 09/30/09<br><br>(Eighth Monthly Fee Application) | $1,103,982.50 | $24,753.35 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Eighth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Eighth Monthly Fee Application. |
| 10/01/09 – 10/31/09<br><br>(Ninth Monthly Fee Application) | $1,036,266.50 | $35,745.59 | On December 15, 2009, this Court entered an order (Docket No. 2143) awarding Akin Gump 100% of the fees and expenses requested in the Ninth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Ninth Monthly Fee Application. |
| 11/01/09 – 11/30/09<br><br>(Tenth Monthly Fee Application) | $1,008,811.00 | $40,388.57 | On March 17, 2010, this Court entered an order (Docket No. 2730) awarding Akin Gump 100% of the fees and expenses requested in the Tenth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Tenth Monthly Fee Application. |
| 12/01/09 – 12/31/09<br><br>(Eleventh Monthly Fee Application) | $1,003,203.75 | $40,839.88 | On March 17, 2010, this Court entered an order (Docket No. 2730) awarding Akin Gump 100% of the fees and expenses requested in the Eleventh Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Eleventh Monthly Fee Application. |

| Time Period | Fee Requested | Expenses Requested | Status |
|---|---|---|---|
| 01/01/10 – 01/31/10<br><br>(Twelfth Monthly Fee Application) | $638,879.75 | $34,184.80 | On March 17, 2010, this Court entered an order (Docket No. 2370) awarding Akin Gump 100% of the fees and expenses requested in the Twelfth Monthly Fee Application.  Akin Gump has received 100% of the fees and 100% of the expenses requested in the Twelfth Monthly Fee Application. |
| 02/01/10 – 02/28/10<br><br>(Thirteenth Monthly Fee Application) | $636,531.00 | $26,874.51 | On April 15, 2010, a certificate of no objection (Docket No. 2891) was filed with respect to the Thirteenth Monthly Fee Application.  Akin Gump has received payment of 80% of the fees and 100% of the expenses requested in the Thirteenth Monthly Fee Application. |
| 03/01/10 – 03/31/10<br><br>(Fourteenth Monthly Fee Application) | $958,619.25 | $20,735.21 | On May 20, 2010, a certificate of no objection (Docket No. 3028) was filed with respect to the Fourteenth Monthly Fee Application.  Akin Gump has received payment of 80% of the fees and 100% of the expenses requested in the Fourteenth Monthly Fee Application. |
| 04/01/10 – 04/0/10<br><br>(Fifteenth Monthly Fee Application) | $608,880.50 | $23,921.31 | On June 18, 2010, a certificate of no objection (Docket No. 3191) was filed with respect to the Fifteenth Monthly Fee Application.  Akin Gump has not received payment of the fees and expenses requested in the Fifteenth Monthly Fee Application. |

**SUMMARY OF ATTORNEYS AND LEGAL ASSISTANTS**
**RENDERING SERVICES DURING THE PERIOD**
**MAY 1, 2010 THROUGH MAY 31, 2010**

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Lisa G. Beckerman | Partner for 11 years; Admitted in 1989; Financial Restructuring Department | $950 | 36.60 | $34,770.00 |
| David H. Botter | Partner for 9 years; Admitted in 1990; Financial Restructuring Department | $875 | 38.90 | $34,037.50 |
| L. Rachel Helyar | Partner for 6 years; Admitted in 1995; Litigation Department | $605 | 42.50 | $25.712.50 |
| Fred S. Hodara | Partner for 21 years; Admitted in 1982; Financial Restructuring Department | $975 | 34.30 | $33,442.50 |
| Karol A. Kepchar | Partner for 9 years; Admitted in 1992; Intellectual Property Department | $645 | 33.00 | $21,285.00 |
| Stephen B. Kuhn | Partner for 10 years; Admitted in 1991; Corporate Department | $775 | 49.20 | $38,130.00 |
| Robert H. Pees | Partner for 14 years; Admitted in 1988; Litigation Department | $790 | 9.90 | $7,821.00 |
| David H. Quigley | Partner for 3 years; Admitted in 2000; Environmental Department | $590 | 4.50 | $2,655.00 |
| Randall N. Ratner | Partner for 24 years; Admitted in 1979; Real Estate Department | $650 | 7.00 | $4,550.00 |
| Sarah A. Schultz | Partner for 1 year; Admitted in 2001; Financial Restructuring Department | $640 | 57.85 | $37,024.00 |
| Bruce E. Simonetti | Partner for 6 years; Admitted in 1995; ERISA Department | $780 | 11.60 | $9,048.00 |
| Kenneth A. Davis | Senior Counsel for 3 years; Admitted in 1995; Financial Restructuring Department | $675 | 5.80 | $3,915.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Kevin M. Rowe | Senior Counsel for 10 years; Admitted in 1985; Tax Department | $675 | 30.40 | $20,520.00 |
| Tony D. Feuerstein | Counsel for 3 years; Admitted in 2003; Corporate Department | $600 | 23.00 | $13,800.00 |
| Ning Lu | Counsel for 3 years; Admitted in 2002; Corporate Department | $550 | 3.20 | $1,760.00 |
| Amit Kurlekar | Counsel for 2 years; Admitted in 2005; Litigation Department | $550 | 112.50 | $61,875.00 |
| David C. Vondle | Counsel for 2 years; Admitted in 2003; Intellectual Property Department | $550 | 74.50 | $40.975.00 |
| Graeme D. Bell | International Law Advisor for 2 years; Admitted in 2003 | $600 | 157.50 | $94,500.00 |
| Yewande Akinwolemiwa | Associate for 4 years; Admitted in 2006; Financial Restructuring Department | $430 | 21.00 | $9,030.00 |
| Ashley R. Beane | Associate for 2 years; Admitted in 2008; Financial Restructuring Department | $350 | 16.10 | $5,635.00 |
| Fredricka S. Dorroh | Associate for 4 years; Admitted in 2006; Environmental Department | $430 | 3.10 | $1,333.00 |
| Brad M. Kahn | Associate for 3 years; Admitted in 2008; Financial Restructuring Department | $450 | 178.10 | $80,145.00 |
| Nyron J. Persaud | Associate for 3 years; Admitted in 2008; Tax Department | $450 | 9.60 | $4,320.00 |
| Eric C. Seitz | Associate for 1 year; Admitted in 2009; Financial Restructuring Department | $325 | 22.60 | $7,345.00 |
| Machir Stull | Associate for 1 year; Admitted in 2009; Financial Restructuring Department | $325 | 30.60 | $9,945.00 |

| Name of Professional Person | Position of the Applicant, Number of Years in that Position at Current or Prior Firms, Year of Obtaining License to Practice, Area of Expertise | Hourly Billing Rate | Total Billed Hours | Total Compensation Requested |
|---|---|---|---|---|
| Joshua Y. Sturm | Associate for 4 years; Admitted in 2007; Financial Restructuring Department | $500 | 31.30 | $15,650.00 |
| Teresa W. Wang | Associate for 3 years; Admitted in 2007; Litigation Department | $390 | 5.20 | $2,028.00 |
| Jennifer L. Woodson | Associate for 1 year;  Admitted in 2010; Tax Department | $350 | 10.60 | $3,710.00 |
| Cleo F. Green | Staff Attorney for 4 years; Admitted in 1996; Financial Restructuring Department | $475 | 15.00 | $7,125.00 |
| Peter J. Sprofera | Legal Assistant for 34 years; Financial Restructuring Department | $255 | 4.20 | $1,071.00 |

Total Amount of Fees:      $633,157.50
Total Number of Hours:    1,079.65
Blended Hourly Rate:       $586.45

## COMPENSATION BY PROJECT CATEGORY
## MAY 1, 2010 THROUGH MAY 31, 2010

| Project Category | Total Hours | Total Fees |
|---|---|---|
| General Case Administration | 2.60 | $1,620.00 |
| Akin Gump Fee Applications/Monthly Billing Reports | 18.20 | $8,808.00 |
| Analysis of Other Professionals Fee Applications/Reports | 3.90 | $2,017.50 |
| Retention of Professionals | 3.30 | $1,905.00 |
| Creditors' Committee Meetings | 118.60 | $77,112.50 |
| Court Hearings | 5.50 | $3,620.50 |
| Financial Reports and Analysis | 2.30 | $1,035.00 |
| General Claims Analysis/Claims Objections | 8.30 | $4,248.00 |
| Canadian Proceedings/Matters | 2.20 | $2,145.00 |
| Lift Stay Litigation | 5.10 | $2,800.00 |
| Tax Issues | 38.90 | $22,132.00 |
| Labor Issues/Employee Benefits | 245.90 | $150,026.00 |
| Real Estate Issues/Leases | 42.60 | $26,872.50 |
| Asset/Stock Transactions/Business Liquidations | 226.90 | $135,164.00 |
| Travel (billed at 50% of actual time) | 5.05 | $3,232.00 |
| Non-Debtor Affiliates | 156.20 | $62,651.50 |
| Intercompany Analysis | 108.10 | $75,433.00 |
| Intellectual Property | 86.00 | $52,335.00 |
| **TOTAL** | **1,079.65** | **$633,157.50** |

## DISBURSEMENT SUMMARY
## MAY 1, 2010 THROUGH MAY 31, 2010

| | |
|---|---:|
| Computerized Research, Corporate Service Fees & PACER Charges | $5,431.25 |
| Conference Call /Telephone Charges | $12,687.44 |
| Courier Service/Postage | $256.60 |
| Duplicating (@ $0.10 per page) | $222.70 |
| Meals/Committee Meeting Expenses | $3,909.36 |
| PRC Business Tax | $88.00 |
| Travel Expenses – Airfare | $2,368.40 |
| Travel Expenses – Ground Transportation | $726,68 |
| Travel Expenses – Lodging | $2,037.38 |
| Travel Expenses – Parking | $68.00 |
| Travel Expenses – Telephone & Fax | $14.95 |
| Travel Expenses – Train Fare | $497.70 |
| | |
| **TOTAL** | **$28,308.46** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                      :

In re                       :     Chapter 11

                                :     Case No. 09-10138 (KG)

Nortel Networks Inc., et al., [1]     :     Jointly Administered

                                :

                Debtors     :   **Objection Deadline: July 21, 2010 at 4:00 p.m.**

                                :   **Hearing Date: Scheduled only if necessary**

-------------------------------------------------------X

## SIXTEENTH MONTHLY APPLICATION OF AKIN GUMP STRAUSS HAUER & FELD LLP, CO-COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM MAY 1, 2010 THROUGH MAY 31, 2010

Akin Gump Strauss Hauer & Feld LLP ("Akin Gump" or the "Applicant"), co-counsel to

the Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc.

("NNI"), et al. (collectively, the "Debtors"), hereby submits its sixteenth monthly application

(the "Application") pursuant to (i) sections 330 and 331 of title 11 of the United States Code (the

"Bankruptcy Code"), (ii) Rule 2016 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), (iii) Rule 2016-2 of the Local Rules of Bankruptcy Procedure for the

District of Delaware (the "Local Rules"), and (iv) the Administrative Order Pursuant to 11

U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing

Procedures for Interim Compensation and Reimbursement of Fees and Expenses for

Professionals and Official Committee Members entered on February 4, 2009 (the

"Administrative Fee Order"), for interim allowance of compensation for services rendered in the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

aggregate amount of $633,157.50 and for reimbursement of actual and necessary expenses incurred by Akin Gump in connection therewith in the amount of $29,100.46 for the period from May 1, 2010 through May 31, 2010 (the "Compensation Period"). In support of this Application, Akin Gump respectfully states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 330 of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.    BACKGROUND

2.    On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.    The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.    On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation ("NNC"), together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and, together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under Canada's Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

2

operate their businesses and manage their properties under the supervision of the Canadian Court and Ernst & Young Inc. as monitor (the "Monitor").

5.     On January 14, 2009, the High Court of Justice in England (the "UK Court") placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors"), including Nortel Networks U.K. Limited ("NNUK"), into administration (the "European Proceedings" and, together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.     On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee. The Committee currently consists of four members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Law Debenture Trust Company of New York, as indenture trustee; (iii) Pension Benefit Guaranty Corporation; and (iv) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases. An ad hoc group of holders of bonds issues by the Nortel Debtors has also been formed (the "Ad Hoc Bondholder Group").

7.     On March 5, 2009, this Court entered an order authorizing the retention of Akin Gump as co-counsel to the Committee, *nunc pro tunc* to January 22, 2009. On that same day, the Court authorized the Committee to retain and employ Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, Akin Gump filed its First Interim Fee Application Request for the Period January 22, 2009 through April 30, 2009 (the "First Interim Application"). In its First Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,788,648.75 and the reimbursement of expenses in the amount of $48,632.74.[2] On July 17, 2009, this Court entered an order approving 100% of the fees and expenses sought in the First Interim Application and Akin Gump has received payment of such amounts.

9.      On September 10, 2009, Akin Gump filed its Second Interim Fee Application Request for the Period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its Second Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,771,174.50 and the reimbursement of expenses in the amount of $104,100.87.[3] On September 30, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Second Interim Application and Akin Gump has received payment of such amounts.

10.      On November 24, 2009, Akin Gump filed its Third Interim Fee Application Request for the Period August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its Third Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,794,248.00 and the reimbursement of expenses in the amount of

---

[2] The First Interim Application sought the award of fees and expenses for the period from January 22, 2009 through April 30, 2009, as follows: (a) January 22, 2009 through February 28, 2009: $1,002,466.75 of fees and $14,994.50 of expenses; (b) March 1, 2009 through March 31, 2009: $866,587.25 of fees and $14,080.55 of expenses; and (c) April 1, 2009 through April 30, 2009: $919,594.75 of fees and $22,201.07 of expenses. Following discussions with the U.S. Trustee, Akin Gump agreed to a voluntary reduction of $1,184.16 for expenses incurred during the period covered by the First Interim Application.

[3] The Second Interim Application sought the award of fees and expenses for the period from May 1, 2009 through July 31, 2009, as follows: (a) May 1, 2009 through May 31, 2009: $766,765.75 of fees and $54,512.10 of expenses; (b) June 1, 2009 through June 30, 2009: $962,202.75 of fees and $25,000.85 of expenses; and (c) July 1, 2009 through July 31, 2009: $1,042,206.00 of fees and $24,587.92 of expenses.

$105,109.57.[4] On December 15, 2009, this Court entered an order approving 100% of the fees and expenses sought in the Third Interim Application and Akin Gump has received payment of such amounts.

11.     On February 24, 2010, Akin Gump filed its Fourth Interim Fee Application Request for the Period November 1, 2009 through January 31, 2010 (the "Fourth Interim Application").[5] In its Fourth Interim Application, Akin Gump sought the award and allowance of fees in the amount of $2,650,894.50 and the reimbursement of expenses in the amount of $115,413.25.[6] On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application and Akin Gump has received payment of such amounts.

12.     On March 23, 2010, Akin Gump filed its Thirteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period February 1, 2010 through February 28, 2010 (the "Thirteenth Monthly Application"). In its Thirteenth Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $636,531.00 and the reimbursement of expenses in the amount of $26,874.51. A certificate of no objection was filed with respect to the Thirteenth Monthly Application on April 15, 2010. Pursuant to the Administrative Fee Order, Akin Gump

---

[4] The Third Interim Application sought the award of fees and expenses for the period from August 1, 2009 through October 31, 2009, as follows: (a) August 1, 2009 through August 31, 2009: $653,999.00 of fees and $44,610.63 of expenses; (b) September 1, 2009 through September 30, 2009: $1,103,982.50 of fees and $24,753.35 of expenses; and (c) October 1, 2009 through October 31, 2009: $1,036,266.50 of fees and $35,745.59 of expenses.

[5] On March 1, 2010, Akin Gump filed an Amended Notice of Fourth Interim Fee Application Request solely to provide information regarding a change in its hourly billing rates effective January 1, 2010.

[6] The Fourth Interim Application sought the award of fees and expenses for the period from November 1, 2009 through January 31, 2010, as follows: (a) November 1, 2009 through November 30, 2009: $1,008,811.00 of fees and $40,388.57 of expenses; (b) December 1, 2009 through December 31, 2009: $1,003,203.75 of fees and $40,839.88 of expenses; and (c) January 1, 2010 through January 31, 2010: $638,879.75 of fees and $34,184.80 of expenses.

has received payment of 80% of the fees and 100% of the expenses requested in the Thirteenth Monthly Application.

13.     On April 28, 2010, Akin Gump filed its Fourteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period March 1, 2010 through March 31, 2010 (the "Fourteenth Monthly Application"). In its Fourteenth Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $958,619.25 and the reimbursement of expenses in the amount of $20,735.21. A certificate of no objection was filed with respect to the Fourteenth Monthly Application on May 20, 2010. Pursuant to the Administrative Fee Order, Akin Gump has received payment of 80% of the fees and 100% of the expenses requested in the Fourteenth Monthly Application.

14.     On May 26, 2010, Akin Gump filed its Fifteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period April 1, 2010 through April 30, 2010 (the "Fifteenth Monthly Application"). In its Fifteenth Monthly Application, Akin Gump sought the award and allowance of fees in the amount of $608,880.50 and the reimbursement of expenses in the amount of $23,821.31. A certificate of no objection was filed with respect to the Fifteenth Monthly Application on June 18, 2010. As of the date of this Application, Akin Gump has not received any payment on account of the Fifteenth Monthly Application.

15.     On May 28, 2010, Akin Gump filed its Fifth Interim Fee Application Request for the Period February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, Akin Gump sought the award and allowance of fees in the amount of

6

$2,204,030.75 and the reimbursement of expenses in the amount of $71,431.03.[7]  On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application.

## III.    RELIEF REQUESTED

16.    By this Application, Akin Gump seeks (i) interim allowance and award of compensation for the professional services rendered by Akin Gump as attorneys during the Compensation Period in the amount of $633,157.50, representing 1,075.45 hours of professional services and 4.20 hours of paraprofessional services; and (ii) reimbursement of actual and necessary expenses incurred by Akin Gump during the Compensation Period in connection with the rendition of such professional and paraprofessional services in the amount of $29,100.46.

17.    Pursuant to the Administrative Fee Order, Akin Gump is seeking payment of 80% of its fees ($506,526.00) and 100% of its expenses ($29,100.46) relating to services rendered during the Compensation Period.

18.    Akin Gump has received no payment and no promises for payment from any source for services rendered in connection with these chapter 11 cases other than in accordance with the Administrative Fee Order.  There is no agreement or understanding between the Applicant and any other person (other than members of Akin Gump) for the sharing of compensation to be received for the services rendered in these cases.

19.    As stated in the Affirmation of Fred S. Hodara, Esq. (the "Hodara Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

---

[7] The Fifth Interim Application sought the award of fees and expenses for the period from February 1, 2010 through April 30, 2010, as follows: (a) February 1, 2010 through February 28, 2010: $636,531.00 of fees and $26,874.51 of expenses; (b) March 1, 2010 through March 31, 2010: $958,619.25 of fees and $20,735.21 of expenses; and (c) April 1, 2010 through April 30, 2010: $608,880.50 of fees and $23,821.31 of expenses.

## IV.    SUMMARY OF SERVICES RENDERED

20.     Akin Gump has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of substantial time by Akin Gump personnel from several legal disciplines.

21.     In the ordinary course of its practice, Akin Gump maintains written records of the time expended by attorneys and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the attorney or paraprofessional, the date on which the services were performed, a description of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as Exhibit B.

22.     In the ordinary course of its practice, Akin Gump also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as Exhibit C. A detailed summary of the expenses is attached hereto as Exhibit D.

23.     Akin Gump respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly contributed to the effective administration of these chapter 11 cases.

24.     The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is

merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that Akin Gump was required to address.

## Case Administration

(Fees: $1,620.00; Hours: 2.60)

25.     This subject matter relates to services rendered to the Committee to satisfy the Committee's continuing organizational and administrative needs and enable the Committee to continue to function as a coordinated group and to acquit its fiduciary duties.

26.     During the Compensation Period, Akin Gump reviewed and analyzed all motions and applications filed by the Debtors and other parties in interest in these cases and any objections thereto. In connection with such analyses, Akin Gump conducted diligence on the subject matter of each motion and application to, among other things, ascertain the effect that the relief requested would have on the Debtors, the interests of the Debtors' unsecured creditors and the administration of these cases. These diligence efforts included reviewing underlying documentation related to the applicable pleading and working with the Debtors' advisors to ensure that the Committee had a complete understanding of the impact that the relief requested in any given pleading would have on these cases.

27.     During the Compensation Period, Akin Gump routinely held internal meetings with the professionals assigned to this matter to ensure that Akin Gump was representing the Committee in the most efficient manner at the least cost to these estates. In addition, Akin Gump coordinated all Committee activities, including attending to member issues and interacting with the Committee's chairperson in setting agendas for the Committee's in-person meetings and conference calls. Akin Gump also regularly consulted with Jefferies, Capstone, FMC and

9

Ashurst with respect to documents and other information received from the Debtors, their representatives, and other sources.

28.   Due to Akin Gump's experience in counseling creditors' committees, Akin Gump believes it was able to efficiently address all issues relating to case administration that have arisen during the pendency of these Insolvency Proceedings.

### Akin Gump Fee Application/Monthly Billing Reports
#### (Fees: $8,808.00; Hours: 18.20)

29.   This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses or these chapter 11 cases.

### Committee Meetings
#### (Fees: $77,112.50; Hours: 118.60)

30.   This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, with individual Committee members and with the Committee's other legal and financial advisors. Akin Gump, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period. In addition, during the Compensation Period, Akin Gump had numerous telephonic conferences with individual Committee members and the chair of the Committee and their respective professionals.

31.   Prior to its meetings with the Committee, Akin Gump reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith. Thereafter, Akin Gump discussed each of these matters with the Committee's other professionals, the Committee, as well as individual Committee members. During these

discussions, Akin Gump assisted the Committee in formulating a position with respect to each pending matter. In addition, Akin Gump prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee discussing the status of pertinent matters in these proceedings.

32.    Akin Gump also held regular telephone conferences with the Debtors' principal officer, Mr. John Ray, during which, Akin Gump, along with the Committee's other professionals, discussed with Mr. Ray various matters arising in these Insolvency Proceedings, and the impact of such matters on the Debtors' unsecured creditors.

33.    Through meetings, telephone conferences, and correspondence, Akin Gump has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in these chapter 11 cases, to monitor closely the Debtors' management of these proceedings, and to reach independent conclusions on the merits of specific matters.

### Asset Sales

(Fees: $135,164.00; Hours: 226.90)

34.    Akin Gump spent time during the Compensation Period working closely with the Nortel Debtors and their U.S. and Canadian advisors to evaluate strategic options with respect to the divestiture of certain of the Debtors' assets. Specifically, Akin Gump attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, and professionals for the other major creditor constituents to evaluate issues raised in connection with the divestiture of the Carrier Voice Over IP and Application Solutions ("CVAS") and GSM/GSM-R ("GSM") businesses and evaluated third party bids for certain of the Debtors' "Tier II" assets. In that regard, Akin Gump, together with the Committee's other professionals, analyzed and assessed numerous financial and legal issues related to these

11

transactions, and advised the Committee on those issues through detailed memoranda and telephonic conferences, as necessary.

*CVAS Sale*

35.    Akin Gump attorneys spent time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing, negotiating and finalizing the terms of a sale of the Nortel Debtors' CVAS business (the "CVAS Sale"). On December 23, 2009, the Nortel Debtors publicly announced that GENBAND Inc. ("GENBAND"), with equity sponsor One Equity Partners III, L.P. ("OEP" and, together with GENBAND, the "CVAS Purchasers"), was selected as the stalking horse bidder for the CVAS Sale. Following a joint hearing before the U.S. and Canadian Courts on January 6, 2010, this Court entered an order approving the form of proposed bidding procedures and related sale motion on January 8, 2010. On February 24, 2010, the Nortel Debtors announced that the CVAS Sale would not proceed to auction and that they would consummate a transaction with the CVAS Purchasers. On March 3, 2010, following a joint hearing before the U.S. and Canadian Courts, this Court approved the CVAS Sale to the CVAS Purchasers. During the Compensation Period, Akin Gump attorneys, along with the Committee's other professionals, continued working with the professionals for the Nortel Debtors to review, comment on and negotiate all underlying documentation necessary to close the CVAS Sale. On May 28, 2010, the CVAS Sale closed.

36.    Further, during the Compensation Period, Akin Gump, on behalf of the Committee, continued spending time negotiating with the Nortel Debtors, the Monitor and the Ad Hoc Bondholder Group the terms of a side agreement (the "CVAS Side Agreement") by which the benefits and burdens of effectuating the CVAS Sale will be appropriately shared amongst the various Nortel Debtor estates. On May 12, 2010, the Debtors filed a motion (the

12

"CVAS Side Agreement Motion") seeking this Court's approval of the CVAS Side Agreement in substantially the form attached thereto. Following a hearing on May 24, 2010, this Court granted the relief requested in the CVAS Side Agreement Motion.

*GSM Sale*

37.     As this Court is aware, the sale of the Nortel Debtors' GSM business (the "GSM Sale") to Telefonaktiebolaget L M Ericsson ("Ericsson") and Kapsch Carriercom AG ("Kapsch" and, together with Ericsson, the "GSM Purchasers") was consummated on March 31, 2010, resulting in the Nortel Debtors' receipt of approximately $118 million in sale proceeds from the GSM Purchasers. During the Compensation Period, Akin Gump, on behalf of the Committee, continued spending time negotiating with the Nortel Debtors, the Monitor and the Ad Hoc Bondholder Group the terms of a side agreement (the "GSM Side Agreement") by which the benefits and burdens of effectuating the GSM Sale will be appropriately shared amongst the various Nortel Debtor estates. On May 12, 2010, the Debtors filed a motion seeking this Court's approval of the GSM Side Agreement, which approval was granted following a hearing before this Court on May 24, 2010.

38.     Akin Gump attorneys spent time during the Compensation Period working with the Committee's other professionals and professionals for the Nortel Debtors, analyzing, negotiating and finalizing the terms of a sale of certain of the Nortel Debtors' residual assets from the GSM business relating to customer contracts in Asia and the Caribbean and Latin American Region (the "GSM CALA Sale") to Ericsson. On May 11, 2010, the parties signed a sale agreement with respect to the GSM CALA Sale. On May 12, 2010, the Debtors filed a motion seeking this Court's approval of the GSM CALA Sale, which approval was granted following a hearing before this Court on May 24, 2010.

### Tax Issues

(Fees: $22,132.00; Hours: 38.90)

39.     This subject matter relates to legal services rendered by Akin Gump relating to tax

matters affecting the Nortel Debtors. During the Compensation Period, Akin Gump continued an

in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the Nortel

Debtors' legacy transfer pricing system, and a proposed amendment thereto. In connection

therewith, Akin Gump attorneys participated in numerous conferences with the Committee's

other professionals and the Debtors' senior management team and advisors to discuss cross-

border tax issues in the context of these Insolvency Proceedings and to consider strategic options

related thereto. Additionally, during the Compensation Period, Akin Gump attorneys spent time

analyzing the tax issues in connection with the various asset divestitures described herein, and

where appropriate, commenting on and negotiating the underlying documentation of such

transactions.

40.     Further, during the Compensation Period, Akin Gump attorneys spent time

analyzing certain issues related to the Debtors' Canadian income tax filing requirements for

taxable year 2009. In connection therewith, Akin Gump attorneys worked closely with the

Debtors' professionals to consider strategic alternatives to best protect the Debtors' estates from

unnecessary tax liability in connection with the filing of their 2009 Canadian income tax returns.

### Labor and Employee Benefits Issues

(Fees: $150,026.00; Hours: 245.90)

41.     This subject matter relates to services rendered by Akin Gump in connection with

the Committee's analysis of the Debtors' benefit plans and general labor matters. During the

Compensation Period, Akin Gump attorneys spent time analyzing the pension and employee

related issues attendant to the various asset divestitures described herein, and where appropriate,

14

commenting on and negotiating the underlying documentation of such transactions.
Additionally, during the Compensation Period, Akin Gump reviewed and analyzed issues
relating to claims based on a class action lawsuit for breach of fiduciary duty under ERISA
brought on behalf of current and former employees of Nortel Networks Inc. and worked with the
Debtors' professionals to assess strategic alternatives in connection therewith.

42.     As the Court is aware, on March 5, 2010, the Nortel Networks UK Pension Trust
Limited (the "U.K. Pension Trustee") and the Board of the Pension Protection Fund (the "PPF"
and, together with the U.K. Pension Trustee, the "U.K. Pension Parties") appealed (the "U.K.
Pension Appeal") the order of this Court enforcing the automatic stay as it relates to the
participation of the U.K. Pension Parties in the administrative proceedings regarding the alleged
shortfall in the funding of the Nortel Networks U.K. Pension Plan and the potential issuance of a
financial support direction against NNI (the "U.K. Pension Proceedings"). The Delaware
District Court has since referred the U.K. Pension Appeal to a magistrate judge. Akin Gump
attorneys spent considerable time during the Compensation Period analyzing issues raised by the
U.K. Pension Appeal, drafting a responding brief, and reviewing and commenting on a
responding brief filed by the Debtors', both of which briefs were filed on June 7, 2010. In
connection therewith, Akin Gump worked with the Debtors' professionals to assess strategic
alternatives and will continue to do so in the future.

43.     Further, on April 14, 2010, the UK Pensions Regulator ("TPR") filed a motion for
leave to appeal the order of the Canadian Court enforcing the Canadian stay of proceedings as it
relates to the U.K. Pension Proceedings and a motion to expedite such appeal (the "TPR
Appeal"). Akin Gump attorneys analyzed the TPR Appeal in conjunction with FMC, worked
with U.S. and Canadian counsel to the Debtors to analyze strategic alternatives with respect

thereto, and assisted FMC in preparing and filing a responding factum of the Committee to the TPR Appeal in the Canadian proceedings, which factum was filed on June 10, 2010. Additionally, on March 19, 2010 the U.K. Pension Parties appealed the order of the Canadian Court enforcing the Canadian stay of proceedings, and, on April 19, 2010, they filed a motion seeking (a) permission from the Canadian Court for the U.K. Pension Proceedings to go forward against the Canadian Debtors and (b) the lifting of the Canadian stay of proceedings to allow the U.K. Pension Parties' participation in the U.K. Pension Proceedings (the "Canadian Pension Pleadings"). Akin Gump attorneys spent time during the Compensation Period analyzing issues raised by the Canadian Pension Pleadings in conjunction with FMC and continuing to work with the U.S. and Canadian counsel to the Debtors to assess strategic alternatives in connection therewith.

44.    Finally, during the Compensation Period, Akin Gump attorneys reviewed certain of Nortel's nonqualified deferred compensation plan, trust and other documents in order to assess the proper obligor(s) for claims purposes. In connection therewith, Akin attorneys also reviewed certain severance plans in order to determine whether severance benefits provided thereunder were superseded by subsequent severance arrangements.

### Real Estate Issues/Leases

(Fees: $26,872.50; Hours: 42.60)

45.    This subject matter relates to services rendered by Akin Gump in connection with the Committee's analysis of a proposal for the purchase of certain of the Debtors' real estate (the "Real Estate Proposal"). During the Compensation Period, Akin Gump attorneys spent significant amounts of time, together with Capstone and Jefferies professionals, analyzing the Real Estate Proposal, discussing the same with the Debtors' professionals, and reviewing drafts of the underlying documentation proposed in connection therewith. Akin Gump continues to

16

work with the Debtors' professionals to assess strategic alternatives in connection with the Real Estate Proposal and to negotiate the documentation in connection therewith.

## Intercompany Issues

(Fees: $75,433.00; Hours: 108.10)

46.     This subject matter relates to time spent by Akin Gump attorneys reviewing and analyzing certain intercompany issues arising among the various Nortel entities around the world, and their impact on the Nortel Debtors' Insolvency Proceedings. As required under the terms of the Interim Funding Agreement, Akin Gump, along with the Committee's other professionals, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding a protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates. On May 4, 2010, the aforementioned parties held a meeting seeking to advance negotiations of such protocol, and Akin Gump attorneys reviewed protocol documentation and met with individual parties to the protocol in preparation therefor. Akin Gump, on behalf of the Committee, will continue to negotiate in good faith with the other parties to reach a framework for the allocation of sale proceeds. Additionally, during the Compensation Period, Akin Gump, along with Capstone and Jefferies, began the process of preparing to perform due diligence in connection with intercompany claims, and continued to spend time examining potential intercompany claims among the Nortel Debtors and evaluating issues related thereto.

## Intellectual Property

(Fees: $52,335.00; Hours: 86.00)

47.     During the Compensation Period, Akin Gump attorneys continued to review and examine the Nortel Debtors' intellectual property portfolio, analyze intellectual property issues

17

associated with the various asset divestitures by the estates, and consider strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates. In connection therewith, Akin Gump attorneys reviewed a "teaser" presentation prepared by the Debtors for use in marketing of the Debtors' intellectual property portfolio, and continuously kept the Committee apprised of the progress of such marketing process.

### Non-Debtor Affiliates

(Fees: $62,651.50; Hours: 156.20)

48.     This subject matter relates to time spent by Akin Gump attorneys in connection with certain restructuring issues and proposals related to Nortel's non-Debtor affiliates. During the Compensation Period, Akin Gump, along with Ashurst, continued to spend considerable time researching and analyzing the procedures and legal frameworks for liquidating and/or winding down certain of Nortel's non-Debtor affiliates around the world, and examining the implications of such procedures for the repatriation of funds to the Nortel Debtors' estates.

### Non-Working Travel

(Fees: $3,232.00; Hours: 5.05)

49.     During the Compensation Period, Akin Gump attorneys spent 10.40 non-working hours traveling to Court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), Akin Gump has discounted this time by 50% and, accordingly, has billed 5.20 working hours traveling for the Compensation Period.

## V.    ALLOWANCE OF COMPENSATION

50.     The professional services rendered by Akin Gump required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the

18

services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

51.    The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

52.    With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a)(1)(A). Section 330(a)(3), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

19

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to provide for adequate compensation in order to continue to attract qualified and competent bankruptcy practitioners to bankruptcy cases.

53.     The total time spent by Akin Gump attorneys and paraprofessionals during the Compensation Period was 1,079.45 hours. The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.

54.     As shown by this application and supporting documents, Akin Gump spent its time economically and without unnecessary duplication of time. Attached hereto as <u>Exhibit E</u> is a schedule of the hours expended by the attorneys and paraprofessionals during the Compensation Period, their normal hourly rates, and the value of their services. In addition, Akin Gump incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of $29,100.46 for which Akin Gump respectfully requests reimbursement in full.

55.     The disbursements and expenses have been incurred in accordance with Akin Gump's normal practice of charging clients for expenses clearly related to and required by particular matters. Akin Gump has endeavored to minimize these expenses to the fullest extent possible.

56.     Akin Gump's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. Akin Gump believes that it is fairest to charge each client only for the services

actually used in performing services for it. Akin Gump charges $.10 per page for internal duplicating and does not charge for facsimile transmissions. Akin Gump has negotiated a discounted transactional rate for computer assisted legal research.

57.    No agreement or understanding exists between Akin Gump and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

58.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**WHEREFORE**, Akin Gump respectfully requests that this Court:

(a)    approve the allowance of $633,157.50 for compensation for professional services rendered to the Committee during the period from April 1, 2010 through and including April 30, 2010;

(b)    approve the reimbursement of Akin Gump's out-of-pocket expenses incurred in connection with the rendering of such services during the period from April 1, 2010 through and including April 30, 2010 in the amount of $29,100.46; and

(c)    authorize and direct the Debtors to immediately pay to Akin Gump the amount of $506,526.00, which is equal to the sum of 80% of Akin Gump's fees and 100% of Akin Gump's expenses incurred during the Compensation Period.

Dated:    New York, New York
          July 1, 2010

                            AKIN GUMP STRAUSS HAUER & FELD LLP

                            By
                               Fred S. Hodara (*pro hac vice*)
                               A Member of the Firm
                               One Bryant Park
                               New York, New York 10036
                               (212) 872-1000
                               Co-Counsel to the Official Committee of
                               Unsecured Creditors