July 3rd, 2010

Clerk of the United States Bankruptcy Court
District of Delaware
824 Market Street, 3rd Floor
Wilmington, Delaware 19801

CC: Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, New York 10006

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O.Box 1347
Wilmington, Delaware 19801



Subject: Nortel Networks Inc, et al Case No. 09-10138 (KG)

Dear Sir,

I am writing to formally object to the motion by Nortel Networks made before the Bankruptcy Court, District of Delaware, Honorable Kevin Gross presiding, to terminate retiree healthcare, long term care, life insurance, and disabled employee benefits.

Termination of the Nortel Retiree and Disabled Employee Medical plans before a final liquidation of the Nortel estate, and without considering the corresponding claims is placing an undue burden on thousands of retirees, their spouses, and their dependents and may force many people to lose medical insurance. It will also result in thousands of ex-Nortel employees having to pay very large increases in medical premiums and deductibles, at a time when many are losing pension income as a result of Nortel filing chapter 11 bankruptcy.

The following items are my arguments as to why I object to the motion before the court, (docket #3204 on court records), and why I am requesting the court to deny the motion, and require Nortel to continue these plans until all claims have been submitted, and a plan accepted by all creditors including retirees and disabled employees regarding the disbursement of Nortel's remaining estate

(1) Pensioners who retired in earlier decades were not properly informed by Nortel that the retiree medical plan could be terminated at the will of the company. Some retirees have copies of plan information booklets dating from 1991 that do not contain any clause defining Nortel's right to terminate the plan if they desire to do so.

(2) Nortel has struck a deal with Canadian retirees to continue their health care

coverage in Canada until the end of 2010. Based on this disparity in treatment, I consider the denial of healthcare to US retirees discriminatory.

(3) Nortel has not yet filed a plan of reorganization. In the event that Nortel decides to maintain a viable patent operation the current Nortel retirees will be denied the opportunity to enter a motion that medical coverage be continued in the new structure.

(4) It is my understanding that Nortel plans to continue its medical plan for remaining employees. The move to eliminate costs associated with the retirees and disabled personnel is therefore, in my opinion, discriminatory.

(5) Other bankruptcies have resulted in the formation of a 1114 committee to ensure that the rights of the retirees and others who are receiving non-pension employee benefits are properly protected. At this point there is no specific representation on the unsecured creditor's committee to defend against maltreatment of retirees' non-pension rights. Nortel has stated that a 1114 committee does not apply in this case. Such a decision should only be rendered by the court after due consideration. The motion to terminate the plans should only be considered after a decision has been made regarding a 1114 committee.

(6) Nortel retirees will lose a number of benefits as a result of Nortel terminating the retiree medical plan. Since the bar date has passed on claims, Nortel retirees may be impacted negatively if they are not given a new bar date to file claims against Nortel with respect to their rights under the Retiree Medical plan, the Retiree Long Term Care plan, and the Retiree Life Insurance plan. A similar situation exists with respect to disabled employees.

(7) Chapter 11 bankruptcy law, at the discretion of the court, requires Nortel to file a plan of disclosure within 18 months of the initial filing. This motion denies retirees, as creditors, the right to properly determine and file claims for their future losses, so that their claims may be property treated in any such disclosure.

(8) Nortel claims that the cost of maintaining the medical plans is burdensome. At a rate of $1M per month for retiree medical coverage, and a similar figure for disabled employees, the amount expended on these plans is probably less than 20% of the costs of legal support which Nortel is paying to work through the reorganization process. Nortel has argued that these welfare costs are for people who are providing no service to Nortel. The essence of these plans is based on the services that the retirees and disabled employees provided in prior years, and for which services they were promised pension, and medical benefits in perpetuity.

Nha Trong Nguyen