IN THE BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) ) ) Chapter 11 |
| NORTEL NETWORKS, INC, et al., | ) ) Case No. 09-10138 (KG) |
| Debtors. | ) ) ) |

**UNSECURED CREDITOR JOY N. HAYMORE'S OBJECTION TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTORS TO TERMINATE CERTAIN <u>RETIREE AND LONG-TERM DISABILITY PLANS</u>**

Joy N. Haymore ("Haymore"), appearing *pro se*, hereby objects to the motion by Nortel Networks, Inc and a number of its affiliates, as debtors and debtors in possession (collectively referred to as "Debtors"). In support of her motion, Haymore submits the following:

Haymore began working for Debtors in 1980 in their offices in North Carolina. She worked at Debtors because she sought the security of the retirement benefits Debtors offered to her as part of her compensation. As part of those benefits, Debtors, its officers, directors, and employees repeatedly expressed that Haymore would receive long-term care insurance, paid by the Debtors. In reliance on those representations, Haymore did not purchase supplemental or private long-term care coverage. Haymore does not recall Debtors, its officers, directors, and employees informing her that their promises were "illusory" or could be rescinded unilaterally, leaving Haymore without recourse. Had Haymore known that her coverage could have been terminated by the Debtors at any time, she would have sought private insurance.

Haymore worked for Debtors until 1992, when she was forced to retire at the age of 67. As part of the retirement package, Haymore received as consideration a life-time of long-term care insurance coverage. Again, Debtors, its officers, directors, and employees did not inform her

that her long-term care coverage could be terminated by the Debtors. Haymore reasonably relied on these representations by the Debtors and their agents, and based on that reliance, Haymore did not seek further long-term care insurance. Haymore relied on these representations for 30 years, from 1980 until 2010. Haymore is now 84 years old and does not have the financial means to either pay for long term care or purchase long term care insurance.

On January 14, 2009, Debtors filed for bankruptcy protection under Chapter 11. As part of their notification to retirees, Debtors did not inform Haymore that they intended to terminate the benefit of long term care coverage. Now, 15 months later, Debtors wish to take extremely prejudicial actions against Haymore and more than 4,000 other retirees.

According to Debtors' motion, the benefits cost approximately $1 million a month. Financial records filed with this court show pensions and other "post-retirement obligations" account for approximately $700 million of Debtors' estimated $5.5 billion of "liabilities subject to compromise." Most of the unsecured debt is for bond debt, and representatives of those bond holders comprise the unsecured creditors committee. Haymore and the other retirees have no representation.

Debtors rely on their bare assertion in Paragraph 26 of their Motion that the plain language of the Retiree Welfare Plans make clear that Debtors retained the right to amend or terminate retiree benefits. Debtors have not offered any such plan as in place when Haymore retired in 1992. Debtors admit that there have been amendments to the retirement benefits plan they have named "Retiree Welfare Plans."[1] However, Debtors have not proffered copies of the

---

[1] The name of the plan is "The Retiree Life Insurance and Long-Term Care Plan." Debtors improperly employ the word "welfare" to gain better comparison to their cited case law. Prior to this Motion, the plans have never been named or considered "welfare" plans. They are compensation plans that were bargained for in exchange of years of service by Haymore and others.

plans for the years 1980 through 1992, the years Haymore worked for the Debtors. Debtors offer examples of unilateral changes in 2000 and 2007. See Fn. 13 on P. 11 of Motion. However, Debtors only made prospective changes and did not affect the rights of retirees.

If Debtors cannot show that the documents and plans in place at the time Haymore retired allowed them to modify or terminate benefits unilaterally, then Debtors cannot, after Haymore's forced retirement, insert that provision into their agreement. Here, Debtors have failed to offer any credible evidence that the plan governing at Haymore's retirement allowed modification or termination.

Given that Debtors have failed to establish they have retained the right to modify or terminate, 11 U.S.C. § 1114 applies. Under § 1114 of the Bankruptcy Code, a company in Chapter 11 is required to pay, through the reorganization, retiree medical benefits under a plan, fund or program at the same levels it paid prior to bankruptcy, until or unless a modification is agreed to by the parties or ordered by the Court. In the absence of an agreement between the company and the retirees (typically through a representative committee), the court may approve a modification requested by the company only if the company has attempted negotiate an agreement. Debtors have not sought any negotiated settlement with Haymore or others. Haymore had not been treated "fairly and equitably" as required by 11 U.S.C. § 1114(f). The requirements of § 1114 must be met before a debtor may either unilaterally modify or terminate retiree benefits. They have not.

In the present case, chief executives for Debtors have submitted motions for fees in which they seek compensation in salary and expenses of nearly $100,000 a month. Debtors' attorneys and accounts have submitted application of fees to collect more than $29 million for three months of work on the case, from February through April. Cleary Gottlieb Steen &

Hamilton, the lead lawyers for Debtors, are in line for $14.8 million of that. From January of 2009 through the end of April, the Cleary firm has billed nearly $76 million to Debtors. Yet Debtors, and their counsel, assert the best way to shed liabilities is to divest Debtors' employees of their hard-worked compensation. The $1 million a month obligation for Haymore and her fellow retirees seems paltry compared to the fees and expenses applied for by Debtors executives and advisors charged during this bankruptcy.

Even if Debtors are able to produce language that the plan could be unilaterally modified in 1992 and therefore § 1114 is inapplicable, courts have still required Debtors to "make a significant showing" that Debtors have such a unilateral right and such rights have not vested. *In re Delphi Corp.* Case No. 05-44481 (Bankr. SDNY 2009). Until this Motion was filed, Debtors have not indicated that it planned on terminating these benefits. In the administration of these plans, a North Carolina District Court has placed restrictions on Nortel Networks, Inc so that it does not act arbitrarily and capriciously. See *Brown v. Nortel Networks, Inc.* (E.D.N.C.) (Even though it had discretion to interpret its LTD plan, Nortel, as plan administrator, violated ERISA by denying coverage based on insufficient and unreliable information).

In sum, Haymore submits that § 1114 applies and that Debtors have failed to establish they have the right to modify the plans as of 1992. In the alternative, if § 1114 does not apply, the Court should require debtors make a significant showing that these rights have not been vested and relied upon by Haymore and other retirees.

The 2 of July, 2010.

Joy N. Haymore, pro se
2600 Wade Avenue
Raleigh, NC 27607
(919) 787-3358

## **VERFICIATION**

I, Joy N. Haymore, verify, under oath that the facts contained in the Objection are based on my own personal knowledge and true to the best of my knowledge and belief.

*Joy N. Haymore*
Joy N. Haymore

STATE OF NORTH CAROLINA

COUNTY OF WAKE

Sworn to and subscribed before me this the
2 day of ~~June~~ July, 2010.

Notary Public
My Commission Expires: 12/13/12