IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X

In re                                            :    Chapter 11

Nortel Networks Inc., et al.,[2]                 :    Case No. 09-10138 (KG)

           Debtors.                     :    Jointly Administered

                                                 :    Re: D.I. 3204

-----------------------------------------------------------X

## NOTICE OF FILING OF OBJECTION OF PAUL E. MORRISON, M. HEIDI MORRISON, THEODORE J. MORRISON, SAMUEL B. MORRISON, ~~BENJAMIN M.~~ MORRISON, ~~[REDACTED]~~ MORRISON, ~~RACHAEL P.~~ MORRISON

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

Redacted version

1

**Morrison**
2241 College Ave.
Quincy, IL. 62301
217-223-3920

July 5, 2010

United States Bankruptcy Court
Clerk/ Honorable Kevin Gross
District of Delaware
824 Market Street 3rd Floor
Wilmington, Delaware 19801

Case No. 09-10138 (KG)

To Whom it may concern:

I am writing to object to the Nortel Networks motion to terminate employment of those employees on Long term disability and to terminate all of their benefits, including health care, life insurance and more. I am objecting to this motion myself M. Heidi Morrison, and also on behalf of my husband Paul E. Morrison (employee #0509571), and our children; Theodore J., Samuel B., ~~Benjamin M.~~, ~~Oliver W.~~, and ~~Rachael P.~~ Morrison.

My husband Paul has been employed with Nortel Networks since February 1996 and was a very sought after Project Manager. In a short time he was promoted to Senior Project Manager and was in charge of supervising over 100 people and overseeing projects with budgets of over $300,000,000.
He worked 90 plus hours a week and traveled weekly from Monday to Friday. Our only family time with him was during phone conversations or on weekends. Our children and I made this sacrifice because it was a great job and Paul was extremely good at it. During the eight years of having a weekend husband I was not able to work outside the home as taking care of being mother and father to five small children was a full time job, and his income of $110,000 allowed me to do this.

My husband was injured while working in St. Louis, Missouri. He suffered a neck, and back injury yet continued to try and work until the pain was too much to handle. He went on STD short term disability to have neck surgery, he had two discs removed and bone from his hip along with titanium plates put in his neck. He felt substantially better but many of the cognitive deficits became very apparent. We went to the Mayo Clinic and he was diagnosed with a Traumatic Brain Injury and the residual impairment is known as Post Concussive Disorder. This was a very difficult time in our lives and very emotional. Paul struggled with depression and feelings of being defective and worthless. This meant that he would have to stay on disability and not be able to feel as though he was providing for his family. It took nearly a year for us to come to terms with this life changing event but we sought support from the Brain Injury

2

Society and realized we were not alone. This support gave us the hope of rebuilding a new and different kind of life for our family but one that could be happy and full.
The responsibility of our family and home as well as helping with my husband meant that I could not work outside of the house.

Thankfully Paul's Nortel benefits had decent Long Term Disability Insurance which he paid into all of those years. Our income went from $110,000 to $50,000 with no increases for cost of living each year and although this was a huge financial adjustment we were happy to have the income. His medical bills grew and we nearly lost everything but we have managed to make it. Through all of this we just felt blessed that we did have this **guaranteed income and health care benefits** for all of our family as well as life insurance and pension. This knowledge gave us **hope and a sense of security** that somehow we would be alright.

This sense of well being was shattered on June 28, 2010 when we received notice that our worst nightmare might come true: no more income, no health insurance, life insurance, pension and no way to provide for our family. Nortel Networks is asking you to allow them to send 280 LTD employees and their families to live out on the streets or move in with family. Without this income we will be forced to sell our house and pull our son out of his last year of Catholic High School. We will not be able to afford to go to the doctor, dentist, or any medical professional. Five people in our family our on daily medications that we will not be able to continue to buy, three of which are life sustaining medications.

I find it disturbing that Nortel is making money from selling assets and wants to call their hard working, dedicated employees who because of misfortune are on LTD, liabilities. It is rather degrading to be **nothing more than a liability**. They also sent us the notice of this motion over a holiday week with only four business days to scramble to object. This seems cold and calculated to me that the people who can least afford legal representation are now forced to pay Attorneys just to help them **beg for what is justly theirs**. I think it is also underhanded that they have already sent out termination letters and cancelled some insurance even though the motion has not even been ruled on. Many people will feel helpless when reading that they are terminated and as of August 31, 2010 they will be without any income or benefits that they thought were guaranteed. I suspect a great many of people will not object to the courts because of the limited amount of time and money as well as the letter stating that it is pretty much a "done deal". I believe that this is all part of Nortel's careful planning and that it is their intent to intimidate their employees into submission.

I am sending you: abbreviated copies of doctor evaluations of my husband's disabilities (complete versions available upon request), a copy of an insurance claim for our son Samuel showing his insurance having already been stopped, and a copy of the letter from Nortel Networks dated June 28, 2010 stating that the termination is basically already decided.

3

I pray that you or a loved one never have the misfortune to be disabled and be forced out of the work place as a productive member of society and on to disability. It is not something anybody would chose, is very degrading and difficult for those and their families and very hard for a man to no longer feel like a provider to his wife and children. It is hard to be a role model for your children when you feel you have little worth. Please do not let Nortel Networks get away with this or they will be allowed to send the message loud and clear, **you're right, you are worthless!**

Prayerfully and Sincerely,

M. Heidi Morrison

Documents attached:
1. Nortel termination letter
2. Cigna benefit denial letter
3. Independent Medical Evaluation
	(abbreviated version)
4. Vocational Rehabilitation Evaluation
	(abbreviated version)



® **CIGNA Dental**
CONNECTICUT 1K 411 cENLIN I ID. INSURANCE COMPANY
A'./5901 1t for NO11111 NI 1WORKS INC COLIC AS ADMIN 3203196

Page 3 of 3

# CIGNA   Your explanation of dental benefits ([or the claim processed on Jun 24, 2010)

```
                                                                    T
                                                                   -H
                                                    IS IS NOT A BILL
```

## Your claim details

PATIENT NAME: **SAMUEL MORRISON** PARTICIPANT NAME: PAI JI MORMON PARTICIPANT ID: 00974240/ PROVIDER NAME: D WENIURA DO`,
GROUP NAME: NOR ICI NEIWORKS INC    K AS ADMIN GROUP #: 3703 I% DOCUMENT #: E 101740406720 CLAIMANT #: 05 CLAIM #: 051
PAYMENT #: 001    POLICY CODE: 02 DIVISION: 014 RECEIVED DATE: Jun 23, 2010 PROCESSED DATE: Inn 24, 2010

| AMOUNT YOUR PROVIDER T ($)BY YOUR PLAN ($) | YOUR PROVIDER'S CONTRACTED DEDUCTIBLE ($) | AMOUNT ELIGIBLE FOR COVERAGE BALANCE ($) | YOUR (%) | REMAINING ($) | YOUR PLAN COVERED | CHARGED ($)AMOUN |
|---|---|---|---|---|---|---|
| For service on Jun 15, 2010: Adult Cleaning* *(see note NX)* | | | | | | |
| 53.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0% | 0.00 |
| For service on Jun 15, 2010: Periodic Oral Exam* *(see note NX)* | | | | | | |
| | | | | | | 29.00 |
| | | | | | | **$82.00** |

|  |  |
|---|---|
| Amount paid by your plan | $0.00 |
| **Participant's responsibility** | **$82.00** |

**Notes**

# NX – Benefits are not provided for service(s) performed after the claimant's termination date.



**England & Company**

**Rehabilitation Services, Inc.**

906 Olive
Suite 710
St. Louis, MO 63101
Bus. 314-421-3133
Toll Free: 800-886-9675
Fax: 314-421-5788
www.englandrehab.com

March 15, 2010

David G. Plufka, Esq.
Keefe & Griffiths
10 South Broadway
Suite 500
St. Louis, Missouri 63102
Re: Paul E. Morrison

### *Vocational Rehabilitation Evaluation*

*Introduction*

You asked me to evaluate Mr. Morrison's employability in the open labor market. Your office sent me copies of medical records and doctors' reports which describe the evaluation and treatment he has undergone. I read through this information carefully prior to meeting with him.

Paul missed his originally scheduled meeting with me on March 5 but did show up for the second appointment that was set for March 10, 2010.

He was pleasant and cooperative and I felt would make a nice impression in an interview.

There were no observable signs of physical impairment. He did shift around some while seated and got up on one occasion just to stretch and move about which he said helped with his low back pain.

He listened attentively as I talked with him about our services and he was familiar with vocational rehabilitation, having had some assistance from the Illinois State program.

My findings and recommendations regarding Mr. Morrison are as follows:

*Medical Update*

I reviewed records from a source which described treatment from a variety of primary care physicians and specialists working at The Quincy Clinic, Quincy Physicians and Surgeons Clinic and Quincy Medical Group which covers the period 1975 through 2007.

Paul E. Morrison
March 15, 2010

*Functional Restrictions/Limitations*

Dr. Volarich, as mentioned earlier in this report, has recommended restrictions involving the spine which include avoiding all bending, twisting, lifting, pushing, pulling, carrying, climbing and other similar tasks. He was to handle no more than about 20 pounds on an occasional basis and not overhead or out away from his torso. He was not to carry weight over long distances or uneven terrain and was to avoid being in a fixed position for more than about 30 minutes at a time including both sitting or standing. He was to change positions frequently to maximize comfort and to rest when needed.

Dr. Liss indicated that he felt Mr. Morrison had psychological symptoms that included alternation in sleep, poor concentration, distractibility, anxiety, isolation, poor self esteem, some suicidal thoughts, repetitive behaviors, mood swings, alteration in appetite, decreased memory, impulsivity, disorganization, changes in judgment, hopelessness and anger outbursts. The doctor diagnosed traumatic brain injury or closed head injury associated with organic mood disorder (depression) and attention deficit disorder. The doctor thought his Global Assessment of Functioning was less than 50 at that time.

Mr. Morrison indicated to me that he is doing his best to complete his bachelor's degree and hopes to go on for an MBA. He said that he hopes very much to be able to get back to either doing the type of work he was before as a project manager or perhaps something that is not quite that demanding from a neurocognitive standpoint.

He is not really sure whether he will be able to handle it as he still has to pace his activities even in a school setting.

*Summary and Conclusions*

He appears to be doing his best to overcome his impairments and to try to return to the work world. His efforts to rehabilitate himself have, in my opinion, shown great effort on his part.

Hopefully he will be able to return to the work force but at this point, based on his GAF score as assigned by Dr. Liss, I do not see how this would be possible. Generally someone with a 50 or below GAF is not felt to be capable of sustaining regular work activity.

Please feel free to contact me if you have any further questions regarding my opinions in this matter.

James M. England, Jr.
Vocational Rehabilitation Counselor

JME/avg

**NORTEL**

June 28, 2010

Dear US LTD Program Participant:

This package is a follow up to the letter dated June 17, 2010 that you received in the mail. As indicated, on August 31, 2010, Nortel Networks Inc., as the plan sponsor, is planning to terminate the existing longterm disability (LTD) plan, and has filed for approval with the bankruptcy court to do so. Since the company has sold most of its divisions and is now maintaining only a small transition support staff, your employment will terminate on August 31, 2010, as there are no jobs to return to.

Enclosed is the following:
1. Your employment termination information package. Employment termination packages are standard, and as such there may be information that is not relevant to you given your long-term disability status.

    If you have questions regarding the employment termination package, contact Nortel HR Shared Services at 1-800-676-4636.

2. A life insurance conversion letter. Should you wish to convert your policy to a personal policy, this letter provides important instructions on the process and timing.

**IMPORTANT REMINDER:** As indicated in your June 17 letter, long-term disability payments will be discontinued August 31, 2010. Your long-term disability payment from Prudential in August 2010 will be the last plan payment you will receive.

For all other questions and contact details, please refer to the June 17 letter and Frequently Asked Questions document for additional information.

# Volarich Medical Group

David T. Volarich, D.O.
CILAE FAADEP

## INDEPENDENT MEDICAL EXAMINATION

| | | | |
|---|---|---|---|
| **EXAMINEE:** | Paul E. Morrison | **DOB:** | 1/30/65 |
| **ADDRESS:** | 2241 College Avenue<br>Quincy, IL 62301 | **SSN:** | xxx-xx-8388 |
| **EMPLOYER:** | Northern Telecom | **DOI:** | 1/29/97 |
| **OCCUPATION:** | Construction Manager | | |

**TO: David G. Plufka, Esq.**

In accordance with your request, I examined Northern Telecom in this office for injuries sustained while in the employ of Northern Telecom. Mr. Morrison is accompanied today by his wife, Heidi.

## BRIEF SUMMARY OF EVENTS:

Mr. Morrison worked as a construction manager for Northern Telecom Company for about 7 years. He last worked for that company 3/03 and has not been back to work since. He received social security disability benefits effective 1/03. He is currently attending college.

On or about 1/29/97, he was involved in a accident. He sustained injuries to his neck and back. He was eventually diagnosed with a strain injury and disc bulge at C5-6, but was subsequently found to have disc protrusions at C4-5, C5-6 and C6-7 and underwent surgical repair that included anterior cervical discectomy with fusion at C5-6 and C67. He was also diagnosed with lumbar syndrome and disc bulging at L4-5. He required conservative care for his lumbar syndrome. He continues to experience ongoing difficulties as a result of this accident.

Paul E. Morrison
June 4, 2008


# Volarich Medical Group

David T. Volarich, D.O.
CIME, FAADEP

**June 4, 2008**

## FOREWORD:

On 6/4/08, I evaluated Paul E. Morrison. He brought no additional records with him. I also reviewed a number of medical records forwarded to me by your office. These records are summarized in this report, and copies of the actual records are available for review.

I saw this examinee for the purpose of an IME only, and *not* as a treating physician. The opinions rendered in this case are the opinions of this evaluator. This evaluation was completed on the basis of the medical examination and the documentation as provided or obtained, with the assumption that the material is true and correct. If more information becomes available at a later date, an additional service / report / reconsideration may be requested. Such information may or may not change the opinions rendered in this evaluation. This opinion is based on my clinical assessment, examination and review of the available documentation, and does not constitute per se a recommendation for specific claims or administrative functions to be made or enforced.

This IME is based on the history given by the examinee, the medical records and tests provided to me, as well as the physical findings of the examinee today. Recommendations regarding his ability to work, or participate in activities of daily living, and the other opinions provided in this report are given totally independently of the requested agents. These recommendations and opinions are based on a reasonable degree of medical certainty. Medicine is both an art and a science, and although he may appear to be fit to participate in various types of activities, there is no guarantee that this individual will not be re-injured, or suffer additional injury as a result of participating in certain types of activities.

## DIAGNOSES RE THE INJURY 1/29/97:

1. Cervical syndrome secondary to disc protrusion C4-5, C5-6 and C6-7 causing cervical and right upper extremity radicular symptoms — S/P anterior cervical discectomy with fusion C5-6 and C6-7.

2. Lumbar syndrome secondary to disc bulge L4-5.

Paul E. Morrison
June 4, 2008
Page 3

## DIAGNOSES ADDITIONAL:

1. Cognitive dysfunction, ADD, depression, and intermittent vertigo.

# CONCLUSIONS

## CAUSATION:

It is my opinion the work accident that occurred 1/29/97 when Mr. Morrison was involved in a motor vehicle accident while riding in a car as a passenger with his seatbelt on when the vehicle was struck from behind causing a whiplash injury to the neck and spine and breaking the back of the car seat is the substantial contributing factor as well as the prevailing or primary factor causing the cervical spine protrusions at C4-5, C5-6 and C6-7 that required anterior cervical discectomy with fusion instrumentation at C5-6 and C6-7 as well as causing his lumbar syndrome and disc bulge at L4-5 that required conservative care.

## MAXIMUM MEDICAL IMPROVEMENT:

Based on the treatment provided to date, he has achieved MMI with reference to his spinal injuries. Regarding his cognitive and psychiatric disorders, I defer to psychiatric evaluation for these opinions.

## DISABILITY RATINGS:

Pertaining to and as a direct result of the injury sustained on **1/29/97** while in the employ of **Paul E. Morrison**, it is my opinion that the following industrial disabilities exist that are a hindrance to his employment or re-employment:

1. There is a 45% permanent partial disability of the body as a whole rated at the cervical spine due to the disc protrusions at C4-5, C5-6 and C6-7 that required two-level anterior cervical discectomy with fusion at C5-6 and C6-7. The rating accounts for his neck pain syndrome, lost motion and upper extremity weakness.

2. There is a 20% permanent partial disability of the body as a whole rated at the lumbosacral spine due to his chronic lumbar syndrome and disc bulging at L4-5. The rating accounts for his back pain syndrome and lost motion.

No attempt is made to rate disability referable to his cognitive dysfunction, ADD, depression or intermittent vertigo.

Paul E. Morrison
June 4, 2008
Page 4

*The combination of his disabilities creates a substantially greater disability than the simple sum or total of each separate injury/illness, and a loading factor should be added.*

*The ratings of disability or disabilities in this report have been established by medical findings, demonstrated by this examiner and are certified by this examiner, a board certified and licensed physician in the state of Missouri.*

## ANALYSIS, DISCUSSION, AND OPINIONS:

- **EVALUATION AND TREATMENT CONSIDERATIONS:** In order to maintain his current state, he will require ongoing care for his pain syndrome using modalities including but not limited to narcotics and non-narcotic medications (NSAID's), muscle relaxants, physical therapy, and similar treatments as directed by the current standard of medical practice for symptomatic relief of his complaints.

    With reference to his cognitive and psychiatric disorders, I defer to psychiatric evaluation for determination of additional future care.

- **SURGICAL CANDIDACY:** Based on today's examination, additional surgery to the neck is not required and surgery to the low back is not indicated. It is noted that the orthopedic fixating hardware placed in the neck can at times become infected, loosen or fail and will need to be removed or replaced. The decision to perform any additional surgery on his back should be made in conjunction with his wishes, change in symptoms and expert surgical opinion.

Respectfully submitted,

*[signature]*

David Volarich, DO, CIME, FAADE