IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>NORTEL NETWORKS INC., *et al.,*<br><br>Debtors. | Chapter 11<br><br>Case Nos. 09-10138 (KG)<br>(Jointly Administered)<br><br>Hearing Date: July 16, 2010 at 10:00 a.m.<br>Objection Deadline: July 9, 2010 at 4:00 p.m. (EST) |

**OBJECTION OF JANET BASS TO DEBTORS' MOTION FOR ENTRY
OF AN ORDER AUTHORIZING DEBTORS TO TERMINATE CERTAIN
RETIREE AND LONG-TERM DISABILITY PLANS**

Janet Bass hereby submits this objection (the "Objection") to Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans (the "Motion").[1] In support of her Objection, Ms. Bass respectfully states as follows:

**BACKGROUND FACTS**

1. On February 1, 1999, Nortel employed Ms. Bass.

2. As part of that employment, Nortel provided Ms. Bass with a benefits package which included long-term disability benefits in the event she became totally disabled.

3. On January 1, 2001, Ms. Bass' median nerve in her right arm was nearly severed.

4. On or about March 2001, she was diagnosed with reflex sympathetic dystrophy and neuropathy, which was caused by faulty nerve regeneration. Ms. Bass has permanent nerve damage in her right arm. She has unable to work since 2001.

---

[1] Debtors Nortel Networks Inc., et al., will be referred to throughout this Objection as "Nortel."

5.      On or about May or June 2001, Nortel began paying Ms. Bass short-term disability benefits. These benefits lasted for approximately twenty-six (26) weeks. On or about November or December 2001, Nortel began to pay Two Thousand Three Hundred Dollars ($2,300.00) per month in long-term disability benefits to Ms. Bass.

6.      Over the next eight plus years, Nortel paid long-term disability benefits to Ms. Bass. Currently, it pays long-term disability benefits to Ms. Bass in the amount of One Thousand Three Hundred Dollars ($1,300.00) per month. The difference is provided by Social Security in the amount of One Thousand Three Hundred Seventy Dollars ($1,370.00) per month.[2]

### GROUNDS FOR OBJECTION

#### A.    JANET BASS WILL SUFFER IRREPARABLE HARM SHOULD HER LONG-TERM DISABILITY BENEFITS BE TERMINATED.

7.      Nortel has recognized the value of its employees. Indeed, that value is revealed in its own pleadings. For example, it recognized "[e]mployees are important in any business" and that a lapse in benefit coverage would certainly visit a "financial hardship" upon them. *In re Nortel Networks, Inc.,* Case No. 09-10138 (KG), D.I. 10, ¶¶126-127. Most recently, it recognized that "[i]ts principal assets include its employees." *In re Nortel Networks, Inc.,* Case No. 09-10138 (KG), D.I. 3204, ¶11.

8.      Nortel now contends that "[p]roviding [long-term disability benefits] is a significant financial burden that does not provide any concomitant benefit to the Debtors' estates because the individuals currently receiving the benefits of such expenditures are not providing

---

[2] Upon information and belief, Nortel procured the services of Disability Benefits Corporation to assist it in obtaining social security disability benefits for Ms. Bass.

services to the Debtors." *In re Nortel Networks, Inc.,* Case No. 09-10138 (KG), D.I. 3204, ¶33. Nortel cites nothing to support the premise that active employees receiving long-term disability benefits must currently provide service to obtain such benefits. Nortel undertook the obligation to provide Ms. Bass with these benefits when it employed her; it received value via the services she provided to it prior to her permanent injury; it has a continuing obligation to provide those benefits.

9.    It is interesting that, before this Court has considered or heard argument on this Motion, Nortel has already taken steps to obtain the relief it seeks. In footnote 10 of its Motion, it states that, "in connection with the termination of the LTD Plan, the Debtors intend to formally terminate these employees as well." *In re Nortel Networks, Inc.,* Case No. 09-10138 (KG), D.I. 3204, ¶18, fn10.   On or about July 6, 2010, Ms. Bass received a letter from Nortel terminating her employment and benefits effective August 31, 2010, the very relief sought in the present Motion. *See* Exhibit A.

10.    As Nortel previously pointed out, this Court has recognized the financial hardship that would be imposed upon employees if Nortel were to terminate employees' benefits. *In re Nortel Networks, Inc.,* Case No. 09-10138 (KG), D.I. 10, ¶¶126-127, and cases cited therein. That is true for Ms. Bass. She will suffer irreparable harm should Nortel be allowed to terminate her long-term disability benefits. She will not be able to meet her financial obligations. Terminating her long-term disability benefits will mean the loss of her medical, dental and eye insurance. It also may mean the loss of her home. Because of the irreparable harm she will suffer should her long-term disability benefits be terminated, Ms. Bass respectfully requests that the Court deny Nortel's Motion to terminate her long-term disability benefits.

B. **NORTEL'S PRESENT MOTION SHOULD BE DENIED, BECAUSE NO STATUTORY SECTION OF THE BANKRUPTCY CODE SUPPORTS THE RELIEF IT SEEKS.**

11. 28 U.S.C. §959(a) provides that debtors in possession may be sued for acts or transactions in carrying on business in connection with its property. 28 U.S.C. §959(b) requires debtors in possession to act in accordance with state law.

12. North Carolina prohibits discrimination against employees with disabilities. *See* Persons with Disabilities Act, N.C. Gen. Stat. 168A-1, *et seq.* Specifically, it prohibits, in part, employers such as Nortel from discharging or otherwise discriminating against disabled employees on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment. *See* N.C. Gen. Stat. 168A-5(1).

13. Nortel seeks to discharge Ms. Bass because of her disability and contemporaneously terminate her long-term disability benefits, a term, condition or privilege of her employment. In other words, her disability is the determining factor in Nortel's decision to terminate Ms. Bass and her benefits.

14. Since the North Carolina General Assembly prevents employers from discriminating on the basis of a person's disability then, under 28 U.S.C. §959, Nortel's present Motion should be denied, unless Nortel can find a provision in the Bankruptcy Code for the relief it seeks.

15. The statutory sections cited by Nortel here do not support the relief sought. 11 U.S.C. §105(a) provides that the Court can issue an order "necessary or appropriate to carry out the provisions of this title." If there is no other provision of the Bankruptcy Code on which

Nortel relies to obtain its presently requested relief, then the Court cannot issue an order under 11 U.S.C. §105(a) granting Nortel the ability to terminate the long-term disability benefits.

16. 11 U.S.C. §363(b) is inapplicable, because it deals with the use, sale or lease of property of the estate other than in the ordinary course of business. Here, Nortel seeks to *terminate* (not use, sale or lease) long-term disability benefits and contemporaneously *terminate* Ms. Bass.

17. Finally, 11 U.S.C. §1108, traditionally read in conjunction with 11 U.S.C. §1107, allows Nortel to operate its business. However, Nortel must do so in accordance with state law. 28 U.S.C. §959(b). As discussed above, North Carolina prevents discrimination against disabled employees on the basis of a disabling condition with respect to compensation or the terms, conditions, or privileges of employment.

18. Since Nortel has not cited to any statutory section in the Bankruptcy Code that provides the relief it seeks here, its Motion to Terminate Certain Retiree and Long-Term Disability Plans should be denied.

*[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]*

**CONCLUSION**

18.     Janet Bass will suffer irreparable harm should the Court permit Nortel to terminate her long-term disability benefits.  In addition, Nortel has not cited to any provision in the Bankruptcy Code that supports the relief it seeks.  Therefore, the Court should deny Debtors' Motion for Entry of an Order Authorizing Debtors to Terminate Certain Retiree and Long-Term Disability Plans.

Dated: July 9, 2010                                  Respectfully submitted,
         Wilmington, Delaware

                                                     DARBY & SEBRING, LLC


                                                      /s/ Johnna M. Darby
                                                     Johnna M. Darby (DE Bar No. 5153)
                                                     515 North Market Street
                                                     Wilmington, Delaware 19801
                                                     Telephone:    302-442-7822
                                                     Facsimile:    302-442-7821
                                                     Email:        jmd@darbysebring.com

                                                     *Counsel to Janet Bass*