## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------X

: 

*In re*                                                          :    Chapter 11

: 

Nortel Networks Inc., *et al.*,[1]                    :    Case No. 09-10138 (KG)

: 

                  Debtors.            :    Jointly Administered

: 

:    **Hearing date: August 18, 2010 at 10:00 a.m. (ET)**
:    **Responses due: July 28, 2010 at 4:00 p.m. (ET)**

---------------------------------------------------------X

### DEBTORS' ELEVENTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3001 AND 3007 AND DEL. L.R. 3007-1 (DUPLICATE; INSUFFICIENT DOCUMENTATION)

**TO THE CLAIMANTS LISTED ON <u>EXHIBITS A AND B</u> ATTACHED TO THIS OBJECTION:**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED ON <u>EXHIBITS A AND B</u> ATTACHED TO THIS OBJECTION.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBITS A AND B</u>. CLAIMANTS' NAMES AND CLAIMS MAY APPEAR ON ONE OR MORE EXHIBITS.**

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3001 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to those certain claims listed on **Exhibits A and B**, attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of John Ray in Support of the Debtors' Eleventh Omnibus Objection to those certain claims, dated July 8, 2010 (the "Ray Declaration" or "Ray Decl."), attached hereto as **Exhibit C** and incorporated by reference, and respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code section 502, Bankruptcy Rules 3001 and 3007, and Local Rule 3007-1.

## Background

### A.      Procedural History

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA, although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On March 25, 2010, the French Court ended the suspension of the liquidation operations.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

## C.     Case Milestones

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632].  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

---

[5]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

**D.**     **Bar Date, Schedules and Notice**

14.     On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") [D.I.s 616-627, 801-810].   On September 11, 2009, the Debtors filed the Schedules and Statements for NN CALA.   On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities (the "Amended Schedules") and Amended Statements of Financial Affairs (the "Amended Statements") [D.I.s 1811-1825].

15.     On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280] establishing September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors other than NN CALA (collectively, the "Claimants") to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.   Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.   On December 2, 2009, the Court entered an order [D.I. 2059] establishing January 25, 2010 at 4:00 p.m. (prevailing Eastern Time) as the general claims bar date for filing proofs of claim against NN CALA.

**E.**     **The Claims Resolution Process**

16.     In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

17.     The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of proofs of claim (collectively, the "Proofs of Claim") that were filed in these chapter 11 cases asserting claims against the Debtors

7

(collectively, the "Claims").  As of April 30, 2010, the Claims Register consisted of 7,239 Proofs of Claim.  The Debtors and their advisors are comprehensively reviewing and reconciling all Claims, including both the Claims listed on the Schedules (the "Scheduled Claims") and the Claims asserted in the Proofs of Claim (including any supporting documentation).  The Debtors also are comparing the Claims asserted in the Proofs of Claims with the Books and Records to determine the validity of the asserted Claims.

18.     This reconciliation process includes identifying particular categories of Claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance.  To avoid possible double recovery or otherwise improper recovery by Claimants, the Debtors will continue to file omnibus objections to such categories of Claims if and where warranted.  This Objection is one such omnibus objection.

19.     On December 14, 2009, the Court entered an Order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

**Bases for Objection and Relief Requested**

20.     By this Objection, the Debtors respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001 and 3007 and Local Rule 3007-1 disallowing in full each of the Duplicate Claims identified on **Exhibit A** and disallowing in full each of the Insufficient Documentation Claims identified on **Exhibit B**.

21.     When asserting a claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Pinnacle Brands, Inc., 259 B.R. 46, 49-50 (Bankr. D. Del. 2001).  Pursuant to this principle, Bankruptcy Rule 3001 requires that where, as here, a proof of claim is based on a writing, it must

include written documentation sufficient to support the claim.  See, e.g., Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F. 3d 253 (3d Cir. 1995) (upholding a bankruptcy court's decision to disallow claims for insufficient documentation); In re MK Lombard Group I. Ltd., 301 B.R. 812, 815 (Bankr. E.D. Pa. 2003) (reasoning that a claim without supporting documentation or an explanation for the missing documentation is "*proof* of nothing") (emphasis in original).  Proofs of claim that fail to provide such documentation are inadequate, objectionable, and should be disallowed.  See, e.g., id.

22.    In addition, even when a Claimant files a proof of claim that is otherwise adequate, if the same Claimant files duplicative proofs of claim against the same Debtor, the duplicates should be disallowed.  See, e.g., In re Handy Andy Home Improvement Ctrs., Inc., 222 B.R. 571, 575 (Bankr. N.D. Ill. 1998).  Indeed, "it is axiomatic that one can not recover for the same debt twice."  Id.  Duplicate or multiple recoveries for a single liability against a single Debtor are impermissible.  As such, duplicative proofs of claim are subject to disallowance.

23.    For the reasons set forth below, the Debtors object to each of the Duplicate Claims identified on **Exhibit A** and each of the Insufficient Documentation Claims identified on **Exhibit B** to this Objection, attached hereto and incorporated by reference.

## A.    Duplicate Claims (Exhibit A)

24.    The Debtors object to each of the Claims identified on the attached **Exhibit A** (the "Duplicate Claims") and respectfully request that the Duplicate Claims be disallowed in full. The Debtors and/or their advisors have reviewed the Claims Register and each of the Duplicate Claims.  (See Ray Decl. ¶ 4.)  Based on this review, the Debtors have determined that each of the Duplicate Claims is redundant of another Claim filed against the same Debtor entity by or on behalf of the same Claimant relating to the same purported liability.  If the Duplicate Claims identified on **Exhibit A** are not disallowed, the Claimants may obtain double recovery for the

same alleged liability.  By this Objection, the Debtors seek disallowance of each of the Duplicate

Claims in order to limit each Claimant to a single claim against a Debtor's estate arising from the

same alleged liability.

25.    For each of the Duplicate Claims, the Debtors have identified a separate claim

that asserts the same liability.  The claim numbers of such separate duplicate claims are

identified on **Exhibit A** in the column labeled "Separate Duplicate Claim" (the "<u>Separate

Duplicate Claims</u>").[6]

**B.    Insufficient Documentation Claims (Exhibit B)**

26.    The Debtors object to each of the Claims identified on the attached **Exhibit B** (the

"<u>Insufficient Documentation Claims</u>") and respectfully request that the Insufficient

Documentation Claims be disallowed in full.  The Debtors and/or their advisors have reviewed

the Books and Records, the Schedules, the Proofs of Claim, including the alleged underlying

liabilities, and the related supporting documentation provided by each Claimant, if any, and have

found no basis for the liability alleged in the Insufficient Documentation Claims.  (<u>See</u> Ray Decl.

¶ 4.)  Accordingly, the Insufficient Documentation Claims are inadequate under Bankruptcy Rule

3001 and should be disallowed.  <u>See, e.g.</u>, <u>Zolfo, Cooper</u>, 50 F.3d 253.

27.    Specifically, in the Proofs of Claim identified in **Exhibit B**, Claimants represent

that the Debtors provided product warranties (the "<u>Product Warranties</u>") to Claimants in

connection with products the Debtors sold to Claimants, which were intended for resale to third

parties.  Claimants allege that because their customers could, in the future, assert claims against

them in connection with the Debtors' products, Claimants currently have contingent and

---

[6]    As set forth in this Objection and the Debtors' Twelfth Omnibus Objection (Substantive) filed
contemporaneously herewith, the Separate Duplicate Claims identified in **Exhibit A** are also objectionable because,
in whole or part, they are not supported by sufficient documentation.  Accordingly, as set forth in more detail below
and in the Debtors' Twelfth Omnibus Objections (Substantive), each of the Separate Duplicate Claims should be
disallowed or reduced and allowed, as the case may be, as specified.

unliquidated claims against the Debtors under the Product Warranties. Claimants' Proofs of Claim, however, do not identify any of the contracts under which the Product Warranties were allegedly provided to Claimants by the Debtors, nor do they identify any of the products that were resold by Claimants and which could form the basis for Claimants' claims. Nor do the Proofs of Claim attach any supporting documentation whatsoever containing any facts that would constitute prima facie evidence of the validity of the claims, as required by Bankruptcy Rule 3001(f). Accordingly, the Debtors request that the Insufficient Documentation Claims be disallowed in their entireties.

### Separate Contested Matters

28.     To the extent that a response is filed regarding any Claim listed in this Objection and the Debtors are unable to resolve the dispute with the Claimant, such Claim, and the Objection by the Debtors to such Claim asserted herein, shall together constitute a contested matter as contemplated by Bankruptcy Rule 9014. Any order entered by the Court regarding the relief requested herein shall be deemed a separate order with respect to each Claim.

### Responses to Omnibus Objection

29.     To contest this Objection, a Claimant must serve and file a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (prevailing Eastern Time) on July 28, 2010 (the "Response Deadline")**. Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street, Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Deborah M. Buell and Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott

30.     Every Response to this Objection must contain, at a minimum, the following information:

> a.     A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;
>
> b.     The name of the Claimant, the Claim number, and a description of the basis for the amount of the Claim;
>
> c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;
>
> d.     Any supporting documentation, to the extent that it was not included in the Proof of Claim previously filed with the clerk or claims agent, upon which the Claimant intends to rely to support the basis for and amounts asserted in the Proof of Claim; and
>
> e.     The name, address, telephone number and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the Claimant.

31.     If a Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the claim, without further notice to the Claimant or a hearing.

**Replies to Responses**

32.     The Debtors may, at their option, file and serve a reply to any response so that it is received by the Claimant (or the Claimant's counsel, if represented) no later than three (3) days prior to the Hearing.

**Adjournment of Hearing**

33.     The Debtors reserve the right to seek an adjournment of the Hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be noted on the notice of agenda for the Hearing, and such agenda will be served on the affected Claimant by serving the person designated in the Response.

**Reservation of Rights**

34.     The Debtors expressly reserve the right to amend, modify or supplement this Objection.  As this Objection asserts non-substantive bases for disallowance, should the Court dismiss or overrule the Objection with respect to any Claim, the Debtors reserve the right to object further to such Claim on any additional grounds, substantive or non-substantive, that the Debtors discover or elect to pursue.

35.     Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that the Debtors may have to (a) commence avoidance actions under the applicable sections of the Bankruptcy Code, including, but not limited to, sections 547 and 548 of the Bankruptcy Code, against the Claimants subject to this Objection, (b) enforce the Debtors' rights of setoff or recoupment against the Claimants relating to such avoidance actions, or (c) seek disallowance pursuant to Bankruptcy Code Section 502(d) of each of the Claims of the Claimants that are subject to such avoidance actions.

### Relief From Amended Bankruptcy Rule 3007

36.     Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007, as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

### No Prior Request

37.      No prior request for the relief requested herein with respect to the Claims set forth on **Exhibits A and B** has been made to this Court or any other court.

### Notice

38.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibits A and B**; and (v) the general service list established in these chapter 11 cases. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order substantially in the form attached hereto as **Exhibit D** disallowing each of the Duplicate Claims identified on **Exhibit A** and each of the Insufficient Documentation Claims identified on **Exhibit B**, and (ii) grant such other and further relief as is just and proper.

Dated:  July 9, 2010
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*