**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------X
               :

*In re*                     :

Nortel Networks Inc., *et al.*,[1]    :

             Debtors.   :

                 :

                 :

                 :
-------------------------------------------------------X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing date: August 18, 2010 at 10:00 a.m. (ET)**
**Responses due: July 28, 2010 at 4:00 p.m. (ET)**

**DEBTORS' TWELFTH OMNIBUS OBJECTION (SUBSTANTIVE)
TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND
DEL. L.R. 3007-1 (NO LIABILITY CLAIMS, REDUCE AND ALLOW CLAIMS, NO-
BASIS 503(b)(9) CLAIMS, MULTI-DEBTOR DUPLICATE CLAIMS AND WRONG
DEBTOR CLAIM)**

**TO THE CLAIMANTS LISTED ON <u>EXHIBITS A-E</u> ATTACHED TO THIS OBJECTION:**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED ON <u>EXHIBITS A-E</u> ATTACHED TO THIS OBJECTION.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBITS A-E</u>.**

- **PLEASE NOTE THAT CLAIMANTS' NAMES MAY APPEAR IN MULTIPLE EXHIBITS ATTACHED TO THIS OBJECTION. CLAIMANTS SHOULD CHECK ALL EXHIBITS FOR THEIR NAMES.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to those certain claims listed on **Exhibits A-E**, attached hereto and incorporated by reference.  In support of this Objection, the Debtors submit the Declaration of John Ray in Support of the Debtors' Twelfth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, No-Basis 503(b)(9) Claims, Multi-Debtor Duplicate Claims and Wrong Debtor Claim) (the "Ray Declaration"), attached hereto as **Exhibit F** and incorporated by reference, and respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent, Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles,

France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary

proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation

proceedings during which NNSA was originally authorized to continue to operate as a going

concern for an initial period of three months, which period was subsequently extended to

November 28, 2009.  In accordance with the European Union's Council Regulation (EC) No.

1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings")

remain the main proceedings in respect of NNSA, although a French administrator and a French

liquidator have been appointed and are in charge of the day-to-day affairs and continuing

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint

Administrators, the French Court approved an order to: (i) suspend the liquidation operations

relating to the sale of the assets and/or businesses of NNSA for a renewable period of two

months; (ii) authorize the continuation of the business of NNSA so long as the liquidation

operations are suspended; and (iii) maintain the powers of the French Administrator and

Liquidator during the suspension period, except with respect to the sale of assets and/or

businesses of NNSA.  On March 25, 2010, the French Court ended the suspension of the

liquidation operations.  On June 26, 2009, this Court entered an order recognizing the English

Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under

chapter 15 of the Bankruptcy Code.[4]

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and
Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the
Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009,
the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under
the Israeli Companies Law (the "Joint Israeli Administrators").

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe.  Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd., [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd., to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632] (collectively, the "Sale Transactions").  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

---

[5]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

D.      **Bar Date, Schedules and Notice**

14.     On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed

their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs

(the "Statements") [D.I.s 616-627, 801-810].  The Debtors filed Schedules and Statements for

NN CALA on September 11, 2009 [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other

than NN CALA) filed their Amended Schedules of Assets and Liabilities (the "Amended

Schedules") and Amended Statements of Financial Affairs (the "Amended Statements") [D.I.s

1811-1825].

15.     On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280]

establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last

date for all creditors holding a "claim" (as such term is defined in section 101(5) of the

Bankruptcy Code) against one or more of the Debtors (other than NN CALA) to file and serve a

written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.

Notice of the General Bar Date was provided by mail and publication in accordance with the

procedures outlined in the Bar Date Order.  On December 3, 2009, the Court entered an order

[D.I.  2059] establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar

date for all creditors holding a claim against NN CALA (together with the creditors holding

claims against the other Debtors, the "Claimants") to file and serve written proofs of claim.

E.      **The Claims Resolution Process**

16.     In the ordinary course of business, the Debtors maintain books and records (the

"Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts

owed to their creditors.

17.     The claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a

register (the "Claims Register") of proofs of claim (collectively, the "Proofs of Claim") that were

filed in these chapter 11 cases asserting claims against the Debtors (collectively, the "Claims").

As of June 30, 2010, the Claims Register consisted of more than 7,300 Proofs of Claim.  The

Debtors and their advisors are comprehensively reviewing and reconciling all claims, including

both the claims listed on the Schedules (the "Scheduled Claims") and the Claims asserted in the

Proofs of Claim (including any supporting documentation) filed in these cases.  The Debtors also

are comparing the Claims asserted in the Proofs of Claim with their Books and Records to

determine the validity of the asserted Claims.

19.    This reconciliation process includes identifying particular categories of Claims

that may be targeted for disallowance, reduction and allowance or reclassification and allowance.

To reduce the number of Claims, and to avoid possible double recovery or otherwise improper

recovery by Claimants, the Debtors will continue to file omnibus objections to such categories of

Claims if and where warranted.  This Objection is one such omnibus objection.

19.    On December 14, 2009, the Court entered an Order granting the Debtors relief

from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

**Relief Requested**

20.    For the reasons set forth below, the Debtors object to each of the Claims

identified on **Exhibits A-E** attached hereto.  By this Objection, the Debtors respectfully request

that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy

Rule 3007 and Local Rule 3007-1 reducing, modifying or disallowing in full the Claims as

identified on **Exhibits A-E**:

> a.    Each Claim set forth as "No Liability Claims" in **Exhibit A** attached
> hereto should be disallowed as a Claim for which there is no amount due
> and owing to the Claimant because (i) the Claim is supported neither by
> documentation and information provided by the Claimant, if any, nor by
> the Debtors' Books and Records (the "No Amount Due Claims"), (ii) the
> entity that is identified as "Debtor Against Which Claim is Held" is not a
> Debtor in these chapter 11 cases (the "Non-Debtor Entity Claims"), or (iii)

although the Claim is filed against a Debtor, the underlying liability is neither that of the identified Debtor nor any other Debtors in these chapter 11 cases (the "Non-Debtor Liability Claims," and, together with the No Amount Due Claims and the Non-Debtor Entity Claims, the "No Liability Claims");

b.  Each Claim set forth as "Reduce and Allow Claims" in **Exhibit B** attached hereto is a Claim for an overstated amount that should be reduced and allowed for the amount identified under the column labeled "Modified Amount" because (i) part of the claimed amount relates to invoices issued to an entity that is not a Debtor in these chapter 11 cases (the "Non-Debtor Invoice Claims"), or (ii) part of the claimed amount is neither supported by the documentation or other evidence provided by the Claimant, if any, nor by the Debtors' Book and Records (the "No Supporting Documentation Claims," and, together with the Non-Debtor Invoice Claims, the "Reduce and Allow Claims");

c.  Each Claim set forth as "No-Basis 503(b)(9) Claims" in **Exhibit C** attached hereto[6] should be disallowed because the Claim does not meet the requirements of section 503(b)(9) of the Bankruptcy Code, and is redundant of another Claim filed by the same Claimant against the same Debtor based on the same purported liability (the "No-Basis 503(b)(9) Claims");

d.  Each Claim set forth as "Multi-Debtor Duplicate Claims" in **Exhibit D** attached hereto should be disallowed because the Claim is duplicative of other Claims filed against another Debtor by the same Claimant based on the same purported liability (the "Multi-Debtor Duplicate Claims");

e.  The Claim set forth as "Wrong Debtor Claims" in **Exhibit E** fails to identify a Debtor that is liable for such Claim, and the Debtors seek to modify the Claim to clarify that the Claim is asserted against the Debtor identified under the column labeled "New Case Info" (the "Wrong Debtor Claim").

## Basis for Relief

21.  Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

---

[6]  The characterization of the Claims as 503(b)(9) Claims set forth in the Exhibits is the characterization asserted on the filed Proofs of Claim. The Debtors include such characterization for the purpose of identifying the Claim to which this Objection applies. The inclusion of the characterization shall not constitute an acknowledgement by the Debtors that such characterization is correct or appropriate.

22.      When asserting a claim against a bankrupt estate, a claimant must allege facts

that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re

Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76

(2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability

can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is

afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to

dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie*

validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one

of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting

party produces such evidence, the burden shifts back to the claimant to prove the validity of his

or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the

claimant.  Id.

## A.      No Liability Claims (Exhibit A)

23.      The Debtors object to the No Liability Claims identified on **Exhibit A** attached

hereto because there is no amount due and owing to the Claimant by the Debtor entity specified

in each of the Proofs of Claim.  With respect to each of the No Liability Claims, the Debtors

and/or their advisors have carefully reviewed the relevant Debtors' Books and Records, their

Schedules, and the relevant Proofs of Claim, including the supporting documentation provided

by each Claimant, if any, and have determined that the No Liability Claims in **Exhibit A** are

Claims for which none of the Debtors are liable.

24.      Claims labeled as "No Amount Due Claims" in **Exhibit A** should be disallowed

because, based on the careful review of the Books and Records, the Schedules, and the Proofs of

Claim, including supporting documentation provided by the Claimant, if any, the Debtors have

determined that there is no amount due and owing to the Claimants with respect to such Claims.

25.     Claims labeled "Non-Debtor Entity Claims" in **Exhibit A** fail to identify a Debtor

in these chapter 11 cases that is liable for such Claim.  Instead, the entity identified in the proof

of claim form is not a Debtor in these chapter 11 cases.  In addition, after carefully reviewing

their Books and Records and their Schedules, the Debtors believe that such Claim is not a

liability of any of the Debtors in these chapter 11 cases.

26.     Claims labeled "Non-Debtor Liability Claims" in **Exhibit A** are filed against a

Debtor, but the purported basis for such Claim is a liability of a non-Debtor entity.  After

carefully reviewing their Books and Records and their Schedules, the Debtors have determined

that the underlying obligation for each of the Non-Debtor Liability Claims is neither a liability of

the Debtor identified in the Proof of Claim nor that of any other Debtor in these chapter 11 cases.

27.     For the reasons stated above, the No Liability Claims do not meet the standards

for *prime facie* validity, and the Debtors seek entry of an Order disallowing and expunging the

No Liability Claims in their entirety.

**B.      Reduce and Allow Claims (Exhibit B)**

28.     The Debtors object to the Reduce and Allow Claims identified in **Exhibit B**

attached hereto because the amounts asserted in these Claims, as identified in the column labeled

"Claimed Amount" on **Exhibit B**, are overstated to include amounts that are not liabilities of the

Debtors or their estates and, therefore, should be reduced to the amounts identified in the column

labeled "Modified Amount" for the reasons set forth in the column labeled "Reason for

Modification."

29.     With respect to each of the Reduce and Allow Claims, the Debtors and/or their

advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the

Proofs of Claim, including the supporting documentation provided by each Claimant, if any, and

have determined that each Reduce and Allow Claim asserts liabilities in excess of the amounts

11

reflected in the Debtors' Books and Records as due and owing with respect to the underlying obligations.

30.     Claims labeled as "Non-Debtor Invoice Claims" in **Exhibit B** overstate the Debtors' liability by an amount that relates to liability of certain non-Debtor entities identified in the column labeled "Reason for Modification."  The Proofs of Claim for these Claims include invoices issued by the Claimant to certain Nortel entities that are not Debtors in these chapter 11 cases and for which none of the Debtors are liable.

31.     Claims labeled as "No Supporting Documentation Claims" in **Exhibit B** overstate the Debtors' liability by an amount that is not supported by the documentation or other evidence provided by the Claimants, if any.  In addition, after carefully reviewing their Books and Records, the Debtors have determined that such overstated portion in each of the No Supporting Documentation Claims is not supported by the Debtors' Books and Records.  To the extent that any Claimant is permitted to amend a Proof of Claim or otherwise provides documentation or other evidence supporting the overstated portion of a Claim, the Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

32.     Because the Debtors have no liability with respect to the overstated amounts asserted in the Reduce and Allow Claims, such overstated amounts should be disallowed and the amounts of such Claims should be reduced to the Modified Amounts identified in **Exhibit B**.  If the Reduce and Allow Claims are not reduced as requested herein, each of the Claimants will receive a disproportionately large distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and other stakeholders.

**C.      No-Basis 503(b)(9) Claims (Exhibit C)**

33.     The Debtors object to the No-Basis 503(b)(9) Claims identified on **Exhibit C**

attached hereto because each of these Claims (i) does not meet the statutory requirements of

section 503(b)(9) of the Bankruptcy Code, and (ii) is redundant of at least one other Claim filed

against the same Debtor by the same Claimant based on the same purported liability.[7]

34.     Section 503(b)(9) of the Bankruptcy Code provides administrative expense

priority to the claims for the value of any goods received by a debtor within 20 days before the

commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in

the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

35.     With respect to each of the No-Basis 503(b)(9) Claims, the Debtors and/or their

advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the

Proofs of Claim, including the supporting documentation provided by each Claimant, if any.

None of the No-Basis 503(b)(9) Claims establishes, nor do the Debtors' Books and Records or

their Schedules indicate, in whole or in part, the Claimant's right to payment for the value of

goods sold to the Debtors in the Debtors' ordinary course of business that were received by the

Debtors within 20 days before the commencement of the Debtors' chapter 11 cases.

36.     In addition, based on their review of the Claims Register and the relevant Proofs

of Claim, the Debtors have determined that each of the Claimants who filed a No-Basis

503(b)(9) Claim also filed a corresponding Claim on a general proof of claim form (the

"Corresponding Non-503(b)(9) Claims"), which are identified under the column labeled

"Corresponding Non-503(b)(9) Claims" in **Exhibit C**.  Each of the Corresponding Non-

503(b)(9) Claims asserts the same amount of recovery based on the same purported liability as

---

[7]        For eight No-Basis 503(b)(9) Claims, the Corresponding Non-503(b)(9) Claims do not identify the Debtor
that is liable for such Claim.  However, based on their careful review of relevant documents, the Debtors believe that
the No-Basis 503(b)(9) Claims are redundant of the identified Corresponding Non-503(b)(9) Claims.

that asserted in the No-Basis 503(b)(9) Claims against the same Debtor.  By this Objection, the

Debtors seek to reduce duplication in the Claims Register.

37.     The Corresponding Non-503(b)(9) Claims will be unaffected by the relief

requested in this Objection, and each Claimant's right to assert these liabilities against the

Debtors' estates will be preserved, subject to the Debtors' reservations of their rights to object to

the Corresponding Non-503(b)(9) Claims and other Claims on all grounds, whether legal, factual,

procedural, substantive or non-substantive.

38.     For the reasons set forth above, the Debtors seek disallowance in full of the No-

Basis 503(b)(9) Claims.  If the No-Basis 503(b)(9) Claims are not disallowed, the Claimants may

obtain double recovery and/or distributions at a higher priority than the distributions from the

Debtors' estates to which they would otherwise be entitled.

**D.     Multi-Debtor Duplicate Claims (Exhibit D)**

39.     The Debtors object to each of the Multi-Debtor Duplicate Claims identified on

**Exhibit D** attached hereto because each of those Claims is duplicative of at least one other Claim

filed against another Debtor by or on behalf of the same Claimant based on the same purported

liability.

40.     With respect to each of the Multi-Debtor Duplicate Claims, the Debtors and/or

their advisors have carefully reviewed the Claims Register, the Debtors' Books and Records,

their Schedules, and the Proofs of Claim, including the supporting documentation provided by

the Claimant, if any.  Based on this review, the Debtors have identified at least one Claim

corresponding to each of the Multi-Debtor Duplicate Claims which asserts the same amount of

recovery based on the same liability as identified on **Exhibit D** in the column labeled "Surviving

Claim Number" (the "Surviving Claims").  The Debtors believe, based on their review of

relevant information, the Surviving Claims have identified the correct Debtor entity that may be

14

liable for the underlying Claims, while the Multi-Debtor Duplicate Claims fail to establish the

*prima facie* validity against the Debtor stated in the respective Proofs of Claim.  By this

Objection, the Debtors seek to disallow in full and expunge each of the Multi-Debtor Duplicate

Claims and thereby limit each Claimant to a single Claim against a single Debtor's estate arising

from the same alleged liability.

41.     Unless included in other Exhibits to this Objection, the Surviving Claims will be

unaffected by the relief requested in this Objection, and each of the Claimants' rights to assert

those liabilities against the Debtors' estates will be preserved, subject to the Debtors' reservation

of its rights to object to the Surviving Claims and other Claims on all grounds, whether legal,

factual, procedural, substantive or non-substantive.

42.     For the reasons stated above, each of the Multi-Debtor Duplicate Claims

identified on **Exhibit D** should be disallowed in full and expunged.  If the Multi-Debtor

Duplicate Claims are not disallowed, the Claimants may obtain double recovery for the same

alleged liability.

**E.     Wrong Debtor Claim (Exhibit E)**

43.     The Wrong Debtor Claim fails to identify the Debtor that is liable for the Claim.

The Debtors hereby seek an Order from this Court correcting the Debtor against which the

Wrong Debtor Claim is asserted.

44.      With respect to the Wrong Debtor Claim, the Debtors and/or their advisors have

carefully reviewed the Debtors' Books and Records, their Schedules and the Proof of Claim,

including the supporting documentation provided by the Claimant.  Based on this review, the

Debtors believe that the Wrong Debtor Claim should be asserted against the Debtor identified in

the column labeled  "New Case Info" on **Exhibit E**.  If the relief sought in this Objection is

granted, the Claimant that filed the Wrong Debtor Claim will have an allowed Claim against the Identified Debtor for the amount stated on **Exhibit E**.

**Separate Contested Matters**

45.     To the extent that a response is filed regarding any Claim listed in this Objection and the Debtors are unable to resolve the response, such Claim, and the objection by the Debtors to such claim asserted herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each Claim.

**Responses to Omnibus Objection**

46.     To contest this Objection, a Claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (Eastern Time) on July 28, 2010 (the "Response Deadline")**.  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street, Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Deborah M. Buell and Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott

47.    Every Response to this Objection must contain, at a minimum, the following information:

      a.    A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

      b.    The name of the Claimant, the Claim number, and a description of the basis for the amount of the Claim;

      c.    The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

      d.    Any supporting documentation, to the extent that it was not included in the Proof of Claim previously filed with the clerk or claims agent, upon which the Claimant intends to rely to support the basis for and amounts asserted in the Proof of Claim; and

      e.    The name, address, telephone number and fax number of the person(s) (which may be the Claimant or the Claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the Claimant.

48.    If a Claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the claim, without further notice to the Claimant or a hearing.

## Replies to Responses

49.    The Debtors may, at their option, file and serve a reply to any response so that it is received by the Claimant (or the Claimant's counsel, if represented) no later than three (3) days prior to the Hearing.

## Adjournment of Hearing

50.    The Debtors reserve the right to seek an adjournment of the Hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be

noted on the notice of agenda for the Hearing, and such agenda will be served on the affected

Claimant by serving the person designated in the Response.

## Reservation of Rights

51.     The Debtors expressly reserve the right to amend, modify or supplement this

Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed

or overruled, the Debtors reserve the right to object to each of the Claims on any other grounds

that the Debtors discover or elect to pursue.  This Objection sets out substantive objections to the

Claims set forth in **Exhibits A-E**.  The Debtors reserve their right to assert non-substantive

and/or one or more other substantive objections to the Claims set forth in **Exhibits A-E** at a later

time.

52.     Notwithstanding anything contained in this Objection or the attached exhibits,

nothing herein shall be construed as a waiver of any rights that the Debtors may have to (a)

commence avoidance actions under the applicable sections of the Bankruptcy Code, including,

but not limited to, sections 547 and 548 of the Bankruptcy Code, against the Claimants subject to

this Objection, (b) enforce the Debtors' rights of setoff against the Claimants relating to such

avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy Code of

Claims of the Claimants that are subject to such avoidance actions.

## Relief from Amended Bankruptcy Rule 3007

53.     Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of*

*the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief

United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on

November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007,

as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

18

**No Prior Request**

54.     No prior request for the relief sought herein has been made to this or any other

court.

**Notice**

55.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee;

(ii) the counsel to the Committee; (iii) the counsel to the Bondholder Group; (iv) each of the

parties listed in **Exhibits A-E** and (v) the general service list established in these chapter 11

cases.  In light of the nature of the relief requested, the Debtors submit that no other or further

notice is necessary.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter an Order substantially in the form attached hereto as **Exhibit G** reducing, modifying or disallowing in full each of the Claims identified on **Exhibits A-E** as requested herein, and (ii) grant such other and further relief as is just and proper.

Dated:  July 9, 2010
    Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

  - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*