## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing date: August 18, 2010 at 10:00 a.m. (ET)**<br>**Response due: July 28, 2010 at 4:00 p.m. (ET)** |

-------------------------------------------------------X

## DEBTORS' OBJECTION TO PROOF OF CLAIM
## NO. 5681 FILED BY EMBARQ MANAGEMENT COMPANY

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby object (the "Objection"), pursuant to section 502

of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001 and 3007 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the proof of claim filed on

September 30, 2009, by Embarq Management Company, ("Embarq") which is designated on

Debtors' claim register as Claim No. 5681 (the "Proof of Claim"). (A copy of the Proof of Claim

is attached hereto as **Exhibit A**).  In support of this Objection, the Debtors submit the

Declaration of John Ray in Support of the Debtors' Objection to Proof of Claim No. 5681 filed

by Embarq Management Company, dated July 8, 2010 (the "Ray Declaration"), attached hereto

as **Exhibit B** and incorporated by reference, and respectfully state as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are Bankruptcy Code section 502 and Bankruptcy Rules 3001 and 3007.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.     On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

business of NNSA in France.  On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA.  On March 25, 2010, the French Court ended the suspension of the liquidation operations.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.     Debtors' Corporate Structure and Business**

11.     Nortel is a technology company that historically designed, developed and deployed communication products, systems and solutions to its customers around the globe. Its principal assets include its employees, the intellectual property derived and maintained from its research and development activities, its customers and other significant contracts and agreements.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

**C.     Case Milestones**

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated

---

[5]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

and DiamondWare Ltd., to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND Inc. [D.I. 2632].  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

### D.    Bar Date, Schedules and Notice

14.    On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") [D.I.s 616-627, 801-810].   On September 11, 2009, the Debtors filed the Schedules and Statements for NN CALA.   On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities (the "Amended Schedules") and Amended Statements of Financial Affairs (the "Amended Statements") [D.I.s 1811-1825].

15.    On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280] establishing September 30, 2009 at 4:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors other than NN CALA (collectively, the "Claimants") to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.   Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order.   On December 2, 2009, the Court entered an order [D.I.   2059] establishing January 25, 2010 at 4:00 p.m. (prevailing Eastern Time) as the general claims bar date for filing proofs of claim against NN CALA.

E.        **The Claims Resolution Process**

16.        In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

17.        The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of proofs of claim (collectively, the "Proofs of Claim") that were filed in these chapter 11 cases asserting claims against the Debtors (collectively, the "Claims").  As of April 30, 2010, the Claims Register consisted of 7,239 Proofs of Claim.  The Debtors and their advisors are comprehensively reviewing and reconciling all Claims, including both the Claims listed on the Schedules (the "Scheduled Claims") and the Claims asserted in the Proofs of Claim (including any supporting documentation) filed in these cases.  The Debtors also are comparing the Claims asserted in the Proofs of Claims with the Books and Records to determine the validity of the asserted Claims.

18.        On December 14, 2009, the Court entered an Order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

**Relief Requested**

19.        On September 30, 2009, Embarq filed the Proof of Claim, asserting that NNI is liable both for contractual "Optical Operational Credits" and "Product Credits" (together, the "Credits") in the total amount of $292,301.92, and on a contingent and unliquidated basis for potential liability under product warranties (the "Product Warranties") in relation to products NNI sold to Embarq.   For the reasons set forth below, both portions of the Proof of Claim are invalid, and the Debtors respectfully request that the Court disallow and expunge the Proof of

Claim filed by Embarq, pursuant to section 502(b) of the Bankruptcy Code and Bankruptcy Rules 3001 and 3007.[6]

### Legal Basis for Objection

20.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  See 11 U.S.C. §§ 101(5), 101(10).  Moreover, when asserting a claim against a bankruptcy estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Pinnacle Brands, Inc., 259 B.R. 46, 49-50 (Bankr. D. Del. 2001).  Further, pursuant to Bankruptcy Rule 3001(c), where a Claim is alleged to be founded on a writing, it should be disallowed if it fails to include written documentation sufficient to support the claim.  See, e.g., Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50 F.3d 253 (3d Cir 1995) (upholding a bankruptcy court's decision to disallow claims for insufficient documentation); In re MK Lombard Group I. Ltd., 301 B.R. 812, 815 (Bankr. E.D. Pa. 2003) (reasoning that a claim without supporting documentation or an explanation for the missing documentation is "*proof* of nothing") (emphasis in original).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded prima facie validity.  See Zolfo, Cooper, 50 F.3d at 253; Lombard, 301 B.R. at 815; see also Bankruptcy Rule 3001(f).  Where it fails to do so, its claim is invalid and should be disallowed.

21.     Here, both portions of Embarq's claim fail to meet the applicable requirements.  First, with respect to Embarq's claim to the Credits, the Debtors' review of their Books and Records, the Schedules and the Proof of Claim indicates that to the extent that these Credits were

---

[6]     Since this is not an omnibus objection, the Debtors do not believe Rule 3007-1(f)(iii) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") is applicable to this Objection.  To the extent, however, that the Court determines otherwise, the Debtors are prepared and respectfully request permission to submit a supplemental objection as necessary.

not fully utilized by Embarq, they expired prior to the date of this Objection.  The Optical Operation Credits and the Product Credits, both of which accrued at contractually specified rates according to the dollar value of certain Embarq purchases from NNI, were previously made available to Embarq for application towards invoices issued by NNI to Embarq.  With regard to the Optical Operational Credits, to the extent these Credits were not utilized and/or transferred to a buyer of one of NNI's business lines, they had expired by their terms as of June 30, 2010.  With regard to the Product Credits, to the extent these Credits were not utilized, they had expired by their terms as of March 31, 2010.  Accordingly, the Debtors have no current obligation to Embarq for these Credits.  (See Ray Declaration at ¶ 3.)  This portion of Embarq's claim should be disallowed, as Embarq has no right to payment for expired Credits.

22.     Second, with respect to Embarq's claims under the Product Warranties, the Proof of Claim does not attach or even identify any of the contracts under which NNI allegedly provided the Product Warranties to Embarq.  Nor does it identify any of the products NNI allegedly sold to Embarq that could form the basis for Embarq's claim under the Product Warranties.  Indeed, the Proof of Claim fails to attach any supporting documentation whatsoever to provide a basis for the claims under the Product Warranties.

23.     In addition, the Debtors and/or their advisors have reviewed the Books and Records, the Schedules, and the Proof of Claim, and have found no basis for Embarq's claims under the Product Warranties. (See Ray Declaration at ¶ 3.)  Therefore, the Debtors request that this portion of Embarq's claim be disallowed for lack of sufficient documentation.

24.     Accordingly, because Embarq has no right to payment in relation to the Credits, and Embarq has failed to establish the prima facie validity of its claims under the Product Warranties, Embarq's Proof of Claim should be disallowed in its entirety.

### Notice

25.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to Embarq Management Company; and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### No Prior Request

26.     No prior request for the relief requested herein has been made to this Court or any other court.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court (i) sustain this Objection; (ii) enter the proposed order attached hereto as **Exhibit C**, disallowing and expunging the Proof of Claim; and (iii) grant such other and further relief as it deems just and proper.

Dated:  July 9, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*