# Exhibit E

# Nortel Networks
# FLEX Benefits Program

**2006**

TABLE OF CONTENTS

i

ARTICLE 1 - DEFINITIONS ................................................................................................ 2

    1.1      Application of Terms ........................................................................................ 2

    1.2      AD&D Plan ...................................................................................................... 2

    1.3      Annual Enrollment Period ............................................................................... 2

    1.4      Benefit Election ............................................................................................... 2

    1.5      Benefits ............................................................................................................ 2

    1.6      Code ................................................................................................................. 2

    1.7      Core Benefits ................................................................................................... 2

    1.8      Default Benefits ............................................................................................... 2

    1.9      Default Medical Plan Benefit .......................................................................... 2

    1.10    Dental, Vision and Hearing Care Plan ............................................................ 2

    1.11    Dependent ........................................................................................................ 2

    1.12    Dependent Day Care Reimbursement Account Plan ....................................... 4

    1.13    Disability Plan ................................................................................................. 4

    1.14    Domestic Partner ............................................................................................. 4

    1.15    Effective Date .................................................................................................. 4

    1.16    Employee ......................................................................................................... 4

    1.17    Employer ......................................................................................................... 4

    1.18    Employment Commencement Date .................................................................. 4

    1.19    Entry Date ........................................................................................................ 5

    1.20    ERISA ............................................................................................................. 5

    1.21    Flex Credits ..................................................................................................... 5

    1.22    Flex Earnings ................................................................................................... 5

    1.23    Health Care Reimbursement Account Plan ..................................................... 5

    1.24    Health Maintenance Organization ................................................................... 5

    1.25    Leased Employee ............................................................................................. 5

    1.26    Life Insurance Plan .......................................................................................... 5

    1.27    Medical Plan .................................................................................................... 5

    1.28    Optional Benefits ............................................................................................. 5

    1.29    Participant ........................................................................................................ 5

    1.30    Payroll Deduction Contributions ..................................................................... 5

    1.31    Period of Coverage .......................................................................................... 6

    1.32    Plan ................................................................................................................. 6

    1.33    Plan Administrator ........................................................................................... 6

| 1.34 | Plan Year | 6 |
| 1.35 | Premium-Based Plans | 6 |
| 1.36 | Reimbursement Plans | 6 |
| 1.37 | Sponsoring Company | 6 |
| 1.38 | Status Change | 6 |
| 1.39 | Trust | 6 |
| 1.40 | Uniformed Services | 6 |

ARTICLE 2 - ELIGIBILITY AND PARTICIPATION ........................................... 7

| 2.1 | Eligibility to Participate | 7 |
| 2.2 | Entry Date | 7 |
| 2.3 | Special Participation Provisions | 7 |
| 2.4 | Delay of Entry Date | 7 |
| 2.5 | Effective Date of Benefits | 7 |
| 2.6 | Carryforward of Benefit Elections | 8 |
| 2.7 | Termination of Participation | 8 |
| 2.8 | Participation During Leaves of Absence | 8 |
| 2.9 | Return After Leave of Absence (Enrollment Status) | 9 |

ARTICLE 3 - FUNDING OF BENEFITS ........................................... 10

| 3.1 | Contributions | 10 |
| 3.2 | Maximum Amount of Contributions | 10 |
| 3.3 | Refund of Contributions | 10 |
| 3.4 | Unused Benefits | 11 |

ARTICLE 4 - BENEFIT ELECTIONS ........................................... 12

| 4.1 | Benefits | 12 |
| 4.2 | Core Benefits | 13 |
| 4.3 | Description of Benefits | 13 |
| 4.4 | Election of Optional Benefits | 14 |
| 4.5 | Election Procedure | 14 |
| 4.6 | New Participants | 14 |
| 4.7 | Default Elections | 14 |
| 4.8 | Reduction of Certain Elections to Prevent Discrimination | 15 |
| 4.9 | Irrevocability of Election by the Participant During Plan Year | 15 |

iii

4.10    Altering Benefit Elections Due to Changes in Family Status ........................ 15

4.11    Altering Benefit Elections Due to Changes in Participant's
        Coverage ........................ 17

4.12    Altering Benefit Elections Due to Coverage Changes
        Under a Family Member's Plan ........................ 17

4.13    Altering Benefit Elections Due to Changes in Coverage Costs ........................ 17

4.14    Altering Elections for Court Ordered Coverage ........................ 18

4.15    Altering Elections for HIPAA Special Enrollments ........................ 18

4.16    Altering Elections Upon Medicare or Medicaid Entitlement ........................ 18

4.17    Altering Election Due to FMLA Leaves ........................ 18

4.18    Termination of Election ........................ 18

4.19    Automatic Termination of Elections ........................ 18

4.20    Continuation of Coverage ........................ 18

4.21    Continuation Coverage for Employees in the Uniformed
        Services ........................ 18


ARTICLE 5 - CLAIM PROCEDURES ........................ 19

5.1     Claims for Benefits ........................ 19

5.2     Plan Interpretation ........................ 19

5.3     Exhaustion of Administrative Remedies ........................ 19


ARTICLE 6 - ADMINISTRATION ........................ 20

6.1     Administrator ........................ 20

6.2     Delegation ........................ 20

6.3     Powers of Administrator ........................ 20

6.4     Records ........................ 20

6.5     Impartial Decisions ........................ 20

6.6     Resignation or Removal of Plan Administrators ........................ 20

6.7     Administrative Fees ........................ 20

6.8     Uniform Administrative Decision ........................ 20

6.9     Provision for Third-Party Plan Service Providers ........................ 20

6.10    Several Fiduciary Liability ........................ 21

6.11    Bonding ........................ 21

6.12    Payment of Administrative Expenses ........................ 21

6.13    Funding Policy ........................ 21

6.14    Source of Payments ........................ 21

6.15    Disbursement Reports .................................................................................. 21

6.16    Limit on Coverage ...................................................................................... 21

6.17    Committee Votes ........................................................................................ 21

6.18    Availability of Records .............................................................................. 21

6.19    Indemnification .......................................................................................... 21

6.20    ERISA Compliance .................................................................................... 21

6.21    Provisions Relating to Insurers .................................................................. 22

6.22    Definition of Insurer .................................................................................. 22

6.23    Conflicting Provisions ............................................................................... 22


ARTICLE 7 - AMENDMENT OR TERMINATION OF THE PLAN ....................... 23

7.1    Sponsoring Company's Right to Amend ...................................................... 23

7.2    Sponsoring Company's Right to Terminate .................................................. 23

7.3    Adoption of Plan by Subsidiary or Affiliate ................................................ 23

7.4    Withdrawal of Subsidiary or Affiliate from Plan ......................................... 23

7.5    Determination of Effective Date of Amendment
       or Termination ........................................................................................... 23


ARTICLE 8 - MISCELLANEOUS ........................................................................... 24

8.1    Not an Employment Contract ..................................................................... 24

8.2    Tax Treatment of Benefits .......................................................................... 24

8.3    Applicable Law .......................................................................................... 24

8.4    Post-Mortem Payments .............................................................................. 24

8.5    Nonalienation of Benefits .......................................................................... 24

8.6    Mental or Physical Incompetency ............................................................... 24

8.7    Inability to Locate Payee ............................................................................ 24

8.8    Requirement for Proper Forms .................................................................... 24

8.9    Headings .................................................................................................... 24

8.10    Incorporation by Reference ........................................................................ 25

8.11    Severability ................................................................................................ 25


EXHIBIT A - Core and Optional Benefits ................................................................. 26

EXHIBIT B - Flex Credits ....................................................................................... 29

EXHIBIT C - Cost of Coverage of Premium-Based Plans .......................................... 30

**PREAMBLE**

　　　Effective July 1, 1987, Northern Telecom Inc. (now "Nortel Networks Inc."), a Delaware corporation, (the "Sponsoring Company"), adopted the Northern Telecom Inc. Flexible Spending Account Plan. That plan has been amended on several occasions.  This amendment and restatement effective as of January 1, 2006 is entitled the "Nortel Networks FLEX Benefits Program".  It is intended to qualify as a "cafeteria plan" under Section 125 of the Internal Revenue Code of 1986, as amended. It is to be interpreted in a manner consistent with the requirements of Code § 125. The purpose of the Plan is to provide employees of the Sponsoring Company and other Employers a choice between cash and benefits under certain benefit plans maintained by the Sponsoring Company. The Plan will be operated in a "non-discriminatory" manner, as such term is used in Code § 125 and other applicable Code sections, as amended, and the Sponsoring Company shall take whatever steps as are necessary to maintain the Plan as "non-discriminatory" under said Code sections.

# ARTICLE 1

## DEFINITIONS

1.1     *Application of Terms.* Except to the extent the context of the Plan requires otherwise, the terms defined in this Article 1 shall have the meaning shown, singular nouns may include the plural, and the plural the singular, and the masculine gender may include the feminine and the neuter.

1.2     *AD&D Plan* means the employee benefit plan set forth in a separate plan document entitled the "Nortel Networks AD&D Insurance Plan", and as further amended from time to time, that describes the accidental death and dismemberment benefits provided under such plan.

1.3     *Annual Enrollment Period* means a period preceding the beginning of a Plan Year, as determined by the Plan Administrator each year, during which elections with regard to such Plan Year may be made pursuant to Section 4.4.

1.4     *Benefit Election* means the elections that a Participant may choose with respect to a Period of Coverage.   A Participant may register his elections by any such means as may be permitted by the Plan Administrator, which may include (if so approved by the Plan Administrator) completion of a written form, an electronic entry, or a voice registration by telephone.

1.5     *Benefits* means the benefits and coverages made available for election by a Participant under Section 4.1 as "Optional Benefits", plus the "Core Benefits" provided by the Employer under Section 4.2.

1.6     *Code* means the Internal Revenue Code of 1986, as amended from time to time. Reference to any section or subsection of the Code shall include reference to any comparable or succeeding provisions of any legislation which amends, supplements or replaces such section or subsection.

1.7     *Core Benefits* means the Benefits that are provided by the Employer to Participants without cost to the Participant, as described in Section 4.2 hereof and listed in Exhibit A hereof, which list may be amended by the Sponsoring Company in the manner provided in Section 7.1 hereof.

1.8     *Default Benefits* means the Benefits that are provided to a Participant who does not make a Benefit Election upon his initial enrollment in the Plan or during a subsequent Annual Enrollment Period (as applicable), as described in Section 4.7.   The Default Benefits for a Participant who does not make a Benefit Election during a subsequent Annual Enrollment Period are the options under the Premium-Based Plan Benefits that applied to the Participant for the immediately preceding Period of Coverage.   Provided, however, that if such options are no longer available, the Plan Administrator will designate substitute Default Benefits for such previously-elected options. Reimbursement Plan Benefits will not be provided as Default Benefits.

1.9     *Default Medical Plan Benefit* means the Medical Plan option that applies to a Participant who does not make a Benefit Election from among the Medical Plan options available at the time of initial enrollment in the Plan or during a subsequent Annual Enrollment Period.  The determination of the Default Medical Plan Benefit for the Participant who does not make an initial Benefit Election is described in Section 4.7.  The Default Medical Plan Benefit for a Participant who does not make a Benefit Election during a subsequent Annual Enrollment Period is the Medical Plan option that applied to the Participant for the immediately preceding Period of Coverage.   Provided, however, that if the Medical Plan option that previously applied to the Participant is no longer available as an option, the Plan Administrator will designate another option as the Default Medical Plan Benefit.

1.10    *Dental, Vision, and Hearing Care Plan* means the employee benefit plan set forth in a separate plan document entitled the "Nortel Networks Dental, Vision, and Hearing Care Plan", and as further amended from time to time.

1.11    *Dependent* means any of the following individuals, subject to additional limitations with respect to specific Benefits, as set forth in the plan documents for such Benefits:

2

For the Medical Plan and Dental, Vision and Hearing Care Plan coverage, Dependents include:

- The Participant's spouse, including a common-law spouse as recognized by applicable state law,
- The Participant's qualified Domestic Partner (qualified under Plan rules),
- The Participant's unmarried "children" and the Domestic Partner's unmarried "children" under the age of 19. "Children" of the Participant and/or the Domestic Partner includes:
  -- natural children and children legally adopted or placed for adoption,
  -- stepchildren, legally authorized foster children, and children for whom the Participant or Domestic Partner has responsibility as a legal guardian, if these children depend on the Participant for support and maintenance and live with the Participant in a regular parent-child relationship for at least six (6) months of the Calendar Year.
- children for whom the Participant is required to provide health coverage, as specified by a Qualified Medical Child Support Order (QMCSO). A QMCSO is an order or judgment from a court that directs the Plan Administrator to cover a child for benefits under a health care plan, i.e. the Medical Plan and/or the Dental, Vision and Hearing Care Plan.
- The Participant's unmarried "children" and the Domestic Partner's unmarried "children" between the ages 19 and 25 who are full-time students at an accredited school and are primarily supported by the Participant or the Domestic Partner, and
- The Participant's unmarried "children" and the Domestic Partner's unmarried "children" of any age who have a mental or physical disability that began before age 19 (or age 25 if they are a full-time student) and who are wholly dependent on the Participant or the Domestic Partner for support and maintenance and became dependent before age 19 (or age 25 if a full-time student).

For optional dependent life insurance under the Life Insurance Plan and the optional family AD&D insurance under the AD&D Plan, Dependents include the Participant's:

- spouse, including a common-law spouse (under state law)
- Children who are at least 14 days but less than 19 years old. "Children" include:
  - natural or legally adopted (or placed for adoption) Children;
  - step-Children, legally authorized foster Children, and any child for whom the Participant is legal guardian, if these Children depend on the Participant for support and maintenance and live with the Participant in a regular, parent-child relationship for at least six months of the Calendar Year.
- unmarried Children under age 25 who are registered full-time students at an accredited school and are primarily supported by the Participant, and
- eligible, unmarried, physically or mentally disabled Children age 19 or over who are Wholly Dependent on the Participant for support and maintenance and became disabled and Dependent before age 19 (or before age 25 if a full-time student). The Participant must provide notice of the disability to Global Employee Services within 31 days of the child turning age 19 for that child to be considered an eligible Dependent. If the child is over age 19, the child must have become incapacitated before age 19 *and* while covered under the plan to be considered an eligible Dependent.

For the Dependent Day Care Reimbursement Account Plan, a Dependent is:

- A person under the age of 13 who can be claimed by the Participant as a "dependent" for purposes of an exemption on the Participant's federal income tax return,
- A spouse or another person of any age who can be claimed by the Participant as a "dependent" for purposes of an exemption on the Participant's federal income tax return and who is physically or mentally unable to care for themselves. Incapacitated spouses and other dependents must regularly live in the Participant's household for at least eight (8) hours each day.

3

For the Health Care Reimbursement Account Plan, a Dependent is anyone the Participant may claim as a "dependent" for purposes of an exemption on the Participant's federal income tax return.  In addition, a Participant may claim reimbursement for expenses of others who meet all the requirements of a "dependent" except the gross income limits that apply to the definition of a "dependent" for federal income tax purposes.

The Participant's spouse or child may not be considered a Dependent under any Premium-Based Plan or Reimbursement Plan while on active duty in the armed forces of any country.  In addition, the Participant's spouse or child may not be considered a Dependent under any Premium-Based Plan or Reimbursement Plan if he or she is covered as an Employee.

1.12    _Dependent Day Care Reimbursement Account Plan_ means the employee benefit plan set forth in a separate plan document entitled the "Nortel Networks Dependent Day Care Reimbursement Account Plan", and as further amended from time to time.

1.13    _Disability Plan_ means the employee benefit plan set forth in a separate plan document entitled the "Nortel Networks Short-Term Disability and Long-Term Disability Plan," and as further amended from time to time.

1.14    _Domestic Partner_ means an unmarried individual of either gender who is certified by proof as required by the Plan Administrator (including an Affidavit of Domestic Partnership) to be:

- not married to anyone else,
- not related to the Participant by blood that would prohibit legal marriage in the state in which the Participant lives,
- the Participant's sole and exclusive partner whom the Participant publicly represents as the Domestic Partner,
- sharing in the Participant's financial obligations,
- living with the Participant and meeting all of the requirements listed above for at least 12 months immediately before the Participant certifies domestic partnership,
- mentally competent to consent to a contract, and
- age eighteen (18) or older.

1.15    _Effective Date_ of the Plan means July 1, 1987.  However, the Effective Date of this amendment and restatement of the Plan shall be January 1, 2006.

1.16    _Employee_ means any person who is recorded on the payroll records of an Employer as employed on a permanent (not temporary) basis working twenty (20) or more hours per week.  Employee also means "former employees" for the limited purpose of allowing continued eligibility for benefits hereunder for the remainder of the Plan Year in which an employee ceases to be employed by the Employer or as provided under a severance allowance plan or a severance agreement with the Employer, to the extent applicable.  "Employee" does not include any individual who performs services for an Employer as a Leased Employee or an independent contractor.  It does not include an individual whose terms and conditions of employment are governed by a collective bargaining agreement that does not provide for participation in the Plan.  The term "Employee" also does not include any individual who was not classified as an employee on the payroll records of an Employer, but is later reclassified by a court of law or a regulatory body as a common law employee of an Employer.  It does not include individuals employed by the Puerto Rican subsidiary of the Sponsoring Company.

1.17    _Employer_ means the Sponsoring Company and each additional company that is a member of a "controlled group of corporations" (as defined in Code section 414(b)) that includes the Sponsoring Company or any trade or business (whether or not incorporated) that is under common control (as defined in Code Section 414(c)) with the Sponsoring Company, and which has adopted this Plan by action of its duly elected Board of Directors, as constituted from time to time.

1.18    _Employment Commencement Date_ means the date on which an Employee first performs an hour of service for an Employer after the Effective Date of this Plan.

4

1.19     _Entry Date_ means the first day of a Period of Coverage for a Participant, as determined under Section 2.2 hereof.

1.20     _ERISA_ means the Employee Retirement Income Security Act of 1974, as amended.

1.21     _Flex Credits_ means the amount made available to each Participant by the Employer to be applied toward the purchase of Benefits under this Plan, in addition to the amount of any non-elective Employer contributions (as described in Section 3.1 hereof) and the amount of any Payroll Deduction Contributions elected by the Participant.  The amount of Flex Credits available to a Participant each Plan Year will be determined by the Plan Administrator.  The amount of such Flex Credits may be changed by the Sponsoring Company by adoption of an amendment to the Plan in the manner described in Section 7.1 hereof.

1.22     _Flex Earnings_ means base pay, except with respect to Participants who are eligible for sales incentives.  This remuneration is calculated before any salary reduction/deduction contributions are taken under any employee benefit plan the Employer maintains under Code sections 125 or 401(k).  It does not include reimbursed expenses or remuneration payable other than in cash.  It does not include other types of pay, including, but not limited to, overtime, shift differential or relocation payments, or bonuses.  With respect to a Participant who is a part-time Employee regularly working more than twenty (20) hours per week, Flex Earnings for purposes of the premium calculations on the Disability, Life Insurance and AD&D Plans are based on the number of hours the Participant is regularly scheduled to work.  Claim calculations for purposes of the Disability, Life Insurance and AD&D Plans are based on the number of hours a part-time Employee has averaged at work over the twelve (12) weeks immediately preceding the event which caused a Claim for benefits to be filed.  With respect to Participants who are eligible for sales incentives, Flex Earnings include base pay and target incentives paid at 100% annual objectives, as defined each year by the Employer (excluding bonuses).

1.23     _Health Care Reimbursement Account Plan_ means the employee benefit plan provided under a separate document entitled the "Nortel Networks Health Care Reimbursement Account Plan" and as further amended from time to time.

1.24     _Health Maintenance Organization ("HMO")_ means a health maintenance organization with which the Sponsoring Company has a contract, that provides medical benefits and services to Participants who elect such coverage as an option under the Medical Plan as described in Section 4.1(a).

1.25     _Leased Employee_ means any person who, pursuant to an agreement between an Employer and any other person ("Leasing Organization"), performs services for the Employer (or for the Employer and related persons determined in accordance with Code section 414(n)(6)) on a substantially full-time basis for a period of at least one (1) year and such services are performed under primary direction or control by the Employer, provided, however, that such person shall cease to be treated as a Leased Employee if he has failed to perform such services on a substantially full-time basis for a period of at least one (1) year following his initial designation as a Leased Employee.

1.26     _Life Insurance Plan_ means the employee benefit plan provided under an insurance policy issued by a life insurance company and further described in the separate plan document entitled the "Nortel Networks Life Insurance Plan", and as further amended from time to time.  The Life Insurance Plan includes employee life insurance, optional employee life insurance and optional dependent life insurance benefits.

1.27     _Medical Plan_ means the employee benefit plan provided under a separate plan document entitled the "Nortel Networks Medical Plan" and as further amended from time to time.

1.28     _Optional Benefits_ means all Benefits provided under the Plan that are not Core Benefits.  Optional Benefits are listed in Exhibit A hereto, which list may be amended by the Sponsoring Company in the manner provided in Section 7.1 hereof.

1.29     _Participant_ means each Employee who participates in the Plan in accordance with Article 2.

5

1.30    _Payroll Deduction Contributions_ means contributions made by a Participant on a pre-tax or after-tax basis, as applicable to the Benefit, to pay a required or elected cost of the Benefit.

1.31    _Period of Coverage_ means, with respect to each Participant, each Plan Year or portion of a Plan Year during which an Employee is a Participant.

1.32    _Plan_ means the Nortel Networks FLEX Benefits Program, as set forth herein, together with any and all amendments and supplements hereto.

1.33    _Plan Administrator_ means Nortel Networks Inc., provided that the Plan Administrator may delegate to certain persons, committees, and service providers the responsibility to perform certain plan administration duties described in this Plan.

1.34    _Plan Year_ means the annual accounting period of the Plan which is the twelve (12) consecutive month period beginning January 1 of each year and ending on December 31 of the same year.

1.35    _Premium-Based Plans_ means the AD&D Plan; the Dental, Vision and Hearing Care Plan; the Life Insurance Plan; the Medical Plan; and the Disability Plan.

1.36    _Reimbursement Plans_ means the Health Care Reimbursement Account Plan and the Dependent Day Care Reimbursement Account Plan.

1.37    _Sponsoring Company_ means Nortel Networks Inc.

1.38    _Status Change_ means an event described in Section 4.10.

1.39    _Trust_ means the Nortel Networks Health and Welfare Trust to which contributions for some of the Benefits may be directed from time to time and which holds, invests and disburses such assets pursuant to the trust agreement.

1.40    _Uniformed Services_ means the Armed Forces, the Army National Guard and the Air National Guard when engaged in active duty for training, inactive duty training, or full-time National Guard duty, the commissioned corps of the Public Health Service, and any other category of persons designated by the President of the United States in time of war or emergency.

## ARTICLE 2

## ELIGIBILITY AND PARTICIPATION

2.1     <u>Eligibility to Participate</u>.  Each Employee of an Employer shall be eligible to participate in the Plan as of any applicable Entry Date.

2.2     <u>Entry Date</u>.  Each eligible Employee shall, subject to the provisions of Sections 2.3, 2.4 and 2.5 hereof, initially become a Participant on the Employee's Employment Commencement Date.   Participation with regard to each Period of Coverage commencing after such date shall be effective as of January 1 of each Plan Year.  Provided, however, that the effective date of Benefits elected under this Plan shall be determined under the plan documents applicable to such Benefits and under Article 4 hereof.   A Participant's participation in elected Benefits may be altered during a Period of Coverage only in the limited circumstances described in Article 4 hereof as of the date specified in the applicable Section of Article 4.

2.3     <u>Special Participation Provisions</u>.

(a)     Both Spouses Are Employees.  If the Employee and the Employee's spouse (or Domestic Partner) are both Employees and are eligible to participate in the Plan, special rules apply for enrolling in the Medical Plan; Dental, Vision and Hearing Care Plan and, if applicable, Life Insurance and AD&D Plans.  An individual who is an Employee may be covered as a Participant or as a Dependent spouse (or Domestic Partner), but not both.  In addition, both the Participant and the Participant's spouse (or Domestic Partner) must select the same Medical Plan option in order for the combined expenses to apply to the family deductible or family out-of-pocket maximum under the Medical Plan.

If the Participant and the Dependent spouse (or Domestic Partner) have children together, only one may enroll the eligible Dependent Children.

(b)     Both Parent and Child are Employees.  A Participant's child (or the spouse's or Domestic Partner's child) will not be considered an eligible Dependent if such child is covered under the Plan as an Employee.

(c)     Domestic Partner Coverage Differences.   Dependent coverage for a Participant's Domestic Partner is available under the Medical Plan and Dental, Vision and Hearing Care Plan when the Participant's relationship with that person meets the Plan's eligibility requirements and when the Sponsoring Company has given written approval of the Affidavit of Domestic Partnership.   A Participant may also enroll child(ren) of the Domestic Partner if they meet the definition of an eligible Dependent.

However, special tax and legal considerations will apply when covering a Domestic Partner and/or the Domestic Partner's Child(ren).   The cost of the coverage for the Domestic Partner and/or Domestic Partner's Child(ren) will be paid on an after-tax basis and the Sponsoring Company's cost will be added to the Participant's gross earnings.

2.4     <u>Delay of Entry Date</u>.  If the Participant is not "actively at work" on the day enrollment or a coverage change would otherwise be effective, the first day of the Participant's Period of Coverage will be delayed until the Participant is back at active work.  The "actively at work" requirement will not apply in instances in which such requirement violates federal law.

Additionally, the effective date for coverage may be delayed for certain optional employee life and/or optional dependent life insurance selections under the Life Insurance Plan while an evidence of insurability determination is pending approval.

2.5     <u>Effective Date of Benefits</u>.  Provided that an Employee becomes a Participant on an Entry Date described in Section 2.2, the effective date of Benefits under the Plan with respect to such a Participant shall be determined as follows:

7

(a)    Entry Date is Employment Commencement Date.  If a new Employee submits a Benefit Election on or before his Employment Commencement Date, any Optional Benefits he chooses will be effective on his Employment Commencement Date.  Payroll Deduction Contributions reflecting those choices will begin with the first full pay cycle following his Employment Commencement Date.

If the Employee submits the Benefit Election within 31 days after his Employment Commencement Date, any Optional Benefits he chooses will be effective on the date the Plan Administrator receives the Benefit Election.  Payroll Deduction Contributions reflecting those choices will begin with the next pay cycle following the effective date of the Optional Benefit.

Core Benefits are effective on the Employee's Employment Commencement Date, without submission of a Benefit Election Form.

A new Employee will have company-paid coverage under the Medical Plan option designated by the Plan Administrator.  Such coverage shall be for the Employee and eligible Dependents for the first 31 days or up to the date the Employee makes an enrollment selection, whichever is first.

(b)    Default Benefit Effective Date.  If a new Employee does not submit a Benefit Election within 31 days after his Employment Commencement Date or Entry Date, he will not have Optional Benefits, except for the Medical Plan.  The Core Benefits will continue for the remainder of the Period of Coverage and the Default Medical Benefit will commence on the 32nd day after his Employment Commencement Date and continue for the remainder of the Period of Coverage.  Such an Employee may not enroll in Optional Benefits until an Annual Enrollment Period, or until the Employee experiences a Status Change or another event described in Sections 4.10 through 4.17.

(c)    Elections Made During the Annual Enrollment Period.  The Benefit elections made by a Participant during the Annual Enrollment Period become effective on the first day of the following Plan Year and remain in effect through the end of the Plan Year unless a new Election is made due to a Status Change or another event described in Sections 4.10 through 4.17.

If no Benefit Election is submitted during the Annual Enrollment Period, the Premium-Based Benefits that apply to the Participant as of the last day of the Plan Year continue with regard to the next Plan Year.  Any Reimbursement Benefits in effect for the Plan Year terminate on the last day of the Plan Year.

2.6    Carryforward of Benefit Elections.  Notwithstanding the elective provisions as to Benefits contained herein, it is provided that participation in any Premium-Based Benefit shall be automatic and mandatory for any Employee who has previously (during the last Annual Enrollment Period or during the initial Benefit Election period described in Section 4.6) elected Payroll Deduction Contributions for premiums for such Premium-Based Plan, unless the Employee has elected to cancel any such insurance coverage during the applicable Annual Enrollment Period.  The adjustments to any such Employee's taxable wages for such continuing coverage shall be deemed to have been consented to as of the first day of the Period of Coverage for which such election carryforward applies.

2.7    Termination of Participation.  A Participant will cease to be a Participant as of the earlier of (a) the date on which the Plan terminates, (b) the date on which his election pursuant to Article 4 hereof expires or is terminated, or (c) the date on which the Participant ceases to be an Employee eligible to participate under Section 2.1.

Notwithstanding any other provision herein, nothing contained in this Plan shall have the effect of negating the rights of any Participant, or beneficiary of any Participant, to continuation of medical-type benefits, as may otherwise be required by the Consolidated Omnibus Reconciliation Act ("COBRA") under Code Sec. 4980B, and the regulations thereunder, or by ERISA.

2.8    Participation During Leaves of Absence.

8

(a)    An Employee who is not at work because of an unpaid leave, or due to an unpaid period of duty in the Uniformed Services lasting more than thirty-one (31) days, may, at the Employee's option, continue any or all of the following Optional Benefits under the Plan that the Employee elected to continue during the period of absence, up to ninety (90) days, so long as the Employee continues to make any required contributions:

- Medical Plan
- Dental, Vision and Hearing Care Plan
- Life Insurance Plan
- AD&D Plan

The contributions are deducted from the Employee's first pay check after the Employee returns to work if the leaves if for less than thirty (30) days.  The contributions are paid on a monthly basis to a third party billing service if the leave is for thirty (30) days or more.

Core Benefits applicable to such Employee will continue during the ninety (90) day period described above without regard to the Employee's elections regarding his Optional Benefits.

(b)    An Employee who is absent from work for any paid leave of absence must continue any and all Benefits elected under this Plan, and Employee contributions for those Benefits will continue to be deducted from the Employee's paychecks during the absence.

2.9    <u>Return After Leave of Absence (Enrollment Status)</u>.  Each Employee whose participation in this Plan is interrupted due to an unpaid leave of absence shall be entitled to make a new election and become a Participant as of the first day of the next month following the Employee's return to active employment as an Employee.  If the Employee does not make an election upon return to active employment, the Employee will have Default Benefits which are the options under the Premium-Based Benefits that applied to the Participant at the time the leave of absence commenced.    The Reimbursement Benefits that applied to the Participant at the time the leave of absence commenced will not be provided as Default Benefits.

## ARTICLE 3

## FUNDING OF BENEFITS

3.1 <u>Contributions.</u> Each Participant will be permitted, at the Participant's sole discretion, to elect to reduce his Flex Earnings for a Plan Year and apply such amount to the purchase of Benefits under the Plan. The amount of the reduction in Flex Earnings for a Plan Year shall be equal to the Participant's share of the cost of the Premium-Based Plans which he elected to purchase which may be paid on a pre-tax basis, less the amount of Flex Credits available to the Participant, plus the amount the Participant elects to contribute to the Dependent Day Care Reimbursement Account Plan and the Health Care Reimbursement Account Plan, pursuant to the limitations of those plans. The Participant's share of the cost of the Premium-Based Plans shall be determined on a Plan Year basis by the Plan Administrator and set forth in Exhibit C hereto, subject to further amendment as described in Section 7.1 hereof.

The balance of the cost of the Premium-Based Benefits, if any, shall be paid by the Participant with after-tax contributions or by the Employer under this Plan with non-elective Employer contributions. The amount of a Participant's Flex Earnings which he elects to reduce and apply to the purchase of benefits shall be deducted from the Participant's Flex Earnings on a pro rata basis to be determined by the number of pay periods during the Plan Year for which the election applies.

Any Employee contributions required toward the purchase of the Benefits selected under Article 4 shall be made by a reduction in the Participant's taxable compensation (to the extent such benefits would be considered to be tax-free under Chapter 1 of the Code), and by after-tax salary deduction where the elected benefit is not tax-free, as indicated on the Participant's Benefit Election.

A Participant's Benefit Election made under this Article 3, or any revocation or modification thereof, shall not apply to compensation already actually or constructively received by such Participant.

3.2 <u>Maximum Amount of Contributions</u>. The maximum amount of elective contributions under the Plan for any Participant shall be the sum of the cost to the Participant of the most expensive benefits available to the Participant and his Dependents under the Premium-Based Plans, plus the maximum amount which the Participant may receive as reimbursements under the Dependent Day Care Reimbursement Account Plan and the Health Care Reimbursement Account Plan.

The maximum amount of Employer contributions under the Plan for any Participant shall be the cost from time to time of the most expensive benefits available to the Participant and his Dependents under the Premium-Based Plans, including the portion of such cost payable with non-elective Employer contributions.

3.3 <u>Refund of Contributions</u>. Before-tax contributions erroneously collected from a Participant shall be returned to such Participant, as follows:

(a) Not Caused by the Employee. Contributions erroneously collected from an Employee as a result of acts or omissions of the Sponsoring Company, the Employer or the Plan Administrator (or a representative of the Plan Administrator), their officers, employees or agent, shall be returned to the Participant as hereinafter provided. The amount returned to the Employee shall be:

(i) equal to the contributions that would not have been collected except for the administrative error, and further limited to amounts erroneously collected in the Plan Year in which the Plan Administrator, the Sponsoring Company, or the Employer was first informed of the administrative error.

(b) Caused by the Employee. Contributions erroneously collected from a Participant as a result of the failure of the Participant to inform the Plan Administrator of the loss or ineligibility of a spouse and/or dependent under Medical Plan or Dental,, Vision and Hearing Care Plan coverage provided under this Plan, and to make a corresponding Benefit Election change, shall be returned to the Employee as hereinafter provided. The amount returned to the Employee shall be:

10

       (i)      Equal to the contributions that would not have been collected had the Employee correctly and further adjusted his or her contribution amount in a timely manner and shall be limited to amounts erroneously collected in the Plan Year in which notice of loss or ineligibility was provided to the Plan Administrator by the Employee.

       Contributions which are returned to an Employee are subject to applicable local, state, and federal income tax withholding and all other applicable deductions.

    3.4    <u>Unused Benefits</u>.  No current or former Participant shall have any right or interest in unused amounts that have not been applied to the payment of benefits elected hereunder for that Plan Year.  Accordingly, any resulting excess of Participants' contributions over Benefits elected plus the reasonable administrative expenses will be refunded to the Employer after the close of the Plan Year.

# ARTICLE 4

## BENEFIT ELECTIONS

4.1     <u>Benefits.</u>  This Plan provides for coverage under one or more of the following Benefits, either as a Core Benefit or as an Optional Benefit that may be elected by the Participant:

(a)     Benefit options available to the Participant and his Dependents under the Medical Plan. Several medical coverage options are available as listed in Exhibit A as Optional Benefits and as further described under the separate, written Medical Plan.  Each Participant shall have the right to elect among the available options. Coverage may be elected on an employee-only basis, or on an employee-dependent basis, according to the terms and conditions contained in the Medical Plan document.  Each Participant may select the self-insured, insurance or HMO plan in which he wishes to participate, and specify in the Benefit Election the amount to be contributed for such benefit by Payroll Deduction Contribution.   The maximum amount that may be allocated for this Benefit is the amount necessary to provide the premium contribution for the coverage provided under such plan.  If such Benefit is pursuant to a plan offered by an insurance company or other third-party health provider, such Benefit Election will be provided by the Employer directly to the insurer or provider on the Participant's behalf.  In the event that premium increases become effective during the Plan Year, a Participant's Payroll Deduction Contribution amount shall be automatically adjusted to reflect such increases.

(b)     Benefit options available by election of the Participant to the Participant and his Dependents under the Dental, Vision, and Hearing Care Plan as listed in Exhibit A as Optional Benefits and further described in the Dental, Vision and Hearing Care Plan.  Each Participant shall have the right to elect among the available options. Coverage may be elected on an employee-only basis, or on an employee-dependent basis, according to the terms and conditions contained in the Dental, Vision and Hearing Care Plan document.  Each Participant may select the self-insured, insurance or HMO plan (if such options are made available) in which he wishes to participate, and specify in the Benefit Election the amount to be contributed for such benefit by Payroll Deduction Contribution.  The maximum amount that may be allocated for this Benefit is the amount necessary to provide the premium contribution for the coverage provided under such plan.  If such Benefit is pursuant to a plan offered by an insurance company or other third-party health provider, such Benefit Election will be provided by the Employer directly to the insurer or provider on the Participant's behalf.  In the event that premium increases become effective during the Plan Year, a Participant's Payroll Deduction Contribution amount shall be automatically adjusted to reflect such increases.

(c)     Benefit options available to the Participant under the Life Insurance Plan.  The Employer maintains a plan of group term life insurance, as defined in Code section 79, pursuant to a separate, written document under which benefits in the event of death are provided for the Participants and their Dependents.  Core Benefits and Optional Benefits provided under the Life Insurance Plan are listed in Exhibit A and further described in the Life Insurance Plan.  Each Participant electing to take or continue contributory coverage under such plan shall so indicate in the Benefit Election.  Any part of the premium paid by the Participant that is not free of current tax by virtue of Code section 79 solely because of the face amount of coverage on the life of the Participant shall be treated as if it were an election of a taxable benefit.  The maximum amount that may be allocated for this benefit is an amount equal to the premium that would otherwise be payable by the Participant for such group term life insurance.

(d)     Benefit options available to the Participant under the AD&D Plan as listed in Exhibit A and further described in the AD&D Plan.  The maximum amount that may be allocated for this benefit is the amount of premiums due during the Plan Year.

(e)     Benefit options available to the Participant under the Disability Plan.   The Employer maintains a contributory group accident and sickness plan within the meaning of Code section 106 pursuant to a separate, written document under which disability income continuation benefits are provided for the Participants. Core Benefits and Optional Benefits provided under the Disability Plan are listed in Exhibit A and further described in the Disability Plan.

(f)     Benefits available to the Participant and his Dependents under the Health Care Reimbursement Account Plan.  Pursuant to a separate, written document, the Employer maintains a self-funded Health Care Reimbursement Account Plan that is listed as an Optional Benefit under Exhibit A and further described

12

until the Health Care Reimbursement Account Plan.  Under such Plan, payment shall be made to the Participant in cash as reimbursement for health-related expenses (medical, dental, vision or hearing care) incurred by the Participant or his Dependents during the Plan Year for which the Participant's election is effective, which

> (1)    are not covered, paid or reimbursed from any other source;

> (2)    meet the criteria for tax-deductibility as a medical expense under Section 213 of the Code, as amended and the regulations thereunder; and

> (3)    have not been taken as a deduction from income on the Participant's federal income tax return in any tax year.

> Not more than the amount specified in the Participant's Benefit Election may be allocated for this Benefit during any Plan Year.

(g)    Benefits available to the Participant and his Dependents under the Dependent Day Care Reimbursement Account Plan as an Optional Benefit as listed in Exhibit A and further described in the Dependent Day Care Reimbursement Account Plan.  Pursuant to a separate, written document, the Employer maintains a Dependent Day Care Reimbursement Account Plan, established and maintained under Code section 129.  Under such plan, payment shall be made to the Participant in the form of an Employer-provided amount through, and in accordance with the provisions of, the Dependent Day Care Reimbursement Account Plan.  The maximum amount provided under this form of benefit during any Plan Year may not exceed the earned income of an unmarried Participant, or the lesser of the earned income of the Participant or the Participant's spouse, if married.  In no event may the annual benefit provided for any Participant during any Plan Year under this Section exceed Five Thousand Dollars ($5,000), or, if the Participant is married and files a separate tax return, Two Thousand Five Hundred Dollars ($2,500).  To receive benefits under this Section, the Participant must file a claim for benefits with the Plan Administrator that shall include substantiation of any such claim prior to being eligible to receive reimbursement for eligible dependent care expenses under this part.  The Plan Administrator shall be entitled to rely on any written statements made by the Participant or any of his or her dependents concerning compliance with Code sections 21 and 129, and shall be under no duty to investigate the accuracy of such statements.

(h)    Cash.  In lieu of the Benefits herein provided, to the extent that a Participant waives Benefits hereunder, such Participant shall be deemed to have elected to receive equivalent amounts as a taxable benefit in the form of cash compensation.

4.2    _Core Benefits_.  As of the Participant's Entry Date, the Participant shall be covered by the Core Benefits.  No Benefit Election is required for such coverage to commence.  Coverage under such Benefits may not be waived except to the extent that a Participant may elect a reduced level of coverage under the Life Insurance Plan, as indicated under the Optional Benefits choices in Exhibit A and further described in the Life Insurance Plan.

4.3    _Description of Benefits_.  While the election to receive one of the Optional Benefits described in Section 4.1 is to be made under this Plan, the benefits will not be provided by this Plan, but by the plans listed in Section 4.1. The types of benefits and amounts available under each option listed in Section 4.1, and the other terms and conditions of eligibility, coverage and benefits under each such option are as set forth from time to time in the Medical Plan; the Dental, Vision, and Hearing Care Plan); the Life Insurance Plan); the AD&D Plan; the Disability Plan; the Health Care Reimbursement Account Plan; and the Dependent Day Care Reimbursement Account Plan.

A statement of the cost of coverage under the Premium-Based Plans to the Employees is attached hereto as Exhibit C to the Plan.  Such statement is subject to amendment from time to time in the manner provided in Section 7.1 hereof.

The benefits described in the plan documents described above, as in effect from time to time, are hereby incorporated by reference into this Plan.

The Period of Coverage under each Optional Benefit shall be the Plan Year or portion of a Plan Year for which the Optional Benefit is elected (or for which a default election applies under Section 4.7).

13

4.4     Election of Optional Benefits.  A Participant may elect any of the Optional Benefits described under Section 4.1 or any combination thereof, in accordance with the procedures described in Section 4.5.  If a Participant elects an Optional Benefit described in Section 4.1(a), (b), (c), (d), or (e) then the Participant shall also agree to a contribution of his Flex Credits, a reduction in his Flex Earnings, or an after-tax contribution (as applicable) of an amount equal to the Participant's share of the cost of the elected benefit.  The amount of the reduction in the Participant's Flex Earnings and the Flex Credits shall be contributed by the Employer under the Premium-Based Plans elected, to cover the Participant's share of the cost of the benefits that is attributable to those sources, as determined by the terms of the Premium-Based Plans in question and the Plan Administrator on a year-to-year basis.

If a Participant elects a Benefit described in Section 4.1(f) or (g), the Participant's Flex Earnings will be reduced and an amount equal to the reduction will be credited to the Dependent Day Care Reimbursement Account Plan reimbursement account or the Health Care Reimbursement Account Plan reimbursement account established for the Participant, as applicable, in accordance with the applicable plan.

4.5     Election Procedure.  During the Annual Enrollment Period prior to the commencement of each Plan Year, the Plan Administrator shall make available one or more Benefit Election forms to each Employee who has previously become a Participant and to each other Employee who may become a Participant at the beginning of the Plan Year.  The Benefit Elections shall be effective as of the first day of the Plan Year following the Annual Enrollment Period.  Each Participant (who is a Participant during the current Plan Year) who desires coverage under a Benefit described in Section 4.1 for the next Plan Year shall, during the Annual Enrollment Period, submit any change of elections for the Premium-Based Plans and an election regarding the Reimbursement Plans by such methods as may be determined by the Plan Administrator and shall agree to a reduction in his Flex Earnings as provided in Section 4.4.

The elections made by the Participant shall, subject to Section 4.9, be effective for the entire Plan Year beginning on the first day of the Plan Year.  An Employee who is a Participant and who fails to submit new elections during the Annual Enrollment Period as required by this Section 4.5 shall be deemed to have elected to continue the same Benefits then in effect for such Participant under Sections 4.1(a), (b), (c), (d), and (e) (the Premium-Based Plans) and to have elected not to participate in the Benefits described under Sections 4.1(f) and (g) (the Reimbursement Plans) for the Plan Year following such Annual Enrollment Period.

An Employee who is not yet a Participant who fails to submit a Benefit Election pursuant to the terms of the Plan, shall be deemed to have elected the Default Benefits.  Each Benefit Election must be submitted to the Plan Administrator on or before such date as the Plan Administrator shall specify, which date shall be no later than the first day of the Plan Year for which the Participant's Benefit Election shall apply.

4.6     New Participants.  The Administrator shall provide the Benefit Election described in Section 4.5 to each person who becomes an Employee subsequent to the Effective Date of this Plan, or subsequent to the first day of any subsequent Plan Year, as soon as administratively possible following such person's Employment Commencement Date.  If the Employee desires Optional Benefit coverage described in Section 4.1 for the remainder of the Plan Year, he shall so specify on the Benefit Election, as provided in Section 4.5.

The Benefit Election must be completed and returned to the Plan Administrator on or before such date as the Plan Administrator shall specify, which date shall be no later than the first day of the first pay period for which the Participant's election is applicable. Provided, however, that if the Participant fails to submit the Benefit Election  within the thirty-one (31) day period beginning on his Employment Commencement Date, he shall be deemed to have made the elections as provided in Section 4.7.

4.7     Default Elections. A Participant failing to submit a Benefit Election to the Plan Administrator on or before the specified due date for the Plan Year (or portion of a Plan Year) in which he initially becomes a Participant, as provided in Section 4.6, shall be deemed to have elected as Default Benefits the Core Benefits listed in Exhibit A and Medical Plan benefits for the Participant alone under the Medical Plan option that the Plan Administrator designates as the default Medical Plan option for the Plan Year in which the Participant becomes a Participant (as described in Exhibit C).  Such Participant shall also be deemed to have elected against receiving any other Benefits.

14

A Participant failing to submit a Benefit Election on or before the specified due date for any subsequent Plan Year commencing after he becomes a Participant shall be deemed to have made the same election as was in effect on the last day of the preceding Plan Year with respect to the Premium-Based Plans.  Provided, however, that if the options previously elected are no longer available in the subsequent Plan Year, the Plan Administrator will specify a Default Benefit to be substituted for that option.  The Participant shall also be deemed to have agreed to Payroll Deduction Contributions for the subsequent Plan Year on either a before-tax or an after-tax basis (as applicable) and contributions of Flex Credits in an amount equal to the Participant's share of the cost of the Premium-Based Plans, if he is deemed to have elected such a benefit for such Plan Year.  Such Participant shall be deemed to have elected no coverage under the Reimbursement Plans.

4.8    <u>Reduction of Certain Elections to Prevent Discrimination</u>.  The Plan Administrator shall have the unilateral authority to reduce the Benefit Elections of certain Employees if such a reduction is necessary to prevent the Plan from becoming discriminatory within the meaning of Code section 125(b).  The Plan Administrator's power to reduce benefits extends to the following cases:

(a)    In the case that medical or dental expense reimbursement benefits have been elected by an Employee who is "Highly Compensated" within the meaning of Code Sec. 414(q);

(b)    In the case that Dependent Day Care Reimbursement Account Plan benefits have been elected by an Employee who is a highly compensated individual or an owner within the meaning of section 129 (d)(2) and (4) of the Code; or

(c)    In each other case of benefits elected, the Employee is considered to be "Highly Compensated" within the meaning of Code Sec. 125(e), or is otherwise a "Key Employee" within the meaning of Code Sec. 416(i)(1), and the regulations thereunder.

4.9    <u>Irrevocability of Election by the Participant During the Plan Year.</u>

(a)    Elections made under the Plan (including default elections under Section 4.7) shall be irrevocable by the Participant during the Plan Year, except as provided in Sections 4.10 through 4.17 below.

4.10    <u>Altering Benefit Elections Due to Changes in Family Status</u>

(a)    A Participant shall be entitled to change a previous benefit election by revocation or modification during a Plan Year in the event that the Participant experiences a "Status Change," subject to the further restrictions of this Section 4.10.

(b)    For this purpose, a "Status Change" is a change in an individual's eligibility for coverage under a Benefit plan sponsored by the Participant's Employer or another employer's plan due to at least one of the following:

(1)    the birth, death, adoption, change in legal custody or placement for adoption of one of a Participant's dependents;

(2)    the Participant's marriage, divorce, legal separation, annulment, rescinded divorce or the death or disability of the Participant's spouse, enrolled Domestic Partner or Dependent child;

(3)    a change in the Participant's employment status or the employment status of the Participant's spouse or a dependent (e.g., commencement or termination of employment, reduction or increase in work hours,  commencement of or return from an unpaid leave of absence, new worksite, etc.);

(4)    a change in an Employee's residency or the residency of an Employee's spouse or a Dependent if such change affects the availability of an option under the Medical Plan;

15

(5)     a change in the status of one of an Employee's dependents under a plan's eligibility criteria (attainment of a specified maximum age, enrollment in or graduation from school, and any similar circumstance);

(6)     Domestic Partner relationship becoming qualified for eligibility for Benefits under this Plan or termination of the Domestic Partner relationship.

(c)     The Status Changes enumerated in Section 4.10(b) may justify election changes with respect to Benefits offered under this Plan if the other requirements of this Section 4.10 are met.

(d)     A Participant otherwise entitled to submit a new prospective Benefit Election because of having experienced a Status Change must do so within thirty one (31) days of the date of the Status Change. However, any such election change is subject to the following restrictions and exceptions.

(1)     Such a Benefit Election change must be on account of and corresponding with a change in status listed in Section 4.10(b) that affects eligibility for coverage under an employer's plan.  For this purpose, the consistency rule is required to be applied only as provided in this paragraph in the following circumstances.  Accident or health coverage under the Plan may be canceled only for the affected spouse or dependent (and not for any other family members) when the change in status is 1) divorce, annulment, or legal separation; 2) death of a spouse or dependent; or 3) the dependent ceasing to satisfy eligibility requirements.  When an employee, spouse or dependent gains eligibility under another employer's plan due to change in marital or employment status, a new Benefit Election to decrease or cease accident or health coverage for that individual is consistent only if that individual's coverage under the other employer's plan is added or increased.

(2)     A Participant may not cancel coverage for an individual who has become eligible for coverage under another plan unless the individual actually becomes covered under the other plan.

(3)     With respect to the Life Insurance Plan or the Disability Plan, an election change following a change in marital status must correspond to either a resulting need to satisfy a coverage deficiency or to eliminate unnecessary coverage.

(4)     If a Participant, his spouse, or a dependent loses coverage under the health plan sponsored by the Participant's Employer and elects coverage continuation under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the Participant may increase any health plan contribution election under this Plan to pay for such coverage.

(5)     If a Participant files a new Benefit Election on account of and within thirty one (31) days of the Status Change, the effective date of the coverage change will be the date the Status Change occurred. Payroll deductions related to such new Benefit Election will change in the first paycheck for the first full pay period after the Benefit Election is received by the Plan Administrator and the total payroll deductions for the remainder of the Plan Year will equal cost of the Benefit elected for the remainder of the Plan Year measured from the date of the Status Change.

(6)     With respect to the Benefits that provide options regarding varying levels of Dependent coverage, i.e. Employee and Spouse, Employee and Child(ren), or Employee and Family, the Participant may file a Benefit Election change to change the Dependent coverage level only more than thirty one days after the date of a Status Change.  However, in that event, the Dependent coverage level change will become effective only upon the date of the Plan Administrator's receipt of the Participant's new Benefit Election and all other documentation of the Status Change that the Plan Administrator may require.  Such a Dependent coverage change will be permitted only if the Benefit Election change is submitted within twelve (12) months of the date the Status Change occurred and within the Plan Year in which the thirty one (31) day enrollment period following the Status Change occurred.

(7)     A Benefit Election change may be submitted on account of a Status Change only if the Participant possesses written documentation in the appropriate and applicable form that proves the occurrence of a Status Change.  A "Status Change Affidavit" confirming the occurrence of the Status Change must be submitted by the participant with the Benefit Election, In addition, the actual documentation of the Status Change event may be requested by the Plan Administrator at any time, including at the time the Participant submits the Benefit Election or at

16

any later date.  If such documentary proof is not provided at the time requested, the Plan Administrator may terminate the Participant's Benefit coverage that is related to the Benefit change, may terminate the Participant's Benefit coverage completely, may demand repayment of Benefits paid with respect to the Benefit coverage change, and/or may take legal action with respect to the Participant if the Plan Administrator reasonably believes that the Benefit Election change was not supported by an actual Status Change and if the Participant made an claim that such a Status Change had occurred.

        4.11      Altering Benefit Elections Due to Changes in Participant's Coverage.

        (a)      If coverage under any Benefit option offered under this Plan is significantly curtailed or terminated during the Plan Year, an affected Participant shall be permitted to change to coverage under another option providing similar coverage.  In this context, coverage under an accident or health plan is significantly curtailed only if there is an overall reduction in coverage that affects all Plan Participants.

        (b)      If the Plan adds or eliminates a benefit package or coverage option during the Plan Year, affected Participants may elect the new option or a replacement for a cancelled option to make corresponding election changes with respect to other options providing similar coverage (other than under the Health Care Reimbursement Account Plan).

        (c)      A Participant who terminates employment with a balance under the Health Care Reimbursement Account Plan may not reduce his coverage for the remainder of the Plan Year to the amount of premiums he had already paid and then suspend his remaining premiums.

        4.12      Altering Benefit Elections Due to Coverage Changes Under a Family Member's Plan.

        (a)      A Participant may make a mid-Plan Year prospective election change on account of (and consistent with) a coverage change under another qualified benefit plan or another Code section 125 plan sponsored by the employer of the Participant's Dependent if:

        (1)      the other Code section 125 plan or qualified benefit plan permits its' participants to make an election change that would be permitted under Section 4.10, 4.11, 4.13, 4.14, 4.15, 4.16, or 4.17 hereof; or

        (2)      the Participant's and the Dependent's plans have different plan years.

        (b)      The following coverage changes under such other plan will permit prospective election changes under this Plan during the Plan Year:

        (1)      loss of the other group health plan coverage (with respect to an Employee who declined coverage under the Plan due to having other coverage but not due to failure to pay premiums on a timely basis, voluntary dis-enrollment or termination for cause);

        (2)      loss of employer contribution toward the other group health plan coverage (with respect to an Employee who declined coverage under this Plan due to having other coverage); and

        (3)      loss of the other group health plan coverage when the other coverage was COBRA and the maximum COBRA coverage period ended.

        4.13      Altering Benefit Elections Due to Changes in Coverage Costs.

        (a)      If the cost of an Optional Benefit (other than a Health Care Reimbursement Account Plan, but including an insured or a self-insured arrangement providing conventional health insurance benefits) increases or decreases during a Plan Year, and so affects Participants' premiums for such Benefit, the Plan Administrator will automatically make a prospective adjustment, on a reasonable and consistent basis, in affected Participants' premiums.

17

(b)     If the cost that is charged to all Participants with respect to an Optional Benefit is significantly increased, each affected Participant shall be given the choice of either increasing the Payroll Deduction Contributions for that Benefit or electing another Optional Benefit providing similar coverage on a prospective basis.

4.14     <u>Altering Elections for Court Ordered Coverage</u>.  If a Participant's child who is the subject of a qualified medical child support order (QMCSO) pursuant to ERISA § 609 gains or loses coverage under any employer's plan, the Participant may change his elections in a manner that is consistent with an increase or decrease in the Participant's responsibility to provide health care coverage for such child.  For these purposes, a QMCSO is a judgment, decree or order issued by a court or a state administrative process with the force of law under which a child for whom an individual must provide child support is entitled to benefits under such individual's health plan.  Such an order must be submitted to and approved by the Plan Administrator as a QMSCO before it will be given effect under the Plan.

4.15     <u>Altering Elections for HIPAA Special Enrollments</u>.  If a Participant, his spouse, or any of his Dependents become covered under a group health insurance plan maintained by the Employer by reason of special enrollment rights arising under ERISA § 701(f), the Participant shall be permitted to make a prospective change to his health benefit election under this Plan consistent with the financial effect of the special enrollment.

4.16     <u>Altering Elections Upon Medicare or Medicaid Entitlement</u>.  If a Participant, his spouse, or a Dependent becomes enrolled for general benefits under Medicare or Medicaid (i.e., benefits in addition to pediatric vaccinations), the Participant shall be allowed to cancel coverage for such individual.  Alternatively, if the Participant, spouse, or Dependent loses coverage under Medicare or Medicaid, the Participant may make a prospective election to begin or increase coverage of that individual under the Participant's accident or health plan (as defined under Code section 105).

4.17     <u>Altering Elections Due to FMLA Leaves</u>.  A Participant who takes a Family Medical Leave Act leave shall have the right to make any election change under an Employer-sponsored group health plan option as may be provided for under FMLA.

4.18     <u>Termination of Election</u>.  A Participant may revoke a prior election upon terminating employment or taking an unpaid leave of absence.  Likewise, failure to make required contributions for any benefit elected under this Plan shall automatically terminate any prior election with respect to such benefit, unless delinquent contributions are brought current within thirty (30) days of the date that they became delinquent.  If revocation occurs under this Section, no new election may be made by such Participant during the remaining coverage period of the Plan Year.  If the Participant is rehired during the Plan Year, the elections made previously for that Plan Year will be reinstated immediately upon his rehire as an Employee.

4.19     <u>Automatic Termination of Elections</u>.  Elections made under this Plan (or deemed to have been made pursuant to Section 4.7) shall automatically terminate on the date upon which the Participant ceases to be a Participant in the Plan; although coverage or benefits under the Benefit plans may continue if and to the extent provided by such plans or by law.  In the event such a Participant again becomes a Participant before the end of the same Plan Year, the elections previously in effect for the Participant shall automatically be reinstated for the balance of the Plan Year.

4.20     <u>Continuation of Coverage</u>.  Each benefit plan made available under Article 4 that is considered to be a "group health plan" under Code Sec. 5000(b)(1) because employees and their families are provided with health care benefits within the meaning of Code Sec. 213(d)(1) shall contain the necessary provisions required by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), as set forth in Code Sec. 4980B and ERISA § 601, to assure that such benefits may be continued on or after the occurrence of the qualifying events defined in Code Sec. 4980B(f)(3) and ERISA § 603.

4.21     <u>Continuation Coverage for Employees in the Uniformed Services</u>.  For purposes of Section 4.20, an Employee who is absent from work for more than thirty-one (31) days in order to fulfill a period of duty in the Uniformed Services experiences a qualifying event as of the first day of the Employee's absence for such duty.  Such an individual and any of the individual's covered dependents shall be treated as any other qualified beneficiary under ERISA § 607(3) for all purposes of COBRA.

18

## ARTICLE 5

## CLAIM PROCEDURES

5.1     <u>Claims for Benefits.</u>  While the election to receive one of the Benefits listed in Section 4.1 is made under this Plan, the Benefits are not provided by this Plan, but by the Benefit plan in question, as listed in Section 4.1 hereof.  The terms and conditions of coverage and benefits as set forth in the Benefit plans will determine whether a claim for benefits under such claims will be granted or denied.  Any claims for Benefits must be submitted in accordance with the claims and appeals procedures of the plan documents for the applicable Benefit.

5.2     <u>Plan Interpretation.</u>  The Plan Administrator (and its delegate(s)), in carrying out its duties and responsibilities hereunder, shall have full and absolute power and discretion to construe any disputed or doubtful terms of the Plan, and to determine all questions relating to eligibility to participate and the eligibility for benefits under the Plan.  The decision of the Plan Administrator (and its delegate(s)) shall be binding under the Plan and upon all interested parties, including Participants and their Dependents, and will not be disturbed unless such decisions are arbitrary, capricious or contrary to law.

5.3     <u>Exhaustion of Administrative Remedies.</u>  No court action may be maintained against the Plan, the Plan Administrator or any other fiduciary until the claim procedures provided in this Article 5 have been exhausted.  Any claim for benefits filed in a court shall be determined based upon a review of the administrative record which was provided by the claimant to the Plan Administrator during the claim review process and all other records which were before the Plan Administrator when the claimant's claim was decided, and no person shall be entitled to a trial de novo before any court whereby the person is claiming entitlement to benefits under this Plan.

# ARTICLE 6

## ADMINISTRATION

6.1 <u>Administrator</u>.  The Sponsoring Company shall be the Plan Administrator unless its Board of Directors appoints another Plan Administrator.

6.2 <u>Delegation.</u>  The Sponsoring Company may delegate to any person or entity, or a Committee of two (2) or more persons, any or all of the responsibilities of the Plan Administrator.  Such a delegation shall be effective only if made in writing.

6.3 <u>Powers of Administrator</u>.  The administration of the Plan shall be under the supervision of the Plan Administrator. The Plan Administrator shall interpret and construe the provisions of the Plan, and shall have full and absolute power and discretion to decide any questions which may arise relative to the benefits or other rights of Participants, past and present, under the terms of the Plan, and, in general, shall have full and absolute power and discretion to direct the administration of the Plan.

6.4 <u>Records.</u>  The Plan Administrator shall maintain those records reasonably required for ascertaining the rights and interests of Participants under the Plan and for compliance with all reporting and disclosure requirements of federal law.  The Plan Administrator shall maintain records of decisions and interpretations affecting the rights and interests of Participants and may adopt written regulations, not inconsistent with the provisions of the Plan, governing any matter for which the Plan Administrator has responsibility and authority under the Plan.

6.5 <u>Impartial Decisions</u>.  Neither the Plan Administrator (if an individual) nor any committee member shall have any right to decide any matter relating solely to his individual rights or benefits under the Plan.  If the committee is acting as the Plan Administrator with respect to such a matter affecting a member of the committee, the decision regarding such issue will be made by the disinterested members or member of the committee.

6.6 <u>Resignation or Removal of Plan Administrators.</u>  The Plan Administrator and any member of a committee may resign by giving written notice to the Sponsoring Company not less than fifteen (15) days before the effective date of his resignation, and may be removed at any time, with or without cause, by the Sponsoring Company.  Upon resignation or removal of the Plan Administrator or any member of a committee, the Sponsoring Company may designate another to fill the vacancy.

6.7 <u>Administrative Fees.</u>  No fee or compensation shall be paid to the Plan Administrator for its services as the Plan Administrator, except to the extent the Sponsoring Company specifically agrees to pay same.  Any expenses properly incurred by the Plan Administrator or by a committee shall be reimbursed by the Sponsoring Company.

6.8 <u>Uniform Administrative Decision</u>.  All acts and decisions of the Plan Administrator which shall affect the benefits, rights or privileges of Participants, shall be uniform and nondiscriminatory so that all Participants in a similar situation shall be similarly treated.

6.9 <u>Provision for Third-Party Plan Service Providers</u>.  The Plan Administrator, subject to approval of the Board of Directors, may employ the services of such persons as it may deem necessary or desirable in connection with the operation of the Plan.  The Plan Administrator, the Employer (and any person to whom it may delegate any duty or power in connection with the administration of the Plan), and all persons connected therewith may rely upon all tables, valuations, certificates, reports and opinions furnished by any duly appointed actuary, accountant, (including Employees who are actuaries or accountants), consultant, third party administration service provider, legal counsel, or other specialist, and they shall be fully protected in respect to any action taken or permitted in good faith in reliance thereon.  All actions so taken or permitted shall be conclusive and binding as to all persons.

6.10    Several Fiduciary Liability.  To the extent permitted by law, neither the Plan Administrator nor any other person shall incur any liability for any acts or for failure to act except for his own willful misconduct or willful breach of this Plan.

6.11    Bonding.  Unless otherwise determined by the Board of Directors, or unless required by any Federal or State law, the Plan Administrator shall not be required to give any bond or other security in any jurisdiction in connection with the administration of this Plan.

6.12    Payment of Administrative Expenses.  All reasonable expenses incurred in administering the Plan, including but not limited to administrative fees and expenses owing to any third party administrative service provider, actuary, consultant, accountant, attorney, specialist, or other person or organization that may be employed by the Plan Administrator in connection with the Administration thereof, shall be paid by the Employer.

6.13    Funding Policy.  The Employer shall have the right to enter into a contract with one or more insurance companies for the purposes of providing any benefits under the Plan and to replace any of such insurance companies or contracts.  Any dividends, retroactive rate adjustments or other refunds of any type which may become payable under any such insurance contract shall not be assets of the Plan but shall be the property of, and shall be retained by the Employer.  All payments regarding covered Benefits shall be made directly to the Employer out of its general assets.  The Employers shall not be required to establish a special or separate fund or other segregation of assets to assure such payments, and, if the Employer shall make any investments to aid it in meeting its obligations hereunder, no individual shall have any right, title, or interest whatever in or to any such investments or any income or profits derived therefrom.  Nothing contained in the Plan, and no action taken in accordance with its provisions, shall create or be construed to create a trust of any kind between the Employer and any persons.  To the extent that any person acquires a right hereunder, such right shall be no greater than the right of an unsecured creditor of the Employer.  Notwithstanding the foregoing, in the event that the Plan Administrator determines, in its sole discretion, that the Plan is required by law to establish a trust for this purpose, any interest earned on amounts placed in such trust shall be used to pay administrative expenses of the Plan.

6.14    Source of Payments.  The Employer and any insurance company contracts purchased or held by the Employer or any Trust Fund held by the trustees of such Trust Fund shall be the sole sources of benefits due under the Plan.  No employee or beneficiary shall have any right to, or interest in, any assets of the Employer in connection with the benefits provided under the Plan either during participation in the Plan, or upon termination of participation, other than as provided in the Plan.

6.15    Disbursement Reports.  The Plan Administrator shall issue directions to the Employer concerning all benefits which are to be paid from the Employer's general assets pursuant to the provisions of the Plan.

6.16    Limit on Coverage.  Any coverage elected by a Participant under this Plan shall cease if the Participant fails to make any required contributions toward such coverage.

6.17    Committee Votes.  Decisions and actions of a committee may be by majority vote of the members present at a meeting or by writing signed by all members of the committee without necessity of a meeting.

6.18    Availability of Records.  The Plan Administrator will make available to each Participant such of its records under the Plan as pertain to him, for examination during normal business hours.

6.19    Indemnification.  The Sponsoring Company agrees to indemnify and to defend to the fullest extent permitted by law any Employee serving as the Plan Administrator or as a member of a committee (including any Employee or former Employee who formerly served as Plan Administrator or as a member of such committee) against all liabilities, damages, costs and expenses (including attorney's fees and amounts paid in settlement of any claims approved by the Sponsoring Company) occasioned by act or omission to act in connection with the Plan, if such act or omission is in good faith.

6.20    ERISA Compliance.  If, and to the extent the Plan is determined to be subject to ERISA, the Plan Administrator shall be a "named fiduciary" for purposes of Section 402(a)(1) of ERISA, with authority to control and

manage the operation and administration of the Plan, and shall be responsible for complying with all of the reporting and disclosure requirements of Part 1 of Subtitle B of Title I of ERISA.

6.21    <u>Provisions Relating to Insurers</u>.  No insurer shall be required or permitted to issue an insurance policy or contract that is inconsistent with the purposes of this Plan, nor be bound to take any action not in accordance with the terms of any policy or contract issued in connection with this Plan.  The insurer shall not be deemed to be a party to this Plan, nor shall it be bound to interpret the construction or validity of the Plan.  The insurer shall be protected from its good faith reliance on the written representations and instructions of the Plan Administrator, and shall not be responsible for the initial or continued status of the Plan.

6.22    <u>Definition of Insurer</u>.  "Insurer" means any legal reserve life insurance company authorized to transact business in the domicile state of the Plan.

6.23    <u>Conflicting Provisions</u>.  If any provision of any insurance policy or contract conflicts with the provisions of this Plan, the provisions of the Plan shall prevail.

# ARTICLE 7

# AMENDMENT OR TERMINATION OF THE PLAN

7.1     <u>Sponsoring Company's Right to Amend</u>.  The Sponsoring Company reserves the right to amend the Plan at any time and from time-to-time, and retroactively if deemed necessary or appropriate to meet the requirements of Code Sec. 125, or any similar provisions of subsequent revenue or other laws, or the rules and regulations from time to time in effect under any of such laws or to conform with governmental regulations or other policies, to modify or amend in whole or in part any or all of the provisions of the Plan; provided, however, that, subject to Section 3.4, no such modification or amendment shall make it possible for any Reimbursement Plan account balance to be used for, or diverted to, purposes other than for the exclusive benefit of the Participants and their beneficiaries under the Plan.  Any amendments to this Plan may be effected by a written resolution adopted by a majority of the Board of Directors of the Sponsoring Company.

7.2     <u>Sponsoring Company's Right to Terminate</u>.  The Sponsoring Company reserves the right to discontinue or terminate the Plan without prejudice at any time without prior notice.  Termination of the Plan shall be effected by a written resolution adopted by a majority of the Sponsoring Company's Board of Directors.  Furthermore, the Plan will also automatically terminate if the Sponsoring Company (1) is legally dissolved, (2) makes a general assignment for the benefit of its creditors, (3) files for liquidation under the Bankruptcy Code, (4) merges or consolidates with any other entity and it is not the surviving entity, or if it sells or transfers substantially all of its assets, or goes out of business, unless the Sponsoring Company's successor in interest agrees to assume the liabilities under this Plan as to the Participants and Dependents.

7.3     <u>Adoption of Plan by Subsidiary or Affiliate</u>.  The Plan may be adopted by a subsidiary or affiliate of Nortel Networks Inc. which the Plan Administrator authorizes to adopt the Plan and which, by appropriate corporate action, adopts the Plan.  In such event, the Plan Administrator may determine the effective date of the Plan as to any such subsidiary or affiliate and each such subsidiary or affiliate shall thereupon be included within the term "Employer".  The Plan Administrator may also determine the terms and conditions upon which any such subsidiary or affiliate may adopt the Plan.

7.4     <u>Withdrawal of Subsidiary or Affiliate from Plan</u>.  An adopting Employer reserves the right to terminate the Employer's participation in the Plan with regard to its Employees at any time.  Such action shall be effected by a written resolution adopted by a majority of the Employer's Board of Directors.  Furthermore, the Plan will also automatically terminate if the Employer (1) is legally dissolved, (2) makes a general assignment for the benefit of its creditors, (3) files for liquidation under the Bankruptcy Code, or (4) ceases to be a member of the controlled group of corporations of the Sponsoring Company as described in Section 1.17 hereof.  Any Employer that has failed to meet its current costs of the Plan shall withdraw upon the request of Nortel Networks Inc.  Each such subsidiary or affiliate shall thereupon cease to be included with the term "Employer".

The Plan Administrator (or the representative of the Plan Administrator) shall update Exhibit L as necessary to reflect the withdrawal of any such subsidiary or affiliate.

7.5     <u>Determination of Effective Date of Amendment or Termination</u>.  Any such amendment, discontinuance or termination shall be effective as of such date as the Board of Directors shall determine.  Subject to Section 3.4, no amendment, discontinuance or termination shall allow the return to any Employer of any Reimbursement Plan account balance nor its use for any purpose other than for the exclusive benefit of the Participants and their beneficiaries.

# ARTICLE 8

# MISCELLANEOUS

8.1     <u>Not an Employment Contract</u>.  Nothing provided in the Plan shall be construed as giving any Participant the right to be retained in the service of the Employer, or upon dismissal or involuntary termination of employment, to have any right or interest in the Plan other than as expressly provided herein.

8.2     <u>Tax Treatment of Benefits</u>.  Neither the Plan Administrator nor the Employer makes any commitment or guarantee that any amount paid to or for the benefit of a Participant under any of the Benefits, or amounts contributed for the purchase of the Benefits, will be excludable from the Participant's gross income for federal or state income tax purposes, or that any other federal or state tax treatment will be applied to or be available to any Participant.  It shall be the obligation of each Participant to determine whether any benefit that he receives is excludable from the Participant's gross income for federal and state income purposes and to notify the Employer if the Participant has reason to believe that any such payment is not so excludable.

8.3     <u>Applicable Law.</u>  To the extent not preempted by ERISA, this Plan shall be construed, administered and enforced according to the laws of the State of Tennessee.

8.4     <u>Post-Mortem Payments</u>.  Any Benefit payable under the Plan after the death of a Participant shall be paid in accordance with the applicable Benefit plan document.

8.5     <u>Nonalienation of Benefits</u>.  No benefit under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt to do so shall be void.  No benefit under the Plan shall in any manner be liable for or subject to the debts, contracts, liabilities, engagements or torts of any person.  If any person entitled to benefits under the Plan becomes bankrupt or attempts to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge any benefit under the Plan, or if any attempt is made to subject any such benefit to the debts, contracts, liabilities, engagements or torts of the person entitled to any such benefit, except as specifically provided in the Plan, then such benefit shall cease and terminate at the discretion of the Plan Administrator, and he may hold or apply the same or any part thereof for the benefit of any Dependent or beneficiary of such person, in such manner and proportion as he may deem proper.

8.6     <u>Mental or Physical Incompetency</u>.  If the Plan Administrator determines that any person entitled to payments under the Plan is incompetent by reason of physical or mental disability, he may cause all payments thereafter becoming due to such person to be made to any other person for his benefit, without responsibility to follow the application of amounts so paid.  Payments made pursuant to this Section shall completely discharge the Plan Administrator and Employer from further liability hereunder.

8.7     <u>Inability to Locate Payee</u>.  If the Plan Administrator is unable to make payment to any Participant or other person to whom a payment is due under the Plan because he cannot ascertain the identity or whereabouts of such Participant or other person after reasonable efforts in accordance with a policy developed by the Plan Administrator have been made to identify or locate such person (including a notice of the payment so due) mailed to the last known address of such Participant or other person as shown on the records of the Employer), such payment and all subsequent payments otherwise due to such Participant or other person shall be forfeited.   Such forfeited amounts shall be returned to the Employer or shall be escheated to the applicable State if such State's escheat laws are applicable to the forfeited amount.

8.8     <u>Requirement for Proper Forms</u>.  All communications in connection with the Plan made by a Participant shall become effective only when duly executed on any forms as may be required and furnished by, and filed with, the Plan Administrator.

8.9     <u>Headings</u>.  The Article and Section headings contained herein are for convenience or reference only, and shall not be construed as defining or limiting the matter contained thereunder.

24

8.10    <u>Incorporation by Reference</u>.  The actual terms and conditions of the separate Benefits offered under this Plan are contained in separate, written documents governing each respective benefit, and shall govern in the event of a conflict between the individual plan document and this Plan as to substantive content.  To that end, each such separate document, as amended or subsequently replaced, is hereby incorporated by reference as if fully recited herein.

8.11    <u>Severability</u>.  Should any part of this Plan subsequently be invalidated by a court of competent jurisdiction, the remainder thereof shall be given effect to the maximum extent possible.

IN WITNESS WHEREOF, the Sponsoring Company has caused this Plan to be signed by its duly authorized officer or representative on this _____ day of _____, 2006.

**NORTEL NETWORKS INC.**

**By:** _____

**Title:** _____

**EXHIBIT A**

**CORE AND OPTIONAL BENEFITS**

<u>**Core Benefits**</u>

The following Core Benefits are provided automatically to **the Participant only**:

**Short-Term Disability**
- 100% of FLEX Earnings for up to 6 weeks, then 66-2/3% for up to the next 20 weeks

**Long-Term Disability**
- 55% of FLEX Earnings

**Employee Life Insurance**
- 1 X FLEX Earnings for you only

**Employee Assistance Program (EAP)**

<u>**Optional Benefits**</u>

The Participant may supplement or replace Core Benefits with choices from the following Optional Benefits:

**Medical** (Employee and Dependents (as defined under Section 1.11 for purposes of the Medical Plan))
*Network Area:*
- No Coverage
- Preferred Provider Organization (PPO) Options—80/60 and 90/70 options
- Exclusive Provider Organization (EPO) Option (where available)
- Health Maintenance Organization (HMO) Option (where available)

*Non-Network Area:*
- No Coverage

26

- Out-Of-Area Comprehensive Option
- Health Maintenance Organization (HMO) Option (where available)

**Dental, Vision and Hearing Care** (Employee and Dependents (as defined under Section 1.11 for purposes of the Dental, Vision and Hearing Care Plan))
- No Coverage
- Comprehensive
- Plus

**Disability** (Employee)
- Short-Term: Raise Core Benefit to 90%
- Long-Term: Raise Core Benefit to 66-2/3%

**Life Insurance** (Employee and  Dependents (as defined under Section 1.11 for purposes of the Life Insurance Plan))
- Employee:
  - No Coverage
  - $50,000
  - 1-5 X FLEX Earnings
- Spouse:
  - No Coverage
  - $10,000
  - $25,000
  - $50,000
  - $75,000
  - $100,000

- Child(ren):
  - No Coverage
  - $5,000
  - $10,000
  - $15,000

**Accidental Death & Dismemberment Insurance** (Employee and Dependents (as defined under Section 1.11 for purposes of the AD&D Plan))

27

- Employee:
  - o   No Coverage
  - o   1-5 X FLEX Earnings
- Family:
  - o   No Coverage
  - o   Family Coverage with benefits of a lesser percentage of the Employee benefit

**Reimbursement Accounts**
- No contribution
- Health Care Reimbursement Account: $120 - $5,200/year
- Dependent Day Care Reimbursement Account: $120 – up to $5,000/year (depending on Internal Revenue Code restrictions)

28

**EXHIBIT B**

**FLEX CREDITS**

$20.79 bi-weekly ($540.67 annual total) as of January 1, 2006.

$20.79 bi-weekly ($540.67 annual total) as of January 1, 2007.

**EXHIBIT C**

**COST OF COVERAGE OF PREMIUM-BASED PLANS**

The cost of coverage for each  Plan Year is set forth in the attached Enrollment Forms for Benefits.

The default Medical Plan coverage for each Plan Year is identified in the attached Enrollment Forms for Benefits.

31