**Exhibit F**

# NORTEL NETWORKS

# WELFARE BENEFITS PLAN

TABLE OF CONTENTS

Page

ARTICLE I      GENERAL TERMS AND CONDITIONS..................................................................1
  Section 1    Purpose .........................................................................................................1
  Section 2    Definitions......................................................................................................1
  Section 3    General ...........................................................................................................2

ARTICLE II     SECTION 125 CAFETERIA PLAN ..........................................................................7
  Section 1    General...........................................................................................................7
  Section 2    Eligibility .......................................................................................................7
  Section 3    Irrevocable Elections ...................................................................................7
  Section 4    Additional Required Terms ........................................................................7

ARTICLE III    HEALTH BENEFIT PROGRAMS .............................................................................7
  Section 1    Health Benefit Programs .............................................................................7
  Section 2    HIPAA Privacy and Security Standards.....................................................7
  Section 3    Family and Medical Leave Act ..................................................................9
  Section 4    COBRA............................................................................................................9
  Section 5    USERRA ........................................................................................................10
  Section 6    Qualified Medical Child Support Order Procedures............................10
  Section 7    Medicaid .......................................................................................................10
  Section 8    Coverage of Dependent Children in Case of Adoption.......................10
  Section 9    HIPAA Portability and Nondiscrimination Requirements.................11
  Section 10   Newborn and Mothers Health Protection Act .......................................11
  Section 11   Mental Health Parity Act ..........................................................................12
  Section 12   Women's Health and Cancer Rights Act .................................................12
  Section 13   Subrogation and Recovery ........................................................................12
  Section 14   Coordination of Benefits ...........................................................................12
  Section 15   Claims Procedures ......................................................................................13

ARTICLE IV     FULLY INSURED BENEFIT PROGRAMS .............................................................14
  Section 1    General...........................................................................................................14
  Section 2    Claims Procedures ......................................................................................14

M PRO 1969476 v3
2789126-000005

# ARTICLE I

## GENERAL TERMS AND CONDITIONS

**Section 1        Purpose**

This Nortel Networks Welfare Benefits Plan is maintained for the purpose of providing the employee welfare benefits listed herein for the benefit of the Employer's eligible employees and dependents.  It is intended that the Plan encompass as a single ERISA welfare benefit plan the various elements of an overall welfare benefit program which are funded in whole or in part through the Nortel Networks Health & Welfare Benefits Trust, which constitutes a voluntary employees' beneficiary association ("VEBA") for tax law purposes, This Plan, together with the governing documents for each element program described on Appendix A constitutes the written plan document required by ERISA § 402(a), and is an employee welfare benefit plan (within the meaning of ERISA § 3(l)).  Some or all of the benefit programs may be offered through a cafeteria plan arrangement under Code § 125.

**Section 2        Definitions**

The following capitalized terms shall have the meanings set forth below.

2.1        "Administrator" means the Company or such other person or committee as may be appointed from time to time by the Company to supervise the operation and administration of the Plan. The Administrator shall be the "named fiduciary" under the Plan.  However, discretionary authority to make the final fiduciary decision about claims determinations may be delegated to an Insurer or a Claims Administrator.

2.2        "Benefit Program" means an arrangement providing employee welfare benefits (within the meaning of Section 3(l) of ERISA), maintained or established by the Company or an Employer, which is a part of this Plan; provided, neither a Cafeteria Plan Arrangement nor a flexible spending account offering dependent care or adoption assistance expense reimbursements shall be deemed to be an employee welfare benefit plan.  The Benefit Programs that are a part of this Plan are listed in Appendix A.

2.3        "Cafeteria Plan Arrangement" means a Benefit Program that meets the requirements of Internal Revenue Code § 125, and pursuant to which an Employee can choose between cash or other taxable benefits and the Benefit Programs on a non-taxable basis.

2.4        "Claims Administrator" means the person or entity designated by the Administrator in accordance with Section 3.1 of this Article I to manage the payment of claims under a Benefit Program.  If authority and responsibility to determine adverse claims determinations (within the meaning of ERISA § 503) is delegated by the Administrator to the Claims Administrator, the Claims Administrator shall act as claims fiduciary.

2.5        "Code" means the Internal Revenue Code of 1986, as amended.

2.6        "Company" means Nortel Networks Inc. and any successor corporation resulting from a merger or consolidation with the Company or transfer of substantially all of the assets of the Company, if such successor or transferee shall adopt and continue the Plan.

2.7        "Dependent" means any person eligible for dependent coverage under a Benefit Program.

2.8        "Employee" means each common-law employee of an Employer who is eligible to become a Participant under a Benefit Program which is a part of this Plan.  Except to the extent specifically provided otherwise in the Governing Documents of a Benefit Program, "Employee" shall not include any individual designated or considered by an Employer as an independent contractor; a leased

1

employee within the meaning of Code § 414(n); or a temporary or seasonal employee; even if such designation is found to be in error by a court or administrative agency of competent jurisdiction.

2.9     "Employer" means an entity, including the Company, that adopts the Plan for the benefit of its eligible Employees, and the Dependents of such Employees, as provided in Section 3.6 of this Article I. Employers other than the Company may participate in the Plan with the consent of the Company.  Participating Employers are listed on Appendix B to the Plan.

2.10    "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and the applicable regulations and rulings thereunder.

2.11    "Fully Insured Benefit Program" means a Benefit Program that provides benefits solely under an insurance contract or policy, which benefits are paid directly to or on behalf of the Participant.

2.12    "Governing Documents" means, with respect to a Benefit Program and as applicable, the insurance contracts, certificates of coverage, summary plan description and any other document which governs the terms of the Benefit Program.

2.13    "Health Benefit Program" means a Benefit Program which is a group health plan and which provides benefits for health care (directly or otherwise) to Employees, former Employees, and their families, as provided under the terms of such Health Benefit Program.

2.14    "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, as amended, and the applicable regulations and rulings thereunder.

2.15    "Insurer" means the insurance company issuing the contract or policy with respect to a Fully Insured Benefit Program.

2.16    "Participant" means any individual (including a Dependent) who is enrolled in and participates in a Benefit Program in accordance with Section 3.2 of this Article I.

2.17    "Plan" means this Nortel Networks Welfare Benefits Plan and the covered Benefit Programs, as described herein.

2.18    "Plan Year" means the calendar year.

2.19    "Program Year" means the calendar year.

**Section 3       General**

3.1     **Administration of Plan and the Benefit Programs**.   The Administrator shall be responsible for the general administration of the Plan, including the Benefit Programs, and shall be the "plan administrator" and "named fiduciary" within the meaning of ERISA under the Plan and the Benefit Programs (except to the extent another person or entity is specifically designated in the Governing Documents to perform fiduciary functions); provided, however, for Fully Insured Benefit Programs, unless specifically provided otherwise in the Governing Documents, the Insurer shall be the "named fiduciary," and claims fiduciary responsible for administering and determining benefits under such Benefit Program, and shall have full authority and discretion to interpret the terms of the Benefit Program for those purposes.  With respect to the Plan, including the Benefit Programs, the Administrator shall have, without limitation, the following discretionary authority, duties and powers:

(a)     To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan, including the establishment of any claims procedures that may be required by applicable provisions of law;

2

(b)     Except to the extent reserved to the Insurer with respect to a Fully Insured Benefit Program or to a Claims Administrator with respect to a Benefit Program under which the Governing Documents so delegate such authority, to interpret the provisions of the Plan, make findings of fact, and correct errors in, supply omissions from, and resolve inconsistencies or ambiguities in the language of the Plan, and to decide all claims and appeals arising under the Plan;

(c)     To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan;

(d)     To appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan; and

(e)     To allocate and delegate its fiduciary and administrative responsibilities under the Plan and to designate other persons to carry out any of its responsibilities under the Plan, any such allocation, delegation, or designation to be in writing.  Without limitation, the Administrator may designate other organizations or persons (who also may be employed by an Employer) to carry out the following:

(1)     pursuant to an administrative services or claims administration agreement, the responsibility for administering and managing a Benefit Program or Programs, including the processing and payment of claims under the Program and the recordkeeping related thereto;

(2)     the responsibility to prepare, report, file and disclose any forms, documents and other information required to be reported and filed by law with any government agency or to be prepared and disclosed to Employees, Participants or other persons entitled to disclosure under the Benefit Programs; and

(3)     the responsibility to review claims or claim denials under the Benefit Programs, including discretionary authority to act as claims fiduciary to determine adverse claims determinations within the meaning of Department of Labor Regulation § 2560.503-1.

Subject to applicable law, any interpretation of the provisions of the Plan and the Benefit Programs and any decisions on any matter within the discretion of the Administrator made by the Administrator in good faith shall be binding on all persons.  A misstatement or other mistake of fact shall be corrected when it becomes known, and the Administrator shall make such adjustment on account thereof as it considers equitable and practicable.  The Administrator shall not be liable in any manner for any determination of fact made in good faith.  This paragraph shall also apply to the interpretations and decisions of an Insurer or a Claims Administrator to the extent that authority to make discretionary decisions has been delegated to such Insurer or Claims Administrator by a Governing Document.

3.2     **Eligibility.**  Each Employee (and his or her Dependents) will become Participants, and will be eligible for the benefits provided by the Plan, solely in accordance with the terms of the Benefit Program, including any enrollment and premium payment requirements, applicable to the group or classification of Participants of which a Participant is a member.  Participation in a Benefit Program will cease in accordance with the terms of such Benefit Program.  Participation in the Plan will cease upon termination of the Plan or upon amendment of the Plan to exclude a group or classification of which a Participant is a member.

Retired Employees are not eligible to participate in the Plan, except as may be specifically provided under the terms of a Benefit Program.

Former Participants will become Participants again if and when they meet the eligibility requirements of the applicable Benefit Program.

M PRO 1969476 v3
2789126-000005

3.3      **Benefits**.   The benefits provided under the Plan for each group or classification of Participants are those set forth in the Governing Documents for the applicable Benefit Program.

3.4      **Contributions.**

(a)      Employer Contributions.  For each Plan Year, each Employer shall make such contributions under the Benefit Programs in such amounts and at such times as the Company shall determine are appropriate to fund the Benefit Programs.  Benefits may also be provided through a VEBA funded in whole or part by Employer contributions.

(b)      Employee Contributions.  As a condition of eligibility under a Benefit Program, a Participant may be required to make contributions, in amounts and at times specified by the Company and the applicable Benefit Program, applicable to the coverage option selected and the group or classification of Participants of which such Participant is a member.  Such contribution requirements may be adjusted from time to time.  Contributions shall be made in such manner as the Administrator shall specify.

3.5      **Amendment and Termination.**

(a)      Amendment.  The Company reserves the right to amend any part or all of the Plan or a Benefit Program at any time or from time to time by written instrument.

(b)      Termination.  The Company reserves the right to terminate the Plan or a Benefit Program at any time by written instrument.  The Plan or Benefit Program, as applied to any single Employer, may be terminated at any time by such Employer, subject to consent of the Company.

3.6      **Additional Employers.**   Any affiliate of the Company may, with the consent of the Company, adopt the Plan and become an Employer hereunder, and designate any one or more existing plans or programs as a Benefit Program, applicable to its Employees or a group of its Employees or establish one or more Benefit Programs as applicable to such Employees.

3.7      **Discrimination.**   To the extent any provision of ERISA, the Code or other applicable law or regulation prohibits discrimination in eligibility, benefits or other feature of a Benefit Program, the Administrator reserves the right to adjust, terminate or otherwise modify the terms and operation of the Benefit Program to the extent necessary to avoid, reduce or eliminate such discrimination.

3.8      **Claims Procedures.**

(a)      Claims.  All claims for benefits under the Plan and any assignment of benefits to a provider shall be made, processed and paid in accordance with Department of Labor Regulations § 2560.503-1 and the terms and conditions of the applicable Benefit Program and the related provisions of the summary plan description for such program.  The Administrator shall be the claims fiduciary unless this function is delegated to another person or entity under this Section 3.

(b)      No Estoppel of Plan.  No person is entitled to any benefit under the Plan except and to the extent expressly provided under the terms and conditions of the applicable Benefit Program. The fact that payments have been made from the Plan in connection with any claim for benefits does not (a) establish the validity of the claim; (b) provide any right to have such benefits continue for any period of time; or (c) prevent the Plan from recovering the benefits paid to the extent that the Administrator determines that there was no right to payment of the benefits under the Plan.  Thus, if a benefit is paid and it is thereafter determined that such benefit should not have been paid (whether or not attributable to an error by the Participant or any other person), then the Administrator may take such action as it deems necessary or appropriate to remedy such situation, including without limitation, by deducting the amount of any overpayment theretofore made to or on behalf of such Participant from any succeeding payments to or on behalf of such Participant under the Plan or from any amounts due or owing to such Participant

M PRO 1969476 v3
2789126-000005

by the Company or under any other plan, program or arrangement benefiting the Employees or former Employees of the Company, or otherwise recovering such overpayment from whomever has benefited from it.

If the Administrator determines that an underpayment of benefits has been made, then the Administrator shall take such action as it deems necessary or appropriate to remedy such situation.

3.9    **Miscellaneous**

(a)    <u>Information to be Furnished by Participants</u>.  Participants under the Plan must furnish the Administrator with such evidence, data or information as the Administrator considers necessary or desirable to administer the Plan and the Benefit Programs.  A fraudulent or knowing misstatement or omission of fact made by a Participant or Dependent in an enrollment form, a claim for benefits or similar manner may result in cancellation of coverage and/or denial of claims for benefits.

(b)    <u>Records</u>.  As a condition of receiving benefits payable under a Benefit Program, a Participant may be required to provide the Administrator with any evidence and records of expenses incurred by such Participant and each of such Participant's Dependents in such form as the Administrator shall from time to time specify.

(c)    <u>Uniform Rules</u>.  The Administrator shall administer the Program and the Benefit Programs on a reasonable and nondiscriminatory basis and shall apply uniform rules to all persons in similar situations.

(d)    <u>Waiver of Notice</u>.  Any notice required under the Plan or a Benefit Program may be waived by the person entitled to such notice.

(e)    <u>Gender and Number</u>.  Where the context permits, words in the masculine gender shall include the feminine and neuter genders, the singular shall include the plural, and the plural shall include the singular.

(f)    <u>Controlling Law</u>.  Except to the extent superseded by the laws of the United States, the laws of the state of Tennessee shall be controlling in all matters relating to the Plan and the Benefit Programs.

(g)    <u>Interests Not Transferable</u>.  Except as otherwise expressly permitted by a Benefit Program or as may be required by the tax withholding provisions of the Internal Revenue Code or any state's income tax act, benefits under the Plan and the Benefit Programs are not in any way subject to the debts or other obligations of the persons entitled thereto and may not be voluntarily or involuntarily sold, transferred, alienated, assigned or encumbered.  Any attempt to accomplish the same is void.  If the Administrator finds that such an attempt has been made, it may, in its sole discretion, elect to pay the benefits due the covered person to the covered person's spouse, parent, adult child, legal guardian of a minor child, sibling or other relative.  Any such payment constitutes a complete discharge of the liability of the Plan, the Administrator and all Employers with respect to such benefits.

(h)    <u>Facility of Payment</u>.  When any person entitled to benefits under the Plan or a Benefit Program is under legal disability or in the Administrator's opinion is in any way incapacitated so as to be unable to manage his or her affairs, the Administrator, in its sole discretion, may cause such person's benefits to be paid to such person's legal representative for his benefit, or to be applied for the benefit of such person in any other manner that the Administrator may determine.  Such payment shall constitute a full discharge of liability of the Plan, the Benefit Programs, the Administrator and all Employers for such benefits.

(i)    <u>No Vested Interest</u>.  No person shall have any right, title or interest in or to any contributions made under the Plan and the Benefit Programs, such contributions being made for the sole

M PRO 1969476 v3
2789126-000005

purpose of providing benefits under the Programs in accordance with their terms.  Neither the Company, the Administrator, nor any Employer shall in any way guarantee the payment of any benefit that may be or become due to any person under the Plan or the Benefit Programs.

(j)    Employment Rights.  Employment rights of an Employee shall not be deemed to be enlarged or diminished by reason of establishment of, or participation in, the Plan or any Benefit Program, nor shall establishment of the Plan and the Benefit Programs confer upon any Employee any right to be retained in the service of an Employer.

(k)    Cost of Plan and Program Administration.  The costs and expenses incurred in the administration of the Plan and the Benefit Programs shall be paid, in the discretion of the Administrator, (i) from assets accumulated under the Plan and the Benefit Programs, if any; (ii) from Employee contributions; or (iii) by the Employers in such proportion as the Company or the Administrator shall determine.

(l)    Evidence.  Evidence required of anyone under the Plan and the Benefit Programs may be by certificate, affidavit, document or other information which the Administrator considers pertinent and reliable, and signed, made or presented by the proper party or parties.

(m)    Physical Examination and Autopsy.  In addition to any rights and privileges granted under a Benefit Program, the Administrator, at its own expense, shall have the right and opportunity to have a physician, designated by the Administrator, examine any individual whose injury or sickness is the basis of a claim under the Plan and the Benefit Programs, when and as often as it may reasonably require during the pendency of a claim or any period of benefits under the Plan and the Benefit Programs and to make an autopsy in case of death, provided it is not otherwise prohibited by law.

(n)    Recovery of Benefits.  If, because of fraud, mistake or any other reason, a person receives a benefit payment under the Plan and the Benefit Programs that exceeds the benefit payment that should have been made, the Administrator shall have the right to recover the amount of such excess from such person.  The Administrator may, however, at its option, deduct the amount of such excess from any subsequent benefits payable to, or for, the Participant or such Participant's Dependents to whom or on whose behalf the excess payment was made.

(o)    Lawsuits Concerning Benefits.  No lawsuit may be brought by any person or entity to recover benefits under the Plan or any Benefit Program more than one year from the date Plan or benefit Program benefits are finally denied.

(p)    Workers' Compensation Not Affected.  The Plan is not in lieu of, and does not affect any requirement for, coverage under Workers' Compensation.

(q)    Severability.  In case any provisions of the Plan or any Benefit Program shall be held illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining provisions of the Plan or any Benefit Program, and the Plan and all Benefit Programs shall be construed and enforced as if such illegal and invalid provisions had never been set forth in the Plan or Benefit Program.

(r)    Failure to Enforce.  Failure to enforce any provision of the Plan shall not affect the Employer's or Administrator's right thereafter to enforce such provision, nor shall such a failure affect the Employer's or Administrator's right to enforce any other provision of the Plan.

(s)    Indemnification.  In addition to whatever rights of indemnification the members of the board of directors of the Employer or any Employee or Employees of the Employer to whom any power, authority, or responsibility is delegated pursuant to this Plan or any Benefit Program, may be entitled under the articles of incorporation, by-laws or regulations of the Employer, under any provision of law, or under any other agreement, the Employer shall satisfy any liability actually and reasonably incurred by any such person or persons, including expenses, attorneys' fees, judgments, fines, and

6

amounts paid in settlement (other than amounts paid in settlement not approved by the Employer in connection with any threats and pending or completed action, suit, or proceeding that is related to the exercising or failure to exercise by such person or persons of any of the powers, authority, responsibilities, or discretion as provided under the Plan or a Benefit Program, or reasonably believed by such person or persons to be provided hereunder, and any action taken by such person or persons in connection therewith, unless the same is judicially determined to be the result of such person or persons' gross negligence or willful misconduct.

**ARTICLE II**

**<u>SECTION 125 CAFETERIA PLAN</u>**

**Section 1        General**

The Benefit Programs may include a Cafeteria Plan Arrangement which shall permit Employees to choose between cash (or other taxable benefits) and the Benefit Programs on a non-taxable basis, subject to the requirements of Code § 125 and the regulations thereunder.

**Section 2        Eligibility**

Notwithstanding anything to the contrary contained in the Governing Documents, participation in the Cafeteria Plan Arrangement shall be restricted to Employees, which may include former Employees if permitted in the Governing Documents.

**Section 3        Additional Required Terms**

Additional terms required under Code § 125 shall be set forth in the Governing Documents for the Cafeteria Plan Arrangement.

**ARTICLE III**

**<u>HEALTH BENEFIT PROGRAMS</u>**

**Section 1        Health Benefit Programs**

The Plan shall include the Health Benefit Programs identified in Appendix A.  Such Health Benefit Programs are designated as the health care component of the Plan within the meaning of the Standards for Privacy of Individually Identifiable Health Information (45 CFR Part 164, the "Privacy Standards") and the Security Standards for the Protection of Electronic Protected Health Information (45 CFR Part 164.300 et. seq., the "Security Standards").  Each reference to the "Plan" in Section 2 below shall mean the health care component of the Plan.

**Section 2        HIPAA Privacy and Security Standards**

2.1        **<u>General</u>.**  If a Health Benefit Program is not exempted from the requirements of the Privacy Standards and the Security Standards, then this Section shall apply.

2.2        **<u>Privacy and Security Standards</u>.**

(a)        The Plan shall not disclose Protected Health Information to any member of an Employer's workforce unless each of the conditions set out in this Section are met.  "Protected Health Information" shall have the same definition as set forth in the Privacy Standards but generally shall mean individually identifiable information about the past, present or future physical or mental health or condition of an individual, including information about treatment or payment for treatment.  "Electronic Protected

7

Health Information" shall have the same definition as set out in the Security Standards, but generally shall mean Protected Health Information that is transmitted by or maintained in electronic media.

(b)    Protected Health Information disclosed to members of Employer's workforce shall be used or disclosed by them only for purposes of Plan administrative functions.  The Plan's administrative functions shall include all Plan treatment, payment functions and health care operations. The terms "treatment," "payment" and "health care operations" shall have the same definitions as set out in the Privacy Standards, but the term "payment" shall include activities taken to determine or fulfill Plan responsibilities with respect to eligibility, coverage, provision of benefits, or reimbursement for health care.

(c)    The Plan shall disclose Protected Health Information only to members of the Employer's workforce, who are authorized to receive such Protected Health Information, and only to the extent and in the minimum amount necessary for that person to perform his or her duties with respect to the Plan.  "Members of the Employer's workforce" shall refer to all employees and other persons under the control of the Employer. The Employer shall keep an updated list of those authorized to receive Protected Health Information.

(1)    An authorized member of the Employer's workforce who receives Protected Health Information shall use or disclose the Protected Health Information only to the extent necessary to perform his or her duties with respect to the Plan.

(2)    In the event that any member of the Employer's workforce uses or discloses Protected Health Information other than as permitted by this Section and the Privacy Standards, the incident shall be reported to the Plan's privacy officer.  The privacy officer shall take appropriate action, including:

(i)    investigation of the incident to determine whether the breach occurred inadvertently, through negligence or deliberately; whether there is a pattern of breaches; and the degree of harm caused by the breach;

(ii)    appropriate sanctions against the persons causing the breach which, depending upon the nature of the breach, may include oral or written reprimand, additional training, or termination of employment;

(iii)    mitigation of any harm caused by the breach, to the extent practicable; and

(iv)    documentation of the incident and all actions taken to resolve the issue and mitigate any damages.

(d)    The Company and each Employer agrees to:

(1)    Not use or further disclose the information other than as permitted or required by the Plan documents or as required by law;

(2)    Implement reasonable and appropriate administrative, physical and technical safeguards to protect the confidentiality, integrity and availability of Electronic Protected Health Information that the Employer creates, maintains or transmits on behalf of the Plan.

(3)    Ensure that any agent or subcontractor, (i) to whom it provides Protected Health Information received from the Plan, agrees to the same restrictions and conditions that apply to the Employer with respect to such information, and/or (ii) to whom it provides Electronic Protected Health Information shall agree, in writing, to implement reasonable and appropriate security measures to protect the Electronic Protected Health Information.

8

(4)    Not use or disclose Protected Health Information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Employer;

(5)    Report to the Plan any use or disclosure of the Protected Health Information of which it becomes aware that is inconsistent with the uses or disclosures permitted by this Section, or required by law;

(6)    Make available Protected Health Information to individual Plan members as required by Section 164.524 of the Privacy Standards;

(7)    Make available Protected Health Information for amendment by individual Plan members and incorporate any amendments to Protected Health Information as required by Section 164.526 of the Privacy Standards;

(8)    Make available the Protected Health Information required to provide an accounting of disclosures to individual Plan members as required by Section 164.528 of the Privacy Standards;

(9)    Make its internal practices, books and records relating to the use and disclosure of Protected Health Information received from the Plan available to the Department of Health and Human Services for purposes of determining compliance by the Plan with the Privacy Standards;

(10)    If feasible, return or destroy all Protected Health Information received from the Plan that the Employer still maintains in any form, and retain no copies of such information when no longer needed for the purpose for which disclosure was made, except that, if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible; and

(11)    Ensure the adequate separation between the Plan and members of the Employer's workforce, as required by Section 164.504(f)(2)(iii) of the Privacy Standards and set out in (d) above, and to use reasonable and appropriate security measures to comply with this provision.

## Section 3    Family and Medical Leave Act

If an Employer is subject to the Family and Medical Leave Act of 1993, as amended (FMLA), then this Section shall apply.  A Participant who is on an approved leave of absence under the FMLA shall be entitled to continue his participation in the Health Benefit Programs during such leave to the extent required by and in accordance with the FMLA and applicable regulations.

## Section 4    COBRA

If the Health Benefit Program is not exempted from the requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), and the regulations thereunder, the Health Benefit Program shall be operated in accordance with such requirements, as set out in the Governing Documents of such Benefit Program.

M PRO 1969476 v3
2789126-000005

## Section 5        USERRA

If the Health Benefit Program is not exempted from the requirements of the Uniformed Services Employment and Reemployment Rights Act and the regulations thereunder, the Health Benefit Program shall be operated in accordance with such requirements.  This Section 5 shall be interpreted to comply with USERRA and any pertinent regulations.  USERRA provisions may vary slightly among the various Health Benefit Programs.  To the extent consistent with applicable law, the specific USERRA provisions in any Health Benefit Program shall govern over the terms of this Section 5.

Unless otherwise specifically provided in the applicable Governing Documents:

> (1)        a Participant must notify the Employer of his intention to elect USERRA prior to the expiration of the COBRA election period provided under the Health Benefit Program; and
>
> (2)        any period of USERRA continuation of coverage shall run concurrently with COBRA continuation coverage.

## Section 6        Qualified Medical Child Support Order Procedures

If a Health Benefit Program is subject to ERISA § 609(a), then this Section shall apply.  Such Health Benefit Program shall provide benefits in accordance with the terms of a qualified medical child support order that meets the requirements of ERISA § 609(a).  Each Health Benefit Program shall establish reasonable written procedures to determine whether a medical child support order is a qualified medical child support order.  Such procedures shall be made available upon request of a Participant at no charge.

## Section 7        Medicaid

If a Health Benefit Program is subject to ERISA § 609(b), then this Section shall apply.

7.1        Payment for benefits with respect to a Participant under a Health Benefit Program will be made in accordance with any assignment of rights made by or on behalf of such Participant or a beneficiary of the Participant as required by a State plan for medical assistance approved under title XIX of the Social Security Act pursuant to Section 1912(a)(1)(A) of such Act (as in effect on the date of the enactment of the Omnibus Budget Reconciliation Act of 1993).

7.2        The fact that a Participant is eligible for or is provided medical assistance under a State plan for medical assistance approved under title XIX of the Social Security Act will not be taken into account in enrolling such Participant or in determining or making benefit payments for such Participant.

7.3        To the extent that payment has been made under a State plan for medical assistance approved under title XIX of the Social Security Act in any case in which a Health Benefit Program has a legal liability to make payment for items or services constituting such assistance, payment for benefits under such program will be made in accordance with any State law which provides that the State has acquired the rights with respect to a Participant to such payment for such items or services.

## Section 8        Coverage of Dependent Children in Case of Adoption

If a Health Benefit Program is subject to ERISA § 609(c), then this Section shall apply.

8.1        With respect to any such Health Benefit Program that provides coverage for the dependent children of Employees, such Health Benefit Program shall provide benefits to dependent children placed with an Employee for adoption (as defined by ERISA Section 609(c)) under the same terms and conditions as apply to the natural children of the Employee, irrespective of whether the adoption has become final.

M PRO 1969476 v3
2789126-000005

8.2    Such Health Benefit Program shall not restrict coverage of a child adopted or placed for adoption by an Employee, solely on the basis of a preexisting condition of such child at the time such child would otherwise become eligible for coverage under the Health Benefit Program, if the adoption or placement for adoption occurs while the Employee is eligible for coverage under the Health Benefit Program.

**Section 9    HIPAA Portability and Nondiscrimination Requirements**

If a Health Benefit Program is not exempted from the HIPAA portability and nondiscrimination requirements as set out in ERISA §§ 701 through 706 and the regulations thereunder, the Health Benefit Program shall be operated in accordance with such requirements.

**Section 10    Newborn and Mothers Health Protection Act**

If a Health Benefit Program is subject to ERISA § 711, then this Section shall apply.

10.1    If such Health Benefit Program provides benefits for hospital lengths of stay in connection with childbirth for a mother or her newborn child, such Health Benefit Program shall not:

(a)    Except as provided in subsection (b):

(i)    restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child, following a cesarean section, to less than 96 hours or following a vaginal delivery to less than 48 hours; or

(ii)    require that a provider obtain authorization from the Health Benefit Program or the health insurance issuer for prescribing any length of stay required under clauses (i) and (ii).

(b)    Paragraph (a) shall not apply in connection with any Health Benefit Program or health insurance issuer in any case in which the decision to discharge the mother or her newborn child prior to the expiration of the minimum length of stay otherwise required under paragraph (a) is made by an attending provider in consultation with the mother.

10.2    Such Health Benefit Program shall not:

(a)    deny to the mother or her newborn child eligibility, or continued eligibility, to enroll or to renew coverage under the terms of the Health Benefit Program, solely for the purpose of avoiding the requirements of Section 10.1 above.

(b)    provide monetary payments or rebates to mothers to encourage such mothers to accept less than the minimum protections available under Section 10.1 above.

(c)    penalize or otherwise reduce or limit the reimbursement of an attending provider because such provider provided care to an individual Participant or beneficiary in accordance with Section 10.1 above.

(d)    provide incentives (monetary or otherwise) to an attending provider to induce such provider to provide care to an individual Participant or beneficiary in a manner inconsistent with Section 10.1 above; or

(e)    restrict benefits for any portion of a period within a hospital length of stay required under Section 10.1 above in a manner which is less favorable than the benefits provided for any preceding portion of such stay; provided, nothing herein shall be construed to limit the terms of the Health

11

Benefit Program with respect to deductibles, copayments or other cost-sharing provisions and limitations, except that such terms may not impose greater limits or cost sharing on any length of stay required under Section 10.1 above than for any preceding portion of such stay.

**Section 11      Mental Health Parity Act**

If a Health Benefit Program is subject to ERISA § 712, then the terms of this Section shall apply.

A Health Benefit Program that provides both medical and surgical benefits and mental health benefits shall not impose any lifetime or annual limits on mental health benefits that violate the requirements of ERISA § 712.  In accordance with the Mental Health Parity and Addiction Equity Act of 2008, effective January 1, 2010, such Health Benefit Programs will not impose any caps or limitations on mental health treatment or substance abuse benefits that are not applied to medical and surgical benefits. Requirements such as co-payments and deductibles and limitations such as number of visits or frequency of treatments will be no more restrictive on mental health and substance use disorder benefits than the requirements or limitations imposed on medical and surgical benefits.

**Section 12      Women's Health and Cancer Rights Act**

If a Health Benefit Program is subject to ERISA § 713 and provides medical and surgical benefits with respect to a mastectomy, then this Section shall apply.  Such Health Benefit Program shall, with respect to a Participant who is receiving benefits in connection with a mastectomy, and who elects breast reconstruction in connection with such mastectomy, provide coverage for the following (subject to applicable deductibles, copayments and other Health Benefit Program limitations):

(1)      reconstruction of the breast on which the mastectomy has been performed;

(2)      surgery and reconstruction of the other breast to produce a symmetrical appearance; and

(3)      prostheses and physical complications for all stages of mastectomy, including lymphedemas;

in a manner determined in consultation with the attending physician and the patient.

**Section 13      Subrogation and Recovery**

If a Participant incurs covered expenses or receives benefits under a Benefit Program with respect to an injury or illness for which a third party (or its insurer) may be liable, the Plan retains all rights of subrogation, recovery and reimbursement as set out more specifically in the Governing Documents for each Benefit Program.

**Section 14      Coordination of Benefits**

14.1      **Coordination of Benefits**. When a Participant is covered by this Plan and another plan, the plans will coordinate benefits when a claim is received.  The terms of this Section 14 shall apply, except to the extent specifically provided otherwise in the Governing Documents of a Health Benefit Program.

The plan that pays first according to the rules will pay as if there were no other plan involved. If this Plan is secondary or subsequent, it will pay the amount it would have otherwise paid, minus whatever the primary plan paid, so that benefits are not duplicated. The total reimbursement will never be more than the amount that would have been paid if this Plan had been the primary plan.

14.2      **Benefit Plan.** This provision will coordinate the health benefits of a benefit plan. The term benefit plan means this Plan or any one of the following plans:

M PRO 1969476 v3
2789126-000005

    (1)       Group or group-type plans, including franchise or blanket benefit plans.

    (2)       Blue Cross and Blue Shield group plans.

    (3)       Group practice and other group prepayment plans.

    (4)       Federal government plans or programs. This includes, but is not limited to, Medicare and Tricare.

    (5)       Other plans required or provided by law. This does not include Medicaid or any benefit plan like it that, by its terms and applicable law, does not allow coordination.

    (6)       No Fault Auto Insurance, by whatever name it is called, when not prohibited by law.

14.3    **Allowable Charge.** For a charge to be allowable it must be a Usual and Reasonable Charge and at least part of it must be covered under this Plan.

14.4    **Claims Determination Period.** Benefits will be coordinated on a yearly basis. This is called the claims determination period.

14.5    **Right to Receive or Release Necessary Information.** This Plan may give or obtain needed information from another insurer or any other organization or person. This information may be given or obtained without the consent of or notice to any other person. A Participant must give this Plan the information it asks for about other plans and their payment of Allowable Charges.

14.6    **Facility of Payment.** This Plan may repay other plans for benefits paid that the Administrator determines it should have paid. That repayment will count as a valid payment under this Plan.

14.7    **Right of Recovery.** This Plan may pay benefits that should be paid by another benefit plan. In this case this Plan may recover the amount paid from the other benefit plan or the Covered Person. That repayment will count as a valid payment under the other benefit plan.

Further, this Plan may pay benefits that are later found to be greater than the Allowable Charge. In this case, this Plan may recover the amount of the overpayment from the source to which it was paid.

**Section 15    Claims Procedures**

15.1    **Claims Procedures**. The specific guidelines for filing a claim or a request for a review of a denied claim shall be set out in the summary plan description for each Health Benefit Program.

M PRO 1969476 v3
2789126-000005

**ARTICLE IV**

**<u>FULLY INSURED BENEFIT PROGRAMS</u>**

**Section 1**        **General**

The Plan may include any Fully Insured Benefit Programs identified in Appendix A.

**Section 2**        **Claims Procedures**

The specific guidelines for filing a claim or a request for a review of a denied claim shall be set out in the summary plan description for each Benefit Program.

M PRO 1969476 v3
2789126-000005

# APPENDIX A

# COMPONENT PROGRAMS

Nortel Networks FLEX Benefits Program

Nortel Networks Health Care Reimbursement Account Plan

Nortel Networks Inc. Dental/Vision/Hearing Care Plan

Nortel Networks Inc. Medical Plan

Nortel Networks Inc. Short-Term Disability Plan

Nortel Networks Inc. Long-Term Disability Plan

Nortel Networks Retiree Medical Plan

Nortel Networks Retiree Life Insurance and Long-Term Care Plan

Nortel Networks Life Insurance and AD&D Insurance Plan


Nynex Meridian Systems Medical Coverage Plan for Bargaining Unit Employees

Nynex Meridian Systems Dental Plan for Bargaining Unit Employees

Nynex Meridian Systems Term Life Insurance and AD&D Plan for Bargaining Unit Employees

Nynex Meridian Systems Short-Term Disability and Long-Term Disability Plan for Bargaining Unit Employees

M PRO 1969476 v3
2789126-000005

# APPENDIX B

# COVERED EMPLOYERS

Nortel Networks Inc.

Nortel Altsystems Inc.

M PRO 1969476 v3
2789126-000005

IN WITNESS WHEREOF, this Plan is hereby executed by a duly authorized officer of Nortel Networks Inc. on this _____ day of November 2009 to be effective as of January 1, 2009.


NORTEL NETWORKS INC.


By:_____

Title: _____

M PRO 1969476 v3
2789126-000005