# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | ) | |
| | ) | Chapter 11 |
| | ) | |
| Nortel Networks Inc., *et al.*,[1] | ) | Case No. 09-10138 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| ------------------------------------------------- | ) | |

## JOINT CHAPTER 11 PLAN OF
## NORTEL NETWORKS INC. AND ITS AFFILIATED DEBTORS

**James L. Bromley, Esq. (admitted *pro hac vice*)**
**Lisa M. Schweitzer, Esq. (admitted *pro hac vice*)**
**CLEARY GOTTLIEB STEEN & HAMILTON LLP**
**One Liberty Plaza**
**New York, NY 10006**


-and-

**Derek C. Abbott, Esq. (No. 3376)**
**Eric D. Schwartz, Esq. (No. 3134)**
**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
**1201 North Market Street, 18th Floor**
**P.O. Box 1347**
**Wilmington, DE 19899**


Attorneys for the Debtors and
Debtors-in-Possession

Dated: July 12, 2010

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**TABLE OF CONTENTS**

**Page**

ARTICLE 1.
DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

Definitions ...................................................................................................................... 2

ARTICLE 2.
TREATMENT OF UNCLASSIFIED CLAIMS

2.1    Administrative Expense Claims ................................................................................. 16

2.2    Statutory Fees .......................................................................................................... 17

2.3    Professional Claims ................................................................................................. 17

2.4    Priority Tax Claims .................................................................................................. 17

ARTICLE 3.
CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    NNI ......................................................................................................................... 17

3.2    NNCALA ................................................................................................................ 18

3.3    NNCC ..................................................................................................................... 18

3.4    Nortel Alt ................................................................................................................ 18

3.5    Nortel Alt Int'l ........................................................................................................ 18

3.6    Xros ........................................................................................................................ 18

3.7    Sonoma ................................................................................................................... 19

3.8    Qtera ....................................................................................................................... 19

3.9    CoreTek .................................................................................................................. 19

3.10   NN Applications ..................................................................................................... 19

3.11   NN Optical .............................................................................................................. 19

3.12   NN HPOCS ............................................................................................................. 20

3.13   Architel ................................................................................................................... 20

3.14   NNII ........................................................................................................................ 20

3.15   NTI ......................................................................................................................... 20

3.16   NN Cable ................................................................................................................ 20

ARTICLE 4.
TREATMENT OF CLAIMS AGAINST AND INTERESTS IN DEBTORS

4.1    NNI Class 1 – Priority Non-Tax Claims against NNI .................................................. 21

4.2    NNI Class 2 – Secured Claims against NNI ............................................................... 21

i

4.3     NNI Class 3 – General Unsecured Claims against NNI ................................................. 21

4.4     NNI Class 4 – Subordinated Claims against NNI ........................................................... 22

4.5     NNI Class 5A – NNI Interests ........................................................................................ 22

4.6     NNI Class 5B – NNI Interests Securities Fraud Claims ................................................ 22

4.7     NNCALA Class 1 – Priority Non-Tax Claims against NNCALA ................................. 23

4.8     NNCALA Class 2 – Secured Claims against NNCALA ................................................ 23

4.9     NNCALA Class 3 – General Unsecured Claims against NNCALA .............................. 23

4.10    NNCALA Class 4 – Subordinated Claims against NNCALA ........................................ 23

4.11    NNCALA Class 5A – NNCALA Interests ..................................................................... 24

4.12    NNCALA Class 5B – NNCALA Interests Securities Fraud Claims ............................. 24

4.13    NNCC Class 1 – Priority Non-Tax Claims against NNCC ............................................ 24

4.14    NNCC Class 2 – Secured Claims against NNCC .......................................................... 25

4.15    NNCC Class 3 – General Unsecured Claims against NNCC ......................................... 25

4.16    NNCC Class 4 – Subordinated Claims against NNCC .................................................. 25

4.17    NNCC Class 5A – NNCC Interests ............................................................................... 25

4.18    NNCC Class 5B – NNCC Interests Securities Fraud Claims ........................................ 26

4.19    Nortel Alt Class 1 – Priority Non-Tax Claims against Nortel Alt ................................. 26

4.20    Nortel Alt Class 2 – Secured Claims against Nortel Alt ............................................... 26

4.21    Nortel Alt Class 3 – General Unsecured Claims against Nortel Alt .............................. 27

4.22    Nortel Alt Class 4 – Subordinated Claims against Nortel Alt ....................................... 27

4.23    Nortel Alt Class 5A – Nortel Alt Interests .................................................................... 27

4.24    Nortel Alt Class 5B – Nortel Alt Interests Securities Fraud Claims ............................. 27

4.25    Nortel Alt Int'l Class 1 – Priority Non-Tax Claims against Nortel Alt Int'l ................. 28

4.26    Nortel Alt Int'l Class 2 – Secured Claims against Nortel Alt Int'l ................................ 28

4.27    Nortel Alt Int'l Class 3 – General Unsecured Claims against Nortel Alt Int'l ............... 28

4.28    Nortel Alt Int'l Class 4 – Subordinated Claims against Nortel Alt Int'l ........................ 29

4.29    Nortel Alt Int'l Class 5A – Nortel Alt Int'l Interests .................................................... 29

4.30    Nortel Alt Int'l Class 5B – Nortel Alt Int'l Interests Securities Fraud Claims ............... 29

4.31    Xros Class 1 – Priority Non-Tax Claims against Xros .................................................. 29

4.32    Xros Class 2 – Secured Claims against Xros ................................................................. 30

4.33    Xros Class 3 – General Unsecured Claims against Xros ................................................. 30

4.34    Xros Class 4 – Subordinated Claims against Xros ....................................................... 30

4.35    Xros Class 5A – Xros Interests .................................................................................... 31

4.36    Xros Class 5B – Xros Interests Securities Fraud Claims .............................................. 31

4.37    Sonoma Class 1 – Priority Non-Tax Claims against Sonoma ....................................... 31

4.38    Sonoma Class 2 – Secured Claims against Sonoma .................................................... 31

4.39    Sonoma Class 3 – General Unsecured Claims against Sonoma ................................... 32

4.40    Sonoma Class 4 – Subordinated Claims against Sonoma ............................................ 32

4.41    Sonoma Class 5A – Sonoma Interests ........................................................................ 32

4.42    Sonoma Class 5B – Sonoma Interests Securities Fraud Claims ................................... 32

4.43    Qtera Class 1 – Priority Non-Tax Claims against Qtera ............................................... 33

4.44    Qtera Class 2 – Secured Claims against Qtera ............................................................ 33

4.45    Qtera Class 3 – General Unsecured Claims against Qtera ........................................... 33

4.46    Qtera Class 4 – Subordinated Claims against Qtera .................................................... 34

4.47    Qtera Class 5A – Qtera Interests ................................................................................ 34

4.48    Qtera Class 5B – Qtera Interests Securities Fraud Claims ........................................... 34

4.49    CoreTek Class 1 – Priority Non-Tax Claims against CoreTek ....................................... 34

4.50    CoreTek Class 2 – Secured Claims against CoreTek .................................................... 35

4.51    CoreTek Class 3 – General Unsecured Claims against CoreTek ................................... 35

4.52    CoreTek Class 4 – Subordinated Claims against CoreTek ............................................ 35

4.53    CoreTek Class 5A – CoreTek Interests ........................................................................ 36

4.54    CoreTek Class 5B – CoreTek Interests Securities Fraud Claims ................................... 36

4.55    NN Applications Class 1 – Priority Non-Tax Claims against NN Applications ............. 36

4.56    NN Applications Class 2 – Secured Claims against NN Applications ........................... 36

4.57    NN Applications Class 3 – General Unsecured Claims against NN Applications .......... 37

4.58    NN Applications Class 4 – Subordinated Claims against NN Applications .................. 37

4.59    NN Applications Class 5A – NN Applications Interests ............................................... 37

4.60    NN Applications Class 5B – NN Applications Interests Securities Fraud Claims ........ 38

4.61    NN Optical Class 1 – Priority Non-Tax Claims against NN Optical ............................. 38

4.62    NN Optical Class 2 – Secured Claims against NN Optical ........................................... 38

4.63    NN Optical Class 3 – General Unsecured Claims against NN Optical ......................... 39

4.64    NN Optical Class 4 – Subordinated Claims against NN Optical .................................... 39

4.65    NN Optical Class 5A – NN Optical Interests ............................................................... 39

4.66    NN Optical Class 5B – NN Optical Interests Securities Fraud Claims ........................ 39

4.67    NN HPOCS Class 1 – Priority Non-Tax Claims against NN HPOCS ........................... 40

4.68    NN HPOCS Class 2 – Secured Claims against NN HPOCS ......................................... 40

4.69    NN HPOCS Class 3 – General Unsecured Claims against NN HPOCS ........................ 40

4.70    NN HPOCS Class 4 – Subordinated Claims against NN HPOCS ................................. 40

4.71    NN HPOCS Class 5A – NN HPOCS Interests .............................................................. 41

4.72    NN HPOCS Class 5B – NN HPOCS Interests Securities Fraud Claims........................ 41

4.73    Architel Class 1 – Priority Non-Tax Claims against Architel ....................................... 41

4.74    Architel Class 2 – Secured Claims against Architel ..................................................... 42

4.75    Architel Class 3 – General Unsecured Claims against Architel .................................... 42

4.76    Architel Class 4 – Subordinated Claims against Architel .............................................. 42

4.77    Architel Class 5A – Architel Interests ......................................................................... 42

4.78    Architel Class 5B – Architel Interests Securities Fraud Claims ................................... 43

4.79    NNII Class 1 – Priority Non-Tax Claims against NNII................................................. 43

4.80    NNII Class 2 – Secured Claims against NNII .............................................................. 43

4.81    NNII Class 3 – General Unsecured Claims against NNII.............................................. 44

4.82    NNII Class 4 – Subordinated Claims against NNII ...................................................... 44

4.83    NNII Class 5A – NNII Interests................................................................................... 44

4.84    NNII Class 5B – NNII Interests Securities Fraud Claims ............................................ 44

4.85    NTI Class 1 – Priority Non-Tax Claims against NTI ................................................... 45

4.86    NTI Class 2 – Secured Claims against NTI ................................................................. 45

4.87    NTI Class 3 – General Unsecured Claims against NTI ................................................ 45

4.88    NTI Class 4 – Subordinated Claims against NTI.......................................................... 46

4.89    NTI Class 5A – NTI Interests ..................................................................................... 46

4.90    NTI Class 5B – NTI Interests Securities Fraud Claims................................................ 46

4.91    NN Cable Class 1 – Priority Non-Tax Claims against NN Cable .................................. 46

4.92    NN Cable Class 2 – Secured Claims against NN Cable ................................................ 47

4.93   NN Cable Class 3 – General Unsecured Claims against NN Cable ............................... 47

4.94   NN Cable Class 4 – Subordinated Claims against NN Cable .......................................... 47

4.95   NN Cable Class 5A – NN Cable Interests ..................................................................... 48

4.96   NN Cable Class 5B – NN Cable Interests Securities Fraud Claims ............................... 48

ARTICLE 5.
IMPLEMENTATION OF THE PLAN

5.1    Plan Administrator .................................................................................................... 48

5.2    Plan Advisory Committee ........................................................................................... 49

5.3    Closing of Chapter 11 Case ........................................................................................ 50

ARTICLE 6.
CORPORATE FORM AND ACTION

6.1    NNI Corporate Form and Vesting ............................................................................... 50

6.2    Reorganized Subsidiaries Corporate Form and Vesting ................................................ 51

6.3    Dissolution of the Liquidating Debtors ........................................................................ 51

6.4    Post-Effective Date Management ................................................................................. 51

6.5    Corporate Existence ................................................................................................... 52

6.6    Certificate of Incorporation or Certificate of Formation ............................................... 52

6.7    Wind-Down ............................................................................................................... 53

6.8    Other Corporate Action .............................................................................................. 53

ARTICLE 7.
TREATMENT OF EXECUTORY CONTRACTS

7.1    Previous Assumption, Assignment and Rejection .......................................................... 53

7.2    Assumption and Assignment of Remaining Contracts ................................................... 53

7.3    Cure Payments; Assurance of Performance .................................................................. 54

7.4    Objections to Assumption of Remaining Contracts ....................................................... 54

7.5    Rejection ................................................................................................................... 55

7.6    Approval of Rejection; Rejection Damages Claims Bar Date ........................................ 55

7.7    Postpetition Modification of Executory Contracts ........................................................ 55

7.8    Pre-existing Obligations to the Debtors under Executory Contracts ............................... 56

ARTICLE 8.
PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

| | | |
|---|---|---|
| 8.1 | Voting of Claims | 56 |
| 8.2 | Nonconsensual Confirmation | 56 |
| 8.3 | Distributions of Creditor Proceeds | 56 |
| 8.4 | Minimum Distribution and Manner of Payment | 57 |
| 8.5 | Distributions to Indenture Trustees | 57 |
| 8.6 | Limitation on Recovery | 57 |
| 8.7 | Distributions Free and Clear | 57 |
| 8.8 | Delivery of Distributions and Undeliverable Distributions | 57 |
| 8.9 | Withholding and Reporting Requirements | 58 |
| 8.10 | Time Bar to Cash Payment Rights | 58 |
| 8.11 | Setoffs and Recoupment | 58 |
| 8.12 | Distribution Record Date | 59 |
| 8.13 | Allocation of Distributions | 59 |
| 8.14 | Cancellation of Notes, Instruments and Debentures | 59 |

ARTICLE 9.
PROCEDURES FOR TREATING DISPUTED CLAIMS

| | | |
|---|---|---|
| 9.1 | Objections | 60 |
| 9.2 | No Distributions Pending Allowance | 60 |
| 9.3 | Estimation of Claims | 60 |
| 9.4 | Resolution of Disputed Claims | 60 |
| 9.5 | No Interest | 61 |
| 9.6 | Reserve Account for Disputed Claims | 61 |
| 9.7 | Investment of Disputed Claims Reserve | 61 |
| 9.8 | Release of Funds from the Disputed Claims Reserve | 61 |

ARTICLE 10.
CONDITIONS PRECEDENT

| | | |
|---|---|---|
| 10.1 | Conditions to Confirmation | 62 |
| 10.2 | Conditions to the Effective Date | 62 |
| 10.3 | Waiver of Conditions | 62 |

10.4    Notice of Effective Date ................................................................. 63

### ARTICLE 11.
### EFFECT OF CONFIRMATION

11.1    Jurisdiction of Court ..................................................................... 63

11.2    Binding Effect ............................................................................... 63

11.3    Discharge of Debtors .................................................................... 63

11.4    Limited Release of Directors, Officers and Employees.................. 64

11.5    Exculpation ................................................................................... 65

11.6    Injunction on Claims ..................................................................... 65

11.7    Terms of Injunctions or Stays ....................................................... 66

11.8    Retention of Litigation Claims and Reservation of Rights ............. 66

11.9    Retention of Rights ....................................................................... 67

11.10  Vesting .......................................................................................... 67

### ARTICLE 12.
### RETENTION OF JURISDICTION

Retention of Jurisdiction ......................................................................... 67

### ARTICLE 13.
### MISCELLANEOUS PROVISIONS

13.1    Plan Supplement ........................................................................... 69

13.2    Modification of the Plan ................................................................ 69

13.3    Revocation or Withdrawal of the Plan........................................... 69

13.4    Insurance Preservation .................................................................. 70

13.5    Exemption from Certain Transfer Taxes ........................................ 70

13.6    Exemption from Registration......................................................... 70

13.7    Governing Law ............................................................................. 70

13.8    No Admissions.............................................................................. 70

13.9    Severability of Plan Provisions...................................................... 70

13.10  Successors and Assigns................................................................. 71

13.11  Defenses with Respect to Unimpaired Claims................................ 71

13.12  No Injunctive Relief...................................................................... 71

13.13  Payment of Statutory Fees ............................................................ 71

# TABLE OF CONTENTS
(continued)

**Page**

13.14  Saturday, Sunday or Legal Holiday ................................................................. 71

13.15  Dissolution of Creditors' Committee.............................................................. 71

13.16  Notices ............................................................................................................ 71

# INTRODUCTION

Nortel Networks Inc. ("NNI"), a Delaware corporation, and its affiliated Debtors and Debtors-in-Possession listed in Exhibit A hereto (collectively with NNI, the "Debtors") propose this Joint Chapter 11 Plan of Nortel Networks Inc. and its affiliated Debtors (the "Plan") for the resolution and satisfaction of all Claims against and Interests in the Debtors. The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. All capitalized terms not defined in this introduction have the meanings ascribed to them in Article 1 of this Plan.

Although the Chapter 11 Cases are jointly administered pursuant to an order of the Bankruptcy Court, the Debtors are not currently proposing the substantive consolidation of their respective Estates. Thus, although the Plan generally applies to all of the Debtors, except where otherwise indicated, (i) the Plan constitutes 16 distinct chapter 11 plans, one for each Debtor; (ii) for voting purposes, each holder of a Claim in a Class shall vote its Claim in such Class by individual Debtor; and (iii) the classification scheme set forth in Article 3 hereof applies to each Debtor; but to the extent there are no Claims in a certain Class against a particular Debtor, that Class shall be deemed not to exist for any purpose whatsoever in respect of that Debtor. A list of each Debtor which is a proponent of the Plan contained herein, and its corresponding Chapter 11 Case docket number, is attached hereto as Exhibit A.

Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan may not be solicited from holders of Claims and/or Interests until such time as the Disclosure Statement relating to the Plan is approved by the Bankruptcy Court. THE DEBTORS URGE ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. To the extent, if any, that the Disclosure Statement is inconsistent with the Plan, the Plan will govern. No solicitation materials, other than the Disclosure Statement and any schedules, exhibits and other documents attached thereto or referenced therein or otherwise enclosed with the Disclosure Statement served by the Debtors on interested parties, have been authorized by the Debtors or the Bankruptcy Court for use in soliciting acceptances of the Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and Article 13 of this Plan, each of the Debtors expressly reserves the right to alter, amend, modify, revoke or withdraw this Plan with respect to such Debtor, one or more times, prior to its substantial consummation.

# ARTICLE 1.
## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

**A.    Scope of Definitions.** For the purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article 1 of the Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, respectively. Whenever the context requires, capitalized terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

**B. Definitions.** In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the meanings ascribed to them in this Article 1 of the Plan.

**1.1 363 Sale(s)** means, individually, each of the sales pursuant to section 363(b) of the Bankruptcy Code identified in <u>Exhibit B</u> and, collectively, all of them.

**1.2 363 Sale Agreement(s)** means, individually, each of the agreements relating to the 363 Sales and, collectively, all of them.

**1.3 363 Sale Order(s)** means, individually, each of the orders entered by the Bankruptcy Court relating to the 363 Sales identified in <u>Exhibit C</u> and, collectively, all of them.

**1.4 Ad Hoc Group of Bondholders** means the steering committee members of the ad hoc group of bondholders which have executed or in the future execute confidentiality or nondisclosure agreements with the Debtors and the Canadian Petitioners.

**1.5 Administrative Expense Claim** means any right to payment for any cost or expense of administration (including Professional Claims) of any of the Chapter 11 Cases asserted or arising under sections 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code up to and including the Effective Date, including, to the extent allowable under such sections, any (i) actual and necessary cost or expense of preserving the Debtors' Estates or operating the business of the Debtors arising on or after the Petition Date, (ii) payment to be made under this Plan to cure a default under an executory contract or unexpired lease that is assumed pursuant to section 365 of the Bankruptcy Code, (iii) compensation or reimbursement of expenses of Professionals arising on or after the Petition Date, to the extent allowed by the Bankruptcy Court under section 330(a) or section 331 of the Bankruptcy Code and (iv) fees or charges assessed against the Debtors' Estates under section 1930, chapter 123 of title 28 of the United States Code.

**1.6 Administrative Expense Claims Bar Date** means the deadline for filing an Administrative Expense Claim, other than a Professional Claim, which Claims must be Filed so as to be actually received by the Bankruptcy Court on or before 5:00 p.m., prevailing Eastern Standard Time, on the date that is the first Business Day that is thirty (30) days following the Effective Date, unless otherwise ordered by the Bankruptcy Court.

**1.7 Affiliate** shall have the meaning as set forth in section 101(2) of the Bankruptcy Code.

**1.8 Allocation Proceeds** means the amount of each applicable Debtor's allocated share of the proceeds from the 363 Sales.

**1.9 Allowed** means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been Filed within the periods of limitation fixed by the Plan, the Bankruptcy Code, or by any order of the Bankruptcy Court, (b) any Claim allowed hereunder, (c) any Claim that is not a Disputed Claim,

(d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order of the Bankruptcy Court or under Article 9 of the Plan or (e) any Claim that, if it is a Disputed Claim, has been allowed by a Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder. Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

> **1.10 Architel** means Architel Systems (U.S.) Corporation, a Delaware corporation.

> **1.11 Assets** means, with respect to a Debtor, (a) all "property" of such Debtor's Estate, as defined in section 541 of the Bankruptcy Code and (b) all Causes of Action that have been or may be commenced by such Debtor-in-Possession or its authorized representative for the benefit of such Debtor's Estate, unless modified pursuant to the Plan or a Final Order.

> **1.12 Available Cash** means (a) all Cash of a Debtor, including, but not limited to, the Cash realized from its business operations, the sale or other disposition of its Assets, the Allocation Proceeds, the Residual Assets Proceeds, the interest earned on invested funds, Cash on hand, recoveries from Litigation Claims and from any other source or otherwise, less (b) the amount of Cash estimated and reserved by such Debtor and the Plan Administrator in accordance with the Plan Administration Agreement to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date, (ii) pay holders of all Disputed Claims against such Debtor the amount such holders would be entitled to receive under the Plan if all such Disputed Claims were to become Allowed Claims, (iii) pay all fees payable under section 1930, chapter 123 of title 28 of the United States Code and (iv) pay all other amounts required to be paid to manage and/or liquidate such Debtor's Assets on and after the Effective Date.

> **1.13 Avoidance Actions** means any actions commenced or that may be commenced before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

> **1.14 Bankruptcy Code** means title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, as applicable in the Chapter 11 Cases.

> **1.15 Bankruptcy Court** means the United States Bankruptcy Court for the District of Delaware or any other court of the United States having jurisdiction over the Chapter 11 Cases.

> **1.16 Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and any local rules of the Bankruptcy Court, as in effect on the Petition Date and as thereafter amended.

> **1.17 Business Day** means any day other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

**1.18** **Canadian Bankruptcy Court** means the Ontario Superior Court of Justice having jurisdiction over the CCAA Proceedings.

**1.19** **Canadian Petitioners** means NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

**1.20** **Cash** means legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

**1.21** **Causes of Action** means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to or during the course of the Chapter 11 Cases through the Effective Date.

**1.22** **CCAA Proceedings** means the proceedings commenced in the Canadian Bankruptcy Court by the Canadian Petitioners under the Companies' Creditors Arrangement Act (Canada), R.S.C. 1985, c. C-36, as amended.

**1.23** **Chapter 11 Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court as set forth in Exhibit A hereto and as jointly administered with one another under Case No. 09-10138 (KG), and as to any Debtor individually, a chapter 11 case.

**1.24** **Claim** means a right of an Entity against the Debtors, or any one of them, whether or not asserted or Allowed, of the type described in section 101(5) of the Bankruptcy Code, as construed pursuant to section 102(2) of the Bankruptcy Code.

**1.25** **Claims Agent** means Epiq Bankruptcy Solutions, LLC, the claims and noticing agent retained in the Chapter 11 Cases, or any successor thereto.

**1.26** **Class** means a group of Claims or Interests as classified in a particular class under the Plan pursuant to section 1122 of the Bankruptcy Code.

**1.27** **Collateral** means any property or interest in property of the Estates of the Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

**1.28** **Confirmation** means entry of the Confirmation Order by the Bankruptcy Court.

**1.29** **Confirmation Date** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.30** **Confirmation Hearing** means the duly noticed hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1128 of the Bankruptcy Code, including any continuances thereof.

**1.31** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code as applicable to each Debtor.

**1.32** **Controlled Non-Debtor Affiliate** means any non-Debtor Entity that is managed and controlled by the Reorganized Debtors.

**1.33** **CoreTek** means CoreTek, Inc., a Delaware corporation.

**1.34** **Creditor** means any Entity that holds a Claim against any of the Debtors.

**1.35** **Creditors' Committee** means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**1.36** **Creditor Proceeds** means Available Cash and non-Cash proceeds (including, without limitation, any securities or other interests) of the sale of Residual Assets.

**1.37** **Cross Border Protocol** means that certain Cross-Border Court-to-Court Protocol approved by the Bankruptcy Court in the Cross Border Protocol Orders.

**1.38** **Cross Border Protocol Orders** means (a) the Order Pursuant to 11 U.S.C §§ 105(a) Approving Cross-Border Court-to-Court Protocol entered by the Bankruptcy Court on January 15, 2009 [Docket No. 54], as may be amended, supplemented or modified from time to time, and (b) the Order Approving Stipulation of the Debtors and the Official Committee of Unsecured Creditors of Nortel Networks Inc., et al., Amending the Cross-Border Court-to-Court Protocol entered by the Bankruptcy Court on June 26, 2009 [Docket No. 990], as may be amended, supplemented or modified from time to time.

**1.39** **Debtor(s)** or **Debtor(s)-in-Possession** means, individually, NNI and each debtor listed in Exhibit A hereto, and collectively all of them, including in their capacity as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

**1.40** **Deficiency Claim** means with respect to any Claim secured by a Lien in any property of any Debtor having a value of less than the amount of such Claim (after taking into account other Liens of higher priority in such property), the portion of such Claim equal to the difference between (a) the Allowed amount of the Claim and (b) the Allowed amount of the secured portion of such Claim (which Allowed secured amount may be set pursuant to this Plan).

**1.41** **Disbursing Agent** means the Plan Administrator or any party designated by the Debtors to serve as their disbursing agent under the Plan.

**1.42** **Disclosure Statement** means the written disclosure statement that relates to this Plan Filed in the Chapter 11 Cases by the Debtors, including the schedules and exhibits

attached thereto, as it may be amended, modified or supplemented from time to time, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.43     **Disputed Claim** means a Claim or Interest, respectively, that the Debtors have Scheduled as "disputed," "contingent" or "unliquidated," or as to which a proof of claim or proof of interest has been Filed or deemed Filed as contingent or as to which an objection has been or may be timely Filed by the Debtors or any other party in interest entitled to do so, which objection, if timely Filed, has not been withdrawn or has not been overruled or denied by a Final Order.

1.44     **Disputed Claims Reserve** means, in the event there exists any Disputed Claim against a Debtor on or after the Effective Date, Cash to be set aside by the Plan Administrator in a separate account corresponding to such Debtor in an amount sufficient to pay the Pro Rata Share of any Distributions such Disputed Claims would be entitled to if such Disputed Claims become Allowed Claims of such Debtor in accordance with the provisions of the Plan.

1.45     **Distribution** means any payment or transfer made under the Plan.

1.46     **Distribution Record Date** means the record date for the purposes of making Distributions under the Plan on account of Allowed Claims (except with respect to the NNCC 2026 Notes), which date shall be the Effective Date.

1.47     **DTC** means The Depository Trust and Clearing Corporation.

1.48     **Effective Date** means the date selected by the Debtors that is the later of (a) at least sixty (60) days following occurrence of the Confirmation Date; and (b) no more than five (5) Business Days following the first date on which no stay of the Confirmation Order is in effect and all conditions to the Effective Date set forth in Article 10 of the Plan have been satisfied with respect to a Debtor or, if waivable, waived pursuant to Section 10.3 hereof.

1.49     **EMEA Debtors** means, collectively, Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks OY, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

1.50     **Entity** means an entity as defined in section 101(15) of the Bankruptcy Code.

1.51     **Estate** means, with regard to each Debtor, the estate that was created by the commencement by such Debtor of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers and privileges of such Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, Causes of Action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the Petition Date, or which such Estate acquired after

**1.52    File** or **Filed** means file or filed on the docket of the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.53    Final Distribution Date** means the date upon which the last Distribution with respect to a Debtor is made.  As determined by the Plan Administrator, the Final Distribution Date shall be a date (a) which is after the liquidation into Cash of all Residual Assets of the relevant Reorganized Debtor (other than those Residual Assets abandoned by such Reorganized Debtor) and the collection of other sums due or otherwise remitted or returned to the relevant Estate and (b) on or after the date upon which the Plan Administrator or Disbursing Agent makes a final Distribution with respect to such Debtor from the Disputed Claims Reserve.

**1.54    Final Order** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Chapter 11 Case or the docket of any other U.S. court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek *certiorari* or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed, or from which *certiorari* was sought or the new trial reargument or rehearing has been denied or resulted in no modification of such order, *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be Filed with respect to such order and shall not cause such order not to be a Final Order.

**1.55    Foreign Proceeding** means each of the proceedings identified in Exhibit D.

**1.56    General Securities Fraud Claims** means the Claims, including unknown claims, demands, rights, liabilities and Causes of Action of any kind whatsoever, known or unknown, which have been or could be asserted in a direct, derivative or other capacity against any Debtor arising out of, relating to or in connection with (a) the purchase, sale or other decision or action made or taken, or declared, failed or refused to be made or taken, or otherwise foregone, concerning or relating to the Senior Notes; (b) the purchase, ownership or sale of the Senior Notes; and (c) any other claims arising out of, relating to or in connection with the Senior Notes that would be subject to subordination under section 510(b) of the Bankruptcy Code. General Securities Fraud Claims do not include claims for payment for principal, interest, fees or expenses due under the Senior Notes.

**1.57    General Unsecured Claims** means all Unsecured Claims against the Debtors other than the Subordinated Claims and the Interests Securities Fraud Claims.

**1.58    Governmental Unit** shall have the meaning assigned to such term in section 101(27) of the Bankruptcy Code.

**1.59    Impaired** shall have the meaning ascribed to it in section 1124 of the Bankruptcy Code when used with reference to a Claim or an Interest.

**1.60    Intellectual Property** means any and all intellectual property rights in any jurisdiction including, without limitation, rights in or to any of the following: (a) Trademarks; (b) Patents and inventions (whether or not patentable); (c) copyrights and works of authorship of any type in any medium; (d) mask works; (e) trade secrets, know-how and confidential information; (f) databases, including, without limitation, computerized databases and compilations; (g) software and computer programs; and (h) domain names and Internet protocol addresses, including, in each case, any applications or registrations for any of the foregoing.

**1.61    Intercompany Claims** means any Claim against a Debtor asserted by an Affiliate of the Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Subordinated Claim or an Interests Securities Fraud Claim.

**1.62    Interest(s)** means shares of common, preferred stock, other form of ownership interest, or any interest or right to convert into such an equity or ownership interest or acquire any equity or ownership interest, including, without limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent equity awards, performance stock units, and stock options or restricted stock awards granted under management ownership plans, stock incentive plans or employee incentive plans, in any Debtor that was in existence immediately prior to or on the Petition Date for such Debtor.

**1.63    Interests Securities Fraud Claims** means Claims, including unknown claims, demands, rights, liabilities and Causes of Action of any kind whatsoever, known or unknown, that have been or could be asserted in a direct, derivative or other capacity against any Debtor arising out of, relating to or in connection with (a) the purchase, sale or other decision or action made or taken, or declined, failed or refused to be made or taken, or otherwise foregone, concerning or relating to the Interests in such Debtor; (b) the purchase, ownership or sale of such Interests; and (c) any other claims arising out of, relating to or in connection with such Interests that would be subject to subordination under section 510(b) of the Bankruptcy Code.

**1.64    Interim Settlement and Funding Agreement** means that certain Interim Funding and Settlement Agreement, dated as of June 9, 2009, by and among the Debtors (except NNCALA), the Canadian Petitioners, the EMEA Debtors and Nortel Networks AG.

**1.65    Lien** means a charge against, interest in or other encumbrance upon property to secure payment of a debt or performance of an obligation.

**1.66    Liquidating Debtors** means those Debtors identified as "Liquidating Debtors" by notice Filed not later than twenty (20) days prior to the Confirmation Date.

**1.67    Litigation Claims** means all claims, rights and causes of action of the Debtors and their Estates of every kind or nature whatsoever, whether arising prior to, during or after the Debtors' Chapter 11 Cases (including, without limitation, Intellectual Property enforcement rights and all rights, claims and causes of action arising under sections 544 through 551 of the Bankruptcy Code, except for any Released Claims).

**1.68    LLC Interests** means the limited liability company interests of the respective Reorganized Subsidiary.

**1.69    NN Applications** means Nortel Networks Applications Management Solutions Inc., a Delaware corporation.

**1.70    NN Cable** means Nortel Networks Cable Solutions Inc., a Delaware corporation.

**1.71    NN HPOCS** means Nortel Networks HPOCS Inc., a Delaware corporation.

**1.72    NN Optical** means Nortel Networks Optical Components Inc., a Delaware corporation.

**1.73    NNC** means Nortel Networks Corporation, a Canadian corporation.

**1.74    NNC 2012 Convertible Notes** means those certain convertible senior notes issued by NNC on March 28, 2007 and guaranteed jointly and severally by NNL and NNI in an aggregate principal amount of $575 million due on April 15, 2012, and bearing an interest rate of 1.75%.

**1.75    NNC 2014 Convertible Notes** means those certain convertible senior notes issued by NNC on May 28, 2007 and guaranteed jointly and severally by NNL and NNI in an aggregate principal amount of $575 million due on April 15, 2014, and bearing an interest rate of 2.125%.

**1.76    NNC Notes Indenture** means that certain indenture, dated as of March 28, 2007, governing the issuance of the NNC 2012 Convertible Notes and the NNC 2014 Convertible Notes, as amended, supplemented or modified from time to time.

**1.77    NNC/NNL Notes Indenture Trustee** means The Bank of New York Mellon (f/k/a The Bank of New York), in its capacity as indenture trustee under the NNC Notes Indenture and NNL Notes Indenture, or any successor thereto.

**1.78    NNCALA** means Nortel Networks (CALA), Inc., a Florida corporation.

**1.79    NNCC** means Nortel Networks Capital Corporation, a Delaware corporation.

**1.80    NNCC 2026 Notes** means those certain senior notes issued by NNCC on February 15, 1996 and guaranteed by NNL in an aggregate principal amount of $150 million due on June 15, 2026, and bearing an interest rate of 7.875%.

**1.81    NNCC Notes Indenture** means that certain indenture, dated as of February 15, 1996, governing the issuance of the NNCC 2026 Notes, as amended, supplemented or modified from time to time.

**1.82    NNCC Notes Indenture Trustee** means Law Debenture Trust Company of New York, in its capacity as indenture trustee under the NNCC Notes Indenture, or any successor thereto.

**1.83    NNCC Notes Guarantee Obligations** means the guarantee, indemnity and other obligations of NNL under the NNCC Notes Indenture.

**1.84    NNI** means Nortel Networks Inc., a Delaware corporation.

**1.85    NNII** means Nortel Networks International Inc., a Delaware corporation.

**1.86    NNL** means Nortel Networks Limited, a Canadian corporation.

**1.87    NNL 2011 Notes** means those certain floating rate senior notes issued by NNL on July 5, 2006 and guaranteed jointly and severally by NNC and NNI in an aggregate principal amount of $1 billion due on July 15, 2011.

**1.88    NNL 2013 Notes** means those certain senior notes issued by NNL on July 5, 2006 and guaranteed jointly and severally by NNC and NNI in an aggregate principal amount of $550 million due on July 15, 2013, and bearing an interest rate of 10.125%.

**1.89    NNL 2016 Notes** means those two tranches of senior notes issued by NNL on July 5, 2006 and May 28, 2008 and guaranteed jointly and severally by NNC and NNI in aggregate principal amounts of $450 million and $675 million, respectively, due on July 15, 2016, and bearing interest rates of 10.75%.

**1.90    NNL Notes Indenture** means that certain indenture, dated as of July 5, 2006, governing the issuance of the NNL 2011 Notes, the NNL 2013 Notes and the NNL 2016 Notes, as amended, supplemented or modified from time to time.

**1.91    Nortel Alt** means Nortel Altsystems Inc., a Delaware corporation.

**1.92    Nortel Alt Int'l** means Nortel Altsystems International Inc., a Delaware corporation.

**1.93    NTI** means Northern Telecom International Inc., a Delaware corporation.

**1.94    Ordinary Course Professional Order** means the Order Authorizing the Debtors to Retain and Employ Professionals Used in the Ordinary Course of Business *Nunc Pro Tunc* to the Petition Date entered by the Bankruptcy Court on February 5, 2009 [Docket No. 236], as may be amended, supplemented or modified from time to time.

**1.95    Patents** mean all national and multinational patents and utility models (petty patents), including without limitation all reissues, divisions, continuations, continuations-in-part, extensions and reexaminations thereof, and all rights therein provided by multinational treaties or conventions.

**1.96    Person** means an individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an unincorporated organization or a Governmental Unit as defined in section 101(41) of the Bankruptcy Code.

**1.97    Petition Date** means January 14, 2009; *provided*, *however*, that with respect to those Debtors, including NNCALA, that commenced their Chapter 11 Cases subsequent to January 14, 2009, "Petition Date" shall refer to the respective dates on which such Chapter 11 Cases were commenced.

**1.98    Plan** means the chapter 11 plans of the Debtors, collectively, and (where specified herein) as to each of the Debtors, the chapter 11 plan of such Debtor, including without limitation, the Plan Supplement and all exhibits, appendices and schedules hereto and thereto, either in its present form or as the same may be altered, amended, modified or supplemented from time to time in accordance with the provisions of the Plan or the Bankruptcy Code and Bankruptcy Rules.

**1.99    Plan Administration Agreement** means the agreement describing the powers, duties and rights of the Plan Administrator in administering the Plan, which agreement shall be in form and substance satisfactory to the Creditors' Committee and the Ad Hoc Group of Bondholders and in substantially the form included in the Plan Supplement.

**1.100    Plan Administrator** means John J. Ray, III, retained, as of the Effective Date, by the Debtors as the Person responsible for, among other things, the matters described in Section 5.1 hereof.

**1.101    Plan Advisory Committee** means the committee to be deemed founded on the Effective Date and jointly selected by the Creditors' Committee and the Ad Hoc Group of Bondholders in accordance with Section 5.2 hereof.

**1.102    Plan Supplement** means the supplement containing the forms of documents specified in Section 13.1 of the Plan.

**1.103    Priority Non-Tax Claim** means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

**1.104    Priority Tax Claim** means any Claim entitled to priority pursuant to sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.105    Pro Rata Share** means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the Class in which the particular Allowed Claim is included to the amount of all Allowed Claims of that Class, *provided*, *however*, that no holder of any Allowed Claim shall be entitled to receive aggregate Distributions, including distributions from non-Debtors, in excess of 100% of the amount of such Allowed Claim.

**1.106** **Professional** means a Person (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 328 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.107** **Professional Claim** means a Claim of a Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

**1.108** **Purchaser** means the purchasers as defined under each of the 363 Sale Agreements.

**1.109** **Qtera** means Qtera Corporation, a Delaware corporation.

**1.110** **Reclamation Procedures Order** means the Order Establishing Procedures for Addressing Reclamation Demands entered by the Bankruptcy Court on February 19, 2009 [Docket No. 336], as may be amended, supplemented or modified from time to time.

**1.111** **Released Claim** means any claim, right or cause of action of any of the Debtors or their Estates released pursuant to the 363 Sale Agreements, the 363 Sale Orders, the Plan or the Confirmation Order.

**1.112** **Remaining Contract** has the meaning set forth in Section 7.1.

**1.113** **Reorganized Architel** means a newly formed Delaware limited liability company into which Architel shall transfer its Assets pursuant to the Plan.

**1.114** **Reorganized CoreTek** means a newly formed Delaware limited liability company into which CoreTek shall transfer its Assets pursuant to the Plan.

**1.115** **Reorganized Debtor(s)** means, individually, Reorganized NNI or any of the Reorganized Subsidiaries and, collectively, Reorganized NNI and all of the Reorganized Subsidiaries.

**1.116** **Reorganized NN Applications** means a newly formed Delaware limited liability company into which NN Applications shall transfer its Assets pursuant to the Plan.

**1.117** **Reorganized NN Cable** means a newly formed Delaware limited liability company into which NN Cable shall transfer its Assets pursuant to the Plan.

**1.118** **Reorganized NN HPOCS** means a newly formed Delaware limited liability company into which NN HPOCS shall transfer its Assets pursuant to the Plan.

**1.119** **Reorganized NN Optical** means a newly formed Delaware limited liability company into which NN Optical shall transfer its Assets pursuant to the Plan.

**1.120   Reorganized NNCALA** means a newly formed Delaware limited liability company into which NNCALA shall transfer its Assets pursuant to the Plan.

**1.121   Reorganized NNCC** means a newly formed Delaware limited liability company into which NNCC shall transfer its Assets pursuant to the Plan.

**1.122   Reorganized NNI** means NNI on and after the Effective Date.

**1.123   Reorganized NNII** means a newly formed Delaware limited liability company into which NNII shall transfer its Assets pursuant to the Plan.

**1.124   Reorganized Nortel Alt** means a newly formed Delaware limited liability company into which Nortel Alt shall transfer its Assets pursuant to the Plan.

**1.125   Reorganized Nortel Alt Int'l** means a newly formed Delaware limited liability company into which Nortel Alt Int'l shall transfer its Assets pursuant to the Plan.

**1.126   Reorganized NTI** means a newly formed Delaware limited liability company into which NTI shall transfer its Assets pursuant to the Plan.

**1.127   Reorganized Qtera** means a newly formed Delaware limited liability company into which Qtera shall transfer its Assets pursuant to the Plan.

**1.128   Reorganized Sonoma** means a newly formed Delaware limited liability company into which Sonoma shall transfer its Assets pursuant to the Plan.

**1.129   Reorganized Subsidiary** means, individually, any of Reorganized NNCALA, Reorganized NNCC, Reorganized Nortel Alt, Reorganized Nortel Alt Int'l, Reorganized Xros, Reorganized Sonoma, Reorganized Qtera, Reorganized CoreTek, Reorganized NN Applications, Reorganized NN Optical, Reorganized NN HPOCS, Reorganized Architel, Reorganized NNII, Reorganized NTI and Reorganized NN Cable, and collectively, all of them.

**1.130   Reorganized Xros** means a newly formed Delaware limited liability company into which Xros shall transfer its Assets pursuant to the Plan.

**1.131   Residual Assets** means all Assets of a Reorganized Debtor from and after the Effective Date.

**1.132   Residual Assets Proceeds** means the net Cash proceeds of the Residual Assets of a Reorganized Debtor and any income or proceeds therefrom, as determined in accordance with the Plan Administration Agreement.

**1.133   Scheduled** means as set forth on the Schedules.

**1.134   Schedules** means the Schedules of Assets and Liabilities Filed by the Debtors in accordance with section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as

the same may be amended from time to time prior to the Effective Date in accordance with Bankruptcy Rule 1009.

**1.135  Secured Claim** means any Claim (a) to the extent reflected in the Schedules or upon a proof of claim to which the Debtors have not objected as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.136  Security** means any instrument issued by, or interest in, any Debtor of the type described in section 101(49) of the Bankruptcy Code.

**1.137  Senior Notes** means, collectively, the NNC 2012 Convertible Notes, NNC 2014 Convertible Notes, NNCC 2026 Notes, NNL 2011 Notes, NNL 2013 Notes and NNL 2016 Notes.

**1.138  Senior Notes Claims** means any Unsecured Claim that arises out of, or is attributable to, ownership of the Senior Notes, other than General Securities Fraud Claims.

**1.139  Senior Notes NNI Guarantee Claims** means any Unsecured Claim that arises out of, or is attributable to, the Senior Notes NNI Guarantee Obligations other than General Securities Fraud Claims.

**1.140  Senior Notes NNI Guarantee Obligations** means the guarantee, indemnity and other obligations of NNI under the Senior Notes Indentures and the Senior Notes.

**1.141  Senior Notes Indenture(s)** means, individually, the NNC Notes Indenture, NNCC Notes Indenture and NNL Notes Indenture, and collectively, all of them.

**1.142  Sonoma** means Sonoma Systems, a California corporation.

**1.143  Subordinated Claims** means General Securities Fraud Claims and any other Claims, except for Interests Securities Fraud Claims, that would be subject to subordination under section 510 of the Bankruptcy Code.

**1.144  Tax or Taxes** means all net income, gross income, capital, value added, goods and services, gross receipts, ad valorem, transfer, profits, business, environmental, gaming, franchise, excise, stamp, stamp duty reserve, customs, sales, use, employment, withholding, property, payroll and all other taxes, fees, duties, levies, assessments, deductions, withholdings or governmental charges, together with any interest, penalties, additions to tax, fines and similar amounts relating thereto, imposed or collected by or on behalf of any federal, state, local or foreign governmental authority on or from any of the Debtors.

**1.145  Trademarks** means all trademarks, service marks, trade dress, logos, trade names, corporate names and business names, whether or not registered, together with all goodwill associated therewith, and including all common law rights and all rights therein provided by multinational treaties or conventions.

**1.146** **Unimpaired** means any Claim or Interest that is not Impaired.

**1.147** **Unsecured Claim** means any Claim against the Debtors, including, without limitation, (a) Claims arising from the rejection of executory contracts and unexpired leases, (b) Deficiency Claims, (c) Intercompany Claims, (d) Senior Notes Claims and (e) Senior Notes NNI Guarantee Claims, but excluding Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims.

**1.148** **Xros** means Xros, Inc., a Delaware corporation.

## C.     Rules of Interpretation.

1.     In the event of an inconsistency: (a) the provisions of the Plan shall control over the contents of the Disclosure Statement; and (b) the provisions of the Confirmation Order shall control over the contents of the Plan.

2.     For the purposes of the Plan:

(a)     any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; _provided_, _however_, that any change to such form, terms or conditions that is material to a party to such document shall not be modified without such party's consent unless such document expressly provides otherwise;

(b)     any reference in the Plan to an existing document, exhibit or schedule Filed or to be Filed means such document, exhibit or schedule, as it may have been or may be amended, modified or supplemented as of the Effective Date;

(c)     unless otherwise specified, all references in the Plan to "Sections," "Articles," "Exhibits" and "Schedules" are references to sections, articles, exhibits and schedules of or to the Plan;

(d)     the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

(e)     captions and headings are inserted for convenience of reference only and are not intended to be part or to affect interpretations of the Plan; and

(f)     the word "including" means "including without limitation."

3.     Whenever a Distribution of property is required to be made on a particular date, the Distribution shall be made on such date or as soon as reasonably practicable thereafter.

4.     All Exhibits and Schedules to the Plan are incorporated into the Plan and shall be deemed to be included in the Plan, regardless of when they are Filed.

5.     Subject to the provisions of any contract, certificate, by-laws, operating agreement, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, United States federal law, including the Bankruptcy Code and Bankruptcy Rules.

**D.     Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

**ARTICLE 2.**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**2.1     Administrative Expense Claims.**  Subject to the allowance procedures and deadlines provided herein, on the later to occur of (a) the Effective Date and (b) the date on which an Administrative Expense Claim shall become an Allowed Claim, the holder of an Allowed Administrative Expense Claim shall receive on account of its Allowed Administrative Expense Claim, and in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtors and the holder of such Allowed Administrative Expense Claim have agreed upon in writing; *provided*, *however*, that Administrative Expense Claims with respect to liabilities arising under a written agreement incurred by the Debtors in the ordinary course of business during the Chapter 11 Cases shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreement or course of dealing relating thereto and consistent with past practice, and Professional Claims shall be paid in accordance with Section 2.3.

A notice setting forth the Administrative Expense Claims Bar Date shall be (i) Filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' case information website at http://dm.epiq11.com/nortel. Further notice of the Administrative Expense Claims Bar Date shall be provided as may be directed by the Bankruptcy Court. All requests for payment of an Administrative Expense Claim that accrued on or before the Effective Date other than Administrative Expense Claims that have been paid or that relate to payment of Professionals must be Filed with the Claims Agent and served on counsel for the Debtors by the Administrative Expense Claims Bar Date. Absent further order of the Bankruptcy Court, any requests for payment of Administrative Expense Claims that are not properly Filed and served by the Administrative Expense Claims Bar Date shall not appear on the register of Claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or any action by the Bankruptcy Court.

The Debtors and the Plan Administrator may settle Administrative Expense Claims in the ordinary course of business without further notice or Bankruptcy Court approval, in accordance with the Plan Administration Agreement, as applicable. The Debtors shall have the right to object to any Administrative Expense Claim within 180 days after the Administrative Expense Claims Bar Date, subject to further extensions that may be granted by the Bankruptcy Court. Unless the Debtors object to a timely Filed and properly served Administrative Expense Claim, such Administrative Expense Claim shall be deemed Allowed in the amount requested. In

the event that the Debtors object to an Administrative Expense Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be allowed and, if so, in what amount.

**2.2    Statutory Fees.**  On or before the Effective Date, all fees due and payable pursuant to section 1930, chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in full, in Cash.

**2.3    Professional Claims.**  Other than a Professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through the Effective Date under sections 105(a), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall File its final application for allowance of such compensation and/or reimbursement by no later than the date that is 60 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court and be paid by or on behalf of the Debtor (a) in full and in Cash in the amounts Allowed upon the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (b) upon such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim. The Debtors are authorized to pay compensation for Professional services rendered and reimburse expenses incurred after the Confirmation Date in the ordinary course without Bankruptcy Court approval.

**2.4    Priority Tax Claims.**  With respect to each Allowed Priority Tax Claim, at the option of each Debtor, the holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim, (a) cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as practicable, (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, equal annual installment payments in cash (commencing on the Effective Date, or as soon thereafter as practicable) (i) of a total value on the Effective Date equal to the Allowed amount of such Claim; (ii) over a period not exceeding five (5) years after the Petition Date; and (iii) in a manner not less favorable than the most favored non-priority Unsecured Claim provided for by the Plan; or (c) such other treatment agreed to by the holder of such Allowed Priority Tax Claim and the applicable Debtor.

**ARTICLE 3.**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

Claims against the Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Interests are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

**3.1    NNI**

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against NNI | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NNI | Unimpaired | No (deemed to accept) |

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 3 | General Unsecured Claims against NNI | Impaired | Yes |
| 4 | Subordinated Claims against NNI | Impaired | No (deemed to reject) |
| 5A | NNI Interests | Impaired | No (deemed to reject) |
| 5B | NNI Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## 3.2 NNCALA

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against NNCALA | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NNCALA | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NNCALA | Impaired | Yes |
| 4 | Subordinated Claims against NNCALA | Impaired | No (deemed to reject) |
| 5A | NNCALA Interests | Impaired | No (deemed to reject) |
| 5B | NNCALA Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## 3.3 NNCC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against NNCC | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NNCC | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NNCC | Impaired | Yes |
| 4 | Subordinated Claims against NNCC | Impaired | No (deemed to reject) |
| 5A | NNCC Interests | Impaired | No (deemed to reject) |
| 5B | NNCC Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## 3.4 Nortel Alt

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against Nortel Alt | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Nortel Alt | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Nortel Alt | Impaired | Yes |
| 4 | Subordinated Claims against Nortel Alt | Impaired | No (deemed to reject) |
| 5A | Nortel Alt Interests | Impaired | No (deemed to reject) |
| 5B | Nortel Alt Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## 3.5 Nortel Alt Int'l

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against Nortel Alt Int'l | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Nortel Alt Int'l | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Nortel Alt Int'l | Impaired | Yes |
| 4 | Subordinated Claims against Nortel Alt Int'l | Impaired | No (deemed to reject) |
| 5A | Nortel Alt Int'l Interests | Impaired | No (deemed to reject) |
| 5B | Nortel Alt Int'l Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## 3.6 Xros

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against Xros | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Xros | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Xros | Impaired | Yes |

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 4 | Subordinated Claims against Xros | Impaired | No (deemed to reject) |
| 5A | Xros Interests | Impaired | No (deemed to reject) |
| 5B | Xros Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.7    Sonoma

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against Sonoma | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Sonoma | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Sonoma | Impaired | Yes |
| 4 | Subordinated Claims against Sonoma | Impaired | No (deemed to reject) |
| 5A | Sonoma Interests | Impaired | No (deemed to reject) |
| 5B | Sonoma Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.8    Qtera

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against Qtera | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Qtera | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Qtera | Impaired | Yes |
| 4 | Subordinated Claims against Qtera | Impaired | No (deemed to reject) |
| 5A | Qtera Interests | Impaired | No (deemed to reject) |
| 5B | Qtera Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.9    CoreTek

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against CoreTek | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against CoreTek | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against CoreTek | Impaired | Yes |
| 4 | Subordinated Claims against CoreTek | Impaired | No (deemed to reject) |
| 5A | CoreTek Interests | Impaired | No (deemed to reject) |
| 5B | CoreTek Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.10    NN Applications

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against NN Applications | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NN Applications | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NN Applications | Impaired | Yes |
| 4 | Subordinated Claims against NN Applications | Impaired | No (deemed to reject) |
| 5A | NN Applications Interests | Impaired | No (deemed to reject) |
| 5B | NN Applications Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.11    NN Optical

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims against NN Optical | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NN Optical | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NN Optical | Impaired | Yes |
| 4 | Subordinated Claims against NN Optical | Impaired | No (deemed to reject) |
| 5A | NN Optical Interests | Impaired | No (deemed to reject) |
| 5B | NN Optical Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|

### 3.12    NN HPOCS

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims against NN HPOCS | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NN HPOCS | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NN HPOCS | Impaired | Yes |
| 4 | Subordinated Claims against NN HPOCS | Impaired | No (deemed to reject) |
| 5A | NN HPOCS Interests | Impaired | No (deemed to reject) |
| 5B | NN HPOCS Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.13    Architel

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims against Architel | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against Architel | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against Architel | Impaired | Yes |
| 4 | Subordinated Claims against Architel | Impaired | No (deemed to reject) |
| 5A | Architel Interests | Impaired | No (deemed to reject) |
| 5B | Architel Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.14    NNII

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims against NNII | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NNII | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NNII | Impaired | Yes |
| 4 | Subordinated Claims against NNII | Impaired | No (deemed to reject) |
| 5A | NNII Interests | Impaired | No (deemed to reject) |
| 5B | NNII Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.15    NTI

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims against NTI | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NTI | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NTI | Impaired | Yes |
| 4 | Subordinated Claims against NTI | Impaired | No (deemed to reject) |
| 5A | NTI Interests | Impaired | No (deemed to reject) |
| 5B | NTI Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

### 3.16    NN Cable

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims against NN Cable | Unimpaired | No (deemed to accept) |
| 2 | Secured Claims against NN Cable | Unimpaired | No (deemed to accept) |
| 3 | General Unsecured Claims against NN Cable | Impaired | Yes |
| 4 | Subordinated Claims against NN Cable | Impaired | No (deemed to reject) |
| 5A | NN Cable Interests | Impaired | No (deemed to reject) |
| 5B | NN Cable Interests Securities Fraud Claims | Impaired | No (deemed to reject) |

## ARTICLE 4.
## TREATMENT OF CLAIMS AGAINST AND INTERESTS IN DEBTORS

### 4.1     NNI Class 1 – Priority Non-Tax Claims against NNI.

(a)     Impairment and Voting.  NNI Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NNI Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NNI Class 1 agrees to less favorable treatment or has been paid by or on behalf of NNI on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NNI Class 1 shall be paid by NNI in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.2     NNI Class 2 – Secured Claims against NNI.

(a)     Impairment and Voting.  NNI Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NNI Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NNI Class 2 shall be satisfied by, at the option of NNI: (i) payment in Cash by NNI in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.3     NNI Class 3 – General Unsecured Claims against NNI.

(a)     Impairment and Voting.  NNI Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NNI Class 3 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Each holder of an Allowed General Unsecured Claim in NNI Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NNI.

### 4.4 NNI Class 4 – Subordinated Claims against NNI.

(a) <u>Impairment and Voting</u>.  NNI Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NNI Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in NNI Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; <u>*provided*</u>, <u>*however*</u>, that in the event that all Allowed Claims in NNI Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NNI Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNI.

### 4.5 NNI Class 5A – NNI Interests.

(a) <u>Impairment and Voting</u>.  NNI Class 5A is Impaired by the Plan. Each holder of an NNI Interest in NNI Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>.  On the Effective Date, all NNI Interests shall be cancelled and one new share of NNI's common stock shall be issued to the Plan Administrator, which will hold such share for the benefit of the holders of such former Interests consistent with their former economic entitlements; <u>*provided*</u>, <u>*however*</u>, that the Plan Administrator may not exercise any voting rights appurtenant thereto in conflict with Article 6 of the Plan. Each holder of an NNI Interest shall neither receive nor retain any property or interest in property on account of such Interests; <u>*provided*</u>, <u>*however*</u>, that in the event that all Allowed Claims in NNI Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NNI Interest shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNI consistent with such holder's rights of priority of payment existing immediately prior to the Petition Date. Unless otherwise determined by the Plan Administrator, on the date which NNI's Chapter 11 Case is closed in accordance with Section 5.3 of the Plan, all such former NNI Interests shall be deemed cancelled and of no force and effect, provided that such cancellation does not adversely impact the Debtors' Estates.

### 4.6 NNI Class 5B – NNI Interests Securities Fraud Claims.

(a) <u>Impairment and Voting</u>.  NNI Class 5B is Impaired by the Plan. Each holder of an Allowed NNI Interests Securities Fraud Claim in NNI Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>.  Each holder of an Allowed NNI Interests Securities Fraud Claim in NNI Class 5B shall receive no Distribution under the Plan in respect of its Allowed NNI Interests Securities Fraud Claims.

### 4.7 NNCALA Class 1 – Priority Non-Tax Claims against NNCALA.

(a) <u>Impairment and Voting</u>. NNCALA Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NNCALA Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b) <u>Distributions</u>. Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NNCALA Class 1 agrees to less favorable treatment or has been paid by or on behalf of NNCALA on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NNCALA Class 1 shall be paid by NNCALA in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.8 NNCALA Class 2 – Secured Claims against NNCALA.

(a) <u>Impairment and Voting</u>. NNCALA Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NNCALA Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b) <u>Distributions</u>. Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NNCALA Class 2 shall be satisfied by, at the option of NNCALA: (i) payment in Cash by NNCALA in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.9 NNCALA Class 3 – General Unsecured Claims against NNCALA.

(a) <u>Impairment and Voting</u>. NNCALA Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NNCALA Class 3 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed General Unsecured Claim in NNCALA Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NNCALA.

### 4.10 NNCALA Class 4 – Subordinated Claims against NNCALA.

(a) <u>Impairment and Voting</u>. NNCALA Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NNCALA Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)      _Distributions._  Each holder of an Allowed Subordinated Claim in NNCALA Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; _provided_, _however_, that in the event that all Allowed Claims in NNCALA Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NNCALA Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNCALA.

### 4.11    NNCALA Class 5A – NNCALA Interests.

(a)      _Impairment and Voting._  NNCALA Class 5A is Impaired by the Plan. Each holder of an NNCALA Interest in NNCALA Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)      _Distributions._  The NNCALA Interests shall be cancelled and each holder of an NNCALA Interest shall receive its pro rata Distribution of Reorganized NNCALA LLC Interests; _provided_, _however_, that no holder of an NNCALA Interest shall receive any Distribution of Creditor Proceeds on account of its former NNCALA Interests or its Reorganized NNCALA LLC Interests; _provided_, _further_, that in the event that all Allowed Claims in NNCALA Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NNCALA Interest in NNCALA Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNCALA.

### 4.12    NNCALA Class 5B – NNCALA Interests Securities Fraud Claims.

(a)      _Impairment and Voting._  NNCALA Class 5B is Impaired by the Plan. Each holder of an Allowed NNCALA Interests Securities Fraud Claim in NNCALA Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)      _Distributions._  Each holder of an Allowed NNCALA Interests Securities Fraud Claim in NNCALA Class 5B shall receive no Distribution under the Plan in respect of its Allowed NNCALA Interests Securities Fraud Claims.

### 4.13    NNCC Class 1 – Priority Non-Tax Claims against NNCC.

(a)      _Impairment and Voting._  NNCC Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NNCC Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)      _Distributions._  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NNCC Class 1 agrees to less favorable treatment or has been paid by or on behalf of NNCC on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NNCC Class 1 shall be paid by NNCC in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.14    NNCC Class 2 – Secured Claims against NNCC.

(a)    <u>Impairment and Voting</u>.  NNCC Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NNCC Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NNCC Class 2 shall be satisfied by, at the option of NNCC: (i) payment in Cash by NNCC in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.15    NNCC Class 3 – General Unsecured Claims against NNCC.

(a)    <u>Impairment and Voting</u>.  NNCC Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NNCC Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim in NNCC Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NNCC.

### 4.16    NNCC Class 4 – Subordinated Claims against NNCC.

(a)    <u>Impairment and Voting</u>.  NNCC Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NNCC Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in NNCC Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; <u>*provided*</u>, <u>*however*</u>, that in the event that all Allowed Claims in NNCC Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NNCC Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNCC.

### 4.17    NNCC Class 5A – NNCC Interests.

(a)    <u>Impairment and Voting</u>.  NNCC Class 5A is Impaired by the Plan. Each holder of an NNCC Interest in NNCC Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  The NNCC Interests shall be cancelled and each holder of an NNCC Interest shall receive its pro rata Distribution of Reorganized NNCC LLC Interests; *provided*, *however*, that no holder of an NNCC Interest shall receive any Distribution of Creditor Proceeds on account of its former NNCC Interests or its Reorganized NNCC LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in NNCC Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NNCC Interest in NNCC Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNCC.

### 4.18     NNCC Class 5B – NNCC Interests Securities Fraud Claims.

(a)     Impairment and Voting.  NNCC Class 5B is Impaired by the Plan. Each holder of an Allowed NNCC Interests Securities Fraud Claim in NNCC Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  Each holder of an Allowed NNCC Interests Securities Fraud Claim in NNCC Class 5B shall receive no Distribution under the Plan in respect of its Allowed NNCC Interests Securities Fraud Claims.

### 4.19     Nortel Alt Class 1 – Priority Non-Tax Claims against Nortel Alt.

(a)     Impairment and Voting.  Nortel Alt Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Nortel Alt Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Nortel Alt Class 1 agrees to less favorable treatment or has been paid by or on behalf of Nortel Alt on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Nortel Alt Class 1 shall be paid by Nortel Alt in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.20     Nortel Alt Class 2 – Secured Claims against Nortel Alt.

(a)     Impairment and Voting.  Nortel Alt Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Nortel Alt Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Nortel Alt Class 2 shall be satisfied by, at the option of Nortel Alt: (i) payment in Cash by Nortel Alt in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which

the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.21   Nortel Alt Class 3 – General Unsecured Claims against Nortel Alt.

(a)   _Impairment and Voting_.  Nortel Alt Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Nortel Alt Class 3 is entitled to vote to accept or reject the Plan.

(b)   _Distributions_.  Each holder of an Allowed General Unsecured Claim in Nortel Alt Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Nortel Alt.

### 4.22   Nortel Alt Class 4 – Subordinated Claims against Nortel Alt.

(a)   _Impairment and Voting_.  Nortel Alt Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Nortel Alt Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)   _Distributions_.  Each holder of an Allowed Subordinated Claim in Nortel Alt Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; _provided_, _however_, that in the event that all Allowed Claims in Nortel Alt Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Nortel Alt Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Nortel Alt.

### 4.23   Nortel Alt Class 5A – Nortel Alt Interests.

(a)   _Impairment and Voting_.  Nortel Alt Class 5A is Impaired by the Plan. Each holder of a Nortel Alt Interest in Nortel Alt Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)   _Distributions_.  Each holder of a Nortel Alt Interest shall neither receive nor retain any property or interest in property on account of its Nortel Alt Interest, and the Nortel Alt Interests shall be cancelled; _provided_, _however_, that in the event that all Allowed Claims in Nortel Alt Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a Nortel Alt Interest in Nortel Alt Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Nortel Alt.

### 4.24   Nortel Alt Class 5B – Nortel Alt Interests Securities Fraud Claims.

(a)   _Impairment and Voting_.  Nortel Alt Class 5B is Impaired by the Plan. Each holder of an Allowed Nortel Alt Interests Securities Fraud Claim in Nortel Alt Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)   _Distributions_.  Each holder of an Allowed Nortel Alt Interests Securities Fraud Claim in Nortel Alt Class 5B shall receive no Distribution under the Plan in respect of its Allowed Nortel Alt Interests Securities Fraud Claims.

**4.25     Nortel Alt Int'l Class 1 – Priority Non-Tax Claims against Nortel Alt Int'l.**

(a)     <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Nortel Alt Int'l Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     <u>Distributions</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Nortel Alt Int'l Class 1 agrees to less favorable treatment or has been paid by or on behalf of Nortel Alt Int'l on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Nortel Alt Int'l Class 1 shall be paid by Nortel Alt Int'l in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

**4.26     Nortel Alt Int'l Class 2 – Secured Claims against Nortel Alt Int'l.**

(a)     <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Nortel Alt Int'l Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Nortel Alt Int'l Class 2 shall be satisfied by, at the option of Nortel Alt Int'l: (i) payment in Cash by Nortel Alt Int'l in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

**4.27     Nortel Alt Int'l Class 3 – General Unsecured Claims against Nortel Alt Int'l.**

(a)     <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Nortel Alt Int'l Class 3 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim in Nortel Alt Int'l Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Nortel Alt Int'l.

**4.28    Nortel Alt Int'l Class 4 – Subordinated Claims against Nortel Alt Int'l.**

(a)    <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Nortel Alt Int'l Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in Nortel Alt Int'l Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in Nortel Alt Int'l Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Nortel Alt Int'l Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Nortel Alt Int'l.

**4.29    Nortel Alt Int'l Class 5A – Nortel Alt Int'l Interests.**

(a)    <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 5A is Impaired by the Plan. Each holder of a Nortel Alt Int'l Interest in Nortel Alt Int'l Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  The Nortel Alt Int'l Interests shall be cancelled and each holder of a Nortel Alt Int'l Interest shall receive its pro rata Distribution of Reorganized Nortel Alt Int'l LLC Interests; *provided*, *however*, that no holder of a Nortel Alt Int'l Interest shall receive any Distribution of Creditor Proceeds on account of its former Nortel Alt Int'l Interests or its Reorganized Nortel Alt Int'l LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in Nortel Alt Int'l Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a Nortel Alt Int'l Interest in Nortel Alt Int'l Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Nortel Alt Int'l.

**4.30    Nortel Alt Int'l Class 5B – Nortel Alt Int'l Interests Securities Fraud Claims.**

(a)    <u>Impairment and Voting</u>.  Nortel Alt Int'l Class 5B is Impaired by the Plan. Each holder of an Allowed Nortel Alt Int'l Interests Securities Fraud Claim in Nortel Alt Int'l Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Nortel Alt Int'l Interests Securities Fraud Claim in Nortel Alt Int'l Class 5B shall receive no Distribution under the Plan in respect of its Allowed Nortel Alt Int'l Interests Securities Fraud Claims.

**4.31    Xros Class 1 – Priority Non-Tax Claims against Xros.**

(a)    <u>Impairment and Voting</u>.  Xros Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Xros Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Xros Class 1 agrees to less favorable treatment or has been paid by or on behalf of Xros on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Xros Class 1 shall be paid by Xros in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.32     Xros Class 2 – Secured Claims against Xros.

(a)     Impairment and Voting.  Xros Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Xros Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Xros Class 2 shall be satisfied by, at the option of Xros: (i) payment in Cash by Xros in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim ; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.33     Xros Class 3 – General Unsecured Claims against Xros.

(a)     Impairment and Voting.  Xros Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Xros Class 3 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Each holder of an Allowed General Unsecured Claim in Xros Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Xros.

### 4.34     Xros Class 4 – Subordinated Claims against Xros.

(a)     Impairment and Voting.  Xros Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Xros Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  Each holder of an Allowed Subordinated Claim in Xros Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; _provided_, _however_, that in the event that all Allowed Claims in Xros Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Xros Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Xros.

### 4.35 Xros Class 5A – Xros Interests.

(a) _Impairment and Voting_.  Xros Class 5A is Impaired by the Plan. Each holder of a Xros Interest in Xros Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) _Distributions_.  Each holder of a Xros Interest shall neither receive nor retain any property or interest in property on account of its Xros Interest, and the Xros Interests shall be cancelled; _provided_, _however_, that in the event that all Allowed Claims in Xros Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a Xros Interest in Xros Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Xros.

### 4.36 Xros Class 5B – Xros Interests Securities Fraud Claims.

(a) _Impairment and Voting_.  Xros Class 5B is Impaired by the Plan. Each holder of an Allowed Xros Interests Securities Fraud Claim in Xros Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) _Distributions_.  Each holder of an Allowed Xros Interests Securities Fraud Claim in Xros Class 5B shall receive no Distribution under the Plan in respect of its Allowed Xros Interests Securities Fraud Claims.

### 4.37 Sonoma Class 1 – Priority Non-Tax Claims against Sonoma.

(a) _Impairment and Voting_.  Sonoma Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Sonoma Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b) _Distributions_.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Sonoma Class 1 agrees to less favorable treatment or has been paid by or on behalf of Sonoma on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Sonoma Class 1 shall be paid by Sonoma in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.38 Sonoma Class 2 – Secured Claims against Sonoma.

(a) _Impairment and Voting_.  Sonoma Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Sonoma Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b) _Distributions_.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Sonoma Class 2 shall be satisfied by, at the option of Sonoma: (i) payment in Cash by Sonoma in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or

disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.39    Sonoma Class 3 – General Unsecured Claims against Sonoma.

(a)    <u>Impairment and Voting</u>.  Sonoma Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Sonoma Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim in Sonoma Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Sonoma.

### 4.40    Sonoma Class 4 – Subordinated Claims against Sonoma.

(a)    <u>Impairment and Voting</u>.  Sonoma Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Sonoma Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in Sonoma Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; <u>*provided*</u>, <u>*however*</u>, that in the event that all Allowed Claims in Sonoma Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Sonoma Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Sonoma.

### 4.41    Sonoma Class 5A – Sonoma Interests.

(a)    <u>Impairment and Voting</u>.  Sonoma Class 5A is Impaired by the Plan. Each holder of a Sonoma Interest in Sonoma Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of a Sonoma Interest shall neither receive nor retain any property or interest in property on account of its Sonoma Interest, and the Sonoma Interests shall be cancelled; <u>*provided*</u>, <u>*however*</u>, that in the event that all Allowed Claims in Sonoma Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a Sonoma Interest in Sonoma Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Sonoma.

### 4.42    Sonoma Class 5B – Sonoma Interests Securities Fraud Claims.

(a)    <u>Impairment and Voting</u>.  Sonoma Class 5B is Impaired by the Plan. Each holder of an Allowed Sonoma Interests Securities Fraud Claim in Sonoma Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)  __Distributions__.  Each holder of an Allowed Sonoma Interests Securities Fraud Claim in Sonoma Class 5B shall receive no Distribution under the Plan in respect of its Allowed Sonoma Interests Securities Fraud Claims.

### 4.43  Qtera Class 1 – Priority Non-Tax Claims against Qtera.

(a)  __Impairment and Voting__.  Qtera Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Qtera Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)  __Distributions__.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Qtera Class 1 agrees to less favorable treatment or has been paid by or on behalf of Qtera on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Qtera Class 1 shall be paid by Qtera in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.44  Qtera Class 2 – Secured Claims against Qtera.

(a)  __Impairment and Voting__.  Qtera Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Qtera Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)  __Distributions__.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Qtera Class 2 shall be satisfied by, at the option of Qtera: (i) payment in Cash by Qtera in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.45  Qtera Class 3 – General Unsecured Claims against Qtera.

(a)  __Impairment and Voting__.  Qtera Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Qtera Class 3 is entitled to vote to accept or reject the Plan.

(b)  __Distributions__.  Each holder of an Allowed General Unsecured Claim in Qtera Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Qtera.

### 4.46 Qtera Class 4 – Subordinated Claims against Qtera.

(a) <u>Impairment and Voting</u>. Qtera Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Qtera Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Subordinated Claim in Qtera Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in Qtera Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Qtera Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Qtera.

### 4.47 Qtera Class 5A – Qtera Interests.

(a) <u>Impairment and Voting</u>. Qtera Class 5A is Impaired by the Plan. Each holder of a Qtera Interest in Qtera Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. The Qtera Interests shall be cancelled and each holder of a Qtera Interest shall receive its pro rata Distribution of Reorganized Qtera LLC Interests; *provided*, *however*, that no holder of a Qtera Interest shall receive any Distribution of Creditor Proceeds on account of its former Qtera Interests or its Reorganized Qtera LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in Qtera Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a Qtera Interest in Qtera Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Qtera.

### 4.48 Qtera Class 5B – Qtera Interests Securities Fraud Claims.

(a) <u>Impairment and Voting</u>. Qtera Class 5B is Impaired by the Plan. Each holder of an Allowed Qtera Interests Securities Fraud Claim in Qtera Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Qtera Interests Securities Fraud Claim in Qtera Class 5B shall receive no Distribution under the Plan in respect of its Allowed Qtera Interests Securities Fraud Claims.

### 4.49 CoreTek Class 1 – Priority Non-Tax Claims against CoreTek.

(a) <u>Impairment and Voting</u>. CoreTek Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in CoreTek Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b) <u>Distributions</u>. Except to the extent that the holder of an Allowed Priority Non-Tax Claim in CoreTek Class 1 agrees to less favorable treatment or has been paid by or on behalf of CoreTek on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax

Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in CoreTek Class 1 shall be paid by CoreTek in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.50    CoreTek Class 2 – Secured Claims against CoreTek.

(a)    Impairment and Voting.  CoreTek Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in CoreTek Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in CoreTek Class 2 shall be satisfied by, at the option of CoreTek: (i) payment in Cash by CoreTek in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim;  or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.51    CoreTek Class 3 – General Unsecured Claims against CoreTek.

(a)    Impairment and Voting.  CoreTek Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in CoreTek Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed General Unsecured Claim in CoreTek Class 3 shall receive its Pro Rata Share of Creditor Proceeds from CoreTek.

### 4.52    CoreTek Class 4 – Subordinated Claims against CoreTek.

(a)    Impairment and Voting.  CoreTek Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in CoreTek Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    Distributions.  Each holder of an Allowed Subordinated Claim in CoreTek Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in CoreTek Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in CoreTek Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from CoreTek.

### 4.53    CoreTek Class 5A – CoreTek Interests.

(a)    <u>Impairment and Voting</u>.  CoreTek Class 5A is Impaired by the Plan. Each holder of a CoreTek Interest in CoreTek Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of a CoreTek Interest shall neither receive nor retain any property or interest in property on account of its CoreTek Interest, and the CoreTek Interests shall be cancelled; *provided*, *however*, that in the event that all Allowed Claims in CoreTek Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of a CoreTek Interest in CoreTek Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from CoreTek.

### 4.54    CoreTek Class 5B – CoreTek Interests Securities Fraud Claims.

(a)    <u>Impairment and Voting</u>.  CoreTek Class 5B is Impaired by the Plan. Each holder of an Allowed CoreTek Interests Securities Fraud Claim in CoreTek Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed CoreTek Interests Securities Fraud Claim in CoreTek Class 5B shall receive no Distribution under the Plan in respect of its Allowed CoreTek Interests Securities Fraud Claims.

### 4.55    NN Applications Class 1 – Priority Non-Tax Claims against NN Applications.

(a)    <u>Impairment and Voting</u>.  NN Applications Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NN Applications Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NN Applications Class 1 agrees to less favorable treatment or has been paid by or on behalf of NN Applications on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NN Applications Class 1 shall be paid by NN Applications in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.56    NN Applications Class 2 – Secured Claims against NN Applications.

(a)    <u>Impairment and Voting</u>.  NN Applications Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NN Applications Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NN Applications Class 2 shall be satisfied by, at the option of NN Applications: (i) payment in

Cash by NN Applications in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

**4.57    NN Applications Class 3 – General Unsecured Claims against NN Applications.**

(a)    _Impairment and Voting_.  NN Applications Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NN Applications Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed General Unsecured Claim in NN Applications Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NN Applications.

**4.58    NN Applications Class 4 – Subordinated Claims against NN Applications.**

(a)    _Impairment and Voting_.  NN Applications Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NN Applications Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    _Distributions_.  Each holder of an Allowed Subordinated Claim in NN Applications Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; _provided_, _however_, that in the event that all Allowed Claims in NN Applications Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NN Applications Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Applications.

**4.59    NN Applications Class 5A – NN Applications Interests.**

(a)    _Impairment and Voting_.  NN Applications Class 5A is Impaired by the Plan. Each holder of an NN Applications Interest in NN Applications Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    _Distributions_.  Each holder of an NN Applications Interest shall neither receive nor retain any property or interest in property on account of its NN Applications Interest, and the NN Applications Interests shall be cancelled; _provided_, _however_, that in the event that all Allowed Claims in NN Applications Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NN Applications Interest in NN Applications Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Applications.

### 4.60    NN Applications Class 5B – NN Applications Interests Securities Fraud Claims.

(a)    <u>Impairment and Voting</u>.  NN Applications Class 5B is Impaired by the Plan. Each holder of an Allowed NN Applications Interests Securities Fraud Claim in NN Applications Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed NN Applications Interests Securities Fraud Claim in NN Applications Class 5B shall receive no Distribution under the Plan in respect of its Allowed NN Applications Interests Securities Fraud Claims.

### 4.61    NN Optical Class 1 – Priority Non-Tax Claims against NN Optical.

(a)    <u>Impairment and Voting</u>.  NN Optical Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NN Optical Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NN Optical Class 1 agrees to less favorable treatment or has been paid by or on behalf of NN Optical on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NN Optical Class 1 shall be paid by NN Optical in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.62    NN Optical Class 2 – Secured Claims against NN Optical.

(a)    <u>Impairment and Voting</u>.  NN Optical Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NN Optical Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NN Optical Class 2 shall be satisfied by, at the option of NN Optical: (i) payment in Cash by NN Optical in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.63 NN Optical Class 3 – General Unsecured Claims against NN Optical.

(a) <u>Impairment and Voting</u>. NN Optical Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NN Optical Class 3 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed General Unsecured Claim in NN Optical Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NN Optical.

### 4.64 NN Optical Class 4 – Subordinated Claims against NN Optical.

(a) <u>Impairment and Voting</u>. NN Optical Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NN Optical Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Subordinated Claim in NN Optical Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in NN Optical Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NN Optical Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Optical.

### 4.65 NN Optical Class 5A – NN Optical Interests.

(a) <u>Impairment and Voting</u>. NN Optical Class 5A is Impaired by the Plan. Each holder of an NN Optical Interest in NN Optical Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. Each holder of an NN Optical Interest shall neither receive nor retain any property or interest in property on account of its NN Optical Interest, and the NN Optical Interests shall be cancelled; *provided*, *however*, that in the event that all Allowed Claims in NN Optical Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NN Optical Interest in NN Optical Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Optical.

### 4.66 NN Optical Class 5B – NN Optical Interests Securities Fraud Claims.

(a) <u>Impairment and Voting</u>. NN Optical Class 5B is Impaired by the Plan. Each holder of an Allowed NN Optical Interests Securities Fraud Claim in NN Optical Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed NN Optical Interests Securities Fraud Claim in NN Optical Class 5B shall receive no Distribution under the Plan in respect of its Allowed NN Optical Interests Securities Fraud Claims.

**4.67    NN HPOCS Class 1 – Priority Non-Tax Claims against NN HPOCS.**

(a)    <u>Impairment and Voting</u>.  NN HPOCS Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NN HPOCS Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NN HPOCS Class 1 agrees to less favorable treatment or has been paid by or on behalf of NN HPOCS on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NN HPOCS Class 1 shall be paid by NN HPOCS in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

**4.68    NN HPOCS Class 2 – Secured Claims against NN HPOCS.**

(a)    <u>Impairment and Voting</u>.  NN HPOCS Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NN HPOCS Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NN HPOCS Class 2 shall be satisfied by, at the option of NN HPOCS: (i) payment in Cash by NN HPOCS in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

**4.69    NN HPOCS Class 3 – General Unsecured Claims against NN HPOCS.**

(a)    <u>Impairment and Voting</u>.  NN HPOCS Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NN HPOCS Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim in NN HPOCS Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NN HPOCS.

**4.70    NN HPOCS Class 4 – Subordinated Claims against NN HPOCS.**

(a)    <u>Impairment and Voting</u>.  NN HPOCS Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NN HPOCS Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)　Distributions.  Each holder of an Allowed Subordinated Claim in NN HPOCS Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in NN HPOCS Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NN HPOCS Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN HPOCS.

### 4.71　NN HPOCS Class 5A – NN HPOCS Interests.

(a)　Impairment and Voting.  NN HPOCS Class 5A is Impaired by the Plan. Each holder of an NN HPOCS Interest in NN HPOCS Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)　Distributions.  The NN HPOCS Interests shall be cancelled and each holder of an NN HPOCS Interest shall receive its pro rata Distribution of Reorganized NN HPOCS LLC Interests; *provided*, *however*, that no holder of an NN HPOCS Interest shall receive any Distribution of Creditor Proceeds on account of its former NN HPOCS Interests or its Reorganized NN HPOCS LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in NN HPOCS Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NN HPOCS Interest in NN HPOCS Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN HPOCS.

### 4.72　NN HPOCS Class 5B – NN HPOCS Interests Securities Fraud Claims.

(a)　Impairment and Voting.  NN HPOCS Class 5B is Impaired by the Plan. Each holder of an Allowed NN HPOCS Interests Securities Fraud Claim in NN HPOCS Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)　Distributions.  Each holder of an Allowed NN HPOCS Interests Securities Fraud Claim in NN HPOCS Class 5B shall receive no Distribution under the Plan in respect of its Allowed NN HPOCS Interests Securities Fraud Claims.

### 4.73　Architel Class 1 – Priority Non-Tax Claims against Architel.

(a)　Impairment and Voting.  Architel Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in Architel Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)　Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in Architel Class 1 agrees to less favorable treatment or has been paid by or on behalf of Architel on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in Architel Class 1 shall be paid by Architel in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.74    Architel Class 2 – Secured Claims against Architel.

(a)    <u>Impairment and Voting</u>.  Architel Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in Architel Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in Architel Class 2 shall be satisfied by, at the option of Architel: (i) payment in Cash by Architel in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.75    Architel Class 3 – General Unsecured Claims against Architel.

(a)    <u>Impairment and Voting</u>.  Architel Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in Architel Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim in Architel Class 3 shall receive its Pro Rata Share of Creditor Proceeds from Architel.

### 4.76    Architel Class 4 – Subordinated Claims against Architel.

(a)    <u>Impairment and Voting</u>.  Architel Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in Architel Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in Architel Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; <u>provided</u>, <u>however</u>, that in the event that all Allowed Claims in Architel Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in Architel Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from Architel.

### 4.77    Architel Class 5A – Architel Interests.

(a)    <u>Impairment and Voting</u>.  Architel Class 5A is Impaired by the Plan. Each holder of an Architel Interest in Architel Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  Each holder of an Architel Interest shall neither receive nor retain any property or interest in property on account of its Architel Interest, and the Architel Interests shall be cancelled; *provided*, *however*, that in the event that all Allowed Claims in Architel Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Architel Interest in Architel Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from Architel.

### 4.78     Architel Class 5B – Architel Interests Securities Fraud Claims.

(a)     Impairment and Voting.  Architel Class 5B is Impaired by the Plan. Each holder of an Allowed Architel Interests Securities Fraud Claim in Architel Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  Each holder of an Allowed Architel Interests Securities Fraud Claim in Architel Class 5B shall receive no Distribution under the Plan in respect of its Allowed Architel Interests Securities Fraud Claims.

### 4.79     NNII Class 1 – Priority Non-Tax Claims against NNII.

(a)     Impairment and Voting.  NNII Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NNII Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NNII Class 1 agrees to less favorable treatment or has been paid by or on behalf of NNII on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NNII Class 1 shall be paid by NNII in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.80     NNII Class 2 – Secured Claims against NNII.

(a)     Impairment and Voting.  NNII Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NNII Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NNII Class 2 shall be satisfied by, at the option of NNII: (i) payment in Cash by NNII in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under

clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.81    NNII Class 3 – General Unsecured Claims against NNII.

(a)    _Impairment and Voting_.  NNII Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NNII Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed General Unsecured Claim in NNII Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NNII.

### 4.82    NNII Class 4 – Subordinated Claims against NNII.

(a)    _Impairment and Voting_.  NNII Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NNII Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    _Distributions_.  Each holder of an Allowed Subordinated Claim in NNII Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; _provided_, _however_, that in the event that all Allowed Claims in NNII Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NNII Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNII.

### 4.83    NNII Class 5A – NNII Interests.

(a)    _Impairment and Voting_.  NNII Class 5A is Impaired by the Plan. Each holder of an NNII Interest in NNII Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    _Distributions_.  The NNII Interests shall be cancelled and each holder of an NNII Interest shall receive its pro rata Distribution of Reorganized NNII LLC Interests; _provided_, _however_, that no holder of an NNII Interest shall receive any Distribution of Creditor Proceeds on account of its former NNII Interests or its Reorganized NNII LLC Interests; _provided_, _further_, that in the event that all Allowed Claims in NNII Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NNII Interest in NNII Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NNII.

### 4.84    NNII Class 5B – NNII Interests Securities Fraud Claims.

(a)    _Impairment and Voting_.  NNII Class 5B is Impaired by the Plan. Each holder of an Allowed NNII Interests Securities Fraud Claim in NNII Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)     Distributions.  Each holder of an Allowed NNII Interests Securities Fraud Claim in NNII Class 5B shall receive no Distribution under the Plan in respect of its Allowed NNII Interests Securities Fraud Claims.

### 4.85     NTI Class 1 – Priority Non-Tax Claims against NTI.

(a)     Impairment and Voting.  NTI Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NTI Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NTI Class 1 agrees to less favorable treatment or has been paid by or on behalf of NTI on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NTI Class 1 shall be paid by NTI in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.86     NTI Class 2 – Secured Claims against NTI.

(a)     Impairment and Voting.  NTI Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NTI Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NTI Class 2 shall be satisfied by, at the option of NTI: (i) payment in Cash by NTI in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.87     NTI Class 3 – General Unsecured Claims against NTI.

(a)     Impairment and Voting.  NTI Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NTI Class 3 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Each holder of an Allowed General Unsecured Claim in NTI Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NTI.

**4.88    NTI Class 4 – Subordinated Claims against NTI.**

(a)    <u>Impairment and Voting</u>.  NTI Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NTI Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Subordinated Claim in NTI Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in NTI Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NTI Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NTI.

**4.89    NTI Class 5A – NTI Interests.**

(a)    <u>Impairment and Voting</u>.  NTI Class 5A is Impaired by the Plan. Each holder of an NTI Interest in NTI Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  The NTI Interests shall be cancelled and each holder of an NTI Interest shall receive its pro rata Distribution of Reorganized NTI LLC Interests; *provided*, *however*, that no holder of an NTI Interest shall receive any Distribution of Creditor Proceeds on account of its former NTI Interests or its Reorganized NTI LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in NTI Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NTI Interest in NTI Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NTI.

**4.90    NTI Class 5B – NTI Interests Securities Fraud Claims.**

(a)    <u>Impairment and Voting</u>.  NTI Class 5B is Impaired by the Plan. Each holder of an Allowed NTI Interests Securities Fraud Claim in NTI Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed NTI Interests Securities Fraud Claim in NTI Class 5B shall receive no Distribution under the Plan in respect of its Allowed NTI Interests Securities Fraud Claims.

**4.91    NN Cable Class 1 – Priority Non-Tax Claims against NN Cable.**

(a)    <u>Impairment and Voting</u>.  NN Cable Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 agrees to less favorable treatment or has been paid by or on behalf of NN Cable on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax

Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 shall be paid by NN Cable in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

### 4.92    NN Cable Class 2 – Secured Claims against NN Cable.

(a)    Impairment and Voting.  NN Cable Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NN Cable Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NN Cable Class 2 shall be satisfied by, at the option of NN Cable: (i) payment in Cash by NN Cable in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

### 4.93    NN Cable Class 3 – General Unsecured Claims against NN Cable.

(a)    Impairment and Voting.  NN Cable Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NN Cable Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed General Unsecured Claim in NN Cable Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NN Cable.

### 4.94    NN Cable Class 4 – Subordinated Claims against NN Cable.

(a)    Impairment and Voting.  NN Cable Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NN Cable Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    Distributions.  Each holder of an Allowed Subordinated Claim in NN Cable Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided*, *however*, that in the event that all Allowed Claims in NN Cable Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NN Cable Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Cable.

**4.95    NN Cable Class 5A – NN Cable Interests.**

(a)    <u>Impairment and Voting</u>.  NN Cable Class 5A is Impaired by the Plan. Each holder of an NN Cable Interest in NN Cable Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  The NN Cable Interests shall be cancelled and each holder of an NN Cable Interest shall receive its pro rata Distribution of Reorganized NN Cable LLC Interests; *provided*, *however*, that no holder of an Allowed NN Cable Interest shall receive any Distribution of Creditor Proceeds on account of its former NN Cable Interests or its Reorganized NN Cable LLC Interests; *provided*, *further*, that in the event that all Allowed Claims in NN Cable Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NN Cable Interest in NN Cable Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Cable.

**4.96    NN Cable Class 5B – NN Cable Interests Securities Fraud Claims.**

(a)    <u>Impairment and Voting</u>.  NN Cable Class 5B is Impaired by the Plan. Each holder of an Allowed NN Cable Interests Securities Fraud Claim in NN Cable Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed NN Cable Interests Securities Fraud Claim in NN Cable Class 5B shall receive no Distribution under the Plan in respect of its Allowed NN Cable Interests Securities Fraud Claims.

**ARTICLE 5.**
**IMPLEMENTATION OF THE PLAN**

**5.1    Plan Administrator.**

(a)    <u>Appointment</u>.  John J. Ray, III, shall serve as Plan Administrator for each of the Debtors, the Reorganized Debtors and the Liquidating Debtors pursuant to and in accordance with the provisions of the Plan and the Plan Administration Agreement.

(b)    <u>Authority</u>.  The Plan Administrator shall have the authority and right on behalf of each of the Debtors, the Reorganized Debtors and the Liquidating Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan and the Plan Administration Agreement in accordance with the provisions therein.

(c)    <u>Compensation of the Plan Administrator</u>.  In addition to reimbursement for actual out-of-pocket expenses incurred by the Plan Administrator, the Plan Administrator shall be entitled to receive reasonable compensation for services rendered on behalf of the Debtors, the Reorganized Debtors and the Liquidating Debtors in an amount and on such terms as may be reflected in the Plan Administration Agreement.

(d)    <u>No Liability of Plan Administrator</u>.  The Plan Administrator shall have no liability whatsoever for any acts or omissions to the Debtors, the Reorganized Debtors,

the Liquidating Debtors or holders of claims against or interests in the Debtors, the Reorganized Debtors or the Liquidating Debtors other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty by the Plan Administrator as determined by a Final Order, *provided that*, the Plan Administrator shall have no liability for such acts or omissions if approved by or undertaken at the request or on behalf of the Plan Advisory Committee. Each of the Debtors, the Reorganized Debtors and the Liquidating Debtors shall indemnify and hold harmless the Plan Administrator for any losses, liabilities and costs incurred in such capacity to the fullest extent allowed by Delaware law, other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty as determined by a Final Order.

        (e)     <u>Termination of Plan Administrator</u>. The duties, responsibilities and powers of the Plan Administrator shall terminate pursuant to the terms of the Plan Administration Agreement.

        (f)     <u>Establishment of Reserve Accounts</u>. On the Effective Date, the Debtors shall fund the Disputed Claims Reserve in such amounts, as agreed by the Debtors and the Plan Administrator in accordance with the terms of the Plan Administration Agreement to be necessary, to make sufficient future payments with respect to Disputed Claims as provided by the Plan.

## 5.2    Plan Advisory Committee.

        (a)     <u>Appointment</u>. On the Effective Date, the Plan Advisory Committee shall be deemed appointed and shall adopt by-laws to govern the actions of the Plan Advisory Committee.

        (b)     <u>Membership</u>. The Plan Advisory Committee shall consist of up to one (1) member of the Creditors' Committee and two (2) members of the Ad Hoc Group of Bondholders. Subject to the consent of the Debtors, such consent not to be unreasonably withheld, such members shall be chosen from those members of the Creditors' Committee and the Ad Hoc Group of Bondholders who notify counsel to the Creditors' Committee and counsel to the Debtors of their willingness to serve on the Plan Advisory Committee in writing no later than fifteen (15) days prior to the deadline to vote to accept or reject this Plan. In the event that less than one (1) member of the Creditors' Committee or less than two (2) members of the Ad Hoc Group of Bondholders notify counsel to the Creditors' Committee and counsel to the Debtors of their willingness to serve on the Plan Advisory Committee within the specified period, then the Creditors' Committee and the Ad Hoc Group of Bondholders, subject to the consent of the Debtors, such consent not to be unreasonably withheld, will choose from among the holders of Unsecured Claims to fill any vacancy until three (3) members have been designated. Unless and until such vacancy is filled, the Plan Advisory Committee shall function with such reduced membership. In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor, subject to the consent of the Reorganized Debtors, such consent not be to unreasonably withheld, from among the holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership. In the event that all members of the Plan Advisory Committee resign, the

Plan Administrator shall use reasonable efforts to designate successor members from among the holders of Unsecured Claims and to maintain such composition of membership as existed prior to resignation; *provided that*, until at least one successor member is appointed, the Plan Administrator shall have full authority to act on behalf of the Plan Advisory Committee.

(c)     <u>Fiduciary Duties</u>.  The fiduciary duties as well as the privileges, immunities and protections that apply to the Creditors' Committee prior to the Effective Date shall apply to the Plan Advisory Committee and to the Plan Administrator if acting on behalf of, at the direction of or with the consent of the Plan Advisory Committee.  The duties and powers of the Plan Advisory Committee shall continue until such time as all of the Chapter 11 Cases have been fully administered.

(d)     <u>Rights and Duties</u>.  The Plan Advisory Committee's role shall be to advise and approve the actions of the Plan Administrator as more particularly set forth in the Plan and the Plan Administration Agreement.  The Plan Advisory Committee shall have the rights and duties set forth in the Plan Administration Agreement.

(e)     <u>No Liability of Plan Advisory Committee</u>.  The members of the Plan Advisory Committee shall have no liability whatsoever for any acts or omissions to the Debtors, the Reorganized Debtors, the Liquidating Debtors or holders of Claims against or Interests in the Debtors other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty by the Plan Advisory Committee or its members, individually, as determined by a Final Order.  Each of the Debtors, the Reorganized Debtors and the Liquidating Debtors shall indemnify and hold harmless the Plan Advisory Committee and its members, individually, for any losses, liabilities, and costs incurred in such capacity to the fullest extent allowed by Delaware law, other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty as determined by a Final Order.

**5.3     Closing of Chapter 11 Case.**  After the Chapter 11 Case of a Liquidating Debtor or a Reorganized Debtor has been fully administered, the Plan Administrator shall File all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Liquidating Debtor's or Reorganized Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  The Plan Administrator's authority shall continue until such time as all of the Chapter 11 Cases have been fully administered.

## ARTICLE 6.
## CORPORATE FORM AND ACTION

**6.1     NNI Corporate Form and Vesting.**

(a)     On the Effective Date, Reorganized NNI shall maintain its current corporate form, with all powers of a corporation under the laws of its state of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, for the purpose of fulfilling Reorganized NNI's obligations under the 363 Sale Agreements, monetizing Reorganized NNI's Residual Assets and otherwise effectuating all aspects of the Plan pertaining to Reorganized NNI.

(b)     On the Effective Date, Reorganized NNI shall be vested with the Assets of NNI as provided in Section 11.10 of the Plan.

**6.2     Reorganized Subsidiaries Corporate Form and Vesting.**

(a)     Prior to the Effective Date, each of the Reorganized Subsidiaries shall be formed solely for the purpose of fulfilling the obligations of such Reorganized Subsidiary under the 363 Sale Agreements, monetizing the Residual Assets of such Reorganized Subsidiary and otherwise effectuating all aspects of the Plan pertaining to such Reorganized Subsidiary.

(b)     On or immediately following the Effective Date, NNCALA shall transfer to Reorganized NNCALA, NNCC shall transfer to Reorganized NNCC, Nortel Alt shall transfer to Reorganized Nortel Alt, Nortel Alt Int'l shall transfer to Reorganized Nortel Alt Int'l, Xros shall transfer to Reorganized Xros, Sonoma shall transfer to Reorganized Sonoma, Qtera shall transfer to Reorganized Qtera, CoreTek shall transfer to Reorganized CoreTek, NN Applications shall transfer to Reorganized NN Applications, NN Optical shall transfer to Reorganized NN Optical, NN HPOCS shall transfer to Reorganized NN HPOCS, Architel shall transfer to Reorganized Architel, NNII shall transfer to Reorganized NNII, NTI shall transfer to Reorganized NTI and NN Cable shall transfer to Reorganized NN Cable, in each case, all of the Assets of such respective Debtor, and each such Reorganized Subsidiary shall be vested with the respective Debtor's Assets as provided in Section 11.10 of the Plan.

(c)     On or immediately following the Effective Date, in the interest of administering the Plan, (i) the limited liability membership interest of each of Reorganized NNCALA, Reorganized NNCC, Reorganized Nortel Alt, Reorganized Xros, Reorganized Sonoma, Reorganized Qtera, Reorganized CoreTek, Reorganized NN Applications, Reorganized NN Optical, Reorganized Architel, Reorganized NNII, Reorganized NTI, and Reorganized NN Cable shall be issued to Reorganized NNI, (ii) the limited liability membership interest of Reorganized NN HPOCS shall be issued to Reorganized NN Optical and (iii) and the limited liability membership interest of Reorganized Nortel Alt Int'l shall be issued to Nortel Alt.

**6.3     Dissolution of the Liquidating Debtors.** On the Effective Date, each of the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith.

**6.4     Post-Effective Date Management.**

(a)     On the Effective Date, the board of directors of Reorganized NNI shall consist of one (1) natural person selected by the Plan Administrator, which such person may be the Plan Administrator, to serve as the board of directors of Reorganized NNI through the closing of Reorganized NNI's Chapter 11 Case in accordance with Section 5.3 of the Plan. The current officers of NNI shall continue to serve as the officers of Reorganized NNI in accordance with applicable non-bankruptcy law, any employment agreement with NNI entered into after the Petition Date, and NNI's by-laws, as the same may be amended from time to time,

through the closing of Reorganized NNI's Chapter 11 Case, unless an officer resigns or is removed by the board of directors of Reorganized NNI.

(b)    On the Effective Date, the manager of each Reorganized Subsidiary shall consist of one (1) natural person selected by the Plan Administrator, which such person may be the Plan Administrator, to serve as the manager of such Reorganized Subsidiary through the closing of such Reorganized Subsidiary's Chapter 11 Case in accordance with Section 5.3 of the Plan. The manager shall act at the direction of the Plan Administrator and in accordance with the Plan.

(c)    The current officers of each Reorganized Subsidiary shall continue to serve in such capacity for the respective Reorganized Subsidiary in accordance with applicable non-bankruptcy law, any employment agreement with such applicable Debtor or Reorganized Subsidiary entered into after the Petition Date, and such Reorganized Subsidiary's certificate of formation and operating agreement, as the same may be amended from time to time, through the closing of such Reorganized Subsidiary's Chapter 11 Case, unless a current officer resigns or is removed by the manager of such Reorganized Subsidiary.

**6.5    Corporate Existence.**  After the Effective Date, the Plan Administrator may in accordance with the Plan Administration Agreement (a) maintain any Reorganized Debtor as a corporation or limited liability company in good standing until such time as all aspects of the Plan pertaining to such Reorganized Debtor have been completed including, but not limited to, performing its obligations under the 363 Sale Agreements, monetizing or otherwise disposing of its Residual Assets and Distributing its Creditor Proceeds in accordance with the Plan, (b) dissolve any Reorganized Debtor or complete the winding up of such Reorganized Debtor without the necessity for any further actions to be taken by or on behalf of such Reorganized Debtor, its shareholder, its members or for any payments to be made in connection therewith, subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, transferring all or part of the Residual Assets of such Reorganized Debtor to a liquidating trust) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Reorganized Debtor or (c) dissolve any Controlled Non-Debtor Affiliate or complete the winding up of such Controlled Non-Debtor Affiliate in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Controlled Non-Debtor Affiliate.

**6.6    Certificate of Incorporation or Certificate of Formation.**  As of the Effective Date, the certificate of incorporation, certificate of formation, by-laws and operating agreement, as applicable, of each Reorganized Debtor shall be amended to satisfy the provisions of the Plan and the Bankruptcy Code and shall (a) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (b) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein, in each case without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders, managers or members of the Reorganized Debtors.

The amended certificate, by-laws and operating agreement, as applicable, of such Reorganized Debtor shall be included in the Plan Supplement.

6.7 **Wind-Down.** The Plan Administrator shall effectuate the monetization, wind-down and liquidation of each Reorganized Debtors' Residual Assets (it being understood that such may include the transfer of all or part of the Residual Assets of such Reorganized Debtor to one or more liquidating trusts within the meaning of Treas. Reg. §301.7701-4).

6.8 **Other Corporate Action.** Without limiting the foregoing, in accordance with the requirements of the Plan and the terms of the Plan Administration Agreement, from and after the Effective Date, the Reorganized Debtors and the Plan Administrator may take any and all actions they deem appropriate in order to consummate the transactions contemplated herein, including, without limitation, to perform their respective obligations under the 363 Sale Agreements, to sell or otherwise dispose of their respective Residual Assets and wind up their respective affairs and, notwithstanding any provision contained in the Reorganized Debtors' articles of incorporation, articles of formation, operating agreement or by-laws to the contrary, such Reorganized Debtors shall not require the affirmative vote of holders of interests in order to take any corporate or limited liability company action including to (i) consummate a sale transaction, (ii) compromise and settle Claims and Causes of Action of or against the Reorganized Debtors and their Estates and (iii) dissolve, merge or consolidate with any other Entity.

## ARTICLE 7.
## TREATMENT OF EXECUTORY CONTRACTS

7.1 **Previous Assumption, Assignment and Rejection.** Throughout the Chapter 11 Cases, the Bankruptcy Court has established deadlines and procedures for the assumption and rejection of certain executory contracts and unexpired leases by the Debtors, including in connection with the 363 Sale Orders and 363 Sales, and allocated responsibility for payment of cure amounts with respect to such contracts and leases. Any executory contracts and unexpired leases of the Debtors not assumed and assigned or rejected prior to the Confirmation Date or with respect to which the Debtors have not otherwise Filed a Notice of Assumption and Assignment or obtained an order assuming or rejecting the contract or lease prior to the Confirmation Date (the "Remaining Contracts") shall be rejected pursuant to Section 7.5 of this Plan unless assumed or assumed and assigned pursuant to Section 7.2 of this Plan. Notwithstanding anything in this Article 7 to the contrary, to the extent the Debtors have Filed a Notice of Assumption and Assignment or motion for the assumption or assumption and assignment of an executory contract or unexpired lease prior to the Confirmation Date, but the Bankruptcy Court has not yet entered an order approving such assumption or assumption and assignment and fixing the cure amount therefore or the assumption or assumption and assignment has otherwise not yet become effective, the assumption or assumption and assignment of the contract or lease and any cure amount that may be owing in connection therewith shall be governed by the terms of the applicable order or procedure.

7.2 **Assumption and Assignment of Remaining Contracts.** As of the Effective Date, the Debtors shall assume or assume and assign, as applicable, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, each of the Remaining Contracts of the

Debtors that are identified in Exhibit E hereto that have not expired under their own terms prior to the Effective Date. Each Remaining Contract identified in Exhibit E hereto shall include modifications, amendments, supplements, restatements or other agreements, including guarantees thereof, made directly or indirectly by any Debtor in any agreement, instrument or other document that in any manner affects such Remaining Contract, without regard to whether such agreement, instrument or other document is identified in Exhibit E. The Debtors reserve the right to amend such Exhibit not later than ten (10) days prior to the Confirmation Hearing either to: (a) delete any executory contract or unexpired lease listed therein and provide for its rejection pursuant to Section 7.5 hereof; or (b) add any executory contract or unexpired lease to such Exhibit, thus providing for its assumption or assumption and assignment, as applicable, pursuant to this Section 7.2. The Debtors shall provide notice of any such amendment of such Exhibit to the parties to the executory contract or lease affected thereby and counsel for the Creditors' Committee not later than ten (10) days prior to the Confirmation Hearing. The Confirmation Order shall constitute an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code approving all such assumptions or assumptions and assignments, as applicable, described in this Section 7.2, as of the Effective Date. If any provision of an executory contract to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract, the effectiveness of such provision shall be limited or nullified to the fullest extent provided under section 365(f) of the Bankruptcy Code.

7.3 **Cure Payments; Assurance of Performance.** Any monetary defaults under each Remaining Contract to be assumed under the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, in either of the following ways: (a) by payment of the default amount in Cash, in full, on the Effective Date or as soon as practicable thereafter; or (b) by payment of the default amount on such other terms as may be agreed to by the Debtors and the non-Debtor parties to such Remaining Contract. In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtor or Debtors assuming such Remaining Contract, or an assignee thereof, to provide adequate assurance of future performance under the Remaining Contract to be assumed or assumed and assigned, as applicable or (iii) any other matter pertaining to assumption or assumption and assignment of the Remaining Contract to be assumed, the Debtor or Debtors assuming such Remaining Contract shall pay all required cure amounts promptly following the entry of a Final Order resolving the dispute; provided that the Debtors reserve the right to withdraw their request for assumption of any Remaining Contract at any time prior to the entry of such an order. The Debtors may reject or nullify the assumption of any executory contract no later than five (5) Business Days after the entry of a Final Order of the Bankruptcy Court determining the cure amount or any request for adequate assurance of future performance required to assume such executory contract.

7.4 **Objections to Assumption of Remaining Contracts.**

(a) To the extent that any party to a Remaining Contract identified for assumption asserts a claim for arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code, or has any other objection with respect to any proposed assumption, cure or assignment on the terms and conditions provided herein (including, without limitation, in Exhibit E hereto), all such Claims for arrearages and damages and objections must be Filed and served: (a) as to any Remaining Contract identified in Exhibit E hereto that is mailed to any party to any such Remaining Contract, along with all other solicitation materials accompanying the

Plan, within the same deadline and in the same manner established for the filing and service of objections to Confirmation of the Plan; and (b) as to any Remaining Contract identified in any subsequent amendments to Exhibit E hereto that is mailed to any party to any such Remaining Contract not later than ten (10) days prior to the Confirmation Hearing, in such a manner as to be Filed and received by the Bankruptcy Court and the Debtors and counsel thereto, no later than the earlier of (i) twenty (20) days after such subsequent amendment is served and (ii) three (3) days prior to the Confirmation Hearing.

(b)     Failure to assert such claims for arrearages and damages and any objections in the manner described above shall constitute consent to the proposed assumption, revestment, cure or assignment on the terms and conditions provided herein, including an acknowledgement that the proposed assumption and/or assignment provides adequate assurance of future performance and that the amount identified for "cure" in Exhibit E hereto is the amount necessary to cover any and all outstanding defaults under the Remaining Contract to be assumed, as well as an acknowledgement and agreement that no other defaults exist under such Remaining Contract.

(c)     If any assumption or assumption and assignment of a Remaining Contract proposed herein for any reason is not approved by the Bankruptcy Court, then the Debtors shall be entitled, in their sole discretion, upon written notice to the applicable non-Debtor party to such Remaining Contract, to deem such Remaining Contract to have been rejected pursuant to the provisions of Section 7.5 below.

**7.5     Rejection.**  Except for those executory contracts and unexpired leases that (a) are assumed pursuant to this Plan, (b) have been assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court or (c) are the subject of a pending motion or notice before the Bankruptcy Court with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases, as of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of the Bankruptcy Code; *provided*, *however*, that neither the inclusion by the Debtors of a contract or lease in Exhibit E nor anything contained in this Article 7 shall constitute an admission by any Debtor that such contract or lease is an executory contract or unexpired lease or that any Debtor or its successors and assigns has any liability thereunder.

**7.6     Approval of Rejection; Rejection Damages Claims Bar Date.**  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of executory contracts and unexpired leases under Section 7.5 above pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the Effective Date, or such Claim shall receive no Distribution under the Plan or otherwise on account of such Claim.

**7.7     Postpetition Modification of Executory Contracts.**  Unless otherwise agreed by the parties and approved by the Bankruptcy Court, modifications, amendments, supplements and restatements to prepetition executory contracts that have been executed by the Debtors during the Chapter 11 Cases will not be deemed to alter the pre-petition nature of the executory contract, or the validity, priority or amount of any Claims that may arise in connection therewith.

**7.8     Pre-existing Obligations to the Debtors under Executory Contracts.**
Rejection or repudiation of any executory contract pursuant to the Plan or otherwise will not
constitute a termination of pre-existing obligations owed to the Debtors under such contracts.

# ARTICLE 8.
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

**8.1     Voting of Claims.**  Each holder of an Allowed Claim in an Impaired Class
of Claims that is entitled to vote on the Plan pursuant to Article 3 and Article 4 of the Plan shall
be entitled to vote separately to accept or reject the Plan, as provided in the order entered by the
Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes
to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**8.2     Nonconsensual Confirmation.**  If any Impaired Class of Claims entitled
to vote on the Plan shall not accept the Plan by the requisite majority provided in section 1126(c)
of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with
Section 13.2 of the Plan or to undertake to have the Bankruptcy Court confirm the Plan under
section 1129(b) of the Bankruptcy Code or both.  With respect to Impaired Classes of Claims or
Interests that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court
confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**8.3     Distributions of Creditor Proceeds.**  After the satisfaction in full of
Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-
Tax Claims and Allowed Secured Claims (to the extent the Plan Administrator determines in
accordance with the Plan Administration Agreement that the relevant Debtor will pay such
Allowed Secured Claim in Cash) against a Debtor, the Disbursing Agent shall make a
Distribution of its Creditor Proceeds in accordance with the provisions of the Plan (i) to each
holder of an Allowed Claim as of the Effective Date against such Debtor, within sixty (60) days
of the Effective Date, or as soon thereafter as practicable, and (ii) to each holder of an Allowed
Claim that is allowed after the Effective Date against such Debtor, in accordance with Section
9.4 herein.  After the initial Distribution with respect to any Allowed Claim, the Disbursing
Agent shall make Distributions of Creditor Proceeds in accordance with the Plan to holders of
Allowed Claims against such Debtor quarterly on March 31st, June 30th, September 30th and
December 31st of each year (each such Distribution, an "Interim Distribution") and on the Final
Distribution Date.  Notwithstanding the foregoing, the Plan Administrator may determine in
accordance with the terms of the Plan Administration Agreement to direct the Disbursing Agent
(a) to make Distributions more frequently than quarterly on dates other than the Interim
Distribution dates, (b) not to make an Interim Distribution on the basis that the costs of making
such Interim Distribution exceed the Distribution amount or (c) not to make a Distribution to the
holder of an Allowed Claim on the basis that it has not yet determined whether to object to such
Claim in which case such Claim shall be treated as a Disputed Claim for purposes of
Distributions under the Plan until the Plan Administrator (i) determines not to object to such
Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow
such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed
by a Final Order.

**8.4　Minimum Distribution and Manner of Payment.**  No payment of Creditor Proceeds of less than $100 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor.  Such amounts shall be deemed redistributed to other holders of Allowed Claims against such Debtor and, accordingly, shall be distributed in accordance with the provisions of the Plan and the Bankruptcy Code.  Any payment of Cash made pursuant to the Plan may be made at the option of the Disbursing Agent either by check or by wire transfer.

**8.5　Distributions to Indenture Trustees.**  Distributions for the benefit of holders of Allowed Claims for the NNCC 2026 Notes shall be made upon the surrender of the NNCC 2026 Notes in accordance with Section 8.14, or as soon as practicable thereafter, to the NNCC Notes Indenture Trustee. Distributions for the benefit of holders of Allowed Senior Notes NNI Guarantee Claims shall be made on the Distribution Record Date, or as soon as practicable thereafter, to the NNC/NNL Notes Indenture Trustee.  The NNCC Notes Indenture Trustee or NNC/NNL Notes Indenture Trustee shall, in turn, promptly administer the Distributions to the holders of Allowed Claims for NNCC 2026 Notes and holders of Allowed Senior Notes NNI Guarantee Claims, respectively, in accordance with the Plan and the applicable Senior Notes Indenture.

**8.6　Limitation on Recovery.**  Notwithstanding anything contained herein to the contrary, in the event that the sum of the Distributions of Creditor Proceeds and other Distributions with respect to an Allowed Claim hereunder or in connection with a Foreign Proceeding are in excess of one hundred percent (100%) of such holder's Allowed Claim, then the Creditor Proceeds remaining to be distributed to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to other holders of Allowed Claims against such Debtor and, accordingly, shall be distributed in accordance with the provisions of the Plan and the Bankruptcy Code.

**8.7　Distributions Free and Clear.**  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other Entity, including the Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall have any interest, legal, beneficial or otherwise, in Assets or Residual Assets transferred to holders of Allowed Claims pursuant to the Plan.

**8.8　Delivery of Distributions and Undeliverable Distributions.**
Distributions to holders of Allowed Claims of each Debtor shall be made at the address of each such holder as set forth on the Schedules Filed, unless superseded by a new address as set forth (a) on a proof of claim Filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in Section 13.16) of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions shall be made or notices delivered to such holder on account of such Claim.  Such Claim shall be discharged and the holder of such Claim shall be forever barred from asserting such Claim against the applicable Debtor, its Estate and its respective property.  In such cases, any Cash held for Distribution on account of such Claim shall become the property of the relevant Estate and distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code.

**8.9    Withholding and Reporting Requirements.**  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors, the Plan Administrator and the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Unit, including income, withholding and other Tax obligations, on account of such Distribution.  The Disbursing Agent has the right, but not the obligation, to withhold a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such Tax obligations.  The Disbursing Agent may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9 to the Disbursing Agent, as applicable to each such holder.  If the Disbursing Agent makes such a request and the holder fails to comply before the date that is 180 days after the request is made, no further Distributions shall be made to such holder on account of such Claim.  In such cases, the amount of such Distribution shall irrevocably revert to the applicable Debtor and such Claim shall be discharged and the holder of such Claim shall be forever barred from asserting such Claim against such Debtor, its Estate or its respective property.  Also, in such cases, any Cash held for Distributions on account of such Claim shall become the property of the relevant Estate and distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code.

**8.10    Time Bar to Cash Payment Rights.**  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of a voided check shall be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the relevant Debtor's Estate, to be distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code, and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor, its Estate and its respective property.

**8.11    Setoffs and Recoupment.**

(a)    The Debtors may, but shall not be required to, setoff against any Claim the payments or other Distributions to be made pursuant to the Plan in respect of such Claim or claims of any nature whatsoever that the Debtors may have against the holder of such Claim; *provided*, *however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against such holder.

(b)    Unless otherwise stipulated in writing by the Debtors, any party against whom a claim or counterclaim is asserted by the Estates (an "Estate Claim") must assert any setoff rights, right of subrogation or recoupment of any kind against such Estate Claim prior to the Confirmation Date, or such right of setoff, subrogation or recoupment will be deemed

waived and forever barred; *provided*, *however*, that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment through an amended or supplemental pleading to the extent permitted by Rule 15 of the Federal Rules of Civil Procedure or Bankruptcy Rule 7015.

**8.12    Distribution Record Date.**  As of the close of business on the Distribution Record Date, the register for each Debtor shall be closed and there shall be no further changes to the record holder of any of the Claims or Interests, except with respect to the NNCC 2026 Notes, which shall be settled for cancellation in accordance with Section 8.14.  The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of any such Claims or Interests occurring after the close of business on the Distribution Record Date. The Debtors shall be entitled instead to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

**8.13    Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes) and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

**8.14    Cancellation of Notes, Instruments and Debentures.**  On the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, (a) the NNCC 2026 Notes, the NNCC Notes Indenture, the Senior Notes NNI Guarantee Obligations and any other notes, bonds (with the exception of any surety bonds outstanding), indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors that are Impaired under this Plan shall be deemed cancelled and extinguished as to the Debtors and (b) the obligations of the Debtors under any agreements, documents, indentures or certificates of designation governing the Senior Notes, the Senior Notes NNI Guarantee Obligations, the Senior Notes Indentures and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors that are Impaired under this Plan shall be, and are hereby, discharged as to the Debtors, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the Security holders, officers or directors of the Debtors or by any other Person. DTC shall surrender for cancellation to the NNCC Notes Indenture Trustee the NNCC 2026 Notes issued in the name of Cede and Co. and held by DTC.  Notwithstanding the foregoing, the NNCC Notes Indenture shall continue in effect solely for the purposes of:  (i) allowing and preserving the rights of the NNCC Notes Indenture Trustee to assert its charging Lien against such Distributions for payment of its reasonable fees and expenses (including reasonable fees and expenses of counsel and other professionals), (ii) allowing and preserving the rights of holders of Allowed Claims in respect of the NNCC 2026 Notes to receive Distributions under the Plan, (iii) allowing and preserving the rights of the NNCC Notes Indenture Trustee to make Distributions in satisfaction of Allowed Claims in respect of the NNCC 2026 Notes and (iv) and allowing and preserving the rights of holders of claims in respect of the NNCC Notes Guarantee Obligations to pursue such claims in the CCAA Proceedings, but in all cases subject to the terms and conditions of the NNCC Notes Indenture.

## ARTICLE 9.
## PROCEDURES FOR TREATING DISPUTED CLAIMS

**9.1    Objections.**  As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator, who shall consult with the applicable Debtor regarding the same.  Objections to and requests for estimation of Claims shall be Filed and served on the claimant on or before the later of (a) the date that is 180 days after the Effective Date; *provided*, *however*, that the Plan Administrator may in his sole discretion extend such date for up to an additional 180 days without need for Bankruptcy Court approval and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

**9.2    No Distributions Pending Allowance.**  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**9.3    Estimation of Claims.**  The Plan Administrator may at any time request that the Bankruptcy Court estimate for any purpose including Distribution any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or otherwise, regardless of whether such Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, such Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**9.4    Resolution of Disputed Claims.**  On and after the Effective Date, the Plan Administrator shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, enter into protocols for the resolution of, settle or otherwise resolve any Disputed Claims.  On the date of the first Distribution that is at least sixty (60) days after the date on which the order allowing a Disputed Claim becomes a Final Order, such Debtor shall remit, to the holder of such Allowed Claim, Creditor Proceeds equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.  To the extent that a Disputed Claim against a Debtor is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Creditor Proceeds that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full, over the amount of Creditor Proceeds actually distributed on account of such Disputed Claim, shall become Creditor Proceeds for Distribution to other holders of Allowed Claims in the Class

corresponding to the Disputed Claim at issue in accordance with the terms of the Plan and the Bankruptcy Code.

**9.5** **No Interest.** Holders of Disputed Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim unless the holder of such Allowed Claim is entitled to post-petition interest on such Claim under the Bankruptcy Code and the Plan.

**9.6** **Reserve Account for Disputed Claims.** On or after the Effective Date, the Plan Administrator shall hold Cash in the Disputed Claims Reserve in an aggregate amount sufficient to pay to each holder of a Disputed Claim the Pro Rata Share of any Distributions that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim. Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Plan Administrator in one or more segregated reserve accounts for each Debtor, to be used to satisfy any Disputed Claim if and when any Disputed Claim becomes an Allowed Claim.

**9.7** **Investment of Disputed Claims Reserve.** All interest earned on Cash in the Disputed Claims Reserve shall be held in the appropriate account in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including Taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and shall become Available Cash for Distribution to holders of Allowed Claims in the Class corresponding to the Disputed Claims Reserve account at issue in accordance with the terms of the Plan and the Bankruptcy Code.

**9.8** **Release of Funds from the Disputed Claims Reserve.** (a) If at any time or from time to time after the Effective Date there shall be Cash in a Disputed Claims Reserve account with respect to a Debtor in an amount in excess of the Plan Administrator's maximum remaining payment obligations to the then existing holders of Disputed Claims with respect to such Debtor, such excess funds and the Pro Rata Share of net interest in respect thereof shall become property of the relevant Estate and become available for distribution to the other holders of Allowed Claims in accordance with the terms of the Plan and the Bankruptcy Code.

(b) If at any time after the Effective Date the Bankruptcy Court expunges a Disputed Claim or estimates any contingent, unliquidated or other Disputed Claim at an amount less than the amount of Cash held in a Disputed Claims Reserve account with respect to such Claim, and the order with respect to such expungement or estimation has not been stayed pending appeal, the Cash held in the Disputed Claims Reserve account relating to such expunged Claim or in excess of the estimated amount of such Claim shall become property of the relevant Estate and become available for distribution to the other holders of Allowed Claims in accordance with the terms of the Plan and the Bankruptcy Code, and the Plan Administrator shall have no further obligation to reserve funds for such expunged claim.

## ARTICLE 10.
## CONDITIONS PRECEDENT

**10.1    Conditions to Confirmation.**  A condition precedent to the confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order containing terms and conditions reasonably satisfactory in form and substance to each Debtor.

**10.2    Conditions to the Effective Date.**  The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)     The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtors, and the effectiveness of the Confirmation Order shall have not been stayed within fourteen (14) days following the entry thereof;

(b)     All actions and agreements, instruments, certificates or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors;

(c)     All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked;

(d)     The amended organizational documents of Reorganized NNI and the organizational documents of the Reorganized Subsidiaries shall have been filed with the applicable authority of each Reorganized Debtor's respective jurisdiction of incorporation or formation in accordance with such jurisdiction's applicable laws;

(e)     Each of the relevant Debtors has received its full and final distribution of the Allocation Proceeds;

(f)     All statutory fees then due to the United States Trustee shall have been paid in full by the Debtors pursuant to the Plan;

(g)     With respect to each Debtor, each of the conditions in this Section 10.2 have been satisfied with respect to each other Debtor;

(h)     The Confirmation Order shall have become a Final Order; and

(i)     The Debtors shall have Filed the "Notice of Effective Date" in accordance with Section 10.4.

**10.3    Waiver of Conditions.**  Notwithstanding the foregoing, each Debtor reserves its right, with respect to such Debtor's Chapter 11 Case only, to waive the occurrence of the conditions precedent to the Effective Date set forth in Section 10.2 of the Plan other than Section 10.2(a) of the Plan.  Any such waiver may be given effect at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall

take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If any of the Debtors decide that one of the conditions precedent to the Effective Date of its Plan cannot be satisfied and the occurrence or such condition is not waived or cannot be waived, then such Debtor shall file a notice of the inability to satisfy such condition with the Bankruptcy Court.

10.4 **Notice of Effective Date.** Upon satisfaction of all the conditions to the Effective Date set forth in Section 10.2(a)-(h), or if waivable, waiver pursuant to Section 10.3, or as soon thereafter as is reasonably practicable, the Debtors shall File with the Bankruptcy Court the "Notice of Effective Date" in a form reasonably acceptable to the Debtors in their sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective; *provided*, *however*, that the Debtors shall have no obligation to notify any Person other than counsel to the Creditors' Committee and the Ad Hoc Group of Bondholders of such fact. The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern Standard Time, on the date of such filing. A courtesy copy of the Notice of Effective Date may be sent by United States mail, postage prepaid (or at the Debtors' option, by courier or facsimile) to those Persons who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 11.
## EFFECT OF CONFIRMATION

11.1 **Jurisdiction of Court.** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 12 of this Plan.

11.2 **Binding Effect.** Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and its respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

11.3 **Discharge of Debtors.** EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY) WILL BE DEEMED TO HAVE WAIVED, RELEASED, VOIDED AND DISCHARGED EACH OF THE DEBTORS AND EACH OF THEIR OFFICERS, DIRECTORS AND EMPLOYEES EMPLOYED AS OF THE EFFECTIVE DATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE DEBTORS', THE REORGANIZED DEBTORS' OR THE LIQUIDATING DEBTORS' OBLIGATIONS UNDER

THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED UNDER THIS PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, OR THE PLAN (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER OR RULE OR THE VOTE, CONSENT OR AUTHORIZATION OR APPROVAL OF ANY PERSON.

**11.4 Limited Release of Directors, Officers and Employees.** NO CLAIMS OF ANY OF THE DEBTORS' ESTATES AGAINST THEIR PRESENT OR FORMER OFFICERS, DIRECTORS OR EMPLOYEES ARISING FROM OR RELATING TO THE PERIOD PRIOR TO THE PETITION DATE, ARE RELEASED BY THIS PLAN. AS OF THE EFFECTIVE DATE, EACH OF THE DEBTORS AND THE DEBTORS-IN-POSSESSION SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ITS PRESENT AND FORMER DIRECTORS, OFFICERS, AND EMPLOYEES WHO WERE DIRECTORS, OFFICERS OR EMPLOYEES, RESPECTIVELY, AT ANY TIME DURING THE CHAPTER 11 CASES, FROM ANY AND ALL CLAIMS OF EACH OF THE DEBTORS' ESTATES ARISING FROM OR RELATING TO THE PERIOD FROM AND AFTER THE PETITION DATE; PROVIDED, HOWEVER, THAT, EXCEPT AS OTHERWISE PROVIDED BY PRIOR OR SUBSEQUENT FINAL ORDER OF THE BANKRUPTCY COURT, THIS PROVISION SHALL NOT OPERATE AS A WAIVER OR RELEASE OF (A) ANY PERSON (I) NAMED PRIOR TO THE EFFECTIVE DATE AS A DEFENDANT IN ANY ACTION COMMENCED BY OR ON BEHALF OF THE DEBTORS-IN-POSSESSION, INCLUDING ANY ACTIONS PROSECUTED BY THE CREDITORS' COMMITTEE AND THE AD HOC GROUP OF BONDHOLDERS OR (II) ADJUDICATED PRIOR TO THE EFFECTIVE DATE BY A COURT OF COMPETENT JURISDICTION TO HAVE ENGAGED IN ACTS OF DISHONESTY OR WILLFUL MISCONDUCT DETRIMENTAL TO THE INTEREST OF THE DEBTORS OR (B) ANY CLAIM (I) WITH RESPECT TO ANY LOAN, ADVANCE OR SIMILAR PAYMENT BY THE DEBTORS TO ANY SUCH PERSON, (II) WITH RESPECT TO ANY CONTRACTUAL OBLIGATION OWED BY SUCH PERSON TO THE DEBTORS OR (III) RELATING TO SUCH PERSON'S KNOWING FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; AND PROVIDED, FURTHER, THAT THE FOREGOING IS NOT INTENDED, NOR SHALL IT BE CONSTRUED, TO RELEASE ANY OF THE DEBTORS' CLAIMS THAT MAY EXIST AGAINST THE DEBTORS' DIRECTORS AND OFFICERS LIABILITY INSURANCE; AND PROVIDED, FURTHER, THAT,

NOTWITHSTANDING THE FOREGOING, ALL SUCH CLAIMS SHALL BE PRESERVED BY THE DEBTORS FOR SETOFF PURPOSES**.**

**11.5    Exculpation.**  NONE OF THE DEBTORS, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS, THE CREDITORS' COMMITTEE, THE AD HOC GROUP OF BONDHOLDERS, THE NNCC NOTES INDENTURE TRUSTEE, THE NNC/NNL NOTES INDENTURE TRUSTEE OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, ATTORNEYS, CONSULTANTS, ACCOUNTANTS, ADVISORS, AGENTS AND OTHER PROFESSIONALS (ACTING IN SUCH CAPACITY) (INDIVIDUALLY, EACH AN "EXCULPATED PARTY," AND COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL HAVE OR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH AND SUBSEQUENT TO THE COMMENCEMENT OF THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, SOLICITATION OF VOTES, CONFIRMATION OR APPROVAL OF THE PLAN OR ANY COMPROMISES OR SETTLEMENTS CONTAINED THEREIN, THE ADMINISTRATION OF THE PLAN OR DISTRIBUTIONS UNDER THE PLAN, THE DISCLOSURE STATEMENT AND ANY ANCILLARY DOCUMENTS RELATED THERETO OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT PROVIDED FOR OR CONTEMPLATED IN CONNECTION WITH THE CONSUMMATION OF THE TRANSACTIONS SET FORTH IN THE PLAN; PROVIDED, HOWEVER, THE FOREGOING PROVISIONS OF THIS SECTION 11.5 SHALL NOT AFFECT THE LIABILITY OF ANY EXCULPATED PARTY THAT OTHERWISE WOULD RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, INCLUDING, WITHOUT LIMITATION, FRAUD AND CRIMINAL MISCONDUCT, AND IN ALL RESPECTS THE EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THIS PLAN.

**11.6    Injunction on Claims.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER OR SUCH OTHER ORDER OF THE BANKRUPTCY COURT THAT MAY BE APPLICABLE, ALL HOLDERS OF CLAIMS OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ANY SUCH CLAIM OR OTHER DEBT OR LIABILITY OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING

DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (E) ACTING OR PROCEEDING IN ANY MANNER THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN AND (F) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN, WITH RESPECT TO ANY SUCH CLAIM OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN.

**11.7    Terms of Injunctions or Stays.**  Unless otherwise provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

**11.8    Retention of Litigation Claims and Reservation of Rights.**

(a)    Except as expressly provided in the Plan, nothing contained in the Plan or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights of Litigation Claims that the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator may have or choose to assert on behalf of the respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors or representatives, (ii) any and all claims or rights arising under any Tax sharing agreement among the Debtors and their Affiliates, (iii) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of any Affiliate's Assets and (iv) any and all Avoidance Actions.

(b)    Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Litigation Claim, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim.  The Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall have, retain, reserve and be entitled to assert all such Litigation Claims, rights of setoff, and other legal or equitable defenses that the relevant Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the

Chapter 11 Cases had not been commenced; *provided*, *however*, that for the avoidance of doubt, the foregoing shall not restrict the Debtors', the Reorganized Debtors', the Liquidating Debtors' or the Plan Administrator's ability to retain, prosecute or settle any Avoidance Actions.

(c)     Except as expressly provided in the Plan, the Plan Administrator, shall, after the Effective Date, retain the rights of each Debtor to prosecute any Litigation Claims that could have been brought by such Debtor at any time.

**11.9     Retention of Rights.**  The Plan Administrator, the Reorganized Debtors and the Liquidating Debtors shall retain the rights of each Debtor to enforce all orders entered and relief granted in the Chapter 11 Cases.

**11.10     Vesting.**  Except as otherwise expressly provided in the Plan, or any documents or instruments executed in accordance therewith, on the Effective Date, pursuant to section 1141(b) and section 1141(c) of the Bankruptcy Code, the relevant Debtors shall transfer, and the Reorganized Debtors shall be vested with, all of the Assets of such Debtors' Estates free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests of Creditors and holders of Interests, and may operate their businesses free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court, including, without limitation, performing any contract or lease entered into or assumed by any of the Debtors after the Petition Date.  The Debtors shall continue as Debtors-in-Possession under the Bankruptcy Code until the Effective Date, and thereafter, subject to the terms of the Plan, the Reorganized Debtors may operate their businesses free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

## ARTICLE 12.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including jurisdiction to, among other things:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

(b)     Hear and determine any and all Causes of Action against any Person and rights of the Debtors, the Reorganized Debtors and the Liquidating Debtors that arose before or after the Petition Date, including, but not limited to, the rights and powers of a trustee and Debtor-in-Possession against any Person whatsoever, including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all Causes of Action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code;

(c)     Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or prior to the Effective Date;

(d)      Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is or was a party or with respect to which any of the Debtors may be liable, including, without limitation, the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)      Enter orders approving the Reorganized Debtors' post-Confirmation sale or other disposition of Residual Assets upon motion by the Plan Administrator;

(f)      Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(g)      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending in the Chapter 11 Cases on the Effective Date;

(h)      Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505, 1129 or 1146 of the Bankruptcy Code;

(i)      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Confirmation Order;

(j)      Hear and determine any matters concerning the enforcement of the provisions of Article 11 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by this Plan;

(k)      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(l)      Permit the Debtors, to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

(m)      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with respect to consummation, implementation or enforcement of the Plan or the Confirmation Order;

(n)      Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

(o)      Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(p)    Hear and determine all claims, rights or disputes arising under or in connection with the 363 Sale Agreements and the Plan Administration Agreement;

(q)    Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

(r)    Enter any orders in aid of and resolve any matters relating to or arising under prior orders of the Bankruptcy Court; and

(s)    Enter final decrees closing the Chapter 11 Cases.

## ARTICLE 13.
## MISCELLANEOUS PROVISIONS

**13.1    Plan Supplement.**  The Plan Administration Agreement, the amended certificate and by-laws of Reorganized NNI, the certificate of formation and the operating agreement of each of the Reorganized Subsidiaries and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with Section 7.2 shall be contained in the Plan Supplement that is Filed at least ten (10) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at http://dm.epiq11.com/nortel or by request to the Debtors in accordance with Section 13.16 of the Plan.

**13.2    Modification of the Plan.**  As provided by section 1127 of the Bankruptcy Code, the Debtors reserve the right to propose alterations, amendments, or modifications of or to the Plan in writing at any time prior to the Confirmation Date, including to substantively consolidate one or more Debtors' Assets and liabilities for voting and Distribution purposes, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  As provided by section 1127 of the Bankruptcy Code, the Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court after notice and a hearing, confirms the Plan, as altered, modified or amended, under section 1129 of the Bankruptcy Code, and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

**13.3    Revocation or Withdrawal of the Plan.**  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If any Debtor revokes or withdraws the Plan with respect to such Debtor, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void with respect to such Debtor, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person; (b) constitute an

admission of any fact or legal conclusion by such Debtor or any other Entity; or (c) prejudice in any manner the rights of such Debtor in any further proceedings involving such Debtor.

**13.4     Insurance Preservation.**  Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any insurance policies or other policies of insurance that may cover insurance claims or other claims against the Debtors or any other Person.

**13.5     Exemption from Certain Transfer Taxes.**  Pursuant to section 1146 of the Bankruptcy Code, any transfers from any of the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator pursuant to, in furtherance of or in connection with this Plan shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes or other similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**13.6     Exemption from Registration.**  Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of any securities or interests on account of, and in exchange for the Claims against the Debtors shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and any other applicable non-bankruptcy law or regulation.

**13.7     Governing Law.**  Unless a rule of law or procedure is supplied by (a) United States federal law (including the Bankruptcy Code and Bankruptcy Rules) or (b) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws thereof.

**13.8     No Admissions.**  If the Confirmation Date or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by any Debtor with respect to any matter set forth herein or therein including, without limitation, liability on any Claim or the propriety of any Claims classification.

**13.9     Severability of Plan Provisions.**  If, prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Debtors the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a final judicial determination and shall

provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.10   Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**13.11   Defenses with Respect to Unimpaired Claims.**  Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**13.12   No Injunctive Relief.**  Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

**13.13   Payment of Statutory Fees.**  All fees payable pursuant to section 1930, chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date or as soon as practicable thereafter by the Debtors.

**13.14   Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**13.15   Dissolution of Creditors' Committee.**  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically and its members shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code without need for a further order of the Bankruptcy Court; *provided*, *however*, that (a) obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases shall remain in full force and effect according to their terms, and (b) the Creditors' Committee may make application for Professional Claims and members of the Creditors' Committee may make requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases. The Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall not have any obligation to pay or reimburse any fees of any official or unofficial committee of creditors incurred after the Effective Date.

**13.16   Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

<u>Counsel for the Debtors</u>

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-3999 (facsimile)
Attn: James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.

- and -

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE 19899
(302) 658-3989 (facsimile)
Attn: Derek C. Abbott, Esq.
Eric D. Schwartz, Esq.

<u>The Plan Administrator</u>

Avidity Partners, LLC
18 W140 Butterfield Road, 15th Floor
Oakbrook Terrace, IL 6081
(630) 613-7001 (facsimile)
Attn: John J. Ray, III

<u>Counsel for the Plan Administrator</u>

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-3999 (facsimile)
Attn: James L. Bromley, Esq.
Lisa M. Schweitzer, Esq.

<u>Counsel for the Ad Hoc Group of Bondholders</u>

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, NY 10005
(212) 530-5219 (facsimile)
Attn: Albert A. Pisa, Esq.

<u>Counsel for the Creditors' Committee</u>

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
(212) 872-1002 (facsimile)
Attn:   Fred S. Hodara, Esq.
        David H. Botter, Esq.

        - and -

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7701 (facsimile)
Attn:   Christopher M. Samis, Esq.

Dated: July 12, 2010

**Nortel Networks Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks (CALA) Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks Capital Corporation**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Altsystems Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Altsystems International Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Xros, Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Sonoma Systems**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Qtera Corporation**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Coretek, Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks Applications
Management Solutions Inc**.

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks Optical Components Inc.**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer

**Architel Systems (U.S.) Corporation**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer

**Northern Telecom International Inc.**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer

**Nortel Networks HPOCS Inc.**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer

**Nortel Networks International Inc.**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer

**Nortel Networks Cable Solutions Inc.**

By: _____
  Name: John J. Ray, III
  Title: Principal Officer