#### 4.88    NTI Class 4 – Subordinated Claims against NTI.

(a)    <u>Impairment and Voting</u>. NTI Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NTI Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Subordinated Claim in NTI Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; <u>provided</u>, <u>however</u>, that in the event that all Allowed Claims in NTI Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NTI Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NTI.

#### 4.89    NTI Class 5A – NTI Interests.

(a)    <u>Impairment and Voting</u>. NTI Class 5A is Impaired by the Plan. Each holder of an NTI Interest in NTI Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>. The NTI Interests shall be cancelled and each holder of an NTI Interest shall receive its pro rata Distribution of Reorganized NTI LLC Interests; <u>provided</u>, <u>however</u>, that no holder of an NTI Interest shall receive any Distribution of Creditor Proceeds on account of its former NTI Interests or its Reorganized NTI LLC Interests; <u>provided</u>, <u>further</u>, that in the event that all Allowed Claims in NTI Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NTI Interest in NTI Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NTI.

#### 4.90    NTI Class 5B – NTI Interests Securities Fraud Claims.

(a)    <u>Impairment and Voting</u>. NTI Class 5B is Impaired by the Plan. Each holder of an Allowed NTI Interests Securities Fraud Claim in NTI Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed NTI Interests Securities Fraud Claim in NTI Class 5B shall receive no Distribution under the Plan in respect of its Allowed NTI Interests Securities Fraud Claims.

#### 4.91    NN Cable Class 1 – Priority Non-Tax Claims against NN Cable.

(a)    <u>Impairment and Voting</u>. NN Cable Class 1 is Unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    <u>Distributions</u>. Except to the extent that the holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 agrees to less favorable treatment or has been paid by or on behalf of NN Cable on account of such Allowed Priority Non-Tax Claim prior to the Effective Date, on the later of the Effective Date and the date on which such Priority Non-Tax

Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable, each holder of an Allowed Priority Non-Tax Claim in NN Cable Class 1 shall be paid by NN Cable in Cash in an amount equal to the Allowed amount of such Priority Non-Tax Claim.

**4.92    NN Cable Class 2 – Secured Claims against NN Cable.**

(a)    Impairment and Voting. NN Cable Class 2 is Unimpaired by the Plan. Each holder of an Allowed Secured Claim in NN Cable Class 2 is not entitled to vote to accept or reject the Plan and is deemed to accept the Plan.

(b)    Distributions. Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, each holder of an Allowed Secured Claim in NN Cable Class 2 shall be satisfied by, at the option of NN Cable: (i) payment in Cash by NN Cable in an amount equal to the Allowed amount of such Secured Claim on the later of the Effective Date and the date such Secured Claim becomes an Allowed Secured Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Secured Claim to the extent of the value of the Collateral securing such Allowed Secured Claim; (iii) surrender of the Collateral securing such Allowed Secured Claim to the holder of such Allowed Secured Claim; or (iv) such treatment that leaves unaltered the legal, equitable and contractual rights to which the holder of the Allowed Secured Claim is entitled. In the event an Allowed Secured Claim is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

**4.93    NN Cable Class 3 – General Unsecured Claims against NN Cable.**

(a)    Impairment and Voting. NN Cable Class 3 is Impaired by the Plan. Each holder of an Allowed General Unsecured Claim in NN Cable Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions. Each holder of an Allowed General Unsecured Claim in NN Cable Class 3 shall receive its Pro Rata Share of Creditor Proceeds from NN Cable.

**4.94    NN Cable Class 4 – Subordinated Claims against NN Cable.**

(a)    Impairment and Voting. NN Cable Class 4 is Impaired by the Plan. Each holder of an Allowed Subordinated Claim in NN Cable Class 4 is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    Distributions. Each holder of an Allowed Subordinated Claim in NN Cable Class 4 shall not receive or retain any interest or property under the Plan on account of such Claims; *provided, however*, that in the event that all Allowed Claims in NN Cable Classes 1 through 3 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an Allowed Subordinated Claim in NN Cable Class 4 shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Cable.

4.95    **NN Cable Class 5A – NN Cable Interests.**

(a)    <u>Impairment and Voting</u>. NN Cable Class 5A is Impaired by the Plan. Each holder of an NN Cable Interest in NN Cable Class 5A is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>. The NN Cable Interests shall be cancelled and each holder of an NN Cable Interest shall receive its pro rata Distribution of Reorganized NN Cable LLC Interests; *provided, however*, that no holder of an Allowed NN Cable Interest shall receive any Distribution of Creditor Proceeds on account of its former NN Cable Interests or its Reorganized NN Cable LLC Interests; *provided, further*, that in the event that all Allowed Claims in NN Cable Classes 1 through 4 have been satisfied in full, in accordance with the Bankruptcy Code and the Plan, each holder of an NN Cable Interest in NN Cable Class 5A shall receive its Pro Rata Share of any remaining Creditor Proceeds from NN Cable.

4.96    **NN Cable Class 5B – NN Cable Interests Securities Fraud Claims.**

(a)    <u>Impairment and Voting</u>. NN Cable Class 5B is Impaired by the Plan. Each holder of an Allowed NN Cable Interests Securities Fraud Claim in NN Cable Class 5B is not entitled to vote to accept or reject the Plan and is deemed to have rejected the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed NN Cable Interests Securities Fraud Claim in NN Cable Class 5B shall receive no Distribution under the Plan in respect of its Allowed NN Cable Interests Securities Fraud Claims.

## ARTICLE 5.
## IMPLEMENTATION OF THE PLAN

5.1    **Plan Administrator.**

(a)    <u>Appointment</u>. John J. Ray, III, shall serve as Plan Administrator for each of the Debtors, the Reorganized Debtors and the Liquidating Debtors pursuant to and in accordance with the provisions of the Plan and the Plan Administration Agreement.

(b)    <u>Authority</u>. The Plan Administrator shall have the authority and right on behalf of each of the Debtors, the Reorganized Debtors and the Liquidating Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan and the Plan Administration Agreement in accordance with the provisions therein.

(c)    <u>Compensation of the Plan Administrator</u>. In addition to reimbursement for actual out-of-pocket expenses incurred by the Plan Administrator, the Plan Administrator shall be entitled to receive reasonable compensation for services rendered on behalf of the Debtors, the Reorganized Debtors and the Liquidating Debtors in an amount and on such terms as may be reflected in the Plan Administration Agreement.

(d)    <u>No Liability of Plan Administrator</u>. The Plan Administrator shall have no liability whatsoever for any acts or omissions to the Debtors, the Reorganized Debtors,

the Liquidating Debtors or holders of claims against or interests in the Debtors, the Reorganized Debtors or the Liquidating Debtors other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty by the Plan Administrator as determined by a Final Order, *provided that*, the Plan Administrator shall have no liability for such acts or omissions if approved by or undertaken at the request or on behalf of the Plan Advisory Committee. Each of the Debtors, the Reorganized Debtors and the Liquidating Debtors shall indemnify and hold harmless the Plan Administrator for any losses, liabilities and costs incurred in such capacity to the fullest extent allowed by Delaware law, other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty as determined by a Final Order.

(e)     Termination of Plan Administrator. The duties, responsibilities and powers of the Plan Administrator shall terminate pursuant to the terms of the Plan Administration Agreement.

(f)     Establishment of Reserve Accounts. On the Effective Date, the Debtors shall fund the Disputed Claims Reserve in such amounts, as agreed by the Debtors and the Plan Administrator in accordance with the terms of the Plan Administration Agreement to be necessary, to make sufficient future payments with respect to Disputed Claims as provided by the Plan.

**5.2     Plan Advisory Committee.**

(a)     Appointment. On the Effective Date, the Plan Advisory Committee shall be deemed appointed and shall adopt by-laws to govern the actions of the Plan Advisory Committee.

(b)     Membership. The Plan Advisory Committee shall consist of up to one (1) member of the Creditors' Committee and two (2) members of the Ad Hoc Group of Bondholders. Subject to the consent of the Debtors, such consent not to be unreasonably withheld, such members shall be chosen from those members of the Creditors' Committee and the Ad Hoc Group of Bondholders who notify counsel to the Creditors' Committee and counsel to the Debtors of their willingness to serve on the Plan Advisory Committee in writing no later than fifteen (15) days prior to the deadline to vote to accept or reject this Plan. In the event that less than one (1) member of the Creditors' Committee or less than two (2) members of the Ad Hoc Group of Bondholders notify counsel to the Creditors' Committee and counsel to the Debtors of their willingness to serve on the Plan Advisory Committee within the specified period, then the Creditors' Committee and the Ad Hoc Group of Bondholders, subject to the consent of the Debtors, such consent not to be unreasonably withheld, will choose from among the holders of Unsecured Claims to fill any vacancy until three (3) members have been designated. Unless and until such vacancy is filled, the Plan Advisory Committee shall function with such reduced membership. In the event of the resignation of a member of the Plan Advisory Committee, the remaining members shall use reasonable efforts to designate a successor, subject to the consent of the Reorganized Debtors, such consent not be to unreasonably withheld, from among the holders of Unsecured Claims and shall use reasonable efforts to maintain such composition of membership as existed prior to resignation. Unless and until such vacancy is filled, the Plan Advisory Committee shall function in the interim with such reduced membership. In the event that all members of the Plan Advisory Committee resign, the

49

Plan Administrator shall use reasonable efforts to designate successor members from among the holders of Unsecured Claims and to maintain such composition of membership as existed prior to resignation; *provided that*, until at least one successor member is appointed, the Plan Administrator shall have full authority to act on behalf of the Plan Advisory Committee.

(c)      Fiduciary Duties.  The fiduciary duties as well as the privileges, immunities and protections that apply to the Creditors' Committee prior to the Effective Date shall apply to the Plan Advisory Committee and to the Plan Administrator if acting on behalf of, at the direction of or with the consent of the Plan Advisory Committee.  The duties and powers of the Plan Advisory Committee shall continue until such time as all of the Chapter 11 Cases have been fully administered.

(d)      Rights and Duties.  The Plan Advisory Committee's role shall be to advise and approve the actions of the Plan Administrator as more particularly set forth in the Plan and the Plan Administration Agreement.  The Plan Advisory Committee shall have the rights and duties set forth in the Plan Administration Agreement.

(e)      No Liability of Plan Advisory Committee.  The members of the Plan Advisory Committee shall have no liability whatsoever for any acts or omissions to the Debtors, the Reorganized Debtors, the Liquidating Debtors or holders of Claims against or Interests in the Debtors other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty by the Plan Advisory Committee or its members, individually, as determined by a Final Order.  Each of the Debtors, the Reorganized Debtors and the Liquidating Debtors shall indemnify and hold harmless the Plan Advisory Committee and its members, individually, for any losses, liabilities, and costs incurred in such capacity to the fullest extent allowed by Delaware law, other than for gross negligence, willful misconduct, fraud or breach of fiduciary duty as determined by a Final Order.

   **5.3      Closing of Chapter 11 Case.**  After the Chapter 11 Case of a Liquidating Debtor or a Reorganized Debtor has been fully administered, the Plan Administrator shall File all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close such Liquidating Debtor's or Reorganized Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.  The Plan Administrator's authority shall continue until such time as all of the Chapter 11 Cases have been fully administered.

## ARTICLE 6.
## CORPORATE FORM AND ACTION

   **6.1      NNI Corporate Form and Vesting.**

(a)      On the Effective Date, Reorganized NNI shall maintain its current corporate form, with all powers of a corporation under the laws of its state of incorporation and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under such applicable state law, for the purpose of fulfilling Reorganized NNI's obligations under the 363 Sale Agreements, monetizing Reorganized NNI's Residual Assets and otherwise effectuating all aspects of the Plan pertaining to Reorganized NNI.

(b)     On the Effective Date, Reorganized NNI shall be vested with the Assets of NNI as provided in Section 11.10 of the Plan.

**6.2     Reorganized Subsidiaries Corporate Form and Vesting.**

(a)     Prior to the Effective Date, each of the Reorganized Subsidiaries shall be formed solely for the purpose of fulfilling the obligations of such Reorganized Subsidiary under the 363 Sale Agreements, monetizing the Residual Assets of such Reorganized Subsidiary and otherwise effectuating all aspects of the Plan pertaining to such Reorganized Subsidiary.

(b)     On or immediately following the Effective Date, NNCALA shall transfer to Reorganized NNCALA, NNCC shall transfer to Reorganized NNCC, Nortel Alt shall transfer to Reorganized Nortel Alt, Nortel Alt Int'l shall transfer to Reorganized Nortel Alt Int'l, Xros shall transfer to Reorganized Xros, Sonoma shall transfer to Reorganized Sonoma, Qtera shall transfer to Reorganized Qtera, CoreTek shall transfer to Reorganized CoreTek, NN Applications shall transfer to Reorganized NN Applications, NN Optical shall transfer to Reorganized NN Optical, NN HPOCS shall transfer to Reorganized NN HPOCS, Architel shall transfer to Reorganized Architel, NNII shall transfer to Reorganized NNII, NTI shall transfer to Reorganized NTI and NN Cable shall transfer to Reorganized NN Cable, in each case, all of the Assets of such respective Debtor, and each such Reorganized Subsidiary shall be vested with the respective Debtor's Assets as provided in Section 11.10 of the Plan.

(c)     On or immediately following the Effective Date, in the interest of administering the Plan, (i) the limited liability membership interest of each of Reorganized NNCALA, Reorganized NNCC, Reorganized Nortel Alt, Reorganized Xros, Reorganized Sonoma, Reorganized Qtera, Reorganized CoreTek, Reorganized NN Applications, Reorganized NN Optical, Reorganized Architel, Reorganized NNII, Reorganized NTI, and Reorganized NN Cable shall be issued to Reorganized NNI, (ii) the limited liability membership interest of Reorganized NN HPOCS shall be issued to Reorganized NN Optical and (iii) and the limited liability membership interest of Reorganized Nortel Alt Int'l shall be issued to Nortel Alt.

**6.3     Dissolution of the Liquidating Debtors.** On the Effective Date, each of the Liquidating Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Liquidating Debtors or payments to be made in connection therewith.

**6.4     Post-Effective Date Management.**

(a)     On the Effective Date, the board of directors of Reorganized NNI shall consist of one (1) natural person selected by the Plan Administrator, which such person may be the Plan Administrator, to serve as the board of directors of Reorganized NNI through the closing of Reorganized NNI's Chapter 11 Case in accordance with Section 5.3 of the Plan. The current officers of NNI shall continue to serve as the officers of Reorganized NNI in accordance with applicable non-bankruptcy law, any employment agreement with NNI entered into after the Petition Date, and NNI's by-laws, as the same may be amended from time to time,

through the closing of Reorganized NNI's Chapter 11 Case, unless an officer resigns or is removed by the board of directors of Reorganized NNI.

(b)    On the Effective Date, the manager of each Reorganized Subsidiary shall consist of one (1) natural person selected by the Plan Administrator, which such person may be the Plan Administrator, to serve as the manager of such Reorganized Subsidiary through the closing of such Reorganized Subsidiary's Chapter 11 Case in accordance with Section 5.3 of the Plan. The manager shall act at the direction of the Plan Administrator and in accordance with the Plan.

(c)    The current officers of each Reorganized Subsidiary shall continue to serve in such capacity for the respective Reorganized Subsidiary in accordance with applicable non-bankruptcy law, any employment agreement with such applicable Debtor or Reorganized Subsidiary entered into after the Petition Date, and such Reorganized Subsidiary's certificate of formation and operating agreement, as the same may be amended from time to time, through the closing of such Reorganized Subsidiary's Chapter 11 Case, unless a current officer resigns or is removed by the manager of such Reorganized Subsidiary.

**6.5    Corporate Existence.**  After the Effective Date, the Plan Administrator may in accordance with the Plan Administration Agreement (a) maintain any Reorganized Debtor as a corporation or limited liability company in good standing until such time as all aspects of the Plan pertaining to such Reorganized Debtor have been completed including, but not limited to, performing its obligations under the 363 Sale Agreements, monetizing or otherwise disposing of its Residual Assets and Distributing its Creditor Proceeds in accordance with the Plan, (b) dissolve any Reorganized Debtor or complete the winding up of such Reorganized Debtor without the necessity for any further actions to be taken by or on behalf of such Reorganized Debtor, its shareholder, its members or for any payments to be made in connection therewith, subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, transferring all or part of the Residual Assets of such Reorganized Debtor to a liquidating trust) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Reorganized Debtor or (c) dissolve any Controlled Non-Debtor Affiliate or complete the winding up of such Controlled Non-Debtor Affiliate in accordance with applicable law; *provided, however,* that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Controlled Non-Debtor Affiliate.

**6.6    Certificate of Incorporation or Certificate of Formation.**  As of the Effective Date, the certificate of incorporation, certificate of formation, by-laws and operating agreement, as applicable, of each Reorganized Debtor shall be amended to satisfy the provisions of the Plan and the Bankruptcy Code and shall (a) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (b) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein, in each case without further action under applicable law, regulation, order or rule, including, without limitation, any action by the stockholders, managers or members of the Reorganized Debtors.

The amended certificate, by-laws and operating agreement, as applicable, of such Reorganized Debtor shall be included in the Plan Supplement.

**6.7    Wind-Down.**  The Plan Administrator shall effectuate the monetization, wind-down and liquidation of each Reorganized Debtors' Residual Assets (it being understood that such may include the transfer of all or part of the Residual Assets of such Reorganized Debtor to one or more liquidating trusts within the meaning of Treas. Reg. §301.7701-4).

**6.8    Other Corporate Action.**  Without limiting the foregoing, in accordance with the requirements of the Plan and the terms of the Plan Administration Agreement, from and after the Effective Date, the Reorganized Debtors and the Plan Administrator may take any and all actions they deem appropriate in order to consummate the transactions contemplated herein, including, without limitation, to perform their respective obligations under the 363 Sale Agreements, to sell or otherwise dispose of their respective Residual Assets and wind up their respective affairs and, notwithstanding any provision contained in the Reorganized Debtors' articles of incorporation, articles of formation, operating agreement or by-laws to the contrary, such Reorganized Debtors shall not require the affirmative vote of holders of interests in order to take any corporate or limited liability company action including to (i) consummate a sale transaction, (ii) compromise and settle Claims and Causes of Action of or against the Reorganized Debtors and their Estates and (iii) dissolve, merge or consolidate with any other Entity.

## ARTICLE 7.
## TREATMENT OF EXECUTORY CONTRACTS

**7.1    Previous Assumption, Assignment and Rejection.**  Throughout the Chapter 11 Cases, the Bankruptcy Court has established deadlines and procedures for the assumption and rejection of certain executory contracts and unexpired leases by the Debtors, including in connection with the 363 Sale Orders and 363 Sales, and allocated responsibility for payment of cure amounts with respect to such contracts and leases.  Any executory contracts and unexpired leases of the Debtors not assumed and assigned or rejected prior to the Confirmation Date or with respect to which the Debtors have not otherwise Filed a Notice of Assumption and Assignment or obtained an order assuming or rejecting the contract or lease prior to the Confirmation Date (the "Remaining Contracts") shall be rejected pursuant to Section 7.5 of this Plan unless assumed or assumed and assigned pursuant to Section 7.2 of this Plan. Notwithstanding anything in this Article 7 to the contrary, to the extent the Debtors have Filed a Notice of Assumption and Assignment or motion for the assumption or assumption and assignment of an executory contract or unexpired lease prior to the Confirmation Date, but the Bankruptcy Court has not yet entered an order approving such assumption or assumption and assignment and fixing the cure amount therefore or the assumption or assumption and assignment has otherwise not yet become effective, the assumption or assumption and assignment of the contract or lease and any cure amount that may be owing in connection therewith shall be governed by the terms of the applicable order or procedure.

**7.2    Assumption and Assignment of Remaining Contracts.**  As of the Effective Date, the Debtors shall assume or assume and assign, as applicable, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, each of the Remaining Contracts of the

Debtors that are identified in <u>Exhibit E</u> hereto that have not expired under their own terms prior to the Effective Date. Each Remaining Contract identified in <u>Exhibit E</u> hereto shall include modifications, amendments, supplements, restatements or other agreements, including guarantees thereof, made directly or indirectly by any Debtor in any agreement, instrument or other document that in any manner affects such Remaining Contract, without regard to whether such agreement, instrument or other document is identified in <u>Exhibit E</u>. The Debtors reserve the right to amend such Exhibit not later than ten (10) days prior to the Confirmation Hearing either to: (a) delete any executory contract or unexpired lease listed therein and provide for its rejection pursuant to Section 7.5 hereof; or (b) add any executory contract or unexpired lease to such Exhibit, thus providing for its assumption or assumption and assignment, as applicable, pursuant to this Section 7.2. The Debtors shall provide notice of any such amendment of such Exhibit to the parties to the executory contract or lease affected thereby and counsel for the Creditors' Committee not later than ten (10) days prior to the Confirmation Hearing. The Confirmation Order shall constitute an order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code approving all such assumptions or assumptions and assignments, as applicable, described in this Section 7.2, as of the Effective Date. If any provision of an executory contract to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract, the effectiveness of such provision shall be limited or nullified to the fullest extent provided under section 365(f) of the Bankruptcy Code.

> **7.3    Cure Payments; Assurance of Performance.**  Any monetary defaults under each Remaining Contract to be assumed under the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, in either of the following ways: (a) by payment of the default amount in Cash, in full, on the Effective Date or as soon as practicable thereafter; or (b) by payment of the default amount on such other terms as may be agreed to by the Debtors and the non-Debtor parties to such Remaining Contract. In the event of a dispute regarding (i) the amount or timing of any cure payments, (ii) the ability of the Debtor or Debtors assuming such Remaining Contract, or an assignee thereof, to provide adequate assurance of future performance under the Remaining Contract to be assumed or assumed and assigned, as applicable or (iii) any other matter pertaining to assumption or assumption and assignment of the Remaining Contract to be assumed, the Debtor or Debtors assuming such Remaining Contract shall pay all required cure amounts promptly following the entry of a Final Order resolving the dispute; provided that the Debtors reserve the right to withdraw their request for assumption of any Remaining Contract at any time prior to the entry of such an order. The Debtors may reject or nullify the assumption of any executory contract no later than five (5) Business Days after the entry of a Final Order of the Bankruptcy Court determining the cure amount or any request for adequate assurance of future performance required to assume such executory contract.

> **7.4    Objections to Assumption of Remaining Contracts.**

> (a)    To the extent that any party to a Remaining Contract identified for assumption asserts a claim for arrearages or damages pursuant to section 365(b)(1) of the Bankruptcy Code, or has any other objection with respect to any proposed assumption, cure or assignment on the terms and conditions provided herein (including, without limitation, in <u>Exhibit E</u> hereto), all such Claims for arrearages and damages and objections must be Filed and served: (a) as to any Remaining Contract identified in <u>Exhibit E</u> hereto that is mailed to any party to any such Remaining Contract, along with all other solicitation materials accompanying the

Plan, within the same deadline and in the same manner established for the filing and service of objections to Confirmation of the Plan; and (b) as to any Remaining Contract identified in any subsequent amendments to Exhibit E hereto that is mailed to any party to any such Remaining Contract not later than ten (10) days prior to the Confirmation Hearing, in such a manner as to be Filed and received by the Bankruptcy Court and the Debtors and counsel thereto, no later than the earlier of (i) twenty (20) days after such subsequent amendment is served and (ii) three (3) days prior to the Confirmation Hearing.

(b)     Failure to assert such claims for arrearages and damages and any objections in the manner described above shall constitute consent to the proposed assumption, revestment, cure or assignment on the terms and conditions provided herein, including an acknowledgement that the proposed assumption and/or assignment provides adequate assurance of future performance and that the amount identified for "cure" in Exhibit E hereto is the amount necessary to cover any and all outstanding defaults under the Remaining Contract to be assumed, as well as an acknowledgement and agreement that no other defaults exist under such Remaining Contract.

(c)     If any assumption or assumption and assignment of a Remaining Contract proposed herein for any reason is not approved by the Bankruptcy Court, then the Debtors shall be entitled, in their sole discretion, upon written notice to the applicable non-Debtor party to such Remaining Contract, to deem such Remaining Contract to have been rejected pursuant to the provisions of Section 7.5 below.

**7.5     Rejection.**  Except for those executory contracts and unexpired leases that (a) are assumed pursuant to this Plan, (b) have been assumed, assumed and assigned or rejected pursuant to previous orders of the Bankruptcy Court or (c) are the subject of a pending motion or notice before the Bankruptcy Court with respect to the assumption or assumption and assignment of such executory contracts and unexpired leases, as of the Effective Date, all executory contracts and unexpired leases of the Debtors shall be rejected pursuant to section 365 of the Bankruptcy Code; *provided, however,* that neither the inclusion by the Debtors of a contract or lease in Exhibit E nor anything contained in this Article 7 shall constitute an admission by any Debtor that such contract or lease is an executory contract or unexpired lease or that any Debtor or its successors and assigns has any liability thereunder.

**7.6     Approval of Rejection; Rejection Damages Claims Bar Date.**  The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of executory contracts and unexpired leases under Section 7.5 above pursuant to section 365 of the Bankruptcy Code as of the Effective Date.  Any Claim for damages arising from any such rejection must be Filed within thirty (30) days after the Effective Date, or such Claim shall receive no Distribution under the Plan or otherwise on account of such Claim.

**7.7     Postpetition Modification of Executory Contracts.**  Unless otherwise agreed by the parties and approved by the Bankruptcy Court, modifications, amendments, supplements and restatements to prepetition executory contracts that have been executed by the Debtors during the Chapter 11 Cases will not be deemed to alter the pre-petition nature of the executory contract, or the validity, priority or amount of any Claims that may arise in connection therewith.

**7.8     Pre-existing Obligations to the Debtors under Executory Contracts.** Rejection or repudiation of any executory contract pursuant to the Plan or otherwise will not constitute a termination of pre-existing obligations owed to the Debtors under such contracts.

## ARTICLE 8.
## PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

**8.1     Voting of Claims.** Each holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan pursuant to Article 3 and Article 4 of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in the order entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**8.2     Nonconsensual Confirmation.** If any Impaired Class of Claims entitled to vote on the Plan shall not accept the Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with Section 13.2 of the Plan or to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to Impaired Classes of Claims or Interests that are deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**8.3     Distributions of Creditor Proceeds.** After the satisfaction in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Plan Administrator determines in accordance with the Plan Administration Agreement that the relevant Debtor will pay such Allowed Secured Claim in Cash) against a Debtor, the Disbursing Agent shall make a Distribution of its Creditor Proceeds in accordance with the provisions of the Plan (i) to each holder of an Allowed Claim as of the Effective Date against such Debtor, within sixty (60) days of the Effective Date, or as soon thereafter as practicable, and (ii) to each holder of an Allowed Claim that is allowed after the Effective Date against such Debtor, in accordance with Section 9.4 herein. After the initial Distribution with respect to any Allowed Claim, the Disbursing Agent shall make Distributions of Creditor Proceeds in accordance with the Plan to holders of Allowed Claims against such Debtor quarterly on March 31st, June 30th, September 30th and December 31st of each year (each such Distribution, an "Interim Distribution") and on the Final Distribution Date. Notwithstanding the foregoing, the Plan Administrator may determine in accordance with the terms of the Plan Administration Agreement to direct the Disbursing Agent (a) to make Distributions more frequently than quarterly on dates other than the Interim Distribution dates, (b) not to make an Interim Distribution on the basis that the costs of making such Interim Distribution exceed the Distribution amount or (c) not to make a Distribution to the holder of an Allowed Claim on the basis that it has not yet determined whether to object to such Claim in which case such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator (i) determines not to object to such Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed by a Final Order.

**8.4    Minimum Distribution and Manner of Payment.**  No payment of Creditor Proceeds of less than $100 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor.  Such amounts shall be deemed redistributed to other holders of Allowed Claims against such Debtor and, accordingly, shall be distributed in accordance with the provisions of the Plan and the Bankruptcy Code.  Any payment of Cash made pursuant to the Plan may be made at the option of the Disbursing Agent either by check or by wire transfer.

**8.5    Distributions to Indenture Trustees.**  Distributions for the benefit of holders of Allowed Claims for the NNCC 2026 Notes shall be made upon the surrender of the NNCC 2026 Notes in accordance with Section 8.14, or as soon as practicable thereafter, to the NNCC Notes Indenture Trustee. Distributions for the benefit of holders of Allowed Senior Notes NNI Guarantee Claims shall be made on the Distribution Record Date, or as soon as practicable thereafter, to the NNC/NNL Notes Indenture Trustee.  The NNCC Notes Indenture Trustee or NNC/NNL Notes Indenture Trustee shall, in turn, promptly administer the Distributions to the holders of Allowed Claims for NNCC 2026 Notes and holders of Allowed Senior Notes NNI Guarantee Claims, respectively, in accordance with the Plan and the applicable Senior Notes Indenture.

**8.6    Limitation on Recovery.**  Notwithstanding anything contained herein to the contrary, in the event that the sum of the Distributions of Creditor Proceeds and other Distributions with respect to an Allowed Claim hereunder or in connection with a Foreign Proceeding are in excess of one hundred percent (100%) of such holder's Allowed Claim, then the Creditor Proceeds remaining to be distributed to such holder in excess of such one hundred percent (100%) shall be deemed redistributed to other holders of Allowed Claims against such Debtor and, accordingly, shall be distributed in accordance with the provisions of the Plan and the Bankruptcy Code.

**8.7    Distributions Free and Clear.**  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other Entity, including the Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall have any interest, legal, beneficial or otherwise, in Assets or Residual Assets transferred to holders of Allowed Claims pursuant to the Plan.

**8.8    Delivery of Distributions and Undeliverable Distributions.**
Distributions to holders of Allowed Claims of each Debtor shall be made at the address of each such holder as set forth on the Schedules Filed, unless superseded by a new address as set forth (a) on a proof of claim Filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in Section 13.16) of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions shall be made or notices delivered to such holder on account of such Claim.  Such Claim shall be discharged and the holder of such Claim shall be forever barred from asserting such Claim against the applicable Debtor, its Estate and its respective property.  In such cases, any Cash held for Distribution on account of such Claim shall become the property of the relevant Estate and distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code.

**8.9    Withholding and Reporting Requirements.**  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtors, the Plan Administrator and the Disbursing Agent shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed by any Governmental Unit, including income, withholding and other Tax obligations, on account of such Distribution. The Disbursing Agent has the right, but not the obligation, to withhold a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such Tax obligations. The Disbursing Agent may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9 to the Disbursing Agent, as applicable to each such holder. If the Disbursing Agent makes such a request and the holder fails to comply before the date that is 180 days after the request is made, no further Distributions shall be made to such holder on account of such Claim. In such cases, the amount of such Distribution shall irrevocably revert to the applicable Debtor and such Claim shall be discharged and the holder of such Claim shall be forever barred from asserting such Claim against such Debtor, its Estate or its respective property. Also, in such cases, any Cash held for Distributions on account of such Claim shall become the property of the relevant Estate and distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code.

**8.10    Time Bar to Cash Payment Rights.**  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of a voided check shall be made on or before ninety (90) days after the expiration of the ninety (90) day period following the date of issuance of such check. Thereafter, the amount represented by such voided check shall irrevocably revert to the relevant Debtor's Estate, to be distributed to other holders of Allowed Claims against such Debtor in accordance with the terms of the Plan and the Bankruptcy Code, and any Claim in respect of such voided check shall be discharged and forever barred from assertion against such Debtor, its Estate and its respective property.

**8.11    Setoffs and Recoupment.**

(a)    The Debtors may, but shall not be required to, setoff against any Claim the payments or other Distributions to be made pursuant to the Plan in respect of such Claim or claims of any nature whatsoever that the Debtors may have against the holder of such Claim; *provided, however,* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against such holder.

(b)    Unless otherwise stipulated in writing by the Debtors, any party against whom a claim or counterclaim is asserted by the Estates (an "Estate Claim") must assert any setoff rights, right of subrogation or recoupment of any kind against such Estate Claim prior to the Confirmation Date, or such right of setoff, subrogation or recoupment will be deemed

58

waived and forever barred; *provided*, *however*, that nothing herein shall limit the assertion of such right of setoff, subrogation or recoupment through an amended or supplemental pleading to the extent permitted by Rule 15 of the Federal Rules of Civil Procedure or Bankruptcy Rule 7015.

  **8.12 Distribution Record Date.**  As of the close of business on the Distribution Record Date, the register for each Debtor shall be closed and there shall be no further changes to the record holder of any of the Claims or Interests, except with respect to the NNCC 2026 Notes, which shall be settled for cancellation in accordance with Section 8.14.  The Debtors and the Plan Administrator shall have no obligation to recognize any transfer of any such Claims or Interests occurring after the close of business on the Distribution Record Date. The Debtors shall be entitled instead to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

  **8.13 Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes) and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

  **8.14 Cancellation of Notes, Instruments and Debentures.**  On the Effective Date, except as otherwise provided in this Plan or the Confirmation Order, (a) the NNCC 2026 Notes, the NNCC Notes Indenture, the Senior Notes NNI Guarantee Obligations and any other notes, bonds (with the exception of any surety bonds outstanding), indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors that are Impaired under this Plan shall be deemed cancelled and extinguished as to the Debtors and (b) the obligations of the Debtors under any agreements, documents, indentures or certificates of designation governing the Senior Notes, the Senior Notes NNI Guarantee Obligations, the Senior Notes Indentures and any other notes, bonds, indentures or other instruments or documents evidencing or creating any indebtedness or obligations of the Debtors that are Impaired under this Plan shall be, and are hereby, discharged as to the Debtors, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or any requirement of further action, vote or other approval or authorization by the Security holders, officers or directors of the Debtors or by any other Person. DTC shall surrender for cancellation to the NNCC Notes Indenture Trustee the NNCC 2026 Notes issued in the name of Cede and Co. and held by DTC.  Notwithstanding the foregoing, the NNCC Notes Indenture shall continue in effect solely for the purposes of:  (i) allowing and preserving the rights of the NNCC Notes Indenture Trustee to assert its charging Lien against such Distributions for payment of its reasonable fees and expenses (including reasonable fees and expenses of counsel and other professionals), (ii) allowing and preserving the rights of holders of Allowed Claims in respect of the NNCC 2026 Notes to receive Distributions under the Plan, (iii) allowing and preserving the rights of the NNCC Notes Indenture Trustee to make Distributions in satisfaction of Allowed Claims in respect of the NNCC 2026 Notes and (iv) and allowing and preserving the rights of holders of claims in respect of the NNCC Notes Guarantee Obligations to pursue such claims in the CCAA Proceedings, but in all cases subject to the terms and conditions of the NNCC Notes Indenture.

# ARTICLE 9.
## PROCEDURES FOR TREATING DISPUTED CLAIMS

**9.1    Objections.** As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator, who shall consult with the applicable Debtor regarding the same. Objections to and requests for estimation of Claims shall be Filed and served on the claimant on or before the later of (a) the date that is 180 days after the Effective Date; *provided*, *however*, that the Plan Administrator may in his sole discretion extend such date for up to an additional 180 days without need for Bankruptcy Court approval and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

**9.2    No Distributions Pending Allowance.** Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**9.3    Estimation of Claims.** The Plan Administrator may at any time request that the Bankruptcy Court estimate for any purpose including Distribution any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code or otherwise, regardless of whether such Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain exclusive jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim. If the estimated amount constitutes a maximum limitation on the amount of such Claim, such Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently disallowed, reduced, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**9.4    Resolution of Disputed Claims.** On and after the Effective Date, the Plan Administrator shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, enter into protocols for the resolution of, settle or otherwise resolve any Disputed Claims. On the date of the first Distribution that is at least sixty (60) days after the date on which the order allowing a Disputed Claim becomes a Final Order, such Debtor shall remit, to the holder of such Allowed Claim, Creditor Proceeds equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date. To the extent that a Disputed Claim against a Debtor is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the excess of the amount of Creditor Proceeds that would have been distributed to the holder of the Disputed Claim if the Claim had been Allowed in full, over the amount of Creditor Proceeds actually distributed on account of such Disputed Claim, shall become Creditor Proceeds for Distribution to other holders of Allowed Claims in the Class

corresponding to the Disputed Claim at issue in accordance with the terms of the Plan and the Bankruptcy Code.

**9.5      No Interest.**  Holders of Disputed Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim unless the holder of such Allowed Claim is entitled to post-petition interest on such Claim under the Bankruptcy Code and the Plan.

**9.6      Reserve Account for Disputed Claims.**  On or after the Effective Date, the Plan Administrator shall hold Cash in the Disputed Claims Reserve in an aggregate amount sufficient to pay to each holder of a Disputed Claim the Pro Rata Share of any Distributions that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim.  Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Plan Administrator in one or more segregated reserve accounts for each Debtor, to be used to satisfy any Disputed Claim if and when any Disputed Claim becomes an Allowed Claim.

**9.7      Investment of Disputed Claims Reserve.**  All interest earned on Cash in the Disputed Claims Reserve shall be held in the appropriate account in the Disputed Claims Reserve and, after satisfaction of any expenses incurred in connection with the maintenance of the Disputed Claims Reserve, including Taxes payable on such interest income, if any, shall be transferred out of the Disputed Claims Reserve and shall become Available Cash for Distribution to holders of Allowed Claims in the Class corresponding to the Disputed Claims Reserve account at issue in accordance with the terms of the Plan and the Bankruptcy Code.

**9.8      Release of Funds from the Disputed Claims Reserve.**  (a) If at any time or from time to time after the Effective Date there shall be Cash in a Disputed Claims Reserve account with respect to a Debtor in an amount in excess of the Plan Administrator's maximum remaining payment obligations to the then existing holders of Disputed Claims with respect to such Debtor, such excess funds and the Pro Rata Share of net interest in respect thereof shall become property of the relevant Estate and become available for distribution to the other holders of Allowed Claims in accordance with the terms of the Plan and the Bankruptcy Code.

(b) If at any time after the Effective Date the Bankruptcy Court expunges a Disputed Claim or estimates any contingent, unliquidated or other Disputed Claim at an amount less than the amount of Cash held in a Disputed Claims Reserve account with respect to such Claim, and the order with respect to such expungement or estimation has not been stayed pending appeal, the Cash held in the Disputed Claims Reserve account relating to such expunged Claim or in excess of the estimated amount of such Claim shall become property of the relevant Estate and become available for distribution to the other holders of Allowed Claims in accordance with the terms of the Plan and the Bankruptcy Code, and the Plan Administrator shall have no further obligation to reserve funds for such expunged claim.

## ARTICLE 10.
## CONDITIONS PRECEDENT

**10.1    Conditions to Confirmation.**  A condition precedent to the confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order containing terms and conditions reasonably satisfactory in form and substance to each Debtor.

**10.2    Conditions to the Effective Date.**  The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably satisfactory to the Debtors, and the effectiveness of the Confirmation Order shall have not been stayed within fourteen (14) days following the entry thereof;

(b)    All actions and agreements, instruments, certificates or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Debtors;

(c)    All authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked;

(d)    The amended organizational documents of Reorganized NNI and the organizational documents of the Reorganized Subsidiaries shall have been filed with the applicable authority of each Reorganized Debtor's respective jurisdiction of incorporation or formation in accordance with such jurisdiction's applicable laws;

(e)    Each of the relevant Debtors has received its full and final distribution of the Allocation Proceeds;

(f)    All statutory fees then due to the United States Trustee shall have been paid in full by the Debtors pursuant to the Plan;

(g)    With respect to each Debtor, each of the conditions in this Section 10.2 have been satisfied with respect to each other Debtor;

(h)    The Confirmation Order shall have become a Final Order; and

(i)    The Debtors shall have Filed the "Notice of Effective Date" in accordance with Section 10.4.

**10.3    Waiver of Conditions.**  Notwithstanding the foregoing, each Debtor reserves its right, with respect to such Debtor's Chapter 11 Case only, to waive the occurrence of the conditions precedent to the Effective Date set forth in Section 10.2 of the Plan other than Section 10.2(a) of the Plan. Any such waiver may be given effect at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall

take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If any of the Debtors decide that one of the conditions precedent to the Effective Date of its Plan cannot be satisfied and the occurrence or such condition is not waived or cannot be waived, then such Debtor shall file a notice of the inability to satisfy such condition with the Bankruptcy Court.

        **10.4    Notice of Effective Date.** Upon satisfaction of all the conditions to the Effective Date set forth in Section 10.2(a)-(h), or if waivable, waiver pursuant to Section 10.3, or as soon thereafter as is reasonably practicable, the Debtors shall File with the Bankruptcy Court the "Notice of Effective Date" in a form reasonably acceptable to the Debtors in their sole discretion, which notice shall constitute appropriate and adequate notice that this Plan has become effective; *provided, however,* that the Debtors shall have no obligation to notify any Person other than counsel to the Creditors' Committee and the Ad Hoc Group of Bondholders of such fact. The Plan shall be deemed to be effective as of 12:01 a.m., prevailing Eastern Standard Time, on the date of such filing. A courtesy copy of the Notice of Effective Date may be sent by United States mail, postage prepaid (or at the Debtors' option, by courier or facsimile) to those Persons who have Filed with the Bankruptcy Court requests for notices pursuant to Bankruptcy Rule 2002.

## ARTICLE 11.
## EFFECT OF CONFIRMATION

        **11.1    Jurisdiction of Court.** Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the subject matters set forth in Article 12 of this Plan.

        **11.2    Binding Effect.** Except as otherwise provided in section 1141(d) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against or Interest in the Debtors and its respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted the Plan.

        **11.3    Discharge of Debtors.** EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, THE HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY) WILL BE DEEMED TO HAVE WAIVED, RELEASED, VOIDED AND DISCHARGED EACH OF THE DEBTORS AND EACH OF THEIR OFFICERS, DIRECTORS AND EMPLOYEES EMPLOYED AS OF THE EFFECTIVE DATE FROM ANY AND ALL CLAIMS, OBLIGATIONS, DAMAGES, DEMANDS, DEBTS, RIGHTS, SUITS, JUDGMENTS OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE DEBTORS', THE REORGANIZED DEBTORS' OR THE LIQUIDATING DEBTORS' OBLIGATIONS UNDER

THIS PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED UNDER THIS PLAN), WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, OR THE PLAN (INCLUDING, WITHOUT LIMITATION, THE SOLICITATION OF VOTES ON THE PLAN) THAT COULD HAVE BEEN ASSERTED BY THE HOLDERS OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS, IN THEIR INDIVIDUAL CAPACITIES OR ON BEHALF (WHETHER DIRECTLY OR DERIVATIVELY) OF THE DEBTORS, THEIR ESTATES, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, EACH OF THEIR PREDECESSORS, SUCCESSORS, ASSIGNS AND EACH OF THEIR PRESENT AND FORMER OFFICERS, DIRECTORS, EMPLOYEES, CONSULTANTS AND AGENTS (ACTING IN SUCH CAPACITY), IN EACH CASE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER OR RULE OR THE VOTE, CONSENT OR AUTHORIZATION OR APPROVAL OF ANY PERSON.

**11.4    Limited Release of Directors, Officers and Employees.**  NO CLAIMS OF ANY OF THE DEBTORS' ESTATES AGAINST THEIR PRESENT OR FORMER OFFICERS, DIRECTORS OR EMPLOYEES ARISING FROM OR RELATING TO THE PERIOD PRIOR TO THE PETITION DATE, ARE RELEASED BY THIS PLAN.  AS OF THE EFFECTIVE DATE, EACH OF THE DEBTORS AND THE DEBTORS-IN-POSSESSION SHALL BE DEEMED TO HAVE WAIVED AND RELEASED ITS PRESENT AND FORMER DIRECTORS, OFFICERS, AND EMPLOYEES WHO WERE DIRECTORS, OFFICERS OR EMPLOYEES, RESPECTIVELY, AT ANY TIME DURING THE CHAPTER 11 CASES, FROM ANY AND ALL CLAIMS OF EACH OF THE DEBTORS' ESTATES ARISING FROM OR RELATING TO THE PERIOD FROM AND AFTER THE PETITION DATE; PROVIDED, HOWEVER, THAT, EXCEPT AS OTHERWISE PROVIDED BY PRIOR OR SUBSEQUENT FINAL ORDER OF THE BANKRUPTCY COURT, THIS PROVISION SHALL NOT OPERATE AS A WAIVER OR RELEASE OF (A) ANY PERSON (I) NAMED PRIOR TO THE EFFECTIVE DATE AS A DEFENDANT IN ANY ACTION COMMENCED BY OR ON BEHALF OF THE DEBTORS-IN-POSSESSION, INCLUDING ANY ACTIONS PROSECUTED BY THE CREDITORS' COMMITTEE AND THE AD HOC GROUP OF BONDHOLDERS OR (II) ADJUDICATED PRIOR TO THE EFFECTIVE DATE BY A COURT OF COMPETENT JURISDICTION TO HAVE ENGAGED IN ACTS OF DISHONESTY OR WILLFUL MISCONDUCT DETRIMENTAL TO THE INTEREST OF THE DEBTORS OR (B) ANY CLAIM (I) WITH RESPECT TO ANY LOAN, ADVANCE OR SIMILAR PAYMENT BY THE DEBTORS TO ANY SUCH PERSON, (II) WITH RESPECT TO ANY CONTRACTUAL OBLIGATION OWED BY SUCH PERSON TO THE DEBTORS OR (III) RELATING TO SUCH PERSON'S KNOWING FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT; AND PROVIDED, FURTHER, THAT THE FOREGOING IS NOT INTENDED, NOR SHALL IT BE CONSTRUED, TO RELEASE ANY OF THE DEBTORS' CLAIMS THAT MAY EXIST AGAINST THE DEBTORS' DIRECTORS AND OFFICERS LIABILITY INSURANCE; AND PROVIDED, FURTHER, THAT,

NOTWITHSTANDING THE FOREGOING, ALL SUCH CLAIMS SHALL BE PRESERVED BY THE DEBTORS FOR SETOFF PURPOSES.

     **11.5    Exculpation.** NONE OF THE DEBTORS, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS, THE CREDITORS' COMMITTEE, THE AD HOC GROUP OF BONDHOLDERS, THE NNCC NOTES INDENTURE TRUSTEE, THE NNC/NNL NOTES INDENTURE TRUSTEE OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, ATTORNEYS, CONSULTANTS, ACCOUNTANTS, ADVISORS, AGENTS AND OTHER PROFESSIONALS (ACTING IN SUCH CAPACITY) (INDIVIDUALLY, EACH AN "EXCULPATED PARTY," AND COLLECTIVELY, THE "EXCULPATED PARTIES") SHALL HAVE OR INCUR ANY LIABILITY TO ANY ENTITY FOR ANY ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH AND SUBSEQUENT TO THE COMMENCEMENT OF THE CHAPTER 11 CASES, THE FORMULATION, PREPARATION, DISSEMINATION, IMPLEMENTATION, SOLICITATION OF VOTES, CONFIRMATION OR APPROVAL OF THE PLAN OR ANY COMPROMISES OR SETTLEMENTS CONTAINED THEREIN, THE ADMINISTRATION OF THE PLAN OR DISTRIBUTIONS UNDER THE PLAN, THE DISCLOSURE STATEMENT AND ANY ANCILLARY DOCUMENTS RELATED THERETO OR ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT PROVIDED FOR OR CONTEMPLATED IN CONNECTION WITH THE CONSUMMATION OF THE TRANSACTIONS SET FORTH IN THE PLAN; PROVIDED, HOWEVER, THE FOREGOING PROVISIONS OF THIS SECTION 11.5 SHALL NOT AFFECT THE LIABILITY OF ANY EXCULPATED PARTY THAT OTHERWISE WOULD RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT THAT SUCH ACT OR OMISSION IS DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, INCLUDING, WITHOUT LIMITATION, FRAUD AND CRIMINAL MISCONDUCT, AND IN ALL RESPECTS THE EXCULPATED PARTIES SHALL BE ENTITLED TO REASONABLY RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THIS PLAN.

     **11.6    Injunction on Claims.** EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN, THE CONFIRMATION ORDER OR SUCH OTHER ORDER OF THE BANKRUPTCY COURT THAT MAY BE APPLICABLE, ALL HOLDERS OF CLAIMS OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ANY SUCH CLAIM OR OTHER DEBT OR LIABILITY OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (B) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING

DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE LIQUIDATING DEBTORS OR ANY PROPERTIES OR INTEREST IN PROPERTIES OF THE DEBTORS, THE REORGANIZED DEBTORS OR THE LIQUIDATING DEBTORS, (E) ACTING OR PROCEEDING IN ANY MANNER THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN AND (F) TAKING ANY ACTIONS TO INTERFERE WITH THE IMPLEMENTATION OR CONSUMMATION OF THE PLAN, WITH RESPECT TO ANY SUCH CLAIM OR OTHER DEBT OR LIABILITY THAT IS DISCHARGED OR INTEREST OR OTHER RIGHT OF EQUITY INTEREST THAT IS TERMINATED OR CANCELLED PURSUANT TO THE PLAN.

**11.7    Terms of Injunctions or Stays.**  Unless otherwise provided in the Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 and 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

**11.8    Retention of Litigation Claims and Reservation of Rights.**

(a)    Except as expressly provided in the Plan, nothing contained in the Plan or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights of Litigation Claims that the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator may have or choose to assert on behalf of the respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation (i) any and all claims against any Person or Entity, to the extent such Person or Entity asserts a cross-claim, counterclaim or claim for setoff that seeks affirmative relief against the Debtors, their officers, directors or representatives, (ii) any and all claims or rights arising under any Tax sharing agreement among the Debtors and their Affiliates, (iii) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of any Affiliate's Assets and (iv) any and all Avoidance Actions.

(b)    Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Litigation Claim, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date, against or with respect to any Claim. The Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall have, retain, reserve and be entitled to assert all such Litigation Claims, rights of setoff, and other legal or equitable defenses that the relevant Debtor had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the

Chapter 11 Cases had not been commenced; *provided, however*, that for the avoidance of doubt, the foregoing shall not restrict the Debtors', the Reorganized Debtors', the Liquidating Debtors' or the Plan Administrator's ability to retain, prosecute or settle any Avoidance Actions.

(c)     Except as expressly provided in the Plan, the Plan Administrator, shall, after the Effective Date, retain the rights of each Debtor to prosecute any Litigation Claims that could have been brought by such Debtor at any time.

**11.9     Retention of Rights.**  The Plan Administrator, the Reorganized Debtors and the Liquidating Debtors shall retain the rights of each Debtor to enforce all orders entered and relief granted in the Chapter 11 Cases.

**11.10     Vesting.**  Except as otherwise expressly provided in the Plan, or any documents or instruments executed in accordance therewith, on the Effective Date, pursuant to section 1141(b) and section 1141(c) of the Bankruptcy Code, the relevant Debtors shall transfer, and the Reorganized Debtors shall be vested with, all of the Assets of such Debtors' Estates free and clear of all Claims, Interests, Liens, encumbrances, charges and other interests of Creditors and holders of Interests, and may operate their businesses free of any restrictions imposed by the Bankruptcy Code or by the Bankruptcy Court, including, without limitation, performing any contract or lease entered into or assumed by any of the Debtors after the Petition Date.  The Debtors shall continue as Debtors-in-Possession under the Bankruptcy Code until the Effective Date, and thereafter, subject to the terms of the Plan, the Reorganized Debtors may operate their businesses free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court.

## ARTICLE 12.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases after the Effective Date to the fullest extent legally permissible, including jurisdiction to, among other things:

(a)     Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of all Claims and Interests;

(b)     Hear and determine any and all Causes of Action against any Person and rights of the Debtors, the Reorganized Debtors and the Liquidating Debtors that arose before or after the Petition Date, including, but not limited to, the rights and powers of a trustee and Debtor-in-Possession against any Person whatsoever, including, but not limited to, all avoidance powers granted to the Debtors under the Bankruptcy Code and all Causes of Action and remedies granted pursuant to sections 502, 506, 510, 541, 542, 543, 544, 545, 547 through 551 and 553 of the Bankruptcy Code;

(c)     Grant or deny any applications for allowance of compensation for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or prior to the Effective Date;

(d)    Resolve any matters relating to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any Debtor is or was a party or with respect to which any of the Debtors may be liable, including, without limitation, the determination of whether such contract is executory for the purposes of section 365 of the Bankruptcy Code, and hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e)    Enter orders approving the Reorganized Debtors' post-Confirmation sale or other disposition of Residual Assets upon motion by the Plan Administrator;

(f)    Ensure that Distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(g)    Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving any Debtor that may be pending in the Chapter 11 Cases on the Effective Date;

(h)    Hear and determine matters concerning state, local or federal taxes in accordance with sections 346, 505, 1129 or 1146 of the Bankruptcy Code;

(i)    Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Confirmation Order;

(j)    Hear and determine any matters concerning the enforcement of the provisions of Article 11 of this Plan and any other exculpations, limitations of liability or injunctions contemplated by this Plan;

(k)    Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(l)    Permit the Debtors, to the extent authorized pursuant to section 1127 of the Bankruptcy Code, to modify the Plan or any agreement or document created in connection with the Plan, or remedy any defect or omission or reconcile any inconsistency in the Plan or any agreement or document created in connection with the Plan;

(m)    Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with respect to consummation, implementation or enforcement of the Plan or the Confirmation Order;

(n)    Enforce any injunctions entered in connection with or relating to the Plan or the Confirmation Order;

(o)    Enter and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or Distributions pursuant to the Plan are enjoined or stayed;

(p)    Hear and determine all claims, rights or disputes arising under or in connection with the 363 Sale Agreements and the Plan Administration Agreement;

(q)    Determine any other matters that may arise in connection with or relating to the Plan or any agreement or the Confirmation Order;

(r)    Enter any orders in aid of and resolve any matters relating to or arising under prior orders of the Bankruptcy Court; and

(s)    Enter final decrees closing the Chapter 11 Cases.

## ARTICLE 13.
## MISCELLANEOUS PROVISIONS

**13.1    Plan Supplement.**  The Plan Administration Agreement, the amended certificate and by-laws of Reorganized NNI, the certificate of formation and the operating agreement of each of the Reorganized Subsidiaries and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with Section 7.2 shall be contained in the Plan Supplement that is Filed at least ten (10) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at http://dm.epiq11.com/nortel or by request to the Debtors in accordance with Section 13.16 of the Plan.

**13.2    Modification of the Plan.**  As provided by section 1127 of the Bankruptcy Code, the Debtors reserve the right to propose alterations, amendments, or modifications of or to the Plan in writing at any time prior to the Confirmation Date, including to substantively consolidate one or more Debtors' Assets and liabilities for voting and Distribution purposes, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  As provided by section 1127 of the Bankruptcy Code, the Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court after notice and a hearing, confirms the Plan, as altered, modified or amended, under section 1129 of the Bankruptcy Code, and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

**13.3    Revocation or Withdrawal of the Plan.**  The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date.  If any Debtor revokes or withdraws the Plan with respect to such Debtor, or if Confirmation does not occur or if the Plan does not become effective, then the Plan shall be null and void with respect to such Debtor, and nothing contained in the Plan or Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person; (b) constitute an

admission of any fact or legal conclusion by such Debtor or any other Entity; or (c) prejudice in any manner the rights of such Debtor in any further proceedings involving such Debtor.

**13.4   Insurance Preservation.** Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any insurance policies or other policies of insurance that may cover insurance claims or other claims against the Debtors or any other Person.

**13.5   Exemption from Certain Transfer Taxes.** Pursuant to section 1146 of the Bankruptcy Code, any transfers from any of the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator pursuant to, in furtherance of or in connection with this Plan shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, transaction privilege tax, privilege taxes or other similar tax, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**13.6   Exemption from Registration.** Pursuant to section 1145 of the Bankruptcy Code, and except as provided in subsection (b) thereof, the issuance of any securities or interests on account of, and in exchange for the Claims against the Debtors shall be exempt from registration pursuant to section 5 of the Securities Act of 1933, as amended, and any other applicable non-bankruptcy law or regulation.

**13.7   Governing Law.** Unless a rule of law or procedure is supplied by (a) United States federal law (including the Bankruptcy Code and Bankruptcy Rules) or (b) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws thereof.

**13.8   No Admissions.** If the Confirmation Date or the Effective Date does not occur, nothing contained in the Plan or Disclosure Statement shall be deemed as an admission by any Debtor with respect to any matter set forth herein or therein including, without limitation, liability on any Claim or the propriety of any Claims classification.

**13.9   Severability of Plan Provisions.** If, prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or Interests is held by the Bankruptcy Court to be invalid, void or unenforceable, at the request of the Debtors the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a final judicial determination and shall

provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.10  Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**13.11  Defenses with Respect to Unimpaired Claims.**  Except as otherwise provided in this Plan, nothing shall affect the rights and legal and equitable defenses of the Debtors, the Reorganized Debtors, the Liquidating Debtors or the Plan Administrator with respect to any Unimpaired Claim, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**13.12  No Injunctive Relief.**  Except as otherwise provided in the Plan or Confirmation Order, no Claim or Interest shall under any circumstances be entitled to specific performance or other injunctive, equitable or other prospective relief.

**13.13  Payment of Statutory Fees.**  All fees payable pursuant to section 1930, chapter 123 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date or as soon as practicable thereafter by the Debtors.

**13.14  Saturday, Sunday or Legal Holiday.**  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**13.15  Dissolution of Creditors' Committee.**  Effective on the Effective Date, the Creditors' Committee shall dissolve automatically and its members shall be released from any further duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code without need for a further order of the Bankruptcy Court; *provided, however,* that (a) obligations arising under confidentiality agreements, joint interest agreements, and protective orders, if any, entered during the Chapter 11 Cases shall remain in full force and effect according to their terms, and (b) the Creditors' Committee may make application for Professional Claims and members of the Creditors' Committee may make requests for compensation and reimbursement of expenses pursuant to section 503(b) of the Bankruptcy Code for making a substantial contribution in any of the Chapter 11 Cases. The Debtors, the Reorganized Debtors, the Liquidating Debtors and the Plan Administrator shall not have any obligation to pay or reimburse any fees of any official or unofficial committee of creditors incurred after the Effective Date.

**13.16  Notices.**  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

71

Counsel for the Debtors

    Cleary Gottlieb Steen & Hamilton LLP
    One Liberty Plaza
    New York, NY 10006
    (212) 225-3999 (facsimile)
    Attn:   James L. Bromley, Esq.
           Lisa M. Schweitzer, Esq.

      - and -

    Morris, Nichols, Arsht & Tunnell LLP
    1201 North Market Street, 18th Floor
    P.O. Box 1347
    Wilmington, DE 19899
    (302) 658-3989 (facsimile)
    Attn:   Derek C. Abbott, Esq.
           Eric D. Schwartz, Esq.

The Plan Administrator

    Avidity Partners, LLC
    18 W140 Butterfield Road, 15th Floor
    Oakbrook Terrace, IL 6081
    (630) 613-7001 (facsimile)
    Attn:   John J. Ray, III

Counsel for the Plan Administrator

    Cleary Gottlieb Steen & Hamilton LLP
    One Liberty Plaza
    New York, NY 10006
    (212) 225-3999 (facsimile)
    Attn:   James L. Bromley, Esq.
           Lisa M. Schweitzer, Esq.

Counsel for the Ad Hoc Group of Bondholders

    Milbank, Tweed, Hadley & McCloy LLP
    One Chase Manhattan Plaza
    New York, NY 10005
    (212) 530-5219 (facsimile)
    Attn:   Albert A. Pisa, Esq.

Counsel for the Creditors' Committee

    Akin Gump Strauss Hauer & Feld LLP
    One Bryant Park
    New York, NY 10036
    (212) 872-1002 (facsimile)
    Attn:  Fred S. Hodara, Esq.
           David H. Botter, Esq.

      - and -

    Richards, Layton & Finger, P.A.
    One Rodney Square
    920 North King Street
    Wilmington, Delaware 19801
    (302) 651-7701 (facsimile)
    Attn:  Christopher M. Samis, Esq.

Dated: July 12, 2010

**Nortel Networks Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Networks Capital Corporation**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Altsystems International Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Sonoma Systems**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Coretek, Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Networks (CALA) Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Altsystems Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Xros, Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Qtera Corporation**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Networks Applications Management Solutions Inc.**

By: _____
Name: John J. Ray, III
Title: Principal Officer

**Nortel Networks Optical Components Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Architel Systems (U.S.) Corporation**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Northern Telecom International Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks HPOCS Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks International Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

**Nortel Networks Cable Solutions Inc.**

By: _____
    Name: John J. Ray, III
    Title: Principal Officer

## Exhibit A

## The Debtors

|  | Cases | Number |
|---|---|---|
| 1. | Nortel Networks Inc. | 09-10138 |
| 2. | Nortel Networks Capital Corporation | 09-10139 |
| 3. | Nortel Altsystems Inc. (f/k/a Alteon Websystems, Inc.) | 09-10140 |
| 4. | Nortel Altsystems International Inc. (f/k/a Alteon Websystems International, Inc.) | 09-10141 |
| 5. | Xros, Inc. | 09-10142 |
| 6. | Sonoma Systems | 09-10143 |
| 7. | Qtera Corporation | 09-10144 |
| 8. | CoreTek, Inc. | 09-10145 |
| 9. | Nortel Networks Applications Management Solutions Inc. | 09-10146 |
| 10. | Nortel Networks Optical Components Inc. | 09-10147 |
| 11. | Nortel Networks HPOCS Inc. | 09-10148 |
| 12. | Architel Systems (U.S.) Corporation | 09-10149 |
| 13. | Nortel Networks International Inc. | 09-10150 |
| 14. | Northern Telecom International Inc. | 09-10151 |
| 15. | Nortel Networks Cable Solutions Inc. | 09-10152 |
| 16. | Nortel Networks (CALA) Inc. | 09-125157 |

## Exhibit B

## 363 Sale Agreements[2]

| 363 Sale | 363 Sale Agreements |
|---|---|
| **CDMA Sale** | 1.   Asset Sale Agreement, dated as of July 24, 2009, by and among NNC, NNL, NNI, the Other Sellers and Telefonaktiebolaget L M Ericsson (publ) (the "Purchaser"), as amended, modified or supplemented from time to time. <br><br> 2.   CDMA/LTE China Side Agreement, dated as of November 2, 2009, by and among Nortel Networks (China) Limited, NNL and NNI, as amended, modified or supplemented from time to time. <br><br> 3.   Ancillary Agreements as defined in the Asset Sale Agreement and covered by the CDMA 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. <br><br> 4.   Other ancillary agreements covered by the CDMA 363 Sale Orders and escrow agreements relating to the CDMA Sale, as such agreements may be amended, modified or supplemented from time to time. |
| **CVAS Sale** | 1.   Asset Sale Agreement, dated as of December 22, 2009, by and among NNC, NNL, NNI, the Other Sellers and GENBAND Inc. (the "Purchaser"), as amended, modified or supplemented from time to time. <br><br> 2.   Incentive Fee Side Agreement, dated as of January 8, 2010, by and among NNC, NNL, NNI, NNUK and the Joint Administrators, as amended, modified or supplemented from time to time. <br><br> 3.   Ancillary Agreements as defined in the Asset Sale Agreement and covered by the CVAS 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. <br><br> 4.   Other ancillary agreements covered by the CVAS 363 Sale Orders and escrow agreements relating to the CVAS Sale, as such agreements may be amended, modified or supplemented from time to time. |

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the respective agreements.

| Enterprise Sale | 1. | Amended and Restated Asset and Share Sale Agreement, dated as of September 14, 2009, by and among NNC, NNL, NNI, the Other Sellers, the EMEA Sellers and Avaya, Inc. (the "Purchaser"), as amended, modified or supplemented from time to time. |
| --- | --- | --- |
| | 2. | Side Agreement, dated as of July 20, 2009, by and among NNC, NNL, NNI, the Other Sellers, the EMEA Sellers, the Joint Administrators and the Joint Israeli Administrators, as amended, modified or supplemented from time to time. |
| | 3. | Ancillary Agreements as defined in the Amended and Restated Asset and Share Sale Agreement and covered by the Enterprise 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
| | 4. | Other ancillary agreements covered by the Enterprise 363 Sale Orders and escrow agreements relating to the Enterprise Sale, as such agreements may be amended, modified or supplemented from time to time. |
| GSM Sale | 1. | Asset Sale Agreement, dated as of November 24, 2009, by and among NNC, NNL, NNI, the Other Sellers and Telefonaktiebolaget L M Ericsson (publ) (the "Purchaser"), as amended, modified or supplemented from time to time. |
| | 2. | GSM Termination Fee Agreement, dated as of November 24, 2009, by and among NNC, NNL, NNI and the Purchaser, as amended, modified or supplemented from time to time. |
| | 3. | GSM/GSM-R Side Agreement, dated as of March 31, 2010, by and among NNC, NNL, NNI, the Other Sellers, the EMEA Sellers, Nortel Networks S.A., the North American ALT Selling Debtors and the Joint Administrators, as amended, modified or supplemented from time to time. |
| | 4. | Ancillary Agreements as defined in the Asset Sale Agreement and covered by the GSM 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
| | 5. | Other ancillary agreements covered by the GSM 363 Sale Orders and escrow agreements relating to the GSM Sale, as such agreements may be amended, modified or supplemented from time to time. |

Ex. B-2

| GSM Residual Assets Sale | 1. | Asset Sale Agreement, dated as of May 11, 2010, by and among NNL, NNI, NNCALA, the Other Sellers and the Purchaser, as amended, modified or supplemented from time to time. |
|---|---|---|
| | 2. | Ancillary Agreements as defined in the Asset Sale Agreement and covered by the GSM Residual Asset 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
| | 3. | Other ancillary agreements covered by the GSM Residual Asset 363 Sale Orders and escrow agreements relating to the GSM Residual Asset Sale, as such agreements may be amended, modified or supplemented from time to time. |
| Layer 4-7 Sale | 1. | Asset Purchase Agreement, dated as of February 19, 2009, by and among NNI, NNL, the EMEA Sellers, the Joint Administrators and Radware Ltd. (the "Purchaser"), as amended, modified or supplemented from time to time. |
| | 2. | Side Agreement, dated as of February 19, 2009, by and among NNI, NNL, the EMEA Sellers and the Joint Administrators, as amended, modified or supplemented from time to time. |
| | 3. | Ancillary Agreements as defined in the Asset Purchase Agreement and covered by the Layer 4-7 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
| | 4. | Other ancillary agreements covered by the Layer 4-7 363 Sale Orders and escrow agreements relating to the Layer 4-7 Sale, as such agreements may be amended, modified or supplemented from time to time. |
| MEN Sale | 1. | Amended and Restated Asset Sale Agreement, dated as of November 24, 2009, by and among NNC, NNL, NNI, the Other Sellers and Ciena Corporation (the "Purchaser"), as amended, modified or supplemented from time to time. |
| | 2. | Metro Ethernet Networks Side Agreement, dated as of February 26, 2010, by and among NNC, NNL, NNI, the Other Sellers, the EMEA Sellers, Nortel Networks S.A., the North American ALT Selling Debtors, the EMEA ALT Selling Debtors, the Joint Administrators and the Joint Israeli Administrators, as amended, modified or supplemented from time to time. |

|  | | |
|---|---|---|
|  | 3. | Argentina Side Offer, dated as of March 19, 2010, by and among Nortel Networks de Argentina S.A., NNL, NNI, Nortel Networks International Corporation, the EMEA Sellers and the EMEA LTA Sellers, as amended, modified or supplemented from time to time. |
|  | 4. | Ancillary Agreements as defined in the Amended and Restated Asset Sale Agreement and covered by the MEN 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
|  | 5. | Other ancillary agreements covered by the MEN 363 Sale Orders and escrow agreements relating to the MEN Sale, as such agreements may be amended, modified or supplemented from time to time. |
| **Next Generation Sale** | 1. | Transaction Agreement, dated as of October 25, 2009, by and among NNL, NNI and Hitachi, Ltd. (the "Purchaser"), as amended, modified or supplemented from time to time. |
|  | 2. | Ancillary Agreements as defined in the Transaction Agreement and covered by the Next Generation 363 Sale Orders, as such agreements may be amended, modified or supplemented from time to time. |
|  | 3. | Other ancillary agreements covered by the Next Generation 363 Sale Orders and escrow agreements relating to the Next Generation Sale, as such agreements may be amended, modified or supplemented from time to time. |

## Exhibit C

### 363 Sale Orders

| 363 Sale | 363 Sale Orders |
|---|---|
| **CDMA Sale** | 1.    Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' CDMA and LTE Business Free and Clear of All Liens, Claims and Encumbrances, (B) the Assumption and Assignment of Contracts and (C) the Assumption and Sublease of Certain Leases, entered by the Bankruptcy Court on July 28, 2009 approving the sale of the CDMA and LTE-related assets to Telefonaktiebolaget LM Ericsson (Publ), as may be amended, supplemented or modified from time to time [Docket No. 1205].<br><br>2.    Order Pursuant to Bankruptcy Code Sections 105, 363 and 365 (A) Authorizing Debtors' Entry Into The Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures, (C) Authorizing And Approving A Break-Up Fee And Expense Reimbursement, (D) Approving The Notice Procedures, (E) Approving The Assumption And Assignment Procedures, (F) Authorizing The Filing Of Certain Documents Under Seal And (G) Setting A Date For The Sale Hearing, entered by the Bankruptcy Court on June 30, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1012].<br><br>3.    Order (A) Approving Debtors' Entry Into The CDMA Escrow Agreement And (B) Granting Related Relief, entered by the Bankruptcy Court on November 12, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1889].<br><br>4.    Order (A) Approving the Assumption and Assignment of Certain Additional Executory Contracts Pursuant to the Sale of the Debtors' CDMA and LTE Business and (B) Authorizing the Debtors to File Information Under Seal, entered by the Bankruptcy Court on November 19, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1926].<br><br>5.    Order (A) Approving The CDMA/LTE China Side Agreement And (B) Granting Related Relief, entered by the Bankruptcy Court on January 1, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2250]. |

| | | |
|---|---|---|
| **CVAS Sale** | 1. | Order Authorizing and Approving (A) the Sale of Certain Assets of the Debtors' Carrier Voice Over IP and Communications Solutions Business Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts, entered by the Bankruptcy Court on March 4, 2010 approving the sale of certain assets of the Carrier Voice Over IP and Application Solutions business to GENBAND Inc., as may be amended, supplemented or modified from time to time [Docket No. 2632]. |
| | 2. | Order A) Authorizing Debtors' Entry Into The Stalking Horse Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving Payment Of An Incentive Fee, (D) Approving The Notice Procedures And The Assumption And Assignment Procedures, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, entered by the Bankruptcy Court on January 8, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2259]. |
| | 3. | Order Approving The CVAS Side Agreement And Granting Related Relief, entered by the Bankruptcy Court on May 24, 2010, as may be amended, supplemented or modified from time to time [Docket No. 3047]. |
| **Enterprise Sale** | 1. | Order Authorizing and Approving (A) The Sale of Certain Assets of, and Equity Interests in, Debtors' Enterprise Solutions Business, (B) The Assumption and Assignment of Certain Contracts and Leases and (C) the Assumption and Sublease of Certain Leases, entered by the Bankruptcy Court on September 16, 2009 approving the sale of the Enterprise business to Avaya, Inc., as may be amended, supplemented or modified from time to time [Docket No. 1514]. |
| | 2. | Order (A) Authorizing Debtors' Entry Into The Asset And Share Sale Agreement, (B) Authorizing And Approving The Bidding Procedures, (C) Authorizing And Approving A Break-Up Fee And Expense Reimbursement, (D) Approving The Notice Procedures, (E) Approving The Assumption And Assignment Procedures, (F) Authorizing The Filing Of Certain Documents Under Seal, And (G) Setting A Date For The Sale Hearing, entered by the Bankruptcy Court on August 4, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1278]. |
| | 3. | Order (A) Approving The Side Agreement Among The Debtors And |

Other Sellers Of Nortel's Enterprise Solutions Business, And (B) Granting Related Relief, entered by the Bankruptcy Court on August 4, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1279].

4. Order (A) Approving Debtors' Entry Into The Enterprise Solutions Business Escrow Agreement And (B) Granting Related Relief, entered by the Bankruptcy Court on December 17, 2009, as may be amended, supplemented or modified from time to time [Docket No. 2167].

5. Order Approving Stipulation Between Nortel Networks Incorporated and the Internal Revenue Service, entered by the Bankruptcy Court on October 13, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1659].

6. Order Approving (A) the Assumption and Assignment of Executory Contracts Pursuant to the Sale of the Debtors' Enterprise Solutions Business and (B) Approving a Compromise of Controversy Between the Debtors, Avaya Inc. and AT&T Services, Inc., entered by the Bankruptcy Court on December 15, 2009, as may be amended, supplemented or modified from time to time [Docket No. 2141].

7. Order Approving The Assumption And Assignment Of Certain Additional Executory Contracts Pursuant To The Sale Of The Debtors' Enterprise Solutions Business, entered by the Bankruptcy Court on December 17, 2009, as may be amended, supplemented or modified from time to time [Docket No. 2166].

8. Order (A) Approving The Assumption And Assignment Of Certain Additional Executory Contracts In Connection With The Sale Of The Debtors' Enterprise Solutions Business And (B) Authorizing The Debtors To File Information Under Seal, entered by the Bankruptcy Court on January 6, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2248].

9. Order (A) Approving The Assumption And Assignment Of Certain Additional Executory Contracts In Connection With The Sale Of The Debtors' Enterprise Solutions Business And (B) Authorizing The Debtors To File Information Under Seal, entered by the Bankruptcy Court on February 26, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2569].

10. Order (A) Approving the Assumption and Assignment of Certain Additional Executory Contracts in Connection with the Sale of the

| | | |
|---|---|---|
| | | Debtors' Enterprise Solutions Business and (B) Authorizing the Debtors to File Information Under Seal, entered by the Bankruptcy Court on March 29, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2788]. |
| **GSM Sale** | 1. | Order Authorizing and Approving Sale of Debtors' GSM/GSM-R Free and Clear of All Liens, Claims and Encumbrances, entered by the Bankruptcy Court on December 3, 2009 approving the sale of assets associated with the GSM/GSM-R business to Telefonaktiebolaget LM Ericsson (Publ) and Kapsch Carriercom AG, as may be amended, supplemented or modified from time to time [Docket No. 2065]. |
| | 2. | Order Authorizing And Approving (I) Bidding Procedures, (II) Notice Procedures, And (III) Setting A Date For The Sale Hearing, for the Sale Of Certain Assets Of Debtors' GSM/GSM-R Business, entered by the Bankruptcy Court on October 15, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1676]. |
| | 3. | Order A) Authorizing And Approving The GSM Termination Fee Agreement And (B) Granting Related Relief, entered by the Bankruptcy Court on December 3, 2009, as may be amended, supplemented or modified from time to time [Docket No. 2064]. |
| | 4. | Order Approving The GSM/GSM-R Side Agreement And Granting Related Relief, entered by the Bankruptcy Court on May 24, 2010, as may be amended, supplemented or modified from time to time [Docket No. 3046]. |
| **GSM Residual Assets Sale** | 1. | Order (I) Authorizing The Sale Of Certain Assets Of Debtors' GSM/GSM-R Business Free And Clear Of All Liens, Claims And Encumbrances; (II) Authorizing And Approving The Asset Sale Agreement; (III) Authorizing And Approving The Assumption And Assignment Of Certain Executory Contracts; And (IV) Authorizing The Filing Of Certain Documents Under Seal, entered by the Bankruptcy Court on May 24, 2010 approving the sale of assets associated with the GSM/GSM-R business to Telefonaktiebolaget LM Ericsson (Publ), as may be amended, supplemented or modified from time to time [Docket No. 3048]. |
| **Layer 4-7 Sale** | 1. | Order Authorizing and Approving (A) Sale of Certain Non-Core Assets Free and Clear of All Liens, Claims and Encumbrances and (B) Assignment of Certain Contracts, entered by the Bankruptcy Court on March 26, 2009 approving the sale of the Layer 4-7 assets to Radware |

|  |  |  |
|---|---|---|
|  |  | Ltd., as may be amended, supplemented or modified from time to time [Docket No. 539]. |
|  | 2. | Order Authorizing and Approving (A) Bidding Procedures, (B) Break-Up Fee and Expense Reimbursement, (C) Notice Procedures, (D) Assumption and Assignment Procedures (E) Filing of Certain Schedules Under Seal and (F) Setting Time, Date and Place for Sale Hearing, entered by the Bankruptcy Court on February 27, 2009, as may be amended, supplemented or modified from time to time [Docket No. 386]. |
| **MEN Sale** | 1. | Order Authorizing and Approving (A) Sale of Certain Assets of the Debtors' Metro Ethernet Networks Business Free and Clear of All Liens, Claims and Encumbrances and (B) Assumption and Assignment of Certain Executory Contracts, entered by the Bankruptcy Court on December 3, 2009 approving the sale of the Metro Ethernet Networks business to Ciena Corporation, as may be amended, supplemented or modified from time to time [Docket No. 2070]. |
|  | 2. | Order Pursuant to Bankruptcy Code Sections 105, 363 and 365 (A) Authorizing Debtors' Entry Into The Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Authorizing The Filing Of Certain Documents Under Seal And (E) Setting A Date For The Sale Hearing, entered by the Bankruptcy Court on October 16, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1685]. |
|  | 3. | Order Approving The Metro Ethernet Networks Side Agreement And Granting Related Relief, entered by the Bankruptcy Court on March 3, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2627]. |
|  | 4. | Order (A) Authorizing The Debtors To Accept The Metro Ethernet Networks Argentina Side Offer And (B) Granting Related Relief, entered by the Bankruptcy Court on April 13, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2872]. |
|  | 5. | Order Approving The Engagement Of Grant Thornton LLP Nunc Pro Tunc To February 26, 2010 As Neutral TSA Arbitrator In Connection With The Sale Of Certain Metro Ethernet Networks Business Assets, |

| | | |
|---|---|---|
| | | entered by the Bankruptcy Court on April 13, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2873]. |
| | 6. | Order To Add Certain Additional Debtors As Sellers In The Sale Of The Debtors' Metro Ethernet Networks Business To Ciena Corporation, entered by the Bankruptcy Court on February 26, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2562]. |
| | 7. | Order (A) Approving The Assumption And Assignment Of Certain Additional Executory Contracts Pursuant To The Sale Of The Debtors' Metro Ethernet Networks Business And (B) Authorizing The Debtors To File Information Under Seal, entered by the Bankruptcy Court on January 21, 2010, as may be amended, supplemented or modified from time to time [Docket No. 2314]. |
| Next Generation Sale | 1. | Order Authorizing and Approving Sale of Debtors' Next Generation Packet Core Components Free and Clear of All Liens, Claims and Interests, entered by the Bankruptcy Court on October 28, 2009 approving the sale of assets associated with the Next Generation Packet Core network components to Hitachi, Ltd., as may be amended, supplemented or modified from time to time [Docket No. 1760]. |
| | 2. | Order Authorizing and Approving (I) Sale Procedures, (II) Notice Procedures, and (III) Setting a Date for Sale Hearing, entered by the Bankruptcy Court on September 30, 2009, as may be amended, supplemented or modified from time to time [Docket No. 1584]. |
| | 3. | Order (A) Approving Debtors' Entry Into The Next Generation Packet Core Network Components Escrow Agreement And (B) Granting Related Relief, entered by the Bankruptcy Court on December 3, 2009, as may be amended, supplemented or modified from time to time [Docket No. 2062]. |
| | 4. | Order To Amend The Intellectual Property License Agreement And Transition Services Agreement in the Sale of the Debtors' Next Generation Packet Core Network Components to Hitachi, entered by the Bankruptcy Court on May 24, 2010, as may be amended, supplemented or modified from time to time [Docket No. 3049]. |

**Exhibit D**

**Foreign Proceedings**

1.     **CCAA Proceedings or Canadian Proceedings** means the proceedings relating to the Canadian Petitioners currently pending before the Ontario Superior Court of Justice.

2.     **French Proceedings** means the secondary insolvency proceedings within the meaning of Article 27 of the European Union's Council Regulation (EC) No 1346/2000 on Insolvency Proceedings in the Republic of France pursuant to which a liquidator and an administrator have been appointed by the Versailles Commercial Court (Docket No. 2009P00492) for Nortel Networks S.A.

3.     **Israeli Administration Proceedings** means the administration proceedings of the Nortel Networks Israel (Sales and Marketing) Limited and its subsidiaries commenced on January 19, 2009 pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.

4.     **U.K. Proceedings** means the administration proceedings of the EMEA Debtors commenced on January 14, 2009 in the High Court of England and Wales, pursuant to the Insolvency Act 1986.

5.     Any other insolvency or similar proceeding filed after the Petition Date in a jurisdiction other than the United States involving an Affiliate of the Debtors.

**Exhibit E**

**Assumed Executory Contracts**

**[TO COME]**

Court File No: 09-CL-7950

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF NORTEL NETWORKS CORPORATION *et al.*

*ONTARIO*
**SUPERIOR COURT OF JUSTICE**
**(COMMERCIAL LIST)**

Proceeding commenced at Toronto

**FIFTIETH REPORT OF THE MONITOR**
**DATED JULY 13, 2010**

**GOODMANS LLP**
Barristers & Solicitors
Bay Adelaide Centre
333 Bay Street, Suite 3400
Toronto, ON  M5H 2S7

Jay A. Carfagnini  (LSUC#: 222936)
Joseph Pasquariello (LSUC# 37389C)
Christopher G. Armstrong (LSUC# 55148B)

Tel: 416.979.2211
Fax: 416.979.1234

Lawyers for the Monitor, Ernst & Young Inc.