## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| Nortel Networks Inc., *et al.*,[1] | : | Case No. 09-10138 (KG) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Hearing date: August 18, 2010 at 10:00 am (ET)** |
| | : | **Objections due: August 11, 2010 at 4:00 pm (ET)** |

-------------------------------------------------------X

### DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF RLKS EXECUTIVE SOLUTIONS LLC AS CONSULTANTS TO THE DEBTORS *NUNC PRO TUNC* TO JULY 9, 2010

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby move this Court (the "Application") for entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing the employment and retention of RLKS Executive Solutions LLC ("RLKS") as document management and data preservation consultants to the Debtors *nunc pro tunc* to July 9, 2010 (the "Effective Date"); (ii) approving

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

the terms and conditions pursuant to which RLKS will be retained and compensated by the Debtors; and (iii) granting the Debtors such other and further relief as the Court deems just and proper. In support of the Application, the Debtors rely on the Affidavit of Richard A. Lydecker, Jr. (the "Lydecker Affidavit"), attached hereto as Exhibit B, and respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 2014 and 2016 and Local Rule 2014-1.

### Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.    Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").   The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.    On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.    On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the

---

[2]    The Canadian Debtors include the following entities:   NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]    The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended to November 28, 2009. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA, although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France. On October 1, 2009, pursuant to a motion filed by the Joint Administrators, the French Court approved an order to: (i) suspend the liquidation operations relating to the sale of the assets and/or businesses of NNSA for a renewable period of two months; (ii) authorize the continuation of the business of NNSA so long as the liquidation operations are suspended; and (iii) maintain the powers of the French Administrator and Liquidator during the suspension period, except with respect to the sale of assets and/or businesses of NNSA. On March 25, 2010, the French Court ended the suspension of the liquidation operations. On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141,

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

> 10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

## B.  Debtors' Corporate Structure and Business

> 11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Nortel's technologies spanned access and core networks and support multimedia and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

> 12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John

Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

## C. Case Milestones

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and it would assess other restructuring alternatives for its businesses in the event it is unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.    On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

## Relief Requested

15.     By this Application, the Debtors seek entry of an order, pursuant to

sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016 and Local

Rule 2014-1, (i) authorizing the employment and retention of RLKS as consultant to the Debtors

*nunc pro tunc* to the Effective Date; (ii) approving the terms and conditions as contained in that

certain Engagement Letter dated as of July 27, 2010 (the "Agreement"), between RLKS and NNI

and its United States debtor affiliates, attached hereto as Exhibit C, pursuant to which RLKS will

be retained and compensated by the Debtors; and (iii) granting the Debtors such other and further

relief as the Court deems just and proper.

## Basis for Relief

16.     Under section 327(a) of the Bankruptcy Code, a debtor-in-possession may

employ one or more professionals that do not hold or represent an interest adverse to the estate,

and that are disinterested persons, to assist the debtor-in-possession in carrying out its duties

under the Bankruptcy Code.  11 U.S.C. § 327(a).

17.     Section 328(a) of the Bankruptcy Code provides, in pertinent part, that

under section 327 of the Bankruptcy Code a professional may be employed "on any reasonable

terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed

percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

18.     Bankruptcy Rule 2014 requires that an application for retention of a

professional person include:

> [S]pecific facts showing the necessity for the employment, the
> name of the person to be employed, the reasons for the selection,
> the professional services to be rendered, any proposed arrangement
> for compensation, and, to the best of the applicant's knowledge, all
> of the person's connections with the debtor, creditors, any other
> party in interest, their respective attorneys and accountants, the

7

United States trustee, or any person employed in the office of the
United States trustee.

Fed. R. Bankr. P. 2014(a).  Local Bankruptcy Rule 2014-1 further requires that "[a]ny entity seeking approval of employment of a professional person pursuant to 11 U.S.C. § 327 . . . shall file with the Court a motion, a supporting affidavit or verified statement of the professional person and a proposed order for approval." Del. Bankr. L.R. 2014-1(a).

19.     By this application, the Debtors request that the Court approve the employment and compensation arrangement described in the Agreement.  The employment arrangement contained in the Agreement is beneficial to the Debtors' estates and the compensation arrangements provide certainty and proper inducement for RLKS to act expeditiously and prudently with respect to the matters for which it will be employed.

20.     The Debtors also request approval of the employment of RLKS *nunc pro tunc* to July 9, 2010, the effective date of the Agreement.  The Third Circuit has identified "time pressure to begin service" and absence of prejudice as factors favoring *nunc pro tunc* retention. See In re Arkansas Co., 798 F.2d 645, 650 (3d Cir. 1986); see also In re Indian River Homes, Inc., 108 B.R. 46, 52 (D. Del. 1989), appeal dismissed, 909 F.2d 1476 (3d Cir. 1990).  The complexity and intense activity that have characterized these cases have necessitated that the Debtors and their professionals focus their immediate attention on certain matters, and promptly devote resources to the affairs of the Debtors pending submission and approval of this Application.

8

## Scope of Services

21.     Pursuant to the Agreement,[6] RLKS will assist the Debtors with the wind down and liquidation of the Debtors' businesses and estates, including, without limitation, the preservation, organization, management and destruction of records, including records of both the Debtors' hard copy and electronic data.  RLKS will take direction from and report directly to John Ray, as the Principal Officer.

22.     It is necessary that the Debtors employ RLKS to render the foregoing professional services.  The Debtors believe that the services will not duplicate the services that other professionals are providing the Debtors in these cases.  RLKS will carry out distinct functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases in order to avoid the unnecessary duplication of services.

## Selection of RLKS

23.     The principals of RLKS are experienced and knowledgeable regarding the handling of records during bankruptcy proceedings, having previously performed similar tasks during the winding down of the Enron Corporation and related debtors.  The Debtors are highly confident in RLKS's ability to effectively and efficiently assist the Debtors with this task.

## Professional Compensation

24.     RLKS intends to apply for compensation for professional services rendered and reimbursement of reasonable expenses incurred in connection with these chapter 11 cases, subject to the Court's approval, and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures

---

[6]     The summary of the Agreement is solely for the benefit of the Court and parties in interest.  To the extent this summary is inconsistent with the Agreement, the terms of the Agreement are controlling.  Capitalized terms used but not defined in this Application shall have the meanings ascribed to them in the Agreement.

and orders of the Court and consistent with the proposed compensation set forth in the Agreement.

25.    The Agreement provides that the Debtors are obligated to pay to RLKS a retainer in the amount of $15,000, which became payable upon the approval of the Agreement. RLKS will charge the Debtors $450 per hour for services rendered by Richard A. Lydecker, Jr. and Kathryn Schultea.    Such fees are payable monthly, in accordance with the interim compensation procedures established in these chapter 11 cases.  In addition to any fees payable to RLKS, the Debtors shall reimburse RLKS for reasonable expenses incurred on behalf of the Debtors, including, without limitation, airfare, meals, hotel accommodations, telephone, research, duplicating, and printing expenses.

26.    The fees sought are reasonable and comparable to that generally charged by RLKS for similar engagements, both in and out of court.  The Debtors believe the fees are in fact reasonable, market based, and designed to compensate RLKS fairly for the work and to cover fixed and routine expenses.

27.    RLKS will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. RLKS requests that it not be required to file time records in strict accordance with Local Rule 2016-2(d)(iv) the United States Trustee Guidelines.    Instead, RLKS requests authority to maintain records in increments of one hour, rather than in one-tenth of an hour increments. RLKS will include reasonably detailed descriptions of services rendered for the Debtors, the approximate time expended in providing those services, and the individuals who provided those services, and will present such records to the Court.

### RLKS's Disinterestedness

28.     To the best of the Debtors' knowledge, information, and belief, and based upon reliance upon RLKS's review of its electronic database and the Lydecker Affidavit, (i) RLKS is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code and referenced by section 328(c) of the Bankruptcy Code, and (ii) RLKS holds no interest materially adverse to the Debtors, their creditors and shareholders for the matters to which RLKS is to be employed. As disclosed in the Lydecker Affidavit, Lydecker and John Ray, who has been retained in these chapter 11 cases as the Debtors' Principal Officer, have previously worked together on matters unrelated to these chapter 11 cases.

### Waiver of Bankruptcy Rule 6004(h)

29.     To implement the Application successfully, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Rule 6004(h) of the Bankruptcy Rules.

### Notice

30.     Notice of the Application has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

31.     No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (i) grant this Application and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated: July 27, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley *(admitted pro hac vice)*
Lisa M. Schweitzer *(admitted pro hac vice)*
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

          - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
 and Debtors-in-Possession*