# EXHIBIT C

**Engagement Letter**

July 27, 2010

John J. Ray, III
Principal Officer
Nortel Networks Inc.
c/o Avidity Partners LLC
18 West 140 Butterfield Road
15th Floor
Oakbrook Terrace, IL 60181

Dear Mr. Ray:

This letter of engagement confirms the understanding and agreement (the "Engagement") between RLKS Executive Solutions LLC]. ("RLKS") and Nortel Networks Inc. ("NNI") regarding the scope of consulting services to be provided by RLKS to NNI and its U.S. debtor affiliates (together with NNI, the "U.S. Debtors"), in connection with the proceedings (the "Bankruptcy Cases) before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and the winding down of the businesses of the U.S. Debtors. In their role as consultants, RLKS will provide certain Services (as defined herein) to the U.S. Debtors as set forth below. The Engagement and the related Terms and Conditions together constitute the engagement contract (the "Engagement Contract") pursuant to which the Services will be provided. This Engagement Contract will be effective as of the date of execution hereof ("the Effective Date") and the subsequent retention of RLKS is subject to the approval of the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") having jurisdiction over the Debtors' chapter 11 cases.

## Scope of Services

RLKS will assist management of the Nortel U.S. Chapter 11 debtors with the wind down and liquidation of the Debtors' businesses and estates, including without limitation, the preservation, organization and management of records, including hard copy and electronic data in connection with the reorganization of the U.S. Debtors and such other related functions as assigned by the Principal Officer (all of the foregoing collectively, the "Services"). For purposes of this engagement, and as regards the scope of its retention, RLKS will take direction from and report its views and conclusions only to the Principal Officer and others designated by the Principal Officer.

RLKS is prepared to act as consultant for the U.S. Debtors in connection with the proceedings before the Bankruptcy Court and the winding down of the businesses during this assignment on an exclusive basis. Therefore, during the term of this Agreement, RLKS will not propose or undertake for any third party any project, which is associated with the chapter 11 cases of the Debtors. This exclusivity shall remain in

effect until canceled with written notice by NNI or until the termination of this Engagement Contract. During the exclusivity period, RLKS shall be entitled to the remuneration set forth herein.

### Fees

In consideration for all Services performed by RLKS, RLKS will charge NNI $450 per hour for fees billed by Richard A. Lydecker, Jr. or Kathryn Schultea (the "Fees"). Such Fees shall be payable monthly, subject to Bankruptcy Court approval of fee applications filed by RLKS in accordance with the interim compensation procedures order approved by the Bankruptcy Court in the U.S. Debtors' chapter 11 cases (the "ICP Order"). Annual increases in the hourly rate shall not exceed 5%. Concurrently with the execution of this Execution Contract, NNI shall pay to RLKS a retainer in the amount of $15,000.

In addition to the Fees, RLKS shall bill NNI for reasonable expenses incurred by RLKS on behalf of the U.S. Debtors during this Engagement Contract, including, but not limited to airfare, meals, hotel accommodations, telephone, research, duplicating and printing for Mr. Lydecker and Ms. Schultea.

RLKS will submit to the Bankruptcy Court monthly fee applications for interim and final allowance of compensation, including reimbursement of expenses, pursuant to sections 330 and 331 of the United States Bankruptcy Code ("Bankruptcy Code"). Notwithstanding anything to the contrary in this Engagement Contract, all payments to RLKS, whether for the Fees or reimbursement of expenses shall be paid by NNI, which shall be exclusively responsible for all financial obligations related to this Engagement Contract, subject to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "Local Rules") or applicable orders of the Bankruptcy Court.

The Debtors shall promptly apply to the Bankruptcy Court for an order approving NNI's retention of RLKS pursuant to the terms of this Engagement Contract under section 327 of the Bankruptcy Code, *nunc pro tunc* to the Effective Date. RLKS acknowledges that in the event that the Bankruptcy Court approves its retention by NNI, RLKS's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court and any applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules or applicable orders of the Bankruptcy Court.

### Terms and Conditions

The attached Terms and Conditions, which are incorporated by reference herein, set forth the duties of each party with respect to the Services. Further, this Engagement letter and the Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any

conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

The parties intend that RLKS shall render the Services hereunder as an independent contractor, and nothing in this Engagement Contract shall be construed to be inconsistent with this relationship or status. No member, manager, employee or representative of RLKS shall be entitled to any benefits paid by the U.S. Debtors to their employees. RLKS shall be solely responsible for any tax consequences applicable to RLKS's by reason of this Engagement Contract and the relationship established hereunder, and the U.S. Debtors shall not be responsible for the payment of any federal, state or local taxes or contributions imposed under any employment insurance, social security, income tax or other tax law or regulation with respect to RLKS's performance of services hereunder. The parties agree that, subject to the terms and provisions of this Engagement Contract, RLKS and its employees and agents may perform any duties hereunder and set their own work schedule without day-to-day supervision by the US Debtors, but subject always to direction of the Principal Officer of NNI.

RLKS has performed an internal search for potential conflicts which has not revealed any such conflicts with its retention hereunder. Should any potential conflict pertaining to RLKS come to the attention of any party hereto, such party shall advise the other party as promptly as possible.

[balance of page intentionally blank]

## Acknowledgement and Acceptance

If the foregoing correctly sets forth the understanding between us, please acknowledge acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Terms and Conditions and returning a copy of each to us at the address below, whereupon this Engagement Contract shall constitute a binding agreement between us.

Very truly yours,

RLKS Executive Solutions LLC

By:_Richard A. Lydecker, Jr. _R.A. Lydecker_
Chief Executive Officer
RLKS Executive Solutions LLC
101 Westcott #706
Houston, TX 77007-7031
Date: July 27, 2010
Richard A. Lydecker, Jr.

---

Date: July __, 2010

Kathryn Schultea
_Kathryn Schultea_
Date: July 27 2010

**Confirmation of Terms of Engagement**

**Subject to the approval of the Bankruptcy Court, Nortel Networks Inc., agrees to engage RLKS upon the terms set forth herein and in the attached Terms and Conditions, as of the date first written above. Nortel Networks Inc.**

By:_____                                Date: July ___, 2010
  John J. Ray, III
  **Principal Officer**

3662366.2

## Acknowledgement and Acceptance

If the foregoing correctly sets forth the understanding between us, please acknowledge acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Terms and Conditions and returning a copy of each to us at the address below, whereupon this Engagement Contract shall constitute a binding agreement between us.

Very truly yours,

RLKS Executive Solutions LLC

By:_Richard A. Lydecker, Jr.
Chief Executive Officer
RLKS Executive Solutions LLC
101 Westcott #706
Houston, TX 77007-7031
Date: July ___, 2010

Richard A. Lydecker, Jr.

_____

Date: July __, 2010

Kathryn Schultea

_____

Date: July 28, 2010

**Confirmation of Terms of Engagement**

**Subject to the approval of the Bankruptcy Court, Nortel Networks Inc., agrees to engage RLKS upon the terms set forth herein and in the attached Terms and Conditions, as of the date first written above.Nortel Networks Inc.**

By:_____                                        Date: July 28, 2010
    John J. Ray, III
    Principal Officer

3662366.2

## TERMS AND CONDITIONS

The following are the Terms and Conditions on which RLKS Executive Solutions LLC ("RLKS") will provide the Services to the U.S. Debtors set forth within the attached letter of engagement. The Engagement letter and the Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between RLKS and NNI relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1. **Definitions.** For purposes of the Engagement Contract, the following terms have the following definitions:

    a) **Associate.** The term "Associate" shall mean Richard Lydecker and/or Kathryn Schultea (as appropriate), each of whom may, from time to time, be assigned to provide Client Services, under this Engagement Contract.

    b) **Client Services.** The term "Client Services" shall mean the specific tasks assigned by NNI to one or more Associates. Associates shall be engaged to perform Client Services on an assignment-by-assignment basis. The particular Client Services to be performed on each assignment will be specified by NNI and communicated to Associates by NNI. NNI is free to select Associates, or not, for any assignment; and Associates are free to accept any assignment, or not.

    c) **Parties**. The term "Parties" shall mean both parties to the Engagement Contract, NNI and RLKS, Richard A. Lydecker, Jr. and Kathryn Schultea collectively.

2. **Indemnification**

RLKS agrees to defend, indemnify and hold harmless NNI, NNI's officers, directors, employees and agents from and against any claims, liabilities or expenses for payroll tax matters arising out of Client Services performed under this Engagement Contract; provided that NNI shall promptly notify RLKS of any such claim when and as it comes to NNI's attention, cooperate with RLKS in the defense and resolution of such claim and not settle or otherwise dispose of such claim without RLKS's prior written consent, which consent not to be unreasonably withheld. NNI agrees to indemnify and hold RLKS and its members, managers, directors, officers and employees (collectively, the "RLKS Indemnified Parties") harmless against any claims, liabilities or expenses made against them except for any such claims, Liabilities or expenses caused by the gross negligence or willful or intentional conduct of the RLKS Indemnified Parties; provided that RLKS shall promptly notify NNI of any such claim when and as it comes to RLKS's attention, cooperate with NNI in the defense and resolution of such claim

and not settle or otherwise dispose of such claim without NNI's prior written consent, which consent not to be unreasonably withheld.

3.   **Modification**

In the event of a conflict between the provisions of this Engagement Contract and the specific provisions set forth in any executed Addendum associated with this Engagement Contract, the provisions of the applicable Addendum shall control. Any Addendum must be in writing and signed by authorized representatives of both NNI and RLKS.

4.   **Performance**

The Parties agree that timely performance of the Client Services by RLKS is essential to this Engagement Contract. RLKS's time of performance shall be enlarged, if and to the extent reasonably necessary, in the event that: (a) NNI fails to submit data in the prescribed form or as required by this Engagement Contract and any exhibits hereto, or as required by any Addendum which may become associated or part of this Engagement Contract or (b) special written requests by NNI or any governmental agency or other regulatory authority authorized to regulate or supervise NNI which materially impact RLKS's performance of the Client Services.

NNI shall have access to and the right to examine any pertinent books, documents, papers, and records including payroll records of current or formerly assigned Associates, confidentiality agreements, completed I-9 forms, completed Form W-4, and any other records of RLKS involving transactions related to this Engagement Contract until the expiration of three (3) years after final payment hereunder, or for so long as required by law, whichever is longer, at all reasonable times, upon reasonable prior request.

NNI shall select and monitor all Associates in the performance of Client Services under this Engagement Contract.

5.   **Term and Termination**

The term of this Engagement Contract shall commence on the Effective Date and continue for the duration of the Bankruptcy Cases unless otherwise terminated in accordance with this Engagement Contract. .

Except as otherwise expressly provided herein, this Engagement Contract will automatically expire under the happening of any of the following events, whichever shall first occur:

a.   Immediately upon written notice of cancellation from either Party to the other.
b.   Mutual written consent of both Parties to cancel this Engagement Contract.

c.  Either Party may terminate this Engagement Contract immediately upon written notice if the other Party becomes legally disqualified to perform, unless such disqualification can be remedied without a disruption in the performance of this Engagement Contract.

Upon termination, RLKS and the Associates will stop work on Client Services in an orderly manner as soon as practical as agreed by NNI. NNI shall pay RLKS for all Client Services delivered through the date of termination.

6.  **Confidential Information**

The Parties agree that any confidential information received from the other party shall only be used for the purposes of providing or receiving Services under this or any other contract between us. Except as provided below, neither party will disclose the other party's confidential information to any third party without the other party's written consent. Confidential information shall not include information that is or becomes generally available to the public other; or is acquired from a third party who, to the recipient party's knowledge (after reasonable inquiry), owes no obligation of confidence in respect of the information; or is or has been independently developed by the recipient.

Notwithstanding the above, either party will be entitled to disclose confidential information of the other to a third party to the extent that such third party is subject to a confidentiality agreement (or such other acceptable arrangement) with NNI to protect confidential information, or such disclosure is required by valid legal process, provided that (and without breaching any legal or regulatory requirement) where reasonably practicable not less than 2 business days' notice in writing is first given to the other party.

RLKS shall have all Associates execute agreements between the Associates and NNI, prepared by NNI, pursuant to which the Associates will agree not to disclose NNI's confidential information, and/or pursuant to which Associates shall assign certain intellectual property ownership rights to NNI.

7.  **Payment and Billing**

Invoices shall be rendered no less frequently than monthly by RLKS and payable by NNI for Client Services based on the terms hereof, subject to the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of Bankruptcy Practice and Procedure of the Bankruptcy Court (the "Local Rules") or applicable orders of the Bankruptcy Court.

8.  **Personnel**

A. **Independent Contractor.** It is understood that in connection herewith, RLKS shall be acting as an independent contractor. Neither Party shall commit, nor be authorized to commit or bind, the other Party in any manner.

B. **Compensation of Personnel.** RLKS shall bear sole responsibility for payment of compensation and expenses to Associates.

## 9. Limitation of Liability

**IN NO EVENT SHALL ANY PARTY BE LIABLE TO THE OTHER PARTY FOR ANY SPECIAL, CONSEQUENTIAL, INDIRECT, INCIDENTAL OR PUNITIVE DAMAGES, OR LOST PROFITS OR REVENUE OR COST OF CAPITAL.**

## 10. Force Majeure

Neither Party shall be liable for any failure or inability to perform their respective obligations hereunder due to any cause beyond the reasonable control of the non-performing Party, including without limitation, acts of God, regulations of laws of any government, acts of war or terrorism, acts of civil or military authority, fires, floods, accidents, epidemics, quarantine restrictions, unusually severe weather, explosions, earthquakes, strikes, labor disputes, loss or interruption of electrical power or other public utility, or delays in transportation, or any similar or dissimilar cause beyond its reasonable control.

## 11. Further Assurances

Except as expressly provided otherwise in this Engagement Contract, if either Party requires the consent or approval of the other Party to take any action under this Engagement Contract, such consent or approval shall not be unreasonably withheld or delayed.

## 12. Taxes

RLKS shall be solely responsible for all applicable sales, use or excise taxes, however designated, levied or based, on amounts payable pursuant to this Engagement Contract. NNI shall not be responsible for any taxes levied on the personal property or net income of RLKS or its RLKS associates.

## 13. Assignment

This Engagement Contract shall be binding upon and shall inure to the benefit of each Party and its respective successors and assigns. Neither Party shall sell, assign, or subcontract any right or obligation hereunder without the prior written consent of the other and such consent shall not be unreasonably withheld.

14. **Notices**

Any notices required or permitted hereunder shall be deemed given if contained in a written instrument delivered in person, or by facsimile, overnight courier, or first class registered or certified mail, postage prepaid, addressed to such Party at the address or applicable fax number set forth below, or at such other address as may hereafter be designated in writing by the addressee to the addresser:

In the case of NNI:

John J. Ray, III
Principal Officer
Nortel Networks Inc.
c/o Avidity Partners LLC
18 West 140 Butterfield Road
15th Floor
Oakbrook Terrace, IL 60181
jray@aviditypartners.com


In the case of the RLKS, Richard Lydecker or Kathryn Schultea (as applicable):

| | |
|---|---|
| Richard A. Lydecker, Jr. | Kathryn Schultea |
| 101 Westcott #706 | 4630 Sawmill Lane |
| Houston, TX 77007 | Pasadena, TX 77505 |
| 713-865-2624 | 713-824-2905 |
| rlydecker@rlks.net | kschultea@rlks.net |


All notices given to any party hereto in accordance with the provisions of this Engagement Contract shall be deemed to have been given on the date of delivery if personally delivered, on the date when sent if sent by facsimile, on the business day after the date when sent if sent by overnight courier, and on the fifth business day after the date when sent, if sent by mail, in each case addressed to the Party as provided herein or in accordance with the latest unrevoked direction from such Party.

15. **Severability**

If any of the provisions of this Engagement Contract are held to be invalid or unenforceable, the validity, legality and enforceability of the remaining provisions of this Engagement Contract shall not in any way be affected or impaired thereby.

16. **Section Titles and Construction**

Section titles as to the subject matter of particular sections herein are for convenience only and are in no way to be construed as part of this Engagement Contract or as a limitation of the scope of the particular sections to which they refer.

Each party to this Engagement Contract has participated in the negotiation and drafting of this Engagement Contract. As such, the language used herein shall be deemed to be the language chosen by the parties hereto to express their mutual intent, and no rule of strict construction will be applied against any party to this Engagement Contract.

## 17.    Limitations Period

No action or claim under this Engagement Contract, unless involving death or personal injury, may be brought by either Party against the other more than one (1) year after the cause of action arises.

## 18.    No Waiver of Default

The failure of either party to exercise or enforce any right hereunder shall not constitute a waiver of that right with respect to any subsequent default.

## 19.    Governing Law and Dispute Resolution

This Engagement Contract shall be construed and enforced in accordance with the laws of the State of Delaware, without giving effect to its conflict of law principles. Any disputes as to any matter arising out of or relating to this Engagement Contract or performance under this Engagement Contract shall be resolved amicably, if possible. The aggrieved Party shall notify the other Party in writing of the existence of such a dispute and request a review by a panel consisting of one Executive from each Party. The panel shall attempt to resolve the dispute within thirty (30) days after the receipt of the notification. If the Parties are unable to resolve the dispute within such thirty-day period, the parties agree to the jurisdiction of the Bankruptcy Court to hear and resolve any dispute under this Engagement Contract. If the Bankruptcy Court declines or otherwise does not exercise jurisdiction over any such dispute, then the parties agree that any such dispute shall be heard and resolved in a state or federal court of competent jurisdiction located in Delaware.

Each Party shall bear its own costs and attorney's fees. Pending the resolution of any dispute, the Parties shall continue in good faith their obligations and performance in accordance with this Engagement Contract.

## 20.    Survival

The provisions of this Engagement Contract, which by their nature extend beyond the expiration or early termination of this Engagement Contract will survive and remain in effect until all obligations are satisfied.

### 21. Trademarks and Publicity

All trademarks, service marks and trade names, including logos, identifying NNI and its services ("Marks") are the exclusive property of NNI. RLKS shall take no action that jeopardizes or diminishes the value of NNI's Marks. RLKS shall not use NNI's Marks, name, or identifying description in any manner, including but not limited to: publication, broadcast, advertisement, promotions or other public or private document or any other type of announcement without NNI's prior written consent. Any news release, public announcement, advertisement, or publicity proposed to be released by RLKS concerning this Engagement Contract will be subject to the written approval of NNI prior to its release. NNI agrees that it will not release any publicity item which names RLKS or refers to the services furnished by it under this Engagement Contract unless NNI has received the written approval of RLKS prior to the release.

### 22. Entire Agreement

The Engagement letter and this Terms and Conditions sets forth the entire understanding of the Parties, and, unless otherwise provided for herein, may not be modified except in writing signed by the Parties.