**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| *In re:* | Chapter 11 |
|  | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*,[1] | Jointly Administered |
|  |  |
| Debtors. | Objection Deadline: August 31, 2010 at 4:00 pm (ET) |
|  | Hearing Date: Scheduled only if necessary |

**SEVENTEENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP
CANADIAN COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM
ALLOWANCE OF COMPENSATION AND FOR
REIMBURSEMENT OF EXPENSES FOR SERVICES
RENDERED DURING THE PERIOD FROM
JUNE 1 TO JUNE 30, 2010
(All Amounts in Canadian Dollars)**

This is a(n): x monthly _____ interim _____ final application.

| | |
|---|---|
| Name of Applicant: | Fraser Milner Casgrain LLP |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 (nunc pro tunc to January 26, 2009) |
| Period for which Compensation And Reimbursement is sought: | June 1 to June 30, 2010 |
| Amount of Compensation sought as actual, reasonable and necessary: | CDN $271,313.70 (Fees $258,394.00 Plus Taxes $12,919.70) Equivalent to USD $263,906.84[2] |
| Amount of Expense Reimbursement sought as actual, reasonable and necessary | CDN $7,793.33 (Expenses $7,422.22 Plus Taxes $371.11) Equivalent to USD $7,580.57[2] |

The total time expended during this Compensation Period for the preparation of Fraser Milner Casgrain's Sixteenth Monthly Fee Application was 2.0 hours and the corresponding compensation is CDN. $1,575.00 (including applicable Canadian taxes).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

[2] Reuters Exchange Rate as of close of business on August 9, 2010 was CDN. $0.9727 : U.S. $1.00.

### SUMMARY OF LAWYERS AND PARALEGALS
### RENDERING SERVICES DURING THE PERIOD
### JUNE 1, 2010 THROUGH JUNE 30, 2010
### (All Amounts in Canadian Dollars)

| Name | Title | Department | Province of Bar Admission/Year | Hours | Rate | Billed Value |
|------|-------|-----------|-------------------------------|-------|------|--------------|
| Kukulowicz, R.S. | Partner | Financial Restructuring | Ontario - 1990 | 4.6 | $785.00 | $3,611.00 |
| Picard, M.M. | Partner | Pensions/Benefits | Ontario - 1985 | 6.8 | $775.00 | $5,270.00 |
| MacFarlane, A.L. | Partner | Financial Restructuring | Ontario - 1988 | 73.5 | $750.00 | $55,125.00 |
| Wunder, M.J. | Partner | Financial Restructuring | Ontario - 1990 | 114.1 | $750.00 | $85,575.00 |
| Kaplan, M.N. | Partner | Corporate/M&A/Finance | Ontario - 1982 | 3.3 | $675.00 | $2,227.50 |
| Beairsto, M.G. | Partner | Information Technology/ Intellectual Property | Ontario - 1989 | 1.1 | $600.00 | $660.00 |
| Banks, T. | Partner | Employment/Pension/ Research | Ontario - 2002 | 11.7 | $520.00 | $6,084.00 |
| Riel, W. | Partner | Intellectual Property | Ontario - 1997 | 1.0 | $400.00 | $400.00 |
| Dunsmuir, M.J. | Associate | Pensions/Benefits | Ontario - 2006 | 15.3 | $375.00 | $5,737.50 |
| Hétu, J. | Associate | Financial Restructuring | Ontario - 2009 | 37.7 | $310.00 | $11,687.00 |
| Pushalik, A. | Associate | Employment/Labour | Ontario - 2009 | 12.8 | $320.00 | $4,096.00 |
| Shay, R. | Partner | Corporate | Ontario - 1979 | 2.8 | $800.00 | $2,240.00 |
| Jacobs, R.C. | Consultant | Financial Restructuring | | 128.8 | $600.00 | $77,280.00 |
| Peters, Matthew | Partner | Taxation | Ontario - 2002 | 9.6 | $560.00 | $5,376.00 |
| | | | | | | |
| TOTAL | | | | 423.1 | CDN. | $265,369.00 |
| | Less Non-Working Travel Time Discount (50% of $13,950.00) | | | | | ($6,975.00) |
| TOTAL | | | | 423.1 | CDN. | $258,394.00 |

## COMPENSATION BY PROJECT CATEGORY
### JUNE 1, TO JUNE 30, 2010
### (All Amounts in Canadian Dollars)

| Project Category | Hours | Value |
|---|---|---|
| General Case Administration | 7.8 | $5,029.00 |
| FMC Fee Application/Monthly Billing Reports | 3.8 | $2,850.00 |
| Analysis of Other Professionals Fee Applications/Rep | 0.4 | $240.00 |
| Creditors Committee Meetings | 31.9 | $19,581.00 |
| Court Hearings | 32.4 | $22,830.00 |
| Financial Reports and Analysis | 5 | $1,550.00 |
| General Claims Analysis/Claims Objections | 69.3 | $43,588.00 |
| CCAA Order/Court-Ordered Charges/Canadian Analysis | 1.3 | $825.00 |
| Tax Issues | 19.9 | $10,071.00 |
| Labour Issues/Employee Benefits | 26.4 | $14,226.00 |
| Real Estate Issues/Leases | 0.2 | $62.00 |
| Plan, Disclosure Statement and Plan Related Document | 26.9 | $16,111.00 |
| Telecommunications/Regulatory | 17.8 | $12,055.00 |
| Asset/Stock Transaction/Business Liquidations | 17.9 | $11,309.50 |
| Travel | 21.2 | $13,950.00 |
| Intercompany Analysis | 51.3 | $35,419.00 |
| Canadian Proceedings/Matters | 82.8 | $51,052.50 |
| U.S. Proceedings/Matters | 6.8 | $4,620.00 |
| **Total** | **423.1** | **$265,369.00** |

## DISBURSEMENT SUMMARY
## JUNE 1 TO JUNE 30, 2010
## (All Amounts in Canadian Dollars)

Taxable Disbursements

| | |
|---|---|
| Accommodations | $2,338.51 |
| Airfare/Travel | $1,559.68 |
| Binding Books / Documents | $    12.20 |
| Cellular Phones | $  449.61 |
| Library Computer Research | $  155.03 |
| Long Distance Telephone Calls | $  668.68 |
| Meals & Beverages | $  298.54 |
| Photocopy Charges | $1,275.00 |
| Process Server Fees | $    80.00 |
| Ground Transportation (including Taxi) | $  584.97 |
| | |
| Total Taxable Disbursements | $7,422.22 |
| Total GST | 371.11 |
| Total Taxable Disbursements including Taxes | $7,793.33 CDN. |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
:
In re                                              : Chapter 11
                                                   : Case No. 09-10138 (KG)
Nortel Networks Inc., et al., [1]                  : Jointly Administered
                                                   :
                          Debtors                  : **Objection Deadline:** August 31, 2010 at 4:00 pm (ET)
                                                   : **Hearing Date:** Scheduled only if necessary
-------------------------------------------------------X

### SEVENTEENTH MONTHLY APPLICATION OF FRASER MILNER CASGRAIN LLP, CANADIAN COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JUNE 1, 2010 THROUGH JUNE 30, 2010

Fraser Milner Casgrain LLP ("FMC" or the "Applicant"), Canadian counsel to the

Official Committee of Unsecured Creditors (the "Committee") of Nortel Networks Inc., et al.

(the "Debtors"), hereby submits its sixteenth monthly application (the "Application") pursuant to

(i) sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Rule 2016-2

of the Local Rules of Bankruptcy Procedure for the District of Delaware (the "Local Rules"), and

(iv) the Administrative Order Pursuant to 11 U.S.C. §§ 105(a) and 331, Fed. R. Bankr. P. 2016

and Del. Bankr. L.R. 2016-2 Establishing Procedures for Interim Compensation and

Reimbursement of Fees and Expenses for Professionals and Official Committee Members

entered on February 4, 2009 (the "Administrative Fee Order"), for interim allowance of

compensation for services rendered in the aggregate amount of CDN. $271,313.70 (CDN.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); and Nortel Networks Cable Solutions Inc. (0567).

$258,394.00 for fees and CDN. $12,919.70 for applicable Canadian taxes) and for reimbursement of actual and necessary expenses incurred by FMC in connection therewith in the amount of CDN. $7,793.33 (CDN. $7,422.22 for expenses and CDN. $371.11 for applicable Canadian taxes) for the period from June 1 through June 30, 2010 (the "Compensation Period"). In support of this Application, FMC respectfully states as follows:

## I.  JURISDICTION AND VENUE

1.     This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## II.  BACKGROUND

2.     On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.     The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.     On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors" and together with the Debtors, the "Nortel Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA"). The Canadian Debtors continue to

operate their businesses and manage their properties under the supervision of the Canadian Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC (the "Administrator").

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee. The Committee currently consists of five members, as follows: (i) Flextronics Corporation (Chairperson); (ii) Airvana, Inc.; (iii) Law Debenture Trust Company of New York, as indenture trustee; (iv) Pension Benefit Guaranty Corporation; and (v) The Bank of New York Mellon, as indenture trustee. No trustee or examiner has been appointed in these chapter 11 cases.

7.      On March 5, 2009, this Court entered an order authorizing the retention of FMC as Canadian counsel to the Committee, *nunc pro tunc* to January 26, 2009. On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer & Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Capstone Advisory Group, LLC ("Capstone") as the Committee's financial advisor, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

8.      On June 10, 2009, FMC filed its First Interim Fee Application Request for the period January 26, 2009 through April 30, 2009 (the "First Interim Application"). In its First

Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,321,010.79 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $18,604.14 (including applicable taxes). On July 17, 2009, this Court entered an order

approving 100% of the fees and expenses sought in the First Interim Application, and FMC has

received payment of such amounts.

        9.     On September 10, 2009, FMC filed its Second Interim Fee Application Request

for the period May 1, 2009 through July 31, 2009 (the "Second Interim Application"). In its

Second Interim Application, FMC sought the award and allowance of fees in the amount of

CDN. $1,335,961.21 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN. $21,483.56 (including applicable taxes). On September 30, 2009, this Court

entered an order approving 100% of the fees and expenses sought in the Second Interim

Application, and FMC has received payment of such amounts.

        10.    On November 25, 2009, FMC filed its Third Interim Fee Application for the

period from August 1, 2009 through October 31, 2009 (the "Third Interim Application"). In its

Third Interim Application, FMC sought the award and allowance of fees in the amount of CDN.

$1,252,173.56 (including applicable taxes) and the reimbursement of expenses in the amount of

CDN. $29,664.94 (including applicable taxes). On December 15, 2009, this Court entered an

order approving 100% of the fees and expenses sought in the Third Interim Application, and

FMC has received payment of such amounts.

        11.    On February 24, 2010, FMC filed its Fourth Interim Fee Application for the

period from November 1, 2009 through January 31, 2010 (the "Fourth Interim Application"). In

its Fourth Interim Application, FMC sought the award and allowance of its fees in the amount of

CDN.$1,222,600.68 (including applicable taxes) and the reimbursement of expenses in the

amount of CDN.$24,078.44 (including applicable taxes). On March 17, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fourth Interim Application, and FMC has received payment of such amounts.

12.     On June 1, 2010, FMC filed its Fifth Interim Application Request for the fee period from February 1, 2010 through April 30, 2010 (the "Fifth Interim Application"). In its Fifth Interim Application, FMC sought the award and allowance of fees in the amount of CDN.$1,545,435,79 (including applicable taxes) and the reimbursement of expenses in the amount of CDN.$30,093.86 (including applicable taxes). On June 24, 2010, this Court entered an order approving 100% of the fees and expenses sought in the Fifth Interim Application.

13.     On July 22, 2010, FMC filed its Sixteenth Monthly Application for Interim Allowance of Compensation and Reimbursement of Expenses for Services Rendered During the Period May 1, 2010 through May 31, 2010 (the "Sixteenth Monthly Application"). In its Sixteenth Monthly Application, FMC sought the award and allowance of fees in the amount of CDN.$245,707.88 and the reimbursement of expenses in the amount of CDN.$10,831.46. As of the date of this Application, FMC has not received any payment on account of the Sixteenth Monthly Application.

### III.     RELIEF REQUESTED

14.     By this Application, FMC seeks (i) interim allowance and award of compensation for the professional services rendered by FMC during the Compensation Period in the amount of CDN. $271,313.70 (CDN. $258,394.00 for fees and CDN. $12,919.70 for applicable Canadian taxes) representing 423.1 hours in professional services; and (ii) reimbursement of actual and necessary expenses incurred by FMC during the Compensation Period in connection with the rendition of such professional services in the amount of CDN. $7,793.33 (including applicable Canadian taxes).

15.     Pursuant to the Administrative Fee Order, FMC is seeking payment of 80% of its fees (CDN $217,050.96 including applicable Canadian taxes) and 100% of its expenses (CDN. $7,793.33 including applicable Canadian taxes) relating to services rendered during the Compensation Period.

16.     FMC has received no payment and no promises for payment from any source for services rendered in connection with these Insolvency Proceedings. There is no agreement or understanding between the Applicant and any other person (other than members of FMC) for the sharing of compensation to be received for the services rendered in these cases.

17.     As stated in the Affirmation of Michael J. Wunder, Esq. (the "Wunder Affirmation"), annexed hereto as Exhibit A, all of the services for which interim compensation is sought herein were rendered for or on behalf of the Committee solely in connection with these cases.

## IV.   SUMMARY OF SERVICES RENDERED

18.     FMC has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the Debtors' unsecured creditors during the Compensation Period. The variety and complexity of the issues in these Insolvency Proceedings, including the Canadian Proceeding, and the need to act or respond to issues on an expedited basis in furtherance of the Committee's needs have required the expenditure of significant time by FMC personnel from several legal disciplines.

19.     In the ordinary course of its practice, FMC maintains written records of the time expended by lawyers and paraprofessionals in the rendition of their professional services. In accordance with the provisions of the Administrative Fee Order, a compilation showing the name of the lawyer or paraprofessional, the date on which the services were performed, a description

of the services rendered, and the amount of time spent in performing the services for the Committee during the Compensation Period is annexed hereto as <u>Exhibit B</u>.

20.      In the ordinary course of its practice, FMC also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services, all of which are available for inspection. A schedule of the categories of expenses and amounts for which reimbursement is requested is annexed hereto as <u>Exhibit C</u>. A detailed summary of the expenses is attached hereto as <u>Exhibit D</u>.

21.      FMC respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and appropriate, and have directly and indirectly contributed to the effective administration of these chapter 11 cases, including the Committee's interest in the Canadian Proceeding.

22.      The following summary of services rendered during the Compensation Period is not intended to be a detailed description of the work performed, as those day-to-day services and the time expended in performing such services are fully set forth in Exhibit B. Rather, it is merely an attempt to highlight certain of those areas in which services were rendered to the Committee, as well as to identify some of the problems and issues that FMC was required to address.

## Case Administration

(Fees: CDN. $5,029.00 plus CDN. $251.45 taxes; Hours 7.80)

23.      During the Compensation Period, FMC routinely held internal meetings with the professionals assigned to this matter to ensure that FMC was representing the Committee in the most efficient matter with the least cost to these estates with respect to the Canadian Proceeding. FMC ensured that it coordinated its activities with those of Akin Gump and the other

professionals acting on behalf of the Committee, including Jefferies and Capstone, and the

Debtors' Chief Restructuring Officer, John Ray.

24.     FMC believes it was able to efficiently address all issues relating to the case

administration that have arisen during the pendency of the Canadian Proceeding and the

Recognition Proceeding.

## Canadian Proceedings

(Fees: CDN. $51,052.50 plus CDN. $2,552.63 taxes; Hours 82.80)

25.     During the Compensation Period, FMC reviewed and analyzed the amended and

restated order (the "Initial Order") granted by the Canadian Court in the Canadian Proceeding in

connection with various issues and transactions arising in the Canadian Proceeding.  FMC also

reviewed and analyzed successive motions filed by the Canadian Debtors and the Monitor (as

that term is defined below) in the Canadian Proceeding.  In connection therewith, FMC, carefully

analyzed the relief requested in the proposed order, participated in conference calls and in-person

meetings with the Monitor (as that term is defined below), Nortel Debtors' Canadian counsel, as

well as other major stakeholders, to discuss the issues associated therewith.  In connection with

such analyses, FMC conducted diligence on the subject matter of each motion in order to

determine the effect that the relief requested by the Canadian Debtors in Canadian Proceeding

would have on the Debtors, the interests of the Debtors' unsecured creditors and the

administration of the Debtors' cases.  In connection therewith FMC, along with Akin Gump,

participated in numerous conference calls with the Debtors' professionals and the Monitor (as

that term is defined below) and its professionals, to discuss the relief requested in the Canadian

Proceeding.  FMC, with the assistance of Akin Gump, ensured that the Committee had a

complete understanding of the Canadian Proceeding and was apprised of all material

developments in the Canadian Proceeding through regular conference calls with the Committee and, as appropriate, detailed memoranda.

26.    During the Compensation Period, Ernst & Young Inc., in its capacity as Monitor of the Canadian Debtors (the "Monitor") filed reports with the Canadian court with updates on the progress of the Canadian Debtors reorganization efforts and/or the Monitor's recommendations with respect to relief requested by the Canadian Debtors.  FMC reviewed each of these reports, discussed the reports with Akin Gump, the Committee's financial professionals as well as the professionals for the Canadian Debtors.

## FMC Fee Application/Monthly Billing Rates

(Fees: CDN. $2,850.00 plus CDN. $142.50 taxes; Hours 3.80)

27.    This subject matter relates to time spent reviewing invoices and drafting monthly and interim fee statements as required under the Administrative Fee Order, including paraprofessional and attorney time to ensure that such materials do not improperly disclose highly confidential information related to the Debtors' businesses.

## Committee Meetings

(Fees: CDN. $19,581.00 plus CDN. $979.05 taxes; Hours 31.90)

28.    This subject matter relates to Committee matters, meetings and conference calls with the Committee as a whole, and with the Committee's other legal and financial advisors. FMC, together with the other Committee professionals, held four telephonic meetings with the full Committee during the Compensation Period.  In addition, during the Compensation Period, FMC had numerous telephonic conferences with Akin Gump and other Committee professionals.

29.    Prior to its meetings with the Committee, FMC reviewed each pending matter requiring the Committee's attention and all underlying documentation in connection therewith which related to the Canadian Proceeding and Recognition Proceeding.  Thereafter, FMC

discussed each of these matters with Akin Gump and the Committee's other professionals, the Committee, as well as with individual Committee members. During these discussions, FMC assisted the Committee in formulating a position with respect to various pending matters.

30. FMC, together with Akin Gump and the Committee's other professionals, also held regular telephone conferences with the Debtors' principal officer, Mr. John Ray, during which, Akin Gump, FMC and the Committee's other professionals, discussed with Mr. Ray various matters arising in these Insolvency Proceedings, and the impact of such matters on the Debtors' unsecured creditors.

31. Through meetings, telephone conferences, and correspondence, FMC has assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have arisen in the Canadian Proceeding and the Recognition Proceeding, as same relate to the Debtors, and to reach independent conclusions on the merits of specific matters.

### Court Hearings

(Fees: CDN $22,830.00 plus CDN. $1,141.50 taxes; Hours 32.40)

32. This subject matter relates to preparation for and attendance at hearings and other proceedings before the Canadian Court in respect of the Canadian Proceeding and the Recognition Proceeding. FMC lawyers appeared at hearings held before the Canadian Court during the Compensation Period where they actively represented the Committee and asserted the Committee's positions with respect to the matters being considered. FMC lawyers prepared for the Court hearings by reviewing all applicable motions and applications filed with the Canadian Court, including any responses thereto and consulted with Akin Gump, the Committee's other professionals and the Canadian Debtors' advisors in order to formulate appropriate strategies. FMC's participation at such hearings was necessary to protect the interests of the Debtors' unsecured creditors. The Canadian Court hearings during the Compensation Period included an

appeal hearing at the Ontario Court of Appeal (discussed below) regarding the order of the Canadian Court upholding the CCAA stay of proceedings against the UK Pension Regulator (as that term is defined below), a judge's conference with respect to a motion filed in Canada by the U.K. Pension Trustee (defined below), and a hearing to approve the "Relay" sale transaction.

## Asset Sales

(Fees: CDN $11,309.50 plus CDN. $565.48; Hours 17.90)

33.    FMC spent time during the Compensation Period working closely with the Nortel Debtors, Akin Gump and the Committee's other advisors and the advisors of the Nortel Debtors to evaluate strategic options with respect to the direction of the Debtors' businesses and reorganization efforts, including the divestiture of certain of the Debtors' assets. Specifically, FMC attorneys spent time during the Compensation Period working with the Nortel Debtors and their professionals, the Monitor, as well as professionals for the other major creditor constituents to evaluate and analyze divestiture. Additionally, during the Compensation Period, FMC attorneys spent time examining issues related to a dispute between the Nortel Debtors and Avaya, Inc. ("Avaya") related to certain purchase price adjustments for the sale of the enterprise solutions business. As the Court is aware, the Debtors filed a motion to compel the release of certain of the disputed purchase price amounts from escrow, which motion was objected to by Avaya on July 9, 2010 and such matter is scheduled to be heard by way of a cross-border joint hearing on September 16, 2010.

## Labor and Employee Benefits Issues

(Fees: CDN. $14,226.00 plus CDN. $711.30 taxes; Hours 26.40)

34.    This subject matter relates to services rendered by FMC in connection with the analysis of the Canadian Debtors' benefits plans and general labor matters. During the

Compensation Period, FMC lawyers spent time analyzing the pension and employee related issues raised by the various asset divestitures described herein, and where appropriate, commented on and negotiating the underlying documentation of such transactions. Further, FMC attorneys analyzed the impact of potential claims that could be asserted by the Ontario pension regulator on certain of assets being sold in the various divestiture processes.

35.    FMC attorneys spent time during the Compensation Period working with Akin Gump and the Committee's other professionals to analyze strategic alternatives with respect to the warning notice (the "Warning Notice") purportedly issued to certain of the Canadian Debtors by the U.K. Pensions Regulator, initiating administrative proceedings (the "U.K. Pension Proceedings") regarding the alleged shortfall in the funding of the Nortel Networks U.K. Pension Plan, and asserting that the issuance of a financial support direction against certain of the Canadian Debtors, among others, is reasonable. FMC attorneys also spent time analyzing and reviewing the proofs of claim and related materials filed jointly by the Nortel Networks UK Pension Trust Limited (the "U.K. Pension Trustee") and the Board of the Pension Protection Fund (the "PPF") against the Canadian Debtors (collectively, the "U.K. Pension Claims") in their respective Insolvency Proceedings. During the Compensation Period, FMC attorneys conferred with Ashurst and Akin Gump, as well as the Nortel Debtors' professionals, to evaluate potential strategies with respect to the Warning Notice and the UK Pension Claims.

36.    FMC attorneys spent considerable time preparing for an appeal hearing at the Ontario Court of Appeal in connection with an appeal made by the U.K. pension regulator (the "U.K. Regulator"), in respect of which the U.K. Regulator sought to appeal the order of the Canadian Court enforcing the automatic CCAA stay against the U.K. Regulator. FMC lawyers worked together with the Canadian lawyers for the Canadian Debtors and the Monitor by

reviewing and providing comments on their respective legal briefs filed with the Ontario Court of Appeal and FMC lawyers filed a legal brief on behalf of the Committee in connection with the appeal hearing. As previously reported in FMC's prior monthly fee application, the appeal hearing took place by way of a live hearing before the Ontario Court of Appeal on June 16, 2010 and the Ontario Court of Appeal dismissed the appeal by the U.K. Regulator such that the Canadian Court order enforcing the CCAA stay of proceedings was upheld.

### Intercompany Analysis

(Fees: CDN. $35,419.00 plus CDN. $1,770.95 taxes; Hours 51.30)

37.     As required by the terms of the Interim Funding Agreement, FMC together with Akin Gump, on behalf of the Committee, continued negotiations during the Compensation Period with professionals for the Nortel Debtors, the Monitor, the Administrator and the Ad Hoc Bondholder Group regarding the protocol for resolving disputes concerning the allocation of sale proceeds generated by the various asset sales consummated by the estates. Additionally, during the Compensation Period, FMC, along with Akin Gump, Capstone and Jefferies, continued to perform due diligence in connection with intercompany claims, and continued to spend time examining potential intercompany claims among the Nortel Debtors and evaluating issues related thereto.

### Telecommunications/Regulatory/Intellectual Property

(Fees: CDN. $12,055.00 plus CDN. $602.75 taxes; Hours 17.80)

38.     FMC lawyers spent time during the Compensation Period reviewing and examining the Nortel Debtors' intellectual property portfolio, and analyzing the various legal issues related to such intellectual property assets, and considering strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the

estates, and consider strategic alternatives for maximizing the value of the Nortel Debtors' intellectual property portfolio for the benefit of the estates. In connection therewith, FMC attorneys, together with Akin Gump, participated in conference calls with the Nortel Debtors' professionals, analyzed various issues regarding the intellectual property monetization process and apprised the Committee of the progress of such marketing process.

## Tax Issues

(Fees: CDN. $10,071.00 plus CDN. $503.55 taxes; Hours 19.90)

39.    This subject matter relates to legal services rendered by FMC relating to tax matters affecting the Debtors and the Canadian Debtors. During the Compensation Period, FMC continued an in-depth analysis of various tax issues affecting the Nortel Debtors' estates, including the legacy transfer pricing system between, among others, the Debtors and the Canadian Debtors. In connection therewith, FMC attorneys participated in conferences with the Committee's other professionals and the senior management of the Debtors and their respective advisors to discuss cross-border tax issues in the context of these Insolvency Proceedings and to consider strategic options related thereto.

40.    During the Compensation Period, FMC attorneys also spent time analyzing certain issues related to the Canadian Debtors' income tax filing requirements for the taxable year 2009. In connection therewith, FMC attorneys, together with Akin Gump, worked closely with the Debtors' professionals and the professionals of the Monitor to consider strategic alternatives to best protect the Canadian Debtors' estates form unnecessary tax liability in connection with the filing of their respective 2009 Canadian income tax returns.

## Claims Analysis

(Fees: CDN. $43,588.00 plus CDN. $2,179.40 taxes; Hours 69.30)

41.     This subject matter relates to the analysis of claims asserted or contemplated to be asserted against the Debtors' estates. During the Compensation Period, FMC, along with Akin Gump and Capstone, spent time analyzing the numerous claims filed against the Debtors in the U.S. Proceeding and Canadian related issues, and discussing with the Debtors' professionals the reconciliation thereof. Additionally, FMC spent significant time during the Compensation Period working with Akin Gump, the Nortel Debtors and the Monitor negotiating an appropriate cross-border claims protocol (the "Cross-Border Claims Protocol") for use in the Insolvency Proceedings to supplement the Claims Procedures and efficiently address jurisdictional issues related to the filing and determination of claims. Under the terms of the cross-border protocol approved by the U.S. and Canadian Courts on June 29, 2009, a Cross-Border Claims Protocol is required to be negotiated and settled among the Nortel Debtors, the Monitor and the Committee. FMC has continued to work constructively with Akin Gump, the Nortel Debtors and the Monitor to finalize the Cross-Border Claims Protocol, as well as the claims resolution procedures in the Canadian Proceeding and a related order to be issued by the Canadian Court.

42.     FMC spent considerable time during the Compensation Period negotiating with counsel for the Canadian Debtors and the Monitor with respect to the Canadian claims procedure process and order to be approved by the Canadian Court in connection with claims against the Canadian Debtors. FMC, together with Akin Gump, assessed issues relating to the Canadian claims procedure in relation to the interests of the creditors of the U.S. Debtors. Negotiations with respect to the Canadian claims procedure order are ongoing but are expected to be completed in the near future.

### Non-Working Travel

(Fees: CDN. $13,950.00 plus CDN. $697.50 taxes; Hours 21.20)

43.     During the Compensation Period, FMC attorneys spent 27.10 non-working hours traveling to court hearings and/or meetings. Pursuant to Local Rule 2016-2(d)(viii), FMC has discounted this time by 50% and, accordingly, has billed 13.55 working hours traveling for the Compensation Period.

## V.   ALLOWANCE OF COMPENSATION

44.     The professional services rendered by FMC required a high degree of professional competence and expertise so that the numerous issues requiring evaluation and determination by the Committee could be addressed with skill and dispatch and have, therefore, required the expenditure of substantial time and effort. It is respectfully submitted that the services rendered to the Committee were performed efficiently, effectively and economically, and the results obtained to date have benefited not only the members of the Committee, but also the unsecured creditor body as a whole and the Debtors' estates.

45.     The allowance of interim compensation for services rendered and reimbursement of expenses in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> . . . any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331. Moreover, this Court has authorized the filing of this Application pursuant to the Administrative Fee Order.

46.     With respect to the level of compensation, 11 U.S.C. § 330(a)(1)(A) provides, in pertinent part, that the Court may award to a professional person "reasonable compensation for

actual, necessary services rendered . . . ."  11 U.S.C. § 330(a)(1)(A).  Section 330(a)(3), in turn,

provides that:

> In determining the amount of reasonable compensation to be awarded . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3). The clear Congressional intent and policy expressed in this statute is to

provide for adequate compensation in order to continue to attract qualified and competent

bankruptcy practitioners to bankruptcy cases.

47.     The total time spent by FMC lawyers during the Compensation Period was 423.10

hours. The work involved, and thus the time expended, was carefully assigned in light of the

experience and expertise required for a particular task.

48.     As shown by this application and supporting documents, FMC spent its time

economically and without unnecessary duplication of time. Attached hereto as Exhibit E is a

schedule of the hours expended by the lawyers and paraprofessionals during the Compensation

Period, their normal hourly rates, and the value of their services. In addition, FMC incurred

actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee in the sum of CDN. $7,793.33 (CDN. $7,422.22 for expenses and CDN. $371.11 for applicable Canadian taxes) for which FMC respectfully requests reimbursement in full.

49.    The disbursements and expenses have been incurred in accordance with FMC's normal practice of charging clients for expenses clearly related to and required by particular matters. FMC has endeavored to minimize these expenses to the fullest extent possible.

50.    FMC's billing rates do not include charges for photocopying, telephone and facsimile charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, since the needs of each client for such services differ. FMC believes that it is fairest to charge each client only for the services actually used in performing services for it. In these proceedings, FMC charges $.10 per page for internal duplicating.

51.    No agreement or understanding exists between FMC and any other person for the sharing of any compensation to be received for professional services rendered or to be rendered in connection with these cases.

52.    No prior application has been made in this or in any other Court for the relief requested herein for the Compensation Period.

**[The Remainder of Page Intentionally Left Blank]**

**WHEREFORE**, FMC respectfully requests that this Court:

(a)    approve the allowance of CDN. $271,313.70 (CDN. $258,394.00 for fees and CDN. $12,919.70 for applicable Canadian taxes) for compensation for professional services rendered to the Committee during the period from June 1, 2010 through and including June 30, 2010;

(b)    approve the reimbursement of FMC's out-of-pocket expenses incurred in connection with the rendering of such services during the period June 1, 2010 through and including June 30, 2010 in the amount of CDN. $7,793.33 (CDN. $7,422.22 for expenses and CDN. $371.11 for applicable Canadian taxes) ; and

(c)    authorize and direct the Debtors to immediately pay to FMC the amount of CDN. $224,844.29 (USD $218,706.04[2]), which is equal to the sum of 80% of FMC's fees and 100% of FMC's expenses incurred during the Compensation Period.

Dated:   Toronto, Ontario
         August 10, 2010

                              **FRASER MILNER CASGRAIN LLP**

                              By:
                                 Michael J. Wunder (*pro hac vice*)
                                 A Member of the Firm

                              Suite 3900
                              1 First Canadian Place
                              100 King Street West
                              Toronto, Ontario  M5X 1B2
                              (416) 863-4511
                              Canadian Counsel to the Official Committee of
                              Unsecured Creditors

---

[2]  Reuters Exchange Rate as of close of business on August 9, 2010 was CDN. $0.9727 : U.S. $1.00