FILED

2010 AUG 10  AM 11: 20

CLERK
US BANKRUPTCY COURT
DISTRICT OF DELAWARE

David Steer,
10 Cypress Crt.,
Nepean, Ontario, K2H 8Z8, Canada.
August 4th, 2010
davidsteer127@sympatico.ca

Chapter 11
Case No. 09-10138 (KG) ("Nortel")
(Jointly Administered)

To:
 Clerk
 United States Bankruptcy Court for the District of Delaware,
 824 Market Street 3rd Floor,
 Wilmington, Delaware, 19801, U.S.A.

Dear Sirs

The enclosed document is provided as a courtesy copy for filing with your court records.

This has been filed with the Ontario Superior Court of Justice (Commercial List) in the matter of the companies' creditors arrangement act (CCAA) R.S.C. 1985, c. C-36, as amended and in the matter of a plan of compromise or arrangement of Nortel Networks Corporation, Nortel Networks Limited, Nortel Networks Global Corporation, Nortel Networks International Corporation and Nortel Networks Technology Corporation application under the companies' creditors arrangement act R.S.C. 1985, c. C-36, as amended (court file 09-CL-7950).

Thank you

Yours

David Steer

Court File _09-CL-7950_

Ontario
Superior Court of Justice
(Commercial List)

In the matter of the companies' creditors arrangement act (CCAA)
R.S.C. 1985, c. C-36, as amended

and in the matter of a plan of compromise or arrangement of
Nortel Networks Corporation,
Nortel Networks Limited,
Nortel Networks Global Corporation,
Nortel Networks International Corporation and
Nortel Networks Technology Corporation

application under the companies' creditors arrangement act
R.S.C. 1985, c. C-36, as amended.

The Honourable Mr Justice Morawetz

The filing is occasioned by recent press statements by Jamie Moody, Nortel spokesperson, that Nortel is in discussions with interested parties for the licensing or sale of certain patents. Press reports also indicate that "Global IP Law Group (Chicago)" have been retained by Nortel to advise on disposition of patent assets.

It is my duty, as an inventor of a number of the patents that are part of these discussions, to inform the court, the patent offices and interested parties of some important irregularities that affect the status of these patents. A partial listing of the patents and patent applications (about 80 in total) of which I am an inventor is provided in Annex 1 of this filing.

As a result of actions by Nortel, as detailed in evidence before the court, the assignment of these patents and patent applications by the inventor to Nortel is invalid. Nortel failed to make provisions acknowledged at the time of signing the assignment contracts thus nullifying the assignments. Further-more, it is clear from the evidence before the court that Nortel did not have any intention of making the provisions acknowledged and the assignment agreements were obtained by misleading the inventor.

Parties that have licensed patents from Nortel, or are considering licensing or purchasing patents from Nortel should be aware that such licenses and purchases are without the consent

of all of the inventors. Interested parties will be aware that licensing and enforcement of patents without the consent of all of the inventors is problematic[1].

Interested parties will understand that the irregularities reported here do not affect the technical aspects of the inventions, their inventiveness or their claims. The fundamental value of the patents and the applications is unchanged by these irregularities. However, the irregularities do result in the ownership being divided among multiple parties.

The court is requested to:

(a) ensure though its distribution that all parties who may be involved in the discussions for the licensing or sale of Nortel patents are made aware of the irregularities in Nortel patents and that not all of the inventors consent to such licensing or sale, and

(b) in the event of the sale or disposition of the Nortel patents being supervised by the court, ensure that such sales or disposition does not compound the fraudulent actions of Nortel with respect to the inventors. A trust to benefit collectively all of the Nortel LTD and pensioners could be a satisfactory disposition.

This filing is made without the experience of counsel. This is partly because it is impractical to find a suitable firm with experience in the aspects of inventor's intellectual property rights that has not also been associated with patent actions on behalf of Nortel. It is expected that the court will consider this filing based on its matters of substance and not be sidetracked with items of procedure, form or format.

Although this filing refers specifically only to the patents and applications for which I am an inventor (Annex 1), it will be understood by interested parties that the same irregularities that affect my assignment contracts also affect many other Nortel inventors. These include, for example, all the inventors who were participants in the Nortel long term disability insurance, life insurance, savings, health and pension programs. Severed inventors who have not received mandated severance or other contracted payments are also among those with consequent irregularities in the assignment of their patents and pending patent applications.

Annex 2 of this filing includes further details of facts concerning the irregularities in the Nortel patents and their assignment by inventors. Annex 3 includes a model assignment form as was signed by the Nortel inventors.

If there are further questions about this filing, or if additional documentation is required, please contact me at any time.

Yours

David G. Steer,  PhD.

July 13th, 2010

---

[1] See, for example, 35 U.S.C. 262.

**Annex 1**

Partial listing of the intellectual property for which the assignment by the inventor, David Steer, to Nortel is invalid.

Note this is a partial listing as it does not include filings for which I have not been informed, continuations, divisionals etc. of existing applications or those applications for which it was requested that publication be delayed until the patent was issued.

The following US patents plus such other United Sates patents that may be issued or discovered in continued publication [35]:

| | |
|---|---|
| 7,742,738 | 6,845,246 |
| 7,647,061 | 6,721,569 |
| 7,453,832 | 6,701,129 |
| 7,440,785 | 6,643,517 |
| 7,421,276 | 6,633,564 |
| 7,414,964 | 6,343,213 |
| 7,400,888 | 6,249,245 |
| 7,304,939 | 6,236,359 |
| 7,289,427 | 6,230,018 |
| 7,177,644 | 6,070,083 |
| 7,177,371 | 6,032,033 |
| 7,174,170 | 5,982,324 |
| 7,151,944 | 5,345,597 |
| 7,110,351 | 5,239,682 |
| 7,031,753 | 5,239,676 |
| 6,996,418 | 5,229,995 |
| 6,985,545 | 4,920,565 |
| 6,873,612 | |

The following US patent applications and continuations and those that may be filed or discovered in continued publication (this list does not include applications that have yet to be published) [43]:

| | |
|---|---|
| 20100166180 | 20090016258 |
| 20100141430 | 20080316990 |
| 20100102964 | 20080171520 |
| 20090307484 | 20080159430 |
| 20090303895 | 20080159419 |
| 20090252065 | 20080159186 |
| 20090225743 | 20070123263 |
| 20090161608 | 20070002818 |
| 20090141668 | 20060258296 |
| 20090053994 | 20060126493 |
| 20090016259 | 20060052139 |

20040204026
20040176050
20040157645                          20020118784
20040157637
20040157613                          20020086708
20040157611                          20020075841
20040156345                          20010002822
20040125743
20040081113
20040076170
20030103445
20030067961
20030058833                          08/934 746
                                     11/315 292
11/430 827                           12/506 692

The Following Canadian Patents and such other Canadian patents and applications that may be issued or discovered in continued publication [10]:

1.  2032325
2.  2075860
3.  2031551
4.  2027826
5.  2021382
6.  2246518
7.  2271674
8.  2244366
9.  1292540
10. 2470756

The following European patents and applications and such other patents and applications that may be issued or discovered in continued searching.  Note that while there is some overlap of these with the US/Canadian filings and patents, amny are exclusive to the EU:

1.  EP0957370          12. EP1606907
2.  EP2172072          13. EP1602203
3.  EP2140555          14. EP1602196
4.  EP2123079          15. EP1597927
5.  EP2122876          16. EP1520390
6.  EP2122857          17. EP1348310
7.  EP2084834          18. DE60318911
8.  EP2050306          19. FR2842055
9.  EP2050227
10. EP2041910
11. EP1916782

1. WO2010063095
2. WO2010048699
3. WO2009087443
4. WO2009077863
5. WO2008106797
6. WO2008084394
7. WO2008011718
8. WO2008004102
9. WO2008000554
10. WO2008000450
11. WO2008000067
12. WO2008000065
13. WO2007131347
14. WO2007001892
15. WO2007001328
16. WO2007001329
17. WO2007061357
18. WO2008116300
19. WO2008086599
20. WO2008049843
21. WO2008011717
22. WO2008003825
23. WO2008001827
24. WO2008003562
25. WO2004082070
26. WO2004073268
27. WO2004006532
28. WO2003049355

DS V2F  July 2010

## Annex 2

This annex provides further facts and analysis about the patent assignment process and irregularities as practiced by Nortel and experienced by myself and many other Nortel inventors.

<u>Patent Assignment Obligations</u>

Generally, as part of the invention of innovations and the preparation and filing of patent applications, the inventor is requested to sign an "Assignment form". The purpose of this is to acknowledge a transfer of the intellectual property associated with the invention. A copy of the form used by Nortel with its inventors is attached as Annex 3 to this filing.

For this discussion, the significant words are in the first sentence "For valuable consideration, the receipt of which is hereby acknowledged, ....".

In my experience, there was never an exchange of any specific "valuable consideration", not even a minor token, at the time of the signing of the assignment form (or at any other time).

It was stated by Nortel to the inventors that the "valuable consideration" stipulated in the assignment contract was the employee's "compensation plan". This plan included a number of items: a salary, performance bonuses, holidays, long term disability insurance, savings plan, life insurance, health, vision and drug plan, dental plan, termination benefits and a pension plan. At the time I joined the company in 1974 there were no options within the plan. It was fixed to include all of these items. In later years, newer employees were allowed some flexibility in their choice of benefits. Many times, especially in the last decade, professional employees were informed that salaries could not be compared or matched to others in the industry due to the many aspects of the very valuable total compensation plan.

At the time of signing the "Assignment form", my understanding, and the understanding of other inventors, was that the "valuable consideration" included all aspects of the compensation plan.

We were also led to believe that the contributions of the plan relating to items such as long term disability, life, health, vision and dental insurance, and pension contributions were being made by Nortel as these were reported as taxable benefits in our yearly tax receipts. Employees were also sent yearly summaries detailing the compensation plan and its benefits and were required to pay sales tax on payments for these plans.

However, the evidence before the court indicates that Nortel was in fact not making its contributions to the compensation plan as it was acknowledging in the assignment contract with the inventors[2].

---

[2] The post retirement plans are summarised in Appendix G of the 39th Report of the Monitor, February 2009 Mercer Report Appendix D . The decreasing financial status of the programs is summarised in Appendix F of the 39th Report of the Monitor, January 2009 Mercer Report.

DS V2F July 2010                                                          **Page 6 of 10**

I.    In the case of the long term disability insurance (LTD), employees were promised a pension until age 65 in the event of their disability. As the LTD insurance accounting for the 2008 year provided to the court indicates, not only was Nortel not making provision for the payments for long term disability, it was also stealing money from the previous accumulations of the plan to be used for Nortel's current operations[3]. Employees were required to pay Ontario sales tax on the LTD premiums. Thus, in spite of acknowledging valuable consideration for the LTD insurance in the inventor's assignment contract, Nortel was in fact not making the necessary provision for the LTD plan. Any inventor who participated in the LTD insurance plan (including myself) was misled by Nortel into believing a LTD plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel involving the LTD plan.

II.    In the case of the life insurance plan employees and pensioners were promised a payment in the event of their death. This life insurance was treated as a taxable benefit on the employee's tax receipts and employees were required to pay sales tax on the premiums. As the court has agreed, these payments have been terminated. Thus, in spite of acknowledging provision for life insurance plan and death benefits as valuable consideration in the inventor's assignment contract, Nortel was in fact not making the necessary provision for these life insurance plans. Any inventor who participated in these life insurance programs (including myself) was misled by Nortel into believing an insurance plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel involving the life insurance plan.

III.    In the case of the health, vision and dental plan, employees and pensioners were promised health, vision and dental benefits. As the court has agreed, these payments have already been terminated. Nortel has failed to pay my health benefits as a retiree since January of 2009. Thus, in spite of acknowledging provision for the health, vision and dental plan as valuable consideration in the inventor's assignment contract, Nortel was in fact not making the necessary provision for the health, vision and dental plan. Any inventor who participated in the health, vision and dental program (including myself) was misled by Nortel into believing a health, vision and dental plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel for the health, vision and dental plan.

IV.    In the case of the pension plan, employees participating in the plan were promised a pension at the time of their retirement. As the documents before the court indicate, the

---

[3] The deteriorating financial status of the HWT fund is summarised in Appendix H of the 39th Report of the Monitor.

pension plan is significantly under-funded (69%)[4]. The increase in the under-funding over the years is clear evidence of the failure of Nortel to make due provision for the pension plan. As the court has agreed, the pension plan will be terminated in September of 2010. Thus, in spite of acknowledging the pension plan provision as valuable consideration for in the inventor's assignment contract, Nortel was in fact not making the necessary provision for the pension plan. In spite of Nortel's failure to make necessary provision for the pension plan, the employees were taxed by governments as if the pension provision had been made. Any inventor who participated in the pension program (including myself) was misled by Nortel into believing a pension plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel in the pension plan.

V.  In the case of the termination benefit plan, employees were promised a payment at the time of their retirement ("TRA"). Nortel has refused to pay my TRA in January 2009 as it stated that it would do in December of 2008. Thus, in spite of acknowledging termination benefits as valuable consideration in the inventor's assignment contract, Nortel was in fact not making the necessary provision for the TRA plan. Any inventor who participated in the TRA program (including myself) was misled by Nortel into believing a TRA plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel in relation to the TRA plan.

VI. In the case of the severance plan, professional employees were promised a compensation package commensurate with legal employment requirements in the event of their severance. As the court is aware, it has agreed to provide a shelter such that Nortel is not required to pay the legally required severance. Thus, in spite of acknowledging required severance as valuable consideration in the inventor's assignment contract, Nortel was in fact not making the necessary provision for the severance of inventors. The employee inventors were misled by Nortel into believing the legally required severance plan was in place when it was not. The signature on the patent "Assignment form" was thus obtained under false pretences and is invalid. The signatures on the "Assignment forms" are thus void as a consequence of fraudulent activity by Nortel in the payment of severance.

Taken together, or individually, these six examples provide evidence that Nortel systematically misled the inventors as to the "valuable consideration" being acknowledged in the assignment contract. Although Nortel led the inventors to believe that there were compensation plans in place, Nortel was in fact not making the necessary provisions for these plans. As the signatures were obtained on the assignment forms through this deliberate misdirection, they are invalid and

---

[4] Doolittle Affidavit, Exhibit "D", Letter from Mercer Human Resource Consulting dated May 15, 2009

the assignment of the patents to Nortel is void.  Without a valid assignment contract, the intellectual property remains the property of the inventors.

<u>Resolution</u>

The most suitable resolution would be to make whole, to the satisfaction of each of the inventors, the employee compensation plans that were in place at the time the assignment forms were signed.  This could, for example, ensure the uninterrupted continuation of the full LTD insurance plan and the pension plan including the associated inflation, health, vision and dental benefits etc.  This approach has the advantage that it leaves the inventors no cause to repudiate the assignment at a later time.   A suitable vehicle for this could be a trust fund established for the benefit of the whole community of long term disability and pensioners.

Failure to satisfy each of the inventors would leave the inventors cause to repudiate the assignment at a later time.

**Annex 3**

*FILE NUMBER*

PATENT APPLICATION
ASSIGNMENT

**FOR VALUABLE CONSIDERATION,** the receipt of which is hereby acknowledged, I (we) the undersigned, whose full post office address(es) is(are) listed below by (our) name(s), do hereby sell, assign and transfer to:

**NORTEL NETWORKS LIMITED**

(hereinafter "Nortel"), its successors, assigns and legal representatives, whose full post office address is:

> 2351 Boulevard Alfred-Nobel
> St. Laurent, Quebec
> Canada, H4S 2A9

all their right, title, and interest worldwide in and to the invention relating to

*TITLE OF PATENT*

as described in the application for letters patent filed concurrently herewith, as well as all rights and privileges including priority rights arising from the aforesaid application and corresponding applications in other countries, all continuations, continuations-in-part, divisionals, renewals, substitutes, or reissues thereof, and all the rights and privileges under any and all letters patent that may be granted for said invention.

I (We) undertake without charges to Nortel, but at its request and expense to execute all documents, take all oaths and do all reasonable acts to enable Nortel, its successors assigns and legal representatives to procure and maintain patent or any other intellectual property protection for said invention in any and all countries and to vest title thereto to Nortel, its successors assigns and legal representatives.

THE UNDERSIGNED hereby authorizes the firm of *NAME OF FIRM* whose full post office address is *ADDRESS OF FIRM*, to correct clerical errors in this Assignment or to insert any further identification or other information necessary or desirable to make this Assignment suitable for recordial in a domestic or foreign Patent Office.