# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
|  |  |
|---|---|
| In re | : Chapter 11 |
| | : Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | : Jointly Administered |
| | : |
| Debtors | : **Objection Deadline:** Sept. 9, 2010 at 4:00 pm (ET) |
| | : **Hearing Date:** Scheduled only if necessary |

-----------------------------------------------------------X

## SEVENTEENTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JUNE 1, 2010 THROUGH JUNE 30, 2010

| | |
|---|---|
| Name of Applicant: | Capstone Advisory Group, LLC |
| Authorized to Provide Professional Services to: | Official Committee of Unsecured Creditors |
| Date of Retention: | March 5, 2009 *nunc pro tunc* to January 26, 2009 |
| Period for which Compensation and reimbursement is sought: | June 1, 2010 through June 30, 2010 |
| Amount of compensation sought as actual, | $ 464,108.00 (80% of $580,135.00) [2] |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, re: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

[2] On June 18, 2010, Michael J. Lasinski, a Managing Director of Capstone, left the firm to become an independent consultant. While at Capstone, Mr. Lasinski was part of the team representing the Committee in these chapter 11 cases, and will continue to act as an independent consultant to Capstone on behalf of the Committee. To the best of Capstone's knowledge, Mr. Lasinski's independent retention would satisfy the requirements of 1103(a). For the period beginning June 19, 2010, Mr. Lasinski's fees have been included in this Capstone fee application at the same rate that Mr. Lasinski has charged Capstone, and Capstone has not charged any premium on Mr. Lasinski's fees. Further, detailed time entries in support of Mr. Lasinski's fees are included in the exhibits to Capstone's fee application in the same manner as they were while he was an employee of Capstone. The Office of the United States Trustee for the District of Delaware has been informed of Capstone's intent to structure Mr. Lasinski's compensation arrangement in this manner.

reasonable and necessary:

Amount of expense reimbursement sought as          $13,183.92
actual, reasonable and necessary:

This is an:     _x_ monthly   ___ interim    ___ final application

The total time expended for fee application preparation is approximately 16.30 hours and the corresponding compensation requested is $6,276.50.

**Attachment A - Prior Monthly Applications Filed:**

| | Application | | | | CNO | |
|---|---|---|---|---|---|---|
| **Date Filed** | **Docket No.** | **Period Covered** | **Total Fees** | **Expenses** | **Date** | **Docket No.** |
| 3/20/09 | 514 | 1/26/09 to 2/28/09 | $631,741.50 | $48,547.70 | 4/13/09 | 597 |
| 5/4/09 | 694 | 3/1/09 to 3/31/09 | $544,016.50 | $5,537.11 | 5/28/09 | 796 |
| 6/8/09 | 862 | 4/1/09 to 4/30/09 | $580,910.50 | $21,010.89 | 7/2/09 | 1033 |
| 7/2/09 | 1032 | 5/1/09 to 5/31/09 | $632,663.00 | $32,855.89 | 7/24/09 | 1163 |
| 8/18/09 | 1341 | 6/1/09 to 6/30/09 | $568,135.00 | $20,526.57 | 9/11/09 | 1479 |
| 9/8/09 | 1440 | 7/1/09 to 7/31/09 | $559,132.00 | $30,532.13 | 10/8/09 | 1642 |
| 9/25/09 | 1555 | 8/1/09 to 8/31/09 | $604,170.50 | $27,108.99 | 10/19/09 | 1697 |
| 11/11/09 | 1878 | 9/1/09 to 9/30/09 | $710,297.00 | $24,739.87 | 12/8/09 | 2097 |
| 11/24/09 | 1982 | 10/1/09 to 10/30/09 | $566,660.50 | $41,360.46 | 12/17/09 | 2171 |
| 1/20/10 | 2303 | 11/1/09 to 11/30/09 | $676,130.50 | $39,026.52 | 2/12/10 | 2414 |
| 2/9/10 | 2395 | 12/1/09 to 12/31/09 | $566,660.50 | $31,179.16 | 3/3/10 | 2629 |
| 2/24/10 | 2519 | 1/1/10 to 1/31/10 | $638,996.00 | $43,469.11 | 3/30/10 | 2805 |
| 3/30/10 | 2807 | 2/1/10 to 2/28/10 | $675,136.00 | $24,001.07 | 5/18/10 | 3012 |
| 4/27/10 | 2921 | 3/1/10 to 3/31/10 | $961,808.50 | $45,153.82 | 5/19/10 | 3019 |
| 5/28/10 | 3089 | 4/1/10 to 4/30/10 | $745,398.00 | $28,337.05 | 6/22/10 | 3208 |
| 6/29/10 | 3236 | 5/1/10 to 5/31/10 | $625,624.50 | $19,479.47 | 7/21/10 | 3717 |

**ATTACHMENT B**
**Nortel Networks Inc., et al.**
**Capstone Advisory Group, LLC**
**Summary of Fees by Professional by Service Line by Month**
**For the period 6/1/10 through 6/30/10**

| Professional | Position | Billing Rate | 6/1/10 - 6/30/10 | |
|---|---|---|---|---|
| | | | Hours | Fees |
| **Advisory** | | | | |
| C. Kearns | Executive Director, Member | $760 | 59.4 | $ 45,144.00 |
| J. Borrow | Executive Director, Member | $760 | 171 | $ 129,960.00 |
| J. Hyland | Executive Director | $575 | 202.3 | $ 116,322.50 |
| M. Lasinski | Managing Director 6/1/10 - 6/18/10 | $620 | 51.9 | $ 32,178.00 |
| M. Lasinski[3] | Contractor 6/19/10 - 6/30/10 | $310 | 16.8 | $ 5,208.00 |
| R. Conroy | Director | $500 | 71.9 | $ 35,950.00 |
| D. Rothberg | Director | $395 | 152.6 | $ 60,277.00 |
| L. Ahearn | Director | $360 | 213.5 | $ 76,860.00 |
| J. Peterson | Consultant | $335 | 1.9 | $ 636.50 |
| E. Cavanaugh | Consultant | $325 | 5.7 | $ 1,852.50 |
| T. Morilla | Consultant | $305 | 235.4 | $ 71,797.00 |
| J. Schad | Associate | $275 | 9.2 | $ 2,530.00 |
| A. Altamura | Consultant | $125 | 5.5 | $ 687.50 |
| H. Becker | Paraprofessional | $120 | 4.7 | $ 564.00 |
| L. Hirschman | Paraprofessional | $120 | 1.4 | $ 168.00 |
| **Total for the Period 3/1/10 through 3/31/10** | | | **1,203.2** | **$ 580,135.00** |

| Blended Rate | |
|---|---|
| Grand Total: | $580,135.00 |
| Total Hours: | 1,203.2 |
| **Blended Rate** | **$482.16** |

---

[3] On June 18, 2010, Michael J. Lasinski, a Managing Director of Capstone, left the firm to become an independent consultant. While at Capstone, Mr. Lasinski was part of the team representing the Committee in these chapter 11 cases, and will continue to act as an independent consultant to Capstone on behalf of the Committee. To the best of Capstone's knowledge, Mr. Lasinski's independent retention would satisfy the requirements of 1103(a). For the period beginning June 19, 2010, Mr. Lasinski's fees have been included in this Capstone fee application at the same rate that Mr. Lasinski has charged Capstone, and Capstone has not charged any premium on Mr. Lasinski's fees. Further, detailed time entries in support of Mr. Lasinski's fees are included in the exhibits to Capstone's fee application in the same manner as they were while he was an employee of Capstone. The Office of the United States Trustee for the District of Delaware has been informed of Capstone's intent to structure Mr. Lasinski's compensation arrangement in this manner.

**ATTACHMENT B**
**Nortel Networks Inc., et al.**
**Capstone Advisory Group, LLC**
**Expense Summary**
**For the period 6/1/10 through 6/30/10**

| | |
|---|---:|
| Airfare/Train | $5,784.76 |
| Auto Rental/Taxi | $2,319.89 |
| Hotel | $2,212.06 |
| Meals | $340.08 |
| Mileage | $84.00 |
| Parking/Tolls | $11.90 |
| Telecom | $2,431.23 |
| **TOTAL** | **$13,183.92** |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------------X
|  |  |
|---|---|
| In re | Chapter 11 |
|  | Case No. 09-10138 (KG) |
| Nortel Networks Inc., et al., [1] | Jointly Administered |
|  |  |
| Debtors | <u>Objection Deadline:</u> Sept. 9, 2010 at 4:00 pm (ET) |
|  | <u>Hearing Date:</u> Scheduled only if necessary |

-----------------------------------------------------------X

### SEVENTEENTH MONTHLY APPLICATION OF CAPSTONE ADVISORY GROUP, LLC, FINANCIAL ADVISOR FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR INTERIM ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED DURING THE PERIOD FROM JUNE 1, 2010 THROUGH JUNE 30, 2010

Capstone Advisory Group, LLC ("Capstone"), financial advisor for the Official

Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors"), submits this application (the "Application")

pursuant to sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"),

Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-2

of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court

of the District of Delaware (the "Local Rules"), the *Administrative Order Pursuant to 11 U.S.C.*

*§§ 105(a) and 331, Fed. R. Bnkr. P. 2016 and Del. Bankr. L.R. 2016-2 Establishing Procedures*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769); Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251); Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

*for Interim Compensation and Reimbursement of Fees and Expenses for Professionals and Official Committee Members* (the "Administrative Fee Order"), entered February 4, 2009, and the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses filed under 11 U.S.C. § 330, effective January 30, 1996 (the "U.S. Trustee Guidelines") seeking (a) the allowance of reasonable compensation for professional services rendered by Capstone to the Committee during the period June 1, 2010 through June 30, 2010 (the "Fee Period") and (b) reimbursement of actual and necessary charges and disbursements incurred by Capstone during the Fee Period in the rendition of required professional services on behalf of the Committee.  In support of this Application, Capstone represents as follows:

## JURISDICTION

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein are sections 1103 and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014.

## BACKGROUND

2.      On January 14, 2009 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief (the "U.S. Proceeding") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On January 15, 2009, the Court entered an order for the joint administration of these cases pursuant to Bankruptcy Rule 1015(b) for procedural purposes only.

4.      On January 14, 2009, the Debtors' ultimate corporate parent, Nortel Networks Corporation, together with Nortel Networks Limited ("NNL") and certain of their Canadian affiliates (collectively, the "Canadian Debtors") commenced a proceeding (the "Canadian Proceeding") before the Ontario Superior Court of Justice (the "Canadian Court") for a plan of compromise or arrangement under the Canadian Companies' Creditors Arrangement Act ("CCAA").  The Canadian Debtors continue to operate their businesses and manage their properties under the supervision of the Canadian Court.

5.      On January 14, 2009, the High Court of Justice in England placed nineteen of the Debtors' European affiliates (collectively, the "EMEA Debtors" and, together with the Debtors and the Canadian Debtors, the "Nortel Debtors") into administration (the "European Proceeding" and together with the U.S. Proceeding and Canadian Proceeding, the "Insolvency Proceedings") under the control of individuals from Ernst & Young LLC.

6.      On January 22, 2009 (the "Committee Formation Date"), pursuant to section 1102 of the Bankruptcy Code, the United States Trustee for the District of Delaware (the "US Trustee") appointed the Committee.  The Committee currently consists of three members, as follows: (i) Law Debenture Trust Company of New York, as indenture trustee; (ii) Pension Benefit Guaranty Corporation; and (iii) The Bank of New York Mellon, as indenture trustee.  No trustee or examiner has been appointed in these chapter 11 cases.

7.      At a meeting of the Committee on January 26, 2009, the Committee duly voted to retain Capstone as its financial advisor in connection with the U.S. Proceeding.

8.      On March 5, 2009, this Court entered an order authorizing the retention of Capstone as financial advisor to the Committee, *nunc pro tunc* to January 26, 2009.  On that same day, the Court authorized the Committee to retain and employ Akin Gump Strauss Hauer &

Feld LLP ("Akin Gump") as co-counsel to the Committee, Jefferies & Company, Inc. ("Jefferies") as the Committee's investment banker, Fraser Milner Casgrain LLP ("FMC") as the Committee's Canadian counsel, Ashurst LLP ("Ashurst") as the Committee's European counsel, and Kurtzman Carson Consultants, LLC ("KCC") as the Committee's communications agent.

## FEE PROCEDURES ORDER

9.      On February 4, 2009, this Court signed the Administrative Fee Order. Pursuant to the Administrative Fee Order, after the first day of each month (the "Fee Filing Period") following the month for which compensation is sought (the "Compensation Period"), each Professional seeking interim compensation may file with the Court a monthly application (each a "Monthly Fee Statement") pursuant to section 331 of the Bankruptcy Code for interim approval and allowance of compensation for services rendered and reimbursement of expenses during the Compensation Period. Each Notice Party shall have twenty (20) days after service of a Monthly Fee Statement to review the Monthly Fee Statement and object thereto (the "Objection Deadline"). Upon the expiration of the Objection Deadline: (i) if no objections have been filed, the Professional shall file a certificate of no objection and the Debtors shall then be authorized to pay such Professional eighty percent (80%) of the fees and one hundred percent (100%) of the expenses requested in the Monthly Fee Statement (the "Maximum Interim Payment") or (ii) if an objection to a Monthly Fee Statement has been filed, the Professional shall be entitled to eighty percent (80%) of the fees and one hundred percent (100%) of the expenses (the "Permitted Incremental Payment") not subject to that objection.

## RELIEF REQUESTED

10.      Capstone respectfully requests that it be allowed on an interim basis (i) fees in the amount of $580,135.00 for reasonable, actual and necessary services rendered by Capstone on behalf of the Committee during the Fee Period and (ii) reimbursement in the

amount of $13,183.92 for actual, reasonable and necessary expenses incurred by Capstone on behalf of the Committee during the Fee Period.  This Application is made pursuant to sections 328, 330 and 331 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure, the Fee Procedures Order and the Capstone Retention Order.

11.    Pursuant to the Administrative Fee Order, Capstone is seeking immediate payment of 80% of its fees ($464,108.00) and 100% of its expenses ($13,183.92) relating to services rendered during the Fee Period.

12.    During the Fee Period, Capstone has provided professional services to the Committee and incurred fees for such services totaling $580,135.00.  For the same period, Capstone has incurred actual, reasonable and necessary expenses in connection therewith totaling $13,183.92.  With respect to these amounts, as of the date of the Application, Capstone has received no payments.

## SUMMARY OF SERVICES RENDERED

13.    Capstone is a firm of financial advisors specializing in insolvency, restructuring, forensic accounting and related matters.  Since being retained by the Committee, Capstone has rendered professional services to the Committee as requested and as necessary and appropriate in furtherance of the interests of the unsecured creditors of the Debtors' estates.  Capstone respectfully submits that the professional services that it rendered on behalf of the Committee were necessary and have directly benefited the creditor constituents represented by the Committee and have contributed to the effective administration of these cases.

14.    Capstone submits that the interim fees applied for herein for professional services rendered in performing accounting, advisory, and forensic accounting services for the Committee in this proceeding are fair and reasonable in view of the time spent, the extent of

work performed, the nature of the Debtors' capitalization structure and financial condition, the Debtors' financial accounting resources and the results obtained.

15.     Capstone expended an aggregate of 1,203.20 hours, substantially all of which was expended by the professional staff of Capstone.  The work involved, and thus the time expended, was carefully assigned in light of the experience and expertise required for a particular task.  A small staff was utilized to optimize efficiencies and avoid redundant efforts.  The staff of the Debtors or their advisors has been utilized where practical and prudent.

16.     Capstone's approach is to utilize senior, experienced personnel and to encourage the Debtors to provide the staff-level support and analysis to minimize total cost.  In addition, Capstone's per diem rates for professionals of comparable experience are 10% to 20% lower than its competitors, the "Big-Four" accounting firms and certain other nationally-recognized specialty firms.

17.     During this Fee Period on June 18, 2010, one Capstone employee, Mike Lasinski, resigned from Capstone and started an independent consulting firm.  After his resignation, Mr. Lasinski continued to provide services to the estate as a consultant to Capstone.  As such, fees charged for his time through June 18 are included on this Application at his Capstone billing rate.  Fees charged for his time after June 18 are included at the rate charged to Capstone.  His expenses are included in this fee application.

18.     Because Capstone's core staff consisted of senior professionals who performed a vast amount of the work, time spent communicating internally and reviewing the work product of junior associates was kept to a minimum.  Additionally, because of the experience of Capstone's professionals, in many instances only three or fewer Capstone representatives attended meetings or conference calls or performed specific functions.

19.     Jay Borow is a Member of the firm and is responsible for directing the activities of the Capstone team, calling upon his more than 25 years of experience in restructuring and insolvency matters, including more than 100 cases, many as large and complex, and some larger and more complex than this matter.

20.     Capstone believes that there has been no duplication of services between Capstone and any other consultants or accountants to the bankruptcy estate.

21.     Capstone's travel time policy is for professional personnel to travel outside of business hours when possible.  Such time is not charged to a client unless productive work is performed during the travel period.  In this engagement, non-productive travel time is not being charged to the Debtors.

22.     Capstone's time records for the Fee Period are attached hereto as <u>Exhibit</u> <u>A</u>.  These records include daily time logs describing the time spent by each Capstone professional and administrative-level person in these cases.  Additionally, a compilation showing the name of the accounting and advisory consultant or administrative-level person who incurred fees, their billing rate and the amount of time spent in performing the services during the Fee Period is attached hereto as <u>Exhibit B</u>.  In addition, <u>Exhibit C</u> attached hereto contains a summary of the hours expended by Capstone professionals and administrative-level persons for each task code, as described below.

23.     No agreement or understanding exists between Capstone and any other person for the sharing of compensation received or to be received for services rendered in connection with the Chapter 11 Cases.

24.     Capstone also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with the rendition of its professional services.  A schedule of the

categories of expenses incurred in connection with the Insolvency Proceedings and the amounts

for which reimbursement is requested is annexed hereto as <u>Exhibit D</u>.  Also included within

<u>Exhibit D</u> is an itemization and description of each expense incurred within each category.

25.     Capstone respectfully submits that the professional services that it

rendered on behalf of the Committee were necessary and have directly benefited the creditor

constituents represented by the Committee and have contributed to the effective administration

of these cases.

26.     The general summary of the services rendered by Capstone during the Fee

Period based on tasks and number of hours is set forth below.

<b><u>Asset Acquisition/Disposition – Task Code 01</u></b>

27.     This task code includes Capstone's numerous discussions with the

Debtors, the Debtors' financial advisor, the Debtors' counsel, and the Committee's other

professionals regarding the disposition of assets and financial matters associated therewith.

During this Fee Period, the Debtors closed on disposing the GSM retained customer contracts,

4G Multi-hop relay incubation program, and the 50% equity interest in LG Nortel.  In certain

transactions, Capstone reviewed documents as they related to operational and financial issues

related to the Debtors.  This task code additionally includes analyses related to financial terms

and cash flows resulting from asset dispositions, potential allocations of proceeds among Nortel

entities from business unit sales, and transition services provided to purchasers in connection

with the potential wind down of certain operations.  Additionally, multiple meetings were

conducted with the other advisors and the Debtors to discuss allocations and related issues.   The

Committee considered the proceeds allocation methodologies as very critical to the estate of the

Debtors, and Capstone spent significant time analyzing numerous approaches to asset sale

proceeds allocations based upon updated proceeds information. Capstone reviewed financial and operational issues related to the potential disposition of certain of the Debtors' real estate properties. Capstone completed in-depth analyses related to overall cost sharing and sunset planning for the Debtors' entity providing transition services, Nortel Business Services ("NBS"). Finally, Capstone continued to analyze the effects of the potential disposition of the Debtors' joint venture entities and its impact on cash repatriation for the Debtors.

28.    Capstone has expended 291.00 hours on this category for a fee of $128,159.00.

### Professional Retention/Fee Application – Task Code 05

29.    This task code for this Fee Period relates primarily to Capstone's efforts in connection with the preparation of prior period's fee application and the interim fee application.

30.    Capstone has expended 16.30 hours on this category for a fee of $6,276.50.

### Interactions/Meetings with Debtors/Counsel – Task Code 07

31.    This task code relates to teleconferences and meetings with the Debtors and their advisors regarding the presentation of the Debtors' financial results, the status of the Insolvency Proceedings, and other pending matters. The time expended included various communications in connection with information requests and Debtors' presentations to the Committee on important case matters. Several telephonic and in-person meetings were conducted with the Debtors and/or their professionals during the Fee Period that were necessary to advise the Committee on critical areas.

32.    Capstone has expended 11.80 hours on this category for a fee of $6,086.50.

## Interactions/Meetings with Creditors/Counsel – Task Code 08

33.    This task code relates to Committee matters, meetings and conference calls with the Committee as a whole and with individual Committee members, separate meetings with Akin Gump to prepare for Committee meetings and calls, and interactions with other creditors.  During the Fee Period, Capstone participated in numerous telephonic conferences with Committee professionals and Committee members.  Capstone participates in regularly scheduled conference calls with the full Committee, Akin Gump, and other Committee professionals, in order to apprise the Committee members of developments in the chapter 11 cases and to facilitate efficient administration of the chapter 11 cases.  In preparation for these meetings, Capstone reviewed pending matters to be discussed with the Committee, and reviewed and reported on underlying documentation in connection therewith.  Additionally, Capstone, working with Akin Gump and the other Committee professionals, assisted the Committee in fulfilling its statutory duties to make informed decisions regarding the various issues that have already arisen in these cases and to monitor closely the Debtors' management of these proceedings.

34.    Capstone has expended 74.90 hours on this category for a fee of $51,839.00.

## Employee Issues/KEIP – Task Code 09

35.    This task code relates to time spent by Capstone analyzing executive compensation, Annual Incentive Program ("AIP"), Key Employee Retention Plan awards and employee pensions, including discussions with the Debtors and their advisors relating thereto. Capstone focused significant time on developing and analyzing compensation and retention programs for the employees in NBS and Corporate Group for the first half of 2010.  During the Fee Period, Capstone reviewed and analyzed the trend of the employee headcount and the related

employee compensation, and presented this analysis to the Committee. Lastly, Capstone analyzed potential employee severance issues and their impact on claims and required funding levels for the Debtors.

36.    Capstone has expended 29.60 hours on this category for a fee of $12,258.50.

### Recovery/SubCon/Lien Analysis – Task Code 10

37.    This task code relates to time spent by Capstone at analyzing hypothetical recoveries to the creditors in various proceeds allocation and claim assumption scenarios. Capstone developed models that analyzed the recoveries based on several potential methods of proceeds allocation.

38.    Capstone has expended 20.90 hours on this category for a fee of $14,764.00.

### Claim Analysis/Accounting – Task Code 11

39.    This task code relates to time spent by Capstone reviewing various claims made on the estate and the various cure costs claims arising during these chapter 11 cases. As this Court is aware, the general claims bar date in Canada and the U.S. expired on September 30, 2009. During the Fee Period, Capstone spent significant time analyzing claims summaries prepared by the Canadian Monitor and U.K. Administrator, and reported the results of those analyses to the Committee. Capstone also spent a significant amount of time researching and analyzing potential unrecorded intercompany claims between the U.S. Debtors, Canadian Debtors and UK/EMEA Debtors.

40.    Capstone has expended 152.90 hours on this category for a fee of $70,133.00.

### Intercompany Transactions/Balances and Transfer Pricing – Task Code 13

41.    This task code relates to time spent by Capstone analyzing intercompany transactions, balances and funding by and among the various Nortel entities. Included in this category is the analysis of intercompany issues related to transfer pricing, research and development, and intellectual properties. Capstone spent significant time reviewing certain intercompany issues that impact the cash flows of the operations. Capstone continued to review the Debtors' plans for legal entity rationalization in the Asia-Pacific ("APAC") and Central and Latin America ("CALA") regions, including repatriation of cash to both the U.S. and Canadian Debtors. Capstone worked with Akin Gump to determine the feasibility of the Debtors' plans for cash repatriations as well as any potential documentation or tax issues that might delay or impede the process. Additionally, Capstone analyzed the Debtors' proposed potential restructuring of certain intercompany obligations with certain non-filed entities. As part of the intercompany issues, Capstone spent a time reviewing the Debtors' Transfer Pricing Agreement ("TPA") and related issues between entities.

42.    Capstone has expended 166.10 hours on this category for a fee of $70,358.50.

### Executory Contracts – Task Code 14

43.    This task code relates to time expended analyzing executory contracts for assumption or rejection. Capstone reviewed and analyzed the terms of certain lease stipulations and the financial impact on the Debtors.

44.    Capstone has expended 10.80 hours on this category for a fee of $3,483.00.

## Analysis of Historical Results – Task Code 17

45.    This task code relates to time expended in connection with the analysis of historical financial results for purposes of obtaining an understanding of the Debtors' past performance as well as indicators for future performance.

46.    Capstone has expended 3.40 hours on this category for a fee of $1,037.00.

## Operating and Other Reports – Task Code 18

47.    This task code relates to time spent by Capstone analyzing reporting received from the Debtors and preparing reporting for the Committee.  The Debtors' reports include the reports of the Monitor filed in the Canadian Proceeding, as well as the Monthly Operating Reports for the Debtors filed with the Bankruptcy Court in the U.S. Proceeding.  In addition, Capstone prepared and/or assisted the Committee's other professionals in preparing detailed memoranda for the Committee during the Fee Period discussing the status of pertinent matters in these proceedings.

48.    Capstone has expended 27.10 hours on this category for a fee of $13,306.50.

## Cash Flow Cash Management/Liquidity – Task Code 19

49.     This task code relates to Capstone's time spent on weekly cash flow analyses and daily cash flash reports that were provided for various Debtor entities. This included, but was not limited to, analysis of the Debtors' weekly 13-week cash flow forecast for various entities and participation in related weekly calls with the Debtors. Through these analyses, Capstone kept the Committee apprised with respect to the Debtors' cash balances and cash flows from operations, which was especially critical for select legal entities. Analysis and monitoring of the Debtors' cash was viewed as critical by the Committee.

50.     Capstone has expended 63.50 hours on this category for a fee of $21,367.50.

## Projections/Business Plan/Other – Task Code 20

51.     This task code relates to Capstone's time spent analyzing the Debtors' 2010 annual budget and related forecasting matters, including assumptions for planned activities in 2010 and 2011. Significant time was spent analyzing the NBS and Corporate group budgets, as well as standalone financial forecasts for specific business units. The analyses included examining cash flows by entity as compared to the weekly cash flows prepared separately by the Debtors. Capstone also reviewed and researched the Debtors' budget for start-up costs for the NBS operation and costs expected to be incurred by the Debtors as they wind down Corporate and NBS operations in 2011 and 2012.

52.     Capstone has expended 32.00 hours on this category for a fee of $12,387.00.

### Tax Issues– Task Code 26

53.     This task code relates to time spent analyzing issues related to the potential tax liabilities against the Debtors. Capstone analyzed the Debtors' current timeline for filing 2009 tax returns, resolving outstanding tax claims, and filing amended returns as a result of the Advanced Pricing Agreement settlement between the U.S. and Canada. Capstone and other legal and financial advisors participated in meetings to discuss the historic tax, TPA, and resulting allocation issues. Capstone also spent time analyzing net operating losses and the potential impact on the Debtors' tax liabilities.

54.     Capstone has expended 45.70 hours on this category for a fee of $30,847.50.

### Plan of Reorganization/Disclosure Statement – Task Code 27

55.     This task code relates to time spent reviewing and analyzing a draft of the Joint Chapter 11 Plan of Nortel Networks Inc. and its affiliated Debtors.

56.     Capstone has expended 15.80 hours on this category for a fee of $9,574.00.

### Intellectual Property – Task Code 33

57.     This task code relates to time spent preparing analyses relating to the Debtors' intellectual property. Capstone discussed current intellectual property activities and potential strategies for maximizing the value of the intellectual property portfolio with the Debtors and their advisors. Additionally, Capstone spent significant time preparing detailed analyses of the such potential strategies for the Committee.

58.     Capstone has expended 241.10 hours on this category for a fee of $128,257.50.

## ACTUAL AND NECESSARY EXPENSES

59.    Capstone incurred actual out-of-pocket expenses in connection with the rendition of the professional services to the Committee, as summarized above, in the sum of $13,183.92 for which Capstone respectfully requests reimbursement in full.

60.    The disbursements and expenses have been incurred in accordance with Capstone's normal practice of charging clients for expenses clearly related to and required by particular matters.  Such expenses were often incurred to enable Capstone to devote time beyond normal office hours to matters, which imposed extraordinary time demands. Capstone has endeavored to minimize these expenses to the fullest extent possible.

61.    Capstone's billing rates do not include charges for photocopying, telephone and telecopier toll charges, computerized research, travel expenses, "working meals," secretarial overtime, postage and certain other office services, because the needs of each client for such services differ.  Capstone believes that it is fairest to charge each client only for the services actually used in performing services for such client.  Capstone has endeavored to minimize these expenses to the fullest extent possible.

62.    Consistent with this Courts' Guidelines, Capstone charges $.10 per page for in-house photocopying services, with respect to computerized research services Capstone charges the actual cost from the vendor, and $1.00 per page for out-going facsimile transmissions.  Capstone does not charge for incoming facsimiles.

63.    In providing a reimbursable service such as copying or telephone, Capstone does not make a profit on that service.  In charging for a particular service, Capstone does not include in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment or capital outlay.  In seeking reimbursement for a service which

Capstone justifiably purchased or contracted for from a third party, Capstone requests reimbursement only for the amount billed to Capstone by such third party vendor and paid by Capstone to that vendor.

*[Remainder of this Page Intentionally Left Blank]*

WHEREFORE, Capstone respectfully requests: (a) that it be allowed on an interim basis (i) fees in the amount of $580,135.00 for reasonable, actual and necessary services rendered by it on behalf of the Committee during the Fee Period and (ii) reimbursement of $13,183.92 for reasonable, actual and necessary expenses incurred during the Fee Period; and (b) that the Debtors be authorized and directed to immediately pay to Capstone the amount of $477,291.92 which is equal to the sum of 80% of Capstone's fees and 100% of Capstone's expenses incurred during the Fee Period.

Dated: August 20, 2010
     New York, NY

**CAPSTONE ADVISORY GROUP, LLC**

/s/ Jay Borow
Jay Borow
Member of the Firm
104 West 40th Street
16th Floor
New York, NY 10018
(212) 782-1411

Financial Advisor to the Official Committee
of Unsecured Creditors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------X
                                          :
In re                                     :      Chapter 11
                                          :      Case No. 09-10138 (KG)
Nortel Networks Inc., et al., ¹           :      Jointly Administered
                                          :
                    Debtors               :
                                          :
------------------------------------------------------X
```

## VERIFICATION

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF NEW YORK       )

Jay Borow, being duly sworn according to law, deposes and says:

a)      I am a Senior Member at the applicant firm, Capstone Advisory Group,

LLC, and have been admitted to appear before this Court.

b)      I have personally performed many of the professional services rendered by

Capstone Advisory Group, LLC as financial advisor to the official committee of unsecured

creditors and am familiar with the work performed on behalf of the official committee of

unsecured creditors by the professionals and other persons in the firm.

c)      I have reviewed the foregoing Application and the facts set forth therein

are true and correct to the best of my knowledge, information and belief.

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number,
are: Nortel Networks Inc. (6332); Nortel Networks Capital Corporation (9620); Nortel Altsystems Inc. (9769);
Nortel Altsystems International Inc. (5596); Xros, Inc. (4181); Sonoma Systems (2073); Qtera Corporation (0251);
Coretek, Inc. (5722); Nortel Networks Applications Management Solutions, Inc. (2846); Nortel Networks Optical
Components, Inc. (3545); Nortel Networks HPOCS Inc. (3546); Architel Systems (U.S.) Corporation (3826); Nortel
Networks International Inc. (0358); Northern Telecom International Inc. (6286); Nortel Networks Cable Solutions
Inc. (0567); and Nortel Networks (CALA) Inc. (4226).

        d)      All services for which compensation is requested by Capstone were professional services performed for and on behalf of the Committee and not on behalf of any other person.

        e)      I have reviewed the requirements of Local Rule 2016-2 and certify to the best of my information, knowledge and belief that this application complies with Local Rule 2016-2.

Executed on August 20, 2010

                                       /s/ Jay Borow
                                       Jay Borow