**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------X
:
*In re*                                                     :         Chapter 11
:
Nortel Networks Inc., *et al.*,[1]                          :         Case No. 09-10138 (KG)
:
               Debtors.                                     :         Jointly Administered
:
:
------------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. § 102(1) SHORTENING NOTICE RELATING TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS' ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) APPROVING A SIDE AGREEMENT, (E) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (F) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS' MULTI-SERVICE SWITCH (FORMERLY KNOWN AS 'PASSPORT') BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

Nortel Networks Inc. ("NNI")[2], and certain of its affiliates as debtors and debtors-in-possession (collectively, the "Debtors"), hereby move this Court (the "Motion to Shorten") for entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to section 102(1) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9006-1(e) of the Local Rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) shortening notice with respect to certain elements of the Debtors' Motion (the "Sale Motion") for orders (I)(A) authorizing the Debtors' entry into that certain asset sale agreement dated as of August 26, 2010, among NNI, Nortel Networks Limited ("NNL"), Nortel Networks Corporation ("NNC") and certain other entities identified therein as sellers (together, the "Sellers") and PSP Holding LLC, as purchaser ("PSP Holding" or the "Stalking Horse Purchaser") for the sale of certain assets of the Sellers' Multi-Service Switch business (the "MSS Business") as described therein (the "Purchased Assets") as a "stalking-horse" sale agreement (as appended to the Sale Motion as Exhibit A, the "Stalking Horse Agreement"), (B) authorizing and approving the bidding procedures and Bid Protections (as defined in the Bidding Procedures Order) (appended as Exhibit 1 to the Bidding Procedures Order, the "Bidding Procedures"), including granting administrative expense status to the Bid Protections payable by the Debtors to the Stalking Horse Purchaser, (C) approving the form and manner of sale notice and publication notice (the "Notice Procedures") and the procedures (the "Assumption and Assignment Procedures") as set forth in the Sale Motion for the assumption and assignment of the Assumed and Assigned Contracts (as defined in the Sale Motion, and together with the Purchased Assets, the "Assets"), (D) approving that certain side agreement, (E) authorizing the Debtors to file certain documents under seal and (F) setting the time, date and place for a hearing (the "Sale Hearing") to consider the sale of the Assets and the assumption and assignment of the Assumed and Assigned Contracts (the "Sale"), (II) authorizing and approving (A) the sale of the Purchased Assets, free and clear of all liens, claims, and encumbrances pursuant to section 363 of the Bankruptcy Code, except as set forth in the Stalking Horse

---

[2]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Motion.

Agreement and (B) the assumption and assignment of the Assumed and Assigned Contracts pursuant to section 365 of the Bankruptcy Code; and (III) granting them such other and further relief as the Court deems just and proper; (ii) permitting parties to file objections, if any, to certain elements of the relief requested in the Sale Motion on or before August 31, 2010 at 12:00 p.m. (prevailing Eastern Time); and (iii) allowing certain elements of the Sale Motion to be heard at the omnibus hearing scheduled for September 1, 2010 at 11:30 a.m. (prevailing Eastern Time) (the "September 1st Hearing").  For the reasons set forth herein, the Debtors believe that prompt consideration of the Sale Motion on shortened notice is necessary and appropriate and respectfully request that the Court enter an order shortening notice with respect to the relief proposed in the Bidding Procedures Order and permitting the relief proposed in the Bidding Procedures Orderto be heard at the September 1st Hearing.  In support of this Motion to Shorten, the Debtors respectfully state as follows:

## Jurisdiction

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e).

## Background

**A.  Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3

5.     On January 15, 2009, this Court entered an order of joint administration pursuant to Rule 1015(b) of the Bankruptcy Rules that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.     Also on the Petition Date, the Debtors' ultimate corporate parent NNC, NNI's direct corporate parent NNL, and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.     On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On

---

[3]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[4]     The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended and the liquidation operations were temporarily suspended on October 1, 2009.  On March 25, 2010, the French Court ended the suspension of the liquidation operations.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA, although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[5]

9.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

---

[5]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.    Debtors' Corporate Structure and Business**

11. Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.    Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its Code Division Multiple Access ("CDMA") business and

Long Term Evolution ("LTE") Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280]. On December 2, 2009, this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15. On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].

## **Relief Requested**

16. By this Motion to Shorten, the Debtors respectfully request that the Court enter an order (i) shortening notice pursuant to sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e), with respect to the relief proposed in the Bidding Procedures Order; (ii) permitting parties to file objections, if any, to the relief proposed in the Bidding Procedures Order on or before August 31, 2010 at 12:00 p.m.

(prevailing Eastern Time); (iii) allowing the relief proposed in the Bidding Procedures Order to be heard at the September 1st Hearing; and (iv) granting such other and further relief to the Debtors as the Court deems just and proper.

## Facts Relevant to this Motion

17. As set forth more fully in the Sale Motion, certain of the Debtors and the other Sellers have entered into the Stalking Horse Agreement pursuant to which the Sellers propose to sell to the Stalking Horse Purchaser certain assets and to assume and assign certain executory contracts of the Debtors relating to their MSS Business (the "Assets"). As set forth in the declaration of George Riedel, attached as Exhibit B to the Sale Motion (the "Riedel Declaration"), the potential purchase price that could be realized through a sale of the Assets is likely to decline over time if the Assets remain unsold. While it is clear that the Assets have significant value, the full value of these Assets may not be realized if a sale is not consummated quickly.

18. The Debtors entered into the Stalking Horse Agreement after extensive marketing efforts and discussions with multiple interested parties. As a result, the Debtors believe that the Stalking Horse Agreement represents the best deal available for the sale of the Assets, subject to the receipt of a higher or better bid through the auction process contemplated in the Sale Motion. The Stalking Horse Agreement requires an expeditious sale process and provides the Purchaser the right to terminate the Stalking Horse Agreement if certain milestones in the sale process are not timely met.

19. Furthermore, in connection with the divestiture of the MSS Business, certain of the Sellers will be obligated to provide transition services to the Purchaser. In connection with completed divestitures, certain of the Debtors and the Canadian Debtors entered into similar agreements to provide transition services to purchasers, and are currently providing transition

services thereunder. Since the proposed sale of the MSS Business represents Nortel's last remaining effort to dispose of an operating business, expediting the sale process and timely closing this transaction will allow the Debtors to maximize efficiencies in the provision of transition services to the various purchasers and to coordinate the orderly wind down of transition services obligations across the various divestitures.

## Basis for Relief

20. Local Rule 9006-1 requires ". . . all motion papers shall be filed and served . . . at least fourteen (14) days (and an additional three (3) days if service is by mail) prior to the hearing date." According to Local Rule 9006-1(e), however, the notice period may be shortened by order of the Court upon written motion "specifying the exigencies justifying shortened notice." The Debtors respectfully submit that allowing the relief proposed in the Bidding Procedures Order to be considered on an expedited basis at the September 1st Hearing is reasonable and appropriate under the circumstances.

21. The Debtors respectfully submit that shortened notice is appropriate in this instance because, as discussed above, the expeditious sale of the Assets is critical to the maximization of the value of the Assets and, in turn, to a recovery for the Debtors' estates. The business in question is the Debtors' last remaining operating business, as a result of which the negotiations and structuring of this transaction have been even more complex than prior transactions and time even more of the essence.

22. Further, the Debtors are only requesting a shortened notice period for the relief proposed in the Bidding Procedures Order, and not the relief proposed in the form of Sale Order attached to the Sale Motion. Through the Sale Motion, the Debtors are proposing to have the relief proposed in the Bidding Procedures Order heard on September 1, 2010, the Auction on

September 24, 2010, and the hearing on the Sale Order on September 30, 2010. This proposed timeline exceeds the Bankruptcy Rule 2002 requirements for the hearing on the proposed Sale Order. Therefore, the Debtors believe that a hearing on certain elements of the Sale Motion on shortened notice is in the best interests of the Debtors' estates and creditors.

23. The Debtors have consulted with counsel for the Committee and the Bondholders Group, and understand that both are supportive of shortening the notice period for the Sale Motion as requested herein.

24. For these reasons, the Debtors respectfully submit that allowing the relief proposed in the Bidding Procedures Order to be considered on shortened notice is reasonable and appropriate under the circumstances.

## Notice

25. Notice of the Sale Motion and Motion to Shorten have been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Stalking Horse Purchaser; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

26. No prior request for the relief sought herein has been made to this or any other Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully requests that this Court enter an order (i) shortening notice pursuant to sections 102(1) and 105 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 9006 and Local Rule 9006-1(e); (ii) permitting parties to file objections, if any, to the relief proposed in the Bidding Procedures Order on or before August 31, 2010 at 12:00 p.m. (prevailing Eastern Time); (iii) allowing the relief proposed in the Bidding Procedures Order to be heard at the September 1st Hearing; and (iv) granting such other and further relief to the Debtors as the Court deems just and proper.

Dated: August 27, 2010
Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

  /s/ Ann C. Cordo
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street, 18th Floor
P.O. Box 1347
Wilmington, DE  19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 425-4663

*Counsel for the Debtors and Debtors in Possession*