**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------X
                                  :

| | |
|---|---|
| *In re* | Chapter 11 |
| Nortel Networks Inc., *et al.*,[1] | Case No. 09-10138 (KG) |
| Debtors. | Jointly Administered |

Hearing date:  September 16, 2010 at 10:00 a.m. (ET)
Objections due:  September 9, 2010 at 4:00 p.m. (ET)

--------------------------------------------------------X

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING**
**AND APPROVING SETTLEMENT PROCEDURES TO**
**SETTLE CERTAIN PREPETITION CLAIMS**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in

possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of

an order substantially in the form attached hereto as Exhibit A, pursuant to section 105(a) of title

11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing and approving omnibus settlement

procedures to settle certain prepetition claims; and granting them such other and further relief as

the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as

follows:

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification
number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc.
(9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation
(0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks
Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826),
Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable
Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the
Debtors' petitions, which are available http://dm.epiq11.com/nortel.

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.     On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended and the liquidation operations were temporarily suspended on October 1, 2009. On March 25, 2010, the French Court ended the suspension of the liquidation operations. In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

3

NNSA although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA" and a Debtor with NNI and its affiliates), an affiliate of NNI, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

B.      **Debtors' Corporate Structure and Business**

11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law.

customers.  Nortel's technologies spanned access and core networks and support multimedia and

business-critical applications.  Nortel's networking solutions consisted of hardware, software and

services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced

and supported these networking solutions worldwide.

12.      Additional information regarding the Debtors' corporate structure and business

and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in

Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

C.      **Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with

external parties to sell its businesses and it would assess other restructuring alternatives for its

businesses in the event it is unable to maximize value through sales.  To date, Nortel has closed

(i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the

sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM

Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks

business associated with the development of Next Generation Packet Core network components

to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise

Solutions business globally, including the shares of Nortel Government Solutions Incorporated

and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its

Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks

business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-

R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain

assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC

---

[5]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day
Declaration.

[D.I. 2632].  Efforts continue to be made with respect to the realization of value from Nortel's

remaining assets.

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00

PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On

December 3, 2009, this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern

Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].  As of

December 31, 2009, 6,541 proofs of claim have been filed against the Debtors' estates (the

"Proofs of Claim").

15.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks

Inc. and Its Affiliated Debtors [D.I. 3580].

## Relief Requested

16.     By this Motion, the Debtors seek an order pursuant to section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019 approving certain proposed procedures, as

described more fully below (the "Settlement Procedures"), under which the Debtors may, in their

sole discretion, compromise and settle certain Proofs of Claim asserted against the Debtors for de

minimis amounts, while limiting the notice to be served for certain settlements.[6]

## Facts Relevant to this Motion

17.     Prior to the Petition Date, the Debtors, in the ordinary course of their business,

would investigate, evaluate and attempt to resolve alleged liabilities asserted against them.

Depending upon the specific facts and the risks involved in engaging in litigation with respect to

such claims, the Debtors, in the exercise of their business judgment, would make appropriate

offers to settle such claims.  In negotiating settlements, the Debtors would be guided by several

---

[6]     The relief sought in this Motion is not intended to limit the Debtors' authority to settle claims granted under
any prior orders entered by this Court.

factors, including the probability of success if the claim is litigated; the complexity, expense and likely duration of any litigation with respect to such claim; and the difficulty in collection of any judgment.

18.     During the course of these chapter 11 cases, the Debtors will be required to analyze and liquidate the claims that underlie the Proofs of Claim.  As part of that process, and consistent with their prepetition practices, the Debtors may determine in their business judgment that it is in the Debtors' best interest to settle disputed Proofs of Claim to minimize the risks involved and eliminate the additional costs associated with litigation.  The Debtors believe that the implementation of the procedures for entering into certain settlements for de minimis amounts will streamline the settlement process, thus minimizing additional cost to the Debtors' estates while still affording the Court oversight over claims of a greater value.

19.     With respect to Proofs of Claim filed against the Debtors' estates, the Debtors are therefore seeking to implement a four-tier settlement procedure, as set forth below (the "Settlement Procedures").  Upon the Court's approval, the Debtors will be authorized to consensually resolve the claims asserted in disputed Proofs of Claim pursuant to the following Settlement Procedures, which the Debtors believe will facilitate a fair, efficient and reasonable method of settling disputed Proofs of Claim:

     a.    No settlement of a disputed Proof of Claim will be agreed to unless such settlement would be in the reasonable business judgment of the Debtors, upon consideration of (i) the probability of success if the claim is litigated, (ii) the complexity, expense and likely duration of any litigation with respect to the claim, (iii) the difficulty in collection of any judgment, (iv) other factors relevant to assessing the wisdom of the settlement, and (v) the fairness of the settlement vis-à-vis the Debtors' estates and their creditors.

     b.    The Debtors' employees or representatives responsible for negotiating or settling disputed Proofs of Claim may attempt to resolve, mediate, compromise or otherwise settle any disputed

Proof of Claim without further hearing or notice to this Court or other parties in interest in these proceedings.

c.      The Debtors need not provide prior notice for the settlement of disputed Proofs of Claim where the Proof of Claim was originally filed in an amount less than $250,000.

d.      The Debtors need not provide prior notice for the settlement of disputed Proofs of Claim where the Proof of Claim was originally filed in an amount equal to or greater than $250,000 and less than $500,000 and the Claim Difference[7] is less than $50,000.

e.      (1) Where the Proof of Claim was originally filed in an amount equal to or greater than $250,000 and less than $500,000 and the Claim Difference is equal to or greater than $50,000 or (2) where the Proof of Claim was originally filed in an amount equal to or greater than $500,000 and less than $1 million, the Debtors shall notify (i) the U.S. Trustee and (ii) counsel to the Committee (the "Notice Parties") in writing of a proposed settlement of a disputed Proof of Claim.  If no Notice Party objects in writing within ten (10) calendar days of receipt of notice under this paragraph, then the Debtors may immediately proceed with the settlement.[8]  If an objection is received within such period that cannot be resolved, such Proof of Claim may not be settled except upon further order of the Court after notice and a hearing.

f.      No disputed Proof of Claim that was originally filed in an amount equal to or greater than $1 million shall be settled without further approval by the Court.

g.      The Debtors, in their sole discretion, shall have the authority to exchange mutual releases as part of any settlement of a Proof of Claim.

h.      The entry by the Debtors into settlement, mediation or compromise negotiations does not constitute a waiver of the automatic stay applicable to judicial, administrative or other actions or proceedings against the Debtors pursuant to section 362 of the Bankruptcy Code.

---

[7]      The Claim Difference is the difference between (a) the amount of the claim as scheduled on the Debtors' Schedules and (b) the amount of the Proof of Claim as filed by the creditor.

[8]      The Notice Parties shall be deemed to have received notice the day after such notice has been sent by a properly addressed facsimile, email or overnight delivery to the Notice Parties or their counsel or designated representative.  If such notice is made solely by U.S. mail, the deemed receipt date shall be three (3) days after mailing.

i.    With respect to a proposed settlement reached and approved pursuant to the Settlement Procedures, such settlement shall be binding upon the parties to the settlement and all other parties in interest as if the settlement had been approved by the Court after notice and a hearing.  The Debtors shall periodically file with the Court a Notice of Settlement of Claims (the "Settlement Notice") that lists the Proofs of Claim settled pursuant to these Settlement Procedures and the allowed amount of such Proofs of Claim.

j.    Nothing in the foregoing Settlement Procedures shall prevent the Debtors, in their sole discretion, from seeking the Court's approval at any time of any proposed settlement upon notice and a hearing.

k.    These Settlement Procedures will not apply to any compromise and settlement of a Proof of Claim where the party filing such Proof of Claim has filed multiple Proofs of Claim exceeding $1 million in the aggregate.

l.    These Settlement Procedures will not apply to any compromise and settlement of a Proof of Claim that involves an "insider," as that term is defined in section 101(31) of the Bankruptcy Code.

m.    For the avoidance of doubt, these Settlement Procedures will not apply to any compromise and settlement of a Proof of Claim that was filed in a wholly unliquidated amount.

20.    As set forth in the Cross-Border Insolvency Protocol [D.I. 990] and the Final Canadian Funding and Settlement Agreement [D.I. 2205], the Debtors have agreed to work with the Canadian Debtors, the Monitor, the Committee and the Bondholder Group to develop a cross-border claims protocol and claims resolution procedure for the resolution of certain claims filed in the Canadian Proceedings and in these proceedings, including intercompany claims, as more fully described in those documents (the "Cross-Border Claims Protocol").  For any Proofs of Claim that may be subject to the Cross-Border Claims Protocol, the Debtors acknowledge that the relief granted to the Debtors pursuant to the Order approving this Motion shall be subject to their compliance with the Cross-Border Claims Protocol, if and after it is approved by this Court.

**Basis for Relief**

21.     The Debtors seek an order granting the relief sought in this Motion pursuant to

section 105(a) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.  Section 105(a)

of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . that

is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. §

105(a).

22.     Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R.

Bankr. P. 9019(a).  Under this authority, the Third Circuit has emphasized that "[c]ompromises

are favored in bankruptcy."  Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)).  In addition, the District of

Delaware has recognized that the approval of a proposed compromise and settlement is

committed to the sound discretion of the bankruptcy court.  See In re Coram Healthcare Corp.,

315 B.R. 321, 330 (Bankr. D. Del. 2004).

23.     Before approving a settlement under Bankruptcy Rule 9019, a court must

determine whether "the compromise is fair, reasonable, and in the interest of the estate."  In re

Key3Media Group, Inc., 336 B.R. 87, 92 (Bankr. D. Del. 2005); In re Marvel Entm't Group, 222

B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997));

see also In re Nutritional Sourcing Corp., 398 B.R. 816, 833 (Bankr. D. Del. 2008).  Basic to the

process of evaluating proposed settlements is "the need to compare the terms of the compromise

with the likely rewards of litigation."  Protective Comm. for Independent Stockholders of TMT

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968).  The court's obligation is to

"canvass the issues and see whether the settlement falls below the lowest point in a range of

reasonableness." <u>Travelers Cas. & Sur. Co. v. Future Claimants Representative</u>, No. 07-2785,

2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing <u>In re Jasmine, Ltd.</u>, 258 B.R. 119 (D.N.J.

2000)); <u>Coram</u>, 315 B.R. at 330; <u>In re Pennsylvania Truck Lines</u>, 150 B.R. 595, 598 (E.D. Pa.

1992).  The court need not be convinced that the settlement is the best possible compromise in

order to approve it.  <u>Coram</u>, 315 B.R. at 330.

      24.     The Third Circuit has set out four criteria that a bankruptcy court should consider

in determining whether a settlement proposal is within the range of reasonableness (the "<u>Martin</u>

<u>Factors</u>").  The Martin Factors are:  "(1) the probability of success in litigation; (2) the likely

difficulties in collection; (3) the complexity of the litigation involved and the expense,

inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors."

<u>In re Martin</u>, 91 F.3d at 393; <u>see also</u> <u>Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.)</u>, 283

F.3d 159, 165 (3d Cir. 2002); <u>In re eToys, Inc.</u>, 331 B.R. 176, 198 (Bankr. D. Del. 2005).  The

approval of the Settlement Procedures proposed herein supports the application of these criteria.

      25.     Pursuant to Bankruptcy Rule 9019(b), the Court may authorize the Debtors to

settle certain classes of controversies without requiring separate notice and hearing with respect

to each separate controversy.  Specifically, Rule 9019(b) provides that "the court may fix a class

or classes of controversies and authorize the trustee [or debtor in possession] to compromise or

settle controversies within such class or classes without further hearing or notice."  Fed. R. Bank.

P. 9019(b).  As stated in the 1983 Advisory Committee Notes to Rule 9019, the rule "permits the

court to deal efficiently with a case in which there may be a large number of settlements."

Settlement procedures similar to those requested in this Motion have been established in this case

and in comparable chapter 11 cases in this and other Districts.  <u>See, e.g.</u>, <u>In re Nortel Networks,</u>

<u>Inc., et al.</u>, (Case No. 09-10138) (Bankr. D. Del. April 9, 2009);  <u>In re Aleris International, Inc.</u>,

et al., (Case No. 09-10478) (Bankr. D. Del. June 23, 2009)**;**  In re Armstrong World Industries, Inc., et al., (Case No. 00-4471) (Bankr. D. Del. May 31, 2002)**;**  In re NRG Energy, Inc., et al., (Case No. 03-13025) (Bankr. S.D.N.Y. Sept. 29, 2003).

26.    The Debtors respectfully submit that the Settlement Procedures proposed in this Motion are reasonable and in the best interests of the Debtors, their creditors and their estates. Moreover, the Debtors believe that the implementation of the Settlement Procedures is an appropriate exercise of the authority granted to the Court in Bankruptcy Rule 9019(b).  The Debtors believe that, in view of the number of the Proofs of Claim, many of which would ordinarily be resolved consensually, the process of drafting, filing, surveying and conducting hearings on each individual settlement of an action, as otherwise required by Bankruptcy Rule 9019(a), would be impractical and administratively burdensome for the Debtors and the Court.

27.    The Settlement Procedures contemplated herein are an efficient means of resolving the disputed Proofs of Claim while preserving notice and due process requirements where necessary.  In addition, implementation of the Settlement Procedures allows the Debtors to avoid incurring the costs, administrative burden and delay associated with preparing separate motions and obtaining separate court approval for each proposed settlement.  For the foregoing reasons, the Debtors seek approval of the proposed Settlement Procedures in order to settle disputed Proofs of Claim within the parameters set forth herein in a cost-effective and streamlined manner.

## Notice

28.    Notice of the Motion has been given via first class mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; and (iv) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## No Prior Request

29.     No prior request for the relief sought herein has been made to this or any other

court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and

the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other

and further relief as it deems just and proper.


Dated:  August 30, 2010                      CLEARY GOTTLIEB STEEN & HAMILTON LLP
      Wilmington, Delaware

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors and Debtors in Possession*