## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------X
                                              :
In re                                         :      Chapter 11
                                              :
Nortel Networks Inc., et al.,¹                :      Case No. 09-10138 (KG)
                                              :
                        Debtors.              :      Jointly Administered
                                              :
                                              :      Hearing date: September 30, 2010 at 10:00 a.m. (ET)
                                              :      Responses due: September 23, 2010 at 4:00 p.m. (ET)
---------------------------------------------------------X
```

## DEBTORS' THIRTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO LIABILITY CLAIMS, REDUCE AND ALLOW CLAIM, AND REDUNDANT BOND CLAIMS)

**TO THE CLAIMANTS LISTED ON <u>EXHIBITS A-C</u> ATTACHED TO THIS OBJECTION:**

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED ON <u>EXHIBITS A-C</u> ATTACHED TO THIS OBJECTION.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON <u>EXHIBITS A-C</u>.**

- **PLEASE NOTE THAT CLAIMANTS' NAMES MAY APPEAR IN MULTIPLE EXHIBITS ATTACHED TO THIS OBJECTION. CLAIMANTS SHOULD CHECK ALL EXHIBITS FOR THEIR NAMES.**

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to those certain claims listed on the exhibits attached hereto and incorporated by reference, namely **Exhibit A, Exhibit B** and **Exhibit C** (collectively, "Exhibits A-C").  In support of this Objection, the Debtors submit the Declaration of John Ray in Support of the Debtors' Thirteenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claim, and Redundant Bond Claims) (the "Ray Declaration"), attached hereto as **Exhibit D** and incorporated by reference, and respectfully state as follows:

## Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

## Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.      On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]      The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel

control of individuals from Ernst & Young LLC (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"), which consist of liquidation proceedings during which NNSA was originally authorized to continue to operate as a going concern for an initial period of three months, which period was subsequently extended and the liquidation operations were temporarily suspended on October 1, 2009.  On March 25, 2010, the French Court ended the suspension of the liquidation operations.  In accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA, although a French administrator and a French liquidator have been appointed and are in charge of the day-to-day affairs and continuing business of NNSA in France.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the

---

Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited, filed an application with the Tel-Aviv-Jaffa District Court, pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner

has been appointed in the Debtors' cases.

10.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc.

("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for

relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders

approving the joint administration and consolidation of NN CALA's chapter 11 case with the

other Debtors' chapter 11 cases for procedural proposes [D.I. 1098], and applying to NN CALA

certain previously entered orders in the Debtors' chapter 11 cases [D.I. 1099].  From time to

time, other Nortel affiliates have sought and may seek relief through the commencement of

creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.      Prior to its significant business divestitures, Nortel was a global supplier of end-

to-end networking products and solutions serving both service providers and enterprise

customers.  Nortel's technologies spanned access and core networks and supported multimedia

and business-critical applications.  Nortel's networking solutions consisted of hardware, software

and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed,

serviced and supported these networking solutions worldwide.

12.      Additional information regarding the Debtors' corporate structure and business

and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in

Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

---

[5]      Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day
Declaration.

C.      **Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632].  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.      On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 PM (Eastern Time) as the general bar date for filing proofs of claim or interests [D.I. 1280].  On December 2, 2009 this Court entered an order fixing January 25, 2010 at 4:00 PM (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15.      On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].

**D.**     **Bar Date, Schedules and Notice**

16.     On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed

their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I.s 616-627, 801-

810].  On September 11, 2009, the Debtors filed schedules and statements for NN CALA (the

"NN CALA Schedules") [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other than NN

CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of

Financial Affairs (together with the NN CALA Schedules, referred to as the "Schedules") [D.I.s

1811-1825].

17.     On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280]

establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last

date for all creditors holding a "claim" (as such term is defined in section 101(5) of the

Bankruptcy Code) against one or more of the Debtors (other than NN CALA) to file and serve a

written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.

Notice of the General Bar Date was provided by mail and publication in accordance with the

procedures outlined in the Bar Date Order.  On December 3, 2009, the Court entered an order

[D.I.  2059] establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar

date for all creditors holding a claim against NN CALA to file and serve written proofs of claim.

**E.**     **The Claims Resolution Process**

18.     In the ordinary course of business, the Debtors maintain books and records (the

"Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts

owed to their creditors.

19.     The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and

maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors.  As

of June 30, 2010, the Claims Register consisted of more than 7,300 proofs of claim.  The Debtors

7

and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors also are comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

20.     This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors will continue to file omnibus objections to such categories of claims if and where warranted.  This Objection is one such omnibus objection.

21.     On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

## **Relief Requested**

22.     For the reasons set forth below, the Debtors object to each of the claims identified in **Exhibits A-C**.  By this Objection, the Debtors respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 reducing, modifying or disallowing in full, as applicable, the claims identified in

**Exhibits A-C**:

    a.     Each claim identified in **Exhibit A** (the "No Liability Claims") should be disallowed as a claim for which the Debtors are not liable because either (i) the claim is barred by the applicable statute of limitations (the "Barred Claims") or (ii) the claim asserts a liability that is not a liability of the Debtor identified in the proof of claim (if any) or a liability of any other Debtor (the "Non-Debtor Claims").

    b.     The claim identified in **Exhibit B** (the "Reduce and Allow Claim") should be reduced to the amount specified in **Exhibit B** and modified as wholly unsecured because the claimant retained a security deposit, which should reduce the claimant's total lease rejection damages by the amount of such security deposit.

c.      The claims identified in **Exhibit C** (the "Redundant Bond Claims") should be disallowed as claims for which the Debtors are not liable because (i) these claims relate to an indenture that restricts bondholders from pursuing remedies that are being pursed by the indenture trustee, and (ii) the indenture trustee has filed a claim on behalf of the bondholders and therefore claimant is not entitled to assert a separate claim with respect to the indenture.

### Basis for Relief

23.     Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

24.     When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the claimant.  Id.

## A.      No Liability Claims (Exhibit A)

25.     The Debtors object to the No Liability Claims (comprising the Barred Claims and Non-Debtor Claims) identified in **Exhibit A** because each asserts a claim for which there is no amount due and owing by any Debtor to the claimant.

9

26.     With respect to each of the No Liability Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules, and the proof of claim, including any supporting documentation provided by the claimants, and have determined that the No Liability Claims are claims for which none of the Debtors is liable.

27.     The Barred Claims should be disallowed because, based on careful review of the applicable statutes, the Books and Records, the Schedules, and the proofs of claim, including any supporting documentation provided by the claimants, the Debtors have determined that each claim is barred by the applicable statute of limitations and hence for such claims there is no amount due and owing by any Debtor to the claimants.

28.     The Non-Debtor Claims should be disallowed because, based on careful review of the Books and Records, the Schedules, and the proofs of claim, including any supporting documentation provided by the claimants, the Debtors have determined that each claim asserts a liability that is not a liability of the Debtor identified in the proof of claim (if any) or a liability of any other Debtor.

29.     For the reasons stated above, the No Liability Claims do not meet the standards for *prima facie* validity, and the Debtors seek entry of an order disallowing and expunging the No Liability Claims in their entirety.

**B.      Reduce and Allow Claim (Exhibit B)**

30.     The Debtors object to the Reduce and Allow Claim identified in **Exhibit B** because the claimant did not reduce its total lease rejection damages by the amount of the security deposit retained by the claimant.

31.     The Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the Reduce and Allow Claim, including the supporting

documentation provided by the claimant, and have determined that the Reduce and Allow Claim asserts a liability in excess of the amount reflected in the Books and Records as due and owing to the claimant.

32.     The Reduce and Allow Claim should be reduced to $30,082.81 and modified as wholly unsecured because the claimant retained a security deposit in the amount of $5,221.60. Accordingly, the claimant's total lease rejection damages should be reduced by the amount of the security deposit to $30,082.81.  See, e.g., In re PPI Enters. (U.S.), Inc., 324 F.3d 197, 208-12 (3d Cir. 2003) (holding that a letter of credit should be treated analogously to a security deposit and applied against the landlord's total lease rejection damages); Oldden v. Tonto Realty Corp., 143 F.2d 916, 920-21 (2d Cir. 1944) (holding that a security deposit should be applied against a landlord's lease rejection damages).  Moreover, the Debtors have no liability to the claimant other than the lease rejection damages set forth in the claimant's proof of claim.  If the Reduce and Allow Claim is not reduced as requested herein, the claimant will receive a disproportionately large distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and other stakeholders.

## C.     Redundant Bond Claims (Exhibit C)

33.     The Debtors object to the Redundant Bond Claims identified in **Exhibit C** because the claims relate to an indenture that restricts bondholders from pursuing remedies that are being pursed by the indenture trustee and (ii) the indenture trustee has filed a claim on behalf of the bondholders and therefore claimant is not entitled to assert a separate claim with respect to the indenture.  Accordingly, the Redundant Bond Claims should be disallowed and expunged in their entirety.

34.     The surviving claim identified in **Exhibit C** is the claim of the indenture trustee for the Bonds, and the Debtors reserve all of their rights to object to this claim on any grounds at any time.

### Separate Contested Matters

35.     To the extent that a response is filed regarding any claim identified in **Exhibits A-C** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

### Responses to Omnibus Objection

36.     To contest this Objection, a claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (Eastern Time) on September 24, 2010** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street, Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Deborah M. Buell and Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott

37.     Every Response to this Objection must contain, at a minimum, the following information:

   a.     A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

   b.     The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

   c.     The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

   d.     Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

   e.     The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the Claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

38.     If a claimant fails to file and serve a timely Response by the Response Deadline, the Debtors may present to the Court an appropriate order disallowing the claim, without further notice to the claimant or a hearing.

## Replies to Responses

39.     The Debtors may, at their option, file and serve a reply to any response so that it is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days prior to the Hearing.

## Adjournment of Hearing

40.     The Debtors reserve the right to seek an adjournment of the Hearing on any Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be

noted on the notice of agenda for the Hearing, and such agenda will be served on the affected

claimant by serving the person designated in the Response.

## Reservation of Rights

41.     The Debtors expressly reserve the right to amend, modify or supplement this

Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed

or overruled, the Debtors reserve the right to object to each of the claims on any other grounds

that the Debtors discover or elect to pursue.  This Objection sets out substantive objections to the

claims identified in **Exhibits A-C**.  The Debtors reserve their right to assert non-substantive

and/or one or more other substantive objections to the claims identified in **Exhibits A-C** at a

later time.

42.     Notwithstanding anything contained in this Objection or the attached exhibits,

nothing herein shall be construed as a waiver of any rights that the Debtors may have to (a)

commence avoidance actions under the applicable sections of the Bankruptcy Code, including,

but not limited to, sections 547 and 548 of the Bankruptcy Code, against the claimants subject to

this Objection, (b) enforce the Debtors' rights of setoff against the claimants relating to such

avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy Code of

claims of the claimants that are subject to such avoidance actions.

43.     The modification and disallowance of the claims in **Exhibits A-C** in these chapter

11 cases shall be without prejudice to the rights and defenses of the Canadian Debtors and the

Monitor with respect to any related claims filed in the Canadian Proceedings.

## Relief from Amended Bankruptcy Rule 3007

44.     Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of*

*the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief

United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on

14

November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007, as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

**No Prior Request**

45.      No prior request for the relief sought herein has been made to this or any other court.

**Notice**

46.      Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) the counsel to the Committee; (iii) the counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibits A-C** and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as **Exhibit E** reducing, modifying or disallowing in full each of the claims identified in **Exhibits A-C** as requested herein, and (ii) grant such other and further relief as is just and proper.

Dated: August 31, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-3505
Facsimile:  (212) 225-3999

    - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP


*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Andrew R. Remming (No. 5120)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors-in-Possession*