# APPENDIX "G"

THIS AGREEMENT made as of the 1st day of January, 1980.

B E T W E E N:

NORTHERN TELECOM LIMITED,
a corporation incorporated under
the laws of Canada, and having
its Registered Office in the
City of Montreal, Province of
Quebec,

(hereinafter referred to as the
"Corporation")

A N D:

MONTREAL TRUST COMPANY,
a company incorporated pursuant
to the laws of Quebec and having
its Head Office at the City of
Montreal, therein,

(hereinafter referred to as the
"Trustee")

WHEREAS:

1.      The Corporation has established for the benefit of
certain of its employees and the employees of such affiliated or
subsidiary Corporations as the Corporation may designate, certain
Health and Welfare plans, and such other similar plan or plans as
the Corporation may from time to time place in effect, as
follows:

a)      a Health Care Plan;

b)      a Management Long Term Disability Plan;

c)      a Union Long Term Disability Plan;

d)      a Management Survivor Income Benefit Plan;

e)      a Management Short Term Disability Plan;

2

1)    a Group Life Insurance Plan;

all of which are hereinafter collectively referred to as the "Health and Welfare Plan".

2.    To give effect to the Health and Welfare Plan it is necessary to establish a trust fund to be known as the "Health and Welfare Trust".

Now therefore in consideration of the premises and the mutual covenants herein contained the Corporation and the Trustee, hereby covenant and agree as follows:

ARTICLE 1 - DEFINITIONS

1.    The term "Trustee" shall mean the Trustee herein named its successors and assigns and shall include the person, legal entity or corporation to whom the Trustee may delegate such powers as are necessary for the sound and efficient administration of the Trust Fund;

2.    The term "Benefits" as used herein shall mean payment benefits as determined under the Health and Welfare Plan.

3.    The term "Eligibility Requirements" as used herein shall mean the rules, regulations and procedures established from time to time by the Corporation for determining the eligibility of Employees for Benefits.

4.    The term "Employee" shall mean those active and retired employees of the Corporation which

designated affiliated or subsidiary corporations
which have adopted the Health and Welfare Plan,
including dependents as defined in Schedule A, on
whose behalf contributions are or have been made
to the Trust Fund and who are eligible for
benefits under the Health and Welfare Plan.

5.   The term "Employer's Contribution" as used herein
shall mean payments required to be made by the
Corporation and by designated affiliated or
subsidiary corporations to the Trust Fund to
enable the Trustee to discharge the obligations
arising under the Health and Welfare Plan.

6.   The term "Trust Fund" as used herein shall mean
all of the assets of the Health and Welfare
Trust including all funds received by way of
contributions from the Corporation and those of
its designated affiliated or subsidiary
corporations in accordance with the provisions of
the Health and Welfare Plan and of this Trust
Agreement, and all Employees' contributions
together with all profits, increments, and
earnings thereon.

ARTICLE II – TRUST FUND:

1.   The Trust Fund is created for the purpose of
providing the Health and Welfare Plan benefits
for the benefit of the Employees.

2.   All payments made to the Trustee from time to
time by the Corporation and designated affiliated
or subsidiary corporations and by the employees,
together with all profits, increments and

4

earnings thereon, shall be irrevocable and
constitute upon receipt by the Trustee, the Trust
Fund to be administered by the Trustee in
accordance with the terms of this Trust
Agreement, the Health and Welfare Benefit Plan
and the Eligibility Requirements.

3. The Trustee shall, from time to time, on the
written directions of the officer of the
Corporation so designated by its Board of
Directors, or failing such designation, by the
Secretary of the Employees' Benefit Committee of
the Corporation, or a Plan Administrator
appointed by the Corporation, make payments out
of the Trust Fund to such persons in such manner and
in such amounts as may be specified in such
directions to the Trustee. In each instance, the
written directions shall be deemed to include a
certification to the Trustee that such directions,
and the payments to be made pursuant thereto are
in accordance with the terms of the Health and
Welfare Plan, which certification shall con-
stitute full and complete protection to the
Trustee in complying with such directions.

## ARTICLE III - TRUSTEE

1. The Trustee, who shall also be known as the
Trustee of the Health and Welfare Trust, hereby
accepts the trust created by the Trust Agreement
and agrees to hold, invest, distribute and
administer the Trust Fund in accordance with the

8

terms and conditions of the Health and Welfare Plan and this Trust Agreement.

2.   The Trustee is authorized and empowered:

   a)   To sell or otherwise dispose of any property held by it;

   b)   To exercise all voting and other rights in respect of any stocks, bonds, properties or other investments held in the Trust Fund;

   c)   To execute all documents of transfer and conveyance that may be necessary or appropriate to carry out the powers herein granted;

   d)   To make payments out of the Trust Fund and to reimburse itself for disbursements incurred pursuant to the exercise of the authorities and powers herein set forth, unless paid by the Corporation;

   e)   All monies, securities for money and other assets from time to time held by the Trustee may be in negotiable form or recorded or registered in the name of the Trustee or in the name of its nominee;

   f)   When instructed to do so by the Corporation, to commence, maintain, defend, adjust and settle suits and legal proceedings and to represent the Trust Fund at any such suits or proceedings at law or otherwise for the enforcement or realization of any investment;

6

provided that the Trustee shall not be
obliged or required to do so unless it has
been first indemnified to its satisfaction
against all expenses and liabilities
sustained or anticipated by it, and the
Corporation hereby agrees so to indemnify the
Trustee.

g)  In general, in the carrying out of its duties
and responsibilities under the Trust
Agreement to exercise the general powers
accorded by law to trustees.

h)  The Trustee shall hold, invest and reinvest
the principal and income.  The Trustee may
keep the investments of the Trust Fund wholly
or partly, in its principal office or in any
one or more of its branches in any Province
of Canada.  Unless otherwise directed by the
Corporation, the Trustee shall make only such
investments as comply with the limitations
and restrictions imposed by applicable
federal and provincial laws and regulations
respecting the investments of trust funds.

Notwithstanding the foregoing, the
Corporation may, at any time, or from time to
time, direct the Trustee as to specific or
general investment of the Trust Fund, and the
Trustee shall comply with such directions.

Whenever the Trustee is required or
authorized to take any action pursuant to the
provisions of this paragraph upon the
request, direction or authorisation of the

7

Corporation, such request, direction or
authorization shall be a sufficient
protection to the Trustee if contained in a
writing signed by any person authorized by
resolution of the Corporation's Board of
Directors to sign such a writing. The
Corporation will indemnify and hold harmless
the Trustee of and from any liability or
expense incurred by it arising out of any
payment out of or disposition of the Trust
Fund made by the Trustee pursuant to any such
request, direction or authorization of the
Corporation;

i)  The Trustee may hold such part of the Trust
Fund uninvested as the Trustee may deem
advisable in the best interests of the Trust
Fund for the proper administration thereof.

j)  The Trustee may keep such portion of the
Trust Fund, as may from time to time be
deemed by it to be in the best interests of
the Trust Fund, on deposit in a chartered
bank or Government Savings Bank in Canada at
such rate of interest, if any, as may be
allowed thereon, or on demand deposit at an
agreed interest rate with any Trust Company
(including the Trustee) then licensed under
the laws of Canada or of any Province thereof
to carry on business as such.

k)  Notwithstanding any other provision of this
Agreement and subject to clause 2.(h) hereof,
the Trustee will invest and reinvest all or
such portion of the Trust Fund as the

9.

Corporation may from time to time direct in
writing in the Northern Telecom Group Trust
Fund established by the Company and the
Trustee pursuant to an Agreement made and
entered into as of the 1st day of January,
1980.

1)    (i)  the Trustee shall, in accordance with
           the written direction of the Corporation
           from time to time invest all or any part
           of the Trust Fund jointly with assets
           belonging to any other trust funds
           maintained under a pension plan
           maintained with the Trustee by the
           Corporation or by any Corporation
           associated, subsidiary to or affiliated
           with the Corporation, and may jointly
           invest and reinvest on behalf of the
           Trust Fund and such other trust or
           trusts, allocating undivided shares or
           interests in such investments or
           reinvestments to the two or more trusts
           in accordance with their respective
           interests.    To facilitate the
           administration of such joint investments
           or reinvestments, the Trustee shall
           identify the undivided shares or
           interests by way of "units" which shall
           represent the undivided ownership
           interest of each participating trust
           fund in the jointly owned investments;

      (ii) the Trustee shall invest and reinvest
           all or any portion of the Trust Fund in
           accordance with the written direction of

9

the Company in any "Pooled Fund" which
phrase shall mean in this Agreement any
pooled trust fund maintained by the the
Trustee or one of its associated or
affiliated Corporations licensed to do
business in Canada as a Trustee. Such
written direction shall specify that
such portion of the Trust Fund to be
invested in such Pooled Fund shall be
invested as part of one particular
section of the Pooled Fund or as parts
of two or more sections of the Pooled
Fund in such proportions as is set out
in such direction, failing which
specification the same shall be invested
as part of one particular section of the
Pooled Fund in such proportion as the
Trustee deems advisable.

m) The Trustee may, with the consent of the
Corporation, borrow money in such amounts and
upon such terms and conditions as it shall
deem advisable and pledge any securities or
other property for the repayment of any such
loan.

n) The expenses incurred by the Trustee in the
performance of its duties, and such
compensation to the Trustee as may be agreed
upon in writing from time to time between the
Corporation and the Trustee, shall be paid by
the Corporation. All taxes of any and all
kinds whatsoever that may be levied upon or
in respect of the Trust Fund shall be paid

10

from, or be the responsibility of the Trust
Fund.

o)  The Trustee shall not be liable for the
    making, retention, or sale, in good faith, of
    any investment or reinvestment made by it as
    herein provided, nor for any loss to or
    diminution of the Trust Fund, except due to
    the negligence, wilful misconduct or lack of
    good faith of the Trustee, its servants,
    agents or employees.

p)  The Trustee shall keep accurate and detailed
    accounts of all investments and transactions
    made by it pursuant to this Agreement and,
    shall keep separate records for each of the
    separate Plans.  The accounts and records
    relating thereto shall be open to inspection
    at all reasonable times by any person
    designated by the Corporation.  Within ninety
    (90) days following the close of each fiscal
    year of the Trust Fund, or within ninety (90)
    days after the removal or resignation of the
    Trustee as provided for in paragraph (q)
    hereof, the Trustee shall file with the
    Corporation a statement setting forth all
    investments and cash transactions effected by
    it during such fiscal year or during the
    period from the close of the last fiscal year
    to the date of such removal or resignation.
    Upon the expiration of ninety (90) days after
    the date of filing such annual or other
    statement, but subject to the provisions of
    paragraph (q) hereof, the Trustee shall be
    released and discharged from all liability

11

and accountability to anyone with respect to
its acts and transactions during the period
covered by the statement. The Trustee shall
from time to time make such reports and
furnish such information concerning the trust
to the Corporation as the Corporation may in
writing request.

g) The Trustee may be removed by the Corporation
at any time upon ninety (90) days notice in
writing to the Trustee. The Trustee may
resign at any time upon ninety (90) days
notice in writing to the Corporation. Upon
such removal or resignation of the Trustee,
the Corporation shall, within said ninety
(90) day period, appoint a successor trustee
or trustees who shall have the same powers
and duties as those conferred upon the
Trustee hereunder and, upon acceptance of
such appointment by the successor trustee or
trustees, the Trustee shall assign, transfer
and pay over to such successor trustee or
trustees the funds and properties and
accounts then constituting the Trust Fund.
The Trustee is authorized, however, to reserve
such sum of money, as may at such time be
reasonably owing to it for payment of its
fees and expenses and any balance of such
reserve remaining after the payment of such
fees and expenses shall be paid over to the
successor trustee or trustees within thirty
(30) days after the date of such removal or
resignation.

h) The Trustee shall not be bound to act in

12

accordance with any direction or request of
the Corporation or of its Board of Directors
until a duly authenticated copy of the
instrument or resolution containing such
direction or request shall have been
delivered to the Trustee, and the Trustee
shall be empowered to act upon and shall be
fully protected by the Corporation in acting
in accordance with any direction or request
of the Corporation upon receipt of any such
copy purporting to be authenticated and
believed by the Trustee to be genuine. Any
direction, request, certificate or other
instrument to be made or given by the
Corporation under any of the provisions
hereof shall, unless otherwise provided
herein, be deemed sufficiently authenticated
if certified by the Secretary or an Assistant
Secretary of the Corporation.

4) The Trustee may appoint a qualified person,
firm or corporation to act as administrator
of the Trust Fund to determine on a sound
actuarial basis the amounts of Employer's
contributions required in order to fund
adequately the Health and Welfare Plan and to
advise and carry out administrative pro-
cedures in accordance with the Health and
Welfare Plan and the Eligibility
Requirements.

## ARTICLE IV – EMPLOYER'S CONTRIBUTIONS

1. The Corporation and its designated affiliated or
subsidiary corporations agree to make Employer's

13

contributions to the Trust Fund in amounts suf-
ficient to pay any claims which may be asserted
against the Trust Fund as a result of the
administration of the Health and Welfare Plan,
and as may otherwise be required from time to
time by the Trust for the purposes of the Health
and Welfare Plan, as determined by the Trustee on
a sound actuarial basis.

2.     The Trustee shall determine or cause to be
determined, on a sound actuarial basis from time
to time, and in any event, once every calendar
year, the level of contributions to the Trust
Fund necessary to fund adequately the Health and
Welfare Plan.

3.     Subject to paragraphs (1) and (2) hereof, the
Corporation and its designated affiliated or
subsidiary corporations shall be responsible for
the adequacy of the Trust Fund to meet and
discharge any and all payments and liabilities
under the Health and Welfare Plan.

ARTICLE V - NOTICES

1.     Any notice provided for herein to be given by one
party to another shall be in writing and shall be
effectively given if delivered personally or by
telegram or prepaid registered mail addressed to
the Trustee at:

Montreal Trust Company
Pension Trust Administration
Place Ville Marie
Montreal, Quebec   H3B 3L8

14

and if to the Corporation at:

Northern Telecom Limited
Box 458, Station A
Mississauga, Ontario L5A 3A7

Attention: Director, Corporate Compensations

Any notice so given shall be deemed to have been
given if delivered personally or given by prepaid
registered mail on the third business day
immediately following the date of mailing of such
notice.

ARTICLE VI - AMENDMENT AND TERMINATION

1.    This Trust Agreement may be amended in any
      respect from time to time by mutual agreement of
      the Corporation and the Trustee except that no
      amendment shall divert the Trust Fund or any part
      thereof as constituted immediately prior to such
      amendment to a purpose other than the provision
      of benefits as herein defined.

2.    Upon sixty (60) days prior written notice to the
      Trustee, the Corporation may terminate its
      obligation to make Employer's contributions in
      respect of benefits after the date of written
      notice to the Trustee (hereinafter called the
      "Notice of Termination").  Upon receipt of the
      Notice of Termination the Trustee shall within
      one hundred twenty (120) days determine and
      satisfy all expenses, claims and obligations
      arising under the terms of the Trust Agreement
      and Health and Welfare Plan up to the date of the
      Notice of Termination.  The Trustee shall also

15

determine upon a sound actuarial basis, the
amount of money necessary to pay and satisfy all
future benefits and claims to be made under the
Plan in respect to benefits and claims up to the
date of the Notice of Termination.    The
Corporation and the designated affiliated or
subsidiary corporations shall be responsible to
pay to the Trustee sufficient funds to satisfy
all such expenses, claims and obligations, and
such future benefits and claims.    The final
accounts of the Trustee shall be examined and the
correctness thereof ascertained and certified by
the auditors appointed by the Trustee.  Any funds
remaining in the Trust Fund after the satisfac-
tion of all expenses, claims and obligations and
future benefits and claims, arising under the
terms of the Trust Agreement and the Health and
Welfare Plan shall revert to the Corporation.

ARTICLE VII - GOVERNING LAW AND SEVERABILITY

1.    This Trust Agreement and all amendments thereto
shall be administered, construed and enforced in
accordance with the laws of the Province of
Ontario.

2.    If any provision of this Trust Agreement, the
Health and Welfare Plan, the Eligibility
Requirements or the rules and regulations made
pursuant thereto, or any action taken in the
administration of the funds of the Trust Fund, or
the Health and Welfare Plan are held to be
illegal or invalid for any reason, such
illegality or invalidity shall not affect the
remaining portions of this Trust Agreement, the

16

Health and Welfare Plan, the Eligibility
Requirements, or the rules and regulations made
pursuant thereto unless such illegality or
invalidity prevents accomplishment of the
purposes of the trust hereby created. In the
event of any such holding the parties will
immediately commence negotiations to remedy any
such defect.

## ARTICLE VIII - CLAIMS BY BENEFICIARIES

1.    No person entitled to benefits under the Plan
shall have any claim against the Trustee or the
Trust fund except by or through the Corporation,
and the Corporation shall indemnify and save the
Trustee harmless from any such claim including
the costs of defense.

## ARTICLE IX - MISCELLANEOUS

1.    Wherever in this Agreement the word "Corporation"
is used, it shall be deemed to mean and shall
include the Corporation's successor and any other
Corporation with which the Corporation may have
amalgamated, whether under its present name or
any other name.

To the extent required by any Federal or
Provincial law or regulation that are or might be
promulgated from time to time, the Corporation
shall be the administrator of the Plan and the
duties of the Corporation as such administrator
hereby are delegated to the Trustee to the extent
provided in this Agreement.

17

A copy of the Health and Welfare Plan initialled
by the Parties may be annexed to this Agreement
and may be amended from time to time and when so
annexed shall form part hereof, but no terms or
provisions of this Agreement shall be construed
or interpreted as imposing upon the Trustee any
obligation to see to the administration of or the
carrying out of any of the terms or provisions of
the Plan.

Any corporation resulting from any merger or
consolidation to which the Trustee may be a party
or succeeding to the trust business of the
Trustee, or to which substantially all the trust
assets of the Trustee may be transferred while
the Trustee continues to act as Trustee hereunder
shall be the successor to the Trustee hereunder
without any further act or formality with like
effect as if such successor trustee had origin-
ally been named trustee herein.

IN WITNESS WHEREOF, the parties have caused this
Agreement to be executed by their respective officers thereto
duly authorized and their corporate seals to be hereunto affixed
and attested as of this 1st day of January, 1980.

NORTHERN TELECOM LIMITED

Per: _____
        Vice President

Per: _____
        Secretary

MONTREAL TRUST COMPANY

Per: _____

Per: _____

APPENDIX A

to the

TRUST AGREEMENT

Between:

NORTHERN TELECOM LIMITED

and

MONTREAL TRUST COMPANY

1. Scope of Appendix

This Appendix sets forth the rules and regulations governing the following Health and Welfare Benefits (hereinafter collectively called "the Plan"):

(a) Survivor Income Benefit (SIB)
(b) Comprehensive Health Care Benefit (CHC)
(c) Long Term Disability Benefit (LTD).

The Plan applies to those employees of Northern Telecom Limited and its subsidiaries whose benefits are not negotiated under a Collective Labour Agreement.

2. Definitions:   In this Plan,

(a) "Administrator" means The Mutual Life of Canada or such other person or corporation as may be duly appointed as Administrator under the terms of the Trust Agreement;

(b) "Corporation" and "Company" mean Northern Telecom Limited and those of its subsidiaries and affiliates to which the Plan applies;

(c) "Plan" means Survivor Income Benefit (SIB), Comprehensive Health Care Benefit (CHC) and Long Term Disability Benefit (LTD) and such other Health and Welfare Benefits as the Corporation may introduce pursuant to the Trust Agreement;

(d) "effective date" means January 1, 1980 and as specifically noted thereafter.

(e) "employee" means a permanent full-time employee of the Corporation as designated in (1) above.

(f) "basic monthly salary" means the monthly rate of the regular remuneration paid to the employee by the Corporation at the time of death or commencement of total disability, excluding cost of living (COLA) and other allowances where applicable, bonuses and overtime;

(g) "basic annual salary" means the annual rate of the regular remuneration paid to the employee by the Corporation at the time of death or commencement of total disability, excluding cost of living (COLA) and other allowances where applicable, bonuses and overtime;

-1-

(h) "eligible dependents" shall have the meaning defined in each individual benefit.

(i) any reference to the male gender shall also refer to the female gender, as appropriate.

3. Participation in the Plan

(a) An employee and any eligible dependents will automatically participate in the CHC benefit on the first of the month following the month that the employee commences employment with the Company, unless the benefit is deliberately waived by the employee due to spousal coverage.

(b) An employee will automatically participate in the LTD benefit on the date that the employee completes three months of continuous employment with the Company.

(c) An employee may apply to participate in the SIB on the later of:

   (i) the date that the employee commences employment with the Company if the employee has eligible dependents on that date, or

   (ii) the date that the employee acquires eligible dependents.

Application to participate shall be made on forms prescribed by the Corporation within 31 days of the above dates.

If application is made later than 31 days, the employee must submit, without expense to the Administrator or the Corporation evidence of good health satisfactory to the Administrator.  The SIB will be effective on the date of the approval of the application.

4. Continuation of Participation

(a) Except as provided below, an employee (and eligible dependents where applicable) will continue to participate in this Plan until the employee's employment with the Corporation is terminated.

(b) An employee (and eligible dependents where applicable) will continue to participate in this Plan while the employee is in receipt of Sickness & Accident or LTD benefits under any plan provided by the Corporation.  Improvements introduced after commencement of LTD benefits will not apply.

(c) An employee (and eligible dependents where applicable) may be allowed to continue to participate in this Plan for all benefits except LTD while the employee is on a temporary leave of absence, if such leave is approved by the Corporation and provided applicable premiums are paid.

(d) An employee (and eligible dependents where applicable) will continue to participate in the CHC benefit until the end of the month in which the employee's employment is terminated.

(e) Dependents of a deceased employee will continue to participate in the CHC benefit until the end of the month in which the employee has died, and thereafter for as long as their dependency under the Plan exists, provided they pay the applicable premiums.

-2-

5. Currency

Payment for benefits under this plan will be made in lawful money of Canada.

6. Payment of Claims

(a) Where payments for benefits are payable to a person who, in the opinion of the Administrator, is incapable of managing his or her own affairs due to physical or mental disability, payment of benefits when permitted by law, not in excess of such amount as may be prescribed by law, may be made to any person appearing on evidence satisfactory to the Administrator, to be equitably entitled thereto by reason of having incurred expenses for the maintenance, care or treatment of the employee or dependent.

(b) Any action or proceedings for the recovery of any benefit pursuant to the Plan shall be commenced not earlier than 60 days after, and not later than one year after, the date on which proof of claim is received by the Administrator.

(c) The Administrator reserves the right to disallow any claim or claims where in the opinion of the Administrator such claims are not accompanied by the necessary receipts, invoices, statements or other forms, documents or proof satisfactory to the Administrator.

I SURVIVOR INCOME BENEFIT (SIB)

1. Definitions

In this benefit,

(a) "spouse" means,

    (i) the person who is legally married to the employee, or

    (ii) the person of the opposite sex of the employee who, at the time the right to claim a benefit arises, is cohabiting with the employee, and has been so cohabiting either,

        (a) for 36 consecutive months immediately prior thereto in the event marriage is prohibited by law, or

        (b) for 12 consecutive months immediately prior thereto in the event marriage is not so prohibited, and

        (c) in both situations the co-habitant is publicly represented as the husband or wife of the employee.

(b) "eligible dependents" means the spouse of the employee, and

    (i) any unmarried, natural or legally adopted children of the employee who are financially dependent on the employee or spouse; and are

-3-

Date of issue: 1982 11 19

(a) under the age of 18 years, or

(b) under the age of 25 years and in full-time attendance at an accredited school, college or university, or

(c) physically or mentally incapable of self-support an became so before reaching the age of 21 years.

(ii) for the purposes of the SIB children include,

(a) any children of the employee born posthumously within 301 days after the death of the employee, and

(b) any children in the process of being adopted at the time of the employee's death, if such adoption is completed within one year after the date of the employee's death.

(c) "occupational accident" means a fortuitous event causing injury or illness to the employee and occurring while the employee is carrying out his duties.

2. Calculation of Amount of Benefit

(a) Spouse Benefit: On the death of an employee an eligible
*correction dependent who is a spouse shall be entitled to a monthly payment of an amount calculated in accordance with the following formula:

(i) 50% of either the employee's basic annual salary, or, the Yearly Maximum Pensionable Earnings in effect as defined and calculated under the Canada/Quebec Pension Plan at the date of death, whichever is the lesser, divided by 12, and

(ii) 25% of the employee's basic annual salary in excess of the Yearly Maximum Pensionable Earnings in effect as defined and calculated under the Canada/Quebec Pension Plan at the date of death, divided by 12.

In addition to any other benefit, where the death of the employee results from an occupational accident, the spouse shall be entitled to a lump sum payment equal to the employee's basic annual salary.

(b) Child Benefit: On the death of an employee, an eligible dependent who is a child shall be entitled to:

(i) a monthly payment of an amount equal to 10% of the employee's basic monthly salary, payable for each dependent child, to a maximum of two children. If the employee dies leaving dependent children but not leaving a spouse, the amount of the Child Benefit will be 20% of the employee's basic monthly salary payable for each dependent child, to a maximum of two children.

Revised 1983 04 15

(c) Reduction:  The SIB will be reduced by the amount of the Survivor's Pension, including benefits for the two youngest dependent children under 18 years of age, to which the spouse is entitled as defined and calculated under the Canada/Quebec Pension Plan.

Increases in the Survivor's Pension subsequent to the death of the employee including benefits for the two youngest children under 18 years of age, payable under the Canada/Quebec Pension Plan shall not further reduce the amount of the monthly benefit.

*New    Effective January 1, 1983, eligible employees in the province of Quebec only, who continue working beyond the age of 65 and subsequently die while in active employment, shall have their SIB reduced by the equivalent amount of the Spousal Pension under the Managerial and Non-Negotiated Pension Plan.

In no event shall the SIB payable be less than an amount equal to 25% of the employee's basic monthly salary.

3. Payment of SIB

(a) On the death of an employee the Administrator shall pay:

  (i) to the spouse, the amount of the Spouse Benefit as calculated, commencing on the first of the month following the date of death of the employee and continuing monthly thereafter until the death of the spouse;

  (ii) to the dependent children, or if the children are under the age of majority, then as permitted or required by law, either to the parent or guardian of such children, or to the Executor of the Last Will of the employee, or to a Court of competent jurisdiction, the amount of the Child Benefit as calculated, commencing on the first of the month following the date of death of the employee, and continuing monthly thereafter until the child is no longer an eligible dependent.

4. Health Care Benefits during SIB

There shall be provided to the eligible dependent(s) for a period of 60 consecutive months following the death of an employee, Company-paid provincial health insurance coverage, in provinces where premiums apply.  Provision shall also be made for the eligible dependent(s) to participate in the Comprehensive Health Care plan, at their option and at their own expense, for as long as the SIB is being paid.

5. Guaranteed Period of Payment

(a) Where the spouse, while in receipt of payments under the SIB dies within 60 months after the date of death of the employee, then as permitted or required by law the Spouse Benefit as calculated shall be paid either to the dependent children, if any, or if the dependent children are not of the age of majority, to the guardian of such children, or to the Executor of the Last Will of the employee, or to a Court of competent jurisdiction, for a period not to exceed 60 months after the date of death of the employee.

(b) If there are no dependent children then the Spouse Benefit as calculated shall be paid monthly to the estate of the deceased spouse for a period not to exceed 60 months from the date of death of the employee.

-5-

Revised 1983 04 15

6. Proof of Claim

(a) A claim for SIB shall be made in writing to the Administrator within three months after the date of death of the employee or spouse as the case may be, and shall be accompanied by such proof of death, eligibility and entitlement as the Administrator may deem necessary.

(b) The Administrator shall require the person claiming this SIB to submit proof that:

   (i) an application for Survivor's Pension and child benefits if applicable has been made pursuant to the Canada/Quebec Pension Plan, and

   (ii) a determination has been made under that Plan, and

   (iii) the amount of the Survivor's Pension and other benefits which are payable under that Plan, or that application has been rejected, and the reasons therefor.

If such proof is not submitted, the Administrator may reduce the monthly SIB payable to any eligible dependents by the amount which the Administrator deems would have been payable to the spouse as a Survivor's Pension and, if applicable, to the two youngest dependent children who are under 18 years of age.

## II LONG TERM DISABILITY BENEFIT (LTD)

1. Definitions

In this benefit,

(a) "qualifying period" is a period of time during which 52 weeks of Sickness and Accident Benefits were paid to the employee;

(b) "total disability" means that, as a result of illness or injury to an employee he is unable during the qualifying period and during the 12 month period immediately following to perform the regular duties of the occupation he was performing at the beginning of the disabling sickness or injury;

Following expiry of the 12 month period above, he is thereafter unable to perform for profit or remuneration the duties of any occupation, either within or outside the Corporation, for which he has the appropriate education, training and experience.

In determining total disability the availability of any occupation will not be considered.

Effective July 1, 1982, notwithstanding the above definition, if it is confirmed that he is eligible for disability benefits under the Canada/Quebec Pension Plan, he will then also be eligible for the LTD benefit.

-6-

Date of issue: 1982 11 19

(c) "totally disabled" shall have a corresponding meaning to "total disability".

2. Calculation of Amount of Benefit

(a) Basic Benefit

Subject to (b) hereof, an employee who is totally disabled shall be paid a monthly amount equal to 60% of his basic monthly salary.

(b) Integration of Benefits

The amount of the LTD benefit shall be reduced by the amount that the sum of the employee's LTD benefit and any government disability benefits payable to the employee in respect of the same disability, exceed 90% of the employee's basic monthly salary (plus COLA where applicable).

For these purposes, "government disability benefits" include those received under the Canada/Quebec Pension Plan Disability Benefit, Workers' Compensation, Government Automobile Insurance Income, and any other government plans.

"Government disability benefits" do not include disability benefits payable under the Canada/Quebec Pension Plan for or on behalf of dependent children as defined thereunder, nor benefits payable under any individual disability income insurance policy, or a disability endorsement under an individual life insurance policy.

(c) Subsequent Indexed Increases

Subsequent to the commencement of the total disability, increases in the government disability benefits, caused by the pension index provisions thereof, will not further reduce the amount of the LTD benefit.

(d) Approved Rehabilitation Program

The amount of this LTD benefit shall be reduced by the amount that the sum of the employee's LTD benefit, and any remuneration from a Company approved rehabilitation program exceeds 75% of the employee's basic monthly salary (plus COLA where applicable).

3. Payment of LTD Benefit

On the total disability of an employee the Administrator shall pay that employee the LTD benefit as calculated pursuant to paragraph 2 hereof, commencing immediately following the qualifying period and continuing monthly until the termination of the LTD Benefits pursuant hereto.

### 4. Termination of Benefits

LTD Benefit payments to the employee shall cease on the earliest of the date that:

(a) the employee ceases to be totally disabled, or

(b) the employee fails to submit proof of the continuance of total disability as required by the Administrator, or

(c) the employee fails to submit, upon request by the Administrator, to a medical examination by a medical examiner appointed by the Administrator, or

(d) the employee refuses to participate in a rehabilitation program approved by the attending physician, the Company's physician and the Administrator, or

(e) the employee engages in any occupation for remuneration or profit or any educational program other than in a rehabilitation program approved by the attending physician, the Company's physician and the Administrator, or

(f) the employee attains the age of 65 years, or

(g) the employee dies.

### 5. Recurrence of Disability

If, following receipt of LTD Benefits hereunder, an employee ceases to be totally disabled, but within 60 calendar days is again totally disabled by reason of the same or related causes, such disability will be considered to be a continuation of the original disability.

### 6. Proof of Claim

(a) A claim for LTD Benefits shall be made in a form satisfactory to the Administrator within three months after the expiration of the qualifying period, and shall be accompanied by such medical and other evidence of total disability that the Administrator may require.

From time to time the Administrator may require from the employee:

(i) proof in form satisfactory to the Administrator of the continuance of the total disability;

(ii) a medical examination of the employee by a physician or other qualified medical examiner appointed by the Administrator;

(iii) proof of age of the employee.

(b) The Administrator shall require the employee to submit proof that the employee has submitted under the Canada/Quebec Pension Plan,

    (i) an application for disability benefits, and

    (ii) that a determination of benefits has been made under that Plan, and

    (iii) the amount of the benefits which are payable thereunder, or that the application has been rejected, and the reasons therefor.

If the employee does not submit such proof, the Administrator may reduce the LTD Benefit payable to the employee by the amount that the Administrator deems would have been payable to the employee pursuant to the Canada/Quebec Pension Plan.

7. Limitations

The LTD Benefit is not payable in respect of a disability resulting from one or more of the following:

(a) intentionally self-inflicted injuries or illness, whether sane or insane;

(b) any condition for which the employee is not under active treatment by and co-operating with a physician or surgeon duly licensed to practise medicine;

(c) committing or attempting to commit an assault or crime;

(d) insurrection, strike, riot, civil disorder or war, if the employee is actually participating therein, and whether or not war be declared;

(e) alcoholism or drug addiction, unless

    (i) resulting in permanent physical or mental impairments that cannot be treated, or

    (ii) the employee is undergoing a course of treatment which is acceptable to the Company's Medical Director;

(f) pregnancy, unless due to severe complications;

(g) military service in any country.

-9-

III COMPREHENSIVE HEALTH CARE BENEFIT (CHC)

1. Definitions

In this benefit,

(a) "spouse" means the person who is legally married to the employee, or a person of the opposite sex who is cohabiting with the employee and who is publicly represented as the spouse of the employee;

(b) "eligible dependents" means the spouse of the employee and any unmarried natural or legally adopted children of the employee or spouse who are financially dependent on the employee or spouse, and

   (i) are under the age of 21 years, or

   (ii) are under the age of 25 years and in full time attendance at an accredited school, college or university, or

   (iii) are physically or mentally incapable of self-support and became so before reaching the age of 21 years;

(c) "reasonable and customary charges" means charges which are usually made for the item of expense listed under Eligible Expenses, in the absence of coverage, but does not include any charges which are in excess of,

   (i) the prevailing fee guide, for services provided by general practitioners, of the provincial Dental Association in the province in which the expense is incurred, in the case of services rendered by a dentist;

   (ii) the prevailing fee guide of the provincial organization of paradental practitioners in the province in which the expense is incurred in the case of services rendered by a paradental practitioner, or

   (iii) the general level of charges in the area where the expense is incurred in the case of all other services;

(d) "hospital" means any public institution, building or other premises, where:

   (i) treatment requiring continuous confinement is rendered, and an attempt is made to cure persons suffering from or afflicted with sickness, disease or injury, and;

   (ii) when approved by the Administrator, specialized treatment of convalescing or chronically ill persons is rendered, but

   (iii) the term "hospital" does not include nursing homes, rest homes, old age homes, or other premises or places rendering similar care;

-10-

(e) "chiropractor" means a member of the Canadian Chiropratic Association or of any provincial association affiliated therewith;

(f) "dentist" means a person licensed to practise dentistry by the provincial licensing authority in which the dental services are rendered;

(g) "masseur" means a member of any provincial association of masseurs;

(h) "naturopath" means a person who holds a degree from a recognized school of naturopathy;

(i) "optometrist" means a member of the Canadian Association of Optometrists or of any provincial association associated therewith, licensed to practice in the province in which the services are rendered;

(j) "osteopath" means a Doctor of Osteopathy who is a graduate of a recognized school of osteopathy, licensed to practice in the province in which the services are rendered;

(k) "physician" means a person who is legally licensed to practice medicine in the province in which the services are rendered;

(l) "physiotherapist" means a member of the Canadian Physiotherapy Association or of any provincial association affiliated therewith, licensed to practice in the province in which the services are rendered;

(m) "podiatrist or chiropodist" means a member of the Canadian Podiatric Association or of any provincial association affiliated therewith, licensed to practice in the province in which the services are rendered;

(n) "psychologist" means a permanently certified psychologist who is listed on the provincial registry of the province in which the services are rendered;

(o) "registered nurse" and "registered nursing assistant", mean a nurse who is listed on the provincial registry of the province in which the services are rendered;

(p) "registered pharmacist" means a person who is licensed to practice pharmacy and whose name is listed on the pharmacists' registry of the licensing body for the province in which such person is practicing;

(q) "speech therapist" means a person who holds a diploma or degree in speech therapy from a recognized university;

(r) "paradental practitioner" means a person licensed by the provincial authority where the services are rendered to work as a direct practitioner, supplying and fitting dentures to the public;

(s) "eligible expenses" means those expenses listed in Section 4 hereof;

(t) "person" as used in Section 4 hereof, means employee or eligible dependent.

2. Calculation of Amount of Benefits

(a) Supplementary Hospital Benefit (SHB)

Employees whose claim for SHB have been allowed by the Administrator shall be entitled to 100% of the claim as allowed.

(b) Extended Health Care Benefit (EHB), Basic Dental Benefit (BDB) and Minor Dental Benefit (MDB)

An employee whose claims for EHB or BDB are allowed by the Administrator shall be entitled to 100% of the Eligible Expenses for EHB and BDB incurred by the employee and his eligible dependents.

An employee whose claims for MDB are allowed by the Adminstrator shall be entitled to 80% of the Eligible Expenses for MDB incurred by the employee and his eligible dependents.

The combined Eligible Expenses for EHB, BDB and MDB are subject to the following deductible amounts:

(i) $25 for each employee and eligible dependent in respect to whom a claim was allowed, for each calendar year to a maximum of $50 per calendar year

(ii) where an employee and one or more of his or her eligible dependents are entitled to EHB, BDB or MDB or all as a result of one accident the maximum deductible shall be $25.

(c) Major Dental Benefit (MJDB)

An employee whose claim for MJDB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for MJDB incurred by the employee and his eligible dependents, to a maximum Eligible Expense of $4,000 per calendar year each for an employee and each of his eligible dependents.

(d) Orthodontic Dental Benefit (ODB)

An employee whose claim for ODB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for ODB incurred by the employee and his eligible dependents to a lifetime maximum Eligible Expense of $3,000 each for an employee and each of his eligible dependents.

(e) Other Health Care Benefits (OHCB)

An employee whose claim for OHCB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for OHCB incurred by the employee and his eligible dependents.

(f) Catastrophic Expense Benefit (CEB)

When an employee whose claim for any one or more Benefit under this Comprehensive Health Benefit, except the Orthodontic Benefit, has been allowed by the Administrator, and that employee's share of the Eligible Expenses exceeds $1,000 in a calendar year, the employee shall be entitled to 100% of the amount of the Eligible Expense in excess of $1,000, except for the Orthodontic Benefit.

3.   Payment of Benefits

When the Administrator has allowed a claim for benefit under this CHC Benefit the Administrator shall pay the employee or the person, if any, to whom the employee has assigned the claim, the amount of the Benefit as calculated.

4.   Eligible Expenses

(A) Supplementary Hospital Benefit (SHB)

For the purposes of this Benefit, Eligible Expenses means the reasonable and customary charges for medically necessary hospital treatment recommended by a physician, as follows:

(a)   charges for the hospital room and board in an amount not to exceed the difference between charges for semi-private accommodation and public ward accommodation for each day in hospital;

(b)   charges for hospital room and board for that portion, if any, of the cost of public ward accommodation which the hospital must bill directly to the patient pursuant to government regulations, and where the law permits a patient to be reimbursed for such expenses;

(c)   charges for each admission as in-patient for public ward accommodation, where the law permits a patient to be reimbursed for such expense.

-13-

### (B) Extended Health Benefit (EHB)

100% of Extended Health Expenses after satisfying a deductible combined with BDB and MDB, Eligible Expenses mean the reasonable and customary charges for medically necessary treatment recommended by a physician, as follows:

(a)   charges for drugs, sera and injectibles (including oral contraceptives) if prescribed by a physician or dentist and dispensed by a registered pharmacist, physician or dentist; but charges for the following are not eligible expenses:

   (i)   food and food supplements, including dietary supplements;

   (ii)  vitamins and minerals except those which can only be purchased with a written prescription of a physician or dentist;

   (iii) cosmetic or hygienic products;

   (iv)  products, which in the opinion of the Administrator, are household remedies;

   (v)   experimental drugs;

   (vi)  any products prescribed for the treatment of obesity.

(b)   hospital charges incurred outside Canada for emergency treatment, including hospital room and board, not to exceed the difference between the actual cost of ward accommodation plus charges for auxiliary hospital services, less the benefit payable by the relevant provincial hospital plan for a maximum of 31 days for each period of illness or injury;

(c)   charges incurred outside Canada or the province of residence of the employee for the professional services of a physician, where

   (i)   the services are required for emergency treatment of an injury or disease which occurred while the employee or eligible dependent was travelling outside the province, or

   (ii)  the services are not available in the province of residence of the employee or eligible dependent;

-14-

(d)  charges incurred in Canada for the professional services of a physician where the employee or any eligible dependent of the employee is not eligible for coverage by a provincial health insurance program;

(e)  charges for professional services rendered in the home of the employee or eligible dependent by a registered nurse (R.N.) or where an R.N. is not available when required, services of a registered nursing assistant (R.N.A.), subject to a maximum total Eligible Expense in any one period of illness or disability of $10,000. Such charges are not an Eligible Expense if the R.N. or R.N.A. is related to the employee or eligible dependent by blood or marriage or is ordinarily a resident in the home of the employee or eligible dependent;

(f)  charges for diagnostic procedures, radiology, blood transfusions and oxygen, including the use of the necessary equipment for the administration of these procedures;

(g)  rental or, at the Administrator's option, purchase of a wheelchair, hospital bed, iron lung or other durable equipment required for temporary therapeutic use and approved by the Company and the Administrator.

(h)  charges for the purchase of trusses, braces, crutches, artificial limbs or eyes and surgical dressings.

Orthopaedic shoes which are specially constructed for the patient, including modifications to such shoes, less the average cost of regular footwear as determined by the Administrator.

Average cost will be determined as follows:

           0 to  5 years - $18.
           6 to 11 years -  22.
          12 to 17 years -  24.
          18 and over    -  35.

(i)  charges for licensed ground ambulance service to and from a local hospital;

(j)  charges for emergency transportation of an employee or eligible dependent by a licensed ambulance, air-ambulance, or by any other vehicle normally used for public transportation, to the nearest hospital equipped to provide the required treatment, to a maximum of one return trip per calendar year. Licensed ground ambulance service to and from the points of departure and arrival is also considered an Eligible Expense;

(k)     charges for dental services required as a direct result of accidental injuries to natural teeth when such treatment is rendered within 6 months of the accident;

(l)     charges for services of a psychologist, speech therapist or masseur, to a maximum Eligible Expense of $200 per person in a calendar year;

(m)     charges for services of a physiotherapist if not covered by the provincial health insurance plan;

(n)     charges for services of a chiropractor or osteopath, to a maximum Eligible Expense of $200 per person in a calendar year, plus one x-ray examination by a chiropractor or osteopath per calendar year, after the maximum provincial health insurance payment, if applicable, has been made;

(o)     charges for services of a naturopath, to a maximum Eligible Expense of $200 per person per calendar year;

(p)     charges for services of a podiatrist or chiropodist to a maximum Eligible Expense of $200 per person per calendar year for non-surgical treatment, plus a maxmium Eligible Expense of $100 per person per calendar year for the surgical removal of toe nails or the excision of plantar warts, after the maximum provincial health insurance payment, if applicable, has been made;

(q)     charges for the following services and supplies as approved by the Company and the Administrator:

    1)   Medically necessary supplies of a non-prescriptive nature required

        - for the treatment of cystic fibrosis, diabetes, parkinsonism and severe cases of permanent psoriasis

        - for paraplegics and quadraplegics

        - as a result of colostomy

    2)   Made-to-measure elastic support stockings up to a maximum Eligible Expense of $25 per calendar year.

    3)   Portions of the cost for food replacements in cases where other food cannot be consumed because of surgery of the digestive tract. That portion which can be considered reasonable and customary charges for a normal diet will not be considered eligible.

    4)   Eyepatches required for the treatment of lack of lacrimation.

    5)   Trachea tubes.

-16-

**(C) Basic Dental Benefit (BDB)**

100% of Basic Dental Expenses after satisfying a deductible combined with the EHB and MDB  of $25 per person (up to a maximum of $50 per family) in each calendar year.

Eligible expenses mean reasonable and customary charges for the following necessary treatment recommended by a dentist:

1.  Oral examinations, once every 6 months.

2.  Prophylaxis (cleaning and scaling of teeth) once every 6 months.  This treatment is eligible if performed by a Dentist, or a Dental Hygienist under the direct super-vision of a Dentist.

3.  Bite-wing X-rays, once every 6 months.

4.  Topical application of an anti-cariogenic agent, once every 6 months.  This treatment is eligible if performed by a Dentist, or Dental Hygienist under the direct supervision of a Dentist.

5.  Full mouth series of X-rays, once every 24 months.

6.  Extractions and simple alveolecomy at time of tooth extraction.

7.  Surgical extraction of impacted teeth.

8.  Amalgam, silicate, acrylic, and composite fillings.

9.  Provision of space maintainers for missing primary teeth and provision of habit-breaking appliances.

10. Diagnostic X-ray and laboratory procedures required in relation to dental surgery.

11. General anaesthetic required in relation to dental surgery.

12. Consultation required by the attending Dentist.

13. Relining, rebasing, or repairing of an existing fixed bridge, removable partial or complete denture.

-17-

| Treatment | Canadian Dental Association Procedure |
|---|---|
| (a) routine oral examination and diagnosis: | |
| - oral examination, | 01100, 01110, 01120, 01121, 01130 |
| - recall oral examination (once every 6 months), | 01200, 01210 |
| - special oral examination, | 01300, 01400, 01500, 01510, 01600 01610, 01800, 01810 |
| - treatment plannings, | 05100, 05200 |
| - emergency and unusual services, | 91100, 91110 |
| - consultation, | 93100, 99200 |
| - house call, institutional call and office visit | 94100, 94200, 94400 |
| (b) tests and laboratory examinations: | |
| - microbiologic culture, | 04100, 04110 |
| - biopsy of oral tissue, | 04300, 04310 |
| - pathologic report, | 04320 |
| - cytologic smear from oral cavity, | 04330, 04340 |
| - pulp vitality tests | 04400 |
| (c) radiographs: | |
| - periapical (no more than once in any 24 month period), | 02100, 02101, 02111-02123 |
| - occlusal, | 02131-02134 |
| - bitewing (once every 6 months), | 02141-02146 |
| - extra oral, | 02201-02205,  02301-02305 |
| - sialography, | 02400 |
| - fistulography, | 02410 |
| - cystography, | 02420 |
| - radiopaque dyes to demonstrate lesions, | 02430 |
| - temporomandibular joint, | 02501-02505 |
| - panoramic (once every 5 years), | 02600 |
| - interpretation of radiographs received from another source, | 02800 |
| - tomography | 02920 |
| (d) preventative services: | |
| - dental prophylaxis (once every 6 months), | 11100, 11200, 11300, 11301 |
| - topical application of fluoride phosphate (once every 6 months), | 12000, 12100, 12200, 12400 |
| - oral hygiene instruction (once every 6 months), | 13200, 13210 |
| - caries control, | 13600, 13601 |
| - interproximal discing of teeth | 13700 |

-18-

(e) space maintainers and appliances    15100, 15110, 15111, 15120, 15200
to control harmful habits;               15210, 15300, 15310, 15400, 15401
                                         15500, 15600, 82100-82102, 82200,
                                         82201, 82202

(f) plastic fillings:
    – amalgam,                           21101-21105,  21201-21205,
                                         21211-21215,  21221-21225,
                                         21300-21305
    – silicate,                          22101, 22102
    – acrylic or composite resin,        23101-23103,  23111-23114,
                                         23201-23205,  23221-23224,  23211
    – transitional restoration of        27131
      fractured anterior,
    – steel crown – primary teeth,       21401, 21403, 21421, 27400-27404,
                                         27420-27422
    – cement                             29800

(g) surgical services:
    – surgical incision,                 75100, 75101, 75110
    – miscellaneous surgical services    79601-79604

(h) anaesthesia in connection with oral  92200-92202,  92250-92252, 92300,
    surgery                              92310, 92311, 92330, 92340, 92350

(i) repairs and adjustments:
    – repair or recementing of crowns,   29100, 29300, 55101-55105,
      inlays, onlays, existing fixed     55201-55204,  66100, 66200, 66300
      bridgework or dentures,            66400, 66500, 66600, 66610, 66620
    – denture rebasing and relining      56200, 56201, 56210, 56211, 56220
                                         56221, 56230, 56231, 56240, 56241
                                         56250, 56251, 56260-56263,  56264
                                         56265, 56270-56273,  56300

## Exclusions

Charges in respect of services for the treatment of malocclusion or
services for orthodontic treatment are not an Eligible Expense under this
Basic Dental Benefit.

## (D) Minor Dental Benefit (MDB)

80% of the following Dental expenses after satisfying a
deductible combined with the EHB and BDB of $25 per person (up to a
maximum of $50 per family) in each calendar year.

1.  Surgical removal of tumors, cysts, neoplasms, plus the
    incision and drainage of an abscess.

2.  Endodontic Treatment, including root canal therapy.

3.  Periodontic Treatment, excluding periodontic appliances.

-19-

Eligible expenses mean reasonable and customary charge for the
following necessary treatment recommended by a dentist:

Treatment                                    Canadian Dental Association
                                             Procedure Codes

(a) endodontics:
    - pulcapping,                            31100, 31110
    - pulpotomy,                             32100, 32200-32202,  32210-32212
    - root canal therapy,                    33100, 33110, 33120, 33200, 33210
                                             33220, 33300, 33320, 33400, 33420
                                             33430, 33431, 33500-33504,
                                             33511-33514
    - periapical services,                   34100-34101,  34111-34115,
                                             34200-34203,  34212, 34213, 34401
                                             34402
    - banding of tooth                       39120
    - canal and/or pulp enlargement,         39300
    - intentional removal, apical            39500-39503,  39600
      filing and reimplantation,
    - emergency procedure                    39900-39905,  39910, 39930,
                                             39940-39942,  39960, 39970, 39980
                                             39985


(b) periodontics, excluding
    periodontic appliances:
    - gingival plastry or curettage,         39100
    - alveolectomy,                          39110
    - non-surgical services,                 41100, 41200, 41210, 41300, 42600
    - surgical services,                     42001-42006,  42100-42104,  42200
                                             42300, 42310, 42400
    - post-surgical treatment,               42500
    - adjunctive procedures (occlusal        43200-43203,  43210, 43211, 43250
      equilibration not exceeding 8          43251, 43255, 43259, 43260
      times units each year),                43270-43272,  43300, 43310,
                                             43400-43403,  43410, 43600, 43610
                                             43620
    - post-treatment evaluation,             49100
    - case pattern section,                  49400, 49410, 49500, 49510, 49600
                                             49610, 49700, 49710, 49800, 49810
    - alveoplasty                            73100, 73101, 73110-73112
                                             73119-73123,  73130-73135,  73140
                                             73141, 73150, 73151, 73160, 73161
                                             73200, 73201, 73300, 73301, 73310
                                             73311, 73320, 73321, 73330, 73331
                                             73340, 73341, 73350, 73351, 73360
                                             73361

-20-

(c) surgical services:
- uncomplicated removals,                    71101-71108,  71111
- surgical removals,                         72100, 72210, 72220, 72230, 72240
  transplantation and                        72300, 72310, 72320, 72400, 72410
  repositioning,                             72411, 72440, 72450
- surgical excision                          74100-74119,  74400-74410

## Exclusions

Charges in respect of services for the treatment of malocclusion or services for orthodontic treatment are not an Eligible Expense under this Minor Dental Benefit (MDB)

## (E) Major Dental Benefit (MJDB)

50% of Major Dental Expenses listed below up to the maximum of $2,000 payable per calendar year per individual.  No deductible applies.

1. Inlays and onlays.

2. Crowns, including gold and porcelain veneer restorations, where other material is not suitable.

3. The creation of a fixed bridge, removable partial or complete denture.

4. The replacement of an existing fixed bridge, removable partial or complete denture only under the circumstances set out in paragraph (h) on page 23.

5. Injection of antibiotic drugs when prescribed by a dentist.

6. Services of a licensed Denturist when practicing within the scope of his license.

7. Other necessary oral surgical procedures not specifically listed under the Basic Dental Benefit.

-21-

Eligible Expenses mean reasonable and customary charges for the following treatment recommended by a dentist:

| Treatment | Canadian Dental Association Procedure Codes |
|---|---|
| (a) crowns, inlays, onlays, (including gold and porcelain veneer restorations where other material is not suitable) | |
|   - gold foil restoration | 24101, 24103, 24200, 24201, 24300 |
|   - metal inlay restorations, | 25100, 25200, 25300, 25400, 25500 25600-25605 |
|   - porcelain inlay restoration, | 26100, 26700 |
|   - crowns | 21411, 21413, 27100, 27110, 27120 27130, 27140, 27200, 27210, 27220 27300, 27301, 27310-27312 27410-27414, 27423-27425, 27500 27600, 27610, 27620, 27630, 27640 27700, 27701, 27702, 27710-27712 29500, 29501, 29502, 29503, 29510, 29511, 29512, 29513, 29610, 29700, |
|   - hemisection | 39200, 39210, 39220, 39230 |
| (b) fixed bridgework: | |
|   - bridge pontics, | 60700, 62100, 62110, 62200, 62300, 62400 62500, 62510, 62600, 62700, 62800 62900 |
|   - retainers, | 65200, 65300, 65400 |
|   - abutments, | 67100, 67101, 67110, 67200, 67210 67300, 67310, 67400, 67410, 67420 67500 |
|   - other prosthetic services | 69300, 69600, 69610, 69620, 69630 69700-69705, 69800 |
| (c) partial and complete dentures: | |
|   - complete dentures, | 51100, 51110, 51120, 51300, 51310 51320, 51600, 51610, 51620 |
|   - partial dentures, | 52100, 52110, 52120, 52121, 52200 52210, 52220-52222, 52230-52232, 52300-52310, 52320-52322, 52400 52410, 52500, 52510, 52520, 52530 52531, 52800 |
|   - partial denture additions, | 55520, 55530 |

-22-

(d) repairs and adjustments:
- adjustment to denture,       54200, 54250, 54300-54306
- addition to tooth            55500-55502, 55510-55512, 55520
                               55521, 55524, 55525, 55529-55531,
                               55534, 55535, 55539, 55600-55602,
                               55610-55612

(e) surgical services:
- fractures,                   76940, 76941, 76950-76979
- frenectomy,                  77800, 77810, 77820, 77830, 77840
                               77850, 78110, 78120
- miscellaneous surgical       79300-79306,  79308, 79309, 79400
  services,                    79401

(f) antibiotic drug injections    96100, 96101
    (when prescribed by a dentist)

(g) examinations:
- oral examination,            01700, 01710
- diagnostic casts,            04500, 04510, 04520, 04540, 04550
                               04560, 04710, 04720, 04740, 04750
                               04760, 04770
- prosthodontic evaluation,    60100

(h) charges for replacement of an existing denture, bridgework, crown,
    inlay, onlay or periodontal splinting of not greater quality and value
    than the prosthesis being replaced, will be considered an Eligible
    Expense where:

    (i)   the replacement is required to replace an existing denture which
          was installed not less than 3 years prior to the replacement and
          the existing prosthesis cannot be made serviceable, or

    (ii)  the replacement is required to replace an existing bridgework,
          crown, inlay, onlay or periodontal splinting which was installed
          not less than 5 years prior to the replacement and the existing
          prosthesis cannot be made serviceable, or

    (iii) the replacement is required to replace a temporary bridge or
          denture with a permanent bridge or denture and replacement takes
          place within 12 months of when the temporary appliance was
          installed, or

    (iv)  the replacement is necessitated by the extraction of additional
          natural teeth while the person was covered hereunder.

The maximum amount payable under this benefit in any one calendar year
is as specified in the Calculation of Amount of Benefits.

-23-

**(F) Orthodontic Dental Benefit (ODB)**

50% of Eligible Expenses mean reasonable and customary charges for the necessary treatment of malocclusion or for orthodontic treatment as follows, to a lifetime maximum payment of $1500 per per individual:

Treatment                                              Canadian Dental Association
                                                       Procedure Codes

(a) observation, adjustment:
  - oral examination,                                  01900,01910
  - cephalometric radiograph,                          02701-02705,   02750-02754
  - hand and wrist radiograph,                         02930
  - diagnostic cast,                                   04530
  - oral surgical procedure for                        72409
    orthodontic purposes,
  - surgical exposures of unerupted                    72412
    tooth, with orthodontic attachment
  - observation, adjustment,                           80600, 80610, 80611, 80620
  - removable or fixed appliance,                      80621, 80622
  - repairs, alterations,                              80630, 80640, 80650, 80700
  - active appliances for tooth                        81100, 81105, 81106, 81110, 81111
    guidance or uncomplicated tooth                    81115, 81116, 81120, 81125, 81126
    movement,                                          81130, 81131, 81140, 81200-81214,
                                                       81250-81252, 81261, 81291
  - retention appliances                               83100, 83111, 83112, 83200

(b) comprehensive treatment:                           84100, 84220, 84300, 84400, 85100
                                                       85200, 85300, 86100, 86200, 86300
                                                       87100, 87200, 87300, 88100, 88200
                                                       88300, 89100, 89200, 89300, 89500
                                                       89520, 89530, 89550, 89560, 89570
                                                       89580

**(G) Other Health Care Benefits (OHCB)**

Eligible expenses mean reasonable and customary charges of the following medically necessary treatment recommended by a physician:

(a)  charges for room, board and normal nursing care provided in a licensed nursing home or clinic, for convalescent or chronic care, but not including custodial care, up to a maximum Eligible Expense of $20 per day for a lifetime total of 365 days;

(b)  charges for private hospital room and board, such charges not to exceed the difference between the charges for semi-private and private accommodation, not including a suite, for each day of hospitalization;

(c)  charges for the purchase and repair of hearing aids (excluding batteries) to a maximum Eligible Expense of $400 in any two consecutive calendar years;

-24-

(d)  when recommended by a physician or optometrist, charges for:

(i)  frames, lenses, and the fitting of prescription glasses including prescription sun glasses and contact lenses, to a maximum Eligible Expense of $100 per individual in any two consecutive calendar years. Effective January 1, 1983, this maximum Eligible Expense will be increased to $150 per individual in any two consecutive calendar years.

(ii)  contact lenses prescribed for severe corneal astigmatism, severe corneal scarring, keratoconus or aphakia, provided visual acuity can be improved to at least the 20/40 level by contact lenses and cannot be improved to that level by regular glasses, to a maximum Eligible Expense of $400 in any two consecutive calendar years;

(iii)  services for visual training or remedial exercises;

(iv)  ocular examinations, including refraction, to a maximum of one such examination in a calendar year for eligible dependent children, and to a maximum of one such examination in any two consecutive calendar years for employees and spouses.

5.  Canadian Dental Association Procedure Codes

The Canadian Dental Association Procedure Codes are provided for identification of the individual treatment procedures included in each Eligible Expense of the various dental benefits. Where any province does not employ the Canadian Dental Association Procedure Codes, the appropriate Procedure Codes in the fee guide of such province, for the equivalent procedure, will apply.

6.  Proof of Claim

(a)  A claim for CHC benefit shall be made by an employee in writing to the Administrator in satisfactory form within 18 months after the date on which the expense claimed for is incurred.

(b)  The Administrator requires the employee claiming for this benefit to submit original itemized hospital, dental, medical, drug, equipment, or other bills, physicians' reports, hospital records, statements, invoices and documents as the Administrator may consider necessary to adjudge and allow or disallow the claim.

(c)  When the Administrator cannot determine from the forms, bills and documents submitted whether the charges incurred are Eligible Expenses, or when there has been a change in the Canadian Dental Association Procedure Codes, the Administrator may allow a portion of the claim based on the cost or charges for such alternative services included in this benefit as Eligible Expenses.

-25-

Revised 1983 04 15

7.  Limitations

(a) No benefits will be paid to or on behalf of an employee or his eligible dependents for any charges or Eligible Expenses incurred in respect of or arising from:

    (i)   any services for which benefits are payable under any Workers' Compensation Act or any similar law;

    (ii)  charges for a physician or dentist for any time spent in travelling, transportation costs or broken appointments;

    (iii) services which are cosmetic in nature, unless for accidental injuries and such treatment commences within 90 days of the accident;

    (iv)  replacement of an existing appliance or prosthesis under any government plan or, subject to (d) below, any other plan;

    (v)   crowns placed on a tooth not functionally impaired as a result of fractures or decay by incisal or cuspal damage;

    (vi)  prosthetic devices which were ordered before the employee or dependent became eligible under this benefit or which are ordered while employee or eligible dependent is covered under this benefit but are installed more than 30 days after termination of eligibility.

(b) Where Eligible Expenses are incurred outside Canada the amount payable under this Benefit will be limited to the amount which is considered reasonable and customary in the area in which the treatment is rendered.

(c) Where it cannot be satisfactorily determined by the Administrator that Dental expenses incurred are Eligible Expenses, or in the event of a change in the Canadian Dental Association Procedure Codes, reimbursement may be provided with respect to such incurred expenses based on the cost of alternative services which are defined in this plan as Eligible Expenses.

(d) Where an employee participates in another group plan, benefits will not be payable with respect to that portion of any Eligible Expense for which benefits are paid by the other plan.

-26-

Date of issue:  1982 11 19

THIS AGREEMENT made as of the 24th day of September, 1984.

A M O N G

> NORTHERN TELECOM LIMITED, a body corporate, duly incorporated under the laws of Canada, and having its registered office in the City of Montreal, Province of Quebec, Canada
>
> (hereinafter called the "Corporation")
>
> PARTY OF THE FIRST PART,
>
> — and —
>
> MONTREAL TRUST COMPANY, a body corporate, duly incorporated under the laws of the Province of Quebec, and having its head office in the City of Montreal, Province of Quebec, Canada
>
> (hereinafter called the "MTC")
>
> PARTY OF THE SECOND PART,
>
> — and —
>
> MONTREAL TRUST COMPANY OF CANADA, a body corporate, duly incorporated under the laws of Canada, and having its principal office in the City of Toronto, Province of Ontario, Canada
>
> (hereinafter called the "Montreal Trust")
>
> PARTY OF THE THIRD PART.

WHEREAS the Corporation has established and is maintaining certain Health and Welfare Plans, as amended from time to time (collectively the "Health and Welfare Plan");

AND WHEREAS the Corporation and MTC entered into an agreement dated as of and with effect from the 1st day of January, 1980, (the "Trust Agreement"), respecting trust arrangements pertaining to the Health and Welfare Plan;

- 2. -

AND WHEREAS the parties hereto wish to evidence the transfer and assignment of the rights and obligations of MTC under the Trust Agreement to Montreal Trust and certain other amendments, all as specified herein;

NOW THEREFORE this Agreement witnesseth as follows:

1.      MTC hereby assigns, transfers and sets over unto Montreal Trust, with effect from and after the date hereof, all of its right, title and interest, as trustee, in the Trust Agreement and the trust fund established thereunder (the "Trust Fund").

2.      The Corporation hereby consents to the assignment to Montreal Trust from MTC of the trusteeship of the Trust Fund under the Trust Agreement and hereby confirms the appointment of Montreal Trust as the trustee under the Health and Welfare Plan.

3.      Montreal Trust hereby accepts all right, title and interest in and to the trust herein and contributed under the Trust Agreement, assumes all duties and obligations thereunder, and agrees to act as trustee to hold all property now or hereafter constituting the Trust Fund in accordance with the provisions thereof.

4.      MTC covenants and agrees that it shall execute all such further assurances as may be necessary or desirable from time to time to give full effect to the transfer of the trusteeship provided for herein.

5.      The Trust Agreement governing the said trust shall be amended by deleting the Trustee's address referred to in ARTICLE V and substituting the following address therefor:

                    Montreal Trust Company of Canada
                    Pension Trust Administration
                    15 King Street West
                    Toronto, Ontario
                    M5H 1B4

- 3 -

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed by their authorized officers and their respective corporate seals to be affixed and attested as of the day and year first above written.

NORTHERN TELECOM LIMITED

_____ C/S

_____


MONTREAL TRUST COMPANY

_____ C/S
W. B. DAWE, Asst. Manager
PENSION SYSTEMS

_____


MONTREAL TRUST COMPANY OF CANADA

_____ C/S
W. B. DAWE, Asst. Manager
PENSION SYSTEMS

_____

AMENDING AGREEMENT made as of the 1st day of June, 1994.

BETWEEN

NORTHERN TELECOM LIMITED, a body corporate duly incorporated under the laws of Canada and having offices at 3 Robert Speck Parkway, Mississauga, Ontario, L4Z 3C8

(hereinafter called the "Corporation")

PARTY OF THE FIRST PART,

-and-

MONTREAL TRUST COMPANY OF CANADA, a body corporate duly incorporated under the laws of Canada and having its registered office at 15 King Street West, Toronto, Ontario, M5H 1B4

(hereinafter called the "Trustee")

PARTY OF THE SECOND PART.

WHEREAS the Corporation and the Trustee are parties to a certain Trust Agreement dated and with effect as of and from the 1st day of January 1980, as amended, (the "Trust Agreement") respecting trust arrangements relating to the Corporation's Health and Welfare plans; and

WHEREAS the parties hereto wish to amend the Trust Agreement to authorize and permit the Trustee to lend, from time to time, to approved brokers or banks, subject to the terms and conditions hereinafter set forth, securities that it holds as part of the trust fund established pursuant to the Trust Agreement.

NOW, THEREFORE, this Amending Agreement witnesseth as follows:

1.  Article III of the Trust Agreement is hereby amended by adding a new clause 2 t) as follows:

    "2 t)   The Trustee may engage from time to time, subject to the prior written consent of the Corporation, in a program of lending to brokers or banks approved by the Corporation, securities that it holds as part of the Trust Fund, subject to complying with applicable laws and regulations, and subject to such other terms and

conditions, in addition to the terms and conditions of this Trust Agreement, as the Corporation and the Trustee may agree upon in writing from time to time."

2. The amendments to the Trust Agreement set forth herein shall be effective June 1, 1994.

3. Except as amended herein, the Trust Agreement remains in full force and effect.

IN WITNESS WHEREOF the parties hereto have caused this Amending Agreement to be executed by their proper officers and their respective corporate seals to be affixed hereto as attested by their proper officers, duly authorized on that behalf, as of the day and year first written above.

NORTHERN TELECOM LIMITED

Per: _____
    Vice-President and Treasurer

Per: _____
    Vice-President and
    Associate General Counsel

MONTREAL TRUST COMPANY OF CANADA

Per: _____

Per: _____

-2-

THIS APPOINTMENT OF SUCCESSOR TRUSTEE AND ACCEPTANCE OF APPOINTMENT OF SUCCESSOR TRUSTEE made as of the • day of •, 2005.

BETWEEN:

NORTEL NETWORKS LIMITED, a company duly incorporated under the laws of Canada (hereinafter referred to as the "Plan Sponsor")

OF THE FIRST PART,

**and**

THE NORTHERN TRUST COMPANY, CANADA, a trust company incorporated under the laws of Canada (hereinafter referred to as the "Trustee")

OF THE SECOND PART.

WHEREAS the Plan Sponsor has heretofore adopted certain health and welfare plans (collectively the "Plan") for the benefit of certain of its employees and their beneficiaries and the eligible employees and beneficiaries of any other corporation which may participate in the Plan;

AND WHEREAS the Plan Sponsor established a trust fund to give effect to the Plan effective as of January 1, 1980, as amended to the date hereof (the "Health and Welfare Trust") under which the current trustee is The Royal Trust Company of Canada (the "Prior Trustee");

AND WHEREAS the Plan Sponsor has removed the Prior Trustee and the Trustee is to be appointed as successor trustee by the Plan Sponsor pursuant to paragraph 2(q) of Article III of the Health and Welfare Trust;

NOW THEREFORE THIS DEED WITNESSES as follows:

1.01    The Plan Sponsor has removed the Prior Trustee and hereby appoints the Trustee as the successor trustee under the Health and Welfare Trust to assume all of the powers, rights, duties and responsibilities of the Prior Trustee under the Health and Welfare Trust effective as of the date hereof.

1.02    The Trustee hereby accepts the appointment by this deed as trustee under the Health and Welfare Trust in place of and as successor to the Prior Trustee effective as of the date hereof.

1.03   The Plan Sponsor and the Trustee hereby declare that every right, title or interest in any property subject to the Health and Welfare Trust shall vest in the Trustee subject to the terms of the Health and Welfare Trust with the intent and effect that the declaration hereby made shall, without any conveyance or assignment, operate to vest in the Trustee for the purposes of the said trust all such right, title and interest.

1.04   The Plan Sponsor and the Trustee shall use their best efforts to amend and restate the Health and Welfare Trust as soon as practicable in a manner that does not adversely affect the Plan or the Health and Welfare Trust for tax purposes and the Plan Sponsor further agrees to provide such further assurances, execute such instruments or take any such further steps as the Trustee may reasonably require in order to effect the succession contemplated herein.

IN WITNESS WHEREOF the parties hereto have caused this Appointment to be executed by their respective officers thereunto fully authorized and their corporate seals to be hereunto affixed and attested as of the day and year first above written.

NORTEL NETWORKS LIMITED

Per: William J. Laballe                    Per: N.B. Stevenson
Signature                                  Signature
WILLIAM J. LASALLE                              K.B. Stevenson
GENERAL COUNSEL - OPERATIONS                    Treasurer
Name and Title                             Name and Title

THE NORTHERN TRUST COMPANY, CANADA

Per:                                       Per:
Signature                                  Signature
     JEFFREY W. CONOVER                         VEDA NANCOO
     PRESIDENT & CEO                            VICE-PRESIDENT
Name and Title                             Name and Title



# N⦶RTEL

December 1, 2005

The Northern Trust Company, Canada,
Successor Trustee of the Nortel Health and Welfare Trust
161 Bay Street
Suite 4540, B.C.E. Place
Toronto, Ontario  M5J 2S1

Attention: Veda Nancoo

Pursuant to that certain Appointment of Successor Trustee and Acceptance of Appointment of Successor Trustee dated as of December 1, 2005, you are currently acting as the Successor Trustee of the Nortel Health and Welfare Trust dated January 1, 1980 as amended on September 24, 1984 and June 1, 1994 (the "Health and Welfare Trust").

Notwithstanding anything to the contrary in the Health and Welfare Trust and for the avoidance of any doubt, we agree that you shall have no responsibility for determining, reviewing or monitoring the amounts of Nortel Networks Limited's contributions required in order to fund adequately the Health and Welfare Plan ("Contribution Amounts") nor to advise and carry out administrative procedures in accordance with the Health and Welfare Plan and the eligibility Requirements.

Nortel Networks Limited agrees that it shall be solely responsible for determining said Contribution Amounts on a sound actuarial basis and administering the Health and Welfare Plan and agrees to indemnify and hold you harmless from any and all costs, losses, damages, claims, actions, suits, liabilities, expenses or other charges (including attorneys' fees) that you incur directly or indirectly arising out of the contributions made (or not made) by Nortel to the Health and Welfare Trust or out of the administration of the Health and Welfare Plan.

This indemnification shall survive the termination of the Health and Welfare Trust.  To the extent necessary, this letter shall constitute an amendment to the Health and Welfare Trust.

Nortel Networks Limited

By: _William J. LaSalle_  
Name & Title    William J. LaSalle  
General Counsel - Operations

By: _K.B. Stevenson_  
Name & Title    K.B. Stevenson  
Treasurer

Accepted and Agreed:  
The Northern Trust Company, Canada

By: _____  
Name & Title    JEFFREY W. CONOVER  
PRESIDENT & CEO

By: _____  
Name & Title    VEDA NANCOO  
VICE PRESIDENT

# APPENDIX "H"

<u>ADMINISTRATIVE SERVICES AGREEMENT</u>

AGREEMENT to be effective 1st day of January, 1981.

BETWEEN

> COMPAGNIE MONTREAL TRUST, a company duly in-
> corporated under the laws of the Province of
> Quebec, having its head office in the City of
> Montreal, Quebec,
>
> hereinafter referred to as the "Trustee"

AND

> NORTHERN TELECOM CANADA LIMITÉE, a corporation
> duly organized and existing under the laws of
> the Province of Ontario, having its head office
> at 304 The East Mall, Islington, Ontario,
>
> hereinafter referred to as "Northern Telecom"

AND

> ASSOCIATION D'HOSPITALISATION DU QUÉBEC, a
> company duly incorporated under the laws of the
> Province of Quebec, having its head office in
> the City of Montreal, Quebec,
>
> hereinafter referred to as the "Administrator"

WHEREAS the Trustee herein did enter into an Agreement made as of the 1st day of January, 1980 with Northern Telecom Limited in respect of, inter alia, an Extended Health Care Plan and Dental Plan for certain employees of Northern Telecom Canada Limitée (the "employees") (herein-after referred to as the "Trust Agreement") and providing for the establishment of a trust to be administered by the Trustee.

AND WHEREAS the Trust Agreement provides for the ap-pointment by the Trustee acting on behalf of the employees of an Administrator for the carrying out of the normal administration of the terms of the Trust Agreement and the parties hereto wish to enter into this Agreement pursuant to such provision.

- 2 -

NOW THEREFORE THE PARTIES HERETO MUTUALLY COVENANT AND AGREE AS FOLLOWS:

1. Definitions

   In this Agreement:

   (1) "Claims" means all benefits payable in respect of the Extended Health Care Plan and Dental Plan pursuant to the Trust Agreement.

   (2) "Claims paid" means all amounts paid by the Administrator in respect of the Extended Health Care Plan and Dental Plan during the term of this Agreement as benefits pursuant to the Trust Agreement.

2. Term

   This Agreement shall be for a term of one year commencing as of January 1, 1981, and shall continue from year to year thereafter unless and until terminated as herein provided.

3. Termination

   This Agreement may be terminated as of January 1, 1982 or any time thereafter by either the Trustee or the Administrator upon sixty (60) days prior written notice to the other party.

   Upon termination of this Agreement:

   (1) Northern Telecom shall reimburse the Administrator for all amounts payable for services rendered as herein provided under Article 4 up to the termination date, and shall be entitled to credits, if any.

   (2) All funds transferred to the Administrator pursuant to this Agreement and remaining to the Trustee's account including any accrued interest from date of termination, shall be repaid forthwith by the Administrator to the Trustee.

   (3) The Administrator shall surrender and deliver to the Trustee all claims history cards, records, files, accounts and other documents maintained by the Administrator pursuant to the Agreement, all of which documents maintained by the Administrator in carrying out its administrative services herein shall be the property of the Trustee.

- 3 -

4.  Administrative Services

  (1)  The Administrator shall provide the following
       basic administrative services:

     (a)  receive and examine all Claims;

     (b)  verify the eligibility of Claims in accor-
          dance with the master list provided to the
          Administrator and as updated monthly by
          Northern Telecom;

     (c)  determine that the amount of each Claim is
          in accordance with the provisions of the Ex-
          tended Health Care Plan and/or Dental Plan;

     (d)  remit payment of allowed Claims to or on be-
          half of the claimant;

     (e)  maintain appropriate records of all Claims
          received and all payments made and keep
          proper books of account;

     (f)  provide to Northern Telecom a Monthly Claims
          Report in respect of each month during the
          term of this Agreement, which Report shall
          include the aggregate of Claims paid, the
          number of Claims paid and administration
          fees payable in respect of each such month,
          as well as the aggregate of Claims paid and
          expenses for the current calendar year;

     (g)  upon request by the Trustee provide
         (i)    periodic claims analysis
         (ii)   claim control information
         (iii)  claim accounting
         (iv)   claim forms
         (v)    benefit pricing
         (vi)   cost analysis, including projections
                for future periods and estimates of
                outstanding liabilities
         (vii)  advice on plan design trends;

  (2)  The Administrator shall not be obliged to provide
       to the Trustee bank statements and reconciliations
       in respect of any Claims paid or otherwise.  The
       Trustee shall have the right, at its expense, to
       have an audit carried out in respect of the bank-
       ing arrangements and bank statements and support-
       ing documentation as they relate to Claims paid by
       the Administrator and other financial transactions
       related to the carrying out by the Administrator
       of its services required to be performed herein.

- 4 -

(3) In addition, the Administrator shall provide such other services related to the administration of the Trust Agreement as may be agreed upon from time to time by the Trustee and the Administrator.

(4) On reasonable notice the Administrator shall make available to the Trustee or its agent during regular business hours, for the purposes of inspection and copying, all Claims records, files, accounts and other documents relating to the administration of the Trust Agreement.

5.   Administration Fees

(1) Northern Telecom shall pay on behalf of employees, to the Administrator for all services set forth in Article 4(1) 7.5% of the net cost of the Trust Agreement (i.e. total claims paid and administration fees) during the term of this Agreement, to be paid on a monthly basis as provided in Article 7.

(2) Northern Telecom shall pay on behalf of employees, to the Administrator for the services set forth in Article 4(3) such fees as may be agreed upon from time to time by Northern Telecom and the Administrator.

6.   Funding

(1) Upon execution of this Agreement, the Trustee shall effect a transfer of funds from the account of the trust fund to the Administrator of an amount equal to the estimate of Claims to be paid by the Administrator during the month of January 1981 and such further sum as may be agreed to between the Trustee and the Administrator. Thereafter, the Trustee shall effect a transfer of funds to the Administrator on a monthly basis in an amount equal to the aggregate of Claims paid by the Administrator during the previous month as shown on the Monthly Claims Report to be provided by the Administrator to the Trustee. The Administrator will pay from such funds transferred all Claims approved by it in accordance with the terms of this Agreement and the Trust Agreement.

(2) No interest shall be paid to the Trustee or Northern Telecom or charged by the Administrator under this Agreement except as provided for under Article 3.

– 5 –

7. Payment of Administration Fees

(1) Upon execution of this Agreement, Northern Telecom shall effect a payment to the Administrator on behalf of employees of an amount equal to the administration fees on the estimate of Claims to be paid by the Administrator during the month of January 1981 and on such further sum as may be agreed to between the Trustee and the Administrator, as referred to in Article 6.

(2) The Administrator shall submit to Northern Telecom within thirty (30) days after the end of each calendar month during the term of this Agreement an invoice for the administration fees payable in respect of the previous month together with the Monthly Claims Report for such month as required under Article 4(1)(f). Northern Telecom shall pay such invoice on behalf of employees within thirty (30) days of receipt thereof.

8. Indemnity

The Administrator shall reimburse, indemnify and save harmless the Trustee on behalf of employees for any loss to or diminution of the funds administered by it hereunder arising from or due to the default, willful misconduct, lack of good faith or negligence of the Administrator, its employees, agents or servants.

9. Amendments to Trust Agreement

The Trustee shall give the Administrator reasonable notice of relevant amendments to the Trust Agreement affecting the performance of this Agreement.

10. Interpretation

Any reasonable interpretation of this Agreement and the Trust Agreement made by the Administrator in good faith and not contrary to specific instructions of the Trustee shall be binding upon the Trustee acting on behalf of employees.

11. Special Instructions

Notwithstanding any other provision of this Agreement and prior to the payment of any Claim hereunder, the Trustee may instruct the Administrator in writing of the amount of the Claim to be paid. Such amount shall not exceed the maximum amount payable under the Trust Agreement for such Claim.

- 6 -

12.  Trustee's Records

   The Trustee shall furnish to the Administrator such
   records and any other information as the Administrator
   may reasonably require to perform its services here-
   under, subject always to the Trustee's right to refuse
   disclosure for reasons of confidentiality.

13.  Notices

   Any and all notices or other information to be given by
   one of the parties to the other shall be deemed suffi-
   ciently given when forwarded by prepaid registered or
   certified first class air mail or by cable, telegram,
   telex, TWX or hand delivery to the other party at the
   following address:

       If to the Trustee          Compagnie Montreal Trust
                                   Pension Trust
                                   Administration
                                   Place Ville Marie
                                   Montreal, Quebec
                                   H3B 3L6

       If to the Administrator    Association D'Hospitalisation
                                   Du Québec
                                   550 Sherbrooke Street West
                                   Montreal, Quebec   H3A 1B9

       If to Northern Telecom     Northern Telecom Canada
                                   Limitée
                                   304 The East Mall
                                   Islington, Ontario   M9B 6E4

                                   Attention:  Director,
                                               Indirect Compensation

   and such notices shall be deemed to have been received
   fifteen (15) business days after mailing, if forwarded
   by mail, and the following business day if forwarded by
   cable, telegram, telex, TWX or hand.

   The aforementioned addresses of the parties may be
   changed at any time by giving fifteen (15) days prior
   notice to the other parties in accordance with the
   foregoing.

   In the event of a generally-prevailing labour dispute
   or other situation which will delay or impede the giv-
   ing of notice by any such means, the notice shall be
   given by such specified mode as will be most reliable
   and expeditious and least affected by such dispute or
   situation.

- 7 -

14. Non Waiver

The failure by any party at any time to enforce any of the provisions of this Agreement shall not be construed to be a waiver of such provision or of the right of any party thereafter to enforce such provision.

15. Entirety

This Agreement embodies the entire agreement between the parties with respect to the subject matter thereof, and there are no promises, terms, conditions or obligations, oral or written, expressed or implied, other than those contained herein. All prior agreements and understandings related to the subject matter of this Agreement are hereby cancelled except as otherwise provided herein. This Agreement may not be varied, amended or supplemented except by written instrument signed by all parties.

16. Governing Law

This Agreement and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of the Province of Quebec.

17. Language Clause

The Parties hereto confirm that it is their wish that this Agreement, as well as all other documents relating thereto, including notices, have been and shall be in English only. Les parties aux présentes, confirment leur volonté que cette convention de même que tous les documents, y compris tous avis, s'y rattachant, soient rédigés en anglais seulement.

- 8 -

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly authorized officers.

COMPAGNIE MONTREAL TRUST                NORTHERN TELECOM CANADA LIMITÉE

Per _____            Per _____
    NORTEL SENIOR CONSULTANT, HEAD OFFICE PENSION SERVICES

Per _____            Per _____

LEGAL DEPT.

APPROVED
23·12·80
DATE

ASSOCIATION D'HOSPITALISATION DU QUÉBEC

Per _____

Per _____

APPENDIX "1"



northern
telecom

Northern Telecom
Limited

TWX 610-421-3750
Telex 05-267414

P.O. Box 6123, Station A
Montreal Quebec
Canada  H3C 3J5

December 16, 1979

Mr. C.W. Mavor
Director General
Non-Corporate Rulings
Revenue Canada, Taxation
88 Metcalfe
5th floor
Ottawa, Ontario

Dear Mr. Mavor:

This is a request for an advance income tax ruling pursuant
to the Department of National Revenue Information Circular
No. 70-6 dated September 14, 1970 and No: 71-25 dated November
21, 1971.  Enclosed is our cheque for $150.00.

Relevant fact:

Effective January 1, 1980 or as current contracts with present
insurance companies terminate (none of these contracts are to
expire before 1980), Northern Telecom Limited, Bell Northern
Research, Bell Northern Software Research, Northern Telecom
Canada, hereinafter referred to as the "Company" propose to
establish a Health and Welfare Trust Fund through which the
following benefit plans for eligible employees, service
pensioners and dependents will be provided:

　　　　　　(a) Health care (Medical & Dental)
　　　　　　(b) Sickness and Accident
　　　　　　(c) Long Term Disability
　　　　　　(d) Survivor Income Benefit
　　　　　　(e) Group Life Insurance

The benefits will be paid in accordance with plan descriptions
and governed by a Master Trust Agreement.  Copies of these
documents are enclosed for your review.  The
hereinafter referred to as the "Trustee" will be responsible
for receiving the Company's contributions to the plans together
with the employees' contributions in the case of Survivor
Income Benefit Plan & Group Life Insurance and arranging for
payment of benefits to eligible employees and dependents and
payment of premiums to the insurance company hereinafter
referred to the "Carrier".  The Company's contributions will
be sufficient to cover actual claims and/or may be actuarially
determined dependent on the benefit plan or plans.

　　...  /2



1600 Dorchester Blvd. West Montreal, Quebec, Canada



PAGE 2

The Company also proposes to enter into an arrangement with
the Carrier to provide umbrella stop-loss coverage for all
the five(5) benefit plans.  The trigger point has yet to be
determined but it is anticipated that it will be in the range
of 110% to 130% of claims.

Following is a brief explanation of the funding arrangement
between the Company, the Trust & the Carrier:

(a)  Health Care Plan

     This plan will be in the nature of an
     Administrative Service Only (ASO) contract with stop loss
     insurance with a licensed carrier.  More specifically,
     the Company will make contributions to the trust to
     satisfy the claims liability.  All eligible claims by
     employees and dependents will be submitted to the Carrier
     for settlement.  The Carrier will issue a draft to the
     claimant(s) drawn on the trust's account.  The Company
     may from time to time wish to fund expected future claims,
     however, these contributions will be actuarially determined
     by the Carrier.

     The premium and claims settlement charges will be paid
     directly by the Company to the Carrier.

(b)  Sickness and Accident Plan

     This plan will be in the nature of a
     self-insured and self-administered plan.  It is antici-
     pated that these benefits will be funded on a pay-as-you-
     go basis  i.e. the Company will reimburse the Trust for
     all claims.  However the Company may from time to time
     wish to make contributions to the plan based on an
     actuarial valuation or some other reasonable basis.

     Eligible claims by employees will be submitted to the
     Company for settlement.  The Company will then make the
     payments on behalf of the Trustee and these checks will
     be drawn on the trust's account.  The Company's name may
     or may not appear on the cheques, this notwithstanding, the
     Company will be the sole administrator of the Plan.

(c)  Long Term Disability Plan

     As in the Health Care Plan, this plan
     will be in the nature of a self-insured arrangement with
     stop-loss coverage, and the use of a Carrier/Administrator
     or the Company to provide administrative services.  Under
     this plan eligible claims by employees will be submitted
     to the administrator for settlement.  The administrator

...../3

 northern
telecom

PAGE 3

(c)  (cont'd)

will then issue a draft to the claimant(s) drawn on the
trust's account.  The Company's contributions to the
trust will be sufficient to satisfy all claims.  However,
the Company may from time to time wish to make additional/
increased contributions based on an actuarial valuation
or some other reasonable basis.

(d)  Survivor Income Benefit Plan

The funding media is identical to that of Long Term
Disability.  However, employees will be required to
make contributions to this Plan.

(e)  Group Life Insurance Plan (Part I-Basic & Part II-Optional)

This plan will be in the nature of an
insured arrangement with the Carrier.  Under this plan
the Carrier will provide the Company with a composite
premium rate for both active and retired employees' group
life insurance coverage as at present.  Based on this,
the Company will then make contributions to the Trust
sufficient to pay the premiums.  Contributions (both the
active employees' and the Company's) not immediately
applied against claims & expenses of the Carrier will be
deposited/transferred to a sub-account of the Trust called
the "Pensioners Insurance Fund".

At present the Pensioners' Insurance Fund totalling approx-
imately $11 million is with Mutual Life Assurance of
Canada.  Mutual has agreed to transfer these monies into
the trust fund.

Group Life Insurance (Part II) is paid totally by the
employees and is optional.  These employees' contributions
will form part of the trust fund but will be kept in a
separate sub-account.

Under this plan (both Part I and Part II) the Carrier will
receive and settle all claims and receive settlement of
its premium at that time from the Trust.  As a matter of
record keeping claims together with the Carrier's claim
expense charges will be charged to the respective sub-
accounts.  It is anticipated that four(4) such sub-accounts
will be created, each holding (1) active employees'
premium contributions (Part I) - Basic, (2) the Company's
premium contributions (Part I) - Basic, (3) Unapplied
Premium - Forming the Pensioners Insurance Fund and (4)
active employees'premium contributions (Part II)-Optional.

.../4

 northern
telecom

PAGE 4

Ruling Requested

Based on the foregoing we request a ruling that:

(a)    (i)   The <u>Health Care</u> plan qualifies as a "private health services plan" within the meaning of Section 110(8)(a) of the Income Tax Act, so that benefits received by employees will reduce medical expenses otherwise deductible.

     (ii)  Benefits received (expenses reimbursed) under the plan will not be taxable to the employees under Section 6 of the Income Tax Act.

   (iii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of Section 6(1)(a) of the Income Tax Act.

   (iv)  The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred.

(b)    (i)   The <u>Sickness and Accident</u> benefits received by the employees under the plan will be taxable when received by virtue of Section 6(1)(f) of the Income Tax Act and reported on T4 Forms by the Trustee.

    (ii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of Section 6(1)(a) of the Income Tax Act.

   (iii)  The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred.

   (iv)  The Sickness and Accident benefits received by the employees under the plan will be subject to CPP and UIC contributions.

(c)    (i)   The <u>Long Term Disability</u> benefits received by the employees under the plan will be taxable when received by virtue of Section 6(1)(f) of the Income Tax Act and will be reported on T4A Forms by the Trustee.

    (ii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of Section 6(1)(a) of the Income Tax Act.

.../5

 northern
telecom

PAGE 5

(c)   (cont'd)

  (iii)  The Company's contributions will be deductible as
         ordinary business expenses in the year in which
         they are incurred.

(d)   (i)  The <u>Survivor Income Benefit</u> payments received
           by the beneficiaries qualify as a "death benefit"
           as defined by Section 248(1) of the Income Tax
           Act.  Furthermore the death benefit is reduced
           proportionately by such an amount that the employee's
           contribution is of the employer's contributions.
           These amounts will be reported on T4A Forms by the
           Trustee.

  (ii)  The employee's contributions will not be deductible
        in computing his income subject to tax.

  (iii)  The contributions made by the Company will not
         result in a taxable benefit to the employees.

  (iv)  The Company's contributions will be deductible as
        ordinary business expenses in the year in which
        they are incurred.

(e)   (i)  The <u>Group Life Insurance</u> proceeds received under the
           plan (Part I & II) by beneficiaries as a consequence
           of the death of an employee will be exempt from tax.

  (ii)  The premiums paid by the Trust (Part I only) will
        result in a taxable benefit to the employees which
        will be computed in accordance with Section 6(4) of
        the Income Tax Act and reported on T4 Forms by the
        Company, where applicable.

  (iii)  The contributions made by the Company (Part I only)
         will be deductible as ordinary business expenses in
         the year in which they are incurred.

  (iv)  The employee's contributions will not be deductible
        in computing his income subject to tax.

  (v)  The Pensioners Insurance Fund with Mutual totalling
       approximately $11 Million will be included in computing
       the Company's income subject to tax in the year in
       which they are transferred from Mutual.

  (vi)  The contributions to the Pensioners' Insurance Fund
        totalling approximately $11 Million will be deduc-
        tible in computing the Company's income as ordinary
        business expenses in the year in which these monies
        are transferred to the trust fund.

...⁄6


northern
telecom

PAGE 6

(f) Taxation of Trust

The trust' income for each year will be determined in
accordance with Section 104 of the Income Tax Act.  In
computing the income of the trust, contributions and
premiums paid to the Trust by the Company and employees,
the lump-sum transfer of the Pensioners' Insurance Fund
to the trust will not be considered as income.  Benefits
paid in the year to employees and premiums paid to the
Carrier will be deductible with the exception of amounts
paid under the Health Care Plan.


(g) Stop-loss premiums paid to the Carrier by the Company
will be deductible as ordinary business expenses in the
year in which they are incurred.

We would be most grateful if you would give the matter your
prompt attention.  Once you have had the opportunity to
review our request for ruling, we would like to meet with
you or your delegate to discuss this matter further and
provide whatever additional information and clarification
that may be required.

We are sending a copy of this letter to your Mr. P.M. Paquette,
Coverage Policy and Legislation Section Accounting and
Collections Division, to rule on the question of CPP & UIC
contributions.

We would appreciate you telephoning us at (514)931-5711 to
confirm the date for our meeting with you or your delegate
in Ottawa.

Yours truly,

M.A. Leduc
Director, Taxes

MAL/NFF/dh

cc  P.M. Paquette

# APPENDIX "J"

Revenue Canada     Revenu Canada
Taxation           Impôt

Mr. H.A. Leduc
Director, Taxes
Northern Telecom
P.O. Box 6123, Station A
Montreal, Quebec
H3C 3J5

AR E-304

M.E. Bartley
Tel.(613)995-0051

December 28, 1979

Dear Mr. Leduc:

Re:  Request for Advance Income Tax Rulings
     Northern Telecom Benefit Plans

We reply to your letter of December 16 requesting advance income tax
rulings in respect of a proposed Health and Welfare Trust Fund.

Facts

Effective January 1, 1980 or as current contracts with present insurance
companies terminate (none of these contracts are to expire before 1980),
Northern Telecom Limited, Bell Nothern Research, Bell Northern Soft-
ware Research, Northern Telecom Canada, hereinafter referred to as
the "Company" propose to establish a Health and Welfare Trust Fund
through which the following benefit plans for eligible employees,
service pensioners and dependents will be provided:

     (a)  Health care (Medical & Dental)
     (b)  Sickness and Accident
     (c)  Long Term Disability
     (d)  Survivor Income Benefit
     (e)  Group Life Insurance

The benefits will be paid in accordance with plan descriptions and
governed by a Master Trust Agreement. Copies of these documents were
enclosed with your letter. The _____, hereinafter referred
to as the "Trustee", will be responsible for receiving the Company's
contributions to the plans together with the employees' contributions
in the case of Survivor Income Benefit Plan & Group Life Insurance and
arranging for payment of benefits to eligible employees and dependents
and payment of premiums to the insurance company hereinafter referred

...../2

875 Heron Road     875, chemin Heron
Ottawa, Ont.       Ottawa (Ont)
K1A 0L8            K1A 0L8

- 2 -

to the "Carrier".  The Company's contributions will be sufficient to cover actual claims and/or may be actuarially determined dependent on the benefit plan or plans.

The Company also proposes to enter into an arrangement with the Carrier to provide umbrella stop-loss coverage for all the five (5) benefit plans.  The trigger point has yet to be determined but it is anticipated that it will be in the range of 110% to 130% of claims.

Following is a brief explanation of the funding arrangement between the Company, the Trust & the Carrier:

(a) Health Care Plan

This plan will be in the nature of an Administrative Service Only (ASO) contract with stop loss insurance with a licensed carrier. More specifically, the Company will make contributions to the trust to satisfy the claims liability.  All eligible claims by employees and dependents will be submitted to the Carrier for settlement.  The Carrier will issue a draft to the claimant(s) drawn on the trust's account.  The Company may from time to time wish to fund expected future claims, however, these contributions will be actuarially determined by the Carrier.

The premium and claims settlement charges will be paid directly by the Company to the Carrier.

(b) Sickness and Accident Plan    not in the trust

This plan will be in the nature of a self-insured and self-administered plan.  It is anticipated that these benefits will be funded on a pay-as-you-go basis i.e. the Company will reimburse the Trust for all claims.  However, the Company may from time to time wish to make contributions to the plan based on an actuarial valuation or some other reasonable basis.

Eligible claims by employees will be submitted to the Company for settlement.  The Company will then make the payments on behalf of the Trustee and these checks will be drawn on the trust's account  The Company's name may or may not appear on the cheques, this notwithstanding, the Company will be the sole administrator of the Plan.

(c) Long Term Disability Plan

As in the Health Care Plan, this plan will be in the nature of a self-insured arrangement with stop-loss coverage, and the use of a Carrier Administrator or the Company to provide administrative services.  Under this plan eligible claims by employees will be

...../3

- 3 -

submitted to the administrator for settlement.  The administrator
will then issue a draft to the claimant(s) drawn on the trust's
account.  The Company's contributions to the trust will be suffi-
cient to satisfy all claims.  However, the Company may from time
to time wish to make additional/ increased contributions based on
an actuarial valuation or some other reasonable basis.

(d)   <u>Survivor Income Benefit Plan</u>

The funding media is identical to that of Long Term Disability.
However, employees will be required to make contributions to this
Plan.

(e)   <u>Group Life Insurance Plan (Part I-Basic & Part II-Optional)</u>

This plan will be in the nature of an insured arrangement with the
Carrier.  Under this plan the Carrier will provide the Company
with a composite premium rate for both active and retired
employees' group life insurance coverage as at present.  Based on
this, the Company will then make contributions to the Trust
sufficient to pay the premiums.  Contributions (both the active
employees' and the Company's) not immediately applied against
claims & expenses of the Carrier will be deposited/transferred
to a sub-account of the Trust called the "Pensioners Insurance
Fund".

At present the Pensioners' Insurance Fund totalling approximately
$11 million is with Mutual Life Assurance of Canada.  Mutual has
agreed to transfer these monies into the trust fund.

Group Life Insurance (Part II) is paid totally by the employees
and is optional.  The employees' contributions will form part
of the trust fund but will be kept in a separate sub-account.

Under this plan (both Part I and Part II) the Carrier will receive
and settle all claims and receive settlement of its premium at that
time from the Trust.  As a matter of record keeping, claims together
with the Carrier's claim expense charges, will be charged to the
respective sub-accounts.  It is anticipated that four (4) such
sub-accounts will be created, each holding (1) active employees'
premium contributions (Part I) - Basic, (2) the Company's
premium contributions (Part I) - Basic, (3) Unapplied
Premium - Forming the Pensioners Insurance Fund and (4) active
employees' premium contributions (Part II)-Optional.

<u>Rulings Requested and Given</u>

Provided our understanding of the facts set out above is correct and
the trust and the plans are set up in the manner described in the
documents submitted by you, our rulings are that

.../4

- 4 -

(a)  (i)  The Health Care Plan qualifies as a "private health services plan" within the meaning of paragraph 110(8)(a) of the Income Tax Act, so that by virtue of subsection 110(7), benefits received by employees will reduce medical expenses otherwise deductible under paragraph 110(1)(c).

(ii)  Benefits received under the plan will not be taxable to the employees under section 6 of the Act.

(iii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of paragraph 6(1)(a) of the Act.

(iv)  The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred to the extent that those contributions are required by the terms of the plan.

(b)  (i)  The Sickness and Accident benefits received by the employees under the plan will be taxable when received by virtue of paragraph 6(1)(f) of the Act and reported on Form T4A.

(ii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of paragraph 6(1)(a) of the Act.

(iii)  The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred to the extent that those contributions are required by the terms of the plan.

(c)  (i)  The Long Term Disability benefits received by the employees under the plan will be taxable when received by virtue of paragraph 6(1)(f) of the Act and will be reported on Form T4A.

(ii)  The Company's contributions will not result in a taxable benefit to the employees by virtue of paragraph 6(1)(a) of the Act.

(iii)  The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred to the extent that those contributions are required by the terms of the plan.

...../5

- 5 -

(d)   (i)   The Survivor Income Benefit payments received by the beneficiaries qualify as a "death benefit" as defined by subsection 248(1) of the Act the amount of which is reduced proportionately to reflect the amounts contributed by the employee. These amounts will be reported on Form T4A by the Trustee.

    (ii)   The employee's contributions will not be deductible in computing his income subject to tax.

    (iii)   The contributions made by the Company will not result in a taxable benefit to the employees.

    (iv)   The Company's contributions will be deductible as ordinary business expenses in the year in which they are incurred to the extent that those contributions are required by the terms of the plan.

(e)   (i)   The Group Life Insurance proceeds received under the plan (Part I & II) by beneficiaries as a consequence of the death of an employee will be exempt from tax.

    (ii)   The premium paid by the Trust (Part I only) will result in a taxable benefit to the employees which will be computed in accordance with subsection 6(4) of the Act and reported on Form T4 by the Company where applicable.

    (iii)   The contributions made by the Company (Part I only) will be deductible as ordinary business expenses in the year in which they are incurred.

    (iv)   The employee's contributions will not be deductible in computing his income subject to tax.

    (v)   The Pensioners Insurance Fund with Mutual totalling approximately $11 million will be included in computing the Company's income subject to tax in the year in which it is transferred from Mutual to the Company.

    (vi)   The amount of the Pensioners' Insurance Fund totalling approximately $11 million will be deductible in computing the Company's income as ordinary business expenses in the year in which it is transferred to the trust fund.

(f)   The trust's income for each year will be determined in accordance with Section 104 of the Act. In computing the income of the trust, contributions and premiums paid to the Trust by the Company and employees and the lump-sum transfer of the Pensioners' Insurance Fund to the trust will not be considered as income. Benefits paid

.../6

- 6 -

in the year to employees and premiums paid to the Carrier will
be deductible with the exception of amounts paid under the Health
Care Plan; none of these may create a loss which is deductible
by the trust in computing its taxable income in any taxation year.

(g)   Stop-loss premiums paid to the Carrier by the Company will be
      deductible as ordinary business expenses in the year in which
      they are incurred.

These rulings are given subject to the general limitations and qualifi-
cations set forth in Information Circular 70-6R dated December 18, 1978,
issued by the Department of National Revenue, Taxation.

Yours truly,


for Director General
Non-Corporate Rulings &
Publications Directorate