**APPENDIX "KKK"**

1.

1.00

INTRODUCTION & SUMMARY

This manual provides a description of, and processes for the
maintenance of the self-insured employee benefits program,
covering Canadian employees of NTL, NTC, BNR and NTSL.   The
underlying corporate consideration is the provision of benefits
coverage to all employees at the lowest cost to the corporation.

2.

1.01 EMPLOYEE BENEFIT PLANS

Benefit coverage through the Health and Welfare Trust
------------------------NTL/C------------------------

|  | MANAGEMENT | UNION | PENSIONERS | BNR | NTSL |
|---|---|---|---|---|---|
| **HEALTH** | | | | | |
| Semi-Private | x | – | x | x | x |
| Extended Health | x | x(A) | x | x | x |
| Dental | x | x(A) | – | – | – |
| **LONG TERM DISABILITY** | x | x | – | x | x |
| **SURVIVOR** | | | | | |
| Group Life | | | | | |
| Part I | x | x | x | x | x |
| Part II | x | x | x | x | x |
| Dependent | – | – | – | – | x |
| Survivor Transition | x(B) | x | x | – | – |
| Survivor Income | x | – | – | x | x |

(A) - For those employees covered under Quebec Blue Cross only.

(B) - Non management, non union.


The distinction between employee groups can generally be regarded
as union versus all other groups which are referred to as
management.

3

## 1.02   TAXATION - BENEFITS

|  | Health Care | LTD | SIB | STB | Group Life |
|---|---|---|---|---|---|
| **Relating to Employees:** | | | | | |
| (a)   Benefit received taxable to employee | No | Yes | No* | No* | No |
| (b)   Employee contribution tax deductible | – | – | No | – | No |
| (c)   Employer contribution is a taxable benefit to employee | No | No | No | No | Yes** |
| **Relating to Northern Telecom:** | | | | | |
|      Employer contribution deductible | Yes | Yes | Yes | Yes | Yes |
| **Relating to Trust Fund** | | | | | |
|      Benefits paid deductible | No | Yes | Yes | Yes | Yes |
| Reporting Required (Ref. Section 8) | No | Yes | Yes | Yes | Yes** |

*If under specified limits.

**If over specified limits

1.03   RESPONSIBILITIES

1.04    Benefits Management Committee

This Committee is organized into four components: investments, control, funding and design. The principal responsibilities are outlined below.

- Review and evaluate new employee benefit plans and compare with the terms of existing benefit plans.

- Determine, evaluate and report annually on the Company benefits costs versus these costs in other large corporations.

- Initiate ideas, approaches which will contribute better benefit plan design, administration funding and cost.

- Examine and endorse employee benefit information to be presented to the Management Resources and Compensation and Pension Policy Committees of the NTL subsidiary boards and committees.

- Establish and maintain a basis for the creation of ongoing five-year plans for employee benefits recognizing a changing employee profile, company growth, etc.

- Examine and endorse employee benefits information prior to release to the public and organization groups external to the company.

1.05   NTC Benefits

NTC Benefits (1462) is responsible for analyses of claims from an eligibility; claims amount; and preparation, point of view.

1.06   NTC Trust Accounting

NTC Trust Accounting (1132) has the responsibility of maintaining the Trust's accounting records. Responsibilities include:

- Recording employer and employee contribution on the "unitization" record.

- Recording benefits paid on the basis of the Monthly Claims reports as issued by Mutual Life and Quebec Blue Bross.

- Monitoring and controlling balances in the banking accounts.

- Establishing the chart of accounts.

1.07   NTC Trust Accounting is responsible for the general administration and control of the Trust Fund. This includes:

- Verifying all related expenses to the Trust and initiating payment thereof.

- Verifying all claims/benefit payments through the Monthly Claims reports and monitoring the carriers' account balances.

- Preparing year-end experience statements by employer/employee group and benefit plan.

- Preparing of monthly and quarterly reports as described.

- In conjunction with the NTL Tax Department, the processing of all statutory filing requirements, and sending the returns to NTL Tax Department.

- Projecting claims payouts and advising NTL Pension Department of liquidity requirements.

1.08   NTC Payroll Department

NTC Payroll Department (1121) is responsible for:

(a) Issuing all T4's-T4A's/TP4A's Supplementaries to the beneficiaries.

(b) Preparing T4-T4A/TP4-TP4A Summaries and send them to NTL Tax Department (88) along with the government copies of the Supplementaries (per (a) above) and reconciling schedules.

(c) Ensuring STB beneficiaries are advised of the exempt portion of this benefit upon advice from Mutual Life, by either an attached letter or directly on the T4.

1.09   NTL Pension Department

The NTL Pension Department (48) has the responsibility for the investment of the assets in the Health and Welfare Trust, subject to the guidelines stipulated under section 25.

1.10   NTL Tax Department

NTL Tax Department (88) is responsible for:

(a) Reviewing and filing the Trust information returns – T3/TP3 and the T4-T4A/TP4-TP4A Summaries.

(b) Ensuring that the HWT is operated within the guidelines established in the Advance Ruling, and

(c) Monitoring all changes, both statutory and administrative, that may have any tax implications.

1.11   The NTL Tax Department (88) must be advised of any proposed modification to the Health and Welfare Trust funds and of any policies and procedures relating thereto. As any modifications to the Trust may invalidate the advance rule and/or create adverse tax implications, NTL Tax Department will review any proposed changes and make recommendations.

1.12  NTL Treasury

Corporate Finance Analysis and Control (65) of the NTL Treasury
Department shall annually review the actual cost of each of the
employee benefit plans in comparison with prior and anticipated
future costs.  NTL Treasury shall also review and evaluate
regularly plans for the funding of employee benefit plans.  NTL
Treasury establishes general financial policy but also is
responsible for the approval of all financial and related
changes to the Health and Welfare Trust fund.

1.13  NTL/C Legal Department

The counsel is responsible for ensuring that all Benefit and
Financial (including tax) concerns are secured in all documents
involving the Trust Fund and Northern.  Counsel is also
responsible for ensuring time is available to begin
re-negotiations prior to the expiration of the Agreements.  The
present expiration for the following documents:

Mutual Life ASO           —  12.31.82 by Administrator
                             or 60 days by Trustee after
                             12.31.80
Quebec Blue Cross ASO     —  1.1.81 or upon 60 days notice
Montreal Trust Agreement  —  90 days notice

The above documents are attached as Appendices.

1.14  Montreal Trust

Montreal Trust as Trustees of the Health and Welfare Trust Fund
as documented in the agreement between Northern Telecom Limited
and Montreal Trust attached as Appendix D.  The principal
services are:

   1.  Daily cash reports (to NTC Trust Accounting)
   2.  Monthly statement of assets and investments
   3.  Safe-keeping of securities
   4.  Acquisition and sale of securities as directed by
       Pension Investment Department (48).

1.15  Mutual Life

As administrator of the Administrative Services Agreement,
Mutual Life shall provide the following services in addition to
claims payments.

   1.  Periodic Claims Analysis;

   2.  Claim Control Information;

   3.  Claims Accounting;

   4.  Claim Forms;

   5.  Costs Analysis including projections for future periods
       and estimates of outstanding liabilities;

   6.  Advice on Plan Design Trends;

   7.  Provide on a monthly basis information for third party
       payments in the agreed format;

   8.  Provide year end information for the processing of T4/T4A
       TP4/TP4A to NTC Payroll by mid January, in the agreed format.

7

1.16  Mutual Life shall advise the Trustees and Northern Telecom of the
      level of funding required to pay for expected claims.  This advice
      is to be provided no later than year end for each year.  Mutual
      Life's Group Policyholder Service Officer is Mr. Gerry Ward; their
      actuary is Mr. Kurt Von Schilling.  The phone number is
      456-0471/2/3/5.

1.17  Auditors

      An external audit is to be performed annually on the complete
      Health and Welfare Trust operation.

1.00   EMPLOYEE BENEFIT PLANS

2.01   COMPREHENSIVE HEALTH CARE PLAN
       (applicable to all active employees designated as a management or
       support staff grade.

       The following outlines the general provisions of this plan.   More
       complete details of the plan are contained in appendix A to the
       ASO agreement, administrative procedures, employee booklets
       entitled "Your benefits program", etc.

2.02   General Details of Plan

       1.   The comprehensive health care plan (encompassing the
            supplementary hospitalization benefit, extended health care
            benefit, basic, major and orthodontic dental benefit and other
            health care expense benefits is available to all eligible
            employees in the above groups on an individual or family
            basis.

       2.   The benefits consist of reimbursement by the Administrator to
            an eligible participant in the plan in the percentages shown
            below, and may be subject to a deductible, maximum limits, and
            exclusions of certain expenses as detailed in the plan:

2.03   Supplementary Hospitalization Benefit

       Reimbursement Percentage   - 100%
       Deductible                 - None

2.04   Extended Health Care Benefit and Basic Dental Benefit

       Reimbursement Percentage   - 80%
       Deductible                 - applicable to the combined eligible
                                    expenses of both the Extended Health
                                    Care Benefit and Basic Dental Benefit
                                  - $25. per person per calendar year
                                  - $50. maximum per family (employee and
                                    dependents) per calendar year
                                  - where two or more members of a family
                                    unit are injured in one accident, the
                                    deductible will be $25 with respect to
                                    the total eligible expenses arising
                                    from the accident

2.05   Major Dental Benefit

       Reimbursement Percentage   - 50%
       Deductible                 - None

2.06   Orthodontic Dental Benefit

       Reimbursement Percentage   - 50%
       Deductible                 - None

2.07   The MAXIMUM AMOUNT PAYABLE for eligible expenses incurred in a calendar year under the Major Dental Benefit will be $2,000. in respect of an employee and $2,000. in respect of each dependent of the employee.   The maximum lifetime amount payable for eligible expenses incurred under the Orthodontic Dental Benefit will be $1,500. in respect of an employee and $1,500. in respect of each dependent of the employee.

2.08   Other Health Care Expense Benefit

Reimbursement Percentage   - 50%
Deductible                 - None

Where an employee's deductible plus any co-insurance payments made by the employee for eligible expenses (up to any applicable limits) under the Extended Health Care Benefit, Basic Dental Benefit, Major Dental Benefit and Other Health Care Expense Benefit, but excluding the Orthodontic Dental Benefit, exceeds $1,000 in any calendar year for the family unit, reimbursement will increase to 100% for all eligible expenses under these benefits.

2.09   CLAIMS PROCESSING - GENERAL

1.   The Administrator, in respect of any claim under the Comprehensive Health Care Plan, may require, as the case may be, the originals of itemized hospital or dental bills, reports, records, drug and equipment bills, an itemized statement completed by the physician or other practitioner who attended the employee or dependent, pre-treatment x-rays, study models or any other information deemed reasonable under the circumstances.

2.   Proof of a Comprehensive Health Care claim satisfactory to the Administrator must be made within 18 months after the date on which the expense is incurred.

2.10   CLAIMS PROCESSING ROUTINE - HEALTH CARE EXPENSES

1.   When an employee and/or the employee's dependents have accumulated receipts or bills for health care in any one calendar year for allowable expenses in excess of the applicable deductibles shown under paragraph 2.02 above, the employee obtains a claim form (Exhibit A) from the personnel department concerned and completes all pertinent portions of the form.

2.   Health care bills for each member of the family are grouped. All receipts for expenses incurred by the employee are entered together on the claim form, followed by receipts for the spouse and each child.

3.   The employee completes, dates and signs the claim form, and forwards the form together with all original bills, receipts, etc. directly to the Administrator for reimbursement.

4. Upon receipt by the Administrator of due proof that the employee and/or the employee's dependents have incurred the eligible expenses, for medically necessary services, the Administrator will provide reimbursement directly to the employee with respect to such expenses subject to the terms of the plan.

5. Any difference between the total amount of the claim submitted and the actual amount of reimbursement by the Administrator is explained to the employee when a settlement is made. These differences result from the application of co-payments, deductibles, or from ineligible expenses.

6. A copy of the processed claim form is returned by the Administrator to the employee together with a reimbursing cheque and, if applicable, an "explanation of benefits" form.

## 2.11   CLAIMS PROCESSING ROUTINE – ALL DENTAL EXPENSES

1. When an employee and/or the employee's dependents claim dental expenses in any one calendar year in excess of the applicable deductibles shown under paragraph 2.02 above, the employee obtains a claim form (Exhibit B) from the personnel department concerned. Part 1 on the form is completed by the dentist and gives details about the patient and services performed. Part 2 is fully completed by the employee and the form mailed directly by the employee to the Administrator for reimbursement.

2. Upon receipt and approval by the Administrator of due proof that the employee and/or the employee's dependents have incurred the eligible expenses, for necessary dental services, the Administrator will provide reimbursement with respect to such expenses subject to the terms of the plan.

3. Any difference between the total amount of the claim submitted and the actual amount of reimbursement by the Administrator is explained to the employee when a settlement is made. These differences result from the application of co-payments, deductibles, or from ineligible expenses.

4. The actual calculation of the benefit payable is shown by the Administrator in the upper right area of the claim form. A copy of the processed claim form is returned by the Administrator to the employee together with reimbursing cheque and, if applicable, and "explanation of benefits" form.

## 2.12   CLAIMS ANALYSIS

1. On a monthly basis, the Administrator forwards a Claims Report listing individual payments made during the month. These reports are verified for correctness by the NTC Benefits on a ad hoc basis.

Group No.
90002

The Mutual Life Assurance Company of Canada/Waterloo, Ontario

# SUMMARY OF EXTENDED HEALTH AND OTHER HEALTH CARE EXPENSES

MLI logo

480ME-OP-NT-12.78

**PART A - LIST OF EXPENSES (TO BE COMPLETED BY EMPLOYEE)**

RESERVED FOR CLAIMS OFFICE - DO NOT USE THIS SPACE.

| Patient (self, spouse or first name of child) | Date of Birth for Children Day/Mo./Yr. | Date Services Rendered Day/Mo./Yr. | Type of Service (show Rx No. for drugs) | For drugs only: Name of Drug or DI Number | Name of Drug Store, Hospital or Practitioner | Amount Charged | Ineligible Expenses |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | TOTALS ► | | | |

**Deductible $**

**Co-Payment %**

**Net $**

**TOTAL PAYMENT $**

**INSTRUCTIONS FOR THE USE OF THIS FORM**

1. Group the bills for each member of your family.

2. Complete Part A - List of Expenses.

3. Do not submit a claim until you have expenses in excess of the deductible.

4. Complete Part B - Statement of Employee

5. If any of the expenses included are eligible for reimbursement under any other plan, place a check-mark (✓) in the left hand margin opposite the expense.

6. Submit this form and original bills, receipts, etc. for the expenses to Mutual Life of Canada at the address shown on your wallet certificate. A preaddressed envelope is provided.

**PART B - EMPLOYEE'S STATEMENT**

None of the above expenses is eligible for reimbursement under any other plan, except for the items identified by a check mark.

The above information is true and correct. All expenses listed were for services or supplies received by myself or my eligible dependents. None of the expenses included has been submitted previously to The Mutual Life Assurance Company of Canada.

I authorize the release of any information relating to the expenses claimed on this form to The Mutual Life Assurance Company of Canada or its agents.

Date _____ Signature _____

If this claim includes expenses for children over age 21, please give

First Name of Child _____

Name of School _____

Estimated Completion Date _____

Employee's Number as shown on the Wallet Certificate

Employee's Name _____

Mailing Address _____

Street _____ Apt. _____

City _____

Province _____ Postal Code _____

# DENTAL PLAN CLAIM FORM

90002

## PART 1 DENTIST

| | PATIENT'S LAST NAME | GIVEN NAMES |
|---|---|---|
| NAME | | |
| ADDRESS | ADDRESS | APT |
| CITY PROV | CITY | PROV |
| POSTAL CODE | POSTAL CODE | |
| TELEPHONE    SOCIAL INS NUMBER | | |

| DATE OF SERVICE DAY MO YR | PAT TOOTH CODE | PROCEDURE CODE | TOOTH SURFACE | LABORATORY CHARGE | DENTISTS FEE | TOTAL FEE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

FOR PLAN ADMINISTRATOR USE ONLY

THIS IS AN ACCURATE STATEMENT OF SERVICES PERFORMED AND FEES CHARGED E & OE

TOTAL SUBMITTED FEE _____

TOTALS
DEDUCTIBLE
CO-PAYMENT
PAYMENT
TOTAL PAYMENT

DENTIST'S SIGNATURE    DATE    DAY    MONTH    YEAR

FOR DENTIST'S USE ONLY FOR ADDITIONAL INFORMATION RE DIAGNOSIS, PROCEDURES OR COMPLICATIONS AND SPECIAL CONSIDERATIONS

INSTRUCTIONS TO DENTIST

A. If your dentist has recommended crowns and/or bridge work or any other dental expense over $300.00 you should ask your dentist to complete a pre-treatment plan.

This treatment plan must be submitted to Mutual Life of Canada before treatment commences. We shall advise you of the benefits payable in accordance with your dental plan.

B. Part 2 to be completed by claimant before taking this form to dentist.

C. Part 1 to be completed by attending dentist.

D. Mail form with parts 1 and 2 completed to Mutual Life of Canada at the address shown on the wallet certificate.

I UNDERSTAND THAT THE FEES LISTED IN THIS CLAIM MAY NOT BE COVERED BY OR MAY EXCEED MY PLAN BENEFITS I UNDERSTAND THAT I AM FINANCIALLY RESPONSIBLE TO MY DENTIST FOR THE ENTIRE COST OF THE TREATMENT I AUTHORIZE RELEASE OF THE INFORMATION CONTAINED IN THIS CLAIM FORM TO THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA OR ITS AGENTS

I HEREBY ASSIGN BENEFIT PAYABLE FROM THIS CLAIM TO THE ABOVE NAMED DENTIST AND AUTHORIZE PAYMENT DIRECTLY TO HIM

SIGNATURE OF PATIENT (OR PARENT GUARDIAN)

SIGNATURE OF SUBSCRIBER

## PART 2 CLAIMANT

Employee's number as shown on the wallet certificate

Employee's Name

Mailing Address:

Street _____ Apt

City _____ Prov

Postal Code _____

Patient    First Name _____

Last Name _____

Relationship to Employee _____

Date of Birth _____

If student over age 21, please give name of school _____

1. Are any of the expenses claimed on this form payable under any other benefit plan?    Yes ☐    No ☐
   If yes, please give group number, the name of the plan administrator and the certificate number under 4

2. Is any of the treatment performed the result of an accident?    Yes ☐    No ☐
   If yes, please give the details of the accident under 4 (Additional Information) and indicate if a claim was made for Workmen's Compensation benefits

3. Does the treatment include the replacement of a denture, crown or bridge?    Yes ☐    No ☐
   If yes, please give the date of prior placement and the reason for replacement under 4 (Additional Information)

4. Additional Information  To be completed if questions 1, 2 or 3 have been answered with YES

   _____
   _____

5. I authorize the release of any information or records requested in respect of this claim to the plan administrator or its agents and certify that the information given is true, correct and complete to the best of my knowledge

   Date _____    Signature of Claimant _____

3.00   LONG TERM DISABILITY (LTD) PLAN
       (applicable to all employees in accordance with the definitions
       shown below)

       The following outlines the general provisions of this plan.  More
       complete details of the plan are contained in the appendices to the
       ASO agreement, administrative procedures, employee booklets entitled
       "Your benefits program", etc.

3.01   GENERAL DETAILS OF PLAN

   1.  Any active employee who becomes totally disabled, and has
       completed the qualifying period of 52 weeks on the Company's
       sickness and accident (S&A) disability plan, is eligible for
       LTD benefits in accordance with the following employee groups
       and definitions:

       Definition of Total Disability

           Employee Group

       (a)  All unionized,                Total disability means that the
            including certified            employee, as a result of injury
            professionals,                 or disease, is unable to perform
            All non-union hourly           the duties of any occupation,
                                           either within or outside the
                                           Company, for which the employee
                                           is reasonably suited by education,
                                           retraining and experience.

       (b)  All management,               Total disability means that the
            All non-union salaried         employee, as a result of injury or
                                           disease, is unable to perform,
                                           during any 52 week qualifying
                                           period and the 12 month period
                                           immediately following, the regular
                                           duties of the employee's
                                           occupation, and following the
                                           expiry of the 12 month period, to
                                           perform the duties of any
                                           occupation, either within or
                                           outside the Company, for which the
                                           employee is suited by education,
                                           training and experience.

       In both (a) and (b) above, the determination of "total
       disability" is without consideration to the availability of
       employment of such occupations.

   2.  The amount of monthly LTD benefit will be an amount, as
       determined by the Company, for which the employee was eligible
       at the commencement of the disability

12.

3.  This LTD benefit is integrated with any primary
    government-provided disability benefits so that the employee's
    income from all sources does not exceed 90% of an employee's
    immediate pre-disability monthly earnings.

4.  If, while disabled and receiving LTD benefits, the employee
    resumes part or full-time employment as part of an approved
    rehabilitation program, and such employment pays less than 75%
    of pre-disability monthly earnings, the LTD benefit payment is
    adjusted to bring total monthly income to the 75% level.

## 3.02  CLAIMS PROCESSING ROUTINE

1.  When a disabled employee, at the 10 month stage of disability,
    appears likely to exhaust the 52 weeks of regular S&A benefits,
    the medical and personnel departments concerned arrange for the
    completion of confidential LTD claim forms (Exhibits A & B).

2.  These completed forms, together with any other supporting
    documentation and recommendations by the Company's medical
    department, are forwarded to the Administrator for LTD claims
    adjudication.  There is a $55 surcharge for any further
    Administrator    LTD adjudication.

3.  Following careful consideration of all documentation received,
    the Administrator either does or does not admit the case as a
    LTD claim, according to the applicable definition in paragraph
    3.01 under "General details of plan" above.  Appropriate
    confirmation of such a decision is provided to the Company's
    medical director and NTC Benefits.

4.  Upon receipt of confirmation that the Administrator will admit
    the claim, NTC Benefits department, in concert with the
    employee's personnel department, provides the Administrator with
    full details of the monthly LTD benefit payable, date of benefit
    commencement, and such other applicable data which relates to the
    case, including the employee's benefits coverage and deductions
    to be maintained during the period of LTD.  The disabled employee
    is similarly advised of all details by the personnel department
    when the claim has been approved by the Administrator.
    Applicable LTD cheques are mailed monthly directly to the
    employee by the Administrator.

5.  LTD benefits are paid to the disabled employee until one of the
    following occurs, whichever is the earliest:

    -   the employee ceases to be totally disabled, or

    -   the employee fails to submit proof of continuance of total
        disability as required by the Administrator, or

    -   the employee fails to submit, upon request by the
        Administrator, to a medical examination by a medical examiner
        appointed by the Administrator, or

- the employee refuses to participate in a rehabilitation program which has been approved by the attending physician, the Company and the Administrator, or

- the employee engages in any occupation for remuneration or profit or any educational program other than in a rehabilitation program approved by the attending physician, the Company and the Administrator, or

- the benefit period expires, (at age 65) or

- the employee dies.

6.  If the employee's case is <u>not</u> admitted as a LTD claim, the Administrator so confirms such a decision to the Company's medical director and NTC Benefits.  In such a case, the employee is appropriately advised and a prescribed 2 year leave of absence routine is instituted by the personnel department following expiry of the 52 week of S&A benefits.

7.  Proof of a LTD claim satisfactory to the Administrator must be made to the Administrator within three (3) months after the expiration of the qualifying period of 52 weeks of S&A benefits.

3.03  <u>CLAIMS ANALYSIS</u>

1.  On a monthly basis, the Administrator forwards a Claims Report listing individual long term disability benefit payments made during the month, together with deductions for income taxes, C/QPP, UIC, premiums for supplementary hospitalization, credit union, union dues, etc.  These reports are verified for correctness by the NTC Benefits and forwarded to the payroll department for third-party payments and record-keeping purposes.

3.04  <u>REHABILITATION EXPENSES</u>

Any and all out-of-pocket expenses incurred by the Administrator as a result of assisting the disabled employee to undertake some form of employment or training as part of an approved rehabilitation program, will be paid directly by Northern Telecom outside the Health and Welfare Trust.  These expenses should also include any costs of approved outside or independent medical services.

3.05  <u>REASSESSMENT FEES</u>

Any fees incurred as a result of the Administrator arranging for periodic medical reassessment of the disabled employee will be paid directly by Northern Telecom outside the Health and Welfare Trust.  These reassessments are for the purpose of determining

whether the disabled employee remains qualified to continue to receive LTD benefits, or should be involved in a rehabilitation program, or is declared fit to resume employment.

## 3.06  WAIVER OF PREMIUMS - GROUP LIFE INSURANCE & SIB

Any disabled employee, whose case has been approved for LTD benefits, is automatically granted a "waiver of premium" for company sponsored life insurance and SIB purposes (where applicable).

If the employee is participating in these programs as of the first day of disability, all premiums paid by the employee, via payroll deductions, are refunded to the employee upon commencement of LTD benefits as advised by the Personnel Department.  Coverage in effect at the commencement of disability would continue for the period of LTD at no cost to the employee.

**NORTHERN TELECOM**

# CLAIM FOR LONG TERM DISABILITY BENEFITS

| Group No |
|---|
| 90002 |

## EMPLOYER'S STATEMENT:

Before the end of the qualifying period submit this form with the Employee s Statement (on reverse side of this form) directly to the Medical Department at Northern Telecom in the enclosed pre-addressed envelope

Employee s Name_____ Sex_____ Employee No _____ Occupation_____

| Dept No | Division | Location | Loc Code | Social Insurance Number | Cont Service Date | | |
|---|---|---|---|---|---|---|---|
| | | | | | Yr | Mo | Day |

| Employee s Grade | Union Group (if applicable) | Bargaining Unit Code Number (if applicable) | Date Last Worked | | | Amount of L T D Benefit | |
|---|---|---|---|---|---|---|---|
| | | | Yr | Mo | Day | $ | Mo |

## A. EARNINGS:

Basic salary or wage (plus COLA if applicable) immediately prior to commencement of disability  $_____ per month

## B. DISABILITY BENEFITS:

1  Last day for which short-term (S & A) benefits paid:  Yr_____ Mo_____ Day_____ .

2  Workmen s Compensation payable?  Yes ☐  No ☐  If yes $_____ weekly ☐  monthly ☐  from Yr_____ Mo_____ Day_____

If benefit has stopped  date to which paid  Yr_____ Mo_____ Day_____  W C B Claim Number (if known)_____

3  Canada or Quebec Pension Plan. To your knowledge  has the employee claimed benefits?  Yes ☐  No ☐

4  If you are aware of any other sources from which the employee is claiming or receiving disability benefits  please name them.

_____

_____

_____

5  Which definition of total disability applies to this employee (ie Union  Non-union Hourly or Salaried, or Management)?

_____

_____

## C. BRIEF BACKGROUND OF EMPLOYEE'S EDUCATION, TRAINING AND EXPERIENCE:

1  Education:

_____

_____

2  Training:

_____

_____

3.  Experience: Starting with current job title  list titles of all previous jobs performed both within and outside Northern Telecom  Attach copy of current job write-up or published job description.

| Dates From | | Dates To | | Job Title |
|---|---|---|---|---|
| Yr | Mo | Yr | Mo | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Date_____   Authorized Signature_____

**nt** ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY

| Group No |
|---|
| 90002 |

| Patient s Name | | Age |
|---|---|---|

I hereby authorize the release to the Medical Dept. of Northern Telecom and to The Mutual Life Assurance Company of Canada of any information requested in respect of this claim.

Date _____   Signature of Patient _____

The patient is responsible for the securing of this form and any charge which may be made for its completion.

## To Physicians - Please note

This form has been specifically designed with the Physician in mind. By being comprehensive, it will hopefully reduce the physician s administrative work-load. Please complete the sections relating to your patient and stroke out non-applicable areas. In order to help the claimant sufficient details of History Investigation Findings and Treatment are essential

This form to be mailed directly to the Medical Dept. of Northern Telecom in the enclosed pre-addressed envelope.

## 1. HISTORY

a) When did symptoms first appear or accident happen?   Month        Day        Yr

b) Date total disability commenced?                      Month        Day        Yr

c) Has patient ever had same or similar condition?   ☐ Yes   ☐ No   ☐ Unknown
   If "Yes" state when and describe

d) Is condition due to injury or sickness arising out of patient s employment?   ☐ Yes   ☐ No   ☐ Unknown

e) Names of other treating physicians

## 2. DIAGNOSIS

a) Diagnosis (including any complications)
   Primary

   Secondary (if applicable)

b) Subjective symptoms

c) Objective findings (including results of current X-rays E.K G s or any other special tests)

## 3. TREATMENT

a) Date of first visit        Month        Day        Yr

b) Date of latest visit       Month        Day        Yr.

c) Frequency    ☐ Weekly   ☐ Monthly   ☐ Other (specify)

d) Is patient following recommended treatment program?   ☐ Yes   ☐ No

## 4. TYPE OF TREATMENT

a) Describe therapy and projected duration of treatment program

b) Date and description of surgery (if applicable)        Month        Day        Yr

## 5. PHYSICAL IMPAIRMENT

a) Is patient:   ☐ ambulatory   ☐ house confined   ☐ bed confined   ☐ hospital confined?

b) If ambulatory and/or house confined  please complete the section below:
   ☐ No Limitation of functional capacity; capable of strenuous activity
   ☐ Minimal Limitation of functional capacity; capable of moderate activity
   ☐ Medium Limitation of functional capacity; capable of light activity
   ☐ Severe Limitation of functional capacity; incapable of minimal activity

c) Remarks

185D-NT-2 81                                              See over

**nt** NORTHERN TELECOM

# ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY

Group No
90002

Patient's Name _____  —  Age _____

I hereby authorize the release to the Medical Dept. of Northern Telecom and to The Mutual Life Assurance Company of Canada of any information requested in respect of this claim.

Date _____   Signature of Patient _____

The patient is responsible for the securing of this form and any charge which may be made for its completion.

## To Physicians - Please note

This form has been specifically designed with the Physician in mind. By being comprehensive it will hopefully reduce the physician's administrative work-load. Please complete the sections relating to your patient and stroke out non-applicable areas. In order to help the claimant sufficient details of History Investigation Findings and Treatment are essential.

This form to be mailed directly to the Medical Dept. of Northern Telecom in the enclosed pre-addressed envelope.

## 1. HISTORY

a) When did symptoms first appear or accident happen?   Month _____   Day _____   Yr _____

b) Date total disability commenced?   Month _____   Day _____   Yr _____

c) Has patient ever had same or similar condition?   ☐ Yes   ☐ No   ☐ Unknown
   If 'Yes' state when and describe

d) Is condition due to injury or sickness arising out of patient's employment?   ☐ Yes   ☐ No   ☐ Unknown

e) Names of other treating physicians

## 2. DIAGNOSIS

a) Diagnosis (including any complications)
   Primary

   Secondary (if applicable)

b) Subjective symptoms

c) Objective findings (including results of current X-rays E.K.G.'s or any other special tests)

## 3. TREATMENT

a) Date of first visit   Month _____   Day _____   Yr. _____

b) Date of latest visit   Month _____   Day _____   Yr _____

c) Frequency   ☐ Weekly   ☐ Monthly   ☐ Other (specify)

d) Is patient following recommended treatment program?   ☐ Yes   ☐ No

## 4. TYPE OF TREATMENT

a) Describe therapy and projected duration of treatment program

b) Date and description of surgery (if applicable)   Month _____   Day _____   Yr _____

## 5. PHYSICAL IMPAIRMENT

a) Is patient:   ☐ ambulatory   ☐ house confined   ☐ bed confined   ☐ hospital confined?

b) If ambulatory and/or house confined please complete the section below:
   ☐ No Limitation of functional capacity; capable of strenuous activity
   ☐ Minimal Limitation of functional capacity; capable of moderate activity
   ☐ Medium Limitation of functional capacity; capable of light activity
   ☐ Severe Limitation of functional capacity; incapable of minimal activity

c) Remarks

185D-NT 2 81

**.00   SURVIVOR INCOME BENEFIT**
(applicable to all active employees designated as a management
or management support staff grade.

The following outlines the general provisions of this benefit.
More complete details of the benefit are contained in
Appendix A to the ASO agreement, administrative procedures,
employee booklets entitled "Your benefits program", etc.

**4.01   GENERAL DETAILS OF BENEFIT**

1.  On the death of a participating eligible employee from any
    cause, the Administrator will pay a Survivor Income Benefit
    (S.I.B.) consisting of a

    **Spouse Benefit**

    (a)  50% of the lesser of the employee's basic annual salary
         or the Yearly Maximum Pension Earnings in effect under
         the Canada/Quebec Pension Plan in the year of death,
         plus

    (b)  25% of the employee's basic annual salary in excess of
         the Yearly Maximum Pension Earnings in effect under the
         Canada/Quebec Pension Plan in the year of death.

    In the case where death is the result of an occupational
    accident, a lump sum payment will be payable in addition to
    any other benefits payable under this benefit.  The lump sum
    benefit is an amount equal to the employee's basic annual
    salary.  Plus, where applicable, a

    **Child Benefit**

    An amount equal to 10% of the employee's basic annual
    salary, payable on behalf of each dependent child, to a
    maximum of two children.

    If the employee dies leaving no spouse, the amount of
    the Child's Benefit will be 20% of the employee's basic
    annual salary payable on behalf of each dependent child to a
    maximum of two children.

2.  The S.I.B. will be reduced by the Survivor's Pension to
    which the spouse is entitled under the Canada/Quebec Pension
    Plan including benefits for the two youngest dependent
    children under 18 years of age.

3.  The minimum total S.I.B. will not be less than an amount
    equal to 25% of the employee's basic annual salary.

4.02  CLAIMS PROCESSING ROUTINE

1.  Upon notification of the death of an active employee with
    eligible dependent(s),    divisional personnel departments
    prepare a memorandum to NTC Benefits for approval of payment
    of the benefit.   In the case of inactive employees receiving
    long term disability benefits at the time of death, NTC
    Benefits provides similar data.   Full details in support of
    the claim are required as follows:

        Full name of deceased employee, employee number,
        department number, location and job grade
        classification

        Full name and address of eligible survivor(s) to whom
        the S.I.B. is to be paid, including social insurance
        number(s)

        Amount of monthly benefit, commencement date,
        termination dates where applicable, and accounting
        classification

        Amount of lump-sum payment (if applicable) and
        accounting classification

        TD1/TPD1 income tax forms covering the eligible
        survivor(s)

        Death or burial certificate, marriage certificate of
        spouse, birth certificates of dependent children, or
        any other offical document as applicable

2.  In cases where the eligibility of the survivor(s) is
    questionable or cannot be verified or properly
    substantiated, the personnel department provides full
    details to NTC Benefits who then arrange for submission of
    the case to the Employees' Benefits Committee for a
    decision.

3.  All approved S.I.B. cases are confirmed to divisional
    personnel departments by NTC Benefits preparatory to the
    commencement of payments by the Administrator.

4.  Details of approved S.I.B. cases and the authority to
    commence payments to eligible survivor(s) are confirmed to
    the Administrator by NTC Benefits.   These details include:

        Full name, address and relationship of eligible
        survivor(s) to whom the S.I.B. is to be paid, including
        a claim number

Full name of deceased employee, date of death, plus other supporting personal and employment details

Amount of monthly benefit, commencement date, and termination dates where applicable in the case of dependent children

Amount of lump-sum payment (if applicable)

Completed TD1/TPD1 tax forms

5.  As arranged with the Administrator, the first monthly benefit cheque payable to the eligible survivor(s) is forwarded to NTC Benefits in order that it may be associated with a suggested letter of explanation regarding the benefit to the recipient.  The cheque and suggested letter of explanation (which the personnal department will formalize) are next routed to the personnel department concerned for delivery to the recipient.

6.  Future monthly benefit cheques are forwarded directly to the eligible survivor(s) by the Administrator.

7.  Proof of a S.I.B. claim satisfactory to the Administrator must be made within three (3) months of the date of death of the employee.

4.03  <u>CLAIMS ANALYSIS</u>

1.  On a monthly basis, the Administrator forwards a Claims Report listing individual S.I.B. payments made during the month, together with deductions for income tax. These reports are verified for correctness by NTC Benefits department and forwarded to the payroll department for third-party payments and record-keeping purposes.

5.00    SURVIVOR TRANSITION BENEFIT
        (applicable to all unionized employees, including certified
        professionals, and non-union hourly and salaried employees)
        Also applicable to those pensioners who retired after July
        1, 1979 or date of ratification, whichever is later.

        The following outlines the general provisions of the benefit.
        More complete details of the benefit are contained in the
        appendices to the ASO agreement, administrative procedures,
        employee booklets entitled "Your benefits program", etc.

5.01    GENERAL DETAILS OF BENEFIT

        1.  On the death of an eligible employee or pensioner from any
            cause, the Administrator will pay a survivor transition
            benefit (S.T.B.) as determined by the Company, per month for
            a maximum of 60 consecutive months.  Payment will cease when
            60 consecutive monthly payments have been made or when there
            are no eligible dependent(s), whichever occurs first.

        2.  Where an eligible employee dies as a direct result of an
            occupational accident, the Administrator will pay in
            addition to the monthly benefit, a lump sum amount
            determined by the Company, as defined in the benefit group.

        3.  In addition, the Company will continue to pay premiums,
            where applicable, for provincial health insurance coverage
            for the deceased employee's eligible dependent(s) for up to
            60 consecutive months, under the NT plan.

5.02    CLAIMS PROCESSING ROUTINE

        1.  Upon notification of death of an employee or pensioner with
            eligible dependent(s), divisional personnel departments (or
            the pensioner relations department) prepare a memorandum to
            NTC Benefits department, for approval of payment of the
            S.T.B.  In the case of inactive employees receiving long
            term disability benefits at the time of death, NTC Benefits
            provides similar data to the Administrator.  Full details in
            support of the claim are required as follows:

                Full name of deceased employee or pensioner, employee
                number, department number, location and job grade
                classisifcation

                Full name, address and relationship of eligible
                dependent(s) to whom the S.T.B. is to be paid,
                including social insurance number(s)

                Amount of monthly benefit, commencement date, duration
                of payment and accounting classification

Amount of lump-sum payment (if applicable) and accounting classification

TD1/TPD1 income tax forms covering the eligible dependent(s)

Provincial health insurance enrollment cards covering the eligible dependent(s), where applicable

Death or burial certificate, marriage certificate of spouse, birth certificate of dependent children, or any other official document as applicable

2.  In cases where the eligibility of the dependent(s) is questionable or cannot be verified or properly substantiated, the personnel department provides full details to NTC Benefits who then arrange for submission of the case to the Employees' Benefit Committee for a decision.

3.  All approved S.T.B. cases are confirmed to divisional personnel departments by NTC Benefits preparatory to the commencement of payments by the Administrator.

4.  Details of approved S.T.B. cases and the authority to commence payments to eligible dependent(s) are confirmed to the Administrator by NTC Benefits.  These details include:

Full name, address and relationship of eligible dependent(s) to whom the S.T.B. is to be paid, including a claim number

Full name of deceased employee, date of death, plus other supporting personal and employment details

Amount of monthly benefit, commencement and termination dates

Amount of lump-sum payment (if applicable)

Schedule of income tax exemptions covering the 60 month period, and completed TD1/TPD1 tax forms

5.  As arranged with the Administrator, the first monthly benefit cheque payable to the eligible dependent(s) is forwarded to NTC Benefits in order that it may be associated with a suggested letter of explanation regarding the benefit to the recipient.  The cheque and suggested letter of explanation (which the personnel department will formalize) are next routed to the personnel department concerned for delivery to the recipient.

6.  Future transition cheques are forwarded directly to the eligible dependent(s) by the Administrator.

7. Proof of a S.T.B. claim satisfactory to the Administrator must be made within three (3) months of the date of death of the employee or pensioner.

5.03  CLAIMS ANALYSIS

1. On a monthly basis, the Administrator forwards a Claims Report listing individual S.T.B. payments made during the month, together with deductions for income taxes and premiums covering supplementary hospitalization. These reports are verified for correctness by NTC Benefits and forwarded to the payroll department for third-party payments and record keeping purposes.

6.00    GROUP LIFE INSURANCE - PARTS I AND II
        (applicable to all employees and pensioners (to age 65) on a
        voluntary basis)
        The following outlines the general provisions of this plan.
        More complete details of the plan are contained in the official
        contracts, administrative procedures, employee booklets entitled
        "Your benefits program", etc.


6.01    GENERAL DETAILS OF PLAN

    1.  On the death, from any cause, of an active employee or
        pensioner who was participating in the program, the
        Administrator will pay the applicable amount of life
        insurance to the designated beneficiary(ies).

    2.  Where an active employee was participating in Part I of the
        program and death occurs accidentally, the Administrator
        will pay twice the applicable amount of life insurance to
        the designated beneficiary(ies).

    3.  In the event a participating active employee in Part I of
        the program suffers any accidental dismemberment, the
        Administrator will pay the applicable amount of insurance to
        the employee in accordance with the provisions of the plan.

6.02    CLAIMS PROCESSING ROUTINE

    1.  Upon notification of death of an active employee or
        pensioner who was participating in the program, divisional
        personnel departments (or NTC Benefits in the case of an
        employee receiving long term disability benefits or
        pensioner relations department in the case of a pensioner)
        arrange for prompt completion and return of the pertinent
        claim form (Exhibit A) by the claimant and attending
        physician.  If there is no attending physician, a certified
        copy of the coroner's report must be provided.

    2.  If the deceased's estate is designated as the beneficiary,
        additional information is required as follows:

        (a)  Quebec - a notarial copy of the deceased's last
             will, or in the absence of a will, a notarial copy
             of the marriage contract, where one exists.

        (b)  All other Provinces - a notarial copy of the
             deceased's last will, or in the absence of a will,
             letters of administration.  In addition, if the
             total proceeds of all policies exceeds $5,000., a
             notarial copy of the letters probate is required.

        (c)  Letters probate or letters of administration may
             be waived by Northern Telecom in cases of hardship
             where no beneficiary is named and there is no Will
             but a widow(er) does exist. An application may be
             made to NTC-Benefits for special consideration of
             a small advance.

3.  In the case of accidental death or accidental dismemberment of an active employee, the completion of separate claim forms (Exhibits B and C) by the claimant and attending physician is required.   Divisional personnel departments or NTC Benefits arrange for the prompt completion and return of appropriate claim forms in either case.

4.  Completed claim forms covering death, accidental death, or accidental dismemberment are forwarded by divisional personnel departments (or NTC Benefits department or pensioner relations department, as applicable) to the Administrator, together with the original enrollment cards.

    The Administrator will verify and pay the amount of insurance specified in the claim, subject to a Succession Duty release or a Certificate of Discharge being required in the case of death, depending on the province in which the deceased was domiciled.

5.  A proof of death or dismemberment claim satisfactory to the Administrator must be made within three (3) months of the date of death (or accidental dismemberment) of an employee or pensioner.

6.03   CLAIMS ANALYSIS

1.  On a monthly basis, the Administrator forwards a Claims Report listing individual claims paid during the month. These reports are verified for correctness by NTC Benefits and pensioner relations department.

**M** The Mutual Life Assurance Company of Canada  Waterloo Ontario

# PROOF OF DEATH FOR GROUP INSURANCE

Name of deceased                                                    Employee ☐  OR  Dependent  ☐ Spouse  ☐ Child

Last address of deceased

Policy No. G                    Certificate No.                    Social Ins. No | | | — | | | — | | |
                                                                  of employee

Date of death                                  Date of birth

## STATEMENT OF GROUP POLICYHOLDER (i.e. employer or union or administrator etc.)

Please insert above information complete this statement and forward this form to the claimant or his or her representative. The claimant is responsible for obtaining and supplying your office with the physician's and claimant's statements and any additional requirements.

| Amount of Basic Insurance $ | Amount of Accidental Death Benefit (if being claimed) $ | Amount of insurance if dependent claim $ |
| --- | --- | --- |
| Date employee was last at work | Salary of employee at last day at work $ | Effective date of this salary |

Name of group policyholder

Date                  19        Signature                                    Title

## STATEMENT OF ATTENDING PHYSICIAN

(This statement must be completed if an accidental death benefit is being claimed; otherwise an official death certificate may be submitted in place of this statement.)

Date of death                  Place of death                          Age at death

Cause of death:  A  Disease or condition directly leading to death

                 B  Contributing or secondary condition

| If death was due to accident, suicide or homicide specify which and describe briefly | Was there or will there be: | an inquest? an autopsy? | Yes ☐  No ☐ Yes ☐  No ☐ |
| --- | --- | --- | --- |

Date of first attendance in last illness                    Date of last attendance in last illness

DECLARATION: These statements are true and complete to the best of my knowledge and belief.

Date                  19        Signature                                              M.D.

Address                                                          Postal Code

## STATEMENT OF CLAIMANT

In what capacity or by what title do you make this claim? (beneficiary executor etc.)        If claiming as beneficiary or legal heir give your date of birth

(If claimed by executor or administrator, a notarial copy of letters probate or letters of administration, as the case may be will be required.)

Are you claiming an accidental death benefit?  Yes ☐  No ☐    If 'Yes' please complete the form Proof of Accidental Death #2336.

| If the certificate does not stipulate payment in instalments is settlement to be made by | ☐ Income ☐ Deposit ☐ Cash | If an income is elected, a special form (to be provided) and proof of age may be required. |
| --- | --- | --- |

Was the deceased insured under any other group or individual policy or policies issued by the Mutual Life?  Yes ☐  No ☐    If "Yes", indicate the policy no.(s)

CERTIFICATION: I hereby certify that the above answers are full, complete and true, to the best of my knowledge.

AUTHORIZATION: I hereby authorize and request any physician, hospital, clinic, individual, law enforcement or government organization, or other entity that has any records or findings pertaining to the death of the life insured to furnish copies and/or give details of all available information including prior medical history autopsy, toxicological or pathological findings to The Mutual Life Assurance Company of Canada.

A photostat of this authorization shall be as valid as the original.

Signed at                                              Date

Signature of Claimant

Address of Claimant                                        Postal Code

**ANY CHARGE FOR COMPLETING THIS FORM IS THE RESPONSIBILITY OF THE CLAIMANT.**

490-8-77

M L | The Mutual Life Assurance Company of Canada / Waterloo Ontario

## PROOF OF ACCIDENTAL DEATH

It is the claimant's responsibility to provide proof that death was caused by an accident.

lease forward newspaper clippings of the accident

In the case of a motor vehicle accident  please provide a copy of the police report.

Further information and documentation may be requested.

Confirming my application for the accidental death benefit under Policy(ies) No. _____

and/or Group Policy No _____ Certificate No. _____

I provide the following details which are true to the best of my knowledge and belief

Date of accident: _____ Time: _____

Location of accident: _____

_____

_____

Type of accident: _____

Brief description of accident: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Names and addresses of witnesses to the accident: _____

_____

_____

_____

_____

_____

_____

_____

_____

Date _____ Signature of Claimant _____

2036-5-77

 The Mutual Life Assurance Company of Canada / Waterloo Ontario

# CLAIM FOR ACCIDENTAL DISMEMBERMENT BENEFIT

| Name of Insured Person | Date of Birth |
|---|---|

| Policy No. G | Certificate No | Social Insurance No |
|---|---|---|

## STATEMENT OF GROUP POLICYHOLDER

| Total benefit amount shown in contract $ | Amount being claimed $ | Effective date of Insurance |
|---|---|---|

If insurance has been cancelled, give date and reason

Date last at work _____ 19

Date of return to work _____ 19

Is claim due to an occupational accident?    Yes ☐    No ☐

Is claim being made to the Workmen's Compensation Board?    Yes ☐    No ☐

Give any additional information which might assist the Company in considering this claim

Name of Group Policyholder

| Date _____ 19 | Signature | Title |
|---|---|---|

## STATEMENT OF CLAIMANT

| Date of accident _____ 19 | Date of hospital confinement if any | From | To |
|---|---|---|---|

Physician's Name and Address (Please print)

Details of Accident (where and how it happened)

AUTHORIZATION: I hereby authorize any physician or practitioner who has observed or may hereafter observe me for diagnosis or treatment and any hospital or clinic where I have been or may hereafter become a patient, and any insurance company or any organization, that has any records or knowledge of me or my health, to give full particulars thereof including any prior medical history to The Mutual Life Assurance Company of Canada  A photostat of this authorization shall be as valid as the original.

| Signed at | Date |
|---|---|

Signature of Claimant

| Address of Claimant | Postal Code |
|---|---|

490AD-5-77                    NOTE TO CLAIMANT - PLEASE HAVE REVERSE SIDE COMPLETED BY THE ATTENDING PHYSICIAN.

## 7.00   PENSIONER HEALTH CARE PLAN
(applicable to all pensioners and survivor annuitants of Northern Telecom)

The following outlines the general provisions of this plan. More complete details of the plan are contained in Appendix D to the ASO agreement, administrative procedures, etc.

## 7.01   GENERAL DETAILS OF PLAN

1. The pensioner health care plan (encompassing the supplementary hospitalization benefit, extended health care benefit, and other health care expense benefit) is available to all pensioners and survivor annuitants on an individual or family basis.

2. The benefits consist of reimbursement by the Administrator to an eligible participant in the plan in the percentages shown below, and may be subject to a deductible, maximum limits, and exclusions of certain expenses as detailed in the plan.

## 7.02   Supplementary Hospitalization Benefit

Reimbursement Percentage – 100%
Deductible                – None

### Extended Health Care Benefit

Reimbursement Percentage – 80%
Deductible                – $25. per person pr calendar year
                          – $50. maximum per family (pensioner and dependents) per calendar year
                          – where two or more members of a family unit are injured in one accident, the deductible will be $25 with respect to the total eligible expenses arising from the accident

## 7.03   Other Health Care Expense Benefit

Reimbursement Percentage   – 50%
Deductible                 – None

Where a person's deductible plus any co-insurance payments made by the person for eligible expenses (up to any applicable limits) under the Extended Health Cafe Benefit and Other Health Care Expense Benefit exceeds $1,000 in any calendar year for the family unit, reimbursement will increase to 100% for all eligible expenses under these benefits.

## 7.04   CLAIMS PROCESSING ROUTINE

1. When a pensioner and/or the pensioner's dependents have accumulated receipts or bills for health care in any one calendar year for allowable expenses in excess of the applicable deductibles shown above, the pensioner obtains

a claim form (Exhibit A) from the pensioner relations department and proceeds to complete all pertinent portions of the form.

2. Health care bills for each member of the family are grouped. All receipts for expenses incurred by the pensioner are entered together on the claim form, followed by receipts for the spouse and each child.

3. The pensioner completes, dates and signs the claim form, and forwards the form together with all original bills, receipts, etc. directly to the Administrator for reimbursement.

4. Upon receipt by the Administrator of due proof that the pensioner and/or the pensioner's dependents have incurred the eligible expenses, for medically necessary services, the Administrator will provide reimbursement with respect to such expenses subject to the terms of the plan.

5. Any difference between the total amount of the claim submitted and the actual amount of reimbursement by the Administrator is explained to the pensioner when a settlement is made.  These differences result from the application of co-payments, deductibles, or from ineligible expenses.

6. The actual calculation of the benefit payable is shown by the Administrator in the upper right area of the claim form. A copy of the processed claim form is returned by the Administrator to the pensioner together with a reimbursing cheque and, if applicable, and "explanation of benefits" form.

7. The Administrator, in respect of any claim under the Pensioner Health Care Plan, may require, as the case may be, the originals of itemized hospital bills, reports, records, drug and equipment bills, an itemized statement completed by the physician or other practitioner who attended the pensioner or dependent, study models or any other information deemed reasonable under the circumstances.

8. Proof of a Pensioner Health Care claim satisfactory to the Administrator must be made within 18 months after the date on which the expense is incurred.

7.05

## CLAIMS ANALYSIS

1. On a monthly basis, the Administrator forwards a Claims Report listing individual payments made during the month. These reports are verified for correctness by NTC Benefits on an ad hoc basic.

**M L**

90002

# SUMMARY OF EXTENDED HEALTH AND OTHER HEALTH CARE EXPENSES

## INSTRUCTIONS FOR THE USE OF THIS FORM

1 Group the bills for each member of your family

2. Complete Part A - List of Expenses.

3. Do not submit a claim until you have expenses in excess of the deductible.

4 If any of the expenses included are eligible for reimbursement under any other plan, place a check-mark (√) in the left hand margin opposite the patient's first name.

5. Complete Part B - Employee's Statement.

6 Detach the pink copy for your records. Submit the original and canary copy to Mutual Life of Canada.

7 Submit this form and original bills receipts etc for the expenses to Mutual Life of Canada at the address shown on your wallet certificate.

8. Please quote your group and employee number on all correspondence

## PART A - LIST OF EXPENSES (TO BE COMPLETED BY EMPLOYEE - PLEASE PRINT CLEARLY)

| Patient's First Name | Indicate; Employee, Spouse or Child | Date of Birth | | | Date Services Rendered | | | Type of Service (show Rx No for drugs) | For drugs only: Name of Drug or DIN (Number) | Name of Drug Store, Hospital or Practitioner | Amount Charged |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Day | Mo. | Yr. | Day | Mo. | Yr. | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | TOTAL ▶ |

## PART B - EMPLOYEE'S STATEMENT

Group Number        90002

Employee's Number as shown on the Wallet Certificate _____

Employee's Name _____

Mailing Address

Street _____ Apt. _____

City _____

Province _____ Postal Code _____

If this claim includes expenses for children over age 21, please give

First Name of Child _____

Name of School _____

Estimated Completion Date _____

None of the above expenses is eligible for reimbursement under any other plan except for the items identified by a check-mark.

The above information is true and correct. All expenses listed were for services or supplies received by myself or my eligible dependents. None of the expenses included has been submitted previously to The Mutual Life Assurance Company of Canada.

I authorize the release of any information relating to the expenses claimed on this form to The Mutual Life Assurance Company of Canada or its agents

Date _____ Signature _____

490ME-DP-NT-11-80

8.00   TAXATION - BENEFITS

8.01   A Health and Welfare Trust was established with Montreal Trust as the trustees.  With the Health and Welfare Trust, special tax considerations apply as follows:

8.02   A)   Health Care

   (i)   Employer

All contributions made to the Trust will be deductible in the year in which they are incurred. See Section 9 for determination of contribution levels.

   (ii)   Employees

(1)   Benefits received under the plan will not be taxable.

(2)   Northern's contributions will not result in a taxable benefit.

(3)   Any uncovered costs if in excess of 3% of net income are deductible.

   (iii)   Reporting of Benefits

No reporting is required.

8.03   B)   Long-Term Disability

   (i)   Employer

(1)   All contributions made to the Trust will be deductible in the year in which they are incurred.  See Section 9 for determination of contribution levels.

(2)   Employee CPP and UIC contributions must be made on any benefits paid.  However, where the employee is also receiving a disability pension under the CPP Act, then employee CPP contributions are not exigible.

(3)   Employer QPP contributions are not required to be made on any benefits paid.

(4)   Employer contributions to Quebec Medicare are not required in respect of payments made under this plan at this time.

   (ii)   Employees

(1)   Benefits received under the plan will be taxable.

B)    (cont'd)

    (2)    Northern's contributions will not result in a
    taxable benefit.

    (3)    CPP and UIC contributions must be deducted from
    any benefits paid.  However, where the employee
    is also receiving a disability pension under the
    CPP  Act, then CPP contributions are not
    exigible.

  (iii)  Reporting of Benefits

    (1)    Benefits paid under this plan must be reported
    on Forms T4/TP4 Supplementary with the
    applicable deductions at source (CPP/QPP, UIC,
    income taxes, union dues, etc.).

    (2)    The name of the "Payor" to appear on the
    T4's/TP4's is "Northern Telecom Limited Health
    and Welfare Trust Fund".

8.04    C)    Survivor Income Benefit

  (i)    Employer

    (1)    All contributions made to the Trust will be
    deductible in the year in which they are
    incurred.  See Section 9 for determination of
    contribution levels.

    (2)    CPP/QPP & UIC contributions are not exigible.

  (ii)   Employees

    (1)    Benefits received by beneficiaries qualify as a
    "death benefit", the amount of which is reduced
    proportionately to reflect the amounts contri-
    buted by employees.

    A "death benefit", broadly defined, is the
    excess of the amount(s) received in the year
    over one year's salary of the deceased employee
    or $10,000 whichever is the lesser.

    (2)    Northern's contributions will not result in a
    taxable benefit.

    (3)    CPP/QPP & UIC are not exigible.

    (4)    Employees' contributions will not be deductible
    in computing their income subject to tax.

C)    (cont'd)

    (iii)    Reporting of Benefits

        (1)    Benefits paid under this plan must be reported on Forms T4A/TP4A Supplementary with applicable deductions at source.  Note that it is the full amount of the benefit(s) paid in the year that is to be reported on T4A/TP4A forms.

        (2)    The name of the "Payor" to appear on the T4A's/TP4A's is "Northern Telecom Limited Health and Welfare Trust Fund".

        (3)    The notation "Death Benefit" should appear on the T4A's/TP4A's.

8.05    D)    Survivor Transition Benefits

    (i)    Employer

        (1)    All contributions made to the Trust will be deductible in the year in which they are incurred.  See Section 9 for determination of contribution levels.

        (2)    CPP/QPP & UIC contributions are not exigible.

    (ii)    Employees

        (1)    Benefits received by beneficiaries qualify as a "death benefit", as defined.

            Upon advice from Mutual Life, NTC Payroll shall ensure the beneficiaries are advised of the exempt portion.

        (2)    Northern's contributions will not result in a taxable benefit.

        (3)    CPP/QPP & UIC are not exigible.

    (iii)    Reporting of Benefits

        (1)    Benefits paid under this plan must be reported on Forms T4A/TP4A Supplementary with applicable deductions at source.  Note that it is the full amount of the benefit(s) paid in the year that is to be reported on T4A/TP4A forms.

        (2)    The name of the "Payor" to appear on the T4A's/TP4A's is "Northern Telecom Limited Health and Welfare Trust Fund".

        (3)    The notation "Death Benefit" should appear on the T4A's/TP4A's.

28

8.06    E)    Group Life Insurance - Part I and Part II

    (i)    Employer

        All contributions made to the Trust will be deduct-
ible in the year in which they are incurred.   See
Section 9 for determination of contribution levels.

    (ii)    Employees

        (1)    The Group Life Insurance proceeds received under
the plan (Part I & II) by beneficiaries as a
consequence of the death of an employee will be
exempt from tax, upon advice from the Pension
Relations Dept. to NTC Payroll

        (2)    The premiums paid by the Trust (Part I only)
will result in a taxable benefit (subject to the
$25,000 exemption) to the employees.   The
premiums in effect amount to the Group Life
Insurance proceeds paid by Mutual Life through-
out the year.

    (iii)    Reporting of Benefits

        (1)    No reporting of the benefits is required.

        (2)    The taxable benefit, if any, must be reported on
Form T4/TP4 Supplementary, for active employees,
and on Forms T4A/TP4A Supplementary, for
pensioners.

## 9.00    TAXATION - TRUST FUND CONTRIBUTIONS

9.01    Given the taxable position of the benefits, the following procedures are how Northern and employees' contributions to the Trust Fund are to be carried out. For the Health Care Plan, Northern's contributions and those of employees, if any, will be deposited to the Health and Welfare Trust Fund with Montreal Trust in Montreal.

9.02    For LTD, Northern's contributions will be deposited to the Trust Fund. For SIB and STB Northern's and employees' contributions will be deposited to the Trust Fund. Mutual Life will pay all eligible claims less applicable deductions at the source.

9.03    For the Group Life Insurance, Part I and Part II, Northern's and employees' contributions will be deposited to the Trust Fund.

9.04    Stop loss premiums are to be paid directly by Northern to Mutual Life for all benefit programs under the stop loss coverage - LTD, SIB, STB, Group Life I (including AD&D) and Group Life II. Such stop loss premiums are tax deductible to Northern in the year in which they are incurred.

9.05    NTC - Trust Accounting maintains the records of monthly contributions by benefit group and employee group (where applicable).

**10.00   TAXATION – ANNUAL FILING**

**10.01   Trust Fund Income**

In computing the income of the Trust for tax purposes, Northern's contributions, employees' contributions including Life Insurance premiums and the transfer of the Pensioners' Insurance sub-funds (principal and interest) to the Trust shall not be considered as income. All benefits paid in the year except those paid under the Health Care Plan will be deductible. Group Life Insurance premiums paid by the Trust to Mutual Life will also be deductible. The only income earned is that of investment income from the Trust itself.

**10.02   T3/TP3 – Trust Information and Income Tax Return**

(a)   Annually NTL Tax Department will provide initial information and forward the T3/TP3 to NTC Trust Accounting.

(b)   NTC Trust Accounting shall complete the form(s) and

(c)   NTL Tax Department shall review the return(s) and file them with the appropriate governmental taxation authorities.

(d)   The deadline for the filing of the returns is March 31 of each year.

**10.03   T4-T4A/TP4-TP4A Summaries and Supplementaries**

(a)   NTC Payroll Department will issue all T4-T4A/TP4-TP4A Summaries and Supplementaries.

(b)   NTC Payroll Department will send the T4-T4A/TP4-TP4A Summaries and government copies of the Supplementaries along with the appropriate reconciling schedules to NTL Tax Department.

(c)   NTL Tax Department will review and file T4-T4A/TP4-TP4A Summaries with the appropriate governmental taxation authorities.

**10.04   Tax Remittance Number (Federal & Provincial)**

Although benefit payments under

( i)   Long Term Disability
( ii)   Survivor Income Benefits, and
(iii)   Survivor Transition Benefit

will be made by either Northern or Mutual, they will do so in their capacity as agents of the Trust.  Consequently any tax reporting i.e. T4-T4A/TP4A, tax remittances etc. will have to be done by Northern on behalf of the Trust.

The tax remittance numbers are (NEL300070) Federal & (M-3901527-0001) Quebec.  Therefore two separate accounts must be set up in the Trust's name:  one to handle Federal remittances and the other to handle Provincial (Quebec) remittances.

10.05   Unemployment Insurance Premium Rate

The employer premium rate to be used, where applicable, is Northern's reduced rate of 1.19 in 1981.  - '  ⟨ ⟩  ⟨ ⟩  '1.3/4

10.06   Quebec Medicare

We are in the process of writing to Quebec Revenue to determine whether or not the Trust must pay the 1.5% "employer" contribution to Quebec medicare in respect of benefit payments under the Long Term Disability Plan.

In the interim we suggest that no such payment be made.

10.07   Taxation - Succession Duties

Quebec remains as the only province to impose Succession Duty. consequently the "value" of the SIB/STB payments are to be included in computing the value of the deceased's estate.

Section 56 of the Succession Duty Act states that no property may be transferred/remitted until a disposal permit has been obtained from the Minister.   Exceptions are provided in Sections 57 & 58.  In the case of SIB/STB payments to a "consort" of the deceased employee, we may remit the payments without obtaining a disposal permit.  However, within 10 days of the month following the first monthly payment we must complete a declaration, in duplicate, and file it with the Minister.  Where the SIB/STB payments are made to a child, father, mother and certain other specified beneficiaries of the deceased the first $1,500 per such beneficiary not exceeding $10,000 in all (in cases where paid to a number of beneficiaries) may be transferred without a disposal permit. Here too the Minister would have to be notified as in the case of payments to a consort above.

Note that Section 18 of the Succession Duty Act sets out the rules for determining the "value" of SIB/STB payments for purposes of inclusion in the deceased's estate.

32

## 11.00   FUNDING POLICIES

Funding of the Health and Welfare Trust for benefits as listed below is determined by NTL Treasury. DNR approval has been obtained by NTL Tax Department

## 11.01   Health Care Plans

Contributions to this benefit are not funded as the claims payments are on an incurred basis only. This is a monthly pay-as-you-go basis based on claims payments by the administrator.

## 11.02   Long-Term Disability

Funding of actuarial liability at 20 percent per year uniformly over a five year period beginning in the year in which the claims are incurred is acceptable and consistent with the Advance Income Tax Ruling from the Department of National Revenue. Payments are made at fiscal year-end.

## 11.03   Survivor Income Benefit

These benefits should be employer funded on a pay-as-you go (PAYG) basis after the employees' funds have been exhausted. Payment is made by Northern by fiscal year-end. This eliminates any need to allocate part of the income of the Trust Fund to the SIB Beneficiary.

## 11.04   Survivor Transition Benefit

This benefit is funded identically to that of the Survivor Income Benefit.

## 11.05   Group Life Part I

Northern's contributions amount to total claims and expenses paid less employees' contributions.

## 11.06   Group Life Part II (Rate Stabilization Fund)

This is totally funded by the employees' contributions. All contributions to this benefit are "unitized" (see section 18) in the Rate Stabilization Fund.

## 11.07   Pensioners' Insurance Fund

Northern's contributions will be based on recommendations by the carrier, Mutual Life. The acceptable level of funded liability, existing reserves and the current year's employees' contributions will all be considered by Mutual in determining Northern's current year's contributions which is to be no later than December 31st. However, at no time will the Pensioners' Insurance Fund be overfunded. See Section 20 for further elaboration on the P.I.F.

## 12.00   PAYMENT OF EXPENSES

The following expenses will be charged to the Health and Welfare Trust.  Expenses, in addition to claims paid are as follows:

### 12.01   Trustee administration charges:

The charge is on a sliding schedule based on the value of the assets in the Trust.  The 1980 schedule is attached as Appendix A.

Montreal Trust will pay interest to the Trust fund on any surplus cash balances at the standard savings account rate.

### 12.02   Bank charges:

The bank charges for the Waterloo accounts are negotiated by NTL Treasury.  Currently these are 13 cents per cheque and 20 cents per deposit.  Interest is paid at prime less 3 1/2% on the average monthly combined balance after float requirements, presently at $30,000, are met.

12.03   While most expenses are paid through the Trust Fund, those for the Health Care plan (which includes all dental) for both Mutual Life and Quebec Blue Cross must not be paid through the Trust Fund. Northern must pay these fees directly to the respective carriers. See Appendices E and F for the current rates.

12.04   The Trust fund shall pay the following expenses:

- Trustee administration charges
- Bank charges
- Mutual Life expenses only for:

  - Survivor Income Benefit
  - Survivor Transition Benefit
  - Long Term Disability
  - General administration and profit changes on these three benefit plans.

12.05   Northern Telecom as opposed to the Trust, shall pay the following expenses:

- Mutual Life expenses only for:

  - Health Care Plan
  - Dental Care Plan
  - General administration and profit charges on these two benefit plans
  - Stop loss coverage

- Quebec Blue Cross fees
- Lloyds of London - Stop loss coverage.

34

## 3.00   CONTROL AND AUTHORIZATION - MUTUAL LIFE

13.01   The importance of control cannot be over-emphasized given the fact that significant amounts of money flow through the mechanism on a regular basis.  The following is to be the control policy in regard to Mutual Life.

13.02   As Mutual Life informs NTC Trust Accounting of the disbursements from account 0000-379, NTC Trust Accounting will monitor such flows.  NTC Trust Accounting will be in a position to verify the request by monitoring the daily bank statements and comparing the previous months' Monthly Benefit Reports as provided by Mutual Life.

13.03   There is no presumption of exactitude in NTL Trust Accounting's monitoring, as there are many time lags effects in the mechanism This department is however, responsible for ensuring replenishments are reasonable and for investigating any out of the ordinary occurrences.  A detailed reconciliation shall be done at least every quarter by NTC Trust Accounting - matching statements with Monthly Benefit Reports.

13.04   NTC Trust Accounting shall regularly inform NTC Pension Department of time frames that a replenishment of the Disbursement Account may occur.  An estimate of the amount to be deposited shall accompany such advice.

13.05   Upon review of daily bank statements NTC Trust Accounting shall advise NTL Pension Department of the amount to be transferred. This authorization shall be confirmed in writing within 3 working days.  Upon receiving such advice, NTL Pension Department shall instruct the Trustee to transfer    said funds to the appropriate accounts - account 0000-395 in the case of Mutual Life.  This authorization shall be confirmed in writing within 3 working days.

13.06   With respect to special transfers; these shall be co-ordinated by NTL - Treasury, who shall advise as appropriate, and co-ordinate said transactions.  Typically, these transfers include release of reserves from insurance carriers or year-end funding contributions.

14.00   CONTROL AND AUTHORIZATION - QUEBEC BLUE CROSS

14.01   An initial working fund was established with Quebec Blue
        Cross in the amount of $75,000.  Unlike Mutual Life, this
        amount and all subsequent amounts are to be deposited
        directly to Blue Cross.

14.02   As claims are received by the carrier, they are verified as
        eligible in accordance with a master list and its
        amendments as provided by NTC Compensation.  To pay a
        claim, Blue Cross shall draw on the working fund.

14.03   Blue Cross shall prepare two separate and distinct invoices
        on a monthly basis, or as the working fund approaches a nil
        balance.  One invoice shall serve only to replenish the
        working fund, it shall be for the amount of claims paid
        since the previous billing.  This invoice is paid by the
        Trust.

14.04   The second invoice is the administration and profit charge
        earned by Blue Cross.  This invoice is paid by Northern.

14.05   The control aspect enters when the carrier provides NTC
        Trust Accounting with a monthly claims report.  This report
        contains the total claims paid, the number of claims paid,
        applicable administration fees payable, and year-to-date
        figures for claims and expenses.

14.06   Upon receipt of the claims report and invoices, NTC Trust
        Accounting shall verify the reasonableness of the
        statements by the monitoring process.  When the carriers
        statements are considered "reasonable", NTC Trust
        Accounting shall advise NTL Pension Department of the
        amount to be transferred.  NTL Pension Department shall
        instruct the Trustee to transfer said funds directly to
        Quebec Blue Cross.  The transfers should indicate Quebec
        Blue Cross as the payee with Montreal Trust being the
        Trustee for Northern Telecom's Health and Welfare Trust.
        All authorizations shall be confirmed in writing within 3
        working days.

14.07   Northern retains the right to audit the accounts of Quebec
        Blue Cross.  This should be done on a calendar basis.

.00   CONTROL-REPORTING/MONITORING

1..01   The following reports are provided:

| Nature of Report | Frequency | Originator | Distribution |
|---|---|---|---|
| A. Claims Report | Monthly | Mutual Life Quebec Blue Cross | NTC Compensation NTC Trust Accounting |
| B. Claims Analysis Actual vs. Estimate | Quarterly | NTC Trust Accounting | BMC Members |
| C. Anniversary Reports | Annually | NTC Trust Accounting | BMC Members |

Reference above:

A.  These reports include information on aggregate claims paid, number of claims paid in current period, administration fees payable, type of benefit claimed.

B.  The purposes are to monitor current progress identifying deviations and to provide insight on liquidity requirements. Information relates contribution and expenses through the Trust.

C.  This comprehensive report includes:

    i)    Claims paid by employee group
    ii)   Statement of reserves for SIB, STB, LTD, PIF, Totals
    iii)  Analysis of all administration fees
    iv)   Trial Balance
    v)    Statement of Assets
    vi)   Analysis of Pensioner's Insurance Fund
    vii)  Analysis of Rate Stabilization Fund
    viii) Analysis of Group Life Insurance I
    ix)   Statement of changes in the Fund

15.02    The following reports will be produced on a monthly basis by Mutual Life and sent to NTC Trust Accounting and NTC Benefits. Separate reports are produced for each company and employee group.

15.03    Exhibit 1 – Group Life Insurance – summarized by Policy number, with detail attached by employee.

15.04    Exhibit 2 – LTD payments – showing bargaining unit code by employee and giving a list of deductions made from each employee and including a breakdown of expenses charged by Mutual.

15.05    Exhibit 3 – STB payments – showing bargaining unit code and deductions made.

15.06    Exhibit 4 – SIB payments – shows bargaining unit code and deductions – includes breakdown of expenses charged for both SIB and STB.

15.07    Exhibit 5 – Dental and Extended Health Claims paid – shows the number of checks issued, the total claims paid and the total expenses.

15.08    The above reports are sent to the Benefits Department of each company involved, with copies of all reports going to NTC Trust Accounting.

15.09    Quebec Blue Cross submit the following invoices on a monthly basis to NTC Trust Accounting, and NTC Benefits.

Exhibit 6 – Extended Health Claims.

Exhibit 7 – Administration expenses for (6) above.

EXHIBIT 1   Page 1 of 2

### Policy 1040-2, 1040-3, 13900,13901,13901 AD&D, 14901

| January 1981 | Claims | Expenses | Totals |
|---|---|---|---|
| 1040-2 | $ 13,068.27 | $ 451.47 | $ 13,519.74 |
| 1040-3 | 73,786.64 | 2,860.12 | 76,646.76 |
| 13900 | 28,112.12 | 1,031.83 | 29,143.95 |
| 13901 | 103,092.48 | 3,498.10 | 106,590.58 |
| 13901 AD&D | 23,813.52 | 692.54 | 24,506.06 |
| 14901 | 50,213.52 | 1,460.29 | 51,673.81 |
| | | | |
| TOTALS | $292,086.55 | $ 9,994.35 | $302,080.90 |

There were no claims paid in January 1981 under the following
policies:

> 1040-1
> 13900A
> 14688
> 14900
> 14900B
> 15250

TOTAL EXPENSES:

$ 9,994.35
    88.37
$10,082.72

EXHIBIT 1  Page 1 of 2

Northern Telecom Limited

Death Claims — January 1981

| Pol. # | Folio # | Certificate # | Name | Date of Death | Claims | Expenses |
|--------|---------|---------------|------|---------------|--------|----------|
| 1040-3 | 1 | 173237 | | 6.11.80 | $ 5,602.17 | $  236.68 |
| 13901 | 2 | 170761 | | 14.1.80 | 23,813.52 | 736.96 |
| 13901 AD&D | 3 | 170763 | | 14.1.80 | 23,813.52 | 692.54 |
| Cheque #89 | Dated 8.1.81 | | | | 53,309.41 | |
| 13901 | 4 | 175547 | | 31.12.80 | 16,072.94 | 538.86 |
| 14901 | 5 | 175547 | | 31.12.80 | 20,091.18 | 584.28 |
| Cheque #90 | Dated 20.1.81 | | | | 36,164.12 | |
| 13900 | 6 | 175497 | | 21.12.80 | 14,507.78 | 493.22 |
| 13900 | 7 | 175596 | | 29.10.80 | 11,108.34 | 394.48 |
| Cheque #91 | Dated 22.1.81 | | | | 25,612.12 | |
| 13901 | 8 | 175448 | | 18.12.80 | 10,885.65 | 388.00 |
| 13901 | 9 | 174748 | | 7.12.80 | 17,175.89 | 570.93 |
| 13901 | 10 | 175398 | | 24.12.80 | 7,246.68 | 282.18 |
| Cheque #92 | Dated 22.1.81 | | | | 35,308.22 | |
| 1040-3 | 11 | 173492 | | 26.10.80 | 4,592.50 | 204.99 |
| 1040-3 | 12 | 174540 | | 11.12.80 | 7,067.34 | 276.96 |
| 1040-3 | 13 | 174193 | | 21.11.80 | 11,410.02 | 403.25 |
| 1040-3 | 14 | 174193 | | 21.11.80 | 11,410.02 | 331.82 |
| 1040-3 | 15 | 172080 | | 9.10.80 | 2,049.43 | 131.03 |
| 1040-3 | 16 | 175299 | | 31.12.80 | 6,784.02 | 268.02 |
| Cheque #93 | | | | | 43,313.33 | |
| 1040-3 | 17 | 175893 | | 6.1.81 | 6,782.39 | 268.67 |
| 1040-3 | 18 | 175240 | | 19.12.80 | 2,016.34 | 130.07 |
| 1040-3 | 19 | 173740 | | 28.10.80 | 9,950.42 | 360.80 |
| Cheque #94 | Dated 27.1.81 | | | | 10,749.15 | |

.../2

EXHIBIT 1   Page 2 of 3

Page 2

## Northern Telecom Limited

### Death Claims — January 1981

| Pol. # | Folio # | Certificate # | Name | Date of Death | Claims | Expenses |
|---|---|---|---|---|---|---|
| 1040-3 | 20 | 173559 | | 29.13.80 | $ 6,041.79 | $ 247.13 |
| Cheque #95 | Dated 29.1.81 | | | | 6,041.79 | |
| 1040-2 | 21 | 172189 | | 9.10.80 | 13,068.27 | 451.47 |
| Cheque #96 | Dated 30.1.81 | | | | 13,068.27 | |
| 13900 | 21 | 175349 | | 22.12.80 | 2,500.00 | 144.13 |
| Cheque #97 | Dated 30.1.81 | | | | 2,500.00 | |
| 13901 | 22 | 173906 | | 19.1.81 | 10,828.47 | 386.34 |
| Cheque #98 | Dated 30.1.81 | | | | 10,828.47 | |
| 13901 | 23 | 175646 | | 13.1.81 | 17,069.33 | 567.83 |
| 14901 | 24 | 175646 | | 13.1.81 | 30,122.34 | 876.01 |
| Cheque #99 | Dated 2.2.81 | | | | 47,191 67 | |

Total expenses for January '81 $ 9,994.35
1040-3 See attached letter 80.37
Total cheque #100 dated 6.2.81 $10,082.72

EXHIBIT 2 Page 1 of 2

L.T.D. Payments for Northern Telecom for January 1981

| Claim No. | Bargaining Unit Code # | Employee Name | Emp. # | Cheque Date | Gross Monthly Payment | Cheque Amt | Total Deductions | *C/QPP |
|---|---|---|---|---|---|---|---|---|
| 002 | 07 | | | 26.1.81 | 600.00 | 550.00 | 50.00 | Yes |
| 003 | 14 | | | 26.1.81 | 600.00 | 523.03 | 76.97 | " |
| 004 | 05 | | | 26.1.81 | 600.00 | 555.85 | 44.15 | " |
| 005 | 05 | | | 26.1.81 | 600.00 | 556.05 | 43.95 | " |
| 006 | 54 | | | 26.1.81 | 750.00 | 680.90 | 69.10 | " |
| 007 | SP | | | 22.1.81 | 567.82 | 515.55 | 52.27 | No |
| 008 | SP | | | 19.1.81 | 846.00 | 734.25 | 111.75 | " |
| 010 | 01 | | | 26.1.81 | 600.00 | 548.92 | 51.08B | Yes |
| 011 | 07 | | | 26.1.81 | 600.00 | 549.70 | 50.300 | " |
| 012 | 07 | | | 26.1.81 | 600.00 | 549.70 | 50.30 | " |
| 013 | 05 | | | 26.1.81 | 600.00 | 533.29 | 66.71 | " |
| 015 | 01 | | | 26.1.81 | 600.00 | 532.35 | 67.65 | No |
| 016 | 13 | | | 20.1.81 | 628.33 | 504.12 | 124.21 | Yes |
| 016 | L3 | | | Cancelled | -628.33 | -504.12 | -124.41 | |
| 017 | NEDCO | | | 26.1.81 | 753.37 | 627.54 | 125.83 | |
| 018 | NEDCO | | | 26.1.81 | 706.03 | 696.50 | 9.53 | No |
| 019 | NEDCO | | | 26.1.81 | 597.36 | 522.94 | 56.42 | " |
| 020 | NEDCO | | | 30.1.81 | 626.03 | 569.80 | 56.23 | " |
| 021 | 14 | | | 26.1.81 | 600.00 | 541.22 | 58.78 | Yes |
| 022 | 01 | | | 26.1.81 | 650.00 | 195.97 | 454.03 | " |
| 023 | 01 | | | 26.1.81 | 750.00 | 613.03 | 136.97 | " |
| 024 | SP | | | 26.1.81 | 430.00 | 396.22 | 33.78 | " |
| 025 | 05 | | | 26.1.81 | 600.00 | 440.54 | 159.46 | " |
| 025 | 05 | | | 12.1.81 | 600.00 | 449.79 | 150.21 | " |
| 025 | 05 | | | 12.1.81 | 200.00 | 217.99 | 2.01 | " |
| 026 | 13 | | | 1.1.81 | 260.00 | 254.94 | 5.06 | " |
| 026 | 13 | | | 26.1.81 | 650.00 | 626.54 | 23.46 | " |
| 027 | SP | | | 26.1.81 | 2,255.00 | 1,531.03 | 723.97 | " |
| 028 | SP | | | 26.1.81 | 1,172.82 | 607.34 | 565.34 | No |
| | | | | | 18,416.43 | 15,120.98 | 3,295.45 | |

* Deduction based on gross monthly benefit.

EXHIBIT 2  Page 2 of 2

## Deductions

| Employee No. | Fed. Tax | Prov. Tax | CPP | QPP | UIC | Susp. Hosp. | Cr. Union | Grp Security | Service Fund | Sun Life | Survivor Inc (4%) | Charity | Social Club | Cent-raile | Union Dues | No. of Deductions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 39.20 | 30.40 | | | 10.80 | | 25.00 | | | | | | | | 2.67 | 2 |
| | | | | 8.10 | 10.80 | | | | .20 | | | | | | | 5 |
| | 43.95 | | | | | | | | | | | | | | | 2 |
| | 43.95 | | | | | | | | | | | | | | | 2 |
| | 19.10 | | | | | | | | | | | | | | | 2 |
| | 19.95 | 32.32 | | 8.85 | | | 50.00 | | | | | | | | | 2 |
| | 111.75 | | | | | | 32.77 | | 1.08 | | | | | | 8.34 | 4 |
| | | | 8.70 | | | | | | | | | | | | | 2 |
| | 41.60 | | 8.70 | | | | | | | | | | | | | 5 |
| | 41.60 | | | | | 2.16 | 20.00 | | .20 | | | | | | | 6 |
| | 43.95 | 34.30 | | | | | | 1.35 | .80 | | | | | | | 5 |
| | 21.65 | | | | | 2.08 | 96.67 | | .30 | | | | .40 | | | 0 |
| | 17.40 | | 7.65 | 11.61 | 10.17 | -2.08 | -96.67 | | -.30 | | | | 1.00 | | | 4 |
| | -17.40 | | -7.68 | | 9.53 | | | | | | | | | | | 1 |
| | 45.20 | 50.85 | | | 7.82 | .77 | | | | | | | | | 8.55 | 7 |
| | | | | | 9.11 | | | | | | | | | | | 3 |
| | 48.60 | 34.30 | | | | | | | | | | | | | | 8 |
| | 46.35 | 42.30 | 11.40 | 9.75 | 13.50 | | 365.00 | 1.35 | .80 | | | | | .60 | 2.83 | 8 |
| | 21.65 | 34.30 | 5.64 | | 7.74 | 2.16 | 20.00 | 1.35 | .80 | | | | | | 8.96 | 5 |
| | 23.25 | | 8.70 | | 10.60 | 2.16 | 80.00 | | .40 | | | | | 1.00 | 10.77 | 4 |
| | 43.65 | | 8.85 | | | | 80.00 | | | | | | | | | 1 |
| | | | 2.01 | | | | | | | | | | | | | 1 |
| | 57.80 | | | | | | | | | 9.20 | 7.91 | | | | | 3 |
| | 59.20 | | | | 11.70 | 2.16 | | | 5.00 | 9.20 | 3.48 | | | | | 6 |
| | | | | | 24.57 | | | | 1.20 | | 11.39 | | | | | 6 |
| | 5.06 | | 9.60 | | | | 300.00 | | 10.48 | | | 1.40 | .60 | 1.00 | 42.18 | |
| | | | | | | | | | | | | | | | | |
| | 287.80 | 360.95 | | | | | | | | | | | | | | |
| | 112.65 | 138.95 | | | | | | | | | | | | | | |
| **TOTALS** | 1,419.91 | 786.87 | 63.60 | 37.74 | 126.54 | 9.41 | 972.77 | 4.05 | | | | | | | | 98 |

CPP: 63.60  76.05

Expenses: # of Cheques 25 x $3.50 = $98.00
Deductions 98 x .20   19.60
900028   2 x 3.50   7.00
$124.60 Cheque # 102  dated 6.2.81

Exhibit 3

STD Payments -- All Union Eligible/All Non-Union (Active Employees and Pensioners)

Month of ........ January ...... 1991

| Claim No. | Bargaining Unit Code # | Deceased Empl's/Pensioner's Name & Employee Number | Std/Cheque No | Gross Monthly Benefit | Fed. Tax | Deductions Prov. Tax | Sup-charge | Net Payable | Taxable Ben (Nonlcare) | Lump Sum Payment (if applicable) |
|---|---|---|---|---|---|---|---|---|---|---|
| 0002 | 01 | | 8008 5017 | 300.00 | | | | 300.00 | | |
| 0003 | 01 | | 5022 | 300.00 | | | | 300.00 | | |
| 0004 | 01 | | 5018 | 300.00 | | | | 300.00 | | |
| 0005 | 01 | | 5005 | 300.00 | | | | 300.00 | | |
| 0006 | 01 | | 5016 | 300.00 | | | | 300.00 | | |
| 0007 | 01 | | 5019 | 300.00 | | | | 300.00 | | |
| 0008 | 01 | | 5020 | 275.00 | | | | 275.00 | | |
| 0012 | 01 | | 5006 | 300.00 | | | | 300.00 | | |
| 0015 | 01 | | 5010 | 300.00 | | | | 300.00 | | |
| 0017 | 01 | | 5013 | 275.00 | | | | 275.00 | | |
| 0018 | 01 | | 5011 | 300.00 | | | | 300.00 | | |
| 0019 | 01 | | 5014 | 300.00 | | | | 300.00 | | |
| 0022 | 01 | | 5012 | 300.00 | | | | 300.00 | | |
| 0023 | 02 | | 5009 | 275.00 | | | | 275.00 | | |
| 0024 | 02 | | 5010 | 300.00 | | | | 300.00 | | |
| 0009 | 03 | | 5023 | 400.00 | | | | 400.00 | | |
| 0011 | 03 | | 5037 | 400.00 | | | | 400.00 | | |
| 0010 | 07 | | 5027 | 275.00 | | | | 275.00 | | |
| 0001 | 13 | | 5003 | 275.00 | | | 2.16 | 272.84 | | |
| 0013 | 13 | | 5025 | 300.00 | | | | 300.00 | | |
| 0020 | 13 | | 5008 | 350.00 | | | | 300.00 | | |
| 0014 | 55 | | 5026 | 400.00 | | | | 400.00 | | |
| 0025 | 55 | | 5001 | 425.00 | | | 2.16 | 422.84 | | |
| 0021 | 60 | | 5007 | 350.00 | | | | 350.00 | | |
| 0016 | NV | | 5028 | 300.00 | | | | 300.00 | | |
| | | | | 7,800.00 | | | 4.32 | 7,095.60 | | |

Distribution - H. Daniels
              J. Henderson

EXHIBIT 4

SIB Payments -- All Management (SP/MSS Grades)

Month of ___January___ 1981

| (a) Claim No. | (b) Bargaining Unit Code # | (c) Deceased Empl'd/Pensioner's Name & Employee Number | (d) SIB Cheque No | (e) Gross Monthly Benefit ($) | (f) Amount of C/UPP income included in (e) | Deductions Fed. Tax | Prov. Tax | Net Payable |
|---|---|---|---|---|---|---|---|---|
| 0001 | SP | | 8006-5011 | 1,279.00 | | 88.05 | 151.15 | 1,019.80 |
| 0002 | SP | | 8006-5013 | 1,200.22 | | 120.75 | 151.65 | 1,050.22 |
| 0003 | SP | | 8006-5012 | 515.88 | | - | - | 511.11 |
| 0004 | SP | | 8006-5015 | 536.50 | | - | - | 561.50 |
| | | TOTALS | | $1,500.60 | | $216.40 | $301.55 | $3,161.71 |

Expense Charges:

Cheques      $101.50      (29 x 3.50)
Deductions     1.40       (7 x .20)
             $102.50      Cheque dated  6.2.81

1.   Distribution - H. Dennis
                    J. Henderson

Policy 90,002 - Northern Telecom A.S.O.

Main Section

EHIP

| Month | # of cks. | Paid Claims | Expenses | Total |
|-------|-----------|-------------|----------|-------|
| Jan. '81 | 754 | 52,679.73 | 2,762.56 | 55,442.29 |
| Feb. | 526 | 42,135.50 | 1,972.97 | 44,108.47 |
| March | 392 | 26,229.37 | 1,426.39 | 27,655.76 |
| April | 400 | 26,208.71 | 1,450.78 | 27,659.49 |
| May | 273 | 19,158.28 | 1,000.96 | 20,159.24 |
| Total | 2,345 | 166,411.59 | 8,613.66 | 175,025.25 |

Policy 90002 - Northern Telecom

Main

Dental Benefit

| Month | # of cks. | Paid Claims | Expenses | Total |
|-------|-----------|-------------|----------|-------|
| Jan. '81 | 846 | 74,824.35 | 2,395.69 | 77,220.04 |
| Feb. | 727 | 66,746.67 | 2,079.51 | 68,826.18 |
| March | 713 | 61,655.61 | 2,007.11 | 63,662.72 |
| April | 675 | 59,829.60 | 1,912.55 | 61,742.15 |
| May | 787 | 68,688.58 | 2,220.81 | 70,909.39 |
| Total | 3,748 | 331,744.81 | 10,615.67 | 342,360.48 |

EXHIBIT 6

QUEBEC BLUE CROSS                    INVOICE

Bill to:  NORTHERN TELECOM HEALTH
          AND WELFARE TRUST FUND
          c/o H.C. Dennis, Dept. 1132


CLAIMS PAID TO NORTHERN TELECOM EMPLOYEES IN THE MONTH
OF _____

| Extended Health | Amount of Claims Paid | No. of Claims Paid |
|---|---|---|
| Group 173 | _____ | _____ |
| | _____ | |

| Dental | | |
|---|---|---|
| Group 177 | | |
| 178 | | |
| 178A | | |
| 180 | | |
| 181 | | |
| 182 | | |
| 183 | | |
| 184 | | |
| 5574 | | |
| 5691 | _____ | _____ |
| Total Dental | _____ | _____ |
| Grand Total | _____ | _____ |

EXHIBIT 7

## QUEBEC BLUE CROSS INVOICE

Bill to:   NORTHERN TELECOM CANADA
           304 The East Mall
           Islington, Ontario
           M9B 6E4

           c/o H.C. Dennis, Dept. 1132

ADMINISTRATIVE EXPENSES COVERING CLAIMS PAID IN
THE MONTH OF _____

|                    | CLAIMS<br>PAID | ADMINISTRATIVE<br>EXPENSES<br>(Claims x 7½%) |
|--------------------|----------------|----------------------------------------------|
| EXTENDED HEALTH    |                |                                              |
| DENTAL             |                |                                              |
| TOTAL              |                |                                              |

## IBT QUARTERLY ANALYSIS

| | | | QUARTER | | | | | | QUARTER | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Balance | Contri-butions | Claims | Interest | Expenses | Balance | Contri-butions | Claims | Interest | Expenses | Balance |
| **NTC** | | | | | | | | | | | |
| Health | | | | | | | | | | | |
| LTD Mgt. | | | | | | | | | | | |
| LTD Union | | | | | | | | | | | |
| SIB | | | | | | | | | | | |
| STB Mgt. | | | | | | | | | | | |
| STB Union | | | | | | | | | | | |
| Gp. Life I Mgt. | | | | | | | | | | | |
| Gp. Life I Union | | | | | | | | | | | |
| RSF Mgt. | | | | | | | | | | | |
| RSF Union | | | | | | | | | | | |
| PIF | | | | | | | | | | | |
| **BNR** | | | | | | | | | | | |
| Health | | | | | | | | | | | |
| LTD | | | | | | | | | | | |
| Gp. Life I | | | | | | | | | | | |
| RSF | | | | | | | | | | | |
| PIF | | | | | | | | | | | |
| **NTSL** | | | | | | | | | | | |
| Health | | | | | | | | | | | |
| LTD | | | | | | | | | | | |
| SIB | | | | | | | | | | | |
| Gr. Life I | | | | | | | | | | | |
| RSF | | | | | | | | | | | |
| Dependent Life | | | | | | | | | | | |
| Expenses | | | | | | | | | | | |
| Income | | | | | | | | | | | |
| TOTAL | | | | | | | | | | | |

## 6.00   BANKING

6.01   Two bank accounts were opened by NTL Treasury in the name of the Trustee.

| Deposit Account | Disbursement Account |
|---|---|
| 0000-395 | 0000-379 |

Bank of Montreal
3 King & Erbs Street South
Waterloo

Contact: Sam Hendry
(519) 885-9312

16.02   Further special arrangements were made enabling Mutual Life to be the sole signatory agent for the Disbursement Account. Mutual Life's signing officers for this account are:

Mr. Peter Denomme, Executive Officer - Administration; and
Mr. Donald Post, V.P. Group Insurance.

16.03   While two accounts are not essential, they were considered beneficial for control purposes.  The Deposit Account receives monthly transfers (deposits) from the Trustee and, at month-end transfers funds sufficient to replenish the Disbursement Account. All bank statements for the Deposit Account are sent to Montreal Trust with a copy sent to NTC Trust Accounting.  The combined balances of the two Waterloo accounts should be positive at all times.

16.04   Regarding the Disbursement Account, this account is in the name of Montreal Trust but with Mutual Life signing officers. Mutual Life is responsible for all disbursements.  Statements and cheques are sent to Mutual Life for reconciliation with a statement copy sent to NTC Trust Accounting.  Every quarter a detailed reconciliation providing outstanding cheques listing date, payee, benefit type, amount paid, etc., will be sent to NTC Trust Accounting.  NTC Trust Accounting is responsible for verifying the "reasonableness" of disbursements through the Disbursement Account by comparison with the Monthly Benefit Report as issued by Mutual Life.  It will also endeavour to ensure that the month-end transfer of funds from the Deposit Account equals the Disbursement Account debit balance, as verified by the bank statements.

.6.05  Quebec Blue Cross participates in the Trust in an indirect
manner.  Instead of a separate bank account as in the case of
Mutual Life, a working fund has been established and amounts
are transferred directly to Blue Cross.  Quebec Blue Cross is
recorded as the payee, and Montreal Trust as the Trustee for
Northern Telecom's Health and Welfare Trust.  These transfers
should be made to the following address:

c/o Mr. J.J.E. Trudeau
Executive Vice-President
Quebec Hospital Services Association
550 Sherbrooke St. West
Montreal, Quebec
H3A 1B9

(514) 844-3781

16.06  The Trust account to which all contributions, both employer
and employee, are sent to is:

Health and Welfare Trust Fund
900920
Montreal Trust
1 Place Ville Marie
Montreal, Quebec

Contact:  Mr. Oswald D'Mello
(514) 861-1681

16.07  This account is the investment account managed by the NTL
Pension Department.  NTC Trust Accounting will monitor the
day-to-day balance in this account as advised by Montreal
Trust and the Pension Department.  NTC Trust accounting shall
advise the Pension Department of liquidity requirements of the
Trust in sufficient time to allow for optimum timing of
investments.  NTL Treasury in conjunction with NTC Trust
Accounting shall prepare cash flow forecasts to assist in the
timing of such investments.

The principal services the Trustee provides are daily cash
reports, monthly statements assets and investments, the
safekeeping of securities and acquisition and sale of
securities as directed by the Pension Investment
Department-48.

The Trustee signing officers for the account (900920) are:
    Mr.  Oswald D'Mello;
    Mr. Foss Raleigh,
    Mr. Henry Baouls.

CASH FLOW DIAGRAM



**1.00   FUNDS TRANSFERS**

## 17.01   General

The normal day to day operating procedures are to be performed by NTC Trust Accounting.  Upon notification from Mutual Life and confirmed by Montreal Trust, NTC Trust Accounting shall advise the NTL Pension Department of its liquidity requirements.  At that point the Pension Department shall instruct Montreal Trust to transfer the said amounts to the deposit account at the Bank of Montreal in Waterloo.

## 17.02   Special

Special transfers are those that occur on an infrequent basis such as the Pensioners' Insurance Sub-Fund transfers.  These are to be co-ordinated through NTL Treasury who will advise Mutual Life, Montreal Trust, NTC Trust Accounting and NTL Pension Department the specifics and nature of such transfers.  In most cases, this transfer will take the form of an electronic funds transfer to either NT and then to the Trust Fund, or direct to the Trust Fund.  Payment to the Trust Fund takes the following format "Montreal Trust, Trustee for Northern Telecom's Health and Welfare Trust".  The format for the determination of the funding requirement is attached as Exhibit A.

1980
## HEALTH AND WELFARE TRUST YEAR END FUNDING

| BENEFIT | RESERVES | ESTIMATED RESERVE LIABILITY | FUNDING MECHANISM | CLAIMS PAID | YEAR END CONTRIBUTION | ACCRUALS |
|---------|----------|-----------------------------|-------------------|-------------|------------------------|----------|
| SIB | 0 | 420,708 | PAYG | 24,747 | nil ) | |
| STB | 0 | 348,349 | PAYG | 52,975 | nil ) | 90,000 |
| LTD [2] | 87110 + 21555 | 725,373 | 20% pa | 123,539 | 24,973.80 [3] | 390,000 |

1. Prorated to December 1980

2. NTL and BNR Reserves

3.

| | TOTAL | NTC | BNR | NEDCO |
|---|-------|-----|-----|-------|
| Liability | 725,373 | 569,945 | 22,103 | 133,325 |
| Claims paid | (123,539) | (87,139) | (4,423) | (31,977) |
| End Bal. | 601,834 | 482,806 | 17,680 | 101,348 |
| Avg. Bal. | 663,603 | 526,375 | 19,892 | 117,336.5 |
| Interest on Avg. Bal. @ 10% | 66,360 | 52,637.55 | 1,989 | 11,733.65 |
| Y/E Liability | 668,194 | 535,443.55 | 19,669 | 113,081.65 |
| 20% Funding | 133,638.8 | 107,088.7 | 3,933.8 | 22,616.33 |
| Reserves | 108,665 | 87,110 | 21,555 | Nil |
| Contribution | 24,973.8 | 19,978.7 | (17,621.2) | 22,616.30 |

18.00   UNITIZATION

18.01   Unitization is the mechanism for establishing which employee
        groups contributed what funds.  This is done on a
        percent-of-the-whole-fund basis, i.e., beginning month figures
        for each contributing group are converted to a percent of the
        total fund.  The maintenance of this allocation procedure is
        done by NTC Trust Accounting.  The net of total contributions
        and expenses are then added to the beginning month's balance.
        Investment income attributable to each month is then allocated
        to the beginning month balance.

18.02   The technique described is standard industry practice for the
        process of unitization.  While there exists a short-term time
        value of money problem for early contributions and late
        expenses, it is generally considered that there will be an
        averaging effect over the longer term.  This situation could
        be reduced if daily calculations and allocations were made.
        Presently, however, unless the inter-month funds rise
        significantly, practical considerations suggest a monthly
        allocation of income.  Valuation is done on a book rather than
        market basis.

## 19.00   STOP LOSS INSURANCE

19.01   Stop loss coverage is generally only considered for benefits which have a low chance of occurrence and yet the associated liability is very large.  Presently Northern Telecom has two forms of stop loss or catastrophic insurance.  The first is a stop loss level of 125% of expected claims.  This covers the following benefits:

- Long Term Disability
- Survivor Income Benefit
- Survivor Transition Benefit
- Group Life Insurance Part I
- Group Life Insurance Part II
- Accidental Death and Dismemberment

19.02   The Extended Health and Dental Benefit Plans are not included in the Stop Loss.

19.03   The Stop Loss coverage mentioned is held by Mutual Life, the current charge is one quarter of a percent of the expected claims during the policy year.  This is paid by Northern.

19.04   The second form of Stop Loss insurance went into effect on December 3, 1980.  It is a three year policy with Lloyds of London covering Northern Telecom Ltd. and its subsidiaries for losses resulting from any one occurrence in excess of $1,000,000 either Canadian or U.S. or both.  "Occurrence" is defined as an accident involving two persons or an outbreak or epidemic involving at least four persons which manifest within a period of at least sixty days.  The specifics of this excess insurance coverage is attached as Appendix B.  The combined annual cost of this coverage, $26,600.00 for Canada and the U.S. is paid by Northern.

20.00  PENSIONERS' INSURANCE FUND (PIF)

20.01  This fund covers the life insurance on the pensioners of the
       Canadian companies of NTL including BNR.  The PIF is divided into
       three separate units.  These represent funds for NTL/C, BNR and
       NTSL.  The coverage for which a pensioner is insured is that amount
       of insurance for which the employee was insured as an active
       employee on the date of retirement.  It is reduced on the first
       anniversary of the date of retirement by 5% of such amount and
       further reduced by like amount on each of the next four
       anniversaries after date of retirement to remain at the level of 75%
       of pre-retirement insurance.

20.02  Funding policy of the PIF is to provide flexibility to the
       company.  The funding policy is determined by NTL Treasury.  The
       funding change should be made during the three months following
       receipt of an actuarial valuation.  The actuarial valuation of the
       Pensioners' Insurance Fund should be calculated as of January 1st of
       each year by Pouliot Guerard.  The valuation is based on the
       projected retirement rates of company employees and the group life
       mortality rates.  The retirement rates are identical to those of the
       company pension plans; retirements are assumed to occur in the
       middle of the year.

20.03  Employee contributions are split between Group I and the PIF as
       determined by NTL Treasury.  The employees currently contribute the
       amount of 50 cents per month per $1,000 of Part I  coverage over
       $10,000 of which 28.2 cents is designated for the Pensioners'
       Insurance Fund.  To be consistent with the funding policy the
       employer contributes the difference between the funding requirements
       and the employees' contributions.

20.04  Included in the PIF are the following sub-funds which are
       administered by Mutual Life until maturity at which time they will
       be transferred by Mutual Life to the Health and Welfare Trust
       Fund.  The specifics of these special transfers are addressed in a
       later section.  Interest on these sub-funds are to be paid on
       January 1st and March 31st for these sub-funds maturing on those
       respective dates.

| SUB-FUND | MATURITY | INTEREST RATE | PRINCIPAL |
|---|---|---|---|
| 5A | March 1, 1982 | 9.38% | $1,731,982.32 |
| 1977 | January 1, 1982 | 9.31% | 218,795.09 |
| 1978 | January 1, 1983 | 8.99% | 2,674,839.79 |
| 1979 | January 1, 1984 | 9.74% | 2,673,422.26 |

20.05  The companies which contribute to the Pensioners' Insurance Fund
       and whose employees are covered by it will be charged for their
       respective share of the expenses incurred by the Pension
       department in administering the PIF.

**21.00**   <u>INVESTMENT OBJECTIVES AND GUIDELINES</u>

.01   The primary objective is the maintenance of funds sufficient to meet present and future benefit payments; this is to be achieved through rates of return on fund investments sufficient to minimize funding costs and to finance the improvement of benefit payments.

21.02   Fund investments are to be maintained in diversified portfolios to minimize investment risk.

21.03   Fund investments are to be made mainly in fixed income investments, namely bonds, mortgages and short-term.  Further, until such time as benefit payments experience is established, investments are to be made for terms no longer than 5 years.

21.04   Fund investments are to be made within the framework of the investment guidelines for bonds, mortgages and short-term portfolios as stated under Exhibits A, B & C.

21.05   Investments will comply with prevailing health and welfare legislations and tax provisions.

21.06  EXHIBIT A

CANADIAN BOND PORTFOLIO

a)  INVESTMENT OBJECTIVES

1. Total return approach to bond portfolio management, i.e. generate satisfactory yields and protect capital against adverse interest rate movements.

2. Achieve above average returns by taking advantage of interest rate swings to secure capital gains.

3. Improve overall portfolio quality in order to reduce investment risks.

4. To outperform the results of a sample of similar Canadian funds.

b)  INVESTMENT GUIDELINES

1. All bonds investments must comply with the provisions of prevailing Health and Welfare fund legislations.

2. Investments may be made in bonds or debentures issued by or guaranteed by the Government of Canada, the Provinces, and major Corporations.

3. Specific limitations by sector, will be applied to the following bond categories.

| | |
|---|---|
| – Government of Canada | No limit |
| – Provincial or Provincial Guaranteed | No limit overall<br>Specific Limit for Ontario – 30%<br>Specific Limit for B.C., Saskatchewan, Alberta, Manitoba, or Quebec – 20%<br>Any one Maritime Province – 10% |
| – Corporate | No limit overall |

4. Preference will be given to Government of Canada bonds and prime Provincial bonds for liquidity considerations. However, investments in other Provincial and Corporate issues may be sought, accepting less liquidity on the basis that yield premiums will result in overall higher return.

CANADIAN BOND PORTFOLIO   (cont'd.)

5.  There are no restrictions on investments in any
    specific Government of Canada or Provincial Govern-
    ment issue, although consideration should be given to
    the size of public issue outstanding.  Provincial
    bonds should have outstanding issues of at least
    $100M.

6.  Only Corporate bonds and debentures may be purchased,
    which are rated B++ or higher by the Canadian Bond
    Rating Service or Dominion Bond Rating Service, or
    corporate bonds and debentures of local subsidiaries
    of foreign corporations which are fully guaranteed by
    the foreign corporation with an equal or better
    rating in the United States by either Moody's or
    Standard and Poor's.  A minimum of 90% of the port-
    folio will be invested in issues rated single "A" and
    higher.

7.  The maximum investment in the debt issue of any one
    corporation should not exceed 5% of the corporation's
    outstanding debt.

    Preference will be given to corporate issues with
    sinking fund requirements.

8.  The main purpose of trading the bond portfolio is to
    restructure term, i.e. shortening maturities if high-
    er rates are expected to reduce market risks, and
    lengthening maturities to take advantage of interest
    rate swings to secure capital gains.

9.  When not in conflict with the term structuring
    strategy, bonds may be traded to improve yield or
    quality of the portfolio.

10. The choice of bond coupon rate will be dependent on
    interest rate outlook.  When near term outlook is
    negative or mixed, the higher coupon bonds provide
    downside support; when the outlook is positive, the
    discount bond provides better relative performance.

11. Extendible and retractable bonds provide some of the
    defensive characteristics of short maturities, with
    some of the capital gains of longer maturities.  At
    reasonable price premium over straight bonds, they
    are to be preferred instruments.

12. No investment shall be made in the securities of
    Northern Telecom Limited, Bell Canada or any of their
    subsidiary or associate companies.

21.07  EXHIBIT B

CANADIAN SHORT-TERM PORTFOLIO

a)  INVESTMENT OBJECTIVES

1.  To maintain temporary funds sufficient to meet the
requirements of longer term investments in bonds and
mortgages.

2.  To generate satisfactory yields and protect capital
from adverse interest rate movements.

3.  To improve overall quality in order to reduce invest-
ment risk.

b)  INVESTMENT GUIDELINES

1.  All short-term investments must comply with the pro-
visions of prevailing Health and Welfare legis-
lations.

2.  Investments may be made in short-term instruments to
include government securities (treasury bills);
chartered bank securities (bearer deposit notes,
deposit receipts, term notes, certificates of
deposits, bank swap deposits, or bankers accept-
ances); and corporate securities (finance companies
paper, commercial papers, and call loans to invest-
ment dealers).

3.  Subject to periodic review, specific limitations by
sector will be applied to the following short-term
categories:

| | |
|---|---|
| – Government of Canada | No limit overall |
| – Provincial or Provincial Guaranteed | No limit overall |
| – Chartered Banks Assets over $10B Assets over $ 2B | $5M in any one bank $3M in any one bank |
| – Corporate Rated R-1 or A-1 | $1.0M in any one corporation |
| Call loans to dealers | $1.0M to any one dealer |

4.  Preference will be given to government, prime
corporate and major chartered bank securities for
liquidity considerations.  However, investments in
minor chartered banks and corporate issues may be
sought, accepting less liquidity on the basis that
yield premiums will result in overall higher return.

CANADIAN SHORT-TERM PORTFOLIO  (cont'd.)

5.  Only corporate securities may be purchased, which are rated R-1 (H.M.L.) by the Dominion Bond Rating Service or A-1 by the Canadian Bond Rating Service, or local subsidiaries of foreign corporations which are fully guaranteed by the foreign corporation having an equal or better rating from a comparable rating service in the United States.

6.  Investments in call loans to investment dealers may be made, provided that they are fully collateralized with acceptable securities, and that they are extended to major investment dealers.

7.  Short-term investments are to have maturities of one year or less.  The term structure will depend on liquidity requirements, yield, and interest rate outlook.

8.  The short-term portfolio may be traded to improve yield or quality.  When not in conflict with the liquidity requirements, term may be extended or shortened to take advantage of interest rate swings to secure capital gains.

9.  No investment shall be made in the securities of Northern Telecom Limited, Bell Canada, or any of their subsidiary or associated companies.

EXHIBIT C
CANADIAN MORTGAGE PORTFOLIO

a)   INVESTMENT OBJECTIVES

To obtain maximum return, with a low level of risk from a
diversified portfolio of mortgages.   Results will be
evaluated against the median returns of a sample of
similar Canadian funds.

b)   INVESTMENT GUIDELINES

1.   All mortgage investments must comply with provisions
     of prevailing health and welfare fund legislation.

2.   Mortgage commitments will be restricted to NHA
     insured and MICC insured mortgages where loan to
     total value ratio exceeds 75% and to conventional
     mortgages where the ratio does not exceed 75%.

3.   Diversification among the various mortgage investment
     areas including single family residential housing,
     condominium/apartments, townhouses/apartment
     buildings, shopping centres, offices and industrial
     buildings, should be sought within the quality and
     risk standard mentioned below and net return avail-
     able.

4.   A mortgage term of up to 5 years is acceptable,
     depending on the type of project, the credit of the
     project, the duration of any leases and/or government
     subsidy programs.

5.   Amortization should relate to the credit worthiness
     of the borrower and the remaining economic life of
     the project with maximum amortization of 30 years,
     except for NHA loans up to 35 years.

6.   Investment in any single project will be restricted
     to a $1 million maximum and a $100,000 minimum.

7.   Investment in mortgages shall not exceed 50% of the
     total assets at market.

8.   All mortgages should receive a suitable opinion as to
     eligibility for Health and Welfare fund investment
     from the servicing agent.

9.   All approved commitments must be serviced by a
     servicing agent whose servicing agreement meets legal
     approval of both Northern Telecom, and Montreal
     Trust.

10.  No investment shall be made in the properties of
     Northern Telecom Limited, Bell Canada or any of their
     subsidiary or associated companies.

52

## 2.00   GENERAL TRUST INFORMATION

### .01   Actuarial Consultants

To ensure that NTL's insurance liabilities were balanced with adequate contribution and funding levels, actuarial consultants were used.  Pouliot Guerard and Associates of Montreal were retained for the purposes of cash flow projections.  Our account actuary is Mr. Marc Fernet (514) 285-1122.  The Trust will require actuarial estimates for Long-Term Disability, Survivor Income and Survivor Transition Benefits and the Pensioners' Insurance Fund on a yearly basis.  These will be provided by Mutual Life with input by Pouliot Guerard.

### 22.02   Policy Year

The policy year will be a calendar year for all coverages and employees regardless of when the coverages were transferred to the Trust Fund.  Experience for partial year, will be reported for coverages transferred in during the year.

### 22.03   Conversion Charges

The conversion charges (i.e., an ex-employee switching from Mutual's coverage) on Group Life Part I, excluding accidental death and dismemberment plan, and Part II would be handled by Mutual Life in the manner similar to retention expenses, i.e. monthly claims plus expenses.  Reports would break out the conversion charges separately from other expenses.
The conversion charges will be recorded separately from retention in the Trust and recovered from the Health and Welfare Trust in a manner similar to the general expense recovery. Under the current policy, 60 percent of conversion charges are refunded if the converted policy is terminated by the employee within 12 months or, if there is no claim, within a 12 month period.  The Trust will record refund of conversion charges by netting against conversion charges recorded during the year.

### 22.04   Self-Insurance Manual Revisions

The reponsibility for updating approved contents of this Manual lie with the originating departments.  Changes should be in a format that allows for easy insertion.  For co-ordination purposes all approved changes should be directed to the Benefits Management Committee secretary; who shall maintain a current list of BMC member departments and individuals.  The secretary shall then distribute the changes.

23.00

## CHART OF ACCOUNTS

x = valid general ledger account

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|

### BALANCE SHEET

#### 1. BANK ACCOUNTS

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 1.1 | MONTREAL TRUST COMPANY | X | | | | | |
| 1.2 | BANK OF MONTREAL - DEPOSIT - WATERLOO | X | | | | | |
| 1.3 | BANK OF MONTREAL - MUTUAL LIFE - WATERLOO | X | | | | | |
| 1.4 | QUEBEC BLUE CROSS - WORKING FUND | X | | | | | |

#### 2. INVESTMENTS

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 2.1 | MORTGAGES | X | | | | | |
| 2.2 | SHORT-TERM INVESTMENTS | X | | | | | |
| 2.3 | BONDS | X | | | | | |
| 2.4 | SINKING FUND DEBENTURES | X | | | | | |

#### 3. RECEIVABLES

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 3.1 | NTC | X | | | | | |
| 3.2 | BNR | X | | | | | |
| 3.3 | NTSL | X | | | | | |
| 3.4 | MUTUAL LIFE - CURRENT | X | | | | | |
| 3.5 | MUTUAL LIFE - DEFERRED | X | | | | | |
| 3.6 | ACCRUED INTEREST | X | | | | | |

#### 4. PAYABLES

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 4.1 | MUTUAL LIFE | X | | | | | |
| 4.2 | NTC | X | | | | | |
| 4.3 | MONTREAL TRUST | X | | | | | |

#### 6. RESERVES

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 6.1 | FUTURE USE | | | | | | |
| 6.2 | LONG-TERM DISABILITY RESERVE | | X | X | | X | X |
| 6.3 | SURVIVOR INCOME BENEFITS RESERVE | | | X | | X | X |
| 6.4 | SURVIVOR TRANSITION BENEFITS RESERVE | | X | | X | | |
| 6.5 | PENSIONERS' INSURANCE FUND | | | | X | X | X |
| 6.6 | RATE STABILIZATION FUND | | X | X | | X | X |
| 6.7 | GROUP LIFE PART I - RESERVE | | X | X | | X | X |
| 6.8 | DEPENDENT LIFE INSURANCE - RESERVE | | | | | | X |

### P&L ACCOUNTS

#### 7. CLAIMS PAID

| | | TOTAL FUND | NTC/L UNIONS | MGMT MSS | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 7.1 | DENTAL | | X | X | | X | X |
| 7.2 | EXTENDED HEALTH | | X | X | X | X | X |
| 7.3 | FUTURE USE | | X | X | | X | X |
| 7.4 | LONG-TERM DISABILITY | | X | X | | X | X |
| 7.5 | SURVIVOR INCOME BENEFITS | | | X | | | X |
| 7.6 | SURVIVOR TRANSITION BENEFITS | | X | X | X | | |

## CHART OF ACCOUNTS

x = valid general ledger account

|  |  | TOTAL FUND | NTL/C UNIONS | MGMT | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 7.7 | GROUP LIFE - PART I | | X | X | | X | X |
| 7.8 | GROUP LIFE - PART I - A.D. & D. | | X | X | | X | X |
| 7.9 | GROUP LIFE - PENSIONERS | | | | X | X | X |
| 7.10 | GROUP LIFE - PART II | | X | X | X | X | X |
| 7.11 | FUTURE USE | | | | | | |
| 7.12 | FUTURE USE | | | | | | |

### 8. EMPLOYEE & EMPLOYER CONTRIBUTIONS

|  |  | TOTAL FUND | NTL/C UNIONS | MGMT | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 8.1 | DENTAL | | X | X | | X | X |
| 8.2 | EXTENDED HEALTH | | X | X | X | X | X |
| 8.3 | FUTURE USE | | | | | | |
| 8.4 | LONG-TERM DISABILITY | | X | X | | X | X |
| 8.5 | SURVIVOR INCOME BENEFITS | | | X | | | X |
| 8.6 | SURVIVOR TRANSITION BENEFITS | | X | | X | | |
| 8.7 | GROUP LIFE PART I | | X | X | | X | X |
| 8.8 | GROUP LIFE PART I - A.D. & D. | | X | X | | X | X |
| 8.9 | GROUP LIFE PENSIONERS | | | | X | X | X |
| 8.10 | GROUP LIFE - PART II | | X | X | X | X | |
| 8.11 | DEPENDENT LIFE | | | | | | X |
| 8.12 | FUTURE USE | | | | | | |

### 10. EXPENSE ACCOUNTS

|  |  | TOTAL FUND | NTL/C UNIONS | MGMT | PEN | BNR | NTSL |
|---|---|---|---|---|---|---|---|
| 10.1 | TRUSTEE ADMIN. FEES | X | | | | | |
| 10.2 | MUTUAL LIFE ADMIN. FEES | | X | X | X | X | X |
| 10.3 | FUTURE USE | | | | | | |
| 10.4 | BANK CHARGES | X | | | | | |
| 10.5 | BANK INTEREST | X | | | | | |
| 10.6 | MORTGAGE SERVICE FEE | X | | | | | |
| 10.7 | MORTGAGE FINDER'S FEE | X | | | | | |

### 11. INCOME ACCOUNTS

|  |  | TOTAL FUND |
|---|---|---|
| 11.1 | MORTGAGE INTEREST | X |
| 11.2 | SHORT-TERM INVEST. INTEREST | X |
| 11.3 | BOND INTEREST | X |
| 11.4 | BANK INTEREST RECEIVED | X |
| 11.5 | GAIN ON SALE OF BONDS | X |
| 11.6 | INTEREST ON S.F. DEBENTURES | X |

### JOURNAL ENTRIES

NO. 1 - CASH RECEIPTS & DISBURSEMENTS - MONTREAL TRUST
NO. 2 - DENTAL & EXTENDED HEALTH CLAIMS PAID BY MUTUAL LIFE
NO. 3 - GROUP LIFE INSURANCE CLAIMS PAID BY MUTUAL LIFE
NO. 4 - BILLINGS TO BNR & NTC FOR CLAIMS PAID
NO. 5 - LTD CLAIMS PAID
NO. 6 - CASH TRANSFERS = BK. OF MTL.
NO. 7 - SIB, STB CLAIMS PAID
NO. 8 - SPECIAL ADJUSTMENT
NO. 9 - CLOSING OUT INCOME, CLAIMS & CONTRIBUTIONS TO RESERVES

24.00          <u>Main Activities and Journal Entries</u>

<u>Bank Accounts</u>

1.  All contributions and reserves are deposited in
    the Montreal Trust account in Montreal (A/C
    900920).

2.  As funds are required to pay claims and
    expenses, the funds are transferred from the
    Montreal Trust account to the Bank of Montreal
    — Deposit account in Waterloo.

3.  Mutual pays claims and expenses by writing
    cheques on the Bank of Montreal — Disbursements
    account in Waterloo.

4.  At month end, the Bank of Montreal — Disburse-
    ments account is cleared by a transfer from the
    Bank of Montreal — Deposit Account.

MAIN ACTIVITIES AND JOURNAL ENTRIES

DENTAL AND EXTENDED HEALTH

NTL/C
- MANAGEMENT -

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Employees or pensioners* file claims directly to Mutual Life. | | |
| 2. Mutual processes claims, writes cheques on the Bank of Montreal -Waterloo, and remits cheques directly to employees or their doctor or dentist. | | |
| 3. Mutual files monthly claims report and invoices NTC for expenses. | DR. Claims Paid<br>CR. Cash | DR. Benefit Costs<br>CR. Cash<br>(For Admin. Expense) |
| 4. Trust bills employers for reimbursement of claims. | DR. Acc. Rec.<br>CR. Contributions | |
| 5. Employer reimburses trust fund for claims paid. | DR. Cash<br>CR. Acc. Rec. | DR. Benefit Costs<br>CR. Cash<br>(For Claims Paid) |

NOTES:  1.  At this time, Dental & Extended Health in the Trust fund as outlines above, apply only to NTL/C-Management, BNR, NTSL.

2.  For Dental & Extended Health - Employer pays full cost, except for NTSL.

3.  Actual accounting entries will give detailed breakdown per chart of accounts.

* Also covers Pensioners and survivor Annuitants

MAIN ACTIVITIES AND JOURNAL ENTRIES

DENTAL AND EXTENDED HEALTH

- UNION -

(with Quebec Blue Cross)

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Welfare Trust sends Working fund to Quebec Blue Cross. | DR. Cash-Working Fund (Q.B.C.)<br>CR. Cash-Mtl. Trust | |
| 2. Employees file claims directly to Quebec Blue Cross | | |
| 3. Quebec Blue Cross processes claims, writes cheques on the Working Fund to reimburse employees. | | |
| 4. Quebec B.C. files monthly claims report and invoice NTC for expenses | DR. Claims Paid<br>CR. Cash-Wkg. Fund | DR. Benefit Costs<br>CR. Cash<br>(For Admin. Expense) |
| 5. Trust Reimburses Quebec B.C. for claims paid | DR. Cash-Wkg. Fund<br>CR. Cash-Mtl. Trust | |
| 6. Trust Bills employer for reimbursement of claims | DR. ACC. Rec<br>CR. Contributions | |
| 7. Employer reimburses Trust Fund for claims paid | DR. Cash<br>CR. Acc. Rec. | DR. Benefit Costs<br>CR Cash<br>( For Claims Paid) |

NOTE:  Employer pays full cost

## MAIN ACTIVITIES AND JOURNAL ENTRIES
## LONG-TERM DISABILITY

| Activity | Trust Books | Employer's Books |
|---|---|---|
| 1. Employer submits to Mutual Life for adjudication. | | |
| 2. Mutual Life notifies employee of of approved claim | | |
| 3. Mutual pays claims monthly by writing cheques on the Bank of Montreal for the gross pay less deductions. | | |
| 4. Mutual files monthly claims and expense reports, including detail of deductions made (Fed. Inc. Tax, CPP, UIC, Union dues, etc.). Mutual reimburses itself for expenses and deductions. | DR. Claims Paid<br>    Admin. Exp.<br>    CR. Cash | DR. Rec. - Mutual Life*<br>    CR. Payables<br>        (Fed. Tax, etc.) |
| 5. Mutual remits cheque for deductions withheld from employees. | DR. Payable to Employer*<br>    CR. Cash | DR. Cash<br>    CR. Rec. - Mutual<br>        Life* |
| 6. Employer remits cheques to third parties for deductions withheld from employees. | | DR. Payables (Fed. Tax, etc.)*<br>    CR. Cash |
| 7. At year end employer makes additional contributions to the Trust Fund as required in the Funding Policy. | 1. DR. Cash<br>    CR. LTD Contributions | DR. Benefit Costs<br>    CR. Cash |

NOTES: 1. LTD applies to NTL/C - Mgt. NTC - Union, Non-Union, BNR, NTSL
* For deductions withheld from Employees.
2. Employer pays full cost of benefit
3. Actual Accounting entries will give detail breakdown per Chart of Accounts

## MAIN ACTIVITIES AND JOURNAL ENTRIES
### SURVIVOR INCOME BENEFITS

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Employees contributions remitted to Trust by Employer. | DR. Cash<br>   CR. Contributions | DR. Employee deductions<br>   CR. Cash |
| 2. Employer notifies Mutual of approved claims. | | |
| 3. Mutual pays monthly claims by writing cheques on the Bank of Montreal for the gross amount less deductions. | | |
| 4. Mutual files monthly claims and expense reports, including details of deductions made (income tax) and reimburses itself for expenses and deductions. | DR. Claims Paid<br>   Admin. Exp.<br>   CR. Cash | DR. Rec. MUTUAL LIFE<br>   CR. Payables (Income Tax) |
| 5. Mutual remits cheque to employer for deductions withheld from employees. | | DR. Cash<br>   CR. Rec. MUTUAL LIFE |
| 6. Employer remits cheques to third parties for deductions withheld from employees. | | DR. Payables (Income Tax)*<br>   CR. Cash |
| 7. Claims paid and Admin. Expenses are charged to SIB Reserve at year end. | | |

\* For deductions withheld from Employees.

NOTES:  1. SIB applies only to NTL/C Management and NTSL
       2. Cost is shared by employer and employer
       3. Accounting entries will give detail breakdown per Chart of Accounts

60

## MAIN ACTIVITIES AND JOURNAL ENTRIES

### SURVIVOR TRANSITION BENEFITS

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Employer notifies Mutual Life of approved claims. | | |
| 2. Mutual pays claims monthly by writing cheques on the Bank of Montreal for the gross pay less deductions. | | |
| 3. Mutual files monthly claims and expense reports, including detail of deductions made (Fed. Inc. Tax, and semi-private in Ontario) and also reimburses itself for expenses and deductions. | DR. Claims Paid<br>Admin. Exp.<br>CR. Cash | DR. Rec. Mutual Life*<br>CR. Payables (Fed. Tax etc.) |
| 4. Mutual remits cheque to employer for deductions withheld from employees. | DR. Payable to Employer*<br>CR. Cash | DR. Cash<br>CR. Rec. Mutual Life |
| 5. Employer remits cheques to third parties for deductions withheld from employees. | | DR. Payables (Fed. Tax, etc.)<br>CR. Cash |
| 6. Trust bills employer for claims and Admin. Expenses. | DR. Acc. Rec.<br>CR. Contributions | |
| 7. Employer reimburses Mutual for claims and expenses. | DR. Cash<br>CR. Acc. Rec. | DR. Benefit Costs<br>CR. Cash |
| 8. At year-end, employer makes additional contributions to the fund as required in the Funding Policy. | DR. Cash<br>CR. STB Contributions | DR. Benefit Costs<br>CR. Cash |

NOTES: 1. STB applies to Union Employees, non-union and certain Pensioners
2. Employer pays full cost.

\* For deductions withheld from Employees.

## MAIN ACTIVITIES AND JOURNAL ENTRIES
### GROUP LIFE INSURANCE - PT. 1

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Employees contributions remitted to Trust by employer | DR. Cash<br>CR. Contributions | DR. Employee deductions<br>CR. Cash |
| 2. Portion of employee contribution (28.2¢/$1,000) is credited to Pensioners Insurance Fund (P.I.F.) | DR. Contributions - Gp. Life-I<br>CR. P.I.F. Contributions | |
| 3. Employer notifies Mutual of approved claims | | |
| 4. Mutual pays claims and reimburses itself from the Bank of Montreal Account | | |
| 5. Mutual files monthly claims and expense reports | DR. Claims Paid<br>Admin. Exp.<br>CR. Cash | |
| 6. Trust bills employer for claims and Admin. expenses | DR. Acc. Rec."<br>CR. Contributions | |
| 7. Employer reimburses Mutual for claims and Admin. expense for Active Employees | DR. Cash<br>CR. Acc. Rec. | DR. Benefit Costs<br>CR. Cash |
| 8. For Pensioners' claims, Employer makes contribution according to the reserve requirements outlined in the Funding policy. | 1. DR. Cash<br>CR. P.I.F. Contributions | DR. Benefit Costs<br>CR. Cash |

NOTES:
1. Group Life applies to NTL/C - Mgt, NTC - Union, NTC - Non Union, BNR, NTSL.
2. Cost is fully paid by Northern for NTL/C - management and NTSL; cost shared with employees in other groups
3. Accounting entries will give detail breakdown per chart of accounts.

62

## MAIN ACTIVITIES AND JOURNAL ENTRIES
### GROUP LIFE INSURANCE - PART 2

| | Trust Books | Employer's Books |
|---|---|---|
| 1. Employer remits deductions from employees to Trust | DR. Cash<br>CR. Rate Stabilization fund | DR. Employee deductions<br>CR. Cash |
| 2. Employer notifies Mutual of approved claims | | |
| 3. Mutual pays claims and reimburses itself from the Bank of Montreal Account | | |
| 4. Mutual files monthly claims and expense reports | DR. Claims Paid<br>Admin. Expense<br>CR. Cash | |
| 5. Claims paid by Mutual are charged against Rate Stabilization Fund at year end. | | |

NOTES:  1. Group Life applies to NTL/C - Mgt. NTC - Union, Non-Union, NTSL, BNR
        2. Cost is fully paid by employee
        3. Accounting entries will give detail breakdown per chart of accounts.

# APPENDIX A

## MONTREAL TRUST FEE SCALE

**Montreal Trust**
Pension Administration

| INVOICE DATE | 13 | 06 | 80 |
|---|---|---|---|

Northern Telecom Health & Welfare Fund
c/o Northern Telecom Ltd
P.O. Box 458, Station A
Mississauga, Ontario
L5A 3A2

Att: Manager, Pension Fund

| INVOICE NUMBER | 505281 |
|---|---|

| CLIENT NUMBER | 0,8 | 0,0,0,0 | 0,1,2,0 | 0,0,9,2 |
|---|---|---|---|---|

## Final Fee Adjustment
BASIC SCALE

(CALCULATED BASED ON AVERAGE ACCOUNT VALUE AT BOOK [ ]    MARKET [ • ] )

| ACCOUNT NUMBER | VALUATION DATE | ACCOUNT VALUE |
|---|---|---|
| 900920 | | $ |
| | TOTAL VALUE | $ |
| | AVERAGE VALUE | $ 4,000,000.00 |

| | | | |
|---|---|---|---|
| 36% ON THE FIRST $ 1,000,000 | OF ASSETS | $ | 3,600.00 |
| 04% ON THE NEXT $ 3,000,000 | OF ASSETS | | 1,200.00 |
| % ON THE NEXT $ | OF ASSETS | | |
| % ON THE NEXT $ | OF ASSETS | | |
| % ON THE $ | BALANCE | | |

| FEE — BASIC SCALE | A | $ 4,800.00 |
|---|---|---|

### ...TIONAL SERVICES

| | | | |
|---|---|---|---|
| PENSION CHEQUES ISSUED | @ $ | $ | |
| TERMINATION & REFUND CHEQUES | @ $ | | |
| GOVERNMENT REPORTS | @ $ | | |

| FEE — ADDITIONAL SERVICES | B | $ |
|---|---|---|

## FUND EVALUATION

| REPORTS | [ ] @ $ | C | $ |
|---|---|---|---|

| TOTAL FEE FOR _____ | | $ |
|---|---|---|
| LESS PREVIOUSLY BILLED | | $ |

| BALANCE DUE | $ |
|---|---|
| (PRORATION ATTACHED IF APPLICABLE) | |

## Interim Fee

(ESTIMATE BASED ON _____ ACTUAL)

| | | | | |
|---|---|---|---|---|
| BASIC SCALE | (1/12 OF "A" ABOVE) | PER MONTH | $ | 400.00 |
| ADDITIONAL SERVICES | (1/12 OF "B" ABOVE) | PER MONTH | $ | |
| FUND EVALUATION | (1/12 OF "C" ABOVE) | PER MONTH | $ | |
| | TOTAL INTERIM FEE | 1ST MONTH | $ | 400.00 |

| ...tal Invoice | $ |
|---|---|

600005-118

FEE AGREEMENT

NORTHERN TELECOM LTD.

PENSION FUND

THE FOLLOWING ANNUAL FEE SCALE IS APPLICABLE
TO THE YEAR 1980.

BASIC SCALE

The basic scale will be applied to the average book value* of assets
held including up to $1,000,000 of Mortgage and Real Estate invest-
ments.

| | |
|---|---|
| On the first  $ 1 million of assets | .36 of 1% |
| On the next   $ 1 million of assets | .18 of 1% |
| On the next   $ 3 million of assets | .12 of 1% |
| On the next   $20 million of assets | .06 of 1% |
| On the balance | .04 of 1% |

* Average book value means the aggregate of the opening and closing book
value of the fund for the charge period divided by two (2).

For the purpose of calculating fees, the basic scale will apply separately
for the first $ 1 million of each associated account under our administra-
tion. Assets over $ 1 million in each account may then be combined and
the balance of the basic fee scale applied to the aggregate.

For 1980, associated accounts include Bell Northern Research Pension
Fund and Northern Telecom Ltd. Health and Welfare Trust Fund.

SECURITY TRANSACTIONS

For 1980 and subsequent years, there will be a $7 security transaction
fee. This will apply to all capital security transactions in the Bond
and Equity portfolios of Northern Telecom Ltd. and related accounts.

MASTER TRUST

For unitization of participant funds and for preparation of monthly
reports, an additional fee of $600 per annum for each participant.

APPENDIX B

LLOYD'S OF LONDON - EXCESS INSURANCE POLICY

J.H. MINET (CANADA) INC.,
111 Richmond Street,
Suite 310
Toronto, Ontario
M5H 2G4

I.    NAMED ASSURED

Northern Telecom Limited and all subsidiary, associated and affiliated companies as now or hereafter constituted.

II.   LIMIT OF LIABILITY

$10,000,000 each and every loss any one occurrence, and in the aggregate excess of Assureds' Retention. In the event of loss or losses, Underwriters agree to automatic reinstatement of the full Limit of Liability at pro rata additional premium for the unexpired term of this insurance but in no event shall Underwriters be liable for more than $20,000,000 during the full term of this insurance.

III.  ASSUREDS' RETENTION

$1,000,000 aggregate each and every loss any one occurrence in the event of loss or losses which occur or which commence during the policy period hereon under the Assureds' Employee Benefit Programme(s) as administered or serviced by or otherwise involving Prudential Assurance or Mutual Life of Canada. In the event of a loss involving Canadian and United States of America personnel the retention to be applied in the same proportion as incurred loss.

IV.   POLICY PERIOD

12:01 a.m. December 3, 1980 to 12:01 a.m. December 3, 1983 (Local Standard Time).

V.    INSURING AGREEMENT

Underwriters agree to indemnify the Named Assured for the amount of ultimate net loss in excess of the Assureds' Retention which the Named Assured may become obligated to pay all persons covered under the Assured's Employee Benefit Programme(s) as administered or serviced by or otherwise involving Prudential Assurance or Mutual Life of Canada (other than short term disability benefits which administered by Assured) in respect of losses arising anywhere in the world, including whilst flying as a pilot, crewmember or passenger in any aircraft, involving:

(a)   Death (whether arising out of accident benefits and/or life benefits) including survivor income benefits (subject to a two year commutation Clause) which occurs during this policy period.

– 2 –

(b)  Dismemberment and/or Permanent Total Disablement by accident which occurs or commenced during this Policy Period.

(c)  Temporary Total Disablement (short term disability benefits limited to 52 weeks) commencing during this Policy Period.

(d)  Medical, Hospitalisation and Dental Services (subject to a two year commutation clause) commencing during this Policy Period.

(e)  Long Term Disablement and Permanent Total Disablement (mortgage repayment) (subject to a two year commutation clause) commencing during this Policy Period.

Provided all losses are solely due to:

(1)  The same accident involving at least two persons with losses paid under (a) and/or (b) and/or (c) and/or (d) and/or (e) above.

(2)  An outbreak or epidemic of the same sickness or disease involving at least four persons with losses paid under (a) and/or (c) and/or (d) and/or (e) above.

It is understood and agreed that this Policy excludes losses in respect of Workmen's Compensation Act and Employers Liability coverages.

It is also understood and agreed that all significant changes in the Named Assured's Employee Benefit Programme(s) will be advised to Underwriters at each anniversary but failure to do so will not affect the coverage as specified herein.

It is further agreed that subject otherwise to the terms, limitations and conditions hereof,

(a)  this Policy covers claims arising out of bodily injury caused by exposure to the elements as the result of an accident covered by this Policy, and

(b)  if an Insured Person disappears and the body is not found within a reasonable period of time, or a maximum period of one year, and Underwriters, having examined all available evidence shall have no reason other than to presume death in circumstances rendering them liable shall forthwith pay such benefit, but if the Insured Person is subsequently found to be living any sum returned to the Named Assured shall immediately be refunded to Underwriters.

VI.  DEFINITIONS

The term "Loss Occurrence" as used in this Policy shall mean either:

(1)  An accident involving at least two persons.
OR
(11)  An outbreak or epidemic of the same sickness or disease involving at least four persons covered under the Assured's Benefit Programme, who shall have either:

- 3 -

(a) Received Hospital Treatment (which shall include hospital out-patient's treatment).

OR

(b) Received Treatment by a qualified physician when hospital facilities are not available.

OR

(c) Died before receiving treatment by a qualified physician or treatment in a hospital, in respect of such sickness or disease.

Only losses in respect of covered persons contracting the same sickness or disease and which manifests itself within a period of 60 days shall be included in one "Loss Occurrence".

### Ultimate Net Loss

The term "ultimate net loss" shall mean the total sum which the Named Assured shall become obligated to pay under the Assured's Employee Benefit Programme(s) as administered or serviced by or otherwise involving Prudential Assurance or Mutual Life of Canada as a consequence of any occurrence including expenses for litigation, settlement, adjustment and investigation of claims and suits which are paid as a consequence thereof.

### Insured Person

The term "Insured Person" shall mean any person covered by the Assured's Employee Benefit Programme(s) as administered or serviced by or otherwise involving Prudential Assurance or Mutual Life of Canada.

VII. NOTICE OF LOSS

The Named Assured shall advise Underwriters of each occurrence which, in the judgment of the Named Assured, may result in a claim under this policy and shall also report any subsequent development relative thereto.

VIII. PAYMENTS OF LOSSES

Underwriters' share (if any) of each loss settlement shall be payable upon receipt of evidence of the amount of said share provided the loss has actually been paid by or on behalf of the Named Assured. *and / or as provided in Commutation Clause.* Commutation Clause applicable to long term disability, survivors income benefit, and medical, hospitalization and dental benefits only as follows:

- 4 -

It is understood and agreed that not later than twenty four months from the date of the loss occurrence the insured shall advise insurers of all claims not finally settled which are likely to result in claims or further claims under this policy. Underwriters will then capitalise such claim or claims on the formula as set out below, and the payment by Underwriters of their proportion of the amount so ascertained to be the capitalised value of such claim or claims shall constitute a complete and final release of Underwriters.

## Long Term Disablement

At the end of a two year period from the final date of the "Loss Occurrence" a lump sum equivalent to 8 years benefits subject to a maximum sum of $500,000, each person shall be added to the sum paid or payable during the first two years of disablement.

## Survivors Income Benefit

At the end of a two year period from the final date of the "Loss Occurrence" a lump sum equivalent to 8 years benefits subject to a maximum sum of $500,000, each person shall be added to the sum paid or payable during the first two years.

## Medical, Hospitalisation and Dental Benefit

At the end of a two year period from the final date of the "Loss Occurrence" a lump sum equivalent to 8 times the amount paid or payable for the second year of these benefits shall be added to the sum paid or payable during the first two years.

IX. SUBROGATION

In case of any payment hereunder, Underwriters will act in concert with the Named Insured and/or Prudential Assurance and/or Mutual Life of Canada in the exercise of the Named Assureds' right of recovery against any person or other entity. The apportioning of any amounts which may be so recovered shall follow the principle that the Named Insured and/or Prudential Assurance and/or Mutual Life of Canada that shall have paid an amount in addition to any payment hereunder shall first be reimbursed up to the amount paid by them; the Underwriters are then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the Named Insured and/or Prudential Assurance and/or Mutual Life of Canada are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the Named Insured and/or Prudential Assurance and/or Mutual Life of Canada concerned, in the ratio of their respective recoveries as finally settled.

X. INSPECTION OF RECORDS

The Underwriters shall have the right to inspect, through their authorized representatives, at all reasonable times during the currency of this Agreement and thereafter, the books, records and papers of the Named Assured pertaining to this insurance and all claims hereunder.

- 5 -

### BANKRUPTCY AND INSOLVENCY

In the event of the bankruptcy or insolvency of the Named Assured, Underwriters shall not be relieved thereby of the payment of any claims hereunder because of such bankruptcy or insolvency.

### XII. SERVICE OF SUIT

It is agreed that in the event of the failure of Underwriters hereon to pay any amount claimed to be due hereunder, Underwriters, at the request of the Named Assured, will submit to the jurisdiction of any Court of competent jurisdicition within the United States and/or Canada and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon Mendes & Mount, Three Park Avenue, New York, N.Y.  10016 and/or J.A. Madill, C.A., Suite 1400, 635 Dorchester Blvd. Ouest, Montreal, Quebec H3B 1S3 Canada and that in any suit instituted against any one of them upon this policy, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

### XIII. APPEALS

In the event the Named Assured elects not to appeal judgment in excess of the Assureds' Retention.  Underwriters may elect to make such appeal at their own cost and expense, and shall be liable for the taxable costs and disbursements and interest on judgments incidental thereto, but in no event shall the liability of Underwriters for ultimate net loss exceed the amount set forth herein for any one occurrence and in addition the cost and expense of such appeal.

### XIV. CANCELLATION

This policy may be cancelled by the Named Assured or by Underwriters by sending by registered mail notice to the other party stating not less than ninety (90) days prior to anniversary that cancellation shall be effective as of said anniversary date only..  The mailing of notice as aforesaid shall be sufficient proof of notice, and the insurance under this policy shall end on the anniversary date and hour of cancellation stated in the notice.

If this policy shall be cancelled, Underwriters shall retain the pro rata proportion of the premium for the period this policy has been in force.

### XV. CURRENCY

The premiums under this policy are payable in the currency of the United States of America and Canada in equal proportions.  Losses under this policy are payable in United States or Canadian dollars as applicable.

- 6 -

XVI.   <u>CONFLICTING STATUTES</u>

In the event that any provision of this policy is unenforceable under the laws of any State, or other jurisdiction wherein it is claimed that the Named Assured is liable for any injury covered hereby then this policy shall be enforceable by the Named Assured with the same effect as if it was enforceable under such laws.

XVII.   <u>WAR AND CIVIL WAR EXCLUSION CLAUSE</u>

Notwithstanding anything to the contrary contained herein this Policy does not cover Loss or Damage directly or indirectly occasioned by, happening through or in consequence of war, invasion, acts of foreign enemies, hostilities (whether war be declared or not), civil war, rebellion, revolution, insurrection, military or usurped power or confiscation or nationalisation, or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

**APPENDIX C**

**NORTHERN TELECOM – MUTUAL LIFE ASO**

**northern
telecom**

MEMORANDUM

August 13, 1981

To:     D.J. Cooper          BNR        Corkstown
        G. Coulsen           88         Mississauga
        B.B. Craig           48         Mississauga
        H.C. Dennis          1132       Islington
        A.F. Given           65         Mississauga
        J. Henderson         1462       Islington
        P.R. Knubley         104        Mississauga
        C. Michaud           NTSL       Nun's Island
        V.G. Raymond         1405       Islington
        D.E. Sullivan        81         Mississauga
        Paul Simon           1315       Islington
        Keith Robinson       1120       Islington
        Steve Wisniewski     1121       Islington

From:   P.D. Day             65         Mississauga

Subject: Self-Insurance Manual

Attached is the signed ASO Agreement which is to be inserted as
Appendix C.

Paul D. Day

## ADMINISTRATIVE SERVICES AGREEMENT

THIS AGREEMENT made as of the 1st day of January, 1980.

BETWEEN

> MONTREAL TRUST COMPANY, a company duly incorporated under the laws of the Province of Quebec, having its head office in the City of Montreal, Quebec
>
> (hereinafter referred to as the "Trustee")

AND

> NORTHERN TELECOM LIMITED, a company organized and existing under the laws of Canada, having its registered office at 1600 Dorchester Boulevard, Montreal, Quebec
>
> (hereinafter referred to as "Northern Telecom")

AND

> THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA, a corporation incorporated by Act of the Parliament of Canada, having its Head Office in the City of Waterloo, Ontario
>
> (hereinafter referred to as the "Administrator")

WHEREAS the Trustee herein did enter into a Trust Agreement dated as of the 1st day of January, 1980 with Northern Telecom Limited in respect inter alia of Survivor Plans, Health Care Plans, and Long Term Disability Plans (hereinafter referred to as the "Trust Agreement") and providing for the establishment of a trust to be administered by the Trustee.

AND WHEREAS the Trust Agreement provides for the appointment by the Trustee of an Administrator for the carrying out of the normal administration of the terms of the Trust Agreement and the parties hereto wish to enter into this Agreement pursuant to such provision.

NOW THEREFORE WITNESSETH THAT in consideration of the mutual covenants and agreements herein contained and subject to the terms and conditions hereinafter set out the parties agree as follows:

1

## 1. Definitions

In this Agreement:

"Trust Agreement" means the Trust Agreement dated as of January 1st, 1980 between Northern Telecom Limited and Montreal Trust Company and includes The Health and Welfare Plan and its Appendices as may be amended from time to time.

## 2. Term

This Agreement shall continue until terminated by either party hereto in accordance with the provisions of Article 12 hereof.

## 3. Administrative Services

(1) The Administrator shall provide the following basic administrative services:

    (a) receive and examine all claims;

    (b) determine the eligibility of claimants and the propriety of each claim under the Trust Agreement;

    (c) notify claimants of the allowance or disallowance of their claims;

    (d) remit payment of allowed claims as provided in the appendices;

    (e) maintain appropriate records of all claims received and all payments made;

    (f) notify the Trustee of any disputed claim;

    (g) upon request by the Trustee provide

        (i) periodic claims analysis
        (ii) claim control information
        (iii) claim accounting
        (iv) claim forms
        (v) benefit pricing
        (vi) cost analysis, including projections for future periods and estimates of outstanding liabilities
        (vii) advice on plan design trends.

(2) In addition, the Administrator shall provide such other services related to the administration of the Trust Agreement, as may be agreed upon from time to time by the Trustee, Northern Telecom and the Administrator.

(3) On reasonable notice the Administrator shall make available to the Trustee during regular business hours, for the purposes of inspection and copying, all claims records, files, accounts and other documents relating to the administration of the Trust Agreement.

2

4. <u>Administration Fees</u>

(1) The Trustee shall pay to the Administrator for the services set forth in Article 3(1) the following fees:

|  |  |  |
|---|---|---|
| (i) General Administration | : | .45% of all cash claims paid in respect of the Survivor Plans and Long Term Disability Plans |
| (ii) Profit | : | .40% of all cash claims paid in respect of the Survivor Plans and Long Term Disability Plans |

(iii) Claims Administration

|  |  |  |
|---|---|---|
| (a) Survivor Income Benefit | : | $70.00 per death claim, to be charged only once, where no claim has been made under Group Insurance Contract G 13900 or G 15250, plus |
|  | : | $3.50 per cheque issued, plus |
|  | : | $.20 for each deduction on each cheque issued. |
| (b) Survivor Transition Benefit | : | $70.00 per death claim, to be charged only once, where no claim has been made under Group Insurance Contracts G 13900 or G 13901, plus |
|  | : | $3.50 per cheque issued, plus |
|  | : | $.20 for each deduction on each cheque |
| (c) Long Term Disability Benefit | : | $125.00 per in-force claim during the first year |
|  | : | $137.00 per in-force claim during the second year |
|  | : | $151.00 per in-force claim during the third year |
|  | : | plus $3.50 per cheque issued, plus |
|  | : | $.20 for each deduction on each cheque issued |

(2) Northern Telecom shall pay to the Administrator for the services set forth in Article 3(1) the following fees:

|  |  |  |
|---|---|---|
| (i) General Administration | : | .45% of all cash claims paid in respect of the Health Care Plans |
| (ii) Profit | : | .40% of all cash claims paid in respect of the Health Care Plans |

(iii) Claims Administration

|  |  |  |
|---|---|---|
| (a) Health Care Benefit | : | $2.90 per cheque issued, plus postage for each cheque |

3

(b) Dental Benefit
: $1.83 per cheque issued in the first year of the Agreement, plus postage for each cheque
: $1.91 per cheque issued in the second year of the Agreement, plus postage for each cheque
: $1.99 per cheque issued in the third year of the Agreement, plus postage for each cheque

In the event this Agreement continues beyond December 31, 1982, the parties shall agree upon new administration fees. If the Trustee, the Administrator and Northern Telecom do not reach agreement on the new administrative fees prior to January 1, 1983, the administration fees set out above shall continue in effect until agreement is reached on new administration fees, such fees to be effective retroactive to January 1, 1983.

(3) The Trustee and Northern Telecom shall pay to the Administrator for the services set forth in Article 3(2) such fees as may be agreed upon from time to time between the applicable parties.

## 5. Funding

(1) The Administrator shall advise the Trustee from time to time and at least annually prior to the end of the calendar year of the level of funding required to pay the claims hereunder. The Administrator shall use its best efforts to so advise the Trustee by the beginning of December.

(2) The Trustee will deposit in a bank account upon which the Administrator is authorized to draw cheques, such funds as may be determined from time to time to be necessary; the Administrator will pay from such funds all claims approved in accordance with the terms of this Agreement and the Trust Agreement.

## 6. Invoicing and Payment

(1) The Administrator shall submit invoices on a monthly basis to the Trustee and Northern Telecom for the administration fees incurred in the previous month as provided in Article 4(1) and (2).

(2) The Trustee and Northern Telecom shall pay such invoices within thirty (30) days of receipt thereof.

## 7. Indemnity

The Administrator shall reimburse, indemnify and save harmless the Trustee for any loss to or diminution of the funds administered by it hereunder arising from or due to the default, wilful misconduct, lack of good faith or negligence of the Administrator, its employees, agents or servants.

4

8. Amendments to Trust Agreement

The Trustee shall give the Administrator reasonable notice of relevant amendments to the Trust Agreement affecting the performance of this Agreement.

9.  Interpretation

Any reasonable interpretation of this Agreement and the Trust Agreement made by the Administrator in good faith and not contrary to specific instructions of the Trustee shall be binding upon the Trustee.

10. Special Instructions

Notwithstanding any other provision of this Agreement and prior to the payment of any claim hereunder, the Trustee or Northern Telecom may instruct the Administrator in writing of the amount of the claim to be paid.  Such amount shall not exceed the maximum amount payable under the Trust Agreement for such claim.

11. Trustee's Records

The Trustee shall furnish to the Administrator such records and any other information as the Administrator may reasonably require to perform its services hereunder subject always to the Trustee's right to refuse disclosure for reasons of confidentiality.

12. Termination

(1) This Agreement may be terminated:

   (i) as of December 31, 1980 or any time thereafter, upon sixty (60) days prior notice by the Trustee to the Administrator;

   (ii) as of December 31, 1982 or any time thereafter, upon sixty (60) days prior notice by the Administrator to the Trustee.

(2) Upon termination of this Agreement, the following shall occur:

   (i) the Trustee and Northern Telecom shall reimburse the Administrator for any fees for services rendered hereunder for which they are responsible as herein provided, up to the termination date and remaining unpaid at such date; and

   (ii) the Administrator shall surrender and deliver to the Trustee all claims records, files, accounts and other documents maintained by the Administrator pursuant to this Agreement.

5

13. Notices

Any and all notices or other information to be given by one of the
parties to the other shall be deemed sufficiently given when forwarded
by prepaid registered or certified first class air mail or by cable,
telegram, telex, TWX or hand delivery to the other party.

Such notices shall be deemed to have been received five business days
after mailing if forwarded by mail, and the following business day if
forwarded by cable, telegram, telex, TWX or hand.

In the event of a generally-prevailing labour dispute or other
situation which will delay or impede the giving of notice by any such
means, the notice shall be given by such specified mode as will be
most reliable and expeditious and least affected by such dispute or
situation.

14. Non Waiver

The failure by any party at any time to enforce any of the provisions
of this Agreement shall not be construed to be a waiver of such
provision or of the right of either party thereafter to enforce such
provision.

15. Governing Law

This Agreement and all questions pertaining to its validity,
construction and administration shall be determined in accordance with
the laws of the Province of Ontario.

IN WITNESS WHEREOF the parties hereto have executed this agreement and
affixed their corporate seals under the hands of their officers duly
authorized in that behalf.

MONTREAL TRUST COMPANY                    THE MUTUAL LIFE ASSURANCE
                                          COMPANY OF CANADA

Per:                                      Per: Vice-President
    W. H. WHITELOCK, SENIOR CONSULTANT, HEAD OFFICE PENSION SERVICES    (Group Insurance)


R. A. OGDEN, ASSISTANT ADMINISTRATION ADVISOR    Executive Officer
                          NORTHERN TELECOM LIMITED    (Group Marketing)

LEGAL DEPT.                Per:
APPROVED                        Vice-President
DATE                            Secretary

6