APPENDIX D


NORTHERN TELECOM – MONTREAL TRUST
TRUST AGREEMENT

THIS AGREEMENT made as of the 1st day of January, 1980.

B E T W E E N:

> NORTHERN TELECOM LIMITED,
> a corporation incorporated under
> the laws of Canada, and having
> its Registered Office in the
> City of Montreal, Province of
> Quebec,
>
> (hereinafter referred to as the
> "Corporation")

A N D:

> MONTREAL TRUST COMPANY,
> a company incorporated pursuant
> to the laws of Quebec and having
> its Head Office at the City of
> Montreal, therein,
>
> (hereinafter referred to as the
> "Trustee")

WHEREAS:

1.      The Corporation has established for the benefit of certain of its employees and the employees of such affiliated or subsidiary Corporations as the Corporation may designate, certain Health and Welfare plans, and such other similar plan or plans as the Corporation may from time to time place in effect, as follows:

     a)      a. Health Care Plan;

     b)      a Management Long Term Disability Plan;

     c)      a Union Long Term Disability Plan;

     d)      a Management Survivor Income Benefit Plan;

     e)      a Management Short Term Disability Plan;

2

f)    a Group Life Insurance Plan;

all of which are hereinafter collectively referred to as the "Health and Welfare Plan".

2.      To give effect to the Health and Welfare Plan it is necessary to establish a trust fund to be known as the "Health and Welfare Trust".

Now therefore in consideration of the premises and the mutual covenants herein contained the Corporation and the Trustee, hereby covenant and agree as follows:

ARTICLE I - DEFINITIONS

1.    The term "Trustee" shall mean the Trustee herein named its successors and assigns and shall include the person, legal entity or corporation to whom the Trustee may delegate such powers as are necessary for the sound and efficient administration of the Trust Fund.

2.    The term "Benefits" as used herein shall mean payment benefits as determined under the Health and Welfare Plan.

3.    The term "Eligibility Requirements" as used herein shall mean the rules, regulations and procedures established from time to time by the Corporation for determining the eligibility of Employees for Benefits.

4.    The term "Employees" shall mean those active and retired employees of the Corporation and.

3

designated affiliated or subsidiary corporations which have adopted the Health and Welfare Plan, including dependents as defined in Schedule A, on whose behalf contributions are or have been made to the Trust Fund and who are eligible for benefits under the Health and Welfare Plan.

5.    The term "Employer's Contribution" as used herein shall mean payments required to be made by the Corporation and by designated affiliated or subsidiary corporations to the Trust Fund to enable the Trustee to discharge the obligations arising under the Health and Welfare Plan.

6.    The term "Trust Fund" as used herein shall mean all of the assets of the "Health and Welfare Trust" including all funds received by way of contributions from the Corporation and those of its designated affiliated or subsidiary corporations in accordance with the provisions of the Health and Welfare Plan and of this Trust Agreement, and all employees' contributions together with all profits, increments, and earnings thereon.

ARTICLE II - TRUST FUND

1.    The Trust Fund is created for the purpose of providing the Health and Welfare Plan benefits for the benefit of the Employees.

2.    All payments made to the Trustee from time to time by the Corporation and designated affiliated or subsidiary corporations and by the employees, together with all profits, increments and

4

earnings thereon, shall be irrevocable and constitute upon receipt by the Trustee, the Trust Fund to be administered by the Trustee in accordance with the terms of this Trust Agreement, the Health and Welfare Benefit Plan and the Eligibility Requirements.

3.     The Trustee shall from time to time on the written directions of an officer of the Corporation so designated by its Board of Directors, or failing such designation, by the Secretary, of the Employees' Benefit Committee of the Corporation, or a Plan Administrator appointed by the Corporation, make payments out of the Fund to such persons, in such manner and in such amounts as may be specified in such directions to the Trustee.  In each instance, the written directions shall be deemed to include a certification to the Trustee that such directions and the payments to be made pursuant thereto are in accordance with the terms of the Health and Welfare Plan, which certification shall constitute full and complete protection to the Trustee in complying with such directions.

ARTICLE III - TRUSTEE

1.     The Trustee, who shall also be known as the "Trustee of the Health and Welfare Trust", hereby accepts the trust created by the Trust Agreement and agrees to hold, invest, distribute and administer the Trust Fund in accordance with the

5

terms and conditions of the Health and Welfare
Plan and this Trust Agreement.

2.    The Trustee is authorized and empowered:

a)  To sell or otherwise dispose of any property
    held by it; .

b)  To exercise all voting and other rights in
    respect of any stocks, bonds, properties or
    other investments held in the Trust Fund;

c)  To execute all documents of transfer and
    conveyance that may be necessary or
    appropriate to carry out the powers herein
    granted;

d)  To make payments out of the Trust Fund and to
    reimburse itself for disbursements incurred
    pursuant to the exercise of the authorities
    and powers herein set forth, unless paid by
    the Corporation;

e)  All monies, securities for money and other
    assets from time to time held by the Trustee
    may be in negotiable form or recorded or
    registered in the name of the Trustee or in
    the name of its nominee;

f)  When instructed to do so by the Corporation,
    to commence, maintain, defend, adjust and
    settle suits and legal proceedings and to
    represent the Trust Fund at any such suits or
    proceedings at law or otherwise for the
    enforcement or realization of any investment;

6

provided that the Trustee shall not be
obliged or required to do so unless it has
been first indemnified to its satisfaction
against all expenses and liabilities
sustained or anticipated by it, and the
Corporation hereby agrees so to indemnify the
Trustee.

g) In general, in the carrying out of its duties
and responsibilities under the Trust
Agreement to exercise the general powers
accorded by law to trustees.

h) The Trustee shall hold, invest and reinvest
the principal and income. The Trustee may
keep the investments of the Trust fund wholly
or partly, in its principal office or in any
one or more of its branches in any Province
of Canada. Unless otherwise directed by the
Corporation, the Trustee shall make only such
investments as comply with the limitations
and restrictions imposed by applicable
Federal and Provincial laws and regulations
respecting the investments of trust funds.

Notwithstanding the foregoing, the
Corporation may, at any time, or from time to
time, direct the Trustee as to specific or
general investment of the Trust Fund, and the
Trustee shall comply with such directions.

Whenever the Trustee is required or
authorized to take any action pursuant to the
provisions of this paragraph upon the
request, direction or authorization of the

7

Corporation, such request, direction or authorization shall be a sufficient protection to the Trustee if contained in a writing signed by any person authorized by resolution of the Corporation's Board of Directors to sign such a writing.  The Corporation will indemnify and hold harmless the Trustee of and from any liability or expense incurred by it arising out of any payment out of or disposition of the Trust Fund made by the Trustee pursuant to any such request, direction or authorization of the Corporation.

i) The Trustee may hold such part of the Trust Fund uninvested as the Trustee may deem advisable in the best interests of the Trust Fund for the proper administration thereof.

j) The Trustee may keep such portion of the Trust Fund, as may from time to time be deemed by it to be in the best interests of the Trust Fund, on deposit in a chartered bank or Government Savings Bank in Canada at such rate of interest, if any, as may be allowed thereon, or on demand deposit at an agreed interest rate with any Trust Company (including the Trustee) then licensed under the laws of Canada or of any Province thereof to carry on business as such.

k) Notwithstanding any other provision of this Agreement and subject to clause 2 (h) hereof, the Trustee will invest and reinvest all or such portion of the Trust Fund as the

8

Corporation may from time to time direct in
writing in the Northern Telecom Group Trust
Fund established by the Company and the
Trustee pursuant to an Agreement made and
entered into as of the 1st day of January,
1980.

1)  (i)  the Trustee shall, in accordance with
         the written direction of the Corporation
         from time to time invest all or any part
         of the Trust Fund jointly with assets
         belonging to any other trust funds
         maintained under a pension plan
         maintained with the Trustee by the
         Corporation or by any Corporation
         associated, subsidiary to or affiliated
         with the Corporation, and may jointly
         invest and reinvest on behalf of the
         Trust Fund and such other trust or
         trusts, allocating undivided shares or
         interests in such investments or
         reinvestments to the two or more trusts
         in accordance with their respective
         interests.  To facilitate the
         administration of such joint investments
         or reinvestments, the Trustee shall
         identify the undivided shares or
         interests by way of "units" which shall
         represent the undivided ownership
         interest of each participating trust
         fund in the jointly owned investments;

    (ii) the Trustee shall invest and reinvest
         all or any portion of the Trust Fund in
         accordance with the written direction of

9

the Company in any "Pooled Fund" which
phrase shall mean in this Agreement any
pooled trust fund maintained by the the
Trustee or one of its associated or
affiliated Corporations licensed to do
business in Canada as a Trustee. Such
written direction shall specify that
such portion of the Trust Fund to be
invested in such Pooled Fund shall be
invested as part of one particular
section of the Pooled Fund or as parts
of two or more sections of the Pooled
Fund in such proportions as is set out
in such direction, failing which
specification the same shall be invested
as part of one particular section of the
Pooled Fund in such proportion as the
Trustee deems advisable.

m)  The Trustee may, with the consent of the
Corporation, borrow money in such amounts and
upon such terms and conditions as it shall
deem advisable and pledge any securities or
other property for the repayment of any such
loan.

n)  The expenses incurred by the Trustee in the
performance of its duties, and such
compensation to the Trustee as may be agreed
upon in writing from time to time between the
Corporation and the Trustee, shall be paid by
the Corporation. All taxes of any and all
kinds whatsoever that may be levied upon or
in respect of the Trust Fund shall be paid

10

from or be the responsibili'y of the Trust Fund.

o)  The Trustee shall not be liable for the making, retention, or sale, in good faith, of any investment or reinvestment made by it as herein provided, nor for any loss to or diminution of the Trust Fund, except due to the negligence, wilful misconduct or lack of good faith of the Trustee, its servants, agents or employees.

p)  The Trustee shall keep accurate and detailed accounts of all investments and transactions made by it pursuant to this Agreement and shall keep separate records for each of the separate Plans. The accounts and records relating thereto shall be open to inspection at all reasonable times by any person designated by the Corporation. Within ninety (90) days following the close of each fiscal year of the Trust Fund, or within ninety (90) days after the removal or resignation of the Trustee as provided for in paragraph (q) hereof, the Trustee shall file with the Corporation a statement setting forth all investments and cash transactions effected by it during such fiscal year or during the period from the close of the last fiscal year to the date of such removal or resignation. Upon the expiration of ninety (90) days after the date of filing such annual or other statement, but subject to the provisions of paragraph (o) hereof, the Trustee shall be released and discharged from all liability

11

and accountability to anyone with respect to its acts and transactions during the period covered by the statement.  The Trustee shall from time to time make such reports and furnish such information concerning the trust to the Corporation as the Corporation may in writing request.

q) The Trustee may be removed by the Corporation at any time upon ninety (90) days notice in writing to the Trustee.  The Trustee may resign at any time upon ninety (90) days notice in writing to the Corporation.  Upon such removal or resignation of the Trustee, the Corporation shall, within said ninety (90) day period, appoint a successor trustee or trustees who shall have the same powers and duties as those conferred upon the Trustee hereunder and, upon acceptance of such appointment by the successor trustee or trustees, the Trustee shall assign, transfer and pay over to such successor trustee or trustees the funds and properties and accounts then constituting the Trust Fund. The Trustee is authorized however, to reserve such sum of money, as may at such time be reasonably owing to it for payment of its fees and expenses and any balance of such reserve remaining after the payment of such fees and expenses shall be paid over to the successor trustee or trustees within thirty (30) days after the date of such removal or resignation.

r) The Trustee shall not be bound to act in

12

accordance with any direction or request of
the Corporation or of its Board of Directors
until a duly authenticated copy of the
instrument or resolution containing such
direction or request shall have been
delivered to the Trustee, and the Trustee
shall be empowered to act upon and shall be
fully protected by the Corporation in acting
in accordance with any direction or request
of the Corporation upon receipt of any such
copy purporting to be authenticated and
believed by the Trustee to be genuine. Any
direction, request, certificate or other
instrument to be made or given by the
Corporation under any of the provisions
hereof shall, unless otherwise provided
herein, be deemed sufficiently authenticated
if certified by the Secretary or an Assistant
Secretary of the Corporation.

s)  The Trustee may appoint a qualified person,
firm or corporation to act as administrator
of the Trust Fund to determine on a sound
actuarial basis the amounts of Employer's
contributions required in order to fund
adequately the Health and Welfare Plan and to
advise and carry out administrative pro-
cedures in accordance with the Health and
Welfare Plan and the Eligibility
Requirements.

## ARTICLE IV - EMPLOYER's CONTRIBUTIONS

1.  The Corporation and its designated affiliated or
subsidiary corporations agree to make Employer's

13

contributions to the Trust Fund in amounts suf-
ficient to pay any claims which may be asserted
against the Trust Fund as a result of the
administration of the Health and Welfare Plan,
and as may otherwise be required from time to
time by the Trust for the purposes of the Health
and Welfare Plan, as determined by the Trustee on
a sound actuarial basis.

2.   The Trustee shall determine or cause to be
determined, on a sound actuarial basis from time
to time, and in any event, once every calendar
year, the level of contributions to the Trust
Fund necessary to fund adequately the Health and
Welfare Plan.

3.   Subject to paragraphs (1) and (2) hereof, the
Corporation and its designated affiliated or
subsidiary corporations shall be responsible for
the adequacy of the Trust Fund to meet and
discharge any and all payments and liabilities
under the Health and Welfare Plan.

ARTICLE V - NOTICES

1.   Any notice provided for herein to be given by one
party to another shall be in writing and shall be
effectively given if delivered personally or by
telegram or prepaid registered mail addressed to
the Trustee at:

          Montreal Trust Company
          Pension Trust Administration
          Place Ville Marie
          Montreal, Quebec  H3B 3L6

14

and if to the Corporation at:

    Northern Telecom Limited
    Box 458, Station A
    Mississauga, Ontario  L5A 3A2

    Attention:  Director, Corporate Compensations


Any notice so given shall be deemed to have been given if delivered personally or given by prepaid registered mail on the third business day immediately following the date of mailing of such notice.


## ARTICLE VI - AMENDMENT AND TERMINATION

1.    This Trust Agreement may be amended in any respect from time to time by mutual agreement of the Corporation and the Trustee except that no amendment shall divert the Trust Fund or any part thereof as constituted immediately prior to such amendment to a purpose other than the provision of Benefits as herein defined.

2.    Upon sixty (60) days prior written notice to the Trustee, the Corporation may terminate its obligation to make Employer's contributions in respect of benefits after the date of written notice to the Trustee (hereinafter called the "Notice of Termination").  Upon receipt of the Notice of Termination the Trustee shall within one hundred twenty (120) days determine and satisfy all expenses, claims and obligations arising under the terms of the Trust Agreement and Health and Welfare Plan up to the date of the Notice of Termination.  The Trustee shall also

15

determine upon a sound actuarial basis, the amount of money necessary to pay and satisfy all future benefits and claims to be made under the Plan in respect to benefits and claims up to the date of the Notice of Termination. The Corporation and the designated affiliated or subsidiary corporations shall be responsible to pay to the Trustee sufficient funds to satisfy all such expenses, claims and obligations, and such future benefits and claims. The final accounts of the Trustee shall be examined and the correctness thereof ascertained and certified by the auditors appointed by the Trustee. Any funds remaining in the Trust Fund after the satisfaction of all expenses, claims and obligations and future benefits and claims, arising under the terms of the Trust Agreement and the Health and Welfare Plan shall revert to the Corporation.

## ARTICLE VII - GOVERNING LAW AND SEVERABILITY

1.  This Trust Agreement and all amendments thereto shall be administered, construed and enforced in accordance with the laws of the Province of Ontario.

2.  If any provision of this Trust Agreement, the Health and Welfare Plan, the Eligibility Requirements or the rules and regulations made pursuant thereto, or any action taken in the administration of the funds of the Trust Fund or the Health and Welfare Plan are held to be illegal or invalid for any reason, such illegality or invalidity shall not affect the remaining portions of this Trust Agreement, the

16

Health and Welfare Plan, the Eligibility Requirements, or the rules and regulations made pursuant thereto unless such illegality or invalidity prevents accomplishment of the purposes of the trust hereby created. In the event of any such holding, the parties will immediately commence negotiations to remedy any such defect.

## ARTICLE VIII - CLAIMS BY BENEFICIARIES

1.   No person entitled to benefits under the Plan shall have any claim against the Trustee or the Trust fund except by or through the Corporation, and the Corporation shall indemnify and save the Trustee harmless from any such claim including the costs of defense.

## ARTICLE IX - MISCELLANEOUS

1.   Wherever in this Agreement the word "Corporation" is used, it shall be deemed to mean and shall include the Corporation's successor and any other Corporation with which the Corporation may have amalgamated, whether under its present name or any other name.

To the extent required by any Federal or Provincial law or regulation that are or might be promulgated from time to time, the Corporation shall be the administrator of the Plan and the duties of the Corporation as such administrator hereby are delegated to the Trustee to the extent provided in this Agreement.

17

A copy of the Health and Welfare Plan initialled by the Parties may be annexed to this Agreement and may be amended from time to time and when so annexed shall form part hereof, but no terms or provisions of this Agreement shall be construed or interpreted as imposing upon the Trustee any obligation to see to the administration of or the carrying out of any of the terms or provisions of the Plan.

Any corporation resulting from any merger or consolidation to which the Trustee may be a party or succeeding to the trust business of the Trustee, or to which substantially all the trust assets of the Trustee may be transferred while the Trustee continues to act as Trustee hereunder shall be the successor to the Trustee hereunder without any further act or formality with like effect as if such successor trustee had origin-ally been named trustee herein.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereto duly authorized and their corporate seals to be hereunto affixed and attested as of this 1st day of January, 1980.

NORTHERN TELECOM, LIMITED

Per: _____
     Vice President

Per: _____
     Secretary

MONTREAL TRUST COMPANY

Per: _____
     W. H. WHITELOCK, SENIOR CONSULTANT, HEAD OFFICE PENSION SERVICE

Per: _____

APPENDIX E

NORTHERN TELECOM – QUEBEC BLUE CROSS ASO

## ADMINISTRATIVE SERVICES AGREEMENT

AGREEMENT to be effective 1st day of January, 1981.

BETWEEN

>COMPAGNIE MONTREAL TRUST, a company duly in-corporated under the laws of the Province of Quebec, having its head office in the City of Montreal, Quebec,

>hereinafter referred to as the "Trustee"

AND

>NORTHERN TELECOM CANADA LIMITÉE, a corporation duly organized and existing under the laws of the Province of Ontario, having its head office at 304 The East Mall, Islington, Ontario,

>hereinafter referred to as "Northern Telecom"

AND

>ASSOCIATION D'HOSPITALISATION DU QUÉBEC, a company duly incorporated under the laws of the Province of Quebec, having its head office in the City of Montreal, Quebec,

>hereinafter referred to as the "Administrator"

WHEREAS the Trustee herein did enter into an Agreement made as of the 1st day of January, 1980 with Northern Telecom Limited in respect of, inter alia, an Extended Health Care Plan and Dental Plan for certain employees of Northern Telecom Canada Limitée (the "employees") (herein-after referred to as the "Trust Agreement") and providing for the establishment of a trust to be administered by the Trustee.

AND WHEREAS the Trust Agreement provides for the ap-pointment by the Trustee acting on behalf of the employees of an Administrator for the carrying out of the normal administration of the terms of the Trust Agreement and the parties hereto wish to enter into this Agreement pursuant to such provision.

- 2 -

NOW THEREFORE THE PARTIES HERETO MUTUALLY COVENANT AND AGREE AS FOLLOWS:

1.   <u>Definitions</u>

In this Agreement:

(1)  "Claims" means all benefits payable in respect of the Extended Health Care Plan and Dental Plan pursuant to the Trust Agreement.

(2)  "Claims paid" means all amounts paid by the Administrator in respect of the Extended Health Care Plan and Dental Plan during the term of this Agreement as benefits pursuant to the Trust Agreement.

2.   <u>Term</u>

This Agreement shall be for a term of one year commencing as of January 1, 1981, and shall continue from year to year thereafter unless and until terminated as herein provided.

3.   <u>Termination</u>

This Agreement may be terminated as of January 1, 1982 or any time thereafter by either the Trustee or the Administrator upon sixty (60) days prior written notice to the other party.

Upon termination of this Agreement:

(1)  Northern Telecom shall reimburse the Administrator for all amounts payable for services rendered as herein provided under Article 4 up to the termination date, and shall be entitled to credits, if any.

(2)  All funds transferred to the Administrator pursuant to this Agreement and remaining to the Trustee's account including any accrued interest from date of termination, shall be repaid forthwith by the Administrator to the Trustee.

(3)  The Administrator shall surrender and deliver to the Trustee all claims history cards, records, files, accounts and other documents maintained by the Administrator pursuant to the Agreement, all of which documents maintained by the Administrator in carrying out its administrative services herein shall be the property of the Trustee.

- 3 -

4.  <u>Administrative Services</u>

(1)  The Administrator shall provide the following basic administrative services:

(a)  receive and examine all Claims;

(b)  verify the eligibility of Claims in accordance with the master list provided to the Administrator and as updated monthly by Northern Telecom;

(c)  determine that the amount of each Claim is in accordance with the provisions of the Extended Health Care Plan and/or Dental Plan;

(d)  remit payment of allowed Claims to or on behalf of the claimant;

(e)  maintain appropriate records of all Claims received and all payments made and keep proper books of account;

(f)  provide to Northern Telecom a Monthly Claims Report in respect of each month during the term of this Agreement, which Report shall include the aggregate of Claims paid, the number of Claims paid and administration fees payable in respect of each such month, as well as the aggregate of Claims paid and expenses for the current calendar year;

(g)  upon request by the Trustee provide

(i)    periodic claims analysis

(ii)   claim control information

(iii)  claim accounting

(iv)   claim forms

(v)    benefit pricing

(vi)   cost analysis, including projections for future periods and estimates of outstanding liabilities

(vii)  advice on plan design trends;

(2)  The Administrator shall not be obliged to provide to the Trustee bank statements and reconciliations in respect of any Claims paid or otherwise.  The Trustee shall have the right, at its expense, to have an audit carried out in respect of the banking arrangements and bank statements and supporting documentation as they relate to Claims paid by the Administrator and other financial transactions related to the carrying out by the Administrator of its services required to be performed herein.

- 4 -

(3) In addition, the Administrator shall provide such other services related to the administration of the Trust Agreement as may be agreed upon from time to time by the Trustee and the Administrator.

(4) On reasonable notice the Administrator shall make available to the Trustee or its agent during regular business hours, for the purposes of inspection and copying, all Claims records, files, accounts and other documents relating to the administration of the Trust Agreement.

5. Administration Fees

(1) Northern Telecom shall pay on behalf of employees, to the Administrator for all services set forth in Article 4(1) 7.5% of the net cost of the Trust Agreement (i.e. total claims paid and administration fees) during the term of this Agreement, to be paid on a monthly basis as provided in Article 7.

(2) Northern Telecom shall pay on behalf of employees, to the Administrator for the services set forth in Article 4(3) such fees as may be agreed upon from time to time by Northern Telecom and the Administrator.

6. Funding

(1) Upon execution of this Agreement, the Trustee shall effect a transfer of funds from the account of the trust fund to the Administrator of an amount equal to the estimate of Claims to be paid by the Administrator during the month of January 1981 and such further sum as may be agreed to between the Trustee and the Administrator. Thereafter, the Trustee shall effect a transfer of funds to the Administrator on a monthly basis in an amount equal to the aggregate of Claims paid by the Administrator during the previous month as shown on the Monthly Claims Report to be provided by the Administrator to the Trustee. The Administrator will pay from such funds transferred all Claims approved by it in accordance with the terms of this Agreement and the Trust Agreement.

(2) No interest shall be paid to the Trustee or Northern Telecom or charged by the Administrator under this Agreement except as provided for under Article 3.

- 5 -

7.    Payment of Administration Fees

(1)    Upon execution of this Agreement, Northern Telecom
shall effect a payment to the Administrator on
behalf of employees of an amount equal to the
administration fees on the estimate of Claims to
be paid by the Administrator during the month of
January 1981 and on such further sum as may be
agreed to between the Trustee and the Adminis-
trator, as referred to in Article 6.

(2)    The Administrator shall submit to Northern Telecom
within thirty (30) days after the end of each
calendar month during the term of this Agreement
an invoice for the administration fees payable in
respect of the previous month together with the
Monthly Claims Report for such month as required
under Article 4(1)(f).  Northern Telecom shall pay
such invoice on behalf of employees within thirty
(30) days of receipt thereof.

8.    Indemnity

The Administrator shall reimburse, indemnify and save
harmless the Trustee on behalf of employees for any
loss to or diminution of the funds administered by it
hereunder arising from or due to the default, willful
misconduct, lack of good faith or negligence of the
Administrator, its employees, agents or servants.

9.    Amendments to Trust Agreement

The Trustee shall give the Administrator reasonable
notice of relevant amendments to the Trust Agreement
affecting the performance of this Agreement.

10.    Interpretation

Any reasonable interpretation of this Agreement and the
Trust Agreement made by the Administrator in good faith
and not contrary to specific instructions of the
Trustee shall be binding upon the Trustee acting on
behalf of employees.

11.    Special Instructions

Notwithstanding any other provision of this Agreement
and prior to the payment of any Claim hereunder, the
Trustee may instruct the Administrator in writing of
the amount of the Claim to be paid.  Such amount shall
not exceed the maximum amount payable under the Trust
Agreement for such Claim.

- 6 -

12.   Trustee's Records

The Trustee shall furnish to the Administrator such
records and any other information as the Administrator
may reasonably require to perform its services here-
under, subject always to the Trustee's right to refuse
disclosure for reasons of confidentiality.

13.   Notices

Any and all notices or other information to be given by
one of the parties to the other shall be deemed suffi-
ciently given when forwarded by prepaid registered or
certified first class air mail or by cable, telegram,
telex, TWX or hand delivery to the other party at the
following address:

If to the Trustee            Compagnie Montreal Trust
                             Pension Trust
                             Administration
                             Place Ville Marie
                             Montreal, Quebec
                             H3B 3L6

If to the Administrator      Association D'Hospitalisation
                             Du Québec
                             550 Sherbrooke Street West
                             Montreal, Quebec   H3A 1B9

If to Northern Telecom       Northern Telecom Canada
                             Limitée
                             304 The East Mall
                             Islington, Ontario   M9B 6E4

                             Attention:  Director,
                                         Indirect Compensation

and such notices shall be deemed to have been received
fifteen (15) business days after mailing, if forwarded
by mail, and the following business day if forwarded by
cable, telegram, telex, TWX or hand.

The aforementioned addresses of the parties may be
changed at any time by giving fifteen (15) days prior
notice to the other parties in accordance with the
foregoing.

In the event of a generally-prevailing labour dispute
or other situation which will delay or impede the giv-
ing of notice by any such means, the notice shall be
given by such specified mode as will be most reliable
and expeditious and least affected by such dispute or
situation.

- 7 -

### 14. Non Waiver

The failure by any party at any time to enforce any of the provisions of this Agreement shall not be construed to be a waiver of such provision or of the right of any party thereafter to enforce such provision.

### 15. Entirety

This Agreement embodies the entire agreement between the parties with respect to the subject matter thereof, and there are no promises, terms, conditions or obligations, oral or written, expressed or implied, other than those contained herein. All prior agreements and understandings related to the subject matter of this Agreement are hereby cancelled except as otherwise provided herein. This Agreement may not be varied, amended or supplemented except by written instrument signed by all parties.

### 16. Governing-Law

This Agreement and all questions pertaining to its validity, construction and administration shall be determined in accordance with the laws of the Province of Quebec.

### 17. Language Clause

The Parties hereto confirm that it is their wish that this Agreement, as well as all other documents relating thereto, including notices, have been and shall be in English only. Les parties aux présentes, confirment leur volonté que cette convention de même que tous les documents, y compris tous avis, s'y rattachant, soient rédigés en anglais seulement.

- 8 -

IN WITNESS WHEREOF the parties have caused this Agreement to be executed by their duly authorized officers.

COMPAGNIE MONTREAL TRUST          NORTHERN TELECOM CANADA LIMITÉE

Per _____          Per _____
W. H. WHITELOCK, SENIOR CONSULTANT, HEAD OFFICE PENSION SERVICES

Per _____          Per _____

LEGAL DEPT.

APPROVED
23-12-80
DATE

ASSOCIATION D'HOSPITALISATION DU QUÉBEC

Per _____

Per _____

 **northern telecom**

Northern Telecom
Limited

Tel. (416) 275-0960
TWX 610-492-4388

P.O. Box 458, Station A
Mississauga, Ontario
L5A 3A2

December 22, 1980

Quebec Hospital Service Association
550 Sherbrooke Street West,
Montreal, Quebec.

Dear Sirs;

In consideration of Quebec Hospital Service Association ("QBC") having entered into an agreement with Montreal Trust Company (the "Trustee") and Northern Telecom Canada Limited ("NTC") made as of the first day of January, 1981 (the "Agreement"), NTC hereby agrees to indemnify and hold harmless and pay in QBC's stead and to its complete exoneration the amount of any premium tax together with interest and penalties if any, which QBC could be obliged to pay in respect of any amounts payable or paid to QBC or transferred to its account by NTC or the Trustee pursuant to the Agreement, should such amounts be construed as a premium as defined in Section 1166 B of the Taxation Act (Quebec).

The words "premium tax" as used herein shall refer to the capital tax of 2% on premiums payable to insurance corporations under Section 1167 of the Taxation Act (Quebec) or any such tax payable under any amending or successor legislation.

In the event QBC is assessed any premium tax in respect of any amounts payable or paid to it under the Agreement, NTC shall have the right, at its expense, to contest such assessment for and in the name of QBC, provided that QBC shall be fully indemnified by NTC for all costs and expenses incurred by it arising out of such contestation.

Yours Very Truly,

NORTHERN TELECOM CANADA LIMITED

per: _____

per: _____

LEGAL DEPT.

APPROVED
23.12.80
DATE

33 City Centre Drive, Mississauga, Ontario  L5B 2N5

APPENDIX F

APPENDIX A

to the

TRUST AGREEMENT

Between:

NORTHERN TELECOM LIMITED

and

MONTREAL TRUST COMPANY

## 1. Scope of Appendix

This Appendix sets forth the rules and regulations governing the following Health and Welfare Benefits (hereinafter collectively called "the Plan"):

(a) Survivor Income Benefit (SIB)
(b) Comprehensive Health Care Benefit (CHC)
(c) Long Term Disability Benefit (LTD).

The Plan applies to those employees of Northern Telecom Limited and its subsidiaries whose benefits are not negotiated under a Collective Labour Agreement.

## 2. Definitions:   In this Plan,

(a) "Administrator" means The Mutual Life of Canada or such other person or corporation as may be duly appointed as Administrator under the terms of the Trust Agreement;

(b) "Corporation" and "Company" mean Northern Telecom Limited and those of its subsidiaries and affiliates to which the Plan applies;

(c) "Plan" means Survivor Income Benefit (SIB), Comprehensive Health Care Benefit (CHC) and Long Term Disability Benefit (LTD) and such other Health and Welfare Benefits as the Corporation may introduce pursuant to the Trust Agreement;

(d) "effective date" means January 1, 1980 and as specifically noted thereafter.

(e) "employee" means a permanent full-time employee of the Corporation as designated in (1) above.

(f) "basic monthly salary" means the monthly rate of the regular remuneration paid to the employee by the Corporation at the time of death or commencement of total disability, excluding cost of living (COLA) and other allowances where applicable, bonuses and overtime;

(g) "basic annual salary" means the annual rate of the regular remuneration paid to the employee by the Corporation at the time of death or commencement of total disability, excluding cost of living (COLA) and other allowances where applicable, bonuses and overtime;

-1-

(h) "eligible dependents" shall have the meaning defined in each individual benefit.

(i) any reference to the male gender shall also refer to the female gender, as appropriate.

3. Participation in the Plan

(a) An employee and any eligible dependents will automatically participate in the CHC benefit on the first of the month following the month that the employee commences employment with the Company, unless the benefit is deliberately waived by the employee due to spousal coverage.

(b) An employee will automatically participate in the LTD benefit on the date that the employee completes three months of continuous employment with the Company.

(c) An employee may apply to participate in the SIB on the later of:

    (i) the date that the employee commences employment with the Company if the employee has eligible dependents on that date, or

    (ii) the date that the employee acquires eligible dependents.

Application to participate shall be made on forms prescribed by the Corporation within 31 days of the above dates.

If application is made later than 31 days, the employee must submit, without expense to the Administrator or the Corporation evidence of good health satisfactory to the Administrator. The SIB will be effective on the date of the approval of the application.

4. Continuation of Participation

(a) Except as provided below, an employee (and eligible dependents where applicable) will continue to participate in this Plan until the employee's employment with the Corporation is terminated.

(b) An employee (and eligible dependents where applicable) will continue to participate in this Plan while the employee is in receipt of Sickness & Accident or LTD benefits under any plan provided by the Corporation. Improvements introduced after commencement of LTD benefits will not apply.

(c) An employee (and eligible dependents where applicable) may be allowed to continue to participate in this Plan for all benefits except LTD while the employee is on a temporary leave of absence, if such leave is approved by the Corporation and provided applicable premiums are paid.

(d) An employee (and eligible dependents where applicable) will continue to participate in the CHC benefit until the end of the month in which the employee's employment is terminated.

(e) Dependents of a deceased employee will continue to participate in the CHC benefit until the end of the month in which the employee has died, and thereafter for as long as their dependency under the Plan exists, provided they pay the applicable premiums.

-2-

5. Currency

Payment for benefits under this plan will be made in lawful money of Canada.

6. Payment of Claims

(a) Where payments for benefits are payable to a person who, in the opinion of the Administrator, is incapable of managing his or her own affairs due to physical or mental disability, payment of benefits when permitted by law, not in excess of such amount as may be prescribed by law, may be made to any person appearing on evidence satisfactory to the Administrator, to be equitably entitled thereto by reason of having incurred expenses for the maintenance, care or treatment of the employee or dependent.

(b) Any action or proceedings for the recovery of any benefit pursuant to the Plan shall be commenced not earlier than 60 days after, and not later than one year after, the date on which proof of claim is received by the Administrator.

(c) The Administrator reserves the right to disallow any claim or claims where in the opinion of the Administrator such claims are not accompanied by the necessary receipts, invoices, statements or other forms, documents or proof satisfactory to the Administrator.

## I SURVIVOR INCOME BENEFIT (SIB)

1. Definitions

In this benefit,

(a) "spouse" means,

    (i) the person who is legally married to the employee, or

    (ii) the person of the opposite sex of the employee who, at the time the right to claim a benefit arises, is cohabiting with the employee, and has been so cohabiting either,

        (a) for 36 consecutive months immediately prior thereto in the event marriage is prohibited by law, or

        (b) for 12 consecutive months immediately prior thereto in the event marriage is not so prohibited, and

        (c) in both situations the co-habitant is publicly represented as the husband or wife of the employee.

(b) "eligible dependents" means the spouse of the employee, and

    (i) any unmarried, natural or legally adopted children of the employee who are financially dependent on the employee or spouse; and are

-3-

Date of issue:  1982 11 19

(a) under the age of 18 years, or

(b) under the age of 25 years and in full-time attendance at an accredited school, college or university, or

(c) physically or mentally incapable of self-support an' became so before reaching the age of 21 years.

(ii) for the purposes of the SIB children include,

(a) any children of the employee born posthumously within 301 days after the death of the employee, and

(b) any children in the process of being adopted at the time of the employee's death, if such adoption is completed within one year after the date of the employee's death.

(c) "occupational accident" means a fortuitous event causing injury or illness to the employee and occurring while the employee is carrying out his duties.

2. Calculation of Amount of Benefit

(a) Spouse Benefit: On the death of an employee an eligible
*correction  dependent who is a spouse shall be entitled to a monthly payment of an amount calculated in accordance with the following formula:

(i) 50% of either the employee's basic annual salary, or, the Yearly Maximum Pensionable Earnings in effect as defined and calculated under the Canada/Quebec Pension Plan at the date of death, whichever is the lesser, divided by 12, and

(ii) 25% of the employee's basic annual salary in excess of the Yearly Maximum Pensionable Earnings in effect as defined and calculated under the Canada/Quebec Pension Plan at the date of death, divided by 12.

In addition to any other benefit, where the death of the employee results from an occupational accident, the spouse shall be entitled to a lump sum payment equal to the employee's basic annual salary.

(b) Child Benefit: On the death of an employee, an eligible dependent who is a child shall be entitled to:

(i) a monthly payment of an amount equal to 10% of the employee's basic monthly salary, payable for each dependent child, to a maximum of two children. If the employee dies leaving dependent children but not leaving a spouse, the amount of the Child Benefit will be 20% of the employee's basic monthly salary payable for each dependent child, to a maximum of two children.

Revised 1983 04 15

-4-

(c) Reduction:   The SIB will be reduced by the amount of the Survivor's Pension, including benefits for the two youngest dependent children under 18 years of age, to which the spouse is entitled as defined and calculated under the Canada/Quebec Pension Plan.

Increases in the Survivor's Pension subsequent to the death of the employee including benefits for the two youngest children under 18 years of age, payable under the Canada/Quebec Pension Plan shall not further reduce the amount of the monthly benefit.

*New   Effective January 1, 1983, eligible employees in the province of Quebec only, who continue working beyond the age of 65 and subsequently die while in active employment, shall have their SIB reduced by the equivalent amount of the Spousal Pension under the Managerial and Non-Negotiated Pension Plan.

In no event shall the SIB payable be less than an amount equal to 25% of the employee's basic monthly salary.

3. Payment of SIB

(a) On the death of an employee the Administrator shall pay:

   (i) to the spouse, the amount of the Spouse Benefit as calculated, commencing on the first of the month following the date of death of the employee and continuing monthly thereafter until the death of the spouse;

   (ii) to the dependent children, or if the children are under the age of majority, then as permitted or required by law, either to the parent or guardian of such children, or to the Executor of the Last Will of the employee, or to a Court of competent jurisdiction, the amount of the Child Benefit as calculated, commencing on the first of the month following the date of death of the employee, and continuing monthly thereafter until the child is no longer an eligible dependent.

4. Health Care Benefits during SIB

There shall be provided to the eligible dependent(s) for a period of 60 consecutive months following the death of an employee, Company-paid provincial health insurance coverage, in provinces where premiums apply.  Provision shall also be made for the eligible dependent(s) to participate in the Comprehensive Health Care plan, at their option and at their own expense, for as long as the SIB is being paid.

5. Guaranteed Period of Payment

(a) Where the spouse, while in receipt of payments under the SIB dies within 60 months after the date of death of the employee, then as permitted or required by law the Spouse Benefit as calculated shall be paid either to the dependent children, if any, or if the dependent children are not of the age of majority, to the guardian of such children, or to the Executor of the Last Will of the employee, or to a Court of competent jurisdiction, for a period not to exceed 60 months after the date of death of the employee.

(b) If there are no dependent children then the Spouse Benefit as calculated shall be paid monthly to the estate of the deceased spouse for a period not to exceed 60 months from the date of death of the employee.

-5-

Revised 1983 04 15

6. Proof of Claim

(a) A claim for SIB shall be made in writing to the Administrator within three months after the date of death of the employee or spouse as the case may be, and shall be accompanied by such proof of death, eligibility and entitlement as the Administrator may deem necessary.

(b) The Administrator shall require the person claiming this SIB to submit proof that:

   (i) an application for Survivor's Pension and child benefits if applicable has been made pursuant to the Canada/Quebec Pension Plan, and

   (ii) a determination has been made under that Plan, and

   (iii) the amount of the Survivor's Pension and other benefits which are payable under that Plan, or that application has been rejected, and the reasons therefor.

If such proof is not submitted, the Administrator may reduce the monthly SIB payable to any eligible dependents by the amount which the Administrator deems would have been payable to the spouse as a Survivor's Pension and, if applicable, to the two youngest dependent children who are under 18 years of age.

## II LONG TERM DISABILITY BENEFIT (LTD)

1. Definitions

In this benefit,

(a) "qualifying period" is a period of time during which 52 weeks of Sickness and Accident Benefits were paid to the employee;

(b) "total disability" means that, as a result of illness or injury to an employee he is unable during the qualifying period and during the 12 month period immediately following to perform the regular duties of the occupation he was performing at the beginning of the disabling sickness or injury;

Following expiry of the 12 month period above, he is thereafter unable to perform for profit or remuneration the duties of any occupation, either within or outside the Corporation, for which he has the appropriate education, training and experience.

In determining total disability the availability of any occupation will not be considered.

Effective July 1, 1982, notwithstanding the above definition, if it is confirmed that he is eligible for disability benefits under the Canada/Quebec Pension Plan, he will then also be eligible for the LTD benefit.

-6-

Date of issue:  1982 11 19

(c) "totally disabled" shall have a corresponding meaning to "total disability".

2. Calculation of Amount of Benefit

(a) Basic Benefit

Subject to (b) hereof, an employee who is totally disabled shall be paid a monthly amount equal to 60% of his basic monthly salary.

(b) Integration of Benefits

The amount of the LTD benefit shall be reduced by the amount that the sum of the employee's LTD benefit and any government disability benefits payable to the employee in respect of the same disability, exceed 90% of the employee's basic monthly salary (plus COLA where applicable).

For these purposes, "government disability benefits" include those received under the Canada/Quebec Pension Plan Disability Benefit, Workers' Compensation, Government Automobile Insurance Income, and any other government plans.

"Government disability benefits" do not include disability benefits payable under the Canada/Quebec Pension Plan for or on behalf of dependent children as defined thereunder, nor benefits payable under any individual disability income insurance policy, or a disability endorsement under an individual life insurance policy.

(c) Subsequent Indexed Increases

Subsequent to the commencement of the total disability, increases in the government disability benefits, caused by the pension index provisions thereof, will not further reduce the amount of the LTD benefit.

(d) Approved Rehabilitation Program

The amount of this LTD benefit shall be reduced by the amount that the sum of the employee's LTD benefit, and any remuneration from a Company approved rehabilitation program exceeds 75% of the employee's basic monthly salary (plus COLA where applicable).

3. Payment of LTD Benefit

On the total disability of an employee the Administrator shall pay that employee the LTD benefit as calculated pursuant to paragraph 2 hereof, commencing immediately following the qualifying period and continuing monthly until the termination of the LTD Benefits pursuant hereto.

-7-

4.  Termination of Benefits

LTD Benefit payments to the employee shall cease on the earliest of the date that:

(a) the employee ceases to be totally disabled, or

(b) the employee fails to submit proof of the continuance of total disability as required by the Administrator, or

(c) the employee fails to submit, upon request by the Administrator, to a medical examination by a medical examiner appointed by the Administrator, or

(d) the employee refuses to participate in a rehabilitation program approved by the attending physician, the Company's physician and the Administrator, or

(e) the employee engages in any occupation for remuneration or profit or any educational program other than in a rehabilitation program approved by the attending physician, the Company's physician and the Administrator, or

(f) the employee attains the age of 65 years, or

(g) the employee dies.

5.  Recurrence of Disability

If, following receipt of LTD Benefits hereunder, an employee ceases to be totally disabled, but within 60 calendar days is again totally disabled by reason of the same or related causes, such disability will be considered to be a continuation of the original disability.

6.  Proof of Claim

(a) A claim for LTD Benefits shall be made in a form satisfactory to the Administrator within three months after the expiration of the qualifying period, and shall be accompanied by such medical and other evidence of total disability that the Administrator may require.

From time to time the Administrator may require from the employee:

(i) proof in form satisfactory to the Administrator of the continuance of the total disability;

(ii) a medical examination of the employee by a physician or other qualified medical examiner appointed by the Administrator;

(iii) proof of age of the employee.

-8-

(b) The Administrator shall require the employee to submit proof that the employee has submitted under the Canada/Quebec Pension Plan,

   (i) an application for disability benefits, and

   (ii) that a determination of benefits has been made under that Plan, and

   (iii) the amount of the benefits which are payable thereunder, or that the application has been rejected, and the reasons therefor.

If the employee does not submit such proof, the Administrator may reduce the LTD Benefit payable to the employee by the amount that the Administrator deems would have been payable to the employee pursuant to the Canada/Quebec Pension Plan.

## 7. Limitations

The LTD Benefit is not payable in respect of a disability resulting from one or more of the following:

(a) intentionally self-inflicted injuries or illness, whether sane or insane;

(b) any condition for which the employee is not under active treatment by and co-operating with a physician or surgeon duly licensed to practise medicine;

(c) committing or attempting to commit an assault or crime;

(d) insurrection, strike, riot, civil disorder or war, if the employee is actually participating therein, and whether or not war be declared;

(e) alcoholism or drug addiction, unless

   (i) resulting in permanent physical or mental impairments that cannot be treated, or

   (ii) the employee is undergoing a course of treatment which is acceptable to the Company's Medical Director;

(f) pregnancy, unless due to severe complications;

(g) military service in any country.

-9-

## III COMPREHENSIVE HEALTH CARE BENEFIT (CHC)

1. Definitions

In this benefit,

(a) "spouse" means the person who is legally married to the employee, or a person of the opposite sex who is cohabiting with the employee and who is publicly represented as the spouse of the employee;

(b) "eligible dependents" means the spouse of the employee and any unmarried natural or legally adopted children of the employee or spouse who are financially dependent on the employee or spouse, and

   (i) are under the age of 21 years, or

   (ii) are under the age of 25 years and in full time attendance at an accredited school, college or university, or

   (iii) are physically or mentally incapable of self-support and became so before reaching the age of 21 years;

(c) "reasonable and customary charges" means charges which are usually made for the item of expense listed under Eligible Expenses, in the absence of coverage, but does not include any charges which are in excess of,

   (i) the prevailing fee guide, for services provided by general practitioners, of the provincial Dental Association in the province in which the expense is incurred, in the case of services rendered by a dentist;

   (ii) the prevailing fee guide of the provincial organization of paradental practitioners in the province in which the expense is incurred in the case of services rendered by a paradental practitioner, or

   (iii) the general level of charges in the area where the expense is incurred in the case of all other services;

(d) "hospital" means any public institution, building or other premises, where:

   (i) treatment requiring continuous confinement is rendered, and an attempt is made to cure persons suffering from or afflicted with sickness, disease or injury, and,

   (ii) when approved by the Administrator, specialized treatment of convalescing or chronically ill persons is rendered, but

   (iii) the term "hospital" does not include nursing homes, rest homes, old age homes, or other premises or places rendering similar care;

-10-

(e) "chiropractor" means a member of the Canadian Chiropratic Association or of any provincial association affiliated therewith;

(f) "dentist" means a person licensed to practise dentistry by the provincial licensing authority in which the dental services are rendered;

(g) "masseur" means a member of any provincial association of masseurs;

(h) "naturopath" means a person who holds a degree from a recognized school of naturopathy;

(i) "optometrist" means a member of the Canadian Association of Optometrists or of any provincial association associated therewith, licensed to practice in the province in which the services are rendered;

(j) "osteopath" means a Doctor of Osteopathy who is a graduate of a recognized school of osteopathy, licensed to practice in the province in which the services are rendered;

(k) "physician" means a person who is legally licensed to practice medicine in the province in which the services are rendered;

(l) "physiotherapist" means a member of the Canadian Physiotherapy Association or of any provincial association affiliated therewith, licensed to practice in the province in which the services are rendered;

(m) "podiatrist or chiropodist" means a member of the Canadian Podiatric Association or of any provincial association affiliated therewith, licensed to practice in the province in which the services are rendered;

(n) "psychologist" means a permanently certified psychologist who is listed on the provincial registry of the province in which the services are rendered;

(o) "registered nurse" and "registered nursing assistant", mean a nurse who is listed on the provincial registry of the province in which the services are rendered;

(p) "registered pharmacist" means a person who is licensed to practice pharmacy and whose name is listed on the pharmacists' registry of the licensing body for the province in which such person is practicing;

(q) "speech therapist" means a person who holds a diploma or degree in speech therapy from a recognized university;

(r) "paradental practitioner" means a person licensed by the provincial authority where the services are rendered to work as a direct practitioner, supplying and fitting dentures to the public;

(s) "eligible expenses" means those expenses listed in Section 4 hereof;

(t) "person" as used in Section 4 hereof, means employee or eligible dependent.

2. Calculation of Amount of Benefits

(a) Supplementary Hospital Benefit (SHB)

Employees whose claim for SHB have been allowed by the Administrator shall be entitled to 100% of the claim as allowed.

(b) Extended Health Care Benefit (EHB), Basic Dental Benefit (BDB) and Minor Dental Benefit (MDB)

An employee whose claims for EHB or BDB are allowed by the Administrator shall be entitled to 100% of the Eligible Expenses for EHB and BDB incurred by the employee and his eligible dependents.

An employee whose claims for MDB are allowed by the Adminstrator shall be entitled to 80% of the Eligible Expenses for MDB incurred by the employee and his eligible dependents.

The combined Eligible Expenses for EHB, BDB and MDB are subject to the following deductible amounts:

(i) $25 for each employee and eligible dependent in respect to whom a claim was allowed, for each calendar year to a maximum of $50 per calendar year

(ii) where an employee and one or more of his or her eligible dependents are entitled to EHB, BDB or MDB or all as a result of one accident the maximum deductible shall be $25.

(c) Major Dental Benefit (MJDB)

An employee whose claim for MJDB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for MJDB incurred by the employee and his eligible dependents, to a maximum Eligible Expense of $4,000 per calendar year each for an employee and each of his eligible dependents.

(d) Orthodontic Dental Benefit (ODB)

An employee whose claim for ODB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for ODB incurred by the employee and his eligible dependents to a lifetime maximum Eligible Expense of $3,000 each for an employee and each of his eligible dependents.

(e) Other Health Care Benefits (OHCB)

An employee whose claim for OHCB is allowed by the Administrator shall be entitled to 50% of the Eligible Expenses for OHCB incurred by the employee and his eligible dependents.

(f) Catastrophic Expense Benefit (CEB)

When an employee whose claim for any one or more Benefit under this Comprehensive Health Benefit, except the Orthodontic Benefit, has been allowed by the Administrator, and that employee's share of the Eligible Expenses exceeds $1,000 in a calendar year, the employee shall be entitled to 100% of the amount of the Eligible Expense in excess of $1,000, except for the Orthodontic Benefit.

3.   Payment of Benefits

When the Administrator has allowed a claim for benefit under this CHC Benefit the Administrator shall pay the employee or the person, if any, to whom the employee has assigned the claim, the amount of the Benefit as calculated.

4.   Eligible Expenses

(A) Supplementary Hospital Benefit (SHB)

For the purposes of this Benefit, Eligible Expenses means the reasonable and customary charges for medically necessary hospital treatment recommended by a physician, as follows:

(a)   charges for the hospital room and board in an amount not to exceed the difference between charges for semi-private accommodation and public ward accommodation for each day in hospital;

(b)   charges for hospital room and board for that portion, if any, of the cost of public ward accommodation which the hospital must bill directly to the patient pursuant to government regulations, and where the law permits a patient to be reimbursed for such expenses;

(c)   charges for each admission as in-patient for public ward accommodation, where the law permits a patient to be reimbursed for such expense.

-13-

**(B) Extended Health Benefit (EHB)**

100% of Extended Health Expenses after satisfying a deductible combined with BDB and MDB, Eligible Expenses mean the reasonable and customary charges for medically necessary treatment recommended by a physician, as follows:

(a)    charges for drugs, sera and injectibles (including oral contraceptives) if prescribed by a physician or dentist and dispensed by a registered pharmacist, physician or dentist; but charges for <u>the following are not eligible expenses:</u>

   (i)    food and food supplements, including dietary supplements;
   (ii)   vitamins and minerals except those which can only be purchased with a written prescription of a physician or dentist;

   (iii)  cosmetic or hygienic products;

   (iv)   products, which in the opinion of the Administrator, are household remedies;

   (v)    experimental drugs;

   (vi)   any products prescribed for the treatment of obesity.

(b)    hospital charges incurred outside Canada for emergency treatment, including hospital room and board, not to exceed the difference between the actual cost of ward accommodation plus charges for auxiliary hospital services, less the benefit payable by the relevant provincial hospital plan for a maximum of 31 days for each period of illness or injury;

(c)    charges incurred outside Canada or the province of residence of the employee for the professional services of a physician, where

   (i)    the services are required for emergency treatment of an injury or disease which occurred while the employee or eligible dependent was travelling outside the province, or

   (ii)   the services are not available in the province of residence of the employee or eligible dependent;

-14-

(d)   charges incurred in Canada for the professional services of a physician where the employee or any eligible dependent of the employee is not eligible for coverage by a provincial health insurance program;

(e)   charges for professional services rendered in the home of the employee or eligible dependent by a registered nurse (R.N.) or where an R.N. is not available when required, services of a registered nursing assistant (R.N.A.), subject to a maximum total Eligible Expense in any one period of illness or disability of $10,000.  Such charges are not an Eligible Expense if the R.N. or R.N.A. is related to the employee or eligible dependent by blood or marriage or is ordinarily a resident in the home of the employee or eligible dependent;

(f)   charges for diagnostic procedures, radiology, blood transfusions and oxygen, including the use of the necessary equipment for the administration of these procedures;

(g)   rental or, at the Administrator's option, purchase of a wheelchair, hospital bed, iron lung or other durable equipment required for temporary therapeutic use and approved by the Company and the Administrator.

(h)   charges for the purchase of trusses, braces, crutches, artificial limbs or eyes and surgical dressings.

Orthopaedic shoes which are specially constructed for the patient, including modifications to such shoes, less the average cost of regular footwear as determined by the Administrator.

Average cost will be determined as follows:

        0 to  5 years - $18.
        6 to 11 years -  22.
       12 to 17 years -  24.
       18 and over    -  35.

(i)   charges for licensed ground ambulance service to and from a local hospital;

(j)   charges for emergency transportation of an employee or eligible dependent by a licensed ambulance, air-ambulance, or by any other vehicle normally used for public transportation, to the nearest hospital equipped to provide the required treatment, to a maximum of one return trip per calendar year.  Licensed ground ambulance service to and from the points of departure and arrival is also considered an Eligible Expense;

-15-

(k)   charges for dental services required as a direct result of accidental injuries to natural teeth when such treatment is rendered within 6 months of the accident;

(l)   charges for services of a psychologist, speech therapist or masseur, to a maximum Eligible Expense of $200 per person in a calendar year;

(m)   charges for services of a physiotherapist if not covered by the provincial health insurance plan;

(n)   charges for services of a chiropractor or osteopath, to a maximum Eligible Expense of $200 per person in a calendar year, plus one x-ray examination by a chiropractor or osteopath per calendar year, after the maximum provincial health insurance payment, if applicable, has been made;

(o)   charges for services of a naturopath, to a maximum Eligible Expense of $200 per person per calendar year;

(p)   charges for services of a podiatrist or chiropodist to a maximum Eligible Expense of $200 per person per calendar year for non-surgical treatment, plus a maxmium Eligible Expense of $100 per person per calendar year for the surgical removal of toe nails or the excision of plantar warts, after the maximum provincial health insurance payment, if applicable, has been made;

(q)   charges for the following services and supplies as approved by the Company and the Administrator:

1)   Medically necessary supplies of a non-prescriptive nature required

   - for the treatment of cystic fibrosis, diabetes, parkinsonism and severe cases of permanent psoriasis

   - for paraplegics and quadraplegics

   - as a result of colostomy

2)   Made-to-measure elastic support stockings up to a maximum Eligible Expense of $25 per calendar year.

3)   Portions of the cost for food replacements in cases where other food cannot be consumed because of surgery of the digestive tract. That portion which can be considered reasonable and customary charges for a normal diet will not be considered eligible.

4)   Eyepatches required for the treatment of lack of lacrimation.

5)   Trachea tubes.

-16-

## (C) Basic Dental Benefit (BDB)

100% of Basic Dental Expenses after satisfying a deductible combined with the EHB and MDB of $25 per person (up to a maximum of $50 per family) in each calendar year.

Eligible expenses mean reasonable and customary charges for the following necessary treatment recommended by a dentist:

1.  Oral examinations, once every 6 months.

2.  Prophylaxis (cleaning and scaling of teeth) once every 6 months. This treatment is eligible if performed by a Dentist, or a Dental Hygienist under the direct supervision of a Dentist.

3.  Bite-wing X-rays, once every 6 months.

4.  Topical application of an anti-cariogenic agent, once every 6 months. This treatment is eligible if performed by a Dentist, or Dental Hygienist under the direct supervision of a Dentist.

5.  Full mouth series of X-rays, once every 24 months.

6.  Extractions and simple alveolecomy at time of tooth extraction.

7.  Surgical extraction of impacted teeth.

8.  Amalgam, silicate, acrylic, and composite fillings.

9.  Provision of space maintainers for missing primary teeth and provision of habit-breaking appliances.

10. Diagnostic X-ray and laboratory procedures required in relation to dental surgery.

11. General anaesthetic required in relation to dental surgery.

12. Consultation required by the attending Dentist.

13. Relining, rebasing, or repairing of an existing fixed bridge, removable partial or complete denture.

| Treatment | Canadian Dental Association Procedure |
|---|---|
| (a) routine oral examination and diagnosis: | |
| - oral examination, | 01100, 01110, 01120, 01121, 01130 |
| - recall oral examination (once every 6 months), | 01200, 01210 |
| - special oral examination, | 01300, 01400, 01500, 01510, 01600 01610, 01800, 01810 |
| - treatment plannings, | 05100, 05200 |
| - emergency and unusual services, | 91100, 91110 |
| - consultation, | 93100, 99200 |
| - house call, institutional call and office visit | 94100, 94200, 94400 |
| (b) tests and laboratory examinations: | |
| - microbiologic culture, | 04100, 04110 |
| - biopsy of oral tissue, | 04300, 04310 |
| - pathologic report, | 04320 |
| - cytologic smear from oral cavity, | 04330, 04340 |
| - pulp vitality tests | 04400 |
| (c) radiographs: | |
| - periapical (no more than once in any 24 month period), | 02100, 02101, 02111-02123 |
| - occlusal, | 02131-02134 |
| - bitewing (once every 6 months), | 02141-02146 |
| - extra oral, | 02201-02205, 02301-02305 |
| - sialography, | 02400 |
| - fistulography, | 02410 |
| - cystography, | 02420 |
| - radiopaque dyes to demonstrate lesions, | 02430 |
| - temporomandibular joint, | 02501-02505 |
| - panoramic (once every 5 years), | 02600 |
| - interpretation of radiographs received from another source, | 02800 |
| - tomography | 02920 |
| (d) preventative services; | |
| - dental prophylaxis (once every 6 months), | 11100, 11200, 11300, 11301 |
| - topical application of fluoride phosphate (once every 6 months), | 12000, 12100, 12200, 12400 |
| - oral hygiene instruction (once every 6 months), | 13200, 13210 |
| - caries control, | 13600, 13601 |
| - interproximal discing of teeth | 13700 |

-18-

|  |  |
|---|---|
| (e) space maintainers and appliances<br>to control harmful habits; | 15100, 15110, 15111, 15120, 15200<br>15210, 15300, 15310, 15400, 15401<br>15500, 15600, 82100-82102, 82200,<br>82201, 82202 |

(f) plastic fillings:

|  |  |
|---|---|
| - amalgam, | 21101-21105,  21201-21205,<br>21211-21215,  21221-21225,<br>21300-21305 |
| - silicate, | 22101, 22102 |
| - acrylic or composite resin, | 23101-23103,  23111-23114,<br>23201-23205,  23221-23224,  23211 |
| - transitional restoration of<br>fractured anterior, | 27131 |
| - steel crown - primary teeth, | 21401, 21403, 21421, 27400-27404,<br>27420-27422 |
| - cement | 29800 |

(g) surgical services:

|  |  |
|---|---|
| - surgical incision, | 75100, 75101, 75110 |
| - miscellaneous surgical services | 79601-79604 |

|  |  |
|---|---|
| (h) anaesthesia in connection with oral<br>surgery | 92200-92202,  92250-92252, 92300,<br>92310, 92311, 92330, 92340, 92350 |

(i) repairs and adjustments:

|  |  |
|---|---|
| - repair or recementing of crowns,<br>inlays, onlays, existing fixed<br>bridgework or dentures, | 29100, 29300, 55101-55105,<br>55201-55204,  66100, 66200, 66300<br>66400, 66500, 66600, 66610, 66620 |
| - denture rebasing and relining | 56200, 56201, 56210, 56211, 56220<br>56221, 56230, 56231, 56240, 56241<br>56250, 56251, 56260-56263,  56264<br>56265, 56270-56273,  56300 |

## Exclusions

Charges in respect of services for the treatment of malocclusion or
services for orthodontic treatment are not an Eligible Expense under this
Basic Dental Benefit.

## (D) Minor Dental Benefit (MDB)

80% of the following Dental expenses after satisfying a
deductible combined with the EHB and BDB of $25 per person (up to a
maximum of $50 per family) in each calendar year.

1. Surgical removal of tumors, cysts, neoplasms, plus the
   incision and drainage of an abscess.

2. Endodontic Treatment, including root canal therapy.

3. Periodontic Treatment, excluding periodontic appliances.

Eligible expenses mean reasonable and customary charge for the
following necessary treatment recommended by a dentist:

| Treatment | Canadian Dental Association Procedure Codes |
|---|---|

(a) endodontics:

| | |
|---|---|
| – pulcapping, | 31100, 31110 |
| – pulpotomy, | 32100, 32200-32202,  32210-32212 |
| – root canal therapy, | 33100, 33110, 33120, 33200, 33210 |
| | 33220, 33300, 33320, 33400, 33420 |
| | 33430, 33431, 33500-33504, |
| | 33511-33514 |
| – periapical services, | 34100-34101,  34111-34115, |
| | 34200-34203,  34212, 34213, 34401 |
| | 34402 |
| – banding of tooth | 39120 |
| – canal and/or pulp enlargement, | 39300 |
| – intentional removal, apical filing and reimplantation, | 39500-39503,  39600 |
| – emergency procedure | 39900-39905,  39910, 39930, |
| | 39940-39942,  39960, 39970, 39980 |
| | 39985 |

(b) periodontics, excluding periodontic appliances:

| | |
|---|---|
| – gingival plastry or curettage, | 39100 |
| – alveolectomy, | 39110 |
| – non-surgical services, | 41100, 41200, 41210, 41300, 42600 |
| – surgical services, | 42001-42006,  42100-42104,  42200 |
| | 42300, 42310, 42400 |
| – post-surgical treatment, | 42500 |
| – adjunctive procedures (occlusal equilibration not exceeding 8 times units each year), | 43200-43203,  43210, 43211, 43250 |
| | 43251, 43255, 43259, 43260 |
| | 43270-43272,  43300, 43310, |
| | 43400-43403,  43410, 43600, 43610 |
| | 43620 |
| – post-treatment evaluation, | 49100 |
| – case pattern section, | 49400, 49410, 49500, 49510, 49600 |
| | 49610, 49700, 49710, 49800, 49810 |
| – alveoplasty | 73100, 73101, 73110-73112 |
| | 73119-73123,  73130-73135,  73140 |
| | 73141, 73150, 73151, 73160, 73161 |
| | 73200, 73201, 73300, 73301, 73310 |
| | 73311, 73320, 73321, 73330, 73331 |
| | 73340, 73341, 73350, 73351, 73360 |
| | 73361 |

-20-

(c) surgical services:
  – uncomplicated removals,        71101–71108,  71111
  – surgical removals,             72100, 72210, 72220, 72230, 72240
    transplantation and            72300, 72310, 72320, 72400, 72410
    repositioning,                 72411, 72440, 72450
  – surgical excision              74100–74119,  74400–74410


Exclusions

Charges in respect of services for the treatment of malocclusion or
services for orthodontic treatment are not an Eligible Expense under this
Minor Dental Benefit (MDB)

(E) Major Dental Benefit (MJDB)

   50% of Major Dental Expenses listed below up to the maximum of $2,000
   payable per calendar year per individual.  No deductible applies.

   1.  Inlays and onlays.

   2.  Crowns, including gold and porcelain veneer restorations,
       where other material is not suitable.

   3.  The creation of a fixed bridge, removable partial or complete
       denture.

   4.  The replacement of an existing fixed bridge, removable partial
       or complete denture only under the circumstances set out in
       paragraph (h) on page 23.

   5.  Injection of antibiotic drugs when prescribed by a dentist.

   6.  Services of a licensed Denturist when practicing within the
       scope of his license.

   7.  Other necessary oral surgical procedures not specifically
       listed under the Basic Dental Benefit.

-21-

Eligible Expenses mean reasonable and customary charges for the following treatment recommended by a dentist:

|  Treatment | Canadian Dental Association Procedure Codes |
|---|---|

(a) crowns, inlays, onlays, (including gold and porcelain veneer restorations where other material is not suitable)

| | |
|---|---|
| - gold foil restoration | 24101, 24103, 24200, 24201, 24300 |
| - metal inlay restorations, | 25100, 25200, 25300, 25400, 25500 |
| | 25600-25605 |
| - porcelain inlay restoration, | 26100, 26700 |
| - crowns | 21411, 21413, 27100, 27110, 27120 |
| | 27130, 27140, 27200, 27210, 27220 |
| | 27300, 27301, 27310-27312 |
| | 27410-27414, 27423-27425, 27500 |
| | 27600, 27610, 27620, 27630, 27640 |
| | 27700, 27701, 27702, 27710-27712 |
| | 29500, 29501, 29502, 29503, |
| | 29510, 29511, 29512, 29513, |
| | 29610, 29700, |
| - hemisection | 39200, 39210, 39220, 39230 |

(b) fixed bridgework:

| | |
|---|---|
| - bridge pontics, | 60700, 62100, 62110, 62200, |
| | 62300, 62400 62500, 62510, 62600, |
| | 62700, 62800 62900 |
| - retainers, | 65200, 65300, 65400 |
| - abutments, | 67100, 67101, 67110, 67200, 67210 |
| | 67300, 67310, 67400, 67410, 67420 |
| | 67500 |
| - other prosthetic services | 69300, 69600, 69610, 69620, 69630 |
| | 69700-69705, 69800 |

(c) partial and complete dentures:

| | |
|---|---|
| - complete dentures, | 51100, 51110, 51120, 51300, 51310 |
| | 51320, 51600, 51610, 51620 |
| - partial dentures, | 52100, 52110, 52120, 52121, 52200 |
| | 52210, 52220-52222, 52230-52232, |
| | 52300-52310, 52320-52322, 52400 |
| | 52410, 52500, 52510, 52520, 52530 |
| | 52531, 52800 |
| - partial denture additions, | 55520, 55530 |

-22-

(d) repairs and adjustments:
   - adjustment to denture,      54200,  54250, 54300-54306
   - addition to tooth           55500-55602,  55510-55512, 55520
                                 55521, 55524, 55525, 55529-55531,
                                 55534, 55535, 55539, 55600-55602,
                                 55610-55612

(e) surgical services:
   - fractures,                  76940, 76941, 76950-76979
   - frenectomy,                 77800, 77810, 77820, 77830, 77840
                                 77850, 78110, 78120
   - miscellaneous surgical      79300-79306,  79308, 79309, 79400
     services,                   79401

(f) antibiotic drug injections   96100, 96101
    (when prescribed by a dentist)

(g) examinations:
   - oral examination,           01700, 01710
   - diagnostic casts,           04500, 04510, 04520, 04540, 04550
                                 04560, 04710, 04720, 04740, 04750
                                 04760, 04770
   - prosthodontic evaluation,   60100

(h) charges for replacement of an existing denture, bridgework, crown,
    inlay, onlay or periodontal splinting of not greater quality and value
    than the prosthesis being replaced, will be considered an Eligible
    Expense where:

   (i)   the replacement is required to replace an existing denture which
         was installed not less than 3 years prior to the replacement and
         the existing prosthesis cannot be made serviceable, or

   (ii)  the replacement is required to replace an existing bridgework,
         crown, inlay, onlay or periodontal splinting which was installed
         not less than 5 years prior to the replacement and the existing
         prosthesis cannot be made serviceable, or

   (iii) the replacement is required to replace a temporary bridge or
         denture with a permanent bridge or denture and replacement takes
         place within 12 months of when the temporary appliance was
         installed, or

   (iv)  the replacement is necessitated by the extraction of additional
         natural teeth while the person was covered hereunder.

The maximum amount payable under this benefit in any one calendar year
is as specified in the Calculation of Amount of Benefits.

-23-

**(F) Orthodontic Dental Benefit (ODB)**

50% of Eligible Expenses mean reasonable and customary charges for the necessary treatment of malocclusion or for orthodontic treatment as follows, to a lifetime maximum payment of $1500 per per individual:

| Treatment | Canadian Dental Association Procedure Codes |
|---|---|
| (a) observation, adjustment: | |
| - oral examination, | 01900, 01910 |
| - cephalometric radiograph, | 02701-02705,   02750-02754 |
| - hand and wrist radiograph, | 02930 |
| - diagnostic cast, | 04530 |
| - oral surgical procedure for orthodontic purposes, | 72409 |
| - surgical exposures of unerupted tooth, with orthodontic attachment | 72412 |
| - observation, adjustment, | 80600, 80610, 80611, 80620 |
| - removable or fixed appliance, | 80621, 80622 |
| - repairs, alterations, | 80630, 80640, 80650, 80700 |
| - active appliances for tooth guidance or uncomplicated tooth movement, | 81100, 81105, 81106, 81110, 81111 81115, 81116, 81120, 81125, 81126 81130, 81131, 81140, 81200-81214, 81250-81252,  81261, 81291 |
| - retention appliances | 83100, 83111, 83112, 83200 |
| (b) comprehensive treatment: | 84100, 84220, 84300, 84400, 85100 85200, 85300, 86100, 86200, 86300 87100, 87200, 87300, 88100, 88200 88300, 89100, 89200, 89300, 89500 89520, 89530, 89550, 89560, 89570 89580 |

**(G) Other Health Care Benefits (OHCB)**

Eligible expenses mean reasonable and customary charges of the following medically necessary treatment recommended by a physician:

(a)  charges for room, board and normal nursing care provided in a licensed nursing home or clinic, for convalescent or chronic care, but not including custodial care, up to a maximum Eligible Expense of $20 per day for a lifetime total of 365 days;

(b)  charges for private hospital room and board, such charges not to exceed the difference between the charges for semi-private and private accommodation, not including a suite, for each day of hospitalization;

(c)  charges for the purchase and repair of hearing aids (excluding batteries) to a maximum Eligible Expense of $400 in any two consecutive calendar years;

-24-

(d)  when recommended by a physician or optometrist, charges for:

 (i)  frames, lenses, and the fitting of prescription glasses
      including prescription sun glasses and contact lenses, to
      a maximum Eligible Expense of $100 per individual in any
      two consecutive calendar years.  Effective January 1,
      1983, this maximum Eligible Expense will be increased to
      $150 per individual in any two consecutive calendar years.

 (ii) contact lenses prescribed for severe corneal astigmatism,
      severe corneal scarring, keratoconus or aphakia, provided
      visual acuity can be improved to at least the 20/40 level
      by contact lenses and cannot be improved to that level by
      regular glasses, to a maximum Eligible Expense of $400 in
      any two consecutive calendar years;

(iii) services for visual training or remedial exercises;

 (iv) ocular examinations, including refraction, to a maximum of
      one such examination in a calendar year for eligible
      dependent children, and to a maximum of one such
      examination in any two consecutive calendar years for
      employees and spouses.

5.  Canadian Dental Association Procedure Codes

The Canadian Dental Association Procedure Codes are provided for
identification of the individual treatment procedures included in each
Eligible Expense of the various dental benefits.  Where any province does
not employ the Canadian Dental Association Procedure Codes, the
appropriate Procedure Codes in the fee guide of such province, for the
equivalent procedure, will apply.

6.  Proof of Claim

(a) A claim for CHC benefit shall be made by an employee in writing to the
    Administrator in satisfactory form within 18 months after the date on
    which the expense claimed for is incurred.

(b) The Administrator requires the employee claiming for this benefit to
    submit original itemized hospital, dental, medical, drug, equipment,
    or other bills, physicians' reports, hospital records, statements,
    invoices and documents as the Administrator may consider necessary to
    adjudge and allow or disallow the claim.

(c) When the Administrator cannot determine from the forms, bills and
    documents submitted whether the charges incurred are Eligible
    Expenses, or when there has been a change in the Canadian Dental
    Association Procedure Codes, the Administrator may allow a portion of
    the claim based on the cost or charges for such alternative services
    included in this benefit as Eligible Expenses.

-25-

Revised 1983 04 15

7.  Limitations .

(a) No benefits will be paid to or on behalf of an employee or his
    eligible dependents for any charges or Eligible Expenses incurred in
    respect of or arising from:

> (i)   any services for which benefits are payable under any
>       Workers' Compensation Act or any similar law;

> (ii)  charges for a physician or dentist for any time spent in
>       travelling, transportation costs or broken appointments;

> (iii) services which are cosmetic in nature, unless for
>       accidental injuries and such treatment commences within 90
>       days of the accident;

> (iv)  replacement of an existing appliance or prosthesis under
>       any government plan or, subject to (d) below, any other
>       plan;

> (v)   crowns placed on a tooth not functionally impaired as a
>       result of fractures or decay by incisal or cuspal damage;

> (vi)  prosthetic devices which were ordered before the employee
>       or dependent became eligible under this benefit or which
>       are ordered while employee or eligible dependent is
>       covered under this benefit but are installed more than 30
>       days after termination of eligibility.

(b) Where Eligible Expenses are incurred outside Canada the amount payable
    under this Benefit will be limited to the amount which is considered
    reasonable and customary in the area in which the treatment is
    rendered.

(c) Where it cannot be satisfactorily determined by the Administrator that
    Dental expenses incurred are Eligible Expenses, or in the event of a
    change in the Canadian Dental Association Procedure Codes, reimburse-
    ment may be provided with respect to such incurred expenses based on
    the cost of alternative services which are defined in this plan as
    Eligible Expenses.

(d) Where an employee participates in another group plan, benefits will
    not be payable with respect to that portion of any Eligible Expense
    for which benefits are paid by the other plan.

-26-

Date of issue:  1982 11 19

Application for Reissued Group Policy No. G 13900


NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

(herein called the Policyholder)


hereby applies to The Mutual Life Assurance Company of Canada for
a reissued Group Life Insurance Policy for the insured persons of
the Policyholder, the form of such reissued policy having been
approved by the Policyholder and this reissued policy to take
effect as of July 1, 1980.


Dated at Mississauga, Ontario, as of the effective date of this
reissued policy.


LEGAL DEPT.

PLSS

APPROVED
April 7/83
DATE

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _____

Vice-President, Human Resources
(Title)

And By: _____

Secretary
(Title)

Amendment to Group Policy No. G 13900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES


The Schedule 1 on Policy Particulars (1A) is amended to add a
participating affiliate, and a replacing Policy Particulars (1A) is
attached.

********

Eligibility to be an Insured Person on Appendix A is amended to add a
participating affiliate and a replacing Appendix A is attached.

********

This amendment is effective on the 1st day of September, 1981.

Dated at Waterloo, Ontario, as of the effective date of this amendment.


Secretary                                                      President


Amendment approved and original attached to the policy.


                              NORTHERN TELECOM LIMITED AND
                              PARTICIPATING AFFILIATES

                              By: _____
                              Vice-President, Human Resources
                              (Title)

                              And By: _____
                                        Secretary

                              (Title)



Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

### Schedule 1

Participating Affiliates   – Northern Telecom Canada Limited
                                – Northern Telecom Systems Limited
                                – Cook Electric Company of Canada Ltd.

POLICY PARTICULARS (1A)




## APPENDIX A

### Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900, or

(b) on July 1, 1980 if the person is actively employed by the participating affiliate, Northern Telecom Systems Limited on that date, or

(c) on September 1, 1981 if the person is actively employed by the participating affiliate, Cook Electric Company of Canada Ltd. on that date, or

(d) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences on or after the dates shown above,

provided the person is a salaried or hourly employee of Northern Telecom Limited, or its participating affiliates, or a commission salesman of Northern Telecom Systems Limited and is designated by the Policyholder to be part of the Managerial and Non Negotiated groups.

### Schedule of Benefits

### Classification of Insured Persons

| Annual Rate of Earned Income | | Life Insurance | Accidental Death & Dismemberment (Principal Sum) |
|---|---|---|---|
| At Least | But Less Than | | |
| – | $ 2,000. | $ 2,000. | $ 2,000. |
| $ 2,000. | 3,000. | 3,000. | 3,000. |
| 3,000. | 4,000. | 4,000. | 4,000. |
| 4,000. | 5,000. | 5,000. | 5,000. |
| 5,000. | 6,000. | 6,000. | 6,000. |
| 6,000. | 7,000. | 7,000. | 7,000. |
| 7,000. | 8,000. | 8,000. | 8,000. |
| 8,000. | 9,000. | 9,000. | 9,000. |
| 9,000. | 10,000. | 10,000. | 10,000. |
| 10,000. | 11,000. | 11,000. | 11,000. |
| etc. by $1,000 steps | | etc. by $1,000 steps | |

Where an employee of Northern Telecom Limited or its participating affiliates is transferred outside of Canada, such employee will continue to be insured, on a temporary basis. The insurance coverage will be in accordance with the terms of the policy under which the employee was insured while resident in Canada and the coverage will continue until the employee can be accommodated in the group insurance plan of the Policyholder in the country where the employee is then resident.

### Termination of Benefits

An insured person's Accidental Death and Dismemberment Insurance terminates upon retirement.



Amendment to Group Policy No. G 13900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES


The name of the participating affiliate Northern Telecom Systems Limited
is changed to Electronic Office Systems Group, and any reference to
Northern Telecom Systems Limited is amended to mean Electronic Office
Systems Group.  A replacing Policy Particulars (1A) page is attached.

******** 

This amendment is effective on the 1st day of January, 1982.

Dated at Waterloo, Ontario, as of the effective date of this amendment.


Secretary                                                    President


Amendment approved and original attached to the policy.

                              NORTHERN TELECOM LIMITED AND
                              PARTICIPATING AFFILIATES

                          By: _____

                              Vice-President, Human Resources
                              (Title)

                      And By: _____

                              Secretary
                              (Title)

LEGAL DEPT.

PASS

APPROVED
April 7 '83
DATE




Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

Schedule 1

Participating Affiliates - Northern Telecom Canada Limited
                         - Electronic Office Systems Group
                         - Cook Electric Company of Canada Ltd.

POLICY PARTICULARS (1A)



Amendment to Group Policy No. G 13900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

Appendix A-2 is terminated.

\*\*\*\*\*\*\*\*

This amendment is effective on the 1st day of July, 1982.

Dated at Waterloo, Ontario, as of the effective date of this amendment.

_E. E. Weaver_

Secretary

_J. V. Poston_

President

Amendment approved and original attached to the policy.

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _____

Vice-President, Human Resources
(Title)

And By: _____

Secretary
(Title)

LEGAL DEPT.

PLSS

APPROVED

April 7/h

DATE

Group Policy No. GH-3900 (Reissued)



The Mutual Life Assurance Company of Canada / Waterloo, Ontario

(herein called the Company)

agrees with

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

(herein called the Policyholder)

to insure certain persons, in accordance with the provisions of this policy.

This policy takes effect on the effective date and may be terminated as herein provided.

Premiums in amounts as herein determined are payable by the Policyholder at the Head Office of the Company or at such other place as the Company may from time to time designate in writing to the Policyholder.

The provisions on the following pages form a part of this policy.

Signed at its Head Office, Waterloo, Ontario, as of the effective date.

Secretary                                    President

Reissue of Group Policy No. G 13900

This is a reissue of Group Policy No. G 13900, originally
issued July 1, 1976.   This reissue shows the provisions,
terms, conditions and benefits in effect as of the effective
date, July 1, 1980.

Any person, who is not actively at work on the effective
date of this reissue, is not eligible for any increase in
provision benefits or amount of insurance as a result of the
reissue of this policy.   Any such increase will become
effective on the date the person returns to active work.
The Company may require satisfactory medical evidence,
without expense to the Company, to establish the date that
the person is physically and mentally fit to return to
active work.

Definitions

In this policy,

(a) "actively at work" and "active full-time work" mean the performance of all of the regular duties of the person's own occupation for one full working day or shift, as determined by the Policyholder, or considered a person on leave of absence prior to pension by the Policyholder;

(b) "age 65" means the last day of the month in which the insured person attains age 65;

(c) "basic salary" means the rate of regular remuneration received by the insured person excluding overtime, bonuses, allowances, premiums and cost-of-living adjustments;

(d) "effective date" means July 1, 1980;

(e) "insured person" means a person insured under this policy;

(f) "loss" means, with regard to hands and feet, dismemberment by severence through or above the wrist or ankle joints; with regard to eyes, the entire and irrecoverable loss of sight beyond remedy by surgical or other means;

(g) "participating affiliates" mean the companies specified in Schedule 1 on Policy Particulars (1A);

(h) "pensioner" means a person retired on pension under the pension plan of the Policyholder;

(i) "policy anniversary" means January 1, 1981 and any anniversary of that date;

(j) "policy year" means the period between the effective date and the first policy anniversary or any period of one year commencing on a policy anniversary;

(k) "rate of earned income" means the rate of basic salary, calculated on an annual basis, received by the insured person at the time of death or dismemberment in respect of the insured person's regular employment, except that in the case of a commissioned salesman actively employed by the Policyholder, "rate of earned income" means twice the rate of base salary calculated on an annual basis;

(l) "vehicle" means a vehicle that is drawn, propelled or driven by any means other than muscular power, and includes any aircraft, automobile, truck, motorcycle, moped, snowmobile and boat.

continued...

POLICY PARTICULARS (1)

Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

## Schedule 1

Participating Affiliates — Northern Telecom Canada Limited
                       — Northern Telecom Systems Limited

POLICY PARTICULARS (1A)

## Premiums

(1) Premiums are payable monthly in arrears.  The first premium is payable on August 1, 1980.  Subsequent premiums are payable on the 1st day of each month commencing September 1, 1980.

(2) The amount of the premium payable on any premium due date will be calculated in accordance with the following formula:

The monthly premium is equal to:

   (i) The claims paid during the immediately preceding month, plus
  (ii) 2.85% of the claims paid for the immediately preceding month, plus
 (iii) $70.00 times the number of claims paid for the immediately preceding month.

(3) The above formula is subject to change on January 1, 1983 and annually thereafter.  Any change in this formula will be determined by the Company at least 60 days prior to the date of change.

## Eligibility

The eligibility for an insured person will be determined in the Appendices attached to this policy.

## Amount of Insurance

(1) The amount of insurance for an insured person will be determined from the Schedule of Benefits shown in the Appendices attached to this policy.  Any increase or decrease in the amount of insurance for an insured person due to a policy amendment or a change in classification will be effective on the date of the policy amendment or change in classification unless otherwise provided below.

(2) Where an insured person is not actively at work when an increase in insurance would otherwise become effective, the increase will not be effective until the person returns to active work.

POLICY PARTICULARS (2)

Effective Date of Insurance of an Insured Person

(1) Except as otherwise provided in this policy, a person who makes written application on a form provided by the Company

(a) on or before the date of becoming eligible will be insured on the date of becoming eligible;

(b) within 31 days after the date of becoming eligible, will be insured on the date of completion of the application;

(c) later than 31 days after the date of becoming eligible, will be insured only upon submission, without expense to the Company, of evidence of insurability satisfactory to the Company, and the insurance will become effective on the date of receipt of the evidence by the Policyholder.

(2) (a) The insurance in respect of an eligible person who is not actively at work, due to bodily injury or disease, on the date on which the insurance would otherwise become effective, or

(b) any increase in insurance in respect of an insured person who is not actively at work, due to bodily injury or disease, on the date on which the increase in insurance would otherwise become effective,

will become effective on the date on which the person returns to active work.

The Company will have the right to require satisfactory medical evidence, without expense to the Company, in order to establish the date on which the person is physically and mentally fit to return to active work.

Termination of Insurance of an Insured Person

(1) Except as otherwise provided in this policy, the insurance (in whole or in part) of an insured person will automatically terminate on the date on which the insured person ceases to be eligible for that insurance.

(2) Where an insured person would otherwise cease to be eligible for insurance because of illness or injury, the insured person will continue to be eligible for insurance until the date of termination.

(3) Where an insured person ceases to be eligible for insurance because of a temporary work stoppage, the insurance may be continued subject to the approval of the Policyholder and the Company. Otherwise, the insurance of the insured person will cease on the date of commencement of the work stoppage.

(4) Where an insured person fails to disclose to the Company every fact material to the insurance under this policy, or misrepresents such facts, the insurance in respect of that person will be voidable at the option of the Company.

GENERAL PROVISIONS (1)

## The Contract

(1) This policy and the application therefor, a copy of which is attached to and forms a part of the policy, constitute the entire contract of insurance between the Policyholder and the Company.  The Policyholder during the continuance of the policy will be a Policyholder of the Company and the only Policyholder in respect of the insurance under the policy, and as such will be entitled to one vote at all annual and special general meetings of the Company.

(2) This policy may be amended with the approval of the Policyholder and the Company, or terminated as herein provided, at any time without the consent of the persons insured under it, but any amendment or termination will be without prejudice to any claim arising prior to the date of amendment or termination of the policy.

(3) This policy may not be amended nor may any provision in the policy be waived except by endorsement or rider signed by the officials of the Company authorized to sign policies.

## Incontestability

The statements made by the Policyholder in the application, other than fraudulent statements, will be deemed to be true and incontestable after this policy has been in force for 2 years.  The statements made by any person in the person's application (or insurability report, if any) in respect of insurance under the policy, other than fraudulent statements or statements erroneous as to age, will be deemed to be true and incontestable after such person has been insured hereunder for 2 years.

## Currency of Policy

The currency in respect of this policy is Canadian.

## Period of Grace

A period of grace of 31 days is allowed for the payment of each premium during which period the policy will continue in force unless the Policyholder has previously notified the Company that the policy will terminate at the end of the period for which the last premium was paid. If a premium is not paid before the expiration of the period of grace, the policy will terminate at the end of the period of grace, but the Policyholder will be required to pay to the Company any premium unpaid at the date of termination.

## Dividends

This policy will participate in the surplus distribution of the Company, to the extent and in the amount determined by the Company.  Such participation will be in the form of a dividend which will be allotted as at the end of the policy year and will be paid to the Policyholder, if all premiums due prior to the end of the policy year have been paid.

Where this policy terminates, the date of termination will be considered to be the end of a policy year, for the purpose of this section.

## Inspection of Payroll

The Company will have the right to inspect at any time the payroll of the Policyholder and any other records of the Policyholder relevant to this policy in order to verify the amount of insurance to which an insured person is entitled, the premium charged and any other matter relating to insurance under the policy.

## Assignment

The rights and interests of an insured person under this policy are assignable and should be filed with the Company.

## Termination of Policy

(1) This policy will lapse when a premium has not been paid before the end of the grace period.  At that time, the Company will notify the Policyholder in writing of the lapse and offer reinstatement terms.  If these terms are accepted and overdue premiums are paid, the liability of the Company will continue uninterrupted.  If reinstatement terms are not accepted the liability of the Company will cease effective at the end of the period of grace.

(2) The Policyholder may terminate this policy by giving written notice to the Company.  The date of termination of the policy will be the date of receipt of such notice or the termination date stated in the notice if later.  If the date of termination does not fall on a premium due date, the Policyholder will be required to pay to the Company the pro-rata premium for the period from the last premium due date to the date of termination.

(3) The Company may terminate this policy on the first policy anniversary or on any monthly premium due date following the first policy anniversary by giving written notice of termination to the Policyholder at least 60 days in advance of the date of termination.

(4) Except as otherwise provided in this policy, the insurance of all insured persons will immediately cease upon termination of this policy.

GENERAL PROVISIONS (3)

Payment of Insurance

(1) On the death of an insured person from any cause, including self-destruction while sane or insane, the Company will pay the amount, as determined from the Schedule of Benefits in the Appendices attached to this policy, for which the person was insured on the date of death.

(2) Any claim under this provision must be made in writing to the Company at its Head Office giving proof satisfactory to the Company of the claim and of the title of the claimant.

Optional Methods of Settlement

(1) Subject to subsection (2), an insured person, or in the absence of an election by the insured person, the beneficiary may elect one of the following optional methods of settlement in lieu of payment in one sum:

(a) Deposit at interest – The Company will retain the insurance proceeds on deposit. Interest at the rate of no less than 3 1/2% per annum, and such additional interest as may be determined by the Company from time to time, will accrue on the balance of the deposit and will be paid in cash at each anniversary of the date of deposit except that no interest will accrue after the death of the beneficiary or on any amount withdrawn prior to the first anniversary of the date of the deposit. The Company will have the right to determine from time to time the minimum amount of any withdrawal, and may defer for a period not exceeding 30 days the payment of any withdrawal requested.

(b) Income – The Company will pay the insurance proceeds to the beneficiary in the form of an income payable either for a guaranteed period of years or for the lifetime of the beneficiary with or without a guaranteed period, the amount of the income to be determined in accordance with the income options available under individual life insurance policies being issued by the Company at the time the election is made.

(2) The Optional Methods of Settlement are subject to the following conditions:

(a) The minimum amount of insurance proceeds which may be applied under any option for any one beneficiary is $1,000. The income option is available only where the income is at least $10. per month for any one beneficiary.

(b) The election of an option must be made in writing to the Company at its Head Office.

(c) The beneficiary must be a natural person entitled to receive payment in that person's own right.

(d) Election of the option must be made not later than one year following the death of the insured person.

GROUP LIFE INSURANCE PROVISION (1)

(e) The beneficiary will not have the right to change or vary an option elected by the insured person unless the Company at its Head Office has been otherwise directed in writing by the insured person.

Beneficiary .

The beneficiary of an insured person is as stated in the person's application unless subsequently changed.  If an insured person has not appointed a beneficiary or if no beneficiary is alive at the date of death of the insured person, the insurance of the insured person will be paid to the estate of the insured person.

Extended Benefit on Termination of Insurance

Where insurance of an insured person terminates while this provision continues in force, the amount of insurance terminated with respect to an insured person will be paid by the Company if death occurs within 31 days of the date of termination of the insurance.

Conversion Privilege

(1) Where insurance of an insured person terminates, the insured person will, subject to subsection (2) and without supplying evidence of insurability, be entitled to an individual policy on the life of the insured person on a One Year Term, a Term to Age 65, or on any Whole Life plan which provides for uniform premiums and a uniform death benefit and which is regularly issued by the Company for the amount of the individual policy.

(2) The issue of the individual policy will be subject to the following conditions:

(a) If this provision continues in force,

   (i) The amount of the individual policy will not exceed the lesser of (1) the amount of the insurance terminated, or (2) the maximum amount of insurance for which the person has been insured under this policy less the total amount of individual insurance still in force on the person's life which was previously obtained under the conversion privilege of this policy, and

   (ii) The individual policy will take effect 31 days after the insurance is terminated.

(b) If this provision terminates,

   (i) an individual policy is available only to a person who has been continuously insured under this policy during the five year period immediately preceding the termination of the provision, and

GROUP LIFE INSURANCE PROVISION (2)

(ii) the amount of the individual policy will not exceed $5,000 or 25% of the amount of insurance terminated, whichever is greater, but not exceeding the amount of insurance terminated, reduced by any amount of insurance for which the person may be or may become eligible under any group policy issued within 31 days after the date of the termination, and

(iii) the individual policy will take effect on completion of the application and payment of the required premium.

(c) Written application for the individual policy must be submitted to the Company within 31 days after the insurance is terminated and the required premium must be paid with the application.

(d) The individual policy will not contain a Total Disability or Accidental Death Provision.

(e) The premium for the individual policy will be in accordance with the scale of premiums in use by the Company at the effective date of the individual policy for the class of risk to which the applicant belongs and taken at the applicant's insurance age at the effective date.

(f) The individual policy will be in exchange for all benefits terminated under this provision and will contain the same provisions as are regularly included by the Company in new policies issued at the date of application.

(g) The One Year Term plan and the Term to Age 65 plan will not be available to an insured person who has attained 65 years of age.

(3) Where a part of the group of insured persons is withdrawn from the group and the persons in the part withdrawn cease to be insured persons, this provision will be considered to have terminated in respect of such persons for the purpose of this Conversion Privilege.

GROUP LIFE INSURANCE PROVISION (3)

## Payment of Benefit

(1) Upon receipt and approval by the Company of due proof that an insured person has suffered any of the losses shown in the table below as a direct result of bodily injury caused solely through accidental, violent and external causes and such loss occurred within 365 days of the date of sustaining such injury, the Company will, subject to the terms of this provision, pay the benefit shown in the following table.

(2)                          Table of Losses and Benefits

| | |
|---|---|
| Loss of Life | ) |
| Loss of Both Hands | ) |
| Loss of Both Feet | ) |
| Loss of the Sight of Both Eyes | ) The Principal Sum |
| Loss of One Hand and One Foot | ) |
| Loss of One Hand and the Sight of One Eye | ) |
| Loss of One Foot and the Sight of One Eye | ) |
| | |
| Loss of One Hand | ) |
| Loss of One Foot | ) One-Half the Principal Sum |
| Loss of the Sight of One Eye | ) |

(3) The injury must be sustained while the insured person is insured under this provision.

(4) The principal sum with respect to an insured person will be determined from the Appendices attached to this policy.

The total amount payable under this provision will, in respect of any one accident, not exceed the principal sum for which the person is insured.

(5) Payment of any benefit under this provision will be made to the insured person if living.  Otherwise, payment will be made to the beneficiary named by the insured person.  If no beneficiary has been named or the beneficiary does not survive the insured person, then payment will be made to the estate of the insured person.

## Extended Benefit on Termination of Insurance

This provision contains no extended benefit on termination of insurance.

## Conversion Privilege

This provision contains no conversion privilege.

## Limitations

Benefits under this provision are not payable for any loss resulting directly or indirectly, wholly or partially from any of the following causes −

(a) Suicide or self-inflicted injuries, while sane or insane;

(b) Committing or attempting to commit a criminal offence;

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PROVISION (1)

(c) Civil disorder or war, whether or not the insured person is actually participating therein and whether or not war be declared;

(d) Injuries sustained by the insured person as the result of driving a vehicle if, when the injuries were sustained, the blood of the insured person contained in excess of 80 milligrams of alcohol per 100 millilitres of blood.

Claims

(1) Any claim under this provision must be made in writing to the Company at its Head Office giving proof satisfactory to the Company of the claim and of the title of the claimant.

(2) Proof of loss will be required by the Company, on forms supplied by the Company, within 3 months after the date of the loss.

(3) The Company will have the right and opportunity, when and so often as it may reasonably require, to examine the person of any insured person who is making claim for benefits hereunder.

ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE PROVISION (2)

APPENDIX A

Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900, or

(b) on July 1, 1980 if the person is actively employed by the participating affiliate, Northern Telecom Systems Limited on that date, or

(c) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences on or after July 1, 1980,

provided the person is a salaried or hourly employee of Northern Telecom Limited, or its participating affiliates, or a commission salesman of Northern Telecom Systems Limited and is designated by the Policyholder to be part of the Managerial and Non Negotiated groups.

Schedule of Benefits

Classification of Insured Persons

| Annual Rate of Earned Income | | Life Insurance | Accidental Death & Dismemberment (Principal Sum) |
|---|---|---|---|
| At Least | But Less Than | | |
| - | $ 2,000. | $ 2,000. | $ 2,000. |
| $ 2,000. | 3,000. | 3,000. | 3,000. |
| 3,000. | 4,000. | 4,000. | 4,000. |
| 4,000. | 5,000. | 5,000. | 5,000. |
| 5,000. | 6,000. | 6,000. | 6,000. |
| 6,000. | 7,000. | 7,000. | 7,000. |
| 7,000. | 8,000. | 8,000. | 8,000. |
| 8,000. | 9,000. | 9,000. | 9,000. |
| 9,000. | 10,000. | 10,000. | 10,000. |
| 10,000. | 11,000. | 11,000. | 11,000. |
| etc. by $1,000 steps | | etc. by $1,000 steps | |

Where an employee of Northern Telecom Limited or its participating affiliates is transferred outside of Canada, such employee will continue to be insured, on a temporary basis. The insurance coverage will be in accordance with the terms of the policy under which the employee was insured while resident in Canada and the coverage will continue until the employee can be accommodated in the group insurance plan of the Policyholder in the country where the employee is then resident.

Termination of Benefits

An insured person's Accidental Death and Dismemberment Insurance terminates upon retirement.

APPENDIX A-1

Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured
    under G 13900, or

(b) on the date that the person commences active employment with the
    Policyholder if the person's employment with the Policyholder
    commences on or after July 1, 1980,

provided the person is an employee of Northern Telecom Limited or its
participating affiliates, and is designated by the Policyholder to be part
of the Certified Professional group.

Schedule of Benefits

Classification of Insured Persons

| Annual Rate of Earned Income | | Life Insurance | Accidental Death & Dismemberment (Principal Sum) |
|---|---|---|---|
| At Least | But Less Than | | |
| – | $ 2,000. | $ 2,000. | $ 2,000. |
| $ 2,000. | 3,000. | 3,000. | 3,000. |
| 3,000. | 4,000. | 4,000. | 4,000. |
| 4,000. | 5,000. | 5,000. | 5,000. |
| 5,000. | 6,000. | 6,000. | 6,000. |
| 6,000. | 7,000. | 7,000. | 7,000. |
| 7,000. | 8,000. | 8,000. | 8,000. |
| 8,000. | 9,000. | 9,000. | 9,000. |
| 9,000. | 10,000. | 10,000. | 10,000. |
| 10,000. | 11,000. | 11,000. | 11,000. |
| etc. by $1,000 steps | | etc. by $1,000 steps | |

Where an employee of Northern Telecom Limited or its participating
affiliates is transferred outside of Canada, such employee will continue
to be insured, on a temporary basis. The insurance coverage will be in
accordance with the terms of the policy under which the employee was
insured while resident in Canada and the coverage will continue until the
employee can be accommodated in the group insurance plan of the
Policyholder in the country where the employee is then resident.

Termination of Benefits

An insured person's Accidental Death and Dismemberment Insurance
terminates upon retirement.

APPENDIX A-2

Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900, or

(b) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences on or after July 1, 1980,

provided the person is an employee of Northern Telecom Limited or its participating affiliates, and is designated by the Policyholder to a Supervisor of the Western Region Installation group.

Schedule of Benefits

Classification of Insured Persons

| Annual Rate of Earned Income | | Life Insurance | Accidental Death & Dismemberment (Principal Sum) |
|---|---|---|---|
| At Least | But Less Than | | |
| — | $ 2,000. | $ 2,000. | $ 2,000. |
| $ 2,000. | 3,000. | 3,000. | 3,000. |
| 3,000. | 4,000. | 4,000. | 4,000. |
| 4,000. | 5,000. | 5,000. | 5,000. |
| 5,000. | 6,000. | 6,000. | 6,000. |
| 6,000. | 7,000. | 7,000. | 7,000. |
| 7,000. | 8,000. | 8,000. | 8,000. |
| 8,000. | 9,000. | 9,000. | 9,000. |
| 9,000. | 10,000. | 10,000. | 10,000. |
| 10,000. | 11,000. | 11,000. | 11,000. |
| etc. by $1,000 steps | | etc. by $1,000 steps | |

Where an employee of Northern Telecom Limited or its participating affiliates is transferred outside of Canada, such employee will continue to be insured, on a temporary basis. The insurance coverage will be in accordance with the terms of the policy under which the employee was insured while resident in Canada and the coverage will continue until the employee can be accommodated in the group insurance plan of the Policyholder in the country where the employee is then resident.

Termination of Benefits

An insured person's Accidental Death and Dismemberment Insurance terminates upon retirement.

APPENDIX B

## Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900 as a pensioner of the Policyholder, if the person retired on or after July 1, 1976, or

(b) on the date that the person retires on pension with the Policyholder, if the person retires on or after July 1, 1980

provided the person was insured as an active employee under this policy until retirement on pension.

## Schedule of Benefits

| Classification of Insured Persons | Life Insurance |
|---|---|
| 1. All Pensioners | * |

* The amount for which a pensioner is insured hereunder shall be the amount of insurance for which the pensioner was insured as an active employee on the date of retirement, reduced on the first anniversary of the date of retirement by 5% of such amount and further reduced by a like amount of each of the next four anniversaries of the date of retirement. In no case, however, shall the amount of insurance be reduced to less than $1,500.

## APPENDIX C

### Eligibility to be an Insured Person

A person acting in a consulting capacity as designated by Northern Telecom Limited, is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900, or

(b) on the date that the person commences such duties, if on or after July 1, 1980.

### Schedule of Benefits

| Classification of Insured Persons | Life Insurance |
| --- | --- |
| 1. All Persons acting in a consulting capacity | An amount equal to two times the annual rate of fees of the insured person, such amount to be rounded to the next higher $1,000, if not already a multiple thereof. |

Where an employee of Northern Telecom Limited or its participating affiliate is transferred outside of Canada, such employee will continue to be insured, on a temporary basis.  The insurance coverage will be in accordance with the terms of the policy under which the employee was insured while resident in Canada and the coverage will continue until the employee can be accommodated in the group insurance plan of the Policyholder in the country where the employee is then resident.

Application for Reissued Group Policy No. G 14900

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

(herein called the Policyholder)

hereby applies to The Mutual Life Assurance Company of Canada for a reissued Group Life Insurance Policy for the insured persons of the Policyholder, the form of such reissued policy having been approved by the Policyholder and this reissued policy to take effect as of July 1, 1980.

Dated at Mississauga, Ontario, as of the effective date of this reissued policy.

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _____

Vice-President, Human Resources
(Title)

And By: _____

Secretary
(Title)

LEGAL DEPT.

PLSS

APPROVED

April 7/83
DATE



Amendment to Group Policy No. G 14900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

The Schedule 1 on Policy Particulars (1A) is amended to add a
participating affiliate, and a replacing Policy Particulars (1A) is
attached.

\*\*\*\*\*\*\*\*

Eligibility to be an Insured Person on Appendix A is amended to add a
participating affiliate and a replacing Appendix A is attached.

\*\*\*\*\*\*\*\*

This amendment is effective on the 1st day of September, 1981.

Dated at Waterloo, Ontario, as of the effective date of this amendment.

Secretary

President

Amendment approved and original attached to the policy.

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _____
Vice-President, Human Resources
(Title)

And By: _____
Secretary
(Title)

LEGAL DEPT.

PLSS

APPROVED
DATE



(1) "dependant" means with respect to the Schedule of Benefits, any unmarried child of an insured person or the spouse, provided such child is under the age of 21 years, or is unmarried, under the age of 25 years and attends an accredited school, college, or university full-time, excluding any child who is not wholly dependent on the insured person for maintenance and support.

Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

### Schedule 1

Participating Affiliates – Northern Telecom Canada Limited
– Northern Telecom Systems Limited
– Cook Electric Company of Canada Ltd.

POLICY PARTICULARS (1A)

APPENDIX A

## Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 13900, or

(b) on July 1, 1980 if the person is actively employed by the participating affiliate, Northern Telecom Systems Limited on that date, or

(c) on September 1, 1981 if the person is actively employed by the participating affiliate, Cook Electric Company of Canada Ltd. on that date, or

(d) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences on or after the dates shown above,

provided that the person is insured under Group Policy G 13900 issued to the Policyholder by the Company and provided the person is a salaried or hourly employee of Northern Telecom Limited, or its participating affiliates or a commission salesman of Northern Telecom Systems Limited and is designated by the Policyholder to be part of the Managerial and Non Negotiated groups.

## Schedule of Benefits

## Classification of Insured Persons

| Classification Of Insured Persons | Optional Life Insurance |
|---|---|
| 1. All Employees | An amount equal to    50% * or |
| | 75% * or |
| | 100% * or |
| | 125% * or |
| | 150% * or |
| | 175% * or |
| | 200% * |

* of the insured person's rate of basic salary, calculated on an annual basis, rounded to the next higher $1,000 of insurance and subject to a minimum amount of insurance of $10,000.

A person may elect to be insured for one of the above optional amounts of insurance within 31 days of becoming eligible under this policy and at no other time without submission of evidence of insurability satisfactory to the Company.

An insured person may elect to increase the amount of optional insurance subject to a maximum of 200% of annual rate of earned income, upon acquiring a spouse or a dependant or an additional dependant without submitting evidence of insurability.

An insured person may elect to decrease or terminate the amount of optional insurance at any time.

continued...

Amendment to Group Policy No. G 14900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

The name of the participating affiliate Northern Telecom Systems Limited is changed to Electronic Office Systems Group, and any reference to Northern Telecom Systems Limited is amended to mean Electronic Office Systems Group.  A replacing Policy Particulars (1A) page is attached.

********

This amendment is effective on the 1st day of January, 1982.

Dated at Waterloo, Ontario, as of the effective date of this amendment.

Secretary                                                    President

Amendment approved and original attached to the policy.

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _____
Vice-President, Human Resources
(Title)

And By: _____
Secretary
(Title)

LEGAL DEPT.

PhSS

APPROVED
April 7/15
DATE



(1) "dependant" means with respect to the Schedule of Benefits, any unmarried child of an insured person or the spouse, provided such child is under the age of 21 years, or is unmarried, under the age of 25 years and attends an accredited school, college, or university full-time, excluding any child who is not wholly dependent on the insured person for maintenance and support.

Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

Schedule 1

Participating Affiliates – Northern Telecom Canada Limited
                        – Electronic Office Systems Group
                        – Cook Electric Company of Canada Ltd.

POLICY PARTICULARS (1A)



## APPENDIX A

### Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on September 1, 1981 if the person is actively employed by the participating affiliate, Cook Electric Company of Canada Ltd. on that date, or

(b) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences after September 1, 1981,

provided that the person is insured under Group Policy G 13900 issued to the Policyholder by the Company and provided the person is a salaried or hourly employee of Northern Telecom Limited, or a commission salesman of Electronic Office Systems Group and is designated by the Policyholder to be part of the Managerial and Non Negotiated groups.

### Schedule of Benefits

### Classification of Insured Persons

| Classification Of Insured Persons | Optional Life Insurance |
|---|---|
| 1. All Employees | An amount equal to 50% * or |
| | 75% * or |
| | 100% * or |
| | 125% * or |
| | 150% * or |
| | 175% * or |
| | 200% * |

* of the insured person's rate of basic salary, calculated on an annual basis, rounded to the next higher $1,000 of insurance and subject to a minimum amount of insurance of $10,000.

A person may elect to be insured for one of the above optional amounts of insurance within 31 days of becoming eligible under this policy and at no other time without submission of evidence of insurability satisfactory to the Company.

An insured person may elect to increase the amount of optional insurance subject to a maximum of 200% of annual rate of earned income, upon acquiring a spouse or a dependant or an additional dependant without submitting evidence of insurability.

An insured person may elect to decrease or terminate the amount of optional insurance at any time.

continued...

Amendment to Group Policy No. G 14900

Issued by

THE MUTUAL LIFE ASSURANCE COMPANY OF CANADA

to

NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

Appendix A-2 is terminated.

********

This amendment is effective on the 1st day of July, 1982.

Dated at Waterloo, Ontario, as of the effective date of this amendment.

_B. E. Weaver_

Secretary

_[signature]_

President

Amendment approved and original attached to the policy.

NORTHERN TELECOM LIMITED AND
PARTICIPATING AFFILIATES

By: _[signature]_

Vice-President, Human Resources
(Title)

And By: _[signature]_

Secretary
(Title)

LEGAL DEPT.

Ph SS

APPROVED

April 7/83

DATE

Group Policy No.   G.14900.( Reissued )



## The Mutual Life Assurance Company of Canada / Waterloo, Ontario

(herein called the Company)

agrees with

### NORTHERN TELECOM LIMITED AND PARTICIPATING AFFILIATES

(herein called the Policyholder)

to insure certain persons, in accordance with the provisions of this policy.

This policy takes effect on the effective date and may be terminated as herein provided.

Premiums in amounts as herein determined are payable by the Policyholder at the Head Office of the Company or at such other place as the Company may from time to time designate in writing to the Policyholder.

The provisions on the following pages form a part of this policy.

Signed at its Head Office, Waterloo, Ontario, as of the effective date.

_____
Secretary

_____
President

Reissue of Group Policy No. G 14900

This is a reissue of Group Policy No. G 14900, originally
issued October 1, 1976.  This reissue shows the provisions,
terms, conditions and benefits in effect as of the effective
date, July 1, 1980.

Any person, who is not actively at work on the effective
date of this reissue, is not eligible for any increase in
provision benefits or amount of insurance as a result of the
reissue of this policy.  Any such increase will become
effective on the date the person returns to active work.
The Company may require satisfactory medical evidence,
without expense to the Company, to establish the date that
the person is physically and mentally fit to return to
active work.

Definitions

In this policy,

(a) "actively at work" and "active full-time work" mean the performance of all of the regular duties of the person's own occupation for one full working day or shift, as determined by the Policyholder, or considered a person on leave of absence prior to pension by the Policyholder;

(b) "age 65" means the last day of the month in which the insured person attains age 65;

(c) "basic salary" means the rate of regular remuneration received by the insured person excluding overtime, bonuses, allowances, premiums and cost-of-living adjustments;

(d) "effective date" means July 1, 1980;

(e) "insured person" means a person insured under this policy;

(f) "participating affiliates" means the companies specified in Schedule 1 on Policy Particulars (1A);

(g) "pensioner" means a person retired on pension under the pension plan of the Policyholder;

(h) "policy anniversary" means January 1, 1981 and any anniversary of that date;

(i) "policy year" means the period between the effective date and the first policy anniversary or any period of one year commencing on a policy anniversary;

(j) "spouse" means with respect to the Schedule of Benefits, the person of the opposite sex of the employee who, at the time the right to claim a benefit arises, is cohabiting with the employee, and has been so cohabiting either,

    (i) for 36 consecutive months immediately prior thereto in the event marriage is prohibited by law, or

    (ii) for 12 consecutive months immediately prior thereto in the event marriage is not so prohibited, and

    (iii) in both situations the co-habitant is publicly represented as the husband or wife of the employee;

(k) "rate of earned income" means the rate of basic salary, calculated on an annual basis, received by the insured person at the time of death in respect of the insured person's regular employment, except that in the case of a commissioned salesman actively employed by the Policyholder, "rate of earned income" means _twice_ the rate of base salary calculated on an annual basis;

continued...

POLICY PARTICULARS (1)

(1) "dependant" means with respect to the Schedule of Benefits, any unmarried child of an insured person or the spouse, provided such child is under the age of 21 years, or is unmarried, under the age of 25 years and attends an accredited school, college, or university full-time, excluding any child who is not wholly dependent on the insured person for maintenance and support.

Agent:

Northern Telecom Limited will act as agent for the participating affiliates in all matters respecting this policy, including the amendment of this policy and the acceptance of a new policy in place of this policy, and any thing so done by Northern Telecom Limited in such matters will be considered to be done on behalf of itself and the participating affiliates.

Schedule 1

Participating Affiliates – Northern Telecom Canada Limited
                        – Northern Telecom Systems Limited

POLICY PARTICULARS (1A)

Premiums

(1) Premiums are payable monthly in arrears.  The first premium is payable on August 1, 1980.  Subsequent premiums are payable on the 1st day of each month commencing September 1, 1980.

(2) The amount of the premium payable on any premium due date will be calculated in accordance with the following formula:

The monthly premium is equal to:

(i) The claims paid during the immediately preceding month, plus
(ii) 2.85% of the claims paid for the immediately preceding month.

(3) The above formula is subject to change on January 1, 1983 and annually thereafter.  Any change in this formula will be determined by the Company at least 60 days prior to the date of change.

Eligibility

The eligibility for an insured person will be determined in the Appendices attached to this policy.

Amount of Insurance

(1) The amount of insurance for an insured person will be determined from the Schedule of Benefits shown in the Appendices attached to this policy.  Any increase or decrease in the amount of insurance for an insured person due to a policy amendment or a change in classification will be effective on the date of the policy amendment or change in classification unless otherwise provided below.

(2) Where an insured person is not actively at work when an increase in insurance would otherwise become effective, the increase will not be effective until the person is actively at work.

POLICY PARTICULARS (2)

Effective Date of Insurance of an Insured Person

(1) Except as otherwise provided in this policy, a person who makes written application on a form provided by the Company

(a) on or before the date of becoming eligible will be insured on the date of becoming eligible;

(b) within 31 days after the date of becoming eligible, will be insured on the date of completion of the application;

(c) later than 31 days after the date of becoming eligible, will be insured only upon submission, without expense to the Company, of evidence of insurability satisfactory to the Company, and the insurance will become effective on the date of receipt of the evidence by the Policyholder.

(2) (a) The insurance in respect of an eligible person who is not actively at work, due to bodily injury or disease, on the date on which the insurance would otherwise become effective, or

(b) any increase in insurance in respect of an insured person who is not actively at work, due to bodily injury or disease, on the date on which the increase in insurance would otherwise become effective,

will become effective on the date on which the person returns to active work.

The Company will have the right to require satisfactory medical evidence, without expense to the Company, in order to establish the date on which the person is physically and mentally fit to return to active work.

Termination of Insurance of an Insured Person

(1) Except as otherwise provided in this policy, the insurance (in whole or in part) of an insured person will automatically terminate on the date on which the insured person ceases to be eligible for that insurance.

(2) Where an insured person would otherwise cease to be eligible for insurance because of illness or injury, the insured person will continue to be eligible for insurance until the date of termination.

(3) Where an insured person ceases to be eligible for insurance because of a temporary work stoppage, the insurance may be continued subject to the approval of the Policyholder and the Company.  Otherwise, the insurance of the insured person will cease on the date of commencement of the work stoppage.

(4) Where an insured person fails to disclose to the Company every fact material to the insurance under this policy, or misrepresents such facts, the insurance in respect of that person will be voidable at the option of the Company.

GENERAL PROVISIONS (1)

The Contract

(1) This policy and the application therefor, a copy of which is attached to and forms a part of the policy, constitute the entire contract of insurance between the Policyholder and the Company. The Policyholder during the continuance of the policy will be a Policyholder of the Company and the only Policyholder in respect of the insurance under the policy, and as such will be entitled to one vote at all annual and special general meetings of the Company.

(2) This policy may be amended with the approval of the Policyholder and the Company, or terminated as herein provided, at any time without the consent of the persons insured under it, but any amendment or termination will be without prejudice to any claim arising prior to the date of amendment or termination of the policy.

(3) This policy may not be amended nor may any provision in the policy be waived except by endorsement or rider signed by the officials of the Company authorized to sign policies.

Incontestability

The statements made by the Policyholder in the application, other than fraudulent statements, will be deemed to be true and incontestable after this policy has been in force for 2 years. The statements made by any person in the person's application (or insurability report, if any) in respect of insurance under the policy, other than fraudulent statements or statements erroneous as to age, will be deemed to be true and incontestable after such person has been insured hereunder for 2 years.

Currency of Policy

The currency in respect of this policy is Canadian.

Period of Grace

A period of grace of 31 days is allowed for the payment of each premium during which period the policy will continue in force unless the Policyholder has previously notified the Company that the policy will terminate at the end of the period for which the last premium was paid. If a premium is not paid before the expiration of the period of grace, the policy will terminate at the end of the period of grace, but the Policyholder will be required to pay to the Company any premium unpaid at the date of termination.

Dividends

This policy will participate in the surplus distribution of the Company, to the extent and in the amount determined by the Company. Such participation will be in the form of a dividend which will be allotted as at the end of the policy year and will be paid to the Policyholder, if all premiums due prior to the end of the policy year have been paid.

GENERAL PROVISIONS (2)

Where this policy terminates, the date of termination will be considered to be the end of a policy year, for the purpose of this section.

## Inspection of Payroll

The Company will have the right to inspect at any time the payroll of the Policyholder and any other records of the Policyholder relevant to this policy in order to verify the amount of insurance to which an insured person is entitled, the premium charged and any other matter relating to insurance under the policy.

## Assignment

The rights and interests of an insured person under this policy are assignable and should be filed with the Company.

## Termination of Policy

(1) This policy will lapse when a premium has not been paid before the end of the grace period. At that time, the Company will notify the Policyholder in writing of the lapse and offer reinstatement terms. If these terms are accepted and overdue premiums are paid, the liability of the Company will continue uninterrupted. If reinstatement terms are not accepted the liability of the Company will cease effective at the end of the period of grace.

(2) The Policyholder may terminate this policy by giving written notice to the Company. The date of termination of the policy will be the date of receipt of such notice or the termination date stated in the notice if later. If the date of termination does not fall on a premium due date, the Policyholder will be required to pay to the Company the pro-rata premium for the period from the last premium due date to the date of termination.

(3) The Company may terminate this policy on the first policy anniversary or on any monthly premium due date following the first policy anniversary by giving written notice of termination to the Policyholder at least 60 days in advance of the date of termination.

(4) Except as otherwise provided in this policy, the insurance of all insured persons will immediately cease upon termination of this policy.

GENERAL PROVISIONS (3)

Payment of Insurance

(1) On the death of an insured person from any cause, including self-destruction while sane or insane, the Company will pay the amount, as determined from the Schedule of Benefits in the attached Appendices, for which the person was insured on the date of death.

(2) Any claim under this provision must be made in writing to the Company at its Head Office giving proof satisfactory to the Company of the claim and of the title of the claimant.

Optional Methods of Settlement

(1) Subject to subsection (2), an insured person, or in the absence of an election by the insured person, the beneficiary may elect one of the following optional methods of settlement in lieu of payment in one sum:

(a) Deposit at interest - The Company will retain the insurance proceeds on deposit. Interest at the rate of not less than 3 1/2% per annum, and such additional interest as may be determined by the Company from time to time, will accrue on the balance of the deposit and will be paid in cash at each anniversary of the date of deposit except that no interest will accrue after the death of the beneficiary or on any amount withdrawn prior to the first anniversary of the date of the deposit. The Company will have the right to determine from time to time the minimum amount of any withdrawal, and may defer for a period not exceeding 30 days the payment of any withdrawal requested.

(b) Income - The Company will pay the insurance proceeds to the beneficiary in the form of an income payable either for a guaranteed period of years or for the lifetime of the beneficiary with or without a guaranteed period, the amount of the income to be determined in accordance with the income options available under individual life insurance policies being issued by the Company at the time the election is made.

(2) The Optional Methods of Settlement are subject to the following conditions:

(a) The minimum amount of insurance proceeds which may be applied under any option for any one beneficiary is $1,000. The income option is available only where the income is at least $10. per month for any one beneficiary.

(b) The election of an option must be made in writing to the Company at its Head Office.

(c) The beneficiary must be a natural person entitled to receive payment in that person's own right.

(d) Election of the option must be made not later than one year following the death of the insured person.

GROUP LIFE INSURANCE PROVISION (1)

(e) The beneficiary will not have the right to change or vary an option elected by the insured person unless the Company at its Head Office has been otherwise directed in writing by the insured person.

Beneficiary

The beneficiary of an insured person is as stated in the person's application unless subsequently changed.  If an insured person has not appointed a beneficiary or if no beneficiary is alive at the date of death of the insured person, the insurance of the insured person will be paid to the estate of the insured person.

Extended Benefit on Termination of Insurance

Where insurance of an insured person terminates while this provision continues in force, the amount of insurance terminated with respect to an insured person will be paid by the Company if death occurs within 31 days of the date of termination of the insurance.

Conversion Privilege

(1) Where insurance of an insured person terminates, the insured person will, subject to subsection (2) and without supplying evidence of insurability, be entitled to an individual policy on the life of the insured person on a One Year Term, a Term to Age 65, or on any Whole Life plan which provides for uniform premiums and a uniform death benefit and which is regularly issued by the Company for the amount of the individual policy.

(2) The issue of the individual policy will be subject to the following conditions:

(a) If this provision continues in force,

    (i) The amount of the individual policy will not exceed the lesser of (1) the amount of the insurance terminated, or (2) the maximum amount of insurance for which the person has been insured under this policy less the total amount of individual insurance still in force on the person's life which was previously obtained under the conversion privilege of this policy, and

    (ii) The individual policy will take effect 31 days after the insurance is terminated.

(b) If this provision terminates,

    (i) an individual policy is available only to a person who has been continuously insured under this policy during the five year period immediately preceding the termination of the provision, and

GROUP LIFE INSURANCE PROVISION (2)

(ii) the amount of the individual policy will not exceed $5,000 or 25% of the amount of insurance terminated, whichever is greater, reduced by any amount of insurance for which the person may be or may become eligible under any group policy issued within 31 days after the date of the termination, and

(iii) the individual policy will take effect on completion of the application and payment of the required premium.

(c) Written application for the individual policy must be submitted to the Company within 31 days after the insurance is terminated and the required premium must be paid with the application.

(d) The individual policy will not contain a Total Disability or Accidental Death Provision.

(e) The premium for the individual policy will be in accordance with the scale of premiums in use by the Company at the effective date of the individual policy for the class of risk to which the applicant belongs and taken at the applicant's insurance age at the effective date.

(f) The individual policy will be in exchange for all benefits terminated under this provision and will contain the same provisions as are regularly included by the Company in new policies issued at the date of application.

(g) The One Year Term plan and the Term to Age 65 plan will not be available to an insured person who has attained 65 years of age.

(3) Where a part of the group of insured persons is withdrawn from the group and the persons in the part withdrawn cease to be insured persons, this provision will be considered to have terminated in respect of such persons for the purpose of this Conversion Privilege.

GROUP LIFE INSURANCE PROVISION (3)

## APPENDIX A

Eligibility to be an Insured Person

A person is eligible to be an insured person

(a) on July 1, 1980 if on the day prior to such date the person is insured under G 14900, or

(b) on July 1, 1980 if the person is actively employed by the participating affiliate, Northern Telecom Systems Limited on that date, or

(c) on the date that the person commences active employment with the Policyholder if the person's employment with the Policyholder commences on or after July 1, 1980,

provided that the person is insured under Group Policy G 13900 issued to the Policyholder by the Company and provided the person is a salaried or hourly employee of Northern Telecom Limited, or its participating affiliates or a commission salesman of Northern Telecom Systems Limited and is designated by the Policyholder to be part of the Managerial and Non Negotiated groups.

Schedule of Benefits

Classification of Insured Persons

| Classification Of Insured Persons | Optional Life Insurance |
|---|---|
| 1. All Employees | An amount equal to   50% * or |
| | 75% * or |
| | 100% * or |
| | 125% * or |
| | 150% * or |
| | 175% * or |
| | 200% * |

* of the insured person's rate of basic salary, calculated on an annual basis, rounded to the next higher $1,000 of insurance and subject to a minimum amount of insurance of $10,000.

A person may elect to be insured for one of the above optional amounts of insurance within 31 days of becoming eligible under this policy and at no other time without submission of evidence of insurability satisfactory to the Company.

An insured person may elect to increase the amount of optional insurance subject to a maximum of 200% of annual rate of earned income, upon acquiring a spouse or a dependant or an additional dependant without submitting evidence of insurability.

An insured person may elect to decrease or terminate the amount of optional insurance at any time.

continued...