```
              IN THE UNITED STATES BANKRUPTCY COURT
                FOR THE DISTRICT OF DELAWARE

IN RE:                        )    Chapter 11
                              )
                              )
NORTEL NETWORKS, INC.         )    Case No. 09-10138(KG)
                              )
                              )    Courtroom 3
                              )    824 Market Street
          Debtors.           )    Wilmington, Delaware
                              )
                              )    September 1, 2010
                              )    11:30 a.m.


                 TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE KEVIN GROSS
             UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For Debtor:              Morris, Nichols, Arsht &
                         Tunnell, LLP
                         BY:  DEREK ABBOTT, ESQ.
                         BY:  ANNIE CORDO, ESQ.
                         1201 North Market Street
                         P.O. Box 1347
                         Wilmington, DE  19899-1347
                         (302)658-9200


                         Cleary, Gottlieb, Steen &
                         Hamilton, LLP
                         BY:  JAMES BROMLEY, ESQ.
                         BY:   JOSEPH LANZKRON, ESQ.
                         One Liberty Plaza
                         New York, NY  10006
                         (212)225-2000



ECRO:                    GINGER MACE

Transcription Service:   DIAZ DATA SERVICES
                         331 Schuylkill Street
                         Harrisburg, Pennsylvania 17110
                         (717) 233-6664
                         www.diazdata.com


Proceedings recorded by electronic sound recording;
transcript produced by transcription service
```

```
 1   APPEARANCES:
     (Continued)
 2
 3   For the Creditors'
        Committee:                   Richards, Layton & Finger, PA
                                     BY:  CHRIS SAMIS, ESQ.
 4                                   One Rodney Square
                                     920 North King Street
 5                                   Wilmington, DE  19801

 6   For United States
        Joint Administrator:         Young, Conaway, Stargatt &
 7                                   Taylor, LLP
                                     BY:  MARIS FINNEGAN, ESQ.
 8                                   The Brandywine Building
                                     1000 West Street, 17th Floor
 9                                   P.O. Box 391
                                     Wilmington, DE  19801
10                                   (302)571-6600

11   For Ernst and Young
        as Monitor:                  Allen & Overy, LLP
12                                   BY: ROWENA WHITE, ESQ.
                                     1221 Avenue of the Americas
13                                   New York, NY 10020
                                     (212) 610-7300
14
                                     Buchanan, Ingersoll & Rooney
15                                   BY:  MARY CALOWAY, ESQ.
                                     The Brandywine Building
16                                   1000 West Street, Suite 1410
                                     Wilmington, DE  19801
17                                   (302)552-4200

18
19   VIDEO APPEARANCES:

20   For Canadian Counsel:           Ogiluy Penault
                                     MS. STAM, ESQ.
21                                   Suite 3800
                                     Royal Bank Plaza, South Tower
22                                   200 Bay Street
                                     P.O. Box 84
23                                   Toronto, Ontario  M5J Z24
                                     Canada
24                                   (416)216-2327

25
     For Canadian Monitor:           MR. PASQUERELLA, ESQ.
```

1  WILMINGTON, DELAWARE, WED., SEPTEMBER 1, 2010, 11:41 A.M.

2          THE CLERK:  Please rise.

3          THE COURT:  Good morning, everyone.  Thank you

4  and please be seated.  It's good to see you all.  Good

5  morning, Mr. Abbott.

6          MR. ABBOTT:  Good morning, Your Honor.  Derek

7  Abbott along with Mr. Bromley and others on the Nortel team.

8          THE COURT:  I guess we should wait for -- Mr.

9  Justice Marowits is on the bench.  Thank you, I'm sorry.

10          MR. ABBOTT:  Your Honor --

11          JUSTICE MAROWITS:  Good morning.

12          THE COURT:  Good morning, sir.

13          JUSTICE MAROWITS:  Good morning, Judge Gross and

14  counsel.  And Judge Gross and I have in accordance with our

15  practice have conferred on the procedural aspects of today.

16  And counsel subject to your views and the views of others in

17  the Court posts in Delaware and Toronto, the intention was

18  to proceed with the joint motion hearing the evidentiary

19  aspect of the U.S. proceeding first, followed by the

20  Canadian aspects, followed by a brief recess where Judge

21  Gross and I will confer on procedural matters.  And then I

22  gather at the conclusion if -- I'd like to recess and if our

23  decision is to deliver reasons we will do and that would

24  conclude the joint hearing following which my understanding

25  is that Judge Gross has some matters that are separate that

1  will be proceeding immediately thereafter.

2          THE COURT:  So in other words, for those here in

3  Delaware, we would proceed with the bid procedure motion

4  first.  The evidence would proceed as we've done in the past

5  here in Delaware.  Then the Canadian Court would hear

6  matters there and then we would recess and come back with

7  our ruling.  All right.

8          MR. ABBOTT:  Your Honor --

9          THE COURT:  And I know there are other matters on

10 the agenda to go through, but we can --

11         MR. ABBOTT:  Your Honor, those have all been

12 adjourned in any event so --

13         THE COURT:  Yes.

14         MR. ABBOTT:  -- we can proceed right to the

15 procedures motion and I'll cede the podium to Mr. Bromley,

16 if I may.

17         THE COURT:  You may, thank you, Mr. Abbott.

18         MR. ABBOTT:  Thank you, Your Honor.

19         THE COURT:  Yes.  Mr. Bromley, good morning.

20         MR. BROMLEY:  Good morning, Judge Gross.  Good

21 morning, Mr. Justice Marowits.  I want to thank you both for

22 accommodating us today.  And in particular, Mr. Justice

23 Marowits, thank you very much for coming in on a day that

24 you were not scheduled to be in Court.  We very much

25 appreciate that.

1          The transaction that we're here before both

2    Courts today is a transaction which we have referred to as

3    the Pluto transaction.  We always have code names and this

4    has been referred internally as the Pluto transaction so I

5    may slip into that vernacular every once in awhile and I

6    apologize in advance.  The business is known as the passport

7    or MSS business as well.  And it is the final operating

8    business that Nortel has.  There are certain other assets in

9    various jurisdictions that are continuing to be evaluated

10   included the intellectual property --

11          THE COURT:  Yes.

12          MR. BROMLEY:  -- that Nortel has.  But in terms

13   of operating businesses, particularly on a worldwide basis,

14   this is the final business to be sold.  And we're very happy

15   to be before both Courts today with a transaction that has

16   been put together over a series of months and has been able

17   to come to fruition in a very short timeframe over the past

18   couple of weeks.

19          It is the -- it is a business that in effect is a

20   carve out of a carve out.  If you recall when Nortel filed

21   these proceedings around the world, the businesses had been

22   operated not on a legal entity basis per se, but across

23   multiple jurisdictions.  And one of the transactions that we

24   closed last year was for the Metro Ethernet business.  And

25   that sale was accomplished and closed, I believe in the

1  March timeframe to the Sienna Corporation.

2          In effect, the business that we're talking about

3  today is a carve out from the MEN business.  And the process

4  for marketing this business began almost a year ago in the

5  fourth quarter of 2009 when it became clear that the sale

6  process for the MEN business was unlikely to include the

7  passport business.

8          THE COURT:  Yes.

9          MR. BROMLEY:  The actual aggressive marketing of

10  the passport business began in earnest in February of 2010.

11  And so there has been a very substantial amount of work that

12  has been done.  It is a transaction that is important for a

13  variety of reasons, not least of which is the fact that this

14  like other transactions requires that the sellers provide

15  transition services to the purchaser because the timing of

16  this transaction lags the other transactions that have been

17  entered into.

18          The timing that we're dealing with here is very

19  important as the transition services under the proposed

20  agreement are scheduled to terminate at the end of June of

21  2011.  And so there's a seven month timeline that we're

22  dealing with and any delays in the approval of the

23  transaction put at risk the expense of the transition

24  services that -- and particularly the risk that there may be

25  transition services that need to be provided only to this

1  buyer which would be difficult to do on an economic basis.

2            With that being said, I think we are all very

3  happy to be here with a transaction that we believe will

4  avoid those issues and a transaction that we believe is in

5  the best interest of all the various estates including in

6  particular the U.S. estates.

7            Your Honor, as a procedural matter, I would note

8  that we have had for past transactions a fairly steady cast

9  of characters, in particular Mr. Reidel [ph] and Mr. Murray.

10           THE COURT:  Yes.

11           MR. BROMLEY:  And in connection with the motion

12 that we filed here in the U.S., we did file a declaration of

13 Mr. Reidel --

14           THE COURT:  Yes.

15           MR. BROMLEY:  -- in support.  As it turns out,

16 Mr. Reidel has been called out of town suddenly and so we

17 are not able to have Mr. Reidel with us. His declaration

18 nevertheless has been filed and we would in light of the

19 lack of objections, ask that it be considered and

20 incorporated into the record.  But in Mr. Reidel's stead, we

21 also have someone present not here in Court in Delaware, but

22 present in Court in Toronto, Mr. Kush Dadyburjor who is the

23 Vice President of Global M&A for Nortel and who's been

24 heavily involved in this and other transactions.  We will

25 note that Mr. Dadyburjor has filed a declaration in support

1  of the Canadian pleadings.  We would ask that that

2  declaration be incorporated into the record here as we have

3  done in other circumstances.  And we will make a proffer of

4  Mr. Dadyburjor and his testimony here in Delaware and he is

5  available in Toronto in the Court and subject to cross

6  examination, if necessary.

7           THE COURT:  All right.

8           MR. BROMLEY:  We don't anticipate that, but that

9  from a procedural standpoint a little bit different.  We do

10 have Mr. Murray here in Court so we can proceed on that

11 basis as well.

12          With that as background, Your Honor, I'd like to

13 just leap right into the evidentiary sections so that we can

14 move this along.  I would note from a procedural standpoint,

15 we do not have any objections to the relief sought here.

16          THE COURT:  Yes.

17          MR. BROMLEY:  There has been a single objection

18 filed.  It's filed by the City of Grapevine, Texas.  There

19 is a facility that the Nortel Networks, Incorporated has in

20 Richardson, Texas and it is a protective filing in

21 connection with any assets that may exist and being

22 transferred as part of this transaction in the State of

23 Texas.  We have had email confirmation from counsel to the

24 City of Grapevine that they do not have any objection to the

25 relief being sought today which are the bid protections and

1  the bid process.  They do, however, reserve their rights to

2  object at the sale hearing.  We believe --

3          THE COURT:  Yes, I understand that, Mr. Bromley.

4  I did have an opportunity to read their objection and

5  clearly it did, it does address the sale itself.

6          MR. BROMLEY:  So on that, I don't think we need

7  to address the Grapevine objection and hopefully we'll --

8  for today, hopefully we'll be able to resolve that by the

9  time of the sale hearing.

10          I would also note, Your Honor, that as we have

11  been doing throughout the case, we have worked very closely

12  with the Official Committee of Unsecured Creditors and the

13  bondholders group to make sure that they were involved and

14  aware of all of the negotiations and the terms.  And we are

15  happy to report that both groups support the relief sought

16  today.

17          So with that as background, Your Honor, if I

18  could, I would like to start with the proffer of Mr. Kush

19  Dadyburjor.  And if I could ask Ms. Stam [ph] to confirm for

20  you that Mr. Dadyburjor is indeed in the courtroom in

21  Toronto, I would appreciate that.

22          THE COURT:  Ms. Stam?

23          MS. STAM:  Good morning, Judge Gross and Your

24  Honor.  Mr. Dadyburjor is present in the courtroom in

25  Toronto.

1          THE COURT:  Thank you, Ms. Stam.

2          UNKNOWN SPEAKER:  Good morning, Ms. Stam.

3          MR. BROMLEY:  And unless --

4          THE COURT:  Yes, you may proceed with his

5    proffer.

6          MR. BROMLEY:  Thank you very much, Your Honor.

7          Your Honor, Mr. Kush Dadyburjor is the Vice

8    President of Global Mergers and Acquisitions for Toronto.

9    And he is present and available to testify today with

10   respect to the debtors' motion to sell the business known as

11   the Multi Service Switch Business, BMSS business, the

12   passport business, or the Pluto business are all synonymous.

13          If called to testify today, Your Honor, Mr.

14   Dadyburjor would testify that he is the Vice President of

15   Global M&A for Nortel Networks, Limited, the direct

16   corporate parent of the debtor, Nortel Networks,

17   Incorporated.  He's held that position since the Year 2000.

18          He would testify that his job responsibilities

19   include the execution of M&A transactions globally with

20   teams in the United States and in Canada reporting to him.

21          That he was the lead negotiator in the sales of

22   the Enterprise, MEN, and Sea Best Businesses previously

23   approved by this Court and Mr. Justice Marowits.  And that

24   he has completed over 50 transactions for Nortel over the

25   last 15 years.

1          He has also held senior positions in the M&A

2    Group at Nortel since 1995 and has served in various finance

3    roles for Nortel since 1991.

4          He has earned an MBA from McGill University in

5    Montreal in 1991.

6          If called to testify, he would testify that he is

7    managing the sale an auction process for the MSS business,

8    including acting as the lead negotiator with various

9    interested parties, as well as, in connection with the

10   selection of PSP Holding, LLC, as the stalking horse bidder

11   that we have brought before you today.

12         He would testify that PSP is a special

13   acquisition vehicle created by Marlin Equity Partners, a

14   well known private investment firm with over $1 billion

15   under management and a history of acquiring businesses.

16         Mr. Dadyburjor would testify that the assets

17   being sold essentially consist of Nortel's MSS Business, a

18   business that provides data network infrastructure solutions

19   to telecom service providers and large enterprise customers

20   throughout the world.  That these solutions allow customers

21   to integrate data, voice, and video applications onto a

22   single network and connect users in multiple locations.

23         He would testify that the MSS business supports

24   former Nortel business units sold in prior Nortel asset

25   sales with hardware, software, and services.  And that the

1  MSS business sells its base platform to these former Nortel

2  business units which then add hardware and software to drive

3  product development for both wireless and wire lined

4  markets.

5           He would testify that the environment in which

6  the MSS business operates is highly competitive.  That the

7  cost of rapid technological development is high and the

8  requirements of scale to compete in the industry are

9  substantial.

10           He would testify that as a result of the global

11  economic downturn, Nortel has experienced significant

12  pressure on its businesses, including the MSS business and

13  as a result has been faced with the decision to have to sell

14  the business.

15           He would testify that Nortel's principal

16  competitors in this area include Sysco, Erickson, Sienna,

17  and a number of smaller vendors around the world.

18           He would testify that while a significant value

19  exists in the MSS business, the full value of these assets

20  cannot be realized in a standalone restructuring.  And that

21  in addition, the potential purchase price that could be

22  realized through a sale of the assets is likely to decline

23  over time if the assets remain unsold.  And that the full

24  value of the assets may not be realized if a sale is not

25  consummated quickly.

1    He would testify that as a result, he believes

2  that selling the assets now is the best way to maximize

3  value for the estates in the various countries.

4    He would testify that Nortel first began

5  preparing for the divesture of this business in the fourth

6  quarter of 2009 and announced its intent to sell this

7  business in February of 2010.  In connection with this

8  initial effort, Nortel in consultation with Lizzard, it's

9  financial advisors, approached 51 parties likely to be

10  interested and able to acquire the business including a mix

11  of financial investors and strategic buyers.  That an

12  information memo was provided to 27 parties.  That of the

13  parties who submitted expressions of interest, Nortel

14  conducted management presentations with 18 parties and

15  ultimately gave five parties access to the electronic data

16  room containing confidential diligence materials regarding

17  the business.

18    He would testify that these marketing efforts

19  resulted in four parties submitting bids in May of 2010.

20  And that PSP and one other entity continued to seriously

21  pursue a transaction throughout the sale process.

22    He would testify that Nortel entered into an

23  exclusivity arrangement with the additional bidder.  That

24  included a sunset provision, but that it was impossible to

25  reach an agreement with this other bidder and the

1  exclusivity arrangement expired.

2          He would further testify that Nortel has remained

3  in contact with the additional bidder and other potential

4  bidders after the expiration of the exclusivity period and

5  that the hope is that each of these parties will be able to

6  participate in the auction.  And it is his view that they

7  would be well positioned to do so.

8          If called to testify, Mr. Dadyburjor would

9  further testify that he's familiar with the asset sale

10 agreement that has been submitted with the pleadings.  And

11 that the assets involved in the stalking horse asset sale

12 agreement are substantially all of the North American,

13 Caribbean, and Latin American, and Asian assets of the NSS

14 business.

15         He would testify that certain other Nortel

16 affiliates primarily in AMIA have entered into separate

17 agreement.  This has been the case similar to what we did in

18 other transactions.

19         THE COURT:  Yes.

20         MR. BROMLEY:  And that the ASA for the AMIA

21 region replicates the main provisions of the ASA before

22 these two Courts dealing with among other things, the

23 definition of the business being transferred, the covenants

24 of the selling parties, the assignment of contracts, and the

25 conditions to closing and termination rights.

1          In addition, the two agreements envision a single
2   common regime with respect to the purchase price
3   adjustments, the breakup fee expense reimbursement, and the
4   closing of the agreements must occur simultaneously.  The
5   termination as well of either agreement would entitle a
6   party to terminate the other agreement.  So there is
7   substantial interdependence between the two agreements.
8          Mr. Dadyburjor would testify that regarding the
9   agreements involved in the transactions, that he is very
10  familiar with those agreements and those obligations and
11  that with respect to purchase price, the ASA provides that
12  the estimated purchase price is $39 million in cash, subject
13  to working capital and other adjustments.
14         He would also testify that to facilitate the
15  sale, the debtors, in particular the U.S. debtors, plan to
16  assume certain pre-petition executory contracts exclusively
17  related to the business and assign those agreements to PSP.
18         Mr. Dadyburjor would testify that based on the
19  consideration of potential transactions involving the MSS
20  business, it is the view of the various Nortel estates that
21  the proposed transactions represents the best proposal
22  available for the assets subject to the receipt of a better
23  bid through the auction process.
24         He would also testify that the asset sale
25  agreement is accompanied by a number of ancillary agreements

1  dealing with various issues.  Among those include the

2  transition services agreement which as I mentioned will

3  commence at closing and continue for a period ending on June

4  30, 2010, subject to possible extensions in the event that

5  the sale hearings do not take place by September 30.

6          And so when -- to leave the proffer for a moment,

7  when we talk about the need to obtain swift approval, we do

8  have the September 30 issue relating to the extension of the

9  TSA.

10         THE COURT:  Yes.

11         MR. BROMLEY:  Now back into the proffer.  For the

12 IPLA, the intellectual property license agreement which we

13 have entered into in other transactions, there is one here

14 as well.  There is a trademark license agreement, a loaned

15 employee agreement, and certain agreements relating to real

16 estate and the leasing and sub-leasing of certain real

17 property.

18         Mr. Dadyburjor would testify that the forms of

19 each of these agreements were filed under seal.  And certain

20 of the core parties have been provided access to these

21 documents, including the Official Committee of Unsecured

22 Creditors and the bondholder group.  In addition, any party

23 that signed a confidentiality agreement and becomes a

24 potential bidder under the bidding procedures will have

25 access to these documents.

1          He would also testify that in his opinion, the

2  ASA as publically filed contains sufficient information to

3  allow creditors of the debtors to evaluate the transaction.

4  However, it is also important that certain specific

5  information regarding customer relationships become --

6  remain confidential as has been the case in other business

7  sales that we have had approved by both of these Courts.

8          And that is because a significant aspect of the

9  value of the business and assets being sold is the

10  established relationships that the debtors maintain with

11  their customers.  And that the customer contracts are of

12  critical value to any prospective purchaser of the business.

13  And that if the list of counterparties and other terms

14  relating to the contracts were made publically available,

15  the value of the transaction would decline and PSP may

16  become less likely to consummate the transaction.

17          So, therefore, there is a request being made

18  today before this Court that certain elements of the

19  materials filed are filed under seal.  We have a large

20  binder of those materials present.

21          THE COURT:  Yes.

22          MR. BROMLEY:  In the event the Court would like

23  to review them.  And, of course, we will also make those

24  materials available to the U.S. Trustee on their request.

25          THE COURT:  And they were submitted to chambers

1    under seal and I did have an opportunity to review them, Mr.

2    Bromley, thank you.

3              MR. BROMLEY:   Thank you, Your Honor.

4              Mr. Dadyburjor would testify that he's also

5    generally familiar with the bidding procedures submitted to

6    the Court today.   That these bidding procedures were

7    negotiated by Nortel with PSP and PSP's counsel at arm's

8    length and in good faith.   And that in his opinion, the

9    bidding procedures are reasonable and substantially similar

10   to the procedures approved and proven effective in recent

11   asset sales in these cases.

12             He would also testify that the length of the

13   proposed auction process which envisions an auction on the

14   24th of September, to be reasonable in balancing the desire

15   to induce other bidders to submit competing bids, as well

16   as, the importance of preserving the value of the business

17   through a fast and efficient process.

18             Mr. Dadyburjor would testify that Nortel along

19   with its advisors had adequately tested the market for

20   potential purchasers and that any new bidder not previously

21   involved in the sale process could easily be brought up to

22   speed on the state of the business and the nature of the

23   assets.   And that Nortel intends to take measures to ensure

24   that the auction and sale process is fair and these measures

25   include management making itself available for -- to answer

1  questions and provide additional diligence materials.  And

2  that processes are in place to give bidders fast access to

3  the electronic data room.

4        Mr. Dadyburjor would testify that if PSP is

5  chosen as the successful bidder, the management team would

6  include a Mr. Pat DiPietro [ph], the owner of Samite [ph]

7  Technologies Corporation, a company formed in July 2010.

8  And that Mr. DiPietro is a venture capitalist with

9  experience in the technologies base and that he's also a

10 former employee of Nortel, though he left Nortel in 2001.

11 And that in connection with this exercise, Mr. DiPietro has

12 worked with two other individuals who formally worked at

13 Nortel.  But that there was no overlap with any of these

14 people and the business that's being sold and that there's

15 no benefit or preference that was given to Mr. DiPietro or

16 the other former employees of Nortel.

17       He would testify that all negotiations with PSP

18 were on an arm's length basis and that PSP was also not

19 favored over any other party.

20       He would testify that 27 potential bidders have

21 signed confidentiality agreements.  That there is the

22 ability for other bidders to enter this process and that no

23 one has been intentionally omitted from the process.

24       Mr. Dadyburjor would further testify that it's

25 his opinion that the benefit of using a stalking horse

1  bidder in an asset sale is that it provides a solid offer as

2  a starting place or floor for the bidding and that the

3  negotiation of an ASA helps expedite the bidding process by

4  providing a reasonable starting point for negotiations.

5          He would testify that PSP has spent considerable

6  time negotiating the asset purchase agreement and that at

7  the moment, PSP is unique in its ability to service the

8  stalking horse bidder.

9          He would testify that the various Nortel estates

10  in consultation with their advisors have determined that

11  it's in the best interest to sign the stalking horse

12  agreement and to commence the auction at this time.

13          He would testify that the ASA and bidding

14  procedures contemplate bid protections described more

15  extensively in the motion, including the payment of a

16  breakup fee in the amount of $2.5 million, less whatever is

17  paid as an expense reimbursement which would be paid to

18  cover reasonable and documented fees, costs, and expenses.

19  And the expense reimbursement is capped at $1.5 million.

20  The ASA provides for numerous additional conditions

21  surrounding the bid protections.

22          He would also testify that if the bid protections

23  had to be paid pursuant to the terms of the ASA, two-thirds

24  of the bid protections would be paid by the U.S. and

25  Canadian debtors with the remaining one-third paid by AMIA

1    debtors.

2              He would testify that in his experience bid

3    protections such as those contained in the ASA provide a

4    benefit to the estate because they induce the stalking horse

5    bidder to commit to be bound by the agreement.  And the

6    bidding protections create stronger bid dynamics by

7    establishing a value for one bidder or another to own the

8    stalking horse position.

9              He would testify that in his opinion, the bid

10   protections included in this transaction are reasonable and

11   were arrived at through arm's length negotiations after

12   consultation with all major parties and interests including

13   the Official Committee of Unsecured Creditors, the

14   bondholder group, and the Canadian monitor.

15             He would also testify that he believes there is a

16   substantial risk that PSE would not -- PSP would not

17   continue to participate in the auction process if the bid

18   protections are not approved.

19             Mr. Dadyburjor would also testify that a side

20   agreement has been entered into by certain of the Canadian

21   and U.S. debtors that are sellers, as well as, certain of

22   their affiliates and the AMIA debtors.  And that the side

23   agreement provides for payments to the U.S. and Canadian

24   sellers for certain potential unrecovered costs of providing

25   IT services to the purchaser in connection with the TSA.

1  Those payments would be triggered when there are no other

2  purchasers of Nortel businesses receiving the IT services

3  under their other TSA's.

4          He would testify that the side agreement was

5  negotiated in good faith and is subject to approval at the

6  sale hearing.

7          He would also testify that it's important that a

8  portion of the side agreement be redacted and filed under

9  seal because it, too, contains certain sensitive commercial

10  information and that disclosure of this confidential

11  commercial information would be damaging to the various

12  debtor estates.

13          And that is the entirety of the proffer for Mr.

14  Dadyburjor, Your Honor.

15          THE COURT:  Thank you.  Thank you, Mr. Bromley.

16  Does anyone wish to cross examine, Mr. Dadyburjor?

17              (No audible response heard.)

18          THE COURT:  All right, hearing no one, does

19  anyone have any objection to the proffer being admitted into

20  evidence?

21              (No audible response heard.)

22          THE COURT:  Very well.  It is so admitted.

23          MR. BROMLEY:  Thank you, Your Honor.  And also to

24  ask for the admission of his declaration in the Canadian

25  proceeding.

1          THE COURT:  Yes.  Any objection?

2                    (No audible response heard.)

3          THE COURT:  None here and we'll hear from Canada

4  shortly, I assume.

5          MR. BROMLEY:  Your Honor, I'll move onto the

6  proffer for Mr. Murray.

7          THE COURT:  Yes.

8          MR. BROMLEY:  And I will try to keep this short

9  as you -- Mr. Murray is in the courtroom --

10          THE COURT:  Yes.

11          MR. BROMLEY:  -- once again and available to call

12  to be -- to testify if called.  And, Your Honor, is aware of

13  Mr. Murray's background with Lizzard so would ask that the

14  background that we've proffered I think on five or six other

15  occasions at least be incorporated into the record.

16          THE COURT:  It certainly is.

17          MR. BROMLEY:  He's still a graduate of the

18  Harvard Business School and Brown University.

19          THE COURT:  They haven't taken back the degrees.

20  Is that right?  I say jokingly for the record.

21                    (Laughter)

22          MR. BROMLEY:  Focusing on the efforts to market

23  and sell this business, the passport or MSS business --

24          THE COURT:  Yes.

25          MR. BROMLEY:  -- Mr. Murray would testify if

1    called that in February of 2010, Nortel began to explore the

2    potential sale of the MSS business.  And in connection with

3    those efforts, contacted approximately 51 parties, including

4    a mix of financial investors and strategic buyers.  That 27

5    confidentiality agreements were entered, management

6    presentations provided to 18 entities, and five interested

7    parties given access to the confidential diligence materials

8    resulting in serious discussions with at least three

9    potential bidders including the stalking horse bidder, PSP.

10           He would testify that aside from those contacted,

11    he is aware of no other obvious entities that would be

12    potentially interested in these assets.  That Lizzard and

13    Nortel performed a comprehensive search and he believes that

14    they have contacted between 90 and 100 percent of those

15    entities that might be interested.  And they have omitted no

16    entity intentionally and the goal was to approach every

17    entity that might be interested.

18           He would -- Mr. Murray would testify if called

19    that he's familiar with the asset sale agreement.  That

20    during the negotiation of the asset sale agreement, PSP was

21    represented by qualified counsel and financial advisors.

22    That the discussions were vigorous and contentious at times.

23    And no facts or circumstances arose during the course of

24    those negotiations that led him to believe that the PSP

25    transactions would not be on an arm's length basis.

1                    In addition, he would testify that in his

2    opinion, Nortel did not prefer PSP over any other potential

3    bidder.  He would testify that in his opinion, the net value

4    offered to Nortel from the transaction with PSP constitutes

5    rare and -- fair and reasonable value for the assets being

6    sold.

7                    In connection with the stalking horse and auction

8    process, he would testify that in his view, the highest and

9    best value can be achieved through an auction process and

10   that our experience in these cases to date have proven this

11   to be true.

12                   He would testify that several bidders besides PSP

13   have expressed serious interest in the assets and have

14   accessed the electronic data room.  And that in his opinion,

15   at least two and as many as four or five total potential

16   bidders have both the market expertise and financial means

17   to acquire and operate the MSS business.

18                   He would testify that PSP is farther along in the

19   completion of its due diligence and has spent considerable

20   time negotiating the asset sale agreement with Nortel and,

21   therefore, is a unique position today to serve as the

22   stalking horse bidder.

23                   He would testify that the various Nortel estates

24   in consultation with their advisors have determined that

25   it's in their best interest to sign the stalking horse

1    agreement and commence a formal auction process at this

2    time.

3            He would testify that in his view if the business

4    assets are not sold in the near future, the business

5    including the U.S. portion of the business would begin to

6    experience a decline in value and that he does not expect

7    the passage of time would result in other parties being

8    interested in serving as the stalking horse bidder.

9            With respect to the bid protections, Mr. Murray

10   would testify that in his experience the bid protections

11   involved in this transaction are reasonable.  The presence

12   of a stalking horse bidder contributes value in an auction

13   because bidding is most robust where a bid is on the table.

14           He would testify that there's a great benefit to

15   having a signed and announced deal.  And that customers are

16   comforted that there's a future for the business.

17           He would testify that in his experience the bid

18   protections such as those in the ASA provide a benefit to

19   the estate because they induce the stalking horse bidder to

20   be bound by the agreement even though it is subject to

21   higher and otherwise better offers.  And that bid

22   protections such as those here create stronger bid dynamics

23   which have proven in other circumstances in these cases to

24   be quite successful.

25           He would testify that the bid protections include

1   the payment of a breakup fee in the amount of $2.5 million,

2   less expense reimbursements which are capped at $1.5

3   million.  That there are conditions attached to the

4   triggering of the bid protections and if payable, two-thirds

5   of the bid protections will be paid by the U.S. and Canadian

6   debtors and the remaining one-third paid by the AMIA

7   debtors.

8        He would testify that the base purchase price for

9   the MSS assets is $39 million.  And that in his opinion, the

10  relationship of the bid protections to the base purchase

11  price are reasonable under the circumstances.  That the deal

12  itself is complex and the complexity of the transaction is

13  similar to the other transactions that these Courts have

14  approved.  Even though those transactions have been larger,

15  the amount of work necessary to do this transaction is

16  substantially similar.

17       He would testify that he believes there's a

18  serious risk that PSP will not continue to participate in

19  the auction process if the bid protections are not approved

20  by this Court.  And that losing PSP's bid would detrimental

21  to all of the Nortel estates, including the U.S. estates in

22  particular.

23       He would testify that in his view, the bidding

24  procedures were negotiated on an arm's length basis, that

25  they are reasonable and similar to the procedures approved,

1  and proven effective in other sales in these cases.

2          He would testify that the length of the proposed

3  auction process which is admittedly somewhat short is

4  reasonable in balancing the desire to induce other bidders

5  to submit competing bids and to participate in an auction

6  against the importance of preserving the value of the

7  business through an efficient process.

8          He would testify that other potential interested

9  parties should have the knowledge and ability to participate

10  in the auction process notwithstanding the timeframe,

11  particularly given the fact that this process has been going

12  on since February of this year and there are several parties

13  who have already devoted substantial time and attention to a

14  potential transaction.

15          In addition, any delay in approval of the process

16  or any delay of the process itself puts at risk the timing

17  with respect to the TSA exposure, as well as, puts the

18  performance of the business at risk.

19          So in his view, Mr. Murray would testify that the

20  timing is both necessary and appropriate under the

21  circumstances.

22          And, Your Honor, that concludes the proffer for

23  Mr. Murray.

24          THE COURT:  Thank you, Mr. Bromley.  Once again,

25  does anyone wish to cross examine, Mr. Murray?

1                    (No audible response heard.)

2              THE COURT:  All right, then the proffer is

3    certainly admitted into evidence.

4              MR. BROMLEY:  Thank you, Your Honor.  And I'll --

5              THE COURT:  Should we address Mr. Reidel's

6    declaration while I'm thinking of it as far as its admission

7    into evidence?

8              MR. BROMLEY:  Yes, please.

9              THE COURT:  Does anyone object?

10                   (No audible response heard.)

11             THE COURT:  All right it is so admitted then, Mr.

12   Bromley.

13             MR. BROMLEY:  Thank you very much, Your Honor.

14   If I can just run through very quickly the standards in the

15   U.S. Law and then we can finish the U.S. portion and turn it

16   over to Canada.  Is that --

17             THE COURT:  Very well.

18             MR. BROMLEY:  Your Honor, what we're looking at

19   here is the approval of certain limited relief, but not

20   relief that is unfamiliar to this Court or indeed to Mr.

21   Justice Marowits.  The bidding procedures that we have

22   sought approval for and the related protections and auction

23   procedures are substantially similar to those that we have

24   had approved in numerous other sale transactions and have

25   proven very effective in managing the process.

1          The dollar amount of the breakup fee is somewhat
2   high on a percentage basis when looking at the entirety of
3   the purchase price consideration, but there are two
4   mitigating factors that relate to that.  One is the proceeds
5   that will be generated by the sale are obviously subject to
6   allocation in accordance with the prior the IFSA that we had
7   filed and had approved in June of last year.  They will go
8   into the black box and it is not clear exactly how much of
9   the funds will be allocated to the U.S.  So comparing the 3
10  percent standard so to speak against the proceeds that might
11  be eventually assigned to the United States, we think is not
12  the appropriate standard here.
13         Plus, given the amount of work that was done in
14  connection with this carve out of a carve out, we are
15  talking about a substantial amount of work; legal work,
16  financial work, and related analysis that was required by
17  our bidder here.  And frankly, in connection with
18  negotiations with other bidders, the bid protections we were
19  talking about were always in a very similar range.
20         So as a result, Your Honor, we do believe that
21  the standards set forth in *O'Brien* and the requirements of
22  Section 363 certainly are met in terms of approving these
23  bidding procedures.  We believe the timeline is appropriate.
24  That given the extensive marketing of this business and the
25  fact that we had also entered into an exclusivity

1  arrangement and had substantially documented another

2  transaction, shows that this has been a heavily marketed

3  business.

4          In addition, Your Honor, we do believe as Mr.

5  Reidel testified in his declaration and as Mr. Murray and

6  Mr. Dadyburjor in their proffers, that the other potential

7  interested parties are the -- are parties of a type that

8  would be able to move quickly and react in this timeline.

9          So that we do believe that there will a material

10  benefit to the U.S. estates by entering into the asset sale

11  agreement.  And that the approval of the bidding procedures

12  and the bid protections including the expense reimbursement

13  and breakup fee are appropriate and necessary supported by a

14  sound business reason as required by the *Abbott's Dairy* case

15  that prudent exercise of the business judgment of the

16  debtors that all of the relief being provided has been

17  sought and is continuing to be sought on accurate and

18  reasonable notice.  That good faith has been demonstrated in

19  the negotiation of the documents.  And that we believe the

20  purchase price being agreed to is the highest and best at

21  the moment that we've been able to obtain.  And it is

22  certainly our hope that the auction process will lead to an

23  active and vigorous auction.

24          So, Your Honor, based on -- we also believe that

25  the administrative expense standard set forth in *O'Brien* is

1    that -- is certain met here.  That in the event that there

2    are amounts that need to be paid in the form of expense

3    reimbursements or breakup fees, that those amounts will be

4    paid only in the event that we have a better transaction.

5    And if we do, that is indeed a good thing.  And we'll,

6    therefore, meet certainly the administrative expenses

7    standards required under *O'Brien*.

8            So in sum, Your Honor, we do believe that the --

9    this transaction provides a compelling case for approval and

10   would ask Your Honor to do so.

11           THE COURT:  Thank you, Mr. Bromley.  On the

12   breakup fee, I will note and if you could confirm that I'm

13   correct, that the breakup fee is reduced by or includes the

14   normal expense reimbursement that we see in these cases.

15           MR. BROMLEY:  That's correct, Your Honor.

16           THE COURT:  All right.

17           MR. BROMLEY:  So it's a total of $2.5 million

18   that would be paid with a cap -- with a -- subtracting out

19   the -- any expense reimbursement.  So it's a total of $2.5 -

20   -

21           THE COURT:  Exactly.

22           MR. BROMLEY:  -- that we're at risk for.

23           THE COURT:  Yes.

24           MR. BROMLEY:  And again, that would be split

25   amongst the various estates.

1        THE COURT:  Exactly.  All right, thank you, Mr.

2   Bromley.

3        MR. BROMLEY:  Thank you, Your Honor.

4        THE COURT:  Does anyone else wish to be heard,

5   the Committee or the Ad Hoc Bondholder Group?

6             (No audible response heard.)

7        THE COURT:  All right, thank you.  I will reserve

8   decision and we will hear now from our friends in Canada.

9   Mr. Justice Marowits?

10        JUSTICE MAROWITS:  Thank you, Judge Gross.  Ms.

11   Stam are you ready to proceed?

12        MS. STAM:  Yes, Your Honor, thank you very much.

13   And Judge Gross, thank you for hearing us today and I echo

14   Mr. Bromley's appreciation in hearing us.

15        Mr. Bromley's gone through in detail the -- and

16   outlined the transaction and so I don't plan to go through

17   the Canadian materials in detail.  Your Honor has and I

18   believe Judge Gross also has the company's motion record

19   including the affidavit of Mr. Dadyburjor who I previously

20   said is in the courtroom.  The monitor has also filed its

21   52nd report and I would note the monitor has been

22   extensively involved in the negotiation of the stalking

23   horse transaction.

24        For the record, there are no objections that I'm

25   aware of in Canada today.  And, in fact, purchasers'

1  Canadian counsel is in the courtroom to participate in this

2  motion, Mr. Valecimo [ph].

3         As Mr. Bromley set out, the stalking horse

4  agreement does anticipate a bid deadline for bids in the bid

5  for -- of September 21 with an auction commencing September

6  24.  And these dates were chosen in part with regard to the

7  transition services concerns that Mr. Bromley had outlined

8  and we would currently anticipate coming to Court for

9  approval on September 30.  Time has been booked with the

10 Court in that regard.

11        The stalking horse agreement does provide that an

12 up to 95 percent of the -- or at least 95 percent of

13 employees associated with this business will be -- had made

14 offers.  And that's significant in Canada as the monitor's

15 report does note that of the approximately 250 employees

16 associated with the business, around 66 are employed in

17 Canada and so it is significant from a Canadian perspective.

18        JUSTICE MAROWITS:  And of that 66, 95 percent are

19 --

20        MS. STAM:  Yes.

21        JUSTICE MAROWITS:  Okay.

22        MS. STAM:  Yes.  Much like in the U.S., we are

23 seeking approval of the agreement of the stalking horse

24 agreement, as well as, the bidding procedures, and the bid

25 protections, as well as, the side agreement that has been

1   entered into which addresses transition services costs, as

2   well as, a few other matters.  There are portions of that

3   agreement, as well as, the appendices to the ASA which have

4   been redacted in which we are asking be filed under seal.

5   And it's our submission that the test in the *Sierra Club* has

6   been met and that it is appropriate to redact those, the

7   appendices, as well as, the provisions of the side agreement

8   due to the circumstances.

9             JUSTICE MAROWITS:  Okay.  So the redacted

10  versions are in the record and unredacted would be in the

11  deed that I have here?

12            MS. STAM:  That's correct.  That's correct.  Your

13  Honor, unless Your Honor has any further questions, I don't

14  propose to go through the materials in any further detail.

15            JUSTICE MAROWITS:  I assume that there is no

16  opposition to this today?  Going, once, twice?

17                 (No audible response heard.)

18            JUSTICE MAROWITS:  Okay.  I'll hear briefly from

19  the monitor then.  Thank you, Mr. Pasquerella [ph].

20            MR. PASQUERELLA:  Good afternoon, Justice

21  Marowits, Judge Gross.

22            The monitor has filed its 52nd report, Your

23  Honor, in support of the motion.  As has been mentioned a

24  couple of times, the monitor has been involved throughout

25  the process and is supportive of the sale process albeit an

1  expedited one given the amount of time that's already gone

2  into the sale process efforts dating back to February and

3  more recently intensive processes leading up the PSP

4  agreement.

5          The bid procedures going forward are very

6  familiar to both Courts and are very similar to those that

7  have been put before the Courts for approval in this matter.

8  And it's anticipated that we'll be back before the Court on

9  September 30 to -- for a final order.

10          The -- I won't take Your Honor through the

11  report.  It does detail the sale process leading up to the

12  PSP agreement that you've already heard sufficient evidence

13  on, but it's -- for the record, it's Paragraphs 19 through

14  22 of the monitor's report.

15          As noted, a couple of the appendices to the

16  monitor's report are being requested to be sealed.  Those

17  are Appendices B and D.  Namely, the exhibits to the PSP and

18  disclosure statement and the unredacted side agreement that

19  relates to an arrangement among the estates pertaining to

20  costs of the transition services to be provided in respect

21  to this transaction.

22          I don't -- again, unless Your Honor has any

23  specific questions in that regard, I wasn't going to take

24  you to it.  You do have it included in your information in

25  those files there, right, in the Appendix D.

1              JUSTICE MAROWITS:  Right.

2              MR. PASQUERELLA:  Your Honor, the monitor has

3   also taken into account the expense reimbursement that's

4   included in the agreement of $1.5 million and the break fee

5   of $2.5 million minus any expense reimbursement that may be

6   paid.  And in the circumstances, the monitor's of the view

7   that those amounts are reasonable.

8              And in summary, Your Honor, the monitor

9   recommends the approval of the PSP agreement as a stalking

10  horse.  Recommends approval of the procedures going forward

11  and of the both the expense reimbursement and the breakup

12  fee.  And also requests that the noted appendices be sealed

13  by this Honorable Court.

14             JUSTICE MAROWITS:  Thank you.

15             MR. PASQUERELLA:  Thank you.

16             JUSTICE MAROWITS:  Any other counsel wishing to

17  make submissions?

18                  (No audible response heard.)

19             JUSTICE MAROWITS:  Anything further, Ms. Stam?

20             MS. STAM:  I don't have anything further, Your

21  Honor.

22             JUSTICE MAROWITS:  And do you have a form of

23  draft order that I can consider during our recess?

24             MS. STAM:  Yes.

25             JUSTICE MAROWITS:  Judge Gross --

1          MS. STAM:  Your Honor there were --

2          JUSTICE MAROWITS:  Sorry.

3          MS. STAM:  There were no changes from the version

4    that was filed with the motion materials.

5          JUSTICE MAROWITS:  Thank you.  Judge Gross are

6    you in a position then to recess for a few moments?

7          THE COURT:  Yes, sir.  We will stand in recess.

8          JUSTICE MAROWITS:  Okay, thank you.

9          (Recess from 12:26 p.m. to 12:31 p.m.)

10         THE COURT:  Please be seated, everyone, I'm

11   sorry.  Thank you.  Justice Marowits, we're going to have a

12   few minute delay I think to reconnect with Court call here.

13   We are now ready, Justice Marowits, thank you.

14         JUSTICE MAROWITS:  We are ready here.  And Judge

15   Gross I understand you'll proceed first with your ruling.

16         THE COURT:  Yes.  Well let me say first of all

17   that I am going to approve the motion.  We certainly have

18   first of all in this case, we have an ample and illustrious

19   track record of sales of this nature, of businesses and

20   assets, and under the circumstances, the debtors' business

21   judgment based not only on the evidence before me, but as

22   well prior history certainly justify the Court -- justifies

23   the Court's confidence in the debtors' business judgment

24   with the assistance of his able professionals.

25         And I am satisfied that again based upon our

1    record which consists of the testimony either through

2    proffer or declaration of Mister's Dadyburjor, Murray, and

3    Reidel that the requirements under our law here in the Third

4    Circuit as pronounced in the *Abbott's Dairies and Delaware*

5    *and Hudson Railway* cases, the debtors have established a

6    sound business purpose for the sale.  The Court is satisfied

7    that the price of the asset purchase agreement is fair and

8    reasonable and has been arrived at in good faith.

9            As far as the breakup fee is concerned, it is

10   clearly of benefit to the estate.  It induces other bidders.

11   And it serves really as a floor price and provides the type

12   of certainty to the transaction that the Court finds

13   satisfies the legal requirements and the Court is again

14   satisfied that the debtors' business judgment in arriving at

15   the breakup fee and expense reimbursement is appropriate.

16           And as far as the requirements of administrative

17   expenses are concerned, it's clear that this is an actual

18   and necessary cost of preserving the estate and the Court is

19   satisfied based upon the record that there is a substantial

20   benefit to the debtors' estate.

21           As far as the side letter is concerned, the Court

22   also is satisfied that that is appropriate and again, the

23   business judgment and benefit to the estate justify the

24   Court's approval of the side letter agreement.

25           The terms of the confidentiality I did have an

1 opportunity to specifically review the documents to be filed

2 under seal and I do find that they are of a sensitive

3 business nature and I will approve of the submission to the

4 Court of those documents under seal.

5          I am also going to approve the procedures for the

6 assumption and rejection of executory contracts and

7 releases.

8          I find that those procedures are proper.  And the

9 timing, I think has already been in many respects addressed

10 in my order shortening the notice period.  I do find that it

11 is -- the time is of a critical nature here and accordingly

12 the times proposed for the transaction are appropriate and

13 necessary.

14          And with all of that, I am prepared to sign the

15 order approving your motion for bid procedures and related

16 relief.

17          Mr. Justice Marowits?

18          JUSTICE MAROWITS:  Thank you, Judge Gross.  And a

19 report will now go on record for this endorsement.  This

20 hearing was conducted via video conference with the

21 companion motion being heard by the United States Bankruptcy

22 Court with His Honor, Judge Gross presiding.

23          This joint hearing was conducted in accordance

24 with the provisions of the cross border protocol which has

25 been previously approved by both the U.S. Court and by this

1    Court.

2            Nortel brings this motion for the approval of the

3    bidding procedures relating to the assets of the MSS

4    business.

5            It also seeks approval of a stalking horse

6    agreement among various Nortel entities and PSP Holding,

7    LLC.

8            And also seeks approval of the breakup fee and

9    the expense reimbursement, as well as, the side letter

10   involving the AMIA debtors.

11           The MSS business, the bidding procedures and the

12   sale agreement are all described in the affidavit of Mr.

13   Dadyburjor, sworn on August 27, 2010 and are also described

14   in the 52nd report of the monitor.  No objections were taken

15   by any party in either the U.S. Court or in this Court with

16   respect to the motion today.

17           The base price of the transaction is U.S. $39

18   million subject to reductions by way of breakup fee and

19   expense reimbursement.

20           Based on the record before me, I have concluded

21   that the adjustments in respect to the breakup fee and

22   reimbursement are reasonable in the circumstances.

23           The materials indicate that bids are to be

24   received by September -- Ms. Stam, help me with that date,

25   the 21st?  September 21.  And it is possible that a further

1    motion for approval of the transaction will come forward

2    before this Court on September 30, a date that I understand

3    has already been scheduled through the Court office.

4            The bidding procedures as proposed are not unlike

5    bidding procedures which have been previously approved in

6    this Court in the sale of the other Nortel businesses.

7            The issue before this Court is whether it is

8    appropriate in this case to approve the sale process.  As

9    with previous transactions, I am satisfied that this Court

10   has the jurisdiction to authorize the sale agreement.

11           The factors to consider in the sale process under

12   the CCAA in the absence of a plan have been previously

13   considered in these proceedings and I refer to my reasons in

14   Nortel 2010, 39492 in Paragraph 49 and these facts are as

15   follows.  One is the sale transaction warranted at this

16   time?  Two, will the sale benefit the whole economic

17   community?  Three, do any of the debtors or creditors have a

18   bona fide reason to object to the sale of the business?  And

19   four, is there a better alternative?

20           As indicated, there have been no objections filed

21   by any party.

22           Based on the record before me including the

23   affidavits of Mr. Dadyburjor and the 52nd report, I am

24   satisfied that it is appropriate to approve the bidding

25   procedures and the other relief requested today.

1            I am also satisfied that appendix, confidential

2   Appendices B and D to the 52nd report of the monitor dated

3   August 30, 2010 contain commercially sensitive information

4   and the dissemination of which could be detrimental to the

5   stakeholders.  And accordingly, I order that these documents

6   be sealed pending further order of the Court.  In granting

7   the sealing order, I have considered the principles set

8   forth by the Supreme Court of Canada in the *Sierra Club*

9   decision.

10            In approving the stalking horse -- sorry, in

11  approving the bidding procedures and the stalking horse

12  agreement, I have also taken into account that the auction

13  will be conducted prior to the sale approval motion.  This

14  process is consistent with the practice of this Court.  The

15  Court expects that the applicants will make reference to

16  both the sound [ph] and to Crown Trust [ph] principles in

17  any sale approval motion.

18            And I have endorsed the record for oral reasons

19  given, the motion is granted.  The order has been signed.

20  Thank you.

21            Judge Gross, that concludes my reasons and I

22  believe concludes the Canadian hearing.  I do appreciate all

23  counsels' efforts in streamlining the process so that it did

24  not take all that long today.  And Judge Gross, we'll sign

25  off and let you continue with any matters that you have with

1   the U.S. Court.  Thank you very much.

2           THE COURT:  Thank you, Mr. Justice Marowits and

3   good day to all in Canada.

4           JUSTICE MAROWITS:  Thank you.

5           THE COURT:  Thank you.  Mr. Bromley, I know the

6   other matters have been continued.

7           MR. BROMLEY:  Yes, the other matters have been

8   continued, Your Honor.  There was one other thing I did want

9   to mention.  I don't know if we're still on with Canada at

10  the moment.

11          THE COURT:  I think -- yes, I believe we are.

12  Did you want to do it -- was it just to be addressed to me?

13          MR. BROMLEY:  No, it's fine.  I just wanted to --

14  and now I see that --

15          THE COURT:  Okay.

16          MR. BROMLEY:  Okay.  It's fine if they were on, I

17  just didn't -- the -- Your Honor, we may be coming to you

18  for -- with a request to shorten notice in the next couple

19  of days or early next week with respect to the cross border

20  claims protocol.

21          As you may recall, Your Honor, one of the

22  requirements of the interim funding and settlement agreement

23  was the negotiation of an inter -- of a cross border claims

24  protocol and that had moved in stops and starts over a

25  fairly long period of time.  We believe that we're very

1  close to the final forms of those documents and we have a

2  joint hearing scheduled for the 16th of September.

3            THE COURT:  Yes.

4            MR. BROMLEY:  The Official Committee of Unsecured

5  Creditors and the bondholders are fully invested in that

6  process, have been working with us, and indeed, right now I

7  think we're just waiting for a couple of cleanup changes

8  from them.

9            The reason we want to get it on for the 16th is

10 because in Canada, there's also been a motion filed in June

11 for the approval of a claims process in Canada.  That motion

12 was adjourned and it was adjourned into July from June and

13 then from June into September to the 16th.  The final

14 Canadian funding and settlement agreement also required that

15 the U.S. estates and the committee and bonds have a role in

16 reviewing that.

17           THE COURT:  Yes.

18           MR. BROMLEY:  So all of it is coming together at

19 one point in time so that we think it will all be ready for

20 approval on the 16th.

21           So I just wanted to give Your Honor a heads up

22 and, you know, it could happen probably not today, but it

23 could happen tomorrow or Friday or even Tuesday, but we're

24 very, very close to being on a final point of filing the

25 motion.  But given that, it is difficult to set up a cross

1  border hearing --

2          THE COURT:  Yes.

3          MR. BROMLEY:  -- and we do have one scheduled for

4  the 16th.  I wanted to give you a heads up that we'll be

5  looking for that kind of relief in the not too distant

6  future.

7          THE COURT:  I appreciate the alert.  And if Mr.

8  Abbott or Ms. Cordo will just call chambers when that's

9  being delivered so that it doesn't get lost or, you know,

10  misplaced or unattended to --

11         MR. BROMLEY:  Okay.

12         THE COURT:  -- that will be much appreciated.

13         MR. ABBOTT:  We certainly will, Your Honor, thank

14  you.

15         THE COURT:  Thank you.

16         MR. BROMLEY:  And then that was it.  Thank you

17  very much, Your Honor, we really do appreciate it.

18         THE COURT:  All right.  Thank you all.  It was a

19  good hearing and I hope you have a successful auction as in

20  the past and we will stand in recess.  Thank you.

21         MR. BROMLEY:  Thank you very much, Your Honor.

22         THE COURT:  Thank you.

23     [Whereupon at 12:44 p.m., the hearing was adjourned.]

24

25                    CERTIFICATION

1          I certify that the foregoing is a correct

2    transcript from the electronic sound recording of the

3    proceedings in the above-entitled matter.

4

5

6    _____                    2 September 2010

7    Traci L. Calaman                              Date

8    Transcriber

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Word** — **Page:Line**

**a.m**(2) 1:14  3:1
**abbott**(12) 1:24  3:5  3:6  3:7  3:10  4:8  4:11  4:14  4:17  4:18  46:8  46:13
**abbott's**(2) 31:14  39:4
**ability**(3) 19:22  20:7  28:9
**able**(5) 5:16  7:17  9:8  13:10  14:5  31:8  31:21  38:24
**about**(4) 6:2  16:7  30:15  30:19
**aboveentitled** (1) 47:3
**absence**(1) 4:22
**access**(5) 13:15  16:20  16:25  19:2  24:7
**accessed**(1) 25:14
**accommodating**(1) 4:22
**accompanied**(1) 15:25
**accomplished**(1) 5:25
**accordance**(3) 3:14  30:6  40:23
**accordingly**(2) 40:11  43:5
**account**(2) 37:3  43:12
**accurate**(1) 31:17
**achieved**(1) 25:9
**acquire**(2) 13:10  25:17
**acquiring**(1) 11:15
**acquisition**(1) 11:13
**acquisitions**(1) 10:8
**across**(1) 5:22
**acting**(1) 11:8
**active**(1) 31:23
**actual**(2) 6:9  39:17
**add**(1) 12:2
**addition**(6) 12:21  15:1  16:22  25:1  28:15  31:4
**additional**(4) 13:23  14:3  19:1  20:20
**address**(3) 9:5  9:7  29:5
**addressed**(2) 40:9  44:12
**addresses**(1) 35:1
**adequately**(1) 18:19
**adjourned**(4) 4:12  45:12  45:12  46:23
**adjustments**(3) 15:3  15:13  41:21
**administrativ**(3) 31:25  32:6  39:16
**administrator**(1) 2:12
**admission**(2) 22:24  29:6
**admitted**(4) 22:19  22:22  29:3  29:11
**admittedly**(1) 28:3
**advance**(1) 5:6
**advisors**(5) 13:9  18:19  20:10  24:21  25:24
**affidavit**(2) 33:19  41:12
**affidavits**(1) 42:23
**affiliates**(2) 14:16  21:22
**after**(2) 14:4  21:11
**afternoon**(1) 35:20
**again**(7) 23:11  28:24  32:24  36:22  38:25  39:13  39:22
**against**(2) 28:6  30:10
**agenda**(1) 4:10
**aggressive**(1) 6:9
**ago**(1) 6:4
**agreed**(1) 31:20
**agreement**(46) 6:20  13:25  14:10  14:12  14:17  15:5  15:6  15:25  16:2  16:12  16:14  16:15  16:23  20:6  20:12  21:5  21:20  21:23  22:4  22:24  24:19  24:20  25:20  26:1  26:20  31:11  34:4  34:11  34:23  34:24  34:25  35:3  35:7  36:4  36:12  36:18  37:4  37:9  39:7  39:24  41:6  41:12  42:10  43:12  44:22  45:14
**agreements**(11) 15:1  15:4  15:7  15:9  15:10  15:17  15:25  16:15  16:19  19:21  24:5
**albeit**(1) 35:25
**alert**(1) 46:7

**all**(30) 3:4  4:7  4:11  7:2  7:5  8:7  9:14  10:12  14:12  19:17  21:12  22:18  27:21  29:2  29:11  31:16  32:16  33:1  33:7  38:16  38:18  40:14  41:12  43:22  43:24  44:3  45:18  45:1  46:18  46:18
**allen**(1) 2:22
**allocated**(1) 30:9
**allocation**(1) 30:6
**allow**(2) 11:20  17:3
**almost**(1) 6:4
**along**(4) 3:7  8:14  18:18  25:18
**already**(5) 28:13  36:1  36:12  40:9  42:3
**also**(32) 7:21  9:10  11:1  15:14  15:24  17:1  17:4  17:23  18:4  18:12  19:9  19:18  20:22  21:15  21:19  22:7  22:23  30:25  31:24  33:18  33:20  37:3  37:12  39:22  40:5  41:5  41:8  41:13  43:1  43:12  45:10  45:14
**alternative**(1) 42:19
**always**(2) 5:3  30:19
**american**(2) 14:12  14:13
**americas**(1) 2:24
**amia**(6) 14:16  14:20  20:25  21:22  27:6  41:10
**among**(4) 14:22  16:1  36:19  41:6
**amongst**(1) 32:25
**amount**(8) 6:11  20:16  27:1  27:15  30:1  30:13  30:15  36:1
**amounts**(3) 32:2  32:3  37:7
**ample**(1) 38:18
**analysis**(1) 30:16
**ancillary**(1) 15:25
**and**(301) 2:21  3:4  3:7  3:13  3:14  3:14  3:16  3:16  3:17  3:21  3:21  3:22  3:23  4:6  4:6  4:9  4:15  4:23  5:2  5:5  5:7  5:14  5:16  5:23  5:24  5:25  6:3  6:11  6:21  6:22  6:24  7:4  7:7  7:11  7:16  7:18  7:19  7:23  7:24  8:3  8:4  8:4  8:5  8:20  8:21  8:25  9:4  9:7  9:12  9:13  9:14  9:14  9:19  9:24  9:25  10:9  10:9  10:20  10:22  10:23  10:23  11:2  11:15  11:19  11:21  11:21  11:25  11:25  12:2  12:3  12:7  12:12  12:17  12:20  12:23  13:6  13:10  13:11  13:14  13:20  13:20  13:25  14:3  14:4  14:6  14:10  14:13  14:13  14:20  14:24  14:25  15:1  15:10  15:10  15:13  15:17  16:3  16:6  16:15  16:16  16:16  16:19  16:22  16:23  17:8  17:9  17:11  17:13  17:13  17:15  17:23  17:25  18:1  18:7  18:8  18:8  18:9  18:10  18:17  18:20  18:22  18:23  18:24  18:24  19:1  19:1  19:8  19:9  19:11  19:14  19:14  19:18  19:22  20:2  20:6  20:12  20:13  20:18  20:18  20:19  20:21  21:5  21:10  21:12  21:14  21:21  21:22  21:23  21:23  22:5  22:8  22:10  22:13  22:23  23:3  23:8  23:11  23:12  23:18  23:23  24:2  24:6  24:12  24:13  24:14  24:15  24:16  24:21  24:22  24:23  25:5  25:5  25:7  25:8  25:9  25:13  25:14  25:15  25:16  25:17  25:19  25:20  26:1  26:6  26:15  26:15  26:21  26:21  27:4  27:5  27:6  27:9  27:12  27:20  27:25  28:1  28:5  28:9  28:12  28:13  28:20  29:4  29:15  29:15  29:22  29:22  29:24  30:7  30:8  30:16  30:17  30:21  30:24  31:1  31:5  31:5  31:8  31:11  31:12  31:13  31:13  31:17  31:18  31:19  31:20  31:21  31:23  32:5  32:5  32:9  31:25  32:12  32:14  33:6  33:8  33:13  33:15  33:17  33:21  33:25  34:4  34:8  34:14  34:17  34:18  34:24  35:5  35:6  35:10  35:25  36:2  36:6  36:8  36:17  36:17  36:18  37:6  37:7  37:8  38:13  38:14  39:17  40:2  40:8  40:12  41:12  41:13  41:22  41:23  42:4  42:14  44:11  45:5

**and**(36) 41:18  41:21  41:25  42:13  42:14  42:18  42:22  42:25  43:2  43:4  43:5  43:11  43:16  43:18  43:21  43:24  43:25  44:2  44:1  44:22  44:24  44:24  45:1  45:5  45:6  45:12  45:12  44:14  45:15  45:15  45:15  45:22  46:3  46:7  46:16  46:19  46:20
**annie**(1) 1:25
**announced**(2) 13:6  26:15
**another**(2) 21:7  31:1
**answer**(1) 18:25
**anticipate**(3) 8:8  34:4  34:8
**anticipated**(1) 36:8
**any**(26) 4:12  6:22  8:15  8:21  8:24  16:22  17:12  18:20  19:13  19:19  22:19  23:1  25:2  28:15  28:16  32:19  35:13  35:14  36:22  37:2  37:16  41:15  41:17  42:21  43:17  43:25
**anyone**(5) 22:16  22:19  28:25  29:9  33:4
**anything**(2) 37:19  37:20
**apologize**(1) 5:6
**appearances**(1) 2:36
**appendices**(6) 35:3  35:7  36:15  36:17  37:12  43:2
**appendix**(2) 36:25  43:1
**applicants**(1) 43:15
**applications**(1) 11:21
**appreciate**(5) 4:25  9:21  43:22  46:7  46:17
**appreciated**(1) 46:12
**appreciation**(1) 33:14
**approach**(2) 24:16
**approached**(1) 13:9
**appropriate**(10) 28:20  30:12  30:23  31:13  35:6  39:15  39:22  40:12  42:8  42:24
**approval**(22) 6:22  16:7  22:5  28:15  29:9  29:22  31:11  32:9  34:9  34:23  36:7  37:9  37:10  39:24  41:2  41:5  41:8  42:1  43:13  43:17  45:11  45:20
**approve**(5) 38:17  40:3  40:5  42:8  42:24
**approved**(11) 10:23  17:7  18:10  21:18  27:14  27:19  27:25  29:24  30:7  40:25  42:5
**approving**(4) 30:22  40:15  43:10  43:11
**approximately**(2) 24:3  34:15
**are**(66) 3:25  4:9  5:8  5:9  6:20  7:2  7:17  8:25  9:14  10:12  12:8  14:12  17:1  18:9  18:9  19:2  19:10  21:18  21:21  22:11  26:4  26:11  26:15  27:2  27:3  27:11  27:19  27:25  28:12  29:23  30:3  30:5  30:14  30:22  31:7  31:7  31:13  32:2  33:11  33:24  34:16  34:8  34:22  35:2  35:4  35:10  36:5  36:6  36:16  36:17  37:7  38:5  38:13  38:14  39:17  40:2  40:8  40:12  41:12  41:13  41:22  41:23  42:4  42:14  44:11  45:5
**area**(1) 12:16
**arm's**(5) 18:7  19:18  21:11  24:25  27:24
**arose**(1) 24:23
**around**(3) 5:21  12:17  34:16
**arrangement**(4) 13:23  14:1  31:1  36:19
**arrived**(2) 21:11  39:8
**arriving**(1) 39:14
**arsht**(1) 1:22
**asa**(10) 14:20  14:21  15:11  20:3  20:13  20:20  20:23  21:5  26:18  35:3
**asian**(1) 14:13
**aside**(1) 24:10
**ask**(6) 7:19  8:1  9:19  22:24  23:13  32:10
**asking**(1) 35:4
**aspect**(2) 3:19  17:8
**aspects**(2) 3:15  3:20
**asset**(12) 11:24  14:9  14:11  15:24  18:11  20:1  20:6  24:19  24:20  25:20  31:10  39:7

**assets**(20) 5:8  8:21  11:16  12:19  12:22  12:23  12:24  13:2  14:11  14:13  15:22  17:9  18:23  24:12  25:5  25:13  26:4  27:9  38:20  41:3
**assign**(1) 15:17
**assigned**(1) 30:11
**assignment**(1) 14:24
**assistance**(1) 33:14
**associated**(2) 34:13  34:16
**assume**(3) 15:16  23:4  35:15
**assumption**(1) 40:6
**attached**(1) 27:3
**attention**(1) 28:13
**auction**(22) 11:7  14:6  15:23  18:13  18:13  18:24  20:12  21:17  25:7  25:9  26:1  26:12  27:19  28:3  28:25  28:10  29:22  31:22  31:23  34:5  43:12  46:19
**audible**(8) 22:17  22:21  23:2  29:1  29:10  33:6  35:17  37:18
**august**(2) 41:13  43:3
**authorize**(1) 42:10
**available**(7) 8:5  10:9  15:22  17:14  17:24  18:25  23:11
**avenue**(1) 2:24
**avoid**(1) 7:4
**aware**(4) 9:14  23:12  24:11  33:25
**awhile**(1) 5:5
**back**(5) 4:6  16:11  23:19  36:2  36:8
**background**(4) 8:12  9:17  23:13  23:14
**balancing**(2) 18:14  28:4
**bank**(1) 2:41
**bankruptcy**(3) 1:1  1:18  40:21
**base**(5) 12:1  19:9  27:8  27:10  41:17
**based**(7) 15:18  31:24  38:21  38:25  39:19  41:20  42:22
**basis**(8) 5:13  5:22  7:1  8:11  19:18  24:25  27:24  30:2
**bay**(1) 2:42
**became**(1) 6:5
**because**(7) 6:15  17:8  21:4  22:9  26:13  26:19  45:10
**become**(2) 17:5  17:16
**becomes**(1) 16:23
**been**(46) 4:11  5:4  5:16  5:16  5:21  6:11  6:12  6:16  7:16  7:18  7:23  8:17  9:11  12:13  14:10  14:17  16:20  17:6  19:23  21:20  27:14  28:11  31:2  31:16  31:22  33:21  34:9  34:25  35:4  35:6  35:23  35:24  36:7  39:8  40:9  40:25  42:3  42:5  42:12  42:20  43:19  44:6  44:7  45:6  45:10
**before**(13) 1:17  5:1  5:15  11:11  14:21  17:18  36:7  36:8  38:21  41:20  42:2  42:7  42:22
**began**(4) 6:4  6:10  13:4  24:1
**begin**(1) 26:5
**being**(7) 7:2  8:2  8:25  11:17  14:23  17:9  17:17  19:14  22:23  25:5  26:7  31:16  31:20  36:16  40:21  45:24  46:9
**believe**(16) 5:25  7:3  7:4  9:2  24:24  30:20  30:23  31:4  31:9  31:19  31:24  32:8  33:18  43:22  44:11  44:25
**believes**(4) 13:1  21:15  24:13  27:17
**bench**(1) 3:9
**benefit**(10) 19:15  19:25  21:4  26:14  26:18  35:9  39:10  39:20  39:23  42:16
**besides**(1) 25:6
**best**(8) 7:5  10:22  13:2  15:21  20:11  25:9  25:25  31:20
**better**(4) 15:22  26:21  32:4  42:19

09/03/10 06:58:52

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|------|-----------|------|-----------|------|-----------|------|-----------|
| **between**(2) 15:7 24:14 | | **called**(7) 7:16 10:13 11:6 14:8 23:12 24:1 24:18 | | **compelling**(1) 32:9 | | **court**(101) 1:1 3:3 3:8 3:12 3:17 4:2 4:5 4:9 4:13 4:17 4:19 4:24 5:11 6:8 7:10 7:14 7:21 7:22 8:5 8:7 8:10 8:16 9:3 9:22 10:1 10:4 10:23 14:19 16:10 17:18 17:21 17:22 17:25 18:6 22:15 22:18 22:22 23:1 23:3 23:7 23:10 23:16 23:19 23:24 27:20 28:24 29:2 29:5 29:9 29:11 29:17 29:20 32:11 32:16 32:21 32:23 33:1 33:4 33:7 34:8 34:10 36:8 37:13 38:7 38:10 38:12 38:16 38:22 39:6 39:12 39:13 39:18 39:21 40:4 40:22 40:25 41:1 41:15 41:15 42:2 42:3 42:6 42:7 42:9 43:6 43:8 43:14 43:15 44:1 44:2 44:5 44:11 44:15 45:3 45:17 46:2 46:7 46:12 46:15 46:18 46:22 |
| **bid**(31) 4:3 8:25 9:1 15:23 20:14 20:21 20:22 20:24 21:2 21:6 21:9 21:17 26:9 26:10 26:13 26:17 26:21 26:22 26:25 27:5 27:10 27:19 27:20 30:18 31:12 34:4 34:4 34:24 36:5 40:15 | | **caloway**(1) 2:29 | | **compete**(1) 12:8 | | |
| | | **can**(8) 4:10 4:14 8:10 8:13 25:9 29:14 29:15 37:23 | | **competing**(2) 18:15 28:5 | | |
| **bidder**(18) 11:10 13:23 13:25 14:3 16:24 18:20 19:5 20:1 20:8 21:5 21:7 24:9 25:3 25:22 26:8 26:12 26:19 30:17 | | **canada**(13) 2:45 10:20 23:3 29:16 33:8 33:25 34:14 34:17 43:8 44:3 44:9 45:10 45:11 | | **competitive**(1) 12:6 | | |
| | | | | **competitors**(1) 12:16 | | |
| | | | | **completed**(1) 10:24 | | |
| **bidders**(11) 14:4 18:15 19:2 19:20 19:22 24:9 25:12 31:9 39:10 | | **canadian**(16) 2:38 2:49 3:20 4:5 8:1 20:25 21:14 21:20 21:23 22:24 27:5 33:17 34:1 34:17 43:22 45:14 | | **completion**(1) 25:19 | | |
| | | | | **complex**(1) 27:12 | | |
| | | | | **complexity**(1) 27:12 | | **court's**(3) 38:23 39:24 |
| **bidding**(20) 16:24 18:5 18:6 18:9 20:2 20:3 20:13 21:6 26:13 27:23 29:21 30:23 31:11 34:24 41:3 41:11 42:4 42:5 42:24 43:11 | | **cannot**(1) 12:20 | | **comprehensiv**(1) 24:13 | | **courtroom**(6) 1:9 9:20 9:24 23:9 33:20 36:7 |
| | | **cap**(1) 32:18 | | **conaway**(1) 2:12 | | |
| | | **capital**(1) 15:13 | | **concerned**(3) 39:9 39:17 39:21 | | **courts**(5) 5:2 5:15 14:22 17:7 27:13 36:6 |
| | | **capitalist**(1) 19:8 | | **concerns**(1) 34:7 | | |
| **bids**(5) 13:19 18:15 28:5 34:4 41:23 | | **capped**(2) 20:19 27:2 | | **conclude**(1) 3:24 | | **covenants**(1) 14:23 |
| **billion**(1) 11:14 | | **caribbean**(1) 14:13 | | **concluded**(1) 41:20 | | **cover**(1) 20:18 |
| **binder**(1) 17:20 | | **carve**(5) 5:20 5:20 6:3 30:14 30:14 | | **concludes**(3) 28:22 43:21 43:22 | | **create**(2) 21:6 26:22 |
| **bit**(1) 8:9 | | **case**(8) 1:7 9:11 14:17 17:6 31:14 32:9 38:18 42:8 | | **conclusion**(1) 3:22 | | **created**(1) 11:13 |
| **black**(1) 30:8 | | | | **conditions**(3) 14:25 20:20 27:3 | | **creditors**(7) 2:4 9:12 16:22 17:3 21:13 42:17 45:5 |
| **bmss**(1) 10:11 | | **cases**(6) 18:11 25:10 26:23 28:1 32:14 | | **conducted**(4) 13:14 40:20 40:23 43:13 | | |
| **bona**(1) 42:18 | | **cash**(1) 15:12 | | **confer**(1) 3:21 | | **critical**(2) 17:12 40:11 |
| **bondholder**(3) 16:22 21:14 33:5 | | **cast**(1) 7:8 | | **conference**(1) 40:20 | | **cross**(7) 8:5 22:16 28:25 40:24 44:19 44:23 45:25 |
| **bondholders**(2) 9:13 45:5 | | **ccaa**(1) 42:12 | | **conferred**(1) 3:15 | | |
| **bonds**(1) 45:15 | | **cede**(1) 4:15 | | **confidence**(1) 38:23 | | **crown**(1) 43:16 |
| **booked**(1) 34:9 | | **certain**(14) 5:8 14:15 15:16 16:15 16:16 16:19 17:4 17:18 21:20 21:21 21:24 22:9 29:19 32:1 | | **confidential**(5) 13:16 17:6 22:10 24:7 43:1 | | **currently**(1) 34:8 |
| **border**(4) 40:24 44:19 44:23 46:1 | | | | **confidentiality**(4) 16:23 19:21 24:5 39:25 | | **customer**(2) 17:5 17:11 |
| **both**(12) 4:21 5:1 5:15 9:15 12:3 17:7 25:16 28:20 36:6 37:11 40:25 43:16 | | **certainly**(8) 23:16 29:3 30:22 31:22 32:6 38:17 38:22 46:13 | | **confirm**(2) 9:19 32:12 | | **customers**(4) 11:19 11:20 17:11 26:15 |
| | | | | **confirmation**(1) 8:23 | | **dadyburjor**(25) 7:22 7:25 8:4 9:19 9:20 9:24 10:7 10:14 11:16 14:8 15:8 15:18 16:18 18:4 18:18 19:4 19:24 21:19 22:14 22:16 31:6 33:19 39:2 41:13 42:23 |
| | | | | **connect**(1) 11:22 | | |
| **bound**(2) 21:5 26:20 | | **certainty**(1) 39:12 | | **connection**(10) 7:11 8:21 11:9 13:7 19:11 21:25 24:2 25:7 30:14 30:17 | | |
| **box**(4) 1:27 2:17 2:43 30:8 | | **certification**(1) 46:25 | | | | |
| **brandywine**(2) 2:15 2:30 | | **certify**(1) 47:1 | | **consider**(2) 37:23 42:11 | | **dairies**(1) 39:4 |
| **break**(1) 37:4 | | **chambers**(2) 17:25 46:8 | | **considerable**(2) 20:5 25:19 | | **dairy**(1) 31:14 |
| **breakup**(14) 15:3 20:16 27:1 30:1 31:13 32:3 32:12 32:13 37:11 39:9 39:15 41:8 41:18 41:21 | | **changes**(2) 38:3 45:7 | | **consideration**(2) 15:19 30:3 | | **damaging**(2) 22:11 |
| | | **chapter**(1) 1:4 | | **considered**(3) 7:19 42:13 43:7 | | **data**(6) 1:42 11:18 11:21 13:15 19:3 25:14 |
| | | **characters**(1) 7:9 | | **consist**(1) 11:17 | | **date**(4) 25:10 41:24 42:2 47:7 |
| | | **chosen**(2) 19:5 34:6 | | **consistent**(1) 43:14 | | **dated**(1) 43:2 |
| **brief**(1) 3:20 | | **chris**(1) 2:6 | | **consists**(1) 39:1 | | **dates**(1) 34:6 |
| **briefly**(1) 35:18 | | **circuit**(1) 39:4 | | **constitutes**(1) 25:4 | | **dating**(1) 36:2 |
| **brings**(1) 41:2 | | **circumstances**(9) 8:3 24:23 26:23 27:11 28:21 35:8 37:6 38:20 41:22 | | **consultation**(4) 13:8 20:10 21:12 25:24 | | **day**(2) 4:23 44:3 |
| | | | | **consummate**(1) 17:16 | | **days**(1) 44:19 |
| **bromley**(53) 1:33 3:7 4:15 4:19 4:20 5:12 6:9 7:11 7:15 8:8 8:17 9:3 9:6 10:3 10:6 14:20 16:11 17:22 18:2 18:3 22:15 22:23 23:5 23:8 23:11 23:17 23:22 23:25 28:24 29:4 29:8 29:12 29:13 29:18 32:11 32:15 32:17 32:22 32:24 33:2 33:3 34:3 34:7 44:5 44:7 44:13 44:16 45:4 45:18 46:3 46:11 46:16 46:21 | | **city**(2) 8:18 8:24 | | **consummated**(1) 12:25 | | **deadline**(1) 34:4 |
| | | **claims**(3) 44:20 44:23 45:11 | | **contact**(1) 14:3 | | **deal**(2) 26:15 27:11 |
| | | **cleanup**(1) 45:7 | | **contacted**(3) 24:3 24:10 24:14 | | **dealing**(4) 6:18 6:22 14:22 16:1 |
| | | **clear**(3) 6:5 30:8 39:17 | | **contain**(1) 43:3 | | **debtor**(3) 1:22 10:16 22:12 |
| | | **clearly**(2) 9:5 39:10 | | **contained**(1) 21:3 | | **debtors**(20) 1:11 10:10 15:15 15:15 17:3 17:10 20:25 21:1 21:21 21:22 27:6 27:7 31:16 38:20 38:23 39:5 39:14 39:20 41:10 42:17 |
| **bromley's**(2) 33:14 33:15 | | **cleary**(1) 1:31 | | **containing**(1) 13:16 | | |
| **brought**(2) 11:11 18:21 | | **clerk**(1) 3:2 | | **contains**(2) 17:2 22:9 | | |
| **brown**(1) 23:18 | | **close**(2) 45:1 45:24 | | **contemplate**(1) 20:14 | | |
| **buchanan**(1) 2:28 | | **closed**(2) 5:24 5:25 | | **contentious**(1) 24:22 | | |
| **building**(2) 2:15 2:30 | | **closely**(1) 9:11 | | **continue**(4) 16:3 21:17 27:18 43:25 | | **decision**(4) 3:23 12:13 33:8 43:9 |
| **business**(68) 5:6 5:7 5:8 5:14 5:19 5:24 6:2 6:3 6:4 6:6 6:7 6:10 10:10 10:11 10:11 10:12 10:12 11:7 11:17 11:18 11:22 11:24 12:1 12:2 12:6 12:12 12:14 12:19 13:5 13:7 13:10 13:17 14:14 14:23 15:17 15:20 17:6 17:9 17:12 18:16 18:22 19:14 23:18 23:23 23:23 24:2 25:17 26:3 26:4 26:5 26:16 28:7 28:18 30:24 31:3 31:14 31:15 34:13 34:16 38:20 38:23 39:6 39:1 39:23 40:3 41:4 41:11 42:18 | | **closing**(3) 14:25 15:4 16:3 | | **continued**(4) 2:2 13:20 44:6 44:8 | | **declaration**(8) 7:12 7:17 7:25 8:2 22:24 29:6 31:5 39:2 |
| | | **club**(2) 35:5 43:8 | | **continuing**(2) 5:9 31:17 | | |
| | | **code**(1) 5:3 | | **contracts**(5) 14:24 15:16 17:11 17:14 40:6 | | |
| | | **come**(3) 4:6 5:17 42:1 | | **contributes**(1) 26:12 | | **decline**(3) 12:22 17:15 26:6 |
| | | **comforted**(1) 26:16 | | **cordo**(2) 1:25 46:8 | | **deed**(1) 35:11 |
| | | **coming**(4) 4:23 34:8 44:17 45:18 | | **core**(1) 16:20 | | **definition**(1) 14:23 |
| | | **commence**(3) 16:3 20:12 26:1 | | **corporate**(1) 10:16 | | **degrees**(1) 23:19 |
| | | **commencing**(1) 34:5 | | **corporation**(2) 6:1 19:7 | | **delaware**(9) 1:2 1:11 3:1 3:17 4:3 4:5 7:21 8:4 39:4 |
| | | **commercial**(2) 22:9 22:11 | | **correct**(5) 32:13 32:15 35:12 35:12 47:1 | | |
| **businesses**(8) 5:13 5:21 10:22 11:15 12:12 22:2 38:19 42:6 | | **commercially**(1) 43:3 | | **cost**(2) 12:7 39:18 | | |
| | | **commit**(1) 21:15 | | **costs**(4) 20:18 21:24 35:1 36:20 | | **delay**(3) 28:15 28:16 38:12 |
| | | **committee**(7) 2:5 9:12 16:21 21:13 33:5 45:4 45:15 | | **could**(8) 8:19 9:19 12:21 18:21 32:12 43:4 45:22 45:23 | | **delays**(1) 6:22 |
| **but**(15) 4:10 5:12 5:22 7:20 7:21 8:8 13:24 19:13 29:19 30:3 36:13 38:21 45:22 45:23 45:25 | | **common**(1) 15:2 | | | | **deliver**(1) 3:23 |
| | | **community**(1) 42:17 | | **counsel**(8) 2:38 3:14 3:16 8:23 18:7 24:21 34:1 37:16 | | **delivered**(1) 46:9 |
| | | **companion**(1) 40:21 | | | | **demonstrated**(1) 31:18 |
| | | **company**(1) 19:7 | | **counsels**(1) 43:23 | | **derek**(2) 1:24 3:6 |
| **buyer**(1) 7:1 | | **company's**(1) 33:18 | | **counterparties**(1) 17:13 | | **described**(2) 18:14 28:4 |
| **buyers**(2) 13:11 24:4 | | **comparing**(1) 30:9 | | **countries**(1) 13:3 | | **desire**(2) 18:14 28:4 |
| **calaman**(1) 47:7 | | | | **couple**(5) 5:18 35:24 36:15 44:18 45:7 | | **detail**(4) 33:15 33:17 35:14 36:11 |
| **call**(3) 23:11 38:12 46:8 | | | | **course**(2) 17:23 24:23 | | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| determined(2) 20:10 25:24 | | equity(1) 11:13 | | fee(14) 15:3 20:16 27:1 30:1 31:13 32:12 | | given(8) 19:15 24:7 28:11 30:13 30:24 |
| detrimental(2) 27:20 43:4 | | erickson(1) 12:16 | | 32:13 37:4 37:12 39:9 39:15 41:8 41:18 | | 36:1 43:19 45:25 |
| development(2) 12:3 12:7 | | ernst(1) 2:21 | | 41:21 | | |
| devoted(1) 28:13 | | esq(10) 1:24 1:25 1:33 1:34 2:6 2:14 2:23 | | fees(2) 20:18 32:3 | | global(4) 7:23 10:8 10:15 12:10 |
| diaz(1) 1:42 | | 2:29 2:39 2:49 | | few(3) 35:2 38:6 38:12 | | globally(1) 10:19 |
| did(10) 7:12 9:4 9:5 14:17 18:1 25:2 | | | | fide(1) 12:8 | | goal(1) 24:16 |
| 39:25 43:23 44:8 44:12 | | essentially(1) 11:17 | | file(1) 7:12 | | going(8) 28:11 35:16 36:5 36:23 37:10 |
| | | established(2) 17:10 39:5 | | filed(19) 5:20 7:12 7:18 7:25 8:18 8:18 | | 38:11 38:17 40:5 |
| didn't(1) 44:17 | | establishing(1) 21:7 | | 16:19 17:2 17:19 17:19 22:8 30:7 33:20 | | |
| different(1) 8:9 | | estate(7) 16:16 21:4 26:19 39:10 39:18 | | 35:4 35:22 38:4 40:1 42:20 45:10 | | gone(2) 33:15 36:1 |
| difficult(2) 7:1 45:25 | | 39:20 39:23 | | | | good(20) 3:3 3:4 3:4 3:6 3:11 3:12 3:13 |
| diligence(4) 13:16 19:1 24:7 25:19 | | | | files(1) 36:25 | | 4:19 4:20 4:20 9:23 10:2 18:8 22:5 31:18 |
| dipietro(4) 19:6 19:8 19:11 19:15 | | estates(13) 7:5 7:6 13:3 15:20 20:9 22:12 | | filing(2) 8:20 45:24 | | 32:5 35:20 39:8 44:3 46:19 |
| direct(1) 10:15 | | 25:23 27:21 27:21 31:10 32:25 36:19 | | final(6) 5:7 5:14 36:9 45:1 45:13 45:24 | | |
| disclosure(2) 22:10 36:18 | | 45:15 | | finance(1) 11:2 | | gottlieb(1) 1:31 |
| discussions(2) 24:8 44:22 | | estimated(1) 15:12 | | financial(6) 13:9 13:11 24:4 24:21 25:16 | | graduate(1) 23:17 |
| dissemination(1) 43:4 | | ethernet(1) 5:1 | | 30:16 | | granted(1) 43:19 |
| distant(1) 46:5 | | evaluate(1) 17:3 | | | | granting(1) 43:6 |
| district(1) 1:2 | | evaluated(1) 5:9 | | find(3) 40:2 40:8 40:10 | | grapevine(3) 8:18 8:24 9:7 |
| divesture(1) 13:5 | | even(3) 26:20 27:14 45:23 | | finds(1) 39:12 | | great(1) 26:14 |
| documented(2) 20:18 31:1 | | event(5) 4:12 16:4 17:22 32:1 32:4 | | fine(2) 44:13 44:16 | | gross(18) 1:17 3:13 3:14 3:21 3:25 4:20 |
| documents(7) 16:21 16:25 31:19 40:1 40:4 | | eventually(1) 30:11 | | finger(1) 2:5 | | 9:23 33:10 33:13 33:18 35:21 37:25 38:5 |
| 43:5 45:1 | | every(2) 5:5 24:16 | | finish(1) 29:15 | | 38:15 40:18 40:22 43:21 43:24 |
| | | everyone(1) 3:3 38:10 | | finnegan(1) 2:14 | | |
| does(11) 9:5 22:16 22:18 26:6 28:25 29:9 | | evidence(6) 4:4 22:20 29:3 29:7 36:12 | | firm(1) 11:14 | | group(5) 9:13 11:2 16:22 21:14 33:5 |
| 33:4 34:4 34:11 34:15 36:11 | | 38:21 | | first(6) 3:19 4:4 13:4 38:15 38:16 38:18 | | groups(1) 9:15 |
| | | | | five(2) 43:15 23:14 24:6 25:15 | | guess(1) 3:8 |
| doesn't(1) 46:9 | | evidentiary(2) 3:18 8:13 | | floor(2) 2:16 20:2 39:11 | | |
| doing(1) 9:11 | | exactly(1) 30:8 32:21 33:1 | | focusing(1) 23:22 | | had(14) 5:21 7:8 8:23 17:7 18:19 20:23 |
| dollar(1) 30:1 | | examination(1) 8:6 | | followed(2) 3:19 3:20 | | 29:24 30:6 30:7 30:25 31:1 34:7 34:13 |
| don't(7) 8:8 9:6 33:16 35:13 36:22 37:20 | | examine(2) 22:16 28:25 | | following(1) 3:24 | | 44:24 |
| 44:9 | | exclusively(1) 15:16 | | follows(1) 42:15 | | hamilton(1) 1:32 |
| | | exclusivity(4) 13:23 14:1 14:4 40:25 | | for(77) 1:2 1:22 2:4 2:11 2:21 2:38 2:49 | | happen(2) 45:22 45:23 |
| done(4) 4:4 6:12 8:3 30:13 | | execution(1) 10:19 | | 3:8 4:2 4:21 4:23 5:24 6:4 6:6 6:12 7:8 | | happy(3) 5:14 7:3 9:15 |
| downturn(1) 12:11 | | executory(2) 15:16 40:6 | | 7:23 9:8 9:19 10:8 10:15 10:24 11:3 11:7 | | hardware(1) 11:25 12:2 |
| draft(1) 37:23 | | exercise(2) 19:11 31:15 | | 12:3 13:3 13:5 14:20 15:22 16:3 16:6 | | harrisburg(1) 1:44 |
| drive(1) 12:2 | | exhibits(1) 36:17 | | 16:11 18:19 18:25 19:9 20:4 20:20 20:20 | | harvard(1) 23:18 |
| due(2) 25:19 35:8 | | exist(1) 8:21 | | 21:7 21:23 21:24 22:13 22:24 23:6 23:20 | | has(15) 3:25 5:4 5:8 5:12 5:15 5:16 6:11 |
| during(3) 24:20 24:23 37:23 | | exists(1) 12:19 | | 25:5 26:16 27:8 28:22 29:22 32:9 32:22 | | 6:12 7:16 7:18 7:25 8:17 8:19 10:24 11:1 |
| dynamics(2) 21:6 26:22 | | expect(1) 26:6 | | 33:13 33:24 34:4 34:5 34:8 36:7 36:9 | | 11:2 11:4 12:11 12:13 14:2 14:10 14:17 |
| | | expects(1) 43:15 | | 36:13 38:6 39:6 40:5 40:12 40:15 40:19 | | 17:6 19:11 19:23 20:5 21:20 25:19 28:11 |
| each(2) 14:5 16:19 | | expedite(1) 20:3 | | 41:2 42:1 43:18 44:18 45:2 45:7 45:9 | | 31:2 31:16 31:18 33:17 33:18 33:20 33:21 |
| early(1) 44:19 | | expedited(1) 36:1 | | 45:11 45:19 46:3 46:5 | | 34:9 34:25 35:5 35:13 35:22 35:23 35:24 |
| earned(1) 11:4 | | expense(16) 6:23 15:3 20:17 20:19 27:2 | | | | 36:22 37:2 39:8 40:9 40:24 42:3 42:10 |
| earnest(1) 6:10 | | 31:12 31:25 32:2 32:14 32:19 37:3 37:5 | | foregoing(1) 47:1 | | 43:19 |
| easily(1) 18:21 | | 37:11 39:15 41:9 41:19 | | form(2) 32:2 37:10 | | |
| echo(1) 33:13 | | | | formal(1) 26:1 | | have(75) 3:14 3:15 4:11 5:2 5:3 6:16 7:8 |
| economic(3) 7:1 12:11 42:16 | | expenses(3) 20:18 32:6 39:17 | | formally(1) 19:12 | | 7:17 7:21 8:2 8:10 8:15 8:23 8:24 9:4 |
| ecro(1) 1:40 | | experience(6) 19:9 21:2 25:10 26:6 26:10 | | formed(1) 19:7 | | 9:10 9:11 11:11 12:13 14:16 16:8 16:13 |
| effect(2) 5:19 6:2 | | 26:17 | | former(4) 11:24 12:1 19:10 19:16 | | 16:20 16:24 17:7 17:19 18:1 19:20 20:10 |
| effective(3) 18:10 28:1 29:25 | | | | forms(2) 16:18 45:1 | | 22:19 24:14 24:15 25:10 25:13 25:13 |
| efficient(2) 18:17 28:7 | | experienced(1) 12:11 | | forth(3) 30:21 31:25 43:8 | | 25:16 25:24 26:23 27:13 27:14 28:9 28:13 |
| effort(1) 13:8 | | expertise(1) 25:16 | | forward(3) 36:5 37:10 42:1 | | 29:21 29:23 29:24 32:4 35:3 35:11 36:7 |
| efforts(5) 13:18 23:22 24:3 36:2 43:23 | | expiration(1) 14:4 | | four(3) 13:19 25:15 42:19 | | 36:24 37:20 37:22 38:11 38:17 38:18 39:5 |
| either(3) 15:5 39:1 41:15 | | expired(1) 14:1 | | fourth(2) 6:5 13:5 | | 39:25 41:20 42:5 42:12 42:17 42:20 43:7 |
| electronic(5) 1:48 13:15 19:3 25:14 47:2 | | explore(1) 24:1 | | frankly(1) 30:17 | | 43:12 43:18 43:25 44:6 44:7 45:1 45:6 |
| elements(1) 17:18 | | exposure(1) 28:17 | | friday(1) 45:23 | | 45:15 46:3 46:19 |
| else(1) 33:4 | | expressed(1) 25:13 | | friends(1) 13:9 | | |
| email(1) 8:23 | | expressions(1) 13:13 | | from(18) 6:3 8:9 8:14 8:23 11:4 19:23 | | haven't(1) 23:19 |
| employed(1) 34:16 | | extension(1) 16:8 | | 23:3 24:10 25:4 33:8 34:17 35:18 38:3 | | having(2) 26:15 |
| employee(2) 16:15 19:10 | | extensions(1) 16:4 | | 38:9 45:8 45:12 45:13 47:2 | | he's(6) 10:17 14:9 18:4 19:9 23:17 24:19 |
| employees(3) 19:16 34:13 34:15 | | extensive(1) 30:24 | | | | heads(2) 45:21 46:4 |
| end(1) 6:20 | | extensively(2) 20:15 33:22 | | fruition(1) 5:17 | | hear(4) 4:5 23:3 33:8 |
| ending(1) 16:3 | | faced(1) 41:5 | | full(2) 12:19 12:23 | | heard(11) 22:17 22:21 23:2 29:1 29:10 |
| endorsed(1) 43:18 | | facilitate(1) 15:14 | | fully(1) 45:5 | | 33:4 33:6 35:17 36:12 37:18 40:21 |
| endorsement(1) 40:19 | | facility(1) 8:19 | | funding(2) 44:22 45:14 | | |
| ensure(1) 18:23 | | fact(4) 6:13 28:11 30:25 33:25 | | funds(1) 30:9 | | hearing(15) 3:18 3:24 9:2 9:9 22:6 22:18 |
| enter(1) 19:22 | | factors(2) 30:4 42:11 | | further(9) 14:2 14:9 19:24 35:13 35:14 | | 33:13 33:14 40:20 40:23 43:22 45:2 46:1 |
| entered(8) 6:17 13:22 14:16 16:13 21:20 | | facts(2) 24:23 42:14 | | 37:19 37:20 41:25 43:6 | | 46:19 46:23 |
| 24:5 30:25 35:1 | | fair(3) 18:24 25:5 39:7 | | | | |
| | | fairly(2) 7:8 44:25 | | future(3) 26:4 26:16 46:6 | | hearings(1) 16:5 |
| entering(1) 31:10 | | faith(4) 18:8 22:5 31:18 39:8 | | gather(1) 3:22 | | heavily(2) 7:24 31:2 |
| enterprise(2) 10:22 11:19 | | familiar(5) 14:9 15:10 18:5 24:19 36:6 | | gave(1) 13:15 | | held(2) 10:17 11:1 |
| entirety(2) 22:13 30:2 | | far(4) 29:6 39:9 39:16 39:21 | | generally(1) 18:5 | | help(1) 41:24 |
| entities(4) 24:6 24:11 24:15 41:6 | | farther(1) 25:18 | | generated(1) 30:5 | | helps(1) 20:3 |
| entitle(1) 15:5 | | fast(2) 18:17 19:2 | | get(2) 45:9 46:9 | | here(23) 4:2 4:5 5:1 6:18 7:3 7:12 7:21 |
| entity(4) 5:22 13:20 24:16 24:17 | | favored(1) 19:19 | | ginger(1) 1:40 | | 8:2 8:4 8:10 8:15 16:13 23:3 26:22 29:19 |
| environment(1) 12:5 | | february(5) 6:10 13:7 24:1 28:12 36:2 | | give(3) 19:2 45:21 46:4 | | 30:12 30:17 32:1 35:11 38:12 38:14 39:3 |
| envision(1) 15:1 | | | | | | 40:11 |
| envisions(1) 18:13 | | | | | | high(2) 12:7 30:2 |
| | | | | | | higher(1) 26:21 |
| | | | | | | highest(2) 25:8 31:20 |

highly(1) 12:6
him(2) 10:20 24:24
his(24) 7:17 8:4 10:4 10:18 14:6 17:1
18:8 19:25 21:2 21:9 22:24 25:1 25:3
25:8 25:14 26:3 26:10 26:17 27:9 27:23
28:19 31:5 38:24 40:22

history(2) 11:15 38:22
hoc(1) 33:5
holding(2) 11:10 41:6
honor(48) 3:6 3:10 4:8 4:11 4:18 7:7 8:12
9:10 9:17 9:24 10:6 10:7 10:13 18:3
22:14 22:23 23:5 23:12 28:22 29:4 29:13
29:18 30:20 31:4 31:24 32:8 32:10 32:15
33:3 33:12 33:17 35:13 35:13 35:23 36:10
36:22 37:2 37:8 37:21 38:1 40:22 44:8
44:17 44:21 45:21 46:13 46:17 46:21

honorable(2) 1:17 37:13
hope(3) 14:5 31:22 46:19
hopefully(2) 9:7 9:8
horse(22) 11:10 14:11 19:25 20:8 20:11
21:4 21:8 24:9 25:7 25:22 25:25 26:8
26:12 26:19 33:23 34:3 34:11 34:25 37:10
41:5 43:10 43:11

how(1) 30:8
however(2) 9:1 17:4
hudson(1) 39:5
i'd(2) 3:22 8:12
i'll(4) 4:15 23:5 29:4 35:18
i'm(5) 3:9 29:6 32:12 33:24 38:10
ifsa(1) 30:6
illustrious(1) 38:18
immediately(1) 4:1
importance(2) 18:16 28:6
important(4) 6:12 6:19 17:4 22:7
impossible(1) 13:24
inc(1) 1:7
include(7) 6:6 10:19 12:16 16:1 18:25
19:6 26:25

included(5) 5:10 13:24 21:10 36:24 37:4
includes(1) 32:13
including(14) 7:5 11:8 12:12 13:10 16:21
20:15 21:12 24:3 24:9 26:5 27:21 31:12
33:19 42:22

incorporated(5) 7:20 8:2 8:19 10:17 23:15
indeed(4) 9:20 29:20 32:5 45:6
indicate(1) 41:23
indicated(1) 42:20
individuals(1) 19:12
induce(4) 18:15 21:4 26:19 28:4
induces(1) 39:10
industry(1) 12:8
information(7) 13:12 17:2 17:5 22:10
22:11 36:24 43:3

infrastructure(1) 11:18
ingersoll(1) 2:28
initial(1) 13:8
integrate(1) 11:21
intellectual(2) 5:10 16:12
intends(1) 18:23
intensive(1) 36:3
intent(1) 13:6
intention(1) 3:17
intentionally(2) 19:23 24:16
inter(1) 44:23
interdependenc(1) 15:7
interest(5) 7:5 13:13 20:11 25:13 25:25
interested(9) 11:9 13:10 24:6 24:12 24:15
24:17 26:8 28:8 31:7

interests(1) 21:12
interim(1) 44:22
internally(1) 5:4

into(23) 5:5 6:17 7:20 8:2 8:13 13:22
14:16 16:11 16:13 21:20 22:19 23:15 29:3
29:7 30:8 30:25 31:10 35:1 36:2 37:3
43:12 45:12 45:13

invested(1) 45:5
investment(1) 11:14
investors(2) 13:11 24:4
involved(8) 7:24 9:13 14:11 15:9 18:21
26:11 33:22 35:24

involving(2) 15:19 41:10
ipla(1) 16:12
issue(2) 16:8 42:7
issues(2) 7:4 16:1
it's(16) 3:4 8:18 13:8 19:24 20:11 22:7
25:25 32:17 32:19 35:5 36:8 36:13 36:13
39:17 44:13 44:16

its(9) 12:1 12:12 13:6 18:19 20:7 25:19
29:6 33:20 35:22

itself(4) 9:5 18:25 27:12 28:16
james(1) 1:33
job(1) 10:18
joint(5) 2:12 3:18 3:24 40:23 45:2
jokingly(1) 23:20
joseph(1) 1:34
judge(18) 1:18 3:13 3:14 3:20 3:25 4:20
9:23 33:10 33:13 33:18 35:21 37:25 38:5
38:14 40:18 40:22 43:21 43:24

judgment(5) 31:15 38:21 38:23 39:14
july(2) 19:7 45:12
june(6) 6:20 16:3 30:7 45:10 45:12 45:13
jurisdiction(1) 42:10
jurisdictions(2) 5:9 5:23
just(8) 8:13 29:14 44:12 44:13 44:17 45:7
45:21 46:8

justifies(1) 38:22
justify(2) 38:22 39:23
keep(1) 23:8
kevin(1) 1:17
kind(1) 46:5
king(1) 2:8
know(5) 4:9 44:5 44:9 45:22 46:9
knowledge(1) 28:9
known(3) 5:6 10:10 11:14
kush(3) 7:22 9:18 10:7
lack(1) 7:19
lags(1) 6:16
lanzkron(1) 1:34
large(2) 11:19 17:19
larger(1) 27:14
last(3) 5:24 10:25 30:7
latin(1) 14:13
laughter(1) 23:21
law(2) 29:15 39:3
layton(1) 2:5
lead(3) 10:21 11:8 31:22
leading(2) 36:3 36:11
leap(1) 8:13
leasing(1) 16:16
least(5) 6:13 23:15 24:8 25:15 34:12
leave(1) 16:6
led(1) 24:24
left(1) 19:10
legal(3) 5:22 30:15 39:13
length(7) 18:8 18:12 19:18 21:11 24:25
27:24 28:2

less(3) 17:16 20:16 27:2

let(2) 38:16 43:25
letter(3) 39:21 39:24 41:9
liberty(1) 1:35
license(2) 16:12 16:14
light(1) 7:18
like(6) 3:22 6:14 8:12 9:18 17:22 34:22
likely(3) 12:22 13:9 17:16
limited(2) 10:15 29:19
lined(1) 12:3
little(1) 8:9
lizzard(3) 13:8 23:13 24:12
llc(2) 11:10 41:7
llp(4) 1:23 1:32 2:13 2:22
loaned(1) 16:14
locations(1) 11:22
long(2) 43:24 44:25
looking(3) 29:18 30:2 46:5
losing(1) 27:20
lost(1) 46:9
ma  (4) 7:23 10:15 10:19 11:1
m5j(1) 2:44
mace(1) 1:40
made(3) 17:14 17:17 34:13
main(1) 14:21
maintain(1) 17:10
major(1) 21:12
make(5) 8:3 9:13 17:23 37:17 43:15
making(1) 18:25
managemen(5) 11:15 13:14 18:25 19:5
24:5

managing(2) 11:7 29:25
many(2) 25:15 40:9
march(1) 6:1
maris(1) 2:14
market(5) 1:10 1:26 18:19 23:22 25:16
marketed(1) 31:2
marketing(4) 6:4 6:9 13:18 30:24
markets(1) 12:4
marlin(1) 11:13
marowits(31) 3:9 3:11 3:13 4:21 4:23
10:23 29:21 33:10 34:18 34:21 35:9
35:15 35:18 35:21 37:1 37:14 37:19 37:22
37:25 38:2 38:5 38:8 38:11 38:13 38:14
38:14 40:17 40:18 44:2 44:4

mary(1) 2:29
material(1) 31:9
materials(10) 13:16 17:19 17:20 17:24
19:1 24:7 33:17 35:14 38:4 41:23

matter(3) 7:7 36:7 47:3
matters(8) 3:21 3:25 4:6 4:9 35:2 43:25
44:6 44:7

maximize(1) 13:2
may(12) 4:16 4:17 5:5 6:24 8:21 10:4
12:24 13:19 17:15 37:5 44:17 44:21

mba(1) 11:4
mcgill(1) 11:4
means(1) 25:16
measures(2) 18:23 18:24
meet(1) 32:6
memo(1) 13:12
men(3) 6:3 6:6 10:22
mention(1) 44:9
mentioned(2) 16:2 35:23
mergers(1) 10:8
met(3) 30:22 32:1 35:6
metro(1) 5:24
might(3) 24:15 24:17 30:10
million(10) 15:12 20:16 20:19 27:1 27:3
27:9 32:17 37:4 37:5 41:18

minus(1) 37:5
minute(1) 38:12
misplaced(1) 46:10

mister's(1) 39:2
mitigating(1) 30:4
mix(2) 13:10 24:4
moment(4) 16:6 20:7 31:21 44:10
moments(1) 38:6
monitor(12) 2:22 2:49 21:14 33:20 33:21
35:19 35:22 35:24 37:2 37:8 41:14 43:2

monitor's(4) 34:14 36:14 36:16 37:6
month(1) 6:21
months(1) 5:16
montreal(1) 11:5
more(2) 20:14 36:3
morning(11) 3:3 3:5 3:6 3:11 3:12 3:13
4:19 4:20 4:21 9:23 10:2

morris(1) 1:22
most(1) 26:13
motion(22) 3:18 4:3 4:15 7:11 10:10
20:15 33:18 34:2 35:23 38:4 38:17 40:15
40:21 41:2 41:16 42:1 43:13 43:17 43:19
45:10 45:11 45:25

move(3) 8:14 23:5 31:8
moved(1) 44:24
mss(15) 5:7 11:7 11:17 11:23 12:1 12:6
12:12 12:19 15:19 23:23 24:2 25:17 27:9
41:3 41:11

much(11) 4:23 4:24 10:6 29:13 30:8 33:12
34:22 44:1 46:12 46:17 46:21

multi(1) 10:11
multiple(2) 5:23 11:22
murray(12) 7:9 8:10 23:6 23:9 23:25
24:18 26:9 28:19 28:23 28:25 31:5 39:2

murray's(1) 23:13
must(1) 15:4
namely(1) 36:17
names(1) 5:3
nature(4) 18:22 38:19 40:3 40:11
near(1) 26:4
necessary(8) 8:6 27:15 28:20 31:13 39:18
40:13

need(4) 6:25 9:6 16:7 32:2
negotiated(3) 18:7 22:5 27:24
negotiating(2) 20:6 25:20
negotiation(5) 20:3 24:20 31:19 33:22
negotiations(6) 9:14 19:17 20:4 21:11
24:24 30:18

negotiator(2) 10:21 11:8
net(1) 25:3
network(2) 11:18 11:22
networks(4) 1:7 8:19 10:15 10:16
nevertheless(1) 7:18
new(3) 1:36 2:25 18:20
next(2) 44:18 44:19
nichols(1) 1:22
none(1) 23:3
normal(2) 32:14
nortel(43) 1:7 3:7 5:8 5:12 5:20 7:23 8:19
10:15 10:16 10:24 11:2 11:3 11:24 11:24
12:1 12:11 13:4 13:8 13:13 13:22 14:2
14:15 15:20 18:7 18:18 18:23 19:10 19:10
19:13 19:16 20:9 22:2 24:1 24:13 25:2
25:4 25:20 25:23 27:21 41:2 41:6 42:6
42:14

nortel's(2) 11:17 12:15
north(3) 1:26 2:8 14:12
not(29) 4:24 5:22 6:13 7:17 7:21 8:15
8:24 12:24 12:24 16:5 16:20 19:18 21:16
21:16 21:18 24:25 25:2 26:4 26:6 27:18
27:19 29:19 30:8 30:11 38:21 42:4 43:24
45:22 46:5

| Word | Page:Line |
|---|---|
| **note**(7) 7:7 7:25 8:14 9:10 32:12 33:21 34:15 | |
| **noted**(2) 36:15 37:12 | |
| **notice**(3) 31:18 40:10 44:18 | |
| **notwithstanding**(1) 28:10 | |
| **now**(7) 13:2 16:11 33:8 38:13 40:19 44:1 45:6 | |
| **nss**(1) 14:13 | |
| **number**(2) 12:17 15:25 | |
| **numerous**(2) 20:20 29:24 | |
| **o'brien**(3) 30:21 31:25 32:7 | |
| **object**(3) 9:2 29:9 42:18 | |
| **objection**(6) 8:17 8:24 9:4 9:7 22:19 23:1 | |
| **objections**(5) 7:19 8:15 33:24 41:14 42:20 | |
| **obligations**(1) 15:10 | |
| **obtain**(2) 16:7 31:21 | |
| **obvious**(1) 24:11 | |
| **obviously**(1) 30:5 | |
| **occasions**(1) 20:2 | |
| **occur**(1) 15:4 | |
| **off**(1) 43:25 | |
| **offer**(1) 20:1 | |
| **offered**(1) 25:4 | |
| **offers**(2) 26:21 34:14 | |
| **office**(1) 42:3 | |
| **official**(4) 9:12 16:21 21:13 45:4 | |
| **ogilvy**(1) 2:38 | |
| **okay**(7) 34:21 35:9 35:18 38:8 44:15 44:16 46:11 | |
| **omitted**(2) 19:23 24:15 | |
| **once**(4) 5:5 23:11 28:24 35:16 | |
| **one**(15) 1:35 2:7 5:23 13:20 16:13 19:23 21:7 22:18 30:4 36:1 42:15 44:8 44:21 45:19 46:3 | |
| **one-third**(2) 20:25 27:6 | |
| **only**(3) 6:25 32:4 38:21 | |
| **ontario**(1) 2:44 | |
| **onto**(2) 11:21 23:5 | |
| **operate**(1) 25:17 | |
| **operated**(1) 5:22 | |
| **operates**(1) 12:6 | |
| **operating**(2) 5:7 5:13 | |
| **opinion**(8) 17:1 18:8 19:25 21:9 25:2 25:3 25:14 27:9 | |
| **opportunity**(3) 9:4 18:1 40:1 | |
| **opposition**(1) 35:16 | |
| **oral**(1) 43:18 | |
| **order**(8) 36:9 37:23 40:10 40:15 43:5 43:6 43:7 43:19 | |
| **other**(45) 4:2 4:9 5:8 6:14 6:16 7:24 8:3 13:20 13:25 14:3 14:15 14:18 14:22 15:6 15:13 16:13 17:6 17:13 18:15 19:7 19:12 19:19 19:22 22:1 22:3 23:14 24:11 25:2 26:7 26:25 27:13 28:1 28:4 28:8 29:24 30:18 31:6 35:2 37:16 39:10 42:6 42:25 44:6 44:7 44:8 | |
| **others**(2) 3:7 3:16 | |
| **otherwise**(1) 26:21 | |
| **our**(11) 3:14 3:22 4:7 25:10 30:17 31:22 33:8 35:5 37:33 38:25 39:3 | |
| **out**(9) 5:20 5:20 6:3 7:15 7:16 30:14 30:14 32:18 34:3 | |
| **outlined**(2) 33:16 34:7 | |
| **over**(10) 5:16 5:17 10:24 10:24 11:14 12:23 19:19 25:2 29:16 44:24 | |
| **overlap**(1) 19:13 | |
| **overy**(1) 2:22 | |
| **own**(1) 21:7 | |
| **owner**(1) 19:6 | |

| Word | Page:Line |
|---|---|
| **p.m**(3) 38:9 38:9 46:23 | |
| **p.o**(3) 1:27 2:17 2:43 | |
| **paid**(11) 20:17 20:17 20:23 20:24 20:25 27:5 27:6 32:2 32:4 32:18 37:6 | |
| **paragraph**(1) 42:14 | |
| **paragraphs**(1) 36:13 | |
| **parent**(1) 10:16 | |
| **part**(2) 8:22 34:6 | |
| **participate**(6) 14:6 21:17 27:18 28:5 28:9 34:1 | |
| **particular**(5) 4:22 7:6 7:9 15:15 27:22 | |
| **particularly**(3) 5:13 6:24 28:11 | |
| **parties**(18) 11:9 13:9 13:12 13:13 13:14 13:15 13:19 14:5 14:24 16:20 21:12 24:3 24:7 26:7 28:9 28:12 31:7 31:7 | |
| **partners**(1) 11:13 | |
| **party**(5) 15:6 16:22 19:19 41:15 42:21 | |
| **pasquerella**(5) 2:49 35:19 35:20 37:2 | |
| **passage**(1) 26:7 | |
| **passport**(5) 5:6 6:7 6:10 10:12 23:23 | |
| **past**(4) 4:4 5:17 7:8 46:20 | |
| **pat**(1) 19:6 | |
| **payable**(1) 27:4 | |
| **payment**(2) 20:15 27:1 | |
| **payments**(2) 21:23 22:1 | |
| **penault**(1) 2:38 | |
| **pending**(1) 43:6 | |
| **pennsylvania**(1) 1:44 | |
| **people**(1) 19:14 | |
| **per**(1) 5:22 | |
| **percent**(5) 24:14 30:10 34:12 34:12 34:18 | |
| **percentage**(1) 30:2 | |
| **performance**(1) 28:18 | |
| **performed**(1) 24:13 | |
| **period**(4) 14:4 16:3 40:10 44:25 | |
| **perspective**(1) 34:17 | |
| **pertaining**(1) 36:19 | |
| **place**(3) 16:5 19:2 20:2 | |
| **plan**(3) 15:15 33:16 42:12 | |
| **platform**(1) 12:1 | |
| **plaza**(2) 1:35 2:41 | |
| **pleadings**(2) 8:1 14:10 | |
| **please**(4) 3:2 3:4 29:8 38:10 | |
| **plus**(1) 30:13 | |
| **pluto**(3) 5:3 5:4 10:12 | |
| **podium**(1) 4:15 | |
| **point**(3) 20:4 45:19 45:24 | |
| **portion**(3) 22:8 26:5 29:15 | |
| **portions**(1) 35:2 | |
| **position**(4) 10:17 21:8 25:21 38:6 | |
| **positioned**(1) 14:7 | |
| **positions**(1) 11:1 | |
| **possible**(2) 16:4 41:25 | |
| **posts**(1) 3:17 | |
| **potential**(14) 12:21 14:3 15:19 16:24 18:20 19:20 21:24 24:2 24:9 25:2 25:15 28:8 28:14 31:6 | |
| **potentially**(1) 24:12 | |
| **ppearances**(2) 1:20 2:1 | |
| **practice**(2) 3:15 43:14 | |
| **pre-petition**(1) 15:16 | |
| **prefer**(1) 25:2 | |
| **preference**(1) 19:15 | |
| **prepared**(1) 40:14 | |
| **preparing**(1) 13:5 | |
| **presence**(1) 26:11 | |
| **present**(5) 7:21 7:22 9:24 10:9 17:20 | |
| **presentations**(2) 13:14 24:6 | |
| **preserving**(3) 18:16 28:6 39:18 | |
| **president**(3) 7:23 10:8 10:14 | |
| **presiding**(1) 40:22 | |
| **pressure**(1) 12:12 | |
| **previous**(1) 42:9 | |

| Word | Page:Line |
|---|---|
| **previously**(6) 10:22 18:20 33:19 40:25 42:5 42:12 | |
| **price**(11) 12:21 15:2 15:11 15:12 27:8 27:11 30:3 31:20 39:7 39:11 41:17 | |
| **primarily**(1) 14:16 | |
| **principak**(1) 12:15 | |
| **principles**(2) 43:7 43:16 | |
| **prior**(4) 11:24 30:6 38:22 43:13 | |
| **private**(1) 11:14 | |
| **probably**(1) 45:22 | |
| **procedural**(5) 3:15 3:21 7:7 8:9 8:14 | |
| **procedure**(1) 4:3 | |
| **procedures**(25) 4:15 16:24 18:5 18:6 18:9 18:10 20:14 27:24 27:25 29:21 29:23 30:23 31:11 34:24 36:5 37:10 40:5 40:8 40:15 41:3 41:11 42:4 42:5 42:25 43:11 | |
| **proceed**(8) 3:18 4:3 4:4 4:14 8:10 10:4 33:11 38:15 | |
| **proceeding**(3) 3:19 4:1 22:25 | |
| **proceedings**(5) 1:16 1:48 5:21 42:13 47:3 | |
| **proceeds**(2) 30:4 30:10 | |
| **process**(36) 6:3 6:6 9:1 11:7 13:21 15:23 18:13 18:17 18:21 18:24 19:22 19:23 20:2 21:17 25:8 25:9 26:1 27:19 28:3 28:7 28:10 28:11 28:15 28:16 29:25 31:22 35:25 35:25 36:2 36:11 42:8 42:11 43:14 43:23 45:6 45:11 | |
| **processes**(2) 19:2 36:3 | |
| **produced**(1) 1:49 | |
| **product**(1) 12:3 | |
| **professionals**(1) 38:24 | |
| **proffer**(11) 8:3 9:18 10:5 16:6 16:11 22:13 22:19 23:6 28:22 29:2 39:2 | |
| **proffered**(1) 23:14 | |
| **proffers**(1) 31:6 | |
| **pronounced**(1) 39:4 | |
| **proper**(1) 40:8 | |
| **property**(5) 5:10 16:12 16:17 | |
| **proposal**(1) 15:21 | |
| **propose**(1) 35:14 | |
| **proposed**(6) 6:19 15:21 18:13 28:2 40:12 42:4 | |
| **prospective**(1) 17:12 | |
| **protections**(22) 8:25 20:14 20:21 20:22 20:24 21:3 21:6 21:10 21:18 26:9 26:10 26:18 26:22 26:25 27:4 27:5 27:10 27:19 29:22 30:18 31:12 34:25 | |
| **protective**(1) 8:20 | |
| **protocol**(3) 40:24 44:20 44:24 | |
| **proven**(5) 18:10 25:10 26:23 28:1 29:25 | |
| **provide**(5) 6:14 19:1 21:3 26:18 34:11 | |
| **provided**(6) 6:25 13:12 16:20 24:6 31:16 36:20 | |
| **providers**(1) 11:19 | |
| **provides**(7) 11:18 15:11 20:1 20:20 21:23 32:9 39:11 | |
| **providing**(2) 20:4 21:24 | |
| **provision**(1) 13:24 | |
| **provisions**(3) 14:21 35:7 40:24 | |
| **prudent**(1) 31:15 | |
| **pse**(1) 21:16 | |
| **psp**(25) 11:10 11:12 13:20 15:17 17:15 18:7 19:4 19:17 19:18 20:5 20:7 21:16 24:9 24:20 24:24 25:2 25:4 25:12 25:18 27:18 36:3 36:12 36:17 37:9 41:6 | |
| **psp's**(2) 18:7 27:20 | |
| **publically**(2) 17:2 17:14 | |

| Word | Page:Line |
|---|---|
| **purchase**(10) 12:21 15:2 15:11 15:12 20:6 27:8 27:10 30:3 31:20 39:7 | |
| **purchaser**(3) 6:15 17:12 21:25 | |
| **purchasers**(3) 18:20 22:2 33:25 | |
| **purpose**(1) 39:6 | |
| **pursuant**(1) 20:23 | |
| **pursue**(1) 13:21 | |
| **put**(3) 5:16 6:23 36:7 | |
| **puts**(2) 28:16 28:17 | |
| **qualified**(1) 24:21 | |
| **quarter**(2) 6:5 13:6 | |
| **questions**(3) 19:1 35:13 36:23 | |
| **quickly**(3) 12:25 29:14 31:8 | |
| **quite**(1) 26:24 | |
| **railway**(1) 39:5 | |
| **range**(1) 30:19 | |
| **rapid**(1) 12:7 | |
| **rare**(1) 25:5 | |
| **reach**(1) 13:25 | |
| **react**(1) 31:8 | |
| **read**(1) 9:4 | |
| **ready**(4) 33:11 38:13 38:14 45:19 | |
| **real**(2) 16:15 16:16 | |
| **realized**(3) 12:20 12:22 12:24 | |
| **really**(2) 39:11 46:17 | |
| **reason**(3) 31:14 42:18 45:9 | |
| **reasonable**(14) 18:9 18:14 20:4 20:18 21:10 25:5 26:11 27:11 27:25 28:4 31:18 37:7 39:8 41:22 | |
| **reasons**(5) 3:23 6:13 42:13 43:18 43:21 | |
| **recall**(2) 5:20 44:21 | |
| **receipt**(1) 15:22 | |
| **received**(1) 41:24 | |
| **receiving**(1) 22:2 | |
| **recent**(1) 18:10 | |
| **recently**(1) 36:3 | |
| **recess**(8) 3:20 3:22 4:6 37:23 38:6 38:7 38:9 46:20 | |
| **recommends**(2) 37:9 37:10 | |
| **reconnect**(1) 38:12 | |
| **record**(15) 7:20 8:2 23:15 23:20 33:18 33:24 35:10 36:13 38:19 39:1 39:19 40:19 41:20 42:22 43:8 | |
| **recorded**(1) 1:48 | |
| **recording**(2) 1:48 47:2 | |
| **redact**(1) 35:6 | |
| **redacted**(3) 22:8 35:4 35:9 | |
| **reduced**(1) 32:13 | |
| **reductions**(1) 41:18 | |
| **refer**(1) 42:13 | |
| **reference**(1) 43:15 | |
| **referred**(2) 5:2 5:4 | |
| **regard**(3) 34:6 34:10 36:23 | |
| **regarding**(3) 13:16 15:8 17:5 | |
| **regime**(1) 15:2 | |
| **region**(1) 14:21 | |
| **reidel**(6) 7:9 7:13 7:16 7:17 31:5 39:3 | |
| **reidel's**(2) 7:20 29:3 | |
| **reimbursemen**(13) 15:3 20:17 20:19 31:12 32:14 32:19 37:3 37:5 37:11 39:15 41:9 41:19 41:22 | |
| **reimbursement**(2) 27:2 32:3 | |
| **rejection**(1) 40:6 | |
| **relate**(1) 30:4 | |
| **related**(4) 15:17 29:22 30:16 40:15 | |
| **relates**(1) 36:19 | |
| **relating**(4) 16:8 16:15 17:14 41:3 | |
| **relationship**(1) 27:10 | |
| **relationships**(2) 17:5 17:10 | |
| **releases**(1) 40:7 | |
| **relief**(9) 8:15 8:25 9:15 29:19 29:20 31:16 40:16 42:25 46:5 | |
| **remain**(2) 12:23 17:6 | |

| Word | Page:Line | Word | Page:Line | Word | Page:Line | Word | Page:Line |
|---|---|---|---|---|---|---|---|
| remained(1) 14:2 | | sealing(1) 43:7 | | split(1) 32:24 | | telecom(1) 11:19 | |
| remaining(2) 20:25 27:6 | | search(1) 24:13 | | square(1) 3:7 | | terminate(2) 6:20 15:6 | |
| replicates(1) 14:21 | | seated(2) 3:4 38:10 | | stakeholders(1) 43:5 | | termination(1) 14:25 15:5 | |
| report(1) 9:15 33:21 34:15 35:22 36:11 36:14 36:16 40:19 41:14 42:23 43:2 | | section(1) 30:22 | | stalking(22) 11:10 14:11 19:25 20:8 20:11 21:4 21:8 24:9 25:7 25:22 25:25 26:8 26:12 26:19 33:22 34:3 34:11 34:23 37:9 41:5 43:10 43:11 | | test(1) 35:5 | |
| | | sections(1) 8:13 | | | | tested(1) 18:19 | |
| | | see(3) 3:4 32:14 44:14 | | | | testified(1) 31:5 | |
| reporting(1) 10:20 | | seeking(1) 34:23 | | | | testify(65) 10:9 10:13 10:14 10:18 11:6 11:6 11:12 11:16 11:23 12:5 12:10 12:15 12:18 13:1 13:4 13:18 13:22 14:2 14:8 14:9 14:15 15:8 15:14 15:18 15:24 16:18 17:1 18:4 18:12 18:18 19:4 19:17 19:20 19:24 20:5 20:9 20:13 20:22 21:2 21:9 21:15 21:19 22:4 22:7 23:12 23:25 24:10 24:18 25:1 25:8 25:12 25:18 25:23 26:3 26:10 26:14 26:17 26:25 27:8 27:17 27:23 28:2 28:8 28:19 | |
| represented(1) 24:21 | | seeks(2) 41:5 41:8 | | | | | |
| represents(1) 15:21 | | selection(1) 11:10 | | | | | |
| request(3) 17:17 17:24 44:18 | | sell(4) 10:10 12:13 13:6 23:23 | | stam(17) 2:39 9:19 9:22 9:23 10:1 10:2 33:11 33:12 34:20 34:22 35:12 37:19 37:20 37:24 38:1 38:3 41:24 | | | |
| requested(2) 36:16 42:25 | | sellers(3) 6:14 21:21 21:24 | | | | | |
| requests(1) 37:12 | | selling(1) 13:2 14:24 | | | | | |
| required(4) 30:16 31:14 32:7 45:14 | | sells(1) 12:1 | | stand(2) 38:7 46:20 | | | |
| requirements(6) 12:8 30:21 39:3 39:13 39:16 44:22 | | senior(1) 11:1 | | standalone(1) 12:13 | | | |
| | | sensitive(1) 22:9 40:2 43:3 | | standard(3) 30:10 30:12 31:25 | | testimony(2) 8:4 39:1 | |
| | | separate(2) 3:25 14:16 | | standards(3) 29:14 30:21 32:7 | | texas(3) 8:18 8:20 8:23 | |
| requires(1) 6:14 | | | | standpoint(2) 8:9 8:14 | | thank(43) 3:3 3:9 4:17 4:18 4:21 4:23 10:1 10:6 18:2 18:3 22:15 22:15 22:23 28:24 29:4 29:13 32:11 33:1 33:3 33:7 33:10 33:12 33:13 35:19 37:14 37:15 38:5 38:8 38:11 38:13 40:18 43:20 44:1 44:2 44:4 44:5 46:13 46:15 46:16 46:18 46:20 46:21 46:22 | |
| reserve(2) 9:1 33:7 | | september(15) 1:13 3:1 16:5 16:8 18:14 34:5 34:5 34:9 36:9 41:24 41:25 42:2 45:2 45:13 47:6 | | stargatt(1) 2:12 | | | |
| resolve(1) 9:8 | | | | start(1) 9:18 | | | |
| respect(9) 10:10 15:2 15:11 26:9 28:17 36:20 41:16 41:21 44:19 | | | | starting(2) 20:2 20:4 | | | |
| | | | | starts(1) 44:24 | | | |
| | | series(1) 5:16 | | state(2) 8:22 18:22 | | | |
| respects(1) 40:9 | | serious(3) 24:8 25:13 27:18 | | statement(1) 36:18 | | | |
| response(8) 22:17 22:21 23:2 29:1 29:10 33:6 35:17 37:18 | | seriously(1) 13:20 | | states(6) 1:1 1:18 2:11 10:20 30:11 40:21 | | | |
| | | serve(1) 25:21 | | stead(1) 7:20 | | | |
| | | served(1) 11:2 | | steady(1) 7:8 | | | |
| responsibilities(1) 10:18 | | serves(1) 39:11 | | steen(1) 1:31 | | that(301) 3:23 3:25 3:25 3:25 4:23 4:25 5:1 5:5 5:8 5:9 5:12 5:15 5:19 5:23 5:25 6:2 6:5 6:11 6:12 6:13 6:14 6:16 6:18 6:21 6:24 6:24 6:25 7:2 7:3 7:4 7:8 7:12 7:19 7:25 8:1 8:1 8:8 8:8 8:10 8:12 8:13 8:19 8:21 8:24 9:3 9:6 9:8 9:10 9:13 9:15 9:17 9:20 9:21 10:4 10:10 10:17 10:18 10:21 10:23 11:6 11:11 11:12 11:16 11:18 11:20 11:23 11:25 12:5 12:6 12:10 12:15 12:18 12:20 12:21 12:23 13:1 13:2 13:4 13:11 13:12 13:18 13:20 13:22 13:23 13:24 14:2 14:5 14:5 14:6 14:9 14:10 14:11 14:15 14:20 15:8 15:9 15:11 15:11 15:14 15:18 15:20 15:24 16:4 16:18 16:23 17:1 17:4 17:7 17:8 17:10 17:11 17:13 17:18 18:4 18:6 18:8 18:12 18:18 18:20 18:23 18:24 19:2 19:4 19:8 19:9 19:11 19:13 19:14 19:15 19:17 19:18 19:20 19:21 19:22 19:24 19:25 20:1 20:2 20:5 20:6 20:9 21:9 21:21 21:22 22:2 22:7 22:7 22:10 22:13 23:13 23:14 23:20 24:1 24:4 24:10 24:11 24:12 24:13 24:15 24:17 24:19 24:19 24:22 24:24 24:24 25:1 25:3 25:8 25:10 25:12 25:14 25:18 25:23 25:24 26:3 26:6 26:10 26:14 26:15 26:16 26:17 26:21 26:25 27:3 27:8 27:9 27:11 27:13 27:17 27:18 27:20 27:23 27:24 28:2 28:8 28:11 28:19 28:22 29:16 29:20 29:21 29:23 30:4 30:4 30:5 30:6 30:10 30:13 30:16 30:20 30:24 30:25 31:2 31:6 31:7 31:9 31:9 31:11 31:15 31:16 31:18 31:19 31:21 31:22 31:24 32:1 32:2 32:3 32:3 32:4 32:5 32:8 32:12 32:13 32:14 32:18 32:22 32:24 33:4 34:7 34:10 34:11 34:15 34:18 34:25 35:2 35:5 35:6 35:11 35:15 36:6 36:8 36:12 36:18 36:23 37:5 37:7 37:12 37:23 38:4 38:17 38:25 39:3 39:7 39:12 39:14 39:17 39:19 39:22 39:22 40:2 40:8 40:10 40:14 41:21 41:23 41:24 41:25 42:2 42:9 42:24 43:1 43:5 43:12 43:23 43:21 43:23 43:24 43:25 44:14 44:24 44:25 45:5 45:11 | |
| restructuring(1) 12:20 | | service(5) 1:42 1:49 10:11 11:19 20:7 | | | | | |
| result(5) 12:10 12:13 13:1 26:7 30:20 | | services(12) 1:42 6:15 6:19 6:24 6:25 11:25 16:2 21:25 22:2 34:7 35:1 36:20 | | still(2) 23:17 44:9 | | | |
| resulted(1) 13:19 | | | | stops(1) 44:24 | | | |
| resulting(1) 24:8 | | | | strategic(2) 13:11 24:4 | | | |
| review(3) 17:23 18:1 40:1 | | serving(1) 26:8 | | streamlining(1) 43:23 | | | |
| reviewing(1) 45:16 | | set(5) 30:21 31:25 34:3 43:7 45:25 | | street(7) 1:10 1:26 1:43 2:8 2:16 2:31 | | | |
| richards(1) 2:5 | | settlement(4) 44:22 45:14 | | stronger(2) 21:6 26:22 | | | |
| richardson(1) 8:20 | | seven(1) 6:21 | | sub-leasing(1) 16:16 | | | |
| right(15) 4:7 4:14 8:7 8:13 22:18 23:20 29:2 29:11 32:16 33:1 33:7 36:25 37:1 45:6 46:18 | | several(2) 25:12 28:12 | | subject(9) 3:16 8:5 15:12 15:22 16:4 22:5 26:20 30:5 41:18 | | | |
| | | short(5) 5:17 23:8 28:3 | | | | | |
| | | shorten(1) 44:18 | | | | | |
| rights(2) 9:1 14:25 | | shortening(1) 40:10 | | submission(1) 35:5 40:3 | | | |
| rise(1) 3:2 | | shortly(1) 23:4 | | submissions(1) 37:17 | | | |
| risk(7) 6:23 24:6 21:16 27:18 28:16 28:18 32:22 | | should(3) 3:8 28:9 29:5 | | submit(2) 18:15 28:5 | | | |
| | | shows(1) 31:2 | | submitted(4) 13:13 14:10 17:25 18:5 | | | |
| | | side(10) 21:19 21:22 22:4 22:8 34:25 35:7 34:18 39:21 39:24 41:9 | | submitting(1) 13:19 | | | |
| robust(1) 26:13 | | | | substantial(7) 6:11 12:9 15:7 21:16 28:13 30:15 39:19 | | | |
| rodney(1) 2:7 | | | | | | that(10) 45:14 45:16 45:19 45:25 46:4 46:5 46:9 46:12 46:16 47:1 | |
| role(1) 45:15 | | sienna(2) 6:1 12:16 | | | | | |
| roles(1) 11:3 | | sierra(1) 35:5 43:8 | | substantially(5) 14:12 18:9 27:16 29:23 31:1 | | | |
| room(3) 13:16 19:3 25:14 | | sign(4) 20:11 25:25 40:14 43:24 | | | | | |
| rooney(1) 2:28 | | signed(4) 16:23 19:21 26:15 43:19 | | subtracting(1) 32:18 | | that's(8) 19:14 22:15 34:14 35:12 35:12 36:1 37:3 46:8 | |
| royal(1) 2:41 | | significant(5) 12:11 12:18 17:8 34:14 | | successful(3) 19:5 26:24 46:19 | | | |
| ruling(2) 4:7 38:15 | | similar(8) 14:17 18:9 27:13 27:16 27:25 29:23 30:19 36:6 | | such(3) 21:3 26:18 26:22 | | | |
| run(1) 29:19 | | | | suddenly(1) 7:16 | | | |
| said(2) 7:2 33:20 | | | | sufficient(2) 17:2 36:12 | | | |
| | | simultaneously(1) 15:4 | | suite(2) 2:31 2:40 | | | |
| sale(39) 5:25 6:5 9:2 9:5 9:9 11:7 12:22 12:24 13:21 14:9 14:11 15:15 15:16 16:5 18:21 18:24 20:1 22:6 24:2 24:9 24:20 25:20 29:24 30:5 31:10 35:25 36:2 36:11 39:6 41:12 42:6 42:8 42:10 42:11 42:15 42:16 42:18 43:13 43:17 | | since(4) 10:17 11:2 11:3 28:12 | | sum(1) 32:8 | | | |
| | | single(3) 8:17 11:22 15:1 | | summary(1) 37:8 | | | |
| | | sir(2) 3:12 38:7 | | sunset(1) 13:24 | | | |
| | | six(1) 23:14 | | support(4) 7:15 7:25 9:15 35:23 | | | |
| | | slip(1) 5:5 | | supported(1) 31:13 | | | |
| | | smaller(1) 12:17 | | supportive(1) 35:25 | | | |
| | | software(1) 11:25 12:12 | | supports(1) 11:23 | | | |
| sales(6) 10:21 11:25 17:7 18:11 28:1 38:19 | | sold(7) 5:14 11:17 11:24 17:9 19:14 25:6 26:4 | | supreme(1) 43:8 | | | |
| samis(1) 2:6 | | | | sure(1) 9:13 | | | |
| samite(1) 19:6 | | | | surrounding(1) 20:21 | | | |
| satisfied(8) 38:25 39:6 39:14 39:19 39:22 42:9 42:24 43:1 | | solid(1) 20:1 | | swift(1) 16:7 | | | |
| | | solutions(2) 11:18 11:20 | | switch(1) 10:11 | | | |
| | | some(1) 3:25 | | sworn(1) 41:13 | | | |
| | | someone(1) 7:21 | | synonymous(1) 10:12 | | | |
| satisfies(1) 39:13 | | somewhat(2) 28:3 30:1 | | sysco(1) 12:16 | | | |
| say(2) 23:20 38:16 | | sorry(4) 3:9 38:2 38:11 43:10 | | table(1) 26:13 | | | |
| scale(1) 12:8 | | sought(6) 8:15 8:25 9:15 29:22 31:17 | | take(5) 16:5 18:23 36:10 36:23 43:24 | | | |
| scheduled(5) 4:24 6:20 42:3 45:2 46:3 | | sound(5) 1:48 31:14 39:6 43:16 47:2 | | taken(4) 23:19 37:3 41:14 43:12 | | | |
| school(1) 23:18 | | south(1) 2:41 | | talk(1) 16:7 | | | |
| schuylkill(1) 1:43 | | speak(1) 30:10 | | talking(3) 6:2 30:15 30:19 | | | |
| sea(1) 10:22 | | speaker(1) 10:2 | | taylor(1) 2:13 | | | |
| seal(7) 16:19 17:19 18:1 22:9 35:4 40:2 40:4 | | special(1) 11:12 | | team(2) 3:7 19:5 | | | |
| | | specific(2) 17:4 36:23 | | teams(1) 10:20 | | | |
| | | specifically(1) 40:1 | | technological(1) 12:7 | | | |
| sealed(3) 36:16 37:12 43:6 | | speed(1) 18:22 | | technologies(2) 19:7 19:9 | | | |
| | | spent(2) 20:5 25:19 | | | | | |

| Word | Page:Line |
|---|---|
| **the**(301) 1:1 1:2 1:17 2:4 2:15 2:24 2:30 3:2 3:3 3:7 3:8 3:9 3:12 3:15 3:16 3:17 3:17 3:18 3:18 3:19 3:19 3:22 3:24 4:2 4:3 4:4 4:4 4:5 4:9 4:10 4:13 4:14 4:15 4:17 4:19 5:1 5:3 5:4 5:6 5:6 5:7 5:10 5:11 5:14 5:17 5:19 5:21 5:21 5:23 5:24 5:25 6:1 6:2 6:3 6:4 6:5 6:6 6:6 6:8 6:9 6:10 6:13 6:14 6:15 6:15 6:16 6:18 6:19 6:19 6:20 6:22 6:22 6:23 6:23 6:24 7:5 7:5 7:6 7:10 7:11 7:12 7:14 7:18 7:22 8:1 8:2 8:5 8:7 8:13 8:15 8:16 8:18 8:19 8:22 8:23 8:24 8:25 9:1 9:2 9:3 9:5 9:7 9:8 9:9 9:11 9:12 9:14 9:14 9:15 9:18 9:20 9:22 9:24 10:1 10:4 10:7 10:10 10:10 10:11 10:11 10:12 10:14 10:15 10:16 10:17 10:19 10:20 10:21 10:22 10:24 11:1 11:7 11:7 11:8 11:9 11:10 11:16 11:20 11:23 11:25 12:5 12:6 12:6 12:7 12:8 12:10 12:12 12:13 12:14 12:17 12:19 12:19 12:21 12:22 12:22 12:23 12:24 13:2 13:2 13:3 13:3 13:5 13:5 13:10 13:12 13:15 13:17 13:21 13:22 13:25 14:3 14:4 14:4 14:5 14:6 14:9 14:10 14:11 14:11 14:12 14:13 14:17 14:19 14:20 14:21 14:21 14:22 14:23 14:23 14:24 14:24 14:25 15:2 15:3 15:3 15:4 15:4 15:6 15:7 15:8 15:9 15:11 15:12 15:14 15:15 15:15 15:17 15:18 15:19 15:20 15:20 15:21 15:21 15:22 15:22 15:23 15:24 16:4 16:5 16:6 16:7 16:8 16:8 16:8 16:10 16:11 16:11 16:12 16:16 16:16 16:21 16:22 16:24 17:1 17:3 17:3 17:6 17:8 17:9 17:9 17:10 17:11 17:12 17:13 17:14 17:15 17:15 17:16 17:18 17:21 17:22 17:22 17:24 17:25 18:5 18:6 18:8 18:10 18:12 18:12 18:13 18:14 18:16 18:16 18:16 18:19 18:21 18:22 18:22 18:22 18:24 19:3 19:5 19:5 19:6 19:9 19:14 19:16 19:21 19:23 19:25 20:2 20:2 20:3 20:6 20:7 20:7 20:9 20:11 20:11 20:12 20:13 | |
| **the**(301) 20:15 20:15 20:16 20:19 20:20 20:21 20:22 20:23 20:23 20:24 20:24 20:25 21:3 21:4 21:4 21:5 21:5 21:7 21:9 21:13 21:13 21:14 21:17 21:17 21:20 21:22 21:22 21:23 21:25 22:2 22:4 22:5 22:8 22:11 22:13 22:13 22:15 22:18 22:19 22:22 22:24 22:24 23:1 23:3 23:5 23:7 23:9 23:10 23:13 23:15 23:16 23:17 23:19 23:19 23:20 23:22 23:23 23:24 24:1 24:2 24:7 24:9 24:16 24:19 24:20 24:24 24:22 24:23 24:24 25:3 25:4 25:5 25:7 25:8 25:13 25:14 25:16 25:17 25:18 25:20 25:21 25:23 25:25 26:3 26:4 26:4 26:5 26:16 26:17 26:8 26:9 26:10 26:11 26:13 26:16 26:17 26:18 26:19 26:19 26:20 26:25 27:1 27:1 27:3 27:4 27:5 27:5 27:6 27:6 27:8 27:9 27:9 27:10 27:10 27:11 27:11 27:12 27:12 27:13 27:15 27:19 27:19 27:21 27:21 27:23 27:25 28:2 28:2 28:4 28:6 28:6 28:6 28:9 28:10 28:10 28:11 28:15 28:16 28:16 28:17 28:17 28:18 28:19 28:20 28:22 28:24 29:2 29:2 29:5 29:9 29:11 29:14 29:14 29:15 29:17 29:19 29:21 29:22 29:25 30:1 30:1 30:2 30:3 30:4 30:5 30:6 30:6 30:8 30:9 30:9 30:9 30:10 30:11 30:12 30:19 30:19 30:21 30:23 30:24 30:24 31:6 31:7 31:10 31:10 31:11 31:11 31:12 31:12 31:14 31:15 31:15 31:16 31:19 31:19 31:19 31:20 31:21 31:22 31:25 32:1 32:2 32:4 32:6 32:8 32:11 32:11 32:13 32:13 32:16 32:19 32:21 32:23 32:25 33:1 33:4 33:5 33:5 33:7 33:15 33:16 33:17 33:18 33:19 33:20 33:20 33:21 33:22 33:22 33:24 34:1 34:3 34:4 34:6 34:9 34:11 34:12 34:14 34:15 34:16 34:22 34:23 34:23 34:24 34:24 34:25 35:3 35:3 35:5 35:6 35:7 35:7 35:8 35:9 35:10 35:10 35:14 35:19 35:22 35:23 35:24 35:25 35:25 36:1 36:2 36:3 36:5 36:7 36:8 36:10 36:10 36:11 36:11 36:13 36:14 36:15 36:15 36:17 36:17 36:18 36:20 36:25 37:7 37:3 37:4 37:4 37:6 37:6 37:6 37:8 37:9 37:9 37:10 37:11 37:11 37:11 37:12 38:3 38:20 38:20 38:21 38:22 38:23 38:23 38:24 39:1 39:3 39:3 39:4 39:5 39:6 39:7 39:7 39:9 39:9 39:10 39:11 39:12 39:12 39:13 39:13 39:14 39:15 39:16 39:18 39:18 39:19 39:20 39:21 39:21 39:22 39:23 39:23 39:23 39:24 39:25 39:25 40:1 40:3 40:3 40:5 40:5 40:8 40:10 40:11 40:12 40:12 40:14 40:20 40:21 40:24 40:24 40:25 41:2 41:2 41:3 41:3 41:8 41:9 41:10 41:10 41:11 41:11 41:11 41:12 41:14 41:14 41:15 41:16 41:17 41:17 41:20 41:21 41:21 41:22 41:23 41:23 42:1 42:3 42:4 42:6 42:6 42:7 42:8 42:10 42:10 42:11 42:11 42:12 42:12 42:12 42:15 42:16 42:17 42:18 42:18 42:22 42:22 42:23 42:24 42:25 43:2 43:4 43:4 43:6 43:7 43:7 43:8 43:8 43:10 43:11 43:11 43:12 43:13 43:14 43:14 43:15 43:16 43:18 43:19 43:19 43:22 43:23 44:1 44:2 44:5 44:5 44:7 44:10 44:11 44:15 44:17 44:18 44:19 44:21 44:22 44:23 45:2 45:3 45:4 45:5 45:9 45:9 45:11 45:13 45:13 45:15 45:17 45:20 45:24 46:2 46:4 46:5 46:7 46:12 46:15 46:18 46:20 46:22 46:23 47:1 47:2 47:2 47:3 | |
| **their**(10) 9:1 9:4 17:11 17:24 20:10 21:22 22:3 25:24 25:25 31:6 | |
| **them**(3) 17:23 18:1 45:8 | |
| **then**(11) 3:21 4:5 4:6 12:2 29:2 29:11 29:15 35:19 38:6 45:13 46:16 | |
| **there**(30) 4:6 4:9 5:8 6:11 6:24 8:17 8:18 15:6 16:13 16:14 17:17 19:13 19:21 21:15 22:1 27:3 28:12 30:3 31:9 32:1 33:24 35:2 35:15 36:25 38:1 38:3 39:19 42:19 42:20 44:8 | |
| **there's**(6) 6:21 19:14 26:14 26:16 27:17 45:10 | |
| **thereafter**(1) 4:1 | |
| **therefore**(3) 17:17 25:21 32:6 | |
| **these**(26) 5:21 11:20 12:1 12:19 13:18 14:5 14:22 16:19 16:20 16:25 17:7 18:6 18:11 18:24 19:13 24:12 25:10 26:23 27:13 28:1 30:22 32:14 34:6 42:13 42:14 43:5 | |
| **they**(14) 8:24 9:1 9:13 14:6 17:25 21:4 23:19 24:14 24:15 26:19 27:25 30:7 40:2 44:16 | |
| **thing**(2) 32:5 44:8 | |
| **things**(1) 14:22 | |
| **think**(9) 7:2 9:6 23:14 30:11 38:12 40:9 44:11 45:7 45:19 | |
| **thinking**(1) 29:6 | |
| **third**(1) 39:3 | |
| **this**(60) 5:3 5:14 6:4 6:13 6:16 6:25 7:24 8:14 8:22 10:23 12:16 13:5 13:6 13:7 13:25 14:17 17:18 19:11 19:22 20:22 21:10 22:10 23:8 23:23 25:10 26:1 26:11 27:15 27:20 28:11 28:12 29:20 30:24 30:24 31:2 31:8 32:9 34:1 34:13 35:16 36:7 36:21 37:13 38:18 38:19 39:17 40:19 40:19 40:23 40:25 41:2 41:15 42:2 42:6 42:7 42:8 42:9 42:15 43:13 43:14 | |
| **those**(28) 4:2 4:11 7:4 15:10 15:10 15:17 16:1 17:20 17:23 21:3 22:1 24:3 24:10 24:14 24:24 26:18 26:22 27:24 32:3 35:6 36:6 36:16 36:25 37:7 40:4 40:8 45:1 | |
| **though**(3) 19:10 26:20 27:14 | |
| **three**(2) 24:8 42:17 | |
| **through**(15) 4:10 12:22 15:23 18:17 21:11 25:9 28:7 29:14 33:15 33:16 35:14 36:10 36:13 39:1 42:3 | |
| **throughout**(4) 9:11 11:20 13:21 35:24 | |
| **time**(14) 9:9 12:23 20:6 20:12 25:20 26:2 26:7 28:13 34:9 36:1 40:11 42:16 44:25 45:19 | |
| **timeframe**(3) 5:17 6:1 28:10 | |
| **timeline**(3) 6:21 30:23 31:8 | |
| **times**(3) 24:22 35:24 40:12 | |
| **timing**(5) 6:15 6:18 28:16 28:20 40:9 | |
| **today**(21) 3:15 4:22 5:2 5:15 6:3 8:25 9:8 9:16 10:9 10:13 11:11 17:18 18:6 25:21 33:13 33:25 35:16 41:16 42:25 43:24 45:22 | |
| **together**(2) 5:16 45:18 | |
| **tomorrow**(1) 45:23 | |
| **too**(2) 22:9 46:5 | |
| **toronto**(7) 2:44 3:17 7:22 8:5 9:21 9:25 10:8 | |
| **total**(3) 25:15 32:17 32:19 | |
| **tower**(1) 2:41 | |
| **town**(1) 7:16 | |
| **traci**(1) 47:7 | |
| **track**(1) 38:19 | |
| **trademark**(1) 16:14 | |
| **transaction**(32) 5:1 5:2 5:3 5:4 5:15 6:12 6:16 6:23 7:3 7:4 8:22 13:21 17:3 17:15 17:16 21:10 25:4 26:11 27:12 27:15 28:1 31:2 32:4 32:9 33:16 33:23 36:21 39:12 40:12 41:17 42:1 42:15 | |
| **transactions**(17) 5:23 6:14 6:16 7:8 7:24 10:19 10:24 14:18 15:9 15:19 15:21 16:13 24:25 27:13 27:14 29:24 42:9 | |
| **transcriber**(1) 47:8 | |
| **transcript**(3) 1:16 1:49 47:2 | |
| **transcription**(2) 1:42 1:49 | |
| **transferred**(2) 8:22 14:23 | |
| **transition**(8) 6:15 6:19 6:23 6:25 16:2 34:7 35:1 36:20 | |
| **triggered**(1) 22:1 | |
| **triggering**(1) 27:4 | |
| **true**(1) 25:11 | |
| **trust**(1) 43:16 | |
| **trustee**(1) 17:24 | |
| **try**(1) 23:8 | |
| **tsa**(3) 16:9 21:25 28:17 | |
| **tsa's**(1) 22:3 | |
| **tuesday**(1) 45:23 | |
| **tunnell**(1) 1:23 | |
| **turn**(1) 29:15 | |
| **turns**(1) 7:15 | |
| **twice**(1) 35:16 | |
| **two**(7) 14:22 15:1 15:7 19:12 25:15 30:3 42:16 | |
| **two-thirds**(2) 20:23 27:4 | |
| **type**(2) 31:7 39:11 | |
| **u.s**(21) 3:19 7:6 7:12 15:15 17:24 20:24 21:21 21:23 26:5 27:5 27:21 29:15 29:15 30:9 31:10 34:22 40:25 41:15 41:17 44:1 45:15 | |
| **ultimately**(1) 13:15 | |
| **unattended**(1) 46:10 | |
| **under**(17) 6:19 11:15 16:19 16:24 17:19 18:1 22:3 22:8 27:11 28:20 32:7 35:4 38:20 39:3 40:2 40:4 42:11 | |
| **understand**(3) 9:3 38:15 42:2 | |
| **understanding**(1) 3:24 | |
| **unfamiliar**(1) 29:20 | |
| **unique**(2) 20:7 20:20 | |
| **united**(6) 1:1 1:18 2:11 10:20 30:11 40:21 | |
| **units**(2) 11:24 12:2 | |
| **university**(2) 11:4 23:18 | |
| **unknown**(1) 10:2 | |
| **unless**(3) 10:3 35:13 36:22 | |
| **unlike**(1) 42:4 | |
| **unlikely**(1) 6:6 | |
| **unrecovered**(1) 21:24 | |
| **unredacted**(2) 35:10 36:18 | |
| **unsecured**(4) 9:12 16:21 21:13 45:4 | |
| **unsold**(1) 12:23 | |
| **upon**(2) 38:25 39:19 | |
| **users**(1) 11:22 | |
| **using**(1) 19:25 | |
| **valecimo**(1) 34:2 | |
| **value**(15) 12:18 12:19 12:24 13:3 17:9 17:12 17:15 18:16 21:7 25:3 25:5 25:9 26:6 26:12 28:6 | |
| **variety**(1) 6:13 | |
| **various**(12) 5:9 7:5 11:2 11:8 13:3 15:20 16:1 20:9 22:11 25:23 32:25 41:6 | |
| **vehicle**(1) 11:13 | |
| **vendors**(1) 12:17 | |
| **venture**(1) 19:8 | |
| **vernacular**(1) 5:5 | |
| **version**(1) 38:3 | |
| **versions**(1) 35:10 | |
| **very**(25) 4:23 4:24 5:14 5:17 6:11 6:18 7:2 9:11 10:6 15:9 22:22 29:13 29:14 29:17 29:25 30:19 33:12 36:5 36:6 44:1 44:25 45:24 45:24 46:17 46:21 | |
| **via**(1) 40:20 | |
| **vice**(3) 7:23 10:7 10:14 | |

| Word | Page:Line | Word | Page:Line |
|---|---|---|---|
| **video**(3) 2:36 11:21 40:20 | | **work**(6) 6:11 27:15 30:13 30:15 30:15 30:16 | |
| **view**(7) 14:6 15:20 25:8 26:3 27:23 28:19 37:6 | | | |
| | | **worked**(3) 9:11 19:12 19:12 | |
| **views**(2) 3:16 3:16 | | **working**(2) 15:13 45:6 | |
| **vigorous**(2) 24:22 31:23 | | **world**(3) 5:21 11:20 12:17 | |
| **voice**(1) 11:21 | | **worldwide**(1) 5:13 | |
| **wait**(1) 3:8 | | **would**(98) 3:23 4:3 4:4 4:5 4:6 7:1 7:7 | |
| **waiting**(1) 45:7 | | 7:18 8:1 8:14 9:10 9:18 9:21 10:14 10:18 | |
| **want**(4) 4:21 44:8 44:12 45:9 | | 11:6 11:12 11:16 11:23 12:5 12:10 12:15 | |
| **wanted**(3) 44:13 45:21 46:4 | | 12:18 13:1 13:4 13:18 13:22 14:2 14:7 | |
| **warranted**(1) 42:15 | | 14:8 14:15 15:5 15:8 15:14 15:18 15:24 | |
| **was**(26) 3:17 5:24 5:25 6:6 10:21 13:12 | | 16:18 17:1 17:15 17:22 18:4 18:12 18:18 | |
| 13:24 19:13 19:15 19:18 22:4 24:16 24:20 | | 19:4 19:5 19:17 19:20 19:24 20:5 20:9 | |
| 30:13 30:16 38:4 40:20 40:23 44:8 44:12 | | 20:13 20:17 20:22 20:24 21:2 21:9 21:15 | |
| 44:23 45:12 45:12 46:16 46:18 46:23 | | 21:16 21:16 21:19 22:1 22:4 22:7 22:11 | |
| | | 23:13 23:25 24:10 24:11 24:18 24:18 | |
| **wasn't**(1) 36:23 | | 24:25 25:1 25:3 25:8 25:12 25:18 25:23 | |
| **way**(2) 13:2 41:18 | | 26:3 26:5 26:7 26:10 26:14 26:17 26:25 | |
| **we'll**(7) 9:7 9:8 23:3 32:5 36:8 43:24 46:4 | | 27:8 27:17 27:20 27:23 28:2 28:8 28:19 | |
| **we're**(12) 5:1 5:14 6:2 6:18 6:21 29:18 | | 31:8 32:10 32:18 32:24 33:21 34:8 35:10 | |
| 32:22 38:11 44:9 44:25 45:7 45:23 | | | |
| | | **www.diazdata.com**(1) 1:46 | |
| **we've**(3) 4:4 23:14 31:21 | | **year**(5) 5:24 6:4 10:17 28:12 30:7 | |
| **wed**(1) 3:1 | | **years**(1) 10:25 | |
| **week**(1) 44:19 | | **yes**(29) 4:13 4:19 5:11 6:8 7:10 7:14 8:16 | |
| **weeks**(1) 5:18 | | 9:3 10:4 14:19 16:10 17:21 23:1 23:7 | |
| **well**(20) 5:7 8:11 11:9 11:14 14:7 15:5 | | 23:10 23:24 29:8 32:23 33:12 34:20 34:22 | |
| 16:14 18:15 21:21 22:22 28:17 29:17 | | 37:24 38:7 38:16 44:7 44:11 45:3 45:17 | |
| 34:24 34:25 35:2 35:3 35:7 38:16 38:22 | | 46:2 | |
| 41:9 | | **york**(2) 1:36 2:25 | |
| **were**(18) 4:24 9:13 16:19 17:14 17:25 | | **you**(66) 3:3 3:4 3:9 4:17 4:17 4:18 4:21 | |
| 18:6 19:18 21:11 24:5 24:22 27:24 30:18 | | 4:23 4:24 5:20 9:20 10:1 10:4 10:6 11:11 | |
| 30:19 34:6 38:1 38:3 41:14 44:16 | | 18:2 18:3 22:15 22:15 22:23 23:9 28:24 | |
| | | 29:4 29:13 32:11 32:12 33:1 33:3 33:7 | |
| **west**(2) 2:16 2:31 | | 33:10 33:11 33:12 33:13 35:19 36:24 | |
| **whatever**(1) 20:16 | | 36:24 37:14 37:15 37:22 38:5 38:6 38:8 | |
| **what**(2) 14:17 29:18 | | 38:11 38:13 40:18 43:20 43:25 43:25 44:1 | |
| **when**(7) 5:20 6:5 16:6 16:7 22:1 30:2 46:5 | | 44:2 44:4 44:5 44:12 44:17 44:21 45:22 | |
| **where**(2) 3:20 26:13 | | 46:4 46:9 46:14 46:15 46:16 46:18 46:19 | |
| **whereupon**(1) 46:23 | | 46:20 46:21 46:22 | |
| **whether**(1) 42:7 | | | |
| **which**(21) 3:24 5:2 6:13 7:1 8:25 12:2 | | **you'll**(1) 38:15 | |
| 12:5 16:2 16:12 18:13 20:17 26:23 27:2 | | **you've**(1) 36:12 | |
| 28:3 35:1 35:3 35:4 39:1 40:24 42:5 43:4 | | **young**(2) 2:12 2:21 | |
| | | **your**(51) 3:6 3:10 3:16 4:8 4:11 4:18 7:7 | |
| **while**(2) 12:18 29:6 | | 8:12 9:10 9:17 9:23 10:6 10:7 10:13 18:3 | |
| **white**(1) 2:23 | | 22:14 22:23 23:5 23:12 28:22 29:4 29:13 | |
| **who**(5) 7:22 13:13 19:12 28:13 33:19 | | 29:18 30:20 31:4 31:24 32:8 32:10 32:15 | |
| **who's**(1) 7:23 | | 33:3 33:12 33:17 35:12 35:13 35:22 36:10 | |
| **whole**(1) 42:16 | | 36:22 36:24 37:2 37:8 37:20 38:1 38:15 | |
| **will**(35) 3:21 3:23 4:1 7:3 7:24 8:3 14:5 | | 40:15 44:8 44:17 44:21 45:21 46:13 46:17 | |
| 16:2 16:24 17:23 23:8 27:5 27:18 30:5 | | 46:21 | |
| 30:7 30:9 31:9 31:22 32:3 32:12 33:7 | | | |
| 33:8 34:13 38:7 40:3 40:19 42:1 42:16 | | **z24**(1) 2:44 | |
| 43:13 43:15 45:19 46:8 46:12 46:13 46:20 | | | |
| | | | |
| **wilmington**(6) 1:11 1:28 2:9 2:18 2:32 3:1 | | | |
| **wire**(1) 12:3 | | | |
| **wireless**(1) 12:3 | | | |
| **wish**(3) 22:16 28:25 33:4 | | | |
| **wishing**(1) 37:16 | | | |
| **with**(90) 3:7 3:14 3:18 4:3 4:6 5:15 6:18 | | | |
| 6:22 7:2 7:3 7:11 7:17 8:12 8:21 9:12 | | | |
| 9:17 9:18 10:4 10:9 10:19 11:8 11:9 | | | |
| 11:14 11:25 12:13 13:7 13:8 13:14 13:23 | | | |
| 13:25 14:3 14:9 14:10 14:22 15:2 15:10 | | | |
| 15:11 16:1 17:10 18:5 18:7 18:19 19:8 | | | |
| 19:11 19:12 19:13 19:17 20:10 20:25 | | | |
| 21:12 21:25 23:13 24:2 24:8 24:19 25:4 | | | |
| 25:7 25:20 25:24 26:9 28:17 30:6 30:14 | | | |
| 30:17 30:18 32:18 32:18 34:5 34:6 34:9 | | | |
| 34:13 34:16 38:4 38:12 38:15 38:24 40:14 | | | |
| 40:20 40:22 40:24 41:15 41:24 42:9 43:14 | | | |
| 43:25 43:25 44:9 44:18 44:19 45:6 | | | |
| | | | |
| **won't**(1) 36:10 | | | |
| **words**(1) 4:2 | | | |