## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------X
                                       :

| | |
|---|---|
| *In re* | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*, | |
| | Jointly Administered |
| Debtors. | Hearing Date: November 23, 2010 @ 10:00 |
| | Objection Deadline: November 8, 2010 by 4:00 |

------------------------------------------------------X

## MOTION OF THE AFFILIATES OF VERIZON COMMUNICATIONS INC. FOR (A) MODIFICATION OF THE AUTOMATIC STAY; (B) DETERMINATION OF VERIZON'S PRE-PETITION RIGHTS OF SETOFF; AND (C) AN ORDER REQUIRING VERIZON'S SETOFF RIGHTS TO BE EFFECTUATED AND SATISFIED BY DEBTOR NORTEL NETWORKS, INC.

The affiliates of Verizon Communications Inc. (collectively, "Verizon")[1] file this Motion, pursuant to 11 U.S.C. §§ 105(a), 362(d)(1) and 553(a), for modification of the automatic stay, for a determination of the extent of Verizon's pre-petition rights of setoff against the Debtor Nortel Networks, Inc. ("Nortel"), and for an Order requiring Verizon's setoff rights to be effectuated and satisfied by Nortel before its makes any distributions to creditors from its Chapter 11 estate pursuant to a confirmed Chapter 11 plan. In support of its Motion, Verizon respectfully shows the Court as follows:

## I.      INTRODUCTION

1.      From the inception of these Chapter 11 cases on January 14, 2009 (the "Petition

---

[1]    The definition of Verizon includes, without limitation, all wholly-owned subsidiaries of Verizon Communications Inc. (including, without limitation, Verizon Corporate Services Group Inc., Verizon Services Corp., Verizon Network Integration Corp., Verizon Business Network Services Inc., Verizon Select Services Inc., MCI Communications Services, Inc. d/b/a Verizon Business Services and the local operating telephone company subsidiaries of Verizon Communications Inc.) and Cellco Partnership and its affiliates, collectively d/b/a Verizon Wireless.

Date"), Verizon has repeatedly asserted, and effectively preserved, certain rights of setoff that it possessed against Nortel as of the Petition Date.

2.    Verizon's pre-petition setoff rights have been the subject of continuous discussions and information exchanges between the parties and their counsel throughout the pendency of these cases. As of the filing of this Motion, however, the parties are unable to agree upon the existence, extent and proper effectuation of Verizon's pre-petition setoff rights.

3.    In a Stipulation and Order Resolving Debtors' Motions Against Verizon submitted to this Court for approval on August 24, 2010, the parties agreed that Verizon would file this Motion asking the Court to determine its pre-petition setoff rights.

4.    Accordingly, and for the reasons set forth in greater detail below, Verizon respectfully requests that the Court determine the extent to which Verizon had setoff rights against Nortel as of the Petition Date, modify the automatic stay so as to permit those rights to be effectuated, and order Nortel to satisfy those rights by payment to Verizon from its estate before it makes any distributions to creditors pursuant to a confirmed plan of reorganization.

## II.    BACKGROUND FACTS

5.    Both prior to and after the Petition Date, Verizon was a major purchaser and reseller of various products, software and related services from Nortel, including maintenance, support, warranty and indemnification obligations associated with those products and services. Nortel, in turn, obtained various telecommunications and related facilities from Verizon over those same periods. At any typical point in time, Nortel owed large sums of money to Verizon, while Verizon simultaneously owed even larger sums of money to Nortel.

### A.    Verizon's Setoff Rights As Of The Petition Date

6.    As of the Petition Date, the Debtors owed amounts to Verizon that were exceeded

by the amounts Verizon owed to the Debtors. Attached as Exhibit A hereto is a summary of the liquidated pre-petition sums that were owed by Nortel to various Verizon affiliates (totaling just under $3.98 Million), and by those Verizon affiliates to Nortel (totaling just under $131.87 Million). As the summary indicates, and after accounting for the requirement that setoff be effectuated only as to debts owed mutually by the same parties or entities, Verizon was entitled to setoff, against the approximately $131.87 Million that it owed to Nortel as of the Petition Date, an aggregate and liquidated sum of just over $3.71 Million. In addition, Verizon had an unliquidated claim against Nortel that was eligible for setoff as of the Petition Date.

### 1.    Verizon's liquidated setoff rights

7.    Exhibit A sets forth both the extent and composition of Verizon's fully liquidated setoff rights. It also confirms that Verizon's position properly accounts for the requirement that setoff be effectuated only as to debts owed mutually by the same parties or entities. In fact, it is Verizon's strict observance of the entity mutuality requirement that accounts for the fact that Verizon does not seek to setoff its entire liquidated pre-petition claim against the Debtors, but rather only the aggregate sum of $3.71 Million that was both owed by Nortel to the listed Verizon entities and offset by sums that those same entities owed to Nortel.

8.    Exhibit A further demonstrates that Verizon's liquidated pre-petition setoff claim is comprised of two primary components: (1) amounts owed by Nortel to various Verizon affiliates for the provision of pre-petition telecommunications services and related facilities (the "Telecom Charges"); and (2) the amount owed by Nortel jointly to Verizon affiliates MCI Communications Services Inc. and Verizon Select Services Inc., under the warranty and/or indemnification provisions of the Global Business Partner Agreement ("GBPA") between Nortel and Verizon, for Nortel's provision of a defective switch and improper switch installation to a

Verizon customer that, for purposes of this Motion, will be referred to as Customer X (the "Switch Claim").[2]

9.    The Switch Claim relates to a Nortel CS-2100 VoIP based communications infrastructure (the "CS2100") that Verizon purchased from Nortel under the GBPA and an associated Statement of Work ("SOW"), and then re-sold to Customer X.  Nortel failed, however, to provide a turn-key, fully operational CS2100 system.[3]  Because the CS2100 failed to meet the requirements for functional capability, installation and delivery, Customer X demanded substantial refunds and credits from Verizon.  Ultimately, Verizon was able to resolve the

---

[2]    Both the identity of Customer X and the terms of Verizon's settlement with Customer X are highly confidential.  Verizon provided (and continues to provide) information and documents relating to the Switch Claim to Nortel on a confidential basis pursuant to the Agreed Protective Order entered by the Court in these cases on June 10, 2010 (Docket No. 3168).  Nortel is thus fully apprised of the factual and contractual basis for the Switch Claim. If necessary for adjudication of this Motion, Verizon can submit documentation concerning the Switch Claim to the Court under seal.

[3]    The specific issues associated with Nortel's non-performance, which resulted in the CS2100's complete failure to meet the requirements for functional capability, installation and delivery, are summarized as follows:
    (1)    Nortel was required to provide Proactive Voice Quality Monitoring ("PVQM") service pursuant to the SOW.  Nortel's PVQM service did not function, however, with the CS2100.
    (2)    Simultaneous Ring ("SimRing") was a CS2100 feature that was supposed to allow users to set up one phone to simultaneously ring other devices.  The SOW required Nortel to provide SimRing.  The feature was implemented, but only supported up to 10,000 users, whereas Customer X contemplated having well over 10,000 end users.  The SOW, for example, indicated that there would be at least 13,500 end users initially.
    (3)    Nortel Centrex IP Client Manager Phone Encryption ("CICM") was a hardware platform designed to provide encryption between two IP phones on the same CS2100 system.  CICM was the equipment and Secure RTP ("SRTP") was the firmware feature required to deliver this service.  Nortel's SRTP was not fully functional. The Nortel design team reviewed the issue and determined that a modified CICM software was required.
    (4)    Geographic Redundancy ("GR") is a functionality that supports automatic, stateful failover.  This means that, if there is a loss of power in one system, a call will be transferred to another system and will not drop. The transfer also will be undetectable by the customer.  Nortel's GR feature did not function properly.  The fix for this problem was expensive.  Rather than eliminating the entire CS2100 system, Customer X was converted from SIP to TDM and implemented GR functionality using other equipment.
    (5)    Nortel Meet-Me Audio Conferencing is a feature of the CS2100.  Customer X experienced ongoing technical deficiencies with this feature, including dropped calls, difficulty dialing in, poor audio quality and an inability of the bridge to support the number of callers specified.
    (6)    Wireless Client Manager ("WiCM") is a Nortel-provided wireless client solution that provides Blackberry users the ability to "click to call."  The WiCM functionality for the "click to call" feature did not work with the CS2100.
    (7)    Because of all of the problems with the CS2100, Customer X never formally accepted delivery of the CS2100.  Consequently, the warranties that Nortel provided should not have begun to run until the problems were sufficiently corrected and Customer X accepted delivery, which was in the fourth quarter of 2009.  In the interim, Verizon agreed to provide Customer X with the warranties to which it was entitled by obtaining extended coverage.

dispute with Customer X for a compromised sum.

10.    The Telecom Charges are and always have been non-contingent and fully liquidated.  While the Switch Claim was contingent and unliquidated as of the Petition Date, and at the time Verizon filed its Proof of Claim, it has since become non-contingent and fully liquidated as a result of the settlement reached between Verizon and Customer X in December, 2009.  The settlement also reduced the sum of the Switch Claim substantially, from the originally demanded and contingent sum of $10,691,085.93 that Verizon included in its Proof of Claim to the now-liquidated sum of $3,461,301.00.  (This is the principal reason why the quantified components of Verizon's Proof of Claim total $11,207,760.90, while the aggregate receivables shown as owed to Verizon in Exhibit A are only $3,977,975.97.)

### 2.    Verizon's unliquidated setoff right

11.    In addition to the liquidated pre-petition setoff rights set forth in Exhibit A, Verizon is also entitled to setoff an unliquidated, pre-petition indemnity claim arising out of Nortel's failure to honor its contractual obligation (also under the GBPA) to defend and indemnify Verizon, with respect to products and services that Verizon purchased from Nortel, in certain patent infringement litigation initiated against Verizon by Voxpath Networks, Inc. in the Eastern District of Texas (the "Voxpath Indemnity Claim").  (*See* Proof of Claim No. 5521, attachment at ¶ 6.)

12.    The Voxpath Indemnity Claim is not yet liquidated because the patent litigation by Voxpath against Verizon is still ongoing.  In fact, the litigation has not proceeded to a point at which the fundamental facts are sufficiently developed.  Verizon will not be able to identify the agreements with Nortel that are implicated until Voxpath files its infringement expert report. The District Court also has not yet issued its "Markman Ruling" in the case, determining the

scope of the patent claims. In addition, no expert report on Voxpath's purported damages has been submitted to date. The calculation of costs and expenses associated with Verizon's defense of the Voxpath litigation will be based, in part, upon the District Court's Markman Ruling and these expert reports.

13.    Consequently, Voxpath's litigation against Verizon has not progressed sufficiently to permit Verizon to quantify the Voxpath Indemnity Claim, or even to estimate the Voxpath Indemnity Claim with a reasonable degree of accuracy as of the filing of this Motion.

       **B.**      **<u>Verizon's Reservation of Its Setoff Rights At The Outset Of, And Throughout, These Chapter 11 Cases</u>**

14.    Shortly after these Chapter 11 cases were initiated in January 2009, Nortel requested that Verizon pay the tens of millions of dollars in charges that had accrued prior to the Petition Date for purchased products and services. At that time, Verizon pointed out, correctly, that millions of dollars of those charges were subject to rights of setoff that Verizon was entitled to exercise with respect to sums that Nortel owed to Verizon for telecommunications services and facilities provided over the same period.

15.    Ultimately, the parties reached an agreement that, rather than filing a motion for stay relief and seeking to effectuate its setoff rights at that juncture, Verizon would pay all of the pre-petition charges over to Nortel's Chapter 11 estate, but in so doing would preserve its setoff and recoupment rights and – once definitively established and quantified by mutual agreement or eventual determination by the Court – have the ability to effectuate and satisfy those rights by other means.

16.    The parties initially memorialized this agreement in an exchange of e-mail messages between their respective counsel. In the course of that exchange, Debtors' counsel, James Bromley, expressly confirmed, among other things, that any pre-petition setoff rights

claimed by Verizon would be preserved "notwithstanding any payments made to [the] Debtors."
(*See* correspondence attached as Exhibit B hereto.) At that point, and in reliance upon this
agreement and the express preservation of its pre-petition setoff rights, Verizon commenced
payment of the sums that it owed to Nortel for the pre-petition period.

17.     This agreement was then formally memorialized in the Court's order dated
February 5, 2009, which included the following provision: "All rights of Debtors' customers to
assert rights of setoff or recoupment are expressly reserved notwithstanding any payments by
such customers to the Debtors." (Order Clarifying Relief Granted Pursuant To Sections 105(a)
and 363(b) of the Bankruptcy Code Authorizing Debtors To Honor Pre-Petition Obligations To
Their Customers [Docket No. 237] at ¶ 5.) In further reliance upon the Court's Order, Verizon
continued its payments to Nortel, eventually paying all charges owed to Nortel for the pre-
petition period.

18.     Implicit in this agreement, too, was an understanding that Verizon's setoff rights,
as eventually agreed upon or determined by the Court, could be effectuated in one of two ways --
either the Nortel estate would be required to disgorge a corresponding portion of the pre-petition
sums that Verizon had previously paid over, or Verizon would be permitted to withhold and
apply corresponding payables accruing to Nortel post-petition.

19.     Since that time, Verizon has consistently reserved its pre-petition setoff rights
against Nortel, including – with the Debtors' express consent – in the Court's orders authorizing
the various sales of the Debtors' business assets that affected Verizon in any fashion. (*See* Order
approving the sale of the Debtors' CDMA and LTE assets [Docket No. 1205] at ¶ 32; Order
approving the sale of the Debtors' Enterprise assets, [Docket No. 1514] at ¶ 30; Order approving
the sale of the Debtors' MEN assets, [Docket No. 2070] at ¶ 27; Order approving the sale of the

Debtors' CVAS assets, [Docket No. 2632] at ¶ 46.)

> **C.** **Verizon's Proof of Claim**

20.     On September 30, 2009, Verizon timely filed its Proof of Claim in these Chapter

11 cases, asserting pre-petition claims against Nortel in the aggregate sum of $11,207,760.90.

(*See* Claim No. 5521 [the "Proof of Claim"].)   The Proof of Claim again referenced and

expressly reserved Verizon's pre-petition setoff rights.   (Id. at box 5 of claim form and

Attachment at ¶ 4.)

> **D.** **More Recent Dealings Between The Parties Concerning Verizon's**
> **Setoff Rights**

21.     Over the course of these cases, Verizon has endeavored on numerous occasions to

engage Debtors' counsel in discussions towards an ultimate resolution of the setoff issue by

stipulation.

22.     In or about early April, 2010, as Mr. Laddin awaited responses from Debtors'

counsel to his most recent written inquiries, further exchanges of information and the

continuation of discussions towards a consensual resolution of Verizon's pre-petition setoff

rights, Verizon initiated a temporary hold on certain of its post-petition payment obligations to

Nortel.

23.     Almost immediately thereafter, and in lieu of further discussions towards a

resolution of the setoff issue, the parties became embroiled in a dispute over the propriety of

Verizon's temporary payment hold, which dispute culminated in the Debtors' filing, on May 21,

2010, of their Motion for Entry of An Order Enforcing The Automatic Stay [Docket No. 3036]

(the "Stay Enforcement Motion").

24.     After extensive negotiations and exchanges of documents and information,

however, the parties resolved the Stay Enforcement Motion by agreement, and on terms

memorialized in the Stipulation and Order Resolving Debtors' Motions Against Verizon (the "Nortel-Verizon Stipulation") that was submitted for the Court's approval on August 24, 2010.

25.     The Nortel-Verizon Stipulation expressly provided, at paragraph 1, that Verizon would lift its temporary hold on post-petition payment obligations and deliver all previously-held payments to Nortel. The Nortel-Verizon Stipulation also provided, at paragraph 3, that Verizon would file the present Motion requesting the Court to determine the extent of Verizon's pre-petition rights of setoff (and whether Verizon has adequately preserved those rights), and whether Verizon "is currently entitled to exercise, enforce, implement and/or effectuate such right[s]" before Nortel makes any distributions to creditors from its Chapter 11 estate.

26.     Given the fact that Verizon and Nortel are no longer actively engaged in business with one another, the only remaining means of satisfying Verizon's setoff rights at this point, as referenced in paragraph 3 of the Nortel-Verizon Stipulation, is to require Nortel's Chapter 11 estate to return a corresponding portion of the pre-petition sums that Verizon paid over to Nortel's estate at the outset of the case, and in reliance upon, *inter alia*, the Court's February 5, 2009 Order. (*See* paragraphs 14-18 above.)

### III.     ARGUMENT AND CITATION OF AUTHORITIES

#### A.     Establishing the Extent of Verizon's Pre-Petition Setoff Rights

27.     "Setoff is a right that has long been recognized under the laws of every state." 5 COLLIER ON BANKRUPTCY ¶ 553.04[2] (16th ed. 2010) (*citing* Studley v. Boylston Nat'l Bank of Boston, 229 U.S. 523, 528 (1913)).[4] "The right of setoff allows parties that owe mutual debts to

---

[4]     The substantive state law applicable to most, if not all, aspects of its business relationship with Nortel is the law of the state of New York. The GBPA, for example, is expressly governed by New York law. (*See* GBPA at ¶ 27(j).) New York law, in turn, permits parties to setoff mutual debts. *See, e.g.*, NEW YORK DEBTOR & CREDITOR LAW § 151 (expressly permitting exercise of setoff rights against sums owed to creditor by debtor in bankruptcy); In re Westchester Structures, Inc., 181 B.R. 730, 740 (Bankr. S.D.N.Y. 1995) (applying New York law on setoff to recognize not only statutory rights under state section 151, but also a creditor's equitable rights of setoff).

each other to assert the amounts owed, subtract one from the other, and pay only the balance."
Darr v. Muratore, 8 F.3d 854, 860 (1st Cir. 1993) (citing Cohen v. The Savings and Loan Co. (In
re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 896 F.2d 54 (3rd Cir. 1990)).

28.    In addition, the right to setoff mutual claims "is an established part of our
bankruptcy laws . . . [and] should be enforced unless compelling circumstances require
otherwise." United States v. Offord Fin., Inc., 205 B.R. 216, 233 (B.A.P. 9th Cir. 1996) (internal
citation omitted). *See also* Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1165 (2nd Cir. 1979).

29.    Section 553 of the Bankruptcy Code preserves any pre-petition setoff rights that a
creditor has under applicable non-bankruptcy law as of the filing of a debtor's bankruptcy case.
Specifically, and with certain inapplicable exceptions, section 553(a) provides that the Code

> does not affect any right of a creditor to offset a *mutual* debt owing by such
> creditor to the debtor that arose *before the commencement of the case* . . . against
> a claim of such creditor against the debtor that arose *before the commencement of
> the case* . . . .

11 U.S.C. § 553(a) (emphasis added). *See also, e.g.*, Citizens Bank of Maryland v. Strumpf, 516
U.S. 16, 18 (1995) (section 553(a) "provides that, with certain exceptions, whatever right of
setoff otherwise exists is preserved in bankruptcy"); United States v. Norton, 717 F.2d 767, 772
(section 553 is "understood as a legislative attempt to preserve the common law right of setoff
arising out of nonbankruptcy law"). In addition, a creditor's claim is given secured status to the
extent of the amount subject to setoff under section 553. *See* 11 U.S.C. § 506(a)(1); CDI Trust v.
U.S. Elec., Inc. (In re Commun. Dynamics, Inc.), 382 B.R. 219, 228 (Bankr. D.Del. 2008)
(noting that in bankruptcy, setoff claims are elevated to secured status).

30.    As the highlighted language in section 553(a) indicates, the first additional
requirement for a valid setoff under the Bankruptcy Code is that mutuality exist between the
creditor's claim and the debt owed by the creditor to the debtor. Id. *See also, e.g.*, Cohen v. Sav.

Bldg. & Loan Co. (In re Bevill, Bresler & Shulman Asset Mgmt. Corp.), 896 F.2d 54, 59 (3rd Cir. 1990); In re Semcrude, LP, 399 B.R. 388, 393 (Bankr. D.Del. 2009).    Although the Bankruptcy Code does not define the term "mutual," for purposes of section 553, debts are considered mutual when "they are due to and from the same persons in the same capacity." Semcrude, 399 B.R. at 393-394.    Therefore, the threshold inquiry on mutuality is whether the relevant claims and debts exist between the same parties.

31.    The second additional requirement for a valid setoff under section 553(a) is that both the claim asserted by the creditor and the debt owed by the creditor arose "before the commencement of the case." 11 U.S.C. § 553(a). *See also, e.g.*, In re Anes, 195 F.3d 177, 183 (3rd Cir. 1999); Semcrude, 399 B.R. at 393.

32.    In the present case, Verizon's pre-petition setoff rights against Nortel – which Verizon has duly preserved at every relevant step in these cases – are plainly valid, existed under non-bankruptcy law prior to the Petition Date in these cases and otherwise satisfy both of the requirements of section 553(a).

33.    As Exhibit A hereto readily indicates with respect to the sums that are fully and finally liquidated, Verizon's pre-petition setoff rights existed independently as of the Petition Date in these cases, and possess all of the requisite mutuality, both as to time period and party identity, that section 553 requires.    The mutual debts are limited strictly to the pre-petition period, and the proposed offset of obligations is likewise limited to mutual debts owed by and to Nortel and each of the specific Verizon affiliates.    In fact, it is Verizon's strict adherence to the mutuality of entities requirement that accounts for the fact that Verizon is entitled to setoff only a portion of its aggregate pre-petition claim against Nortel in these cases.

34.    The same is true of Verizon's unliquidated Voxpath Indemnity Claim.    That

claim, too, possesses all of the mutuality, both as to time period and identity of entities, that is required in order to be eligible for setoff under section 553.

35.     In addition, unliquidated claims are fully eligible for setoff in bankruptcy, either by being liquidated before the setoff is effectuated (as occurred with the Switch Claim), or – as is necessary for the Voxpath Indemnity Claim in this case – by being estimated for setoff purposes, subject to later adjustment if the estimation ultimately proves to have been inaccurate.  5 COLLIER ON BANKRUPTCY ¶ 553.03[1][f] (16th ed. 2010).  "A claim [also] is not disabled from setoff simply because it is disputed.  A court may permit the setoff notwithstanding the dispute, although a court might later undo the setoff to the extent that the dispute is ultimately resolved in the debtor's favor and the creditor's entitlement is reduced as a result.  Alternatively, the court may elect to resolve the dispute in the first instance, which is often the most prudent course, particularly if the dispute is colorable."  Id. at ¶ 553.03[1][e].

36.     Based upon all of the foregoing, Verizon respectfully requests that the Court enter an order determining that, as of the Petition Date, Verizon had and was entitled to effectuate liquidated setoff rights against Nortel in the aggregate sum of $3,713.099.05.

37.     In addition, Verizon respectfully requests that the Court enter an order determining that, as of the Petition Date, Verizon had an unliquidated setoff right with respect to the Voxpath Indemnity Claim, and estimating the monetary amount of that right so that it can be effectuated now, subject to a later adjustment if the estimation ultimately proves to be inconsistent with the outcome of Voxpath's patent litigation against Verizon.[5]

---

[5]     If the factual record in Voxpath's ongoing patent litigation against Verizon is still insufficiently developed to permit a reasonable estimation of the Voxpath Indemnity Claim as of the time the Court conducts its hearing on the present Motion, then Verizon requests in the alternative that the Court defer its estimation of the Voxpath Indemnity Claim only, and its order on effectuation of Verizon's corresponding setoff right as requested below, to a date just prior to any distribution of the final $10 Million in Nortel's Chapter 11 estate to creditors.

### B.    Relief From The Automatic Stay

38.    With limited exceptions, a creditor cannot exercise even an established or undisputed right of setoff unless it first obtains relief from the automatic stay. *See* 11 U.S.C. § 362(a)(6) and (7). *See also, e.g.*, United States v. Norton, 717 F2d 767, 771 (3rd Cir. 1983) ("[B]efore a setoff can be made against the debts owed by a petitioner in bankruptcy, a creditor must seek relief from the automatic stay.").

39.    Accordingly, and so that the foregoing pre-petition setoff rights can be effectuated, Verizon further requests that the Court lift or modify the automatic stay imposed by section 362 of the Bankruptcy Code.

### C.    Effectuation of Verizon's Pre-Petition Setoff Rights

40.    Finally, Verizon has now paid or committed to pay any and all sums that it owed to Nortel both pre-petition and post-petition, and the parties are no longer actively engaged in significant business with one another at this point, making it impossible for Verizon to withhold further post-petition payables to Nortel.

41.    Verizon's pre-petition setoff rights therefore can only be effectuated at this point by requiring Nortel to disgorge and pay back to Verizon, from its Chapter 11 estate and before any distributions are made to creditors, a corresponding portion of the funds that Verizon agreed to pay over at the outset of these cases on the condition that its setoff rights would be preserved.

42.    Verizon accordingly requests that the Court require Nortel to satisfy Verizon's pre-petition setoff rights in this fashion.

WHEREFORE, Verizon respectfully requests that the Court

(a)    grant this Motion;

(b)    determine that, as of the Petition Date, Verizon had and was entitled to effectuate liquidated setoff rights against Nortel in the aggregate sum of $3,713.099.05;

(c)    determine that, as of the Petition Date, Verizon had and was entitled to effectuate an unliquidated setoff right against Nortel with respect to the Voxpath Indemnity Claim, and estimate the monetary amount of that right so that it can be effectuated now, subject to a later adjustment if the estimation ultimately proves to be inconsistent with the outcome of Voxpath's patent litigation against Verizon;[6]

(d)    modify the automatic stay to the extent necessary for Verizon's pre-petition setoff rights to be effectuated;

(e)    order Nortel to pay Verizon, out of its Chapter 11 estate and before any distributions are made to creditors, the liquidated sum of $3,713.099.05, plus the estimated sum of the Voxpath Indemnity Claim,[7] in satisfaction of Verizon's pre-petition setoff rights; and

(f)    afford Verizon such other and further relief as this Court may deem just and proper.

Dated:  September 9, 2010                    Respectfully submitted,


                                            ARNALL GOLDEN GREGORY LLP
                                            Darryl S. Laddin
                                            Frank N. White
                                            171 17th Street, N.W., Suite 2100
                                            Atlanta, Georgia  30363
                                            (404) 873-8500
                                            dladdin@agg.com

                                            -and-

---

[6]    The relief requested by Verizon in this sub-paragraph (c) is subject to footnote 5 above.

[7]    The relief requested by Verizon in this sub-paragraph (e) with respect to the Voxpath Indemnity Claim is subject to footnote 5 above.

SMITH, KATZENSTEIN & FURLOW LLP

/s/Kathleen M. Miller
Kathleen M. Miller, Esq. (No. 2898)
800 Delaware Avenue, 10th Floor
P. O. Box 410
Wilmington, DE  19899
(302) 652-8405
kmiller@skfdelaware.com

ATTORNEYS FOR VERIZON