IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
:
*In re* : Chapter 11
:
Nortel Networks Inc., *et al.*,[1] : Case No. 09-10138 (KG)
:
　　　　　　　Debtors. : Jointly Administered
:
: **Hearing date: September 16 2010 10:00 AM (ET)**
: **(proposed)**
: **Objections due: September 15, 2010 12:00 PM (ET)**
: **(proposed)**
:
------------------------------------------------------------X

### DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING A CROSS-BORDER PROTOCOL ON THE RESOLUTION OF CLAIMS

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion") for the entry of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code"), approving that certain cross-border protocol on the resolution of claims attached hereto as Exhibit B (the "Claims Protocol");[2] and granting them such other and further relief as the Court deems just and proper. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://chapter11.epiqsystems.com/nortel.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Claims Protocol.

**Jurisdiction**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory basis for the relief requested herein is Sections 105(a) and 502 of the Bankruptcy Code.

**Background**

**A. Procedural History**

3. On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6. Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[3] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[3] The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

2

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7. On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8. On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[4] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM and GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the

---

[4] The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[5]

9. On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10. On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.    Debtors' Corporate Structure and Business**

11. Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia

---

[5]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Company under the Israeli Companies Law (the "Joint Israeli Administrators").

and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12. Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").

**C.     Case Milestones**

13. On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, Nortel has obtained Court approval for the auction of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport")

5

business [D.I. 3855]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14. On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280]. On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15. On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

## Relief Requested

16. By the Motion, the Debtors seek entry of an order substantially in the form attached hereto as <u>Exhibit A</u>, pursuant to sections 105(a) and 502 of the Bankruptcy Code, approving the Claims Protocol attached hereto as <u>Exhibit B</u>, and related side letter agreements with the Committee and the Bondholder Group, forms of which are attached hereto as <u>Exhibit C</u> (the "<u>Side Letters</u>").[6]

## Facts Relevant to the Motion

17. The Claims Protocol establishes procedures for the coordination and cooperation between the Debtors and the Canadian Debtors for the resolution of Overlapping and Same-Creditor Claims in these chapter 11 cases and the Canadian Proceedings. The Claims Protocol supplements the procedures established in the U.S. Bar Date Order and the Canadian Claims

---

[6] The Canadian Debtors also intend to seek approval of the Claims Protocol at the joint hearing of this Court and the Canadian Court on September 16, 2010.

6

Procedure Order, and was anticipated in the Insolvency Protocol, the Canadian Claims Procedure Order, the U.S. Bar Date Motion and the Final Canadian Funding and Settlement Agreement (each as defined below).

18. The Debtors have worked diligently with the Canadian Debtors, the Monitor, the Committee and the Bondholder Group to negotiate the Claims Protocol, the Claims Resolution Order (which will provide for, among other things, additional procedures in the Canadian Proceedings for the resolution of specified and claims reporting on the status of claims filed in Canada generally), the Side Letters and the proposed orders approving the Claims Protocol in this Court and the Canadian Court. The obligations embodied in the Claims Protocol, the Claims Resolution Order, the proposed orders approving the Claims Protocol and the Side Letters together compromise an integrated procedure among the Debtors, the Canadian Debtors, the Monitor, the Committee and the Bondholder Group regarding the process for resolving various claims in the Canadian Proceedings and these chapter 11 cases, including without limitation, the Same-Creditor and Overlapping Claims. The Debtors' willingness to enter into the Claims Protocol is contingent on the entry of the Claims Resolution Order in a form satisfactory to the Debtors.

19. On January 15, 2009, this Court approved the Cross Border Insolvency Protocol (such protocol as amended, the "<u>Insolvency Protocol</u>").[7] While honoring the respective jurisdictions of this Court and the Canadian Court, the Insolvency Protocol sought to harmonize and coordinate the activities of these chapter 11 cases and the Canadian Proceedings to, among other things, promote cooperation among the Debtors, the Canadian Debtors, this Court, the

---

[7] Likewise, on January 14, 2009, the Canadian Court issued an order granting the Canadian Debtors various forms of relief, including approval of the Insolvency Protocol. Pursuant to separate Orders entered on June 29, 2009 and June 30, 2009, this Court ([D.I. 990]) and the Canadian Court approved an amended Insolvency Protocol.

7

Canadian Court, the Monitor and the Committee, and to facilitate the fair, open and efficient administration of such proceedings. The Insolvency Protocol anticipated the need for a further protocol to establish procedures for cooperation between the Debtors and the Canadian Debtors for the resolution of claims filed by creditors in both the United States and Canada. Paragraph 29 of the Insolvency Protocol reads:

> The Debtors anticipate that it will be necessary to implement a specific claims protocol to address, among other things and without limitation, the timing, process, jurisdiction and applicable governing law to be applied to the resolution of intercompany claims filed by the Debtors' creditors in the Canadian Proceedings and the U.S. Proceedings. In such event, and in recognition of the inherent complexities of the inter-company claims that may be asserted in the Insolvency Proceedings, the Debtors shall use commercially reasonable efforts to negotiate a specific claims protocol . . . . Insolvency Protocol ¶ 29.

20.     The Claims Protocol is also anticipated by the U.S. Bar Date Motion,[8] and the Canadian Claims Procedure Order,[9] which, with certain exceptions, established September 30, 2009 as the as the deadline for the filing and receipt of claims in these chapter 11 cases and the Canadian Proceedings. Paragraph 40 of the U.S. Bar Date Motion states:

> In an effort to supplement the procedures for filing claims in these chapter 11 cases and in the Canadian Proceedings, the Debtors will seek this Court's and the Canadian Court's approval of a cross-border claims protocol . . . on the filing and determination of claims . . . . The purpose of the Cross Border Claims-Protocol will be to establish efficient and consistent procedures for the reconciliation of claims in these chapter 11 cases and the Canadian Proceedings. U.S. Bar Date Motion ¶ 40.

Likewise, the Canadian Claims Procedure Order notes in paragraph 16 thereof that "a Claim shall not be a proven Claim unless and until the claim has been allowed or otherwise finally

---

[8] Debtors' Motion For An Order Pursuant To Sections 501, 502 And 1111(A) Of The Bankruptcy Code, Bankruptcy Rules 2002 And 3003(C)(3) And Local Rule 2002-1(E) For An Order Establishing Deadlines For Filing Proofs Of Claim And Approving Form And Manner Of Notice Thereof [D.I. 1084] (the "U.S. Bar Date Motion", and the order approving such motion [D.I. 1280], as has been and may be supplemented from time to time, the "U.S. Bar Date Order").

[9] Claims Procedure Order signed by the Canadian Court on October 7, 2009 (the "Canadian Claims Procedure Order").

8

determined in accordance with the claims dispute and resolution procedures to be set out in the Claims Resolution Order and the Cross Border Claims Protocol." Canadian Claims Procedure Order ¶ 16.

21.     Additionally, the Final Canadian Funding and Settlement Agreement (the "FCFSA"), which addresses transfer pricing and was approved by this Court on January 21, 2010 [D.I. 2347] and by the Canadian Court on January 22, 2010, documents the Debtors and the Canadian Debtors agreement "to work with the Monitor, the Creditors' Committee and the Bondholders' Committee to develop and timely seek approval from each of the Courts of a cross-border claims protocol . . . and claims resolution procedures for the resolution of claims filed in the Canadian Proceedings and the U.S. Proceedings, each in a form and substance acceptable to the Monitor, the Creditors' Committee and the Bondholders' Committee, acting reasonably." FCFSA ¶ 15. The Claims Protocol and related agreements represent the result of heavy negotiations among these parties, including the compromise of divergent positions in some instances.

## The Claims Protocol

22.     The Claims Protocol establishes procedures for the coordination and resolution of Overlapping and Same-Creditor Claims filed in these chapter 11 cases and the Canadian Proceedings pursuant to the following material terms: [10]

- Definition of Overlapping Claims. An Overlapping Claim is a claim or portion thereof that (i) has been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) arises from the same underlying claim, action, liability, property, agreement, lease, debt or transaction. For the avoidance of doubt, the definition of Overlapping Claims shall include, but not be limited to, any (i)

---

[10] This section of the Motion contains a summary of the Claims Protocol, and in all cases remain subject to the terms of the Claims Protocol attached hereto as Exhibit B. To the extent any conflict arises between this summary and the Claims Protocol, the terms of the Claims Protocol shall control.

9

guarantee and indemnity claims where the direct claim is filed against a debtor in one jurisdiction and the guarantee or indemnity claim is filed against a debtor in the other jurisdiction; and (ii) duplicate claims filed in both jurisdictions (claims filed in both jurisdictions by the same or affiliated party asserting the same amount and underlying liability).  Claims Protocol ¶ 11.

- Definition of Same-Creditor Claims.  Same-Creditor Claims are claims or portions thereof that: (i) have been filed in both the Canadian Proceedings and the Chapter 11 Cases; (ii) by the same party or by the same affiliated parties; and (iii) is not an Overlapping Claim.  Claims Protocol ¶ 12.

- Exclusions from Overlapping and Same-Creditor Claims.  For the purposes of the Claims Protocol, the following categories of claims shall not constitute Overlapping or Same-Creditor Claims regardless of whether they would otherwise fall within the definitions of Overlapping or Same-Creditor Claims: (a) U.K. pension claims (including, funding guarantee claims, insolvency guarantee claims, Financial Support Direction liability claims and claims by Nortel Networks U.K. Pension Trust Limited, the U.K. Pension Protection Fund, the Pensions Regulator under The Pensions Act 2004 (U.K.) and the joint administrators of the various EMEA Debtors related to the foregoing); (b) claims in respect of the determination of liabilities and funded status of the Nortel Networks Negotiated Pension Plan and the Nortel Networks Limited Managerial and Non-Negotiated Pension Plan and in respect of the Ontario Pension Benefits Guarantee Fund; and (c) the following employee-related matters (i) any procedure, protocol or methodology for calculating termination and severance pay claims and any process for any resolution of disagreements regarding contract obligations and qualifications for eligibility of such claims (including the calculation of benefits or liabilities), (ii) the actuarial methods and assumptions that will be used to determine non-registered pension claims, Long Term Disability claims and benefit claims and any process for any resolution of disagreements regarding the interpretation or application of plan criteria for such claims (including the calculation of benefits or liabilities), (iii) the form of an order related to Compensation Claims (including, proposed procedures relating to any bar date for claims of employees and retirees), (iv) deferred compensation claims relating to the Nortel Networks U.S. Deferred Compensation Plan (to the extent not otherwise addressed by the Cross-Border Claims Protocol), and (v) the Calgary employee claims contemplated by the action bearing court file number 0901-10504 in the Alberta Court of Queen's Bench.  Claims Protocol ¶ 13.

- Obligation to Share Information Regarding Same-Creditor and Overlapping Claims.  The Canadian Debtors, the Monitor, and the U.S. Debtors shall share information with respect to any Overlapping Claims and Same-Creditor Claims, including without limitation by meeting on a monthly basis to review these claims.  The Canadian Debtors, the Monitor and the U.S. Debtors shall cooperate and coordinate the collection of information regarding Overlapping Claims and Same-Creditor Claims from the Canadian Debtors, the U.S.

10

Debtors and the claimants. Information exchanged between the Monitor, the Canadian Debtors and the U.S. Debtors pursuant to the Claims Protocol may be shared by such parties with their respective stakeholders, subject to appropriate written confidentiality agreements, and the Monitor, the Canadian Debtors and the U.S. Debtors may consult with their respective stakeholders with respect to all such information. In the case of the U.S. Debtors, for the avoidance of doubt, such stakeholders shall include the Committee and the Bondholder Group. Claims Protocol ¶¶ 15 and 16.

- Resolution of Overlapping Claims. For Overlapping Claims (other than the Bond Claims) that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions: the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve such claims without first consulting with the other estates. For Overlapping Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "Material Overlapping Claims"), the Monitor, the Canadian Debtors and the U.S. Debtors shall attempt to agree on the resolution of such claims. If the Monitor, the Canadian Debtors and the U.S. Debtors cannot agree on the resolution of a Material Overlapping Claim, the Monitor, the Canadian Debtors and the U.S. Debtors will seek joint direction from the Judges of both the Canadian Court and the U.S. Court regarding the resolution of such claim. With respect to the Bond Claims, if the Debtors, Monitor or Canadian Debtors, after consulting with each other, proposes to allow, stipulate or settle the Bond Claims and the other party does not agree to such proposed allowance, stipulation or settlement, the party not proposing such allowance, stipulation or settlement may request that the hearing on such allowed Bond Claims be a joint hearing. Claims Protocol ¶ 17.

- Resolution of Same-Creditor Claims. For Same-Creditor Claims (other than the Bond Claims) that either (i) assert an amount greater than $500,000 in both jurisdictions or (ii) are wholly or partially unliquidated and the Monitor and the U.S. Debtors each propose to seek to allow, stipulate or settle for an amount greater than $500,000 in their respective jurisdictions: the Canadian Debtors, the Monitor and the U.S. Debtors shall not respond to or resolve a Same-Creditor Claim without first consulting with the other estates. For Same-Creditor Claims that either (i) assert an amount equal to or greater than $1 million in either jurisdiction or (ii) are wholly or partially unliquidated and the Monitor or the U.S. Debtors propose to seek to allow, stipulate or settle for an amount equal to or greater than $1 million in their respective jurisdictions (the "Material Same-Creditor Claims") the Monitor, the Canadian Debtors and the U.S. Debtors shall attempt to agree on a resolution of such claim. If the Monitor, the Canadian Debtors and the U.S. Debtors cannot agree on the

>
> appropriate resolution of Material Same-Creditor Claims, then such claims can be resolved in each jurisdiction in accordance with applicable claims resolution orders and procedures. Claims Protocol ¶ 18.
>
> - <u>Right to Appear and be Heard</u>. The Canadian Debtors, the Monitor, the U.S. Debtors, the Committee and the Bondholder Group shall have the right to support or object and to be heard at any hearing provided for in the Claims Protocol in either or both of the Canadian and U.S. Courts with respect to Overlapping Claims or Same-Creditor Claims. Claims Protocol ¶ 24.

## **Ancillary Obligations to the Claims Protocol**

23.     As described above, the obligations embodied in the proposed order approving this Motion and the Side Letters are part of an integrated procedure for the resolution of Same-Creditor and Overlapping Claims (which includes an agreement to the proposed terms of the Claims Resolution Order to be approved by the Canadian Court concurrently with its approval of the Claims Protocol). These obligations include: (i) a commitment by the Debtors not to agree with the Monitor or the Canadian Debtors to the allowance, stipulation or settlement of a Material Overlapping Claim (other than the Bond Claims) of greater than $50 million without the prior written consent of the Committee; (ii) an agreement to timely share all information disclosed by the Monitor and the Canadian Debtors under the Claims Protocol and the Claims Resolution Order with the Committee and the Bondholder Group; (iii) agreements between the Debtors and the Canadian Debtors to share regular reports on the status of claims filed against the Debtors; (iv) provisions in the Claims Protocol and the orders approving the Claims Protocol that no claimant holding an Overlapping Claim or Same-Creditor Claim shall receive aggregate distributions from the Debtors and the Canadian Debtors on account of such claim(s) in excess of 100% of the amount of such allowed claim(s) (including any post-petition interest or other amounts permitted under applicable law); and (v) a provision in the order approving this motion that matters related to the manner in which distributions will be made by the Debtors on allowed

claims under the chapter 11 plans confirmed in these chapter 11 cases (including, as related to the Debtors, any agreement that may be reached and approved by this Court as to distributions on Overlapping Claims) shall be governed by provisions in the Debtors' chapter 11 plans or the plan administration agreement executed in connection with the Debtors' chapter 11 plans, in either case as approved by this Court, which provisions shall be developed in consultation with the Committee and the Bondholder Group.

### Basis For Relief

24.     The Debtors believe that the adoption and approval of the Claims Protocol and the entry of the proposed order attached hereto as <u>Exhibit A</u> addressing certain ancillary obligations to the Claims Protocol is necessary in order to facilitate the efficient determination of Overlapping and Same-Creditor Claims filed in these chapter 11 cases and the Canadian Proceedings for the mutual benefit of the Debtors, the Canadian Debtors, creditors of the Debtors and the Canadian Debtors and their respective estates.

25.     As set forth above, the Claims Protocol establishes procedures for the coordination and cooperation between the U.S. Debtors and the Canadian Debtors for the resolution of Overlapping and Same-Creditor Claims in these chapter 11 cases and the Canadian Proceedings.  It supplements the procedures established in the U.S. Bar Date Order and the Canadian Claims Procedure Order and was anticipated in the Insolvency Protocol the Canadian Claims Procedure Order, the Bar Date Motion and the FCFSA, each previously approved by this Court and/or the Canadian Court.

26.     The relief requested in this Motion is authorized pursuant to section 105(a) of the Bankruptcy Code, which grants broad authority to a court to issue orders that are necessary or appropriate to carry out the provisions of this title.  Section 105(a) of the Bankruptcy Code

provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Moreover, the adoption of the Claims Protocol furthers the efficient reconciliation and resolution of claims by the Debtors and the Canadian Debtors.

27.     Relying on the authority granted by section 105(a) of the Bankruptcy Code, Courts in this District and elsewhere have authorized protocols addressing the administration and determination of claims in cross-border insolvency proceedings. See, e.g., In re Lehman Brothers Holdings Inc., Case No. 08-13555(JMP) (Bankr. S.D.N.Y. June 17, 2009); In re Pope & Talbot, Inc., Case No. 07-11738 (CSS) (Bankr. D. Del. Feb. 26, 2008). In addition, a number of courts, in this District and elsewhere, have authorized similar protocols for managing other aspects of cross-border insolvency proceedings. See, e.g., In re Progressive Molded Prods., Case No. 08-11253 (KJC) (Bankr. D. Del. July 14, 2008); In re Calpine Corp., Case No. 05-60200 (Bankr. S.D.N.Y. Apr. 12, 2007); In re Systech Retail Sys. (U.S.A.) Inc., Case No. 03-00142-5-ATS (Bankr. E.D.N.C. 2003); In re Fed. Mogul Global, Inc., Case No. 01-10578 (Bankr. D. Del. Feb. 7, 2002); In re Fin. Asset Mgmt. Found., Case No. 01-03640-304 (Bankr. S.D. Cal. July 25, 2001); In re PSINet Inc., Case No. 01-13213 (Bankr. S.D.N.Y. July 10, 2001); In re Laidlaw USA, Inc., Case No. 01-14099 (Bankr. W.D.N.Y. Aug. 20, 2001); In re Livent (U.S.) Inc., Case No. 98-48312 (Bankr. S.D.N.Y. 1998).

28.     For the foregoing reasons, the Debtors assert that the Claims Protocol is necessary to promote the efficient and effective administration of these chapter 11 cases with the Canadian Proceedings, furthers the resolution of claims filed against the Debtors and is, therefore, in the best interests of the Debtors, their estates, their creditors, and all parties-in-interest.

## **Notice**

29.     Notice of the Motion has been given via facsimile, electronic transmission, hand delivery or overnight mail to the (i) U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) counsel to the Canadian Debtors; (v) the Monitor; and (vi) the general service list established in these chapter 11 cases.  The Debtors submit that under the circumstances no other or further notice is necessary.

## **No Prior Request**

30.     No prior motion for the relief requested herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 11, 2010
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

   - and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors
and Debtors in Possession*