## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                                        :
*In re*                                                 :      Chapter 11
                                                        :
Nortel Networks Inc., *et al.,*[1]                      :      Case No. 09-10138 (KG)
                                                        :
                                 Debtors.               :      Jointly Administered
                                                        :
                                                        :      Hearing date: October 14, 2010 at 10:00 a.m. (ET)
                                                        :      Responses due: October 7, 2010 at 4:00 p.m. (ET)
-------------------------------------------------------X

### DEBTORS' FOURTEENTH OMNIBUS OBJECTION (SUBSTANTIVE) TO CERTAIN CLAIMS PURSUANT TO 11 U.S.C. § 502, FED. R. BANKR. P. 3007 AND DEL. L.R. 3007-1 (NO LIABILITY CLAIMS, REDUCE AND ALLOW CLAIMS, REDUNDANT CLAIMS, SATISFIED CLAIMS, WRONG DEBTOR CLAIMS, NO-BASIS 503(b)(9) CLAIMS AND MISCLASSIFIED 503(b)(9) CLAIMS)

TO THE CLAIMANTS LISTED IN **EXHIBITS A-G** ATTACHED TO THIS OBJECTION:

- **YOUR RIGHTS MAY BE AFFECTED BY THIS OBJECTION AND BY ANY FURTHER OBJECTION(S) THAT MAY BE FILED BY THE DEBTORS.**

- **THE RELIEF SOUGHT HEREIN IS WITHOUT PREJUDICE TO THE DEBTORS' RIGHTS TO PURSUE FURTHER SUBSTANTIVE OR NON-SUBSTANTIVE OBJECTIONS AGAINST THE CLAIMS LISTED IN EXHIBITS A-G ATTACHED TO THIS OBJECTION.**

- **CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS IN EXHIBITS A-G.**

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

- **PLEASE NOTE THAT CLAIMANTS' NAMES MAY APPEAR IN MULTIPLE EXHIBITS ATTACHED TO THIS OBJECTION. CLAIMANTS SHOULD CHECK ALL EXHIBITS FOR THEIR NAMES.**

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors"), hereby object (this "Objection"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to those certain claims listed on the exhibits attached hereto and incorporated by reference, namely **Exhibit A, Exhibit B**, **Exhibit C, Exhibit D, Exhibit E, Exhibit F,** and **Exhibit G** (collectively, "Exhibits A-G").  In support of this Objection, the Debtors submit the Declaration of John Ray in Support of the Debtors' Fourteenth Omnibus Objection (Substantive) to Certain Claims Pursuant to 11 U.S.C. § 502, Fed. R. Bankr. P. 3007 and Del. L.R. 3007-1 (No Liability Claims, Reduce and Allow Claims, Redundant Claims, Satisfied Claims, Wrong Debtor Claims, No-Basis 503(b)(9) Claims and Misclassified 503(b)(9) Claims) (the Ray Declaration"), attached hereto as **Exhibit H** and incorporated by reference, and respectfully state as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 502 and 503 of the Bankruptcy Code, Bankruptcy Rule 3007, and Local Rule 3007-1.

**Background**

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings").  The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.      On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA.  On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"),

---

[2]      The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.       On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators").  On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA").  NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business.  While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA.  On June 26, 2009, this Court entered an order recognizing the English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.       On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].  An ad

---

[3]       The EMEA Debtors include the following entities:  Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

[4]       Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.  On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").  No trustee or examiner has been appointed in the Debtors' cases.

10.     On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099].  From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.     Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.  Nortel's technologies spanned access and core networks and supported multimedia and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

---

[5]       Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

C.      **Case Milestones**

13.      On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632].  In addition, Nortel has obtained Court approval for the auction of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business [D.I. 3855].  Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.      On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280].  On December 3, 2009 this Court entered an order

fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or

interests against NN CALA [D.I. 2059].

16. On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks

Inc. and Its Affiliated Debtors [D.I. 3580].  On September 3, 2010, the Debtors filed the

Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its

Affiliated Debtors [D.I. 3874].

**D.     Bar Date, Schedules and Notice**

16. On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed

their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I.s 616-627, 801-

810].  On September 11, 2009, the Debtors filed schedules and statements for NN CALA (the

"NN CALA Schedules") [D.I. 1477, 1478].  On November 4, 2009, the Debtors (other than NN

CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of

Financial Affairs (together with the NN CALA Schedules, referred to as the "Schedules") [D.I.s

1811-1825].

17. On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280]

establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last

date for all creditors holding a "claim" (as such term is defined in section 101(5) of the

Bankruptcy Code) against one or more of the Debtors (other than NN CALA) to file and serve a

written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order.

Notice of the General Bar Date was provided by mail and publication in accordance with the

procedures outlined in the Bar Date Order.  On December 3, 2009, the Court entered an order

[D.I.  2059] establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar

date for all creditors holding a claim against NN CALA to file and serve written proofs of claim.

**E.    The Claims Resolution Process**

18.    In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts owed to their creditors.

19.    The Debtors' claims agent, Epiq Bankruptcy Solutions, LLC, has prepared and maintains a register (the "Claims Register") of all proofs of claim filed against the Debtors.  As of August 31, 2010, the Claims Register consisted of more than 7,300 proofs of claim.  The Debtors and their advisors are comprehensively reviewing and reconciling all claims, including both the claims listed on the Schedules and the claims asserted in the proofs of claim (including any supporting documentation).  The Debtors also are comparing the claims asserted in the proofs of claim with the Books and Records to determine the validity of the asserted claims.

20.    This reconciliation process includes identifying particular categories of claims that may be targeted for disallowance, reduction and allowance or reclassification and allowance. To reduce the number of claims, and to avoid possible double recovery or otherwise improper recovery by claimants, the Debtors will continue to file omnibus objections to such categories of claims if and where warranted.  This Objection is one such omnibus objection.

21.    On December 14, 2009, the Court entered an order granting the Debtors relief from the requirements of Bankruptcy Rule 3007(e)(6) and Local Rule 3007-1f(i) and (ii) [D.I. 2125].

### Relief Requested

22.    For the reasons set forth below, the Debtors object to each of the claims identified in **Exhibits A-G**.  By this Objection, the Debtors respectfully request that the Court enter an order pursuant to section 502(b) of the Bankruptcy Code, Bankruptcy Rule 3007 and Local Rule 3007-1 reducing, modifying, reclassifying or disallowing in full, as applicable, the claims identified in **Exhibits A-G**:

a.      Each claim identified in **Exhibit A** should be disallowed in full as a claim for which the Debtors are not liable because (i) the claim asserts a liability that is not a liability of the Debtor identified in the proof of claim (if any) or a liability of any other Debtor (the "<u>Non-Debtor Liability Claims</u>") or (ii) the claim is supported neither by the documentation and information provided by the claimant, if any, nor by the Debtors' Books and Records (the "<u>No Amount Due Claims</u>," and, together with the Non-Debtor Liability Claims, the "<u>No Liability Claims</u>").

b.      Each claim identified in **Exhibit B** should be reduced and allowed in the amount identified under the column labeled "Modified Claim Amount" for one or more of the following reasons: (i) part of the claimed amount relates to invoices issued to an entity that is not a Debtor in these chapter 11 cases (the "<u>Non-Debtor Invoice Claims</u>"), (ii) part of the claimed amount is neither supported by the documentation or other evidence provided by the claimant, if any, nor by the Debtors' Book and Records (the "<u>No Supporting Documentation Claims</u>"), (iii) part of the claimed amount relates to invoices that are also included in another claim (the "<u>Redundant Invoice Claims</u>"), (iv) part of the claimed amount relates to invoices or assertions for which the Debtors' Books and Records indicate that no amounts are due and owing (the "<u>Partial No Liability Claims</u>"), or (v) part of the claimed amount has been satisfied prior to the Petition Date and should not be paid again (the "<u>Partially Satisfied Claims</u>" and, together with the Non-Debtor Invoice Claims, the No Supporting Documentation Claims, the Redundant Invoice Claims, and the Partial No Liability Claims, the "<u>Reduce and Allow Claims</u>").

c.      Each claim identified in **Exhibit C** (the "<u>Redundant Claims</u>") should be disallowed in full as a claim for which the Debtors are not liable because the claim is redundant of another claim filed asserting the same purported liability.

d.      Each claim identified in **Exhibit D** (the "<u>Satisfied Claims</u>") should be disallowed in full because the claim was fully satisfied prior to the Petition Date or the CALA Petition Date, as applicable, and should not be paid again.

e.      Each claim identified in **Exhibit E** (the "<u>Wrong Debtor Claims</u>") fails to identify or incorrectly identifies a Debtor that is liable for such claim, and the Debtors seek to modify the claim to clarify that the claim is asserted against the Identified Debtor (as defined below) and allow such claim as modified.

f.      Each claim identified in **Exhibit F** (the "<u>No-Basis 503(b)(9) Claims</u>") should be disallowed because the claim does not meet the requirements of section 503(b)(9) of the Bankruptcy Code, and is redundant of another claim filed by the same claimant based on the same purported liability.

g.      Each claim identified in **Exhibit G** (the "Misclassified 503(b)(9) Claims") should be reclassified in priority to a general, unsecured, non-priority claim because the claim asserts administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code where there is no discernable basis for such classification.

### Basis for Relief

23.      Pursuant to section 101 of the Bankruptcy Code, a creditor holds a claim against a bankruptcy estate only to the extent that (a) it has a "right to payment" for the asserted liabilities and (b) the claim is otherwise allowable.  11 U.S.C. §§ 101(5) and 101(10).

24.      When asserting a claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant.  See In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992); In re Int'l Match Corp., 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist).  Where the claimant alleges sufficient facts to support its claim, its claim is afforded *prima facie* validity.  In re Allegheny Int'l, Inc., 954 F.2d at 173.  A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity.  Id.  In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency.  Id. at 173-74.  Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence.  Id.  The burden of persuasion is always on the claimant.  Id.

### A.      No Liability Claims (Exhibit A)

25.      The Debtors object to the No Liability Claims (comprising the Non-Debtor Liability Claims and No Amount Due Claims) identified in **Exhibit A** because each asserts a claim for which there is no amount due and owing by any Debtor to the claimant.

26.     With respect to each of the No Liability Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules, and the proof of claim, including supporting documentation provided by the claimants, if any, and have determined that the No Liability Claims are claims for which none of the Debtors is liable.

27.     The Non-Debtor Liability Claims should be disallowed in full because, based on a careful review of the Books and Records, the Schedules, and the proof of claim, including supporting documentation, if any, provided by the claimants, the Debtors have determined that each claim asserts a liability that is not a liability of the Debtor identified in the proof of claim (if any) or a liability of any other Debtor.

28.     The No Amount Due Claims should be disallowed in full because, based on a careful review of the Books and Records, the Schedules, and the proof of claim, including supporting documentation provided by the claimants, if any, the Debtors have determined that there is no amount due and owing to the claimants with respect to such claims.

29.     For the reasons stated above, the No Liability Claims do not meet the standards for *prima facie* validity.  The Debtors seek to disallow and expunge each No Liability Claim in its entirety.

**B.     Reduce and Allow Claims (Exhibit B)**

30.     The Debtors object to the Reduce and Allow Claims (comprising the Non-Debtor Invoice Claims, the No Supporting Documentation Claims, the Redundant Invoice Claims, the Partial No Liability Claims, and the Partially Satisfied Claims) identified in **Exhibit B** because the amounts asserted in these claims include amounts that are not liabilities of the Debtors or their estates, or are redundant of amounts already asserted against the Debtors or their estate. Therefore, the Reduce and Allow Claims should be reduced to the amounts identified in the

11

column labeled "Modified Claim Amount" for the reasons set forth in the column labeled "Reason for Modification."

31.    With respect to each of the Reduce and Allow Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules and the proof of claim, including supporting documentation, if any, provided by the claimant and have determined that each Reduce and Allow Claim asserts a liability in excess of the amount reflected in the Books and Records as due and owing to the claimant.

32.    The Non-Debtor Invoice Claims overstate the Debtors' liability by an amount that relates to liability of certain non-Debtor entities identified in the column labeled "Reason for Modification."  The proofs of claim for these claims include invoices issued by the claimant to certain Nortel entities that are not Debtors in these chapter 11 cases and for which none of the Debtors are liable.

33.    The No Supporting Documentation Claims overstate the Debtors' liability by an amount that is not supported by any documentation or other evidence provided by the claimants, if any.  Based on a careful review of the Books and Records, the Debtors have determined that such overstated portion of each of the No Supporting Documentation Claims is not supported by the Debtors' Books and Records.  To the extent that any claimant is permitted to amend a proof of claim or otherwise provides documentation or other evidence supporting the overstated portion of a claim, the Debtors respectfully request relief from the requirements of Local Rule 3007-1(f)(iii), and the Court's permission to submit a supplemental objection, as necessary.

34.    The Redundant Invoice Claims overstate the Debtors' liability by an amount that relates to the same liability already asserted in another claim identified in the column labeled "Reason for Modification" (the "Remaining Liability").  Where the liability is asserted by an

affiliate of the claimant, the Debtors have determined, based on a careful review of the Books and Records, the Schedules and the proofs of claim, including supporting documentation provided by the claims, if any, that the Remaining Liability would be owed, if at all, to the claimant that filed the claim containing the Remaining Liability (the "Remaining Liability Claim"), as identified in the "Reason for Modification" listed on **Exhibit B**. Unless included in other Exhibits to this Objection, the Remaining Liability Claims will be unaffected by the relief requested in this Objection, and each of the claimants' rights to assert those liabilities against the Debtors' estates will be preserved, subject to the Debtors' reservation of their rights to object to the Remaining Liability Claims and other claims on all grounds, whether legal, factual, procedural, substantive or non-substantive. If the Redundant Invoice Claims are not reduced accordingly, the claimants may obtain double recovery.

35.     The Partial No Liability Claims overstate the Debtors' liability by an amount that relates to invoices or assertions that, based on a careful review of the Books and Records, the Schedules, and the proof of claim, including supporting documentation provided by the claimants, if any, the Debtors have determined are not due and owing to the claimants.

36.     The Partially Satisfied Claims overstate the Debtors' liability by an amount that was satisfied before the Petition Date and should not be paid again. The Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules, and the proof of claim, including supporting documentation provided by the claimants, if any, and have determined that the portions of the Partially Satisfied Claims described in **Exhibit B** were satisfied before the Petition Date because (i) the asserted liability was paid in full by the Debtors; (ii) the asserted liability was paid by a third party billing system or (iii) the asserted liability was offset with a credit.

13

37.     Therefore, the Debtors seek to disallow the overstated amounts asserted in the Reduce and Allow Claims and to reduce such claims to the Modified Claim Amounts identified in **Exhibit B** and allow such claims for the Modified Claim Amounts.  If the Reduce and Allow Claims are not reduced as requested herein, each of the claimants will receive a disproportionately large distribution in these chapter 11 cases in contravention of the provisions and policies of the Bankruptcy Code and to the direct detriment of the Debtors' estates and other creditors.

**C.     Redundant Claims (Exhibit C)**

38.     The Debtors object to the Redundant Claims identified in **Exhibit C** because the claims are redundant of separate proofs of claim filed by the same claimant or affiliates of such claimant asserting the same purported liability.

39.     With respect to each of the Redundant Claims, the Debtors and/or their advisors have carefully reviewed the Claims Register, the Debtors' Books and Records, their Schedules, and the proofs of claim, including supporting documentation provided by the claimant, if any. Based on this review, the Debtors have identified at least one claim corresponding to each of the Redundant Claims which asserts the same purported liability, either against the same Debtor or against another Debtor in these chapter 11 cases, which claims are identified in **Exhibit C** in the column labeled "Corresponding Remaining Claim" (the "Remaining Claim").  Where the Remaining Claim is filed against another Debtor, the Debtors believe, based on their review of relevant information, that the Remaining Claims have identified the correct Debtor entity that may be liable, if at all, for the underlying claims.

14

40.     For the reasons stated above, the Debtors seek to disallow and expunge each Redundant Claim in its entirety and thereby limit the same alleged liability against a single Debtor's estate to a single claim.

41.     Unless included in other Exhibits to this Objection, the Remaining Claims will be unaffected by the relief requested in this Objection, and each of the claimants' rights to assert those liabilities against the Debtors' estates will be preserved, subject to the Debtors' reservation of their rights to object to the Remaining Claims and other claims on all grounds, whether legal, factual, procedural, substantive or non-substantive.

**D.     Satisfied Claims (Exhibit D)**

42.     The Debtors object to the Satisfied Claims identified in **Exhibit D** because the claims were fully satisfied prior to the Petition Date or the CALA Petition Date, as applicable, and should not be paid again.

43.     With respect to each of the Satisfied Claims, the Debtors and/or their advisors have carefully reviewed the Books and Records, the Schedules, and the proof of claim, including supporting documentation provided by the claimants, if any, and have determined that each of the claims have already been satisfied because (i) the asserted liability was paid in full by the Debtors; (ii) the asserted liability was paid by a third party billing system or (iii) the asserted liability was offset with a credit .  Pursuant to Local Rule 3007-1(e)(iii)(2), the Debtors have included relevant payment information in the column labeled "Reason for Disallowance" in **Exhibit D**.

44.     For the reasons stated above, the Debtors seek to disallow and expunge each Satisfied Claim in its entirety.

**E.** **Wrong Debtor Claims (Exhibit E)**

45.    The Debtors object to the Wrong Debtor Claims identified in **Exhibit E** because the claims fail to identify or incorrectly identify the Debtor that is liable for the claim.

46.    With respect to each of the Wrong Debtor Claims, the Debtors and/or their advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the proof of claim, including supporting documentation provided by the claimant, if any.  Based on this review, the Debtors have determined that the Wrong Debtor Claims should be asserted against the Debtor identified in the column labeled "New Case Info" in **Exhibit E** (the "<u>Identified Debtor</u>".

47.    The Debtors hereby seek entry of an order to correct the Debtor against which the Wrong Debtor Claim is asserted and to allow such Wrong Debtor Claim as modified.  If the relief sought in this Objection is granted, the claimant that filed the Wrong Debtor Claim will have an allowed claim against the Identified Debtor for the amount stated in **Exhibit E**.

**F.** **No-Basis 503(b)(9) Claims (Exhibit F)**

48.    The Debtors object to the No-Basis 503(b)(9) Claims identified in **Exhibit F** because each of these claims (i) does not meet the statutory requirements of section 503(b)(9) of the Bankruptcy Code, and (ii) is redundant of at least one other claim filed by the same claimant based on the same purported liability.

49.    Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to the claims for the value of any goods received by a debtor within 20 days before the commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

50.    With respect to each of the No-Basis 503(b)(9) Claims, the Debtors and/or their advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the proof

of claim, including any supporting documentation provided by each claimant.  None of the No-Basis 503(b)(9) Claims establishes, nor do the Debtors' Books and Records or their Schedules indicate, in whole or in part, the claimant's right to payment for the value of goods sold to the Debtors in the Debtors' ordinary course of business that were received by the Debtors within 20 days before the commencement of the Debtors' chapter 11 cases.

51.     In addition, based on their review of the Claims Register and the relevant proofs of claim, the Debtors have determined that each of the claimants who filed a No-Basis 503(b)(9) Claim also filed at least one claim on the general proof of claim form (the "Corresponding Non-503(b)(9) Claims"), which is identified under the column labeled "Corresponding Non-503(b)(9) Claims" in **Exhibit F**.  Each of the Corresponding Non-503(b)(9) Claims asserts the same amount of recovery based on the same purported liability as that asserted in the No-Basis 503(b)(9) Claims.

52.     For the reasons set forth above, the Debtors seek to disallow and expunge each No-Basis 503(b)(9) Claims in its entirety.  If the No-Basis 503(b)(9) Claims are not disallowed, the claimants may obtain double recovery and/or distributions at a higher priority than the distributions from the Debtors' estates to which they would otherwise be entitled.

53.     The Corresponding Non-503(b)(9) Claims will be unaffected by the relief requested in this Objection, and each claimant's right to assert these liabilities against the Debtors' estates will be preserved, subject to the Debtors' reservations of their rights to object to the Corresponding Non-503(b)(9) Claims on all grounds, whether legal, factual, procedural, substantive or non-substantive.

**G.      Misclassified 503(b)(9) Claims (Exhibit G)**

54.      The Debtors object to the Misclassified 503(b)(9) Claims identified in **Exhibit G** because each of the claims asserts administrative expense status pursuant to section 503(b)(9) of the Bankruptcy Code where there is no discernable basis for such classification.

55.      Section 503(b)(9) of the Bankruptcy Code provides administrative expense priority to the claims for the value of any goods received by a debtor within 20 days before the commencement of a chapter 11 case to the extent that such goods have been sold to the debtor in the debtor's ordinary course of business.  11 U.S.C. § 503(b)(9).

56.      With respect to each of the Misclassified 503(b)(9) Claims, the Debtors and/or their advisors have carefully reviewed the Debtors' Books and Records, their Schedules and the proof of claim, including any supporting documentation provided by each claimant.  None of the Misclassified 503(b)(9) Claims establishes, nor do the Debtors' Books and Records or their Schedules indicate, in whole or in part, the claimant's right to payment for the value of goods sold to the Debtors in the Debtors' ordinary course of business that were received by the Debtors within 20 days before the commencement of the Debtors' chapter 11 cases.

57.      Because such Misclassified 503(b)(9) Claims are not entitled to treatment as administrative expense under section 503(b)(9) of the Bankruptcy Code, the Debtors seek to reclassify each Misclassified 503(b)(9) Claim as a general, unsecured, non-priority claim.  By reclassifying the Misclassified 503(b)(9) Claims as set forth herein, the Debtors will be better positioned to ensure that the claimants entitled ultimately to receive distributions from the Debtors' estates receive the appropriate treatment and distribution.

58.      Unless included in other Exhibits to this Objection, only the classification of the Misclassified 503(b)(9) Claims will be affected by the relief requested in this Objection.  The

Debtors' reserve their rights to object to the Misclassified 503(b)(9) Claims on all other grounds, whether legal, factual, procedural, substantive or non-substantive.

### Separate Contested Matters

59.     To the extent that a response is filed regarding any claim identified in **Exhibits A- G** and the Debtors are unable to resolve the response, such claim, and the objection to such claim asserted by the Debtors herein, shall constitute a separate contested matter as contemplated by Bankruptcy Rule 9014.  Any order entered by the Court regarding an objection asserted in this Objection shall be deemed a separate order with respect to each claim.

### Responses to Omnibus Objection

60.     To contest this Objection, a claimant must file and serve a written response to this Objection (a "Response") so that it is received no later than **4:00 p.m. (Eastern Time) on October 7, 2010** (the "Response Deadline").  Every Response must be filed with:

> The Office of the Clerk
> The United States Bankruptcy Court for the District of Delaware
> 824 Market Street, Wilmington, Delaware 19801

and served upon the following entities so that the Response is received no later than the Response Deadline, at the following addresses:

> Cleary Gottlieb Steen & Hamilton LLP
> One Liberty Plaza
> New York, New York 10006
> Attn:  Deborah M. Buell and Lisa M. Schweitzer
>
> -and-
>
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 North Market Street, P.O. Box 1347
> Wilmington, Delaware 19899-1347
> Attn:  Derek C. Abbott

61.    Every Response to this Objection must contain, at a minimum, the following

information:

    a.    A caption setting forth the name of the Court, the name of the Debtors, the case number, and the title of this Objection;

    b.    The name of the claimant, the claim number, and a description of the basis for the amount of the claim;

    c.    The specific factual basis and supporting legal argument upon which the party will rely in opposing this Objection;

    d.    Any supporting documentation, to the extent that it was not included in the proof of claim previously filed with the clerk or claims agent, upon which the claimant intends to rely to support the basis for and amounts asserted in the proof of claim; and

    e.    The name, address, telephone number and fax number of the person(s) (which may be the claimant or the claimant's legal representative) with whom counsel for the Debtors should communicate with respect to the claim or this Objection and who possesses authority to reconcile, settle, or otherwise resolve the objection to the disputed claim on behalf of the claimant.

62.    If a claimant fails to file and serve a timely Response by the Response Deadline,

the Debtors may present to the Court an appropriate order disallowing the claim, without further

notice to the claimant or a hearing.

**Replies to Responses**

63.    The Debtors may, at their option, file and serve a reply to any response so that it

is received by the claimant (or the claimant's counsel, if represented) no later than three (3) days

prior to the Hearing.

**Adjournment of Hearing**

64.    The Debtors reserve the right to seek an adjournment of the Hearing on any

Responses to this Objection.  In the event that the Debtors seek such an adjournment, it will be

noted on the notice of agenda for the Hearing, and such agenda will be served on the affected

claimant by serving the person designated in the Response.

## Reservation of Rights

65.     The Debtors expressly reserve the right to amend, modify or supplement this

Objection.  Should one or more of the grounds of objection stated in this Objection be dismissed

or overruled, the Debtors reserve the right to object to each of the claims on any other grounds

that the Debtors discover or elect to pursue.  This Objection sets out substantive objections to the

claims identified in **Exhibits A-G**.  The Debtors reserve their right to assert non-substantive

and/or one or more other substantive objections to the claims identified in **Exhibits A-G** at a

later time.

66.     Notwithstanding anything contained in this Objection or the Exhibits attached

thereto, nothing herein shall be construed as a waiver of any rights that the Debtors may have to

(a) commence avoidance actions under the applicable sections of the Bankruptcy Code,

including, but not limited to, sections 547 and 548 of the Bankruptcy Code, against the claimants

subject to this Objection, (b) enforce the Debtors' rights of setoff against the claimants relating to

such avoidance actions, or (c) seek disallowance pursuant to section 502(d) of the Bankruptcy

Code of claims of the claimants that are subject to such avoidance actions.

67.     The modification or disallowance of the claims in **Exhibits A-G** in these chapter

11 cases shall be without prejudice to the rights and defenses of the Canadian Debtors and the

Monitor with respect to any related claims filed in the Canadian Proceedings.

## Relief from Amended Bankruptcy Rule 3007

68.     Notwithstanding the *General Order Regarding Applicability of Rule 3007(c) of*

*the Amended Federal Rules of Bankruptcy Procedure* entered by Judge Mary F. Walrath, Chief

United States Bankruptcy Judge, United States Bankruptcy Court for the District of Delaware, on

November 27, 2007, to the extent that the new requirements of amended Bankruptcy Rule 3007, as effective on December 1, 2007, apply, the Debtors seek relief from those requirements.

### No Prior Request

69.     No prior request for the relief sought herein has been made to this or any other court.

### Notice

70.     Notice of this Objection has been given via first class mail to (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) each of the parties listed in **Exhibits A-G** and (v) the general service list established in these chapter 11 cases.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of the page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court (i) enter an order substantially in the form attached hereto as **Exhibit I** reducing, modifying, reclassifying or disallowing in full each of the claims identified in **Exhibits A-G** as requested herein, and (ii) grant such other and further relief as is just and proper.

Dated:  September 14 , 2010  
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)  
James L. Bromley (admitted *pro hac vice*)  
Lisa M. Schweitzer (admitted *pro hac vice*)  
One Liberty Plaza  
New York, New York 10006  
Telephone:  (212) 225-3505  
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*  
Derek C. Abbott (No. 3376)  
Eric D. Schwartz (No. 3134)  
Ann C. Cordo (No. 4817)  
Andrew R. Remming (No. 5120)  
1201 North Market Street  
P.O. Box 1347  
Wilmington, Delaware 19801  
Telephone:  (302) 658-9200  
Facsimile: (302) 658-3989

*Counsel for the Debtors*  
*and Debtors-in-Possession*