## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------ X

                       :

*In re*                             :

NORTEL NETWORKS INC., *et al.*,[1]   :

                Debtors.     :

                       :

                       :

------------------------------------------------------ X

Chapter 11

Case No. 09-10138 (KG)

Jointly Administered

**Hearing Date: October 14, 2010 at 10:00 a.m. (ET)**
**Objections Due: October 7, 2010 at 4:00 p.m. (ET)**

## DEBTORS' MOTION FOR ENTRY OF AN ORDER
## (I) APPROVING PROCEDURES FOR THE ABANDONMENT,
## DISPOSAL, OR DESTRUCTION OF SPECIFIED HARD COPY DOCUMENTS
## AND ELECTRONIC DATA; (II) WAIVING COMPLIANCE WITH CERTAIN
## RETENTION LAWS AND ORDINANCES; AND (III) GRANTING RELATED RELIEF

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors

in possession, (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry

of an order substantially in the form attached hereto as Exhibit A, pursuant to sections 105, 363,

554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6007 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) approving procedures for the

Debtors to abandon or dispose of specified hard copy documents and specified electronic data (as

defined below) on notice to the parties as set forth below; (ii) waiving compliance with certain

federal, state or local records retention laws, rules and/or ordinances ("Retention Laws", as

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226). Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiqll.com/nortel.

further defined herein); and (iii) granting the Debtors such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105, 363, 541, and 554 of the Bankruptcy Code, as supplemented by Rule 6007 of the Bankruptcy Rules.

### Background

**A.      Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA (defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant to Bankruptcy Rule 1015(b) that provided for the joint administration of these cases and for consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks Corporation ("NNC"), NNI's direct corporate parent Nortel Networks Limited ("NNL," and together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

---

[2]      The Canadian Debtors include the following entities:   NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.    On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed Monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.    On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the

---

[3]    The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.      On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142].   An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group").   No trustee or examiner has been appointed in the Debtors' cases.

10.      On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.   On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099].   From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.      Debtors' Corporate Structure and Business**

11.      Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers.   Nortel's technologies spanned access and core networks and supported multimedia

---

[4]      Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings.   On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

and business-critical applications.  Nortel's networking solutions consisted of hardware, software and services.  Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.    Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

## C.    Case Milestones

13.    On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales.  To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd. to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to

---

[5]    Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

GENBAND US LLC [D.I. 2632].  In addition, Nortel has obtained Court approval for the auction of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business [D.I. 3855]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.     On August 4, 2009, this Court entered an order fixing September 30, 2009 at 4:00 p.m. (Eastern Time) as the general bar date for filing proofs of claim or interests against the Debtors (other than NN CALA) [D.I. 1280].  On December 3, 2009 this Court entered an order fixing January 25, 2010 at 4:00 p.m. (Eastern Time) as the bar date for filing proofs of claim or interests against NN CALA [D.I. 2059].

15.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580].  On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

**Facts Relevant to this Motion**

16.     Prior to the Petition Date, NNC instituted a single records retention policy relating to the retention of hard copy documents and certain types of electronic data for its subsidiaries and global businesses, including NNI and the other U.S. Debtors, titled the Worldwide Records Management Program (the "Nortel Records Management Procedures").  The Nortel Records Management Procedures provided for the retention and disposal of various categories of hard copy documents and electronic data based upon many criteria, including the type of hard copy document or electronic data, its date, its relevancy or lack thereof to ongoing businesses or litigation, as well as the periods of time such hard copy documents and electronic data must be maintained pursuant to relevant Retention Laws.  In addition, since the Petition Date, the Debtors

6

have retained materials in connection with certain post-petition asset sale transactions and in connection with certain litigation holds.

17.    The Debtors are currently preserving and storing electronic data on servers and in the form of hard drives, disks and preserved backup tapes.  Since the Petition Date, the Debtors have also continued to pay for the cost of storing and otherwise retaining approximately 200,000 to 250,000 boxes of hard copy documents at U.S. storage locations created prior to the bankruptcy filing.  The current cost of preserving and storing hard copy documents and electronic data located in the Debtors' off-site storage facilities is approximately $75,000 per month.

18.    This Motion seeks approval of abandonment or disposal procedures that would only apply to hard copy documents, as well as electronic data preserved in the form of imaged hard drives, disks and certain specified preserved backup tapes that are physically located in the U.S. (the "Electronic Data") and would not apply to the electronic data currently maintained on servers shared by the Debtors and the Canadian and EMEA Debtors.

19.    Based on a preliminary review of the Debtors' document inventories, the Debtors believe that they no longer have a need for the large majority of the stored hard copy documents.[6]  The Debtors believe that certain of these documents relate to the past operations of certain affiliates.  This Motion seeks approval of procedures that would apply to all of the hard copy documents physically located in the Debtors' storage facilities in the U.S.

---

[6]    Affiliates will receive notice of each proposed disposal, as set forth below, with an opportunity to seek possession of materials that relate to their operations.

20.    As of the Petition Date, the Debtors' work force totaled approximately 8,911 employees. As of today's date, the Debtors employ approximately 830 employees and that number will continue to decrease.

21.    A plan of reorganization was filed on July 12, 2010. [D.I. 3580]. All major asset sales have taken place or are pending and only a limited number of adversary proceedings initiated prior the bankruptcy have yet to be resolved. The substantial reduction in the Debtors' work force and in their office space has also made it more difficult and costly to organize, preserve, and store hard copy documents and Electronic Data. Given the reduction in their office space and workforce, unless the Debtors are authorized to dispose of unneeded hard copy documents and Electronic Data, the Debtors will continue to incur significant costs without benefit to the Debtors' estates or their creditors.

## Relief Requested

22.    By this motion, the Debtors seek entry of an order (i) approving procedures for the future abandonment or disposal of specified hard copy documents and specified Electronic Data as described more fully below (the "Document Disposal Procedures") on notice to certain parties, including the Canadian Debtors, EMEA Debtors, and non-debtor U.S. affiliates[7] (the "Affiliate List"); (ii) waiving the Debtors' compliance with certain Retention Laws[8]; (iii) granting relief from certain service requirements under Bankruptcy Rule 6007 to the extent that

---

[7]    The U.S. non-debtor affiliates who will receive notice of this motion shall include: Nortel Altsystems International Limited (f/k/a Alteon WebSystems International Limited), Nortel Networks India International Inc., Nortel Networks Technology Ltd., and Nortel Ventures LLC.

[8]    While the Debtors believe that section 554 of the Bankruptcy Code provides sufficient authority to abandon, dispose of and/or destroy a debtor's documents regardless of any generally applicable Retention Laws (including, for example and without limitation, the Health Insurance Portability and Accountability Act of 1996 and the Sarbanes-Oxley Act of 2002), the Debtors seek this additional relief in an abundance of caution. See In re Penn Traffic, Order Authorizing Abandonment, Disposal, and/or Destruction of Certain Documents, Books and Records and Waiving Compliance with Certain Retention Laws and Ordinances. May 23, 2010, PJW [D.I. 926] and related Motions [D.I. 543, 919].

Bankruptcy Rule requires the Debtors to serve notice of this motion on all of their creditors; and (iv) granting related relief.

23.     As a result of the Debtors' asset sales and the general winding down of their operations, the Debtors have been engaged in and will continue to engage in a process of identifying hard copy documents and Electronic Data for possible disposal.  By this Motion, the Debtors are requesting the approval of the Document Disposal Procedures to avoid the need for a separate motion for authorization for each disposal of hard copy documents or Electronic Data, provided that advance notice will be provided for each proposed disposal of hard copy documents and Electronic Data pursuant to the procedures set forth herein.  The Document Disposal Procedures are designed to (i) establish an efficient method of providing interested parties with notice of the Debtors' intentions with respect to the disposal of information in their possession and (ii) allow the Debtors to dispose of designated hard copy documents and/or Electronic Data without further Court order, pursuant to the procedures described below in Paragraph 24.[9]

24.     Accordingly, the Debtors seek an order authorizing and approving the following Document Disposal Procedures:

**Document Disposal Notice**

a)   For each collection of hard copy documents and/or Electronic Data designated for abandonment or disposal in the exercise of the Debtors' business judgment (the "Designated Information"), the Debtors shall file and serve (as set forth in Paragraph 24(b) and (c) below) a notice with the Court, substantially in the form

---

[9]     To the extent the Debtors are able to identify documents and Electronic Data that relate solely to the business of a particular Non-Debtor Affiliate, the Debtors reserve the right to request reimbursement for any associated disposal costs if the Non-Debtor Affiliate does not take custody of such documents or Electronic Data.

of the Document Disposal Notice attached hereto as <u>Exhibit B</u> and as more fully described below (the "<u>Document Disposal Notice</u>") together with a copy of the Order approving this Motion.

b)  The Document Disposal Notice shall contain a chart with: (i) a general description of the Designated Information to be disposed of; (ii) the date range, if available, within which the Designated Information was created; (iii) the location of the Designated Information; (iv) the date, if available, that the Designated Information was sent to storage or electronic archives; and (v) the volume of Designated Information subject to the Debtor's proposed abandonment or disposal.

c)  The Debtors shall serve each Document Disposal Notice on the following parties: (i) the affiliates included on the Affiliate List; (ii) counsel to the Committee; (iii) counsel to the Bondholder Group; (iv) the U.S. Trustee; (v) the Internal Revenue Service; (vi) applicable state and local taxing and governmental authorities; (vii) the Securities and Exchange Commission; (viii) counterparties to the 363 Sales; (ix) the Monitor; (x) the Joint Administrators; and (xi) the Rule 2002 list established in these Chapter 11 cases (collectively referred to herein as the "<u>Notice Parties</u>").

**<u>No Objection</u>**

d)  If the Debtors receive no timely objection to a Document Disposal Notice that meets the requirements of subparagraph (f) below, the Debtors are then authorized, without further court order, to dispose of all of the Designated

Information identified in such Document Disposal Notice in the manner the Debtors conclude is most appropriate in the exercise of their business judgment.

**Objections**

e) If any person or entity ("Objector") objects to the Debtors' disposal of the Designated Information as set forth in a particular Document Disposal Notice, they must serve an objection meeting the requirements of subparagraph (f) below ("Objection").

f) In order for an Objection to be considered, it must: (i) be in writing; (ii) specifically identify the Designated Information subject to the Objection ("Disputed Data"); (iii) state the basis for the objection and whether the objection can be cured;[10] (iv) be received by the Debtors no later than twenty (20) days after the filing of the Document Disposal Notice with the Court; and (v) be properly served on the following parties in their respective capacities as agents or representatives of the Debtors: (1) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attention: Deborah M. Buell, Esq., counsel for the Debtors; (2) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, Suite 1800, Wilmington, Delaware 19801, Attention: Derek C. Abbott; (3) Nortel Networks Inc., 2201 Lakeside Blvd., Richardson, TX 75082-4399, Attention: Donald Powers, Esq.; (4) Ogilvy Renault LLP, Suite 3800 Royal Bank Plaza, South Tower, 200 Bay Street, P.O. Box 84, Toronto, Ontario M5J

---

[10]    An Objection shall include a description of any means by which the Debtors can cure the Objection including, for example and without limitation, by (i) transferring the Requested Data to the Objector on a showing by the Objector of a legal entitlement to the Requested Data, without waiver of any privileges or other rights by the Debtors, or (ii) providing the Objector with Access to the Disputed Data (as defined below) on a showing by the Objector of a legal entitlement to Access the Disputed Data, without waiver of any privileges or other rights by the Debtors.

2Z4 Canada, Attention: Jennifer Stam, counsel for the Canadian Debtors; and (5) Herbert Smith LLP, Exchange House, Primrose Street, London EC2A 2HS, Attention: Stephen Gale, counsel for the EMEA/UK Debtors (the parties described in (1) – (5) of this paragraph shall be referred to herein as the "Objection Notice Parties").

**Objection Resolution**

g)  Subject to the procedures described below, the Debtors may resolve an Objection without a court hearing.

h)  The Debtors may, in the exercise of their business judgment and subject to federal, state and local laws that protect confidential information, resolve an Objection by providing an Objector with an opportunity to review the Disputed Data, and to obtain originals or copies of the Disputed Data, at the sole discretion of the Debtors and at the expense of the Objector, as set forth below ("Access"). Such Access shall be provided at the Debtors' sole discretion, provided that such Objector agrees to pay the Debtors in advance of such Access for: (i) any costs associated with providing Access to the Disputed Data at a particular location or through a particular electronic platform; (ii) any storage costs associated with the Access, including the continued preservation of the documents and Electronic Data until such Access is complete; and (iii) the cost of making copies of the Disputed Data or making the originals available.  The Debtors may resolve multiple Objections to the same or overlapping Disputed Data by providing Access to each such Objector at the Debtors' sole discretion.

12

**Hearing on Objection**

  i)  If an Objection cannot be resolved as set forth in the above subparagraphs (g)-(h), the Debtors may schedule a hearing for the first available omnibus hearing date that is at least ten (10) days after the Debtors have given written notice thereof ("Hearing Notice") to the Objector(s) with regard to the Disputed Data in question. The Hearing Notice shall identify the Disputed Data, describe the proposed disposition of such Disputed Data and provide a concise statement of the nature of the dispute and the Debtors' position with respect to the Disputed Data. The Objector may file a counter-statement of its position within seven (7) days of the Debtors filing any such Hearing Notice.

## Basis for Relief

**A.    Abandonment, Disposal of and/or Destruction of Hard Copy Documents and Electronic Data Under Sections 105, 363, and 554 of the Bankruptcy Code**

25.    As set forth in more detail below, the relief set forth herein is in the best interests of the estates because it will minimize the substantial costs of retaining hard copy documents and Electronic Data.

26.    The Bankruptcy Court has "exclusive jurisdiction of all the property wherever located, of the debtor as of the commencement of [its] case, and of property of the estate." 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a). The Bankruptcy Court may implement this broad jurisdiction through the use of section 105 of the Bankruptcy Code, which permits Bankruptcy Courts to "issue any order, process, or judgment that is necessary and appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

27.    Pursuant to section 554 of the Bankruptcy Code: "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."

28.    Courts use the business judgment standard when reviewing the Debtors' decision to abandon property that is either of inconsequential value or burdensome to the estate. See In re Slack, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) ("The trustee's power to abandon property is discretionary ... The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority.").

29.    Indeed, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b)(1) of the Bankruptcy Code, courts should generally approve a non-ordinary course transaction if the proposed use of estate assets is within the debtor's reasonable business judgment. See e.g., In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (stating that the court generally defers to the trustee's judgment so long as there is a legitimate business justification); In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (noting that courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); In re Delaware & Hudson R.R. Co., 124 B.R. 169, 175-76 (D. Del. 1991).

30.    The Debtors currently have records stored off-site and at the Debtors' active office sites in Richardson, Texas; Nashville, Tennessee and Research Triangle Park, North Carolina.  The Debtors are currently storing documents and Electronic Data in off-site facilities maintained by Iron Mountain, Inc. in facilities located in Alpharetta, Georgia; Billerica, Massachusetts; Nashville, Tennessee; Richardson, Texas and Research Triangle Park, North

14

Carolina. Additionally, the Debtors are storing documents and Electronic Data in off-site facilities maintained by Data Safe Information Management Systems in Santa Clara, California and by Archive America in Sunrise, Florida. The business records at each of these locations include hard copy documents that are more than fifteen (15) years old and have not been used for a significant period of time.

31. Indeed, thousands of boxes of hard copy documents were stored off-site as part of the pre-petition archiving process and have not been retrieved from their storage locations since the Petition Date. Additionally, thousands of boxes of hard copy documents are no longer necessary or relevant to any aspect of the remaining operations of the Debtors.

32. The Debtors anticipate vacating one of their two office buildings in Richardson, Texas in the fall of 2010 and permanently closing that site by late 2010.[11] Thus, the Debtors would need to increase their already significant off-site storage costs to store the additional hard copy documents currently located in the Richardson building they will be vacating, unless Document Disposal Procedures are approved which permit the Debtors to abandon or dispose of unneeded documents in an orderly manner.

33. In addition, the Debtors' workforce is dwindling and there will be insufficient manpower and knowledge of the retained hard copy documents and Electronic Data to begin the process of systematically disposing of unnecessary information. The ideal time to begin such a process is the present.

34. Although the Debtors have certain retention obligations for documents and Electronic Data as a result of certain post-petition sale agreements and litigation holds, the vast

---

[11]     The Debtors have two sites in Richardson, Texas: 2201 Lakeside and 2221 Lakeside. The Debtors are vacating the offices at 2221 Lakeside and consolidating their operations into the offices at 2201 Lakeside.

majority of pre-petition documents and Electronic Data will not be maintained for those, or any other, reason. Indeed, in light of the orderly sales of the Debtors' assets thus far and the ongoing wind-down of the Debtors' affairs, there is no business reason to continue to retain many categories of hard copy documents and Electronic Data and abandoning or disposing of such hard copy documents and Electronic Data is simply another aspect of the Debtors' wind down processes. Furthermore, it is in the best interests of the Debtors' estates to reduce the continuous accrual of off-site storage fees as this reduces the costs associated with the administration of the estate.

35.     The Debtors' request for court approval of the Document Disposal Procedures is therefore necessary and appropriate because it is no longer imperative that all of the hard copy documents and Electronic Data within the Debtors' possession, custody and control be retained, and the burden of storing this unneeded information far outweighs any benefit.

36.     The Debtors are mindful that the disposal of hard copy documents and Electronic Data should be carried out systematically and with caution. The Debtors recognize that certain records must be retained to pursue objections to proofs of claim and in accordance with specific hard copy document and Electronic Data requests relating to litigations brought against the Debtors' estates.

37.     The Debtors will exercise their business judgment in selecting the method of disposing of hard copy documents and Electronic Data most appropriate to the type of hard copy document or Electronic Data subject to disposal, taking into account such issues as volume, cost, and confidentiality concerns.

38.     As a general matter, the Debtors propose to review all of the hard copy documents and Electronic Data in their possession, custody or control and designate any documents that, in

the exercise of the Debtors' business judgment, have no value and are of no legitimate interest to

any of the remaining issues in this case for abandonment or disposal.   The Debtors have retained

RLKS Executive Solutions LLC ("RLKS") as document management and electronic data

preservation consultants to assist in this document retention process.[12]   RLKS will work with

employees at the Debtors' off-site storage facilities together with Nortel to systematically sort,

categorize, retrieve, photocopy, archive and destroy the hard copy documents and Electronic

Data that the Debtors currently store or otherwise maintain.

39.     Accordingly, the Debtors seek authority, pursuant to 11 U.S.C. §§ 105, 363 and

544 to abandon or destroy records which are of "inconsequential value and benefit to the estate"

as designated in the Document Disposal Notices.

**B.     Waiver of Local, State and Federal Statutes, Rules and Ordinances Restricting the Abandonment, Disposal or Destruction of Records**

40.     In the context of bankruptcy cases where hard copy documents and Electronic

Data to be abandoned do not implicate any imminent or identifiable risk to the public welfare,

enforcement of such Retention Laws can be waived.   See In re Unidigital, Inc., 262 B.R. 283,

286 (Bankr. D. Del. 2001).

41.     Therefore, the Debtors seek authority to abandon or dispose of hard copy

documents and Electronic Data without complying with applicable Retention Laws governing

the retention and preservation of certain types of hard copy documents and Electronic Data,

including, without limitation, Retention Laws related to employee and medical records and

business and tax records in hard copy form; provided, however, that the Debtors will continue to

comply with such Retention Laws to the extent that compliance is necessary to ensure the

---

[12]     The Debtors filed an application with this Court requesting approval of the employment and retention of RLKS Executive Solutions LLS as document management and data preservation consultants to the Debtors [3741], which this Court granted by order dated August 18, 2010 [3800].

government's interest in public health and safety. However, in the context of bankruptcy cases where the documents and records to be abandoned do not implicate any imminent or identifiable risk to the public welfare, enforcement of such Retention Laws can be waived.[13]

42.    In the instant case, any requirement that the Debtors retain and preserve all of the hard copy documents and Electronic Data in their possession, custody or control hinders the Debtors' winding down efforts and creates unnecessary expense for the Debtors' estates, contrary to federal bankruptcy policy. As noted above, a substantial portion of the hard copy documents and Electronic Data currently within the Debtors' possession, custody or control is more than fifteen (15) years old and any requirement to retain them further is "not reasonably calculated to protect the public health or safety from imminent and identifiable harm." Midlantic Nat'l Bank, 474 U.S. at 507.

43.    Accordingly, the Court may permit the Debtors to abandon, dispose of and/or destroy the hard copy documents and Electronic Data that the Debtors would otherwise be required to keep. Cf. N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 523-24 (1984) (permitting a debtor-in-possession to reject contracts where rejection would otherwise cause a violation of the National Labor Relations Act).

44.    For the reasons discussed above, the Debtors request that the Court waive compliance with any Retention Laws restricting the Debtors abandonment, disposal and/or destruction of the hard copy documents and Electronic Data.

---

[13]    The Supreme Court recognized an exception to a debtor's ability to abandon property pursuant to section 554 of the Bankruptcy Code in Midlantic Nat'l Bank v. New Jersey Dept. of Envtl. Protection, 474 U.S. 494 (1986). In response to this so-called public health exception, however, this Court has held that "the majority of courts have read the exception to abandonment narrowly by disallowing abandonment only where there is an imminent harm to the public health or safety." In re Unidigital, Inc., 262 B.R. at 286. Consequently, debtors should be permitted to abandon property, absent an imminent harm to the public health or safety, when the decision to do so is made pursuant to the exercise of the debtor's reasonable business judgment.

## C.    Relief from Bankruptcy Rule 6007

45.    The Debtors also request relief from Bankruptcy Rule 6007 to the extent that this Bankruptcy Rule requires the Debtors to serve notice of this Motion on all of their creditors. Bankruptcy Rule 6007 provides, in part that:

> *Unless otherwise directed by the court*, the trustee or debtor in possession shall give notice of a proposed abandonment or disposition of property to the United States trustee, *all creditors*, indenture trustees and committees elected pursuant to § 705 or appointed pursuant to § 1102 of the Code.

FED. R. BANKR. P. 6007(a) (emphasis added).

46.    The Debtors believe that serving notice of the Motion on all of their creditors would be costly and provide negligible benefit to the Debtors' estates and creditors and respectfully submit that providing notice to the Noticing Parties, but not to all creditors, will effectuate the goal of adequate notice while at the same time advancing the goal of preserving the assets of the Debtors' estates for the benefit of their creditors.  By providing for service upon the Rule 2002 list, the Debtors intend to provide notice to all creditors who have appeared and specifically sought such notice in these cases.

47.    Accordingly, the Debtors submit that modifying the notice requirements of Bankruptcy Rule 6007 is in the best interests of the Debtors' estates and their creditors.

### Notice

48.    Notice of this Motion has been given via first class mail to (i) the affiliates listed on the Affiliate List; (ii) counsel to the Creditors' Committee; (iii) counsel to the Bondholder Group; (iv) the U.S. Trustee; (v) the Internal Revenue Service; (vi) applicable state and local taxing and governmental authorities; (vii) the Securities and Exchange Committee; (viii) counterparties to the 363 Sales; (ix) the Monitor; (x) the Joint Administrators; and (xi) and the

Rule 2002 list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

### No Prior Request

49.    No prior request for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 17, 2010
        Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
Alissa T. Gazze (No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*