**<u>Exhibit A</u>**

**<u>REDACTED</u>**

*FINAL EXECUTION VERSION*

# MSS SIDE AGREEMENT

This MSS SIDE AGREEMENT (the "**Agreement**") is dated as of August 26, 2010, among (i) Nortel Networks Corporation, a corporation organized under the laws of Canada ("**NNC**"); (ii) Nortel Networks Limited, a corporation organized under the laws of Canada ("**NNL**" and, together with NNC, the "**Canadian Main Sellers**"); (iii) Nortel Networks Inc., a corporation organized under the laws of Delaware ("**NNI**" and, together with the Canadian Main Sellers, the "**Main Sellers**"); (iv) the affiliates of the Main Sellers listed in Schedule A hereto (the "**Other Sellers**" and, together with the Main Sellers, the "**Sellers**"); (v) the entities listed on Schedule B hereto (the "**EMEA Sellers**"), which in the case of the EMEA Debtors are acting by their joint administrators Alan Robert Bloom, Stephen John Harris, Alan Michael Hudson and Christopher John Wilkinson Hill of Ernst & Young LLP of 1 More London Place, London SE1 2AF, England (other than Nortel Networks (Ireland) Limited (in administration), for which David Hughes of Ernst & Young Chartered Accountants of Harcourt Centre, Harcourt Street, Dublin 2, Ireland and Alan Robert Bloom serve as joint administrators) who act as agents for the EMEA Debtors only and without any personal liability whatsoever (the "**Joint Administrators**"); (vi) Nortel Networks S.A. (in administration), a corporation incorporated under the laws of France ("**NNSA**"), represented by the French Liquidator (as defined below), who acts as agent for NNSA without any personal liability whatsoever (NNSA, the Sellers and the EMEA Sellers being, together, the "**Selling Parties**"); (ix) the Joint Administrators; and (ix) the Joint Israeli Administrators.

The Joint Administrators, the Joint Israeli Administrators and the NNSA Office Holders, in their individual capacities, shall be party to this Agreement solely for the purposes of Sections 3.1, 3.6, 3.7, 3.10 and 3.14.

## W I T N E S S E T H:

WHEREAS, on the Petition Date, the Canadian Debtors filed with the Canadian Court an application for protection under the CCAA and were granted certain initial creditor protection pursuant to an order issued by the Canadian Court on the same date, which also appointed Ernst & Young Inc. as "**Monitor**" in connection with the CCAA Cases and has been extended by further order of the Canadian Court from time to time, most recently on July 16, 2010, as the same may be amended and restated from time to time by the Canadian Court;

WHEREAS, the U.S. Debtors are debtors-in-possession under the U.S. Bankruptcy Code which commenced cases under Chapter 11 of the U.S. Bankruptcy Code on the Petition Date by filing voluntary petitions for relief in the U.S. Bankruptcy Court for the District of Delaware except for NN (CALA), which commenced its cases under the U.S. Bankruptcy Court on July 14, 2009;

WHEREAS, the EMEA Debtors on the Petition Date filed applications with the English Court pursuant to the Insolvency Act and the EC Regulation and the English Court appointed the Joint Administrators under the Insolvency Act;

WHEREAS, while the administration proceedings in respect of NNSA under the Insolvency Act are continuing, subsequent to the Petition Date, NNSA commenced secondary

insolvency proceedings within the meaning of Article 27 of the EC Regulation in the Republic of France pursuant to which Maître Cosme Rogeau, of 26, avenue Hoche, 78000 Versailles was appointed as the "Liquidateur Judiciaire" for NNSA (the "**French Liquidator**") (Docket No. 2009P00492) and is assisted, for the purpose hereof, by Maître Franck Michel, *Mandataire ad hoc* for NNSA (together, the "**NNSA Office Holders**");

WHEREAS, the Israeli Company on January 18, 2009 filed applications with the Israeli Court, pursuant to the Israeli Companies Law 1999, and the regulations relating thereto for a stay of proceedings and the Israeli Court appointed the Joint Israeli Administrators on January 19, 2009, which was terminated in accordance with the Israeli Court ruling of November 24, 2009 approving the creditors' arrangement for the Israeli Company. Following such ruling, the material creditors of the Israeli Company applied to the Israeli Court to approve the continuation of all relevant rights, duties and obligations of the Joint Israeli Administrators with respect to the Israeli Company, as were previously vested in the Joint Israeli Administrators during and for the purpose of such stay of proceedings, such application was approved on December 10, 2009 by the Israeli Court in order, inter alia, that the Joint Israeli Administrators shall execute the creditors arrangement;

WHEREAS, the Non-Debtor Sellers and the EMEA Non-Debtor Sellers are not subject to any Bankruptcy Proceedings;

WHEREAS, on June 9, 2009, the U.S. Debtors, the Canadian Debtors, the EMEA Debtors and the Joint Administrators entered into an Interim Funding and Settlement Agreement (as may be amended from time to time in accordance with its terms, the "**IFSA**") governing certain intercompany matters, including the obligation of the parties thereto to (a) negotiate in good faith and attempt to reach agreement on a timely basis on a protocol (the "**Interim Sales Protocol**") for resolving disputes concerning the allocation of Sale Proceeds from Sale Transactions (each as defined in the IFSA), which Interim Sales Protocol shall provide binding procedures for the allocation of Sale Proceeds where the relevant parties in such Sale Transaction have been unable to reach agreement regarding such allocation, and (b) following entry into any Sale Transaction, negotiate in good faith and on a timely basis to attempt to reach agreement regarding the allocation of the Sale Proceeds from such Sale Transaction within a reasonable period of time or as may be otherwise provided in the Interim Sales Protocol (failing which the Interim Sales Protocol shall apply to determine the allocation of the relevant Sale Proceeds);

WHEREAS, the Sellers have, as of August 26, 2010, entered into an Asset Sale Agreement with PSP Holding LLC, a limited liability company organized under the laws of Delaware (the "**Purchaser**"), relating to the assets of the Business owned and operated by the Sellers and as may be amended in accordance with its terms and this Agreement (the "**North American Agreement**");

WHEREAS, the EMEA Sellers, the Joint Administrators and the Joint Israeli Administrators have entered into an Asset Sale Agreement, dated as of August 26, 2010, with Purchaser as may be amended in accordance with its terms and this Agreement relating to the assets of the Business owned and operated by the EMEA Sellers (the "**EMEA Agreement**" and, together with the North American Agreement, the "**Sale Agreements**");

WHEREAS, NNSA acceded to the IFSA on September 11, 2009 and, notwithstanding that NNSA is not a party to the Sale Agreements, NNSA is deemed to be a "Selling Debtor" under Section 12.a of the IFSA for the purposes of the  Sale Agreements and, as such, any reference in this Agreement to a Selling Party shall be construed as including NNSA;

WHEREAS, in accordance with Section 12.b and 12.g of the IFSA, the Selling Parties, the Monitor and the Committee (as defined in the U.S. Bidding Procedures Order) will enter into an escrow agreement with the Distribution Agent (the "**Distribution Escrow Agreement**") governing, among other things, the Distribution Agent's collection, holding in escrow in an escrow account at the Distribution Agent (the "**Distribution Escrow Account**") and distribution to the Sellers, the EMEA Sellers, NNSA and any other party deemed to be a Selling Debtor pursuant to the IFSA of the Total Proceeds (as defined below) and other payments to be made by the Purchaser (or any Designated Purchaser) to the Selling Parties under or in relation to the Sale Agreements;

WHEREAS, for the purpose of facilitating the completion of the Transaction and maximizing the value arising therefrom for their respective stakeholders, the Parties intend to assume certain mutual cooperation and other covenants relating to the allocation among the Parties of the benefits and burdens of the Transaction; and

NOW, THEREFORE, in consideration of the respective covenants made herein, and of the mutual benefits to be derived hereby (the sufficiency of which are acknowledged), the Parties hereto agree as follows:

ARTICLE I

INTERPRETATION

SECTION 1.1.  Definitions.

(a)      To the extent capitalized words used herein (including in the recitals hereof) are not defined in this Agreement, those words shall have the meanings given to them (i) in the North American Agreement, (ii) to the extent they are not defined in the North American Agreement, in the EMEA Agreement, or (iii) to the extent they are not defined in the Sale Agreements, the TSA (as defined below).

(b)      The following capitalized terms shall have the meanings set forth below:

(i)      "**Canadian IT Amount**" has the meaning assigned to in in Section 2.2(a)(ii).

(ii)      "**Court Approval Condition**" has the meaning assigned to it in Section 3.12.

(iii)      "**EMEA Debtors**" means those entities listed in Schedule 3 of the EMEA Agreement and NNSA.

(iv)      "**IT Payment Date**" means the date that is ten (10) Business Days following the IT Payment Trigger Date.

3

(v)    "**IT Payment Trigger Date**" means the earlier of (i) the TSA Termination Date and (ii) the date that the accrued IT Total Payment Amount equals or exceeds $12,000,000.

(vi)    "**IT Providers**" means NNL, NNI, and NNC.

(vii)    "**IT Services**" means those Services listed in Schedules 1.A and 1.B of the TSA, and any Project in relation thereto.

(viii)    "**IT Total Payment Amount**" has the meaning assigned to it in Section 2.2(a)(ii).

(ix)    ██████████████████████████████████████████

(x)    "**NNI IT Amount**" has the meaning assigned to it in Section 2.2(a)(ii).

(xi)    "**NNUK**" means Nortel Networks UK Limited.

(xii)    "**Party**"means (A) each of the Canadian Main Sellers and their respective Respective Affiliates, (B) each of NNI and its Respective Affiliates, (C) each of NNUK and its Respective Affiliates, and (D) for the purposes of Sections 3.1, 3.6, 3.7, 3.10 and 3.14 only, the Joint Administrators, the Joint Israeli Administrators, and the NNSA Office Holders and "Parties" shall have a corresponding meaning.

(xiii)    "**Respective Affiliates**" means (A) with respect to NNC, each Seller listed in Section 10.16(a)(i) of the Sellers Disclosure Schedule, (B) with respect to NNL, each Seller listed in Section 10.16(a)(ii) of the Sellers Disclosure Schedule, (C) with respect to NNI and all the other U.S. Debtors, each Seller listed in Section 10.16(a)(iii) of the Sellers Disclosure Schedule, and (D) with respect to NNUK, all the other EMEA Sellers listed in Schedule B of this Agreement and NNSA.

(xiv)    "**Total Proceeds**" means the aggregate amounts (A) paid by the Purchaser (or any Designated Purchaser) to the Selling Parties under or in respect of the Sale Agreements as Purchase Price (as defined in the North American Agreement and the EMEA Agreement, as applicable) and purchase price adjustments thereto and any damages, and (B) released to the Selling Parties under any escrow arrangement pursuant to which a portion of the Purchase Price (as defined in the North American Agreement and the EMEA Agreement, as applicable) or Good Faith Deposit (as defined in the North American Agreement and the EMEA Agreement, as applicable) has been placed in escrow, but for greater certainty shall exclude any amounts not constituting a portion of the Purchase Price (as defined in the North American Agreement and the EMEA Agreement, as applicable) paid or payable by the Purchaser (or any Designated Purchaser) to one or more Selling Party to compensate such Selling Party for costs incurred or to be incurred by such Selling Party, as contemplated to be paid directly to such Selling

4

Party in accordance with the terms of the North American Agreement, the EMEA Agreement, the TSA, or other Transaction Documents, as applicable.

(xv)    "**Transaction**" means the sale of the Business to the Purchaser pursuant to the Sale Agreements (as each may be amended from time to time in accordance with such Agreement).

(xvi)    "**Transaction Documents**" means the Transaction Documents (as the term is defined under the North American Agreement) and the Transaction Documents (as the term is defined under the EMEA Agreement).

(xvii)    "**TSA**" means the Transition Services Agreement as attached in final form to the North American Agreement.

(xviii)    "**TSA Termination Date**" means the first day on which none of the IT Providers perform IT Services for the Purchaser pursuant to the TSA, which for the avoidance of doubt shall be no later than the day following the Outside Date, as such date is defined in, and may be adjusted pursuant to, the TSA.

(xix)    "**Under-Recovery Period**" means the period commencing on the Under-Recovery Start Date up to but not including the TSA Termination Date.

(xx)    "**Under-Recovery Start Date**" means the first day on which none of the IT Providers provide IT services to any persons pursuant to any transition services agreement currently in effect as of the date of this Agreement (including such transition services agreements as are renewed, varied or novated after the date of this agreement, but, for the avoidance of doubt, not including the TSA).

SECTION 1.2.    Interpretation.

(a)    Gender and Number.  Any reference in this Agreement to gender includes all genders and words importing the singular include the plural and vice versa.

(b)    Certain Phrases and Calculation of Time.  In this Agreement (i) the words "including" and "includes" mean "including (or includes) without limitation", (ii) the terms "hereof," "herein," and "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement and not to any particular provision of this Agreement, and Section, Schedule and Annex references are to the Sections, Schedules and Annexes to this Agreement unless otherwise specified, and (iii) in the computation of periods of time from a specified date to a later specified date, unless otherwise expressly stated, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding" unless otherwise expressly provided.  If the last day of any such period is not a Business Day, such period will end on the next Business Day.

When calculating the period of time "within" which, "prior to" or "following" which any act or event is required or permitted to be done, notice given or steps taken, the date which is the reference date in calculating such period is excluded from the calculation.  If the last day of any such period is not a Business Day, such period will end on the next Business Day.

5

(c)    <u>Headings, etc</u>.  The division of this Agreement into Articles and Sections and the insertion of headings are for convenient reference only and are not to affect or be used in the construction or interpretation of this Agreement.

(d)    <u>Currency</u>.  All monetary amounts in this Agreement are stated in United States currency.

ARTICLE II

COVENANTS

SECTION 2.1.  <u>Collection of Total Proceeds</u>.

(a)    As may be agreed in the Distribution Escrow Agreement or otherwise documented in writing signed by all the Parties, in accordance with the provisions of Section 12.b of the IFSA, the Parties agree that any payment due by the Purchaser (and any Designated Purchaser) to the Selling Parties under the Sale Agreements or, upon release from escrow, any escrow agreement provided for in the Sale Agreements or the Transaction Documents (including the TSA Escrow Amount under the North American Agreement and the TSA Escrow Amount under the EMEA Agreement), that is included in the Total Proceeds shall be collected and held in escrow in the Distribution Escrow Account by the Distribution Agent (as agent for the Selling Parties), which will then allocate and distribute the Total Proceeds to the Selling Parties and other parties, as may be applicable, in accordance with this Agreement and the Distribution Escrow Agreement.

SECTION 2.2.  <u>Under-Recovery Period; Allocation of Payments Related to TSA IT Costs</u>.

(a)    During the Under-Recovery Period the IT Providers shall use commercially reasonable efforts to wind-down all activities and costs in relation to the IT Services save as is reasonably necessary to support their respective obligations under the TSA, and the IT Providers agree to consult with and provide such information as may be reasonably requested by NNUK and the Joint Administrators in relation to such wind-down plans and activities and to use commercially reasonable efforts to update and inform the French Liquidator regarding the same; and

(i)    During the Under-Recovery Period, (i) an amount (the "**Canadian IT Amount**") shall accrue in respect of the Canadian Main Sellers at a per diem rate based (A) for the first thirty (30) days of the Under-Recovery Period on an amount of $1.6 million for such thirty (30) day period and (B) for each successive thirty (30) day period thereafter on an amount of $1.4 million for each such thirty (30) day period  and (ii) an amount (the "**NNI IT Amount**") shall accrue in respect of NNI at a per diem rate based (A) for the first thirty (30) days of the Under-Recovery Period on an amount of $2.4 million for such thirty (30) day period and (B) for each successive thirty (30) day period thereafter on an amount of $2.6 million for each such thirty (30) day period.  The Canadian IT Amount and the NNI IT Amount (together the "**IT Total Payment Amount**") shall be capped at, and shall not accrue beyond $12,000,000  in the aggregate.

6

The Parties agree that on or as soon as reasonably practical after the IT Payment Date they shall take all necessary steps to direct the release of funds from the Distribution Escrow Account to pay an amount equal to the Canadian IT Amount to NNL (on behalf of the Canadian Main Sellers) and an amount equal to the NNI IT Amount to NNI (on behalf of the U.S. Debtors).

(b)    The Parties further agree that prior to the later of (i) the TSA Termination Date at which time no amounts are due to NNL and NNI in respect of the Canadian IT Amount and the NNI IT Amount and (ii) the date following the IT Payment Trigger Date that amounts owing to NNL and NNI in respect of the Canadian IT Amount and the NNI IT Amount are due, the Parties shall not take any action  to cause the Distribution Escrow Account to fall below $12,000,000 or such other lesser amount that may be contained in the Distribution Escrow Account at such time.

(c)    If the Total Proceeds available on the IT Payment Date are less than the IT Total Payment Amount, the available funds shall be distributed from the Distribution Escrow Account between NNL (on behalf of the Canadian Main Sellers) and NNI (on behalf of the U.S. Debtors) *pro rata* to their respective entitlements to the aggregate  Canadian IT Amount and NNI IT Amount ; provided that should any portion of the Total Proceeds become available after the IT Payment Date, the available funds shall be distributed from the Distribution Escrow Account between NNL (on behalf of the Canadian Main Sellers) and NNI (on behalf of the U.S. Debtors) *pro rata* to the extent amounts remain owing for the Canadian IT Amount or the NNI IT Amount.

(d)    The parties hereto agree that payments pursuant to this clause 2.2 are the only payments from the Distribution Escrow Account that shall be made in respect of under-recoveries for the Under-Recovery Period in relation to the TSA, and that no Party shall have any liability in respect of such under-recoveries save as set out in this Agreement.

SECTION 2.3.  ██████████████████████████████



ARTICLE III

MISCELLANEOUS

SECTION 3.1.  <u>Exclusion of Liability and Acknowledgments re Joint Administrators, NNSA Office Holders and the Joint Israeli Administrators and Directors of EMEA Non-Debtor Sellers</u>.

(a)    The Parties agree that (i) the Joint Administrators and the Joint Israeli Administrators have negotiated and are entering into this Agreement as agents for the EMEA Debtors to which they are appointed and that none of the Joint Administrators and the Joint Israeli Administrators, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own part or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations; and (ii) the directors of the EMEA Non-Debtor Sellers (as defined in the EMEA Agreement) shall not incur any personal liability whatsoever, in their capacity as such directors, in respect of the authorization, execution, delivery or performance of this Agreement, howsoever arising other than in respect of fraud by any such director.

(b)    The Joint Administrators and the Joint Israeli Administrators are parties to this Agreement: (i) as agents of each of the respective EMEA Debtors of which they are administrators; and (ii) in their own capacities solely for (1) taking the benefit of the statutory charges under Paragraph 99(3) of Schedule B1 of the Insolvency Act, or otherwise, (2) obtaining the benefit of any provisions of this Agreement expressed to be conferred on them, (3) enforcing the obligations of the other Parties to this Agreement and (4) for the purposes of Sections 3.1, 3.6, 3.7, 3.10 and 3.14.

(c)    Notwithstanding anything in Section 3.6, any claim, action or proceeding against the Joint Administrators arising from or related to (i) the personal liability of the Joint Administrators, their firm, partners, employees, advisers, representatives or agents, (ii) their qualification to act as insolvency practitioners in accordance with Part XIII of the Insolvency Act or (iii) their appointment as joint administrators of the EMEA Debtors and their remaining as current joint administrators thereof under this Agreement shall be governed exclusively by English law and subject to the exclusive jurisdiction of the English Courts.

(d)    The Parties agree that any breach of this Agreement by the Joint Administrators or the Joint Israeli Administrators shall be deemed to be a breach by them in their capacities as administrators of the relevant EMEA Debtors, and, in such a case, each Party hereto shall have the right to make claims and assert its rights hereunder, against the relevant EMEA Debtors and their respective successors and assigns.

(e)    The Parties agree that the French Liquidator is entering into this Agreement as agent for NNSA to which he is appointed and that none of the NNSA Office Holders, their firm, partners, employees, advisers, representatives or agents shall incur any personal liability whatsoever whether on their own or in respect of any failure on the part of any other Party to observe, perform or comply with any of its obligations under this Agreement or under or in relation to any associated arrangements or negotiations.

8

(f)     Notwithstanding anything in Section 3.6, any claim, action or proceeding against the NNSA Office Holders arising from or related to (i) the personal liability of the NNSA Office Holders, their firms, partners, employees, advisers, representatives or agents or (ii) their appointment as Liquidateur Judiciaire and Mandataire ad'hoc of NNSA shall be governed exclusively by French law and subject to the exclusive jurisdiction of the French Courts.

SECTION 3.2.  Remedies.  No failure to exercise, and no delay in exercising, any right, remedy, power or privilege under this Agreement by any Party will operate as a waiver of such right, remedy, power or privilege, nor will any single or partial exercise of any right, remedy, power or privilege under this Agreement preclude any other or further exercise of such right, remedy, power or privilege or the exercise of any other right, remedy, power or privilege.

SECTION 3.3.  No Third Party Beneficiaries.  Except as provided in Section 3.4, this Agreement is for the sole benefit of the Parties and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement; provided, however, that the Committee shall be a third party beneficiary of this Agreement entitled to take advantage of the benefits of this Agreement to NNI and the other U.S. Debtors party hereto only, to the fullest extent as if it were a signatory hereto and the directors of the EMEA Non Debtor Sellers shall be deemed third party beneficiaries of Section 3.1(a) hereof and shall be entitled to enforce and take advantage of the benefit thereof to its fullest extent as of a signatory hereto.

SECTION 3.4.  Consent to Amendments; Waivers.  No Party shall be deemed to have waived any provision of this Agreement unless such waiver is in writing, and then such waiver shall be limited to the circumstances set forth in such written waiver.  This Agreement, or any provision hereof, may be waived or amended, on no less than 5 days' notice, only by means of a writing signed by all Parties, and approved, in writing, by the Committee, the Bondholder Group (as defined in the U.S. Bidding Procedures Order) and the Monitor, which amendments, if material in the judgment of the Parties, must be approved by the Canadian Court and the U.S. Bankruptcy Court.

SECTION 3.5.  Successors.  Except as otherwise expressly provided in this Agreement, all covenants and agreements set forth in this Agreement by or on behalf of the parties hereto will be binding upon and inure to the benefit of such parties and their respective successors.

SECTION 3.6.  Governing Law; Submission to Jurisdiction; Waiver of Jury Trial.

(a)     The Parties agree that this Agreement shall be governed exclusively by the laws of the State of New York without regard to the rules of conflict of laws of the State of New York or any other jurisdiction; provided, however, that Section 3.1 shall be governed exclusively by English law.

(b)     To the fullest extent permitted by applicable Law, each Party (i) agrees to submit to the non-exclusive jurisdiction of the U.S. Bankruptcy Court and the Canadian Court (in a joint hearing conducted under the Cross-Border Protocol adopted by such courts, as it may be in effect from time to time), for purposes of all legal proceedings to the extent relating to the matters agreed in this Agreement, (ii) agrees that any claim, action or proceeding by such Party seeking any relief whatsoever to the extent relating to the matters agreed in this Agreement must be brought in the U.S. Bankruptcy Court if such claim, action, or proceeding would solely affect NNI,  the

9

Canadian Court if such claim, action, or proceeding would solely affect the Canadian Main Sellers or Nortel Networks Technology Corporation, or the English Court if such claim, action or proceeding would solely affect the EMEA Sellers or EMEA Debtors, (iii) waives and agrees not to assert any objection that it may now or hereafter have to the laying of the venue of any such action brought in such a court or any claim that any such action brought in such a court has been brought in an inconvenient forum, (iv) agrees that mailing of process or other papers in connection with any such action or proceeding or any other manner as may be permitted by Law shall be valid and sufficient service thereof, and (v) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by applicable Law; provided, however, that any claim, action or proceeding set forth in Section 3.1 (except Section 3.1(f)) shall be brought exclusively in the English Courts.

(c)    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION OR MATTER CONTEMPLATED HEREBY.  EACH PARTY (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 3.6.

SECTION 3.7.  Notices.  All demands, notices, communications and reports provided for in this Agreement shall be in writing and shall be either sent by facsimile transmission with confirmation to the number specified below or personally delivered or sent by reputable overnight courier service (delivery charges prepaid) to any Party at the address specified below, or at such address, to the attention of such other Person, and with such other copy, as the recipient Party has specified by prior written notice to the sending Party pursuant to the provisions of this Section 3.7.

**If to NNI and its Respective Affiliates:**
c/o Nortel Networks Inc.
Attention: Lynn Egan
Address: 220 Athens Way, Suite 300
         Nashville, Tennessee 37228
         U.S.A.
Facsimile No.: +1 615 432 4067

**With a copy to:**
Cleary Gottlieb Steen & Hamilton LLP
Attention: James L. Bromley and
           Lisa M. Schweitzer
Address: One Liberty Plaza
         New York, New York 10006
         U.S.A.
Facsimile No.: +1 212 225 3999

**If to the Canadian Main Sellers and their Respective Affiliates:**
c/o Nortel Networks Limited
Attention: Anna Ventresca
Address: 195 The West Mall Mailstop:
         T0503006
         Toronto, Ontario M9C 5K1
         Canada

**With a copy to:**
Ogilvy Renault LLP
Attention: Michael Lang
Address: Suite 3800
         Royal Bank Plaza, South Tower
         200 Bay Street, P.O. Box 84
         Toronto, Ontario M5J 2Z4
         Canada

10

Facsimile No.: +1 905 863 7386

**If to the EMEA Debtors and their
Respective Affiliates:**
c/o Ernst & Young LLP
Attention: Alan Bloom, Christopher Hill,
Stephen Harris
Address: One More London Place
                London SE1 2AF
                United Kingdom
Facsimile No.: +44 (0) 20 7951 1345
Telephone No.: +44 (0) 20 7951 9898


**If to the EMEA Non-Debtor Sellers:**

Sharon Rolston / Simon Freemantle
Maidenhead Office Park
Westacott Way
Maidenhead
Berkshire SL6 3QH
United Kingdom

Facsimile:       +44(0) 1628 432416

**If to the Joint Administrators:**
c/o Ernst & Young LLP
Attention: Alan Bloom, Christopher Hill,
Stephen Harris
Address: One More London Place
                London SE1 2AF
                United Kingdom
Facsimile No.: +44 (0) 20 7951 1345
Telephone No.: +44 (0) 20 7951 9898

**If to the Joint Israeli Administrators:**
Avi D. Pelossof
Zellermayer, Pelossof & Co,
The Rubenstein House
20 Lincoln Street
Tel Aviv
67131
Israel
Facsimile:       +972 3 6255500


**If to the Bondholder Group:**
Milbank, Tweed, Hadley & McCloy

Facsimile No.: +1 416 216 3930

**With a copy to:**
Herbert Smith LLP
Attention: Alex Kay
Address: Exchange House
                Primrose Street
                London EC2A 2HS
                United Kingdom
Facsimile No.: +44 (0) 20 7098 4447
Telephone No.: +44 (0) 20 7466 2447


**With a copy to:**

Sandy Shandro
3-4 South Square
Gray's Inn
London
WC1R 5HP

Facsimile:       +44 (0)20 7696 9911


**If to the Committee:**
Akin Gump Strauss Hauer & Feld LLP
Attention:  Fred S. Hodara and Stephen B. Kuhn.
One Bryant Park
New York, New York 10036, U.S.A.
Facsimile No.:  +1 212 872-1002


**If to the Monitor:**
  Murray A. McDonald

11

Attention:  Roland Hlawaty
One Chase Manhattan Plaza
New York, New York, 10006, U.S.A.
Facsimile No.:  +1 212 822-5170

Ernst & Young Inc.
Ernst & Young Tower
222 Bay Street, P. O. Box 251
Toronto, ON M5K 1J7
Canada
Facsimile No.:  +1416 943-3300

**If to NNSA:**
c/o AJ Associés
Attention: Franck Michel
Address: 10, allée Pierre de Coubertin, 78000
Versailles, France
Facsimile No.: + 33 1 39 50 87 52

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention: Antoine Tchekhoff & Edouard Fabre
Address: 1bis, avenue Foch, 75116 Paris, France
Facsimile No.: + 33 1 45 00 08 19

**If to the *Mandataire ad hoc*:**
c/o AJ Associés
Attention: Franck Michel
Address: 10, allée Pierre de Coubertin, 78000
Versailles, France
Facsimile No.: + 33 1 39 50 87 52

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention: Antoine Tchekhoff & Edouard Fabre
Address: 1bis, avenue Foch, 75116 Paris, France
Facsimile No.: + 33 1 45 00 08 19

**If to the French Liquidator:**
Attention: Cosme Rogeau
Address: 26 avenue Hoche, 78000 Versailles,
France
Facsimile No.: + 33 1 39 49 44 63

**With a copy to:**
Foucaud, Tchekhoff, Pochet & Associés
Attention: Antoine Tchekhoff & Edouard Fabre
Address: 1bis, avenue Foch, 75116 Paris, France
Facsimile No.: + 33 1 45 00 08 19

Any such demand, notice, communication or report shall be deemed to have been given pursuant to this Agreement when delivered personally, when confirmed if by facsimile transmission, or on the calendar day after deposit with a reputable overnight courier service, as applicable.

SECTION 3.8.  Counterparts.  The Parties may execute this Agreement in three or more counterparts (no one of which need contain the signatures of all Parties), each of which will be an original and all of which together will constitute one and the same instrument.

SECTION 3.9.  Severability.  If any provision, section, or part of this Agreement, or the application thereof under certain circumstances, is held invalid, illegal or incapable of being enforced in any jurisdiction, (i) as to such jurisdiction, the remainder of this Agreement or the application of such provision, section or part under other circumstances, and (ii) as for any other jurisdiction, any provision of this Agreement, shall not be affected and shall remain in full force and effect, unless, in each case, such invalidity, illegality or unenforceability in such jurisdiction materially impairs the ability of the Parties to consummate the transactions contemplated by this Agreement.  Upon such determination that any section or other provision is invalid, illegal or incapable of being enforced in such jurisdiction, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as

originally contemplated to the greatest extent possible even in such jurisdiction.

SECTION 3.10.  Termination.  This Agreement will automatically terminate upon the final distribution of all remaining Total Proceeds by the Distribution Agent.  Upon termination, the Parties' rights and obligations under this Agreement shall cease immediately but without prejudice to the rights and obligations of the Parties existing prior to the termination of the Agreement.

SECTION 3.11.  Obligations of the Parties.

(a)     The obligations of the Canadian Main Sellers and the other Canadian Debtors under this Agreement shall be joint and several.

(b)     The obligations of NNI and the other U.S. Debtors under this Agreement shall be joint and several.

(c)     The obligations of the EMEA Debtors under this Agreement shall be joint and several.

SECTION 3.12.  Effectiveness.

(a)     No provision of this Agreement (other than as set forth in Section 3.12(d)) shall be effective until each of the U.S. Bankruptcy Court and the Canadian Court approves the entirety of this Agreement and all of the provisions hereof (the "**Court Approval Condition**").

(b)     All provisions of this Agreement shall be effective as of the date of the satisfaction of the Court Approval Condition.

(c)     Each Party hereto shall:

(i)     use commercially reasonable efforts to satisfy the Court Approval Condition as soon as possible, taking into account the availability of the respective Courts to address the matters set forth in this Agreement;

(ii)     keep all other Parties reasonably apprised of the progress of the satisfaction of the Court Approval Condition and provide such other information regarding the satisfaction of the Court Approval Condition as reasonably requested by other Parties; and

(iii)     use commercially reasonable efforts to allow any other Party, which so requests in writing reasonable participation in connection with any proceedings in any Court related to the satisfaction of the Court Approval Condition.

(d)     Notwithstanding any of the foregoing, the following provisions of the Agreement shall be effective as of the date hereof: Sections 3.1 through 3.12 and Section 3.12(b), (c) and (d).

SECTION 3.13.     Execution by certain Selling Parties.  The Parties hereby acknowledge that certain Selling Parties are not executing this Agreement as of the date hereof.

13

Subject to Section 3.12, this Agreement shall be binding on all Parties that have executed this Agreement from the time of such execution, regardless of whether all Selling Parties have done so. Between the date hereof and the Closing Date, the Main Sellers hereby agree that they shall use their reasonable best efforts to cause each Other Seller that is not a signatory to this Agreement as of the date hereof to execute a counterpart to this Agreement as soon as practicable, agreeing to be bound as a Party under this Agreement.

     SECTION 3.14.  <u>Reservation of Rights</u>.  The Parties hereby agree that, except as specifically set forth in Article II hereof, nothing in this Agreement shall, or be deemed to, determine, ratify, or adopt, or have any impact whatsoever on, the allocation or distribution of proceeds from the sale of the Business among the Selling Parties.

   **[Remainder of this page intentionally left blank.  Signature pages follow.]**

IN WITNESS WHEREOF, the Parties have duly executed this ~~Passport~~ Side Agreement as of the date first written above.

NORTEL NETWORKS
CORPORATION

By:_____
    Name:  Anna Ventresca
    Title:  General Counsel–Corporate and
                   Corporate Secretary

By:_____
    Name:  Clarke Glaspell
    Title:  Controller

NORTEL NETWORKS LIMITED

By:_____
    Name:  Anna Ventresca
    Title:  General Counsel–Corporate and
                   Corporate Secretary

    Name:  Clarke Glaspell
    Title:  Controller

NORTEL NETWORKS INC.

By:_____
    Name:
    Title:

*MSS*

IN WITNESS WHEREOF, the Parties have duly executed this ~~Passport~~ Side Agreement as of the date first written above.

**NORTEL NETWORKS CORPORATION**

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

**NORTEL NETWORKS LIMITED**

By:_____
    Name:
    Title:

_____
    Name:
    Title:

**NORTEL NETWORKS INC.**

By:_____
    Name:
    Title:

**NORTEL NETWORKS**
**TECHNOLOGY CORPORATION**

By:_____
    Name:    Anna Ventresca
    Title:    Secretary

**NORTEL NETWORKS**
**INTERNATIONAL CORPORATION**

By:_____
    Name:  Anna Ventresca
    Title:  Secretary

By:_____
Name: Clarke Glaspell
Title: Treasurer

**NORTEL NETWORKS GLOBAL**
**CORPORATION**

By:_____
    Name:    Anna Ventresca
    Title:    Secretary

By:_____
Name: Clarke Glaspell
Title: Controller

**NORTEL NETWORKS (CALA) INC.**

By:_____
Name:
Title:

By:_____
Name:
Title:

NORTEL NETWORKS
TECHNOLOGY CORPORATION


By:_____
    Name:
    Title:


NORTEL NETWORKS
INTERNATIONAL CORPORATION


By:_____
    Name:
    Title:


NORTEL NETWORKS GLOBAL
CORPORATION


By:_____
    Name:
    Title:


NORTEL NETWORKS (CALA) INC.

By:_____
    Name:
    Title:

By:_____
    Name:  Lynn C. Egan
    Title:  Secretary

**NORTEL NETWORKS
INTERNATIONAL INC.**

By: _____
    Name:
    Title:

**NORTEL ~~NETWORKS~~
ALTSYSTEMS INC. (F/K/A ALTEON
WEBSYSTEMS, INC.)**

By: _____
    Name:
    Title:

Passport Side Agreement

MJS

SIGNED for and on behalf of Nortel Networks    )
UK Limited (in administration) by Christopher    )
Hill    )    ..................................................................
as Joint Administrator (acting as agent and    )    Christopher Hill
without personal liability) in the presence of:

Witness signature

..................................................................    )
Name:    JAN   CORDELL    )
Address: Ernst & Young, 1 More London Place,    )
London, SE1 2AF

SIGNED for and on behalf of Nortel Networks    )
(Ireland) Limited (in administration) by David    )    ..................................................................
Hughes as Joint Administrator (acting as agent    )    David Hughes
and without personal liability) in the presence    )
of:

Witness signature

..................................................................    )
Name:    )
Address:    )

SIGNED for and on behalf of Nortel GmbH    )
(in administration) by Christopher Hill    )
    )    ..................................................................
as Joint Administrator (acting as agent and    )    Christopher Hill
without personal liability) in the presence of:

Witness signature

..................................................................    )
Name:    JAN   CORDELL    )
Address: Ernst & Young, 1 More London Place,    )
London, SE1 2AF

Passport Side Agreement

*M SS*

**SIGNED** for and on behalf of **Nortel Networks**   )
**UK Limited** (in administration) by Christopher   )   ...............................................................
Hill   )   Christopher Hill
as Joint Administrator (acting as agent and   )
without personal liability) in the presence of:

Witness signature

...........................................................   )
Name:   )
Address: Ernst & Young, 1 More London Place,   )
London, SE1 2AF

**SIGNED** for and on behalf of **Nortel Networks**   )
**(Ireland) Limited** (in administration) by David   )   ...............................................................
Hughes as Joint Administrator (acting as agent   )   David Hughes
and without personal liability) in the presence   )
of:

Witness signature

Claire...Madden...........................................   )
Name: CLAIRE MADDEN   )
Address: HARCOURT CENTRE,   )
            HARCOURT STREET, Dublin 2

**SIGNED** for and on behalf of **Nortel GmbH**   )
(in administration) by Christopher Hill   )   ...............................................................
   )   Christopher Hill
as Joint Administrator (acting as agent and   )
without personal liability) in the presence of:

Witness signature

...........................................................   )
Name:   )
Address: Ernst & Young, 1 More London Place,   )
London, SE1 2AF

Passport Side Agreement
Miss

SIGNED for and on behalf of Nortel Networks )
Polska Sp. z.o.o. (in administration) by )
Christopher Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

.....................................................................
Christopher Hill

Witness signature

.....................................................................  )
Name:   JAN  CORDELL  )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

SIGNED for and on behalf of Nortel Networks )
Portugal S.A. (in administration) by )
Christopher Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

.....................................................................
Christopher Hill

Witness signature

.....................................................................  )
Name:   JAN  CORDELL  )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

SIGNED for and on behalf of Nortel Networks )
Romania s.r.l. (in administration) by )
Christopher Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of: )

.....................................................................
Christopher Hill

Witness signature

.....................................................................  )
Name:   JAN  CORDELL  )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

Passport Side Agreement
MSS

**SIGNED** for and on behalf of Nortel                )
Slovensko, s.r.o. (in administration) by              )    ..................................................................
Christopher Hill                                      )    Christopher Hill
                                                      )

as Joint Administrator (acting as agent and
without personal liability) in the presence of:


Witness signature
                                                      )
.......................................................................  )
Name:    JAN    CORDELL                               )
Address: Ernst & Young, 1 More London Place,          )
London, SE1 2AF


**SIGNED** for and on behalf of Nortel Networks       )
AB (in administration) by Christopher Hill            )    ..................................................................
as Joint Administrator (acting as agent and           )    Christopher Hill
without personal liability) in the presence of:       )


Witness signature
                                                      )
.......................................................................  )
Name:    JAN   CORDELL                                )
Address: Ernst & Young, 1 More London Place,          )
London, SE1 2AF


**SIGNED** for and on behalf of Nortel Networks       )
s.r.o. (in administration) by Christopher Hill        )    ..................................................................
                                                      )    Christopher Hill
as Joint Administrator (acting as agent and           )
without personal liability) in the presence of:


Witness signature
                                                      )
.......................................................................  )
Name:    JAN   CORDELL                                )
Address: Ernst & Young, 1 More London Place,          )
London, SE1 2AF

Passport Side Agreement

**SIGNED** for and on behalf of Nortel Networks )
France S.A.S. (in administration) by ~~Kerry~~ )
~~Trigg acting as authorised representative for~~ )
Christopher Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Witness signature

Name:          JAN CORDELL
                 ERNST & YOUNG LLP
Address:      1 More London Place
                 London
                 SE1 2AF

**SIGNED** for and on behalf of Nortel Networks )
SpA (in administration) by Christopher Hill )
)
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Christopher Hill

Witness signature

Name:   JAN   CORDELL )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

**SIGNED** for and on behalf of Nortel Networks )
Hispania S.A. (in administration) by )
Christopher Hill )
as Joint Administrator (acting as agent and )
without personal liability) in the presence of:

Christopher Hill

Witness signature

Name:   JAN  CORDELL )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

Passport Side Agreement
M.S

**SIGNED** for and on behalf of **Nortel Networks**                    )
**B.V.** (in administration) by Christopher Hill                          )    ................................................................
                                                                                      )    Christopher Hill
as Joint Administrator (acting as agent and                      )
without personal liability) in the presence of:                  )


Witness signature

................................................................    )
Name:    J A N    C O R D E L L                                  )
Address: Ernst & Young, 1 More London Place,      )
London, SE1 2AF


**SIGNED** for and on behalf of **Nortel Networks**                    )
**N.V.** (in administration) by Christopher Hill                          )    ................................................................
                                                                                      )    Christopher Hill
as Joint Administrator (acting as agent and                      )
without personal liability) in the presence of:                  )


Witness signature

................................................................    )
Name:    J A N    C O R D E L L                                  )
Address: Ernst & Young, 1 More London Place,      )
London, SE1 2AF


**SIGNED** for and on behalf of **Nortel Networks**                    )
**(Austria) GmbH** (in administration) by                          )    ................................................................
Christopher Hill                                                              )    Christopher Hill
as Joint Administrator (acting as agent and                      )
without personal liability) in the presence of:                  )


Witness signature

................................................................    )
Name:    J A N    C O R D E L L                                  )
Address: Ernst & Young, 1 More London Place,      )
London, SE1 2AF

**SIGNED** by Simon Freemantle ) 
duly authorised for and on behalf of **Nortel** ) 
**Networks AG** in the presence of: ) Simon Freemantle

Witness signature

_B. Schowak_ )

Name: B. SCHERWATH )
Address: C/O NORTEL NETWORKS UK LTD )
MAIDENHEAD
BERKS
SL6 3QH    UK


**SIGNED** by  Galina Svetlysheva in exercise of ) 
a power of attorney dated 17 August 2010 of ) ...........................................................................
**Richard Banbury** ) Galina Svetlysheva
duly authorised for and on behalf of **Nortel**
**Networks o.o.o.** in the presence of:


Witness signature

........................................................................... )
Name: )
Address: )

Passport Side Agreement
*MSS*

SIGNED by Simon Freemantle                  )
duly authorised for and on behalf of Nortel )    ...........................................................................
Networks AG in the presence of:             )    Simon Freemantle


Witness signature

...........................................................................  )
Name:                                                                       )
Address:                                                                    )


SIGNED by  Galina Svetlysheva in exercise of  )
a power of attorney dated 17 August 2010 of   )    ...........................................................................
Richard Banbury                               )    Galina Svetlysheva
duly authorised for and on behalf of Nortel
Networks o.o.o. in the presence of:

Witness signature

...........................................................................  )
Name:  SARAH GALBRAITH                                                       )
Address:   10 UTILSA  NIKOLSKAYA                                             )

           109012  MOSCOW

        RUSSIA

Passport Side Agreement
M55

**SIGNED** by Yaron Har-Zvi                    )

                                               )

in his own capacity and on behalf of the Joint )      הנאמן בהקפאת הליכים
Israeli Administrators without personal liability
and solely for the purpose of obtaining the           Yaron Har-Zvi
benefit of the provisions of this Agreement
expressed to be conferred on or given to the
Joint Israeli Administrators in the presence of:

Witness signature

Name: Ztay Lavi                                )
Address: 20 Lincoln St.                        )
          Tel-Aviv, Israel                     )



**SIGNED** by Avi D. Pelossof                  )

                                               )      הנאמן בהקפאת הליכים

in his own capacity and on behalf of the Joint )      Avi D. Pelossof
Israeli Administrators without personal liability
and solely for the purpose of obtaining the
benefit of the provisions of this Agreement
expressed to be conferred on or given to the
Joint Israeli Administrators in the presence of:

Witness signature

Name: Ztay Lavi                                )
Address: 20 Lincoln St.                        )
          Tel-Aviv, Israel                     )

Passport Side Agreement
/ן,55

Subject to the Israeli Courts approval

SIGNED for and on behalf of **Nortel Networks**           )          הנאמן בהקפאת הליכים
**Israel (Sales and Marketing) Limited** by                     )          ..............................................
Yaron Har-Zvi and Avi D. Pelossof as Joint            )          Yaron Har-Zvi
Israeli Administrators (acting jointly and                )          הנאמן בהקפאת הליכים
without personal liability) in connection with         )          ..............................................
the Israeli Assets  and Liabilities:                          )          Avi D. Pelossof
                                                                                  )
                                                                                  )
                                                                                  )
                                                                                  )
                                      איתי לביא ,עו"ד
                                      47667 -מ.ר
..............................................

Witness signature

                                                                                  )
Name: Itay Lavi                                                          )
Address: 20 Lincoln St.                                            )
              Tel-Aviv, Israel

**SIGNED** by Alan Bloom )

)

in his own capacity and on behalf of the Joint )    Alan Bloom
Administrators without personal liability and
solely for the purpose of obtaining the benefit of
the provisions of this Agreement expressed to be
conferred on or given to the Joint Administrators
in the presence of:


Witness signature

.................................................................. )

Name:    WILMA    GRAHAM )
Address: Ernst & Young, 1 More London Place, )
London, SE1 2AF

## Schedule A – Other Sellers

Nortel Networks Technology Corporation

Nortel Networks International Corporation

Nortel Networks Global Corporation

Nortel Networks (CALA) Inc.

Nortel Networks International Inc.

Nortel Altsystems Inc. (f/k/a Alteon Websystems, Inc. name change effective 4/30/09)

Nortel Networks India International Inc.

Nortel Networks de Argentina, S.A.

Nortel Networks Chile S.A.

Nortel Networks del Ecuador, S.A.

Nortel Networks de Guatemala, Ltda.

Nortel Networks de Mexico, S.A. de C.V.

Nortel de Mexico, S. de R.L. de C.V.

Nortel Networks del Paraguay S.A.

Nortel Networks Peru S.A.C.

Nortel Networks del Uruguay, S.A.

Nortel Networks de Venezuela, C.A.

Nortel Networks de Colombia, S.A.S.

Nortel Trinidad and Tobago Limited

Nortel Networks Australia Pty Limited

Nortel Networks (India) Private Limited

PT Nortel Networks Indonesia

Nortel Networks Japan (Japanese name is Nortel Networks Kabushiki Kaisha)

Nortel Networks Korea Limited

Nortel Networks Malaysia Sdn. Bhd.

Nortel Networks New Zealand Limited

Nortel Networks (Asia) Limited

Nortel Networks Singapore Pte. Ltd.

Nortel Networks (Thailand) Ltd.

Nortel Vietnam Limited

Nortel Networks (China) Limited

Nortel Networks Telecommunications Equipment (Shanghai) Co., Ltd.

Nortel Technology Excellence Centre Private Limited

## Schedule B – EMEA Sellers

Nortel Networks UK Limited

Nortel Networks (Ireland) Limited

Nortel GmbH (in administration)

Nortel Networks France SAS (in administration)

Nortel Networks S.p.A. (in administration)

Nortel Networks Hispania, S.A. (in administration)

Nortel Networks BV (in administration)

Nortel Networks NV (in administration)

Nortel Networks (Austria) GmbH (in administration)

Nortel Networks Polska Sp. Z.o.o. (in administration)

Nortel Networks Portugal, S.A. (in administration)

Nortel Networks s.r.o.(in administration)

Nortel Networks Romania s.r.l. (in administration)

Nortel Networks Slovensko, s.r.o.  (in administration)

Nortel Networks AG

Nortel Networks o.o.o.

Nortel Networks Israel (Sales and Marketing) Limited

Nortel Networks AB (in administration)