IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**NORTEL NETWORKS INC., *et al.*,**<br><br>Debtors. | Chapter 11<br><br>Case No. 09-10138(KG)<br>Jointly Administered<br><br>Re: Doc. No. 3832<br><br>Hearing Date: Sept. 30, 2010 @ 10:00 a.m.<br>Objection Deadline: Sept. 22, 2010 @ 4:00 p.m. |

**LEAD PLAINTIFFS' LIMITED OBJECTION TO DEBTORS'
MOTION FOR ORDER AUTHORIZING AND APPROVING SALE OF
CERTAIN ASSETS OF DEBTORS' MULTI-SERVICE SWITCH BUSINESS**

Lead Plaintiffs[1] in the putative securities class action captioned *David Lucescu, Individually and on Behalf of all Others Similarly Situated v. Mike Zafirovski*, Civil Action No. 09-cv-04691(SAS) (the "Securities Litigation"), filed in the United States District Court for the Southern District of New York (the "New York District Court"), on behalf of all persons (the "Class"), who purchased or otherwise acquired securities of Nortel Networks Corporation ("NNC"), between May 2, 2008 and September 17, 2008, inclusive, submit this limited objection (the "Objection") to Debtors' Motion for Orders, *inter alia*, authorizing and approving (A) the Sale of Certain Assets of the Debtors' Multi-Service Switch ("MSS") Business (Docket No. 3832) (the "Motion")[2] and state the following:

**PRELIMINARY STATEMENT**

1.      Lead Plaintiffs do not object to the relief sought in the Motion (approval of the Sale), but request, as they have in connection with prior sales, that any Order granting the relief requested, in whole or in part, provide some protocol or mechanism for the retention,

---

[1] Kien Chen and Moreno Minto were appointed Lead Plaintiffs on July 22, 2009.
[2] Capitalized terms shall have the meaning ascribed to them in the Motion unless defined otherwise herein.

23210/2
09/22/2010 15204233.1

preservation, maintenance and protection of books, records and other documents (as more specifically defined in note 5, *infra*), in whatever form, that may be transferred as part of the Sale and also provide for notice to Lead Plaintiffs of, and an opportunity to object to and be heard on, any efforts by the Sellers or Purchaser to destroy or abandon any of the foregoing (including those, if any, retained by Debtors).[3] Lead Plaintiffs and the Debtors have previously agreed upon representations to be made on the record to resolve this issue with respect to prior sales; however, with respect to the immediately preceding sale, the Debtors did not agree to make such a representation.

## BACKGROUND

2. On January 14, 2009, NNC, Nortel Networks Limited, Nortel Networks Technology Corporation, Nortel Networks Global Corporation, and Nortel Networks International Corporation (collectively, the "Canadian Nortel Group") commenced proceedings under the CCAA (the "Canadian Proceedings") in the Ontario Superior Court of Justice (Commercial List) (the "Ontario Court").

3. On January 14, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in this Court. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4. On January 14, 2009, Ernst & Young, Inc., the court-appointed monitor (the "Monitor") and authorized foreign representative of the Canadian Nortel Group in the Canadian Proceedings commenced proceedings in this Court, under chapter 15 of the Bankruptcy Code, Case No. 09-10164 (KG) (the "Chapter 15 Case").

5. On January 14, 2009, the Ontario Court issued its Initial Order (and together with subsequent amendments, the "Initial Order").

---

[3] Lead Plaintiffs acknowledge the recent filing by the Debtors of the Motion for Entry of an Order (I) Approving Procedures for the Abandonment, Disposal, or Destruction of Specified Hard Documents and Electronic Data; etc. (Doc. No. 3965), and reserve their rights with respect thereto.

6. On February 27, 2009, the Bankruptcy Court entered an order in the Chapter 15 Case granting recognition to the Canadian Proceedings as foreign main proceedings and giving full force and effect in the United States to the Initial Order of the Ontario Court (and any further amendments or extensions thereof as may be granted from time to time by the Ontario Court) (the "Recognition Order") (Chapter 15 Case Doc. No. 40).

7. On May 18, 2009, David Lucescu, individually and on behalf of all others similarly situated, filed a complaint in the Securities Litigation alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by Mike Zafirovski and Pavi Binning (the "Non-Debtor Defendants"), then former and current officers of NNC.[4]

8. By virtue of the discovery stay of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §7811-4(b)(3)(B) (the "PSLRA Stay")[5] and the automatic bankruptcy stay, as well as the stay in the Canadian Proceedings, which currently extends to the Non-Debtor Defendants through the Recognition Order, Lead Plaintiffs have not had the opportunity to conduct formal discovery of the Debtors, the Canadian Nortel Group, their affiliates or the Non-Debtor Defendants in the Securities Litigation. Therefore, the relief requested herein, the preservation of books, records and other documents (which may or may not be transferred as part of the subject sale), is critical.

9. On August 27, 2010, the Debtors filed the Motion seeking, *inter alia*, authority to sell certain MSS Assets free and clear of liens pursuant to the Stalking Horse Agreement (and as may be amended, the Asset Sale Agreement (the "ASA")). On September 1, 2010, the Court entered an Order (Doc. No. 3855), *inter alia*, approving the Debtors' entry into the Stalking Horse Agreement, approving the bid procedures and scheduling an auction for September 24, 2010, and the hearing to approve the Sale for September 30, 2010.

10. Lead Plaintiffs submit this limited Objection to the proposed Sale of the Assets as

---

[4] Neither Zafirovski nor Binning is presently employed by NNC or the Debtors.
[5] The PSLRA Stay prohibits discovery until motions to dismiss have been denied.

contemplated by the ASA (annexed to the Motion as Exhibit A).

11. Relevant to this Objection, the ASA provides the following:

> Section 5.22. <u>Maintenance of Books and Records</u>.
>
> (a) Subject to the provisions of Section 6.5 with respect to Tax records, after the Closing, the Purchaser shall, and shall cause the Designated Purchasers to, preserve, until at least the fifth (5th) anniversary of the Closing Date (or such longer period as may be required under applicable Law), all pre-Closing Date records to the extent relating to the Acquired Business possessed by, or that comes (*sic*) into the possession of, such Person. After the Closing Date (or such longer period as may be required under applicable law) and up until the fifth (5th) anniversary of the Closing Date (or such longer period as may be required under applicable law), upon any reasonable request from the Sellers or their representatives, the Purchaser shall, and/or shall cause the Person holding such records to, (i) provide to the Sellers or their representatives reasonable access to such records during normal business hours and (ii) permit the Sellers or their representatives to make copies of such records (to the extent permitted by applicable Law or Contract), in each case at no cost to the Sellers or their representatives (other than for reasonable out-of-pocket expenses) and in such a manner not to interfere with the normal operations of the business of the Purchaser and its Affiliates; <u>provided, however</u>, that nothing herein shall require the Purchaser to disclose any information to the Sellers if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Purchaser shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Sellers to occur without so jeopardizing privilege or contravening such Law, duty or agreement) or, other than as provided in Section 6.5 require the Purchaser to disclose its Tax records. Such records may be sought under this Section 5.22(a) for any reasonable purpose, including to the extent reasonably required in connection with accounting, litigation, federal securities Law disclosure or other similar needs of the Sellers (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (i) *any and all such records may be destroyed by the Purchaser* if the Purchaser sends to the Sellers written notice of its intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Sellers notify the destroying party

that the Sellers desire to obtain possession of such records, in which event the Purchaser shall transfer or cause to be transferred the records to the Sellers and the Sellers shall pay all reasonable expenses of the Purchaser in connection therewith, and (ii) the Purchaser shall not be required to provide the Sellers access to, or copies of, any Tax records, the sharing of which shall be governed exclusively by Section 6.5 hereof, or audited financial statements covering any pre-Closing period.

(b)   Subject to the provisions of Section 6.5, with respect to Tax records, after the Closing, the Sellers shall preserve, until the fifth (5th) anniversary of the Closing Date (or such longer period as may be required under applicable Law), all pre-Closing Date records to the extent relating to the Acquired Business possessed by, or that comes (*sic*) into the possession of, such Person.  After the Closing Date and up until the fifth (5th) anniversary of the Closing Date (or such longer period as may be required under applicable Law), upon any reasonable request from the Purchaser, any Designated Purchaser or their respective representatives, the relevant Seller shall, and/or shall cause the Person holding such records to, (i) provide to the Purchaser, any Designated Purchaser or their respective representatives reasonable access to such records (to the extent permitted by applicable Law or Contract), and to that portion of records or information relating to the Business that would constitute Business Information but for the fact that it does not relate exclusively to the Business, during normal business hours and (ii) permit the Purchaser, any Designated Purchaser or their respective representatives to make copies of such records or information required to in clause (i), in each case at no cost to the Purchaser, such Designated Purchaser or their respective representatives (other than for reasonable costs of segregating information commingled with information not relating to the Business and out-of-pocket expenses); and in such manner not to interfere with the normal operations of the business of the Sellers, provided, however, that nothing herein shall require any Seller, or any of its Affiliates to disclose any information to the Purchaser, any Designated Purchaser or their respective representatives if such disclosure would jeopardize any attorney-client or other legal privilege or contravene any applicable Law, fiduciary duty or agreement (it being understood that the Sellers shall cooperate in any reasonable efforts and requests for waivers that would enable otherwise required disclosure to the Purchaser, any Designated Purchaser or their respective representatives to occur without so jeopardizing privilege or contravening such Law, duty or agreement) or, other than as provided in Section 6.5, require the Sellers to disclose their Tax records. Such records may be sought under this Section 5.22(b) for any reasonable purpose,

> including to the extent reasonably required in connection with accounting, litigation, federal securities Law disclosure or other similar needs of the Purchaser, any Designated Purchaser or their respective representatives (other than claims between the Sellers and the Purchaser or any of their respective Subsidiaries under this Agreement or any Ancillary Agreement). Notwithstanding the foregoing, (y) *any and all such records may be destroyed by the Sellers* if the Sellers send to the Purchaser written notice of their intent to destroy such records, specifying in reasonable detail the contents of the records to be destroyed; such records may then be destroyed after the sixtieth (60th) day following such notice unless the Purchaser notifies the destroying party that the Purchaser or any Designated Purchaser desire (*sic*) to obtain possession of such records, in which event the Sellers shall transfer or cause to be transferred the records to the Purchaser and the Purchaser shall pay all reasonable expenses of the Sellers in connection therewith and (z) the Sellers shall not be required to provide the Purchaser, any Designated Purchaser or their respective representatives access to, or copies of, any Tax records, the sharing of which shall be governed exclusively by Section 6.5 hereof, or audited financial statements covering any pre-Closing period.

ASA, § 5.22(a) and (b) (emphasis added).

12. While various "books, records, files, documentation or sales literature" of the Debtors are Excluded Assets and are not being sold under the ASA, ASA §2.1.2(f), certain books, records, files, ledgers, and sales literature are classified as Business Information Business Information means:

> if used exclusively in connection with the Business, all books, records, files, ledgers, sales literature or similar documents in the possession or under control of the Sellers and that, in each case, is used exclusively in connection with the Business . . .

ASA, § 1.1, at 6-7. Business Information is not an Excluded Asset, ASA §2.1.2(f)(1), and is included among the Assets being sold and transferred pursuant to the ASA.

## OBJECTION

13. As previously stated, Lead Plaintiffs do not object to the Sale provided some further protocol or mechanism is imposed for the preservation, maintenance, protection, availability and notice (to parties in interest such as Lead Plaintiffs) of the proposed destruction or

abandonment of the Sellers' books, records and other documents, in whatever form, including native form and the Business Information (collectively, the "Books and Records"),[6] that may be relevant to the claims asserted in the Securities Litigation and that such process or protocol be available to Lead Plaintiffs and other parties-in-interest in these proceedings.

14.   The Books and Records may be relevant to the claims asserted in the Securities Litigation. Indeed, the accounting and reporting practices of the Debtors are squarely at issue in the Securities Litigation.[7] As discussed above, the PSLRA discovery stay, the automatic stay, the stay in the Canadian Proceedings and the Recognition Order currently prohibit Lead Plaintiffs from obtaining formal discovery from the Debtors, the Canadian Nortel Group, their affiliates and the Non-Debtor Defendants in the Securities Litigation. The Sale provides no guarantee that access to the Books and Records relevant to the claims in the Securities Litigation, as well as to the claims asserted or to be asserted in the Canadian Proceedings, will be available to third parties or that the Books and Records will be properly maintained and preserved. Therefore, some protocol is required to ensure that the Books and Records are properly maintained and preserved and available to the parties to the Securities Litigation and to other

---

[6]   Books and Records, which may contain information relevant to the claims in the Securities Litigation, also include such other assets to be sold pursuant to the Agreement including, but not limited to:
- Digital communications (*e.g.*, e-mail, voice mail, instant messaging);
- Word processed documents (*e.g.*, Word or WordPerfect documents and drafts);
- Spreadsheets and tables (*e.g.*, Excel or Lotus 123 worksheets);
- Accounting Application Data (*e.g.*, QuickBooks, Money, Peachtree data fields);
- Image and Facsimile Files (*e.g.*, PDF, .TIFF, .JPEG, .GIF images);
- Sound Recordings (*e.g.*, WAV and .MP$_3$ files);
- Video and Animation (*e.g.*, AVI and .MOV files);
- Databases (*e.g.*, Access, Oracle, SQL Server data SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, ACT!);
- Calendar and Diary Application Data (*e.g.*, Outlook PST, Yahoo, blog tools);
- Online Access Data (*e.g.*, Temporary Internet Files, History, Cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (*e.g.*, Zip, .GHO).

[7]   Although the chapter 11 debtors are not defendants in the Securities Litigation and no class proof of claim has been asserted in the chapter 11 case, until Lead Plaintiffs are permitted to conduct discovery, it cannot be determined whether the Debtors' Books and Records may or may not be relevant to the Securities Litigation.

stakeholders, and that notice and an opportunity to be heard be given before any Books and Records are destroyed or rendered otherwise unavailable.

15. Permitting the Debtors to sell their Assets and transfer their Books and Records without appropriate protections or a protocol to ensure that access to such records remains available to third parties would unduly and inappropriately prejudice the rights of Lead Plaintiffs and the putative Class in the Securities Litigation, as well as those of other creditors and stakeholders in these proceedings.

16. Furthermore, neither the Motion nor the Agreement specifically identifies the records subject to § 5.22 of the ASA. Indeed, the description of those records in the Agreement is extremely vague, ambiguous and completely subjective ("all pre-Closing Date records to the extent relating to the Acquired Business"). Furthermore, to the extent certain Books and Records are not transferred to the successful purchaser, they should remain with the Sellers and be maintained and preserved pursuant to the provisions of the Bankruptcy Code. There also may be books, records or documents that are transferred and are not deemed related to the Acquired Business, but which should be maintained and preserved as well and not destroyed or otherwise rendered unavailable.

17. The provisions of the ASA addressing Excluded Assets do not appear to be directly tied to § 5.22 of the ASA in connection with the Purchaser's obligation to preserve "all pre-Closing Date records to the extent relating to the Business." This provision (ASA § 5.22) is potentially meaningless in light of the unilateral right of either the Sellers or Purchaser, as the case may be, to destroy "such records" on (limited) notice only to the other party. This puts the Books and Records transferred pursuant to the ASA at risk and prejudices the Lead Plaintiffs and other stakeholders.

18. Because the books and records in the ASA are described in such vague and general terms (*see* ASA, § 5.22 and ¶ 16, *supra*), Lead Plaintiffs cannot determine if they include information and/or evidence potentially relevant to the claims in the Securities Litigation. Full disclosure of the books and records and a reasonable retention policy that does not allow the

Sellers (who are nevertheless bound by 11 U.S.C. § 554(a), requiring notice and a hearing before a debtor may abandon assets) or the Purchaser to destroy documents are warranted to provide Lead Plaintiffs and others an opportunity to move for appropriate relief, if necessary, to access those Books and Records relevant to the Securities Litigation.

19. Indeed, in connection with some of the prior sales of the Debtors' business units approved by the Court, the Debtors have represented that no *original* records would be transferred to the respective purchaser, but that only copies would be transferred. No such representation has yet been made in connection with this Sale. The ASA provides that the Sellers "have the right to retain *copies* of any book, record, literature, list and any other written or recorded information constituting Business Information" to which the Sellers determine they may require access, *see* ASA, following § 2.1.2(q) at p. 35 (emphasis added), which appears contrary to earlier representations in connection with other sales that no originals would be transferred.

20. The conduct of individuals and entities related to the Sellers or their Affiliates leading up to the filing of the Petitions here and in the other proceedings (which conduct lead to the Securities Litigation) requires that before documents potentially relevant to their activities and operations are abandoned, destroyed or transferred, parties in interest be given the opportunity to access and examine such documents and information. At the very least, such documents must be maintained and preserved for the duration of the Securities Litigation, including any appeals, so access can be provided at the appropriate time. To the extent any party to the ASA seeks to destroy the Books and Records, reasonable notice and an opportunity to be heard must be provided to Lead Plaintiffs and other parties in interest.

## CONCLUSION

21. Based upon the foregoing, Lead Plaintiffs respectfully request that unless and until an appropriate protocol or other mechanism (substantially similar to that which is described herein) is in place to (i) safeguard, preserve, maintain, protect and make available the Sellers'

Books and Records, including those sold or transferred pursuant to the ASA or such other asset purchase agreement that may be approved by the Court, relevant to the claims asserted in the Securities Litigation, and (ii) provide notice and an opportunity to be heard prior to any destruction or abandonment of the Books and Records, an order be entered denying the Sale and granting such other and further relief as the Court deems just and proper.

Dated:  September 22, 2010

**CROSS & SIMON LLC**

By: _____
Christopher P. Simon (Bar No. 3967)
913 N. Market Street, 11th Floor
P.O. Box 1380
Wilmington, DE 19899-1380
(302) 777-4200 (Telephone)
(302) 777-4224 (Facsimile)

**LOWENSTEIN SANDLER PC**
Michael S. Etkin (ME 0570)
Ira M. Levee (IL 9958)
65 Livingston Avenue
Roseland, NJ 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs
and the Putative Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Samuel H. Rudman
David A. Rosenfeld
58 South Service Road, Suite 200
Melville, NY 11747
(631) 367-7100 (Telephone)
(631) 367-1173 (Facsimile)

*Lead Counsel for Lead Plaintiffs and
the Putative Class*