IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | Case No. 09-10138 (KG) |
| Nortel Networks Inc., *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | Re: Docket No. 3832 |

**PRELIMINARY OBJECTION AND RESERVATION OF RIGHTS OF SNMP RESEARCH INTERNATIONAL, INC. TO DEBTORS' MOTION FOR ORDERS (I)(A) AUTHORIZING DEBTORS ENTRY INTO THE STALKING HORSE ASSET SALE AGREEMENT, (B) AUTHORIZING AND APPROVING THE BIDDING PROCEDURES AND BID PROTECTIONS, (C) APPROVING THE NOTICE PROCEDURES AND THE ASSUMPTION AND ASSIGNMENT PROCEDURES, (D) APPROVING A SIDE AGREEMENT, (E) AUTHORIZING THE FILING OF CERTAIN DOCUMENTS UNDER SEAL AND (F) SETTING A DATE FOR THE SALE HEARING, AND (II) AUTHORIZING AND APPROVING (A) THE SALE OF CERTAIN ASSETS OF DEBTORS MULTI-SERVICE SWITCH (FORMERLY KNOWN AS PASSPORT) BUSINESS FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES AND (B) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS**

SNMP Research International, Inc. ("SNMPRI"), through undersigned counsel, hereby files this preliminary objection and reservation of rights (the "Objection") to the Motion of the above-captioned debtors and debtors in possession (collectively, the "Debtors") For Orders (I)(A) Authorizing Debtors Entry Into The Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Approving A Side Agreement, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors Multi-Service Switch (Formerly Known As Passport) Business Free And Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain

Executory Contracts [Docket No. 3832] (the "Sale Motion").  In support of this Objection, SNMPRI respectfully represents as follows:

### The License Agreement

1. SNMPRI and Nortel Networks Corporation ("NNC"), a Canadian corporation, are parties to a certain license agreement with an effective date of December 23, 1999 (the "License Agreement") executed prior to the Petition Date (defined herein) governing NNC's use of certain intellectual property described as source code and binary code licensed by SNMPRI to NNC. The License Agreement contains over 70 schedules that each list one or more specific products, development software, and run-time software licensed to NNC.  Section 7.1 of the License Agreement permits NNC to assign the License Agreement as follows:

> [u]pon prior written notice of such to SNMPRI, NNC may assign this Agreement, in its entirety only, and only in conjunction with a change of ownership, merger, acquisition, sale or transfer of all of substantially all of its business or assets.  Such assignment shall only be valid as to NNC's business units as of the date of such assignment, and the rights and licenses of this Agreement shall not be enlarged to encompass the entirety of the new entity, if larger, or the entirety of the new entity's product line, if larger. The terms and conditions of this Agreement shall bind and inure to each party's successors and assigns.

License Agreement at 7.1.

2. Should NNC desire to assign only a portion of the License Agreement, section 7.2 of the License Agreement provides:

> [u]pon prior written notice of such to SNMPRI, execution of a fresh copy of this Agreement, and payment of an Adoption Fee, a Specified Entity previously licensed under one or more Schedules A that is to be made an independent entity by NNC may adopt this Agreement as an agreement separate from NNC ("New Agreement").  The Adoption Fee shall be equal to the amount that SNMP would have charged the Specified Entity under the relevant Schedule A if the Specified Entity had not been a Nortel Networks Company (Standard Value), minus the amount previously paid

>under the relevant Schedule A. SNMP's liability under the New Agreement shall be limited to a straight line three year depreciation of the Standard Value, starting from the execution date of the new agreement. The scope of the new license shall be to the named Specified Entity only, and shall not include the possibility of addition of any other "Specified Entities" at a later point in time.

License Agreement at 7.2.

3. SNMPRI and NNC were parties to the License Agreement on the Petition Date (defined herein).

## Background

4. On January 14, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code").

5. On August 27, 2010, the Debtors filed the Sale Motion. The Sale Motion, among other things, seeks the approval of: (i) authorizing and approving (a) the sale of the Assets (as defined in the Sale Motion), free and clear of all liens, claims and encumbrances, as provided in the Stalking Horse Agreement (as defined in the Sale Motion), and (b) the assumption and assignment of certain executory contracts pursuant to section 365 of the Bankruptcy Code. The Stalking Horse Agreement also provides for the sale of certain intellectual property. The specific contracts, executory or otherwise, and intellectual property contemplated by the Sale Motion and the Stalking Horse Agreement have not been disclosed.

6. The Debtors have sold parts of its business pursuant to (i) an Asset Sale Agreement, dated as of July 24, 2009, by and among various Debtors and Telefonaktiebolaget L M Ericsson, (ii) an Asset Sale Agreement, dated as of November 2, 2009, by and among various Debtors and GENBAND Inc., ("GENBAND Sale") (iii) an Amended and Restated Asset and Share Sale Agreement, dated as of September 14, 2009, by and among various Debtors and Avaya, Inc., (iv) an Asset Sale Agreement, dated as of November 24, 2009, by and among

3

various Debtors and Telefonaktiebolaget L M Ericsson, (v) an Asset Sale Agreement, dated as of February 19, 2009, by and among various Debtors and Radware Ltd., (vi) an Amended and Restated Asset Sale Agreement, dated as of November 24, 2009, by and among various Debtors and Ciena Corporation, and (vii) a Transaction Agreement, dated as of October 24, 2009, by and among various Debtors and Hitachi, Ltd. (collectively "Previous Sales").

7. As a result of the Previous Sales, the Debtors transferred SNMPRI intellectual property licensed to the Debtors under the License Agreement to the purchasers ("Previous Purchasers") in the Previous Sales. The Debtors did not transfer all or part of the License Agreement as a part of the Previous Sales. Simultaneously with the Previous Sales, SNMPRI has entered into a temporary license agreement with most of the Previous Purchasers who received SNMPRI intellectual property as a result of the Previous Sales, which authorizes the use of the SNMPRI intellectual property while a permanent license agreement is negotiated between SNMPRI and the Previous Purchasers.

8. As a result of the GENBAND Sale the Debtors knowingly transferred to GENBAND Inc.: (i) SNMPRI intellectual property licensed to the Debtors under the License Agreement; and (ii) SNMPRI intellectual property not licensed to the Debtors in any manner, both in violation of Paragraph 44 of the Order Authorizing and Approving (A) The Sale of Certain Assets of The Debtors' Carrier Voice Over IP and Communications Solutions Business Free and Clear of all Liens, Claims, and Encumbrances, and (B) The Assumption and Assignment of Certain Executory Contracts. As of the date hereof, SNMPRI has not entered into a license agreement with GENBAND Inc. authorizing the use of SNMPRI intellectual property transferred from the Debtors.

9. Because the Debtors have transferred SNMPRI intellectual property licensed

under the License Agreement to various Previous Purchasers, the Debtors cannot assign the entire License Agreement to the purchaser. Therefore, pursuant to Section 7.2 of the License Agreement, the purchaser must enter into a new license agreement with SNMPRI in order to use SNMPRI intellectual property.

### Preliminary Objection and Reservation of Rights

10. Since SNMPRI cannot determine if the Debtors intend to transfer SNMPRI intellectual property as a part of the sale and because the Debtors have knowingly transferred SNMPRI intellectual property without authorization previously, SNMPRI requests that the Debtors perform an audit, as a condition of the sale, to determine if SNMPRI intellectual property will be transferred to the purchaser as a part of the sale.

11. Since the License Agreement cannot be assigned in its entirety to the purchaser, SNMPRI requests that the Debtors include the following language in any order approving the sale:

> Nothing in this Order or in the Sale Agreement or Ancillary Agreements provides for or approves the transfer, assumption and/or assignment, whether under sections 363 or 365 of the Bankruptcy Code or otherwise, of any intellectual property or license agreement with SNMP Research International, Inc. ("SNMPRI"). Accordingly, no SNMPRI intellectual property and no SNMPRI intellectual property rights licensed to Nortel via contracts between Nortel and SNMPRI are conveyed or otherwise transferred by this Order or in the Sale Agreement or Ancillary Agreements. To the extent the Purchaser discovers they have improperly received SNMPRI's intellectual property or intellectual property rights, the Purchaser will make reasonable efforts to enter into a new license agreement with SNMPRI within a reasonable time after such discovery.

12. Section 365(b) of the Bankruptcy Code requires a debtor to cure any defaults and provide adequate assurance of future performance before an executory contract can be

assumed. 11 U.S.C. § 365(b). To the extent that any parties to the sale seek to transfer SNMPRI's intellectual property, any defaults under the License Agreement must be cured and adequate assurance must be provided. The Debtors have acknowledged not having a license for, and not paying for SNMPRI intellectual property used in the Debtors business since 1999 ("Unauthorized Use") and subsequently transferred to GENBAND Inc. as a part of the GENBAND SALE. SNMPRI estimates that approximately $1,517,038 (US dollars) plus amounts associated with licensing fees, royalties, and maintenance fees that have not been reported by NNC to date are owed to SNMPRI as a result of the Unauthorized Use. Such outstanding amounts must be paid.

13. Finally, SNMPRI demands adequate assurance of future performance once the purchaser is identified.

14. At this juncture, the specific intellectual property and contracts that the Debtors propose to include in the sale have not been disclosed. SNMPRI reserves all rights to object to the sale and the transfer, assumption, assignment or rejection of any agreements affecting SNMPRI and the intellectual property of SNMPRI and SNMPRI's suppliers.

15. SNMPRI reserves all rights to supplement or amend the objections raised herein and to seek discovery regarding sale issues, including, but not limited to, cure amounts, and the Debtors' rights and abilities to assume and assign the License Agreement.

WHEREFORE, SNMPRI objects to the Sale Motion and reserves all rights.

Dated: September 22, 2010
Wilmington, Delaware

CIARDI CIARDI & ASTIN

_____
Daniel K. Astin (No. 4068)
John D. McLaughlin, Jr. (No. 4123)
Joseph J. McMahon, Jr. (No. 4819)
Carl D. Neff (No. 4895)
919 N. Market Street, Suite 700

Wilmington, Delaware 19801
(302) 658-1100 telephone
(302) 658-1300 facsimile
dastin@ciardilaw.com
jmclaughlin@ciardilaw.com
jmcmahon@ciardilaw.com
cneff@ciardilaw.com

*Attorneys for SNMP Research International, Inc.*