## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| | Case No. 09-10138 (KG) |
| Nortel Networks, Inc., et al., | Jointly Administered |
| Debtors. | **Re:  Docket Nos. 3832 and 3855** |

## OBJECTION OF QWEST COMMUNICATIONS COMPANY, LLC TO (I) NOTICE OF DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN CERTAIN CONTRACTS AND (II) RELATED MULTI-SERVICE SWITCH SALE

Qwest Communications Company, LLC f/k/a Qwest Communications Corporation ("Qwest"), through its undersigned counsel, files this Objection (the "Objection") to (i) Debtors' notice of its request for authority to assume and assign certain contracts (the "Assignment Notice") and (ii) the related multi-service switch sale.  In support of the Objection, Qwest states as follows:

## I.    FACTUAL BACKGROUND

1.    On January 14, 2009 (the "Petition Date"), Nortel Networks Corporation and their affiliates (collectively, the "Debtors"), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtors continue to operate their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    Prior to the Petition Date, Qwest and the Debtors entered into certain executory contracts (the "Contracts").  As a result of the Contracts, Qwest is a customer of the Debtors.

### A.    The Metro Ethernet Sale

4.    On October 7, 2009, the Debtors filed a motion to sell their "metro ethernet" division to Ciena.  (D.I. 1627) (the "MEN Sale").

5.     In connection with the MEN Sale, the Debtors provided Qwest with a notice of
assumption and assignment under Section 365 of the Bankruptcy Code (the "MEN Notice").
The MEN Notice provided for the assumption and assignment to Ciena of the Procurement
Agreement for Transmission Products No. QWT9901P between QCC and Nortel Networks Inc.,
effective January 1, 1999, as amended (the "Procurement Agreement").

6.     At closing, the Procurement Agreement was assumed and assigned to Ciena.

**B.     The Multi-Service Switch Sale**

7.     On October 7, 2009, the Debtors filed a motion for authority to sell their "multi-
service switch" business to PSP Holding LLC.  (D.I. 3832) (the "MSS Sale").

8.     On September 8, 2010, the Debtor served the Notice.  The Notice describes the
contract to be assumed and assigned to PSP Holding LLC (or other successful purchaser or its
designee) as follows:

> QWEST COMMUNICATIONS
> CORPORATION_PROCUREMENT
> AGMT QWT9901P_LOA TO
> EXTEND TERM_20080109
> Effective Date:
> 12/13/2007

9.     It appears that the reference to "LOA" is a Letter of Agreement and the reference
to "20080109" is meant to refer to January 9, 2008.  Accordingly, the reference may be to the
Letter Agreement to Extend the Term of Certain Qwest Nortel Agreements with Nortel
Networks Inc. Dated 1/9/2008.

10.    The reference to "AGMT QWT9901P" appears to be a reference to the
Procurement Agreement, which was already assigned to Ciena as part of the MEN Sale.

11.    This is curious as Nortel already assumed and assigned the Procurement
Agreement in its entirety to Ciena as part of the MEN sale.

- 2 -

## II.    SUMMARY OF OBJECTIONS

12.    Qwest objects to the Sale Motion and the Assignment Notice on the following

grounds:

        a.    The Procurement Agreement has already been assumed and assigned to

           Ciena in connection with the MEN Sale.

        b.    In addition, to the extent that the Procurement Agreement is assumable

           and assignable, the Debtor or successful purchaser in the MSS Sale must

           insure that there is no "gap" in liability for contractual obligations.

        c.    In fact, to be a true "assignment," the successful purchaser must assume

           all contractual obligations.

## III.    OBJECTIONS

### A.    THE PROCUREMENT AGREEMENT HAS ALREADY BEEN ASSUMED AND ASSIGNED.

13.    As indicated above, the Debtors have already assumed and assigned the

Procurement Agreement to Ciena in the MEN Sale.

14.    The Debtors cannot assign the same contract to different purchasers.  In fact,

having already assumed and assigned the Procurement Agreement, the Debtors have nothing left

to assume and assign in the MSS Sale.

**B.    THE DEBTORS AND PURCHASER MUST INSURE THAT THERE IS NO LIABILITY GAP UNDER THE CONTRACTS.  THE PURCHASER MUST ASSUME ALL CONTRACTUAL OBLIGATIONS.**

15.    The Bankruptcy Code generally authorizes a debtor, with bankruptcy court approval, to assume or assign an executory contract without the consent of the other party to the contract and without regard to contractual provisions prohibiting such assignment.  Specifically, Section 365(a) provides, in relevant part, that "the trustee, subject to the court's approval, may assume or reject any executory contract."  11 U.S.C. § 365(a).

16.    Section 365(b)(1)(A) and (B) of the Bankruptcy Code requires a debtor to "cure" defaults and "compensate" the non-debtor party to an executory contract as a condition to the debtor in possession's assumption of an executory contract.  See 11 U.S.C. § 365(b)(1)(A)-(B).

17.    When a debtor assumes an executory contract or an unexpired lease it becomes a binding obligation of the debtor's bankruptcy estate.  The debtor must cure defaults and provide adequate assurance of future performance in order to assume an executory contract or unexpired lease.  See 11 U.S.C. § 365(b)(1)(A)-(C).  If a debtor assumes a contract, it must do so *cum onere*, with all the burdens as well as the benefits.  See Cinicola v. Scharffenberger, 248 F.3d 110, 119-120 (3d Cir. 2001); American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 78 (3d Cir. 1999); see also In re Italian Cook Oil Corp., 190 F.2d 994, 996-97 (3d Cir. 1951).  A debtor may not "cherry pick" the benefits and shirk the obligations under the contract.  See Pieco, Inc. v. Atlantic Computer Sys., Inc. (In re Atlantic Computer Sys., Inc.), 173 B.R. 844, 849 (S.D.N.Y. 1994); In re Leslie Fay Cos., Inc., 166 B.R. 802, 808 (S.D.N.Y. 1994) ("An executory contract cannot be assumed in part and rejected in part").

18.    Section 365 authorizes a debtor to assign a "contract," not part of a "contract."  See 11 U.S.C. § 365(f)(2); see also American Flint Glass Workers Union v. Anchor Resolution

- 4 -

Corp., 197 F.3d 76, 80 (3d Cir. 1999) (noting that Section 365(k) provides for the assignment "*of a contract*") (emphasis in original).

19.    An "assignment" of a contract "involves a commitment by the assignee to perform **all obligations** under the contract, as well as to acquire all rights created by the contract." Id. at 81 (emphasis added); see also In re AHERF, 383 F.3d 169, 175, 176-77 (3rd Cir. 2004) (discussing American Flint Glass).

20.    Thus, the Purchaser must be liable for all obligations under an assumed contract that are not defaults already cured as part of the debtor's assumption of the contract. Otherwise, the Debtor is not "assigning" the contract.[1]

21.    This Court should deny the purported "assignment" of the Procurement Agreement unless the successful purchaser assumes **all** obligations under the contract, regardless of when those obligations accrue.

### C.    OBJECTION AND RESERVATION OF RIGHTS REGARDING ADEQUATE ASSURANCE

22.    Section 365(f)(2) of the Bankruptcy Code provides that a debtor in possession may assign an executory contract only if the trustee assumes the contract and the assignee provides adequate assurance of future performance. See 11 U.S.C. § 365(f)(2).

23.    Qwest objects to the present lack of any evidence of adequate assurance of future performance.

---

[1] Of course, the Debtor would not be entitled to the release provided by Section 365(k) absent an "assignment" of a contract. See American Flint Glass, 197 F.3d at 80-81; AHERF, 383 F.3d at 175, 176-77.

24.     Specifically, the purchaser may be PSP Holding LLC or "its designee."  Neither PSP Holding LLC nor its "designee" has assets sufficient to demonstrate adequate assurance of future performance.

WHEREFORE QCC respectfully request that this Court enter an Order (i) sustaining the Objection, and (ii) granting such further relief to QCC as is appropriate.

Dated:  September 23, 2010                    Respectfully submitted,
        Wilmington, Delaware
                                              REED SMITH LLP

                                       By:    /s/ Kurt F. Gwynne
                                              Kurt F. Gwynne (No. 3951)
                                              1201 N. Market Street, Suite 1500
                                              Wilmington, DE 19801
                                              Telephone: (302) 778-7500
                                              Facsimile: (302) 778-7575
                                              Email:  kgwynne@reedsmith.com


                                              Counsel to Qwest Communications Company, LLC