IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------X
                                                            :   Chapter 11
In re                                                       :
                                                            :   Case No. 09-10138 (KG)
Nortel Networks Inc., *et al.*,                             :
                                                            :   Jointly Administered
                                                            :
                          Debtors.                          :
                                                            :
                                                            :
------------------------------------------------------------X

**LIMITED OBJECTION OF THE AFFILIATES OF VERIZON COMMUNICATIONS INC. TO DEBTORS' REQUEST FOR AUTHORITY TO ASSUME AND ASSIGN CERTAIN CONTRACTS IN CONNECTION WITH THE SALE OF THEIR MULTI-SERVICE SWITCH BUSINESS**

The affiliates of Verizon Communications Inc. (collectively, "Verizon")[1] hereby file this *Limited Objection* to the *Debtors' Requests for Authority to Assume and Assign Certain Contracts with Verizon in Connection with the Sale of their Multi-Service Switch Business*. In support of its objection, Verizon respectfully states as follows:

## I. BACKGROUND FACTS

**A. The Proposed MSS Asset Sale**

1. In their pending Motion For Orders Authorizing And Approving The Sale Of Certain Assets Of Debtors' Multi-Service Switch (Formerly Known As "Passport") Business Free And Clear Of All Liens, Claims And Encumbrances And The Assumption And Assignment Of Certain Executory Contracts (the "Sale Motion"), the Debtors seek the Court's approval of a transaction by which they propose to sell their Multi-Service Switch ("MSS") line of business

---

[1] The definition of Verizon includes, without limitation, all wholly-owned subsidiaries of Verizon Communications Inc. (including, without limitation, Verizon Corporate Services Group Inc., Verizon Services Corp., Verizon Network Integration Corp., Verizon Business Network Services Inc., Verizon Select Services Inc., MCI Communications Services, Inc. d/b/a Verizon Business Services and the local operating telephone company subsidiaries of Verizon Communications Inc.) and Cellco Partnership d/b/a Verizon Wireless.

{85165|PLDG|10119956.DOC}2882191v1

and related assets to a third-party purchaser. Although a "stalking horse" bidder for the MSS business, PSP Holding LLC ("PSP"), has been identified, the auction of the Debtors' MSS assets is not scheduled to occur until September 24, 2010, and thus the identity of the purchaser that ultimately will be proposed by the Debtors (the "Purchaser") is not yet known.

      **B.**      **The Applicable Executory Contracts With Verizon**

      2.      Verizon has previously purchased certain products in the Debtors' MSS portfolio, and continues to obtain repair, maintenance and support services from the Debtors with respect to those MSS products under three (3) executory contracts between Verizon and the Debtors (collectively the "Verizon MSS Contracts"). Those contracts are:

      (a)      Amendment No. 12 to the General Product Purchase Agreement for Softswitch and TDM Products and Services No. C0404520 with certain wholly-owned subsidiaries of Verizon Communications Inc. (the "GPPA");

      (b)      Amendment No. 29 to the Global Master Procurement Agreement with MCI Communications Services, Inc. d/b/a Verizon Business Services (the "GMPA"); and

      (c)      General Purchase Agreement No. 710-30912-2006 with Cellco Partnership d/b/a Verizon Wireless (the "Wireless GPA").

      3.      Verizon uses the Debtors' MSS products and services in Verizon's own telecommunications network.

      4.      Pursuant to the Verizon MSS Contracts, the Debtors are obligated to fulfill and perform various ongoing obligations to Verizon with respect to the MSS products. Chief among these is the Debtors' fundamental obligation to repair, service and maintain the MSS products deployed in Verizon's network, as and when the need for such repairs, service and maintenance arises. In addition, and among other things, the Debtors indemnify Verizon against any damages

or losses caused by the MSS products purchased, serviced and/or maintained thereunder, or as a result of claims for infringement of patents, copyrights or other intellectual property rights asserted by third parties against Verizon in connection with those products. These indemnification provisions are essential to the Verizon MSS Contracts because Verizon may be exposed to liability should a claim be asserted against Verizon by a third-party on account of the Debtors' equipment. (The foregoing obligations, among other such ongoing obligations in the Verizon MSS Contracts, are referred to hereafter and collectively as the "Ongoing MSS Obligations.")

### C. The Assumption Requests

5. On or about September 14, 2010, the Debtors served a Notice of Debtors' Request For Authority To Assume And Assign Certain Contracts ("Assumption Request") on Verizon in connection with the proposed MSS sale. In the Assumption Request, the Debtors seek authority to assume and assign two (2) of the Verizon Contracts to the Purchaser – the GPPA and the GMPA – pursuant to Section 365 of the Bankruptcy Code.

6. From discussions with the Debtors' counsel, Verizon understands that the Debtors also intend to assume and assign the third Verizon Contract, the Wireless GPA, to the Purchaser of the MSS assets. As of the filing of this Limited Objection, however, Verizon has not been served with a request for authority to assume and assign the Wireless GPA.

7. Reference to the Sale Motion and the accompanying Asset Sale Agreement ("ASA") further indicates that the Purchaser is not proposing to assume all liabilities under the executory contracts assumed and assigned to it by the Debtors, but rather, is only assuming the "Assumed Liabilities." The "Assumed Liabilities" include, among other things, obligations in

connection with the performance of any of the Assigned Contracts,[2] but only to the extent that such obligations arise after the Closing Date. (ASA at ¶ 2.1.3(b).)

8.  The "Assumed Liabilities" do not expressly include any indemnification obligations, and under the most generous reading, do not appear to include any obligations, of any sort, that may be deemed to have arisen before the Closing Date. In fact, any and all pre-Closing Date obligations, including obligations under Assigned Contracts, appear to be among the "Excluded Liabilities" that the Purchaser is expressly declining to assume in connection with the MSS acquisition. (Id. at ¶ 2.1.4(d) (excluding, among other things, "any Liability relating to events or conditions occurring or existing in connection with, or arising out of, the Business of the Sellers prior to the Closing Date, or the ownership, possession, use, operation or sale of other disposition prior to the Closing Date of the Assets . . . .").)

9.  Consistent with the Sale Motion and the ASA, the proposed order approving the Sale Motion (the "Proposed Order") provides that on the Closing Date, all of the Assigned Contracts and other MSS-related Assets "shall be transferred to the Purchaser free and clear of all Claims and Interests of any kind or nature whatsoever (other than . . . the Assumed Liabilities)." (Proposed Order at ¶ 8; see also id. at ¶¶ 7, 20-21.) Although the Purchaser is not assuming all the liabilities arising under the Assigned Contracts, the Proposed Order nonetheless provides that counterparties to those contracts shall be barred and enjoined from asserting any pre-Closing Date claims against the Debtors, specifically including claims for any defaults under the Assigned Contracts that purportedly arose or accrued prior to the Closing Date. (Id. at ¶ 11.)

---

[2] Capitalized terms not otherwise defined in this Limited Objection shall have the definitions assigned to them in the Sale Motion and/or the ASA.

**II.     VERIZON'S OBJECTION TO THE ASSUMPTION REQUEST**

10.     In general, Verizon has no objection to either the Sale Motion or the Debtors' assumption and assignment of any of the Verizon MSS Contracts to the Purchaser. Verizon does object, however, to one aspect of the Assumption Request, both individually and as it purports to operate together with provisions of the Sale Motion and the ASA.

A.     **The Assumption and Assignment Of Any Contract With Verizon Must Include Its Various Ongoing Obligations.**

11.     Verizon objects to the Assumption Request to the extent that Verizon's rights with respect to the Ongoing MSS Obligations are not assumed by the Purchaser along with all of the other provisions of any Assigned Contract. The ASA and the Sale Order can be read to preclude Verizon from looking to the Purchaser to perform the Ongoing MSS Obligations if such obligations are construed to have arisen prior to the Closing Date. This is potentially the case even if Verizon was not aware of the need for the obligation to be performed until after the Closing Date. For example, if Verizon does not become aware until post-Closing that an MSS product malfunctioned pre-Closing and is in need of service, or does not learn until post-Closing that a claim relating to an MSS product and subject to indemnification under one of the Verizon Contracts was asserted against it pre-Closing, then the Purchaser could contend that it is absolved, by the terms of the ASA and the Sale Order, from performing the corresponding obligations to Verizon under the Verizon Contracts.

12.     This is not permissible under Section 365. Rather, each of the Verizon MSS Contracts must be assumed and assigned in its entirety, without limiting Verizon's rights with respect to the Ongoing MSS Obligations or under other provisions that impose pre-Closing Date obligations. In addition, Verizon must be provided with adequate assurance of future performance that its bargained-for rights with respect to the Ongoing MSS Obligations will be

protected.

13. It is black letter law that a debtor assumes a contract under Section 365 of the Bankruptcy Code *cum onere* - with all of its benefits and burdens. NLRB v. Bildisco & Bildisco, 465 U.S. 513, 531 (1984); In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007). As stated by the Third Circuit,

> Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder ... 'The [debtor] . . . may not blow hot and cold. If he accepts the benefits he must adopt the burdens. He cannot accept one and reject the other'.
> . . . The *cum onere* rule 'prevents the [bankruptcy] estate from avoiding obligations that are an integral part of an assumed agreement.'

Fleming, 499 F.3d at 308 (citations omitted). Similarly, a debtor seeking to assign a contract under Section 365 must also assign the contract in whole with all the benefits and burdens. Id. at 308 ("an assignment is intended to change only who performs an obligation, not the obligation to be performed") (*citing* Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 60 (3d Cir. 2001); *see also* In re Morande Enters., Inc., 335 B.R. 188, 192 (Bankr. M.D. Fla. 2005) ("The Debtor cannot assume and assign the contract in part, under either § 365 or the Florida Dealer Law, but must do so in whole, including the Location Provision"); In re Cajun Elec. Power Co-Op., Inc., 230 B.R. 693, 710 (Bankr. M.D. La. 1999) ("The rule that an executory contract must be assumed or assigned *in toto* has been recognized on several occasions by the Fifth Circuit .... an executory contract must be assumed or assigned in its entirety...").

14. Among the reasons that a contract must be assigned in its entirety under Section 365 is that the debtor will be relieved of its obligations under the contract pursuant to Section 365(k). Therefore, the assignee must assume all of the obligations so that the counterparty's rights are protected. The Third Circuit addressed the issue of whether a party can make a partial assignment under Section 365 in American Flint Glass Workers Union v. Anchor Resolution

Corp., 197 F.3d 76 (3d Cir. 1999). In American Flint, the debtor objected to proofs of claim filed under collective bargaining agreements that had been assumed and assigned to the purchaser of the debtor's assets. The bankruptcy court found that the debtor was relieved of liability under Section 365(k), and therefore, the claims could not be asserted against the debtor. The Third Circuit reversed, holding that an assignment under Section 365 did not take place because the contracts at issue were not assigned with all of the benefits and burdens:

> In the bankruptcy context, however, Code § 365(k) changes the common law rule by effecting a novation by operation of law whether or not the obligee consents to the substitution.... But consistent with the basic concept of a contract's assignment, under which every contractual assignee takes the entire bundle of rights and obligations under the contract, such a forced novation is dependent on just such a total undertaking by the assignee. Code § 365(k) . . . provides:
>
>> Assignment by the trustee to an entity *of a contract* or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.
>
> Where Congress uses legal terms that have "accumulated settled meaning" under common law, it must be presumed (unless of course the statute dictates otherwise) that Congress meant to employ that established meaning.... Hence we construe the terms in Code § 365(k) to incorporate the general common law of assignments. In particular, we will follow the dominant consensus of common law jurisdictions, rather than the law of any particular jurisdiction....
>
> That dominant consensus conforms to the clear meaning of the language involved: that an assignment of a contract as such involves a commitment by the assignee to perform all obligations under the contract, as well as to acquire all rights created by the contract.

Id. at 80-81 (finding the debtor was still liable because the contract was not assigned in its entirety) (emphasis in original).

15. In this case, the Debtors are seeking to assume and assign the Assigned Contracts under Section 365 and are seeking to be relieved of all liability after such assignment pursuant to Section 365(k). However, the Purchaser is not taking the Assigned Contracts with all of their

benefits and burdens, but rather, is seeking to limit its liabilities to the "Assumed Liabilities," *i.e.*, only liabilities related to post-Closing Date performance. As the Third Circuit has made clear, this is not permissible under Section 365 of the Bankruptcy Code. In an analogous case, In re 1945 Route 23 Assocs., Inc., 2008 WL 2386296 (Bankr. D. N.J. 2008), the assignee of a lease argued that it was not responsible for pre-closing costs because, similar to the ASA in this case, the assignee was only responsible for post-closing costs under the asset purchase agreement. The court rejected the argument, reasoning:

> The court is similarly not persuaded by Autobacs's construction of the pertinent provisions of the APA. Autobacs concedes that the Tozzo lease is an Assumed Agreement but then contends that the 2007 Corrected Cost Statement is not an Assumed Liability because much of the amount due under that cost statement accrued prior to the sale closing date (May 2, 2007). It contends that under the APA's definition of Assumed Liabilities, the obligation must both arise and relate to a period after the closing date. Further, it concludes that the following sentence in the definition clearly expresses Autobacs's intent not to assume liabilities like those contained in the 2007 Corrected Cost Statement: "For avoidance of doubt, Assumed Liabilities excludes any Liability attributable to any act, occurrence or omission which occurred prior to Closing except as expressly assumed hereunder." Autobacs concludes from this that because it did not expressly assume the obligation to pay the cost statement, the obligation is expressly excluded. The flaw in Autobacs's argument is that under the APA Autobacs expressly assumed the Tozzo lease, and thereby expressly assumed all of its provisions, including the obligation to satisfy the payment of the 2007 Corrected Cost Statement. When R & S, and subsequently Autobacs, assumed the Tozzo lease, they assumed it in its entirety, accepting the burdens as well as the benefits. See In re Fleming Cos., Inc., 499 F.3d 300, 308 (3d Cir. 2007). Unquestionably then, the assumed obligation to pay the Corrected 2007 Cost Statement arises and relates to the period after the closing date because that is when the obligation came due.

Id., 2008 WL 2386296 at *7.

16. Here, under the Verizon MSS Contracts, Verizon has rights in connection with the various Ongoing MSS Obligations. Pursuant to Section 365 of the Bankruptcy Code, the Purchaser must take any assignment of the Verizon MSS Contracts subject to those rights. As it currently stands, the ASA would appear to bar Verizon from asserting its bargained-for rights

against the Purchaser if such rights are construed to have arisen before the Closing Date. This is not permissible, and accordingly, the Assumption Request should not be approved unless the Purchaser also agrees to fully and unconditionally assume the Ongoing MSS Obligations contained in any Assigned Contract with Verizon.

17. Absent inclusion of the Ongoing MSS Obligations in any assumption and assignment to the Purchaser, the Debtors also have failed to provide adequate assurance of future performance under the Assigned Contracts.

18. To effectuate an assignment under the Bankruptcy Code, the Debtors must demonstrate adequate assurance of future performance. Adequate assurance of future performance is an element of the assumption and assignment process which must be met in addition to the curing of any defaults under an executory contract. 11 U.S.C. § 365(f)(2). Even in the absence of a default under the contract, adequate assurance of future performance must be afforded before the trustee can assign an executory contract. *See* In re E-Z Serve Convenience Stores, Inc., 289 B.R. 45, 52 (Bankr. M.D.N.C. 2003) (refusing to excise a right of first refusal from a lease agreement reasoning that, among other things, absent such provision the non-debtor party "will not receive the full benefit of its bargain and the Trustee cannot give adequate assurance of future performance"). Although not defined in the Bankruptcy Code, the phrase "adequate assurance of future performance," adopted from Section 2-609(1) of the Uniform Commercial Code, is intended to be given a "practical, pragmatic construction based upon the facts and circumstances of each case." Cinicola v. Scharffenberger, 248 F.3d 110, 120 (3d Cir. Pa. 2001) (citations omitted).

19. As discussed, Section 365(k) of the Bankruptcy Code relieves the trustee and the estate from any liability under a contract occurring after assignment. In re Washington Capital

Aviation & Leasing, 156 B.R. 167, 175 & n.3 (Bankr. E.D. Va. 1993) (Section 365(k) alters the common law rule that the original obligor remains ultimately liable after assignment until discharged by performance, consent or otherwise.); *see also* In re Rickel Home Centers, Inc., 209 F.3d 291, 299 (3d Cir. 2000) (in the context of shopping center leases, the court held that adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"), *cert. denied*, 531 U.S. 873 (2000).

20. Here, and just to cite one of the Ongoing MSS Obligations as an example, Verizon's indemnity claims based on events that occurred prior to the Closing Date could arise months or years thereafter. Assuming *arguendo* that these claims are considered pre-Closing claims, the ASA would appear to prevent Verizon from asserting the claims against the Purchaser for a variety of reasons. This would leave Verizon without its bargained-for rights, resulting in the failure to provide adequate assurance of future performance.

21. In short, the Debtors must provide adequate assurance that Verizon's bargained-for rights will be protected, which means that the Assigned Contracts, including all of the Ongoing MSS Obligations, must be assumed in their entirety and assigned in a seamless fashion.

22. Accordingly, Verizon further requests that the Court condition any approval of the Assumption Request on a requirement that all of the Debtors' obligations under any Assigned Contract with Verizon, including the Ongoing MSS Obligations, be assumed and undertaken by the Purchaser as well, without being limited to the post-Closing Date period.

### B. Request For Adequate Assurance Of Future Performance

23. Verizon also insists that any approval of the Assumption Request be conditioned upon the provision of adequate assurance of future performance to Verizon by the Purchaser as

to any and all other obligations under any Assigned Contract with Verizon. Pursuant to the applicable procedures order, Verizon hereby requests that it be provided with adequate assurance information as to PSP and any other bidders at the September 24, 2010 auction.

C. **Reservation Of Further Rights**

24. In addition to the foregoing, Verizon hereby reserves the pre-petition setoff rights that it has asserted and expressly reserved at every step from the inception of this case, and that are specifically at issue in the pending Motion of the Affiliates of Verizon Communications Inc. For (A) Modification of the Automatic Stay; (B) Determination of Verizon's Pre-Petition Rights Of Setoff; and (C) An Order Requiring Verizon's Setoff Rights To Be Effectuated And Satisfied By Debtor Nortel Networks, Inc. filed by Verizon on or about September 9, 2010 and currently scheduled to be heard on November 23, 2010, notwithstanding a completed sale of the Debtors' MSS assets. This Court's previous orders approving sales of the Debtors' assets involving contracts with Verizon have included a provision expressly reserving Verizon's setoff rights. (*See* Order approving the sale of the Debtors' CDMA and LTE assets [Docket No. 1205] at ¶ 32; Order approving the sale of the Debtors' Enterprise assets, [Docket No. 1514] at ¶ 30; Order approving the sale of the Debtors' MEN assets, [Docket No. 2070] at ¶ 27; Order approving the sale of the Debtors' CVAS assets, [Docket No. 2632] at ¶ 46.) Verizon insists, at a minimum, that any order entered on the present Sale Motion include the same such provision.

**WHEREFORE**, Verizon respectfully requests that the Court:

(a) sustain this Limited Objection;

(b) condition approval of the Assumption Request on the satisfaction of all of Verizon's objections and concerns identified above, and specifically by requiring each of the

Verizon MSS Agreements or any other Assigned Contract with Verizon to be assumed and assigned in its entirety, by requiring the Purchaser to fully and unconditionally assume the Ongoing MSS Obligations and any other provisions contained in such Assigned Contracts; and

(c) afford Verizon such other and further relief as this Court may deem just and proper.

Dated: September 23, 2010                    Respectfully submitted,

ARNALL GOLDEN GREGORY LLP
Darryl S. Laddin
Frank N. White
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363
(404) 873-8500
dladdin@agg.com

-and-

SMITH, KATZENSTEIN & FURLOW LLP

/s/ Michael P. Migliore
Kathleen M. Miller, Esq. (Bar No. 2898)
Michael P. Migliore (Bar No. 4331)
800 Delaware Avenue, 10th Floor
P. O. Box 410
Wilmington, DE 19899
(302) 652-8405
kmiller@skfdelaware.com
mmigliore@skfdelaware.com

ATTORNEYS FOR VERIZON