**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>**NORTEL NETWORKS INC.,** *et al.*,<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No.:  09-10138 (KG)<br><br>Jointly Administered<br><br>Objection Deadline: September 23, 2010 at 4:00 p.m.<br>(extended by consent)<br>Hearing Date: September 30, 2010 at 11:00 a.m.<br><br>Related D.I.: 3832 |

**LIMITED OBJECTION OF SAP AMERICA, INC. AND SAP CANADA, INC.
TO DEBTORS' MOTION FOR AN ORDER APPROVING THE SALE
OF THEIR MULTI-SERVICE SWITCH BUSINESS**

SAP America, Inc. and SAP Canada, Inc. (together, "SAP"), by and through their undersigned counsel, object on a limited basis to the proposed sale of certain assets to PSP Holding LLC ("PSP") insofar as the sale contemplates (i) the assumption and assignment of any SAP executory contract, (ii) the provision of transitional services utilizing SAP intellectual property and (iii) the sublicensing or other transfer of its intellectual property, and respectfully states as follows:

**BACKGROUND**

*I. The Bankruptcy*

1.　　On or about January 14, 2009 (the "Petition Date"), Nortel Networks, Inc. ("Nortel") and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").  Since filing their petitions for relief, the Debtors have continued to operate their businesses and have maintained possession of their assets as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors' cases have been consolidated for administrative purposes only.

2. On or about August 27, 2010, the Debtors filed their *Motion For Orders (I)(A) Authorizing Debtors Entry Into The Stalking Horse Asset Sale Agreement, (B) Authorizing And Approving The Bidding Procedures And Bid Protections, (C) Approving The Notice Procedures And The Assumption And Assignment Procedures, (D) Approving A Side Agreement, (E) Authorizing The Filing Of Certain Documents Under Seal And (F) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of Debtors Multi-Service Switch (Formerly Known As Passport) Business Free And Clear Of All Liens, Claims And Encumbrances And (B) The Assumption And Assignment Of Certain Executory Contracts* [D.I. 3832] (the "Sale Motion").

3. Pursuant to the Sale Motion, Debtors seek, *inter alia*, to (i) sell certain assets to PSP, (ii) assume and assign certain executory contracts to PSP, (iii) provide transitional services to PSP and its affiliates and (iv) sublicense certain intellectual property to PSP.

4. With respect to the assumption and assignment of executory contracts, Debtors intend to remit individual cure notices to contract counterparties and to file a notice of assumed and assigned contracts under seal. *Sale Motion* ¶¶ 36-43.

5. With respect to the provision of transitional services, Debtors "and their affiliates will agree to provide the Stalking Horse Purchaser and its affiliates certain information technology, business transition and related services . . . through [to] June 30, 2011, subject to possible extensions . . ." *Sale Motion*, 12.

6. Debtors have not filed a copy of the transitional services agreement ("TSA") with the Court.

7. With respect to the intellectual property license agreement ("IPLA"), Debtors intend to grant PSP a perpetual, non-exclusive license to "certain [unspecified] intellectual property." *Sale Motion*, 13.

**II. The Software License Agreement**

8. On February 28, 1994, Nortel f/k/a Wellfleet Communications, Inc. and SAP entered into that certain SAP America, Inc. End-User Software License Agreement. That agreement and any related agreements, schedules, exhibits, appendices and amendments thereto are referred to herein as the "<u>Software License Agreement</u>."

9. On or about May 30, 1999, SAP America, Inc. assigned all its rights, title and interest in and under the Software License Agreement to SAP Canada, Inc.

10. Pursuant to the terms and conditions of the License Agreement, SAP granted Nortel a non-exclusive license to use the Software (all capitalized terms not herein defined are used as defined in the Software License Agreement) upon terms and conditions set forth in the Software License Agreement.

11. No rights of ownership in the Software were transferred to Nortel or any of its affiliates under the Software License Agreement. SAP retains ownership of the Software. *See In re Patient Education Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997).

12. The Software licensed to Nortel under the terms of the Software License Agreement is copyrighted pursuant to the copyright laws of the United States, 17 U.S.C. §§ 101 <u>et</u> <u>seq</u>.

13. Federal copyright law is designed to protect the limited monopoly of copyright owners and grants the owner of the copyright the exclusive right to exploit the copyrighted work and to restrict the unauthorized use of the copyright. *See In re Patient Education Media, Inc.*, 210 B.R. at 242.

14. Pursuant to the Software License Agreement, transitional services may be provided only under certain circumstances to divested business units.

15. Pursuant to the Software License Agreement, "Licensee may not, without SAP's prior written consent, assign, delegate, *sublicense*, pledge, or otherwise transfer this Agreement, or any rights or obligations under this Agreement, *to any party* . . ." *Software License Agreement*, § 12.1 (emphasis added).

## <u>RELIEF REQUESTSED</u>

3

16. SAP objects to the Sale Motion to the extent it provides for the (i) assumption and assignment of any of SAP executory contracts,[1] (ii) provision of transitional services in violation of the Software License Agreement and (iii) sublicensing or other transfer of any SAP intellectual property.

### OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE SOFTWARE LICENSE AGREEMENT

17. SAP objects to the Sale Motion to the extent its seeks to assume and assign any SAP executory contract to PSP or other successful bidder.

18. Pursuant to the Sale Motion, the Debtors seek to assume various contracts, including, perhaps, the Software License Agreement, and assign them to PSP.

19. Pursuant to § 365(c)(1) of the Bankruptcy Code, a debtor in possession may not assume or assign an executory contract if applicable law excuses the non-debtor party from accepting performance from someone other than the debtor in possession and the non-debtor party does not consent to such assumption or assignment. 11 U.S.C. § 365; *see also In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1998).

20. A non-exclusive license of copyright rights is not assumable by a debtor in possession because it is not assignable under federal copyright law without permission of the copyright holder. *See In re Valley Media, Inc.*, 279 B.R. at 135-36; *In re Golden Books*, 269 B.R. at 309; *In re Sunterra Corp.*, 361 F.3d 257, 262 (4th Cir. 2004); *In re Catapult*, 165 F.3d. 747, 750 (9th Cir. 1999).

21. To the extent that Debtors seek to assume and assign its contracts, SAP has not consented to the assumption and assignment of the Software License Agreement or any other SAP contracts as required by 11 U.S.C. § 365(c)(1), it objects to the Debtors' assumption and assignment of the Software License Agreement or any other SAP contracts, and it reserves all rights in that regard.

### OBJECTION TO THE PROVISION OF TRANSITIONAL SERVICES

---

[1] It is the understanding of SAP that no assumption and assignment is contemplated as SAP has not received any assumption notices. However, out of an abundance of caution, SAP objects to any assumption and assignment of any of its executory contracts.

4

### IN VIOLATION OF THE SOFTWARE LICENSE AGREEMENT

22. SAP objects to the Sale Motion to the extent the TSA seeks to provide transitional services in contravention of the Software License Agreement.

23. SAP has not been afforded an opportunity to review the TSA (or a redacted copy thereof) in order verify that the proposed transitional services do not violate the Software License Agreement. Therefore, out of abundance of caution, SAP objects to the Sale Motion insofar as the transitional services slated for provision to PSP and its affiliates are prohibited under the Software License Agreement.

### OBJECTION TO THE SUBLICENSING OF ANY SAP INTELLECTUAL PROPERTY

**I. SAP Proprietary Information Cannot Be Sublicensed or Otherwise Transferred.**

24. Pursuant to the Sale Motion, the Debtors seek to sublicense certain intellectual property, including, potentially, SAP intellectual property to PSP.

25. SAP objects to the Sale Motion to the extent it attempts to sublicense any SAP intellectual property.

26. The IPLA provides a sublicense grant to PSP of unspecified intellectual property.

27. Pursuant to the Software License Agreement, Debtors are prohibited from sublicensing or otherwise transferring the SAP Proprietary Information.

28. Therefore, SAP objects to Sale Motion insofar as it purports to grant to PSP a sublicense of any SAP intellectual property.

**II. Any Sublicensing or Other Transfer of any SAP Intellectual Property Would Be In Violation of the Software License Agreement and Subject the Debtors to Damages for Copyright Infringement.**

29. Under 17 U.S.C. § 501, "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer." *Id.*

30. Under 17 U.S.C. § 106, "the owner of copyright under this title has the exclusive rights to . . . distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . ." *Id.*

5

31. Under 17 U.S.C. § 504, "an infringer of copyright is liable for either . . . (1) actual . . . or (2) statutory damages." *Id.*

32. Any sublicense grant of any SAP intellectual property to PSP could be in direct contravention of the Software License Agreement, for which the Debtors would be liable to SAP for damages. *See, e.g., MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769 (3d Cir. 1991) ("Since a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee, the licensor can still bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license.").

**WHEREFORE,** SAP America, Inc. and SAP Canada, Inc. respectfully requests that this Court deny the Sale Motion to the extent that it seeks to authorize (i) the assumption and assignment of any SAP executory contract, (ii) the provision of transitional services which include SAP intellectual property and (iii) the sublicensing or other transfer of any SAP intellectual property arising under the Software License Agreement and grant such other relief as it may deem appropriate.

Dated: September 23, 2010

**BROWN & CONNERY LLP**

/s/ Donald K. Ludman_____
Donald K. Ludman (ID No. 4015)
6 North Broad Street
Woodbury, NJ 08096
(856) 812-8900
(856) 853-9933 FAX
dludman@brownconnery.com

*Attorneys for SAP America, Inc. and SAP Canada, Inc.*