## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X

*In re*                                          :    Chapter 11

Nortel Networks Inc., *et al.*,[1]               :    Case No. 09-10138 (KG)

            Debtors.               :    Jointly Administered

 

                                    :    **Hearing date: October 14, 2010 at 10:00 a.m. (ET)**
                                    :    **Objections due: October 7, 2010 at 4:00 p.m. (ET)**

-------------------------------------------------------X

## DEBTORS' MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ENTRY OF AN ORDER APPROVING THE STIPULATION RESOLVING CLAIM NO. 4643 FILED BY ERNEST DEMEL

Nortel Networks Inc. ("NNI") and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors"), hereby move this Court (the "Motion"), for the entry of an order substantially in the form attached hereto as **Exhibit A**, pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Debtors' entry into and approving a stipulation (the "Stipulation") with Ernest Demel ("Claimant"), attached hereto as **Exhibit B**, which reduces and allows the claim set forth in Claimant's proof of claim against NNI; and (ii) granting them such other and further relief as the Court deems just and proper.  In support of this Motion, the Debtors respectfully represent as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

**Jurisdiction**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are section 105(a) of the

Bankruptcy Code and Bankruptcy Rule 9019.

**Background**

**A.     Procedural History**

3.      On January 14, 2009 (the "Petition Date"), the Debtors, other than NN CALA

(defined below), filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4.      The Debtors continue to operate their businesses and manage their properties as

debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On January 15, 2009, this Court entered an order of joint administration pursuant

to Bankruptcy Rule 1015(b), which provided for the joint administration of these cases and for

consolidation for procedural purposes only [D.I. 36].

6.      Also on the Petition Date, the Debtors' ultimate corporate parent Nortel Networks

Corporation ("NNC"), NNI's direct corporate parent, Nortel Networks Limited ("NNL" and,

together with NNC and their affiliates, including the Debtors, "Nortel"), and certain of their

Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario

Superior Court of Justice (the "Canadian Court") under the Companies' Creditors Arrangement

Act (Canada) (the "CCAA"), seeking relief from their creditors (collectively, the "Canadian

---

[2]      The Canadian Debtors include the following entities: NNC, NNL, Nortel Networks Technology
Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

Proceedings"). The Canadian Debtors continue to manage their properties and operate their businesses under the supervision of the Canadian Court.

7.     On January 14, 2009, the Canadian Court entered an order recognizing these chapter 11 proceedings as a foreign proceeding under section 18.6 of the CCAA. On February 27, 2009, based on a petition filed by Ernst & Young Inc., as court-appointed monitor in the Canadian Proceedings and as foreign representative for the Canadian Debtors (the "Monitor"), this Court entered an order recognizing the Canadian Proceedings as foreign main proceedings under chapter 15 of the Bankruptcy Code.

8.     On January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP (collectively, the "Joint Administrators"). On May 28, 2009, at the request of the Joint Administrators, the Commercial Court of Versailles, France (the "French Court") (Docket No. 2009P00492) ordered the commencement of secondary proceedings in respect of Nortel Networks S.A. ("NNSA"). NNSA was authorized to continue to operate as a going concern until completion of the sale of the GSM/GSM-R business. While NNSA's operations are now terminated, the French Proceedings are continuing and, in accordance with the European Union's Council Regulation (EC) No. 1346/2000 on Insolvency Proceedings, the English law proceedings (the "English Proceedings") remain the main proceedings in respect of NNSA. On June 26, 2009, this Court entered an order recognizing the

---

[3]     The EMEA Debtors include the following entities: Nortel Networks UK Limited, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

English Proceedings of Nortel Networks UK Limited ("NNUK") as foreign main proceedings under chapter 15 of the Bankruptcy Code.[4]

9.    On January 26, 2009, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee") pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I.s 141, 142]. An ad hoc group of bondholders holding claims against certain of the Debtors and certain of the Canadian Debtors has also been organized (the "Bondholder Group"). No trustee or examiner has been appointed in the Debtors' cases.

10.    On July 14, 2009 (the "CALA Petition Date"), Nortel Networks (CALA) Inc. ("NN CALA"), an affiliate of NNI and itself one of the Debtors, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On July 17, 2009, this Court entered orders approving the joint administration and consolidation of NN CALA's chapter 11 case with the other Debtors' chapter 11 cases for procedural purposes [D.I. 1098], and applying to NN CALA certain previously entered orders in the other Debtors' chapter 11 cases [D.I. 1099]. From time to time, other Nortel affiliates have sought and may seek relief through the commencement of creditor protection or other insolvency or dissolution proceedings around the world.

**B.    Debtors' Corporate Structure and Business**

11.    Prior to its significant business divestitures, Nortel was a global supplier of end-to-end networking products and solutions serving both service providers and enterprise customers. Nortel's technologies spanned access and core networks and supported multimedia

---

[4]    Additionally, on January 18, 2009, certain Nortel affiliates, including Nortel Networks Israel (Sales and Marketing) Limited and Nortel Communications Holdings (1997) Limited (the "Israeli Companies"), filed an application with the Tel-Aviv-Jaffa District Court (the "Israeli Court"), pursuant to the Israeli Companies Law, 1999, and the regulations relating thereto for a stay of proceedings. On January 19, 2009, the Israeli Court appointed Yaron Har-Zvi and Avi D. Pelossof as joint administrators of the Israeli Companies under the Israeli Companies Law (the "Joint Israeli Administrators").

4

and business-critical applications. Nortel's networking solutions consisted of hardware, software and services. Nortel designed, developed, engineered, marketed, sold, licensed, installed, serviced and supported these networking solutions worldwide.

12.     Additional information regarding the Debtors' corporate structure and business and the events leading to the chapter 11 cases is set forth in the Declaration of John Doolittle in Support of First Day Motions and Applications [D.I. 3] (the "First Day Declaration").[5]

## C.     Case Milestones

13.     On June 19, 2009, Nortel announced that it was advancing in discussions with external parties to sell its businesses and that it would assess other restructuring alternatives for its businesses in the event it were unable to maximize value through sales. To date, Nortel has closed (i) the sale of certain portions of its Layer 4-7 data portfolio to Radware Ltd. [D.I. 539]; (ii) the sale of substantially all of its CDMA business and LTE Access assets to Telefonaktiebolaget LM Ericsson (publ) ("Ericsson") [D.I. 1205]; (iii) the sale of the assets of its Wireless Networks business associated with the development of Next Generation Packet Core network components to Hitachi Ltd. [D.I. 1760]; (iv) the sale of substantially all of the assets of the Enterprise Solutions business globally, including the shares of Nortel Government Solutions Incorporated and DiamondWare Ltd., to Avaya Inc. [D.I. 1514]; (v) the sale of substantially all the assets of its Optical Networking and Carrier Ethernet businesses associated with its Metro Ethernet Networks business unit to Ciena Corporation [D.I. 2070]; (vi) the sale of substantially all of its GSM/GSM-R business to Ericsson and Kapsch CarrierCom AG [D.I. 2065]; and (vii) the sale of certain assets of its Carrier Voice Over IP and Application Solutions business to GENBAND US LLC [D.I. 2632]. In addition, Nortel has obtained Court approval for the

---

[5]     Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

auction of certain assets of the Debtors' Multi-Service Switch (formerly known as "Passport") business [D.I. 3855]. Efforts continue to be made with respect to the realization of value from Nortel's remaining assets.

14.     On July 13, 2010, the Debtors filed the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3580]. On September 3, 2010, the Debtors filed the Proposed Disclosure Statement for the Joint Chapter 11 Plan of Nortel Networks Inc. and Its Affiliated Debtors [D.I. 3874].

**D.     Bar Date, Schedules and Notice**

15.     On April 20, 2009 and May 29, 2009, the Debtors (other than NN CALA) filed their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I.s 616-627, 801-810]. On September 11, 2009, the Debtors filed schedules and statements for NN CALA (the "NN CALA Schedules") [D.I. 1477, 1478]. On November 4, 2009, the Debtors (other than NN CALA) filed their Amended Schedules of Assets and Liabilities and Amended Statements of Financial Affairs (together with the NN CALA Schedules, referred to as the "Schedules") [D.I.s 1811-1825].

16.     On August 4, 2009, the Court entered an order (the "Bar Date Order") [D.I. 1280] establishing September 30, 2009 at 4:00 p.m. (Eastern Time) (the "General Bar Date") as the last date for all creditors holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against one or more of the Debtors (other than NN CALA) to file and serve a written proof of claim, subject to certain enumerated exceptions set forth in the Bar Date Order. Notice of the General Bar Date was provided by mail and publication in accordance with the procedures outlined in the Bar Date Order. On December 3, 2009, the Court entered an order

[D.I. 2059] establishing January 25, 2010 at 4:00 p.m. (Eastern Time) as the general claims bar date for all creditors holding a claim against NN CALA to file and serve written proofs of claim.

## Relief Requested

17.     By this Motion, the Debtors seek an order, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, (i) authorizing the Debtors' entry into the Stipulation and approving the Stipulation, and (ii) granting them such other and further relief as the Court deems just and proper.

## Facts Relevant to this Motion

18.     On January 10, 2007, Claimant, who alleges that he was employed by Northern Telecom, Inc. from August 17, 1981 through February 3, 1984, commenced an action in the United States District Court for the Southern District of New York (the "District Court Action") seeking to recover certain long-term disability and disability pension benefits on account of a purported total disability resulting from an automobile accident.  The named defendants in the Action are the Group Benefits Plan for Employees of Northern Telecom, Inc. dated as of January 1, 1982 (the "Benefits Plan"), the Northern Telecom, Inc. Retirement Plan for Employees dated as of January 1, 1984 (the "Retirement Plan," together with the Benefits Plan, the "Plans"), the Trustees and Administrators of the Plans, the Employee Benefits Committee of Northern Telecom, Inc., and The Prudential Insurance Company of America (all defendants in the District Court Action are collectively referred to as the "Benefits Defendants").  (See Complaint, attached as part of the Declaration of Ebunoluwa Taiwo in Support of Debtors' Objection to Proof of Claim No. 4643 Filed by Ernest Demel, dated May 25, 2010 (the "Taiwo Decl."), Ex. A [D.I. 3069].)  Neither NNI nor any other Debtor was named or subsequently added as a defendant in the District Court Action.

7

19.     On February 5, 2009, the Benefits Defendants filed a Suggestion of Bankruptcy, citing the Debtors' voluntary petitions for relief in these proceedings. In response, on February 17, 2009, the District Court transferred the Action to the suspense docket. (See Order dated February 17, 2009, attached as part of Taiwo Decl. Ex. A [D.I. 3069].)

20.     On April 22, 2009, Claimant moved the District Court to remove the Action from the suspense docket on the grounds that "[t]he entities named as Defendants in [the District Court] Action are not debtors in the Delaware bankruptcy proceeding." (See Demel Dist. Ct. Mem., Taiwo Decl. Ex. B [D.I. 3069].) While his motion to remove the District Court Action from the suspense docket was still pending, on September 25, 2009, Claimant filed a Proof of Claim against NNI in the amount of $1,924,557.70, which is listed on the Debtors' claim register as claim number 4643 (the "Proof of Claim" or the "Claim"). The Proof of Claim attaches the Complaint in the District Court Action and seeks to recover from NNI the same benefits that are the subject of the District Court Action. (See Taiwo Decl. Ex. A [D.I. 3069].)

21.     On January 8, 2010, the District Court granted Mr. Demel's motion to remove the District Court Action from the suspense docket on the grounds that, based on Mr. Demel's representations to the Court, the Action did not name a Debtor as a defendant, did not seek relief against a Debtor, and did not seek to recover property of the Debtors' estates. (See Dist. Ct. Decision, Taiwo Decl. Ex. C [D.I. 3069].) On May 25, 2010, the Debtors objected to the Proof of Claim on the basis of Claimant's representations to the District Court and the District Court's Order of January 8, 2010. The Debtors took the position that the Proof of Claim sought relief not from any of the Debtors, but instead from the non-Debtor Plans, which are separate legal entities from the Debtors. Accordingly, the Debtors argued, Claimant had no valid claim against the Debtors' estates [D.I. 3068]. On July 9, 2010, Claimant responded to the Debtors' objection,

arguing that Claimant held a valid claim against one or more of the Debtors as sponsor,

administrator, and funder of the Benefits Plan [D.I. 3501].

22.     Thereafter, in an effort to negotiate an expeditious resolution of the dispute

between the Debtors and Claimant, the parties entered into settlement discussions. As a result of

these negotiations, the Debtors, subject to this Court's approval, have reached a compromise

with Claimant reducing and allowing his Claim as reduced, as memorialized in the Stipulation.

The Debtors believe, in the exercise of their reasonable business judgment, that the resolution of

the Claim through the Stipulation is appropriate and in the best interests of both their estates and

their creditors.

23.     Pursuant to the Stipulation[6] and subject to this Court's approval, the Debtors have

agreed to reduce and allow the Claim in the amount of $125,000. The proposed allowed amount

of the Claim relates solely to Claimant's alleged entitlement to long-term disability benefits and

does not include any amount relating to Claimant's alleged entitlement to retirement benefits.

As noted in the Stipulation, the Retirement Plan was terminated pursuant to section 1342(c) of

title 29 of the United States Code ("Section 1342(c)"), as approved by order of this Court dated

August 31, 2009 [D.I. 1406], with the Pension Benefit Guaranty Corporation (the "PBGC")

appointed statutory trustee pursuant to Section 1342(c). Thus, the only claims Claimant has

against any Nortel entity are his claims to entitlement of disability benefits. His pension related

claims are now against the PBGC.

24.     In consideration of the partial allowance of his Claim, Claimant has agreed,

subject to this Court's approval, to release all claims against the Benefits Defendants other than

---

[6]     The summary of the Stipulation included herein is for informational purposes only. In the event of any
discrepancy between the description herein and the terms of the Stipulation, the terms of the Stipulation shall
govern.

the Claim as allowed.  This settlement does not affect his claims against the Retirement Plan,

which remain pending before the District Court, and are the responsibility of the PBGC.

Accordingly, pursuant to the Stipulation, the District Court Action shall be dismissed as to all

defendants except for the Retirement Plan.

### Basis for Relief

25.     The Debtors seek authorization to enter into the Stipulation under section 105 of

the Bankruptcy Code and Bankruptcy Rule 9019.  Section 105(a) of the Bankruptcy Code

provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the

provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 provides, in pertinent part,

that, "on motion by the trustee and after notice and a hearing, the court may approve a

compromise or settlement." Fed. R. Bankr. P. 9019.

26.     Citing this authority, the Third Circuit has emphasized that "[c]ompromises are

favored in bankruptcy." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)

(quoting Collier on Bankruptcy ¶ 9019.03[1] (15th ed. 1993)); see also In re World Health

Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (finding settlements "generally

favored in bankruptcy").  Additionally, the Third Circuit has recognized that "'(i)n administering

reorganization proceedings in an economical and practical manner it will often be wise to

arrange the settlement of claims as to which there are substantial and reasonable doubts.'" In re

Penn Cent. Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) (quoting Protective Comm. for

Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).  And

courts in this District have recognized that the approval of a proposed compromise and

settlement is committed to the sound discretion of the bankruptcy court. See, e.g., In re Coram

Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004).

27.     Before approving a settlement under Bankruptcy Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interest of the estate." In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997)).  Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 424-25.  The court need not be convinced that the settlement is the best possible compromise in order to approve it.  In re Coram Healthcare Corp., 315 B.R. at 330. Rather, the court's obligation is to "canvass the issues and see whether the settlement falls below the lowest point in a range of reasonableness." Travelers Cas. & Sur. Co. v. Future Claimants Representative, No. 07-2785, 2008 WL 821088, at *5 (D.N.J. Mar. 25, 2008) (citing Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000)); see also In re Coram Healthcare Corp., 315 B.R. at 330.

28.     The Third Circuit has set out four criteria for a bankruptcy court to consider when evaluating a settlement proposal (the "Martin Factors"):  "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." In re Martin, 91 F.3d at 393 (citing In re Neshaminy Office Bldg. Assocs., 62 B.R. 798, 803 (E.D. Pa. 1986)); see also Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002); In re eToys, Inc., 331 B.R. 176, 198 (Bankr. D. Del. 2005).

29.     The Debtors respectfully submit that the Martin Factors weigh heavily in favor of approving the Stipulation, and request that their entry into the Stipulation be authorized under Bankruptcy Rule 9019.  While the Debtors are prepared to litigate the Claim and believe that they would prevail in such litigation, litigation carries with it inherent uncertainties and there is

no assurance that such litigation would achieve a better result than the one set forth in the Stipulation. Indeed, this matter has been pending for some time, was unsuccessfully mediated, and has been extremely difficult to resolve over the years. The settlement reflected in the Stipulation eliminates a purported $1,924,557.70 claim against NNI's estate by allowing a claim against NNI in the lesser amount of $125,000. This resolution fairly balances the Debtors' likelihood of success on the merits of the Claim against their interest in avoiding the uncertainty of litigation.

30.    In addition, further litigation of the Claim would result in the estate's expenditure of considerable additional legal fees, particularly because Claimant has previously demonstrated a proclivity to litigate, and bears no legal fees of his own because he is represented by legal services counsel. In the absence of a settlement, then, the estate would be burdened with the time and costs of ongoing litigation, which would be disruptive of the estate's efforts to resolve the matters that are essential to the ultimate resolution of these cases.

31.    Finally, the interests of the creditors militate in favor of approval of the Stipulation. The Debtors believe that the interests of their creditors are served by the prompt and efficient resolution of the Claim and the avoidance of legal expenses that would be incurred if the Claim were to be further litigated. In light of the foregoing, the Debtors respectfully seek authorization to enter into the Stipulation and approval of the Stipulation.

## Notice

32.    Notice of the Motion has been given via first class mail to the (i) Claimant; (ii) U.S. Trustee; (iii) counsel to the Committee; (iv) counsel to the Bondholder Group; and (v) the general service list established in these chapter 11 cases. The Debtors submit that under the circumstances no other or further notice is necessary.

12

## <u>No Prior Request</u>

33.    No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

13

WHEREFORE, the Debtors respectfully request that this Court (i) grant this Motion and the relief requested herein; (ii) enter the proposed order attached as **Exhibit A** hereto; and (iii) grant such other and further relief as it deems just and proper.

Dated:  September 23, 2010
       Wilmington, Delaware

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Deborah M. Buell (admitted *pro hac vice*)
James L. Bromley (admitted *pro hac vice*)
Lisa M. Schweitzer (admitted *pro hac vice*)
Neil P. Forrest (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:  (212) 225-2000
Facsimile:  (212) 225-3999

- and -

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Ann C. Cordo*
Derek C. Abbott (No. 3376)
Eric D. Schwartz (No. 3134)
Ann C. Cordo (No. 4817)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19801
Telephone:  (302) 658-9200
Facsimile: (302) 658-3989

*Counsel for the Debtors*
*and Debtors in Possession*

14