## **EXHIBIT 1**

PROPOSED ORDER

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------X
                                                       :
*In re*                                                :    Chapter 11
                                                       :
Nortel Networks Inc., *et al.*,[1]                     :    Case No. 09-10138 (KG)
                                                       :
                                    Debtors.           :    Jointly Administered
                                                       :
                                                       :
                                                       :    **Re: D.I.**
                                                       :
-------------------------------------------------------X

## ORDER APPROVING STIPULATION BY AND AMONG THE SELLERS AND AVAYA INC.

Upon consideration of the *Stipulation By And Among The Sellers And Avaya Inc.*

(the "Stipulation"), a copy of which is attached hereto as **Exhibit A**, as agreed among Nortel

Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc.

("NNI"), the EMEA Sellers (as defined in the Amended and Restated Asset and Share Sale

Agreement, dated September 14, 2009 (as amended, the "Sale Agreement"))[2] and the Other

Sellers, each as identified in the Sale Agreement (together with NNC, NNL, NNI and the EMEA

Sellers, the "Sellers") and Avaya Inc. (the "Purchaser", and together with the Sellers, the

"Parties");

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are:  Nortel Networks Inc. (6332), Nortel Networks Capital Corporation (9620), Nortel Altsystems Inc. (9769), Nortel Altsystems International Inc. (5596), Xros, Inc. (4181), Sonoma Systems (2073), Qtera Corporation (0251), CoreTek, Inc. (5722), Nortel Networks Applications Management Solutions Inc. (2846), Nortel Networks Optical Components Inc. (3545), Nortel Networks HPOCS Inc. (3546), Architel Systems (U.S.) Corporation (3826), Nortel Networks International Inc. (0358), Northern Telecom International Inc. (6286), Nortel Networks Cable Solutions Inc. (0567) and Nortel Networks (CALA) Inc. (4226).  Addresses for the Debtors can be found in the Debtors' petitions, which are available at http://dm.epiq11.com/nortel.

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Agreement.

IT IS HEREBY ORDERED THAT:

1.      The Stipulation attached hereto as **Exhibit A** is APPROVED.

2.      The Parties are hereby authorized to take any and all actions reasonably necessary to effectuate the terms of the Stipulation.

3.      The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2010
          Wilmington, Delaware

          _____
          THE HONORABLE KEVIN GROSS
          UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

Stipulation

## STIPULATION BY AND AMONG THE SELLERS AND AVAYA INC.

This stipulation (the "Stipulation") is entered into among Nortel Networks Corporation ("NNC"), Nortel Networks Limited ("NNL"), Nortel Networks Inc. ("NNI"), the EMEA Sellers (as defined in the Amended and Restated Asset and Share Sale Agreement, dated September 14, 2009 (as amended, the "Sale Agreement"))[1] and the Other Sellers, each as identified in the Sale Agreement (together with NNC, NNL, NNI and the EMEA Sellers, the "Sellers") and Avaya Inc. (the "Purchaser", and together with the Sellers, the "Parties").

WHEREAS, on January 14, 2009 (the "Petition Date"), NNI and certain of its affiliates (collectively, the "U.S. Debtors"), filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the Bankruptcy Court for the District of Delaware (the "U.S. Court");

WHEREAS, also on the Petition Date, NNC, NNL (together with their affiliates, including the EMEA Debtors (as defined below) and the U.S. Debtors, "Nortel"), and certain of their Canadian affiliates (collectively, the "Canadian Debtors")[2] filed an application with the Ontario Superior Court of Justice (the "Canadian Court" and together with the U.S. Court, the "Courts") under the Companies' Creditors Arrangement Act (Canada), seeking relief from their creditors (collectively, the "Canadian Proceedings");

WHEREAS, on January 14, 2009, the High Court of England and Wales placed nineteen of Nortel's European affiliates (collectively, the "EMEA Debtors")[3] into administration under the control of individuals from Ernst & Young LLP and Ernst & Young Chartered Accountants;

---

[1]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Sale Agreement.

[2]     The Canadian Debtors include the following entities:  NNC, NNL, Nortel Networks Technology Corporation, Nortel Networks Global Corporation and Nortel Networks International Corporation.

[3]     The EMEA Debtors include the following entities:  NNUK, Nortel Networks S.A., Nortel Networks (Ireland) Limited, Nortel GmbH, Nortel Networks France S.A.S., Nortel Networks Oy, Nortel Networks Romania SRL, Nortel Networks AB, Nortel Networks N.V., Nortel Networks S.p.A., Nortel Networks B.V., Nortel Networks

WHEREAS, on July 20, 2009, the U.S Debtors filed the *Debtors' Motion For Orders (I)(A) Authorizing The Debtors' Entry Into The Asset And Share Sale Agreement, (B) Authorizing And Approving The Bidding Procedures, (C) Authorizing And Approving A Break-Up Fee And Expense Reimbursement, (D) Approving The Notice Procedures, (E) Approving The Assumption And Assignment Procedures, (F) Authorizing The Filing Of Certain Documents Under Seal, And (G) Setting A Date For The Sale Hearing, And (II) Authorizing And Approving (A) The Sale Of Certain Assets Of, And Equity Interests In, Debtors' Enterprise Solutions Business, (B) The Assumption And Assignment Of Certain Contracts And Leases And (C) The Assumption And Sublease Of Certain Leases* [D.I. 1131] (the "Enterprise Sale Motion") seeking approval of the sale of substantially all of the assets, including the stock of certain subsidiaries of the U.S. Debtors, relating to Nortel's Enterprise Solutions Business (the "Enterprise Business") to the Purchaser pursuant to a stalking-horse purchase agreement (the "Stalking Horse Agreement"), subject to the receipt of a higher and better offer at auction;

WHEREAS, on July 29, 2009, the Canadian Debtors filed a motion seeking approval of the sale of substantially all of the assets of the Enterprise Business to the Purchaser pursuant to the Stalking Horse Agreement, subject to the receipt of a higher and better offer at auction;

WHEREAS, following the U.S. Court's approval of the bidding procedures by order dated August 4, 2009 [D.I. 1278], and an auction at which the Purchaser emerged as the successful bidder, the U.S. Court approved the sale of the Enterprise Business to the Purchaser pursuant to the Sale Agreement by order dated September 16, 2009 [D.I. 1514];

---

Polska Sp. z.o.o., Nortel Networks Hispania, S.A., Nortel Networks (Austria) GmbH, Nortel Networks, s.r.o., Nortel Networks Engineering Service Kft, Nortel Networks Portugal S.A., Nortel Networks Slovensko, s.r.o. and Nortel Networks International Finance & Holding B.V.

WHEREAS, the Canadian Court likewise approved both the bidding procedures by order dated August 4, 2009, and the sale of the Enterprise Business to the Purchaser pursuant to the Sale Agreement by order dated September 16, 2009;

WHEREAS, the sale of the Enterprise Business by the Sellers to the Purchaser closed on December 18, 2009 (the "Closing");

WHEREAS, in connection with the sale of the Enterprise Business, Wells Fargo Bank, National Association ("Wells Fargo"), NNI, NNL, NNUK and the Purchaser entered into the Amended and Restated Escrow Agreement dated as of September 14, 2009 (the "Escrow Agreement") establishing the Escrow Account, with Wells Fargo as escrow agent, to hold the Escrow Amount, which amount consists of, among other things, a Purchase Price Adjustment Escrow Amount of US $30 million that relates to certain potential post-closing purchase price adjustments that could be made pursuant to section 2.2.3 of the Sale Agreement;

WHEREAS, under section 4 of the Escrow Agreement, funds may be released from escrow either by delivery of a joint written instruction by NNI, NNL, NNUK and the Purchaser to Wells Fargo directing the release of funds or by a final, non-appealable court order directing the release of funds;

WHEREAS, on February 16, 2010, the Sellers delivered to the Purchaser a Closing Statement that contained their calculation of certain post-closing purchase price adjustments provided for under the Sale Agreement and provided for a net purchase price adjustment in favor of the Purchaser in the amount of $4,878,700;[4]

---

[4]    Subsequently, on April 16, 2010, the Sellers delivered to the Purchaser a revised Closing Statement that provided for a net purchase price adjustment in favor of the Purchaser in the amount of $3,928,700.

3

WHEREAS, on April 19, 2010, the Purchaser delivered a Disagreement Notice to the Sellers that disputed, among other things, the Sellers' calculation of the Closing Inventory Amount;

WHEREAS, on June 25, 2010, the U.S. Debtors filed the *Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of, and Equity Interests in, the Debtors' Enterprise Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 3231] (the "U.S. Motion");

WHEREAS, on or about July 9, 2010, the Canadian Debtors filed the *Motion Regarding the Avaya Disagreement Notice* in the Canadian Court (the "Canadian Motion" and together with the U.S. Motion, the "Motions");

WHEREAS, on July 9, 2010, the Purchaser objected to the Motions by filing the *Objection of Avaya Inc. to Debtors' Motion for Entry of an Order Enforcing the Order Authorizing the Sale of Certain Assets of, and Equity Interests in, the Debtors' Enterprise Solutions Business, and Directing the Release of Certain Escrowed Funds* [D.I. 3513] (the "Objection") in the Courts;

WHEREAS, after the filing of the Motions and the Objection, the Parties mutually agreed to release from the Purchase Price Adjustment Escrow Fund that portion of the Purchase Price Adjustment Escrow Amount not in dispute;[5]

WHEREAS, after engaging in arms' length negotiations and based on the terms and representations set forth below, the Parties have agreed to resolve the Motions as follows:

---

[5]     Pursuant to that agreement, the Parties delivered joint instructions to Wells Fargo dated July 15, 2010 authorizing the release of $10,583,300 to the Sellers' Distribution Agent and joint instructions dated August 5, 2010 authorizing the release of $4,986,828 to the Purchaser.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED THAT:**

1.      Court Approvals.  All provisions of this Stipulation are subject to:  (i) the approvals of this Stipulation by the U.S. Bankruptcy Court and the Canadian Court; and (ii) all such approvals becoming final and not subject to appeal.  In the event this Stipulation is not approved or any such approvals do not become final and not subject to appeal, the Stipulation shall have no effect and the Parties reserve all of their rights and defenses with respect to the Motions, the Objection and the purchase price adjustment under the Sale Agreement.

2.      Release of Funds From Escrow.

a.      Within ten (10) business days of the Orders approving this Stipulation becoming final and non-appealable in the United States and Canada, the Purchaser, NNL, NNI and NNUK shall deliver joint instructions authorizing Wells Fargo to immediately release out of the Purchase Price Adjustment Escrow Fund (i) $6,000,000, (x) plus interest accrued thereon from the Closing Date to the date of payment in accordance with Section 2.2.3(g)(iii) of the Sale Agreement, (y) minus any Retained Inventory Value (as defined below), to the Purchaser (the "Final Payment Amount"), and (ii) the balance of the Purchase Price Adjustment Escrow Fund as of that date, less the Final Payment Amount, to the Sellers' Distribution Agent.

b.      Within ten (10) business days of the Orders approving this Stipulation becoming final and non-appealable in the United States and Canada, the Purchaser shall deliver written confirmation to Christopher Ricaurte, President of Nortel Business Services, that the inventory as set forth on Schedule I attached hereto, has been transferred to the Sellers.  To the extent any inventory is retained by the Purchaser and not transferred to the Sellers, the value of such retained inventory as set forth on Schedule I (the "Retained Inventory Value") shall be deducted from the amount due to the Purchaser pursuant to clause (a) above.

3.    <u>Satisfaction of NGS Payable to NN Israel</u>.  Within five (5) business days of the receipt of (i) the Orders approving this Stipulation becoming final and non-appealable in the United States and Canada, and (ii) the Purchaser's receipt of written instruction from NNI, the Purchaser shall pay or shall cause to be paid to Nortel Networks Israel (Sales and Marketing) Ltd. an amount in cash equal to $566,987.23 (as will be evidenced by the Purchaser sending to NNI proof of payment thereof) in full and final satisfaction of the corresponding reduction of the Closing Companies Net Working Capital as reflected on the Closing Statement and revision thereto delivered by the Sellers to the Purchaser on April 16, 2010.

4.    <u>No Admissions</u>.  This Stipulation and any draft thereof shall not constitute an admission of liability or lack thereof by any Party or the U.S. Debtors, the Canadian Debtors, the EMEA Debtors or their affiliates, and shall not be admissible as evidence in any court of law or other legal proceeding for any purpose, other than for the purpose of enforcing the Stipulation. Each Party acknowledges and agrees that nothing in this Stipulation constitutes a concession of any legal issue raised in or relating to the Motions or the Objection.

5.    <u>Final Settlement and No Further Adjustments</u>.  Upon the last of the court approvals referenced in paragraph 1 above becoming final and non-appealable, the Parties shall be forever estopped and barred from seeking further purchase price adjustments under the Sale Agreement, and the payments made pursuant to this Stipulation shall constitute a full and final satisfaction of all claims for purchase price adjustments under Sections 2.2.3.2 and 2.2.4 of the Sale Agreement.

6.    <u>Costs and Expenses</u>.  Each Party agrees to bear its own costs, expenses and attorneys' fees incurred in connection with the negotiations related to and preparation of the

Motion, Objection and this Stipulation and to not seek from the other Parties reimbursement of any such costs, expenses or attorneys' fees.

7.    <u>Withdrawal of U.S. Motions</u>.  In consideration of the foregoing, and upon (i) the Orders approving this Stipulation becoming final and non-appealable in the United States and Canada, and (ii) the transfer of the inventory pursuant to paragraph 2 hereof, the U.S. Motion shall be deemed withdrawn with prejudice; and within three (3) business days thereafter, the U.S. Debtors and shall file a notice of such withdrawal with the U.S. Court.

8.    <u>Jurisdiction</u>.  The Parties agree that the Courts shall have exclusive jurisdiction over all matters involving or relating to the interpretation, implementation, and enforcement of this Stipulation and Orders and any disputes arising in connection therewith.

9.    <u>Governing Law</u>.  This Stipulation shall be governed by, and construed in accordance with, the laws of the State of New York.  Any dispute or action arising out of or relating to this Stipulation shall be resolved in accordance with Section 10.6 of the Sale Agreement.

10.    <u>Binding Effect</u>.  This Stipulation and Orders shall be binding on the Parties from the date of its execution and shall continue to be binding after the conclusion of these chapter 11 cases and the Canadian Proceedings.

11.    <u>Signing Authority</u>.  The Parties represent and warrant to each other that the signatories to this Stipulation on their respective behalf have full power and authority to enter into it.

12.    <u>General</u>.  The Parties acknowledge that Section 10.19 of the Sale Agreement shall apply, *mutatis mutandis*, to this Stipulation; it being understood that any reference therein to "this Agreement" shall be interpreted for the purposes hereof as referring to this Stipulation.

13.     <u>Entire Agreement</u>.  This Stipulation and Orders contains the entire understanding between the Parties with respect to the matters addressed herein, and all prior discussions among the Parties concerning such matters are merged herein.   There are no representations, warranties, covenants, promises, or undertakings except those expressly set forth herein.

14.     <u>Manner of Execution</u>.  The Parties may execute this Stipulation in counterparts, and all executed counterparts shall collectively be deemed to be one and the same instrument

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated:  September 30, 2010

**Sellers**

Nortel Networks Corporation

By: _____
Name:  John Doolittle
Title:    SVP, Corporate Services and
Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:    Controller

Nortel Networks Limited

By: _____
Name: John Doolittle
Title:   SVP, Corporate Services and
Chief Financial Officer

By: _____
Name:  Clarke Glaspell
Title:   Controller

Nortel Networks Inc.

By: _____
Name:  Clarke Glaspell
Title:  Vice President, Finance

Ernst & Young Inc., solely in its capacity
as Monitor of the Canadian Debtors and
not in its personal capacity

By: _____

**Purchaser**

Avaya Inc.

By: _____

9

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

    Dated:  September 29, 2010

Nortel Networks Corporation

By: _____

By: _____

Nortel Networks Limited

By: _____

By: _____

Nortel Networks Inc.

By: _____

Avaya Inc.

By: _____

Ernst & Young Inc., solely in its capacity
as Monitor of the Canadian Debtors and
not in its personal capacity

Per:

*Sharon Hamilt*

Sharon S. Hamilton
Senior Vice-President

9

IN WITNESS WHEREOF, and intending to be legally bound hereby, the Parties have executed this Stipulation.

Dated: September 29, 2010

**Sellers**

Nortel Networks Corporation

By: _____

By: _____

Nortel Networks Limited

By: _____

By: _____

Nortel Networks Inc.

By: _____

Ernst & Young Inc., solely in its capacity
as Monitor of the Canadian Debtors and
not in its personal capacity

By: _____

**Purchaser**

Avaya Inc.

By: _____
       Pamela F. Craven
       Chief Administrative Officer

SIGNED for and on behalf of **Nortel**
**Networks UK Limited** (in administration)
by Christopher Hill as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)
)

..................................................
Christopher Hill

Witness signature

..................................................
Name: SHARON PERLMUTTER

Address: **ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**

)
)
)
)

SIGNED for and on behalf of **Nortel**
**GmbH** (in administration) by Christopher
Hill as Joint Administrator (acting as agent
and without personal liability) in the
presence of:

)
)
)
)

..................................................
Christopher Hill

Witness signature

..................................................
Name: SHARON PERLMUTTER

Address:

)
)
)

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**

**SIGNED** for and on behalf of **Nortel**
**Networks SpA** (in administration) by
Christopher Hill as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

.........................................
Christopher Hill

Witness signature

.........................................
Name:  SHARON PERLMUTTER
Address:

)
)
)

ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

11

**SIGNED** for and on behalf of **Nortel Networks Hispania S.A.** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

Christopher Hill

Witness signature

Name: SHARON PERLMUTTER
Address: ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

)
)
)

12

**SIGNED** for and on behalf of **Nortel
Networks B.V.** (in administration) by
Christopher Hill as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

........................................................
Christopher Hill

Witness signature

........................................................

Name: SHARON PERLMUTTER

Address:     **ⅢⅢ ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF**

)
)
)
)

**SIGNED** for and on behalf of **Nortel
Networks AB** (in administration) by
Christopher Hill as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

........................................................
Christopher Hill

Witness signature

........................................................

Name: SHARON PERLMUTTER

Address:     **ⅢⅢ ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF**

)
)
)

13

**SIGNED** for and on behalf of **Nortel Networks N.V.** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

Christopher Hill

Witness signature

)
Name: SHARON PERLMUTTER
)
Address:
)

ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

14

**SIGNED** for and on behalf of **Nortel**
**Networks (Austria) GmbH** (in
administration) by Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence
of:

)
)
)
)
)

............................................................
Christopher Hill

Witness signature

............................................................
Name:  SHARON PERLMUTTER
Address:  ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

)
)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks Polska Sp. z.o.o.** (in
administration) by Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence
of:

)
)
)
)
)

............................................................
Christopher Hill

Witness signature

............................................................
Name:  SHARON PERLMUTTER
Address:

)
)
)

ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

15

**SIGNED** for and on behalf of **Nortel Networks Oy** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

......................................................
Christopher Hill

Witness signature

......................................................
Name: SHARON PERLMUTTER
Address:   ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

)
)
)
)

**SIGNED** for and on behalf of **Nortel Networks Portugal S.A.** (in administration) by Christopher Hill as Joint Administrator (acting as agent and without personal liability) in the presence of:

)
)
)
)

......................................................
Christopher Hill

Witness signature

......................................................
Name: SHARON PERLMUTTER
Address:   ERNST & YOUNG LLP
1 More London Place
London
SE1 2AF

)
)
)

**SIGNED** for and on behalf of **Nortel**
**Networks s.r.o.** (in administration) by
Christopher Hill as Joint Administrator
(acting as agent and without personal
liability) in the presence of:

)
)
)
)

................................................................
Christopher Hill


Witness signature

................................................................
Name:   SHARON PERLMUTTER
Address:

)
)
)

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**


17

SIGNED for and on behalf of **Nortel**
**Networks Romania s.r.l.** (in
administration) by Christopher Hill
as Joint Administrator (acting as agent and
without personal liability) in the presence
of:

)
)
)
)
)

........................................................
Christopher Hill

Witness signature
........................................................
Name:  SHARON PERLMUTTER
Address:

)
)
)

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**

SIGNED for and on behalf of **Nortel**
**Networks Engineering Service kft** (in
administration) by Christopher Hill as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

........................................................
Christopher Hill

Witness signature
........................................................
Name:  SHARON PERLMUTTER
Address:

)
)
)

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**

**SIGNED** for and on behalf of **Nortel**
**Networks Slovensko s.r.o.** (in
administration) by Christopher Hill as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

)
)
)
)
)

................................................
Christopher Hill

Witness signature

)
)
)

Name:  SHARON PERLMUTTER
Address:
          ERNST & YOUNG LLP
          1 More London Place
          London
          SE1 2AF

19

SIGNED for and on behalf of **Nortel Networks France S.A.S.** (in administration) by Kerry Trigg acting as authorised representative for

    )
    )
    )
    )
    )

Kerry Trigg

as Joint Administrator (acting as agent and without personal liability) in the presence of:

Witness signature

Name: SHARON PERLMUTTER

Address:

**ERNST & YOUNG LLP**
**1 More London Place**
**London**
**SE1 2AF**

20

**SIGNED** for and on behalf of **Nortel**
**Networks (Ireland) Limited** (in
administration) by ~~David Hughes~~ as Joint
Administrator (acting as agent and without
personal liability) in the presence of:

*Niall Coveney under Power of*
*Attorney for.*

)
)
)
)
)

*Niall Coveney under power of Attorney*
*granted 8th May 2009.*

.......................................................
David Hughes

Witness signature

*Eimear Ní Ghríofa*
..........................................................
Name:  EIMEAR NÍ GHRÍOFA
Address:  ERNST & YOUNG
          HARCOURT CENTRE
          HARCOURT STREET
          DUBLIN 2

)
)
)

21

SIGNED by Richard Banbury )
duly authorised for and on behalf of o.o.o. )
**Nortel Networks** in the presence of: )

Witness signature

................................................. )
Name: ANNA DOMAREVA )
Address: 8 SMOLENSKAYA Sq. )
121099, Moscow, Russia

SIGNED by Sharon Rolston                    )   *Sharon Rolston (signature)*
duly authorised for and on behalf of **Nortel**   )   Sharon Rolston
**Networks AG** in the presence of:            )


Witness signature

*B. Scherwath (signature)*

Name: B. SCHERWATH                          )
Address: C/O NORTEL NETWORKS UK LTD          )
         MAIDENHEAD, SL6 3QH
         UK

SIGNED by Sharon Rolston and Simon         )   *Sharon Rolston (signature)*
Freemantle duly authorised for and on       )   Sharon Rolston
behalf of **Nortel Networks South Africa**  )
**(Pty) Limited** in the presence of:           )   *Simon Freemantle (signature)*
                                                Simon Freemantle


Witness signature

*B. Scherwath (signature)*

Name: B. SCHERWATH                          )
Address: C/O NORTEL NETWORKS UK LTD          )
         MAIDENHEAD, SL6 3QH
         UK

23

SIGNED by Sharon Fennessy and Simon )    *Sharon Fennessy*
Freemantle duly authorised for and on )    Sharon Fennessy
behalf of **Nortel Networks AS** in the )
presence of:

)    *Simon Freemantle*
Simon Freemantle

Witness signature

*B. Scherwath*

Name:  B. SCHERWATH )

Address:  C/O NORTEL NETWORKS UK LTD )
MAIDENHEAD, SL6 3QH
UK

24

SIGNED for and on behalf of **Nortel**
**Communications Holdings (1997)**
**Limited** (in administration) by Yaron Har-
Zvi and Avi D. Pelossof as Joint Israeli
Administrators (acting jointly and without
personal liability) in connection with the
Israeli Assets and Liabilities:

)
)
)
)
)
)
)

הנאמן בהקפאת הליכים

............................................

Yaron Har-Zvi

הנאמן בהקפאת הליכים

............................................

Avi D. Pelossof

Witness signature

איתי לביא, עו"ד
מ.ר. 47667

............................................

Name: *Itay lavi*

Address: *20 Lincoln St.*
*Tel-Aviv, Israel*

SIGNED for and on behalf of **Nortel**
**Networks Israel (Sales and Marketing)**
**Limited** (in administration) by Yaron Har-
Zvi and Avi D. Pelossof as Joint Israeli
Administrators (acting jointly and without
personal liability) in connection with the
Israeli Assets and Liabilities:

)
)
)
)
)
)
)
)

הנאמן בהקפאת הליכים

............................................

Yaron Har-Zvi

הנאמן בהקפאת הליכים

............................................

Avi D. Pelossof

Witness signature

איתי לביא, עו"ד
47667 מ.ר.

............................................

Name: *Itay lavi*

Address: *20 Lincoln St.*
*Tel-Aviv, Israel*

)
)
)

**SIGNED** by Alan Bloom

)
)    ..............................................
)    Alan Bloom

in his own capacity and on behalf of the
Joint Administrators without personal
liability and solely for the benefit of the
provisions of this Agreement expressed to
be conferred on or given to the Joint
Administrators:


Witness signature

..................................................    )
Name:    WILMA GRAHAM    )
Address:    NO 1 MORE LONDON PLACE    )
LONDON SE1 2AF

# Schedule I

| Material | Description | Objection Theme | FDC | M120 | M160 | RTP | M410 | M530 | M810 | M240 | Astute | AS400 | Total | Standard cost | Extended Inventory Value |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31T385-A | IC,SSRAM,512KX36,6NS,3.3V,TQFP100,CM | MEN | 13,851 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13,851 | $ 15.50 | $ 214,690.50 |
| A0,2001A22-E5 | OPTERA METRO 5400 N/O POWER COR | MEN | 0 | 0 | 0 | 0 | 0 | 0 | 62 | 0 | 0 | 0 | 62 | $ 771.78 | $ 47,850.36 |
| DS1404069-E5 | METRO ENET SRVCS MODULE 8668 | MEN | 24 | 0 | 0 | 0 | 0 | 0 | 17 | 0 | 0 | 0 | 41 | $ 4,574.23 | $ 187,543.43 |
| DS1404103-E5 | METRO ETHERNET CPU/SF MODULE 8 | MEN | 32 | 0 | 0 | 0 | 0 | 0 | 25 | 0 | 0 | 0 | 57 | $ 1,704.01 | $ 97,128.57 |
| DS1404105-E5 | 8692osmSF CPU/SF w/SUPERMEZZ | MEN | 0 | 0 | 25 | 0 | 0 | 0 | 15 | 0 | 0 | 0 | 40 | $ 3,589.12 | $ 143,564.80 |
| DS1404113-E6 | 8630GBRC 30 p 100/1000 Module | MEN | 33 | 17 | 5 | 0 | 0 | 0 | 12 | 0 | 0 | 0 | 67 | $ 6,633.36 | $ 444,435.12 |
| EB1412022E5 | NORTEL APS SWITCH 3408 E DC | Radware | 13 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 13 | $ 14,335.00 | $ 186,355.00 |
| ED1E5S001E5 | SMG 2/650 WITH 50-USER LICENSE | CVAS 1 | 73 | 4 | 0 | 0 | 2 | 2 | 0 | 0 | 0 | 0 | 81 | $ 2,097.08 | $ 169,863.48 |
| N0069999 | IC,DRAM,512KX18X32,32NS,2.5V,PBGA92 | MEN | 10,906 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 10,906 | $ 16.00 | $ 174,496.00 |
| N0165406 | LG-Nortel IP Phone 8540 | Microsoft | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 78 | 78 | $ 302.30 | $ 23,579.40 |
| N0165406 | N0165406 LGNortel IP Phone 854 | Microsoft | 0 | 3,810 | 0 | 0 | 6 | 0 | 0 | 0 | 0 | 0 | 3,816 | $ 235.96 | $ 900,423.36 |
| N0165407 | USB Phone IP 8501 | Microsoft | 0 | 68 | 0 | 0 | 3 | 0 | 0 | 0 | 0 | 0 | 71 | $ 70.71 | $ 5,020.41 |
| N0165408 | Wireless Headset IP 8502 | CVAS 1 | 0 | 413 | 1 | 0 | 0 | 0 | 0 | 0 | 123 | 0 | 538 | $ 74.99 | $ 40,344.62 |
| N0166400 | IPPhone 8540 AC/DC Pwr Adapter | Microsoft | 0 | 4,059 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,059 | $ 6.11 | $ 24,800.49 |
| N0166403 | IPPhone 8540 AC/DC Pwr Adapter | Microsoft | 0 | 11 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 11 | $ 6.11 | $ 67.21 |
| N0199940 | LG-Nortel 8840 IP Phone | CVAS 2 | 0 | 1,126 | 0 | 0 | 0 | 0 | 0 | 0 | 266 | 0 | 1,392 | $ 68.00 | $ 94,656.00 |
| N0199941 | LG-Nortel 8830 IP Phone | CVAS 2 | 0 | 3,667 | 0 | 0 | 0 | 0 | 0 | 0 | 381 | 0 | 4,048 | $ 65.50 | $ 239,533.50 |
| N0199942 | LG-Nortel 8820 IP Phone | CVAS 2 | 0 | 4,734 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4,734 | $ 81.09 | $ 382,258.26 |
| N0199945 | LG-Nortel 8800 Phone - WiFi Ex | CVAS 1 | 0 | 71 | 0 | 0 | 0 | 0 | 0 | 0 | 444 | 0 | 515 | $ 46.00 | $ 5,290.00 |
| N0199946 | LG-Nortel 8800 12-Line | CVAS 2 | 0 | 210 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 30 | 240 | $ 98.46 | $ 23,629.97 |
| N0199947 | LG-Nortel 8800 12-Line | CVAS 2 | 0 | 206 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 71 | 277 | $ 172.83 | $ 47,872.72 |
| N0199948 | LG-Nortel 8800 Bluetooth | CVAS 2 | 0 | 77 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 51 | 128 | $ 213.41 | $ 27,316.94 |
| N0202772 | LG-Nortel 8815 IP Phone | CVAS 2 | 0 | 1,830 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 114 | 1,944 | $ 98.16 | $ 188,859.84 |
| NTB440AAE6 | LG-Nortel IP Phone 6804 | CVAS 1 | 0 | 158 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 347 | 505 | $ 78.76 | $ 39,773.80 |
| NTB441AAE6 | LG-Nortel IPPhone6812 | CVAS 2 | 0 | 2 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 253 | 255 | $ 99.20 | $ 25,306.20 |
| NTB442AAE6 | LG-Nortel IP Phone 6830 | CVAS 1 | 0 | 689 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20 | 709 | $ 103.92 | $ 73,679.28 |
| NTB446AAE6 | LGNortelP56890(US,CA,CALA) | CVAS 2 | 0 | 7,108 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,108 | $ 6.92 | $ 46,633.76 |
| NTB447AAE6 | LG-Nortel Wall Mount Kit 6812 | CVAS 1 | 0 | 1,673 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 115 | 1,788 | $ 4.44 | $ 7,938.72 |
| NTB449AAE6 | LG-Nortel Key Exp. Module 6848 | CVAS 1 | 0 | 117 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 17 | 134 | $ 108.85 | $ 14,585.90 |

$ 3,879,497.64